1 | Thomas M. Clark (CDCR# C12457)
2 | Kahlifa E.D. Saif'ullah (CDCR# C14257)
  | California State Prison, Solano
3 | 2100 Peabody Road
  | Vacaville, CA. 95696-4000
4 | Pro Per

RECEIVED

AUG 1 0 2011

RICHARD W. WIEKING
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

6

IN THE UNITED STATES DISTRICT COURTS
FOR THE EASTERN DISTRICT OF CALIFORNIA
AND THE NORTHERN DISTRICT OF CALIFORNIA
UNITED STATES DISTRICT COURTS COMPOSED OF THREE JUDGES
PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | | |
|---|---|---|
| Ralph Coleman, et al., | ) | CIV S-90-0520 LKK JFM P |
| | ) | |
| Plaintiffs, | ) | <u>THREE JUDGE COURT</u> |
| | ) | |
| v. | ) | |
| | ) | |
| Brown, Governor of California et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| Marciano Plata, et al., | ) | C01-1351 TEH |
| | ) | |
| Plaintiffs, | ) | <u>THREE JUDGE COURT</u> |
| | ) | |
| v. | ) | |
| | ) | |
| Brown, Governor of California et al., | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |
| Thomas M. Clark | ) | <u>REQUEST FOR DE NOVO HEARING</u> |
| Kahlifa E.D. Saif'ullah | ) | <u>ON THE STATUS OF MOTIONS TO</u> |
| 61 Plaintiff Class Members et al. | ) | <u>STRIKE; AND OBJECTIONS BY</u> |
| | ) | <u>PLAINTIFF CLASS MEMBERS IN</u> |
| v. | ) | <u>ANY STIPULATIONS BY COUNSEL</u> |
| | ) | |
| Brown, Governor of California et al., | ) | |
| | ) | |
| Defendants. | ) | |

1  State prisoners Thomas M. Clark and Kahlifa E.D. Saif'ullah have requested from

2  this Three Judge Court, for themselves and on behalf of the 61 class members,

3  a status report on the motions they filed on June 18, 2010. The Court has

4  informed them that no they had no record of any motions and/or objections filed

5  by them.

6      Therefore, Prisoners Clark and Saif'ullah submit to the Court a conformed

7  copy of the motions/objections that were filed, and again request that they be

8  put on calendar for a evidentiary hearing. This would include the appointment

9  of counsel for the limited purpose of representation during said hearing. Pri-

10 soners Clark and Saif'ullah further request that the entire matter be reviewed

11 de novo.

12

13     Prisoners Clark and Saif'ullah do declare under penalty of perjury that

14 the foregoing is true and correct, and to those other things, based upon their

15 best belief.

16     Submitted this 3 Day of August 2011, at California State Prison Solano,

17 Vacaville, CA. 95696-4000.

18

19 _____          _____
   Thomas Michael Clark                Kahlifa E.D. Saif'ullah
20 Plaintiff pro per                    Plaintiff pro per

21

22

23

24

25

26

27

28

1  Thomas M. Clark (CDCR# C12457)
   Khalifa E.D. Saif'ullah (CDCR# C14257)
2  California State Prison/Solano
   2100 Peabody Road
3  Vacaville, CA 95696-4000

4  Pro Per

**ORIGINAL FILED**

JUL 1 5 2011

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

5

6                    IN THE UNITED STATES DISTRICT COURTS
                     FOR THE EASTERN DISTRICT OF CALIFORNIA
7                   AND THE NORTHERN DISTRICT OF CALIFORNIA
                UNITED STATES DISTRICT COURTS COMPOSED OF THREE JUDGES
8                PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

9  Ralph Coleman, et al.,              )  CIV S-90-0520 LKK JFM P
                                       )
10         Plaintiffs,                 )  THREE JUDGE COURT
                                       )
11         v.                          )
                                       )
12  Brown, Governor of California,     )
    et al.,                            )
13                                     )
           Defendants.                 )
14  _____   )
                                       )
15  Marciano Plata, et al.,            )  C01-1351 TEH
                                       )
16         Plaintiffs,                 )  THREE JUDGE COURT
                                       )
17         v.                          )
                                       )
18  Brown, Governor of California,     )
    et al.,                            )
19                                     )
           Defendants.                 )
20  _____   )
                                       )
21  Thomas M.Clark,                    )  **MOTION AND REQUEST TO BE**
    Khalifa E.D. Saif'ullah, et al,    )  **GIVEN A STATUS UPDATE**
22  Plaintiff Class Members            )  **REGARDING MOTIONS TO STRIKE**
           v.                          )  **(F.R.C.P. RULE 12(f); NOTICE**
23                                     )  **OF OBJECTIONS BY PLAINTIFF**
    Brown, Governor of California,     )  **CLASS (INDETERMINATELY SENTENCED**
24  et al.,                            )  **PRISONERS); AND MEMORANDAUM SET-**
                                       )  **TING FORTH THOSE OBJECTIONS**
25         Defendants.                 )
    _____   )
26

27

28

                                -1-

1

## JURISDICTION

2    This Three Judge Court has jurisdiction pursuant to 28 U.S.C. 2284. This

3 Motion for a Status Update is before the Court pursuant to 2284(b)(3).

4

5

## PROCEDURAL BACKGROUND

6    After having their initial Reduction and Release Plan rejected, the Defen-

7 dants filed a Second Reduction and Release Plan in October of 2009.

8    On December 7, 2009, while the second plan remained pending before the

9 Court, counsel acted    to file a stipulation on their behalf, agreeing that

10 the pending plan satisfied the Court's August 4,, 2009 Opinion and Order, and

11 therefore satisfactory to his clients.

12    On January 20, 2010, Plaintiff's counsel advised his clients via news let-

13 ter, that "On December 7, 2009, the prisoner's attorneys agreed that the state'

14 plan met the requirements of the court's August 4, 2009 order." Given the rel-

15 evant dates, Plaintiffs were advised of a major case action on their behalf 40

16 days after the fact, and was not discovered by many of the member class until

17 April or May of 2010.

18    After numerous failed attempts to communicate with lead counsel Donald

19 Specter, class members Clark and Saif'ullah prepared a motion to strike the

20 stipulation and/or agreement filed by Specter; a supporting memorandum of fact

21 and review of this court's own findings, setting forth with specificity, all

22 the grounds for their 12(f) motion, in addition to supporting objections which

23 they believed should have offered to court by their counsel. A declaration by

24 Clark also accompanied these submissions, all of which were submitted for fil-

25 ing on June 9, 2010.

26    After dismissing Defendant's first appeal as being premature, the United

27 States Supreme Court accepted their subsequent appeal from this Court's January

28                                    -2-

1   12, 2010 order. The motions in questions remained pending in the interim of the

2   Supreme Court's decision.

3        On May 23, 2011, the Court delivered a 5-4 decision, affirming the August

4   4, 2009 orders of this court.

5

6                              <u>PURPOSE OF THIS STATUS REQUEST</u>

7        When Plaintiffs filed their motion to strike and supporting objections,

8   they served true, correct, and complete copies on counsel. They'd been posted

9   on the same date as the court and attorney general, June 10, 2010. Approxi-

10  mately one year has elapsed without response by Attorney Specter.

11       The plaintiff class members who prepared the motion to strike purposely

12  did so under Rule 12(f), foregoing an opportunity to press for sanctions pur-

13  suant to F.R.C.P. 11(c). The alienation of attorney Specter provided no signi-

14  ficant weight to the sum of evidence before the court. The objections we attem-

15  pted to articulated had at best been a reiteration of facts familiar to this

16  panel, however, much of Senate Bill 18 had escaped the scrutiny of the 14 day

17  trial. Most of these details should have been the source of considerable con-

18  cern, and yet attorney Specter has remained silent. We had hoped that our coun-

19  sel of 14 years would have responded, because it should be clear that much of

20  S.B. 18 should have caused alarm for trained counsel.

21       It's our understanding that one test of a litigant's conduct is to inquire

22  what had been reasonable for supporting his belief when he'd filed the stipu-

23  lation and/or agreement. As our advocate, it would seem that at a minimum, his

24  investigation into S.B.18 would have certainly been thorough and complete. Any

25  stipulation as to the viability and successful performance of the second Redu-

26  ction and Release Plan, could not have been the result of a reasonable investi-

27  gation by counsel.

28

                                       -3-

1    As set forth in our objections (p.25:22-25) now is the time and place for

2  all concerned parties to confront the reality and nature of this crisis. The

3  Supreme Court has re-stated this Court's own concerns; "High recivicism rates

4  must serve as a warning that mistaken or premature release of even one prisoner

5  can cause injury and harm." (Brown v Plata (2011) Slip Opinion No.09-1233;

6  p.2¶2) Therefore, releasing the same "short time" offenders does nothing to

7  cure the crisis facing the defendants. Based upon the reporting one cites, re-

8  cividism of California's offenders is 66-70%. For every 134,000 prisoners re-

9  leased, approximately 88,440 return. (Release data from 2006) These vary same

10  candidates are part and parcel of the same problem, most of which will be

11  awaiting new criminal charges before the total release can be finished. As the

12  Court pointed out, there is no money (Slip Op.p.32¶3), nor any more time (Ibid)

13  nor the necessary fortitude among the legislative body to tackle this situation

14  at any level.

15    As the Supreme Court also pointed out, though these questions may be dif-

16  ficult and sensitive, "they are factual questions and should be treated as

17  such." (Slip Op.p.38¶1) We, as a subgroup, read this to mean that releases can-

18  not be premised on hysteria fostered by groups that have, in the last two de-

19  cades, found favor among political candidates and unions.

20    We also request that, while the defendants go about their usual dilatory

21  tactics, we be allowed to make a showing and demonstrate that the injunction

22  should be altered to ensure that our rights and interests are given all due and

23  necessary protection. (Slip Op.p.46¶1) This court retains discretion to order

24  the defendants to develop a system to "identify prisoners who are unlikely to

25  reoffend..." while at the same time following the law. As stated, many of the

26  Indeterminately Sentenced prisoners are decades beyond their mandatory minimum

27  sentences. In a recent article, Governor Brown, stated that Indeterminately

28  Sentenced prisoners had effectively been re-sentenced to life without the pos-

-4-

1  sibility of parole by Governors Wilson, Davis, and Schwarzenegger. (S.F. Chro-

2  nicle April 17, 2011) These prisoners would not be "released early", but re-

3  leased long over due.

4

5                         **PRAYER FOR RELIEF**

6      1)   We respectfully request that we be apprised of the status of the mo-

7  tions currently pending before the court; and,

8      2)   That we be appointed counsel for the limited purpose of showing this

9  Court that altering the injunction and/or order the defendants to develop a

10  system to identify these Indeterminately Sentenced prisoners who have exceeded

11  their minimum term requirements; and,

12      3)   Those other things deemed proper and just by the Court.

13

14      We the undersigned submit this motion and request in good faith, and state

15  that all allegations, beliefs and statements are based upon their best belief

16  and knowledge. Executed this 23 day of June, 2011, at California State Prison

17  at Solano, Vacaville, CA. 95696-4000.

18

19  Thomas M. Clark                    Khalifah E.D. Saif'ullah

20  (CDCR# C12457)                     (CDCR# C14257)

    Plaintiff/Objectee                 Plaintiff/Objectee

21

22

23

24

25

26

27

28                         -5-

*Proof of Service – Mail*

## PROOF OF SERVICE

Re:    Case Number _____ CIV S-90-0520 LKK JFM P / C01-1351 TEH

Case Title _____ PLATA V BROWN, Governor _____.

I hereby declare that I am a citizen of the United States, am over 18 years of age, and am/am not a party in the above-entitled action. I am employed in/reside in the County of __Solano_____ and my business/residence address is 2100 Peabody Road, Vacaville, CA 95696-4000

On __JUne 24, 2011_____, I served the attached document described as a __Motion for Status Update_____

on the parties in the above-named case. I did this by enclosing true copies of the document in sealed envelopes with postage fully prepaid thereon. I then placed the envelopes in a U.S. Postal Service mailbox in __Solano_____, California, addressed as follows:

Attorney General's Office          Prison Law Office
455 Golden Gate Ave               Donald Spector
San Fransisco, CA. 94102          Berkely, CA
                                  San Quentin, CA. 94964

I, __Thomas M Clark_____, declare under penalty of perjury that the foregoing is true and correct.

Executed on __June 24, 11__, at _____

__Vacaville_____, California.

_____
Signature

June 28, 2011


Mr. Donald Specter
C/O Prision Law Office
General Delivery
San Quentin, CA. 94964
(510) 280-2621


RE: Sanctions FRCP Rule 11(c)


Dear Counsel,

    This letter serves to advise you informally that the 61 plaintiffs
named in the Motion to Strike/Objections, filed June 9, 2010, are going
to move the 3 Judge Panel to invoke sanctions against you pursuant to
FRCP 11(c).

    The reasons for this action are as follows:

    1)   You have had ample warning that Class Members of both Plata
and Coleman wanted no part of any agreement you have filed with the 3
Judge Panel, and yet you have ignored our concerns, and for that matter,
our right as clients and class members, to withdraw from any stipula-
tions our counsel attempts to file on our behalf.

    2)   As the lead counsel for both of these class action matters,
you have, better than any other person, known with certainty that the
defendant's second reduction and release plan, including Senate Bill 18,
had never been intended to succeed; however, have attempted to saddle
your clients with this agreement filed on December 7, 2009.

    You have a 21 day safe harbor within which to withdraw said agree-
ment/stipulation. After the 21 day period, the 61 class members will
formally file for sanctions under Rule 11(c).


Thomas M. Clark C-12457
Plaintiff/Class member

Khalifa E.D. Saif'ullah C14257
Plaintiff/Class Member

*Proof of Service – Mail*

<u>PROOF OF SERVICE</u>

Re:     Case Number __*CIV S.90·0526 LKK JFM P*__
        Case Title __*Coleman v Brown*__

I hereby declare that I am a citizen of the United States, am over 18 years of age, and ~~am/am~~ not a party in the above-entitled action. I am employed in/reside in the County of ___*Solano*___ and my business/residence address is ___*2100 Peabody Rd, Vacaville, CA. 95696*___

On __*3 August 2011*__, I served the attached document described as a __*Request for De Novo Hearing*__

on the parties in the above-named case. I did this by enclosing true copies of the document in sealed envelopes with postage fully prepaid thereon. I then placed the envelopes in a U.S. Postal Service mailbox in __*Vacaville*__, California, addressed as follows:

*Attorney's Generals' Office*
*1300 I Street ~~Suite~~ 15th Flr*
*Sacramento, CA.*

I, __*Thomas Clark*__, declare under penalty of perjury that the foregoing is true and correct.

Executed on __*3 Aug 2011*__, at __*Vacaville*__
_____, California.

_____
                Signature

1
2
3          IN THE UNITED STATES DISTRICT COURTS
4        FOR THE EASTERN DISTRICT OF CALIFORNIA
5       AND THE NORTHERN DISTRICT OF CALIFORNIA
6   UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES
7    PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE
8

9   RALPH COLEMAN, et al.,

10              Plaintiffs,                    NO. CIV S-90-0520 LKK JFM P

11          v.                                **THREE-JUDGE COURT**

12   EDMUND G. BROWN, JR., et al.,

13              Defendants.

14

15   MARCIANO PLATA, et al.,

16              Plaintiffs,                    NO. C01-1351 TEH

17          v.                                **THREE-JUDGE COURT**

18   EDMUND G. BROWN, JR., et al.,            ORDER DENYING MOTION
                                              FILED BY CLARK AND
19              Defendants.                   SAIF'ULLAH

20

21

22        Inmates Thomas M. Clark and Khalifa E.D. Saif'ullah contend that Plaintiffs' counsel

23   are not adequately representing their interests and seek to be appointed as counsel so that

24   they may request an order releasing "Indeterminately Sentenced prisoners who have

25   exceeded their minimum term requirements."[1]  The Court is not persuaded that class

26   counsel's representation is inadequate, nor does the Court find it appropriate to order the

27   _____

28        [1]The inmates reference documents submitted for filing on June 9, 2010, but this Court
     has no record of any such documents.

1  relief the inmates seek at this time.  Accordingly, with good cause appearing, the motion is

2  DENIED.

3

4  **IT IS SO ORDERED.**

5

6  Dated:  07/19/11                    On behalf of the Court:[2]

7

8

9                                    THELTON E. HENDERSON
                                     SENIOR UNITED STATES DISTRICT JUDGE
                                     NORTHERN DISTRICT OF CALIFORNIA

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27  _____

28        [2]A single judge is authorized to make this ruling under 28 U.S.C. § 2284(b)(3).

2

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA


PLATA et al,

            Plaintiff,

   v.

Brown et al,

            Defendant.

_____/

Case Number: CV01-01351 TEH

**CERTIFICATE OF SERVICE**


I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on July 20, 2011, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.


Thomas M. Clark
CDCR # C12457
California State Prison/Solano
2100 Peabody Road
Vacaville, CA 95696-4000

Khalifa E.D. Saif'ullah
CDCR # C14257
California State Prison/Solana
2100 Peabody Road
Vacaville, CA 95696-4000

Dated: July 20, 2011

Richard W. Wieking, Clerk
By: Tana Ingle, Deputy Clerk

1  Thomas M. Clark (CDCR# C12457)
   Khalifah E.D. Saifullah (CDCR# C14257)
2  CSP-Sol/Facility 4/Level II
   P.O. Box 4000
3  Vacaville, CA. 95696-4000

4  Appearing Pro Per et al.

ORIGINAL
FILED

JUN 2 8 2010

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

5

6

7              IN THE UNITED STATES DISTRICT COURTS
            FOR THE EASTERN DISTRICT OF CALIFORNIA
8            AND THE NORTHERN DISTRICT OF CALIFORNIA
         UNITED STATES DISTRICT COURTS COMPOSED OF THREE-JUDGES
9        PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

10

11  RALPH COLEMAN, et al.,          )  Case No. CIV S-90-0520 LKK JFM
                                    )
12              Plaintiffs,         )  THREE-JUDGE COURT
                                    )
13       v.                         )
                                    )
14  ARNOLD SCHWARZENEGGER, et al,   )
                                    )
15              Defendants.         )
                                    )
16  _____)
                                    )
17  MARCIANO PLATA, et al.,         )  Case No. CO1-cv-1351 TEH
                                    )
18              Plaintiffs,         )
                                    )
19       v.                         )  THREE-JUDGE COURT
                                    )
20  ARNOLD SCHWARZENEGGER, et al.,  )
                                    )
21              Defendants.         )
                                    )
22  _____)
                                    )
23  THOMAS M. CLARK                 )  NOTICE OF OBJECTIONS BY
    KHALIFAH E.D. SAIF'ULLAH        )  INDETERMINATELY SENTENCED
24  R.E. FLEENOR                    )  PLAINTIFF CLASS; NOTICE OF
    M.D. KEEYES                     )  MOTION TO STRIKE F.R.C.P. RULE
25  J. CANTY                        )  12(f), AND MOTION; MEMORANDUM
    P. CARR                         )  SETTING FORTH OBJECTIONS AND
26  J. NEAL                         )  CITING RELEVANT DATA/EVIDENCE;
    A. MANN                         )  DECLARATION BY CLARK IN SUP-
27  L. SMITH                        )  PORT OF MOTIONS AND OBJECTIONS
    B. SUMMERSVILLE                 )
28  K. FROST                        )
    R. Foster                       )

PLAINTIFF"S OBJECTIONS
  Cases: 2:90-cv-00520 LKK JFM: CO1-1351 TEH

THOMAS SMITH                          )
DARRYL POOLE                          )
P. KEOSOUPHA                          )
LONNIE WILLIAMS                       )
V. TOWNS                              )
ISHEAL WESLEY                         )
                                      )
T. BOWIE                              )
                                      )
J. DENHAM                             )
A. ACHMAD                             )
MALCOM SCOTT                          )
CURT HOLLIDAY                         )
SHELDON SANDERS                       )
JUSTUS EVANS                          )
F. VARNER                             )
MELVIN HOWARD                         )
P. LEGALL                             )
KHALIYFAH TAYLOR                      )
B. WASHINGTON                         )
ANTOINE SIMMONS                       )
R. O'NEAL                             )
K. MAYWEATHERS                        )
ANTONIO REDDICK                       )
J. WOODS                              )
C. PARKER                             )
KEITH ASH                             )
TIMOTHY YERGIN                        )
IVAN JONES                            )
MALCOM SCOTT                          )
RICHYARD COCKRELL                     )
LAMONT ERVIN                          )
J. HILL                               )
SAMUEL MORGAN                         )
AHMED HASAN                           )
CHARLES HUNTLY                        )
ABDULLAH ALI                          )
AVERY MYERS                           )
HARVEY KNIGHT                         )
                                      )
ROBERT KHAN                           )
DAVID HILLARY                         )
DAVID DUGAN                           )
TOBY EVANS                            )
WILLIAM PALMER                        )
KEVIN ROLAND                          )
BENJAMIS ADKINS                       )
TYRONE FOREMAN                        )
LARRY HARRIS                          )
ROBBIE CLAYTON                        )
                                      )
PATHAN ATIK                           )
                                      )
ANTHONY DE BOSE                       )

PLAINTIFF'S OBJECTIONS          -2-
CASE NOS 2:90-CV-00520 LKK JFM: C01-1351 TEH

1  C. CLARK                            )
   E. VANNORSDELL                      )
2  M. JOHNSON                          )
   E. WILLIAMS                         )
3  K. ATWOOD                           )
   M. MARICH                           )
4  A. WARE                             )
   K. WHITE                            )
5  B. NEAL                             )
   F. NANTES                           )
                                       )
6                   Plaintiffs,        )
                    Objectees, et al.  )
7  _____ )

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28  PLAINTIFF'S OBJECTIONS          -3-
    CASE NOS 2:90-CV-00520 LKK JFM: C0-1351 TEH

# OBJECTIONS TO THE DEFENDANT'S SECOND REVISED POPULATION REDUCTION PLAN

We the undersigned respectfully come before this court and request that we be recognized as plaintiffs to the above entitled action, as well as relevant stakeholders in these matters, and thereby having standing to present pertinent objections to the defendant's revised Population Reduction Plan.

We understand that we are currently represented by counsel; however, we request further leave to present evidence that our counsel has entered an agreement that said revised plan by defendants meets the . orders and requirements setforth in this Court's Opinion and Orders of August 4, 2009, when in fact said plan lacks any aspects of possible feasibility. It is our position that, despite overwhelming evidence which has been found by this Court to both factual and conclusive, our counsel has agreed to a revised plan that will allow the defendants to maintain the status quo, and continue to deny the plaintiff's medical and mental health care that will meet a constitutional minimum.

In presenting these objections, we are forced to proceed without the aid of counsel because; 1) counsel has steadfastly refused to acknoledge our position via direct communication; 2) while refusing to communicate directly, counsel has plead an inability to respond due to the magnitude of prisoner and parolee responses, and instead utilized a "Pamphlet" containing the information they have deemed relevant to share; 3) based upon this method of communication, we the undersigned have only just now

PLAINTIFF'S OBJECTIONS          -4-
CASE NOS 2:90-CV-520 LKK JFM: C01-1351 TEH

1  marshalled the relevant information needed to understand fully

2  the consequences of their counsel's attempt to agree that the

3  revised plan meets the court's orders. This information was also

4  necessary to support the objections presented herein. We believe

5   it should be readily apparent to the court that these objections

6  are consistent with the evidence already before the court, and

7  should therefore warrant consideration.

8                                * * *

9                       O B J E C T I O N S

10      1) We object to our counsel's attempt to agree that the

11 defendant's revised plan satisfies the requirements and orders

12 setforth by this Court in its August 4, 2009 Opinion and Order,

13 when the evidence before the Court clearly and convincingly pro-

14 ved that the plan's content and ultimate feasibility is void of

15 any possible merit, as will be explained later.

16      2) We further object to the defendant's revised plan because

17 it is entirely dependant upon funding which is not specifically

18 identified, other than those portions which claim to be funded

19 via AB900. As to those portions which are allegedly funded via

20 AB900, we object to our counsel attempting to agree to those por-

21 tions because defendants propose to reduce overcrowding with the

22 addition of approximately 3796 beds to the CDCR's designed capa-

23 city based upon projects that are dependant upon this same Assem-

24 bly Bill which remains unfunded by the state legislature.

25      3) We object to the defendant's revised plan because it has

26 based the addition of approximately 3832 new beds to the CDCR's

27 design capacity, upon their ability to renivate and convert exis-

28 ting Juvenile Justice facilities; however, due to absence of any

PLAINTIFF'S OBJECTIONS            -5-
CASE NOS: 2:90-CV-00520 LKK JFM: C01-1351 TEH

1   dedicated funding, or funding sources, the projected completion

2   dates had already expired at the time the plan was being submit-

3   ted to this Court. The ability of this revised plan to meet a

4   population cap of 137.5% of design capacity within two years

5   depends upon the feasibility of each aspect, and clearly this

6   aspect will not meet the court's timeline.

7       4) We object to the defendant's revised plan because it pro-

8   jects the addition of approximately 2203 new beds to the CDCR's

9   overall design capacity, with the construction of 14 new medical

10   and mental health care projects. There is, however, no funding

11   sources identified in the plan, and the feasibility of obtaining

12   funding dedicated for these specific projects remains dubious.

13   At the present time, the CDCR continues to cut medical and mental

14   health care budgets due to fiscal crisis our state is mired in.

15   We object specifically to our counsel agreeing to a revised plan

16   that cannot in most instances be funded, in addition to projected

17   completion dates which had already expired, and therefore could

18   not hope to meet this Court's compliance timelines.

19       5) We object to our counsel's attempted agreement with the

20   defendant's revised plan, and specifically that it meets the re-

21   quirements of this Court's Orders of August 4, 2009, or those

22   Orders of October 21, 2009, when it is entirely dependant upon

23   the defendant's ultimate descretion while implementation takes

24   place, while at the same time enjoying maximum flexibility in its

25   satisfaction of all relevant deadlines. We object specifically

26   to our counsel's attempt to agree with a plan that allows the

27   defendants to operate without clearly defined parameters for its

28   PLAINTIFF'S OBJECTIONS       -6-
      CASE NOS: 2:90-CV-00520 LKK JFM: C01-1351 TEH

1   implementation. As stated, many of the defendant's projected
2   deadlines had already expired by the time the plan was submitted.
3   in addition to the questionable or clearly nonexistent funding
4   sources which many of the proposals were dependent upon for suc-
5   cess. Furthermore, based upon a well documented history of the
6   defendant's past conduct and tardiness while facing most of this
7   Court's instructions and orders, there was absolutely no evidence
8   to support any decision by our counsel to agree that the revised
9   plan could have, or would have, met the orders of August 4, 2009.
10      6) We object to our counsel's attempted agreement with the
11  defendant's revised plan, because no portion of the plan targets
12  the release of offenders who have received and successfully com-
13  pleted <u>rehabilitative</u> training as a prerequisite to said release.
14  We specifically object to any plan which instead targets those
15  offenders with the highest recidivism rate, and purposely ignores
16  that group of offenders with the lowest. This objection would
17  also include a plan which purposely excludes those offenders who
18  have met and clearly exceeded their mandatory minimum sentences.
19  This would also include the exclusion of those offenders who have
20  valid court orders, instructing either the CDCR and/or the Gover-
21  nor, to release them from custody forwith, and yet remain in
22  custody with the defiance of these orders.

PLAINTIFF'S OBJECTIONS                -7-
CASE NOS: 2:90-CV-00520 LKK JFM: C01-1351 TEH

1    Our first objections focus on those proposals which the de-

2    fendants re-introduce from their September 18, 2009 Reduction

3    Plan. Defendants continue to assert that the feasibility and

4    projected completion dates remain sound, however, we the under-

5    signed find that under close scrutiny, there is little or no ev-

6    idence substaniating their claims. Therefore, our objections are

7    as follows:

8    1) <u>Pre-Custody Reforms</u>: Introduced under Legislative and Ad-

9    ministrative Reforms at pages 3-4; this portion of the defen-

10   dant's Reduction Plan targets those offenders on felony proba-

11   tion, and creates a system of rewards for counties who can deter

12   the greatest number of probation failures from entering the pri-

13   son system. Additionally, defendants go on to claim that, "The

14   new funding model created by SB18 will sustain funding for

15   improved, evidence-based probation supervision practices." Great-

16   er detail is provided by SB18, however, one specific aspect of

17   this proposal is the focus of our objection.

18   Directing the Court's attention to SB18, Chapter 28, pages

19   2-3, the preamble of this bill discloses the sources of the ini-

20   tial funding for this entire proposal. "This bill would require

21   each county's community corrections programs to be developed and

22   implemented by [their] probation department[s] ..." The remaining

23   content of the entire bill is devoid of any specific details as

24   to how or where these counties will find the necessary funding.

25   Furthermore, while the legislature does admit that, "because

26   this bill would increase the duties for certain local officials,

27   it would impose a state-mandated local program", they provide

28   little encouragement as to their reimbursement. In fact, the

PLAINTIFF'S OBJECTIONS            -8-
CASE: 2:90-CV--00520 LKK JFM: C01-1351 TEH

1    bill goes on to pronounce that, "The bill would provide that with

2    regard to certain mandates, no reimbursement is required by this

3    act for specified reasons." Several thorough reviews of the en-

4    tire documents failed to produce any "specified reasons".

5       Therefore, our primary objection to this proposal is the

6    legislature's failure to provide any "start-up" funding to help

7    the counties participate in this program. All subsequent funding

8    which the defendants claim will sustain these improvements to

9    felony probation services comes _after_ an audit of each depart-

10    ment's anticipated success in reducing their probation failure

11    rates. All the incentives made available are calculated from the

12    projected cost savings that each deterrence would represent.

13       A careful review of the defendant's revised reduction plan

14    reveals their failure to provide the information the Court in-

15    structed them to provide in it's Rejection and Orders of October

16    21, 2009. The defendants were instructed to, "advise the court

17    of specific measures that the state will take to ensure public

18    safety through deversionary programs ..." (Doc #2269 pp.3:20-

19    4:11) They were also instructed to a, "catalogue and [] descrip-

20    tion of the current programs, including the number of persons

21    served by each program, and provide details of any programs plan-

22    ned for the future and the specific implementation dates of such

23    future programs." (Ibid) We the undersigned would assert that the

24    defendants did not and could not provide the information request-

25    ed by the court because it is unlikely that any county is in a

26    fiscal position to undertake what this bill proposes.

27       We would also assert that many of the services which this

28    piece of legislation prescribes for the local probation depart-

1  ments to develope and implement were; at one time; already an in

2  tegral part of the overall programs in place, however, when the

3  legislature pronounced that punishment would henceforth be the

4  mission of California's justice system, the county probation de-

5  partments were systematically defunded. Therefore, it is hardly

6  surprising that a catalogue and description of the current pro-

7  grams, and the numbers of persons served, was not provided.

8      Based upon the content of SB18, the Community Corrections

9  Performance Act re-names county probation, and now calls it Com-

10  munity Corrections. While it pays lip service to this Court's

11  stated position regarding the critical services which county pro-

12  bation should provide, it leaves the heavy work, that is the im-

13  plementation funding, for the counties to shoulder on their own.

14  Any and all funding is prospective, and dependant upon tax sav-

15  ings being redirected to probation for investing in community

16  corrections programs. What should have been of particular intrest

17  to our counsel, are the number of projected successes which can

18  be realized if the directives of this bill were implemented. De-

19  fendants estimate the program will net approximately 1,915 dever-

20  sions from entering CDCR by December 31, 2011. Given the number

21  of counties which compose California, in addition to the shear

22  numbers of probationers filling their respective case loads, it

23  is difficult to envision the net savings 1,915 will actually pro-

24  duce having the depth of sustained funding the defendants would

25  have us believe.

26      Therefore, we object to the proposed pre-custody reforms the

27  defendants propose in their Reduction Plan. We object specifi-

28  cally to the lack of actual funding for implementation of the

PLAINTIFF'S OBJECTIONS            -10-
CASE NOS: 2:90-CV-00520 LKK JFM; C01-1351 TEH

bill's mandates. Subsequent to a thorough review of the Court's Opinion and Orders of August 4, 2009, including those further instructions set forth in the October 21, 2009 rejection of defendant's first Reduction Plan, we find that this proposal fails to satisfy the Court's directives regarding felony probation services. We further find that a careful reading of the Community Corrections Act revealed it to be deviod of actual substance. The funding model proposed could hardly support one large county, much less "Incentive Payments" and "High Performance Grants" for probation departments statewide.

We therefore object to our counsel agreeing and/or stipulating that this proposal satisfies the Court's August 4, 2009 Orders, or that it might actually be feasible.

2) <u>In-Custody Reforms</u>: This proposal is in reality already applicable law, and became so when SB18 became operative January 25, 2010. While it remains unclear whether we the undersigned, or those other offenders sentenced to Indeterminate Sentences, have any meritorious claim to these credit enhancements, that is not the focus of this objection.

This is not the first piece of "bad law" that we have witnessed throughout our decades of incaceration. Bad laws are cobbled together in many cases by those under duress, or the notion that appearing "tough" upon particular matters, will pay off at election time. The claims setforth in both <u>Coleman</u> and <u>Plata</u> are the direct result of such behavior, and as stated in the Little Hoover Report, is the product of legislative body devoid of the political will power to correct a system gone completely astray from its lawful mission.

Having said that, we the undersigned object to one specific provision of the "Credit Earning Enhancements" proposal, and that is the incentivizing of good behavior for program completions. Eligible offenders can earn an additional six weeks of credit per year for the successful of "approved programs", and as with the first generation of "one for one" (half time), it is poorly thought out, and will ultimately absorb copious amounts of legal resources.

Our objection is based on our exclusion from those programs which will become dedicated only to those offenders eligible for the credit earning opportunity. As with "one for one", the CDCR is obligated to make available the credit earning opportunity to any eligible offender who requests it. Also as with "one for one"

PLAINTIFF'S OBJECTIONS                    -12-
CASE NOS; 2;90-CV-00520 LKK JFM; C01-1351 TEH

1  the demand for program placements will overwhelm the CDCR's abi-

2  lity to accomodate the applicants, and ultimately cause the re-

3  introduction of another "bridging program".

4      Furthermore, this credit earning scheme targets those offen-

5  ders who are most likely to re-offend, and will have little effect

6  on their overall rehabilitation. These incentive opportunitys are

7  for good behavior and program completion, and not for the specific

8  purpose of rehabilitation. The goal for the bulk of these offend-

9  ers will be an earlier release date, with little concern for life

10 skills which would equip him for successful social re-entry.

11     We the undersigned have witnessed first hand the dismantling

12 of the infrastructure which provided the critical support for this

13 prison's ability to provide education and vocational training.

14 Many of the teachers and vocational instructors were removed from

15 their classes, and instead re-assigned to "bridging". Soon after

16 nearly all have been laid off and/or released. Whole vocational

17 classes have been stripped of their equipment, and rather than

18 stored for re-activation at a later date, it was subsequently

19 "surveyed", which is CDC speak for disposal. We object to any

20 attempt by our counsel to agree in principal, or stipulate to, the

21 CDCR's ability to provide educational and/or vocational training

22 which this Court specifically addressed in its August 4, 2009

23 Opinion and Orders. We object to any attempt by our counsel to

24 agree in principal, or stipulate to, the CDCR's ability to suc-

25 cessfully and realistically provide rehabilitative training, in

26 a manner timely enough to equip the offenders targeted for release

27 in the 24 months allowed by this Court for the defendants to

28 acheive a population of 137.5% of design capacity.

1    3) _Parole Reforms_: Of the three reforms SB18 has already

2  authorized when it became operative on January 25, 2010, we the

3  undersigned object specifically to any application of the Parole

4  Violation Decision Making Instrument to any subsequent evalua-

5  tions that may impact any determinations regarding their parole

6  suitability. This would also include the possible use of the

7  "California Static Risk Assessment (CSRA) in any future aspect

8  of parole suitability reviews.

9    Defendants claim that a "validated risk assessment tool"

10  has been developed by the CDCR in conjunction with the University

11  of California, Irvine, and based upon information received from

12  the CSRA, can predict "recidivism based on static demographic

13  and criminal history information received from the California

14  Department of Justice". This specific objection is based upon

15  the feasability of "risk assessments" being applied to offenders

16  who have been incarcerated for two to three decades, and contin-

17  ously exposed to psycological and enviromental conditions that

18  are not imagined while reviewing short term offenders.

19    This objection also questions the feasibility of "asses-

20  sments" and "predictions" being based, in part, upon "static

21  demographic" information that in nearly all cases, will be

22  upwards of 25 to 30 years old. Nearly all of this information

23  will have lost its relevance when applied to long term prisoners,

24  and any assessments based upon "current" demographic, which the

25  long term prisoner has not experienced, will in most cases pro-

26  duce skewed results.

27    Despite the fact that this "Parole Violation Decision

28  Making Instrument" is intended for offenders who have violated

1    conditions of their parole, many of the undersigned have already

2    been exposed to "forensic psychologists" who are utilizing an

3    assessment process not intended for the evaluation of long term

4    prisoners.: One recent declaration by Dr. Melvin Macomber, Ph.D,

5    was extremely critical of the CDCR's use of these "actuarial risk

6    assessment instruments to predict future dangerousness or vio-

7    lence potential." (Declaration by Macomber, Ph.D. dated July 18,

8    2009;)

9        Therefore, we the undersigned object to any attempt by our

10   counsel to agree in principal, or stipulate to, any Parole Re-

11   forms that would produce in part, or in whole, and/or authorize

12   the use of any "assessment instruments" for predicting the future

13   dangerousness and/or violence potential of a life term prisoner

14   who would appear before the BPH for a parole suitability hearing.

15   We would also ask that, if allowed, we be able to present further

16   evidence in support of this objection.

4) <u>Administrative Changes</u>: There are five components to this proposal, some of which appear at first blush to be fairly benign, however, others are representative of the very worse in decision making. Our objections therefore are as follows:

The first component to this section is the proposal that California expand it use of Out-of-State facilities. Defendants contend that there are approximately 8,000 inmates in out-of-state facilities. They go on to claim that contracts have been signed to expand the available number of beds by 2,416, which they approximate, will bring the total number of prisoners being imprisoned in states other than there own, to 10,468. We object strenuously to any legislative enactment which would authorize a California resident to be imprisoned in any state other than his own.

The ultimate result of the defendant's abysmal corrections management is a recidivism rate which, depending on the study, is somewhere in the neighborhood of 60-75%. In its August 4, 2009 Opinion and Orders, the term recidivism was used approximately 40 times by the Court, and is an indication of the concern afforded to this primary correctional failure. Punishment increases recividism, rehabilitation efforts lowers recidivism. Our primary point is the deliberate mission failure addressing recidivism, and the impact of this failure on the 10,468 prisoners the defendants wish to ship out of state.

What had once been a lengthy findings and declaration by the legislature, can be found in its current form at Penal Code §6350. The authors declared that, "Maintaining an inmate's family and community relationships is an effective correctional technique which reduces recidivism." Also found was, "The location of pri-

PLAINTIFF'S OBJECTIONS                    -16-
CASE NOS; 2;90-CV-00520 LKK JFM; CO1-1351 TEH

1  sons and lack of services to assist visitors impedes visiting."

2  Shipping our citizens to other states for imprisonment is not in

3  accord with these findings. The entire section titled Prison Visi-

4  tor Services §6350 et seq, fails to address the impact upon fami-

5  lies who have lost contact with loved ones that were shipped out

6  of state. The defendants fail to address this issue in their re-

7  vised plan.

8      Clearly, our counsel should have objected to the overall pro-

9  posal in general, and should have included an additional objection

10 regarding this specific point. Defendants make clear their atten-

11 tion to medical and mental health conditions. There is no excuse

12 for ignoring the prisoner's need for family contact. Recidivism

13 is not a phenomenon sesceptible to one-size-fits-all quick fixes.

14 The plethora of triggers that can cause a prisoner to re-offend

15 demand solutions that don't foreclose such a critical aspect as

16 family contacts. This should have been obvious, and we object to

17 the defendant's failure to address it.

18     The Court may already be aware of the CDCR's treatment of

19 visiting in general, and the many obstacles they force our famil-

20 ies to overcome. At this institution, it is now normal for our

21 visitors to arrive at 1230, and waiting for an hour before actual

22 contact with their prisoner. Overcrowded visiting areas are made

23 available now only on Saturdays and Sundays, weekdays having been

24 found an unacceptable burden on staffing availability. Contact

25 with our families, and the value it represents towards our ability

26 to avoid further law enforcement contact, cannot be overstated.

27 The task of social resurrection can easily overcome our best ef-

28 forts, and become impossible without support.

1    The second component is presented as better utilization of

2 the department's Community Correctional Facilities, however, there's

3 little to define a clear mission. These assests have always rep-

4 resented nothing more than available beds, and absent the neces-

5 sary vision a purposeful direction may never be realized. It is

6 unclear why the department gives no thought of sharing these as-

7 sets with county probation services, who are critically strapped

8 for funding. Even more unclear is the defendant's estimate that

9 approximately 800 inmates will be reduced due to the utilization

10 of these beds, when in fact these prisoners will have never left

11 the system.

12    We therefore object to the introduction of a proposal that

13 fails to any factual solutions to the reduction plans. Political

14 concerns have always dictated eligibility parameters for placement

15 in these facilities, and that is not likely to change, nor the

16 potential realized.

17    The third component is decision to commute the sentences of

18 eligible prisoners, releasing them to federal custody for depor-

19 tation. The defendants project a net reduction of approximately

20 600 prisoners by December 31, 2011, and there is little reason to

21 doubt their ability to meet their objectives. We therefore do not

22 object to this component of administrative changes.

23    The fourth component presents a policy to discharge approxi-

24 mately 12,000 illegal aliens from parole, and who have been dis-

25 charged from custody and deported. There was little rational in

26 keeping illegal aliens, having already been deported, retained on

27 parole, other than as a potential funding source. We therefore do

28 not object to this component of administrative changes.

1    The fifth and final component are Alternative Sanctions for

2    Violations of Parole. The basic proposition is making greater use

3    of electronic monitoring system such as GPS, in lieu of revoca-

4    tion of parole and re-incarceration. Defendants assert that, "the

5    expanded use of GPS and other electronic monitoring systems will

6    permit CDCR to monitor those offenders outside state prison for

7    parole violations."

8    Based upon this proposal for expanded use of GPS systems, the

9    defendants outline a time line for acquiring, what they claim,

10   will be a total of 2000 units for serivce by September 2010. They

11   do not provide any funding details for these units, nor do they

12   explain how or why these electronic units would actually deter

13   parolees from violating the conditions of their parole, other than

14   ensuring their location being available to their parole agent.

15   Therefore, the actual necessity for these devices remains unex-

16   plained. The defendants reveal their own lack of factual precedent

17   by stating that, "if the system truly diverted inmates," and be-

18   cause of this admission, we object to this component entirely.

19   While the defendants claim rehabilitation as being the new

20   mission focus for the corrections system, there is little to sug-

21   gest they are willing to accept certain facts attached to the con-

22   cept. The ability of a parolee to reintegrate with society is ad-

23   mittedly feeble. Introducing an electronic tagging device is no-

24   thing less than ensuring the parolees status revealed. Of deeper

25   concern is the department's track record of introducing seemingly

26   helpful and assuredly benign policy changes, that are then abused

27   in their enforcement. While they propose the units would be an

28   alternative to parole violation, they could just as easily become

PLAINTIFF'S OBJECTIONS                    -19-
CASE NOS; 2;90-CV-00520 LKK JFH; C01-1351 TEH

1  a condition of "high control" parole.

2      Additionally, current information has revealed that without

3  any provocation, other than the fact that they were Indetermi-

4  nately Sentenced prisoners who finally gained their freedom, they

5  are now the target for these electronic devices. We would again

6  point out the defendant's own proposal statements; "CDCR will

7  make greater use of electronic monitoring systems such as Global

8  Positioning systems (GPS), for parole violators in lieu of revo-

9  cation and re-incarceration." [Doc. 2274-1 p.10 ¶3] Our point is

10  therefore made when it comes to twisting and abusing a proposal

11  that our counsel is trying to agree to.Furthermore, the electro-

12  nic devices these parolees are forced to wear  do not provide GPS

13  information, but rather, only a signal that the former prisoner

14  has departed his residence. There are no rescrictions on a paro-

15  lees' ability to come and go from his residence, and this

16  instead is clearly meant to provide another obstacle for him to

17  explain regarding his legal status·

18      We therefore object to any proposal that would have former

19  prisoners being "tagged" with electronic devices, without direct

20  oversight by the sentencing courts.

21

22

23

24

25

26

27

28

1    The next set of objections were summarized in items two and
2    three and also four (infra), and are as follows:

3    The second section of the Defendant's Revised Reduction Plan
4    re-introduces their strategy to increase the overall capacity of
5    this prison system, thereby reducing overcrowding and meeting and
6    the population cap of 137.5%. It is also the defendant's desire
7    to avoid any type of prisoner release process, and their insis-
8    tance in re-introducing the following proposals reveals their in-
9    ability to accept the facts and findings of this Court.

10    Defendants begin with the introduction of Assembly Bill 900
11    (AB 900), along with an abbreviated summary of what this legisla-
12    tion was intended to accomplish. Regrettably, they do not address
13    the findings of this Court which were included the August 4, 2009
14    Opinion and Orders, and because of this failure, we cannot begin
15    to understand our counsel's willingness to accept the defendant's
16    assurances to accomplish multiple construction projects and meet-
17    ing the established deadlines.

18    Based upon the facts which were established by this Court,
19    and still believed to be accurate to the present date, it was de-
20    termined that the bulk of AB 900 remains unfunded. Not one single
21    facility has been constructed, nor any "preliminary-plan" stage
22    reached for any in-fill or re-entry facilities under AB 900. The
23    Court also heard testimony that even if funding were secured in
24    the near future, it could be years finally securing any new sites
25    for subsequent construction. As the Court noted (Doc. #2197 p.
26    104:16-18) the, "CDCR itself estimates that 'we could be looking
27    at several years between the time that we make this recommenda-
28    tion to aquire the land, and occupancy.'"

PLAINTIFF'S OBJECTIONS                          -21-

CASE NOS; 2;90-CV-00520 LKK JFH; CO1-1351 TEH

1    We are therefore, nothing less than astonished after learn-

2    ing that our counsel is attempting to enter a formal agreement on

3    our behalf, and accepting the Defendant's revised plan as being

4    capable of satisfying this Court's orders, as well as the atten-

5    dant deadlines. The entire proposition of increasing the overall

6    capacity of this system has been subjected to an investigation by

7    the Plaintiffs, a host of witnesses who provided expert testimony

8    in addition to the Court's own research. Based upon all the evi-

9    dence, the plan did not provide a feasible alternative to the or-

10   der arrived at by the Court, and yet our counsel accepted their

11   re-introduction of the very same proposals. At issue here is the

12   projected gain of 17,804 beds being added to the system's design

13   capacity, and doing so within the two year time frame established

14   by the Court.

15   We would also point to the testimony received from former

16   CDCR Secretary J. Woodford, that were it possible to actually

17   achieve the net gains projected by the in-fill projects, this in

18   reality would only serve to exacerbate the existing problem of

19   facilities which are already unmanageable because of their cur-

20   rent populations, and the overly complicated decision making ap-

21   paratus used  to administrate. [Nov.9, 2007 Woodford Report ¶31]

22   Additionally, as the Court pointed out in its summation of

23   Medical Facilities and Prison Expansion [Aug.2009 OP.Order pp.

24   105-108], any scheme proposing to increase beds for medical and

25   prison expansion in general cannot remedy the constitutional vio-

26   lations at issue in Plata and Coleman.The state has in the past

27   declined to sign any agreements which may have provided the fund-

28   for "health-care-focused prison facilities" [Id p.106] through

PLAINTIFF'S OBJECTIONS                    -22-
CASE NOS; 2;90-CV-00520 LKK JFH; CO1-1351 TEH

1  the California Infrastructure and Economic Developement Bank (I-
2  Bank) and therefore we cannot find the rationalization needed to
3  believe they would act any differently in the future. This would
4  include any proposed "re-entry" projects which the defendants use
5  to wrap up their plans to increase the current design capacity
6  of the CDCR facilities on whole.

7      Therefore, we steadfastly object to any attempted agreement
8  by our counsel that these plans would satisfy the Orders of this
9  Court. We instead must place our faith in the findings already be-
10  fore the Court when it stated; "As the state's failure to sign
11  the agreement demonstrates, the present fiscal crisis makes any
12  remedy that requires significant additional spending by the state
13  chimerical - the state has said that it will not procure any new
14  funds for prison hospital construction." [Id p.106:23-25]. Based
15  upon this evidence, we submit these objections to any and all
16  proposals to increase the CDCR's designed capacity. [1/]

17
18
19
20
21
22
23
24
25      [1/] It should be noted by the court that one particular pro-
26  ject already undertaken at California Medical Facility at Vaca-
27  ville, modified a pre-existing unit with a net capacity of 200
28  beds, down to 68 handicap beds. Net loss of 132 beds.

PLAITIFF'S OBJECTIONS                    -23-
CASE NOS; 2;90-CV-00520 LKK JFH; CO1-1351 TEH

1    6) <u>Objection to Any Reduction and Release Plan Which Fails</u>

2 <u>To Address the Core Elements Which Drives the CDCR's Inability to</u>

3 <u>Provide Constitutionally Adequate Medical and Mental Health Care:</u>

4    At the core of the CDCR's fiscal strife is the steadfast re-

5 fusal to acknowledge that thousands of prisoners sentenced to in-

6 determinate prison terms, and who have served decades beyond their

7 minimum sentences, remain incarcerated. This also includes their

8 inability to admit that these same prisoners account for the mas-

9 sive medical and mental health expenditures, which have driven

10 both <u>Coleman</u> and <u>Plata</u> through nearly two decades of fruitless

11 litigation. So when the various litigants connected to these cases

12 claim this is not about "Lifers" (Indeterminate Prisoners), they

13 do so at their own peril.

14    This Circuit is already well aware of the crisis which the

15 blanket "No Parole" policy has caused. (See generally; <u>Martin v</u>

16 <u>Marshall</u> 431 F.Supp.2d 1038, 1048-1049; "Under Governors Wilson

17 and Davis, the state 'disregarded regulations ensuring fair suit-

18 ability hearings and instead operated under a sub rosa policy that

19 all murders be found unsuitable for parole,'" citing <u>Coleman</u>, 96-

20 0783 LKK PAN, slip op. at 3.) The reality, no matter how unsavory

21 the flavor, is that when prisoners are held decades past their

22 lawful release dates, they must still be afforded medical and men-

23 tal health care that meets a minimum constitutional standard. We

24 the undersigned are aging, and due to our environment, our health

25 conditions are deteriorating. If you want to hold us forever then

26 you must care for us forever. The defendants cannot escape this

27 consequence, and we object strenuously to our counsel allowing

28 them to do so by agreeing with this second Reduction and Release

PLAINTIFF'S OBJECTIONS                    -24-
CASE NOS; 2;90-CV-00520 LKK JFH; CO1-1351 TEH

1  Plan.

2      Past events have provided this Court clear and convincing

3  evidence that the defendants cannot be relied upon to meet their

4  consitutional responsibilities, and more recent events only act

5  to unscore these facts. (See Sacramento Bee, May 9, 11 and 12,

6  2010; Reporter Charles Piller investigation into CDCR misconduct,

7  which included prisoner abuse and torture. Further investigation

8  into attempted cover-up by corrections undersecretary for opera-

9  tions, Scott Kernan; see also attached letter from State Senator

10 Darrel Steinberg and Mark Leno, their demand for into the Sac.

11 Bee allegations.)

12      The overall conditions within the CDCR have moved past cri-

13 tical, and are now at crisis levels. The latest situation to un-

14 fold is the return of approximately 8,000 out-of-state prisoners.

15 The department has already issued orders to re-activate the "bad

16 beds" (triples) at this institution, and will be doing so through

17 out the 33 other adult institutions in order to absorb the popu-

18 lation increase. Along with the need for additional beds, comes

19 the associated costs that go with the care treatment and custody

20 of these individuals, while at the same sturggling to absorb a

21 1.2 billion dollar budget cut.

22      It is now, therefore, the time and place for this Court to

23 force all concerned parties to face reality. There are at this

24 moment, well over 8 thousand life-term prisoners who have met and

25 exceeded manditory minimum terms. Most by decades.

26

27

28
PLAITIFF'S OBJECTIONS                -25-
CASE NOS; 2;90-CV-00520 LKK JFH; CO1-1351 TEH

1    We the undersigned therefore pray that:

2    1)    The Court will except these objections as having been
3  timely filed due to the circumstances which were out of the
4  plaintiff's control; and,

5    2)    The Court will set a time and place for an evidentiary
6  hearing to take in evidence and hear testimony in support of the
7  undersigned claims and allegations; and,

8    3)    The Court will strike any stipulations and/or settle-
9  ments which their counsel have attempted to enter into on their
10 behalf; and,

11   4)    The Court will appoint counsel for the purpose of pre-
12 senting a Release and Reduction Plan, in so far as it pertains
13 to Indeterminately Sentenced Prisoners; and,

14   5)    The Court will use its own descretion regarding those
15 other plans and reccommendations on matter concerning the provi-
16 sion of medical and mental health by the CDCR.

17

18   We the undersigned respectfully submit these objections, and
19 declare under penalty of perjury, tbat all of the statements,
20 allegations, and beliefs, are set forth based upon their direct
21 knowledge, and as to those other things, based upon their best
22 belief; on this 9th day of June, 2010, at California State
23 Prison at Solano, Vacaville, CA. 95696-4000.

24

25

26   Thomas M. Clark                Khalifa E.D. Saifullah
27   (CDCR # C12457)                (CDCR # C14257)
     Plaintiff/Objectee             Plaintiff/Objectee

28

PLAINTIFF'S OBJECTIONS              -26-
CASE NOS; 2;90-CV-00520 LKK JFH; C01-1351 TEH

*Proof of Service – Mail*

## PROOF OF SERVICE

Re:   Case Number _C IV 290-CV-00520 LKK JFH_

Case Title _CDI-1351  TEH_

_COLEMAN - SCHWARZENEGGER_

_PLATA  -  SCHWARZENEGGER_

I hereby declare that I am a citizen of the United States, am over 18 years of age, and am/am not a party in the above-entitled action.  I am employed in/reside in the County of _SOLANO_, and my business/residence address is _2100 Peabody Rd, Vacaville, CA 95696_

On _June 10, 2010_, I served the attached document described as a _Motion to Strike; Declaration by CLARK; Objections_

on the parties in the above-named case.  I did this by enclosing true copies of the document in sealed envelopes with postage fully prepaid thereon.  I then placed the envelopes in a U.S. Postal Service mailbox in _Vacaville_, California, addressed as follows:

Three Judge Panel                    Attorney General's Office
Prision Law Office                   C. Williams
C. Montgomery                        J. Roberts
M.Yee                                Miller & Wascoe
C. Piller                            D. Spector

I, _____, declare under penalty of perjury that the foregoing is true and correct.

Executed on _June 9, 2010_, at _CSP- SOL_

_Vacaville_, California. _95696_

_____
Signature

1  Thomas M. Clark C12457
   Khalifah E.D. Saif'ullah C14257
2  California State Prison / Solano
   2100 Peabody Road
3  Vacaville, CA. 95696

4  In Pro Per

5            IN THE UNITED STATES DISTRICT COURTS
           FOR THE EASTERN DISTRICT OF CALIFORNIA
6          AND THE NORTHERN DISTRICT OF CALIFORNIA
     UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES
7     PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

8  RALPH COLEMAN, et al.,            )
                                     )
9           Plaintiffs,              )   NO.CIV S-90-0520 LKK JFM P
                                     )
10     v.                            )   THREE-JUDGE COURT
                                     )
11 ARNOLD SCHWARZENEGGER             )
   et al.,                          )
12                                   )
            Defendants.              )
13 _____)

14 MARCIANO PLATA, et al.,           )   NO.C01-1351 TEH
                                     )
15          Plaintiffs,              )
                                     )
16     v.                            )   THREE-JUDGE COURT
                                     )
17 ARNOLD SCHWARZENEGGER             )
   et al.,                          )
18                                   )   DECLARATION BY CLARK IN
            Defendants               )   SUPPORT OF MOTION TO
19                                   )   STRIKE AND OBJECTIONS
   _____)
20                                   )
   THOMAS M. CLARK,                  )
21 KHALIFAH E.D. SAIF'ULLAH,         )
   et al.                           )
22                                   )
           v.    Plaintiffs/         )
23               Objectees           )
                                     )
24                                   )
                                     )
25 ARNOLD SCHWARZENEGGER et al.,     )
                                     )
26          Defendants               )
                                     )
27 _____)

28

                          —1-

# DECLARATION OF CLARK

I THOMAS M. CLARK do declare the following:

1) That I am a party to this action; and

2) That I am 55 years old; and

3) That I have been continuously incarcerated since May 1, 1979; and

4) That I became eligible for parole on February 13, 1984; and,

5) That at no time during this 31 years of continuous incarceration have I been charged and/or convicted of any felony, or charged with any type of criminal assault, or charged with any type of weapons violations; and,

6) That after 31 years of continuous incarceration, the Board of Prison Hearing gave me a seven (7) year denial with the instructions to solicit laudatory chronos, and to aquire yet another trade to accompany the three (3) which I already have.

7) That I began receiving mental health care approximately 10 years ago after discovering the county of my commitment offense had sequestered witnesses to prevent their appearance at my trial, and I am currently under Correctional Clinical Case Management care (CCCS); and,

8) That I have been on medication of severe depression losing my wife in April of 2009; and,

9) That I have recently been upgraded to Chronic Care due to hepatitus C, in addition for a work related accident that resulted in the severe herniation of the disc at L-3/L-4 and L-4/L-5; and,

10) That I receive pain medications for this medical con-

Dec by Clark                    - 2 -

2:90-cv-00520 LKK JFH: CDI-0351 TEH

1  dition three times a day, seven days a week.; and,

2      11)  That sometime in November of 2009, I secured a copy of

3  the Prison Law Office (PLO) information newsds letter, which had

4  been updated and issued on November 13, 2009; and,

5      12)  That nowhere with the PLO News Letter does our Counsel,

6  Donald Specter, appraise us, his clients, of his intention to

7  file any acceptance of the defendant's second Reduction and Re-

8  lease Plan, agreeing that their plan satisfied the Court's August

9  4, 2009 Opinion and Order.: and,

10      13)  That the defendant's second Reduction and Release Plan

11  had been filed in October of 2009, allowing our Counsel ample time

12  to warn us of his intentions to file an agreement with this Court;

13  and,

14      14)  That within the PLO News Letter, updated on January 20,

15  2010, our Counsel provides no explanation for his actions, or for

16  the impact upon us his clients, other than a brief statement which

17  was less than 20 words in length; and,

18      15)  That our counsel's advisement, via this "News Letter"

19  which we are expected to "share" through out the prison system, was

20  released 44 days after the fact, and was not discovered by many of

21  his clients, until April or May of this year; and,

22      16)  That no where within this advisement of January 20th,

23  does it reveal our options as plaintiffs, regarding the nature and

24  consequences of a stipulation being entered on our behalf, without

25  a timely objection being entered; and,

26      17)  That I have advised all of the undersigned plaintiffs

27  as to the nature and consequences of these objections; and,

28      18)  That I file these objections in good faith, and with no

Dec by Clark              - 3 -

2:90 -cv- 00520  LKK JFH; CDI-0351  TEH

1  intention that it become a dilitory tactic of any kind; and,

2  THAT I THOMAS M. CLARK, do declare that the foregoing state-

3  ments are true and correct to the best of my knowledge, which also

4  includes any and all statements and allegations contained with the

5  motion to object, as well as those set forth within the objections

6  themselves; and that as for those other statements and allegations

7  set forth within these documents, that they a true based upon my

8  belief in the information available to me. I declare these state-

9  ments to be true and correct under the penalty of perjury of the

10  laws fo the State of California.

11

12  Signed this _9th_ day of June, 2010, at CSP-Solano, Vacaville,

13  CA. 95696-4000.

14

15

16  Thomas M. Clark
   In Pro Per

17

18

19

20

21

22

23

24

25

26

27

28

Dec by Clark                    - 4 -

2:90 CV-00520 LKK JFH, C01-0351 TEH

1  Thomas M. Clark C12457
   Khalifah E.D. Saif'ullah C14257
2  California State Prison / Solano
   2100 Peabody Road
3  Vacaville, CA. 95696

4  In Pro Per

5          IN THE UNITED STATES DISTRICT COURTS
             FOR THE EASTERN DISTRICT OF CALIFORNIA
6           AND THE NORTHERN DISTRICT OF CALIFORNIA
      UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES
7       PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

8  RALPH COLEMAN, et al.,            )
                                     )
9          Plaintiffs,               )    NO.CIV S-90-0520 LKK JFM P
                                     )
10   v.                              )    THREE-JUDGE COURT
                                     )    _____
11 ARNOLD SCHWARZENEGGER             )
   et al.,                           )
12                                   )
           Defendants.               )
13 _____  )
                                     )
14 MARCIANO PLATA, et al.,           )    NO.C01-1351 TEH
                                     )
15         Plaintiffs,               )
                                     )
16   v.                              )    THREE-JUDGE COURT
                                     )    _____
17 ARNOLD SCHWARZENEGGER             )    MOTION TO STRIKE
   et al.,                           )    PURSUANT TO
18                                   )    F.R.C.P. RULE 12(f)
           Defendants                )
19                                   )
   _____  )
20                                   )
   THOMAS M. CLARK,                  )
21 KHALIFAH E.D. SAIF'ULLAH,         )
   et al.                            )
22                                   )
       v.   Plaintiffs/              )
23          Objectees                )
                                     )
24                                   )
                                     )
25 ARNOLD SCHWARZENEGGER et al.,     )
                                     )
26         Defendants                )
                                     )
27 _____  )

28

                        - 1 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MOTION TO STRIKE
## PURSUANT TO F.R.C.P. RULE 12 (f)

Plaintiffs Thomas M. Clark and Khalifah E.D. Saif'ullah et
al.,come before the Court In Pro Per, and file these objections,
pursuant to Federal Rules of Civil Procedure (F.R.C.P.) Rule 12
(f), in support of their request that the acceptance and/or agree-
ment of the Defendant's second reduction plan, filed by their con-
sel on December 12, 2009, be stricken from the record. They fur-
ther request that they be allowed to present evidence and testi-
mony in support of their objections.

It is the position of the undersigned plaintiffs that their
counsel has failed to protect their constitutional right to future
adequate medical and mental health care when he failed to object
to the defendant's second reduction plan. It is their position
that counsel has agreed to the second plan _in spite of the evi-_
_dence_ which this court has reviewed and found to have been rele-
vant and conclusive. This attempt by counsel to agree with the
defendant's second plan completely subverts the entire trial pro-
cess, and all that's been endured by plaintiffs thus far.

The undersigned plaintiffs understand completely that these
motions to strike are normally disfavored by the court (_Boreri v._
_Fiat S.P.A._, 763 F.2d 17,23 "commenting that motions to strike
'narrow in scope, disfavored in practice, and not calculated
readily to invoke the court's discretion'"); however, they are
unaware of any other plain and speedy remedy at hand. Their coun-
sel steadfastly refuses to communicate or respond directly with
his clients, other than with untimely "news letters" which are
both ambiguous and misleading. The undersigned plaintiffs, how-

Motion to Strike                    - 2 -

2:90-cv-00520 LKK JFH: C01-0351 TEH

1  ever, are firm in their position and <u>do not</u> agree that the defen-

2  dant's second reduction plan will satify the orders and deadlines

3  set forth in this court's Orders and Opinion, issued August 4,

4  2009, and fully support these objections.

5      Furthermore, plaintiffs file this motion in good faith, with

6  no intent that it act as a dilitory tactic. (<u>Hartsell v. Duplex</u>

7  <u>Prods., Inc.</u>, 895 F.Supp. 100, 101), and state the basis for their

8  motion and objections with particularity. It is, in fact, their

9  position that if allowed to proceed with their second reduction

10 plan, there will be absolutely no change in the status quo, other

11 than for conditions to become worse rather than better.

12     Rather; they file this motion because thier counsel has acted

13 in a manner that is suspicious and bordering on scandalous, when

14 he attempts to agree with a plan that is utterly contrary to the

15 evidence at hand. (See <u>Talbot v. Robert Mathews Distributing Co.</u>,

16 961 F.2d 654, 664-65 (7th Cir. 1992) a matter is "scandalous" only

17 if it bears no possible relationship before the court.) In the

18 case before the court, the defendant's second reduction plan

19 bears little or no possible relationship to the reality at hand.

20 The likelyhood that any of these proposals can be achieved, even if

21 the defendant's were granted an additional decade, is infinitesi-

22 mal.

23     The attached memorandum outlines six (6) specific objections

24 which the undersigned believe are fully substantiated by the evi-

25 dence already before the Court. Furthermore; the undersigned be-

26 lieve this evidence is now being ignored by their own counsel,

27 leaving them exposed to greater dangers while the defendants em-

28 ploy tried and proven dilitory tatics, causing plaintiffs irre-

Motion to Strike        - 3 -
2:90 CV-00520 LKK  JFH; CO1.0351 TEH

1  pairable harm and prejudice.

2      The undersigned further request that this motion be consider-

3  ed with liberality (<u>Antonelli v. Sheahan</u>, 81 F.3d 1422, 1427 (7th

4  Cir.1996)), and upon the Court's discretion, converted to the

5  proper pleading if found to be inadequate for the purpose inten-

6  ded.

7      The undersigned also request and move the Court for a hearing

8   and that they appointed counsel for the purpose of presenting

9  the relevant evidence which substantiates the allegations set

10  forth in this motion. The undersigned have already spoken with a

11  possible candidate for this purpose, and who is already up to

12  speed with the issues at hand. This would futher insure the expe-

13  ditious presentation of these objections.

14

15

16      Respectfully submitted this 9th day of June, 2010, at

17  California State Prison at Solano, Vacaville, CA. 95696-4000

18

19

20  Thomas M. Clark                    Khalifah E.D. Saifullah

21  (CDCR # C12457)                    (CDCR # C14257)
    Plaintiff/Objectee                Plaintiff/Objectee

22

23

24

25

26

27

28

Motion to Strike
2:90 CV-00520 LKK JFH, C07-0351 TEH

1  Thomas M. Clark (CDCR# C12457)
   Khalifah E.D. Saifullah (CDCR# C14257)
2  CSP-Sol/Facility 4/Level II
   P.O. Box 4000
3  Vacaville, CA. 95696-4000

4  Appearing Pro Per et al.

ORIGINAL
FILED

JUN 2 8 2010

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

5

6

7          IN THE UNITED STATES DISTRICT COURTS
      FOR THE EASTERN DISTRICT OF CALIFORNIA
8      AND THE NORTHERN DISTRICT OF CALIFORNIA
   UNITED STATES DISTRICT COURTS COMPOSED OF THREE-JUDGES
9   PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

10

11 RALPH COLEMAN, et al.,          )  Case No. CIV S-90-0520 LKK JFM
                                   )
12            Plaintiffs,          )  THREE-JUDGE COURT
                                   )
13       v.                        )
                                   )
14 ARNOLD SCHWARZENEGGER, et al,   )
                                   )
15            Defendants.          )
                                   )
16 _____     )
                                   )
17 MARCIANO PLATA, et al.,         )  Case No. CO1-cv-1351 TEH
                                   )
18            Plaintiffs,          )
                                   )
19       v.                        )  THREE-JUDGE COURT
                                   )
20 ARNOLD SCHWARZENEGGER, et al.,  )
                                   )
21            Defendants.          )
                                   )
22 _____     )
                                   )
23 THOMAS M. CLARK                 )  NOTICE OF OBJECTIONS BY
   KHALIFAH E.D. SAIF'ULLAH        )  INDETERMINATELY SENTENCED
24 R.E. FLEENOR                    )  PLAINTIFF CLASS; NOTICE OF
   M.D. KEEYES                     )  MOTION TO STRIKE F.R.C.P. RULE
25 J. CANTY                        )  12(f), AND MOTION; MEMORANDUM
   P. CARR                         )  SETTING FORTH OBJECTIONS AND
26 J. NEAL                         )  CITING RELEVANT DATA/EVIDENCE;
   A. MANN                         )  DECLARATION BY CLARK IN SUP-
27 L. SMITH                        )  PORT OF MOTIONS AND OBJECTIONS
   B. SUMMERSVILLE                 )
28 K. FROST                        )
   R. Foster                       )

   PLAINTIFF"S OBJECTIONS               !
    Cases: 2:90-cv-00520 LKK JFM: C01-1351 TEH

```
 1   THOMAS SMITH                    )
     DARRYL POOLE                    )
 2   P. KEOSOUPHA                    )
     LONNIE WILLIAMS                 )
 3   V. TOWNS                        )
     ISHEAL WESLEY                   )
 4                                   )
     T. BOWIE                        )
 5                                   )
     J. DENHAM                       )
 6   A. ACHMAD                       )
     MALCOM SCOTT                    )
 7   CURT HOLLIDAY                   )
     SHELDON SANDERS                 )
 8   JUSTUS EVANS                    )
     F. VARNER                       )
 9   MELVIN HOWARD                   )
     P. LEGALL                       )
10   KHALIYFAH TAYLOR                )
     B. WASHINGTON                   )
11   ANTOINE SIMMONS                 )
     R. O'NEAL                       )
12   K. MAYWEATHERS                  )
     ANTONIO REDDICK                 )
13   J. WOODS                        )
     C. PARKER                       )
14   KEITH ASH                       )
     TIMOTHY YERGIN                  )
15   IVAN JONES                      )
     MALCOM SCOTT                    )
16   RICHYARD COCKRELL               )
     LAMONT ERVIN                    )
17   J. HILL                         )
     SAMUEL MORGAN                   )
18   AHMED HASAN                     )
     CHARLES HUNTLY                  )
19   ABDULLAH ALI                    )
     AVERY MYERS                     )
20   HARVEY KNIGHT                   )
                                     )
21   ROBERT KHAN                     )
     DAVID HILLARY                   )
22   DAVID DUGAN                     )
     TOBY EVANS                      )
23   WILLIAM PALMER                  )
     KEVIN ROLAND                    )
24   BENJAMIS ADKINS                 )
     TYRONE FOREMAN                  )
25   LARRY HARRIS                    )
     ROBBIE CLAYTON                  )
26                                   )
     PATHAN ATIK                     )
27                                   )
     ANTHONY DE BOSE                 )
28
     PLAINTIFF'S OBJECTIONS          -2-
     CASE NOS 2:90-CV-00520 LKK JFM: C01-1351 TEH
```

```
 1   C. CLARK                        )
     E. VANNORSDELL                  )
 2   M. JOHNSON                      )
     E. WILLIAMS                     )
 3   K. ATWOOD                       )
     M. MARICH                       )
 4   A. WARE                         )
     K. WHITE                        )
 5   B. NEAL                         )
     F. NANTES                       )
 6                                   )
                    Plaintiffs,      )
 7                   Objectees, et al. )
                                     )
 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   PLAINTIFF'S OBJECTIONS              -3-
     CASE NOS 2:90-CV-00520 LKK JFM: C0-1351 TEH
```

# OBJECTIONS TO THE DEFENDANT'S SECOND REVISED POPULATION REDUCTION PLAN

We the undersigned respectfully come before this court and request that we be recognized as plaintiffs to the above entitled action, as well as relevant stakeholders in these matters, and thereby having standing to present pertinent objections to the defendant's revised Population Reduction Plan.

We understand that we are currently represented by counsel; however, we request further leave to present evidence that our counsel has entered an agreement that said revised plan by defendants meets the orders and requirements setforth in this Court's Opinion and Orders of August 4, 2009, when in fact said plan lacks any aspects of possible feasibility. It is our position that, despite overwhelming evidence which has been found by this Court to both factual and conclusive, our counsel has agreed to a revised plan that will allow the defendants to maintain the status quo, and continue to deny the plaintiff's medical and mental health care that will meet a constitutional minimum.

In presenting these objections, we are forced to proceed without the aid of counsel because; 1) counsel has steadfastly refused to acknoledge our position via direct communication; 2) while refusing to communicate directly, counsel has plead an inability to respond due to the magnitude of prisoner and parolee responses, and instead utilized a "Pamphlet" containing the information they have deemed relevant to share; 3) based upon this method of communication, we the undersigned have only just now

PLAINTIFF'S OBJECTIONS          -4-
CASE NOS 2:90-CV-00520 LKK JFM: C01-1351 TEH

1   marshalled the relevant information needed to understand fully

2   the consequences of their counsel's attempt to agree that the

3   revised plan meets the court's orders. This information was also

4   necessary to support the objections presented herein. We believe

5   it should be readily apparent to the court that these objections

6   are consistent with the evidence already before the court, and

7   should therefore warrant consideration.

8                                    * * *

9                          OBJECTIONS

10       1) We object to our counsel's attempt to agree that the

11  defendant's revised plan satisfies the requirements and orders

12  setforth by this Court in its August 4, 2009 Opinion and Order,

13  when the evidence before the Court clearly and convincingly pro-

14  ved that the plan's content and ultimate feasibility is void of

15  any possible merit, as will be explained later.

16       2) We further object to the defendant's revised plan because

17  it is entirely dependant upon funding which is not specifically

18  identified, other than those portions which claim to be funded

19  via AB900. As to those portions which are allegedly funded via

20  AB900, we object to our counsel attempting to agree to those por-

21  tions because defendants propose to reduce overcrowding with the

22  addition of approximately 3796 beds to the CDCR's designed capa-

23  city based upon projects that are dependant upon this same Assem-

24  bly Bill which remains unfunded by the state legislature.

25       3) We object to the defendant's revised plan because it has

26  based the addition of approximately 3832 new beds to the CDCR's

27  design capacity, upon their ability to renivate and convert exis-

28  ting Juvenile Justice facilities; however, due to absence of any

PLAINTIFF'S OBJECTIONS               -5-
CASE NOS: 2:90-CV-00520 LKK JFM: C01-1351 TEH

1  dedicated funding, or funding sources, the projected completion
2  dates had already expired at the time the plan was being submit-
3  ted to this Court. The ability of this revised plan to meet a
4  population cap of 137.5% of design capacity within two years
5  depends upon the feasibility of each aspect, and clearly this
6  aspect will not meet the court's timeline.

7      4) We object to the defendant's revised plan because it pro-
8  jects the addition of approximately 2203 new beds to the CDCR's
9  overall design capacity, with the construction of 14 new medical
10  and mental health care projects. There is, however, no funding
11  sources identified in the plan, and the feasibility of obtaining
12  funding dedicated for these specific projects remains dubious.
13  At the present time, the CDCR continues to cut medical and mental
14  health care budgets due to fiscal crisis our state is mired in.
15  We object specifically to our counsel agreeing to a revised plan
16  that cannot in most instances be funded, in addition to projected
17  completion dates which had already expired, and therefore could
18  not hope to meet this Court's compliance timelines.

19      5) We object to our counsel's attempted agreement with the
20  defendant's revised plan, and specifically that it meets the re-
21  quirements of this Court's Orders of August 4, 2009, or those
22  Orders of October 21, 2009, when it is entirely dependant upon
23  the defendant's ultimate descretion while implementation takes
24  place, while at the same time enjoying maximum flexibility in its
25  satisfaction of all relevant deadlines. We object specifically
26  to our counsel's attempt to agree with a plan that allows the
27  defendants to operate without clearly defined parameters for its

28  PLAINTIFF'S OBJECTIONS                    -6-
   CASE NOS: 2:90-CV-00520 LKK JFM: C01-1351 TEH

1    implementation. As stated, many of the defendant's projected

2    deadlines had already expired by the time the plan was submitted.

3    in addition to the questionable or clearly nonexistent funding

4    sources which many of the proposals were dependent upon for suc-

5    cess. Furthermore, based upon a well documented history of the

6    defendant's past conduct and tardiness while facing most of this

7    Court's instructions and orders, there was absolutely no evidence

8    to support any decision by our counsel to agree that the revised

9    plan could have, or would have, met the orders of August 4, 2009.

10        6) We object to our counsel's attempted agreement with the

11    defendant's revised plan, because no portion of the plan targets

12    the release of offenders who have received and successfully com-

13    pleted rehabilitative training as a prerequisite to said release.

14    We specifically object to any plan which instead targets those

15    offenders with the highest recividism rate, and purposely ignores

16    that group of offenders with the lowest. This objection would

17    also include a plan which purposely excludes those offenders who

18    have met and clearly exceeded their mandatory minimum sentences.

19    This would also include the exclusion of those offenders who have

20    valid court orders, instructing either the CDCR and/or the Gover-

21    nor, to release them from custody forwith, and yet remain in

22    custody with the defiance of these orders.

PLAINTIFF'S OBJECTIONS                    -7-
CASE NOS: 2:90-CV-00520 LKK JFM: C01-1351 TEH

1    Our first objections focus on those proposals which the de-

2    fendants re-introduce from their September 18, 2009 Reduction

3    Plan. Defendants continue to assert that the feasibility and

4    projected completion dates remain sound, however, we the under-

5    signed find that under close scrutiny, there is little or no ev-

6    idence substaniating their claims. Therefore, our objections are

7    as follows:

8    1) <u>Pre-Custody Reforms</u>: Introduced under Legislative and Ad-

9    ministrative Reforms at pages 3-4; this portion of the defen-

10   dant's Reduction Plan targets those offenders on felony proba-

11   tion, and creates a system of rewards for counties who can deter

12   the greatest number of probation failures from entering the pri-

13   son system. Additionally, defendants go on to claim that, "The

14   new funding model created by SB18 will sustain funding for

15   improved, evidence-based probation supervision practices." Great-

16   er detail is provided by SB18, however, one specific aspect of

17   this proposal is the focus of our objection.

18   Directing the Court's attention to SB18, Chapter 28, pages

19   2-3, the preamble of this bill discloses the sources of the ini-

20   tial funding for this entire proposal. "This bill would require

21   each county's community corrections programs to be developed and

22   implemented by [their] probation department[s] ..." The remaining

23   content of the entire bill is devoid of any specific details as

24   to how or where these counties will find the necessary funding.

25   Furthermore, while the legislature does admit that, "because

26   this bill would increase the duties for certain local officials,

27   it would impose a state-mandated local program", they provide

28   little encouragement as to their reimbursement. In fact, the

PLAINTIFF'S OBJECTIONS          -8-
CASE: 2:90-CV--00520 LKK JFM: C01-1351 TEH

1  bill goes on to pronounce that, "The bill would provide that with
2  regard to certain mandates, no reimbursement is required by this
3  act for specified reasons." Several thorough reviews of the en-
4  tire documents failed to produce any "specified reasons".

5      Therefore, our primary objection to this proposal is the
6  legislature's failure to provide any "start-up" funding to help
7  the counties participate in this program. All subsequent funding
8  which the defendants claim will sustain these improvements to
9  felony probation services comes _after_ an audit of each depart-
10  ment's anticipated success in reducing their probation failure
11  rates. All the incentives made available are calculated from the
12  projected cost savings that each deterrence would represent.

13      A careful review of the defendant's revised reduction plan
14  reveals their failure to provide the information the Court in-
15  structed them to provide in it's Rejection and Orders of October
16  21, 2009. The defendants were instructed to, "advise the court
17  of specific measures that the state will take to ensure public
18  safety through deversionary programs ..." (Doc #2269 pp.3:20-
19  4:11) They were also instructed to a, "catalogue and [] descrip-
20  tion of the current programs, including the number of persons
21  served by each program, and provide details of any programs plan-
22  ned for the future and the specific implementation dates of such
23  future programs." (Ibid) We the undersigned would assert that the
24  defendants did not and could not provide the information request-
25  ed by the court because it is unlikely that any county is in a
26  fiscal position to undertake what this bill proposes.

27      We would also assert that many of the services which this
28  piece of legislation prescribes for the local probation depart-

PLAINTIFF'S OBJECTIONS                    -9-
CASE NOS: 2:90-CV-00520 LKK JFM: C01-1351 TEH

1  ments to develope and implement were; at one time; already an in
2  tegral  part of the overall programs in place, however, when the
3  legislature pronounced that punishment would henceforth be the
4  mission of California's justice system, the county probation de-
5  partments were systematically defunded. Therefore, it is hardly
6  surprising that a catalogue and description of the current pro-
7  grams, and the numbers of persons served, was not provided.

8      Based upon the content of SB18, the Community Corrections
9  Performance Act re-names county probation, and now calls it Com-
10  munity Corrections. While it pays lip service to this Court's
11  stated position regarding the critical services which county pro-
12  bation should provide, it leaves the heavy work, that is the im-
13  plementation funding, for the counties to shoulder on their own.
14  Any and all funding is prospective, and dependant upon tax sav-
15  ings being redirected to probation for investing in community
16  corrections programs. What should have been of particular intrest
17  to our counsel, are the number of projected successes which can
18  be realized if the directives of this bill were implemented. De-
19  fendants estimate the program will net approximately 1,915 dever-
20  sions from entering CDCR by December 31, 2011. Given the number
21  of counties which compose California, in addition to the shear
22  numbers of probationers filling their respective case loads, it
23  is difficult to envision the net savings 1,915 will actually pro-
24  duce having the depth of sustained funding the defendants would
25  have us believe.

26      Therefore, we object to the proposed pre-custody reforms the
27  defendants propose in their Reduction Plan. We object specifi-
28  cally to the lack of actual funding for implementation of the

PLAINTIFF'S OBJECTIONS            -10-
CASE NOS: 2:90-CV-00520 LKK JFM; C01-1351 TEH

1  bill's mandates. Subsequent to a thorough review of the Court's

2  Opinion and Orders of August 4, 2009, including those further in-

3  structions set forth in the October 21, 2009 rejection of defen-

4  dant's first Reduction Plan, we find that this proposal fails to

5  satisfy the Court's directives regarding felony probation ser-

6  vices. We further find that a careful reading of the Community

7  Corrections Act revealed it to be deviod of actual substance. The

8  funding model proposed could hardly support one large county, much

9  less "Incentive Payments" and "High Performance Grants" for pro-

10 bation departments statewide.

11      We therefore object to our counsel agreeing and/or stipula-

12 ting that this proposal satisfies the Court's August 4, 2009

13 Orders, or that it might actually be feasible.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S OBJECTIONS              -11-
CASE NOS; 2;90-CV-00520 LKK JFM; CO1-1351 TEH

2) <u>In-Custody Reforms</u>: This proposal is in reality already applicable law, and became so when SB18 became operative January 25, 2010. While it remains unclear whether we the undersigned, or those other offenders sentenced to Indeterminate Sentences, have any meritorious claim to these credit enhancements, that is not the focus of this objection.

This is not the first piece of "bad law" that we have witnessed throughout our decades of incaceration. Bad laws are cobbled together in many cases by those under duress, or the notion that appearing "tough" upon particular matters, will pay off at election time. The claims setforth in both <u>Coleman</u> and <u>Plata</u> are the direct result of such behavior, and as stated in the Little Hoover Report, is the product of legislative body devoid of the political will power to correct a system gone completely astray from its lawful mission.

Having said that, we the undersigned object to one specific provision of the "Credit Earning Enhancements" proposal, and that is the incentivizing of good behavior for program completions. Eligible offenders can earn an additional six weeks of credit per year for the successful of "approved programs", and as with the first generation of "one for one" (half time), it is poorly thought out, and will ultimately absorb copious amounts of legal resources.

Our objection is based on our exclusion from those programs which will become dedicated only to those offenders eligible for the credit earning opportunity. As with "one for one", the CDCR is obligated to make available the credit earning opportunity to any eligible offender who requests it. Also as with "one for one"

PLAINTIFF'S OBJECTIONS                    -12-
CASE NOS; 2;90-CV-00520 LKK JFM; C01-1351 TEH

1 the demand for program placements will overwhelm the CDCR's abi-

2 lity to accomodate the applicants, and ultimately cause the re-

3 introduction of another "bridging program".

4    Furthermore, this credit earning scheme targets those offen-

5 ders who are most likely to re-offend, and will have little effect

6 on their overall rehabilitation. These incentive opportunitys are

7 for good behavior and program completion, and not for the specific

8 purpose of rehabilitation. The goal for the bulk of these offend-

9 ers will be an earlier release date, with little concern for life

10 skills which would equip him for successful social re-entry.

11    We the undersigned have witnessed first hand the dismantling

12 of the infrastructure which provided the critical support for this

13 prison's ability to provide education and vocational training.

14 Many of the teachers and vocational instructors were removed from

15 their classes, and instead re-assigned to "bridging". Soon after

16 nearly all have been laid off and/or released. Whole vocational

17 classes have been stripped of their equipment, and rather than

18 stored for re-activation at a later date, it was subsequently

19 "surveyed", which is CDC speak for disposal. We object to any

20 attempt by our counsel to agree in principal, or stipulate to, the

21 CDCR's ability to provide educational and/or vocational training

22 which this Court specifically addressed in its August 4, 2009

23 Opinion and Orders. We object to any attempt by our counsel to

24 agree in principal, or stipulate to, the CDCR's ability to suc-

25 cessfully and realistically provide rehabilitative training, in

26 a manner timely enough to equip the offenders targeted for release

27 in the 24 months allowed by this Court for the defendants to

28 acheive a population of 137.5% of design capacity.

1     3) <u>Parole Reforms</u>: Of the three reforms SB18 has already

2 authorized when it became operative on January 25, 2010, we the

3 undersigned object specifically to any application of the Parole

4 Violation Decision Making Instrument to any subsequent evalua-

5 tions that may impact any determinations regarding their parole

6 suitability. This would also include the possible use of the

7 "California Static Risk Assessment (CSRA) in any future aspect

8 of parole suitability reviews.

9     Defendants claim that a "validated risk assessment tool"

10 has been developed by the CDCR in conjunction with the University

11 of California, Irvine, and based upon information received from

12 the CSRA, can predict "recividism based on static demographic

13 and criminal history information received from the California

14 Department of Justice". This specific objection is based upon

15 the feasability of "risk assessments" being applied to offenders

16 who have been incarcerated for two to three decades, and contin-

17 ously exposed to psycological and enviromental conditions that

18 are not imagined while reviewing short term offenders.

19     This objection also questions the feasibility of "asses-

20 sments" and "predictions" being based, in part, upon "static

21 demographic" information that in nearly all cases, will be

22 upwards of 25 to 30 years old. Nearly all of this information

23 will have lost its relevance when applied to long term prisoners,

24 and any assessments based upon "current" demographic, which the

25 long term prisoner has not experienced, will in most cases pro-

26 duce skewed results.

27     Despite the fact that this "Parole Violation Decision

28 Making Instrument" is intended for offenders who have violated

PLAINTIFF'S OBJECTIONS        -14-
CASE NOS; 2;90-CV-00520 LKK JFM; C01-1351 TEH

1  conditions of their parole, many of the undersigned have already

2  been exposed to "forensic psychologists" who are utilizing an

3  assessment process not intended for the evaluation of long term

4  prisoners.: One recent declaration by Dr. Melvin Macomber, Ph.D,

5  was extremely critical of the CDCR's use of these "actuarial risk

6  assessment instruments to predict future dangerousness or vio-

7  lence potential." (Declaration by Macomber, Ph.D. dated July 18,

8  2009;)

9      Therefore, we the undersigned object to any attempt by our

10  counsel to agree in principal, or stipulate to, any Parole Re-

11  forms that would produce in part, or in whole, and/or authorize

12  the use of any "assessment instruments" for predicting the future

13  dangerousness and/or violence potential of a life term prisoner

14  who would appear before the BPH for a parole suitability hearing.

15  We would also ask that, if allowed, we be able to present further

16  evidence in support of this objection.

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S OBJECTIONS                    -15-
CASE NOS; 2;90-CV-00520 LKK JFM; CO1-1351 TEH

4) <u>Administrative Changes</u>: There are five components to this proposal, some of which appear at first blush to be fairly benign, however, others are representative of the very worse in decision making. Our objections therefore are as follows:

The first component to this section is the proposal that California expand it use of Out-of-State facilities. Defendants contend that there are approximately 8,000 inmates in out-of-state facilities. They go on to claim that contracts have been signed to expand the available number of beds by 2,416, which they approximate, will bring the total number of prisoners being imprisoned in states other than there own, to 10,468. We object strenuously to any legislative enactment which would authorize a California resident to be imprisoned in any state other than his own.

The ultimate result of the defendant's abysmal corrections management is a recidivism rate which, depending on the study, is somewhere in the neighborhood of 60-75%. In its August 4, 2009 Opinion and Orders, the term recidivism was used approximately 40 times by the Court, and is an indication of the concern afforded to this primary correctional failure. Punishment increases recidivism, rehabilitation efforts lowers recidivism. Our primary point is the deliberate mission failure addressing recidivism, and the impact of this failure on the 10,468 prisoners the defendants wish to ship out of state.

What had once been a lengthy findings and declaration by the legislature, can be found in its current form at Penal Code §6350. The authors declared that, "Maintaining an inmate's family and community relationships is an effective correctional technique which reduces recidivism." Also found was, "The location of pri-

1   sons and lack of services to assist visitors impedes visiting."
2   Shipping our citizens to other states for imprisonment is not in
3   accord with these findings. The entire section titled Prison Visi-
4   tor Services §6350 et seq, fails to address the impact upon fami-
5   lies who have lost contact with loved ones that were shipped out
6   of state. The defendants fail to address this issue in their re-
7   vised plan.

8       Clearly, our counsel should have objected to the overall pro-
9   posal in general, and should have included an additional objection
10  regarding this specific point. Defendants make clear their atten-
11  tion to medical and mental health conditions. There is no excuse
12  for ignoring the prisoner's need for family contact. Recidivism
13  is not a phenomenon sesceptible to one-size-fits-all quick fixes.
14  The plethora of triggers that can cause a prisoner to re-offend
15  demand solutions that don't foreclose such a critical aspect as
16  family contacts. This should have been obvious, and we object to
17  the defendant's failure to address it.

18      The Court may already be aware of the CDCR's treatment of
19  visiting in general, and the many obstacles they force our famil-
20  ies to overcome. At this institution, it is now normal for our
21  visitors to arrive at 1230, and waiting for an hour before actual
22  contact with their prisoner. Overcrowded visiting areas are made
23  available now only on Saturdays and Sundays, weekdays having been
24  found an unacceptable burden on staffing availability. Contact
25  with our families, and the value it represents towards our ability
26  to avoid further law enforcement contact, cannot be overstated.
27  The task of social resurrection can easily overcome our best ef-
28  forts, and become impossible without support.

PLAINTIFF'S OBJECTIONS              -17-
CASE NOS; 2;90-CV-00520 LKK JFH; CO1-1351 TEH

1    The second component is presented as better utilization of

2  the department's Community Correctional Facilities, however, there's

3  little to  define a clear mission. These assests have always rep-

4  resented nothing more than available beds, and absent the neces-

5  sary vision a purposeful direction may never be realized. It is

6  unclear why the department gives no thought of sharing these as-

7  sets with county probation services, who are critically strapped

8  for funding. Even more unclear is the defendant's estimate that

9  approximately 800 inmates will be reduced due to the utilization

10  of these beds, when in fact these prisoners will have never left

11  the system.

12    We therefore object to the introduction of a proposal that

13  fails to any factual solutions to the reduction plans. Political

14  concerns have always dictated eligibility parameters for placement

15  in these facilities, and that is not likely to change, nor the

16  potential realized.

17    The third component is decision to commute the sentences of

18  eligible prisoners, releasing them to federal custody for depor-

19  tation. The defendants project a net reduction of approximately

20  600 prisoners by December 31, 2011, and there is little reason to

21  doubt their ability to meet their objectives. We therefore do not

22  object to this component of administrative changes.

23    The fourth component presents a policy to discharge approxi-

24  mately 12,000 illegal aliens from parole, and who have been dis-

25  charged from custody and deported. There was little rational in

26  keeping illegal aliens, having already been deported, retained on

27  parole, other than as a potential funding source. We therefore do

28  not object to this component of administrative changes.

PLAINTIFF'S OBJECTIONS            -18-
CASE NOS; 2;90-CV-00520 LKK JFH; CO1-1351 TEH

1    The fifth and final component are Alternative Sanctions for

2  Violations of Parole. The basic proposition is making greater use

3   of electronic monitoring system such as GPS, in lieu of revoca-

4  tion of parole and re-incarceration. Defendants assert that, "the

5  expanded use of GPS and other electronic monitoring systems will

6  permit CDCR to monitor those offenders outside state prison for

7  parole violations."

8    Based upon this proposal for expanded use of GPS systems, the

9  defendants outline a time line for acquiring, what they claim,

10  will be a total of 2000 units for serivce by September 2010. They

11  do not provide any funding details for these units, nor do they

12  explain how or why these electronic units would actually deter

13  parolees from violating the conditions of their parole, other than

14  ensuring their location being available to their parole agent.

15  Therefore, the actual necessity for these devices remains unex-

16  plained. The defendants reveal their own lack of factual precedent

17  by stating that, "if the system truly diverted inmates," and be-

18  cause of this admission, we object to this component entirely.

19    While the defendants claim rehabilitation as being the new

20  mission focus for the corrections system, there is little to sug-

21  gest they are willing to accept certain facts attached to the con-

22  cept. The ability of a parolee to reintegrate with society is ad-

23  mittedly feeble. Introducing an electronic tagging device is no-

24  thing less than ensuring the parolees status revealed. Of deeper

25  concern is the department's track record of introducing seemingly

26  helpful and assuredly benign policy changes, that are then abused

27  in their enforcement. While they propose the units would be an

28  alternative to parole violation, they could just as easily become

PLAINTIFF'S OBJECTIONS                    -19-

CASE NOS; 2;90-CV-00520 LKK JFH; CO1-1351 TEH

1  a condition of "high control" parole.

2    Additionally, current information has revealed that without

3  any provocation, other than the fact that they were Indetermi-

4  nately Sentenced prisoners who finally gained their freedom, they

5  are now the target for these electronic devices. We would again

6  point out the defendant's own proposal statements; "CDCR will

7  make greater use of electronic monitoring systems such as Global

8  Positioning systems (GPS), <u>for parole violators in lieu of revo-</u>

9  <u>cation and re-incarceration</u>." [Doc. 2274-1 p.10 ¶3] Our point is

10  therefore made when it comes to twisting and abusing a proposal

11  that our counsel is trying to agree to.Furthermore, the electro-

12  nic devices these parolees are forced to wear <u>do not</u> provide GPS

13  information, but rather, only a signal that the former prisoner

14  has departed his residence. There are no rescrictions on a paro-

15  lees' ability to come and go from his residence, and this

16  instead is clearly meant to provide another obstacle for him to

17  explain regarding his legal status.

18    We therefore object to any proposal that would have former

19  prisoners being "tagged" with electronic devices, without direct

20  oversight by the sentencing courts.

21

22

23

24

25

26

27

28

1    The next set of objections were summarized in items two and

2    three and also four (infra), and are as follows:

3    The second section of the Defendant's Revised Reduction Plan

4    re-introduces their strategy to increase the overall capacity of

5    this prison system, thereby reducing overcrowding and meeting and

6    the population cap of 137.5%. It is also the defendant's desire

7    to avoid any type of prisoner release process, and their insis-

8    tance in re-introducing the following proposals reveals their in-

9    ability to accept the facts and findings of this Court.

10    Defendants begin with the introduction of Assembly Bill 900

11    (AB 900), along with an abbreviated summary of what this legisla-

12    tion was intended to accomplish. Regrettably, they do not address

13    the findings of this Court which were included the August 4, 2009

14    Opinion and Orders, and because of this failure, we cannot begin

15    to understand our counsel's willingness to accept the defendant's

16    assurances to accomplish multiple construction projects and meet-

17    ing the established deadlines.

18    Based upon the facts which were established by this Court,

19    and still believed to be accurate to the present date, it was de-

20    termined that the bulk of AB 900 remains unfunded. Not one single

21    facility has been constructed, nor any "preliminary-plan" stage

22    reached for any in-fill or re-entry facilities under AB 900. The

23    Court also heard testimony that even if funding were secured in

24    the near future, it could be years finally securing any new sites

25    for subsequent construction. As the Court noted (Doc. #2197 p.

26    104:16-18) the, "CDCR itself estimates that 'we could be looking

27    at several years between the time that we make this recommenda-

28    tion to aquire the land, and occupancy.'"

PLAINTIFF'S OBJECTIONS                    -21-

CASE NOS; 2;90-CV-00520 LKK JFH; C01-1351 TEH

1    We are therefore, nothing less than astonished after learn-
2    ing that our counsel is attempting to enter a formal agreement on
3    our behalf, and accepting the Defendant's revised plan as being
4    capable of satisfying this Court's orders, as well as the atten-
5    dant deadlines. The entire proposition of increasing the overall
6    capacity of this system has been subjected to an investigation by
7    the Plaintiffs, a host of witnesses who provided expert testimony
8    in addition to the Court's own research. Based upon all the evi-
9    dence, the plan did not provide a feasible alternative to the or-
10   der arrived at by the Court, and yet our counsel accepted their
11   re-introduction of the very same proposals. At issue here is the
12   projected gain of 17,804 beds being added to the system's design
13   capacity, and doing so within the two year time frame established
14   by the Court.

15   We would also point to the testimony received from former
16   CDCR Secretary J. Woodford, that were it possible to actually
17   achieve the net gains projected by the in-fill projects, this in
18   reality would only serve to exacerbate the existing problem of
19   facilities which are already unmanageable because of their cur-
20   rent populations, and the overly complicated decision making ap-
21   paratus used  to administrate. [Nov.9, 2007 Woodford Report ¶31]

22   Additionally, as the Court pointed out in its summation of
23   Medical Facilities and Prison Expansion [Aug.2009 OP.Order pp.
24   105-108], any scheme proposing to increase beds for medical and
25   prison expansion in general cannot remedy the constitutional vio-
26   lations at issue in Plata and Coleman.The state has in the past
27   declined to sign any agreements which may have provided the fund-
28   for "health-care-focused prison facilities" [Id p.106] through

PLAINTIFF'S OBJECTIONS                 -22-
CASE NOS; 2;90-CV-00520 LKK JFH; CO1-1351 TEH

1 | the California Infrastructure and Economic Developement Bank (I-
2 | Bank) and therefore we cannot find the rationalization needed to
3 | believe they would act any differently in the future. This would
4 | include any proposed "re-entry" projects which the defendants use
5 | to wrap up their plans to increase the current design capacity
6 | of the CDCR facilities on whole.

7 |     Therefore, we steadfastly object to any attempted agreement
8 | by our counsel that these plans would satisfy the Orders of this
9 | Court. We instead must place our faith in the findings already be-
10 | fore the Court when it stated; "As the state's failure to sign
11 | the agreement demonstrates, the present fiscal crisis makes any
12 | remedy that requires significant additional spending by the state
13 | chimerical - the state has said that it will not procure any new
14 | funds for prison hospital construction." [Id p.106:23-25]. Based
15 | upon this evidence, we submit these objections to any and all
16 | proposals to increase the CDCR's designed capacity.[1/]

25 |     1/ It should be noted by the court that one particular pro-
26 | ject already undertaken at California Medical Facility at Vaca-
27 | ville, modified a pre-existing unit with a net capacity of 200
28 | beds, down to 68 handicap beds. Net loss of 132 beds.

PLAINTIFF'S OBJECTIONS                    -23-
CASE NOS; 2;90-CV-00520 LKK JFH; CO1-1351 TEH

1    6) <u>Objection to Any Reduction and Release Plan Which Fails</u>

2 <u>To Address the Core Elements Which Drives the CDCR's Inability to</u>

3 <u>Provide Constitutionally Adequate Medical and Mental Health Care:</u>

4    At the core of the CDCR's fiscal strife is the steadfast re-

5 fusal to acknowledge that thousands of prisoners sentenced to in-

6 determinate prison terms, and who have served decades beyond their

7 minimum sentences, remain incarcerated. This also includes their

8 inability to admit that these same prisoners account for the mas-

9 sive medical and mental health expenditures, which have driven

10 both <u>Coleman</u> and <u>Plata</u> through nearly two decades of fruitless

11 litigation. So when the various litigants connected to these cases

12 claim this is not about "Lifers" (Indeterminate Prisoners), they

13 do so at their own peril.

14    This Circuit is already well aware of the crisis which the

15 blanket "No Parole" policy has caused. (See generally; <u>Martin v</u>

16 <u>Marshall</u> 431 F.Supp.2d 1038, 1048-1049; "Under Governors Wilson

17 and Davis, the state 'disregarded regulations ensuring fair suit-

18 ability hearings and instead operated under a sub rosa policy that

19 all murders be found unsuitable for parole,'" citing <u>Coleman</u>, 96-

20 0783 LKK PAN, slip op. at 3.) The reality, no matter how unsavory

21 the flavor, is that when prisoners are held decades past their

22 lawful release dates, they must still be afforded medical and men-

23 tal health care that meets a minimum constitutional standard. We

24 the undersigned are aging, and due to our environment, our health

25 conditions are deteriorating. If you want to hold us forever then

26 you must care for us forever. The defendants cannot escape this

27 consequence, and we object strenuously to our counsel allowing

28 them to do so by agreeing with this second Reduction and Release

PLAINTIFF'S OBJECTIONS            -24-
CASE NOS; 2;90-CV-00520 LKK JFH; C01-1351 TEH

1  Plan.

2      Past events have provided this Court clear and convincing

3  evidence that the defendants cannot be relied upon to meet their

4  consitutional responsibilities, and more recent events only act

5  to unscore these facts. (See Sacramento Bee, May 9, 11 and 12,

6  2010; Reporter Charles Piller investigation into CDCR misconduct,

7  which included prisoner abuse and torture. Further investigation

8  into attempted cover-up by corrections undersecretary for opera-

9  tions, Scott Kernan; see also attached letter from State Senator

10  Darrel Steinberg and Mark Leno, their demand for into the Sac.

11  Bee allegations.)

12      The overall conditions within the CDCR have moved past cri-

13  tical, and are now at crisis levels. The latest situation to un-

14  fold is the return of approximately 8,000 out-of-state prisoners.

15  The department has already issued orders to re-activate the "bad

16  beds" (triples) at this institution, and will be doing so through

17  out the 33 other adult institutions in order to absorb the popu-

18  lation increase. Along with the need for additional beds, comes

19  the associated costs that go with the care treatment and custody

20  of these individuals, while at the same sturggling to absorb a

21  1.2 billion dollar budget cut.

22      It is now, therefore, the time and place for this Court to

23  force all concerned parties to face reality. There are at this

24  moment, well over 8 thousand life-term prisoners who have met and

25  exceeded manditory minimum terms. Most by decades.

26

27

28  PLAITIFF'S OBJECTIONS                -25-
   CASE NOS; 2;90-CV-00520 LKK JFH; CO1-1351 TEH

1    We the undersigned therefore pray that:

2        1)    The Court will except these objections as having been
3  timely filed due to the circumstances which were out of the
4  plaintiff's control; and,

5        2)    The Court will set a time and place for an evidentiary
6  hearing to take in evidence and hear testimony in support of the
7  undersigned claims and allegations; and,

8        3)    The Court will strike any stipulations and/or settle-
9  ments which their counsel have attempted to enter into on their
10 behalf; and,

11       4)    The Court will appoint counsel for the purpose of pre-
12 senting a Release and Reduction Plan, in so far as it pertains
13 to Indeterminately Sentenced Prisoners; and,

14       5)    The Court will use its own descretion regarding those
15 other plans and reccommendations on matter concerning the provi-
16 sion of medical and mental health by the CDCR.

17

18       We the undersigned respectfully submit these objections, and
19 declare under penalty of perjury, tbat all of the statements,
20 allegations, and beliefs, are set forth based upon their direct
21 knowledge, and as to those other things, based upon their best
22 belief; on this _9th_ day of June, 2010, at California State
23 Prison at Solano, Vacaville, CA. 95696-4000.

24

25

26    Thomas M. Clark                Khalifa E.D. Saifullah
      (CDCR # C12457)                (CDCR # C14257)
27    Plaintiff/Objectee             Plaintiff/Objectee

28

PLAINTIFF'S OBJECTIONS              -26-
CASE NOS; 2;90-CV-00520 LKK JFH; CO1-1351 TEH

1    I, the undersigned, as Class Action Plaintiff's, have all read

2  the Objections, agree to each objections and hereby sign under the penalty

3  of perjury that all of the information in the Objections are true, correct

4  and complete, and to those matters stated on information and belief, we

5  believe them to be true.

6  DATED: June 2?, 2010                    Respectfully submitted,

7

8  _____            _____
   J. Denham         C-80297              A. Achmad        C-80020

9

10 _____            _____
   M. Scott          H-27799              C, Holliday      C-96045

11

12 _____            _____
   S. Sanders        J-51319              J. Evans         J-00020

13

14 _____            _____
   E. Varner         C-30784              M. Howard        H-28246

15

16 _____            _____
   P. Legall         T-93685              K. Taylor        H-89029

17

18 _____            _____
   B. Washington     C-46476              A. Simmons       J-23707

19

20 _____            _____
   R. ONeal          K-01929              K. Mayweathers   D-32829

21

22 _____            _____
   A. Reddick        G-37089              J. Woods         H-67734

23

24 _____            _____
   Parker            D-07010              K. Ash           D-06954

25 FREEMAN, C.       D-26185

26

27

28

I, the undersigned, as Class Action Plaintiff's, have all read the Objections, agree to each objections and hereby sign under the penalty of perjury that all of the information in the Objections are true, correct, and complete, and to those matters stated on information and belief, we believe them to be true.

DATED: June 2 , 2010                    Respectfully submitted,

T. Yeargin          C-70594            I. Jones          E-50075

M. Scott            H-27799            R. Cockrell       H-64324

L. Ervin            C-44739            S. Morgan         J-22604

A. Hasan            H-94609            C. Huntley        C-19376

A. Ali              C-39368            A. Myers          D-64303

H. Knight           C-96218            R. Khan           K-79542

D. Hillary          J-72398            D. Dugan          D-46449

T. Evans            J-61644            W. Palmer         D-95905

K. Roland           C-81977            B. Adkins         C-36686

                                       A. Quarrells · E-62196

3

I, the undersigned, as Class Action Plaintiff's, have all read the Objections, agree to each objections and hereby sign under the penalty of perjury that all of the information in the Objections are true, correct and complete, and to those matters stated on information and belief, we believe them to be true.

DATED: June 2, 2010                    Respectfully submitted,


T. Foreman          D-07484           L. Harris           D-18192

R. Clayton          D-30755           P. Atik             T-08072

A. DeBose           C-72231           C. Clark            J-21983

E. Vannorsdell      C-67848           M. Johnson          B-95995

E. Williams         K-36787           K. Atwood           C-81505

M. Marich           C-33490           A. Ware             B-79382

K. White            K-77010           B. Neal             C-65463

F. Nantes           E-64828

M. PERKINS          H-28745           Delashsti           AA7693

1  Thomas M. Clark C12457
   Khalifah E.D. Saif'ullah C14257
2  California State Prison / Solano
   2100 Peabody Road
3  Vacaville, CA. 95696

4  In Pro Per

5           IN THE UNITED STATES DISTRICT COURTS
          FOR THE EASTERN DISTRICT OF CALIFORNIA
6         AND THE NORTHERN DISTRICT OF CALIFORNIA
    UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES
7   PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

8  RALPH COLEMAN, et al.,            )
                                     )
9           Plaintiffs,              )    NO.CIV S-90-0520 LKK JFM P
                                     )
10     v.                            )    THREE-JUDGE COURT
                                     )
11 ARNOLD SCHWARZENEGGER             )
   et al.,                           )
12                                   )
            Defendants.              )
13 _____  )

14 MARCIANO PLATA, et al.,           )    NO.C01-1351 TEH
                                     )
15          Plaintiffs,              )
                                     )
16     v.                            )    THREE-JUDGE COURT
                                     )
17 ARNOLD SCHWARZENEGGER             )
   et al.,                           )
18                                   )    DECLARATION BY CLARK IN
            Defendants               )    SUPPORT OF MOTION TO
19                                   )    STRIKE AND OBJECTIONS
   _____  )
20
   THOMAS M. CLARK,                  )
21 KHALIFAH E.D. SAIF'ULLAH,         )
   et al.                           )
22                                   )
        v.    Plaintiffs/            )
23            Objectees              )
                                     )
24                                   )
25 ARNOLD SCHWARZENEGGER et al.,     )
                                     )
26          Defendants               )
                                     )
27 _____  )

28

# DECLARATION OF CLARK

I THOMAS M. CLARK do declare the following:

1) That I am a party to this action; and

2) That I am 55 years old; and

3) That I have been continuously incarcerated since May 1, 1979; and

4) That I became eligible for parole on February 13, 1984; and,

5) That at no time during this 31 years of continuous incarceration have I been charged and/or convicted of any felony, or charged with any type of criminal assault, or charged with any type of weapons violations; and,

6) That after 31 years of continuous incarceration, the Board of Prison Hearing gave me a seven (7) year denial with the instructions to solicit laudatory chronos, and to aquire yet another trade to accompany the three (3) which I already have.

7) That I began receiving mental health care approximately 10 years ago after discovering the county of my commitment offense had sequestered witnesses to prevent their appearance at my trial, and I am currently under Correctional Clinical Case Management care (CCCS); and,

8) That I have been on medication of severe depression losing my wife in April of 2009; and,

9) That I have recently been upgraded to Chronic Care due to hepatitus C, in addition for a work related accident that resulted in the severe herniation of the disc at L-3/L-4 and L-4/L-5; and,

10) That I receive pain medications for this medical con-

Dec by Clark                    - 2 -

2:90-CV-00520 LKK JFH: CD1-0351 TEH

1    dition three times a day, seven days a week;.; and,

2    11)   That sometime in November of 2009, I secured a copy of

3    the Prison Law Office (PLO) information newsds letter, which had

4    been updated and issued on November 13, 2009; and,

5    12)   That nowhere with the PLO News Letter does our Counsel,

6    Donald Specter, appraise us, his clients, of his intention to

7    file any acceptance of the defendant's second Reduction and Re-

8    lease Plan, agreeing that their plan satisfied the Court's August

9    4, 2009 Opinion and Order.; and,

10   13)   That the defendant's second Reduction and Release Plan

11   had been filed in October of 2009, allowing our Counsel ample time

12   to warn us of his intentions to file an agreement with this Court;

13   and,

14   14)   That within the PLO News Letter, updated on January 20,

15   2010, our Counsel provides no explanation for his actions, or for

16   the impact upon us his clients, other than a brief statement which

17   was less than 20 words in length; and,

18   15)   That our counsel's advisement, via this "News Letter"

19   which we are expected to "share" through out the prison system, was

20   released 44 days after the fact, and was not discovered by many of

21   his clients, until April or May of this year; and,

22   16)   That no where within this advisement of January 20th,

23   does it reveal our options as plaintiffs, regarding the nature and

24   consequences of a stipulation being entered on our behalf, without

25   a timely objection being entered; and,

26   17)   That I have advised all of the undersigned plaintiffs

27   as to the nature and consequences of these objections; and,

28   18)   That I file these objections in good faith, and with no

Dec by Clark            - 3 -

2:90 -cv- 00520 LKK JFH; CDI-0351  TEH

1   intention that it become a dilitory tactic of any kind; and,

2       THAT I THOMAS M. CLARK, do declare that the foregoing state-

3   ments are true and correct to the best of my knowledge, which also

4   includes any and all statements and allegations contained with the

5   motion to object, as well as those set forth within the objections

6   themselves; and that as for those other statements and allegations

7   set forth within these documents, that they a true based upon my

8   belief in the information available to me. I declare these state-

9   ments to be true and correct under the penalty of perjury of the

10   laws fo the State of California.

11

12       Signed this _9th_ day of June, 2010, at CSP-Solano, Vacaville

13   CA. 95696-4000.

14

15

16   Thomas M. Clark
    In Pro Per

17

18

19

20

21

22

23

24

25

26

27

28   Dec by Clark
    2:90 CV-00520 LKK JFH, C01-0351 TEH     - 4 -

*Proof of Service – Mail*

## PROOF OF SERVICE

Re:  Case Number _CIV 290-CV-00520 LKK JFH_

Case Title _CDI-1351  TEH_

_COLEMAN  -  SCHWARZENEGGER_

_PLATA  -  SCHWARZENEGGER_

I hereby declare that I am a citizen of the United States, am over 18 years of age, and am/am not a party in the above-entitled action. I am employed in/reside in the County of _SOLANO_, and my business/residence address is _2180  Peabody  Rd, Vacaville, CA  95696_

On _June 10, 2010_, I served the attached document described as a _Motion to Strike; Declaration by Clark; Objections_

on the parties in the above-named case. I did this by enclosing true copies of the document in sealed envelopes with postage fully prepaid thereon. I then placed the envelopes in a U.S. Postal Service mailbox in _Vacaville_, California, addressed as follows:

Three Judge Panel
Prision Law Office
C. Montgomery
M. Yee
C. Piller

Attorney General's Office
C. Williams
J. Roberts
Miller & Wascoe
D. Spector

I, _____, declare under penalty of perjury that the foregoing is true and correct.

Executed on _June 9, 2010_, at _CSP-SOL_ _Vacaville_, California. _95696_

_____
Signature