```
 1                  UNITED STATES DISTRICT COURT

 2                  EASTERN DISTRICT OF CALIFORNIA

 3                            --o0o--

 4   RALPH COLEMAN, et al.,      ) Case No. 2:90-cv-00520-LKK-JFM
                                 )
 5              Plaintiffs,      )
                                 ) Sacramento, California
 6        vs.                    ) Monday, August 1, 2011
                                 ) 1:37 P.M.
 7   SCHWARZENEGGER, et al.,     )
                                 ) Hearing re:  discovery.
 8              Defendants.      )
     _____)
 9
                        TRANSCRIPT OF PROCEEDINGS
10                BEFORE THE HONORABLE JOHN F. MOULDS
                     UNITED STATES MAGISTRATE JUDGE
11
     APPEARANCES:
12
     For Plaintiffs:              ERNEST GALVAN
13                                Rosen, Bien & Galvan, LLP
                                  315 Montgomery Street 10th Floor
14                                San Francisco CA   94105
                                  (415) 433-6830
15
     For Coleman Defendants:      DAVID E. BRICE
16                                DEBBIE JEAN VOROUS
                                  Attorney General's Office
17                                1300 I Street, Suite 125
                                  Sacramento, CA   95814
18                                (916) 324-5388

19   Court Recorder:              (UNMONITORED)
                                  U.S. District Court
20                                501 I Street, Suite 4-200
                                  Sacramento, CA   95814
21                                (916) 930-4193

22   Transcription Service:       Petrilla Reporting &
                                    Transcription
23                                5002 - 61st Street
                                  Sacramento, CA   95820
24                                (916) 455-3887

25
     Proceedings recorded by electronic sound recording;
     transcript produced by transcription service.
```

1

SACRAMENTO, CALIFORNIA, MONDAY, AUGUST 1, 2011, 1:37 P.M.

THE CLERK: Calling Civil Case 90-520-LKK, Coleman, et al v. Schwarzenegger, et al. This is on calendar for a discovery hearing, Your Honor.

THE COURT: Good morning. Would counsel state their appearances, please?

MR. GALVAN: Ernest Galvan for the plaintiffs, Your Honor. Good afternoon.

MR. BRICE: Good afternoon, Your Honor. David Brice and Debbie Voris for the defendants -- state defendants.

THE COURT: Did plaintiffs wish to be heard?

MR. GALVAN: Yes, Your Honor. In addition to what's in our papers, I apologize for not attaching to our papers Docket No. 4045 in this case, which is the July 22nd, 2011 order setting the evidentiary hearing on August 17th, and I think it's important because it really does set out what he dispute issues are in the hearing, particularly at page 5 where the District Court addresses the defendant's contention that no evidentiary hearing is necessary regarding the Coalinga State Hospital because of the deference that defendants are owed to their security decisions.

And the District Court addresses that stating that well, there's deference, but deference doesn't mean no judicial review, it means that when the facts are in dispute the

District Court has to look at the evidence to decide whether the security responses being asserted are exaggerated or not.

In fact, the District Court uses those words quoting a Supreme Court case that they get deference in the absence of substantial evidence in the record to indicate that the official have exaggerated their response, and the District Court goes on to say that the evidentiary hearing is about defendant's exercise of their security judgment. And then on the next page that defendants may tender any evidence relevant to the resolution of that question.

Well, out of fairness, Your Honor, the defendants control all the evidence regarding Coalinga State Hospital, and the only way plaintiffs can also present evidence is by going into the hospital with an expert and inspecting it, and that's all we're asking here, and it's not an unusual request. What's -- I think what's unusual is that these cases have become much more contentious in the last year or so where everything that used to simply happen as a matter of course now requires a big fight. But this is the type of inspection that's occurred in these cases year in and year out.

And finally, I want to thank the Court, please, for holding this on shortened time. Thank you, Your Honor.

THE COURT: Thank you. Counsel?

MR. BRICE: Thank you, Your Honor. I just want to say briefly in response to my friend on the other side, is that

1 this case was set for a hearing in three weeks by -- in front
2 of Judge Karlton at the recommendation of the special master.
3 However, neither Judge Karlton nor the special master
4 recommended that any inspections needed to take place either by
5 the plaintiffs, or by the special master, or by any experts, or
6 anyone else.
7           It's a show cause hearing for defendants to put on
8 evidence at which plaintiffs will be able to cross-examine any
9 witnesses fully, an adversarial hearing, and defendants'
10 position is that this inspection of Coalinga State Hospital is
11 not necessary.  Discovery is closed in this case, unless the
12 Court reopens it.  We're in the post-judgment remedial phase,
13 and there's not even --
14           THE COURT:  Counsel, did you just say this case is
15 over?
16           MR. BRICE:  I said discovery is closed.  I'm sorry,
17 Your Honor.  We're in the post-judgment remedial phase.  I
18 didn't say the case was over, no.  No, Your Honor.
19           THE COURT:  That's certainly what I took from your
20 papers.
21           MR. BRICE:  I apologize if that's what you took, but
22 we don't believe the case is over, but it's in a remedial
23 phase, post-judgment is our position, and at this hearing,
24 defendants will be putting on witnesses to talk about whether
25 or not, you know, Level 4 inmates from CDCR can go into a state

4

hospital in Coalinga, and all those witnesses can be cross-examined and there's no need for an extra inspection of the entire Coalinga State Hospital by plaintiffs and their experts when the real issue in the case is whether or not CDCR has applied the right custody factors to these inmate patients who are on the wait list to get into ICF care, because Coalinga State Hospital is equivalent to a Level 2 CDCR secure facility, and these are Level 4 inmates that require celled housing, which is very different than what there is at Coalinga.

And so, the issue is really more CDCR's custody factors as opposed to Coalinga State Hospital, which is, you know, not a prison, and has never been held out to be a prison that could hold this level of individuals.

And so, again, I'd just say that our position is that no inspections are necessary, and if they had been, the special master or the court could have ordered it, and it didn't happen. And so, we'd ask that these requests for inspection be denied.

Thank you.

THE COURT: It appeared to me, counsel, as if that was a request to depose the experts in the event that there wasn't an inspection ordered. Are you abandoning that request at this point?

MR. BRICE: No, Your Honor. Thank you. If the Court does order an inspection by the plaintiff's expert, under Rule

1  26 we would like to be able to depose that expert prior to the
2  evidentiary hearing on August 17th; that's correct.
3          THE COURT: Counsel, anything further?
4          MR. GALVAN: On the first points, all these factual
5  assertions regarding whether Coalinga State Hospital is a
6  level -- equivalent to a level 2 prison, or what its security
7  nature are, are not supported by any affidavits or declarations
8  or any evidence and the case law that we cited says that the
9  party seeking to block discovery has a heavy burden and has to
10 make a strong showing. Strong showing means some sort of offer
11 of proof, and all we've had are assertions.
12         As to depositions, it's an evidentiary hearing on
13 shortened time. They'll have the expert under oath. As the
14 District Court said in the July 22nd order, "further delay in
15 resolution of this problem, particularly when empty inpatient
16 beds exist, is unconscionable."
17         And I think in light of that finding, adding another
18 layer of procedure, when they will have the expert under oath
19 very shortly, is unnecessary. Thank you, Your Honor.
20         THE COURT: Do you know who the expert is at this
21 time?
22         MR. GALVAN: Yes, Your Honor. We notified the
23 defendants on Friday that it's Joseph L. McGrath. He is the
24 former warden of Pelican Bay State Prison, and the former --
25 forgive me if I get these titles wrong, Chief Deputy Secretary

6

1  of the California Department of Corrections.
2          THE COURT: And I didn't -- I'm not sure I understood
3  your position. Are you thinking that it's not reasonable to
4  expect that this person be deposed in the period of time
5  between now and the scheduled evidentiary hearing?
6          MR. GALVAN: I'm only trying to squeeze it all in.
7  This is August 1st, and then August 17th is the hearing.
8  Presumably they'll want some time to set up the inspection and
9  then the expert will have to have some time to work up
10 something about what he's seen there.
11         We'll make him available, and we'll do it in a way
12 that doesn't delay the hearing, but it seems unnecessary since
13 this is not a full dress trial, it's an evidentiary hearing as
14 counsel is --
15         THE COURT: Having reviewed this matter on Friday,
16 and spending some time over the weekend and getting ready for a
17 hearing today, it strikes me that the difference between
18 impossible and inconvenient is -- was a rather substantial
19 difference.
20         MR. GALVAN: Quite true, Your Honor.
21         THE COURT: All right.
22         MR. BRICE: Your Honor, could I be heard on one more
23 brief issue?
24         THE COURT: Try me.
25         MR. BRICE: Regarding inspections, there are some

1  part of Coalinga State Hospital, and I don't know if this was
2  in our papers extensively, but that it -- house very sensitive
3  patients that are taking sensitive psychotropic medications and
4  are suicidal, and it would be disruptive to have any visitors
5  come through those particular units where they're housed, and
6  so that was one reason.
7          THE COURT:  Where are those located, sir?
8          MR. BRICE:  That's Unit 26 at Coalinga State
9  Hospital.
10         THE COURT:  Are there vacant beds in that unit?
11         MR. BRICE:  I believe Unit 26 is on -- there are
12 vacant beds in other units, but it's a 50-bed unit and I don't
13 know if every single bed in that unit is full, but it's sort of
14 like a hallway, that's where these sensitive patients are.
15 There are some units that have -- that are totally vacant and
16 have no patients in them at all, and that would be defendants'
17 preference if the Court does order inspections, that it just be
18 in those units that are totally vacant, because that would
19 cause the minimal disruption to any patients in treatment
20 that's currently occurring in the hospital.
21         THE COURT:  The -- I'm not sure whether you're
22 talking about the same group of people when you talk about the
23 same areas of the prison, when you talked about Unit 26, and
24 when you talked about units with some vacant beds.
25         MR. BRICE:  Let me clarify that, Your Honor.  There's

1  Unit 26, and it has the most sensitive patients in it that are
2  taking these psychotropic medications that are there.  I don't
3  know that every single bed in that 50-bed unit is full, maybe
4  due to the flows, in and out of patients, but there are -- it
5  is considered an occupied unit.  But there may be some vacant
6  beds in there, I don't know for sure.
7           Then there are also some units that are also 50-bed
8  units that would be different from Unit 26 that are totally
9  vacant and have no patients in them, and the Department of
10 Health preference would be that if the Court does order
11 inspection it would be at those entirely vacant units.
12          There are also other units that have patient in them
13 that are civilly committed sexually violent predators.
14          THE COURT:  Counsel, let me be clear about this.  It
15 strikes me that the opposition to the discovery in this case
16 was -- my view on looking at your papers was that this was
17 close to sanctionable opposition and I understand why there may
18 be reasons that relate to either the legal position of some of
19 the inmates, such as the persons who have -- who no longer have
20 criminal status, but they are incarcerated, and there may be a
21 much greater privacy interest in those areas.
22          And now I hear something new about the areas that
23 might or might not have full beds, which is something that
24 frankly, I'd have to have the highest level of certainty that I
25 wasn't making an order that could be manipulated by the

9

1  defendants based on what I saw in the opposition to plaintiff's
2  motion here.
3          And I'm willing to consider certainly reasonable
4  limitations on the inspection, but I don't want to, in doing
5  that, make an order that, in fact, would allow the defendants
6  to write their own ticket in this proceeding.
7          MR. BRICE:  I understand, Your Honor.
8          THE COURT:  Okay.  Now, with that in mind, what are
9  we talking about?
10         MR. BRICE:  Unit 26.
11         THE COURT:  Do plaintiffs have any objection to
12 excluding that unit?
13         MR. GALVAN:  I -- this is the first I've heard about
14 Unit 26.
15         THE COURT:  Well, that makes us even.
16         MR. GALVAN:  Sorry?
17         THE COURT:  That makes us even, it's the first time
18 I've heard of it too.  Now, where do we go from here?
19         MR. GALVAN:  And so, I would like to find some way to
20 reserve the issue in the event that Unit 26, whatever it is,
21 ends up being salient to the facts.
22         On the issue of vacant versus non-vacant, if the
23 effect of the Unit 26 exclusion is that we will only see vacant
24 areas, then the expert's opinion will not be much help to the
25 District Court because the expert's opinion is about security,

1  and security is partly architecture, mostly people, and
2  presumably they don't staff the vacant units, I hope they
3  don't.
4          So as long as the Unit 26 issue doesn't have the
5  effect of limiting us to empty buildings or wings then I'll
6  take a risk and say it seems doable.  Thank you.
7          THE COURT:  Well, I would assume that there's only
8  one Unit 26, or at least that there ought to be.
9          MR. BRICE:  That's correct, Your Honor.
10 There's -- It's only one 50-bed unit, and there are -- I mean,
11 the units are numbered 1 to 28, and this just happens to be the
12 one that has these sensitive patients.
13         THE COURT:  Are you telling me there are 1,400 people
14 there?
15         MR. BRICE:  There are --
16         THE COURT:  1,400 inmates?
17         MR. BRICE:  I think there's over 900 -- there are,
18 yeah, close to -- I mean, it's a 1,500-bed facility.
19         MR. GALVAN:  The way I understand it, Your Honor,
20 from the special master's report, there are 1,500 beds, 400 are
21 in suspense, meaning that they're not really activated at all,
22 917 was the census in early June, so there are 1,100 beds that
23 are actually activated, and they had 917 with patients in them
24 which left 183 actually activated and available.
25         If I could be heard on one other thing about the Unit

11

1  26, and Suicide Alley, and taking psych meds, in every
2  inspection that I've been familiar with in the Coleman case,
3  including the ones for the three-judge panel, and including the
4  special master tours that happened with a great deal of
5  regularity, the experts go into every possible unit.  They go
6  into units where people have been, you know, stripped down and
7  are just in a rubber room.
8          There's never been a notion, and the defendants have
9  never said, you know, well, these patients are particularly in
10 distress please don't tour there.  In fact, the places where
11 they handle the patients that are particularly in distress are
12 arguably the most relevant to what's at issue in this Eighth
13 Amendment action where extreme distress is the point.
14         And you know, for the people on this wait list that
15 we're trying to get into these beds, is it right now over 100
16 men on the ICF wait list, they're likely to need care for
17 extreme distress.  So I am concerned for those two reasons.
18 Number one, it's unprecedented in this case to draw a line
19 around people in extreme distress when a case is about people
20 in extreme distress.
21         And two, I'm concerned it will empty the expert's
22 opinion somewhat of usefulness to the District Court if they
23 are carving out the area where they take care of the people who
24 are most likely to be the members of the Coleman class who get
25 there.  So that is why I'm just left with this lingering

12

1 concern about the Unit 26 exemption.
2           I think that the defendants know how to arrange a
3 tour so that it doesn't disrupt patient care.  They're doing it
4 all the time, not just for the Coleman experts, but for the
5 state licensing authorities and for all the people who have to
6 come through a public facility like this.
7           Thank you Your Honor.
8           THE COURT:  I am concerned so -- that the -- I don't
9 believe I saw anything about this particular concern in the
10 papers.
11           MR. BRICE:  You did not, Your Honor.  I just -- I
12 found out about it late Friday afternoon, I apologize.  It was
13 not in the papers, you are correct.  The Court is correct.
14           THE COURT:  Well --
15     (Pause.)
16           THE COURT:  Please both have a seat for just a
17 moment.
18     (Pause.)
19           THE COURT:  All right.  Anything further for
20 plaintiffs?
21           MR. GALVAN:  No, Your Honor.  Thank you.
22           THE COURT:  Anything further for the defense?
23           MR. BRICE:  No, Your Honor.
24           THE COURT:  All right.  Thank you.  I trust I'll be
25 getting an order in the entire matter to you before the close

13

1  of business today.
2          However, I'm reasonably sure that this will require
3  that the two of you and whatever other people might be
4  necessary, I do not know, but I will require a conference
5  between the two of you to see if you can resolve the matter
6  that arose today.  That doesn't mean I'm foregoing the
7  opportunity to make a ruling based solely on the fact that it
8  was raised at the hearing without advance notice.  But I give
9  you both one more chance, and I want to see a joint letter from
10 the two of you by the close of business tomorrow and telling me
11 whether that matter is open or closed.
12          MR. BRICE:  Understood, Your Honor.
13          THE COURT:  Thank you.  We stand adjourned.
14          MR. GALVAN:  Thank you, Your Honor.
15     (Whereupon the hearing in the above-entitled matter was
16 adjourned at 2:00 p.m.)
17                          --o0o--
18                         CERTIFICATE
19    I certify that the foregoing is a correct transcript from
20 the electronic sound recording of the proceedings in the above-
21 entitled matter.
22
23 _____        August 25, 2011
24 Patricia A. Petrilla, Transcriber
25 AAERT CERT*D-113