**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA**

**RALPH COLEMAN, et al.**
      **Plaintiffs,**

      **vs.**                         **No. 2:90-cv-0520-LKK-JFM (PC)**

**EDMUND G. BROWN, JR., et al.**

**SPECIAL MASTER'S REQUEST FOR ENLARGEMENT OF TIME IN WHICH TO
REPORT ON THE ADEQUACY OF DEFENDANTS' PLAN TO FURNISH SUICIDE-
RESISTANT BEDS IN ALL MENTAL HEALTH CRISIS BED UNITS**

<u>Introduction</u>

By this court's order of July 21, 2011 (Docket No. 4044, para. 3), the Special Master was directed to report to the court on the adequacy of defendants' plan to furnish suicide-resistant bees in all mental health crisis bed units (MHCBs) within CDCR prisons. Defendants filed their plan on September 19, 2011. The Special Master was ordered to file his report within 30 days of defendants' filing of their plan, i.e. no later than October 19, 2011. For the reasons set forth below, the Special Master requests that he be granted relief from the 30-day reporting deadline and be granted an additional 30 days, or up to and including November 18, 2011, in which to file his report.

<u>Background</u>

The context of this request begins with the filing of the Special Master's Expert's Report on Suicides Completed in the California Department of Corrections and Rehabilitation in Calendar Year 2007 ("2007 Suicide Report") on September 17, 2009. Defendants interposed a number of objections to plaintiffs' request that the recommendations of the Special Master's expert Raymond Patterson, M.D. in that report be adopted as orders of the court. By order

entered November 23, 2009 (Docket no. 3731), the Court stated that requests for orders, if any, should come only from the Special Master.  On December 24, 2009, the Special Master submitted a request for the entry of orders based on the recommendations of Dr. Patterson. Defendants then submitted renewed objections to these recommendations, and raised additional objections as well.

On April 14, 2010, the court entered an order (Docket no. 3836) noting the persistence of the problem of inmate suicides in CDCR prisons, and ordered the defendants, under the guidance of the Special Master, to review all suicide prevention policies and practices, all suicide review and reporting processes, and the implementation of such policies, practices and processes over the following 120 days.  (Docket no. 3836)   In response, the Special Master organized a work group made up of selected members of his staff to meet with key representatives of the defendants on seven occasions.  The Special Master's group met with representatives of CDCR and its Division of Adult Institutions, and representatives of the Department of Mental Health (DMH) to assist them with carrying out the court's charge of deciding whether any changes should be recommended to address the problem of inmate suicides, to consider potential outcomes of any changes, and to project timeframes for implementation of recommended changes.[1]  The process culminated in defendants' preparation and submission of a timely detailed report on August 12, 2010, and an update on August 25.  The report was shared and discussed with plaintiffs' counsel, who then provided the Special Master with a letter on September 8, 2010 summarizing their position on defendants' report and suggesting additional suicide-prevention measures to be adopted.

---

[1] A representative of the receiver in *Plata v. Schwarzenegger*, No.C 01-1351 TEH (N.D. Cal.) also attended and assisted at these meetings.

One of plaintiffs' recommendations was that suicide-resistant beds be furnished for MHCB units. There had been informal reports that in the absence of suicide-resistant beds in some MHCB units, suicidal patients are not provided with any beds at all. The Special Master's experts advised him that failure to provide suicide-resistant beds, and the practice of requiring suicidal MHCB patients to sleep on the floor, created a needlessly harsh environment that did not serve therapeutic purposes and that, along with other punitive-type practices, it may even contribute to an inmate's decision to not report thoughts of self-harm to staff. The experts advised that the default practice in an MHCB unit should be to provide a suicide-resistant bed unless clinically contraindicated. In addition to four other recommendations, the Special Master recommended in his report of September 27, 2010 that defendants be required to submit a plan within 60 days for procuring and providing suicide-resistant beds to suicidal inmates within MHCB units in CDCR institutions. (Docket no. 3918, p. 38).

On November 4, 2010, defendants filed their sole objection to the Special Master's recommendations, opposing the one for entry of an order requiring defendants to submit a plan within 60 days for furnishing the suicide-resistant beds in MHCBs. (Docket no. 3950). On November 17, 2010, the court adopted the other four recommendations by the Special Master and ordered defendants to implement forthwith the suicide-prevention strategies presented in their report of August 25, 2010. (Docket no. 3954) The court also ordered that the Special Master's recommendation regarding a plan for suicide-resistant beds would be deemed submitted at the conclusion of the time for plaintiff's reply to the defendants' objection to that recommendation, and that the recommendation would be addressed by subsequent order. On November 18, 2011, plaintiffs filed their reply in support of the Special Master's recommendation concerning suicide-resistant beds. (Docket no. 3955).

By order filed July 2, 2011 (Docket no. 4044), the Court addressed defendants' objection to the recommendation for suicide-resistant beds. It ordered that the recommendation be adopted in full, that defendants shall file within 60 days their plan to furnish suicide-resistant beds in MHCBs, and that within 30 days thereafter, the Special Master shall report to the court on the adequacy of the plan. (Docket no. 4044, para. 1-3)

Defendants timely filed their plan on September 19, 2011. (Docket no. 4089). In essence, the plan calls for procurement and installation of a total of 196 suicide-resistant beds and 16 restraint beds in MHCBs throughout 16 CDCR institutions. It also describes the defendants' proposed timetable for initiation and completion of the outfitting of these units as follows:

> . . . Installation of the beds will occur as a staged process to cause the least disruption in treatment and to minimize the impact on bed availability due to the redlining of cells for retrofit.
>
> Last, Defendants propose to complete the purchase and installation of the suicide-resistant beds and the restraint beds by September 2013. CDCR expects to utilize resources contained in the Budget Act for Fiscal Year 2012-13, with funding authorized July 1, 2012, or as soon as a budget is passed. Of course, implementation of this plan will depend upon funding being approved by the State Legislature. CDCR anticipates that it will require two to three months to procure all the beds and nine to ten months to complete the installation of the beds after the fiscal year funding is authorized. Any delays in enacting the annual Budget could affect the anticipated September 2013 completion date.

(Defendants' Plan, Docket no. 4089, p. 3-4)

According to defendants' estimates, the cost of all of the beds in defendants' plan would amount to $400,000 to $500,000. However, as defendants have formulated their plan, its execution and timing are entirely contingent on whether the funding for these beds is authorized by the California State Budget for Fiscal Year 2012-13. Further, even assuming that the funding is authorized within the stated budgetary cycle as of July 1,

2012, defendants plan envisions another two to three months to purchase the beds, and nine to ten months to complete their installation.  Under even the best case scenario possible, the present funding contingencies within defendants' plan mean that at the very earliest, installation of suicide resistant beds would not begin before October 2012, and would not be completed until September 2013 – nearly two years from now.  More significantly, under defendants' plan, if the California State Legislature rejects a bid to fund these beds, there is no proposed alternative funding source and the beds would not be purchased under the plan as it is presently configured.

Following receipt of defendants' plan, the Special Master convened a teleconference with the parties on September 28, 2011.  At that time, plaintiffs and the Special Master expressed concern over the budgetary contingencies built into the plan.  It was decided that the group would re-convene after defendants explored other options for funding the plan to solidify defendants' ability to implement it and to purchase and accelerate the installation of these beds without the contingencies originally proposed. The Special Master reconvened the group at an in-person meeting on October 12, 2011. Although defendants reported that they had not come up with funding alternatives, plaintiffs asked defendants to explore at least one additional alternative funding source. Defendants agreed to look into that potential source, as well as others, and to report back within the following week.

Why This Request to Enlarge Time Should be Granted

The Special Master believes that it is in the best interest of all concerned to afford defendants a reasonable period of time to obtain an alternative means of funding to implement their plan to furnish all MHCBs with appropriate suicide-resistant beds and

restraint beds as quickly as reasonably possible.  The plan indicates genuine promise for fulfilling the goal of having all MHCBs in CDCR institutions outfitted with appropriate suicide-resistant beds.  Likewise, other than the expressed concerns about the funding contingencies and consequent implications for the timetable to complete this project, the substance of the parties' recent discussions surrounding this project also appears to indicate that consensus on the plan may be near.

The prospect of having suicide-resistant beds is an important step toward reducing the number of suicides and the elevated suicide rate in CDCR prisons.  This would justify a brief delay so that defendants may explore ways to obtain a funding source that would enable them to execute their plan expeditiously.  The deadline for the Special Master's report to the court on the defendants' plan to furnish suicide-resistant beds is presently October 19, 2011.  He requests relief from this deadline, and an enlargement of time up to and including November 18, 2011, so that his report may cover any potential alternative funding source of which defendants can avail themselves, and any beneficial effect it may have on the defendants' timetable for completion of this important project.

Respectfully submitted,

*/s/*

_____
Matthew A. Lopes, Jr., Esq.
Special Master

October 18, 2011