KAMALA D. HARRIS
Attorney General of California
JONATHAN L. WOLFF
Senior Assistant Attorney General
DEBBIE J. VOROUS, State Bar No. 166884
DAVID E. BRICE, State Bar No. 269443
Deputy Attorneys General
 1300 I Street, Suite 125
 P.O. Box 944255
 Sacramento, CA 94244-2550
 Telephone: (916) 324-8010
 Fax: (916) 324-5205
 E-mail: David.Brice@doj.ca.gov

*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>　　　　　　　　　　Plaintiffs,<br><br>　v.<br><br>EDMUND G. BROWN, JR., et al.,<br><br>　　　　　　　　　　Defendants. | 2:90-cv-00520 LKK JFM P<br><br>**DEFENDANTS' SUPPLEMENTAL PLAN TO REDUCE OR ELIMINATE THE INPATIENT WAITLISTS** |

　　　On August 15, 2011, the Court ordered that Defendants, over the next ninety days, work with the *Coleman* special master to "develop a supplemental plan to reduce or eliminate the inpatient wait list and to better serve the treatment needs of the inmates on the wait list." (Docket No. 4069 ¶ 3.) Defendants have developed a supplemental plan to reduce or eliminate the Salinas Valley Psychiatric Program (SVPP) and Acute Psychiatric Program (APP) waitlists. (*See* Attachment A, Defendants' Supplemental Plan to Reduce or Eliminate the Inpatient Waitlists). Specifically, Defendants have modified the ICF Pilot Program custody criteria and implemented a patient movement plan that will, in the near future, reduce the number of inmate-patients on the

1

SVPP and APP waitlists. (*Id.*) Additionally, Defendants' supplemental plan includes a plan to convert the L-Wing at California Medical Facility (CMF) into 113 beds for high-custody inmate-patients needing an Intermediate Care Facility (ICF) level of care. (*Id.*) Defendants expect that they may need to seek waivers from the Court associated with converting the L-Wing. (*Id.*) These two steps, along with opening up the new 64-bed ICF unit at CMF for high-custody inmate-patients, constitute a substantive plan that further addresses the waitlist and meets the intent of the Court's August 15, 2011 order.

Defendants understand that the *Coleman* special master endorses Defendants' supplemental plan save for the rates at which Defendants anticipate moving inmate-patients in and out of inpatient beds, as detailed in Defendants' plan. (*See* Attachment A.) Additionally, Defendants understand that the special master has declined to take any position with respect to Defendants need to seek waivers from the Court concerning accessibility requirements associated with converting the L-Wing. (*Id.*) Defendants will update the Court on the progress of their supplemental plan in their November 2011 update to the Court. At that time, Defendants expect to seek waivers from the Court as appropriate and necessary.

Dated: October 18, 2011                          Respectfully submitted,

KAMALA D. HARRIS
Attorney General of California

*/s/ Debbie J. Vorous*

DEBBIE J. VOROUS
Deputy Attorney General
*Attorneys for Defendants*

CF1997CS0003
31366555.doc

2

Defs.' Supp. Plan to Reduce or Eliminate the Inpatient Waitlists
(2:90-cv-00520 LKK JFM P)

# ATTACHMENT A

STATE OF CALIFORNIA —DEPARTMENT OF CORRECTIONS AND REHABILITATION                    EDMUND G. BROWN JR., GOVERNOR

**OFFICE OF LEGAL AFFAIRS**
Benjamin T. Rice
Assistant Secretary
P.O. Box 942883
Sacramento, CA 94283-0001



October 18, 2011

Ms. Debbie Vorous
Deputy Attorney General
Department of Justice
1300 I Street
Sacramento, CA 94244-2550

Dear Ms. Vorous:

Please see enclosed, Defendants' October 18, 2011 Supplemental Plan to Eliminate the Waitlist for Inpatient Care in response to the Court's August 15, 2011 order in Coleman v. Schwarzenegger.

Sincerely,

*[signature]*

BENJAMIN T. RICE
General Counsel, Office of Legal Affairs
California Department of Corrections and Rehabilitation

Enclosures

TABLE OF ACRONYMS

| Acronym | Term |
|---|---|
| APP | Acute Psychiatric Program |
| ASH | Atascadero State Hospital |
| CDCR | California Department of Corrections and Rehabilitation |
| CMF | California Medical Facility |
| DMH | Department of Mental Health |
| EOP-GP | Enhanced Outpatient Program-General Population |
| HC-POP | Health Care Placement Oversight Program |
| ICF | Intermediate Care Facility |
| SVPP | Salinas Valley Psychiatric Program |
| VPP | Vacaville Psychiatric Program |

# DEFENDANTS' SUPPLEMENTAL PLAN TO REDUCE OR ELIMINATE THE INPATIENT WAITLISTS

## I. INTRODUCTION

On August 15, 2011, the Court ordered that Defendants, over the next ninety days, work with the *Coleman* "special master to develop a supplemental plan to reduce or eliminate the inpatient wait list and to better serve the treatment needs of inmates on the wait list." (Docket No. 4069 ¶ 3.) The Court further ordered that during this same time period, Defendants "shall implement any step approved by the special master that will make hospital beds immediately available to inmates on the wait list." *Id.*[1]

Defendants have worked with the special master as required and now present their supplemental plan in response to the Court's August 15, 2011 order. Additionally, Defendants met with the special master and Plaintiffs' counsel on October 12 and 13 to review the specific details of their supplemental plan. Defendants understand that the special master endorses Defendants' supplemental plan save for the rates at which Defendants anticipate moving inmate-patients in and out of inpatient beds, as discussed below. Additionally, Defendants understand that the special master has declined to take any position with respect to Defendants' need to seek waivers from the Court concerning accessibility requirements associated with converting the L-Wing, also discussed below.

Defendants' supplemental plan is divided into three parts. First, Defendants discuss changes to the criteria in the ICF Pilot Program that will allow patient movement from the Salinas Valley Psychiatric Program (SVPP) into other Intermediate Care Facility (ICF) programs operated by the Department of Mental Health (DMH). This will open up additional beds at SVPP for inmate-patients on the SVPP waitlist thereby reducing the SVPP waitlist. Additionally, Defendants discuss changing 25 of the 256 ICF low-custody beds at Atascadero State Hospital (ASH) back into Acute Psychiatric Program (APP) beds. This measure will reduce the APP waitlist. Defendants have implemented this step as directed by the Court's August 15, 2011 order to implement any steps that will make hospital beds immediately available.[2] Second, Defendants provide an update on the construction of the 64 permanent ICF beds in the Vacaville Psychiatric Program (VPP) at California Medical Facility (CMF). Construction of this facility is ongoing and activating these new beds will further reduce the SVPP waitlist. Third, Defendants discuss their plan to convert the L-Wing at CMF, which currently houses Enhanced Outpatient Program General Population (EOP-GP) inmates, into temporary unlicensed ICF beds. Defendants started implementing this plan on October 17, 2011.

In developing their supplemental plan, Defendants considered, among other things, program needs, resource availability, difficulty of recruiting, hiring, and retaining staff, and timeframes for completion. Defendants also considered the number and types of beds that would be displaced by these proposals, the need for waivers of law, and the impact the proposals may have on existing court orders. To that end, Defendants expect that they may need to seek waivers

---

[1] The SVPP waitlist as of October 13, 2011, totaled 139 inmate-patients. The APP waitlist as of October 13, 2011, totaled 28 inmate-patients. The average length of stay on the SVPP waitlist as of October 7, 2011, was 54.3 days.

[2] As part of Defendants' short-term bed plan filed on May 26, 2009, Defendants proposed converting the 25 APP beds at ASH to ICF beds to meet the need for low-custody ICF beds at that time. The Court approved this change on June 18, 2009.

from the Court associated with converting the L-Wing at CMF. Further, Defendants may need to modify existing *Coleman* court orders governing Defendants' long-range mental health bed plan. Defendants will update the Court on the progress of their supplemental plan in their November 2011 update to the Court.

## II. DEFENDANTS' SUPPLEMENTAL PLAN

### A. Modified ICF Pilot Program Custody Criteria/Department of Mental Health Patient Movement Plan.

#### 1. Modified ICF Pilot Program Custody Criteria.

In October 2009, CDCR implemented a statewide pilot program designed to arrive at a sustainable CDCR-DMH referral process that effectively provides for access to care to DMH ICF level of care, consistent with inmate-patient, staff, and public safety and security requirements. The ICF Pilot Program is based on custody criteria developed specifically for DMH-ICF placement determination. Attached as Exhibit 1 is the "Case-By-Case Placement Guidelines for Atascadero State Hospital (ASH) and California Medical Facility-Vacaville Psychiatric Program (CMF-VPP) Intermediate Care Facility (ICF) Dorm Beds." The Pilot Program is a two-year program beginning October 23, 2009 and ending October 23, 2011.

In conjunction with DMH and the California Department of Corrections and Rehabilitation (CDCR) Division of Adult Institutions, CDCR Health Care Placement Oversight Program (HC-POP) and CDCR Mental Health Program, maintained an ongoing evaluation of the ICF Pilot Program to determine whether or not CDCR could expand utilization of the beds available for CDCR inmates-patients at ASH, the VPP dorms, and SVPP and to identify any recommended changes. DMH and CDCR have determined that it is safely possible to make a change in the ICF Pilot Program custody criteria that will allow them to more efficiently use single celled housing in DMH inpatient programs and thereby reduce the SVPP waitlist. Thus, CDCR and DMH have modified the current ICF criteria in two ways. First, the new custody criteria will include for case-by-case reviews for ASH and VPP dorm consideration, the Indecent Exposure cases where there are no preclusionary factors and the custody driven S Suffix cases where the basis is not for serious in-cell predatory/assaultive behavior such as homicide or sexual assault. Second, the new custody criteria removes the Recent Security Housing Unit (SHU) able offense Column as the Level IV/Assault Risk Column already adequately captures it and is a better assessment of assault risk. Attached as Exhibit 2 is a revised "Case-by-Case Placement Guidelines" for ASH and the VPP dorms, with tracked changes that reflect the modifications. CDCR is in the process of finalizing the modifications and promulgating the Pilot Program through the Administrative Procedures Act.

#### 2. Department of Mental Health Patient Movement Plan.

Utilizing the revised case-by-case guidelines, DMH has developed a patient movement plan designed to significantly reduce the SVPP waitlist and to better manage it on an ongoing basis. The plan consists of two parts: (a) Initial Start Up Plan; and (b) Plan for Continued Flow for DMH Patient Movement. As described more fully below, DMH and CDCR are designing and honing a collaborative process to review the current SVPP patient population that will involve the reconfigured custody criteria in addition to a DMH clinical case assessment of inmate-patients in their care at SVPP. Any transfers from SVPP to a DMH inpatient dormitory setting will be considered deferrals from one DMH program to another, each providing an ICF level of

care. In addition to reviewing the inmate-patients that are currently housed at SVPP, HC-POP and DMH will utilize the reconfigured custody criteria to reconsider the inmate-patients currently on the SVPP waitlist for placement in ASH or the VPP dorms. Defendants expect that by virtue of reviewing the inmate-patients currently housed in SVPP for transfer to another DMH ICF program along with the review of the inmate-patients currently on the SVPP waitlist for placement in ASH or the VPP dorms, they will reduce the SVPP waitlist by approximately 50 inmate-patients.

DMH's patient movement plan also impacts the APP waitlist. As part of Defendants' May 26, 2009 Bed Plan, Defendants converted the 25 ASH APP beds to low-custody ICF beds. However, because there is a surplus of low-custody ICF beds at ASH, Defendants have decided to change the 25 low-custody ICF beds back to APP beds so that they can use them to house inmate-patients needing APP care, thereby reducing the APP waitlist. Therefore, DMH will review inmate-patients in VPP for deferral to ASH. In addition, VPP will forward acute referrals from the APP waitlist to ASH. Defendants expect that these two processes will reduce the APP waitlist by approximately 25 inmate-patients.

      **a.**    **Initial Start Up Plan:**

           (1).    <u>Transfers from ASH to Another DMH ICF Program.</u>

ASH clinicians will identify approximately 50 California Penal Code section 2684 (CDCR inmate-patients) ICF inmate-patients from its current population at ASH for transfer to another DMH inpatient program providing ICF level of care using clinical assessments focused on safety and treatment.

On November 1, 2011, ASH will initiate transfers of the approximate 50 inmate-patients at a rate of six per week. The purpose of this transfer is to open up more beds for inmate-patients who will be transferred from SVPP and referred from the SVPP waitlist.

           (2).    <u>Reduce Current Number of Inmate-Patients Housed at SVPP.</u>

In September 2011, HC-POP, based on its quarterly review of the current population at SVPP as set forth in Defendants' March 16, 2011 Plan to Review the Current Salinas Valley Psychiatric Program Population Re: October 5, 2010 *Coleman* Court order, identified five inmate-patients housed at SVPP for transfer. On October 4, ASH admitted three of the five inmate-patients referred. On October 5, VPP admitted the remaining two inmate-patients.

Beginning October 10, 2011, ASH Clinical and Admissions Teams started going to SVPP to evaluate the current population (including those on the SVPP wait list) for possible transfer to ASH. HC-POP provided ASH with a list of 118 inmates housed at SVPP that qualify for the reconfigured custody criteria. The ASH Team will utilize clinical assessment to determine safety and treatment needs.

(3).   Transfers from VPP to ASH for Acute.

Effective October 3, 2011, VPP initiated referrals to ASH. As result, VPP is in the process of forwarding packets to ASH for review and transfer approval. Effective October 10, 2011, ASH started changing the 25 ICF beds back to 25 APP beds. Additionally, VPP has started forwarding acute referrals from the APP waitlist to ASH for placement.

b.   **Plan for Continued Flow for DMH Patient Movement:**

(1).   Once DMH has completed the initial screening of the 118 inmates identified by HC-POP, ASH will work with SVPP clinical staff to identify those inmates that have stabilized using clinical assessments focused on safety and treatment. ASH staff may also identify additional cases that may be clinically appropriate for ICF dormitory housing. If so, HC-POP staff will review those cases as well. ASH Admissions Office Staff will make the final placement determination on all cases.

(2).   All CDCR inmates referred for APP care will continue to funnel through VPP. Thus, VPP will continue to forward APP referrals to ASH in order to eliminate the APP waitlist, as necessary and appropriate. Thereafter, ASH will keep open the 25 APP beds as long as the need for the beds exists.

(3).   CDCR and DMH will discontinue their quarterly review of the current population at SVPP as set forth in their March 16, 2011 Plan to Review the Current Salinas Valley Psychiatric Program Population Re: October 5, 2010 *Coleman* Court order.

The movement plan must include an admission rate that is manageable providing for expeditious relief of the SVPP and VPP waitlists in addition to a safe transition for the ASH population. Transfers from ASH to other DMH ICF programs beginning November 1, 2011, will be at a rate of six per week, which allows for ASH to increase the weekly admissions while not increasing the maximum population rates at a level that increases violence at ASH. Thus, ASH can then admit six CDCR inmates per week from SVPP and VPP combined, in order to stay within the weekly maximum admission rate. This six per week rate is in addition to the ongoing referrals to low-custody ICF beds. Transfers from both SVPP and VPP to ASH will take place as soon as suitable inmate-patients are identified through clinical reviews. Therefore, as part of its patient-movement plan, DMH anticipates moving to and from ASH up to twelve inmate-patients per week.

B.   **Vacaville Psychiatric Program 64-Bed Intermediate Care Facility Project.**

The second part of Defendants' supplemental plan is the new 64 bed ICF at CMF. Construction is approximately 90 percent complete on this project. This new unit is patterned after the two successful 64-bed ICFs built at SVSP for DMH to operate within the SVPP. This CMF building will be operated by DMH within the existing VPP and will be licensed as part of the currently licensed Correctional Treatment Center. It is scheduled for activation in early 2012 with inmate-patient admissions beginning as soon as January 9, 2012, and no later than March 1, 2012. Though part of Defendants' prior bed planning efforts, because the new 64 bed treatment facility

will have a significant impact on further reducing the wait list, it must be factored into meeting the overall need for ICF beds within the mental health system.

### C. Conversion of L Wing at California Medical Facility from Enhanced Outpatient Program Level of Care to Intermediate Care Facility Level of Care.

The third part of Defendants' supplemental plan is to convert 113 cells in the L-Wing at CMF to 110 temporary unlicensed ICF level of care beds and three observation and restraint rooms for high-custody inmate-patients on the SVPP waitlist. The L-Wing at CMF currently operates as a housing unit for inmates in the EOP-GP level of care who will be relocated. The L Wing was chosen due to, among other things, the existence of office and treatment space, as well as its proximity to existing programs operated by DMH in the VPP at CMF. As currently scheduled, Defendants anticipate that patient admissions into the renovated L-Wing will start at the end of April 2012 at the rate of six per week.

This conversion of L-Wing at CMF from an EOP-GP level of care to an ICF level of care for high-custody inmate-patients has three interrelated components: (1) deactivating the L-Wing and relocating the EOP-GP inmates currently housed in those beds; (2) retrofitting the L-Wing from an EOP-GP housing unit to a temporary unlicensed ICF unit; and (3) staffing the L-Wing and providing appropriate ICF level of care.

#### 1. Deactivating the L-Wing and Relocating the Current Inmate-Patient Population.

The first component involves deactivating the L-Wing and relocating the EOP-GP inmate-patients that are currently housed in the unit. CDCR plans to accomplish the deactivation through several means, including moving EOP-GP inmates to other EOP-GP programs such as those at the California Men's Colony, the Substance Abuse and Treatment Facility, and Richard J. Donovan Correctional Facility, attrition due to paroling inmates, including anticipated impact from realignment under AB 109, and not back filling current vacancies. This process will reduce EOP-GP capacity at CMF by 200 inmate-patients beds. Because the L-Wing is comprised of three separate units in a three tiered configuration, moving the inmate-patients to other programs will occur in phases: L-3 - December 2011; L-2 - January 2012; and L-1 - February 2012, with all the beds in the L-Wing deactivated by March 2012. Once Defendants have sufficiently assessed the impact from the deactivation and relocation of the EOP-GP inmate-patient on other EOP-GP programs in the prison system, Defendants will assess whether they need to modify their Long-Range Mental Health Bed Plan.

#### 2. Retrofitting the L-Wing to House ICF High-Custody Inmate-Patients.

The second component of this plan involves retrofitting the L-Wing to accommodate the SVPP waitlist population. CDCR will retrofit the facility with security cell doors, security exterior window screening, enhanced corridor lighting, and data access. It will retrofit the cells to be single occupancy by removing excess furniture and replacing existing lockers. For inmate-patient safety and security, CDCR will convert the spring equipped bunks to sheet steel, replace existing porcelain fixtures with stainless steel, remove towel bars and clothes hooks, and place security covers on electrical outlets. Throughout each tier, CDCR will repair the flooring and

paint the walls as necessary. Converting the L-Wing will require the Court to waive the State's licensing requirements regarding the licensing of Correctional Treatment Centers—California Health and Safety Code section 1250(j) and California Code of Regulations, Title 22, sections 79501–79861. Additionally, Defendants expect that they may need to seek waivers from the Court concerning accessibility requirements associated with this conversion.

The L wing retrofits and repairs will be done in a phased manner concurrent with vacating the tiers—construction will begin as each floor is vacated, and construction will finish in the same sequence. As construction ends and each tier is accepted, each tier will be handed over to CMF and DMH for their activation sequencing and activities. As currently scheduled, construction of L-3 will end in the beginning of April 2012, L-2 the end of April 2012, and L-1 the end of May 2012. Based on this schedule, Defendants expect that inmate-patient admissions will begin in late April in L-3, and continue as construction related to retrofitting progresses.

### 3. Staffing and ICF Inmate-Patient Care.

DMH will staff the L Wing utilizing the same nursing and clinical staffing patterns as the other high custody ICF unit at VPP (P-3). DMH will provide nursing 24 hours per day, seven days per week, consistent with ICF regulations utilizing Registered Nurses and Medical Technical Assistants. There will be a Treatment Team on each unit comprised of psychiatrists, clinical psychologists, clinical social workers, rehabilitation therapists, and registered dieticians.

The treatment program will consist of a full range of groups and activities at the same level as the other ICF units:

- Psycho-educational therapy modalities including Coping Skill Development. These would include therapies facilitating development of an understanding of mental illness and the symptoms of decompensation, including precursors and warning signs specific to the patients. They would also include modalities aimed at developing and supervising implementation of adaptive patterns of social behavior.

- Psycho-educational modalities focusing on the inmate-patients' capabilities in maintaining psychiatric stabilization and maximizing functioning. This includes understanding the need for medication and possible side effects and effective use of clinical resources and supportive services available outside an inpatient setting.

- Therapy focusing on understanding and modifying substance abuse behaviors. Ideally, these incorporate psycho-educational, mutually supportive/directive, and relapse prevention approaches.

- Ancillary and supportive therapies aimed at acquiring skills in adaptive living such as those provided by the rehabilitative therapies. These include recreational, art, music, and occupational therapies.

# EXHIBIT 1

# CASE-BY-CASE PLACEMENT GUIDELINES
## For Atascadero State Hospital (ASH) and California Medical Facility-Vacaville Psychiatric Program (CMF-VPP) Intermediate Care Facility (ICF) Dorm Beds

| | MAX CUSTODY (based on non-disciplinary reason) | RECENT SHU-ABLE OFFENSE | LEVEL IV ASSAULT RISK | SNY/SAFETY CONCERNS | CLOSE CUSTODY |
|---|---|---|---|---|---|
| **ASH ICF** — Similar to CDCR Level II facility: unlocked dorms in locked units, no internal gun coverage; one unarmed watchtower, double fence, motion sensors, double 24-hour outside patrol | Non-adverse or administrative placements such as:<br>• family member works at institution,<br>• local safety/enemy concerns, or<br>• SNY designation as basis for ASU placement<br>are cases that should be evaluated on a case-by-case basis to consider the totality of case factors, prior to placement. | Inmates who have a recent history of a SHU-able offense can be considered for ASH placement after case-by-case review using the following timeframes:<br>• Any Division A-1 or A-2 offense will be eligible for case-by-case review 18 months after expiration of SHU MERD, unless other factors preclude consideration, such as Close A custody or S-suffix.<br>• Multiple (three or more) SHU-able offenses that involved violence against others within a 12-month period will be eligible for case-by-case review 18 months after expiration of SHU MERD, unless other factors preclude consideration, such as Close A custody or S-suffix.<br>• All other SHU-able offenses will be eligible 12 months after expiration of SHU MERD.<br><br>Expiration of SHU MERD is defined as the date an active SHU term MERD expired or the date an active SHU term MERD is suspended, if not at an initial review. If a SHU term was suspended or committed upon initial review, the case will be treated as if the inmate-patient did not have a SHU term. The behavior should still be considered as part of the totality of available information using sound correctional judgment and experience.<br><br>Case-by-case review shall consider the totality of case factors, prior to placement. Emphasis is to be placed on the inmate's current demonstrated threat of assaultive behavior. | Level IV cases are eligible for ASH, except for cases that are identified as posing a serious assault risk.<br><br>Within one year of the referral, serious RVR offenses – CCR, § 3315 (2)(A)-(D), CCR, § 3323 (a)-(f) Division A, B, C or D – which involved threatening, weapons, assaultive, or inciting behavior, will require case-by-case review to consider the totality of case factors, prior to placement.<br><br>Emphasis is to be placed on evidence of safety concern versus unsubstantiated fear. | Threat(s) by a group, gang, or unknown multiple parties due to verified information such as open court testimony, gang drop-out debriefing, etc. are excluded.<br><br>Other non-verified risk of assault or SNY designation due to committing offense will require case-by-case review to consider the totality of case factors, prior to placement. | Close B inmates will require case-by-case review for ASH placement.<br><br>Emphasis is to be placed on escape risk and management concerns, such as length of sentence/time to serve, time in custody, and felony holds. For review of escape risk, emphasis is to be placed on the inmate's current demonstrated threat and ability to escape from a secure perimeter facility.<br><br>Close A inmates are excluded from ASH. |
| **CMF-VPP ICF DORMS** — Level III facility with electrified fence and locked 4- to 16-man dormitory rooms on a locked unit | Non-adverse or administrative placements such as:<br>• family member works at institution,<br>• local safety/enemy concerns, or<br>• SNY designation as basis for ASU placement<br>are cases that should be evaluated on a case-by-case basis to consider the totality of case factors, prior to placement. | Inmates who have a recent history of a SHU-able offense can be considered for CMF-VPP dorm placement 12 months after expiration of SHU MERD with a case-by-case review, unless other factors preclude consideration, such as S-suffix.<br><br>If a SHU term was suspended or committed upon initial review, the case will be treated as if the inmate-patient did not have a SHU term. | Level IV cases are eligible for CMF-VPP dorms, except for the following cases that require a case-by-case review prior to placement to determine if they pose a serious assault risk:<br><br>• Inmate-patients who have received serious RVR offenses – CCR, § 3315 (2)(A)-(D), CCR, § 3323 (a)-(f) Division A, B, C or D – within six months of the referral if no SHU term. | Threat(s) by a group, gang, or unknown multiple parties due to verified information such as open court testimony, gang drop-out debriefing, etc. are excluded.<br><br>Other non-verified risk of assault or SNY designation due to committing offense will require case-by-case review to consider the totality of case factors, prior to placement. | Close A inmates will require case-by-case review for CMF-VPP dorm placement.<br><br>Emphasis is to be placed on escape risk and management concerns, such as length of sentence/time to serve, time in custody, and felony holds. For review of escape risk, emphasis is to be placed on the inmate's current demonstrated threat and ability to escape from a secure perimeter facility.<br><br>Close B inmates are eligible for CMF-VPP dorms without case-by-case review. |

# EXHIBIT 2

# CASE-BY-CASE PLACEMENT GUIDELINES
## For Atascadero State Hospital (ASH) and Vacaville Psychiatric Program (CMF-VPP) Intermediate Care Facilities

| DIVISION REVIEW (based on custody factors) | RECENT SHU HISTORY | LEVEL IV ASSAULT RISK | SAFETY CONCEPTS | S-SUFFIX | CLOB/CLOA HISTORY/ESCAPE RISK |
|---|---|---|---|---|---|
| Non-adverse or administrative placements such as:<br>• family member works at institution,<br>• local safety/enemy concerns, or<br>• SNY designation as basis for ASU placement<br>are cases that should be evaluated on a case-by-case basis to consider the totality of case factors, prior to placement. | Inmates who have a recent history of a SHU-able offense can be considered for ASH placement after case-by-case review using the following timeframes:<br>• Any Division A-1 or A-2 offense will be eligible for case-by-case review 18 months after expiration of SHU MERD, unless other factors preclude consideration, such as Close-A custody or S-suffix.<br>• Multiple (three or more) SHU-able offenses that involved violence against others within a 12-month period will be eligible for case-by-case review 18 months after expiration of SHU MERD, unless other factors preclude consideration, such as Close-A custody or S-suffix.<br>• All other SHU-able offenses will be eligible 12 months after expiration of SHU MERD. | Level IV cases are eligible for ASH, except for the following cases that require a case-by-case review prior to placement to determine if they pose a serious assault risk, cases that are identified as posing a serious assault risk:<br>Within one year of the referral, serious RVR offenses — CCR, § 3315(2)(A)-(D), CCR § 3323 (a)-(f) Division A, B, C or D – which involved threatening, weapons, assaultive, or inciting behavior, will require a case- by-case review to consider the totality of case factors, prior to placement. Emphasis is to be placed on the inmate's current demonstrated threat of assaultive /predatory behavior. | Threat(s) by a group, gang, or unknown multiple parties due to verified information such as open court testimony, gang drop-out debriefing, etc., are excluded.<br>Other non-verified risk of assault or SNY designation due to committing offense will require a case -by- case review to consider the totality of case factors, prior to placement. | S-Suffix due to non-clinical reasons such as in-cell murder or in-cell predatory behavior/sexual assault are excluded from ASH placement. All other cases will require a case by case review for dormitory placement consideration. Emphasis is to be placed on the inmate's current demonstrated threat of assaultive /predatory behavior in a dormitory environment. | CLOB inmate-patients will require case-by-case review for ASH placement to determine ability to program in an ICF open dormitory setting.<br>Emphasis is to be placed on escape risk and management concerns, such as length of sentence/time to serve, time in custody, and felony holds. For review of escape risk, emphasis is to be placed on the inmate's current demonstrated threat and ability to escape from a secure perimeter facility. |
| | Expiration of SHU MERD is defined as the date an active SHU term MERD expired or the date an active SHU term MERD is suspended, if not an initial review. If a SHU term was suspended or commuted upon initial review, the case will be treated as if the inmate-patient did not have a SHU term. The behavior should still be considered as part of the totality of available information using sound correctional judgment and experience. Case-by-case review shall consider the totality of case factors, prior to placement. Emphasis is to be placed on the inmate's current demonstrated threat of assaultive behavior. | | Emphasis is to be placed on evidence of safety concerns versus unsubstantiated fear. | S-Suffix placement due to clinical reasons shall require a case- by- case review to determine ability to program in an ICF open dormitory setting. | |
| Non-adverse or administrative placements such as:<br>• family member works at institution,<br>• local safety/enemy concerns, or<br>• SNY designation as basis for ASU placement<br>Other factors preclude consideration, such as S-suffix. | Inmates who have a recent history of a SHU-able offense can be considered for CMF-VPP dorm placement 12 months after expiration of SHU MERD with a case-by-case review, unless other factors preclude consideration, such as S-suffix.<br>If a SHU term was suspended or commuted upon initial review, the case will be treated as if the inmate-patient did not have a SHU term. | Level IV cases are eligible for CMF-VPP dorms, except for the following cases that require a case-by-case review prior to placement to determine if they pose a serious assault risk:<br>Within six months of the referral, serious RVR offenses — CCR, § 3315(2)(A)-(D), CCR § 3323 (a)-(f) Division A, B, C or D – which involved threatening, weapons, assaultive, or inciting behavior, will require a case-by-case review to consider the totality of case factors, prior to placement. Inmate-patients who have received serious RVR offenses — CCR § 3315(2)(A)-(D), CCR § 3323 (a)-(f) Division A, B, C or D – within six months of the referral no SHU term. Emphasis is to be placed on the inmate's current demonstrated threat of assaultive /predatory behavior. | Threat(s) by a group, gang, or unknown multiple parties due to verified information such as open court testimony, gang drop-out debriefing, etc., are excluded.<br>Other non-verified risk of assault or SNY designation due to committing offense will require a case -by- case review to consider the totality of case factors, prior to placement.<br>Emphasis is to be placed on evidence of safety concerns versus unsubstantiated fear. | S-Suffix due to non-clinical reasons such as in-cell murder or in-cell predatory behavior/sexual assault are excluded from VPP-Dorm placement. All other cases will require a case by case review for dormitory placement consideration. Emphasis is to be placed on the inmate's current demonstrated threat of assaultive /predatory behavior in a dormitory environment.<br>S-Suffix placement due to clinical reasons shall require a case- by- case review to determine ability to program in an ICF open dormitory setting. | CLOA inmate-patients will require case-by-case review for ASH placement to determine ability to program in an ICF open dormitory setting.<br>Emphasis is to be placed on escape risk and management concerns, such as length of sentence/line to serve, time in custody, and felony holds. For review of escape risk, emphasis is to be placed on the inmate's current demonstrated threat and ability to escape from a secure perimeter facility. CLOA inmate-patients are excluded from ASH |
| OR<br>Indecent Exposure (IEX) designation where there are no preclusionary factors | | | | | Close B inmate-patients are eligible for CMF-VPP dorms without case-by-case review |