IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

RALPH COLEMAN, et al.

    Plaintiffs,

  vs.                      No. CIV S-90-0520 LKK JFM P

EDMUND G. BROWN, JR., et al.

### SPECIAL MASTER'S REPORT ON HIS
### EXPERT'S REPORT ON SUICIDES COMPLETED IN THE CALIFORNIA
### DEPARTMENT OF CORRECTIONS AND REHABILITATION
### IN CALENDAR YEAR 2010

Attached is the Coleman Special Master's Expert's Report on Completed Suicides in the California Department of Corrections and Rehabilitation ("CDCR" or "Department"), for calendar year 2010 (2010 Suicide Report). It is submitted as part of the Special Mastership's continuing review of the Defendants' compliance with court-ordered remediation in the matter of *Coleman v. Brown*, No. CIV S-90-0520 LKK JFM P (E.D. Cal.). The analyses, findings, and conclusions in this report are the work of Raymond F. Patterson, M.D., with the assistance of various members of my staff. Dr. Patterson is a nationally recognized expert on suicides in the correctional setting who has written the *Coleman* annual suicide reports over the past decade.

Like the 2008/2009 Suicide Report, this one also varies to some extent in content and format from previous annual suicide reports as a result of developments in the *Coleman* case in the area of suicide prevention in 2009 and 2010. To briefly summarize the context of these changes, they began with my Report and Recommendations on my Expert's Report on Suicides Completed in the California Department of Corrections and

1

Rehabilitation in Calendar Year 2007 (2007 Suicide Report), which I filed on December 24, 2009.  Docket No. 3758.  Defendants then filed objections to that report.  Docket No. 3762.  Mindful of the continuing nature of many of the concerns addressed in the 2007 Suicide Report, the *Coleman* court ordered on April 14, 2010 that Defendants, under my guidance, review all existing suicide prevention policies and practices, all suicide review and reporting processes, and the implementation of such policies, practices, and procedures over the ensuing 120 days.  Docket No. 3836.  The process involved several meetings and teleconferences with the Defendants and selected members of my team, beginning on May 18, 2010 and concluding on August 25, 2010.   On August 14, 2010, Defendants produced their timely "Report on Activities Taken Following the Court's April 14, 2010 Order," and then submitted an amended report on August 25, 2010, which was shared with Plaintiffs' counsel.  On September 8, 2010, Plaintiffs provided me with a letter summarizing their position on Defendants' report, and on September 22, 2010, Defendants submitted to me their written reply to the Plaintiffs' letter.

On September 27, 2010, I filed my report on defendants' review of suicide prevention policies, practices and procedures, with five recommendations for further orders.  Docket No. 3918.  The *Coleman* court then entered an order adopting four of the five recommendations, and deferring consideration of the remaining recommendation (concerning submission of a plan by defendants to furnish suicide-resistant beds in CDCR mental health crisis bed units) until the conclusion of the time for plaintiffs' reply to defendants' objection to that recommendation.  Docket No. 3954.

In 2010, defendants devoted a good deal of time and resources to improving their performance in the area of suicide prevention and review.  This caused me to consider the

2

merits of a more streamlined format for annual suicide reports for the years 2008 and 2009.  I asked the *Coleman* parties to suggest a format for my expert's annual suicide reports for these years.  Plaintiffs requested in their letter of September 8, 2010, and Defendants agreed in their letter of September 22, 2010, to the following components of my expert's suicide report:

1. Statistical summaries of suicides for the years 1998 through 2009;

2. Chart 1[1], which lists suicides by CDCR or DMH facility;

3. Chart 2, which describes housing, "R"-suffix, method, history of suicidal behavior, history of mental health treatment, Keyhea orders, severe or life-threatening illness, presence on the mental health caseload at time of death, demographics, and significant indications of inadequate treatment;

4. Findings which specify whether the Defendants complied with the timelines of their own suicide review and reporting process, and the percentage of suicides that were foreseeable and/or preventable;

5. Table 1, with all elements; and

6. Table 2, with all elements.

I agreed with the parties' proposed format, and I recommended in my report of September 27, 2010 that it be used in my expert's report on suicides in CDCR for calendar years 2008-2009.  My expert prepared his 2008-2009 Suicide Report utilizing this more concise format.  Docket No. 4009, filed May 16, 2011.  At the *Coleman* Policy Meeting of June 6, 2011, the parties agreed that my expert should utilize the same streamlined format in his 2010 Suicide Report.  I again concurred again with that agreement.

My expert's 2010 Suicide Report was distributed to the parties in draft form on September 29, 2011.  Neither of the parties submitted any objections to the draft report.

---

[1] The charts and tables refer to the charts and tables that have appeared in the Special Master's expert's annual suicide reports to date.

3

However, since the time of distribution of the draft report, it has come to light that the official dates of death (i.e. the dates on which inmates were formally pronounced dead by a qualified physician) for Inmates numbered 5, 11, and 27 vary from the dates of death which appeared for these cases on Table 1 in the draft report.  As a result, the dates of death for these three cases have been adjusted on Table 1 in the final 2010 Suicide Report.  The changes in dates of death do not change or affect any of the other information contained in the draft report.  They merely change the order in which the cases appear on Tables 1 and 2.  This revision has caused the case which appeared as Inmate No. 11 on Tables 1 and 2 of the draft report to shift to No. 22 on the finalized Tables 1 and 2, and likewise has caused the cases which appeared originally as Nos. 12 through 22 on the tables to shift upwards by one number.  I have provided the parties with an adjusted confidential list of redacted inmate identities reflecting this change in case numbering.

The defendants' new strategies in suicide prevention which emerged from the suicide prevention and review project in 2010 must continue be high-priority activities.  Most recently, defendants have submitted to me a plan for provision of suicide-resistant beds for all at-risk inmates who would not otherwise be provided with a bed in mental health crisis bed units.  Follow-up conferences with defendants on this subject have been fruitful, and defendants are expected to submit an updated plan within the near future for furnishing those beds.  My report to the court on that subject will follow.

Defendants' agenda for suicide prevention remains a full one.  Apart from any future order of the court with regard to defendants' plan to provide suicide-resistant beds in mental health crisis bed units, there does not appear to be a present need for additional

orders in the area of suicide prevention and response. Accordingly, I do not recommend the entry of any further orders at this time.

                                          Respectfully submitted,

                                              /s/

                                          Matthew A. Lopes, Jr., Esq.
                                          Special Master

November 9, 2011