KAMALA D. HARRIS
Attorney General of California
JONATHAN L. WOLFF
Senior Assistant Attorney General
JAY C. RUSSELL
Supervising Deputy Attorney General
DEBBIE J. VOROUS, State Bar No. 166884
DAVID E. BRICE, State Bar No. 269443
Deputy Attorneys General
  1300 I Street, Suite 125
  P.O. Box 944255
  Sacramento, CA 94244-2550
  Telephone:  (916) 324-8010
  Fax:  (916) 324-5205
  E-mail:  David.Brice@doj.ca.gov

*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **RALPH COLEMAN, et al.,** | 2:90-cv-00520 LKK JFM P |
| Plaintiffs, | **DEFENDANTS' THIRD STATUS REPORT ON SUPPLEMENTAL WAIT LIST PLAN AND ASSESSMENT PROCESS** |
| v. | |
| **EDMUND G. BROWN, JR., et al.,** | |
| Defendants. | |

1

**ACRONYM LIST**

| Acronym | Term |
| --- | --- |
| APP | Acute Psychiatric Program |
| ASH | Atascadero State Hospital |
| CDCR | California Department of Corrections and Rehabilitation |
| CMF | California Medical Facility |
| DMH | Department of Mental Health |
| EOP-GP | Enhanced Outpatient Program General Population |
| HC-POP | Health Care Placement Oversight Program |
| ICF | Intermediate Care Facility |
| OAL | Office of Administrative Law |
| SVPP | Salinas Valley Psychiatric Program |
| VPP | Vacaville Psychiatric Program |

# I.    INTRODUCTION

On August 15, 2011, the Court ordered that Defendants, over the next ninety days, work with the *Coleman* special master to "develop a supplemental plan to reduce or eliminate the inpatient wait list and to better serve the treatment needs of the inmates on the wait list." (Docket No. 4069 ¶ 3.)  The Court further ordered that during this same ninety-day time period, Defendants "shall work with the special master so that an assessment process that meets his approval has been conducted and completed by December 9, 2011." (*Id.* ¶ 4.)  Moreover, the Court ordered Defendants to report to the Court on the status of the development of the supplemental wait list plan and the assessment process every thirty days from the date of the order until the time of the December 14, 2011 evidentiary hearing, with the first report due on September 9, 2011. (*Id.* ¶ 5.)  Defendants now present their third status report to the Court.

# II.    STATUS REPORT

## A.    Status of Supplemental Wait List Plan.

Defendants filed their supplemental plan to reduce or eliminate the Salinas Valley Psychiatric Program (SVPP) and Acute Psychiatric Program (APP) wait lists on October 18, 2011. (Docket No. 4103.)  In that filing, Defendants informed the Court that they would update the Court on the progress of their supplemental plan in their November 2011 update to the Court. (*Id.* at 2:13–14.)  Defendants divided their supplemental plan into three parts.  First, Defendants discussed changes in the Intermediate Care Facility (ICF) Pilot Program custody criteria that allow patient movement from the SVPP into other ICF programs operated by the Department of Mental Health (DMH). (*Id.* at 7–9.)  Second, Defendants provided an update on the construction of the 64 permanent ICF beds in the Vacaville Psychiatric Program (VPP) at California Medical Facility (CMF). (*Id.* at 9–10.)  Third, Defendants discussed their plan to convert the 113 Enhanced Outpatient Program General Population (EOP-GP) beds in the L-Wing at CMF into 110 temporary unlicensed ICF beds and three observation and restraint rooms for high-custody inmate-patients on the SVPP waitlist. (*Id.* at 10–11.)  Defendants summarize their progress below on the first and third parts of the plan.

/ / /

3

1
2

### 1. Modified ICF Pilot Program Custody Criteria/Department of Mental Health Patient Movement Plan.

3

Defendants have made substantial progress in finalizing and using the modified ICF

4

custody criteria to review inmate-patients currently on the SVPP wait list and to move inmate-

5

patients from one DMH program into another DMH program, thereby allowing more efficient use

6

of single celled housing in DMH programs. Specifically, the California Department of

7

Corrections and Rehabilitation (CDCR) Health Care Placement Oversight Program (HC-POP)

8

identified 44 inmate-patients from the SVPP wait list as potentially eligible for placement in a

9

dormitory setting at Atascadero State Hospital (ASH) or the VPP dorms. Additionally, DMH has

10

transferred sixteen inmate-patients to another DMH program, and fifteen inmate-patients are

11

scheduled to transfer.

12

### a. Modified ICF Pilot Program Custody Criteria.

13

The ICF Pilot Program began on October 23, 2009 and ended on October 23, 2011.

14

(Docket No. 4103 at 7; Johnson Decl. ¶ 5.) As a result of the pilot program, CDCR and DMH

15

modified the ICF Pilot Program custody criteria to allow for more efficient use of single celled

16

housing in DMH programs. (*Id.*) On October 27, 2011, CDCR submitted proposed emergency

17

regulations to the Office of Administrative Law (OAL) to permanently adopt the modified ICF

18

Pilot Program. (Johnson Decl. ¶ 5.) These proposed regulations are now posted on OAL's public

19

website.[1] HC-POP is using the modified ICF custody criteria to consider ICF referrals for

20

placement into ASH or the VPP dorms pending completion of the regulatory process. (*Id.*)

21

Using the modified ICF custody criteria, HC-POP and DMH are in the process of

22

reconsidering the inmate-patients currently on the SVPP waitlist for placement into ASH or the

23

VPP dorms. (*See* Docket No. 4103 at 8.) After review of the current SVPP waitlist, HC-POP

24

determined that an additional 60 inmate-patients were potentially eligible for placement into ASH

25

or the VPP dorms pending case-by-case reviews. (Johnson Decl. ¶ 6.) Upon further review,

26

sixteen of the 60 cases were found to have transferred to a DMH program, paroled, or had case

27

---

[1] *See* http://www.oal.ca.gov/Emergency_Regulations_Under_Review.htm.

28

1    factors making them ineligible. (*Id.*) As of November 4, 2011, the status of the 44 remaining

2    cases is: one direct ASH referral and pending transfer; three direct referrals to the VPP dorms

3    and pending transfer; sixteen inmate-patients recommended for ASH pending case-by-case

4    reviews; and 24 inmate-patients recommended for the VPP dorms pending case-by-case reviews.

5    (*Id.*)

6                    **b.    Department of Mental Health Patient Movement Plan.**

7            DMH, using the modified ICF custody criteria, developed a three-part patient movement

8    plan: (1) transfers from ASH to another DMH ICF program; (2) transfer from SVPP to ASH; and

9    (3) transfers from VPP to ASH for Acute care. (Docket No. 4103 at 7.)

10                    **(1).    Transfers from ASH to Another DMH ICF Program.**

11            As of November 4, 2011, DMH transferred six inmate-patients from ASH to Coalinga State

12    Hospital and six were scheduled for transfer. (DeMorales Decl. ¶ 4.)

13                    **(2).    Transfers from SVPP to ASH.**

14            HC-POP provided ASH clinical and admissions teams with a list of 118 inmate-patients

15    housed at SVPP who qualified for the reconfigured custody criteria. (Docket No. 4103 at 8.)

16    Defendants added two inmate-patients to this list. (DeMorales Decl. ¶ 5.) A team of two staff

17    from ASH reviewed the 120 inmate-patients and determined from a clinical perspective that 92 of

18    the inmate-patients were appropriate for ASH. (*Id.*) After further clinical assessment of the 92

19    inmate-patients, the ASH team determined that 20 inmate-patients were not suitable for transfer

20    to ASH and that eleven inmate-patients were already in the process of discharging back to CDCR,

21    leaving 61 inmate-patients as eligible for transfer from SVPP to ASH. (*Id.*)

22            Of the 61 inmate-patients eligible for transfer from SVPP to ASH, DMH started the transfer

23    process by selecting the first eighteen inmate-patients on the list. (DeMorales Decl. ¶ 6.) DMH

24    transferred four of the inmate-patients to ASH on October 27 and three on November 3. (*Id.*) Of

25    the remaining eleven inmate-patients, DMH removed two from the list for behavior reasons. (*Id.*)

26    Of the remaining nine, four are scheduled for admission on November 9, two on November 10,

27    and three on November 15. (*Id.*)

28    / / /

5

1    Of the 43 remaining inmate-patients, DMH removed two from the list for behavior reasons,

2    and seven from the list because they are discharging back to CDCR.  (DeMorales Decl. ¶ 7.)

3    DMH expects to transfer the remaining 34 inmate-patients to ASH at a rate of six per week.  (*Id.*)

4    But, as noted above, unanticipated circumstances may prohibit transfer of one or more of the

5    remaining inmate-patients.  (*Id.*)

6            **(3).    Transfer from the APP in the Vacaville Psychiatric Program to ASH for
7                      APP care.**

8            As of November 4, 2011, DMH had transferred three inmate-patients from the APP at

9    California Medical Facility to ASH.  (DeMorales Decl. ¶ 8.)  Though DMH changed these

10   inmate-patients' level of care to ICF upon transfer to ASH, their movement opened up additional

11   APP beds at CMF.  (*Id.*)

12       **2.    Conversion of the L-Wing at California Medical Facility From Enhanced
13               Outpatient Level of Care to Intermediate Care Facility Level of Care.**

14          Defendants' supplemental plan includes converting 113 EOP-GP beds in the L-Wing at

15   CMF to 110 temporary unlicensed ICF beds and three observation and restraint rooms for high-

16   custody inmates on the SVPP waitlist.  (Docket No. 4103 at 10–11.)  Defendants expect inmate-

17   patient admissions to begin in late April 2012.  (*Id.*)

18          Defendants informed the Court in their supplemental plan that converting the L-Wing will

19   require the Court to waive the State's licensing requirements regarding the licensing of

20   Correctional Treatment Centers—California Health and Safety Code section 1250(j) and

21   California Code of Regulations, Title 22, sections 79501–79861.  (Docket No. 4103 at 11.)

22   Concurrently with this filing, Defendants filed a request for waiver of state licensing

23   requirements.

24          Defendants further informed the Court in their supplemental plan that they may need to

25   seek waivers from the Court concerning accessibility requirements associated with the L-Wing

26   conversion.  (Docket No. 4103 at 11.)  Under federal regulations regarding building

27   modifications, 10% of the beds in the L-Wing conversion would need to be wheelchair

28   accessible.  28 C.F.R. 35.151(h), (k).  In order to meet the timelines for converting the L-Wing,

6

1    Defendants are not able to make any of the beds in the L-Wing wheelchair accessible. (Burleson

2    Decl. ¶ 4.) Therefore, before CDCR can begin converting the beds in the L-Wing, Defendants

3    believe that this Court and the Court in *Armstrong v. Brown* (U.S. District Court, N.D. Cal., Case

4    No. C 94-2307 CW), would need to waive this federal regulation. Defendants and Plaintiffs'

5    counsel in *Armstrong* and *Coleman* recognize the urgency of this temporary, unlicensed project,

6    and are considering options for obtaining this waiver.[2]

7        Because of the urgency of this project and because Defendants do not know whether the

8    federal courts will waive the federal regulation regarding building modifications, Defendants are

9    also evaluating changing the number of beds that they would convert in connection with the L-

10   Wing conversion from 110 ICF beds to 96 ICF beds. Under federal regulations, accessible

11   substitute cells can be provided at another prison site within the corrections system. 28 C.F.R.

12   35.151(k)(2)(iv).

13       Activating 110 ICF beds as part of the L-Wing conversion and completing the new 64-bed

14   ICF unit at CMF will bring the total number of temporary and permanent ICF beds for high-

15   custody inmate-patients in CDCR's prisons to 574 beds: 370 at SVPP and 204 at CMF. (Docket

16   No. 3962–1 at 23.) The 10% accessibility requirement would mandate that 58 out of the total of

17   574 ICF beds in CDCR be accessible. 28 C.F.R. 35.151(h), (k). But, after activating all 110 ICF

18   beds in the L-Wing conversion, CDCR will have 56 accessible beds system wide—eight beds in

19   the new 64-bed ICF unit at CMF and 48 beds in the SVPP. (Burleson Decl. ¶ 4.) With 56

20   wheelchair accessible beds available system wide, CDCR would be two beds short of meeting the

21   10% requirement. Reducing the number of beds that CDCR would convert in connection with

22   the L-Wing conversion from 110 ICF beds to 96 ICF beds would allow CDCR to meet the 10%

23   accessibility requirement, without waiver of federal regulations.

24   / / /

25   _____

26       [2] Under state regulations regarding building modifications, 10% of the beds in the L-
     Wing conversion would need to be wheelchair accessible, and have modifications made to the
27   primary path of travel. *See* Cal. Code Regs. tit. 24 part 2, §§ 1109B, 1134B. Maintaining 110
     ICF beds as part of the L-Wing conversion would therefore require waiving these state
28   regulations as well.

Defs.' Third Status Rep. on Supp. Wait List Plan and Assessment Process (2:90-cv-00520 LKK JFM P)

1    **B.    Status of the Assessment Process Review.**

2        Representatives from CDCR continued to meet over the past thirty days with the special

3    master and his team to review CDCR's two primary processes to manage and sustain referrals:

4    (1) a process done at the institutional level to audit the Interdisciplinary Treatment Team -

5    Screening for Higher Level of Care Form 7388-B; and (2) an assessment process done at the

6    headquarters level to review documentation and justification for not referring inmate-patients who

7    meet one of three objective criteria.  (Burleson Decl. ¶ 5.)

8        Specifically, the special master's team completed their October 2011 joint visits to five

9    prisons—Richard J. Donovan Correctional Facility; Mule Creek State Prison; Central California

10   Women's Facility; California Men's Colony; and California State Prison, Los Angeles County.

11   (Burleson Decl. ¶ 6.)  Plaintiffs' counsel participated in the visits to California State Prison, Los

12   Angeles County, and to California Men's Colony.  (*Id.*)

13       Additionally, representatives from CDCR worked with the special master and his team to

14   outline the scope and extent of nine additional reviews and site visits.  (Burleson Decl. ¶ 7.)

15   These nine site visits are scheduled over the next thirty days, as follows:  California State Prison,

16   Sacramento (November 7 and 8); California Medical Facility (November 9 and 10); California

17   State Prison, Corcoran (November 15 and 16), California Substance Abuse Treatment Facility

18   (November 17 and 18); California Institution for Men (November 21 and 22); California

19   Correctional Institution (November 28 and 29); Deuel Vocational Institution (November 30 and

20   December 1); San Quentin State Prison ( December 5 and 6); and Salinas Valley State Prison

21   (December 7 and 8).  (*Id.*)

22

23

24

25

26

27

28

1    Last, representatives from CDCR met with the special master's team and Plaintiffs' counsel

2    on November 4, 2011, to further review and discuss CDCR's audit and assessment processes as

3    well as the nine additional reviews and site visits.  (Burleson Decl. ¶ 8.)  Plaintiffs' counsel will

4    participate in the site visits to California Institution for Men, San Quentin State Prison, and

5    Salinas Valley State Prison.  (*Id.*)

6    Dated:  November 9, 2011                    Respectfully submitted,

7                                               KAMALA D. HARRIS
                                                Attorney General of California
8                                               JAY C. RUSSELL
                                                Supervising Deputy Attorney General
9
                                                */s/ Debbie J. Vorous*
10
                                                DEBBIE J. VOROUS
11                                              Deputy Attorney General
                                                *Attorneys for Defendants*
12    CF1997CS0003
      31380854.doc
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defs.' Third Status Rep. on Supp. Wait List Plan and Assessment Process (2:90-cv-00520 LKK JFM P)