IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA


**RALPH COLEMAN, et al.**
    **Plaintiffs,**

    vs.                                     No. 2:90-cv-0520-LKK-JFM (PC)

**EDMUND G. BROWN, JR., et al.**

SPECIAL MASTER'S REPORT ON THE ADEQUACY OF DEFENDANTS'
PLAN TO FURNISH SUICIDE-RESISTANT BEDS IN ALL MENTAL HEALTH
CRISIS BED UNITS

## Introduction

The Special Master submits this report in response to this Court's order of July 21, 2011 (Docket No. 4044, para. 3), which requires him to report on the adequacy of defendants' plan to furnish suicide-resistant beds in all mental health crisis bed units (MHCBs) within CDCR prisons. Defendants filed their initial version of their plan on September 19, 2011. Docket No. 4089. It was then discussed among the parties by teleconference on September 28, 2011. Because of the significant budgetary contingencies in the plan at that time, it was decided that discussions would continue after defendants had an opportunity to explore other options for funding their plan.

The Special Master reconvened the parties at an in-person meeting on October 12, 2011, and then conducted follow-up teleconferences on October 20 and October 25, 2011. During the October 20 teleconference, defendants reported that they had located an alternative funding source and would be able to expedite construction and installation of the suicide-resistant beds. The Special Master then asked defendants to submit a revised plan to reflect their updated implementation schedule, and also to look into ways

1

to address concerns with slippage and tear-resistance of mattresses and ways to reduce noise which may result from a patient pounding on the type of suicide-resistant bed that defendants were proposing. Because defendants appeared to be making genuine progress toward a workable plan, the Special Master requested and was granted a one-month extension of time to November 18, 2011 to submit his report on defendants' plan. Docket No. 4105. On November 16, 2011, defendants filed their Amended Plan to Furnish Suicide-Resistant Beds in All Mental Health Crisis Bed Units. Docket No. 4119.

## Background

The history of defendants' plan for suicide-resistant beds began over two years ago, with the filing of the Special Master's Expert's Report on Suicides Completed in the California Department of Corrections and Rehabilitation in Calendar Year 2007 ("2007 Suicide Report"). Docket No. 3677, filed September 17, 2009. In that report, the Special Masters' expert, Raymond Patterson, M.D., made a number of recommendations for improvements in suicide prevention and response within CDCR institutions. While plaintiffs requested that Dr. Patterson's recommendations be adopted as orders of the court, defendants submitted a number of objections to the report. By its order entered November 23, 2009 (Docket No. 3731), the *Coleman* Court stated that any requests for such orders may be received only from the Special Master.

On December 24, 2009, the Special Master submitted his request for the entry of orders based on the same recommendations made by Dr. Patterson in his 2007 Suicide Report. Defendants then renewed their objections to the report, and raised others as well. Noting the persistence of the problem of inmate suicides in CDCR prisons, the *Coleman* court ordered the defendants, under the guidance of the Special Master, to review all suicide prevention policies

and practices, all suicide review and reporting processes, and the implementation of such policies, practices and processes over the ensuing 120 days.  Docket No. 3836, filed April 14, 2010.  The Special Master then selected among members of his staff to meet with representatives of CDCR and its Division of Adult Institutions, and with representatives of the Department of Mental Health (DMH), to assist them with examining their existing suicide prevention and review protocols, and determining whether revisions were in order to better address the problem of inmate suicides, to consider potential outcomes of any changes, and to project timeframes for implementation of any recommended changes.[1]  The process involved seven meetings and culminated in defendants' preparation and submission of a timely report on August 12, 2010, and an updated report on August 25, 2010.

The defendants' report was shared with plaintiffs' counsel, who then provided the Special Master with a letter on September 8, 2010 summarizing their position on defendants' report and suggesting additional suicide-prevention measures to be adopted.  One of those recommendations was that MHCB units be furnished with suicide-resistant beds.  There had been informal reports that in the absence of suicide-resistant beds in some MHCB units, suicidal patients are not provided with any beds at all and were lying on the floors of the units.  The Special Master's experts advised him that failure to provide suicide-resistant beds, and the practice of requiring suicidal MHCB patients to sleep on the floor, created a needlessly harsh environment that countered therapeutic purposes and that, along with other punitive-type practices, may even discourage an inmate from reporting thoughts of self-harm.  The experts advised that the default practice in an MHCB unit should be to provide a suicide-resistant bed unless clinically contraindicated.

---

[1] A representative of the receiver in *Plata v. Schwarzenegger*, No. C 01-1351 TEH (N.D. Cal.) also attended and assisted at these meetings.

In the Special Master's Report on Defendants' Review of Suicide Prevention Policies, Practices, and Procedures, the Special Master recommended among other things that defendants be required to submit a plan within 60 days for procuring and providing suicide-resistant beds to suicidal inmates within MHCB units in CDCR institutions.  Docket No. 3918, p. 38, filed September 27, 2010.

On November 4, 2010, defendants filed their sole objection to the Special Master's recommendations, opposing the recommendation for furnishing suicide-resistant beds in MHCBs.  Docket No. 3950.  On November 17, 2010, the court adopted the other four of the Special Master's recommendations.  The court also ruled that the recommendation regarding a plan for suicide-resistant beds would be deemed submitted at the conclusion of the time for plaintiff's reply to the defendants' objection to that recommendation, and that the recommendation would be addressed by subsequent order.  Docket No. 3954.  On November 18, 2011, plaintiffs filed their reply in support of the Special Master's recommendation concerning suicide-resistant beds.  Docket No. 3955.  By order filed July 2, 2011 (Docket No. 4044), the Court ordered that the Special Master's recommendation concerning a plan for suicide-resistant beds in MHCBs be adopted in full, that defendants shall file within 60 days their plan to furnish such beds, and that the Special Master shall report to the court on the adequacy of the plan no later than October 19, 2011.  Docket No. 4044, para.1-3.

## **Defendants' Initial Plan for Suicide-Resistant Beds**

Defendants timely filed their initial plan on September 19, 2011.  Docket No. 4089.  That plan called for procurement and installation of a total of 196 suicide-resistant beds and 16 restraint beds in MHCBs throughout 16 CDCR institutions.  It also proposed a timetable for initiation and completion of the outfitting of these units over the next two year, by September 13,

4

2013.  The protracted installation period was due to the contingency of State legislative approval of funding the beds, plus additional time to procure and install them.  Docket No. 4089, p. 3-4.  In the course of the in-person meeting and teleconferences with defendants, the Special Master and plaintiffs urged defendants to explore alternative funding sources which would enable expedited purchase and installation of the beds.  Defendants successfully obtained an alternate funding source, opening the way for a more expeditious roll-out of their plan.

One of the Special Master's experts also examined an exemplar suicide-resistant bed, referred to as the Prison Industries Authority (PIA) Metal Skirt Bed, which is the same type that is intended for use in the California Health Care Facility.  The expert stated during the found October 12 meeting and the October 20 teleconference that he approved of this type of bed, as long as the bed model used is the 12-inch high model, the mattress that is used is appropriately suicide-resistant and does not slip or slide, and the interior of the bed is treated with foam or appropriate sound-muffling material in order to deaden any sound that might be caused if a patient pounds on the bed.  Defendants committed to satisfying these conditions.  The special master's expert also approved the type of restraint bed which defendants proposed, the Duramax Humane Restraint bed.

Defendants reported during the October 20 teleconference that they had located an alternative funding source, as noted above, which would permit them to proceed more rapidly with obtaining and furnishing the beds.  As noted above, the Special Master sought and was granted a 30-day extension of time to November 18, 2011 in which to file his report on defendants' plan, given the apparent likelihood of an imminent agreement among the parties and the Special Master on a workable, acceptable, and more timely plan for placing suicide-resistant beds in CDCR's MHCBs.

**Defendants' Amended Plan for Suicide-Resistant Beds in MHCBs**

On November 16, 2011, defendants filed their Amended Plan to Furnish Suicide-Resistant Beds in All Mental Health Crisis Bed Units. Docket No. 4119. The updated plan is comprised of three elements: (1) identification of the MHCB units that are part of the plan; (2) a discussion of the types of beds that CDCR intends to install; and (3) the timetable for purchase and installation of the beds in the units that are part of the plan.

The units in which CDCR plans to provide suicide-resistant beds are those identified in their Long-Range Mental Health Bed Plan (Docket No. 3845-2, p. 15) which do not already have such beds in them. There are 16 such units for men. In addition, defendants also plan to place these beds in the unlicensed MHCB units at California State Prison, Sacramento (CSP/Sacramento), and the California Institution for Men (CIM). Defendants also plan to install a restraint bed in the observation room in each of the 16 units. The number of suicide-resistant beds for men will be 228, which is 54 more than were initially planned. The total number of suicide-resistant beds for women will be 12 in the Central California Women's Facility MHCB and 10 in the California Institution for Women MHCB. This is same number as was originally planned. As for the men, there will be a restraint bed in each MHCB for the women. Accordingly, the total number of suicide-resistant beds to be furnished is 250, and the total number of restraint beds will remain at 18.

Defendants plan to purchase all 250 suicide-resistant beds from PIA. They will be the same type of bed which the special master's expert examined and approved, with the conditions recited above. For the restraint beds, defendants again propose the

Duramax Humane Restraint bed, which the special master's expert has deemed appropriate.

Installation of these beds will occur in stages in order to reduce disruption to treatment and minimize the impact on bed availability due to "red-lining" of the cells for the retrofit. CDCR reports that it expects the purchase order for the suicide-resistant beds to be processed by January 2012, and that it will take PIA another approximately 45 days from receipt of the purchase order to procure the raw materials to build the beds. After that 45-day period, PIA intends to produce ten suicide-resistant beds per week until the order is filled. CDCR plans to facilitate shipment of the beds from PIA on an ongoing basis, and to install them upon receipt at their destinations. Based on this schedule, defendants expect to complete installation of the suicide-resistant beds by summer 2012.[2]

## Conclusion

Defendants are to be commended for increasing the number of suicide-resistant beds by 54, for a total of 250, and extending them to the unlicensed units at CIM and CSP/Sacramento. Their amended plan represents another step forward in the strategy to address the various identified issues in suicide prevention and response in CDCR prisons, and more importantly, to help save the lives of those in the defendants' custody. The Special Master approves Defendants' Amended Plan to Furnish Suicide-Resistant Beds in All Mental Health Crisis Bed Units, and recommends its implementation as quickly as possible.

---

[2] Although defendants indicated during the October 20 teleconference that bed installation could be completed by the end of June 2012, the completion date of summer 2012 that appears in their Amended Plan is sufficiently close in time to June so that it is more of a technical than substantive change to their plan. Moreover, because the beds will be installed on a rolling basis, they should begin to appear in MHCBs in early 2012, and continually increase thereafter until all are in place before the fall of 2012.

                                                              Respectfully submitted,

                                                                         */s/*

                                              _____
                                              Matthew A. Lopes, Jr., Esq.
                                              Special Master

November 17, 2011