KAMALA D. HARRIS
Attorney General of California
JONATHAN L. WOLFF
Senior Assistant Attorney General
JAY C. RUSSELL
Supervising Deputy Attorney General
DEBBIE J. VOROUS, State Bar No. 166884
DAVID E. BRICE, State Bar No. 269443
Deputy Attorneys General
  1300 I Street, Suite 125
  P.O. Box 944255
  Sacramento, CA 94244-2550
  Telephone: (916) 324-8010
  Fax: (916) 324-5205
  E-mail: David.Brice@doj.ca.gov

*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **RALPH COLEMAN, et al.,** | 2:90-cv-00520 LKK JFM P |
| Plaintiffs, | **DEFENDANTS' REPORT ON ASSESSMENT PROCESS AND PLAN RE: SUSTAINABLE SELF MONITORING** |
| v. | |
| **EDMUND G. BROWN, JR., et al.,** | |
| Defendants. | |

1

1

**ACRONYM LIST**

2

| Acronym | Term |
|---|---|
| ASU | Administrative Segregation Unit |
| CCI | California Correctional Institution |
| CCWF | Central California Women's Facility |
| CDCR | California Department of Corrections and Rehabilitation |
| CIM | California Institution for Men |
| CIW | California Institution for Women |
| CMC | California Men's Colony |
| CMF | California Medical Facility |
| COR | California State Prison, Corcoran |
| DMH | Department of Mental Health |
| DVI | Deuel Vocational Institution |
| EECP | Extended EOP Care Plan |
| EOP | Enhanced Outpatient Program |
| EOP-GP | Enhanced Outpatient Program General Population |
| eUHR | Electronic Unit Health Record |
| HC-POP | Health Care Placement Oversight Program |
| HQ | Headquarters |
| IDTT | Interdisciplinary Treatment Team |
| LAC | California State Prison, Los Angeles County |
| MCSP | Mule Creek State Prison |
| MHCB | Mental Health Crisis Bed |
| MOHU | Mental Health Outpatient Housing Unit |
| MHTS.net | Mental Health Tracking System |
| OHU | Outpatient Housing Unit |
| PBSP | Pelican Bay State Prison |
| RJD | Richard J. Donovan Correctional Facility |
| RVR | Rules Violation Report |
| SAC | California State Prison, Sacramento |
| SATF | Substance Abuse Treatment Facility |
| SM | Special Master |
| SQ | San Quentin State Prison |
| SVSP | Salinas Valley State Prison |
| UHR | Unit Health Record |
| WSP | Wasco State Prison |

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    On August 15, 2011, the Court ordered that Defendants, over the next ninety days, work

2  with the *Coleman* special master "so that an assessment process that meets his approval has been

3  conducted and completed by December 9, 2011." (Docket No. 4069 ¶ 4.)  Moreover, the Court

4  ordered that Defendants "shall report to the Court on the results of the assessment process,

5  including referrals and transfers, not later than December 14, 2011." (*Id.*)  Defendants now report

6  on the results of this process, including referrals and transfers.  (*See* Attachment A, and Exhibits 2

7  to 7.)  Though not required, Defendants, in the spirit of full disclosure, attach as Exhibit 1 to the

8  report on the results of the assessment process, California Department of Corrections and

9  Rehabilitation's sustainable self-monitoring process for ensuring that inmate-patients in need of

10  inpatient mental health care are timely identified, referred, and transferred to such care.

11  Dated:  December 13, 2011                        Respectfully submitted,

12                                                   KAMALA D. HARRIS
                                                     Attorney General of California
13                                                   JAY C. RUSSELL
                                                     Supervising Deputy Attorney General
14
                                                     */s/ Debbie J. Vorous*
15
                                                     DEBBIE J. VOROUS
16                                                   Deputy Attorney General
                                                     *Attorneys for Defendants*
17  CF1997CS0003
    10790241.doc
18

19

20

21

22

23

24

25

26

27

28

# ATTACHMENT A

STATE OF CALIFORNIA —DEPARTMENT OF CORRECTIONS AND REHABILITATION                    EDMUND G. BROWN JR., GOVERNOR

**OFFICE OF LEGAL AFFAIRS**
Benjamin T. Rice
Assistant Secretary
P.O. Box 942883
Sacramento, CA 94283-0001



December 12, 2011


Ms. Debbie Vorous
Deputy Attorney General
Department of Justice
1300 I Street
Sacramento, CA 94244-2550

Dear Ms. Vorous:

Please see enclosed, California Department of Corrections and Rehabilitation's Report on the results of the Assessment Process, Referrals, and Transfers.


Sincerely,

BENJAMIN T. RICE
General Counsel, Office of Legal Affairs
California Department of Corrections and Rehabilitation

Enclosures

**DIVISION OF CORRECTIONAL HEALTH CARE SERVICES
CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION
REPORT ON RESULTS OF ASSESSMENT PROCESS, REFERRALS, AND
TRANSFERS**

## I.     INTRODUCTION

On August 15, 2011, the Court ordered that "Defendants shall work with the special master so that an assessment process that meets his approval has been conducted and completed by December 9, 2011." The Court further ordered that Defendants "report to the court on the results of the assessment process, including referrals and transfers, not later than December 14, 2011."

Defendants complied with the Court's order—the California Department of Corrections and Rehabilitation (CDCR) in conjunction with the *Coleman* Special Master and his team conducted and completed an assessment process by December 9, 2011. CDCR, after meeting with Plaintiffs' counsel and the Special Master and his team on December 9, 2011, to discuss and review CDCR's report on the assessment process, now present the agreed upon results of the process, including referrals and transfers (the "referral review process for Department of Mental Health (DMH) inpatient care").

Before reporting in detail on the referral review process for DMH inpatient care, however, CDCR summarizes the processes previously developed to ensure that all inmate-patients in need of inpatient mental health care in a DMH operated program are timely identified, referred, and transferred to such care. CDCR also describes in more depth the two primary processes that CDCR had implemented to self-monitor referrals: (1) a process done at the institutional level to audit documentation and justification for not referring inmate-patients who meet one of three subjective indicators on the Interdisciplinary Treatment Team – Screening for Higher Level of Care form 7388-B, along with CDCR headquarters' review of this process; and (2) an assessment process done at the headquarters level to review documentation and justification for not referring inmate-patients who meet one of three objective criteria on the form 7388-B. CDCR was able to initiate the second process by using data capabilities now available through the Mental Health Tracking System (MHTS.net). A discussion on these two processes is important to demonstrate the evolution and refinement that CDCR and the Special Master team used to conduct and complete the referral review process for DMH inpatient care from September to December 2011. This progression ultimately leads to the results to be reported here and to a more fully developed robust and sustainable self monitoring process for referrals to DMH.

The referral review process for DMH inpatient care, which took place over a relatively brief period of time, demonstrates a high level of cooperation between CDCR and the Special Master and his team, as well as input and consultation from Plaintiffs' counsel. The process, which involved two separate yet related assessments—one referred to as the first five site visits and one referred to as the next nine site visits--covered fourteen institutions, built upon several processes already in place, and involved a combined review of over 900 inmate-patient cases.

1

**The Results in Brief[1]:**

From the extensive review of over 900 inmate-patient cases, CDCR referred eighteen of those cases to DMH inpatient care. Of the eighteen cases referred to DMH inpatient care, five inmate-patients have transferred to DMH, with thirteen pending transfer. And all but five of the eighteen cases have met the required referral timelines. Additionally, there are ten inmate-patients that the Special Master team recommended be considered for DMH referral at their next Interdisciplinary Treatment Team (IDTT) appointment.

Based solely on this current review, it appears that inmate-patients in need of DMH inpatient care are being identified and referred for care. Moreover, CDCR is continuing to take Quality Management steps to improve the process and to insure the progress described herein continues.

Defendants, in the spirit of full disclosure, attach as Exhibit 1 to this report their sustainable self-monitoring process for ensuring that inmate-patients in need of inpatient mental health care are timely identified, referred, and transferred to such care. As with all the elements of the referral review process for DMH inpatient care, the sustainable self monitoring process was developed under the direction of the Special Master, with input from Plaintiffs' counsel.

## II.    BACKGROUND

### A.    General Measures.

In Defendants' July 11, 2011 filing with the Court, Defendants set forth in detail the processes that CDCR and the California Department of Mental Health (DMH) developed and implemented to ensure that all inmate-patients in need of inpatient mental health care are timely identified, referred, and transferred to such care. As further detailed in that filing, CDCR developed, implemented, and updated a screening tool for referral to higher levels of care, along with accompanying audit tools for DMH referrals and non-referrals, spreadsheets for tracking and monitoring all referrals to DMH inpatient care, rescissions, paroles, and transfers, and the timelines associated with those activities.

CDCR also increased training and communications with DMH Coordinators at the institutions, began review of referrals by a headquarters clinical psychologist, and developed and began deployment reporting capabilities associated with the screening tool for referrals through MHTS.net. Additionally, as part of their ongoing Utilization Management process, CDCR and DMH created and revised DMH referral and discharge forms, improved communication including activation of the SharePoint system to allow CDCR and DMH to electronically share inmate-patient information, and re-established a process to jointly review lengths of stay in DMH operated inpatient Acute (APP) and Intermediate Care Facility (ICF) programs.

### B.    Institutional and Headquarter Measures to Self Monitor the CDCR 7388-B Form.

Defendants also described in their July 11, 2011 filing two primary processes to self-monitor the form 7388-B. Because CDCR and the Special Master team utilized most, if not all, aspects of these two processes in designing the referral review process for DMH inpatient care, they are described in detail here as the backdrop for understanding the current referral review process.

---

[1] The cutoff date for data included in this report is December 7, 2011, except as to Salinas Valley State Prison, which is December 9, 2011.

### 1.     Institutional Audits of DMH Referrals and Non-Referrals.

CDCR developed and implemented a process at the institutional level to audit the Interdisciplinary Treatment Team – Screening for Higher Level of Care Form 7388-B (04/11). (Ex. 2.) This process involves four steps: (1) completing the form 7388-B; (2) completing the DMH referral and non-referral logs; (3) auditing the logs; and (4) headquarters review of the results.

The first step in this process is to complete the form 7388-B.   During the IDTT review of care, the IDTT completes the 7388-B and uses it to guide their discussion regarding whether the inmate-patient should be referred to a higher level of care, e.g., DMH APP or ICF level of care. The current 7388-B contains three subjective and four objective indicators that the IDTT must review in considering whether to refer an inmate-patient to a higher level of care.   These indicators, identified by the number on the CDCR form 7388-B itself, are as follows:

> 1.     As a result of a major mental disorder, the inmate-patient is unable to adequately function within the structure of the current level of care.

> 2.     The inmate-patient requires highly structured inpatient psychiatric care with 24-hour nursing supervision due to a major mental disorder; serious to major impairment of functioning in most life areas; stabilization or elimination of ritualistic or repetitive self-injurious/suicidal behavior; or stabilization of refractory psychiatric symptoms.

> 3.     The inmate-patient demonstrates chronic psychiatric symptoms (disturbed emotion, perceptions, thought processes, and/or impaired cognitions) that have not responded sufficiently to at least 6 months of treatment to a degree that facilitates adequate levels of functioning.

> 4.     The inmate-patient has been in a [Mental Health Crisis Bed (MHCB)] for 10 or more days for mental health clinical issues.

> 5.     The inmate-patient has had 3 or more admissions to a MHCB or placement in an [Outpatient Housing Unit (OHU)/Mental Health Outpatient Housing Unit (MOHU)] during the last 6 months. . .

> 6.     The inmate-patient has had less than 50% overall cooperation/participation with programming during the last 3 months due to mental health issues that are substantially affecting the inmate-patient's ability to actively participate in programming….

> 9.     The inmate-patient has incurred 3 or more Rules Violation Reports (RVR) during the last 3 months.  (Ex. 2)[2]

If the inmate-patient meets one of the subjective or objective indicators and the IDTT elects not to refer him or her to a higher level of care, then the IDTT must document on the form 7388-B the reasons for non-referral and what interventions are planned to address the indicator.

---

[2]  CDCR is revising the CDCR form 7388-B. CDCR is removing indicators 7 and 8 from the form 7388-B. Indicator 7 asks whether the inmate-patient meets the screening criteria for Extended EOP Care Plan services and indicator 8 asks whether the inmate-patient has been in EOP level of care for 365 days or more.  (Ex. 2.) CDCR is also revising the form to more closely track reports available through MHTS.net.

The second step in the institutional review process is to complete the DMH referral and non-referrals logs. (Ex. 3) The logs are generated from the IDTT's review of the CDCR form 7388-B. Specifically, each time an inmate-patient is referred to DMH, that inmate-patient is noted on the DMH referral log while, conversely, each time an inmate-patient meets a screening indicator but is not referred to DMH, that inmate is noted on the DMH non-referral log. The referral and non-referral logs are completed by the DMH Coordinator on a monthly basis. Additionally, institutions forward their DMH non-referral logs to CDCR headquarters on a monthly basis.

Next, using the completed 7388-B and the DMH referral and non-referral logs, institutions complete monthly audits. (Ex. 4, Audit: Mental Health Internal Review for Higher Level of Care – Draft 5-31-11.) The institutions are to list 100% of the inmate-patients referred to DMH APP/ICF to track timelines and to explain those that are not met. Additionally, the institutions are to audit up to a maximum of 25 non-referrals, randomly selected from the DMH non-referral log. Section I of the audit tool, which refers to the DMH referral log, asks for the number of referrals made to DMH during the review period and whether the referrals met specified time frames. Section II of the audit tool, using the DMH non-referral log and the completed 7388-B, asks four questions concerning the positive subjective and objective indicators in the current 7388-B:

      1.     Whether the documentation supports non-referral to a higher level of care.

      2.     If additional interventions were documented in the treatment plan or an explanation provided to improve inmate-patient function.

      3.     As to indicator 6, if interventions were documented to increase inmate-patient program participation to 50% or more.

      4.     As to indicator 9, if the documentation explained the rationale for not referring the inmate-patient to a higher level of care for 3 or more RVRs.

(Ex. 4.)[3]

Thus, this audit process done at the institutional level provides CDCR an opportunity to self-monitor not just referrals, but also the documentation and justification for not referring inmate-patients when the indicators on the CDCR form 7388-B are positive.

Institutions report the results of the audits monthly at the Mental Health Quality Management Committee Subcommittee. Institutions then send the portion of the minutes reporting the audit to CDCR headquarters. As a means to monitor this audit process itself, CDCR directed each institution, during the month of June 2011, to send to Headquarters a sample of approximately five audit results and supporting 7388-Bs for review. A CDCR psychologist and nurse consultant reviewed the audits and 7388-Bs and confirmed the results. Identified discrepancies were documented and sent to the DMH Coordinator at the institution for review and training, as necessary.

      **2.     Review by Headquarters of Objective Indicators Utilizing MHTS.net.**

The second primary process that CDCR took to self-monitor the CDCR form 7388-B and referral processes was to initiate a review of the documentation and justification for not referring inmate-

---

[3] CDCR is also revising the audit tool to remove questions concerning indicators 7 and 8 in the form 7388-B.

patients who met one of the three objective indicators on the form. This review took place between June 15 and August 31, 2011. CDCR was able to initiate this process by using data capabilities now available through MHTS.net. The MHTS.net project was chartered by the Receiver to replicate the existing functionality of MHTS on one statewide platform in Spring 2008. In October 2008, programming of MHTS.net began. MHTS.net deployed to the first institution (Deuel Vocational Institution) in February 2010. MHTS.net deployed to all institutions (California Medical Facility (CMF) and Pelican Bay State Prison (PBSP) chose to use it as read only) in October 2010. In February 2011, the first three on-demand management reports deployed to the field. CMF began using MHTS.net on a read/write basis in May 2011; PBSP is still using it as read only. The DMH indicators and High [programming] Refusers management reports deployed to the field, for a total of 15 on-demand reports, in August 2011.

For 14 institutions, CDCR generated a list from MHTS.net of those inmate-patients who met one or more of the three objective indicators (indicator 5, 6, or 9) from the form 7388-B but who were not referred to DMH, using the following data parameters: (1) Enhanced Outpatient Program (EOP) inmate-patients who have had three or more admissions to a MHCB or placement in an OHU during the last six months; (2) EOP inmate-patients with an average of less than five hours of weekly programming for the last three months; and (3) EOP inmate-patients with three or more closed CDCR 115 MH-Rules Violation Report: Mental Health Assessments during the last three months.[4] This list totaled 1,998 inmate-patients who met one of the three clinical indicators for referral to a higher level of care. CDCR then sent each institution's portion of the list to the 14 institutions and directed each to randomly review up to 150 of their inmate-patient names identified on the list.

This directive resulted in a net review of 1408 names. For those inmate-patients not already referred for ICF or APP care and/or still in the institution, CDCR directed the institutions to review from the inmate-patient's Unit Health Record (UHR) the inmate-patient's last CDCR screening form (7388-B) to insure that: (1) the clinical indicator or indicators were checked; and (2) the justification for non-referral was documented if any indicators were positive. A review of the names received back from the institutions resulted in three lists. First, a list of inmate-patients for whom the institutions reported that the clinical indicator or indicators were checked and justification was documented. This list is comprised of 191 (originally cited as 201 but refined due to further analysis) inmate-patient records that the institutions determined were completed appropriately with good justification. For this first group, CDCR directed the institutions to send the 7388-Bs to headquarters so that it could verify the institution's findings.

Second, a list of 625 (originally cited as 628 but refined due to further analysis) inmate-patients for whom the institutions reported the clinical indicator or indicators were not checked on the

---

[4] The 14 institutions that CDCR selected were the institutions that the Special Master had indicated would be part of a repeat of the 2009 Mental Health Assessment Referral Process (2009 MHARP): Central California Women's Facility (CCWF); California Institution for Men (CIM); California Men's Colony (CMC); California Medical Facility (CMF); California State Prison, Corcoran (COR); California State Prison, Los Angeles County (LAC); Mule Creek State Prison (MCSP); Richard J. Donovan Correctional Facility (RJD); California State Prison, Sacramento (SAC); Salinas Valley State Prison (SVSP), Wasco State Prison (WSP); California Correctional Institution (CCI); San Quentin State Prison (SQ); and California Institution for Women (CIW). All but two of the institutions—WSP and CIW—were part of the referral review process for DMH inpatient care. The referral review process substituted the Substance Abuse and Treatment Facility (SATF) and Deuel Vocational Institution (DVI) for WSP and CIW.

7388-B and/or justification was not documented appropriately. For this group, CDCR directed the institutions to review the inmate-patient's UHR and determine whether the inmate-patient's clinical treatment team should undertake a further evaluation for potential referral to a higher level of care. Of the 625 inmate-patient records, headquarters initially determined that it had received information back from the institutions for 462 of the inmate-patients, leaving 163 for which it had no information. A follow up review of the 163 inmate-patients revealed that 60 did not have a checked indicator, or were already referred in 2011 or had transferred to another institution, which left 103 files. With respect to the 103 files, headquarters returned them to the institutions for information. The institutions corrected the 103 files and returned them to headquarters for review. Of the 462 inmate-patient files for which headquarters had received information, headquarters returned 92 to the institutions for correction. The remaining 370 inmate-patient cases were corrected as part of the original two phases of this process and, based on corrective action taken in the IDTT or provided through an administrative note, were deemed "good."

The third list reported the rest of the inmate-patients who had transferred, paroled, or did not meet the clinical indicators after review. CDCR developed a schedule to continue the assessment process that would involve review of the inmate-patients on this list who had transferred. CDCR also intended to review the inmate-patients on the original list but who were not included in the 1408 names reviewed. This tentative schedule was set for September through November 2011 and would have constituted the review process ordered by the Court. But CDCR and the Special Master agreed to stop this continued review. Instead, CDCR and the Special Master determined that they would start a new review process—one they could develop and implement jointly and one that would allow them to build upon the CDCR processes already in place as well as some of those developed as part of the 2009 MHARP.

### III.    REPORT ON THE REFERRAL REVIEW PROCESS FOR DMH INPATIENT CARE

#### A.    Introduction.

Defendants first met with the Special Master and his team on August 24, 2011, to discuss how to proceed with the Court's mandate to conduct and complete an assessment process by December 9, 2011. During that first meeting, CDCR agreed to provide the Special Master additional information concerning the two primary processes that CDCR had already implemented. CDCR also described its plan to complete the process started on June 15, 2011, to review the documentation and justification for not referring inmate-patients using the reporting capabilities of MHTS.net. On August 24, 2011 and September 1, 2011, CDCR provided the additional information to Deputy Special Master Jones, which included, among other items, information on the June 2011 review of the institutions' audits, CDCR's review of mental health referrals between June 15 and August 15, 2011, and the results of CDCR's review of the 625 inmate-patients identified through the 7388-B review process, which are summarized above. Defendants next met with the Special Master and his team on September 7 and 8, 2011, to discuss CDCR's plan to conduct and complete the review process as well as to review the information and data provided on September 2, 2011.

However, rather than complete the process CDCR put in place between June 15 and August 31, a decision was made to stop that process and, instead, start a new process. The process ultimately

6

developed involved two separate, yet related, assessments—one referred to as the first five site visits and one referred to as the next nine site visits. Each assessment possessed separate strengths that are now merged into a single robust approach described in Exhibit 1. The first five site visits occurred during the month of October—RJD (October 3 and 4); MCSP (October 12 and 13); CCWF (October 17 and 18); CMC (October 19 and 20); and LAC (October 24 and 25). The next nine site visits occurred during the months of November and December—SAC (November 7 and 8); CMF (November 9 and 10); COR (November 15 and 16); SATF (November 17 and 18); CIM (November 21 and 22); CCI (November 28 and 29); DVI (November 30 and December 1); SQ (December 5 and 6) and SVSP (December 7 and 8). Plaintiffs' counsel participated in the site visits to CMC, LAC, CIM, SQ, and SVSP.

**B.    First Five Site Visits.**

Defendants and the Special Master team continued to meet throughout September 2011 to outline what the review would entail and to finalize the review process for the first five site visits. The focus of the review was to evaluate CDCR's self-monitoring process, specifically the institutions' referral and non-referral processes for considering an inmate-patient for referral to DMH inpatient care and to ensure that no inmate-patients were currently languishing due to an untimely referral to DMH, and to provide an opportunity for the Special Master team to interact with the treating clinicians and to meet with inmate-patients, if necessary. If the Special Master team identified an inmate-patient that they felt should be considered for DMH inpatient care, the Special Master team would recommend that the IDTT consider the inmate-patient for potential referral to DMH and the IDTT would consider that inmate-patient for potential referral to DMH at the next regularly scheduled IDTT.

The process agreed upon for the first five site visits involved five steps: (1) CDCR's preparation of inmate-patient lists for each of the five institutions; (2) generation of a spreadsheet containing the list for each of the five institutions; (3) the institution's review of the list; (4) headquarters' review of the lists; and (5) visits to the five sites.

**1.    CDCR Preparation of Lists for Each of the Five Institutions.**

For each institution, CDCR headquarters created a list of EOP inmate-patient names using September 5, 2011, as a cutoff date. The list included EOP inmate-patients meeting the subjective and objective indicators from the current form 7388-B. These lists served as the starting point for reviewing those EOP inmate-patients meeting positive indicators on the 7388-Bs, but not referred by the institution's IDTT to DMH inpatient care.

**a.    Objective Indicators.**

Using the same process discussed above—the review by headquarters of objective indicators utilizing MHTS.net—CDCR generated a list from MHTS.net of those inmate-patients who met one or more of the three objective indicators from the current form 7388-B, using the following data parameters: (1) indicator 5 - the inmate-patient had 3 or more admissions to a MHCB or placement in an OHU/MOHU between March 5, 2011 and September 5, 2011; (2) indicator 6 - the inmate-patient participated in less than 50% of programming (i.e., two and one half hours of programming while housed at Reception Centers and five hours or less at other institutions)

7

between June 5, 2011 and September 5, 2011; and (3) indicator 9 - the inmate-patient incurred 3 or more closed 115-MHs between June 5, 2011 and September 5, 2011. (*See* Ex. 2.) From this list, CDCR headquarters selected a statistically significant random sample of inmate-patients for inclusion in each institution's review.

The selection criteria used by CDCR headquarters to generate the sample was sufficient to allow for appropriate generalization[5]. The sample size that headquarters used for each institution was determined based on the number of inmate-patient names that resulted from the MHTS.net query for each institution. A random number generator was used to determine which inmate-patient cases were selected from the MHTS.net list.

### b.    Subjective Indicators.

In order to capture "subjective" indicators, CDCR headquarters selected all inmate-patients on the institution's non referral logs for the past six months who met indicator 1, 2 or 3 on form 7388-B (and were not already on the MHTS.net queried list) and appended them to the list. That is, the inmate-patient is unable to adequately function at their current level of care; requires highly structured inpatient psychiatric care with 24-hour nursing supervision due to a major mental disorder, serious to major impairment of functioning in most life areas, ritualistic or repetitive self-injurious/suicidal behavior, or refractory psychiatric symptoms; or demonstrates chronic psychiatric symptoms that have not responded sufficiently to at least six months of treatment to a degree that facilitates adequate levels of functioning. (Ex. 2.)

### c.    Additional Names Added to the Lists.

CDCR headquarters also reviewed the list provided by the Health Care Placement and Oversight Program (HC-POP) as of September 6, 2011, which indicates inmate-patients who have been in a MHCB for more than 10 days (indicator 4 on form 7388-B). The names of all EOP inmate-patients on the HC-POP list corresponding to the five selected institutions were appended to the selected sample for each institution. Additionally, all inmate-patients who met more than one objective indicator (*see* a. above) were added to the selected sample list, whether or not they were part of the random sample.

The total number of inmate-patients on each appended list and the sample size for each institution were as follows: (1) RJD - total list 81, sample size 50; (2) MCSP - total list 109, sample size 60; (3) CCWF - total list 10, sample size 9; (4) CMC - total list 155, sample size 84; and (5) LAC - total list 80, sample size 53.

### 2.    Institutions' Review of Lists.

Similar to the work that CDCR completed between June 15, 2011 and August 31, 2011, CDCR headquarters generated, for each of the five institutions, a spreadsheet containing the inmate-

---

[5] CDCR used a 95 percent confidence level and a margin of error of 10 to determine the sample size for each institution. The confidence level is the likelihood that the true population parameter lies within the range specified by the confidence interval. The margin of error is the amount of uncertainty associated with a sample estimate of a population parameter.

patient names and CDCR numbers. The spreadsheet also indicated which 7388-B indicator was positive in MHTS.net for each inmate-patient. CDCR headquarters provided the spreadsheets to the institutions on September 19, 20 and 21, 2011, and asked them to complete it. Completing the spreadsheet required the institutions' staff to indicate whether or not the most recent 7388-B for each case was consistent with MHTS.net data and whether or not the narrative rationale for non-referral to DMH was "good" or "unacceptable." Headquarters had previously provided operational definitions of "good" and "unacceptable" documentation to the institutions and to the Special Master's team. (Ex. 5.)[6] The institutions were also asked to submit a copy of all corresponding 7388-Bs that were not accessible on eUHR. Each institution reviewed the cases on the spreadsheet, completed the spreadsheet, and returned it to CDCR headquarters.

### 3.    Headquarters' Review of Institution's Data.

Once CDCR headquarters received back the data from each institution, clinical staff reviewed it and provided the results of their review to the respective institutions. Any follow-up on the cases in which documentation was deemed "unacceptable" was at the discretion of the institution's local management. CDCR asked the institutions to report to headquarters if any clinical outcomes changed, i.e., if any new DMH referrals were generated based on feedback from headquarters or from the overall process.

The outcome data related to this headquarters' review is as follows:

**Richard J. Donovan Correctional Facility**

Prior to submitting their documentation to headquarters, RJD revised a significant number of their 7388-Bs based upon their internal reviews. Once submitted, CDCR headquarters found that documentation on 46 of the 50 cases on the sample list was adequate, but that on four cases it was not. Clinical staff at RJD revised or amended the 7388-Bs for the four cases in which headquarters found that documentation was not adequate. No referrals were generated during this step of the process.

**Mule Creek State Prison**

CDCR headquarters found that documentation on 29 of the 60 cases on the sample list was adequate after review, but that on 31 cases it was not. Clinical staff at MCSP revised or amended 17 of the 7388-Bs for the cases that headquarters found that documentation was not

---

[6] "Good" means that the documentation adequately supports the decision to not refer the inmate-patient to DMH in spite of the fact that one of the indicators is met. This *must include* specific treatment interventions designed to remediate the indicator.

"Unacceptable" means that one or more of the three identified indicators was checked but the explanation for not referring to ICF or APP care is deficient in some way: the space is blank; it is too vague; or the explanation does not address the reason for not referring related to the behavior that led to that indicator not being checked.

"Unacceptable" may also include explanations of not referring, but there is no description of what treatment is being provided to the inmate-patient for the clinical issues that relate to the indicator.

adequate. Additionally, staff held IDTTs for 18 of the cases. Despite problems noted with documentation, no referrals were ultimately generated during this step of the process.

**Central California Women's Facility**

CDCR headquarters found that documentation on 7 of the 9 cases on the sample list was adequate, but that on 2 cases it was not. Clinical staff at CCWF revised or amended one of the 7388-Bs. No referrals were generated during this step of the process.

**California Men's Colony**

CDCR headquarters found that documentation on 64 of the 84 cases on the sample list was adequate, but that on 20 cases it was not. Clinical staff at CMC revised or amended the 7388-Bs for all 20 cases. Nonetheless, no referrals were generated during this step of the process.

**California State Prison, Los Angeles County**

CDCR headquarters found that documentation on 30 of the 53 cases on the LAC sample list was adequate, but that on 23 it was not. Clinical staff at LAC revised or amended the 7388-Bs and held IDTTs for all 23 cases. Regardless of this enhanced review, no new referrals were generated during this step of the process.

Table 1 below reflects the above referral data by institution:

**Table 1. Outcome Data from Headquarters' Paper Review**

| Referral Data by Institution | RJD | MCSP | CCWF | CMC | LAC |
|---|---|---|---|---|---|
| Total on list from MHTS.net plus add ons: | 81 | 109 | 10 | 155 | 80 |
| Sample Size on HQ list: | 50 | 60 | 9 | 84 | 53 |
| Number "Good" after HQ review: | 46 | 29 | 7 | 64 | 30 |
| 7388-Bs reviewed by inst. staff as a result of HQ review: | 4 | 31 | 2 | 20 | 23 |
| IDTT not held after inst. staff review: | 4 | 13 | 2 | 20 | 0 |
| IDTTs held after inst. staff review: | 0 | 18 | 0 | 0 | 23 |
| Referrals due to HQ review process: | 0 | 0 | 0 | 0 | 0 |

The five institutions included in this process also submitted to headquarters their July and August 2011 audits and supporting 7388-B forms. The audits were reviewed at headquarters by a headquarters psychologist who reviewed the stated non-referral rationale, compared his conclusions with that of the institution's DMH coordinator, and provided relevant feedback to the DMH coordinator if necessary.

4.      **Joint Review of Data by CDCR Headquarters and Special Master Team.**

On September 27, 28, and 29, 2011, the Special Master's team observed a CDCR headquarters' psychologist review a portion of the lists that had been returned from each institution. The corresponding 7388-B forms for inmate-patients on the list were reviewed and discussed to determine whether the documentation submitted by the institution was "good" or "unacceptable." The "good" and "unacceptable" documentation outcomes were tracked and added to the list. The Special Master's team also observed a headquarters' psychologist review of a portion of the July and August 7388-B audit results.

CDCR headquarters gave the Special Master's team both the spreadsheet that had been reviewed by headquarters and the five institutions, and the complete, pre-sampled list from MHTS.net of the inmate-patients who had met one or more objective indicators, those who met a subjective indicator from the DMH non-referral logs who were not already on the list, and those who had been in a MHCB for ten or more days. They also were given the 7388-B audits for July and August.

5.      **Site Visits.**

The site visits included the Special Master team, accompanied by two to three clinicians from headquarters, and a CDCR consultant. Plaintiffs and Defendants' counsel attended the site visits to CMC and LAC. From the spreadsheet and lists that CDCR provided the Special Master team and supplemented by inmate-patients that the Special Master team added from the visit itself, the team generated its own lists of inmate-patients to consider during the site visits to the five institutions. Additionally, the team reviewed the electronic Unit Health Records (eUHRs) for select inmate-patients on their lists, reviewed MHCB, MOHU and alternative housing tracking logs, custody and RVR logs, and also visited housing units and observed IDTTs.

The outcome data related to the Special Master's team's review is as follows:

**Richard J. Donovan Correctional Facility**

The Special Master's team reviewed 27 cases at RJD and recommended that the IDTT consider four for referral to DMH inpatient care. Of those four cases, one inmate-patient transferred to the EOP dual diagnosis program at SATF and one paroled. Clinical staff at RJD held an IDTT for a third inmate-patient, and referred that inmate-patient to ASH. That inmate was timely referred and transferred to ASH. Staff held an IDTT for the fourth inmate-patient, a Vitek hearing was completed, and the inmate-patient was referred to SVPP. The Vitek hearing exceeded Program Guide timelines by one day.

**Mule Creek State Prison**

The Special Master's team reviewed 43 cases at MCSP and recommended none for consideration of referral to DMH inpatient care.

**Central California Women's Facility**

The Special Master's team reviewed 13 cases at CCWF and recommended that the IDTT consider three for referral to DMH inpatient care. Of the three inmate-patients that the team

11

recommended, CCWF had already referred two to DMH. Patton State Hospital (PSH) rejected both of these referrals because of their history of violent behavior that posed a risk to the safety and security of PSH and staff. Of the two, one inmate-patient was re-referred to PSH and admitted in accordance with Program Guide timelines. The second inmate-patient currently has a new referral pending. The third inmate-patient paroled on November 21, 2011.

**California Men's Colony**

The Special Master's team reviewed 49 cases at CMC and recommended that the IDTT consider three for referral to DMH inpatient care. One inmate-patient had paroled by the time the IDTT referred him. Staff at CMC held IDTTs for the other two inmate-patients, and referred both to ICF care. Both inmate-patients were admitted to ASH on November 28, 2011. One referral was completed within the Program Guide timelines. The other referral was delayed by approximately one week.

**California State Prison, Los Angeles County**

The Special Master's team reviewed 31 cases at LAC and recommended that the IDTT consider three for referral to DMH care. IDTTs were held for all three inmate-patients and all three were referred to ICF care. Headquarters has received one referral and is waiting for a case-by-case review for admission to VPP for that referral. CDCR has not met the referral timeline for this case-by-case referral. A second referral was made on December 1, 2011 and a third on December 6, 2011.

Table 2 below reflects the above referral data by institution:

**Table 2. Outcome Data from First Five Site Visits**

| Referral Data by Institution | RJD | MCSP | CCWF | CMC | LAC |
|---|---|---|---|---|---|
| Total list reviewed by SM team:[7] | 27 | 43 | 13 | 49 | 31 |
| Recommended by SM team for IDTT consideration of DMH referral: | 4 | 0 | 3 | 3 | 3 |
| After IDTT review, no referral needed: | 0 | 0 | 0 | 0 | 0 |
| After IDTT, referred to DMH: | 2 | 0 | 2 | 2 | 3 |
| Paroled/transferred: | 2 | 0 | 1 | 1 | 0 |
| Total referrals resulting from SM team recomm. that IDTT consider I/P for referral to DMH: | 2 | 0 | 2 | 2 | 3 |

---

[7] SM team lists exclude status of [at] DMH, paroled, gone, transferred, UHR N/A, deceased, taken from site specific worksheets prepared by the Special Master team.

C.    **Referral Review and Next Nine Site Visits.**

CDCR met with the Special Master's team on November 2, and 3, 2011, to reconcile data from the first five site visits, demonstrate the process to generate MHTS.net lists, and review the lists generated from MHTS.net. The Special Master team and CDCR headquarters met with Plaintiffs' counsel on November 4 to describe the review process that had been utilized for the first five site visits and to discuss the planned review process for the next nine site visits.

The focus of the next nine visits was the same as with the first five visits —to evaluate CDCR's self-monitoring process, specifically the referrals and non-referral process for considering EOP inmate-patients for referral to DMH inpatient care and to ensure that no inmate-patients were currently languishing due to an untimely referral to DMH. The process for this review was similar to the process for the first five site visit reviews, with the variations noted below.

    1.    **CDCR Preparation of Lists for Each of the Next Nine Site Visits.**

Again, CDCR extracted EOP inmate-patient names from MHTS.net, this time using October 27, 2011 as a cutoff date. CDCR generated a list for each of the next nine site visits.

        a.    **Objective Indicators.**

CDCR headquarters generated each list using data in MHTS.net and included the names of all inmate-patients who were positive for indicators 5, 6, or 9 on the current form 7388-B. CDCR then selected a random sample of inmate-patients from the list. Headquarters, however, did not append to the list the subjective indicators or additional add ons as was done with the first five visits. Headquarters provided the full list and the statistically sampled list to the Special Master team. The Special Master team agreed that the validation of MHTS.net as a valid source of data for these reports would be a part of the process.

    2.    **Institutions Reviews of Lists.**

For these next nine site visits, CDCR headquarters did not provide the institutions with a spreadsheet containing the list of inmate-patients. Nor did institutions review the cases on the list prior to the visits.

    3.    **Headquarters' Review of Institutions' Data.**

For these next nine site visits, CDCR Headquarters did not review either the clinical documentation in the eUHR for the inmate-patients on the list generated from MHTS.net or review any data from the institutions.

    4.    **Site Visits.**

As with the first five site visits, these next nine site visits included the Special Master team, accompanied by two to three clinicians from headquarters, and a CDCR consultant. Additional representatives from CDCR attended several of the site visits as well. Plaintiffs' counsel attended the site visits to CIM, SQ, and SVSP.

The Special Master's team used the lists generated by Headquarters and the non-referral logs for each institution to create their own list of inmate-patients to review at each institution, and supplemented those lists with inmate-patients that the team added from the visit itself. At the start of each visit, the institution provided the Special Master team with the following: current DMH non-referral and referral logs, the current DMH waitlist for ICF and APP treatment, the logs for the last six months for MHCB, OHU, or alternative housing if applicable, and a schedule of all IDTT days and times to be conducted during the site visit. Additionally, each institution provided four computers with eUHR access for use by the Special Master team and CDCR headquarters' staff during the visits.

The outcome data related to the Special Master's team's review of the next nine site visits is as follows:

**California State Prison, Sacramento**

The Special Master's team reviewed 73 cases at SAC and recommended that the IDTT consider three for referral to DMH care. SAC clinical staff held IDTTs for all three inmate-patients, and referred two for ICF care. The referral paperwork is in process and both inmate-patients have Vitek hearings pending. Each referral is currently meeting Program Guide timelines.

**California Medical Facility**

The Special Master's team reviewed 90 cases at CMF and recommended that the IDTT consider two for referral to DMH care. CMF clinical staff held IDTTs for both of the inmate-patients and referred one to DMH care. One of the referred inmate-patients was admitted to ASH on December 7, 2011. Though this referral resulted in an admission to ASH, it exceeded the Program Guide timeline by two days.

**California State Prison, Corcoran**

The Special Master's team reviewed 75 cases at COR and recommended that the IDTT consider five for referral to DMH care. COR staff held IDTTs for four inmate-patients and referred two of them to DMH. These referrals met Program Guide timelines. An IDTT is pending for the fifth inmate-patient.

**Substance Abuse and Treatment Facility**

The Special Master's team reviewed 70 cases at SATF and recommended that the IDTT consider four for referral to DMH care. SATF staff held IDTTs for all four inmate-patients and referred three to DMH care. One IDTT was held on November 21, 2011, and the referral is not meeting Program Guide timelines. The other two IDTTs were held on December 6, 2011, and headquarters is waiting for the referral packets. The IDTT did not recommend the fourth inmate-patient for DMH care.

**California Institution for Men**

The Special Master's team reviewed 41 cases at CIM and recommended that the IDTT consider seven for referral to DMH care. One inmate-patient paroled. For another inmate-patient, staff

14

determined that the inmate-patient's medical condition outweighs his mental health condition and a DMH referral is not clinically appropriate at this time. For the remaining five inmate-patients, CIM staff held four IDTTs, and one is pending. Of the four IDTTs conducted, CIM referred one of the inmate-patients to DMH care. That referral is currently within required Program Guide timelines. The IDTTs did not recommend the other three inmate-patients for DMH care.

**California Correctional Institution**

The Special Master's team reviewed 49 cases at CCI but did not recommend that the IDTT consider any inmate-patients for referral to DMH care.

**Deuel Vocational Institution**

The Special Master's team reviewed 45 cases at DVI and recommended that the IDTT consider two for referral for DMH care. An IDTT was held for each inmate-patient, but the IDTTs did not recommend either inmate-patient for DMH care.

**San Quentin State Prison**

The Special Master's team reviewed 47 cases at SQ and recommended that the IDTT consider six for referral to DMH care on December 7, 2011. At present, no IDTTs have been scheduled.

**Salinas Valley State Prison**

The Special Master's team reviewed 57 cases at SVSP and recommended that the IDTT consider two for referral to DMH care. At present, no IDTTs have been scheduled.

The below Table 3 reflects the data by institution:

**Table 3. Outcome Data from the Next Nine Site Visits**

| Referral Data by Institution | SAC | CMF | COR | SATF | CIM | CCI | DVI | SQ | SVSP |
|---|---|---|---|---|---|---|---|---|---|
| Total on list created by SM team to review: | 73 | 90 | 75 | 70 | 41 | 49 | 45 | 47 | 57 |
| Recommended by SM team for IDTT consid. of DMH referral: | 3 | 2 | 5 | 4 | 7 | 0 | 2 | 6 | 2 |
| After IDTT review, no referral needed: | 1 | 1 | 2 | 1 | 4 | 0 | 2 | 0 | 0 |
| After IDTT, referred to DMH: | 2 | 1 | 2 | 3 | 1 | 0 | 0 | 0 | 0 |
| IDTT Pending: | 0 | 0 | 1 | 0 | 1 | 0 | 0 | 6 | 2 |
| Paroled: | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 |
| Total referrals resulting from SM team recomm. that IDTT consider I/P for referral to DMH: | 2 | 1 | 2 | 3 | 1 | 0 | 0 | 0 | 0 |

**D.    Summary of Referrals and Transfers Resulting from the Referral Review Process for DMH Inpatient Care.**

From the 419 combined cases that headquarters and the Special Master team reviewed as part of the first five site visits, the Special Master team recommended that the IDTTs consider thirteen inmate-patients for referral to DMH inpatient care. The IDTTs referred nine of those inmate-patients, and 4 have either paroled or transferred. As for the nine inmate-patients referred, four of them have already transferred to a DMH program. And of those nine-inmate patients, all but three met Program Guide referral timelines.

From the 547 cases the Special Master team reviewed as part of the next nine site visits, the team recommended that the IDTTs consider 31 inmate-patients for DMH inpatient care. The IDTTs referred nine inmate-patients, determined not to refer eleven, and one inmate-patient paroled. As for the nine inmate-patients referred, one has already transferred to a DMH program. And of those nine inmate-patients, all but two met Program Guide referral timelines. The remaining ten inmate-patients are pending an IDTT.

Attached as Exhibit 6 is a spreadsheet that CDCR uses to track ICF referrals. This spreadsheet reflects, by institution, ICF referrals for the past year. Over the past year, referrals to ICF care have averaged 78 per month.

**E.    Quality Management.**

Conducting and completing the expedited referral review process for DMH inpatient care at the 14 institutions, all with their own unique mental health programs and challenges, brought to light various quality management issues that CDCR has elected to address, either in the short-term or as part of its long-term IT solutions and continual improvement in MHTS.net.  Throughout this process, there was constant interaction and collaboration between the Special Master's team and CDCR regarding ways to improve the referral process at the institutional level.  The areas identified through this process fall into six broad categories:  (1) inconsistencies in MHTS.net data entry; (2) clinical documentation issues; (3) discovery that the transition over to eUHR did not, at all prisons, result in 7388 Treatment Plans being scanned into the eUHR; (4) OHU/Alternative Housing placements not being tracked in MHTS.net as MHCB admissions; (5) changes to the agreement audits; and (6) changes to the CDCR form 7388-B and audit tool.

**1.    Inconsistencies in MHTS.net data entry.**

During the performance of the aforementioned processes and site visits, issues natural to the implementation of new data systems were identified.  At CMC, group notes were not being entered into MHTS.net, so group notes will now be entered into MHTS.net.  At CMF, MHCB referrals were not being entered for admissions to S2 wing, so CMF has now begun entering these referrals and placements into MHTS.net.  At CIM, MHCB data was incorrect due to data entry errors and coding for OHU placements, which is now being addressed through assignment of a ward clerk to enter MHCB data and a programming change in MHTS.net so that level of care will automatically match housing for MHCBs.  At COR, staff was not using modified treatment alerts in MHTS.net, and the issue has been addressed with staff training.  At CCI, staff has been retrained to address incomplete data entry issues.  At CCI and DVI, there were issues relating to the accuracy of reasons for OHU placements, medical or mental health.  The MHTS.net team is working on a solution to this issue.  Also at DVI, staff has been retrained on reports on inmate-patient programming levels in MHTS.net.  At SQ, staff was not using MHTS.net to run reports in order to capture inmate-patients participating in less than 50% of individual programming or properly tracking MHCB admissions.  SQ staff has been retrained and will begin using MHTS.net as designed.

As with the deployment of any large tracking system, issues such as these continue to be identified, monitored, and addressed on an ongoing basis.  The annual headquarters review of each institution promotes recognition of these issues and ensures that they are addressed in a manner that is consistent system-wide.  (*See* Ex. 1.)  Additionally, CDCR headquarters is revising the data entry procedures and will require all persons who enter information into MHTS.net to attend this training.  Moreover, through MHTS.net, headquarters can now generate a report that will allow it to more easily track data entry errors.

**2.    Documentation issues.**

The headquarters and institutional level review process prior to the visits to the first five sites led to the correction of clinical documentation issues prior to the site visit at RJD.  As already discussed, a number of these were 7388-B forms that needed to be redone and completed correctly.  Training has been completed and will continue at those institutions having difficulty

17

with documentation. Another issue recognized was the untimely updating of DMH referral and non-referral logs.

3.    **Scanning of 7388 treatment plans into eUHR.**

It became apparent during the review process that not all 7388 Treatment Plans had been entered into the eUHR. Now, all clinicians are required to pull treatment plans before each IDTT when a current 7388 is unavailable in the eUHR, with updates documented and submitted for scanning.

4.    **OHU/Alternative Housing placements not being tracked as MHCB admissions.**

This is an issue at SAC. SAC has implemented a short term solution in which the alternative housing tracking log will be sent weekly to primary clinicians and supervisors. At each IDTT, the primary clinician will document the number of placements in alternative housing and the number of physical MHCB admissions on the form 7388-B. These placements in alternative housing and MHCB admissions will be considered when determining DMH referrals. CDCR is working on a long term solution that will be further developed with the Special Master's team in 2012.

5.    **Agreement Audits.**

Institutions perform monthly agreement audits. These audits match MHTS.net with the documentation of contacts (completed appointments) in the eUHR. During the referral process, CDCR refined its agreement audits so that both all documentation of appointments in the eUHR and all completed appointments from MHTS.net during the sample period are matched. This revision increases reliability and confidence in the agreement audit process. (Ex. 7, Agreement Audit Process.)

6.    **CDCR 7388-B Form and associated Audit.**

During the review process, CDCR has discussed changes to the 7388-B form and associated audit with the Special Master's team. CDCR is working with the Special Master's team to finalize the forms. Training on the new forms will occur once they are completed.

7.    **Enhanced EOP Care Plan (EECP).**

In light of the progress on the supplemental waitlist plan, the evolution and refinement of the sustainable self monitoring process, and realignment, CDCR will evaluate the propriety of EECP as a departmental initiative.

F.    **Next Steps.**

In addition to the Quality Management items and action items listed above, CDCR will continue to report and conduct meet and confers with the parties every 45 days between January and July 2012. The purpose of these reports and meetings will be to advise on the status and progress of

18

the Supplemental Plan to reduce the ICF waitlist. Additional quality improvement measures will be discussed during these meetings.

In the same period of time, CDCR will launch and continue implementing the sustainable self monitoring process described in Exhibit 1. An initial training to inform and advise institutional management will be conducted and CDCR invites the Special Master and Plaintiffs' counsel to attend this event.

# EXHIBIT 1

# DIVISION OF CORRECTIONAL HEALTH CARE SERVICES
## CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION

## Sustainable Self Monitoring Re:  California Department of Mental Health Referral Processes for Enhanced Outpatient Program and Mental Health Crisis Bed Populations

### 1.      Objectives.

The California Department of Corrections and Rehabilitation (CDCR) has two primary objectives in developing and implementing sustainable self monitoring of the California Department of Mental Health (DMH) referral process for the Enhanced Outpatient Program (EOP) and Mental Health Crisis Bed (MHCB) populations.  The first objective is to ensure that inmate-patients are treated at the appropriate level of care or, if deemed clinically necessary, referred and transferred to DMH in a timely manner.  The second objective is to develop a sustainable, internally monitored, quality improvement process designed to meet the first objective while simultaneously providing feedback to refine existing policies and procedures, improve data management systems, enhance ongoing training of institutional staff, and take appropriate corrective action when warranted.

### 2.      Summary.

CDCR will use multiple procedures to ensure the objectives are met, along with implementing several quality improvement measures.  The multiple procedures, which consist of three broad categories of review—monthly procedures, quarterly procedures, and annual procedures—are based on the current monthly procedures (supplemented) and the processes used during the fall 2011 7388-B referral review process for DMH inpatient care.  As such, the procedures will involve both headquarters' and institution staff on an ongoing basis.  The quality improvement measures are based on the ongoing commitment to refine existing policies and procedures, improve data management, and enhance ongoing training.

### 3.      Procedures.

#### a.      Monthly Procedure.

On a monthly basis, institutions' clinical staff and headquarters' staff (including the Utilization Management Unit) will both be involved in the review of considerations for higher levels of care. CDCR will use four tools to monitor referrals and non-referrals on a monthly basis.  First, CDCR will continue to use available tracking systems to record and monitor DMH referrals, such as

1

each institution's referral rate, waitlist data, the average length of time on the DMH waitlist, DMH rejections, and DMH length of stay.

Second, institutions will continue to create non-referral logs and forward those to headquarters for review. Consistent with current expected practice, the program senior psychologist will ensure that the 7388-Bs reflect the base data from the MHTS.net indicator reports. Also consistent with current practice, the local DMH coordinator will create a non-referral log containing all 7388-B forms with a positive indicator but where no DMH referral was made. The DMH coordinator will now also review the non-referral log for trends or patterns, e.g., significant change in the number of entries on the log or variances in the indicators utilized.

Third, institutions will continue to complete monthly audits, using the 7388-Bs and the referral and non-referral logs, and summarize the results in the monthly Mental Health Subcommittee minutes. (*See* Report on Assessment Process, pp. 3–4.) The local Chief of Mental Health, however, will now also review the Mental Health Subcommittee minutes to resolve any issues. Quality Improvement Teams will be chartered as necessary to remediate identified issues. Additionally, during the annual review process (discussed below), a headquarters' clinician, such as a Senior Psychologist Specialist, will review the institutions' three prior months Mental Health Subcommittee minutes in conjunction with each institution's annual review. This review will focus on DMH referrals specifically.

Last, the institutions will continue to perform monthly agreement audits. These audits match MHTS.net with the documentation contacts (completed appointments) in the Unit Health Record (eUHR) and the eUHR with MHTS.net. Clinicians at headquarters review the audits and follow up with the institutions, as necessary. MHTS.net is currently the main database to assess and track mental health services provided statewide and is used by both headquarters and locally. It is also a data source for the annual procedure, discussed below. (*See* Ex. 7, Agreement Audit Process.)

CDCR will implement the new monthly procedures noted above commencing in the first quarter of 2012.

### b.    Quarterly Procedure.

There are three Regional Chiefs of Mental Health—a Northern, Central, and Southern Chief— whose job descriptions contain specific duties related to the CDCR institutions within their regions. CDCR's new quarterly procedure requires amending the duty statements for the Regional Chiefs to require that they conduct quarterly one to two day on-site visits of the EOP programs at institutions in their regions. The new duty statements will be effective in the first quarter of 2012.

During these visits, the Regionals will attend EOP and Administrative Segregation Unit (ASU) Interdisciplinary Treatment Team (IDTT) appointments, and walk the mental health tiers

2

(MHCB, ASU, Psychiatric Services Unit, EOP) to talk with correctional officers and nursing staff to identify any inmate-patients potentially functioning sub-optimally, e.g., poor hygiene, lack of programming, etc.  The Regionals will walk the tiers during the daily psychiatric technician rounds as the psychiatric technician schedules permit.  For any inmate-patients identified in this process, the Regionals will meet with those inmate-patients and/or program senior psychologists to review the level of care decision and will review the identified inmate-patient's eUHR, as necessary.

The Regionals will also review the non-referral logs for the preceding three months for trends or patterns, e.g., significant changes in the number of entries on the log, variances in the indicators utilized and review the last three months Mental Health Subcommittee minutes to ensure completeness, and compliance with the monthly 7388-B audits.  Additionally, to ensure that the 7388-Bs are reflective of information in the eUHR, the Regionals will review the progress notes for the preceding month (in eUHR) and compare the content for consistency with the current 7388-B.  The sample size for this review will be eight cases from the last month's audit form or, if fewer than eight, then all cases.

Standardized data collection and reporting formats will be developed and utilized to document the results of the regional's quarterly activities.  The regional will also ensure that timely corrective action is implemented for any issues identified.

### c.    Annual Procedure.

The annual procedure, which CDCR will start implementing in the first quarter of 2012, consists of three steps, as follows:

### i.    Headquarters Procedure and Sampling Methodology.

CDCR headquarters will use the same procedure and sampling method that CDCR and the Special Master team used in the fall 2011 7388-B referral review process for DMH inpatient care.  The sustainable process, however, will be that for each calendar quarter, one fourth of the institutions with EOP programs will participate in this process, which will ensure that every EOP program is reviewed at least annually.  Non-EOP institutions with an EOP population will be included in the annual procedure, less the regional site visits.  Specifically, headquarters will take the following steps.  First, it will generate lists using data in MHTS.net and include the names of all EOP inmate-patient that were positive for the objective indicators 5, 7, or 9 on CDCR form 7388-B.[1]  These three objective indicators are:  1) three or more admissions to a MHCB or placement in an OHU/MOHU in the last six months; 2) participating in less than 50% of structured treatment (i.e., less than two and one half hours of programming while housed in

---

[1] CDCR is revising the CDCR 7388-B.  Thus, CDCR expects the indicator numbers will change; however, the indicators themselves will be similar.

Reception Center and less than five hours or less at other institutions) in the last three months; or 3) receiving three or more closed RVRs (115 MHs) in the last three months.

From this list, CDCR headquarters will select a statistically significant random sample of inmate-patients for inclusion in each institution's review. The selection criteria used by headquarters to generate the sample will be sufficient to allow appropriate generalization[2]. The sample size that headquarters will use for each institution will be determined based on the number of inmate-patient names that resulted from the MHTS.net query for each institution. Headquarters will use a random number generator to determine which inmate-patient cases are selected from the MHTS.net list.

CDCR will append the list with the names of all inmate-patients that meet more than one objective indicator, all inmate-patients on the last three months of each institution's non-referral logs that meet a subjective indicator and are not already on the list, and all inmate-patients on the current HC-POP Length of Stay report who have been in a MHCB for more than 10 days as of the current cutoff date.

## ii.    Institutions Reviews of Lists.

Again, CDCR headquarters will use the same review procedure CDCR and the Special Master team used in the fall 2011 7388-B referral review process for DMH inpatient care. CDCR will generate a spreadsheet containing the inmate-patient names and CDCR numbers for each of the institutions included in the quarterly review. The spreadsheet will indicate which 7388-B indicator was positive for each inmate-patient. CDCR will then provide the spreadsheet to the institutions. The institution will review the spreadsheet and address whether each inmate-patient's 7388-B form agrees with MHTS.net; whether the 7388-B documentation adequately supports the non-referral decision when an indicator is positive; whether enhanced treatment is documented for non-referrals when an indicator is positive; and whether appropriate treatment is documented for inmate-patients who are on the waitlist.[3]

## iii.    Headquarters' Review of Institutional Data.

Once the institution completes its review and notes the results on the list, the list will be returned to headquarters for review by a senior psychologist. The headquarters clinician will review the institution's responses and 7388-Bs using e-UHR or, if necessary, scanned 7388-B forms. The

---

[2] CDCR will use a 95 percent confidence level and a margin of error of 10 to determine the sample size for each institution. The confidence level is the likelihood that the true population parameter lies within the range specified by the confidence interval. The margin of error is the amount of uncertainty associated with a sample estimate of a population parameter.

[3] Headquarters has previously provided the operational definitions of "good" and "unacceptable" documentation to the institutions. (Ex. 5.) Examples of appropriate treatment include increased frequency of monitoring personal and cell hygiene or tracking of affective changes after a medication change.

4

headquarters' review, the outcome of which will be documented on the same spreadsheet, will be based on the aforementioned operational definitions of "good" and "unacceptable" documentation. The results of the headquarters' review will be submitted to the institutions who will in turn report back to headquarters any new IDTTs held, changes to clinical outcomes and changes to documentation made as a result of this process.

The management of the institution will follow up on documentation and clinical care. The Regional Chief of Mental Health will schedule one of his or her quarterly visits to coincide with the completion of the headquarters annual review process for that institution. During that visit, any problematic cases identified will be discussed with appropriate staff and, if necessary, the inmate-patient will be seen by the Regional Chief of Mental Health and/or a headquarters' clinician, who will participate in on-site reviews as necessary.

4.      **Quality Improvement Measures.**

CDCR intends to implement several additional quality improvement measures specific to the sustainable process, as follows:

　　　　a.      Cases that are identified through the monthly, quarterly, or annual procedures by local, regional or headquarters clinical staff as potentially not placed at the appropriate level of care will be referred back to their IDTT for reconsideration. The IDTT shall expedite an IDTT meeting for review of those inmate-patients and will document their decision regarding referral or non-referral. The DMH Coordinators will keep a list of cases referred back to IDTTs and the outcomes. The Regionals will monitor then inmate-patients on that list.

　　　　b.      If more than 15% of the documentation at an institution is considered unacceptable, headquarters will determine whether the nature of problem is systemic, documentation, or supervisory. If appropriate, headquarters and local management will work together to develop a remedial plan and headquarters will provide additional training. Additionally, CDCR will review that institution again in the next quarter's review process.

　　　　c.      If an institution does not meet the prescribed timelines, as tracked and reported from the ICF Referral database, for submitting DMH referral packets to headquarters when an inmate-patient has been determined to need the DMH level of care, headquarters will determine the nature of problem (priority, medical clearance, workload, etc.); headquarters and local management will develop a remedial plan and headquarters will then provide additional training as necessary specific to the identified problem.

5.    **Staffing.**

CDCR plans to initially assign one full-time headquarters Senior Psychologist Specialist and one Health Program Specialist I to all duties related to the sustainable self-monitoring for DMH referral processes and quality improvement. The workload will be reviewed to determine staffing needs.

Additionally, CDCR will work with institutions that presently have part-time DMH coordinators to adjust workload such that they can be fully dedicated to the DMH process.

6.    **Training.**

There will be an initial training to update and inform institutional management on the Sustainable Self Monitoring Referral Process for the EOP and MHCB populations. On an ongoing basis, CDCR will catalog issues identified throughout the monthly, quarterly, and annual processes. Identified issues will be used to determine the content of future training needs. There will also be emphasis on MHTS.net data entry and clinical documentation training and tactical training based on findings from the regular processes. There will also be training for the DMH coordinators and the Regional Chiefs on the monthly, quarterly, and annual processes, as well as new DMH coordinator training, conducted as necessary. Existing training modalities, such as monthly conference calls with DMH coordinators, will also be employed.

# EXHIBIT 2

State of California                                                      Department of Corrections and Rehabilitation
**INTERDISCIPLINARY TREATMENT TEAM – SCREENING FOR HIGHER LEVEL OF CARE**
CDCR 7388-B (04/11)

| PART I: IDTT INFORMATION |
|---|

Current housing:  ☐ GP  ☐ RC-GP  ☐ ASU  ☐ PSU  ☐ SHU  ☐ OHU  ☐ MHCB  ☐ Other:_____

Type of IDTT:  ☐ Initial  ☐ Weekly  ☐ 30 day  ☐ 90 day  ☐ Annual  ☐ Other. If not a regularly scheduled
IDTT, enter reason for IDTT: _____
Current level of care:  ☐ Non-MHSDS  ☐ CCCMS  ☐ EOP  ☐ MHCB
Level of care after IDTT:  ☐ Non-MHSDS  ☐ CCCMS  ☐ EOP  ☐ MHCB
Inmate referred to higher level of care:      ☐ Yes  ☐ No
If Yes, level of care referred to:      ☐ CCCMS  ☐ EOP  ☐ MHCB  ☐ ICF  ☐ APP      Referral date: _____

| CDCR Unit Health Record (UHR) available at IDTT: ☐ Yes ☐ No      Central File available at IDTT: ☐ Yes ☐ No |
|---|

Primary clinician completing IDTT screening:

_____        _____        _____
Name/Title (Print)                              Signature                                                    IDTT Date

| PART II:  SCREENING INDICATORS |
|---|

| SECTION A:  SCREENING FOR HIGHER LEVEL OF CARE |
|---|

| | | |
|---|---|---|
| 1. | As a result of a major mental disorder, the inmate-patient is unable to adequately function within the structure of the current level of care. | ☐ Yes ☐ No |
| 2. | The inmate-patient requires highly structured inpatient psychiatric care with 24-hour nursing supervision due to a major mental disorder; serious to major impairment of functioning in most life areas; stabilization or elimination of ritualistic or repetitive self-injurious/suicidal behavior; or stabilization of refractory psychiatric symptoms. | ☐ Yes ☐ No |
| 3. | The inmate-patient demonstrates chronic psychiatric symptoms (disturbed emotions, perceptions, thought processes, and/or impaired cognitions) that have not responded sufficiently to at least 6 months of treatment to a degree that facilitates adequate levels of functioning. | ☐ Yes ☐ No |
| 4. | The inmate-patient has been in a MHCB for 10 or more days for mental health clinical issues. | ☐ Yes ☐ No |
| 5. | The inmate-patient has had 3 or more admissions to a MHCB or placement in an OHU/MOHU during the last 6 months. (Include MHCB admissions if the inmate-patient paroled and returned during the last 6 months.) | ☐ Yes ☐ No |

**Reason for Non-Referral:**

a.  If "Yes" was selected for 1-5 AND if a referral to a higher level of care IS NOT MADE, explain why the referral was not made:



b.  If "Yes" was selected for 1-5, what interventions were made, if any, to the treatment plan to improve the inmate-patient's ability to function within the structure of the current level of care?



| **MENTAL HEALTH TREATMENT PLAN**<br>**IDTT–Screening for Higher Level of Care**<br>**CDCR 7388-B (04/11) Pilot**<br><br>Confidential Inmate-Patient Information | Name (Last, First, MI), CDCR Number, Date of Birth, Institution |
|---|---|

State of California

**INTERDISCIPLINARY TREATMENT TEAM – SCREENING FOR HIGHER LEVEL OF CARE**

CDCR 7388-B (04/11)

Department of Corrections and Rehabilitation

| SECTION B: SCREENING FOR HIGHER LEVEL OF CARE (For Inmate-Patient Currently in EOP Level of Care Only) | |
|---|---|
| 6.  The inmate-patient has had less than 50% overall cooperation/participation with programming during the last 3 months due to mental health issues that are substantially affecting the inmate-patient's ability to actively participate in programming. | ☐ Yes  ☐ No<br>☐ N/A |
| a.  If "Yes" was selected for 6, what interventions were initiated, if any, to increase the inmate-patient's cooperation/participation to 50% or more with programming? | |
| 7.  The inmate-patient meets the screening for Extended EOP Care Plan (EECP) services using the EECP clinical indicators described in "Instructions Part II Section B: Table 1. | ☐ Yes  ☐ No<br>☐ N/A |
| a.  If the inmate-patient met the EECP indicators and was not referred to EECP services, explain why the inmate-patient was not referred: | |
| 8.  The inmate-patient has been in EOP level of care for 365 days or more. | ☐ Yes  ☐ No<br>☐ N/A |
| a.  If "Yes" was selected for 8, provide the rationale for the stay beyond 365 days: | |

| SECTION C:  CUSTODY ISSUES | |
|---|---|
| 9.  The inmate-patient has incurred 3 or more Rules Violation Reports (RVR) during the last 3 months. | ☐ Yes  ☐ No |
| a.  If "Yes" was selected for 9 and a referral IS NOT MADE, explain why the referral was not made: | |

| SECTION D: CLOZAPINE / DIAGNOSTIC EVALUATION | |
|---|---|
| 10. Psychiatrist/IDTT referred the inmate-patient for a trial of Clozapine. | ☐ Yes  ☐ No |
| 11. The inmate-patient requires a CDCR outpatient diagnostic psychological evaluation. | ☐ Yes  ☐ No |
| 12. The inmate-patient requires a DMH inpatient diagnostic psychological evaluation. | ☐ Yes  ☐ No |
| 13. Inmate-patient requires a DMH inpatient neuropsychological diagnostic evaluation. | ☐ Yes  ☐ No |

| **MENTAL HEALTH TREATMENT PLAN**<br>**IDTT–Screening for Higher Level of Care**<br>**CDCR 7388-B (04/11) Pilot**<br><br>Confidential Inmate-Patient Information | Name (Last, First, MI), CDCR Number, Date of Birth, Institution |
|---|---|

State of California
**INTERDISCIPLINARY TREATMENT TEAM – SCREENING FOR HIGHER LEVEL OF CARE**
CDCR 7388-B (04/11)
Department of Corrections and Rehabilitation

## INSTRUCTIONS

**General:**
The Interdisciplinary Treatment Team – Screening For a Higher Level of Care 7388-B is a component of the CDCR 7388 Mental Health Treatment Plan.
The 7388-B is:
- Used to assess inmate-patient behaviors, symptoms and potential benefit from a higher level of care.
- Completed electronically.
- Completed at a frequency consistent with the Mental Health Services Delivery System (MHSDS) Program Guide (2009 Revision) requirements.  This includes IDTTs for CCCMS inmate-patients.
- Completed during the IDTT process.

**Form Completion:**
- Where indicated enter a "Yes" or "No" response and, as appropriate, an explanation.
- Enter the inmate-patient's demographics and institution in the bottom right hand corner of the page (addressograph).

**References:**
CDCR-DCHCS-Mental Health – Extended Enhanced Outpatient Program Care Plan (EECP), February 2011
CDCR-DCHCS-Mental Health – Statewide Clozapine Initiation Policy, November 2010
CDCR-DCHCS-Mental Health – Procedure for Conducting CDCR Psychological Assessments, February 2011

**PART I:  IDTT INFORMATION:**
- Select inmate-patient's current housing unit.
- Select type of IDTT (initial, weekly, etc.).  If "Other" is selected, enter the reason for the "Other" IDTT.
- Identify the inmate-patient's current level of care and level of care after the IDTT.
- Select "Yes" or "No" if the inmate-patient was referred to a higher level of care.
  - Enter referral date, if applicable.
- Presence of the Unit Health Record and Central File at the IDTT:  Select "Yes" or "No."
- Signature:  Print and sign Clinician's name/title and enter date of IDTT/Screening completion.

**PART II: SCREENING INDICATORS**
Complete Sections A through D.

**SECTION A: SCREENING FOR HIGHER LEVEL OF CARE**
This section applies to all levels of care.
- Select "Yes" or "No" for 1-5.
Reason for Non-Referral:
a. If "Yes" was selected for any of the 1-5 screening indicators AND if a referral to a higher level of care is NOT made, explain why the referral was not made.
b. If "Yes" was selected for any of the 1-5 screening indicators, explain what modifications were made, if any, to the treatment plan to improve the inmate-patient's ability to function within the structure of the current level of care.

**SECTION B: SCREENING FOR HIGHER LEVEL OF CARE (For Inmate-Patient Currently in EOP Level of Care Only)**
This section applies to EOP level of care only.  Select "N/A" for 6-8 if inmate-patient is not in an EOP level of care.
- Select "Yes" or "No" for 6-8.
- Numbers 6 & 6a: If "Yes" was selected for 6, in 6a, document what interventions were initiated, if any, to increase inmate-patient cooperation with or participation in programming to 50% or more.

State of California                                                                    Department of Corrections and Rehabilitation
**INTERDISCIPLINARY TREATMENT TEAM – SCREENING FOR HIGHER LEVEL OF CARE**
CDCR 7388-B (04/11)

- Numbers 7, 7a & 7b apply to the Extended Enhanced Outpatient Program Care Plan.
- See CDCR-DCHCS-Mental Health- Extended Enhanced Outpatient Program Care Plan (EECP), February 2011
  - o   Note: EECP is a service not a level of care.
- Inmate-patients identified as meeting the indicators for EECP are referred to CDCR Headquarters (HQ).
- Number 7: Utilize the following table to determine if the inmate-patient meets the clinical indicators for EECP services.

Table 1:  Extended EOP Care Plan Clinical Indicators

| |
|---|
| 1.  Has received services at EOP LOC and the prognosis for eventual transition to CCCMS level of care is poor.<br>2.  Has an Axis I persistent condition requiring treatment primarily for management of:<br> ➢ negative symptoms<br> ➢ impoverished thinking<br> ➢ low level of continuous positive psychotic symptoms<br> ➢ medication management<br> ➢ deficits in daily living skills, recreational and leisure activities, and<br> ➢ inmate-patient may present a cyclical regressive pattern of functioning.<br>3.  The inmate-patient is not in need of further diagnostic clarification.<br>4.  Currently does not require APP. | 5.  Currently does not meet criteria for referral to Intermediate Care Facility (ICF) treatment<br>OR<br>Is not recommended for referral to ICF treatment because IDTT determines inmate-patient is unlikely to benefit and reasons are clearly documented<br>OR<br>Has been treated at the Department of Mental Health ICF level of care and continues to display significant emotional and behavioral impairments. |

- Number 7:  If the inmate-patient met the EECP clinical indicators, select "Yes."
- Number 7a: If "Yes" was selected in 7, was the inmate-patient referred to HQ for EECP review?
- Number 7b:  If the inmate-patient met the EECP clinical indicators and was not referred to CDCR HQ, provide an explanation for non-referral.
- Numbers 8 and 8a: If an inmate-patient has been at the EOP level of care for 365 days or more, select "Yes" and provide the rationale for the stay beyond 365 days in 8a.

**SECTION C:  Custody Issues**
This section applies to an inmate-patient who has 3 or more RVRs related to mental illness. The C-File and custody logs are data sources for RVRs.
Numbers 9 and 9a: If "Yes" was selected for number 9 and a referral was not made to a higher level of care, provide an explanation for non-referral in 9a.

**SECTION D:  Clozapine / Diagnostic Evaluation**
This section applies to an inmate-patient at any level of care who may benefit from a Clozapine trial or diagnostic evaluation.
- Numbers 10-11. If "Yes" is selected for numbers 10-11, refer the inmate-patient to DCHCS Mental Health UM. See the following CDCR-DCHC references for policy specifics:
  - o   Statewide Clozapine Initiation Policy, November 2010
  - o   Procedure for Conducting CDCR Psychological Assessments, February 2011
- Number 12-13: If "Yes" is selected, initiate a DMH referral.

**Distribution:**  File in CDCR UHR Mental Health – Treatment Plan section.

# EXHIBIT 3

Attachment 2A

**Department of Mental Health**
**Referral Log**

Institution: _____

Month of Reporting Date: _____

| 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Initiating Institution | CDCR Institution transferred to | Inmate's Last Name | Inmate's First Name | CDCR # | Current LOC | Date of Current LOC | DSM IV Diagnosis Code | IDDT Summary RPd met | DMH Facility and LOC | IDDT Referral Date | Placement Score | Current Custody Level | Current Housing at CDCR | SNY Status? | Date DMH Coordinator Signed | Date Sent | 2+ or 5+ or 10+ days? | If Yes, Why | Accept or Reject | Date of Acceptance or Rejection | Wait Illist? | Reason for Rejection | Date CCAT Conducted | Result of CCAT Appeal |

Please submit to HQ by the 15th of the each month.

Version: 4/15/2010

Attachment 2A

Department of Mental Health
Referral Log

| 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 |
|---|---|---|---|---|---|---|---|---|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|
| Initiating Institution | CDCR Institution transferred to | Inmate's Last Name | Inmate's First Name | CDCR # | Current LOC | Date of Current LOC | DSM IV Diagnosis Code | IDTT Summary 8(a) met | DMH Facility and LOC | IDTT Referral Date | Placement Score | Current Custody Level | Current Housing at CDCR | SNY Status? | Date DMH Coordinator Signed | Date Sent | 2+ or 6+ or 10+ days? | If Yes, Why | Accept or Reject | Date of Acceptance or Rejection | Wait listed? | Reason for Rejection | Date CCAT Conducted | Results of CCAT Appeal |

STOP! This and the following rows do not have the drop down menus and correct formatting. Please insert or copy from a row above this line to maintain the correct information.

Please submit to HQ by the 15th of the each month.

Version: 4/15/2010

Attachment 2A

Version: 4/15/2010

Department of Mental Health
Referral Log

Institution: _____

| Insert Inmate's Last Name | Insert Inmate's First Name | Results of appeal (Not CDC did not expect (indicated if appeal) | Did IP parole or discharge from CDCR during DMH process? | Date IP paroled or discharged from CDCR (mm/dd/yyyy) | Did the Institution rescind the referral? | Reason the Institution rescinded the referral | Indicate outcome of UTEX hearing | DMH facility and level of care IP will be assigned upon transfer to DMH | Date that Bed/dedicated bed assigned for patient transfer to DMH | Date inmate endorsed or scheduled to be transported to CDCR to DMH facility (mm/dd/yyyy) | Actual transfer date to DMH (mm/dd/yyyy) | Was it more than 72 hours between DMH assigned date and actual transfer to DMH (ICER- Cal 343)? | Did DMH Contractor notify receiving Institution of discharge? | To what Institution did inmate transfer to upon discharge from DMH? | Date IP discharged from DMH (mm/dd/yyyy) | Date IP actually returned to CDCR upon discharge from DMH (mm/dd/yyyy) | Level of care to which IP returned after DMH discharge | Additional Comment Field |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3 | 4 | 26 | 27 | 28 | 29 | 30 | 31 | 32 | 33 | 34 | 35 | 36 | 37 | 38 | 39 | 40 | 41 | 42 |
| Inmate's Last Name | Inmate's First Name | Results Appealed | Parole or Discharge? | Date of Parole or Discharge | Institution Rescind? | Reason Rescinded | UTEX Hearing Decision | DMH Facility and LOC Assigned | Date Bed/ Admission Unit Assigned by DMH | Date of Endorsement or Authorization | Transfer Date | More than 72 hours? | Receiving Institution Notified? | CDCR Institution Transferred to | DMH Discharge Date | CDCR Return Date | Discharge LOC | Comments |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |

Please submit to HQ by the 15th of the each month.

Attachment 2A

Version: 4/15/2010

Department of Mental Health
Referral Log

| 3 | 4 | 26 | 27 | 28 | 29 | 30 | 31 | 32 | 33 | 34 | 35 | 36 | 37 | 38 | 39 | 40 | 41 | 42 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Inmate's Last Name | Inmate's First Name | Results Appealed | Parole or Discharge? | Date of Parole or Discharge | Institution Rescind? | Reason Rescinded | Vitek Hearing Decision | DMH Facility and LOC Assigned | Date Bed/ Admission/ Unit Assigned by DMH | Date of Endorsement or Authentication | Transfer Date | More than 72 hours? | Receiving Institution Notified? | CDCR Institution Transferred to | DMH Discharge Date | CDCR Return Date | Discharge LOC | Comments |

Attachment 2B

Department of Mental Health
NON-REFERRAL LOG

**Month of Reporting Data:** [____]

**Institution:** [____]

| Insert Inmate's Last Name | Insert Inmate's First Name | Insert current CDCR # (no spaces or hyphens) | Current type of housing (Ad Seg, SHU, etc.) | Current Level of Care (LOC) at CDCR Institution, not housing | Insert the checked numbers on IDTT Screening Checklist. Criteria numbers are taken from 7388-IDTT Summary Checklist. #.#.# (no spaces) | IDTT Committee Date (mm/dd/yyyy) | Reason for Non-Referral (be specific) |
|---|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 |

This log is for I/Ps who met IDTT Screening Checklist criteria but were *not* referred.

Each time an I/P is reviewed by the IDTT and meets criteria, but is not referred, the I/P is noted on the log.

| Inmate's Last Name | Inmate's First Name | CDCR # | Current Housing at CDCR | Current LOC | IDTT Summary #(s) | IDTT Date | Reason for Non-Referral |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

**Please submit to HQ by the 15th of each month**

Version 4/15/2010

Attachment 2B

Department of Mental Health
NON-REFERRAL LOG

| Inmate's Last Name | Inmate's First Name | CDCR # | Current Housing at CDCR | Current LOC | IDTT Summary #(s) | IDTT Date | Reason for Non-Referral |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

**Please submit to HQ by the 15th of each month**

Version 4/15/2010

Attachment 2B

Department of Mental Health
NON-REFERRAL LOG

| Inmate's Last Name | Inmate's First Name | CDCR # | Current Housing at CDCR | Current LOC | IDTT Summary #(s) | IDTT Date | Reason for Non-Referral |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

**Please submit to HQ by the 15th of each month**

Version 4/15/2010

Attachment 2B

Department of Mental Health
NON-REFERRAL LOG

| Inmate's Last Name | Inmate's First Name | CDCR # | Current Housing at CDCR | Current LOC | IDTT Summary #(s) | IDTT Date | Reason for Non-Referral |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

STOP!  This and the following rows do not have the drop down menus and correct formatting.  Please insert or copy from a row above this line to maintain the correct information.

Version 4/15/2010

**Please submit to HQ by the 15th of each month**

Drop Down List Choices

| Line Number | LOC [5 Non-Referral] | 13 | 14 | 20 | 18 | 29 | 31 | 22 | 30 | 25 | 10 | 25 | 36 | 37 | 32 | Non Referral 4 | 15 | 27 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | LOC | Custody | Housing | Referrals | Days | Rescind | Visit Consent Signed | Wait list | Reasons | CCAT Rejection | DMH Level | Appeal results | 72 Hours | Notified | New DMH | Non Housing | SNY Status | Parole |
| | CCCMS | CLOSE A | ASU | Accept | Yes | Yes | Visit Won | Yes | Paroled | Rejection Supported | ASH-HCF | Appeal Not Submitted | Yes | Yes | ASH-HCF | ASU | Yes | Yes |
| | EOP | CLOSE B | CCCMS | Reject | No | No | Visit Lost | No | Discharged | Referral Accepted by DMH | PSH-HCF | Rejection Supported | No | No | PSH-HCF | CCCMS | No | No |
| | MHCB | MAX | EOP | | | | | | IP Improved | Rejection Not Supported | SVPP-ICF | Rejection Not Supported | | | SVPP-ICF | EOP | | |
| | CHJ | MED A | GP | | | | | | Required Different LOC | Pending | VPP-ICF | | | | VPP-ICF | GP | | |
| | MH-OHU | MED B | GACH | | | | | | Other | | VPP-APP | | | | VPP-APP | GACH | | |
| | | MIN A | MHCB | | | | | | | | | | | | | MHCB | | |
| | | MIN B | MH-OHU | | | | | | | | | | | | | MH-OHU | | |
| | | UNCL | OHU | | | | | | | | | | | | | OHU | | |
| | | | PSU | | | | | | | | | | | | | PSU | | |
| | | | RC | | | | | | | | | | | | | RC | | |
| | | | SHU | | | | | | | | | | | | | SHU | | |

Version: 4-15-2010

Department of Mental Health Referral Log Tutorial

## Referral Log Tutorial

| Item Number | Field Header (Rows 4 & 5) | Field Header (Row 1) | Instructions | Options for field |
|---|---|---|---|---|
| 1 | Initiating Institution | Institution where referral was initiated | Indicate Institution where patient was when referral was initiated | AVE, CAL, CCC, CCI, CCWF, CEN, CIM, CIW, CMC, CMF, COR, CRC, CTF, CVSP, DVI, FOL, HDSP, ISP, KVSP, LAC, MCSP, NKSP, PBSP, PVSP, RJD, SAC, SATF, SCC, SOL, SQ, SVSP, VSPW, WSP |
| 2 | CDCR Institution transferred to | CDCR Institution I/P transferred to during referral process (if any) | If patient transfers anytime during referral process, indicate to what institution and (1) notify receiving institution DMH Coordinator so that tracking can continue on receiving institutions tracking log; (2) if patient is on a DMH waitlist, please notify the appropriate DMH institution of the transfer | AVE, CAL, CCC, CCI, CCWF, CEN, CIM, CIW, CMC, CMF, COR, CRC, CTF, CVSP, DVI, FOL, HDSP, ISP, KVSP, LAC, MCSP, NKSP, PBSP, PVSP, RJD, SAC, SATF, SCC, SOL, SQ, SVSP, VSPW, WSP |
| 3 | Inmate's Last Name | Insert inmate's last name | | Text |
| 4 | Inmate's First Name | Insert inmate's first name | | Text |
| 5 | CDCR # | Insert current CDCR# (no spaces or hyphens) | Do not use spaces or hyphens | Text/Alpha |
| 6 | Current LOC | Current level of care (LOC) at CDCR institution, not housing needed | Indicate Mental Health level of care | CCCMS, EOP, GP, MHCB, OHU, MH-OHU |
| 7 | Date of current LOC | Date admitted to current level of care (mm/dd/yyyy) | Indicate IDTT chrono date when patient was made current level of care (when made EOP, CCCMS etc.) | Date (mm/dd/yyyy) |
| 8 | DSM IV Diagnosis Code | Enter DSM IV Axis I Diagnosis Code | Enter primary Axis I diagnosis that meets DMH admission criteria and listed on IDTT Screening Checklist | Text/Alpha |
| 9 | IDTT Summary #(s) met | Insert the "Yes" checked numbers on IDTT Screening Checklist. Criteria; numbers are taken from 7388-IDTT Summary Checklist. #,#,# (no spaces) | Use as many of the following criteria as are appropriate for the case: | Insert each number separated by a comma. Do not put any spaces between any of the entries, i.e., #,#,#,#, |
| | | | 1) As a result of the major mental disorder, the inmate is unable to adequately function within the structure of the CDCR EOP Level of Care. | |
| | | | 2) The I/P requires highly structured in-patient psychiatric care with 24-hour nursing supervision due to a major mental disorder; serious to major impairment of functioning in most life area; stabilization or elimination of ritualistic or repetitive self-injurious/suicidal behavior; or stabilization of refractory psychiatric symptoms. | |
| | | | 3) The I/P would benefit from a comprehensive treatment program with an emphasis on skill (i.e. coping, daily living, medication compliance) development with increased programming and a structured treatment environment. | |
| | | | 4) The I/P demonstrates chronic psychiatric symptoms (disturbed emotions, perceptions, thought processes, and/or impaired cognitions) that have not responded sufficiently to at least 6 months of treatment to a degree that facilitates adequate levels of functioning. | |
| | | | 5) I/P has less than 50% overall cooperation/participation with programming and/or the treatment plan during the last 3 months (i.e. mental health issues substantially affect ability to actively participate in treatment, the I/P is noncompliant with medication, etc.). | |
| | | | 6) For Custody: the inmate has incurred three (3) or more Rules Violation Reports during the last three (3) months. | |
| | | | 7) The I/P needs comprehensive assessment for diagnostic clarification (only available at ASH, PSH, and VPP). | |
| | | | 8) The I/P meets criteria for referral for a trial of Clozapine. | |

Version: 4-15-2010

Department of Mental Health Referral Log Tutorial

| Item Number | Field Header (Rows 4 & 5) | Field Header (Row 1) | Instructions | Options for field |
|---|---|---|---|---|
| | | | 9) The I/P had three (3) or more admissions to a MHCB during the last six (6) months. (Include MHCB admissions if the I/P paroled and returned during the last six (6) months. | |
| | | | 10) The I/P has been in a MHCB for ten (10) or more days for clinical issues, i.e. the I/P is not yet stabilized. | |
| 10 | DMH facility and LOC | DMH facility and level of care to which I/P is referred | Choose DMH facility and the correct level of care patient requires, i.e. acute, intermediate; note that CSH is not a choice as DMH makes the decision to transfer a patient to CSH | ASH-ICF, PSH-ICF, SVPP-ICF, VPP-ICF, VPP-APP |
| 11 | IDTT Referral Date | IDTT referral date  (mm/dd/yyyy) | Indicate date referral was identified by IDTT (should be on IDTT form) | Date (mm/dd/yyyy) |
| 12 | Placement Score | Placement Score (Custody Score) | Placement score and custody score is same. Indicate - see Custody Counselor for questions | Enter the placement score in a numeric form (put in custody points, DO NOT put in Level I, II, III or IV) |
| 13 | Current custody level | I/P's current custody level | Indicate current custody level | CLOSE A, CLOSE B, MAX, MED A, MED B, MIN A, MIN B, UNCL |
| 14 | Current housing | Current type of housing (Ad Seg, SHU, etc) | Indicate where I/P is currently housed; if I/P is currently at DMH, give last housing before being admitted to DMH | ASU, CCCMS, EOP, GACH, GP, MHCB, MH-OHU, OHU, PSU, RC, SHU |
| 15 | SNY Status? | Indicate whether or not I/P is SNY | Indicate whether or not the I/P is currently SNY | Yes, No |
| 16 | Date DMH Coordinator signed | Date referral package completed and signed by DMH Coordinator (mm/dd/yyyy) | This is the date that the referral has been approved by the DMH coordinator and is ready to go out to HQ for ICF or DMH for APP | Date (mm/dd/yyyy) |
| 17 | Date sent | Date referral package left institution or sent to DMH or Headquarters (mm/dd/yyyy) | | Date (mm/dd/yyyy) |
| 18 | 2+ or 5+ or 10+ days? | Did more than 5 working days for ICF or 2 days for APP or 10 days if Vitek needed pass between "IDTT Date" and "Date Sent"? | Referral package is to be completed in 2 working days if APP referral, 5 working days if ICF referral and 10 if Vitek hearing is required. Answer yes or no if time frame was met. | Yes, No |
| 19 | If yes, why | If Column 19 yes, enter reason | If time frame in question 18 was not met, enter reason (narrative) | Free text with a 250 character limit |
| 20 | Accept or Reject | Did DMH accept or reject referral? | | Accept, Reject |
| 21 | Date of acceptance or rejection | Date referral packet accepted or rejected by DMH (mm/dd/yyyy) | | Date (mm/dd/yyyy) |
| 22 | Wait listed? | Was I/P placed on a wait list by DMH? | Indicate once I/P was accepted by DMH if was placed on a wait list | Yes, No |
| 23 | Reason for rejection | If rejected, reason(s) | Enter narrative reason given by DMH for rejection of referral (automatic CCAT) | Free text with a 250 character limit |
| 24 | Date CCAT conducted | If rejected, date CCAT conducted (mm/dd/yyyy) | | Date (mm/dd/yyyy) |
| 25 | Result of CCAT appeal | What was the result of the CCAT appeal? | Did CCAT support DMH's rejection of the referral? Pending is for request of additional information. | Rejection Supported, Referral Accepted by DMH, Rejection Not Supported, Pending |
| 26 | Results appealed | Results of appeal that CCAT did not support (final level of appeal) | Question is asking if CCAT referred case to final level of appeal if CCAT did not support DMH rejection and what the results of the final level of appeal were | Appeal not Submitted, Rejection Supported, Rejection Not Supported |
| 27 | Parole or discharge? | Did I/P parole or discharge from CDCR during DMH process? | Indicate if patient paroles or discharges anytime during process | Yes, No |
| 28 | Date of parole or discharge | Date I/P paroled or discharged from CDCR (mm/dd/yyyy) | Indicate date if patient paroled or discharged from CDCR. Leave on log for 90 days for tracking purposes. | Date (mm/dd/yyyy) |
| 29 | Institution rescind? | Did the institution rescind the referral? | Use when CDCR determines need to cancel or rescind DMH referral. | Yes, No |
| 30 | Reason rescinded | Reason the institution rescinded the referral | Documentation of reason for cancellation or rescinding DMH referral is mandatory in UHR and on log; if other, specify reason in this column (briefly) | Paroled, Discharged, I/P Improved, Required Different LOC, Other (specify here) |
| 31 | Vitek Hearing Decision | Indicate outcome of VITEK Hearing | If I/P did not sign consent and VITEK hearing was held, indicate outcome of VITEK hearing | Consent Signed, Vitek Won, Vitek Lost |
| 32 | DMH facility and LOC assigned | DMH facility and level of care I/P will be assigned upon transfer to DMH | Once DMH formally accepts referral, what DMH facility and LOC was patient assigned when bed available | ASH-ICF, CSH-ICF, PSH-ICF, SVPP-ICF, VPP-ICF, VPP-APP |
| 33 | Date Bed/Admission Unit assigned by DMH | Date that Bed/Admission Unit assigned by DMH (mm/dd/yyyy) | Indicate the date a bed or admit unit was assigned by DMH (not the date the I/P is scheduled to transfer) | Date (mm/dd/yyyy) |

Version: 4-15-2010

Department of Mental Health Referral Log Tutorial

| Item Number | Field Header (Rows 4 & 5) | Field Header (Row 1) | Instructions | Options for field |
|---|---|---|---|---|
| 34 | Date of Endorsement or Authorization | Date inmate is endorsed or authorized to be transported by CDCR to DMH facility (dd/mm/yyyy) | | Date (mm/dd/yyyy) |
| 35 | Transfer date | Actual transfer date to DMH (mm/dd/yyyy) | Indicate the actual date the patient left CDCR for DMH | Date (mm/dd/yyyy) |
| 36 | More than 72 hours? | Was it more than 72 hours between DMH assigned date and actual transfer to DMH? (Subtract column 33 from column 34) | Program Guide dictates patient must be transported to DMH within 72 hours once DMH bed/unit assigned. Was timeframe met? | Yes, No |
| 37 | Receiving institution notified? | Did DMH Coordinator notify receiving institution of discharge from DMH? | Ensures continuity of care and tracking of I/P progress in process | Yes, No |
| 38 | CDCR institution transferred to | To what institution did inmate transfer to upon discharge from DMH | For tracking purposes, indicate what CDCR institution patient discharged to from DMH as may not be the same as patient originated from | AVE, CAL, CCC, CCI, CCWF, CEN, CIM, CIW, CMC, CMF, COR, CRC, CTF, CVSP, DVI, FOL, HDSP, ISP, KVSP, LAC, MCSP, NKSP, PBSP, PVSP, RJD, SAC, SATF, SCC, SOL, SQ, SVSP, VSPW, WSP |
| 39 | DMH discharge date | Date I/P discharged from DMH (mm/dd/yyyy) | Indicate discharge order date | Date (mm/dd/yyyy) |
| 40 | CDCR return date | Date I/P actually returned to CDCR upon discharge from DMH (mm/dd/yyyy) | Indicate actual date I/P left DMH | Date (mm/dd/yyyy) |
| 41 | Discharge LOC | Level of care to which I/P returned after DMH discharge | Indicate level of care (not housing) | CCCMS, EOP, GP, MHCB, OHU, MH-OHU |
| 42 | Comments | Additional Comment Field | | Free text with a 250 character limit |

## Non-Referral Log Tutorial

| Item Number | Field Header (Rows 4 & 5) | Field Header (Row 1) | Instructions | Options for field |
|---|---|---|---|---|
| 1 | Inmate's Last Name | Insert inmate's last name | | Text |
| 2 | Inmate's First Name | Insert inmate's first name | | Text |
| 3 | CDCR # | Insert current CDCR# (no spaces or hyphens) | Do not use spaces or hyphens | Text/Alpha |
| 4 | Current Housing at CDCR | Current type of housing (Ad Seg, SHU, etc) | Indicate where I/P is currently housed | ASU, CCCMS, EOP, GACH, GP, MHCB,  MH-OHU, OHU, PSU, RC, SHU |
| 5 | Current LOC | Current level of care (LOC) at CDCR institution, not housing needed | Indicate Mental Health level of care | CCCMS, EOP, GP, MHCB, OHU, MH-OHU |
| 6 | IDTT Summary #(s) met | Insert the "Yes" checked numbers on IDTT Screening Checklist. Criteria; numbers are taken from 7388-IDTT Summary Checklist. #,#,# (no spaces) | Use as many of the following criteria as are appropriate for the case: | Insert each number separated by a comma.  Do not put any spaces between any of the entries, i.e., #,#,#,#, |
| 7 | IDTT Date | IDTT Committee Date (mm/dd/yyyy) | Date the IDTT committee met and determined that the I/P did not need to be referred | Date (mm/dd/yyyy) |
| 8 | Reason for Non-Referral | Reason for Non-Referral (be specific) | Be specific and brief about the reason why the IP was not referred despite meetingone or more of the IDTT Criteria indicated in Column 6 | Free text with a 250 character limit |

Version: 4-15-2010

# EXHIBIT 4

CDCR-DCHCS -Mental Health
DRAFT 5-31-11

**Audit: Mental Health Internal Review for Higher Level of Care**

Institution: _____    Review Period (mm/yyyy): _____

Reviewer (Print Name/Title): _____

**Process Indicator - Data source DMH Referral log**

1. During the review period _____ referrals were made to DMH: _____ APP and _____ ICF: _____ % of APP referrals and _____ % of ICF referrals were completed within specified time frames and posted on SharePoint.

   If timelines were not met, explain: _____

   Standard: 100% of ICF referrals are submitted to UM-HQ within 5 working days of identification OR within 10 days of the Vitek hearing.
   100% of APP referrals are submitted to UM-HQ within 2 working days of identification or within 7 days of the Vitek hearing.

**Part II  Section A: Reason for Non-Referral.  Data source: DMH Non-Referral Log and the completed 7388-B.**

| | Inmate-Patient | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | Total Yes | Total No |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| a | Documentation supports non-referral to a higher level of care. | | | | | | | | | | | | |
| b | Additional interventions were documented to the treatment plan or an explanation provided to improve the I/P function. | | | | | | | | | | | | |

Enter Y, N or NA.

**Part II  Section B Corresponds to Screening Indicator's  6-7-8 and only applies to EOP level of care.  Data Source: DMH Non-Referral Log and the completed 7388-B.**

| | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | Total Yes | Total No |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 6a | Interventions were documented to increase I/P program participation to 50% or more. | | | | | | | | | | | | |
| 7a | Documentation provided rationale for not referring I/P to EECP services. | | | | | | | | | | | | |
| 8a | Rationale is documented for I/P EOP level of care stays for 365 days or more. | | | | | | | | | | | | |

**Part II  Section C:  Custody Issues  Corresponds to Screening Indicator 9.   Data Source:  DMH Non-Referral and RVR Log and completed 7388-B.**

| | | | | | | | | Total Yes | Total No |
|---|---|---|---|---|---|---|---|---|---|
| 9a | Documentation explained the rationale for not referring I/P to a higher level of care for 3 or more RVRs. | | | | | | | | 0 | 0 |

Combined Indicator %

#DIV/0!

Additional comments:

| I/P | CDCR # | IDTT Date | Level of Care | Housing Unit | | I/P | CDCR # | IDTT Date | Level of Care | Housing Unit |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | | | | | | 6 | | | | |
| 2 | | | | | | 7 | | | | |
| 3 | | | | | | 8 | | | | |
| 4 | | | | | | 9 | | | | |
| 5 | | | | | | 10 | | | | |

Comments

1 of 2
DRAFT 5-31-2011 -With Formulas

CDCR-DCHCS -Mental Health
DRAFT 5-31-11

**Instructions:  Audit:  Mental Health Internal Review for Higher Level of Care**

**I Audit Purpose:**

A.  The Audit:  Mental Health Internal Review for Higher Levels of Care process provides proof of practice that the California Division of Health Care Services (CDCR), Division of Correctional Health Care Services (DCHCS) – Mental Health providers are screening I/Ps who may require a higher level of care.

B.  No I/P is excluded from being referred to DMH.  A previous ICF admission does not preclude re-referral to an ICF program, nor does the length of the prior admission, how long the patient was admitted for, or the symptoms, preclude re-referral.

C.  The 7388-B does not drive a referral; rather, it is used to stimulate discussion about different alternatives and document that discussion.

D.  EOP inmates who demonstrate specific characteristics now have treatment alternatives not previously available to them.

E.  No one is excluded from being referred to DMH.

**II Methodology**

Note: Any "Yes" response(s) on the audit tool from Part II  Section A, B and C, requires entry of I/P name on either the DMH Referral or Non Referral log.

A.  Responsible Person:  Mental health clinician

B.  Frequency:  Monthly

C.  Reporting:  Monthly at the MH-QMC Subcommittee.
     Send portion of minutes pertaining to the Audit discussion and
     results to:  CDCR DCHCS DMH Referral Updates@CDCR
     Naming documents:  XXXX(inst)-MHQMC-June (month) 2011.
     Retain completed audit tools for proof of practice.

D.  Data Source:  Completed 7388-B, DMH Referral and Non-Referral Log.
     E.  Population/Sample Size:
        Process Indicator:  100 % of all inmates referred to DMH APP/ICF.
        Screening Indicators:  100% up to a maximum of 25 non-referrals
        randomly selected from the DMH Non-Referral Log.
        Include I/Ps currently in the MHSDS from all housing areas.
     F.  Calculate percentage:  On the audit tool calculate the percentage of all indicators combined.

**III Review and Completion of Audit Tool.**  The following instructions guide the reviewer in how to respond to the indicator.
Do not exclude 7388-Bs because they are incomplete.  In these situations the response would be entered as "No".

1.  Process Indicator:  Data source: DMH Referral Log.  Complete the requested information.
     If the APP and ICF referrals submission percentage was not 100% (timelines were not met), were reason(s) entered for the delay.
        Standard:  100 % of ICF referrals were submitted to UM-HQ within 5 working days of identification OR within 10 days of the Vitek hearing.  100% APP referrals referrals were submitted to UM-HQ within 2 working days of identification or within 7 days of the Vitek hearing.

**Part II  Section A  Corresponds to the 7388-B  "Reason for Non-Referral a. and b."  Data Source: DMH Non-Referral Log and the completed 7388-B.**
Corresponds to 7388-B,  Part II  Section A:  Data source: DMH Non-Referral Log and completed 7388-B.
a.  Select "NA" if the 1-5  Screening Indicators on the 7388-B  IDTT Screening Form Part II  Section A:  had all "No" Responses.
     Select "Y" if documentation explained the non-referral to a higher level of care.  Select  "N" if documentation was absent/incomplete.
b.  Select "NA" if the 1-5  Screening Indicators on the 7388-B  IDTT Screening Form Part II  Section A:  had all "No" Responses.
     Select "Y" if interventions or a plan was documented to improve the I/P ability to function.  Select  "N" if documentation was absent/incomplete.

**Part II  Section B  Corresponds to the 7388-B  Screening Indicator's  6a-7a-8a and only applies to EOP level of care.  Data Source: DMH Non-Referral Log and the completed 7388-B.**
**6a  Corresponds to 7388-B Part II  Section B: "6a".**
   Select "NA" when the I/P is not at an EOP level of care or had greater than 50% participation in group.
   Select "Y" if interventions are documented that increase the I/P cooperation/participation with programming.
   Select "N" if there is no documentation/interventions documented.

**7a  Corresponds to 7388-B Part II  Section B: "7a".**
   Select "NA" when the I/P is not at an EOP level of care, did not meet any of the EECP clinical screening indicators or is a female I/P.
   Select "Y" if the I/P met the EECP clinical indicators and there was documentation to support non-referral to EECP services.
   Select "N" if there is no documentation or reason for non-referral to EECP services.

**8a  Corresponds to 7388-B Part II  Section B: "8a".**
   Select "NA" when the I/P is not at an EOP level of care or has not been in EOP level of care greater than 365days.
   Note:  365 days is defined as a continuous stay of 365 at CDCR.  A DMH admission starts the EOP length of stay count again upon return to CDCR  AND  a return from parole restarts the EOP count.
   Select "Y" if the I/P was at the EOP level of care for 365 days or longer and rationale was provided for the stay beyond 365 days.
   Select "N" if there is no documentation or reason for the stay beyond 365 days.

**Part II  Section C:  Corresponds to the 7388-B Screening Indicator "9a".  Data Source: RVR Logs and completed 7388-B.**
**9a  Corresponds to 7388-B Part II  Section C: "9a".**
   Select "NA" when the I/P did not have more than 3 RVRs in the last 3 months.
   Select "Y" if the I/P had more than 3 RVRs and documentation supported the non-referral to a higher level of care.
   Select "N" if there is no documentation or reason for the non-referral.

**Additional comments:**
In this section enter  the CDCR number for I/Ps that are listed on the DMH Non-Referral log but are excluded from the audit.  Enter the reason for exclusion e.g. UHR excluded due to  transfer to another facility or OTC.
Never use "UHR not available" as a reason for excluding the I/P for review.

2 of 2
DRAFT 5-31-2011 -With Formulas

# EXHIBIT 5

# Division of Correctional Health Care Services

## Operational Definitions for CDCR Mental Health's Review of New 7388-B Form

The two labels "good" and "unacceptable" were used to describe the quality of documentation for the 7388-B.

"Good" means that the documentation adequately supports the decision to not refer the inmate-patient to DMH in spite of the fact that one of the three identified ICF Checklist indicators is met. In order to qualify as "adequately supporting the decision," the 7388-B must *include specific treatment interventions designed to remediate the criteria.*

"Unacceptable" means that one of the three identified indicators is checked but the explanation for not referring to ICF or APP is deficient in some way: there is no explanation, the explanation is too vague, or the explanation fails to provide rationale for not referring the inmate-patient given his or her behaviors that led to that indicator being checked.

"Unacceptable" may also include situations where the IDTT provides an explanation for not referring the inmate-patient, but there is no description of what treatment is being provided to the inmate-patient for the clinical issues that relate to the indicator.

Examples of "good" documentation:

"Inmate-patient's multiple MHCB admissions are related to his not wanting to cell with others. He is fearful that he will be assaulted. Working with inmate-patient on problem solving skills and communication so that he may attempt to solve the problem with his cell mate or the officers on the block. Also, after a recent medication change, the inmate-patient appears less paranoid and is willing to pick out a new cell mate upon being discharged from the CTC."

"Inmate-patient's multiple MHCB admissions are due to boredom on the weekends and he has been referred to the PBST program to help him identify things to do when he is restless and bored. So far, he has not been to a MHCB for three consecutive weekends, which is a significant improvement. Also, the treatment plan is to enroll inmate-patient in a music group if he continues to stay on the block over the weekends."

"Inmate-patient does attend more than 50% of offered programming. Data entry errors into MHTS.net incorrectly identified this inmate-patient as meeting this indicator."

"Inmate-patient does not attend groups because he stated that they are 'too boring.' The treatment plan includes addressing reasons for resistance for treatment of mental health issues. Additionally, the inmate-patient has been assigned to more motivating groups and is on an incentive program to receive drawing material in his cell when he attends groups."

Additional examples of appropriate documentation:

- The inmate-patient demonstrates symptoms indicative of acute psychological distress and has therefore been referred to APP as opposed to ICF. Clinician will continue to monitor for future ICF referral.
- Due to the nature of the IPs identified diagnosis, it is contraindicated to refer to DMH at this time. The 7388-B explains why it is contraindicated.
- The inmate-patient has recently begun the Start Now program (DBT program). Referral to ICF will be reconsidered depending on his progress in this program.
- The inmate-patient has had a recent medication change which may positively impact programming and symptoms. Treatment team will reevaluate progress and criteria met for ICF at the next IDTT.
- The inmate-patient has recently been enrolled in the Positive Behavioral Support Team program (PBST). A detailed behavioral plan has been created to address each indicator met on the checklist. No ICF referral will be made at this time pending his PBST progress. ICF referral will be reevaluated at the next IDTT.
- A comprehensive treatment plan has been put into place to increase program participation and the 7388-B references where the plan can be found in the eUHR.
- Although the inmate-patient has had 3 or more RVRs during the last 3 months they do not appear to be precipitated by mental health factors. Please see RVR assessments completed by _____ (clinician) on _____ (date).  And the 7388-B references where in the  treatment  plan the IDTT is addressing problematic Axis II or characterological issues.
- The inmate-patient has had 3 admissions to MHCB (or OHU) in the last 6 month.  Admissions appear to be largely driven by _____ (secondary gain, axis II etc). The treatment team has developed a plan to address this issue.  And the 7388-B cites where the plan can be found in the UHR.
- The inmate-patient has been in the CTC for more than 10 days due to medical not psychiatric reasons.

Examples of "unacceptable" documentation:

- A blank space.
- "Inmate-patient is stable."
- "Inmate-patient is at baseline."
- "IDTT referred him this week."
- "Refusals due to Axis II issues."
- "Inmate-patient is malingering to get out of cell, MHCB admissions not due to Axis I issues."
- "Multiple RVR's are due to antisocial behavior not an Axis I dx."
- "Encouraging inmate-patient to attend group."

# EXHIBIT 6



# DMH ICF Referrals Received by Year/Month/Institution
### for :December 2010-November 2011

| | Dec | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ASP | 0 | 2 | 0 | 2 | 0 | 3 | 1 | 0 | 2 | 1 | 2 | 1 |
| CCI | 1 | 0 | 0 | 3 | 1 | 0 | 3 | 1 | 1 | 3 | 1 | 2 |
| CIM | 11 | 9 | 12 | 17 | 5 | 6 | 8 | 13 | 24 | 10 | 7 | 6 |
| CMC | 5 | 9 | 10 | 10 | 11 | 14 | 23 | 10 | 11 | 16 | 27 | 18 |
| CMF | 2 | 9 | 9 | 9 | 8 | 3 | 7 | 8 | 13 | 12 | 7 | 9 |
| COR | 0 | 0 | 2 | 1 | 0 | 2 | 1 | 2 | 0 | 0 | 1 | 2 |
| CSP | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| CRC | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| CTF | 0 | 1 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| DVI | 0 | 2 | 4 | 2 | 3 | 4 | 5 | 0 | 2 | 2 | 2 | 5 |
| HDSP | 1 | 0 | 1 | 1 | 0 | 0 | 1 | 1 | 1 | 0 | 1 | 0 |
| KVSP | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 2 | 3 | 1 |
| LAC | 5 | 2 | 3 | 3 | 2 | 4 | 1 | 3 | 4 | 4 | 9 | 7 |
| MCSP | 9 | 0 | 4 | 4 | 2 | 0 | 2 | 0 | 1 | 2 | 3 | 1 |
| NKSP | 0 | 1 | 0 | 5 | 0 | 1 | 2 | 1 | 1 | 2 | 4 | 2 |
| PBSP | 5 | 6 | 6 | 3 | 4 | 1 | 2 | 3 | 3 | 0 | 4 | 3 |
| RJD | 2 | 1 | 2 | 16 | 7 | 8 | 7 | 11 | 10 | 9 | 16 | 4 |
| SAC | 5 | 0 | 7 | 0 | 3 | 5 | 3 | 11 | 9 | 5 | 4 | 3 |
| SATF | 4 | 0 | 4 | 0 | 1 | 4 | 2 | 0 | 1 | 2 | 3 | 3 |
| SOL | 1 | 2 | 1 | 0 | 0 | 0 | 1 | 0 | 0 | 2 | 0 | 1 |
| SQ | 4 | 4 | 3 | 6 | 5 | 4 | 4 | 8 | 4 | 2 | 2 | 3 |
| SVSP | 2 | 2 | 4 | 1 | 2 | 3 | 1 | 0 | 2 | 6 | 3 | 0 |
| WSP | 6 | 7 | 6 | 4 | 6 | 5 | 5 | 7 | 9 | 2 | 6 | 2 |
| Total | 64 | 57 | 79 | 87 | 61 | 67 | 79 | 80 | 98 | 82 | 105 | 73 |

**Average number of referrals received per month= 78**

# EXHIBIT 7

State of California                                   California Department of Corrections and Rehabilitation

# Memorandum

Date    :    OCT 12 2011

To      :    Chiefs of Mental Health

Subject :    **VERSION 3 OF THE MHTS-UHR AGREEMENT AUDIT**

As an outcome of discussions with the *Coleman* court representatives, the Mental Health Tracking System-Unit Health Record (MHTS-UHR) Agreement Audit procedure, sent out on September 22, 2011 has been revised.  Changes are reflected in attachment A.

Below is a summary of all of the changes made to the procedure:

1. Page 3, section 2a, vii & viii –instructions for filtering out "gp" inmates in the MHTS.net's "housing roster" report added.
2. Page 4, section 2d – instructions for excluding appointments for discharges from the MHCB during the audit time frame added.
3. Page 4, section 3 – excludes group, Psychiatric Technician rounds, five-day follow-up, and non-encounters from the audit.
4. Page 6, section 3, i & j – instructions added to compare appointments from MHTS.net to the UHR/eUHR.
5. Attachment C – revised to include data entry of appointments in MHTS.net that are not in UHR/eUHR.

As a reminder, all Chiefs of Mental Health are responsible for designating a staff member to conduct agreement audits.  The results from this task must also be reported in your monthly Mental Health Quality Management Subcommittee meetings so that QITs can be developed for identified problems.

All institutions MUST follow the instructions of this audit procedure EXACTLY. This audit procedure shall be used for all audits conducted in November (due November 15) and each month thereafter.

As indicated in the Agreement Audit instructions (Attachment A), completed audits shall be sent via e-mail, to Pradeep Goel, Associate Health Program Adviser, Quality Management Unit (QMU), to Pradeep.Goel@cdcr.ca.gov and courtesy copy to Ceballos, Ph.D. Chief Psychologist, Quality Management at Laura.Ceballos@cdcr.ca.gov.  If you have any questions or need any additional information, you may contact Dr. Ceballos, at (916) 445-0527.

CDC 1617 (3/89)

Chiefs of Mental Health
Revised MHTS-UHR Agreement Audit
Page 2


JAMES A. SCARAMOZZINO PH.D.
Deputy Director (A), Statewide Mental Health Program
Division of Correctional Health Care Services

Attachments

cc:     Chief Executive Officers
        Laura Ceballos, Ph.D.
        Regional Directors of Mental Health
        Barbara Watson, Health Program Specialist I, QMU
        Brian Six, Associate Government Program Analyst QMU
        Pradeep Goel, DrPH, MBBS, Associate Health Program Adviser, QMU

# Agreement between UHR and MHTS.Net

**Purpose of QIT for UHR/MHTS.Net Agreement:**

1. Unit Health Record (UHR) is a **legal document** for the mental health program. It documents the services and treatment provided to inmate-patients. Legally, if it's not in the UHR, it didn't happen.

2. For MHTS.Net to be deemed valid for tracking all mental health services provided, the appointments tracked in MHTS.Net NEED to match up to the documentation of contact (CDCR Form) in the UHR.

3. MHTS.Net is currently the main database to assess and track mental health services provided statewide and will be used by Mental Health Headquarters and institutional Mental Health Managers.

4. The *Coleman* Special Master has indicated that the agreement between the UHR and MHTS.Net will be **a significant area of focus** in all future site visits.

5. During a *Coleman* Site Visit, if monitors find disagreement between the UHR and the MHTS.net, institutional Mental Health Programs will be able to refer the monitors to the results of the QIT and/or corrective action plan, as a demonstration of our proactive attempts to deal globally with the disagreement issue.

**The goal of this QIT:**
To achieve a 90% agreement rate between MHTS.net and the UHR.

| IF agreement is | Then the institution shall |
|---|---|
| 90% or better | e-mail the audit results to Pradeep Goel at pradeep.goel@cdcr.ca.gov, and cc Laura Ceballos at laura.ceballos@cdcr.ca.gov by the 15th of each month and is not required to send a corrective action plan to headquarters. |
| 89% or less | develop a local QIT and submit the corrective action plan to Pradeep Goel, via e-mail at pradeep.goel@cdcr.ca.gov, and cc Laura Ceballos at laura.ceballos@cdcr.ca.gov by the 15th of each month for the previous month's data. |

**This audit allows us to:**
Determine the validity of MHTS.net as a true indication of completed appointments based on the assumption that the UHR is the true record of actual appointments.

Attachment A

**Agreement Procedure:**

1. Sample size:

   a. Using MHTS.net, determine the number of appointments for your program during the audit month.
      
      i. Open MHTS.net.
      
      ii. from the "reports menu", select "appointments closed".
      
      iii. In "report parameters", select the dates of the audit month.
      
      iv. Click "open report."
      
      v. Your total appointments for the month will be on the right side of the screen.

   b. Using Attachment B, "Sample Size Tables," determine how many appointments must be audited. We are using a 10% precision rate (this column has been highlighted for you.)

   c. Find the number that coincides with the number of appointments in MHTS.net under the "population" column of Table 1 or 2 on Attachment "B." If your institution's population size is in between the numbers on the list, use standard rounding rules (i.e. if you have 7,500 appointments, round up to 8,000 on the list – so you would audit 99 appointments).

   d. Look to the right of the population size at the highlighted section (listed under the $\pm$10% column). This is the number of appointments that must be audited.

   • Note that the numbers of appointments audited may differ slightly each month as this number is dependent upon the number of appointments at your institution each month. A sample from the entire mental health population at each institution must be audited each month.

   • Note the number determined according to following the table is the total required number of appointments to be audited for all programs combined. EXAMPLE: If you have 7,500 appointments, as in the example above, and three programs, you would have to audit a total of 99 appointments for the entire institution. If you elect to conduct your audits by program, you would need to determine the percentage of appointments for each program (for example, if you have 7,500 appointments and have to audit a total of 99 appointments and you have 2,500 appointments in ASU, 3,000 in EOP, and 2,000 in CCCMS, you would divide each of these by 7,500 and would get .333, .400, and .266, then multiply each of these numbers by 99 to determine how many patient records must be audited per program. In this case you would end up with 32.9, 39.6, and 26.3. To ensure you meet your requirement of 99 appointments, you would audit 33, 40, and 26 appointments in each program).

   <u>Note:</u> Institution auditors can choose the institution wide or program specific approach to auditing but MUST use the same method for every audit. If the program specific approach is used, every program must be included in the audit every month. Data will be entered for each program in

the audit worksheet (Attachment C) separately, and summarized in the "summary" tab. New tabs can be added as needed to accommodate all of your programs. If institution wide approach is used, all data would be put into the "program one" tab and summarized in the "summary" tab.

2. Create a random list of inmate-patients:
   a. Use MHTS.net to obtain a list of current MHSDS Inmates at the institution.
      i. Open up MHTS.Net
      ii. Go to the Reports Menu
      iii. Select "housing roster" report
      iv. Leave "report parameters" blank
      v. Click "Open Report"
      vi. Click "LOC".
      vii. Click "=", select "does not contain"
      viii. Double click box to left of "=" sign, write gp.
      ix. Push "enter".

   b. Save the list – export the list to excel and save it in excel format. Because we are auditing data from two months prior to the current month and MHTS.net does not generate a list of inmate-patients in each program retroactively, you must save the report for each month so you can use the list that corresponds with the month of data being collected.

   EXAMPLE: You are conducting your October audit. The appointments you audit in October are from August. If you don't have August's inmate patient list saved, you will have to use the current (October) information which means some patients may no longer be at your institution. For this month and any other month in which you do not have the patient list that corresponds to the month being audited, you will have to do some research on inmates with no appointments during that month to find out if they were at your institution during that time (see "d" below). However, for your December audit, you should have October's list saved (the month you will audit in December) and can use it to ensure all inmates on the list for that month were in fact at the institution during that time.

   Note: For "program specific" audits, you will need to filter for each program and then follow the instructions for randomization. To filter by program in MHTS.net: On the "housing roster" screen, below the "program" column, click on the = button, select equals, and then to the right of the button write in the name of the program to filter for. You will need to repeat this step and the randomization steps below for every program.

   c. Randomly select appointments. Using the excel spreadsheet generated in step 2a above:
   *Steps iii – xi adapted from: (http://www.uwec.edu/help/Excel07/randomdata.htm).*

Attachment A

i.    Add two columns to the beginning of the excel spreadsheet by right clicking on column "A" and selecting "insert".

ii.    In column "A" select the rows of data in which you would like a random sample, excluding cell A1. For Example: If your data vertically spans 390 rows, select cells A2 through A390, but do not highlight the title cell A1.

iii.    In the "formula" (fx) text box, type: =RAND() and push control + enter. Excel will generate random numbers in column "A".

iv.    Copy the numbers in column "A" and paste them in column "B". The numbers will change.

v.    Delete column "A".

vi.    Select all data except for title boxes.

vii.    From the "data" tab in excel, select "sort".

viii.    In the "sort by" menu, select column A. In the "orders" menu, select "smallest to largest" and click okay.

ix.    Your list is now in random order. Now begin your audit with the first name on the list, *excluding cancelled appointments* (from the statewide reason code column) and audit each appointment until you obtain enough records to achieve your required sample size.

Note: these instructions are for excel 2007

d. For the first two months of the audit, you will be required to use current patient rosters for previous month's data. This may result in patients being randomly selected for the audit who were not in your program during the month in which the data is being audited. If you discover an inmate on your list had no appointments listed in MHTS.net during the audit month, check and see if he/she was at your institution during that month. If the answer is "yes", include him/her in your audit. If the answer is "no", exclude him/her from your audit and move down your list to the next inmate.

Note: If an I/P was discharged from the MHCB during the two weeks that would be audited, skip the MHCB appointments. Staff has up to 14 days to complete the MHCB record [22 CCR § 77143 (g)] so documentation wouldn't be in the UHR/EUHR in this circumstance.

3.    Utilizing MHTS.net and the UHR/eUHR, Compare all completed appointments for each inmate-patient on your list *excluding* group appointments, Psychiatric Technician rounds, five day follow up contacts, and non-encounters. When you come to these appointments on your list, simply skip them and move onto the next.

a. For CCCMS and Reception Center programs, audit appointments for each inmate for the entire month.

b. For all other programs, audit appointments for a two week period for each inmate. For the first inmate on your list (excluding CCCMS and RC), compare appointments for the 1st through the 15th of the month. For the second inmate

on your list, compare appointments for the 16th through the end of the month. For the third inmate on your list, compare appointments for the 1st through the 15th of the month, and so on.

c. Obtain the list of appointments for each inmate on your list utilizing the MHTS.net, "Appointments-Closed" report in the MHTS Front End and performing the following:

   x. Open MHTS.net.
   xi. Select "Reports" Tab.
   xii. Select "Appointments-Closed" Report.
   xiii. Enter the CDCR number for the inmate.
   xiv. Enter the date range from the month being audited.
   xv. Open the report.
   xvi. Filter for completed appointments. Click on "select/hide", uncheck "statewide outcome". Click on "apply". In the "statewide outcome" column, click on the "=" sign, on the drop down menu, select "contains" and in the box next to the drop down menu, write "completed."

d. Access the UHR/eUHR for each inmate on your list and look at the documentation in the UHR/eUHR simultaneously with the MHTS.net appointments list.

e. Compare every appointment in MHTS.net to documentation in the UHR/eUHR (as described above) for:

   i. Appointment Date: The date in MHTS.net MUST exactly match the form in the UHR/eUHR corresponding to that appointment.
   ii. Clinician Name: The clinician name on MHTS.net MUST match the clinician name on the form in the UHR/eUHR corresponding to that appointment.
   iii. Appointment type: Only forms listed on the "Appointment Documentation List" (Attachment D) are acceptable to count for each appointment type (i.e., you can NOT count a 7388 as documentation for an initial contact). Only ONE of the forms from the documentation list must be present for the appointment to "count" as a match.
   NOTE: The form itself only needs to be in the UHR/eUHR. In the MHTS.net Appointments-Closed report, it is the contact type and in the UHR/eUHR the documentation of that contact that matters; however, the form in the UHR/eUHR must be appropriate for the contact that is listed in the report.

Note: All items in i, ii, and iii above must match in MHTS.net and the patient record for the item to count as a "match."

f. Enter inmate CDCR number, appointment date, clinician name, and

appointment type separately for all appointments in columns b, c, d, and e of the audit sheet (attachment C).

NOTE: If the contact is recorded in the MHTS.net report, then use the appointment type from that report. If there is a document in the UHR/eUHR that is not in the MHTS.net report, then enter the appointment type from the form.

g. Enter a "1" in column "F" of the audit sheet (attachment C) indicating the appointment is in MHTS.net. All entries will have a "1" for this portion of the audit since you are starting with MHTS.net and looking for documentation of the appointment in the UHR/eUHR.

h. Enter a "1" in column "G" if the appointment is in the UHR/eUHR and matches on all three criteria as described in section e above. Enter a "0" if it is not present in the UHR/eUHR or all three criteria do not match.

i. Now Check for additional documentation of appointments in the UHR/eUHR. These are the appointments that were not in MHTS.net.

j. Mark a "0" in column "F" and a "1" in column "G" of the audit sheet (attachment C) for each appointment that is documented in the UHR/eUHR but is not in MHTS.net.

4. Determine agreement between MHTS.Net and the UHR/eUHR
   a. Check column "F" and "G".
   b. If the information you entered in both columns matches, mark a "1" in column "H".
   c. If the information in columns "F" and "G" don't match, mark a "0" in column "H".
   d. Add up the number of "1" items in column "H" and divide by the total number of appointments reviewed. This is your agreement rate for MHTS.Net and the UHR.

5. Submit your audit sheet to Pradeep Goel at pradeep.goel@cdcr.ca.gov and cc Laura Ceballos at laura.ceballos@cdcr.ca.gov, by the 15th of each month.

## Determining the Trend of Your UHR/MHTS.net Agreement

During the course of the audit, there will be several instances where the UHR and the MHTS.Net do not agree. These disagreement episodes will need to be reviewed for patterns and trends that persist over time. A corrective action plan shall be developed where the trend is persistently below our significant level (90%) of compliance.

Attachment A

1.  First create a system to trend your data over time. This can be accomplished via the development of graphs in excel or any other means determined by your Chief of Mental Health.
    a.  If the trend is rising from month to month, this is good; the actions you have taken to increase the reliability of agreement between the UHR and MHTS.Net are working.
    b.  If your most recent audit results are above the trend, even better.

2.  If your most recent audit results are lower than previous month's audits you must identify possible reasons for this:
    a.  Is this more or less an isolated incident or a fundamental change for the worse?
    b.  Is this an isolated event and:
        i.    you have a good explanation for the deterioration in agreement.
        ii.   is there a fix in place already?
        iii.  you expect the drop in agreement will self-correct?
        iv.   the reason might be the hiring of a new clinician or clerical staff who is entering the codes incorrectly.
        v.    these incidents may need to be monitored on an ongoing basis to ensure the fix works.
    c.  However, sometimes the drop in the rate of UHR/MHTS.Net agreement is indicating that the previously working procedure has been overcome by events and needs to be revised.
        i.    Most often these will be audit results that are persistently below your previous trend of audit results.
        ii.   To identify possible causes of the decreased rate, focus on the agreement piece that is missing.
              (1)  If the disagreement was due to an event in the MHTS.Net that was not supported by a UHR document, focus of breakdowns in writing and filing forms.
              (2)  If the disagreement was due to a UHR document that was not entered into the MHTS.Net, focus on the writing and entry of the tracking sheet.
              (3)  It will be useful to analyze the above data for variables such as location, custody housing level, clinician, etc.

**QIT Guidelines for Low Agreement Rate**

Each Chief of Mental Health is responsible for determining reasons for low agreement rate. Collecting and documenting data such as:

- Clinician name
- Date of entries
- Appointment type
- Program (i.e., CCCMS, MHCB, etc.)

will assist your program with determining the cause of low agreement rate; however, documenting details such as those noted above in your audit is up to the discretion of the Chief of Mental Health. For the methodology, you are ONLY required to indicate whether the information matches or not.

**Troubleshooting Low Agreement Rates**

➤ **Document in UHR but no entry in the MHTS.Net:**
  - There was a clinical appointment documented in the UHR that was not entered in MHTS.Net.
  - How does this happen?
    ○ The tracking sheet was not completed by the PC or psychiatrist.
      ▪ Most common for unscheduled inmate contacts where a tracking sheet had was not prepared by an OT in advance.
      ▪ Review the document to see if it appears to be an unscheduled or crisis contact.
    ○ The tracking sheet may have been lost or was never turned in.
      ▪ Tracking sheets often contain several appointments.
      ▪ If you have several disagreements from the same clinician on the same day, suspect that the entire tracking sheet never entered it into the MHTS.Net.
    ○ The tracking sheet was turned in but a data entry mistake was made inputting the tracking sheet.

➤ **Entry in MHTS.Net but no document in the UHR**
  - An entry in MHTS.Net may not be supported by a clinician note in the UHR.
  - These should be researched as a possible UHR filing problem or work not being turned in for filing; or a data entry error.)

**Sample Size Tables**

| Table 1. Sample size for ±3%, ±5%, ±7% and ±10% Precision Levels Where Confidence Level is 95% and P=.5. | | | | |
|---|---|---|---|---|
| Size of Population | Sample Size (n) for Precision (e) of: | | | |
| | ±3% | ±5% | ±7% | ±10% |
| 500 | a | 222 | 145 | 83 |
| 600 | a | 240 | 152 | 86 |
| 700 | a | 255 | 158 | 88 |
| 800 | a | 267 | 163 | 89 |
| 900 | a | 277 | 166 | 90 |
| 1,000 | a | 286 | 169 | 91 |
| 2,000 | 714 | 333 | 185 | 95 |
| 3,000 | 811 | 353 | 191 | 97 |
| 4,000 | 870 | 364 | 194 | 98 |
| 5,000 | 909 | 370 | 196 | 98 |
| 6,000 | 938 | 375 | 197 | 98 |
| 7,000 | 959 | 378 | 198 | 99 |
| 8,000 | 976 | 381 | 199 | 99 |
| 9,000 | 989 | 383 | 200 | 99 |
| 10,000 | 1,000 | 385 | 200 | 99 |
| 15,000 | 1,034 | 390 | 201 | 99 |
| 20,000 | 1,053 | 392 | 204 | 100 |
| 25,000 | 1,064 | 394 | 204 | 100 |
| 50,000 | 1,087 | 397 | 204 | 100 |
| 100,000 | 1,099 | 398 | 204 | 100 |
| >100,000 | 1,111 | 400 | 204 | 100 |
| a = Assumption of normal population is poor (Yamane, 1967). The entire population should be sampled. | | | | |

Attachment B

| Table 2. Sample size for ±5%, ±7% and ±10% Precision Levels Where Confidence Level is 95% and P=.5. | | | |
|---|---|---|---|
| Size of | Sample Size (n) for Precision (e) of: | | |
| Population | ±5% | ±7% | ±10% |
| 100 | 81 | 67 | 51 |
| 125 | 96 | 78 | 56 |
| 150 | 110 | 86 | 61 |
| 175 | 122 | 94 | 64 |
| 200 | 134 | 101 | 67 |
| 225 | 144 | 107 | 70 |
| 250 | 154 | 112 | 72 |
| 275 | 163 | 117 | 74 |
| 300 | 172 | 121 | 76 |
| 325 | 180 | 125 | 77 |
| 350 | 187 | 129 | 78 |
| 375 | 194 | 132 | 80 |
| 400 | 201 | 135 | 81 |
| 425 | 207 | 138 | 82 |
| 450 | 212 | 140 | 82 |

**Agreement Audit Sheet**

Institution:     John Q. Institution
Month/Year:   October 2011 Audit (August data)

| | CDCR # | Appointment Date | Clinician Name | Encounter Type | In MHTS.net? (0=no, 1=yes) | In Patient Record (EUHR/UHR)? (0=no, 1=yes) | MHTS and UHR agree? (0=no, 1=yes) |
|---|---|---|---|---|---|---|---|
| 1 | P12345 | 8/4/11 | Smith | PC-Routine | 0 | 1 | 0 |
| 2 | P12345 | 8/10/11 | Jones | Psy-Routine | 1 | 1 | 1 |
| 3 | P12345 | 8/14/11 | Smith | IDTT | 1 | 0 | 0 |
| 4 | P12345 | 8/16/11 | Jones | PC-Routine | 1 | 1 | 1 |
| 5 | | | | | | | |
| 6 | | | | | | | |
| 7 | | | | | | | |
| 8 | | | | | | | |
| 9 | | | | | | | |
| 10 | | | | | | | |
| 11 | | | | | | | |
| 12 | | | | | | | |
| 13 | | | | | | | |
| 14 | | | | | | | |
| 15 | | | | | | | |
| 16 | | | | | | | |
| 17 | | | | | | | |
| 18 | | | | | | | |
| 19 | | | | | | | |
| 20 | | | | | | | |
| 21 | | | | | | | |
| 22 | | | | | | | |
| 23 | | | | | | | |
| 24 | | | | | | | |
| 25 | | | | | | | |
| 26 | | | | | | | |
| 27 | | | | | | | |
| 28 | | | | | | | |
| 29 | | | | | | | |
| 30 | | | | | | | |
| Total | | | | | | | 2 |

Total number of encounters    4

Program 1

**Agreement Audit Sheet**

Institution:    John Q. Institution
Month/Year:    October 2011 Audit (August data)

| CDCR # | Appointment Date | Clinician Name | Encounter Type | In MHTS.net? (0=no, 1=yes) | In Patient Record (EUHR/UHR)? (0=no, 1=yes) | MHTS and UHR agree? (0=no, 1=yes) |
|--------|------------------|----------------|----------------|----------------------------|---------------------------------------------|-----------------------------------|
| 1 | | | | | | |
| 2 | | | | | | |
| 3 | | | | | | |
| 4 | | | | | | |
| 5 | | | | | | |
| 6 | | | | | | |
| 7 | | | | | | |
| 8 | | | | | | |
| 9 | | | | | | |
| 10 | | | | | | |
| 11 | | | | | | |
| 12 | | | | | | |
| 13 | | | | | | |
| 14 | | | | | | |
| 15 | | | | | | |
| 16 | | | | | | |
| 17 | | | | | | |
| 18 | | | | | | |
| 19 | | | | | | |
| 20 | | | | | | |
| 21 | | | | | | |
| 22 | | | | | | |
| 23 | | | | | | |
| 24 | | | | | | |
| 25 | | | | | | |
| 26 | | | | | | |
| 27 | | | | | | |
| 28 | | | | | | |
| 29 | | | | | | |
| 30 | | | | | | |
| Total | | | | | | 0 |

**Total number of encounters** | 0

Program 2



**Agreement Audit Sheet**

Institution: John Q. Institution
Month/Year: October 2011 Audit (August data)

| CDCR # | Appointment Date | Clinician Name | Encounter Type | In MHTS.net? (0=no, 1=yes) | In Patient Record (EUHR/UHR)? (0=no, 1=yes) | MHTS and UHR agree? (0=no, 1=yes) |
|---|---|---|---|---|---|---|
| 1 | | | | | | |
| 2 | | | | | | |
| 3 | | | | | | |
| 4 | | | | | | |
| 5 | | | | | | |
| 6 | | | | | | |
| 7 | | | | | | |
| 8 | | | | | | |
| 9 | | | | | | |
| 10 | | | | | | |
| 11 | | | | | | |
| 12 | | | | | | |
| 13 | | | | | | |
| 14 | | | | | | |
| 15 | | | | | | |
| 16 | | | | | | |
| 17 | | | | | | |
| 18 | | | | | | |
| 19 | | | | | | |
| 20 | | | | | | |
| 21 | | | | | | |
| 22 | | | | | | |
| 23 | | | | | | |
| 24 | | | | | | |
| 25 | | | | | | |
| 26 | | | | | | |
| 27 | | | | | | |
| 28 | | | | | | |
| 29 | | | | | | |
| 30 | | | | | | |
| Total | | | | | 0 | 0 |

Total number of encounters

Program 3



**Agreement Audit Sheet**

Institution: John Q. Institution
Month/Year: October 2011 Audit (August data)

| CDCR # | Appointment Date | Clinician Name | Encounter Type | In MHTS.net? (0=no, 1=yes) | In Patient Record (EUHR/UHR)? (0=no, 1=yes) | MHTS and UHR agree? (0=no, 1=yes) |
|---|---|---|---|---|---|---|
| 1 | | | | | | |
| 2 | | | | | | |
| 3 | | | | | | |
| 4 | | | | | | |
| 5 | | | | | | |
| 6 | | | | | | |
| 7 | | | | | | |
| 8 | | | | | | |
| 9 | | | | | | |
| 10 | | | | | | |
| 11 | | | | | | |
| 12 | | | | | | |
| 13 | | | | | | |
| 14 | | | | | | |
| 15 | | | | | | |
| 16 | | | | | | |
| 17 | | | | | | |
| 18 | | | | | | |
| 19 | | | | | | |
| 20 | | | | | | |
| 21 | | | | | | |
| 22 | | | | | | |
| 23 | | | | | | |
| 24 | | | | | | |
| 25 | | | | | | |
| 26 | | | | | | |
| 27 | | | | | | |
| 28 | | | | | | |
| 29 | | | | | | |
| 30 | | | | | | |
| Total | | | | | 0 | 0 |

**Total number of encounters**

Program 4

**Agreement Audit Sheet**

Institution: John Q. Institution
Month/Year: October 2011 Audit (August data)

| CDCR # | Appointment Date | Clinician Name | Encounter Type | In MHTS.net? (0=no, 1=yes) | In Patient Record [EUHR/UHR]? (0=no, 1=yes) | MHTS and UHR agree? (0=no, 1=yes) |
|---|---|---|---|---|---|---|
| 1 | | | | | | |
| 2 | | | | | | |
| 3 | | | | | | |
| 4 | | | | | | |
| 5 | | | | | | |
| 6 | | | | | | |
| 7 | | | | | | |
| 8 | | | | | | |
| 9 | | | | | | |
| 10 | | | | | | |
| 11 | | | | | | |
| 12 | | | | | | |
| 13 | | | | | | |
| 14 | | | | | | |
| 15 | | | | | | |
| 16 | | | | | | |
| 17 | | | | | | |
| 18 | | | | | | |
| 19 | | | | | | |
| 20 | | | | | | |
| 21 | | | | | | |
| 22 | | | | | | |
| 23 | | | | | | |
| 24 | | | | | | |
| 25 | | | | | | |
| 26 | | | | | | |
| 27 | | | | | | |
| 28 | | | | | | |
| 29 | | | | | | |
| 30 | | | | | | |
| Total | | | | | 0 | 0 |

Total number of encounters

Program 5

| Institution: | | | | | |
|---|---|---|---|---|---|
| Month/Year: | | | | | |
| Program | In MHTS.NET | In UHR | MHTS.NET and UHR Agree | Total Number of Encounters Audited | Agreement Percent |
| 1 | 0 | 0 | 2 | 4 | 50.00% |
| 2 | 0 | 0 | 5 | 5 | 100.00% |
| 3 | 0 | 0 | 0 | 0 | #DIV/0! |
| 4 | 0 | 0 | 0 | 0 | #DIV/0! |
| 5 | 0 | 0 | 0 | 0 | #DIV/0! |
| Total: | 0 | 0 | 7 | 9 | 77.78% |

SUMMARY

| Appointment Documentation List ||
|---|---|
| **Encounter Event in MHTS.Net** | **Documentation (CDCR Form) in UHR** |
| **Primary Clinician Contact** ||
| PC-Initial | 7230 MH Interdisciplinary Progess Note or 7386 Mental Health Evaluation, 7389 Mental Health |
| PC-Routine | 7230 MH Interdisciplinary Progess Note, 7386 Mental Health Evaluation, or 7389 Mental Health Brief Evaluation |
| PC-5DayF/U | Do Not Audit |
| PC-SpecialF/U | 7230-MH Interdisciplinary Progess Note |
| PC-Crisis | 7230-MH Interdisciplinary Progess Note or 7447 Suicide Risk Evaluation |
| PC-Unscheduled | 7230-MH Interdisciplinary Progess Note |
| PC-Therapy | 7230-MH Interdisciplinary Progess Note |
| PC-PreReleasePlanning | 7230-MH Interdisciplinary Progess Note |
| PC-Caseload Group | Do Not Audit |
| **Psychiatrist Contact** ||
| Psy-Initial | 7230-MH Interdisciplinary Progess Note or 7389 Mental Health Brief Evaluation |
| Psy-Routine | 7230-MH Interdisciplinary Progess Note or 7389 Mental Health Brief Evaluation |
| Psy-5DayF/U | Do Not Audit |
| Psy-SpecialF/U | 7230-MH Interdisciplinary Progess Note |
| Psy-Crisis | 7230-MH Interdisciplinary Progess Note |
| Psy-Unscheduled | 7230-MH Interdisciplinary Progess Note |
| Psy-MedNonComp | 7230-MH Interdisciplinary Progess Note |
| Psy-MedExpiration | 7230-MH Interdisciplinary Progess Note or 7389 Mental Health Brief Evaluation |
| Psy-Therapy | 7230-MH Interdisciplinary Progess Note |
| Psy-PreReleasePlanning | 7230-MH Interdisciplinary Progess Note |
| **IDTT** ||
| IDTT | 7230-MH Interdisciplinary Progess Note or 7388 Mental Health Treatment Plan |
| IDTT-Initial | 7388 Mental Health Treatment Plan |
| **Other Clinical Contact** ||
| Eval-115MH | CDCR 115-MH |
| Eval-MDO | MDO Written Evaluation |
| Eval-Other | Any Written Evaluation |
| Eval-PC3002 | PC 3002 Written Evaluation |
| Eval-Psych Testing | Written Psych Testing Evaluation |
| Eval-SVP | Written SVP Evaluation |
| Eval-Valdivia | Written Valdivia Evaluation |

| | |
|---|---|
| Eval-PC1203 | Written 1203.03 Evaluation |
| Screen-31 Item | CDCR128-MH1 |
| Screen-Group Admit | 7230-MH Interdisciplinary Progess Note |
| Screen-MedTx | 7230-MH Interdisciplinary Progess Note |
| Oth-ICC | CDCR 128C, 7230-MH Interdisciplinary Progress Note |
| Oth-MedNonComp | 7230-MH Interdisciplinary Progess Note, 7389-Brief Mental Health Evaluation |
| Oth-PreReleasePlanning | 7230-MH Interdisciplinary Progess Note |
| Oth-PreventAppointment | 7230-MH Interdisciplinary Progess Note |
| Oth-PreventWalkup | 7230-MH Interdisciplinary Progess Note |
| Oth-ReferralTriage | 7230-MH Interdisciplinary Progess Note |
| Oth-Rounds | Do Not Audit |
| Oth-SpecialF/U | 7230-MH Interdisciplinary Progess Note, 7230B-MH |
| Oth-Therapy | 7230-MH Interdisciplinary Progess Note |
| Oth-UCC | CDCR 128C, 7230-MH Interdisciplinary Progress Note |
| Oth-Unscheduled | 7230-MH Interdisciplinary Progess Note |
| Oth-Keyhea Hearing | CDC-MH 7363 Keyhea Initiation |
| GROUP | |
| Group-Process | Do Not Audit |
| Group-Psychoeducational | Do Not Audit |
| Group-RecTherapy | Do Not Audit |
| Group-SelfHelp | Do Not Audit |