KAMALA D. HARRIS
Attorney General of California
JONATHAN L. WOLFF
Senior Assistant Attorney General
JAY C. RUSSELL
Supervising Deputy Attorney General
DEBBIE J. VOROUS, State Bar No. 166884
DAVID E. BRICE, State Bar No. 269443
Deputy Attorneys General
  1300 I Street, Suite 125
  P.O. Box 944255
  Sacramento, CA 94244-2550
  Telephone: (916) 324-5345
  Fax: (916) 324-5205
  E-mail: Debbie.Vorous@doj.ca.gov
Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>                        Plaintiffs,<br><br>v.<br><br>EDMUND G. BROWN, JR., et al.,<br><br>                        Defendants. | 2:90-cv-00520 LKK JFM P<br><br>**UPDATE TO THE COURT RE: DEWITT, ESTRELLA, AND CENTRAL CALIFORNIA WOMEN'S FACILITY CONSTRUCTION PROJECTS** |

## I.    INTRODUCTION

The existing mental health bed plan must be reevaluated in light of Governor Brown's realignment program, which is dramatically reducing prison overcrowding and substantially improving prison conditions. In the first few months of realignment, the prison population has already decreased by over 11,000 inmates. The prison population drop is expected to continue, and it is significantly easing the demand for mental health care beds. Defendants remain committed to ensuring constitutionally sufficient beds for inmates with mental health needs. But

it would be irresponsible to fail to reassess the need for certain proposed construction projects, such as those at DeWitt Nelson and Estrella, that were deemed necessary long before realignment was enacted and implemented. The need for these projects should be reassessed in light of the shrinking prison population, as should the need for the office and treatment space project at the Central California Women's Facility (CCWF).

Defendants have kept the Special Master and Plaintiffs' counsel apprised of these developments. And Defendants understand that the Special Master has, in turn, kept the Court up to date as well. Defendants intend to proceed with reevaluating the bed plan transparently and in collaboration with the Special Master and Plaintiffs' counsel. Consistent with this approach, Defendants anticipate moving to modify the existing bed plan within the next sixty days.

## II.    BACKGROUND

Defendants' long-range mental health bed plan was adopted in two segments approximately two years ago, long before realignment was enacted. (Docket Nos. 3724, 3805, 3830.) The plan was based on the California Department of Corrections and Rehabilitation's Spring 2009 population projections. (Docket No. 3724 at 6.) Those projections indicated that more Enhanced Outpatient Program (EOP) beds were needed. The DeWitt Nelson, Estrella, and CCWF projects were all aimed at addressing this projected need:

- the DeWitt Nelson conversion project was planned to construct housing, office, and treatment space for 375 EOP general population beds and 50 EOP administrative segregation unit beds for male inmates;
- the Estrella conversion project was planned to convert existing housing, and construct office and treatment space, for 150 EOP general population beds and 40 EOP administrative segregation unit beds for male inmates; and
- the CCWF conversion project would have converted 70 existing housing unit beds to EOP general population beds and constructed office and treatment space to support 124 EOP general population beds for female inmates.

(Docket Nos. 3830; 3724–2 at 10, 53–55; 3805; 3761.)

///

But realignment has rendered the 2009 projections upon which the bed plan was based irrelevant. Those projections did not foresee realignment or the dramatic impact it would have on the prison population. Since October 1, 2011, when realignment went into effect, the prison population has shrunk by over 11,000 inmates. (Docket No. 4141 at 2:6–9.) The dramatic drop in population has allowed CDCR to almost entirely stop placing inmates in nontraditional housing such as gymnasiums and dayrooms where they were often triple-bunked. In September 2011, prior to realignment, there were over 6,000 nontraditional beds activated. By the end of January, CDCR will only have 380 nontraditional beds activated, and this number is expected to continue to drop in the coming months.[1] (*See* Ross Meier Declaration ¶¶ 2–3, Exs 1–2.)

Realignment has allowed the State to meet the first Three Judge Court benchmark in December 2011, and places the State firmly on track to meet the next benchmark in June 2012. (Docket No. 4141 at 4:1–11.) The January 10, 2012 statewide EOP census reflects a drop of 450 inmate-patients since October 5, 2011. (Vorous Decl. ¶ 2.) Consistent with these numbers, an October 2011 mental health bed needs study, which took realignment into account, shows that California Department of Correction and Rehabilitation's projected need for EOP beds has decreased by 1,168 beds in the male general population, 80 beds in the male administrative segregation population, and 102 beds in the female general population. (Docket No. 4139 at 7.)

### III.   UPDATE TO COURT

On January 3, 2012, Defendants provided updated activation schedules to the Special Master and Plaintiffs' counsel which reported that, in light of the significant reductions in the prison population that are occurring, the State is not willing, at the present time, to proceed with the Dewitt Nelson and Estrella projects, and that the CCWF project is being reevaluated as well. (Decl. Vorous ¶ 3–5 Exs. 1–3.)[2] Two days later, the Governor introduced his proposed budget,

/ / /

---

[1] In August 2007, there were approximately 19,618 nontraditional beds activated. (Meier Decl. ¶ 3 Ex. 2.)

[2] As a practical matter, the Estrella project has been stalled since April 2011 when the Joint Legislative Budget Committee notified CDCR that it could not support the project in light of the potential impact of the Governor's then proposed realignment legislation. (Vorous Decl. ¶ 4, Ex. 2.)

3

DEF.S' UPDATE TO COURT RE: DEWITT, ESTRELLA, AND CCWF  (2:90-cv-00520 LKK JFM P)

which reflects the cancellation of the DeWitt and Estrella projects.  (*See* http://www.ebudget.ca.gov/pdf/BudgetSummary/ CorrectionsandRehabilitation.pdf at p. 127.)

As the Court has recognized, revisions to the long-range mental health bed plan should be considered if warranted by a change in the inmate population.  (Docket No. 3761 at 3:15–18.)  The significant population decreases that are occurring under realignment warrant reevaluation of the bed plan.  Defendants intend to proceed with this reevaluation process transparently and collaboratively with the Special Master and Plaintiffs' counsel.  Within the next sixty days, Defendants expect to move to modify their bed plan so that it reflects the mental health treatment needs of CDCR's changing prison population.

Dated: January 11, 2012

Respectfully Submitted,

KAMALA D. HARRIS
Attorney General of California
JAY C. RUSSELL
Supervising Deputy Attorney General

/s/ Debbie J. Vorous

DEBBIE J. VOROUS
Deputy Attorney General
*Attorneys for Defendants*

CF1997CS0003