| | |
|---|---|
| PRISON LAW OFFICE<br>DONALD SPECTER, Bar No. 83925<br>STEVEN FAMA, Bar No. 99641<br>ALISON HARDY, Bar No. 135966<br>SARA NORMAN, Bar No. 189536<br>REBEKAH EVENSON, Bar No. 207825<br>1917 Fifth Street<br>Berkeley, CA 94710<br>Telephone: (510) 280-2621 | ROSEN, BIEN & GALVAN, LLP<br>MICHAEL W. BIEN, Bar No. 96891<br>JANE E. KAHN, Bar No. 112239<br>ERNEST GALVAN, Bar No. 196065<br>LISA ELLS, Bar No. 243657<br>315 Montgomery Street, 10th Floor<br>San Francisco, California 94104<br>Telephone: (415) 433-6830 |
| THE LEGAL AID SOCIETY –<br>EMPLOYMENT LAW CENTER<br>CLAUDIA CENTER, Bar No. 158255<br>600 Harrison Street, Suite 120<br>San Francisco, CA 94107<br>Telephone: (415) 864-8848 | BINGHAM, McCUTCHEN, LLP<br>WARREN E. GEORGE, Bar No. 53588<br>Three Embarcadero Center<br>San Francisco, California 94111<br>Telephone: (415) 393-2000 |

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURTS

FOR THE EASTERN DISTRICT OF CALIFORNIA

AND THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>        Plaintiffs,<br>vs.<br>ARNOLD SCHWARZENEGGER, et al.,<br><br>        Defendants | No. Civ S 90-0520 LKK-JFM P<br>**THREE-JUDGE COURT**<br><br>**PLAINTIFFS' MOTION FOR AN ORDER REQUIRING DEFENDANTS TO DEMONSTRATE HOW THEY WILL ACHIEVE THE REQUIRED POPULATION REDUCTION BY JUNE 2013** |
| MARCIANO PLATA, et al.,<br><br>        Plaintiffs,<br>vs.<br>ARNOLD SCHWARZENEGGER, et al.,<br><br>        Defendants | No. C01-1351 TEH<br>**THREE-JUDGE COURT** |

## INTRODUCTION

Defendants have failed to inform the Court that the State's own population projections show that it will fail to achieve the court-ordered crowding reduction by June 2013. The Court should order Defendants to augment their March 15, 2012, Status Report to include detailed projections for the population of the 33 prisons through June 2013, and to demonstrate how they will achieve the court-ordered crowding reduction.

## BACKGROUND

The Court's January 12, 2010, Order requires the State to reduce its prison population to no more than 137.5% of design capacity (a total population of just under 110,000) by June 27, 2013. Jan. 12, 2010 Order at 4. It also orders the State to achieve interim reductions every six months – to 167% of design capacity by December 27, 2011; 155% of design capacity by June 27, 2012, and to 147% of design capacity by December 27, 2012. *Id*. The Supreme Court affirmed that order.

Although the State has met its first six-month benchmark, and it expects to meet the second six-month benchmark in June 12, 2012, the State projects that it will *fail* to meet the final June 2013 deadline.

On November 12, 2009, Defendants submitted a proposed plan to the state to reduce the prison population to 137.5% of capacity in two years. On June 6, 2011, Defendants informed the Court that they had revised their plan, and that they would accomplish the population reduction primarily through Assembly Bill 109 (often referred to as "realignment"), as well as through diversion and credit earning adopted in Senate Bill 18XXX, and construction. Def's June 6, 2011 Status report at 4-6

On September 8, 2011, the State issued its Fall 2011 Population Projections, estimating that with the population reduction methods it has adopted thus far (primarily AB 109 and SB 18), the total population of the 33 adult prisons on June 30, 2013, will be more than 116,000

prisoners – more than 6,000 higher than the population level ordered by the Court.[1]  The State does not estimate it will *ever* achieve a population of 137.5% of capacity.  Austin Decl., ¶5.

The shortfall will be far higher if, as Defendants intend, the State "reduce[s] the number of out-of state inmates." Def's June 7, 2011 Status Report at 5.  Currently, there are just under 9,400 prisoners in out-of state facilities.[2]  If those prisoners are returned to California, the State will need to adopt additional methods to reduce the prison population by approximately 16,000.

Although population projections are not an exact science, the State's Fall 2011 Population Projections have already proven to be very accurate, based on the population changes that occurred between October 1, 2011 and January 31, 2011.  Austin Decl., ¶7.  The State expects to publish its Spring 2012 Population Projections in February 2012.  Def's Jan. 6, 2012 Status Report at 4.

Defendants have never advised the Court that they expect that the current population reduction efforts will fail to achieve the ordered population reduction in June 2013, nor have they identified whether they intend to take any additional population-reduction measures in order to achieve the court-ordered reduction.  Instead, Defendants have provided misleading assurances to the Court that "[b]ecause Defendants met the Court's first benchmark and Defendants' best projections continue to show that they will achieve the next benchmark at or near the June 27, 2012 target date, *there is no need at this time to undertake additional crowding-reduction measures to achieve compliance*." *Id* (emphasis added); *see also* Def's December 2011 Status report (same); Def's November 2011 Status Report (same); Def's October 2011 Status Report (same); Def's September 2011 Status Report (same).[3]

---

[1] *See* Declaration of James Austin, ¶4 and Exh. A (CDCR's Fall 2011 Population Projections, also available at http://www.cdcr.ca.gov/Reports_Research/Offender_Information_Services_Branch/Projections/F11pub.pdf (site last visited Feb. 07, 2012)).

[2] *See* CDCR Week Population Report as of January 25, 2012, available at http://www.cdcr.ca.gov/Reports_Research/Offender_Information_Services_Branch/WeeklyWed/TPOP1A/TPOP1Ad120125.pdf (site last visited February 7, 2012)

[3] The Court ordered the State to file status reports every six months to advise the court regarding its progress in achieving the current population benchmark, and, if the benchmark is

-3-

There is no indication that Defendants intend to take any action to avert their long-term default on the Court's order.

## ARGUMENT

**A. Defendants Must Be Ordered to Provide More Detailed Reports About Their Population Projections, And Describe How They Will Achieve the Court-Ordered Crowding Reduction.**

Because the State's current population projections show that it will default on the court-ordered population reduction, Defendants should be required to submit a detailed report showing how they intend to achieve the required reductions, including a description of additional population reduction measures they will adopt.

As the Supreme Court noted, the State has two basic options available for reducing the prison population safely: granting good time credits to low-risk prisoners, and diverting low-level, low-risk prisoners and parole violators away from prison.

> Expansion of good-time credits would allow the State to give early release to only those prisoners who pose the least risk of reoffending. Diverting low-risk offenders to community programs such as drug treatment, day reporting centers, and electronic monitoring would likewise lower the prison population without releasing violent convicts. The State now sends large numbers of persons to prison for violating a technical term or condition of their parole, and it could reduce the prison population by punishing technical parole violations through community-based programs.

*Brown v. Plata*, 131 S.Ct. 1910, 1943 (2011). To date, the State has chosen to focus its efforts primarily on diversion; under AB 109, the State is now diverting low-risk, low-level offenders and parole violators away from prison. Declaration of Jay Atkinson, Chief of CDCR's

---

not achieved, to explain "the reasons for such deficiency and what measures they have taken or propose to take to remedy it" and whether the deficiency "could have been avoided by the exercise of executive authority." Jan. 12, 2010, Order at 5. The Court further ordered Defendants to file monthly reports regarding the status of the population reduction and to "include an updated discussion on whether defendants expect to meet the next six-month benchmark and, if not, what further actions are contemplated and the specific persons responsible for executing those actions." June 30, 3011, Order at 3. Defendants have provided both the six-month reports and the monthly reports. Most recently, they reported that the State had achieved the first six-month population reduction benchmark on December 27, 2011, and that it will meet the next six-month benchmark on June 27, 2012. Def's Jan. 6, 2012, Status Report at 4.

-4-

Offender Information Services Branch, Jan. 6, 2012, ¶4 (the population reduction of 11,301 inmates since October 1, 2011 "is primarily attributable to Assembly Bill 109" (realignment)).

In contrast, the State has implemented much more limited measures to extend good time credits, and it concedes that such measures have reduced the population "to a lesser degree" than realignment. *Id.* ¶5. In fact, the State's good time credit program remains minimal in contrast to the programs that exist in other states, and is far lower than the good time credit program that this Court found would have no adverse impact on public safety. Austin Decl., ¶12.

This Court found that the State could implement good time credit programs granting four to six months of credit for good behavior without having any adverse impact on public safety. Aug. 4, 2009 Order at 140. This finding was based on the overwhelming support for such programs from all parties. *Id.* at 139-140. Indeed, Governor Schwarzenegger had initially proposed "an enhancement in the award of good time credits for up to four months for each program successfully completed by an eligible inmate, reasoning that '[i]ncentivizing program participation and completion will reduce inmate violence within the CDCR and will facilitate the inmate's reintegration into society.'" *Id.* at 140 (quoting Governor's Budget proposal).

Currently, however, the State only offers six weeks of credits for program completion. See Def's June 7, 2011 Status Report at 4. Given the reduced number of programs provided at the prisons, these credits have had limited impact. Austin Decl., ¶11. The State could expand this program by offering four to six months of credits for program participation and completion, and by increasing the number of programs available – for example, by adding programs or less expensive correspondence courses – without harming public safety. Austin Decl., ¶13. Such enhanced good time credit program would reduce the prison population by approximately 7,000 prisoners and bring California in line with the practices of other states. Austin Decl., ¶¶15, 12.

Additional options exist. For example, the State passed Senate Bill 1266, a law that "authorizes the Secretary of the CDCR to offer female inmates, pregnant inmates, or primary

caregiver inmates, participation in a voluntary alternative custody program in lieu of confinement in state prison." Def's June 6, 2011 Status Report at 6.  The State initially estimated that 45% of female inmates (or nearly 3,500 prisoners) would be eligible for the program.[4]  Nonetheless, the state has only placed twenty prisoners in the program.[5]  Streamlining implementation of this program, and extending it to fathers, could take the State a long way toward achieving the court-ordered population reduction.

### B. Further Delay in Planning is Inappropriate and Will Prejudice Plaintiffs.

The State should be ordered to report on its updated population projections – and create any needed supplemental population reduction plans – immediately.  Despite its projected default on the population reduction order, the State has disavowed any present intention to "undertake additional crowding-reduction measures."  Def's Jan. 6, 2012 Status Report at 4.  Implementing population reduction plans takes time and planning, and the full effects of measures such as good time credits and alternative custody programs may not be felt immediately.  Austin Decl., ¶17.  Accordingly, further delay in making such plans is inappropriate.

Any delay in planning or implementing the population reduction would severely prejudice Plaintiffs.  More than five years ago – in 2006 – California's Governor declared the prisons to be in an "overcrowding state of emergency" that imperils prisoner health.  More than two years ago – in 2009 – this Court held that as a result of overcrowding, "the medical and mental health care available to inmates in the California prison system is woefully and constitutionally inadequate, and has been for more than a decade."  Aug 4, 2009 Order at 6.  It found that Plaintiffs continue to suffer "consequences that have been serious, and often fatal."

---

[4] . *See* CDCR, Alternative Custody Program, Sept. 14, 2011, available at http://www.cdcr.ca.gov/Adult_Operations/FOPS/docs/ACP-Fact-Sheet-Final.pdf (site last visited Jan. 27, 2012).

[5] *See* KPCC, *More California women inmates serving time at home*, Dec. 29, 2011, available at  http://www.scpr.org/news/2011/12/29/30564/how-alternative-custody-californias-women-inmates-/  (site last visited Jan. 27, 2012).

*Id.* In 2011, the Supreme Court agreed. Defendants have had more than enough time to create a workable plan to address overcrowding and the attendant constitutional violations. There should be no further delays.

## CONCLUSION

For the foregoing reasons, plaintiffs request that the Court issue an order requiring that Defendants' March 15, 2012, Status Report provide detailed population projections through June 2013, and describe how they plan to achieve the full population reduction required by June 2013, including by providing detailed descriptions of additional population reduction measures they will adopt.

Dated: February 7, 2012

                                                Respectfully submitted,

                                                /s/ *Rebekah Evenson*

                                                Rebekah Evenson
                                                PRISON LAW OFFICE
                                                Attorneys for Plaintiffs