Kamala D. Harris
Attorney General of California
Jonathan L. Wolff
Senior Assistant Attorney General
Jay C. Russell
Supervising Deputy Attorney General
Debbie Vorous, State Bar No. 166884
Danielle F. O'Bannon, State Bar No. 207095
Kyle A. Lewis, State Bar No. 201041
Patrick R. McKinney, State Bar No. 215228
Deputy Attorneys General
  455 Golden Gate Avenue, Suite 11000
  San Francisco, CA  94102-7004
  Telephone: (415) 703-3035
  Fax: (415) 703-5843
  E-mail: Patrick.McKinney@doj.ca.gov

Hanson Bridgett LLP
Jerrold C. Schaefer, State Bar No. 39374
Paul B. Mello, State Bar No. 179755
Walter R. Schneider, State Bar No. 173113
Samantha D. Wolff, State Bar No. 240280
Renju P. Jacob, State Bar No. 242388
  425 Market Street, 26th Floor
  San Francisco, California 94105
  Telephone:  (415) 777-3200
  Fax:  (415) 541-9366
  E-mail: pmello@hansonbridgett.com

*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURTS

FOR THE EASTERN DISTRICT OF CALIFORNIA

AND THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>EDMUND G. BROWN JR., et al.,<br><br>Defendants. | 2:90-cv-00520 LKK JFM P<br><br>**THREE-JUDGE COURT** |
| MARCIANO PLATA, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>EDMUND G. BROWN JR., et al.,<br><br>Defendants. | C01-1351 TEH<br><br>**THREE-JUDGE COURT**<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR AN ORDER REQUIRING DEFENDANTS TO DEMONSTRATE HOW THEY WILL ACHIEVE THE REQUIRED POPULATION REDUCTION BY JUNE 2013** |

1

## I. INTRODUCTION.

The state's prison population is in the midst of an historic reduction due to landmark public safety realignment legislation, as well as other measures. The prison population has dropped by over 15,000 since October 2011 when realignment began, and by over 33,000 since November 2006 when Plaintiffs moved to convene the three-judge court. With the ongoing population drop, Defendants are complying with the Court's population reduction targets, as well as the associated reporting requirements.

The current reporting requirements ensure that Defendants stay on track while affording Defendants the flexibility needed to reach the targets in an effective and safe manner. The Court's June 30, 2011 order requires Defendants to submit monthly status reports that "include an updated discussion on whether defendants expect to meet *the next six-month benchmark* and, if not, what further actions are contemplated and the specific persons responsible for executing those actions." These requirements reflect the admonitions by this Court and the United States Supreme Court granting "maximum flexibility" and discretion to Defendants to achieve the required population reduction.

Now Plaintiffs ask the Court to require Defendants to provide additional population projections and describe how they plan to achieve compliance with the final June 2013 population target, including detailed descriptions of additional population reduction measures. But Plaintiffs' motion is not well-taken because it is based on Defendants' fall 2011 population projection, which preceded realignment, and was developed without the benefit of actual population trend data under realignment. Moreover, the actual population reduction to date has exceeded these projections. It would be ill-advised and counterproductive to require Defendants to develop additional crowding-reduction measures based on early projections and speculation about a population target that is more than a year away.

If future projections based on trend data gathered under realignment indicate that Defendants will likely not meet an upcoming population target, then Defendants will develop an appropriate response. Depending on the circumstances, Defendants may seek an extension or a

2

modification of the Court's order, develop additional crowding-reduction measures, or a combination of all three. Plaintiffs' motion should be denied because it is unwarranted and inconsistent with the balanced approach reflected in the Court's orders. And imposing further reporting requirements based on out-dated projections would be counter-productive.

## II. PLAINTIFFS' MOTION IS BASED ON EARLY PROJECTIONS AND SPECULATION.

Plaintiffs seem to overlook the dramatic population reduction that is occurring under realignment.[1] Instead, they rely exclusively on CDCR's fall 2011 population projection, published before the implementation of realignment. Plaintiffs' request is thus based on stale data, and it would be counter-productive to draw conclusions or develop additional crowding measures based on that data. Projections are inherently speculative, even where as here the quality of the data and the assumptions underlying the projection are solid. The fall 2011 population projection was developed without the benefit of population trend data, which will only become available as realignment progresses. (*See* 8/16/11 Decl. of Jay Atkinson, Dkt. Nos. 4071-1/2388-1, ¶ 6.) As this Court is well aware, the scope of change brought about by realignment is unprecedented, and predicting its precise impact is difficult. (*Id.*)[2]

Plaintiffs' assertion that Defendants have somehow misled, or "failed" to inform, the

---

[1] On November 30, 2006, the state housed 162,061 inmates in its 33 in-state prisons. (*See* http://www.cdcr.ca.gov/Reports_Research/Offender_Information_Services_Branch/Monthly/TPOP1A/TPOP1Ad0611.pdf.) On January 12, 2010, the population decreased to 151,036 inmates. (*See* http://www.cdcr.ca.gov/reports_research/Offender_Information_Services_Branch/WeeklyWed/TPOP1A/TPOP1Ad100113.pdf.) As reported in Defendants' October 14, 2011 report (*see* Dkt. Nos. 4099-1/2407-1), the in-state prison population when realignment began was 144,188. As of February 8, 2012, 128,484 inmates were housed in the state's adult institutions. (*See Coleman/Plata* Dkt. Nos. 4155/2422.)

[2] For example, Defendants initially forecasted that they would not achieve a reduction to 167% of design bed capacity until January 27, 2012. (*See* 8/16/11 Decl. of Ross Meier, Dkt. Nos. 4071-2/2388-2, ¶ 3.) In fact, Defendants achieved this benchmark on-time, a month earlier than initially forecast. (*See* 1/6/12 Report, Dkt. Nos. 4141/2411.)

On February 23, 2012, the California Legislative Analyst's Office also issued a report discussing the uncertainty of the prison population projections. (*See The 2012-13 Budget: Refocusing CDCR After The 2011 Realignment* [LAO Report], at 9-10, available at: http://www.lao.ca.gov/analysis/2012/crim_justice/cdcr-022312.pdf.) The LAO Report correctly noted that: (1) CDCR's population projection could be either high or low depending on a number of factors, (2) the current inmate population is lower than projected in fall 2011, (3) long-range projections are historically less accurate than short-term projections, and (4) the significant changes resulting from realignment make it "exceedingly difficult for the department to forecast how the prison population will be affected a few years from now." (*Id.*)

3

Court that they will not achieve the final benchmark in June 2013 is disingenuous and, itself, misleading. Defendants informed the Court that the fall 2011 projection, a public document, was published on September 8, 2011. (Dkt. Nos. 4085-1/2399-1, ¶ 3.) Defendants have also fully informed the Court of their progress in meeting the crowding-reduction benchmarks. And Defendants' Spring 2012 Population Projections report will soon be available.

### III. THE MOTION SHOULD BE DENIED BECAUSE THE COURT'S CURRENT REPORTING REQUIREMENTS PROPERLY GRANT THE APPROPRIATE FLEXIBILITY TO DEFENDANTS TO ACHIEVE THE REQUIRED PRISON POPULATION REDUCTION.

The monthly reporting currently required by this Court—which evaluates Defendants' progress at six-month intervals—appropriately recognizes it would be premature to require Defendants to develop and report on additional population reduction measures while it remains unclear to what extent, or even whether, there is any need. The Court has recognized its "limited role" and the need to "afford the State maximum flexibility in its efforts to achieve the constitutionally required prison population reduction." (Dkt. Nos. 3767/2287 at 2-3; *see also Plata*, 131 S. Ct. at 1940 ["The order of the three-judge court gives the State substantial flexibility to determine who should be released."].) If Defendants anticipate that they will not meet the current benchmark, the order already requires that Defendants report "what further actions are contemplated and the specific persons responsible for executing those actions." (6/30/11 Order, Dkt. Nos. 4032/2374 at 3.)

Plaintiffs' demand that Defendants provide detailed descriptions of any additional measures they will take to achieve compliance with the June 2013 benchmark is not only unwarranted, but also ignores their own filings, which acknowledge the discretion and flexibility properly afforded to the state. In Plaintiffs' Response to Defendants' November 12, 2009 Population Reduction Plan, Plaintiffs noted:

> Rather than ordering the State to utilize particular population reduction methods, the Court should leave to the State the discretion and flexibility to choose which methods it uses to accomplish the reduction, and to modify those methods as necessary to achieve the required population reduction . . . It will not unduly interfere with prison administration and allows the State to exercise "wide discretion within the bounds of constitutional requirements.

4

(Dkt. Nos. 3742/2280, filed 12/7/09, at 1.)

For similar reasons, this Court should reject Plaintiffs' request that Defendants provide "detailed projections for the population of the 33 prisons through June 2013 . . . ." (Pls.' Mot. at 2.) The Supreme Court recognized that the population reduction order affords "the State flexibility to accommodate differences between institutions. There is no requirement that every facility comply with the 137.5% limit." Plata, 131 S. Ct. at 1940-41.

Finally, Plaintiffs' assertion that Defendants have only "two basic options available" to reduce the prison population is wrong. (*See* Decl. of James Austin, ¶ 9.) Reducing the population through expansion of good time credits and diverting low-risk offenders away from prison are two available options, but they are not exclusive. Defendants may "move for modification of the three-judge court's order to extend the deadline for the required reduction to five years from the entry of the judgment of this Court . . . ." *Plata*, 131 S. Ct. at 1947. Defendants may also move to modify the order if there is no longer a constitutional violation in the delivery of medical or mental health care:

> As the State implements the order of the three-judge court, time and experience may reveal targeted and effective remedies that will end the constitutional violations even without a significant decrease in the general prison population. The State will be free to move the three-judge court for modification of its order on that basis, and these motions would be entitled to serious consideration.

*Id.* at 1941.

Plaintiffs express their wish that Defendants reduce the prison population through expansion of good-time credits (*see* Pls.' Mot. at 4-5; Decl. of James Austin, ¶¶ 10-16), but the specific measures adopted to reduce the prison population are "to be determined by the State," not Plaintiffs. *Plata*, 131 S. Ct. at 1939; *see id.* at 1941 ("The State . . . may decide what steps to take to achieve the necessary reduction."). Defendants have reduced the prison population to the extent and at the times designated by the Court, and the Court should deny Plaintiffs' attempt to unduly interfere with their efforts.

/ / /

5

### IV. PLAINTIFFS WILL NOT BE PREJUDICED IF THE COURT DENIES THE MOTION.

Plaintiffs cite events that occurred as long as six years ago, yet overlook the current state of medical care in the state's prisons as noted by Judge Henderson just last month. (*See* Pls.' Mot. at 6-7.) The *Plata* court states that "significant progress has been made on the Turnaround Plan of Action" and "that many of the goals of the Receivership have been accomplished." (Jan. 17, 2012 Order, Dkt. No. 2417 at 1.) Based on this progress, the Court states that "the end of the Receivership appears to be in sight" and "encourages the parties to attempt to reach agreement on the post-Receivership phase of this case . . . ." (*Id.* at 2.) The parties are currently engaged in the meet-and-confer process.

Moreover, although Defendants are working diligently to meet the current timeline, the Supreme Court has already decided that an extension of time to achieve the ordered population reduction will not cause prejudice. To the contrary, "[a]n extension of time may allow the State to consider changing political, economic, and other circumstances and to take advantage of opportunities for more effective remedies that arise as the Special Master, the Receiver, the prison system, and the three-judge court itself evaluate the progress being made to correct unconstitutional conditions." *Plata*, 131 S. Ct. at 1946. Defendants should be permitted to continue to provide the reports currently required by the Court and seek to modify the order only if the need arises.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

6

Defendants' Opposition to Plaintiffs' Motion for Increased Reporting in Excess of the Court's June 30, 2011 Order

## V. CONCLUSION.

Plaintiffs have moved for an order inconsistent with the Court's balanced approach of affording Defendants flexibility. And imposing further reporting requirements based on out-dated projections is unwarranted. For these reasons, Plaintiffs' motion should be denied.

Dated: February 27, 2012                                    HANSON BRIDGETT LLP


                                                            By: */s/ Paul B. Mello*
                                                                PAUL B. MELLO
                                                                *Attorneys for Defendants*


Dated: February 27, 2012                                    KAMALA D. HARRIS
                                                            Attorney General of California


                                                            By: */s/ Patrick R. McKinney*
                                                                PATRICK R. MCKINNEY
                                                                Deputy Attorney General
                                                                *Attorneys for Defendants*

CF1997CS0003
40537498.doc

7

Defendants' Opposition to Plaintiffs' Motion for Increased Reporting in Excess of the Court's June 30, 2011 Order
Case Nos. 2:90-cv-00520 LKK JFM P & C01-1351 TEH