KAMALA D. HARRIS
Attorney General of California
JONATHAN L. WOLFF
Senior Assistant Attorney General
JAY C. RUSSELL
Supervising Deputy Attorney General
DEBBIE J. VOROUS, State Bar No. 166884
WILLIAM H. DOWNER, State Bar No. 257644
Deputy Attorneys General
  1300 I Street, Suite 125
  P.O. Box 944255
  Sacramento, CA 94244-2550
  Telephone: (916) 324-5345
  Fax: (916) 324-5205
  E-mail: Debbie.Vorous@doj.ca.gov
Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **RALPH COLEMAN, et al.,**<br><br>　　　　　　　　　　　Plaintiffs,<br><br>　v.<br><br>**EDMUND G. BROWN, JR., et al.,**<br><br>　　　　　　　　　　　Defendants. | 2:90-cv-00520 LKK JFM P<br><br>**DEFENDANTS' SECOND STATUS REPORT ON PLANS TO ADDRESS ACCESS TO INPATIENT CARE** |

1

**ACRONYM LIST**

| Acronym | Term |
|---|---|
| APP | Acute Psychiatric Program |
| ASH | Atascadero State Hospital |
| CDCR | California Department of Corrections and Rehabilitation |
| CMF | California Medical Facility |
| DMH | Department of Mental Health |
| EOP | Enhanced Outpatient Program |
| HC-POP | Health Care Placement Oversight Program |
| ICF | Intermediate Care Facility |
| IDTT | Interdisciplinary Treatment Team |
| MHTS.net | Mental Health Tracking System |
| OAL | Office of Administrative Law |
| SVPP | Salinas Valley Psychiatric Program |
| VPP | Vacaville Psychiatric Program |
| ASU | Administrative Segregation Unit |
| LAC | California State Prison, Los Angeles County |
| SAC | California State Prison, Sacramneto |
| CMC | California Men's Colony |
| SVSP | Salinas Valley State Prison |

/ / /

/ / /

/ / /

Defs.' Second Status Rep. on Plans to Address Access to Inpatient Care (2:90-cv-00520 LKK JFM P)

## I.  INTRODUCTION

On December 15, 2011, the Court ordered that between January 2012 and July 2012, the parties meet and confer at intervals of approximately 45 days, beginning the week of January 16, 2012, to address access to inpatient care. (Docket No. 4134 at 2:4–23.)  Moreover, the Court ordered that "[w]ithin 10 days after each meet and confer session, Defendants shall file a status report on the progress toward implementation of Defendants' Supplemental Plan to Reduce or Eliminate the Inpatient Waitlists, the referral review process, and, as needed, other issues and developments related to inpatient access." (*Id.*)  Defendants filed their supplemental plan to reduce or eliminate the Salinas Valley Psychiatric Program (SVPP) and the Vacaville Psychiatric Program (APP) waitlists on October 18, 2011.  (Docket No. 4103.)  The California Department of Corrections and Rehabilitation (CDCR) filed its report on the referral review process and sustainable self-monitoring process for ensuring that inmate-patients in need of inpatient mental health care are timely identified, referred, and transferred to such care, on December 13, 2011. (Docket No. 4132).

In accordance with the Court's December 15, 2011 order, Defendants first met and conferred with Plaintiffs' counsel on January 18, 19, and 23, 2012, and filed their first status report to the Court on February 2, 2012.  (Docket No. 4150.)  Defendants have since met and conferred with Plaintiffs' counsel on March 14 and 22, 2012, and now present their second status report to the Court on the progress made toward implementing their plans to address access to inpatient care.  Specifically, this report summarizes the further progress that Defendants have made toward implementing their supplemental plan to reduce or eliminate the inpatient waitlists, and the progress that CDCR has made in finalizing the referral review process and implementing its sustainable self- monitoring process since Defendants' last report to the Court on February 2, 2012.

/ / /

/ / /

/ / /

3

Defs.' Second Status Rep. on Plans to Address Access to Inpatient Care (2:90-cv-00520 LKK JFM P)

## II. STATUS REPORT

**A. Status of Defendants' October 18, 2011 Supplemental Wait List Plan.**

Defendants' October 18, 2011 supplemental plan to reduce or eliminate the SVPP and APP wait lists has three components: (1) adjusting the custody criteria employed by the Intermediate Care Facility (ICF) Pilot Program to expand patient access to ICF programs operated by the Department of Mental Health (DMH); (2) construction of 64 ICF beds at California Medical Facility (CMF); and (3) opening additional ICF beds by converting 113 cells in the L-Wing at CMF into 110 temporary ICF beds and three observation rooms for high-custody patients from the SVPP waitlist. (Docket No. 4103 at 7-11.) As summarized below, Defendants have completed the first component—adjusting the custody criteria employed by the ICF Pilot Program to expand access to DMH programs—and activated the 64 ICF beds at CMF, thereby reducing the SVPP and APP waitlists. In addition, the L-Wing conversion is on schedule.

**1. Defendants' Revisions to ICF Pilot Program Custody Criteria and DMH Patient Movement Plans Reduced Inmate Inpatient Care Waitlists.**

Defendants have made substantial progress in finalizing and using the modified ICF Pilot Program custody criteria to review inmate-patients currently on the SVPP wait list and to move inmate-patients between DMH programs to allow for more efficient use of single-celled housing. The ICF Pilot Program is pending final regulatory action, and DMH has completed its patient movement plan, which has opened up additional beds for inmate-patients on the SVPP and APP waitlists.

**a. Modified ICF Pilot Program Custody Criteria.**

The ICF Pilot Program began on October 23, 2009, and ended on October 23, 2011. (Docket No. 4103 at 7.) Based on the results, CDCR and DMH modified the ICF Pilot Program custody criteria to allow for more efficient use of single-celled housing in DMH programs, thereby reducing the SVPP waitlist. (*Id.*) On October 27, 2011, CDCR submitted proposed emergency regulations to the Office of Administrative Law (OAL), and the OAL approved the

4

emergency regulatory action on November 14, 2011.[1] This emergency regulatory action expires on April 24, 2012, with the Certificate of Compliance due to the OAL no later than April 23, 2012. (*Id.*)

Using the modified ICF custody criteria, CDCR's Health Care Placement Oversight Program (HC-POP) reconsidered the inmate-patients that were on the SVPP waitlist for placement into Atascadero State Hospital (ASH) or the Vacaville Psychiatric Program (VPP) dorms. (*See* Docket No. 4103 at 8.) On February 2, 2012, Defendants reported to the Court that of the 44 inmate-patients that were found potentially eligible for placement in ASH or the VPP dorms, HC-POP and DMH had reviewed all but one of them. (Docket Nos. 4130 at 5:1–24; 4150 at 6:8–10.) As of March 14, 2012, that last inmate-patient had been admitted to the DMH program at SVPP. (Nguyen Decl. ¶ 3.)

### b. Department of Mental Health Patient Movement Plan.

DMH, using in part the modified ICF custody criteria, developed a three-part patient movement plan: (1) transfer inmate-patients from ASH to another DMH ICF program; (2) reduce the current number of inmate-patients housed at SVPP; and (3) transfer inmate-patients from VPP to ASH for acute care. (Docket No. 4103 at 7–9.) As reported on February 2, 2012, DMH had completed its plan to transfer inmate-patients from ASH to another DMH ICF program.

The second part of DMH's inmate-patient movement plan—reducing the current number of inmate-patients housed at SVPP—was to use the reconfigured custody criteria to review the inmate-patients that were housed at SVPP or in the VPP-cells for potential placement into ASH. (Docket No. 4103 at 8.) On February 2, 2012, Defendants reported to the Court that of all the inmate-patients that CDCR and DMH found eligible for transfer, only one inmate-patient still was awaiting transfer pending a Keyhea hearing. (Docket No. 4150 at 6:24–7:2.) Since then, that one inmate-patient has transferred to ASH. (Nguyen Decl. ¶ 4.)

Defendants' supplemental plan indicated that ASH would change the 25 ICF beds at ASH back to 25 APP beds. (Docket No. 4103 at 8–9.) Defendants previously reported that because

---

[1] *See* http://www.oal.ca.gov/Recent_Actions_Taken_on_Emergency_Regulations.htm

5

Defs.' Second Status Rep. on Plans to Address Access to Inpatient Care (2:90-cv-00520 LKK JFM P)

there has been sufficient bed supply for the APP population in the APP at CMF, DMH has not had to activate those beds. (Docket No. 4130 at 7:9–11.)

### c. Reduction in Inmate-Patients Waiting for SVPP and APP Treatment.

As reflected by the numbers, Defendants' revisions to the ICF Pilot Program criteria and DMH's inmate-patient movement plan have reduced the number of inmate inpatient care waiting for ICF and APP treatment. When Defendants filed their supplemental plan to reduce or eliminate the SVPP and APP waitlists on October 18, 2011, the SVPP waitlist totaled 139 inmate-patients and the APP waitlist totaled 28 inmate-patients. (Docket No. 4103 at 6 n.1.)

As of March 14, 2012, there were 31 inmate-patients who had been referred to SVPP, accepted by DMH, and pending admission. (Nguyen Decl. ¶ 5.) Of these 31 inmate-patients, five had been waiting for more than thirty days. (*Id.*) Also, as of March 28, 2012, forty-eight inmate patients are awaiting ICF care at SVPP, of which two have been waiting for more than thirty days. (*Id.*)

On March 14, 2012, twenty-two inmate-patients were awaiting placement in an Acute Care program, and DMH reported that it expected to place all inmate-patients in Acute Care programs by March 26, 2012. (Nguyen Decl. ¶ 6.) As of March 28, 2012, three of the twenty-two inmate-patients that were awaiting placement on March 14, 2012, were continuing to await placement in an Acute Care program. Referrals made since March 14, 2012, have, however, increased the overall number of inmate-patients awaiting placement in an Acute Care program to eighteen. (*Id.*)

### 2. The New 64-bed ICF Unit at CMF Opened on February 23, 2012.

The 64-bed ICF Unit for high-custody inmate-patients at CMF started admitting inmate-patients on February 23, 2012. (Docket No. 4103 at 9.) As of March 28, 2012, DMH has admitted thirty-two inmate-patients into the new 64-bed ICF unit at CMF. (Nguyen Decl. ¶ 7.)

### 3. The Conversion of CMF's L-Wing to an ICF Unit Should Be Complete in April.

Defendants are converting 113 cells in the L-Wing at CMF from Enhanced Outpatient Program (EOP) General Population beds to 110 temporary unlicensed ICF beds and three observation rooms for high-custody inmates on the SVPP waitlist. (Docket No. 4103 at 10–11.)

6

Defs.' Second Status Rep. on Plans to Address Access to Inpatient Care (2:90-cv-00520 LKK JFM P)

This conversion is ongoing and Defendants expect inmate-patient admissions to begin in late April 2012. (*Id.*)

**B.   Status of the Referral Review Process.**

On December 13, 2011, Defendants presented the results of the referral review process. (Docket No. 4132.) At that time, CDCR reported that following an extensive review of over 900 inmate-patient cases, the special master team recommended that the CDCR Interdisciplinary Treatment Teams (IDTTs) consider forty-four inmate-patients for referral to DMH inpatient care. (Docket No. 4132 at 21.) From these forty-four cases, the IDTTs referred twenty-one inmate-patients to DMH inpatient care. (McGill Decl. ¶ 3.) As of March 14, 2012, nineteen of the twenty-one inmate-patients had been admitted to inpatient care, one paroled, and one previously referred to APP care had that referral rescinded and is now pending ICF admission. (*Id.*)

CDCR also identified in its report as a "next step" a series of quality management issues that it will address as part of its long-term Information Technology solutions and continual improvement in the Mental Health Tracking System (MHTS.net). (Docket No. 4132 at 22–23.) CDCR continues to improve MHTS.net by providing training on data entry procedures and documentation issues, and has worked with the special master's team to revise the 7388-B screening form for referrals to higher levels of care and associated audit tool. (McGill Decl. ¶ 4.) CDCR introduced the new 7388-B form to the institutions during the week of March 5, 2012. (*Id.*) Training on the new 7388-B form took place during the same week. (*Id.*) Several *Coleman* court monitors observed that training. (*Id.*)

**C.   Sustainable Self-Monitoring Process**

The sustainable self-monitoring process that CDCR developed consists of three broad categories of review—monthly procedures, quarterly procedures, and annual procedures. (Docket No. 4132 at 26–31.)

**1.   Monthly Procedures**

In early 2012, institutional clinical staff and headquarters staff began their monthly review of level-of-care decisions made at the institutional level. (Docket No. 4132 at 27; McGill Decl. ¶ 5.) To perform this review, CDCR continued to use available tracking systems to record and

7

monitor referrals to DMH. (*Id.*) In addition, the institutions continued to create non-referral logs and forward them to headquarters for review. (*Id.*) Also, the institutions continued to complete monthly audits, using the 7833-B referral review process, and summarized the results in the monthly Mental Health Subcommittee minutes. (*Id.*) Last, the institutions completed agreement audits for January data on March 15, 2012. (*Id.*) These audits reconcile MHTS.net records with the documentation contacts (completed appointments) stored in the Unit Health Record (eUHR). (*Id.*)

### 2. Quarterly Procedures

Every three months, one-fourth of the institutions with Enhanced Outpatient Programs (EOP) participate in a quarterly review process. (Docket No. 4132 at 28.) This ensures at least one annual review for each EOP program. (*Id.*) During these visits, the Regional Directors attend EOP and Administrative Segregation Unit (ASU) Interdisciplinary Treatment Team (IDTT) appointments and survey the mental health tiers by conferring with staff and identifying inmate-patients that may be functioning sub-optimally, meeting with those inmate-patients and/or program senior psychologists to review the inmate-patient's level of care if necessary. (*Id.*) In addition, the Regional Directors review the non-referral logs and Mental Health Subcommittee minutes for the past three months and a sample of progress notes to compare the content for consistency with the current 7388-B. (*Id.*) Last, the Regional Directors review any problematic cases identified by headquarters during the annual procedures (discussed below). (*Id.*)

The institutions selected to participate in the first quarter review of 2012 were: California State Prison, Los Angeles County (LAC); California State Prison, Sacramento (SAC); California Men's Colony (CMC); and Salinas Valley State Prison (SVSP). (McGill Decl. ¶ 6.) In addition, the quarterly procedure requires that the three Regional Directors of Mental Health—a Northern, Central, and Southern Chief—conduct quarterly one to two day on-site visits to the EOP programs at institutions in their regions. (Docket No. 4132 at 27.) The Regional Directors conducted their first quarter on-site visits on the following dates: LAC – February 21-22; SAC – February 22-23; CMC – February 22-23; and SVSP – February 28-29. (McGill Decl. ¶ 6.) The *Coleman* experts observed the Regional Directors' on-site visits. (*Id.*)

8

Defs.' Second Status Rep. on Plans to Address Access to Inpatient Care (2:90-cv-00520 LKK JFM P)

While conducting on-site visits, the Regional Directors reviewed inmate-patients that prison staff identified as functioning sub-optimally and assessed whether these inmate-patients needed referral to IDTT for consideration of DMH care or other attention from prison mental health staff. (McGill Decl. ¶¶ 7-10.)

During the LAC visit, Regional Director Norris reviewed ten inmate-patients. (McGill Decl. ¶ 7.) Director Norris referred five inmate-patients to IDTT for consideration of DMH care; one inmate-patient to a Mental Health Crisis Bed; and one inmate-patient to IDTT to reassess his treatment plan. (*Id.*)

During the SAC visit, Regional Director Clavere reviewed thirty inmate-patients. (McGill Decl. ¶ 8.) Director Clavere referred two inmate-patients to IDTT for consideration of DMH care. (*Id.*)

During the CMC visit, Regional Director Araminta reviewed thirty-two inmate-patients. (McGill Decl. ¶ 9.) Director Araminta referred one inmate-patient to IDTT for consideration of DMH care and ten inmate-patients to mental health staff for further non-urgent assessment, care, or follow-up evaluations. (*Id.*)

During the SVSP visit, Director Araminta reviewed thirty inmate-patients. (McGill Decl. ¶10.) Director Araminta referred two inmate-patients to IDTT for consideration of DMH care; two inmate-patients to IDTT for treatment plan clarification; and seven inmate-patients to mental health staff for further non-urgent assessment, care, or follow-up evaluations. (*Id.*)

### 3. Annual Procedure.

Each year, one-fourth of the institutions with EOP programs will participate in an annual review process. Non-EOP institutions with an EOP population will also be included in the annual procedure. (Docket No. 4132 at 28.) The annual procedure, which CDCR implemented in early 2012, consists of three components: (1) headquarters procedure and sampling methodology; (2) institutional review of sampled lists; and (3) headquarters review of institutional data. (Docket No. 4132 at 28–29.)

/ / /

/ / /

9

Defs.' Second Status Rep. on Plans to Address Access to Inpatient Care (2:90-cv-00520 LKK JFM P)

### a. Headquarters Procedure and Sampling Methodology.

The headquarters procedure and sampling methodology employs the same techniques that CDCR and the Special Master team used in the fall 2011 7388-B referral review process for DMH inpatient care. (Docket No. 4132 at 28.) Specifically, headquarters generates lists of inmates-patients that meet objective or subjective criteria prompting clinical consideration of a change in their care level. (McGill Decl. 11.)[2] Next, using generally accepted statistical practices, headquarters selects a statistically significant, random sample of inmate patients from the generated lists for inclusion in each institution's review. (*Id.* at 29.)

### b. Institutional Review of Sampled Lists.

Once the participant lists are created, CDCR headquarters generates a spreadsheet containing the inmate-patient names and CDR numbers for distribution to the institutions that were included in the quarterly review. (Docket No. 4132 at 29.) The spreadsheet shows the positive objective indicators for each inmate-patient listed. (*Id.*) After the spreadsheets are distributed, the institutions review the spreadsheet and address whether: (1) each inmate-patient's 7388-B form agrees with MHTS.net; (2) the data contained in the 7388-B form adequately supports the non-referral decision when an indicator is positive; (3) enhanced treatment is documented for non-referrals when an indicator is positive; and (4) appropriate treatment is documented for inmate-patients who are on the waitlist. (*Id.*) Based on these criteria, documentation is assessed as "good" or "unacceptable." (*Id.*)

---

[2] The subjective criteria include inmate-patients who: (1) as a result of a major mental disorder are unable to adequately function at the current level of care; (2) require highly structured inpatient psychiatric care with 24-hour nursing supervision due to a major mental disorder, serious to major impairment of functioning in most life areas, ritualistic or repetitive self-injurious/suicidal behavior, or refractory psychiatric symptoms; or (3) demonstrate chronic psychiatric symptoms that have not responded sufficiently to at least six months of treatment to a degree that facilitates adequate levels of functioning. These subjective criteria are presented as level of care considerations 1-3 on the most recent version of the 7388-B form. (McGill Decl. Ex. 1, Part II, sec. A.) The objective criteria include inmate-patients who: (1) are currently in a Mental Health Crisis Bed and have been in a Mental Health Crisis Bed for at least ten days; (2) had three of more Mental Health Crisis Bed placement requests initiated during the last six months; (3) had three or more CDCR 115 mental health evaluations completed during the last three months; or (4) are at the EOP or mental health crisis bed level of care and has participated in less than the minimum number of structured treatment hours per week appropriate for their level of care designation. The objective criteria are presented as level of care considerations 4-7 on the 7388-B form. (*Id.*) The level of care considerations contained in form 7388-B vary from the original subjective and objective criteria presented in Defendants' original self monitoring plan to reflect changes made through continued development of the sustainable process. (Compare Ex. 1, Part II, sec. A with Docket No. 4132 at 28-29.)

10

Defs.' Second Status Rep. on Plans to Address Access to Inpatient Care (2:90-cv-00520 LKK JFM P)

### c. Headquarters' Review of Institutional Data.

Once the institutional review is completed, the sampled lists are returned to headquarters for review by a senior psychologist. (Docket No. 4132 at 29.) This senior psychologist reviews the institutions' responses and 7388-B forms and issues a qualitative assessment by defining the documentation as "good" or "unacceptable." (Docket No. 4132 at 29-30.) These results of the headquarters review are next submitted to the institutions, which report back to headquarters any new IDTTs held, changes to clinical outcomes, and changes to documentation made as a result of this process. (*Id.*)

### d. Annual Procedure Results.

Between January 30, and February 3, 2012, headquarters completed its sampling of data for the first quarter EOP institutions (LAC, SAC, CMC, SVSP) and non-EOP institutions (Avenal State Prison; North Kern State Prison; Pleasant Valley State Prison; and Wasco State Prison, generated a spreadsheet for each institution of the sample data, and sent it to the institutions for their review on February 9, 2012. (McGill Decl. ¶ 12.) Between February 13, and 16, 2012, a senior psychologist at headquarters reviewed the 7388-Bs on each spreadsheet for the eight institutions. (*Id.*) A *Coleman* Deputy Special Master, two court experts, three Regional Directors, and other headquarters staff participated in the review process. (*Id.*)

The sustainable process provides that "[i]f more than 15% of the documentation at an institution is considered unacceptable, headquarters will determine whether the nature of the problem is systemic, documentation, or supervisory." (Docket No. 4132 at 30.) In addition, "[i]f appropriate, headquarters and local management will work together to develop a remedial plan and headquarters will provide additional training." (*Id.*) Last, CDCR again reviews that institution in the next quarter's review process. (*Id.*) All eight institutions reviewed as part of the first quarter process exceeded the 15% limit for "unacceptable" documentation on their 7388-Bs. (McGill Decl. ¶ 13.) Consequently, they will be included in the second quarter review. (*Id.*)

After completing the headquarters-level review, CDCR headquarters returned the spreadsheets to the institutions with the headquarters' review results and conducted follow up training. (McGill Decl. ¶ 14.) Insufficient documentation was the basis for most of the 7388-Bs

11

Defs.' Second Status Rep. on Plans to Address Access to Inpatient Care (2:90-cv-00520 LKK JFM P)

deemed "unacceptable," which was not unexpected given that this was the first quarter of the review process. (McGill Decl. ¶ 13.) On March 2, 2012, all eight institutions reported their follow-up actions and outcomes for inmate-patients who were the subjects of 7388-B level of care decisions that were deemed "unacceptable" during the first quarter review. (McGill Decl. ¶ 14.) Also, headquarters has begun its review of data for the second quarter review process, which will start in April 2012. (*Id.*)

Defendants intend to continue to conduct meetings with the parties every forty-five days to discuss the status and progress of Defendants' plans to address access to inpatient care. The next meet and confer meeting is scheduled for April 18, 2012. Other issues and developments related to inpatient access will be discussed and reported on as needed.

Dated: April 2, 2012

Respectfully submitted,

KAMALA D. HARRIS
Attorney General of California
JAY C. RUSSELL
Supervising Deputy Attorney General

*/S/ DEBBIE J. VOROUS*

DEBBIE J. VOROUS
Deputy Attorney General
Attorneys for Defendants

CF1997CS0003

12

Defs.' Second Status Rep. on Plans to Address Access to Inpatient Care (2:90-cv-00520 LKK JFM P)