PRISON LAW OFFICE
DONALD SPECTER, Bar No. 83925
STEVEN FAMA, Bar No. 99641
ALISON HARDY, Bar No. 135966
SARA NORMAN, Bar No. 189536
REBEKAH EVENSON, Bar No. 207825
1917 Fifth Street
Berkeley, CA 94710
Telephone: (510) 280-2621

ROSEN, BIEN & GALVAN, LLP
MICHAEL W. BIEN, Bar No. 96891
JANE E. KAHN, Bar No. 112239
ERNEST GALVAN, Bar No. 196065
LISA ELLS, Bar No. 243657
315 Montgomery Street, 10th Floor
San Francisco, California 94104
Telephone: (415) 433-6830

THE LEGAL AID SOCIETY –
EMPLOYMENT LAW CENTER
CLAUDIA CENTER, Bar No. 158255
600 Harrison Street, Suite 120
San Francisco, CA 94107
Telephone: (415) 864-8848

BINGHAM, McCUTCHEN, LLP
WARREN E. GEORGE, Bar No. 53588
Three Embarcadero Center
San Francisco, California 94111
Telephone: (415) 393-2000

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURTS
FOR THE EASTERN DISTRICT OF CALIFORNIA
AND THE NORTHERN DISTRICT OF CALIFORNIA
UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES
PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

RALPH COLEMAN, et al.,

Plaintiffs,

vs.

ARNOLD SCHWARZENEGGER, et al.,

Defendants

) No. Civ S 90-0520 LKK-JFM P
) **THREE-JUDGE COURT**
)
) **PLAINTIFFS' RENEWED MOTION FOR AN ORDER REQUIRING DEFENDANTS TO DEMONSTRATE HOW THEY WILL ACHIEVE THE REQUIRED POPULATION REDUCTION BY JUNE 2013**

MARCIANO PLATA ,et al.,

Plaintiffs,

vs.

ARNOLD SCHWARZENEGGER, et al.,

Defendants

) No. C01-1351 TEH
) **THREE-JUDGE COURT**

## INTRODUCTION

Defendants have announced that by mid-2013 they will be out of compliance with the January 12, 2010, Order to reduce prison crowding. In their recently-published document called "The Future of California Corrections," Defendants indicate no present intent to change course. Instead, they say that they will ask the Court to change the Order so the State doesn't have to reduce crowding to 137.5% of capacity. But unless and until the Court actually modifies its Order, Defendants must take all reasonable steps now to avoid a default next year.

Defendants have been aware that they are on a path to default since at least mid-2011, when they first calculated that their realignment plan would not reduce the prison population enough to comply with the Order. Yet Defendants have taken no steps to avert the expected violation of the Order, nor have they even informed the Court of the impending default.

The Court should order Defendants to submit a plan within thirty days to come into full compliance with the Court's January 12, 2010, Order. The plan should describe what additional measures Defendants will take, and also include a contingency plan giving the Secretary of CDCR authority to take all necessary steps to comply with the Order if the State's plan does not produce the expected population reduction.

## BACKGROUND

On May 23, 2011, the United States Supreme Court affirmed this Court's Order requiring Defendants to reduce California's prison crowding to 137.5% of design capacity by June 2013. On April 23, 2012, Defendants announced that they will not comply with the Order; the population in June 2013 will be 141% over capacity, and it will grow even larger in the following years. CDCR, The Future of Cal. Corrections, at 50, and Appendix G.[1]

Defendants do not plan to take any steps to comply with the Order; they will take no further action to reduce prison crowding with the hope that they can convince this Court that the crowding cap should be raised to 145% of capacity. *Id.* at 50.

---

[1] "The Future of California Corrections" is published at http://www.cdcr.ca.gov/2012plan/index.html (site last visited April 30, 2012). Appendix G is also reproduced in the Declaration of James Austin, filed herewith.

This is not the first time Defendants have announced their intention not to comply with this Court's crowding reduction Order.

On August 4, 2009, this Court issued an order requiring Defendants to submit a plan "that will in no more than two years reduce the population of the CDCR's adult institutions to 137.5% of their combined design capacity." Aug. 4, 2009, Opinion & Order at 183. In defiance of that order, Defendants submitted a plan that would only reduce crowding to 166% of design capacity. *See* Oct. 21, 2009, Order Rejecting Plan at 2.

The Court rejected Defendants' plan, and ordered Defendants to submit another one, noting that it was "unaware of any excuse for the state's failure to comply" with the August 4, 2009, Order, and averring that it would view "with the utmost seriousness any further failure to comply with our orders." *Id.* at 6.

On November 12, 2009, Defendants submitted a new plan, this time to reduce the prison population to 137.5% of capacity in two years. Nov. 12, 2009, Def. Resp. to Order. On January 12, 2010, this Court ordered Defendants to reduce the prison population on the schedule set forth in Defendants' plan. Jan .12, 2010, Order at 4.

After the Supreme Court issued its decision in this case, however, Defendants informed the Court that they had revised their plan, and that they would accomplish the population reduction primarily through the "crowding reduction measures" in Assembly Bill 109 (often referred to as "realignment"), as well as through diversion and credit earning adopted in Senate Bill 18XXX, and construction. June 7, 2011, Def. Status report at 3-6. Defendants stated that they would "keep the court fully informed of their progress in implementing these and other measures." *Id.* at 3.

Yet as early as September 2011, and likely before then, Defendants understood that their current plan would not bring the State into compliance with the Court Order.

Defendants' Fall 2011 Population Projections revealed that the State would miss the court-ordered crowding reduction by approximately 6,000 prisoners. *See* Feb. 7, 2012 Pltf. Mot, at 2-3. Defendants have nonetheless provided misleading assurances to the Court that "there is no need at this time to undertake additional crowding-reduction measures to achieve

compliance" because "the current population and projections indicate that Defendants will achieve the *next* benchmark . . ." April 13, 2012, Def. Status Report at 2 (emphasis added). They have made the same statement in each status report going back to September, 2011. None of their reports have addressed the coming default in June 2013.

In February 2012, Plaintiffs' filed a motion seeking an order requiring Defendants to demonstrate how they will achieve the required crowding reduction by June 2013. Feb. 7, 2012, Pltf. Mot. In response, Defendants argued that their own Fall 2011 Population Projections were "speculative" and based on "stale data" and suggesting that the State *might* be on track to meet the court-ordered reduction because "the actual population reduction to date has exceeded these projections." Feb. 27, 2012, Def. Opp. at 2, 3.[2]

Despite their statements to the Court that the Fall 2011 Projections were unreliable, Defendants' new long-term population projections remain essentially unchanged. Spring 2012 Adult Population Projections at 2 (short term population projections are lower than Fall 2011, but the population projections in the "remaining three years are expected to be similar to the Fall 2011 Projections.")[3]

In "The Future of California Corrections" Defendants affirmatively state that they will not achieve the court-ordered crowding reduction, expressing the hope that this Court will relieve them of their obligation to do so. The Future of California Corrections at 50 and Appendix G.

Defendants expect that the population in June 2013 will be approximately 141% of capacity, a shortfall of more than 2,900 prisoners. *Id*. at Appendix G. In the following three years, Defendants expect the shortfall to grow to more than 5,000 prisoners. *Id.*

---

[2] The Court denied Plaintiffs' motion "without prejudice to the filing of a new motion following the publication of the State's Spring 2012 Population Projections and the completion of the State's master bed plan, but in any event a new motion may be filed at any time on or after May 1, 2012." March 22, 2012, Order at 1-2.

[3] CDCR's "Spring 2012 Population Projections" is published at http://www.cdcr.ca.gov/Reports_Research/Offender_Information_Services_Branch/Projections/S12Pub.pdf (site last visited April 30, 2012)

This estimate of the shortfall is rather optimistic, however. The shortfall in 2013 will likely be more than 6,600 prisoners, and will then balloon to more than 10,000 because Defendants are bringing the 9,500 prisoners housed in out-of-state prisons back to California, and closing one California prison with a design capacity of 2,491 prisoners. May 9, 2012, Declaration of James Austin, ¶¶ 5-6 and Table 1; Future of Cal. Corrections, at 28.[4]

## ARGUMENT

### A. The Court Should Order Defendants to Submit a Revised Plan to Reduce Prison Crowding to 137.5% of Design Capacity.

Because Defendants concede that they are on course to violate the court-ordered crowding reduction, they should be required to submit a new plan to bring the prisons into full compliance with the January 12, 2010, Order. Defendants' plan should identify what further steps Defendants will take to reduce prison crowding to 137.5% of design capacity by 2013, and what steps they will take to maintain this level of crowding thereafter. Since Defendants plan to bring 9,500 prisoners back from out-of-state prisons in 2015-2016, and to close one prison in 2016, Defendants' plan should also include detailed projections for the overall population of the 33 prisons by 2013, and for the next five years.

The Plan must also include a statement of what steps Defendants will take in the event that their population projections prove overly optimistic, and they are not on track to achieve the court-ordered crowding reduction. This is necessary because, as Defendants have stated, "[p]opulation projections are inherently speculative." Feb. 27, 2012, Def. Opp. at 3. And indeed, Defendants' population projections appear to assume a level of prison admissions that is far lower than the actual admissions in 2011-2012, and even their assumption that they will achieve 145% of capacity assumes that they will build 3,400 prison beds that have not even been funded or approved by the Legislature. Austin Decl., ¶¶ 5-6, Table 1. Accordingly,

[4] This increase in population will not be offset by construction. The CDCR is on track to complete a new 1,722 bed facility (Stockton) in mid-2013. Future of Cal. Corrections at 39. That capacity is included in Plaintiffs' analyses of the projected shortfall. The State's other proposed construction (1,100 bed DeWitt Annex, and 2,400 infill beds) are not yet approved by the Legislature or funded, and therefore cannot be expected to have any impact on crowding in the foreseeable future. Future of Cal Corrections at 39-40.

Defendants need a contingency plan that gives the Secretary of CDCR authority to take all necessary steps to meet the court Order.

Defendants already have the legal authority to do so. The Governor's Prison Overcrowding State of Emergency remains in effect, giving the Governor authority to reduce crowding on his own initiative. Cal. Gov't Code § 8658 (Governor's emergency power specifically covers releasing prisoners); *Id.* at § 8571 (under state of emergency, Governor may "suspend any regulatory statute, or statute prescribing the procedure for conduct of state business, or the orders, rules, or regulations of any state agency . . ."); *Id.* at § 8627 (under state of emergency, Governor has "complete authority over all agencies of the state government and the right to exercise . . . all police power vested in the state by the Constitution and laws of the State of California . . .").

**B. Further Delay in Planning is Inappropriate and Will Prejudice Plaintiffs.**

Defendants have suggested they may be coming back to this Court to ask it to change the Population Reduction Order. They have not yet done so, and the Order remains in effect. Unless and until the Order is amended, Defendants must take all necessary steps to comply with the Order.

Time is of the essence. Defendants project that they will violate the Court's Order next June. Despite the projected default, the State has disavowed any present intention to "undertake additional crowding-reduction measures." April 13, 2012, Def. Status Rpt. at 2.

The history of this case makes it crystal clear that designing and implementing population reduction plans takes significant time. Defendants cannot wait until the deadline is just months away before creating a viable population reduction plan; that will only result in a violation of the Order. Any failure to take reasonable steps to avert a violation of this Court's Order would amount to contempt of court. *See, e.g., Hook v. Arizona Dept. of Corr.*, 107 F.3d 1397, 1403-1404 (9th Cir. 1997).

Furthermore, any delay in planning or implementing the population reduction would prejudice Plaintiffs. While improvements have been made, health care in California's prisons remains below the constitutional threshold. It is now almost three years since this Court

ordered Defendants to come up with a plan to reduce crowding to 137.5% of capacity. Aug. 4, 2009, Order at 183. Defendants have had more than enough time to create a workable plan. There should be no further delays.

**CONCLUSION**

For the foregoing reasons, Plaintiffs request that the Court issue an order requiring Defendants to submit a revised population plan.

Dated: May 9, 2012

Respectfully submitted,

/s/ *Rebekah Evenson*

Rebekah Evenson
PRISON LAW OFFICE
Attorneys for Plaintiffs