| | |
|---|---|
| PRISON LAW OFFICE<br>DONALD SPECTER, Bar No. 83925<br>STEVEN FAMA, Bar No. 99641<br>ALISON HARDY, Bar No. 135966<br>SARA NORMAN, Bar No. 189536<br>REBEKAH EVENSON, Bar No. 207825<br>1917 Fifth Street<br>Berkeley, CA 94710<br>Telephone: (510) 280-2621 | ROSEN, BIEN & GALVAN, LLP<br>MICHAEL W. BIEN, Bar No. 96891<br>JANE E. KAHN, Bar No. 112239<br>ERNEST GALVAN, Bar No. 196065<br>LISA ELLS, Bar No. 243657<br>315 Montgomery Street, 10th Floor<br>San Francisco, California 94104<br>Telephone: (415) 433-6830 |
| THE LEGAL AID SOCIETY –<br>EMPLOYMENT LAW CENTER<br>CLAUDIA CENTER, Bar No. 158255<br>600 Harrison Street, Suite 120<br>San Francisco, CA 94107<br>Telephone: (415) 864-8848 | BINGHAM, McCUTCHEN, LLP<br>WARREN E. GEORGE, Bar No. 53588<br>Three Embarcadero Center<br>San Francisco, California 94111<br>Telephone: (415) 393-2000 |

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURTS

FOR THE EASTERN DISTRICT OF CALIFORNIA

AND THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>        Plaintiffs,<br>  vs.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>        Defendants | No. Civ S 90-0520 LKK-JFM P<br>**THREE-JUDGE COURT**<br><br>**DECLARATION OF JAMES AUSTIN IN SUPPORT OF PLAINTIFFS' RENEWED MOTION FOR AN ORDER REQUIRING DEFENDANTS TO DEMONSTRATE HOW THEY WILL ACHIEVE THE REQUIRED POPULATION REDUCTION BY JUNE 2013** |
| MARCIANO PLATA, et al.,<br><br>        Plaintiffs,<br>  vs.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>        Defendants | No. C01-1351 TEH<br>**THREE-JUDGE COURT** |

1  I, James Austin, hereby declare:

2      2.    I am a criminologist retained by Plaintiffs' counsel in this action. I have previously submitted expert reports in this action, and have testified before the Court. I have personal knowledge of the matters set forth herein and if called as a witness I could and would competently so testify.

3      3.    I have reviewed the State's "Spring 2012 Population Projections," which are published on CDCR's website, as well as the data underlying those projections, including data reflecting population changes between October 1, 2011 (the date that AB 109 Realignment went into effect) and April 27, 2012, and prison admission numbers since January 2011. I have also reviewed the CDCR report titled "The Future of California Corrections," released in April 2012 and available on CDCR's website.

4      4.    On the following page is a reproduction of Appendix G to CDCR's "Future of California Corrections," which shows (at the second to last row) that CDCR will not be able to comply with the final court-ordered crowding reduction.

//
//
//
//
//
//
//
//
//
//
//
//
//
//

-2-
DECL. OF JAMES AUSTIN ISO PLFS' MOT FOR ORDER REQUIRING DEFS TO DEMONSTRATE HOW THEY WILL ACHIEVE REQUIRED POP REDUCT, NOS.:  CIV S 90-0520 LKK-JFM, C01-1351 TEH

Base Line Gap Chart
(New Capacity is added into Design Capacity to Rated Capacity)

| Fiscal Year | | 06/27/12 | 12/27/12 | 06/27/13 | 12/27/13 | 06/30/14 | 06/30/15 | 06/30/16 |
|---|---|---|---|---|---|---|---|---|
| **Spring 2012 Population Projections** | | 133,768 | 129,691 | 127,674 | 125,844 | 125,006 | 123,649 | 123,363 |
| | **Other Population Reduction Strategies** | | | | | | | |
| | Law Changes (civil addicts) | | 300 | 300 | 300 | 300 | 300 | 300 |
| | Alternative Custody Program (ACP) | 22 | 200 | 200 | 200 | 200 | 200 | 200 |
| **Revised Population** | | 133,746 | 129,191 | 127,174 | 125,344 | 124,506 | 123,149 | 122,863 |
| **Capacity** | | | | | | | | |
| | **Current Design Capacity** | | | | | | | |
| | Institutions | 79,756 | 79,756 | 81,478 | 81,478 | 82,611 | 82,611 | 82,496 |
| | Prison Closure[1] | | | | | | | -2,491 |
| | Level I/II/III/RC/Female | 59,643 | 59,643 | 61,476 | 61,476 | 62,609 | 62,609 | 62,494 |
| | IV/SHU Cells | 20,113 | 20,113 | 20,002 | 20,002 | 20,002 | 20,002 | 20,002 |
| | Camps[2] | 4,480 | 3,800 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 |
| | **New Construction** | | | | | | | |
| | DJJ Renovation or Activations | | 0 | 0 | 0 | 1,133 | 1,133 | 1,133 |
| | CHCF | | | 1,722 | 1,722 | 1,722 | 1,722 | 1,722 |
| | Infill Level II | | | | 0 | 0 | 0 | 2,376 |
| | Mental Health Capacity | 109 | 109 | 109 | 109 | 109 | 109 | 109 |
| | **Contract Capacity** | | | | | | | |
| | MCCF | 600 | 600 | 600 | 1,825 | 1,825 | 1,825 | 1,825 |
| | FRCCC/CPMB | 99 | 99 | 99 | 99 | 99 | 99 | 99 |
| | Out of State Capacity[3] | 9,588 | 8,988 | 8,988 | 4,596 | 2,696 | 1,160 | 0 |
| **Total Capacity (Assumes 137.5% at 33 prisons)** | | 124,541 | 123,261 | 126,050 | 122,883 | 123,674 | 122,138 | 123,196 |
| **Total Capacity (Assumes 145% at 33 prisons)** | | 130,522 | 129,242 | 132,161 | 128,994 | 129,870 | 128,334 | 129,383 |
| **Institution Population** | | 118,979 | 115,704 | 114,987 | 116,324 | 117,386 | 117,565 | 118,439 |
| **Overcrowding Rate** | | 149.2% | 145.1% | 141.1% | 142.8% | 142.1% | 142.3% | 143.6% |
| **Goal at 137.5%** | | 123,622 | 117,241 | 112,032 | 112,032 | 113,590 | 113,590 | 113,432 |
| **Goal at 145%** | | | | | 118,143 | 118,143 | 119,786 | 119,786 | 119,619 |
| **Surplus/Deficit at 137.5% Overcrowding** | | 4,643 | 1,537 | (2,955) | (4,292) | (3,796) | (3,975) | (5,007) |
| **Surplus/Deficit at 145% Overcrowding** | | N/A | N/A | 3,156 | 1,819 | 2,400 | 2,221 | 1,180 |

[1] Assumes the closure of CRC in FY 15/16.

[2] Assumes the Camp beds will reduced to the current level of offenders that will not be eligible for AB 109.

[3] Assumes reducing the COCF beds by 600 in FY 12/13, deactivating the Oklahoma and Mississippi contracts by 12/27/13, deactivating 1900 contract beds in Arizona by 6/30/14, 1536 contract beds in Arizona by 6/30/15 and deactivating 1160 contract beds in Arizona by 6/30/16.

Appendix G: Baseline Gap Chart

P. 3, DECL. OF JAMES AUSTIN ISO PLFS' MOT FOR ORDER REQUIRING DEFS TO DEMONSTRATE HOW THEY WILL ACHIEVE REQUIRED POP REDUCT, NOS.: CIV S 90-0520 LKK-JFM, C01-1351 TEH

5.  I was able to replicate CDCR's estimates using the data that has been provided to me, the Spring 2012 Population Projections, and the assumptions set forth in CDCR's "Future of California Corrections." I agree that under its existing plan, CDCR will not be able to meet the court-ordered crowding reduction by June 30, 2013, but I believe that the CDCR's projected "deficit" is likely to be far greater than CDCR estimates because

> a) CDCR's projection assumes that all 1,722 beds of CHCF (the Stockton facility) will be available and part of the 33-prison capacity on June 30, 2013, even though the Receiver states that the Stockton facility will not be available to house prisoners until July 2013, and will not be filled until January 2014;
>
> b) CDCR's projection assumes the completion of two facilities (DJJ renovation project and Infill Level II), that have not been approved or funded by the Legislature; and
>
> c) CDCR's population projections assume that there would be about 23,000 new prison admissions in the first full year of AB510. Currently, the actual new prison admissions for the first six months (October 1, 2011 to March 31, 2012) suggest the annual number to be closer 25,000, or 2,000 higher than originally estimated. The higher admissions number is especially significant since the non-AB109 cases have longer sentences and/or good time restrictions which will increase their length of imprisonment.

6.  Table 1 shows the magnitude of CDCR's "deficit" in complying with the court order a) assuming that Stockton is filled pursuant to the Receiver's schedule, b) assuming that the not-yet funded or approved facilities are not completed per CDCR's schedule; and c) assuming that current (higher) prison admissions trends continue.

//
//
//
//
//

Table 1. Deficit in Meeting Court-Ordered Population Level Under Varying Assumptions

|  | Jun-13 | Jun-14 | Jun-15 | Jun-16 | Jun-17 |
|---|---|---|---|---|---|
| CDCR Estimated Deficit in achieving 137.5% of capacity | -2,955 | -3,796 | -3,975 | -5,007 | -5,506 |
| a) Deficit assuming Stockton filled per Receiver's schedule | -4,677 | -3,796 | -3,975 | -5,007 | -5,506 |
| b) Deficit assuming unapproved DJJ and infill projects not completed | -4,677 | -4,909 | -5,088 | -6,120 | -6,619 |
| c) Deficit assuming current (higher) prison admission | -6,677 | -7,909 | -9,088 | -10,120 | -10,619 |

7. The State has readily-available options to both comply with the court ordered crowding reduction and still implement its Bed Plan. As I explained in my August 15, 2008, Report, and my testimony to this Court, the State has two basic options available for reducing the prison population safely: reducing the length of stay (LOS) of prisoners and/or diverting low-level, low-risk prisoners and parole violators away from prison. To date, the State has chosen to focus its efforts primarily on the diversion option; under AB 109, the State is now diverting substantial numbers of low-level offenders and parole violators away from prison to the local jails. The State could easily reduce prison crowding to the level ordered by the court by implementing additional good time credit programs, enhancing its Alternative Custody Program, commuting the sentences of prisoners with ICE holds (who are due to be deported upon completion of their sentences), and other reasonable reforms.

8. As shown in Table 2, the current CDCR population as of December 31, 2011 consisted of large numbers of prisoners who are at low and moderate risk of recidivism. Prior studies done by the CDCR and other criminologists have consistently shown that a prisoner's length of stay can be reduced by four to six months without altering recidivism rates or overall crime rates.

//
//
//
//
//

**Table 2. Current Recidivism Risk Levels**
**CDCR Inmate Population**
**December 31, 2011**

| Risk Level | Inmates | Percent |
|---|---|---|
| Not Assessed | 5,756 | 3.9 |
| Low | 58,611 | 39.4 |
| Moderate | 39,071 | 26.3 |
| High Drug | 6,911 | 4.6 |
| High Property | 12,180 | 8.2 |
| High Violent | 26,226 | 17.6 |
| Total | 148,755 | 100 |

Source: CDCR data file

9.  If the State is to meet its June 2013 population reduction deadline, time is of the essence. Implementing population reduction plans takes time and planning, and the full effects of measures such as good time credits and alternative custody programs are not felt immediately unless the policies have been made retroactive to the current prison population. Accordingly, I recommend that the State immediately draft its plans for additional population reduction measures beyond AB 109 that will ensure it will be able it to safely reduce its prison population in line with the Court's order and without compromising public safety.

I declare under penalty of perjury under the laws of the State of California and of the United States of America that the foregoing is true and correct, and that this declaration was executed May 9, 2012, in Los Angeles, California.

                                         /s/
                                    James Austin

(approval to e-file obtained by Plaintiffs' counsel)