1  David W. Wilson, K66474
2  R.J. Donovan, B-6-141 L
3  480 Alta Road
   San Diego, CA 92179
4
5  April 24, 2012
6
7  To: LAWRENCE K. KARLTON, Senior Judge U.S.E.D. Court
                                    9:90 CV 520 LKK JFM
8  Re: Courts ORDER 5/31/2007 Coleman No. 2:09-cv-00520-LKK-JFM, 5, c.
9  Televisions IN ASU' Set For Hearing Writ Of Mandate R.J.Donovan Super
   Ct. No. 37-2011-00080105-CU-WM-SC Attached Request Class Represtation
10
11  To the Honorable Judge, Karlton, I hereto attach an ORDER
12  from Chula Vista Superior Court for Hearing in above en-titled
13  case, concerning (Television's) in Administration Segregation Unit
14  at Richard J. Donovan Correctional Facility, which is a issue
15  addressed in hereto attached <u>Coleman</u> ORDER of <u>May 31, 2007</u>, four
16  pages 'only', which is part of Writ of Mandamus attached, & Exhibits
17      I have exhausted several administrative remedies since 2003,
18  on TV's in ASU, and 7/30/2008, at CSP-LAC contacted Michael
19  Bien, <u>Coleman</u> Attorney for Enforcement to "Retrofit" for TV's here
20  to attached, Exhibit AT (5)a, while at CMF, response AT(5)b,
21  AT (9), at CSP-LAC, response AT(9)a.
22      Here at R.J.D., I have been in ASU almost 10 months &
23  No Outside Yard due to here only done in Underwear" in elements,
24  and charges Fabricated DISMISSED twice as in SHOW CAUSE ORDER,
25  yet! With No Recreation Reading Books allowed to Check Out &
26  Director's Review, Court actions, the attempted suicides happen
27  more often. Therefore request "Group" Class representation.
28  Dated: <u>April 24, 2012</u>
                                    Respectfully submitted
                                    David W. Wilson

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO | |
|---|---|
| STREET ADDRESS: | 500 Third Avenue |
| MAILING ADDRESS: | 500 Third Avenue |
| CITY AND ZIP CODE: | Chula Vista, CA 91910-5694 |
| BRANCH NAME: | South County |
| TELEPHONE NUMBER: (619) 746-6200 | |

PLAINTIFF(S)/PETITIONER(S)/APPELLANT(S): David W Wilson

DEFENDANT(S)/RESPONDENT(S): George J Giurbino et.al.

Short Title: Wilson vs. Giurbino

| **NOTICE OF HEARING** | CASE NUMBER:<br>37-2011-00080105-CU-WM-SC |
|---|---|

Notice is given that the above-entitled case has been set for the reason listed below and at the location shown above. All inquiries regarding this notice should be referred to the court listed above.

| TYPE OF HEARING | DATE | TIME | DEPT | JUDGE |
|---|---|---|---|---|
| Motion Hearing (Civil) | 07/13/2012 | 09:00 am | S-07 | Kenneth J Medel |

WRIT OF MANDAMUS
** PLAINTIFF MUST SERVE NOTICE OF THIS HEARING AND FILE A PROOF OF SERVICE **

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**

South County
500 Third Avenue
Chula Vista, CA 91910-5694

**SHORT TITLE:** Wilson vs. Giurbino

| CLERK'S CERTIFICATE OF SERVICE BY MAIL | CASE NUMBER:<br>37-2011-00080105-CU-WM-SC |
|---|---|

I certify that I am not a party to this cause. I certify that a true copy of NOTICE OF HEARING was mailed following standard court practices in a sealed envelope with postage fully prepaid, addressed as indicated below. The certification occurred at Chula Vista, California on 04/17/2012. The mailing occurred at Sacramento on 04/18/2012.

Clerk of the Court, by: _N. Sabian_ _____ , Deputy

DAVID W WILSON
RJ DONOVAN B-6-144L
480 ALTA ROAD
SAN DIEGO, CA 92179

---

**CLERK'S CERTIFICATE OF SERVICE BY MAIL**

Page: 2

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name and Address): | TELEPHONE NO.: | COURT USE ONLY |
|---|---|---|
| David W. Wilson, K66479<br>R.J. Donovan, 480 Alta Road<br>San Diego, CA 92179 | | |

| ATTORNEY FOR (Name): | BAR# |
|---|---|

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

☐ CENTRAL COURT, 220 W. BROADWAY, SAN DIEGO, CA 92101-3409
☐ FAMILY COURT, 1501-55 SIXTH, SAN DIEGO, CA 92101-1946
☐ NORTH COUNTY BRANCH, 325 S. MELROSE, VISTA, CA 92083-6627
☐ EAST COUNTY COURT, 250 E. MAIN, EL CAJON, CA 92020-3913
☒ SOUTH BAY COURT, 500 THIRD, CHULA VISTA, CA 91910-5694
☐ JUVENILE COURT, 2851 MEADOW LARK, SAN DIEGO, CA 92123-2792
☐ JUVENILE COURT, 1701 MISSION AVE., OCEANSIDE, CA 92054

| | |
|---|---|
| PLAINTIFF(S)/PETITIONER(S) DAVID W. WILSON | JUDGE Kenneth J. Medel |
| | DEPT: S-07 |
| DEFENDANT(S)/RESPONDENT(S) Director, GEORGE J. Giurbino, et al., | DATE 7/13/2012   TIME 09:00 a.m. |
| PROOF OF SERVICE BY MAIL<br>(CCP 1013a(1) & (3) & Local Rules, Division II, Rule 6.7) | CASE NUMBER<br>37-2011-00080165-CU-WM-SC |

I, David W. Wilson, declare that: I am over the age of 18 years and ~~not~~ a party to the case; I am employed in, or am a resident of, ☒ the County of San Diego, California ☒ , where the mailing occurs; and my business/residence address is: R.J. Donovan, B-6-141L, P.O. Box 799062, San Diego, CA 92179
(No., Street)                                                    (City, state)

☒ I further declare that I am readily familiar with the business' practice for collection and processing of correspondence for mailing with the United States Postal Service; and that the correspondence shall be deposited with the United States Postal Service this same day in the ordinary course of business.

I caused to be served the following document(s): (SET FORTH THE EXACT TITLE OF THE DOCUMENT(S) SERVED AND FILED)   NOTICE OF HEARING

by placing a true copy of each document in a separate envelope addressed to each addressee, respectively, as follows: (For civil cases, specify the name of the <u>party</u> so served, the nature and status of the party's involvement in the case, i.e. plaintiff, defendant, cross-complainant, etc.; and the name, address and phone number of the party's counsel of record, if any)

| | | |
|---|---|---|
| CHULA VISTA SUPERIOR COURT<br>SOUTH BAY REGIONAL CENTER<br>500 3rd Avenue<br>Chula Vista, CA 91910-5694 | UNITED STATES DISTRICT COURT<br>EASTERN DISTRICT OF CALIFORNIA<br>501 "I" Street, Rm. 4-200<br>Sacramento, CA 95814<br>Attn: Senior Judge, Lawrence K. Karlton | Director of Adult Institutions<br>George J. Giurbino<br>1515 "S" Street, P.O. Box 942883<br>Sacramento, CA 94283-0001 |
| | | Warden, Daniel Paramo<br>R.J. Donovan<br>480 Alta Vista Road<br>San Diego, CA 92179 |
| OFFICE OF THE ATTORNEY GENERAL<br>110 West "A" Street, Suite 1100<br>P.O. Box 85266<br>San Diego, CA 92186-5266 | ROSEN, BIEN & GALVAN, LLP<br>P.O. Box 390<br>315 Montgomery Street, 10th Fl<br>San Francisco, CA 94104<br>Attn: Michael Bien, Esq. | U.S. ATTORNEY GENERAL, Eric Holder<br>U.S. Department of Justice<br>950 Pennsylvania Avenue, NW<br>Washington, DC 20530-0001 |

I then sealed each envelope and, with postage thereon fully pre-paid,

☒ I deposited each in the United States Postal Service at giving ASU 6 Bldg. Officer R.J. Donovan
☐ I placed each for deposit in the United States Postal Service, this same day, at my business address shown above, following ordinary business practices.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on April 24, 2012                    Signature: David W. Wilson

SUPCT CIV-9A(Rev. 10-95)                         PROOF OF SERVICE BY MAIL

Exhibit LK

Case: 2:90-cv-00520-LKK-JFM

received 6-5-2007

David W. Wilson K-66474
CMF-Vacaville
P.O. Box 2000
Vacaville, CA 95696

------------------------------------------------------

SEP 2 1 2007

Exhibit LK (3)

1 additional 179 yards for fiscal year 2008/09.  (Id.).  They do not plan to complete building all the

2 necessary yards until 2012.  (Report, at 3.)  As the special master found, 2012 is "simply too

3 late."  Defendants' objection will be overruled.

4          The only other recommendation to which the defendants interpose an objection is

5 the recommendation that they perform within sixty days an assessment of the space needs for

6 providing confidential mental health interviews.  Defendants seek ninety days to complete this

7 assessment.  The special master reports that defendants have not conducted the assessments

8 promised in their October 2006 plan for determining the resources needed to provide sufficient

9 space for confidential mental health interviews.  (Report, at 8.)  Beyond making the request for

10 more time, defendants tender no reason why the assessment cannot be completed on the schedule

11 recommended by the special master.  Defendants' objection will be overruled.

12          In accordance with the above, IT IS HEREBY ORDERED that:

13          1.  Defendants' request to amend the factual finding of the special master

14 concerning the use of inmate day labor in the construction of small management yards is denied

15 without prejudice.

16          2.  Defendants' objections to the special master's May 14, 2007 report  are

17 overruled.

18          3.  The special master's May 14, 2007 report and the recommendations contained

19 therein are adopted in full.

20          4.  Within ninety days from the date of this order defendants shall submit a plan

21 that will satisfy their need for sufficient small management yards to meet Title 15 exercise

22 requirements for inmates in administrative segregation.  This plan shall call for the funding and

23 completion of the remaining yards by the end of fiscal year 2008/2009.  The plan shall also

24 include provisions for better utilization of the existing small management yards and coordination

25 with available staff to maximize yard usage.

26          5.  Within sixty days from the date of this order, defendants shall accomplish the

3

Exhibit L K (4)

1  following:

2          a.  develop a plan to require each institution to train
            staff on accurate logging of 30-minute welfare
3          checks and to track and self-monitor compliance
            with the performance of these checks;

4
            b.  provide budgetary figures for the construction of
5          the physical features of the non-stand alone intake
            cells;

6
          c.  submit a report on each institution's capability to
7          provide televisions and/or radios to inmates in
            administrative segregation;

8
            d.  submit a status report on the implementation of
9          the suicide history tracking system and a plan to
            train staff in its use and improve access to suicidal
10         history data at all relevant times;

11         e.  provide a specific assessment of their space
            needs for providing confidential mental health
12         interviews; and

13         f.  produce evidence that required CPR refresher
            training was accomplished by submitting
14         documentation of the required proof of practice.

15     6.  Defendants shall include the following in the report on enhanced outpatient

16 programs in administrative segregation required by this court's March 9, 2007 order:

17         a.  their plan for modification of the present
            requirement that allows ICC reviews for inmates in
18         administrative segregation.  Defendants should
            consider conducting ICC reviews every 45 days for
19         those inmates awaiting disposition of referrals to
            local district attorneys and possibly for all mental
20         health caseload inmates who have been held in
            administrative segregation over 90 days.
21         Defendants should also consider transferring
            inmates in administrative segregation to more
22         appropriate placements pending processing of their
            DA referrals; and

23

24 /////

25 /////

26 /////

4

SEP 2 1 2007

Exhibit  L K (5)

1           b.  a breakdown of the numbers of administrative
               segregation inmates currently awaiting transfer to
2           the sensitive needs yards.

3  DATED:  May 31, 2007.

4

5

6                       LAWRENCE K. KARLTON
                       SENIOR JUDGE
7                       UNITED STATES DISTRICT COURT

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

SEP 2 1 2007

Exhibit AT (9)

David W. Witson, K66474
CSP-LAC, A4-#102
44750 60th Street West
Lancaster, CA 93536

July 30, 2008

To: Michael Bien, Esq.
        ROSEN, BIEN & GALVAN, L.L.P.
        P.O. Box 390, San Francisco, CA 94104

Re: Request Motion OF Enforcement For Retrofit Cable & Electric Outlets ASU For TV's/Radio's Court ORDER 5-31-07, Or Injunction For 602 Appeal & GROUP Class To STOP Discrimination, Sensory Deprivation, Suicidal & Homicidal Trends

Dear Coleman Attorney Sir! as our representative "I request a court Motion of Enforcement for Court ORDER 5-31-07, to "submit report on each institution's capability to provide televisions and/or radios to inmates in administrative segregation." I request Motion for Retrofit/Reattach Cable & TV Electrical Outlets in Asu's that were discombobulated, in Order to receive TV's & Radio's and have access to "Educational & Behavioral Modifications, other Opportunties."

        This is requested to 'STOP' Discrimination under the (ADA) & Rehabilitation Act; Calif. Code Regs., & applicable state law, SEE hereto attached 602 at CMF, Exhibit's AT, AT(1), AT(2), & 3, 4, 5, 8, 9, 10, 18, ADA Rules, & LK, LK(3), LK(4), LK(5), Judges ORDER Coleman case, & Resondents denial AT(3), AT(3)a, which Memorandum AT(4), AT(4)b, & AT(5), allows TV's & Radio's, Yet! Director's Review "denied" AT(6), & "did not" address Retrofit Cable & Electic Outlets at appeal Exhibit AT, or the "discrimination" to TV access as general population.
        Hereto is form Exhibit AT(7), where at CSP-LAC, ASU 2003, were allowed to have, But! I am in ASU CSP-LAC & "not" allowed.
        I request Injunction for Retrofit Cable & Electric Outlets ASU at CMF, CMC-E, CSP-LAC, RJD, Salinas Valley, any on all units housing EoP ASU's first, for in here more sever mental inmate's due to the discrimination, sensory Deprivation, & suicidal & Homicidal trends could be prevented. SEE Affidavit Exhibit AT(8).



**ROSEN, BIEN & GALVAN, LLP**
ATTORNEYS AT LAW
POST OFFICE BOX 390
SAN FRANCISCO, CALIFORNIA 94104

*Exhibit AT (9)a*

August 8, 2008

**CONFIDENTIAL - LEGAL MAIL**

*received 8-13-2008*
*TV & Radios  Ad-Seg*

David W. Wilson K-66474
California State Prison, Lancaster
44750 60th Street West
Lancaster, CA 93536-7620

   Re: *Coleman v. Schwarzenegger*
     Our File No. 489-3

Dear Mr. Wilson:

  This is in response to your letter dated July 30, 2008, which we received on August 6, 2008. If we need more information from you, or if we have additional information to give you, we will write back to you. **If not, this is the only response you will receive.** We are returning any original documents you may have sent to our office.

  You wrote about mental health care in the CDCR. We are sending this form letter response either because your letter provided information only and does not require a personalized response, or because we are unable to take action at this time to address the concerns raised in your letter. Please refer to the Frequently Asked Questions (FAQ) handout that we previously sent you, since a wide range of mental health related topics are covered in that packet.

  We apologize for this impersonal response. We regret that this is the only way we are able to address the hundreds of letters that we receive from prisoners each week. The information you provide about problems in the prisons is very useful in our efforts to improve the CDCR's mental health treatment programs. We encourage you to continue to inform us of any new problems with the CDCR's mental health treatment programs.

  Please be assured that we have read your letter carefully to see if what you wrote about is part of one of our cases against the prison system. Thank you for writing, and good luck.

       Sincerely,

       ROSEN, BIEN & GALVAN, LLP

       By: Ritika Aggarwal
       Paralegal

JK:ra
Encl: Orig.

David W. Wilson, K66474
CSP-LAC, D1-#104
44750 60th St. West
Lancaster, CA 93536

Exhibit AT (5)a

October 2, 2007           c.c.  1 of 2

To: Rosen, Bien & Galvan,  LLP
                315 Montgomery St., 10th Floor, San Francisco, CA 94104

Re: Request Representation of Appeal For Director's Review TV/Radio's Ad-Seq &
    Violation Of ADA Education Benefits, CDCR Rules & Court Orders For EOP's

Coleman Attorney's as representatives for EOP's 'I request your Help! & intervention & for
representation of attached 16 documents 602 appeal for Director's Review today concerning
Televisions & Radios in Ad-Seg, which was denied by CMF-Vacaville, Yet! Judges ORDERS of
5-31-07, herein request CDCR to submit report on capability to provide TV's/Radio's.
      Which 'I am filing under the ADA for their are "Educational Benefits" thats being denied
to EOP's.  Which Second Level Review attached Memo's of 4-27-07, & 3-12-07, which allows
TV/Radio in Ad-Seg, Yet! CMF is claiming exempt, which Unit M-3, was just converted this year
to Ad-Seg, & can be retrofited back to electrical outlets for this purpose.  Also 'I am
requesting other prisons that house EOP's be included in the retrofitting for Appliance to
STOP suicide & idleness in Ad-Seg, & for mental wellness.

      Will You represent this issue to the Court & seek modification, or is this issue
one 'I must address to the Court on behalf of EOP's myself.


              T H A N K   Y O U  for any an all Help!


                    David W. Wilson

**ROSEN, BIEN & GALVAN, LLP**
ATTORNEYS AT LAW
POST OFFICE BOX 390
SAN FRANCISCO, CALIFORNIA 94104

Exhibit AT(5)6

received 11-2-2007

October 30, 2007

## CONFIDENTIAL - LEGAL MAIL

David Wilson, K-66474
California State Prison, Lancaster
44750 60th Street West
Lancaster, CA 93536

      Re:    *Coleman v. Schwarzenegger*
            Our File No. 489-3

Dear Mr. Wilson:

      This is in response to your letter dated October 2, 2007, which we received on October 9, 2007. We are not able to respond to all letters individually. If we need more information from you, or if we have important information to give you, we will write back to you. **If not, this is the only response you will receive.** We are returning any original documents you may have sent to our office.

      You wrote about mental health care in the CDCR. We are sending this form letter response either because your letter was providing information only and does not require a personalized response, or because we are unable to take action at this time to address the concerns raised in your letter. Please refer to the Frequently Asked Questions (FAQ) handout that we previously sent you, since a wide range of mental health related topics are covered in that packet.

      We apologize for this impersonal response. We regret that this is the only way we are able to address the hundreds of letters that we receive from prisoners each week. Please know that we read and summarize every single letter that we receive from class members, whether or not we are able to send back a personal response. The information you provide about problems in the prisons is very useful in our efforts to improve the CDCR's mental health treatment programs. We encourage you to continue to inform us of any new problems with the CDCR's mental health treatment programs.

      Thank you for writing, and good luck.

                        Sincerely,

                        ROSEN, BIEN & GALVAN, LLP

                        By: Sofia Millham
                              Paralegal

JK:sam
Encl. Orig.

1   David W. Wilson, K66474
    R.J. Donovan, B-6-144 L
2   480 Alta Road
    San Diego, CA 92179
3     In Pro Per Paralegal

FILED
San Diego Superior Co⁻

DEC 2 ⊘ 2011

Clerk of the Superior Court
By_____

4

5

6              IN THE SUPERIOR COURT OF CALIFORNIA
                 FOR THE COUNTY OF SAN-DIEGO
7

8                                                      **37-2011-00080105-CU-WM-SC**

9   In re DAVID W. WILSON,              )    Case No.
                                        )
10      Petitioner, on behalf of himself )   PETITION FOR WRIT OF MANDATE
        and others similarly situated,  )   AND DECLARATORY RELIEF
11                                       )
                                         )
12    vs.                                )
                                         )
    GEORGE J. GIURBINO, Director Adult   )
13  Institutions; Warden(A), DANIEL PARAMO; )
    Associate Warden, Alan Hernandez, B-Fac; R.J. )
14                                       )
    Donovan, et al.,                     )
15                                       )
        Respondents.                     )
16           ⊛.                          )

17

18                  I. INTRODUCTION

19     1. Petitioner's challenge the decision of Richard J. Donovan Asu 6 Bldg for denial of

20  relief, for decision, policy condition that California Department of Corrections and

21  Rehabilitation ('CDCR') is discriminating against Administrative Segregation

22  ('Ad-Seg') Enhanced Out Patients ('EOP's) and Correctional Clinical Case Management

23  System ('CCCMS') mental prisoners, by sensory deprivation denying equal access to

24  'Educational Programs' on "Television" as General Population ('G.P.')  pursuant Cal.

25  Code Regs. title 15, section 3343(k), Institutional Program Services, which EOP's

26  are suffering worst and are in "imminent danger" due to suicidal, homicidal trend,

27  caused by "Discrimination" based on mental disabilities, violating State and Federal

28  Laws, California Gov't Code 1135(a); Cal. Code Reg. 98101(a), (f), (g), (i)(1);

                              1

Cal. title 15 section 3004(c); Americans with Disabilities Act ('ADA') 42 U.S.C. 12132, 28 CFR 35.104, .105, .160, .130; 504 of Rehabilitation Act. That is also compounded with other 'systematic defeciencies,' as Richard J. Donovan Correctional Facility ('RJD') having exacerbated No Televisions with "No" 'Library Books,' and Guards With holding Food to punish " with (Inadequate) mental health '1-On-1's & Treatment,' causing misdiagnosis nonconfidential interviews by 'sensory deprivation' along with denial of clothing, blankets, on reception Ad-Seg, and "No" proper clothing exchange, which Petitioner having brought these issues to Custody, Psy. Staff and gathering 'Affidavit's," Guards Watch TV/DVDS, With hold Mail in retalation of protected right of First Amendment to petition, and having exhausted remedies on 'sensory deprivation' Televisions, Food , Library Books, that CDCR own Rules grants these Privileges and recent Memorandums, Yet! CDCR and RJD & other prisons violate by refusing to allow Televisions from Petitioner's personal property and violates the Administrative Procedures Act, Cal. Penal Code 5058 and Gov't Code 11370, for non-Compliance for "Educational Programs" which has caused Group Suicides at 6 Bldg ASU, meeting cruel punishment, Penal Code's 147, 2652, Eighth Amendment U.S. Constitution which relief can be granted, and Respondents with held 5 months Petititioners property to deny U.S. SUPREME COURT,

## II. PARTIES

2. Petitioner DAVID W. WILSON ('WILSON') is an individual with a diagnosed psychiatric disability, (PTS) Post Traumatic Stress (Disorder) and diagnosed schizophrenic in the EOP, CCCMS program, incarcerated at Richard J. Donovan ('RJD') Correctiona Facility where 'discrimination' has happened in Ad-Seg and continues. Plaintiff Wilson is inclusive in Respondent's programs, services, activities, by reason of his disability.

3. Respondent DANIEL PARAMO is Warden of R.J. Donovan and is the legal custodian of Petitioner, as A.W., ALAN HERNANDEZ hys custodian of ASU 6 Bldg, and Petitioner's.

4. Respondent GEORGE J. GIURBINO is Director of Adult Institutions and as such is legally responsible for operations of the prisons including "RJD," CSP-LAC, CMC-E, CMF.

2

III. STATEMENT OF FACTS

5. On April 21, 2001, Petitioner placed Ad-Seg California Men's Colony East ('CMC-E').

6. On August 26, 2001, Petitioner filed 'Group Class' appeal, Exhibit's 1(T), 1(T)V CMC-E, Ad-Seg to make physical ajustments electrical cable face outlet in Order to comply with title 15, CCR, 3044(g)(4)(G); DOM 53130.7.2, **Prisoners, "Future"** Prisoner's allowed TV's, Radio or Combo TV Radio, "denied" October 8, 2001, by Lt. A.C. Burd, and A.W., T. McAlister, citing DDU at 1st Level and 2nd Level, Exhibit's 1(T)3, 1(T)3a, 1(T)3b, June 20, 2002, by A.W., D.E. Freehauf, and Deputy Warden, for Warden, Duncan, and "denied" Director's Review, Exhibit 1(T)4.

7. On January 13, 2002, Petitioner was transferred to CSP-LAC.

8. On September 23, 2003, Petitioner transferred to CSP-Solano, and December 23, 2003, transferred to R.J. Donovan.

9. On April 24, 2004, Petitioner placed Ad-Seg R.J.D., and filed appeal for Televisons compliance, Exhibit T, with Title 15, 3044(g)(4)(G), Exhibit T(1), with Form for TV's/Property, Exhibit T(2), (4)(5)(6)(8) all barred/screened by Appeals Coord., & Warden denies, Exhibits T(9), T(10).  Petitioner filed on Supplies & Library appeal Exhibit L, and denied all Levels and Director's Exhibit L(2)(6).

10. On June  23, 2004, Petitioner filed appeal for cruel and unsual "Food and Clothing" conditions in 6 Bldg. ASU, Exhibit's F, F(1), with supporting documents, like F(8), F(9), F(4)

11. On March 11, 2005, Petitioner received second Level Review after numerous attempts to procedurally barr, and sent for 3rd Level Review, to receive Exhibit 17(F), denied, which Food with no Televisions, recreational reading books compound for suicides.

12. On October 8, 2004, Petitioner transferred to CMC-E Ad-Seg and denied Legal material to file Court relief for Televisons/Radios.

13. On November 4, 2004, Petitioner transferred to California Medical Facility – Vacaville (CMF).

14. On January 3, 2005, Petitioner placed Ad-Seg, and placed October 13, 2005,

3

DISMISSED Charges, and placed January 31, 2006, DISMISSED Charges, and placed April

23, 2007, which Petitioner has on-going retalations for filing prison grievances,

Complaint's, Court actions, and witness numerous suicides attempted and assaults due

to **"sensory deprivations"** and denial of Program Educational "Televisions" or "Books,"

as Petitioner received GED, PARALEGAL, in Ad-Seg correspondence course and Television

"mainline" access programs to TV.

15. On July 13, 2007, Petitioner filed appeal, and ADA Modification, in Ad-Seg

Exhibit's AT, AT(1), additional Sheet, AT(2), with Psy. Chrono, Exhibit 3, and ADA

Rules, Exhibit's 4, 5, 8, 10, 18, for Television, and pursuant Coleman v.

Schwarzenegger, U.S. Eastern District, No. CV-00520-LKK-JFM, ORDER for CDCR's

capability to provide televisions/radios Ad-Seg, Exhibit's LK, LK(3), LK(4), LK(5),

for Petitioners Exhibit AT, appeal Television & TV/Radio Combonations allowed **"all"**

ASU's with Public Education Programs & retrofit Cable & Electric Outlet.

16. On August 29, 2007, Petitioner transferred to CSP-LAC (EOP).

17. On September 28, 2007, Petitioner received Second Level Review, Exhibit's AT(3),

AT(3)a, 'denied' by (A)cting Deputy Warden, for Warden, Hubbard, for continual 8th

Amendment and ADA violations.

18. On October 2, 2007, Petitioner responded Exhibit AT, section H., with CDCR

Memorandum's Exhibit's AT(4), AT(4)b, and AT(5), which at **AT(4)** addresses 'Court

concerns' over **"sensory deprivations"** and **'suicide'** trends in the ASU's, which CMF

request exempt from Memo's for retrofitting. This is because "I lived in Unit M-3, in

2006, & it was just retrofitted from EOP mainline February 2007, to Ad-Seg, and it

could be retrofitted in a matter of days. Therefore this allows continual discrimi-

nation & attempt to not comply with Director's guideline, which I request this

compliance to CSP-LAC, CMC-E, R.J.Donovan for Ad-Seg EOP's, and also sent Coleman

Attorney's, Exhibit's AT(5)a, response AT(5)b.

19. On January 14, 2008, Petitioner received Director's Review "denied" Exhibit

AT(6), by R.Pennington, Examiner Captain, who represents Nola Grannis, Chief Appeals,

4

representing Suzan Hubbard, Director Adult Institution, denying Equal Protection of 14th Amendment, allowing discrimination violating California Government Code 11135(a) the ADA, Rehab Act, Title 15, causing 8th Amendment condition  allowed to continue to Petitioner and Group Class, as later 'Affidavit' Exhibit AT(8), and as written Attorney's Exhibit AT(9), response AT(9)a

20. On December 24, 2008, Petitioner was released from Ad-Seg Charges DISMISSED.

21. On March 17, 2009, Petitioner was transferred to CSP-Solano, and April 2, 2009 placed in Ad-Seg, for alleged cell space taking Petitioners cell, Yet! in Ad-Seg No Television allowed, and Petitioner released April 7, 2009.

22. On July 22, 2009, Petitioner was transferred to R.J. Donovan EOP Program, where Exhibit T, T(1), T(2), was filed supra herein. Which Petitioner when placed in Ad-Seg is 'denied' from Personal Property "television" to continue Educational Programs as was watched on TV.

23. On August 11, 2009, Petitioner received 'denial' of Hebas Corpus by Los Angeles Superior Court on August 25, 2009, citing In re Rosenkrantz (2002) 29 Cal.4th 616,667 as basis for denial of habeas corpus relief, which the Court stated there was 'No' evidence in the record the Petitioner attempted to purchase a television, Exhibit LA.

The above is in error for Petitioner's have "Televisions" in personal property, and the Respondents refuse to allow out of property, or retro fit cells back for TV's.

24. On September 3, 2009, Petitioner served Notice of Appeal to Court and the Respondents, and September 17, 2009, to California Court of Appeals, denied, Exhibit EWM, transfer

25. Petitioner having filed to U.S. E.D. Court is denied April 23, 2009, Without prejudice for not paying #350 filing fee, and not demonstrating imminent danger, and appealed to U.S. COURT OF APPEALS.

26. U.S. COURT OF APPEALS denied December 22, 2010, Exhibits GWT, GWT(1),(2), and the Petitioner requested En banc, Exhibit GWT(3), and the Court denied, Exhibit GWT(4), GWT(5), May 10, 2011, received.

5

27. Petitioner could not meet U.S. SUPREME COURT Rule 13.1, to file in 90 days for certiorari as done nine (9) times, for he was placed in RJD ASU July 7, 2011, in reprisal by Lieutenant, Allamby for Exhibit's (X) MAC 2, 2a, Recall MAC for medical and systematic deficiences, given back MAC office e.g. now Ltg, and Lt. Review and Associate Warden, Hernandez, section E., the Lt. in retaliation came "only" to Petitioners Classification to Transfer, deny single cell," Petitioner filed grievance and received 128-G Chrono, Exhibit DSC(3), Classification and its "False document," for Lt. not listed and CCI, York, Captain, Steele prepared False document and Perjury, P.C. §134, §118.1, to which Petitioner filed Preliminary Injunction in U.S.E.D. Court, Exhibit DAD, DAD(1), (2), and Court ORDERED response April 28, 2011, and Petitioner made back EOP May 24, 2011, and about July 6, 2011, Petitioner 'Endorsed Retained RJD,' and Lt. Allamby placed in ASU July 7, 2011, for "Anonymous Note Threat," to another inmate, and Petitioner writes Questions to Captain for Witnesses 114-D, hearing, at ICC Petitioner ask Warden for Questions responses including Confidential Informants, Warden states 'Note' DISAPPEARED, and ICC Chrono has "False document" NO WITNESSES REQUESTED, Petitioner then has two Confidential Informants manufactured to hear fabricated threat, 115 disciplinary given and all due process denied, found guilty and A.W., Hernandez above is Witness and reviews Disposition Violating Title 15 #3320(h); People V. Superiort Court (Hamilton) 281 Cal. Rptr. 900 (Cal. App. 5 Dist. 1991), and as (A)cting Deputy Warden gives the Petitioner SHU Term, and Petitioner appealed disciplinary, denied response and placed for transfer to CAIF.

28. Petitioner was denied access to 'all' legal court cases, documents for five (5) months as Exhibit's DAP, DAP(1), DAP(3), DAP(4), prove until Courts ORDER, Exhibit's GGH, GGH(1), of November 30, 2011.

29. Petitioner filed grievance for denial of Law Library and Recreational Reading Books for, Exhibit ASLL(1), denied, and 602, Exhibit's XLL, XLL(1), XLL(4), a, b, c, sent for Director's Review, November 8, 2011, for Recreational Reading books denied and Form, as Exhibit ASU(3).

30. On July 29, 2011, Petitioner gathered Affidavit signatures of (attempted Suicides) for EOP's given Cold uncovered Food for Milk left off tray to stack 90-100 trays inside each other, & denied Lunches, short rations, or denied to attened Groups, Nurse's Drs Line; Psy. Dr's & Med. Drs by C/o Alvarado and C/o's tell us we have nothing coming, & deny to pick-up Legal & Confidential Mail & refuse to sign, and Request No C/o's Work 2 watchers in EOP's Exhibit (Psy, Relief) PR (2), and given Affidavit by inmate where speaking of Food he is removed from Cell, Slapped, property taken, Exhibit PR (3), and request for "Meal sample FORM," Exhibit PR (5), ignored, as not given some Condiments as general population, Cold Food, Officer's unsanitary, and eating the Food denying short rations, Exhibit PR (6), as Exhibit CW, given to Sgt. Guzman in for at reception Petitioner denied Clothing & Writting Supplies, and put on Cart not in U-SAVE-EM, & sign for at ASU placement, for this is part of reasons so many attempted Suicides, with Officers who tell EOP's board-up e.g. cover Window if medication or Psy. Meds not given/exspired or above denials, and use this as pretext to pepper spray/Cell extract, then claim assaulted by physically emaciated EDP who's lost 40 - 70 Lbs, all done for Sports Spectatorism to back slap, touch fist e.g. give DAP, Which Supervisors, Psy. Staff turn blind eye, eat lunch with C/o's who have No ideal of ethical conduct moral obligation, dignity in which minimum standards are required for human beings.

31. Petitioner sent August 22, 2011, Chief Medical Executive, Mary Ann Glynn, CDCR-22 for Help with seeing Psy. Dr's at reception; Psy. Tech Walk Thrus without C/os; confidentiality, Exhibit PR (7), as explained, PR (4), and gave Psy. Supervisor, Parker by Psy, Dr., Exhibit PR (8), for TV's at Groups as C/o's Watch TV, & to prevent Suicides, as denial of Lunch if go to Yard Exhibit's AS (17), (7)q, Which Food Manager, Bradford refuses to answer, Exhibit PR(6)q, for Food Relief, For Director's Memo on Response, Exhibit's GG, GG (2), GG(3), RJD, an 6 Bldg. Psy., Custody ignore Director, and why "Group Suicides" as Affidavit PR (6)b, c, MX, PR(2) & Secretary Health Care, August, at Exhibit PR (33), No Help as Petitioner's denial to see Dr. 4 1/2 months and PARALIZATION at times, Exhibit's AS (19), (21), or for Exhibit's MX(3),(2)q, TA, assaults.

7

IV.

## FIRST CAUSE OF ACTION WRIT OF MANDATE

32. Respondent has a clear, present and ministerial duty to comply with the requirements of the APA and of Penal Code §5058, and at all times relevant herein respondents has had and continues to have the duty and ability to do so.

33. Notwithstanding these duties and abilities, respondent's has failed and refused and continues to fail to perform his duty as required by law.

34. Petitioners are suffering irreparable injury in sensory deprivations, educational opportunities and have no plain, speedy and adequate remedy in the ordinary course of the law to compel respondent's to comply with the above-mentioned requirements, thereby rendering this Court's peremptory writ of mandate appropriate in that:

a) Petitioners will continue to suffer as long as respondent's fails to comply with the requirements of the APA and Penal Code; his Memorandum 4-25-2007

b) Money damages will not adequately compensate the harm cause to petitioners and those similarly situated.

V.

## SECOND CAUSE OF ACTION: DECLARATORY RELIEF

19. An actual controversy has arisen and now exists between petitioners and respondent's relating to their respective rights and duties in that petitioner contend that implementation of the scheme must follow the requirements of Penal Code §§5058 and the APA. Where as respondent's by his failure to so comply in all respects to the contrary.

VI.

## PRAYER FOR RELIEF

Petitioners are without a plain, speedy or adequate remedy

WHEREFORE, petitioners pray:

1) That the Court declare that respondent's implementation of the new discrimination illegal, and RJD retrofit 6,7, Bldg. for Electrical & Cable for Television, Radio, TV's allowed from property.

8

2) That Court grant petitioner cost and reasonable attorney's fees.

3) That the Court grant such fruther relief as it deem just and proper.

Dated: December 18, 2011                    Respectfully submitted

                                            David W. Wilson
                                            ─────────────────────
                                            David W. Wilson
                                            Petitioner


                    VERIFICATION-CCP 446 and 2015.5

State OF CALIFORNIA /
                     /  SS
COUNTY OF SAN DIEGO /


        I, the undersigned, say: I am the petitioner in the above entitled

action; I have read the foregoing Petition for Writ of Mandate and Declaratory

Relief and know the contents thereof; the same is true of my own knowledge,

except as to those matters on belief, and I make this verification because

facts set forth in the Petition are within my knowledge.

        I declare under penalty of perjury that the foregoing is true and

correct.

        Executed December 18, 2011  , at Richard J. Donovan Correctional

Facility, San Diego, California.

                                    David W. Wilson
                                    ─────────────────────
                                    David W. Wilson


                                    9

```
 1
 2
 3
 4              IN THE SUPERIOR COURT OF CALIFORNIA
                    FOR THE COUNTY OF SAN DIEGO
 5
 6   DAVID W. WILSON,              )    Case No. _____
                                  )
 7        Petitioner,             )
                                  )    ALTERNATE WRIT OF MANDATE
 8     vs.                        )
                                  )
 9   Warden,  DANIEL PARAMO  ;    )
     Richard J. Donovan Correctional )
10   Facility;  Associate Warden, ALAN )
     HERNANDEZ, B-Facility, et al., )
11                                )
                                  )
12                                )
                                  )
13                                )
                                  )
14   _____)
```

15   TO: MATTHEW CATE, as Secretary of California Department of Corrections and

16   Rehabilitation.

17       Where as it appears from the petition filed in the above-captioned

18   proceeding to be the public duty of Matthew Cate as Secretary of California

19   Department of Corrections and Rehabilitation to comply with the requirements of

20   Penal Code §5058 and the California Administrative Procedures Act (APA)

21   (Government Code §11370, et seq.) in the adoption of rules and regulations

22   concerning the administration of the California prison system; and to enforce

23   only those rules and regulations adopted in conformance therewith; and that

24   petitioner have no plain, speedy and adequate remedy in the ordinary course of

25   law;

26       Where as, by an Order of the Court set forth below

27   _____, it was ordered that a Writ of

28   Mandate should issue to you;

1  Therefore, we command of you that immediately after receipt of this writ

2  you meet public duty and suspend implementation of Discrimination at R.J.

3  Donovan for Educational Television in ASU and Reading Books and law books from Facility B

4  library back to ASU 6 Bldg Sensitive Needs Yard, which Copy/ccrms housed all access

5  books, and thereby same as Facility I, General Population access to and stops

6  discrimination against 6 Building that is compounded by the denial of Food by prison

7  Guards who agitate and antagonize verbally to physically, mentally vulnerable

8  men for deterioration to inflict cruel punishment by Nazi concentration means to

9  emasulate, and place in "imminent danger" by formenting suicide(s) for

10  contempt further by dehumanizing and unsanitary conditions to indulge

11  egotistical hubris, by denying outgoing, incoming Mail, certain supplies, medical,

12  Psy. treatment, Yard, Nail clippers, Hair cuts, clothing proper sizes, to endanger lives, that

13  custody, Psy. Supervisor's acquiesence, and all Televison watching by Guards, Tower

14  Guard, Yet! denies Asu Educational Televison violating the ADA, RA, "DD Act"

15  PAIMI Act for improper Bldg./Architecual design effecting mental treatment that the

16  Televisons would Help prepare for outside and get relief as required by Coleman

17  court order.  And unless and until you comply with the APA or show cause

18  before this Court at the Courtroom thereof at San Diego South County

19  Regional Center, San Diego, California, on

20  _____,2010, at _____ o'clock ____ a.m. of said day, or as

21  soon thereafter as counsel can be heard, why you have not done so.

22  Witness the Honorable _____ attested by my

23  [name and seal of said Court on this _____ day of _____, 2010.

24  LET THE FOREGOING WRIT ISSUE.

25  IT IS ORFDERED that a copy of this alternative writ and a copy of the

26  petition be served at least _____ days before the hearing on the above

27  order to show cause.

28  Date: _____

JUDGE OF THE SUPERIOR COURT

11

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE
PETITION FOR REVIEW

I.  Sensory Deprivation And Atypical Significant Hardship.

Sensory deprivations are on-going in CDCR prisons Administrative Segregation Units

as Petitioner here speaks of 24 hour illumination at CSP-LAC, Keenan v. Hall, 83 F.3d

1083 (9th Cir.1996) Eight Amendment violations applied still to Petitioner's, or as

Affidavit Exhibit AT(8), suicidal, homicidal trends due to sensory deprivations, at

Exhibit's AT, AT(2), 'No' educational televisions, which combined with 'No' RJ₁ 6 Bldg.

recreational books, Exhibit's XLL,XLL(4), and conditions as denied Clothing, Food, P₁y, Medical,

Ex's PR(2),(10)(7)(4),(10)b,c, AS(2)as Sandlin v. O'Conner, 515 U.S. 132 L.Ed.2d 418,115 S.Ct. 2293

(1995) the inmate is subjected to atypical significant hardship "compared" to

ordinary incidents of life. Petitioner's are denied above and denied improper

psychological/medical diagnosis, prognosis, at Exhibit PR(4), placing in "imminent

danger" See Andrews v. Cervantes, 493 F.3d 1047 (2007) at 1056,

(6) We therefore hold Andrews satisfied the "imminent danger" standard,. (FN10) In

other words, a prisoner who 1057 alleges that prison officials continued with a

practice that has injured him or others similarly in the past will satisfy the

"ongoing danger" standard and meet the imminence prong of the three-strikes exception

See Ciarpaglini, 352 F.3d at 330-31 (finding prisoner's allegations meet the

"imminent danger" requirement when the prison's decision to stop providing

medications had caused a number of physical aliments) . . . As we noted earlier, 1915

merely establishes a threshold procedural question and does not ask the court to

evaluate the merits of the suit.   In Ramos v. Lamm, 639 F.2d 559,568 (10th Cir.1980)

prisoners are entitled to "shelter which does not. . . threaten "their" mental and

physical well being." cert. denied 450 U.S. 1041 (1981). Which sensory deprivations

cannot be ignored in Ad-Seg EOP Programs, where it is unconstitutional to inflict

"serious psychological pain" on inmates to serve "minor (correctional concerns),"

"routine and automatic security concerns," or "pragamitic interest of lesser

12

1  significant," Jorden v. Gardner, 986 F.2d 1521,1530 (9th Cir.1993) en banc.  Which

2  Eighth Amendment standard "draw(s) it meaning from evolving standards of decency that

3  mark the progress of a maturing society," Rhodes v. Chapman, 452 U.S. at 346,

4  quoting Trop v. Dulles, 356 U.S. 86,101,78 S.Ct. 590 (1958); Helling v. McKinney, U.S.

5  113 S.Ct. 2475,2480 (1983).See Farmer v. Brennan, U.S. 114 S.Ct. 1970,1977 (1994)

6  Deliberate indifference falls some where between negligence (careleness) and actual

7  malice Farmer  114 S.Ct. at 1978; Wilson v. Seiter, 111 S.Ct. at 2326.

8       Petitioner can state unequivocally he has seen and herd mental prisoner's attempt

9  suicide and hurt others from sensory deprivation in Ad-Seg, and CDCR's own Memo's

10  allow televisions and to retro fit Ad-Seg speaks to deprivation which Petitioner has

11  witness "D E A T H S" do to unquestioned basic human needs Out of Cell time, and

12  educational programs which 'Break' idleness, frustration, mental psychosis from lack

13  of mental treatment and programs for Rehabilitation for outside life, Exhibit LH(X)2.

14   II.   Televisions and Library, Library Books and Program Services and Compliance
15         To Administrative Procedures Act.

16  California Code of Corrections, title 15 section 3343 Conditions of Segregated

17  Housing:

18   (k), Institution Programs and Services.  Inmates assigned to segregated housing

19  units will be permitted to participate and have access to such programs and services

20  as can be reasonably provided within the unit without endangering security or the

21  safety of persons.  Such programs and will include, but are not limited to:

22  education, commissary, library services, social services, counseling, religious,

23  guidance and recreation.

24   (i), Reading Material.  Inmates assigned to administrative segregation including

25  special purpose segregated housing, will be permitted to obtain and possess the same

26  publications, books, magazines and newspapers as inmates of the general population,

27  except that the quantity may be limited for safety and security reasons. Library

28  services "will" be provided and "will" represent a cross-section of material

13

1    available to the general population.

2    Petitioner state "educational program services" are provided by Television on

3    Institutional Channels in all prison, and a ("Scheme") was undertaken to deny Ad-Seg

4    Petitioner's benefit of this program and service, as well as at RJD 6 Bldg.'No' Library

5    Books are given as  provided the general population, or other CDCR segregation Units.

6    In Hillary v. Rushen, 720 F.2d 1132 (1983) District Judge W. Schwarzer, J. issued

7    permanent injunction that California law required Department of Corrections to

8    follow procedures of California Administrative Procedures Act concerning the types of

9    personal property prisoners in California were allowed to possess. West Ann. CAL.

10   Penal Code 5058(a); West Ann. Cal. Gov. Code 11340 et seq.  Also in Stoneham v. Rushen

11   203 Cal. Rptr.20 (Cal.App.1 Dist. (1984) The court stated at The appeal page 23-24,

12   Where the Legislature has delegated to an administrative agency the responsibility to

13   implement a statutory scheme through rules and regulations, the Courts will interfere

14   only where the agency has clearly over stepped its statutory authority or violated a

15   constitutional mandate.

16   In Wright v. Rushen, 642 F.2d 1129 (1981) at page 1135  APPENDIX

17   PRELIMINARY INJUNCTION III  6.  Access to educational television programs 'shall' be

18   provided.

19       III. Disability Based Discrimination and Compliance California Title 15 and
             ADA Act and Rehab Act and California Government Code 11135.

20
21   California Code of Corrections, title 15 section 3004 Rights and Respects of Others:

22       (c), Inmates, parolees and employees will not subject other persons to any form of

23   discrimination because of race, religion, nationality, sex, political belief, age, or

24   "mental handicap."

25           Title II of Americans with Disabilities Act of 1990, herein supra,

26   Exhibit's 8 - 9, Provides "no qualified individual with a disability shall, by

27   reason of such disability be excluded from participation in or be denied the benefits

28   of the services, programs or activities of a public entity, or be subjected to

     discrimination by any such entity." 42 U.S.C. 12132. By no later than July 26, 1992,

                                        14

1  public entities were required to complete an evaluation of its services, policies,

2  and practices, and the effects thereof on persons with disabilities, and to make any

3  modifications necessary to ensure that the requirements of Title II are meet.

4     In providing any aid, benefit or service, a public entity "may not. . (d)eny a

5  qualified individual with a disability the opportunity to participate in or benefit

6  from the aid, benefit or service," (a)fford a qualified individual with a disability

7  an opportunity in or benefit from the aid, benefit, or service that is not equal to

8  that afforded others." "(P)rovide a qualified individual with a disability with an

9  aid, benefit, or service that is not as effective in affording equal opportunity . .

10  as those provide to others," or "(o)therwise limit a qualified individual with a

11  disability in the enjoyment of any right, **privilege**, advantage, or opportunity

12  enjoyed by others(•)" Exhibit's 9 - 10, herein supra, at Exhibit 10.

13     Further, "(a) public entity may not. . . utilize criteria or methods of

14  administration . . . (t)hat have the effect of subjecting qualified individuals with

15  disabilities to discrimination on the basis of disability(• ) 28 C.F.R. 35.130(b)(3)

16  (i). Nor may public entity "impose or apply eligibility criteria that screen out

17  or tend to screen out an individual with a disability or any **class** individuals with

18  disabilities from fully and equally enjoying any service, program, or activity unless

19  such criteria can be shown to be necessary (• ) 28 C.F.R. 35.130(b)(8).

20     Finally, "(a) public entity shall administer services, programs, and activities

21  in the most intergrated setting appropriate to the needs of qualified individuals

22  with disabilities." 28 C.F.R. 35.130(d).

23          Section 504 of the Rehabilitation Act of 1973, states that:

24  "(N)o otherwise qualified individual with a disability . . shall, soley by reason

25  of her or his disability, be excluded from participation in, be denied the benefits

26  of, or be subjected to discrimination under any program or activity receiving

27  Federal financial assistance." 29 U.S.C. 794(a).  Nearly 40 years ago, recipients of

28  federal assistance were required to complete a self-evaluation of their programs and

activities, were accessible and useable by persons with disabilities. See, e.g. 28

C.F.R. 42.521; 45 C.F.R. 84.22.

California Government Code Section 11135, states that:

"(N)o person in the State of California shall, on the basis of . . . disability, be

unlawfully denied full and equal access to the benefits of, or be unlawfully

subjected to discrimination under, any program or activity that is conducted,

operated, or administered by the State or by State agency, is funded directly by the

state, or receiving any **financial assistance** from the State." Under California

Government Code Section 11135(a) states that: it is a discriminatory practice for

a covered entity, on the basis of a physical or <u>mental disability</u>. "to deny a person

the opportunity to participate in or benefit from an aid, benefit or service,"

"to afford a person the opportunity to participate in or benefit from aid, benefit or

service that is **not equal** to that afforded others," "to provide a person with aid,

benefit or service that is not as effective in affording an **equal opportunity**," "to

exclude a person from participation as a member of a planing or advisory board," "to

otherwise limit a person in the enjoyment of any right, <u>**privilege**</u>, advantage or

opportunity enjoyed by others," or "to utilize criteria or methods of

administration that . . . have the purpose or effect of subjecting a person to

discrimination on the basis of . . . disability." 22 Cal. Code Reg. 98101(a) – (c),

(f), (g), (i)(1).

Petitioner WILSON and other's similarly situated have been denied the

opportunities and benefit of the program, services, and activities offered by the

Respondents, and Respondents 'have not' done self-evaluation for their programs,

services, activities, and are using policies, practices that have a disparate impact

on, and which screen out or tend to screen out inmate's in segregation with

psychiatric disabilities, including Petitioner Wilson, which Respondents receive State

and Federal financial assistance, are using to discriminate against inmates with

psychiatric disabilities, violating State and Federal Laws, and 14th, 8th Amendment.

## PROOF OF SERVICE BY MAIL

STATE OF CALIFORNIA      )

                             ) SS

COUNTY OF  SAN DIEGO )

[C.C.P. §§ 446, 2015.5; 28 U.S.C. §1746]

I, David W. Wilson , am a resident of the State of California and am over the age of eighteen years and am not a party to the above-entitled action. My address is listed below.

On December 18, 2011, 1-23-2012, I served the following documents:

by placing a true copy thereof enclosed in a sealed envelope with First Class postage thereon fully prepaid in the United States Mail by delivering to prison officials for processing through the Institution's internal legal mail system at San Diego California, addressed as follows::

CHULA VISTA SUPERIOR COURT
SOUTH BAY REGIONAL CENTER
500 3rd Avenue
Chula Vista, CA 91910-5694

R.J. Donovan
Warden, Daniel Paramo
480 Alta Vista Road
San Diego, CA 92179

OFFICE OF ATTORNEY GENERAL
110 West "A" Street, Suite 1100
P.O. Box 85266
San Diego, CA 92186-5266

Director of Adult Institutions
George J. Giurbino
1515 "S" Street
P.O. Box 942883
Sacramento, CA 94283-0001

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct. Executed in the County of San Diego, California on December 18, 2011 1-23-2012

David W. Wilson, K66474
R. J. Donovan, B-6-144 L
P.O. Box 799002, 480 Alta Road
San Diego, CA   92179-900

Pursuant to the holding of the United States Supreme Court in Houston v. Lack 108 S. Ct. 2379, 487 U.S. 266, 101 L.Ed.2d 245 (1988) and FRAP, Rule 4 (c) inmate legal documents are deemed filed on the date they are delivered to prison staff for processing and mailing via the Institution's internal legal mail procedures.

received 7-2-2002, from CMC-East

**INMATE/PAROLEE** ~~Case 2:90-cv-00520-KJM-SCR~~ ~~Document 4181~~ ~~Filed 05/09/12~~ Page 30 of 100 (5)
**APPEAL FORM** JUN 24
CDC 602 (12/87)                          CMC - E
                                    1. 01-01831
                                    2. _____  Exhibit 1 (T)

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|------|--------|-----------|------------------|
| D. Wilson PAVI | K66474 | unassigned | 4224 |

A. Describe Problem: Myself and other (Ad-Seg) Administrative Segregation Prisoners Who sign onto this appeal, agree, coinside "We request TV, televisions or Radios or radio/TV combination units out of our propery, or to be able to order one special canteen purchase of TV or Radio or combination radio/TV unit per CCR Title 15# 3044 (a)(4)(G), DOM 53130.7.2: Privilege Group D • Inmate Work and Training Incentive Groups, Myself other Prisoners in CMC East (Ad-Seg) can do 5 to 6 months to 1 year fighting mostly non-disciplinary 115s and we receive short (SHU) Terms. There is already electrical outlet and cable outlet in

If you need more space, attach one additional sheet. **Continued Page 1 of 2 Additional Sheet**

B. Action Requested: CMC East (Ad-Seg) make physical ajustments electrical, cable face outlet in order to comply with CCR #3044 (a)(4)(G) DOM 53130.7.2" myself other Prisoners, future Prisoners allowed TV, Radios or Combo TV radio, If not let any an all be accountable to courts for discrimination and degradation of (Ad-Seg). Will seek damages for Liability, Obligation, Exemplary, Future Detriment at individual and offical capacities

Inmate/Parolee Signature: _David W. Wilson_     Date Submitted: 8-26-2001

C. INFORMAL LEVEL (Date Received: _____ _____ )

Staff Response: _____

BYPASS

Staff Signature: _____  Date Returned to Inmate: _____

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

BYPASS

Signature: _____  Date Submitted: _____
Note: Property/Funds appeals must be accompanied by a completed
Board of Control form BC-1E, Inmate Claim

CDC Appeal Number:

AUG 3 0 2001

OCT 25 2001

CMC APPEALS OFFICE

First Level ☐ Granted ☐ P. Granted ☒ Denied ☐ Other

E. REVIEWER'S ACTION (Complete within 15 working days): Date assigned: AUG 3 0 2001 Due Date: OCT 1 5 2001

Interviewed by: — SEE ATTACHED RESPONSE —

Staff Signature: AC Bull Title: LT Date Completed: 10-8-01

Division Head Approved: Returned

Signature: TK Title: AWO Date to Inmate:

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response. Dissatisfied the DD cells or Diciplinary Dention units spoken in Memo of 10-8-2001, Exhibit 2(N)0, paragraph 5 of CMC East are above CMC East Hospital or if inmate behavior or necessary securit control needed, inmates are placed here above CMC Hospital or (Ad-Seg) Central housing. (Ad-Seg) Annex B-Quad is not normally used as a DDU, We here are taken to DDU above haspial if problem in (Ad-Seg) Annex. 1st first level Reviewer plain error. Request TV's or Radios or Combination TV/Radio units, per CCR #3044(9)(4)(G), DOM 53130.7.

Signature: David W. Wilson Date Submitted: 10-22-2001

Second Level ☐ Granted ☐ P. Granted ☒ Denied ☐ Other

G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned: Due Date: Amended 2010

☐ See Attached Letter

Signature: [illegible] Date Completed: 3-14-02

Warden/Superintendent Signature: M. [illegible] CDAO 6-31-02 Date Returned to Inmate: MAR 19 2002

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response. Dissatified second level Reviewer denies TV's or TV/Radio Combonations stating security and TV's can be dismantled to make weapon stock, and cites CCR# 3190 stating TVS not allowed in CMC-East, Wrong TV's, Radios are already allowed in CMC-East, still request compliance with CCR#3044(9)(4)(G), also at level IV Maximum security I am at CSP LAC Ad-Seg TV's are allowed per CCR #3044 (9)(4)(G), DOM [redacted] 53130.72 see Exhibit 3(P), still request compliance with above rules

Signature: David W. Wilson Date Submitted: 3-28-2002

resubmitted 7-7-2002

For the Director's Review, submit all documents to: Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

DIRECTOR'S ACTION: ☐ Granted ☐ P. Granted ☒ Denied ☐ Other

☐ See Attached Letter

Date: AUG 2 6 2002

CDC 602 (12/87)

Case 2:90-cv-00520-KJM-SCR    Document 4181    Filed 05/09/13    Page 32 of 100

Copy 1 of 2

602 Appeal
Additional Sheet

8-26-2001
around 6:00 AM
Exhibit 1(s)V

Continued

(Ad-Seg) B-Quad, only face plate covered. We are all willing to comply with loudness rules and if required Headphones for TV's, Radio or combination units. We are aware their is always the panacea to deny under penalogical justification of safety and security or self-inflicted harm. Yet there is no more greater need of safety and security at CMC East (Ad-Seg), than any other CDC (Ad-Seg/SHU) ur As for self-inflicted harm, here we are allowed **sheets**, towels, Pillow cases, blankets, T-shirts, under wear, toilet paper, plastic bags for beverages coffee, coco, TV's/Radios cause no more self-inflicted than a wall, metal sink, metal toilet, metal desk, door, metal walls.

The following Inmate's, Convicts agree, coinside with above statemer and request TVs televisions or Radios or TV/Radio combination units be allowed out of their property, and if none, one special canteen purchas of TV or Radio or combonation unit per CCR#3044 (9)(4)(G), DOM 53130.7.2

| Signature | CDC Number | Cell # | Date | How long in Ad-Seg | Print Name |
|---|---|---|---|---|---|
| David W. Wilson | K66474 | 4224 | 8-26-2001 | 5 months | David W. Wilson |
| Roderick Barnett | J-55996 | 4237 | 8-26-01 | 3 months | Roderick Barnett |
| Raja Marco | P# 97160 | 4241 | 8-26-01 | 3 months | R marco ceja |
| Jeffrie Miller | D-22264 | 4202 | 8-26-0 | April -01 | Jeffrie Miller |
| Espinoza V.G. | H99032 | 4206 | 8-26-01 | 5½ mos. | Victor D Espino |
| John C. Pollet | E81212 | 4211 | 8-27-01 | 3½ mos | John C. Pollet |
| William Miller | K-09248 | 4214 | 8-27-01 | 3½ mos | William Miller |
| Mauricio Avolevel | T00046 | 4222 | 8-27-01 | 5½ mos | Mauricio Avolevel |
| Fred Santy | P42352 | 4223 | 8-27-01 | 6 mos | Fred Santy |
| kirk Los | K61951 | 4218 | 8-28-01 | Feb.01 | |
| | | | | | |
| | | | | | |

State of California                  received 7-2-2002          Exhibit 1(f)3
                                                                Department of Corrections

# Memorandum

Date:    June 20, 2002

To:      Wilson, David, K-66474
         California State Prison, Los Angeles County

From:    California Men's Colony

Subject: SECOND LEVEL AMENDED APPEAL RESPONSE
                  LOG NO.:    CMC-E-01-01831

ISSUE:

GROUP APPEAL

You state that televisions and/or radios should be allowed in Administrative Segregation
(Ad-Seg), as they in your opinion do not pose a threat to the safety and security of the
Institution. You feel that under Privilege Group D that you should be entitled to these
appliances.

To be allowed to have televisions and radios while housed in Ad-Seg.

INTERVIEWED BY: The Appeals Office on December 19, 2001.

REGULATIONS: The rule governing this issue is:

**California Code of Regulations (CCR), Title 15, Section 3044. Inmate
Work and Training Incentive Groups.**
        (g) Privilege Group D:
        (1) Criteria: Any inmate housed in a special segregation unit,
voluntarily or under the provisions of sections 3335-3345 of these
regulations who is not assigned to either a full-time or half-time
work/training assignment.
        (2) An inmate in Privilege Group D shall not be issued a privilege
card.
        (3) Any inmate removed from the general population due to
disciplinary or administrative reasons, shall forfeit their privilege card and
privileges within their general population privilege group pending review
by a classification committee.
        (4) Privileges and non-privileges for Privilege Group D are as
follows:
        (F) May be permitted to receive one special package, not to exceed
30 pounds maximum weight, per year.

**CCR 3190. General Policy.**
        (a) Wardens and superintendents shall establish a list of personal
property items and the maximum amount of such items an inmate may

WILSON, DAVID, K-66474
CASE NO. 01-01831
PAGE 2

*Exhibit 1(T)3a*

have in his or her possession within the institution. Institutions shall permit inmates to possess in their living quarters, in addition to state property items issued to an inmate, personal property items that present no threat to institution security or the safety of persons.

**CCR 3332.  Administration and Supervision of Detention Units.**
(a) Plan of Operation. Each warden and superintendent will establish and maintain a plan of operations for the disciplinary detention of inmates, whether in a unit or section of a unit designated for this specific purpose or in conjunction with other special purpose housing of inmates. Such plans will conform to the provisions of this article and will be updated as necessary to reflect current procedures and practices. A copy of the plan will be submitted to the director for review and approval annually, as scheduled for required plans.

**CCR 3343.  Conditions of Segregated Housing.**
(c) Clothing. No inmate in administrative segregation will be required to wear clothing that significantly differs from that worn by other inmates in the unit, except that temporary adjustments may be made in an inmate's clothing as is necessary for security reasons or to protect the inmate from self-inflicted harm. No inmate will be clothed in any manner intended to degrade the inmate.

**The California Department of Corrections, Department Operational Manual (DOM) states in part:**

**53130.7.2 Group Privileges and Restrictions**
*Privileges for Group D are as follows: May be permitted to receive one special package, not to exceed 30 pounds maximum weight, per year. One special canteen purchase of one television or one radio or one radio/TV combination unit.*



**The California Men's Colony Administrative Segregation Guidelines states in part:**

*L.    Personal Property*
*Inmates confined in the ASU Central and Annex Units shall not be permitted to have personal property in their actual possession during their confinement in the Units.*

The Warden has the authority to establish a list of personal property that is allowed in any area of the institution per CCR, Title 15, Section 3190.  He has made the determination that televisions & radios are security risks to the institution as they can be dismantled to make weapon stock.   All the inmates that participated in this group appeal have transferred from the California Men's Colony.

DECISION:  The appeal is denied.

The appellant shall, pursuant to CCR Section 3084.2(f)(2), share this response with the other inmates who signed this appeal.

WILSON, DAVID, K-66474
CASE NO. 01-01831
PAGE 3

Exhibit 1(T)36

The appellant is advised that this issue may be submitted for a Director's Level of Review if desired.

D. E. FREEHAUF
Associate Warden Inmate Services

W. DUNCAN
Warden

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS
INMATE APPEALS BRANCH
P. O. BOX 942883
SACRAMENTO, CA 9 4883-0001

Exhibit 1(T) 4

# DIRECTOR'S LEVEL APPEAL DECISION

Date:  AUG 2 6 2002

Group Appeal

ln re:   Wilson, K-66474
California State Prison, Los Angeles County
44750 - 60th Street West
Lancaster, CA 93536-7620

IAB Case No.: 0200405       Local Log No.: CMC 01-01831

This matter was reviewed on behalf of the Director of the California Department of Corrections (CDC) by Appeals Examiner William P. Mallot. All submitted documentation and supporting arguments of the parties have been considered.

I   **APPELLANT'S ARGUMENT:** It is the appellant's position that television (TV)'s and/or radios should be allowed in the Administrative Segregation Unit (ASU). The appellant contends that in his opinion these items due not pose a threat to the safety and security of the institution. The appellant requests to be issued his television and/or radio while housed in the ASU.

II   **SECOND LEVEL'S ARGUMENT:** It is staff's position that the appellant's appeal has been thoroughly reviewed. The appellant's allegations were addressed and refuted in the Second Level of Review response.

III   **DIRECTOR'S LEVEL DECISION:** Appeal is denied.

   **A. FINDINGS:** All submitted documentation and supporting arguments of the parties have been considered. The documentation and arguments presented are persuasive that this appeal was addressed appropriately at the Second Level of Review.

   The appellant's allegations were investigated and were determined to be unfounded. Inmates shall possess only those items specifically authorized by the institution head and acquired pursuant to the CCRs. He has not provided evidence that the institution negligently denied to provide him a television and/or radio. As indicated in the Second Level of Review response the warden has made the determination that televisions and radios are considered security risks in the ASU as they can be dismantled to make weapon stock. The requirement of custodial security and of staff, inmate and public safety must take precedence over all other considerations in the operation of all the programs and activities of the institution. Therefore, the appellant's request is found to be without merit.

   He has not provided compelling argument to warrant modification of the decision reached by the institution.

   **B. BASIS FOR THE DECISION:**
   California Code of Regulations, Title 15, Section (CCR): 3044, 3190, 3270, 3332, 3343, 3380

   **C. ORDER:** No changes or modifications are required by the institution.

The appellant shall, pursuant to CCR section 3084.2(f)(2), share this response with the other inmates who signed this appeal.

This decision exhausts the administrative remedy available to the appellant within CDC.

*Rick Manuel*

4/  LINDA L. RIANDA, Chief
Inmate Appeals Branch

cc:   Warden, LAC
Appeals Coordinator, LAC
Appeals Coordinator, CMC

Exhibit T

INMATE/PAROLEE
APPEAL FORM

CDC 602 (12/87)

Location: Institution/Parole Region      Log No.                    Category Exhibit T

1. _____    1. _____
2. _____    2. _____

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|---|---|---|---|
| WILSON, DAVID | K66474 | Ad-Seg/EOP | 2-6-#240 |

A. Describe Problem: I request hereto attached as Exhibit T(1), Title 15 CCR#3044(g)(4)(5), to be allowed special canteen purchase of one television or one radio or radio/TV combination unit, Or if in property en to myself or any Inmate in CDC ASU & RJD, and for cells retrofitted back to cable & electrical tlet by shelf lockers, & hereto attached as Exhibit T(2), for Property Request Form to include "Appliance," uested pursuant Privilege Group D, Penal Code's §§2932, §2933, §5058; In re Monigold (1988) 205 Cal. 3d 1224; In re Randolph (1989) 215 Cal. App. 3d 790; In re Carter (1988) 199 Cal. App. 3d 271; People v. rnes (1985) 176 Cal. App. 3d 235; Miller v. Rowland (9th Cir. 1943) 999 F.2d 381. I am in ASU for non-disciplinary as similar at CMC-East, to which 3rd Level Review, Request compliance to above & the (APA) No delays, extensions appeal, & meet Time Constraints CCR#3084, H(B).

If you need more space, attach one additional sheet.

B. Action Requested: CDC & RJD to come into compliance with CCR#3044(g)(4)(G)& #3343(b). If not let any all be held accountable to Courts for degredation of above & P.C.'s §2932, §2933, §5058, 2600; 5th & 14th Amend.; APA, Will seek damages for Liability, Obligation, Exemplary, Detriment, Future Detriment, motional Stress, Mental Anguish, at individual and Official capacities, With retrofitting for Appliances.

Inmate/Parolee Signature: David W. Wilson          Date Submitted: 8-17-2004

C. INFORMAL LEVEL (Date Received: _____ )

Staff Response: _____

_____

_____

_____

Staff Signature: _____    Date Returned to Inmate: _____

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

_____

_____

_____

_____

Signature: _____          Date Submitted: _____

Note: Property/Funds appeals must be accompanied by a completed
Board of Control form BC-1E, Inmate Claim

CDC Appeal Number: _____

(B) One-fourth the maximum monthly canteen draw as authorized by the director.

(C) Telephone calls on an emergency basis only as determined by institution/facility staff.

(D) Yard access limited by local institution/facility security needs. No access to any other recreational or entertainment activities.

(E) No accrual of excused time off.

(F) No special packages.

(G) No special canteen purchases.

(g) Privilege Group D:

(1) Criteria: Any inmate housed in a special segregation unit, voluntarily or under the provisions of sections 3335–3345 of these regulations who is not assigned to either a full-time or half-time work/training assignment.

(2) An inmate in Privilege Group D shall not be issued a privilege card.

(3) Any inmate removed from the general population due to disciplinary or administrative reasons, shall forfeit their privilege card and privileges within their general population privilege group pending review by a classification committee.

(4) Privileges and non-privileges for Privilege Group D are as follows:

(A) No family visits.

(B) One-fourth the maximum monthly canteen draw as authorized by the director.

(C) Telephone calls on an emergency basis only as determined by institution/facility staff.

(D) Yard access limited by local institution/facility security needs. No access to any other recreational or entertainment activities.

(E) No accrual of excused time off.

(F) May be permitted to receive one special package, not to exceed 30 pounds maximum weight, per year.

(G) One special canteen purchase of one television or one radio or one radio/TV combination unit.

(h) Privilege Group U:

(1) Criteria: Reception center inmates under processing.

(2) An inmate in this category shall not be issued a privilege card.

(3) Privileges and non-privileges for Privilege Group U are:

(A) No family visits.

(B) Canteen Purchases. One-half of the maximum monthly canteen draw as authorized by the director.

(C) Telephone calls on an emergency basis only as determined by institution/facility staff.

(D) Yard access, recreation, and entertainment limited by local institution/facility security needs.

(E) No accrual of excused time off.

(F) No special canteen purchases.

(G) No special packages.

(i) Inmates shall retain in their possession any privilege card issued them for eligibility to receive designated privileges. Each inmate shall present the card upon staff request in order to receive or participate in an authorized privilege, and may be denied the privilege if the card is not presented.

NOTE: Authority cited: Sections 2700, 2701 and 5058, Penal Code. Reference: Sections 2932, 2933, 2935, 5005, 5054 and 5068, Penal Code; and *In re Monigold*, 205 Cal.App.3d 1224.

[For related information see DOM Subsections 53130.6 and 53130.7.]

HISTORY:

1. Change without regulatory effect of subsection (c)(1) and NOTE pursuant to section 100, title 1, California Code of Regulations filed 12-28-89 (Register 90, No. 1). For prior history, see Register 88, No. 50.

2. Relocation of (a) to section 3045, amendment of redesignated (c)(4)–(f), new subsections (c)(8)–(9) and (i) and subsection renumbering filed 12-20-91 as an emergency; operative 12-20-91 (Register 92, No. 4). A Certificate of Compliance must be transmitted to OAL 4-20-92 or emergency language will be repealed by operation of law on the following day.

3. Editorial correction of printing errors (Register 92, No. 4).

4. Editorial correction of printing error in subsection (b)(1) (Register 92, No. 5).

5. Certificate of Compliance as to 12-20-91 order transmitted to OAL 4-20-92 and filed 5-28-92 (Register 92, No. 24).

6. Amendment of subsections (d)(3)(A) and (e)(3)(A) filed 2-27-95 as an emergency; operative 5-30-95 (Register 95, No. 9). A Certificate of Compliance must be transmitted to OAL by 11-6-95 or emergency language will be repealed by operation of law on the following day.

7. New subsections (f)(3)(H), (g)(4)(H) and (h)(3)(H) and amendment of NOTE filed 6-30-95 as an emergency; operative 7-1-95 (Register 95, No. 26). A Certificate of Compliance must be transmitted to OAL by 12-7-95 or emergency language will be repealed by operation of law on the following day.

8. Amendment of subsections (d)(3)(A) and (e)(3)(A) refiled 11-7-95 as an emergency; operative 11-6-95 (Register 95, No. 45). A Certificate of Compliance must be transmitted to OAL by 4-14-96 or emergency language will be repealed by operation of law on the following day.

9. Certificate of Compliance as to 6-30-95 order transmitted to OAL 11-22-95 and filed 1-8-96 (Register 96, No. 2).

10. Editorial correction of HISTORY 8 (Register 96, No. 21).

11. Reinstatement of subsections (d)(3)(A) and (e)(3)(A) as they existed prior to emergency amendment filed 5-30-95 pursuant to Government Code section 11349.6(d) (Register 96, No. 21).

12. Amendment of subsections (d)(3)(A) and (e)(3)(A) filed 6-7-96 as an emergency; operative 6-7-96 (Register 96, No. 23). A Certificate of Compliance must be transmitted to OAL by 10-7-96 or emergency language will be repealed by operation of law on the following day.

13. Change without regulatory effect amending subsection (e)(2) filed 7-16-96 pursuant to section 100, title 1, California Code of Regulations (Register 96, No. 29).

14. Certificate of Compliance as to 6-7-96 order transmitted to OAL 10-3-96 and filed 11-18-96 (Register 96, No. 47).

15. Repealer of subsections (f)(3)(H), (g)(4)(H) and (h)(3)(H) and amendment of NOTE filed 1-2-98 as an emergency; operative 1-2-98 (Register 98, No. 1). Pursuant to Penal Code section 5058(e), a Certificate of Compliance must be transmitted to OAL by 6-11-98 or emergency language will be repealed by operation of law on the following day.

16. Certificate of Compliance as to 1-2-98 order transmitted to OAL 6-9-98 and filed 7-21-98 (Register 98, No. 30).

3045.  Timekeeping and Reporting.

(a) Inmate time cards. The daily credit earnings of each inmate assigned to a credit qualifying assignment shall be recorded on CDC Form 191 (Rev. 11/85), Inmate Time Card. If the assignment began or ended during the reporting month, the date(s) of such activity shall be recorded on the form. Only the symbols designated on the CDC Form 191 shall be used to document the inmate's status. The symbol(s) and applicable hours for each day shall be recorded in the space corresponding to the calendar day.

(1) Staff shall record the work or training time and absences of each inmate assigned to their supervision on the CDC Form 191 each day as they occur. At intervals designated by the institution head, the supervisor shall:

(A) Enter the totals for days credit, hours worked and ETO hours used in the designated columns of each form.

(B) Sign the form to authenticate the information.

(C) Forward the form to the division head for review and approval.

PERSONAL PROPERTY REQUEST

Exhibit T (2)

| NAME | | | CDC NUMBER |
| --- | --- | --- | --- |
| DATE | | CELL NUMBER | DATE OF AD-SEG PLACEMENT |

| APPROVED PROPERTY | DESCRIPTION |
| --- | --- |
| LEGAL MATERIAL – MUST BE CURRENT COURT CASE, SUBSTANTIATED BY THE LAW LIBRARIAN | |
| APPLIANCE TV OR RADIO – ONE (1) ONLY SERGEANT VERIFICATION | |
| ONE (1) ADDRESS BOOK (3" X 5") | |
| SHOWER THONGS | |
| TENNIS SHOES (Soft Shoe Chrono Only) You must attach Soft-Shoe Chrono with this request. You must obtain from MTA. | |
| DENTURES | |
| PHOTOS (MAXIMUM TOTAL OF FIFTEEN – 15) | |
| PRESCRIPTION GLASSES (NO METAL CASE OR CLIPS) | |
| ONE (1) SOFTBACK BIBLE | |

NOTE: THE ABOVE LISTED ITEMS WILL BE ISSUED

HEREBY AUTHORIZE THE LISTED ITEM(S) TO BE REMOVED FROM MY PROPERTY AND ISSUED TO ME.

| Inmate | DATE |
| --- | --- |

| Administrative Sergeant | DATE |
| --- | --- |

Exhibit T (4)

Appeals Coordinator, H.D.S.P.          pg 1 of 3

Sir!

Will "you" Please! Log in this Appeal on Appliances, for in # 6 Bldg
Ad-Seg Appeals or Lost, disappears, Not responded to, & 602
appeals are not given out see Appeal of 7-11-2004, OVER DUE on
Supplies Writing Material, Request Reviewer, Due Date, "Assignment
Notice" pursuant DOM 54/00.9, if not no recourse but to send to
Warden, Hernandez and government officials, & the courts, copies
to intervene On our behalf.

Thank "You"

August 17, 2004                    David W. Wilson, K66474
                                   Cell 2-6-# 240

Lt. A. Avda, #6 Bldg A1 Seg

Sir!

Exhibit T (5)
copy 1 of 3
August 25, 2004

Here attached as Exhibit T (3), is Screening Form from Appeals Coordinator, Cota, for 602 Appeal written 8-17-2004, for "Appliances" pursuant CCR # 3044 (3)(4)(G), or "New" amended to as 1-1-04, relocated to subsection 3190(j)(3), as given to me 8-18-04, by San Diego County, Superior Court Judge, Kerry Wells. In the 602 appeal is Exhibits T, 602, T(1) Additional Sheet, T(2) Property Report Form,

The Appeals Coordinator, states, "I have not attempted to resolve at Informal Level With, ASU Lt , Sir! if this appeal is not responded to in time Constraints I have No recourse but to forward copies of this to other ASU #6 Bldg issues to (RPA), Inspector General, U.S. Justice Dept, Bureau of Prisons, Washington DC, & Superior Court, Chula Vista, CA. Please! respond to this appeal or first to Warden, Hernandez. Thank You

Wilson, K66474
CII 2-6-#240

Exhibit T(4)

David W. Wilson, K66494
R.J. Donovan, 2-6-#240
480 Alta Road
San Diego, CA 92179

Keep Permanently attached

Copy 1 of 3

August 31, 2004

To: Appeals Coordinator, And I.C.C. (R.J. Donovan)

Re: Requested Log# Number Because You Sent Appeal-Notice For 602
    OF 8-17-04, For Lt. A. Avila Claim Not-Processed Archeron Appeal

Appeals Coordinator, Placed I sent this 2 Appeal of 8-17-04, in Appliance which
I received your Screening Form 8-25-04, stated hehad said to received Informal
Level with Avila Lt. Sir...
...Exhibit T(5)...letter complying to your request.
...review hereto attached as Exhibit T(4)...
...original Appeal wanted to you...
Lt. Avila today when I came from Formal Informer I asked the reason
this appeal he stated No...Warden
and Sacramento Offices, Director and this along with who denies of Adding
in Lt. Avila is Used...to Administrative reaction on Lt...Thank you

Exhibit T(8)

Inmate: _Willson_ Also Appeal 8-(7-04) CDC#: _V66474_ Housing#: _6-240_ Log#: _____

Exhibit T(8)

Your appeal is being returned to you for the following reason(s):

☐ The action or decision you are appealing is not within the jurisdiction of CDC. CCR 3084.3(c)(1)

☐ You have already submitted an appeal on this same issue. RJD Log #: _____. CCR 3084.3(c)(2)

☐ You cannot appeal an action or policy not yet taken. CCR 3084.3(c)(3)

☐ You have not attempted to resolve your grievance at the Informal Level, CCR 3084.3(c)(4), with _____

☐ You have not adequately completed your appeal and/or attached the proper documents. CCR 3084.3 (c)(5)
Please complete and return the following document(s) with your CDC 602and this form:
  ☐ Final copies of the CDC115and CDC 115A.
  ☐ CDC 128A/B/C/Chrono
  ☐ CDC 1845(Disability Verification)
  ☐ CDC 114D(Lock-up Order)
  ☐ Sign and date your CDC 602 in Section _____.

☐ You failed to file your appeal within 15 working days of the event or decision. CCR 3084.3(c)(6)

☐ This issue has been addressed already. See attached correspondence. CCR 3084.2(g)

☒ You are abusing the appeal process by:
  ☐ _Excessive Filing of 602²_ _____

☐ You are authorized to appeal on behalf of another inmate(s). CCR 3084.3(c)(7)

☐ This appeal was resolved at a lower level. If you disagreed with the decision, you had 15 working days from when you received your appeal to file at a higher level. CCR 3084.6

☐ This is a BPT issue. Resubmit your appeal on a BPT 1040 Form and send it to the BPT Desk in Records for logging and processing.

☐ Inappropriate use of the appeal process. Submit your request on CDC 7362, Health Service Form, and send it to the Medical for an appointment. If necessary, please sign up for sick call.

☐ You have failed to demonstrate an adverse effort on your welfare. CCR 3084.1(a)

☐ Limit attached sheet for extra comments to one page, front and back. CCR 3084.2(a)(1)

☐ This issue has been appealed by:I/M_____ CDC#_____ Bldg#_____

☐ Comments:_____

PERMANENT APPEAL ATTACHMENT – DO NOT REMOVE!
☐ Please correct the indicated problems and return to Appeals.

9-2-04

A. L. COTA, CCII
Appeals Coordinator
Richard J. Donovan Correctional Facility

Note: Failure to follow instruction(s) will be viewed as non-cooperation and and your appeal will be automatically dismissed pursuant to CCR 3084.4(d).
This screening decision may not be appealed unless you allege the above reason is inaccurate. In such a case, please return this form to the Appeals Office
with the necessary information. You have 15 days to comply.

David W. Wilson, K00977
R.J. Donovan, 2-6-#240
480 Alta Road
San Diego, CA 92179-0001

Exhibit T(9)

September 30, 2004

Copy 1 of 2

To: Warden, Robert J. Hernandez  (R.J. Donovan Correctional Facility)

Re: Request Appeal of 8-17-04, [INACCURATE] Screening Concerning Appliances,
    In Al-Seg Be Forwarded And Logged For Not Excessive Filing

Dear Warden, Hernandez, I come to you to have appeal of 8-17-04 Logged
In for Appeals Coordinator Denied 9-2-04 on Screening Form as:
[X] abusing the appeal process by:
        Excessive File of 602 +
Sir! last appeal sent to you a week ago 9-23-04, so I file this appeal
one week later for "Appliances" allowed in ASU, which Screening Form is
now [Inaccurate], therefore hereto attached as Exhibit T, appeal, T(1), Title 15,
CCR # 3044(c)(10), T(2), form requested for Appliance approval, T(4), request to
have Logged in, T(5), [appeal] to Lt. Avila for appeal or will when you Warden
Lt. Avila would not respond copy sent for use as Original exhibit letter
Exhibit T(6), "I also but sent to you" Warden, & Court officials and Court
for this is justification for Administrative action or Lt. & above denial
Sir! will you Please Forward this appeal & have logged in, Assignment
Notice, Due Date, Pen away, ICM 59-04, which is Denied by Appeals
Coordinator,
            "Thank You"
                              Respectfully requested

                    David W. Wilson, K00977



Exhibit (R)

STATE OF CALIFORNIA-YOUTH AND ADULT CORRECTIONAL AGENCY                    ARNOLD SCHWARZENEGGER, Governor

## DEPARTMENT OF CORRECTIONS
## RICHARD J. DONOVAN CORRECTIONAL
## FACILITY AT ROCK MOUNTAIN
480 ALTA ROAD
SAN DIEGO, CA 92179

*N 319 L*

received 12-29-2004



October 29, 2004

Mr. David W. Wilson
CDC #K-66474
F2-6-240L

Dear Mr. Wilson:

I am in receipt of your correspondence and attached appeal. This letter shall suffice for the informal level response.

While assigned to the Richard J. Donovan Correctional Facility's Administrative Segregation Unit, you submitted an appeal requesting the allowance of one special canteen purchase consisting of one television or radio. Additionally, you requested to have your cell retrofitted with cable.

As of October 8, 2004, you have transferred to the California Men's Colony. Therefore, your appeal is denied at the informal level as any further request for appliances can be pursued at your receiving institution.

Should you have any further question, please write to Correctional Counselor II, A. Cota, Appeals Coordinator, at the RJDCF.

Sincerely,

ROBERT J. HERNANDEZ
Warden

Exhibit L

**INMATE/PAROLEE**
**APPEAL FORM**
CDC 602 (12/87)

| | Location | Institution/Parole Region | Log No. | Category |
|---|---|---|---|---|
| | | 1. K W | 1. DC1-845 | P W 6 |
| | | 2. | 2. | Exhibit L |

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|---|---|---|---|
| WILSON, DAVID | K66474 | Ad-Seg / E OP | 2-6# 150 |

A. Describe Problem: On 5-20-04, received Court Order & Deadline 6-2-04, SEE Ex. Y, I turned in Legal Request & Medical Appliances, SEE Ex. 1 Ad/seg Property Request, On 5-23-04, sent to Low Library letter for J.E. Status, SEE B(X) or 2, and sent Ex. Y, on 5-26-04, sent letter to RtR Sgt. for access to Legal Material & Court case, Ex. 3, 5-27-04, sent Appeal to Law Library for J.E. status, Ex. A, also 5-27-04, sent letter to Warden with copies of Ex's 3, requesting access to Legal Documents, Ex. 4, on 5-30-04, filed Motion for Extenstion of Time & RtP Release my jul Material, Ex's 5, 5(A), 5(B), 6, 7, on 6-2-04, sent copy of Appeal Ex. A, to Appeals Coord. for Law Library did not ipond, Ex's A(X), B, D, on 6-8-04, received Original Appeal from Law Library stating Staff shortages, I responded 6-9-04, Ex. A, 6-13-04, requested Ad-seg Sgt. for Legal Documents, Ex. 8, & cited O.P.#2, Ex. 9, 14, on 6-15-04, received Ex's Y & B(X) n Law Library, Ex. B(X) status received 6-8-04, Yet sent 5-23-04, On 6-16-04, received duplicate appeal Ext A(X) stating bmit Court Deadline, which I had Ex'z Y, & letter Ex. B(X). If you need more space, attach one additional sheet.

B. Action Requested Given Legal Material Exhibits, Papers, Paper Law Books, Envelopes, Ink Pen Fillers, to respond to 30 day Extention, & iven Medical Appliances Back Support, Vitamins, self sale shoes, all per O.P.#2, if not let any and all be accountable to Courts for R# 312a(a), #3122(a)(b), #3160 #3161 #3162 (9)(d), #3164 (9)(b), Dom 53060, #14010; Operational Procedure #2 & P.C. §160 1st & 14th Amend., will seek in amount Exhibit 7, total Case Obstruction of Justice damages for Liability, Obligation, Exemplary, retriment, Future Detriment of individual and official capacities.

Inmate/Parolee Signature: David H. Wilson                    Date Submitted: 6-16-2004

C. INFORMAL LEVEL (Date Received: _____ )

Staff Response: _____

Staff Signature: _____                    Date Returned to Inmate: _____

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

Signature: _____                    Date Submitted: _____

Note: Property/Funds appeals must be accompanied by a completed                    CDC Appeal Number:
Board of Control form BC-1E, Inmate Claim

First Level ☐ Granted ☐ P. Granted ☐ Denied ☐ Other

E. REVIEWER'S ACTION (Complete within 15 working days): Date assigned: Due Date:

Interviewed by:

BYPASS

Staff Signature: Title: Date Completed:

Division Head Approved: Returned

Signature: Title: Date to Inmate:

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

Signature: Date Submitted:

Second Level ☐ Granted ☐ P. Granted ☒ Denied ☐ Other

G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned: 6/24/04 Due Date: 8/6/04

☒ See Attached Letter

Signature: B. Oliveros, Associate Warden, Facilities 2&3, & Education Date Completed: 7-22-04

Warden/Superintendent Signature: D. M. Barnes, Chief Deputy Warden (A) Date Returned to Inmate: 7-22-04

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response: "Dissatisfied" This Appeal Exhibit L, Y, to 1-15, Denied Second Level 8-3-04, Yet! Exhibit's A-O, thirteen Exhibit's state at Exhib A, Informal Response, STAFF SHORTAGES, which there is Legal Request Forms for Booth Time & Document Pick-up Ex. C, Which Ex's A-O, show Denial of Manilla Envelopes, #28 line Legal paper, white papers, InK Pens, Booth Time, and weeks delay in Photo copying Ex's F, G, I, J, K, to which Exhibit's A-O, were screened out twice, & Exhibit A(X), B, Duplicate sent to Appeals Coordinator for Law Librarian stated Ex. A(X), deadline court Date must be submitted within 30 days of court date, To which Ex. Y, court Date was sent in 5-20-04, with letter Ex. B, to Librarian 5-22-04, & Ad-seg Property Request Ex. 1, on 5-21-04, for Legal Materi- * and Medical Appliances Ex's 24, 25, to which Ex's 9, 10, show O.P. #2, I meet Yet! documents sent in 5-21-04, & 5-22-04, were responded to 6-8-04, after Court date Ex. A, & 6-16-04, Exhibit A(X). Also Exhibit's 17-23, show over a month to get #28 Line paper & certified Trust statements for court, which I had to appeal, Ex. 23, So Second Level Review Ex. [illegible], is wrong I meet Court Deadline Date SEE Ex's 2, 3, 4, & filed in Court for this Ex's 5, 5(A), 5(B), 6, 7, to which 2nd Level review Ex. [illegible] speak to DOM 53060.16, states PLU or I.E. shall be given Priority for law materials Pick up & delivery, yet other I/M's denied access — to courts for Legal Material, which Exhibit 1, ASU Property request denies access to Divorce, child custody, Estate, Wills, Criminal proceeding for Inmate's who wish access to Legal Papers for court actions, also denies access to Medical Appliances Exhibit 24, 25, in Property & Medical approved Shoes soft-sole, No court access,

Signature: [signature] Date Submitted: 8-5-2004

For the Director's Review, submit all documents to: Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

DIRECTOR'S ACTION: ☐ Granted ☐ P. Granted ☒ Denied ☐ Other

☐ See Attached Letter

Date: 11/3/04

CDC 602 (12/87)

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS
INMATE APPEALS BRANCH
P. O. BOX 942883
SACRAMENTO, CA 94283-0001

Exhibit L (28)

received 11-18-2004

# DIRECTOR'S LEVEL APPEAL DECISION

Date:  **NOV 0 3 2004**

In re:  Wilson, K-66474
California Men's Colony
P.O. Box 8101
San Luis Obispo, CA 93409-8101

IAB Case No.: 0401515        Local Log No.: RJD 04-845

This matter was reviewed on behalf of the Director of the California Department of Corrections (CDC) by Appeals Examiner S. Ortiz, Facility Captain. All submitted documentation and supporting arguments of the parties have been considered.

**I   APPELLANT'S ARGUMENT:**  It is the appellant's position that the Richard J. Donovan Correctional Facility at Rock Mountain (RJD) staff have not allowed him access to the Law Library. The appellant stated that he has court deadlines and needs access to law books. The appellant requests "Judicial Exception" (JE) status to the Law Library by the courts.

**II   SECOND LEVEL'S DECISION:**  The reviewer found that the appeal was thoroughly reviewed and the appellant was afforded an interview on July 19, 2004. The appellant was informed that the JE status is not granted by the court, but is authorized by the CDC. Furthermore, the CDC Operations Manual Section (DOM) Section 53060.16, Access to Law Library by Inmates with Court Deadlines, states in part; "Established court deadlines shall be verified by a Correctional Counselor or designated Library staff," an inmate must provide documentation noting a court deadline within 30 days for verification of JE qualification. In this instance, the appellant's paperwork was past the 30-day deadline. This made his paperwork invalid and not eligible to receive JE status. The appeal was denied at the Second Level of Review (SLR).

**III   DIRECTOR'S LEVEL DECISION:**  Appeal is denied.

    **A.   FINDINGS:**  The appellant was appropriately informed that in order to get JE status, he must provide the Law Library staff the orders from the court giving him a definite deadline to submit paper work. Upon the verification of the court orders the appellant will receive JE status. The SLR is appropriate and in accordance with the California Code of Regulations, Title 15, Section (CCR) and DOM. The appellant has failed to provide any additional information in support of his appeal. The appeal is denied at the Director's Level of Review.

    **B.   BASIS FOR THE DECISION:**
CCR: 3120, 3122, 3164
DOM: 53060.10

    **C.   ORDER:**  No changes or modifications are required by the institution.

This decision exhausts the administrative remedy available to the appellant within CDC.

N. GRANNIS, Chief
Inmate Appeals Branch

cc:   Warden, CMC
Appeals Coordinator, CMC
Appeals Coordinator, RJD

STATE OF CALIFORNIA                                                                        DEPARTMENT OF CORRECTIONS

**INMATE/PAROLEE**
**APPEAL FORM**
CDC 602 (12/87)

| | Location | Institution/Parole Region | Log No. | Category |
|---|---|---|---|---|
| | 1. | KAV | 04-875 | #19 |
| | 2. | | 2. | |

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|---|---|---|---|
| WILSON, DAVID | K66474 | Ad-Seg | 2-6-#150 |

**A. Describe Problem:** At R.J.Donovan(AD-SEG) Administrative Segregation Building's I have lived in #16, #7, #6, My self & all Inmate's are being Keep in constant degredation's for Denied "Hot Food, (2) two meals a day CCR# 3050(a)(2), Which in hereto attached GA-22, Request to Food Manager Dated: 6-10-04, Exhibit 2, at lines #9-#16, state; the two meals we received for Food is brought over in uninsolated Carts then Carts are not Electrical Hot Carts to Keep Food Hot, then their is "NO" Electrical stream Line food pans are put in to Keep Food Hot while being served, Further still paper plates are used instead of plastic Durpress trays to Keep Food Hot

If you need more space, attach one additional sheet.  **CONTINUED Additional Sheet Page 1 of 2**

**B. Action Requested:** All CDC Ad-Seg's & R.J.Donovan given Electric Hot Carts, Electric Steam Line Table, Durpress Plastic Trays to Keep Food "Hot" CCR#3050(a)(2), If not let any an all be held accountable to Courts for Degredat' #CCR# 3050(a)(2), #3050(b), #3050(a)(2), #3343(a), #3343(c), #3030(b)(E), #3031(a)(b), #3004(b) D.O.M.'s# 54080.1,1, 54080.9.1,1, #54080.20, #54080.17, #33020.17, #33020.14, #33020.13.4, & 33020.4, #54080.18, # 54080.18.1, #54090.11, Pnal Codes §2084, §147, §2600, §2679, §5554 & 8th Amendment violations for Unsanitary eating Utensils, Clothing & Bedding, Food, Will seek damage for Liability, Obligation, Exemplary, Detriment, Future Detriment, Emotional Stress, Mental Anguish at individual and offical capacities;

Inmate/Parolee Signature: David M. Wilson          Date Submitted: 6-23-2004

**C. INFORMAL LEVEL (Date Received: _____)**

Staff Response: _____

_____

_____

Staff Signature: _____          Date Returned to Inmate: _____

**D. FORMAL LEVEL**
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

_____

_____

_____

Signature: _____          Date Submitted: _____

Note: Property/Funds appeals must be accompanied by a completed
Board of Control form BC-1E, Inmate Claim

CDC Appeal Number:

First Level ☐ Granted ☑ P. Granted ☐ Denied ☐ Other

E. REVIEWER'S ACTION (Complete within 15 working days): Date assigned: 7-24-04 Due Date: 09-03-04

Interviewed by: CUEVAS, J.A., C/SERGEANT, YOUR APPEAL IS BEING PARTIALLY GRANTED AT THIS LEVEL, I HAVE BEEN INFORMED THAT THE STEAM CART AND OTHER FOOD HANDLING ITEMS HAVE BEEN ORDERED AND WILL BE PUT ON LINE AT THE APPROPRIATE TIME. DESPITE THE BUDGET CRISIS THAT IMPACTS ALL STATE PROGRAMS AND SERVICES, INCLUDING THE DEPARTMENT OF CORRECTIONS, EFFORTS ARE BEING MADE TO RETURN TO NORMAL OPERATION IN DIFFERENT AREAS OF THE INSTITUTION. steam carts have been purchased and delivered

Staff Signature: [signature] P. CUEVAS, Title: C/SGT. CORR. SGT. Date Completed: 08-07-04

Division Head Approved: Signature: D.R. MORRIS, [signature] Title: F2 CAPTAIN Returned Date to Inmate: 8/7/04 10

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response. Dissatisfied received appeal 11-23-2004, after transfer to CMC-E, 10-8-04, then to CMF, on 11-4-04, While at RJD, Ad-Seg Steam Cart Was brought in but never used once, also staff would not wear Kitchen caps or smocks, and NO gloves making lunch, & food stacked 7 bread racks high on bread racks to cool, & food short rations for staff eat 6 or 7 servings, & staff pour food out of drinking pitchers & use no metal serving utensils, also coffee poured out of chemical bottles. & clothing shortages every week, I have Affidavits to this, where, if appeal lost or denied time constraints, this proof to U.S. Eastern District Court for relief

Signature: [signature] Date Submitted:

Second Level ☐ Granted ☑ P. Granted ☐ Denied ☐ Other

G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned: 12/13/04 Due Date: 2/24/05

☐ See Attached Letter

Signature: D.M. BARNES, ASSOCIATE WARDEN, F2 & F3 [signature] Date Completed: 2/24/05

Warden/Superintendent Signature: B. OLIVEROS, CHIEF DEPUTY WARDEN(A) [signature] for 2-24-05 Date Returned to Inmate: 2/24/05

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response. "Dissatisfied" received Second Level Review on 3-11-2005, and hereto attached Exhibit's show denial of Appeals Process & degredation of Food/Clothing P.C. § 2084, Exhibit 1(F) to Appeals Coordinator, Exhibit 6(F), Title 15, #3050, #3052, Exhibit 8(F), Affidavit 6-31-04, Exhibit 9(F), Affidavit of Food Cold & unsanitary feeding & staff assault for complaining of conditions, Exhibit 10(F), request for appeal & 11(F), request, also Exhibit 12(F), requested help from Food Manager, Exhibit 13, letter to Warden for intervention & receive appeal, Exhibit 14(F), Affidavit of Food denied & cell air cut off for complaining of Food Conditions, Exhibit 16(F) request to Lt. Avila for overdue appeal & of unsanitary feeding & food withheld by staff for themselves, along with denied condiments, salt & pepper, etc., and Food Steam line not used.

Signature: [signature] Date Submitted: 3-13-2005

For the Director's Review, submit all documents to: Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

DIRECTOR'S ACTION: ☐ Granted ☐ P. Granted ☑ Denied ☐ Other

☑ See Attached Letter

Date: JUN 0 6 2005

CONTINUED:

1. And Food is stacked in uncovered open rack to cool off, then pushed from
2. Cell to cell, by the time we eat Food is Cool. Which temperatures of Food
3. is not checked with thermonatures, and No Meal sample Form is given to Inmate's
4. to fill out detailing this. DOM 54080. 11.1, MEAL SAMPLE REPORT, & DOM 54080.10
5. I also requested from Food Manager Weekly Food Menu for Ad-seg per CCR #3050(b),
6. at line #1, of GA-22, Exhibit 2, and stated lines #2-#8, Salt & Pepper is not
7. given, also Kool-Aid is not given in lunches as general population and jelly
8. is not given for breakfast except sunday. These Condiments Denie Food as
9. described in CCR #3050(a)(1); Segregation shall be served food representative
10. that being served general population. Also DOM 54080.9.1, QUARTERLY
11. FOOD/DIETARY FOOD RATION COST ANALYSIS & GROUP FOOD BREAKDOWN REPORT,
12. here to attached Exhibit A, B. Exhibit A, shows #14,988.41, per quarter for
13. Condiments. ? Why is Ad-seg denied this. This violates CCR #3343(d): Meals
14. Same as general population & deprivation of Food will not be used as punishment.
15. Petitioner has worked over (9) nine years in CDC Kitchens as Lead Cook, Food server,
16. lunch crew and can state unequivocally Condiments are with held from Ad-seg, also
17. rations serving are short due to paper trays smaller than plastic trays general
18. population receives.

19. Also all staff do not wear nets or caps covering their hair when passing out Food
20. CCR #3052(f), DOM 54080.20 HEALTH & SAFETY LAW & REGULATIONS, and when
21. Staff pass out Food none wear smocks or approns, as required Inmates DOM
22. 54080.17, Yet staff wear filthy, Dirty sccurity vest that are never cleaned
23. When passing out Food which Protective Vest DOM 33020.17, all staff do not wear
24. Name Plate Badges DOM 33020.14 so we Inmates cannot bring Food issues or other
25. P.C. § 2084 viloations to them. Which NAMEPLATE Shall be worn DOM 33020.13.4,
26. Per Supervisors Inspections DOM 33020.4, RESPONSIBILITY,

27. Petitioner requested from Food Manager (Zylon spoons or forks) at Exhibit 2, lines
28. #16-#22, same as genral population on (Plastic Cups) for Ad-seg are given
29. disposable spoons and cups which germs, bacteria, microscopic organisims
30. build up for these disposable spoons & cups are not exchanged. And this,
31. along with denied Hot Food CCR #3050(a)(2), "Cold" Food can cause viruses to
32. infect with symptons causing Salmonella & Enterohemorrhagic (E. Coli) in the
33. gastrointestinal tract reproducing poisonous particles generated by the
34. decomposition of organic matter, mico & macro parasites.
35. The above violate's DOM 54080.18, SANITATION STANDARDS: standars for
36. sanitation, food storage, preparation, and serving of food shall meet the
37. requirements set forth in the Health & Safety Code, Section 28520, the
38. American Correctional Association (ACA) standards for Adult Correctional
39. Institutions, and CDC food service policy. The CFM is responsible for
40. ensuring compliance with all standards at their respective
41. institution/facilities.

OVER →

42. I am reviewing DOM 54080.18.1, SANITATION INSPECTION, and

43. Administrative audits as may be conducted throughout the year DOM 54080.18.1.

44. The foregoing is pursuant to Penal Code § 2084, Bedding, Clothing, and food
45. furnished to inmates.

46. The department shall provide each prisoner with a bed, sufficient covering of
47. blankets, and with garments of substantial material and of distinctive
48. manufacture, and with sufficient plain and wholesome food as such variety
49. as may be conducive to good health.

50. The above is not being meet at R.J. Donovan for as Wholesome food, & as may be
51. conducive to good health.

52. Also for as clothing in Ad-seg CCR#3343(c) No inmate will be clothed in any
53. manner intended to degrade the inmate.
54. In Ad-seg We are given One(1) T-shirt, One(1) underwear, and "Not"(2) two and Only
55. One(1) towel, and NO Interdepartmental Coverall White Jumpsuit Exchange. so as for
56. a clothing "List" for size it is not done. There is No clothing/linen exchange list
57. as in here to attached Exhibit 3, as stated DOM 54090.11, SPECIAL HOUSING CLOTHING:
58. Inmates housed in special housing units who are unable to go to the laundry room
59. shall exchange clothing and linen in their respective unit. Correctional staff
60. shall prepare a clothing/linen "exchange" list with the size requirements to
61. meet the needs of the inmates. Once linen and clothing is received, the unit
62. Staff shall exchange on a one-for-one basis according to the Units
63. pre-arrange schedule, Their is No pre-arrange schedule at Ad-seg Buildings R.J.D.
64. Also "I have been denied two(2) Blankets as all Inmates in Ad-seg and it gets
65. cold at Night, see here to attached GA-22, Request of Date: 5-20-2009, Ex.4
66. citing CCR#3030(b)(E); Penal Code § 2084, So, Blankets as described in P.C.§
67. 2084 is denied as clothing, along with Hot Food & Sanitary Food Conditions.

68. The above is Deliberate Indifference as described in Wilson v. Seiter 501 U.S. 294,
69. 303, 111 S. Ct. 2321, 2326-27 (1991); Accord Farmer V. Brennan __ U.S __, 114 S.Ct 1970,
70. 1977, (1994), Where the Supreme Court held in Farmer V. Brennan that in an Eight
71. Amendment case, a prison official can be found reckless or deliberately
72. indifference if "the offical Knows of and disregards an excessive risk to
73. inmates health on safety, Id, at 1979.

74. Which I state to Food Manager at Exhibit 2, lines #23-27, Ad-seg inmate's &
75. myself arebeing denied "the basic requirements that are essential to life" and such
76. essential requirements as may be necessary to maintain a degree of cleanliness
77. compatible with elementary decency; Jordan V. Fitzharris (N.D. Cal. 1966) 257
78. F. Supp. 674, 682. Also this places all inmate's in Atypical & Significant
79. hardship & deprivation as stated by Supreme Court in Sandlin v. Conner
80. (1995) 515 U.S. 472, 483 [115 S.Ct. 2293; L. Ed. 2d 418].

81. Therefore violation of Penal Code § 147, Inhumanely or Oppressively Treating Prisoner's,
82. and Deprevation of Rights Penal Code § 2600.
83. Request NO Extentions, Delays, Appeals & Responses per CCR#3084.6(b), Also given Assignment
84. Notice, Log #number, Due Date, Reviewer DOM 54100.9

Affadavit Of Statement

Copy 1 of 3

To Whom it may Concern

The following statements are given as true and correct concerning (Ad-seg) Administrative segregation Facility 2, Building #6, We have never been given (2) two "Hot Meals" CCR#3050(a)(2), Which plastic Food Carts set for 30 minutes to almost 60 minutes 3rd Watch before officers start serving trays Which are placed in Open metal racks uncovered for 20 more minutes. To Which all most all staff wear No Kitchen caps covering heads both shifts, We are denied condiments from lunches, Kool-Aid, Yet many or most times Which is short compared to general population, & food rations are short compared to general population CCR# 3050(a)(1); #3343(d), Which "No" staff wear approns When serving food & many No gloves, Yet! short issue food is thrown away, sent back to Kitchen or Officer's Keep for themselfs or certain lunch & food items Keep In "Electric Hot Cart" for snacks, or milk only Keep in refrigrator for staff with certain fruits. Yet! No staff Meal Tickets DOM 54080.15, this why We are not given meal sample Forms DOM 54080.10.

We are also denied writing paper CCR# 3134 or Request Forms, 602 appeals, Pencils & Pen Fillers, so that when We (Eop) & G.P., Inmate's bang on doors, or some scream or flood cells to communicate for Were denied correspondence, then as some of Us seen C/o Hagman 7-10-04, punch inmate's in sallyport going to yard or taking inmate's to clothing room to punch, which later C/o Hagman stated those inmate's were banging on the doors and their child Molesters, also involuntary medication Psy, Nr's not there Which even worst Inmate cell extrations I/m's taken from cell by force No supervisor many times and No Video for assault that happen by many officers.

The Following Convicts, Prisoners, seen above or heard above under penalty of Perjury at R.J. Donovan Ad-seg #6 Building Dated July 15, 2004

| Print Name | CDC# | Cell # | Date | Signature |
|---|---|---|---|---|
| David W. Wilson | K66474 | 240 | 7-15-04 | |
| CHRIS PALMER | T-07431 | 241 | 7-15-04 | |
| | | 241 | 7-15-04 | |
| | | | | |

## Affadavit Of Statement

I E. Tomas, J46673, give this Affadavit as True and Correct that in R.J. Donovan Ad-seg Unit Building #6. that after seeing Officer's Serve Cold Food without serving utensils to give food by hand from pans to Paper Plates, after wiping their Nose, and Wearing No Kitchen Caps or apron, and food being served in a unsanitary manner, that on August 26, 2004, at the Breakfast meal seen Officer, Hammond drop bread on the ground after trusing on Food trays, and C/o Hammond picked the bread off the ground and put back in the food tray. To which I called out cell door C/o that bread is dirty don't put it back on the tray. C/o Hammond stated Shut-up idiot, when I stated the bread is dirty. C/o Hammond stated Fuck You. I return statement, C/o Hammond then decides to feed Upper C-Section pushing Bread Racks not designed to carry food trays from cell to cell, Yet! When C/o Hammond gets to my cell #239, C/o Hammond refuses to give me breakfast food tray, to which I ask why am I being denied Food, C/o Hammond ignores me. I called out to other officers for my denial of food, to which they laugh & joke about ignored me to. I called to Sergeant, Archie for breakfast, but he Hogman came to my cell. I ask C/o Hogman to call to the sergeant, C/o Hogman then gave me a lunch bag and told me about christ and forgiveness When I ask to speak to the sergeant, C/o Hogman then went open-up the Plumbing Pipe Chase and did something "and cut my cell Air off" then C/o Hogman Told me about his cell extraction methods to cause pain to inmates at Calipers prison and how he had used the gun and had Block gun for cell extraction a few weeks ago. I took down paper over cell window and other stuff to "turm my cell Air on", C/o Hogman worked until about 8:00 pm or after C/o Hogman left another officer stopped by my Plumbing Pipe Chase and did a switch after I ask to "turm my cell Air on". This in a Cruel & unusual Punishment of the Eight Amendment Food Safety etc, still no Air done later,

The above is given as True and Correct under penalty of perjury

| E. Tomas | Cell #239 | 8-29-2004 | E. Tomas |
| Witness by David W. Wilson, K66474 | Cell #240 | August 29, 2004 | David W. Wilson |

*Exhibit 17(F)*

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS
INMATE APPEALS BRANCH
P. O. BOX 942883
SACRAMENTO, CA 94283-0001

## DIRECTOR'S LEVEL APPEAL DECISION

*received 6-9-2005*

Date:     **JUN 0 6 2005**

*R.J.D., Ad-Seg Food*

In re:    Wilson, K-66474
          California Medical Facility
          P.O. Box 2000
          Vacaville, CA 95696

IAB Case No.: 0409283          Local Log No.: RJD 04-875

This matter was reviewed on behalf of the Director of the California Department of Corrections (CDC) by Appeals Examiner K. J. Allen. All submitted documentation and supporting arguments of the parties have been considered.

**I   APPELLANT'S ARGUMENT:** It is the appellant's position that he was served cold food while he was housed in the Administrative Segregation Unit (ASU) at the Richard J. Donovan Correctional Facility at Rock Mountain (RJD). The appellant makes several allegations that custody staff failed to serve food quickly, and therefore, it was allowed to get cold. He also claims that the ASU did not utilize steam carts and other hot food handling equipment. The appellant requests that the ASU receive electric hot carts and an electric steam line table and plastic trays that will keep food hot.

**II   SECOND LEVEL'S DECISION:** The reviewer found that although the State and the CDC have experienced severe budgetary restraints, the RJD was able to order hot steam carts and other food handling items for the ASU. The steam carts were purchased and delivered to the unit for use. The appeal was partially granted at the Second Level of Review as the appellant's request for a hot cart to be used in the ASU was granted.

**III   DIRECTOR'S LEVEL DECISION:** Appeal is denied.

**A.   FINDINGS:** Upon review of the appeal it has been determined that the appellant's complaints were properly investigated by supervisory staff. The appeal was investigated by Correctional Sergeant Cuevas, and reviewed by the institution's chief deputy warden. The appellant has added new matter to the appeal when presenting it to the Director's Level of Review (DLR). It is noted that the appellant has transferred to the California Medical Facility and his allegations of unsanitary food serving in the ASU at RJD is inappropriate and lacks merit. Although he has added signed remarks from other inmates, these new issues will need to be addressed by an inmate at the RJD for review on a separate appeal in order to allow institutional staff the opportunity to respond and, possibly, provide the appellant with a satisfactory response. Relief is unwarranted at the DLR at this time.

**B.   BASIS FOR THE DECISION:**
California Code of Regulations, Title 15, Section: 3004, 3050, 3052, 3391
CDC Operations Manual Section: 54080.1, 54080.1.5, 54080.3, 54080.20

**C.   ORDER:** No changes or modifications are required by the institution.

This decision exhausts the administrative remedy available to the appellant within CDC.

*T. Surges*

N. GRANNIS, Chief
Inmate Appeals Branch

cc:    Warden, CMF
       Appeals Coordinator, CMF
       Appeals Coordinator, RJD

STATE OF CALIFORNIA

**RE-CATEGORIZED**

DEPARTMENT OF CORRECTIONS

**INMATE/PAROLEE**
**APPEAL FORM**
CDC 602 (12/87)

received 9-28-2007

Log No.          Category: 9

1. _07-M-2134_          PROPERTY
                        POLICY & PROCEDURE
2. _____              TVS IN ASU.

CSP-LAC 9/29/07

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|---|---|---|---|
| DAVID W. WILSON | K66474 | Ad-Seg (EOP) | M-3-#315 |

A. Describe Problem: SEE Additional Sheet Attached

INMATE APPEALS BRANCH

OCT 16 2007

**RECEIVED**

If you need more space, attach one additional sheet.

B. Action Requested: Televisions & TV/RADIO Combonations allowed all ASU's with Public Education Programs, & retrofit Cable & Electric Outlet. If not let any an al'be held accountable to Courts for degredation of Title 15 #3004(c) §3343(a)(i); P.C's §2600, §6102(a)(b), §147, §5054, §5058, §2079; ADA Title II 42 U.S.C. §12132; 504 Rehabilitation Act; calif, Govt Code §1135; 14th 8th Amend, Seeking Damages at Liability, Obligation, Detriment, Future Detriment, Emotional stress, Mental Anguish, at Individual & Official Capacities.

Inmate/Parolee Signature: _David W. Wilson_          Date Submitted: _7-13-2007_

C. INFORMAL LEVEL (Date Received: _____)

Staff Response: **BYPASS**

Staff Signature: _____          Date Returned to Inmate: _____

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

**BYPASS**

Signature: _____          Date Submitted: _____

Note: Property/Funds appeals must be accompanied by a completed Board of Control form BC-1E, Inmate Claim

**INMATE APPEALS RECEIVED**
JUL 19 2007
CMF

CDC Appeal Number:
MMNO6VILLE -2ND

**First Level**  ☐ Granted   ☐ P. Granted   ☐ Denied   ☐ Other _____

E. REVIEWER'S ACTION (Complete within 15 working days): Date assigned: _____ Due Date: _____

Interviewed by: _____

## BYPASS

Staff Signature: _____ Title: _____ Date Completed: _____
Division Head Approved:                              Returned
Signature: _____ Title: _____ Date to Inmate: _____

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

## BYPASS

Signature: _____ Date Submitted: _____

**Second Level**  ☐ Granted   ☐ P. Granted   ☒ Denied   ☐ Other _____

G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned: __7-2007__  Due Date: __8-30-07__
☒ See Attached Letter 8/23/07

Signature: _____ Date Completed: 8/23/07

Warden/Superintendent Signature: _____ 9/10/07  Date Returned to Inmate: 9-11-07

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response. "Dissatisfied" received Second Level Review 9-28-2007, do to transfer to CSP-LAC on 8-29-2007, which Second Level Exhibit AT(3), (3)a, "Denied" Yet! Memorandum attached 4-27-07, Exhibit AT(4), (4)b, by Director of Adult Institutions state different, same as Memorandum attached 3-12-07, Exhibit AT(5), which CMF request to be exempt from Memorandums for retrofiting. This is because 'I lived in Unit M-3, in 2006, & it was just changed from EOP mainline February 2007, to Ad-Seg, and it could be retrofited in a matter of days. Therefore this is to allow continual discrimination & attempt to not comply with Director Adult Institutions guidelines, which I request this compliance to CSP-LAC, CMC-East, R.J.Donovan for Ad-Seg EOP's.

Signature: David W. Wilson  Date Submitted: 10-2-2007

For the Director's Review, submit all documents to:  Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

DIRECTOR'S ACTION: ☐ Granted  ☐ P. Granted  ☒ Denied  ☐ Other _____
☒ See Attached Letter
JAN 1 4 2008
Date: _____

CDC 602 (12/87)

Exhibit AT (1)

STATE OF CALIFORNIA                                                                    DEPARTMENT OF CORRECTIONS

**REASONABLE MODIFICATION OR**
**ACCOMMODATION REQUEST**
CDC 1824 (1/95)

| INSTITUTION/PAROLE REGION: | LOG NUMBER: | CATEGORY: |
|---|---|---|
| | | 18 ADA |

RE-CATEGORIZED  *To 602*

5 *Property*
*Policy & Proc*
*ASU in TV's*

**NOTE:** THIS FORM IS TO BE USED ONLY BY INMATES/PAROLEES WITH DISABILITIES

*In processing this request, it will be verified that the inmate/parolee has a disability which is covered under the Americans With Disabilities Act.*

| INMATE/PAROLEE'S NAME (PRINT) | CDC NUMBER | ASSIGNMENT | HOURS/WATCH | HOUSING |
|---|---|---|---|---|
| DAVID W. WILSON | K66474 | Ad-Seg (Eop) | | M-3 - #315 |

In accordance with the provisions of the Americans With Disabilities Act (ADA), no qualified individuals with a disability shall, on the basis of disability, be excluded from participation in, or be denied the benefits of the services, activities, or programs of a public entity, or be subjected to discrimination.

You may use this form to request specific reasonable modification or accommodation which, if granted, would enable you to participate in a service, activity or program offered by the Department/institution/facility, for which you are otherwise qualified/eligible to participate.

Submit this completed form to the institution or facility's Appeals Coordinator's Office. A decision will be rendered within 15 working days of receipt at the Appeals Coordinator's Office and the completed form will be returned to you.

If you do not agree with the decision on this form, you may pursue further review. The decision rendered on this form constitutes a decision at the FIRST LEVEL of review.

To proceed to SECOND LEVEL, attach this form to an Inmate/Parolee Appeal Form (CDC 602) and complete section "F" of the appeal form.

Submit the appeal with attachment to the Appeals Coordinator's Office within 15 days of your receipt of the decision rendered on this request form.

If you are not satisfied with the SECOND LEVEL review decision, you may request THIRD LEVEL review as instructed on the CDC 602.

## MODIFICATION OR ACCOMMODATION REQUESTED

DESCRIPTION OF DISABILITY:
Post Traumatic Stress (Disorder) diagnosed schizophrenia & paranoia, mental impairment,

WHAT VERIFICATION DO YOU HAVE OF YOUR DISABILITY?
Mental Hospital placements & as Exhibit 3 chrone 11-24-04, attached by
Chief Psychiatrist & Clinician

DESCRIBE THE PROBLEM:
Before placed in Ad-Seg I would watch CMF scheduled Educational programs on Television where
I was learning better Math, Science, History, & to make it in prison society & outside life
with behavior & training on TV five days a week & I had made progress following
Television Guidelines. Now in ASU I am denied same opportunity for program accessibility
as other inmates of this benefit or service & I cannot participate in better learning as others
for I am being discriminated against based on disability & public entity's failure to modify....
                                                                    CONTINUED Additional

WHAT SPECIFIC MODIFICATION OR ACCOMMODATION IS REQUESTED?
ASU's with Public Education Programs be given access to Televisions or TV/Radio Combonation
& retrofit cable & Electric outlet for Opportunities of Public entity's Service, aid, benefit, by
Television, & if needed some type of Wall structure for safety & security to en-close TV except
Operational features & screen of TV. For TV programs Educational teach & stop suicides, show Range

David W. Wilson
INMATE/PAROLEE'S SIGNATURE

INMATE APPEALS
RECEIVED
JUL 19 2007
CMF

7-13-2007
DATE SIGNED

SEP 21 2007

Copy 1 of 3

Exhibit AT (2)
David W. Wilson, K66474
7-13-2007

602 APPEAL Additional Sheet

Describe Problem: I am requesting a "Television" be allowed in CMF Administrative Segregation Unit(s) and if needed secured to Wall in a en-closed structure for safety & security. For the following reason. When placed in Ad-Seg myself & Other Inmates in Enhanced Out Patient (EOP) mental program were able to Watch program(s) scheduled for hours five days a week that taught GED, and Educational courses of Mathematics, science, history, English, job applications, & prospective Outside Prison living & behavior modifications, & other Educational opportunties.

I have Post Traumatic Stress (Disorder) & diagnosed schizophrenia & paranoia, Thereby necting Americans with Disabilities Act (ADA) 42 U.S.C. §12132, Title II 28 C.F.R. §35.104 Definitions attached Exhibit 4, and side two, Exhibit 5, [A] physical or "mental impairment" that substantially limits one or more of the major life activities of such individual.

Which CMF "has not" done a self-evaluation to ensure to meet requirements of Title II, 28 C.F.R. §35.105, attached Exhibit 8, Which at Exhibit 9, 28 C.F.R. §35.106 Notice, Requires a public entity to disseminate sufficient information to applicants, participants, beneficiaries, other interested persons to inform them of rights, protections afforded by the ADA and this regulation. Methods of providing this information include, for example, pubications, of information in handbooks, manuals, pamphlets, distributed to the public to describe a public entity's programs and activities; the display of informtive posters in service centers and other publics; or the broadcast of information by "television or radio". In providing the notice, a public entity must comply with the requirements of effective communication §35.160. I attach Exhibit 18, section C.F.R. §35.160. herein.

Also Title II 28 C.F.R. §35.130, Exhibit 9, 10, states: In providing any aid, benefit or Service, a public entity "may not . . . [d]eny a qualified individual with a disability the Opportunity to participate in or benefit from the aid, benefit or service," [a]fford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others," [P]rovide a qualified individual with a disability with an aid, benefit, or service that is not as effective in affording equal Opportunity . . . as those provided to others," or [o]therwise limit a qualified individual With a disability in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others [.]

A "Televison or combination TV/Radio" would comport to ADA of 1990 42 U.S.C. §12132, and Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. §794, & Califorina Government Code §11135. Also as recently to Appellant by Judge, Karlton in Exhibit LK, Coleman v. Schwarzenegger, CV-00520-LKK-JFM, on 6-5-07, ORDERED CDCR Exhibit LK(3), sixty days shall accomplish, at LK(4), c. submit a report on each institution's capability to provide televisions and/or radios to inmates in administrative segregation, Signed Exhibit LK(5). This would also meet Wright v. Rushen, 642 F.2d 1129 (1981) at VI, III, & Title 15 #3004(c), #3343a)(ii).

I have attempted to bring to R. J. Donovan 2004, & Appeals Office denied, & have a 2002 Director's Review at CMC-East, No. #CMC-E-01-01831, Request TV & complian

Exhibit 3

SEP 21 2007

California Medical Facility    **TEMPORARY SINGLE CELL CHRONO**    Department of Corrections

| Number: K66471 | Last: Wilson | First: David | House: N-319L | Date: 11/24/04 | CMF |

This inmate/patient has been evaluated by the clinician and found to be in need of temporary single cell status due to a psychiatric disorder. It is requested that the inmate/patient be seen at the next available Classification Committee for additional discussion and Final Determination.

Only the Classification Committee can make the Single Cell status permanent or remove Single Cell status

- ☒ Mentally Unstable
- ☐ Deteriorating
- ☐ Poor Hygiene
- ☒ Danger to Others
- ☐ Potential Victim
- ☐ Other

**Removal Date** 12/24/04

Describe:

I/P reports that he has delusions that he is choking the devil only to awaken and find that he is choking his cell. Past hx of violence to cellmates to which he attributes an and delusions. ID I concur that I/p be placed in a single cell to protect other inmates.

Best

Signature

Larry H. Dizmang, M.D. Chief Psychiatrist

CDC Psychiatric 128C

Clinician    Signature

Original:C-File cc: Associate Warden-MHSDS; Facility Captain; CCII, CCI, Control; Compliance; Housing Sergent; DHR

With respect to State law, a plaintiff may choose to pursue claims under a State law that does not confer greater substantive rights, or even confers fewer substantive rights, if the alleged violation is protected under the alternative law and the remedies are greater. For example, a person with a physical disability could seek damages under a State law that allows compensatory and punitive damages for discrimination on the basis of physical disability, but not on the basis of mental disability. In that situation, the State law would provide narrower coverage, by excluding mental disabilities, but broader remedies, and an individual covered by both laws could choose to bring an action under both laws. Moreover, State tort claims confer greater remedies and are not preempted by the ADA. A plaintiff may join a State tort claim to a case brought under the ADA. In such a case, the plaintiff must, of course, prove all the elements of the State tort claim in order to prevail under that cause of action.

*Section 35.104    Definitions*

"Act." The word "Act" is used in this part to refer to the Americans with Disabilities Act of 1990, Public Law 101-336, which is also referred to as the "ADA."

"Assistant Attorney General." The term "Assistant Attorney General" refers to the Assistant Attorney General of the Civil Rights Division of the Department of Justice.

"Auxiliary aids and services." Auxiliary aids and services include a wide range of services and devices for ensuring effective communication. The proposed definition in § 35.104 provided a list of examples of auxiliary aids and services that were taken from the definition of auxiliary aids and services in section 3(1) of the ADA and were supplemented by examples from regulations implementing section 504 in federally conducted programs (see 28 CFR 39.103).

A substantial number of commenters suggested that additional examples be added to this list. The Department has added several items to this list but wishes to clarify that the list is not an all-inclusive or exhaustive catalogue of possible or available auxiliary aids or services. It is not possible to provide an exhaustive list, and an attempt to do so would omit the new devices that will become available with emerging technology.

Subparagraph (1) lists several examples, which would be considered auxiliary aids and services to make aurally delivered materials available to individuals with hearing impairments.

The Department has changed the phrase used in the proposed rules, "orally delivered materials," to the statutory phrase, "aurally delivered materials," to track section 3 of the ADA and to include non-verbal sounds and alarms, and computer generated speech.

The Department has added videotext displays, transcription services, and closed and open captioning to the list of examples. Videotext displays have become an important means of accessing auditory communications through a public address system. Transcription services are used to relay aurally delivered material almost simultaneously in written form to persons who are deaf or hearing-impaired. This technology is often used at conferences, conventions, and hearings. While the proposed rule expressly included television decoder equipment as an auxiliary aid or service, it did not mention captioning itself. The final rule rectifies this omission by mentioning both closed and open captioning.

Several persons and organizations requested that the Department replace the term "telecommunications devices for deaf persons" or "TDD's" with the term "text telephone." The Department has declined to do so. The Department is aware that the Architectural and Transportation Barriers Compliance Board (ATBCB) has used the phrase "text telephone" in lieu of the statutory term "TDD" in its final accessibility guidelines. Title IV of the ADA, however, uses the term "Telecommunications Device for the Deaf" and the Department believes it would be inappropriate to abandon this statutory term at this time.

Several commenters urged the Department to include in the definition of "auxiliary aids and services" devices that are now available or that may become available with emerging technology. The Department declines to do so in the rule. The Department, however, emphasizes that, although the definition would include "state of the art" devices, public entities are not required to use the newest or most advanced technologies as long as the auxiliary aid or service that is selected affords effective communication.

Subparagraph (2) lists examples of aids and services for making visually delivered materials accessible to persons with visual impairments. Many commenters proposed additional examples, such as signage or mapping, audio description services, secondary auditory programs, telebraillers, and reading machines. While the Department declines to add these items to the list, they are auxiliary aids and

services and may be appropriate depending on the circumstances.

Subparagraph (3) refers to acquisition or modification of equipment or devices. Several commenters suggested the addition of current technological innovations in microelectronics and computerized control systems (e.g., voice recognition systems, automatic dialing telephones, and infrared elevator and light control systems) to the list of auxiliary aids. The Department interprets auxiliary aids and services as those aids and services designed to provide effective communications, i.e., making aurally and visually delivered information available to persons with hearing, speech, and vision impairments. Methods of making services, programs, or activities accessible to, or usable by, individuals with mobility or manual dexterity impairments are addressed by other sections of this part, including the provision for modifications in policies, practices, or procedures (§ 35.130 (b)(7)).

Paragraph (b)(4) deals with other similar services and actions. Several commenters asked for clarification that "similar services and actions" include retrieving items from shelves, assistance in reaching a marginally accessible seat, pushing a barrier aside in order to provide an accessible route, or assistance in removing a sweater or coat. While retrieving an item from a shelf might be an "auxiliary aid or service" for a blind person who could not locate the item without assistance, it might be a method of providing program access for a person using a wheelchair who could not reach the shelf, or a reasonable modification to a self-service policy for an individual who lacked the ability to grasp the item. As explained above, auxiliary aids and services are those aids and services required to provide effective communications. Other forms of assistance are more appropriately addressed by other provisions of the final rule.

"Complete complaint." "Complete complaint" is defined to include all the information necessary to enable the Federal agency designated under subpart G as responsible for investigation of a complaint to initiate its investigation.

"Current illegal use of drugs." The phrase "current illegal use of drugs" is used in § 35.131. Its meaning is discussed in the preamble for that section.

"Designated agency." The term "designated agency" is used to refer to the Federal agency designated under subpart G of this rule as responsible for carrying out the administrative

enforcement responsibilities established by subpart F of the rule.

"Disability." The definition of the term "disability" is the same as the definition in the title III regulation codified at 28 CFR part 36. It is comparable to the definition of the term "individual with handicaps" in section 7(8) of the Rehabilitation Act and section 802(h) of the Fair Housing Act. The Education and Labor Committee report makes clear that the analysis of the term "individual with handicaps" by the Department of Health, Education, and Welfare (HEW) in its regulations implementing section 504 (42 FR 22685 (May 4, 1977)) and the analysis by the Department of Housing and Urban Development in its regulation implementing the Fair Housing Amendments Act of 1988 (54 FR 3232 (Jan. 23, 1989)) should also apply fully to the term "disability" (Education and Labor report at 50).

The use of the term "disability" instead of "handicap" and the term "individual with a disability" instead of "individual with handicaps" represents an effort by Congress to make use of up-to-date, currently accepted terminology. As with racial and ethnic epithets, the choice of terms to apply to a person with a disability is overlaid with stereotypes, patronizing attitudes, and other emotional connotations. Many individuals with disabilities, and organizations representing such individuals, object to the use of such terms as "handicapped person" or "the handicapped." In other recent legislation, Congress also recognized this shift in terminology, e.g., by changing the name of the National Council on the Handicapped to the National Council on Disability (Pub. L. 100–630).

In enacting the Americans with Disabilities Act, Congress concluded that it was important for the current legislation to use terminology most in line with the sensibilities of most Americans with disabilities. No change in definition or substance is intended nor should one be attributed to this change in phraseology.

The term "disability" means, with respect to an individual—

(A) A physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(B) A record of such an impairment; or

(C) Being regarded as having such an impairment. If an individual meets any one of these three tests, he or she is considered to be an individual with a disability for purposes of coverage under the Americans with Disabilities Act.

Congress adopted this same basic definition of "disability," first used in the Rehabilitation Act of 1973 and in the Fair Housing Amendments Act of 1988, for a number of reasons. First, it has worked well since it was adopted in 1974. Second, it would not be possible to guarantee comprehensiveness by providing a list of specific disabilities, especially because new disorders may be recognized in the future, as they have since the definition was first established in 1974.

Test A—A physical or mental impairment that substantially limits one or more of the major life activities of such individual

*Physical or mental impairment.* Under the first test, an individual must have a physical or mental impairment. As explained in paragraph (1)(i) of the definition, "impairment" means any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological; musculoskeletal; special sense organs (which would include speech organs that are not respiratory such as vocal cords, soft palate, tongue, etc.); respiratory, including speech organs; cardiovascular; reproductive; digestive; genitourinary; hemic and lymphatic; skin; and endocrine. It also means any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities. This list closely tracks the one used in the regulations for section 504 of the Rehabilitation Act of 1973 (see, *e.g.*, 45 CFR 84.3(j)(2)(i)).

Many commenters asked that "traumatic brain injury" be added to the list in paragraph (1)(i). Traumatic brain injury is already included because it is a physiological condition affecting one of the listed body systems, i.e., "neurological." Therefore, it was unnecessary to add the term to the regulation, which only provides representative examples of physiological disorders.

It is not possible to include a list of all the specific conditions, contagious and noncontagious diseases, or infections that would constitute physical or mental impairments because of the difficulty of ensuring the comprehensiveness of such a list, particularly in light of the fact that other conditions or disorders may be identified in the future. However, the list of examples in paragraph (1)(ii) of the definition includes: orthopedic, visual, speech and hearing impairments, cerebral palsy, epilepsy, muscular dystrophy, multiple sclerosis, cancer, heart disease, diabetes, mental

retardation, emotional illness, specific learning disabilities, HIV disease (symptomatic or asymptomatic), tuberculosis, drug addiction, and alcoholism. The phrase "symptomatic or asymptomatic" was inserted in the final rule after "HIV disease" in response to commenters who suggested the clarification was necessary.

The examples of "physical or mental impairments" in paragraph (1)(ii) are the same as those contained in many section 504 regulations, except for the addition of the phrase "contagious and noncontagious" to describe the types of diseases and conditions included, and the addition of "HIV disease (symptomatic or asymptomatic)" and "tuberculosis" to the list of examples. These additions are based on the committee reports, caselaw, and official legal opinions interpreting section 504. In *School Board of Nassau County* v. *Arline,* 480 U.S. 273 (1987), a case involving an individual with tuberculosis, the Supreme Court held that people with contagious diseases are entitled to the protections afforded by section 504. Following the *Arline* decision, this Department's Office of Legal Counsel issued a legal opinion that concluded that symptomatic HIV disease is an impairment that substantially limits a major life activity; therefore it has been included in the definition of disability under this part. The opinion also concluded that asymptomatic HIV disease is an impairment that substantially limits a major life activity, either because of its actual effect on the individual with HIV disease or because the reactions of other people to individuals with HIV disease cause such individuals to be treated as though they are disabled. See Memorandum from Douglas W. Kmiec, Acting Assistant Attorney General, Office of Legal Counsel, Department of Justice, to Arthur B. Culvahouse, Jr., Counsel to the President (Sept. 27, 1988), reprinted in Hearings on S. 933, the Americans with Disabilities Act, Before the Subcomm. on the Handicapped of the Senate Comm. on Labor and Human Resources, 101st Cong., 1st Sess. 346 (1989).

Paragraph (1)(iii) states that the phrase "physical or mental impairment" does not include homosexuality or bisexuality. These conditions were never considered impairments under other Federal disability laws. Section 511(a) of the statute makes clear that they are likewise not to be considered impairments under the Americans with Disabilities Act.

Physical or mental impairment does not include simple physical

Exhibit 8

Where such information is provided by telephone, even the ability to use a voice telephone is not an "essential eligibility requirement," because § 35.161 requires a public entity to provide equally effective telecommunication systems for individuals with impaired hearing or speech.

For other activities, identification of the "essential eligibility requirements" may be more complex. Where questions of safety are involved, the principles established in § 36.208 of the Department's regulation implementing title III of the ADA, to be codified at 28 CFR, part 36, will be applicable. That section implements section 302(b)(3) of the Act, which provides that a public accommodation is not required to permit an individual to participate in or benefit from the goods, services, facilities, privileges, advantages and accommodations of the public accommodation, if that individual poses a direct threat to the health or safety of others.

A "direct threat" is a significant risk to the health or safety of others that cannot be eliminated by a modification of policies, practices, or procedures, or by the provision of auxiliary aids or services. In *School Board of Nassau County v. Arline*, 480 U.S. 273 (1987), the Supreme Court recognized that there is a need to balance the interests of people with disabilities against legitimate concerns for public safety. Although persons with disabilities are generally entitled to the protection of this part, a person who poses a significant risk to others will not be "qualified," if reasonable modifications to the public entity's policies, practices, or procedures will not eliminate that risk.

The determination that a person poses a direct threat to the health or safety of others may not be based on generalizations or stereotypes about the effects of a particular disability. It must be based on an individualized assessment, based on reasonable judgment that relies on current medical evidence or on the best available objective evidence, to determine: the nature, duration, and severity of the risk; the probability that the potential injury will actually occur; and whether reasonable modifications of policies, practices, or procedures will mitigate the risk. This is the test established by the Supreme Court in *Arline*. Such an inquiry is essential if the law is to achieve its goal of protecting disabled individuals from discrimination based on prejudice, stereotypes, or unfounded fear, while giving appropriate weight to legitimate concerns, such as the need to avoid exposing others to significant

health and safety risks. Making this assessment will not usually require the services of a physician. Sources for medical knowledge include guidance from public health authorities, such as the U.S. Public Health Service, the Centers for Disease Control, and the National Institutes of Health, including the National Institute of Mental Health.

"Qualified interpreter." The Department received substantial comment regarding the lack of a definition of "qualified interpreter." The proposed rule defined auxiliary aids and services to include the statutory term, "qualified interpreters" (§ 35.104), but did not define it. Section 35.160 requires the use of auxiliary aids including qualified interpreters and commenters stated that a lack of guidance on what the term means would create confusion among those trying to secure interpreting services and often result in less than effective communication.

Many commenters were concerned that, without clear guidance on the issue of "qualified" interpreter, the rule would be interpreted to mean "available, rather than qualified" interpreters. Some claimed that few public entities would understand the difference between a qualified interpreter and a person who simply knows a few signs or how to fingerspell.

In order to clarify what is meant by "qualified interpreter" the Department has added a definition of the term to the final rule. A qualified interpreter means an interpreter who is able to interpret effectively, accurately, and impartially both receptively and expressively, using any necessary specialized vocabulary. This definition focuses on the actual ability of the interpreter in a particular interpreting context to facilitate effective communication between the public entity and the individual with disabilities.

Public comment also revealed that public entities have at times asked persons who are deaf to provide family members or friends to interpret. In certain circumstances, notwithstanding that the family member or friend is able to interpret or is a certified interpreter, the family member or friend may not be qualified to render the necessary interpretation because of factors such as emotional or personal involvement or considerations of confidentiality that may adversely affect the ability to interpret "effectively, accurately, and impartially."

The definition of "qualified interpreter" in this rule does not invalidate or limit standards for interpreting services of any State or local law that are equal to or more

stringent than those imposed by this definition. For instance, the definition would not supersede any requirement of State law for use of a certified interpreter in court proceedings.

"Section 504." The Department added a definition of "section 504" because the term is used extensively in subpart F of this part.

"State." The definition of "State" is identical to the statutory definition in section 3(3) of the ADA.

### Section 35.105   Self-evaluation

Section 35.105 establishes a requirement, based on the section 504 regulations for federally assisted and federally conducted programs, that a public entity evaluate its current policies and practices to identify and correct any that are not consistent with the requirements of this part. As noted in the discussion of § 35.102, activities covered by the Department of Transportation's regulation implementing subtitle B of title II are not required to be included in the self-evaluation required by this section.

Experience has demonstrated the self-evaluation process to be a valuable means of establishing a working relationship with individuals with disabilities, which has promoted both effective and efficient implementation of section 504. The Department expects that it will likewise be useful to public entities newly covered by the ADA.

All public entities are required to do a self-evaluation. However, only those that employ 50 or more persons are required to maintain the self-evaluation on file and make it available for public inspection for three years. The number 50 was derived from the Department of Justice's section 504 regulations for federally assisted programs, 28 CFR 42.505(c). The Department received comments critical of this limitation, some suggesting the requirement apply to all public entities and others suggesting that the number be changed from 50 to 15. The final rule has not been changed. Although many regulations implementing section 504 for federally assisted programs do use 15 employees as the cut-off for this record-keeping requirement, the Department believes that it would be inappropriate to extend it to those smaller public entities covered by this regulation that do not receive Federal financial assistance. This approach has the benefit of minimizing paperwork burdens on small entities.

Paragraph (d) provides that the self-evaluation required by this section shall apply only to programs not subject to section 504 or those policies and

SEP 2 1 2

practices, such as those involving communications access, that have not already been included in a self-evaluation required under an existing regulation implementing section 504. Because most self-evaluations were done from five to twelve years ago, however, the Department expects that a great many public entities will be reexamining all of their policies and programs. Programs and functions may have changed, and actions that were supposed to have been taken to comply with section 504 may not have been fully implemented or may no longer be effective. In addition, there have been statutory amendments to section 504 which have changed the coverage of section 504, particularly the Civil Rights Restoration Act of 1987, Public Law No. 100–259, 102 Stat. 28 (1988), which broadened the definition of a covered "program or activity."

Several commenters suggested that the Department clarify public entities' liability during the one-year period for compliance with the self-evaluation requirement. The self-evaluation requirement does not stay the effective date of the statute nor of this part. Public entities are, therefore, not shielded from discrimination claims during that time.

Other commenters suggested that the rule require that every self-evaluation include an examination of training efforts to assure that individuals with disabilities are not subjected to discrimination because of insensitivity, particularly in the law enforcement area. Although the Department has not added such a specific requirement to the rule, it would be appropriate for public entities to evaluate training efforts because, in many cases, lack of training leads to discriminatory practices, even when the policies in place are nondiscriminatory.

### Section 35.106  Notice

Section 35.106 requires a public entity to disseminate sufficient information to applicants, participants, beneficiaries, and other interested persons to inform them of the rights and protections afforded by the ADA and this regulation. Methods of providing this information include, for example, the publication of information in handbooks, manuals, and pamphlets that are distributed to the public to describe a public entity's programs and activities; the display of informative posters in service centers and other public places; or the broadcast of information by television or radio. In providing the notice, a public entity must comply with the requirements for effective communication in § 35.160. The

preamble to that section gives guidance on how to effectively communicate with individuals with disabilities.

### Section 35.107  Designation of Responsible Employee and Adoption of Grievance Procedures

Consistent with § 35.105, self-evaluation, the final rule requires that public entities with 50 or more employees designate a responsible employee and adopt grievance procedures. Most of the commenters who suggested that the requirement that self-evaluation be maintained on file for three years not be limited to those employing 50 or more persons made a similar suggestion concerning § 35.107. Commenters recommended either that all public entities be subject to § 35.107, or that "50 or more persons" be changed to "15 or more persons." As explained in the discussion of § 35.105, the Department has not adopted this suggestion.

The requirement for designation of an employee responsible for coordination of efforts to carry out responsibilities under this part is derived from the HEW regulation implementing section 504 in federally assisted programs. The requirement for designation of a particular employee and dissemination of information about how to locate that employee helps to ensure that individuals dealing with large agencies are able to easily find a responsible person who is familiar with the requirements of the Act and this part and can communicate those requirements to other individuals in the agency who may be unaware of their responsibilities. This paragraph in no way limits a public entity's obligation to ensure that all of its employees comply with the requirements of this part, but it ensures that any failure by individual employees can be promptly corrected by the designated employee.

Section 35.107(b) requires public entities with 50 or more employees to establish grievance procedures for resolving complaints of violations of this part. Similar requirements are found in the section 504 regulations for federally assisted programs (see, e.g., 45 CFR 84.7(b)). The rule, like the regulations for federally assisted programs, provides for investigation and resolution of complaints by a Federal enforcement agency. It is the view of the Department that public entities subject to this part should be required to establish a mechanism for resolution of complaints at the local level without requiring the complainant to resort to the Federal complaint procedures established under subpart F. Complainants would not, however, be required to exhaust the

public entity's grievance procedures before filing a complaint under subpart F. Delay in filing the complaint at the Federal level caused by pursuit of the remedies available under the grievance procedure would generally be considered good cause for extending the time allowed for filing under § 35.170(b).

### Subpart B—General Requirements

### Section 35.130  General Prohibitions Against Discrimination

The general prohibitions against discrimination in the rule are generally based on the prohibitions in existing regulations implementing section 504 and, therefore, are already familiar to State and local entities covered by section 504. In addition, § 35.130 includes a number of provisions derived from title III of the Act that are implicit to a certain degree in the requirements of regulations implementing section 504.

Several commenters suggested that this part should include the section of the proposed title III regulation that implemented section 309 of the Act, which requires that courses and examinations related to applications, licensing, certification, or credentialing be provided in an accessible place and manner or that alternative accessible arrangements be made. The Department has not adopted this suggestion. The requirements of this part, including the general prohibitions of discrimination in this section, the program access requirements of subpart D, and the communications requirements of subpart E, apply to courses and examinations provided by public entities. The Department considers these requirements to be sufficient to ensure that courses and examinations administered by public entities meet the requirements of section 309. For example, a public entity offering an examination must ensure that modifications of policies, practices, or procedures or the provision of auxiliary aids and services furnish the individual with a disability an equal opportunity to demonstrate his or her knowledge or ability. Also, any examination specially designed for individuals with disabilities must be offered as often and in as timely a manner as are other examinations. Further, under this part, courses and examinations must be offered in the most integrated setting appropriate. The analysis of § 35.130(d) is relevant to this determination.

A number of commenters asked that the regulation be amended to require training of law enforcement personnel to recognize the difference between criminal activity and the effects of



seizures or other disabilities such as mental retardation, cerebral palsy, traumatic brain injury, mental illness, or deafness. Several disabled commenters gave personal statements about the abuse they had received at the hands of law enforcement personnel. Two organizations that commented cited the Judiciary report at 50 as authority to require law enforcement training.

The Department has not added such a training requirement to the regulation. Discriminatory arrests and brutal treatment are already unlawful police activities. The general regulatory obligation to modify policies, practices, or procedures requires law enforcement to make changes in policies that result in discriminatory arrests or abuse of individuals with disabilities. Under this section law enforcement personnel would be required to make appropriate efforts to determine whether perceived strange or disruptive behavior or unconsciousness is the result of a disability. The Department notes that a number of States have attempted to address the problem of arresting disabled persons for noncriminal conduct resulting from their disability through adoption of the Uniform Duties to Disabled Persons Act, and encourages other jurisdictions to consider that approach.

Paragraph (a) restates the nondiscrimination mandate of section 202 of the ADA. The remaining paragraphs in § 35.130 establish the general principles for analyzing whether any particular action of the public entity violates this mandate.

Paragraph (b) prohibits overt denials of equal treatment of individuals with disabilities. A public entity may not refuse to provide an individual with a disability with an equal opportunity to participate in or benefit from its program simply because the person has a disability.

Paragraph (b)(1)(i) provides that it is discriminatory to deny a person with a disability the right to participate in or benefit from the aid, benefit, or service provided by a public entity. Paragraph (b)(1)(ii) provides that the aids, benefits, and services provided to persons with disabilities must be equal to those provided to others, and paragraph (b)(1)(iii) requires that the aids, benefits, or services provided to persons with disabilities must be as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as those provided to others. These paragraphs are taken from the regulations implementing section 504 and simply restate principles long established under section 504.

Paragraph (b)(1)(iv) permits the public entity to develop separate or different aids, benefits, or services when necessary to provide individuals with disabilities with an equal opportunity to participate in or benefit from the public entity's programs or activities, but only when necessary to ensure that the aids, benefits, or services are as effective as those provided to others. Paragraph (b)(1)(iv) must be read in conjunction with paragraphs (b)(2), (d), and (e). Even when separate or different aids, benefits, or services would be more effective, paragraph (b)(2) provides that a qualified individual with a disability still has the right to choose to participate in the program that is not designed to accommodate individuals with disabilities. Paragraph (d) requires that a public entity administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities.

Paragraph (b)(2) specifies that, notwithstanding the existence of separate or different programs or activities provided in accordance with this section, an individual with a disability shall not be denied the opportunity to participate in such programs or activities that are not separate or different. Paragraph (e), which is derived from section 501(d) of the Americans with Disabilities Act, states that nothing in this part shall be construed to require an individual with a disability to accept an accommodation, aid, service, opportunity, or benefit that he or she chooses not to accept.

Taken together, these provisions are intended to prohibit exclusion and segregation of individuals with disabilities and the denial of equal opportunities enjoyed by others, based on, among other things, presumptions, patronizing attitudes, fears, and stereotypes about individuals with disabilities. Consistent with these standards, public entities are required to ensure that their actions are based on facts applicable to individuals and not on presumptions as to what a class of individuals with disabilities can or cannot do.

Integration is fundamental to the purposes of the Americans with Disabilities Act. Provision of segregated accommodations and services relegates persons with disabilities to second-class status. For example, it would be a violation of this provision to require persons with disabilities to eat in the back room of a government cafeteria or to refuse to allow a person with a disability the full use of recreation or exercise facilities because of

stereotypes about the person's ability to participate.

Many commenters objected to proposed paragraphs (b)(1)(iv) and (d) as allowing continued segregation of individuals with disabilities. The Department recognizes that promoting integration of individuals with disabilities into the mainstream of society is an important objective of the ADA and agrees that, in most instances, separate programs for individuals with disabilities will not be permitted. Nevertheless, section 504 does permit separate programs in limited circumstances, and Congress clearly intended the regulations issued under title II to adopt the standards of section 504. Furthermore, Congress included authority for separate programs in the specific requirements of title III of the Act. Section 302(b)(1)(A)(iii) of the Act provides for separate benefits in language similar to that in § 35.130(b)(1)(iv), and section 302(b)(1)(B) includes the same requirement for "the most integrated setting appropriate" as in § 35.130(d).

Even when separate programs are permitted, individuals with disabilities cannot be denied the opportunity to participate in programs that are not separate or different. This is an important and overarching principle of the Americans with Disabilities Act. Separate, special, or different programs that are designed to provide a benefit to persons with disabilities cannot be used to restrict the participation of persons with disabilities in general, integrated activities.

For example, a person who is blind may wish to decline participating in a special museum tour that allows persons to touch sculptures in an exhibit and instead tour the exhibit at his or her own pace with the museum's recorded tour. It is not the intent of this section to require the person who is blind to avail himself or herself of the special tour. Modified participation for persons with disabilities must be a choice, not a requirement.

In addition, it would not be a violation of this section for a public entity to offer recreational programs specially designed for children with mobility impairments. However, it would be a violation of this section if the entity then excluded these children from other recreational services for which they are qualified to participate when these services are made available to nondisabled children, or if the entity required children with disabilities to attend only designated programs.

Many commenters asked that the Department clarify a public entity's

Federal Register / Vol. 56, No. 144 / Friday, July 26, 1991 / Rules and Regulations **35711**

ADAAG, must be constructed with an elevator. It should be noted that Congress did not include an elevator exemption for public transit facilities covered by subtitle B of title II, which covers public transportation provided by public entities, providing further evidence that Congress intended that public buildings have elevators.

Section 504 of the ADA requires the ATBCB to issue supplemental Minimum Guidelines and Requirements for Accessible Design of buildings and facilities subject to the Act, including title II. Section 204(c) of the ADA provides that the Attorney General shall promulgate regulations implementing title II that are consistent with the ATBCB's ADA guidelines. The ATBCB has announced its intention to issue title II guidelines in the future. The Department anticipates that, after the ATBCB's title II guidelines have been published, this rule will be amended to adopt new accessibility standards consistent with the ATBCB's rulemaking. Until that time, however, public entities will have a choice of following UFAS or ADAAG, without the elevator exemption.

Existing buildings leased by the public entity after the effective date of this part are not required by the regulation to meet accessibility standards simply by virtue of being leased. They are subject, however, to the program accessibility standard for existing facilities in § 35.150. To the extent the buildings are newly constructed or altered, they must also meet the new construction and alteration requirements of § 35.151.

The Department received many comments urging that the Department require that public entities lease only accessible buildings. Federal practice under section 504 has always treated newly leased buildings as subject to the existing facility program accessibility standard. Section 204(b) of the Act states that, in the area of "program accessibility, existing facilities," the title II regulations must be consistent with section 504 regulations. Thus, the Department has adopted the section 504 principles for these types of leased buildings. Unlike the construction of new buildings where architectural barriers can be avoided at little or no cost, the application of new construction standards to an existing building being leased raises the same prospect of retrofitting buildings as the use of an existing Federal facility, and the same program accessibility standard should apply to both owned and leased existing buildings. Similarly, requiring that public entities only lease accessible space would significantly restrict the

options of State and local governments in seeking leased space, which would be particularly burdensome in rural or sparsely populated areas.

On the other hand, the more accessible the leased space is, the fewer structural modifications will be required in the future for particular employees whose disabilities may necessitate barrier removal as a reasonable accommodation. Pursuant to the requirements for leased buildings contained in the Minimum Guidelines and Requirements for Accessible Design published under the Architectural Barriers Act by the ATBCB, 36 CFR 1190.34, the Federal Government may not lease a building unless it contains (1) One accessible route from an accessible entrance to those areas in which the principal activities for which the building is leased are conducted, (2) accessible toilet facilities, and (3) accessible parking facilities, if a parking area is included within the lease (36 CFR 1190.34). Although these requirements are not applicable to buildings leased by public entities covered by this regulation, such entities are encouraged to look for the most accessible space available to lease and to attempt to find space complying at least with these minimum Federal requirements.

Section 35.151(d) gives effect to the intent of Congress, expressed in section 504(c) of the Act, that this part recognize the national interest in preserving significant historic structures. Commenters criticized the Department's use of descriptive terms in the proposed rule that are different from those used in the ADA to describe eligible historic properties. In addition, some commenters criticized the Department's decision to use the concept of "substantially impairing" the historic features of a property, which is a concept employed in regulations implementing section 504 of the Rehabilitation Act of 1973. Those commenters recommended that the Department adopt the criteria of "adverse effect" published by the Advisory Council on Historic Preservation under the National Historic Preservation Act, 36 CFR 800.9, as the standard for determining whether an historic property may be altered.

The Department agrees with these comments to the extent that they suggest that the language of the rule should conform to the language employed by Congress in the ADA. A definition of "historic property," drawn from section 504 of the ADA, has been added to § 35.104 to clarify that the term applies to those properties listed or eligible for

listing in the National Register of Historic Places, or properties designated as historic under State or local law.

The Department intends that the exception created by this section be applied only in those very rare situations in which it is not possible to provide access to an historic property using the special access provisions established by UFAS and ADAAG. Therefore, paragraph (d)(1) of § 35.151 has been revised to clearly state that alterations to historic properties shall comply, to the maximum extent feasible, with section 4.1.7 of UFAS or section 4.1.7 of ADAAG. Paragraph (d)(2) has been revised to provide that, if it has been determined under the procedures established in UFAS and ADAAG that it is not feasible to provide physical access to an historic property in a manner that will not threaten or destroy the historic significance of the property, alternative methods of access shall be provided pursuant to the requirements of § 35.150.

In response to comments, the Department has added to the final rule a new paragraph (e) setting out the requirements of § 36.151 as applied to curb ramps. Paragraph (e) is taken from the statement contained in the preamble to the proposed rule that all newly constructed or altered streets, roads, and highways must contain curb ramps at any intersection having curbs or other barriers to entry from a street level pedestrian walkway, and that all newly constructed or altered street level pedestrian walkways must have curb ramps at intersections to streets, roads, or highways.

## Subpart E—Communications

### Section 35.160    General

Section 35.160 requires the public entity to take such steps as may be necessary to ensure that communications with applicants, participants, and members of the public with disabilities are as effective as communications with others.

Paragraph (b)(1) requires the public entity to furnish appropriate auxiliary aids and services when necessary to afford an individual with a disability an equal opportunity to participate in, and enjoy the benefits of, the public entity's service, program, or activity. The public entity must provide an opportunity for individuals with disabilities to request the auxiliary aids and services of their choice. This expressed choice shall be given primary consideration by the public entity (§ 35.160(b)(2)). The public entity shall honor the choice unless it can demonstrate that another effective

State of California                                               Exhibit AT (3)

# Memorandum

Date:    August 23, 2007

To:    **INMATE WILSON**                    received 9-28-2007
       K-66474
       M-315

From:    California Medical Facility, Vacaville, CA 95696-2000

Subject:    **SECOND LEVEL APPEAL RESPONSE**
            **CMF APPEAL LOG #CMF-O7-M-2134**

This matter was reviewed on behalf of Suzan L. Hubbard, Warden (A), and California Medical Facility (CMF) on August 22, 2007, by D. J. Thomas, Correctional Lieutenant. A personal interview was conducted.

## ISSUES

Whether or not Appellant is being discriminated against because of his disability. Whether or not a television should be installed in ASU.

## FINDINGS

### I.

Appellant claims that before being placed in ASU he would watch CMF scheduled Educational programs on Television where he was learning better math, science, history and to make it in prison society and outside life with behavior and training on TV five days a week. Appellant claims he had made progress following the Television guidelines.

Appellant claims that since being in ASU he is denied the same opportunity for program accessibility as other inmates because he cannot participate in better learning via television. Appellant claims he is being discriminated against based on his disability due to post traumatic stress Disorder, diagnosed schizophrenia and paranoia. The Appellant claims there are several court cases that support his position.

Appellant claims that before being placed in the EOP ASU, he was able to watch institutional approved programs. The programs ranged from courses in Mathematics English to life skills and behavior modification. The Appellant contends that he is entitled to continue this due to his mental health disorder.

### II.

On August 22, 2007, Lieutenant D. J. Thomas conducted an interview with the Appellant. During the interview, the Appellant restated the information in his appeal and supplied no additional information to be reviewed. The institution notes, that the Appellant originally filed this 602 as an ADA Request for Reasonable Accommodation. Appellant was notified that his request was re-categorized to an Inmate/Parolee Form 602 Form.

SEP 21 2007

1

Exhibit AT (3) a

**SECOND LEVEL APPEAL RESPONSE**
Page 2

The institution notes that televisions are considered personal property. Therefore, an inmate loses the privilege of having a television while in ASU.

The Appellant indicated to the reviewer that he was seeking a remedy at the second level. During the second level review the institution notes that information regarding televisions in ASU was received from the Division of Adult Institution (DAI) addressing this issue. The memorandums they state that under certain criteria inmates in ASU may be allowed to purchase and possess entertainment appliances. However, CMF also notes that the cost of retrofitting this institution would greatly impact the budget and this institution's mission would suffer a tremendous setback in all areas of operations if it was mandated to retrofit this prison to allow for televisions in ASU. CMF is currently in the process of seeking exemption from the provisions as described in the memorandum.

### III.

The Departmental Operational Manuel applicable to this case is contained in DOM Sec 54030.17. The Appellant may find a copy of the DOM kept inside institutional law library.

### DETERMINATION

The documentation and arguments presented are persuasive that the Appellant's issue does meet the criteria seek forth in the memorandums. However, the institution reserves the right to seek the exemption specifically mentioned therein. The Appellant is advised that until such time the appeal will not be remedied at this level. A copy of the two memos will be forwarded to the Appellant for his review.

### CONCLUSION

Therefore, the Appellant's appeal is **denied** at the Second Level of Review.

**APPEAL: DENIED**

**SUZAN L. HUBBARD**
Warden (A)

SEP 21 200

Exhibit AT (4)

State of California                                          Department of Corrections and Rehabilitation

**Memorandum**

Date    :    April 27, 2007

                                                              "Coleman" issue

To      :    Associate Directors, Division of Adult Institutions
             Wardens

Subject :    **CLARIFICATION REGARDING ENTERTAINMENT APPLIANCES IN ADMINISTRATIVE
             SEGREGATION UNITS**

This is to provide clarification regarding the attached memorandum dated March 12, 2007, on
the subject of televisions in Administrative Segregation Units (ASU). The Division of Adult
Institutions (DAI) has received requests for more specific guidance concerning this inmate
privilege.

The California Department of Corrections and Rehabilitation has a commitment to the court
in regards to *Coleman vs. Schwarzenegger*. This commitment is in response to court
concerns over sensory deprivation and suicide trends in the ASU's. It is important that we
take an immediate, active role in addressing these issues rather than waiting for additional
direction from the court. With this intent, the DAI is permitting ASU inmates to possess one
entertainment appliance, either a television or a radio. Compact disc, cassette players and
batteries remain restricted due to safety and security concerns and battery operated
appliances are still not permitted in ASU.

The March 12, 2007, memorandum provided for a schedule of increasing temporary loss of
entertainment appliances in ASU. The initial Rules Violation Report (RVR) resulting in ASU
placement does not apply to this schedule. It would be contrary to the intent of our response
to *Coleman* to permit this. Only RVR's received subsequent to ASU placement shall result in
loss of an entertainment appliance.

RVR's received in ASU have no time constraints other than those related to Program Failure.
While a first and a second RVR may be over one-year apart, the second RVR shall always
result in a 60-day loss of entertainment appliance privileges. However, this lack of time limits
does not carry over to subsequent ASU placements.

The instances in which an ASU inmate would not be permitted to possess an entertainment
appliance include physical plant limitations, the loss of the entertainment appliance as the
result of RVR's while in ASU, or if the reason for ASU placement involved the misuse of an
entertainment appliance.

The RVR resulting in ASU placement does not impact the inmates' ability to possess an
entertainment appliance unless there is a nexus between an appliance and the reason for
placement. For example, if placement involved the misuse of an appliance, the Institution
Classification Committee may determine that possession of an entertainment appliance
poses an unacceptable safety and security risk in ASU. Such a determination must be made
on a case-by-case evaluation of the specific circumstances involved.

The memorandum of March 12, 2007, permits inmates housed in ASU to possess one
entertainment appliance; however, there may be physical plant limitations. While an
inmate's Privilege Group may permit the privilege of possessing an entertainment appliance,
this may not be possible without extensive retrofitting of existing buildings by adding

SEP 21 2007

Exhibit AT (4) b

Associate Directors
Wardens
Page 2

additional electrical outlets, and cable connections. If this is the case, the facility shall submit an exemption request to the Standardized Procedures Liaison Unit, as provided in Department Operations Manual Section 54030.17. Please provide a description of the retrofitting required along with a cost estimate in all exemption requests.

Several institutions have exemptions granted for alternating current appliances in dormitory housing, including those institutions whose General Population (GP) housing is exclusively dormitories. Regardless of the exemption granted for dormitory housing, placement in ASU is not subject to this exemption. It is important to remember the restrictive nature of ASU housing and resulting sensory deprivation issues that do not exist in dormitory housing and are of concern in the *Coleman* case. Therefore, an inmate who was unable to possess an entertainment appliance in GP housing may be able to do so during ASU placement.

The ability of an ASU inmate to possess an entertainment appliance, either a television or a radio, also provides inmates with an additional incentive for positive programming and an additional disciplinary tool for staff. The memorandum of March 12, 2007, provides a schedule for temporary loss of entertainment appliances. The classification of the RVR, whether serious or administrative, does not affect this schedule. The loss of an entertainment appliance is in addition to any other assessment deemed appropriate by the hearing official.

If further information is needed, please contact Don C. Price, Facility Captain (A), Standardized Procedures Liaison Unit, at (916) 327-5305.

LEA ANN CHRONES

Director (A)
Division of Adult Institutions

Attachment

cc: Scott Kernan
    Teresa Schwartz
    Tim Virga
    Don Price

SEP 2 1 200

State of California                                              Department of Corrections and Rehabilitation

# Memorandum

Date :    March 12, 2007

To  :    Associate Directors, Division of Adult Institutions
         Wardens

Subject:  **TELEVISIONS IN ADMINISTRATIVE SEGREGATION UNITS**

As the result of pending changes to Title 15 Section 3190(s) and Department Operations
Manual (DOM) Section 54030, inmates housed in Administrative Segregation Units (ASU) may be
permitted to possess one entertainment appliance, physical plant limitations permitting.

Privilege Group (PG) A and B inmates placed in ASU shall have their property inventoried and stored
pending the outcome of Initial Classification Committee review. If the inmate is retained in ASU, all
allowable property as determined by current departmental policy shall be reissued to the inmate.
Inmates in ASU may also purchase an entertainment appliance via the Special Purchase Process.
Eligibility to possess an entertainment appliance commences on the date of PG D assignment.

Retention of an entertainment appliance shall be based upon the inmate's disciplinary free behavior.
Entertainment appliances are subject to temporary removal as the result of a finding of "Guilty" on any
Rules Violation Report (RVR). The loss of an entertainment appliance shall be in addition to any
other assessment deemed appropriate by the hearing official. Temporary loss of entertainment
appliances shall be assessed as follows:

1. 30 days for the first offense

2. 60 days for the second offense

3. 90 days for the third offense

In addition, a guilty finding for two Serious RVRs or one Serious and two Administrative RVRs
within 180-days shall be considered a program failure and result in disposal of the entertainment
appliance in accordance with DOM Section 54030.12.2.

If further information is needed, please contact Don C. Price, Facility Captain (A), Standardized
Procedures Liaison Unit, at (916) 327-5305.

*Original signed by:*

LEA ANN CHRONES
Director (A)
Division of Adult Institutions

cc:  Scott Kernan
     Teresa Schwartz
     Tim Virga
     Don Price

Exhibit AT (6)

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
INMATE APPEALS BRANCH
P. O. BOX 942883
SACRAMENTO, CA 94283-0001

## DIRECTOR'S LEVEL APPEAL DECISION

Date: **JAN 1 4 2008**                                received 1-18-2008

In re: David Wilson, K66474
California State Prison, Los Angeles County      CMF — Ad-Seg TV's
44750 - 60th Street West
Lancaster, CA 93536-7620

IAB Case No.: 0711443          Local Log No.: CMF-07-02134

This matter was reviewed on behalf of the Director of the California Department of Corrections and Rehabilitation (CDCR) by Appeals Examiner R. Pennington Facility Captain. All submitted documentation and supporting arguments of the parties have been considered.

**I  APPELLANT'S ARGUMENT:** It is the appellant's position that prior to his placement in the Administrative Segregation Unit (ASU) he was able to watch California Medical Facility (CMF)· scheduled educational programs on television (TV). The appellant contends that he was making progress in math, science, history and how to make it in prison society and outside life with the information on behavior and training from the TV programs. The appellant contends that now that he has been placed into the ASU he no longer receives the educational programs because there is no TV in the ASU. The appellant contends that this is discrimination against him based upon his disability due to post traumatic stress disorder, diagnosed schizophrenia and paranoia. The appellant has requested that the ASU provide public education programs and that he be allowed to possess a TV radio combination appliance in his cell while in the ASU.

**II  SECOND LEVEL'S DECISION:** On August 22, 2007, the appellant was interviewed by Correctional Lieutenant D.J. Thomas. The appellant was informed that TV's are considered personal property. Therefore, an inmate loses the privilege of having a TV while in the ASU. The reviewer noted that information regarding TV in the ASU was received from the Division of Adult Institution (DAI) addressing this issue. The memorandum states that under certain criteria inmates in the ASU maybe allowed to purchase and possess entertainment appliances in their assigned cell. However, CMF also notes that the cost of retrofitting this institution would greatly impact the budget and this institution's mission would suffer a tremendous setback in all areas of operations if it was mandated to retrofit this prison to allow for TV's in the ASU. CMF is currently in the process of seeking exemption from the provisions as described in the memorandum. The appeal was denied at the Second Level of Review (SLR).

**III  DIRECTOR'S LEVEL DECISION:** Appeal is denied.

A. **FINDINGS:** Despite the appellant dissatisfaction he has been provided with an appropriate response from the SLR. The appellant has requested to be provided with a TV or to have a TV mounted on the wall. The memorandum has allowed inmates to purchase TV's in the ASU for their own personal possession. The appellant has failed to provide any information, documentation or evidence to support his contention that he has been denied access to a TV based upon his disability. The appellant has requested to be provided with special privileges which are not afforded to any other inmate confined to the ASU. This request will not be considered. The appellant will be required to meet the behavior expectations required to return to the general inmate population (GP) where he may once again earn the privilege of watching the TV provided to inmates in the GP. Based upon the information presented there shall be no further relief afforded the appellant at the Director's Level of Review.

The appellant filed the appeal as an Americans with Disabilities Act issue. Following careful examination, there is no evidence to support that the issue and its resolution fall within the Armstrong Remedial Plan or California Code of Regulations, Title 15, Section (CCR) 3085. As such, it has been processed in accordance with CCR 3084 et sequitur.

Affidavit Or Statement                                    Exhibit AT (8)

THE FOLLOWING INMATES CONVICTS STATE AS TRUE & CORRECT UNDER PENALTY OF
PERJURY THEY COULD WATCH EDUCTIONAL & LEARING TELEVISON BEFORE AD-SEG &
NOW DISCRIMINATED FOR TV ACCESS & SENSORY DEPRIVATION HAS CAUSED SUIEIDAL,
HOMICIDAL TRENDS IN AD-SEG & REQUEST RETROFIT CABLE & ELECTRIC OUTLET FOR TV's

| Printed Name | CDC# | Cell# | Date | Signature |
|---|---|---|---|---|
| David W. Wilson | K66474 | A4-102 | 7-29-08 | David W. Wilson |
| John Evans Moss | F-15898 | A-4/228 | 7/29/08 | J.E. Moss |
| Anderson Lawans | P76775 | A4-248 | 7/29/08 | |
| OTTO WRIGHT | T51712 | A4 138C | 7/29/08 | |
| WHLLER ALEX | V05562 | A4233L | 7/29/08 | Alex Whller |
| C. Thomas | T90811 | A4137C | 7/29/08 | C. Thomas |
| T Roberts | T-43473 | A4-142 | 7/29/08 | |
| WILLIAMS M | V02910 | A-148 | | William M |
| ANE Russell | D17269 | A4 107 | 7/29/08 | |
| | | | 7-4 | |
| X ALEJANDRO | V-05297 | A4106 | 7 29 08 | |
| rles W Brady | D-46786 | A4-103 | 7-29-08 | Charles W Brady |
| lson A. Gomez | K-63922 | A4-101 | 07/29/08 | Nelson A Gomez |
| TILLETT | T-70113 | A.4/202 | 7/29/08 | |
| GUERRERO | H-23532 | A4-202 | 7-29-08 | |
| JONES J | F08127 | A4-203 | 7-30-08 | |
| Solano, C | E-05158 | A4-203 | 7-30-08 | Carlos Salano |
| E Lujan LUJAN,E | E43770 | A4-201 | 7-30-08 | E. Lujan |
| E. Aroyo | T-05718 | A-4-201 | 7-30-08 | |
| ROCHIN M | D-41360 | A4 204 | 7-30-08 | Richard Roch |
| JOHN Williams | V.34099 | A4-123 | 11-2-08 | J Will |
| HUNT | C-49610 | A4-102 | 11-3-08 | Hunt |
| VN SPAIN | F-24073 | A4103 | 11-18-08 | |
| N MOERKE | F 60698 | A-4-103 | 11-18-08 | |
| lbert Alvarado | F66054 | A-4-102 | 11-18-08 | Albert Alvarado |
| Jean Haward | V.34119 | A.4 101 | 11/18/08 | |
| JAMES Buford | F-02437 | A-4-101 | 11/18/08 | James Buford |

*Exhibit LA*

*received 8-25-2009*

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
DEPT 100

| Date: | AUGUST 11, 2009 | | | |
|---|---|---|---|---|
| Honorable: | PATRICIA SCHNEGG | Judge | J. A. RAMIREZ | Deputy Clerk |
| | NONE | Bailiff | NONE | Reporter |

(Parties and Counsel checked if present)

BH005630
In re,
DAVID WILSON,
    Petitioner,
On Habeas Corpus

Counsel for Respondent:

Nature of Proceedings:   ORDER RE: WRIT OF HABEAS CORPUS

The Court has read and considered petitioner's Writ of Habeas Corpus filed on November 26, 2008, as well as the respondent's informal response and petitioner's response thereto. Petitioner argues that by failing to provide access to television programming to inmates housed in the Administrative Segregation Unit ("ASU"), the California Department of Corrections and Rehabilitation's ("CDCR") has discriminated against him on the basis of a medical condition, namely schizophrenia and Post Traumatic Stress Disorder, in violation of the Americans with Disabilities Act ("ADA").

The petitioner bears the ultimate burden of proving the factual allegations that serve as the basis for his or her request for habeas corpus relief. (*In re Rosenkrantz* (2002) 29 Cal.4th 616, 667).) In this case, petitioner has failed to meet that burden. Although, "no qualified inmate or parolee with a disability, as defined in Title 42, U.S.C. section 12102, shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of the department, or be subjected to discrimination," (Cal. Code Regs. tit. 15 §3085) there is no evidence in the record that petitioner has been denied access to television by reason of his medical condition. According to the Director's Level Appeal Decision, "The appellant has requested to be provided with special privileges which are not afforded to any other inmate confined to the ASU." It appears that inmates housed in the ASU for non-disciplinary reasons are entitled to purchase and posses one entertainment device subject to safety and security issues. Petitioner failed to provide any documentary evidence of the reason for his ASU status. Additionally, there is no evidence in the record that he has attempted to purchase a television and been denied on the basis of his medical condition.

Furthermore, the court's request for an informal response indicates that the order pertains only to issues arising at Los Angeles County State Prison during petitioner's current term of confinement. Petitioner has since been transferred to Solano. Therefore, the issue is now moot. (In re Ponce (1966) 65 Cal. 2d 341, 343.)

Accordingly, the petition is denied.

The court order is signed and filed this date. The clerk is directed to send notice.

1

| Minutes Entered |
|---|
| 08-11-09 |
| County Clerk |

received 11-24-2009   Exhibit EWM

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

COURT OF APPEAL - SECOND DIST.

F I L E D

NOV 2 0 2009

JOSEPH A. LANE                    Clerk

S. VEVERKA           Deputy Clerk

In re DAVID WILSON,

on Habeas Corpus.

B219090

(Los Angeles County
Super. Ct. No. BH005630)
(Patricia Schnegg, Judge)

ORDER

THE COURT:*

The petition for writ of habeas corpus filed on September 24, 2009, has been read and considered and is denied on the ground that the issues involving conditions of confinement raised and pursued while petitioner was incarcerated in Lancaster are moot now that petitioner has been transferred to prisons in Solano and now San Diego County.

*EPSTEIN, P. J.          WILLHITE, J.          MANELLA, J.



**NOT FOR PUBLICATION**

DEC 22 2010

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

*received 12-28-2010*

| | |
|---|---|
| DAVID WAYNE WILSON,<br><br>　　　　Petitioner - Appellant,<br><br>v.<br><br>DIRECTOR OF ADULT<br>INSTITUTIONS; et al.,<br><br>　　　　Defendants - Appellees. | No. 09-15953<br><br>D.C. No. 2:08-cv-02904-WBS-GGH<br><br>MEMORANDUM* |

Appeal from the United States District Court
for the Eastern District of California
William B. Shubb, District Judge, Presiding

Submitted December 14, 2010**

Before:　　GOODWIN, WALLACE, and THOMAS, Circuit Judges.

California state prisoner David Wayne Wilson appeals pro se from the

district court's judgment dismissing without prejudice his constitutional and

statutory claims stemming from his inability to watch educational programming on

---

　　　*　　This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

　　　**　　The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

television while housed in administrative segregation. We have jurisdiction under

28 U.S.C. § 1291. We review de novo the district court's decision to dismiss

Wilson's complaint under 28 U.S.C. § 1915A, *Ramirez v. Galaza*, 334 F.3d 850,

853 (9th Cir. 2003), and we affirm.

The district court properly dismissed Wilson's Eighth Amendment claim

because the lack of educational television programs, standing alone, does not

amount to deliberate indifference. *See Hoptowit v. Ray*, 682 F.2d 1237, 1254 (9th

Cir. 1982) ("Idleness and the lack of programs are not Eighth Amendment

violations."), *abrogated on other grounds by Sandin v. Conner*, 515 U.S. 472

(1995).

The district court also properly dismissed Wilson's claims under the

Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA").

Wilson failed to allege that he was denied access to educational programming

because of a disability or that he was unable to access the programming because of

the disparate impact of a facially neutral policy. *See Simmons v. Navajo County*,

609 F.3d 1011, 1021 (9th Cir. 2010) (ADA claim failed because pretrial detainee

was not excluded from outdoor recreation because of disability); *O'Guinn v.

Lovelock Corr. Ctr.*, 502 F.3d 1056, 1060 (9th Cir. 2007) (plaintiff must allege that

2

he was denied access to programming solely because of a disability to state an RA

claim).

Wilson's remaining contentions are unpersuasive.

We deny Wilson's motion under Fed. R. App. P. 15 as moot.

**AFFIRMED.**

Exhibit GWT (3)

DAVID W. WILSON, K66474
R.J. Donovan, -13-132 L
480 Alta Road
San Diego, CA 92179


IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

| | |
|---|---|
| DAVID W. WILSON, ) | No. 09-15953 |
| ) | D.C. No. 2:08-cv-02904-WBS-GGH |
| Petitioner-Appellant, ) | |
| ) | PETITION FOR REHEARING EN BANC |
| vs. ) | Fed.R.App.P.35; 9th Cir. R.35-1 to -33 |
| ) | |
| DIRECTOR OF ADULT ) | |
| INSTITUTIONS, et al., ) | |
| ) | |
| Defendants-Appellees. ) | |

   Appellant David W. Wilson seeks Petition For Rehearing 'En Banc,' for the
following reason. In the Courts Memorandum Dated: December 22, 2010, Petitioner
received December 28, 2010, it states: page 2, third paragraph;

 [The district court also properly dismissed Wilson's claims under the Americans
with Disabilities Act ("ADA") and Rehabilitation ACT ("RA").  Wilson failed to
alleged that he was denied access to educational programming because of a
disability or that he was unable to access the programming because of the
disparate impact of a facially neutral policy.]

   Petitioner Wilson hereby submits pages 1 and 2 of AMENDED COMPLAINT, U.S.E.D.
Court,  and hereto submits pages 1 and 2 of INFORMAL BRIEF, U.S. COURT OF APPEALS.
Which in both cases the Petitioner alleges denial of "Educational Programs" on
'Television' as General Population  . . . . , cause by "Discrimination" based on
mental disabilities violating State and Federal laws.    Therefore the Court is
in ['Error'] and Petitioner seeks REHEARING EN BANC.   Dated: January 5, 2011

                                        Respectfully submitted
                                        David W. Wilson
                                        David W. WIlson

*received 5-3-2011*

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

APR 27 2011

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| DAVID WAYNE WILSON,<br><br>                    Petitioner - Appellant,<br><br>v.<br><br>DIRECTOR OF ADULT<br>INSTITUTIONS; et al.,<br><br>                    Defendants - Appellees. | No. 09-15953<br><br>D.C. No. 2:08-cv-02904-WBS-<br>GGH<br>Eastern District of California,<br>Sacramento<br><br>ORDER |

Before:    GOODWIN, WALLACE, and THOMAS, Circuit Judges.

The full court has been advised of the petition for rehearing en banc and no

judge has requested a vote on whether to rehear the matter en banc. *See* Fed. R.

App. P. 35.

Wilson's petition for rehearing en banc is denied.

No further filings shall be accepted in this closed case.

Exhibit GWT (5)

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

MAY 05 2011

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

received 5-10-2011

Exhibit GWT (5)

DAVID WAYNE WILSON,

                Petitioner - Appellant,

    v.

DIRECTOR OF ADULT
INSTITUTIONS; et al.,

                Defendants - Appellees.

No. 09-15953

D.C. No. 2:08-cv-02904-WBS-GGH
U.S. District Court for Eastern
California, Sacramento

**MANDATE**

        The judgment of this Court, entered December 22, 2010, takes effect this

date.

        This constitutes the formal mandate of this Court issued pursuant to Rule

41(a) of the Federal Rules of Appellate Procedure.

                              FOR THE COURT:
                              Molly C. Dwyer
                              Clerk of Court
                              /s/
                              Theresa Benitez
                              Deputy Clerk

Exhibit (X) MAC2
30/23-29

APR 29 2011   APR 09 2011

ALL Fac. 1 General Council & Executive Body

**INMATE/PAROLEE APPEAL FORM**
CDC 602 (12/87)

| Location: Institution/Parole Region | Log No. | Category |
|---|---|---|
| 1. KJD | 1. 11-089 | 11-PROG |
| 2. ___ | 2. ___ | 1C/C-AG |

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|---|---|---|---|
| DAVID W. WILSON | K-66474 | | 1-3-132 L |

A. Describe Problem: This RECALL to REMOVE "ALL" Men's Advisory Council (M A C) Facility 1, General Council & Executive Body is pursuant CCR Title 15, Division 3, Article 3, §3230(e)(1) ..... The minutes of meetings shall contain the date & time of the meeting, names and titles of those present & absent, subjects discussed, decisions made & actions taken.
The current "MAC" has not Posted "No' meeting, as hereto attached Exhibit (X)MAC, (X)MAC1 when the Executive body was elected. And by far worst the 'General Council' current & Executive Body never made a ("AGENDA") similar to attached Exhibit FM(8) to 'Meet' with the Department heads. As Appellant did when EOP MAC Bldg. 2, before removed from Unit, Exhibit EOP 2.
This has resulted in 'Not' meeting with Health Care Manager with Standing Committees, as described in R.J. Donovan's MAC CONSTITUTION AND BYLAWS, Exhibit's FM, FM(2), FM(3), FM(4), FM(5), FM(6), FM(7), this has had manifold consequences for,

If you need more space, attach one additional sheet.   C O N T I N U E D   Additional Sheet--------->

B. Action Requested: MAC RECALLED & Not Serve on MAC Position for 3 Years for Failure of Duties.
If not let any "can" all be held accountable to Court(s) for degradation of Title 15 §3230(a)(2), (b), (b)(4), (e)(1), #3304(b) & MAC Office placed in location where I/M's can access without being impeded by Officer's (DOM) 101030.5; Penal Code 2600 Retained Rights: 1st, 8th, 14th Amend. Will seek damages at Liability, Obligation, Detriment, Future Detriment, at individual & official capacities. [Any reprisals by MAC Reps/I/M, body or Fac. & Staff for 1st Amend. Title 15 §3084.1(d), for manufactured threats/enemies & if proven Penal Code's 182.(a)(5) Conspiracy for P.C. 2nd 'Speaking' false or ... or Prevaricating Predarting false documents that ... ... ... [illegible] ... Penalty Level 9 Dismissal from service, & I be allowed also against 114-D writer & Reviewer & they not ... ... receive pension benefits. ___ Date Submitted ___

Inmate/Parolee Signature: [signature]   Date Submitted: 1-26-2011

C. INFORMAL LEVEL (Date Received: 2/25/11 )

Staff Response: In reading your 602, You have multiple issues included in this 602 and you lost time restraints due to this I'am denying your 602 at the Informal level

Staff Signature: [signature]   Date Returned to inmate: 2/25/11

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

"Dissatisfied" received Informal Response 2/25/2011, above in person & 'I explained 'MAIN' Issue is RECALL for Fac. 1 MAC's have not made ('AGENDA'S') with Dept. Heads & "POSTED"for I/M's pursuant Exhibit FM(3), & other BYLAWS of 'CONSTITUTION, & violates Title 15 #3230(a)(2), & Fac. 1 I/M's request "RECALL" SEE Exhibit MR(1), for MAC places lives in jeopardy not doing Job Duties, & this is 'Not' multiple issue & time constraints were meet & Fac. 1 Staff denial.

Signature: S. Body SIGN(K)   Date Submitted 3-2-2011

Note: Property/Funds appeals must be accompanied by a completed Board ...

JUN 16 2011

RECEIVED

CDC Appeal Number: 11-089

1022677

K66474

11-089

First Level ☐ Granted ☐ P Granted ☒ Denied ☐ Other

E. REVIEWER'S ACTION (Complete within 15 working days): Date assigned: FEB 16 2011 Due Date: MAR 28 2011

Interviewed by: A Allcamby

Staff Signature: [signature] A Allcamby Title: AW Date Completed: 3-28-11

Division Head Approved: Signature: [signature] Title: AW Returned Date to Inmate: MAR 28 2011

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response. "Dissatisfied" received SLR 4/1/2011, and it speaks to MAC Chairman and MAC Roster updated 3/7/2011, & copies of Memo of MAC Meeting on 1/27/2011. This meeting of 1/27/2011, was most likely a Warden's meeting. Which the Issue is Meeting with Food Manager, Bradford as OPERATING COMMITTEE, Exhibit EOP 2, R&R Sgt. Alverez, & Standing Committees for Health/Welfare including Medical issues with CMO, E. Romero, as well as meeting with Clothing Warehouse Supervisor, Thurman Ward, Clothing Shortages Unsanitary, & Canteen Manager ect., & POSTING AGENDAS of purposed meetings & Meeting & Results, SEE Ex. FM, FM(2), FM(3).

Signature: [signature] Date Submitted: 4/4/2011

Second Level ☐ Granted ☐ P. Granted ☒ Denied ☐ Other

G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned: APR 26 2011 Due Date: JUN 06 2011

☒ See Attached Letter

Signature: [signature] Date Completed: 5-20-2011

Warden/Superintendent Signature: T Kabban-Miller CDW(A) Date Returned to Inmate: JUN 07 2011

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response. "Dissatisfied" received SLR 6/8/2011, Exhibit (X)MAC(12), (12)a, denied by T.Kabban-Miller (A)cting CDW, & JOB DESCRIPTION similar (Ex.) Exhibit F, cannot by SLR as Warde, Ex. W(1). Also attached Exhibit's MR(3), MR(4), show Whites & Hispanics & Others request this RECALL & more Blacks who make up 65% of Fac. 1. I also reattach Exhibit's (X)MAC, (X)MAC(1), FM(8), EOP 2, (X)MAC 5, (X)MAC 8, & reattach Exhibit's MR(3), MR(4), MR(5) MR(5)a, MR(6), (X)MAC3, (X)MAC 4, (X)MAC 5, & Also the MAC does not Use FORMS for I/M's as Exhibit (X)MAC 13, (X)MAC 14, Also previous at R.J.D., I was placed in Ad-Seg as part of reprisals of Recall. Exhibit's M. M(3), response Exhibit's E, F(X).' Which this MAC Fac. 1, still does not have Unit MAC Reps meet with Division Heads & POST AGENDAS & cannot do their Job for the Administration allows for they are all White & Mexican and this allows Mexican MAC Chairman to control Blacks as well as other races by denying access to Programs & Services that would improve Fac., & prevent imminent danger from continuing by Medical Inadequacies, & Confrontation with Staff, or other systematic deficiencies that deny EOP's & G.P's services that are given in other institutions, that has caused DEATH at RJD. due to MAC's Not doing, their Constitutional duties as described herein, Exhibit's FM - FM(7).

Signature: [signature] Date Submitted: 6-12-2011

For the Director's Review, submit all documents to: Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

DIRECTOR'S ACTION: ☐ Granted ☐ P. Granted ☐ Denied ☐ Other

☐ See Attached Letter

Date:

CDC 602(12/87)

Exhibit(X) MAC 2ᵈ

R E C A L L  MAC ALL Fac.1 General Council &
Executive Body

David W. Wilson, K66474
12-12-2010

C O N T I N U E D: Inmate's with HIV & AIDS are 'denied' Renewal of Medication as are many
Life sustaining Meds or Appellants Glaucoma Eye Drops, or that Nurse's
are doing Dr's prognosis & diagnosis, & I/M's 'Not' seen with 14 days of Plata v. Scharzenegger,
SETTLEMENT, & I/M's denied Pain Meds after Surgery's.  This is 'Imminent Danger' to many I/M's
as are the 'Food Conditions' of cross contamination where Food is being with held & watered down.
There is a severe 'Laundry Shortage' every week & Sheets, socks routinely 'Not given,' &
incorrect sizes 'Not' given for pants, shirts not being able to wear 'Clean Clothing,' this is
a Hygiene issue.  These and more issue(s) could be brought up on Exhibit FM(6), at Section 7
   a )  H e a l t h   a n d   W e l f a r e  C o m m i t t e e
Section 7 - Committees gives Committees 'All' Building Reps are Supose  to be assigned to one
or the other.  SEE Exhibit FM(2) Section 1 - Representatives
                         MAC Representatives are also assigned to serve on MAC Committees and to
oversee and report on various areas within the respective facilities and within the institution as a whole.

The Whole MAC has 'Not' complied with above for General Council & current Chairman or Executive
Body when General Council Members.
The MAC Chairman at Exhibit FM(3), Section 5 d) Shall ensure all facility agendas and meetings/summari-
zatios are accurately prepared, approved and distributed to all General Population inmate posting areas.
The MAC Vice Chairman at Exhibit FM(3),  b) Shall coordinate the functions of the Standing Committees as
necessary under the direction of the Facility Chairman.
The MAC Secretary at Exhibit FM(4),  c) Shall prepare typewritten copies of all agendas and meetings at the
facility level.

None of above has been 'complied' with for as Agendas by the General Council or Executive Body.

   Which one of the Main reasons is that 'Most' MAC at R.J. Donovan are more interested in
issue(s) less important  & cannot accomplish their MAC Guidelines at Exhibit FM, must have the
ability to effectively function in that capacity and perform the duties required thereof.
This is described in Title 15 #3230(a)(2)  The council shall operate only under the constitution and bylays
as prepared by the council's inmate representative . . . and approved by the Warden. CCR# 3230(b)  Shall be limited
only by the inmate's ability to effectively function in that capacity as determined by the Warden.
CCR #3230(b)(4)  The membership of representatives or the activities of the entire council may be suspended when
the Warden determines that the representatives or council presents a threat to facility security or safety of persons,
or that the representative's or council, actions are counterproductive to the best interest and welfare of the
general population.  If a council's activities are suspended, the Warden shall notify the general inmate population of
that action and the reason thereof.

The Warden is in denial of the MAC actions for this facilitates  Chaos & Department Heads to 'Not' have to
meet with Inmate's to resolve issue(s).  Which *Communication is the *Key to understanding
And Exhibit MR(1), RECALL was initiated by this Appellant with Page of Signatures, & sent to
the Warden with letter, Exhibit MR(5), Associate Warden, Exhibit MR(4), & Director, Exhibit
MR(3).  To which Appellant received response from Warden, Exhibit MR(5), 11/4/2010, only
mentioning Executive Body Recall, & this is ['Incorrect'] for Exhibit MR(5), states:
           "Recall of Executive Body & All Fac. I MAC's.  To which Appellant also
received response on 12/8/2010, stating response form Associate Warden reported Appellant was not
able to identify any specific areas of concern.  This Appellant has numerous issues the General
Population has brought to his attention they would like remedied & will bring several of these
issues to Court with Director's Review's.  Therefore Exhibit MR(6) is [' Incorrect'].
   There are issue(s) concerning "Mail" delayed 3 weeks, & "Visitor's told to leave early, &
"Canteen" discrimination & 'Opening on time,' & the MAC has 'Not' meet Guidelines for meeting
Standing & Operating Committees, & the Administration accepts this for they have affinity with
MAC Chairman & accepts this as Status quo, & the General Population request their removal for
above reasons, & knowing current MAC is [inadequate] & safety & security risk to remain for
I/M's do  not have faith & trust in MAC for they lack integrity to fulfill their obligation
with respect, character the 'Men,' 'Convict,' 'Prisoner's' demands & Custody should also.
   Also MAC Office is in 'Urinal' of Psy. Services/Gym & I/M's are "Harassed to communicate to Executive Body of
issue(s), & the MAC office was Next to Program Office e.g. now Lt's Office & pursuant (DOM) 101030.5 Activity Groups
A group shall be permitted only if provides benefit. . . , Space is available for meeting & activities.

Exhibit DSC-103

| State of California | | DEPARTMENT OF CORRECTIONS | | CDC-128G |
|---|---|---|---|---|
| CDC Number: K66474 | Name: WILSON, D | Classification Score: 23 Level: II | Type and Release Date: MEPD 04-28-2029 | |
| Custody: CLOB | WG/PG: A1/A Effective: 08-25-08 | Next Classification: 04-12 Next BPT: 03-2028 | Housing: F1-03-132L | R.P.S. Status: N/A |

**Assignment/Committee Summary**

F1 CULINARY CLERK / REF CSR, RX TX CTF-C-II ALT CMF-III O/R (TIM). RET CLO B CUST, WG/PG A1A EFF 8-25-08. CPP PENDING NON-ADVERSE TX. D/C ELIG.

**Committee**

Inmate WILSON appeared in person before the Facility One Unit Classification Committee (UCC) for a(n) Annual Review. A 72 hour notice was provided. Inmate is a participant of the MHSDS Program at the CCCMS level of care per CDC 128C dated 05-20-10. Inmate is not a participant in the DD Program.
CSRA: LOW    PC 2933: NO    PC 2933.05: NO    IHC: RO    GPL: 12.9

**Accommodations / Staff Assistant**

Staff Assistant was not assigned.

**Committee Discussion**

The inmate's classification score has been adjusted from 31 to 23 to reflect 2 qualifying period(s) of disciplinary free behavior and 2 qualifying period(s) of satisfactory work performance. Inmate WILSON is currently assigned to F1 CULINARY CLERK and wishes to remain in that assignment. UCC NOTES WILSON IS NOW A LEVEL-II INMATE REQUIRING PROPER ENDORSEMENT AND TRANSFER TO AN APPROPRIATE LEVEL-II FACILITY. WILSON DOES NOT MEET CRITERIA PER CCR 3377.2(a)(7), AND IS ELIGIBLE FOR LEVEL-II PLACEMENT. HOWEVER CLOSE B CUSTODY IS NOTED. I/M WILSON STATES HE HAS A CASE IN COURT REGARDING HIS REQUESTED SINGLE-CELL STATUS INELIGIBILITY AND APPARENTLY THERE IS A COURT ORDER IN HIS CENTRAL FILE STAYING ANY TRANSFERS DUE TO THE LITIGATION. UPON REVIEW OF HIS CENTRAL FILE, THERE IS NO SUCH DOCUMENTS PREVENTING HIM FROM TRANSFER TO A LEVEL II INSTITUTION WHICH IS COMMENSURATE WITH HIS PLACEMENT SCORE. I/M WILSON DID REQUEST CMF-III AS AN ALTERNATE, THEREFORE, UCC RECOMMENDS TRANSFER TO CMF-III AS AN OVERRIDE DUE TO I/M WILSON'S TIME TO SERVE. UCC ALSO ELECTS TO REAFFIRM DOUBLE-CELL ELIGIBILITY AS THERE IS NO DOCUMENTED INFORMATION INDICATING ANY PREDATORIAL BEHAVIOR OR VICTIMIZATION, AS WELL AS ANY RULE VIOLATION REPORTS INVOLVING IN-CELL VIOLENCE. ALTHOUGH, THERE WAS PRIOR RECOMMENDATIONS FROM MENTAL HEALTH SERVICES FOR SINGLE-CELL STATUS WHILE THE INMATE WAS PART OF THE MENTAL HEALTH ENHANCED OUTPATIENT PROGRAM (EOP), THE RECOMMENDATIONS ARE NO LONGER VALID AS INMATE HAS BEEN REMOVED FROM THE EOP PROGRAM DUE TO NO LONGER NEEDING TREATMENT. I/M WILSON IS NOT IN AGREEMENT WITH COMMITTEE'S DECISION TO REAFFIRM DOUBLE-CELL ELIGIBILITY, HOWEVER, HE WAS INFORMED OF HIS RIGHT TO APPEAL THIS COMMITTEE'S ACTION.

**Committee Action**

REFER TO CSR, RX CTF-C-II WITH AN ALTERNATE CMF-III OVERRIDE (TIM). RETAIN CLOSE B CUSTODY, WG/PG A1A EFFECTIVE 8-25-08 UPON NON-ADVERSE TRANSFER. CONTINUE PRESENT PROGRAM. DOUBLE-CELL ELIGIBLE.

**Case Factors**

CDC forms 840, 812, 812-C, 127, and MSF have been updated. Confidential file noted and reviewed. Case Factors are noted on CDC 128-G dated 05-18-10, and remain appropriate with the exception of the following: Inmate is 52 years old, TB Code 32 per CDC 128-C dated 05-06-10 as well as any actions noted in this committee. Committee notes inmate is not eligible for MSF due to VIO/LIF. This transfer is not to be considered adverse. Upon transfer, inmate's custody and credit earning status should be CLOB and A1/A at the receiving institution.

**Participation**

MHSDS staff did participate in today's hearing, and they described the inmate's mental health status and treatment needs. MHSDS staff did concur with the committee's decision. Inmate WILSON actively participated in today's hearing and stated he did understand the Committee's actions and was in agreement. RJD's behavioral expectations and the inmate's right to appeal have been explained. His next scheduled classification is 04-12, for a(n) Annual Review. There are no other case concerns at this time.

**Committee Members**

M. STEELE, FC (A), K. REID, CC-II, C. YORK, CCI, B. CROTTS, EDUC., DR. CANNON, MHSDS, A. GONZALEZ, SB 618

Chairperson: M. STEELE, FC (A)

Recorder: C. YORK, CCI

DATE: 03-22-11                    CLASSIFICATION: UCC                    INSTITUTION: RJDCF
.ev. 1/1/08)

Exhibit DAD

1  David W. Wilson, K66474
   R.J. Donovan, 1-3-132 L
2  480 Alta Road
   San Diego, CA 92179
3    In Pro Per Paralegal

4

5

6              IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF CALIFORNIA
7

8  DAVID W. WILSON,              )  No. CIV-S-07-1192-GEB-DAD
                                 )
9        Plaintiff,              )  PLAINTIFFS NOTICE OF MOTION AND
                                 )  MOTION FOR PRELIMINARY INJUNCTION
10  vs.                          )  AND JOINER of PERSONS NEEDED FOR
                                 )  JUST ADJUDICATION Fed. R.Civ.P 19
11 *MATTHEW CATE, Secretary CRCR,)
   et al.,                       )
12                               )  The Honorable Dale A. Drozd,
       Defendants.               )           Magistrate Judge.
13

14      TO MATTHEW CATE, Secretary CDCR, and PERSONS Needed For

15   Adjudication, R.J.Donovan Warden, GEORGE A. NEOTTI, CCII, REED

16   Lt., A.ALLAMBY, CCI, YORK.  PLEASE TAKE NOTICE that on April 14,

17   2011, at 9:30 a.m. or as soon as possible in the United States District Court

18   of Federal Building, located at 501 "I" Street, Sacramento, California, 95814,

19   before the Honorable Dale A. Drozd, Magistrate Judge.

20      Plaintiff David W. Wilson will move the Court for PRELIMINARY INJUNCTION at

21   Richard J. Donovan Correctional Facility, to "Not be transferred except to CMF-

22   Vacaville or CMC-East," and Plaintiff "Not be Forced Double Cell Living," with

23   other inmates unless Plaintiff receiving 1-on-1 Psychotherapy 2-3 times weekly

24   or seen by Outside mental health experts for severe anxiety, or sent NAPA/METRO

25   or PATTON for Help, CDCR 'does not offer.' For in reprisal protective rights

26   and subject-matter RJD refuses/bars grievance sexual/mental psychosis, and

27   denies procedural safegards for Notice of Classification and preferences for

28   transfer in reprisal Court Motions for imminent danger for harm to self/others.

                                    1
   * MATTHEW CATE replaces JAMES TILTON as Secretary CDCR, Fed.R.Civ.P 25(d)

Exhibit DAD (1)

1  David W. Wilson, K66474
   R.J. Donovan, 1-3-132 L
2  480 Alta Road
   San Diego, CA 92179
3    In Pro Per Paralegal

4

5

6            IN THE UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF CALIFORNIA
7

8  DAVID W. WILSON,          )   No. CIV-S-07-1192-GEB-DAD
                             )
9       Plaintiff,           )   MOTION FOR PRELIMINARY
                             )   INJUNCTION AND JOINER OF
10  vs.                      )   PERSONS NEEDED FOR JUST
                             )   ADJUDICATION
11 MATTHEW CATES, Secretary CDCR,)
   et al.,                   )
12                           )
        Defendants.          )
13

14     Plaintiff WILSON, pursuant Local Rule 65-231(d); Fed.R.Civ.P.

15 request this Court to grant  Preliminary Injunction 'not' to be transferred

16 except to CMF-Vacaville or CMC-East, and "Not be Forced Double Cell Living,"

17 with other inmates unless Plaintiff receiving 1-on-1 Psychotherapy 2-3 times

18 weekly, or seen by Outside mental health experts for severe anxiety, or sent

19 NAPA/METRO/PATTON for Help CDCR 'does not offer.'

20     Plaintiff request Federal Rules of Civil Procedure 19(a), Joiner of

21 Persons Needed for Just Adjudication.  For R.J.Donovan in retaliation of

22 protective rights and ('Subject-matter') related refuses/barrs grievance

23 sexual/mental psychosis, and denies proceduaral safegards for Notice of

24 Classification and preferences for transfer in reprisal greivances, Court

25 motions previous filed for Protection Order, and continues to place Plaintiff

26 in jeopardy for imminent danger for harm to self and others, while denying

27 mental health treatment violating Eighth Amendment for cruel punishment and

28 denied Fourteenth Amendemnt due process Classification hearing, to 'Chill'

                              2

Exhibit DAD (2)

1 | Plaintiffs protective rights of grievances of prison condition(s) and Court

2 | access, based on over-confinement and conditions that exacerbate mental

3 | unstability.

4 | Dated; March 30, 2011.                                    Respectfully submitted

5 |                                                            David W. Wilson

3

Copy 2 of 2                                    Exhibit BAP

STATE OF CALIFORNIA                                                     DEPARTMENT OF CORRECTIONS
GA-22 (9/92)                **INMATE REQUEST FOR INTERVIEW**

| DATE | TO | FROM (LAST NAME) | CDC NUMBER |
|------|-----|------------------|------------|
| 7-8-2011 | Ad-Seg Property Officer | Wilson | K-66474 |

| HOUSING | BED NUMBER | WORK ASSIGNMENT | JOB NUMBER |
|---------|-----------|-----------------|-----------|
| 2-6- | 128L | ASU/EOP | FROM          TO |

| OTHER ASSIGNMENT (SCHOOL, THERAPY, ETC.) | ASSIGNMENT HOURS |
|------------------------------------------|------------------|
|                                          | FROM          TO |

### Clearly state your reason for requesting this interview.
You will be called in for interview in the near future if the matter cannot be handled by correspondence.

Sir! I request brought to R&R put in Cell with all Legal Court case(s) to have "Access" 20 BIG Minilla Envelopes for I have 4 Court DEADLINES & pending Litigation in 12 Others & later to reduce destroy extra copies to six cubic feet, DOM 54030.10.2, Request Chula Vista Superior Court Case for In Law Library When Called & placed ASU Anonymous Note & Working SETTLEMENT, Request 7 Envelopes of WILSON V. TILTON, No. CIV-S-07-01192-DAD; All Envelopes WILSON v. NESBETH, & RTD Superior Court Denials & CA Court of Appeals & CA Supreme Court 2009-2011, & 9th Cir. Cases & U.S. Supreme Court case, & Legal Books, Litigation Manual, DOM, Penal Code, Prisoners Handbook for Envelopes, paper.

OVER→

Do NOT write below this line. If more space is required, write on back.

| INTERVIEWED BY | DATE |
|----------------|------|

DISPOSITION

Federal Court Pamplets, Civil Procedure & Evidence & Appells & Procedure, Criminal, Dicitionarys, Bible, Blacks Law Dicitionary, Legal News.

Also request Thermel Top & Bottom, Thick Wash Cloth, & TENS Electric Trans "Medical Unit" on Medical Chrono dated 4-28-2011, for Back Lower.

Request InK Pen(s). And Vitemins Multi & Chelated Minerals, OMEGA-3's, Primrose Oil, Flax Oil, B-12, E-400 & 2 Protien Pills Bottles For Bones Degenerative & taken for Health & previous RJD Chrono; & Title 15 #3331 (c) (1) items not available by institution for Health, Hygiene.

Request Bowl for Store bought Soups/Food & Cup for Coffee/Drinks & Zylon Spoon.

<div style="text-align:center">

THANK YOU Respectfully

David W. Wilson

</div>

*(handwritten at top: Exhibit DAP(1))*

# AD-SEG LEGAL & PROPERTY
# REQUEST FORM

**INSTRUCTIONS: (READ BEFORE CONTINUEING)**

1. *YOU CAN ONLY REQUEST YOUR PROPERTY ONCE (1 TIME) WHILE IN AD-SEG. THERE WILL BE NO SECOND REQUEST!!!!!! NO EXCEPTIONS!!!!!!*

2. ONLY REQUEST PROPERTY THAT IS ON THE AUTHORIZED LIST. ANYTHING ELSE WILL BE DENIED.

3. IN ORDER FOR US TO ISSUE YOU YOUR PROPERTY IN A TIMELY MANNER, **_THIS FORM MUST BE FILLED OUT PROPERLY AND COMPLETELY_**. AN INCOMPLETE OR IMPROPERLY FILLED OUT FORM MAY CAUSE A DELAY IN RECEIVING YOUR PROPERTY.

DATE OF REQUEST: _7-28-2011_

NAME: _WILSON DAVID_  CDC #: _K-66474_  H/U #: _6_  CELL #: _144 L_

H/U & CELL YOU CAME FROM _1-1-140 L_  LOCK UP DATE: _7-7-2011_

SIGNATURE: _David W. Wilson_

AUTHORIZED PROPERTIES: Fill in the blanks with check or X mark only.

- _X_ Shower shoes/tongs (1)
- _X_ Thermal (1 set)
- _X_ Bible/Koran…etc (1)
- _X_ Dictionary (1)
- _X_ Stationary (NO CARDBOARD)
- ___ Address Book (1) (INDICATE LOCATION)
- ___ Soft Shoes (Must have chrono attached)
- _20_ Legal Documents (INDICATE LOCATION)

*(handwritten: B16 / 3 Protein Pills / 4 Multi-Vitamin / 4 OMEGA-3s / Fish Seed Oil / 2 B-12 / 1 D-400 / 3 Prempro Pill)*

- ___ Photographs (15) *(handwritten: for degenerative bone & Vitamin chrono requested P chrono & CCR #3331(e)(2))*
- _10_ Food Items (per DOM 54030)
- _X_ Books (Soft covers only (5)) *(handwritten: Law Phomplet/Books Federal Civil Procedure Act)*
- ___ Prescription Glasses (No sunglasses)
- ___ Stamps & Stamped Envelope
- _20_ Blank Envelope
- _X_ Ink Filler (1)
- _X_ Soap  ___ Shampoo
- _X_ Toothpaste  ___ Deodorant

*(handwritten margin notes: Minilla / ivelopes / 20 / REQUEST brought to R&R, put in Cell 4 hours / I'm a Paraleeal/Jailhouse lawyer & I don't want to file Restrain Order for access to respond to Attorney General & Courts. / 4 court deadlines & 12 imminent litigation/Discovery/Trials CCR #3161(a)(b) / & wish to REDUCE Legal to meet Title II #3161(b); Dom 54030, 18,2)*

**_DO NOT SIGN UNTIL YOU RECEIVE YOUR PROPERTY!!!!!!!!!!!_**

SIGNATURE _____  DATE: _____

H/U 6 AD-SEG PROPERTY OFFICER      C/O SKINNER
H/U 7 AD-SEG PROPERTY OFFICER
H/U 8 AD-SEG PROPERTY OFFICER (LOWER)   C/O SKINNER
H/U 8 AD-SEG PROPERTY OFFICER (UPPER)

*REVISED: January 8, 2009*

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS AND REHABILITATION
MATE/PAROLEE REQUEST FOR INTERVIEW, ITEM OR SERVICE
CR 22 (10/09)

*Exhibit DAP(3)*

## SECTION A: INMATE/PAROLEE REQUEST

| NAME (Print): (LAST NAME) WILSON (FIRST NAME) DAVID | CDC NUMBER: K-66474 | SIGNATURE: David W. Wilson |
|---|---|---|

| HOUSING/BED NUMBER: 2-6-144 L | ASSIGNMENT: ASU/EOP | HOURS FROM _____ TO _____ | TOPIC (I.E. MAIL, CONDITION OF CONFINEMENT/PAROLE, ETC.): R&R Sgt. Alvarez access to Legal Court documents, material |

CLEARLY STATE THE SERVICE OR ITEM REQUESTED OR REASON FOR INTERVIEW:

Sgt. Alvarez this day I request access to Legal Court case's, exhibits, documents, law books, Phamplets, DOM, Penal Code, envelopes, Medical Appliance, Bible, Ink Pens, Manuals, Vitamins & supplements, toothpaste, lotion, hair grease, Wash cloth, Thermals, deodorant, Shower Thangs, Soop, And brought to R&R put in cell with 11 Boxes & given Court case's in Litigation imminent, & DEADLINES. As Request in 14 page MOTION (RESTRAINING ORDER(S), 4 pages attached WILSON v. CATES, & 1 page/Proof of Service WILSON v. NESBETH, As described in 16 pages attached CHULA VISTA SUPERIOR & Exhibit's TP, DAP(1), DAP(2), CAE, 2X, 22(1), N(1), RT, N, N(2), & U.S.S.D. suit filed 8-16-2011, This shows this Court & others why Relief must be granted & AMENDMENTS,

METHOD OF DELIVERY (CHECK APPROPRIATE BOX) **NO RECEIPT WILL BE PROVIDED IF REQUEST IS MAILED **

[X] SENT THROUGH MAIL: ADDRESSED TO: Receiving & Release Sgt. E. Alvarez          DATE MAILED: 9/6/2011

[ ] DELIVERED TO STAFF (STAFF TO COMPLETE BOX BELOW AND GIVE GOLDENROD COPY TO INMATE/PAROLEE):

| RECEIVED BY: PRINT STAFF NAME: | DATE: | SIGNATURE: | FORWARDED TO ANOTHER STAFF? (CIRCLE ONE)   YES   NO |
|---|---|---|---|
| IF FORWARDED – TO WHOM: | | DATE DELIVERED/MAILED: | METHOD OF DELIVERY: (CIRCLE ONE)  IN PERSON   BY US MAIL |

## SECTION B: STAFF RESPONSE

| RESPONDING STAFF NAME: | DATE: | SIGNATURE: | DATE RETURNED: |
|---|---|---|---|

## SECTION C: REQUEST FOR SUPERVISOR REVIEW

PROVIDE REASON WHY YOU DISAGREE WITH STAFF RESPONSE AND FORWARD TO RESPONDENT'S SUPERVISOR IN PERSON OR BY US MAIL. KEEP FINAL GOLDENROD COPY.

| SIGNATURE: | DATE SUBMITTED: |
|---|---|

## SECTION D: SUPERVISOR'S REVIEW

| RECEIVED BY SUPERVISOR (NAME): | DATE: | SIGNATURE: | DATE RETURNED: |
|---|---|---|---|

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND-REHABILITATION
INMATE/PAROLEE REQUEST FOR INTERVIEW, ITEM OR SERVICE
CDCR 22 (10/09)
Case 2.50-cv-00832-KJM-SCR Document 4181 Filed 05/09/12 Page 93 of 100
Exhibit DAP 4

## SECTION A: INMATE/PAROLEE REQUEST

| NAME (Print) (LAST NAME) | (FIRST NAME) | CDC NUMBER | SIGNATURE |
|---|---|---|---|
| WILSON | DAVID | K-66474 | David N. Wilson |

| HOUSING/BED NUMBER: 2-6-144 L | ASSIGNMENT: ASU/EOP | HOURS FROM _____ TO _____ | TOPIC (I.E. MAIL, CONDITION OF CONFINEMENT/PAROLE, ETC.) R&R Release Legal Material/Court DEADLINE Cases/Appliances MED, & Proves DEFAULT/CAUSE |

CLEARLY STATE THE SERVICE OR ITEM REQUESTED OR REASON FOR INTERVIEW:

Captain, Beauchemin, I request RELEASE Court case's PENDING & Pre-Trial DEADLINE Documents & Pending Court cases of Discovery & Law Books, Exhibits, Resource Material, Medical TENs unit & Vitamins/Supplements put in separate plastic bags as toothpaste, lotion, soap, hair grease, deodorant, wash cloth, thermals, sweat pants, & Bible, Dictionary, 2 pens, DOM, Penal Code, as described in attached NOTICE OF DEFAULT & VIOLATION OF SETTLEMENT MOTION FOR RETURN OF PROPERTY, in WILSON v. HERNANDEZ, 05-CV-963-LAB, 12 pages & Proof Service 10-4-2011, For RJD "now" in Violation & this CDCR-22 shows this Court & Chula Vista Superior to ORDER TRO/SHOW CAUSE & SANCTIONS, for R&R Sgt. Alvarez will not bring to R&R put in Cell to get up to 6 cubic feet Legal & above will you personally escort Order done, THANK YOU Exhibit's all MINUS-V, Y(1), WCN(X)-(X)5, 5D(1)-8)

METHOD OF DELIVERY (CHECK APPROPRIATE BOX) **NO RECEIPT WILL BE PROVIDED IF REQUEST IS MAILED.** ☐ 10/12/2011

☒ SENT THROUGH MAIL ADDRESSED TO: CENTRAL SERVICES, Captain, Beauchemin  DATE MAILED: 10/12/2011

☐ DELIVERED TO STAFF (STAFF TO COMPLETE BOX BELOW AND GIVE GOLDENROD TO INMATE/PAROLEE):

| RECEIVED BY: PRINT STAFF NAME: E. ALVAREZ | DATE: 10/20/2011 | SIGNATURE: E. Alvarez | FORWARDED TO ANOTHER STAFF? (CIRCLE ONE) YES NO |
|---|---|---|---|

| IF FORWARDED – TO WHOM: T. TAYLOR | DATE DELIVERED/MAILED: 10/26/2011 | METHOD OF DELIVERY: (CIRCLE ONE) IN PERSON BY US MAIL |
|---|---|---|

## SECTION B: STAFF RESPONSE

| RESPONDING STAFF NAME: T. Taylor | DATE: 10-27-11 | SIGNATURE: T. Taylor | DATE RETURNED: 10-27-11 |
|---|---|---|---|

You will be Escorted to R&R to go through your legal work As well As to Come into Compliance With 6 cubic feet.

## SECTION C: REQUEST FOR SUPERVISOR REVIEW   received 11-10-2011, c/o Hernandez

PROVIDE REASON WHY YOU DISAGREE WITH STAFF RESPONSE AND FORWARD TO RESPONDENT'S SUPERVISOR IN PERSON OR BY US MAIL. KEEP FINAL GOLDENROD COPY. "Dissatisfied"

For c/o Taylor I requested not to Handle my Property in ORDER TO SHOW CAUSE, CHULA VISTA SUPERIOR COURT, No. 37-2011-00097352-CU-WM-SC, Court FILED STAMPED 10-20-2011, Law Library Book access," Also in U.S.S.D. Court conference call 11-9-2011, & 11-10-2011, Unresolved issue property with hold,   This also show CHULA VISTA SUPERIOR COURT to Habeas corpus Show Cause & grant Relief concerning R&R, on for GRAND JURY & other Agencies to intervene, U.S. DEPARTMENT OF JUSTICE, also if above was done 602 of 11-10-2011, not needed, Request Response. to Captain, Beauchemin

| SIGNATURE: David W. Wilson | DATE SUBMITTED: 11-20-2011 |
|---|---|

## SECTION D: SUPERVISOR'S REVIEW

| RECEIVED BY SUPERVISOR (NAME): | DATE: | SIGNATURE: | DATE RETURNED: |
|---|---|---|---|

Exhibit GGH

received 12-5-2011

1
2
3
4
5
6
7
8          IN THE UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10    DAVID WAYNE WILSON,

11          Plaintiff,              No. CIV S-06-1139 KJM GGH P
              vs.
12

13    W.C. NESBETH, et al.,

14
            Defendants,            ORDER
15    _____/

16          Plaintiff, a state prisoner proceeding pro se, seeks relief pursuant to 42 U.S.C. §

17    1983. On November 21, 2011, plaintiff filed a motion for a protective order to obtain his legal

18    materials so he can file a pretrial statement. Doc. 61. While plaintiff's motion is not specific and

19    generally just states he needs access to his legal materials and medical appliances, it is not clear

20    what materials plaintiff has been provided by prison officials.

21          One of plaintiff's exhibits includes an inmate appeal where plaintiff requested 6

22    hours in a room with his 11 boxes of legal materials to gather the appropriate files as they are

23    commingled. While this request seems excessive, prison officials responded on October 27.

24    2011. that plaintiff would be allowed to go through his materials, however it is not clear if this

25    occurred. Doc 61 at 11. Within 14 days defendant shall file a response indicating if plaintiff was

26    given an opportunity to go through his legal materials and the specifics of when this occurred and

                                          1

Exhibit GGH (1)

1    how much time was provided.

2          Accordingly, IT IS HEREBY ORDERED that defendant shall file a reply within

3    14 days if plaintiff was given an opportunity to go through his legal materials and the specifics of

4    when this occurred and how much time was provided.

5    DATED:  November 30, 2011

6                          /s/ Gregory G. Hollows
                         UNITED STATES MAGISTRATE JUDGE

7    GGH: AB
     wils1139.ord3

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

STATE OF CALIFORNIA
INMATE/PAROLEE REQUEST FOR INTERVIEW, ITEM OR SERVICE
CDCR 22 (10/09)

*Exhibit ASLL (1)*

## SECTION A: INMATE/PAROLEE REQUEST

| NAME (Print) (LAST NAME) | (FIRST NAME) | CDC NUMBER | SIGNATURE |
|---|---|---|---|
| WILSON | DAVID | K-66974 | David W. Wilson |

| HOUSING/BED NUMBER | ASSIGNMENT | HOURS FROM___ TO___ | TOPIC (IE. MAIL, CONDITION OF CONFINEMENT/PAROLE, ETC.) |
|---|---|---|---|
| 2-6-144L | Ad-Seg EOP | | Request Law Library access, CCR #3160(4) & Recreational List & Books given #3343(K)(F) |

CLEARLY STATE THE SERVICE OR ITEM REQUESTED OR REASON FOR INTERVIEW:

Principle Balikian, Ma'm I'm called from F-1 Library 7-7-2011, & placed in Ad-Seg for a Anonymous Note. At Library I was typing SETTLEMENT per Chula Vista Superior Court WRIT OF MANDATE, I previous sent you. I was responding to Court DEADLINE. Now in ASU I have submitted GA-22 to Library C/o for Ms. Simon & Law Library Access & filed out ASU Form & gave C/o for Ms. Simon. & if not "reprieved" Will you get me access per Title 15 # 3160(b). **Also I request a List of the □ Recreational Books Sci-Fi, Western, Fantsy, Mystery, etc. No Trust Form too check out three (3) Books a week for C/o's give out only who they choose & no choice. Requested per Title 15 # 3343(F), (K), Reading Material/Premium Services** THANK YOU

METHOD OF DELIVERY (CHECK APPROPRIATE BOX) **NO RECEIPT WILL BE PROVIDED IF REQUEST IS MAILED
☒ SENT THROUGH MAIL - ADDRESSED TO: R.J.D., Principle Balikian    DATE MAILED: 7/14/2011
☐ DELIVERED TO STAFF (STAFF TO COMPLETE BOX BELOW AND GIVE GOLDENROD COPY TO INMATE/PAROLEE)

| RECEIVED BY: PRINT STAFF NAME | DATE | SIGNATURE | FORWARDED TO ANOTHER STAFF? |
|---|---|---|---|
| Kathy Balakian | 4/20/11 | (signature) | (CIRCLE ONE) YES / NO |

| IF FORWARDED - TO WHOM: | DATE DELIVERED/MAILED: | METHOD OF DELIVERY: |
|---|---|---|
| E. Simon | 4/20/11 | (CIRCLE ONE) IN PERSON / BY US MAIL |

## SECTION B: STAFF RESPONSE

| RESPONDING STAFF NAME: | DATE: | SIGNATURE: | DATE RETURNED: |
|---|---|---|---|
| E. SIMON | 7-21-11 | (signature) | 7-22-11 |

OUR RECORDS INDICATE THAT CURRENTLY YOU DO NOT HAVE PLU STATUS. WE RECIEVED YOUR TWO REQUESTS FOR LIBRARY SERVICES ON 7-11-2011 & 7-18-2011 THE CURRENT WAITING PERIOD IS APPROX. 2 WEEKS. AS SOON AS IT IS YOUR TURN, YOU WILL BE SCHEDULED TO ATTEND THE LIBRARY. AS PER MS. BALAKIAN'S ORDER, A LIST OF RECREATIONAL BOOKS IS ENCLOSED.

## SECTION C: REQUEST FOR SUPERVISOR REVIEW

PROVIDE REASON WHY YOU DISAGREE WITH STAFF RESPONSE AND FORWARD TO RESPONDENTS SUPERVISOR IN PERSON OR BY US MAIL. KEEP FINAL GOLDENROD COPY. "Dissatisfied"

Received 7-25-2011, & requested Law Library Access 7-8-2011, 7-18-2011, 7-25-2011, & Title 15 # 3164(c) Inmate who are housed in restricted Unit..., may possess & have access any legal resource material available to G.P.; Also CCR #3123(b), PLU 4 hours & GLU 2 hours per week, (c) When unable physical access law library an I/m may request delivery of material by library staff, begin. RJD has removed its Law Library from Bldg 6 & others above. Also Form for **RECREATIONAL Books withheld** by C/o citing CCR # 164 (4) Books a week & 3rd Watch which is discrimination, CCR # 3120

| SIGNATURE: | DATE SUBMITTED: |
|---|---|
| David W. Wilson | 7-25-2011 |

CCR # 3004 min.

## SECTION D: SUPERVISOR'S REVIEW

Received by K. Seibel 7/27/11 Forwarding...

| RECEIVED BY SUPERVISOR (NAME) | DATE | SIGNATURE | DATE RETURNED: |
|---|---|---|---|
| K. Balakian | 8/8/11 | (signature) to K. Balakian, 8/8/11 |

Mr. Wilson, Ms. Simon indicated that your Principal V.G. mail will be provided with physical access to the library on July 27, 2011 The previous you have not stated What legal resources you are requesting. You were provided with titles of recreational books from which to make a selection.

received 8-10-2011

DISTRIBUTION: ORIGINAL - RETURN TO INMATE/PAROLEE; CANARY - INMATE/PAROLEE'S 2ND COPY; PINK - STAFF MEMBERS COPY; GOLDENROD - INMATE/PAROLEE'S 1ST COPY.

Exhibit XLL

STATE OF CALIFORNIA
INMATE/PAROLEE APPEAL
CDCR 602 (REV. 08/09)

Copy 3 of 3

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Side 1

| IAB USE ONLY | Institution/Parole Region: | Log #: | Category: |
|---|---|---|---|
| | RJD | 11-514 | Legal |
| | FOR STAFF USE ONLY | | |

You may appeal any California Department of Corrections and Rehabilitation (CDCR) decision, action, condition, policy or regulation that has a material adverse effect upon your welfare and for which there is no other prescribed method of departmental review/remedy available. See California Code of Regulations, Title 15, Section (CCR) 3084.1. You must send this appeal and any supporting documents to the Appeals Coordinator (AC) within 30 calendar days of the event that lead to the filing of this appeal. If additional space is needed, only one CDCR Form 602-A will be accepted. Refer to CCR 3084 for further guidance with the appeal process. No reprisals will be taken for using the appeal process.

Appeal is subject to rejection if one row of text per line is exceeded.          WRITE, PRINT, or TYPE CLEARLY in black or blue ink.

| Name (Last, First): WILSON DAVID | CDC Number: K-66979 | Unit/Cell Number: 2-6-144L | Assignment: ASU/EOP |
|---|---|---|---|

State briefly the subject of your appeal (Example: damaged TV, job removal, etc.): Administrative
Segregation LAW LIBRARY equal access hours, Books, resource materials, Court access

SEP 03 2011

A. Explain your issue (If you need more space, use Section A of the CDCR 602-A): CONTINUED 602-A
Request ASU Law Library be "Placed" back in ASU 6 Building to have LAW LIBRARY
access for following reasons; 1) I was denied access for 31 days & given 2 hours,
SEE Exhibit ASLL, GA-22, 7/8/2011, gave back 7/12/2011, 5/ Herrington, Which I then

10 ft COPAL
HRS/ACCESS

B. Action requested (If you need more space, use Section B of the CDCR 602-A): CONTINUED 602-A
Ad-SEG Law Library "Placed" back in Building 6, ASU Env, 2, to STOP Title 15 3126(a)(6)
Inmate access to courts shall not be obstructed. If not let env. on all be held
accountable to Court 6) for degradation of Title 15 3123(1) & 3124(a),

Supporting Documents: Refer to CCR 3084.3.
☑ Yes, I have attached supporting documents.
List supporting documents attached (e.g., CDC 1083, Inmate Property Inventory, CDC 128-G, Classification Chrono):
GA-22, CDCR-22        R.J.D. A.S.U. LEGAL REQUEST
Ad-SEG 3/m REQUEST(S) LAW LIBRARY

☐ No, I have not attached any supporting documents. Reason:

Inmate/Parolee Signature: David W. Wilson        Date Submitted: 8-18-2011
☐ By placing my initials in this box, I waive my right to receive an interview.

C. First Level - Staff Use Only          Staff – Check One: Is CDCR 602-A Attached?  ☐ Yes  ☐ No
This appeal has been:
☐ Bypassed at the First Level of Review. Go to Section E.
☐ Rejected (See attached letter for instruction) Date: _____ Date: _____ Date: _____ Date: _____
☐ Cancelled (See attached letter) Date: _____
☐ Accepted at the First Level of Review

Assigned to: _____ Title: _____ Date Assigned: _____ Date Due: _____

First Level Responder: Complete a First Level response. Include Interviewer's name, title, interview date, location, and complete the section below.

Date of Interview: _____ Interview Location: _____

Your appeal issue is:  ☐ Granted  ☐ Granted in Part  ☐ Denied  ☐ Other: _____
See attached letter. If dissatisfied with First Level response, complete Section D.

Interviewer: _____ Title: _____ Signature: _____ Date completed: _____
              (Print Name)
Reviewer: _____ Title: _____ Signature: _____
           (Print Name)
Date received by AC: _____

AC Use Only
Date mailed/delivered to appellant ____ / ____ / ____

Exhibit XLL

STATE OF CALIFORNIA
INMATE/PAROLEE APPEAL
CDCR 602 (REV. 08/09)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

11-1574

Side 2

D. If you are dissatisfied with the First Level response, explain the reason below, attach supporting documents and submit to the Appeals Coordinator for processing within 30 calendar days of receipt of response. If you need more space, use Section D of the CDCR 602-A.

BYPASS

Inmate/Parolee Signature: _____    Date Submitted : _____

E. Second Level - Staff Use Only

Staff – Check One: Is CDCR 602-A Attached?   ☑ Yes   ☐ No

This appeal has been:
☐ By-passed at Second Level of Review. Go to Section G.
☐ Rejected (See attached letter for instruction) Date: _____ Date: _____ Date: _____ Date: _____
☐ Cancelled (See attached letter)
☐ Accepted at the Second Level of Review
Assigned to: A. HERNANDEZ / LAW LIBRARY   Title: AW   Date Assigned: SEP 08 2011   Date Due: OCT 17 2011

Second Level Responder: Complete a Second Level response. If an interview at the Second Level is necessary, include interviewer's name and title, interview date and location, and complete the section below.

Date of Interview: 9/29/11   Interview Location: HU 6

Your appeal issue is:  ☐ Granted  ☑ Granted in Part  ☐ Denied  ☐ Other: _____

See attached letter. If dissatisfied with Second Level response, complete Section F below.

Interviewer: K. Balakian   Title: SCPP   Signature: _____   Date completed 10/5/11
(Print Name)

Reviewer: W. J. Sulisnay   Title: CAN (A)   Signature: _____
(Print Name)

Date received by AC: OCT 12 2011

AC Use Only
Date mailed/delivered to appellant _____

OCT 13 2011

F. If you are dissatisfied with the Second Level response, explain reason below; attach supporting documents and submit by mail for Third Level Review. It must be received within 30 calendar days of receipt of prior response. Mail to: Chief, Inmate Appeals Branch, Department of Corrections and Rehabilitation, P.O. Box 942883, Sacramento, CA 94283-0001. If you need more space, use Section F of the CDCR 602-A.

"Dissatisfied" received 10-25-2011, sent to Wrong Cell F2-9-125W. I live at F2-6-144L, & SLR, Exhibit's XLL(4),
4)a, b, c, & although PARTIALLY GRANTED by CDW(A), above & cites O.P.#164, Which at O.P#164 IV, RESPONSIBILITY A. The
Warden; B. The A.W., Fac. 2,4, implementation of O.P." Therefore A.W., Hernandez of Fac. 1, 3, should NOT been assigned, & at
C, The Captin, F. Steele RESPONSIBLE function of O.P, & D, Lieutenants, J. Williams, ect ensuring compliance Maintained & at
E. The Chief Medical Executive, Mary Ann Glynn for Mental Health, which b Bldg, is EOP mental Unit, & F. All staff ASU who provide
CONTINUED 602-A
Inmate/Parolee Signature: David W. Wilson   Date Submitted: 11-8-2011

G. Third Level - Staff Use Only

This appeal has been:
☐ Rejected (See attached letter for instruction) Date: _____ Date: _____ Date: _____ Date: _____ Date: _____
☐ Cancelled (See attached letter)  Date: _____
☐ Accepted at the Third Level of Review. Your appeal issue is ☐ Granted  ☐ Granted in Part  ☐ Denied  ☐ Other: _____
See attached Third Level response.

Third Level Use Only
Date mailed/delivered to appellant ____ / ____ / ____

Request to Withdraw Appeal: I request that this appeal be withdrawn from further review because; State reason. (If withdrawal is conditional, list conditions.)

_____
_____
_____

_____ Inmate/Parolee Signature: _____    Date: _____
Print Staff Name: _____ Title: _____ Signature: _____ Date: _____

Copy 3 of 3

Exhibit XLL(1)

STATE OF CALIFORNIA
INMATE/PAROLEE APPEAL FORM ATTACHMENT
CDCR 602-A (08/09)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Side 1

| IAB USE ONLY | Institution/Parole Region: | Log #: | Category: |
|---|---|---|---|
| | RJD | 11-574 | Legal |

FOR STAFF USE ONLY

Attach this form to the CDCR 602, only if more space is needed. Only one CDCR 602-A may be used.

Appeal is subject to rejection if one row of text per line is exceeded.                    WRITE, PRINT, or TYPE CLEARLY in black or blue ink.

| Name (Last, First): WILSON DAVID | CDC Number: K-66979 | Unit/Cell Number: 2-6-144L | Assignment: ASU/EOP |
|---|---|---|---|

A. Continuation of CDCR 602, Section A only (Explain your issue): Wrote Principle CDCR-22, 7/15/2011,
Exhibit ASLL(1), & wrote AD-SEG F/m REQUEST, 7/18/2011 & 7/25/2011, Exhibit's ASLL(2),(3), &
Librarian Simon brought material 7/27/2011, Exhibit ASLL(4), & 8/8/2011, C/o brought material,
Exhibit ASLL(5), & 8/9/2011, taken Law Library & given 2 hours there, 31 days from Exhibit
ASLL, violating Title 15 #3123(b), PLU 4 hours & GLU 2 hours weekly; Toussaint v. McCarthy,
801 F.2d 1080 (1986); Gantha v. Kangas; Johnson v. Snuerly Which Librarian at EX. ASLL(1), Section
B, admits "Waiting period is 2 weeks" false & above violation, for if F/o's Who Escort are redirected
NO Law Library if Law Library back in 6 Bldg, Escort C/o's Not needed. 2) Title 15 #3124(a)
"Each institution shall maintain at least one law library for the use of inmates, in print and/or
by means of the Electronic Law Library Delivery System," Fac. 3, is given New Law Books & ASU
F/m's denied access Computers & Violates Title 15 #3164(c), AD-SEG F/m's may possess and have
access any "legal resource material available to G.P.; Bounds v. Smith, 430 U.S. 817, 919, 97
S. Ct. 1491, 52 L.Ed. 2d 72 (1977) browsing & inspiration may /eded from one forgotten case
to another. 3) Law Library "PAGING" denied & F/o's intentionally destroy ASU condition Book's,
for Exhibit ASLL(6), ASU Legal Request, 8/11/2011 Librarian denys "PAGING" given before, SEE
Title 15 #3123(c). When unable to physically access the law library, an inmate may request
access to legal material through delivery these materials to inmate by library staff (c)
library staff must deliver material to their cells 4) When Law Library placed back in 6
Bldg, the F/o's [list] could not depu list & Titles or denied me for Recreational Books Title 15, 3043(c).

Inmate/Parolee Signature: _David W. Wilson_                    Date Submitted:
8-18-2011

B. Continuation of CDCR 602, Section B only (Action requested): 3124(c), #3123(b), #3343(b),(c), #Doc Y(c); Rights and
Respects of others "EOP mentally impaired" #3120(b)(c)(9); Penal Code 38 26th PC(4)(2)(b)(f) & Art 5,
1st Amendf & 14th Equal Protection, ADA 42 U.S.C. #12131 C.F.R. 28/35,107,635,131; Rehab Act 1973;
Calif. Govt Code 11135; Will seek damages of Librarian, Librarian their many Future
Deprivation or Individual and Official Capacities.

Inmate/Parolee Signature: _David W. Wilson_                    Date Submitted: 8-18-2011

8-18-2011

Exhibit XLL (1)

STATE OF CALIFORNIA
INMATE/PAROLEE APPEAL FORM ATTACHMENT
CDCR 602-A (08/09)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

11~574

Side 2

D.  Continuation of CDCR 602, Section D only (Dissatisfied with First Level response): Services shall become familiar with this procedure"

*(heavily scratched-out/illegible text)*

Inmate/Parolee Signature: _____    Date Submitted: _____

F.  Continuation of CDCR 602, Section F only (Dissatisfied with Second Level response): Services shall become familiar with this procedure"
All ASU staff violate above & O.P. #164 XLIII: A., B., D., & E. cannot document an CDC 114-A, Leisure reading Book exchange, Also
in 4 months 5/6 Carrion Exchanged Books (3) three times. Therefore every Sunday not done. I request Law Library placed back in 6 Bldg. for
the following: 1) In SLR, page 3, Exhibit XLL(4)6, states; I had physical access Law Library seven occasions 7-7-11, to 9-21-11, which
there are 11 weeks in this time & that means 4 weeks 'NO' access & I was PLU with DEADLINES why given this much access. SEE Librarians
response CDCR-22, B, section, "Waiting list APPROX 2 weeks." Violating Gluth v. Kangas, 951 F. 2d 1504, 1508, 1511, (9th cir. 1991) 7. Prison * Key
4U3) It is states burden to provide Inmates with meaningful access to law library and demonstrate that its chosen method was
adequate; Johnson-El v. Schoemehl, 878 F. 2d 1043 1053 (9th cir. 1989) 1 hour twice a week in law library was "obviously inadequate to
research" most legal claims; Tillery v. Owens, 719 F. Supp. 1256, 1284 (W.D. Pa. 1989) 4 hours a month inadequate segregated inmates & 4 hours
week required, 907 F. 2d 418 (3nd Cir. 1990); Title 15 * 3124(d).    2) Librarian Tech, Mr. Bushing being layed off for budget cuts, & Librarian, Ms.
Sterling been off over a year, & Librarian, Ms. Peterson retired & 'NO' one took their places, & Compounded With Central Law Library Closed"
2010 where all five Facilities had Access & Now four small satelite Libraries Not enough Staff & Appellant with 2011, Director's Review to
put Fac. 1 & Other Fac's 2, 3, 4, 5, back in Central Library & as I filed Superior Court WRIT OF MANDATE for & is part of reprisals ASU
to deny Court access imminent & Legal cases, books, material by RXR RJD 4 months.    3) By moving ASU Library back to 6 Bldg.,
the 230 Officers layed off RJD with in month would guarantee Law Library" Access as denied by Redirection/absences at SLR, page
3, 6th paragraph, Exhibit XLL(4)6. The SLR did not address CCR * 3124(a), 1 Law Library in Print or Electronic means/Computer as G.P.,
which is dissemination, CCR * 3004(c), & loans herein & 6 Bldg. ASU 6's to pick up & pass out Legal documents copied/lost would not happen, Request B, section
& No Exhibit XLL(5), Affidavits XLL(6).

Inmate/Parolee Signature: David W. Wilson    Date Submitted: 11 - 8 - 2011

B