1  KAMALA D. HARRIS
   Attorney General of California
2  JONATHAN L. WOLFF
   Senior Assistant Attorney General
3  JAY C. RUSSELL
   Supervising Deputy Attorney General
4  DEBBIE VOROUS - SBN 166884
   DANIELLE F. O'BANNON - SBN 207095
5  KYLE A. LEWIS - SBN 201041
   PATRICK R. McKINNEY – SBN 215228
6  Deputy Attorneys General
   455 Golden Gate Avenue, Suite 11000
7  San Francisco, CA  94102-7004
   Telephone:  (415) 703-5500
8  Facsimile:  (415) 703-3035
   Patrick.McKinney@doj.ca.gov
9
   Attorneys for Defendants
10

HANSON BRIDGETT LLP
JERROLD C. SCHAEFER – SBN 39374
PAUL B. MELLO – SBN 179755
WALTER R. SCHNEIDER – SBN 173113
SAMANTHA D. WOLFF-  SBN 240280
RENJU P. JACOB - SBN 242388
425 Market Street, 26th Floor
San Francisco, California 94105
Telephone:   (415) 777--3200
Facsimile:    (415) 541-9366
pmello@hansonbridgett.com

11              UNITED STATES DISTRICT COURT

12            EASTERN DISTRICT OF CALIFORNIA

13        AND THE NORTHERN DISTRICT OF CALIFORNIA

14   UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

15      PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| 16  RALPH COLEMAN, et. al., | CASE NO. 2:90-cv-00520 LKK JFM P |
| 17          Plaintiffs, | |
| 18      v. | **THREE-JUDGE COURT** |
| 19  EDMUND G. BROWN, JR., et al., | |
| 20          Defendants. | |
| 21 | |
| 22  MARCIANO PLATA, et al., | CASE NO. C01-1351 TEH |
| 23          Plaintiffs, | **THREE-JUDGE COURT** |
| 24      v. | **DEFENDANTS' OPPOSITION TO PLAINTIFFS' RENEWED MOTION FOR AN ORDER REQUIRING DEFENDANTS TO DEMONSTRATE HOW THEY WILL ACHIEVE THE REQUIRED POPULATION REDUCTION BY JUNE 2013** |
| 25  EDMUND G. BROWN, JR., et al., | |
| 26          Defendants. | |
| 27 | |
| 28 | |

## I.    INTRODUCTION

Defendants have fully complied with this Court's orders to reduce California's prison population, and contrary to Plaintiffs' assertions, have every intention to continue to do so.  This Court set the ultimate population-reduction target at 137.5% of prison design capacity based on conditions existing in 2007, when the prison population was close to its all-time high.  And the health care system bore little resemblance to the vastly improved system today.  Since 2007, the population has dropped by about 40,000 inmates, most of which has come in the last seven months under new realignment legislation.  Since realignment went into effect in October 2011, the prison population has already dropped by more than 21,000 inmates bringing the population density down to about 154% of design capacity.  The shrinking prison population has substantially aided Defendants' ability to provide quality healthcare, but it has not occurred in isolation.  In addition to reducing crowding, tremendous improvements have been made to CDCR's entire health care system.  These improvements (which were practically unimaginable in 2007) coupled with the shrinking prison population, will allow Defendants to provide a constitutional level of healthcare at a higher prison-population density than originally contemplated.  As stated in CDCR's Post-Realignment Plan issued last month, Defendants will seek a modification from the Court to increase the final benchmark to 145% of design capacity by demonstrating that they can provide a constitutional level of care at a higher population density.

Defendants met the December 2011 population-reduction target on time and the June 2012 target two months early.  Defendants have also fully complied with the associated reporting requirements.  These reporting requirements ensure that Defendants stay on track while affording them the flexibility needed to reach the targets, or to evaluate, with the receiver's and the Court's cooperation, the efficacy of the final population density target in light of the state's present and future progress in providing appropriate care.  The Court's June 30, 2011 order requires Defendants to submit monthly status reports that "include an updated discussion on whether defendants expect

1  to meet *the next six-month benchmark* and, if not, what further actions are contemplated

2  and the specific persons responsible for executive those actions." As the United States

3  Supreme Court stated:

> As the State makes further progress, the three-judge court
> should evaluate whether its order remains appropriate.  If
> significant progress is made toward remedying the underlying
> constitutional violations, that progress may demonstrate that
> further population reductions are not necessary or are less
> urgent than previously believed.

8  *Plata v. Brown*, 131 S. Ct. 1910, 1947 (2011).  This Court's requirements reflect the need

9  to continue to evaluate its population-reduction order in light of Defendants' efforts to

10 remedy the underlying constitutional violations in *Plata* and *Coleman*.

11      It would be counterproductive to require Defendants to develop additional

12 crowding-reduction measures when Defendants have not violated this Court's order and

13 are continuing to improve the prison health care system while reducing the prison

14 population.  As Defendants explain in their comprehensive plan, given the historic inmate

15 population decrease to date, continuing reductions in the inmate population, and system-

16 wide improvements in providing medical, mental health, and dental care, Defendants

17 intend, as additional information concerning these measures is developed, to seek

18 modification of the population-reduction order to allow for the continued delivery of care

19 at a greater population density.   Defendants' plan is fully consistent with the Supreme

20 Court's recognition that the order should be reevaluated as progress is made.

21      Defendants' objective, and the purpose of this litigation, is to ensure that inmates

22 are, and continue to be, provided constitutionally adequate care.  Defendants are

23 confident that once the December 2012 benchmark is achieved, they will be able to

24 demonstrate to the Court that a constitutional level of health care can be provided at

25 145% of design capacity.  Accordingly, Plaintiffs' motion should again be denied because

26 it is unwarranted and inconsistent with the balanced approach reflected in this Court's

27 orders and the Supreme Court's opinion.

28 / / /

1    II.    **ARGUMENT**

2        A.    **The Motion Should Be Denied Because The Court's Current Reporting**
             **Requirements Properly Grant The Appropriate Flexibility To**
3             **Defendants To Remedy The Underlying Constitutional Violations.**

4        In its August 4, 2009 Order, this Court held that "both the PLRA and general

5    equitable principles require this court to ensure that the population reduction sought by

6    plaintiffs extends no further than necessary to rectify the unconstitutional denial of

7    medical and mental health care to California's prisoners." (8/4/09 Order, *Plata/Coleman*

8    Dkt. Nos. 2197/3641, at 124.) The United States Supreme Court similarly cautioned that

9    the population reduction must be limited to only what is required to achieve

10   constitutionally adequate medical and mental health care systems:

11               As the State implements the order of the three-judge court,
                 time and experience may reveal targeted and effective
12               remedies that will end the constitutional violations even
                 without a significant decrease in the general prison
13               population. The State will be free to move the three-judge
                 court for modification of its order on that basis, and these
14               motions would be entitled to serious consideration.

15   *Plata*, 131 S. Ct. at 1941; *see also id.* at 1945 ("There are also no scientific tools

16   available to determine the precise population reduction necessary to remedy a

17   constitutional violation of this sort."). The Supreme Court also required this Court to

18   periodically review its population reduction order to evaluate whether it should be

19   modified and, when Defendants establish that they have made progress in remedying

20   constitutional violations, to evaluate whether a change in the population limit is

21   warranted. *Id.* at 1947.

22       Plaintiffs seem to overlook the dramatic population reduction occurring under

23   realignment, as well as the improvements in the prison medical, mental health, and

24   dental care systems.[1] (*See, e.g.*, 5/7/12 Hoshino Decl.) For example, in *Coleman v.*

25

26   _____

27   [1] On October 25, 2006, the state housed 162,792 inmates in its 33 in-state prisons. (*See*
     http://www.cdcr.ca.gov/Reports_Research/Offender_Information_Services_Branch/Weekly
     Wed/TPOP1A/TPOP1Ad061025.pdf .) On January 13, 2010, the population decreased
28   (footnote continued)

4

1  *Brown*, Defendants have successfully reduced or eliminated the wait lists for high-

2  custody inmates needing inpatient mental health care.  (*Id.* at ¶ 7.)  On March 16, 2010,

3  the wait list for high-custody inmates needing ICF treatment totaled 542 and on March

4  15, 2010, the wait list for the inmates needing Acute treatment totaled 97.  (*Id.*)  As of

5  May 3, 2012, there were only 13 inmates who have been accepted by DMH and were

6  pending ICF admission, and just three of those inmates have been waiting more than 30

7  days, all due to medical holds.  (*Id.*)  Nine inmates were pending Acute admission.  (*Id.*)

8  Defendants are also well on their way to resolving *Perez v. Brown*, which

9  challenged the constitutional adequacy of CDCR's dental care system.  (*Id.*, Ex. 2, at p.

10  51.)  To date, 31 of 33 institutions have been reviewed by the dental experts and have

11  satisfied all of the court-ordered mandates, and Defendants anticipate that all prisons will

12  pass the audits by August 2012.  (*Id.*)

13  In *Plata v. Brown*, the court on January 17, 2012 announced that "it is clear that

14  many of the goals of the Receivership have been accomplished" and that "the end of the

15  Receivership appears to be in sight."  (*Plata* Dkt. No. 2417.)  The overall average OIG

16  score of 79.6% should be used as a key indicator of whether the medical care being

17  provided is constitutionally adequate.  (Hoshino Decl., ¶¶ 2-3.)  Consistent with the

18  Court's order, Defendants proposed a viable transition plan and are fully prepared to

19  resume control of CDCR's medical care system this year.  (Hoshino Decl. &

20  Accompanying Exhibits.)  Defendants are also prepared to proceed with the construction

21  of the California Health Care Facility and renovation of the DeWitt Correctional Facility in

22  Stockton, which the *Plata* Receiver described as "a significant move forward in meeting

23  

24  _____

25  to 151,036 inmates.  (*See*
http://www.cdcr.ca.gov/Reports_Research/Offender_Information_Services_Branch/Weekly Wed/ TPOP1A/TPOP1Ad100113.pdf.)  As reported in Defendants' October 14, 2011

26  report (*see* Dkt. Nos. 4099-1/2407-1), the in-state prison population when realignment

27  began was 144,188.  As of May 9, 2012, 122,659 inmates were housed in the state's
adult institutions.  (*See* 5/15/12 Report, Dkt. Nos. 2436/4184.)

28

1    the mandate of providing adequate inmate-patient care." (Receiver's 20th Tri-Annual

2    Report, Dkt. Nos. 2437-1/4185-1, at 1.)

3         Moreover, Defendants have already issued a revised plan that builds upon the

4    changes brought by realignment. (Hoshino Decl., Ex. 2.) Defendants' plan "sets forth

5    effective alternative measures that will allow the department to satisfy the court by

6    demonstrating that it can maintain a satisfactory health care system for a higher density

7    population than is dictated in the [population reduction] order." (*Id.* at 50.) Plaintiffs'

8    claim that they have not received Defendants' plan is false. Defendants published their

9    plan on April 23, 2012, and Defendants presented the plan to Plaintiffs on April 18, 2012.

10   Although Plaintiffs would have unquestionably suggested a different plan, there is no

11   question that Defendants presented their plan.

12        Plaintiffs ignore these facts and the Supreme Court's admonitions, and instead

13   cling to the erroneous notion that neither the percentage nor the timing of this Court's

14   final benchmark can be changed. Plaintiffs also fail to acknowledge that, as set forth in

15   part III below, Defendants have complied with this Court's orders and reached the June

16   2012 population reduction benchmark two months before being required to do so.

17   Moreover, as set forth in Defendants' plan, the reduced prison population has already

18   aided CDCR's ability to provide quality health care. (Hoshino Decl., Ex. 2, at 50.) As the

19   population continues to drop, the quality of prison health care will continue to improve.

20   (*Id.*) Defendants believe that new health care facilities and enhanced treatment and

21   office space at existing prisons will enable CDCR to provide a quality health care system

22   to a higher density prison population than the 137.5% of design capacity originally set by

23   the court. (*Id.*) Accordingly, when Defendants and this Court have the benefit of

24   additional evidence that will follow from further population reductions, further

25   accomplishments by health care staff, and further implementation of Defendants'

26   comprehensive plan for maintaining constitutionally appropriate health care systems,

27   Defendants will move to modify the population density order. Until that time, or until there

28   has been an actual violation of the Court's order, there is no basis for the relief sought by

1    Plaintiffs.

2        **B.    The Motion Is Premature.**

3        Defendants have complied with the Court's first two population reduction targets,

4    and have reduced the population in the state's 33 institutions to less than 155% of design

5    bed capacity more than two months early. (*See* Dkt. Nos. 2436/4184.)  Plaintiffs base

6    their motion on speculation about some possible future violation, but this provides no

7    basis for the relief they seek.  "There is, in our jurisprudence, no doctrine of 'anticipatory

8    contempt.'"  *United States v. Bryan*, 339 U.S. 323, 341 (1950); *see also Thomas v.*

9    *Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000).  An order

10   granting the relief Plaintiffs seek would violate the fundamental principle of contempt that

11   "a court must exercise only the 'least possible power adequate to the end proposed.'"

12   *United States v. Johnson*, 736 F.2d 358, 362 (6th Cir. 1984) (quoting *Shillitani v. United*

13   *States*, 384 U.S. 364, 371 (1966)).[2]

14       Plaintiffs mischaracterize the facts when they claim that Defendants have

15   somehow misled the Court by reporting compliance with the next population reduction

16   target.  But this is precisely—and appropriately—what the order requires.  (6/30/11 Order,

17   Dkt. Nos. 2374/4032, at 3 ["The reports shall also include an updated discussion on

18   whether defendants expect to meet the next six-month benchmark and, if not what further

19   actions are contemplated and the specific persons responsible for executing those

20   actions."].)

21       CDCR's spring 2012 population projection indicates that Defendants may fall short

22   of reaching the June 2013 population target by about 2,955 inmates.  Defendants have

23

24   [2] The case Plaintiffs rely on to argue that this Court can decide their speculative motion

25   now is distinct because it involved an *actual* violation of a court order: "[t]he defendants
     did not timely pay the special masters' fees and expenses."  *Hook v. Arizona Dep't of*

26   *Corr.*, 107 F.3d 1397, 1403 (9th Cir. 1997).  Here, Defendants have complied with the

27   Court's population reduction order by achieving the first two population reduction
     benchmarks ahead of schedule.

28

1    prepared a plan that "sets forth effective alternative measures that will allow the

2    department to satisfy the court by demonstrating that it can maintain a satisfactory health

3    care system for a higher density population than is dictated in the [population reduction]

4    order."  (Hoshino Decl., Ex. 2, at 50.)  Assuming Defendants do not exceed these

5    projections, they will seek a modification of the order to raise the final benchmark to

6    145% of design capacity.  Devising new and different crowd-reduction measures now

7    would potentially undermine Defendants' carefully constructed post-realignment plan, and

8    would not be in the state's best interests, particularly when the projected shortfall of 2,955

9    inmates (an average of just 89.5 inmates per institution) pales in comparison to a

10   projected population reduction of 50,760 since October 25, 2006.  (*Compare* CDCR's

11   10/25/06 population report [reflecting that the state housed 162,792 inmates in its 33 in-

12   state institutions] *with* Hoshino Decl., Ex. 2, Appx. G ["Baseline Gap Chart" projecting that

13   the population will be reduced to 112,032 inmates by 6/27/13].)  And, as shown by the

14   declarations of Jay Atkinson and Ross Meier accompanying this opposition, Plaintiffs'

15   allegations concerning CDCR's population projections are unfounded, misleading, and

16   fail to incorporate all relevant evidence.  (Decl. Jay Atkinson Supp. Defs.' Opp'n, ¶¶ 3-7;

17   Decl. Ross Meier Supp. Defs' Opp'n, ¶¶ 3-4.)[3]

18          **C.**     **Plaintiffs Will Not Be Prejudiced If The Court Denies The Motion.**

19          Defendants have taken many steps to remedy the underlying constitutional

20   violations in *Plata* and *Coleman*.  Defendants have fully complied with the population

21   reduction order to date, and there is thus no need for Defendants to bring a motion to

22   modify the order at this time, nor is there any legal basis for this Court to change the

23   reporting requirements in the population reduction order.

24          Defendants have not violated this Court's population reduction order, and Plaintiffs

25   _____

26   [3] If the Court determines that there is any merit to the contentions in Mr. Austin's
     Declaration, Defendants request additional time to submit objections or further rebuttal
27   evidence.

28

are thus not entitled to any relief.  Moreover, the Supreme Court has already decided that an amendment of the population reduction order may be warranted based on new evidence.  Such a modification will not cause prejudice.  Defendants should be permitted to continue to provide the reports currently required by the Court and seek to modify the order at the appropriate time.

## III.    CONCLUSION

Plaintiffs have prematurely moved for an order that is inconsistent with the Supreme Court's opinion and with this Court's carefully considered reporting requirements that appropriately recognize the need to evaluate whether the order remains appropriate.  Defendants have not violated this Court's order, and imposing further reporting requirements in light of the progress made to date is unwarranted. Plaintiffs' motion should be denied.

DATED:    May 23, 2012                    HANSON BRIDGETT LLP



                                    By:  /s/ Paul B. Mello
                                         PAUL B. MELLO
                                         Attorneys for Defendants
                                         Edmund G. Brown, Jr., et al.


DATED:    May 23, 2012                    KAMALA D. HARRIS
                                         Attorney General of the State of California



                                    By:  /s/ Patrick R. McKinney
                                         PATRICK R. McKINNEY
                                         Deputy Attorney General
                                         Attorneys for Defendants
                                         Edmund G. Brown, Jr., et al.