KAMALA D. HARRIS
Attorney General of California
JONATHAN L. WOLFF
Senior Assistant Attorney General
JAY C. RUSSELL
Supervising Deputy Attorney General
DEBBIE J. VOROUS, State Bar No. 166884
WILLIAM H. DOWNER, State Bar No. 257644
Deputy Attorneys General
  1300 I Street, Suite 125
  P.O. Box 944255
  Sacramento, CA 94244-2550
  Telephone: (916) 324-5345
  Fax: (916) 324-5205
  E-mail: Debbie.Vorous@doj.ca.gov
Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **RALPH COLEMAN, et al.,**<br><br>                              Plaintiffs,<br><br>          v.<br><br>**EDMUND G. BROWN JR, et al.,**<br><br>                              Defendants. | 2:90-cv-00520 LKK JFM PC<br><br>**DEFENDANTS' EX PARTE REQUEST RE: REVISED LONG-RANGE MENTAL HEALTH BED PLAN** |

1

| Acronym List ||
|---|---|
| **Term** | **Definition** |
| ASH | Atascadero State Hospital |
| ASU | Administrative Segregation Unit |
| CCWF | Central California Women's Facility |
| CDCR | California Department of Corrections and Rehabilitation |
| CHCF | California Health Care Facility |
| CMC | California Men's Colony |
| CIC | Condemned Inmate Complex |
| CIM | California Institution for Men |
| CIW | California Institution for Women |
| CMF | California Medical Facility |
| CSH | Coalinga State Hospital |
| COR | California State Prison, Corcoran |
| DMH | Department of Mental Health |
| EOP | Enhanced Outpatient Program |
| EOP-ASU | Enhanced Outpatient Program-Administrative Segregation Unit |
| EOP-GP | Enhanced Outpatient Program-General Population |
| FY | Fiscal Year |
| GP | General Population |
| HC-POP | Health Care Placement Oversight Program |
| HDSP | High Desert State Prison |
| ICF | Intermediate Care Facility |
| ICF-H | Intermediate Care Facility – High Custody |
| JLBC | Joint Legislative Budget Committee |
| KVSP | Kern Valley State Prison |
| LAC | California State Prison, Los Angeles County |
| LOU | Locked Observation Unit |
| MCSP | Mule Creek State Prison |
| MHCB | Mental Health Crisis Bed |
| NKSP | North Kern State Prison |
| PBSP | Pelican Bay State Prison |
| PSH | Patton State Hospital |
| PSU | Psychiatric Services Unit |
| PVSP | Pleasant Valley State Prison |
| RJD | Richard J. Donovan Correctional Facility |
| SAC | California State Prison, Sacramento |
| SATF | Substance Abuse Treatment Facility |
| SNY | Sensitive Needs Yard |
| SOL | California State Prison, Solano |
| SQ | San Quentin State Prison |

i

Defs.' Ex Parte Req. Re: Revised Long-Range Bed Plan (2:90-cv-00520 LKK JFM P)

| | | |
|---|---|---|
| SVSP | Salinas Valley State Prison |
| VSPW | Valley State Prison for Women |
| WSP | Wasco State Prison |

ii

Defs.' Ex Parte Req. Re: Revised Long-Range Bed Plan (2:90-cv-00520 LKK JFM P)

# I. INTRODUCTION

In January 2012, Defendants informed the Court that they were reevaluating their existing long-range mental health bed plan because of the significant population reductions occurring under the newly enacted prison realignment legislation. Defendants expected to move to modify their existing bed plan within sixty days to reflect the changed demand for mental health beds. (Docket No. 4144 at 4:5–9.) But unanticipated events occurred that required more time than Defendants originally contemplated. First, after Defendants notified the Court that they intended to modify the bed plan, the court in *Plata v. Brown* ordered the parties and the Receiver to meet and confer on post-receivership planning, including construction issues. These meet-and-confer sessions occurred from February through April. (Receiver's and Parties' Joint Rpt., *Plata v. Brown*, No. 3:01-cv-01351-TEH (N.D. Cal. 2001) Docket No. 2433 (Joint Report).) Second, Defendants determined that they should refocus their planning efforts on developing a comprehensive plan that, among other things, takes into account a newly issued inmate-classification study and the spectrum of inmate needs covered by the *Coleman, Plata, Perez,* and *Armstrong* cases. (Docket No. 4168 at 2:1–16.)

During roughly this same time, the State also developed a new comprehensive plan entitled "The Future of California Corrections: A Blueprint to Save Billions of Dollars, End Federal Court Oversight, and Improve the Prison System."[1] That plan incorporated a newly developed long-range mental health bed plan based on spring 2012 mental health population projections by McManis Consulting. (Joint Report, Ex. 2.) John Misener (previously with Navigant Consulting) is the lead author and forecaster for the McManis Consulting's spring 2012 population projections. (Decl. D. Vorous Supp. Ex Parte App. (Decl. Vorous), ¶ 2.) Defendants met with the Special Master, Plaintiffs' counsel, and other participants in the four-court coordination group on April 18, 2012 to share the State's comprehensive plan with them before releasing it on April 23. Since its release, the plan has been widely and consistently praised. (*See, e.g.,* April 29, 2012 Sacramento Bee editorial: "California Can Now Revamp its Prison

---

[1] *See* http://www.cdcr.ca.gov/2012plan/

1

Defs.' Ex Parte Req. Re: Revised Long-Range Bed Plan (2:90-cv-00520 LKK JFM P)

System at Lower Cost.".) Defendants have twice produced Mr. Misener for telephone conferences with the Special Master and Plaintiffs' counsel to discuss his updated population projections. (Decl. Vorous. ¶ 2.)

Defendants' revised mental health bed plan relies on the inmate reductions achieved by realignment and a facility-improvement plan that will help maintain the delivery of constitutionally sufficient health care to inmate-patients. Exhibit 1 is McManis Consulting's Spring 2012 Population Projections, which are based on the reduced inmate population under realignment. Exhibits 2 and 3 are spreadsheets that display the revised base male and female mental health bed plans, respectively, and the assumptions upon which those plans are based.

When the Court issued its January 4, 2010 order on Defendants' existing bed plan, the Court stated that it would consider revisions to Defendants' bed plan should a reduction in the inmate population warrant modifications. (Docket No. 3761 at 3:15–17.) Accordingly, given the reduced population under realignment and Defendants' newly revised bed plan, Defendants request that the Court modify or vacate existing orders concerning: (1) the use of Navigant Consulting's spring 2009 population projections; (2) the temporary nature of two projects (the revised plan makes these projects permanent); (3) ten court-ordered construction projects (the revised plan modifies and or eliminates these projects); (4) bed capacity at Atascadero State Hospital (the revised plan decreases bed capacity); and (5) the activation schedule for the Enhanced Outpatient Program projects at Dewitt Nelson.[2]

## II. PROCEDURAL SUMMARY

After Defendants presented their comprehensive plan to the Special Master and Plaintiffs' counsel on April 18, the parties have continued to discuss Defendants' revised bed plan, with the goal to move it forward as expeditiously as possible. (Decl. Vorous ¶ 3.) In addition, Defendants shared copies and discussed this ex parte request and the proposed order with the Special Master

---

[2] Concurrent with this filing, Defendants have submitted a Proposed Order that identifies the prior orders that must be modified or vacated before Defendants can fully implement their revised mental health bed plan. Defendants believe that the Proposed Order addresses Plaintiffs' counsel's concerns regarding Mental Health Crisis Bed population projections and the decommission of temporary mental health bed programs. *See* Section II.

2

Defs.' Ex Parte Req. Re: Revised Long-Range Bed Plan (2:90-cv-00520 LKK JFM P)

and Plaintiffs' counsel before filing them with the Court. (*Id.*). Defendants believe that the Special Master and Plaintiffs' counsel agree on most parts of the revised plan and wish to avoid any further delays in presenting it to the Court. To that end, the parties agree that the present process—an ex parte request and [proposed] order—should be used in place of a noticed motion.

Defendants believe that the Special Master generally supports Defendants' request that this Court's orders be revised so that the revised bed plan can be implemented. However, Defendants believe that the Special Master regards the request concerning Atascadero State Hospital premature and objects to it. In addition, Defendants believe that the Special Master shares the global concerns noted by Plaintiffs below regarding the use of "trued" numbers in the spring 2012 population projections. Moreover, Defendants believe that the Special Master is concerned that the population projections do not incorporate Defendants' use of alternative placements and Outpatient Housing Units for inmates who require crisis care into mental health bed need population projections.

Plaintiffs' position on the revised bed plan is:

> While Plaintiffs agree that the significant population reduction that has occurred throughout CDCR prisons as a result of the three-judge court overcrowding order and Criminal Justice Realignment requires substantial adjustments in the bed plan, including the cancellation of some previously court-ordered projects, plaintiffs have expressed reservations about various aspects of Defendants' Spring 2012 mental health bed needs projections. The areas of concern raised by plaintiffs include proposed changes in the methodology appearing for the first time in the Spring 2012 Report, the reliability of certain data used in creating the projections, the failure to plan for sufficient beds to address the identified need for EOP Ad Seg patients, as well as the failure to account for CDCR's soon-to-be-implemented changes to its security classification system.
>
> Plaintiffs, as a result of these and other concerns, do not agree that Defendants' Spring 2012 projections should be accepted, especially for the categories of male MHCB beds and male ICF beds. Plaintiffs contend that the MHCB bed need projections fail to account for Defendants' extensive, ongoing reliance on alternative placements and OHU beds and that until these issues are resolved, it is premature to approve any reduction of MHCB bed planning beyond elimination of the 30-bed Stark project. Thus plaintiffs oppose any further reduction of planned MHCB projects, including at CHCF, in Defendants' revised bed plan at this time. Likewise, given the history of unmet ICF need, barriers to admission and the upcoming evidentiary hearing on the Court's Order to Show Cause regarding Defendants' DMH waitlist plan and the sustainable DMH referral process,

3

Defs.' Ex Parte Req. Re: Revised Long-Range Bed Plan (2:90-cv-00520 LKK JFM P)

> Plaintiffs contend that any reduction of DMH ICF beds, including at Atascadero State Hospital, would be inappropriate and the long-standing court orders requiring at least 256 ICF beds at ASH should not be modified.

(Decl. Vorous ¶ 4, Attachment A.)[3]

### III.   THE EXISTING BED PLAN.

In 2009, the Court ordered Defendants to develop and implement a plan to provide the physical space necessary to meet the mental health treatment needs of the Plaintiff class.  (Docket No. 3686.)  Defendants' long-range mental health bed plan, which was adopted in two parts in late 2009 and early 2010, was based on the CDCR's Navigant spring 2009 population projections to 2013.  (*See* Dockets Nos. 3724, 3794, 3805, 3830, 3845.)  Defendants' plan included twenty-one construction and conversion projects at fifteen locations—ten prisons, three former Division of Juvenile Justice institutions (Stark, Estrella, Dewitt), one new correctional facility built on the site of a former Karl Holton Juvenile Correctional Facility in Stockton (California Health Care Facility), and one inpatient program operated by the California Department of Mental Health (DMH)—all aimed at addressing the population needs to 2013.  (*Id.*)[4]  In 2010, the Court approved all twenty-one projects in Defendants' plan except for the Stark project; there, the Court approved only part of that project—the construction of new Mental Health Crisis Beds—but did not approve the Enhanced Outpatient Program (EOP) conversion part of the project.  (Docket Nos. 3761, 3811, 3823.)[5]

To date, Defendants have completed eight of the twenty-one projects, adding over 400 new inpatient and outpatient mental health beds.  Four more construction projects are scheduled for completion in 2012, and another four for completion in 2013.  On September 15, 2010, and

---

[3]  Plaintiffs also request that any order approving the revised bed plan should include a provision requiring Defendants to seek court approval before closing any temporary or emergency mental health programs.  (Decl. Vorous ¶ 4, Attachment A.)

[4]  The twenty-one projects do not include temporary capacity at California Men's Colony, California Institution for Men, Salinas Valley State Prison, California Medical Facility or Patton State Hospital that Defendants proposed to decommission as part of their long-range mental health bed plan.  (Docket Nos. 3724–2 at 67, 3845–2 at 15.)

[5]  Although two of the projects—the San Quentin Mental Health Crisis Bed projects—are identified in Defendants' previous bed plan as two of the twenty-one projects, neither are "court-ordered" projects.  (Docket No. 3724–2 at 11.)

4

Defs.' Ex Parte Req. Re: Revised Long-Range Bed Plan (2:90-cv-00520 LKK JFM P)

April 6, 2011, the Joint Legislative Budget Committee (JLBC) informed Defendants that they could not support the Stark and Estrella projects, respectively. (Docket No. 3941 at 6:1–6; Docket No. 4144 at 3 n.2.) The Condemned Inmate Complex project at San Quentin State Prison, which would have included additional MHCBs, was canceled on April 28, 2011. (*See* Governor's Press Release dated Thursday, April 28, 2011.) On January 11, 2012, Defendants informed the Court that the Dewitt and Central California Women's Facility (CCWF) projects were being reassessed in light of the decreased population. (Docket No. 4144.) The status of the twenty-one projects is summarized in Table 1 below:

**Table 1: Status of Twenty-One Construction and Conversion Projects**

| Project No. | Institution | Mental Health Level of Care Program | Number of New or Converted Beds Per Existing Plan | Status of project |
|---|---|---|---|---|
| 1 | SVSP | EOP-ASU: | 27 | Completed, but temporary capacity in revised mental health bed plan. (*See* Ex. 2.) |
| 2 | CMF | ICF (high-custody) | 64 | Completed (*Id.*). |
| 3 | SQ | MHCB | 17 | Completed (*Id.*). |
| 4 | SATF | EOP-GP (dual diagnosis program) | 88 | Completed (*Id.*). |
| 5. | SATF | EOP-SNY | 176 | Completed (*Id.*). |
| 6 | ASH | ICF (low-custody) | 25 Acute to ICF | Completed (*Id.*). |
| 7 | CIW | PSU | 20 | Completed (*See* Ex. 3.) |
| 8 | SAC | EOP-GP | Treatment and Office Space | N/A |
| 9 | CIW | ICF | 45 | First patient admission is scheduled for 7/2/12. (Decl. C. Meyer Supp. Ex Parte App (Decl. Meyer) ¶ 3.) |
| 10 | LAC | EOP-GP Treatment and office space and convert housing space | 150 | Under construction with activation on hold pending rescope of project for EOP-ASU population. (*Id.* ¶ 4.) |
| 11 | CMC | MHCB | 50 | Under construction and first patient admission scheduled for 12/11/12. (*Id.* ¶ 5.) |

| | | | | |
|---|---|---|---|---|
| 12 | CMF | EOP-GP Treatment and office space and convert existing housing | 67 | Under construction and activation scheduled for 11/30/12. (*Id.* ¶ 6.) |
| 13 | COR | EOP-ASU Construct treatment and office space and expand EOP-ASU program | 45 | Capacity already expanded. (*See* Ex. 2.) Facility under construction and activation scheduled for 2/14/13 (Decl. Meyer ¶ 7.) |
| 14 | SAC | PSU Construct treatment and office space and convert existing housing | 152 | Under construction with activation scheduled for 3/27/13. (*Id.* ¶ 8.) |
| 15 | SVSP | EOP-GP Construct treatment and office space and convert existing housing | 108 | Under construction with activation scheduled for 7/31/13. (*Id.* ¶ 9.) |
| 16 | CHCF | MHCB, Acute, ICF | MHCB: 137<br>Acute: 43<br>ICF (high): 432 | Under construction and first patient admission scheduled for 7/22/13. (*Id.* ¶ 10.) |
| 17 | Dewitt | EOP | EOP-GP: 375<br>EOP-ASU: 50 | 4/2011 to 4/2012 reassessed pending impact from AB 109. May 18, 2012: obtained approval for construction loan; revised construction completion date to early spring 2014. (*Id.* ¶ 11.) |
| 18 | Estrella | EOP | EOP-GP: 150<br>EOP-ASU: 40 | JLBC denied on 4/6/11. (Docket No. 4144 at 3 n2.) |
| 19 | CCWF | EOP-GP Construct treatment and office space and convert existing housing | 70 | On May 16, 2012, Defendants began rescoping the treatment and office space project to provide sufficient space for the existing 54 EOP-GP beds with no new capacity. (Decl. Meyer ¶ 12.) |
| 20 | Stark | EOP-GP, EOP-ASU, MHCB | EOP-GP: 525<br>EOP-ASU: 50<br>MHCB: 30 | JLBC denied on 9/15/10. (Docket No. 3941 at 6:1–6.) |
| 21 | SQ | MHCBs | 17 | CIC Project canceled on April 28, 2011. |

### IV.   THE REVISED BED PLAN.

Defendants' existing bed plan was adopted well before realignment. (Docket Nos. 3724, 3805, 3830.) In the seven months since realignment has been in effect, the prison population has dropped dramatically—by approximately 21,800 inmates.[6] Before realignment, CDCR served a

---

[6] This data is taken from CDCR's May 21, 2012 weekly report available at:

(continued…)

6

Defs.' Ex Parte Req. Re: Revised Long-Range Bed Plan (2:90-cv-00520 LKK JFM P)

1  mental health population of 38,804 inmates.[7]  After realignment, the mental health population in
2  need of inpatient or outpatient mental health services has dropped to 31,412 inmates, a 7,392
3  reduction.  (*Id.*)  When compared to the spring 2009 population projections used for the existing
4  bed plan, the spring 2012 projections reflect a substantial decrease in bed need across all
5  categories except the acute male population and female PSU patients.  (*See* Exs 1–3.).

6        In developing the revised plan, Defendants evaluated this reduced need for mental health
7  beds, and determined that ten projects should be modified or eliminated.  The revised plan also
8  extends the occupancy date for one project that increases EOP capacity—the Dewitt Nelson
9  conversion project—from December 2013 to spring 2014.  Defendants also evaluated the utility
10 of converting some temporary outpatient beds into permanent beds, rather than constructing new
11 facilities.  Defendants believe that repurposing CDCR facilities and adjusting existing capacities
12 for certain sub-populations will open up additional treatment and office space and housing units
13 for the mentally ill population.  Lastly, Defendants believe that a gradual decrease of Atascadero
14 State Hospital's bed capacity is warranted.

15 **A.  Using the Spring 2012 Population Projections to Determine Capacity is Appropriate.**

16       Defendants' existing bed plan was based on spring 2009 population projections to
17 determine projected 2013 mental health bed needs.  (Docket No. 3724, Ex. A at 6.)  Defendants'
18 newly revised plan uses mental health bed need projections to 2013, but updates the projected
19 need based on the McManis Consulting's spring 2012 population projections.  (Exs. 2–3.)  Thus,
20 Defendants request that the Court modify its January 4, 2010 order to the extent that it requires
21 Defendants to create bed capacity based on the spring 2009 population projections, which
22 estimated a need of 7,844 (7,572 male and 272 female) beds by 2013, in place of an order
23 requiring Defendants to create bed capacity sufficient to meet the updated population projections,
24 / / /

---

(…continued)
http://www.cdcr.ca.gov/Reports_Research/Offender_Information_Services_Branch/Population_Reports.html; *see also* Docket No. 4184 at 2:7–11.
[7] *See* http://www.cdcr.ca.gov/2012plan/ at 29–30.

7

Defs.' Ex Parte Req. Re: Revised Long-Range Bed Plan (2:90-cv-00520 LKK JFM P)

which project a need of 6,088 (5,951 male and 137 female) beds, a reduction of 1,756 in bed capacity. (*Compare* Ex. 2–3 *to* Docket Nos. 3724–2 at 67, 3845–2 at 15.)[8]

Defendants further request that the Court modify one order related to net capacity (aside from the construction and conversion projects discussed below) so that they can fully implement their revised bed plan. That order, discussed in Section IV.B.3 below, addresses the net capacity of mental health beds available for low-custody inmates at Atascadero State Hospital.

Two primary grounds support using the updated population projections in place of the spring 2009 population projections to 2013, including the "trued" need projections. First, John Misener of McManis Consulting (previously with Navigant Consulting) has acted as the lead author and forecaster of the semi-annual population reports and has competence and experience in developing and updating projected bed needs for CDCR's mental health population. (Docket No. 3629 at 2:18–21.) And as this Court has noted, the "Court, the Special Master, and the Plaintiffs are comfortable and confident that Mr. Misener's projections are reliable." (*Id.* at 2:21–22.) "The Navigant Consulting forecast has become an invaluable tool in this case for projecting mental health care needs and is the basis for Defendants' current short-term, intermediate, and long-range bed planning." (*Id*. at 25–27.) Given the Court's past use of Mr. Misener's projections, his revised projections should be similarly relied on to project the mental health bed need to 2013.

Second, the spring 2012 study uses census and wait list data from July 2011 to January 2012, and incorporates realignment's impact. (Ex. 1 at 2, 5.) A fair and responsible assessment of mental health bed needs going forward should use updated projections that incorporate the reduced inmate population under realignment.

Defendants ask the Court to substitute updated population projections that acknowledge a lower population under realignment. Defendants note that there will still be an additional

---

[8] The spring 2012 projections use what McManis Consulting describes as "trued" bed need reporting. "Trued" reporting means that for the male MHCB, EOP-GP, and EOP-ASU and for the female EOP-ASU, McManis Consulting made an adjustment to the official forecasted bed need that eliminated "double counting." (Ex. 1 at 7; *see also* Exs. 2–3.) The "true" bed need assumes that beds will free up once adequate capacities are available and there are no wait lists for those levels of care. (*Id.*)

8

capacity of 598 mental health beds (499 for the male population and 99 for the female population). (*See* Exs. 2–3.)

**B.    Revising Defendants' Bed Plan is Appropriate Given the Reduced Inmate Population and Updated Population Projections.**

As noted, the population reductions achieved through realignment indicate that ten projects in the existing long-range mental health bed plan should be changed. Accordingly, Defendants request that the Court modify and or vacate its prior orders concerning these ten construction projects as they relate to bed capacity, facility use, and or full occupancy as noted. In addition, Defendants' analysis shows that temporary capacity at two institutions should be converted into permanent capacity. Defendants therefore request the Court modify its prior orders related to these two temporary projects. Finally, because the updated population projections show a reduction in the need for ICF low-custody beds, Defendants request the Court modify its order regarding capacity at Atascadero State Hospital.

**1.    Changes to Construction and Conversion Projects in the Existing Plan.**

Table 2 below summarizes the changes to the ten construction and conversion projects in Defendants' revised mental health bed plan.

**Table 2 - Changes to Construction and Conversion Projects in Revised Bed Plan**

| Institution | Level of Care Program | Existing Long-Range Mental Health Bed Plan: New Bed Capacity | Revised Mental Health Bed Plan: New Bed Capacity |
|---|---|---|---|
| SVSP | EOP-ASU: | 27 | 19<br>Makes 19 permanent (reflected in temp. capacity for Program) (*See* Ex. 2.) |
| LAC (treatment and office space facility) | EOP-GP | 150 | 0<br>(capacity changed; Defendants are rescoping the treatment and office space facility to provide treatment to 100 EOP-ASU inmates) (*Id*; Decl. Meyer ¶ 4.) |

9

| | | | |
|---|---|---|---|
| CMF (treatment and office space facility under construction) | EOP-GP | 67 | 0 (capacity changed; treatment and office space facility unchanged) (Ex. 2.) |
| SAC (treatment and office space facility under construction) | PSU | 152 | 128 (capacity changed; scope of construction is unchanged, although use will be for 128 inmates) (Id.) |
| SVSP (treatment and office space facility under construction) | EOP-GP | 108 | 0 (capacity changed; treatment and office space facility still scoped for 300 EOP-GP inmates) (Id.) |
| CHCF (under construction) | MHCB, Acute, ICF | MHCB: 137 Acute: 43 ICF (high): 432 | MHCB: 98 Acute: 82 ICF (high): 432 (changed to move 39 MHCBs to Acute bed (Id.) |
| Dewitt | EOP | EOP-GP: 375 EOP-ASU: 50 | EOP-GP: 375 EOP-ASU: 50 (construction completion date now early spring 2014 with activation and patient admission to start as quickly as possible thereafter) (Decl. Meyer ¶ 11.) |
| Estrella (denied by JLBC) | EOP | EOP-GP: 150 EOP-ASU: 40 | 0 (change - project eliminated) (See Docket No. 4144 at 3 n.2.) |
| CCWF | EOP-GP | 70 | 0 (capacity changed; treatment and office space project is being rescoped to provide space for the existing 54 EOP-GP beds (Ex. 3, Decl. Meyer ¶ 12.) |
| Stark (denied by JLBC) | EOP-GP, EOP-ASU, MHCB | EOP-GP: 525 EOP-ASU: 50 MHCB: 20 | 0 (change - project eliminated) (see Docket No. 3941 at 6:1–3.). |

Defendants also update the Court concerning the Dewitt Nelson conversion project, the CCWF project, and the elimination of the MHCB project at Stark.

Defendants initially expected the Dewitt-Nelson conversion project to be fully occupied by December 31, 2013, as required by this Court's prior orders. (Docket No. 3830 at 6; Decl. Meyer ¶ 11.) This date was premised on the assumption that the design-build contract would be

10

Defs.' Ex Parte Req. Re: Revised Long-Range Bed Plan (2:90-cv-00520 LKK JFM P)

awarded in August 2011. (*Id.*) In January 2012, however, the State determined that the significant reductions in inmate population warranted reevaluation of the need for the additional Enhanced Outpatient Program beds. (Docket No. 4144 at 3:19–4:2.) Ultimately, the State determined to move forward with Dewitt as a semiautonomous level II male facility that will provide housing for the most seriously ill medical and mental health outpatient inmates and serve as a complementary annex to the California Health Care Facility (CHCF).[9] The CHCF is specially designed to house inmates requiring long-term inpatient medical care as well as inmates requiring intensive inpatient mental health services. (*Id.*) However, because CDCR was not given approval to award the construction contract for Dewitt until May 18, 2012, Defendants cannot construct the facility as designed and still meet the December 31, 2013 full occupancy date. (Meyer Decl. ¶ 11.) Based on the contract award date, CDCR expects that it can complete construction of Dewitt by early spring 2014, with activation and patient admissions to start as quickly as possible thereafter. (*Id.*) Defendants therefore ask the Court, based on changed circumstances, to carve out an exception to its orders that all the construction projects in their bed plan be fully occupied by 2013 and move the occupancy date for Dewitt to early 2014. Defendants understand that changing the Dewitt full occupancy date so that Defendants start activation and patient admissions as quickly as possible after construction is completed in early spring 2014 does not comport with the Court's present orders but they cannot safely construct and occupy the facility by the end of 2013. (*Id.*) Defendants remain committed to looking for opportunities to mitigate this delay. (*Id.*) By approving a change in the occupancy date for Dewitt, Defendants will be able to construct the facility as designed and provide more efficient delivery of a continuum of care. (*Id.*)

On January 4, 2010, the Court ordered that Defendants file "a detailed plan with activation schedules to meet the long-range mental health bed need of female EOP inmates identified in the Navigant 2009 spring population projections." (Docket No. 3761 at 4:21.) At that time, Defendants had a program capacity of 129 for the EOP-GP population (CCWF – 54; CIW – 75)

---

[9] *See* http://www.cdcr.ca.gov/2012plan/ at 32.

11

Defs.' Ex Parte Req. Re: Revised Long-Range Bed Plan (2:90-cv-00520 LKK JFM P)

but Navigant projected a need of 199. (Docket No. 3724–2 at 67.) Defendants complied with the Court's order and submitted a plan on February 18, 2010. (Docket No. 3805.) Defendants' plan would have converted 70 existing housing unit beds at CCWF to EOP-GP beds *and* constructed treatment and office space to support 124 EOP-GP beds (70 plus the existing 54) for female inmates. (*Id.*) On January 11, 2012, Defendants informed the Court that the CCWF project was being reassessed in light of the decreased population. (Docket No. 4144 at 3:19–23.) McManis Consulting's updated population projections now show a projected need of 85 EOP-GP beds, a reduction of 114 beds. (Ex. 3.) Defendants therefore request that the Court modify its January 4, 2010 order so that Defendants are no longer required to increase capacity to meet the past Navigant projections. Defendants are rescoping the treatment and office space part of their plan to provide services for the existing 54 beds rather than 124 beds. (Meyer Decl. ¶ 12.)

Lastly, the past population projections for the male population projected a need of 470 MHCBs in 2013. (Ex. 2.) The updated projections forecast a need of 289, a decrease of 181 beds. (*Id.*) Defendants' revised mental health bed plan maintains a net capacity of 389 beds and makes two changes to the existing long-range mental health bed plan. (*Id.*) First, Defendants' revised plan reduces the number of MHCBs at the new CHCF from 137 to 98 by shifting 39 beds to acute beds. (*Id.*) Second, the 30-bed Stark project will not be built. (*Id.*) But even with these reductions, the revised bed plan maintains an excess capacity of 100 MHCB beds. (*Id.*) And Defendants are not changing capacities at any of the institutions with current permanent MHCB units. (*Id.*) Current capacity, in conjunction with the beds being activated at the new CHCF in July 2013, will provide MHCB capacity at eighteen different locations throughout the state.[10]

**2.  Conversion of Two Temporary Projects to Permanent Projects.**

Defendants seek to make the following two temporary projects permanent: (1) California State Prison, Los Angeles County – 20 temporary EOP-ASU beds; and (2) Richard J. Donovan

---

[10] Without conceding their argument on MHCB capacity, Defendants agree to a proposed order that they continue working with the Special Master to address the issue of incorporating the use of alternative housing and Outpatient Housing Units for inmates who require crisis care in future Mental Health Bed Need population projections. Defendants also agree to a proposed order that they continue working with the Special Master to clarify the use of "trued" projections in the fall 2012 projections.

12

Defs.' Ex Parte Req. Re: Revised Long-Range Bed Plan (2:90-cv-00520 LKK JFM P)

Correctional Facility - 150 Level IV Enhanced Outpatient Program-Sensitive Needs Yard program. Accordingly, Defendants ask the Court to modify its orders related to these facilities.

### 3. The New Population Projections Support a Progressive Decrease in Bed Capacity at Atascadero State Hospital.

The Department of Mental Health provides inpatient care to low-custody inmates who need intermediate level of care at three facilities: the Vacaville Psychiatric Program at CMF (84 bed capacity); Coalinga State Hospital (50 bed capacity) and Atascadero State Hospital (ASH) (256 bed capacity). Previously, ASH maintained capacity for 231 intermediate-care and 25 acute-care inmates. (Docket No. 2301 at 2:19–23.) In 2009, this Court approved Defendants' conversion of 25 acute-care beds, increasing capacity to 256 intermediate-care beds at ASH. (Docket No. 3613.) Defendants' revised bed plan reduces the capacity from 256 to 206 beds. (Ex. 2.)

In 2007, this Court determined that it would not entertain a request to limit the number of ICF beds "absent a recommendation from the special master than fewer beds are required." (Docket No. 2301 at 4:5–7.) Defendants request the Court modify its June 28, 2007 order and approve Defendants' revised bed plan to reduce ASH capacity from 256 to 206 as the population needs warrant the reduction. Several new facts support this request.

First, the updated population projections show that 25 fewer ICF low-custody beds are needed, from 301 to 276. (Ex. 2.) Second, current capacity for low-custody beds is 390 beds, 114 more beds than John Misener has projected will be needed. (*Id.*) Therefore, even with a conservative reduction of 50 beds, there still should be an excess of 64 beds based on the updated population projections to 2013. For that reason, Defendants are not seeking to immediately reduce capacity from 256 to 206. Instead, they intend to monitor the bed need for low-custody inmates needing intermediate care and reduce capacity gradually in 2013 if the population needs warrant a reduction in capacity. Finally, over the past year, Defendants have been pursuing a patient-movement plan designed to better manage the continuum of care between various DMH programs, including the program designed for high-custody inmates needing intermediate care. Because of this plan, Defendants are now better able to project bed need for low-custody inmates

13

moving forward in 2013. For that reason, Defendants request that the Court modify its June 28, 2007 order requiring ASH to maintain 256 beds so that, if population needs warrant a reduction in the number of low-custody beds by 2013, Defendants can reduce capacity to 206 beds. These reductions at ASH parallel reductions at CDCR related to population decreases.

## V. CONCLUSION

Defendants' revised mental health bed plan combines the inmate reductions achieved through realignment with a facility improvement plan that will maintain delivery of constitutionally adequate mental health care to inmates. To that end, Defendants' respectfully request that the Court modify or vacate the orders concerning (1) the use of Navigant Consulting spring 2009 population projections to 2013; (2) the temporary nature of the 20-bed EOP-ASU project at LAC and the 150-bed project at RJD; (3) the ten court-ordered construction projects; (4) bed capacity at Atascadero State Hospital; and (5) the activation schedule for the Dewitt Nelson conversion project.

Dated: June 12, 2012

Respectfully submitted,

KAMALA D. HARRIS
Attorney General of California
JAY C. RUSSELL
Supervising Deputy Attorney General

*/s/ Debbie J. Vorous*

DEBBIE J. VOROUS
Deputy Attorney General
*Attorneys for Defendants*

CF1997CS0003
31471249.doc

14

Defs.' Ex Parte Req. Re: Revised Long-Range Bed Plan (2:90-cv-00520 LKK JFM P)