DONALD SPECTER – 083925
STEVEN FAMA – 099641
PRISON LAW OFFICE
1917 Fifth Street
Berkeley, California 94710-1916
Telephone:   (510) 280-2621

MICHAEL W. BIEN – 096891
ERNEST GALVAN – 196065
JANE E. KAHN – 112239
LISA ELLS – 243657
AARON J. FISCHER – 247391
LAURA BOYSEN-ARAGON – 248083
ROSEN BIEN GALVAN &
GRUNFELD LLP
315 Montgomery Street, Tenth Floor
San Francisco, California 94104-1823
Telephone:   (415) 433-6830

CLAUDIA CENTER – 158255
THE LEGAL AID SOCIETY –
EMPLOYMENT LAW CENTER
180 Montgomery Street, Suite 600
San Francisco, California 94104-4244
Telephone:   (415) 864-8848

WARREN E. GEORGE – 053588
BINGHAM McCUTCHEN LLP
Three Embarcadero Center
San Francisco, California 94111-4066
Telephone:   (415) 393-2000

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

RALPH COLEMAN, et al.,

      Plaintiffs,

    v.

EDMUND G. BROWN, Jr., et al.,

      Defendants.

Case No. Civ S 90-0520 LKK-JFM

**PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTIONS TO THE SPECIAL MASTER'S TWENTY-FOURTH ROUND MONITORING REPORT ON DEFENDANTS' COMPLIANCE WITH PROVISIONALLY APPROVED PLANS, POLICIES, AND PROTOCOLS**

On July 2, 2012, the Special Master filed the Twenty-Fourth Round Monitoring Report of the Special Master on the Defendants' Compliance with Provisionally Approved Plans, Policies, and Protocols ("24th Round Report" or the "Report"). Docket No. 4205. On July 12, 2012, Defendants filed Objections to the Special Master's Twenty-Fourth Round Monitoring Report on Defendants' Compliance with Provisionally Approved Plans, Policies, and Protocols ("Defs.' Objections"). Docket No. 4212.

[652693-6]

1

1    Defendants have objected to the Special Master's recommendation that "the court

2  issue an order directing Defendants to review and assess their existing quality assurance

3  process, and develop an 'improved quality improvement process' under the Special

4  Master's supervision and with Plaintiff's [*sic*] input and participation…"  Defs.'

5  Objections, Docket No. 4212 at 1.  Defendants provide three reasons for their objection,

6  none of which are appropriate grounds to reject the Special Master's well-reasoned

7  recommendation.  Instead, the Court should adopt the Special Master's findings and

8  recommendation and issue the order.

9    **I.    DEFENDANTS' QUALITY ASSURANCE PROCESS REMAINS**
   **INSUFFICIENT TO PROVIDE A CONSTITUTIONAL LEVEL OF**
10   **MENTAL HEALTH CARE TO CLASS MEMBERS**

11    Defendants base their objection on the empty and unsupported assertion that their

12  "current quality assurance process is constitutionally adequate."  Docket No. 4212 at 1.

13  Defendants provide no support for this assertion.  This Court and the Special Master have

14  identified the inadequacies of Defendants' quality assurance process for nearly twenty

15  years.  *See, e.g.*, Findings and Recommendations, June 6, 1994, Docket No. 547 at 80,

16  adopted at *Coleman v. Wilson, et al.*, 912 F. Supp. 1282, 1308 (E.D. Cal. 1995) ("Within

17  ninety (90) days of the order of the district court, defendants shall develop and implement

18  a system for quality assurance and peer review of mental health services."); Order,

19  June 13, 2002, Docket No. 1384 at 2 ("Within sixty days from the date of this order

20  defendants shall develop a plan to speed the implementation of the quality assurance

21  process within each CDC facility."); Eleventh Monitoring Report of the Special Master on

22  the Defendants' Compliance with Provisionally Approved Plans, Policies and Protocols,

23  June 10, 2003, Docket No. 1519 at 270 ("the department-wide quality management effort

24  has progressed slowly."); Twelfth Monitoring Report of the Special Master on the

25  Defendants' Compliance with Provisionally Approved Plans, Policies and Protocols,

26  December 9, 2003, Docket No. 1553 at 249 ("The defendants' development of a system-

27  wide quality assurance system, the capstone of its overall compliance effort, has

28  progressed slowly."); Thirteenth Monitoring Report of the Special Master on the

2

[652693-6]

1  Defendants' Compliance with Provisionally Approved Plans, Policies and Protocols,

2  June 18, 2004, Docket No. 1587 at 252 ("[Quality assurance] in general, and peer review

3  in particular, are necessary pathways to the termination of judicial supervision, and the

4  defendants need to continue to strengthen both."); Sixteenth Monitoring Report of the

5  Special Master on the Defendants' Compliance with Provisionally Approved Plans,

6  Policies and Protocols, December 14, 2006, Docket No. 2081 at 396 ("Institutions with a

7  substantially or fully adequate infrastructure for quality assurance were about equal in

8  number to those with marginally adequate or inadequate infrastructures."); Twenty-Third

9  Monitoring Report of the Special Master on the Defendants' Compliance with

10  Provisionally Approved Plans, Policies, and Protocols, December 1, 2011, Docket No.

11  4124 at 39 and 40 ("quality management systems within the institutions have improved,

12  but still have a significant distance to go before they can be deemed adequate …. [I]t

13  remains as clear as it was back in 1994, when the remedial order was being formulated,

14  that a solid quality management program is among the basic keys to implementation and

15  maintenance of long-term improvement in the delivery of mental health care in the CDCR

16  prisons.").

17      Additionally, the Special Master's most recent report identifies numerous areas

18  where Defendants continue to struggle to reach constitutional standards in the delivery of

19  mental health care, even where the same issue has been raised in report after report.  *See,*

20  *e.g.*, Report at 42, ("Generally, the 12 monitored institutions continued to struggle with

21  reaching compliance with completion of pre-administrative segregation placement

22  screens."); *id.* ("Institutions also continued to struggle to achieve compliance with

23  completion of post-placement 31-question screens in a confidential setting for newly

24  arrived inmates in administrative segregation."); *id.* at 53 ("Access to acute care beds

25  continued to be slow in many cases."); *id.* at 116 ("Transfer data from the few prisons that

26  managed to maintain complete [Department of Mental Health] logs confirmed continued

27  poor compliance in this area."); *id.* at 54 ("Local audits [at Salinas Valley State Prison]]

28  continued to show noncompliance with 24-hour custodial monitoring following release

[652693-6]

1  from an MHCB or holding area."); *id.* at 167 ("Continued use of treatment modules on the

2  dayroom floor [in administrative segregation at North Kern State Prison] did not afford

3  confidentiality for contacts taking place there."); *id.* at 186 ("Treatment plans [from

4  California State Prison – Los Angeles County IDTTS] continued to be comprised of

5  primarily medication management, without sufficient individualization and specific

6  treatment interventions apart from medications."); and *id.* at 221 ("The disparity in

7  programming between the two mainline EOP programs at RJD—SNY and non-SNY—

8  continued during the reporting period.").  Further, the suicide rate among CDCR

9  institutions remains dangerously high.  Based on information provided by Defendants for

10  the time period between January 1, 2011 and December 31, 2011, Plaintiffs estimate the

11  completed suicide rate within CDCR to be 20.62 per 100,000 prisoners.  Declaration of

12  Laura Boysen-Aragon in Support of Plaintiffs Response to Defendants' Objections to the

13  Special Master's Twenty-Fourth Round Monitoring Report on Defendants' Compliance

14  with Provisionally Approved Plans, Policies, and Protocols ("Boysen-Aragon Decl.") ¶ 4.

15  In the face of so many instances of persistent non-compliance in wide-ranging areas,

16  Defendants have no basis to argue that their current quality assurance processes are

17  sufficient to attain and maintain adequate compliance.

18      Rather than object to the Special Master's recommendation, Defendants should

19  welcome such a recommendation and offer for collaboration as an opportunity to move

20  closer to constitutional standards and compliance with the *Coleman* Program Guide

21  standards.  As the Special Master recognizes in his Report, "[t]he ultimate goal of *Coleman*

22  monitoring …[is]  to eventually render itself obsolete as more and more institutions attain

23  adequate compliance levels and are prepared to assume self-monitoring responsibilities."

24  Docket No. 4205 at 62.  The Special Master has offered the assistance of his team of

25  experts and the assistance of Plaintiffs' counsel to help Defendants put in place an

26  adequate quality assurance process that could ultimately assume such "self-monitoring

27  responsibilities."  It defies reason that Defendants would object to such an offer, which is

28  in their best interest.

[652693-6]

**II.     THE SPECIAL MASTER'S RECOMMENDATION FOR THIS ORDER IS REASONABLE, EFFICIENT AND NECESSARY**

Defendants' second argument that the Special Master's requested order is "unnecessary and … counterproductive" is without merit.  Defs.' Objections, Docket No. 4212 at 2.  First, the Special Master's recommendation is based on extensive review of relevant conditions and a transparent, collaborative process with his own experts and the parties.  The evidence in the record fully supports the Special Master's recommendation. As identified by this Court's Order of Reference, "[t]he principal responsibilities of the special master … are to provide expert advice to defendants to ensure that their decisions regarding the provision of mental health care to class members conforms to the requirements of the federal constitution and to advise the court regarding assessment of defendants' compliance with their constitutions obligations."  December 11, 1995, Docket No. 640 at 2.

Additionally, the order is necessary because Defendants continue to refuse to take action or consistently and reliably work with the Special Master in the absence of court orders.  Defendants' recent "accomplishments to date in addressing the problems in access to inpatient mental health care" (Order, July 13, 2012, Docket No. 4214) were the result of years of meeting and conferring with the Special Master and Plaintiffs on the same subject, and ultimately occurred only following several specific court orders issued over the objections of Defendants.  *See, e.g.,* Order, August 15, 2011, Docket No. 4069 at 7 (ordering Defendants to work with the Special Master to "develop and fully implement an adequate referral process that will ensure that all class members in need of inpatient care are timely identified, referred, and transferred to such care"); Order, March 31, 2010, Docket No. 3831 at 3 (ordering Defendants to work with the Special Master to "develop a plan to reduce or eliminate the wait lists for inpatient care and, in the interim, to better serve the needs of Coleman class members placed on such lists.").

Second, Defendants' argument that the Special Master's recommendation is duplicative of the Receiver's implementation of a CDCR health care quality assurance

1   process is flawed. Defendants cannot rely on the receivership to solve the problems of this

2   litigation. The Special Master, and not the Receiver, is tasked to work with Defendants

3   and Plaintiffs to address the constitutional violations in the *Coleman* case. *See* Order of

4   Reference, Docket No. 640. Additionally, the Special Master specifically addressed

5   Defendants' argument in the Report and stated that "[t]he Special Master intends to utilize

6   the coordination process to the fullest extent possible to facilitate the creation of a quality

7   improvement process for mental health that is consistent and harmonious with the

8   receiver's quality assurance process and in no way unnecessarily duplicates it or conflicts

9   with it." Report at 67, n.10, Docket No. 4205. The Special Master's recommendation is

10  not only necessary, but it is narrowly drawn, and is the least intrusive means necessary to

11  achieve a critical component of a constitutionally adequate system.

12  **III.    THE COURT SHOULD NOT CONSIDER DEFENDANTS' OBJECTION**
         **BECAUSE IT DOES NOT COMPLY WITH REQUIREMENTS**
13       **ESTABLISHED BY THIS COURT**

14          On May 9, 2012, Defendants submitted comments and objections by email to the

15  Special Master regarding the Special Master's draft Twenty-Fourth Monitoring Report on

16  Defendants' Compliance with Provisionally Approved Plans, Policies, and Protocols

17  ("Defs.' Objections to Draft," attached as **Exhibit A** to Boysen-Aragon Decl.). In that

18  document, Defendants acknowledge the Special Master's recommendation that "the Court

19  issue an order instructing Defendants to 'review and assess their existing quality assurance

20  process, and to develop an improved quality improvement process by which it can develop

21  and address issues within the quality of care that is delivered.'" Defs.' Objections to Draft

22  at 1. However, Defendants failed to state any *objections* to the Special Master's

23  recommendation, including the guidance by the Special Master and participation of

24  *Coleman* Plaintiffs' counsel in such a process. In fact, Defendants stated that they are

25  "willing to evaluate and improve their system for providing care in cooperation with the

26  Special Master." *Id.*

27          The Order of Reference clearly holds that "[t]he court will entertain no objections to

28  the report unless an identical objection was previously submitted to the special master in

6

[652693-6]

the form of a specific written objection." Order of Reference, Docket No. 640, ¶ C. Because Defendants did *not* previously submit an identical objection—or any objection whatsoever—to the Special Master in response to the draft report, the Court should not consider such an objection when first presented to this Court, in response to the Special Master's final report.

## CONCLUSION

For all the above reasons, Defendants' Objections to the Special Master's Twenty-Fourth Round Monitoring Report on Defendants' Compliance with Provisionally Approved Plans, Policies, and Protocols should be denied.


DATED:  July 20, 2012                      Respectfully submitted,

                                           ROSEN BIEN GALVAN & GRUNFELD LLP


                                           By:  */s/ Laura Boysen-Aragon*
                                                Laura Boysen-Aragon

                                           Attorneys for Plaintiffs