DONALD SPECTER – 083925
STEVEN FAMA – 099641
PRISON LAW OFFICE
1917 Fifth Street
Berkeley, California 94710-1916
Telephone: (510) 280-2621

MICHAEL W. BIEN – 096891
ERNEST GALVAN – 196065
JANE E. KAHN – 112239
LISA ELLS – 243657
AARON J. FISCHER – 247391
LAURA BOYSEN-ARAGON – 248083
ROSEN BIEN GALVAN &
GRUNFELD LLP
315 Montgomery Street, Tenth Floor
San Francisco, California 94104-1823
Telephone: (415) 433-6830

CLAUDIA CENTER – 158255
THE LEGAL AID SOCIETY –
EMPLOYMENT LAW CENTER
180 Montgomery Street, Suite 600
San Francisco, California 94104-4244
Telephone: (415) 864-8848

WARREN E. GEORGE – 053588
BINGHAM McCUTCHEN LLP
Three Embarcadero Center
San Francisco, California 94111-4066
Telephone: (415) 393-2000

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>EDMUND G. BROWN, Jr., et al.,<br><br>Defendants. | Case No. Civ S 90-0520 LKK-JFM<br><br>**DECLARATION OF LAURA BOYSEN-ARAGON IN SUPPORT OF PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTIONS TO THE SPECIAL MASTER'S TWENTY-FOURTH ROUND MONITORING REPORT ON DEFENDANTS' COMPLIANCE WITH PROVISIONALLY APPROVED PLANS, POLICIES, AND PROTOCOLS** |

I, Laura Boysen-Aragon, do hereby declare as follows:

1.   I am an attorney admitted to practice law in California, a member of the State Bar of California, and of this Court. I am an associate attorney in the law firm Rosen Bien Galvan & Grunfeld. I have personal knowledge of the matters set forth herein and if called as a witness, I could competently so testify. I make this declaration in support of Plaintiffs' Response to Defendant's Objections to the Special Master's Twenty-Fourth

1  Round Monitoring Report on Defendants' Compliance with Provisionally Approved Plans,
2  Policies, and Protocols.

3      2.    Attached as **Exhibit A** is a true and correct copy of Defendants' Comments
4  and Objections to the Special Master's Draft Twenty-Fourth Monitoring Report.  This
5  document was sent via email by Defendants to Michael W. Bien and Jane E. Kahn in our
6  office on May 9, 2012.  Michael Bien forwarded the same email and attachment to me on
7  May 9, 2012.

8      3.    Our law firm tracks all suicides of California Department of Corrections and
9  Rehabilitation ("CDCR") prisoners.  As part of monitoring processes in the *Coleman* case,
10 Defendants inform Special Master Lopes and our office of each suicide of a CDCR
11 prisoner.  Our office compiles the name and other relevant data for each CDCR prisoner
12 who dies by suicide based on Defendants' suicide notifications and suicide reports.  Our
13 office also cross-checks the data provided by Defendants and the Special Master with other
14 available information, and makes adjustments to our data as appropriate to obtain suicide
15 data that is as accurate as possible.  According to our current suicide tracking data,
16 between January 1, 2011 and December 31, 2011 there were at least 33 suicides in the
17 CDCR.

18     4.    I have reviewed CDCR's Average Daily Prison Population for Calendar
19 Year 2011, dated January 2012 and available on CDCR's website at
20 http://www.cdcr.ca.gov/Reports_Research/Offender_Information_Services_Branch/
21 Annual/IPOP2/IPOP2d1112.pdf (last viewed July 20, 2012).  Based on that document, the
22 average daily prison population in the CDCR during calendar year 2011 was 160,071
23 prisoners.  Based on my review of available data, I have calculated that, between
24 / / /
25 / / /
26 / / /
27 / / /
28 / / /

[654566-4]

1  January 1, 2011 and December 31, 2011, the CDCR completed suicide rate was 20.62 per
2  100,000 prisoners.
3     I declare under penalty of perjury under the laws of California and the United
4  States, that the foregoing is true and correct, and that this declaration is executed in San
5  Francisco, California this 20th day of July, 2012.

7     */s/ Laura Boysen-Aragon*
   Laura Boysen-Aragon

[654566-4]

3
DECL. BOYSEN-ARAGON ISO PLS.' RESPONSE TO DEFS.' OBJECTIONS TO SPECIAL MASTER'S 24TH ROUND MONITORING REPORT ON DEFS.' COMPLIANCE WITH PROVISIONALLY APPROVED PLANS, POLICIES, & PROTOCOLS

# EXHIBIT A

[239657-1]



**KAMALA D. HARRIS**
*Attorney General*

**State of California**
**DEPARTMENT OF JUSTICE**

1300 I STREET, SUITE 125
P.O. BOX 944255
SACRAMENTO, CA  94244-2550

Public:  (916) 445-9555
Telephone:  (916) 324-2445
Facsimile:  (916) 324-5205
E-Mail:  William.Downer@doj.ca.gov

May 9, 2012

<u>Via E-Mail</u>

Matthew A. Lopes, Jr., Special Master
Pannone Lopes & Devereaux, LLC
317 Iron Horse Way, Suite 301
Providence, RI  02908

RE:   *Coleman v. Brown*
<u>U. S. District Court, Eastern District of California, Case No. 2:90-cv-00520 LKK JFM P</u>

Dear Mr. Lopes:

     Defendants have received the Special Master's draft Twenty-Fourth Monitoring Report on Defendants' Compliance with Provisionally Approved Plans, Policies, and Protocols (Report).  Without waiving any legal rights, immunities, or limitations under the PLRA, Defendants offer the following comments and objections concerning your report in three areas of concentration:  quality assurance process, overall, and specific institution reports.

**I.**  **<u>Recommendation Concerning the Division of Correctional Health Care Services' Quality Assurance Process.</u>**

     The Report recommends that the Court issue an order instructing Defendants to "review and assess their existing quality assurance process, and to develop an improved quality improvement process by which it can develop and address issues within the quality of care that is delivered . . ." and that this process should be implemented under the guidance of the Special Master and with the participation of the *Coleman* plaintiffs over a period of six months.  (Report pp. 62-63.)  While Defendants believe that their current quality assurance process is constitutional, they are willing to evaluate and improve their system for providing care in cooperation with the Special Master.

     Currently, the Receiver in *Plata v. Brown* is implementing a comprehensive remodeling and revision of CDCR's health care quality assurance process, of which mental health's quality assurance process is a subset.  These revisions reflect the Receiver's and the State's goal of integrating all three health care disciplines—medical, mental health, and dental—under one administrative system.  In his Nineteenth Tri-Annual Report, the Receiver states that his process is in the "final" stage of development.  (Nineteenth Triannual Report, Dkt. 4145-1 p.16.)

Matthew A. Lopes, Jr.
May 9, 2012
Page 2

Defendants therefore invite the Special Master to review the revised quality assurance process in coordination with CDCR and the Receiver. This coordination will allow the quality assurance process to be evaluated without duplicating planned revisions or creating conflicting systems.[1]

## II. Overall Objections to Report.

Defendants renew all past objections to the scope, length, and timeliness of the monitoring report. Defendants specifically object to: (1) areas of monitoring and reporting that overlap with the *Plata* Receiver's oversight of staffing and hiring issues, medication management, medical record-keeping, and use of information technology, to the extent that the Special Master's monitoring is duplicative; and (2) the lack of clear benchmarks and qualitative analysis designed to assist Defendants in achieving program guide requirements. Defendants also object to the Report's criticism of the quality of document production of the institutions on paper review as there was no substantive reporting of those institutions.

## III. Comments and Objections Regarding Specific Institutions and Inmates.

### A. California Correctional Institution (CCI).

Defendants request that the following statement be deleted as inaccurate: "CCI reported a compliance rate of 46 percent for clinical five-day follow-up for inmates returning to regular housing following discharges from the MHCB unit or the OHU." (Report p. 188, ¶ 1.) According to CCI's audits and logs, it conducted clinical five-day follow-ups 100% of the time.

Defendants request that the statement "CCI did not have a governing body," be deleted. (*Id.* at p. 32, ¶ 3.) CCI does not need a governing body because it does not have a Mental Health Crisis Bed unit.

Defendants request that CCI be excluded from the list of institutions that were considered "noncompliant" in completing "post-placement 31-question screens in a confidential setting for newly arrived inmates in administrative segregation." (*Id.* at p. 38, ¶ 1.) According to CCI's logs and audits, it completed the post-31-question screens in a confidential setting 94% of the time.

### B. California State Prison, Los Angeles County (LAC).

The Report states that 4 of the 6.25 recreation therapy positions were vacant. (*Id.* at p. 169, ¶ 5.) LAC's Chief of Mental Health reports that four of the recreation therapy positions were filled. Please verify that the reported vacancy rate for recreation therapists is accurate.

---

[1] Defendants do not waive any legal rights or limitations under the Prison Litigation Reform Act by inviting the Special Master to review and assess their quality assurance process in coordination with the *Plata* Receiver.

Matthew A. Lopes, Jr.
May 9, 2012
Page 3

      The Report also states that "LAC continued to utilize . . . six cells in administrative segregation unit A4 as alternative housing for inmates awaiting placement in an MHCB." (*Id.* at p. 178, ¶ 2.) LAC's Chief of Mental Health reports that LAC is using seven cells in administrative segregation as alternative housing for inmates awaiting placement in a MHCB.

      **C.**      **North Kern State Prison (NKSP).**

      Defendants note that the heading date on page 152 should be changed from "September 7, 2001-September 9, 2011" to September 7, 2011-September 9, 2011."

      **D.**      **R.J. Donovan Correctional Facility (RJD).**

      The Report includes the following statement: "[t]he institution reported two active QITs during the reporting period. One examined a fence proposal for the mainline EOP Yard, another covered IDTT correctional counselor assignments and duties." (*Id.* at p. 209, ¶ 6.) RJD reports that it conducted and tracked forty-one action items during the reporting period. This tracking spreadsheet was provided to the monitors. Defendants request that the following statement be added to the Report: "During the reporting period RJD was active in quality improvement and tracked 41 QITs on an action item spreadsheet."

      Defendants request that the following statement be corrected: "Institutional audits indicate that only 25 percent of 7388-Bs had documented reasons for non-referral and alternative interventions." (Report p. 214, ¶ 1.) The Report conflates the sample size of each monthly audit of 7388B non-referral documentation with the percentage of 7388B forms that contained documented reasons for non-referral and alternative interventions. The monthly sample size was 25. On average, 71% of 7388B forms submitted during the reporting period contained documented reasons for non-referral and alternative interventions.

      Defendants request that the following statement be removed: "Cell-front contacts were not tracked by the institution." (Report p. 216, ¶ 4.) RJD tracks cell-front contacts using MHTS.net. During the monitoring round, RJD clinicians observed that a portion of clinician contacts that were conducted at cell front were not properly coded as cell-front contacts when inputted to MHTS.net. This miscoding was corrected and explained to the monitors by staff.

      Defendants request that you clarify the following statement: "Correctional counselors were unfamiliar with pertinent information about inmates." (*Id.* at p. 217, ¶ 3.) Please describe the nature of the "pertinent information" with which correctional counselors were unfamiliar. Further, this assessment is inconsistent with RJD's observations of the MHCB IDTT meeting. According to clinical staff, the correctional counselors in attendance participated by bringing the inmates' central files to the meeting and providing other information about the inmates to attendees. For instance, one clinician observed that when one of the patients identified his fear of deportation to Laos as the primary trigger for his suicidal ideation, a counselor intervened to explain that deportation would not occur.

      Defendants request that you review and verify the accuracy of the following statement:

Matthew A. Lopes, Jr.
May 9, 2012
Page 4

"During the [MHCB IDTT] meetings, the institution continued to treat MHCB inmates as administrative segregation inmates by placing them in treatment modules and keeping the handcuffs on during the IDTT process.  Neither custody nor mental health staff had knowledge of the recent central office policy regarding this issue." (*Id.* at p. 217, ¶ 2.)  This statement is inconsistent with clinical staff's observations of the MHCB IDTT meetings.  According to staff, only three of six inmates were handcuffed.  And the cuffing of these inmates was consistent with their cuffing chronos and statewide policy.

      Defendants request that you review the following statement to ensure it is accurate: "Only two of seven inmates agreed to attend the IDTT meeting." (Report p. 217, ¶3.)  This statement is inconsistent with RJD's DMH Screening Log, which shows that a total of six inmates were reviewed in IDTT on January 23, 2012.  Clinical staff observed five of six inmates who were scheduled to appear at the IDTT meeting actually attended.  This observation was corroborated by the inmates' interdisciplinary progress notes, which indicated that five of the six inmates attended the IDTT meeting.  Accordingly, please revise your Report to state the following: "A total of six inmates were reviewed at IDTT.  Of these, five attended the IDTT.  One inmate was unable to attend because he was receiving medical treatment."

## IV.     Conclusion

      Thank you for considering Defendants comments and objections.  Please contact either Deputy Attorney General Debbie Vorous or me if you have any questions, concerns, or suggestions regarding the comments and objections asserted in this letter.

                        Sincerely,

                        */s/ William H. Downer*

                        WILLIAM H. DOWNER
                        Deputy Attorney General

             For    KAMALA D. HARRIS
                        Attorney General

CF1997CS0003
20499937.docx