IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RALPH COLEMAN, et al.,

      Plaintiffs,                    No. 2:90-cv-0520 LKK JFM P

     vs.

EDMUND G. BROWN, JR., et al.,

      Defendants.               <u>ORDER</u>

_____/

        On July 2, 2012, the Special Master filed his Twenty-Fourth Round Monitoring Report. The report contains one recommendation, as follows:

> [T]he special master recommends that the *Coleman* court enter an order requiring defendants to review and assess their existing quality assurance process, and to develop an improved quality improvement process by which it can address issues with the quality of the care that is delivered, as described above. The quality improvement process should be developed from the standpoint of it being the beginning of a transition by CDCR into self-monitoring by its own DCHCS. It should include, but not be limited to, the development of a process for improved document production for institutional paper reviews, so that the provided information is clear, consistent, responsive to the special master's document request, and useful for the assessment of institutional levels of compliance. The defendants' review and assessment of their existing quality assurance process, and the development of an improved quality improvement process, should be carried out under the guidance of the special master and his staff, with

/////

1

1   participation and input of the *Coleman* plaintiffs, during the six-
2   month period following the entry of such order.

3  Twenty-Fourth Round Monitoring Report, filed July 2, 2012, at 66-67.  On July 12, 2012,
4  defendants filed objections to the recommendation.  Plaintiffs filed a response to defendants'
5  objections on July 20, 2012, and on August 3, 2012, defendants filed a reply to plaintiffs'
6  response.

7       Defendants raise three objections to the Special Master's recommendation.  First,
8  they contend their "current quality assurance process is constitutionally adequate, and an order
9  directing Defendants to revise a presumptively constitutional process is not needed."
10  Defendants' Objections, filed July 12, 2012, at 1.  Second, they contend that the order "is
11  unnecessary and could be counterproductive" because of steps the Receiver in Plata v. Brown,
12  No. 01-1351 TEH (N.D.Cal.) is taking to implement a "comprehensive remodeling and revision
13  of CDCR's health care quality assurance process, of which mental health's quality assurance
14  process is a subset." Id. at 2.  Third, defendants state their willingness to work with the special
15  master to "improve the quality assurance process without a court order."  Id.

16       Pursuant to paragraph C of this court's December 11, 1995 order of reference,
17  which outlines the duties and powers of the Special Master in this action, this court will not
18  entertain any objection to the Special Master's report "unless an identical objection was
19  previously submitted to the special master in the form of a specific written objection . . . ."
20  Order of Reference, filed December 11, 1995, at 8.  With their response to defendants'
21  objections, plaintiffs have filed a copy of the written "comments and objections" submitted by
22  defendants to the Special Master after the parties received his draft Twenty-Fourth Round
23  Monitoring Report.  Ex. A to Declaration of Laura Boysen-Aragon, filed July 20, 2012, at 1.
24  The "comments and objections" contain no objection to issuance of the recommended order.
25  Instead, defendants offered comments, as follows:
26  /////

### I. Recommendation Concerning the Division of Correctional Health Care Services' Quality Assurance Process.

The Report recommends that the Court issue an order instructing Defendants to "review and assess their existing quality assurance process, and to develop an improved quality improvement process by which it can develop and address issue within the quality of care that is delivered. . ." and that this process should be implemented under the guidance of the Special Master and with the participation of the *Coleman* plaintiffs over a period of six months. (Report pp. 62-63.) While Defendants believe that their current quality assurance process is constitutional, they are willing to evaluate and improve their system for providing care in cooperation with the Special Master.

Currently, the Receiver in *Plata v. Brown* is implementing a comprehensive remodeling and revision of CDCR's health care quality assurance process, of which mental health's quality assurance process is a subset. These revisions reflect the Receiver's and the State's goal of integrating all three health care disciplines–medical, mental health, and dental–under one administrative system. In his Nineteenth Tri-Annual Report, the Receiver states that his process is in the "final" stage of development. (Nineteenth Triannual Report, Dkt. 4145-1 p.16.) Defendants therefore invite the Special Master to review the revised quality assurance process in coordination with the CDCR and the Receiver. This coordination will allow the quality assurance process to be evaluated without duplicating planned revisions or creating conflicted systems.

Id. at 1-2. In a footnote, defendants added that they "do not waive any legal rights or limitations under the Prison Litigation Reform Act by inviting the Special Master to review and assess their quality assurance process in coordination with the *Plata* Receiver." Id. at 2 n.1.

Nothing in the foregoing constitutes an objection to issuance of the order recommended by the Special Master.[1] Indeed, the comments suggest acquiescence in the recommended order. The principal purpose of the requirement that the parties tender an identical objection to the special master prior to raising it with the court is to give the Special Master an opportunity to address all objections before a final report is filed. Considerations of

---

[1] The "comments and objections" tendered to the Special Master contains three sections. Section I, which is set forth in its entirety above, nowhere contains any reference to an objection. In contrast, Section II is identified as "Overall Objections to Report" and Section III is identified as "Comments and Objections Regarding Specific Institutions and Inmates." Id. at 2.

both judicial economy and fairness inform this requirement.  The court is aided immeasurably by the Special Master's monitoring reports and by his consideration of all objections tendered to his draft reports and recommendations.  Defendants did not raise with the Special Master their objection that the recommended order should not be issued.  For that reason, their objections to its issuance will not be entertained by this court.[2]

The Special Master's Twenty-Fourth Round Monitoring Report and the findings and recommendation contained therein will be adopted in full.  At this late stage in this case, the court wants to emphasize in particular its complete concurrence with the Special Master's finding that "[a]n important goal of the remedial phase of this case is, . . ., for CDCR itself to assume the mantle of ultimate responsibility for diagnosing of its own problems, i.e. conduct its own 'qualitative analysis,' and create a quality improvement process that it can use to achieve

/////

---

[2]Defendants' "Overall Objections" to the draft Twenty-Fourth Round Monitoring Report were as follows: "Defendants renew all past objections to the scope, length, and timeliness of the monitoring report.  Defendants specifically object to:  (1) areas of monitoring and reporting that overlap with the *Plata* Receiver's oversight of staffing and hiring issues, medication management, medical record-keeping, and use of information technology, to the extent that the Special Master's monitoring is duplicative; and (2) the lack of clear benchmarks and qualitative analysis designed to assist Defendants in achieving program guide requirements.  Defendants also object to the Report's criticism of the quality of document production of the institutions on paper review as there was no substantive reporting of those institutions."  Ex. A to Boysen-Aragon Declaration of Laura Boysen-Aragon, at 1.  The Special Master responded to these objections in detail.  See Twenty-Fourth Round Monitoring Report, at 15-19 (addressing defendants' objection to the "scope" of the monitoring report in light of the orders that govern the Special Master's duties in this action and in light of ongoing coordination efforts with, in particular, the receiver in Plata v. Brown, No. 01-1351 TEH (N.D.Cal.)); 22-24 (addressing defendants' objections to the criticism of the quality of document production of institutions on paper review and alleged "lack of clear benchmarks and qualitative analysis designed to assist defendants in achieving program guide requirements"); 24-27 (addressing defendants' objection to the length of the monitoring report); and 28-30 (addressing defendants' objection to the timeliness of the monitoring report).  Defendants have not renewed any of these objections before this court in response to the Twenty-Fourth Round Monitoring Report.

The Special Master's time is a resource that going forward need not be spent on objections that have been raised and, as evidenced by defendants' decision not to tender them to this court, he has resolved.  While the parties are required to raise before the Special Master any objection they intend to raise here, the Special Master is not required to respond to any objections that are frivolous or repetitive of objections that were previously resolved or withdrawn.

4

and maintain compliance, and *move on to eventual removal from federal court oversight.*" Twenty-Fourth Round Monitoring Report at 65 (emphasis added).

        The Special Master's role in guiding the remedial process has been invaluable. Most recently, that guidance, together with the cooperation of the parties and diligent efforts by defendants, has led to significant breakthroughs in what previously seemed intractable problems with access to inpatient mental health care. The court expects and anticipates the same level of focus and diligence to be brought to the tasks that remain in the remedial phase of this litigation.[3]

        In accordance with the above, IT IS HEREBY ORDERED that:

        1. The Special Master's Twenty-Fourth Round Monitoring Report and the findings and recommendation contained therein are adopted in full; and

        2. Defendants shall review and assess their existing quality assurance process, and shall develop an improved quality improvement process by which they can address issues with the quality of the care that is delivered, as described in the Special Master's Twenty-Fourth Round Monitoring Report. The quality improvement process shall be developed from the standpoint of it being the beginning of a transition by CDCR into self-monitoring by its own DCHCS. It shall include, but not be limited to, the development of a process for improved document production for institutional paper reviews, so that the provided information is clear,

---

[3] In his Twenty-Second and Twenty-Third Round Monitoring Reports, the Special Master identified "seven general goals" for the defendants. Defendants have made substantial progress on one of those goals with the recent elimination of the inpatient wait list. The first goal identified in each report pertains to suicide prevention. See Twenty-Third Round Monitoring Report, filed December 1, 2011, at 74; Twenty-Second Round Monitoring Report, filed March 9, 2011, at 461-2. There were 346 suicides among CDCR inmates in the years from 2000 through 2010. See Report on Suicides Completed in the California Department of Corrections and Rehabilitation in Calendar Year 2010, filed November 9, 2011, at 5. The Special Master has informed the court that there were 33 suicides in 2011 and there have been 24 suicides to date in 2012. The total of 403 suicides in that period represents an average of approximately 1 suicide every 11.5 days. The other goals identified by the Special Master include review of and compliance with orders and standards applicable to administrative segregation, completion of construction of mental health beds and treatment space, full implementation of defendants' mental health staffing plan, and refinement and full implementation of MHTS.net. Meeting each of these goals is critically important.

consistent, responsive to the Special Master's document request, and useful for the assessment of institutional levels of compliance.  The defendants' review and assessment of their existing quality assurance process, and the development of an improved quality improvement process, shall be carried out under the guidance of the Special Master and his staff, with participation and input of the *Coleman* plaintiffs, during the six-month period following the entry of this order.

DATED:   August 30, 2012.

_____
LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT