KAMALA D. HARRIS
Attorney General of California
JONATHAN L. WOLFF
Senior Assistant Attorney General
JAY C. RUSSELL
Supervising Deputy Attorney General
DEBBIE VOROUS, State Bar No. 166884
PATRICK R. MCKINNEY, State Bar No. 215228
Deputy Attorneys General
  455 Golden Gate Avenue, Suite 11000
  San Francisco, CA 94102-7004
  Telephone: (415) 703-3035
  Fax: (415) 703-5843
  E-mail: Patrick.McKinney@doj.ca.gov
*Attorneys for Defendants*

Hanson Bridgett LLP
JERROLD C. SCHAEFER, State Bar No. 39374
PAUL B. MELLO, State Bar No. 179755
WALTER R. SCHNEIDER, State Bar No. 173113
SAMANTHA D. WOLFF, State Bar No. 240280
  425 Market Street, 26th Floor
  San Francisco, California 94105
  Telephone: (415) 777-3200
  Fax: (415) 541-9366
  E-mail: pmello@hansonbridgett.com

# IN THE UNITED STATES DISTRICT COURTS

## FOR THE EASTERN DISTRICT OF CALIFORNIA

## AND THE NORTHERN DISTRICT OF CALIFORNIA

## UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

## PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| **RALPH COLEMAN, et al.,**<br><br>                Plaintiffs,<br><br>    v.<br><br>**EDMUND G. BROWN JR., et al.,**<br><br>                Defendants. | 2:90-cv-00520 LKK JFM P<br><br>**THREE-JUDGE COURT** |
| **MARCIANO PLATA, et al.,**<br><br>                Plaintiffs,<br><br>    v.<br><br>**EDMUND G. BROWN JR., et al.,**<br><br>                Defendants. | C01-1351 TEH<br><br>**THREE-JUDGE COURT**<br><br>**DEFENDANTS' RESPONSE AND MOTION TO STRIKE PLAINTIFFS' "APPLICATION FOR LIMITED DISCOVERY AND ORDER TO SHOW CAUSE RE CONTEMPT"** |

## I. INTRODUCTION.

The suggestion that Defendants are in contempt is nonsense for at least three reasons.

First, Defendants have repeatedly expressed their commitment not to deviate from the existing population-reduction order without proper court authority. While it is true that Defendants plan on moving to modify the existing order, they believe there will be compelling reasons to grant such a motion, and it is hardly contemptuous for Defendants to have informed the Court early that such a motion is being contemplated.

Second, far from acting contemptuously, Defendants have done more than any other California officials in recent decades to sensibly reduce prison population levels and improve prison conditions. In fact, Defendants have timely complied with the first two population benchmarks and are on track to comply with the upcoming December benchmark. This compliance is a result of the extraordinary efforts the Defendants have taken to safely, quickly, and dramatically reduce California's prison population.

Third, as discussed in Defendants' August 17 filing, even if the modification motion is denied, Defendants can comply with the existing population-reduction order by continuing to house inmates in out-of-state facilities. (*See* Dkt. Nos. 2463/4226.) Although this is a far-worse alternative than the contemplated modification of the final benchmark because it relocates inmates far from their communities, is expensive, and is unnecessary in light of the vast improvements Defendants have made to prison health care, it is nevertheless an available option.

Plaintiffs' accusation that Defendants never intended to comply with the Court's order is fanciful. The truth is that California has been taking extraordinary steps to bring down the prison population in compliance with the Court's order *and* to improve prison health care as well as many other prison operations and programs. Current estimates indicate that the State will achieve timely compliance with the December 2012 benchmark and fall less than 3,000 inmates short of the June 2013 benchmark. The State deserves credit for programs that will have reduced the prison population by more than 47,000 inmates since 2006, including orchestrating realignment, which will have shifted more than 29,000 inmates to the local level by June 2013. The State will also have satisfied the first three population targets on time or early, and will have brought the

population to within just a few thousand inmates of satisfying the last target. In comparison to the magnitude of the overall prison population and the population reduction, the projected difference in June is insignificant.

This does not mean that the State can ignore the June target, nor does it intend to. It just means that the significant accomplishments and improvements are having far greater positive impacts on prison health care than any potential negative impact associated with this relatively minor shortfall. Those positive impacts give Defendants every reason to believe that once the prison population reaches 145% of design capacity, they will be able to establish that the existing target no longer remains necessary or appropriate. *See Brown v. Plata*, 131 S. Ct. 1910, 1947 (2011) (the order "must remain open to appropriate modification").

There is no basis for contempt or the discovery sought by Plaintiffs' counsel—Defendants have not violated any court order and are continuing to reduce the prison population while building upon the substantial improvements already made to prison health care. The Court should deny Plaintiffs' application.

## II. DEFENDANTS HAVE FULLY COMPLIED WITH THIS COURT'S ORDERS.

### A. Defendants Have Taken All Necessary Steps to Comply With the Court's Population Reduction Order.

As Defendants previously informed the Court "[t]here is, in our jurisprudence, no doctrine of 'anticipatory contempt.'" *United States v. Bryan*, 339 U.S. 323, 341 (1950); *see also Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000). A party seeking a contempt order must prove by clear and convincing evidence "(1) that [the contemnor] violated the court order, (2) beyond substantial compliance, (3) not based on a good faith and reasonable interpretation of the order, (4) by clear and convincing evidence." *United States v. Bright*, 596 F.3d 683, 694 (9th Cir. 2010). Plaintiffs have not presented any evidence that Defendants violated this Court's population reduction order, nor could they.

Plaintiffs' application is premised on their inaccurate assertion that Defendants intend to act unilaterally without court authorization. Not only have Defendants fully complied with the Court's directives thus far, they have made it perfectly clear that they intend to continue to do so.

1  (Dkt. Nos. 2442/4191 at 2:2-4 & 2447/4203 at 2:11-12.)  Defendants have proceeded
2  appropriately by promptly advising the Court of their current estimates that indicate they may not
3  reach the 137.5% benchmark by June 2013, and that they believe that further population
4  reductions will be unnecessary once the population density reaches 145%.  (Dkt. Nos. 2442/
5  4191, 2447/4203 & 2463/4226.)

6  The Supreme Court expressly authorized Defendants to "move for modification of the
7  three-judge court's order to extend the deadline for the required reduction to five years from the
8  entry of the judgment of this Court . . . ."  *Plata*, 131 S. Ct. at 1947.  Defendants may also move
9  to modify the order before the population density reaches 137.5% if there is no longer a
10 constitutional violation in the delivery of medical or mental health care.  *See id.* at 1923, 1941 &
11 1947.  Defendants' responses to the Court's orders requesting further briefing reflect their effort
12 to work with the Court to appropriately modify the population reduction order in recognition of
13 the systemic health care improvements and the reduced prison population.

14 At this time, Defendants' projections indicate the projected population difference is less
15 than 3,000 inmates.  (*See* 5/7/12 Decl. Martin Hoshino, *Plata* Dkt. No. 2434, Ex. 2 [Blueprint].)
16 Given the current population reduction of more than 42,000 inmates and the insignificance of the
17 projected gap (an average of 89.5 inmates per institution), the Court should have no difficulty
18 extending the final benchmark so that it can decide a modification motion and determine whether
19 the reduction to 137.5% remains necessary.  (*See* Dkt. Nos. 2442/4191 at 6-7.)

20 **B.  Defendants Responded Fully to the Court's Second Order for Further Briefing.**

21 Defendants fully and candidly responded to the Court's August 3 Order.  In it, the Court
22 asked, "By what other means could the prison population be reduced to 137.5% by June 27, 2013?
23 Alternatively, what is the earliest time after that date that defendants contend they could comply
24 with that deadline?"  Defendants informed the Court that:

25     If the Court for some reason disagrees and insists that the final
        benchmark cannot be modified, Defendants' only method of
26      achieving the 137.5% target, without the early release of prisoners
        or further legislative action to shorten prison time, would be to
27      maintain the out-of-state program.  (*See* Meier Decl., ¶¶ 5 & 6.)  If
        the Court were to order that the current out-of-state capacity be
28      maintained and waived the associated state laws, the prison
        population should reach 137.5% by December 31, 2013.  (*Id.*)

3

Defs.' Resp. and Mot. to Strike Pls.' "Application for Limited Discovery and Order to Show Cause Re Contempt"
Case Nos. 2:90-cv-00520 LKK JFM P & C01-1351 TEH

(Dkt. Nos. 2463/4226 at 12:22-27.)

Defendants also explained that, by implementing the Blueprint, the State will be able to continue to provide constitutionally adequate healthcare at a population density of 145%, and conserve resources by returning inmates that the State is paying to house in other states. (*Id.* at 12.) Housing California inmates in other states, far from their communities and families, is not an ideal practice. (*See* Blueprint.) And continuing to dedicate valuable taxpayer dollars to house inmates out of state is not in California's best interests, especially in these difficult financial times. (*See id.*) The State should be allowed to implement its plan to bring down the out-of-state program. But if the Court were to deny the contemplated modification motion, Defendants have made clear that the 137.5% level can be achieved by maintaining the out-of-state program. (*See* Dkt. Nos. 2463/4226.)

### III. PLAINTIFFS HAVE NO RIGHT TO THE EXTENSIVE DISCOVERY THEY SEEK.

The Supreme Court, this Court, and Plaintiffs all previously recognized that the State retains discretion over the methods necessary to reduce the prison population.

> Proper respect for the State and for its governmental processes require that the three-judge court exercise its discretion to accord the State considerable latitude to find mechanisms and make plans to correct the violations in a prompt and effective way consistent with public safety.

*Plata*, 131 S. Ct. at 1946. This Court has recognized its "limited role" and the need to "afford the State maximum flexibility in its efforts to achieve the constitutionally required prison population reduction." (Dkt. Nos. 2287/3767 at 2-3; *see also Plata*, 131 S. Ct. at 1940 ["The order of the three-judge court gives the State substantial flexibility to determine who should be released."].) Even Plaintiffs previously acknowledged that "the Court should leave to the State the discretion and flexibility to choose which methods it uses to accomplish the reduction, and to modify those methods as necessary to achieve the required population reduction." (Pls.' 12/7/09 Resp. to Defs.' 11/12/09 Population Reduction Plan, Dkt. Nos. 2280/3742, at 1.)

The burdensome discovery proposed by Plaintiffs is contrary to the discretion and flexibility properly afforded to the State. On page 2 of the application, Plaintiffs admit the improper and irrelevant reasons for which they seek their proposed discovery: (1) "to determine

what steps Defendants have taken to comply with the Court's June 30, 2011 and August 3, 2012 Order," and (2) "what other measures could be taken to safely meet the population reduction deadlines." Similarly, Plaintiffs seek discovery so that their expert "can form an opinion on the measures needed to reach 137.5% by June 27, 2013."[1]

Plaintiffs' first stated reason—to determine what Defendants have done to comply with the population reduction order—is an improper attempt to second-guess Defendants' population reduction efforts. The requests for population projections, estimates, and trends also reflect Plaintiffs' erroneous premise that neither the percentage nor the timing of this Court's final benchmark can be changed. These documents are not relevant in the contemplated modification proceedings, which focus on actual changes, or to any issue before the Court. Plaintiffs also have no need for these documents since Defendants have presented a plan that would achieve the 137.5% benchmark by December 2013. (Dkt. Nos. 2463/4226 at 12.) Moreover, if the population is not reduced to 137.5% by June 2013, the remedy is an extension of time or modification of the final benchmark. *Plata*, 131 S. Ct. at 1923, 1941 & 1947.

There is also no basis for requiring Defendants to respond within 14 days to extraordinarily burdensome requests for production or other discovery concerning "what other measures could be taken to safely meet the population reduction deadlines." The specific measures adopted to reduce the prison population are "to be determined by the State," not Plaintiffs, their counsel, or their experts. *Id.* at 1939; *see id.* at 1941 ("The State . . . may decide what steps to take to achieve the necessary reduction."). Plaintiffs' proposed discovery is thus irrelevant, and responding to these unduly overbroad requests would be costly and counterproductive.

---

[1] Plaintiffs' disingenuous contention that the discovery sought is "limited" is belied by even a brief review of their proposed requests. For example, Request No. 1 broadly seeks everything about a number of pieces of legislation, including "ALL DOCUMENTS and COMMUNICATIONS . . . RELATED to . . . Assembly Bill 109, signed into law on April 4, 2011." Moreover, Request No. 4 ("ALL DOCUMENTS and COMMUNICATIONS that REFER or RELATE to . . . preparing all of the Status Reports filed by YOU . . .") appears to seek a category of documents protected by the attorney-client and attorney work product privileges.

### IV. THE STATUS CONFERENCE PROPOSED BY PLAINTIFFS IS UNNECESSARY.

Plaintiffs have not shown any basis for holding Defendants in contempt, and they have no right to the discovery they seek. Accordingly, there is no reason to "hold a status conference in sixty days on Defendants' progress in meeting the population deadlines." (App. at 3.)

### V. CONCLUSION.

Plaintiffs' application is unwarranted and inconsistent with the Supreme Court's opinion, this Court's carefully considered reporting requirements, and this Court's requests for briefing about whether it should commence modification proceedings. Defendants have not violated any order of this Court, and imposing further reporting requirements or permitting Plaintiffs unnecessary, overbroad discovery is unwarranted in light of the progress made to date. Plaintiffs' application should be denied.

Dated: September 5, 2012        HANSON BRIDGETT LLP

                                By: */s/ Paul B. Mello*
                                    PAUL B. MELLO
                                    *Attorneys for Defendants*

Dated: September 5, 2012        KAMALA D. HARRIS
                                Attorney General of California

                                By: */s/ Patrick R. McKinney*
                                    PATRICK R. MCKINNEY
                                    Deputy Attorney General
                                    *Attorneys for Defendants*

SF2007200670
20635775.docx