1   KAMALA D. HARRIS
    Attorney General of California
2   JONATHAN L. WOLFF
    Senior Assistant Attorney General
3   JAY C. RUSSELL
    Supervising Deputy Attorney General
4   DEBBIE VOROUS, State Bar No. 166884
    PATRICK R. MCKINNEY, State Bar No. 215228
5   Deputy Attorneys General
      455 Golden Gate Avenue, Suite 11000
6     San Francisco, CA  94102-7004
      Telephone:  (415) 703-3035
7     Fax:  (415) 703-5843
      E-mail:  Patrick.McKinney@doj.ca.gov
8   Attorneys for Defendants

    Hanson Bridgett LLP
    JERROLD C. SCHAEFER, State Bar No. 39374
    PAUL B. MELLO, State Bar No. 179755
    WALTER R. SCHNEIDER, State Bar No. 173113
    SAMANTHA D. WOLFF, State Bar No. 240280
      425 Market Street, 26th Floor
      San Francisco, California 94105
      Telephone:  (415) 777-3200
      Fax:  (415) 541-9366
      E-mail: pmello@hansonbridgett.com

9

10                    IN THE UNITED STATES DISTRICT COURTS

11                FOR THE EASTERN DISTRICT OF CALIFORNIA

                  AND THE NORTHERN DISTRICT OF CALIFORNIA
12
         UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES
13
             PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE
14

15   **RALPH COLEMAN, et al.,**                    2:90-cv-00520 LKK JFM P

16                               Plaintiffs,       **THREE-JUDGE COURT**

17        v.

18
     **EDMUND G. BROWN JR., et al.,**
19
                                 Defendants.
20

21   **MARCIANO PLATA, et al.,**                   C01-1351 TEH

22                               Plaintiffs,       **THREE-JUDGE COURT**

23        v.

24                                                 **DECLARATION OF MARTIN HOSHINO
                                                   IN SUPPORT OF DEFENDANTS'**
25   **EDMUND G. BROWN JR., et al.,**              **RESPONSE TO SEPTEMBER 7, 2012
                                                   ORDER**
26                               Defendants.

27

28

I, MARTIN HOSHINO, declare as follows:

1.      I am the Undersecretary of Administration and Offender Services for the California Department of Corrections and Rehabilitation (CDCR).  I have been employed in this position since January 2011.  I am competent to testify to the matters set forth in this declaration, and if called upon to do so, I would and could so testify.  I submit this declaration in support of Defendants' Response to the Court's September 7, 2012 Order.

2.      Defendants have timely complied with the three-judge court's first two population benchmarks, which required Defendants to reduce the population in the State's 33 institutions to 167% of design bed capacity by December 27, 2011 and to 155% by June 27, 2012.  Defendants are continuing to quickly and safely reduce the prison population.

3.      In implementing realignment and continuing to reduce the prison population, Defendants have considered numerous options, including the following population reduction measures: (1) diversion of technical parole violators, (2) diversion of low-risk offenders to community corrections, (3) expansion of evidence-based rehabilitative programming, (4) early release through expansion of earned credits, and (5) sentencing reform.

4.      The State has exercised its discretion to implement several of these population reduction measures.  In exercising that discretion, Defendants have made the decision to not release inmates who have not completed their sentence under current law.  Diversion of technical parole violators and diversion of low-risk offenders to community corrections were successfully implemented through public safety realignment under Assembly Bill 109, that went into effect on October 1, 2011.  After CDCR's successful implementation, realignment has had an immediate impact on the prison population.  Since going into effect on October 1, the population in the state's 33 institutions has decreased by more than 24,000 inmates.

5.      As discussed in my declaration submitted to the *Plata* Court on May 7, 2012 (Dkt. No. 2434), realignment has provided California an historic opportunity to create not just a less-crowded prison system, but one that is safer, less expensive, positioned to continue to provide constitutionally adequate health care to inmate-patients, and better equipped to promote rehabilitation.  On April 23, 2012, the state released a plan that builds upon the changes brought

1

Decl. Martin Hoshino Supp. Defendants' Response to September 7, 2012 Order
Case Nos. 2:90-cv-00520 LKK JFM P & C01-1351 TEH

1  by realignment, and delineates, for the first time, a clear and comprehensive blueprint that will

2  enable CDCR to substantially comply with various court mandates and achieve better correctional

3  objectives.  By implementing the Blueprint, Defendants have among other things continued to

4  expand evidence-based rehabilitative programming.  A copy of the "Blueprint" is attached as

5  Exhibit 2 to my May 7, 2012 declaration.

6        6.     Defendants have also considered the remaining population reduction measures

7  identified at the 2008 trial, namely, early release through expansion of good time credits and

8  sentencing reform.  At this juncture, it is no longer clear that early release, or even identifying

9  inmates that are least like to reoffend, can be done without jeopardizing public safety.  Under

10  realignment, inmates who committed non-serious, non-violent, or non-sexual offenses have been

11  diverted to local custody and supervision.  These inmates would have been the most likely

12  candidates for release under a system that identified inmates "who are unlikely to reoffend or who

13  might otherwise be candidates for early release."  Moreover, even if the Legislature enacted

14  changes to the current sentencing and good-time credit laws, the impact those measures would

15  have on the prison population would take some time to be felt.

16        7.     Assuming that it is even possible to identify inmates who are unlikely to reoffend,

17  identifying these inmates will require CDCR to carefully study individual inmates in the

18  remaining population.  Given the facts that there may be few candidates eligible for early release

19  under such a system, and that Defendants have already significantly reduced the prison

20  population, Defendants' discretion to choose the population reduction measures least likely to

21  adversely affect public safety should be respected.  Nevertheless, if ordered by the Court,

22  Defendants will endeavor to develop an additional population reduction system, and anticipate

23  that such a system could be designed within six months after the order is issued.

24        8.     Because Defendants have not developed or implemented a particular population

25  reduction plan apart from the historic public safety realignment plan, it is impossible to state how

26  or when such an additional plan would reduce the prison population to 137.5%.  If the Court

27  orders Defendants to develop such a plan, Defendants can supplement their response to this

28  question once the plan is developed.

2

1    9.    CDCR anticipates that, by increasing capacity when the California Health Care

2    Facility in Stockton opens and continuing the out-of-state program, the prison population will

3    reach 137.5% by December 31, 2013.  Less than one year since Defendants implemented

4    realignment, I do not know of any other means that would reduce the prison population to 137.5%

5    by June 27, 2013 without jeopardizing public safety.  We will continue to evaluate this issue, and

6    will seek relief from the Court if Defendants are unable to reach the final benchmark by June

7    2013.

8    10.    If the Court disagrees and insists that the final benchmark cannot be increased and

9    that additional actions must be taken to reduce the population, then Defendants will attempt to

10    achieve the 137.5% target by seeking legislative changes related to sentencing and earned credits,

11    among other possible other options that Defendants will evaluate, and by maintaining the out-of-

12    state program.  Additional measures other than a release of inmates could also have an impact on

13    the State's prison population.  For example, Proposition 36 on the November statewide ballot

14    would modify elements of California's "Three Strikes" law.  If approved, approximately 2,800

15    inmates will be eligible for resentencing.  If legislative efforts were not successful, then judicial

16    waivers of state law would be required to achieve further reductions.

17    I declare under the penalty of perjury under the laws of the State of California and the

18    United States of America that the foregoing is true and correct.  Executed in Sacramento,

19    California on September 17, 2012.

20

21    _____/s/_____

22    Martin Hoshino
      (authorization to file obtained by counsel for Defendants)

23    SF2007200670
24    20638227.docx

25

26

27

28

3