KAMALA D. HARRIS
Attorney General of California
JONATHAN L. WOLFF
Senior Assistant Attorney General
JAY C. RUSSELL
Supervising Deputy Attorney General
DEBBIE VOROUS, State Bar No. 166884
PATRICK R. MCKINNEY, State Bar No. 215228
Deputy Attorneys General
  455 Golden Gate Avenue, Suite 11000
  San Francisco, CA 94102-7004
  Telephone: (415) 703-3035
  Fax: (415) 703-5843
  E-mail: Patrick.McKinney@doj.ca.gov
*Attorneys for Defendants*

Hanson Bridgett LLP
JERROLD C. SCHAEFER, State Bar No. 39374
PAUL B. MELLO, State Bar No. 179755
WALTER R. SCHNEIDER, State Bar No. 173113
SAMANTHA D. WOLFF, State Bar No. 240280
  425 Market Street, 26th Floor
  San Francisco, California 94105
  Telephone: (415) 777-3200
  Fax: (415) 541-9366
  E-mail: pmello@hansonbridgett.com

IN THE UNITED STATES DISTRICT COURTS

FOR THE EASTERN DISTRICT OF CALIFORNIA

AND THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>                    Plaintiffs,<br><br>v.<br><br>EDMUND G. BROWN JR., et al.,<br><br>                    Defendants. | 2:90-cv-00520 LKK JFM P<br><br>**THREE-JUDGE COURT** |
| MARCIANO PLATA, et al.,<br><br>                    Plaintiffs,<br><br>v.<br><br>EDMUND G. BROWN JR., et al.,<br><br>                    Defendants. | C01-1351 TEH<br><br>**THREE-JUDGE COURT**<br><br>**DECLARATION OF JEFFREY BEARD, Ph.D., IN SUPPORT OF DEFENDANTS' MOTION TO VACATE OR MODIFY POPULATION REDUCTION ORDER** |

I, JEFFREY BEARD, Ph.D., declare as follows:

1. I am the Secretary of the California Department of Corrections and Rehabilitation (CDCR). I am competent to testify to the matters set forth in this declaration, and if called upon to do so, I would and could so testify. I submit this declaration in support of Defendants' Motion to Vacate or Modify the Court's population reduction order.

2. I was appointed Secretary by Governor Brown on December 19, 2012. As Secretary, I have responsibility for and oversight of CDCR's overall operations. The mission of the CDCR is to improve public safety through evidence-based crime prevention and recidivism reduction strategies. The CDCR is charged with achieving reform and rehabilitation while maintaining public safety.

3. I am a licensed psychologist, and hold a B.S. in Psychology, and an M.Ed and Ph.D. in counseling, all from the Pennsylvania State University

4. I started my career with the Pennsylvania Department of Corrections in 1972 as a psychologist/corrections counselor at the State Correctional Institution at Rockview. In that position, I conducted new inmate psychological assessments, provided similar assessments for parole and sentence commutation proceedings, and responded to pre-sentence requests for information by judges. I also conducted group therapy sessions, individual therapy sessions with inmates, and responded to mental health emergencies within the prison. I thereafter moved into supervisory and managerial positions with the Pennsylvania Department of Corrections, eventually becoming Secretary. I served as Secretary for the Pennsylvania Department of Corrections from December 30, 2000 until August 2010. As Secretary, I was responsible for all 27 facilities in the state's correctional system, which housed more than 51,000 inmates, had approximately 16,000 employees, and a budget of more than $1.8 billion.

5. During my tenure as Secretary, I oversaw completion of a major security upgrade for all correctional facilities, worked to improve staff safety, and completed American Correctional Association accreditation for all facilities. I instituted a mandatory re-entry program for all inmates, and worked on a number of collaborative re-entry projects. I instituted a variety of assessment instruments to ensure the right inmates get in the right programs, made major changes

1

Decl. Jeffrey Beard Supp. Defs.' Mot. to Vacate or Modify Population Reduction Order
Case Nos. 2:90-cv-00520 LKK JFM P & C01-1351 TEH

to inmate programming to ensure that programs met the principles of effective intervention, and increased the mandatory education level from fifth grade to the GED level. I also supported an active research agenda and implemented the use of evaluation tools to measure program outcomes and ensure that programs functioned effectively.

6. I served as a member of the CDCR Expert Panel on Adult Offender Reentry and Recidivism Reduction Programs. Members were chosen for their broad experience in rehabilitation, education, correctional administration, psychology, and organizational development. In 2007, the Panel published the report to the California State Legislature entitled "A Roadmap for Effective Offender Programming in California" which recommended, among other things, that California take the necessary measures to reduce overcrowding in its correctional facilities.

7. I testified on behalf of Plaintiffs in the 2008 evidentiary hearing in this matter which resulted in the population reduction order. My expertise in corrections and psychology was previously recognized by both this Court, and by the Supreme Court in affirming this Court's August 4, 2009 order. As I stated in my testimony at the evidentiary hearing in this matter, I testified on behalf of Plaintiffs based on my belief that it would help California move in the right direction to reduce overcrowding in its prisons. I testify on behalf of Defendants today because California has moved in the right direction, its prisons are less crowded, and the CDCR now delivers superior medical and mental health care that would compare favorably with any correctional system in the United States.

Impact of Population Density on CDCR's Ability to Provide Quality Health Care

8. Prior to my appointment as Secretary of CDCR, I served as a consultant to the Department in the *Coleman v. Brown* mental health class action litigation. I worked with CDCR and the special master in *Coleman* to develop a supplemental plan to reduce or eliminate wait lists for inmate-patients requiring inpatient mental health care. CDCR implemented the plan and successfully reduced the wait lists, an accomplishment the special master called "a dramatic improvement that is unprecedented in the history of the *Coleman* remedial effort." CDCR currently has the capacity to appropriately place inmates according to their needs.

2

Decl. Jeffrey Beard Supp. Defs.' Mot. to Vacate or Modify Population Reduction Order
Case Nos. 2:90-cv-00520 LKK JFM P & C01-1351 TEH

9. CDCR and the State are dedicated to providing quality medical and mental health to the State's inmate-patients. In 2011 and 2012, I visited the majority of CDCR's 33 prisons, and am familiar with their medical and mental health programs. At no time did I find evidence that the population density at a particular prison was prohibiting the delivery of appropriate medical or mental health care services.

10. Prison population density is no longer a factor inhibiting California's ability to provide constitutionally adequate medical or mental health care in its prisons. When the Court held the evidentiary hearing in this matter in 2008, 156,352 inmates were housed in California's 33 institutions, which equaled 195.9% of design bed capacity. At the evidentiary hearing in this matter, I testified that "the biggest inhibiting factor right now in California being able to deliver appropriate mental health and medical care is the severe overcrowding of [the] system." This is no longer the case. Governor Brown's administration has done more to reduce prison crowding than any prior California administration. Under Governor Brown's leadership, the state legislature passed historic public safety realignment legislation in April 2011, known as Assembly Bill 109, which went into effect on October 1, 2011.

11. As of December 26, 2012, the in-state prison population has decreased to 119,327 inmates, or 149.6% of design bed capacity. Since realignment went into effect, the population in the State's 33 institutions has decreased by 24,861 inmates. The current population is 31,709 fewer inmates than when the Court issued its prisoner reduction order in January 2010, 37,025 fewer inmates compared to the 2008 population in the record at the evidentiary hearing, and 42,734 fewer inmates than when Plaintiffs moved to convene this Court in November 2006. The current in-state prison population is at its lowest level since May 1995.

12. The evidence generated in 2008 showing that overcrowding was the primary cause of California's inability to provide constitutionally adequate medical and mental health care no longer exists. The population decrease has made California's prisons safer and eliminated crowded conditions which could increase the risk of spreading infectious disease. As of February 23, 2012, CDCR eliminated all nontraditional beds in gymnasiums and dayrooms and reinstated

3

Decl. Jeffrey Beard Supp. Defs.' Mot. to Vacate or Modify Population Reduction Order
Case Nos. 2:90-cv-00520 LKK JFM P & C01-1351 TEH

them as programming space. Attached are true and correct copies of the following photographs from our institutions showing areas where nontraditional beds were removed:

- The gymnasium at Mule Creek State Prison (Exhibit 1);

- The gymnasium (Exhibit 2) and dayroom (Exhibit 3) at the California Institution for Men, both of which were temporarily used for housing;

- The field house at Deuel Vocational Institution, where former CDCR Secretary Matthew Cate announced the elimination of all nontraditional beds in March 2012 (Exhibit 4);

- Dormitories at the California Rehabilitation Center reflecting uncrowded conditions (Exhibit 5);

- The gymnasium at Kern Valley State Prison (Exhibit 6). A video from March 2012 showing the dismantling of nontraditional beds at this institution and other institutions is available at: http://youtu.be/X73lBukG310; and

- The gymnasium at California State Prison-Solano (Exhibit 7).

13. CDCR has vastly reduced the number of inmates admitted into its institutions and evaluated at its reception centers. At the 2008 evidentiary hearing, I testified that the number of people coming in through reception centers may cause prisons to "miss people who have certain needs and certain care needs that aren't being dealt with." This is no longer the case because CDCR has implemented a comprehensive system for screening and evaluating inmates at its reception centers.

14. The population reductions have also eliminated the problems CDCR had in 2007 and 2008 with ensuring that inmates were placed at an appropriate institution or program. CDCR is now able to appropriately and timely accommodate the needs of inmate-patients with medical or mental health needs.

## CDCR Provides Quality Medical and Mental Health Care to its Inmates

15. As discussed in detail in the testimony of Robert Barton, the Inspector General, this population decrease has improved the quality of medical health care, including access to medications and physicians. The medical inspection scores by the Office of the Inspector General objectively demonstrate the State's compliance with the policies and procedures that formed the basis of the original stipulation for injunctive relief in *Plata v. Brown*. The average overall weighted score in the third round of inspections has risen to 86.1%, and 15 of the 20 prisons

inspected to date have achieved a score of 85% or higher. The average overall weighted combined score for the second and third rounds is 83.9%, 24 prisons achieved a score higher than 80%, and all 33 prisons have scored at least 74.5%. The system is thus currently at or approaching "high adherence" with the applicable policies and procedures.

16. In addition to improving health care by reducing the population, the State has increased capacity to specifically serve the medical and mental health needs of *Coleman* and *Plata* class members. These improvements, which include construction of new facilities, treatment space, and office space, and renovation of existing facilities, are discussed in detail in the Declaration of Chris Meyer. The State has also implemented a streamlined legislative approval process for construction projects with the passage of Senate Bill 1022 on June 27, 2012. This change will make construction funds not simply technically available, but actually accessible for their intended purpose.

17. CDCR has maintained responsibility for providing mental health care to its inmates. As demonstrated by the motion to terminate filed in *Coleman* on January 7, 2013 and accompanying declarations of Diana Toche and Tim Belavich, the State has developed and implemented a comprehensive prison mental health care system that, as confirmed by nationally-recognized experts, provides treatment matching or exceeding that offered by any other state prison system. Accordingly, isolated claims of inadequate treatment of inmate-patients needing mental health care cannot support any further reduction of California's prison population.

18. The State has also virtually eliminated unnecessary deaths in its prisons. The receiver's "Analysis of 2011 Inmate Death Reviews in the California Prison Healthcare System," which is attached as Exhibit 8, states that there were only two "likely preventable" deaths in 2011, and one of those was caused by a lapse by an outside medical provider. In fact, the State's efforts compare favorably with community hospitals. As discussed in the report attached as Exhibit 9, the California Department of Public Health recently issued twelve penalties to private California hospitals for noncompliance with licensing requirements that "caused, or was likely to cause, serious injury or death to patients."

19. Finally, there is no evidence of any current interference by custody in the delivery of health care. To the contrary, custody staff facilitates provision of health care services by ensuring that inmate-patients attend their appointments and by understanding the needs of the inmates under their supervision.

<u>CDCR Is Committed to Sustaining its Quality Medical and Mental Health Care Programs</u>

20. By reducing the prison population and adding capacity to specifically meet inmates' medical and mental health needs, the State has implemented a durable and sustainable remedy. Moreover, the State is ensuring that the remedy will endure into the future. Once realignment passed, the Brown Administration developed and won legislative approval for a comprehensive, post-realignment plan, entitled "The Future of California Corrections" (the Blueprint), to improve the prison system while making it less costly and more efficient. The Blueprint was published in April 2012, then legislatively approved and funded, and is now being implemented. Notably, the Blueprint achieves overall savings while dedicating increased funding for infill construction projects and expanding rehabilitative programming. These accomplishments are creating a less crowded, less costly prison system with better health care services and rehabilitative programming. A copy of the plan was attached to the Declaration of Undersecretary Martin Hoshino submitted to the *Plata* Court on May 7, 2012 (ECF No. 2434, Ex. 2.)

21. On June 27, 2012, the Governor signed the 2012 Budget Act which funds the Blueprint. The budget revised California Government Code section 15189.40 to dedicate $700 million for the Health Care Facility Improvements Project, $167 million for the renovation of the DeWitt Annex to the California Health Care Facility in Stockton, and allows for use of specific Assembly Bill 900 funds for medication distribution facilities improvement projects.

22. The Budget also includes a $128.4 million General Fund increase in 2012-13 for the Inmate Medical Services Program. This increase aligns the medical care budget with the receiver's projected expenditures, and includes resources to operate the California Health Care Facility, which is scheduled to open in July 2013. This funding ensures that the currently effective health care system will continue to improve and will be maintained into the future.

6

Decl. Jeffrey Beard Supp. Defs.' Mot. to Vacate or Modify Population Reduction Order
Case Nos. 2:90-cv-00520 LKK JFM P & C01-1351 TEH

23. Clearly, realignment and the Blueprint demonstrate the Brown Administration's commitment to achieving important and lasting improvements to our prison system.

24. The State is also continuing to move forward to establish the structure necessary to end the receivership and return control of inmate medical care to the State. The State has created a new CDCR Division of Health Care Services, and is working with the receiver to appropriately transition control of the system.

25. Given all of these achievements, further population reductions are not needed to allow for the delivery of effective health care because effective care is already being provided. Continued enforcement of the 137.5% number—in addition to being unnecessary—would also come at a significant cost to the State, and to public safety. Realignment implemented the safest prisoner-reduction measures by shifting lower level offenders to local control, while leaving more serious offenders in prison. The further reductions needed to reach the 137.5% level cannot be achieved without the early release of inmates convicted of violent or serious felonies. Further enforcement of the order also interferes with the State's democratic processes, raises federalism concerns, and would mean that the three-judge court would continue to insert itself in California's fiscal and policy decisions.

I declare under penalty of perjury that the foregoing is true and correct. Executed in Sacramento, California on January 7, 2013.

　　　　　　　　　　　　　　　　　　　　　　　 _/s/ Jeffrey Beard_
　　　　　　　　　　　　　　　　　　　　　　　 Jeffrey Beard

CF1997CS0003
20661892.doc

7

Decl. Jeffrey Beard Supp. Defs.' Mot. to Vacate or Modify Population Reduction Order
Case Nos. 2:90-cv-00520 LKK JFM P & C01-1351 TEH