# Exhibit B



# Development of the California Static Risk Assessment Instrument (CSRA)

Susan Turner, Ph.D.
James Hess, Ph.D.
Jesse Jannetta, M.P.P.*

November 2009

Center for Evidence-Based Corrections
The University of California, Irvine

*Jesse Jannetta is now a Research Associate at the Urban Institute, Washington, D.C.

CEBC Working Papers are designed to share Center findings and to solicit informal peer review but have not been formally peer reviewed. Unless otherwise indicated, Working Papers can be quoted and cited without permission of the author, provided the source is clearly referred to as a working paper.

**WORKING PAPER**

## TABLE OF CONTENTS

1. Background ....................................................................................................................................4
    Context of CSRA development ....................................................................................................4
2. Methodology ................................................................................................................................4
    Washington State Department of Corrections Risk Assessment ..............................................4
        Items in Tool ........................................................................................................................4
        Subscales and Risk Groups ................................................................................................5
    Data Sample for CSRA Development .........................................................................................5
    Overview of CSRA Scale Creation ..............................................................................................5
        Rules for Counting Prior Record in DOJ Automated Criminal History Files ...................6
        Deriving Weights for CSRA Subscales ...............................................................................8
        Predictive Accuracy/Sensitivity Analyses .......................................................................10
        Creating Risk Groups ......................................................................................................12
        Predictive Accuracy Using Validation Sample .................................................................12
3. Results ........................................................................................................................................13
    Characteristics of CSRA Risk Groups .......................................................................................13
    Analyses of recidivism by risk groups .....................................................................................21
        Detailed Recidivism Offenses ..........................................................................................24
        Arrests ..............................................................................................................................24
        Convictions ......................................................................................................................24
    Subgroup analyses ...................................................................................................................25
        Results for Gender Subgroups .........................................................................................25
        Results for Ethnicity Subgroups ......................................................................................28
        Results for Conviction Offense Subgroups ......................................................................31
        Results for Release Status Subgroups ..............................................................................33
4. Conclusions ................................................................................................................................36
    How it Works ...........................................................................................................................36
    How Well it Works ...................................................................................................................36
    Current Use of CSRA in PVDMI ..............................................................................................37
    Next Steps in Development and Refinement ...........................................................................37
References.........................................................................................................................................37
Appendix..........................................................................................................................................38

## TABLE OF TABLES

Table 2.1 Comparability of CSRA and Washington State Risk Assessment..........................................6
Table 2.2 CSRA Items and Categories ................................................................................................7
Table 2.3 CSRA Weighting Predicting Subsequent Arrest...................................................................9
Table 2.4 CSRA Weighting Predicting Subsequent Conviction .......................................................10
Table 2.5 AUCs for Arrest and Conviction Scales Using Construction Sample ...............................10
Table 2.6 Testing Additional Items for CSRA to Improve Accuracy, Validation Sample ..................11
Table 2.7: Classification Rules for Assignment to Risk Level .............................................................12
Table 2.8: AUCs for Arrest and Conviction Scales ...........................................................................13
Table 2.9: AUCs for Other Risk Assessment Instruments .................................................................13
Table 3.1: CSRA Risk Group Demographics, Full Sample.................................................................14
Table 3.2: CSRA Risk Group Status , Full Sample ............................................................................14
Table 3.3: Instant Offense by CSRA Risk Group , Full Sample ........................................................15
Table 3.4 Percentage Distribution of 22 CSRA Items and 3-Year Felony Arrest
    Recidivism Rates, Full Sample ...........................................................................................16
Table 3.5 Percentage Distribution of 22 CSRA Items and 3-Year Felony Conviction
    Recidivism Rates, Full Sample ...........................................................................................19
Table 3.6: Violent Felony Arrest Recidivism by CSRA Risk Group and Type,Full Sample................24
Table 3.7: Misdemeanor Arrest Recidivism by CSRA Risk Group and Type, Full Sample................24
Table 3.8: Violent Felony Conviction Recidivism by CSRA Risk Group and Type, Full Sample.........24
Table 3.9: Misdemeanor Conviction Recidivism by CSRA Risk Group and Type, Full Sample.........25
Table 3.10 AUCs for Gender Subgroups, Validation Sample.............................................................27
Table 3.11 AUCs for Ethnicity Subgroups, Validation Sample .........................................................30
Table 3.12 AUCs for Offense Subgroups, Validation Sample ...........................................................33
Table 3.13 AUCs for Release Status Subgroups, Validation Sample ..................................................36

## TABLE OF FIGURES

Figure 3.1 Any Felony Arrest During 3-Year Follow-Up, Validation Sample ...................................................22
Figure 3.2 Most Serious Felony Arrest During 3-Year Follow-Up, Validation Sample.................................22
Figure 3.3 Any Felony Conviction During Three-Year Follow-Up, Validation Sample.................................23
Figure 3.4 Most Serious Felony Conviction During Three-Year Follow-Up, Validation Sample ..................23
Figure 3.5 Distribution of Risk Levels, by Gender, Validation Sample ..........................................................25
Figure 3.6 "Any" Felony Arrest During 3-Year Follow-up, By Gender, Validation Sample ...........................26
Figure 3.7 "Any" Felony Property Arrest During 3-Year Follow-up, by Gender, Validation Sample .............26
Figure 3.8 "Any" Felony Drug Arrest During 3-Year Follow-up, by Gender, Validation Sample ...................27
Figure 3.9 "Any" Violent Felony Arrest During 3-Year Follow-up, by Gender, Validation Sample................27
Figure 3.10 Distribution of Risk Levels, by Ethnicity, Validation Sample  .....................................................28
Figure 3.11 "Any" Felony Arrest During 3-Year Follow-up, By Ethnicity, Validation Sample ........................28
Figure 3.12 "Any" Felony Property Arrest During 3-Year Follow-up, by Ethnicity, Validation Sample.........29
Figure 3.13 "Any" Felony Drug Arrest During 3-Year Follow-up, by Gender, Validation Sample .................29
Figure 3.14 "Any" Violent Felony Arrest During 3-Year Follow-up, by Gender, Validation Sample ..............30
Figure 3.15 Distribution of Risk Levels, by Original Conviction Offense, Validation Sample........................31
Figure 3.16 "Any" Felony Arrest During 3-Year Follow-up, By Conviction Offense,
        Validation Sample .........................................................................................................................31
Figure 3.17 "Any" Felony Property Arrest During 3-Year Follow-up, by Conviction Offense,
        Validation Sample .........................................................................................................................32
Figure 3.18 "Any" Felony Drug Arrest During 3-Year Follow-up, by Conviction Offense,
        Validation Sample .........................................................................................................................32
Figure 3.19 "Any" Violent Felony Arrest During 3-Year Follow-up, by Conviction offense,
        Validation Sample .........................................................................................................................33
Figure 3.20 Distribution of Risk Levels, by Release Status, Validation Sample  .............................................34
Figure 3.21 "Any" Felony Arrest During 3-Year Follow-up, By Release Status, Validation Sample ...............34
Figure 3.22 "Any" Felony Property Arrest During 3-Year Follow-up, by Release Status,
        Validation Sample .........................................................................................................................35
Figure 3.23 "Any" Felony Drug Arrest During 3-Year Follow-up, by Release Status,
        Validation Sample .........................................................................................................................35
Figure 3.24 "Any" Violent Felony Arrest During 3-Year Follow-up, by Release Status,
        Validation Sample .........................................................................................................................36
Figure A1 First Felony Arrest During Three-Year Follow-Up, Validation Sample...........................................38
Figure A2 First Felony Conviction During Three-Year Follow-Up, Validation Sample...................................38
Figure A3 First Return to CDCR Custody, Validation Sample .........................................................................39

## 1. BACKGROUND

### Context of CSRA development

Beginning in the mid-1990s, various public policy groups have made recommendations concerning reform of the California Department of Corrections and Rehabilitation (CDCR) parole system. The Little Hoover Commission (1994-2007), the Independent Review Panel led by former Governor Deukmejian (2004), and the Expert Panel commissioned by the California Legislature through the 2006-07 Budget Act have all recommended reforms of the system. One of the central features of recommended reform models is a system of structured decision making for parole supervision and violation issues.[1] Such a system would make decisions more consistent and amenable to a policy-driven approach. The panels recommended a system that utilized supervision and violation decision matrices that combined risk to re-offend with other factors to guide supervision and treatment.

CDCR has incorporated risk and needs assessment in its "Logic Model" – the recently adopted conceptual framework guiding programming and decisions within the Department. Risk/needs assessment plays a key role from the time offenders enter CDCR reception centers through their release on parole in the community. The Department has adopted the Correctional Offender Management and Profiling Alternative Sanctions (COMPAS) as their primary risk/needs tool. As of this date, CDCR is in the process of vetting COMPAS through a contract with researchers from the University of California at Los Angeles.

In order to expedite the development of a structured decision-making matrix for parole purposes, the Reentry Strike Team commissioned work to develop a risk prediction model based on static risk factors derived from existing data sources at CDCR and the California Department of Justice (DOJ). The UCI Center for Evidence-Based Corrections (CEBC) was asked by CDCR to collaborate with their Office of Research to develop the scale. The Washington State static risk instrument developed by Robert Barnoski (Barnoski and Drake, 2007; Barnoski and Aos, 2003) served as the model for the tool's development. Robert Barnoski served as a consultant to the project. The project was conducted under a very tight time line. The project began in October, 2007 and produced the California Static Risk Assessment (CSRA) tool by the end of January 2008. This report describes the development and validation of the CSRA.

## 2. METHODOLOGY

### Washington State Department of Corrections Risk Assessment

The current project used a tool developed at the Washington State Institute for Public Policy as the model for replication. The Washington tool was chosen for several reasons. Perhaps the most important was that the tool used static items only. California data systems currently do not capture dynamic factors for all offenders, thus a risk scale that utilized dynamic factors (such as drug use, education) could not be developed in the timeframe needed. In addition, CDCR felt that Washington State offenders would be similar enough to California offenders that replication would result in a valid tool.

The Washington State Risk Assessment grew out of an effort by the Washington State Institute of Public Policy (WSIPP) to improve upon the LSI-R tool that had been adopted by the Washington State Department of Corrections (DOC) as their risk assessment instrument. WSIPP analyses of the LSI-R using state data showed that although the 54-item tool predicted recidivism moderately well, the accuracy could be increased by adding more static information about an offender's prior record of convictions. In 2007, WSIPP produced a new static risk assessment instrument based on offender demographics and criminal history developed on a sample of over 300,000 offenders released from prison or jail and placed on community supervision from 1986 through March 2000. The tool had a number of advantages for the DOC. Specifically, it increased predictive accuracy; predicted three groups of high risk offenders – High Drug, High Property, and High Violent; increased objectivity; decreased time to complete the assessment; and resulted in an accurate assessment of criminal history that could be used for other purposes (Barnoski and Drake, 2007, p. 1).

#### Items in Tool

The Washington Assessment consists of 26 items that include demographics (2 items), juvenile record (4 items), commitment to the Department of Corrections (1 item), total adult felony record (9 items); total adult misdemeanor record (9 items); and total sentence/supervision violations (1 item). Prior criminal record counts are used for each felony and misdemeanor items. These counts are based on sentences that appear in the automated criminal history records for the state. Each sentence is counted once and is classified by the most serious offense.[2]

---

1  See, for example, Carter, Madeline, ed., Responding to Parole and Probation Violations: A Handbook to Guide Local Policy Development. Washington, DC, and Silver Spring, MD: U.S. Department of Justice, National Institute of Corrections, and Center for Effective Public Policy, 2001, and Burke, Peggy. Parole Violations Revisited: A Handbook on Strengthening Parole Practices for Public Safety and Successful Transition to the Community. Washington, DC, and Silver Spring, MD: U.S. Department of Justice, National Institute of Corrections, and Center for Effective Public Policy, 2004.

2  Washington State criminal history records do not include arrest information.

**Subscales and Risk Groups**

Each offender is scored on three subscales of the assessment: any felony recidivism, property or violent recidivism, and violent felony recidivism. Scores on each subscale are calculated by multiplying the value of the static risk factor by weights for the factor which were derived from regression analyses. (We discuss weighting in more detail under the development of the CSRA.) Risk groups were developed based on cut points for each of the scales, resulting in five different groups:

- High Violent Risk
- High Property Risk
- High Drug Risk
- Moderate Risk
- Low Risk

Analyses of the predictive validity revealed the assessment to be moderately accurate for each of the three types of predicted recidivism (any felony recidivism, property or violent felony recidivism and violent felony recidivism). Analyses on predictive accuracy for subgroups indicated the tool was moderately accurate across 13 subgroups defined by gender, type of sentence received (prison vs. community supervision), ethnicity, and most serious offense in the offender's conviction history. Exceptions to this included weak predictability for felony drug offenders, and strong predictive accuracy for sex offenders for felony recidivism; weak predictive accuracy for African-American, Asian American and offenders whose most serious offense was a felony drug conviction for property/violent recidivism; and weak predictive accuracy for offenders whose most serious offense was a violent, non-sex crime for violent felony recidivism (Barnoski and Drake, 2007, p.5).

## Data Sample for CSRA Development

We started with a cohort of all 103,603 offenders released from CDCR institutions in FY2002-2003. This cohort allowed us to model three-year outcomes, a commonly–used time frame for recidivism analyses (see Langan and Levin, 2002).

CDCR provided CEBC with seven files from their automated data systems for current and prior offense information; limited CYA/DJJ variables; offender movements in and out of CDCR institutions pre- and post their FY2002-2003 release; demographic/social variables including birth date, ethnicity, gender, sex offender flag, gang affiliation, as well as release date for the sample. California Department of Justice (DOJ) automated criminal history data ("rap sheets") were provided in 12 separate files due to the large size of the DOJ database. Pseudo-CDCR numbers were provided to CEBC to allow merging of information from the various files.

The DOJ criminal history data were merged with the CDCR sample of 103,603 releases. Matches for 102,457 (98.9%) of the CDCR releases were found; the unmatched records were dropped from further analysis. DOJ data were used to construct prior record variables parallel to the items contained in the Washington tool. Data were randomly divided in half to be used for construction (N=51,395) and validation samples (N=51,062).

## Overview of CSRA Scale Creation

The development of the CSRA comprises four major steps. The first three steps utilize the construction sample. The fourth step uses the validation sample. In the first step, prior convictions in felony and misdemeanor categories from the DOJ data were "counted" using rules that parallel the counting rules used in the Washington tool.

In the second step, the counts of prior convictions in each of the felony and misdemeanor categories, along with age at release to parole and gender were regressed using ordinary least squares (OLS) in separate models on:

- Conviction after release date for 1) any felony; 2) any violent felony; 3) any property/violent felony; during the 3-year follow-up,
- Arrest after release date for 1) any felony; 2) any violent; 3) any property/violent felony; during the 3-year follow-up.

Unlike Washington, the California DOJ records contained information on arrests as well as convictions. Therefore we decided to develop two different versions of the CSRA – one to predict arrest and one developed to predict convictions (similar to Washington State). For each CSRA scale version, we calculated measures of predictive accuracy from the regression models. We also conducted a number of sensitivity analyses to determine whether we might increase the predictive accuracy of the scale by adding other variables provided to us from CDCR automated files.

In the third step, weights from the regression equations from the second step were multiplied by the corresponding counts for prior convictions, then summed to create subscale scores for any felony, any property/violent felony and any violent felony recidivism. Subscale scores were then used to divide the construction sample into five risk groups, paralleling the risk groups utilized by Washington State: Low Risk, Moderate Risk, High Drug Risk, High Property Risk, and High Violent Risk.

In the fourth and final step, measures of predictive accuracy of the CSRA were computed for the arrest and conviction versions using the validation sample. We outline the four steps in more detail below.

**Rules for Counting Prior Record in DOJ Automated Criminal History Files**

Table 2.1 presents the items on the CSRA tool contrasted with the Washington tool that was used as the model. The Washington tool had 26 items; the CSRA tool has 22. We were unable to obtain reliable juvenile criminal history records in an automated form for the CSRA. DOJ staff felt that juvenile prior record was unreliable and sporadically recorded in the automated rap sheet. Our analysis of the DOJ data revealed that juvenile conviction records represented about 0.4% of all convictions; about 2.3% of individuals showed a juvenile record in the DOJ data. This percent is very small and most certainly inaccurate. To avoid biased results, we did not include these in the CSRA construction.

The CSRA age variable is defined as "age at release," because this variable was a stronger predictor of recidivism in the sample than age at commitment. In addition, the label for "total felony convictions" appears to be different for the CSRA and Washington State. In reality, they are measuring similar things. In Washington, DOC commitments refer to all felony convictions.

The following steps were taken in processing the automated rap sheets for the felony and misdemeanor conviction items on the scale as shown in Table 2.1:

- For each arrest cycle on a rap sheet, we collected all conviction charges, and selected the most serious charge. Only the most serious charge was counted out of any arrest cycle. We counted convictions starting with the current conviction and going backwards on the rap sheet.[3]
- For the last item "total sentence/supervision violations," we collected information from two sources – records of court convictions, and custody records on the rap sheets. Records from court convictions were separated from other conviction charges before the most serious charge was selected so as to not eliminate violations adjudicated along with more serious charges. Violations from custody and court records were combined by the date of adjudication or sentencing, and each unique date was counted as one violation.

Once the criminal record counts were computed, the appropriate category was checked for each item on the CSRA as shown in Table 2.1. Note that a felony conviction may be counted under "total felony convictions," and not counted for felony homicide through felony escape if the conviction is not included in any category of the Adult Felony Record.

## Table 2.1 Comparability of CSRA and Washington State Risk Assessment

| CSRA Items | Washington Instrument Items |
|---|---|
| **Demographics** | |
| Age at Time of Release | Age at time of current sentence |
| Gender | Gender |
| **Juvenile Record** | |
| Not available | Felony convictions |
| Not available | Non-sex violent felony convictions |
| Not available | Felony sex convictions |
| Not available | Commitments to state juvenile institution |
| **Total Felony Convictions** | |
| Total Felony Convictions | Commitments to Department of Corrections |
| **Adult Felony Record** | |
| Felony homicide | Felony homicide |
| Felony sex | Felony sex |
| Felony violent property | Felony violent property |
| Felony assault offense—not domestic violence | Felony assault offense—not domestic violence |
| Felony domestic violence assault or protection order violation | Felony domestic violence assault or protection order violation |
| Felony weapon | Felony weapon |
| Felony property | Felony property |
| Felony drug | Felony drug |
| Felony escape | Felony escape |

---

3   The mapping of California Penal codes to the tool, and severity codes for offenses can be obtained from the CEBC.

**Table 2.1 Comparability of CSRA and Washington State Risk Assessment (cont.)**

| CSRA Items | Washington Instrument Items |
|---|---|
| Adult Misdemeanor Record | |
| Misdemeanor assault—not domestic violence | Misdemeanor assault—not domestic violence |
| Misdemeanor domestic violence assault or violation of a protection order | Misdemeanor domestic violence assault or violation of a protection order |
| Misdemeanor sex | Misdemeanor sex |
| Misdemeanor other domestic violence | Misdemeanor other domestic violence |
| Misdemeanor weapon | Misdemeanor weapon |
| Misdemeanor property | Misdemeanor property |
| Misdemeanor drug | Misdemeanor drug |
| Misdemeanor escapes | Misdemeanor escapes |
| Misdemeanor alcohol | Misdemeanor alcohol |
| Adult Sentence Violations | |
| Total Sentence/Supervision Violations | Total Sentence/supervision violations |

**Table 2.2 CSRA Items and Categories**

| Demographics | | | | |
|---|---|---|---|---|
| Age at release | • 60 or older | (0) | • 20 to 29 | (4) |
| | • 50 to 59 | (1) | • 18 to 19 | (5) |
| | • 40 to 49 | (2) | • 13 to 17 | (6) |
| | • 30 to 39 | (3) | | |
| Gender | • Female | (0) | • Male | (1) |
| Total Felony Convictions | | | | |
| Felony convictions | • First | (1) | • Fourth | (4) |
| | • Second | (2) | • Fifth or more | (5) |
| | • Third | (3) | | |
| Total Adult Felony Record (All prior and current times the offender was sentenced. Each sentence is defined by a unique or different date of sentence.) | | | | |
| Felony homicide offense: murder/manslaughter | • None | (0) | • One or more | (1) |
| Felony sex offense | • None | (0) | • Two or more | (2) |
| | • One | (1) | | |
| Felony violent property conviction for a felony robbery/kidnapping/extortion/unlawful imprisonment/custodial interference offense/harassment/burglary 1/arson 1 | • None | (0) | • Two or more | (2) |
| | • One | (1) | | |
| Felony assault offense—not domestic violence related | • None | (0) | • Two | (2) |
| | • One | (1) | • Three or more | (3) |
| Felony domestic violence assault or violation of a domestic violence related protection order, restraining order, or no-contact order/harassment/malicious mischief | • None | (0) | • Two or more | (2) |
| | • One | (1) | | |
| Felony weapon offense | • None | (0) | • Two or more | (2) |
| | • One | (1) | | |
| Felony property offense | • None | (0) | • Three | (3) |
| | • One | (1) | • Four | (4) |
| | • Two | (2) | • Five or more | (5) |
| Felony drug offense | • None | (0) | • Two | (2) |
| | • One | (1) | • Three or more | (3) |
| Felony escape offense | • None | (0) | • One or more | (1) |

7

**Table 2.2 CSRA Items and Categories (Cont.)**

| Total Adult Misdemeanor Record<br>Total number of sentences, past and current, involving a misdemeanor conviction for: | | | | | |
|---|---|---|---|---|---|
| Misdemeanor assault offense—not domestic violence related | • None<br>• One<br>• Two | (0)<br>(1)<br>(2) | • Three<br>• Four<br>• Five or more | (3)<br>(4)<br>(5) | |
| Misdemeanor domestic violence assault or violation of a domestic violence related protection order, restraining order, or no-contact order | • None<br>• One | (0)<br>(1) | • Two or more | (2) | |
| Misdemeanor sex offense | • None<br>• One | (0)<br>(1) | • Two or more | (2) | |
| Misdemeanor other domestic violence: any non-violent misdemeanor convictions such as trespass, property destruction, malicious mischief, theft, etc., that are connected to domestic violence | • None | (0) | • One or more | (1) | |
| Misdemeanor weapon offense | • None | (0) | • One or more | (1) | |
| Misdemeanor property offense | • None<br>• One | (0)<br>(1) | • Two<br>• Three or more | (2)<br>(3) | |
| Misdemeanor drug offense | • None<br>• One | (0)<br>(1) | • Two or more | (2) | |
| Misdemeanor escape offense | • None | (0) | • One or more | (1) | |
| Misdemeanor alcohol offense | • None | (0) | • One or more | (1) | |
| V. Total Sentence/Supervision Violations | | | | | |
| Total sentence/supervision violations* | • None<br>• One<br>• Two | (0)<br>(1)<br>(2) | • Three<br>• Four<br>• Five or more | (3)<br>(4)<br>(5) | |

*Note: three or more scored as 3 for violent subscale

**Deriving Weights for CSRA Subscales**

Weights were obtained by OLS regression analyses using a process that paralleled the development of the Washington State tool. We used OLS with the items on the scale as independent factors to predict each subscale outcome for each of the two major recidivism outcomes – arrests and convictions. We then took the estimates from the regression equations and multiplied them by 200 (and rounded) to obtain integers. These integers became the weights for the scale scores. The weights for two versions of the CSRA appear in Tables 2.3 and 2.4. A person's item category was then multiplied by the item weight; all were then summed to create a score. For example, for creating the "Any Felony Arrest" score, if the offender was 50-59, and a female, one would start calculating the score by multiplying 1 (for age 50-59 from Table 2.2) by 19 (the weight for age from Table 2.3), 0 (for female) by 15 (the weight for gender), etc.

8

**Table 2.3 CSRA Weighting Predicting Subsequent Arrest**

| CSRA Item Weighting | | | |
|---|---|---|---|
| Felony | Property/ Violent | Violent | CSRA Item |
| +19 | +23 | +17 | Age at Time of Release |
| +15 | +12 | +19 | Gender |
| +6 | +3 | +1 | Total Felony Convictions |
| -19 | -10 | +1 | Felony Homicide Offense |
| -10 | -11 | -2 | Felony Sex Offense |
| +0 | +0 | +3 | Felony Violent Property Conviction for a Felony Robbery/ Kidnapping/Extortion/Unlawful Imprisonment/Custodial Interference Offense |
| -2 | +0 | +8 | Felony Assault Offense—Not Domestic Violence Related |
| -2 | +0 | +6 | Felony Domestic Violence Assault or Violation of a Domestic Violence Related Protection Order, Restraining Order, or No-Contact Order |
| +0 | +2 | +7 | Felony Weapon Offense |
| +2 | +7 | 0 | Felony Property Offense |
| +1 | -5 | -3 | Felony Drug Offense |
| +0 | +0 | +0 | Felony Escape Offense |
| +5 | +5 | +7 | Misdemeanor Assault Offense – Not Domestic Violence Related |
| +12 | +6 | +10 | Misdemeanor Domestic Violence Assault or Violation of a Domestic Violence Related Protection Order, Restraining Order, or No-Contact Order |
| +8 | +1 | +4 | Misdemeanor Sex Offense |
| +17 | +13 | +9 | Misdemeanor Other Domestic Violence |
| +6 | +6 | +6 | Misdemeanor Weapon Offense |
| +5 | +5 | +1 | Misdemeanor Property Offense |
| +5 | -2 | -3 | Misdemeanor Drug Offense |
| +0 | +0 | +0 | Misdemeanor Escape Offense |
| -7 | -10 | -5 | Misdemeanor Alcohol Offense |
| +9 | +6 | +5 | Total Sentence/Supervision Violations |

**Table 2.4 CSRA Weighting Predicting Subsequent Conviction**

| CSRA Item Weighting | | | |
|---|---|---|---|
| Felony | Property/ Violent | Violent | CSRA Item |
| +16 | +13 | +7 | Age at Time of Release |
| +12 | +7 | +10 | Gender |
| +4 | +2 | +0 | Total Felony Convictions |
| -15 | -8 | 0 | Felony Homicide Offense |
| -11 | -6 | -1 | Felony Sex Offense |
| -5 | -4 | +0 | Felony Violent Property Conviction for a Felony Robbery/ Kidnapping/Extortion/Unlawful Imprisonment/Custodial Interference Offense |
| -7 | -2 | +4 | Felony Assault Offense—Not Domestic Violence Related |
| -5 | -2 | +2 | Felony Domestic Violence Assault or Violation of a Domestic Violence Related Protection Order, Restraining Order, or No-Contact Order |
| +0 | +0 | +3 | Felony Weapon Offense |
| +3 | +6 | +0 | Felony Property Offense |
| +3 | -5 | -2 | Felony Drug Offense |
| +0 | +0 | +0 | Felony Escape Offense |
| +0 | +0 | +2 | Misdemeanor Assault Offense – Not Domestic Violence Related |
| +0 | +0 | +2 | Misdemeanor Domestic Violence Assault or Violation of a Domestic Violence Related Protection Order, Restraining Order, or No-Contact Order |
| +0 | +0 | +3 | Misdemeanor Sex Offense |
| +0 | +0 | +0 | Misdemeanor Other Domestic Violence |
| +5 | +3 | +3 | Misdemeanor Weapon Offense |
| +3 | +4 | +0 | Misdemeanor Property Offense |
| +4 | -1 | -1 | Misdemeanor Drug Offense |
| +0 | +0 | +0 | Misdemeanor Escape Offense |
| -7 | -6 | -2 | Misdemeanor Alcohol Offense |
| +6 | +3 | +2 | Total Sentence/Supervision Violations |

**Predictive Accuracy/Sensitivity Analyses**

Similar to the Washington State instrument, we evaluated the accuracy of the CSRA instrument using the Area Under the Receiver Operating Characteristic Curve (AUC) statistic (Mossman, 1994; Harris and Rice, 2007). The AUC is a preferred measure for classification tests and predictions (Barnoski and Drake, 2007). Other measures, such as Relative Improvement Over Chance (RIOC) or sensitivity and specificity are dependent on scale cut points chosen to predict success or failure; the AUC measures the inherent ability of a measure to discriminate (Mossman, 2007). The curve plots true positives against false positives. An AUC of 0.5 means the instrument can achieve no better than chance; and an AUC of 1.0 indicates the ability to make perfect predictions. AUCs in the range of .60 are considered weak, .70s are considered moderately predictive; those above .80 are considered to have strong predictive accuracy (Barnoski and Drake, 2007). In the current context, AUC is the probability that a randomly chosen recidivating prisoner will have a higher score than a randomly chosen non- recidivist (Hanley and McNeil, 1982).

Table 2.5 presents AUCs for the three subgroup outcomes for arrest and conviction using the construction sample. Arrest AUCs are higher than conviction AUCs.

**Table 2.5 AUCs for Arrest and Conviction Scales Using Construction Sample**

| Outcome | Any Felony | Property/Violent Felony | Violent Felony |
|---|---|---|---|
| Convictions | .650 | .670 | .681 |
| Arrests | .704 | .675 | .673 |

We conducted additional analyses to see whether we could increase the predictive accuracy of the scale using other items in the automated CDCR data sets provided to us. Additional test items included factors suggested by the literature as well as prior work with CDCR data. We also tested items from California Youth Authority Records. Because of various administrative factors in the California system, these were available for about 6% of the sample.[4]

Table 2.6 below shows the incremental increase in the AUC for measures "any conviction" and "any arrest." The addition of individual items produced an increase in AUC of generally less than .003. Therefore, we decided, based on parsimony, to keep the set of 22 items that paralleled the Washington instrument.

### Table 2.6 Testing Additional Items for CSRA to Improve Accuracy, Validation Sample

| Item | Incremental Increase in AUC from Baseline | |
|------|-----------------|-----------------|
| | Felony Conviction | Felony Arrest |
| Baseline AUC | 0.655 | 0.696 |
| Sex Offender Flag | 0.004 | 0.001 |
| Gang Affiliation | 0.000 | 0.000 |
| Parole Revoked | 0.000 | 0.002 |
| Prior Serious and Violent Offenses | 0.000 | 0.001 |
| Number of Current Counts, Serious, Violent | 0.001 | 0.002 |
| On First/Subsequent Release | 0.001 | 0.003 |
| Years Served on Current Sentence | 0.001 | 0.003 |
| Ethnicity | 0.002 | 0.010 |
| Parole Region | 0.001 | 0.000 |
| CYA/DJJ Record Items | | |
|     Age CYA Commitment | 0.001 | 0.002 |
|     Age Local Commitment | 0.001 | 0.002 |
|     Age Local Petition | 0.001 | 0.002 |
|     Number of Sustained Petitions | 0.001 | 0.002 |
|     Number of CYA commitments | 0.000 | 0.001 |
| WSIPP Juvenile Criminal History | 0.001 | 0.002 |
| All Items | 0.011 | 0.019 |

We were asked to test data from CDCR's Institutional Intake forms (known as 839 and 840 forms) to determine whether these added to predictive accuracy. These forms were of particular interest since they contained information on the age at first arrest and prior juvenile incarcerations. CDCR Office of Research determined that automated data were present for only 3% of the CSRA sample (3,071 individuals). This is far too few for it to be incorporated into the CSRA for increased predictive accuracy. However, within the sample who had data from Form 839, we found significant results for the Age at First Arrest on Violent Felony Recidivism for both conviction (odds ratio ~1.4, p<.01) and arrest (odds ratio ~1.5, p<.001). Within this subsample, it increased the AUC for Violent Felony Recidivism from 0.710 to 0.724 for conviction and from 0.685 to 0.710 for arrest. These results and those from the CYA/DJJ data suggest that the inclusion of prior juvenile record information would improve the predictability of the CSRA.

In addition to testing additional variables for inclusion, we also tested the appropriateness of the item categories in Table 2.2. (e.g., six age categories). For this analysis we tested the categories used in the Washington tool and incremented the number of categories, testing whether they added anything to the chi-square for each item. We found that improvements were very small, therefore we kept the Washington categories with one exception. For the total supervision violations for the violent subscale, the Washington scale category was capped at 3; we retained the five categories as used in the other two subscales.

---

4  Given that so few CYA records were available, the effects of adding these items would not be expected to make much difference. We also tested these items in the subset of the construction sample who had CYA records (approximately 6000). In general their effect was slightly stronger than in the larger sample, increasing AUCs in the range of .001 to .006. The exceptions are Age of First Local Petition, which increased the AUC by .012-.013, and, for Arrests only, Age of First CYA Commitment, which increased the AUC by .016.

**Creating Risk Groups**

The Washington tool divides offenders into five risk groups: Low Risk, Moderate Risk, High Drug Risk, High Property Risk, and High Violent Risk. The classification rules take advantage of the three risk subscales (any felony, property/violent, and violent) to break the high risk group into more specific levels defined by high risk for drug, property and violent recidivism. High Violent offenders are those who score the highest on the subscale predicting violent felony recidivism. Those assigned to High Property are offenders who are not High Violent Risk, but have the highest property/violent subscale values. High Risk Drug offenders are those who do not fall into the other high risk groups, but have the highest scores for committing any felony. In essence, drug offenders are the remaining category of high risk offenders, once those deemed at risk for violence and property offenses are excluded. Moderate risk offenders are defined as those who are not high risk, but have higher scores on the property/violent subscale. Low Risk offenders are those remaining after the other groups have been assigned.

The percentages of offenders assigned to each group is driven by policy choices. In the original Washington tool, 32% were assigned to the Low Risk category, 24% to the Moderate Risk category, 9% to the High Risk Drug category, 19% to the High Risk Property category, and 16% to the High Risk Violent category (Barnoski and Drake, 2007). Subsequent to the publication of the findings for the Washington tool, the developers revised the definition of the Moderate group to reduce the percentage of Low Risk to 22% and increase the Moderate Risk to 34%. We followed the latter distributions for our risk level categorization, as closely as we could. Table 2.7 below presents the classification rules for arrest and conviction risk groups.

### Table 2.7: Classification Rules for Assignment to Risk Level

| Classification Rules | Risk Level | Percent in Group |
|---|---|---|
| Arrest | | |
| If Violent subscale greater/equal 103 | High Violent | 15 |
| Else if Property/Violent subscale greater/equal 119 | High Property | 19 |
| Else if Felony subscale greater/equal to 127 | High Drug | 9 |
| Else if Property/Violent greater/equal 96 or Felony subscale greater/equal 96 | Moderate | 34 |
| Else if not assigned by above | Low | 22 |
| Conviction | | |
| If Violent subscale greater/equal 42 | High Violent | 17 |
| Else if Property/Violent subscale greater/equal 68 | High Property | 19 |
| Else if Felony subscale greater/equal to 100 | High Drug | 9 |
| Else if Property/Violent greater/equal 52 or Felony subscale greater/equal 75 | Moderate | 33 |
| Else if not assigned by above | Low | 22 |

Placement into risk groups for Felony Conviction and Felony Arrest are very similar. The correlation between risk group assignment for arrest and conviction is .91 (p<.0011). Eighty-two percent of the offenders have the same risk group assignment based on arrest and conviction.

**Predictive Accuracy Using Validation Sample**

The fourth and final step in the CSRA development was applying the results from the construction sample to the validation sample. To the extent that the results are robust and do not change, we can be assured that the scale will replicate in other samples. Table 2.8 below presents the validation AUCs along with the construction AUCs presented earlier. These measures are slightly lower than those obtained by Barnoski and Drake (2007). AUCs for the validation samples in that report were .742 for Any Felony, .733 for Property/Violent Felony, and .732 for Violent Felony. However, AUCs for the CSRA are similar or higher than AUCs obtained by other risk prediction instruments as shown in Table 2.9.

**Table 2.8: AUCs for Arrest and Conviction Scales**

| Sample | Felony Subscale | Property/Violent Subscale | Violent Subscale |
|---|---|---|---|
| Construction Sample | | | |
|    Convictions | .650 | .670 | .681 |
|    Arrests | .704 | .675 | .673 |
| Validation Sample | | | |
|    Conviction | .655 | .673 | .679 |
|    Arrest | .696 | .673 | .667 |

**Table 2.9: AUCs for Other Risk Assessment Instruments**

| Instrument | AUC | Sample | Recidivism Measure | Source |
|---|---|---|---|---|
| COMPAS | .67 | 515 California parolees | Return to prison | Farabee and Zhang (2007) |
| Criminal History Computation | .68 | 28,519 Federal offenders | Re-conviction, re-arrests w/o disposition available, supervision revocation | US Sentencing Commission (2004) |
| LSI-R | .67 | 22,533 Washington State offenders | Any conviction | WSIPP (2003) |
| Washington State | .74 | 51,648 Washington offenders | Felony conviction | WSIPP (2007) |

## 3. RESULTS

In this section, we first present background characteristics of the sample and the relationship between the individual items on the CSRA and recidivism using the full sample. We follow this with recidivism by the five risk categories, using the validation sample only. The final section presents analyses conducted on subgroups defined by gender, ethnicity, offense, and release status using the validation sample.

### Characteristics of CSRA Risk Groups

Table 3.1 presents demographic information on the CSRA risk groups using the full sample. As one would expect, the Low group is older and has a higher percent female offenders than the other three risk groups, while the High Violent group is the youngest and most predominately male.

13

**Table 3.1: CSRA Risk Group Demographics, Full Sample**

|  | Low | Moderate | High Drug | High Property | High Violent |
|---|---|---|---|---|---|
| Age at Release | | | | | |
| 18-19 | 0.0% | 0.0% | 0.0% | 0.1% | 0.8% |
| 20-29 | 2.1% | 38.0% | 6.3% | 34.4% | 53.7% |
| 30-39 | 33.7% | 33.9% | 42.5% | 40.9% | 38.1% |
| 40-49 | 41.6% | 23.8% | 45.9% | 23.6% | 7.3% |
| 50-59 | 18.4% | 5.0% | 5.2% | 1.1% | 0.2% |
| 60+ | 4.2% | 0.3% | 0.1% | 0.0% | 0.0% |
| Mean | 42.8 | 33.8 | 39.3 | 33.8 | 30.8 |
| Gender | | | | | |
| Male | 83.4% | 90.1% | 89.4% | 92.3% | 99.7% |
| Female | 16.7% | 9.9% | 10.6% | 7.7% | 0.3% |
| Race/Ethnicity | | | | | |
| White | 39.5% | 30.1% | 33.1% | 36.1% | 29.4% |
| Black, Non-Hispanic | 23.0% | 28.7% | 39.4% | 30.3% | 29.5% |
| Hispanic | 33.0% | 37.0% | 25.6% | 30.2% | 37.6% |
| Other | 4.6% | 4.2% | 2.0% | 3.5% | 3.6% |
| Parole Region | | | | | |
| Region I | 24.9% | 23.2% | 21.6% | 23.2% | 28.5% |
| Region II | 18.9% | 20.4% | 22.0% | 22.9% | 24.0% |
| Region III | 29.6% | 29.0% | 27.3% | 24.5% | 18.5% |
| Region IV | 26.7% | 27.4% | 29.0% | 29.5% | 28.9% |

Table 3.2 shows the distribution of various offender statuses across the CSRA risk groups. Most recent incarceration status refers to the type of incarceration from which each offender in the sample was released. For example, 60.5% of individuals in the Low risk group were first releases onto parole who had entered prison with a new commitment, and another 8.3% were releases who had entered prison with a new term they received while under parole supervision for a previous offense. The remaining 31.2% had entered prison as parole violators returned to custody (PVRTCs).

**Table 3.2: CSRA Risk Group Status, Full Sample**

|  | Low | Moderate | High Drug | High Property | High Violent |
|---|---|---|---|---|---|
| Sex Offender (req. to Register per PC 290) | | | | | |
| Yes | 13.0% | 4.9% | 3.6% | 1.8% | 3.1% |
| Gang Flag | | | | | |
| Yes | 0.6% | 1.1% | 1.9% | 1.6% | 2.9% |
| Serious or Violent Offenses in Criminal History | | | | | |
| Serious | 20.7% | 23.5% | 22.6% | 23.6% | 37.7% |
| Violent | 23.9% | 20.9% | 17.8% | 13.8% | 19.8% |
| Serious or Violent | 38.9% | 39.5% | 35.3% | 34.1% | 51.5% |
| Serious, Violent or Sex | 44.3% | 42.5% | 37.9% | 36.2% | 53.1% |
| Time Served--Most Recent Incarceration (Including Parole Rev. Periods) | | | | | |
| Mean | 1.60 | 1.10 | 0.80 | 0.90 | 0.80 |
| Most Recent Incarceration Status | | | | | |
| New commitment | 60.5% | 43.2% | 12.0% | 23.1% | 15.7% |
| PVWNT[a] | 8.3% | 13.5% | 21.4% | 22.7% | 17.6% |
| PVRTC[b] | 31.2% | 43.3% | 66.7% | 54.1% | 66.7% |

[a]  Parole violator with a new term
[b]  Parole violator returned to custody

Table 3.3 presents the offense for which releasees had been imprisoned by CSRA risk group. Each controlling instant offense is the most serious for which an offender was sentenced to prison (no offender appears in more than one offense category).

## Table 3.3: Prison Offense by CSRA Risk Group, Full Sample

| | Low | Moderate | High Drug | High Property | High Violent |
|---|---|---|---|---|---|
| Murder1 | 0.1% | 0.0% | 0.0% | 0.0% | 0.0% |
| Murder2 | 0.9% | 0.5% | 0.1% | 0.1% | 0.1% |
| Manslaughter | 1.3% | 0.6% | 0.1% | 0.1% | 0.3% |
| Vehicular Manslaughter | 0.5% | 0.2% | 0.0% | 0.0% | 0.1% |
| Robbery | 4.2% | 7.5% | 3.0% | 4.5% | 6.7% |
| Assault Deadly Weapon | 5.2% | 5.4% | 1.6% | 1.7% | 9.9% |
| Assault/Battery | 8.2% | 7.0% | 4.2% | 3.4% | 13.3% |
| Rape | 1.0% | 0.4% | 0.1% | 0.1% | 0.1% |
| Lewd Act with Child | 5.4% | 1.1% | 0.2% | 0.2% | 0.3% |
| Oral Copulation | 0.6% | 0.1% | 0.0% | 0.0% | 0.1% |
| Sodomy | 0.2% | 0.0% | 0.0% | 0.0% | 0.0% |
| Penetration with Object | 0.3% | 0.1% | 0.0% | 0.0% | 0.1% |
| Other Sex Offenses | 3.0% | 2.0% | 1.3% | 0.7% | 1.4% |
| Kidnapping | 0.5% | 0.3% | 0.1% | 0.1% | 0.1% |
| Burglary1 | 2.6% | 4.3% | 2.1% | 5.0% | 4.0% |
| Burglary2 | 3.6% | 5.4% | 3.9% | 12.8% | 5.6% |
| Grand Theft | 2.5% | 2.7% | 1.8% | 4.8% | 2.7% |
| Petty Theft | 3.3% | 5.0% | 5.5% | 14.3% | 4.9% |
| Receiving Stolen Property | 1.6% | 3.0% | 2.2% | 7.0% | 3.7% |
| Vehicle Theft | 1.6% | 3.8% | 2.5% | 10.8% | 6.6% |
| Forgery Fraud | 3.0% | 2.7% | 1.3% | 4.5% | 1.6% |
| Other Property | 0.6% | 0.6% | 0.3% | 1.0% | 0.8% |
| Drug Possession | 14.5% | 18.4% | 41.3% | 15.5% | 12.7% |
| Drug Possession For Sale | 12.5% | 10.7% | 12.1% | 4.2% | 4.5% |
| Drug Sales | 4.2% | 4.0% | 5.8% | 1.8% | 1.5% |
| Drug Making | 3.5% | 1.8% | 1.2% | 0.6% | 0.4% |
| Drug Other | 0.7% | 0.6% | 1.3% | 0.5% | 0.4% |
| Marijuana Possession | 0.0% | 0.1% | 0.1% | 0.0% | 0.1% |
| Marijuana Possession for Sale | 1.1% | 1.4% | 1.4% | 0.6% | 0.8% |
| Marijuana Sales | 0.5% | 0.6% | 0.7% | 0.3% | 0.4% |
| Other Marijuana Offense | 0.3% | 0.1% | 0.1% | 0.1% | 0.1% |
| Escape | 0.1% | 0.2% | 0.3% | 0.2% | 0.3% |
| DUI | 6.1% | 2.1% | 1.0% | 0.6% | 0.8% |
| Arson | 0.4% | 0.3% | 0.1% | 0.3% | 0.2% |
| Weapon Possession | 2.6% | 4.0% | 3.0% | 2.6% | 10.1% |
| Other Offense | 3.4% | 3.2% | 1.8% | 1.7% | 5.4% |

Note: These are offense categories used by the CDCR for commitment offenses

Tables 3.4 and 3.5 present the percentage distribution in the sample of the 22 items in the CSRA. In addition, for each level of each item, we present the percent of offenders having an arrest (Table 3.4) or conviction (Table 3.5) for a felony, a drug felony, a property felony, and a violent felony. For example, in Table 3.4, 90.4 percent of the sample is males; 9.7% is females. Sixty-three and four-tenths of females have a felony arrest in three years, 27.7% have a felony drug arrest, 31.3% have a property felony arrest, and 11.4% have a violent felony.

**Table 3.4 Percentage Distribution of 22 CSRA Items and 3-Year Felony Arrest Recidivism Rates, Full Sample**

| | | Value | Percentage Distribution of Sample | Felony | Drug Felony | Property Felony | Violent Felony |
|---|---|---|---|---|---|---|---|
| **Demographics** | | | | | | | |
| **1. Age at time of release** | | | | | | | |
| | 60+ | 0 | 1.0% | 40.7% | 12.7% | 15.9% | 7.3% |
| | 50-59 | 1 | 6.6% | 57.9% | 21.6% | 23.8% | 11.6% |
| | 40-49 | 2 | 27.0% | 68.0% | 29.5% | 32.6% | 16.6% |
| | 30-39 | 3 | 36.4% | 71.2% | 31.5% | 40.2% | 22.7% |
| | 20-29 | 4 | 28.9% | 73.7% | 28.3% | 48.4% | 31.2% |
| | 18-19 | 5 | 0.1% | 73.5% | 17.7% | 45.6% | 29.4% |
| **2. Gender** | | | | | | | |
| | Female | 0 | 9.7% | 63.4% | 27.7% | 31.3% | 11.4% |
| | Male | 1 | 90.4% | 70.6% | 29.3% | 40.1% | 23.9% |
| **Total Felony Convictions** | | | | | | | |
| **3. Felony convictions** | | | | | | | |
| | None | 0 | 2.4% | 63.5% | 18.5% | 36.9% | 24.3% |
| | First | 1 | 20.5% | 57.7% | 19.5% | 31.7% | 21.0% |
| | Second | 2 | 21.2% | 66.0% | 26.0% | 36.5% | 22.9% |
| | Third | 3 | 17.4% | 70.9% | 29.1% | 39.7% | 23.3% |
| | Fourth | 4 | 12.9% | 74.1% | 33.3% | 41.3% | 23.4% |
| | Fifth or more | 5 | 25.7% | 80.6% | 38.5% | 46.3% | 22.9% |
| **Total Adult Felony Record** | | | | | | | |
| **4. Felony homicide offense: murder/manslaughter** | | | | | | | |
| | None | 0 | 98.1% | 70.2% | 29.4% | 39.4% | 22.7% |
| | One or more | 1 | 1.9% | 55.6% | 19.5% | 29.5% | 22.1% |
| **5. Felony sex offense** | | | | | | | |
| | None | 0 | 93.6% | 70.4% | 30.1% | 40.0% | 22.9% |
| | One | 1 | 5.6% | 61.9% | 16.1% | 28.2% | 18.4% |
| | Two or more | 2 | 0.7% | 60.6% | 11.1% | 29.9% | 20.9% |
| **6. Felony violent property conviction** | | | | | | | |
| | None | 0 | 78.7% | 69.1% | 29.3% | 38.9% | 22.3% |
| | One | 1 | 17.8% | 72.3% | 28.9% | 40.6% | 24.2% |
| | Two or more | 2 | 3.5% | 75.2% | 28.3% | 40.5% | 22.9% |
| **7. Felony assault-not domestic violence** | | | | | | | |
| | None | 0 | 83.7% | 69.6% | 29.9% | 38.7% | 21.3% |
| | One | 1 | 13.9% | 70.9% | 26.0% | 41.6% | 28.6% |
| | Two | 2 | 2.0% | 73.5% | 22.2% | 44.3% | 34.0% |
| | Three or more | 3 | 0.4% | 74.0% | 22.5% | 49.0% | 41.3% |
| **8. Felony domestic violence assault** | | | | | | | |
| | None | 0 | 89.5% | 69.9% | 29.7% | 39.2% | 22.1% |
| | One | 1 | 8.3% | 69.3% | 25.4% | 39.3% | 26.5% |
| | Two or more | 2 | 2.3% | 72.7% | 20.8% | 41.5% | 31.7% |

**Table 3.4 Percentage Distribution of 22 CSRA Items and 3-Year Felony Arrest Recidivism Rates, Full Sample (Cont.)**

| | | Value | Percentage Distribution of Sample | Felony | Drug Felony | Property Felony | Violent Felony |
|---|---|---|---|---|---|---|---|
| **Total Adult Felony Record (Cont.)** | | | | | | | |
| **9. Felony weapon offense** | | | | | | | |
| | None | 0 | 86.5% | 69.0% | 28.4% | 38.5% | 21.6% |
| | One | 1 | 11.4% | 75.1% | 33.6% | 43.0% | 28.5% |
| | Two or more | 2 | 2.1% | 77.0% | 36.6% | 46.1% | 33.4% |
| **10. Felony property offense** | | | | | | | |
| | None | 0 | 44.3% | 62.7% | 26.2% | 31.3% | 22.1% |
| | One | 1 | 23.4% | 72.3% | 30.3% | 40.3% | 23.9% |
| | Two | 2 | 13.4% | 75.9% | 31.5% | 46.4% | 23.7% |
| | Three | 3 | 7.8% | 78.3% | 33.5% | 47.8% | 22.4% |
| | Four | 4 | 4.4% | 79.1% | 32.7% | 52.5% | 22.6% |
| | Five or more | 5 | 6.8% | 81.2% | 32.6% | 54.0% | 20.3% |
| **11. Felony drug offense** | | | | | | | |
| | None | 0 | 46.3% | 66.1% | 19.3% | 41.0% | 24.5% |
| | One | 1 | 26.2% | 70.6% | 31.3% | 38.8% | 22.2% |
| | Two | 2 | 14.7% | 72.9% | 37.9% | 36.7% | 20.2% |
| | Three or more | 3 | 12.8% | 78.6% | 50.2% | 36.4% | 19.8% |
| **12. Felony escape** | | | | | | | |
| | None | 0 | 97.5% | 69.7% | 29.0% | 39.1% | 22.7% |
| | One or more | 1 | 2.5% | 77.9% | 35.3% | 45.3% | 22.9% |
| **Adult Misdemeanor Record** | | | | | | | |
| **13. Misdemeanor assault offense-not domestic violence** | | | | | | | |
| | None | 0 | 76.3% | 68.1% | 28.9% | 37.8% | 20.8% |
| | One | 1 | 16.7% | 74.0% | 30.1% | 42.5% | 26.9% |
| | Two | 2 | 4.6% | 78.8% | 30.0% | 45.7% | 30.8% |
| | Three | 3 | 1.6% | 79.8% | 32.0% | 49.4% | 35.8% |
| | Four | 4 | 0.5% | 79.6% | 26.9% | 45.7% | 29.8% |
| | Five or more | 5 | 0.4% | 81.0% | 26.4% | 51.2% | 40.2% |
| **14. Misdemeanor domestic violence assault** | | | | | | | |
| | None | 0 | 97.2% | 69.7% | 29.2% | 39.1% | 22.5% |
| | One | 1 | 2.6% | 74.8% | 27.2% | 42.3% | 29.3% |
| | Two or more | 2 | 0.2% | 82.0% | 28.0% | 43.0% | 32.0% |
| **15. Misdemeanor sex offense** | | | | | | | |
| | None | 0 | 95.6% | 69.8% | 29.1% | 39.3% | 22.8% |
| | One | 1 | 2.8% | 71.8% | 28.8% | 40.0% | 22.4% |
| | Two or more | 2 | 1.6% | 74.2% | 34.0% | 31.5% | 16.3% |
| **16. Misdemeanor other domestic violence** | | | | | | | |
| | None | 0 | 99.0% | 69.9% | 29.2% | 39.2% | 22.7% |
| | One or more | 1 | 1.1% | 70.8% | 29.4% | 39.5% | 23.2% |

**Table 3.4 Percentage Distribution of 22 CSRA Items and 3-Year Felony Arrest Recidivism Rates, Full Sample (Cont.)**

| | | Value | Percentage Distribution of Sample | Felony | Drug Felony | Property Felony | Violent Felony |
|---|---|---|---|---|---|---|---|
| **Adult Misdemeanor Record (Cont.)** | | | | | | | |
| 17. Misdemeanor weapon offense | | | | | | | |
| | None | 0 | 93.3% | 69.6% | 28.9% | 38.9% | 22.3% |
| | One or more | 1 | 6.7% | 73.9% | 32.5% | 43.7% | 28.2% |
| 18. Misdemeanor property offense | | | | | | | |
| | None | 0 | 59.0% | 65.9% | 27.3% | 36.2% | 22.7% |
| | One | 1 | 23.7% | 74.0% | 32.1% | 41.7% | 22.7% |
| | Two | 2 | 9.9% | 76.7% | 31.3% | 44.9% | 22.3% |
| | Three or more | 3 | 7.5% | 79.4% | 31.8% | 47.5% | 23.0% |
| 19. Misdemeanor drug offense | | | | | | | |
| | None | 0 | 69.6% | 66.7% | 25.6% | 38.5% | 23.1% |
| | One | 1 | 16.0% | 76.3% | 35.2% | 42.0% | 22.8% |
| | Two or more | 2 | 14.5% | 78.1% | 39.7% | 39.6% | 20.3% |
| 20. Misdemeanor escapes | | | | | | | |
| | None | 0 | 100.0% | 69.9% | 29.2% | 39.2% | 22.7% |
| | One or more | 1 | 0.0% | 72.7% | 31.8% | 54.6% | 22.7% |
| 21. Misdemeanor alcohol offense | | | | | | | |
| | None | 0 | 89.7% | 70.2% | 29.7% | 39.8% | 22.9% |
| | One or more | 1 | 10.3% | 67.2% | 24.8% | 33.7% | 20.4% |
| **Total Sentence/Supervision Violations** | | | | | | | |
| 22. Total sentence/supervision violations | | | | | | | |
| | None | 0 | 33.1% | 55.6% | 20.4% | 30.4% | 17.6% |
| | One | 1 | 17.1% | 69.1% | 26.5% | 38.2% | 22.9% |
| | Two | 2 | 12.9% | 74.1% | 31.2% | 42.2% | 25.1% |
| | Three | 3 | 10.2% | 77.7% | 33.5% | 44.9% | 26.3% |
| | Four | 4 | 7.5% | 79.3% | 35.2% | 44.7% | 25.3% |
| | Five or more | 5 | 19.1% | 84.6% | 40.7% | 48.2% | 26.6% |

**Table 3.5 Percentage Distribution of 22 CSRA Items and 3-Year Felony Conviction Recidivism Rates, Full Sample**

| | | Value | Percentage Distribution of Sample | Felony | Felony Drug | Felony Property | Violent Felony |
|---|---|---|---|---|---|---|---|
| **Demographics** | | | | | | | |
| **1. Age at time of release** | | | | | | | |
| | 60+ | 0 | 1.0% | 14.9% | 6.4% | 6.9% | 1.8% |
| | 50-59 | 1 | 6.6% | 23.1% | 11.0% | 11.1% | 3.4% |
| | 40-49 | 2 | 27.0% | 31.0% | 16.4% | 15.2% | 4.6% |
| | 30-39 | 3 | 36.4% | 35.7% | 17.4% | 20.2% | 7.7% |
| | 20-29 | 4 | 28.9% | 37.8% | 14.9% | 24.8% | 11.8% |
| | 18-19 | 5 | 0.1% | 35.3% | 13.2% | 22.1% | 16.2% |
| **2. Gender** | | | | | | | |
| | Female | 0 | 9.7% | 29.5% | 15.0% | 15.7% | 2.3% |
| | Male | 1 | 90.4% | 34.5% | 16.0% | 19.8% | 8.3% |
| **Total Felony Convictions** | | | | | | | |
| **3. Felony convictions** | | | | | | | |
| | None | 0 | 2.4% | 26.5% | 10.2% | 17.3% | 7.7% |
| | First | 1 | 20.5% | 24.8% | 10.1% | 14.6% | 7.4% |
| | Second | 2 | 21.2% | 30.6% | 13.9% | 17.4% | 8.0% |
| | Third | 3 | 17.4% | 33.9% | 15.3% | 19.8% | 8.1% |
| | Fourth | 4 | 12.9% | 36.9% | 18.3% | 20.6% | 8.3% |
| | Fifth or more | 5 | 25.7% | 43.5% | 21.8% | 24.3% | 7.2% |
| **Total Adult Felony Record** | | | | | | | |
| **4. Felony homicide offense: murder/manslaughter** | | | | | | | |
| | None | 0 | 98.1% | 34.2% | 16.0% | 19.6% | 7.7% |
| | One or more | 1 | 1.9% | 22.2% | 9.6% | 13.4% | 7.9% |
| **5. Felony sex offense** | | | | | | | |
| | None | 0 | 93.6% | 34.6% | 16.4% | 19.8% | 7.8% |
| | One | 1 | 5.6% | 25.9% | 9.2% | 13.4% | 5.9% |
| | Two or more | 2 | 0.7% | 22.0% | 4.9% | 13.0% | 8.7% |
| **6. Felony violent property conviction** | | | | | | | |
| | None | 0 | 78.7% | 34.1% | 15.9% | 19.6% | 7.6% |
| | One | 1 | 17.8% | 33.8% | 15.8% | 18.8% | 8.1% |
| | Two or more | 2 | 3.5% | 32.7% | 14.2% | 18.2% | 7.8% |
| **7. Felony assault-not domestic violence** | | | | | | | |
| | None | 0 | 83.7% | 34.6% | 16.5% | 19.5% | 7.3% |
| | One | 1 | 13.9% | 31.2% | 13.4% | 18.7% | 9.6% |
| | Two | 2 | 2.0% | 29.7% | 9.9% | 19.5% | 12.1% |
| | Three or more | 3 | 0.4% | 29.6% | 8.7% | 21.4% | 16.3% |
| **8. Felony domestic violence assault** | | | | | | | |
| | None | 0 | 89.5% | 34.3% | 16.1% | 19.6% | 7.5% |
| | One | 1 | 8.3% | 31.5% | 14.1% | 18.1% | 8.6% |
| | Two or more | 2 | 2.3% | 31.0% | 12.3% | 19.9% | 12.6% |
| **9. Felony weapon offense** | | | | | | | |
| | None | 0 | 86.5% | 33.4% | 15.4% | 19.2% | 7.2% |
| | One | 1 | 11.4% | 37.3% | 18.1% | 20.7% | 10.6% |
| | Two or more | 2 | 2.1% | 41.7% | 21.7% | 23.2% | 12.5% |

**Table 3.5 Percentage Distribution of 22 CSRA Items and 3-Year Felony Conviction Recidivism Rates, Full Sample (Cont.)**

| | | Value | Percentage Distribution of Sample | Felony | Felony Drug | Felony Property | Violent Felony |
|---|---|---|---|---|---|---|---|
| **Total Adult Felony Record (Cont.)** | | | | | | | |
| **10. Felony property offense** | | | | | | | |
| | None | 0 | 44.3% | 27.3% | 14.3% | 13.2% | 7.5% |
| | One | 1 | 23.4% | 35.8% | 16.5% | 20.2% | 8.4% |
| | Two | 2 | 13.4% | 38.8% | 17.1% | 24.4% | 8.4% |
| | Three | 3 | 7.8% | 41.9% | 18.0% | 27.0% | 7.9% |
| | Four | 4 | 4.4% | 43.8% | 17.0% | 29.6% | 7.3% |
| | Five or more | 5 | 6.8% | 46.7% | 17.9% | 32.5% | 5.9% |
| **11. Felony drug offense** | | | | | | | |
| | None | 0 | 46.3% | 30.5% | 9.8% | 21.1% | 8.9% |
| | One | 1 | 26.2% | 34.5% | 17.0% | 18.9% | 7.3% |
| | Two | 2 | 14.7% | 36.5% | 20.7% | 17.9% | 6.5% |
| | Three or more | 3 | 12.8% | 42.9% | 29.9% | 16.3% | 5.8% |
| **12. Felony escape** | | | | | | | |
| | None | 0 | 97.5% | 33.8% | 15.8% | 19.3% | 7.7% |
| | One or more | 1 | 2.5% | 42.0% | 20.1% | 23.5% | 7.8% |
| **Adult Misdemeanor Record** | | | | | | | |
| **13. Misdemeanor assault offense-not domestic violence** | | | | | | | |
| | None | 0 | 76.3% | 33.4% | 15.6% | 19.0% | 7.1% |
| | One | 1 | 16.7% | 35.6% | 16.5% | 20.4% | 9.0% |
| | Two | 2 | 4.6% | 37.2% | 16.7% | 21.6% | 10.4% |
| | Three | 3 | 1.6% | 38.2% | 18.7% | 21.3% | 12.8% |
| | Four | 4 | 0.5% | 38.4% | 18.0% | 22.0% | 13.9% |
| | Five or more | 5 | 0.4% | 31.6% | 10.9% | 22.4% | 10.3% |
| **14. Misdemeanor domestic violence assault** | | | | | | | |
| | None | 0 | 97.2% | 34.0% | 15.9% | 19.4% | 7.6% |
| | One | 1 | 2.6% | 33.8% | 15.4% | 19.4% | 10.2% |
| | Two or more | 2 | 0.2% | 36.0% | 15.0% | 26.0% | 15.0% |
| **15. Misdemeanor sex offense** | | | | | | | |
| | None | 0 | 95.6% | 34.0% | 15.8% | 19.5% | 7.8% |
| | One | 1 | 2.8% | 34.3% | 15.3% | 18.8% | 6.9% |
| | Two or more | 2 | 1.6% | 34.0% | 18.4% | 15.1% | 4.8% |
| **16. Misdemeanor other domestic violence** | | | | | | | |
| | None | 0 | 99.0% | 34.0% | 15.9% | 19.5% | 7.7% |
| | One or more | 1 | 1.1% | 31.5% | 15.9% | 16.9% | 6.1% |
| **17. Misdemeanor weapon offense** | | | | | | | |
| | None | 0 | 93.3% | 33.7% | 15.7% | 19.3% | 7.6% |
| | One or more | 1 | 6.7% | 38.1% | 17.9% | 21.8% | 9.8% |
| **18. Misdemeanor property offense** | | | | | | | |
| | None | 0 | 59.0% | 31.0% | 14.7% | 17.3% | 8.1% |
| | One | 1 | 23.7% | 37.0% | 17.7% | 21.0% | 7.5% |
| | Two | 2 | 9.9% | 38.9% | 17.2% | 23.3% | 6.6% |
| | Three or more | 3 | 7.5% | 41.9% | 17.6% | 26.6% | 7.1% |

**Table 3.5 Percentage Distribution of 22 CSRA Items and 3-Year Felony Conviction Recidivism Rates, Full Sample (Cont.)**

| | | Value | Percentage Distribution of Sample | Felony | Felony Drug | Felony Property | Violent Felony |
|---|---|---|---|---|---|---|---|
| Adult Misdemeanor Record (Cont.) | | | | | | | |
| 19. Misdemeanor drug offense | | | | | | | |
| | None | 0 | 69.6% | 31.7% | 13.4% | 19.1% | 8.1% |
| | One | 1 | 16.0% | 39.3% | 20.2% | 21.3% | 7.5% |
| | Two or more | 2 | 14.5% | 39.5% | 22.8% | 19.1% | 6.1% |
| 20. Misdemeanor escapes | | | | | | | |
| | None | 0 | 100.0% | 34.0% | 15.9% | 19.4% | 7.7% |
| | One or more | 1 | 0.0% | 27.3% | 9.1% | 18.2% | 4.6% |
| 21. Misdemeanor alcohol offense | | | | | | | |
| | None | 0 | 89.7% | 34.4% | 16.2% | 19.9% | 7.9% |
| | One or more | 1 | 10.3% | 30.5% | 13.0% | 15.7% | 6.3% |
| Total Sentence/Supervision Violations | | | | | | | |
| 22. Total sentence/supervision violations | | | | | | | |
| | None | 0 | 33.1% | 24.9% | 10.6% | 14.8% | 5.9% |
| | One | 1 | 17.1% | 31.6% | 14.1% | 18.6% | 8.1% |
| | Two | 2 | 12.9% | 35.9% | 17.0% | 20.1% | 8.5% |
| | Three | 3 | 10.2% | 39.0% | 17.9% | 22.7% | 9.5% |
| | Four | 4 | 7.5% | 41.3% | 19.7% | 23.5% | 8.9% |
| | Five or more | 5 | 19.1% | 45.2% | 23.2% | 24.4% | 8.5% |

## Analyses of recidivism by risk groups

While the AUCs provides a summary statistic of how well the CSRA predicts recidivism, it is useful to display the scale's accuracy by graphically presenting recidivism rates by the five risk groups. Figure 3.1 presents the 3-year "any" arrest recidivism rates for each of the five risk groups.

Within each group, we present the percent with any felony arrest during the follow-up period, those with any felony arrest for a violent offense, property, and drug offense. Individuals can appear in more than one offense category; thus they can be counted in felony drug, property as well as violent, if their most serious arrest offense for a given arrest cycle is classified by the category. Within the low risk group, 48 percent are arrested for a felony within the 3-year follow-up period. (Of that 48 percent, 30 percent are arrested for a felony probation/parole violation.) Seventeen percent are arrested for a drug felony, 10 percent for a property felony and 11 percent for a violent felony. In contrast, over 80% of those classified as high risk violent are arrested for a felony during the follow-up; 38 percent for a violent felony offense. The CSRA discriminates between high and low risk as shown in the figure, -- approximately three and a half times as many high risk violent offenders are arrested for a violent offense, compared with the low risk group. The three high risk groups have the highest overall recidivism rates, with the high risk drug group having the highest percent arrested for felony drug offenses, the high risk property group having the highest percent arrested for a felony property offense; and the high risk violent group having the highest rate of violent felony arrest.

**Figure 3.1 Any Felony Arrest During 3-Year Follow-Up, Validation Sample**



Figure 3.2 presents the "most serious" recidivism arrest during the three year follow-up. For example, if a parolee were arrested in one arrest cycle for a violent crime and in another cycle for a property crime, he/she would appear only in the violent crime category. As expected, this graph shows lower recidivism rates for property and drug offenses, although the same overall pattern observed in Figure 3.1 remains.

**Figure 3.2 Most Serious Felony Arrest During 3-Year Follow-Up, Validation Sample**



Figures 3.3 and 3.4 show parallel findings for conviction during the three-year follow-up. Conviction patterns mirror those shown earlier for arrests, although the overall recidivism percentages are lower, since not all arrests end in convictions. In the Appendix we present figures for "first felony arrest," "first felony conviction," and "return to custody."

## Figure 3.3 Any Felony Conviction During Three-Year Follow-Up, Validation Sample



## Figure 3.4 Most Serious Felony Conviction During Three-Year Follow-Up, Validation Sample



**Detailed Recidivism Offenses**

Tables 3.6 through 3.9 present more detailed information on the types of offenses (felonies and misdemeanors) for which releasees were arrested/convicted during the follow-up period.

**Arrests**

Table 3.6 shows the violent felony arrest recidivism by risk group for the three years following release from prison. Categories are not mutually exclusive.

## Table 3.6: Violent Felony Arrest Recidivism by CSRA Risk Group and Type, Full Sample

|  | Low | Moderate | High Drug | High Property | High Violent |
|---|---|---|---|---|---|
| Violent | 10.4% | 21.8% | 22.0% | 26.0% | 38.2% |
| Homicide/Manslaughter | 0.3% | 1.0% | 0.7% | 1.0% | 1.9% |
| Violent Property* | 2.0% | 5.4% | 6.0% | 8.2% | 9.6% |
| Assault | 6.4% | 12.0% | 11.8% | 13.6% | 23.2% |
| Sex Offenses | 1.1% | 1.3% | 1.1% | 1.1% | 1.7% |
| Weapons | 2.1% | 6.3% | 6.4% | 7.5% | 12.1% |

*Note: Violent property offenses include robbery, kidnapping, extortion, first degree burglary and first degree arson.

We also had data available on misdemeanor arrest recidivism, as shown in Table 3.7. Categories are not mutually exclusive. Individuals with misdemeanor arrests may have been arrested for felonies as well.

## Table 3.7: Misdemeanor Arrest Recidivism by CSRA Risk Group and Type, Full Sample

|  | Low | Moderate | High Drug | High Property | High Violent |
|---|---|---|---|---|---|
| Assault-Non Domestic Violence | 5.5% | 12.0% | 14.6% | 15.6% | 24.1% |
| Assault-Domestic Violence | 0.6% | 1.0% | 0.9% | 1.0% | 2.0% |
| Sex Offenses | 1.5% | 1.8% | 3.6% | 1.9% | 1.9% |
| Domestic Violence-Related Property Crime | 0.4% | 0.7% | 0.8% | 0.7% | 1.7% |
| Weapons | 0.7% | 1.6% | 1.9% | 2.1% | 3.5% |
| Property | 8.5% | 14.3% | 18.4% | 21.6% | 20.9% |
| Drug | 16.0% | 26.8% | 44.2% | 36.7% | 34.6% |
| Escape | 0.0% | 0.1% | 0.1% | 0.1% | 0.1% |
| Alcohol | 6.8% | 8.4% | 7.4% | 7.7% | 9.8% |

**Convictions**

Table 3.8 shows the violent felony reconviction rates by risk group for the three year period following release from prison. Categories are not mutually exclusive.

## Table 3.8: Violent Felony Conviction Recidivism by CSRA Risk Group and Type, Full Sample

|  | Low | Moderate | High Drug | High Property | High Violent |
|---|---|---|---|---|---|
| Violent | 3.0% | 7.3% | 6.3% | 8.8% | 14.6% |
| Homicide/Manslaughter | 0.1% | 0.2% | 0.2% | 0.3% | 0.5% |
| Violent Property | 0.5% | 1.6% | 1.4% | 2.4% | 2.7% |
| Assault | 1.5% | 3.2% | 2.9% | 3.6% | 7.4% |
| Sex Offenses | 0.4% | 0.4% | 0.3% | 0.3% | 0.5% |
| Weapons | 0.7% | 2.4% | 2.0% | 2.8% | 4.9% |

We also had data available on misdemeanor conviction recidivism, as shown in Table 3.9. Again, categories are not mutually exclusive, and individuals with misdemeanor convictions may have been convicted for felonies as well.

### Table 3.9: Misdemeanor Conviction Recidivism by CSRA Risk Group and Type, Full Sample

|  | Low | Moderate | High Drug | High Property | High Violent |
|---|---|---|---|---|---|
| Assault-Non Domestic Violence | 2.1% | 4.8% | 6.2% | 6.4% | 10.5% |
| Assault-Domestic Violence | 0.5% | 0.9% | 0.8% | 0.9% | 1.8% |
| Sex Offenses | 0.6% | 0.8% | 1.8% | 0.8% | 0.7% |
| Domestic Violence-Related property Crime | 0.2% | 0.3% | 0.3% | 0.3% | 0.7% |
| Weapons | 0.3% | 0.5% | 0.7% | 0.8% | 1.2% |
| Property | 3.9% | 6.0% | 7.6% | 8.1% | 9.2% |
| Drug | 5.8% | 10.2% | 18.3% | 14.3% | 12.9% |
| Escape | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% |
| Alcohol | 3.2% | 4.0% | 3.4% | 3.5% | 4.8% |

## Subgroup analyses

One of the concerns about all instruments is how well the they predict for subgroups. For example, is the tool equally predictive for males and females? For Hispanic and white offenders? The next set of analyses replicate the analyses of AUC values and recidivism figures for subgroups defined by gender, ethnicity, status at release (first time or violator). For each subgroup below, we present the distribution of risk scores. We then present the AUCs and the percent with different recidivism outcomes in order to gauge the extent to which the scale appears to be valid for the subgroups.[5]

### Results for Gender Subgroups

Figure 3.5 presents the risk distribution by gender. Not surprisingly, women are more likely than men to be in the lower risk groups. Figures 3.5 through 3.8 display the four major recidivism outcomes – any felony, drug felony, property felony, and violent felony for males and females.

## Figure 3.5 Distribution of Risk Levels, by Gender, Validation Sample



---

**Figure 3.6 "Any" Felony Arrest During 3-Year Follow-up, By Gender, Validation Sample**



**Figure 3.7 "Any" Felony Property Arrest During 3-Year Follow-up, by Gender, Validation Sample**



**Figure 3.8 "Any" Felony Drug Arrest During 3-Year Follow-up, by Gender, Validation Sample**



**Figure 3.9 "Any" Violent Felony Arrest During 3-Year Follow-up, by Gender, Validation Sample**



The AUCs for the subgroups are presented below in Table 3.10. AUCs are slightly lower for females for felony arrest, felong drug arrest and felony violent arrest.

**Table 3.10 AUCs for Gender Subgroups, Validation Sample**

| Subgroup | Felony Arrest | Felony Drug Arrest | Felony Property Arrest | Felony Violent Arrest |
|----------|---------------|--------------------|------------------------|-----------------------|
| Males | .697 | .683 | .670 | .656 |
| Females | .669 | .667 | .672 | .640 |

**Results for Ethnicity Subgroups**

Figure 3.10 presents the distribution of CSRA groups by offender ethnicity. Whites and "others" are more likely than Hispanics and blacks to be included in the Low Risk category, however, they are about equally like to be in the High Property and High Violent groups as offenders of other ethnic groups.

## Figure 3.10 Distribution of Risk Levels, by Ethnicity, Validation Sample



## Figure 3.11 "Any" Felony Arrest During 3-Year Follow-up, By Ethnicity, Validation Sample



28

**Figure 3.12 "Any" Felony Property Arrest During 3-Year Follow-up, by Ethnicity, Validation Sample**



**Figure 3.13 "Any" Felony Drug Arrest During 3-Year Follow-up, by Ethnicity, Validation Sample**



**Figure 3.14 "Any" Violent Felony Arrest During 3-Year Follow-up, by Ethnicity, Validation Sample**



The AUCs for the subgroups are presented below in Table 3.11. AUCs do not vary much by ethnicity, although the AUCs for black offenders are the lowest for three of the four outcome measures – felony arrest, felony property, and felony violent arrest.

**Table 3.11 AUCs for Ethnicity Subgroups, Validation Sample**

| Subgroup | Felony Arrest | Felony Drug Arrest | Felony Property Arrest | Felony Violent Arrest |
|---|---|---|---|---|
| White | .693 | .682 | .684 | .672 |
| Black | .680 | .678 | .652 | .650 |
| Hispanic | .698 | .663 | .680 | .681 |
| Other | .700 | .739 | .677 | .649 |

**Results for Conviction Offense Subgroups**

Figure 3.15 presents the distribution of CSRA groups by original conviction offense. Offenders convicted for sex offenses were disproportionately represented in the low risk group. No clear differences emerge among conviction offense types for "any" felony arrest, however property offenders are disproportionately represented in each risk group for the outcome "any" felony property arrest. Similarly, drug offenders are disproportionately represented for "any" felony drug arrest. Offenders with a drug conviction are disproportionately arrested among all three high risk groups.

**Figure 3.15 Distribution of Risk Levels, by Original Conviction Offense, Validation Sample**



**Figure 3.16 "Any" Felony Arrest During 3-Year Follow-up, By Conviction Offense, Validation Sample**



**Figure 3.17 "Any" Felony Property Arrest During 3-Year Follow-up, by Conviction Offense, Validation Sample**



**Figure 3.18 "Any" Felony Drug Arrest During 3-Year Follow-up, by Conviction Offense, Validation Sample**



**Figure 3.19 "Any" Violent Felony Arrest During 3-Year Follow-up, by Conviction offense, Validation Sample**



The AUCs for the subgroups are presented below in Table 3.12. AUCs vary somewhat by offense with sex offenders having the highest AUC for felony arrest and violent non-sex offenders having the highest AUC for felony drug arrest.

**Table 3.12 AUCs for Offense Subgroups, Validation Sample**

| Subgroup | Felony Arrest | Felony Drug Arrest | Felony Property Arrest | Felony Violent Arrest |
|----------|---------------|--------------------|-----------------------|----------------------|
| Drug Felony | .696 | .666 | .680 | .694 |
| Property Felony | .666 | .653 | .651 | .664 |
| Sex Felony | .743 | .659 | .693 | .673 |
| Violent non-Sex Felony | .688 | .786 | .645 | .639 |

**Results for Release Status Subgroups**

Figure 3.20 presents the distribution of offenders for those whose 2002-2003 release was their first from their sentence and those for whom the release was not the first (e.g., offenders were parole violators). First releases were more likely to be lower risk offenders; higher risk groups were more heavily weighted by offenders who were being released from parole violations.

**Figure 3.20 Distribution of Risk Levels, by Release Status, Validation Sample**



**Figure 3.21 "Any" Felony Arrest During 3-Year Follow-up, By Release Status, Validation Sample**



**Figure 3.22 "Any" Felony Property Arrest During 3-Year Follow-up, by Release Status, Validation Sample**



**Figure 3.23 "Any" Felony Drug Arrest During 3-Year Follow-up, by Release Status, Validation Sample**



**Figure 3.24 "Any" Violent Felony Arrest During 3-Year Follow-up, by Release Status, Validation Sample**



The AUCs for the subgroups are presented below in Table 3.13. AUCs for first releases are consistently higher than for those who were released in 2002-2003 for the first time from their sentence.

**Table 3.13 AUCs for Release Status Subgroups, Validation Sample**

| Subgroup | Felony Arrest | Drug Arrest | Property Arrest | Violent Arrest |
|----------|---------------|-------------|-----------------|----------------|
| First release | .676 | .669 | .687 | .683 |
| Later release | .649 | .665 | .647 | .648 |

## 4. CONCLUSIONS

The CSRA was developed as a static risk assessment tool for CDCR, adapting the static risk assessment tool developed by the Washington State Institute for Public Policy for use in Washington State.

### How it Works

The tool considers age at release, gender, and counts of prior convictions for a range of felonies and misdemeanors for placement of offenders into one of five risk groups: Low Risk; Moderate Risk; High Risk Drug; High Risk Property; and High Risk Violent. The tool uses information from automated California Department of Justice criminal history records ("rap sheets") to calculate risk group assignment. The use of an automated tool has several advantages over an instrument that is completed manually – it is much faster, using automated computer scoring algorithms and is more consistent than manual scoring, in which inter-rater reliability may be an issue.

### How Well it Works

The Area Under the Curve (AUC) is used as a metric to indicate how well the tool predicts recidivism. AUC ranges from .50 (which indicated a tool that is no better than chance) to 1.00, which indicates perfect predictability. Scores in the .60s represent weak predictability; scores in the .70s indicate moderate predictability; scores in the .80s indicate strong predictability. With the CSRA, we used both arrests and convictions as outcome measures to gauge the tool's predictive accuracy. Prediction for a felony arrest within three years after release from prison was better than for conviction, with an AUC of .704 for the construction sample and .696 for the validation sample, representing a moderately predictive tool. AUCs for subsequent conviction

ranged from .650 to .681, considered weak AUCs. Prediction accuracy varied somewhat between subgroups defined by gender, ethnicity, conviction offense, and whether the offender was on his first release from prison for the current sentence.

## Current Use of CSRA in PVDMI

The CDCR Division of Adult Parole Operations (DAPO) in conjunction with the Center for Effective Public Policy (CEPP) has recently developed the Parole Violation Decision Making Instrument (PVDMI). This tool allows parole agents and administrators to consider parolee risk, severity of parole violation and significant stabilizing and destabilizing factors in a parolee's life in determining the most appropriate sanction response to parole violations.

At its core, the PVDMI combines two scales – risk of recidivism and severity of current violation, along with escalation for sex offenders – to reach a numeric score that is then associated with recommended sanctions. The CSRA is being used to calculate the risk of recidivism for parolees.

## Next Steps in Development and Refinement

The CEBC is collaborating with CDCR on a number of enhancements to the CSRA. They include:

- Developing a set of rules for manual scoring of hard copy criminal history records for offenders who may not have automated records;
- Refining the mapping of over 5,000 California penal and other codes into the 22 felony and misdemeanor offenses to assure consistency and completeness;
- Devising computer syntax to extract information from "comment fields" in the DOJ rap sheets that may contain valid criminal history information;
- Investigating the use of parole violations that do not appear on automated "rap sheets," but are recorded on CDCR automated systems. This would include violations that do not result in a criminal arrest or conviction, but may be important markers for risk prediction.

Resulting refinements of the CSRA will be documented in additional reports by the Center for Evidence-Based Corrections.

## REFERENCES

Andrews, D.A. and Bonta, J. (1998). *The psychology of criminal conduct.* Cincinnati, Ohio: Anderson Publishing Company.

Barnoski. R. and Aos, E. (2003). *Washington's offender accountability act: An analysis of the Department of Corrections' risk assessment.* Olympia: Washington State Institute for Public Policy, Document No. 03-12-1202.

Barnoski, R. and Drake, E. (2007). *Washington's offender accountability act: Department of Corrections' static risk assessment.* Olympia: Washington State Institute for Public Policy.

Burke, Peggy (2004). *Parole violations revisited: A handbook on strengthening parole practices for public safety and successful transition to the community,* Washington, D.C., and Silver Spring, MD: U.S. Department of Justice, National Institute of Corrections, and Center for Effective Public Policy.

Carter, Madeline, (2001). *Responding to parole and probation violations: A handbook to guide local policy development.* Washington, D.C. and Silver Spring, MD: U.S. Department of Justice, National Institute of Corrections and Center for Effective Public Policy.

Catillo, R., Sessions III, W.K., Steer, J.R., Hinojosa, R.H., Horowitz, M.E., O'Neill, M.E., Reilly, Jr., E.F., Rhodes, D.J., (May 2004). *Measuring recidivism: The criminal history computation of the federal sentencing guidelines.* A component of the fifteen year report on the U.S. Sentencing Commission's legislative mandate.

Langan, Patrick A. and Levin, David J. (2002). Recidivism of prisoners released in 1994. *BJS Special Report*, Washington, D.C.: U.S. Department of Justice, NCJ 193427.

Hanley, J. A., & McNeil, B. J. (1982). The meaning and use of thearea under a receiver operating characteristic (ROC) curve. *Radiology*, 143, 29-36.

Harris, G. T., & Rice, M. E. (2007). Characterizing the value of actuarial violence risk assessment. *Criminal Justice and Behavior*, 35(1) 153-153.

Mossman, D. (1994). Assessing predictions of violence: Being accurate about accuracy. *Journal of Consulting and Clinical Psychology*, 62, 783-792.

Mossman, D. (2007). Analyzing the performance of risk assessment instruments: A response to Vrieze and Grove. *Law and Human Behavior,* (2008) 32:279–291.

Zhang, S., Farabee, D., and Roberts, R. (2007, October). *Predicting parolee risk of recidivism—challenge of finding instruments with sufficient predictive power.* Paper presented at the 66th semi-annual meeting for the Association for Criminal Justice Research (California).

**APPENDIX**

### Figure A1 First Felony Arrest During Three-Year Follow-Up, Validation Sample



### Figure A2 First Felony Conviction During Three-Year Follow-Up, Validation Sample



38

**Figure A3 First Return to CDCR Custody, Validation Sample**

