KAMALA D. HARRIS
Attorney General of the State of California
JONATHAN L. WOLFF
Senior Assistant Attorney General
JAY C. RUSSELL
Supervising Deputy Attorney General
DEBBIE VOROUS - SBN 166884
PATRICK McKINNEY – SBN 215228
Deputy Attorneys General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
Telephone: (415) 703-5500
Facsimile: (415) 703-5843
Email: Patrick.McKinney@doj.ca.gov

HANSON BRIDGETT LLP
JERROLD C. SCHAEFER – SBN 39374
PAUL B. MELLO – SBN 179755
WALTER R. SCHNEIDER – SBN 173113
SAMANTHA D. WOLFF- SBN 240280
PAUL B. GRUWELL – SBN 252474
425 Market Street, 26th Floor
San Francisco, California 94105
Telephone: (415) 777-3200
Facsimile: (415) 541-9366
pmello@hansonbridgett.com

Attorneys for Defendants

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

## AND THE NORTHERN DISTRICT OF CALIFORNIA

## UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

## PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| RALPH COLEMAN, et. al.,<br>Plaintiffs,<br>v.<br>EDMUND G. BROWN JR., et al.,<br>Defendants. | CASE NO. 2:90-cv-00520 LKK JFM P<br><br>**THREE-JUDGE COURT** |
| MARCIANO PLATA, et al.,<br>Plaintiffs,<br>v.<br>EDMUND G. BROWN JR., et al.,<br>Defendants. | CASE NO. C01-1351 TEH<br><br>**THREE-JUDGE COURT**<br><br>**DECLARATION OF MICHAEL STAINER IN SUPPORT OF DEFENDANTS' RESPONSE TO OCTOBER 11, 2012 ORDER TO DEVELOP PLANS TO ACHIEVE REQUIRED PRISON POPULATION REDUCTION** |

///

///

I, Michael Stainer, declare:

1. I am the Deputy Director of the Division of Adult Institutions (DAI), Facility Operations, for the California Department of Corrections and Rehabilitation (CDCR). I am competent to testify to the matters set forth in this declaration and if called upon to do so, I would and could so testify. I submit this declaration in support of Defendants' Response to the Court's October 11, 2012 Order to Develop Plans to Achieve Required Prison Population Reduction.

2. I began working for CDCR in 1987 as a correctional officer. Over the years I rose through the correctional ranks to sergeant, lieutenant, captain, associate warden, and chief deputy warden. In December 2010, I became acting warden at the California Correctional Institution in Tehachapi. I later became an associate director at DAI and was named Deputy Director in April, 2012. In my current role as Deputy Director, I am responsible for the management and oversight of the adult male institutions, including the conservation camps also known as "fire camps." I directly supervise associate directors, who, in turn, supervise the wardens of the institutions. I am charged with ensuring that security arrangements are sufficient to ensure the safety of the inmates, staff, visitors, and the public. Included in my duties is oversight of the security operations of the institutions, including regulations and policies to avoid inmate escape, prevent inmate violence, and protect all individuals inside and outside of the security perimeter of each institution and fire camp.

3. I am familiar with the population reduction measure which, if ordered implemented, would permit offenders with violent and serious offenses to be placed in fire camps. I have serious concerns about implementation of such a proposal, as it carries a significant risk of increased inmate escapes, increased risk to citizens who live near the fire camps, and increased risk of injury and victimization of staff and other inmates in the fire camps.

4. CDCR institutions housing serious and violent offenders are usually bounded by a lethal electrified fence that is surrounded by an additional fence. Those

2

Decl. M. Stainer Supp. Defs.' Resp. to Oct. 11, 2012 Order                                    4913499.1

institutions without electrified fences have two fences that are watched by staff to guard against escape. Armed staff observes all entries and exits to the institutions. In most facilities designated to house these violent and serious offenders, armed staff also observes all common areas in each of the institution's facilities, including the yard and dining areas. Armed staff is located inside each celled housing unit, with visual access to most cells and the common areas in the housing unit. The physical structure of the high security level facilities provide controls designed to limit and isolate behaviors inherent to the population housed. The alarm system generates an immediate response and assistance from outside the housing unit should any problem arise, thereby decreasing the potential for serious injury or sustained assaults on inmates and/or staff. Should any inmate become a security risk, there is immediate access to higher security housing in an Administrative Segregation Unit to reduce the risk to other inmates in the housing unit and the facility.

    5.    Fire camps generally have no fencing and no armed staff coverage of entrances and exits, common areas, or housing units. Fire camps have only dormitory-style housing. Fire camps may have as few as 10 custody staff to cover all shifts, leaving as few as one officer on duty at any given time to cover 80-160 inmates. There is no alarm system to generate an immediate response. Should a riot or other multi-inmate incident occur, the minimal staff at the fire camp would be required to sustain a response for long periods of time until mutual aid assistance could arrive from sheriff's deputies or police officers who may be miles away. Should any inmate become a security risk, the inmate would have to be taken back to a CDCR institution or to a county jail, as no higher security housing is present in the fire camps. This would likely create staffing problems as limited custody staff are available at the camps.

    6.    Serious and violent offenders are a greater escape risk than the low security inmates currently placed in fire camps, as they generally have longer sentences and more incentive to escape. Escape is much easier to accomplish when an inmate has no physical barriers to overcome and little chance of being observed by armed staff. This

creates a serious risk to public safety.

7. Serious and violent offenders are more prone to involvement in batteries and more serious behavior that risks the safety of staff and other inmates than the low security inmates currently placed in fire camps. CDCR currently places most of these serious and violent offenders in cells to limit their ability to victimize other inmates in institutions. Fire camp dormitories provide no such limitation. With minimal custody staffing, the risk that a group of inmates could attack staff or other inmates is increased. Furthermore, with no immediate assistance, the risk of serious injury from a sustained assault is significantly increased.

8. Serious and violent offenders are more prone to behavior that requires isolation from other inmates due to their inherent security risk. Fire camps have no high security housing, so any inmate who becomes a security risk must be transported out of the fire camp to the closest institution or to a county jail. This may well require a sheriff's deputy to leave other public safety duties to come to the fire camp to transport an inmate to jail. Or it may require the already minimal custody staff to transport the inmate, thereby reducing even further the staffing available to control the inmates who remain.

I declare that the foregoing is true and correct. Executed this 7th day of January, 2013, at Sacramento, California.

*/s/ Michael Stainer*
Michael Stainer

4

Decl. M. Stainer Supp. Defs.' Resp. to Oct. 11, 2012 Order                4913499.1