1  KAMALA D. HARRIS
   Attorney General of California
2  JONATHAN L. WOLFF
   Senior Assistant Attorney General
3  JAY C. RUSSELL
   Supervising Deputy Attorney General
4  DEBBIE J. VOROUS, State Bar No. 166884
   PATRICK R. MCKINNEY, State Bar No. 215228
5  WILLIAM H. DOWNER, State Bar No. 257644
   Deputy Attorney General
6   1300 I Street, Suite 125
    P.O. Box 944255
7   Sacramento, CA 94244-2550
    Telephone: (916) 324-5345
8   Fax: (916) 324-5205
    E-mail: Debbie.Vorous@doj.ca.gov
9  *Attorneys for Defendants*

10

                IN THE UNITED STATES DISTRICT COURT
11
             FOR THE EASTERN DISTRICT OF CALIFORNIA
12
                      SACRAMENTO DIVISION
13

14

15  **RALPH COLEMAN, et al.,**                    2:90-cv-00520 LKK JFM PC

16                                   Plaintiffs,  **DEFENDANTS' RESPONSE TO**
                                                  **JANUARY 9, 2013 ORDER REQUIRING**
17         v.                                     **FURTHER BRIEFING**

18  **EDMUND G. BROWN, JR., et al.,**             Judge: The Honorable Lawrence K. Karlton

19                                   Defendants.  Action Filed: 1990

20

21

22

23

24

25

26

27

28

1  **I.    INTRODUCTION.**

2         Nothing in the Three-Judge Court's population-reduction order and findings precludes this

3  Court from ruling on the State's termination motion.  Under the law, the Three-Judge Court's

4  order and this Court's injunctive orders remain subject to modification or termination when

5  warranted by changed circumstances.  A key reason for the population-reduction order in the first

6  place was the constitutional deficiencies this Court found in the State's prison mental health care

7  system.  The State has now presented compelling evidence that those deficiencies have been

8  remedied, and has moved to terminate this case and vacate the population-reduction order.

9  Before the State is required to take further action to reduce its prison population, this Court must

10  re-examine whether the reason for the population-reduction order still exists.  The State is

11  confident that when the Court reviews the current evidence, it will find that the State's prison

12  system provides inmates with superior mental health care.  And once this Court has made that

13  determination, the Three-Judge Court will recognize that further court-mandated population

14  reductions are not needed.

15         This Court's power to modify its 1995 judgment and its subsequent remedial orders is

16  "long-established, broad, and flexible."  *Brown v. Plata*, 131 S. Ct. 1910, 1946 (2011).  With that

17  power comes the "continuing duty and responsibility to assess the efficacy and consequences of

18  its order[s]."  *Id.* at 1947.  Rather than preclude this Court from acting, the Three-Judge Court's

19  findings require the State to present "any challenge to the existence of 'current and ongoing'

20  constitutional violations relating to the provision of . . . mental health care" in a termination

21  motion to this Court.  (Aug. 4, 2009 Order, ECF No. 3641, at 54.)  The Three-Judge Court could

22  not have been more clear that it is this Court's duty to consider whether the constitutional

23  violations in this case have been corrected:

24              If, as defendants contend, there are no longer any constitutional
               violations at issue in Plata or Coleman, then there will be no reason
25              to continue either the receivership in Plata or the special mastership
               in Coleman.  *Those are matters for an individual court to decide,*
26              *and defendants should, therefore, file motion* [sic] *for appropriate*
               *relief before me or Judge Karlton individually in those*
27              *cases*.  These three-judge court proceedings are not the place for
               those arguments.

28

1

1 | (Nov. 18, 2008 Tr., *Plata* ECF No. 1829, at 6:24-7:9 [emphasis added].)

2 |      Federal Rule of Civil Procedure 60(b)(5) and the PLRA both establish that rather than

3 | being bound by any purported "finality" of its own past judgments or the Three-Judge Court's

4 | rulings, this Court must consider and promptly rule upon evidence showing that the State has

5 | remedied the constitutional violations that informed this Court's earlier decisions.  Any concerns

6 | about "finality" of judgments would be misplaced, particularly when the Supreme Court ordered

7 | this Court to permit the State to demonstrate that it has implemented "targeted and effective

8 | remedies that will end the constitutional violations" irrespective of strict compliance with the

9 | population-reduction order.  *Plata*, 131 S. Ct. at 1923, 1937, 1941 & 1947.

10 |      The termination motion and supporting evidence establish that the constitutional

11 | violations found by this Court more than seventeen years ago have been resolved.  Because there

12 | are no continuing, systemic constitutional violations, equity and the public's interest in the sound

13 | and efficient operation of its institutions demand that prospective enforcement of injunctive relief

14 | in this case end.  Accordingly, this Court must promptly decide and grant the termination motion.

**II.    THIS COURT IS NOT PRECLUDED FROM DECIDING THE TERMINATION MOTION BY THE POPULATION-REDUCTION ORDER OR ANY FINDING OF THE THREE-JUDGE COURT.**

17 |      This Court has continuing supervision over, and "long-established, broad, and flexible"

18 | authority to modify or vacate, its judgment and remedial orders.  *Plata*, 131 S. Ct. at 1946.  An

19 | injunction must be vacated whenever "changes in the nature of the underlying problem . . . and

20 | new policy insights . . . render[] continued enforcement . . . 'detrimental to the public interest.'"

21 | *Horne v. Flores*, 557 U.S. 447-48, 453 (2009); *Rufo v. Inmates of the Suffolk Cnty. Jail*, 502 U.S.

22 | 367, 384 (1992).  The State's termination motion demonstrates that it is providing timely and

23 | appropriate mental health care.  Accordingly, continued enforcement of the Court's remedies at

24 | the expense of California's fiscal resources and democratic processes—after the constitutional

25 | violations have been corrected—violates the State's right to manage its own affairs.  Neither the

26 | population-reduction order nor any finding of the Three-Judge Court precludes this Court from

27 | considering the State's motion.  Whether analyzed under Rule 60(b)(5), the PLRA, or principles

28 | of equity, the State's motion is entitled to serious consideration and a prompt ruling by this Court.

2

**A.    Rule 60(b) Creates an Exception to Finality in Institutional Reform Litigation.**

The termination motion does not implicate claim or issue preclusion concerns.  *See Bellevue Manor Assocs. v. United States,* 165 F.3d 1249, 1252 (9th Cir. 1999) (Rule 60(b)(5) "creates an exception to the doctrine of claim preclusion.").  The essential purpose of permitting substantive relief from a judgment or order is to allow the federal courts to strike the proper balance between two often conflicting principles—that litigation must be brought to a final close and that justice must be done.  There is no such conflict here; *Plata*, *Horne*, and *Rufo* all  hold that preclusion principles are inapplicable to institutional reform injunctions.  Indeed, the Supreme Court made clear that the Three-Judge Court's population-reduction order was not final when it instructed this Court to permit the State to show that "significant progress [has been] made toward remedying the underlying constitutional violation . . . ."  *Plata*, 131 S. Ct. at 1947.  This instruction is consistent with Rule 60(b), "a provision whose whole purpose is to make an exception to finality."  *Gonzalez v. Crosby*, 545 U.S. 524, 529 (2005) (interpreting Rule 60(b)(6)); *see also Bellevue*, 165 F.3d at 1252.  The State has made its showing of significant progress in remedying any ongoing constitutional violations via its termination motion and this case must now end.

Where a federal court enjoins state public officials, the Supreme Court has unanimously recognized that "finality" considerations carry little weight.  *See Frew v. Hawkins*, 540 U.S. 431, 441 (2004).  If there is a reason to modify an injunction, a "court should make the necessary changes."  *Id.* at 442.  The flexible approach required by Rule 60(b)(5) "allows a court to recognize that the longer an injunction or consent decree stays in place, the greater the risk that it will improperly interfere with a State's democratic processes."  *Horne*, 557 U.S. at 453.

The Supreme Court's affirmance of the population-reduction order has no preclusive effect because the issue on appeal was narrow: "whether the remedial order issued by the three-judge court [was] consistent with requirements and procedures set forth in a congressional statute, the Prison Litigation Reform Act of 1995 (PLRA)."  *Plata*, 131 S. Ct. 1922-23.  Unlike the Three-Judge Court, the Supreme Court was not obligated to determine if the balance of the equities favored an injunction.  By contrast, this Court sits today as a court of equity.  Well-established

3

1    equitable rules require the Court to take into account all circumstances before it in determining

2    whether "applying [the judgment or order] prospectively is no longer equitable."  Fed. R. Civ. P.

3    60(b)(5); *Horne*, 557 U.S. at 447-48.  In doing so, the Court must look to the evidence it had in

4    1994, and determine whether the circumstances reflected in that evidence have changed such that

5    continued prospective enforcement of the judgment is no longer legally justified.  *Id.*  The Three-

6    Judge Court's population-reduction order has no place in that analysis.

7         The State is similarly not precluded by the Three-Judge Court's order from asking this

8    Court to modify its remedial orders based on a finding that California's prison mental health care

9    system currently exceeds constitutional standards.  The parties never litigated this issue in the

10   Three-Judge Court, nor could they have.  Moreover, there is no requirement that the terms of an

11   injunction issued by another court must be fulfilled before a court may consider a modification or

12   termination motion.  *Horne*, 557 U.S. at 450; *Board of Educ. v. Dowell*, 498 U.S. 237, 247

13   (1991).[1]  In modern institutional reform litigation, the Supreme Court has made clear—even when

14   reviewing constitutional violations—that an injunction exceeds "appropriate limits" if it is "aimed

15   at eliminating a condition that does not violate" federal law or "flow from such a violation."  *See*

16   *Horne*, 557 U.S. at 450.  A continuing injunction may be enforced only if there is a substantial

17   continuing violation of federal law, not simply a violation of the injunction.  *See id.*  The point is

18   elementary: the Supreme Court instructed this Court to permit the State to show that it has

19   corrected the constitutional violations with respect to prison mental health care.  *Plata*, 131 S. Ct.

20   at 1941.  Because the State has made this showing, federal court oversight must end.

21       **B.    Preclusion Is Inapplicable to the PLRA, Which Requires this Court to Promptly**
22              **Consider the Termination Motion.**

23        Under the PLRA, "any 'prospective relief' that exceeds the constitutional minimum must

24   be terminated regardless of when it was granted."  *Gilmore v. California*, 220 F.3d 987, 999 (9th

25   _____

26        [1] This position is based on the rejected teaching of *United States v. Swift & Co.*, 286 U.S.
     106, 119 (1932), that a decree "may not be changed . . . if the purposes of the litigation *as*
27   *incorporated in the decree* . . . have not been fully achieved." *United States v. United Shoe*
     *Mach. Corp.*, 391 U.S. 244, 248 (1968) (emphasis added) (describing *Swift*).  The Court should
     not resurrect this standard, which has been superseded by the holdings in *Rufo*, *Horne*, and *Plata*.

28

4

1  Cir. 2000); 18 U.S.C. § 3626(b).  In enacting the PLRA's termination provisions, Congress set an

2  appropriate "standard for obtaining relief from final judgments which impose forward-looking

3  remedies." *Gilmore*, 220 F.3d at 1001.  The Court must also "promptly rule on any motion to

4  modify or terminate prospective relief in a civil action with respect to prison conditions."  18

5  U.S.C. § 3626(e).  It would be contrary to the PLRA's express terms for the Court to refuse to

6  consider the State's evidence based on its historical findings or the population-reduction order.

7          **C.**    **The Supreme Court Instructed this Court and the Three-Judge Court to Consider Requested Modifications to Their Previously Issued Orders.**

8

9        The Supreme Court's opinion in the Three-Judge Court proceeding expressly requires this

10  Court to consider termination or modification of its remedial orders and judgment:

11          *If significant progress is made toward remedying the underlying constitutional violation*, that progress may demonstrate that further

12  population reductions are not necessary or are less urgent than previously believed.  *Were the state to make this showing*, the three-

13  judge court in the exercise of its discretion should consider whether it is appropriate to extend or modify this timeline.

14

15  *Plata*, 131 S. Ct at 1947 (emphasis added); *see also id.* at 1923 ("the [population] reduction need

16  not be accomplished . . . in these substantial numbers if satisfactory, alternate remedies or means

17  for compliance are devised"), 1937 ("If the State does find an adequate remedy other than a

18  population limit, it may seek modification or termination of the three-judge court's order on that

19  basis.") & 1941 ("time and experience may reveal targeted and effective remedies that will end

20  the constitutional violations even without a significant decrease in the general prison

21  population").  As the Three-Judge Court made clear, the venue for the State to show that there is

22  no current and ongoing constitutional violation with respect to prison mental health care is this

23  Court.  (*See* Aug. 4, 2009 Order, ECF No. 3641 ["a motion to terminate under § 3626(b) [is] the

24  proper means for any challenge to the existence of 'current and ongoing' constitutional violations

25  relating to the provision of medical and mental health care in the California prisons"] & Nov. 18,

26  2008 Tr., *Plata* ECF No. 1829, at 6:24-7:9 ["If, as defendants contend, there are no longer any

27  constitutional violations at issue in Plata or Coleman, then there will be no reason to continue

28  either the receivership in Plata or the special mastership in Coleman.  Those are matters for an

5

1    individual court to decide, and defendants should, therefore, file motion [sic] for appropriate

2    relief before me or Judge Karlton individually in those cases."] & 57:20-22.)

3         Requiring compliance with the final benchmark in the population-reduction order as a

4    prerequisite to even considering the termination motion ignores the Supreme Court's holdings.

5    The Supreme Court requires this Court and the Three-Judge Court to consider all evidence

6    showing that past constitutional violations have been corrected.  *Plata*, 131 S. Ct at 1923, 1937,

7    1941 & 1943.  The Three-Judge Court's past findings, including the finding that only a

8    population-reduction order could resolve the past constitutional deficiencies in *Coleman* and

9    *Plata,* thus do not preclude the State's motion.  Those findings and conclusions are subject to

10   change upon the demonstration of evidence controverting them.  They are neither axiomatic nor

11   immutable.  *See Plata*, 131 S. Ct at 1923, 1937, 1941 & 1943 (recognizing that time, changed

12   circumstance, or other, better remedies may justify modification of the remedy); *accord Horne*,

13   557 U.S. at 447-48, 453; *Rufo*, 502 U.S. at 384.

14        Before the Three-Judge Court orders any further adherence to the 2009 population-

15   reduction order, it must reassess whether the constitutional violations, which formed the basis of

16   that order, still exist.  This is especially true because the State has presented overwhelming

17   evidence before this Court that the constitutional violations that once existed in the mental health

18   care system have been remedied.  And as the State has explained, because of the significant

19   actions the State has already undertaken to safely reduce the prison population—decreasing the

20   population by over 43,000 inmates since 2006—any remaining population-reduction options

21   cannot be implemented without adopting risky prison policies, altering state law, and ordering the

22   early release of inmates.  (Defs.' Resp. to Oct. 11, 2012 Order to Develop Plans to Achieve

23   Required Prison Population Reduction, *passim*.)  It would be "putting the cart before the horse"

24   for the Three-Judge Court to order the early release of inmates, only for this Court to determine

25   afterwards that the releases were unnecessary because the mental health care system exceeds

26   constitutional requirements.

27        Rather, this Court must rule on and grant the State's motion to terminate now.  Its decision

28   will then inform any subsequent rulings by the Three-Judge Court.

6

**D.    The Termination Motion Satisfies Rule 60(b)(5)'s "Flexible" Standard.**

Rule 60(b)(5) permits a party to obtain relief from a judgment or order if "the judgment has been satisfied . . . or applying it prospectively is no longer equitable."  Fed. R. Civ. P. 60(b)(5).  "The Rule encompasses the traditional power of a court of equity to modify its decree in light of changed circumstances."  *Frew*, 540 U.S. at 441; *see also Plata*, 131 S. Ct. at 1945 ("A court that invokes equity's power to remedy a constitutional violation by an injunction mandating systemic changes to an institution has the continuing duty and responsibility to assess the efficacy and consequences of its order.").  Relief under Rule 60(b)(5) is appropriate upon a showing of "'a significant change either in factual conditions or law.'"  *Horne*, 557 U.S. at 447 (quoting *Rufo*, 502 U.S. at 384).[2]  "[O]nce a party carries this burden, a court abuses its discretion 'when it refuses to modify an injunction or consent decree in light of such changes.'"  *Horne*, 557 U.S. at 447 (quoting *Agostini v. Felton*, 521 U.S. 203, 215 (1997)).

Because institutional reform decrees "raise sensitive federalism concerns," *Horne* and *Rufo* require federal courts to engage in a broad and flexible Rule 60(b)(5) analysis.  *Horne*, 557 U.S. at 448, 450; *Rufo*, 502 U.S. at 381.  A sweeping injunction, which "reach[es] beyond the parties involved . . . and impact[s] on the public right to the sound and efficient operation of its institutions," remains equitable only so long as it effectively addresses the problem it was designed to remedy.  *Rufo*, 502 U.S. at 381.  The flexible approach thus requires a federal court "to return control to state and local officials as soon as a violation of federal law has been remedied . . . ."  *Horne*, 557 U.S. at 450-51; *see also Frew*, 540 U.S. at 442.  "If a durable remedy has been implemented, continued enforcement of the order is not only unnecessary, but improper."  *Horne*, 557 U.S. at 450; *see also* 18 U.S.C. § 3626(a)(1)(A) (court-ordered relief "shall extend no further than necessary to correct the violation of a federal right of a particular plaintiff or plaintiffs").

---

[2] Rule 60(b)(5) does not limit relief to cases where the changed circumstances were not anticipated at the time the order was entered.  Indeed, it is error for a district court to require "new and unforeseen conditions" under Rule 60(b)(5)'s "less stringent, more flexible standard."  *Rufo*, 502 U.S. at 379-80.

1    By its termination motion, the State has proven that it is maintaining a superior system to

2    ensure that its prisons deliver timely and effective mental health care.  The critical question in the

3    Rule 60(b)(5) inquiry is whether these significant factual changes render continued enforcement

4    of this Court's injunctions inequitable.  When the Court applies the appropriate standard to the

5    termination motion, it will recognize that Rule 60(b)(5)'s flexible standard is satisfied, and equity

6    demands the dissolution of all injunctive relief.

7        **E.    The Termination Motion Does Not Ask this Court to Revisit the Basis for
              the Population-Reduction Order.**

8

9        The State does not seek to relitigate the merits of the Three-Judge Court's population-

10   reduction order or any ruling of the Supreme Court on the record it had before it.  The PLRA

11   "mandates only the termination of prospective relief, it does not require a court to terminate or

12   vacate the underlying final judgment . . . which provides for such relief."  *Gilmore*, 220 F.3d at

13   999-1000.  Similarly, the appropriate inquiry under *Horne* "takes the original judgment as a given

14   and asks only whether 'a significant change either in factual conditions or in law' renders

15   continued enforcement of the judgment 'detrimental to the public interest.'"  *Horne*, 557 U.S. at

16   453 (quoting *Rufo*, 502 U.S. at 384.)

17       In its motion, the State seeks to terminate and vacate all prospective relief, and the Court's

18   supervision of its prison mental health care system.  The State is not asking the Court to

19   reconsider either the 1995 judgment or the Three-Judge Court's population-reduction order.

20   Instead, the termination motion appropriately asks the Court to end its continued enforcement of

21   prospective relief because the State has resolved the constitutional deficiencies that originally

22   justified judicial intervention.

23       Considering current evidence does not conflict with the Three-Judge Court's findings

24   supporting a population-reduction order in 2009.  To the contrary, the Three-Judge Court stated

25   that a termination motion in this Court is "the proper means for any challenge to the existence of

26   'current and ongoing' constitutional violations" with respect to mental health care.  (Aug. 4, 2009

27   Order, ECF No. 3641, at 54; *see also* Nov. 18, 2008 Tr., *Plata* ECF No. 1829, at 6:24-7:9.)  The

28   State's termination motion presents evidence showing that California provides mental health care

8

1  that meets or exceeds constitutional standards.  By comparison, the remedy the Three-Judge

2  Court crafted in 2009 was based on a trial that began in November 2008, in which facts dating as

3  far back as fourteen years before trial were considered, but in which then-current conditions were

4  not allowed to be introduced.  (*See* Aug. 4, 2009 Order, ECF No. 3641, at fn. 42 & Nov. 18, 2008

5  Tr., *Plata* ECF No. 1829, at 57:20-22 ["Twice this Court has said we will not receive that

6  evidence.  You have made as clear a record as you can.  Please don't waste our time."].)

7  Modifying a continuing injunction based on current facts that are historically different from those

8  previously considered does not impermissibly reopen a final judgment—rather, it appropriately

9  recognizes that the judgment has been satisfied.  *See Miller v. French*, 530 U.S. 327, 344-45

10  (2000).

11  **III.  CONCLUSION.**

12       The State has done exactly what it was instructed to do by the Three-Judge Court: it has

13  proven by overwhelming evidence that constitutional inadequacies in its prison mental health

14  system have been corrected, and it has moved to terminate this litigation.  (*See* Termination

15  Motion & Supporting Evidence.)  Neither the population-reduction order nor the findings of the

16  Three-Judge Court preclude this Court from considering the State's motion.  To the contrary, the

17  Supreme Court, consistent with federal law and principles of equity, directed this Court to

18  broadly consider all remedies presented by the parties to correct past constitutional violations.

19  This Court's judgment and subsequent remedial orders have achieved their objectives.  The

20  State's prison mental health care system is one of the best in the nation.  The comprehensive

21  improvements to the system have resolved the underlying problems, thereby requiring this Court

22  to end this case and any further enforcement of the remedial orders.

23  Dated:  January 24, 2013                    KAMALA D. HARRIS
                                                Attorney General of California
24

25                                              By: */s/ Patrick R. McKinney*
                                                    PATRICK R. MCKINNEY
26                                                  Deputy Attorney General
                                                    *Attorneys for Defendants*
27
   CF1997CS0003
28  20665403.doc

                                    9