DONALD SPECTER – 083925
STEVEN FAMA – 099641
PRISON LAW OFFICE
1917 Fifth Street
Berkeley, California 94710-1916
Telephone: (510) 280-2621

MICHAEL W. BIEN – 096891
ERNEST GALVAN – 196065
JANE E. KAHN – 112239
LISA ELLS – 243657
AARON J. FISCHER – 247391
KRISTA STONE-MANISTA – 269083
MARGOT MENDELSON – 268583
ROSEN BIEN GALVAN & GRUNFELD LLP
315 Montgomery Street, Tenth Floor
San Francisco, California 94104-1823
Telephone: (415) 433-6830

CLAUDIA CENTER – 158255
THE LEGAL AID SOCIETY – EMPLOYMENT LAW CENTER
180 Montgomery Street, Suite 600
San Francisco, California 94104-4244
Telephone: (415) 864-8848

WARREN E. GEORGE – 053588
BINGHAM McCUTCHEN LLP
Three Embarcadero Center
San Francisco, California 94111-4066
Telephone: (415) 393-2000

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>            Plaintiffs,<br><br>      v.<br><br>EDMUND G. BROWN, Jr., et al.,<br><br>            Defendants. | Case No. Civ S 90-0520 LKK-JFM<br><br>**PLAINTIFFS' RESPONSE TO JANUARY 9, 2013 ORDER**<br><br>Judge: Hon. Lawrence K. Karlton |

[716823-3]

**TABLE OF CONTENTS**

**Page**

INTRODUCTION .................................................................................................................. 1

FACTUAL AND PROCEDURAL STATEMENT.............................................................. 1

ARGUMENT........................................................................................................................... 6

I.   DEFENDANTS' TERMINATION MOTION IS PROPERLY BEFORE THIS COURT, AND THIS COURT MUST ADDRESS THE MOTION BEFORE THE THREE-JUDGE COURT CAN ADDRESS DEFENDANTS' MOTION TO VACATE OR MODIFY THE POPULATION REDUCTION ORDER............................................................................................................... 6

II.  THIS COURT CANNOT REVISIT THE THREE-JUDGE COURT'S ORDER, AND DEFENDANTS HAVE AN ONGOING OBLIGATION TO COMPLY WITH THAT ORDER UNLESS AND UNTIL IT IS VACATED ......... 8

CONCLUSION..................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page**

## CASES

*Brown v. Plata*,
  131 S. Ct. 1910 (2011) ............................................................................ 7, 8, 9, 10

*Ginest v. Bd. of Cnty. Comm'rs of Carbon Cnty., Wyo.*,
  295 F. Supp. 2d 1274 (D. Wyo. 2003) ................................................................ 8

*Horne v. Flores*,
  557 U.S. 433 (2009) .............................................................................................. 9

*Loyd v. Ala. Dep't. of Corr.*,
  176 F.3d 1336 (11th Cir. 1999) ........................................................................... 8

*Miller v. French*,
  530 U.S. 327 (2000) .............................................................................................. 8

*Rufo v. Inmates of Suffolk Cnty. Jail*,
  502 U.S. 367 (1992) ......................................................................................... 6, 9

*Schildhaus v. Moe*,
  335 F.2d 529 (2d Cir. 1964) ................................................................................. 9

*Stone v. City & Cnty. of San Francisco*,
  968 F.2d 850 (9th Cir. 1992) ............................................................................... 5

## STATUTES

18 U.S.C. § 3626(a)(3)(B), (E) ............................................................................................ 8

18 U.S.C. § 3626(b) ............................................................................................................ 6

18 U.S.C. § 3626(e)(2)(A)(i) .............................................................................................. 8

Fed. R. Civ. P. 1 .................................................................................................................. 1

Fed. R. Civ. P. 60(b)(5) ...................................................................................................... 6

## OTHER AUTHORITIES

11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and
  Procedure: Civil 2d* § 2863 (2d ed. 1995) .......................................................... 9

# INTRODUCTION

The direct answers to the Court's procedural questions are: (1) No, this Court is not precluded by the three-judge court's finding and by its population reduction order from hearing Defendants' motion to terminate the relief entered by the single-judge *Coleman* court, and (2) No, it is not the province of the single-judge *Coleman* court to revisit the basis for the three-judge court's order. Defendants remain obligated to take all necessary steps to comply with the population reduction order during the briefing of their motion to terminate the single-judge court *Coleman* relief.

# FACTUAL AND PROCEDURAL STATEMENT

*Coleman* class members—California prisoners with serious mental illness—are still dying needlessly and languishing in inhumane conditions because the state authorities charged with their care have not finished the job of implementing the remedies ordered in this case. During this time of rapid change in the state prison system, the health and safety of the most vulnerable state prisoners are on a knife's edge. Prison facilities and staffing are being reshaped at a pace unthinkable just a few years ago. Key clinical resources are being reallocated as patient populations shrink in some areas, grow in others, and are being shifted from place to place throughout the state. Undertaking such rapid changes while the *Coleman* remedy remained incomplete would have been risky under any circumstances. Defendants have now made it even more risky—and unjustifiably so—by diverting their attention, and that of the *Coleman* Special Master, from the vital life and safety questions at hand to a new, expensive and wasteful litigation designed to impede the absolutely necessary overcrowding remedy.

Defendants could have legitimately raised their new factual contentions regarding the asserted absence of "current and ongoing" violations in an orderly way. The Federal Rules of Civil Procedure prescribed the first overarching rule of federal litigation over eighty years ago—"to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. Defendants could have provided candid notice to this Court and Plaintiffs so that discovery could have been conducted efficiently and

promptly. Instead, Defendants chose to leave this Court and Plaintiffs in the dark—in fact chose to mislead this Court and the three-judge court with repeated filings from mid to late 2012 contending that discovery in the prisons was "premature" and unwarranted. Unbeknownst to all but Defendants, they were at the same moment conducting extensive one-sided "expert discovery" in the prisons. While such gamesmanship might maximize Defendants' tactical advantages, it also has created a procedural and evidentiary quagmire that the Court, the Special Master and the Plaintiffs must clean up at the worst possible time—a time of transition when the *Coleman* class can least afford such distractions and waste of resources.

Once the smoke clears, Plaintiffs will prove, and the Special Master's most recent 25th Round Monitoring Report establishes, that, unfortunately for the *Coleman* class, egregious, systemic deficiencies exist today, including the following:

- Defendants have not established a system that provides seriously ill class members timely access to appropriate mental health placement and treatment, as there remain lengthy delays in transferring class members to appropriate placements and continued use of dangerous and inappropriate "bad beds" during those transfer delays;
- Defendants do not have anywhere near the number of clinical staff necessary to provide an adequate level of mental health treatment across the system;
- Defendants uniformly deny access to inpatient care to certain populations of seriously mentally ill prisoners who require psychiatric hospitalization;
- Defendants continue to lack sufficient office and treatment space to deliver minimally adequate mental health treatment;
- Defendants have failed to implement the basic elements of suicide prevention and medical emergency response protocols, resulting in an unacceptably high number of foreseeable and preventable deaths; and
- Defendants still house far too many mentally ill prisoners in segregation, fail to provide minimally adequate treatment to mentally ill prisoners in

1         segregation, and have not implemented appropriate procedures to address

2         prisoners facing disciplinary action for behaviors that are manifestations of

3         serious mental illness.

4        In fact, many of the current and ongoing constitutional violations in California's

5 prisons today are the direct result of Defendants' repeated failures to comply with existing

6 orders this Court issued in a direct effort to remedy such violations. Many of those orders

7 required Defendants to implement their own remedial plan at their own requested pace—

8 but the State has repeatedly failed to follow through and complete the required elements to

9 achieve a constitutional system.

10        Not only have Defendants failed to comply with orders of this Court throughout this

11 litigation, they are now in open and direct violation of the three-judge court's order to

12 reduce overcrowding in California's prisons to a level of 145% of capacity by last month.

13 It is obvious that Defendants never intended to comply with that order, and that their

14 present motions are nothing more than a desperate attempt to justify their defiance and bad

15 faith.

16        Plaintiffs have established that Defendants knew from the very beginning that their

17 existing population reduction efforts would never bring them into compliance with the

18 three-judge court's June 2011 order. Pls' Jan. 7, 2013 Statement re: Three-Judge Court

19 Oct. 11, 2012 Order at 1-3 & n.2 (Docket No. 4283) (hereinafter "Pls' Jan. 7, 2013

20 Statement"). Plaintiffs first pointed this out last February and attempted to require

21 Defendants to take additional steps to comply. Pls' Feb. 7, 2012 Mot. for Order (Docket

22 No. 4152). Defendants repeatedly asserted over the ensuing eleven months that it was

23 premature and unnecessary to do so, even though Plaintiffs' expert has identified multiple

24 safe, cost-effective ways to further reduce crowding. *See, e.g.*, Defs' Feb. 27, 2012 Opp'n

25 at 4 (Docket No. 4162); Defs' May 23, 2012 Opp'n at 3, 7-8 (Docket No. 4191); Defs'

26 Response to June 7, 2012 Three-Judge Court Order at 2 (Docket No. 4203); Defs'

27 Response to Aug. 3, 2012 Three-Judge Court Order at 2 (Docket No. 4226) (hereinafter

28 "Defs' Resp. to Aug, 3, 2012 Order"); *see also* Pls' Jan. 7, 2013 Statement at 8-9 & Austin

[716823-3]

1 Decl.

2 Now that they are undeniably in violation of the June 2011 order requiring the
3 crowding rate to be reduced to 145% by last month, Defendants have chosen to file this
4 baseless termination motion in a facile attempt to shore up their inappropriate and faulty
5 vacatur/modification motion before the three-judge court. Neither motion has any merit
6 whatsoever.

7 Further demonstrating Defendants' inappropriate tactics, both motions are based on
8 tainted and potentially inadmissible evidence Defendants gathered in secret over the course
9 of the past year. At the same time they were conducting expert tours to assess current
10 conditions in California's prisons, Defendants repeatedly represented in multiple pleadings
11 that neither they nor Plaintiffs could or should start conducting such discovery or
12 investigations until December 2012 at the very earliest. *E.g.*, Defs' Resp. to Aug. 3, 2012
13 Order at 2 ("Expert investigation and discovery proceedings [regarding current conditions
14 in California prisons] should not commence until the end of March 2013."); Defs' Resp. to
15 June 7, 2012 Order at 2 ("A motion, investigation or discovery based on current
16 conditions" would be "premature" before December 2012 at the earliest, and any discovery
17 conducted before then would be "irrelevant").

18 When Defendants filed their August 2012 Response begging the three-judge court
19 to delay opening discovery until March 2013 at the earliest, they had already retained
20 experts, completed a "working session at CDCR offices" with their experts in November
21 2011, held an "initial site inspection" of CSP-Sacramento to lay the groundwork for future
22 inspections later that year, and conducted ten of the thirteen expert site inspections upon
23 which their present termination and modification/vacatur motions rely. *See* Vorous Decl.
24 in Support of Defs' Mot. to Terminate, Ex. 2 (Report of Defs' Expert Steve Martin), at 7-8
25 (Docket No. 4279). All of these inspections were conducted *without* notice to the three-
26 judge court, to this Court, or to Plaintiffs' counsel, in violation of existing court orders
27 governing such inspections. *See* Oct. 30, 2007 Three-Judge Court Order at 4 (Docket No.
28 2495) (ordering that plaintiffs' counsel be notified of and permitted to attend defense

experts' prison inspections, as the presence of all counsel would enable the creation of a "common factual baseline" and "minimize[] potential conflicts arising from" communications with class members).  Defendants then filed the present motions almost six months prior to the June 28, 2013 date on which they represented to the three-judge court that a motion to modify would be filed.  Defs' Resp. to Aug. 3, 2012 Order at 10.

The sole "changed circumstance" justifying this abrupt filing is Defendants' blatant failure to comply with the three-judge court's population benchmark and their public-relations driven decision to attempt to undermine the very basis for that order.  But no matter how they attempt to delay or evade this Court's and the three-judge court's power to remedy the pernicious Eighth Amendment violations *Coleman* class members currently suffer every day, Defendants continue to remain obligated to take "all reasonable steps within their power" to comply with the June 2011 population reduction order unless and until the three-judge court rules otherwise.  *Stone v. City & Cnty. of S.F.*, 968 F.2d 850, 856 (9th Cir. 1992); *see also* Aug. 3, 2012 Three-Judge Court Order at 4 (Docket No. 4220) (ordering Defendants to "take all steps necessary to comply with the Court's June 30, 2011 order, including the requirement that the prison population be reduced to 137.5% by June 27, 2013").  As the Supreme Court has affirmed, only after prison crowding is reduced to 137.5% of capacity can there be any hope of curing the constitutional violations in this case.

In filing the completely intertwined motion to vacate/modify and the instant termination motion on the same day, Defendants introduced unnecessary procedural complexities that would not exist had they given appropriate notice to the parties and the Court of their intent to file the instant motion and stood by their multiple representations that they would not challenge the population cap until June 2013.  Now this Court must untangle the mess.

As such, on January 9, 2013, this Court ordered the parties to submit further briefing addressing whether the single-judge court "is precluded by the three-judge court's finding and by its population reduction order from hearing defendants' motion to terminate

at this time." Jan. 9, 2013 Order at 2 (Docket No. 4290). Additionally, the Court invited the parties to address whether this single-judge court could "revisit the basis for the three-judge court's order." *Id.* at 2 n.2.

While Defendants' termination motion is clearly nothing more than an improper tactical effort to bolster their desperate and improper attack on the three-judge court's ongoing jurisdiction to enforce the fully litigated population reduction order upheld by the Supreme Court, this Court must nonetheless rule on it before the three-judge court can address Defendants' pending motion to vacate or modify. As the three-judge court has acknowledged, federal law permits Defendants to move this single-judge court to terminate the *Coleman* remedial scheme if they can prove that Eighth Amendment violations and unconstitutional conditions no longer exist. The single-judge court's inquiry, however, cannot extend to revisiting the basis for the three-judge court's June 30, 2011 order, and Defendants must comply with that order while their termination and vacatur/modification motions are pending.

## ARGUMENT

**I. DEFENDANTS' TERMINATION MOTION IS PROPERLY BEFORE THIS COURT, AND THIS COURT MUST ADDRESS THE MOTION BEFORE THE THREE-JUDGE COURT CAN ADDRESS DEFENDANTS' MOTION TO VACATE OR MODIFY THE POPULATION REDUCTION ORDER**

Federal law authorizes Defendants to move to terminate this case. The Prison Litigation Reform Act ("PLRA") allows for termination two years after the granting of prospective relief unless "the relief remains necessary to correct a current and ongoing violation of a federal right," and also meets the PLRA needs-narrowness-intrusiveness standard. 18 U.S.C. § 3626(b). Federal Rule of Civil Procedure 60(b)(5) permits a party to obtain relief from a judgment or order if the party can establish "a significant change either in factual conditions or in law" warranting modification of an injunction. *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 384 (1992). If Defendants can, in fact, establish that the factual predicates for relief in this case have changed so much that Eighth Amendment violations and unconstitutional conditions no longer threaten class members,

1  this Court would be required to terminate the injunction.  Indeed, the three-judge court
2  repeatedly has invited Defendants to move to terminate before this single-judge court to
3  demonstrate their contention that conditions in the prisons have improved so substantially
4  that the provision of mental health care is no longer constitutionally deficient.  *See* Aug. 4,
5  2009 Three-Judge Court Order at 54 (Docket No. 3641); Nov. 10, 2008 Three-Judge Court
6  Pretrial Conference Transcript at 28:16-21; *see also Brown v. Plata*, 131 S. Ct. 1910,
7  1935-36 (2011) (upholding three-judge court ruling that arguments that conditions are
8  constitutional belong before single-judge courts); *id.* at 1930-31 (noting that Defendants
9  had the option of moving to terminate the *Coleman* and *Plata* remedies on grounds of
10 constitutional compliance).
11       Moreover, because Defendants are asserting concurrently that constitutional
12 compliance in this case warrants reassessing the three-judge court's remedial order, "a
13 showing of constitutional compliance . . . is a prerequisite to modification of the
14 population cap."  Sept. 7, 2012 Three-Judge Court Order at 2 n.1 (Docket No. 4235)
15 (hereinafter "Sept. 7, 2012 Order"); *see also* Defs' Response to Sept. 7, 2012 Three-Judge
16 Court Order at 7 n.4 (Docket No. 4243) (asserting that showing of constitutional
17 compliance would require dissolution of three-judge court and its orders).  While
18 Defendants cannot relitigate the appropriateness of the 137.5% crowding limit before
19 either the single- or three-judge court, *see* Sept. 7, 2012 Order at 2-3 and *infra* Section II
20 below, if they can establish before this Court that they are no longer deliberately
21 indifferent to the rights of the *Coleman* class and that mental health care currently provided
22 to class members in California's prisons meets constitutional standards, that would
23 constitute a changed circumstance under *Rufo* and Rule 60 warranting modification of the
24 three-judge court's order.  Accordingly, this Court must proceed to decide Defendants'
25 termination motion, and, after that, the three-judge court can consider Defendants' motion
26 to vacate or modify the June 2011 population reduction order.
27       Because this Court is required to decide Defendants' motion to terminate, and
28 because Defendants have incorporated and asserted the termination evidence and argument

into their three-judge court motion, Plaintiffs must be provided with a full and fair opportunity to challenge Defendants' evidence and conduct discovery regarding current conditions in order to respond properly to Defendants' dual motions. *See Loyd v. Ala. Dep't. of Corr.*, 176 F.3d 1336, 1342 (11th Cir. 1999) ("The party opposing termination must be given the opportunity to challenge [the relied upon evidence] and to present evidence concerning the scope of the challenged relief and whether there are 'current and ongoing' violations of federal rights in the prison."); *see also Ginest v. Bd. of Cnty. Comm'rs of Carbon Cnty., Wyo.*, 295 F. Supp. 2d 1274, 1275 (D. Wyo. 2003) (concluding, over defendants' objections, that the nonmoving plaintiffs were entitled to discovery in advance of the termination hearing).

Given how intertwined the two motions are both as a legal and evidentiary matter, discovery should proceed as to both matters concurrently for the sake of economy. Furthermore, because the PLRA's automatic stay provisions impose tight deadlines on resolving these extremely complex, system-wide issues, *see* 18 U.S.C. § 3626(e)(2)(A)(i),[1] all discovery must be expedited. Plaintiffs will move the Court for orders to this effect should Defendants contest their propriety.

## II. THIS COURT CANNOT REVISIT THE THREE-JUDGE COURT'S ORDER, AND DEFENDANTS HAVE AN ONGOING OBLIGATION TO COMPLY WITH THAT ORDER UNLESS AND UNTIL IT IS VACATED

The PLRA specifically precludes single-judge courts from addressing the propriety of prisoner release orders, which are entrusted exclusively to three-judge courts. 18 U.S.C. § 3626(a)(3)(B), (E); *see Plata*, 131 S. Ct. at 1935-36 (three-judge court's sole role under the PLRA is to "consider the propriety and necessity of a population limit"). Even if this Court had the authority to revisit the population cap under the PLRA, principles of *res judicata* preclude any attempt to re-open the issues already litigated before the three-judge court that led to the prospective relief in this case. *See* 11 Charles Alan Wright, Arthur R.

---

[1] Plaintiffs reserve their right to challenge the propriety of the PLRA stay provisions as applied here. *See Miller v. French*, 530 U.S. 327, 350 (2000).

Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil 2d* § 2863 at 340 (2d ed. 1995) ("[Rule 60(b)(5)] does not allow relitigation of issues that have been resolved by the judgment."); *see also Horne v. Flores*, 557 U.S. 433, 447 (2009) ("Rule 60(b)(5) may not be used to challenge the legal conclusions on which a prior judgment or order rests." (citing *Rufo*, 502 U.S. at 384)); *Schildhaus v. Moe*, 335 F.2d 529, 530-31 (2d Cir. 1964) (explaining that Rule 60(b) does not permit relitigation of the merits of the underlying dispute).

Nonetheless, Defendants here attempt to malign the three-judge court's findings, and brazenly reassert specious arguments already rejected by the three-judge court and the Supreme Court. Defendants first mischaracterize the three-judge court's finding that constitutionally adequate health care cannot be provided to California prisoners at crowding levels above 137.5% as based on "outdated evidence" and "assumptions." Defs.' Mot. to Terminate at 15 n.7 (Docket No. 4275-1). Neither contention is true. As the Supreme Court expressly affirmed, "the decision of the three-judge court was based on current evidence pertaining to ongoing constitutional violations." *Plata*, 131 S. Ct. at 1936. Furthermore, the 137.5% cap was based not on mere assumptions, but on a wealth of evidence, including expert testimony and Defendants' own admissions, and the Supreme Court found that the evidentiary record amply supported the three-judge court's findings. *Id.* at 1944. Defendants refused to offer any affirmative proof at trial of the maximal level of crowding density at which constitutional care could be provided, *id.* at 1945, and cannot now relitigate the issue before either this Court or the three-judge court. *See* Sept. 7, 2012 Order at 2-3.

Moreover, Defendants, once again, attempt to present evidence of *future* events, such as projected opening dates of planned construction projects, pharmacy computer programs, and the like, in support of their argument that conditions within California's prisons are constitutional *now*. *See* Meyer Decl. in Support of Defs' Mot. to Terminate at 2-5 (Docket No. 4278) (pointing to construction projects that will be completed or operational, *inter alia*, in June 2013, July 2013, September 2013, and February 2014, as

well as many others that are still in early planning stages).  By definition, if additional dedicated specialized mental health hospitals and programs—to be staffed by additional clinicians who have yet to be identified or hired—are required, then *existing* conditions in the prisons are deficient.  Defendants have always had a plan that would fix problems in the future—plans are cheap.  The actual provision of mental health care would require plans to be implemented and managed, resources to be dedicated, and compliance with court orders by state officials.  Even assuming these projects are completed on the current timelines and are able to be staffed at operational levels—assumptions contrary to Defendants' long history of extensive construction delays and project cancellations, as well as severe staffing difficulties throughout this litigation—the Supreme Court has already rejected the idea that Defendants can either build or hire their way out of their ongoing constitutional violations.  *See Plata*, 131 S. Ct. at 1938-39.

While Defendants attempt to benefit from the fog of confused legal proceedings of their own creation, in which they seek to rehash all of their rejected arguments in a single-judge proceeding, the PLRA does not permit such tactics.  Congress reserved the litigation of population reduction predicates to the three-judge court.  Instead, this Court's inquiry must be limited to addressing the sole legitimate question posed by Defendants' motion to terminate:  whether Defendants can prove that they are not *currently* violating *Coleman* class members' Eighth Amendment right to minimally adequate mental health care.

## CONCLUSION

Per the questions raised by this Court's January 9, 2013 Order, federal law and the three-judge court's orders make clear that Defendants' motion to terminate is properly before this Court.  Furthermore, because Defendants' motion to vacate or modify the three-judge court's June 2011 population reduction order asserts that the provision of mental health care in California's prisons is currently constitutional, this Court must decide that issue before the three-judge court can rule on the concurrently filed vacatur/modification motion.  Finally, this single-judge court cannot address factual or legal issues that were the basis for the June 2011 population reduction order because Congress reserved that

authority solely for the three-judge court, and unless and until that court modifies that order, Defendants are obligated to take all necessary steps to comply with its provisions.

DATED: January 24, 2013

Respectfully submitted,

ROSEN BIEN GALVAN & GRUNFELD LLP

By: */s/ Michael W. Bien*
    Michael W. Bien

Attorneys for Plaintiffs