KAMALA D. HARRIS
Attorney General of California
JONATHAN L. WOLFF
Senior Assistant Attorney General
JAY C. RUSSELL
Supervising Deputy Attorney General
DEBBIE J. VOROUS, SBN 166884
PATRICK R. MCKINNEY, SBN 215228
WILLIAM H. DOWNER, SBN 257644
Deputy Attorney General
 455 Golden Gate Avenue. Suite 11000
 San Francisco, CA 94102-7004
 Telephone: (415) 703-3035
 Fax: (415) 703-5843
 E-mail: Patrick.McKinney@doj.ca.gov
*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **RALPH COLEMAN, et al.,**<br><br>　　　　　　　　　　Plaintiffs,<br><br>　v.<br><br>**EDMUND G. BROWN JR., et al.,**<br><br>　　　　　　　　　　Defendants. | 2:90-cv-00520 LKK JFM PC<br><br>**DEFENDANTS' RESPONSE AND OBJECTION TO JANUARY 22, 2013 ORDER** |

　　　The Court has directed the State to set forth the total number of California inmates it plans to return to California state prisons from out-of-state facilities, the planned timetable for returning the inmates, and where the State plans to house those inmates. (Jan. 22, 2013 Order, ECF 4300.) Because this case concerns the constitutional adequacy of California's prison mental health care system, the State notes that the return of out-of-state inmates will have no detrimental impact on its ability to provide appropriate mental health care to class members.

　　　As set forth in the State's post-realignment plan (called the Blueprint), the State has decided to incrementally decrease and eliminate the costly and no-longer-necessary practice of housing California inmates in private out-of-state prisons. (*See* "*The Future of California Corrections: A*

*Blueprint to Save Billions of Dollars, End Federal Court Oversight, and Improve the Prison System*," April 23, 2012, available at: http://www.cdcr.ca.gov/2012plan/ docs/plan/complete.pdf, at 28 & Appx. G.)[1]  There are 8,852 inmates currently housed in private prisons in other states. (Decl. Ross Meier ¶ 3.)  None of these inmates have mental disorders requiring treatment or services. (*Id.*)  And most of them will complete their sentences while they are out of state. (*Id.* at ¶ 4.)  Specifically, 4,527 of them will not be *returned* to state prison *at all* (except for a brief pre-release planning period). (*Id.*)  Rather, they will finish their prison terms out of state and simply transition out of the system through attrition. (*Id.*)[2]

The remaining 4,325 inmates will be brought back incrementally through June 30, 2016. (*See id.* at ¶ 5 & Exh. 1.)  As detailed in the Blueprint, the reductions of inmates in out-of-state prisons will occur as follows:

- reduce to 4,596 inmates out of state by December 27, 2013;
- reduce to 2,696 inmates out of state by June 30, 2014;
- reduce to 1,160 inmates out of state by June 30, 2015; and
- reduce to zero inmates out of state by June 30, 2016.

(*Id.*)  As these 4,325 inmates are returned to state prison, they will be placed in appropriate celled or dormitory housing units. (*Id.* at ¶ 6.)  The gradual return of these inmates will allow the State to avoid bunking inmates in prison gymnasiums or other make-shift housing units again. (*Id.*)  More importantly, the return of these inmates will in no way inhibit the State's ability to continue to provide quality mental health care to the inmates who need it. (*Id.* & Decl. Tim Belavich ¶ 3.)

Defendants object to consideration of the State's decision to gradually decrease and eliminate the costly and now unnecessary practice of housing its inmates in private contract prisons in other states because it is irrelevant to the pending motion to terminate this case.  The State is prohibited from housing inmates with mental disorders—*Coleman* class members—out of state.  Cal. Code Regs. tit. 15, §§ 3379(a)(9)(F)(2) (barring inmates within the Mental Health

---

[1] Appendix G to the Blueprint is attached as Exhibit 1 to the Declaration of Ross Meier.

[2] Each month, an average of 110 inmates paroles from the out-of-state program. (Meier Decl. ¶ 4.)

2

Defs.' Resp. and Objection to Jan. 22, 2013 Order
(2:90-cv-00520 LKK JFM PC)

1  Services Delivery System from volunteering or consenting to an out-of-state transfer, unless
2  compelled by court order) & 3379(a)(9)(G)(1) ("An inmate is not eligible for involuntary transfer
3  if . . . [t]he inmate has a serious mental disorder as defined by [*Coleman*].").

4   Defendants' motion to terminate this case requires the Court to "consider whether the California prison mental health care delivery system is now in constitutional compliance." (Jan. 29, 2013 Order, ECF 4316, at 3:19-20 [emphasis added].) Defendants have presented compelling evidence that the State has established a quality prison mental health care system. Accordingly, the Court must terminate this case. And it would be improper for the Court to not do so based on speculation that constitutional violations might arise when non-class member out-of-state inmates return to California. *See Para-Professional Law Clinic at SCI-Graterford v. Beard*, 334 F.3d 301, 304 (3d Cir. 2003) ("the plain meaning of the words 'current and ongoing' used in the PLRA does not encompass future violations"); *Cason v. Seckinger,* 231 F.3d 777, 783-84 (11th Cir. 2000) ("current and ongoing" means "a presently existing violation, not a potential, or even likely, future violation"); *Castillo v. Cameron Cty.*, 238 F.3d 339, 353 (5th Cir. 2001) (a court deciding a termination motion should not look "at conditions that may possibly occur in the future to determine if there is a violation of a federal right").

Dated:  February 6, 2013

Respectfully submitted,

KAMALA D. HARRIS
Attorney General of California

*Patrick R. McKinney*

PATRICK R. MCKINNEY
Deputy Attorney General
*Attorneys for Defendants*

CF1997CS0003
20669544.docx

3