KAMALA D. HARRIS
Attorney General of California
JAY C. RUSSELL
Supervising Deputy Attorney General
DEBBIE J. VOROUS, State Bar No. 166884
PATRICK R. MCKINNEY, State Bar No. 215228
WILLIAM H. DOWNER, State Bar No. 257644
Deputy Attorney General
 1300 I Street, Suite 125
 P.O. Box 944255
 Sacramento, CA 94244-2550
 Telephone: (916) 324-5345
 Fax: (916) 322-5205
 E-mail: Debbie.Vorous@doj.ca.gov
*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **RALPH COLEMAN, et al.,** | 2:90-cv-00520 LKK JFM PC |
| Plaintiffs, | **DECLARATION OF KATHLEEN ALLISON IN SUPPORT OF DEFENDANTS' OBJECTIONS AND MOTION TO STRIKE OR MODIFY PORTIONS OF SPECIAL MASTER'S REPORT ON SUICIDES OCCURRING IN CALIFORNIA DEPARTMENT OF CORRECTIONS FACILITIES IN 2011** |
| v. | |
| **EDMUND G. BROWN JR., et al.,** | |
| Defendants. | |

I, Kathleen Allison, declare:

1. I am the Deputy Director of the Division of Adult Institutions (DAI), Facilities Support, for the California Department of Corrections and Rehabilitation (CDCR). I am competent to testify to the matters set forth in this declaration and if called upon to do so, I would and could so testify. I make this declaration in support of Defendants' Objections and Motion to Strike or Modify Portions of Special Master's Report on Suicides Occurring in California Department of Corrections and Rehabilitation Facilities in 2011.

2. In November 2011, I was named associate director for the Division of Adult Institutions. My duties included, but were not limited to, providing managerial direction to

///

1

wardens who reported to me, implementing the Alternative Custody Program, and managerial direction of various community-based programs providing services to offenders and their children.

3. Some of my current duties as Deputy Director for the Division of Adult Institutions include oversight of policy and procedure standardization, the inmate classification unit, budgeting, the statewide inmate transportation unit, prison bed management, fiscal planning and development, staffing standardization, institutional audits, training, and inmate case records administration.

4. I also lead a CDCR-chartered workgroup that is developing policies and procedures to reduce suicides in CDCR facilities, and to monitor and reduce the number of seriously mentally ill inmates placed in administrative segregation.

5. I am familiar with Dr. Raymond F. Patterson's January 25, 2013 report on suicides completed in CDCR in the calendar year 2011, including his review of inmate cases that involve the completion of timely custody and welfare checks and that involve emergency response procedures.

6. The State has and continues to evaluate, improve, and update its emergency response procedures. Recently, the Receiver in *Plata v. Brown* issued a revised procedure that, among other things, outlines the responsibilities of first responders, the administration of cardiopulmonary resuscitation, use of an Automated External Defibrillator, and the availability of emergency transportation twenty-four hours per day. (*See* Exhibit 1, a true and correct copy of the Inmate Medical Service Policy and Procedures, Vol. 4, Ch. 12.)

7. All staff continue to receive mandatory training in the use of Cardiopulmonary Resuscitation and Automated External Defibrillators, as it is a bi-annual certification and requirement for training in numerous classifications. In addition, all institutions maintain emergency response tools, such as cut-down kits and micro shields for artificial respiration. Moreover, CDCR requires correctional officers to complete a standard incident report detailing the reasons that Cardiopulmonary Resuscitation was not undertaken in response to a suicide

///

event. Finally, quarterly emergency drills occur at each institution, and results are provided to headquarters.

8. The report on 2011 suicides identifies five inmate cases as lacking timely custody and welfare checks. According to the report, two inmates (identified as G and EE) were housed in administrative segregation and one inmate (identified as AA) was housed in the condemned unit at San Quentin State Prison.

9. CDCR's policy is that custody staff assigned to high-risk areas perform hourly security checks during First Watch to ensure inmates are accounted for and secured within their assigned housing units. First watch is from 10:00 p.m. to 6:00 a.m. There is no hourly security check in General Population.

10. CDCR also conducts 30 minute "Welfare Checks" of inmates during the first three weeks of administration segregation unit placement. Each institution provides training on the requirement to conduct 30 minute welfare checks. In addition, San Quentin State Prison revised its policy to include wellness checks to ensure the safety of inmates housed in East Block.

11. In response to two suicides that occurred at High Desert State Prison in 2011—identified in the 2011 suicide report as inmates D and T—the prison developed a local operating procedure that requires the use of Emergency Personal Protective Equipment for cell entry in an emergency situation. In response to concerns raised in the Patterson report regarding a review of cell entry procedures at the prison, the Division of Adult Institutions will be reviewing such policies with each prison.

I declare under penalty of perjury that the foregoing is true and correct. Executed in Chino, California on February 11, 2013.

                                         */s/ Kathleen Allison*
                                         Kathleen Allison

CF1997CS0003

3
K. Allison Decl. Supp. Defs.' Objs. & Mot. Strike and Modify Rpt. on Suicides Occurring in CDCR in 2011
(2:90-cv-00520 LKK JFM PC)