1

2

3

4

5

6

7

8                   IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   RALPH COLEMAN, et al.,

11          Plaintiffs,                No. 2:90-cv-0520 LKK JFM P

12      vs.

13   EDMUND G. BROWN, JR., et al.,

14          Defendants.                <u>ORDER</u>

15   _____/

16          On February 12, 2013, the parties filed a Joint Statement Re Discovery Dispute

17   (Joint Statement).  The dispute tendered for resolution centers on the deposition of Lindsay

18   Hayes, a non-testifying consultant for the California Department of Corrections and

19   Rehabilitation (CDCR) and whether documents produced to plaintiffs by Mr. Hayes concerning

20   his consultancy with CDCR must be destroyed.  The deposition is noticed for February 18, 2013.

21   Defendants seek a protective order preventing the deposition and requiring plaintiffs to "destroy

22   any documents produced to them related to Mr. Hayes's consultancy with CDCR."  Joint

23   Statement, filed February 12, 2013, at 1.

24                              BACKGROUND

25          On January 7, 2013, defendants filed a motion to terminate this action under 18

26   U.S.C. § 3626(b) and to vacate the court's judgment and orders under Fed. R. Civ. P. 60(b)(5)

1

1    (hereafter "Termination Motion").  In relevant part, defendants contend that they have "fully

2    implemented programs to identify, treat and supervise inmates at risk for suicide" and that they

3    are not deliberately indifferent to the serious mental health needs of class members.  Termination

4    Motion, at 14, 21.

5              Lindsay Hayes is an expert in suicide prevention in jails and prisons employed by

6    the National Center on Institutions and Alternatives in Massachusetts.  Declaration of Non-Party

7    Lindsay M. Hayes in Connection with Discovery Dispute, filed February 12, 2013 (Hayes Decl.),

8    at ¶ 1.[1]  In 2005, plaintiffs retained him as an expert witness and consultant on behalf of the

9    plaintiff class.  Declaration of Michael W. Bien in Support of Plaintiffs' Statement Regarding

10   Lindsay Hayes Subpoena and Document Requests, filed February 12, 2013 (Bien Decl.), at ¶ 2.

11   On June 8, 2006, the district court ordered defendants to "develop a plan for dealing with the

12   escalating percentage of suicides occurring in administrative segregation units" and to

13   "collaborate with one or more of the special master's experts, with plaintiffs' counsel, and with

14   plaintiffs' expert, Lindsay Hayes" to develop that plan.  Order filed June 8, 2006 at ¶¶ 1, 3.  On

15   October 31, 2006, plaintiffs filed a declaration from Mr. Hayes in support of their objections to

16   the plan developed by defendants in response to the June 8, 2006 order.  (Doc. No. 2011.)

17             In July 2009, Mr. Hayes received an email from CDCR's Suicide Prevention

18   Coordinator, Robert Canning, PhD, inquiring on behalf of CDCR's then Mental Health Director

19   if Mr. Hayes "would consider entering in to 'a consultation on our suicide prevention program.'".

20   Hayes Decl. at ¶ 3.  Mr. Hayes "conferred with Plaintiffs' counsel, who approved on the

21   condition that [he] would not be employed as a litigation consultant or as an expert witness, but

22   rather as a consultant to the clinicians in mental health working on suicide prevention and

23   /////

24   _____

25         [1]  Defendants object to the separate filing of declarations in connection with the Joint
     Statement on the ground that it violates this court's January 25, 2013 order limiting the length of
     joint statements of discovery disputes to two pages.  However, defendants have themselves
26   appended three exhibits to the Joint Statement.  Defendants' objection is overruled.

1   policies and procedures." Id. In August 2009, Mr. Hayes was approached by an attorney with

2   the California Attorney General's Office "about the possibility of retaining him as a litigation

3   expert" for this action. Bien Decl. at ¶ 6, Ex. C. Mr. Hayes informed plaintiffs' counsel that he

4   declined the attorney's request. Id. at ¶ 6.

5          Mr. Hayes subsequently entered into a contract with CDCR for three years of

6   work. Hayes Decl. at ¶ 6. The contract provides in relevant part:

I. INTRODUCTION

The National Center on Institutions and Alternatives (NCIA) shall
provide a comprehensive system-wide review of the California
Department of Corrections and Rehabilitation (CDCR)'s Suicide
Prevention Program. This consultation will directly respond to the
*Coleman* court's stated concerns about the CDCR's suicide review
process and other aspects of suicide prevention in the department.
This consultation will directly contribute to resolution of the
*Coleman* litigation.

II. BACKGROUND

Suicide crosses all professional and organizational boundaries of
the CDCR. A successful suicide prevention program in the CDCR
environment targets all inmates, all staff, and all levels of custody.
In the last ten years the CDCR has experienced an increase in the
rate of suicide. For most years in the last decade the suicide rate in
the CDCR has exceeded the national rate of suicide among the
state prisoners. Recently the CDCR has stumbled in the timeliness
of its suicide review and the adequacy of the responses to these
reviews by the institutions and the CDCR as a whole. The
recognition of and response to suicide risk in the correctional
environment is one of the most important and difficult tasks for
mental health staff, yet it is apparent from the CDCR's own
reviews of suicide and those of the *Coleman* court's suicide expert
that assessments are often subpar and inadequate, leading to poor
follow-up and trajectories that may contribute to an eventual
suicide. In addition, the CDCR has struggled with how to assure
that local policies, procedures, and practices reflect departmental
standards and are consistent across institutions. Finally, the ability
of the CDCR to adequately track, monitor, and prevent suicide
attempts has eroded until at the current time the CDCR has no
active database of suicide attempts and no plan to systematically
collect data on attempts as a way to better understand who may and
who may not attempt, and ultimately complete a suicidal act.
These factors have contributed to the CDCR's inability to make
progress toward an exit from the *Coleman* litigation. The
Contractor's experience (more than 25 years) with correctional

3

> suicide prevention programs will allow the CDCR to make
> immediate, short-term, and long-term changes in its suicide
> prevention program to begin to decrease the overall rate of suicide
> in the long-term.  This consultation will allow the CDCR to
> implement a more effective suicide prevention policy and
> demonstrate to the *Coleman* court its resolve to deal with a [sic]
> issue that impedes its ability to resolve the litigation.

Ex. A to Hayes Decl.  Mr. Hayes' consultation, which began in fiscal year 2010/11, was to last for three years.  The contract provided that Mr. Hayes would "apply eight critical components of a suicide prevention policy . . . to his consultation with the CDCR."  Id.  The tasks to be performed by Mr. Hayes included an "initial consultation" which would include document review, consultation at CDCR headquarters with "senior clinical and custodial staff", visits to "several institutions to review suicide policies and procedures in action", and a second visit to CDCR headquarters to "discuss preliminary recommendations and identified problem areas."  Id. The contract provides for a "report with recommendations to be delivered to the CDCR approximately one month after the end of the on-site visit."  Id.  The contract further provides for one- and two-year follow-ups, and then a consultation in year three followed by a "final report and recommendations for long-term changes."  Id.  The anticipated time for completion of the final report was August 30, 2013 "or within 30 days of Consultation."  Id.  The task list does not include any consultation with defendants' counsel.

According to Mr. Hayes, "[t]he contract language was consistent with [his] understanding with Ms. Aungst and Dr. Canning that [he] was not a consultant to CDCR's attorneys or the Attorney General's Office, but was instead a consultant to CDCR's Division of Health Care Services for the purpose of reviewing and improving CDCR's suicide prevention policies and practices."  Hayes Decl. at ¶ 4.  Dr. Canning was the "Program Manager" for the contract, and Mr. Hayes "worked directly with him and other central office staff of CDCR's Division of Health Care Services."  Id.  Mr. Hayes understood that his "recommendations for improvements would be shared with the Special Master and his experts, along with Plaintiffs'

/////

1  counsel, as part of the process of resolving [the suicide prevention] aspect of the *Coleman*

2  litigation." Id.

3  In August 2011, pursuant to the contract, Mr. Hayes delivered a report to CDCR,

4  dated August 16, 2011, with his findings and recommendations. Hayes Decl. at ¶ 5. The "report

5  was written with the explicit intent to provide CDCR with a strategy to reduce inmate suicides

6  within the prison system." Id. CDCR has not requested additional consulting services from Mr.

7  Hayes since he sent that report. Id. at ¶ 6. "CDCR did subsequently request that [he] prepare a

8  redacted version of [his] August 2011 report that removed all of [his] opinions and

9  recommendations other than those concerning CDC's use of Outpatient Housing Units

10 ("OHUs"), so that the redacted report could be shared with the Special Master and Plaintiffs'

11 counsel." Id. CDCR also informed Mr. Hayes in May 2012 that he could speak with plaintiffs'

12 counsel and an expert for the Special Master about that part of his report. Id.

13 Mr. Hayes resigned as a CDCR consultant in January 2013. Id. at ¶ 8. In January

14 2013, plaintiffs' counsel contacted Mr. Hayes and asked if he would agree to be retained as a

15 plaintiffs' expert witness in opposition to defendants' Termination Motion. Id. Plaintiffs'

16 counsel subsequently withdrew the offer after plaintiffs' counsel was unable to obtain an

17 agreement with CDCR that they would not "raise any objections." Id.

18 On February 4, 2013, plaintiffs subpoenaed Mr. Hayes for a deposition on

19 February 18, 2013. Ex. 1 to Joint Statement. The notice of deposition was accompanied by a

20 document production request. The request for documents includes requests for:

21     2. All documents, for the time period January 1, 2010 to
    December 31, 2011, that are or contain or refer to any report
22     authored, co-authored, or completed by you for or with the
    California Department of Corrections and Rehabilitation (CDCR)
23     covering subjects that include, but are not limited to, CDCR's
    suicide prevention policies and procedures and CDCR's use of
24     Outpatient Housing Units (OHUs) and other alternative locations
    for inmates at risk of suicide.
25

26     3. All documents that are or refer or relate to any reports, notes,
    summaries, research materials, recommendations, or

communications (*i.e.*, letters, handwritten notes of conversations, faxes, email, text messages, etc.) between you and CDCR staff, representatives, or counsel.

4.  All documents that are or refer or relate to contracts or agreements between you and CDCR.

<u>Id</u>.  Mr. Hayes has provided the documents to both plaintiffs and defendants.  Hayes Decl. at ¶ 8.

DISPUTE

The dispute at bar centers on whether plaintiffs may depose Mr. Hayes concerning his consulting work for CDCR, and whether plaintiffs must destroy the documents produced by Mr. Hayes in response to the request included with the deposition subpoena.  Defendants contend first that plaintiffs agreed not to seek production of the report prepared by Mr. Hayes for CDCR or to use that report in any litigation, that they have "broken that promise" and that the court "should not permit this bad faith attempt to pursue information they agreed not to use in litigation – especially when Defendants have not placed Hayes's opinions directly at issue in this termination litigation."  Joint Statement at 1.  Defendants also contend that the information is protected from discovery by Fed. R. Civ. P. 26(b)(3) and (4) because the ongoing <u>Coleman</u> litigation "'permeated' the purpose for which [Mr. Hayes] was retained as a consultant."  <u>Id</u>.

Plaintiffs contend that Mr. Hayes was a "non-litigation consultant" and that his report, related documents, and opinions are therefore discoverable under Rule 26.  Plaintiffs also contend that the information is discoverable pursuant to Fed. R. Civ. P. 26(b)(3)(A)(ii).  Specifically, plaintiffs contend that defendants "hired Mr. Hayes to advise them on ways to improve suicide prevention in CDCR prisons, but then subsequently ignored and refused to implement" his recommendations, that this is "strong evidence of Defendants' deliberate indifference to the ongoing Eighth Amendment violations, which Defendants have placed front and center with their termination filing" and that plaintiffs have a "substantial need" for the evidence and an "inability to obtain equivalent proof by other means."  Joint Statement at 2

/////

1   (citing Fed. R. Civ. P. 26(b)(3)(A)(ii)).  Plaintiffs also contend they did not agree to refrain from

2   seeking Mr. Hayes' report and testimony.  Joint Statement at 2.

3                                            LEGAL STANDARDS

4        Fed. R. Civ. P. 26(b)(3)(A) provides:

5        **(3)  Trial Preparation:  Materials.**

6            **(A)** *Documents and Tangible Things.*  Ordinarily, a party may
             not discover documents and tangible things that are prepared in
7            anticipation of litigation or for trial by or for another party or its
             representative (including the other party's attorney, consultant,
8            surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4),
             those materials may be discovered if:
9
                    (I) they are otherwise discoverable under Rule 26(b)(1); and
10
                    (ii) the party shows that it has substantial need for
11                  the materials to prepare its case and cannot, without
                    undue hardship, obtain their substantial equivalent
12                  by other means.

13   Fed. R. Civ. P. 26(b)(3).  Rule 26(b)(3) codifies the work product doctrine.  See <u>In re Grand Jury</u>

14   <u>Subpoena (Mark Torf/Torf Environmental Management)</u>, 357 F.3d 900, 906 (9th Cir. 2004).  The

15   work product doctrine "protects 'from discovery documents and tangible things prepared by a

16   party or his representative in anticipation of litigation.'  <u>Admiral Ins. Co. v. United States District</u>

17   <u>Court</u>, 881 F.2d 1486, 1494 (9th Cir.1989).  Such documents may only be ordered produced

18   upon an adverse party's demonstration of 'substantial need [for] the materials' and 'undue

19   hardship [in obtaining] the substantial equivalent of the materials by other means.' Fed.R.Civ.P.

20   26(b)(3)." <u>Id</u>.  The United States Court of Appeals for the Ninth Circuit has "previously held that

21   'to qualify for protection against discovery under [Rule 26(b)(3)], documents must have two

22   characteristics: (1) they must be "prepared in anticipation of litigation or for trial," and (2) they

23   must be prepared "by or for another party or by or for that other party's representative."' <u>In re</u>

24   <u>California Pub. Utils. Comm'n</u>, 892 F.2d 778, 780-81 (9th Cir.1989) (quoting Fed.R.Civ.P.

25   26(b)(3))." <u>Id</u>. at 907.

26   /////

                                                    7

Where documents are prepared both in anticipation of litigation and for a purpose other than litigation, work product protection extends to "such 'dual purpose' documents . . . if 'in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation.' Charles Alan Wright, Arthur R. Miller, and Richard L. Marcus, 8 Federal Practice & Procedure § 2024 (2d ed. 1994) ("Wright & Miller")." Id. The so-called "because of" standard "does not consider whether litigation was a primary or secondary motive behind the creation of a document. Rather, it considers the totality of the circumstances and affords protection when it can fairly be said that the 'document was created because of anticipated litigation, and would not have been created in substantially similar form but for the prospect of that litigation[.]'" Id. at 908 (internal citation omitted).

Rule 26(b)(3) "permits discovery when mental impressions are the pivotal issue in the current litigation and the need for the material is compelling." Holmgren v. State Farm Mutual Auto Insurance Co., 976 F.2d 573, 577 (9th Cir. 1992). Moreover, "[t]he work-product doctrine's protections are waivable." U.S. v. Richey, 632 F.3d 559, 567 (9th Cir. 2011) (citing Hernandez v. Tanninen, 604 F.3d 1095, 1100 (9th Cir. 2010). An implied waiver of work product privilege is found where a party places in issue a matter that implicates the material for which the privilege is claimed.

> "[T]he doctrine of implied waiver allocates control of the privilege between the judicial system and the party holding the privilege." Privileged Communications, 98 Harv. L.Rev. at 1630. The court imposing the waiver does not order disclosure of the materials categorically; rather, the court directs the party holding the privilege to produce the privileged materials if it wishes to go forward with its claims implicating them. The court thus gives the holder of the privilege a choice: If you want to litigate this claim, then you must waive your privilege to the extent necessary to give your opponent a fair opportunity to defend against it.

Bittaker v. Woodford, 331 F.3d 715, 720 (9th Cir. 2003) (internal citations omitted.)

/////

Fed. R. Civ. P. 26(b)(4)(D) provides in relevant part:

> **(D)** *Expert Employed Only for Trial Preparation.* Ordinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial. But a party may do so only:
>
> . . .
>
> (ii) on showing exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means.

Fed. R. Civ. P. 26(b)(4)(D).

ANALYSIS

The evidence before the court demonstrates that Mr. Hayes was retained by CDCR as a consultant to CDCR's Division of Health Care Services in connection with CDCR's suicide prevention efforts, and not as an expert witness for defendants in this litigation.  It is true that this action was playing a part in highlighting deficiencies in those efforts, and the contract expressly stated CDCR's expectation that the consultation with Mr. Hayes would "demonstrate to the *Coleman* court its resolve to deal with a [sic] issue that impedes its ability to resolve the litigation." Ex. A to Hayes Decl.  But it is equally true that Mr. Hayes was retained to assist in improving CDCR's suicide prevention efforts, not to assist defendants with litigation efforts.  Mr. Hayes turned down a request from the California Attorney General's Office to be retained as a litigation expert for this action, and he anticipated that his report would be shared with both the Special Master and the plaintiffs in this case.  Under the facts at bar, defendants' contention that litigation "permeated" the purpose for which he was retained as a consultant sufficient to render his work privileged is without merit.

Even assuming arguendo that the part of the hiring intended to facilitate resolution of the remedial phase of this action was sufficient to bring Mr. Hayes' report within the ambit of Rule 26(b)(3), but cf. U.S. v. Richey, 632 F.3d 559, 568-69 (9th Cir. 2011) (discussing standards

9

1  that apply to determination of whether dual purpose documents qualify for work-product

2  protection), defendants have waived any work product privilege that might attach.

3          Defendants assert in their Termination Motion that they that they are not

4  "deliberately indifferent" to inmates' serious mental health needs.  Termination Motion at 14.

5  The question of deliberate indifference implicates both what defendants know and their response

6  to that information.  See Farmer v. Brennan, 511 U.S. 825, 837 (1994).  By asserting that they are

7  not deliberately indifferent, defendants have placed the question of their subjective response to

8  suicide prevention at issue and to that extent have waived work product protection, if any, that

9  might have attached to Mr. Hayes' report.  Plaintiffs are unable to know what defendants were

10  told by Mr. Hayes about CDCR's suicide prevention program or to make any fact-based

11  assessment of what defendants did with that information unless they obtain the report and

12  associated documents.  Plaintiffs have demonstrated a substantial need for the information

13  provided to defendants by Mr. Hayes, a national expert on suicide prevention in prisons in jails,

14  and that it is impracticable for them to obtain the information they need by means other than by

15  the discovery at issue.  Plaintiffs are not required to destroy the documents Mr. Hayes has

16  provided to them.

17          With respect to Mr. Hayes' deposition, this court finds that Rule 26(b)(4) has no

18  application to Mr. Hayes.  As set forth above, Mr. Hayes was hired as a consultant to CDCR's

19  Division of Health Care Services to review CDCR's suicide prevention policy and make specific

20  recommendations for improvements in suicide prevention.  Mr. Hayes expressly declined a

21  request to be retained as an expert by Coleman defense counsel.  Defendants are not entitled to a

22  protective order preventing his deposition.

23  /////

24  /////

25  /////

26  /////

1     For all of the foregoing reasons, IT IS HEREBY ORDERED that defendants'

2 request for a protective order is denied.

3 DATED: February 14, 2013.

4

5

6                                                    UNITED STATES MAGISTRATE JUDGE

7

8 12
termination.disc1

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26