DONALD SPECTER – 083925
WARREN E. GEORGE – 053588
STEVEN FAMA – 099641
ALISON HARDY – 135966
SARA NORMAN – 189536
REBEKAH EVENSON – 207825
PRISON LAW OFFICE
1917 Fifth Street
Berkeley, California  94710-1916
Telephone:   (510) 280-2621

MICHAEL W. BIEN – 096891
JANE E. KAHN – 112239
ERNEST GALVAN – 196065
LISA ELLS – 243657
AARON J. FISCHER – 247391
KRISTA STONE-MANISTA – 269083
MARGOT MENDELSON – 268583
ROSEN BIEN GALVAN &
GRUNFELD LLP
315 Montgomery Street, Tenth Floor
San Francisco, California  94104-1823
Telephone:   (415) 433-6830

CLAUDIA CENTER – 158255
THE LEGAL AID SOCIETY –
EMPLOYMENT LAW CENTER
600 Harrison Street, Suite 120
San Francisco, California  94107-1389
Telephone:   (415) 864-8848

GEOFFREY T. HOLTZ -- 191370
BINGHAM McCUTCHEN LLP
Three Embarcadero Center
San Francisco, California  94111-4067
Telephone:   (415) 393-2000

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURTS

EASTERN DISTRICT OF CALIFORNIA

AND NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>EDMUND G. BROWN, JR., et al.,<br><br>    Defendants. | Case No. Civ S 90-0520 LKK-JFM P<br><br>**THREE JUDGE COURT**<br><br>**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF PLAINTIFFS' COUNTER MOTION FOR FURTHER RELIEF AND OPPOSITION TO DEFENDANTS' MOTION TO STRIKE PORTIONS OF PLAINTIFFS' OPPOSITION AND FEBRUARY 14, 2013 SUR-REPLY** |
| MARCIANO PLATA, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>EDMUND G. BROWN, JR., et al.,<br><br>    Defendants. | Case No. C01-1351 TEH<br><br>**THREE JUDGE COURT** |

## I. Defendants Must be Ordered to Develop a Plan for Institution-Specific Populations Caps

This Court should grant plaintiffs' motion for an order requiring defendants to propose institution-specific population caps. Not only have defendants defied the population reduction order issued by this Court and affirmed by the U.S. Supreme Court, but they continue to dramatically overcrowd certain prisons, ensuring significant ongoing barriers to the delivery of health care at those prisons.

This Court imposed a systemwide cap to maximize defendants' flexibility in remedying the overcrowding crisis, and did so based on its trust that "any population reduction plan developed by the state in response to [the Court's] opinion and order [would] properly account for the particular limitations and needs of individual institutions and programs." Aug. 4, 2009 Order, *Plata* Dkt. No. 2197, at 131, n. 64. Defendants, however, have abused that trust. They have failed to pursue a plan that accounts for each institution's capacity, and have instead allowed certain prisons to remain dangerously overcrowded – with CCWF at 185% of capacity and two others over 170% -- and well in excess of the 150-160% that Secretary Beard identified as the upper population limit for safe prison management. In order to ensure that crowding does not substantially impede the delivery of health care for prisoners at some prisons, this Court should now order defendants to develop a plan for prison-specific caps, based upon the capacity and resources at each prison.

### A. Ordering Defendants to Propose a Plan for Institution-Specific Population Caps is Consistent with the Supreme Court's *Brown v. Plata* Opinion, and with this Court's Prior Order

Both the U.S. Supreme Court and this Court endorsed a systemwide remedy, rather than a series of prison-specific caps, in order to preserve the State's flexibility in addressing the crowding crisis. In doing so, both Courts recognized, however, that modification of the population reduction order may be necessary if defendants' population reduction plan failed to remedy crowding-based constitutional deficiencies at some prisons.

Defendants claim that the Supreme Court, in addition to supporting the systemwide order,

has "unambiguously rejected" institution-specific population caps in this action. Reply Brief at 19. This is simply wrong. The section that defendants cite for this proposition addresses and rejects the defendants' argument that the relief ordered by the Three Judge Court is overbroad, as it encompasses the entire system, "rather than separately assessing the need for a population limit at every institution." *Brown v. Plata,* 131 S. Ct. 1910, 1940 (2011). In that discussion, the Supreme Court accurately observes that the order before it includes "no requirement that every facility comply with the 137.5% limit." *Id.* at 1941. This statement does not constitute, as defendants assert, a proscription against prison-specific caps under any circumstances. Rather, the Court explains that, under that order, some prisons may exceed the population cap, but notes that this is "[a]ssuming no constitutional violation results. . . ." *Id.* Thus, the Court implicitly recognizes that, if constitutional violations do result because the defendants continue to overcrowd certain prisons, modification of the population reduction order may be necessary. This Court reached the same conclusion, stating that the systemwide order is appropriate, "[u]nless and until it is demonstrated that a single systemwide cap provides inadequate relief." August 4, 2009 Order, *Plata* Dkt. No. 2197 at 121.

Crowding continues to impede the delivery of care, and data demonstrates that higher crowding levels cause greater barriers to care. *See* Receiver's Response to Defendants' Objections to 22nd Tri-Annual Report, *Plata* Dkt. No. 2547, at 4 ("that overcrowding remains a barrier to the delivery of quality care is supported by unmistakably clear data"). The eleven prisons that the Receiver has identified as being top-performing have an average population density of 134%, below the ordered population cap, while the eleven lowest performers have an average population density of 155%. *Id.* at 4-5. Allowing certain prisons to remain drastically overcrowded is likely to ensure that unconstitutional conditions at those prisons persist.

B. Ordering Defendants to Develop a Plan for Prison-Specific Caps Based upon the Resources and Mission at Each Prison is Consistent with the PLRA

When issuing its population reduction order, this Court found, by clear and convincing evidence, that crowding was the "primary cause" of the constitutionally inadequate medical and mental health care and that no other relief would remedy the constitutional violation. *See* 18

3
PLAINTIFFS' REPLY BRIEF IN SUPPORT OF COUNTER MOTION

1  U.S.C. § 3626(a)(3). This Court has met the statutory requirements for issuing a population
2  reduction order. *Brown v. Plata, supra*, 131 S. Ct. at 1947.
3      Defendants assert that plaintiffs' request for an order requiring defendants to propose a
4  plan for prison-specific population caps violates the PLRA because it constitutes a subsequent
5  prisoner release order and thus requires new "primary cause" and "least restrictive means"
6  findings. It does not. A prisoner release order is defined as an order that "that has the purpose or
7  effect of reducing or limiting the prison population, or that directs the release from or
8  nonadmission of prisoners to a prison." 18 U.S.C. § 3626(g)(4). Plaintiffs have already
9  successfully obtained the order limiting the overall prison population.
10     Because, in reducing the prison population, defendants have failed to "properly account for
11 the particular limitations and needs of individual institutions and programs" (Aug. 4, 2009 Order
12 at 131, n. 64), but have instead allowed certain prisons to remain drastically overcrowded, to the
13 detriment of patient care, modification of the population cap order may be necessary. Both the
14 U.S. Supreme Court and this Court recognized the possibility that modification of the order could
15 be necessary under these circumstances. Requiring defendants to propose a plan for prison-
16 specific caps, that will be consistent with the overall 137.5% population cap already in place, will
17 not result in a new, lower population cap and does not constitute a new prisoner release order,
18 subject to the PLRA restrictions.
19     In light of defendants' practice of dramatically overcrowding some prisons, it may be
20 necessary to modify this Court's population reduction order to ensure that no prison is crowded
21 beyond the point at which constitutional health care may be provided. Plaintiffs thus request that
22 this Court order defendants to propose a plan for prison-specific caps, within 120 days of the
23 Court's order, and order the parties to meet and confer with the Special Master, Receiver and
24 *Plata* Court Experts, and to report back to this Court within 150 days of the Court's order
25 regarding the results.
26 ///
27 ///
28

II.     Defendants' Motion to Strike Portions of Plaintiffs' Opposition and Plaintiffs' February 14, 2013 Opposition to Defendants' Motion to Lift Stay Should be Denied.

Citing no legal authority, defendants move to strike portions of Plaintiffs' Opposition to Defendants' Motion to Vacate or Modify, as well as evidence filed in support of that opposition, and Plaintiffs' Opposition to Defendants' Motion to Lift Stay.  Federal Rule 12(f) permits a motion to strike "any redundant, immaterial, impertinent, or scandalous matter" from *a pleading*. "A motion to strike is limited to pleadings."  *U.S. v. Crisp*, 190 F.R.D. 546, 550 (E.D. Cal. 1999); *N.R.D.C. v. Kempthorne*, 539 F.Supp.2d 1155, 1161(E.D. Cal. 2008) ("The Federal Rules of Civil Procedure do not provide for a motion to strike documents or portions of documents other than pleadings.")  The instant motion is not a pleading, and even if it were, defendants have failed to demonstrate that the matters cited would meet the criteria for striking.

When a party moves to strike matters that are not part of the pleadings, the motion "may be regarded as an 'invitation' by the movant 'to consider whether [proffered material] may properly be relied upon.'"  *U.S. v. Crisp*, at 551 (citations omitted).  This Court should decline defendants' invitation – the matters defendants seek to strike, including their own reports that they submitted to government agencies seeking funding, are reliable and pertinent to the issues in this case.

    A.     This Court Should Not Strike From the Record the Defendants' Own Reports Documenting the Need for Expanded Treatment Space

Defendants filed their motion to vacate or modify the population reduction order, proclaiming that further population reduction is unnecessary because "California's vastly improved prison health care system now provides inmates with superior care that far exceeds the minimum requirements of the Constitution."  Defendants' Motion to Vacate or Modify Population Reduction Order, Dkt. No. 2506, at 1.  Countering defendants' argument, plaintiffs submitted, among other things, excerpts from seven Health Care Facility Improvement Plans and a Budget Change Proposal, that were produced to plaintiffs through the Receiver's office.  Defendants' motion to strike is not based on challenges to the authenticity of these documents, but instead on the claim that they are inadmissible hearsay and irrelevant to any issue before this Court.  Defendants' Reply at 2.

5
PLAINTIFFS' REPLY BRIEF IN SUPPORT OF COUNTER MOTION

These business records are admissible under the public records exception to the hearsay rule. Federal Rule of Evidence 802(8). As plaintiffs set forth in the Declaration of Steven Fama, these documents were produced to plaintiffs by Richard Kirkland of the Receiver's Office, who supplied them after they were approved by the California Department of Finance and had received initial approval from the Public Works Board. These documents constitute "reports . . . of public offices or agencies. . . setting forth . . . the activities of the office or agency" (*id.*), and thus, are admissible.

These public records document serious deficiencies in the defendants' health care delivery system due to the lack of adequate building space. *See* Plaintiffs' Opposition to Defendants' Motion to Vacate or Modify, Dkt. No. 2528, at 10-14. Defendants' claim that these documents are irrelevant is puzzling. Defendants are urging this Court to vacate the population reduction order because, they claim, they are now providing care to prisoners that "far exceeds" the constitutional minima. Surely these reports, which defendants themselves have submitted to public agencies seeking funding, addressing deficiencies in the existing health care delivery system that defendants maintain must be addressed to ensure adequate treatment for prisoners, are relevant to their claim that care is now constitutional.

B.   This Court Should Not Strike Plaintiffs' Objections to the Beard and Barton Declarations

Defendants argue that plaintiffs' objections to the Beard and Barton declarations should be stricken because, they claim, plaintiffs provided no competent evidence to rebut the "factual statements" in those declarations. Defendants' Reply at 7. Defendants have failed to make any showing that plaintiffs' objections are "redundant, immaterial, impertinent or scandalous…." (Rule 12(f)), and their motion to strike should be denied.

In any case, plaintiffs' objection to Dr. Beard's assertion that "the CDCR now delivers superior medical and mental health care that would compare favorably with any correctional system in the United States" based upon his failure to support it is well taken, and defendants fail to establish otherwise. This sweeping statement implies that Dr. Beard possesses reliable evidence about the medical and mental health care delivery systems in every correctional system in the U.S.

1  While defendants assert in their Reply that Dr. Beard is the former Director of the Pennsylvania
2  Department of Corrections, is cited often in this Court's August 4, 2009 Opinion and is now more
3  familiar with the CDCR's health care delivery system than he was when he testified for plaintiffs
4  five years ago, they fail to even suggest that Dr. Beard has any basis to compare the CDCR's
5  health care delivery system to any state's system, other than Pennsylvania's.  Thus, that statement
6  is not supported and is entitled to little, if any, weight.

7  Defendants likewise fail to demonstrate that Mr. Barton is competent to opine that
8  "overcrowding is no longer a factor affecting the CDCR's ability to provide effective care in its
9  prisons."  Barton Decl. at ¶ 15.  Defendants assert that, not only is Mr. Barton's statement properly
10 before this Court, it "is dispositive of the issue."  Defendants' Reply at 8.  Mr. Barton's opinions
11 are apparently based solely on the Office of the Inspector General's audits.  Yet defendants fail to
12 respond to the Receiver's description of the limitations of the audit program, including the fact
13 that the scale for the OIG scores has not been validated for making constitutional measurements,
14 and the scores often depend on very small samples sizes, such that the confidence intervals for
15 some items are unusually large.  Receiver's 22nd Report, *Plata* Dkt. No. 2525, at 30.  Mr. Barton's
16 opinion is thus not persuasive.

   C.  This Court Should Not Strike Plaintiffs' Timely Filed Opposition to Defendants'
       Motion to Lift Stay on Defendants' Motion to Vacate

19 Defendants claim that plaintiffs' Opposition to Defendants' Motion to Lift the Stay on
20 Defendants' Motion to Vacate was filed untimely.  That is nonsense.  On January 29, 2013, this
21 Court stayed proceedings on defendants' Motion to Vacate or Modify, pending further orders, but
22 directed plaintiffs to respond to defendants' Motion by February 12, 2013.  Order Re Defendants'
23 January 7, 2013 Motion to Vacate or Modify, Jan. 29, 2013, *Plata* Dkt. No. 2527 at 2.  At the
24 same time, this Court ordered defendants to advise the Court, by the same date, on whether they
25 intended to file a motion to terminate relief in *Plata*.

26 Defendants' February 12 Response not only apprised the Court of their decision to pursue
27 a termination motion "in a few months" if the Court experts do not complete their evaluations
28 quickly, it also urged the Court to lift the stay on their Motion to Vacate.  Defendants' Response

7
PLAINTIFFS' REPLY BRIEF IN SUPPORT OF COUNTER MOTION

and Objections to January 29, 2013 Order.  Two days later, plaintiffs filed a response, opposing defendants' motion to lift the stay.  Clearly, the response was timely.

## CONCLUSION

As set forth above, this Court should grant plaintiffs' counter motion for further relief, and deny defendants motion to strike.

DATED:  February 26, 2013                    Respectfully submitted,


                                             By:  /s/
                                                  Alison Hardy

                                             Attorneys for *Plata* Plaintiffs and on
                                             Behalf of *Coleman* Plaintiffs