IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RALPH COLEMAN, et al.,

        Plaintiffs,                  No. 2:90-cv-0520 LKK JFM P

    vs.

EDMUND G. BROWN, JR., et al.,

        Defendants.         ORDER

                                /

        By order filed January 17, 2013, the court directed the Special Master to file forthwith the Twenty-Fifth Round Monitoring Report that he had circulated to the parties on December 28, 2012.[1] Pursuant to that order, any objections to the Twenty-Fifth Round Monitoring Report were to be filed with this court on or before thirty days from December 28, 2012. On January 18, 2013, the Special Master filed the Twenty-Fifth Round Monitoring Report (hereafter Report). Defendants have filed objections and a motion to strike or modify portions of

/////

/////

---

[1] The order was precipitated by motions filed by defendants on January 7, 2013 to terminate this action and vacate the judgment and orders of this court, and to modify or vacate the population reduction order of the three-judge court.

1

the Report (hereafter objections)[2] and plaintiffs have responded to defendants' objections.[3] Defendants' objections and motion to strike or modify the Report are resolved herein.[4]

        Defendants' main contention, which pervades their objections, is that the Special Master "has not even attempted to assess" defendants' mental health care delivery system against a constitutional standard. See, e.g., Objections at 1, 3. As will appear, infra, this objection betrays a fundamental misunderstanding of the history of this action and its remedial process. In fact, the Special Master is not tasked with "assessing whether the State's prison mental health care system satisfies constitutional standards." (See Objections at 1.) That assessment is for this court. It is true that in working with the defendants to create a remedial plan, the Special Master gave "due regard for the constitutional deficiencies" in the prison's mental health care system. Order of Reference, filed December 11, 1995 (Doc. No. 640), at 2. However, with respect to the Report, the Special Master's task is to measure the State's compliance with "any remedial plan that this court may order." See Order of Reference at ¶¶4-5. At this time, the Revised Program /////

/////

/////

---

[2] All references to objections in the remainder of this order are to defendants' amended Objections and Motion to Strike or Modify Portions of the Twenty-Fifth Round Monitoring Report, filed February 19, 2013.

[3] The operative objections by defendants were filed on February 19, 2013, pursuant to an order to show cause filed February 13, 2013. Plaintiffs' response, filed February 11, 2013, was to a prior version of the objections which has been removed from the record at defendants' request. See Order filed February 25, 2013. The operative objections are in all relevant respects identical to those to which plaintiffs responded. See id.

[4] Before turning to that resolution, the court addresses defendants' contention that the January 17, 2013 order directing the Special Master to file his Twenty-Fifth Round Monitoring Report directly with the court reduced their "twenty-one day time period to file objections or a motion to strike or modify" the Report to six business days. Objections at 3. This contention is without merit. Defendants received the Report on December 28, 2013. Their objections to the Report were due thirty days after they received the Report. The January 17, 2013 order did not shorten defendants' time to prepare objections; it changed the forum to which those objections are tendered.

2

Guide is the primary remedial plan in this action, see infra, and therefore properly the focus of the Special Master's monitoring and compliance reporting.[5]

As discussed below, the Revised Program Guide represents defendants' considered assessment, made in consultation with the Special Master and his experts, and approved by this court, of what is required to remedy the Eighth Amendment violations identified in this action and meet their constitutional obligation to deliver adequate mental health care to seriously mentally ill inmates. Because the Revised Program Guide is grounded in the requirements of the Eighth Amendment as they have been developed in the context of this action, see Coleman v. Wilson, 912 F. Supp. 1282, 1301 (E.D. Cal. 1995), the Special Master's Report to the court on defendants' compliance with the provisions of the Revised Program Guide is also grounded in the requirements of the Eighth Amendment and is precisely in accordance with his duties.

The Eighth Amendment violations in this case predate 1994, when they were found by the magistrate judge after a lengthy trial. The magistrate judge made a series of findings concerning the extensive violations, and recommendations to remedy them. "The majority of these recommendations [were designed to] require defendants to develop and implement a series of forms, protocols, and plans in consultation with court-appointed experts." Coleman v. Wilson, 912 F. Supp. 1282, 1297 (E.D. Cal. 1995). The magistrate judge also recommended appointment of a Special Master "to (1) consult with the court concerning the appointment of experts; (2) monitor compliance with court-ordered injunctive relief; (3) report to the court in twelve months on the adequacy of suicide prevention; and (4) perform such additional tasks as the court may deem necessary." Id.

/////

---

[5] In addition, the court has issued many orders requiring monitoring by the Special Master directed at targeted and urgent issues. See, e.g., Order filed December 22, 2000, at 1 n.1 (directing the Special Master to monitor suicide prevention and policy); Order filed March 31, 2010 at 3 (directing the Special Master to "monitor defendants' implementation of their policies and practices regarding referral and transfer of Coleman class members for inpatient care.").

Defendants interposed a series of objections to the magistrate judge's findings and recommendations. Of particular relevance here, defendants objected that the magistrate judge had "failed to specify the minimum for each, or any, of the elements of a constitutionally adequate mental health care delivery system." Id. at 1301. The court rejected this objection on the ground that "in cases challenging conditions of prison confinement, courts must strike a careful balance between identification of constitutional deficiencies and deference to the exercise of the wide discretion of prison administrators in the discharge of their duties" and that "[t]he need to strike that balance, common sense, and the clinical nature of the problem, all suggest that standards to insure compliance with the Eighth Amendment can only be developed contextually." Id. at 1301. This court therefore found "wholly appropriate" the magistrate judge's recommendation to leave development of the "protocols, standards, procedures and forms" necessary to remediate the Eighth Amendment violation "to defendants . . . in consultation with court appointed medical experts." Id. at 1302.

On December 11, 1995, the court appointed a Special Master. See Order filed December 11, 1995 (Doc. No. 639). The Order of Reference that accompanied the order appointing the Special Master provides in relevant part that the "principal responsibilities of the special master . . . are to provide expert advice to defendants to ensure that their decisions regarding the provision of mental health care to class members conforms to the requirements of the federal constitution and to advise the court regarding assessment of defendants' compliance with their constitutional obligations. Thus, *the main work of the special master in developing a remedial plan will be with the defendants to this litigation, with due regard for both the constitutional deficiencies identified by the court and the deference owed to the discretion of prison administrators in the discharge of their duties.*" Order of Reference at 2 (emphasis added). The duties of the Special Master include working "with defendants and experts to be selected by the special master . . . to develop a remedial plan that effectively addresses the constitutional violations set forth in this court's September 13, 1995 order." Id. at 3. In

4

1  addition, the Special Master is tasked with monitoring "defendants' implementation of and
2  compliance with any remedial plan that this court may order", preparing and filing "with the
3  court periodic reports assessing defendants' compliance with such remedial plan as the court
4  may order", and advising the court "concerning any modification to the remedial plan that is
5  requested by a party or that appears necessary to effectuate the purposes of the remedial plan."
6  Id. at 4-5.

7          On June 6, 1997, the Special Master submitted to the court for approval six
8  volumes of materials consisting of "program guides, policies, plans, policy and procedural
9  manuals, forms, training materials, and memoranda." Special Master's Report on Plans, filed
10 June 6, 1997, at 1.  The submitted materials are comprised of plans and policies proposed by
11 defendants, id. at 2, and have collectively been referred to as the Program Guides or the remedial
12 plans. See id.; see also Order filed June 27, 1997.  The Special Master reported that "[w]ith few
13 exceptions, the parties agree that the blueprint for the defendants' mental health care delivery
14 system contained in these documents *describes a system that comports with the requirements of*
15 *the court in this case."* Id. (emphasis added).  On June 27, 1997, the court provisionally
16 approved the remedial plans with some modifications, directed the Special Master to begin
17 monitoring defendants' implementation of and compliance with those plans, and to file quarterly
18 monitoring reports. Order filed June 27, 1997, at 1, 2,4.  By order filed December 24, 1997, this
19 reporting requirement was changed from quarterly to semi-annual. See Order filed December
20 24, 1997 (Doc. No. 905).  The Twenty-Fifth Round Monitoring Report is his latest such report.

21         The Program Guides provide the "framework" for remediation of the Eighth
22 Amendment violations identified in the court's 1995 order. Opinion and Order of Three-Judge
23 Court, filed August 4, 2009, at 27.  Currently, the operative remedial plan is the Revised
24 Program Guide, which was substantially approved by this court in 2006.  The Revised Program
25 Guide, the product of work started in 2002, was submitted "directly to the court by defendants"
26 with the Special Master's representation that it had been "endorsed by the parties and the special

5

master." Special Master's Report and Recommendations on Defendants' Revised Program Guide, filed February 3, 2006 (ECF 1749), at 4.  As the Special Master explained in his report and recommendations filed concurrently with defendants' submission, in 1997 the original program guides had been a "work in progress" with  "many of the programmatic components of the defendant's [sic] mental health system ... still embryonic" and "their implementation [in] need[] [of] close scrutiny and analysis over the next several years." Id. at 2.  Since their provisional approval, many parts of the Program Guides had been "revisited and amended by the court, while some other provisions were modified and upgraded by the defendants on their own initiative."  Id.[6]  The Special Master reported that the Revised Program Guide was, in substantial part, "adequate and acceptable."  Id.[7]  By order filed March 3, 2006, the court approved all undisputed provisions of the Revised Program Guide and ordered their immediate implementation.

The foregoing demonstrates the fallacy in defendants' pervasive objection that the Special Master is not monitoring with reference to a constitutional standard.  To this point in the remedial phase of this action, defendants' Program Guides have been defendants' plan, approved by this court, to remedy the Eighth Amendment violations identified in this court's 1995 order.

---

[6] The Special Master also reported that in the intervening decade this action had been "broadened to include all California Department of Corrections and Rehabilitation (CDCR) institutions" and "the size of the defendants' mental health case load ha[d] more than doubled since the provisional program guides were adopted, growing from 14,293 inmate/patients in July 1997 to 30, 272 in October 2005." Id.  As of November 2, 2012, there were 32,106 inmates in CDCR's mental health services delivery system.  See 2011 Suicide Report, filed January 25, 2013, at 16.  Thus, the monitoring duties of the Special Master have expanded substantially over the course of the last decade.

[7] Consistent with the Order of Reference, the Special Master noted that there was a list of additional remedies requested by plaintiffs that had been "firmly and consistently rejected" by defendants and which the special master's experts had "not been persuaded of, nor endorsed, the necessity for. . . ." Id. at 8. The Special Master noted that "[i]n the absence of such an endorsement, the special master has not elected on his own authority to insist on their adoption by defendants." Id.  Recognizing that the question of whether some or all of these "expanded remedies are essential to redress the constitutional deprivations identified by the court in its initial findings in the case" is a "legal conclusion beyond the jurisdiction of the special master", he identified the issues and referred them to the court. Id. at 8-9.

/////

/////

To the extent defendants' individual objections are based on this pervasive one they are without merit and are overruled.[8]

   A. Suicide Prevention

Defendants interpose a series of objections centered on statements in the Report concerning suicide prevention. Defendants object that the Special Master has "mistakenly" focused on the number of suicides by CDCR inmates, rather than recognizing "the robust suicide prevention program that CDCR has established." Objections at 4. Defendants' apparent assertion that the number of inmate suicides is not relevant to the quality of their suicide prevention efforts is without merit. See Brown v. Plata, 131 S. Ct. 1910, 1924-25 & n.2 (2011) (suicide rate compared to national average and percentage of suicides that involved "some measure of inadequate assessment, treatment or intervention" cited as evidence that "[p]risoners in California with serious mental illness do not receive minimal, adequate care.")

Defendants also challenge the methodology underlying the Special Master's report that "'it does not appear that the rate of suicide deaths in CDCR prisons is declining, . . . suicide rates [the number of suicides per 100,000 inmates] in CDCR prisons continue to substantially exceed the national average among U.S. state prisons, despite the efforts that are being made," and "performance in the areas of suicide prevention remains concerning.'" Objections at 4, quoting Report at 17. The methodology used by the Special Master is the same methodology his expert has used for over a decade in reporting to this court on CDCR inmate suicides. See, e.g., 2003 Suicide Report (ECF 1658); 2008/2009 Suicide Report (ECF 4009). It is neither erroneous nor misleading. Certainly no dispute over methodology can disguise the Special Master's statement that in 2012, as of the time of the writing of the Report, a CDCR

---

[8] Nothing in this order should be construed to preclude arguments raised by defendants' in their motion to terminate that they have achieved constitutional compliance. That question is not before the court at this time.

7

inmate was dying by suicide on average nearly every 11 days. See Report at 17. That is of concern to the Special Master, and it is of concern to this court. It should be a primary concern to defendants.

In essence, defendants ask this court to reject the methodology used by the Special Master and the conclusion that he draws from his findings that defendants' suicide prevention measures have not been fully implemented. That request is denied.[9] After over seventeen years working with defendants on the remedial phase of this action, including increasing focus on the problem of inmate suicides in CDCR prisons, the Special Master is well-qualified to opine on these matters and the court finds no basis for striking his findings or his conclusions. The court reserves for hearing on defendants' motion to terminate the question of whether defendants suicide prevention efforts are consistent with the requirements of the Eighth Amendment.

B. Other Overall Objections

In Section I(B) of the objections, defendants raise twenty objections, some of which are accompanied by requests to strike portions of the report.

In Section I(B)(1), defendants objection to the use of the term "compliance" on two grounds. The objection that the term, as used, has "nothing to do with constitutional compliance" and instead is used with reference to Program Guide requirements, objections at 15, is without merit for the reasons discussed supra. Defendants also object that the Report "typically does not explain what specifically led to the finding of noncompliance." Objections at

---

[9] If the matters weren't so serious, some of the objections would border on the absurd. For example, defendants object to a statement in the Report that defendants' Suicide Risk Evaluation (SRE) mentoring program "has only been partially implemented." Objections at 10. Defendants then go on to explain that "[f]rom August 2011 to the present, ongoing training has been provided to selected mentors at all institutions . . . every institution has an identified primary mentor [and] all institutions are focusing on the completion of mentoring for staff working with inmates placed in Enhanced Outpatient Program and Mental Health Crisis Beds." Id. Defendants also explain that they have "embarked upon a significant expansion" of the original SRE plan. Id. Defendants' objections confirm the sentence to which they object: they are in the process of implementing the SRE mentoring program. The program is partially implemented.

8

15. Although defendants assert that "some variation" of the term "compliance" "appears 804 times" in the Report, id., they do not provide one example of an alleged failure of explanation.

Finally, defendants assert that "the special master's use of the term 'compliance' to require a minimal score of 90% against Program Guide requirements is one of the primary reasons the reports are not useful in determining whether the mental health system is constitutionally adequate." This objection is also without merit. Because the Revised Program Guide is the operative remedial plan in this action, the degree to which defendants have implemented the requirements of the Revised Program Guide is extremely relevant and useful to assessment of whether they are meeting their constitutional obligations.[10] For the foregoing reasons, defendants' objection to the Special Master's use of the term "compliance" is overruled.

The remaining objections in this section appear to implicate matters at issue in defendants' pending motion to terminate this action. To the extent that defendants object to any of the Special Master's factual findings the objections are overruled.[11] To the extent that defendants object to conclusions drawn in the Report from factual findings, the objections are also overruled. As discussed above, the Special Master has been closely involved with remedial

---

[10] Defendants' repeated assertion that the Report is of little or no practical use to them, see, e.g., Objections at 15; Response to Order to Show Cause, filed February 19, 2013, at 2, is of concern. Defendants presently have over 32,000 seriously mentally ill inmates in their custody. The Report compiles in one well-organized document a wealth of relevant information concerning the status of delivery of mental health care to those inmates both systemically and at each institution in the CDCR. It provides an overview of the current status of mental health staffing (Report at 52-57), quality management (Report at 57-60), suicide prevention (Report at 60-66), medication management (Report at 66-72), and access to higher levels of care (Report at 72-83), all of which are necessary components of a constitutionally adequate prison mental health care system. See Coleman v. Wilson, 912 F.Supp. at 1305-1315 (discussing same). In addition, recent monitoring reports, including the current Report, have included a focus on specific goals to be met to bring this action to a conclusion. See, e.g., Report at 16-17.

[11] Defendants' objection in section I(B)(3) is illustrative of another defect that pervades defendants' objections. Here, defendants object to "any implication or conclusion" to be drawn from the Special Master's report that "[n]ine institutions did not provide any data on whether they had an operational [Emergency Response Review Committee] during the review period, and 11 institutions did not provide data relative to CPR training during the period." The Special Master is simply reporting a fact about information provided to him. Defendants have interposed no objection to the reported fact.

efforts in this action for over seventeen years. The findings and conclusions in the Report are based on extensive monitoring efforts, including: "full on-site visits at 23 of the 33 CDCR adult institutions;" a one day site visit combined with a so-called "paper review," which is "review based on [an institution's] documentation of their respective levels of compliance" at four institutions; and paper reviews at the six remaining institutions. Report at 10-11. The on-site visits took place over a four month period from May 1, 2012 through August 31, 2012, and defendants produced documents to the Special Master through September 11, 2012. Id. at 12. The Special Master and his experts are well-qualified to draw conclusions from findings on matters within the scope of their duties and there is no basis for striking such conclusions. To the extent that defendants' objections go to the weight to be given any particular finding or conclusion in connection with the issues raised by their motion to terminate, they are overruled without prejudice to defendants' right to make appropriate argument in connection with said motion.

### C. Institutional Objections

In the final section of their objections, defendants raise a series of objections to statements in the Report concerning individual institutions.[12] To the extent that defendants object to specific factual findings on the ground that they provided information to the Special Master that is not reflected in the Report, they have not provided the cited evidence to this court and for that reason the objections will be overruled. The Special Master will, however, be directed to review those objections and file any corrections to the Report as may be required by the specific objections.[13] To the extent that these objections are predicated on conclusions drawn or opinions formed by the Special Master, they are overruled for the reasons set forth in the preceding sections of this order. Finally, to the extent that defendants' objections go to issues

---

[12] Defendants describe these statements as "allegations." Objections at 24. The term has no application to the Report.

[13] Should the Special Master determine that corrections are warranted, he may file a separate notice setting forth the corrections.

10

raised by their motion to terminate, they are overruled as objections to the Report without prejudice to defendants' right to make appropriate argument in connection with said motion.

In accordance with the above, IT IS HEREBY ORDERED that:

1. Except as expressly provided in this order, defendants' objections to the Special Master's Twenty-Fifth Round Monitoring Report are overruled;

2. Defendants' February 19, 2013 motion to strike or modify portions of the Special Master's Twenty-Fifth Round Monitoring Report is denied;

3. Within twenty days from the date of this order the Special Master shall review those objections in section I(C) that contain specific citation to material provided to him and file any corrections to the Twenty-Fifth Round Monitoring Report as may be required by those specific objections.

DATED: February 27, 2013.

/s/ Lawrence K. Karlton
LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT