1 | DONALD SPECTER – 083925
STEVEN FAMA – 099641
2 | PRISON LAW OFFICE
1917 Fifth Street
3 | Berkeley, California  94710-1916
Telephone:    (510) 280-2621
4 |
5 |
6 |
7 |
8 | JON MICHAELSON – 083815
JEFFREY L. BORNSTEIN – 099358
9 | LINDA L. USOZ – 133749
MEGAN CESARE-EASTMAN – 253845
10 | K&L GATES LLP
4 Embarcadero Center, Suite 1200
San Francisco, California  94111-5994
11 | Telephone:    (415) 882-8200

MICHAEL W. BIEN – 096891
JANE E. KAHN – 112239
ERNEST GALVAN – 196065
LISA ELLS – 243657
AARON J. FISCHER – 247391
MARGOT MENDELSON – 268583
KRISTA STONE-MANISTA – 269083
ROSEN BIEN
GALVAN & GRUNFELD LLP
315 Montgomery Street, Tenth Floor
San Francisco, California  94104-1823
Telephone:    (415) 433-6830

CLAUDIA CENTER – 158255
THE LEGAL AID SOCIETY –
EMPLOYMENT LAW CENTER
180 Montgomery Street, Suite 600
San Francisco, California  94104-4244
Telephone:    (415) 864-8848

12 | Attorneys for Plaintiffs

13 |       UNITED STATES DISTRICT COURT

14 |       EASTERN DISTRICT OF CALIFORNIA

15 |

16 | RALPH COLEMAN, et al.,

17 |          Plaintiffs,

18 |       v.

19 | EDMUND G. BROWN, Jr., et al.,

20 |          Defendants.

21 |

Case No. Civ S 90-0520 LKK-JFM

**DECLARATION OF** AARON J. FISCHER **IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF RULE VIOLATION REPORT AND USE OF FORCE MATERIALS**

22 |
23 |
24 |
25 |
26 |
27 |
28 |

[747342-1]

1    I, Aaron J. Fischer, declare:

2    1.    I am an attorney admitted to practice law in California, a member of the bar

3    of this Court, and an associate in the law firm of Rosen Bien Galvan & Grunfeld LLP,

4    counsel of record for Plaintiffs.  I have personal knowledge of the matters set forth herein,

5    and if called as a witness I could competently testify.  I make this declaration in support

6    of Plaintiffs' Motion to Compel Production of Rule Violation Report (RVR) and Use of

7    Force (UOF) Materials.

8    2.    Attached hereto as **Exhibit A** is a true and correct copy of the Plaintiffs'

9    Second Request for Inspection.

10   3.    Attached hereto as **Exhibit B** is a true and correct copy of a letter dated

11   February 12, 2013, sent by my office to counsel for Defendants.  That letter provides

12   clearance information for the Plaintiffs' attorneys and experts who conducted prison

13   inspections at CSP-Corcoran (COR); Kern Valley State Prison (KVSP); and CSP-Los

14   Angeles County (LAC).  In that letter, Defendants were also asked to provide certain

15   documents and information for the experts' review prior to and/or during each of the tours,

16   as consistent with the requests made in Plaintiffs' Second Request for Inspection (a copy

17   of which was enclosed with that letter).

18   4.    Attached hereto as **Exhibit C** is a true and correct copy of a letter dated

19   February 20, 2013, sent by my office to counsel for Defendants.  That letter provides

20   clearance information for the Plaintiffs' attorneys and experts who conducted prison

21   inspections at San Quentin State Prison.  In that letter, Defendants were also asked to

22   provide certain documents and information for the experts' review prior to and/or during

23   each of the tours, as consistent with the requests made in Plaintiffs' Second Request for

24   Inspection (a copy of which was enclosed with that letter).

25   5.    Attached hereto as **Exhibit D** is a true and correct copy of the Expert Report

26   of Steve J. Martin (Dkt. No. 4279 at 2-37), which was filed in conjunction with

27   Defendants' Motion to Terminate Under the PLRA and to Vacate the Court's Judgment

28   and Orders under Fed. R. Civ. Proc. 60(b)(5).

[747342-1]

1

DECLARATION OF AARON J. FISCHER IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL
PRODUCTION OF RULE VIOLATION REPORT AND USE OF FORCE MATERIALS

6.    Attached hereto as **Exhibit E** is a true and correct copy of the email I sent to Defendants' counsel regarding Plaintiffs' requests for documents and videos from the tours at COR, KVSP, and LAC during the week of February 19. This email was sent one business day following the conclusion of the last of the three tours (*i.e.*, the Feb. 22 LAC tour).

7.    Attached hereto as **Exhibit F** is a true and correct copy of the email chain between Defendants' counsel and me regarding Plaintiffs' request for documents and videos from the tours at COR, KVSP, and LAC that were conducted between February 19 and February 22.

8.    I met and conferred with Deputy Attorney General William Downer on February 26 and 27, on the materials sought in this motion. In the course of my written and oral meet and confer, Mr. Downer confirmed that Defendants' expert Steve J. Martin reviewed Use of Force reports and RVR packets to off-site. I further understand that that several of Mr. Martin's tours were conducted over the course of multiple days, while Plaintiffs' expert Eldon Vail's tours were each one day.

9.    In the course of the parties' meet and confer, Mr. Downer informed me on February 27 that he had transmitted our emailed requests for documents and videos, including materials requested in the February 1 Request for Inspection, to the institutions early in the week of February 25. He declined to inform me when the requested materials would be produced, and stated that Defendants could not confirm whether several materials – including the institutions' RVR data, RVR packets, Use of Force packets, Use of Force videos, and the requested weapon (block gun) use logs – would be produced.

10.    Defendants' counsel stated that the institutions had "made available" all requested materials during Plaintiffs' tours at COR, KVSP, and LAC. As detailed in the Cesare-Eastman and Acharya declarations, this is untrue.

11.    I have attended three (3) Plaintiffs' expert inspections in the course of the current litigation – at Mule Creek State Prison (February 7), California Institution for Men (February 12), and California Correctional Institution (February 22). For each of those

2

[747342-1]

1   tours, Plaintiffs' experts made requests for various specific documents – such as treatment

2   schedules, housing rosters, logs, institution reports, class member records, mental health

3   data, length of stay data, and other *Coleman*-related materials.  These documents have

4   generally been produced to Plaintiffs by the Attorney General's office in the days or weeks

5   following each tour.  I understand that the same practice applied on other Plaintiffs' expert

6   tours as well.  It is unclear why, as to these tours, certain types of *Coleman*-related

7   document requests made prior to and/or at the conclusion of each respective tour, are being

8   denied.

9          I declare under penalty of perjury under the laws of the United States and the State

10  of California that the foregoing is true and correct, and that this declaration is executed at

11  San Francisco, California this 28th day of February, 2013.

12

13                                          */s/ Aaron J. Fischer*
                                            Aaron J. Fischer

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3

DECLARATION OF AARON J. FISCHER IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL
PRODUCTION OF RULE VIOLATION REPORT AND USE OF FORCE MATERIALS

# EXHIBIT A

1  DONALD SPECTER – 083925
   STEVEN FAMA – 099641
2  ALISON HARDY – 135966
   SARA NORMAN – 189536
3  REBEKAH EVENSON – 207825
   PRISON LAW OFFICE
4  1917 Fifth Street
   Berkeley, California 94710-1916
5  Telephone:  (510) 280-2621

6

7  CLAUDIA CENTER – 158255
   THE LEGAL AID SOCIETY –
8  EMPLOYMENT LAW CENTER
   600 Harrison Street, Suite 120
9  San Francisco, California 94107-1389
   Telephone:  (415) 864-8848

10 Attorneys for Plaintiffs

   MICHAEL W. BIEN – 096891
   JANE E. KAHN – 112239
   ERNEST GALVAN – 196065
   LISA ELLS – 243657
   AARON J. FISCHER – 247391
   KRISTA STONE-MANISTA – 269083
   MARGOT MENDELSON – 268583
   ROSEN BIEN GALVAN &
   GRUNFELD LLP
   315 Montgomery Street, Tenth Floor
   San Francisco, California 94104-1823
   Telephone:  (415) 433-6830

   WARREN E. GEORGE – 053588
   BINGHAM McCUTCHEN LLP
   Three Embarcadero Center
   San Francisco, California 94111-4067
   Telephone:  (415) 393-2000

11

12                       UNITED STATES DISTRICT COURTS

13                       EASTERN DISTRICT OF CALIFORNIA

                       AND NORTHERN DISTRICT OF CALIFORNIA

14          UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

15            PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

16

17  RALPH COLEMAN, et al.,                    Case No. Civ S 90-0520 LKK-JFM P

18          Plaintiffs,                       **THREE JUDGE COURT**

19      v.                                    **PLAINTIFFS' SECOND REQUEST
                                              FOR INSPECTION**
    EDMUND G BROWN, JR., et al.,
20          Defendants.

21  MARCIANO PLATA, et al.,                   Case No. C01-1351 TEH

22          Plaintiffs,                       **THREE JUDGE COURT**

23      v.

    EDMUND G. BROWN, JR., et al.,
24          Defendants.

25

26  PROPOUNDING PARTIES:  PLAINTIFFS RALPH COLEMAN, et al.

27  RESPONDING PARTIES:   DEFENDANTS EDMUND G. BROWN JR., et al.

28  REQUEST NUMBER:       TWO

[719966-2]

                       PLAINTIFFS' SECOND REQUEST FOR INSPECTION

DONALD SPECTER – 083925
STEVEN FAMA – 099641
PRISON LAW OFFICE
1917 Fifth Street
Berkeley, California 94710-1916
Telephone: (510) 280-2621

MICHAEL W. BIEN – 096891
ERNEST GALVAN – 196065
JANE E. KAHN – 112239
LISA ELLS – 243657
AARON J. FISCHER – 247391
KRISTA STONE-MANISTA – 269083
MARGOT MENDELSON – 268583
ROSEN BIEN GALVAN &
GRUNFELD LLP
315 Montgomery Street, Tenth Floor
San Francisco, California 94104-1823
Telephone: (415) 433-6830

CLAUDIA CENTER – 158255
THE LEGAL AID SOCIETY –
EMPLOYMENT LAW CENTER
180 Montgomery Street, Suite 600
San Francisco, California 94104-4244
Telephone: (415) 864-8848

WARREN E. GEORGE – 053588
BINGHAM McCUTCHEN LLP
Three Embarcadero Center
San Francisco, California 94111-4066
Telephone: (415) 393-2000

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| RALPH COLEMAN, et al., | Case No. Civ S 90-0520 LKK-JFM |
|---|---|
| Plaintiffs, | **PLAINTIFFS' SECOND REQUEST FOR INSPECTION** |
| v. | Judge: Lawrence K. Karlton |
| EDMUND G. BROWN, Jr., et al., | |
| Defendants. | |

PROPOUNDING PARTIES:   PLAINTIFFS RALPH COLEMAN, et al.

RESPONDING PARTIES:   DEFENDANTS EDMUND G. BROWN JR., et al.

REQUEST NUMBER:   TWO

[719966-2]

1    TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2         PLEASE TAKE NOTICE that, pursuant to Federal Rules of Civil Procedure Rule

3    34, Plaintiffs Ralph Coleman et al. submit the following Request for Inspection to

4    Defendants Edmund G. Brown Jr., et al. (combined, the "Defendants") for plaintiffs and

5    plaintiffs' experts to inspect Central California Women's Facility, California State Prison-

6    Corcoran, Kern Valley State Prison, California State Prison-Lancaster, San Quentin State

7    Prison, and Deuel Vocational Institution.

8         The discovery described herein shall relate to matters and proceedings before the

9    *Coleman/Plata* Three Judge Court and the *Coleman* Court.

10                                            **DEFINITIONS**

11         Unless otherwise indicated, the following definitions and terms shall apply to these

12    Requests for Inspection:

13         1.    The term "ALL" means any and all.

14         2.    The term "ANY" means each and every.

15         3.    The term "CDCR" refers to the California Department of Corrections and

16    Rehabilitation, its agents, employees and anyone acting on its behalf.

17         4.    The term "CONFER WITH" means to interview, formally or informally,

18    CDCR personnel with whom plaintiffs' experts and plaintiffs' counsel meet and/or

19    encounter during the course of the inspection.

20         5.    The term "CLASS MEMBER" means any prisoner who is a member of the

21    plaintiff class under *Coleman v. Brown.*

22         6.    The terms "INSPECT" or "INSPECTIONS" means to physically walk

23    through and observe CDCR prison facilities, including, but not limited to, all areas in

24    which California state prisoners sleep, eat, bathe, exercise, and receive medical and mental

25    health attention, and areas in which such prisoners are received at the prison and/or

26    processed for release from the prison.  The term further means to review any records,

27    including, but not limited to logbooks, relating to class members' movement within the

28    prison and to off-site medical care providers and/or relating to class members' access to

1

1  medical or mental health care.

2  **INSTRUCTIONS**

3      1.      At each of the prisons to be INSPECTED, plaintiffs' experts request an

4  interview with the prison's Warden, Associate Warden for Health Care and the prison's

5  highest ranking medical and mental health officers, including, when applicable, the Mental

6  Health Program Manager, Chief Psychiatrist, and Chief Psychologist, preferably at the

7  beginning of the inspection. Plaintiffs' counsel anticipate that the initial interview will

8  take approximately 30-60 minutes.

9      2.      In order to help to maximize efficiency and to reduce the burden on staff on

10  the day(s) of each tour, please provide the following information prior to or at the start of

11  each tour:

12          a.      List of all class members currently housed in an MHCB (including

13  date of placement);

14          b.      List of all EOP prisoners currently housed in an ASU (including date

15  of placement);

16          c.      List of all CCCMS prisoners currently housed in an ASU (including

17  date of placement);

18          d.      List of all class members at the institution referred for and awaiting a

19  higher level of care placement or transfer to a higher level of care program (i.e., EOP,

20  EOP-SNY, EOP ASU Hub, MHCB, PSU, DSH-acute or ICF), the location where they are

21  currently housed, and the date the referral was made;

22          e.      List of overflow and alternative mental health housing locations at the

23  institution;

24          f.      List of all class members currently housed in an overflow or

25  alternative mental health housing location (i.e., alternative housing log);

26          g.      List (with locations) of all segregated housing units (ASU, SHU,

27  PSU) including overflow units; and

28          h.      Schedule of IDTT and other mental health treatment activities for the

[719966-2]

2

1    date(s) of the tour.

2        3.    During the INSPECTIONS, plaintiffs' counsel and plaintiffs' experts will

3    CONFER WITH the CDCR staff at the prison, including but not limited to the correctional

4    staff, administrative staff, and medical and mental health staff, regarding access of the

5    CLASS MEMBERS to mental health care, and as to issues of housing, programming,

6    exercise, and activities for CLASS MEMBERS.

7        4.    During the INSPECTIONS, plaintiffs' counsel and plaintiffs' experts may

8    CONFER WITH CLASS MEMBERS at the prison regarding their access to medical care

9    and to mental health care, and as to issues of housing, programming, exercise, and

10   activities for CLASS MEMBERS.

11       5.    If, during the INSPECTION, the plaintiffs' experts conclude that they

12   require a private setting to CONFER WITH certain CDCR staff or CLASS MEMBER(S),

13   defendants will provide an area where plaintiffs' experts can CONFER WITH the staff

14   member or CLASS MEMBER(S), in the presence of only plaintiffs', defendants' counsel,

15   and the Receiver's representative.

16       6.    During the INSPECTIONS, plaintiffs' counsel and plaintiffs' experts may

17   take photographs of certain areas of the prison relating to housing, programming, exercise,

18   and activities for CLASS MEMBERS, as well as office and treatment space used by staff

19   responsible for the delivery of care to CLASS MEMBERS. Plaintiffs' counsel and

20   plaintiffs' experts will accommodate reasonable security requests regarding the procedures

21   for the taking of photographs.

22       7.    During the INSPECTIONS at California State Prison-Corcoran, Kern Valley

23   State Prison, California State Prison-Lancaster, and San Quentin State Prison, plaintiffs'

24   counsel and plaintiffs' experts may review documents and activities relating to disciplinary

25   (RVR) proceedings, including for CLASS MEMBERS. For INSPECTIONS at these

26   institutions, plaintiffs' counsel and plaintiffs' experts may observe RVR hearings and

27   related proceedings, and may CONFER WITH RVR Hearing Officers and RVR

28   Coordinators. Please prepare to make available to plaintiffs' experts, prior to or at the start

[719966-2]

1    of these tours, the following, for the period from July 1, 2012 to the present:

2              a.    Schedule of RVR hearings at the institution for the date(s) of the tour;

3              b.    Logs of RVR and 115-MH RVR mental health assessment requests

4    (for review of sample);

5              c.    Logs of outcomes from RVRs where a mental health assessment was

6    requested (for review of sample);

7              d.    Full packets of RVRs involving CLASS MEMBERS (for review of

8    sample);

9              e.    Local Operating Procedures and Training Materials on RVR mental

10   health assessment procedures;

11             f.    Institutional Reports and monthly data on Rule Violation Reports

12   (RVRs), with breakdown by CCCMS, EOP, MHCB, and non-MHSDS prisoners; and

13             g.    Local Operating Procedures for the Security Housing Unit (SHU)

14   (CSP-Corcoran only).

15       8.    During the INSPECTIONS at California State Prison-Corcoran, Kern Valley

16   State Prison, California State Prison-Lancaster, and San Quentin State Prison, plaintiffs'

17   counsel and plaintiffs' experts may review documents and materials relating to use of

18   force. For INSPECTIONS at these institutions, plaintiffs' counsel and plaintiffs' experts

19   may CONFER WITH Use of Force Coordinators. Please prepare to make available to

20   plaintiffs' experts, prior to or at the start of these tours, the following, for the period from

21   July 1, 2012 to the present:

22             a.    Logs of Use of Force and Non-Use of Force Incidents (for review of

23   sample);

24             b.    Institutional Reports on Use of Force, with breakdown by CCCMS,

25   EOP, MHCB, and non-MHSDS prisoners;

26             c.    Use of Force Reports, including videos, involving Institution Review

27   Process (for review of sample);

28             d.    OIG Use of Force Reports; and

e.    Local Operating Procedures and training materials on cuffing, shackling, treatment modules, or holding cells.

9.    Plaintiffs' experts may review CLASS MEMBERS' unit health records and central files.

10.    As part of the INSPECTIONS, plaintiffs may request to conduct confidential interviews with five to ten CLASS MEMBERS and review their health records. If so, plaintiffs' counsel will notify defendants at least three days prior to each INSPECTION, and provide the names and CDCR numbers of each CLASS MEMBER at that time. These CLASS MEMBER interviews will be conducted only by plaintiffs' counsel and plaintiffs' experts.

## REQUESTS FOR INSPECTION

1.    On February 8, 2013, from 8:00 a.m. to approximately 5:00 p.m., plaintiffs' counsel and plaintiffs' experts request to INSPECT Central California Women's Facility (CCWF).

2.    On February 19, 2013, from 8:00 a.m. to approximately 5:00 p.m., plaintiffs' counsel and plaintiffs' experts request to INSPECT California State Prison-Corcoran (COR).

3.    On February 20, 2013, from 8:00 a.m. to approximately 5:00 p.m., plaintiffs' counsel and plaintiffs' experts request to INSPECT Kern Valley State Prison (KVSP).

4.    On February 21, 2013, from 8:00 a.m. to approximately 5:00 p.m., plaintiffs' counsel and plaintiffs' experts request to INSPECT California State Prison-Lancaster (LAC).

5.    On February 26, 2013, from 8:00 a.m. to approximately 5:00 p.m., plaintiffs' counsel and plaintiffs' experts request to INSPECT San Quentin State Prison (SQ).

/ / /

/ / /

/ / /

/ / /

1    6.    On February 26, 2013, from 8:00 a.m. to approximately 5:00 p.m., plaintiffs'

2    counsel and plaintiffs' experts request to INSPECT Deuel Vocational Institution (DVI).

3

4    DATED:  February 1, 2013                Respectfully submitted,

5                                            ROSEN BIEN GALVAN & GRUNFELD LLP

6                                            By: _Aaron J. Fischer_____

7                                                Aaron J. Fischer

8                                            Attorneys for Plaintiffs

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[719966-2]

6

PLAINTIFFS' SECOND REQUEST FOR INSPECTION

# EXHIBIT B



**ROSEN BIEN
GALVAN & GRUNFELD** LLP

315 Montgomery Street, Tenth Floor
San Francisco, California 94104-1823
T: (415) 433-6830 • F: (415) 433-7104
www.rbgg.com

Aaron J. Fischer
Email: afischer@rbgg.com

February 12, 2013

<u>VIA E-MAIL</u>

Debbie J. Vorous                          Heather McCray
Deputy Attorney General                   Attorney
State of California                       CDCR Office of Legal Affairs
Department of Justice
Debbie.Vorous@doj.ca.gov                  Heather.McCray@cdcr.ca.gov

     Re:    *Coleman v. Brown,* Gate Clearance and Tour Planning re: COR,  KVSP,
           LAC Expert Site Inspections

     <u>Our File No. 0489-3</u>

Dear Ms. Vorous and Ms. McCray:

       We are providing you gate clearance information for the attorneys and experts
who will be conducting prison inspections at CSP-Corcoran (COR), Kern Valley State
Prison (KVSP), and CSP-Lancaster (LAC).  Our experts, Dr. Craig Haney, Dr. Ed
Kaufman and Eldon Vail, will be touring one or more of the prisons referenced below.
The attorneys listed below will be accompanying our experts on their tours.  Participants
on the tours are as follows:

**Tuesday, February 19, 2013,**    **CSP-Corcoran,** Corcoran, CA
**starting at 8 a.m.**

                                Experts: Ed Kaufman, Craig Haney, Eldon Vail
                                Attorneys:  Steve Fama, Margot Mendelson, Jeff
                                Bornstein, Linda Usoz, Ranjini Acharya, Megan Cesare-
                                Eastman

**Wednesday, February 20,**    **Kern Valley State Prison,** Delano, CA
**2013, starting at 8 a.m.**

                                Expert: Eldon Vail
                                  Attorneys: Ranjini Acharya, Linda Usoz

[727168-2]

Debbie J. Vorous
Heather McCray
February 12, 2013
Page 2

**Friday, February 22, 2013,**      **CSP-Lancaster,** Lancaster, CA
**starting at 8 a.m.**

Expert: Eldon Vail
Attorneys: Jeff Bornstein, Megan Cesare-Eastman

As noted in our Second Request for Inspection (enclosed), "plaintiffs' experts request an interview with the prison's Warden, Associate Warden for Health Care and the prison's highest ranking medical and mental health officers, including, when applicable, the Mental Health Program Manager, Chief Psychiatrist, and Chief Psychologist, preferably at the beginning of the inspection." Plaintiffs' counsel anticipates that the initial interviews with staff will take approximately 30-60 minutes. It is very important that this meeting take place at the beginning of the inspection. Please let us know as soon as possible if this is a problem at any of the institutions that will be toured.

As also noted in our Second Request for Inspection, our experts will confer with CDCR staff during the tour. At all three institutions (COR, KVSP, LAC), Plaintiffs' counsel and plaintiffs' experts may review documents and activities relating to disciplinary (RVR) proceedings, including for class members, may observe RVR hearings and related proceedings, and may confer with RVR Hearing Officers and RVR Coordinators.

During the tours, our experts will speak to some *Coleman* class members privately, in confidential locations in the housing units whenever possible and otherwise *confidentially* near class members' housing locations. Such meetings will be part of tours of relevant units, including but not limited to CCCMS GP units, CCCMS ASUs, CCCMS SNY units, EOP GP units, EOP ASUs, EOP SNY units, SHUs, PSUs, MHCB units, OHUs, and unlicensed MHCBs.

If there are class members that our experts have identified for interviews prior to a tour, we will let you know the names and CDCR numbers of those individuals in a subsequent letter, so that their confidential interviews can be arranged in advance. Other class members to be interviewed confidentially may be identified in the course of the tours.

As counsel have previously discussed, please provide the following information prior to the tour: (1) a list of all class members currently housed in an MHCB, with housing location (including date of placement); (2) a list of all EOP prisoners currently housed in an ASU, with housing location (including date of placement); (3) a list of all

[727168-2]

Debbie J. Vorous
Heather McCray
February 12, 2013
Page 3

CCCMS prisoners currently housed in an ASU, with housing location (including date of placement); (4) a list of all class members at the institution referred for and awaiting a higher level of care placement or transfer to a higher level of care program (i.e., EOP, EOP-SNY, EOP ASU Hub, MHCB, PSU, DSH-acute or ICF), the location where they are currently housed, and the date the referral was made; (5) a list of overflow and alternative mental health housing locations at the institution; (6) a list of all class members currently housed in an overflow or alternative mental health housing location (*i.e.*, alternative housing log); (7) a list (with locations) of all segregated housing units (ASU, SHU, PSU) including overflow units; and (8) a schedule of IDTT and other mental health treatment activities for the date(s) of the tour.

Please also provide the following information (covering the period from July 1, 2012 to the present) prior to the tour: (1) a schedule of RVR hearings at the institution for the date(s) of the tour; (2) logs of RVR and 115-MH RVR mental health assessment requests (for review of sample); (3) logs of outcomes from RVRs where a mental health assessment was requested (for review of sample); (4) full packets of RVRs involving class members (for review of sample); (5) Local Operating Procedures and Training Materials on RVR mental health assessment procedures; (6) Institutional Reports and monthly data on Rule Violation Reports (RVRs), with breakdown by CCCMS, EOP, MHCB, and non-MHSDS prisoners; and (7) Local Operating Procedures for the Security Housing Unit (SHU) (COR only).

This information will help to maximize efficiency and to reduce the burden on staff on the day(s) of each tour. Please confirm as soon as possible whether and when Defendants will provide this information.

Our experts will also review class member records during the tour, including central files and eUHRs. This will also reduce the need for potentially large requests for production of medical and mental health records associated with the tour.

Finally, please confirm that you will have staff and camera(s) available during the tour to take photographs at the direction of each expert. As agreed by counsel, Plaintiffs will bring the following types of memory cards to be used for taking photographs (per memory card-type information provided by Defendants' counsel), and Defendants will provide the camera. *Please note that, because there will be three (3) experts on the COR inspection tour, each expert will have a memory card; the institution will need to provide three (3) cameras for use by each respective expert. .*

[727168-2]

Debbie J. Vorous
Heather McCray
February 12, 2013
Page 4

| **Institution** | **Memory Card** |
| --- | --- |
| COR (3 cameras required) | Secure Digital Memory Card (3) |
| KVSP | Secure Digital Memory Card |
| LAC | Secure Digital Memory Card |

*Please also note that the three (3) experts on the COR inspection tour may tour different parts of the institution (and thus will likely not remain together all day).*

The gate clearance information for our experts and attorneys is as follows:

*Experts:*

**Name:** Eldon Vail
**SSN:** 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
**Driver's License No.:** WA EW49309
**Date of Birth:** September 29, 1951

**Name:** Craig William Haney
**SSN:** 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
**CA Driver's License No.:** C2998768
**Date of Birth:** March 8, 1947

**Name:** Edward Kaufman
**SSN:** 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
**CA Driver's License No.:** N7691633
**Date of Birth:** March 13, 1936

*Attorneys:*

**Name:** Steve Fama
**California Bar No.:** 99641
**CA Driver's License No.:** N2409209
**Date of Birth:** August 19, 1956

**Name:** Margot Mendelson
**California Bar No.:** 268583
**CA Driver's License No.:** B8018059

[727168-2]

Debbie J. Vorous
Heather McCray
February 12, 2013
Page 5

**Date of Birth:**  August 6, 1981

**Name:** Megan Cesare-Eastman
**California Bar No.:** 253845
**CA Driver's License No.:** B6342909
**Date of Birth:** March 29, 1980

**Name:** Jeffrey Bornstein
**California Bar No.:** 99358
**CA Driver's License No.:** N0718556
**Date of Birth:** October 25, 1955

**Name:** Linda Usoz
**California Bar No.:** 133749
**CA Driver's License No.:** A1648508
**Date of Birth:** December 1, 1961

**Name:** Ranjini Acharya
**Social Security #:** 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
**CA Driver's License:** F5119766
**Date of Birth:** March 12, 1985

Thank you for your attention to this matter, and feel free to contact me if any questions arise.

Sincerely,

ROSEN BIEN
GALVAN & GRUNFELD LLP

*/s/ Aaron J. Fischer*

By:   Aaron J. Fischer

AJF:djt
Encl.: Plaintiffs' Second Request for Inspections
cc:    Michael Stone (via email)

[727168-2]

# EXHIBIT C



**ROSEN BIEN**
**GALVAN & GRUNFELD** LLP

315 Montgomery Street, Tenth Floor
San Francisco, California 94104-1823
T: (415) 433-6830 • F: (415) 433-7104
www.rbgg.com

Krista Stone-Manista
Email: kstone-manista@rbgg.com

February 20, 2013

VIA E-MAIL

Debbie J. Vorous                          Heather McCray
Deputy Attorney General                   Attorney
State of California                        CDCR Office of Legal Affairs
Department of Justice
Debbie.Vorous@doj.ca.gov                   Heather.McCray@cdcr.ca.gov

       Re:     *Coleman v. Brown,* Gate Clearance and Tour Planning re: SQ Expert Site
            Inspection

       Our File No. 0489-3

Dear Ms. Vorous and Ms. McCray:

     We are providing you gate clearance information for the attorneys and experts
who will be conducting a prison inspection at San Quentin State Prison (SQ).
Participants on the tour are as follows:

| | |
|---|---|
| **Tuesday, February 26, 2013, starting at 8 a.m.** | **San Quentin State Prison**, San Quentin, CA |
| | Experts: Jeanne Woodford, Pablo Stewart |
| | Attorneys: Krista Stone-Manista, Tom Nolan |

     As noted in our Second Request for Inspection (enclosed), "plaintiffs' experts
request an interview with the prison's Warden, Associate Warden for Health Care and the
prison's highest ranking medical and mental health officers, including, when applicable,
the Mental Health Program Manager, Chief Psychiatrist, and Chief Psychologist,
preferably at the beginning of the inspection." Plaintiffs' counsel anticipates that the
initial interviews with staff will take approximately 30-60 minutes. It is very important
that this meeting take place at the beginning of the inspection. Please let us know as soon
as possible if this is a problem at any of the institutions that will be toured.

Debbie J. Vorous
Heather McCray
February 20, 2013
Page 2

As also noted in our Second Request for Inspection, our experts will confer with CDCR staff during the tour. At San Quentin State Prison, Plaintiffs' counsel and plaintiffs' experts may review documents and activities relating to disciplinary (RVR) proceedings, including for class members, may observe RVR hearings and related proceedings, and may confer with RVR Hearing Officers and RVR Coordinators.

During the tour, our experts will speak to some *Coleman* class members privately, in confidential locations in the housing units whenever possible, and otherwise *confidentially* near class members' housing locations. Such meetings will be part of tour of relevant units, including but not limited to CCCMS GP units, CCCMS ASUs, CCCMS SNY units, EOP GP units, EOP ASUs, EOP SNY units, SHUs, PSUs, MHCB units, OHUs, and unlicensed MHCBs.

If there are class members that our experts have identified for interviews prior to a tour, we will let you know the names and CDCR numbers of those individuals in a subsequent letter, so that their confidential interviews can be arranged in advance. Other class members to be interviewed confidentially may be identified in the course of the tour.

As counsel have previously discussed, please provide the following information for each institution prior to the date of the scheduled tour: (1) a list of all class members currently housed in an MHCB, with housing location (including date of placement); (2) a list of all EOP prisoners currently housed in an ASU, with housing location (including date of placement); (3) a list of all CCCMS prisoners currently housed in an ASU, with housing location (including date of placement); (4) a list of all class members at the institution referred for and awaiting a higher level of care placement or transfer to a higher level of care program (i.e., EOP, EOP-SNY, EOP ASU Hub, MHCB, PSU, DSH-acute or ICF), the location where they are currently housed, and the date the referral was made; (5) a list of overflow and alternative mental health housing locations at the institution; (6) a list of all class members currently housed in an overflow or alternative mental health housing location (i.e., alternative housing log); (7) a list (with locations) of all segregated housing units (ASU, SHU, PSU) including overflow units; and (8) a schedule of IDTT and other mental health treatment activities for the date(s) of the tour.

Please also provide the following information (covering the period from July 1, 2012 to the present) prior to the San Quentin State Prison tour: (1) a schedule of RVR hearings at the institution for the date(s) of the tour; (2) logs of RVR and 115-MH RVR mental health assessment requests (for review of sample) for condemned prisoners only; (3) logs of outcomes from RVRs where a mental health assessment was requested for

Debbie J. Vorous
Heather McCray
February 20, 2013
Page 3

condemned prisoners only (for review of sample); (4) full packets of RVRs involving class members for condemned prisoners only (for review of sample); (5) Local Operating Procedures and Training Materials on RVR mental health assessment procedures; (6) Institutional Reports and monthly data on Rule Violation Reports (RVRs), with breakdown by CCCMS, EOP, MHCB, and non-MHSDS prisoners; (7) any Local Operating Procedures specific to the condemned population; and (8) any Local Operating Procedures related to the "Specialized Care for the Condemned" mental health program.

This information will help to maximize efficiency and to reduce the burden on staff on the day(s) of each tour. Please confirm as soon as possible whether and when Defendants will provide this information.

Our experts will also review class member records during the tour, including central files and eUHRs. This will also reduce the need for potentially large requests for production of medical and mental health records associated with the tour.

Finally, please confirm that you will have staff and camera(s) available during the tour to take photographs at the direction of each expert. As agreed by counsel, Plaintiffs will bring the following types of memory cards to be used for taking photographs (per memory card-type information provided by Defendants' counsel), and Defendants will provide the camera. *Please note that, because there will be two (2) experts on the SQ inspection tour, each expert will have a memory card; the institution will need to provide two (2) cameras for use by each respective expert.*

| Institution | Memory Card |
|---|---|
| SQ (2 cameras required) | Secure Digital Memory Card (2) |

*Please also note that the two (2) experts on the SQ inspection tour may tour different parts of the institution (and thus will likely not remain together all day).*

The gate clearance information for our experts and attorneys is as follows:

*Experts:*

**Name**: Pablo Stewart
**SSN**: 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
**Driver's License No.**: Hawaii 00339956
**Date of Birth**: September 24, 1951

Debbie J. Vorous
Heather McCray
February 20, 2013
Page 4

**Name**: Jeanne Woodford
**SSN**: 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
**CA Driver's License No.**: E0242973
**Date of Birth**: September 28, 1953

*Attorneys*

**Name**: Krista Stone-Manista
**California Bar No.**: 269083
**CA Driver's License No.**: F4862600
**Date of Birth**: September 20, 1979

**Name**: Thomas Nolan
**California Bar No.**: 169692
**CA Driver's License No.**: B3662613
**Date of Birth**: May 13, 1964

Thank you for your attention to this matter, and feel free to contact me if any questions arise.

Sincerely,

ROSEN BIEN
GALVAN & GRUNFELD LLP

*/s/ Krista Stone-Manista*

By:   Krista Stone-Manista

KSM:djt
Encl.: Plaintiffs' Second Request for Inspection
cc:    Michael Stone (via email)

734040-1

# EXHIBIT D

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| **RALPH COLEMAN, et al.,** | * | |
| | * | |
| **Plaintiffs,** | * | |
| | * | **No. CIV S-90-0520 LKK JFM P** |
| **v.** | * | |
| | * | |
| **EDMUND G. BROWN, JR., et al.,** | * | |
| | * | |
| **Defendants.** | * | |

### REPORT OF DEFENDANTS' EXPERT
### STEVE J. MARTIN

## I. INTRODUCTION

I was asked by defendants' counsel as an expert in the field of correctional administration to conduct a series of site inspections of California Department of Corrections and Rehabilitation (CDCR) facilities in order to render observations and opinions of the Mental Health Services Delivery System (MHSDS) pursuant to requirements of *Coleman v. Brown.* As one member of a four-person team to review the MHSDS, my assigned tasks related to the CDCR's administration of Staff Use of Force, and the Rules Violation Report (RVR) Mental Health Assessment Process. Specifically, I was asked to conduct a comprehensive analysis of CDCR's policies, procedures, and practices related to these two subject matter areas and to render observations and opinions as to whether those inmates subject to the *Coleman v. Brown* requirements are, as matter of pattern and practice, receiving those Federal rights secured or protected by the U. S. Constitution.

1

## II. QUALIFICATIONS OF THE SUBJECT MATTER EXPERT

I have been involved in three class action lawsuits as a plaintiffs' expert involving the treatment of offenders with mental impairments in the CDCR. *Gates v. Deukmejian* concerned the treatment of prisoners confined to the California Medical Facility at Vacaville; *Clark v. California*, involved the treatment of prisoners with mental retardation and developmental disabilities housed throughout facilities operated by the CDCR; and, *Madrid v. Gomez*, involved prisoners confined at the Pelican Bay State Prison, a supermax facility with a Security Housing Unit ("SHU") that housed offenders with mental illness.

My general qualifications as an expert in the field of corrections are set forth in my *Curriculum Vitae*, attached hereto as Exhibit A. I began my career as a correctional officer in 1972 at a maximum security prison operated by the Texas Department of Corrections ("TDC"). While employed with TDC as a correctional officer, I also worked at a prison for female felony offenders. I subsequently served as casework intern for mental health programs at the Federal Correctional Institution, Fort Worth, Texas. In 1981, I rejoined the TDC as an administrator of technical programs, and subsequently served as Legal Counsel, General Counsel, and Executive Assistant to the Director of the TDC. In my service with the TDC, I was involved in the development of policies and procedures in the areas of classification, administrative and punitive segregation, inmate disciplinary procedures, use of force, special needs prisoners (protective custody, mentally/physically impaired, etc.), and numerous other operational issues. Much of this work related to compliance with court orders in *Ruiz v Estelle*, a statewide prison conditions lawsuit brought by prisoners and the U. S. Department of Justice against the TDC. Pursuant to the court's orders to develop remedial plans for such issues as classification, administrative and

2

punitive segregation, and the treatment of special needs prisoners, I was a member of the state's negotiating team that, in coordination with the Special Master and plaintiffs' attorneys, developed these plans. My directorate, the General Counsel's Office, was responsible for assisting TDC personnel in the implementation of the remedial plans. The General Counsel's Office was directly charged with supervising the monitoring of compliance with those plans adopted pursuant to the orders in *Ruiz*. In my capacity as General Counsel, I was directly responsible for formulating and coordinating TDC's response to all compliance monitoring reports filed with the court by the Special Master. Among the plans adopted were comprehensive orders for the delivery of psychiatric services and the management of special needs prisoners incarcerated in TDC facilities. During the course of this work, I routinely conducted site inspections and conferred with facility managers regarding implementation of the remedial plans.

As an independent corrections consultant, I have worked as a corrections expert for the U. S. Department of Justice ("DOJ"), Civil Rights Division, on many occasions related to a wide variety of correctional management issues; by both defendants' and plaintiffs' counsel in numerous cases; by federal courts; and, by a variety of state and local governmental entities relating to corrections issues. I have made well over 700 site visits/inspections to prisons and jails in more than 35 states, Puerto Rico, Guam, Saipan, Jamaica, the American Virgin Islands and Northern Ireland.

In addition to these general qualifications, I have specific expertise with the correctional management of special needs offenders, i.e., offenders whose mental and/or physical conditions require special management and treatment by both security staff and professional health care providers. From 1981-1985, as a member of the TDC negotiating team to develop remedial

3

plans in the *Ruiz* litigation, I routinely worked with medical and mental health care experts on development of court approved plans on the management of special needs prisoners, including those who required segregated housing from the general population inmates. I was continuously involved in monitoring and implementation issues of these plans until my departure in July 1985. I also coordinated with the department training division on development of training programs specifically designed for correctional officers assigned to work with special needs offenders.

In 1988 I was appointed by the Texas governor to the Interagency Council on Mentally Retarded, Developmentally Disabled and Mentally Ill Offenders. The Council, created by an act of the Texas Legislature in 1987, was charged with determining the status of these special needs offenders in the state criminal justice system, identifying and coordinating services for these populations, evaluating existing programs, and developing new programs. The activities of the council were governed by the Chair and a seven-member Executive Committee, of which I was a member. I also chaired the Sub-committee on Legislative Issues and was a member of the Committee on Mentally Retarded Offenders. While on the council, I exercised direct oversight of a major study on special needs offenders most at risk to be victims and aggressors, and the situational factors that put these offenders most at-risk in institutional settings.

During the course of my consulting work the past twenty-five years, I have on many occasions been involved in working on remedial issues such as administrative/punitive segregation and inmate discipline procedures related to special management populations. I have served as a consultant, court expert and court monitor for numerous correctional facilities housing offenders with mental impairments in which security and treatment issues had to be coordinated/integrated for delivery of program services. I recently completed service as a

4

designated security expert in *Disability Advocates, Inc. v. New York State Office of Mental Health*, wherein I monitored select provisions of the Private Settlement Agreement entered into between the parties in 2007 relating to the management of mentally ill offenders in the New York State Department of Correctional Services. My monitoring duties included the evaluation of the department's inmate disciplinary process as applied to offenders with mental illness.

I am currently serving as a court monitor in a conditions case involving a state prison in Mississippi (Walnut Grove Correctional Facility), a state juvenile confinement system (Ohio Department of Youth Services), and one large metropolitan jail system (New York City). I am also under contract with the U. S. Department of Homeland Security, Civil Rights and Civil Liberties Division, to provide services as a corrections expert. I have served as a federal court/DOJ monitor and court appointed expert in cases involving five other state prison systems (New York, Mississippi, Arizona, Montana and Wyoming), and eleven metropolitan jails in New York (3), Maryland(2), Mississippi (2), Georgia(2), Florida, and South Carolina.

I have been qualified as an expert in the field of corrections and have testified as such on more than forty occasions, mostly in federal courts. I am co-author of <u>Texas Prisons: The Walls Came Tumbling Down</u> (Texas Monthly Press, 1987), and contributed to <u>Courts, Corrections and the Constitution</u> (Oxford University Press, 1990), and <u>Building Violence: How America's Rush to Incarcerate Creates More Violence</u> (Sage Publications, 2000). I have published articles on correctional subjects in the *Correctional Law Journal, Law and Society Review, Social Justice Quarterly, Pace Law Review, Texas Tech Law Review, Texas Lawyer*; and journals for the Center for Research in Crime & Justice, New York University School of Law, the National Conference on Crime & Delinquency, and the Texas Public Policy Foundation. I have also served on the

5

adjunct or visiting faculties of six universities, including the University of Texas School of Law.

I was also a Visiting Scholar at Queens University Belfast, Institute of Criminology and Criminal

Justice in the fall of 2000.

## III. TESTIMONY AT TRIAL, DEPOSITIONS, DECLARATIONS, AND AFFIDAVITS

A listing of cases in which I have testified at trial, or by deposition, declarations, or

affidavits within the preceding four years is attached hereto as Martin Exhibit B.

## IV. PUBLICATIONS AUTHORED BY EXPERT

See *Curriculum Vitae,* "Publications and Papers," attached hereto as Martin Exhibit A.

## V. COMPENSATION

I am being compensated at a rate of $150 per hour and $1200 per day for work performed

outside of Austin, Texas in excess of six hours.

## VI. DATA AND OTHER INFORMATION CONSIDERED IN FORMING OPINIONS

At the outset of my retention in this matter (September 2011), the Attorney General's

Office (AG) provided a series of background documents for my review. Among other things, the

AG's Office provided the following *Coleman v. Brown* case materials: June 6, 1994 Findings and

Recommendations; Opinion and Order, 912 F. Supp. 1282; and the December 11, 1995 Order of

Reference. In addition to these case materials, I received the MHSDS Program Guide (2009

Revision); a series of documents from the 22nd thru 25th Monitoring Reports of the Special

Master; and population data on the CDCR mental health population. After having reviewed

these materials, the expert review team had a one day working session at CDCR offices (October

2011), at which time we met with a large contingent of officials for a briefing on the MHSDS.

Through October 2011, I continued to receive, among other things, documents and

6

materials such as departmental use of force regulations, training materials related to the RVR

Mental Health Assessment process, facility management reports prepared by institutional staff as

part of the Special Master's monitoring inspections, and CDCR reports reflecting compliance

with the Program Guide.  On November 14-16, the expert review team after working on

development of assessment tools, materials, etc., made an initial site inspection of the CSP-

Sacramento in order help determine an efficient method of conducting a series of scheduled site

inspections for CDCR facilities (see below, Site Inspection Schedule).

     The expert review team maintained frequent consultation with AG and CDCR staff, and

engaged in continuous document review in preparation of the site inspections.  In late December

2011, the team, in consultation with AG and CDCR staff, set the following site inspection

schedule:

### *Coleman* **Consultant Tour Schedule**

| Date | Institution |
| --- | --- |
| February 27-28 | California Medical Facility |
| February 29-March 1 | CSP-Sacramento |
| March 26-27 | Centinela |
| March 28-29 | RJ Donovan |
| April 17-18 | Central California Women's Facility |
| April 19-20 | Corcoran |
| May 1-2 | California Institution for Men |
| May 3-4 | CSP – Los Angeles |
| May 21-22 | Salinas Valley State Prison |
| May 23-24 | San Quentin |

     Prior to each site inspection, I was provided a document packet of information produced

by each facility.  Among other things, the typical document packet included use of force incident

logs for the previous three months, a sample of use of force incident reports for the previous

7

three months, a sample of incident reports reflecting the institutional review process, total RVRs issued to CCCMS and EOP inmates for the previous three months, and summary data on inmates referred for Mental Health Assessments.  During the course of the site inspections, I used the pre-site inspection documents to guide my more detailed review of actual facility operations related to staff use of force and the RVR Mental Health process.

From February thru May 2012, I conducted site inspections at eight of the ten above listed facilities (document review only of CIM-Chino and CSP-Lancaster).  During the course of these site inspections and document reviews at the ten facilities, I completed the following tasks:

Staff Use of Force:
- reviewed approximately 220 use of force incident packets (November 2011-May 2012)
- interviewed Use of Force Coordinators at eight of the ten facilities
- attended IREC meetings at four facilities
- reviewed LOPs and training materials related to staff use of force
- reviewed OIG Use of Force Reports (2) which covered use of force incidents from September 2010 thru December 2011
- reviewed use of force system-wide CDCR data for 22nd thru 24th Monitoring Rounds

RVR Mental Health Assessment Process (RVR MH Process):
- reviewed approximatley 440 RVR packets from ten facilities
- interviewed RVR hearing officers, RVR Coordinators, and clinicians at eight of ten facilities
- reviewed all relevant LOPs and CDCR regulations related to the RVR MH Process
- reviewed CDCR and local memoranda related to the RVR MH Process
- reviewed facility training materials and training records related to RVR MH Process
- reviewed facility RVR reporting data
- reviewed 22nd thru 24th Monitor Reports related to RVR MH Process
- reviewed CDCR Program Guide, Attachment B-Inmate Disciplinary Process

After completing the site inspections at the ten aforementioned facilities, the expert review team, in consultation with the AG and CDCR staff, agreed to conduct additional site inspections at the following three facilities: Pelican Bay State Prison (PBSP), October 8-9, 2012; California Men's Colony, October 30-31, 2012; Substance Abuse Treatment Facility (SATF),

8

November 1-2, 2012.  During the course of these three site inspections, I completed the

following tasks:

     Staff Use of Force:
     • reviewed approximately 90 use of force incident packets (November 2011-October
     2012)
     • interviewed Use of Force Coordinators at all three facilities
     • reviewed LOPs and training materials related to staff use of force
     • reviewed OIG Use of Force Report, October 2012

     RVR Mental Health Assessment Process (RVR MH Process):
     • reviewed approximately 100 RVR packets
     • interviewed RVR hearing officers at all three facilities
     • reviewed facility RVR reporting data

     During the course of each site inspections, the team was given the opportunity to meet

and confer with facility managers to discuss our observations, findings, and best practice

recommendations.  On two occasions, I met with CDCR executive staff and was allowed to make

best practice recommendations based on my findings and observations.  The first meeting was on

August 21, 2012 with the CDCR Undersecretary, Terri McDonald.  The second meeting was on

November 2, 2012 with Michael Stainer, Deputy Director of Facility Operations.  During the

course of these meetings it was evident that these managers were very receptive to incorporating

my recommendations and had in fact already begun the process of evaluating the

recommendations in order to improve their system-wide administration of staff use of force.  For

example, the Deputy Director in September 2012 issued a directive to all Wardens requiring

them to initiate On the Job Training for facility commanders and managers in an effort to ensure

that personnel always consider alternatives to the use of chemical agents in controlled use of

force situations.  He also provided guidance on how facility personnel could improve the

administrative review of use of force incidents. The Deputy Director's action was entirely consistent with best practice recommendations I had made during the course of my site inspection work.

## VII. OPINIONS

A. CDCR has in place a comprehensive and extensive system to minimize and control unnecessary and excessive staff use of force on inmates confined to their institutions. Moreover, CDCR has in place heightened system-wide safeguards to ensure that inmates with mental illness confined to their institutions are not subjected to unnecessary and excessive staff use of force.

B. CDCR has in place a well-defined, valid, and predictable process to reasonably accommodate inmates whose mental status requires/merits consideration when adjudicating rule violation offenses.

## VIII. BASIS FOR OPINIONS

A. <u>Staff Use of Force</u>

Because of the threat of violence present in any correctional setting, and the fact that staff use of force routinely occurs in confinement settings, there must be a system/structure whereby correctional managers superintend staff use of force to minimize and control incidents of unnecessary and/or excessive use of force. The proper administration of staff use of force in a confinement setting is one of the most essential jobs of prison and jail administrators and officials. With proper measures in place, officials and administrators can, and routinely do, minimize and control incidents of unnecessary and/or excessive use of force.

Systematic administration of staff use of force in a confinement setting includes the following essential components: (a) adequate regulations governing staff use of force;

(b) effective training (both pre-service and in-service) for all correctional staff on the proper use

of force and the proper reporting on the use of force; (c) strict compliance with reporting

requirements when force is used; (d) effective supervisory review of all use of force reports; (e)

proper and complete investigation of use of force incidents when appropriate; and (f) meaningful

disciplinary measures imposed on those staff who violate the policies/procedures governing staff

use of force.

     Based on my review of the subject thirteen facilities, CDCR has fully incorporated these

essential components for the administration of staff use of force.  My assessment of the CDCR

facilities includes the following specific observations that support this finding:

    • The facilities are governed by both departmental and local use of force
regulations that are consistent with sound correctional practice and model policies
and procedures governing staff use of force.

    • The facilities are governed by both department and local use of force regulations
that establish heightened safeguards for inmates with mental illness.  Of the 300
plus use of force incident packets reviewed, approximately 70% involved inmates
on the mental health caseload.  I detected no discernable pattern or practice of
these inmates having been subjected to any force measures, punitive or otherwise,
that were inconsistent with CDCR departmental and local use of force regulations.
In those instances in which the heightened use of force safeguards were
appropriate due to an inmate's mental health status, those safeguards were
generally applied by CDCR personnel prior to and during the course of the
application of staff force.

    • Correctional Officers and Supervisors are subject to a comprehensive training
program for staff use of force.  When appropriate, individual officers are subject
to corrective training measures as a result of supervisory review of particular
incidents.

    • A review of over 300 use of force incident packets from the thirteen facilities
reflects adequately detailed and timely submitted officer reports that provide
sufficient information to conduct quality reviews.

• The supervisory review structure in place at all thirteen facilities is multi-tiered and comprehensive. All use of force incident packets are subject to an elaborate system that culminates in a final review by the Institution Executive Review Committe (IERC), comprised of the Warden or Chief Deputy Warden, at least one facility manager, the in-service training manager, a health care employee and the Use of Force Coordinator. Representatives of the Bureau of Independent Review (BIR) and Office of Inspector General (OIG) are also permitted to attend the IERC meetings at their discretion. Having attended a number of IERC meetings during the site inspections and having reviewed over 300 use of force incidents it is evident that the IERC steadfastly, substantively, and in a timely fashion, reviews all facility use of force incidents. Moreover, having interviewed Use of Force Coordinators at eleven of the thirteen facilities, I found them to be critical to the review process and very competent to carry out their assigned duties.

• The administrative review process is structured to make appropriate referrals for corrective measures and investigation of those incidents that may present evidence of violation of use of force regulations. A review of over 300 use of force incident packets indicated that facility reviewers, including the Use of Force Coordinators and the IERC, initiate corrective measures and also refer incidents for investigation.

Having conducted the foregoing analysis of staff use of force patterns and practices at the thirteen facilities, I found that CDCR personnel generally applied force in good-faith efforts to maintain or restore order. Moreover, I found no instances in which force was inflicted maliciously or sadistically for the very purpose of causing harm. I found no instances in which any inmate, regardless of his/her mental health care status, was subjected to use of tasers or 37mm guns.

Having served as a plaintiffs' expert in the *Madrid v. Gomez* litigation, I reviewed hundreds of use of force incidents that occurred at the PBSP between the years 1990-1992. I testified that the level of unnecessary and excessive force at the PBSP was strikingly out of line with sound correctional practice and that CDCR officials had failed to take steps to ensure that force was used appropriately. The difference between now and then is equally striking with the

CDCR having institutionalized a system that fully incorporates the necessary safeguards and regulatory measures that minimize and control unnecessary and excessive staff use of force. Moreover, it is a fully transparent system that is continuously subject to a variety of both internal and external oversight mechanisms that serve to keep the CDCR aligned with constantly evolving sound correctional practices. Having extensive experience with staff use of force in confinement operations across the U.S. over a period of many years, I found that the CDCR system currently in place to minimize and control unnecessary and excessive staff use of force is among the very best of any such systems with which I am familiar.

B. <u>RVR Mental Health Assessment Process</u>.

For inmates who are on the mental health caseload or otherwise diagnosed with mental impairments, the prison disciplinary process must reasonably accommodate and take into account the inmate's mental health when adjudicating rules violation reports. The process employed by the CDCR to reasonably accommodate these inmates is through a very structured set of rules centered around the completion of the Mental Health Assessment Request form (CDCR Form 115-MH). This form is completed by a clinical psychologist for all EOP inmates, all CCCMS inmates who receive serious RVRs, all CCCMS inmates who receive other RVRs and exhibit "bizarre, unusual, or uncharacteristic " behavior, and any other inmate who exhibits "bizarre, unusual, or uncharacteristic" behavior.

In completing the form, the clinician must evaluate and answer three threshold questions designed and intended to reasonably accommodate the inmate's mental health condition during the disciplinary hearing process. Once the clinician concludes that there are mental health factors

13

that appeared to contribute to the behavior that led to the RVR, and that such factors should be

considered in assessing the penalty, it is incumbent on the hearing officer to act in accord with

the clinician's evaluation.  In implementing this process, CDCR officials developed a very

comprehensive set of training materials and local staff have, and continue to be trained, utilizing

both the CDCR materials and their own facility specific operational plans.

Systematic administration of the RVR MH process includes the following essential

components: a) valid policies and procedures consistently applied to any inmate who

requires/merits a reasonable accommodation of a mental health condition during the disciplinary

hearing process; b) a well defined method of referral of those inmates who require/merit that

their condition be assessed prior to their hearing; c) completion of the assessment by a trained

clinician; d) appropriate consideration of the assessment by the hearing officer.

Based on my review of the subject thirteen facilities, CDCR has fully incorporated these

essential components for the administration of the RVR MH process.  My assessment of the

CDCR facilities includes the following specific observations that support this finding:

- Interviews with clinicians and hearing officers at eleven of the thirteen facilities indicate a working familiarity with the RVR MH process.

- A review of over 500 RVR packets from the thirteen facilities indicates that inmates who require/merit referral are consistently and timely referred for a MH assessment.

- A review of over 500 RVR packets from the thirteen facilities indicates that the MH assessment is consistently and timely conducted on all referred inmates.

- Of the 500 plus RVR packets reviewed, when the clinician determined that the inmate's mental disorder appeared to contribute to the behavior that led to the RVR, and that the hearing officer should consider mental health factors in assessing the penalty, the hearing officer acted in accord with the clinician's findings.  Most often in such cases, the hearing officer either clearly mitigated the

14

penalties, or modified them in a fashion to accommodate the clinician's findings.
It is noted that there were hearings in which notwithstanding the clinicians'
findings that mental health factors need not be considered in assessing the penalty,
hearing officers did nonetheless mitigate or modify the penalties.

Having conducted the foregoing analysis of the RVR MH patterns and practices at the

thirteen facilities, I found that CDCR personnel consistently, pursuant to a well-defined, valid,

and predictable process, reasonably accommodate inmates whose mental health status

requires/merits consideration when adjudicating rules violation reports.

Having served as a plaintiffs' expert in *Gates v. Deukmejian* (1988-1992) and *Clark v.*

*California* (1998)*, both of which involved the treatment of mentally impaired offenders, I had the

opportunity to examine CDCR's practices in order to determine whether their mental

impairments were appropriately considered by hearing officers and clinicians during the course

of the inmate disciplinary process.  I concluded in both cases that CDCR did not have in place a

system of safeguards to reasonably accommodate mentally impaired offenders charged with

disciplinary infractions.  It was my opinion that without such safeguards mentally impaired

offenders often did not understand the disciplinary proceedings and were sometimes found guilty

based on misunderstandings and their own confusion regarding prisons rules, while other

offenders were subject to severe punishments without regard, or consideration of, their mental

impairments.  The CDCR not only now has a system of reasonable accommodation but it is one

that is constantly evolving with refinements, vigorous training, and active oversight by both

facility and central office personnel.  Moreover, the RVR MH process currently in place at the

CDCR facilities compares very favorably with any similar processes with which I am familiar in other confinement systems.

Steve J. Martin          1/4/13
Steve J. Martin          Date

16

# EXHIBIT A

# CURRICULUM VITAE

| | |
|---|---|
| **NAME:** | Steve J. Martin |
| **ADDRESS:** | 8513 Adirondack Trail<br>Austin, Texas 78759 |
| **TELEPHONE:** | Office: (512)346-7607<br>E-mail: sjmart@sbcglobal.net |
| **DATE OF BIRTH:** | August 27, 1948 |

**EDUCATION:**

| | |
|---|---|
| 1973 | Bachelor of Science<br>Criminology and Corrections<br>Sam Houston State University<br>Huntsville, Texas |
| 1974 | Master of Arts<br>Correctional Administration<br>Sam Houston State University<br>Huntsville, Texas |
| 1981 | Juris Doctor<br>University of Tulsa<br>School of Law<br>Tulsa, Oklahoma<br>(Admitted to Texas State Bar-Card #13106550) |

**EMPLOYMENT:**

| | |
|---|---|
| 1987-Present | Corrections Consultant and Attorney |
| 1986-1987 | Gray & Becker, Attorneys at Law<br>General practice law firm engaged in litigation, administrative law, civil rights and legislative work. |
| 1985-1986 | Texas Office of the Attorney General, Special Assistant Attorney General. Worked as a consultant to the Chief of the Enforcement Division on litigation involving the Texas Department of Corrections. |

(Vita current as of September 2012)

**STEVE J. MARTIN VITA PAGE 2**
**Employment (continued)**

| | |
|---|---|
| 1981-1985 | Texas Department of Corrections, Executive Assistant to the Director (1984-85); General Counsel (1983-85); Legal Counsel (1981-83), Huntsville, Texas. |

As Legal Counsel, I served as the in-house attorney on class action litigation. In 1982, I was given responsibility for providing primary case administration of RUIZ v. ESTELLE (a class action conditions lawsuit in which virtually all operational aspects of the prison system were subject to court orders). From 1983-85, I served as the chief legal officer of the department. I also served as the liaison to the Office of the Special Master in RUIZ as well as liaison to the Office of the Attorney General and the Texas Legislature. From 1984 I also served as the Director's Executive Assistant, an operations position and the third ranking official in the department.

| | |
|---|---|
| 1980-1981 | Tulsa County District Attorney's Office<br>Assistant District Attorney/Legal Intern<br>Tulsa, Oklahoma |

As an Assistant District Attorney/Legal Intern, I provided representation to county jail officials on civil rights litigation filed by county jail prisoners. I also drafted a set of jail standards adopted by the district judges for operation of the jail.

| | |
|---|---|
| 1975-1980 | United States Probation and Parole Office<br>U.S. Probation and Parole Officer<br>McAllen, Texas (1975-77)<br>Tulsa, Oklahoma (1977-80) |

As a probation officer I supervised an average caseload of 50 to 75 probationers and parolees in addition to conducting pre-sentence and pre-trial diversion reports.

| | |
|---|---|
| 1974 | Federal Bureau of Prisons<br>Federal Corrections Institution Casework Intern<br>Fort Worth, Texas |

**STEVE J. MARTIN VITA PAGE 3**
**Employment (continued)**

|  |  |
|---|---|
|  | After my first year of graduate school, I worked as a summer Casework Intern for the Director of Mental Health Programs at the facility. |
| 1972-1973 | Texas Department of Corrections, Correctional Officer, Huntsville, Texas. |
|  | I was assigned to the Ellis Unit, a maximum security prison, and worked routine security posts such as cellblocks, control center, hall officer, and death row.  I also worked at the Goree Unit for female offenders. |

**REPRESENTATIVE PROFESSIONAL ACTIVITIES:**

| | |
|---|---|
| 2005-Present | Retained as an expert witness, T.R., P.R., and K.W.  v. SOUTH CAROLINA DEPARTMENT OF CORRECTIONS, class action litigation regarding the treatment of mentally ill inmates in the South Carolina Department of Corrections. |
| 2006-Present | Member of Editorial Board, *Correctional Law Reporter.* |
| 2007-Present | Retained as a subject matter expert by Federal Court Montior, S.H. v. STICKRATH, to examine/monitor staff use of force, restraints, seclusion, classification, youth disciplinary practices, and youth grievances at the Ohio Department of Youth Services. |
| 2007-Present | Retained by the U.S. Attorney's Office, New York City, to examine staff use of force at the Westchester County Jail, White Plains, New York. |
| 2008-Present | Retained as an expert witness, CARTY v DEJONGH, regarding conditions of confinement at facilities in St. Thomas, Virgin Islands. |
| 2010-Present | Retained as an expert witness, SHREVE v FRANKLIN COUNTY JAIL, regarding use of force. |
| 2010-Present | Retained as an expert witness, SOLIS v BACA, regarding strip searches at the Los Angeles County Jail. |

**STEVE J. MARTIN VITA PAGE 4**
**Representative Professional Activities (continued)**

| | |
|---|---|
| 2010-Present | Appointed as Court Monitor, REYNOLDS v SCHRIRO, to monitor use of restraints by New York City Department of Corrections at the Bellevue and Elmhurst hospitals. |
| 2011-Present | Retained by the Department of Homeland Security, Office for Civil Rights and Civil Liberties as penology expert. |
| 2011-Present | Retained by Department of Justice, State of California, as a consultant in the matter of COLEMAN V. BROWN. |
| 2011-Present | Appointed as Federal Court Monitor, D.D. v. WASHINGTON COUNTY, OHIO, to monitor Consent Decree regarding operations of the Washington County Juvenile Center. |
| 2011-Present | Retained as expert witness, BOOKER v. CITY AND COUNTY OF DENVER, regarding in-custody death related to staff use of force. |
| 2012-Present | Appointed as Federal Court Monitor, C.B. v. WALNUT GROVE CORRECTIONAL AUTHORITY, Mississippi, to monitor Consent Decree regarding conditions of confinement. |
| 2011-Present | Retained as an expert witness, RODRIGUEZ, et al. v. COUNTY OF LOS ANGELES, et al., regarding staff use of force. |
| 2012-Present | Retained as an expert witness, ROSAS v. BACA, class action lawsuit regarding staff use of force at the Los Angeles County jails. |
| 2011-2012 | Retained as an expert witness, KELLEY v ERICKSEN, regarding placement and conditions of confinement at the Green Bay Correctional Institution, Wisconsin. |
| 2011-2012 | Retained as an expert witness, BLAKE v MAYNARD, regarding excessive use of force claim at the Maryland Reception and Diagnostic Classification Center. |
| 2001-2005 | Appointed as a Court Expert, CARRUTHERS v. JENNE, to examine the conditions of confinement in Broward County Department of Detention, Ft. Lauderdale, Florida. |

**STEVE J. MARTIN VITA PAGE 5**
**Representative Professional Activities (continued)**

| | |
|---|---|
| 2003-2012 | Retained as an expert witness in DISABILITY ADVOCATES, INC. v. NEW YORK STATE OFFICE OF MENTAL HEALTH, et al., involving class action civil rights claims regarding the treatment of mentally ill inmates confined to disciplinary segregation, New York State Department of Corrections. |
| 2009-2012 | Retained as an expert witness, HICKS v HETZEL, regarding conditions of confinement at the Donaldson Correctional Facility, Bessemer, Alabama. |
| 2011 | Retained as an expert witness, HAMILTON v HALL, regarding correspondence policies of the Santa Rosa County Jail, Florida. |
| 2004-2011 | Appointed as Court Monitor, GATES v. BARBOUR, to monitor capacity orders for the Mississippi Department of Corrections. |
| 2005-2011 | Retained as an expert witness, FAIRLEY v. ANDREWS, regarding allegations of excessive force in the Cook County Jail, Chicago, Illinois. |
| 2006-2009 | Retained as an expert, DITTIMUS-BEY, et al. v. TAYLOR, et al., regarding conditions of confinement at the Camden County Jail, Camden, New Jersey. |
| 2007-2011 | Retained as an expert witness, VANDEHEY v. VALLARO, regarding use of force at the Garfield County Jail, Colorado. |
| 2008-2011 | Retained as expert witness, SILVERSTEIN v. BOP, regarding confinement at the United States Penitentiary Administrative Maximum ("ADX"), Florence, Colorado. |
| 2010 | Participated as *amici curiae*, SCHWARZENEGGER v. PLATA, regarding prison overcrowding in the California Department of Corrections. |
| 1993-2008 | United States Department of Justice, Civil Rights Division, Special Litigation Section, Corrections Expert. |

**STEVE J. MARTIN VITA PAGE 6**
**Representative Professional Activities (continued)**

| | |
|---|---|
| 2005-2008 | Retained as an expert, WILLIAMS v. TASER INTERNATIONAL, INC., regarding use of force at the Gwinnett County Detention Center, Georgia. |
| 2006-2008 | Retained as an expert witness, IKO v. GALLEY, regarding use of force at the Western Correctional Institution, Maryland Department of Public Safety and Correctional Service. |
| 2007 | Participated as *amici curiae*, IQBAL v. ASHCROFT, U. S. Court of Appeals, 2nd Cir., regarding treatment of detainees at the Metropolitan Detention Center, New York City. |
| 2008-2010 | Retained as an expert witness, JACKSON v. GERL, regarding use of force at the Wisconsin Secure Program Facility, Boscobel. |
| 2007-2009 | Retained as an expert witness, YOUNG v. COOK COUNTY, regarding the strip search policies of the Cook County Jail. |
| 2007-2008 | Retained as an expert witness, RUTLEDGE v. COOK COUNTY, regarding staff use of force at the Cook County Jail. |
| 2006-2008 | Retained as an expert witness, WILKERSON, et al. v. STALDER, regarding the placement of inmates in long-term segregation at the Louisiana State Penitentiary, Angola. |
| 2006-2007 | Retained as a consulting expert by the State Attorney, 13th Judicial Circuit, Tampa, Florida, In Re: In-Custody Death of Martin Lee Anderson while confined at the Bay County Boot Camp, Panama City, Florida. |
| 2004-2006 | Retained as an expert witness, INGLES v. TORO, class action use of force litigation involving the New York City Department of Corrections. |
| 2005-2006 | Retained as an expert witness, GILLIS v. LITSCHER, et al., regarding placement of an inmate in the Behavior Management Program, Wisconsin Secure Program Facility. |
| 2005 | Member, Travis County, Citizen Bond Advisory Committee; Chairman, Sub-Committee on Jails, Travis County, Texas. |

**STEVE J. MARTIN VITA PAGE 7**
**Representative Professional Activities (continued)**

| | |
|---|---|
| 2005 | Participated as *amici curiae*, WILKINSON v. AUSTIN, No. 04-495, Supreme Court of the United States; placement process for inmates in supermax prisons. |
| 2002-2005 | Appointed as Court Monitor, UNITED STATES v. NASSAU COUNTY, to monitor Settlement Agreement on use of force, Nassau County Corrections Center, Long Island, New York. |
| 2002-2005 | Retained as a consultant by the Georgia Attorney General's Office to review use of force practices at the Phillips State Prison, Buford, Georgia. |
| 2003-2004 | Retained as an expert witness, HARGETT v. ADAMS, class action litigation regarding conditions of confinement at the Joliet Treatment & Detention Facility, Illinois. |
| 2003-2004 | Retained as an expert witness, NEW TIMES v. ADAMS, class action litigation regarding censorship practices of the Colorado Department of Corrections. |
| 2002-2004 | Retained by the United States Attorney's Office, San Francisco, as an expert in UNITED STATES v. LEWIS; criminal civil rights prosecution for civil rights violations at the Pelican Bay State Prison. |
| 2003-2004 | Retained as a consultant by the Georgia Attorney General's Office in BURNS v. WETHERINGTON, regarding civil rights claim for failure to protect an inmate at the Lee Arrendale State Prison, Alto, Georgia. |
| 2004 | Retained as a consultant to the Ohio Department of Youth Services on staff use of force. |
| 2004 | Retained as a consultant by the Los Angeles County, Special Counsel, to assist in a report to the Los Angeles County Board of Supervisors on inmate violence in the Los Angeles County jails. |
| 2000-2002 | Appointed as Court Monitor, DOES v. STEWART, to monitor a system-wide class action remedial order on protective segregation for the Arizona Department of Corrections. |

**STEVE J. MARTIN VITA PAGE 8**
**Representative Professional Activities (continued)**

| | |
|---|---|
| 1998-2002 | Appointed as Court Monitor, SHEPPARD v. PHOENIX, to monitor a court order on use of force in the New York City Department of Corrections, Rikers Island. |
| 2001 | Retained by the United States Department of Justice and the United States Attorney's Office, Brooklyn, New York to assist in the development of remedial plan for Nassau County Sheriff's Department, Division of Correction, Use of Force. |
| 2001 | Retained by the United States Attorney's Office, San Francisco, as an expert in UNITED STATES v. POWERS and GARCIA, a criminal civil rights prosecution for civil rights violations at the Pelican Bay State Prison. |
| 2001 | Retained by the Los Angeles County Board of Supervisors to evaluate the in-custody restraint death of a detainee. |
| 2001 | Served as a Member of the research team of the Berkman Center, Harvard Law School, to evaluate rehabilitation programs in two Jamaican maximum security prisons. |
| 2000 | Participated as *amici curiae*, ATWATER v. CITY OF LAGO VISTA, No. 99-1408, Supreme Court of the United States, regarding custodial arrests for a non-jailable misdemeanor. |
| 1989-2000 | Retained as an expert witness and consultant, FELICIANO v. COLON, conditions litigation involving the Puerto Rico prison system. |
| 1999-2001 | Retained as an expert, MULDROW v. KEOHANE, litigation regarding the use of restraints, USP, Atlanta, Georgia. |
| 1999-2000 | Retained as an expert, SABATINO v. AMENN, class action litigation on the use of restraints, Erie County Prison, Pennsylvania. |
| 1999-2000 | Retained as a consultant to review Immigration and Naturalization Service Detention Standards, United States Department of Justice. |

**STEVE J. MARTIN VITA PAGE 9**
**Representative Professional Activities (continued)**

| | |
|---|---|
| 1996-1999 | Retained as an expert, LEE v. COUGHLIN, litigation involving punitive segregation at Sing Sing/Southport prisons, New York. |
| 1998-1999 | Retained as an expert, SPATES v. IOWA CORRECTIONAL INSTITUTION FOR WOMEN, conditions litigation. |
| 1992-1995 | Retained as an expert witness, MADRID v. GOMEZ, conditions litigation involving Pelican Bay State Prison, California. |
| 1996-1998 | Retained as an expert witness, COLLINS v. ALGARIN, litigation involving excessive force at Montgomery County Jail, Pennsylvania. |
| 1994-1998 | Retained as an expert witness, ALLEN v. CHISHOLM, excessive use of force litigation involving Montana State Prison. |
| 1995-1998 | Retained as an expert witness, BOLTON v. COOMBE, litigation involving double-celling practices at Woodbourne Correctional Facility, New York. |
| 1996-1998 | Retained as an expert witness, SOLOMON v. DELLANA, litigation involving excessive use of force at the Allegheny County Jail, Pittsburgh. |
| 1997-1998 | Retained as an expert witness, BLACKMON v. McCOTTER, litigation involving stabbing death of inmate at the Central Utah Correctional Facility. |
| 1997-1998 | Retained as an expert witness, CLARK v. CALIFORNIA, litigation involving treatment of developmentally disabled prisoners in the California Department of Corrections. |
| 1997-1998 | Retained as an expert witness, TATE v. GOMEZ, litigation involving lethal force at the Corcoran State Prison, California. |
| 1994-1995 | Retained as an expert witness by the New York Attorney General's Office, BIN-WAHAD v. COUGHLIN, litigation involving claim of retaliatory transfer in New York Department of Corrections. |

**STEVE J. MARTIN VITA PAGE 10**
**Representative Professional Activities (continued)**

| | |
|---|---|
| 1993-1995 | Retained as a consultant to the Texas Comptroller of Public Accounts, Performance Review of the Texas Department of Criminal Justice. |
| 1991-1993 | Gubernatorial appointee to the Texas Punishment Standards Commission; Vice-Chair, Policy Development Committee. |
| 1989-1993 | Retained as a consultant and expert witness on prison and jail litigation by the Texas Attorney General's Office. |
| 1992-1993 | Retained as a consultant, BENJAMIN v. ABATE. Principal author of Reports of Plaintiffs' Expert Consultants on Conditions in the New York City Jails, Legal Aid Society, New York. |
| 1991-1992 | Staff Director, Study Committee on Judicial Education, Texas Supreme Court. Principal investigator for the Report on Judicial and Court Personnel Education Programs. |
| 1990-1992 | Retained as an expert witness and consultant, JENSEN v. CLARKE, crowding litigation involving Nebraska State Prison, Lincoln, Nebraska. |
| 1989-1993 | Retained as a consultant on litigation involving numerous county jails including Detroit, Seattle, Houston, Austin and San Antonio. |
| 1989-1991 | Assisted Texas Legislature on the development of criminal justice legislation, 71st and 72nd Legislatures. |
| 1988-1989 | Gubernatorial Appointee to Texas Council on Offenders with Mental Impairments; Chairman, Legislative Subcommittee. |
| 1986-1990 | Retained by Corrections Corporation of America, Nashville, Tennessee, to assist in the development and operation of private prison facilities in Texas. |
| 1988-1992 | Employed as expert witness by Prison Law Office, San Quentin on litigation involving Vacaville, San Quentin and Tracy prisons. |

**STEVE J. MARTIN VITA PAGE 11**
**Representative Professional Activities (continued)**

| | |
|---|---|
| 1987-1993 | Employed as expert witness by Prisoners Legal Services of New York on litigation involving Attica and Elmira prisons. |
| 1987-1989 | Employed as expert witness by NAACP LDF, New York on death row conditions litigation in Missouri and Arkansas. |

**TEACHING/LECTURES/SYMPOSIUMS:**

| | |
|---|---|
| 2012 | Panelist, *Dialogues on Detention*, Austin, Texas, September 12, 2012, Human Rights First. |
| 2012 | Panelist, *Next Steps in ICE Detention Reform: A Dialogue Among Experts in the Criminal Justice/Corrections and Immigration Detention Systems*, Washington, D.C., Human Rights First, January 30, 2012. |
| 2011 | Panelist, National Institute of Corrections Public Hearings, *Shifting the Focus to Reshape Our Thinking Toward Performance Based Outcomes*, Stanford University, November 2-3, 2011. |
| 2010 | Participant, Department of Homeland Security, "*Roundtable on Mental Health and Immigration Enforcement*," Washington, DC, September 24, 2010. |
| 2009 | Speaker, Texas Criminal Defense Lawyers Association, Seminar, Post Conviction Law and Criminal Administrative Remedies, *Status of Prisoners' Rights in Today's Criminal Justice Arena*, January 9, 2009. |
| 2005 | Testified before Commission on Safety & Abuse in America's Prisons on Staff Use of Force in United States Confinement Settings; April 20, 2005, Tampa, Florida. |
| 2003 | Symposium on Prison Reform, Pace Law School, Judicial Institute and the Open Society; moderator and presenter for Effective Post-PLRA Settlement Models, October 2003. |
| 2001 | Presenter, Southern Methodist University School of Law, Colloquium on the Judicial Work of Judge William Wayne Justice, May 2001. |

**STEVE J. MARTIN VITA PAGE 12**
**Teaching/Lectures/Symposiums (continued)**

| | |
|---|---|
| 2000 | Guest Lecturer, University of Minnesota Law School, Institute of Criminal Justice; "Responding to the Crowded Jail, Legal Issues." |
| 1999 | Visiting Scholar, Institute of Criminology and School of Law, Queen's University, Belfast, Ireland; Seminar: "Punishment as Big Business: The Iron Triangle," October 1999. |
| 1999 | Guest Lecturer, New York University School of Law. |
| 1995 | Guest Lecturer, National Association of Attorneys General Annual Conference; "The Role of Experts in Prison Litigation." |
| 1995 | Testified before the United States Senate Judiciary Committee as a panel member on the Prison Litigation Reform Act. |
| 1990 | Southwest Texas State University, San Marcos, Texas. Adjunct faculty - taught corrections course. |
| 1989 | St. Edwards University, Austin, Texas. Adjunct faculty-taught corrections course. |
| 1988 | Technical Assistance Consultant, National Institute of Corrections Boulder, Colorado. |
| 1986 | The University of Texas School of Law, Austin, Texas. Visiting faculty-taught seminar on institutional reform litigation. |
| 1979-1981 | Langston University, Tulsa, Oklahoma. Adjunct faculty-taught probation and parole, corrections, and criminology courses. |
| 1976-1977 | Pan American University, Edinburg, Texas. Adjunct faculty - taught corrections courses. |
| 1973-1974 | Sam Houston State University, Huntsville, Texas. Graduate Fellow - taught course in social problems. |

**STEVE J. MARTIN VITA PAGE 13**

**PUBLICATIONS/PAPERS:**

Kercher, Glen A. And Steve J. Martin, "*Severity of Correctional Officer Behavior in the Prison Environment,*" presented before the Texas Academy of Science, Huntsville, Texas, 1975.

Martin, Steve J., and Sheldon Ekland-Olson, <u>Texas Prisons: The Walls Came Tumbling Down</u>, Austin: Texas Monthly Press, 1987.

Ekland-Olson, Sheldon and Steve J. Martin, "*Organizational Compliance with Court-Ordered Reform,*" 22 Law and Society Review 359, 1988.

Martin, Steve J., "*Prisoners' Rights",* Texas Tech Law Review, Volume 20, Symposium 1989, Number 2.

Martin, Steve J., "*Texas Prisons: A Brooding Crisis Behind Bars*", Texas Lawyer, March 13, 1989.

Martin, Steve J., and Sheldon Ekland-Olson, "*Ruiz, A Struggle Over Legitimacy*", <u>Courts, Corrections and the Constitution: The Impact of Judicial Intervention on Prisons and Jails</u>, edited by John J. DiIulio, Jr., Oxford University Press, 1990.

Martin, Steve J., "*The Celling of Texas*", Texas Observer, January 11, 1991.

Martin, Steve J., "*An End to Ruiz: Shifting the Debate from Rhetoric to Reason*", Texas Public Policy Foundation, April 1995.

Grant, Darlene and Steve Martin, "*Should Prison Reform Litigation Be Curtailed?*" National Council on Crime and Delinquency *Focus*, May 1996.

Martin, Steve J., "Prison Reform Litigation: Shifting the Debate From Rhetoric to Reason," Alan Fortunoff Criminal Justice Colloquium, Center for Research in Crime and Justice of New York University School of Law, February 26, 1996.

Martin, Steve J., Perspectives on Justice, "*Inmates Haven't Changed, Prisons Have,*" Los Angeles Times, July 1998.

Martin, Steve J., "*Sanctioned Violence in American Prisons,*" <u>Building Violence: How America's Rush to Incarcerate Creates More Violence</u>, edited by John May, Sage Publications, Inc., January 2000.

Martin, Steve J., "*Corrections in the New Millennium: The Mean Season,*" Voice for the Defense, Texas Criminal Defense Lawyers Association, Vol.29 Number 2, March 2000.

**STEVE J. MARTIN VITA PAGE 14**
**Publications/Papers (continued)**

Martin, Steve J., "Introduction," *Frontiers of Justice, Volume 3: The Crime Zone*, Biddle Publishing Co., Brunswick, Maine, March 2000.

Martin, Steve J., Book Review-Going Up the River: Travels in a Prison Nation, Punishment & Society, *International Journal of Penology*," Vol. 4, Number 1, January 2002.

Martin, Steve J., Book Review-Punishment & Democracy: Three Strikes and You're Out in California, *British Journal of Criminology*, Vol.43, Number 1 Winter 2003.

Martin, Steve J.,  Book Review-Maconochie's Gentlemen: The Story of Norfolk Island and the Roots of Prison Reform, *British Journal of Criminology*, Vol.43, Number 4 Autumn 2003.

Hill, Debbie, Larry Hammond, Bruce Skolnik, Steve J. Martin and Donna Clement; "*Effective Post-PLRA Settlement Models: A Case Study of Arizona's Protective Segregation Lawsuit*," 24 Pace Law Review 743 (Spring 2004).

Martin, Steve J., Staff *Use of Force in U.S. Confinement Settings*; Commission on Safety and Abuse in America's Prisons, 601 Thirteenth St., N.W., Washington, D. C., *Washington Journal of Law & Policy*, Volume 22 (2006 )

Martin, Steve J., *Staff Use of Force in U. S. Confinement Settings: Lawful Control Versus Corporal Punishment*; Social Justice Quarterly, Vol. 33, No.4 (2007).

Martin, Steve J., *Effective Expert Witnessing in Corrections Litigation: Rules, Relevance & Reliability*, Correctional Law Reporter; Volume XX No.1, June/July 2008.

# EXHIBIT B

STEVE J. MARTIN--TESTIMONY/DEPOSITION/AFFIDAVIT
October 2008 thru October 2012

1. M.P.et al., v TEXAS YOUTH COMMISSION, District Court of Travis County, 53rd Judicial District; retained by Richard Lavallo, Advocacy, Inc., 7800 Shoal Creek, Suite 171-E, Austin, TX 78757; testified at hearing regarding use of force.

2. YOUNG v COUNTY OF COOK, et al., USDC ND/ILLINOIS; retained by Mike Kanovitz, Loevy & Loevy, Chicago; testified by deposition regarding strip searches at the Cook County Jail.

3. RUTLEDGE & MEJIA v COUNTY OF COOK, et al., USDC ND/ILLINOIS; retained by Matthew O. Skoglund, Sonnenschein, Chicago; testified by deposition and trial regarding use of force at the Cook County Jail.

4. STATE OF NEVADA v TAMIR HAMILTON, Washoe County, Nevada, CR06-2500; retained by Washoe County Public Defender; testified during punishment phase of death penalty trial.

5. WELLS v STATE OF LOUISIANA, et al., 6th Judicial District Court, Parish of Madison, 96-127;retained by Tony Bruscato, PO Box 2374, Monroe, LA 71207; testified by deposition regarding death of inmate confined at the Madison Parish Detention Center, Tallulah, LA.

6. WILLIAMS v GWINNETT COUNTY, et al., USDC ND/Georgia, 1:06-CV-0051-RWS; retained by Joan Crumpler, Morgan & Morgan, 191 Peachtree St., Atlanata, GA 30303; testified by deposition regarding death of inmate confined at the Gwinnett County Detention Center.

7. FAIRLEY & GACKOWSKI v ANDREWS, et al., USDC ND/ILLINOIS, 03-C 5207; retained by Mary Rowland, Gessler Huges Socol, 70 West Madison St., Chicago, Illinois 60602; testified by deposition re deprivation of 1st Amendment rights under Sectin 1983.

8. PAULIN v ZALUCKY, et al., USDC SD/NY, 01 Civ. 2686; retained by Amy Howlett, Sullivan & Cromwell, 125 Broad St., NY, NY 10004; testified by deposition re excessive use of force at the Fishkill Correctional Institution.

9. VERGES v STATE OF NEW YORK, COURT OF CLAIMS, 107755, Syracuse; retained by Joan Magoolaghan, Koob & Magoolaghan, 221 Devoe Ave., Yonkers, NY 10705; testified at trial re protection from harm at the Cape Vincent Correctional Facility.

1

10. LEORNARD v STATE OF LOUISIANA, et al., USDC WD/LA, Shreveport Div., No.07-cv-0813; retained by Katie Swchartzmann, P.O. Box 56157, New Orleans, LA 70156; testified by deposition re publication censorship at the David Wade Correctional Center, Louisiana Department of Public Safety and Corrections.

11. ESTATE OF ILETA ZANK v COUNTY OF EATON, et al., USDC MICHIGAN, Southern Division; retained by Neil Wilensky, 6500 Centurion Dr., Lansing, MI 48917; testified by deposition re jail suicide.

12. CARTY v GOVERNOR DEJONGH, USDC VIRGIN ISLANDS, St. Thomas; retained by Eric Balaban, National Prison Project, 915 15th St., NW, Washing, DC 20005; testified at trial re conditions of confinement at St. Thomas prisons.

13. HICKS v HETZEL, USDC MD/ALABAMA, retained by Sarah Geraghty, Southern Center for Human Rights, 83 Poplar St., Atlanta, Georgia, 30303; testified by deposition re conditions of confinement at the Donaldson Correctional Facility.

14. SIVERSTEIN v FEDERAL BUREAU OF PRISONS, USDC COLORADO, retained by Laura Rovner, Civil Rights Clinic, University of Denver, 2255 E. Evans Ave., Denver, CO. 80208; testified by deposition re confinement of prisoner in extreme isolation at Administrative Maximum Facility ("ADX"), Florence, CO.

15. KALM v KEARNEY, Superior Court of the State of Delaware In and for Kent County, retained by Stephen Hampton, Grady & Hampton, 6 North Bradford, Dover, Delaware 19904; testified by deposition re use of force at the Sussex Correctional Institution.

16. TORRES v LUCIO, USDC SD TEXAS, retained by Alberto L. Guerrero, Reed, McLain & Guerrero, 3900 North 10th Street, Suite 850, McAllen, Texas 78501; testified by deposition re in-custody death at the Cameron County Jail, Brownsville, Texas.

17. ROBINSON v HORN, USDC WD/PENN, retained by Mary Walsh, Community Justice Project, 429 Forbes Ave., Pittsburgh, PA; testified at trial re restraints policies the State Correctional Institution, Pittsburgh.

18. SOLIS v BACA, USDC CD/CALIFORNIA, retained by Barry Litt, Litt, Estuar, Harrison & Kitson, 1055 Wilshire Bldv., Los Angeles re body cavity searches at the Los Angeles County Jails; testified by deposition.

2

19. DUNLAP v ZAVARAS, USDC COLORADO, retained by Gail K. Johnson, 1401 Walnut Street, Suite 201, Boulder, CO 80302, re outdoor recreation at the Colorado State Penitentiary for death row inmate; testified by deposition.

20. SHREVE v REED, USDC SD/OHIO, retained by Jane Perry, Ohio Legal Rights Services, 50 W. Broad St., Columbus, Ohio 43215, re use of force at Franklin County Jail, Columbus; testified by deposition.

21. ANDERSON v COLORADO DOC, USDC COLORADO, retained by Brittany Glidden, University of Denver Sturm College of Law, 2255 E. Evans Avenue, Denver, CO 80208, re administrative segregation at the Colorado State Penitentiary; testified by deposition and at trial.

22. BARKER v WARDEN KENNETH JONES, USDC MD/ALABAMA, retained by Sarah Geraghty, Southern Law Poverty Center, 83 Poplar St.,N.W., Atlanta, GA 30303-2122, re excessive use of force claim at the Bullock Correctional Facility; testified by deposition.

23. HAMILTON v HALL, USDC ND/FL, No:3:10-CV-355 MCR/EMT, retained by Benjamin James Stevenson, P.O.Box 12723, Pensacola, FL 32591-2723, re correspondence rules for Sanata Rosa County Jail; testified by deposition.

24. T.R.,P.R.,K.W., & A.M. v SOUTH CAROLINA DEPARTMENT OF CORRCTIONS, 5TH Judicial District, County of Richland, Civil Action No. 2005-CP-40-02925; retained by Nelson Mullins, 1320 Main St.-17th Fl., Columbia, SC 29201; conditions of confinement and management of mentally ill inmates confined in the SDOC; testified by deposition and at trial.

25. BLAKE v MAYNARD, USDC District of Maryland, No. AW-09-2367; retained by Sarah Rice, Assistant Attorney General, Office of the Attorney General, 200 St. Paul Place, Baltimore, MD 21202; re excessive use of force claim at the Maryland Reception Diagnostic Classification Center; testified by deposition; testified by deposition.

26. KELLEY v ERICKSON, USDC ED/WI, NO. 09-C-0096; retained by Jennifer H. Jin, Whyte Hirschboeck Dudek, 555 East Wells St., Milwaukee, WI 53202; re manner in which officials placed plaintiff on a Behavior Action Plan and the conditions of confinement at the Green Bay Correctional Institution while on the plan; testified by deposition.

27. BOOKER v DENVER, et al., USDC COLORADO, NO. 11-cv-00645-WYD-KMT; retained by Darold Killmer, 1543 Champa St., Suite 400, Denver, CO. 80202; staff use of force at the Denver Detention Center; testified by deposition.

28. MOSLEY, et al. V. FRANKLIN COUNTY, OHIO, USDC SD/OHIO, NO. 2:11-cv-415; retained by Ohio Legal Rights Services, Columbus, Ohio; staff use of force at the Franklin County Correctional Centers; testified by deposition.

4

# EXHIBIT E

**Aaron Fischer**

| | |
|---|---|
| **From:** | Aaron Fischer |
| **Sent:** | Monday, February 25, 2013 7:09 PM |
| **To:** | 'William Downer <William.Downer@doj.ca.gov> (William.Downer@doj.ca.gov)' |
| **Cc:** | Debbie Vorous; Coleman Team - RBG Only; 'Megan F. Cesare-Eastman'; 'Bornstein, Jeffrey L. (Jeffrey.Bornstein@klgates.com) (Jeffrey.Bornstein@klgates.com)' |
| **Subject:** | Outstanding COR, KVSP, LAC Tour Document Requests [IWOV-DMS.FID25914] |

Sonny,

Below are the outstanding document requests from the COR (2/19), KVSP (2/20), and LAC (2/22) tours.  I have grouped documents as follows:

**Group A** – RVR materials identified in Request for Inspection (at 3-4), with the associated letter item (a., b., c., etc.) from the Request for Inspection.  Plaintiffs requested on February 1 that these documents be provided prior to or at the start of the respective tour.  (Requests cover the period July 1, 2012 to present.)

**Group B** – Use of Force materials identified in Request for Inspection (at 4-5), with the associated letter item (a., b., c., etc.) from the Request for Inspection.  Plaintiffs requested on February 1 that these documents be provided prior to or at the start of each respective tour. (Requests cover the period July 1, 2012 to present.)

**Group C** – Other documents requested by Plaintiffs' expert in the course of each respective tour.

Please provide all documents as soon as possible, and no later than Friday, March 1.

## COR
**Group A – RVR Requests**
b.      Logs of RVR and 115-MH RVR mental health assessment requests
d.      Full packets of RVRs involving CLASS MEMBERS
e.      Local Operating Procedures and Training Materials on RVR mental health assessment procedures
f.       Institutional Reports and monthly data on Rule Violation Reports (RVRs), with breakdown by CCCMS, EOP, MHCB, and non-MHSDS prisoners
g.      Local Operating Procedures for the Security Housing Unit (SU)

**Group B – Use of Force Document Requests**
a.      Logs of Use of Force and Non-Use of Force Incidents
b.      Institutional Reports on Use of Force, with breakdown by CCCMS, EOP, MHCB, and non-MHSDS prisoners
c.      Use of Force Reports, including videos, involving Institution Review Process
d.      OIG Use of Force Reports
e.      Local Operating Procedures and training materials on cuffing, shackling, treatment modules, or holding cells.

**Group C – Other Documents**
   1.   ASU 30-minute welfare tracking sheets for Building 3A03 from Feb. 8, 2013 to Feb. 18, 2013;
   2.   114-A Records for the following class members:
          a)   Cato, D-32008
          b)   Kase, H-72884
          c)   Gordon, F-74009
          d)   Frias, J-50361
   3.   114-A records for cells 131, 132, and 133 in Building 3A03, from Jan. 1, 2013 to Feb. 19, 2013;
   4.   128-G records for Frierson, C-24469;
   5.   CTC/MHCB Unit C Patient Report, Feb. 19, 2013;
   6.   List of psychotropic drugs prescribed as of Feb. 19, 2013 and number of patients receiving each;

1

7.    All RVR materials, including mental health assessments and appeals, for MHSDS inmates, from July 1, 2012 to present;

8.    All Use of Force packets for incidents occurring against MHSDS inmates, including videos, from July 1, 2012 to present; All materials relating to the investigation of Use of Force incidents occurring against MHSDS inmates, including videos, from July 1, 2012 to present.

## KVSP
### Group A – RVR Requests
b.    Logs of RVR and 115-MH RVR mental health assessment requests
d.    Full packets of RVRs involving CLASS MEMBERS
e.    Local Operating Procedures and Training Materials on RVR mental health assessment procedures
f.    Institutional Reports and monthly data on Rule Violation Reports (RVRs), with breakdown by CCCMS, EOP, MHCB, and non-MHSDS prisoners

### Group B – Use of Force Document Requests
a.    Logs of Use of Force and Non-Use of Force Incidents
b.    Institutional Reports on Use of Force, with breakdown by CCCMS, EOP, MHCB, and non-MHSDS prisoners
c.    Use of Force Reports, including videos, involving Institution Review Process
d.    OIG Use of Force Reports
e.    Local Operating Procedures and training materials on cuffing, shackling, treatment modules, or holding cells.

### Group C – Other Documents
1.    Central file records for Cauthen, V92805, from Feb. 1, 2012 to present;
2.    All RVR-related documents for Cauthen, V92805, from Feb. 1, 2012 to present;
3.    All Use of Force incident reports for Cauthen, V92805, from Feb. 1, 2012 to present.

## LAC
### Group A – RVR Requests
b.    Logs of RVR and 115-MH RVR mental health assessment requests
d.    Full packets of RVRs involving CLASS MEMBERS
f.    Institutional Reports and monthly data on Rule Violation Reports (RVRs), with breakdown by CCCMS, EOP, MHCB, and non-MHSDS prisoners

### Group B – Use of Force Document Requests
a.    Logs of Use of Force and Non-Use of Force Incidents
b.    Institutional Reports on Use of Force, with breakdown by CCCMS, EOP, MHCB, and non-MHSDS prisoners
c.    Use of Force Reports, including videos, involving Institution Review Process
d.    OIG Use of Force Reports

### Group C – Other Documents
1.    A log listing each time Officer Solórzano used the block gun from January 1, 2012 to present;
2.    A log listing each time the block gun has been used in unit D2 since Officer Solórzano left on medical leave;
3.    A log listing each time the block gun has been used in each EOP housing unit from January 1, 2012 to present;
4.    All RVR incident reports from Units A4 and A5 involving MHSDS inmates from November 1, 2012 to present

Aaron J. Fischer, Esq.
ROSEN BIEN GALVAN & GRUNFELD LLP
315 Montgomery Street, Tenth Floor
San Francisco, CA 94104
Tel: (415) 433-6830
Fax: (415) 433-7104
afischer@rbgg.com

www.rbgg.com

CONFIDENTIALITY NOTICE
The information contained in this e-mail message may be privileged, confidential and protected from disclosure. If you are not the intended recipient, any dissemination, distribution or copying is strictly prohibited. If you think that you have received this e-mail message in error, please e-mail the sender at rbgg@rbgg.com.

IRS CIRCULAR 230 NOTICE:  As required by United States Treasury Regulations, you should be aware that this communication is not intended by the sender to be used, and it cannot be used, for the purpose of avoiding penalties under United States federal tax laws.

3

# EXHIBIT F

## Aaron Fischer

| | |
|---|---|
| **From:** | Aaron Fischer |
| **Sent:** | Wednesday, February 27, 2013 12:56 PM |
| **To:** | 'William Downer' |
| **Cc:** | Jay Russell; Debbie Vorous; 'Patrick McKinney'; 'Jonathan Wolff'; Coleman Team - RBG Only; 'Megan F. Cesare-Eastman'; 'Bornstein, Jeffrey L. (Jeffrey.Bornstein@klgates.com) (Jeffrey.Bornstein@klgates.com)'; 'Acharya, Ranjini (Ranjini.Acharya@klgates.com)' |
| **Subject:** | RE: Meet and confer re RVR and UOF materials [IWOV-DMS.FID25914] |

Sonny,

Thank you for your response.  I understand that you are not available until later this afternoon.  How about we do a meet and confer call at 4:00 pm?

As you know, at issue is not whether Plaintiffs requested more documents than their experts were able to review during the single-day inspection tours. The issue is CDCR's refusal to provide copies of materials that were requested in advance of or during the tours.  With respect to the materials discussed in my email below (all of which were requested several weeks in advance of the tours), you represent that they have already been gathered and prepared by Defendants for the purpose of Plaintiffs' experts' review and so that Plaintiffs could request and receive copies of such materials. I do not understand Defendants' refusal to now refuse such requests.

You also misconstrue my statement that Plaintiffs' experts must be given access to the types of materials that were made available to Defendants' expert Martin.  Plaintiffs agree with you that Defendants must produce all documents provided to Mr. Martin for purposes of his review, including all documents he took offsite for review (including use of force reports and RVR packets).  But Plaintiffs' experts are entitled to conduct an independent review of such materials at the prisons they tour, including at prisons (like KVSP) that Defendants' experts chose not review.

I do appreciate your efforts to follow up with the institutions, and look forward to additional updates later today.

Best,
Aaron

**From:** William Downer [mailto:William.Downer@doj.ca.gov]
**Sent:** Wednesday, February 27, 2013 12:23 PM
**To:** Aaron Fischer
**Cc:** Jay Russell; Debbie Vorous; Patrick McKinney; Jonathan Wolff
**Subject:** RE: Meet and confer re RVR and UOF materials [IWOV-DMS.FID25914]

Aaron,

I'm not available to speak until later this afternoon because I have actively been coordinating with our clients to obtain the documents you have requested after the site inspections at LAC, Corcoran, KVSP, and others have concluded.  As we discussed at length yesterday, Defendants object to your expansive interpretation of the phrase "make available" in instructions 7 and 8 of Plaintiffs' Second Request for site inspection.  The subject institutions (KVSP, Corcoran & LAC) fully cooperated by making all items that were responsive to items identified in instructions 7 & 8, that exist in the ordinary course of business, available for inspection on the appointed date.  It was up to your attorneys, agents, and experts that attended the tour to request to review the documents as they are kept, and request any particular copies during that review.

1

Your expert and his entourage had Defendants' cooperation, ample resources, and time to inspect the institution. Defendants cannot be held responsible if Plaintiffs requested more documents than they were able to review in the day appointed for inspection.

In addition, you mentioned that it is only fair that your Use of force/Disciplinary Expert have the same access to materials that Defendants' expert Steve Martin had in preparing his assessment. Defendants have given you that access by providing Steve Martin's file, and all documents he took offsite for review (including use of force reports and RVR packets). Responsive documents are contained in Bates Nos. DEXP 105118-109519. Please look at these documents before making any further allegations that your expert does not have access to the same document sources that Mr. Martin had.

That said, I am in contact with the institutions, and attempting to obtain all responsive documents that Plaintiffs have requested to the extent that such documents exist, are in our possession custody and control, and are not privileged. I anticipate being able to turn over the UOF videos that Vail viewed at Corcoran, and the OIG reports that you requested are available publicly online and in documents produced in connection with Mr. Martin's deposition. We are continuing to receive responses throughout the day and will keep you updated as best we can. I appreciate your continued patience.

Sincerely,
William H. Downer
Deputy Attorney General
California Department of Justice
Office of the Attorney General, Correctional Law Section
Office: 916 324-2445
Fax: 916-324-5205

---

**From:** Aaron Fischer [mailto:AFischer@rbgg.com]
**Sent:** Wednesday, February 27, 2013 11:27 AM
**To:** William Downer
**Cc:** Coleman Team - RBG Only; Debbie Vorous; Jay Russell; 'Megan F. Cesare-Eastman'; 'Acharya, Ranjini (Ranjini.Acharya@klgates.com)'; 'Bornstein, Jeffrey L. (Jeffrey.Bornstein@klgates.com) (Jeffrey.Bornstein@klgates.com)'
**Subject:** Meet and confer re RVR and UOF materials [IWOV-DMS.FID25914]

Sonny,

Please let me know when you are available today to complete our meet and confer regarding RVR and UOF documents that Plaintiffs' experts have requested. You explained to me yesterday during our lengthy meet and confer phone call that you will be following up with COR, KVSP, and LAC on several of the requests we discussed, and I look forward to getting an update today. Among the items that further meet and confer appears to be necessary are as follows. (Please note that all requests are for the period from July 1, 2012 to the present.)

1. **Logs/institutional reports of RVRs and 115-MHs (Second Request for Inspection Items 7b and 7f)** – You stated during yesterday's phone call that you did not know whether the prisons keep such information. To clarify, please see Steve J. Martin's Report (at 8, 9), in which he states that he "reviewed facility RVR reporting data." This should assist you in obtaining the appropriate materials from each institution responsive to Requests 7b and 7f. Please let me know immediately whether Defendants intend to produce RVR reporting data for COR, KVSP, and LAC.

2. **Full packets of RVRs (Second Request for Inspection Item 7d)** – You stated during yesterday's phone call that Defendants would not be producing copies of RVR packets to Plaintiffs' experts. As Mr. Martin documents in his Report (at 8, 9), he reviewed approximately 540 RVR packets in the course of his review, which included multi-day tours at several prisons. There is no basis for denying Plaintiffs' experts the same opportunity to review RVR packets at institutions they toured. Please confirm whether such packets will be provided.

3.   **Use of Force Reports (and videos) (Second Request for Inspection Item 8c)** – You stated during yesterday's phone call that you would request from the institutions all Use of Force reports and videos at COR, KVSP, and LAC since July 1, 2012.  During Plaintiffs' expert Eldon Vail's tours during the week of February 19, the institutions refused to provide copies of such reports and videos.  I understand that Defendants refused to produce at least one UOF incident report and video during yesterday's tour at San Quentin as well.  As you know, Mr. Martin reviewed approximately 310 use of force incident packets in the course of his review (Report at 8, 9).  To prevent Plaintiffs' experts from conducting a review of such materials at the institutions they toured is unfair and improper.  Please let me know whether Defendants have reconsidered their position.

Please let me know when you are available to meet and confer today on these issues, so that we may timely prepare a joint statement for the court if these issues cannot be resolved.

-Aaron

Aaron J. Fischer, Esq.
ROSEN BIEN GALVAN & GRUNFELD LLP
315 Montgomery Street, Tenth Floor
San Francisco, CA 94104
Tel: (415) 433-6830
Fax: (415) 433-7104
afischer@rbgg.com
www.rbgg.com

CONFIDENTIALITY NOTICE
The information contained in this e-mail message may be privileged, confidential and protected from disclosure. If you are not the intended recipient, any dissemination, distribution or copying is strictly prohibited. If you think that you have received this e-mail message in error, please e-mail the sender at rbgg@rbgg.com.

IRS CIRCULAR 230 NOTICE:  As required by United States Treasury Regulations, you should be aware that this communication is not intended by the sender to be used, and it cannot be used, for the purpose of avoiding penalties under United States federal tax laws.

CONFIDENTIALITY NOTICE: This communication with its contents may contain confidential and/or legally privileged information. It is solely for the use of the intended recipient(s). Unauthorized interception, review, use or disclosure is prohibited and may violate applicable laws including the Electronic Communications Privacy Act. If you are not the intended recipient, please contact the sender and destroy all copies of the communication.