## Coleman v. Brown, 90-520 LKK JFM
## Joint Statement Re Discovery Dispute

Defendants move to compel Plaintiffs to produce their experts for deposition by March 15, 2013, and to produce their experts' reports at least two days before the scheduled depositions.

**Defendants' Position.**  Discovery is not a one-way street.  *Hickman v. Taylor*, 329 U.S. 495, 391 (1947).  Nonetheless, Plaintiffs have refused to make their five experts available for deposition until less than a week before Defendants must file their reply concerning termination—despite the fact that Plaintiffs were able to depose Defendants' experts weeks before their own briefing is due.

Defendants do not insist on receiving the full amount of time that Plaintiffs received under this Court's scheduling order, which did not account for the discovery that would be needed from Plaintiffs' experts.  (Order, Jan. 29, 2013, ECF No. 4316.)  But Defendants do request the bare minimum necessary to obtain deposition transcripts for Plaintiffs' five experts, evaluate their testimony, and form meaningful responses for the reply brief.  And this means that Defendants must take the depositions some time before March 15, 2013.

This discovery is essential, and it should not be rushed like Plaintiffs insist.  Plaintiffs intend to use their experts' testimony to undermine evidence that the mental-health system in California's prisons has reached a constitutional level—the very issue that this Court must decide in the termination motion.  Fundamental fairness requires that Defendants receive an adequate opportunity to probe the experts' opinions and the bases for them with sufficient time to also present their counterarguments to the Court.  *See Hickman*, 329 U.S. at 508 ("Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation.").

The Court should also order Plaintiffs to provide their experts' reports at least two days before their scheduled depositions.  Again, a threshold level of fairness dictates this.  Defendants provided expert reports to Plaintiffs several days before their experts' depositions, as well as thousands of pages documents in response to document requests.  And courts regularly order the disclosure of reports before expert depositions to ensure that the deposing party can prepare for the deposition and that the expert will have formed opinions by the time of the deposition, thereby preventing a waste of time and money in taking the deposition.

Plaintiffs protest that their experts will not be ready to be deposed before March 15 because Defendants have not produced sufficient discovery.  This is inaccurate. Plaintiffs have frequent access to prisons through tours, obtain monthly reports from Defendants, and have recently received hundreds of thousands of pages in response to discovery requests relevant to the termination motion.  The bottom line is that the argument on the termination motion will largely pivot on what the experts have to say.  And as a matter of fairness, Defendants ought to have more than four business days to depose 5 experts, evaluate their testimony, consult their experts about the opinions, and draft and file a reply that responds to the experts' opinions.  Plaintiffs had more than an adequate opportunity to inquire into the opinions of Defendants' experts.  And Defendants merely seek a fraction of that amount—so that they can timely discover the information on which Plaintiffs' opposition will be based, in a manner that will fairly allow them to respond in their reply.

**Plaintiffs' Position:** Plaintiffs move for a protective order prohibiting Defendants from compelling depositions of Plaintiffs' experts and production of draft reports. In the alternative, Plaintiffs request a protective order limiting the time for any such depositions to after 3/15/13, when the experts' reports will have been filed with the Court.

Defendants cannot complain about a "one-way street." Defendants gave themselves 18 months to prepare their expert witnesses, taking them on 13 secret prison tours with no notice to Plaintiffs, in violation of this Court's orders (Docket No. 2495 at 3:25-4:18), and engaging in *ex parte* litigation-driven interviews of *Coleman* class members in violation of this Court's orders and professional ethics. Docket No. 2495 at 4:12-15; Cal. R. Prof. Cond. 2-100.

With no disclosure of their expert information to Plaintiffs beforehand, Defendants then filed a motion on January 7, 2013 that triggered a 90-day statutory timeline for termination, requiring the Court to set an extremely aggressive schedule compressing Plaintiffs' discovery, expert inspections, expert report writing, and briefing into six weeks. The Court's order does not give Defendants any right to discovery. Docket No. 4316 at 4. This is appropriate, as Defendants gave themselves 18 months to collect discovery in secret, and represented to the Court that no further discovery is needed. (Docket No. 4275-1 at 24 n.9.)

Defendants already have a wealth of information about Plaintiffs' experts and are aware of every unit they toured and every document they have requested for review. They have known for weeks who the experts are. Galvan Decl. ¶ 2. Defendants sent multiple attorneys and CDCR officials to all of Plaintiffs' experts' prison tours. *Id.* ¶ 4. Every time Plaintiffs' experts asked for a document, Defendants' counsel made sure it was not turned over until they also received a copy. *Id.* ¶ 3. Four out of five of Plaintiffs' experts have testified previously in this case, and one of them is a former secretary of CDCR. *Id.* ¶ 2. Defendants already have much of the information that Rule 26 contemplates for these experts.

Plaintiffs, by contrast, have still not received basic information about what files Defendants' experts reviewed, and what patients they spoke with. (Docket No. 4363.)

Even if depositions of Plaintiffs' experts were proper, making the experts stop work now for depositions is harassment. Plaintiffs' expert inspections concluded this week. The experts cannot finish their review of material and complete reports on this schedule, and also set aside days to be deposed. Galvan Decl. ¶ 6. Defendants' slow-balling of every request for information has already slowed down the experts' work; Plaintiffs still have not received production responsive to dozens of requests made – in some cases more than one month ago – through written Requests for Production or during the tours. (Docket No. 4362.) Making Plaintiffs' experts stop their work now for depositions, before they have had an opportunity to complete their review, is not reasonable. Nor would it yield any useful information because the expert's work is not complete, and will not be complete until March 15. Any "reports" ordered before then would be drafts, which cannot be ordered produced under FRCP 26(b)(4).

Defendants would not be prejudiced if depositions occurred after March 15. It is normal in modern litigation for attorneys to receive "daily" transcript from court reporters with no waiting period. Requiring Defendants to use the tools available for litigation under a deadline is only fair given that they chose this highly pressurized time and manner of litigation.

[748685-1]

CF1997CS0003
748685_1.DOC

[748685-1]