IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RALPH COLEMAN, et al.,

        Plaintiffs,                  No. 2:90-cv-0520 LKK JFM P

    vs.

EDMUND G. BROWN, JR., et al.,

        Defendants.              ORDER

_____/

On February 28, 2013, the parties filed a Joint Statement Re Discovery Dispute (Joint Statement) (Doc. No. 4362). The dispute tendered for resolution centers on plaintiffs' February 1, 2013 Second Request for Inspection served in connection with tours of four prisons by one of plaintiff's experts, Eldon Vail.

In support of their motion to terminate this action, defendants have submitted an expert declaration from Steve J. Martin. (Ex. D to Decl. of Aaron J. Fischer in Support of Pls.' Motion to Compel Production of Rule Violation Report and Use of Force Materials, filed Feb. 28, 2013 (Fischer Decl.) (Doc. 4362-1; Doc. 4279)). Mr. Martin avers that he was asked by defendants' counsel to review the California Department of Corrections and Rehabilitation's "administration of Staff Use of Force, and the Rules Violation Report Mental Health Assessment Process." (Id. at 1.) In relevant part, Mr. Martin conducted site inspections at eight California

1

prisons from February through May 2012. (Id. at 8.) These site inspections included California Medical Facility (CMF), California State Prison-Sacramento (CSP-Sacramento); Centinela; Richard J. Donovan Correctional Facility (RJD); Central California Women's Facility (CCWF); Corcoran State Prison (Corcoran); Salinas Valley State Prison (SVSP); and San Quentin State Prison (San Quentin). (Id. at 7-8.) Mr. Martin also conducted document reviews for California Institution for Men (CIM) and California State Prison-Lancaster (CSP-Lancaster). Mr. Martin inspected the following three additional prisons in October and November 2012: Pelican Bay State Prison (Pelican Bay); California Men's Colony (CMC); and Substance Abuse Treatment Facility (SATF). (Id. at 8-9.) He spent two days at each facility. (Id. at 7-9.) In relevant part, Mr. Martin avers that "[p]rior to each site inspection" he was "provided a document packet of information" that included "use of force incident logs for the previous three months, a sample of use of force incident reports for the previous three months, a sample of incident reports reflecting the institutional review process, [and] total RVRs issued to CCCMS and EOP inmates for the previous three months." (Id. at 7-8.) He avers that "[d]uring the course of the site inspections and document reviews at the first ten facilities [he] used the pre-site inspection documents to guide [his] more detailed review of actual facility operations related to staff use of force and the RVR Mental Health process." (Id. at 8.) During "the course of these site inspections and document reviews" at the first ten facilities, Mr. Martin reviewed "approximately 220 use of force incident packets (November 2011-May 2012)"; "440 RVR packets from ten facilities"; and "facility RVR reporting data." (Id. at 8.) "During the course of [the second set] of three site inspections, he reviewed "approximately 90 use of force incident packets"; "approximately 100 RVR packets"; and "facility reporting data." (Id. at 10.)

    Plaintiff's expert inspected four prisons: Corcoran; Kern Valley State Prison (KVSP); California State Prison-Los Angeles County (LAC); and San Quentin. (Joint Statement (Doc. No. 4362) at 1.) He spent one day at each prison. (Id.) As noted above, on February 1, 2013, plaintiffs served their second request for inspections, which included requests to "prepare

to make available to plaintiffs' experts, prior to or at the start of these tours, for the period from July 1, 2012 to the present: . . . . 7b. Logs of RVR and 115-MH RVR mental health assessment requests (for review of sample) . . . 7d. Full packets of RVRs involving CLASS MEMBERS (for review of sample); 7e. Local Operating Procedures and Training Materials on RVR mental health assessment procedures. . . . 8c. Use of Force Reports, including videos, involving Institution Review Process (for review of sample)." (Ex. A to Fischer Decl. (Doc. 4362-1) at 3-4.) In their response to the plaintiffs' Second Request for Inspection, dated February 15, 2013, defendants interposed a series of objections to requested items but agreed to produce "relevant, non-privileged documents that are responsive to this request at mutually agreeable time and date, to the extent they exist, can be located after a reasonable search, and are not already in Plaintiffs' possession." (Ex. 1 to Decl. of William Downer, filed Feb. 28, 2013 (Downer Decl.), Defs.' Responses to Pls.' Second Request for Inspection, at 6-7.)[1]

In letters to defense counsel dated February 12, 2013 and February 26, 2013, plaintiffs requested that those RVR materials be provided "prior to the tour." (Exs. B and C to Fischer Decl. (Doc. 4362-1) at 3.) Finally, in an email to defense counsel dated February 25, 2013, plaintiffs' counsel informed defense counsel of documents that had not yet been produced relating to Corcoran, KVSP, and LAC, including the items now in dispute, and requested production of those materials not later than March 1.

Plaintiffs contend that no Rules Violation Reporting Data/Logs/Institutional Reports were provided to plaintiffs' expert at any of the prison tours, and that defense counsel has "refused to state" whether the material would be produced. (Joint Statement at 1.) Plaintiffs also contend that their expert was only permitted to review 9 RVR packets at KVSP and none at the other three institutions which he toured. Id. Finally, plaintiffs contend that their expert was permitted to review only "a limited number of UOF-related videos during his tours but could not

---

[1] Defendants used ellipses in their responses, omitting the text of items 7b and 8c, both of which are in dispute on this motion.

3

complete his review in the time allowed and was not provided with all the videos requested," that access to a UOF packet at San Quentin was denied because of an ongoing UOF investigation, and that plaintiffs have not received any UOF materials to date. Id.

Defendants contend that all "responsive, nonprivileged materials" were made available to plaintiffs during the four site inspections. (Joint Statement at 2.) Defendants argue that under the terms of the Second Request for Inspection they were not required to "separately assemble and produce those items after the tour ended" and that they "fully discharged their obligations under Federal Rules 26 and 34 by having all responsive documents ready and available for inspection on the appointed day." (Id.) Defendants contend they "should not be penalized for Plaintiffs' failure to affirmatively request them during the day they were present at the institution." Id. Defendants also contend that "all of Plaintiffs' copy requests made during the inspections that are responsive and nonprivileged are being produced to Plaintiffs." Id.

With respect to the RVR Reporting Data/Logs/Institutional Reports, defendants also assert that plaintiffs' expert "had the same opportunity to review all documents that Steve Martin accessed, in addition to the thousands of pages of documents produced in conjunction with Mr. Martin's deposition." Id.

With respect to the RVR Packets for Class Members and UOF Packets/Videos, defendants argue that "while Mr. Martin viewed some videos documenting use of force during inspections, he received no copies to review outside." Id. Defendants also contend that these documents were made available during plaintiffs' site inspections and that plaintiff "chose not to review and request copies when they had a full day at each institution with numerous staff available to assist them." Id. This assertion is disputed by plaintiffs, who have presented a declaration of counsel averring that they were not provided any RVR packets at Corcoran or LAC, and merely approximately twenty RVR packets, at least five of which were duplicates, at San Quentin. (See Decl. of Megan Cesare-Eastman in Support of Pls.' Motion to Compel Production of Rule Violation Report and Use of Force Materials, filed Feb. 28, 2013 (Doc. No.

4362-2)). Ms. Cesare-Eastman also avers that defendants denied plaintiffs' requests for copies of certain RVR and Use of Force materials while plaintiffs were at all three institutions. Id. Plaintiffs have also submitted a second declaration in which counsel avers that at KVSP they were only allowed to review nine RVR packets and four Use of Force packets and requests for copies of certain other RVR and Use of Force Materials were denied. (Decl. of Ranjini Acharya in Support of Pls.' Motion to Compel Production of Rule Violation Report and Use of Force Materials, filed Feb. 28, 2013 (Doc. No. 4362-3)).

The precise nature of the access that defendants' expert had to the disputed materials is not made clear by the Joint Statement filed with the court.[2] It appears, however, that plaintiffs have been provided with some of the materials that defendants' expert was allowed to review. See footnote 1, supra. However, it also appears clear that plaintiffs' expert has not been provided with the same access to RVR Reporting Data/Logs/Institutional Reports, RVR Packets, or UOF Packets materials from the prisons he toured as was provided to defendants' expert, Mr. Martin, for the prisons Mr. Martin inspected or reviewed. It also appears clear that plaintiffs timely requested those materials

/////

/////

---

[2] Specifically, it is not clear whether Mr. Martin reviewed most of approximately 310 use of force incident packets and 540 RVR packets that he reviewed during his actual site inspections, or whether he reviewed those documents at a different time, or both. As to two institutions, Mr. Martin did not conduct site inspections. Therefore, it appears that documents must have been provided to him for his review in connection with those institutions. Plaintiffs have presented evidence that defense counsel confirmed during the meet and confer process that Mr. Martin "reviewed Use of Force reports and RVR packets to off-site." (Fischer Decl. at ¶ 8.) Defendants have informed plaintiffs' counsel that all documents Mr. Martin reviewed offsite, including use of force reports and RVR packets, were provided to plaintiffs in connection with Mr. Martin's deposition, and defense counsel provided plaintiffs' counsel with specific Bates numbers for those documents. (Ex. F to Fischer Decl.) Defendants have presented evidence indicating that Mr. Martin did view Use of Force videos but that no copies of such videos were provided to him. (Downer Decl. at ¶ 8.) However, defense counsel has also informed plaintiffs' counsel that he "anticipated being able to turn over the UOF videos" that plaintiffs' expert viewed at Corcoran. (Ex. F to Fischer Decl.)

Good cause appearing, defendants will be required to, on or before March 8, 2013, complete production to plaintiffs counsel of all documents responsive to plaintiffs' Second Request for Inspection, Items 7b, 7d, 7e, and 8c for the four prisons inspected by plaintiff's expert in the same manner and to the same extent those types and categories of materials were provided to defendant's expert Steve J. Martin for the prisons Mr. Martin inspected. To the extent such responsive documents have already been provided to plaintiffs' counsel, defendants shall identify when and where the documents were provided. Finally, on or before March 8, 2013, defendants shall certify in writing that they have produced all documents responsive to said Request for Inspection items as required by this order.

Plaintiffs also seek to compel "weapon use logs from units with class members, and relating to an officer who reportedly has used weapons with disturbing frequency against class members." (Joint Statement at 1.) There is no evidence before the court at this time establishing that plaintiffs made a Rule 34 request for production of this material within the time set for discovery in this matter. Therefore, plaintiffs' motion to compel production of these materials will be denied.

In accordance with the above, IT IS HEREBY ORDERED that:

1. Plaintiffs' February 28, 2013 motion to compel is granted in part;

2. On or before March 8, 2013, defendants shall produce to plaintiffs all documents responsive to plaintiffs' Second Request for Inspection, Items 7b, 7d, 7e, and 8c for the four prisons inspected by plaintiff's expert in the same manner and to the same extent those types and categories of materials were provided to defendant's expert Steve J. Martin for the prisons Mr. Martin inspected. To the extent such responsive documents have already been provided to plaintiffs' counsel, defendants shall identify when and where the documents were produced.

/////

/////

3. On or before March 8, 2013, defendants shall certify in writing that they have produced all documents responsive to plaintiffs' Second Request for Inspection, Items 7b, 7d, 7e, and 8c as required by this order.

4. Plaintiffs' request to compel production of weapon use tracking data is denied.

DATED: March 4, 2013.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

12
termination.disc4