DONALD SPECTER – 083925
WARREN E. GEORGE – 053588
STEVEN FAMA – 099641
ALISON HARDY – 135966
SARA NORMAN – 189536
REBEKAH EVENSON – 207825
PRISON LAW OFFICE
1917 Fifth Street
Berkeley, California 94710-1916
Telephone: (510) 280-2621

MICHAEL W. BIEN – 096891
JANE E. KAHN – 112239
ERNEST GALVAN – 196065
LISA ELLS – 243657
AARON J. FISCHER – 247391
KRISTA STONE-MANISTA – 269083
MARGOT MENDELSON – 268583
ROSEN BIEN GALVAN &
GRUNFELD LLP
315 Montgomery Street, Tenth Floor
San Francisco, California 94104-1823
Telephone: (415) 433-6830

CLAUDIA CENTER – 158255
THE LEGAL AID SOCIETY –
EMPLOYMENT LAW CENTER
600 Harrison Street, Suite 120
San Francisco, California 94107-1389
Telephone: (415) 864-8848

GEOFFREY T. HOLTZ -- 191370
BINGHAM McCUTCHEN LLP
Three Embarcadero Center
San Francisco, California 94111-4067
Telephone: (415) 393-2000

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURTS

EASTERN DISTRICT OF CALIFORNIA

AND NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| RALPH COLEMAN, et al.,<br>  Plaintiffs,<br>v.<br>EDMUND G. BROWN, JR., et al.,<br>  Defendants. | Case No. Civ S 90-0520 LKK-JFM P<br>**THREE JUDGE COURT**<br>**REQUEST FOR LEAVE TO FILE SUPPLEMENTAL BRIEF, AND SUPPLEMENTAL BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO VACATE POPULATION REDUCTION ORDER AND IN SUPPORT OF PLAINTIFFS' MOTION FOR FURTHER RELIEF** |
| MARCIANO PLATA, et al.,<br>  Plaintiffs,<br>v.<br>EDMUND G. BROWN, JR., et al.,<br>  Defendants. | Case No. C01-1351 TEH<br>**THREE JUDGE COURT** |

PLAINTIFFS' SUPP. BR. RE MOTION TO VACATE OR MODIFY

## REQUEST TO FILE SUPPLEMENTAL BRIEF

Plaintiffs respectfully request leave to file the attached supplemental brief in opposition to Defendants' Motion to Vacate Population Reduction Order and in support of Plaintiffs' Motion for Further Relief, in light of material facts revealed just one week ago, after briefing in this matter had concluded.

There is good cause to allow Plaintiffs to file this supplemental pleading. On March 2, 2013, Defendants produced to Plaintiffs a report that they had commissioned which states that the maximum "Operating Capacity" of the 33 prisons is 103,470 prisoners – approximately 6,000 prisoners *less* than the court-ordered cap. Evenson Decl., ¶1, Ex. 2. This report provides compelling reason to deny Defendants' Motion to Vacate the Population Reduction Order, through which Defendants seek to keep their prisons crowded at a level that far exceeds what their own experts believe to be operable. The report also analyzes the operating capacity of each of the individual prisons, supporting Plaintiffs' Motion for Further Relief, by which Plaintiffs seek Plaintiffs seek an order requiring Defendants to identify prison-specific caps.

Because Plaintiffs only became aware of this report last week, there is good cause to allow Plaintiffs to file this supplemental brief.

## SUPPLEMENTAL BRIEF

### BACKGROUND

On January 7, 2013, Defendants filed a Motion to Vacate or Modify Population Reduction Order, declaring overcrowding a "distant memory" and prison healthcare "superior." Defs' Mot. to Vacate or Modify at 1. Plaintiffs demonstrated that the motion is not properly before this Court, but if it were, that the motion must be denied because the prisons remain overcrowded and healthcare remains substandard, especially at the most crowded prisons.[1] Now, Defendants have produced to Plaintiffs a Prison Capacity Report

---

[1] Pltfs' Opp. and Counter Mot for Further Relief, Feb. 12, 2013 at 3-14 (filed before three (footnote continued)

that shows that the prisons remain vastly overcrowded even by their own experts' measure. Evenson Decl., ¶2, Exh. 1 at 4 ( "California Department of Corrections and Rehabilitation Prison Capacity Planning Final Report," hereinafter, "Prison Capacity Report").

The Prison Capacity Report was prepared by CDCR more than two years ago with the express purpose of developing an "approach to measuring capacity" that would stand as an "alternative" to this Court's order capping crowding at 137.5% of design capacity. Prison Capacity Report at 2.  The participants in drafting this report include more than a dozen CDCR officials, including Defendants in this case as well as other "experienced [CDCR] staff representing decades of experience in institutional management, classification, facility design, mental health care, inmate programs, and security," and outside consultants hired by Defendants.  Prison Capacity Report at 3, 49.

In compiling the report, Defendants started with the current crowding standards adopted by the American Correctional Association (ACA), which largely focus on the square footage of prisoners' living spaces.  Report at 2-3, 14-15, 29.  Under the ACA Standards, California's prisons should house no more than 94,691 prisoners.  Prison Capacity Report at 4.

Defendants then adjusted the ACA capacity figure upward, calculating a "Prison Operating Capacity" (POC) for each prison and for the system as a whole based on their assumptions about each prisoner's "out of cell time," which Defendants believe "mitigates" the impact of the small living spaces.  Prison Capacity Report at 20, 21.  The upward adjustment yields a maximum systemwide "Prison Operating Capacity" of 103,470 prisoners – almost exactly 130% of design capacity, and approximately 6,000 prisoners *less* than the court-ordered cap.  Prison Capacity Report at 4.

---

judge court); Pltfs' Reply iso Mot for Further Relief, Feb. 26, 2013 (filed before three judge court); *Plata* Pltfs' Response to Defs' Objections to Receiver's 22nd Tri-Annual Report at 2-11, Feb. 22, 2013 (filed in *Plata* only); Receiver's Response to Defs' Objections to 22nd Tri-Annual Report at 4-5, Feb. 22, 2013 (filed in *Plata* only).

2
PLAINTIFFS' OPPOSITION TO MOTION TO VACATE OR MODIFY

At the request of the Secretary of CDCR, Defendants' prison capacity working group also calculated a *Potential* Prison Operational Capacity ("PPOC"). Prison Capacity Report at 36. The PPOC, which Defendants call the "what if" or "theoretical" scenario, reflects what the capacity *could be* if CDCR maximized out-of-cell activities for all inmates; it does not reflect the current reality in the prisons. *Id*. Defendants calculate that under this theoretical best case scenario the PPOC would be 128,700 across the 33 institutions. Prison Capacity Report at 4. Their report also shows that today, more than a quarter of the prisons remain crowded even above the PPOC.[2]

The report likely *overestimates* both the current capacity and potential future capacity of the prison for at least four reasons: First, the report's drafters expressly did not consider the available health care space in their analysis of how many prisoners a prison could hold. Prison Capacity Report at 29. Since Defendants have conceded that the healthcare infrastructure is currently insufficient to meet the needs of the prison population,[3] considering health care space may well lead to a lower estimate for the prison operating capacity.

Second, the capacity calculation apparently does not take into account staffing levels, even though CDCR prisons have experienced persistent and severe shortages of

---

[2] The population of CCWF is 3,599, but its largest PPOC is 2,558; the population of CIM is 4,628, but its largest PPOC is 4,553; the population of San Quentin is 3945, but its largest PPOC is 3,501; the population of CCI is 4530, but its largest PPOC is 3,776;the population of CMC is 5,030, but its largest PPOC is 4895; the population of SATF is 5,595, but its largest PPOC is 5,390; the population of CTF is 5455, but its largest PPOC is 4,998, and the population of SCC is 4769, but its largest PPOC is 4,400. Prison Capacity Report at 4; CDCR Weekly Population Report as of Feb. 27, 2013, at 2, published at http://www.cdcr.ca.gov/Reports_Research/Offender_Information_Services_Branch/WeeklyWed/TPOP1A/TPOP1Ad130227.pdf (site last visited March 8, 2013). Note that the current population figures for SCC include persons housed in institutions as well as camps; accordingly, the capacity figure listed above was calculated by adding the PPOC of both the SCC institution and the SCC camp, as listed in the Prison Capacity Report at 4.

[3] *See, e.g.,* Pltfs' Opp. and Counter Mot for Further Relief, Feb. 12, 2013 at 10-14.

mental health staff, among others.[4]

Third, the capacity figure does not consider the "quality and condition" of housing areas; it assumes that all the housing in all the prisons will be used to house prisoners even though the experts themselves found some housing to be "substandard." Prison Capacity Report at 42. The capacity figure may require a downward adjustment based on this factor.

Fourth, the capacity calculation assumed that CDCR will continue to house prisoners in cells that are so small that the experts found them "not acceptable in principle" for housing even one prisoner; the reason the experts included those cells in the operable capacity is that "it is not practical to simply take them off line." Prison Capacity Report at 25.

## ARGUMENT

### I. The Court Should Deny Defendants' Motion to Vacate and Grant Plaintiffs' Motion For Further Relief.

Defendants' Motion to Vacate was premised on their contention that the prisons are no longer crowded and healthcare is fixed. Yet the prisons overall remain about 150% over their capacity, well above the court-ordered cap, and Defendants have crowded other prisons at upwards of 180% of capacity, well above the level the Secretary himself said was safe. Defs' Feb. 15, 2013 Status Report, Exh. A; Trial Tr. At 209:9-25, 212:5- 21. Defendants' own Prison Capacity Report conclusively demonstrates that the entire prison system remains vastly overcrowded beyond its operable capacity, that many individual prisons have thousands more prisoners than they can safely house, and that those prisons will still be overcrowded beyond their operable capacity even if the State complies with this Court's Population Reduction Order.

Nearly every institution houses more prisoners than their operational capacity

---

[4] *See, e.g.,* Pltfs' Opp. and Counter Mot for Further Relief, Feb. 12, 2013 at 4-8.

allows,[5] and eight institutions house more prisoners than Defendants' experts believe to be the "theoretical," "what if" best-case-scenario for a *future* operational capacity (PPOC).[6]

Recent reports from the court-appointed Special Master and Receiver demonstrate serious ongoing problems with medical and mental health care, and show that the most crowded prisons have the most severe problems providing basic healthcare. *See, e.g.,* Receiver's Response to Defs' Objections to 22nd Tri-Annual Report at 4-5, Feb. 22, 2013 (filed in *Plata* only) (most crowded prisons have poorest levels of compliance with medical standards); Pltfs' Opp. and Cross Mot., Feb. 12, 2013, at 3-15 (poor medical care, and poor mental health care at most crowded prisons).

These reports demonstrate conclusively that Defendants' declaration of victory over the crowding and healthcare crises was vastly premature. Defendants have failed to meet their burden of showing changed circumstances require this Court to vacate the Population Reduction Order, and Defendants' Motion to Vacate should be denied.

For the same reasons, Plaintiffs Motion for Further Relief should be granted. Plaintiffs' motion seeks an order requiring Defendants to propose institution-specific caps. Pltfs' Opp. and Cross Mot., Feb. 12, 2013, at 22-24. It is now apparent that the most crowded prisons have the most severe problems providing healthcare, and also that Defendants have engaged experts to conduct precisely the analysis that Plaintiffs' request. For that reason, and the reasons set forth in the motion, Defendants should be required to

---

[5] The only prisons whose populations *do not* currently exceed their Operating Capacity are CMF, the medical prison which by virtue of its mission cannot be crowded, CRC, the prison that is so decrepit that CDCR plans to shut it down, and six others: ASP, SAC, SOL, CVSP, KVSP and PBSP. Prison Capacity Report at 4; CDCR Weekly Population Report as of Feb. 27, 2013, at 2, published at http://www.cdcr.ca.gov/Reports_Research/Offender_Information_Services_Branch/WeeklyWed/TPOP1A/TPOP1Ad130227.pdf (site last visited March 8, 2013); CDCR Blueprint at 38, available at http://www.cdcr.ca.gov/2012plan/index.html (site last visited March 8, 2013) (describing plan to close CRC Norco).

[6] *See supra,* note 2.

submit a proposal identifying prison-specific caps.

## CONCLUSION

For the foregoing reasons, and the reasons set forth in Plaintiffs' motion and reply, the Court should deny Defendants Motion to Vacate and grant Plaintiffs' Motion for Further Relief.

DATED: March 11, 2013						Respectfully submitted,

								PRISON LAW OFFICE

								By: /s/
								    Rebekah Evenson

								Attorneys for Plaintiffs