# EXHIBIT 3

8/8/12
8/10/12

## COLEMAN AUDIT BEST PRACTICE RECOMMENDATIONS FOR USE OF FORCE

1) Revisit referral/investigation requirements per Use of Force Regs 51020

    <u>Discussion</u>: Currently, pursuant to 51020.17.7, the <u>only mandatory referral</u> of an UOF incident must involve deadly force, death, great bodily injury (GBI), or serious bodily injury (SBI), see 51010.4 for definitions of GBI/SBI.

    Currently, pursuant to 51020.20, the <u>only mandatory investigations</u> conducted are for deadly force, death, GBI or SBI.

    Referral criteria should not be limited to death, deadly force, GGBI/SBI. Criteria should be expanded to include: unexplained injuries, impact strikes to lethal target areas (head, eyes, throat, spine or groin) regardless of seriousness of injury, incomplete/conflicting reports, and application of non-lethal weaponry that exceeds what would normally be expected for the type of force reported, e.g., unarmed inmate in cell subjected to great amounts of chemical agents via multiple delivery systems such as MK-9, MK-46 and - Grenades (see Corcoran, COR-04B-11-12-0793). Once one of these incidents is referred there should be an operating presumption that it will be investigated.

2) Currently, there is virtually no guidance in 51020 regarding the use of the expandable baton.

    <u>Discussion</u>: The expandable baton is a tactical impact weapon deployed for self-defense typically when an officer is subject to active or targeted aggression by an inmate. If misused it is often converted into offensive weapon used for pain-compliance or an instrumentality of corporal punishment. I did not review any incidents in which I detected any such misuse; however, there were numerous instances in which it was used to intervene in inmate/inmate assaults (see RJD 101-11010-53). I take no firm position on such use other than to suggest adoption of some standard or training that will limit its use in such situations where other less potentially injurious means have been exhausted or are impractical or there is an immediate threat of SBI/GBI.

3) Currently, MK-9 OC cannisters are standard issue to line-level CO's. The MK-9 it is classified as a "crowd management" delivery system (Defense Technology® Product Spec Manual).

2

DEXP 105138

6

<u>Discussion</u>: 51020.15 Chemical Agents provides that: "Employees shall only administer the amount of chemical agents necessary and reasonable to accomplish the control objective." While I don't question the tactical deployment of a MK-9 cannister in an open area (yard, dayroom, gym, etc.) to intervene in a inmate/inmate assault, I do question the use of crowd control delivery systems into a cell of an unarmed or unbarricaded inmate. The current regs offer no guidance regarding when OC delivery systems may be used (51020.15.1 does suggest that when the MK-46 is used in cells that it be used with the wand applicator attachment in order to avoid soft tissue damage to the inmate). Finally, I suggest some consideration be given to adopting a procedure whereby OC cannisters are weighed before and after use.

4) I strongly endorse the recommendation made in the OIG Report on Use of Force, May 2012, wherein it was recommended that the Institutional Appeals Coordinator should notify the Use of Force Coordinator of all inmate appeals containing use of force allegations (see Report Recommendation #5, at page 21).

<u>Discussion</u>: "The OIG examined 268 allegations of unreasonable force reported through the adult institutions' inmate appeal process or through written or oral complaints from staff, members of the public, or inmates. Nearly half (121) of the allegations of unreasonable force in our examination escaped executive committee review..." (see OIG Report, at page 16).

3

DEXP 105139

## *COLEMAN* AUDIT USE OF FORCE OBSERVATIONS

<u>Audit Methodology</u>:
- Reviewed approximately 220 use of force incident packets from 10 facilities
- Interviewed Use of Force Coordinators at 8 of 10 facilities
- Attended IREC meetings at 4 facilities
- Reviewed all relevant LOPs and CDCR regs related to use of force
- Reviewed OIG Use of Force Reports (2) which covered incidents from Sept 2010-Dec 2011
- Reviewed UOF data system-wide from 22nd, 23rd & 24th Monitoring Rounds
- Reviewed CDCR Program Guide for MH Services Delivery System (2009 Revision) and CDCR compliance reports re same

<u>Observations</u>:
- No pattern/practice of unnecessary/excessive force as relates to *Coleman* class inmates
- Identified 5 use of force incidents at 3 facilities (RJD/Corcoran/CSP-LA) in which there appeared to evidence of unnecessary/excessive force.
- None of the 5 incidents were referred for investigation
- 3 of the 5 involved baton strikes, 2 of which resulted in injuries to inmates
- 2 of the 5 involved possibly unnecessary/excessive OC spray
- All 8 Use of Force Coordinators are competent and perform their assigned tasks in timely fashion and are absolutely essential to the IERC review process
- The IERCs regularly meet and engage in substantive review of UOF incidents
- While the UOF administrative review process is multi-tiered and comprehensive, it results in very few referrals for investigation (see also, OIG Use of Force within CDCR, July-December 2011, at page 5)

*[handwritten: distinguish unnecess. vis-a-vis excessive]*

*[handwritten: Tefern]*

1

DEXP 105143