# EXHIBIT 4

COLEMAN AUDIT RVR PROCESS OBSERVATIONS

Audit Methodology:
--Reviewed approximately 440 RVR packets from 10 facilities
--Interviewed RVR hearing officers, RVR Coordinators, and clinicians at 8 of 10 facilities
--Reviewed all relevant LOPs and CDCR regs related to Mental Health Assessment Process for Rule Violations (RVR MH Process)
--Reviewed CDCR memoranda and local memoranda related to RVR MH Process
--Reviewed facility training materials and training records related to RVR MH Process
--Reviewed facility RVR reporting data
--Reviewed 22nd, 23rd, & 24th Monitor Reports related to RVR MH Process
--Reviewed CDCR Program Guide for MH Services Delivery System (2009 Revision), Attachment B-Inmate Disciplinary Process

Observations:
--The CDCR RVR MH Process establishes structured mechanisms to reasonably accommodate inmates who while receiving mental health services, or may need such services, are charged with disciplinary rule violations.
--The CDCR has established and implemented a correctional sound training program for both hearing officers and clinicians who administer the RVR MH Process.
--Both hearing officers and clinicians routinely and consistently provide reasonable accommodation to inmates whose mental health status requires consideration in determining a fair disposition of the RVR.
--Of the approximately 440 RVR packets reviewed, only on rare occasions (less than 10), did I find instances in which the Mental Health Assessment Request had not been completed when required.
--Of the approximately 440 RVR packets reviewed, when clinicians determined that the inmate's mental disorder appeared to contribute to the behavior that led to the RVR, and that the hearing officer should consider mental health factors in assessing the peanlty, reasonable accommodation was made to the charged inmate.

4

COLEMAN BEST PRACTICE RECOMMENDATIONS RVR PROCESS

1) Establish protocols for hearing officers and clinicians to meet periodically to discuss and resolve issues related to the RVR MH Assessment.

> Discussion: It is evident from interviews with the hearing officers and clinicians that they don't communicate in any ongoing fashion to address MH Assessment issues. Both hearing officers and clinicians related that they sometimes lack information about the respective assessment practices of the other group, e.g., some clinicians related they are not well acquainted with all the penalty options available to hearing officers. It is noted that the two groups at RJD routinely meet/confer and it was reflected in the quality of their RVR MH assessments.

2) The model for the RVR process at RJD should be closely examined for possible replication at all facilities.

> Discussion: RJD officials have developed a very comprehensive set of local operating procedures for the MH Assessment Process (see RJD Operational Plan #66, December 2011). Moreover, based on an interview with the RVR Coordinator (the Senior Psy Supervisor), he chose to create an Assessment Unit in order to have dedicated specialists in making such assessments. The benefits of such specialists were evident in both the consistency and quality of the RJD assessment process. The RVR Coordinator intends to conduct continuing in-service training for both hearing officers and clinicians at the facility.

3) The hearing officers should affirmatively state whether they modified or mitigated the penalties based on the MH Assessment (see also Recommendation #4, below).

> Discussion: In my review of the hearing packets it was not always clear whether the hearing officer modified or mitigated the penalties.

4) Consider revising the RVR: Mental Health Assessment Request (CDCR 115-MH (Rev. 06/06).

> Discussion: Question 2 on the form requires the clinician to express an opinion on whether the inmate's mental disorder appeared to contribute to the behavior that led to the RVR. Question 3 asks the clinician if there are any mental health factors the hearing officer should consider in assessing the penalty. My interview with both hearing officers and clinicians produced inconsistent answers on what the hearing officer should do when Question 2 is answered in the affirmative, and in turn, whether those mental health

5

DEXP 105141

factors had to be considered for purposes of Question 3.

I offer two possible recommendations to simply suggest ways to bring more clarity to the form. The second option would likely be the easiest to implement.

1). Revise Question #3 as follows: "If the answer to Question #2 is yes, explain the MH factors that the hearing officer should consider in assessing the penalties." This revisions would be accompanied by a requirement for the hearing officer in the Disposition Section of the Rules Violation Report-Part C, to document what, if any, modifications were made to the penalties assessed in response to the MH factors as identified in Question #2.

2) Currently, Question #3 requires the clinician to "Explain" only if he/she answers "yes." The "yes" should be deleted and an explanation should be provided regardless of whether the clinician answers "yes" or "no." This would be a means to address those situations in which the answer to Question #2 is in the affirmative.

6

DEXP 105142