# EXHIBIT 10

APA Official Actions

# Position Statement on Segregation of Prisoners with Mental Illness

Approved by the Board of Trustees, December 2012
Approved by the Assembly, November 2012

"Policy documents are approved by the APA Assembly and Board of Trustees...These are...position statements that define APA official policy on specific subjects..." – *APA Operations Manual*.

Prolonged segregation of adult inmates with serious mental illness, with rare exceptions, should be avoided due to the potential for harm to such inmates. If an inmate with serious mental illness is placed in segregation, out-of-cell structured therapeutic activities (i.e., mental health/ psychiatric treatment) in appropriate programming space and adequate unstructured out-of-cell time should be permitted. Correctional mental health authorities should work closely with administrative custody staff to maximize access to clinically indicated programming and recreation for these individuals.

© Copyright, American Psychiatric Association, all rights reserved.

## Background to the Position Statement

The number of persons incarcerated in prisons and jails in the United States has risen dramatically during the past three decades, accompanied by a significant increase in prisoners with serious mental illness. Studies have consistently indicated that 8 to 19 % of prison inmates have psychiatric disorders that result in significant functional disabilities and another 15 to 20 % require some form of psychiatric intervention during their incarceration (1, 2).

Physicians who work in U.S. correctional facilities face challenging working conditions, dual loyalties to patients and employers, and a tension between reasonable medical practices and the prison rules and culture. In recent years, physicians have increasingly confronted a new challenge: the prolonged solitary confinement, or segregation, of prisoners with serious mental illness. This prevalent corrections practice and the difficulties in providing access to care in these settings have received scant professional or academic attention (3).

Segregated inmates are isolated from the general correctional population and receive services and activities apart from other inmates. For the purposes of this position statement, segregation refers to conditions of confinement characterized by an incarcerated person generally being locked in their cell for 23 hours or more per day (4). Inmates may be segregated for institutional safety reasons (administrative segregation), disciplinary reasons (disciplinary segregation), or personal safety (protective custody) (5). Correctional systems vary regarding the specific conditions of confinement in segregation units (e.g., one to two inmates in a cell, inmate access to a radio or television, other property restrictions, visitation privileges, etc.). The definition of "prolonged segregation" will, in part, depend on the conditions of confinement. In general, prolonged segregation means duration of greater than 3-4 weeks.

Several studies have shown that inmates with serious mental illness have more difficulty adapting to prison life than do inmates without a serious mental illness. Morgan, Edwards, and Faulkner (6) reported that seriously mentally ill prisoners were less able to successfully negotiate the complexity of the prison environment, resulting in an increased number of rule infractions leading to more time in segregation and in prison. Lovell and Jemelka (7, 8) found that inmates with serious mental illnesses committed infractions at three times the rate of non-seriously mentally ill counterparts.

Placement of inmates with a serious mental illness in these settings can be contraindicated because of the potential for the psychiatric conditions to clinically deteriorate or not improve (6, 10). Inmates with a serious mental illness who are a high suicide risk or demonstrating active psychotic symptoms should not be placed in segregation housing as previously defined and instead should be transferred to an acute psychiatric setting for stabilization.

### References

1. Metzner JL: Guidelines for psychiatric services in prisons. Crim Behav Ment Health 3:252–67, 1993
2. Morrissey JP, Swanson JW, Goldstrom I, Rudolph L, Manderscheid RW: Overview of Mental Health Services by State Adult Correctional Facilities: United States, 1988. Washington, DC: U.S. Department of Health and Human Services, publication (SMA)93-1993, 1993, pp 1–13)
3. Metzner JL, Fellner J: Solitary Confinement and Mental Illness in U.S. Prisons: A Challenge for Medical Ethics. J Am Acad Psychiatry Law 38:104–8, 2010
4. American Psychiatric Association. Psychiatric Services in Jails and Prisons, 2nd Edition. Washington, DC: American Psychiatric Association, 2000
5. National Commission on Correctional Health: Standards for Mental Health Services in Correctional Facilities. Pages 60 – 61, 2008
6. Work Group on Schizophrenia: American Psychiatric Association practice guidelines: practice guideline for the treatment of patients with schizophrenia. Am J Psychiatry 154(suppl):1–63, 1997
7. Morgan DW, Edwards AC, Faulkner LR: The adaptation to prison by individuals with schizophrenia. Bulletin of the American Academy of Psychiatry and the Law, 21, 427-433, 1993
8. Lovell D, Jemelka R: When inmates misbehave: The costs of discipline. The Prison Journal, 76, 165-179, 1996
9. Lovell D, Jemelka R: Coping with mental illness in prison. Family & Community Health, 21, 54-66, 1998.
10. Metzner JL, Dvoskin JA: An Overview of Correctional Psychiatry. Psychiatric Clinics N Am, 29: 761-772, 2006

© Copyright, American Psychiatric Association, all rights reserved.