KAMALA D. HARRIS
Attorney General of the State of California
JONATHAN L. WOLFF
Senior Assistant Attorney General
JAY C. RUSSELL
Supervising Deputy Attorney General
DEBBIE VOROUS - 166884
PATRICK McKINNEY - 215228
Deputy Attorneys General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
Telephone: (415) 703-5500
Facsimile: (415) 703-5843
Email: Patrick.McKinney@doj.ca.gov

HANSON BRIDGETT LLP
JERROLD C. SCHAEFER - 39374
PAUL B. MELLO - 179755
WALTER R. SCHNEIDER - 173113
SAMANTHA D. WOLFF - 240280
MEGAN OLIVER THOMPSON - 256654
PAUL B. GRUWELL - 252474
425 Market Street, 26th Floor
San Francisco, California 94105
Telephone: (415) 777--3200
Facsimile: (415) 541-9366
pmello@hansonbridgett.com

Attorneys for Defendants

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

## AND THE NORTHERN DISTRICT OF CALIFORNIA

## UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

## PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| RALPH COLEMAN, et. al.,<br><br>Plaintiffs,<br><br>v.<br><br>EDMUND G. BROWN, JR., et al.,<br><br>Defendants. | CASE NO. 2:90-cv-00520 LKK JFM P<br><br>**DECLARATION OF KATHY BLACK-DENNIS IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' SUPPLEMENTAL BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO VACATE**<br><br>**THREE-JUDGE COURT** |
| MARCIANO PLATA, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>EDMUND G. BROWN, JR., et al.,<br><br>Defendants. | CASE NO. C01-1351 TEH<br><br>**THREE-JUDGE COURT** |

/ / /

/ / /

5032538.1

I, Kathy Black-Dennis, declare as follows,

1. I am competent to testify to the matters set forth in this declaration and if called upon, I would and could so testify. I submit this declaration in support of Defendants' Opposition to Plaintiffs' Supplemental Brief in Opposition to Defendants' Motion to Vacate.

2. I have worked in the correctional field for 35 years. In my current role as Director of Standards and Accreditation for the American Correctional Association (ACA), I am responsible for the oversight and management of the Standards and Accreditation Department, which develops and promulgates new standards, revises existing standards, coordinates the accreditation process for all correctional components of the criminal justice system, conducts semi-annual accreditation hearings, provides technical assistance to correctional agencies, and trains consultants who are involved in the accreditation process. I am familiar with the contract to review California Department of Corrections and Rehabilitation (CDCR) facilities for compliance with ACA standards and am also familiar with the work done by California officials to prepare CDCR facilities to meet the strict standards set forth by the ACA.

3. The ACA is a national non-profit, tax-exempt organization a primary focus of which is to champion the cause of corrections and correctional effectiveness. The ACA develops standards applicable to correctional facilities and operates a voluntary accreditation program for correctional facilities across the country. A copy of the Agency Manual of Accreditation Policy and Procedure describing ACA's accreditation process is attached hereto as Exhibit A (and can be obtained on the internet at http://aca.org/standards/pdfs/AccreditationPolicyProcedure.pdf).

4. ACA standards are the national benchmark for the effective operation of correctional facilities throughout the United States. These standards address services, programs and operations essential to good correctional management, including administrative and fiscal controls, staff training and development, physical plant, safety and emergency procedures, sanitation, food service, rules and discipline, and health

5032538.1

care. Standards reflect practical, up-to-date policies and procedures that safeguard the life, health and safety of staff and offenders.

5. ACA establishes standards through its Standards Committee, which continually revises the standards based on changing practices, current case law and agency experiences. Those standards approved by the committee reflect a consensus of the views of corrections professionals, architects, doctors and legal experts.

6. ACA's current Standards for Adult Correctional Institutions (4th edition) is the set of standards against which CDCR facilities were judged during their accreditation reviews. Relevant portions of ACA's 2012 Standards Supplement are attached hereto as Exhibit B.

7. Standards promulgated by the ACA are used by lawyers, judges, county administrators, academia and advocacy groups throughout the country as a tool to ensure the basic constitutional rights of the offender, while serving to protect staff and the public at large.

8. ACA Standards are classified into two categories: mandatory and non-mandatory. To be awarded accreditation, an applicant correctional facility must be found upon inspection to comply with 100% of the mandatory standards and at least 95% of the non-mandatory standards applicable to the facility.

9. Health care is a significant focus of ACA's Standards for Adult Correctional Institutions. In fact, roughly half of the mandatory standards address heath care, and approximately 120 of the 530 total standards deal with health care related issues.

10. The ACA also evaluates conditions of confinement and quality of life in making decisions on awarding accreditation. Our standards address the impact of population and population density on an institution's ability to maintain an appropriate correctional environment.

11. While ACA maintains that single-celling is preferable, double-celling (housing two offenders in the same cell) is a common practice in many states and also in facilities under the jurisdiction of the Federal Bureau of Prisons. There has been an

evolution in thinking on this issue, which has also impacted ACA's standards. During the 1980s and 1990s, single-celling was the industry standard and was reflected in ACA's standards. Since that time, however, ACA has eliminated the requirement for single-celling from its standards and no longer mandates that a prison system or individual prison stay at or below its stated "design capacity" or "rated capacity" in order to receive accreditation. One reason for this is that states differ greatly in how they define their "rated capacity" or design capacity." In fact, double-celling has become an acceptable practice throughout the nation. Double-celling will not, by itself, prevent an institution from receiving ACA accreditation.

12. Individual states use differing terminology to set out their correctional facilities' operational capacity. In fact, there is great variance between states on what they call their "design" or "rated" capacity. I am familiar with CDCR's current policy that an institution's "design capacity" is based upon housing one inmate per cell. I am unaware of any other state that uses California's current methodology of determining design capacity on the basis of housing one inmate per cell. It is customary for states and the Federal Bureau of Prisons to house above what, under California policy, would be considered their "design capacity" by double-celling inmates.

13. State correctional facilities and the Federal Bureau of Prisons can safely and effectively operate facilities with more than one inmate per cell. Housing inmates in such a way does not, in and of itself, preclude accreditation by the ACA.

14. ACA was aware of the class action litigation against the California Department of Corrections and Rehabilitation (CDCR) when it began its accreditation inspections of California correctional facilities. As a consequence of that awareness, we selected our most experienced auditors to review California's prisons.

15. ACA sent 3 experienced auditors to review each CDCR facility. Combined, the team has 180 years of experience evaluating, reviewing, and judging compliance with ACA standards.

16. ACA has reviewed the following CDCR facilities for ACA accreditation:

5032538.1

California State Prison - Solano, Central California Women's Facility, and California State Prison – Sacramento. Each of these facilities was able to meet accreditation standards even after considering the population density at those facilities, and each institution has received accreditation from ACA. Attached as Exhibit C are the final reports reflecting the review for each prison and also the final certificates of accreditation from ACA.

17. The current prison population and capacity has not been a bar to finding that the facilities are capable of functioning appropriately and safely. Additionally, ACA's initial audit results for two other California prisons indicate that it is likely that those facilities will be accredited in the future.

I declare under penalty of perjury that the foregoing is true and correct. Executed in Alexandria, VA on March 18, 2013.

*Kathy Black-Dennis*

_____
Kathy Black-Dennis

5032538.1