KAMALA D. HARRIS
Attorney General of California
JONATHAN L. WOLFF
Senior Assistant Attorney General
JAY C. RUSSELL
Supervising Deputy Attorney General
DEBBIE VOROUS, State Bar No. 166884
PATRICK R. MCKINNEY, State Bar No. 215228
WILLIAM DOWNER, State Bar No. 257644
Deputy Attorneys General
  455 Golden Gate Avenue, Suite 11000
  San Francisco, CA 94102-7004
  Telephone: (415) 703-3035
  Fax: (415) 703-5843
  E-mail: Patrick.McKinney@doj.ca.gov

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>  Plaintiffs,<br><br>v.<br><br>EDMUND G. BROWN JR., et al.,<br><br>  Defendants. | 2:90-cv-00520 LKK JFM PC<br><br>**REPLY DECLARATION OF HEATHER GREENWALD IN SUPPORT OF DEFENDANTS' MOTION TO TERMINATE UNDER THE PRISON LITIGATION REFORM ACT [18 U.S.C. § 3626(b)] AND TO VACATE THE COURT'S JUDGMENT AND ORDERS UNDER FEDERAL RULE OF CIVIL PROCEDURE 60(b)(5)** |

I, Heather Greenwald, declare as follows:

1. I am the Chief Psychologist at Richard J. Donovan State Prison in San Diego, California. I submit this declaration in support of the State's Reply Memorandum in support of its motion to terminate under the Prison Litigation Reform Act and to Vacate the Court's Judgment and Orders under Federal Rule of Civil Procedure 60(b)(5).

1

2. I have worked in CDCR since 2003, starting as a contract correctional psychologist with CDCR in 2003. I was hired as Staff Psychologist at North Kern State Prison in 2004. In 2009, I promoted to Senior Psychologist at Richard J. Donovan State Prison (RJD). In March 2011, I was appointed Chief Psychologist Acting at Richard J. Donovan and was appointed to the Chief Psychologist position in April 2011.

<u>RJD's Mental Health Staff Meets the Needs of its Inmate-Patients</u>

3. Dr. Pablo Stewart states on pages 21 and 23 of his Declaration filed March 16, 2013, that RJD vacancy rate of established positions as of January 2013 was 20.65%  In February 2013, additional hiring took place. As of March 2013, the vacancy rate is 15% for established positions including non-clinical positions. On page 40, paragraph 111 of Dr. Stewart's Declaration, he states that as of January 2013, RJD had a 50% vacancy rate for office technicians, a 28.6% functional vacancy rate for psychiatrists and a 20% vacancy rate for social workers. As of March 2013, nine additional office technicians have been hired, with only two positions currently vacant. Four psychiatry positions have been filled and contract coverage has been obtained with a functional vacancy rate of 6% as of March 2013. All social worker positions have been offered, with the exception of a .5 social worker position. 6 Recreation Therapists have also been hired. We are providing inmates with a constitutional level of care with our current staff.

<u>Medication Management Rebuttal Points</u>

4. In his Declaration, on page 53, Dr. Stewart cited medication management numbers for the Coleman Round 25 Monitoring Report including medication non-compliance, incomplete MARs, ordering of labs, timely completion of AIMS testing, and DOT distribution. RJD activation of the Medication Administration Process Improvement Program (MAPIP) was October 2012. Subsequent to Dr. Stewart's inspection tour, the current quarter's MAPIP audit demonstrated improvement in a variety of areas including labs, DOT and Medication Administration Record (MAR) documentation. Attached as Decl. Vorous Supp. Reply Mot. Terminate, Ex. 7-A is the current quarter's MAPIP audit.

2

Decl. Greenwald Supp. Defs.' Reply in Support of Termination Motion
(2:90-cv-00520 LKK JFM PC)

Individual Inmate Matters

5. On page 117, paragraphs 335-337 of his Declaration, Dr. Stewart opines that EOP inmate DD should have been referred sooner to DSH and should be waiting in MHCB until he is transferred to DSH ICF level of care. This inmate has multiple medical issues that interfere with his ability to participate in the typical EOP program. The inmate was placed on a modified EOP treatment plan that included increased 1:1 PC contacts; (a minimum of least 1 – 2 contacts per week, and when needed, daily PC contacts, daily psych tech rounds, and monthly contact by psychiatrists and more upon request, as needed.) He was placed on the High Risk List for increased monitoring while awaiting DSH and seen for IDTT every 30 days from August 2012 through January 2013, up until the time of his transfer to DSH in February 2013. This inmate did not meet the MHCB admission criteria. The eUHR documentation in this case is consistent with the action of the IDTT. Attached as Decl. Vorous Supp. Reply Mot. Terminate, Ex. 7-B is eUHR documentation for inmate DD.

6. In his Declaration on page 118, paragraphs 338-339, Dr. Stewart opines that IP EE is EOP and has been referred to DSH. He states he should have been referred sooner to DSH, and more significant efforts to engage the inmate in treatment and possible Keyhea should have been made. This inmate receives a detailed modified treatment plan. He is seen multiple times per week for special follow up, he is seen daily by psych techs and regularly and as needed by psychiatry. The eUHR documentation supports his level of care. Also, this inmate did not meet criteria for involuntary medication per his treating psychiatrist. The Attached as Decl. Vorous Supp. Reply Mot. Terminate, Ex. 7-C is eUHR documentation for inmate EE.

7. Inmate C identified on pages 150-151, paragraphs 422-424 of Dr. Stewart's Declaration, stated that when he stopped taking the medications "no doctor or nurse came to see him about it and no one came to encourage him to take his medications". According to the MAR, Inmate C refused his medication, five, non-consecutive times between July 3, 2012 and July 9, 2012. In accordance with CDCR policy, nursing sent a 128c medication refusal form to Mental Health. The patient was subsequently seen the same day by a psychologist. The clinician

3

Decl. Greenwald Supp. Defs.' Reply in Support of Termination Motion
(2:90-cv-00520 LKK JFM PC)

consulted with the psychiatrist on call and the patient was admitted to MHCB. The Attached as Decl. Vorous Supp. Reply Mot. Terminate, Ex. 7-D is eUHR documentation for inmate C.

8. On page 151, paragraphs 425 and 426 of Dr. Stewart's Declaration, he noted that a custody officer was present during inmate O's interview with a mental health clinician for suicide risk assessment on January 23, 2013. Dr. Stewart opined that due to sensitive nature of suicide assessment, he felt that it was inappropriate to have a C/O present during this type of interview. Primary Clinicians at RJD conduct confidential contacts unless safety and security of the inmate or staff requires presence of an officer. The SRE was completed on January 23, 2013 by the patient's primary clinician and clearly notes that an officer was present and the inmate needed to be cuffed due to safety concerns.. Attached as Decl. Vorous Supp. Reply Mot. Terminate, Ex. 7-E is the SRE dated January 23, 2013.

9. On pages 151-152, paragraph 427 of Dr. Stewart's Declaration, he reported that inmate AAA is in MHCB and needs to go to DSH. Dr. Stewart also noted the inmate was referred to DSH, is awaiting transfer, and is not taking medication. The inmate refused to take psychotropic medications, and involuntary medication was not a possibility because he did not meet the criteria for involuntary medication. Dr. Stewart acknowledged the inmate was already referred to DSH and is awaiting transfer. Attached as Decl. Vorous Supp. Reply Mot. Terminate, Ex. 7-F is relevant eUHR documentation for inmate AAA.

10. Page 152, paragraphs 428-430 of Dr. Stewart's Declaration discusses an inmate BBB who discharged from EOP and medications were discontinued by treating staff. Inmate's medication non-compliance was well documented and new medication was started when the inmate became willing to take medication. The eUHR documentation is consistent with MH staff action and the inmate's clinical presentation. Attached as Decl. Vorous Supp. Reply Mot. Terminate, Ex. 7-G is relevant eUHR documentation for inmate BBB.

11. On pages 56-57, paragraphs 160-163 of Dr. Stewart's Declaration, he discusses observations of Inmate C and Inmate D in the MHCB unit at RJD. He states both inmates exhibited symptoms "likely associated with antipsychotic medications (symptoms of tardive dyskinesia)." In the case of Inmate C the AIMS results in the record have fluctuated between 0
4

Decl. Greenwald Supp. Defs.' Reply in Support of Termination Motion
(2:90-cv-00520 LKK JFM PC)

and 2. As per RJD Chief Psychiatrist's analysis, the eUHR documentation is contrary to Dr. Stewart's suggestion that symptoms may be tardive dyskinesia (TD). The patient's symptoms are more likely suggestive of Parkinsonism due to antipsychotic medication. Throughout the record, psychiatrists document and address the Parkinsonism. The record also contains a notation of psychiatry counseling the inmate and encouraging him to take a medication to ease side effects which the inmate refused to take. In the case of Inmate D, Dr. Stewart opined "the marked involuntary movements I observed when interviewing Prisoner D, his movements appear to have worsened since that time." On October 25, 2011, an AIMS test revealed mild abnormal movements in the jaw, tongue, but otherwise normal. A progress note on that date reads, "…add another Cogentin dose Q12 to help with possible jaw stiffness EPS … I discussed with inmate-patient the TD symptoms evident on exam, and their potential worsening with continued antipsychotic exposure. He understands the risk and feels that he would decompensate without an antipsychotic." Again, on March 18, 2013, an AIMS test revealed minimal movements (extreme range of normal) in the perioral area and jaw (AIMS result = 2). A psychiatry note on that date demonstrates that the AIMS result had actually improved from the previous result. Attached as Decl. Vorous Supp. Reply Mot. Terminate, Ex. 7-H is eUHR documentation for inmate C and Attached as Decl. Vorous Supp. Reply Mot. Terminate, Ex. 7-I is eUHR documentation for inmate D.

Treatment Space Rebuttal Points

12. Dr. Stewart objects to the temporary use of a holding cell located outside the CTC, while an inmate awaits evaluation of a health care professional, before being placed into MHCB. Under RJD's procedure for evaluation of inmates who express suicidal ideation prior to being placed into MHCB, holding cells inside the CTC are utilized first, and outside holding cells are only used when inside holding cells are full.

13. In a footnote on page 100, on pages 101-103 and on page 124, Dr. Stewart applauded RJD for offering 14 to 15 hours of structured treatment to SNY EOPs. Dr. Stewart also states that Mainline EOP and ASU EOP inmates want more groups. Dr. Stewart also states that ASU inmates allege that they have one group per day sometimes, and that during their visit a group

5

Decl. Greenwald Supp. Defs.' Reply in Support of Termination Motion
(2:90-cv-00520 LKK JFM PC)

was let out 15 minutes early. RJD EOP offers an average of 14.5 treatment hours on SNY EOP, 12.11 in ML EOP, and 11.83 in ASU EOP. RJD closely monitors the hours offered to each inmate, the average hours offered to EOP inmates of each program, and the percentage of all EOPs offered ten hours weekly. Additionally, in ASU, we are expanding group offering times to include ICC time on Thursday, during which currently no groups are held. Treatment Hour Reports are attached as Decl. Vorous Supp. Reply Mot. Terminate, Ex. 7-J.

14. On pages 115-116, paragraphs 331 and 333, Dr. Stewart indicates that some EOP prisoners on the unit are placed on "group restricted status" as a punishment. Group Holds are temporary and are only used when an inmate's behavior disrupts the group to the extent that the other group members no longer benefit, or causes a security risk. Inmate CC was on a group hold from January 22, 2013 through February 11, 2013 for disruptive behavior. In brief, the inmate was given direction regarding appropriate group behavior and an opportunity to demonstrate improvement, but he was unable to comport himself within the group treatment format. He returned to groups February 12, 2013. Attached as Decl. Vorous Supp. Reply Mot. Terminate, Ex. 7-K is relevant eUHR documentation for inmate CC.

15. On page 84 of his Declaration, Dr. Stewart reports RJD uses Alternative Housing less than other institutions. He also notes the length of stay was past 24 hours on 43 instances from May through December of 2012. He notes the length of stay has become shorter. In the last six months, Alternative Housing was used only 34 times with an average length of stay of 15.55 hours, and with no inmates exceeding 24 hours. Attached as Decl. Vorous Supp. Reply Mot. Terminate, Ex. 7-L is a chart showing the use of Alternative Housing for past six months at RJD.

16. On page 136 of his Declaration, Dr. Stewart lists the transfer timelines for RJD inmates who are referred and accepted to a DSH program. The RJD DSH unit tracks and monitors inmate transfer timelines daily and reports monthly to Mental Health Quality Management. The average wait time for DSH transfers from RJD for February, 2013 was 11.5 days for APP and 24.2 days for ICF. Attached as Decl. Vorous Supp. Reply Mot. Terminate, Ex. 7-M are the detailed wait times and transfer stats for RJD.

6

Decl. Greenwald Supp. Defs.' Reply in Support of Termination Motion
(2:90-cv-00520 LKK JFM PC)

17. On pages 149 and 151 of Dr. Stewart's Declaration he noted RJD MHCB had open beds when they toured MHCB on February 12, 2013. Dr. Stewart reported the inmates awaiting transfer to DSH were appropriately housed in MHCB due to their need for a higher level of care. He indicated that although inmates needed the MHCB that their stay may impact RJD's length of stay duration and increase use of alternative housing. RJD average LOS for MHCB is under 10 days. MHCB LOS for non-DSH referrals was 6 days. Use of Alternative housing at RJD is low, totaling only 34 times in the last 6 months. The DSH transfer times, MHCB LOS and Alternative Housing usage is closely tracked, monitored and reported to Mental Health Quality Management monthly.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct. Executed in _____, California on March 20, 2013.

HEATHER GREENWALD

*(original signature retained by attorney)*

7

Decl. Greenwald Supp. Defs.' Reply in Support of Termination Motion
(2:90-cv-00520 LKK JFM PC)