KAMALA D. HARRIS
Attorney General of California
JONATHAN L. WOLFF
Senior Assistant Attorney General
JAY C. RUSSELL
Supervising Deputy Attorney General
DEBBIE VOROUS, State Bar No. 166884
PATRICK R. MCKINNEY, State Bar No. 215228
WILLIAM DOWNER, State Bar No. 257644
Deputy Attorneys General
  455 Golden Gate Avenue, Suite 11000
  San Francisco, CA  94102-7004
  Telephone: (415) 703-3035
  Fax: (415) 703-5843
  E-mail: Patrick.McKinney@doj.ca.gov

*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>                        Plaintiffs,<br><br>v.<br><br>EDMUND G. BROWN JR., et al.,<br><br>                        Defendants. | 2:90-cv-00520 LKK JFM PC<br><br>**REPLY DECLARATION OF KEVIN CHAPPELL, WARDEN OF SAN QUENTIN STATE PRISON, IN SUPPORT OF DEFENDANTS' MOTION TO TERMINATE UNDER THE PRISON LITIGATION REFORM ACT [18 U.S.C. § 3626(b)] AND TO VACATE THE COURT'S JUDGMENT AND ORDERS UNDER FEDERAL RULE OF CIVIL PROCEDURE 60(b)(5)** |

1. I am Kevin Chappell, Warden of San Quentin State Prison. I am responsible for day-to-day management of the institution and responsible to ensure the safety and care for all inmates housed at San Quentin State Prison. I submit this declaration in support of the State's reply Memorandum in support of its motion to terminate under the Prison

1

Litigation Reform Act and to Vacate the Court's Judgment and Orders under Federal Rule of Civil Procedure 60(b)(5).

2. I have read the declaration of Pablo Stewart, M.D., plaintiff's expert, dated March 14, 2013. In the scope of my duties, I am familiar with the subjects Dr. Stewart raises in his declaration. If called as a witness in this matter, I could and would testify to the matters set forth herein.

3. San Quentin State Prison is an institution that houses level II inmates. San Quentin also contains a Reception Center, an Administrative Segregation Unit (ASU), and a Specialized Care unit for the Condemned. San Quentin houses 1,114 inmates who are members of the Mental Health Services Delivery System (MHSDS), 1,077 of which are members of CCCMS and 37 are in the EOP program.

I.   **Treatment Space**

4. Dr. Stewart references the Special Master's report where condemned inmates complained of not having access to groups or activities, including yard time, despite being in the Specialized Care for the Condemned Program. (Expert Pablo Stewart Declaration, page 168, paragraph 456.) However, inmates in the SCCP initially will be seen at the Institutional Classification Committee usually within 10 days of arrival to the program. This addresses any safety and security concerns, yard designation, and the opportunity to participate in group setting therapy such as the dayrooms on the 4th floor of the Central Health Services Building (CHSB). Once classified, the inmates have the opportunity to participate in yard activities either on the 4th floor of the CHSB and/or the East Block yards. Many of the group activities are held within the 2nd and 4th floor of the CHSB and

2

the East Block yards. Inmates are assigned to programs all days of the week and are escorted to the destination by the assigned Health Care Access Unit (HCAU) custody staff.

5. Dr. Stewart alleges in paragraph 342 that the EOP Administrative Segregation Unit, also known as the "Carson Unit," is "dark, dirty, noisy, and chaotic." (Expert Pablo Stewart Declaration, page 127, paragraph 342.) In addition, Sr. Stewart also alleges that the amount of space given to these inmates is "very small and dimly lit" and lacks confidential space for treatment. (Expert Pablo Stewart Declaration, page 127, paragraph 342.) However, inmates are given adequate space and light and able to live in clean cells. There are three (3) office spaces within the unit that are capable of confidential interviews that have doors that shut. When non-custody staff members conduct confidential interviews with inmates, a custody staff member must stand as escort for the safety and security of the inmate and staff alike. There is a sanitation officer assigned to the unit that has two (2) inmate crew members that are responsible for the sanitation and cleaning of the unit on a daily basis. (See Decl. Chappell Supp. Reply Mot. Terminate, Ex. 9-U.)

6. Dr. Stewart, too, claims that there is no confidential space for inmates to be interviewed on the "Carson Unit" and that he himself had to interview inmates in an open doorway with staff nearby. (Expert Pablo Stewart Declaration, page 127, paragraph 342.) I can attest, however, that I was present during Dr. Stewart's tour of San Quentin which he bases his expert declaration. While Dr. Stewart was at San Quentin, he was allowed to speak with inmates, in various areas of the prison, including the condemned inmates. It is San Quentin's policy not to allow any civilian to be in a room alone with an inmate without custody nearby. Adequate space is given to allow for a quiet, confidential

3

discussion, but custody is near enough to provide safety measures, if necessary. Thus, it is my belief that this statement is taken out of context and I attest that not only did Dr. Stewart have adequate space and confidentiality at the time of his tour when needed, but that inmates on the "Carson Unit" are given the same treatment when necessary. It should also be noted that the "Carson Unit" is not the typical treatment area for patients in the MHSDS. If inmates prefer to go into one of the offices to speak with staff instead of retreating to the CHSB, they may (and do so) in a closed office on the "Carson Unit" floor.

7. Dr. Stewart further claims that there are generally poor living conditions and lack of confidentiality on the "Carson Unit." (Expert Pablo Stewart Declaration, page 127, paragraph 343.) However, the amount of space and confidentiality currently given to inmates is not only adequate, but above constitutionally required levels. In addition, it should be noted that San Quentin's Central Health Services Building (CHSB) has five (5) new individual rooms specifically designed for individual confidential interviews with Administrative Segregation Unit (ASU) inmates and other inmate-patients. I can attest that these spaces are clean, quiet, and comfortable and can be readily accessed by clinicians using access-to-care team custody escorts.

## II. Welfare Checks

8. In regards to Dr. Stewart's allegation in his declaration in paragraph 253, welfare checks of inmates are "not adequately staggered." (Expert Pablo Stewart Declaration, page 97, paragraph 253.) Welfare checks are, in fact, done on a daily basis for every inmate at

4

staggered intervals in order to maintain and ensure safety and security within the institution. (See exhibit Decl. Chappell Supp. Reply Mot. Terminate, Ex. 9-V.)

III. **Condemned Population**

9. Furthermore, Dr. Stewart also alleges that the condemned population does not receive adequate medication management and recreational therapy. (Expert Pablo Stewart Declaration, page 168, paragraph 456.) However, Inmates in the Specialized Care Program for the Condemned initially will be seen at the Institutional Classification Committee (ICC) usually within 10 days of arrival to the program. This allows staff to address any safety and security concerns, yard designation and the opportunity to participate in group setting therapy such as the dayrooms on the 4th floor of the CHSB. Once classified, the inmates do have the opportunity to participate in yard activities either on the 4th floor of the CHSB and/or the East Block yards. Many of the group activities are held within the 2nd and 4th floor of the CHSB and the East Block yards. Inmates assigned to programs regardless of what day of the week they are scheduled are escorted to the destination by the assigned HCAU custody staff.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct. Executed in ＿＿San Quentin＿＿, California on March 21, 2013.

＿＿/s/ Kevin Chappell＿＿
Kevin Chappell, Warden at San Quentin State Prison
*(original signature retained by attorney)*

5

Decl. Kevin Chappell, Warden SQSP_Supp. Defs.' Reply in Support of Termination Motion
(2:90-cv-00520 LKK JFM PC)