KAMALA D. HARRIS
Attorney General of California
JONATHAN L. WOLFF
Senior Assistant Attorney General
JAY C. RUSSELL
Supervising Deputy Attorney General
DEBBIE VOROUS, State Bar No. 166884
PATRICK R. MCKINNEY, State Bar No. 215228
WILLIAM DOWNER, State Bar No. 257644
Deputy Attorneys General
 455 Golden Gate Avenue, Suite 11000
 San Francisco, CA 94102-7004
 Telephone: (415) 703-3035
 Fax: (415) 703-5843
 E-mail: Patrick.McKinney@doj.ca.gov

*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>EDMUND G. BROWN JR., et al.,<br><br>Defendants. | 2:90-cv-00520 LKK JFM PC<br><br>**REPLY DECLARATION OF KIM HOLLAND IN SUPPORT OF DEFENDANTS' MOTION TO TERMINATE UNDER THE PRISON LITIGATION REFORM ACT [18 U.S.C. § 3626(b)] AND TO VACATE THE COURT'S JUDGMENT AND ORDERS UNDER FEDERAL RULE OF CIVIL PROCEDURE 60(b)(5)** |

I, Kim Holland, declare as follows:

1. I am the warden at California Correctional Institution located in Tehachapi, California. I submit this declaration in support of the State's Reply Memorandum in support of its motion to terminate under the Prison Litigation Reform Act and to Vacate the Court's Judgment and Orders under Federal Rule of Civil Procedure 60(b)(5).

1

2. I have worked for CDCR since 1989 and have 24 ½ years of experience with the department. I began my career as a correctional officer in 1989 at Avenal State Prison. In 1993, I transferred to North Kern State Prison (NKSP) in Delano CA., and later that same year I promoted to Correctional Sergeant. In 2000, I promoted to Correctional Lieutenant at the California Substance Abuse Treatment Facility and State Prison (CSATF) in Corcoran CA. In 2004, I promoted to Correctional Captain at NKSP. In 2006, I promoted to Associate Warden of Health Care Operations at SATF. In 2009, I promoted to Chief Deputy Warden at the California Correctional Institution (CCI). In January of 2012, I became the acting warden at CCI. In March of 2013, I was confirmed as the warden at CCI.

3. On page 32, paragraph 55 of Dr. Haney's Declaration, he states at California Correctional Institution there were no plans to build additional treatment space for mental health programming. Even though there are no plans to build additional treatment space, the current space meets the mental health care needs of the inmate population.

4. On page 108, paragraph 229 of Dr. Haney's Declaration, he states the overall population of California Correctional Institution at the time of declaration was at 162.1% design capacity; previously 203%. Despite this population the current staffing and space meet the mental health care needs of the inmate class members. On the date of this tour our inmate population was 4521 and we were at 167% of design capacity

5. On page 110, paragraph 232 of Dr. Haney's Declaration, he states there is a lack of appropriate treatment space. The quote Dr. Haney attributes to a Deputy Warden was made in 2008, since then, there has been an increase in health care access and improvement in mental health care staffing. Since 2008, CCI has significantly increased the health care access custody staff commensurate with standard staffing and the review conducted by the Receiver's office. All facilities have increased access to mental health. The Security Housing Units conduct MH appointments in the non-contact booths and utilize the holding cells in specific Dining Halls as requested by MH staff. This enables CCI to provide the custody component to ensure inmates receive timely access to care and treatment. There are additional expansions and modifications

2

Decl. Holland____ Supp. Defs.' Reply in Support of Termination Motion
(2:90-cv-00520 LKK JFM PC)

being considered through the Health Care Facilities Improvement Program. These modifications will increase clinical, MH treatment space, pharmacy, lab etc.

6. On pages 155 and 116, paragraph 243 of Dr. Haney's Declaration he stated that as a result of overcrowding due to transfer backlogs, there was no appropriate place to put inmates awaiting transfer. The issue of inmates waiting for transfer to an appropriate bed at Kern Valley State Prison is a statewide one and not just specific to California Correctional Institution. Solutions for this issue are being sought out statewide. Inmates in Administrative Segregation Unit are still receiving at minimum, treatment as per the *Coleman* approved program guidelines. Additionally, the Classification and Parole Representatives (C&PR's) request bus seats weekly from the Classification Services Unit for all inmates endorsed for transfer to other institutions; including all class members. The C&PR continues to monitor and track the class members and the Institutional Classification Committee reviews all cases to ensure their endorsements remain current.

7. On page 116, paragraph 244 of Dr. Haney's Declaration he speculated that California Correctional Institution could not meet the placement and treatment needs of the mentally ill. Inmates placed in the Outpatient Housing Unit are provided a mattress and blanket. The mattress is placed on the ground out of safety concerns for the inmate. Inmates, whether in Outpatient Housing Unit, Administrative Segregation Unit or Segregated Housing Unit, still receive, at minimum, treatment as per Coleman approved program guidelines.

8. On pages 119 and 121, paragraph 251 of Dr. Haney's Declaration he stated that inmate NN was placed on SI watch while in Administrative Segregation waiting for different bed and received a rules violation report. Inmate NN received the referenced RVR while he was in the hospital for medical reasons, following Outpatient Housing Unit placement was also for medical reasons, not psychological. NN was elevated to Enhanced Outpatient Program LOC on February fourth, 2013 and has been receiving treatment within Coleman approved program guidelines that require Inmate-patients awaiting Enhanced Outpatient Program transfer to be seen on a weekly basis by the PC. In addition, he was added to the group therapy waitlist and provided group
3

therapy as available. According to MHTS.Net, Inmate NN spends an average of 35 minutes with his clinician for each clinical contact. Under the Coleman Program Guide requirements, group therapy is not required in Correctional Clinical Case Management System programs, nor is it required for Enhanced Outpatient Program inmates awaiting transfer to an Enhanced Outpatient Program facility. However, Group therapy is offered to some Administrative Segregation Unit and Segregated Housing Unit inmates.

9. On page 121, paragraph 254 of Dr. Haney's Declaration he stated inmate OO was a high risk for suicide but placed in Administrative Segregation Unit due to lack of beds. Therapeutic programming at California Correctional Institution Administrative Segregation Unit is in accordance and goes beyond the Coleman approved program requirements for Administrative Segregation Unit, including daily contact with licensed psychiatric technicians, weekly or more if clinically indicated contacts with the primary clinician and group therapy as available.

10. On page 121, paragraph 255 of Dr. Haney's Declaration, he stated that inmate did not like to leave his cell in the Administrative Segregation Unit., because officers often would do a full strip search on him. Inmates are required to be strip searched for safety and security precautions as is the standard for all Administrative Segregation Units.

11. On page 122, paragraph 258 of Dr. Haney's Declaration, he stated that mentally ill patients are sent to Segregated Housing Unit with harsh conditions. Treatment is provided in the Segregated Housing Unit as per *Coleman*-approved program guide requirements. Some inmates state that they prefer the Segregated Housing Unit for various reasons including less prison politics, feeling 'safer' and fewer opportunities to get in trouble

12. Page 125, paragraph 266 of Dr. Haney's Declaration, he stated inmate TT was sent to Administrative Segregation Unit waiting for Special Needs Yard placement, now in Segregated Housing Unit waiting for placement. Inmate TT was transferred to California Correctional Institution Segregated Housing Unit from Salinas Valley Psychiatric Program for participation in a riot with a Minimum Eligible Release Date of September, 25, 201. During this time, he

received 3 serious Rules Violation Reports and subsequent Segregated Housing Unit Terms. Based on his disciplinary history he was assessed an Indeterminate Segregated Housing Unit Term and was endorsed by the Classification Staff Representative for California Correctional Institution Segregated Housing Unit Indeterminate. During each of the Institution Classification Committee's a mental health representative was present at the committee.

13. On page 125, paragraph 267 of Dr. Haney's Declaration, he stated inmate TT's only time out of his cell, or minimal contact with others, is when he goes to yard. Dr. Haney quoted the inmate as stating, "I go from my cell to a cage. What's the difference?" Inmates are afforded out-of-cell time at yard, which provides the opportunity for fresh air, room to exercise and a chance to socialize with other people for hours at a time, multiple times per week. The inmates do have the right to refuse to take advantage of this opportunity, but by doing so; they choose to forfeit the benefits that come with it.

14. On page 127, paragraph 271 of Dr. Haney's, he states that cells retrofitted for suicide prevention are dismal, dank and dirty and that he officer in the unit said that they do have to use non-intake, non-retrofitted cells at times when there are more prisoners coming in to Administrative Segregation Unit than available intake cells. Additionally there has not been a need to deviate from the *Coleman* expectations for housing new arrivals; the Coleman intake cells are not required when the inmates can be double-celled and the intake cells are only required for the first 72 hours of placement.

15. On pages 127 and 128, paragraph 272 of Dr. Haney's Declaration, he states that the management cells are barren and dirty. The image attached in Photo Exhibit JJ contains the inmate's property and mattress. Inmates that are staff assaultive or cause significant disruption to institutional operations are oftentimes placed on Management Cell Status for a specific amount of time. They are incrementally given back personal property etc. During this timeframe, the inmate(s) are afforded access to all health care, mental health care, exercise yard etc.

16. On page 129, paragraph 274 of Dr. Haney's, he states that no distinction was made in the Outpatient Housing Unit between mental health patients who had been in segregation for a

5

disciplinary reason, had been in segregation for non-disciplinary reasons, or who had come to the Outpatient Housing Unit from general population or Special Needs Yard housing. Instead, a categorical policy or practice was applied that subjected all of them to restraints and cages, regardless of their security or clinical needs. The Outpatient Housing Unit has two tiers East and West tier, Outpatient Housing Unit admission and placement is at the discretion of Healthcare (medical and mental health). The east tier is used for medical Special Needs Yard inmates. The west side is used for Administrative Segregation Unit / Segregated Housing Unit inmates medical and mental health admits. Therefore, due to the due safety and security concerns of escorting inmates of different classification levels, (Administrative Segregation Unit /Segregated Housing Unit/and Sensitive Needs Yard general population) inmates' movement is done in restraints on the west tier. The expert claims no distinction between in segregation for disciplinary or non disciplinary reasons. The inmates were treated as segregated inmates regardless of reason of placement for security concerns. Special Needs Yard inmates housed on the east tier were not escorted in restraints.

17. On pages 129 and 130 paragraph 275 of Dr. Haney's Declaration, he stated inmate XX had been brought to the Outpatient Housing Unit in restraints, and he was put in restraints to be moved between his Outpatient Housing Unit cell and the treatment cage. Inmate XX was housed in the Outpatient Housing Unit west tier in close proximity to Administrative Segregation Unit and Segregated Housing Unit inmates. The inmate was escorted in restraints for the safety of staff and inmates.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct. Executed in Tehachapi, California on March 21, 2013.

_____
[Kim Holland]
*(original signature retained by attorney)*

6

Decl. Holland____ Supp. Defs.'Reply in Support of Termination Motion
(2:90-cv-00520 LKK JFM PC)