KAMALA D. HARRIS
Attorney General of California
JONATHAN L. WOLFF
Senior Assistant Attorney General
JAY C. RUSSELL
Supervising Deputy Attorney General
DEBBIE VOROUS, State Bar No. 166884
PATRICK R. MCKINNEY, State Bar No. 215228
WILLIAM DOWNER, State Bar No. 257644
Deputy Attorneys General
 455 Golden Gate Avenue, Suite 11000
 San Francisco, CA  94102-7004
 Telephone:  (415) 703-3035
 Fax:  (415) 703-5843
 E-mail:  Patrick.McKinney@doj.ca.gov

*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>EDMUND G. BROWN JR., et al.,<br><br>Defendants. | 2:90-cv-00520 LKK JFM PC<br><br>**REPLY DECLARATION OF ASSOCIATE WARDEN J. BUCKLEY IN SUPPORT OF DEFENDANTS' MOTION TO TERMINATE UNDER THE PRISON LITIGATION REFORM ACT [18 U.S.C. § 3626(b)] AND TO VACATE THE COURT'S JUDGMENT AND ORDERS UNDER FEDERAL RULE OF CIVIL PROCEDURE 60(b)(5)** |

I, J. Buckley, declare as follows:

1. I submit this declaration in support of the State's Reply Memorandum in support of its motion to terminate under the Prison Litigation Reform Act and to Vacate the Court's Judgment and Orders under Federal Rule of Civil Procedure 60(b)(5).

1

2. This declaration responds to the special master's claims concerning an unnecessary three-minute delay in performing CPR on inmate X in 2011, failure to conduct timely custody checks on inmate X, failure to perform CPR on inmate G in 2012, and interference with medical response to inmate H's suicide in 2012.

**Background**

3. I have been with the California Department of Corrections and Rehabilitation for twenty years. For the past three years in particular, I have been an Associate Warden with Pleasant Valley State Prison (PVSP).

4. In my current assignment, I manage the day-to-day operations of Facilities C through E and the Administrative Segregation Units (Ad-Seg). My duties and responsibilities, as they relate to Ad-Seg, include ensuring that the custody officers (1) respond to medical emergencies appropriately and promptly; (2) conduct welfare checks on high-risk suicidal inmates and all newly arrived inmates in Ad-Seg; and (3) conduct monthly emergency-response drills, including mock suicides and attempts.

5. In my prior managerial assignments, I coordinated efforts between the custody and medical staff to comply with several class-action orders, including the *Coleman* plan. I also routinely audited PVSP's compliance efforts with the court orders and took necessary steps to remedy non-compliance issues. For example, I was member of the prison's Emergency Medical Response Review Committee which addresses, among other issues, emergency medical responses and coordination between custody and healthcare staff.

**Response to Special Master's Claim of an Unnecessary Three-Minute Delay in Performing CPR on Inmate X**

6. In his 2011 suicide report, the special master claimed that PVSP's custody staff unnecessarily delayed performing CPR on inmate X by three minutes. The special master is wrong for the reasons explained below.

7. After reviewing the suicide incident report for compliance with prison procedures, I learned that the custody and medical staff were on the scene together when inmate X's cell door

first opened and the cellmate was securely taken out of the cell.  Given the immediate presence of the medical staff, the responding officers appropriately deferred performing CPR to the two medical emergency responders, supervising nurse Boyles and vocational nurse Trujillo.  Thus, there was no unnecessary delay in administering CPR on inmate X.

8. Moreover, any brief delay in emergency response was the result of the responding officer taking necessary safety precautions before opening the cell door.  The suicide occurred in the general population at around 5:30 a.m. during first watch (10 p.m. to 6 a.m.), when there were fewer staff members.  Before opening a cell door, there should be at least two officers present for every inmate in the cell.  This 2:1 ratio is required in Ad-Seg, and required in the general population only if specific circumstances warrant it.  For example, a responding officer was seriously injured when he entered a cell by himself to respond to an apparent suicide.  The inmate in that cell had staged the suicide to lure the responding officer into his cell, and stabbed the officer with a weapon.  The inmate later confessed that he would have killed the responding officer had the officer been someone else—i.e., his intended target.  Thus, an officer faces a significant risk of harm when entering a cell alone.

9. In inmate X's case, there were two inmates in the cell, and therefore the first responding officer could not immediately determine whether the emergency involved a potential suicide or a homicide.  For safety reasons, the initial responding officer summoned additional custody staff to the scene before opening the cell door.  Because the other two officers on the yard were preoccupied with inmate escorts, the additional custody staff came from another prison yard.  When the additional custody staff arrived moments later, they opened the cell door and immediately secured inmate X's cellmate in handcuffs and removed him from the cell.  Medical staff arrived at the same time that the cell door was opened and they immediately began emergency response procedures, including CPR, on inmate X.

10. For these reasons, the special master's claim that PVSP custody staff unnecessarily delayed performing CPR on inmate X by three minutes is incorrect.  Rather, given the circumstances mentioned above, the response time for CPR was immediate as soon as custody

3

Decl. Assoc. Warden J. Buckley Supp. Defs.' Reply in Support of Termination Motion
(2:90-cv-00520 LKK JFM PC)

staff had secured the cellmate and ensured that the first responders could safely initiate emergency response procedures.

**Response to Special Master's Claim That Staff Failed to Conduct Timely Custody Checks**

11. The special master also claimed that inmate X's suicide may have been preventable had the officers conducted timely custody checks on him. Based on my review of the incident package, however, I found no issue with the timeliness of the custody checks. Custody checks during first watch in the general population are conducted at 12:01 a.m., 3 a.m., and 5 a.m. daily, as well as logged daily. During those hours, a floor officer looks into each cell through the cell window for unusual activity. When custody staff performed the last custody check at 5 a.m. before inmate X's suicide, they found no suspicious activity in his cell. About thirty minutes later, custody staff was summoned to inmate X's cell to respond to a medical emergency.

**Response to Special Master's Claim That Custody Staff May Not Have Initiated CPR on Inmate G**

12. The special master was unclear from the 2012 suicide report whether custody staff promptly performed CPR on inmate G. Based on my review of the Executive Suicide Report Summary, there is no question that custody staff promptly initiated CPR on inmate G as first responders on the scene.

**Response to Special Master's Claim That Custody Staff Prematurely Turned Inmate H's Suicide Into a Crime Scene**

13. The special master's 2012 suicide report faulted the custody staff for prematurely turning inmate H's suicide into a crime scene. Based on my review of the incident package concerning this suicide, the responding officers were informed by a registered nurse that rigor mortis had set in and there was no need for CPR measures. The officers had no basis to overrule the registered nurse on the scene. Therefore, in accordance with protocol, the custody staff immediately secured the crime scene and collected evidence. While there may have been serious questions concerning the nurse's determination in hindsight, the custody staff will add this

4

Decl. Assoc. Warden J. Buckley Supp. Defs.'Reply in Support of Termination Motion
(2:90-cv-00520 LKK JFM PC)

scenario to its emergency drills at the next managerial meeting to better prepare the custody and medical staff for a future emergency.

14. I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct. Executed in Coalinga, California on March 20, 2013.

                      /s/ J. Buckley, AW
                      J. Buckley
                      Associate Warden
                      Housing C, D, E and Administrative Segregation
                      Pleasant Valley State Prison
                      *(original signature retained by attorney)*

CF1997CS0003
20668591.docx

5

Decl. Assoc. Warden J. Buckley Supp. Defs.' Reply in Support of Termination Motion
(2:90-cv-00520 LKK JFM PC)