KAMALA D. HARRIS
Attorney General of California
JONATHAN L. WOLFF
Senior Assistant Attorney General
JAY C. RUSSELL
Supervising Deputy Attorney General
DEBBIE VOROUS, State Bar No. 166884
PATRICK R. MCKINNEY, State Bar No. 215228
WILLIAM DOWNER, State Bar No. 257644
Deputy Attorneys General
  455 Golden Gate Avenue, Suite 11000
  San Francisco, CA 94102-7004
  Telephone: (415) 703-3035
  Fax: (415) 703-5843
  E-mail: Patrick.McKinney@doj.ca.gov

*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>                Plaintiffs,<br><br>v.<br><br>EDMUND G. BROWN JR., et al.,<br><br>                Defendants. | 2:90-cv-00520 LKK JFM PC<br><br>**REPLY DECLARATION OF BRENDA M. CASH IN SUPPORT OF DEFENDANTS' MOTION TO TERMINATE UNDER THE PRISON LITIGATION REFORM ACT [18 U.S.C. § 3626(b)] AND TO VACATE THE COURT'S JUDGMENT AND ORDERS UNDER FEDERAL RULE OF CIVIL PROCEDURE 60(b)(5)** |

I, Brenda M. Cash, declare as follows:

1. I am the acting Warden at California Institution for Men (CIM) in Chino, California. I submit this declaration in support of the State's Reply Memorandum in support of its motion to terminate under the Prison Litigation Reform Act and to Vacate the Court's Judgment and Orders under Federal Rule of Civil Procedure 60(b)(5).

1

Decl. of Brenda M. Cash    Supp. Defs.' Reply in Support of Termination Motion
(2:90-cv-00520 LKK JFM PC)

RECEIVED 03/21/2013 08:21

2. I have worked at CDCR for 27 years. I became acting Warden of CIM on Sept 4, 2012.

3. On page 10 of his declaration, Dr. Edward Kaufman, M.D., states that the institution population level and staffing cuts are causing CIM to not be compliant with Program Guide requirements. This is not true. CIM is currently providing a constitutionally required level of treatment for mental health inmate patients.

4. On page 11, Dr. Kaufman states that he spoke with a number of inmates who told him that they often missed meals because they were waiting to see their doctors. Dr. Kaufman opines that a shortage in custody staff causes delays in escorts and results in missed meals for inmate patients. Mr. Craig Haney expresses a similar concern on page 59 of his declaration. I attend Men's Advisory Council meetings with inmates on a monthly basis, during which inmates may voice concerns. At no time has missing meals for mental health doctor visits been raised as a concern at these meetings.

5. On page 11, Dr. Kaufman states that he spoke with a number of inmates who told him that they frequently had to wait several hours in individual treatment modules to see their doctors. Mr. Haney expresses a similar concern on page 59 of his declaration. I attend Men's Advisory Council meetings with inmates on a monthly basis, during which inmates may voice concerns. At no time has extensive wait times in individual treatment modules for mental health doctor visits been raised as a concern at these meetings.

6. On page 12, Dr. Kaufman cites CIM's Management Report to corroborate his claim that Assembly Bill 109 has caused the Administrative Segregation Unit (ASU) to fall short of meeting constitutional requirements in care of mental health inmate patients. This is inaccurate. The ASU has been significantly affected by Public Safety Realignment, as has CIM as a whole, but ASU still provides the required level of care to mental health inmate patients.

7. On page 23, Dr. Kaufman states that an unnamed psychologist told him that drug overdoses are very common at CIM, including meth, heroin, and ecstasy. Dr. Kaufman implies that this includes prescription drugs traded from other inmates. Under standard procedure at CIM designed to prevent the abuse of prescription medications, medication is administered in one of

2

Decl. of Brenda M. Cash   Supp. Defs.' Reply in Support of Termination Motion
(2:90-cv-00520 LKK JFM PC)

RECEIVED 03/21/2013 08:21

two ways: "Keep On Person," where the inmate is given a limited amount of medication for personal use as directed, or "Direct Observation Therapy," where medication is administered under direct observation, generally by a licensed vocational nurse, to ensure that the inmate patient successfully takes the medication and does not attempt to save, or "cheek," the medication for future trading. All psychotropic or other mental health-specific medications are administered under direct observation. While the use of illicit narcotics such as heroin or ecstasy by inmates is a pervasive problem in correctional facilities throughout the country, it has no bearing on CIM's ability to provide adequate mental health care to inmates.

8. On page 23, Dr. Kaufman states that an unnamed psychologist told him that gangs are a problem on CIM's Sensitive Needs Yards. While gangs are a pervasive problem in correctional facilities throughout the country, that has no bearing on CIM's ability to provide adequate mental health care to inmates.

9. On page 28, Dr. Kaufman voices concern that CIM engages in punitive practices directed at mental health patients, noting that he saw many patients wearing nothing but suicide resistant smocks while sleeping on the floor. CIM issues suicide resistant smocks and removes beds from holding cells to prevent inmates from using their clothing or surroundings to commit suicide. CIM does not issue suicide resistant smocks or remove beds for punitive reasons.

10. On page 28, Dr. Kaufman states that all patients have individual treatment modules during group therapy, and he complains that there is no documented need for the use of individual treatment modules for inmates during group therapy. This is incorrect. Inmates are placed in individual treatment modules to prevent inmates in the ASU from attacking each other or to prevent suicidal inmates from harming themselves.

11. On page 31, Dr. Kaufman states that CIM has created a new classification ("LOB," or "lack of bed") for inmates without other appropriate housing. Mr. Haney states the same on page 58 of his declaration. This is misleading for a number of reasons. While new intake inmates are sometimes placed in ASU due to lack of bed space, this virtually never lasts beyond a week and frequently the inmates leave ASU within one to two days. There is no official "LOB" classification at CIM.

3

Decl. of Brenda M. Cash  Supp. Defs.' Reply in Support of Termination Motion
(2:90-cv-00520 LKK JFM PC)

12. On page 31, Dr. Kaufman states that ASU at CIM is being used for non-disciplinary reasons. An inmate is appropriately placed in Administrative Segregation whenever the inmate's presence in general population presents a threat to other inmates or himself, endangers institution security, or jeopardizes the integrity of a criminal or serious misconduct investigation. There is no requirement that ASU be used only for disciplinary reasons.

13. On page 51, Dr. Kaufman says that "LOB" inmates in ASU go to yard only once a week. Mr. Haney also notes this on page 68 of his declaration. This is misleading. All ASU inmates are allowed at least ten hours a week of yard time, and sometimes more is allotted. Furthermore, while new intake inmates are sometimes placed in ASU due to lack of bed space, this virtually never lasts beyond a week, as bed space is constantly becoming available, and frequently the inmates leave ASU within one to two days.

14. On page 75, Mr. Haney states that an inmate and a psych tech both described a process for inmates expressing suicidal ideations wherein the inmate is stripped down to his underwear, placed in a cage, and forced to wait for several hours until a custody officer could escort the inmate to a mental health crisis bed. This is not an accurate description of the process. Upon reporting suicidal ideations, staff documents the report and refers the matter to the Chief of Mental Health, who then requests that the inmate be seen by a mental health clinician. There is no requirement that individual modules be used upon a report of suicidal ideation. There is also no requirement that inmates strip to their underwear prior to being referred to a clinician.

15. On page 54, Dr. Kaufman states that an Enhanced Outpatient Program inmate told him that all reception center inmates going to yard are stripped to their underwear and forced to walk across the yard in their shoes, socks, and underwear and cannot put their clothes back on until they cross another gate. This is not true. All inmates may be subject to strip searches when leaving or entering a secure area, but CIM does not have any policies forcing inmates to walk across yards wearing no clothes.

16. On page 56, Dr. Kaufman claims that CIM custody officers create a deliberately antagonistic relationship with the inmates by intentionally ignoring pleas for assistance, including refusing to let inmates leave a cell containing an overflowing toilet. No concerns have been

4

Decl. of Brenda M. Cash       Supp. Defs.' Reply in Support of Termination Motion
(2:90-cv-00520 LKK JFM PC)

RECEIVED  03/21/2013 08:21

mentioned in the Men's Advisory Council regarding any such deliberate indifference toward inmates. Additionally, an overflowing toilet creates safety concerns for staff as well as inmates due to water spillage on a housing tier, so staff would not ignore it.

17. On page 56, Dr. Kaufman states that several inmates have claimed that they have been treated more harshly as a result of a recent failed escape attempt. It is true that two inmates attempted to escape in January. These two inmates were not mental health patients. After interviewing the inmates after the unsuccessful escape attempt, our staff improved existing search procedures and security protocols to amend noted deficiencies. There has been no punitive action or restriction of yard time taken against other inmates due to this escape attempt.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct. Executed in Chino, California on March 20, 2013.

Brenda M. Cash

*(original signature retained by attorney)*

5

Decl. of Brenda M. Cash___ Supp. Defs.' Reply in Support of Termination Motion
(2:90-cv-00520 LKK JFM PC)

RECEIVED 03/21/2013 08:21