KAMALA D. HARRIS
Attorney General of California
JONATHAN L. WOLFF
Senior Assistant Attorney General
JAY C. RUSSELL
Supervising Deputy Attorney General
DEBBIE VOROUS, State Bar No. 166884
PATRICK R. MCKINNEY, State Bar No. 215228
WILLIAM DOWNER, State Bar No. 257644
Deputy Attorneys General
 455 Golden Gate Avenue, Suite 11000
 San Francisco, CA 94102-7004
 Telephone: (415) 703-3035
 Fax: (415) 703-5843
 E-mail: Patrick.McKinney@doj.ca.gov

*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>EDMUND G. BROWN JR., et al.,<br><br>Defendants. | 2:90-cv-00520 LKK JFM PC<br><br>REPLY DECLARATION OF RICK HILL IN SUPPORT OF DEFENDANTS' MOTION TO TERMINATE UNDER THE PRISON LITIGATION REFORM ACT [18 U.S.C. § 3626(b)] AND TO VACATE THE COURT'S JUDGMENT AND ORDERS UNDER FEDERAL RULE OF CIVIL PROCEDURE 60(b)(5) |

I, Rick Hill, declare as follows:

1. I am the Warden for Folsom State Prison (FSP) with the California Department of Corrections and Rehabilitation (CDCR). I submit this declaration in support of the State's Reply Memorandum in support of its motion to terminate under the Prison Litigation Reform Act and to Vacate the Court's Judgment and Orders under Federal Rule of Civil Procedure 60(b)(5).

1

2. I began working for the California Department of Corrections and Rehabilitation (CDCR) as a correctional officer at Deuel Vocational Institute on September 17, 1984, and transferred to FSP in July 1985. In 1989, I promoted to Correctional Sergeant and, in approximately 1992, I transferred to California State Prison – Sacramento. In 1995, I promoted to Correctional Lieutenant. In 2002, I promoted again to Correctional Captain and subsequently accepted the position of Associate Warden in 2005. In 2009, I transferred back to FSP to become the Chief Deputy Warden and, later that year, I was assigned as the Warden. I was then officially appointed as Warden of FSP in December 2010, and I have remained in this position since that time.

3. In my role as an institution Warden, I am committed to ensuring that the inmates within my custody are treated with respect and have access to adequate health care, including mental health care. I am familiar with the custodial role in various suicide-prevention mechanisms, particularly in the Administrative Segregation Units (ASUs). I consider these extremely sensitive issues in which I expect my supervisorial custody staff to place a high degree of scrutiny over their officers' handling of the inmates to maximize successful outcomes.

4. I am aware that, in our ASU at FSP, officers conduct welfare checks of all inmates during the first 21 days of their admission to this unit. Our officers conduct these checks 24 hours per day at staggered intervals no greater than 30 minutes apart and then document the times on our ASU welfare check logs. The Sergeant on each watch reviews the logs once per watch, or three times daily, to ensure both that checks are correctly completed and appropriately documented. If the Sergeants were to find evidence of incorrectly completed or improperly documented welfare checks during a review, they would provide immediate on-the-job training to the officer responsible so that our ASU unit can best maintain the accuracy and effectiveness of the ASU welfare checks.

5. In addition to the documented ASU welfare checks, officers within the FSP ASU often walk through the tiers to carry out their regular duties including, but not limited to, inmate bed moves, ducating inmate-patients for medical or mental health appointments, inmate laundry, conducting counts, escorting inmates for interviews or visits, escorting inmates to yard times, and

obtaining supplies. As the result of this staff movement up and down the tiers, cells are often checked by officers at least four times per hour or more in addition to the documented welfare checks. We train our officers to always look in cells during every pass along the tier as part of being observant and aware of their inmate population. Additionally, inmates out on the yard are under constant observation of the yard officers.

6. At FSP, our ASU staff receives training at least quarterly on all *Coleman*-related ASU custody requirements. The two most recent of these trainings occurred in December 2012 and March 2013. In these trainings, staff reviews issues including, but not limited to, ASU staggered welfare checks, use of intake cells, and inmate classification issues. As part of these trainings, FSP stresses the expectation of vigilance with completing all of these suicide-prevention procedures.

7. FSP staff additionally receives annual training on all *Coleman*-related issues including, but not limited to, crisis awareness, understanding risk factors, and behavior observation. Staff also receives a second class focused specifically on suicide prevention, which provides additional in-depth information on suicide prevention and awareness issues. All staff members are required to attend these interactive classes, which are taught by FSP clinicians.

8. I am aware that, within the FSP ASU, daily coordination meetings occur between the ASU Sergeant and the ASU-designated psychologists. During these meetings, the custody and clinical staff discusses any specific inmates with whom they might have concerns, such as changes in behavior or recent bad news. For each individual inmate, they discuss strategies for how both clinical and custody staff can best assist the inmate, which may include increased custodial checks through which the ASU officers attempt to increase communication with the inmate. Increasing communication can often uncover additional information about the inmate that assists the clinical staff in developing their treatment strategies. During these meetings, staff has also, at times, discussed inmates with medical issues that could impact the inmate's mental stability by causing additional stress, such as an inmate who requires a C-PAP machine. In addition to specific inmates, these meetings provide ASU custody and clinical staff the

1 opportunity to discuss more general mental health issues, such as whether they have new intakes
2 in the unit with any potential factors for follow up.

4 I declare under penalty of perjury under the laws of the State of California and the United States
5 of America that the foregoing is true and correct. Executed in Folsom, California on March 21,
6 2013.

*[signature]*

Rick Hill

*(original signature retained by attorney)*