1  KAMALA D. HARRIS
   Attorney General of California
2  JONATHAN L. WOLFF
   Senior Assistant Attorney General
3  JAY C. RUSSELL
   Supervising Deputy Attorney General
4  DEBBIE VOROUS, State Bar No. 166884
   PATRICK R. MCKINNEY, State Bar No. 215228
5  WILLIAM DOWNER, State Bar No. 257644
   Deputy Attorneys General
6   455 Golden Gate Avenue, Suite 11000
    San Francisco, CA  94102-7004
7   Telephone:  (415) 703-3035
    Fax:  (415) 703-5843
8   E-mail:  Patrick.McKinney@doj.ca.gov

9  *Attorneys for Defendants*

10              IN THE UNITED STATES DISTRICT COURT

11           FOR THE EASTERN DISTRICT OF CALIFORNIA

12                    SACRAMENTO DIVISION

13

14

   | | |
   |---|---|
   | **RALPH COLEMAN, et al.,** | 2:90-cv-00520 LKK JFM PC |
   | Plaintiffs, | |
   | v. | **DEFENDANTS' EVIDENTIARY OBJECTIONS TO PLAINTIFFS' EXPERT REPORTS, PORTIONS OF THE OPPOSITION, AND EXCERPTS OF TESTIMONY** |
   | **EDMUND G. BROWN, JR., et al.,** | |
   | Defendants. | |
   | | Date:        March 27, 2013 |
   | | Time:        1:30 p.m. |
   | | Dept:        4 |
   | | Judge:       The Honorable Lawrence K. Karlton |
   | | Action Filed:  1990 |

15
16
17
18
19
20
21
22
23
24
25
26
27
28

**INTRODUCTION**

The Court should exclude two of Plaintiffs' experts from testifying regarding the termination motion.  First, Jeanne Woodford is not qualified as mental health expert.  Particular training or experience is needed to qualify as an expert, and Ms. Woodford herself admits that she lacks training or experience in the mental health field.  Second, Eldon Vail's testimony should also be excluded.  An expert's opinion must be based on factual information that a reasonable expert in the field would believe is necessary for rendering an opinion.  And although Mr. Vail attempted to opine about use-of-force issues, he admitted that he had not even reviewed the state regulations that establish a statewide use-of-force policy.  Moreover, he was unaware of the *Madrid v. Gomez* decision, which alongside the use-of-force policy, dictates the circumstances under which use of force may be used in California's prisons.

In addition, Plaintiffs' opposition makes a number of statements that are objectionable, and it relies on evidence that is objectionable.  The Court should strike such statements and evidence, and it should not consider it when ruling on Defendants' motion to terminate.

I.   **MS. WOODFORD IS NOT QUALIFIED TO OPINE AS A MENTAL HEALTH EXPERT.**

To testify as an expert, an individual must have proper qualifications of knowledge, skill, experience, training, or education.  Fed. R. Evid. 702.  This requirement is meant to help "ensure, as a condition of admissibility, that proffered expert testimony rests on a sufficiently trustworthy foundation."  *Crowe v. Marchand*, 506 F.3d 13, 17 (1st Cir. 2008) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993)).  Experts need not be "'blue-ribbon practitioners' with optimal qualifications."  *U.S. v. Vargas*, 471 F.3d 255, 262 (1st Cir. 2006).  But they need to have particularized training or knowledge in the area that they intend to provide expert testimony about.  *Avila v. Willits Envtl. Remediation Trust*, 633 F.3d 828, 839 (9th Cir. 2011).

Here, Ms. Woodford, who opined about the adequacy of mental health care for San Quentin's condemned inmates, lacks any special training or knowledge in the area of mental health care, which she readily admits.  (Woodford Decl. ¶ 2, ECF No. 4380; McKinney Decl. Ex. 8 [Woodford Dep.] at 15:12, 121:10 (admitting that she is "not a mental health professional").)

1

1   Ms. Woodford has never been trained to conduct mental health assessments or screenings, has no

2   formal mental health education, and holds no advanced degrees. (Woodford Dep. at 111:6-8

3   (admitting no training in mental health care assessments or screenings); Woodford Decl. ¶¶ 2, 4.)

4        Despite her lack of training or experience in the mental health field, Ms. Woodford freely

5   opined on subjects outside the scope of her expertise.  (*See, e.g.*, Woodford Decl. ¶ 23 ("newly-

6   condemned inmates often experience extreme mental health distress and suicidal ideation"), ¶ 30

7   (stating that an inmate whose 114a log she reviewed "remains in urgent need of a referral for

8   mental health evaluation,"), ¶ 31 ("[m]any, if not all of the individuals to whom I spoke appeared

9   to me to be in need of higher levels of mental health care than they were receiving").)  Given her

10  lack of qualifications, perhaps she was able to do so only because someone else drafted her

11  opinion for her. (Woodford Dep. at 86:23-24 ("And the first draft was not prepared by me,

12  no.").)  Regardless, because she lacks the requisite training or knowledge to provide expert

13  testimony regarding mental health care, the Court should exclude her opinions. *Avila*, 633 F.3d at

14  839.

15  **II.    THE OPINIONS OF MR. VAIL, PLAINTIFF'S USE OF FORCE EXPERT, SHOULD BE
         DISREGARDED.**

16      What is "reasonable" for an expert to rely on in forming an opinion is a foundational matter

17  determined by the court.  Fed. R. Evid. 104(a).  If the underlying data are so lacking in probative

18  force and reliability that no reasonable expert could base an opinion thereon, the opinion may be

19  excluded under Rule 703 of the Federal Rules of Evidence.  In this case, Dr. Vail, Plaintiffs' use-

20  of-force expert, stated that he had not even reviewed the State's use-of-force policy and was

21  unaware of the outcome in *Madrid v. Gomez*, which led to the adoption of the statewide use-of-

22  force policy.  (McKinney Decl. at Ex. 7 [Vail Dep.] at 271:1-19.)  Given that Dr. Vail was

23  unfamiliar with the State's use of force policy and the court decision, which set forth many of the

24  guidelines for the policy, his opinions should not be relied upon by this Court.

25      The use-of-force policy and the *Madrid* decision set the landscape for use of force within

26  California's prisons.  No reasonable expert would believe that a proper expert opinion could be

27

28

2

rendered regarding use of force without some knowledge of those key background facts.  Thus, the Court should exclude Mr. Vail's expert opinions.

### III.   PORTIONS OF PLAINTIFFS' OPPOSITION AND THE STEWART DECLARATION LACK EVIDENTIARY SUPPORT AND SHOULD BE DISREGARDED BY THIS COURT.

A number of the assertions in Plaintiffs' opposition are unsupported by any evidence and should be stricken or disregarded by the Court.  For instance, Plaintiffs claim that "California remains an outlier, and is one of the most overcrowded prison systems in the United States" and that "[s]ome individual prisons . . . have scarcely benefitted, if at all, from the overall population reductions that have occurred" (Pls.' Opp'n 83).  Because Plaintiffs cite no evidence for this statement, it is improper.

Plaintiffs also contend that "there is thus little opportunity for [condemned inmates] to be screened or observed for signs of mental health deterioration during screenings that CDCR may perform in connection with transfers.  In the absence of such screening opportunities, CDCR has not established any organized practice of routinely re-evaluating condemned inmates to determine their mental health status and needs."  (Pls.' Opp'n 73:20-24.).  They further assert that "[w]hile mental health staff walk through the tiers periodically, there is no focused effort by custody or clinical staff to conduct regular one-on-one screening."  (Pls.' Opp'n at 74:4-5.)  However, the only evidence cited in support of this statement pertains to the North Segregation unit at San Quentin, and not all condemned units.

Plaintiffs further claim that "[i]n the absence of glaring signs of mental health crisis, it is therefore possible for a condemned inmate can [sic] go decades without significant contact with mental health staff." (Pls.' Opp'n at 74:5-7.)  This is objectionable because it is improper for Plaintiffs to extrapolate one circumstance they rely on to the entire condemned population; one case does not tend to prove that it is possible for all condemned inmates to go "decades without significant contact with mental health staff."

Similarly, portions of the Stewart declaration also lack evidentiary support.  Dr. Stewart also engages in improper, sweeping generalizations by musing that the prison population level creates "heightened risks for suicide prevention," is "damaging to mental health," are associated

3

Defs.' Evidentiary Objections to Pls.' Expert Reports  (2:90-cv-00520 LKK JFM PC)

1    with "violent and stressful" prisons, and "increase the risks of suicide." (Stewart Decl. ¶ 174.)

2    None of these statements are supported by adequate factual data. Thus, they should be stricken

3    and not considered.

4         The opposition also refers to Stewart's statement that "an overall pattern of systematic

5    under-identification of condemned inmates' serious mental health needs." (Pls.' Opp'n at 74:11-

6    12.) However, Dr. Stewart's opinion lacks foundation, as he fails to identify an experience

7    working with condemned populations. Nor does Dr. Stewart state what he believes to be a more

8    accurate number of EOP condemned-inmates.

9         Finally, Plaintiff's opposition also engages in speculation that violates Federal Rule of

10   Evidence 602. Specifically, it speculates that the capacity level in death row contributed to a

11   suicide on condemned row. (Pls.' Opp'n at 75:20-24.) Given that there is no evidence in the

12   suicide report about such a causal effect, and that the opposition itself admits that this is

13   speculation, the Court should strike and disregard it.

14                                **CONCLUSION**

15        Because Ms. Woodford is unqualified as a mental health expert and Mr. Vail's testimony

16   is not based on proper factual data, the Court should exclude both of their opinions. In addition,

17   the Court should exclude Plaintiffs' improper statements and evidence that violates various

18   evidentiary rules, as described above.

19

20   Dated: March 22, 2013                          Respectfully Submitted,

21                                                   KAMALA D. HARRIS
                                                     Attorney General of California
22                                                   JAY C. RUSSELL
                                                     Supervising Deputy Attorney General
23

24                                                    /s/ Patrick R. McKinney

25

26                                                   PATRICK R. MCKINNEY
                                                     Deputy Attorney General
27                                                   *Attorneys for Defendants*

28   CF1997CS0003
     20680824.doc

                                       4