**Exhibit 9**

```
                    UNITED STATES DISTRICT COURT

                   EASTERN DISTRICT OF CALIFORNIA


RALPH COLEMAN, ET AL.,            )
                                  )
                    Plaintiffs,   )
                                  )CASE NO.:
          vs.                     )S 90-0520 LKK-JFM
                                  )
EDMUND G. BROWN, JR., ET AL.,     )
                                  )
                    Defendants.   )
                                  )
```


                            DEPOSITION OF

                           RICHARD JOHNSON

              MONDAY, FEBRUARY 25, 2013,  8:58 A.M.

                      SAN FRANCISCO, CALIFORNIA




          REPORTED BY:  MEGAN F. ALVAREZ, RPR, CSR NO. 12470

                 THORSNES LITIGATION SERVICES, LLC

1    Q.    Okay.  Have you been involved in any bed
2 planning meetings for CCC prisoners?
3    A.    Yes.
4    Q.    What were those or when were those?
5    A.    Those were -- they've been discussions during
6 the implementation of the workload study.  Then what was
7 the -- the prev-mix process.  You know, the prev-mix was
8 on our same time that the department does the fall and
9 spring projections.  And that's when we used to also
10 look at making the adjustments on the mental health
11 populations and then -- but that was based on the
12 preworkload study model.
13          And then under the -- and so now under the
14 workload study model, we're going to be doing something
15 similar but not identical to the prev-mix and so that's
16 the process I referred to earlier that we're just
17 beginning to, now that AB 109 is -- you know, the
18 conversions of the institutions are getting their
19 completion.  And so we're looking at the -- to see if
20 we're in balance with our CCCMS and EOP like you
21 referred to based on the new alignments of the
22 institutions.  And then to see if we need to make
23 realignments of our mental health staffing due to
24 AB 109.
25    Q.    This is your special assignment that you

```
 1   referred to earlier in the depo?
 2        A.   Yes.
 3        Q.   So this will also be looking at whether there
 4   are adequate number of, for example, SNY yards for CCC
 5   prisoners?
 6        A.   Yes.  That will be included.
 7        Q.   That will be included.
 8             And these meetings are ongoing?
 9        A.   Yes.  And we're just at a point with the
10   AB 109 conversions getting to the tail end of their
11   conversions that we could really start sitting down and
12   working with -- and also the mental health staff will be
13   involved, you know, in those decisions along with DAI.
14   And so we're just beginning to -- even though it's been
15   the plan to do this for, you know, the planning
16   meetings, but we're finally at the point where things
17   are getting settled with the realignment conversions
18   that we can now address the mental health alignments.
19        Q.   Okay.
20             MS. KAHN:  I want to mark another exhibit.
21             (Plaintiffs' Exhibit 18 was marked for
22              identification.)
23   BY MS. KAHN:
24        Q.   Okay.  Are you familiar with this report?
25        A.   Yes.
```

CERTIFICATE OF REPORTER

I, MEGAN F. ALVAREZ, a Certified Shorthand Reporter, hereby certify that the witness in the foregoing deposition was by me duly sworn to tell the truth, the whole truth and nothing but the truth in the within-entitled cause;

That said deposition was taken down in shorthand by me, a disinterested person, at the time and place therein stated, and that the testimony of the said witness was thereafter reduced to typewriting, by computer, under my direction and supervision;

I further certify that I am not of counsel or attorney for either or any of the parties to the said deposition, nor in any way interested in the events of this cause, and that I am not related to any of the parties hereto.

DATED: March 7, 2013

_____

MEGAN F. ALVAREZ

RPR, CSR 12470