# Exhibit 91

STATE OF CALIFORNIA
**STANDARD AGREEMENT**
STD 213 (Rev 06/03)

| | |
|---|---|
| AGREEMENT NUMBER | 11-6459 |
| REGISTRATION NUMBER | e P 11 82434 |

1. This Agreement is entered into between the State Agency and the Contractor named below:

STATE AGENCY'S NAME
**DEPARTMENT OF JUSTICE**

CONTRACTOR'S NAME
**JOEL A. DVOSKIN, Ph.D., A.B.P.P.**

2. The term of this Agreement is:   **9/1/11**   through   **6/30/12**

3. The maximum amount of this Agreement is:   **$ 100,000.00**   One Hundred Thousand Dollars and No Cents.

4. The parties agree to comply with the terms and conditions of the following exhibits which are by this reference made a part of the Agreement.

| | |
|---|---|
| Exhibit A – Scope of Work | 1 page |
| Exhibit B – Budget Detail and Payment Provisions | 2 pages |
| Exhibit C* – General Terms and Conditions | GTC 610 |
| Check mark one item below as Exhibit D: | |
| ☒ Exhibit - D Special Terms and Conditions (Attached hereto as part of this agreement) | 3 pages |
| ☐ Exhibit - D* Special Terms and Conditions | |
| Exhibit E – Contractor's Resume | 4 pages |

DOJ Docket No.: **48170 286 CF1997CS0003**   DAG: **Patrick McKinney**
Case Name: **Coleman v. Brown**

*Items shown with an Asterisk (*), are hereby incorporated by reference and made part of this agreement as if attached hereto. These documents can be viewed at www.ols.dgs.ca.gov/Standard+Language/default.htm*

IN WITNESS WHEREOF, this Agreement has been executed by the parties hereto.

| CONTRACTOR | California Department of General Services Use Only |
|---|---|

CONTRACTOR'S NAME (If other than an individual, state whether a corporation, partnership, etc.)
**JOEL A. DVOSKIN, Ph.D., A.B.P.P.**

BY (Authorized Signature)    DATE SIGNED (Do not type)
9/19/11

PRINTED NAME AND TITLE OF PERSON SIGNING
**JOEL A. DVOSKIN, Ph.D., A.B.P.P.**

ADDRESS
**668 E. Weckl Place**
**Tucson, AZ 85704-6076**   Telephone: **(520) 577-3051**

**APPROVED**

OCT 2 6 2011

**STATE OF CALIFORNIA**

AGENCY NAME
**DEPARTMENT OF JUSTICE**

BY (Authorized Signature)    DATE SIGNED (Do not type)
OCT 18 2011

PRINTED NAME AND TITLE OF PERSON SIGNING
**STEPHEN F. NAPOLILLO, Manager, Contracts Unit**

ADDRESS
**1300 I Street, 8th Floor**
**Sacramento, CA 95814**

DEPT OF GENERAL SERVICES

☐ Exempt per:

**DEXP 103091**

STATE OF CALIFORNIA
**STANDARD AGREEMENT**
STD 213A (Rev 06/03)

| ☐ CHECK HERE IF ADDITIONAL PAGES ARE ATTACHED | Pages | AGREEMENT NUMBER 11-6453 | AMENDMENT NUMBER 1 |
|---|---|---|---|
| | | REGISTRATION NUMBER | |

1. This Agreement is entered into between the State Agency and the Contractor named below:

STATE AGENCY'S NAME
DEPARTMENT OF JUSTICE

CONTRACTOR'S NAME
STEVE J. MARTIN, ESQ.

2. The term of this        9/1/11        through        6/30/13
   Agreement is:

3. The maximum amount        $ 100,000.00
   of this Agreement is:        One Hundred Thousand Dollars and No Cents

4. The parties mutually agree to this amendment as follows. All actions noted below are by this reference made a part
   of the Agreement and incorporated herein:
   This Amendment is effective as of 6/29/12.

   - Change the termination date of the Agreement from 6/30/12 to 6/30/13.

   All other terms and conditions shall remain the same.

   Case Name: Coleman v. Brown
   Docket No.: 48170 286 CF1997CS0003
   DAG: Patrick McKinney

All other terms and conditions shall remain the same.

IN WITNESS WHEREOF, this Agreement has been executed by the parties hereto.

| CONTRACTOR | | California Department of General Services Use Only |
|---|---|---|
| CONTRACTOR'S NAME (if other than an individual, state whether a corporation, partnership, etc.) STEVE J. MARTIN, ESQ. | | |
| BY (Authorized Signature) | DATE SIGNED (Do not type) 7/23/12 | |
| PRINTED NAME AND TITLE OF PERSON SIGNING STEVE J. MARTIN, ESQ. | | |
| ADDRESS 3613 Adirondack Trail Austin, Texas 78759        Telephone: (512) 346-7607 | | Exempt From DGS Approval Per DGS Exemption Letter No.52" |
| STATE OF CALIFORNIA | | |
| AGENCY NAME DEPARTMENT OF JUSTICE | | |
| BY (Authorized Signature) | DATE SIGNED (Do not type) | |
| PRINTED NAME AND TITLE OF PERSON SIGNING STEPHEN F. NAPOLILLO, Manager, Contracts Unit | | ☐ Exempt per: |
| ADDRESS 1300 I Street, Suite 820 Sacramento, CA 95814 | | |

DEXP 109511

## UNIVERSITY OF CALIFORNIA, DAVIS

BERKELEY · DAVIS · IRVINE · LOS ANGELES · RIVERSIDE · SAN DIEGO · SAN FRANCISCO



SANTA BARBARA · SANTA CRUZ

DEPARTMENT OF PSYCHIATRY
2516 STOCKTON BOULEVARD
SACRAMENTO, CA 95817
916-734-6470

UNIVERSITY OF CALIFORNIA, DAVIS
MEDICAL CENTER, SACRAMENTO
2315 STOCKTON BOULEVARD ·
SACRAMENTO, CALIFORNIA 95817

October 8, 2012

Patrick McKinney
Deputy Attorney General
California Department of Justice
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
Ph: 415-703-5500

RE:   Coleman, et al. v. Brown, et al.
      DOJ Docket No.: 48170286CF1997CS0003
      Standard Agreement No. 11-8512

Dear Mr. McKinney,

Below is an itemized list of charges regarding the above named case for September 11, 2012
through October 5, 2012:

| Date | Service | Time | Rate (per hour) | Total |
|------|---------|------|-----------------|-------|
| 9/11/2012 | Record review / Report preparation | 8.00 hrs | $200.00 | $1,600.00 |
| 9/12/2012 | Travel – Sacramento to Vacaville | 0.75 hrs | $200.00 | $150.00 |
| 9/12/2012 | Consultation / Review | 5.00 hrs | $200.00 | $1,000.00 |
| 9/12/2012 | Travel – Vacaville to Sacramento | 0.75 hrs | $200.00 | $150.00 |
| 9/12/2012 | Consultation | 1.00 hrs | $200.00 | $200.00 |
| 10/1/2012 | Record review | 1.50 hrs | $200.00 | $300.00 |
| 10/2/2012 | Record review / Report preparation | 8.50 hrs | $200.00 | $1,700.00 |
| 10/3/2012 | Record review / Report preparation | 2.50 hrs | $200.00 | $500.00 |

DEXP 102002

| 10/5/2012 | Record review | 0.50 hrs | $200.00 | $100.00 |
| 10/5/2012 | Record review /<br>Report preparation | 1.50 hrs | $200.00 | $300.00 |
| | Total: | 30.00 hrs | | $6,000.00 |

Please make the check payable to:    UC REGENTS

The appropriate tax I.D. number is:  94-6036494.  For tax reporting purposes, the income is
reported as UC Regents NOT Charles L. Scott, M.D.

Please include on the check the reference number 01-016786876, and mail check to:

Cashier's Office
University of California, Davis
P.O. Box 989062
West Sacramento, CA 95798-9062

Respectfully submitted,

Charles L. Scott, M.D.
Chief, Division of Psychiatry and the Law
Professor of Clinical Psychiatry
Department of Psychiatry & Behavioral Sciences
University of California, Davis Medical Center – Sacramento

STATE OF CALIFORNIA
**STANDARD AGREEMENT**
STD 213A (Rev 06/03)

☐ CHECK HERE IF ADDITIONAL PAGES ARE ATTACHED _____ Pages

| AGREEMENT NUMBER | AMENDMENT NUMBER |
|---|---|
| 11-8512 | 1 |
| REGISTRATION NUMBER | |

1. This Agreement is entered into between the State Agency and the Contractor named below:

STATE AGENCY'S NAME
**DEPARTMENT OF JUSTICE**

CONTRACTOR'S NAME
Regents of the University of California, Davis

2. The term of this
Agreement is:
09/01/11   through   06/30/13

3. The maximum amount
of this Agreement is:
$ 100,000.00
(One Hundred Thousand Dollars and No Cents)

4. The parties mutually agree to this amendment as follows. All actions noted below are by this reference made a part
of the Agreement and incorporated herein:

- This Amendment is effective as of June 29, 2012

- Extend the termination date of the Agreement from June 30, 2012 to June 30, 2013.

All other terms and conditions shall remain the same.

IN WITNESS WHEREOF, this Agreement has been executed by the parties hereto.

| CONTRACTOR | | California Department of General Services Use Only |
|---|---|---|
| CONTRACTOR'S NAME (if other than an individual, state whether a corporation, partnership, etc.) Regents of the University of California, Davis | | |
| BY (Authorized Signature) ✍ | DATE SIGNED(Do not type) 8-31-2012 | |
| PRINTED NAME AND TITLE OF PERSON SIGNING ANNIE WONG, DIRECTOR, HEALTH SYSTEM CONTRACTS | | "Exempt from DGS Approval Per DGS Exemption Letter No. 52" |
| ADDRESS Dept. of Psychiatry & Behavioral Sciences 7230 Stockton Blvd., 2nd Floor Sacramento, CA 95817 | | |

| STATE OF CALIFORNIA | | |
|---|---|---|
| AGENCY NAME DEPARTMENT OF JUSTICE | | |
| BY (Authorized Signature) ✍ | DATE SIGNED(Do not type) SEP 13 2012 | ☐ Exempt per: |
| PRINTED NAME AND TITLE OF PERSON SIGNING STEPHEN F. NAPOLILLO, Manager, Contracts Unit | | |
| ADDRESS 1300 I Street, Suite 820 Sacramento, CA 95814 | | |

# Exhibit 92

| | |
|---|---|
| **From:** | McDonald, Terri@CDCR |
| **Sent:** | Sunday, January 27, 2013 6:41 PM |
| **To:** | Dickinson, Kathleen@CDCR; Stainer, Michael@CDCR; Allison, Kathleen@CDCR |
| **Cc:** | Acosta-Hoshall, Christina@CDCR |
| **Subject:** | FW: Suicide Compendium V5 |
| **Attachments:** | Suicide_Compendium_1-27-13_MJM_v5.pdf |

**Importance:**          High

FYI

Chris, please print

Thx

From: Toche, Diana@CDCR
Sent: Sunday, January 27, 2013 4:04 PM
To: Rice, Benjamin@CDCR; Hoshino, Martin N@CDCR; Beard, Jeff@CDCR; McDonald, Terri@CDCR
Subject: FW: Suicide Compendium V5

Attached please find the latest version in preparation for Tuesday's meeting. Please let me know if you would like additional clarification or information. MH is on stand by if needed.

Diana Toche, DDS
Director (A), DHCS
Deputy Director, Statewide Dental Program California Department of Corrections and Rehabilitation
501 J Street, Suite 400
Sacramento, CA 95814
916.691.0605 (desk)
916.764.4604 (BB)

From: Morrison, Michael@CDCR
Sent: Sunday, January 27, 2013 10:12 AM
To: Toche, Diana@CDCR; Rice, Benjamin@CDCR
Cc: Belavich, Tim@CDCR

Subject: Suicide Compendium V5

Good Morning, attached is version 5 with 25th round additions.  Please let me know if any other changes are needed.  The best way to sum up this project is to compare it to "herding cats."  Thank you for your patience.

Mike

Michael Morrison
Health Program Specialist
Statewide Mental Health Program
DHCS-CDCR
Mobile: 916-764-4996

2

| Compendium of Suicide Recommendations | | | | | |
|---|---|---|---|---|---|
| Completed: 24 | Ongoing: 9 | Total: 80 | | | |
| In Process: 29 | Unable to Proceed: 3 | | | | |
| Disagree: 13 | Non-Issue: 2 | | | | |
| Source | Recommendation | Status | Status Explained | Next Steps | Extra |
| 2006 Court Order | Intake Cells | Ongoing | Each institution has intake cells, use of these cells is audited on an ongoing level. When the audits yield bad results, it is addressed. | Work with DAI to ensure intake cells are being used appropriately; Ensure there are enough intake cells at each institution. | |
| 2006 Court Order | Retrofit Intake Cells | Completed | Addressed in 2010 Submittal | | |
| 2006 Court Order | Title 15 Requirements for out of cell time/priority | In Process | Auditing is difficult; numerous barriers to meet mandated hours | Follow Up with DAI HQ Staff at MH/DAI ASU workgroup | |
| 2006 Court Order | Confidential MH Interviews in ASU | Completed | Has been implemented at institutions when space permits. | | |
| 2006 Court Order | Reduction in Length Of Stay | Completed | Reviewed all inmate-patients in ASU for more than 30 days, reviewed COMPSTAT data and waiting lists for ASU transfer Hubs has been reduced | | |
| 2006 Court Order | Return from court "Bad News" information | Completed | Addressed in 2010 Submittal | | |
| 2006 Court Order | Pre Placement Suicide Prevention Screening | Completed | Addressed in 2010 Submittal | | |
| 2006 Court Order | Post Placement Screening | Ongoing | Review on an ongoing basis from data from MHTS.Net | Continue to work with DAI Staff when issues arise | |
| 2006 Court Order | Daily Coordination | Completed | Addressed in 2010 Submittal | Daily huddles are occurring with ASU Sergeant and ASU MH Clinician; suicide information from MHTS.net is communicated with custodial staff | |
| 2006 Court Order | Minimum stay at EOP ASU Hubs | Ongoing | Monitored on an ongoing level using HCPOP data, minimum LOS is 60 days | Follow up with institutions to ensure minimum LOS is being met | |

| Source | Recommendation | Status | Status Explained | Next Steps | Extra |
|---|---|---|---|---|---|
| 2006 Court Order | Auditing of Case Manager Review of Weekly Rounds Notes | Completed | Addressed in 2010 Submittal | | |
| 2006 Court Order | Audit of Screening refusals | Completed | Addressed in 2010 Submittal | | |
| 2006 Court Order | Audit of ASU Suicide Prevention | Completed | Addressed in 2010 Submittal | | |
| 2006 Court Order | Non Disciplinary Segregation | Unable to Proceed | No plans to implement ;have discussed the issue with custody and have identified barriers | | |
| 2006 Court Order | Custody Welfare Checks | Completed | Custody performs hourly welfare checks | Currently working with DAI to provide three wellness checks in 60 minutes instead of two. | Initial recommendation was to have custody perform welfare checks, CDCR has implemented but is trying to increase frequency. |
| 2006 Court Order | Double Celling | Ongoing | DAI reviews all inmate-patient suitability to be doubled celled | | |
| 2006 Court Order | Emergency Response | Completed | Addressed in 2010 Submittal | | |
| 2006 Court Order | Clinical Rounding | Completed | Addressed in 2010 Submittal | | |
| 2006 Court Order | Strike Team on site Reviews of ASU Bed Utilization | Completed/ In Process | Strike Team completed | Modifications to departmental policy are being addressed in the MH/DAI ASU workgroup | |
| 2010 Court Order | SRE Mentor Program | Ongoing | Over 90 clinicians trained; Audit tool developed; Each institution has at least one primary mentor | Memorandum with specific timelines is currently being routed for approval prior to dissemination. Policy and Procedure currently en route to JCET. Will be monitored through QI process. | Recommendation stated to only mentor "new and unlicensed staff.," MH expanded to all staff who administer SRE's and mentoring and training is ongoing and cyclical w/peer consultation. |
| 2010 Court Order | Review and Revise Program Guide | In Process | MH has completed revisions and are currently with Debbie Vorous for review | Follow up with Debbie Vorous, once revisions are approved disseminate to field | |

| Source | Recommendation | Status | Status Explained | Next Steps | Extra |
|---|---|---|---|---|---|
| 2010 Court Order | Improve Suicide Review Quality | Completed | Template revised, training implemented, additional reviewers trained | | |
| 2010 Court Order | Improve QIP Development | Completed | Process updated to ensure better collaboration with all institutional staff; DAI HQ is now involved with development of QIP prior to SCR | | |
| 2010 Court Order | Changes of conditions in ASU | Unable to Proceed | Pilot developed to change conditions in ASU at PBSP. Based on the findings from the pilot, this is unable to be rolled out statewide due to staffing and physical plant restrictions and conflict with DOM. | MH will still change as much conditions as possible, where possible. Example's are property privileges, provision of group treatment when space permitting, increase usage of Recreation Therapists, and problem-focused clinical treatment. | |
| 2010 Court Order | High Risk Inmate-Patient Management | Ongoing | Each institution has identified a "High Risk" specialist (mostly DSH Coordinators) | Follow Up with institutions with new policy in concordance with court requirements. | Overlaps with sustainable process |
| 2010 Court Order | Shared documentation with DSH | Completed | Created SharePoint Site | | |

| Source | Recommendation | Status | Status Explained | Next Steps | Extra |
|---|---|---|---|---|---|
| Hayes Report | Problems with emergency response timeliness (based on review of 2010 suicides) | Non-Issue | Review of 2011 and 2012 suicides did not reveal this to still be a problem | Will continue to examine timelines through SCR process. | |
| Hayes Report | Inmate-patients committed suicide after discharge from observation status or Inmate-Patients threatened suicide, expressed SI and/or had other suicide risk factors that did NOT result in placement on suicide observation (based on review of 2010 suicides) | In Process | 2011 and 2012 suicides are being investigated to see if this is still true | Ensure that staff follow guidelines for what constitutes suicide observation. Will conduct audits and this will also be trained in the SRE mentoring program. | |
| Hayes Report | Inmate-patients found in rigor or review determined that cell checks not performed as required (based on reviews of 2010 suicides) | In Process | 2011 and 2012 suicides are being investigated to see if this is still true | Will follow up with DAI | |
| Hayes Report | Several ASU inmates who committed suicide were not in intake cells (based on reviews of 2010 suicides) | In Process | MH/DAI workgroup currently discussing issue | | |
| Hayes Report | 68% of cases involved multiple problem areas (based on review of 2010 suicides) | Completed | Rating system developed to determine if problems are systematic | | |
| Hayes Report | Threshold for placement on Suicide Observation is set too high | Disagree | Do not feel changes are appropriate. We do not support lowering threshold. | Ensure staff develop enhanced treatment plans for inmate-patients who have moderate risk. This will also be trained in the SRE mentoring program. | |
| Hayes Report | Revise definitions necessitating placement on SP or SW in PG. | In Process | Will clearly define Suicide Precaution and Suicide Watch; If revisions are not in those currently under review by Debbie Vorous, we will add them. | Confirm revisions to language have already been changed. If not, make the changes and resubmit for review. | |

| Source | Recommendation | Status | Status Explained | Next Steps | Extra |
|---|---|---|---|---|---|
| Hayes Report | Recommended changes to Chapter 10: page 11, under Peer Consultation, recommends adding "correctional staff" and "medical staff" as peers that need to be consulted. | Disagree | Peer consultation is specific to clinical consultation as it relates to mental health | Peer Consultation/Review is still being completed throughout the state.  Will still consult and collaborate with custody and medical staff on an ongoing basis. | |
| Hayes Report | Recommended changes to Chapter 10: page 11, bottom and page 12, top. Additional language change on peer consultation.  In one place it says that peer consultation can be one of the most important clinical safeguards and later it says it is not always necessary. He suggests deleting the latter. | In Process | If revisions are not in those currently under review by Debbie Vorous, we will add them. | Confirm revisions to language have already been changed.  If not, make the changes and resubmit for review. | SRE mentoring program encourages peer consultation |
| Hayes Report | Recommended changes to Chapter 10: page 12, under Suicide History Tracking: Suggests expanding MHTS.net to include ALL inmates who have attempted suicide, engaged in SIB, or been placed on suicide observation regardless of whether or not they are "high risk mental health inmate-patients" or in MHSDS. | In Process | Any changes to MHTS.Net are required to be on a change list.  This list is prioritized by a change control board.  Need to determine whereabouts of change on the priority list. | Submit to change control board | All inmate's are in MHTS.Net.  If suicide information has been entered into MHTS.Net, the information will follow the inmate no matter his/her level of care, even GP. |

| Source | Recommendation | Status | Status Explained | Next Steps | Extra |
|--------|----------------|--------|------------------|------------|-------|
| Hayes Report | Recommended changes to Chapter 10: page 12, Language change suggested. Currently reads, "When an inmate-patient verbalizes suicidal ideation without other signs and symptoms of increased risk for suicide, the mental health clinician is responsible for evaluating any contributing environmental stressors and communicating with custody staff and supervisor's regarding any potentially solvable custody issues." Refers to inmate who may be manipulating and/or malingering. Concern: Inmate-Patients who are manipulative or malingering can still be suicidal and require placement on suicide observation status. Recommends review and clarification. | In Process | Alteration of language currently being discussed | SRE mentoring program will address this | |
| Hayes Report | Recommended changes to Chapter 10, page 14, under Inmate and Cell Search, delete reference to "bed frames" being "removed" from the cell as well as "on the floor." Insert narrative that all inmates on suicide observation status shall be provided with suicide resistant beds. | In Process | Beds are in place. If Program Guide revisions are not in those currently under review by Debbie Vorous, we will add them | Confirm revisions to language have already been changed. If not, make the changes and resubmit for review. | |

| Source | Recommendation | Status | Status Explained | Next Steps | Extra |
|--------|----------------|--------|------------------|------------|-------|
| Hayes Report | Recommended changes to Chapter 10, page 14, under Inmate and Cell Search, no narrative describing items or privileges (shower, out of cell time, telephone calls, visitation, etc.), if any, is permitted. Found restrictive conditions for inmates on suicide observation status. No clothing - confined to cells at all other times - no visitation. Was informed these were correctional (not MH) decisions. Concern that inmates will say they are no longer suicidal in order to escape harsh conditions. | In Process | Agree that MHCB's are to restrictive, and property needs to be handled on a case by case basis. | Going to address with custody, will be culture change. Will also develop procedure consistent with how CHCF is handling their MHCB's, which is different than our current practice. | |
| Hayes Report | Recommended changes to Chapter 10, page 15 and 16, revise definitions of both Suicide Precaution and Suicide Watch (loosen definition) | Disagree | We do not plan on expanding either definition | Will ensure current definitions are clearly defined through SRE mentor program. | |
| Hayes Report | Recommended changes to Chapter 10, page 16 and 17, within the boxes that indicated Guidelines for Clinician-Ordered Suicide Precaution and Suicide Watch: delete-reference to "remove all furniture" and insert provision of suicide-resistant beds. | In Process | If revisions are not in those currently under review by Debbie Vorous, we will ad them | Confirm revisions to language have already been changed. If not, make the changes and resubmit for review. | |

| Source | Recommendation | Status | Status Explained | Next Steps | Extra |
|---|---|---|---|---|---|
| Hayes Report | Recommended changes to Chapter 10, page 19, under Discharge and Return, argues that inmates sent to OHU for suicide observation status should receive same 5-day clinical follow-up as inmates placed in the MHCB for similar reasons. Suggest language changes to reflect this. | Completed/ In Process | This is implemented. Just need to confirm language is updated in Chapter 10 revision. | Confirm revisions to language have already been changed. If not, make the changes and resubmit for review. | All inmate-patients, not just those admitted for suicide observation, who are discharged from any crisis care receive a 5 Day Follow Up. |
| Hayes Report | Recommended changes to Chapter 10, page 19, under both Discharge and Return and MHCB Discharge, recommends deleting the word "imminent." Argues that lack of imminent or immediate danger of self-harm should not be the only criteria for removal from suicide observation status. | In Process | "Imminent" is a community standard, we will define better | Define more clearly through SRE mentoring program. | |
| Hayes Report | Recommended changes to Chapter 10, page 20, language regarding frequency of Wellness checks for MHCB discharges. Recommends frequency of greater than 60 minutes. | In Process | Currently working with DAI to provide three wellness checks in 60 minutes instead of two. | | |
| Hayes Report | Recommended changes to Chapter 10, page 21 & 22, under Custody Protocol and Hanging sections: Reference to term "if trained to do so" when referring to custody performing CPR. | Completed/ In Process | Staff have been trained. If revisions are not in those currently under review by Debbie Vorous, we will add them. | Confirm revisions to language have already been changed. If not, make the changes and resubmit for review. | |
| Hayes Report | Use of OHUs for Suicide Precautions - lengthy discussion. Suggests using OHUs as crisis treatment areas for non SMI I/Ps. | Disagree | Plaintiffs do not support this; addressed in OHU memo | | |

| Source | Recommendation | Status | Status Explained | Next Steps | Extra |
|---|---|---|---|---|---|
| Hayes Report | Use of OHUs - concern about cleanliness. | In Process | Vastly improved per regional administration site visits | Will be monitored through QI process | |
| Hayes Report | Use of OHUs - lower the threshold for crisis placement and utilize OHUs more | Disagree | Threshold for crisis placement is appropriate and do not believe it needs to be lowered. Plaintiffs also do not agree with use of OHU's. | MH will continue to monitor MHCB waitlist. MH believes a licensed facility it the most clinically appropriate placement for inmate-patients. | |
| Hayes Report | Use of Suicide Resistant Beds in MHCB's | Completed | | | |
| Hayes Report | Use of ZZ cells for housing inmate-patients on suicide observation. Suggests prohibiting their use for suicide observation. | Non-Issue | No longer an ongoing issue: MHCB's have been built, MHCB waitlist has decreased. | MH will continue to monitor MHCB waitlist. MH believes a licensed facility it the most clinically appropriate placement for inmate-patients. | |
| Hayes Report | Cadet Academy - add: 1. self-injurious v. suicidal behavior and effectively dealing with manipulative inmates 2. identifying inmates at risk for suicide despite their denial of risk; 3. updates | In Process | Curricla revised, we are currently reviewing MH components. QIP to be distributed statewide. | Develop best way to disseminate information | |
| Hayes Report | Suicide Prevention Training Curricula - HCNEO - Expand to 2.5 hours and include above | In Process | Discussing training with CCHCS | Continue to work with CCHCS | |
| Hayes Report | Suicide Prevention Training Curricula - Annual IST. Good content but expand to include QIPs. | Disagree | IST is not the best method for this | Disseminate QIP; the best method for this would be through the local SPRFIT committee, who will then disseminate to all staff. | |
| Hayes Report | Local SPRFIT - Determine if they are functioning effectively, are they proactive? | In Process/Ongoing | Requesting minutes and assigned a staff member to review. | Minutes will be reviewed on a monthly basis and QIP's will be implemented for institutions who fail to meet the minimum requirements. Will be monitored through QI process. | |
| Hayes Report | ASUs for Suicide Observation - believes premature to discuss ASU as an option. | Disagree | Do not support use of ASU for Suicide Observation | Due to sufficient MHCB's, there is not a need to use ASU for Suicide Observation | |

| Source | Recommendation | Status | Status Explained | Next Steps | Extra |
|---|---|---|---|---|---|
| Dvoskin Report | Integration of MH, Custody and Medical | Completed | MH, Custody and Medical staff are now integrated throughout all steps of the SCR process. | | |
| Dvoskin Report | Serious issues need to be addressed immediately and should not wait for SCR | Completed | Training has been provided to all reviewers to capture serious issues, and these issues are addressed immediately and often before the SCR. | | |
| Dvoskin Report | Requests for additional information and attention to recommendations should be issued directly from the Secretary's office. | Disagree | Requests will be elevated through chain of command, if necessary up to the Secretary's office | | |
| Dvoskin Report | All recommendations should be categorized according to a new scheme | Completed | Categorization scheme developed | | |
| Dvoskin Report | Informal recommendations should be followed up by HQ. | Completed | HQ eliminating informal recommendations | | |
| Dvoskin Report | QIP usage - suggestion is to refer to QIP for the institution, and have numbered recommendations under the QIP plan. | Disagree | Change to current language will be confusing to field staff. | Will continue to follow current QIP process to alleviate confusion. Will be sure to define through SRE mentor program. | |
| Dvoskin Report | SCRs should be routed to receiver. Receiver receiving information only copies. | Disagree | Routing to Receiver, for signature, will cause delay and will result in failure to meet required timelines. | Informational copies will continue to be provided to the Receiver. | |
| Dvoskin Report | DRC not folded into SCR process. | Disagree | Can not fold DRC into SCR due to timelines. | Consultation with DRC will continue prior to completion of SCR. | |

| Source | Recommendation | Status | Status Explained | Next Steps | Extra |
|--------|----------------|--------|------------------|------------|-------|
| Dvoskin Report | Special Master Reports on suicide available immediately | Unable to Proceed | Not an actionable item for CDCR | | |
| Dvoskin Report | Issues in SCRs related to employee discipline, security group issues, institutional security, etc. | Disagree | Deferred to Internal Affairs, information is confidential. | Continue current process; receive number when case is assigned and are notified once it is completed. | |
| Dvoskin Report | Reconsider "automatic" referrals to ASU in absence of a specific finding of danger. | In Process | Currently being discussed in MH/DAI ASU workgroup. | MH will review RVR and this may affect placement, also Captain reviews result in discharge if inmate-patient is determined not to be a danger | |
| Dvoskin Report | Interval between admission to ASU and first clinical contact. Former PC see an I/P within the same institution sooner than current policy mandates. If transfer to another institution, then use Tele-therapy or have another clinician make immediate contact. | In Process | Discussing feasible ways to implement. | CCCMS inmate-patient to be seen by next day after placements into ASU. | |
| Dvoskin Report | Inmate-patient housed in ASU pending transfer to EOP should be placed at the front of the waiting list for transfer. | Disagree | There is already a priority placement list for inmate-patients awaiting transfer. CDCR stands behind the current list. | Will continue to use the current priority placement list for transfer. | |

| Source | Recommendation | Status | Status Explained | Next Steps | Extra |
|---|---|---|---|---|---|
| Dvoskin Report | "The Department has made a significant effort to provide ASU inmates with the possibility of televisions in their cells, which can significantly decrease the distress inmates experience in segregation." | In Process | Currently being discussed in MH/DAI ASU workgroup. | This monitored and allowed where possible. Retrofitting other cells to provide electricity is cost prohibitive. | |
| Dvoskin Report | When a recent DSH discharge commits suicide, CDCR should notify DSH to conduct its own investigation. Share investigations when complete. Formal notification and meeting to discuss findings. | Ongoing | First test case occurred 1/24/2013 at SVSP. | Will implement recommendation., CDCR to contact DSH. | |
| Dvoskin Report | Unable to gain access to medical record in one case. Due to no EMR. | In Process | eUHR implementation has helped with this issue. | CDCR is currentlty developing a "true" EMR which will void the issue identified. | |
| Dvoskin Report | Custody employees refuse to be interviewed. | In Process | All staff are encouraged to participate in interviews. If an issue arises where a staff refuses to be interviewed, it is raised through the chain of command. | Continue to work with DAI Staff when issues arise | |
| Dvoskin Report | Quality of SREs. | In Process/Ongoing | Addressed with SRE mentoring program | Memorandum with specific timelines is currently being routed for approval prior to dissemination. | |

| Source | Recommendation | Status | Status Explained | Next Steps | Extra |
|---|---|---|---|---|---|
| 25th Round | SRE Mentor Program is on partially implemented | Ongoing | Over 90 clinicians trained; Audit tool developed; Each institution has at least one primary mentor | Memorandum with specific timelines is currently being routed for approval prior to dissemination. Policy and Procedure currently en route to JCET. Will be monitored through QI process. | Recommendation stated to only mentor "new and unlicensed staff.," MH expanded to all staff who administer SRE's and mentoring and training is ongoing and cyclical w/peer consultation. |
| 25th Round | SPRFIT Meetings not meeting requirements | In Process/Ongoing | Requesting minutes and assigned a staff member to review. | Minutes will be reviewed on a monthly basis and QIP's will be implemented for institutions who fail to meet the minimum requirements. Will be monitored through QI process. | |
| 25th Round | Nine institutions did not provide data on if they had an ERRC during the reporting period | In Process | Eight of the Nine Institutions have provided proof of practice that they are holding ERRC's. | The last institution, CMF, is expected to provide data on Monday 1/28/2013 | |
| 25th Round | 11 institutions did not provide data relative to CPR training during the reporting period | In Process | The institutions train CPR on an annual basis, the only way to get an accurate account of the staff that did not receive the training is to request the two years prior to the last day of the reporting period.  It should be a very small number if any at all; at the most it would be around 10-30 staff at each institution and that number would put each institution above 90%. | Work with DAI to ensure institutions are holding trainings for CPR annually and that minimum attendance requirements are being met. | |

| Source | Recommendation | Status | Status Explained | Next Steps | Extra |
|---|---|---|---|---|---|
| 25th Round | Only three institutions were fully compliant with the conduct of five-day clinical follow ups for inmate-patients discharged from crisis care . | Ongoing | Based on data pulled from MHTS.Net for October 2012-December, 84% of the follow ups were completed on time. | Continue to monitor data from MHTS.Net to ensure five-day clinical follows up are being provided. | All inmate-patients, not just those admitted for suicide observation, who are discharged from any crisis care receive a 5 Day Follow Up. |
| 25th Round | "8 Staggering 30-minute welfare checks in administrative segregation has been an ongoing problem that, again, remained unresolved during the twenty-fifth monitoring – only nine institutions completed these checks correctly." | In Process/Ongoing | "Staggering" has never been clearly defined.  Institutions conduct periodic paper audits. | Monitor through QI process | |
| 25th Round | "Further, compliance levels for completion of the 31-item screen for newly-arriving inmates in administrative segregation have deteriorated, with only seven institutions compliant, as compared to 70 percent during the twenty-third round monitoring period. | In Process | Data from MHTS.Net is inaccurate and does not reflect the actual work performed.  Have identified the data entry issue. | Develop and disseminate joint memorandum from MH and Nursing leadership to direct field on way to enter data correctly in MHTS.Net. Nursing staff provide the screenings, therefore the memorandum needs to be a dual signature. | |

| Acronyms: | |
|---|---|
| MH - Mental Health | QIP - Quality Improvement Plan |
| QI - Quality Improvement (Specific to new process requested by Coleman Special Master) | LOS - Length of Stay |
| SRE - Suicide Risk Evaluations | DRC - Death Review Committee |
| SCR - Suicide Case Review | EMR - Electronic Medical Record |