KAMALA D. HARRIS
Attorney General of California
JONATHAN L. WOLFF
Senior Assistant Attorney General
JAY C. RUSSELL
Supervising Deputy Attorney General
DEBBIE VOROUS, State Bar No. 166884
PATRICK R. MCKINNEY, State Bar No. 215228
WILLIAM DOWNER, State Bar No. 257644
Deputy Attorneys General
 455 Golden Gate Avenue, Suite 11000
 San Francisco, CA  94102-7004
 Telephone:  (415) 703-3035
 Fax:  (415) 703-5843
 E-mail:  Patrick.McKinney@doj.ca.gov

*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>　　　　　　　　　　Plaintiffs,<br><br>v.<br><br>EDMUND G. BROWN, JR., et al.,<br><br>　　　　　　　　　　Defendants. | 2:90-cv-00520 LKK JFM PC<br><br>**DECLARATION OF ACTING UNDERSECRETARY HOSHINO IN SUPPORT OF DEFENDANTS' RESPONSE TO PLAINTIFFS' EVIDENTIARY OBJECTIONS**<br><br>Judge:　　　Hon. Lawrence K. Karlton<br>Date:　　　　March 27, 2013<br>Time:　　　　10:00 a.m.<br>Courtroom:　4 |

I, Martin Hoshino, declare:

1. I have been employed with the California Department of Corrections and Rehabilitation (CDCR) since 2003 and am currently the Acting Undersecretary for Operations. From April 20, 2011 to March 1, 2012, I served as the Undersecretary for Administration and Offender Services. One of my responsibilities in that position was to oversee CDCR's mental and

1

Decl. Hoshino Supp. Defs.' Response to Pls.' Evidentiary Objections  (2:90-cv-00520 LKK JFM PC)

dental health care system. I also served as the Acting Secretary for CDCR from November 12, 2012 to December 27, 2012.

2. I am not an attorney, but interact with many of them through my prior and current position. I have spoken alone on the telephone with Michael Bien, Plaintiffs' counsel on the *Coleman* and *Hecker* cases regarding CDCR's mentally ill inmates, two or three times. I have also spoken by telephone with Mr. Bien and Benjamin Rice, CDCR's Assistant Secretary/General Counsel, approximately seven or eight times. Sometimes Mr. Bien has initiated the contact, and sometimes I have reached out to him. Issues that I specifically remember discussing with Mr. Bien during these calls directly concerned some of the substance of the *Coleman* and *Hecker* cases. We have discussed our respective views of what issues remain in *Coleman*. Items of specific discussion included ideas for resolving the waiting list for inmate patients requiring a higher level of care, mental health bed planning to be contained in the CDCR "Blueprint," and potential crossover issues between the *Coleman* and *Hecker* cases.

3. I have also spoken alone on the telephone with Matthew Lopes, the Special Master in *Coleman*. In my prior and current position, I often discussed the history, current status, and progress of the *Coleman* case and CDCR's mental health delivery system. I have discussed potential solutions to issues with Mr. Lopes and asked him on occasion to help bridge the differences between the parties in the *Coleman* case with the assumption that he was able to manage communications with the Plaintiffs. I also provided advanced courtesy notice to Mr. Lopes of CDCR's plans and objectives in *Coleman*. After completion of the Fall 2011 project to assess and solve the state of the inmate patient "waitlist," I began to advise Mr. Lopes of the state's growing concern that a means or process to determine whether the CDCR mental healthcare system was constitutional seemed elusive and that a specific mechanism to gauge this should be identified. Without this mechanism or definition, I advised Mr. Lopes that the state would be forced to hire expert consultants to assess the constitutionality of CDCR's mental health care system. Thereafter, I advised Mr. Lopes that CDCR had indeed decided to hire expert consultants to assess the constitutionality of the mental health care system, and that they would tour the prisons. Later, I specifically discussed with Mr. Lopes that CDCR's expert consultants

were in the process of touring prisons during a site visit at RJ Donovan prison in June 2012. After that, I also advised Mr. Lopes that the tours were completed and that when a report was submitted, CDCR would have to determine whether to move to terminate *Coleman*.

4. Based on the continuing and frequent contact of all of the participants in this case, including the heavy workload and interaction of all the parties working on the successful "waitlist and sustainable process" projects from August 2011 to present, it would be unreasonable to assume that Plaintiff's counsel were unaware that state-hired experts were touring CDCR's prisons. Based on my experience and familiarity with the information flow and people involved in this case, I presume Mr. Lopes understood that CDCR's expert consultants were interviewing inmates during the prison tours. I also presume that Mr. Lopes would have informed Plaintiffs' counsel in *Coleman* of the tours. At no point did Mr. Lopes express any concern that the expert consultants would speak with the inmates without their counsel present.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on March 25, 2013 at Sacramento, California.

/s/ *Martin Hoshino*
Martin Hoshino
Acting Undersecretary for Operations
California Department of Corrections and Rehabilitation
**(original signature retained by defense counsel)**

CF1997CS0003
20680780.doc