KAMALA D. HARRIS
Attorney General of California
JONATHAN L. WOLFF
Senior Assistant Attorney General
JAY C. RUSSELL
Supervising Deputy Attorney General
DEBBIE J. VOROUS, SBN 166884
PATRICK R. MCKINNEY, SBN 215228
WILLIAM H. DOWNER, SBN 257644
Deputy Attorney General
 1300 I Street, Suite 125
 P.O. Box 944255
 Sacramento, CA 94244-2550
 Telephone:  (916) 324-5345
 Fax:  (916) 324-5205
 E-mail:  Debbie.Vorous@doj.ca.gov

*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **RALPH COLEMAN, et al.,**<br><br>                                        Plaintiffs,<br><br>       v.<br><br>**EDMUND G. BROWN, JR., et al.,**<br><br>                                        Defendants. | 2:90-cv-00520 LKK JFM PC<br><br>**DEFENDANTS' OBJECTIONS AND MOTION TO STRIKE PORTIONS OF SPECIAL MASTER'S REPORT ON SUICIDES OCCURRING IN CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION IN THE FIRST HALF OF 2012** |

## INTRODUCTION

California's system of suicide prevention far exceeds the basic constitutional requirements: the State prevents hundreds of suicides each year and intervenes to help thousands of suicidal patients. (Defs.' Mot. to Terminate, ECF No. 4275–1; Defs.' Reply to Pls.' Opp'n to Mot. to Terminate, ECF No. 4487.)  Yet, the special master's report suggests that the number of suicides that occurred in 2012 is of constitutional significance.  It is not. The special master found that

1

Defs' Objs. & Mot. to Strike Portions of Report on Suicides Occurring in 2012 (January to June)  (2:90-cv-00520 LKK JFM PC)

only *two* of fifteen suicides in the first half of 2012 were "foreseeable." He identifies four other cases in which he concedes the suicides were neither foreseeable nor preventable. Of the remaining cases discussed in the report, the special master's conclusions that these suicides were "preventable," generally amounts to an impermissible exercise in second-guessing and conjecture. Finally, the claim that Defendants have ignored recommendations by the special master is inaccurate. The State, therefore, objects to this report because it is misleading, lacks foundation, and fails to assess whether the State's prison mental health care system satisfies constitutional standards. It must not be used to support the continued intrusive and costly oversight of California's prison mental-health system.

## PROCEDURAL DISCUSSION

On January 30, 2013, the Court ordered the Special Master to file a report on suicides completed in the California Department of Corrections and Rehabilitation in the first six months of calendar year 2012 "as soon as practicable." (ECF No. 4319 ¶ 1.) The special master filed his report on March 13, 2013. (ECF No. 4375.) Previously, the State had thirty days to provide the special master with informal comments and objections. (1995 Order of Reference, Docket No. 640.) On January 30, 2013, the Court eliminated this interim step and ordered the parties to file any objections to the report on suicides completed in the first six months of 2012 ten days after the report was filed. (ECF No. 4319 ¶ 2.)

Defendants object to the special master's report under Federal Rule of Civil Procedure 53(f) because it is misleading, lacks foundation, and is irrelevant to the issue at hand. Because the Court has eliminated the opportunity for the special master to consider the parties' comments and objections before this report was filed, and reduces the twenty-one day time period to file objections or a motion to strike the 152-page report under Federal Rule of Civil Procedure 53(f) to ten days, Defendants reserve their right to raise additional objections to the report that they may have inadvertently overlooked in the compressed time frame.

///
///
///

2

Defs' Objs. & Mot. to Strike Portions of Report on Suicides Occurring in 2012 (January to June)  (2:90-cv-00520 LKK JFM PC)

**OBJECTIONS**

**I.    California's Suicide-Prevention Program Complies with the Constitution.**

The Court's March 15, 2013, order states that it will consider Defendants' arguments and evidence concerning the constitutionality of their suicide-prevention program when Defendants' termination motion is fully briefed and argued.  (ECF No. 4394 at 2:8–13.)  It appears that this order and the special master's responsive report were precipitated by Defendants' termination motion. (*See* ECF No. 4394 at 1 n.1 & 2 n.2; ECF No. 4376 at 5–23.**)**  For that reason, Defendants likewise object to the special master's report on suicides occurring in the first half of 2012 on the ground that the report fails to assess whether the State's prison mental health care system satisfies constitutional standards.  To that end, Defendants incorporate in these objections the arguments and evidence set forth in their moving and reply brief in support of their motion to terminate.  (*See* ECF No. 4275–1 at 21:18–23:10; ECF No. 4326 at 3–6; ECF No. 4487 at 39:18–64:11.)

**II.   Language Concerning the Suicide Rate in CDCR Prisons and Comparison to Other Suicide Rates.**

Defendants object to the language in the report concerning the suicide rate in CDCR prisons and its comparison to other suicide rates as reflected in the U.S. Department of Justice Report because it is misleading.  (ECF No. 4376 at 2-3, 5–7.)  As Defendants have previously stated, even if the U.S. Department of Justice Report's report entitled "Mortality in Local Jails and State Prisons, 2000-2010—Statistical Tables" (DOJ Mortality Report) is used for comparison purposes, *California's suicide rate is not an outlier*.  According to this report, California's prison suicide rate is in the middle of other state prison systems.  (ECF No. 4314 at 8:10-11.)  Based on prison mortality statistics from 2001 through 2010, California's average prison suicide rate of 20 for this time period is lower than or equal to that of 20 other states.  (*Id.* at 8:12-13.)  Twenty-five other states have prison suicide rates higher than the national average of 16.  (*Id.* at 8:15-16.)  And California's suicide rate over the last decade is less than half that of the national suicide rate in jails, which is 41 per 100,000.  (*Id.*)

3

Defs' Objs. & Mot. to Strike Portions of Report on Suicides Occurring in 2012 (January to June)  (2:90-cv-00520 LKK JFM PC)

Similarly, a suicide-rate comparison between California and other states is misleading. The Special Master places undue reliance on comparisons between California's reported suicide rate and those noted in the DOJ Mortality Report. But, as the Mortality Report itself notes, "Mortality rates between states are not directly comparable because rates are not adjusted for differences in age, sex, race, geographic location, and any other characteristics." (ECF No. 4313, Ex. 1 at 3.) As the State has pointed out, there are numerous demographic factors that impact these rates, and render comparisons between California's suicide rate and those reported in the DOJ Mortality Report questionable at best. In addition, suicide rates vary substantially based on commitment offense. Last, the Special Master's comparison fails to take into account criminal justice realignment's impact on California's 2012 prison suicide rate. (*See* ECF No. 4487 at 48:24–49:28; ECF No. 4314 at 7:26-8:9; Dvoskin Resp. to 2011 Suicide Report at 5, ECF No. 4326–6.)

As the Seventh Circuit has noted, suicide rate by itself is not a meaningful index of suicide risk. *Boncher v. Brown County*, 272 F.3d 484, 486 (7th Cir. 2001) (Posner, J.). "It is not the number of suicides that is a meaningful index of suicide risk and therefore of governmental responsibility [citations]; and it is not even the rate by itself, but rather the rate relative to the 'background' suicide rate in the relevant free population (the population of the area from which the jail draws its inmates) and to the rate in other jails." *Id.* at 486-87. According to the Centers for Disease Control and Prevention, adult males in the country commit suicide at a rate of 25.94 per 100,000. *Available at* http://www.cdc.gov/nchs/fastats/suicide.htm (last visited March 21, 2013). The American Foundation for Suicide Prevention states that a person commits suicide every 13.7 minutes in the country. Facts and Figures, American Foundation for Suicide Prevention, available at http://www.afsp.org/index.cfm?fuseaction=home.viewPage&page_id=04EA1254-BD31-1FA3-C549D77E6CA6AA37 (last visited March 21, 2013).

The special master's Suicide Report glosses over these important statistical distinctions. The Court should therefore strike the language concerning the suicide rate in CDCR prisons and its comparisons with other suicide rates.

4

Defs' Objs. & Mot. to Strike Portions of Report on Suicides Occurring in 2012 (January to June)   (2:90-cv-00520 LKK JFM PC)

**III. Objections to the Use of the Terms Foreseeable and Preventable.**

The special master's report states that in "11 or 73 percent of the 15 reviewed cases, the inmate's suicide was either foreseeable or preventable." (ECF No. 4376 at 4.) But of the 15 reported suicides in the first half of 2012, the special master found that 13 were *not* foreseeable. (*Id.,* Appendix H at 1–85, finding only Inmates C and E foreseeable *and* preventable.) These findings foreclose the implication by the special master that Defendants are responsible for having failed to prevent these suicides. (ECF No. 4487 at 52:6–53:9 & 53 n.22.) The special master's claim that Defendants are responsible for "preventable" suicides even where the suicide was not foreseeable is spurious. A state official's legal obligation only arises in response to a known, obvious risk of danger. *Farmer v. Brennan,* 511 U.S. at 825, 838 (1994).

**IV. Special Master's Report on Individual Cases.**

The special master's suicide report scours the record for errors, invariably finding some past wrongs with 20-20 hindsight. Those errors frequently occurred months or years before the suicide itself and were clearly not the actual and proximate cause of the death. Many of the purported "mistakes" identified in the reports are no more than differences in clinical judgment about an inmate's treatment needs at the time. In many instances, the special master's conclusion that a suicide could have been prevented had a certain event previously occurred rests on sheer speculation. In those far fewer instances where the special master raises legitimate concerns, the evidence consistently shows that prison officials promptly and efficiently responded to the identified shortcomings.

The special master's suicide report criticizes the State's responses to suicides in primarily four areas: 1) referrals to higher levels of care; 2) completions of suicide risk evaluations; 3) emergency responses; and 4) 30-minute welfare checks. As discussed in detail in Defendants' rely brief, these criticisms are unfounded, and should be struck because they disregard the causation requirement, and because they engage in hindsight second-guessing and speculation. (*See* Defs' Reply Brief, ECF No. 4487 at 53:10–60:16; *see also* Hoffman Reply Decl. ¶¶ 45–51, ECF No. 4452; ECF No. 4491–17, Dvoskin Rep. 2012 Suicides at 10 concerning Inmate F ("The judgment calls that they reportedly made appear to me to have been reasonable, based on what

5

was known at the time they made them."), at 13–14 concerning Inmate J (there "were no known precipitating events, and there is no evidence or suggestion that the inmate communicated his suicidal intentions to anyone or that he failed to receive timely service for any known mental health need"), and at 15 for Inmate K ("I do not believe this case presents any failure on the part of CDCR mental health or custody staff."); Buckley Reply Decl. ¶ 13, ECF No. 4450.)

Take away the special master's erroneous conclusions that most of these suicides were preventable, and the State's purported responsibility for them significantly decreases. And, in the instances where the suicide review process identified valid concerns, the evidence Defendants presented in their reply brief shows that the institutions responded immediately to remedy these issues. (*See* ECF No. 4487 at 60:16–61:14; *see also* Keith Reply Decl. ¶¶ 8–10, ECF No. 4455; Hoffman Reply Decl. ¶ 52, ECF No. 4452; Schneider Reply Decl. ¶¶ 24–25, ECF No. 4471; Cho Reply Decl. ¶ 7, ECF No. 4463.)

**V.   Defendants Have Not Ignored the Special Master's Recommendations.**

In the special master's report, his expert cites to three recommendations that, he asserts, CDCR "*year after year, ... fails to implement.*" (ECF No. 4376 at 8–10.) Defendants object to these statements because they lack foundation and are inaccurate.

The first stated recommendation is: "Continuation of monitoring and assessment of conduct of five-day clinical follow-up, custody staff adherence to policies and procedures regarding conduct of custody welfare checks and others, and supervision of inmates, including those who are single-celled and have histories of increased risk of suicide." (ECF No. 4376 at 8.) First, the recommendation itself is simply that he be allowed to continue monitoring. So there is nothing in the recommendation for CDCR to implement. And all of the items, which the special master recommends that he continue monitoring, have already been implemented and are ongoing. (ECF No. 4487 at 42:16–48:12; Belavich Reply Decl. ¶¶ 6, 17, 42, 44 & 47, ECF No. 4472; Allison Reply Decl. ¶¶ 4–14, ECF No. 4478.)

The second recommendation is: "Continuation of monitoring of referrals to higher levels of care, particularly referrals to MHCBs and to DSH programs, as per indicators within the 7388B referral process." (ECF No. 4376 at 9.) This comment is confusing—the sustainable process

6

Defs' Objs. & Mot. to Strike Portions of Report on Suicides Occurring in 2012 (January to June)   (2:90-cv-00520 LKK JFM PC)

evaluation conducted jointly between the Special Master and CDCR in late 2011 showed that the system in place is working as intended. (Belavich Reply Decl. ¶¶ 14–15, ECF No. 4472.) In addition, as the special master is well aware, CDCR has continued to monitor and see improvements in the process. (*Id.,* Ex. C.) Finally, as noted, referrals to DSH programs have increased since 2011. (*Id.* ¶ 16.)

And the last recommendation is: "Continuation of monitoring emergency response procedures, particularly in higher-custody housing such as administrative segregation, secured housing units, and psychiatric services units, establishment of state-wide criteria to improve emergency cell entry and extraction procedures." (ECF No. 4376 at 10.) Again, the special master's recommendation is that he continue monitoring actions that CDCR has already implemented and are ongoing. (ECF No. 4376 at 10; ECF No. 4487 at 44:26–45:15; Allison Reply Decl. ¶¶ 4–14, ECF No. 4478; Belavich Decl. ¶ 45, ECF No. 4472.)

**VI. Objection to Any Recommendation That the Court Order Further Costly and Intrusive Oversight of the Prison Mental Health Care Delivery System.**

Once again, the special master's report offers no remedial recommendations, instead concluding that the same recommendation made in the report on suicides occurring in 2011 be made, specifically, that a "suicide prevention/management work group" be established. (ECF No. 4376 at 22.) As explained in Defendants' reply brief, CDCR has already developed a new suicide prevention workgroup at its headquarters to further address inmate suicides. (ECF No. 4487 at 43:24–25.) The State has presented compelling evidence that it has remedied any deficiencies in implementing suicide prevention policies and procedures and that it now has a robust suicide prevention program that far exceeds the constitutional minimum. (ECF No. 4475–1 & ECF No. 4487.) Therefore, the Court must reject any suggestion that CDCR's suicide workgroup should include any participation by the special master, the special master's experts, or Plaintiffs' counsel.

## CONCLUSION

As shown above, the special master's expert has made various findings that are unsupported by facts, and draws unreasonable and unsupported conclusions from other information, including the U.S. Department of Justice's Mortality Report. Moreover, in

7

Defs' Objs. & Mot. to Strike Portions of Report on Suicides Occurring in 2012 (January to June)   (2:90-cv-00520 LKK JFM PC)

reiterating the recommendations made in past reports, the special master's expert fails to acknowledge that Defendants have implemented and are continuing most of those suicide prevention recommendations.  Accordingly, the special master's report must be stricken.

Dated:  March 25, 2013.

Respectfully submitted,

KAMALA D. HARRIS
Attorney General of California

*/s/ Debbie J. Vorous*

DEBBIE J. VOROUS
Deputy Attorney General
*Attorneys for Defendants*

CF1997CS0003

8

Defs' Objs. & Mot. to Strike Portions of Report on Suicides Occurring in 2012 (January to June)   (2:90-cv-00520 LKK JFM PC)