| | |
|---|---|
| DONALD SPECTER – 083925<br>STEVEN FAMA – 099641<br>PRISON LAW OFFICE<br>1917 Fifth Street<br>Berkeley, California 94710-1916<br>Telephone: (510) 280-2621 | MICHAEL W. BIEN – 096891<br>JANE E. KAHN – 112239<br>ERNEST GALVAN – 196065<br>THOMAS NOLAN – 169692<br>LORI E. RIFKIN – 244081<br>AARON J. FISCHER – 247391<br>MARGOT MENDELSON – 268583<br>KRISTA STONE-MANISTA – 269083<br>ROSEN BIEN GALVAN &<br>GRUNFELD LLP<br>315 Montgomery Street, Tenth Floor<br>San Francisco, California 94104-1823<br>Telephone: (415) 433-6830 |
| JON MICHAELSON – 083815<br>JEFFREY L. BORNSTEIN – 099358<br>LINDA L. USOZ – 133749<br>MEGAN CESARE-EASTMAN – 253845<br>K&L GATES LLP<br>4 Embarcadero Center, Suite 1200<br>San Francisco, California 94111-5994<br>Telephone: (415) 882-8200 | CLAUDIA CENTER – 158255<br>THE LEGAL AID SOCIETY –<br>EMPLOYMENT LAW CENTER<br>180 Montgomery Street, Suite 600<br>San Francisco, California 94104-4244<br>Telephone: (415) 864-8848 |

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>EDMUND G. BROWN, Jr., et al.,<br><br>　　　　Defendants. | Case No. Civ S 90-0520 LKK-JFM<br><br>**PLAINTIFFS' POST-HEARING BRIEF RE QUESTIONS RAISED BY COURT CONCERNING DEFENDANTS' MOTION TO TERMINATE** |

[774192-2]

# TABLE OF CONTENTS

| | Page |
|---|---:|
| TABLE OF ABBREVIATIONS | iii |
| INTRODUCTION | 1 |
| I. ALTHOUGH DUE PROCESS CONCERNS ARE IMPLICATED, PARTICULARLY GIVEN DEFENDANTS' ACTIONS, THE COURT NEED NOT REACH THE CONSTITUTIONAL QUESTION | 2 |
| II. THE RECORD CONTAINS OVERWHELMING UNDISPUTED EVIDENCE THAT PROSPECTIVE RELIEF REMAINS NECESSARY TO CORRECT CURRENT AND ONGOING CONSTITUTIONAL VIOLATIONS | 3 |
|    A. The Recent Findings of the Special Master Alone Demonstrate That Constitutional Violations Persist | 4 |
|    B. Defendants' Expert Reports Should Be Stricken, and Even If Considered, Deserve Almost No Weight and Do Not Demonstrate that a Constitutional Remedy Has Been Achieved | 5 |
|    C. Plaintiffs' Evidence, Including Plaintiffs' Experts' Findings and Numerous Admissions by Defendants, Demonstrate that Constitutional Violations Persist | 6 |
|    D. Defendants' Reply Evidence Does Not Create Any Material Factual Dispute and Is Largely Inadmissible | 8 |
| III. IF THE COURT DETERMINES THAT THERE ARE MATERIAL FACTUAL DISPUTES REQUIRING AN EVIDENTIARY HEARING, THE COURT SHOULD ENJOIN THE PLRA AUTOMATIC STAY AND HOLD AN EXPEDITED EVIDENTIARY HEARING | 10 |
| CONCLUSION | 10 |

# TABLE OF AUTHORITIES

**Page**

## CASES

*ACLU of Nevada v. Masto*,
   670 F.3d 1046 (9th Cir. 2012) .................................................................................. 3

*Boettcher v. Sec'y of HHS*,
   759 F.2d 719 (9th Cir. 1985) ................................................................................. 10

*Clark v. California*,
   739 F. Supp. 2d 1168 (N.D. Cal. 2010) ................................................................... 1

*Coleman v. Wilson*,
   912 F. Supp. 1282 (E.D. Cal. 1995) ........................................................................ 7

*Gilmore v. California*,
   220 F.3d 987 (9th Cir. 2000) ................................................................................... 1

*Graves v. Arpaio*,
   623 F.3d 1043 (9th Cir. 2010) ................................................................................. 1

*Hangarter v. Provident Life & Accident Ins. Co.*,
   373 F.3d 998 (9th Cir. 2004) ................................................................................... 8

*In Re "Agent Orange" Product Liability Litigation*,
   517 F.3d 76 (2d Cir. 2008) .................................................................................... 10

*Lyng v. Northwest Indian Cemetery Protective Ass'n*,
   485 U.S. 439 (1988) ................................................................................................ 3

*Mackey v. Montrym*,
   443 U.S. 1 (1979) .................................................................................................. 10

*Miller v. French*,
   530 U.S. 327 (2000) ................................................................................................ 2

*United States v. Wilson*,
   881 F.2d 596 (9th Cir. 1989) ................................................................................... 3

## STATUTES

18 U.S.C. § 3626 ............................................................................................................ 1, 3

# TABLE OF ABBREVIATIONS

| | |
|---|---|
| ACA | American Correctional Association |
| APP | Acute Psychiatric Program |
| ASH or Atascadero | Atascadero State Hospital |
| ASP or Avenal | Avenal State Prison |
| ASU | Administrative Segregation Unit |
| BCP | Budget Change Proposal |
| CAL or Calipatria | Calipatria State Prison |
| CCC | California Correctional Center |
| CCCMS | Correctional Clinical Case Manager System |
| CCI | California Correctional Institution |
| CCPOA | California Correctional Peace Officers Association |
| CCWF | Central California Women's Facility |
| CDCR | California Department of Corrections and Rehabilitation |
| CDPH | California Department of Public Health |
| CEN or Centinela | Centinela State Prison |
| CIM | California Institute for Men |
| CIW | California Institute for Women |
| CMC | California Men's Colony |
| CMF | California Medical Facility |
| CMO | Chief Medical Officer |
| COR or Corcoran | California State Prison/Corcoran |
| CPR | Cardiopulmonary Resuscitation |
| CRC | California Rehabilitation Center |
| CSH or Coalinga | Coalinga State Hospital |
| CTC | Correctional Treatment Center |
| CTF | California Training Facility/Soledad |
| CVSP or Chuckwalla | Chuckwalla Valley State Prison |
| DAI | Division of Adult Institutions |
| DMH | Department of Mental Health |
| DOM | Department Operations Manual |
| DSH | Department of State Hospitals |
| DOT | Direct Observation Therapy |
| DVI or Deuel | Deuel Vocational Institute |
| EOP | Enhanced Outpatient Program |
| EOP ASU Hub | Enhanced Outpatient Program Administrative Segregation Unit |
| eUHR | electronic Unit Health Records |
| FOL or Folsom | Folsom State Prison |
| HDSP or High Desert | High Desert State Prison |
| ICF | Intermediate Care Facility |
| IDTT | Interdisciplinary Treatment Team |

[774192-2]

| ISP or Ironwood | Ironwood State Prison |
|---|---|
| KVSP or Kern Valley | Kern Valley State Prison |
| LAC or Lancaster | California State Prison/Los Angeles County |
| LPT | Licensed Psychiatric Technician |
| LVN | Licensed Vocational Nurse |
| LOB | Lack of Bed |
| MCSP or Mule Creek | Mule Creek State Prison |
| MHCB | Mental Health Crisis Bed |
| MHOHU | Mental Health Outpatient Housing Unit |
| MHSDS | Mental Health Services Delivery System |
| NKSP or North Kern | North Kern State Prison |
| OC | oleoresin capsicum |
| OHU | Outpatient Housing Unit |
| OIG | Office of the Inspector General |
| PBSP or Pelican Bay | Pelican Bay State Prison |
| PCP | Primary Care Provider |
| PLRA | Prison Litigation Reform Act |
| PSH or Patton | Patton State Hospital |
| PSU | Psychiatric Services Unit |
| PVSP | Pleasant Valley State Prison |
| R&R | Reception and Receiving |
| RC | Reception Center |
| RJD or Donovan | Richard J. Donovan Correctional Facility |
| RN | Registered Nurse |
| RVR | Rules Violation Report |
| SAC or Sacramento | California State Prison/Sacramento |
| SATF | California Substance Abuse Treatment Facility (II) |
| SCC or Sierra | Sierra Conservation Center |
| SHU | Segregated Housing Unit |
| SM | Special Master in the *Coleman* case |
| SNY | Special Needs Yard |
| SOL or Solano | California State Prison/Solano |
| SQ or San Quentin | California State Prison/San Quentin |
| SVPP | Salinas Valley Psychiatric Program |
| SVSP or Salinas Valley | Salinas Valley State Prison |
| TB | Tuberculosis |
| TTA | Triage and Treatment Area |
| TTM | Therapeutic Treatment Module |
| UHR | Unit Health Records |
| VSPW or Valley State | Valley State Prison for Women |
| VPP | Vacaville Psychiatric Program |
| WSP or Wasco | Wasco State Prison |
| ZZ Cell | Makeshift Temporary Cells Outside of Clinic Areas |

[774192-2]

**INTRODUCTION**

As the Court observed during the March 27, 2103 hearing, Defendants' litigation of their Termination Motion has created a complicated set of issues for the Court. Defendants' litigation tactics have jeopardized Plaintiffs' due process rights to a fair opportunity to litigate the motion because the Prison Litigation Reform Act (PLRA), 18 U.S.C. § 3626(e), requires a ruling on the Termination Motion by April 7, 2013, and Plaintiffs and the Court cannot possibly have the opportunity to further test the reliability of Defendants' proffered evidence in that restrictive time period. The PLRA stay provision, as applied in the instant case, potentially violates the Due Process Clause of the Fourteenth Amendment, however, the Court need not, and should not, reach that issue at this time. Rather, the constitutional avoidance doctrine requires that, if possible, the Court avoid addressing constitutional questions if the case or motion can be decided on other grounds.

Here, Defendants have moved to terminate pursuant to the PLRA. Clearly established Ninth Circuit law requires that Defendants meet their burden to show that their mental health delivery system satisfies Eighth Amendment requirements such that prisoners are no longer subjected to unnecessary risk of serious harm. *See Graves v. Arpaio*, 623 F.3d 1043, 1048 (9th Cir. 2010); *Gilmore v. California*, 220 F.3d 987, 1007 (9th Cir. 2000); *Clark v. California*, 739 F. Supp. 2d 1168, 1175 (N.D. Cal. 2010). Defendants have not met their burden, even were the Court to consider Defendants' flimsy expert reports and 55 new Reply declarations. Moreover, the weight of the evidence submitted by Plaintiffs, along with the recent reports of the Special Master, establishes that Defendants have been and continue to be deliberately indifferent to the risk of harm to prisoners with serious mental illness, and that prospective relief remains necessary to correct current and ongoing constitutional violations. Although an evidentiary hearing may assist the Court in assessing the credibility of witnesses, the Court has a sufficient record to decide the Termination Motion even without such a hearing, and so need not delay a decision on the merits or address the constitutional due process question.

## I. ALTHOUGH DUE PROCESS CONCERNS ARE IMPLICATED, PARTICULARLY GIVEN DEFENDANTS' ACTIONS, THE COURT NEED NOT REACH THE CONSTITUTIONAL QUESTION

In *Miller v. French*, the Supreme Court deliberately left open the question of whether the automatic stay provision of the PLRA, providing only a ninety-day window between the filing of a termination motion and the time a stay of prospective relief would take effect, violates plaintiffs' due process rights: "[W]hether the time is so short that it deprives litigants of a meaningful opportunity to be heard is a due process question, an issue that is not before us. We leave open, therefore, the question whether this time limit, particularly in a complex case, may implicate due process concerns." 530 U.S. 327, 350 (2000). The instant case—a statewide prison class action involving the second largest state prison system in the United States that has been active for twenty years and in which the U.S. Supreme Court affirmed extraordinary relief only two years ago because of the severity of the violations—certainly qualifies as a complex case. And Defendants' litigation choices—conducting secret tours in advance of the filing, violating court orders and ethical obligations, misrepresenting their actions and motives to the Court, and subsequently filing poorly sourced expert reports and inappropriate evidence in their Reply brief—have further complicated the already complex landscape of this case.

Defendants should not profit from their chosen tactics through a delay of the decision on their Termination Motion and imposition of a stay of the relief in this case. Such a stay would grievously and irreparably harm members of the plaintiff class. Defendants have already failed to take basic measures to prevent serious harm to *Coleman* class members even while this Court's orders have been actively monitored and enforced. The stay of relief would instantly withdraw essential Court-ordered relief, including, *inter alia*, waivers of state licensing requirements to provide critically needed mental health crisis bed space, requirements for timely construction to address dire space and bed shortages, and mandated adherence to a minimum staffing plan.

This Court has recognized the serious due process concerns presented by the intersection of Defendants' actions and the time limits imposed by the PLRA. Yet, a

"fundamental and long-standing principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them." *Lyng v. Northwest Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988); *see also ACLU of Nevada v. Masto*, 670 F.3d 1046, 1066 (9th Cir. 2012) (citing "prudential rule that we should avoid deciding a constitutional issue unless necessary to resolve a controversy"). The Court should appropriately take Defendants' actions into account when weighing the credibility of their evidence and considering Plaintiffs' evidentiary objections, and should issue a decision on the merits as promptly as possible. The Court is well-situated to make this evaluation, which, in effect, is analogous to a decision on summary judgment, and there is sufficient undisputed admissible evidence in the record for the Court to make a finding. *Cf. United States v. Wilson*, 881 F.2d 596, 601 (9th Cir. 1989) (granting summary judgment where party offered "little more than a conclusory statement of fact and self-serving declarations in support of their affirmative defenses" and evidence was "entirely too speculative to support any of their contentions").

The Court should grant Plaintiffs' motions to strike Defendants' expert reports, or, in the alternative, accord them little weight in light of their lack of methodology and reliability. The Court should also strike Defendants' improper submission of new, irrelevant, and inadmissible Reply evidence. Defendants will not be unfairly prejudiced by these routine trial management and evidentiary decisions, particularly given that the PLRA permits them to bring renewed termination motions on an annual basis. *See* 18 U.S.C. § 3626(b)(1). Even were the Court to consider all of the evidence presented by Defendants, Defendants have not met their burden in the motion, and the record establishes current and ongoing violations of the Eighth Amendment.

## II. THE RECORD CONTAINS OVERWHELMING UNDISPUTED EVIDENCE THAT PROSPECTIVE RELIEF REMAINS NECESSARY TO CORRECT CURRENT AND ONGOING CONSTITUTIONAL VIOLATIONS

Plaintiffs have demonstrated that prospective relief remains necessary to correct current and ongoing violations of Plaintiffs' rights under the Eighth Amendment. The vague and conclusory expert reports Defendants proffered in support of their Motion to

[774192-2]

Terminate do not establish that the constitutional violations have been remedied. Likewise, Defendants' flurry of Reply declarations fails to provide any admissible evidence that materially undermines the evidence of constitutional violations.

At the March 27 hearing, the Court inquired as to whether there is "uncontroverted evidence" to support a finding of current violations. Hr'g Tr. at 48. To assist the Court on this important question, Plaintiffs provide a sample of the uncontroverted material evidence now in the record, including in the Special Master's findings, Plaintiffs' evidence, and Defendants' own admissions.

### A. The Recent Findings of the Special Master Alone Demonstrate That Constitutional Violations Persist

The Twenty-Fifth Round and the 2011/First Half of 2012 Suicide Reports' findings of the Special Master and his team of experts *alone* demonstrate that fundamental systemic deficiencies persist and that a constitutional remedy has not been achieved. *See, e.g.*, Twenty-Fifth Round Report, Docket No. 2520 at 45 (**Staffing Shortages**: "What is clear is that mental health staffing has been problematic for CDCR for years. If CDCR's inability to fill mental health positions continues, it may need to consider developing a plan for how to address this problem."); *id.* at 34-38 (**Failure to Provide Adequate Treatment to Mentally Ill in Segregation**: finding, *inter alia*, (1) problem of lengthy stays of mentally ill in segregation which can "frustrate the goals of clinical care, exacerbating mental illness and potentially increasing the risk of suicidality," (2) "pervasive problem" of inappropriate treatment settings, (3) ASU hub institutions are "nearly universally falling short on th[e] parameter of EOP care" regarding appropriate amount of structured therapeutic activity); *id.* at 33 (**Inadequate Access to Inpatient Care**: "levels of performance continued to lag on the basic elements within the process moving seriously mentally [ill] patients into inpatient care"); *id.* at 24-25 (**Failure to Implement Adequate Suicide Prevention Program**: "The problem of inmate suicides has not been resolved…. The gravity of this problem calls for further intervention. To do any less and to wait any longer risks further loss of lives."); *id.* at 13 (**Inadequate Quality Management**: "There remained an

1  important need to institute uniform system-wide processes for improving the quality of
2  mental health care in CDCR prisons. Even when the existing processes were consistent
3  with a quality improvement process, they often lacked the capacity to implement needed
4  changes because the required remedy involved system wide issues that could only be
5  effectively addressed at the health care central office level."); Special Master's Suicide
6  Report First Half of 2012, Docket No. 4376 at 8 & 15 (**Failure to Implement Adequate**
7  **Suicide Prevention Program**: "[The Special Master] has repeated many of the same
8  recommendations over and over again in his annual reports because, year after year,
9  CDCR fails to implement these recommendations."; "[T]he already excessively high rate
10 of suicides has not improved.").

### B. Defendants' Expert Reports Should Be Stricken, and Even If Considered, Deserve Almost No Weight and Do Not Demonstrate that a Constitutional Remedy Has Been Achieved

13  Defendants' expert reports should be excluded, or given no weight, because of the
14 improper and unethical manner in which Defendants and their experts conducted
15 discovery. *See* Corrected Pls.' Evid. Objs. to Defs.' Expert Reports and Declarations
16 ("Pls.' Evid. Objs. to Expert Reports"), Docket No. 4423; Pls' Reply to Defs' Response to
17 Order to Show Cause at 11-12, Docket No. 4524.  However, if the expert reports were
18 considered, they do not establish that Defendants have remedied their long history of
19 violations of Plaintiffs' constitutional rights. *See generally* Corrected Pls.' Opp. to Mot. to
20 Terminate ("Pls.' Opp. Br."), Docket No. 4422.  The reports have none of the indicia of
21 reliable expert testimony:  they are conclusory and vague, do not explain the methodology
22 the experts used to arrive at their conclusions, and do not cite the sources of their
23 information.  Plaintiffs' depositions of the experts also exposed their lack of uniform and
24 scientific methodology, standards, and analysis. *See generally* Pls.' Evid. Objs. to Expert
25 Reports.  Moreover, at the direction of counsel, Defendants' experts did not even look at
26 issues such as inpatient psychiatric hospitalization or the impact of overcrowding on
27 mental health treatment, although just a few months prior to when they began their review,
28 the Supreme Court affirmed the ruling that overcrowding was the *primary* cause of the

1  constitutional violations in this case. *See, e.g.*, Pls.' Opp. Br. at 83-84.

2  In short, Defendants' affirmative evidence submitted with their Motion to
3  Terminate should be excluded given the profound ethical violations on which such
4  evidence was built; even if considered, such evidence does not establish that the
5  constitutional violations in Defendants' mental health care system have been fixed.

6      **C.  Plaintiffs' Evidence, Including Plaintiffs' Experts' Findings and Numerous Admissions by Defendants, Demonstrate that Constitutional Violations Persist**

8  Plaintiffs' experts' detailed findings on the current state of treatment of California's
9  mentally ill prisoners establish that systemic constitutional violations by Defendants
10 continue to cause needless deaths and suffering, and continue to put *Coleman* class
11 members at risk of serious harm. *See generally* Pls.' Opp. Br.

12 In addition to Plaintiffs' experts' findings, the findings of Defendants' *own* experts
13 and consultants, as well as the admissions of the State's leadership and institutional staff,
14 demonstrate that the core material facts are not in dispute. *See, e.g.*, Pls.' Opp. Br. at 19-
15 24 (**Lack of Adequate Facilities**: Defendants' documents and institution staff showing
16 that facilities are currently inadequate); *id.* at 28-31 (**Staffing Shortages**: Defendants'
17 experts and institution staff admissions that CDCR staffing shortages still adversely impact
18 aspects of treatment, CDCR leadership admissions that they are not funding certain
19 allocated mental health staff positions to achieve "salary savings"); *id.* at 36-39 (**Punitive**
20 **and Harsh Settings for Crisis Level Patients**: Defendants' admissions that inmate-
21 patients requiring crisis level care are still being undressed and placed in cages and made
22 to sleep on the floor in OHUs); *id.* 39-42 (**DSH Staffing Shortages**: DSH staff testifying
23 that severe staff shortages are compromising inpatient treatment); *id.* at 43-47 (**Failure to**
24 **Implement Adequate Suicide Prevention Program**: Defendants' documents and staff
25 admissions showing that reasonable measures to prevent suicide have not been
26 implemented, or have been partially initiated only after the filing of this termination
27 motion); *id.* at 47-48 (**Inadequate Emergency Response**: Defendants' expert finding that
28 emergency response is a serious problem across the system); *id.* at 49-66 (**Harm to**

**Mentally Ill in Segregation**: Defendants' admissions that mentally ill are placed in segregation for non-disciplinary reasons, including lack of beds and their own "safety," and Defendants' experts' finding that those individuals should not be placed there, observing that some were "very sick" and "needed to be somewhere else"; admissions and documents establishing ongoing lack of confidential and appropriate treatment space; admissions and documents showing seriously mentally ill prisoners being placed directly back into dangerous segregation settings after psychiatric hospitalization; Defendants' experts' finding that Defendants' practice of welfare checks for prisoners in segregation for only three weeks is insufficient); *id.* at 67 (**Medication Management Failures**: Defendants' expert's finding that nursing staff do not know side effects of medications, although they should to ensure patient safety); *id.* at 73-76 (**Blanket Exclusion of Death Row Prisoners from Higher Level of Care**: admissions and documents establishing that there is a blanket exclusion of seriously mentally ill condemned prisoners from intermediate care inpatient facilities); *id.* at 78-82 (**Dangerous and Excessive Use of Force Against Mentally Ill**: Defendant's expert recommending changes to use of force policy and practices, which Defendants have not implemented).

On each of the above issues, and more, which relate directly to the elements of a constitutional mental health delivery system (*see Coleman v. Wilson*, 912 F. Supp. 1282 (E.D. Cal. 1995), *there is no dispute as to the underlying material facts:* the locations where prisoners with mental illness are housed and treated; the conditions in those locations; the photographs of cells, treatment spaces, offices and yards; the policies and practices that are in effect; the level of staffing; the length of time it takes to access higher levels of care; the underlying facts concerning each suicide; and Defendants' knowledge and conscious disregard of recommendations for changes and improvements.

Given the record, the Court need not weigh the credibility of fact witnesses through an evidentiary hearing. Instead, this Court may appropriately determine, based on the admissible and competent evidence, whether Defendants continue to be deliberately indifferent to ongoing constitutionally cognizable harm and risk of harm to the *Coleman*

1  class. Defendants' experts and non-expert declarants agree with Plaintiffs on the basic
2  material facts, but argue that despite these facts, the system is constitutional. But that is a
3  dispute as to the ultimate issue, which will not be resolved by an evidentiary hearing
4  because it is the province of the Court, not Defendants' witnesses, to determine what
5  comprises a constitutional system. *See Hangarter v. Provident Life & Accident Ins. Co.*,
6  373 F.3d 998, 1016-17 (9th Cir. 2004) (explaining that no witness – expert or non-expert –
7  should opine on the ultimate legal conclusion, which is the province of the court). The
8  Court has a sufficient factual record before it to determine whether there are current and
9  ongoing constitutional violations harming the *Coleman* class.

### D. Defendants' Reply Evidence Does Not Create Any Material Factual Dispute and Is Largely Inadmissible

The Court expressed its concern that it may be desirable to hold an evidentiary hearing to assess the credibility of Defendants' Reply Declarations. Hr'g Tr. at 17. The 55 Reply Declarations, filed by Defendants three weeks after the close of discovery and just three business days before the Court's hearing, do not materially change the evidentiary record in this case, and thus such a hearing is not necessary.

Defendants' Reply declarations, even were they not from new fact witnesses, are largely inadmissible because they: (1) contain purported evidence that post-dates the March 1, 2013 close of discovery as ordered by the Court (Docket No. 4316); (2) involve assertions of future conditions or actions, which are irrelevant to current conditions; and (3) violate other basic rules of evidence. *See generally* Pls.' Evid. Objs. to Defs.' Reply Declarants and Mot. to Strike, Docket No. 4513.

To the extent any of Defendants' Reply evidence may be considered by the Court, such evidence does not create material disputes. While Defendants' declarations may raise some factual disputes, they are not material to the questions this Court must decide. *See, e.g.*, Sanders Reply Decl. ¶ 3 (Docket No. 4433) (Was a mentally ill prisoner's cell toilet producing an odor or not?); Colley Reply Decl. ¶ 9 (Docket No. 4482) (Was a developmentally disabled, hearing impaired prisoner with serious mental illness OC

pepper sprayed after making a suicidal gesture in the MHOHU crisis bed, or did that happen in his Administrative Segregation Unit cell?); Walsh Reply Decl. ¶ 29 (Docket No. 4439) (Had a mentally ill prisoner lost 30-40 pounds, or just 10 pounds, in the month he had been placed in isolation?). The Reply declarations do nothing to rebut Plaintiffs' experts' findings that Defendants' system continues to cause mentally ill prisoners needless harm, suffering, and death.

The Reply declarations do, however, contain numerous admissions that Defendants' system does not pass constitutional muster, and that Defendants are aware of these ongoing problems. *See, e.g.*, **Mentally Ill Prisoners in Inappropriate Beds Due to Lack of Available Appropriate Beds in the System**: Holland Reply Decl. ¶ 6 (Docket No. 4438), Telander Reply Decl. ¶¶ 5 & 19 (Docket No. 4480), Bachman Reply Decl. ¶¶ 12-13 (Docket No. 4433), Gipson Reply Decl. ¶¶ 20 & 22 (Docket No. 4430), Fischer Reply Decl. ¶ 28 (Docket No. 4429), Jordan Reply Decl. ¶ 20 (Docket No. 4507); **Subjecting Mentally Ill Prisoners to Harsh and Punitive Practices (strip searches, use of cages/restraints for all mentally ill ASU and crisis bed prisoners, placement of suicidal inmate-patients undressed in holding cells for hours)**: Holland Reply Decl. ¶ 10, & 16, Cornell Reply Decl. ¶ 3 (Docket No. 4453); **Denial of Beds to Suicidal Inmate-Patients in OHUs**: Walsh Reply Decl. ¶¶ 8-10, Holland Reply Decl. ¶ 7; **Lack of Confidential Treatment Space**: Telander Reply Decl. ¶¶ 8 & 10; **EOP and CCCMS Inmate-Patients Not Receiving Timely Medication Reviews**: Schneider Reply Decl. ¶¶ 8 & 10 (Docket No. 4471); **Dangerous and Excessive Use of Force Against Mentally Ill**: Martin Reply Decl. ¶ 11 (Docket No. 4483) ("I continue to recommend that CDCR include additional guidance on the use of the expandable baton"), *id.* ¶ 13 ("CDCR staff certainly exercise a tactical preference for OC spray.… I continue to recommend that CDCR provide further guidance and oversight for the use of OC spray."). Defendants' Reply declarants' admissions thus corroborate the findings of the Special Master and Plaintiffs' experts. Where there are factual disputes, and to the extent the Reply declaration evidence is admissible, such disputes are not material to the ultimate question

1  before the Court.

2  **III. IF THE COURT DETERMINES THAT THERE ARE MATERIAL FACTUAL DISPUTES REQUIRING AN EVIDENTIARY HEARING, THE COURT SHOULD ENJOIN THE PLRA AUTOMATIC STAY AND HOLD AN EXPEDITED EVIDENTIARY HEARING**

3

4

5  If this Court, having completed its review of the evidentiary record, finds that there

6  are factual disputes that are material to resolving any part of the Termination Motion,

7  Plaintiffs have a due process right to "a meaningful opportunity to establish the facts

8  necessary to support [their] claim." *In Re "Agent Orange" Product Liability Litigation,*

9  517 F.3d 76, 103 (2d Cir. 2008). Imposing the automatic stay where Plaintiffs have not

10 had a fair opportunity to test the credibility of the eleventh hour Reply evidence deprives

11 Plaintiffs of that fundamental opportunity and also risks grave error. Because the PLRA

12 timeframe would not provide Plaintiffs the opportunity to "present all the relevant facts,"

13 *Boettcher v. Sec'y of HHS*, 759 F.2d 719, 723 (9th Cir. 1985), or to meaningfully "present

14 [their] side of the story," *Mackey v. Montrym*, 443 U.S. 1, 19 (1979), the Court would then

15 have to reach the constitutional question regarding the application of the PLRA automatic

16 stay provision in this case. Under such circumstances, enjoining the PLRA stay provision

17 would be required to protect Plaintiffs' due process rights.

18 Should the Court determine an evidentiary hearing is necessary to evaluate the

19 evidence presented by Defendants' Reply declarants, Plaintiffs are prepared to proceed

20 with an expedited hearing as soon as possible.

21 **CONCLUSION**

22 Defendants are actively and deliberately ignoring their own court-approved

23 remedial plans, existing Court orders, Special Master findings and recommendations, and

24 even the recommendations of Defendants' own experts and consultants. As the evidence

25 amply shows, these are not plans, orders, and recommendations designed to satisfy "best

26 practices," but, rather, to meet constitutional minima. The question is not, as Defendants

27 would have it, how close their mental health system is to perfection. The ongoing gaps in

28 care are not measured in terms of one or two prisoners who commit suicide in a year, but

in one prisoner doing so once every eleven days—and suicides represent just the tip of the iceberg as far as the lack of adequate treatment and affirmative harm Defendants' system deals its mentally ill prisoners. The result of Defendants' continued resistance and non-compliance is a system that subjects class members to ongoing harm and risk of harm, including suffering and death.

Because these conclusions are evident from the record, the Court need not reach the question of whether the PLRA's automatic stay provision violates Plaintiffs' due process rights in this case. Rather, the Court should accord the evidence in the record appropriate weight, and determine that Defendants' Termination Motion fails on the merits. Resolving the Termination Motion now, without risking the undoing of the last eighteen years of Court orders and work of all parties, will best protect the vulnerable members of the Plaintiff class, who are still suffering and at risk of further harm in Defendants' overcrowded, understaffed, and unnecessarily dangerous prison placements where they continue to receive inadequate care for their serious mental health needs.

DATED: March 29, 2013            Respectfully submitted,

ROSEN BIEN GALVAN & GRUNFELD LLP

By: */s/ Michael W. Bien*
    Michael W. Bien

Attorneys for Plaintiffs

[774192-2]