KAMALA D. HARRIS
Attorney General of California
JONATHAN L. WOLFF
Senior Assistant Attorney General
JAY C. RUSSELL
Supervising Deputy Attorney General
DEBBIE VOROUS, State Bar No. 166884
PATRICK R. MCKINNEY, State Bar No. 215228
WILLIAM DOWNER, State Bar No. 257644
Deputy Attorneys General
 455 Golden Gate Avenue, Suite 11000
 San Francisco, CA  94102-7004
 Telephone:  (415) 703-3035
 Fax:  (415) 703-5843
 E-mail:  Patrick.McKinney@doj.ca.gov

*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **RALPH COLEMAN, et al.,**<br><br>                                    Plaintiffs,<br><br>v.<br><br>**EDMUND G. BROWN, JR., et al.,**<br><br>                                    Defendants. | 2:90-cv-00520 LKK JFM PC<br><br>**DEFENDANTS' OBJECTION TO PLAINTIFFS' UNTIMELY POST-HEARING BRIEF; REQUEST FOR ORDER TO REMOVE ECF NO. 4535 FROM THE DOCKET; REQUEST TO FILE RESPONSE**<br><br>Date:         March 27, 2013<br>Time:        1:30 p.m.<br>Dept:         4<br>Judge:       The Honorable Lawrence K. Karlton<br>Action Filed:  1990 |

**TABLE OF CONTENTS**

**Page**

Objection to Plaintiffs' Untimely Post-Hearing Brief ................................................................... 1

Proposed Response to Plaintiffs' Post-Hearing Brief .................................................................... 2

Introduction .................................................................................................................................... 2

    I.    These Termination Proceedings Do Not Implicate Due Process Concerns. ........... 2

    II.   There Is No Basis for the Court to Disregard the State's Expert Reports, or to Give them any Less than Full Evidentiary Weight. ................................................. 4

        A.    The State Notified the Court about the Site Visits. ..................................... 4

        B.    The Systemic Evaluation by the State's Consultants was Appropriate ................................................................................................ 5

        C.    The Court Has Permitted Similar Contacts in the Remedial Phase of this Case. ...................................................................................................... 6

        D.    In Light of the Exhaustive Examination Plaintiffs Were Afforded of the State's Experts' Findings and of the Prison Mental Health Care System Itself, Plaintiffs Suffered No Prejudice From the Fact that the State's Experts Spoke to Some Inmates ............................................... 7

    III.  All Credible Evidence Presented in these Termination Proceedings Demonstrates that Continued Judicial Oversight of Prison Mental Health Care Is Legally Inappropriate. ............................................................................... 9

        A.    Plaintiffs' Arguments—Which Reflect Neither Deliberate Indifference nor a Systemic Federal Law Violation—Must Be Rejected. ....................................................................................................... 9

            1.    The Special Master's Reports Do Not Identify Constitutional Deficiencies. .................................................... 10

            2.    Plaintiffs' Experts Fail to Identify Systemic Constitutional Deficiencies. ................................................................................ 11

        B.    The State's Reply Declarations Are Direct Evidence of a Mental Health System that Exceeds Constitutional Requirements. ..................... 13

Conclusion ................................................................................................................................... 13

i

Defs.' Obj. & Resp. to Pls.' Post-Hearing Brief (2:90-cv-00520 LKK JFM PC)

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Continental Ins. Co. v. Superior Court*
  32 Cal. App. 4th 94 (Cal. App. 2d Dist. 1995) .................................................................. 8

*Frew v. Hawkins*
  540 U.S. 431 (2004) .............................................................................................................. 3

*Gilmore v. California*
  220 F.3d 987 (9th Cir. 2000) ............................................................................................... 2

*Horne v. Flores*
  557 U.S. 447 (2009) ........................................................................................................ 3, 10

*Rufo v. Inmates of the Suffolk Cty. Jail*
  502 U.S. 367 (1992) .............................................................................................................. 3

**STATUTES**

United States Code, Title 18
  § 3626(a)(1)(A) ...................................................................................................................... 3
  § 3626(b) ................................................................................................................................ 2
  § 3626(e) ................................................................................................................................ 3

**CONSTITUTIONAL PROVISIONS**

United States Constitution
  Eighth Amendment ......................................................................................................... 2, 9

**COURT RULES**

Federal Rule of Civil Procedure
  Rule 60(b)(5) ..................................................................................................................... 2, 3

ii

Defs.' Obj. & Resp. to Pls.' Post-Hearing Brief (2:90-cv-00520 LKK JFM PC)

**OBJECTION TO PLAINTIFFS' UNTIMELY POST-HEARING BRIEF**

On March 27, 2013, at the conclusion of oral argument, the parties agreed that the State's termination motion was submitted to the Court. The Court did not request or permit further briefing regarding any issue. Nevertheless, after the close of business on Friday, March 29, Plaintiffs submitted a brief attempting to supplement their oral argument and re-argue numerous issues.

Plaintiffs' supplemental brief is improper, and should not be considered by the Court. The State requests that the Court issue an order requiring Plaintiffs to remove this improperly filed brief from the docket. If the Court nonetheless considers any of Plaintiffs' arguments raised for the first time after this matter was submitted, the State requests that the Court also consider the attached response.

1

Defs.' Obj. & Resp. to Pls.' Post-Hearing Brief (2:90-cv-00520 LKK JFM PC)

**PROPOSED RESPONSE TO PLAINTIFFS' POST-HEARING BRIEF**

**INTRODUCTION**

The State has presented compelling evidence in these termination proceedings that judicial oversight over prison mental health care is no longer necessary or appropriate. Federal Rule of Civil Procedure 60(b)(5) and the Prison Litigation Reform Act (PLRA) both establish that this Court must consider and promptly rule on evidence showing that the State has remedied the constitutional violations that informed this Court's earlier decisions. In order to continue federal judicial oversight, the law places the ultimate burden on the party seeking to continue prospective relief to prove that such relief remains necessary to correct a current and ongoing federal violation. (*See* Corrected Reply, ECF No. 4529, at 7-9.) Plaintiffs failed to prove any systemic deficiency in mental health care that violates inmates' Eighth Amendment right to be free from cruel and unusual punishment.

These termination proceedings do not raise due process concerns. The State appropriately noticed the termination motion, and Plaintiffs conducted full discovery. Plaintiffs failed to present any evidence of systemic deliberate indifference, nor could they because the State has demonstrated that its prison mental health care system meets or exceeds constitutional requirements. Given Plaintiffs' lack of systemic evidence, the Court should consider all of the evidence and grant the termination motion without an evidentiary hearing. However, should the Court conclude that an evidentiary hearing is warranted for the Court to assess the credibility of Plaintiffs' expert witnesses, nothing prohibits the Court from promptly scheduling an evidentiary hearing while the automatic stay has taken effect.

**I.  THESE TERMINATION PROCEEDINGS DO NOT IMPLICATE DUE PROCESS CONCERNS.**

Under the PLRA, "any 'prospective relief' that exceeds the constitutional minimum must be terminated regardless of when it was granted." *Gilmore v. California*, 220 F.3d 987, 999 (9th Cir. 2000); 18 U.S.C. § 3626(b). *Gilmore* upheld the constitutionality of the PLRA's termination provisions, holding that Congress set an appropriate "standard for obtaining relief from final judgments which impose forward-looking remedies." *Gilmore*, 220 F.3d at 1001. The Court must also "promptly rule on any motion to modify or terminate prospective relief in a civil action

2

Defs.' Obj. & Resp. to Pls.' Post-Hearing Brief (2:90-cv-00520 LKK JFM PC)

with respect to prison conditions." 18 U.S.C. § 3626(e).

Similarly, the appropriate inquiry under Rule 60(b)(5) "takes the original judgment as a given and asks only whether 'a significant change either in factual conditions or in law' renders continued enforcement of the judgment 'detrimental to the public interest.'" *Horne v. Flores*, 557 U.S. 447, 453 (2009) (quoting *Rufo v. Inmates of the Suffolk Cty. Jail*, 502 U.S. 367, 384 (1992).) Because institutional reform decrees "raise sensitive federalism concerns," *Horne* and *Rufo* require federal courts to engage in a broad and flexible Rule 60(b)(5) analysis. *Horne*, 557 U.S. at 448, 450; *Rufo*, 502 U.S. at 381. A sweeping injunction, which "reach[es] beyond the parties involved . . . and impact[s] on the public right to the sound and efficient operation of its institutions," remains equitable only so long as it effectively addresses the problem it was designed to remedy. *Rufo*, 502 U.S. at 381. The flexible approach thus requires a federal court "to return control to state and local officials as soon as a violation of federal law has been remedied." *Horne*, 557 U.S. at 450-51; *see also Frew v. Hawkins*, 540 U.S. 431, 442 (2004). "If a durable remedy has been implemented, continued enforcement of the order is not only unnecessary, but improper." *Horne*, 557 U.S. at 450; *see also* 18 U.S.C. § 3626(a)(1)(A) (court-ordered relief "shall extend no further than necessary to correct the violation of a federal right of a particular plaintiff or plaintiffs").

The evidence presented by the State in these proceedings is overwhelming, and shows that the transformation of its mental health care system to meet constitutional standards requires termination of prospective relief. Although Plaintiffs complain about the schedule mandated by the PLRA, their complaints do not raise due process concerns. The termination motion was properly noticed, and the State responded fully to Plaintiffs' extensive discovery. The State produced hundreds of thousands of pages of documents, including the entire file of each of the State's experts. Plaintiffs conducted site visits at 10 institutions, which included private interviews with inmates.[1] Plaintiffs deposed 11 witnesses, including each of the State's experts,

---

[1] Plaintiffs have argued that having all of the parties' counsel along for expert inspections would "establish a common factual baseline" and "promote efficiency and fairness," but their counsel and experts, in conducting prison tours with Defendants' counsel to gather evidence in response to the termination motion, systematically ushered away Defendants' counsel so that

(continued…)

3

1 CDCR Secretary Beard, and Drs. Toche and Belavich.  Moreover, during the site visits, Plaintiffs
2 met and interacted with the CDCR custody and mental health staff who submitted declarations in
3 support of the State's reply brief.  Plaintiffs' failure to produce evidence of an ongoing violation
4 of a federal right that would justify continued federal oversight has nothing to do with a lack of
5 opportunity or any action by the State.

**II.    THERE IS NO BASIS FOR THE COURT TO DISREGARD THE STATE'S EXPERT REPORTS, OR TO GIVE THEM ANY LESS THAN FULL EVIDENTIARY WEIGHT.**

The reports prepared by the State's experts provide insight into the State's mental health system that is valuable to understanding the current condition of California's prison mental health care system.  As discussed in the State's Response to the Order to Show Cause, the State did nothing improper by retaining consultants to evaluate its prison system.  (*See* ECF No. 4499.) Given the timely notice to the Court, the post-judgment context, and the limited nature of the discussions between the State's experts and inmates, there is no basis for the Court to either strike the expert reports or give them any less weight.

**A.    The State Notified The Court About the Site Visits.**

Plaintiffs' argument that the site visits were conducted in "secret" is false.  Before any of the tours began, Defendants notified the Court through the Special Master that they had retained expert consultants to evaluate the prisons' mental health care system, and would be conducting site visits. (Hoshino Decl. ¶ 3, ECF No. 4495.)  Similarly, the State's use-of-force expert, Steve J. Martin, disclosed to one of the Special Master's monitors, Jeffrey Metzner, that he had been retained by the Attorney General's Office and would be touring prisons before the site visits began.  (Decl. Steve J. Martin Supp. Reply ¶ 22, ECF No. 4483.)  Mr. Martin also notified Plaintiffs' counsel before the site visits had concluded and several months before the termination

---

(…continued)
Plaintiffs' experts could speak privately with inmates. (*See, e.g.,* Decl. McKinney Ex. 7 [Dep. Vail] 181:9-25.)  Plaintiffs' assertion that the State arguably violated a court order—in the separate Three-Judge Court proceeding, concerning preparation for a trial that has already concluded—after Plaintiffs themselves deliberately set out to gather evidence outside the presence of defense experts must be rejected.

4

Defs.' Obj. & Resp. to Pls.' Post-Hearing Brief (2:90-cv-00520 LKK JFM PC)

1  motion was filed. (*Id.* at ¶ 24.) At the hearing, Plaintiffs' counsel did not dispute Mr. Martin's
2  testimony concerning these events.

3      **B.   The Systemic Evaluation by the State's Consultants Was Appropriate.**

4  The State's consultants conducted a systemic evaluation which included reviewing the
5  State's policies and management tools; interviewing staff, both at CDCR headquarters and at the
6  institutions; reviewing mental health treatment records; and touring facilities. (*See* Response to
7  OSC, ECF No. 4499, at 5-7.) As part of this systemic evaluation, the experts had minimal
8  interactions with some of the inmate-patients receiving care in the system—to ensure that they
9  were not lacking appropriate care. (Decl. Patrick McKinney Supp. Resp. to OSC, ECF No. 4498,
10 Ex. 1 [Dvoskin Dep.] at 43:8-12; 140:21-141:3.) These discussions did not circumvent legal or
11 ethical obligations. Furthermore, none of the State's attorneys participated in the brief
12 interactions between inmates and the consultants. Moreover, the consultants clearly informed the
13 inmates that they were working on behalf of the State, and limited the discussion to general
14 questions about care provided at the institution. For example, Dr. Dvoskin straightforwardly told
15 the inmates whom he encountered on tours that he was "trying to find out about the mental health
16 care in the prison" and was "interested in how you're doing." (*Id.* at 140-144.) And Dr. Moore's
17 introduction was likewise candid: "My name is Jackie Moore. I'm a registered nurse. I'm
18 working with the Attorney General's Office. We're going to evaluate the quality of mental and
19 health care at this facility. I'm going to ask you about a few questions about your care. Do you
20 care to talk to me? Will you answer my questions?" (*Id.* at Ex. 4 [Moore Dep.] 52:11-19.) In
21 short, the State's consultants did not misrepresent themselves as Plaintiffs have mistakenly
22 alleged.[2]

23 Rather, they arose in the context of an institutional class action in its remedial stage, where
24 standards regarding such communication are relaxed. This is particularly true in this case where
25 there is pervasive communication by the Special Master, his team, and Plaintiffs' counsel. Given

---

[2] In their unsolicited reply to the State's response to the OSC, Plaintiffs misleadingly cite Dr. Moore's testimony by referencing comments made by inmates with whom she had no direct interaction. (ECF No. 4524.) Dr. Moore's above-quoted testimony is clear and unequivocal.

5

Defs.' Obj. & Resp. to Pls.' Post-Hearing Brief (2:90-cv-00520 LKK JFM PC)

1  the absence of any improper intent here, an understanding of the context of the case in which the
2  communication arose, and the lack of prejudice to Plaintiffs' ability to fully respond to the
3  experts' evaluation, the Court should fully consider the expert testimony.

      **C.    The Court Has Permitted Similar Contacts in the Remedial Phase of this Case.**

6  As discussed at oral argument and in the response to the OSC, contact by Plaintiffs' counsel
7  and the Special Master pervades the remedial proceedings here. For instance, Plaintiffs' counsel
8  have commonly discussed the substance of this case with Defendants' key decision makers
9  without notifying Defendants' counsel or receiving their approval. (Decl. Hoshino ¶ 2, ECF No.
10 4495; Decl. Cate ¶ 2, ECF No. 4497.)[3] During prison tours, they also speak to mental health staff
11 without defense counsel present despite defense counsel's attempt to limit such contact. (Decl.
12 Vorous ¶ 4, ECF No. 4496). Likewise, the Special Master and his team also have contact with
13 mental health staff (*id.* at ¶ 2) and, according to Defendants' understanding, also with inmates
14 during their site visits.

15 The notion that the 33,000 inmates who currently comprise the *Coleman* class have an
16 attorney-client relationship with the Plaintiffs' lawyers is a strained legal fiction at best. For
17 example, when an inmate brings an individual action for damages arising out of a complaint
18 related to his or her mental health care, counsel for the *Coleman* class do not purport to represent
19 that inmate. Instead, the inmate represents him or herself, and interacts with counsel for the State
20 in litigation that is directly focused on mental health issues. According to Plaintiffs, such contact
21 would violate the Rules of Professional Conduct, which cannot be the case.

22 There is no automatic prohibition on contacts with absent class members after judgment has
23 been entered and, indeed, the ability to influence a party is of less concern at the remedial stage
24 compared to when liability is at issue. *See Armando Perez & others v. Boston Housing Authority*,

---

[3] Plaintiffs' counsel attempted to explain this away by saying they sometimes notified CDCR counsel before speaking with decision makers, but in this context attorneys working for CDCR are represented parties. In any event, "sometimes" providing notice is simply a concession that in "other times" they held ex parte communications with Defendants' clients as well.

6

Defs.' Obj. & Resp. to Pls.' Post-Hearing Brief (2:90-cv-00520 LKK JFM PC)

379 Mass. 703, 742 (1980); Coffin, The Frontier of Remedies: A Call for Exploration, 67 Calif. L. Rev. 983, 996 (1979)).[4]  Certainly here, where the Court determined liability in 1995 and has worked on institutional reform since, this case qualifies as one in which such communication is not unexpected.  Given the apparent status quo of such communication by Plaintiffs' counsel and the Special Master, it is no surprise that no one was alerted at the time by the expert consultants' interaction with inmates.  At a minimum, the Court's expectations regarding such contacts were unclear, and the State proceeded with a good-faith understanding that providing notice to the Special Master in advance of the site visits was consistent with the practices of the parties over the last 17 years.

  **D.** **In Light of the Exhaustive Examination Plaintiffs Were Afforded of the State Experts' Findings and of the Prison Mental Health Care System Itself, Plaintiffs Suffered No Prejudice From the Fact that the State's Experts Spoke to Some Inmates.**

  Plaintiffs have made no showing that the innocuous factual conversations between the State's consultants and class members caused prejudice to the class members or somehow tainted the proceedings.[5]  Nor could they make such a showing; the consultants' limited communications were simply one part of their thorough evaluation of the mental health care system.  The notion that mental health consultants who have been charged with conducting a thorough evaluation of the mental health care system, would talk with the recipients of the system's care, is neither unusual nor prejudicial.  These interactions did not form the foundation of the consultants' findings and opinions.  And, more importantly, Plaintiffs' counsel were given a full and fair opportunity to examine and probe all of the consultants' opinions, the manner in which they reached them, through the exhaustive discovery process that occurred in this case.

  Plaintiffs conducted extensive discovery, received the consultants' entire files including

---

[4] Plaintiffs cite no case that found similar contacts improper in the post-judgment remedial phase.  Instead, they cite inapposite cases which involved direct attempts by counsel to convince absent class members to exclude themselves from a settlement while liability was still at issue.  Nothing remotely similar occurred in this case.

[5] Plaintiffs' complaints about the site visits are primarily focused on the schedule for termination proceedings mandated by the PLRA.  But it is undisputed that Plaintiffs were aware of the site visits at least several months before the State filed the termination motion.

7

1  all of their notes, and deposed each of the experts about their limited conversations with inmates.
2  The experts kept detailed notes of the inmates they spoke with, and Plaintiffs had sufficient time
3  to speak with those same inmates. That Plaintiffs were unable to make anything out of these
4  communications only confirms that Plaintiffs were not prejudiced by these benign interactions.

5      The experts have testified that they found no systemic deliberate indifference based on their
6  comprehensive review of the system, but they wanted to ensure that there were not inmate-
7  patients who were somehow falling through the cracks. (Decl. McKinney Ex. 1 [Dvoskin Dep.]
8  at 43:8-12; 140:21-141:3.) Had they found such inmates through their interviews, these findings
9  would have worked to the benefit of the individual inmates, who would have received additional
10 care. Moreover, such findings would have only hindered or delayed the State's ability to move to
11 terminate. But the State sought an honest assessment of its system, including identification of any
12 faults so that they could be corrected, which explains why the experts sought out inmates who
13 might have needed more-appropriate care. (*Id.*)

14     Similarly, Plaintiffs failed to demonstrate that any of the underlying policy safeguards
15 have been breached. Specifically, there is no evidence that defense counsel interfered with the
16 attorney-client relationship between Plaintiffs' counsel and the interviewed inmates. The State's
17 counsel did not participate or even listen in on the discussions, and the consultants limited their
18 questions to general questions about mental health care. Similarly, the interviewed inmates were
19 in no way encouraged to change their position in the litigation (such as by being asked to agree to
20 a settlement) without the advice of counsel, which would have been impossible in any event since
21 all class members are bound by the judgment entered long ago. Finally, Plaintiffs have not
22 alleged that their counsel's absence resulted in Defendants deriving any misinformation,
23 damaging admission, or unfair benefit. *See Continental Ins. Co. v. Superior Court*, 32 Cal. App.
24 4th 94, 111 (Cal. App. 2d Dist. 1995) (questioning whether a suppression order is warranted
25 without showing that a violation of Rule 2-100 led to unfair advantage or disclosure of
26 confidential attorney-client-privileged communications). Rather, the consultants' notes and
27 deposition testimony demonstrate that information revealed during the interviews was truthful
28 information that would have been disclosed during a deposition or at trial.

8

Defs.' Obj. & Resp. to Pls.' Post-Hearing Brief (2:90-cv-00520 LKK JFM PC)

The State experts' reports provide a thorough, balanced, and credible evaluation of the prison mental health care system. They should not be excluded or given less weight due to some innocuous conversations with the recipients of mental health care. Given the lack of any prejudice to Plaintiffs, these incidental, innocuous interactions provide no basis to either exclude the report or give it any less weight. In light of the notice provided by the State's counsel to the Court, the context of this case, and the limited nature of the discussions between the State's consultants and inmates, there is no basis for striking the reports. The Order to Show Cause should be discharged, and the reports should be used to assist the Court in deciding that judicial oversight of prison mental health care is no longer necessary.

### III. ALL CREDIBLE EVIDENCE PRESENTED IN THESE TERMINATION PROCEEDINGS DEMONSTRATES THAT CONTINUED JUDICIAL OVERSIGHT OF PRISON MENTAL HEALTH CARE IS LEGALLY INAPPROPRIATE.

As discussed in the termination motion, the reply brief, and at oral argument, California provides care to inmates with serious mental illness that meets or exceeds the minimum requirements of the Eighth Amendment. (*See, e.g.,* Corrected Reply, ECF No. 4529, at 3-7.) The facts demonstrate that the State has invested tremendous resources in prison mental health care, and has recruited and maintains a dedicated staff. There is no evidence before this Court that would indicate deliberate indifference by any state official. To the contrary, state officials take proactive measures to continually improve prison mental health care.

#### A.  Plaintiffs' Arguments—Which Reflect Neither Deliberate Indifference Nor a Systemic Federal Law Violation—Must Be Rejected.

The State's robust, multi-faceted prison mental health system is the very antithesis of deliberate indifference. Unable to rebut the factual evidence presented by the State, Plaintiffs make a number of arguments that should have been presented at oral argument. Plaintiffs should not be permitted to correct their deficient argument after the matter was submitted. Even if the Court considers the arguments, none of Plaintiffs' repeated generalizations about the system as a whole based on little more than hyperbolic misrepresentations, anecdotes from inmates, and a few isolated cases from among the more than 32,000 inmate-patients receiving appropriate care withstand scrutiny.

9

Defs.' Obj. & Resp. to Pls.' Post-Hearing Brief (2:90-cv-00520 LKK JFM PC)

### 1. The Special Master's Reports Do Not Identify Constitutional Deficiencies.

On pages 4-5 of their supplemental brief, Plaintiffs again cite the Special Master's twenty-fifth round report for examples of alleged deficiencies. The Special Master's report in no way establishes that the State is deliberately indifferent to inmates' serious mental health needs. As discussed on page 26 of the termination motion and page 13 of the reply, rather than simply being required to satisfy the requirements of the Constitution, the State is required to achieve 90% compliance with all prison mental health procedures and program guides and court orders (and 100% compliance with policies and procedures and court orders related to suicide prevention). The Special Master's reports do not assess whether the State's prison mental health care system satisfies constitutional standards. *See Horne*, 557 U.S. at 450 (citation omitted) ("[F]ederal court decrees exceed appropriate limits if they are aimed at eliminating a condition that does not violate federal law . . . .").

Regarding the specific issues Plaintiffs raised in their supplemental brief, the termination proceedings established the following:

(1) The State is and has been providing care that meets the mental health care needs of *Coleman* class members statewide under current levels of mental health staffing. (*See* Termination Motion and Supporting Evidence; Reply 4 & 26-29; Williams Reply Decl. ¶¶ 3-7, ECF No. 4446; Cash Reply Decl. ¶¶ 3-5, ECF No. 4459; Jordan Reply Decl. ¶¶ 2-5, ECF No. 4458; Holland Reply Decl. ¶¶ 4-5, ECF No. 4438; Chaiken Reply Decl. ¶ 4, ECF No. 4476; Johnson Reply Decl. ¶¶ 3-5, ECF No. 4508; Monthei Reply Decl. ¶ 14, ECF No. 4436; Fischer Reply Decl. ¶¶ 4-6, ECF No. 4429.)

(2) The State is appropriately meeting the mental health needs of inmates housed in segregation. (Reply at 65-73; Jordan Reply Decl. ¶¶ 20-29, 40-42, & 51-54; Fischer Reply Decl. ¶¶ 33-36; Walsh Reply Decl. ¶¶ 23-24, ECF No. 4439; Holland Reply Decl. ¶¶ 8-9.)

(3) There are virtually no patients waiting to be placed into Department of State Hospitals inpatient programs. (Reply 20-21; Gaither Reply Decl. ¶¶ 8-9, ECF No. 4441.) As discussed at oral argument, as of March 26, 2013, only 3 patients were waiting more than 10 days

10

Defs.' Obj. & Resp. to Pls.' Post-Hearing Brief (2:90-cv-00520 LKK JFM PC)

for acute hospitalization, and no patients were waiting for placement in an intermediate care facility.

(4)  California's system of suicide prevention far exceeds basic constitutional requirements and saves thousands of lives each year. (Reply at 40-65.) Moreover, Plaintiffs' claim that the State has ignored recommendations by the Special Master or other experts is nonsensical and demonstrably false. (*Id.* at 63-64; Belavich Reply Decl. ¶¶ 6, 14-16, 42, 44-45, & 47, ECF No. 4472; Allison Reply Decl. ¶¶ 4-14, ECF No. 4478.)

(5)  The State has implemented a durable quality management system, including continuous and critical self-evaluation to identify issues and further improve the system. (Motion at 19; Reply at 30.) As discussed above and at oral argument, Plaintiffs presented no evidence on this issue.

### 2. Plaintiffs' Experts Fail to Identify Systemic Constitutional Deficiencies.

On pages 6-8 of their supplemental brief, Plaintiffs raise some "problems" or "concerns" that they would fix in a perfect system. None of these examples is evidence of deliberate indifference or a systemic federal violation. Moreover, Plaintiffs should have raised these arguments—all of which were addressed in the reply—at oral argument rather than in a brief after the matter was submitted. Regarding the specific issues Plaintiffs raised in their supplemental brief, the termination proceedings established the following:

(1)  The State provides adequate treatment space to meet its inmates' mental health care needs. (Reply 30-32; Williams Reply Decl. ¶¶ 6-7; Sealed Vorous Reply Decl. Ex. 2-D.)

(2)  The State is and has been providing care that meets the mental health care needs of *Coleman* class members statewide under current levels of mental health staffing. (*See above*.)

(3)  The State provides appropriate, safe care to inmates in mental health crisis. (Reply 19.)

(4)  The State has adequate staff to provide hospital care in Department of State Hospital facilities. (Reply 84-85.) Plaintiffs' argument was based on the complaint of a single

11

Defs.' Obj. & Resp. to Pls.' Post-Hearing Brief (2:90-cv-00520 LKK JFM PC)

psychiatrist who had incomplete information. (*See id.*; DaSilva Reply Decl. ¶¶ 3-7 & 9-12, ECF No. 4442; Gaither Reply Decl. ¶¶ 3-6.)

(5) California's system of suicide prevention far exceeds basic constitutional requirements and saves thousands of lives each year. (*See above* & Reply 40-65.) This includes a comprehensive system for responding to emergencies. (Reply 45-46; Allison Reply Decl. ¶¶ 16-19; Keith Reply Decl. ¶¶ 4-6, ECF No. 4445; O'Laughlin Reply Decl. ¶¶ 2-10, ECF No. 4462; Hoffman Reply Decl. ¶ 19, ECF No. 4452; McMahon Reply Decl. ¶¶ 7-9, ECF No. 4464; Gabeler Reply Decl. ¶¶ 2-10, ECF No. 4473.) Moreover, Plaintiffs point to no evidence that delay in emergency response caused systemic harm, or even that any particular delay in emergency response caused individual harm.

(6) The State is appropriately meeting the mental health needs of inmates housed in segregation. (*See above*.)

(7) The State's medication management program meets or exceeds the standard of care. (Motion 21; Reply 32-28.) Plaintiffs' "complaint" that nurses—who are under the control of the *Plata* receiver—do not always know the side effects of medication does not raise a constitutional question that would require continued judicial oversight. (Reply 34-35.)

(8) Condemned inmates at San Quentin receive appropriate, individualized mental health care. (Reply 21-26.)

(9) There is no pattern or practice or excessive or unnecessary use of force against the *Coleman* class, and the State has heightened safeguards to ensure this remains the case. (Reply 80-82.) Plaintiffs' argument confuses best practice recommendations with constitutional requirements.

Plaintiffs' examples do not raise systemic questions, and are not violations of a federal right that would require prospective enforcement of injunctive relief.

////
////
////
////

12

1    **B.    The State's Reply Declarations Are Direct Evidence of a Mental Health System that Exceeds Constitutional Requirements.**

The declarations submitted by the hard-working, dedicated custody and mental health staff working in the State's prisons directly rebut the evidence submitted by Plaintiffs in opposition to the termination motion. This evidence is appropriate since it could not have been obtained until the State understood what Plaintiffs would claim in their opposition. The declarations—all of which were gathered in the seven days the State was given to respond to the opposition—conclusively demonstrate that many of the statements in the declarations submitted by Plaintiffs' experts are false, misleading, and speculative. This is not surprising since the depositions of Plaintiffs' experts demonstrated that they generally did not write their reports and otherwise lacked credibility. (Reply 14-16.)

Moreover, the evidence in the reply declarations demonstrates that the State has a vibrant, responsive mental health care system. The State's employees take pride in their system, and the evidence demonstrates a lack of deliberate indifference. The issue for the Court is not whether these declarations raise disputed issues of material fact, as Plaintiffs would have it. Instead, this Court must assess based on the record where there evidence of systemic deliberate indifference such that there is a current and ongoing federal violation regarding mental health care. The evidence demonstrates that the opposite is true.

## CONCLUSION

The Court should consider all of the State's evidence, which demonstrates that there is no ongoing systemic violation, and terminate prospective relief in this case. Plaintiffs presented no credible evidence that the State is any way systemically violating the federal rights of inmates with a serious mental illness, and their untimely supplemental brief does not change that. An evidentiary hearing will not assist Plaintiffs. All the admissible evidence proves that the State is providing timely and appropriate mental health care to its prison inmates. If the Court believes that an evidentiary hearing is necessary, it should recognize that the evidence currently demonstrates that the State's inmates are receiving quality, constitutional mental health care, and

13

Defs.' Obj. & Resp. to Pls.' Post-Hearing Brief (2:90-cv-00520 LKK JFM PC)

1 | allow the PLRA stay to go into effect.  There is no basis for continuing burdensome, expensive
2 | federal court monitoring and oversight at this time.

3 | Dated:  April 2, 2013                                              Respectfully Submitted,

KAMALA D. HARRIS
Attorney General of California
JAY C. RUSSELL
Supervising Deputy Attorney General

/s/ Patrick R. McKinney
PATRICK R. MCKINNEY
Deputy Attorney General
*Attorneys for Defendants*

CF1997CS0003
20682825.doc

14

Defs.' Obj. & Resp. to Pls.' Post-Hearing Brief (2:90-cv-00520 LKK JFM PC)