DONALD SPECTER – 083925
STEVEN FAMA – 099641
PRISON LAW OFFICE
1917 Fifth Street
Berkeley, California  94710-1916
Telephone:   (510) 280-221

MICHAEL W. BIEN – 096891
JANE E. KAHN – 112239
ERNEST GALVAN – 196065
THOMAS NOLAN – 169692
LORI E. RIFKIN – 244081
AARON J. FISCHER – 247391
MARGOT MENDELSON – 268583
KRISTA STONE-MANISTA – 269083
ROSEN BIEN GALVAN &
GRUNFELD LLP
315 Montgomery Street, Tenth Floor
San Francisco, California  94104-1823
Telephone:   (415) 433-6830

JON MICHAELSON – 083815
JEFFREY L. BORNSTEIN – 099358
LINDA L. USOZ – 133749
MEGAN CESARE-EASTMAN – 253845
K&L GATES LLP
4 Embarcadero Center, Suite 1200
San Francisco, California  94111-5994
Telephone:   (415) 882-8200

CLAUDIA CENTER – 158255
THE LEGAL AID SOCIETY –
EMPLOYMENT LAW CENTER
180 Montgomery Street, Suite 600
San Francisco, California  94104-4244
Telephone:   (415) 864-8848

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>            Plaintiffs,<br><br>      v.<br><br>EDMUND G. BROWN, Jr., et al.,<br><br>            Defendants. | Case No. Civ S 90-0520 LKK-JFM<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' OBJECTIONS AND MOTION TO STRIKE PORTIONS OF SPECIAL MASTER'S REPORT ON SUICIDES OCCURRING IN CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION IN THE FIRST HALF OF 2012** |

[775614-1]

# TABLE OF CONTENTS

**Page**

TABLE OF ABBREVIATIONS ........................................................................................ iii

INTRODUCTION ............................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND ........................................................ 1

ARGUMENT ....................................................................................................................... 2

I.  DEFENDANTS' FIRST AND LAST OBJECTIONS ESSENTIALLY RE-ARGUE THEIR TERMINATION MOTION AND SHOULD BE OVERRULED ............................................................................................................ 3

II. THE COURT SHOULD REJECT DEFENDANTS' ATTEMPTS TO RE-LITIGATE OBJECTIONS ON WHICH THIS COURT HAS ALREADY RULED MULTIPLE TIMES ...................................................................................... 4

    A.  The Court Should Reject Defendants' Objection to Language Concerning the Suicide Rate in CDCR Prisons and Comparing it to Other Systems ............................................................................................... 4

    B.  Defendants' Unfounded Objection to the Use of Terms Foreseeable and Preventable ....................................................................................... 5

    C.  The Special Master's Report on Individual Cases Are Well-Founded and Supported by Defendants' Termination Expert, Dr. Dvoskin .................. 6

III. DEFENDANTS' ARGUMENT THAT THEY HAVE FOLLOWED THE SPECIAL MASTER'S SUICIDE PREVENTION RECOMMENDATIONS MISUNDERSTANDS THE RECOMMENDATIONS AND IS FURTHER EVIDENCE OF DEFENDANTS' FAILURE TO TAKE APPROPRIATE ACTION TO PREVENT SUICIDES .................................................................... 8

CONCLUSION .................................................................................................................... 9

[775614-1]

i

PLS.' OPPOSITION TO DEFS.' OBJECTIONS & MOTION TO STRIKE PORTIONS OF SPECIAL MASTER'S REPORT ON SUICIDES OCCURRING IN CDCR IN THE FIRST HALF OF 2012

# TABLE OF AUTHORITIES

Page

## **CASES**

*Boncher v. Brown County*,
    272 F.3d 484 (2001) .................................................................................................... 4, 5

*Brown v. Plata*,
    131 S. Ct. 1910 (2011) ..................................................................................................... 4

*Jutzi-Johnson v. U.S.*,
    263 F.3d 753 (7th Cir. 2001) ........................................................................................... 5

[775614-1]

ii

PLS.' OPPOSITION TO DEFS.' OBJECTIONS & MOTION TO STRIKE PORTIONS OF SPECIAL MASTER'S REPORT ON SUICIDES OCCURRING IN CDCR IN THE FIRST HALF OF 2012

# TABLE OF ABBREVIATIONS

| ASP or Avenal | Avenal State Prison |
|---|---|
| ASU | Administrative Segregation Unit |
| CCCMS | Correctional Clinical Case Manager System |
| CDCR | California Department of Corrections and Rehabilitation |
| CPR | Cardiopulmonary Resuscitation |
| EOP | Enhanced Outpatient Program |
| FOL or Folsom | Folsom State Prison |
| PLRA | Prison Litigation Reform Act |
| RJD or Donovan | Richard J. Donovan Correctional Facility |

[775614-1]

iii

PLS.' OPPOSITION TO DEFS.' OBJECTIONS & MOTION TO STRIKE PORTIONS OF SPECIAL MASTER'S REPORT ON SUICIDES OCCURRING IN CDCR IN THE FIRST HALF OF 2012

## INTRODUCTION

On March 28, 2013, Defendants filed Objections and Motion to Strike Portions of Special Master's Report on Suicides Occurring in California Department of Corrections and Rehabilitation ("CDCR") in the First Half of 2012. Docket No. 4527 (hereinafter "Objections"). These Objections largely repeat complaints this Court has squarely rejected before, and the Court should do so again now. Tellingly, Defendants' single new objection—that "Defendants have not ignored the Special Master's recommendations"—misunderstands the basic nature of these recommendations. Defendants misread recommendations for "continuation of monitoring and assessment" (First Half 2012 Report at 8-10) as recommendations that the *Special Master* continue to monitor and assess, when the recommendations actually target *Defendants'* ongoing inadequacies in *their own* monitoring and assessment practices. This misunderstanding underscores Defendants' fundamental failure to take responsibility for implementing adequate and effective suicide prevention measures.

## FACTUAL AND PROCEDURAL BACKGROUND

In response to this Court's January 30, 2013 Order, the Special Master submitted a Report on Suicides Completed in the CDCR, January 1, 2012-June 30, 2012, filed March 13, 2013, Docket No. 4376 (hereinafter "First Half 2012 Report"). This Report focused on the fifteen suicides that occurred during the first six months of 2012, and contextualized these suicides in a broader analysis of the current and historic systemic deficiencies identified by the Special Master's expert, Dr. Patterson. This is the fourteenth report on suicides by Dr. Patterson, who is a nationally recognized expert on suicide prevention in correctional settings. In the First Half 2012 Report, Dr. Patterson noted significant findings of grave concern, including the high rate of suicide within CDCR in the first half of 2012 (23.72 per 100,000), the high percentage of foreseeable and/or preventable suicides in the first half of 2012 (73%), and persistent failures of Defendants over the past fourteen years to provide critical, life-saving suicide prevention measures, such as suicide risk evaluations, 30-minute staggered welfare checks, and timely

[775614-1]

1
PLS.' OPPOSITION TO DEFS.' OBJECTIONS & MOTION TO STRIKE PORTIONS OF SPECIAL MASTER'S REPORT ON SUICIDES OCCURRING IN CDCR IN THE FIRST HALF OF 2012

emergency response. First Half 2012 Report at 2-4. Each of these measures has been the subject of prior recommendations by Dr. Patterson and orders by this Court. Dr. Patterson observed: "[*Y*]*ear after year, CDCR fails to implement these recommendations. . . .* No matter how many times these recommendations are reiterated, they continue to go unheeded, year after year, while the suicides among CDCR inmates continue unabated, and is worsening, as manifested by suicide rates that inch ever higher over the past several years." *Id.* at 8 & 22.

Prior to submitting Objections to the First Half 2012 Report, Defendants had previously objected to and moved to strike portions of the Special Master's Twenty-Fifth Round Monitoring Report and the Report on Suicides Completed in the CDCR in Calendar Year 2011. The Court found these objections to be without merit. *See* 2/28/13 Order, Docket No. 4361; 3/15/13 Order, Docket No. 4394. Despite the Court's clear rulings on Defendants' prior objections, Defendants now repeat many of these same objections here.

## ARGUMENT

Defendants' objections to the First Half 2012 Report provide additional support for Dr. Patterson's conclusion that, in response to the Special Master's recommendations (and, indeed, similar recommendations from CDCR's suicide consultant, Mr. Hayes, and the endorsement of the Special Master's recommendations by Defendant's own termination expert, Dr. Dvoskin), CDCR, year after year, sticks its head in the sand, and denies any wrongdoing or responsibility. Of the six objections Defendants articulate in their Objections, two essentially re-allege the premise of Defendants' Termination Motion; three repeat prior objections that the Court has already rejected to terminology and methodology used by Dr. Patterson; and one fundamentally misunderstands the Special Master's recommendations.[1]

---

[1] Defendants also complain about the "compressed time frame" the Court granted for the filing of their objections, stating that this Court has "eliminated the opportunity for the special master to consider the parties' comments and objections before this report was (footnote continued)

[775614-1]

2

PLS.' OPPOSITION TO DEFS.' OBJECTIONS & MOTION TO STRIKE PORTIONS OF SPECIAL MASTER'S REPORT ON SUICIDES OCCURRING IN CDCR IN THE FIRST HALF OF 2012

## I. DEFENDANTS' FIRST AND LAST OBJECTIONS ESSENTIALLY RE-ARGUE THEIR TERMINATION MOTION AND SHOULD BE OVERRULED

Defendants' first objection ("California's Suicide-Prevention Program Complies with the Constitution") and last objection ("Objection to Any Recommendation That the Court Order Further Costly and Intrusive Oversight of the Prison Mental Health Care Delivery System"), essentially reference and repeat the premise of Defendants' Termination Motion, alleging that Defendants' system is constitutional and monitoring should end. Objections at 3 & 7. This Court previously overruled Defendants' attempts to incorporate the arguments of their Termination Motion into their objections to Special Master reports, and should do so again now. *See* 2/28/13 Order at 10:10-13 & 10:23-11:2; 3/15/13 Order at 2:8-13.

Further, to the extent Defendants' first objection alleges that the First Half 2012 Report "fails to assess whether the State's prison mental health care system satisfies constitutional standards," (Objections at 3:9-10), the Court already extensively addressed and rejected this argument in its February 28, 2013 Order: "As will appear, *infra*, this objection betrays a fundamental misunderstanding of the history of this action and its remedial process. In fact, the Special Master is not tasked with assessing whether the State's prison mental health care system satisfies constitutional standards. That assessment is for this court." 2/28/13 Order at 2:5-9 (internal quotations omitted).

---

filed" and that their time to file these objections was unfairly shortened. Objections at 2:20-25. Defendants fail to acknowledge that this Court's Order governing the filing of the Special Master's recent reports, and the parties comments thereupon, was mandated by Defendants' decision to file, without warning or notification to the Court or Plaintiffs, a motion to terminate this litigation entirely. Because Defendants chose a litigation tactic that, in turn, set into motion the dictates of the PLRA, under which this Court must make findings regarding the termination request within ninety days, the Court issued necessary and proper orders to ensure that it has before it all the evidence required to assess current conditions in the system.

[775614-1]

3

PLS.' OPPOSITION TO DEFS.' OBJECTIONS & MOTION TO STRIKE PORTIONS OF SPECIAL MASTER'S REPORT ON SUICIDES OCCURRING IN CDCR IN THE FIRST HALF OF 2012

## II. THE COURT SHOULD REJECT DEFENDANTS' ATTEMPTS TO RE-LITIGATE OBJECTIONS ON WHICH THIS COURT HAS ALREADY RULED MULTIPLE TIMES

Three of Defendants' objections mirror those made to either the 2011 Suicide Report or the Twenty-Fifth Monitoring Report, which this Court addressed at length in prior orders. *See* 3/15/13 Order at 4:10-20 (affirming use of CDCR suicide rate and comparison to other suicide rates); 5:19-8:11 (denying motion to strike use of terms "foreseeable and/or preventable"); 11:21-22 (affirming qualifications of Dr. Patterson to opine about whether a suicide was foreseeable or preventable); 2/28/13 Order at 10:8-9 (affirming qualifications of Special Master and his experts to draw conclusions). Defendants' attempt to re-litigate these resolved issues is unwarranted and should be denied.

### A. The Court Should Reject Defendants' Objection to Language Concerning the Suicide Rate in CDCR Prisons and Comparing it to Other Systems

The Court has twice considered and overruled Defendants' objections to language in Special Master's reports concerning the suicide rate in CDCR prisons and comparing it to other systems' suicide rates in the past few months. 3/15/13 Order at 4:12-20; 2/28/13 Order at 7-8. In its February 28, 2013 Order, the Court cited *Brown v. Plata*, 131 S. Ct. 1910, 1924-25 & n.2 (2011), in which the Supreme Court found the comparison between CDCR's suicide rate and the national average for prison systems to be probative evidence that California prisoners with serious mental illness "do not receive minimal, adequate care." 2/28/13 Order at 7:10-14.

Defendants cite to the non-controlling, pre-*Brown v. Plata* Seventh Circuit decision, *Boncher v. Brown County*, 272 F.3d 484, 486 (2001) (Posner, J.), in purported support of their remarkable assertion that the Special Master should not compare CDCR's suicide rate to the suicide rate of federal and other state prison systems. *Boncher*, however, held to the contrary: the Seventh Circuit found that comparisons of the suicide rate of one institution or system to the rates in comparable institutions or systems *is* relevant information for determining whether a system is meeting constitutional standards. *Id.* at 486-87.

[775614-1]

4

PLS.' OPPOSITION TO DEFS.' OBJECTIONS & MOTION TO STRIKE PORTIONS OF SPECIAL MASTER'S REPORT ON SUICIDES OCCURRING IN CDCR IN THE FIRST HALF OF 2012

1 Moreover, *Jutzi-Johnson v. U.S.*, 263 F.3d 753, 757 (7th Cir. 2001), another decision
2 written by Judge Posner earlier in 2001, and referenced for this point in *Boncher*, further
3 explains why it makes sense to compare suicide rates between custodial institutions: "The
4 population of prisons and jails is not a random sample of American citizens. . . . [T]he
5 conditions of incarceration place the prisoners under considerable psychological strain."
6       Defendants' attempt to remove this kind of standard scientifically-accepted analysis
7 from the First Half 2012 Report is consistent with Defendants' other recent attempts to
8 remove unflattering language from Special Master reports. *See, e.g.,* First Half 2012
9 Report at 21 (Defendants moved to "strike the language in the 2011 Suicide Report that in
10 25 or 75.3 percent of suicides there was 'at least some degree of inadequacy in assessment,
11 treatment, or intervention' on the ground that this classification creates an 'unfairly
12 negative impression of the State's mental health and suicide prevention system.  It creates
13 a negative impression because it should…") (quoting 2011 Suicide Report Objections at
14 10).  As Dr. Patterson pointed out, if there is anything that actually makes California's
15 prison population demographically unique, then Defendants have been on notice that
16 suicide attempts are likely to be higher, and should have put in place *more* suicide
17 precautions, rather than fewer.  *See* First Half 2012 Report at 20-21.

18     **B.**    **Defendants' Unfounded Objection to the Use of Terms Foreseeable and Preventable**
19

20       Despite this Court's March 15, 2013 Order, which reaffirmed a ruling ten years
21 prior on the validity of using the terms "foreseeable" and "preventable" in the Special
22 Master's suicide reports (3/15/13 Order at 6-10), Defendants again object to the use of
23 these terms.  Objections at 5:2-10.  Defendants' cursory repetition of this objection is
24 internally contradictory, both relying on Dr. Patterson's findings as to whether suicides
25 were foreseeable or preventable to somehow claim that Defendants were not responsible
26 for "preventable" suicides, and objecting to the use of these terms.  However, in the cases
27 reviewed and found preventable by the Special Master's expert, the suicides were found
28 preventable due to Defendants' documented failure to comply with the court-ordered

[775614-1]

5

PLS.' OPPOSITION TO DEFS.' OBJECTIONS & MOTION TO STRIKE PORTIONS OF SPECIAL MASTER'S
REPORT ON SUICIDES OCCURRING IN CDCR IN THE FIRST HALF OF 2012

mandates to provide 30-minute staggered welfare checks and emergency response by first-responder correctional officers.  *See, e.g.*, Inmate O (EOP prisoner who committed suicide in an ASU overflow cell at RJD on June 29, 2012; institution's own review identified numerous problems with the provision of 30-minute welfare checks, including:  incorrect tracking of the dates; forms not filled out by the person conducting the actual rounds; and lack of credibility of checks due to the short period of time allocated to complete the welfare checks, First Half 2012 Report at 153, 157-158); Inmate N (CCCMS prisoner who committed suicide in an ASU cell at ASP on June 28, 2012.  CPR delayed five minutes after delayed discovery of the noose; found in state of rigor mortis was strong indication that 30-minute welfare checks were either not performed or performed improperly, *id.* at 147, 151); and Inmate K (a CCCMS prisoner who committed suicide in ASU at Folsom on May 30, 2012, where failure to provide 30-minute staggered welfare checks, along with fact that the tier officers signed for all completed welfare checks, although they did not perform them were identified problems, *id.* at 122, 131-132).  The preventable nature of these suicides falls squarely within the responsibility of Defendants, who have failed to implement these most basic of suicide prevention measures.

This Court should again overrule Defendants' objection to these terms, which "are used by experts in the field of correctional health care, including defendants' expert," and "are well-defined in this action."  3/15/13 Order at 7 n.8 & 6:15.

### C. The Special Master's Report on Individual Cases Are Well-Founded and Supported by Defendants' Termination Expert, Dr. Dvoskin

Defendants also object to the "Special Master's Report on Individual Cases," which largely seems to be an objection to the fact that Dr. Patterson drew conclusions about suicide events that happened in the past, because conclusions about the past are, according to Defendants, "20-20 hindsight" and "hindsight second-guessing and speculation." Objections at 5:12-25.  As the Court has previously observed regarding similar objections, "[t]he Special Master and his experts are well-qualified to draw conclusions from findings on matters within the scope of their duties and there is no basis for striking such

[775614-1]

6

PLS.' OPPOSITION TO DEFS.' OBJECTIONS & MOTION TO STRIKE PORTIONS OF SPECIAL MASTER'S REPORT ON SUICIDES OCCURRING IN CDCR IN THE FIRST HALF OF 2012

conclusions," (2/28/13 Order at 10:8-9), and "Dr. Patterson is well-qualified to opine about whether a suicide was foreseeable or preventable." 3/15/13 Order at 11:21-22.

Moreover, the expertise of Dr. Patterson in reviewing individual cases of suicides is well-established, as noted by Defendants' termination expert, Dr. Dvoskin in his prior review of Dr. Patterson's review of the 2011 suicides: "[I]n reviewing the individual cases, I agree with many of Dr. Patterson's findings … [and] [e]ven where we disagreed, in most cases there were simply two alternative and equally reasonable ways to look at the case." Dvoskin Response to 2011 Suicide Report, Exhibit 1 to Declaration of Debbie Vorous, filed 2/11/13, Docket No. 4326-6, at 2. In his review of the First Half 2012 Report, Dr. Dvoskin notes that, "[a]s was the case in my last response to Dr. Patterson's report, I found much with which to agree in this latest report." Response to Dr. Raymond F. Patterson's Report on Suicides Completed in the CDCR in January 1, 2012 – June 30, 2012, Exhibit 12, to Declaration of Patrick R. McKinney, filed 3/22/13, Docket No. 4491-17 (hereinafter, "Dvoskin 2012" ) at p. 1. In fact, Dr. Dvoskin goes even further and endorses the Special Master's recommendation to reduce or remove any punitive aspects of suicide watch and to ensure that welfare checks include "some observation that the inmate is alive." *Id*. Defendants cherry-pick comments from Dr. Dvoskin's review of three suicides, Inmate F, J and K, to argue that the First Half 2012 Report's "criticisms are unfounded, and should be struck because they disregard the causation requirement, and because they engage in hindsight second-guessing and speculation." Objections at 5:24-25. Yet, Dr. Dvoskin never directly disagrees with Dr. Patterson's conclusion that the suicides were foreseeable and/or preventable, when discussing these three suicides. Dvoskin 2012 at 10, 14, 15 (Inmate F, "It appears that the mental health staff took the inmate's risk seriously … on the other hand, one might question the decision to release him back to CCCMS status … in light of his moderate suicide risk;" Inmate J:  Discussing Dr. Patterson's concern that a cell search might have revealed through examination of prisoner's letters that he had given up, noting however, that it is "not my understanding that staff in any correctional institution routinely read through inmate's private and

[775614-1]
7
PLS.' OPPOSITION TO DEFS.' OBJECTIONS & MOTION TO STRIKE PORTIONS OF SPECIAL MASTER'S REPORT ON SUICIDES OCCURRING IN CDCR IN THE FIRST HALF OF 2012

1  personal correspondence, absent some legitimate reason to do so;" and Inmate K:  "I do
2  agree with the observation that improved communication between medical and mental
3  health might have been beneficial in this case … however, this is much more clear in
4  retrospect.")  Defendants' general assertion that the Special Master's conclusions about
5  specific individual cases are erroneous is thus "belied by defendants' own evidence and is
6  frivolous," and should be overruled by this Court.  *See* 3/15/13 Order at 12:4-7.

7  Defendants also cite to their Termination Reply Declarations as evidence that
8  Defendants have remedied any constitutional or institutional problems identified through
9  the suicide review process, suggesting that the "State's purported responsibility for them
10  significantly decreases."  Objections at 6:7; 6:10-12.  Plaintiffs have submitted Evidentiary
11  Objections to these cited declarations.  *See* Plaintiffs' Evidentiary Objections to
12  Defendants' Reply Declarations and Motion to Strike, Docket No. 4513, filed 3/26/13 at
13  10, 63, 94, 101, 108, and 110.  Any evidence of future actions by Defendants to address
14  these serious suicide prevention deficiencies is irrelevant to the First Half 2012 Report's
15  findings.

**III.  DEFENDANTS' ARGUMENT THAT THEY HAVE FOLLOWED THE SPECIAL MASTER'S SUICIDE PREVENTION RECOMMENDATIONS MISUNDERSTANDS THE RECOMMENDATIONS AND IS FURTHER EVIDENCE OF DEFENDANTS' FAILURE TO TAKE APPROPRIATE ACTION TO PREVENT SUICIDES**

19  Defendants perfunctorily claim that CDCR has "already implemented" all of the
20  Special Master's recommendations regarding suicide prevention.  Objections at 6:14-7:12.
21  Not only is this glaringly untrue, but Defendants' reading of the recommendations is
22  fundamentally flawed and highlights Defendants' failure to appreciate the nature of the
23  Special Master's concerns.  For example, the first recommendation in the First Half 2012
24  Report recommends "that CDCR comply with various specified existing Program Guide
25  and court-ordered requirements and standards" through "[c]ontinuation of monitoring and
26  assessment of conduct of five-day clinical follow-up, custody staff adherence to policies
27  and procedures regarding conduct of custody welfare checks and others, and supervision of
28  inmates…"  (First Half 2012 Report at 8.)  Defendants contend that "there is nothing in the

[775614-1]

1. recommendation for CDCR to implement" because the Defendants misinterpret the recommendation to mean "simply that [the special master] be allowed to continue monitoring. So there is nothing in the recommendation for CDCR to implement." Objections at 6:21-22. This recommendation, like the others included in the First Half 2012 Report, is actually a recommendation targeted at *Defendants'* monitoring of their own staff, presumably with the aspiration that if Defendants actually fully implemented such measures, they might be able to successfully run their own mental health delivery system at some point in the future.

Defendants' evident confusion with respect to the Special Master's recommendations, which, as Dr. Patterson points out, have been repeated in various forms for the past fourteen years, underscores Defendants' fundamental failure to take responsibility for implementing adequate and effective suicide prevention measures. In light of Defendants' basic misunderstanding of the recommendations, their objection to Dr. Patterson's conclusion that "*year after year, CDCR fails to implement these recommendations*," "would border on the absurd," "[i]f the matters weren't so serious." *See* 2/28/13 Order at 8 n.9.

## CONCLUSION

Defendants' objections to the First Half 2012 Report are spurious attacks on the Special Master and the Special Master's expert, and should be overruled, again, by this Court.

DATED:  April 2, 2013

Respectfully submitted,

ROSEN BIEN GALVAN & GRUNFELD LLP

By: */s/ Jane E. Kahn*
     Jane E. Kahn

Attorneys for Plaintiffs

[775614-1]

9

PLS.' OPPOSITION TO DEFS.' OBJECTIONS & MOTION TO STRIKE PORTIONS OF SPECIAL MASTER'S REPORT ON SUICIDES OCCURRING IN CDCR IN THE FIRST HALF OF 2012