| | |
|---|---|
| DONALD SPECTER – 083925<br>STEVEN FAMA – 099641<br>PRISON LAW OFFICE<br>1917 Fifth Street<br>Berkeley, California  94710-1916<br>Telephone:   (510) 280-2621 | MICHAEL W. BIEN – 096891<br>JANE E. KAHN – 112239<br>ERNEST GALVAN – 196065<br>THOMAS NOLAN – 169692<br>LORI E. RIFKIN – 244081<br>AARON J. FISCHER – 247391<br>MARGOT MENDELSON – 268583<br>KRISTA STONE-MANISTA – 269083<br>ROSEN BIEN GALVAN &<br>GRUNFELD LLP<br>315 Montgomery Street, Tenth Floor<br>San Francisco, California  94104-1823<br>Telephone:   (415) 433-6830 |
| JON MICHAELSON – 083815<br>JEFFREY L. BORNSTEIN – 099358<br>LINDA L. USOZ – 133749<br>MEGAN CESARE-EASTMAN – 253845<br>K&L GATES LLP<br>4 Embarcadero Center, Suite 1200<br>San Francisco, California  94111-5994<br>Telephone:   (415) 882-8200 | CLAUDIA CENTER – 158255<br>THE LEGAL AID SOCIETY –<br>EMPLOYMENT LAW CENTER<br>180 Montgomery Street, Suite 600<br>San Francisco, California  94104-4244<br>Telephone:   (415) 864-8848 |

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>  Plaintiffs,<br><br>  v.<br><br>EDMUND G. BROWN, Jr., et al.,<br><br>  Defendants. | Case No. Civ S 90-0520 LKK-JFM<br><br>**[PROPOSED] ORDER GRANTING MOTION FOR ENFORCEMENT OF COURT ORDERS AND AFFIRMATIVE RELIEF RELATED TO INPATIENT TREATMENT**<br><br>Judge:  Hon. Lawrence K. Karlton<br>Date:    May 13, 2013<br>Time:   10:00 a.m.<br>Crtrm.: 4 |

[782910-2]

   Plaintiffs' Motion for Enforcement of Court Orders and Affirmative Relief Related to Inpatient Treatment came on for hearing before this Court on May 13, 2013.  The Court having considered the pleadings and oral argument on the motion, and the entire record in this case, and good cause appearing, Plaintiffs' motion is GRANTED.  The Court finds that constitutional violations persist such that Defendants continue to subject *Coleman* class members to harm and serious risk of harm by failing to provide necessary and appropriate access to inpatient psychiatric treatment.  Each individual remedial order set forth below is narrowly tailored and is the least intrusive means necessary to ensure members of the *Coleman* plaintiff class access to timely and clinically appropriate inpatient mental health care.  In light thereof, it is hereby ORDERED THAT:

   1. <u>Access of Death Row Inmates to Inpatient Psychiatric Hospitalization</u>: Defendants shall immediately rescind any policies, procedures, or agreements that prohibit or in any manner restrict referrals and transfers of death row inmates to DSH programs for CDCR prisoners, Defendants shall also evaluate each *Coleman* class member currently on death row and at the EOP level of care within 21 days to determine if a transfer to a higher level of care is appropriate.  The Special Master is directed to investigate, monitor, and report within sixty days on current use of MHCB or OHU beds at San Quentin for the provision of inpatient mental health care to ensure that any such usage is temporary and meets constitutional standards.

   2. <u>Staffing Levels for SVPP and VPP:</u>  Within thirty days, Defendants shall provide a full and accurate accounting of current clinical staffing at SVPP and VPP, including any custodial or other non-clinical staffing that affects DSH's ability to provide mental health treatment.  This information must include the size of each psychiatrist's caseload and for how many hours per week the identified psychiatrists are actually present and attending to patients.  The information shall also detail if and how current staffing levels allow for the provision of confidential clinical contacts at DSH-operated CDCR facilities.  Defendants must provide the current treatment ratio at DSH-operated CDCR facilities and the rationale for the adequacy of that ratio, and the Special Master is directed

1  to assess and report on the adequacy of that ratio.  Defendants shall identify all plans to
2  address staffing vacancies and the individuals responsible for implementing those plans.
3  Defendants shall also identify all impediments to fully staffing SVPP and VPP, including
4  hiring freezes.

5        3.  <u>Hiring and Use of Registry and Overtime at SVPP and VPP:</u>  Given the
6  serious risk of harm to *Coleman* class member in inpatient psychiatric placements,
7  Defendants are directed to exempt DSH employees in CDCR facilities from any State-
8  instituted hiring freezes.  Defendants are further directed to suspend until further notice
9  any limitations on registry staff and on use of overtime for staff in DSH-run units in CDCR
10  facilities.  To the extent that this requires a waiver of state laws and regulations, those laws
11  and regulations are hereby waived.

12        4.  <u>Use of Custodial Lockdowns for Newly Admitted SVPP Patients:</u>
13  Defendants shall stop using Level 1 status, or any equivalent status, on a blanket basis for
14  newly-admitted patients in DSH programs for CDCR prisoners.   Any custodial restrictions
15  applicable only to newly-admitted patients must be based on specific individualized
16  assessments that include clinical input, and must be reviewed and renewed in writing every
17  three days.  The Special Master is directed to investigate the necessity of custodial
18  restrictions for newly-admitted patients, assess whether custody determinations made prior
19  to an inmate-patient's transfer from CDCR to DSH suffice, and report to the Court
20  regarding his assessment.

21        5.  <u>Provision of Basic Human Necessities:</u>  The Directors of the SVPP and VPP
22  programs and the Wardens of SVSP and CMF are ordered to file declarations with the
23  Court within seven days confirming that patients are being provided soap and clean and
24  adequate blankets, clothing, and underwear, laundered on a regular basis, consistent with
25  the standards of a licensed inpatient hospital.

26        6.  <u>Length of Stay, Discharges, and Waitlists for Inpatient Psychiatric Units:</u>
27  Defendants shall revise their policies, procedures, and practices to ensure that patients
28  continue to receive inpatient psychiatric hospitalization while clinically indicated.  The

Special Master is directed to investigate Defendants' inpatient discharge and waitlist practices, and make recommendations to the Court regarding any additional orders that should be issued.

7. <u>Access to DSH Regardless of Parole Date:</u>  Defendants shall immediately comply with the terms of this Court's August 8, 2008 Order mandating access to DSH inpatient care for all *Coleman* class members, regardless of parole status or date of parole, and shall issue notification of such to the field.  Defendants shall submit evidence of their compliance with this order to the Court within thirty days.  The Special Master is directed to monitor and report on Defendants' compliance with this order and the Court's August 8, 2008 Order.

8. <u>Activation and Closure of DSH Units</u>:  Within thirty days, DSH shall report to the Court on all currently operational DSH units housing *Coleman* class members, including date of activation, number of beds/patient capacity, number of current patients and length of stay for each patient, staffing allocations (including allocated staffing ratios), currently filled staff positions and vacancies, and current staffing ratios.  Henceforth, DSH shall notify the Court, Special Master, and Plaintiffs' counsel whenever Defendants plan to open or close a DSH unit housing CDCR patients.  Notifications of plans to open new units shall include the above-listed data, and a schedule and plan for hiring of necessary staff.  Notifications of plans to close units must explain why these units are no longer necessary.  Defendants are prohibited from understaffing or closing SVPP and VPP programs while Stockton is being activated.  The Special Master is directed to investigate any newly-activated or temporary DSH units at SVPP and VPP in order to determine whether appropriate treatment is being provided to *Coleman* class members and make recommendations to the Court regarding any additional orders that should be issued.

9. <u>Treatment Provided to Class Members at VPP:</u>  The Special Master is further directed to investigate the inpatient treatment being provided at VPP and make recommendations to the Court about further orders necessary to ensure that class members are being provided with a clinically appropriate inpatient treatment program and to

1  otherwise enforce the remedy in this case.

2       The Court finds that these orders are necessary to correct ongoing constitutional
3  violations in the delivery of adequate mental health care to plaintiff class members and
4  these orders extend no further than necessary to correct these violations.  In light of this
5  Court's prior orders, its long history in this case of overseeing DSH care, inpatient waiting
6  lists, and inpatient hospital programs, and the need for further orders to enforce the remedy
7  in this case, including access to adequate inpatient psychiatric treatment, these orders are
8  narrowly drawn and the least intrusive means to remedy the violations in this case.

10  DATED: _____, 2013

                                                                               Lawrence K. Karlton
                                                                               Senior Judge of the United States District Court

[782910-2]

4
[PROPOSED] ORDER GRANTING MOTION FOR ENFORCEMENT OF COURT ORDERS AND AFFIRMATIVE
RELIEF RELATED TO INPATIENT TREATMENT