KAMALA D. HARRIS
Attorney General of California
JONATHAN L. WOLFF
Senior Assistant Attorney General
JAY C. RUSSELL
Supervising Deputy Attorney General
DEBBIE VOROUS, State Bar No. 166884
PATRICK R. MCKINNEY, State Bar No. 215228
WILLIAM DOWNER, State Bar No. 257644
Deputy Attorneys General
 1300 I Street, Suite 125
 P.O. Box 944255
 Sacramento, CA 94244-2550
Telephone: (916) 324-5345
Fax: (916) 324-5205
E-mail: Debbie.Vorous@doj.ca.gov

*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **RALPH COLEMAN, et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**EDMUND G. BROWN JR., et al.,**<br><br>Defendants. | 2:90-cv-00520 LKK JFM PC<br><br>**DECLARATION OF TIM BELAVICH IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR ENFORCEMENT OF COURT ORDERS AND AFFIRMATIVE RELIEF RELATED TO INPATIENT TREATMENT** |

I, Tim Belavich, declare as follows:

1. I am the Acting Division of Health Care Services Director for California Department of Corrections and Rehabilitation (CDCR or Department) I submit this declaration in support of the State's Opposition to Plaintiffs' Motion for Enforcement of Court Orders and Affirmative Relief Related to Inpatient Care

2. I was appointed as CDCR's Acting Director, Division of Health Care Services in February 2013. Some of my duties as Director include responsibility for and supervision of the

1

Department's statewide mental health program and statewide dental program. I am familiar with current processes in place at headquarters to address quality management and improvement and suicide prevention. In addition, I am familiar with the extensive policies and procedures that govern the prison mental health care delivery system at the institutional level and have visited and evaluated the majority of prisons with mental health care programs.

3. In addition, I was appointed on March 12, 2012, as CDCR's Acting Statewide Mental Health Program Deputy Director As Acting Deputy Director, I am responsible for and supervise the Field Operations Unit, Policy and Clinical Support Unit, Health Care Placement Oversight Program, and compliance with Coleman mandates. Prior to that appointment, I served as Chief Executive Officer (CEO) at California State Prison, Los Angeles County. In that capacity, I was responsible for the entire health care delivery system at the prison, which included medical, pharmacy, nursing, mental health, and dental services. Prior to my appointment as the CEO, I served in the capacities of Staff, Senior and Chief Psychologist and as the Health Care Manager at California State Prison, Los Angeles County and/or San Quentin.

4. I hold degrees in Clinical Psychology and Health Care Administration, and am certified as a Correctional Health Professional by the National Commission on Correctional Healthcare.

5. Based on my education, my experience providing mental health services in correctional settings, and my knowledge of the State's mental health delivery system if called as a witness in this matter, I could and would testify to the matters herein.

6. After I was appointed Acting Statewide Mental Health Program Deputy Director on March 12, 2012, I became familiar with the Specialized Treatment plan for the Condemned inmates at San Quentin State Prison. My understanding in spring 2012 was that the Specialized Treatment plan at San Quentin was first implemented in November 2010 and presented to the Coleman Special Master and his team in December 2010.

7. On June 28, 2012, I attended an informal meeting with the *Coleman* special master, Plaintiffs' counsel, Jane Kahn, Dr. Diana Toche, and others during a visit to Richard J. Donovan State Prison at San Diego. During this meeting, we discussed the possibility of the *Plata* federal

2

Belavich Decl. Supp. Defs.' Opp'n to Pls.' Mot. for Enf. Ct. Ord. & Aff. Relief
(2:90-cv-00520 LKK JFM PC)

receiver designating beds at San Quentin State Prison for the use for some of the inmates receiving treatment under the Specialized Treatment plan.

8. On July 2, 2012, CDCR provided a brief status report to the special master and Plaintiffs' counsel regarding the Specialized Treatment plan for the Condemned inmates at San Quentin State Prison. This report provided a specific update on the care received by six inmates receiving specialized care.

9. During the Coleman 25th Round Monitoring site visit at San Quentin State Prison on August 6 to 8, 2012, the *Coleman* experts reviewed the Specialized Treatment plan. During that visit, I participated in a phone call with the Deputy Special Master, Mohamedu Jones, whereby the experts expressed their concerns that admission and discharge criteria were not articulated in a formal local operating procedure.

10. On December 3-4, 2012, the special master, members of his team, Plaintiffs' counsel and representatives from CDCR Headquarters visited San Quentin State Prison for the sole purpose of evaluating the care being provided under the Specialized Treatment plan. The special master requested this additional visit to San Quentin to specifically review the specialized treatment program with his team and Plaintiffs' counsel present. I participated in this visit. During the visit, Dr. Eric Monthei and his team presented the details about the care being provided under the Specialized Treatment plan, which involved an overview of the program, detailed case presentations of the inmates who were either receiving specialized treatment or being considered for specialized treatment, a review of treatment activities, and a review of relevant documentation. In addition, we designated a portion of the meeting to draft a local operating procedure to address the special master's experts' concerns regarding admission and discharge criteria for services under the Specialized Care plan.

11. During the December visit, the special master and Plaintiffs' counsel also expressed concerns that there was a lack of designated housing at the prison for the condemned inmates receiving services under the Specialized Treatment plan. As I was attending this December visit, I began the negotiations with the *Plata* Receiver, the Chief Executive Officer at the prison, and others to identify housing at San Quentin which would be appropriate for this specialized

3

population. These negotiations soon identified Outpatient Housing Unit beds in the Central Health Services Building as the most appropriate beds for some of the condemned inmates receiving services under the Specialized Treatment plan. The Plata Receiver then informed me that he agreed to designate up to 10 beds in the Outpatient Housing Unit for use by inmates receiving services under the Specialized Treatment plan. The Receiver also told me that he had conveyed this information to the Special Master.

12. During a meet and confer session on December 14, 2012, with Plaintiffs' counsel and the special master and his staff, CDCR reported that the *Plata* Receiver had designated 10 Outpatient Housing Unit beds in the Central Health Services Building for use by inmates receiving services under the Specialized Treatment plan.

13. The Specialized Treatment plan, with the addition of designated beds located within the San Quentin State Prison Outpatient Housing Unit, is seeing positive results. Dr. Monthei and his team at San Quentin State Prison have done a commendable job incorporating all of the concerns from CDCR Headquarter, the special master and his team, and Plaintiffs' counsel to develop a robust program that serves the condemned population.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct. Executed in Sacramento, California on May 8, 2013.

Tim Belavich

4

Belavich Decl. Supp. Defs.' Opp'n to Pls.' Mot. for Enf. Ct. Ord. & Aff. Relief
(2:90-cv-00520 LKK JFM PC)