DONALD SPECTER – 083925
WARREN E. GEORGE – 053588
STEVEN FAMA – 099641
ALISON HARDY – 135966
SARA NORMAN – 189536
REBEKAH EVENSON – 207825
PRISON LAW OFFICE
1917 Fifth Street
Berkeley, California  94710-1916
Telephone:   (510) 280-2621

MICHAEL W. BIEN – 096891
JANE E. KAHN – 112239
ERNEST GALVAN – 196065
LISA ELLS – 243657
AARON J. FISCHER – 247391
KRISTA STONE-MANISTA – 269083
MARGOT MENDELSON – 268583
ROSEN BIEN GALVAN &
GRUNFELD LLP
315 Montgomery Street, Tenth Floor
San Francisco, California  94104-1823
Telephone:   (415) 433-6830

CLAUDIA CENTER – 158255
THE LEGAL AID SOCIETY –
EMPLOYMENT LAW CENTER
600 Harrison Street, Suite 120
San Francisco, California  94107-1389
Telephone:   (415) 864-8848

GEOFFREY T. HOLTZ -- 191370
BINGHAM McCUTCHEN LLP
Three Embarcadero Center
San Francisco, California  94111-4067
Telephone:   (415) 393-2000

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURTS

EASTERN DISTRICT OF CALIFORNIA

AND NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| RALPH COLEMAN, et al.,<br>    Plaintiffs,<br>    v.<br>EDMUND G. BROWN, JR., et al.,<br>    Defendants. | Case No. Civ S 90-0520 LKK-JFM P<br>**THREE JUDGE COURT**<br>**PLAINTIFFS' RESPONSE TO DEFENDANTS' POPULATION REDUCTION PLAN** |
| MARCIANO PLATA, et al.,<br>    Plaintiffs,<br>    v.<br>EDMUND G. BROWN, JR., et al.,<br>    Defendants. | Case No. C01-1351 TEH<br>**THREE JUDGE COURT** |

On May 23, 2011, the Supreme Court of the United States affirmed this Court's Order to reduce the prison population to 137.5% of capacity in two years, holding that "[t]he State shall implement the order without further delay." *Brown v. Plata*, 131 S.Ct. 1910, 1947 (2011). Recognizing that the State should take the lead role in crafting a durable remedy for the ongoing constitutional violations, the Population Reduction Order gave the State "considerable latitude to find mechanisms and make plans to correct the violations in a prompt and effective way consistent with public safety." *Id*. at 1946.

Two years have passed, and the State still has not complied with the Population Reduction Order. The prison population remains well above the 137.5% maximum this Court and the Supreme Court mandated. This Court, showing great forbearance in the face of continued State recalcitrance, granted a six-month extension until December 31, 2013, for the State to comply with the Population Reduction Order. The State has now outright refused to follow this Court's April 11, 2013, order to submit a plan to fully comply with the Population Reduction Order by the extended deadline, or even to prioritize their preferred methods of complying. The State is thus directly frustrating this Court's and the Supreme Court's expectation that the State—not the courts—would take the lead in crafting the remedy here.

This Court should order the Governor and the Secretary of Corrections to show cause why they should not be held in contempt for violating the Court's April 11 Order.

Furthermore, although the Supreme Court provided the State with "substantial flexibility" to choose methods for reducing overcrowding, it also found that there is a "need for a timely and efficacious remedy for the ongoing violation of prisoners' constitutional rights." *Brown,* 131 S.Ct. at 1944, 1946-1947. To bring these violations to an end and to overcome the State's intransigence as necessary, the Court expressly contemplated that this Court may "order the State to begin without delay to develop a system to identify prisoners who are unlikely to reoffend or who might otherwise be candidates for early release." *Id.* at 1947. In light of State's outright refusal to come up

2

PLAINTIFFS' RESPONSE TO DEFENDANTS' POPULATION REDUCTION PLAN;
CASE NOS. CIV S 90-0520 LKK-JFM P, 01-1351 TEH

with its own plan to comply with this Court's orders, it is now time for the Court to order the State to draft a list of "those prisoners least likely to jeopardize public safety." *Id.*

### I. The State's Population Reduction Plan Is Contemptuous and Deliberately Flouts The Court's Orders.

On April 11, 2013, this Court ordered the State to propose a plan to comply with the population reduction order, *i.e.* to reduce the population to 137.5% of capacity by December 27, 2013. Order Requiring List of Proposed Population Measures ("April 11 Order") at 3, April 11, 2013, *Plata* Dkt. No. 4542. The State did not do so. Instead, the State submitted a plan that, by its own measure, falls short by 2,570 inmates. Amended Defs' Response to April 11, 2013 Order (Defs' Response) at 39, May 3, 2013, *Plata* Dkt. No. 2612.

The Court's April 11 Order also required the State to "list *all* prison population reduction measures" identified as possible remedies by the Court or the parties, and that they list the measures "in the order that defendants would prefer to implement them…." April 11, 2013 Order at 1, 2. The State submitted a list of measures that is "in no particular order of preference." Defs' Response at 5. The list omits mention of a sentencing reform commission, which was identified as a possible remedy by the Court in its August 4, 2009, Opinion and Order at 154-155. It also omits mention of measures that the State itself proposed just four months ago: expanding the alternative custody program to include men, and expanding work furlough and restitution centers. Defs' Response to Oct. 11, 2012 Order at 14, Jan. 7, 2013, *Plata* Dkt. No. 2511.[1]

The April 11 Order also required the State officials who are defendants here,

---

[1] In its January 7, 2013 filing, the State argued that such expansion could reduce the prison population by 1,000 inmates by December 2013. Defs' Response to Oct. 11, 2012 Order at 14. In the State's May 2 filing, however, it limits the alternative custody program to women, does not analyze expanded work furlough/restitution centers, and estimates that the impact would be 100 inmates by December 2013. Defs' Response at 16-17.

3

including the Governor, to use their "best efforts" to implement the population reduction plan, including by attempting "forthwith" and "in good faith" to obtain any necessary authorization, approval or waivers from the Legislature and other state bodies. April 11 Order at 4. The State avers that it does not understand what "best efforts" means, but on any interpretation of that phrase it is clear the State is not using them: the Governor steadfastly refuses to "advocate" for the passage of legislation to remedy the violations here and has failed to include any funding for his proposed plan in his May budget revision, submitted today. Defs' Response at 4-5; See also Hardy Decl., ¶ 2, Exh. A (Governor pledges to litigate "until the Supreme Court tells us that we're not on the right track"); Hardy Decl., ¶ 3, Exh. B (Secretary of Corrections calls State's proposals "ugly" and undesirable); Hardy Decl., ¶ 8, Exh. G (Governor says he included no money to pay for the plan he proposed to federal judges).

Not surprisingly, without the Governor's advocacy, legislative leaders have since made it clear that they will not approve the Governor's proposals filed under "protest." Hardy Decl., ¶ 3, Exh. B (Legislative leaders "signaled that Brown's plan may be dead on arrival in the Legislature"). Other politicians are using the Governor's approach to prison crowding as a political football, making it even less likely that the State will be able to achieve meaningful reform without further order from this Court. *See, e.g.*, Hardy Decl., ¶ 4, Exh. C (opposition candidate kicks off gubernatorial campaign by criticizing Governor Brown's prison policies).

The Court's April 11 Order was intended to give the State a final opportunity to effectuate the remedy already approved by the Supreme Court. The response given by the Governor and the Legislature demonstrate that the State simply will not or cannot avail itself of this opportunity. This follows more than a year of similar inaction. April 11, 2013 Opinion & Order Denying Defendants' Motion to Vacate or Modify Population

1  Reduction Order ("April 11 Opinion & Order") at 11-22, *Plata* Dkt. No. 2590.[2]  Quite
2  simply, the longstanding "lack of political will in favor of reform" that led to years of
3  constitutional violations in the first place, *Brown*, 131 S. Ct. at 1936, does not merely
4  continue today, it has hardened into willful defiance of the orders of this Court and the
5  Supreme Court itself.

6  **II.     The State Continues To Re-Litigate Settled Issues**

7  Rather than taking the steps necessary to comply with the Population Reduction
8  Order, the State serially re-litigates the same questions already rejected by this Court and
9  the Supreme Court.  In fact, the State rehashes many of the arguments rejected as recently
10 as last month when this Court denied the State's Rule 60(b)(5) Motion to Vacate or
11 Modify the Population Reduction Order.

12       1.  <u>The State Claims the Prisons Are No Longer Crowded.</u>

13 Although the prison population remains nearly 10,000 over the court-ordered
14 crowding cap, the State claims the prisons are no longer overcrowded.  But see Hardy
15 Decl., ¶ 7, Exh. F, at 4 (State's internal analysis shows that State believes the maximum
16 "Operating Capacity" of 33 prisons to be 103,470 prisoners –6,000 prisoners less than the
17 court-ordered cap).  This Court decided that 137.5% of capacity is the constitutional
18 maximum.  Aug. 4, 2009 Opinion & Order at 130, *Plata* Dkt. No. 2197.  The State

---

[2]   The State's chief response to the Population Reduction Order was to pass the Realignment legislation, but even at the time of passage, the State was aware that Realignment would not achieve the required population reduction.  *See, e.g.,* CDCR Fall 2011 Population Projections (predicting that the population would not reach the court-ordered levels in time).  In February, 2012, the State published a fact sheet correctly projecting that even after Realignment, the prison population would remain well-over the court-ordered limit.  Declaration of Alison Hardy, ¶ 6, Exh. E (CDCR Fact Sheet, February 24, 2012, projecting that the overall CDCR population would be 128,921 on June 30, 2013).  Yet although the State avers that further legislative action would be necessary for it to comply with the Population Reduction Order, and despite the Court's repeated admonishments to take the necessary steps, "for approximately a year, State officials have acted in open defiance this Court's Order." April 11 Opinion & Order at 65.

litigated that issue all the way to the Supreme Court—and lost. *Brown v. Plata*, *supra*, 131 S.Ct. at 1944 ("The three-judge court concluded that the population of California prisons should be capped at 137.5% of design capacity. This conclusion is supported by the record.") The issue is settled.

2. <u>The State Claims That It Provides Constitutionally Adequate Healthcare</u>.

The State argues that further population reductions are not necessary because, it claims, the prison mental health care delivery system is "one of the best" in the country and "fully satisfies constitutional standards." Defs' Response at 2 and 9. But in its latest brief to this Court, the State waived this merits argument and pressed only arguments about the remedy. Defs' Response to Jan. 29, 2013, Order at 5, Feb. 12, 2013, *Plata* Dkt. No. 2529. ("The issue to be decided by this court is not constitutional compliance in either *Coleman* or *Plata*, which is for the underlying district courts to decide.") And just one month ago when the State pressed the merits in the *Coleman* Court, that court ruled against the State, finding substantial ongoing constitutional violations. April 5, 2013, Order, at 34, *Coleman* Dkt. No. 4539.

The State also claims that there is "overwhelming evidence" that the CDCR's health care system "far exceeds constitutional standards." Defs' Response at 2. However, the medical care system remains under Receivership and subject to an injunction. The State has not even moved in the *Plata* court to reconsider the merits and terminate relief.

Moreover, the State continues to base its assertion of constitutional care on the assessment of the purportedly "independent" Inspector General (Defs' Response at 2), an assessment that this Court rejected as "unreliable," (April 11 Opinion & Order at 48), and which was recently revealed to have been *written by the Governor's own counsel.* Hardy Dec., ¶ 5, Exh. D.

3. <u>The State Rehashes Previously-Rejected Public Safety Arguments</u>.

The State continues to argue that the prison population cannot be further reduced without jeopardizing public safety. *See* Defs' Response at 34-38. But "[t]his Court

6

anticipated the issue of public safety in [its] original Opinion & Order and, after considering extensive evidence, concluded that releasing comparatively low-risk inmates somewhat earlier than they would otherwise have been released has no adverse effects on public safety." April 11 Opinion & Order at 53. The Supreme Court affirmed that determination:

> The three-judge court, in its discretion, may also consider whether it is appropriate to order the State to begin without delay to develop a system to identify prisoners who are unlikely to reoffend or who might otherwise be candidates for early release. Even with an extension of time to construct new facilities and implement other reforms, it may become necessary to release prisoners to comply with the court's order. To do so safely, the State should devise systems to select those prisoners least likely to jeopardize public safety.

*Brown*, 131 S. Ct. at 1947. As this Court noted just last month in response to yet another revival of these well-worn public safety arguments, the State "repeat[s] arguments that both this Court and the Supreme Court rejected." April 11 Opinion & Order at 53.

The State is simply wrong to assert that the calculus has changed since it has already partially reduced the prison population through Realignment. This Court and the Supreme Court found that the State could safely reduce the prison population by 46,000 prisoners without endangering public safety. *Id.* at 53, fn. 36. As Realignment has resulted in a reduction of only 24,000 prisoners, "as a matter of simple math, Realignment could not have already resulted in the early release of all prisoners that this Court previously determined could be released consistent with public safety." *Id.* The State can reduce the prison population by focusing on the lowest risk prisoners, without having any adverse impact on public safety. *Id.*; *see also* Austin Decl., ¶¶ 24-32.

### III. The Court Must Take Further Action To Enforce Its Orders

As this Court found, "Governor Brown has a duty to exercise in good faith his full authority, including seeking any changes to or waivers of state law that may be necessary to ensure compliance with the Supreme Court's judgment." April 11 Opinion & Order at 70 (citing *Cooper v. Aaron*, 358 U.S. 1, 18 (1958); *United States v. Barnett*, 376 U.S. 681 (1964)). Yet the Governor refuses to do so until the Supreme Court tells him he must.

This is patently contemptuous. The Court has already issued a stern warning:

> We begin with the basic proposition that all orders and judgments of courts must be complied with promptly. If a person to whom a court directs an order believes that order is incorrect the remedy is to appeal, but, absent a stay, he must comply promptly with the order pending appeal. Persons who make private determinations of the law and refuse to obey an order generally risk criminal contempt even if the order is ultimately ruled incorrect.

April 11 Opinion & Order at 70 (quoting *Maness v. Meyers*, 419 U.S. 449, 458 (1975)).

It is clear that the State will not comply with the Population Reduction Order, or the April 11 Order requiring a compliant Population Reduction Plan, unless the Court takes further measures. Accordingly, in order to uphold the integrity of and promote compliance with the decisions of the Supreme Court and this Court, the Court should order the Governor and the Secretary of Corrections to show cause why they should not be held in contempt for failing to comply with the requirements of the April 11 Order.

Since the State has violated this Court's direct command that it provide an ordered list of its preferences for complying with previous orders and it has categorically refused to advocate for further legislative changes, this Court should, as the Supreme Court suggested, order the State to develop a list of the lowest risk prisoners and should order the State to release as many of those prisoners as necessary to meet its obligation to reduce the prison population to 137.5% of design capacity by December 31, 2013. To effectuate this process, the Court should waive Article I, Section 28(f)(5) of the California Constitution, and California Penal Code sections 1170(a), (h)(3) which the State claims prevent it from releasing prisoners "prior to the completion of their prison terms." Defs' Response at 25-26.[3]

If at any time the State prefers any other lawful method of reducing the prison

---

[3] There does not appear to be any reason to waive California Constitution, Article I, Sec. 28(a)(5), the other provision cited by Defendants, which is a general statement regarding what crime victims have a "right to expect."

population to the required density, it may seek waivers from this Court or obtain legislative or executive approval for those measures and substitute them for releasing the lower risk prisoners, as described immediately above, so long as those measures will be effective in meeting the court ordered population limits.

Having entered such orders, no further barriers exist to the State's full compliance with the Population Reduction Order by December 31, 2013.  The State should therefore be compelled to comply with such order, and any failure to do so should be met with further contempt proceedings.

DATED:  May 15, 2013           Respectfully submitted,

PRISON LAW OFFICE

By:  /s/
     Rebekah Evenson

Attorneys for Plaintiffs