DONALD SPECTER – 083925
STEVEN FAMA – 099641
PRISON LAW OFFICE
1917 Fifth Street
Berkeley, California 94710-1916
Telephone: (510) 280-2621

MICHAEL W. BIEN – 096891
JANE E. KAHN – 112239
ERNEST GALVAN – 196065
THOMAS NOLAN – 169692
LORI E. RIFKIN – 244081
AARON J. FISCHER – 247391
MARGOT MENDELSON – 268583
KRISTA STONE-MANISTA – 269083
ROSEN BIEN GALVAN &
GRUNFELD LLP
315 Montgomery Street, Tenth Floor
San Francisco, California 94104-1823
Telephone: (415) 433-6830

JON MICHAELSON – 083815
JEFFREY L. BORNSTEIN – 099358
LINDA L. USOZ – 133749
MEGAN CESARE-EASTMAN – 253845
K&L GATES LLP
4 Embarcadero Center, Suite 1200
San Francisco, California 94111-5994
Telephone: (415) 882-8200

CLAUDIA CENTER – 158255
THE LEGAL AID SOCIETY –
EMPLOYMENT LAW CENTER
180 Montgomery Street, Suite 600
San Francisco, California 94104-4244
Telephone: (415) 864-8848

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>EDMUND G. BROWN, Jr., et al.,<br><br>　　　　Defendants. | Case No. Civ S 90-0520 LKK-JFM<br><br>**PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTIONS TO EVIDENCE OFFERED TO SUPPORT PLAINTIFFS' MOTION REGARDING INPATIENT TREATMENT; AND EVIDENTIARY OBJECTIONS RE DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION RE INPATIENT TREATMENT**<br><br>Judge: Hon. Lawrence K. Karlton |

[814587-3]

# TABLE OF CONTENTS

**Page**

TABLE OF ABBREVIATIONS .......................................................................................... iii

I.   DEFENDANTS' EVIDENTIARY OBJECTIONS ARE UNFOUNDED
     AND MUST BE DENIED ........................................................................................ 1

II.  DEFENDANTS' DECLARATIONS SHOULD BE EXCLUDED INSOFAR
     AS THEY CONTAIN IMPROPER AND INADMISSIBLE EVIDENCE ............... 2

     A.   Declaration of Eric Monthei, Docket No. 4593 ("Monthei Decl.") ............... 3
     B.   Declaration of Rob Cook, Docket No. 4597 ("Cook Decl.") ......................... 5
     C.   Declaration of Ellen Bachman, Docket No. 4598 ("Bachman Decl.") ........... 6
     D.   Declaration of Brian Duffy, Docket No. 4599 ("Duffy Decl.") ..................... 8
     E.   Declaration of Tim Belavich, Docket No. 4600 ("Belavich Decl.") .............. 8
     F.   Declaration of Kevin Chappell, Docket No. 4601 ("Chappell Decl.") ........... 8
     G.   Declaration of Kathryn Radtkey-Gaither, Docket No. 4602 ("Radtkey-
          Gaither Decl.") ............................................................................................... 8
     H.   Declaration of Randolph Grounds, Docket No. 4604 ("Grounds
          Decl.") .......................................................................................................... 11

[814587-3]

i

PLS.' RESPONSE TO DEFS.' OBJECTIONS TO EVIDENCE OFFERED TO SUPPORT PLS.' MOTION RE INPATIENT
TREATMENT; AND EVIDENTIARY OBJECTIONS RE DEFS.' OPP. TO PLS.' MOTION RE INPATIENT TREATMENT

# TABLE OF AUTHORITIES

**Page**

### Cases

*Rosales v. El Rancho Farms*,
 No. 09-cv-00707, 2011 U.S. Dist. LEXIS 142772 (E.D. Cal. Dec. 12, 2011) ...... 6, 8

*United States v. Beck*,
 418 F.3d 1008 (9th Cir. 2005) .................................................................................. 1

### Statutes

28 U.S.C. § 1746................................................................................................................ 6, 8

E.D. Cal. Local R. 230(h) .................................................................................................... 10

Fed. R. Evid. 402 ................................................................................................................ 12

Fed. R. Evid. 602 ........................................................................................................... passim

Fed. R. Evid. 701 ........................................................................................................... passim

Fed. R. Evid. 702 .................................................................................................................. 3

Fed. R. Evid. 801 .................................................................................................................. 3

Fed. R. Evid. 801(c)....................................................................................................... passim

Fed. R. Evid. 802 ........................................................................................................... passim

Fed. R. Evid. 901 .................................................................................................................. 5

Fed. R. Evid. 1002 ......................................................................................................... passim

[814587-3]

ii

PLS.' RESPONSE TO DEFS.' OBJECTIONS TO EVIDENCE OFFERED TO SUPPORT PLS.' MOTION RE INPATIENT TREATMENT; AND EVIDENTIARY OBJECTIONS RE DEFS.' OPP. TO PLS.' MOTION RE INPATIENT TREATMENT

**TABLE OF ABBREVIATIONS**

| | |
|---|---|
| CDCR | California Department of Corrections and Rehabilitation |
| CTC | Correctional Treatment Center |
| DSH | Department of State Hospitals |
| EOP | Enhanced Outpatient Program |
| IDTT | Interdisciplinary Treatment Team |
| MTA | Medical Technical Assistant |
| OHU | Outpatient Housing Unit |
| SQ or San Quentin | California State Prison/San Quentin |
| SVPP | Salinas Valley Psychiatric Program |
| SVSP or Salinas Valley | Salinas Valley State Prison |
| VPP | Vacaville Psychiatric Program |

[814587-3]

iii

PLS.' RESPONSE TO DEFS.' OBJECTIONS TO EVIDENCE OFFERED TO SUPPORT PLS.' MOTION RE INPATIENT
TREATMENT; AND EVIDENTIARY OBJECTIONS RE DEFS.' OPP. TO PLS.' MOTION RE INPATIENT TREATMENT

## I. DEFENDANTS' EVIDENTIARY OBJECTIONS ARE UNFOUNDED AND MUST BE DENIED

Defendants' objections to the testimony of Salinas Valley Psychiatric Program psychiatrists Dr. Joel Badeaux and Dr. John Brim, and former San Quentin Warden and CDCR Secretary Jeanne Woodford are unfounded and mischaracterize the declarants' testimony.

First, Defendants contend that Dr. Brim and Dr. Badeaux have not been designated as experts. This argument misses the mark. Their testimony is based on their own experiences as treating physicians at SVPP, and is clearly admissible under Federal Rule of Evidence 701. *See United States v. Beck*, 418 F.3d 1008, 1015 (9th Cir. 2005) (testimony admissible "within the meaning of Rule 701 where it is based upon personal observation and recollection of concrete facts") (internal quotations omitted).

Defendants also argue that portions of Dr. Badeaux's testimony lack foundation under Federal Rule of Evidence 602. Dr. Badeaux's declaration is based entirely on his observations and experiences while treating SVPP inmate-patients. For example, Defendants complain that Dr. Badeaux does not support his opinion that SVPP "had insufficient correctional staff or nurses to meet patient needs." (Defs.' Objs. to Evidence Offered to Support Pls.' Mot., Docket No. 4591, May 9, 2013 ("Defs.' Objs.") at 5:14-15.) But Dr. Badeaux sets forth specific examples of instances in which SVPP's lack of adequate staffing hampered his own ability to provide patient care. (*See, e.g.*, Amended Declaration of Joel Badeaux, M.D., Docket No. 4560, Apr. 22, 2013 ("Badeaux Decl.") ¶ 10 (insufficient MTAs to escort patients to confidential visits); ¶ 11 (IDTTs delayed or moved to cell front due to shortages in escort staff); ¶ 12 (nurses forced to leave IDTT meetings early due to staff shortages).) Defendants additionally complain that the survey cited by Dr. Badeaux, which is consistent with his testimony about his experiences at SVPP, is inadmissible hearsay and lacks foundation, (Defs.' Objs. at 5:21-6:4), but Defendants' own declarant, Dr. Radtkey-Gaither, fully authenticates the survey—even describing the method by which it was compiled—and relies upon it for the truth of the

[814587-3]

1

PLS.' RESPONSE TO DEFS.' OBJECTIONS TO EVIDENCE OFFERED TO SUPPORT PLS.' MOTION RE INPATIENT TREATMENT; AND EVIDENTIARY OBJECTIONS RE DEFS.' OPP. TO PLS.' MOTION RE INPATIENT TREATMENT

matters asserted therein.  (*See* Declaration of Kathryn Radtkey-Gaither in Support of Defs.' Opp'n to Pls.' Mot., Docket No. 4602, May 9, 2013 ¶¶ 25-26.)  Defendants' objections to Plaintiffs' use of the survey are undermined by their own use of the survey, and are without merit.

Additionally, Defendants attempt to exclude the expert testimony of Jeanne Woodford, former Warden of San Quentin and Secretary of the CDCR, by arguing that she is not a mental health care expert.  (Defs.' Objs. at 3:1-5.)  Ms. Woodford has already been qualified as an expert in the *Coleman* case, and her expert opinion was cited multiple times by the three-judge court and the United States Supreme Court.  Defendants do not contest Ms. Woodford's qualifications to testify as a correctional expert, or her ability to offer expert testimony regarding correctional operations, staffing needs, and standards.

Defendants offered nearly-identical, and equally baseless, objections to Ms. Woodford's testimony offered in opposition to Defendants' Motion to Terminate. (*See* Defs.' Evidentiary Objs. to Pls.' Expert Reports, Docket No. 4486, Mar. 22, 2013, at 1:25-2:3.)  The three-judge court implicitly rejected those objections in relying upon Ms. Woodford's declaration in its opinion denying Defendants' Motion to Vacate or Modify the Population Reduction Order.  (Order, Docket No. 4541, Apr. 11, 2013, at 52:1-4.)  Defendants again misapprehend the basis and nature of Ms. Woodford's opinions, which are entirely appropriate given her extensive experience supervising condemned inmates and working with clinical and correctional staff as Warden of San Quentin for many years.

## II. DEFENDANTS' DECLARATIONS SHOULD BE EXCLUDED INSOFAR AS THEY CONTAIN IMPROPER AND INADMISSIBLE EVIDENCE

Defendants' declarations in support of their Opposition to Plaintiffs' Motion violate the Federal Rules of Evidence, as detailed below.

### Summary of Evidentiary Objections

Defendants' declarants offer testimony that does not meet the Rule 602 requirement that a witness to testify "*only if* evidence is introduced sufficient to support a finding that

[814587-3]

2

PLS.' RESPONSE TO DEFS.' OBJECTIONS TO EVIDENCE OFFERED TO SUPPORT PLS.' MOTION RE INPATIENT TREATMENT; AND EVIDENTIARY OBJECTIONS RE DEFS.' OPP. TO PLS.' MOTION RE INPATIENT TREATMENT

1  the witness has personal knowledge of the matter" (emphasis added). Defendants'
2  declarations do not accord with this Rule, and even exempt themselves from it (*see, e.g.*,
3  Bachman Decl. ¶ 1 & Cook Decl. ¶ 1 ("I have personal knowledge of the facts stated in
4  this declaration, except where indicated otherwise…")), and instead assert sweeping
5  conclusions without requisite personal knowledge.
6       Defendants' declarants also repeatedly proffer expert testimony despite being
7  unqualified to do so. This testimony contravenes the requirements of Federal Rule of
8  Evidence 701, which provides that non-expert "testimony in the form of an opinion is
9  limited to one that is: (a) rationally based on the witness's perception, (b) helpful to …
10 determining a fact in issue, and (c) not based on scientific, technical, or other specialized
11 knowledge." Such statements also violate Federal Rule of Evidence 702, which sets forth
12 the specific requirements as to who may provide expert testimony.
13      The declarations are also replete with inadmissible hearsay. The declarants offer
14 statements made by third parties for the truth of the matter asserted, and no hearsay
15 exceptions apply. *See* Fed. R. Evid. 801, 802.
16     **A.**    **Declaration of Eric Monthei, Docket No. 4593 ("Monthei Decl.")**
17        **1.**    **Monthei Decl. ¶ 12**
18      Dr. Monthei asserts that on July 2, 2012, he "provided an update to the special
19 master regarding six condemned inmates who were receiving specialized treatment under
20 the plan." He does not specify whether this "update" was written or oral, and no
21 documentary evidence is offered. Dr. Monthei's assertions regarding the content of this
22 update are inadmissible hearsay offered for the truth of their content about the nature of the
23 Specialized Care program. *See* Fed. R. Evid. 801(c); 802.
24        **2.**    **Monthei Decl. ¶ 14**
25      Dr. Monthei makes assertions in this paragraph concerning statements purportedly
26 made by him during a December 3-4, 2012 site visit to San Quentin State Prison. All of
27 his self-reported statements are inadmissible hearsay offered for the truth of their content
28 about the Specialized Care program. *See* Fed. R. Evid. 801(c); 802.

### 3.  Monthei Decl. ¶ 16

Dr. Monthei asserts that, with respect to a concern raised regarding whether operation of a "specialized care" program within San Quentin's OHU would jeopardize licensure for the CTC as a whole, "everyone collectively agreed that use of the 10 beds would not impact the license." He does not specify who "everyone" was, and his summary of "everyone['s]" agreement on the matter is simply compiled hearsay and is inadmissible. *See* Fed. R. Evid. 801(c); 802. Additionally, he is incapable of having "personal knowledge" of "everyone's" thoughts on the matter, as required by Federal Rule of Evidence 602.

### 4.  Monthei Decl. ¶ 28

Dr. Monthei improperly opines that "the mental health services delivery system at San Quentin has been providing the condemned inmate population with at least if not more than a constitutionally adequate level of care." He is not qualified as an expert witness, much less as a legal expert. It is this Court's province to determine whether the care provided is constitutionally adequate. *See* Fed. R. Evid. 701.

### 5.  Monthei Decl. ¶¶ 29-33

These paragraphs contain assertions about the Specialized Care program and its purported impact on the condemned "community," all of which are offered without foundation or basis and should be excluded as beyond the proper scope of lay witness testimony. For example, in Paragraph 27, Dr. Monthei asserts that "[t]here has been a decrease in stigmatization of mental health care in the community," (Monthei Decl. at 9:27-28), but provides no data supporting this assertion (and is not qualified as an expert witness competent to assess such data, even if it were offered). In Paragraph 28, Dr. Monthei asserts that "mental health groups and recreational therapy yards are at capacity on most days, which had not been the case prior to the inception of [the] Specialized Treatment plan." (*Id.* at 10:5-6.) He provides no data in support of this assertion. In Paragraph 31, Dr. Monthei writes that "Specialized Treatment plan clinicians … are aware of dynamics and trends on the housing unit." (*Id.* at 10:11-12.) Dr. Monthei

[814587-3]

4

PLS.' RESPONSE TO DEFS.' OBJECTIONS TO EVIDENCE OFFERED TO SUPPORT PLS.' MOTION RE INPATIENT TREATMENT; AND EVIDENTIARY OBJECTIONS RE DEFS.' OPP. TO PLS.' MOTION RE INPATIENT TREATMENT

1  is not an expert witness qualified to comment upon matters within the awareness of other
2  individuals, but may only testify as to his own personal knowledge.  In Paragraph 32,
3  Dr. Monthei offers a litany of assertions for which one might expect him to be able to
4  provide data, such as that "inmates receiving services under the Specialized Care plan are
5  able to live in their community for longer periods of time, requiring less admission to
6  higher levels of care, and utilizing fewer bed days when they are in need of a higher levels
7  [sic] of care."  (*Id.* at 10:23-25.)  He offers no data in support of any of these assertions.
8  Finally, in Paragraph 33, Dr. Monthei writes that it is his "understanding that due, in part,
9  to custody concerns the [DSH] program for the condemned is operated in a more
10 restrictive manner and with potentially less interaction."  (*Id.* at 11:4-6.)  He offers no
11 foundation for his "understanding."  This assertion, as with the others detailed above, is
12 beyond the province of a lay witness.  *See* Fed. R. Evid. 602; 701.

13              **6.    Monthei Decl. ¶¶ 35, 36, 39, 40**

14      The above-cited paragraphs contain assertions based on Exhibits 4, 6, 13, and 15,
15 respectively, of the Confidential Declaration of Debbie Vorous.  These exhibits consist of
16 undated, unauthenticated "Summar[ies] of Reports and Recommendations," offered with
17 no explanation as to when the summaries were prepared, or by whom.  Even though the
18 reports appear to be from sometime in early 2012, Dr. Monthei misleadingly relies upon
19 them to establish facts about the current condition of patients.  (*See* Monthei Decl. ¶ 39 at
20 14:23-24 (referencing an event on March 13, 2013) citing Vorous Confidential Decl.
21 Ex. 13 (with documents with dates of August 4, 2012 or earlier).)  These unauthenticated
22 reports, and the conclusions Dr. Monthei draws from them, should be excluded.  *See* Fed.
23 R. Evid. 901.  Dr. Monthei does not provide any basis for personal knowledge as to the
24 patients discussed.  *See* Fed. R. Evid. 602.

25          **B.    Declaration of Rob Cook, Docket No. 4597 ("Cook Decl.")**

26              **1.    Cook Decl. ¶ 1**

27      Mr. Cook states: "I have personal knowledge of the facts stated in this declaration,
28 except where indicated otherwise …."  Mr. Cook is not an expert witness and may not

[814587-3]

5
PLS.' RESPONSE TO DEFS.' OBJECTIONS TO EVIDENCE OFFERED TO SUPPORT PLS.' MOTION RE INPATIENT
TREATMENT; AND EVIDENTIARY OBJECTIONS RE DEFS.' OPP. TO PLS.' MOTION RE INPATIENT TREATMENT

1  testify as to matters of which he has no personal knowledge.  Any such statements should
2  be excluded.  *See* Fed. R. Evid. 602; 701.

### 2. Cook Decl. ¶ 2

4  Mr. Cook states that "[i]t is [his] understanding that the Department of Mental
5  Health previously 'resolved' the 'pay differential issue.'"  He does not provide any basis in
6  personal knowledge for that "understanding" and his statement is therefore inadmissible.
7  Moreover, to the extent that someone *told* him that DSH resolved the pay differential issue,
8  the statements would be hearsay offered for the truth of the matter asserted.  *See* Fed. R.
9  Evid. 602; 801(c); 802.

### C. Declaration of Ellen Bachman, Docket No. 4598 ("Bachman Decl.")

### 1. Bachman Decl. Jurat

12  Ms. Bachman's declaration lacks a complete jurat including the required date and
13  therefore must be stricken.  An undated declaration is not admissible.  *See* 28 U.S.C.
14  § 1746 (unsworn declarations must be "subscribed, as true under penalty of perjury, and
15  dated"); *Rosales v. El Rancho Farms*, No. 09-cv-00707, 2011 U.S. Dist. LEXIS 142772 at
16  *21-22 (E.D. Cal. Dec. 12, 2011) (granting request to strike undated declarations).

### 2. Bachman Decl. ¶ 1

18  Ms. Bachman states: "I have personal knowledge of the facts stated in this
19  declaration, except where indicated otherwise …."  Ms. Bachman is not an expert witness
20  and may not testify as to matters of which she has no personal knowledge.  Any such
21  statements should be excluded.  *See* Fed. R. Evid. 602; 701.

### 3. Bachman Decl. ¶ 5

23  Ms. Bachman opines on what is "absolutely necessary to ensure patient care," but
24  provides no foundation or expertise to support her opinion.  Ms. Bachman has not been
25  qualified as an expert in this case and does not explain how her background as a music
26  therapist supports her opinions about clinical necessities and priorities at DSH.  *See* Fed.
27  R. Evid. 602; 701.

28

[814587-3]

6

PLS.' RESPONSE TO DEFS.' OBJECTIONS TO EVIDENCE OFFERED TO SUPPORT PLS.' MOTION RE INPATIENT
TREATMENT; AND EVIDENTIARY OBJECTIONS RE DEFS.' OPP. TO PLS.' MOTION RE INPATIENT TREATMENT

### 4. Bachman Decl. ¶ 7

Ms. Bachman asserts that "the majority of patients currently pending acute placement are being treated at [CDCR] crisis bed facilities" and that only one of the patients currently awaiting treatment is EOP. Ms. Bachman neither cites nor attaches evidence to support these assertions. *See* Fed. R. Evid. 602; 1002.

### 5. Bachman Decl. ¶¶ 10-13

Ms. Bachman provides a string of figures regarding patient admissions, vacancy rates at VPP units, and census data in newly opened wings. She neither cites nor provides the underlying data for any of these numbers. She offers no foundation for her personal knowledge to support the data. *See* Fed. R. Evid. 602; 1002.

### 6. Bachman Decl. ¶ 12

Ms. Bachman asserts that patients are "routinely transferred from an acute unit to an intermediate care facility on a clinically appropriate basis." She provides no basis for her knowledge or expertise to assess whether transfers are "clinically appropriate." *See* Fed. R. Evid. 602; 701.

### 7. Bachman Decl. ¶ 17

Ms. Bachman purports to provide length of stay information for patients at VPP, but neither cites nor provides any data to support these figures. *See* Fed. R. Evid. 1002.

### 8. Bachman Decl. ¶ 18

Ms. Bachman asserts that VPP "is not experiencing a critical shortage of clinical staff" and is "providing quality care." She cites no evidence or personal knowledge to support these claims. Moreover, she is not designated as an expert on clinical staffing or quality of care. *See* Fed. R. Evid. 602; 701.

### 9. Bachman Decl. ¶¶ 23-24

Ms. Bachman refers to and characterizes "department policy on housing and treating condemned inmates," but fails to attach the policy itself. *See* Fed. R. Evid. 1002.

[814587-3]

7

PLS.' RESPONSE TO DEFS.' OBJECTIONS TO EVIDENCE OFFERED TO SUPPORT PLS.' MOTION RE INPATIENT TREATMENT; AND EVIDENTIARY OBJECTIONS RE DEFS.' OPP. TO PLS.' MOTION RE INPATIENT TREATMENT

1  **D.   Declaration of Brian Duffy, Docket No. 4599 ("Duffy Decl.")**

2      **1.   Duffy Decl. ¶ 6-11**

3      Warden Duffy opines on the needs of death row inmates and the appropriate
4  custodial restrictions for death row inmates without providing any foundation for his
5  personal knowledge as to these assertions.  *See* Fed. R. Evid. 602; 701; 1002.

6  **E.   Declaration of Tim Belavich, Docket No. 4600 ("Belavich Decl.")**

7      **1.   Belavich Decl. ¶ 8**

8      Dr. Belavich refers to a "brief status report" provided by Defendants to the Special
9  Master and Plaintiffs on July 2, 2012.  Dr. Belavich's assertion as to the contents of this
10 report presents hearsay; the report itself has not been submitted in evidence.  *See* Fed. R.
11 Evid. 801(c); 802; 1002.

12 **F.   Declaration of Kevin Chappell, Docket No. 4601 ("Chappell Decl.")**

13     **1.   Chappell Decl. Jurat**

14     The declaration lacks a complete jurat including the required date.  An undated
15 declaration is not admissible.  *See* 28 U.S.C. § 1746 (unsworn declarations must be
16 "subscribed, as true under penalty of perjury, and dated"); *Rosales v. El Rancho Farms*,
17 No. 09-cv-00707, 2011 U.S. Dist. LEXIS 142772 at *21-22 (E.D. Cal. Dec. 12, 2011)
18 (granting request to strike undated declarations).

19     **2.   Chappell Decl. ¶ 5**

20     Warden Chappell makes a variety of assertions regarding the allocation of custody
21 staffing and the assignments of correctional officers to various positions at San Quentin.
22 He attaches no documentary evidence supporting his assertions (1) that such positions have
23 been allocated; or (2) that any such positions have been filed.  *See* Fed. R. Evid. 602; 701;
24 1002.

25 **G.   Declaration of Kathryn Radtkey-Gaither, Docket No. 4602 ("Radtkey-
26     Gaither Decl.")**

27     **1.   Radtkey-Gaither Decl. ¶¶ 12, 13**

28     Ms. Radtkey-Gaither claims that the Salinas Valley Psychiatric Program was "able

to maintain staffing levels that minimized negative impacts, if any at all, on patient care." Ms. Radtkey-Gaither is not a doctor and has not been designated as an expert on appropriate staffing levels. She fails to explain how she is qualified to assess the quality of patient care or the appropriateness of staffing levels. *See* Fed R. Evid. 602; 701.

### 2. Radtkey-Gaither Decl. ¶ 13

Ms. Radtkey-Gaither asserts that she has been "informed" that a psychiatrist will return to SVPP in June 2013. She provides no basis in personal knowledge for the assertion. Rather, her statement constitutes hearsay offered for the truth of the matter asserted. *See* Fed. R. Evid. 602; 801(c); 802.

Ms. Radtkey-Gaither also claims that "it is my understanding from speaking with the Chief Psychiatrist that the morale and optimism of the staff, especially psychiatrists, have improved." Again, this statement is hearsay. Ms. Radtkey-Gaither lacks personal knowledge to support this vague and sweeping statement. Fed. R. Evid. 602; 801(c); 802.

### 3. Radtkey-Gaither Decl. ¶¶ 16-18

Ms. Radtkey-Gaither asserts that "comprehensive mental health treatment and services are consistently provided" and "each team member provides valuable services." She claims that "clinical social workers and psychologists diligently meet with patients." These vague statements are devoid of any foundation. Ms. Radtkey-Gaither does not cite any data for the assertions that consultations are "consistently provided" or that the employees are "diligent[]." *See* Fed. R. Evid. 602.

### 4. Radtkey-Gaither Decl. ¶¶ 19-21

Ms. Radtkey-Gaither sets forth a string of numbers about group treatment, yard, and dayroom hours at SVPP, but does not state the source of this summary data or how it was generated. She provides no foundation or personal knowledge with respect to these figures. *See* Fed. R. Evid. 602; 1002.

### 5. Radtkey-Gaither Decl. ¶ 22

Ms. Radtkey-Gaither claims that "SVPP discharges are based on clinical need," but provides no personal knowledge to support this self-serving statement. Ms. Radtkey-

[814587-3]

9

PLS.' RESPONSE TO DEFS.' OBJECTIONS TO EVIDENCE OFFERED TO SUPPORT PLS.' MOTION RE INPATIENT
TREATMENT; AND EVIDENTIARY OBJECTIONS RE DEFS.' OPP. TO PLS.' MOTION RE INPATIENT TREATMENT

Gaither is not an expert qualified to assess whether discharges are based on clinical need or even a clinician who might have direct experience with the discharge process. *See* Fed. R. Evid 602; 701.

### 6.     Radtkey-Gaither Decl. ¶¶ 28, 41

Ms. Radtkey-Gaither asserts that SVPP has never been deliberately indifferent to its patients' needs. These vague statements lack foundation, and also constitute improper opinion as to a legal conclusion. *See* Fed. R. Evid. 701. In addition this is improper use of a declaration to present arguments, not facts. *See* E.D. Cal. Local R. 230(h).

### 7.     Radtkey-Gaither Decl. ¶ 31

Ms. Radtkey-Gaither asserts that SVPP staff found that publicly available data on incidents of violence at SVPP "was incorrect." Ms. Radtkey-Gaither provides no personal knowledge to demonstrate that the data was in fact incorrect. Rather, she states that others found it to be incorrect—a hearsay statement offered for the truth of the matter asserted. Ms. Radtkey-Gaither attaches a chart with the "revised" data, but provides no information about the source of the data or the basis for the revisions. *See* Fed. R. Evid. 602; 801(c); 802; 1002.

### 8.     Radtkey-Gaither Decl. ¶ 37

Ms. Radtkey-Gaither makes assertions about the number of individuals pending admission to SVPP and the reasons why they have not been admitted. To the extent this information is based on patient or administrative records, such records (which are the best evidence) have not been submitted in evidence. *See* Fed. R. Evid. 1002.

### 9.     Radtkey-Gaither Decl. ¶¶ 39-40

Ms. Radtkey-Gaither opines on the needs of death row inmates and the appropriate custodial restrictions for death row inmates without proper foundation for these statements. To the extent that she refers to some written policy for her statements, she fails to provide the documents. Moreover, Ms. Radtkey-Gaither does not demonstrate her expertise about the clinical or custodial needs of death row inmates. *See* Fed. R. Evid. 602; 701; 1002.

[814587-3]

10

PLS.' RESPONSE TO DEFS.' OBJECTIONS TO EVIDENCE OFFERED TO SUPPORT PLS.' MOTION RE INPATIENT TREATMENT; AND EVIDENTIARY OBJECTIONS RE DEFS.' OPP. TO PLS.' MOTION RE INPATIENT TREATMENT

**H.     Declaration of Randolph Grounds, Docket No. 4604 ("Grounds Decl.")**

**1.     Grounds Decl.**

The Declaration of Randolph Grounds was filed nearly 24 hours after this Court's May 9, 2013 4:30 PM deadline for Defendants' Response filing, at 3:54 PM on Friday, May 10, 2013. Defendants did not request this Court's permission to file this declaration past the Court-ordered deadline. Defendants notified the Court that a staff error had led to the misfiling of another declaration as Warden Grounds' declaration, *see* Docket No. 4604, several hours after Plaintiffs' counsel notified Defendants' counsel of the apparent misfiling. *See* Stone-Manista Decl. Ex. 2 (email from Michael W. Bien to Defendants' counsel, 11:30 AM, May 10, 2013). Because Defendants did not seek leave from the Court for the late filing, and because there is no good cause for the late filing, Warden Grounds' declaration should be excluded. Should this Court choose to consider the declaration in spite of Defendants' noncompliance with the Court-ordered deadline, Plaintiffs assert the following substantive objections.

**2.     Grounds Decl. ¶¶ 5-6**

Mr. Grounds makes a number of generalizations about how inmate classification committee meetings are conducted (*e.g.*, "information is all thoroughly reviewed at each inmate's classification meeting") but provides no foundation for personal knowledge as to these assertions. He does not claim to attend the meetings and provides no foundation for his assertions about what happens at "each" meeting. *See* Fed. R. Evid. 602.

**3.     Grounds Decl. ¶ 7**

Mr. Grounds asserts that "clinicians also have a significant role in the Institutional Classification Committee meetings as the clinical input significantly affects the determinations of safety and security during the custodial review." Again, there is no indication that these statements are not based on personal knowledge. *See* Fed. R. Evid. 602; 701.

**4.     Grounds Decl. ¶ 9**

Mr. Grounds opines that inmates admitted to SVPP "are the most behaviorally and

[814587-3]

11

PLS.' RESPONSE TO DEFS.' OBJECTIONS TO EVIDENCE OFFERED TO SUPPORT PLS.' MOTION RE INPATIENT TREATMENT; AND EVIDENTIARY OBJECTIONS RE DEFS.' OPP. TO PLS.' MOTION RE INPATIENT TREATMENT

emotionally challenged inmates in the CDCR" and offers a number of assessments of the needs of these individuals. Mr. Grounds is not a doctor and has not been designated as an expert in this case. He is not qualified to opine on the severity of inmates' mental illness or their clinical and custodial needs. *See* Fed. R. Evid. 1002.

### 5.  Grounds Decl. ¶ 13

Mr. Grounds states that "clean clothing, sheets, blankets, coats, and soap are all presently available in our warehouse and, upon DSH request for supplies, are distributed to the DSH psychiatric program for distribution to the inmate." Mr. Grounds offers no basis for his personal knowledge on these matters. *See* Fed. R. Evid. 602. Moreover the presence of these items in a warehouse is not relevant to the fact in issue—whether the items were made available to the patients in the SVPP unit. *See* Fed. R. Evid. 402.

### 6.  Grounds Decl. ¶¶ 14-19

Mr. Grounds makes a number of generalizations about how inmates on death row conduct themselves, what they need, and what risk factors they pose. He also speculates about the impact of introducing death row inmates to SVSP. Mr. Grounds has not been qualified as an expert on the behavior or needs of death row inmates, nor does he claim to have any personal knowledge or experience regarding condemned inmates. *See* Fed. R. Evid. 602; 701. Moreover, to the extent Mr. Grounds purports to refer to CDCR policy as to the appropriate treatment of death row inmates, these documents or not submitted in evidence. *See* Fed. R. Evid. 1002.

DATED:  May 16, 2013               Respectfully submitted,

                                   ROSEN BIEN GALVAN & GRUNFELD LLP

                                   By:  *Aaron J. Fischer*
                                        Aaron J. Fischer

                                   Attorneys for Plaintiffs

[814587-3]

12