IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

---o0o---

BEFORE THE HONORABLE LAWRENCE K. KARLTON, JUDGE

---o0o---

RALPH COLEMAN, et al.,

          Plaintiffs,

vs.                            No. Civ. S-90-0520

EDMUND G. BROWN, Jr.,
et al.,

          Defendants.

_____/

---o0o---

REPORTER'S TRANSCRIPT OF PROCEEDINGS

STATUS CONFERENCE

THURSDAY, MAY 23, 2013

---o0o---

Reported by:   KATHY L. SWINHART, CSR #10150

```
 1                        APPEARANCES

 2

     For the Plaintiffs:
 3
             ROSEN, BIEN, GALVAN & GRUNFELD
 4           315 Montgomery Street, Tenth Floor
             San Francisco, California  94104-1823
 5           BY:    MICHAEL W. BIEN
             and    JANE E. KAHN
 6

 7   For the Defendants:

 8           STATE OF CALIFORNIA, DEPARTMENT OF JUSTICE
             OFFICE OF THE ATTORNEY GENERAL
 9           1300 I Street, Suite 125
             Post Office Box 944255
10           Sacramento, California  94244-2550
             BY:    DEBBIE J. VOROUS
11
12                         and

13           STATE OF CALIFORNIA, DEPARTMENT OF JUSTICE
             OFFICE OF THE ATTORNEY GENERAL
             455 Golden Gate Avenue, 11th Floor
14           San Francisco, California  94104-7004
             BY:    JAY C. RUSSELL
15

16

17

18

19

20

21

22

23

24

25
```

1

1          SACRAMENTO, CALIFORNIA

2        THURSDAY, MAY 23, 2013, 10:03 A.M.

3                  ---o0o---

4          THE CLERK:  Calling civil case S-90-520, Coleman

5    versus Brown, et al.

6          THE COURT:  Counsel, approach the podium and state

7    your appearances for the record.  If you are the people who

8    are going to be discussing this matter this morning, remain at

9    the podium.

10         MR. BIEN:  Good morning, Your Honor.  Michael Bien on

11   behalf of the plaintiff class.

12         MS. VOROUS:  Good morning, Your Honor.  Debbie Vorous

13   on behalf of defendants.

14         THE COURT:  I want to talk about how we proceed.

15         Are there any more motions that you're going to file,

16   Mr. Bien?

17         MR. BIEN:  Yes, Your Honor.  We are planning to file a

18   motion on use of force and the rule violation process, and we

19   will have that motion on file next week.

20         There's --

21         THE COURT:  The two motions that have been filed, I

22   think there are only two --

23         MR. BIEN:  Right.

24         THE COURT:  -- so far, seem to me to be closely

25   intertwined.  I'm not clear that that's true about use of

1    force and so forth.

2           What's your -- what do you believe about whether they

3    are interrelated and should be handled as a unit?

4           MR. BIEN:  We -- as to the two motions that have

5    already been filed, I think the two of them are distinct, the

6    Department of State Hospitals access and segregation.

7           The use of force and RVR, you know, is probably --

8           THE COURT:  No, I don't know.  That's why I'm asking.

9           MR. BIEN:  Right, is probably more closely related to

10   the segregation issues than anything else.

11          THE COURT:  All right.

12          MR. BIEN:  But, you know, whether or not it should all

13   be done together or not, I don't know.  I think the state

14   hospital issue is pretty distinct.

15          THE COURT:  You're going to file within a week?

16          MR. BIEN:  Yes, Your Honor.  And, again, it all flows

17   from the discovery that was already done in the termination

18   proceeding.

19          THE COURT:  I'll get to you in a moment, Ms. Vorous.

20   I'm just trying to think through what I've been told.

21          Part of the problem, Mr. Bien, is I understand that

22   you are saying that these motions are, at least in some

23   significant way, the result of discovery that you conducted in

24   connection with the termination motion.

25          And I expect, to be candid with you, that in part the

3

1    negotiating process that the special master has been engaged

2    in for years has been significantly -- "undermined" isn't the

3    right word, but for better or worse I'll just use the word --

4    undermined by virtue of the termination motion and the posture

5    that the State adopted relative to that.

6         But, in any event, even assuming that your discovery

7    has been mostly satisfied by virtue of that -- I can't say

8    that for the State -- the State has to know what your people

9    are going to say and why they're going to say it.  And I take

10   it that that's what you're asking for in the way of discovery

11   that I denied the motion that I'm now reconsidering.

12        Is that right, Ms. Vorous?

13        MS. VOROUS:  Yes, that's correct, Your Honor.

14        MR. BIEN:  Your Honor, if I may.  Most of the

15   witnesses, if not all of the witnesses, have been deposed on

16   these -- in other words, these were positions that they took

17   in their termination motion because we sought to prove

18   constitutional violations at that point.  And so, you know,

19   our experts have been deposed once.

20        There are some witnesses that have not been deposed,

21   but they were -- either through discovery issues or other

22   issues, defendants chose not to.  I'm not saying that you

23   obviously can't reconsider that issue, but it's -- it's not

24   new stuff that we're bringing up, we think.

25        THE COURT:  Ms. Vorous, I'm told by plaintiff that you

1   have deposed the experts at least that plaintiffs intend to

2   tender at the evidentiary hearing.  I'm going to call it a

3   trial because -- I mean, obviously it's not a trial, we've had

4   our trial, but it's going to have -- it feels to me like the

5   scope of it is going to be like a trial.  And that's, among

6   other reasons, why I'm reconsidering your motion.

7        But plaintiffs assert that you've had the opportunity

8   to examine at least all of his experts by virtue of the

9   termination motion.

10       What's your response?

11       MS. VOROUS:  We disagree, Your Honor.  We still have

12   not had an opportunity to depose Dr. Haney.

13       And I know that --

14       THE COURT:  Well, Dr. Haney, I mean that's one.

15       MS. VOROUS:  That's -- uh-huh.

16       THE COURT:  That can be done in a week or two and

17   then, you know, that's not a problem.

18       MS. VOROUS:  As far as the other experts that we're

19   aware of at this point in time, yes, we have had an

20   opportunity to depose them.

21       THE COURT:  All right.  As I indicated to you folks on

22   the phone when we were trying to figure out what to do with

23   this thing, my view now is that it's important to make a

24   really detailed record of why and what you're claiming and why

25   and what you're claiming -- obviously that doesn't make any

1   sense for the record -- what the plaintiffs are claiming and

2   what the defendants are claiming, and that's going to require

3   an extended hearing in my view.

4       Mr. Bien, how long do you think it's going to take you

5   to put on an extended, that is, a detailed evidentiary hearing

6   in support of your motions?

7       MR. BIEN:  So are you talking about all together in

8   one place or in --

9       THE COURT:  Yeah.  Yes, we are.

10      MR. BIEN:  Okay.  I would assume that it would be

11  mainly put on by -- through expert testimony and introducing

12  some depositions.  I assume we could do that in -- in maybe

13  two days on all --

14      THE COURT:  Really?  Oh.

15      MR. BIEN:  Two or three days, I don't know.  I mean,

16  it depends if the Court would accept the declarations as

17  direct, and then --

18      THE COURT:  The declarations will be in evidence, I

19  will treat them as in evidence.

20      MR. BIEN:  Yeah.

21      THE COURT:  And supplemental to that and, of course,

22  cross-examination.

23      MR. BIEN:  And then I guess the question really is, we

24  think that -- for example, on the Department of State

25  Hospitals issues, that there are very few issues that are

1    actually in dispute.

2         THE COURT:  Well, there are two kinds of issues or

3    three kinds of issues that relate to that.

4         MR. BIEN:  Right.

5         THE COURT:  I've had a conversation with the special

6    master this morning so that I have a better feel.

7         Even assuming -- well, let's start by saying the State

8    takes the position that by state law they are prohibited from

9    transferring intermediate level care to DHS, Department of

10   Health --

11        MS. VOROUS:  Department of State Hospitals.

12        THE COURT:  -- Department of State Hospitals, DSH, and

13   so they say they can't.  Even -- so that's a legal issue which

14   I can deal with the way we deal with legal issues.

15        But there's a second question.  Even assuming that I

16   were to find that they were not prohibited by law, or that

17   they are prohibited by law but I'm going to direct them to

18   deviate from the state law because the Constitution requires

19   it, that would only be true if the unit that now exists at San

20   Quentin were not the equivalent -- were not providing the

21   equivalent care that would be obtained in a DSH facility.

22        And that's an evidentiary matter.  Somebody has got to

23   tell me what they're doing, how they're doing it, what's

24   available, and that's going to have to be cross-examined.

25   Because obviously -- it's not obvious, nothing in this case is

1   obvious.  But common sense says that I'm not going to suggest

2   that the State do something unnecessary.  And if this facility

3   actually provides equivalent care, that's the end of that

4   issue.

5         Well, it's not the end of the issue because I've just

6   been told something I didn't know, which is that those ten

7   beds really belong to the receiver; and that he has, pursuant

8   to the request of the special master, provided those ten beds,

9   but he's got problems with his experts about whether or not he

10  can afford to give up the ten beds.  I mean, this whole thing

11  is just -- it's endless.

12        MR. BIEN:  On that issue, Your Honor, you know, we

13  think again that -- obviously I don't know what -- the

14  defendants haven't really contended anywhere that this program

15  that they are doing at San Quentin is actually an ICF program.

16  And I'm not quite sure that that is in dispute.

17        THE COURT:  I had understood them to say it may not be

18  technically an ICF unit, but it provides equivalent care.

19        Is that wrong, Ms. Vorous?

20        MS. VOROUS:  No, that's not wrong.

21        THE COURT:  That's what I had understood.

22        But, you see, all of that takes time.  I mean, it's

23  got to be done.  I don't know whether you want to talk to

24  their expert, or whoever is going to testify on their behalf,

25  that the unit is equivalent and that there's no need to

1    transfer these people to the state hospital.

2         All right.  In any event, even assuming two days,

3    maybe three days on the outside, what are you going to need,

4    ma'am, to put on your opposition case?  Do you have any sense?

5         MS. VOROUS:  I would say, Your Honor, at least three

6    days.  And that's without knowing the extent of the third

7    motion that's coming down the line.  So --

8         THE COURT:  Okay.

9         (Plaintiffs' counsel conferring.)

10        THE COURT:  My sense of it -- again, I'm being more

11   optimistic perhaps than I should -- is that we're dealing with

12   lawyers, and there's no jury and, if I have to, I can take two

13   days here and four days there or whatever.

14        But Ana told me -- as I understand it, you want to

15   depose Dr. Haney, and that's proper.  And the rest of the

16   people you're conceding you have already talked to, so you

17   pretty much know what they're going to say.

18        Go ahead.

19        MS. VOROUS:  Experts, yes.  The only additional

20   witness to date that we're aware of that we haven't deposed

21   would be Dr. Badeaux, so we may depose him, but he's not the

22   plaintiffs' client.  He would be a percipient witness that we

23   would depose.

24        But in terms of scheduling, I also wanted to let Your

25   Honor know that I know we were looking at initially having a

1   hearing on the Department of State Hospitals and the San

2   Quentin issue the week of June 18th, but the State's key

3   witness, Dr. Monthei, is not available for a family -- for a

4   family --

5           THE COURT:  Of course.

6           MS. VOROUS:  He has a family emergency.  So --

7           THE COURT:  I mean, of course.  I don't mean that as a

8   negative comment.  It's just what the world is like.

9           MR. BIEN:  We would suggest on that, on the state

10  hospital motion, one reason -- I mean, all of the motions have

11  some degree of urgency, but there's an aspect of that that we

12  think is particularly important.  Because right now, the State

13  is transitioning to the new Stockton facility.  And one

14  major -- putting aside the death row issue for a moment, what

15  we are asking for, Your Honor, in relief is something which I

16  think is actually relatively undisputed, that there have been

17  problems with the state hospital and its ability to hire and

18  manage its facilities, especially at Salinas Valley; that they

19  have trouble reporting to the Court about their staffing

20  information.  They've conceded that.

21          And what we're asking for is that the special master

22  be tasked with watching those programs and making sure they're

23  operating safely and appropriately as the State attempts to do

24  this transition, which the Court has -- has blessed, but it

25  has also said you have to manage it appropriately.  So that is

 1    something that is going to be happening really soon.

 2          And in --

 3          THE COURT:  When is the state hospital supposed to --

 4    I'm sorry -- Stockton supposed to open?  I'm sorry.  I was

 5    just told by the special master, and it's just gone right out

 6    of my head.

 7          MR. BIEN:  I think they're planning on July 1 or soon

 8    thereafter.

 9          MS. VOROUS:  July 22nd is when they're going to start

10    bringing in patients into the ICF program.

11          THE COURT:  And by the end of 2013, you expect them to

12    be fully operational and everybody in --

13          MS. VOROUS:  Yeah, I would expect that perhaps the DSH

14    programs, the Department of State Hospitals programs be full

15    before the end of the year, but the facility in total is

16    intended to be fully occupied by the end of December.

17          THE COURT:  Mr. Bien, I understand what you've just

18    said, but if their chief witness is not available, he's not

19    available.

20          MR. BIEN:  Right.

21          THE COURT:  I mean, that's the way it is.

22          MR. BIEN:  I guess I'm -- we just found out -- we had

23    a conversation with Ms. Vorous in advance of the hearing,

24    found out about this.  And I guess one possible thing would be

25    to, you know, take his deposition in advance maybe by video or

1    something and let both sides --

2            THE COURT:  I'm going to say it again.  My own view is

3    that I want a perfected record, and I'm not sure that a

4    deposition will do the job.  Of course, it would be available

5    to the Court of Appeals if we did that.

6            Any objection to that thought, ma'am?

7            MS. VOROUS:  Yes, Your Honor.  We do object to having

8    his testimony by deposition.

9            MR. BIEN:  Your Honor, I would also suggest that on

10    the other motions, that it's important to see what issues

11    actually emerge once defendants oppose the motions.  On

12    segregation, they haven't even filed their opposition yet, so

13    we don't really know what the scope of the dispute is and --

14            THE COURT:  All right.  All right.  The Court's

15    previous order denying further discovery to the defendants is

16    vacated.

17            You're going to file your new motion next week?

18            MR. BIEN:  Yes.

19            THE COURT:  And you're going to reply to all of the

20    motions when?

21            MS. VOROUS:  I'm sorry, Your Honor?

22            THE COURT:  When do you file your response to all of

23    the motions?

24            MR. BIEN:  Well, the segregation opposition I think is

25    due on June 3rd, Your Honor.

1          MS. VOROUS:  Yes, that is correct, if we were to file

2     an opposition.  And that would be something we want to

3     discuss, if we're going to have an evidentiary hearing, would

4     it be proper for us to still file an opposition?

5          THE COURT:  Of course.  I mean, I've got to know

6     what -- everybody's got to know what the issue is.

7          MS. VOROUS:  Well, I --

8          THE COURT:  It's just like an issue in -- you know,

9     it's not an answer the way it would be in a trial, but it sets

10    the parameters of the hearing.

11         MS. VOROUS:  I understand that, Your Honor.  I was

12    just thinking in terms of whether you would be looking for an

13    opposition as compared to a trial brief say, for instance.

14         THE COURT:  Well, no, I think I'm looking for an

15    opposition and a trial brief when you can.

16             This is not good.  This is not satisfactory at all.

17             When will the doctor be available?

18         MS. VOROUS:  He's not 100-percent certain, Your Honor.

19    His father is going in for surgery in the middle of the month.

20    I would hope the first part of July.

21         THE COURT:  And he's necessary for the segregation

22    issue as well?

23         MS. VOROUS:  No, he's not involved in the segregation.

24    He's --

25         THE COURT:  Maybe what we do is we take the

1  segregation issue up in June.  And that's just going to be a

2  day or two, I would think.

3           MR. BIEN:  We -- again, we don't have their opposition

4  yet on that one.  And I guess what I was going to suggest,

5  Your Honor, is could we do the Department of State Hospitals

6  issues that are not San Quentin so that --

7           THE COURT:  Well, that's what he's needed for.

8           Am I --

9           MR. BIEN:  No, he's only for San Quentin.

10          THE COURT:  Oh, he's only for San Quentin?

11          MR. BIEN:  He's a CDCR --

12          THE COURT:  Oh, yes.  Well, that's the right thing to

13  do, then.

14          MR. BIEN:  Yeah.  And those are the issues that I

15  think are -- and, by the way, I think that those issues are

16  going to be something we can do in one day.

17          And I don't -- I actually think that Debbie and I

18  might be able to work out -- excuse me -- Ms. Vorous and I

19  might be able to work out some undisputed facts about those

20  issues.  Because the relief we're asking for there is much

21  more limited.  It's really for the special master to

22  investigate the programs and better reporting on the staffing.

23  There is one issue which I think is about the cuffing of

24  people in the first part of their stay in these high security

25  ICF programs.

14

```
 1          But I think we can deal with all of that in a day
 2    rather than -- and keep the hearing on for June 17th and 18th.
 3          THE COURT:  As to those matters, other than San
 4    Quentin.
 5          MR. BIEN:  And we can try to get Dr. Badeaux's
 6    deposition before then if you want.
 7          MS. VOROUS:  Yes, that -- we could do the Department
 8    of State Hospitals if that was what the hearing was limited to
 9    that week.
10          THE COURT:  All right.  All right.  Well, and you need
11    doctor -- are you going to take the deposition of Dr. Haney in
12    relation to the ad seg issues?
13          MS. VOROUS:  Dr. Haney's deposition would be related
14    to the San Quentin --
15          THE COURT:  All right.  So we don't have to worry
16    about that right now.
17          MS. VOROUS:  Correct.
18          THE COURT:  All right.
19          MR. BIEN:  So can we keep the hearing on for the
20    17th --
21          THE COURT:  Deep breath, deep breath.
22          MR. BIEN:  Yeah.
23          THE COURT:  All right.  Here's what I think we do.
24          We will keep the hearing on for December -- for
25    December, I'm losing my mind -- for June the 18th, is it,
```

1    Madam Clerk?

2        THE CLERK:  So right now there's a motion on June

3   17th.

4        THE COURT:  June 17th.  All right.

5        THE CLERK:  That's a law and motion day.

6        THE COURT:  Oh, no, I want a special set.  It's a

7   whole day.

8        MR. BIEN:  Okay.  So you want -- could we do the 18th?

9        THE COURT:  I don't know.

10       THE CLERK:  So if --

11       THE COURT:  You know, I know nobody believes it, but I

12   actually have other cases besides this.

13       Yes, ma'am.

14       THE CLERK:  For a full day, June 19th.

15       THE COURT:  June 19th.  Satisfactory to everybody?

16       MS. VOROUS:  Yes, for the Department of State

17   Hospitals issues?

18       THE COURT:  Yes.

19       MR. BIEN:  Okay.  We will check, and I think we can do

20   that.  We will make every effort -- I think we've got all of

21   our witnesses.

22       THE COURT:  All right.  Now, the Department of State

23   Hospitals, when are we -- what are we doing about the ad seg?

24       MR. BIEN:  They're going -- I assume they file their

25   opposition as scheduled, which is on the 10th, and then we

 1  can --

 2          THE COURT:  Can we do that on the 19th and 20th?

 3          MS. VOROUS:  Your Honor, we -- as I mentioned when we

 4  spoke earlier this week, you know, our expectation and intent

 5  was to request an extension for purposes of the hearing as

 6  well as the briefing schedule for -- for various reasons,

 7  including the fact that this motion involves conditions of

 8  confinement that we are going to need to seek expert advice on

 9  and are in the process of seeking that.

10          So just -- if we have to oppose that motion and still

11  prepare for a Department of State Hospitals hearing, that puts

12  the State in a very difficult situation in trying to get our

13  experts and line up the testimony we need.  And we would

14  anticipate that hearing would require at least two to three

15  days.

16          THE COURT:  Oh.  Well, all right.

17          MR. BIEN:  And --

18          THE COURT:  Go ahead.

19          MR. BIEN:  Yeah.  And, Your Honor, if in fact -- I

20  guess what I would suggest is that once we see their

21  opposition, and I don't know if we file our reply, too, if you

22  want, we can then decide on what issues there are and what the

23  scope of a trial would be.

24          THE COURT:  All right.  Here's what we're going to do.

25  We're going to leave the state hospitals issue on for the

1  19th.  You are to file your response to the ad seg issue by --

2  I'm sorry.  What date was it due?

3         MS. VOROUS:  Currently it's due June 3rd.

4         THE COURT:  June 3rd.  And I hate to ask you people to

5  come back for -- because it costs time and money that is not

6  well spent, but I don't know how else to do this.  We tried it

7  on the phone, and it was just not useful.

8         All right.  I will try it once more by the phone once

9  you've filed your answer and see whether we can work that out.

10  And if not, we'll just have to have -- as much as I don't want

11  to do it, we'll have another status conference.

12         And you're to file your third motion, fourth

13  whenever --

14         MR. BIEN:  Right.

15         THE COURT:  -- whenever you said you were going to do

16  it.  And you're to file your response in accordance with the

17  local rules.  And we'll take that up hopefully once we know

18  what the scope of that is.  I don't know how else to do it.

19         Satisfactory, folks?

20         MR. BIEN:  Yes, Your Honor.

21         MS. VOROUS:  Yes, Your Honor.  But I just don't want

22  to be misinterpreted perhaps that if -- and I'm not assuming

23  that Your Honor is denying our request for an extension from

24  the bench today, that we would still have an opportunity to

25  present that, and you would consider it.

1          THE COURT:  I certainly will consider it.  But, to be

2     candid with you, it doesn't seem to me -- with the exception

3     of Dr. Haney -- which, yes, I will tell you now, you have a

4     right to depose, and you will make arrangements to have him

5     available for that.

6          Beyond that, I don't know what -- I would have

7     expected really that he wants a deposition of your experts

8     relative to the ad seg issue to the extent that it's involving

9     custody matters rather than medical questions.  But maybe you

10    can work that out and, if you can't, then I'll have to do

11    something.  I'll have to have a hearing about that as well.

12         MR. BIEN:  Your Honor, there's one other -- I just

13    want to -- as we're talking about scheduling, I just want to

14    reveal that there's another dispute between the parties that's

15    emerged which is concerning attorney's fees for the

16    termination proceeding.

17         And we will --

18         THE COURT:  That I can do without a lot of brouhaha.

19         You file your request, you oppose it and show why --

20         MR. BIEN:  Okay.

21         THE COURT:  -- and I'll decide it.

22         MR. BIEN:  Okay.

23         THE COURT:  I mean, that doesn't require --

24         MR. BIEN:  I just wanted to give notice.

25         THE COURT:  Yeah, that doesn't require, hopefully

```
 1    doesn't require a further evidentiary hearing.

 2              Well, I think we've done what we can do today.  I

 3    don't know what else we can do.

 4              Thank you, folks.

 5              MR. BIEN:  Thank you, Your Honor.

 6              MS. VOROUS:  Thank you.

 7              THE COURT:  Stand in recess.

 8                (Proceedings were concluded at 10:30 a.m.)

 9                         ---o0o---

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1          I certify that the foregoing is a correct transcript

2     from the record of proceedings in the above-entitled matter.

3

4
                              /s/ Kathy L. Swinhart
5                             KATHY L. SWINHART, CSR #10150

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25