KAMALA D. HARRIS
Attorney General of California
JONATHAN L. WOLFF
Senior Assistant Attorney General
JAY C. RUSSELL
Supervising Deputy Attorney General
DEBBIE VOROUS, State Bar No. 166884
PATRICK R. MCKINNEY, State Bar No. 215228
MANEESH SHARMA, State Bar No. 280084
Deputy Attorneys General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
Telephone: (415) 703-5553
Fax: (415) 703-1234
E-mail: patrick.mckinney@doj.ca.gov
*Attorneys for Defendants*

Hanson Bridgett LLP
JERROLD C. SCHAEFER, State Bar No. 39374
PAUL B. MELLO, State Bar No. 179755
WALTER R. SCHNEIDER, State Bar No. 173113
SAMANTHA D. WOLFF, State Bar No. 240280
425 Market Street, 26th Floor
San Francisco, California 94105
Telephone: (415) 777-3200
Fax: (415) 541-9366
E-mail: pmello@hansonbridgett.com

IN THE UNITED STATES DISTRICT COURTS

FOR THE EASTERN DISTRICT OF CALIFORNIA

AND THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| **RALPH COLEMAN, et al.,**<br>Plaintiffs,<br>**v.**<br>**EDMUND G. BROWN JR., et al.,**<br>Defendants. | 2:90-cv-00520 LKK JFM P<br>**<u>THREE-JUDGE COURT</u>** |
| **MARCIANO PLATA, et al.,**<br>Plaintiffs,<br>**v.**<br>**EDMUND G. BROWN JR., et al.,**<br>Defendants. | C01-1351 TEH<br>**<u>THREE-JUDGE COURT</u>**<br>**DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE AND REQUEST FOR ORDER TO SHOW CAUSE REGARDING DEFENDANTS' RESPONSE TO APRIL 11, 2013 ORDER** |

**INTRODUCTION**

This Court should reject Plaintiffs' requests for an order to show cause regarding contempt. (*See* Pls.' Resp. to Population Reduction Plan (Pls.' Resp.) at 2, *Coleman* ECF No. 4611.) Defendants have not "outright refused" to obey the Court's April 11, 2013 Order, or sought to "frustrate" this Court's order or efforts to reduce the prison population. (*Id.)* Far from it, Defendants submitted a list of potential inmate population measures and a plan for implementation, as ordered. (Defs.' Resp. to Apr. 11, 2013 Order, *Coleman* ECF No. 4572 (Defs.' Submission).) Defendants further described the reasons why they could not, under the law, implement most of the measures on the list. (*Id.*) Further, Defendants have commenced implementation of all aspects of the Court-ordered plan that are within the executive branch's authority to implement and are taking the extraordinary step of drafting proposed statutory language for the Legislature's consideration. (Defendants' May 2013 Status Report, *Coleman* ECF No. 4613.)

Plaintiffs' request for an order to show cause regarding contempt appears to be built on a flawed assumption that the Governor and the other executive Defendants can direct the actions of the Legislature, an independent branch of government. But when, as here, the executive branch has taken all of the actions within its power—and, moreover, where immediate legislative action on all the measures in the plan could still not reduce the population to the 137.5% cap by December 2013—contempt proceedings are inappropriate. (*See generally* Defs.' Submission.)

If this Court intended to impose more requirements on Defendants than those Defendants have taken extraordinary measures to implement, the Court should clarify those requirements in a further order. The additional relief demanded by Plaintiffs is not warranted. (*See* Pls.' Resp. at 2-3 (requesting that Defendants be required to draft a list of inmates whose release would purportedly be "least likely to jeopardize public safety"); *id.* at 8 (requesting that the Court vitiate Article I of the California Constitution and sections of the Penal Code).)

## I. THE COURT-ORDERED PLAN INCLUDES ALL MEASURES THAT DEFENDANTS ARE AUTHORIZED TO IMPLEMENT AND RESPECTFULLY COMPLIES WITH THE COURT'S ORDER.

Plaintiffs attempt to identify deficiencies in Defendants' submission that they contend are sufficient to trigger an order to show cause. Plaintiffs' description is inaccurate, and the issues they raise fail to identify conduct that would support contempt proceedings.

Plaintiffs broadly miscast Defendants' submission as non-responsive to the Court's order. (Pls.' Resp. 2-3.) In doing so, Plaintiffs ignore the majority of Defendants' submission and the supporting declarations. Together, those materials provide a detailed overview of the current political reality during the early phases of realignment, as well as other key developments, against which any further potential prison-population-reduction measures should be assessed. (*See, e.g.,* Decl. J Beard Supp. Defs.' Resp. to April 11, 2013 Order (Decl. Beard) ¶¶ 11-16.) Defendants' submission responds to the Court's instruction to list all proposed population-reduction measures—including those identified in the Court's August 2009 and April 2011 Opinions—and also explains why certain measures are excluded from the court-ordered plan and addresses each measure's impact on durability. (April 11, 2013 Order ¶¶ 1, 2.e-g.)

Plaintiffs also argue that Defendants attempt to re-litigate settled issues. (Pls.' Resp. at 5-7.) Defendants do no such thing. Defendants' discussion of political and public-safety concerns provide critical context for why certain items in the list cannot be incorporated in the plan, and why further measures threaten to undermine the population-reduction gains already achieved under realignment. (*See, e.g.,* Decl. Beard ¶¶ 15-16.) As Defendants explained, counties are still adjusting to the increased demands placed on their jails, courts, probation departments, and local mental-health and drug-treatment services as a consequence of shifting tens of thousands of inmates to local supervision. (*Id.* at ¶¶ 13-14.) These are new and substantial challenges that warrant the Court's attention as it considers whether to impose further population-reduction measures. In short, Defendants' explanation complies with the Court's directive that Defendants provide reasons "why they do not propose to implement [measures included in the List but not the Plan]." (April 11, 2013 Order ¶ 2.e.)

Notably, Plaintiffs do not offer any rejoinder to Defendants' showing that additional measures are likely to disrupt, if not undo, the coalitions that have made the current prison-population reductions possible. (*See generally* Pls.' Resp.) Moreover, Plaintiffs take liberties with the record when they imply that Defendants failed to comply with the Court's order when they described the population reductions achieved thus far and stated that further-population-reduction measures cannot be accomplished without threatening public safety. For instance, Plaintiffs misleadingly suggest that Defendants have reduced the prison population by "only 24,000 prisoners," and therefore are acting unreasonably and obstinately given that this Court previously predicted that a 46,000-inmate reduction would be possible without endangering public safety. (Pls.' Resp. at 7.) Plaintiffs ignore that Defendants have now adopted and taken action to implement all but one of the expert panel's recommendations on which this Court relied to conclude that a reduction of 46,000 inmates was possible. (*See generally* Defs.' Submission.) And the only measure that Defendants have not advanced is the recommendation to award retroactive sentence credits to serious and violent offenders. (Decl. J. Atkinson Supp. Defs.' Resp. to April 11, 2013 Order (Decl. Atkinson) ¶¶ 27-41; Decl. Beard ¶ 15.) Indeed, through its efforts, the State has reduced the prison population by more than 36,000 inmates from the population figures used during the 2009 evidentiary hearing record. (*See* Mot. Vacate or Modify, *Coleman* ECF No. 4280 at 2.) And the prison population has been reduced by more than 42,000 inmates since 2006. (*See* Defs.' Submission at 1.)

Similar to the importance of considering the public-safety issues that exist today, the current substantive conditions in CDCR's prisons are essential considerations if this Court intends to consider imposing further population-reduction measures (which, in any event, would pose significant risks to public safety and population reduction generally). (Decl. Atkinson ¶¶ 27-41.) It is especially important to consider the current conditions of confinement and the quality of medical and mental-health care when, regardless of what measures the Legislature may adopt from the plan, there is no way to meet a 137.5% population cap by December 2013 absent outright inmate releases. (*Id.* ¶ 21.)

Additionally, the Court should reject Plaintiffs' efforts to downplay the reality of the improved conditions by attacking the integrity of the Office of the Inspector General—upon whose reports Plaintiffs relied for years. (Pls.' Resp. at 6.) As shown by the Inspector General's accompanying declaration, he and his office have been and remain completely independent, acting as the public's agent in overseeing the state's prisons and correctional programs. (Decl. R. Barton in Reply to Pls.' Resp. and Req. for OSC.) The Inspector General and his staff fulfill their duties by conducting reviews of CDCR's policies, practices, and procedures when requested by the Governor, the Senate Committee on Rules, or the Speaker of the Assembly. (*Id.*) The Inspector General continues to review the quality of health care provided by CDCR at the State's request, and he provided a summary of his findings—in his own words—when requested to do so by the Governor. (*Id.*) Plaintiffs' attempt to deflect the Court's attention from Defendants' submissions by alleging that the Inspector General is now "unreliable" and only "purportedly 'independent'" is not supported by any reasonable interpretation of the record and should be ignored.

## II. THE COURT-ORDERED PLAN INCLUDES ALL MEASURES THAT DEFENDANTS ARE AUTHORIZED TO IMPLEMENT.

Plaintiffs suggest that because the court-ordered plan does not propose measures to satisfy the 137.5% population cap by December 2013, but will instead place Defendants within 2.2% (2,570 inmates) of the cap, the submission "flouts" the Court's Orders. (Pls.' Resp. at 3.) Plaintiffs' hyperbolic argument ignores the reality that Defendants are limited in the actions they can legally take to satisfy the Court's order. Defendants' submission includes all of the measures that the executive branch has authority to implement. (*See* Defs.' Submission at 28-29; Order ¶¶ 2, 3(a).) Plaintiffs do not describe any additional measures that the executive could implement. (*See generally* Pls.' Resp.) Instead, the court-ordered plan incorporates the few remaining measures Defendants have the authority to unilaterally impose to reduce the population. (Defs.' Submission at 28-29.) Defendants do not have power to implement most of the measures that would be needed to achieve full compliance with the Court's population cap by the end of the

year. (*Id.*; Decl. Atkinson ¶ 21.) Plaintiffs' suggestion that Defendants should be held in contempt for failing to take actions that would violate existing state law, or require passage of new laws, offends common sense and fundamental principles of judicial fairness.

Not only have Defendants proposed measures that reach the limits of the executive branch's power, but Defendants have taken the further step of proposing legislative measures. (May 15, 2013 Decl. Diana Toche ¶ 3, ECF 2630/4614.) This does not suggest recalcitrance or willful obstruction of the Court's goals. (*See id.*) Further, even if the Legislature were to act on all the measures proposed by Defendants, Plaintiffs cannot show that the 137.5% cap can be achieved by December 2013 without outright releases of offenders convicted of serious or violent crimes. (Decl. Atkinson ¶ 21.)

Finally, but perhaps most significantly, consistent with paragraph 2.e of the Court's order, Defendants' submission showed that compelling some combination of further steps—all of which require legislative or judicial action—would put the entire program of population reduction at risk and pose new threats to public safety. (Decl. Beard ¶¶ 11-14; *see* 18 U.S.C. § 3626(a)(1)(A)).

## III. DEFENDANTS CANNOT BE FAULTED FOR NOT HAVING A PREFERENCE AMONG THE VARIOUS RISKY AND UNDESIRABLE OPTIONS ON THE LIST.

In focusing solely on Defendants' statement that measures not in Defendants' authority to implement were not listed in any order of preference, Plaintiffs elevate form over substance. Plaintiffs ignore that the Defendants distinguished among the listed measures by expressly including several in the court-ordered plan and by explaining, in detail, why they excluded various others. (Defs.' Submission at 34-39; *see generally* Order ¶ 2 (requiring submission of a plan).)

Further, Plaintiffs fail to recognize that Defendants could not, in good faith, present a false preference for measures that Defendants neither have authority to implement nor believe are prudent or necessary. (Decl. Jeffrey Beard Supp. Reply ¶ 3.) This is particularly true for measures that were identified in the comprehensive list but excluded from the court-ordered plan. (*Id.*) The excluded measures would require Defendants to effectively endorse legislative changes

that risk public safety and could undermine the substantial population reductions already achieved. (*See*, *e.g.*, Defs.' submission 35-37 (credits for violent offenders, and outright release of murderers and violent felons); *id.* at 34 (further realignment).) Accordingly, there is no basis to commence contempt proceedings.

Plaintiffs' request for an order to show cause also fails to acknowledge or give adequate weight to the unusual action Defendants are taking to draft legislative language for the measures in the court-ordered plan requiring enactment by the Legislature. (Defs.' May 2013 Status Report 2.) As noted in Defendants' submission, the Court's directive for Defendants to use "best efforts to implement the Plan" and "attempt in good faith to obtain" legislative authorization did not define those terms. (April 11, 2013 Order ¶¶ 2, 3.b.) Nonetheless, Defendants' submissions to the Legislature, and their identification of the requisite laws that would need to be changed, satisfy the Court's requirements.

## IV. PLAINTIFFS' CLAIMED "OMISSIONS" OF POPULATION-REDUCTION MEASURES ARE WITHOUT MERIT.

Plaintiffs assert that Defendants have "omitted" two purported "population reduction measures" from the list, which warrants a finding of contempt. (Pls.' Resp. 3.) Specifically, Plaintiffs allege that the list omits a "sentencing reform commission" and expansion of alternative custody programs. (*Id.*) Plaintiffs' allegations reflect a misunderstanding of these measures and the record in this case.

First, a "sentencing reform commission" is not a population-reduction measure itself, but a means for the government to consider the effectiveness and social value of penalties imposed by criminal courts. (Beard Decl. ¶ 5.) Even if a commission was established, it is not certain the prison population would decrease. (*Id.*) Depending on its decisions about reforms, a commission could recommend that the Legislature increase, reduce, or leave unchanged the population. (*Id.*) And any changes promulgated by a commission to reduce sentences—as Plaintiffs narrowly assume would happen—almost certainly could not take effect by the end of the year as is required to satisfy the Court's orders. (*Id.*) Therefore, a sentencing commission is not a measure for

achieving timely compliance with the Court's population cap.

Second, Plaintiffs' contention that Defendants' did not fully discuss the alternative custody program or expansion of the work-furlough and restitution-center programs is incorrect. (*See* Decl. Mike Stainer Supp. Defs.' Resp. ¶¶ 36-40, ECF 2605/4568.) Mr. Stainer specifically discusses the laws that would need to be amended or waived to expand the alternative custody program to male inmates, and the steps necessary to implement this measure. (*Id.* ¶¶ 39-40.) Mr. Stainer also states that the proposal to expand eligibility for work furlough/restitution centers will not likely produce any population reductions by December 31, 2013. (*Id.* ¶ 38.) Contrary to Plaintiffs' allegations, these measures were discussed in Defendants' submission.

**CONCLUSION**

There is no basis for an order to show cause, or for the Court to take or order any of the new steps that Plaintiffs demand.

Dated: May 29, 2013

HANSON BRIDGETT LLP

By: */s/ Paul B. Mello*

PAUL B. MELLO

*Attorneys for Defendants*

Dated: May 29, 2013

KAMALA D. HARRIS

Attorney General of California

By: */s/ Patrick R. McKinney*

PATRICK R. MCKINNEY

Deputy Attorney General
*Attorneys for Defendants*

SF2007200670