ROBERT A. BARTON
Inspector General
JAMES C. SPURLING, State Bar No. 109432
Chief Counsel
10111 Old Placerville Road, Suite 110
Sacramento, CA 95827
Telephone: (916) 255-1102
Fax: (916) 255-1403
Email: spurlingj@oig.ca.gov

Attorneys for Non-Party California Office of the Inspector General

IN THE UNITED STATES DISTRICT COURTS

FOR THE EASTERN DISTRICT OF CALIFORNIA

AND THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| RAPLH COLEMAN, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>EDMUND G. BROWN JR, et al.,<br><br>    Defendants. | 2:90-cv-00520 LKK JFM P<br><br>**THREE-JUDGE COURT** |
| MARCIANO PLATA, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>EDMUND G. BROWN JR, et al.,<br><br>    Defendants. | C01-1351 TEH<br><br>**THREE-JUDGE COURT**<br><br>**DECLARATION OF ROBERT A. BARTON** |

I, Robert A. Barton, declare as follows:

1. I am the Inspector General for the State of California, specifically with jurisdiction to oversee the California Department of Corrections and Rehabilitation (Department or CDCR). Previously, I served as a Senior Assistant Inspector General in the OIG's Bakersfield, California office. Prior to that position, I was a deputy district attorney for Kern County for 16-1/2 years, including 5 years as the supervising deputy for prison crimes. On August 29, 2011, I was appointed by Governor Brown as the Inspector General and on March 5, 2013, was confirmed unanimously by the California State Senate. The Office of the Inspector General is an apolitical appointment with a six year fixed term.

2. The Office of the Inspector General (OIG) responds to all critical incidents occurring within the CDCR, including in-custody deaths of inmates and wards. As a Senior Assistant Inspector General from 2005 to 2010, I personally responded to and reviewed cases involving inmate deaths in custody, some of which were due to negligent medical care.

3. Additionally, the OIG is statutorily charged with conducting objective, clinically appropriate and metric oriented medical inspections at each state prison. To date the OIG has inspected each prison three times and has issued written reports detailing our findings.

4. In January 2013, I provided a declaration to the Three-Judge Court in Case Nos. 2:90-cv-00520 LKK JFM P and C01-1351 TEH in which I outlined the current OIG prison medical inspection process. I also gave my opinion of the current state of medical care within the prisons. That opinion was based upon the results of our inspections from 2010 to present, as well as cases of staff misconduct and negligence monitored by the OIG on which we publicly report.

5. The Plaintiffs have criticized my declaration, alleging this office is biased and lacks independence. The conclusions stated in the declaration were my own. I accept the Receiver's and the Court's criticism of my opinion that the current level of overcrowding is no longer a factor affecting CDCR's ability to provide effective medical care, due to the "statistically soft" sampling and nature of our inspections. However, that does not make my opinions any less independent. The Plaintiffs subpoenaed, and received without resistance, the written communication between myself and the Governor's Office regarding the declaration.

6. The first exchange regarding providing a declaration actually occurred during a phone conversation with the Governor in August 2012, subsequent to the publication of our Cycle 1 and Cycle 2 comparative report that was released in July 2012. I was asked my independent opinion at that time of how much progress the Department was making, as well as what I felt the improvements indicated. No one from the Department was involved in that communication. I felt at that time that there was insufficient evidence of sustained progress to conclude that the system was consistently providing timely and effective care such that I could opine there was no "deliberate indifference" to the provision of adequate health care to inmates. However, I indicated that if the Department continued to improve through Cycle 3, I might be able to do so. After nearly completing Cycle 3, I was re-contacted by the Governor's Office and again asked about submitting a declaration. This time I agreed to do so based upon my knowledge of the reports prepared by my office. In addition to emails sent back and forth regarding content and format of the declaration there were also phone calls during which we discussed what I could and could not declare. The process we followed in this case would have been the same had the Plaintiffs requested that I submit a declaration regarding lapses we discovered in medical care.

7. I did not in my January 2013 declaration, nor do I now, put myself in the place of the Court in deciding if a constitutional standard of care for inmates has been met by CDCR. All I can give is my opinion, which has not changed, based upon the reports of my staff's monitoring and inspections that do not show a deliberate indifference to medical needs of inmates as I define that term. In fact, this office sees the court's experts' reports as validating our findings in most respects regarding the improvements shown by our inspections. We cannot account for those areas we did not inspect. In the case of the R J Donovan Correctional Facility in San Diego, California, the only institution showing a major difference, the anomaly is mostly explained by the drastic change in mission for that prison that significantly impacted their medical care, the differences in the inspection tool used by the court experts, and the several months that passed between our inspection and the court experts' evaluation of that prison.

8. The Plaintiffs' representatives have been, and continue to be in constant contact with our office regarding medical inspections. My Chief Deputy oversees our Medical Inspection Unit and has consulted with them on numerous occasions. Their input is welcome and needed. In point of fact, the start of our 4th cycle of medical inspections is currently in abeyance until meetings have concluded with the parties and the court's experts to modify our inspections to address policy updates and accommodate changes requested by the parties. The OIG is not a party to this lawsuit and is not on either party's "side". We are committed to insuring that the rights and interests of the citizens of California are protected, including those of inmates to adequate healthcare. The oversight role of the OIG has been, and will continue to be completely independent and transparent.

9. I believe that when federal oversight ends, the OIG will play a vital role pursuant to our statutory mandate to conduct objective, clinically appropriate and metric oriented medical inspections by continuing our inspections process. In the meantime, we welcome the opportunity to work with the Plaintiffs and the court experts to refine our inspection tool

in any way that is helpful to the resolution and successful outcome for all parties and the Court.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct. Executed in Sacramento, California on May 29, 2013.

                                                */s/ Robert A. Barton*

                                                ROBERT A. BARTON

                                                California Inspector General