KAMALA D. HARRIS
Attorney General of California
JONATHAN L. WOLFF
Senior Assistant Attorney General
JAY C. RUSSELL
Supervising Deputy Attorney General
DEBBIE J. VOROUS, State Bar No. 166884
PATRICK R. MCKINNEY, State Bar No. 215228
WILLIAM DOWNER, State Bar No. 257644
Deputy Attorneys General
  1300 I Street, Suite 125
  P.O. Box 944255
  Sacramento, CA 94244-2550
  Telephone: (916) 324-5345
  Fax: (916) 324-5205
  E-mail: Debbie.Vorous@doj.ca.gov

*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **RALPH COLEMAN, et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**EDMUND G. BROWN JR., et al.,**<br><br>Defendants. | 2:90-cv-00520 LKK JFM PC<br><br>**DEFENDANTS' BRIEF RE: EVIDENTIARY HEARING**<br><br>Date:        June 19, 2013<br>Time:        10:15 a.m.<br>Dept:        4<br>Judge:      Hon. Lawrence K. Karlton |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................ 1

II.   PROCEDURAL DISCUSSION ..................................................................... 2

III.   DEFENDANTS' EVIDENCE ....................................................................... 3

    A.   There Are No "Severe Clinical Staffing Shortages" Affecting the Quality of Care Provided to DSH Patients.................................................... 4

    B.   No Dispute Exists Concerning the Hiring and Use of Registry and Overtime at DSH Programs Within CDCR Facilities.............................. 5

    C.   Inmates-Patients Are Provided Appropriate Treatment While Their Orientation Status is Reviewed. ...................................................... 6

    D.   Defendants Are Providing Inmate-Patients with Basic Necessities............ 7

    E.   Defendants Are Not Mismanaging Discharges and Waitlists for Inpatient Care. ...................................................................................... 7

    F.   No Further Orders Are Necessary to Compel Defendants' Compliance with This Court's August 2008 Order. ................................. 8

    G.   The State Appropriately and Consciously Manages Patient Movement When New Units Are Opened. .................................................. 9

    H.   Objections to Evidence. ..................................................................... 9

        1.   The Court Should Overrule Plaintiffs' Objections Regarding Defense Witness's Expertise and Personal Knowledge of Their Testimony, and Sustain Defendants Objections to the Brim and Badeaux Testimony....................................................... 9

        2.   Plaintiffs' Original Writing Rule Objections................................ 13

        3.   Plaintiffs' Jurat Objection Should be Disregarded. ....................... 14

        4.   Defendants' Additional Objections.............................................. 14

IV.   DEFENDANTS HAVE ESTABLISHED THAT THEIR POLICIES HAVE APPROPRIATE PENOLOGICAL JUSTIFICATION............................ 15

V.   CONCLUSION ............................................................................................ 17

i

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Anderson v. County of Kern*
  45 F.3d 1310 (9th Cir. 1995) ............................................................................. 16

*Coleman v. Wilson*
  912 F. Supp. 1282 (E.D. Cal. 1995) ........................................................... passim

*Farmer v. Brennan*
  511 U.S. 825 (1994) ................................................................................... 15, 16

*Hope v. Pelzer*
  536 U.S. 730 (2002) ......................................................................................... 16

*Johnson v. California*
  543 U.S. 499 (2005) ......................................................................................... 16

*Jordan v. Gardner*
  986 F.2d 1521 (9th Cir. 1993) ......................................................................... 16

*Mendoza v. Sysco Food Services of Arizona, Inc.*
  337 F. Supp. 2d 1172 (D. Ariz. 2004) ............................................................. 10

*Michenfelder v. Sumner*
  860 F.2d 328 (9th Cir. 1988) ........................................................................... 16

*Mississippi Chemical Corp. v. Dresser-Rand Co.*
  287 F.3d 359 (5th Cir. 2002) ............................................................................. 9

*Coleman v. Brown*
  90-cv-520 (E.D. Cal. May 23, 2013) ................................................................. 3

*R & R Associates, Inc. v. Visual Scene Inc.*
  726 F.2d 36 (1st Cir. 1984) ............................................................................. 13

*Redman v. County of San Diego*
  942 F.2d 1435 (9th Cir. 1991) ......................................................................... 16

*Sanchez v. Vild*
  891 F.2d 240 (9th Cir. 1989) ............................................................................. 7

*Seiler v. Lucasfilm, Ltd.*
  808 F.2d 1316 (9th Cir. 1986) ......................................................................... 13

ii

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Seltzer v. I.C. Optics Ltd.*
    339 F. Supp. 2d 601 (D.N.J. 2004) ............................................................... 10

*Whitley v. Albers*
    475 U.S. 312 (1986) ....................................................................................... 15

STATUTES

18 U.S.C. § 3626(a)(1)(A) ............................................................................. 2, 18

Cal. Code Regs. Title 22 ..................................................................................... 5

Cal. Code Regs. Title 22, § 77073 ...................................................................... 6

Cal. Gov't Code § 7522.56 .................................................................................. 6

Cal. Penal Code § 2684(a) .................................................................................. 7

CONSTITUTIONAL PROVISIONS

Eighth Amendment ................................................................... 7, 15, 16, 18

COURT RULES

Fed. R. Civ. Proc. 26 ..................................................................................... 3, 14

Fed. R. Evid. 402 ................................................................................................. 3

Fed. R. Evid. 403 ................................................................................................. 3

Fed. R. Evid. 602 ........................................................................................... 9, 11

Fed. R. Evid. 701 ........................................................................................... 9, 11

Fed. R. Evid. 702 ................................................................................................. 3

Fed. R. Evid. 703 ................................................................................................. 3

Fed. R. Evid. 802 .......................................................................................... 3, 14

Fed. R. Evid. 1002 ...................................................................................... 13, 14

OTHER AUTHORITIES

Assembly Bill 340 ............................................................................................... 6

Mueller & Kirkpatrick, Evidence § 10.1 (4th ed 2009) ................................. 13

iii

1
2

# I.    INTRODUCTION

3      Plaintiffs ask the Court to issue numerous affirmative orders concerning the Salinas Valley

4 Psychiatric Program at Salinas Valley State Prison and the Vacaville Psychiatric Program at

5 California Medical Facility, two programs operated by the Department of State Hospitals (DSH)

6 in California prisons.  Plaintiffs' proposed orders, if granted, would unnecessarily expand judicial

7 oversight into these programs.  But this Court has never found that DSH is providing inadequate

8 care to class members.  *See Coleman v. Wilson,* 912 F. Supp. 1282 (E.D. Cal. 1995). (*See also*

9 Order, ECF No. 1855 [joining the director of the Department of Mental Health to the *Coleman*

10 lawsuit under Fed. R. Civ. P. 21].)

11      The evidence will show that DSH—like all organizations--experiences staffing fluctuations

12 when employees depart.  Salinas Valley has been aware of these fluctuations and has undertaken

13 significant action to minimize the impact of staffing changes.  As such, Defendants have not been

14 deliberate indifferent to Salinas Valley's inmate-patients' mental-health care needs.  The Salinas

15 Valley program continues to provide appropriate and timely treatment to all patients needing

16 intermediate care, and operates it program safely and securely.  Similarly, the criticism of staffing

17 changes at the Vacaville program is unfounded and speculative.

18      Defendants have offered competent and compelling testimony of the actions taken to

19 ameliorate staffing changes.  The evidence will further show that inmates in the Salinas Valley

20 program who are on orientation status are provided basic mental health treatment pending

21 custodial and clinical staff determination that the inmate may safely program with the other

22 inmates.  The orientation process is well-grounded in public safety and the operation of the

23 criminal justice system.  Thus, even if the Court finds that the program's orientation status policy

24 impinges inmates' constitutional rights—which it does not—the Court should find the policy valid

25 because its purpose is to promote legitimate penological interests rather than to unnecessarily

26 punish inmate-patients.

27      In addition, the evidence will show that Defendants are not mismanaging discharges and

28 waitlists for inpatient care, and continue to appropriately and consciously manage patient

1

Defs.' Brief Re: Evidentiary Hearing (2:90-cv-00520 LKK JFM PC)

1  movement associated with the opening up of new units.  Plaintiffs' expert's testimony, which

2  contends that DSH prematurely discharges inmates from inpatient programs, does not establish

3  actual knowledge or willful blindness of impending harm to class members.  At most, it

4  establishes a difference in clinical opinion, not evidence of a constitutional violation.

5        Defendants' uncontroverted evidence also establishes that, contrary to Plaintiffs'

6  allegations, (1) inmates are provided basic human necessities; (2) there are no material disputes

7  concerning the hiring and use of registry and overtime at the Salinas Valley and Vacaville

8  programs; (3) Defendants are not violating this Court's August 2008 order regarding mandating

9  access to DSH inpatient care for all *Coleman* class members, regardless of parole status or date of

10  their parole.

11        In short, the evidence will show that Plaintiffs' requests for further enforcement orders and

12  affirmative relief must be denied.  Plaintiffs' requested remedies require the existence of a

13  "constitutional violation in need of correction."  18 U.S.C. § 3626(a)(1)(A).  Here, there are none.

14  Likewise, granting Plaintiffs' request for an order expanding the special master's monitoring

15  duties would not be the least intrusive means necessary to correct an alleged violation of a federal

16  right.  (*Id.*)  Plaintiffs' motion must not be used to expand the already intrusive and costly

17  oversight of California's prison mental-health system.

18                    **II.    PROCEDURAL DISCUSSION**

19        On April 11, 2013, Plaintiffs moved for enforcement of court orders and affirmative relief

20  related to inpatient treatment by the Department of State Hospitals.  (ECF No. 4543.)  In their

21  motion, Plaintiffs rely, in part, on an expert declaration from Dr. Pablo Stewart and deposition

22  testimony of third-party witness Dr. John Brim, both developed in response to Defendants'

23  termination motion, and a new declaration from third-party witness Dr. Joel Badeaux.  (Pls. Mot.,

24  ECF No. 4543.)[1]  Defendants opposed Plaintiffs' motion and submitted objections to testimony

25  _____

26  [1] Plaintiffs also rely on the handwritten notes of Defendants' expert Dr. Charles Scott (Pls. Mot. at 23:1–10) and the declarations of DSH executive staff (*id.,* at 25:8–28).  In opposing Defendants' termination motion, Plaintiffs objected to the Court's considering evidence from Defendants' experts and objected to "new evidence" from DSH executive staff presented for the first time in their reply brief.  Fairness dictates that the Court not consider this evidence now.

27

28

2

1    from Dr. Brim and Dr. Badeaux.  (ECF Nos. 4592 & 4591.)  In their reply brief, Plaintiffs

2    submitted a declaration from Dr. Stewart.  (Pls. Reply, ECF. No.  4617.)

3        At a status conference, the Court set an evidentiary hearing on the DSH issues raised by

4    Plaintiffs for June 19, 2013.  (ECF No. 4632.)  The Court indicated that it would accept

5    declarations filed in connection with the motion into evidence, and implied that the parties should

6    submit supplemental briefs ahead of the hearing.  (Transcript of May 23, 2013 Hearing at 5 & 12,

7    *Coleman v. Brown*, No. 90-cv-520, (E.D. Cal. May 23, 2013)  For that reason, Defendants submit

8    this brief and incorporate by reference the arguments made in their opposition brief, their

9    supporting declarations, and their objections to evidence.  (*See* ECF Nos.  4592, 4591, 4595,

10   4599, 4601–1, 4598, 4597 & 4602.)

11              **III.   DEFENDANTS' EVIDENCE**

12       Plaintiffs failed to carry their burden under the Prison Litigation Reform Act to prove

13   ongoing constitutional violations supporting further orders, and cannot show Defendants are

14   acting with deliberate indifference to inmate's mental health needs.[2]

15       Rather, admissible evidence shows that Defendants continue to provide constitutionally

16   adequate mental health care to *Coleman* class members housed in DSH programs.  In addition,

17   Defendants expect to present witness testimony at the hearing from Pamela Ahlin, Executive

18   Director of the Salinas Valley program; George Maynard, Assistant Executive Director of the

19   Salinas Valley program; Ariel Troncoso, M.D., psychiatrist at the Salinas Valley program;

20   Kathryn Gaither, Chief Deputy Director for DSH; Ellen Bachman, Executive Director for the

21   Vacaville program; and Randolf Grounds, Salinas Valley State Prison Warden.

22

23   _____

24       [2] Plaintiffs list Dr. Pablo Stewart, Dr. Joel Badeaux, and Jeanne Woodford as their
     witnesses for the hearing.  As noted, Defendants incorporate in this brief their objections to
     Plaintiffs' evidence, particularly certain paragraphs from Dr. Badeaux's declaration.  (ECF No.
25   4591 at 2–8.)  Defendants will also move to exclude the deposition testimony of Dr. John Brim as
     inadmissible hearsay under Federal Rule of Evidence 802, the supplemental testimony of Dr.
26   Pablo Stewart relating to a March 2013 death at the Salinas Valley Psychiatric Program as lacking
     foundation or probative value under Rules 402, 403, 702 and 703, and any expert testimony from
27   Ms. Woodford concerning the orientation process used at the Salinas Valley program for failure
     to file an expert report under Federal Rule of Civil Procedure 26.

28

3

1    Defendants' evidence will show that (1) the Salinas Valley program continues to provide

2    appropriate and timely treatment to all patients needing inpatient care; (2) inmates on orientation

3    status are provided basic mental health programming while clinical and custodial staff review

4    their cases to ensure staff and inmate safety alike; (3) inmates in DSH programs are provided

5    soap, clothing and bedding; (4) DSH managers are not pressuring clinicians to prematurely

6    discharge inmates back to CDCR prisons; and (5) the State has and continues to appropriately

7    manage patient movement associated with opening up new inpatient units and closing temporary

8    units.[3]

9    Thus, the Court should deny the substantial, wide-ranging, and intrusive relief Plaintiffs

10    seek in their motion.  Likewise, the Court should deny Plaintiffs' request to expand the Special

11    Master's duties to investigate, monitor, and report to the Court on DSH programs.

12    **A.    There Are No "Severe Clinical Staffing Shortages" Affecting the Quality of
13         Care Provided to DSH Patients.**

14    Defendants' opposing papers and the evidence at the hearing will show there is adequate

15    staff at Salinas Valley to meet the basic mental health needs of inmates programming there.  The

16    Salinas Valley program continues to provide appropriate and timely treatment to all patients

17    needing intermediate care, and operates its program safely and securely.  (*See* ECF No. 4592 at

18    14–16.)

19    DSH, like every organization, experiences staffing fluctuations when employees choose to

20    depart.  But DSH has dillegently recruited and hired psychiatrists to respond to staff departures

21    and in so doing, minimized the duration that Salinas Valley operated with a reduced number of

22    psychiatrists.  (*See* Declaration of Kathryn Radtkey-Gaither in Support of Defs.' Opp'n to Pls.'

23    Mot. ("Gaither Decl."), ECF No. 4602, ¶¶ 10–14.)  As a result, Salinas Valley offers its patients a

24    broad spectrum of services provided by psychiatrists, psychologists, social workers, and

25    recreational therapists despite employee turnover.  (*Id.* at 14–21.)  Most importantly, Salinas

26

27    _____

[3] As discussed at Sections B & F *supra,* Defendants contend that there are no issues for
resolution at the hearing concerning the hiring and use of registry and overtime at the DSH
programs or compliance with this Court's August 2008 order.

28

4

1    Valley has been able to maintain a staffing level that provides (1) psychiatric care on average of

2    one hour per patient per week, (2) interdisciplinary treatment team appointments, (3) one-on-one

3    counseling, (4) group therapy, and (5) rehabilitative programming—all while meeting all Title 22

4    licensing requirements.  (*Id.* ¶¶ 14–24.)

5        Further, DSH's uncontroverted data show that there are no issues of material fact regarding

6    safety or staffing.  First, the data shows that no issues remain with respect to Plaintiffs' safety

7    concerns associated with staffing because data show a downward trend in violence.  (Gaither

8    Decl. ¶ 31.)  And DSH intends to continue to provide the special master with *Coleman* related-

9    staffing information in its programs providing mental health services to CDCR inmates, but is

10   revising its data collection and reporting methods to capture a more accurate staffing picture.

11   (*See* Declaration of Rob Cook in Support of Defs.' Opp'n to Pls.' Mot. ("Cook Decl."), ECF No.

12   4597, ¶¶ 5–13.)  By contrast, Plaintiffs' evidence reflects only that Defendants have taken

13   concrete steps to self-evaluate, criticize, and improve the quality of services through employee

14   surveys or otherwise.  And contrary to Plaintiffs' portrayal of Defendants' self-inprovement and

15   quality assurance efforts, this evidence shows that state officials are not deliberately indifferent to

16   inmate-patients' needs.

17       Likewise, as discussed in Defendants' opposition brief, the criticism of staffing at the

18   Vacaville program is unfounded.  It is not experiencing a "critical shortage" of clinical staff and is

19   providing quality care and meeting licensing requirements in all classifications of clinical staff.

20   (*See* Declaration of Ellen Bachman in Support of Defs.' Opp'n to Pls.' Mot. ("Bachman Decl."),

21   ECF No. 4598, ¶¶ 18–20.)  Plaintiffs raise no valid dispute concerning this program.

22

23   **B.    No Dispute Exists Concerning the Hiring and Use of Registry and
         Overtime at DSH Programs Within CDCR Facilities.**

24       Plaintiffs seek an order directed to exempt DSH employees in CDCR facilities from any

25   State-instituted hiring freezes.  (Pls.' Proposed Order at ¶ 3.)  They also seek an order directing

26   Defendants to suspend any limitations on registry staff and on use of overtime for staff in DSH-

27   run units in CDCR facilities.  (*Id.*)  But there is no dispute concerning these issues.  First, there is

28   no state-instituted hiring freeze.  (Gaither Decl. ¶¶ 10–11.)  In their reply brief, Plaintiffs

5

1 reference a job bulletin posted on the State's website as of May 10, 2013.  (ECF Nos. 4617 at

2 8:22–26 & 4618 ¶ 4, Ex. 3.)  Although that May bulletin does state that the position is pending

3 hiring freeze exemption approval, that language was an error and has since been deleted.  *See*

4 http://jobs.spb.ca.gov/wvpos/more_info.cfm?recno=481929.

5       Second, there are no state-imposed limitations on registry staff and on use of overtime for

6 staff in DSH-run units in CDCR facilities.  (Gaither Decl. ¶ 10.)  Use of overtime, however, may

7 be limited by an employee's collective bargaining agreement.  (*Id.*)  In addition, DSH's ability to

8 use "retired" state employees offered through a registry contract, is limited by the recently

9 enacted Assembly Bill 340, effective January 1, 2013.  (Cal. Gov't Code §7522.56 (limiting the

10 number of hours worked to 960 in any calendar or fiscal year).)  Since DSH has no control over

11 either of these limitations, no orders regarding this issue are necessary or appropriate.

12 **C.    Inmates-Patients are Provided Appropriate Treatment While Their**
13 **Orientation Status Is Reviewed.**

14       In their motion, Plaintiffs claim that inmates are not provided basic mental health

15 treatment pending agreement between custodial and clinical staff that an inmate may safely

16 program with the other inmates in the program.  Yet Plaintiffs offer no admissible evidence

17 supporting these claims.  In fact, the evidence will show that during this orientation process

18 review, an individualized clinical assessment process is undertaken concurrently with custodial

19 review and inmates can attend individual or small group activities and therapies, have one-to-one

20 cell meetings with the psychiatrist or other clinical and medical staff, and are eligible for the "by-

21 choice" incentive plan.  (*See* ECF No. 4592 at 18–22; Declaration of Randolph Grounds in

22 Support of Defs.' Opp'n to Pls.' Mot. ("Grounds Decl."), ECF No. 4604-1, ¶¶ 5–7; Gaither Decl.

23 ¶ 32; Cal. Code Regs. tit. 22, § 77073.)  Moreover, the evidence establishes that the policy of

24 reviewing a high-custody inmate's ability to safely program with other inmates in the program is

25 well-grounded in public safety and the operation of the criminal justice system.  (*See* Grounds

26 Decl. ¶¶ 3–11.)

27 / / /

28 / / /

**D.    Defendants are Providing Inmate-Patients with Basic Necessities.**

The Chief Deputy Director of the DSH, the Salinas Valley State Prison Warden, the Executive Director of the Vacaville Psychiatric Program, and the California Medical Facility Warden, all testified that Defendants are not denying inmates in the DSH programs at Salinas Valley or Vacaville items such as soap, clothing, and bedding.  (ECF No. 4592 at 22.) Defendants also anticipate that Ms. Ahlin will testify that inmates at the Salinas Valley program are provided items such as soap, clothing, and bedding.  Thus, any order that Defendants submit any further declarations would be inappropriate and unnecessary.

**E.    Defendants are Not Mismanaging Discharges and Waitlists for Inpatient Care.**

Plaintiffs allege that DSH management is pressuring its clinicians to discharge inmates based on quotas and administrative pressures.  (ECF No. 4592 at 22–25.)  But, as discussed in Defendants' opposition, this is simply not true.  (Bachman Decl. ¶¶ 15–17; Gaither Decl. ¶¶ 22-24.)  Defendants follow a court-ordered utilization management plan to manage patient movement by and within DSH programs.  (ECF No. 3962–1 at 37–38.)  Moreover, the stays in DSH-operated programs often exceed the 180 to 240 day guideline for intermediate care and 30 to 45 days for acute care.  (*Id.*; Gaither Decl. ¶¶ 23 & 24; Bachman Decl. ¶¶ 16 & 17.)

As for the remaining issues raised in Plaintiffs' motion, there is no material dispute necessitating a hearing.  Defendants' policies and procedures do not permit "premature discharges."  To the contrary, DSH is required by law to house inmates in DSH programs until they reach maximum benefit.  Cal. Penal Code § 2684(a).  Dr. Stewart's declaration lists seven inmates whom he describes as "early returns" from DSH.  (Stewart Decl., ECF No. 4381, at ¶ 433.)  But this hearing concerns alleged Eighth Amendment violations.  Thus, at best, Dr. Stewart's testimony is a difference in clinical opinion, not evidence of a constitutional violation. *See Sanchez v. Vild,* 891 F.2d 240, 242 (9th Cir. 1989).  The Court should therefore resist Plaintiffs' efforts to convert this evidentiary hearing into a trial on the alleged negligence or medical malpractice of DSH clinicians, and disregard Dr. Stewart's testimony.  Last, Defendants have been more than forthcoming in providing information to this Court and Plaintiffs' counsel

7

1  on inmates pending admission into DSH programs, and are not "disguising the inpatient waitlist."

2  (ECF No. 4592 at 23 n.9; Gaither Decl. ¶ 37; Bachman Decl. ¶¶ 3-8.)

3

4  **F.    No Further Orders Are Necessary to Compel Defendants' Compliance With This Court's August 2008 Order.**

5        Plaintiffs seek an order directing Defendants to "immediately comply with the terms of

6  this Court's August 8, 2008 Order mandating access to DSH inpatient care for all *Coleman* class

7  members, regardless of parole status or date of their parole." They also request that inmates

8  parole from DSH, not CDCR.  (Pls.' Mot. at 22-24.)  This request for affirmative relief is not an

9  issue appropriate for an evidentiary hearing.

10       The *Coleman* Program Guide requirements require that inmates parole directly from

11 CDCR, not DSH.  (ECF No. 4592 at 24, *See* Declaration of William Downer in Support of Defs.'

12 Opp'n to Pls.' Mot. ("Downer Decl."), ECF No. 4595 at ¶ 3, Ex. 2, Program Guide 12-6-9.)  In

13 addition, the Court's 2008 order states that "[a]ccess to inpatient mental health treatment shall be

14 determined by an individual's needs, not release date."  (ECF No. 2930 at 4.)  Plaintiffs alleged

15 evidence consists of copies of documents related to six inmates. (Galvan Decl., ECF No. 4546, ¶¶

16 10–14, Exs. H, I, J & K.)  For two—Prisoners 2 & 3—the documents provide little, to any,

17 insight concerning the individual clinical decisions made for these inmates.  (*Id.* Ex. H.)  For

18 Prisoner 4, he was being held by CDCR pending an immigration hearing.  (*Id.*)  As for Prisoners

19 5 and 6, the notes indicate that the inmates' treating clinicians felt transfer to a DSH program was

20 contra-indicated.  (*Id.*, Ex. I)  For the last inmate, case conferences notes from October 2011

21 contain no evidence that he was denied inpatient care due to a pending parole date.  (*Id.* ¶¶ 12–

22 14, Exs. J & K.)  Plaintiffs present no credible evidence—such as, for example, patient records—

23 nor have they identified any witness who will testify that Defendants are violating the Court's

24 August 2008 order.  Absent any credible evidence that Defendants are violating this Court's

25 August 2008 order, there are no issues for this Court to consider at the hearing.

26 / / /

27 / / /

28 / / /

8

**G.    The State Appropriately and Consciously Manages Patient Movement When New Units Are Opened.**

Plaintiffs request various orders related to the activation and closure of Department of State Hospital operated programs.  (Pls.' Proposed Order ¶ 8.)  The issues in dispute are, at best, limited.  Some requests are duplicative of reports already provided.  As described in Defendants' opposition brief, inmates are receiving adequate mental health care, and DSH continues to replace staff through various means.  (Gaither Decl. ¶¶ 12–24; Bachman Decl. ¶¶ 18–21.)  In addition, the evidence at the hearing will show that this effort is ongoing and DSH promptly fills open positions..

The State has and continues to appropriately manage patient movement associated with opening up new units.  (*See* ECF No. 4592 at 25–26.)  Nonetheless,  DSH executive directors will provide testimony at the hearing concerning patient movement associated with opening up the new Stockton facility.  Thus, the evidence will establish that no further reporting requirements, or other orders beyond the Court's June 2012 order, are necessary or appropriate.  (*See* ECF No. 4199.)

**H.    Objections to Evidence.**

 **1.    The Court Should Overrule Plaintiffs' Objections Regarding Defense Witness's Expertise and Personal Knowledge of Their Testimony, and Sustain Defendants Objections to the Brim and Badeaux Testimony.**

Ordinarily, a lay witness may only testify to matters of which he or she has personal knowledge. Fed. R. Evid. 602.  And a non-expert's opinions must be limited to inferences which are rationally based on the witness's perception.  Fed. R. Evid. 701.  But in a business setting, a witness's testimony may be based partly on firsthand information and partly on the accounts of others, particularly when a witness's employment or industry experience is a sufficient predicate for the witness's testimony about business practices or operations.  *See, e.g, Mississippi Chemical Corp. v. Dresser-Rand Co.*, 287 F.3d 359, 373-74 (5th Cir. 2002) (lay employees of a business are often held to have enough "personalized knowledge" of business's operation to testify about profit amounts).  Accordingly, courts take a more relaxed approach to the personal knowledge

9

1   requirement in the business setting. *See Seltzer v. I.C. Optics Ltd.*, 339 F. Supp. 2d 601, 606

2   (D.N.J. 2004) (a former management employee could make assertions about the nature of

3   employer's advertising procedures because he had sufficient knowledge of company procedures);

4   *Mendoza v. Sysco Food Services of Arizona, Inc.*, 337 F. Supp. 2d 1172, 1180 (D. Ariz. 2004)

5   (head of employers' human resources department competent to testify that no one in human

6   resources knew about employee's complaints, but could not testify that no one in entire business

7   knew of complaints).

8           Plaintiffs argue that Defendants' witnesses attempt to testify about matters on which they

9   have no expertise or personal knowledge. (*See* Pls.' Objections, ECF No. 4619, [objecting to

10  Cook Decl. ¶¶ 1 & 2; Bachman Decl. ¶¶ 1, 5, 7, 10-13, 17, 18; Duffy Decl. ¶¶ 6-11; Chappell

11  Decl. ¶ 5; Radtkey-Gaither Decl. ¶¶ 12, 13, 16-18, 19-21, 22, 28; Grounds Decl. ¶¶ 5-9, 13, 14-

12  19.]) But, just as Plaintiffs concede that Drs. Brim and Badeaux are not experts in the fields of

13  hospital administration or staffing, Defendants do not contend that their witnesses are qualified to

14  testify beyond their capacities as administrators and managers within CDCR and DSH.   The

15  relevant distinctions here, however, are that Defendants' witnesses have sufficient foundations for

16  their personal knowledge and opinions.

17          Defendants' witnesses are managers of DSH mental health programs and CDCR

18  institutions. (*See generally* Cook Decl.; Bachman Decl.; Gaither Decl.; Grounds Decl.)  By virtue

19  of their employment, these witnesses have knowledge about: (1) the practices and procedures

20  their organizations use on a daily basis; (2) the performance of the systems and employees they

21  oversee; and (3) key facts and statistics regarding daily operations of the organizations they

22  oversee. (*Id.*)  They know and understand these things because it is their job to know and

23  understand them.  Therefore, their testimony, even if partially reliant on information from

24  subordinates, who have a duty to report accurate information, or internal business documents, is

25  reliable because these witnesses depend on the accuracy of the information they receive to

26  competently manage the programs they oversee.  By contrast, Drs. Badeaux and Brim—former

27  line employees equipped with the limited perspective that ordinary line employees have—are not

28  capable of observing or knowing about the overall practices, performance, statistics, or operations

10

Defs.' Brief Re: Evidentiary Hearing (2:90-cv-00520 LKK JFM PC)

1   of the organizations from a managerial perspective.  Rather, they are capable of testifying only

2   about events they observed through their senses and opinions that are logically connected to those

3   observations.

4       Defendants' witnesses established their testimonial capacity as managers with knowledge

5   of the practices, procedures, performance, and other operational data pertaining to their fields of

6   oversight.  (*See generally* Cook Decl.; Bachman Decl.; Radtkey-Gaither Decl.; Grounds Decl.)

7   In particular, Defendants' witnesses give testimony showing that they are competent to testify

8   about their managerial knowledge of the programs they oversee and relevant opinions about their

9   programs' performances:

10      1.  Rob Cook, as the Chief of Business Management for DSH, and past manager of the

11  Coordination and Logistics Unit, is qualified to give testimony about the status of pay differential

12  issues within DSH, DSH data collection and reporting practices, and other staffing and

13  accounting practices at DSH.  (Cook Decl. ¶¶ 1-7.)  Plaintiffs object that Cook lacks personal

14  knowledge, but fail to explain how his positions as Chief of Business Management and past

15  manager of the Coordination and Logistics Unit at DSH are insufficient experience for him to

16  observe and understand the practices and operations of the DSH units he oversaw.  These

17  conclusory objections have no merit and should be overruled.

18      2.  Ellen Bachman, as the Director for the Vacaville program, and a career mental health

19  hospital administrator, is qualified to give testimony about the psychiatric program she

20  administers and oversees.  (Bachman Decl. ¶¶ 1-2.)  As a health care administrator with 25 years

21  of experience, Bachman is well-qualified to testify about Vacaville's patient triage process and its

22  connection to ensuring patient care because understanding, implementing, and overseeing these

23  processes is precisely what health care administrators do.  Plaintiffs' objections to Bachman's

24  testimony about the practices, procedures, operations of the Vacaville program in the paragraphs

25  that follow are equally frivolous given her experience as an administrator and knowledge gained

26  through her current capacity as Director over the entire Vacaville program.  The Court should

27  overrule Plaintiffs' objections to her declaration under Rules 602 and 701.

28  / / /

11

1    3. Kathryn Radtkey-Gaither (Gaither), Chief Deputy Director for DSH, establishes her

2    knowledge of the policies, procedures, and operations of DSH programs, including the Salinas

3    Valley and Vacaville programs, throughout her declaration. (Radtkey-Gaither Decl. ¶¶ 1-3, 38.)

4    Accordingly, Gaither's testimony and opinions about the policies, procedures, and operations of

5    the programs has sufficient foundation. Plaintiffs object that she lacks the capacity to opine about

6    the quality of services provided through DSH programs in CDCR facilities. Yet, Plaintiffs offer

7    no legal basis for excluding manager's qualitative opinion about programs she oversees. In any

8    event, exclusion Gaither's declaration testimony is not warranted because a judge familiar with

9    the case will ultimately decide how much weight to give her opinions after Plaintiffs' have had an

10   opportunity to cross-examine her. Therefore there is little risk that Ms. Gaither's opinions will be

11   accepted without due scrutiny. For these reasons, the Court should overrule Plaintiffs' objections.

12   4. Randolf Grounds, as Warden of Salinas Valley State Prison, the facility at which the

13   Salinas Valley Psychiatric Program operates, is qualified to discuss the custodial policies,

14   procedures, and operations of the facility he supervises. (Grounds Decl. ¶¶ 1-6.) Contrary to

15   Plaintiffs' objections, Grounds' twenty years of experience as a correctional officer in various

16   CDCR institutions, and personal experience overseeing the custody of inmates admitted to the

17   Salinas Valley program, provides a sufficient foundation for him to opine about the challenges of

18   supervising the custodial needs of inmates admitted for hospitalization since providing an opinion

19   based on one's observations of behavior and emotional presentation of inmates requires no

20   medical training. (*Id.* at ¶ 9.) Given Warden Ground's personal knowledge of Salinas Valley

21   programs and operations, Plaintiffs' objections are unfounded.

22   The Court should admit these declarations over Plaintiffs' objections because all of the

23   declarants established adequate personal knowledge and foundation for their testimony and

24   opinions. By contrast, the Court should sustain Defendants' objections to the capacity of Drs.

25   Brim and Badeaux to testify about matters of which they have no personal knowledge. (*See*

26   Defs.' Objections, ECF No. 4591.)

27   / / /

28   / / /

12

2.    **Plaintiffs' Original Writing Rule Objections.**

Rule 1002 requires a party to introduce the original writing or a copy of the original writing to prove the content of that writing. Fed. R. Evid. 1002. Testimony offered to prove the content of the writing is not admissible in lieu of the writing. *Id.* The policy underpinning the original writing rule is to preserve the integrity of legally significant language in documents, which may be distorted or fraudulently depicted when described in oral testimony. *See* Mueller & Kirkpatrick, Evidence § 10.1, at 1143 (4th ed. 2009); *see also Seiler v. Lucasfilm, Ltd.,* 808 F.2d 1316, 1319 (9th Cir. 1986) ("the importance of the precise terms of writings in the world of legal relations, the fallibility of the human memory as reliable evidence of the terms, and the hazards of inaccurate or incomplete duplication are the concerns addressed by the best evidence rule."). Despite the importance of using the original document to prove the contents of a writing of legal significance, such as a contract, will, or important communication; out-of-court events and facts may be proved by testimony from a witness with independent knowledge of the event, even when writings of the events and facts exist. *See, e.g., R & R Associates, Inc. v. Visual Scene Inc.,* 726 F.2d 36, 38 (1st Cir. 1984) (testimony as to cost of items admissible; "No evidentiary rule . . . prohibits a witness from testifying to a fact simply because the fact can be supported by written documentation.")

Here, Plaintiffs contend that the Court should exclude testimony from Defendants' witnesses because each testified to some extent about facts that Plaintiffs contend are documented in writing. *See* Pls.' Objections, ECF No. 4619 [objecting to Bachman Decl. ¶¶ 7, 10–13, 17, 23–24; Gaither Decl. ¶¶ 19–21, 31, 37, 39–40; and Grounds Decl. ¶¶ 9, 14–19.]) But Plaintiffs' objections lack merit because none of the testimony objected to attempts to describe the content of a written document, such that the original is required under Rule 1002. (*See Id.*) Rather, each of the witnesses referenced provide testimony based on their personal knowledge of events and facts obtained through their observations, experience, and positions as DSH and CDCR managerial staff. None of these witnesses testify about the content or terms of a document or recorded communication that has independent legal significance and is not accessible to Plaintiffs.

13

1    The fact that some of Defendants' witnesses' testimony describes facts or events that may

2    also exist in writing does not prove that they lack independent knowledge of the facts or events

3    the declarants describe.  In any respect, to the extent that testimony purportedly misrepresents a

4    written document, Plaintiffs can demonstrate any deviation through cross-examination under oath

5    or by producing the original document.  Defendants have not submitted testimony to prove the

6    contents of a writing.  Accordingly, the Court should overrule Plaintiffs' objections under Rule

7    1002.

8                    **3.    Plaintiffs' Jurat Objection Should be Disregarded.**

9    Plaintiffs contend that the Bachman declaration is inadmissible because the electronic

10   signatures to her declaration omits the date it was signed.  But the Court should disregard

11   Plaintiffs' quibble because the original signed declaration can be submitted to the Court or

12   Plaintiffs if necessary.  In addition, Ms. Bachman, who will testify at the hearing, can authenticate

13   her declaration in court, so any concern that the sworn statement was fraudulently procured can

14   be resolved.  For all these reasons, the Court should overrule Plaintiffs' objection.

15                   **4.    Defendants' Additional Objections.**

16   Defendants anticipate filing three motions in limine to exclude testimony before the

17   hearing:

18   Plaintiffs have not identified Dr. John Brim as a witness who will testify at the hearing.

19   Therefore, the Court should prohibit Plaintiffs from admitting Dr. Brim's deposition testimony in

20   lieu of in-court testimony because it is inadmissible hearsay under Federal Rule of Evidence 802.

21   Plaintiffs have disclosed Jeannie Woodford, a former Warden at San Quentin State Prison,

22   to testify as to the orientation process at Salinas Valley State Prison.  But Ms. Woodford, who has

23   never worked at Salinas Valley State Prison or with the DSH inpatient program at that prison, did

24   not provide an expert report under Federal Rule of Civil Procedure 26.  Nor has she previously

25   established that she has expertise about proper orientation practices for inmates being admitted to

26   an inpatient mental heath care facility.  Therefore, the Court should exclude any expert testimony

27   that Ms. Woodford intends to provide concerning the orientation process.

28   / / /

With their reply brief, Plaintiffs submitted a reply declaration from Dr. Stewart. (ECF No. 4617.) In his declaration, Dr. Stewart gives opinions regarding a March 2013 accidental death at the Salinas Valley Program. But the Court should exclude this declaration testimony, and prohibit Dr. Stewart from offering similar testimony at the hearing because (1) his opinion testimony is unfounded, given his limited knowledge of the circumstances of the March 2013 death, (2) evidence about the event is not relevant to the material questions raised in Plaintiffs' motion, and (3) the risk that hearing this testimony will needlessly waste the Court's and parties' time substantially outweighs its limited probative. Moreover, the Court should resist Plaintiffs' effort to convert the evidentiary hearing on alleged Eighth Amendment violations into a trial that speculates on the quality of care that was provided to a particular patient.

## IV.   DEFENDANTS HAVE ESTABLISHED THAT THEIR POLICIES HAVE APPROPRIATE PENOLOGICAL JUSTIFICATION.

Defendants incorporate in this brief the legal standards for obtaining injunctive relief under the Prison Litigation Reform Act and the burden of proof discussion presented in their opposition. (ECF No. 4592 at 4-5.) Defendants further incorporate their discussions on the standard for Eighth Amendment claims. (*Id.* at 5.) Below, Defendants explain why applying the *Turner v. Safley* factors for "legitimate penological purposes" is not inconsistent with the Eighth Amendment deliberate indifference to serious mental health needs standard.

"[O]nly the unnecessary and wanton infliction of pain ... constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (citation and quotations omitted). The Eighth Amendment analysis requires: (1) objective proof of the "infliction of pain", and (2) a subjective analysis of whether the infliction of pain was "unnecessary and wanton." *Farmer v. Brennan,* 511 U.S. 825, 834 (1994). To establish the subjective component for claims based on prison conditions or denial of medical care, Plaintiffs must establish that state officials are acting with a "sufficiently culpable state of mind" to be held responsible for constitutional violations, namely "deliberate indifference." *Id.* at 834. The deliberate indifference standard requires state officials to be *criminally* reckless, requiring actual knowledge or willful blindness of impeding harm to inmates that could have easily been

15

1   prevented. *Id* at 837–39*.; see also Redman v. County of San Diego,* 942 F.2d 1435, 1449 (9th Cir.

2   1991) ("deliberate indifference is conduct [that is] so reckless as to be tantamount to a desire to

3   inflict harm").

4          In determining whether prison officials are subjectively deliberately indifferent, the Court

5   should examine whether the challenged conduct or regulation is totally without penological

6   justification. *See Hope v. Pelzer*, 536 U.S. 730, 737 (2002) ('[U]nnecessary and wanton'

7   inflictions of pain are those that are 'totally without penological justification'"). The Ninth

8   Circuit has noted that the factors described in *Turner v. Safley* may be instructive in evaluating

9   whether regulations challenged under the Eighth Amendment have a legitimate penological

10  purpose. *Michenfelder v. Sumner*, 860 F.2d 328, 331 n.1 (9th Cir. 1988) ("[T]he second Turner

11  factor-availability of other avenues for exercising the right infringed upon-is much more

12  meaningful in the first amendment context than the fourth or **eighth** . . . [but] we believe that

13  *Turner v. Safley's* suggested factors can be instructive in the context of other prisoners' rights

14  cases (emphasis added)). And in *Anderson v. County of Kern*, 45 F.3d 1310, 1316 (9th Cir. 1995)

15  the Court cited to *Turner* in addressing plaintiffs' Eighth Amendment claim, finding that the use

16  of administrative segregation by prison official did not constitute deliberate indifference because

17  "prison officials have a legitimate penological interest in administrative segregation." Further,

18  the holdings in *Johnson v. California*, 543 U.S. 499, 502 (2005) and *Jordan v. Gardner*, 986 F.2d

19  1521 (9th Cir. 1993) are not inconsistent with consideration of the *Turner* factors within the

20  deliberate indifference analysis. In *Johnson*, the only issue decided by the Court was the standard

21  of review for an equal protection challenge to prison regulations. *Johnson v. California*, 543 U.S.

22  499, 502 (2005). And in *Jordan,* the court emphasized the district court's finding that the "cross-

23  gender clothed body searches constitute the infliction of pain *without penological justification*."

24  *Jordan v. Gardner*, 986 F.2d 1521, 1527 (9th Cir. 1993)(emphasis in original). In finding that the

25  policy violated the Eighth Amendment, the court relied heavily on the defendants' admission that

26  the intrusive cross-gender search policy was instituted because of defendants' fear female guards

27  would file an employment grievance over missing lunch breaks. *Id.* at 1530. Only after this

28  finding, did the court decline to apply *Turner's* "reasonably related" analysis. *Id.*

16

1    Therefore, to determine whether Plaintiffs have met their burden to show that Salinas

2    Valley's orientation policy is "unnecessary and wanton," the Court can and should make use of

3    the *Turner* factors to evaluate whether the policy is supported by legitimate penological purposes.

4    Doing so here shows that Defendants' policies are soundly grounded in inmate and institutional

5    safety and security, and are not wantonly and recklessly imposed to inflict unconstitutional

6    punishment.  Lacking any evidence showing otherwise, Plaintiffs' motion must be denied.

7

8    ## V.    CONCLUSION

9    Plaintiffs have the burden to prove that current and ongoing constitutional violations require

10   more injunctive relief.  As discussed above and in the declarations of Defendants' witnesses,

11   Defendants are not acting with criminal recklessness to Plaintiffs' mental health care needs.  DSH

12   has and continues to appropriately respond to staffing challenges, and it has and continues to

13   provide appropriate and timely treatment to all patients needing intermediate and acute care.  In

14   addition, because DSH is already committed to providing accurate staffing information consistent

15   with the Court's prior order, any further order would exceed anything necessary to correct a

16   constitutional violation and unduly interfere with DSH's ability to manage its own internal affairs,

17   including the opening up of the new 514 intermediate and acute beds at the California Health

18   Care Facility.

19   Inmates in the intermediate program at Salinas Valley are provided appropriate treatment

20   custodial and clinical staff determine whether the inmate may safely program with the other

21   inmates.  In addition, Defendants' orientation policy is related to legitimate penological interests.

22   Ordering Defendants to modify their safety clearance policy would threaten the safety of not only

23   DSH clinicians and staff but also the safety and welfare of the inmates themselves, who would

24   then be vulnerable to the violent acts of fellow patients in the unit.

25   Plaintiffs' allegations that Defendants mismanage discharges and waitlists for inpatient care

26   are unsupported and further orders will unnecessarily intrude into Defendants' operations.  There

27   is no need for the Special Master to investigate and monitor Defendants' DSH discharge

28   practices, both internally to other DSH units, and externally to CDCR units.

17

1    Plaintiffs' requested remedies relating to the opening up of new units require the existence

2    of a "constitutional violation in need of correction."  18 U.S.C. § 3626(a)(1)(A). Dr. Brim and Dr.

3    Badeaux's testimony on staffing shortages does not establish that any patients were harmed by

4    the psychiatric turnover, and the evidence presented by Defendants shows that the inmates are

5    receiving adequate care.  Any order extending the special master's monitoring duties to these

6    facilities would not be the least intrusive means necessary to correct an alleged violation of a

7    federal right.  18 U.S.C. § 3626(a)(1)(A).

8    In sum, Plaintiffs cannot meet their burden under the PLRA—there is no deliberate

9    indifference substantiating an Eighth Amendment violation, and the Court should deny Plaintiffs'

10    requests for enforcement of court orders and affirmative relief.

11    Dated:  June 18, 2013                                   Respectfully Submitted,

12                                                            KAMALA D. HARRIS
                                                             Attorney General of California
13                                                           JAY C. RUSSELL
                                                             Supervising Deputy Attorney General
14

15                                                           /s/  Debbie J. Vorous

16

17                                                           DEBBIE J. VOROUS
                                                             Deputy Attorney General
18                                                           *Attorneys for Defendants*

19    CF1997CS0003
      31713711
20

21

22

23

24

25

26

27

28

18