1  KAMALA D. HARRIS, State Bar No. 146672
   Attorney General of California
2  JONATHAN L. WOLFF
   Senior Assistant Attorney General
3  JAY C. RUSSELL, State Bar No. 122626
   Supervising Deputy Attorney General
4  DEBBIE J. VOROUS, State Bar No. 166884
   PATRICK R. MCKINNEY, State Bar No. 215228
5  WILLIAM DOWNER, State Bar No. 257644
   Deputy Attorneys General
6   1300 I Street, Suite 125
    P.O. Box 944255
7   Sacramento, CA 94244-2550
    Telephone: (916) 324-5345
8   Fax: (916) 324-5205
    E-mail: Debbie.Vorous@doj.ca.gov
9
   *Attorneys for Defendants*
10

11              IN THE UNITED STATES DISTRICT COURT

12            FOR THE EASTERN DISTRICT OF CALIFORNIA

13                      SACRAMENTO DIVISION

14

15 
   | | |
   |---|---|
   | **RALPH COLEMAN, et al.,** | 2:90-cv-00520 LKK JFM PC |
   | Plaintiffs, | **DEFENDANTS' MOTION IN LIMINE TO EXCLUDE EVIDENCE RE: INMATE WATKINS** |
   | v. | Date: June 19, 2013 |
   | **EDMUND G. BROWN, JR. et al.,** | Time: 10:15 a.m. |
   | | Courtroom: 4 |
   | Defendants. | Judge: The Honorable Lawrence K. Karlton |

22

23

24                   **NOTICE OF MOTION AND MOTION**

25    TO PLAINTIFF RALPH COLEMAN AND HIS ATTORNEY OF RECORD:

26    PLEASE TAKE NOTICE that Defendants Edmund G. Brown Jr., et al., move this Court

27 for an in limine order to exclude testimony related to the death of Desmond Watkins. This

28 motion is based on this notice, the points and authorities, the Court's file in this case, the

                                   1

1  declarations and exhibits filed in support of Defendants' motion, and any further argument
2  presented to the Court regarding this motion.

3  **MEMORANDUM OF POINTS AND AUTHORITIES**

4  **I.    INTRODUCTION**

5  Testimony will show that Desmond Watkins was committed to the Department of State
6  Hospitals for restoration of competency, and resided in the Salinas Valley Psychiatric Program
7  for safety reasons under Welfare and Institutions Code section 7301.  In March 2013, Watkins
8  died from acute water intoxication.  The Coroner concluded that psychogenic polydipsia—an
9  uncontrollable urge to drink excessive amounts of water—caused Watkins to consume water at
10 toxic levels.  (*See* Stone-Manista Decl. Ex. 1.)  In their motion for affirmative relief related to
11 inpatient care, Plaintiffs seek to introduce expert testimony that staff shortages at the Salinas
12 Valley Psychiatric Program caused or contributed to Mr. Watkins' death.  But the Court should
13 exclude and strike any testimony about Watkins' death because: (1) Plaintiffs' proposed expert
14 witness's opinion that staff shortages at the Salinas Valley Psychiatric Program caused Watkins'
15 death lacks foundation and is speculative; (2) Watkins' death is irrelevant to the questions
16 considered in Plaintiffs' motion; and (3) the risk of unfair prejudice to Defendants from admitting
17 testimony about Watkins' death outweighs its nonexistent probative value.  In addition, the Court
18 should exclude Dr. Stewart's classification of Watkins as a *Coleman* class-member because he
19 lacks the legal training or background necessary to make such a designation.

20 **II.   ARGUMENT**

21         **A.    Dr. Stewart's Opinions Regarding the Watkins Death Are Inadmissible
22                Speculation.**

23 Expert witness testimony is admissible only if it will assist the trier of fact to determine a
24 fact at issue.  Fed. R. Evid. 702.  Expert opinions must make rational connections between
25 conclusions and evidence.  The Court is the gatekeeper to determine whether the data is
26 appropriately connected to the opinions.  *General Elec. Co. et al., v. Joiner*, 522 U.S. 136, 146
27 (1997); *see also Domingo ex rel. Domingo v. T.K.*, 289 F.3d 600, 607 (9th Cir. 2002).  Further,
28

2

expert opinions are admissible only if the facts or data relief upon are of a type reasonably relied upon by experts in the particular field.  Fed. R. Evid. 703.

Here, the divide between Dr. Stewart's opinions regarding Watkins' death and DSH staffing, and the meager evidence on which he relies, is so great that there is no rational connection between them.  In a sworn declaration, Dr. Stewart implies that Watkins' death was caused by inadequate mental health care that resulted from staffing shortages at the Salinas Valley program.  (ECF No. 4617–1, Stewart Reply Decl. ¶¶ 25-26.)  Yet Dr. Stewart references no evidence that remotely suggests that Watkins failed to receive appropriate care at the Salinas Valley program, or that staffing levels at the program affected the quality of Watkins' care. Stewart concedes that his only source of information regarding Watkins' death was the Coroner's report.  (*Id.* at ¶ 25.)  But the Coroner's report gives no opinions that Watkins had a current diagnosis of psychogenic polydipsia before he died, that Salinas Valley physicians or staff knew about such a diagnosis but failed to provide appropriate care, or that staffing shortages diminished the care Watkins received while in the program.  (*See* Stone-Manista Decl. Ex. 1.)

Instead, Dr. Stewart concludes that Watkins' death raises "concerns" about the quality of care and the sufficiency of staffing at the Salinas Valley program based on his (1) unsupported claim that polydipsia is associated with untreated mania; and (2) earlier speculation that Mr. Watkins' death was caused by inadequate DSH staffing levels—another matter about which he has no demonstrable expertise.  (ECF No. 4617–1, Stewart Reply Decl. ¶¶ 25-26.)  Dr. Stewart fails, however, to offer any testimony to support an assertion that professionals in his field of expertise—here, forensic psychiatry—reasonably rely on similar speculation to give forensic psychiatric opinions about a cause or mode of death.  Fed. R. Evid. 703.

In short, Dr. Stewart's opinions are nothing more than naked speculation based on a series of unsubstantiated assumptions.  For this reason alone, his testimony regarding his beliefs about the "concerns" arising from Watkins' death are inadmissible and should be excluded.

///

///

///

3

**B.      Dr. Stewart's "concerns" about the Circumstances of Watkins' Death Are Irrelevant to the Material Questions at Issue in Plaintiffs' Motion.**

Only relevant evidence—evidence that tends to makes a fact of consequence more or less likely to be true—is admissible. Fed. R. Evid. 401 & 402. Moreover, even relevant evidence must be excluded if the likelihood that the evidence is unfairly prejudicial or will waste time substantially outweighs its probative value. Fed. R. Evid. 403.

Here, the circumstances of Watkins' death are not relevant to Plaintiffs' motion regarding staffing levels and the quality of inpatient care at DSH facilities. Plaintiffs' motion questions whether (1) DSH is so understaffed that it is incapable of providing necessary care for *Coleman* class-members; and (2) DSH administrators are aware of staffing deficiencies but fail to take reasonable action to ensure adequate care. Thus, for Watkins' death to be relevant, the circumstances must show a pattern of inadequate care resulting from a lack of sufficient staff. But the Coroner's report has no findings showing that (1) Watkins died because he was denied care that he needed; or that (2) a lack of proper staff at the Salinas Valley program prevented staff from delivering adequate care, or that additional staff would have prevented his death. Rather, the report establishes only that Watkins (1) died of accidental water intoxication; (2) had psychogenic polydipsia; and (3) was treated once before for water intoxication at Salinas Valley Memorial Hospital.

Dr. Stewart's speculation on this dearth of relevant information fails to improve its marginal relevance. Stewart testifies that psychogenic polydipsia is "commonly associated" with untreated or undertreated mania. But he gives no evidence except his speculation that Watkins' water intoxication in this instance was caused by untreated mania. Nor does the Coroner's report offer any findings suggesting that Watkins' actions were connected to a manic episode that resulted from inadequate treatment. Moreover, even if Dr. Stewart was able to establish that Watkins' care at the Salinas Valley program fell below the community standard, which he cannot, a singular instance of negligence does not establish medical deliberate indifference, much less the systemic deliberate indifference related to staffing that Plaintiffs claim in their motion. Thus, Watkins' death has no probative value to the questions at issue in this motion.

4

Defs. Mt. In Limine to Exclude the Evidence of the Death of Inmate Watkins
(2:90-cv-00520 LKK JFM PC)

1   Given the paucity of evidence supporting Dr. Stewart's speculation, the negligible
2   probative value of his testimony on Watkins' death is substantially outweighed by the needless
3   waste of time and resources that will be expended while eliciting and challenging his opinion via
4   direct and cross-examination.  Fed. R. Evid. 403.  For this reason too, the Court should exclude
5   evidence and testimony regarding Watkins' death.

   **C.   Dr. Stewart Is Not Qualified to Give Legal Opinions.**

   Dr. Stewart has no legal training or expertise that qualifies him to give legal analysis, opinions, or conclusions.  (ECF No. 4617–1, Stewart Reply Decl. Ex. A.)  Dr. Stewart nevertheless concludes that Watkins is a *Coleman* class member.  (*Id.* at ¶ 24.)  But the *Coleman* class designation is a legal distinction that requires some legal expertise, analysis, and authority to deem the application appropriate.  But since Dr. Stewart is not qualified to offer an opinion that is dependant on such legal expertise or authority, the Court should strike Dr. Stewart's speculation concerning Mr. Watkin's status from his declaration and prohibit Dr. Stewart to refrain from referring to Watkins as a *Coleman* class-member, if it decides to allow Dr. Stewart to testify at all.

/ / /

/ / /

/ / /

5

**CONCLUSION**

The Court should exclude Dr. Stewart's testimony and opinions about Mr. Watkins' death because it is inadmissible speculation, irrelevant, and its negligible probative value is substantially outweighed by the potential for wasting resources and time. Further, the Court should exclude Dr. Stewart's classification of Watkins as a *Coleman* class-member because Dr. Stewart lacks the legal expertise to offer legal opinions.

Dated:  June 17, 2013

Respectfully submitted,

KAMALA D. HARRIS
Attorney General of California
JAY C. RUSSELL
Supervising Deputy Attorney General

*/S/ Debbie J. Vorus*
DEBBIE J. VOROUS
Deputy Attorney General
*Attorneys for Defendants*

CF1997CS0003
31707126.doc

6

Defs. Mt. In Limine to Exclude the Evidence of the Death of Inmate Watkins
(2:90-cv-00520 LKK JFM PC)