KAMALA D. HARRIS
Attorney General of the State of California
JONATHAN L. WOLFF
Senior Assistant Attorney General
JAY C. RUSSELL
Supervising Deputy Attorney General
DEBBIE VOROUS - 166884
PATRICK McKINNEY - 215228
Deputy Attorneys General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA  94102-7004
Telephone:  (415) 703-5500
Facsimile:  (415) 703-5843
Email:   Patrick.McKinney@doj.ca.gov

HANSON BRIDGETT LLP
JERROLD C. SCHAEFER - 39374
PAUL B. MELLO - 179755
WALTER R. SCHNEIDER - 173113
SAMANTHA D. WOLFF -  240280
MEGAN OLIVER THOMPSON - 256654
425 Market Street, 26th Floor
San Francisco, California 94105
Telephone:   (415) 777--3200
Facsimile:   (415) 541-9366
pmello@hansonbridgett.com

Attorneys for Defendants

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

## AND THE NORTHERN DISTRICT OF CALIFORNIA

## UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

## PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| RALPH COLEMAN, et. al.,<br><br>Plaintiffs,<br><br>v.<br><br>EDMUND G. BROWN, JR., et al.,<br><br>Defendants. | CASE NO. 2:90-cv-00520 LKK JFM P<br><br>**THREE-JUDGE COURT** |
| MARCIANO PLATA, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>EDMUND G. BROWN, JR., et al.,<br><br>Defendants. | CASE NO. C01-1351 TEH<br><br>**THREE-JUDGE COURT**<br><br>**DEFENDANTS' MOTION TO STAY THREE-JUDGE COURT'S JUNE 20, 2013 ORDER REQUIRING DEFENDANTS TO IMPLEMENT AMENDED PLAN PENDING APPEAL; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**To:  Three-Judge Court** |

5211240.1

## I.     INTRODUCTION

Defendants respectfully request a stay of this Three-Judge Court's June 20, 2013 Opinion and Order Requiring Defendants to Implement Amended Plan (June 20, 2013 Order or Order) pending appeal of this Order to the United States Supreme Court.  In its June 20, 2013 Order, this Three-Judge Court ordered Defendants to implement an amended plan consisting of the Plan submitted by Defendants in response to this Court's April 11, 2013 Order as well as the expansion of good time credits.  (Order at 2:15-18.) The Supreme Court has jurisdiction over Defendants' direct appeal of this Court's April 11 and June 20 Orders under 28 U.S.C. § 1253.

The June 20, 2013 Order should be stayed pending appeal because Defendants will be irreparably harmed absent a stay, the balance of hardships tips sharply in Defendants' favor, public interest weighs heavily in favor of granting the stay, and Defendants have a strong likelihood of success on the merits.  Defendants have satisfied the standards of Federal Rule of Procedure 62 and are therefore entitled to a stay of the Order pending resolution of their appeal.

The Order has "immediate[]" effect, Order at 2, and Defendants are fully cognizant that the Order requires them to take prompt and expeditious action, *see infra* at p.5 & n.1. Defendants do not seek a stay here for purposes of delay, *cf.* Order at 15, 35; rather, Defendants seek a stay because they are pursuing their right to appeal and because compliance is likely to have irrevocable effects that success on appeal would not remedy. Moreover, Defendants are seeking a stay here because doing so is generally a prerequisite to seeking and obtaining such relief from the Supreme Court (*see* Supreme Court Rule 23.3), which Defendants intend to seek should this Court deny Defendants' request.  Yet, Defendants wish to be clear:  absent the issuance of a stay by either this Three-Judge Court or the Supreme Court, Defendants will take steps necessary to ensure timely compliance with the June 20, 2013 Order.

/ / /

1

## II.   PROCEDURAL BACKGROUND

2          In response to this Three-Judge Court's October 11, 2012 Order, Defendants

3    submitted a plan on January 7, 2013, explaining how they would achieve the required

4    population reduction to 137.5% of design capacity by June 27, 2013 and, alternatively, by

5    December 27, 2013.  (Defs.' Resp. to Oct. 11, 2012 Order, *Plata* ECF Dock. No. 2511,

6    *Coleman* ECF Dock. No. 4284.)  Defendants explained in their January 7, 2013 Plan that

7    the further reductions that would be needed to reduce the population to 137.5% of design

8    capacity would have to be court-ordered, approved by voter initiative, or enacted by a

9    supermajority of the Legislature.  (*Id.* at 9:5-8.)  Specifically with respect to the expansion

10   of good time credits, Defendants stated that numerous state statutes restrict credit-

11   earning and that Defendants are not permitted to deviate from the applicable state laws.

12   (*Id.* at 17:3-10.)  Defendants also indicated that any changes to the State's credit-earning

13   laws were "policy decisions [] best [] weighed and assessed through California's

14   legislative or ballot-measure process."  (*Id.* at 17:14-15.)

15          Contemporaneous with Defendants' January 7, 2013 Plan, Defendants filed a

16   motion to vacate or modify the Three-Judge Court's population cap.  (*Plata* ECF Dock.

17   No. 2506; *Coleman* ECF Dock. No. 4280.)  Defendants did so based on evidence

18   showing that the underlying Eighth Amendment deficiencies in medical and mental health

19   care have been remedied, that Defendants are not deliberately indifferent to any Eighth

20   Amendment deficiencies that may still exist, and, in all events, additional population

21   reductions are unnecessary to ensure that the quality of medical and mental health care

22   does not pose a substantial risk of serious harm to the two certified classes of inmates.

23   (*See id*; *see also* Defs.' Mot. to Terminate & Vacate Judgment and Orders in *Coleman*,

24   ECF Dock. No. 4275-1.)  On April 11, 2013, this Three-Judge Court denied Defendants'

25   motion to vacate or modify and issued a separate order imposing additional injunctive

26   relief, which required, *inter alia*, that Defendants submit a list "of all population reduction

27   measures identified or discussed as possible remedies in this Court's August 2009

28

1   Opinion & Order . . ." and a plan to comply with the order by identifying measures

2   described in the list that Defendants proposed to implement.  (April 11, 2013 Order, *Plata*

3   ECF Dock. No. 2591, *Coleman* ECF Dock. No. 4542, at 1-3.)

4          Defendants timely submitted a list and plan in response to this Three-Judge

5   Court's April 11, 2013 Order.  In response to Plaintiffs' requests for further injunctive relief

6   in light of Defendants' submissions and other actions taken as a result of the April 11,

7   2013 Order, this Court issued the June 20, 2013 Order requiring Defendants to

8   implement their plan and to expand the use of good time credits to ensure the release of

9   an additional 4,170 inmates by December 31, 2013.  (June 20, 2013 Order at 37:1-12.)

10  To facilitate the relief ordered, the Court waived numerous provisions of state and local

11  law.  (*Id.* at 2:24-25, 43:3-45:4.)  The June 20, 2013 Order further requires Defendants to

12  *use* a list of "low-risk prisoners" created pursuant to this Court's April 11 order (*Coleman*

13  ECF Dock. No. 4542, at 5 ¶ 5)[1] who could be released to "remedy any deficiency in the

14  number of prisoners to be released in order to meet the 137.5% population ceiling by

15  December 31, 2013, if for any reason defendants do not reach that goal under the

16  Amended Plan as implemented."  (*Id.* at 41:22-24.)

17         On June 24, 2013, Defendants filed Notices of Appeal of the June 20, 2013 Order.

18  (*Plata* ECF Dock. No. 2660, *Coleman* ECF Dock. No. 4665.)  The Supreme Court has

19  jurisdiction under 28 U.S.C. § 1253.  As the Supreme Court's rules generally require,[2]

20

21  _____

22  [1] Defendants are developing the identification system as required by the April 11 order
    and do *not* seek a stay of that initial aspect of the injunctive relief; accordingly,

23  Defendants will "submit a report to this Court regarding the actions taken thus far
    regarding this identification system" within 100 days of the April 11 order.  (*Coleman* ECF

24  Dock. No. 4542, at 5 ¶ 5.)

25  [2] Supreme Court rule 23.3 states: "An application for a stay shall set out with particularity
    why the relief sought is not available from any other court or judge.  Except in the most

26  extraordinary circumstances, an application for a stay will not be entertained unless the
    relief requested was first sought in the appropriate court or courts below or from a judge

27  or judges thereof."

28

1   Defendants seek a stay from this Three-Judge Court pending the Supreme Court's

2   review, and intend to seek a stay from the Supreme Court should this Court deny relief.

3   Short of judicial intervention by either this Three-Judge Court or the Supreme Court,

4   Defendants will comply with the June 20, 2013 Order.

5                               **III.    ARGUMENT**

6   **A.    Defendants are entitled to a stay pending appeal under Federal Rule of Civil
          Procedure 62.**
7

8           This Court is empowered, under Rule 62 of the Federal Rules of Civil Procedure,

9   to stay its June 20, 2013 Order to ensure that Defendants' rights are secured pending

10  appeal.  Fed. R. Civ. P. 62(c).  "A party seeking a stay must establish that [it] is likely to

11  succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of relief,

12  that the balance of equities tip in [its] favor, and that a stay is in the public interest."

13  *Humane Soc. of U.S. v. Gutierrez*, 558 F.3d 896, 896 (9th Cir. 2009) (construing *Winter*

14  *v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)); *see Nken v. Holder*, 556 U.S.

15  418, 434-35 (2009) (stay factors are: "(1) whether the stay applicant has made a strong

16  showing that he is likely to succeed on the merits; (2) whether the applicant will be

17  irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure

18  the other parties interested in the proceeding; and (4) where the public interest lies.").

19  The likelihood of success and irreparable harm factors "are the most critical."  *Nken,* 556

20  U.S. at 434 (explaining that when those are satisfied, courts will assess "the harm to the

21  opposing party" and weigh the public interest).

22          As explained below, a stay of this Three-Judge Court's June 20, 2013 Order

23  should be granted because Defendants would be irreparably harmed absent a stay, the

24  balance of equities weighs in Defendants' favor, and Defendants are likely to succeed on

25  the merits.

26  / / /

27  / / /

28

1

**1.      Irreparable harm exists and the balance of equities weighs in Defendants' favor.**

2

3        Defendants are mindful of the urgency of the Three-Judge Court's Order and the

4    Order's expectation of prompt, responsive action,[3] and do not seek this stay as a delay

5    tactic.  Rather, Defendants have good grounds for requesting this stay.  *First*, and most

6    significantly, a likelihood of irreparable harm exists here because not only does this

7    Court's Order prospectively waive many state laws, but, in doing so, it also requires the

8    State to take certain actions which, once initiated, cannot be stopped or undone.  For

9    instance, once good time credits are retroactively applied, or applied to specific classes

10   of offenders, those credits cannot be rescinded, and thus individuals now incarcerated

11   will be released before the completion of their terms.  *Lindsey v. Washington*, 301 U.S.

12   397, 401 (1937) (holding that the statute at issue violated the Constitution's *ex post facto*

13   clause because "the measure of punishment prescribed by the later statute is more

14   severe than that of the earlier").[4]  Moreover, notwithstanding this Court's predictive

15   judgments in 2009 based on the evidence adduced in 2008 about California's prison

16   population at the time, new evidence that Defendants put before this Court in connection

17   with the List/Plan submission raises serious questions about public safety when even

18   inmates deemed "low risk" are released.  (*See Coleman* Dock. 4572, at 4 n.2.)

19   Specifically, Dr. Petersilia—upon whose work this Court previously extensively relied,

20   _____

21   [3] *See*, *e.g.*, Order at 2 (waiving state and local laws "effective immediately"); *id.* at 15
     (stating there is "no room for ambiguity: 'The State shall implement the order without
22   further delay.'"); *id.* at 35 (claiming "Defendants . . . have consistently sought to delay the
     implementation of our Order."); *id.* at 41 ("No matter what implementation challenges
23   defendants face, no matter what unexpected misfortunes arise, defendants shall reduce
     the prison population to 137.5% by December 31, 2013 . . . ."); *id.* at 42 ("repeat[ing]" that
24   mandate); *id.* at 44 (rejecting Defendants' request to "delay our issuance of this order, or .
     . . waive[] contrary state laws and regulations, until [Defendants'] efforts have been
25   exhausted"); *id.* at 45 ("This Court will not accept . . . needless delay.").

26   [4] Similarly, once the State enters into contracts for the housing of inmates in out-of-state
27   facilities, those contracts will not be susceptible to cancelation.

28

*see*, *e.g.*, *Coleman*, 2009 WL 2430820, at *20, 85, 92, 97-98, 110—has recognized that even inmates that CDCR has considered "low risk" recidivate such that 41% are returned to California prison within three years, and that 11% of such "low risk" offenders have been "rearrested for a violent felony within 3 years of release." J. Petersilia & J. Greenlick Snyder, *Looking Past the Hype: 10 Questions Everyone Should Ask About California's Prison Realignment*, 5(2) Cal. J. Politics Policy 266, 295 (2013) (concluding "regardless of how one slices the data, California counties are dealing with a risky offender population"); *cf. Coleman*, 2009 WL 2430820, at *101 (claiming, based on then-existing data, that "[a]ccording to Director Hoffman, low-risk inmates have an average recidivism rate of just 17%") (citing Rep. Tr. at 1750:1-6).[5]  Thus, a reversal of the judgment would afford the State incomplete relief absent a stay and therefore cause Defendants irreparable harm absent a stay.

*Second*, the likelihood that a stay would substantially injure Plaintiffs is small.  As this Court has recognized, population reduction is just one of many existing remedies directed at the alleged Eighth Amendment violations at issue; the other remedies will remain in place irrespective of a stay here.  Moreover, granting a stay pending review does not necessarily foreclose the possibility that a population reduction could be achieved by December 31, 2013, depending on how the Supreme Court acts on the case.  Furthermore, should any individual plaintiff make a showing that the population itself posed an imminent threat of serious harm to him or herself, further injunctive relief could be tailored to that circumstance.

*Third*, in light of these considerations, the public interest supports a stay.  Here, where Defendants are on the brink of taking steps that cannot be undone and those steps will lead to early releases of individuals labeled "low risk" who, according to the

_____

[5] Director Hoffman's testimony made clear that the "low risk" inmates he was discussing was "property, drug and non-violent offenders," Tr. 1750:2 (*Plata*, Dock. No. 1920), a category of inmates that has largely been realigned to county supervision.

7

1  latest data, still recidivate at a 41 percent rate, (*see* Petersilia et al. (2013), *supra*), the

2  predominant interest should be to ensure that the proper balance under the Constitution

3  and the Prison Litigation Reform Act exists before imposing irreversible measures.

4          Indeed, the situation presented by the June 20, 2013 Order parallels this Court's

5  January 12, 2010 order to reduce the prison population in which this Three-Judge court

6  *sua sponte* stayed implementation of its order pending appeal.  (Jan. 12, 2010 Order at

7  6:16-18.)  Unlike the August 4, 2009 Order, which "require[d] simply the development of a

8  plan . . . [and did] not require implementation of any population reduction measures"

9  (Sept. 3, 2009 Order at 3:8-9), here, the Three-Judge Court unambiguously "orders

10  defendants to implement the full expansion of good time credits . . . ."  (June 20, 2013

11  Order at 40:1-2.)  Like the January 2010 Order, which this Court stayed *sua sponte*

12  pending appeal, the June 20, 2013 Order requires Defendants to take specific action to

13  reduce the prison population.  (June 20, 2013 Order at 40:1-2; 41:28-42:1 ("defendants

14  shall reduce the prison population to 137.5% by December 31, 2013, even if that is

15  achieved solely through the release of prisoners from the Low-Risk List").)  Thus,

16  implementation of the population reduction measures mandated by the June 20, 2013

17  Order should be stayed pending appeal consistent with this Court's stay of its January

18  12, 2010 Order.

19          **2.      Defendants are likely to succeed.**

20          There is a likelihood that the Supreme Court will conclude that this Three-Judge

21  Court's June 20, 2013 Order violated the Supreme Court's mandate to "give serious

22  consideration" and "remain open to" the State's showings about, *inter alia*, the quality of

23  medical and mental health care today.  *Plata v. Brown*, 131 S. Ct. 1910, 1941, 1946-47

24  (2011).  Although the Supreme Court's concern was that, based on the evidence before it

25  of then-current conditions at the time of the 2008 trial, inmates were "d[ying] or

26  needlessly suffer[ing]" as a result of overcrowding, *id.* at 1941, today, the State

27  respectfully submits that the record is to the contrary.  (*See*, *e.g.*, *Plata* ECF Dock. No.

28

2506; *Coleman* ECF Dock. Nos. 4280 & 4275-1.)  Regardless of whether any Eighth Amendment violations continue to exist today, additional population reductions are unnecessary to prevent death or needless suffering or to ensure that the quality of medical and mental health care does not pose a substantial risk of serious harm to the two certified classes of inmates.  (*See Plata* ECF Dock. No. 2506; *Coleman* ECF Dock. No. 4280.)  In light of this record, it is likely that the Supreme Court will conclude that this Court's Order conflicts with the Supreme Court's directive in *Plata* to "evaluate whether its [prisoner release order] remains appropriate" as the "State makes further progress", and the Supreme Court's admonition that "time and experience may reveal targeted and effective remedies that will end the constitutional violations even without a significant decrease in the general prison population."  *Id.* at 1941, 1947; *id.* at 1947 (recognizing that "[i]f significant progress is made *toward remedying* the underlying constitutional violations, that progress may demonstrate that further population reductions are not necessary") (emphasis added); *compare*, *e.g.*, April 11, 2013 Order at 33:7-9 (interpreting mandate to mean that relief would be warranted only if defendants showed "they had 'remed*[ied]* the underlying constitutional violations'") (emphasis added, alteration by this Court).

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

9

1

## IV.    CONCLUSION

For the reasons articulated above, Defendants respectfully request that the Three-Judge Court stay any and all further proceedings with respect to the June 20, 2013 Order, including its order that Defendants expand its good time credit program or begin releasing inmates from the "Low-Risk List" of inmates that Defendants are developing, pending resolution of Defendants' appeal to the United States Supreme Court.  Given the challenging mechanics and logistics of effectuating releases of the magnitude ordered by this Court, Defendants respectfully request expedited consideration of this motion.

DATED: June 28, 2013                    HANSON BRIDGETT LLP


                                        By:       /s/ Paul B. Mello
                                           PAUL B. MELLO
                                           Attorneys for Defendants

DATED: June 28, 2013                    KAMALA D. HARRIS
                                        Atorney General of the State of California


                                        By:       /s/ Patrick R. McKinney
                                           PATRICK R. MCKINNEY
                                           Deputy Attorney General
                                           Attorneys for Defendants