DONALD SPECTER – 083925
STEVEN FAMA – 099641
ALISON HARDY – 135966
SARA NORMAN – 189536
REBEKAH EVENSON – 207825
PRISON LAW OFFICE
1917 Fifth Street
Berkeley, California 94710-1916
Telephone: (510) 280-2621

MICHAEL W. BIEN – 096891
JANE E. KAHN – 112239
ERNEST GALVAN – 196065
LISA ELLS – 243657
AARON J. FISCHER – 247391
KRISTA STONE-MANISTA – 269083
MARGOT MENDELSON – 268583
ROSEN BIEN GALVAN &
GRUNFELD LLP
315 Montgomery Street, Tenth Floor
San Francisco, California 94104-1823
Telephone: (415) 433-6830

CLAUDIA CENTER – 158255
THE LEGAL AID SOCIETY –
EMPLOYMENT LAW CENTER
600 Harrison Street, Suite 120
San Francisco, California 94107-1389
Telephone: (415) 864-8848

GEOFFREY T. HOLTZ -- 191370
BINGHAM McCUTCHEN LLP
Three Embarcadero Center
San Francisco, California 94111-4067
Telephone: (415) 393-2000

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURTS

EASTERN DISTRICT OF CALIFORNIA

AND NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>EDMUND G. BROWN, JR., et al.,<br><br>Defendants. | Case No. Civ S 90-0520 LKK-JFM P<br><br>**THREE JUDGE COURT** |
| MARCIANO PLATA, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>EDMUND G. BROWN, JR., et al.,<br><br>Defendants. | Case No. C01-1351 TEH<br><br>**THREE JUDGE COURT**<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STAY THREE-JUDGE COURT'S JUNE 20, 2013 ORDER** |

[870585-1]

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

ARGUMENT......................................................................................................................... 1

I.    Defendants' stay application must fail in the absence of any credible evidence of irreparable harm, because the balance of equities tips in Plaintiffs' favor, and because Defendants are unlikely to succeed on the merits .................................................................................................................... 1

    A.    The State cannot demonstrate that irreparable injury would result from denial of a stay............................................................................................... 2

    B.    The balance of equities and the public interest tip strongly in favor of denial of the stay........................................................................................ 5

    C.    The State is unlikely to succeed on the merits ................................................ 7

CONCLUSION...................................................................................................................... 8

# TABLE OF AUTHORITIES

**Page**

## CASES

*Beame v. Friends of the Earth*,
 434 U.S. 1310 (1977) .................................................................................................... 3

*Brown v. Plata*,
 563 U.S. —, 131 S. Ct. 1910 (2011) ................................................................ 1, 3, 4, 6

*Horne v. Flores*, 557 U.S. 433, 447 (2009). ....................................................................... 7

*Nken v. Holder*,
 556 U.S. 418 (2009) .................................................................................................. 1, 2

*Ruckelshaus v. Monsanto Co.*,
 463 U.S. 1315 (1983) .................................................................................................... 3

*Rufo v. Inmates of Suffolk Cnty Jail*,
 502 U.S. 367 (1992) ...................................................................................................... 6

*Virginian R. Co. v. U.S.*,
 272 U.S. 658 (1926) ...................................................................................................... 1

## RULES

Fed. R. Civ. P. 60(b)(5) ......................................................................................................... 6

**INTRODUCTION**

Two years ago, the Supreme Court upheld this Court's finding that California's prison overcrowding was the primary cause of the "severe and unlawful mistreatment of prisoners through grossly inadequate provision of medical and mental health care," *Brown v. Plata*, 563 U.S. —, 131 S. Ct. 1910, 1923 (2011), and ordered the State to reduce its prison population to 137.5% of capacity in two years. Defendants undertook a partial remedy—knowing, from the beginning, it would be inadequate—and have steadfastly refused to do more. Instead, Defendants tried to persuade this Court that the half-measures were adequate. Having failed in that attempt, the State now seeks a stay while it appeals to the Supreme Court.

The application for a stay must fail for three reasons. First, the State cannot credibly claim irreparable injury in being forced to comply with a remedial order that has been in place for several years, using compliance methods that have passed muster with this Court and the Supreme Court. Second, a stay of the remedies will prolong ongoing irreparable harm – including illness and death – for plaintiff class members. Finally, Defendants are extremely unlikely to succeed in their appeal to the Supreme Court.

**ARGUMENT**

**I.    Defendants' stay application fails in the absence of any credible evidence of irreparable harm, because the balance of equities tips in Plaintiffs' favor, and because Defendants are unlikely to succeed on the merits**

"A stay is not a matter of right, even if irreparable injury might otherwise result." *Virginian Ry. Co. v. U.S.*, 272 U.S. 658, 672 (1926) (citation omitted); *see also Nken v. Holder*, 556 U.S. 418, 433 (2009). Instead, it is "an exercise of judicial discretion" that is "dependent upon the circumstances of the particular case." *Nken*, 556 U.S. at 433 (quotation omitted). The applicant for a stay bears the burden of demonstrating the necessity for the stay through a four-part test. *Id.* at 425-26. If an applicant fails to satisfy any of these four elements, the application must be denied.

An applicant must show that the denial of a stay would cause irreparable harm;

more than a mere "possibility of irreparable injury" is required. *Id.* at 434-35 (quotation omitted). In addition, the court must weigh "whether issuance of the stay will substantially injure the other parties" in the proceeding and the public interest involved. *Id.* at 434 (quotation omitted). Finally, the court must determine whether the applicant has demonstrated a "strong showing" of likelihood of success on the merits. *Id* (quotation omitted).

### A. The State cannot demonstrate that irreparable injury would result from denial of a stay

Defendants seek a stay of the latest in a series of orders to reduce their prison population to 137.5% capacity by December 31, 2013. They argue that because the most recent order "requires them to take prompt and expeditious action," they would suffer irreparable injury if it is not stayed, because they cannot comply with its terms without taking "irrevocable" steps. Defendants' Motion to Stay Three-Judge Court's June 20, 2013 Order Requiring Defendants to Implement Amended Plan Pending Appeal, June 28, 2013 (Dkt #2665/4673) (Defendants' Stay Motion), at 2.

This argument is undercut by Defendants' notable lack of urgency before this Court. The June 20, 2013 Order is not the first time Defendants have been required to "take prompt and expeditious action" to achieve the same goal. The Court ordered Defendants nearly three months ago to act "immediately" to reduce their prison population to 137.5% capacity by the end of the year. Opinion and Order Denying Defendants' Motion to Vacate or Modify Population Reduction Order, April 11, 2013 (Dkt #2590/4541) (April 11, 2013 Order), at 2. Defendants have never sought a stay of that order, despite the fact that the Court threatened them with contempt if they did not act at once. April 11, 1013 Order at 70-71 ("If defendants do not take all steps necessary to comply with this Court's June 30, 2011 Order, as amended by this Court's January 29, 2013 Order … they will without further delay be subject to findings of contempt, individually and collectively").

In addition, Defendants have sought a 45-day extension of time to file their

jurisdictional statement to the Supreme Court.  *See* Application to Extend the Time to File a Jurisdictional Statement on Appeal from July 12, 2013 to August 26, 2013, submitted to Justice Kennedy on June 25, 2013, No. 13A5; Application granted July 1, 2013, http://www.supremecourt.gov/Search.aspx?FileName=/docketfiles/13a5.htm.  If irreparable injury were imminent, surely they would have promptly sought a stay of the April 11, 2013 Order and made their Supreme Court appeal a higher priority.  The State's unhurried approach calls into question the credibility of its claims of urgency.  *Ruckelshaus v. Monsanto Co.*, 463 U.S. 1315, 1318 (1983) (Blackmun, J.) (an applicant's "failure to act with greater dispatch tend[ed] to blunt his claim of urgency and counsel[ed] against the grant of a stay"); *Beame v. Friends of the Earth*, 434 U.S. 1310, 1313 (1977) (delay in application for stay or certiorari "vitiates much of the force of [an applicant's] allegations of irreparable harm").

Even had they been promptly asserted, Defendants' claims of irreparable injury would have no merit.  Defendants have been under court order to reduce their prison population to 137.5% of capacity for well over four years.  *Brown*, 131 S. Ct. at 1946.  This Court has issued multiple remedial orders requiring the *same* remedy Defendants presently seek to stay.  *See* Second Order Requiring Further Briefing, August 3, 2012 (Dkt # 2460/4220), at 4 ("defendants shall take all steps necessary to comply with the Court's June 30, 2011 order, including the requirement that the prison population be reduced to 137.5% by June 27, 2013"); Order Denying Defendants' Motion for Six-Month Extension and Plaintiffs' Motion for Order to Show Cause Re: Contempt, December 6, 2012 (Dkt #2499/4269), at 2-3 ("defendants must take further steps to achieve full compliance"); Order Re: Defendants' January 7, 2013 Motion to Vacate or Modify, January 29, 2013 (Dkt #2527/4317), at 2-3 (granting six-month extension for compliance with June 30, 2011 Order but warning that the order "remains in effect … and defendants are reminded of their obligation to continue to comply with its terms and provisions.  Neither defendants' filings of the papers filed thus far nor any motions, declarations, affidavits, or other papers filed subsequently shall serve as a justification for their failure to file and report or take

any other actions required by this Court's Order…. Defendants shall take all steps necessary to comply with the Order as amended").

The orders issued in April and June 2013 do not impose new obligations; they simply provide more detailed direction as to how to achieve the long-ordered relief. This direction is necessary in face of Defendants' intransigence and "open defiance" of the authority of this Court. April 11, 2013 Order at 65.

Defendants argue that the more detailed direction given by the Court "requires the State to take certain actions which, once initiated, cannot be stopped or undone." Defendants' Stay Motion at 6. The only examples they give are the grant of good time credits, which they say cannot be rescinded, and contracts for housing prisoners out of state, which they say cannot be cancelled. These arguments fail. First, Defendants need not take any steps they consider irrevocably harmful, since the Court gave them the flexibility to substitute any of the Court-ordered population reduction measures for ones of Defendants' choice, so long as they accomplish equivalent results and pose no greater risk to public safety. June 20, 2013 Order at 49-50.

Second, contrary to Defendants' arguments, neither is irrevocable: prisoners allowed early release due to increased good time credits can be returned to custody[1] and the State can negotiate early-termination provisions to contracts with out-of-state facilities.

Third, the increased grant of good time credits has already been reviewed by both this Court and the Supreme Court and found to be consistent with public safety, if properly implemented. *Brown*, 131 S. Ct. at 1942-1944; Opinion and Order, August 4, 2009 (Dkt

---

[1] The State plans to retain parole authority over any prisoners released early due to additional good time credits, allowing their return to state prison. CDCR Today, May 2, 2013, attached as Exhibit B to Declaration of Ernest Galvan in Support of Plaintiffs' Opposition to Defendants' Motion to Stay Three-Judge Court's June 20, 2013 Order (Galvan Dec.), filed herewith ("Prisoners who are released under the new good-conduct rules would serve their parole under state supervision. If they violate parole prior to the end of what their sentence would have been without the increased good-conduct credits, they will return to state prison").

#2197/3641), at 139-145.  It can be done safely with the current population.  Declaration of James Austin in Support of Plaintiffs' Response to Defendants' Population Reduction Plan, May 15, 2013 (Dkt #2626-1/4811-1), at ¶¶ 28-32 (release of low-risk prisoners and use of additional good time credits can be done safely and effectively).

According to Defendants, "new evidence … raises serious questions about public safety when even inmates deemed 'low risk' are released."  Defendants' Stay Motion at 6.  But their "new evidence" is nothing new, and certainly not persuasive.  *See id.* at ¶¶ 22-23 and 25-27 (California crime rate has declined as prison population has decreased), ¶¶ 28-32 (release of low-risk prisoners and use of additional good time credits can be done safely and effectively); CDCR, Lifer Parolee Recidivism Report, January 2013, attached as Exhibit D to Galvan Dec., at 9 ("lifer parolees receive fewer new convictions [than their counterparts who serve determinate terms] within three years of being released to parole (4.8 vs. 51.5 percent, respectively)" and "have a markedly lower return to prison recidivism rate than non-lifer parolees (13.3 vs. 65.1 percent, respectively)").

The means for compliance have been carefully vetted through a lengthy trial, this Court's painstaking examination, and the Supreme Court's careful review.  Defendants lost this battle years ago.  There is no injury, much less irreparable injury, in obeying the repeated orders of the federal courts.

**B.     The balance of equities and the public interest tip strongly in favor of denial of the stay**

Although the dozens of remedial orders in this case have led to improved health care in California prisons, much more remains to be done, and care is far from constitutional.[2]  Grave recent findings of the *Coleman* and *Plata* Courts document

---

[2]Defendants have elsewhere relied on accreditation of three of their prisons by the American Correctional Association (ACA) as proof of constitutional conditions. Declaration of Kathy Black-Dennis in Support of Defendants' Opposition to Plaintiffs' Supplemental Brief in opposition to Defendants' Motion to Vacate, March 18, 2013 (Dkt #2575/4417, at ¶ 16. This reliance is misplaced.  Deposition of Kathy Black-Dennis, May (footnote continued)

ongoing, life-threatening harm. Those findings are documented in exhaustive detail by the district courts. *Coleman v. Brown,* Order, April 4, 2013 (*Coleman* Dkt #4539) (Coleman Termination Order), at 24-25 (finding that "critically important" remedial goals "directly connect" to overcrowding evidence, "including severe shortages in treatment space, beds, and staffing; inadequate medication management; inadequate medical record keeping; and an unacceptably high number of inmate suicides"); 33-34 ("inmate suicides are occurring at virtually the same rate and with virtually the same degree of inadequacies in assessment, treatment and intervention" as was the case in the 2010 data reviewed by the Supreme Court); 42 (mentally ill inmates held in segregation units due to shortage of specialized placement beds); 51 ("Defendants do not presently have a sufficient number of mental health crisis beds (MHCBs) to meet the need for such beds"); 51-52 ("inmates in need of mental health crisis care have been placed in a variety of alternative holding areas when MHCBs are unavailable"); 56-61 (clinical staff vacancy rates at almost 30% as of November 2012 in all disciplines, 42% for staff psychiatrists); *Plata v. Brown,* Order Granting Plaintiffs' Motion for Relief re: Valley Fever at Pleasant Valley and Avenal State Prisons, June 24, 2013 (*Plata* Dkt #2661),, at 23-24 (Defendants have "clearly demonstrated their unwillingness to respond adequately to the health care needs of California's inmate population…. In the absence of a court-ordered exclusionary policy, inmates will continue to suffer unnecessary and unreasonable harm, thus presenting the most recent example of how Defendants lack 'the will, capacity, and leadership to maintain a system of providing constitutionally adequate medical health care services to class members'") (quotation omitted).

Overcrowding thus continues to act as an obstacle to constitutional health care.[3]

---

21, 2013, attached as Exhibit C to Galvan Dec., at 57:7-10 (under the ACA's standards, a facility can be accredited even though it is found unconstitutional by a court).

[3] In fact, it could be even more of a barrier to care in the future: without Court intervention, California's prison population is projected to rise. Legislative Analyst's Office, (footnote continued)

*See, e.g.*, Coleman Termination Order at 24-26, 51-52, 56; Receiver's Twenty-Third Tri-Annual Report, May 22, 2013 (*Plata* Dkt #2636), at 30 ("California's prisons remain significantly overcrowded as of the date of this filing and that overcrowding continues to interfere with the ability to deliver constitutionally acceptable medical and mental health care").

These unconstitutional conditions, caused primarily by the overcrowding endemic in California's prisons, cause ongoing suffering and death. This extraordinary harm to the Plaintiff classes will continue unabated if Defendants are relieved from their remedial responsibility.

### C. The State is unlikely to succeed on the merits

In order to prevail, Defendants must make a "strong showing" of likelihood of success in the Supreme Court. *Nken*, 556 U.S. at 434. They cannot.

To succeed on the merits, the State must demonstrate a change in the facts or law sufficient to warrant reconsideration of its 2011 order. Rule 60(b)(5), Fed. R. Civ. Pro; *Rufo v. Inmates of Suffolk Cnty Jail,* 502 U.S. 367 (1992). They cannot, however, "challenge the legal conclusions on which a prior judgment or order rests." *Horne v. Flores*, 557 U.S. 433, 447 (2009). A change in facts must be "significant and unanticipated" in order to justify modification. April 11, 2013 Order at 29-30 (citing cases). Defendants fail because their motion rests on an impermissible attempt to re-litigate prior legal conclusions in this case and on a factual record that was fully anticipated by those rulings.

The 137.5% population cap is a predictive judgment that represents the best efforts of this Court and the Supreme Court to determine the appropriate remedy. As the Supreme

---

Complying With the Three-Judge Panel Prison Population Limit , attached as Exhibit A to Galvan Dec., at 2 ("Current projections indicate that the inmate population will continue to increase. Absent changes, the prison population in 2017-18 would be around 14,000 inmates above the limit").

Court noted, such judgments "involve[] uncertain predictions regarding the effects of population reductions, as well as difficult determinations regarding the capacity of prison officials to provide adequate care at various population levels. Courts have substantial flexibility when making these judgments." *Brown*, 131 S. Ct. at 1944. Defendants have pointed to no changed circumstance that would upset the painstaking reasoning and exhaustive consideration of extensive evidence that that determination entailed. April 11, 2013 Order at 35-39.

In addition, Defendants offer no unanticipated facts that would warrant a modification. *Id.* at 39-53. Instead, they demonstrate that the orders of this Court and the Supreme Court are having exactly their intended effects: a reduction in overcrowding and as yet incomplete improvements in health care. *Id.* A stay on matters that have already been fully adjudicated is unnecessary and would undermine the fundamental respect for judicial authority that underlies our legal system.

## CONCLUSION

Defendants, granted tremendous flexibility to fashion relief and more than four years to do so, have been openly, explicitly defiant of the authority of this Court and the Supreme Court. A stay of the remedial orders in this case would place a seal of approval on their well-documented "contumacious conduct." April 11, 2013 Order at 63. Plaintiffs respectfully request the Court deny Defendants' motion for a stay.

DATED: July 2, 2013                    Respectfully submitted,

                                       PRISON LAW OFFICE

                                       By: */s/*
                                           Sara Norman
                                           Donald Specter
                                       Attorneys for *Plata* Plaintiffs and *Coleman* Plaintiffs