UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al., | No. 2:90-cv-0520 LKK JFM P |
| Plaintiffs, | |
| v. | **ORDER** |
| EDMUND G. BROWN, JR., et al., | |
| Defendants. | |

On April 11, 2013, plaintiffs filed a motion styled "Motion for Enforcement of Court Orders and Affirmative Relief Related to Inpatient Treatment." ECF No. 4543. Pursuant to court order (ECF No. 4629) the matter came on for evidentiary hearing on June 19, 2013 on the issues raised in Section I(B)-(H) of plaintiffs' motion.[1] The court heard testimony for a total of three and one half days. After consideration of that testimony, the papers filed in support of and in opposition to the motion, and the

/////

---

[1] Section I(A) of plaintiffs' motion concerns access to intermediate hospital care for inmates on death row at San Quentin State Prison. Hearing on that part of plaintiffs' motion has been consolidated with hearing on issues raised by two additional motions filed by plaintiffs. See Order filed May 24, 2013 (ECF No. 4632) at 2.

1

arguments of counsel, for the reasons set forth in this order plaintiffs' motion will be granted in part and denied in part.[2]

Plaintiffs seek a number of orders relative to inpatient care provided to class members at programs operated by the California Department of State Hospitals (DSH), formerly known as the California Department of Mental Health (DMH).[3] These include orders relative to staffing levels and hiring; use of so-called cuff or orientation status for newly-admitted patients; provision of basic necessities including soap and clean and adequate blankets, clothing, and underwear; length of patient stays, discharges, and waitlists for inpatient care; access to DSH programs regardless of parole date; activation and closure of DSH units during the opening of and transition to the new CHCF facility in Stockton; and treatment provided at VPP. See Proposed Order filed April 11, 2013 (ECF No. 4543-1).

Defendants' oppose the motion on a number of grounds.

---

[2] Both parties have tendered objections to evidence offered by the other party, and defendants have filed three motions in limine to exclude evidence (ECF Nos. 4659, 4660, and 4661). The court denied all motions in limine at the start of the hearing. Although not necessary to the court's ruling on the matters at bar, all objections not specifically sustained are deemed overruled. Given the gravity of the evidence in this hearing, the defendants' previous motion to terminate takes on the character of a condition in which the defendants have simply divorced themselves from reality.

[3] With one exception, inpatient mental health care is provided to inmates in the California Department of Corrections and Rehabilitation (CDCR) at programs operated by the California Department of State Hospitals (DSH). The exception is a new program for female inmates operated by CDCR at California Institution for Women (CIW). In relevant part, DSH provides inpatient care to CDCR inmates at the Salinas Valley Psychiatric Program (SVPP), the Vacaville Psychiatric Program (VPP), Atascadero State Hospital (ASH), and Coalinga State Hospital (CSH). In addition, on July 22, 2013, admissions for inpatient mental health care will start at the new Correctional Health Care Facility (CHCF), a CDCR facility that will contain, inter alia, additional DSH mental health programs for California's prison inmates. The DSH programs provide two levels of hospital care. For male inmates, acute psychiatric care is provided at VPP. Intermediate hospital care is provided at ASH, VPP, SVPP, and CSH. Both acute and intermediate levels of hospital care will be provided at CHCF for male inmates.

2

First, defendants contend that the relief sought by plaintiffs, if granted, will "unnecessarily expand judicial oversight" in this action. Defs. Opp'n to Pls.' Mot. for Enf. of Ct. Ord. & Aff. Relief, filed May 9, 2013 (ECF No. 4592) at 12. Defendants argue that the court "has never found that DSH is providing inadequate care to class members." Id. Defendants dispute that "recent challenges with retaining psychiatrists" has affected the adequacy of care provided to inmates at SVPP and contend that VPP is adequately staffed. Id. at 14, 17. They contend that so-called cuff or orientation status for newly arriving patients is "reasonably related to legitimate penological interests" and that plaintiffs have not proved that the policy violates the Eighth Amendment. Id. at 20. They contend that plaintiffs' contentions concerning soap and clothing are "inaccurate" and that plaintiffs' contentions concerning length of stay, discharges, and management of waitlists are "unsupported and further orders will unnecessarily intrude into defendants' operations." Id. at 22. They contend that plaintiffs' allegations concerning alleged improper discharges in anticipation of parole are "unfounded", that they are properly managing the transition to Stockton, and that there is no basis for investigation of the programs at VPP. Id. at 24-25, 27.

The threshold question before the court is whether the Special Master should monitor and report to the court on issues related to the adequacy of inpatient care provided to members of the plaintiff class. For the reasons set forth infra, the answer to that question is yes. The question of whether other orders requested by plaintiffs should issue will be denied without

prejudice pending monitoring and reporting by the Special Master.

The relevant history of this action has been set forth in several recent court orders, including this court's April 5, 2013 order denying defendants' January 7, 2013 motion to terminate this action, see Coleman v. Brown, ___ F.Supp.2d ___, 2013 WL 1397335 (E.D.Cal. Apr. 5, 2013), and is repeated only briefly herein. "In 1995, this court found defendants in violation of their Eighth Amendment obligation to provide class members with access to adequate mental health care. Coleman v. Wilson, 912 F. Supp. 1282 (E.D. Cal. 1995)." Id., slip op. at 1.[4]

> The first remedial order in this action directed defendants to work with the Special Master and his staff to develop and implement plans to remedy the Eighth Amendment violation. See Coleman, 912 F.Supp. at 1323–24. [Footnote omitted.] Over a decade of effort led to development of the currently operative remedial plan, known as the Revised Program Guide. The Revised Program Guide "represents defendants' considered assessment, made in consultation with the Special Master and his experts, and approved by this court, of what is required to remedy the Eighth Amendment violations identified in this action and to meet their constitutional obligation to deliver adequate mental health care to seriously mentally ill inmates." February 28, 2013 Order (ECF No. 4361) at 3. [Footnote omitted.] Over seven years ago, this court ordered defendants to immediately implement all undisputed provisions of the Revised Program Guide. [Footnote omitted.] Id. at 5-6.

Id. at 12. As the court explained in its February 28, 2013 order,

> the Special Master is tasked with monitoring "defendants' implementation of and compliance

---

[4] As the court noted in an order filed February 28, 2013, "[t]he Eighth Amendment violations in this case predate 1994, when they were found by the magistrate judge after a lengthy trial." Order filed February 28, 2013 (ECF No. 4361) at 3.

4

> with any remedial plan that this court may order", preparing and filing "with the court periodic reports assessing defendants' compliance with such remedial plan as the court may order", and advising the court "concerning any modification to the remedial plan that is requested by a party or that appears necessary to effectuate the purposes of the remedial plan."

Order filed February 28, 2013 (ECF No. 4361) at 5 (quoting Order of Reference filed December 11, 1995 (Doc. No. 639) at 4-5).

Defendants' remedial plan, the Revised Program Guide, makes specific provision for inpatient care. At the start, the Revised Program Guide provides that CDCR's Mental Health Services Delivery System (MHSDS) "provides a continuum of inpatient care from a contractual relationship with Department of Mental Health (DMH) for acute and intermediate and a short-term crisis inpatient program within CDCR institutions." 2009 Revised Program Guide at 12-1-1. "Referral to inpatient programs provided via contract with the DMH is available for inmate-patients whose conditions cannot be successfully treated in the outpatient setting or in short-term MHCB [mental health crisis bed] placements." Id. at 12-1-9.

At Chapter 6, the Revised Program Guide covers inpatient care in greater detail. It begins: "The California Department of Corrections and Rehabilitation (CDCR) is responsible for providing acute and intermediate inpatient care, in a timely manner, to those CDCR inmates clinically determined to be in need of such care. CDCR currently maintains a contract with the California Department of Mental Health (DMH) to provide acute and long-term intermediate inpatient mental health care to inmate-patients." Id. at 12-6-1. Chapter 6 contains admission and

discharge criteria for both acute and intermediate hospital care, as well as referral, admission, discharge, and transfer procedures. Under the heading Utilization Management, Chapter 6 provides:

> 1. CDCR reserves the right to inspect, monitor, and perform utilization reviews prospectively, concurrently, or retrospectively regarding the courses of treatment or inpatient care provided to CDCR's inmate-patient. Such reviews shall be undertaken to determine whether the course of treatment or services was prior authorized, medically necessary and performed in accordance with CDCR rules and guidelines. DMH agrees to make available, upon request by CDCR, for purposes of utilization review, an individual patient's medical record and any committee reviews and recommendations related to a CDCR patient.
>
> 2. DMH acknowledges and agrees that concurrent utilization management review shall not operate to prevent or delay the delivery of emergency treatment.
>
> 3. DMH acknowledges that the care of a patient at DMH shall be reviewed by CDCR Utilization Management (UM) nurses or designated party and by a Joint CDCR/DMH Review Process.
>
> 4. CDCR UM nurses or designated party will gather data and review cases of CDCR inmate-patients in DMH programs. CDCR UM nurses or designated party will report their findings and make recommendations to the CDCR Health Care Manager and CDCR Chief Psychiatrist or their designee(s). CDCR and DMH managers will meet monthly to review the data. Each DMH program also will have a joint CDCR/DMH UM process that will review individual cases.
>
> If there is a disagreement about discharge, the UM nurse will review the patient's record and forward a recommendation to the Joint CDCR/DMH UM Review Process. If there continues to be disagreement, the recommendation will be conveyed to the CCAT [(Coordinated Clinical Assessment Team)].

12-6-12.

6

The inpatient programs are included in defendants' plan to remedy the Eighth Amendment violation in this case.[5] Monitoring defendants' implementation of and compliance with that part of defendants' remedial plan, reporting to the court on defendants' compliance, and advising the court concerning any required modifications are all plainly within the Special Master's duties under the Order of Reference.

Defendants' assertion that the court has never found that DSH provides inadequate care to class members misses the mark. In 1995, when the court found the Eighth Amendment violations defendants are now tasked with remedying, the following California officials were defendants in this action: the Governor, the Secretary of the Youth and Corrections Agency, the Director of the California Department of Corrections (CDC), the Assistant Deputy Director for Health Care Services for CDC, and the Chief of Psychiatric Services for CDC. Coleman v. Wilson, 912 F.Supp. at 1293. The court found those defendants were failing to provide constitutionally adequate mental health care and ordered them to remedy the Eighth Amendment violations through preparation and implementation of remedial plans. The remedial process has been ongoing since late 1995.

During the remedial phase the court has ordered the joinder of two additional state officials, the Director of the Department of Mental Health (now the Department of State Hospitals) and the Director of the Department of Finance, as defendants based on findings that the "'just, orderly and effective' resolution" of

---

[5] Defendants do not contend, nor could they do so successfully, that access to inpatient mental health care is not required by the Eighth Amendment for this class of plaintiffs.

7

this action required their joinder. See Order filed June 28, 2006 (ECF No. 1855) at 2 and Order filed July 28, 2006 (ECF No. 1922) at 3. In relevant part, the joinder of the Director of then DMH was based on a finding that

> DMH plays a critical role in creating sustainable and effective solutions for inpatient care within the California Department of Corrections and Rehabilitation (CDCR). . . .[and] for multiple reasons, DMH is failing to address specific court-ordered remedies.

Order filed June 28, 2006 (ECF No. 1855) at 2.

As noted above, the remedial plan developed by defendants and approved by the court provides for inpatient mental health care as part of the continuum of mental health care to be provided to seriously mentally ill inmates. Consistent with established principles of Eighth Amendment jurisprudence, under the express language of the remedial plan the CDCR is "responsible for providing acute and intermediate inpatient care, in a timely manner, to those CDCR inmates clinically determined to be in need of such care." 2009 Revised Program Guide, at 12-6-1.[6] At all relevant times to date, CDCR has delegated by contract the provision of that care to DSH. Id.[7] The responsibility for providing constitutionally adequate care remains with CDCR, and it also runs to DSH by virtue of the contract it has with CDCR. Cf. West v. Atkins, 487 U.S. at 56

---

[6] Established principles of Eighth Amendment jurisprudence impose on the State "a constitutional duty to provide adequate medical treatment to those in its custody…." West v. Atkins, 487 U.S. 42, 56 (1988). The CDCR is the custodian of all members of the plaintiff class. See Coleman v. Wilson, 912 F.Supp. at 1293 (quoting original class certification order).

[7] CDCR has decided to assume full responsibility for the provision of inpatient mental health care to female inmates in the new unit at CIW.

1  (state's constitutional obligation to provide adequate medical
2  care runs to those the state delegates the function and who
3  assume the duties by contract).  At this stage of these
4  proceedings the duty to provide constitutionally adequate mental
5  health care is a remedial duty as well as an affirmative one;
6  having been found in violation of the Eighth Amendment, the
7  defendants must remedy that violation and demonstrate to this
8  court they have done so.  By reason of its contract with CDCR,
9  DSH "plays a critical role" in that remedy as it applies to
10 inpatient mental health care.  See Order filed June 28, 2006 (ECF
11 No. 1855) at 2.

12 As discussed above, development and implementation of a
13 remedial plan and compliance with said plan is proceeding under
14 the supervision of a Special Master.  Nothing in any of the
15 relevant orders exempts DSH or the inpatient programs it operates
16 under contract with CDCR for members of the plaintiff class from
17 this supervision.  To the contrary, the inpatient programs are
18 part of the remedial plan and therefore subject to the same
19 monitoring and reporting requirements as all other aspects of the
20 remedial plan.

21 The extended remedial phase of this action has required
22 wide-ranging and extensive efforts by the Special Master and his
23 team of experts and monitors.  With respect to inpatient care,
24 the Special Master has for almost a decade been required to
25 devote considerable attention and resources to seemingly
26 insurmountable problems in identification and referral of inmates
27 to inpatient care and woefully insufficient numbers of inpatient
28 beds available for inmates in need of such care.  See Coleman v.

Brown, ___ F.Supp.2d ___, 2013 WL 1397335, slip op. at 17-18.[8] While the Special Master finally reported "substantial improvement in access to inpatient care" in 2012, id. at 17, the fact that the unacceptable bed shortages and attendant waitlists for inpatient care (which at one time neared 1,000 inmates) have within the last year been reduced does not, by itself, demonstrate that the inpatient care being provided to members of the plaintiff class is adequate.[9]

Plaintiffs have presented significant and troubling evidence of, inter alia, severe staffing shortages, apparently redundant custodial policies that delay the start of necessary inpatient care and may in fact cause additional harm to class members transferred for such care, denial of basic necessities including clean underwear, failure to follow established timelines for

---

[8] Nor were the intractable problems with referral to inpatient care the only remedial issues that required the Special Master's time and attention over this period of time. In addition to his regular semi-annual monitoring and reporting requirements, the Special Master has been required to focus considerable time and effort on, inter alia, addressing significant clinical staffing shortages; an increasing rate of inmate suicide, particularly in administrative segregation units; ongoing construction projects, and development and implementation of a sustainable quality improvement process. In addition, severe overcrowding in the California prison system, which has not yet been adequately remedied, has impacted and impeded all remedial efforts in this action. See, e.g., Opinion and Order filed August 4, 2009 (ECF No. 3641) at 34-36.

[9] Indeed, measuring compliance by excluding the first 30 days on the waiting list appears to at least suggest a lack of prompt care. The Revised Program Guide provides that patients accepted for intermediate care must be transferred "[w]ithin 30 days of referral. . . ." 2009 Revised Program Guide at 12-1-16 (emphasis added). Evidence before the court suggests that defendants may not view time on a wait list for intermediate inpatient care as violating the remedial plan, or the Eighth Amendment, unless that time exceeds 30 days. Evidence also suggests that the calculation of the 30 day period is being improperly adjusted so that it starts at some after referral by a CDCR clinician and, consequently, additional delays attend the start of necessary inpatient care. While the court does not presently make any findings concerning the timeliness of transfers to inpatient care, it requests the Special Master to address that question in his next full monitoring report.

transfer of patients to inpatient care, and perhaps premature discharges of patients from inpatient care, all of which call into question the adequacy of the inpatient care that is being provided to the plaintiff class.[10]  Defendants dispute some of the evidence tendered by plaintiffs and they contest the inferences plaintiffs would have the court draw from other evidence.

After hearing and considering all of the evidence tendered by both parties at the evidentiary hearing, the court finds there is a significant evidentiary basis for questioning the adequacy of critical aspects of inpatient care currently provided to members of the plaintiff class.  Even if the Special Master did not already have the authority, and the duty, to monitor the adequacy of inpatient care provided to class members, the evidence tendered by plaintiffs would suggest the necessity that he do so.

For these reasons, the court will, by this order, make express what should be clear from the prior orders discussed above.  First, the Special Master has the authority and the duty to monitor all programs for the provision of inpatient mental health care to the plaintiff class.  Second, given the urgency of the issues tendered by plaintiffs, the Special Master will be directed to forthwith commence monitoring all such programs[11], and to report to the court on their adequacy and whether any

---

[10] The evidence also demonstrated a continuing inability of defendants to identify and remedy on their own, without court supervision, critical staffing shortages and other impediments to constitutionally adequate mental health care.

[11] In addition to the existing DSH programs at SVPP, VPP, ASH, and CSH, this order includes the new programs opening at CHCF in Stockton and the new program run by CDCR for female inmates at CIW.

11

modifications to defendants' remedial plan are required to ensure that members of the plaintiff class are receiving adequate inpatient mental health care.

Recognizing the enormity of the task before the Special Master, but also the urgency of the issues at hand the court will direct the Special Master to report first on the adequacy of staffing levels at SVPP, and on whether the so-called cuff or orientation status, either as designed or as implemented, unduly interferes with or delays the provision of necessary care to class members. That report will be due seventy-five (75) days from the date of this order.[12] The Special Master may, in his discretion, include in said report any other matters which he determines require urgent attention by the court. The court expects defendants to cooperate fully in providing the Special Master with all of the documents and facility access that he may require to meet this obligation.

Not later than the end of that period, the Special Master shall commence additional monitoring of the adequacy of all inpatient programs and shall file a report on the results of such monitoring not later than March 31, 2014.[13] To the extent that the Special Master may require additional staff to meet the obligations of this order, he shall follow the procedures used in

---

[12] The court had originally intended a much shorter date for the initial report. The Special Master has requested this later date, given the complexity of the problem.

[13] The Special Master may, as appropriate, schedule monitoring and reporting so that he may focus his attention on areas that may require more immediate attention or action by the court. The court expects all parties to cooperate fully with the Special Master in this effort and to work expeditiously and efficiently under his guidance to remedy any deficiencies identified during such monitoring.

12

this action to date for seeking appointment of such additional staff.

As noted above, plaintiffs also request additional specific orders from this court.  As also discussed, defendants dispute some of the evidence tendered by plaintiffs, they contest the inferences plaintiffs would have the court draw from other pieces of evidence, and they defend as grounded in a legitimate penological foundation the so-called cuff or orientation status challenged by plaintiffs.  To date, the court has generally relied on the Special Master's monitoring, reporting and recommendations before entering specific remedial orders and the court finds it prudent to continue that practice with respect to the issues at bar.  For that reason, plaintiffs' request for additional orders beyond investigation and monitoring by the Special Master will be denied at this time.

In accordance with the above, IT IS HEREBY ORDERED that:

1.  Plaintiffs' April 11, 2013 motion (ECF No. 4543) is granted in part.

2.  Within seventy-five (75) days from the date of this order the Special Master shall report to the court on the adequacy of staffing levels at the Salinas Valley Psychiatric Program SVPP; and on whether the so-called cuff or orientation status, either as designed or as implemented, unduly interferes with or delays the provision of necessary care to class members at SVPP.  Defendants shall cooperate fully in providing the Special Master with all of the documents and facility access that he may require to meet this obligation.

3.  The Special Master shall complete one round of

monitoring the adequacy of all inpatient programs and report to the court thereon not later than March 31, 2014.

    4.  Except as expressly granted herein, plaintiffs' April 11, 2013 motion for orders concerning inpatient care is denied without prejudice.

DATED: July 11, 2013.

```
                        /s/ Lawrence K. Karlton
                        LAWRENCE K. KARLTON
                        SENIOR JUDGE
                        UNITED STATES DISTRICT COURT
```