IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RALPH COLEMAN, et al.,

      Plaintiffs,                    No. 2:90-cv-0520 LKK JFM P

     vs.

EDMUND G. BROWN, JR., et al.,

      Defendants.            <u>ORDER</u>

         By order filed January 30, 2013, the court directed the Special Master to file as soon as practicable a report on suicides completed in the California Department of Corrections and Rehabilitation (CDCR) in the first six months of calendar year 2012 (hereafter Report or First Half 2012 Suicide Report). Order filed January 30, 2013 (ECF No. 4319) at 1.[1] Pursuant to that order, any objections were to be filed within ten days of the filing of the Report. Id. On March 13, 2013, Special Master filed the Report (ECF No. 4376), prepared by his expert, Dr. Raymond Patterson. On March 28, 2013, defendants filed objections and a motion to strike or

---

[1] The order was precipitated by motions filed by defendants on January 7, 2013 to terminate this action and vacate the judgment and orders of this court (termination motion), and to modify or vacate the population reduction order of the three-judge court. Those motions have now been resolved. See Order filed April 5, 2013 (ECF No. 4359), as corrected April 8, 2013 (ECF No. 4540) (denying motion to terminate this action); Order filed April 11, 2013 (ECF No. 4541) (three-judge court opinion and order denying motion to vacate or modify population reduction order).

1

modify portions of the Report (Objections) (ECF No. 4527).  On April 2, 2013, after receiving leave of court to do so (ECF No. 4532), plaintiffs filed an opposition to defendants' objections and motion to strike or modify the Report (Plaintiffs' Opposition) (ECF No. 4537).  Defendants' objections and motion to strike or modify the Report are resolved herein.

Incorporating by reference their arguments made in support of their termination motion, defendants object to the Report on the ground that it "fails to assess whether the State's prison mental health care system satisfies constitutional standards."  See Objections at 3.  As noted above, the termination motion has been denied.  This objection to the Report is therefore overruled.

Defendants object to and move to strike language in the Report comparing the inmate suicide rate in CDCR prisons unfavorably to other U.S. state prison systems and the U.S. federal prison system.  Objections at 3-4.  This essentially tracks objections and requests to strike made by defendants in response to the Special Master's Twenty-Fifth Round Monitoring Report and the 2011 Suicide Report and will be denied for the reasons set forth in this court's February 28, 2013 order. See Order filed February 28, 2013 (ECF No. 4361), at 7-8; see also Order filed March 15, 2013 (ECF No. 4394) at 4.

Defendants raise objections to the use of the terms "foreseeable" and "preventable", contending that they are not responsible for inmate suicides that were not "foreseeable."  Objections at 5.  Defendants argue that "[t]he special master's claim that Defendants are responsible for 'preventable' suicides even where the suicide was not foreseeable is spurious." Id.  This argument is disingenuous at best.  As the court noted in its March 15, 2013 order, the concepts of "foreseeable" and "preventable" suicides are well-defined in this action.

> The term "foreseeable" refers to those cases where information already available about an inmate indicates the presence of a substantial or high risk for suicide, which requires reasonable clinical, custody and/or administrative intervention(s).  Assessment of the degree of risk, whether high, moderate or low to none, is an

2

> important component in determining foreseeability.  In contrast to a high and immediately visible risk a "moderate" risk of suicide involves an ambiguous set of circumstances that requires significant clinical judgment based on adequate training and a timely assessment to determine the level of risk and the most appropriate and relevant interventions to prevent suicide.  As previously defined, those individuals evaluated as "low risk," "no risk" or "negligible risk" may require some degree of monitoring and subsequent evaluation, with appropriate notification of clinical and custody staff of the potential for self injury and/or suicidal ideation or activity.
>
> "Preventable" applies to those situation in which, if some additional information [had] been gathered and/or some additional intervention(s) taken, usually as required in existing policy, the likelihood of a completed suicide might have been reduced substantially.  These concepts of "foreseeable" and "preventable," in turn, reflect the adequacy of the defendants' suicide prevention policies and procedures, training and the implementation and supervision of policies and procedures, as well as clinical judgment.
>
> Fifth Suicide Report at 2-3; see also Eleventh Monitoring Report, filed June 10, 2003 (Doc. No. 1519), at 286.

Order filed March 15, 2013  These definitions are expanded upon in the First Half 2012 Suicide Report, and used in that report "as they have been in previous reports."  Report at 18, 26.  These terms and their definitions are set out and applied in every annual report on inmate suicides since the report for Calendar Year 2000.[2]  As used by the Special Master's expert, findings that suicides were preventable implicates, at least, the adequacy of defendants' training, implementation, and supervision of suicide prevention policies and procedures, as well as the adequacy of clinical judgment exercised by staff.[3]  Defendants are responsible for development and implementation of a program to "identify, treat, and supervise inmates at risk for suicide," Coleman v. Wilson, 912 F.Supp. 1282, 1298 n.10 (E.D. Cal. 1995) (citing Balla v. Idaho State

/////

---

[2] A separate report on inmate suicides has been filed for every calendar year since 1999, with the exception of calendar years 2008 and 2009, for which one combined report was prepared.

[3] Such findings may also implicate the adequacy of particular policies and procedures.

3

Board of Corrections, 595 F.Supp. 1558, 1577 (D.Idaho 1984), and identification of the number of preventable inmate suicides is an integral part of that responsibility.

Finally, defendants contend that in his report on individual cases, the Special Master's expert "scours the record for errors, invariably finding some past wrongs with 20-20 hindsight." Objections at 5. The inference defendants would have the court draw, apparently, is that the Special Master's expert is highlighting minor flaws and attributing causation in hindsight. This objection is without merit. As defendants correctly note, the Special Master's expert highlights four problem areas repeatedly implicated in inmate suicides: referrals to higher levels of care; completions of suicide risk evaluations; emergency responses; and 30-minute welfare checks. Id. The frequency with which one or more of these problems areas continues to be implicated in inmate suicides should be of grave concern to defendants, as it is to the Special Master, his expert, and this court.

Defendants also object to the Special Master's expert's assertion that defendants fail, year after year, to implement recommendations he has repeatedly made. The objection ignores the context in which the challenged observations were made. In the challenged section of the Report, the Special Master's expert was responding to criticism by defendants' expert, Dr. Dvoskin, that the Special Master's suicide reports were "untimely and therefore not helpful to prompt identification and implementation of corrective actions to prevent additional suicides." First Half 2012 Report (ECF No. 4376) at 8. Leaving aside the fact that it is defendants' responsibility to promptly identify and implement corrective action to prevent additional inmate suicides, it is also true, as described in the Report, that the Special Master's expert has repeatedly identified the same problem areas in need of corrective action.[4] This objection is overruled.

/////

---

[4] For example, his recommendations concerning implementation of relevant provisions of the Program Guide and training in emergency response procedures date back to the 1999 Suicide Report and have each been repeated in two subsequent reports. See First Half Report, at 9-10.

4

Finally, defendants' object to the recommendation in the report. Objections at 7. In particular, defendants represent that they have "developed a new suicide prevention workgroup at headquarters to further address inmate suicides" which should not include the Special Master or plaintiffs' counsel because defendants' suicide prevention program, in their view, is a "robust program" that "far exceeds the constitutional minimum." Id. This objection is predicated entirely on arguments raised in their termination motion, which, as noted above, has been denied. As an objection to the Report, it is overruled. Moreover, the court finds fully warranted the recommendation in the Report at bar and, with one exception[5], those contained in the Special Master's 2011 Suicide Report.[6] For the reasons set forth infra, the court now adopts all but one of those recommendations.[7] [8]

In accordance with the above, IT IS HEREBY ORDERED that:

1. Defendants' objections to the First Half 2012 Suicide Report are overruled;

2. Defendants' March 28, 2013 motion to strike or modify portions of the First Half 2012 Suicide Report (ECF No. 4527) is denied;

3. Defendants shall forthwith, under the supervision of the Special Master, establish a suicide prevention/management work group comprised of CDCR clinical, custody, and administrative staff, DSH staff, the Special Master's experts, plaintiffs' counsel and, as appropriate, the Plata Receiver to work under the guidance of the Special Master to timely

---

[5] The Special Master has informed the court that continued monitoring of referrals to higher levels of care is ongoing in connection with other remedial efforts, and that the recommendation concerning this monitoring need not be separately adopted.

[6] In its March 15, 2013 order, the court deferred adopting the recommendations contained in the 2011 Suicide Report pending resolution of defendants' termination motion. See Order filed March 15, 2013 (ECF No. 4394), at 14.

[7] The Special Master has also informed the court that integration of CDCR's suicide review process with the Plata Receiver's death review process is not appropriate at this time and he therefore recommends that his first recommendation be altered to include the Plata Receiver, as appropriate, in the suicide prevention/management work group but not to integrate the two processes. That will be the order of the court.

[8] To the extent that this order directs specific action by defendants or the Special Master it implements a remedy that has already been ordered by the court. For that reason, the court is not required to make the findings set forth in 18 U.S.C. § 3626(a)(1). The court does find that this order is necessary to full and adequate implementation of the remedy ordered in this action.

review suicide prevention measures, suicide deaths, and deaths deemed to be of undetermined cause;

       4. Defendants shall fully implement the Suicide Risk Evaluation (SRE) Mentor Program to improve levels of clinical competency in the administration of the SRE, and ongoing assessment of clinician training, performance, and supervision regarding suicide risk evaluations and management;

       5. The Special Master shall continue to monitor and assess the CDCR suicide review process and defendants' compliance with the Program Guide, Chapter 10, "Suicide Prevention", including conduct of five-day clinical follow-up, custody staff adherence to policies and procedures regarding conduct of custody welfare checks and others, and supervision of inmates, including those who are single-celled and have increased risk of suicide;

       6. The Special Master shall continue to monitor emergency response procedures, particularly in higher-custody housing such as administrative segregation, secured housing units, and psychiatric services units, and establishment of state-wide criteria to improve emergency cell entry and extraction procedures; and

       7. Defendants shall include in CDCR's reporting on its secure website all documentation referenced within CDCR's own suicide reporting, including but not limited to policies, post orders, DOM sections, local operating procedures, and any other documents referenced in CDCR's suicide reports.

DATED: July 12, 2013.

                                  /s/ Lawrence K. Karlton
                                  LAWRENCE K. KARLTON
                                  SENIOR JUDGE
                                  UNITED STATES DISTRICT COURT