KAMALA D. HARRIS
Attorney General of the State of California
JONATHAN L. WOLFF
Senior Assistant Attorney General
JAY C. RUSSELL
Supervising Deputy Attorney General
DEBBIE VOROUS - 166884
PATRICK McKINNEY - 215228
Deputy Attorneys General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA  94102-7004
Telephone:  (415) 703-5500
Facsimile:  (415) 703-5843
Email:  Patrick.McKinney@doj.ca.gov

HANSON BRIDGETT LLP
JERROLD C. SCHAEFER - 39374
PAUL B. MELLO - 179755
WALTER R. SCHNEIDER - 173113
SAMANTHA D. WOLFF -  240280
425 Market Street, 26th Floor
San Francisco, California 94105
Telephone:   (415) 777--3200
Facsimile:    (415) 541-9366
pmello@hansonbridgett.com

Attorneys for Defendants

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

## AND THE NORTHERN DISTRICT OF CALIFORNIA

## UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

## PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| RALPH COLEMAN, et. al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>EDMUND G. BROWN, JR., et al.,<br><br>    Defendants. | CASE NO. 2:90-cv-00520 LKK JFM P<br><br>**THREE-JUDGE COURT** |
| MARCIANO PLATA, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>EDMUND G. BROWN, JR., et al.,<br><br>    Defendants. | CASE NO. C01-1351 TEH<br><br>**THREE-JUDGE COURT**<br><br>**DECLARATION OF JENNIFER SHAFFER IN SUPPORT OF DEFENDANTS' JULY 18, 2013 STATUS REPORT** |

I, Jennifer Shaffer, declare:

1. I am the Executive Officer of the Board of Parole Hearings (BPH or the Board) within the California Department of Corrections and Rehabilitation. I have held this position since June 2011 when I was appointed by Governor Brown.

2. Prior to becoming the Board's Executive Officer, I served as the Board's Chief of Hearing Operations for the Northern Region of California. Previously, I served in the Bureau of Independent Review with the Office of the Inspector General, as special assistant inspector general from 2006 to 2008 and then as senior assistant inspector general from 2008 to January 2011.

3. I am competent to testify to the matters set forth in this declaration, and if called upon to do so, I would and could so testify. I submit this declaration in support of Defendants' July 18, 2013 Status Report.

4. As Executive Officer, I am the administrative head of the Board. I am responsible for managing the Board's daily operations and implementing policy. Having worked for the Board since 2011, I am familiar with the parole suitability hearing process. I am also familiar with the Court's April 11, 2013 Order requiring Defendants to implement a parole process for low-risk elderly inmates and to expand the existing medical parole process.

<u>Medical Parole</u>

5. The existing process for medical parole begins at the Receiver's office where inmates are medically evaluated for eligibility. Inmates eligible for consideration of medical parole under existing law are those who are permanently medically incapacitated with a medical condition that renders them permanently unable to perform activities of basic daily living and results in the inmate requiring 24-hour care. (Pen. Code, § 3550(a).)

6. Once the Receiver's office determines an inmate's medical eligibility, the case is referred to custody staff to verify the inmate is statutorily eligible for medical parole based on the inmate's commitment offense, etc. (15 CCR § 3359.1 et seq).

7. The Receiver's office is responsible for identifying suitable placement for the inmate in the community. (Id.) Once a location has been identified, the Division of Adult Parole Operations (DAPO) is responsible for reviewing and approving the placement plan. (Id.)

8. Once these steps are completed, the case is forwarded to the Board and a hearing is scheduled to "make an independent judgment regarding whether the conditions under which the inmate would be released would not reasonably pose a threat to public safety." (Pen Code, § 3550(g).)

9. The process for scheduling a medical parole hearing has several steps, including determining whether an inmate's medical information must be redacted (depending upon whether the inmate has waived his or her rights under the Health Insurance Portability and Accountability Act (HIPAA)), appointing an attorney to represent the inmate during the hearing (if they do not have private counsel), scheduling the hearing, providing the inmate with the opportunity to review his or her Central File, and sending notice of the hearing to all necessary parties.

10. After the hearing is held, the Board conducts an internal decision review process to ensure that the Board's parole decision is free from errors of law or fact. If the inmate is found suitable for parole, upon completion of the decision review process, the inmate will be transported for placement in the medical facility designated by the Receiver's office.

11. Under the Court Ordered Amended Plan, eligibility for medical parole will be expanded to include inmates who suffer from a significant and permanent condition, disease, or syndrome resulting in the prisoner being physically or cognitively debilitated or incapacitated.

12. Unlike existing medical parole, inmates who do not need 24-hour care will now be eligible for medical parole. As a result, the process for developing and verifying parole plans for individuals who may be released to private residences or facilities not contracted with the Receiver's office have to be designed and implemented.

13. The Board has identified additional hearing capacity and can immediately schedule hearings once the Receiver's office has identified inmates meeting the expanded medical eligibility criteria and parole plans have been developed and verified.

### Elderly Parole

14. To implement an elderly parole process, eligible inmates will need to be identified. Pursuant to the Court Ordered Amended Plan, inmates who are 60 years of age or older, have served at least 25 years of actual custody, and are not serving a condemned sentence or term of life without the possibility of parole will be eligible for consideration of release on elder parole.

15. Upon determination of eligibility, DAPO will assist in developing parole plans for the individual, if necessary, and the inmate will be referred to the Board for a parole suitability hearing similar to hearings the Board currently conducts for life-term inmates. In order to determine if an inmate is suitable for parole, the Board conducts a parole suitability hearing with the inmate.

16. The Board relies on a variety of evidence to determine parole suitability, including a comprehensive risk assessment. The Board's comprehensive risk assessments are very different from the California Static Risk Assessment Instrument (CSRA) that is used by CDCR as a structured decision-making matrix for parole supervision. (See "Development of the California Static Risk Assessment Instrument (CSRA)," UC Irvine Center for Evidence-Based Corrections, Working Paper, Nov. 2009, p. 4.)

17. The Board does not consider CSRA scores when determining parole suitability for offenders who have committed the most serious of violent offenses, such as murder and rape, and who have been incarcerated for decades.

18. While the CSRA has been validated on CDCR parolees who served relatively short terms and has moderate predictability for the purposes for which it was developed, its actuarial development did not include indeterminately sentenced long-term inmates.

19. The CSRA is based on static factors readily available in electronic form, such as age, gender, arrests, and convictions, and is, therefore, convenient and relatively efficient to use on large populations. It does not, however, take into account dynamic factors, such as institutional behavior, responsiveness to rehabilitative programming, personality characteristics, symptoms of mental disorders, capacity for insight and remorse, evidence of impulsive behavior, ability to cope with stress, and other future risk management considerations.

20. In addition, the CSRA does not take into account early onset of criminality, a significant risk factor when determining future violence and a factor the developers of the CSRA acknowledged would improve the CSRA's predictability. (Page 11 of the 2009 UC Irvine Working Paper). Applying the CSRA to long-term offenders convicted of violent crimes is likely to result in inaccurate risk assessments.

21. In contrast, the Board uses a structured professional judgment model of risk assessment. The Board employs 30 clinical forensic psychologists who conduct comprehensive risk assessments. The Board's comprehensive risk assessment process involves a clinical interview of the inmate, a full review of the inmate's central file and medical file, and use of instruments empirically supported and widely used to assess risk, including the HCR-20, LSCMI, PCLR, and the static-99R (when applicable). These comprehensive risk assessment tools consider a variety of static factors, including early onset of criminality as well as dynamic factors that are highly probative of current dangerousness, such as recent institutional misconduct reflecting non-compliance with correctional intervention and lack of impulse control. The Board's clinical forensic psychologists administer these tools and provide an overall risk assessment for each inmate based on all relevant information.

22. The Board has worked with its Forensic Assessment Division to identify additional capacity to conduct comprehensive risk assessments once inmates eligible for elderly parole have been identified and referred to the Board for suitability hearings.

23. Once a case has been referred to the Board for a suitability hearing, the

1  Board will schedule the comprehensive risk assessment, appoint the inmate an attorney
2  (if they do not have private counsel), schedule the hearing, provide the inmate with the
3  opportunity to review his or her Central File, and send notice of the hearing to all
4  necessary parties.

5    24.    After the Board reaches its decision at hearing, the decision will be
6  reviewed and finalized.

7    I declare under penalty of perjury under the laws of the State of California that the
8  foregoing is true and correct. Executed in Sacramento, California on July 18, 2013.

                                                                  /s/ Jennifer Shaffer*
                                                                  JENNIFER SHAFFER

*Original signature retained by counsel*