# Exhibit 6

**Robert A. Barton**
**Inspector General**

# Office of the Inspector General

# SEMI-ANNUAL REPORT

# July – December 2012

## Volume II



**April 2013**

**Fairness ◆ Integrity ◆ Respect ◆**
**Service ◆ Transparency**

# TABLE OF CONTENTS

## VOLUME II

**SUMMARY OF OTHER MONITORING ACTIVITIES** ...........……………………………..191

**MONITORING CRITICAL INCIDENTS** ...................................................................... **192**

   *Monitoring Deadly Force Incidents* ...................................................................... **194**

**MONITORING USE OF FORCE** ............................................................................... **196**

**MONITORING CONTRABAND SURVEILLANCE WATCH** .................................. **198**

**CONCLUSION** ......................................................................................................... **202**

**APPENDICES** ......................................................................................................... **205**

   (LISTED BY GEOGRAPHICAL REGION)

   *D – Critical Incident Case Summaries* ............................................................ **206**

   *E – Deadly Force Incident Case Summaries* ................................................... **232**

   *F – Contraband Surveillance Watch Case Summaries* .................................... **250**

# SUMMARY OF OTHER MONITORING ACTIVITIES

In addition to our monitoring of the California Department of Corrections and Rehabilitation's (CDCR or department) employee discipline process as reported in Volume I, the Office of the Inspector General (OIG) also monitors critical incidents, use of force, and contraband surveillance watch within CDCR. We are now reporting the results of each of these monitoring activities in this volume of our Semi-Annual Report. This will not only reduce the overall number of reports being published and improve efficiency, but also give the reader a wider view of CDCR-monitored activities in one place. Volume II reports on these other monitoring activities for the time period of July through December 2012.

Historically, the OIG has maintained a 24-hour, seven days per week response capability for any critical incident occurring within the prison system. The OIG staff responds on-scene (when timely notified) to assess the department's handling of incidents that have a high risk for the state, staff, or inmates. The factors leading up to each incident, the department's response to the incident, and the outcome of the incident are all assessed and reported; then, recommendations are made by the OIG. To provide transparency into the incidents, these cases are reported in Appendix D.

The highest monitoring priority among critical incidents is the use of deadly force. For this reason, these cases are reported separately and processed by the department and the OIG with a higher level of scrutiny. That scrutiny includes both a criminal and administrative investigation being opened automatically by CDCR's Office of Internal Affairs' (OIA) Deadly Force Investigation Team (DFIT), which are monitored by the OIG due to the seriousness of the event, but not necessarily because misconduct is suspected. The department takes a narrower view than the OIG on what incidents of deadly force require a DFIT response, and when to launch a DFIT response may also be limited by legitimate budgetary constraints.

The OIG has also historically monitored and reported on use-of-force incidents and CDCR's subsequent review process. In the past, use-of-force assessments were published in a stand-alone report. Since the use-of-force monitoring cycle mirrors our other six-month monitoring time-frames, we will now be incorporating our assessments in Volume II of the Semi-Annual Report. Noted above, deadly force incidents are also categorized as "critical incidents" and are reported separately in Appendix E.

Finally, the reader will find our first report on the Legislature's request that the OIG monitor the department's use of contraband surveillance watch (CSW). These cases are contained in Appendix F.

# MONITORING CRITICAL INCIDENTS

The department is required to notify the OIG of all critical incidents immediately following the event. Critical incidents include serious events that require an immediate response by the department, such as riots, homicides, escapes, uses of deadly force, and unexpected inmate deaths. The following critical incidents require OIG notification:

## Critical Incidents Defined

1. Any use of deadly force, including warning shots;
2. Any on-duty death of a department staff member;
3. Any off-duty death of a department staff member when the death has a nexus to the employee's duties at the department;
4. Any death or any serious injury that creates a substantial risk of death to a department staff member or an individual in the custody or control of the department,[1] excluding lawful executions;
5. Any suicide by an adult individual in the custody or control of the department and any suicide or attempted suicide by a juvenile ward in the custody or control of the department;
6. All allegations of rape or sexual assault as defined by the Prison Rape Elimination Act made by an individual in the legal custody or physical control of the department, including alleged staff involvement;
7. Any time an inmate is placed on or removed from Contraband Surveillance Watch;
8. Any riot or disturbance within an institution or facility that requires a significant number of department staff to respond or mutual aid from an outside law enforcement agency;
9. Any incident of notoriety or significant interest to the public; and
10. Any other significant incident identified by the OIG after proper notification to the department.

The OIG maintains a 24-hour contact number to receive notifications. After notification, the OIG monitors the department's management of the incident, either by responding to the site of the incident or by obtaining the incident reports and following up on-scene at a later time. More specifically, we evaluate what caused the incident and the department's immediate response to the incident. The OIG may make recommendations as a result of our review regarding training, policy, or referral for further investigation of potential negligence or misconduct. If we believe the incident should be referred to the OIA, the OIA's decision regarding any referral is also monitored. If the matter is opened for an investigation, the OIG may monitor the ensuing investigation.

During the reporting period, the OIG completed assessments of 68 critical incidents (Appendix D). Four of these incidents were referred to the OIA for potential investigation. It is important to note that the number of critical incidents within any period is dependent upon the events taking

---

[1] As used herein, an individual within the custody and control of the department does not include parolees.

place within the department. Our reports do not directly correlate to incidents that occurred during these time frames, but rather reflect the number of incidents the OIG has closed out and assessed for the time period. Additionally, in order for the OIG to monitor an incident on-scene, the OIG relies on the department to provide timely notification that a critical incident has occurred. However, even when notification is untimely, the OIG may still remotely monitor the event by collection of reports and follow-up review.

The total number of monitored critical incidents that were closed and reported each year by the OIG is displayed in the following chart. It does not directly reflect the exact number of incidents occurring during each period, because the OIG does not report incidents until our final assessment is completed. Some incidents may take longer than others to be resolved.

For cases reported during this period, the department failed to provide required timely notification for 10 percent of the critical incidents. The percentage of delayed notifications is less than the prior reporting period, yet still indicates an area where improvement is needed. Delays in notification impact the OIG's ability to provide real-time, on-site monitoring for critical incidents.

The OIG also monitors critical incidents as they occur in the juvenile system. During this reporting period there were only two critical incidents reported at juvenile facilities, and no deadly force was employed in juvenile facilities during this reporting period.

**Chart 4: Monitored Critical Incidents Closed by the OIG each Reporting Period**



**Chart 5: Types of Critical Incidents Comparison**

| | In-Custody Inmate Death | Great Bodily Injury to Inmate | Inmate or Ward Suicide | Other Significant Incident | Hunger Strike | Inmate Riot | Inmate Sexual Assualt |
|---|---|---|---|---|---|---|---|
| July-December 2012 | 23 | 22 | 10 | 6 | 0 | 2 | 5 |
| January - June 2012 | 29 | 18 | 10 | 6 | 2 | 1 | 1 |

## MONITORING DEADLY FORCE INCIDENTS

Deadly force incidents are a sub-type of both critical incidents and use-of-force reviews monitored by the OIG. They automatically result in both an administrative and criminal investigation if the OIA chooses to conduct a deadly force investigation, with the only exception being when the force occurs outside the prison and an outside law enforcement agency conducts the criminal investigation. The OIG has reorganized this report to include an additional appendix containing each use of deadly force case that we closed in this reporting period, regardless of whether there was OIA involvement.

Any time department staff use deadly force, the department is required to promptly notify the OIG. When timely notice of a deadly force incident is received, OIG staff immediately responds to the incident scene to evaluate the department's management of the incident and the department's subsequent deadly force investigations, if initiated.

Department policy requires criminal and administrative investigations to be immediately conducted on all deadly force incidents. These investigations are conducted by an OIA Deadly Force Investigation Team. However, the OIG has a more expansive definition than the department of what constitutes when a DFIT should be tasked to investigate a deadly force incident. The OIG monitors any intentional application of deadly force including the use of batons or less-lethal weapons used in a lethal manner - for example, when a baton or 40mm round strikes an inmate's head. Non-intentional head strikes and warning shots are also monitored by the OIG as deadly force incidents due to the potential for death. In cases where warning shots are discharged, the OIG believes a more formal determination of the justification

for use of deadly force should be made. The requirements for the employment of deadly force must still be present even if the officer only intends a "warning shot." For example, a warning shot may still be a reckless discharge of a firearm if there was no justification to use deadly force in the first place or it is done in an unsafe manner. The department maintains that warning shots do not require on-scene response and can be monitored by remote assessment, which is the general practice largely due to budget issues that limit resources. The OIG believes on-scene response is an essential element of our oversight role and will continue responding to critical incidents involving warning shots and all potentially deadly uses of force whenever feasible. The nature of the act warrants additional scrutiny and review regardless of whether any misconduct is suspected, or whether the ultimate result of the force is an actual death.

The OIG also participates as a non-voting member of the department's Deadly Force Review Board (DFRB). The DFRB review occurs in those cases where OIA utilizes a DFIT. The DFRB is an independent body comprised of outside law enforcement experts and one CDCR executive officer. Generally, after the administrative investigation is complete, the investigative report is presented to the DFRB. The DFRB examines the incident to determine the extent to which the use of force complied with departmental policies and procedures, and to determine the need for modifications to CDCR policy, training, or equipment. The DFRB's findings are presented to the CDCR Undersecretary of Operations who determines whether further action is needed.

Because the use of deadly force has such serious implications, the department's use of deadly force has always received the highest level of scrutiny. The OIG monitored 29 deadly force incidents that concluded during this reporting period. The incidents ranged from unintentional head-strikes, to warning shots, to intentional use of lethal weapons.

The OIA responded with a DFIT in 5 of the 29 cases. Two of the cases involved mini-14 rifles fired intentionally to save an inmate from lethal attack by other inmates. The third case involved 12 rounds from a mini-14 rifle fired as warning shots to stop a major riot and prevent deadly attacks by inmates upon other inmates. The fourth case involved an officer firing a 40mm less-lethal round which unintentionally struck an inmate in the head causing great bodily injury. These cases went to the DFRB and the force used was found to be in compliance with departmental policy.

In the fifth case involving DFIT there was an anomaly because it did not go to the DFRB. It involved shots fired from a mini-14 rifle and an unintentional headshot with a less-lethal 40mm round, requiring treatment at an outside hospital. Initially, the OIA responded with a DFIT, but after concluding the mini-14 rounds were actually warning shots, and the inmate shot in the head with the 40mm round did not sustain life threatening injuries, the case was not forwarded to the DFRB but went through the institution's regular use-of-force review.

The remaining 24 incidents that the OIA did not respond to with a DFIT were all monitored by the OIG as deadly force incidents. One of those was also an anomaly. It involved a parole agent who discharged his weapon at an aggressive dog. There was no formal DFIT response to the shooting, but the department did investigate and the case was presented to the DFRB who found the shooting was within policy. Historically, only cases investigated by a DFIT went to the

DFRB. The 23 other OIG-monitored incidents included one case where a lethal weapon was accidentally discharged by a parole agent. The case was investigated by outside law enforcement and it was not submitted to the DFRB for review. There were two cases where a baton strike by an officer using less-lethal force inadvertently struck an inmate in the head requiring outside hospital treatment.

There were 11 cases where warning shots were discharged from mini-14 rifles. The department's stated practice is to not respond to warning shots due to resource limitations, but rather request reports from the institution to review the incidents. The OIG responds on scene whenever feasible and if we believe there is an issue with the shooting we can, and have, requested OIA to respond. Warning shots are typically reviewed in the normal use-of-force reviews at each institution, which the OIG also monitors.

The remaining nine potentially deadly force incidents all involved the use of 40mm less-lethal direct impact rounds being fired at an authorized target zone, but either due to inmate movement or ricochet of the round, resulted in an unintentional strike to the head. In one of these cases, inmates were treated at the institution with minor injury. In the other eight, the inmates were sent to outside hospitals with injuries ranging from sutures to head wounds, swelling, potential concussions, a broken jaw, CT scans, a broken orbital socket, and vision loss.

These cases are all reported in Appendix E.

## MONITORING USE OF FORCE

The department is tasked with maintaining the safety and security of staff members, inmates, visitors, and the public. At times, this responsibility requires the use of force by peace officers. In doing so, officers are authorized to use "reasonable force," defined as "the force that an objective, trained, and competent correctional employee, faced with similar facts and circumstances, would consider necessary and reasonable to subdue an attacker, overcome resistance, effect custody, or gain compliance with a lawful order." The use of greater force than justified by this standard is deemed "excessive force," while using any force not required or appropriate in the circumstances is "unnecessary force." Both unauthorized types of force are categorized as "unreasonable."

Departmental policy requires that, whenever possible, verbal persuasion or orders be attempted before resorting to force. In situations where verbal persuasion fails to achieve desired results, a variety of force options are available. The department's policy does not require these options be employed in any predetermined sequence. Rather, officers select the force option they reasonably believe is necessary to stop the perceived threat.

Per departmental policy, use-of-force options include, but are not limited to, the following:

a) Chemical agents such as pepper spray and tear gas,

b) Hand-held batons,

c) Physical force such as control holds and controlled take downs,

d) Less-lethal weapons (weapons not likely to cause death).

> Examples include a 37mm or 40mm launcher used to fire rubber, foam, or wooden projectiles, and electronic control devices (pilot program utilized by the Division of Adult Parole), and

e) Lethal (deadly) force. This includes any use of force that is likely to result in death, and any discharge of a firearm (other than during weapons training).

Any department employee who uses force, or who observes another employee use force, is required to report the incident to a supervisor and submit a written report prior to being released from duty. After the report is submitted, a multi-tiered review process begins.
The OIG also provides oversight and makes recommendations to the department in their development of new use-of-force policies and procedures.

When appropriate, the OIG recommends an incident be referred to CDCR's Office of Internal Affairs for investigation (or approval to take disciplinary action based on the information already available). In the event the OIG does not concur with the decision made by the local hiring authority (i.e. the warden or parole administrator), the OIG may confer with higher-level department managers.

Previously, the OIG has reported the monitoring of use of force in a stand-alone report. However, starting with this report, use-of-force monitoring will be included in Volume II of our Semi-Annual Reports. The time period covered in this report is from July 1, 2012, through December 31, 2012. During this time frame the OIG suspended its structured paper reviews of use-of-force incidents. This was done to allow the department time to develop their proposal to incorporate a streamlined assessment of low level, non-problematic incidences of force. The OIG previously recommended they adopt this proposal to allow for more time to be spent on the more serious incidents of use of force, and to allow those institutions with high numbers of incidents to be timelier in their reviews. The OIG collaborated with the department to define the new process and provide transparency. The OIG staff continues to attend use-of-force committee meetings each month at each prison, each juvenile facility, and each parole region.

Specifically, the OIG attended 293 use-of-force meetings where a total of 1,575 incidents were evaluated. Generally, each committee meeting evaluates 5 to 15 incidents involving force. The OIG also evaluates all departmental reviews completed prior to the meeting. During the meeting, the OIG observes the review process and engages in contemporaneous oversight by raising concerns about the incidents when appropriate, asking for clarifications if reports are inconsistent or incomplete, and engaging in discussions with the committee about the incidents. Through this process, the OIG draws an independent conclusion about whether the force used was in compliance with policies, procedures, and applicable laws and whether the review process was thorough and meaningful.

During this reporting period, the OIG made 164 recommendations for training, adverse action, additional factual clarifications, or policy development that impacted the department's decisions in individual cases. In the cases reviewed, the department found the actual force used was within

policy 97 percent of the time at adult institutions, 98 percent of the time within the juvenile facilities, and 100 percent of the time within parole.

In 96 percent of adult institution monitored cases, the OIG concurred with the use-of-force committee decisions. In 100 percent of the juvenile facility monitored cases, the OIG concurred with the use-of-force committee decisions. In 84 percent of parole cases, the OIG agreed with the use-of-force committee decisions. These numbers are consistent with prior reporting periods and show that of cases that are fully prepared for review, the department has a high rate of policy adherence for actual force used. As noted in previous reports, the department has struggled with timeliness, thorough evaluations, and fact gathering by first and second level reviewers. In this reporting period, 17 percent of adult institution cases, 5 percent of juvenile facility cases, and 11 percent of parole cases had to be deferred because they were not ready for complete review when they were brought to the use-of-force committee. This indicates an ongoing challenge for the department that will likely improve once the aforementioned streamlined assessment process scheduled to be piloted at select prisons within the three regions of the state, based upon recommendations made in our last two use-of-force reports, is fully implemented. Once the streamlined assessment process is fully developed and piloted, the OIG will monitor and report on its progress in the next Semi-Annual Report.

## MONITORING CONTRABAND SURVEILLANCE WATCH

In 2012, citing concerns that CDCR's contraband surveillance watch process was being applied improperly and inconsistently, the Legislature requested the OIG develop a CSW monitoring program. Contraband surveillance watch is a significant budget driver for CDCR because it requires additional staffing for the one-on-one observations. Additionally, CSW can subject the state to significant liability if abuses occur or contraband surveillance watch is imposed punitively. In March 2012, the OIG began a four-month pilot program to develop a method to monitor CDCR's contraband surveillance watch process. Beginning July 1, 2012, the OIG began its formal monitoring of the department's CSW process.

The CDCR notifies the OIG when an inmate is placed on contraband surveillance watch. The OIG collects all relevant data, including the name of the inmate, the reason the inmate was placed on contraband surveillance watch, what contraband is actually found, and the dates that the inmate was placed on and taken off CSW. The OIG formally monitors and reports only on those incidents where the inmate is kept on CSW longer than 72 hours, or any time there is a significant medical problem while the inmate is on CSW. For those incidents where contraband surveillance watch extends beyond 72 hours or there is a significant medical issue, the OIG goes on-scene to inspect the condition of the inmate and ensure that the department is following its policies. The OIG responds on-scene after 72 hours due to resource limitations and our assessment that the risk to the inmate is substantially less prior to 72 hours. This on-scene response is repeated every 72 hours until the inmate is removed from CSW. Serious breaches of policy are immediately discussed with institution managers while on scene.

This report is the first OIG report on contraband surveillance watch. During the July 1, 2012, through December 31, 2012, reporting period, the OIG was notified of 263 CSW incidents. Of the 263 CSW incidents, inmates were kept on CSW longer than 72 hours in 89 incidents. This report covers the 89 incidents that extended beyond 72 hours. There were no incidents during this reporting period where the OIG went on-scene as a result of medical concerns.



Overall, contraband was found in 30 percent of CSW cases.



As previously noted, our report only covers in detail those CSW cases that extend beyond 72 hours. Because this is the first time the OIG has reported on contraband surveillance watch, no conclusions are drawn and no trends are identified regarding the department's CSW policy. We note that there were minor irregularities in some of the cases that we reported, including one case

which was referred to the Office of Internal Affairs for investigation of administrative misconduct (neglect of duty); however, we found no major misconduct. We also note that in almost half of the incidents reported (44 of the 89), no contraband was found; however, the statistical sample is so small that no firm conclusion can be drawn. The rate for contraband recovery is greater for those cases where the inmate is on CSW longer than 72 hours. As we continue monitoring, we anticipate being able to examine trends and make recommendations.



Chart 8: Contraband Type and Frequency in Monitored Cases

| | Drugs | Inmate Note | Weapon | Other Contraband | Tobacco |
|---|---|---|---|---|---|
| Contraband Type and Frequency | 43.4% | 24.5% | 15.1% | 13.2% | 3.8% |

### Chart 9: CSW Cases by Institution July-December 2012 [2]

| | CAL | CCC | CCI | CEN | CIM | CMC | COR | CRC | CTF | CVSP | DVI | FSP | HDSP | ISP | KVSP | LAC | MCSP | NKSP | PBSP | PVSP | RJD | SAC | SATF | SCC | SOL | SQ | SVSP | VSPW | WSP | Total CSW Cases | Total Monitored Cases |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Number of CSW Incidents by Institution | 6 | 39 | 5 | 18 | 5 | 1 | 16 | 6 | 1 | 2 | 1 | 10 | 4 | 5 | 19 | 7 | 2 | 2 | 14 | 11 | 5 | 1 | 12 | 3 | 17 | 5 | 25 | 6 | 15 | 263 | 89 |
| **Duration** | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| 71 Hours or less | 5 | 29 | 3 | 12 | 3 | | 9 | 4 | 1 | 1 | 1 | 8 | 2 | 5 | 12 | 7 | 1 | 1 | 9 | 7 | 3 | 1 | 10 | 2 | 7 | 1 | 16 | 3 | 11 | 174 | Contraband Recovered: 79 Cases = 46% |
| >=72 Hours | 1 | 10 | 2 | 6 | 2 | 1 | 7 | 2 | | 1 | | 2 | 2 | | 7 | | 1 | 1 | 5 | 4 | 2 | | 2 | 1 | 10 | 4 | 9 | 3 | 4 | 89 | Contraband Recovered: 45 Cases = 51% |
| >=144 Hours | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | 0 | |
| >=216 Hours | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | 0 | |



**Chart 9: Total Contraband Found in Monitored Cases**

Total CSW Monitored Cases: **89**

51% — Total Cases Contraband Found: 45

49% — Total Cases No Contraband Found: 44

The OIG shares the department's concern that the introduction of drugs or weapons into the institution jeopardizes the safety and security of inmates and staff. The OIG monitoring program provides transparency and reports the department's adherence to its policies and procedures. The OIG found no abuses in the placement of inmates on CSW during this reporting period.

No CSW incidents occurred at ASP, CIW, CMF, or PVSP this reporting period.

# CONCLUSION

The goal of publishing our Semi-Annual Report in two volumes was to allow the reader to focus on specific areas of monitoring conducted by the OIG, in addition to our monitoring the internal affairs discipline process. All areas of monitoring require transparent oversight in order to ensure: public trust, proper adherence to policy, best practices, and accountability to the taxpayer. In all of our monitoring activities we work with the department to alert them to potential risks or problem areas, and make recommendations for improvement. It is our goal that our monitoring will help avoid potential abuse, costly litigation, and expensive federal oversight.

Critical incidents as described within our report have the potential for serious consequences for staff, inmates, and the taxpayers at large. As such, our oversight provides independent assessment on how the incidents occur, how they are handled, the outcomes; and recommendations to avoid or mitigate similar incidents in the future. We assessed the department on the 68 critical incidents we monitored. There were only eight insufficient ratings overall. Many of the insufficient assessments are based on the department's failure to adequately notify the OIG, thus preventing us from performing our oversight role. As indicated, the frequency of insufficient notification has reduced from our last report but is still at approximately 10 percent. The department is doing a better job in responding to incidents and taking appropriate action in the aftermath of critical incidents. There was one insufficiency based upon potential lack of proper documentation, and one for potential failure to properly preserve evidence. Otherwise, the department's assessment for this reporting period was the best thus far in our monitoring of critical incidents.

As described within our report, we now separate out deadly force incidents in their own appendix. The OIG recommends that any intentional discharge of a lethal weapon (such as a mini-14 rifle or a handgun issued to a department employee for use on the job) require a DFIT response and DFRB review. The OIG and the department, however, disagree on warning shots fired in institutions and some accidental discharges that occur outside of prisons. This reporting period shows the inconsistency in CDCR's practices in this area. For example, there were 11 warning shot cases that did not have a DFIT response, but one warning shot that did have a DFIT response and subsequent DFRB review. There was yet another case where the OIA responded with a DFIT only to abandon it upon making a determination the case involved warning shots, despite an inmate being taken to an outside hospital with head injuries. The department also conducted an investigation of a parole agent who shot at an aggressive dog and sent that case for DFRB review (without a DFIT response), but did not respond with a DFIT or DFRB review on a case involving a parole agent accidentally discharging his duty weapon, striking a neighbor's house. It is unclear to the OIG, and at times the OIA staff, which incidents the department require DFIT response. The best practice would have been to respond with a DFIT in all of the above cases. The department cites budgetary constraints that limit their ability to send a DFIT to locations throughout the state, especially on warning shots, which can be frequent. The OIG understands that fiscal constraints must to be considered, so we have agreed that when we respond to a warning shot case, if our monitors believe there is something out of the ordinary to

indicate potential misconduct or negligence, we notify the department and recommend a response, notwithstanding fiscal constraints.

The OIG has also discussed with the department the level of scrutiny needed when unconventional deadly force is used (such as an intentional blow to the head from a baton or 40mm round). Certain weapons are classified as less-lethal and training is provided to officers indicating target zones on the human body to reduce the likelihood of inflicting deadly force. However, there are times when such weapons are <u>intentionally</u> used in a lethal manner to prevent the death of an inmate or staff-member. The OIG contends that any intentional blow to the head, even if it does not result in serious injury, is still potentially out of policy and potentially a crime if there is no justification to use deadly force. While no such incidents occurred during this reporting period, they have occurred in the past with mixed response from the department.

There are also times that weapons <u>unintentionally</u> strike a potentially lethal zone on a person, such as the head. In this report there were two such instances involving batons, both requiring ten or more sutures to head wounds, and nine cases involving less-lethal rounds that struck inmates in the head sending them to outside hospitals for various degrees of injury, with one exception. In the past, these incidents only received a deadly force investigation if the inmate actually died from being struck in the head or was injured so severely that there was a substantial risk of death. In this report, one of the incidents that the DFIT handled and presented to the DFRB involved those same facts. In that case, the department determined that the inmate had great bodily injury, and thus merited the higher scrutiny, yet other cases where the injury could have been deemed just as serious were not investigated by a DFIT or presented to the DFRB.

We recommend any case where potential deadly force is unintentionally applied, but could potentially cause death or serious injury, receive a deadly force investigation. Again, the department cites lack of resources for their practice of using the inmate's injury report as the determinative factor. Unfortunately, the seriousness of head injuries is not always immediately apparent. The serious consequence to human life as well as the liability exposure to the state should require DFITs for all such cases; however, the OIG recognizes the department's resources may be inadequate to investigate all these cases. In this report, excluding the case where serious injury was ruled out by medical staff at the institution, the department would only have had to conduct eight additional DFIT investigations. We encourage the department to provide the needed resources to meet this recommendation.

The use of force for this time-frame has been reported in a general manner without specific appendices. As discussed, the OIG has focused efforts on assisting the department in the development of a streamlined use-of-force review process. We continued our use-of-force monitoring, and attended 293 committee reviews and reviewed 1,575 use-of-force incidents.

From these reviews and prior reports, it is apparent that the department has several institutions failing to make timely reviews due to the sheer volume of cases. Additionally, cases requiring more time for evaluation or more detailed assessment are being prematurely passed on at lower review levels perhaps to meet deadlines. Many cases arrive at committee only to be deferred (17 percent in adult institutions, 5 percent in juvenile facilities, and 11 percent in parole); possibly

due to mandates requiring a review within 30 days. The OIG determined at the outset of our use-of-force monitoring that reviews are meaningless in cases that lacked the proper preparation.

The OIG has yet to draw firm conclusions regarding CDCR's administration of contraband surveillance watch. Lengthy applications of CSW and medical crises were concerns prompting our monitoring. However, during this reporting period, there were no instances where an inmate was kept on contraband surveillance watch longer than six days and we found no instances where the contraband surveillance watch precipitated a medical crisis.

While we monitor contraband surveillance watch cases that extend longer than 72 hours, the department is required to provide us with notification any time an inmate is placed on CSW. Although no firm conclusions can be drawn regarding the efficacy of the contraband surveillance watch program at this time, we do note that nearly half the time no contraband was found. We will be analyzing this issue in more detail during the next reporting period and making recommendations if appropriate.

Oversight is a critical element for transparency of the California corrections system; and as this Semi-Annual Report reflects, the OIG continues to provide recommendations to the department and, as a result, their processes continue to improve. The OIG is committed to our monitoring in the vital areas of critical incidents, use of force, and contraband surveillance watch; and as always, will seek to be value-added to the correctional system and the people of California.

# APPENDICES

**Appendix D** contains the assessments for 68 critical incidents monitored during this reporting period, listed by geographical region.

**Appendix E** contains the assessments for 29 deadly force investigative case summaries monitored during the reporting period, listed by geographical region.

**Appendix F** contains the results and outcomes of 89 OIG-monitored contraband surveillance watch cases during the reporting period, listed by the date the inmate was placed on CSW.

# APPENDIX D                                                        68
# CRITICAL INCIDENT CASE SUMMARIES
## CENTRAL REGION

| Incident Date | OIG Case Number | Case Type |
|---|---|---|
| **2011-07-30** | **11-2565-RO** | **Inmate Serious/Great Bodily Injury** |

### Incident Summary
On July 30, 2011, an inmate resisted officers and a sergeant as they attempted to obtain his identification and search him. Physical force was used on the inmate to place him in restraints after verbal orders were ignored. The inmate continued to resist until a bone in his left arm broke. A spit mask was applied after the inmate threatened to spit at the officers. The inmate was transported to a local hospital for treatment and returned to the institution. One officer sustained a scrape to his elbow during the incident.

### Disposition
The institution's executive review committee determined the use of force was in compliance with the department's use-of-force policy and the OIG concurred. No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

### Overall Assessment                                    Rating: **Sufficient**
Although the department failed to timely notify the OIG about the incident, the department's response to the incident was otherwise sufficient. The OIG agreed with the decision not to submit the matter to the Office of Internal Affairs.

| Incident Date | OIG Case Number | Case Type |
|---|---|---|
| **2011-08-24** | **11-2277-RO** | **Inmate Serious/Great Bodily Injury** |

### Incident Summary
On August 24, 2011, an officer saw two inmates attacking a third inmate with inmate-manufactured weapons. Custody staff announced an alarm via the institutional radio and responding officers ordered the two attackers to stop; however, they continued to chase and stab the inmate as he tried to flee. The officers deployed two different chemical agent grenades stopping the attack. Custody staff recovered two inmate-manufactured weapons from the scene. The injured inmate received multiple stab wounds and was transported by ambulance to a local hospital for emergency medical treatment. The inmate was returned to the institution two days later and placed in administrative segregation pending investigation.

### Disposition
The institution's executive review committee determined that the force used to stop the attack was within policy and the OIG concurred. No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

### Overall Assessment                                    Rating: **Sufficient**
The OIG determined that the department adequately responded to the incident in all critical aspects. The department's notification and consultation to the OIG regarding the incident was sufficient. The OIG agreed with the hiring authority's decision not to refer the matter to the Office of Internal Affairs.

| Incident Date | OIG Case Number | Case Type |
|---|---|---|
| **2011-09-08** | **11-2273-RO** | **In-Custody Inmate Death** |

### Incident Summary
On September 8, 2011, while investigating unusual noises in an institution housing area, officers found an unresponsive inmate lying on his cell floor in a pool of blood. The officers ordered the cellmate to get down, but he refused. Officers then used pepper spray on the cellmate and removed him from the cell. The officers began life-saving measures on the unresponsive inmate until medical staff arrived and took over. The inmate was pronounced dead after life-saving measures failed.

# CENTRAL REGION

## Disposition

The coroner determined the cause of death was homicide from blood loss and lack of oxygen to the brain caused by a stab wound to the chest and ligature strangulation. The institution's executive review committee determined the use of force was not in full compliance with the department's use-of-force policy because the inmate was not decontaminated from the pepper spray. The committee noted that the reason officers refrained from decontaminating the inmate was to preserve evidence. The OIG agreed with the decision to preserve evidence by not allowing the inmate to shower after he was removed from the crime scene. No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

## Overall Assessment

**Rating: Sufficient**

The department's response was satisfactory in all critical aspects. The department's notification and consultation to the OIG regarding the incident was sufficient. The hiring authority chose not to refer the matter to the Office of Internal Affairs; the OIG concurred with this decision.

| Incident Date | OIG Case Number | Case Type |
|---|---|---|
| **2011-09-13** | **11-2301-RO** | **Inmate Serious/Great Bodily Injury** |

### Incident Summary

On September 13, 2011, officers responded to two inmates fighting in their cell. Upon arriving at the cell, the officers saw that one inmate had multiple stab wounds. The officers used pepper spray to stop the assault after their verbal orders were ignored. The injured inmate was removed from the cell, evaluated by medical staff, and then transported to a local hospital by ambulance for treatment of 19 stab wounds and a collapsed lung. Custody staff did not recover any weapons from the crime scene.

### Disposition

The institution's executive review committee determined that the use of force was within departmental policy; the OIG concurred. No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

### Overall Assessment

**Rating: Sufficient**

The OIG determined that the department adequately responded to the incident in all critical aspects. The department provided adequate notification and consultation to the OIG regarding the incident. The hiring authority chose not to refer the matter to the Office of Internal Affairs; the OIG concurred with this decision.

| Incident Date | OIG Case Number | Case Type |
|---|---|---|
| **2011-10-04** | **11-2505-RO** | **Inmate Serious/Great Bodily Injury** |

### Incident Summary

On October 4, 2011, three inmates attacked a fourth inmate on an exercise yard with inmate-manufactured weapons. Officers used less-lethal rounds and chemical grenades to stop the attack. The inmate's injuries consisted of ten stab wounds and two slash wounds. He was transported to a local hospital by ambulance and returned to the institution after four days in the hospital.

### Disposition

The institution's executive review committee determined that the force used to stop the attack was within policy and the OIG concurred. No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

### Overall Assessment

**Rating: Sufficient**

The department's overall response to the incident was adequate in all critical aspects. The department informed the OIG about the incident in a timely and sufficient manner. The OIG concurred with the hiring authority's decision not to refer the matter to the Office of Internal Affairs.

# CENTRAL REGION

| Incident Date | OIG Case Number | Case Type |
|---|---|---|
| **2011-10-09** | **11-2529-RO** | **Suicide** |

## Incident Summary

On October 9, 2011, an inmate was heard yelling "man down." Officers responded to the cell and discovered a second inmate sitting on the toilet with a noose tied around his neck. The noose had broken free from the ventilation system. Officers activated an alarm, and custody and medical staff arrived. Officers removed the first inmate from the cell. Medical staff removed the noose from the second inmate's neck and immediately started life-saving measures, which were unsuccessful. The inmate was pronounced dead at the scene.

## Disposition

The coroner determined the cause of death to be suicide by hanging. No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

## Overall Assessment                              Rating: **Insufficient**

The department's overall response to the incident was insufficient because of inadequate and inaccurate documentation. The department appropriately notified and consulted with the OIG on the incident. However, the hiring authority did not identify potential misconduct and, therefore, did not refer the matter to the Office of Internal Affairs. The OIG did not concur with this decision.

## Assessment Questions

- Was the critical incident adequately documented?

  *Medical staff failed to document their initial actions upon arriving at the scene.*

- Did the HA appropriately determine whether to refer any conduct to the OIA related to the critical incident?

  *Documentation indicated that the inmate was alive when there were signs of rigor mortis, indicating the inmate was already dead. Therefore, there was possible misconduct for inaccurate documentation and failing to conduct appropriate inmate checks.*

| Incident Date | OIG Case Number | Case Type |
|---|---|---|
| **2011-10-22** | **11-3136-RO** | **Inmate Serious/Great Bodily Injury** |

## Incident Summary

On October 22, 2011, a control booth officer observed two inmates striking a third inmate in a housing unit dayroom. The control booth officer fired a total of five less-lethal rounds attempting to stop the attack. One round struck an attacker in the back but the assault continued. Responding custody staff entered the dayroom and used pepper spray to stop the attack. An inmate-manufactured weapon was found on the floor. The injured inmate suffered eighteen stab wounds due to the attack and was transported to an outside hospital.

## Disposition

The institution's executive review committee received the clarification report and determined the use of force was in compliance with the department's use-of-force policy. The OIG concurred. No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

## Overall Assessment                              Rating: **Sufficient**

The department informed the OIG about the incident in a timely and sufficient manner. The OIG determined that the department's response was satisfactory except the control booth officer's report lacked an adequate description of the attack. The OIG attended the institution's executive review committee and requested clarification. The committee deferred their review and requested a clarification report from the officer. The hiring authority decided not to refer the matter to the Office of Internal Affairs, and the OIG agreed.

# CENTRAL REGION

| Incident Date | OIG Case Number | Case Type |
|---|---|---|
| **2011-12-07** | **11-3031-RO** | **Inmate Serious/Great Bodily Injury** |

## Incident Summary

On December 7, 2011, an inmate threw an unknown liquid through the food port of his cell and struck an officer and a nurse. Other officers responded and as the inmate was again preparing to throw liquid on them, the inmate was sprayed with pepper spray. Although one officer was able to place the inmate in handcuffs, the inmate pulled away from the officer's grasp, lunging back into the cell. The officer used physical force to regain control of the inmate and force him to a prone position. Due to the struggle, the officer fell on top of the inmate, with his knees on the inmate's torso. The inmate sustained five fractured ribs, a fractured shoulder, and a collapsed lung as a result of the incident. Medical staff did not determine that the inmate was seriously injured until the following day when he developed severe pain and difficulty breathing. The inmate was transported to a local hospital for treatment and returned to the institution after nine days. The inmate alleged that officers used unreasonable force, claiming he was repeatedly kicked in the head and beaten by officers.

## Disposition

The institution's executive review committee determined the inmate's allegation of unreasonable force was unsubstantiated and that the force used by officers was in compliance with departmental policies and procedures. The OIG concurred with the committee's conclusions. No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

## Overall Assessment

Rating: **Insufficient**

In general, the department's response was not adequate because the institution failed to timely inform the OIG of the incident when it was discovered the inmate had sustained serious bodily injury. The OIG agreed with the decision not to submit the matter to the Office of Internal Affairs.

## Assessment Questions

- Was the OIG promptly informed of the critical incident?

  *The incident occurred on December 7, 2011. However, the severity of the inmate's injuries was not confirmed until December 8, 2011, when the inmate was taken to an outside hospital due to pain to his ribs. At that time, it was confirmed that the inmate had fractured ribs, a fractured shoulder, and a collapsed lung. The OIG was notified on December 9, 2011.*

| Incident Date | OIG Case Number | Case Type |
|---|---|---|
| **2011-12-25** | **11-3150-RO** | **In-Custody Inmate Death** |

## Incident Summary

On December 25, 2011, an officer discovered an inmate unresponsive in the lower bunk of his cell while conducting the early morning institutional count. The inmate was covered with a blanket and had what appeared to be blood on an exposed arm. The officer radioed for an emergency response and the control officer activated the building alarm. Responding custody staff immediately removed the cellmate and implemented crime scene preservation procedures. The unresponsive inmate was placed on a stretcher and removed from the cell for a medical assessment; life-saving measures were not attempted due to obvious signs of rigor mortis.

## Disposition

The coroner determined the manner of death was homicide caused by strangulation and blunt force head and chest trauma. No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

## Overall Assessment

Rating: **Sufficient**

The department's overall response to the incident was adequate in all critical aspects. The department adequately notified and consulted with the OIG on the incident. The hiring authority chose not to refer the matter to the Office of Internal Affairs; the OIG concurred with this decision.

# CENTRAL REGION

| Incident Date | OIG Case Number | Case Type |
|---|---|---|
| **2011-12-31** | **12-0148-RO** | **Suicide** |

### Incident Summary

On December 31, 2011, an officer found a single-celled inmate unresponsive and lying in a pool of blood in his cell during a welfare check. The officer activated the alarm and used a towel to provide direct pressure to a severe laceration inside the inmates left elbow. A second officer checked for a pulse as medical staff arrived. Medical staff initiated life-saving efforts after it was determined the inmate did not have a pulse and was not breathing. The inmate was transported to the medical clinic while medical staff continued life-saving efforts until a physician pronounced the inmate dead.

### Disposition

The coroner's autopsy determined the manner of death was suicide and the cause of death related to blood loss due to sharp force trauma to the left arm. Staff misconduct was not identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

### Overall Assessment                                      Rating: **Sufficient**

The department's response was satisfactory in all critical aspects. The department adequately notified and consulted with the OIG on the incident. The hiring authority chose not to refer the matter to the Office of Internal Affairs; the OIG concurred with this decision.

| Incident Date | OIG Case Number | Case Type |
|---|---|---|
| **2012-01-31** | **12-0260-RO** | **In-Custody Inmate Death** |

### Incident Summary

On January 31, 2012, a 67-year-old inmate was found collapsed in his cell. In initial reports, the institution's medical staff indicated the inmate died of natural causes because the death did not appear to be suspicious. Although the inmate had a cellmate, there was no indication of foul play.

### Disposition

The coroner determined the cause of death as a homicide due to cardiac arrhythmia and strangulation. No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

### Overall Assessment                                      Rating: **Sufficient**

The OIG determined that the department adequately responded to the incident in all critical aspects. The department provided adequate notification and consultation to the OIG regarding the incident. The OIG agreed with the decision not to submit the matter to the Office of Internal Affairs.

| Incident Date | OIG Case Number | Case Type |
|---|---|---|
| **2012-02-08** | **12-0355-RO** | **Inmate Serious/Great Bodily Injury** |

### Incident Summary

On February 8, 2012, a handcuffed inmate was escorted to his cell from the showers. As the escorting officer was removing the handcuffs, the inmate was attacked by his cellmate with an inmate-manufactured weapon. The officer used pepper spray to stop the attack. The attacked inmate was transported to an outside hospital for treatment of three puncture wounds that caused a spinal cord injury resulting in partial paralysis.

### Disposition

The institution's executive review committee determined the use of force was in compliance with departmental policy, and the OIG concurred. No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

### Overall Assessment                                      Rating: **Insufficient**

The department's overall response to the incident was inadequate. The late notification by the department prevented the OIG from responding on scene. The department did not sufficiently advise the OIG about the incident. The hiring authority decided not to refer the matter to the Office of Internal Affairs, and the OIG agreed.

# CENTRAL REGION

## Assessment Questions

- Was the OIG promptly informed of the critical incident?

  *The incident occurred on February 8, 2012. The OIG was notified the following day, approximately 23 hours later. The late notification by the department prevented the OIG from responding on scene.*

| Incident Date | OIG Case Number | Case Type |
|---|---|---|
| **2012-02-21** | **12-0432-RO** | **In-Custody Inmate Death** |

### Incident Summary

On February 21, 2012, an inmate was found unresponsive in his bunk. Responding officers immediately began life-saving measures after determining the inmate was not breathing. Medical staff and paramedics from the community were called and assumed responsibility for the medical emergency. The inmate was pronounced dead after life-saving measures failed.

### Disposition

The coroner determined the cause of death to be from a narcotic overdose. No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs.

### Overall Assessment

**Rating: Sufficient**

The department's overall response to the incident was adequate in all critical aspects. The department adequately notified and consulted with the OIG on the incident. The hiring authority chose not to refer the matter to the Office of Internal Affairs; the OIG concurred with this decision.

| Incident Date | OIG Case Number | Case Type |
|---|---|---|
| **2012-02-25** | **12-0688-RO** | **Inmate Serious/Great Bodily Injury** |

### Incident Summary

On February 25, 2012, two inmates began fighting in a dayroom. Both inmates refused orders to stop fighting. Officers used less-lethal rounds and pepper spray to stop the incident. One inmate received a fractured arm from a less-lethal round. The injured inmate was treated at a local hospital and returned to the institution.

### Disposition

The institution's executive review committee determined the force used was reasonable and the OIG concurred. The officer's point of aim was the inmate's right thigh which was according to policy and training. Due to the inmate's movement, the less-lethal round struck his right arm and fractured it. No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

### Overall Assessment

**Rating: Insufficient**

The department's initial notification to the OIG was beyond one hour after establishing control of the critical incident; therefore, it was untimely. Custody staff was notified by medical staff on March 8, 2012, that the inmate had a broken arm as a result of an altercation. The OIG was not notified until March 10, 2012. The hiring authority failed to provide immediate notification to the OIG once the injury was discovered. The OIG concurred with the hiring authority's decision not to refer the matter to the Office of Internal Affairs.

### Assessment Questions

- Was the OIG promptly informed of the critical incident?

  *Custody staff was notified by medical staff on March 8, 2012, that the inmate had a broken arm as a result of the incident that occurred on February 25, 2012. Therefore, the hiring authority should have provided immediate notification to the OIG. The OIG was not notified until March 10, 2012.*

# CENTRAL REGION

| Incident Date | OIG Case Number | Case Type |
|---|---|---|
| **2012-04-25** | **12-0913-RO** | **Inmate Serious/Great Bodily Injury** |

### Incident Summary

On April 25, 2012, while working in the scullery during the morning meal, an inmate was allegedly stabbed in the chest and hand with an inmate-manufactured weapon, resulting in life-threatening injuries. The inmate was air-lifted to a local hospital for further treatment, but was later able to return to the institution. The subsequent investigation revealed that eight inmates participated in the attack.

### Disposition

No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

### Overall Assessment | Rating: Sufficient

The department's response was satisfactory in all critical aspects. The department informed the OIG about the incident in a timely and sufficient manner. The OIG concurred with the hiring authority's decision not to refer the matter to the Office of Internal Affairs.

| Incident Date | OIG Case Number | Case Type |
|---|---|---|
| **2012-05-17** | **12-1433-RO** | **Inmate Serious/Great Bodily Injury** |

### Incident Summary

On May 17, 2012, an officer was conducting random searches of inmates exiting their housing unit. Custody staff used physical force on an inmate to take him to the ground after the officer reported that the inmate attempted to elbow him in the face. Following the incident, the inmate was transported to a local hospital for treatment for a dislocated shoulder. The inmate alleged that the force used by the officers was unreasonable. The inmate alleged that the officers were retaliating against him because he recently filed a complaint against another officer.

### Disposition

The institution's executive review committee determined that the use of force was reasonable and the OIG agreed. No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

### Overall Assessment | Rating: Sufficient

The department provided adequate notification and consultation to the OIG regarding the incident. Overall, the department's response to the incident was sufficient. The OIG agreed with the decision not to submit the matter to the Office of Internal Affairs.

| Incident Date | OIG Case Number | Case Type |
|---|---|---|
| **2012-06-03** | **12-1338-RO** | **In-Custody Inmate Death** |

### Incident Summary

On June 3, 2012, an inmate was found in medical distress in his cell. His cellmate alerted custody staff that the inmate was having seizures. Medical responders noted the inmate was confused, had a decreased level of consciousness, and was having seizures. However, no apparent trauma or wounds were noted. The inmate was taken to an outside hospital for further treatment, but was pronounced dead shortly thereafter. Although the cell was secured after the inmate was removed for medical treatment, custody staff allowed the cellmate to remain in the cell. After the inmate's death the institution's investigative services unit was notified and directed custody staff to remove the cellmate. The investigative services unit and the sheriff's coroner responded to process the scene.

### Disposition

The autopsy revealed that the cause of death was a self-induced overdose of methamphetamines and the inmate's death was determined to be an accident. No staff misconduct was identified; therefore, the matter was not referred to the Office of Internal Affairs for investigation.

### Overall Assessment | Rating: Sufficient

The department's response was satisfactory in all critical aspects. The department adequately notified and consulted with the OIG regarding the incident, and the OIG responded on scene. The OIG concurred with the hiring authority's decision not to refer the matter to the Office of Internal Affairs.

# CENTRAL REGION

| Incident Date | OIG Case Number | Case Type |
|---|---|---|
| **2012-06-17** | **12-1499-RO** | **In-Custody Inmate Death** |

## Incident Summary

On June 17, 2012, as an officer conducted an inmate count, an inmate informed the officer that his cellmate was unresponsive. The officer shined his flashlight on the second inmate, but the second inmate remained unresponsive. The officer activated his personal alarm device. Additional custody staff responded to secure the scene and removed the first inmate. Medical staff also arrived and conducted an initial assessment of the second inmate, noting signs of lividity. Based on their assessment, medical staff decided not to initiate life-saving measures. There were no signs of obvious trauma. The second inmate was taken to the correctional treatment center where a physician pronounced the second inmate dead due to unknown causes. An autopsy later determined the cause of death to be a drug overdose.

## Disposition

No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

## Overall Assessment

**Rating: Sufficient**

The department's response was satisfactory in all critical aspects. The department adequately notified and consulted with the OIG on the incident. The OIG agreed with the decision not to submit the matter to the Office of Internal Affairs.

| Incident Date | OIG Case Number | Case Type |
|---|---|---|
| **2012-06-17** | **12-2022-RO** | **PREA** |

## Incident Summary

On June 17, 2012, an inmate was allegedly sexually assaulted by his cellmate. Officers and medical staff interviewed the inmate, who advised that the assault occurred two hours earlier. The inmate and his cellmate were removed from their cell. At that time, the inmate was not transported to an outside hospital for further examination and evidence collection. The investigative services unit interviewed the inmate several hours later, at which time it was determined that no forensic evidence would likely be recovered. The inmate subsequently filed a complaint against custody staff, alleging that his prior requests for a cell transfer were ignored and that any possible evidence was lost due to their failure to take timely, appropriate action. The inmate also filed a complaint with the OIG requesting an inquiry into the matter.

## Disposition

Potential staff misconduct was identified; therefore, the case was referred to the Office of Internal Affairs for investigation. An investigation was opened, which the OIG accepted for monitoring. The OIG's inquiry determined that the inmate did not express safety concerns to staff members prior to the alleged assault, but only hinted that he was uncomfortable with his cellmate and wanted a change. The OIG determined that the department's policy was not followed regarding the preservation of evidence. The OIG was instrumental in convincing the hiring authority to take the appropriate action.

## Overall Assessment

**Rating: Insufficient**

The department's response was not satisfactory. Custody staff failed to take appropriate steps to timely gather and preserve evidence. As a result, any evidence which may have existed could not be recovered. The department also failed to timely notify the OIG about the incident. The hiring authority initially decided not to refer the matter to the Office of Internal Affairs. It was only after the OIG's insistence that the hiring authority ultimately decided to take appropriate action and refer the matter.

# CENTRAL REGION

## Assessment Questions

- Did the HA timely respond to the critical incident?

  *The investigative services unit did not respond to the crime scene until several hours after the incident. By then, any possible evidence was lost, since both the inmate and cellmate had been able to clean up after the alleged sexual assault.*

- Was the OIG promptly informed of the critical incident?

  *The department failed to timely notify the OIG of the incident.*

- Was the HA's response to the critical incident appropriate?

  *Although the department failed to take timely action to preserve possible evidence, the hiring authority did not initially identify any staff misconduct. The hiring authority referred the matter to the Office of Internal Affairs only after the OIG intervened.*

- Did the HA make a timely decision regarding whether to refer any conduct related to the critical incident to the OIA?

  *The date of discovery was July 24, 2012; however, the hiring authority did not refer the matter to the Office of Internal Affairs until December 13, 2012, almost five months after discovery. The hiring authority would not have referred the misconduct to the Office of Internal Affairs without the OIG's insistence.*

| Incident Date | OIG Case Number | Case Type |
|---|---|---|
| **2012-06-30** | **12-1646-RO** | **In-Custody Inmate Death** |

### Incident Summary

On June 30, 2012, officers heard "man down" coming from a cell that housed two inmates. The first inmate was unresponsive with a possible ligature around his neck and obvious trauma to his head and face. The second inmate had cuts and swelling to his hands and blood on his clothes. Officers secured and removed the second inmate. The first inmate was removed from the cell and life-saving measures were administered. The cell was secured and preserved as a crime scene. The first inmate, who had sustained facial fractures and possible brain injury, was transported by life-flight helicopter to an outside hospital for a higher level of care. On July 3, 2012, the first inmate was pronounced dead at the outside hospital.

### Disposition

The evidence from an autopsy revealed that the cause of death was anoxic brain injury and cardiac arrest due to blunt force trauma to the inmate's head. The inmate's death was determined to be a homicide. No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

### Overall Assessment                    Rating: **Sufficient**

The department's response was satisfactory in all critical aspects. The department's notification and consultation to the OIG regarding the incident was sufficient. The OIG concurred with the hiring authority's decision not to refer the matter to the Office of Internal Affairs.

| Incident Date | OIG Case Number | Case Type |
|---|---|---|
| **2012-07-11** | **12-1668-RO** | **In-Custody Inmate Death** |

### Incident Summary

On July 11, 2012, two inmates attacked a third inmate with inmate-manufactured weapons. An officer fired less-lethal rounds at the two attacking inmates. The third inmate was taken to an outside hospital where he died from injuries received in the attack, and a fourth inmate who tried to assist the third inmate was also seriously injured.

### Disposition

The institution's executive review committee determined that the use of force was within departmental policy. The OIG concurred. No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

### Overall Assessment                    Rating: **Sufficient**

The department's overall response to the incident was adequate in all critical aspects. The department adequately notified the OIG; however, the hiring authority failed to timely notify the OIG the matter was going to be considered by the institution's executive review committee. The OIG concurred with the hiring authority's decision not to refer the matter to the Office of Internal Affairs.

# CENTRAL REGION

| Incident Date | OIG Case Number | Case Type |
|---|---|---|
| 2012-07-15 | 12-1683-RO | In-Custody Inmate Death |

### Incident Summary

On July 15, 2012, officers responded to a cell after hearing "man down." The first inmate was lying on the cell floor unresponsive with a possible ligature around his neck and obvious trauma to his head and face. The second inmate had cuts and swelling to his hands. Officers secured and removed the second inmate from the cell. The first inmate was removed from the cell and life-saving measures were administered. The cell was secured and preserved as a crime scene. After 25 to 30 minutes of life-saving efforts, the first inmate was pronounced dead.

### Disposition

An autopsy was performed which confirmed the inmate died as a result of blunt force trauma. No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

### Overall Assessment

Rating: **Sufficient**

The department's response was satisfactory in all critical aspects. The department adequately notified and consulted with the OIG on the incident. The OIG concurred with the hiring authority's decision not to refer the matter to the Office of Internal Affairs.

| Incident Date | OIG Case Number | Case Type |
|---|---|---|
| 2012-07-31 | 12-2074-RO | Inmate Serious/Great Bodily Injury |

### Incident Summary

On July 31, 2012, two inmates were involved in a fight and refused to comply with verbal commands to stop. An officer struck one of the inmates twice in the lower left leg with his baton, but the fight continued. The officer then used pepper spray and the inmates stopped fighting. Three days later, the inmate struck by the baton was transferred to a local hospital for treatment of a fractured left ankle.

### Disposition

The institution's executive review committee determined that the force used to stop the fight was within policy and the OIG concurred. No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

### Overall Assessment

Rating: **Sufficient**

The department's response was satisfactory in all critical aspects. The department informed the OIG about the incident in a timely and sufficient manner. The OIG concurred with the hiring authority's decision not to refer the matter to the Office of Internal Affairs.

| Incident Date | OIG Case Number | Case Type |
|---|---|---|
| 2012-08-15 | 12-2073-RO | Inmate Serious/Great Bodily Injury |

### Incident Summary

On August 15, 2012, an officer suspected that two inmates had been involved in a cell fight after observing blood on their clothes. The inmates submitted to restraints but then began kicking each other. Officers used pepper spray to stop the fight. One of the inmates was transported to an outside hospital for treatment of a fractured spine, nose, and facial bones, following which he returned to the institution.

### Disposition

The institution's executive review committee determined that the force used to stop the fight was within departmental policy and the OIG concurred. No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

### Overall Assessment

Rating: **Insufficient**

The department's response was not adequate because the department neglected to inform the OIG about the incident in a timely and sufficient manner. The OIG concurred with the hiring authority's decision not to refer the matter to the Office of Internal Affairs.

# CENTRAL REGION

## Assessment Questions

- Was the OIG promptly informed of the critical incident?

  *The OIG was notified the day after the incident.*

| Incident Date | OIG Case Number | Case Type |
|---|---|---|
| 2012-08-21 | 12-2269-RO | In-Custody Inmate Death |

## Incident Summary

On August 21, 2012, an inmate notified officers that there was a "man down" in a cell. The officers activated the unit alarm when they found the inmate unresponsive. Officers initiated life-saving measures until medical staff arrived and assumed responsibility for the medical emergency. The inmate was pronounced dead after life-saving measures failed.

## Disposition

The coroner determined that the inmate died of a heart attack. No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

## Overall Assessment

**Rating: Sufficient**

Overall, the department's response to the incident was sufficient. The department's notification and consultation to the OIG regarding the incident was adequate. The OIG concurred with the hiring authority's decision not to refer the matter to the Office of Internal Affairs.

| Incident Date | OIG Case Number | Case Type |
|---|---|---|
| 2012-08-26 | 12-2034-RO | Inmate Serious/Great Bodily Injury |

## Incident Summary

On August 26, 2012, officers responded to a cell after hearing a "man down" call. Officers activated the alarm and requested emergency medical response after observing one of the inmates covered in blood and holding his neck. The cellmate was removed and the injured inmate was transferred to an outside hospital by ambulance after it was determined his injuries were life-threatening. The inmate received surgery to close large lacerations to his neck and chest and returned to the institution the following day. The aggressor was on single-cell status for the prior five years because he attacked and seriously injured two prior cellmates. Just prior to this incident, the hiring authority changed the aggressor from single to double-cell status against the advice of the case worker. This incident marks the third in-cell assault resulting in serious injury by the aggressor.

## Disposition

No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation. However, the OIG addressed the policy shortcomings with the Director of Adult Institutions, including the hiring authority's decision to disregard the prior violent history of the inmate and the recommendation of the classification committee to maintain the single cell status of the inmate.

## Overall Assessment

**Rating: Sufficient**

The department's response was satisfactory in all critical aspects. The department's notification and consultation with the OIG regarding the incident was adequate. The OIG concurred with the department's decision not to refer the matter to the Office of Internal Affairs.

## OIG Recommendation

The OIG determined that the department's policy for changing an inmate from single-cell to double-cell status is insufficient. The policy states in part: *"A classification committee may consider whether an inmate with single cell designation has since proven capable of being double-celled."* The policy does not provide specific guidelines or examples of how an inmate that previously assaulted cellmates can prove capable of transitioning back to double-cell status. Therefore, the OIG recommended that the department provide specific guidelines in its policy for transitioning a single-cell inmate to double-cell status.

# CENTRAL REGION

| Incident Date | OIG Case Number | Case Type |
|---|---|---|
| **2012-08-28** | **12-2075-RO** | **Inmate Serious/Great Bodily Injury** |

## Incident Summary

On August 28, 2012, two inmates attacked a third inmate with an inmate-manufactured knife while on an exercise yard. An officer fired three less-lethal rounds at the aggressors to stop the attack. The third inmate received multiple stab wounds to his back and neck, but the injuries were not life-threatening. One of the aggressors required hospitalization and surgery at an outside hospital for a fractured hand, following which he returned to the institution. A less-lethal round was likely the cause of the injury.

## Disposition

The institution's executive review committee determined that the force used to stop the attack was within policy and the OIG concurred. No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

## Overall Assessment

**Rating: Insufficient**

The department's overall response to the incident was inadequate because the department failed to provide timely notification and consultation to the OIG regarding the incident. The hiring authority decided not to refer the matter to the Office of Internal Affairs, and the OIG agreed.

## Assessment Questions

- Was the OIG promptly informed of the critical incident?

  *The OIG was originally notified of a hand injury on August 28, 2012. The inmate was taken to an outside hospital the same day where his hand was found to be broken. The hiring authority did not notify the OIG of the broken hand until August 30, 2012, two days after the incident and knowledge of the broken hand.*

| Incident Date | OIG Case Number | Case Type |
|---|---|---|
| **2012-09-04** | **12-2488-RO** | **Other Significant Incident** |

## Incident Summary

On September 4, 2012, an inmate attempted to suffocate a psychologist during an appointment. The inmate took control of her hands, and then placed one hand over her nose and mouth preventing her from breathing. The psychologist attempted to activate her personal alarm device and yell for help, but she was unsuccessful due to the inmate's strength and control over her. As the inmate attempted to put his fingers in her mouth, the psychologist bit him and was able to yell for help. An officer responded and ordered the inmate to get down while grabbing the front of his shirt pulling him to the ground. The officer used his body weight to restrain the inmate and place him in handcuffs. The alarm was activated and responding officers escorted the inmate to the medical clinic, where he received treatment for minor injuries. The psychologist was transported to an outside hospital for medical evaluation and treatment. The psychologist returned to work on full duty status nine days after the incident.

## Disposition

The institution's executive review committee determined that the force used to stop the assault was within policy and the OIG concurred. No staff misconduct was identified, therefore, the case was not referred to the Office of Internal Affairs for investigation.

## Overall Assessment

**Rating: Sufficient**

Overall, the department's response to the incident was sufficient. The department adequately notified and consulted with the OIG on the incident. The hiring authority decided not to refer the matter to the Office of Internal Affairs, and the OIG agreed.

# HEADQUARTERS

| Incident Date | OIG Case Number | Case Type |
|---|---|---|
| 2012-07-19 | 12-1689-RO | Suicide |

### Incident Summary

On July 19, 2012, during the morning meal, officers discovered an inmate hanging from the light fixture in his cell. The officers cut the material from around the inmate's neck and immediately began life-saving measures. Responding emergency medical personnel also attempted to revive the inmate but were unsuccessful.

### Disposition

Based on the results of an autopsy and a suicide note found, the cause of death was identified as suicide by hanging. No staff misconduct was identified, and the OIG concurred.

### Overall Assessment

**Rating: Sufficient**

The department's overall response to the incident was adequate in all critical aspects. The department's notification and consultation to the OIG regarding the incident was sufficient.

| Incident Date | OIG Case Number | Case Type |
|---|---|---|
| 2012-08-28 | 12-2060-RO | In-Custody Inmate Death |

### Incident Summary

On August 28, 2012, an inmate was found lying on his cell floor. The inmate did not have a pulse and custody staff immediately initiated life-saving efforts. Shortly thereafter, a physician from a local hospital pronounced the inmate dead. Custody staff searched the inmate's cell and found two syringes and a small baggie containing a white powdery substance.

### Disposition

The forensic pathologist attributed the death to hypertensive cardiovascular disease. No staff misconduct was identified, and the OIG concurred.

### Overall Assessment

**Rating: Sufficient**

The OIG determined that the department adequately responded to the incident in all critical aspects. The department's notification and consultation to the OIG regarding the incident was sufficient.

| Incident Date | OIG Case Number | Case Type |
|---|---|---|
| 2012-08-28 | 12-2063-RO | PREA |

### Incident Summary

On August 28, 2012, two inmates alleged an officer was watching them for an inappropriate amount of time while they were in the shower. The inmates also stated that the officer would watch them while they used the toilet in their cells. They stated that the officer made them, as well as other inmates, very uncomfortable. Medical personnel evaluated the inmates for physical or psychological issues resulting from the alleged voyeurism.

### Disposition

No staff misconduct was identified, and the OIG concurred.

### Overall Assessment

**Rating: Sufficient**

The department's response was satisfactory in all critical aspects. The department adequately notified and consulted with the OIG on the incident.

| Incident Date | OIG Case Number | Case Type |
|---|---|---|
| 2012-09-10 | 12-2291-RO | PREA |

### Incident Summary

On September 10, 2012, an officer allegedly inappropriately touched an inmate's genital area during a pat down search.

# HEADQUARTERS

## Disposition

No staff misconduct was identified, and the OIG concurred.

## Overall Assessment

**Rating:** Sufficient

The department's overall response to the incident was adequate except for the 11-day delay in implementing proper protocols and the failure to sufficiently advise the OIG about the incident.

| Incident Date | OIG Case Number | Case Type |
|---|---|---|
| 2012-11-15 | 12-2702-RO | PREA |

## Incident Summary

On November 15, 2012, during an unclothed body search, an officer allegedly required an inmate to cough while in a squatting position more times than normally required. In addition, it was alleged that when the inmate asked the officer why he had to cough so many times, the officer responded with a discourteous comment.

## Disposition

No staff misconduct was identified, and the OIG concurred.

## Overall Assessment

**Rating:** Sufficient

The department's response was satisfactory in all critical aspects. The department adequately notified and consulted with the OIG on the incident.

# NORTH REGION

| Incident Date | OIG Case Number | Case Type |
|---|---|---|
| 2011-05-02 | 11-1203-RO | In-Custody Inmate Death |

### Incident Summary

On May 2, 2011, an officer conducting an inmate count discovered an inmate hanging by a sheet from the upper bunk light fixture. The cellmate was standing in the cell next to the toilet area. Officers removed the cellmate from the cell and then entered. The officers cut down the sheet, releasing the hanging inmate. Medical staff initiated life-saving measures, but the inmate was later pronounced dead.

### Disposition

The medical examiner determined the cause of death was asphyxia; however, the medical examiner stated that the incident may have been staged and the death may not have been a suicidal hanging. No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

### Overall Assessment

**Rating: Sufficient**

The department's response was satisfactory in all critical aspects. The department informed the OIG about the incident in a timely and sufficient manner. The hiring authority chose not to refer the matter to the Office of Internal Affairs; the OIG concurred with this decision.

| Incident Date | OIG Case Number | Case Type |
|---|---|---|
| 2011-07-25 | 11-1873-RO | In-Custody Inmate Death |

### Incident Summary

On July 25, 2011, during the institutional count, an inmate informed an officer that his cellmate was dead. After the officer notified other custody staff, the inmate was removed from the cell without incident. The unresponsive inmate was lying on his back on the cell floor. A registered nurse responded and initiated life-saving measures. The inmate was transported to the triage treatment area where an institution physician pronounced him dead. The county coroner identified a significant stab wound on the inmate's back. A subsequent investigation discovered an inmate-manufactured weapon in the cell.

### Disposition

No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

### Overall Assessment

**Rating: Sufficient**

Overall, the department's response to the incident was sufficient. The department provided adequate notification and consultation to the OIG regarding the incident. The OIG concurred with the hiring authority's decision not to refer the matter to the Office of Internal Affairs.

| Incident Date | OIG Case Number | Case Type |
|---|---|---|
| 2011-09-09 | 11-2297-RO | Inmate Serious/Great Bodily Injury |

### Incident Summary

On September 9, 2011, an officer responded to inmates' calls of "man down." Upon arriving at the cell shared by two inmates, the officer observed one inmate with a cut on his forehead and blood on his face and body. The responding officer called for back-up officers to assist in containing what he concluded was an in-cell fight. Both inmates complied with orders to separate without officers having to use force, and were examined by medical staff at the institution's medical treatment area. The injured inmate was taken to an outside hospital where he received sutures to close his head wound.

### Disposition

An investigation concluded that the injured inmate was the victim of assault by his cellmate. No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

### Overall Assessment

**Rating: Sufficient**

Overall, the department's response to the incident was sufficient. The department informed the OIG about the incident in a timely and sufficient manner. The hiring authority chose not to refer the matter to the Office of Internal Affairs; the OIG concurred with this decision.

# NORTH REGION

| Incident Date | OIG Case Number | Case Type |
|---|---|---|
| **2011-09-20** | **11-2384-RO** | **PREA** |

## Incident Summary

On September 20, 2011, an inmate alleged that he had been sexually assaulted by his former cellmate two weeks earlier. The reporting inmate was transported to an outside hospital for further evaluation and treatment.

## Disposition

No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

## Overall Assessment

**Rating: Sufficient**

The department's response was satisfactory in all critical aspects. The department informed the OIG about the incident in a timely and sufficient manner. The hiring authority decided not to refer the matter to the Office of Internal Affairs, and the OIG concurred.

| Incident Date | OIG Case Number | Case Type |
|---|---|---|
| **2011-10-05** | **11-2501-RO** | **Suicide** |

## Incident Summary

On October 5, 2011, an inmate was discovered at the back of his cell hanging by the neck with a noose made from a bed sheet. Custody staff entered the cell, cut the noose, and began life-saving measures. Medical staff arrived and continued to conduct life-saving measures. Custody and medical staff continued life-saving efforts from the cell to the institution's triage treatment area, where a physician pronounced the inmate dead.

## Disposition

An autopsy performed by the county coroner's office determined the cause of death to be asphyxiation by hanging. No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

## Overall Assessment

**Rating: Sufficient**

The department's response was satisfactory in all critical aspects. The department adequately notified and consulted with the OIG regarding the incident. The OIG concurred with the hiring authority's decision not to refer the matter to the Office of Internal Affairs.

| Incident Date | OIG Case Number | Case Type |
|---|---|---|
| **2011-10-18** | **11-2589-RO** | **In-Custody Inmate Death** |

## Incident Summary

On October 18, 2011, during the release of inmates to the evening medication line, an inmate summoned an officer to his cell and pointed to his cellmate who was lying on the floor. The officer noted the inmate was bleeding profusely from the head and there was a large amount of blood on the floor. The officer summoned other custody staff and handcuffed the reporting inmate. Once that inmate was removed from the cell, medical staff immediately initiated life-saving measures, but the inmate was eventually pronounced dead by an attending physician.

## Disposition

The county coroner determined the inmate died from multiple blunt force injuries to the head and neck. No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

## Overall Assessment

**Rating: Sufficient**

The department's response was satisfactory in all critical aspects. The department provided adequate notification and consultation to the OIG regarding the incident. The hiring authority chose not to refer the matter to the Office of Internal Affairs; the OIG concurred with this decision.

# North Region

| Incident Date | OIG Case Number | Case Type |
|---|---|---|
| **2011-11-17** | **11-2800-RO** | **Suicide** |

## Incident Summary

On November 17, 2011, officers discovered a single-celled inmate hanging from the cell bars with a state-issued belt around his neck. The officers activated their personal alarms. Responding officers arrived, unbuckled the belt from the cell bars, and initiated life-saving measures. Medical staff arrived on scene and assisted the officers with the life-saving measures. Custody and medical staff transported the inmate to the triage treatment area where he was declared dead by a doctor on duty.

## Disposition

The medical examiner determined the cause of death to be asphyxia from suicide by hanging. There were no signs of foul play associated with the incident. Potential staff misconduct was identified regarding log entries for inmate counts and cell checks, which is being investigated by the Office of Internal Affairs. The OIG accepted the case for monitoring.

## Overall Assessment
**Rating: Sufficient**

The OIG determined that the department adequately responded to the incident in all critical aspects. The department adequately notified and consulted with the OIG on the incident. The OIG agreed with the decision to submit the matter to the Office of Internal Affairs.

| Incident Date | OIG Case Number | Case Type |
|---|---|---|
| **2011-12-10** | **11-2980-RO** | **In-Custody Inmate Death** |

## Incident Summary

On December 10, 2011, an officer discovered an inmate severely beaten in his cell, with his hands and feet bound. The injured inmate was transported to a local hospital where he later died. The officer on watch at the time admitted to failing to conduct the required inmate count prior to discovering the inmate, and recorded that fact in a written report of the incident.

## Disposition

An autopsy determined the death to be a homicide from blunt force trauma. Potential staff misconduct was identified based on the officer's failure to conduct the required inmate count; therefore, the hiring authority referred the case to the Office of Internal Affairs for investigation. An investigation was opened, which the OIG accepted for monitoring.

## Overall Assessment
**Rating: Sufficient**

The department's overall response to the incident was adequate in all critical aspects. The department adequately notified and consulted with the OIG on the incident. The OIG concurred with the hiring authority's decision to refer the matter to the Office of Internal Affairs.

| Incident Date | OIG Case Number | Case Type |
|---|---|---|
| **2011-12-14** | **11-3062-RO** | **Inmate Riot** |

## Incident Summary

On December 14, 2011, as inmates were being released from the dining hall, two inmates began fighting. Officers gave verbal orders to stop the fighting but the inmates failed to comply. A second fight erupted between two other inmates. When verbal orders to stop fighting were unsuccessful, officers utilized pepper spray which was also unsuccessful. Officers then fired less-lethal direct impact rounds which caused the inmates to stop fighting. One inmate alleged that he was struck in the face with a less-lethal round and was transported to a local hospital where he was medically treated and returned to the institution.

## Disposition

The institution's executive review committee determined the use of force was in compliance with departmental policy. The OIG concurred. No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation. The institution did not sustain the inmate's allegation that he was struck in the face with a less-lethal round due to lack of evidence and the OIG concurred.

## Overall Assessment
**Rating: Sufficient**

The department's response was satisfactory in all critical aspects. The department's notification and consultation to the OIG regarding the incident was sufficient. The hiring authority chose not to refer the matter to the Office of Internal Affairs. The OIG concurred with this decision.

# NORTH REGION

| Incident Date | OIG Case Number | Case Type |
|---|---|---|
| **2011-12-28** | **11-3195-RO** | **Inmate Riot** |

## Incident Summary

On December 28, 2011, a riot involving approximately 126 inmates erupted on an exercise yard. Responding staff utilized pepper spray and pepper spray blast grenades to stop the fighting. All involved inmates were given medical evaluations. Eleven inmates had minor scratches and abrasions, while two inmates had injuries requiring sutures. There were no staff injuries as a result of this incident.

## Disposition

The institution's executive review committee determined the use of force was in compliance with departmental policy. The OIG concurred. No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

## Overall Assessment

**Rating: Sufficient**

Overall, the department's response to the incident was sufficient. The department failed to provide adequate notification and consultation to the OIG regarding the incident. The OIG agreed with the decision not to submit the matter to the Office of Internal Affairs.

| Incident Date | OIG Case Number | Case Type |
|---|---|---|
| **2012-03-11** | **12-0613-RO** | **In-Custody Inmate Death** |

## Incident Summary

On March 11, 2012, an officer distributing dinner meals discovered an inmate unresponsive in his cell. Custody staff entered the cell and began life-saving measures. The inmate was pronounced dead by a physician within an hour of discovery.

## Disposition

According to the autopsy and toxicology reports, the inmate died of an accidental methamphetamine drug overdose. No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

## Overall Assessment

**Rating: Sufficient**

The department's response was satisfactory in all critical aspects. The department's notification and consultation to the OIG regarding the incident was sufficient. The OIG agreed with the decision not to submit the matter to the Office of Internal Affairs.

| Incident Date | OIG Case Number | Case Type |
|---|---|---|
| **2012-03-28** | **12-0771-RO** | **In-Custody Inmate Death** |

## Incident Summary

On March 28, 2012, an inmate was discovered unresponsive on his cell floor minutes after returning from the exercise yard. The inmate was transported to a local hospital by ambulance following the discovery of three puncture wounds to the left side of his chest. An inmate-manufactured weapon was later discovered in a trash can located within the same housing unit.

## Disposition

No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

## Overall Assessment

**Rating: Sufficient**

The OIG determined that the department adequately responded to the incident in all critical aspects. The department neglected to inform the OIG about the incident in a timely and sufficient manner. The OIG agreed with the decision not to submit the matter to the Office of Internal Affairs.

# NORTH REGION

| Incident Date | OIG Case Number | Case Type |
|---|---|---|
| **2012-04-22** | **12-0930-RO** | **Inmate Serious/Great Bodily Injury** |

### Incident Summary

On April 22, 2012, a control booth officer observed an inmate lying on the tier with another inmate at his side requesting assistance. The officer called a medical emergency. Custody and medical staff responded and noted the inmate lying on the floor had injuries consistent with being stabbed. The inmate was transported by ambulance to an outside hospital for further treatment, following which he returned to the institution. The inmate sustained multiple puncture and stab wounds, but survived the attack.

### Disposition

No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

### Overall Assessment

**Rating: Sufficient**

The department's overall response to the incident was adequate in all critical aspects. The hiring authority decided not to refer the matter to the Office of Internal Affairs, and the OIG agreed.

| Incident Date | OIG Case Number | Case Type |
|---|---|---|
| **2012-04-25** | **12-0928-RO** | **Suicide** |

### Incident Summary

On April 25, 2012, an inmate was discovered hanging in his assigned cell by his cellmate upon the cellmate's return from being away at class. The cellmate then alerted officers assigned to the housing unit. Custody staff responded and administered life-saving measures, without success, and the inmate was pronounced dead. The institution's investigative services unit secured the cell as a potential crime scene.

### Disposition

An autopsy was conducted and the coroner opined the cause of death was "hanging." No staff misconduct was identified; therefore, the matter was not referred to the Office Internal Affairs for investigation.

### Overall Assessment

**Rating: Sufficient**

The department's overall response to the incident was adequate in all critical aspects. The department informed the OIG about the incident in a timely and sufficient manner. The OIG agreed with the decision not to submit the matter to the Office of Internal Affairs.

| Incident Date | OIG Case Number | Case Type |
|---|---|---|
| **2012-05-26** | **12-1283-RO** | **In-Custody Inmate Death** |

### Incident Summary

On May 26, 2012, an officer observed an unresponsive inmate lying on the floor of his cell, covered with sheets, with blood on the floor. The officer sounded his alarm and custody staff responded to the cell. The cellmate submitted to handcuffs and was removed from the cell. A sergeant entered the cell and removed the sheets from the unresponsive inmate. Responding medical staff checked for vital signs with negative results. The inmate was transported to the institution's correctional treatment center and pronounced dead. The department's investigative services unit secured the cell as a crime scene and interviewed the cellmate who admitted to strangling the inmate.

### Disposition

No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

### Overall Assessment

**Rating: Sufficient**

The department's overall response to the incident was adequate in all critical aspects. The department adequately notified and consulted with the OIG regarding the incident. The OIG concurred with the hiring authority's decision not to refer the matter to the Office of Internal Affairs.

# NORTH REGION

| Incident Date | OIG Case Number | Case Type |
|---|---|---|
| **2012-05-27** | **12-1298-RO** | **Suicide** |

## Incident Summary

On May 27, 2012, officers observed an inmate, who was housed alone, hanging in the rear of his cell from an extension cord. Officers activated an alarm and an emergency extraction team entered the cell, removed the inmate from the cell, and initiated life-saving measures. Simultaneously, custody staff summoned an ambulance as the emergency extraction team continued life-saving measures. Upon arrival of the ambulance, paramedics assessed the inmate and pronounced him dead.

## Disposition

No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

## Overall Assessment | Rating: **Sufficient**

The department's overall response to the incident was adequate in all critical aspects. The department adequately notified and consulted with the OIG on the incident. The OIG concurred with the hiring authority's decision not to refer the matter to the Office of Internal Affairs.

| Incident Date | OIG Case Number | Case Type |
|---|---|---|
| **2012-06-07** | **12-1400-RO** | **Suicide** |

## Incident Summary

On June 7, 2012, officers observed a single-celled inmate hanging in his cell. Custody staff immediately entered the cell, cut the inmate down, and initiated life-saving measures. The inmate was taken to the institution's medical facility where life-saving measures continued, but without result, and a physician pronounced the inmate dead. In reviewing the incident, the department identified previous suicide risk assessments that did not include critical information pertaining to the inmate's prior suicide attempts and assessed the inmate as a low suicide risk.

## Disposition

The institution's mental health services delivery system developed a quality improvement plan to mentor and proctor mental health clinicians in conducting suicide risk assessments. The clinicians who neglected to include the critical information in the previous evaluations were prioritized for the training and mentoring. The hiring authority chose not to refer the matter to the Office of Internal Affairs; the OIG concurred with this decision.

## Overall Assessment | Rating: **Sufficient**

The department's response was satisfactory in all critical aspects. The department provided adequate notification and consultation to the OIG regarding the incident. The OIG agreed with the decision not to submit the matter to the Office of Internal Affairs.

| Incident Date | OIG Case Number | Case Type |
|---|---|---|
| **2012-07-13** | **12-1650-RO** | **Suicide** |

## Incident Summary

On July 13, 2012, while performing a security check, an officer observed an inmate lying on his bunk, slumped against a locker, and unresponsive. The officer announced a medical emergency and several sergeants responded to the scene. When custody staff entered the cell, a sergeant observed a shoe lace attached to a locker and the other end tied around the inmate's neck. The lace was removed and custody staff initiated life-saving efforts until the fire department arrived and assumed responsibility. The inmate was later pronounced dead at the scene.

## Disposition

The autopsy report indicated the inmate died as a result of hanging. No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

## Overall Assessment | Rating: **Sufficient**

The OIG determined that the department adequately responded to the incident in all critical aspects. The department's notification and consultation to the OIG regarding the incident was sufficient. The OIG agreed with the decision not to submit the matter to the Office of Internal Affairs.

# NORTH REGION

| Incident Date | OIG Case Number | Case Type |
|---|---|---|
| **2012-09-04** | **12-2056-RO** | **Inmate Serious/Great Bodily Injury** |

## Incident Summary

On September 4, 2012, while on the exercise yard, two inmates stabbed another inmate multiple times with inmate-manufactured weapons. The attacked inmate sustained multiple stab wounds to his head, neck, chest, back, and arms. Custody staff utilized three less-lethal direct-impact rounds and pepper spray to stop the attack. Initial medical reports indicated the inmate sustained approximately 44 stab wounds to various areas of his body. The inmate was transported to the institution's triage treatment area where he was stabilized before being transported to an outside hospital trauma center by ambulance.

## Disposition

The institution's executive review committee determined the force used by the officers to stop the attack was appropriate and within departmental policy. The OIG concurred. No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

## Overall Assessment                                   Rating: **Sufficient**

Overall, the department's response to the incident was sufficient. The department provided adequate notification and consultation to the OIG regarding the incident. The hiring authority decided not to refer the matter to the Office of Internal Affairs, and the OIG agreed.

| Incident Date | OIG Case Number | Case Type |
|---|---|---|
| **2012-09-06** | **12-2092-RO** | **Other Significant Incident** |

## Incident Summary

On September 6, 2012, officers observed an inmate in her cell with a sheet loosely wrapped around her neck. The officers ordered the inmate to remove the sheet; however, the inmate did not comply. The onsite supervisor utilized pepper spray in an attempt to get the inmate to comply with the orders to remove the sheet. The officers conducted an emergency cell extraction. During the cell extraction, an officer acting as the shield operator was kicked by the inmate, causing him to fall onto an empty bed. The officer got back up and was able to pin the inmate to the wall. The inmate reached around the shield and poked another officer in the eye with her thumb. Custody staff was able to gain control of the inmate, restrain her, place her on a Stokes litter, and transfer her to the triage treatment area for medical evaluation. The inmate was admitted to the institution's outpatient housing unit for psychiatric observation. A medical evaluation revealed the inmate did not sustain any injuries.

## Disposition

The institution's executive review committee determined that the use of force was within departmental policy. No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

## Overall Assessment                                   Rating: **Sufficient**

Overall, the department's response to the incident was sufficient. The OIG agreed with the hiring authority's decision not to refer the matter to the Office of Internal Affairs.

| Incident Date | OIG Case Number | Case Type |
|---|---|---|
| **2012-09-21** | **12-2203-RO** | **In-Custody Inmate Death** |

## Incident Summary

On September 21, 2012, an inmate was taken to an outside hospital after he was found lying on the ground along a track on an exercise yard. The inmate initially reported that he felt dizzy and fell. Three days later, the inmate died in an outside hospital where he was still being treated. From an inmate line-up prepared by the investigative services unit, three inmates identified another inmate who may have struck the deceased inmate in the face, which caused him to fall backwards and strike his head. No autopsy was requested.

## Disposition

No staff misconduct was identified; therefore, the matter was not referred to the Office of Internal Affairs for investigation.

## Overall Assessment                                   Rating: **Sufficient**

The OIG determined that the department adequately responded to the incident in all critical aspects. The department's notification and consultation to the OIG regarding the incident was sufficient. The OIG agreed with the decision not to submit the matter to the Office of Internal Affairs.

# NORTH REGION

| Incident Date | OIG Case Number | Case Type |
|---|---|---|
| **2012-09-22** | **12-2290-RO** | **In-Custody Inmate Death** |

## Incident Summary

On September 22, 2012, an officer conducting security checks discovered an inmate unresponsive in his cell. Additional custody staff arrived, opened the cell door, and initiated life-saving measures. Medical staff also responded and assisted with life-saving measures, but the inmate was subsequently pronounced dead. The inmate was single-celled and there were no signs of suicide or foul play.

## Disposition

No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

## Overall Assessment

**Rating: Sufficient**

The department's response was satisfactory in all critical aspects. The department's notification and consultation to the OIG regarding the incident was sufficient. The OIG agreed with the department's decision not to refer the matter to the Office of Internal Affairs.

| Incident Date | OIG Case Number | Case Type |
|---|---|---|
| **2012-10-18** | **12-2371-RO** | **Other Significant Incident** |

## Incident Summary

On October 18, 2012, an inmate was released from custody prior to his scheduled release date. It was reported that a captain allegedly erroneously voided a rules violation report which resulted in the inmate's early release. On October 19, 2012, the hiring authority learned of the early release and took appropriate immediate measures to ensure the released inmate would be arrested and returned to custody once located. The inmate was returned to custody without incident on October 19, 2012.

## Disposition

No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation. However, deficiencies were identified with the inmate disciplinary and parole processing procedures. The hiring authority implemented a training program for all supervisors and managers to correct the deficiencies. The OIG concurred with the training program and the remedial instruction for the staff involved in this early release case.

## Overall Assessment

**Rating: Sufficient**

The OIG determined that the department adequately responded to the incident in all critical aspects. The department provided adequate notification and consultation to the OIG regarding the incident. The OIG concurred with the hiring authority's decision not to refer the matter to the Office of Internal Affairs.

# SOUTH REGION

| Incident Date | OIG Case Number | Case Type |
|---|---|---|
| **2011-06-30** | **11-2429-RO** | **Suicide** |

## Incident Summary

On June 30, 2011, custody staff found a single-celled inmate hanging from the top bunk of the cell with a sheet wrapped around his neck. After custody staff removed the inmate from the cell, medical and custody staff initiated life-saving measures, without success.

## Disposition

The coroner's autopsy concluded that the inmate committed suicide by hanging. No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

## Overall Assessment

**Rating: Sufficient**

The OIG determined that the department adequately responded to the incident in all critical aspects. The department provided adequate notification and consultation to the OIG regarding the incident. The OIG concurred with the hiring authority's decision not to refer the matter to the Office of Internal Affairs.

| Incident Date | OIG Case Number | Case Type |
|---|---|---|
| **2011-09-13** | **11-2318-RO** | **Other Significant Incident** |

## Incident Summary

On September 13, 2011, an officer working in a vehicle sally port was struck in the head by a bullet fragment that came from the institution's shooting range that was being used by an outside law enforcement agency. The officer sustained minor injuries and was treated at a local hospital. The outside law enforcement agency conducted an investigation and determined that the bullet fragment ricocheted off a metal target being utilized on the shooting range.

## Disposition

No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

## Overall Assessment

**Rating: Sufficient**

Overall, the department's response to the incident was sufficient. The department informed the OIG about the incident in a timely and sufficient manner. The OIG agreed with the decision not to submit the matter to the Office of Internal Affairs.

## OIG Recommendation

The OIG recommended that the institution discontinue the use of metal targets on its shooting range to prevent future incidents, and the hiring authority agreed.

| Incident Date | OIG Case Number | Case Type |
|---|---|---|
| **2012-01-19** | **12-0194-RO** | **In-Custody Inmate Death** |

## Incident Summary

On January 19, 2012, an officer observed an inmate, who appeared to be unconscious, lying on the exercise yard . The officer activated his alarm and requested medical assistance. The inmate had injuries to his face and head and it was determined he had been attacked by another inmate. The inmate who was attacked was transported to an outside hospital where he was placed on life support. On January 22, 2012, the inmate was removed from life support and pronounced dead.

## Disposition

The coroner determined the cause of death was blunt force head trauma. No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

## Overall Assessment

**Rating: Sufficient**

The department's response was satisfactory in all critical aspects. The department adequately notified and consulted with the OIG on the incident. The OIG agreed with the decision not to submit the matter to the Office of Internal Affairs.

# SOUTH REGION

| Incident Date | OIG Case Number | Case Type |
|---|---|---|
| **2012-03-26** | **12-0713-RO** | **Inmate Serious/Great Bodily Injury** |

### Incident Summary

On March 26, 2012, two inmates attacked another inmate. A control booth officer fired a less-lethal round to stop the attack. The injured inmate was transported to an outside hospital for treatment of injuries caused by the other inmate, including a fractured orbit. It was determined that the injuries were not life-threatening and the inmate later returned to the institution.

### Disposition

The institution's executive review committee determined the use of force was within departmental policy. The OIG concurred. No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

### Overall Assessment

**Rating: Sufficient**

The OIG determined that the department adequately responded to the incident in all critical aspects. The OIG concurred with the hiring authority's decision not to refer the matter to the Office of Internal Affairs.

| Incident Date | OIG Case Number | Case Type |
|---|---|---|
| **2012-03-26** | **12-0714-RO** | **Inmate Serious/Great Bodily Injury** |

### Incident Summary

On March 26, 2012, two inmates attacked another inmate with inmate-manufactured weapons on an exercise yard. Responding officers used an expandable baton and pepper spray to stop the attack. The injured inmate was air-lifted to an outside hospital for treatment of injuries consisting of numerous lacerations to his head, back, torso and wrists, and a puncture wound to his chest. It was determined the injuries were not life threatening and the inmate later returned to the institution.

### Disposition

The institution's executive review committee determined the use of force was within departmental policy and the OIG concurred. No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

### Overall Assessment

**Rating: Sufficient**

Overall, the department's response to the incident was sufficient. The department informed the OIG about the incident in a timely and sufficient manner. The hiring authority decided not to refer the matter to the Office of Internal Affairs, and the OIG agreed.

| Incident Date | OIG Case Number | Case Type |
|---|---|---|
| **2012-05-12** | **12-1070-RO** | **Inmate Serious/Great Bodily Injury** |

### Incident Summary

On May 12, 2012, a ward attacked another ward in the living unit by punching him with his fists. Custody staff ordered the ward to stop the attack and the ward complied. The injured ward was knocked unconscious and transported to a local hospital where he underwent emergency surgery for head trauma and brain hemorrhaging. The ward recovered from his injuries and returned to the institution.

### Disposition

No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

### Overall Assessment

**Rating: Sufficient**

The department's overall response to the incident was adequate in all critical aspects. The department provided adequate notification and consultation to the OIG regarding the incident. The OIG agreed with the decision not to refer the matter to the Office of Internal Affairs.

# SOUTH REGION

| Incident Date | OIG Case Number | Case Type |
|---|---|---|
| **2012-07-18** | **12-1761-RO** | **Inmate Serious/Great Bodily Injury** |

## Incident Summary

On July 18, 2012, an inmate approached the officers' podium and fell to the floor. The inmate was disoriented and bleeding heavily from his head. The inmate was treated by medical staff at the institution and later transported to an outside hospital where he received approximately 33 sutures for his head injuries. It was determined that the inmate fainted and sustained his injuries when his head struck the podium and the concrete floor.

## Disposition

No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

## Overall Assessment

**Rating: Sufficient**

Except for the department's failure to timely complete and submit the required documentation, and failure to timely advise the OIG about the incident, the department's overall response to the incident was sufficient. The hiring authority chose not to refer the matter to the Office of Internal Affairs and the OIG concurred.

| Incident Date | OIG Case Number | Case Type |
|---|---|---|
| **2012-07-20** | **12-1762-RO** | **Inmate Serious/Great Bodily Injury** |

## Incident Summary

On July 20, 2012, an inmate notified custody staff that he had been attacked by another inmate on the exercise yard. The attacked inmate was air-lifted to an outside hospital for a laceration to his neck, which required 7 sutures and 25 staples. The inmate's injuries were not life-threatening and he later returned to the institution. An inmate-manufactured weapon was recovered but it was unknown if it was connected to the incident.

## Disposition

No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

## Overall Assessment

**Rating: Insufficient**

The department's overall response to the incident was inadequate because the department did not adequately notify the OIG of the incident. The hiring authority decided not to refer the matter to the Office of Internal Affairs, and the OIG agreed.

## Assessment Questions

- Was the OIG promptly informed of the critical incident?

  *The department failed to notify the OIG of the critical incident.*

| Incident Date | OIG Case Number | Case Type |
|---|---|---|
| **2012-07-22** | **12-1809-RO** | **Other Significant Incident** |

## Incident Summary

On July 22, 2012, officers observed a visitor reaching behind an inmate's lower back area. During an unclothed body search of the inmate, officers discovered lubricant around his anal cavity and placed the inmate on contraband surveillance watch, during which officers are required to maintain constant visual observation of the inmate. The inmate produced a bowel movement containing empty plastic packaging. Based on the inmate's statements, it was determined that the inmate had earlier produced a bowel movement containing a package of marijuana that he then unwrapped and swallowed the contents. The inmate then reinserted the packaging in his anal cavity. The officers allegedly failed to observe the inmate's actions.

## Disposition

Potential staff misconduct, specifically neglect of duty, was identified; therefore, the case was referred to the Office of Internal Affairs for investigation. An investigation was opened, which the OIG accepted for monitoring.

# SOUTH REGION

| Overall Assessment | Rating: Sufficient |
|---|---|

The department's response was satisfactory except that the hiring authority failed to timely refer the potential misconduct to the Office of Internal Affairs. The department's notification and consultation to the OIG regarding the incident was sufficient. The hiring authority decided to refer the matter to the Office of Internal Affairs, and the OIG concurred with the decision.

| Incident Date | OIG Case Number | Case Type |
|---|---|---|
| 2012-08-12 | 12-1884-RO | In-Custody Inmate Death |

### Incident Summary

On August 12, 2012, an inmate was having difficulty breathing and his cellmate called "man down." Officers responded, removed the inmate from the cell, and sent him via ambulance to a local hospital. While en route, medical personnel began life-saving measures but the inmate was pronounced dead upon arrival at the hospital. The inmate was severely obese and suffered from asthma.

### Disposition

The cause of the inmate's death was determined to be cardiopulmonary arrest. No staff misconduct was identified; therefore, the matter was not referred to the Office of Internal Affairs for investigation.

| Overall Assessment | Rating: Sufficient |
|---|---|

The OIG determined that the department adequately responded to the incident in all critical aspects. The department's notification and consultation to the OIG regarding the incident was sufficient. The OIG concurred with the hiring authority's decision not to refer the matter to the Office of Internal Affairs.

| Incident Date | OIG Case Number | Case Type |
|---|---|---|
| 2012-08-17 | 12-1934-RO | In-Custody Inmate Death |

### Incident Summary

On August 17, 2012, one inmate was killed and another slightly injured when a motorist travelling on an interstate left the roadway and struck the inmates while they were off the shoulder of the roadway participating in an inmate work crew.

### Disposition

The inmate died as a result of being struck by a motorist who may have been under the influence of alcohol. No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

| Overall Assessment | Rating: Sufficient |
|---|---|

The department's response was satisfactory in all critical aspects. The department adequately notified and consulted with the OIG regarding the incident. The OIG concurred with the hiring authority's decision not to refer the matter to the Office of Internal Affairs.

| Incident Date | OIG Case Number | Case Type |
|---|---|---|
| 2012-10-06 | 12-2286-RO | Other Significant Incident |

### Incident Summary

On October 6, 2012, a youth counselor was attacked by a ward while monitoring the dining hall. The ward knocked the counselor unconscious and continued hitting the counselor in his facial area until a responding counselor arrived and gave a verbal warning that chemical agents would be used. The ward stopped the attack and laid down on the floor in a prone position. The counselor was transported by ambulance to a local hospital for treatment of a concussion and multiple scratches and bruises on his facial area. The counselor was released from the hospital later that evening.

### Disposition

No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs.

| Overall Assessment | Rating: Sufficient |
|---|---|

Overall, the department's response to the incident was sufficient. The department informed the OIG about the incident in a timely and sufficient manner. The hiring authority decided not to refer the matter to the Office of Internal Affairs, and the OIG agreed.

# APPENDIX E                                           29
# DEADLY FORCE INCIDENT SUMMARIES
## CENTRAL REGION

| Incident Date:  2012-02-11 | Deadly Force Incident |
|---|---|

### Incident Summary                              OIG Case Number:  12-0377-RO

On February 11, 2012, multiple inmates began fighting in the dayroom during the morning meal. Officers gave multiple orders for the inmates to get down and stop fighting, but the inmates continued to fight. Officers fired four less-lethal rounds and pepper spray to stop the incident. One less-lethal round accidently struck an inmate in the back of the head, causing pain, swelling and a laceration. The inmate was transported to a community hospital for treatment of head injuries and a possible concussion. He was returned to the institution later the same day.

### Disposition

The institution's executive review committee determined the force used was in compliance with departmental policies and procedures. No staff misconduct was identified. However, the officers failed to comply with departmental policy following the use-of-force incident because they failed to conduct a video-recorded interview with the inmate that was injured by the less-lethal round. Training was provided to staff to ensure future compliance. The OIG concurred with the decision.

### Incident Assessment                           Rating:  **Insufficient**

The department's initial notification to the OIG was beyond one hour following the critical incident; therefore, it was untimely. The department failed to conduct a video-recorded interview as required by departmental policy.

### Assessment Questions

- Was the OIG promptly informed of the critical incident?

  *The OIG was notified by email regarding the incident, but no notification was made by telephone. The email notification was beyond the one hour requirement.*

- Was the HA's response to the critical incident appropriate?

  *The department failed to conduct a video-recorded interview as required by departmental policy.*

| Incident Date:  2012-02-29 | Deadly Force Incident |
|---|---|

### Incident Summary                              OIG Case Number:  12-0538-RO

On February 29, 2012, a riot occurred on an exercise yard involving multiple inmates. The incident started with two inmates fighting, but quickly grew to over 70 inmates fighting. Custody staff used verbal commands to attempt to stop the fighting but the inmates ignored the commands. Responding officers utilized less-lethal rounds, pepper spray, and chemical grenades to stop the riot. Two inmates were accidentally struck in the head with less-lethal rounds. None of the inmates sustained serious injuries; therefore, the injured inmates were treated at the institution's triage treatment area.

### Disposition

The institution's executive review committee determined that the force used to stop the riot was within policy. No staff misconduct was identified. The OIG concurred.

### Incident Assessment                           Rating:  **Sufficient**

The department's response was satisfactory in all critical aspects. The department's notification and consultation to the OIG regarding the incident was sufficient.

# CENTRAL REGION

| Incident Date:  2012-08-06 | Deadly Force Incident |
|---|---|

## Incident Summary
OIG Case Number:  **12-1825-RO**

On August 6, 2012, a riot occurred on an exercise yard involving 46 inmates attacking 11 other inmates. An alarm was sounded and officers responded, forming a skirmish line. Inmates refused orders to get on the ground. The observation officer saw some inmates kicking and stomping the head and upper body of an inmate who was lying on the ground. The observation officer fired one lethal round as a warning shot causing the involved inmates to get on the ground. Several other inmates then got up and started to kick two other inmates who were lying on the ground motionless. The observation officer fired a second lethal round as a warning shot causing some of the inmates to get on the ground. Other inmates got up and continued attacking the inmates on the ground. Several separate attacks started and were stopped with the use of three pepper spray grenades and five less-lethal shots. The observation officer then observed 15 inmates get up and start kicking an inmate in the head who was on the ground in a prone position. The observation officer fired a third lethal round as a warning shot causing all inmates to stop attacking. Inmates sustained non-life-threatening injuries, including cuts and abrasions to the chest and face. The inmates were treated by medical staff at the institution. One inmate became resistive while being removed from the exercise yard and physical force was used to subdue him.

## Disposition

The institution's executive review committee determined that the warning shots were in compliance with the department's use-of-force policy. No staff misconduct was identified. The OIG concurred.

## Incident Assessment
**Rating:  Sufficient**

The department's response was satisfactory in all critical aspects. Although the Office of Internal Affairs was notified of the incident, their practice is not to respond on scene to warning shots. The department adequately notified and consulted with the OIG on the incident, and the OIG responded on scene.

| Incident Date:  2012-09-10 | Deadly Force Incident |
|---|---|

## Incident Summary
OIG Case Number:  **12-2101-RO**

On September 10, 2012, an observation officer observed two inmates attacking a third inmate on the exercise yard. The first inmate held the third inmate on the ground while the second inmate repeatedly stabbed the third inmate in the chest and back area with an inmate-manufactured weapon. The inmates refused officers' orders to stop and get down as additional officers responded to the incident. The observation officer fired a warning shot but the inmates continued their attack. A second officer deployed a pepper spray grenade which caused the inmates to stop the attack and get on the ground. The third inmate sustained a stab wound to the chest, a stab wound to the back, and some scratches, none of which were life-threatening.

## Disposition

The institution's executive review committee determined the use of force was within departmental policy. No staff misconduct was identified. The OIG concurred.

## Incident Assessment
**Rating:  Sufficient**

The department's response was satisfactory in all critical aspects. Although the Office of Internal Affairs was notified of the incident, their practice is not to respond on scene to warning shots. The department adequately notified and consulted with the OIG on the incident, and the OIG responded on scene.

# CENTRAL REGION

| Incident Date:   2012-09-17 | Deadly Force Incident |
|---|---|

## Incident Summary

OIG Case Number:   **12-2344-RO**

On September 17, 2012, an officer observed two inmates fighting with a third inmate. All three inmates refused orders to stop fighting, so the officer fired two less-lethal rounds targeting the lower extremities to stop the fight. One round missed and the second round struck one of the inmates in the head, stopping the fight. The injured inmate was transported to an outside hospital for treatment of a head injury requiring evaluation and sutures and he returned to the institution later that day.

## Disposition

The institution's executive review committee determined that the use of force complied with departmental policy. No staff misconduct was identified. The OIG concurred.

## Incident Assessment

Rating:  **Sufficient**

The OIG determined that the department adequately responded to the incident in all critical aspects. The department informed the OIG about the incident in a timely and sufficient manner.

# HEADQUARTERS

| Incident Date:  2012-01-11 | Deadly Force Incident |
|---|---|

### Incident Summary                                          OIG Case Number:   12-0128-RO

On January 11, 2012, a riot involving approximately 200 inmates occurred on an exercise yard. Approximately 100 officers responded to the incident. Staff utilized less-lethal force including over 100 40 mm rounds and chemical agents. Additionally, two warning shots were fired from a Mini-14 rifle. Five inmates were transported to an outside hospital for non-life threatening injuries consistent with the fighting. One inmate may have sustained a head injury from being struck with a 40 mm round. Two inmate-manufactured weapons were found. No staff injuries were reported.

### Disposition

The institution's executive review committee determined that the use of force was within departmental policy. No staff misconduct was identified. The OIG concurred.

### Incident Assessment                                        Rating:  Sufficient

The department's response to the incident was sufficient in all critical aspects. The Office of Internal Affairs dispatched a deadly force investigation team to the incident and made a determination that the shots fired from the Mini-14 rifle were truly warning shots. The department adequately notified and consulted with the OIG on the incident and the OIG responded on scene.

# NORTH REGION

| Incident Date:  2011-11-03 | Deadly Force Incident |
|---|---|

## Incident Summary

On November 3, 2011, a riot involving 71 inmates erupted on an exercise yard. The inmates broke into smaller groups which moved around the yard. Multiple force options were used including chemical agents, less-lethal, and lethal force. An observation officer fired 12 lethal rounds as warning shots. The inmates eventually stopped rioting and submitted to restraints. There were no staff injuries. Seven inmates sustained serious bodily injuries consisting primarily of cuts, lacerations, and puncture wounds, due to the fighting. All inmates were treated on site. Custody staff recovered six inmate-manufactured weapons.

| Criminal Investigation | OIG Case Number:  11-2704-IR |
|---|---|

### Investigation Assessment

**Rating: Sufficient**

Overall, the department's investigative process sufficiently complied with policies and procedures.

| Administrative Investigation | OIG Case Number:  11-2699-IR |
|---|---|

| | Findings | Initial Penalty | Final Penalty |
|---|---|---|---|
| **1.  Use of Deadly Force** | **1.  Exonerated** | **No Penalty Imposed** | **No Change** |

### Investigative Assessment

**Rating: Sufficient**

The department's investigative process sufficiently complied with policies and procedures.

### Disposition

The Office of Internal Affairs dispatched a deadly force investigation team to the incident. The department's independent Deadly Force Review Board found that the discharge of the lethal rounds was in compliance with the department's use-of-force policy. The hiring authority subsequently determined the investigation revealed the officer's actions were justified and exonerated the officer. The OIG concurred with this determination.

### Disciplinary Assessment

**Rating: Insufficient**

The department failed to comply with policies and procedures governing the disciplinary process. The hiring authority delayed conducting the findings and penalty conference, and failed to consult with the OIG regarding the findings and penalty.

### Assessment Questions

- Did the disciplinary officer make an entry into CMS prior to the findings conference accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

  *The disciplinary officer did not make any entry into CMS regarding the relevant dates.*

- Did the HA timely consult with the OIG and department attorney (if applicable), regarding the sufficiency of the investigation and the investigative findings?

  *The Office of Internal Affairs completed its investigation and referred the matter to the hiring authority on June 4, 2012. The department's independent Deadly Force Review Board reviewed the case on August 7, 2012, and issued their findings to the hiring authority on September 6, 2012. The hiring authority completed the disciplinary process on September 26, 2012, 20 days later, and without consulting the OIG.*

- Did the HA cooperate with and provide continual real-time consultation with the OIG throughout the disciplinary phase, until all proceedings were completed, except for those related to a writ?

  *The hiring authority failed to notify the OIG of the findings and penalty conference and, therefore, failed to consult with the OIG regarding the findings and penalty.*

- Was the disciplinary phase conducted with due diligence by the department?

  *The hiring authority delayed in completing the disciplinary process and failed to consult with the OIG regarding the same.*

# NORTH REGION

| Incident Date:   2011-12-07 | Deadly Force Incident |
|---|---|

## Incident Summary

On December 7, 2011, a riot erupted on an exercise yard involving approximately 100 inmates. The inmates punched, stabbed, kicked, and used weapons to assault one another. Some inmates appeared unconscious and defenseless as they were being punched or kicked in the head. Officers utilized chemical agents, less-lethal, and lethal weapons. Two officers fired a total of seven rounds from the Mini-14 rifle to stop the incident. Two of the lethal rounds were fired as warning shots. The remaining lethal rounds were fired for effect. Eleven inmates were transported to local hospitals and treated for wounds and head injuries. One inmate was admitted for a gunshot wound to the leg. Another inmate was treated for a gunshot wound to the left forearm. All of the injured inmates returned to the institution.

| Criminal Investigation | OIG Case Number:   **11-2949-IR** | |
|---|---|---|

| Investigation Assessment | | **Rating: Sufficient** |
|---|---|---|

The department's investigative process sufficiently complied with policies and procedures.

| Administrative Investigation | OIG Case Number:   **11-2946-IR** | | |
|---|---|---|---|

| | Findings | Initial Penalty | Final Penalty |
|---|---|---|---|
| 1.  **Use of Deadly Force** | 1.  **Exonerated** | **No Penalty Imposed** | **No Change** |

| Investigative Assessment | **Rating: Sufficient** |
|---|---|

The department's response was satisfactory in all critical aspects. The department adequately notified and consulted with the OIG on the incident, and the OIG responded on scene. The Office of Internal Affairs dispatched a deadly force investigation team to the incident.

## Disposition

The department's independent Deadly Force Review Board found that the discharge of the lethal rounds was in compliance with the department's use-of-force policy. The hiring authority subsequently exonerated the officers. The OIG concurred.

| Disciplinary Assessment | **Rating: Sufficient** |
|---|---|

The department sufficiently complied with policies and procedures.

# NORTH REGION

| Incident Date:  2012-05-31 | Deadly Force Incident |
|---|---|

## Incident Summary

On May 31, 2012, it was alleged that a parole agent was visiting the home of a parolee when the agent was confronted by a large, charging pit bull dog. The agent allegedly discharged two rounds from his duty weapon. The dog was grazed slightly, retreated, and survived. There were no injuries to any persons and no property damage. Local law enforcement responded and cleared the incident without any arrests.

| Administrative Investigation | OIG Case Number:  12-1438-IR | | |
|---|---|---|---|
|  | **Findings** | **Initial Penalty** | **Final Penalty** |
| **1.  Use of Deadly Force** | **1.  Exonerated** | **No Penalty Imposed** | **No Change** |

## Investigative Assessment

Rating:  **Sufficient**

Overall, the department's investigative process sufficiently complied with policies and procedures. The Office of Internal Affairs did not dispatch its deadly force investigation team.

## Disposition

The department's Independent Deadly Force Review Board found the matter was in compliance with department's use-of-force policy, and the hiring authority subsequently exonerated the officer. The OIG concurred.

## Disciplinary Assessment

Rating:  **Sufficient**

Overall, the department sufficiently complied with policies and procedures.

# NORTH REGION

| Incident Date:   2012-06-11 | Deadly Force Incident |
|---|---|

**Incident Summary**

On June 11, 2012, it was alleged an officer used deadly force when he fired one round from his department-issued rifle to stop an inmate assault on another inmate.

| Criminal Investigation | OIG Case Number:   12-1435-IR |
|---|---|

**Investigation Assessment** **Rating: Sufficient**

The department's investigative process sufficiently complied with policies and procedures.

| Administrative Investigation | OIG Case Number:   12-1434-IR |
|---|---|

| | Findings | Initial Penalty | Final Penalty |
|---|---|---|---|
| 1.  Use of Deadly Force | 1.  Exonerated | No Penalty Imposed | No Change |

**Investigative Assessment** **Rating: Sufficient**

The department's investigative process sufficiently complied with policies and procedures.

**Disposition**

The Office of Internal Affairs dispatched a deadly force investigation team to the incident. The department's independent Deadly Force Review Board found the use of force was in compliance with departmental policy and the hiring authority subsequently exonerated the officer. The OIG concurred with the hiring authority's determination.

**Disciplinary Assessment** **Rating: Sufficient**

Overall, the department sufficiently complied with policies and procedures.

---

| Incident Date:   2011-09-24 | Deadly Force Incident |
|---|---|

**Incident Summary** OIG Case Number:   11-2436-RO

On September 24, 2011, officers observed two inmates fighting in front of a housing unit. After the inmates refused orders to stop fighting, the control booth officer fired one less-lethal projectile at one of the inmates. Due to his movement, the round struck the inmate in the back of his head. Both inmates complied with orders to get down. An inmate-manufactured weapon was discovered and one of the inmates sustained multiple puncture wounds to his upper torso. Both inmates were transferred to a local hospital for treatment. The injuries were not life-threatening.

**Disposition**

The institution's executive review committee found the force used was reasonable. No staff misconduct was identified. The OIG concurred.

**Incident Assessment** **Rating: Sufficient**

The department's overall response to the incident was adequate in all critical aspects. The department adequately notified and consulted with the OIG on the incident.

# NORTH REGION

| Incident Date:  2011-11-13 | Deadly Force Incident |
| --- | --- |

## Incident Summary                                    OIG Case Number:   12-0266-RO

On November 13, 2011, over 60 inmates engaged in a riot on an exercise yard, necessitating officers' use of tear gas, pepper spray, and 40 mm direct-impact launchers. As these measures proved ineffective, an officer discharged a warning shot from his Mini-14 rifle into a grassy area approximately 20 yards away from the rioting inmates who were engaged in numerous altercations. There were no inmate injuries as a result of the officer's warning shot.

## Disposition

The institution's executive review committee determined that the use of deadly force was appropriate and complied with the department's use-of-force policy. No staff misconduct was identified. The OIG concurred.

## Incident Assessment                                 Rating: Sufficient

The department's response was satisfactory in all critical aspects. Although the Office of Internal Affairs was notified of the incident, their practice is not to respond on scene to warning shots. The department adequately notified and consulted with the OIG about the incident.

| Incident Date:  2012-02-09 | Deadly Force Incident |
| --- | --- |

## Incident Summary                                    OIG Case Number:   12-0360-RO

On February 9, 2012, approximately 150 to 200 inmates were involved in a riot on an exercise yard. Staff utilized chemical agents, less-lethal rounds, and two warning shots fired from rifles to stop the incident. Over 30 inmates were treated on site for cuts, abrasions, slashes, and stab wounds. Although four inmates were sent to outside hospitals for further treatment, none of the injuries were life-threatening. A search yielded 12 inmate-manufactured weapons. No staff members were injured during this incident.

## Disposition

The institution's executive review committee found the use of force in compliance with departmental policy. No staff misconduct was identified. The OIG concurred.

## Incident Assessment                                 Rating: Sufficient

The department's overall response to the incident was adequate in all critical aspects. Although the Office of Internal Affairs was notified of the incident, their practice is not to respond on scene to warning shots. The department adequately notified and consulted with the OIG regarding the incident.

# NORTH REGION

| Incident Date:  2012-04-11 | Deadly Force Incident |
|---|---|

## Incident Summary
OIG Case Number:  **12-0851-RO**

On April 11, 2012, officers placed an inmate in a holding cell while his regular cell was being searched. The inmate escaped from the holding cell and attacked two inmates who were assisting with the distribution of evening meals. The control booth officer gave several orders for the inmates to stop fighting. When the inmates failed to comply with verbal commands, the officer fired five less-lethal rounds from his 40mm direct-impact launcher, which proved ineffective. Additional officers responding to the scene utilized their pepper spray, which stopped the fighting. One inmate sustained a laceration to his head which required seven staples to close. After returning from the triage treatment area, the inmate with the head injury claimed he had been shot in the head by the 40 mm round. Officers videotaped the inmate's statements and his injuries. Additionally, one officer injured his ankle while responding to the incident and was taken to a local hospital for further medical evaluation.

## Disposition
The institution's executive review committee determined the use of force was in compliance with departmental policy. The OIG concurred. Further inquiry revealed that the officer who placed the inmate in the holding cell failed to lock the holding cell properly. The hiring authority chose not to refer the matter to the Office of Internal Affairs. Instead, the officer was provided with additional training on holding cell procedures. The OIG did not concur.

## Incident Assessment
Rating:  **Insufficient**

The OIG determined that the department's response to the incident was inadequate because of the seriousness of the officer's failure to secure an inmate in the holding cell, and inmate and staff injuries that resulted from his failure. Additionally, the department failed to provide timely notification to the OIG regarding the incident. Therefore, the OIG was prevented from immediately responding on scene. The hiring authority decided not to refer the matter to the Office of Internal Affairs; however, the OIG did not agree.

## Assessment Questions

- Was the OIG promptly informed of the critical incident?

  *The inmate's serious head injury should have been deemed an injury that could have been caused by the officer's use of force. As such, the OIG should have been notified no later than one hour after establishing control of an incident; however, they were notified more than two hours after the incident.*

- Did the HA appropriately determine whether to refer any conduct to the OIA related to the critical incident?

  *The hiring authority failed to refer the incident to the Office of Internal Affairs for an investigation, believing it would harm the morale of the officer mostly responsible for the critical incident.*

| Incident Date:  2012-04-22 | Deadly Force Incident |
|---|---|

## Incident Summary
OIG Case Number:  **12-0929-RO**

On April 22, 2012, a riot involving 14 inmates erupted on an exercise yard. The riot divided into groups, including a group of three inmates that were punching and kicking a fourth inmate in the head, face, and upper torso, causing the inmate to fall face first to the ground. Despite verbal orders, pepper spray grenades, and less-lethal force, one of the attacking inmates began kicking the fallen inmate multiple times in the head and face while he was on the ground. The fallen inmate appeared to be unresponsive. The observation officer fired one warning shot from his rifle, which caused the attacking inmates to temporarily cease their attack. However, the attacking inmates, who were then joined by another inmate, moved toward a different inmate and refused verbal orders to stop their movement. Fearing further attacks, the observation officer fired a second warning shot from his rifle. The warning shots, combined with the pepper spray grenades and less-lethal rounds, stopped the riot. The first attacked inmate sustained cuts to his forehead and above his right eye, abrasions on his right elbow, and swelling and an abrasion to his left thumb. The second attacked inmate received minor scrapes. Both inmates were treated on site. One inmate-manufactured weapon was found.

## Disposition
The hiring authority determined that the warning shots complied with the department's use-of-force policy. Therefore, no staff misconduct was identified. The OIG concurred.

## Incident Assessment
Rating:  **Sufficient**

The department's response was satisfactory in all critical aspects. Although the Office of Internal Affairs was notified of the incident, their practice is not to respond on scene to warning shots. The department adequately notified and consulted with the OIG on the incident.

# NORTH REGION

| Incident Date:  2012-07-31 | Deadly Force Incident |
|---|---|

## Incident Summary                                OIG Case Number:  12-1793-RO

On July 31, 2012, two inmates attacked a third inmate on an exercise yard with an inmate-manufactured weapon. Responding officers fired four less-lethal direct impact rounds at the inmates. One round inadvertently struck the inmate being attacked on the left side of his forehead. Another round inadvertently struck one of the attackers in the face. The inmate that was attacked sustained approximately 14 puncture wounds to his back, stomach, and right arm and was transported to an outside hospital. The inmate who was shot with a less-lethal round in the face was diagnosed with a broken jaw and was transported to another outside hospital.

## Disposition

The institution's executive review committee determined that the use of force complied with the department's policies and procedures. No staff misconduct was identified. The OIG concurred.

## Incident Assessment                             | Rating: Sufficient |

The OIG determined that the department's response to the incident was adequate. The Office of Internal Affairs was notified and a special agent responded to the hospital to evaluate the condition of the inmate struck in the forehead. The Office of Internal Affairs did not dispatch a deadly force investigation team because the injuries to both inmates were reportedly not serious and it is the department's practice not to respond on scene unless less-lethal force is intentionally used in a lethal manner or inadvertently causes potential lethal injury. The department provided adequate notification and consultation to the OIG regarding the incident. The OIG responded on scene.

| Incident Date:  2012-08-02 | Deadly Force Incident |
|---|---|

## Incident Summary                                OIG Case Number:  12-1801-RO

On August 2, 2012, two inmates attacked a third inmate on an exercise yard. A yard officer ordered the inmates to get down, but the two inmates continued their attack. The control booth officer fired one less-lethal round that missed the target and did not stop the attack. The third inmate tried to defend himself but the attacking inmates knocked him to the ground, punching him in the head and upper torso. One of the attacking inmates kicked the third inmate several times in the head. The third inmate became motionless on the ground, appearing defenseless. The observation officer fired one lethal round as a warning shot into a wall, which stopped the attack. The third inmate sustained a loss of consciousness, bruises, abrasions, and a small wound on the side of the neck, all of which were consistent with the attack. The two attacking inmates suffered minor abrasions, also consistent with fighting. All inmates were treated on site. No weapons were found.

## Disposition

The institution's executive review committee determined the use of force was within policy. No staff misconduct was identified. The OIG concurred.

## Incident Assessment                             | Rating: Sufficient |

The department's response was satisfactory in all critical aspects. Although the Office of Internal Affairs was notified of the incident, their practice is not to respond on scene to warning shots. The department adequately notified and consulted with the OIG on the incident.

# NORTH REGION

| Incident Date:   2012-08-10 | Deadly Force Incident |
|---|---|

## Incident Summary
OIG Case Number:   **12-1875-RO**

On August 10, 2012, two inmates began fighting on an exercise yard. Responding custody staff utilized pepper spray and fired two less-lethal rounds in order to stop the incident. One inmate was struck in the thigh and treated at the institution. The other inmate was struck on the crown of his head by a less-lethal round and was transported to an outside hospital for treatment. A CT scan of the head was negative for serious injury.

## Disposition

The institution's executive review committee determined that the use of force was within departmental policy. No staff misconduct was identified. The OIG concurred.

## Incident Assessment
**Rating:  Insufficient**

Overall, the department's response was insufficient. The institution's executive review committee prepared an inaccurate report. The department provided adequate notification to the OIG, but failed to adequately consult with the OIG regarding the incident. The OIG responded on scene. The Office of Internal Affairs erred in their failure to respond on scene to a potentially deadly use of force.

## Assessment Questions

- Did the OIA adequately respond to the incident?

  *The Office of Internal Affairs erred in their failure to respond on scene to a potentially deadly use of force.*

- Did the use-of-force review committee adequately review and respond to the incident?

  *The institution's executive review committee failed to accurately summarize the use of force. Although initial reports contained accurate information regarding the number of rounds fired and resulting injuries, the committee's summary inaccurately stated that only one round was discharged and that neither inmate was injured as a result of the use of force. Furthermore, the committee stated that medical reports showed no injury when injuries were documented for both inmates. The committee also documented that a recorded interview with the inmate was not required, and related questions were answered as not applicable, when the inmate interview was required and even completed.*

- Did the department adequately consult with the OIG regarding the critical incident?

  *The department did not adequately consult with the OIG regarding the critical incident because the department failed to notify the OIG of the time and date of the institution's executive review committee meeting despite several requests and reminders from the OIG.*

# SOUTH REGION

| Incident Date:  2012-02-13 | Deadly Force Incident |
|---|---|

## Incident Summary

On February 13, 2012, an officer observed two inmates exchange something in front of a housing unit. The officer began searching the inmates. As the first inmate was being searched, the second inmate ran from the area across the exercise yard towards other inmates. As officers ran after the inmate, an officer in the observation tower saw the running inmate reach towards his waistband, at which point the observation tower officer fired one less-lethal round at the running inmate. The round struck the running inmate in the head causing great bodily injury. The Office of Internal Affairs dispatched a deadly force investigation team to the incident and the OIG responded on scene.

| Criminal Investigation | OIG Case Number:  **12-0408-IR** |
|---|---|

| Investigation Assessment | Rating: **Sufficient** |
|---|---|

Overall, the department's investigative process sufficiently complied with policies and procedures.

| Administrative Investigation | OIG Case Number:  **12-0401-IR** |
|---|---|

| | Findings | Initial Penalty | Final Penalty |
|---|---|---|---|
| **1.  Use of Deadly Force** | 1.  **Exonerated** | **No Penalty Imposed** | **No Change** |

| Investigative Assessment | Rating: **Sufficient** |
|---|---|

The department's investigative process sufficiently complied with policies and procedures.

## Disposition

The department's independent Deadly Force Review Board found that the manner in which the less-lethal round was discharged was in compliance with the department's use-of-force policy. The hiring authority subsequently exonerated the officer and the OIG concurred.

| Disciplinary Assessment | Rating: **Sufficient** |
|---|---|

Overall, the department sufficiently complied with policies and procedures.

# SOUTH REGION

| Incident Date:  2012-06-05 | Deadly Force Incident |
|---|---|

## Incident Summary

On June 5, 2012, a parole agent, while at home, allegedly neglected his duty by discharging his firearm while manipulating the firearm in preparation for work. The round struck a nearby residence.

| Administrative Investigation | OIG Case Number:  12-1401-IR | | |
|---|---|---|---|
| | **Findings** | **Initial Penalty** | **Final Penalty** |
| 1.  **Neglect of Duty** 2.  **Discharge of Lethal Weapon** | 1.  **Sustained** 2.  **Sustained** | **Suspension** | **No Change** |

## Investigative Assessment

**Rating:  Insufficient**

The Office of Internal Affairs failed to sufficiently comply with the department's policies and procedures. The investigation was not thorough and complete. The report failed to address the underlying cause of the discharge of the firearm. The special agent failed to adequately develop the facts surrounding the discharge of the firearm despite non-sensical answers and conflicting versions given by the parole agent to the department and outside law enforcement. The inadequate investigation minimized extremely dangerous and questionable conduct of the parole agent and did not establish a basis for preventing recurrence.

## Assessment Questions

- Were all of the interviews thorough and appropriately conducted?

  *The interview of the parole agent was not thorough and complete. The special agent failed to adequately develop the facts surrounding the discharge of the firearm despite non-sensical answers and conflicting versions given by the parole agent to other law enforcement. The special agent accepted conclusory explanations such as "accident," "muscle memory," and "inadvertent" without delving into the mental state or mental stability of the parole agent.*

- Was the investigative draft report provided to the OIG for review thorough and appropriately drafted?

  *The investigative report was not thorough and complete. The report failed to address the underlying cause of the discharge of the firearm because the special agent failed to adequately develop the facts surrounding the discharge of the firearm. A recommendation by the OIG to re-interview the parole agent was rejected.*

- Was the final investigative report thorough and appropriately drafted?

  *The investigative report was not thorough and complete. The report failed to address the underlying cause of the discharge of the firearm because the special agent failed to adequately develop the facts surrounding the discharge of the firearm. A recommendation by the OIG to re-interview the parole agent was rejected.*

- Was the investigation thorough and appropriately conducted?

  *The investigation was not thorough and complete. The investigation failed to adequately develop the facts surrounding the discharge of the firearm and the special agent accepted conclusory explanations from the parole agent. The inadequate investigation minimized extremely dangerous and questionable conduct of the parole agent.*

## Disposition

The hiring authority determined there was sufficient evidence to sustain the allegations and imposed a three working-day suspension without pay. The parole agent did not file an appeal with the State Personnel Board.

## Disciplinary Assessment

**Rating:  Insufficient**

The department failed to comply with policies and procedures governing the disciplinary process. The hiring authority failed to request further investigation into the underlying cause of the firearm discharge. The department attorney failed to provide appropriate legal advice to the hiring authority, and failed to include the parole agent interview and the investigative report as supporting evidence within the draft disciplinary action. Overall, the danger to the public by this conduct and the circumstances surrounding the discharge of the firearm may have warranted a much more severe discipline.

## Assessment Questions

- Did the HA properly deem the OIA investigation sufficient or insufficient?

  *The hiring authority should not have determined that the investigation was sufficient. The investigation did not identify the cause of the discharge of the firearm in a manner that would allow the hiring authority to take the appropriate disciplinary action and action that would prevent a recurrence of this highly dangerous act.*

# SOUTH REGION

- Did the HA properly determine if additional investigation was necessary?

  *The hiring authority incorrectly determined that no additional investigation was required. The investigation did not identify the cause of the discharge of the firearm in a manner that would allow the hiring authority to take the appropriate disciplinary action and action that would prevent a recurrence of this highly dangerous act. Additional investigation would have established the depth of the issues that resulted in the discharge of the firearm.*

- Did the VA provide appropriate legal consultation to the HA regarding the sufficiency of the investigation and investigative findings?

  *The legal consultation provided to the hiring authority was not appropriate because the department attorney accepted a determination that the discharge was accidental without further inquiry.*

- Did the department attorney provide to the HA and OIG written confirmation of penalty discussions?

  *The department attorney did not provide written confirmation of penalty discussions.*

- Was the draft disciplinary action provided to the OIG for review appropriately drafted as described in the DOM?

  *The draft disciplinary action failed to include the interview of the parole agent and the investigative report as supporting evidence.*

| Incident Date:  2012-01-10 | Deadly Force Incident |
|---|---|

## Incident Summary    OIG Case Number:  12-0147-RO

On January 10, 2012, two inmates attacked another inmate on the exercise yard by punching him with their fists. Officers ordered the inmates to get down but all three inmates continued to fight. Two officers fired six less-lethal rounds, which stopped the attack. The inmate who was attacked was inadvertently struck in the upper torso with a less-lethal round that ricocheted, striking the inmate in the eye. The inmate was transported to a local hospital where he was treated for partial loss of vision and fractured collar bone.

## Disposition

The institution's executive review committee determined that the use of force complied with departmental policies and procedures. No staff misconduct was identified. The OIG concurred.

## Incident Assessment

**Rating:  Sufficient**

The department's response was satisfactory in all critical aspects.

| Incident Date:  2012-01-17 | Deadly Force Incident |
|---|---|

## Incident Summary    OIG Case Number:  12-0169-RO

On January 17, 2012, two inmates attacked another inmate on the exercise yard, punching him in the head and stabbing him. Custody staff responded and used pepper spray and a baton to stop the attack. One of the attackers was inadvertently struck in the head with a baton causing a laceration that required 21 staples to close. While searching the inmates in the area of the incident, custody staff observed another inmate throw an inmate-manufactured weapon over a wall. The weapon was recovered. Custody staff continued searching the area and located a second inmate-manufactured weapon within reach of three additional inmates.

## Disposition

The institution's executive review committee determined that staff actions following the use of force were not in compliance with policies and procedures, and provided training. No staff misconduct was identified. The OIG concurred.

## Incident Assessment

**Rating:  Sufficient**

The department's overall response to the incident was adequate in all critical aspects. The department provided adequate notification and consultation to the OIG regarding the incident.

# SOUTH REGION

| Incident Date:   2012-02-18 | Deadly Force Incident |
|---|---|

## Incident Summary

OIG Case Number:   **12-0452-RO**

On February 18, 2012, custody staff observed an inmate standing in his cell using a mobile phone. The inmate refused a direct order to surrender the mobile phone, and began flushing unknown items down his toilet. Once responding custody staff arrived, the cell door was opened. The inmate rushed out of his cell and began to punch one of the officers and the sergeant. Pepper spray, an expandable baton, and physical force were used to gain compliance. An officer inadvertently struck the inmate in the head with an expandable baton, causing a laceration that required ten sutures.

## Disposition

The institution's executive review committee determined the use of force was in compliance with departmental policy. No staff misconduct was identified. The OIG concurred.

## Incident Assessment

**Rating:  Sufficient**

The department's response was satisfactory in all critical aspects. The department adequately notified and consulted with the OIG on the incident.

| Incident Date:   2012-04-28 | Deadly Force Incident |
|---|---|

## Incident Summary

OIG Case Number:   **12-0954-RO**

On April 28, 2012, an inmate attacked another inmate in the dayroom. Custody staff ordered the inmates to get down but the inmates continued to fight. An officer fired a less-lethal projectile at one of the involved inmates and both inmates stopped fighting and got on the ground. One of the involved inmates sustained a laceration behind his ear and it was determined that he was inadvertently struck with the less-lethal projectile. The inmate was transported to an outside hospital as a precaution and returned to the institution the same day.

## Disposition

The institution's executive review committee determined the use of force was within policy. No staff misconduct was identified. The OIG concurred.

## Incident Assessment

**Rating:  Sufficient**

The department's overall response to the incident was adequate except the case was not timely reviewed by the institution's executive review committee and the department failed to promptly notify the OIG. The OIG responded on scene.

| Incident Date:   2012-07-18 | Deadly Force Incident |
|---|---|

## Incident Summary

OIG Case Number:   **12-1685-RO**

On July 18, 2012, a riot erupted on an exercise yard when a group of 15 inmates attacked a group of 5 inmates after an inmate from the smaller group approached an inmate from the larger group. The first inmate was attacked, causing the remaining inmates to become involved in the fighting. Officers responded and used a variety of force options: pepper spray, pepper spray grenades, less-lethal rounds, and two warning shots fired from an observation officer's rifle. The fighting stopped only after the second warning shot was fired. The shots were fired into a dirt area near a fence separating the two halves of the yards, approximately 20 yards from where the fighting took place. One inmate was seriously beaten and another needed stitches for what appeared to be a stab wound. Other inmates had injuries described as minor and requiring little to no medical attention. Additionally, four inmate-manufactured weapons were discovered in the area of the fight.

## Disposition

The institution's executive review committee determined the firing of the warning shot was justified and within departmental policy. No staff misconduct was identified. The OIG concurred.

## Incident Assessment

**Rating:  Sufficient**

The department's response was satisfactory in all critical aspects. Although the Office of Internal Affairs was notified of the incident, their practice is not to respond on scene to warning shots. The department adequately notified and consulted with the OIG on the incident, and the OIG responded on scene.

# SOUTH REGION

| Incident Date:   2012-09-03 | Deadly Force Incident |
|---|---|

## Incident Summary

OIG Case Number:   **12-2047-RO**

On September 3, 2012, two fights occurred simultaneously on an exercise yard. One fight involved three inmates attacking one inmate. The second fight involved two inmates attacking another inmate. The observation officer fired one warning shot from a Mini-14 rifle. The inmates continued to fight. Officers deployed two instantaneous blast pepper spray grenades and an additional pepper spray canister, at which time the inmates stopped fighting. One inmate sustained non-life threatening head trauma caused by the fighting and was taken to an outside hospital for evaluation. Another inmate was taken to an outside hospital for stiches to his nose.

## Disposition

The institution's executive review committee determined that the warning shot was within departmental policy. No staff misconduct was identified. The OIG concurred.

## Incident Assessment

Rating:  **Insufficient**

The department's overall response to the incident was not sufficient as the institution did not obtain a timely public safety statement from the observation officer as required. Although the Office of Internal Affairs was notified of the incident, their practice is not to respond on scene to warning shots. The department provided adequate notification and consultation to the OIG regarding the incident, and the OIG responded on scene.

## Assessment Questions

- Was the HA's response to the critical incident appropriate?

  *The institution failed to obtain a timely public safety statement from the officer who fired the warning shot.*

| Incident Date:   2012-09-25 | Deadly Force Incident |
|---|---|

## Incident Summary

OIG Case Number:   **12-2229-RO**

On September 25, 2012, 59 inmates attacked a group of 4 inmates on a yard. The observation officer ordered the inmates on the yard to get down but the inmates did not comply. Due to concerns for the safety of the four inmates, the observation officer fired a warning shot from his Mini-14 rifle in a safe direction away from the yard. The combination of the warning shot and the use of three instantaneous pepper-spray blast grenades stopped the fighting. The inmates did not sustain any serious injuries.

## Disposition

The institution's executive review committee determined that all uses of force, including the firing of the warning shot, were within departmental policy. No staff misconduct was identified. The OIG concurred.

## Incident Assessment

Rating:  **Sufficient**

The OIG determined that the department adequately responded to the incident in all critical aspects. Although the Office of Internal Affairs was notified of the incident, their practice is not to respond on scene to warning shots. The department provided adequate notification and consultation to the OIG regarding the incident, and the OIG responded on scene.

# SOUTH REGION

| Incident Date:   2012-10-06 | Deadly Force Incident |
|---|---|

## Incident Summary

OIG Case Number:   **12-2288-RO**

On October 6, 2012, a riot involving approximately 462 inmates erupted on an exercise yard. Officers ordered the inmates to get on the ground, but the inmates continued to fight. Officers utilized pepper spray, chemical agent grenades, batons, and less-lethal rounds to stop the riot. An officer fired a warning shot from a Mini-14 rifle. The warning shot had the desired effect of stopping the fight. As a result of the fight on the yard, separate riots erupted in a nearby dining hall and in two dayrooms. Officers utilized chemical agents to stop those riots. No inmates were injured by the use of force; however, three inmates sustained serious injuries caused by other inmates. The critically-injured inmates were air-lifted to local hospitals to receive a higher level of medical care and all were returned to the institution within a few days. Three staff members sustained minor injuries.

## Disposition

The institution's executive review committee determined that the use of force complied with the department's policies and procedures. No staff misconduct was identified. The OIG concurred.

## Incident Assessment

**Rating:  Insufficient**

The department's response was not satisfactory because the department failed to provide adequate notification to the OIG regarding the incident. The OIG was not notified until nearly three hours after the incident was contained. However, the department's response was adequate in other respects. Although the Office of Internal Affairs was notified of the incident, their practice is not to respond on scene to warning shots.

## Assessment Questions

- Was the OIG promptly informed of the critical incident?

  *The OIG was notified of the incident nearly three hours after it was contained.*

| Incident Date:   2012-11-30 | Deadly Force Incident |
|---|---|

## Incident Summary

OIG Case Number:   **12-2756-RO**

On November 30, 2012, two inmates attacked a third inmate while they were on the exercise yard. The two inmates continued to punch and kick the third inmate as he fell to the ground and appeared motionless. A control booth officer fired one warning shot from his rifle. Officers then tossed two pepper-spray grenades, causing the inmates to stop their attack. The inmates suffered injuries consistent with fighting.

## Disposition

The institution's executive review committee determined that the force used by the officers complied with departmental policy. No staff misconduct was identified. The OIG concurred.

## Incident Assessment

**Rating:  Insufficient**

The department's response was not satisfactory in all critical aspects. The department did not adequately consult with the OIG regarding the incident. Although the Office of Internal Affairs was notified of the incident, their practice is not to respond on scene to warning shots. The OIG did respond on scene.

## Assessment Questions

- Did the department adequately consult with the OIG regarding the critical incident?

  *Despite repeated requests, the OIG did not receive a complete copy of the incident package, including all staff reports, until after the matter was heard and considered by the institution's executive review committee. Additionally, despite repeated requests to be notified, the institution failed to notify the OIG as to when the incident would be reviewed and considered by the institution's executive review committee. This failure to notify precluded the OIG from attending and monitoring the institution's executive review committee's review and analysis of the incident.*

# APPENDIX F        89
# CONTRABAND SURVEILLANCE WATCH
# CASE SUMMARIES

## CENTRAL REGION

| Date Placed on Contraband Watch | Date Taken off Contraband Watch | Reason for Placement | Contraband Found |
|---|---|---|---|
| **2012-07-12** | **2012-07-19** | **Suspected Inmate Note** | **Inmate Note** |

| Incident Summary | 12-02241-CWRM |
|---|---|

On July 12, 2012, the department placed an inmate on contraband surveillance watch. The inmate was removed from contraband surveillance watch on July 19, 2012, seven days later. During that time, the department recovered an inmate note from the inmate.

**Incident Assessment**

The department sufficiently complied with policies and procedures. No staff misconduct was identified.

| Date Placed on Contraband Watch | Date Taken off Contraband Watch | Reason for Placement | Contraband Found |
|---|---|---|---|
| **2012-07-15** | **2012-07-18** | **Suspected Drugs** | **Nothing** |

| Incident Summary | 12-02291-CWRM |
|---|---|

On July 15, 2012, the department placed an inmate on contraband surveillance watch. The inmate was removed from contraband surveillance watch on July 18, 2012, three days later. During that time, the department recovered nothing from the inmate.

**Incident Assessment**

The department adequately complied with policies and procedures. No staff misconduct was identified.

| Date Placed on Contraband Watch | Date Taken off Contraband Watch | Reason for Placement | Contraband Found |
|---|---|---|---|
| **2012-07-27** | **2012-07-31** | **Suspicious Activity** | **Nothing** |

| Incident Summary | 12-02471-CWRM |
|---|---|

On July 27, 2012, the department placed an inmate on contraband surveillance watch after the inmate was observed possibly swallowing then possibly secreting foreign objects as officers attempted a random search of his cell. The inmate was removed from contraband surveillance watch on July 31, 2012, four days later. During that time, the department recovered nothing from the inmate.

**Incident Assessment**

The department sufficiently complied with policies and procedures. No staff misconduct was identified.

| Date Placed on Contraband Watch | Date Taken off Contraband Watch | Reason for Placement | Contraband Found |
|---|---|---|---|
| **2012-07-27** | **2012-08-02** | **Suspected Weapons** | **Nothing** |

| Incident Summary | 12-02501-CWRM |
|---|---|

On July 27, 2012, the department placed an inmate on contraband surveillance watch. The inmate was removed from contraband surveillance watch on August 2, 2012, six days later. During that time, the department recovered nothing from the inmate.

**Incident Assessment**

The department adequately complied with policies and procedures. No staff misconduct was identified.

# CENTRAL REGION

| Date Placed on Contraband Watch | Date Taken off Contraband Watch | Reason for Placement | Contraband Found |
|---|---|---|---|
| **2012-07-29** | **2012-08-03** | **Suspected Drugs** | **Nothing** |

| Incident Summary | 12-02511-CWRM |
|---|---|

On July 29, 2012, the department placed an inmate on contraband surveillance watch. The inmate was removed from contraband surveillance watch on August 3, 2012, five days later. During that time, the department recovered nothing from the inmate.

**Incident Assessment**

The department sufficiently complied with policies and procedures. No staff misconduct was identified.

| Date Placed on Contraband Watch | Date Taken off Contraband Watch | Reason for Placement | Contraband Found |
|---|---|---|---|
| **2012-08-14** | **2012-08-18** | **Suspected Weapons** | **Nothing** |

| Incident Summary | 12-02731-CWRM |
|---|---|

On August 14, 2012, the department placed an inmate on contraband surveillance watch. The inmate was removed from contraband surveillance watch on August 18, 2012, four days later. During that time, the department recovered nothing from the inmate.

**Incident Assessment**

The department adequately complied with policies and procedures. No staff misconduct was identified.

| Date Placed on Contraband Watch | Date Taken off Contraband Watch | Reason for Placement | Contraband Found |
|---|---|---|---|
| **2012-08-20** | **2012-08-24** | **Suspected Inmate Note** | **Inmate Note** |

| Incident Summary | 12-02821-CWRM |
|---|---|

On August 20, 2012, the department placed an inmate on contraband surveillance watch. The inmate was removed from contraband surveillance watch on August 24, 2012, four days later. During that time, the department recovered an inmate note from the inmate.

**Incident Assessment**

The department sufficiently complied with policies and procedures. No staff misconduct was identified.

| Date Placed on Contraband Watch | Date Taken off Contraband Watch | Reason for Placement | Contraband Found |
|---|---|---|---|
| **2012-08-26** | **2012-08-30** | **Suspected Drugs** | **Nothing** |

| Incident Summary | 12-02911-CWRM |
|---|---|

On August 26, 2012, the department placed an inmate on contraband surveillance watch. The inmate was removed from contraband surveillance watch on August 30, 2012, four days later. During that time, the department recovered nothing from the inmate.

**Incident Assessment**

The department adequately complied with policies and procedures. No staff misconduct was identified.

# CENTRAL REGION

| Date Placed on Contraband Watch | Date Taken off Contraband Watch | Reason for Placement | Contraband Found |
|---|---|---|---|
| **2012-09-05** | **2012-09-09** | **Suspicious Activity** | **Nothing** |

| Incident Summary | 12-02981-CWRM |
|---|---|

On September 5, 2012, the department placed an inmate on contraband surveillance watch because officers observed the inmate place an unknown item in his mouth and refused to remove it. The inmate was removed from contraband surveillance watch on September 9, 2012, four days later. During that time, the department recovered nothing from the inmate.

**Incident Assessment**

The department sufficiently complied with policies and procedures. No staff misconduct was identified.

| Date Placed on Contraband Watch | Date Taken off Contraband Watch | Reason for Placement | Contraband Found |
|---|---|---|---|
| **2012-09-11** | **2012-09-18** | **Suspected Weapons** | 1. **Other**<br>2. **Weapons** |

| Incident Summary | 12-03131-CWRM |
|---|---|

On September 11, 2012, the department placed an inmate on contraband surveillance watch. The inmate was removed from contraband surveillance watch on September 18, 2012, seven days later. During that time, the department recovered weapons and coffee from the inmate.

**Incident Assessment**

The department adequately complied with policies and procedures. No staff misconduct was identified.

| Date Placed on Contraband Watch | Date Taken off Contraband Watch | Reason for Placement | Contraband Found |
|---|---|---|---|
| **2012-09-09** | **2012-09-12** | **Suspected Drugs** | **Drugs** |

| Incident Summary | 12-03181-CWRM |
|---|---|

On September 9, 2012, the department placed an inmate on contraband surveillance watch. The inmate was removed from contraband surveillance watch on September 12, 2012, three days later. During that time, the department recovered drugs from the inmate.

**Incident Assessment**

The department sufficiently complied with policies and procedures. No staff misconduct was identified.

| Date Placed on Contraband Watch | Date Taken off Contraband Watch | Reason for Placement | Contraband Found |
|---|---|---|---|
| **2012-09-24** | **2012-09-27** | **Suspected Drugs** | **Nothing** |

| Incident Summary | 12-03351-CWRM |
|---|---|

On September 24, 2012, the department placed an inmate on contraband surveillance watch. The inmate was removed from contraband surveillance watch on September 27, 2012, three days later. During that time, the department recovered nothing from the inmate.

**Incident Assessment**

The department adequately complied with policies and procedures. No staff misconduct was identified.

# CENTRAL REGION

| Date Placed on Contraband Watch | Date Taken off Contraband Watch | Reason for Placement | Contraband Found |
|---|---|---|---|
| **2012-09-28** | **2012-10-01** | **Suspected Drugs** | **Nothing** |

### Incident Summary                                                      12-03401-CWRM

On September 28, 2012, the department placed an inmate on contraband surveillance watch. The inmate was removed from contraband surveillance watch on October 1, 2012, three days later. During that time, the department recovered nothing from the inmate.

### Incident Assessment

The department sufficiently complied with policies and procedures. No staff misconduct was identified.

| Date Placed on Contraband Watch | Date Taken off Contraband Watch | Reason for Placement | Contraband Found |
|---|---|---|---|
| **2012-10-02** | **2012-10-12** | **Suspicious Activity** | **Weapons** |

### Incident Summary                                                      12-03461-CWRM

On October 2, 2012, the department placed an inmate on contraband surveillance watch after the inmate was observed swallowing an unknown object. The inmate was removed from contraband surveillance watch on October 12, 2012, 10 days later. During that time, the department recovered weapons from the inmate.

### Incident Assessment

The department adequately complied with policies and procedures. No staff misconduct was identified.

| Date Placed on Contraband Watch | Date Taken off Contraband Watch | Reason for Placement | Contraband Found |
|---|---|---|---|
| **2012-10-04** | **2012-10-09** | **Suspicious Activity** | **Inmate Note** |

### Incident Summary                                                      12-03521-CWRM

On October 4, 2012, the department placed an inmate on contraband surveillance watch because, during cell searches and unclothed body searches, that inmate was discovered to have lubricant around his rectum. The inmate was removed from contraband surveillance watch on October 9, 2012, five days later. During that time, the department recovered an inmate note from the inmate.

### Incident Assessment

The department sufficiently complied with policies and procedures. No staff misconduct was identified.

| Date Placed on Contraband Watch | Date Taken off Contraband Watch | Reason for Placement | Contraband Found |
|---|---|---|---|
| **2012-10-06** | **2012-10-09** | **Suspicious Activity** | **Drugs** |

### Incident Summary                                                      12-03571-CWRM

On October 6, 2012, the department placed an inmate on contraband surveillance watch because staff members saw him insert an unknown object into his rectum and discovered lubricant around the inmate's rectum. The inmate was removed from contraband surveillance watch on October 9, 2012, three days later. During that time, the department recovered drugs from the inmate.

### Incident Assessment

The department adequately complied with policies and procedures. No staff misconduct was identified.

# CENTRAL REGION

| Date Placed on Contraband Watch | Date Taken off Contraband Watch | Reason for Placement | Contraband Found |
|---|---|---|---|
| **2012-10-06** | **2012-10-09** | **Suspected Drugs** | **Nothing** |

| Incident Summary | 12-03641-CWRM |
|---|---|

On October 6, 2012, the department placed an inmate on contraband surveillance watch. The inmate was removed from contraband surveillance watch on October 9, 2012, three days later. During that time, the department recovered nothing from the inmate.

**Incident Assessment**

The department sufficiently complied with policies and procedures. No staff misconduct was identified.

| Date Placed on Contraband Watch | Date Taken off Contraband Watch | Reason for Placement | Contraband Found |
|---|---|---|---|
| **2012-10-19** | **2012-10-23** | **Suspicious Activity** | **Nothing** |

| Incident Summary | 12-03861-CWRM |
|---|---|

On October 19, 2012, the department placed an inmate on contraband surveillance watch after an inmate refused orders to relinquish an unknown object he was holding, and instead swallowed that object. The inmate was removed from contraband surveillance watch on October 23, 2012, four days later. During that time, the department recovered nothing from the inmate.

**Incident Assessment**

The department adequately complied with policies and procedures. No staff misconduct was identified.

| Date Placed on Contraband Watch | Date Taken off Contraband Watch | Reason for Placement | Contraband Found |
|---|---|---|---|
| **2012-10-27** | **2012-11-08** | **Suspected Drugs** | **Drugs** |

| Incident Summary | 12-03901-CWRM |
|---|---|

On October 27, 2012, the department placed an inmate on contraband surveillance watch. The inmate was removed from contraband surveillance watch on November 8, 2012, 12 days later. During that time, the department recovered drugs from the inmate.

**Incident Assessment**

The department sufficiently complied with policies and procedures. No staff misconduct was identified.

| Date Placed on Contraband Watch | Date Taken off Contraband Watch | Reason for Placement | Contraband Found |
|---|---|---|---|
| **2012-10-29** | **2012-11-02** | **Suspected Drugs** | **Drugs** |

| Incident Summary | 12-03921-CWRM |
|---|---|

On October 29, 2012, the department placed an inmate on contraband surveillance watch. The inmate was removed from contraband surveillance watch on November 2, 2012, three days later. During that time, the department recovered drugs from the inmate.

**Incident Assessment**

The department adequately complied with policies and procedures. No staff misconduct was identified.

# CENTRAL REGION

| Date Placed on Contraband Watch | Date Taken off Contraband Watch | Reason for Placement | Contraband Found |
|---|---|---|---|
| **2012-11-02** | **2012-11-05** | **Suspicious Activity** | **Other** |

| Incident Summary | 12-03961-CWRM |
|---|---|

On November 2, 2012, the department placed an inmate on contraband surveillance watch after the inmate failed to pass the metal detector scan twice as he went through the work change area. The inmate was removed from contraband surveillance watch on November 5, 2012, three days later. During that time, the department recovered a metallic scrubbing pad from the inmate.

**Incident Assessment**

The department sufficiently complied with policies and procedures. No staff misconduct was identified.

| Date Placed on Contraband Watch | Date Taken off Contraband Watch | Reason for Placement | Contraband Found |
|---|---|---|---|
| **2012-11-28** | **2012-12-01** | **Suspected Inmate Note** | **Nothing** |

| Incident Summary | 12-04201-CWRM |
|---|---|

On November 28, 2012, the department placed an inmate on contraband surveillance watch. The inmate was removed from contraband surveillance watch on December 1, 2012, three days later. During that time, the department recovered nothing from the inmate.

**Incident Assessment**

The department adequately complied with policies and procedures. No staff misconduct was identified.

| Date Placed on Contraband Watch | Date Taken off Contraband Watch | Reason for Placement | Contraband Found |
|---|---|---|---|
| **2012-12-07** | **2012-12-10** | **Suspicious Activity** | **Other** |

| Incident Summary | 12-04361-CWRM |
|---|---|

On December 7, 2012, the department placed an inmate on contraband surveillance watch after he was observed swallowing a metal paperclip in a possible attempt to harm himself. The inmate was removed from contraband surveillance watch on December 10, 2012, three days later. During that time, the department recovered a paper clip from the inmate.

**Incident Assessment**

The department sufficiently complied with policies and procedures. No staff misconduct was identified.

| Date Placed on Contraband Watch | Date Taken off Contraband Watch | Reason for Placement | Contraband Found |
|---|---|---|---|
| **2012-12-13** | **2012-12-17** | **Suspicious Activity** | **Nothing** |

| Incident Summary | 12-04451-CWRM |
|---|---|

On December 13, 2012, the department placed an inmate on contraband surveillance watch after a routine medical x-ray revealed a possible secreted foreign object. The inmate was removed from contraband surveillance watch on December 17, 2012, four days later. During that time, the department recovered nothing from the inmate.

**Incident Assessment**

The department adequately complied with policies and procedures. No staff misconduct was identified.

# CENTRAL REGION

| Date Placed on Contraband Watch | Date Taken off Contraband Watch | Reason for Placement | Contraband Found |
|---|---|---|---|
| **2012-12-19** | **2012-12-23** | **Suspected Drugs** | 1. **Drugs** 2. **Inmate Note** |

### Incident Summary                                                          12-04581-CWRM

On December 19, 2012, the department placed an inmate on contraband surveillance watch. The inmate was removed from contraband surveillance watch on December 23, 2012, four days later. During that time, the department recovered drugs and an inmate note from the inmate.

### Incident Assessment

Although the department failed to timely notify the OIG when the inmate was placed on contraband surveillance watch, the department substantially complied in all other critical aspects.

| Date Placed on Contraband Watch | Date Taken off Contraband Watch | Reason for Placement | Contraband Found |
|---|---|---|---|
| **2012-08-09** | **2012-08-12** | **Suspected Drugs** | **Nothing** |

### Incident Summary                                                          12-04871-CWRM

On August 9, 2012, the department placed an inmate on contraband surveillance watch. The inmate was removed from contraband surveillance watch on August 12, 2012, three days later. During that time, the department recovered nothing from the inmate.

### Incident Assessment

The department did not provide timely notification the OIG when the inmate was placed on contraband surveillance watch and failed to sufficiently comply with policies and procedures. The department failed to properly remove the inmate from contraband surveillance watch.

| Date Placed on Contraband Watch | Date Taken off Contraband Watch | Reason for Placement | Contraband Found |
|---|---|---|---|
| **2012-08-24** | **2012-08-28** | **Suspicious Activity** | **Nothing** |

### Incident Summary                                                          12-04881-CWRM

On August 24, 2012, the department placed an inmate on contraband surveillance watch after the inmate swallowed an unidentified object while he attempted to evade officers during a clothed body search. The inmate was removed from contraband surveillance watch on August 28, 2012, four days later. During that time, the department recovered nothing from the inmate.

### Incident Assessment

The department failed to timely notify the OIG when the inmate was placed on contraband surveillance watch and did not adequately comply with policies and procedures in other critical aspects. The department failed to comply with policies and procedures when placing the inmate on and removing the inmate from contraband surveillance watch.

| Date Placed on Contraband Watch | Date Taken off Contraband Watch | Reason for Placement | Contraband Found |
|---|---|---|---|
| **2012-08-04** | **2012-08-13** | **Suspicious Activity** | **Nothing** |

### Incident Summary                                                          12-04891-CWRM

On August 4, 2012, the department placed an inmate on contraband surveillance watch after the inmate ignored orders to relinquish an unidentified object, then swallowed that object as an officer attempted to conduct a clothed body search. The inmate was removed from contraband surveillance watch on August 13, 2012, nine days later. During that time, the department recovered nothing from the inmate.

### Incident Assessment

The department did not provide timely notification to the OIG when the inmate was placed on contraband surveillance watch and failed to sufficiently comply with policies and procedures. The inmate was not correctly placed on contraband surveillance watch.

# NORTH REGION

| Date Placed on Contraband Watch | Date Taken off Contraband Watch | Reason for Placement | Contraband Found |
|---|---|---|---|
| **2012-07-04** | **2012-07-10** | **Suspected Drugs** | 1. **Inmate Note**<br>2. **Tobacco** |

| Incident Summary | 12-02051-CWRM |
|---|---|

On July 4, 2012, the department placed an inmate on contraband surveillance watch. The inmate was removed from contraband surveillance watch on July 10, 2012, six days later. During that time, the department recovered an inmate note and tobacco from the inmate.

| Incident Assessment |
|---|

The department sufficiently complied with policies and procedures. No staff misconduct was identified.


| Date Placed on Contraband Watch | Date Taken off Contraband Watch | Reason for Placement | Contraband Found |
|---|---|---|---|
| **2012-07-02** | **2012-07-09** | **Suspicious Activity** | **Nothing** |

| Incident Summary | 12-02121-CWRM |
|---|---|

On July 2, 2012, the department placed a condemned inmate on contraband surveillance watch when he transferred from a county jail to the department and failed to pass a metal detector scan on two separate occasions. The inmate was removed from contraband surveillance watch on July 9, 2012, seven days later. During that time, the department recovered nothing from the inmate.

| Incident Assessment |
|---|

The department did not provide timely notification the OIG when the inmate was placed on contraband surveillance watch and failed to sufficiently comply with policies and procedures. The appropriate documentation was not completed by the department.


| Date Placed on Contraband Watch | Date Taken off Contraband Watch | Reason for Placement | Contraband Found |
|---|---|---|---|
| **2012-07-10** | **2012-07-17** | **Suspicious Activity** | **Nothing** |

| Incident Summary | 12-02201-CWRM |
|---|---|

On July 10, 2012, the department placed an inmate on contraband surveillance watch after staff members observed the inmate reach toward his waist and place an unknown object into his mouth during an unclothed body search. The inmate was removed from contraband surveillance watch on July 17, 2012, seven days later. During that time, the department recovered nothing from the inmate.

| Incident Assessment |
|---|

Although the department failed to timely notify the OIG when the inmate was placed on contraband surveillance watch, the department substantially complied in all other critical aspects.


| Date Placed on Contraband Watch | Date Taken off Contraband Watch | Reason for Placement | Contraband Found |
|---|---|---|---|
| **2012-07-13** | **2012-07-18** | **Suspicious Activity** | **Nothing** |

| Incident Summary | 12-02281-CWRM |
|---|---|

On July 13, 2012, the department placed an inmate on contraband surveillance watch after the inmate inserted a foreign object into his genitals and swallowed an unknown metal object. The inmate was removed from contraband surveillance watch on July 18, 2012, five days later. During that time, the department recovered nothing from the inmate.

| Incident Assessment |
|---|

The department did not sufficiently comply with policies and procedures, although it did provide timely notification to the OIG when the inmate was placed on contraband surveillance watch. The department failed to properly remove the inmate from contraband surveillance watch. Health and safety concerns, medical assessments, and required documentation were not properly completed by the department.

# NORTH REGION

| Date Placed on Contraband Watch | Date Taken off Contraband Watch | Reason for Placement | Contraband Found |
|---|---|---|---|
| **2012-07-17** | **2012-07-23** | **Suspected Drugs** | **Other** |

### Incident Summary                                                12-02321-CWRM

On July 17, 2012, the department placed an inmate on contraband surveillance watch. The inmate was removed from contraband surveillance watch on July 23, 2012, six days later. During that time, four bindles were discovered in a mattress located in the cell where the inmate was placed on contraband surveillance watch. The bindles were empty, but it was believed they contained narcotics the inmate consumed.

### Incident Assessment

Although the department provided adequate notification to the OIG when placing the inmate on contraband surveillance watch, it did not sufficiently comply with policies and procedures in other critical aspects. The department did not complete the appropriate documentation.

| Date Placed on Contraband Watch | Date Taken off Contraband Watch | Reason for Placement | Contraband Found |
|---|---|---|---|
| **2012-07-17** | **2012-07-23** | **Suspected Drugs** | **Nothing** |

### Incident Summary                                                12-02331-CWRM

On July 17, 2012, the department placed an inmate on contraband surveillance watch. The inmate was removed from contraband surveillance watch on July 23, 2012, six days later. During that time, the department recovered nothing from the inmate.

### Incident Assessment

The department did not sufficiently comply with policies and procedures, although it did provide timely notification to the OIG when the inmate was placed on contraband surveillance watch. Restraints or hand-isolation devices were not applied correctly. The appropriate documentation was not completed by the department.

| Date Placed on Contraband Watch | Date Taken off Contraband Watch | Reason for Placement | Contraband Found |
|---|---|---|---|
| **2012-07-22** | **2012-07-26** | **Suspicious Activity** | **Nothing** |

### Incident Summary                                                12-02421-CWRM

On July 22, 2012, the department placed an inmate on contraband surveillance watch after officers observed lubricant around the inmate's rectum during an unclothed body search. The inmate was removed from contraband surveillance watch on July 26, 2012, four days later. During that time, the department recovered nothing from the inmate.

### Incident Assessment

The department sufficiently complied with policies and procedures. No staff misconduct was identified.

| Date Placed on Contraband Watch | Date Taken off Contraband Watch | Reason for Placement | Contraband Found |
|---|---|---|---|
| **2012-07-22** | **2012-07-26** | **Suspicious Activity** | **Drugs** |

### Incident Summary                                                12-02441-CWRM

On July 22, 2012, the department placed an inmate on contraband surveillance watch after staff members observed the inmate receive an unknown object from a visitor and place it in his mouth. The inmate was removed from contraband surveillance watch on July 26, 2012, four days later. During that time, the department recovered drugs from the inmate.

### Incident Assessment

The department adequately complied with policies and procedures. No staff misconduct was identified.

# NORTH REGION

| Date Placed on Contraband Watch | Date Taken off Contraband Watch | Reason for Placement | Contraband Found |
|---|---|---|---|
| **2012-07-29** | **2012-08-03** | **Suspicious Activity** | **Nothing** |

### Incident Summary
12-02491-CWRM

On July 29, 2012, the department placed an inmate on contraband surveillance watch after an officer discovered cellophane packages in the inmate's underwear during an unclothed body search. The inmate ran and the officer observed the inmate place an unknown item in his mouth and begin chewing. The inmate was removed from contraband surveillance watch on August 3, 2012, five days later. During that time, the department recovered nothing from the inmate.

### Incident Assessment
The department sufficiently complied with policies and procedures. No staff misconduct was identified.

| Date Placed on Contraband Watch | Date Taken off Contraband Watch | Reason for Placement | Contraband Found |
|---|---|---|---|
| **2012-08-01** | **2012-08-05** | **Suspected Drugs** | **Inmate Note** |

### Incident Summary
12-02531-CWRM

On August 1, 2012, the department placed an inmate on contraband surveillance watch. The inmate was removed from contraband surveillance watch on August 5, 2012, four days later. During that time, the department recovered an inmate note from the inmate.

### Incident Assessment
The department adequately complied with policies and procedures. No staff misconduct was identified.

| Date Placed on Contraband Watch | Date Taken off Contraband Watch | Reason for Placement | Contraband Found |
|---|---|---|---|
| **2012-08-05** | **2012-08-16** | **Suspected Drugs** | **Nothing** |

### Incident Summary
12-02561-CWRM

On August 5, 2012, the department placed an inmate on contraband surveillance watch. The inmate was removed from contraband surveillance watch on August 16, 2012, 11 days later. During that time, the department recovered nothing from the inmate.

### Incident Assessment
The department sufficiently complied with policies and procedures. No staff misconduct was identified.

| Date Placed on Contraband Watch | Date Taken off Contraband Watch | Reason for Placement | Contraband Found |
|---|---|---|---|
| **2012-08-13** | **2012-08-16** | **Suspicious Activity** | **Weapons** |

### Incident Summary
12-02691-CWRM

On August 13, 2012, the department placed an inmate on contraband surveillance watch after he failed to pass a hand-held metal detector scan. The inmate was removed from contraband surveillance watch on August 16, 2012, three days later. During that time, the department recovered weapons from the inmate. Custody staff observed the inmate attempt to remove a weapon from his rectum while he was wearing soft hand isolation devices. Custody staff utilized pepper spray to stop the inmate and take possession of the weapon. The weapon recovered was two broken pieces of plastic with a sheath.

### Incident Assessment
The department adequately complied with policies and procedures. No staff misconduct was identified.

# NORTH REGION

| Date Placed on Contraband Watch | Date Taken off Contraband Watch | Reason for Placement | Contraband Found |
|---|---|---|---|
| **2012-08-11** | **2012-08-14** | **Suspected Drugs** | **Drugs** |

### Incident Summary
12-02701-CWRM

On August 11, 2012, the department placed an inmate on contraband surveillance watch. The inmate was removed from contraband surveillance watch on August 14, 2012, three days later. During that time, the department recovered drugs from the inmate.

### Incident Assessment

The department sufficiently complied with policies and procedures. No staff misconduct was identified.

| Date Placed on Contraband Watch | Date Taken off Contraband Watch | Reason for Placement | Contraband Found |
|---|---|---|---|
| **2012-08-16** | **2012-08-20** | **Suspected Weapons** | **Nothing** |

### Incident Summary
12-02751-CWRM

On August 16, 2012, the department placed an inmate on contraband surveillance watch. The inmate was removed from contraband surveillance watch on August 20, 2012, four days later. During that time, the department recovered nothing from the inmate.

### Incident Assessment

The department did not sufficiently comply with policies and procedures, although it did provide timely notification to the OIG when the inmate was placed on contraband surveillance watch. The department failed to properly remove the inmate from contraband surveillance watch. The appropriate documentation was not completed by the department.

| Date Placed on Contraband Watch | Date Taken off Contraband Watch | Reason for Placement | Contraband Found |
|---|---|---|---|
| **2012-08-18** | **2012-08-22** | **Suspicious Activity** | **Nothing** |

### Incident Summary
12-02761-CWRM

On August 18, 2012, the department placed an inmate on contraband surveillance watch after the inmate was observed picking an unknown object off the ground and placing it into his mouth. The inmate was removed from contraband surveillance watch on August 22, 2012, four days later. During that time, the department recovered nothing from the inmate.

### Incident Assessment

The department sufficiently complied with policies and procedures. No staff misconduct was identified.

| Date Placed on Contraband Watch | Date Taken off Contraband Watch | Reason for Placement | Contraband Found |
|---|---|---|---|
| **2012-08-22** | **2012-08-28** | **Suspected Weapons** | 1. **Inmate Note** <br> 2. **Weapons** |

### Incident Summary
12-02831-CWRM

On August 22, 2012, the department placed an inmate on contraband surveillance watch. The inmate was removed from contraband surveillance watch on August 28, 2012, six days later. During that time, the department recovered weapons and an inmate note from the inmate.

### Incident Assessment

The department did not sufficiently comply with policies and procedures, although it did provide timely notification to the OIG when the inmate was placed on contraband surveillance watch. The appropriate documentation was not completed by the department.

# NORTH REGION

| Date Placed on Contraband Watch | Date Taken off Contraband Watch | Reason for Placement | Contraband Found |
|---|---|---|---|
| **2012-08-25** | **2012-08-29** | **Suspected Drugs** | **Drugs** |

### Incident Summary
12-02881-CWRM

On August 25, 2012, the department placed an inmate on contraband surveillance watch. The inmate was removed from contraband surveillance watch on August 29, 2012, four days later. During that time, the department recovered methamphetamine from the inmate.

### Incident Assessment

The department sufficiently complied with policies and procedures. No staff misconduct was identified.

| Date Placed on Contraband Watch | Date Taken off Contraband Watch | Reason for Placement | Contraband Found |
|---|---|---|---|
| **2012-09-02** | **2012-09-07** | **Suspicious Activity** | **Nothing** |

### Incident Summary
12-02931-CWRM

On September 2, 2012, the department placed an inmate on contraband surveillance watch after a staff member observed lubricant around the inmate's rectum and the inmate reported he secreted a bindle in his rectum. The inmate was removed from contraband surveillance watch on September 7, 2012, five days later. During that time, the department recovered nothing from the inmate.

### Incident Assessment

The department adequately complied with policies and procedures. No staff misconduct was identified.

| Date Placed on Contraband Watch | Date Taken off Contraband Watch | Reason for Placement | Contraband Found |
|---|---|---|---|
| **2012-08-30** | **2012-09-04** | **Suspected Weapons** | **Nothing** |

### Incident Summary
12-02941-CWRM

On August 30, 2012, the department placed an inmate on contraband surveillance watch. The inmate was removed from contraband surveillance watch on September 4, 2012, five days later. During that time, the department recovered nothing from the inmate.

### Incident Assessment

Although the department provided adequate notification to the OIG when placing the inmate on contraband surveillance watch, it did not sufficiently comply with policies and procedures in other critical aspects. The department did not complete the appropriate documentation.

| Date Placed on Contraband Watch | Date Taken off Contraband Watch | Reason for Placement | Contraband Found |
|---|---|---|---|
| **2012-09-06** | **2012-09-10** | **Suspicious Activity** | **Nothing** |

### Incident Summary
12-02991-CWRM

On September 6, 2012, the department placed an inmate on contraband surveillance watch after the inmate reported he swallowed a razor blade. The inmate was removed from contraband surveillance watch on September 10, 2012, four days later. During that time, the department recovered nothing from the inmate.

### Incident Assessment

The department did not sufficiently comply with policies and procedures, although it did provide timely notification to the OIG when the inmate was placed on contraband surveillance watch. The appropriate documentation was not completed by the department.

# NORTH REGION

| Date Placed on Contraband Watch | Date Taken off Contraband Watch | Reason for Placement | Contraband Found |
|---|---|---|---|
| **2012-09-06** | **2012-09-10** | **Suspected Weapons** | **Nothing** |

### Incident Summary
12-03021-CWRM

On September 6, 2012, the department placed an inmate on contraband surveillance watch. The inmate was removed from contraband surveillance watch on September 10, 2012, four days later. During that time, the department recovered nothing from the inmate.

### Incident Assessment
The department sufficiently complied with policies and procedures. No staff misconduct was identified.

| Date Placed on Contraband Watch | Date Taken off Contraband Watch | Reason for Placement | Contraband Found |
|---|---|---|---|
| **2012-09-07** | **2012-09-13** | **Suspected Weapons** | **Other** |

### Incident Summary
12-03101-CWRM

On September 7, 2012, the department placed an inmate on contraband surveillance watch. The inmate was removed from contraband surveillance watch on September 13, 2012, six days later. During that time, the department recovered razor blades, hearing aids, finger nail clippers, and a can opener.

### Incident Assessment
The department adequately complied with policies and procedures. No staff misconduct was identified.

| Date Placed on Contraband Watch | Date Taken off Contraband Watch | Reason for Placement | Contraband Found |
|---|---|---|---|
| **2012-09-08** | **2012-09-11** | **Suspected Drugs** | **Drugs** |

### Incident Summary
12-03111-CWRM

On September 8, 2012, the department placed an inmate on contraband surveillance watch. The inmate was removed from contraband surveillance watch on September 11, 2012, three days later. During that time, the department recovered marijuana from the inmate.

### Incident Assessment
The department sufficiently complied with policies and procedures. No staff misconduct was identified.

| Date Placed on Contraband Watch | Date Taken off Contraband Watch | Reason for Placement | Contraband Found |
|---|---|---|---|
| **2012-09-11** | **2012-09-16** | **Suspicious Activity** | **Drugs** |

### Incident Summary
12-03141-CWRM

On September 11, 2012, the department placed an inmate on contraband surveillance watch after a staff member observed a foreign object protruding from the inmate's rectum. The inmate was removed from contraband surveillance watch on September 16, 2012, five days later. During that time, the department recovered methamphetamine from the inmate.

### Incident Assessment
The department adequately complied with policies and procedures. No staff misconduct was identified.

# North Region

| Date Placed on Contraband Watch | Date Taken off Contraband Watch | Reason for Placement | Contraband Found |
|---|---|---|---|
| **2012-09-12** | **2012-09-19** | **Suspected Drugs** | **Drugs** |

**Incident Summary**                                                    12-03221-CWRM

On September 12, 2012, the department placed an inmate on contraband surveillance watch. The inmate was removed from contraband surveillance watch on September 19, 2012, seven days later. During that time, the department recovered methamphetamine from the inmate.

**Incident Assessment**

Although the department provided adequate notification to the OIG when placing the inmate on contraband surveillance watch, it did not sufficiently comply with policies and procedures in other critical aspects. The inmate was not properly removed from contraband surveillance watch. The department did not complete the appropriate documentation.

| Date Placed on Contraband Watch | Date Taken off Contraband Watch | Reason for Placement | Contraband Found |
|---|---|---|---|
| **2012-09-13** | **2012-09-17** | **Suspected Weapons** | **Nothing** |

**Incident Summary**                                                    12-03241-CWRM

On September 13, 2012, the department placed an inmate on contraband surveillance watch. The inmate was removed from contraband surveillance watch on September 17, 2012, four days later. During that time, the department recovered nothing from the inmate.

**Incident Assessment**

The department did not sufficiently comply with policies and procedures, although it did provide timely notification to the OIG when the inmate was placed on contraband surveillance watch. The appropriate documentation was not completed by the department.

| Date Placed on Contraband Watch | Date Taken off Contraband Watch | Reason for Placement | Contraband Found |
|---|---|---|---|
| **2012-09-16** | **2012-09-21** | **Suspected Mobile Phone** | **Nothing** |

**Incident Summary**                                                    12-03281-CWRM

On September 16, 2012, the department placed an inmate on contraband surveillance watch. The inmate was removed from contraband surveillance watch on September 21, 2012, five days later. During that time, the department recovered nothing from the inmate.

**Incident Assessment**

The department sufficiently complied with policies and procedures. No staff misconduct was identified.

| Date Placed on Contraband Watch | Date Taken off Contraband Watch | Reason for Placement | Contraband Found |
|---|---|---|---|
| **2012-09-22** | **2012-09-25** | **Suspected Drugs** | **Nothing** |

**Incident Summary**                                                    12-03311-CWRM

On September 22, 2012, the department placed an inmate on contraband surveillance watch. The inmate was removed from contraband surveillance watch on September 25, 2012, three days later. During that time, the department recovered nothing from the inmate.

**Incident Assessment**

The department did not sufficiently comply with policies and procedures, although it did provide timely notification to the OIG when the inmate was placed on contraband surveillance watch. The appropriate documentation was not completed by the department.

# NORTH REGION

| Date Placed on Contraband Watch | Date Taken off Contraband Watch | Reason for Placement | Contraband Found |
|---|---|---|---|
| **2012-09-30** | **2012-10-05** | **Suspected Drugs** | **Drugs** |

### Incident Summary
12-03451-CWRM

On September 30, 2012, the department placed an inmate on contraband surveillance watch. The inmate was removed from contraband surveillance watch on October 5, 2012, five days later. During that time, the department recovered methamphetamine from the inmate.

### Incident Assessment
Although the department provided adequate notification to the OIG when placing the inmate on contraband surveillance watch, it did not sufficiently comply with policies and procedures in other critical aspects. The inmate was not properly removed from contraband surveillance watch. The department did not complete the appropriate documentation.

| Date Placed on Contraband Watch | Date Taken off Contraband Watch | Reason for Placement | Contraband Found |
|---|---|---|---|
| **2012-10-02** | **2012-10-05** | **Suspicious Activity** | **Nothing** |

### Incident Summary
12-03471-CWRM

On October 2, 2012, the department placed an inmate on contraband surveillance watch after the inmate refused to submit to an unclothed body search and failed to pass a hand-held metal detector scan. The inmate was removed from contraband surveillance watch on October 5, 2012, three days later. During that time, the department recovered nothing from the inmate.

### Incident Assessment
The department did not sufficiently comply with policies and procedures, although it did provide timely notification to the OIG when the inmate was placed on contraband surveillance watch. The appropriate documentation was not completed by the department.

| Date Placed on Contraband Watch | Date Taken off Contraband Watch | Reason for Placement | Contraband Found |
|---|---|---|---|
| **2012-10-02** | **2012-10-05** | **Suspicious Activity** | **Nothing** |

### Incident Summary
12-03481-CWRM

On October 2, 2012, the department placed an inmate on contraband surveillance watch after the inmate refused to submit to an unclothed body search and failed to pass a hand-held metal detector scan. The inmate was removed from contraband surveillance watch on October 5, 2012, three days later. During that time, the department recovered nothing from the inmate.

### Incident Assessment
The department sufficiently complied with policies and procedures. No staff misconduct was identified.

| Date Placed on Contraband Watch | Date Taken off Contraband Watch | Reason for Placement | Contraband Found |
|---|---|---|---|
| **2012-10-15** | **2012-10-22** | **Suspicious Activity** | **1. Inmate Note**<br>**2. Weapons** |

### Incident Summary
12-03751-CWRM

On October 15, 2012, the department placed an inmate on contraband surveillance watch after the inmate failed to pass multiple hand-held metal detector scans. The inmate was removed from contraband surveillance watch on October 22, 2012, seven days later. During that time, the department recovered weapons and an inmate note from the inmate.

### Incident Assessment
The department adequately complied with policies and procedures. No staff misconduct was identified.

# NORTH REGION

| Date Placed on Contraband Watch | Date Taken off Contraband Watch | Reason for Placement | Contraband Found |
|---|---|---|---|
| **2012-10-15** | **2012-10-22** | **Suspicious Activity** | 1. **Inmate Note**<br>2. **Weapons** |

| Incident Summary | 12-03761-CWRM |
|---|---|

On October 15, 2012, the department placed an inmate on contraband surveillance watch after the inmate failed to pass multiple hand-held metal detector scans. The inmate was removed from contraband surveillance watch on October 22, 2012, seven days later. During that time, the department recovered weapons and inmate notes from the inmate.

**Incident Assessment**

The department sufficiently complied with policies and procedures. No staff misconduct was identified.

| Date Placed on Contraband Watch | Date Taken off Contraband Watch | Reason for Placement | Contraband Found |
|---|---|---|---|
| **2012-10-15** | **2012-10-22** | **Suspicious Activity** | 1. **Inmate Note**<br>2. **Weapons** |

| Incident Summary | 12-03771-CWRM |
|---|---|

On October 15, 2012, the department placed an inmate on contraband surveillance watch after the inmate failed to pass multiple hand-held metal detector scans. The inmate was removed from contraband surveillance watch on October 22, 2012, seven days later. During that time, the department recovered weapons and an inmate note from the inmate.

**Incident Assessment**

The department adequately complied with policies and procedures. No staff misconduct was identified.

| Date Placed on Contraband Watch | Date Taken off Contraband Watch | Reason for Placement | Contraband Found |
|---|---|---|---|
| **2012-10-18** | **2012-10-27** | **Suspected Inmate Note** | **Nothing** |

| Incident Summary | 12-03791-CWRM |
|---|---|

On October 18, 2012, the department placed an inmate on contraband surveillance watch. The inmate was removed from contraband surveillance watch on October 27, 2012, nine days later. During that time, the department recovered nothing from the inmate.

**Incident Assessment**

The department sufficiently complied with policies and procedures. No staff misconduct was identified.

| Date Placed on Contraband Watch | Date Taken off Contraband Watch | Reason for Placement | Contraband Found |
|---|---|---|---|
| **2012-10-21** | **2012-10-26** | **Suspicious Activity** | **Drugs** |

| Incident Summary | 12-03821-CWRM |
|---|---|

On October 21, 2012, the department placed an inmate on contraband surveillance watch after an officer observed the inmate take a foreign object from a visitor and swallow it. The inmate was removed from contraband surveillance watch on October 26, 2012, five days later. During that time, the department recovered drugs from the inmate.

**Incident Assessment**

The department adequately complied with policies and procedures. No staff misconduct was identified.

# NORTH REGION

| Date Placed on Contraband Watch | Date Taken off Contraband Watch | Reason for Placement | Contraband Found |
|---|---|---|---|
| **2012-11-07** | **2012-11-13** | **Suspected Inmate Note** | **Nothing** |

### Incident Summary
12-04021-CWRM

On November 7, 2012, the department placed an inmate on contraband surveillance watch. The inmate was removed from contraband surveillance watch on November 13, 2012, six days later. During that time, the department recovered nothing from the inmate.

### Incident Assessment

Although the department provided adequate notification to the OIG when placing the inmate on contraband surveillance watch, it did not sufficiently comply with policies and procedures in other critical aspects. The department did not complete the appropriate documentation.

| Date Placed on Contraband Watch | Date Taken off Contraband Watch | Reason for Placement | Contraband Found |
|---|---|---|---|
| **2012-11-12** | **2012-11-17** | **Suspected Drugs** | **Drugs** |

### Incident Summary
12-04071-CWRM

On November 12, 2012, the department placed an inmate on contraband surveillance watch. The inmate was removed from contraband surveillance watch on November 17, 2012, five days later. During that time, the department recovered drugs from the inmate. While on contraband watch officers observed the inmate demonstrate bizarre behavior. Medical staff responded and the inmate was taken to an outside hospital due to possible drug overdose. While at the hospital, an empty balloon was recovered and the inmate tested positive for methamphetamine and marijuana.

### Incident Assessment

The department did not sufficiently comply with policies and procedures, although it did provide timely notification to the OIG when the inmate was placed on contraband surveillance watch. The department failed to properly remove the inmate from contraband surveillance watch. The appropriate documentation was not completed by the department.

| Date Placed on Contraband Watch | Date Taken off Contraband Watch | Reason for Placement | Contraband Found |
|---|---|---|---|
| **2012-11-14** | **2012-11-17** | **Suspicious Activity** | **Nothing** |

### Incident Summary
12-04081-CWRM

On November 14, 2012, the department placed an inmate on contraband surveillance watch after an officer observed lubricant around the inmate's rectum. The inmate was removed from contraband surveillance watch on November 17, 2012, three days later. During that time, the department recovered nothing from the inmate.

### Incident Assessment

The department sufficiently complied with policies and procedures. No staff misconduct was identified.

| Date Placed on Contraband Watch | Date Taken off Contraband Watch | Reason for Placement | Contraband Found |
|---|---|---|---|
| **2012-11-19** | **2012-11-22** | **Suspicious Activity** | **Nothing** |

### Incident Summary
12-04161-CWRM

On November 19, 2012, the department placed an inmate on contraband surveillance watch after a staff member observed the inmate swallow a foreign object during an unannounced search. The inmate was removed from contraband surveillance watch on November 22, 2012, three days later. During that time, the department recovered nothing from the inmate.

### Incident Assessment

The department did not sufficiently comply with policies and procedures, although it did provide timely notification to the OIG when the inmate was placed on contraband surveillance watch. The appropriate documentation was not completed by the department.

# North Region

| Date Placed on Contraband Watch | Date Taken off Contraband Watch | Reason for Placement | Contraband Found |
|---|---|---|---|
| **2012-12-04** | **2012-12-07** | **Suspicious Activity** | **Nothing** |

### Incident Summary
12-04261-CWRM

On December 4, 2012, the department placed an inmate on contraband surveillance watch after an officer observed the inmate swallow a foreign object while approaching the inmate's cell. The inmate was removed from contraband surveillance watch on December 7, 2012, three days later. During that time, the department recovered nothing from the inmate.

### Incident Assessment

Although the department provided adequate notification to the OIG when placing the inmate on contraband surveillance watch, it did not sufficiently comply with policies and procedures in other critical aspects. The inmate was not properly removed from contraband surveillance watch. The department did not complete the appropriate documentation.

| Date Placed on Contraband Watch | Date Taken off Contraband Watch | Reason for Placement | Contraband Found |
|---|---|---|---|
| **2012-12-04** | **2012-12-07** | **Suspicious Activity** | **Nothing** |

### Incident Summary
12-04271-CWRM

On December 4, 2012, the department placed an inmate on contraband surveillance watch because he was seen swallowing an unknown item at his cell. The inmate was removed from contraband surveillance watch on December 7, 2012, three days later. During that time, the department recovered nothing from the inmate.

### Incident Assessment

The department did not sufficiently comply with policies and procedures, although it did provide timely notification to the OIG when the inmate was placed on contraband surveillance watch. The department failed to properly remove the inmate from contraband surveillance watch. The appropriate documentation was not completed by the department.

| Date Placed on Contraband Watch | Date Taken off Contraband Watch | Reason for Placement | Contraband Found |
|---|---|---|---|
| **2012-12-04** | **2012-12-07** | **Suspicious Activity** | **Inmate Note** |

### Incident Summary
12-04281-CWRM

On December 4, 2012, the department placed an inmate on contraband surveillance watch after the department's investigative service unit received information from a confidential reliable informant that the inmate possessed inmate notes and during an unclothed body search an officer observed lubricant around the inmate's rectum. The inmate was removed from contraband surveillance watch on December 7, 2012, three days later. During that time, the department recovered inmate notes from the inmate.

### Incident Assessment

The department sufficiently complied with policies and procedures. No staff misconduct was identified.

| Date Placed on Contraband Watch | Date Taken off Contraband Watch | Reason for Placement | Contraband Found |
|---|---|---|---|
| **2012-12-07** | **2012-12-11** | **Suspicious Activity** | **Inmate Note** |

### Incident Summary
12-04371-CWRM

On December 7, 2012, the department placed an inmate on contraband surveillance watch after staff members observed an inmate swallow an unknown object. The inmate was removed from contraband surveillance watch on December 11, 2012, four days later. During that time, the department recovered inmate notes from the inmate.

### Incident Assessment

The department adequately complied with policies and procedures. No staff misconduct was identified.

# NORTH REGION

| Date Placed on Contraband Watch | Date Taken off Contraband Watch | Reason for Placement | Contraband Found |
|---|---|---|---|
| **2012-12-14** | **2012-12-17** | **Suspected Drugs** | **Drugs** |

| Incident Summary | 12-04501-CWRM |
|---|---|

On December 14, 2012, the department placed an inmate on contraband surveillance watch. The inmate was removed from contraband surveillance watch on December 17, 2012, three days later. During that time, the department recovered methamphetamine from the inmate.

**Incident Assessment**

Although the department provided adequate notification to the OIG when placing the inmate on contraband surveillance watch, it did not sufficiently comply with policies and procedures in other critical aspects. The department did not conduct appropriate medical assessments, address health and safety concerns, and complete the appropriate documentation.

| Date Placed on Contraband Watch | Date Taken off Contraband Watch | Reason for Placement | Contraband Found |
|---|---|---|---|
| **2012-12-15** | **2012-12-24** | **Suspected Weapons** | **1. Other** **2. Weapons** |

| Incident Summary | 12-04531-CWRM |
|---|---|

On December 15, 2012, the department placed an inmate on contraband surveillance watch. The inmate was removed from contraband surveillance watch on December 24, 2012, nine days later. During that time, the department recovered weapons and a lighter from the inmate.

**Incident Assessment**

The department adequately complied with policies and procedures. No staff misconduct was identified.

| Date Placed on Contraband Watch | Date Taken off Contraband Watch | Reason for Placement | Contraband Found |
|---|---|---|---|
| **2012-12-19** | **2012-12-26** | **Suspicious Activity** | **Nothing** |

| Incident Summary | 12-04561-CWRM |
|---|---|

On December 19, 2012, the department placed an inmate on contraband surveillance watch after the inmate reported he possessed four handcuff keys in his rectum. The inmate was removed from contraband surveillance watch on December 26, 2012, seven days later. During that time, the department recovered nothing from the inmate.

**Incident Assessment**

The department sufficiently complied with policies and procedures. No staff misconduct was identified.

# SOUTH REGION

| Date Placed on Contraband Watch **2012-07-03** | Date Taken off Contraband Watch **2012-07-08** | Reason for Placement **Suspected Weapons** | Contraband Found **1. Inmate Note** **2. Other** |
|---|---|---|---|

### Incident Summary                                                    12-02081-CWRM

On July 3, 2012, the department placed an inmate on contraband surveillance watch. The inmate was removed from contraband surveillance watch on July 8, 2012, five days later. During that time, the department recovered an inmate note and an electrical plug from the inmate.

### Incident Assessment

The department adequately complied with policies and procedures. No staff misconduct was identified.

| Date Placed on Contraband Watch **2012-07-03** | Date Taken off Contraband Watch **2012-07-08** | Reason for Placement **Suspected Weapons** | Contraband Found **Nothing** |
|---|---|---|---|

### Incident Summary                                                    12-02091-CWRM

On July 3, 2012, the department placed an inmate on contraband surveillance watch. The inmate was removed from contraband surveillance watch on July 8, 2012, five days later. During that time, the department recovered nothing from the inmate.

### Incident Assessment

Although the department failed to timely notify the OIG when the inmate was placed on contraband surveillance watch, the department substantially complied in all other critical aspects.

| Date Placed on Contraband Watch **2012-07-17** | Date Taken off Contraband Watch **2012-07-22** | Reason for Placement **Suspected Drugs** | Contraband Found **Drugs** |
|---|---|---|---|

### Incident Summary                                                    12-02301-CWRM

On July 17, 2012, the department placed an inmate on contraband surveillance watch. The inmate was removed from contraband surveillance watch on July 22, 2012, five days later. During that time, the department recovered drugs from the inmate.

### Incident Assessment

The department did not sufficiently comply with policies and procedures, although it did provide timely notification to the OIG when the inmate was placed on contraband surveillance watch. The appropriate documentation was not completed by the department.

| Date Placed on Contraband Watch **2012-07-19** | Date Taken off Contraband Watch **2012-07-24** | Reason for Placement **Suspicious Activity** | Contraband Found **Nothing** |
|---|---|---|---|

### Incident Summary                                                    12-02371-CWRM

On July 19, 2012, the department placed an inmate on contraband surveillance watch because, during a clothed body search, the inmate ran from officers and was observed removing an unknown object from his shorts and placing it in his mouth. The inmate was removed from contraband surveillance watch on July 24, 2012, five days later. During that time, the department recovered nothing from the inmate.

### Incident Assessment

Although the department provided adequate notification to the OIG when placing the inmate on contraband surveillance watch, it did not sufficiently comply with policies and procedures in other critical aspects. The department did not complete the appropriate documentation.

# SOUTH REGION

| Date Placed on Contraband Watch | Date Taken off Contraband Watch | Reason for Placement | Contraband Found |
|---|---|---|---|
| **2012-07-19** | **2012-07-24** | **Suspected Drugs** | **Nothing** |

### Incident Summary
12-02381-CWRM

On July 19, 2012, the department placed an inmate on contraband surveillance watch. The inmate was removed from contraband surveillance watch on July 24, 2012, five days later. During that time, the department recovered nothing from the inmate.

### Incident Assessment

The department did not sufficiently comply with policies and procedures, although it did provide timely notification to the OIG when the inmate was placed on contraband surveillance watch. The appropriate documentation was not completed by the department.

| Date Placed on Contraband Watch | Date Taken off Contraband Watch | Reason for Placement | Contraband Found |
|---|---|---|---|
| **2012-07-22** | **2012-07-27** | **Suspected Drugs** | **Other** |

### Incident Summary
12-02431-CWRM

On July 22, 2012, the department placed an inmate on contraband surveillance watch. The inmate was removed from contraband surveillance watch on July 27, 2012, five days later. During that time, the department recovered black electrical tape from the inmate.

### Incident Assessment

Although the department provided adequate notification to the OIG when placing the inmate on contraband surveillance watch, it did not sufficiently comply with policies and procedures in other critical aspects. The department did not conduct appropriate medical assessments and address health and safety concerns. Potential staff misconduct was identified. Therefore, the case was referred to the Office of Internal Affairs for investigation. An investigation was opened, which the OIG accepted for monitoring.

| Date Placed on Contraband Watch | Date Taken off Contraband Watch | Reason for Placement | Contraband Found |
|---|---|---|---|
| **2012-08-04** | **2012-08-10** | **Suspected Drugs** | **Drugs** |

### Incident Summary
12-02571-CWRM

On August 4, 2012, the department placed an inmate on contraband surveillance watch. The inmate was removed from contraband surveillance watch on August 10, 2012, six days later. During that time, the department recovered drugs from the inmate.

### Incident Assessment

The department adequately complied with policies and procedures. No staff misconduct was identified.

| Date Placed on Contraband Watch | Date Taken off Contraband Watch | Reason for Placement | Contraband Found |
|---|---|---|---|
| **2012-08-09** | **2012-08-13** | **Suspected Drugs** | **Drugs** |

### Incident Summary
12-02621-CWRM

On August 9, 2012, the department placed an inmate on contraband surveillance watch. The inmate was removed from contraband surveillance watch on August 13, 2012, four days later. During that time, the department recovered drugs from the inmate.

### Incident Assessment

Although the department provided adequate notification to the OIG when placing the inmate on contraband surveillance watch, it did not sufficiently comply with policies and procedures in other critical aspects. The inmate was not properly removed from contraband surveillance watch.

# SOUTH REGION

| Date Placed on Contraband Watch | Date Taken off Contraband Watch | Reason for Placement | Contraband Found |
|---|---|---|---|
| **2012-08-12** | **2012-08-16** | **Suspected Drugs** | **Drugs** |

| Incident Summary | 12-02651-CWRM |
|---|---|

On August 12, 2012, the department placed an inmate on contraband surveillance watch. The inmate was removed from contraband surveillance watch on August 16, 2012, four days later. During that time, the department recovered drugs from the inmate.

**Incident Assessment**

The department adequately complied with policies and procedures. No staff misconduct was identified.

| Date Placed on Contraband Watch | Date Taken off Contraband Watch | Reason for Placement | Contraband Found |
|---|---|---|---|
| **2012-08-20** | **2012-08-30** | **Suspected Tobacco** | **Tobacco** |

| Incident Summary | 12-02771-CWRM |
|---|---|

On August 20, 2012, the department placed an inmate on contraband surveillance watch. The inmate was removed from contraband surveillance watch on August 30, 2012, 10 days later. During that time, the department recovered tobacco from the inmate.

**Incident Assessment**

The department sufficiently complied with policies and procedures. No staff misconduct was identified.

| Date Placed on Contraband Watch | Date Taken off Contraband Watch | Reason for Placement | Contraband Found |
|---|---|---|---|
| **2012-09-09** | **2012-09-12** | **Suspected Drugs** | **Drugs** |

| Incident Summary | 12-03161-CWRM |
|---|---|

On September 9, 2012, the department placed an inmate on contraband surveillance watch. The inmate was removed from contraband surveillance watch on September 12, 2012, three days later. During that time, the department recovered drugs from the inmate.

**Incident Assessment**

The department adequately complied with policies and procedures. No staff misconduct was identified.

| Date Placed on Contraband Watch | Date Taken off Contraband Watch | Reason for Placement | Contraband Found |
|---|---|---|---|
| **2012-10-07** | **2012-10-12** | **Suspicious Activity** | **Drugs** |

| Incident Summary | 12-03561-CWRM |
|---|---|

On October 7, 2012, the department placed an inmate on contraband surveillance watch because an officer discovered an unknown item inside a latex material during an unclothed body search. The inmate was removed from contraband surveillance watch on October 12, 2012, five days later. During that time, the department recovered drugs from the inmate.

**Incident Assessment**

The department sufficiently complied with policies and procedures. No staff misconduct was identified.

# SOUTH REGION

| Date Placed on Contraband Watch | Date Taken off Contraband Watch | Reason for Placement | Contraband Found |
|---|---|---|---|
| **2012-11-14** | **2012-11-19** | **Suspicious Activity** | **Drugs** |

| Incident Summary | 12-04101-CWRM |
|---|---|

On November 14, 2012, the department placed an inmate on contraband surveillance watch because an officer discovered lubricant around the inmate's rectum during an unclothed body search. The inmate was removed from contraband surveillance watch on November 19, 2012, five days later. During that time, the department recovered drugs from the inmate.

**Incident Assessment**

The department adequately complied with policies and procedures. No staff misconduct was identified.

| Date Placed on Contraband Watch | Date Taken off Contraband Watch | Reason for Placement | Contraband Found |
|---|---|---|---|
| **2012-12-09** | **2012-12-14** | **Suspected Drugs** | **Drugs** |

| Incident Summary | 12-04321-CWRM |
|---|---|

On December 9, 2012, the department placed an inmate on contraband surveillance watch. The inmate was removed from contraband surveillance watch on December 14, 2012, five days later. During that time, the department recovered drugs from the inmate.

**Incident Assessment**

The department sufficiently complied with policies and procedures. No staff misconduct was identified.



# SEMI-ANNUAL REPORT
## July-December 2012
## Volume II

# OFFICE OF THE INSPECTOR GENERAL

## Robert A. Barton
INSPECTOR GENERAL

## Roy W. Wesley
CHIEF DEPUTY INSPECTOR GENERAL

# STATE OF CALIFORNIA
## April 2013