# Exhibit 9



# OFFICE OF THE INSPECTOR GENERAL
## Robert A. Barton, Inspector General

## State of California

# Use-of-Force within the
# California Department of Corrections and Rehabilitation
# January-June 2012



© CDCR

**October 2012**

Office of the Inspector General

# October 2012 Use-of-Force Report



Robert A. Barton
*Inspector General*

Roy Wesley
*Chief Deputy Inspector General*

James Spurling
*Chief Counsel*

Renee Hansen
*Public Information Officer*

P.O. Box 348780
Sacramento, CA 95834-8780
Telephone: 916-830-3600
Facsimile: 916-928-4684

October 2012

# EXECUTIVE SUMMARY

The Office of the Inspector General (OIG) monitors use-of-force incidents within California's 33 adult institutions. This is accomplished by conducting independent structured reviews of use-of-force reports and subsequent California Department of Corrections and Rehabilitation (CDCR or department) reviews, as well as attending selected use-of-force committee meetings. The department indicated they are currently implementing some of the recommendations contained in our May 2012 Use-of-Force report.

In the six-month period from January through June 2012, the department reported a total of 3,189 incidents involving force at institutions housing adult inmates. Of these incidents, the OIG monitored 1,440 incidents, or 45 percent, by attending institutional use-of-force review committee meetings and completing structured reviews. Specifically, the OIG attended 114 use-of-force meetings, where a total of 657 incidents were evaluated, and completed structured reviews of an additional 783 incidents. The OIG also completed seven structured reviews of use-of-force incidents in the Office of Correctional Safety, and completed structured reviews of 46 use-of-force incidents occurring throughout the four parole regions. Overall, the department complied with policies and procedures in 93 percent of the reviews conducted.

|  | Incidents Reviewed by the OIG | Incidents in Compliance with CDCR Policy | Compliance Rate |
|---|---|---|---|
| **Division of Adult Institutions** | 1440 | 1342 | 93% |
| **Division of Adult Parole Operations** | 46 | 45 | 98% |
| **Office of Correctional Safety** | 7 | 7 | 100.0% |
| Total | 1493 | 1394 | **93%** |

## Division of Adult Institutions

The OIG found that the department complied with its use-of-force policies in 1,342 of those cases, a compliance rate of 93 percent. The OIG found staff actions contributed to the need to use force in 38 of the monitored incidents taking place at the adult institutions. The OIG's active participation in the review process influenced the outcome of 349 of the incidents monitored by requesting clarification, investigations, or recommending employee training.

Incident reports continue to properly describe the need to use force; however, some still lack the appropriate descriptions of the actual force used. Of the 783 structured reviews the OIG conducted, the department completed 356 reviews in the required 30-day timeframe. Four institutions did not meet the CDCR 30-day review requirement for any reviews during this reporting period, and the OIG is working with the department to institute a transparent, streamlined review process for less serious incidents so the department can direct its resources to more effective examination of incidents that require more scrutiny.

Of the 783 incidents for which the OIG conducted structured reviews, 92 incidents were identified as requiring and receiving video-recorded interviews. The department achieved 100 percent compliance with the requirement to video-record interviews. We reviewed the video-recorded

interviews and found only 62 recordings were actually conducted according to CDCR policy, a compliance rate of 67 percent.

**Division of Adult Parole Operations**

The OIG attended 17 committee meetings and completed structured reviews of 46 use-of-force incidents occurring throughout the four parole regions. Within the total number of incidents reviewed, there were 161 applications of force. The structured reviews revealed that 98 percent of parole agents' use-of-force reports adequately described the need to use force. However, only 70 percent provided an appropriate description of the force used.

**Office of Correctional Safety**

During the reporting period, the OIG conducted seven structured reviews of use-of-force incidents involving 14 applications of force by the Office of Correctional Safety employees. For those incidents, the OIG found that the reports appropriately articulated the justification for using force and adequately described the force used in all cases.

**Status of Prior Recommendations and Recommendations from this Report**

In the OIG's May 2012 Use-of-Force report, the OIG made seven recommendations to the department. The department reported that two of the recommendations have been fully implemented, four recommendations are partially implemented with full implementation in progress, and one recommendation is not implemented as the department contends adequate controls and policy are currently in place.

The department should review the use-of-force training video and test materials developed by California State Prison, Sacramento, and consider statewide implementation of similar training resources.

**Looking Ahead**

The OIG continues to monitor use-of-force committee meetings; however, we have put our structured review process on hold in anticipation that the department will institute a streamlined review process for less serious incidents. We continue to work with the department during this period to define our involvement in the new process.

**Conclusion**

Institutions are improving their use-of-force review process and several have significantly reduced the number of days it is taking them to complete the review process. Of the incidents reviewed by the OIG, two institutions met the 30-day review timeline for all of their incident reviews, and the OIG encourages continued progress toward more efficient and complete reviews. Additionally, the OIG recognizes that Parole Regions I and II now have executive review committees conducting regular use-of-force meetings, bridging a previously identified information gap and moving toward consistent statewide application of its use-of-force policy.

The department has been very responsive in reviewing and correcting deficiencies in use-of-force reviews and has completed the reviews for all outstanding issues identified by the OIG. The OIG notes with great satisfaction that by the end of the use-of-force incident review process, the department has properly handled all incidents reviewed by the OIG. Even in instances where the OIG identified gaps, department managers have been diligent in resolving those issues after the issues were brought to their attention.



# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................1

USE-OF-FORCE PROCESS OVERVIEW ..............................................................................1

OIG MONITORING METHODOLOGY .................................................................................. 2
     *Attendance at Use-of-Force Review Committee Meetings*.................................................2
     *Structured Reviews*...........................................................................................................2
     *Independent Oversight* .....................................................................................................3

DIVISION OF ADULT INSTITUTIONS ..................................................................................3
     *Unreasonable Use of Force* ..............................................................................................3
     *Types of Force* .................................................................................................................. 4
     *Use-of-Force Incident Reports* .........................................................................................5
     *Institutional Use-of-Force Reviews* ..................................................................................5
     *Timeliness of Reviews*......................................................................................................8
     *Video-Recorded Interviews* ..............................................................................................9

DIVISION OF ADULT PAROLE OPERATIONS ...................................................................9

OFFICE OF CORRECTIONAL SAFETY .............................................................................. 12

STATUS OF PRIOR RECOMMENDATIONS ........................................................................13

RECOMMENDATIONS FROM THIS REPORT.....................................................................14

LOOKING AHEAD ..................................................................................................................14

CONCLUSION .........................................................................................................................15

APPENDICES
     *Appendix A: Institution Acronyms*................................................................................ 16
     *Appendix B: Applications of Force in Structured Reviews Completed* ......................... 17
     *Appendix C: Timeliness of Reviews* .............................................................................. 18
     *Appendix D: Statewide Review Summary* ..................................................................... 19
     *Appendix E: Total Use-of-Force Incidents January-June 2012 Reporting Period*...........20

# INTRODUCTION

This is the Office of the Inspector General's (OIG) third report on the use of force within the California Department of Corrections and Rehabilitation (CDCR or the department). This report covers the OIG's monitoring of the department's use-of-force process from January through June 2012. The majority of the department's use-of-force incidents occur in its adult institutions, which, during this reporting period, housed over 125,000 inmates and employed approximately 30,000 peace officers authorized by law to use force. In addition, parole agents and special agents outside the walls of an institution must occasionally engage in the use of force with the adult parolees they supervise.

The OIG is committed to attending a significant number of the department's use-of-force review committee meetings to provide public transparency, and when appropriate, ensure cases are forwarded to CDCR's Office of Internal Affairs (OIA) for investigation.

In August 2010, the department implemented a new use-of-force policy based, in part, on recommendations from the OIG. The department's implementation of the new policy included statewide use-of-force training and the focus of significant resources to make the new policy work. Among its more significant changes, the new policy requires institutions' use-of-force review committees to evaluate and review all *allegations* of unreasonable force.

The OIG has further committed to continue its monitoring of the committee reviews and make recommendations to the department to ensure continuous improvement. This report details our observations, analysis, and evaluation of the department's use-of-force practices from January 1 through June 30,

2012. The OIG worked collaboratively with the department to compile relevant data on incidents involving force.



# USE-OF-FORCE PROCESS OVERVIEW

The department is tasked with maintaining the safety and security of staff, inmates, visitors, and the public. At times, this responsibility requires the reasonable use of force by peace officers. In doing so, officers are authorized to use only "reasonable force," defined as "the force that an objective, trained, and competent correctional employee, faced with similar facts and circumstances, would consider necessary and reasonable to subdue an attacker, overcome resistance, effect custody, or gain compliance with a lawful order." The use of greater force than justified by this standard is deemed "excessive force," while using any force not required or appropriate in the circumstances is "unnecessary force." Both unauthorized types of force are categorized as "unreasonable."

Departmental policy requires that, whenever possible, verbal persuasion or orders be attempted before resorting to force. In situations where verbal persuasion fails to achieve desired results, a variety of force options are available. The department's policy does not require these

options be employed in any predetermined sequence. Rather, officers select the force option they reasonably believe is necessary to stop the perceived threat.

Any department employee who uses force, or who observes another employee use force, is required to report the incident to a supervisor and submit a written report prior to being released from duty. After the report is submitted, a multi-tiered review process begins. Every use of deadly force by staff is reviewed by the department's Deadly Force Review Board (DFRB) and monitored by the OIG. During the time the DFRB review is pending, all other reviews specific to the case cease, pending completion of the DFRB process. Certain use-of-force incidents are also reviewed at the division and executive levels of the department.

## OIG Monitoring Methodology

The OIG reviews use-of-force incidents utilizing two primary methods: attendance at use-of-force review committee meetings and document-based structured reviews. The OIG also provides oversight and makes recommendations to the department in their development of new use-of-force policies and procedures.

### Attendance at Use-of-Force Review Committee Meetings

OIG representatives attend use-of-force review committee meetings at all adult institutions and parole regions statewide, visiting each institution at least six times annually on alternating months. Generally, each committee meeting evaluates 5 to 15 incidents involving force. The OIG also evaluates all departmental reviews completed prior to the meeting. During the meeting, the OIG observes the review process and engages in contemporaneous oversight by

raising concerns about the incidents when appropriate, asking for clarification if reports are inconsistent or incomplete, and engaging in discussions with the committee about the incidents. Through this process, the OIG draws an independent conclusion about whether the force used was in compliance with policies, procedures, and applicable laws and whether the review process was thorough and meaningful. When appropriate, the OIG recommends an incident be referred to CDCR's Office of Internal Affairs for investigation or approval to take disciplinary action based on the information already available. In the event the OIG does not concur with the decision made by the local hiring authority (i.e., the warden or parole administrator), the OIG may confer with higher level department managers.

### Structured Reviews

> The OIG's active participation in the review process influenced the outcome for 349 of these incidents by requesting clarification, recommending investigations, or recommending employee training.

The OIG reviews use-of-force incidents by conducting structured reviews of some monitored cases. This includes evaluating video-recordings, officer reports, and the conclusions reached by the department's review process at each institution. These structured reviews take place in addition to the OIG's attendance at use-of-force committee meetings. The OIG evaluates staff compliance with use-of-force policies before, during, and after each incident. In addition, the OIG evaluates each application of force and determines if staff actions contributed to the need to use force. If the OIG discovers a problem during a structured review, the OIG alerts the responsible department manager and seeks an appropriate resolution.

As a result of the OIG's structured reviews, certain incidents may be placed back on the use-of-force review committee calendar for reconsideration. If the OIG still believes the issue was not properly addressed, the OIG may elevate the case to higher level department management.

**Independent Oversight**

In addition to monitoring the department's use-of-force review process, the OIG monitors and participates as an active stakeholder in the department's development of new regulations and policies governing the use of force.

## DIVISION OF ADULT INSTITUTIONS

In the six-month period from January through June 2012, the department reported a total of 3,189 incidents involving force at institutions housing adult inmates. Of these incidents, the OIG monitored 1,440 incidents, or 45 percent, by attending use-of-force review committee meetings and completing structured reviews. Specifically, the OIG attended 114 use-of-force meetings, where a total of 657 incidents were evaluated, and additionally completed 783 structured reviews.

The 783 structured reviews the OIG performed included 1,440 incidents. Of the 1,440 incidents examined by a combination of structured reviews and meetings attended, the OIG found that the department complied with its use-of-force policies in 1,342 of those incidents, a compliance rate of 93 percent.

The OIG found staff actions contributed to the need to use force in 38 of the monitored incidents taking place at the adult institutions. For example, policy violations such as improper application of restraints or allowing inmates to enter restricted areas resulted in the need to use force. Some cases resulted in disciplinary actions against employees if policy violations warranted adverse action. The OIG's active participation in the review process influenced the outcome of 349 of the incidents monitored by requesting clarification, recommending investigations, or recommending employee training.

**Unreasonable Use of Force**

During this six-month reporting period, CDCR's Office of Internal Affairs received 62 requests for investigation from the adult institutions related to the use of force. Allegations of misconduct were made against 122 officers. The types of investigations involving misconduct in the use of force remained relatively consistent between this and the prior reporting period with one exception; there was a notable increase in the number of allegations that officers failed to report force that they witnessed.

Table 1 provides a comparison summary of the types of allegations the Office of Internal Affairs received for investigation during the current and previous reporting periods.

Table 1: Investigation Requests by Use-of-Force Allegation Types

| Requests for Investigation of Use-of-Force by Allegation Reporting Period Comparison | | | |
|---|---|---|---|
| Allegation | Current Reporting Period Jan-June 2012 | Previous Reporting Period Jul-Dec 2011 | Increase/ Decrease |
| Unreasonable use of force | 45 | 43 | +2 |
| Failure to report use of force witnessed | 57 | 33 | +24 |
| Failure to report own use of force | 29 | 28 | +1 |
| Unreasonable force likely to cause injury | 7 | 7 | 0 |
| Other minor policy violations | 4 | 27 | -23 |
| Total Allegations | 142 | 138 | +4 |

**Types of Force**

A single incident requiring the use of force may involve more than one application of force and may require use of different types of force. For example, during a riot, officers may use lethal force, chemical agents, expandable batons, and less-lethal force to address varying threat scenarios as the riot progresses. The OIG monitored 1,440 incidents during this reporting period and conducted structured reviews of 783 of those monitored incidents. There were 2,461 separate applications of force used in the 783 incidents.

During the previous reporting period, the OIG monitored 1,422 incidents and conducted 783 structured reviews of those monitored incidents that included 2,733 separate applications of force.

Table 2: Types of Force Comparison Between Reporting Periods

| Types of Force | Current Reporting Period (6 months) | Previous Reporting Period (6 Months) | Comparative percentage +/- |
|---|---|---|---|
| Physical Force | 24% | 27% | -3% |
| Chemical Agents | 49% | 48% | +1% |
| Baton | 7% | 12% | -5% |
| Less-Lethal | 19% | 13% | +6% |
| Deadly Force | 1% | 0% | +1% |

The types of force used in incidents are always examined by the use-of-force review committees, but the department has discretion in determining the level of force required in each situation. In the vast majority of cases, the type of force used is appropriate for the situation and does not become an issue of discussion. The primary focus of committee review is to evaluate whether the use-of-force policy and other policies, such as decontamination of inmates, proper video-recorded interviews, escorting inmates post-incident, completion of log entries, etc., were followed.

A list of the adult institutions and their acronyms can be found in Appendix A. For a comprehensive list of the types of force used during the reporting period at each of the department's adult institutions, please refer to Appendix B.

**Use-of-Force Incident Reports**

As part of its structured reviews, the OIG examined staff reports to evaluate the adequacy of the description of circumstances leading to the use of force and for the sufficiency of the description of the force used. The OIG evaluated 783 incidents and found 92 percent of the related reports adequately described the *need* to use force, the same percent of incidents in the previous reporting period. However, 71 percent of the 783 incidents in the current period appropriately described the *actual* force used during the incident. This is a 4 percent improvement above 67 percent in the previous reporting period, but still leaves room for additional improvement.



**Institutional Use-of-Force Reviews**

At each level of review, the CDCR reviewer is tasked with evaluating reports, requesting necessary clarifications, identifying deviations from policy, and determining whether the use of force was within policies, procedures, and applicable laws. The review process begins with an initial review conducted by the incident commander. After the first review, the incident packages are forwarded to the first-level management review conducted by a captain, the second-level management review conducted by an associate warden, and the final level of review where the incident is reviewed by the use-of-force review committee chaired by the warden or chief deputy. Each level examines the incident package for issues that may have been missed at previous levels of review.

In the 783 structured reviews of incidents conducted during this reporting period, the OIG noted that every level of the department's review process made errors in identifying deficiencies in use-of-force reports. Of the incidents we reviewed, 222 contained reports with missing or conflicting information after institutional incident commanders performed the initial level of review. Thus, incident commanders resolved incomplete or conflicting information on reports 71 percent of the time, forwarding incomplete reports for management review in 29 percent of the incidents. This is a slight improvement from the previous reporting period in which it was noted incident commanders in most of the adult institutions failed to address clarification or policy deviations in 32 percent of the incidents.

The OIG further evaluated how first-level management reviewers addressed policy deviations or inadequate reports in the 222 use-of-force incidents containing issues not addressed by the incident commanders. First-level management reviewers failed to address clarification or policy deviations in 64 percent of the incidents and accurately completed reviews in 36 percent of the reports. Although unacceptably high, this does represent an improvement from the 66 percent unaddressed incidents in the previous reporting period. First-level management reviewers in 18 institutions did not address at least half of the clarifications or policy deviations left undetected by their incident commanders' initial reviews. By comparison, this occurred at 19 institutions in the prior reporting period.

Upon reaching the second-level managers' reviews, 143 unaddressed issues remained. The second-level managers' reviews at all institutions addressed only 34 issues (24 percent) of the 143 issues previously undetected by first-level managers. Seventy-six percent of the cases reviewed at the second level still

had unresolved issues when they were forwarded for committee review. This percentage was primarily impacted by 12 of the adult institutions' second-level managers failing to address <u>any</u> issues. This represents a 3 percent increase in incomplete reviews from the prior reporting period where second-level reviewers left 73 percent of the unaddressed issues passed on from first-level managers unresolved.

At the use-of-force executive review committee and institution-head level of review, 109 issues (48 percent), originally noted by the OIG, still remained unaddressed by previous review levels. This final executive level of review addressed only 62 of these outstanding issues – a completion rate of 57 percent. Forty-seven of the original 222 issues remained unresolved after all levels of review; thus, only 79 percent of the incidents were ultimately cleared with complete information. Although 21 percent of incidents were initially cleared with incomplete reviews, the department has been very responsive in reviewing and correcting deficiencies in use-of-force reports and has completed reviews for all outstanding issues identified by the OIG in its structured reviews of use-of-force incident reports. Charts 2 and 2A on the following page illustrate the percentage of complete reports forwarded at each level of review.

The department must continue to improve the overall review process and has reported efforts to do so. High rates of turnover and changes in personnel assignments continue to be a challenge.

Charts 2 and 2A: Comparison of Monitored Incident Reports Properly Completed at Each Level of Review Between Reporting Periods

**Incident Reports Properly Completed
at Each Level of Review
Jan-June 2012**



■ Incidents cleared with complete information 79%

□ Complete Review: Executive-level UOF Committee 57%

□ Complete Review: 2nd-level management 24%

■ Complete Review: 1st-level management 36%

■ Complete Review: Incident Commander 71%

**Incident Reports Properly
Completed at Each Level of Review
Jul-Dec 2011**



■ Incidents cleared with complete information 78%

□ Complete Review: Executive-level UOF Committee 54%

□ Complete Review: 2nd-level management 27%

■ Complete Review: 1st-level management 34%

■ Complete Review: Incident Commander 68%

**Timeliness of Reviews**

Pursuant to CDCR policy, use-of-force incidents should normally be reviewed within 30 days from the date of the incident[1]. This includes all levels of the review process, as well as obtaining any necessary clarifications. Of the incidents evaluated by the OIG, four institutions did not complete <u>any</u> reviews in 30 days or less: California Correctional Women's Facility (CCWF), Pleasant Valley State Prison (PVSP), California State Prison, Sacramento (SAC), and California State Prison, San Quentin (SQ). Although these institutions need considerable improvement in timeliness of reviews, several institutions showed significant improvement in reducing review times. Valley State Prison for Women (VSPW) completed 17 of its 19 reviews in 30 days or less. Similarly, Centinela State Prison (CEN) improved by completing 17 of its 28 reviews in 30 days or less, Ironwood State Prison (ISP) improved by completing 15 of its 23 reviews in 30 days or less, and California State Prison, Los Angeles County (LAC) improved by completing 21 of its 31 reviews in 30 days or less.

The OIG encourages the department to continue this improvement trend, since delays in reviewing use-of-force incidents can negatively impact potential peace officer misconduct cases in which the hiring authority has only one year to identify misconduct, complete an investigation, and impose discipline if appropriate. Of the structured reviews the OIG conducted, two institutions completed all reviews within 30 days. As reflected in Appendix C, Deuel Vocational Institution (DVI) and Chuckawalla Valley State Prison (CVSP) completed all their reviews in the required timeframe.

The OIG has urged the department, as noted in our previous report, to adopt the internal policy

revision currently under review to streamline and make the use-of-force committee process more efficient and effective. The revision suggestion originated from an institution adapting its review process to handle many of the "low-level" use-of-force incident reviews outside the formal committee process. That institution established in-house criteria defining "low-level incidents" as those with minimal staff or inmate involvement involving no injuries or misconduct allegations for a "paper review" by a member of the committee. This enabled the institution's review committee to spend its time on cases that were more serious, complicated, or problematic.

While the OIG recognized and even commended the institution's intent to improve the review process, at the time its process did not comply with policy[2] and lacked transparency. The OIG suggested the process include the OIG as a reviewer to provide transparency, and include a provision to allow the OIG to request any case be brought before the committee if there was a concern. Such a change would ensure transparency and ensure committee review for any major issues. The OIG was informed at the time of our last report that the proposal was under consideration. The department is now addressing this worthwhile revision, and has been working with the OIG on establishing this process. Such a change would divert hours of the review committee's time from routine cases and allow it to focus its scrutiny on the most critical cases.

To compare the timeliness of reviews for the incidents evaluated by the OIG, please refer to Appendix C, and for a statewide review summary, please refer to Appendix D.

---

1 Department Operations Manual Chapter 5, Sections 51020.19.1-51020.19.5; California Code of Regulations, Title 15, Div.3 Section 3268.3.

2 Department Operations Manual Chapter 5, Section 51020.19.5-51020.19.6

**Video-Recorded Interviews**

The department's use-of-force policy[3] requires video-recorded interviews if an inmate alleges unreasonable force or has sustained serious or great bodily injury that could have been caused by the use of force. The video recording should be conducted within 48 hours of discovery of the injury or allegation. If the inmate refuses to be video recorded, the CDCR policy requires staff to record the inmate confirming his or her refusal to be interviewed. However, the actual practice for conducting video-recorded interviews of inmates involved in a use-of-force incident still varies among the adult institutions.

Of the 783 incidents for which the OIG conducted structured reviews, 92 incidents were identified as requiring and receiving video-recorded interviews. The department complied with policy by recording interviews in all of these incidents. The OIG reviewed the video-recorded interviews and found only 62 of the recordings were conducted according to policy guidelines, a compliance rate of 67 percent. This compliance rate has dropped 10 percent from the previous reporting period, a significant regression in adherence to video-recording policy. However, in a positive light, 100 percent of incidents requiring video-recorded interviews were at least attempted. Unfortunately, not all were completed according to policy requirements.

The OIG found that the most common deviations from departmental policy involved interviewers not adequately identifying themselves, the date, the time, the incident log number, or the inmate's injuries. Additionally, when recording inmates' refusals to be interviewed, staff did not always ask the inmates to identify themselves on record.

In our May 2012 Use-of-Force Report, we recommended the department make efforts to increase compliance with the use-of-force video-recording policy, including providing additional training or policy memos regarding the proper video-recording protocol. In response to the OIG's recommendation, the department circulated a policy memo to the adult institutions providing the specific regulation governing video-recorded interviews and required additional training for custody employees authorized to perform these interviews. The 100 percent compliance in incidents where video-recorded interviews were required reflects the department's effort on this issue.

## DIVISION OF ADULT PAROLE OPERATIONS

The Division of Adult Parole Operations (DAPO) is divided into four parole regions and during the reporting period was responsible for supervising over 70,000 parolees. During that time, DAPO reported 46 incidents involving the use of force. Parole Regions III and IV conducted regular use-of-force committee meetings during this reporting period, and Parole Regions I and II both formed executive committees and began meeting regularly. This is a significant development since during the previous reporting period, Parole Region I did not meet at all, and Parole Region II met only on an "as-needed basis" due to the infrequency of incidents involving force. DAPO has indicated

---

3 Department Operations Manual Chapter 5, Section 51020.17.3; California Code of Regulations, Title 15, section 3268.1(d)

it is currently in the process of amending its policy to incorporate a regional review committee meeting component.

The OIG attended 17 committee meetings and completed structured reviews of all 46 use-of-force incidents occurring throughout the four parole regions. Within the total number of incidents reviewed, there were 161 applications of force. The structured reviews revealed that 98 percent of parole agents' use-of-force reports adequately described the need to use force. However, only 70 percent provided an appropriate description of the force used. Chart 3 provides a summary of the types of force used in the parole regions from January through June 2012.

Throughout all parole regions, the unit supervisors who perform the initial reviews requested clarifications on only one inadequate report among 14 reports that needed additional clarification. The next levels of review addressed only seven policy deviations or clarifications, leaving six deviations unaddressed after all levels of review. Of the 46 reviews completed in the Division of Adult Parole Operations, only 28 of 46 required reviews were completed in the required timeframe of 30 days or less.

## Chart 3 Types of Force Used in Monitored Incidents (Parole Regions)



- Physical Force
- Chemical Agents
- Less-Lethal (Electronic Control Device)

6%  13%

81%
Physical Force

*No instances of baton or deadly force were used in parole regions during this reporting period.

Tables 3 and 4 illustrate the adequacy of reports initially submitted by parole agents and the number of incidents for which supervisors and managers addressed inadequate reports or policy deviations. Compared to the prior reporting period, the percentage of reports needing clarification dropped to 30 percent, an improvement over the 50 percent requiring clarification from the previous reporting period. We also note an overall improvement in the quality of supervisory review at all levels.

Table 3: Jan-June 2012 Insufficient Incident Reports and Management Review-DAPO

| Parole Region | Parole Agent Reports | | Clarification Requested | Clarifications or Policy Deviations Addressed | | Cases Completed in 30 days or less |
| | Incidents Evaluated | Reports Needing Clarification | By Unit Supervisor | By District Administrator | By Hiring Authority | |
|---|---|---|---|---|---|---|
| Region I | 11 | 27% | 0% | 67% | 100% | 11 |
| Region II | 13 | 23% | 0% | 0% | 0% | 13 |
| Region III | 7 | 57% | 0% | 0% | 25% | 1 |
| Region IV | 15 | 27% | 25% | 25% | 67% | 3 |

Table 4:  Jul-Dec 2011 Insufficient Incident Reports and Management Review-DAPO

| Parole Region | Parole Agent Reports | | Clarification Requested | Clarifications or Policy Deviations Addressed | | Cases Completed in 30 days or less |
| | Incidents Evaluated | Reports Needing Clarification | By Unit Supervisor | By District Administrator | By Hiring Authority | |
|---|---|---|---|---|---|---|
| Region I | 18 | 50% | 0 | 0 | 11% | 13 |
| Region II | 7 | 43% | 0 | 0 | 0 | 7 |
| Region III | 3 | 67% | 0 | 0 | 0 | 1 |
| Region IV | 8 | 63% | 0 | 20% | 0 | 0 |

# OFFICE OF CORRECTIONAL SAFETY

In addition to monitoring use-of-force incidents involving personnel at correctional institutions and in the parole system, the OIG also monitors such incidents involving employees of the department's Office of Correctional Safety (OCS).

The OCS is the department's primary link with state and local law enforcement agencies and is responsible for, among other duties, apprehending prison escapees and parolees who abscond from supervision, and conducting complex investigations of gang activity.

During the reporting period, the OIG conducted seven structured reviews of use-of-force incidents involving 14 applications of force by OCS employees. Of those seven incidents, the OIG found the reports adequately articulated the justification for using force and adequately described the force used in all seven cases. Table 5 summarizes the force used in these incidents by type.

Table 5: Type and Application of Force: Office of Correctional Safety

| Types of Force | Applications |
|---|---|
| Physical Force | 9 |
| Chemical Agents | 0 |
| Baton | 0 |
| Less-Lethal | 5 |
| Deadly Force | 0 |
| Totals | 14 |

The OCS's executive committee reviewed each of these incidents for compliance with the department's use-of-force policy, and the OIG concurred with the executive committee's assessment in all cases. The OCS committee completed two reviews in 30 days or less, and five reviews took more than 30 days. For reviews that took more than 30 days, four were between 31 and 36 days, the final review took 54 days.

# STATUS OF PRIOR RECOMMENDATIONS

In the OIG's May 2012 Use-of-Force Report, the OIG made seven recommendations to the department. The department's 2012 Corrective Action Plan, updated annually, includes the following implementation status for the seven recommendations:

1. The department should consult with the OIG and consider adopting the internal policy revision currently under review to streamline and make the use-of-force committee process more efficient and effective.

> The department is in the process of reviewing the consent calendar process and has consulted with the OIG.

2. The department should clearly establish who can conduct and participate in video-recorded interviews of a use-of-force incident and ensure staff members involved in the incident under investigation do not take part in video recording the interviews.

> This recommendation has been fully implemented. The department issued a training memo regarding video requirements, and all institutions have submitted proof of practice.

3. The department should establish a single designated reporting point for tracking allegations of force.

> Full implementation is expected by the end of 2012. The department issued a policy memo and additional training will be provided for completing use-of-force inquiries.

4. Each of the four adult parole regions should identify and train a use-of-force coordinator to manage the use-of-force incident review process.

> This recommendation has been fully implemented.

5. The institutional appeals coordinator should notify the use-of-force coordinator of all inmate appeals containing a use-of-force allegation.

> This recommendation has been partially implemented. Additional training will be provided, and the department expects full implementation by the end of 2012.

6. All allegations of force examined through a report of findings or appeal inquiry should specify any research conducted to locate related incident reports or video recordings, and document witness statements, interviews, e-mails, videos, or other evidence relied upon to support the findings and conclusion.

> This recommendation has been partially implemented. The department will provide additional training and expects full implementation by the end of 2012.

7. The department should make training available to supervisory and managerial staff who will conduct administrative interviews, and each institution should maintain an updated list of qualified instructors/interviewers.

> Not implemented. The department contends adequate controls and policy are currently in place. A list of trained instructors is accessible from the in-service training department.

# RECOMMENDATIONS FROM THIS REPORT

Analysis of available 2012 use-of-force data and observations made during the OIG's contemporaneous monitoring activities is the basis for the following recommendation.

1. THE DEPARTMENT SHOULD REVIEW THE USE-OF-FORCE TRAINING VIDEO AND TEST MATERIALS DEVELOPED BY CALIFORNIA STATE PRISON, SACRAMENTO AND CONSIDER STATE-WIDE IMPLEMENTATION OF SIMILAR TRAINING RESOURCES.

California State Prison, Sacramento has developed a scenario-based training video based on actual incidents to train supervisors on the application of force during cell-extractions (situations in which correctional staff must enter an occupied cell to prevent an inmate from harming himself or others, or otherwise endangering the security of the institution). In addition, SAC enhances its managers' working knowledge of the department's use-of-force policy by administering a written knowledge test on which managers are expected to achieve a minimum passing score.

The department should review the training video and consider statewide implementation of training resources for consistent use-of-force application statewide. These locally-developed innovations could be evaluated by departmental management for possible adoption statewide as a means to enhance consistent application of policy and improve the quality of managerial review of use-of-force incidents.

## LOOKING AHEAD

The OIG continues to monitor use-of-force committee meetings; however, we have put our structured review process on hold in anticipation that the department will institute a streamlined review process for less serious incidents. We continue to work with the department during this period to define our involvement in the new process. Our use-of-force committee review statistics will be reported in our semi-annual report for the July-December 2012 reporting period. We anticipate a stand-alone use-of-force report for the January-June 2013 reporting period, which will contain an evaluation of any new streamlined review process.



# CONCLUSION

Institutions are improving their use-of-force review process and several have significantly reduced the number of days it is taking them to complete the review process. Of the incidents reviewed by the OIG, two institutions met the 30-day review timeline for all their incident reviews, and the OIG encourages continued progress toward more efficient and complete reviews.

The department has been very responsive in reviewing and correcting deficiencies in use-of-force reviews, and has completed the reviews for all outstanding issues identified by the OIG. The OIG notes with great satisfaction that by the end of the use-of-force incident review process, the department has properly handled all incidents reviewed by the OIG. Even in instances in which the OIG identified gaps, department managers have been diligent in resolving those issues after the issues were brought to their attention.

It is also notable that six of the seven recommendations from the May 2012 Use-of-Force report are partially or fully implemented.

Finally, the OIG recognizes Parole Regions I and II who now have executive review committees conducting regular use-of-force meetings, bridging a previously identified information gap and moving toward consistent statewide application of its use-of-force policy.

# APPENDICES

## APPENDIX A: INSTITUTION ACRONYMS

| Adult Institutions and Locations | | City |
|---|---|---|
| ASP | Avenal State Prison | Avenal |
| CCC | California Correctional Center | Susanville |
| CCI | California Correctional Institution | Tehachapi |
| CIM | California Institution for Men | Chino |
| CIW | California Institution for Women | Frontera |
| CMF | California Medical Facility | Vacaville |
| CMC | California Men's Colony | San Luis Obispo |
| CRC | California Rehabilitation Center | Norco |
| COR | California State Prison, Corcoran | Corcoran |
| LAC | California State Prison, Los Angeles County | Lancaster |
| SAC | California State Prison, Sacramento | Represa |
| SQ | California State Prison, San Quentin | San Quentin |
| SOL | California State Prison, Solano | Vacaville |
| SATF | Substance Abuse Treatment Facility & State Prison at Corcoran | Corcoran |
| CAL | Calipatria State Prison | Calipatria |
| CEN | Centinela State Prison | Imperial |
| CCWF | Central California Women's Facility | Chowchilla |
| CVSP | Chuckawalla Valley State Prison | Blythe |
| CTF | Correctional Training Facility | Soledad |
| DVI | Deuel Vocational Institution | Tracy |
| FSP | Folsom State Prison | Represa |
| HDSP | High Desert State Prison | Susanville |
| ISP | Ironwood State Prison | Blythe |
| KVSP | Kern Valley State Prison | Delano |
| MCSP | Mule Creek State Prison | Ione |
| NKSP | North Kern State Prison | Delano |
| PBSP | Pelican Bay State Prison | Crescent City |
| PVSP | Pleasant Valley State Prison | Coalinga |
| RJD | Richard J. Donovan Correctional Facility | San Diego |
| SVSP | Salinas Valley State Prison | Soledad |
| SCC | Sierra Conservation Center | Jamestown |
| VSPW | Valley State Prison for Women | Chowchilla |
| WSP | Wasco State Prison-Reception Center | Wasco |

# APPENDIX B: APPLICATIONS OF FORCE IN STRUCTURED REVIEWS COMPLETED

| Applications of Force in the 783 Structured Reviews Completed by the OIG | | | | | | | |
|---|---|---|---|---|---|---|---|
| Adult Institutions | | | | | | | |
| Institution | Mission | Applications of Force | Physical Force | Chemical Agents | Expandable Baton | Less-lethal Force | Deadly Force |
| ASP | General Population | 67 | 15% | 67% | 15% | 3% | 0% |
| CAL | High Security | 63 | 3% | 51% | 5% | 33% | 8% |
| CCC | General Population | 5 | 60% | 0% | 0% | 40% | 0% |
| CCI | High Security | 106 | 16% | 58% | 19% | 8% | 0% |
| CCWF | Female Programs | 8 | 25% | 50% | 0% | 25% | 0% |
| CEN | High Security | 59 | 14% | 66% | 8% | 12% | 0% |
| CIM | Reception Centers | 44 | 27% | 45% | 0% | 27% | 0% |
| CIW | Female Programs | 62 | 71% | 24% | 5% | 0% | 0% |
| CMC | General Population | 80 | 58% | 39% | 4% | 0% | 0% |
| CMF | General Population | 28 | 75% | 25% | 0% | 0% | 0% |
| COR | High Security | 139 | 24% | 71% | 5% | 0% | 0% |
| CRC | General Population | 48 | 71% | 29% | 0% | 0% | 0% |
| CTF | General Population | 34 | 41% | 53% | 6% | 0% | 0% |
| CVSP | General Population | 19 | 26% | 63% | 11% | 0% | 0% |
| DVI | Reception Centers | 7 | 14% | 71% | 14% | 0% | 0% |
| FSP | General Population | 104 | 12% | 41% | 0% | 44% | 3% |
| HDSP | High Security | 32 | 19% | 63% | 0% | 16% | 3% |
| ISP | General Population | 56 | 13% | 55% | 16% | 16% | 0% |
| KVSP | High Security | 382 | 12% | 36% | 1% | 50% | 1% |
| LAC | Reception Centers | 83 | 41% | 30% | 23% | 6% | 0% |
| MCSP | High Security | 49 | 31% | 53% | 2% | 14% | 0% |
| NKSP | Reception Centers | 135 | 11% | 52% | 12% | 25% | 0% |
| PBSP | High Security | 102 | 5% | 80% | 2% | 12% | 1% |
| PVSP | General Population | 99 | 16% | 38% | 16% | 29% | 0% |
| RJD | Reception Centers | 72 | 31% | 40% | 11% | 18% | 0% |
| SAC | High Security | 88 | 53% | 39% | 0% | 8% | 0% |
| SATF | High Security | 90 | 29% | 44% | 9% | 18% | 0% |
| SCC | General Population | 23 | 43% | 52% | 4% | 0% | 0% |
| SOL | General Population | 64 | 16% | 69% | 2% | 14% | 0% |
| SQ | Reception Centers | 55 | 11% | 40% | 40% | 9% | 0% |
| SVSP | High Security | 106 | 13% | 75% | 4% | 8% | 0% |
| VSPW | Female Programs | 38 | 68% | 29% | 3% | 0% | 0% |
| WSP | Reception Centers | 114 | 25% | 54% | 11% | 9% | 0% |
| TOTAL | | 2,461 Applications | 24% Overall Average | 49% Overall Average | 7% Overall Average | 19% Overall Average | <1% Overall Average |

# APPENDIX C: TIMELINESS OF REVIEWS

*(Days for review were averaged and rounded to the nearest day. Of the 783 incidents the OIG evaluated, completion was significantly delayed by investigations requested by the hiring authority for seven incidents. Accordingly, we did not evaluate timeliness for those seven incidents [COR 1, CRC 2, KVSP 1, NKSP 2, SATF 1].)*

| Timeliness of Reviews (average number of days for review at each level) | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Adult Institutions | | | | | | | | |
| Institution | Incidents Evaluated (Total Reviews) | Reviews Completed in 30 days or less | Reviews Completed in More Than 30 Days | Average Number of Review Days by: | | | | Average Total Days for Review |
| | | | | Incident Commander | 1st Level Manager | 2nd Level Manager | Institution Head/ IERC | |
| ASP | 27 | 14 | 13 | 1 | 8 | 6 | 15 | 30 |
| CAL | 15 | 9 | 6 | 3 | 12 | 3 | 19 | 37 |
| CCC | 4 | 3 | 1 | 2 | 10 | 3 | 16 | 31 |
| CCI | 41 | 28 | 13 | 1 | 5 | 6 | 29 | 41 |
| CCWF | 5 | 0 | 5 | 1 | 9 | 5 | 34 | 49 |
| CEN | 28 | 17 | 11 | 1 | 7 | 6 | 17 | 31 |
| CIM | 19 | 17 | 2 | 2 | 12 | 5 | 9 | 28 |
| CIW | 23 | 4 | 19 | 2 | 15 | 5 | 33 | 55 |
| CMC | 31 | 8 | 23 | 4 | 15 | 6 | 16 | 41 |
| CMF | 17 | 14 | 3 | 3 | 6 | 2 | 17 | 28 |
| COR | 35 | 10 | 24 | 4 | 9 | 7 | 53 | 73 |
| CRC | 19 | 8 | 9 | 2 | 4 | 4 | 21 | 31 |
| CTF | 16 | 6 | 10 | 1 | 7 | 6 | 31 | 45 |
| CVSP | 13 | 13 | 0 | 1 | 4 | 4 | 17 | 26 |
| DVI | 5 | 5 | 0 | 1 | 5 | 1 | 14 | 21 |
| FSP | 19 | 17 | 2 | 1 | 6 | 1 | 14 | 22 |
| HDSP | 10 | 4 | 6 | 8 | 8 | 1 | 20 | 37 |
| ISP | 23 | 15 | 8 | 2 | 6 | 12 | 10 | 30 |
| KVSP | 46 | 9 | 36 | 2 | 16 | 7 | 59 | 84 |
| LAC | 31 | 21 | 10 | 1 | 6 | 3 | 18 | 28 |
| MCSP | 23 | 2 | 21 | 4 | 6 | 4 | 41 | 55 |
| NKSP | 52 | 25 | 25 | 3 | 11 | 9 | 25 | 48 |
| PBSP | 18 | 9 | 9 | 14 | 5 | 6 | 21 | 46 |
| PVSP | 38 | 0 | 38 | 1 | 11 | 6 | 42 | 60 |
| RJD | 34 | 13 | 21 | 1 | 6 | 8 | 33 | 48 |
| SAC | 27 | 0 | 27 | 2 | 8 | 5 | 40 | 55 |
| SATF | 26 | 6 | 19 | 1 | 10 | 8 | 34 | 53 |
| SCC | 9 | 3 | 6 | 2 | 5 | 5 | 24 | 36 |
| SOL | 26 | 21 | 5 | 2 | 8 | 4 | 12 | 26 |
| SQ | 11 | 0 | 11 | 1 | 14 | 2 | 98 | 115 |
| SVSP | 31 | 18 | 13 | 1 | 15 | 9 | 8 | 33 |
| VSPW | 19 | 17 | 2 | 1 | 9 | 11 | 14 | 35 |
| WSP | 42 | 20 | 22 | 3 | 8 | 8 | 18 | 37 |
| TOTAL / AVGS | 783 | 356 | 420 | 2 | 9 | 5 | 26 | 43 |

# APPENDIX D: STATEWIDE REVIEW SUMMARY

| Statewide Review Summary | | | | | | |
|---|---|---|---|---|---|---|
| **Adult Institutions** | | | | | | |
| | | Clarifications or Policy Deviations Addressed at Each Level | | | | |
| Institution | Missed by Incident Commanders | Addressed at 1st Manager Level | Percent Missed at 1st Manager Level | Addressed at 2nd Level Manager Level | Percent Missed at 2nd Manager Level | Addressed at Institution Head Level | Percent Missed at Institution Head Level |
| ASP | 12 | 7 | 42% | 4 | 20% | 0 | 100% |
| CAL | 5 | 1 | 80% | 0 | 100% | 2 | 50% |
| CCC | 2 | 2 | 0 | 0 | N/A | 0 | N/A |
| CCI | 5 | 1 | 80% | 0 | 100% | 3 | 25% |
| CCWF | 3 | 0 | 100% | 3 | 0% | 0 | N/A |
| CEN | 4 | 0 | 100% | 1 | 75% | 3 | 0% |
| CIM | 2 | 2 | 0% | 0 | N/A | 0 | N/A |
| CIW | 7 | 0 | 100% | 0 | 100% | 2 | 71% |
| CMC | 4 | 3 | 25% | 0 | 100% | 1 | 0% |
| CMF | 0 | 0 | N/A | 0 | N/A | 0 | N/A |
| COR | 10 | 2 | 80% | 2 | 75% | 4 | 33% |
| CRC | 1 | 0 | 100% | 0 | 100% | 0 | 100% |
| CTF | 11 | 3 | 73% | 6 | 25% | 1 | 50% |
| CVSP | 1 | 1 | 0% | 0 | N/A | 0 | N/A |
| DVI | 0 | 0 | N/A | 0 | N/A | 0 | N/A |
| FSP | 1 | 1 | 0% | 0 | N/A | 0 | N/A |
| HDSP | 3 | 1 | 67% | 2 | 0% | 0 | N/A |
| ISP | 3 | 1 | 67% | 2 | 0% | 0 | N/A |
| KVSP | 22 | 5 | 77% | 5 | 71% | 5 | 58% |
| LAC | 6 | 2 | 67% | 0 | 100% | 2 | 50% |
| MCSP | 2 | 0 | 100% | 0 | 100% | 1 | 50% |
| NKSP | 22 | 13 | 41% | 1 | 89% | 5 | 29% |
| PBSP | 6 | 3 | 50% | 0 | 100% | 2 | 33% |
| PVSP | 12 | 8 | 33% | 0 | 100% | 3 | 25% |
| RJD | 15 | 0 | 100% | 0 | 100% | 5 | 67% |
| SAC | 10 | 5 | 50% | 2 | 60% | 2 | 33% |
| SATF | 12 | 4 | 67% | 1 | 88% | 6 | 25% |
| SCC | 1 | 1 | 0% | 0 | N/A | 0 | N/A |
| SOL | 9 | 3 | 67% | 2 | 67% | 2 | 50% |
| SQ | 6 | 0 | 100% | 0 | 100% | 2 | 67% |
| SVSP | 10 | 3 | 70% | 1 | 86% | 6 | 0% |
| VSPW | 1 | 1 | 0% | 0 | N/A | 0 | N/A |
| WSP | 14 | 6 | 57% | 2 | 75% | 5 | 17% |
| **TOTALS** | **222** | **79** | **64%** | **34** | **76%** | **62** | **44%** |

# APPENDIX E: TOTAL USE-OF-FORCE INCIDENTS JANUARY-JUNE 2012 REPORTING PERIOD

| Use-of-Force Incidents in the January-June 2012 Reporting Period | | | |
|---|---|---|---|
| Adult Institutions | | | |
| Institution | Mission | Total Number of Use-of-Force Incidents | Percentage of Total Reported Incidents |
| ASP | General Population | 52 | 1.63% |
| CAL | High Security | 88 | 2.76% |
| CCC | General Population | 44 | 1.38% |
| CCI | High Security | 95 | 2.98% |
| CCWF | Female Programs | 75 | 2.35% |
| CEN | High Security | 73 | 2.29% |
| CIM | Reception Centers | 62 | 1.94% |
| CIW | Female Programs | 36 | 1.13% |
| CMC | General Population | 94 | 2.95% |
| CMF | General Population | 55 | 1.72% |
| COR | High Security | 160 | 5.02% |
| CRC | General Population | 35 | 1.10% |
| CTF | General Population | 30 | 0.94% |
| CVSP | General Population | 15 | 0.47% |
| DVI | Reception Centers | 83 | 2.60% |
| FSP | General Population | 81 | 2.54% |
| HDSP | High Security | 70 | 2.20% |
| ISP | General Population | 51 | 1.60% |
| KVSP | High Security | 206 | 6.46% |
| LAC | Reception Centers | 214 | 6.71% |
| MCSP | High Security | 80 | 2.51% |
| NKSP | Reception Centers | 147 | 4.61% |
| PBSP | High Security | 125 | 3.92% |
| PVSP | General Population | 109 | 3.42% |
| RJD | Reception Centers | 126 | 3.95% |
| SAC | High Security | 201 | 6.30% |
| SATF | High Security | 100 | 3.14% |
| SCC | General Population | 33 | 1.03% |
| SOL | General Population | 69 | 2.16% |
| SQ | Reception Centers | 74 | 2.32% |
| SVSP | High Security | 282 | 8.84% |
| Transportation Unit | —— | 1 | 0.03% |
| VSPW | Female Programs | 59 | 1.85% |
| WSP | Reception Centers | 164 | 5.14% |
| TOTAL | | 3,189 | 100% |