Case 2:90-cv-00520-KJM-SCR   Document 4707-10   Filed 07/24/13   Page 1 of 6

# Exhibit 10

STEVE J. MARTIN - CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER - February 28, 2013

```
              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF CALIFORNIA
                       ---oOo---
RALPH COLEMAN, et al.,        )
                              )
                              )
          Plaintiffs,         )
                              )
              vs.             )   No. Civ S 90-0520 LKK-JFM
                              )
EDMUND G. BROWN, JR., et al., )   Volume I
                              )
                              )   Page 1 - 300
          Defendants.         )
_____)


                      DEPOSITION OF
                    STEVE J. MARTIN
               THURSDAY, FEBRUARY 28, 2013



      CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER


REPORTED BY:
HOLLY THUMAN, CSR No. 6834, RMR, CRR
-----------------------------------------------------
                JAN BROWN & ASSOCIATES
       WORLDWIDE DEPOSITION & VIDEOGRAPHY SERVICES
    701 Battery Street, 3rd Floor, San Francisco, CA 94111
              (415) 981-3498 or (800) 522-7096
```

1

STEVE J. MARTIN - CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER - February 28, 2013

1   A.  Yes.

2   Q.  And it says, for the non-use-of-force
3   incidents, 61 percent occurred with mental health
4   incidents. Right?

5   A.  Correct.

6   Q.  Okay. So those are -- and we -- you don't find
7   that to be disproportionate given the population of
8   mental health inmates in the system?

9       MR. McKINNEY: Objection. Assumes facts, vague
10  as to time, argumentative.

11      THE WITNESS: Well, I don't know what -- how
12  you're using the term "disproportionate."

13      MR. BORNSTEIN: Q.  I'm being very simple.
14  There's 26 percent of the prison population is
15  considered mental health caseload. Right? And -- but
16  yet, 65 percent of the use-of-force incidents, in this
17  particular institution at least, involved mental health
18  patients or inmates?

19  **A.  If you're using that in a strictly**
20  **definitional, neutral way, certainly. It's**
21  **disproportionate.**

22  Q.  Okay. So doesn't that raise issues for you?

23      MR. McKINNEY: Objection. Argumentative.

24      THE WITNESS: It's something that, in my -- in
25  my work, I certainly inform myself of. Is it

66

STEVE J. MARTIN - CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER - February 28, 2013

1  determinative?  Not at all.  Is it unusual?  Not at all.
2           But when you're looking at use of force, what
3  you're looking at is, out of how many of that 147 were
4  those righteous use of force?  I mean, they are what
5  they are.  If an inmate resists an order or gets in a
6  fight and force is necessary, that's what drives the
7  numbers.
8           MR. BORNSTEIN:  Q.  I understand what you're
9  saying.  It is what it is.  And if an inmate refuses an
10 order and you got to use force, then that's what it is.
11 Right?
12          But wouldn't you agree that people that have
13 some sort of mental health issues might have a harder
14 time complying with orders than others?
15      A.  **Absolutely.**
16      Q.  So isn't that something that should be taken
17 into consideration, then, before force is used?
18      A.  **Absolutely, if it's a calculated and planned.**
19      Q.  So then part of what I understood your
20 methodology is, usually, is you like to dig in the dirt
21 and get to the bottom of it.  Did you get to the bottom
22 of it in this case?
23      A.  **Yes.  In calculated and planned uses of force**
24 **involving MH, they abide by their regs of exhaustion and**
25 **consultation and so forth.**

67

STEVE J. MARTIN - CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER - February 28, 2013

1  practice recommendations?
2         MR. BORNSTEIN:  Q.  Yeah.  Any other best
3  practices or other recommendations that you've made
4  other than what we've discussed so far as it relates to
5  use of force.
6      A.  **None come to mind.**
7      Q.  Okay.  Is there any other opinions that you
8  reached regarding use of force other than what you put
9  in your report and these best practices recommendations?
10     A.  **I don't believe so, no.**
11     Q.  All right.  I want to turn to the RVR process.
12 And let's go through -- let's turn to -- we're in the
13 same exhibit, which is Exhibit 6, and we're turning to
14 page 105140, which is where it says "Coleman Audit RVR
15 Process Observations."  Right?
16     A.  **Yes.**
17     Q.  Which is the third page in the document.
18 Right?
19     A.  **It is.**
20     Q.  All right.  So you said you reviewed
21 approximately 440 RVR packets from ten facilities.
22 Right?
23     A.  **Correct.**
24     Q.  You interviewed RVR hearing officers, RVR
25 Coordinators, and clinicians at eight of ten facilities.

172

STEVE J. MARTIN - CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER - February 28, 2013

CERTIFICATE OF REPORTER

I, HOLLY THUMAN, a Certified Shorthand Reporter, hereby certify that the witness in the foregoing deposition was by me duly sworn to tell the truth, the whole truth, and nothing but the truth in the within-entitled cause; that said deposition was taken down in shorthand by me, a disinterested person, at the time and place therein state, and that the testimony of said witness was thereafter reduced to typewriting, by computer, under my direction and supervision;

That before completion of the deposition review of the transcript [] was [X] was not requested. If requested, any changes made by the deponent (and provided to the reporter) during the period allowed are appended hereto.

I further certify that I am not of counsel or attorney for either or any of the parties to the said deposition, nor in any way interested in the event of this cause, and that I am not related to any of the parties thereto.

DATED: March 4, 2013

_____
HOLLY THUMAN, CSR