# Exhibit 14



**OFFICE OF THE INSPECTOR GENERAL**
**Robert A. Barton, Inspector General**

**State of California**

# OFFICE OF THE INSPECTOR GENERAL
# SEMI-ANNUAL REPORT

## January – June 2012

©CDCR 2008

**OCTOBER 2012**

# TABLE OF CONTENTS

FOREWORD ...........................................................................................................1

SUMMARY OF MONITORING ACTIVITIES .............................................2

THE EMPLOYEE DISCIPLINE PROCESS .................................................3

MONITORING THE INVESTIGATIVE PHASE ........................................5

   *Monitoring Central Intake*.............................................................................5

   *Allegation Type Distribution*.........................................................................6

   *Monitoring the Investigation* ........................................................................6

MONITORING THE DISCIPLINARY PHASE .........................................7

   *Findings and Penalties* ..................................................................................7

   *Monitoring Appeals*.......................................................................................8

THE SOUTHERN REGION EMPLOYMENT ADVOCACY AND
PROSECUTION TEAM MUST IMPROVE ADHERENCE TO
DEPARTMENTAL POLICIES AND PROCEDURES ..............................9

MONITORING CRITICAL INCIDENTS .................................................15

   *Monitoring Deadly Force Investigations* .................................................. 17

CONCLUSION......................................................................................18

APPENDICES ......................................................................................20

   (LISTED BY GEOGRAPHICAL REGION)

      *A – Investigative Phase Case Summaries* ..................................... 21

      *B – Disciplinary Phase Case Summaries* ..................................... 68

      *C – Combined Phases Case Summaries* ...................................... 139

      *D – Critical Incident Case Summaries* ....................................... 232

      *E – Deadly Force Investigative Case Summaries* ....................... 257

      *F – Post Appeal Case Summaries* ............................................... 269

# FOREWORD

This 15th Semi-Annual Report (SAR) covers the time period of January through June 2012. Pursuant to Penal Code (PC) section 6133 et. seq., the Office of the Inspector General (OIG) is required to report semi–annually on its oversight of the California Department of Corrections and Rehabilitation's (CDCR) Office of Internal Affairs investigations and the employee disciplinary process. As the result of statutory changes and internal reorganization, the staff in our regional offices that were previously known as the Bureau of Independent Review (BIR) now conducts the same function under the title of the Discipline Monitoring Unit (DMU).

The successful conclusion of the *Madrid* litigation and federal oversight of CDCR internal affairs investigations was in part due to the OIG's continued independent assessment of the employee discipline process. It is our goal to assist in CDCR's continued improvement in this area and the avoidance of future outside intervention. In addition, these reports provide critical public transparency for our State correctional system.

This is the second report using a new modified format. Historically, the semi-annual reports focused on the differing roles of various CDCR components. In the new format, while the areas of critique remain the same, we now assess the CDCR as a whole in the two distinct phases of monitoring. Cases are reported at the end of the Investigative Phase and again at the end of the Disciplinary Phase; or, if the matter was resolved entirely within the reporting period, there is a combined assessment. An appendix for each assessment is included in this report. Beginning with the next reporting period, we will also include any recommendations made in each phase as we continually strive to add value to the review process.

We also assess the sufficiency of each case based on CDCR's overall handling of the case. Our assessment of a case may be based on either process, outcome, or both. Sufficiency ratings will be compared across reporting periods, as presented in this report. We have also attempted to provide the reader with a more extensive description of the monitoring process as a whole, and we identify deficiencies in department attorney representation, which impact both phases of monitoring. The southern region Employment Advocacy and Prosecution Team (EAPT) office must improve adherence to department policies and procedures for effective representation during the employee discipline process.

We encourage feedback from our readers and strive to publish reports that meet our statutory mandates as well as offer all concerned parties a useful tool for improvement. For more information about the Office of the Inspector General, including all reports, please visit our website at www.oig.ca.gov.

— ROBERT A. BARTON, INSPECTOR GENERAL

# SUMMARY OF MONITORING ACTIVITIES

The Office of the Inspector General's (OIG) Discipline Monitoring Unit (DMU), [formerly known as the Bureau of Independent Review (BIR)] is responsible for monitoring the California Department of Corrections and Rehabilitation's (CDCR or department) employee disciplinary process. The OIG monitors and assesses the department's internal affairs investigations of alleged employee misconduct, as well as the disciplinary decisions related to sustained employee misconduct and any subsequent appeal. We monitor both administrative and criminal investigations conducted by the department. In addition, we monitor and assess the department's response to critical incidents. We publish our assessment of monitored cases and critical incidents in our semi-annual reports (SAR). Late in this reporting period we began monitoring CDCR's contraband surveillance watch (upon legislative request). The next SAR will include results *and* outcomes of contraband surveillance watch monitoring for a full six-month period, July through December 2012.

We report cases in two separate phases. First is the Investigative Phase. If the investigation of a case has concluded, either by submission to the department for disciplinary findings in an administrative case, or to the district attorney's office for review in a criminal case, it is reported in the Investigative Phase table (see appendices). Second is the Disciplinary Phase. In this phase, cases are reported once the department makes a decision on imposing discipline, and after any resolution or conclusion of the appeal process.

This report provides an assessment of 419 monitored cases that the OIG closed between January 1 through June 30, 2012, and 66 monitored critical incidents that we closed during the same period. There were also 19 monitored cases previously reported that have now completed the State Personnel Board (SPB) appeal process. Overall, we have closed and are providing assessments of 558 monitored cases in this report compared to 547 in the last report.

Most cases monitored by the OIG involve allegations of administrative misconduct. This includes cases for which the department conducts an internal affairs investigation and then determines if disciplinary action is appropriate, as well as direct action cases wherein the department determines there is enough evidence to impose discipline without an internal affairs investigation, or with a subject only interview (SOI).

This report provides an assessment of 419 closed OIG monitored cases (Chart 1). In addition, we also assessed seven administrative deadly force cases (included in the above total monitored cases) that did not necessarily include misconduct allegations, but required an investigation due to the use of deadly force. These cases are now reported in Appendix E. The number of cases reported does not correlate to the number of cases that the Office of Internal Affairs (OIA) has opened during the reporting period, but is only a reflection of the number of cases that came to a conclusion, and therefore, were reportable by the OIG during this period.

Chart 1 OIG Closed Monitored Cases from 2011/2012 Reports

The OIG also assessed 54 closed criminal investigation cases in this report, none involving criminal deadly force investigations.

# THE EMPLOYEE DISCIPLINE PROCESS

Whenever the department reasonably believes that employee misconduct may have occurred, the matter is forwarded to the OIA's central intake panel for evaluation. It is normally the responsibility of the hiring authority to request an investigation in a timely manner.

The OIA's central intake panel determines if an internal affairs investigation is warranted, whether enough information exists for the department to proceed with a disciplinary action without an investigation, if a subject only interview is needed, or if no further action is warranted. The OIG participates in the central intake panel meetings to monitor the process, provide recommendations on central intake panel determinations, and determine which cases the OIG will accept for monitoring. The following table is the OIG guide for which cases we accept for monitoring.

| Madrid-Related Criteria | OIG Monitoring Threshold |
|---|---|
| Use of Force | Use of force resulting in, or which could have resulted in, serious injury or death or discharge of a deadly weapon when the discharge does not constitute a warning shot. |
| Dishonesty | Perjury; material misrepresentation in an official law enforcement report; failure to report a use of force resulting in, or which could have resulted in, serious injury or death; or material misrepresentation during an internal affairs investigation. |
| Obstruction | Intimidating, dissuading or threatening witnesses; retaliation against an inmate or against another person for reporting misconduct; or the destruction or fabrication of evidence. |
| Sexual Misconduct | Sexual misconduct prohibited by Penal Code section 289.6. |
| High Profile | Cases involving alleged misconduct by high-ranking department officials; misconduct by any employee causing significant risk to institutional safety and security, or for which there is heightened public interest, or which results in significant injury or death to an inmate, ward, or parolee (excluding medical negligence). |
| Abuse of Position or Authority | Unorthodox punishment or discipline of an inmate, ward, or parolee; or purposely or negligently creating an opportunity or motive for an inmate, ward, or parolee to harm themselves (i.e. suicide), one another, or staff. |
| Criminal Conduct | Trafficking of items prohibited by the Penal Code; or criminal activity that, if convicted, would prohibit a peace officer from carrying a firearm (e.g. - all felonies and certain misdemeanors/wobblers, such as those involving domestic violence, brandishing a firearm, and assault with a firearm). |

Once a case is accepted for monitoring, it is followed through the entire process. If an internal affairs investigation is conducted, the assigned OIG Special Assistant Inspector General (SAIG) consults with the investigators and the department attorney, if one is designated, throughout the process.

The hiring authority is required to review the investigative report within 14 days of delivery. Policy requires the hiring authority to consult with the assigned SAIG on their discipline decision. If the SAIG believes the hiring authority's decision is unreasonable, the matter may be elevated to the next supervisory level through a process called Executive Review.[1]

Employees who are disciplined have a right to challenge the discipline imposed against them by filing an appeal with the State Personnel Board (SPB), an independent state agency. The OIG continues to monitor cases through this appeal process. During this process, a case can be concluded by way of settlement (a mutual agreement between the department and employee), a unilateral action by one party withdrawing the appeal or disciplinary action, or SPB decision after a contested hearing. In cases where the SPB decision is subsequently appealed in court, the OIG continues to monitor the case until final resolution. The ultimate outcome and evaluation of department performance for this phase are reported in the SAR, sometimes in conjunction with the Investigative Phase, if both concluded in the same six-month period.

---

[1] Pursuant to department policy found in DOM section 33030.14, when there is a disagreement over a hiring authority's decision concerning findings, penalty, or settlement, the OIG, or other designated stakeholders, can elevate that decision to a higher level of managerial review.

# MONITORING THE INVESTIGATIVE PHASE

The Investigative Phase generally starts with the request for investigation, either by the hiring authority or OIA's initiative.

## MONITORING CENTRAL INTAKE

The department's central intake panel meets weekly to review the referrals for investigation submitted from throughout the entire department. Within the OIG's DMU are SAIGs assigned to the Headquarters Unit who attend the weekly central intake panel meetings and also review the investigation referrals. The SAIG makes recommendations to the department regarding whether the case should be opened for investigation and the level of investigation needed.

> The OIG reviewed 1,136 cases referred to the OIA, and accepted 30 percent for monitoring.

The SAIG also informs the department which cases the OIG will accept for monitoring. In this six-month reporting period, the OIG reviewed 1,136 cases that were forwarded to the department's central intake panel for evaluation. Currently, the OIG accepts for monitoring about 30 percent of the cases referred by the department each month.

One key factor we monitor at the central intake stage is the timeliness of the department's action. All investigations have a deadline for taking disciplinary action which prohibits the department from taking action beyond a specified date. For example, in administrative investigations of peace officers, the deadline for taking disciplinary action is generally one year from the date of discovery. This makes it critical for matters to be referred for investigation, and an investigation to be opened if appropriate, in a timely manner. It is also critical that the department have guidelines for timely referral. The department currently has no standard for referring cases for investigation. The OIG uses 45 days as a reasonable timeframe for the hiring authority to refer cases to the central intake panel to open an investigation. The hiring authority timely referred 72 percent of the cases in this report to the central intake panel.

Although department policy requires the central intake panel to make a determination on a particular case within 30 days of referral to the OIA, only 71 percent of the cases closed and reported in this time frame had timely determinations. Each delay at the start of the process impacts the ability of the investigator to complete an investigation in time to provide the required 21 days for review by the department attorney, and the subsequent 14 days for review by the hiring authority before the deadline expires. If each component of the process meets its timeline, there are 255 days (or 8 ½ months) for the investigator to complete an administrative investigation of a peace officer. Once again, the cases completed in this SAR are not necessarily cases that went through the central intake panel process during this reporting period. Almost all of these cases went through the central intake panel process in the previous reporting period and are only now being reported because the investigative phase of the case is complete.

## ALLEGATION TYPE DISTRIBUTION

Consistent with prior reporting periods, the OIG focuses a large portion of its monitoring activities on cases involving core *Madrid* issues. The core *Madrid* allegations involve unreasonable use of force, officer dishonesty, failure to report misconduct, and code of silence.

Chart 2 provides a comparison of the OIG case load between this reporting period and the prior reporting period for the core *Madrid* allegations of misconduct. It is important to note that a single case often contains many allegations of misconduct; therefore, the number of allegations may exceed the number of cases reported. This chart does not reflect any trends regarding CDCR discipline issues, but rather is only a reflection of OIG workload and cases closed during the reporting period.

Chart 2 Core *Madrid* Allegation Cases Closed by OIG in 2011/2012



## MONITORING THE INVESTIGATION

Once a case is accepted by the OIG for monitoring it is assigned to the region where the investigation will take place. A SAIG is assigned by the regional supervisor to monitor all critical stages. One key component of monitoring is maintaining contact with the assigned investigator and department attorney in order to consult in real time as the investigation is underway. Because communication is so crucial to the oversight process, the department is assessed on their cooperation, or lack thereof, with the SAIG. For example, the OIG cannot monitor an interview if we are not timely informed that it will take place.

# MONITORING THE DISCIPLINARY PHASE

The Disciplinary Phase starts with the hiring authority's determination whether or not to sustain the allegations. If the allegations are sustained, the hiring authority must impose a penalty consistent with the provisions of CDCR's policies and procedures.

## FINDINGS AND PENALTIES

A critical step in the administrative disciplinary process is when a hiring authority determines which allegations should be sustained, if any, and the appropriate penalty. Based on the evidence presented, the hiring authority must: 1) determine whether there is enough evidence to make a finding; 2) find that the allegations are unfounded; 3) find that the allegations are not sustained; 4) find that the employee is exonerated; or 5) find that the allegations are sustained. If the allegations are sustained, the hiring authority must determine the appropriate penalty. The appropriate penalty must be drawn from the disciplinary matrix found in CDCR's policies and procedures. The hiring authority consults with the department attorney (on cases where an attorney is assigned) and the SAIG monitoring the case. The hiring authority considers each case on its own merits to determine penalty, while taking into consideration any aggravating or mitigating factors.

If either the SAIG or the department attorney believes the hiring authority has made an unreasonable decision as to findings or penalty, Executive Review can be sought pursuant to CDCR's policies and procedures. In the Executive Review, the hiring authority's supervisor, the department attorney's supervisor, and an OIG supervisor conduct the disciplinary process. Table 1 shows for this report there were only six cases where an Executive Review was sought. OIG requested an Executive Review in each case. In five cases the ultimate decision made at the Executive Review was consistent with the OIG position. In the previous reporting period, Executive Review was requested nine times and the final decision was consistent with the OIG position in all nine instances.

Table 1 Executive Review

| | Total Number of Requests for Executive Review in This Reporting Period Compared to the Previous Reporting Period | | | | |
| --- | --- | --- | --- | --- | --- |
| | Department Requested Executive Review | OIG Did Not Concur with Department's Request for Executive Review | OIG Requested Executive Review | Total Number of Requests for Executive Review | Executive Review Decision Consistent with OIG's Position |
| Jan-June 2012 Reporting Period | 0 | 0 | 6 | 6 | 5 |
| Jul-Dec 2011 Reporting Period | 4 | 4 | 5 | 9 | 9 |

## MONITORING APPEALS

In past reports, we published updated information about cases in the Appealed Cases table if the disciplinary penalty initially imposed by the department was significantly modified after an employee filed an appeal with the State Personnel Board. There are many reasons for the discipline imposed against an employee to be modified during the appeal process. For example, key witnesses may change their statements at hearing or not be available to testify. Facts previously unavailable may be discovered.

In this report, all appeals are included in the Disciplinary Phase table. However, during our transition to the new reporting format, there are cases previously reported only through the decision by the hiring authority that are in the process of concluding after appeal. As a result, for this reporting period and perhaps the next, we will report separately on the appellate results of those cases. In addition, cases in this report contain an assessment of the preparation and handling of the appeal by the department representative.

There are 19 such cases reported in previous semi-annual reports that were still pending an appeal before the State Personnel Board that came to conclusion in this reporting period. Of those 19 cases, 12 went to hearing before the SPB, 5 settled without a hearing, and in 2 cases the appeals were either withdrawn by the employee or dismissed by the SPB for a failure to appear by the employee and the penalty imposed was unchanged.

Of the 12 cases that went to hearing, the department prevailed in 6 cases. Of the 5 cases that the department settled, the OIG did not concur with the terms of the settlement agreement approximately 60 percent of the time. The Appealed Cases table addresses only those cases where we did not concur with the settlement. The Appealed Cases table begins on page 272.

# THE SOUTHERN REGION EMPLOYMENT ADVOCACY AND PROSECUTION TEAM MUST IMPROVE ADHERENCE TO DEPARTMENTAL POLICIES AND PROCEDURES

The southern region EAPT consists of attorneys who are tasked with providing CDCR stakeholders, including the OIA and the department hiring authorities, with legal advice throughout the investigatory and disciplinary phases of an employee discipline case. Effective representation is crucial during this process and if department attorneys fail to provide adequate representation the investigative and disciplinary phases may be detrimentally impacted.

**The department's southern region EAPT office persistently fails to comply with CDCR Department Operations Manual (DOM) provisions which impact the legal representation to department stakeholders**

The southern region EAPT office has failed to provide legal representation to the department in various phases of the employee disciplinary process. The deficiencies include: failing to become familiar with the facts of a case at the commencement of an investigation, not attending material witness interviews, and failing to provide OIA investigators with legal advice and direction. Southern region EAPT attorneys receive little training from their supervisor and, as a result, are often unfamiliar with department policy and controlling law. Additionally, legal documents, such as adverse actions, have been found in some cases to be incomplete and untimely. Some of the attorneys also demonstrate unskilled lawyering at administrative hearings, which has resulted in decisions adverse to the department.

Since the establishment of the Bureau of Independent Review as part of the remedial orders in the *Madrid v Cate* class action lawsuit, the OIG has called attention to the deficiencies through public reporting, meetings with the Assistant Chief Counsel (ACC) in charge of the southern office, the filing of letter reports, and meetings with the EAPT chain of command. At its core, the southern region EAPT office suffers from a leadership crisis.

Good management and supervision practices, such as planning, controlling, and monitoring work processes, as well as providing the attorneys with clear instructions, monitoring their conduct, and holding them accountable, are often lacking. Of significant concern is the fact that the ACC expresses hostility to the reforms of the *Madrid* litigation and has attempted to thwart OIG oversight. The ACC's viewpoint has permeated the southern region EAPT office and has compromised staff who otherwise may desire to implement *Madrid* reforms. When any part of the employee disciplinary system fails to adequately perform, the entire process is compromised. This manifests itself with detrimental consequences to the department, including significant monetary loss, lack of public confidence, and harm to the public service.

**The southern region EAPT office consistently performs below all other EAPT offices in the state**

As required by PC section 6133, the OIG reports on its oversight of the employee disciplinary process, including the actions of the EAPT, semi-annually. Our metrics show that the southern region EAPT office consistently performs at a level below the other EAPT regions. Data collected since September 2009, shows that the southern region EAPT office has consistently performed below its counterparts in the central, northern, and headquarters region offices in seven areas. The objective criteria used to measure performance directly relate to EAPT duties as defined in the department's policies and procedures. The results show that in every criterion measured, each of the other regional EAPT offices outperformed the EAPT southern region. As illustrated in Chart 3 below, in every criterion measured, the southern region EAPT office performed below the state average, sometimes by a significant margin.

Chart 3 Southern Region EAPT Office Performance Compared to Statewide EAPT



While the deficiency data in Chart 3 is significant, it does not fully illustrate the scope of the deficiencies in the southern region EAPT office. The following examples of those deficiencies are:

- In 2009, an officer used unnecessary force on an inmate which was witnessed by another officer. The witnessing officer was found to be dishonest and was dismissed. The department attorney in the southern region EAPT office allowed the deadline for imposing discipline to pass without serving the adverse action. This was despite numerous e-mails from the OIG over eight months reminding the attorney of the deadline. As a result, the department was barred from pursuing the personnel actions and the dishonest officer remains employed.

- In 2010, an officer was dismissed after he was found to be dishonest regarding the discovery of contraband. The officer appealed. The department attorney in the southern region EAPT office did not issue witness subpoenas until four business days before the hearing. As a result, key witnesses were either unavailable for service or to testify. Fortuitously, the subject officer did not appear for his scheduled hearing and his appeal was dismissed. Absent his failure to appear, the subject officer would likely have prevailed since, due to the failings of the department attorney from the southern region EAPT office, the department had no witnesses to support their case. [2]

- In 2010, an officer brought his personal mobile phone into the institution and, while on duty during this time frame, made over 800 phone calls. The officer was dismissed after he lied about his conduct. The department attorney from the southern region EAPT office drafted a deficient disciplinary action. The OIG provided significant, detailed input concerning the deficiencies of the draft notice of adverse action (NOAA) to the department attorney and then to the ACC. The ACC approved the document without fully considering the OIG input. Without providing a draft to the OIG, a second department attorney from the southern region EAPT office filed a pre-hearing settlement conference statement which failed to identify necessary witnesses and evidence.[3] Prior to the hearing, the department attorney and the ACC determined the disciplinary action and pre-hearing settlement conference statement were so inferior it was unlikely the department would prevail at hearing.  If they lost, the officer could be returned to work with thousands of dollars in back pay and benefits awarded. To mitigate the potential financial harm, the hiring authority settled the case and returned a dishonest officer to work under the advisement of the department attorney.

- In 2011, three officers were dismissed after being dishonest about an incident involving the use of force. On appeal, the department attorney from the southern region EAPT office failed to skillfully litigate the case. The department attorney lacked knowledge of

---

[2] In a disciplinary appeal, the department must prove the allegations against the employee by a preponderance of the evidence.  (Evidence Code section 115.)

[3] California Code of Regulations, Title 2, section 57.1 requires parties to an action to file a pre-hearing settlement conference statement prior to the evidentiary appeal hearing. Among other things, the statement must identify the witnesses and evidence the party intends to present at the hearing. Failure to fully disclose the required items may result in the exclusion or restriction of the evidence at hearing.

the Evidence Code, advocacy skills, and an understanding of how to synthesize existing facts into a coherent presentation. Pre-hearing, the department attorney did not draft appropriate pleadings to have a witness transferred from county jail to a location from which he could testify by videoconferencing, and neglected to interview appellant's witnesses who were readily available department employees. During hearing, the department attorney did not develop a strategy for examining a key witness who had previously recanted his statement, and was admonished by the administrative law judge for asking leading questions on direct examination. Further, the department neglected to prepare demonstrative evidence, was unable to properly impeach witnesses, and did not know how to effectively cross-examine character witnesses. The department attorney's inability to skillfully litigate led to a State Personnel Board decision returning all three employees to work at a tremendous cost to the department in back-pay.

- Beginning in 2010, a department attorney from the southern region EAPT office was observed by OIA special agents and by the OIG on numerous occasions sleeping during investigative interviews. On one occasion a special agent kicked the department attorney to wake him. The OIG discussed this matter with the ACC on multiple occasions but no immediate action was taken. It was not until December 2011, after a written request by the OIG for the department to take corrective action, that the ACC requested disciplinary action against the department attorney.

**The southern region EAPT office is disadvantaged by the supervisor's disregard for the *Madrid* process**

While some of the department attorneys in the southern region do their best to provide legal services, others have adopted the indolent attitude modeled by the ACC. Of critical concern is the fact that the ACC encourages an atmosphere of disregard toward the *Madrid* reforms and has shown hostility to the monitoring scheme imposed by the courts and adopted by the Legislature. This attitude has created antagonism between the southern region EAPT office and the OIG, which interferes with the monitoring process. The following cases are representative:

- In 2010, a sergeant and two officers were charged with use of unreasonable force and dishonesty. The first department attorney from the southern region EAPT office assigned to the case did not attend any of the 17 interviews. The second department attorney assigned to the case recommended the hiring authority sustain the allegations and dismiss the employees. All three employees were dismissed and filed appeals. The third department attorney assigned to the case determined that the evidence was insufficient to prevail at hearing and advised the hiring authority to settle with the employees. The OIG opposed settlement as to one of the employees and requested Executive Review. In contravention of department policy, the department attorney failed to consult with the OIG, settled all of the cases, and left the OIG with no opportunity for Executive Review.
- In 2012, a hiring authority met with a department attorney from the southern region EAPT office, the ACC, and the OIG concerning whether allegations should be sustained against a sergeant. The department attorney argued that no allegations should be sustained because the investigation was insufficient. It is noted that the department

attorney had the opportunity to review the investigation and recommend additional investigative steps be taken, but did not do so. The OIG recommended the allegations be sustained. The hiring authority sustained some of the allegations and dismissed the sergeant. Subsequently, the department attorney and ACC initiated a second meeting with the hiring authority to further discuss the allegations without notice to the OIG. At their urging, the hiring authority completely reversed his decision and did not sustain any allegations. When called on his violation of departmental policy in excluding the OIG from this discussion, the ACC initiated a third meeting to discuss the allegations, this time notifying the OIG. The ACC and the hiring authority had already come to a decision on the allegations outside the presence of the OIG. The ACC's conduct in this case set a poor example of following the *Madrid* process for his staff.

As the supervisor of a legal office, it is ultimately the ACC's responsibility that his staff provides timely and accurate legal advice to department stakeholders. The ACC and his southern region attorneys have failed to provide timely counsel. For example:

- In 2010, an officer allegedly released three inmates from their cells for the purpose of attacking a fourth inmate. During the investigation, CDCR's OIA requested legal advice from the ACC concerning whether a particular investigative tactic violated the Public Safety Officers Procedural Bill of Rights Act (POBOR)[4]. Eighteen months later, the ACC has yet to provide the OIA with a written legal opinion on the issue.

- In 2009, a sergeant struck an inmate's head against the side of a van. An officer saw the incident. Despite the department's zero tolerance policy against code of silence, the sergeant and officer conspired not to report the incident. The employees were dismissed. The officer subsequently admitted to observing the use of force and participating in the code of silence. Prior to the hearing, the department attorney from the southern region EAPT office and the ACC advised the hiring authority to return the officer to work because the officer had eventually "come clean" and told the truth. The advice was contrary to the department's zero tolerance policy and the hiring authority correctly rejected it. Undeterred, the department attorney and the ACC challenged the hiring authority's decision on Executive Review. The next higher level of CDCR management likewise rejected the EAPT advice, and agreed with the OIG. The case proceeded to hearing where the sergeant's dismissal was sustained and the officer resigned in lieu of termination.

The ACC has failed to adequately train the department attorneys from the southern region EAPT office on their core responsibilities, such as writing personnel actions and advocacy skills. The OIG has repeatedly recommended to the ACC that he develop a training curriculum. The recommendations have been met with resistance. Lack of funding is not an obstacle. Many low or no cost options are available, including: in-house training using written materials provided by state agencies or local governments; developing an internal training manual with contributions from competent and experienced department attorneys; and utilizing local prosecutors, law enforcement, and professional organizations to make presentations on advocacy and the

---

[4] Government Code section 3300 et seq., contains the POBOR Act.

Evidence Code. Further, at no cost, department attorneys could attend institution in-service training blocks for instruction on departmental policies and procedures.

**Failure to address these problems places the department and taxpayers at risk.**

The highlighted cases in this section are some examples of the poor quality of work produced in the southern region EAPT office. The OIG has brought the on-going deficiencies to the attention of the ACC numerous times. The ACC has demonstrated a lack of will to correct deficiencies displayed by some of the department attorneys he supervises. Additionally, the deficiencies noted in the management of the southern region EAPT office have a negative impact on the OIA investigators in the southern region who have shown significant improvement in the investigation of misconduct cases since the inception of OIG monitoring. Lack of skillful and timely legal advice leaves the investigators without significant tools to do their job. Failure to correct the deficiencies outlined in this report places the department and taxpayers at risk of costly litigation. It also impedes the overall success of the disciplinary process and *Madrid* reforms for all cases in the southern region.

The OIG has been informed that a plan is currently being implemented to address the problems raised by this report in the southern region EAPT office. It is the sincere hope of the OIG that our next report will reflect demonstrable progress by the department in rectifying these issues.

# MONITORING CRITICAL INCIDENTS

The department is required to notify the OIG of all critical incidents immediately following the event. Critical incidents include serious events that require an immediate response by the department, such as riots, homicides, escapes, uses of deadly force, and unexpected inmate deaths. The following critical incidents require OIG notification:

## Critical Incidents Defined

1. Any use of deadly force, including warning shots;
2. Any on-duty death of a department staff member;
3. Any off-duty death of a department staff member when the death has a nexus to the employee's duties at the department;
4. Any death of an individual in the custody or control of the department,[5] excluding lawful executions;
5. Any serious injury that creates a substantial risk of death to a department staff member or an individual in the custody or control of the department;
6. Any suicide by an adult individual in the custody or control of the department and any suicide or attempted suicide by a juvenile ward in the custody or control of the department;
7. Any riot or disturbance within an institution or facility that requires a significant number of department staff to respond or mutual aid from an outside law enforcement agency;
8. Any incident of notoriety or significant interest to the public;
9. Any allegations of significant misconduct by high-ranking department officials; and
10. Any other significant incident identified by the OIG after proper notification to the department.

The OIG maintains a 24-hour contact number to receive notifications. After notification, the OIG monitors the department's management of the incident, either by responding to the site of the incident or by obtaining the incident reports and following up on-scene at a later time. More specifically, we evaluate what caused the incident and the department's immediate response to the incident. The OIG may make recommendations as a result of our review regarding training, policy, or referral for further investigation of potential negligence or misconduct. If we believe the incident should be referred to the OIA, the OIA's decision regarding any referral is also monitored. If the matter is opened for an investigation, the OIG may monitor the ensuing investigation as described previously.

During the reporting period, the OIG completed assessments of 67 critical incidents. Eleven of these incidents were referred to the OIA for potential investigation. It is important to note that the number of critical incidents within any period is dependent upon the events taking place within the department. Our reports do not directly correlate to incidents that occurred during these time frames, but rather reflect the number of incidents the OIG has closed out and assessed for the time period. Additionally, in order for the OIG to monitor an incident on-scene, the OIG relies on the department to provide timely notification that a critical incident has occurred.

---

[5] As used herein, an individual within the custody and control of the department does not include parolees.

However, even when notification is untimely, the OIG may still remotely monitor the event by collection of reports and follow-up review.

Chart 4 shows the total number of monitored critical incidents that were closed and reported each year by the OIG. It does not directly reflect the exact number of incidents occurring during each period, because the OIG does not report incidents until our final assessment is completed. Some incidents may take longer than others to be resolved.

**Chart 4 Monitored Critical Incidents  Closed by the OIG Each Reporting Period**



For cases reported during this period, the department failed to provide required timely notification for 12 percent of the critical incidents. The percentage of delayed notifications is significantly less than the prior reporting period, yet still indicates an area where improvement is needed. Delays in notification impact the OIG's ability to provide real time, on-site monitoring for critical incidents.

In this reporting period, the OIG continued to monitor critical incidents involving the use of deadly force, and in-custody inmate deaths.

The OIG also monitors critical incidents as they occur in the juvenile system. During this reporting period there was only one critical incident reported at a juvenile facility, and no deadly force was employed in juvenile facilities during this reporting period.

# Monitoring Deadly Force Investigations

Deadly force incidents are a sub-type of critical incidents monitored by the OIG that automatically result in both an administrative and criminal investigation. Department policy provides for criminal and administrative investigations to be immediately conducted on all deadly force incidents. Occasionally, an outside law enforcement agency will conduct the criminal investigation, most notably when the force occurs outside an institution and in the community, typically in a parole situation. The nature of the act (intentional use of potentially lethal force) warrants additional scrutiny and review regardless of whether any misconduct is suspected.

Any time department staff use deadly force, the department is required to promptly notify the OIG. When notice of a deadly force incident is received, OIG staff immediately responds to the incident scene to evaluate the department's management of the incident and the department's subsequent deadly force investigations.

The OIG also participates as a non-voting member of the department's Deadly Force Review Board (DFRB). The DFRB is an independent body comprised of outside law enforcement experts and one CDCR executive officer. Generally, after the administrative investigation is complete, the investigative report is presented to the DFRB. The DFRB examines the incident to determine the extent to which the use of force complied with departmental policies and procedures, and to determine the need for modifications to CDCR policy, training, or equipment. The DFRB's findings are presented to the CDCR undersecretary who determines whether further action is needed.

Because the use of deadly force has such serious implications, the department's use of deadly force has always received the highest level of scrutiny. The OIG monitored 20 deadly force administrative investigations that concluded during this reporting period. Seven deadly force administrative cases went before the DFRB, and in six of the cases, the DFRB found no policy violations by the department. In one deadly force investigation case, the DFRB found the action of the department employee out of compliance with the department's use-of-force policy. In three use-of-deadly-force cases, there was no on-scene OIA response by CDCR. In two of the cases, parole agents discharged their firearms to stop the attack of aggressive or dangerous dogs. The other incident involved accidental discharge of a firearm, resulting in a self-inflicted gunshot wound.

The DFRB only considers cases referred by the OIA. The OIG has expanded its reports to include an additional appendix to report each use of deadly force case that we closed in this reporting period regardless of whether there is OIA or DFRB involvement.

In cases where warning shots are discharged, the OIG believes a more formal determination of the justification for use of deadly force should be made. The requirements for the employment of deadly force must still be present even if the officer only intends a "warning shot." For example, a warning shot may still be a reckless discharge of a firearm if there was no justification to use deadly force in the first place. The OIA maintains that warning shots do not require on-scene response and can be monitored by remote assessment, which is the general practice largely due

to resource issues. The OIG believes on-scene response is an essential element of our review and will continue responding to critical incidents involving warning shots whenever feasible.

In addition, the OIG has discussed with the department our opinion on the level of scrutiny that is needed when unconventional deadly force is used (such as an intentional or unintentional blow to the head from a baton or 40mm round). In the past, the department has only opened a deadly force investigation if the inmate actually died from being struck on the head or was injured so severely that there was a substantial risk of death. The department now agrees that intentional blows to the head with a weapon, regardless of outcome, constitute deadly force and an assessment of justification should be made. An intentional blow to the head, even if it does not result in serious injury, is still potentially out of policy and potentially a crime if there is no justification to use deadly force.

## CONCLUSION

Chart 5 compares the percentage of closed monitored cases rated "sufficient" between this reporting period and the previous reporting period. Investigative Phase deficiencies can be attributed to entities within the department other than the assigned agent. For example, we assess the delays of the hiring authority in referring cases, and the performance of the department attorney, if one is designated. The exact nature of each deficiency is provided in Appendix A.

Chart 5 Percentage of Closed Monitored Cases Rated Sufficient

| | Investigative Phase Jan-June 2012 | Investigative Phase Jul-Dec 2011 | Disciplinary Phase Jan-June 2012 | Disciplinary Phase Jul-Dec 2011 | Critical Incidents Jan-June 2012 | Critical Incidents Jul-Dec 2011 | Deadly Force Jan-June 2012 | Deadly Force Jul-Dec 2011 |
|---|---|---|---|---|---|---|---|---|
| Number Sufficient | 69% | 74% | 76% | 82% | 88% | 93% | 100% | 0% |

For the OIG monitored cases that the OIG closed during this reporting period compared to the prior one, there was a 5 percent decrease in sufficient investigations.

In the Disciplinary Phase, we now fully assess the performance of the hiring authority and department attorney (or representative) up to and including appellate hearings before the State Personnel Board. In this phase, we changed from assessing individual parts of the department to reporting the deficiencies of all departmental entities in a combined assessment. In the Disciplinary Phase, the department received insufficient ratings in 24 percent of the cases. In those insufficient cases, the department either failed to comply with critical policies and procedures, or acted in a manner deemed to be unreasonable by the OIG. The exact nature of each insufficient rating is explained in Appendix B. When compared with the cases closed and reported in the last period, this represents a 6 percent decrease in sufficiency in the discipline phase.

Finally, the department failed to provide the OIG with timely notification in 12 percent of the reported critical incidents; however, the department received an overall sufficiency rating of 88 percent. CDCR administrators are aware of the benefits gained by independent oversight of critical incidents and the necessary transparency that it provides, and have pledged to work with the OIG in improving timely notification, which is largely responsible for the 5 percent sufficiency rating decrease from the last report. Even though sufficiency ratings have decreased in this report, they are still markedly improved from when the OIG began monitoring in 2005.

The most notable concern to the OIG during this monitoring period is the continued failure to correct the deficiencies in the southern region EAPT office, which places the department and taxpayers at risk of costly litigation and impedes the overall success of the *Madrid* reforms. As evidenced by the comparison Chart 3 of the performance of the southern region EAPT office, the overall discipline sufficiency rating would drastically improve by that region adhering to policy and the *Madrid* process.

True oversight often creates a positive tension between the oversight agency and the one being monitored. The OIG seeks to work with CDCR on these issues but ultimately represent the California taxpayer and the interests of California citizens. It is the sincere hope of the OIG that this report results in improvements in the critical arena of corrections and the discipline process.

# APPENDICES

Appendix A contains the assessments for 103 cases that concluded the Investigative Phase for this reporting period, both criminal and administrative, listed by geographical region.

Appendix B contains the assessments for 107 cases that concluded the Discipline Phase for this reporting period, listed by geographical region.

Appendix C contains the dual assessments for 119 cases where the combined Investigative Phase *and* Discipline Phase were concluded during the reporting period, listed by geographical region.

Appendix D contains the assessments for 66 critical incidents monitored during this reporting period, listed by geographical region.

Appendix E contains the assessments for 20 deadly force investigative case summaries monitored during the reporting period, listed by geographical region.

Appendix F contains the assessment of 4 cases that concluded the appeal process and were deemed by the OIG to be insufficient in process or outcome, listed by geographical region.

# APPENDIX A                                                      103
# INVESTIGATIVE PHASE CASE SUMMARIES
## CENTRAL REGION

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| 2007-12-01 | 10-2779-IR | Criminal Investigation | 1. Criminal Act | Insufficient |

### Facts of the Case

Between December 1, 2007, and January 1, 2008, an office technician allegedly engaged in an overly familiar sexual relationship with an inmate, resulting in the office technician becoming pregnant by the inmate. It was also alleged that the office technician brought the inmate contraband such as tobacco and a mobile phone. The case was referred to the district attorney's office. The prosecutor requested DNA samples from the inmate, the office technician, and the child to establish paternity. However, no DNA samples were obtained because the office technician and the child could not be located. Consequently, the district attorney's office declined to prosecute. The office technician resigned before the department could open an administrative investigation.

### Investigative Assessment

The investigation was thoroughly conducted and the special agent and the hiring authority performed in accordance with the department's policies and procedures. However, the special agent did not deliver a report to the district attorney's office until 15 months had passed since he interviewed the office technician. When the district attorney's office requested DNA testing, the office technician could not be located.

### Assessment Questions

- Was the OIA investigation, or subject only interview, conducted with due diligence?

  *Although the office technician was interviewed on August 12, 2010, the special agent did not submit a draft of the criminal report until March 14, 2011, seven months later. The case was then submitted to the district attorney's office in November 2011, nearly an additional eight months, despite no other meaningful investigation being conducted.*

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| 2009-07-01 | 11-2278-IR | Criminal Investigation | 1. Criminal Act | Sufficient |

### Facts of the Case

Between July 1, 2009, and July 19, 2011, an officer allegedly brought mobile phones and tobacco into the institution and sold them to inmates. The investigation failed to establish probable cause to believe a crime was committed. Therefore, the case was not referred to the district attorney's office. The department did not open an administrative investigation due to lack of evidence.

### Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| 2009-12-22 | 11-0567-IR | Criminal Investigation | 1. Criminal Act | Sufficient |

### Facts of the Case

Between December 22, 2009, and June 1, 2011, an officer allegedly brought mobile phones, tobacco, and marijuana into the secure perimeter of the institution and sold these items to inmates. The case was referred to the district attorney's office, which declined to prosecute. The officer retired on June 10, 2011. A letter was placed in the officer's official personnel file indicating he retired during an internal affairs investigation, and no administrative investigation was opened.

### Investigative Assessment

In all critical aspects, the investigation was timely and thoroughly conducted. The department attorney and the hiring authority performed in accordance with the department's policies and procedures.

# CENTRAL REGION

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| 2010-06-09 | 10-3086-IR | Administrative Investigation | 1. Failure to Report<br>2. Unreasonable Use of Force<br>3. Discourteous Treatment | Insufficient |

## Facts of the Case

On June 9, 2010, an associate warden, a lieutenant, two sergeants, and three officers allegedly kept several inmates locked in exercise modules outside the housing facility, without any clothes, for up to four hours, after the inmates had been removed from their cells due to the inmates covering their cell windows in protest of alleged staff misconduct and alleged inadequate medical care. These staff members also allegedly failed to report uses of force they had allegedly witnessed when the inmates were removed from their cells. Additionally, it was alleged that one officer used unnecessary force on an inmate during cell extractions.

## Investigative Assessment

The hiring authority delayed requesting an investigation on this case and OIA Central Intake delayed in taking action on that request. Additionally, the special agent did not complete the report until less than two weeks prior to the deadline for taking disciplinary action. However, despite the delays, the department was still able to take disciplinary action on the matter.

## Assessment Questions

- Was the matter referred to OIA as soon as reasonably practical, within 45 calendar days of the date of discovery?

  *The department learned of the alleged misconduct on June 10, 2010, but the hiring authority did not refer the matter to the Office of Internal Affairs until August 5, 2010, more than 45 calendar days after the date of discovery.*

- Did OIA Central Intake make a determination regarding the case within 30 calendar days?

  *On August 12, 2010, OIA Central Intake received the request for investigation dated August 5, 2010, but did not take action until September 22, 2010, more than 30 calendar days after the request.*

- Was the investigation, or subject interview, completed at least 35 days before the deadline to take disciplinary action?

  *The investigative report was completed on May 27, 2011, less than 2 weeks before the deadline in which to take action.*

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| 2011-04-15 | 11-1442-IR | Administrative Investigation | 1. Dishonesty<br>2. Neglect of Duty<br>3. Other Failure of Good Behavior<br>4. Discourteous Treatment | Sufficient |

## Facts of the Case

On April 15, 2011, an officer allegedly grabbed his wife by the throat and slammed her against the wall at their residence. The officer then allegedly pushed a chair his wife was sitting in, causing her to fall backwards. Outside law enforcement responded to the incident and the officer allegedly gave false information about where he lived, and resisted arrest by struggling as he was placed in restraints. It was further alleged the officer failed to report the arrest to the hiring authority and he was dishonest during the investigation conducted by the Office of Internal Affairs.

## Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

# CENTRAL REGION

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| 2011-04-28 | 11-1653-IR | **Administrative Investigation** | 1. **Dishonesty** <br> 2. **Failure to Report** <br> 3. **Other Failure of Good Behavior** <br> 4. **Over-Familiarity** | **Sufficient** |

## Facts of the Case

On April 28, 2011, it was alleged a correctional counselor discovered photographs on a social networking website depicting an officer and a case records technician allegedly associating with a parolee and an outlaw motorcycle gang. The officer and case records technician also allegedly lied to the Office of Internal Affairs when questioned regarding the allegations.

## Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| 2011-05-02 | 11-1478-IR | **Criminal Investigation** | 1. **Criminal Act** | **Sufficient** |

## Facts of the Case

On May 2, 2011, it was alleged an officer had agreed to smuggle tobacco, mobile phones, and narcotics into an institution for personal financial gain. The investigation failed to establish probable cause to believe a crime was committed. Therefore, the case was not referred to the district attorney's office. The department did not open an administrative investigation due to lack of evidence.

## Investigative Assessment

Overall, the department's investigative process substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| 2011-05-12 | 11-1496-IR | **Criminal Investigation** | 1. **Criminal Act** | **Sufficient** |

## Facts of the Case

On May 12, 2011, an officer allegedly engaged in sexual misconduct with an inmate by forcing her to perform oral copulation. The matter was submitted to the district attorney's office, which filed criminal charges against the officer. The Office of Internal Affairs also opened an administrative investigation, which the OIG accepted for monitoring.

## Investigative Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| 2011-06-19 | 11-2176-IR | **Criminal Investigation** | 1. **Criminal Act** | **Sufficient** |

## Facts of the Case

On June 19, 2011, an officer allegedly struck a restrained inmate in the head and upper back area with his knees. It was further alleged the officer filed an inaccurate report documenting the incident. The case against the officer was referred to the district attorney's office, which declined to file criminal charges. The Office of Internal Affairs opened an administrative investigation, which the OIG accepted for monitoring.

# CENTRAL REGION

## Investigative Assessment
The department attorney and the final special agent assigned to the case diligently processed the case in accordance with the department's policies and procedures.

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| 2011-07-01 | 11-2654-IR | **Criminal Investigation** | 1. **Criminal Act** | **Sufficient** |

### Facts of the Case
Between July 1, 2011, and August 31, 2011, an officer allegedly provided heroin and tobacco to an inmate. The heroin was allegedly removed by the officer from the institution's evidence room. The Office of Internal Affairs referred the matter to the district attorney's office, which filed charges against the officer. The officer resigned prior to the conclusion of the criminal investigation and a letter indicating the officer resigned under unfavorable circumstances was placed in his official personnel file. The matter was not opened for an administrative investigation.

## Investigative Assessment
Upon completion of the investigation, a copy of the investigative report was not forwarded to the department attorney for review and feedback. Overall, the department's investigative process sufficiently complied with policies and procedures.

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| 2011-07-05 | 12-0067-IR | **Administrative Investigation** | 1. **Dishonesty** <br> 2. **Neglect of Duty** <br> 3. **Unreasonable Use of Force** | **Insufficient** |

### Facts of the Case
It was alleged on July 5, 2011, a sergeant responded to a cell to assist other officers who were attempting to handcuff two unruly inmates who appeared to be intoxicated. It was alleged the sergeant ordered the cell door opened, grabbed one of the inmates by the wrist, and pulled the inmate out of the cell. It was further alleged an officer used unreasonable force on the inmate that the sergeant pulled out by pepper spraying him. It was alleged the sergeant was dishonest in his official reports by failing to report that the inmates were intoxicated. It was also alleged the sergeant was dishonest during his interview with the Office of Internal Affairs.

## Investigative Assessment
The hiring authority referred the matter to the Office of Internal Affairs for investigation more than five months after the discovery of the potential misconduct with no justification for the delay. The Office of Internal Affairs conducted a thorough investigation with the remaining time.

## Assessment Questions
- Was the matter referred to OIA as soon as reasonably practical, within 45 calendar days of the date of discovery?

  *The discovery of the alleged misconduct occurred on the day of the incident, July 5, 2011. The matter was referred to the Office of Internal Affairs on December 12, 2011, more than five months after the discovery of the alleged misconduct.*

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| 2011-07-15 | 11-3186-IR | **Administrative Investigation** | 1. **Neglect of Duty** <br> 2. **Insubordination** | **Insufficient** |

### Facts of the Case
On July 15, 2011, a correctional counselor allegedly failed to follow Prison Rape Elimination Act protocols after receiving information of a possible sexual assault. On July 21, 2011, the correctional counselor was also allegedly insubordinate when she failed to comply with a supervisor's direct order to complete a confidential disclosure form.

# CENTRAL REGION

## Investigative Assessment

The hiring authority delayed over three months before referring the matter to the Office of Internal Affairs. Then OIA Central Intake delayed almost two months before deciding to open an investigation. The report was submitted to the hiring authority with less than 35 days left before the deadline for taking disciplinary action.

## Assessment Questions

- Was the matter referred to OIA as soon as reasonably practical, within 45 calendar days of the date of discovery?

  *The department learned of the misconduct on July 21, 2011; however, the hiring authority did not refer the matter to the Office of Internal Affairs until October 28, 2011, more than 45 calendar days after the date of discovery.*

- Did OIA Central Intake make a determination regarding the case within 30 calendar days?

  *OIA Central Intake received the request for investigation on November 4, 2011, but did not take action until December 28, 2011, more than 30 calendar days after the request.*

- Within 21 calendar days, did the department attorney make an entry into CMS accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

  *The department attorney was assigned to the case on January 13, 2012, but did not assess key dates until February 8, 2012, more than 21 calendar days after being assigned.*

- Was the investigation, or subject interview, completed at least 35 days before the deadline to take disciplinary action?

  *The investigation was completed with less than 35 days left to take disciplinary action.*

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| **2011-08-19** | **11-2730-IR** | **Administrative Investigation** | **1. Other Failure of Good Behavior** | **Sufficient** |

## Facts of the Case

On August 19, 2011, an officer allegedly unlawfully entered a second officer's residence and vandalized several of the second officer's department uniforms. The first officer was arrested on August 20, 2011, for the alleged trespass and vandalism. The district attorney's office declined to file criminal charges.

## Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| **2011-08-27** | **11-2569-IR** | **Criminal Investigation** | **1. Criminal Act** | **Insufficient** |

## Facts of the Case

On August 27, 2011, it was alleged that two officers were assisting a department employee with a marijuana growing operation. It was also alleged the officers had been trafficking contraband such as mobile phones and tobacco into an institution for personal financial gain. The investigation failed to establish probable cause to believe a crime was committed. Therefore, the case was not referred to the district attorney's office. The department did not open an administrative investigation due to lack of evidence.

## Investigative Assessment

There was a five-month delay before any significant investigative work began on this case.

# CENTRAL REGION

## Assessment Questions

- Was the OIA investigation, or subject only interview, conducted with due diligence?

  *A special agent was assigned on October 25, 2011, but was later removed from the case on April 16, 2012, without any significant investigative work having been done for five months since the initial case conference. On April 17, 2012, a second special agent was assigned to the case and diligently conducted the investigation through completion.*

- Did the special agent cooperate with and provide continual real-time consultation with the OIG?

  *Although the first assigned special agent did not complete any significant investigative work on this case, the second special agent diligently conducted the investigation through completion, adequately consulting with the OIG.*

- Did the special agent cooperate and provide real-time consultation with the department attorney throughout the investigative phase?

  *Although the first assigned special agent did not complete any significant investigative work on this case, the second special agent diligently conducted the investigation through completion, adequately consulting with the department attorney.*

- Was the investigation thorough and appropriately conducted?

  *There was a five-month delay before any significant investigative work was completed on this case. However, once another special agent was assigned, the investigation was thoroughly and diligently conducted.*

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| **2011-08-27** | **11-2728-IR** | **Criminal Investigation** | 1.  **Criminal Act** | **Insufficient** |

## Facts of the Case

On August 27, 2011, it was alleged that two officers were assisting a department employee with a marijuana growing operation. It was also alleged the officers had been trafficking contraband such as mobile phones and tobacco into an institution for personal financial gain. The investigation failed to establish probable cause to believe a crime was committed. Therefore, the case was not referred to the district attorney's office. The department did not open an administrative investigation due to lack of evidence.

## Investigative Assessment

There was a five-month delay before any significant investigative work began on this case.

## Assessment Questions

- Did OIA Central Intake make a determination regarding the case within 30 calendar days?

  *On September 28, 2011, OIA Central Intake received a request for investigation dated September 16, 2011. However, OIA Central Intake did not take action until November 9, 2011, more than 30 calendar days after the request.*

- Was the OIA investigation, or subject only interview, conducted with due diligence?

  *A special agent was assigned on November 14, 2011, but was later removed from the case on April 17, 2011, without any significant investigative work having been done for five months. On April 17, 2011, a second special agent was assigned to the case and diligently conducted the investigation through completion.*

- Did the special agent cooperate with and provide continual real-time consultation with the OIG?

  *Although the first assigned special agent did not complete any significant investigative work on this case, the second special agent diligently conducted the investigation through completion, adequately consulting with the OIG.*

- Did the special agent cooperate and provide real-time consultation with the department attorney throughout the investigative phase?

  *Although the first assigned special agent did not complete any significant investigative work on this case, the second special agent diligently conducted the investigation through completion, adequately consulting with the department attorney.*

- Was the investigation thorough and appropriately conducted?

  *There was a five-month delay before any significant investigative work was completed on this case. However, once another special agent was assigned, the investigation was thoroughly and diligently conducted.*

# CENTRAL REGION

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| 2011-09-17 | 12-0192-IR | Criminal Investigation | 1. Criminal Act | Sufficient |

### Facts of the Case

On September 17, 2011, a supervising cook allegedly engaged in overly familiar relationships with inmates and brought them contraband such as mobile phones, tobacco, alcohol, and controlled substances for monetary gain. The investigation was terminated prior to completion because the supervising cook resigned due to another unrelated disciplinary matter.

### Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| 2011-09-26 | 11-3179-IR | Administrative Investigation | 1. Dishonesty | Sufficient |

### Facts of the Case

On September 26, 2011, a sergeant and an officer allegedly altered an official form by intentionally backdating the date on which the paperwork was served on an inmate, thereby violating the inmate's due process rights.

### Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| 2011-12-13 | 12-0227-IR | Criminal Investigation | 1. Criminal Act | Sufficient |

### Facts of the Case

On December 13, 2011, it was alleged an officer brought a mobile phone and tobacco into the institution to sell to an inmate. The officer failed to report to work for over 30 days and attempts to contact him were unsuccessful. As a result, the officer was dismissed for being absent without approved leave. The Office of Internal Affairs was unable to conduct an investigation and the matter was closed.

### Investigative Assessment

Although a special agent and department attorney were assigned to the case, the officer was terminated before an investigation could begin.

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| 2011-12-23 | 12-0834-IR | Criminal Investigation | 1. Criminal Act | Sufficient |

### Facts of the Case

On December 23, 2011, and January 25, 2012, an officer allegedly stole funds received by the institution from inmates as they were initially processed and funds received from other counties. The investigation failed to establish probable cause to believe a crime was committed. Therefore, the case was not referred to the district attorney's office. The department did not open an administrative investigation due to lack of evidence.

### Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

# HEADQUARTERS

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| 2010-04-05 | 11-2433-IR | Administrative Investigation | 1. Neglect of Duty | Sufficient |

### Facts of the Case

It was alleged between April 5, 2010, and April 26, 2010, a warden, two chief deputy wardens, a captain, a lieutenant, and a sergeant failed to determine whether circumstances existed to warrant the continued placement of 77 inmates on restricted cell status with loss of all privileges. It was further alleged the warden, two chief deputy wardens, the captain, the lieutenant, and sergeant deprived the same inmates of showers, toilet paper, and other items while on restricted cell status.

### Investigative Assessment

The special agent and the department attorney worked collaboratively to conduct a thorough investigation with multiple subjects and voluminous records. Further, the special agent was exceptionally well versed in the details of the case and department policies. The special agent was also well prepared for interviews. Throughout the investigation the special agent and the department attorney worked collaboratively and consulted with each other as well as with the OIG.

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| 2010-10-04 | 11-1555-IR | Criminal Investigation | 1. Criminal Act | Sufficient |

### Facts of the Case

On October 4, 2010, and November 19, 2010, an officer allegedly forged two medical notes that he submitted to the department for the purpose of covering unauthorized and unexcused absences, as well as collecting health-related benefits to which he otherwise would not have been entitled. The case was referred to the district attorney's office, which filed criminal charges. The Office of Internal Affairs also opened an administrative investigation, which the OIG accepted for monitoring.

### Investigative Assessment

In all critical aspects, the investigation was timely and thoroughly conducted.

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| 2010-12-01 | 11-1712-IR | Criminal Investigation | 1. Criminal Act | Sufficient |

### Facts of the Case

From December 2010, until July 7, 2011, a parole agent allegedly forced a parolee to take pictures and a video of her naked body on the parole agent's iPad and allegedly sexually battered her. The case was submitted to the district attorney's office, which declined to file charges. The Office of Internal Affairs opened an administrative investigation, which the OIG accepted for monitoring.

### Investigative Assessment

The investigation was conducted by an outside law enforcement agency with minimal assistance by the department.

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| 2011-05-22 | 11-2483-IR | Criminal Investigation | 1. Criminal Act | Sufficient |

### Facts of the Case

On May 22, 2011, an officer allegedly conspired with an inmate to allow the inmate and other inmates to assault a second inmate. The first inmate and two other inmates assaulted the second inmate in the dayroom, causing injuries to the second inmate. The officer allegedly witnessed the assault and failed to stop it, failed to activate an alarm, and failed to document the assault. It was further alleged the officer conspired with certain inmates to allow these inmates to go into other inmates' cells to provide tattoo work and to steal inmate property. The case was referred to the district attorney's office, which filed criminal charges. The Office of Internal Affairs also opened an administrative investigation, which the OIG accepted for monitoring.

# HEADQUARTERS

## Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| 2011-06-25 | 12-1093-IR | Administrative Investigation | 1. Failure to Report<br>2. Unreasonable Use of Force | Insufficient |

### Facts of the Case
On June 25, 2011, officers allegedly used unnecessary force on an inmate. Allegedly, the officers punched and choked an inmate then slammed him against the wall. It was additionally alleged that the force was not documented or reported. The inmate was medically evaluated the day of the incident and bruising and discoloration was observed on his neck.

### Investigative Assessment
The hiring authority significantly delayed submitting this matter to the Office of Internal Affairs for review. When the matter was originally considered by OIA Central Intake, the OIG and the department attorney recommended the matter be investigated. At that time, a determination was made to conduct an investigation into the allegations. The matter was assigned to a regional internal affairs office, which did not consult with the OIG or the department attorney when the case was received by them. Two days following the regional office receiving the case, an Office of Internal Affairs chief spoke with the hiring authority, due to the short time constraints in conducting the investigation. After discussion with the chief, the hiring authority agreed the matter did not warrant any further investigation or review. The case was returned to OIA Central Intake and rejected for any further action, over the objections of both the OIG and the department attorney.

### Assessment Questions

- Was the matter referred to OIA as soon as reasonably practical, within 45 calendar days of the date of discovery?

  *The hiring authority learned of the alleged misconduct on June 26, 2011, but did not submit the matter to OIA Central Intake for review until April 23, 2012, almost ten months later.*

- Did OIA Central Intake make an appropriate initial determination regarding the case?

  *OIA Central Intake initially determined there was no need for investigation because they did not identify any misconduct. The OIG disagreed.*

- If the case was submitted to OIA Central Intake or to the Chief of OIA for reconsideration, was an appropriate decision made regarding the request?

  *OIA Central Intake rejected the matter upon reconsideration. The OIG disagreed.*

- Would the appropriate initial determination or reconsideration determination have been made by OIA Central Intake and/or OIA Chief without OIG intervention?

  *OIA Central Intake initially determined that the matter should be rejected because they did not identify evidence of misconduct. OIG disagreed and identified issues that needed to be resolved by an investigation. OIA Central Intake still rejected the matter.*

- Was the investigation thorough and appropriately conducted?

  *The Office of Internal Affairs decided not to conduct an investigation.*

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| 2011-06-28 | 11-2255-IR | Criminal Investigation | 1. Criminal Act | Sufficient |

### Facts of the Case
On June 28, 2011, an officer allegedly submitted a forged physical fitness incentive pay medical form. Allegedly, the medical form was completed for another officer employed by a different institution. The medical service provider confirmed the form was completed for the officer employed at the different institution, but his name had been covered with correction fluid and the submitting officer's name was written in. The case was referred to the district attorney's office, which declined to prosecute. The Office of Internal Affairs opened an administrative investigation, which the OIG accepted for monitoring.

# HEADQUARTERS

## Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| **2011-07-05** | **12-0365-IR** | **Administrative Investigation** | **1. Discourteous Treatment** | **Insufficient** |

## Facts of the Case
On July 5, 2011, an executive assistant allegedly sent a text message using her personal mobile phone to an office technician indicating that the warden had told her she could keep her job if she would have sexual relations with him. When the office technician told the executive assistant that the information had to be reported, the executive assistant indicated if the office technician reported it, she would deny that she ever said it. The office technician reported the allegation to a lieutenant. The institution forwarded the information to the Office of Civil Rights for an investigation. The executive assistant later recanted her statement and requested that the complaint filed with the Office of Civil Rights be withdrawn. The Office of Civil Rights declined to conduct an investigation based upon the executive assistant's representation that the warden did not make the statement. An investigation was conducted by the Office of Internal Affairs to ascertain if the warden made such a statement to the executive assistant or whether the executive assistant made a false and derogatory statement about the warden.

## Investigative Assessment
The hiring authority delayed referring the matter to the Office of Internal Affairs. The Office of Internal Affairs delayed in making a determination regarding the hiring authority's request. The Office of Internal Affairs also refused to interview two key witnesses as recommended by both the department attorney and the OIG. During the executive assistant's interrogation, she indicated that she also sent the text message to an associate warden and a captain, and engaged in further communications with them about the alleged misconduct by the warden. Departmental policy requires that all employees immediately report acts of misconduct by staff. It is unknown if the associate warden and the captain reported the alleged misconduct of the warden, or if they ever became aware of the allegation made by the executive assistant. These two witnesses should have been interviewed to further assess the credibility of the executive assistant.

# HEADQUARTERS

## Assessment Questions

- Was the matter referred to OIA as soon as reasonably practical, within 45 calendar days of the date of discovery?

  *The hiring authority became aware of the alleged misconduct on July 6, 2011. The hiring authority did not refer the matter to the Office of Internal Affairs until November 16, 2011, more than 45 days after the date of discovery. The delay was due to the complaint being initially sent to the Office of Civil Rights for investigation. The Office of Civil Rights decided not to investigate the matter based upon the executive assistant's representation that she wanted the complaint withdrawn because the warden did not make the statement. The hiring authority then made the decision to forward the matter to the Office of Internal Affairs.*

- Did OIA Central Intake make a determination regarding the case within 30 calendar days?

  *The hiring authority submitted the matter to the Office of Internal Affairs on November 16, 2011. The Office of Internal Affairs did not make a determination until February 8, 2012.*

- Within 21 calendar days, did the department attorney make an entry into CMS accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

  *The department attorney was assigned to the case on March 6, 2012. On March 20, 2012, the department attorney made an entry into CMS accurately confirming the date of the reported incident, the date of discovery, and the deadline for taking disciplinary action for the executive assistant. However, the department attorney did not assess the deadline for taking disciplinary action against the warden.*

- Was the investigative draft report provided to the OIG for review thorough and appropriately drafted?

  *The draft report was not thorough. The Office of Internal Affairs did not interview two critical witnesses related to the case.*

- Was the final investigative report thorough and appropriately drafted?

  *The final investigative report was not thorough. The Office of Internal Affairs refused to interview two key witnesses as recommended by both the department attorney and the OIG.*

- Was the investigation thorough and appropriately conducted?

  *The Office of Internal Affairs refused to interview two key witnesses as recommended by both the department attorney and the OIG. During the executive assistant's interrogation, she indicated that she also sent the text message to an associate warden and a captain, and engaged in further communications with them about the alleged misconduct by the warden. Departmental policy requires that all employees immediately report acts of misconduct by staff. It is unknown if the associate warden and the captain reported the alleged misconduct of the warden, or if they ever became aware of the allegation made by the executive assistant. In addition, these two witnesses should have been interviewed to further assess the credibility of the executive assistant.*

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| 2011-08-15 | 11-2891-IR | **Criminal Investigation** | 1. **Criminal Act** | **Sufficient** |

## Facts of the Case

On August 15, 2011, it was alleged a sergeant falsified the date that the results of narcotics testing in criminal cases were received by the institution from the Department of Justice. It was alleged this was done to preserve time frames for disciplining inmates, when in fact the time frames had expired. The Office of Internal Affairs referred the matter to the district attorney's office. The district attorney's office declined to file criminal charges. The Office of Internal Affairs opened an administrative investigation, which the OIG accepted for monitoring.

## Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

# HEADQUARTERS

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| 2011-08-22 | 11-2258-IR | Criminal Investigation | 1.  Criminal Act | Sufficient |

### Facts of the Case

On August 22, 2011, it was reported that a captain allegedly introduced contraband consisting of mobile phones, tobacco, and narcotics into the institution. The investigation failed to establish probable cause to believe a crime was committed. Therefore, the case was not referred to the district attorney's office. The department did not open an administrative investigation due to lack of evidence.

### Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| 2011-09-20 | 12-0061-IR | Criminal Investigation | 1.  Criminal Act | Insufficient |

### Facts of the Case

On September 20, 2011, an inmate allegedly observed another inmate embracing and kissing an officer. When the officer noticed the observing inmate, the officer immediately separated from the inmate. The officer also allegedly corresponded and telephonically communicated with the inmate.

### Investigative Assessment

The hiring authority delayed submitting this matter to the Office of Internal Affairs for review for over three months. The Office of Internal Affairs had a slight delay in reviewing the matter for a determination. The special agent and department attorney failed to comply with policies and procedures in this matter. There was very little communication with the department and the OIG. Also, the supervising attorney of the regional legal affairs office attended a compelled administrative interview of the officer on this case and, upon conclusion of the compelled administrative interview, the supervising attorney made an entry into the criminal portion of the case management system disclosing what the officer stated during the interview. The OIG made several requests of the department to remedy this critical error, but they were unable to do so. The OIG discontinued monitoring due to the department's failure to follow the OIG's recommendation.

# HEADQUARTERS

## Assessment Questions

- Was the matter referred to OIA as soon as reasonably practical, within 45 calendar days of the date of discovery?

  *The department learned of the misconduct on September 20, 2011, but the hiring authority did not refer the matter to the Office of Internal Affairs until November 28, 2011, more than 69 days after the date of discovery.*

- Did OIA Central Intake make a determination regarding the case within 30 calendar days?

  *OIA Central Intake received the request for investigation on November 28, 2011, but did not take action until January 4, 2012, more than 37 days after the request.*

- Did the special agent adequately confer with the OIG upon case initiation and prior to finalizing the investigative plan?

  *The assigned investigator was assigned to the case on January 30, 2012, but there was no meeting to discuss the investigative plan until April 3, 2012, after the plan had already been finalized.*

- Did the special agent adequately confer with the department attorney upon case initiation and prior to finalizing the investigative plan?

  *The assigned investigator was assigned to the case on January 30, 2012, but there was no meeting to discuss the investigative plan until April 3, 2012, after the plan had already been finalized.*

- Within 21 calendar days, did the department attorney make an entry into CMS accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

  *The department attorney did not make any entries in the case management system confirming the date of the reported incident, date of discovery, or the deadline for taking disciplinary action.*

- No later than 21 calendar days following assignment of the case, did the department attorney contact the assigned special agent and the monitor to discuss the elements of a thorough investigation of the alleged misconduct?

  *The department attorney did not contact either the assigned investigator or the OIG to discuss the case within 21 days of his assignment.*

- Did the OIA adequately consult with the OIG, department attorney, and the appropriate prosecuting agency to determine if an administrative investigation should be conducted concurrently with the criminal investigation?

  *The Office of Internal Affairs failed to consult with the OIG regarding whether the administrative investigation should be conducted concurrently with the criminal investigation.*

- Did the department attorney appropriately protect compelled statements obtained in the administrative case from being improperly used in a criminal case?

  *The supervising attorney of the regional legal affairs office attended a compelled administrative interview of the officer in the place of the assigned department attorney. Upon conclusion of the compelled administrative interview, the supervising attorney made an entry into the criminal portion of the case management system disclosing what the officer stated during the interview.*

- Did the special agent cooperate with and provide continual real-time consultation with the OIG?

  *The special agent, for the most part, failed to cooperate with and provide continual real-time consultation with the OIG. The special agent prepared a search warrant and submitted items of evidence for forensic examination without consulting with the OIG.*

- Did the special agent cooperate and provide real-time consultation with the department attorney throughout the investigative phase?

  *The special agent failed to provide real-time consultation with the department attorney. He failed to consult with the special agent regarding investigative techniques and other facets of the investigation.*

- Did the department attorney cooperate with and provide continual real-time consultation with the OIG throughout the investigative phase?

  *The department attorney provided little to no communication with the assigned investigator or the OIG.*

# HEADQUARTERS

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| 2011-10-08 | 11-3105-IR | Criminal Investigation | 1. Criminal Act | Sufficient |

### Facts of the Case

On October 8, 2011, it was alleged a lieutenant and an officer were providing tobacco to inmates in exchange for information. The matter was referred to the district attorney's office, which declined prosecution. An administrative investigation was opened by the Office of Internal Affairs, which the OIG accepted for monitoring.

### Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| 2011-11-02 | 12-0137-IR | Criminal Investigation | 1. Criminal Act | Sufficient |

### Facts of the Case

On November 2, 2011, it was alleged four officers smuggled mobile phones and narcotics into the institution for personal gain. It was also alleged a captain intentionally withheld information pertaining to the criminal investigation into the alleged smuggling operation. The investigation failed to establish probable cause to believe that crimes were committed. The matter was not referred to the district attorney's office. The Office of Internal Affairs also opened an administrative investigation, which the OIG accepted for monitoring.

### Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| 2011-11-08 | 11-2841-IR | Criminal Investigation | 1. Criminal Act | Insufficient |

### Facts of the Case

On November 8, 2011, information was received by an outside law enforcement agency that officers were conspiring with an inmate to kill two high-profile inmates. The investigation did not uncover the identities of the officers or that any such conspiracy to kill inmates was occurring. Therefore, the investigation failed to establish probable cause to believe a crime was committed and the case was not referred to the district attorney's office. The department did not open an administrative investigation due to lack of evidence.

### Investigative Assessment

The special agent failed to adequately inform the OIG of case activity and ultimately closed the investigation without consulting with the OIG.

# HEADQUARTERS

## Assessment Questions

- Did the special agent adequately confer with the OIG upon case initiation and prior to finalizing the investigative plan?

  *The special agent did not confer with the OIG prior to finalizing the investigative plan.*

- Upon completion of the investigation, was a draft copy of the investigative report timely forwarded to the OIG to allow for feedback before it was forwarded to the HA or prosecuting agency?

  *The special agent closed the investigation without notifying the OIG. The Office of Internal Affairs determined that the investigation established no evidence of a crime.*

- Did OIA appropriately determine whether there was probable cause to believe a crime was committed and, if probable cause existed, was the investigation referred to the appropriate agency for prosecution?

  *The OIG was not consulted by the special agent before this case was closed. The OIG was unable to ascertain what information, if any, the special agent relied upon to make a probable cause determination.*

- Did the special agent cooperate with and provide continual real-time consultation with the OIG?

  *The special agent did not provide updates to the OIG as the investigation progressed. The special agent would only respond to inquiries from the OIG. Ultimately, the special agent failed to notify the OIG that the investigation had been closed.*

- Did the HA cooperate with and provide continual real-time consultation with the OIG throughout the investigative phase?

  *Because of the high profile nature of this case, the hiring authority was not briefed on the criminal investigation.*

# NORTH REGION

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| 2008-01-01 | 12-0866-IR | Administrative Investigation | 1. Contraband<br>2. Over-Familiarity | Sufficient |

### Facts of the Case

During the period from 2008 through April 11, 2012, a supervising cook was allegedly engaged in an overly familiar relationship with inmates by trafficking contraband including methamphetamine, tobacco, and mobile phones for monetary gain. It was also alleged that on April 11, 2012, the supervising cook was knowingly in possession of a knife, methamphetamine, and three lighters while on institution grounds.

### Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| 2009-06-01 | 09-3602-IR | Criminal Investigation | 1. Criminal Act | Insufficient |

### Facts of the Case

It was alleged between June and August 2009, an officer possessed and used controlled substances, specifically steroids. It was further alleged the officer illegally possessed syringes. The matter was submitted to the district attorney's office, which declined to file charges. The Office of Internal Affairs also opened an administrative investigation, which the OIG accepted for monitoring.

### Investigative Assessment

The department failed to timely follow-up to obtain results of drug testing. The department also failed to timely submit the matter to the district attorney's office for possible prosecution, thereby allowing the deadline for possible prosecution to pass.

# NORTH REGION

## Assessment Questions

- Within 21 calendar days, did the department attorney make an entry into CMS accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

  *Although the department attorney entered the date of discovery and deadline to take disciplinary action, the department attorney did not make an entry confirming the date of the reported incident.*

- Upon completion of the investigation, was a draft copy of the investigative report timely forwarded to the OIG to allow for feedback before it was forwarded to the HA or prosecuting agency?

  *The special agent submitted the investigative report to the district attorney's office on August 24, 2011, but did not provide a draft to the OIG. The agent also did not provide a copy of the final investigative report until November 29, 2011, after requested by the OIG.*

- Upon completion of the investigation, was a draft copy of the investigative report timely forwarded to the department attorney to allow for feedback before it was forwarded to the HA or prosecuting agency?

  *The investigative report was submitted to the district attorney's office on August 24, 2011; however, there is no evidence the report was provided to the department attorney before submission to the district attorney's office.*

- Within 21 calendar days following receipt of the investigative report, did the department attorney review the report and provide appropriate substantive feedback addressing the thoroughness and clarity of the report?

  *There is no evidence the report was provided to the department attorney before submission to the district attorney; therefore, the department attorney did not have the opportunity to review the report and provide appropriate feedback.*

- Did the department provide written confirmation summarizing all critical discussions about the investigative report to the special agent with a copy to the OIG?

  *There is no evidence the report was provided to the department attorney before submission to the District Attorney; therefore, the department attorney did not have the opportunity to provide written feedback.*

- Was the OIA investigation, or subject only interview, conducted with due diligence?

  *The Office of Internal Affairs did not properly assess the deadline for referring the matter to the district attorney's office. The deadline for referral was August 19, 2010. The investigation was not completed and referred to the district attorney's office until August 24, 2011. In addition, the department failed to timely follow-up with the Department of Justice to obtain results of the drugs confiscated from the officer's home. Therefore, the Office of Internal Affair's investigation was not conducted with the due diligence required to complete the investigation before expiration of the deadline for referral.*

- Was the investigation, or subject interview, completed at least 35 days before the deadline to take disciplinary action?

  *The deadline for referring the matter to the district attorney's office was August 19, 2010. The matter was not referred until August 24, 2011, almost a year later.*

- Was the investigation thorough and appropriately conducted?

  *Although the investigation was thorough it was not appropriately conducted because the Office of Internal Affairs did not properly assess the deadline for referring the matter for possible criminal prosecution. In addition, the department failed to timely follow-up with the Department of Justice to obtain results of the drugs confiscated from the officer's home. Therefore, the investigation was not completed before the deadline expired and the district attorney's office could not file criminal charges.*

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| **2009-06-01** | **12-0633-IR** | **Criminal Investigation** | 1. **Criminal Act** <br> 2. **Contraband** | **Sufficient** |

## Facts of the Case

On June 1, 2009, it was alleged an office technician provided mobile phones to an inmate and engaged in unauthorized communications with the inmate. The investigation failed to establish probable cause to believe that a crime was committed. The matter was not referred to the district attorney's office. The Office of Internal Affairs also opened an administrative investigation, which the OIG accepted for monitoring.

## Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

# NORTH REGION

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| 2009-09-03 | 11-2463-IR | Criminal Investigation | 1. Sexual Misconduct<br>2. Criminal Act | Sufficient |

### Facts of the Case

Between September 3, 2009, and January 30, 2010, a supervising cook was allegedly overly familiar with an inmate by engaging in a sexual relationship, corresponding with, and purchasing canteen items for the inmate. The investigation failed to establish probable cause to believe that a crime was committed; therefore, the matter was not referred to the district attorney's office. The Office of Internal Affairs also opened an administrative investigation, which the OIG accepted for monitoring.

### Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| 2010-09-02 | 11-3035-IR | Administrative Investigation | 1. Unreasonable Use of Force | Sufficient |

### Facts of the Case

On September 2, 2010, three officers allegedly used unnecessary force when they pushed a wheelchair-bound inmate out of his wheelchair and physically assaulted him.

### Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| 2010-11-03 | 11-0362-IR | Criminal Investigation | 1. Criminal Act | Sufficient |

### Facts of the Case

On November 3, 2010, a plumber allegedly smuggled marijuana and mobile phones into the institution for inmates. The investigation failed to establish probable cause to believe that a crime was committed. Therefore, the case was not referred to the district attorney's office for prosecution. The department did not open an administrative investigation.

### Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| 2010-11-25 | 11-1310-IR | Criminal Investigation | 1. Criminal Act | Sufficient |

### Facts of the Case

On November 25, 2010, a youth counselor allegedly engaged in an overly familiar sexual relationship with a ward. It was further alleged the youth counselor provided the ward's family with money. The investigation failed to establish probable cause to believe that a crime was committed. Therefore, no referral was made to the district attorney's office. The department opened an administrative investigation, which the OIG accepted for monitoring.

### Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

# NORTH REGION

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| 2010-12-27 | 11-2659-IR | Administrative Investigation | 1. Contraband<br>2. Misuse of State Equipment or Property<br>3. Petty Theft | Sufficient |

### Facts of the Case
On December 27, 2010, it was alleged a Prison Industry Authority Industrial Supervisor installed an unauthorized antenna above his office and took scrap parts from industrial washing machines for personal use.

### Investigative Assessment
The department's investigative process sufficiently complied with policies and procedures. The special agent's report was very thorough and provided the hiring authority for the Prison Industry Authority sufficient information to properly assess the allegation.

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| 2011-02-16 | 11-1039-IR | Administrative Investigation | 1. Neglect of Duty<br>2. Dishonesty | Sufficient |

### Facts of the Case
On February 16, 2011, it was alleged a parole agent failed to properly supervise parolees assigned to her caseload. Specifically, it was alleged the agent documented that she completed anti-narcotic tests of parolees; however, records indicated the tests were not done.

### Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| 2011-02-16 | 11-1076-IR | Criminal Investigation | 1. Criminal Act | Sufficient |

### Facts of the Case
On February 16, 2011, it was alleged an officer provided mobile phones, tobacco, and marijuana to inmates for financial gain. The case was referred to the district attorney's office for prosecution, which filed ten counts of bribery against the officer. The Office of Internal Affairs also opened an administrative investigation, which the OIG accepted for monitoring.

### Investigative Assessment
Overall, the department's investigative process complied with policies and procedures.

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| 2011-03-03 | 11-1204-IR | Administrative Investigation | 1. Dishonesty | Sufficient |

### Facts of the Case
On March 3, 2011, a sergeant allegedly authored a memorandum containing false information indicating he signed a time sheet for an officer.

### Investigative Assessment
Overall, the department's investigative process complied with policies and procedures.

# NORTH REGION

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| 2011-03-13 | 11-1725-IR | Administrative Investigation | 1. Neglect of Duty<br>2. Dishonesty | Insufficient |

## Facts of the Case

On March 13, 2011, three officers were allegedly dishonest by failing to accurately and completely describe the events regarding an inmate's attempted suicide.

## Investigative Assessment

The department did not complete the investigation with due diligence. The hiring authority delayed referring the matter to the Office of Internal Affairs. The investigation was not started for several months after the case was opened. The report was submitted to the hiring authority only 12 days before the deadline to take disciplinary action.

## Assessment Questions

- Was the matter referred to OIA as soon as reasonably practical, within 45 calendar days of the date of discovery?

  *The date of discovery was March 19, 2011; however, the hiring authority did not refer the matter to the Office of Internal Affairs until May 9, 2011, 51 days after the date of discovery.*

- Did OIA Central Intake make a determination regarding the case within 30 calendar days?

  *OIA Central Intake received the request for investigation on May 11, 2011, but did not take action until June 22, 2011, 42 days after the request.*

- Within 21 calendar days, did the department attorney make an entry into CMS accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

  *The department attorney was assigned June 27, 2011. The attorney did not make an entry into CMS confirming the date of the reported incident, date of discovery, or deadline for taking disciplinary action until July 26, 2011, 29 days after assignment.*

- No later than 21 calendar days following assignment of the case, did the department attorney contact the assigned special agent and the monitor to discuss the elements of a thorough investigation of the alleged misconduct?

  *The department attorney was assigned June 27, 2011. The attorney first contacted the assigned special agent on July 21, 2011, 24 days after assignment and only after the OIG initiated the contact.*

- Did the department attorney attend investigative interviews for key witnesses to assess witness demeanor and credibility?

  *Although the department attorney attended some witness interviews, the attorney did not attend other interviews including the subject interviews.*

- Did the department provide written confirmation summarizing all critical discussions about the investigative report to the special agent with a copy to the OIG?

  *Although the department attorney provided written feedback to the special agent, the attorney failed to provide a copy to the OIG.*

- Was the OIA investigation, or subject only interview, conducted with due diligence?

  *The Office of Internal Affairs opened the case for investigation on June 22, 2011. The investigation was not started until January 2012. In addition, the investigation was not completed until February 27, 2012, 12 days before the deadline to take disciplinary action.*

- Was the investigation, or subject interview, completed at least 35 days before the deadline to take disciplinary action?

  *The investigation was completed February 27, 2012, 12 days before the deadline to take disciplinary action.*

# NORTH REGION

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| 2011-03-22 | 11-2305-IR | Administrative Investigation | 1. Dishonesty<br>2. Over-Familiarity<br>3. Neglect of Duty | Sufficient |

### Facts of the Case

Between March 22, 2011, and July 19, 2011, it was alleged an officer was engaged in an overly familiar relationship with an inmate. The officer allegedly spent several hours talking to the inmate and was observed handing him unknown items at his cell. Additionally, it was alleged she failed to report her use of force on July 19, 2011, when she attempted to stop an inmate battery. Finally, it was alleged she was dishonest on April 11, 2012, during her investigatory interview when she stated she had reported her use of force to her supervisors.

### Investigative Assessment

The department's investigative process sufficiently complied with policies and procedures.

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| 2011-03-27 | 12-1031-IR | Administrative Investigation | 1. Dishonesty<br>2. Contraband<br>3. Over-Familiarity | Sufficient |

### Facts of the Case

It was alleged between March 27, 2011, and May 9, 2012, an office technician was overly familiar with an inmate, the inmate's brother, and the inmate's mother when she communicated with them by phone over 170 times. It was further alleged the office technician provided a mobile phone to the inmate, engaged in unauthorized communications with him, and sent pictures of herself and her family to the inmate's contraband mobile phone. It was further alleged the office technician was dishonest during the course of the investigation regarding her overly familiar relationship with the inmate.

### Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| 2011-04-07 | 11-1308-IR | Administrative Investigation | 1. Dishonesty<br>2. Insubordination<br>3. Batter on Other Person<br>4. Other Failure of Good Behavior | Sufficient |

### Facts of the Case

On April 7, 2011, a sergeant allegedly committed sexual battery, oral copulation, and indecent exposure with a minor. The sergeant was subsequently arrested and was allegedly dishonest to outside law enforcement. The sergeant was also allegedly insubordinate during the Office of Internal Affairs investigatory interview.

### Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

# NORTH REGION

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| 2011-05-01 | 11-3026-IR | Criminal Investigation | 1. Criminal Act | Insufficient |

## Facts of the Case

Between May 2011 and September 2011, two officers allegedly introduced contraband consisting of mobile phones and tobacco into the institution for financial gain. The investigation failed to establish probable cause to believe a crime was committed. Therefore, the case was not referred to the district attorney's office. The Office of Internal Affairs also opened an administrative investigation, which the OIG accepted for monitoring.

## Investigative Assessment

The Office of Internal Affairs and the department attorney failed to comply with the department's policies and procedures governing the investigative process. The Office of Internal Affairs failed to timely complete the investigation. The department attorney failed to attend the investigative interviews and failed to properly document the critical dates of the case. The department attorney further failed to communicate the investigative elements with the Office of Internal Affairs or the OIG within 21 calendar days following case assignment.

## Assessment Questions

- Within 21 calendar days, did the department attorney make an entry into CMS accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

  *The department attorney did not make an entry into CMS until 28 calendar days after assignment. In addition, the attorney merely stated that he assessed the date of the incident, discovery date, and the deadline for taking disciplinary action without indicating the actual dates.*

- No later than 21 calendar days following assignment of the case, did the department attorney contact the assigned special agent and the monitor to discuss the elements of a thorough investigation of the alleged misconduct?

  *The department attorney did not contact the assigned special agent or the OIG within 21 calendar days of assignment.*

- Did the department attorney attend investigative interviews for key witnesses to assess witness demeanor and credibility?

  *The assigned special agent conducted two inmate interviews which the department attorney did not attend. However, neither inmate cooperated and, therefore, the attorney's failure to attend did not impact the case.*

- Was the investigation, or subject interview, completed at least 35 days before the deadline to take disciplinary action?

  *The deadline for referring the case to the district attorney was April 28, 2012. The investigation was not completed until April 18, 2012, only ten days before the deadline.*

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| 2011-05-03 | 11-2168-IR | Administrative Investigation | 1. Failure to Report<br>2. Neglect of Duty<br>3. Unreasonable Use of Force | Sufficient |

## Facts of the Case

On May 3, 2011, it was alleged an officer endangered herself and other officers when she engaged in a verbal exchange with an inmate, followed the inmate, grabbed him by the back of the neck, and pinned him against the wall. It was further alleged the officer used unreasonable force, failed to report the use of force, and conspired with three other officers to not report her use of force. On May 3, 2011, it was also alleged the second officer failed to report his use of force when he held the inmate against the wall and that he also allegedly conspired with the first officer to not report the use of force.

## Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

# NORTH REGION

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| 2011-05-12 | 11-2307-IR | Administrative Investigation | 1. Over-Familiarity<br>2. Neglect of Duty<br>3. Disclosure of Confidential Information<br>4. Discourteous Treatment | Sufficient |

## Facts of the Case

It was alleged on May 12, 2011, an officer engaged in sexual misconduct with an inmate. It was also alleged two other officers allowed the officer direct access to the inmate after the inmate reported the incident. One of those officers also allegedly impeded an internal affairs investigation by notifying the alleged perpetrator of the inmate's allegations. It was also alleged that on May 12, 2011, a sergeant made inappropriate comments to the inmate by saying, among other things, the inmate was an adult, she could say no to the officer when he forced her to engage in sexual acts, and that because of her complaint, she would be placed in administrative segregation.

## Investigative Assessment

Overall, the department's investigative process complied with policies and procedures.

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| 2011-05-16 | 11-1837-IR | Administrative Investigation | 1. Other Failure of Good Behavior | Insufficient |

## Facts of the Case

On May 16, 2011, an officer allegedly hit his wife in the face, choked her to the point where she could not breathe, and threatened to kill her while holding her over a second story railing. Further, the officer allegedly broke a mobile phone to prevent his wife from contacting law enforcement.

## Investigative Assessment

The Office of Internal Affairs and department attorney failed to comply with its policies and procedures governing the investigative process. The Office of Internal Affairs delayed in processing the request for investigation, the investigative process was not conducted timely, and the report was submitted to the hiring authority less than 35 days prior to the deadline for taking disciplinary action. The department attorney did not provide feedback addressing the investigative report and failed to provide written confirmation summarizing all critical discussions of the investigative report to the special agent or the OIG.

# NORTH REGION

## Assessment Questions

- Did OIA Central Intake make a determination regarding the case within 30 calendar days?

  *OIA Central Intake received the request for investigation on June 8, 2011, but did not take action until July 13, 2011, 35 days after the request.*

- Within 21 calendar days following receipt of the investigative report, did the department attorney review the report and provide appropriate substantive feedback addressing the thoroughness and clarity of the report?

  *The Office of Internal Affairs submitted the draft investigative report to the department attorney on April 6, 2012, but the attorney did not provide any feedback.*

- Did the department provide written confirmation summarizing all critical discussions about the investigative report to the special agent with a copy to the OIG?

  *The Office of Internal Affairs provided the draft investigative report to the department attorney on April 6, 2012, but the attorney did not provide any written feedback to the assigned special agent or the OIG.*

- Was the OIA investigation, or subject only interview, conducted with due diligence?

  *The Office of Internal Affairs delayed in making the initial determination, initiating the investigation, and completing the investigation. The special agent was assigned July 26, 2011, but the initial case conference took place September 1, 2011, 37 days after assignment. Although the special agent began reviewing documents shortly thereafter, there was no activity between September 13, 2011, and December 22, 2011. Also, the last interview was completed February 28, 2012, but the draft report was not available until April 6, 2012. The investigation was not completed until April 25, 2012, only 20 days prior to the deadline to take disciplinary action.*

- Was the investigation, or subject interview, completed at least 35 days before the deadline to take disciplinary action?

  *The report was completed and submitted to the hiring authority with only 20 days prior to the deadline for taking disciplinary action.*

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| **2011-05-23** | **11-1729-IR** | **Criminal Investigation** | 1. **Criminal Act** | **Sufficient** |

### Facts of the Case
On May 23, 2011, it was alleged a supervising cook had been engaged in an overly familiar and sexual relationship with an inmate. The Office of Internal Affairs referred the matter to the district attorney's office, which declined to file criminal charges. The Office of Internal Affairs opened an administrative investigation, which the OIG accepted for monitoring.

### Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| **2011-05-23** | **12-0457-IR** | **Administrative Investigation** | 1. **Over-Familiarity** <br> 2. **Contraband** | **Sufficient** |

### Facts of the Case
On May 23, 2011, it was alleged a supervising cook was engaged in an overly familiar and sexual relationship with an inmate.

### Investigative Assessment
The department's investigative process sufficiently complied with policies and procedures.

# NORTH REGION

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| 2011-05-25 | 11-2014-IR | **Criminal Investigation** | 1.  **Criminal Act** | **Sufficient** |

**Facts of the Case**

On May 25, 2011, it was alleged a supervising cook received money for mobile phones he provided to at least one inmate. The investigation failed to establish probable cause to believe that a crime was committed. The matter was not referred to the district attorney's office. The Office of Internal Affairs also opened an administrative investigation, which the OIG accepted for monitoring.

**Investigative Assessment**

Overall, the department's investigative process sufficiently complied with policies and procedures.

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| 2011-06-09 | 11-2381-IR | **Criminal Investigation** | 1.  **Criminal Act** | **Sufficient** |

**Facts of the Case**

On June 9, 2011, it was alleged an officer provided an inmate with mobile phones and tobacco. The investigation failed to establish probable cause to believe a crime was committed. The matter was not referred to the district attorney's office. The Office of Internal Affairs opened an administrative investigation, which the OIG accepted for monitoring.

**Investigative Assessment**

Overall, the department's investigative process sufficiently complied with policies and procedures.

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| 2011-06-23 | 11-1861-IR | **Criminal Investigation** | 1.  **Criminal Act**<br>2.  **Possession of Controlled Substance** | **Insufficient** |

**Facts of the Case**

On June 23, 2011, it was alleged an officer conspired to introduce mobile phones, tobacco, and marijuana into an institution for delivery to inmates in exchange for money. The investigation failed to establish probable cause to believe a crime was committed. Therefore, the case was not referred to the district attorney's office. The department did not open an administrative investigation due to lack of evidence.

**Investigative Assessment**

Both the Office of Internal Affairs and the department attorney had minimal contact with the OIG during the course of the investigation and failed to conduct any meaningful consultation during the investigative phase. The department attorney and the special agent also failed to have any meaningful contact with one another.

# NORTH REGION

## Assessment Questions

- Within 21 calendar days, did the department attorney make an entry into CMS accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

  *Other than determining the deadline for taking disciplinary action, the department attorney did not make any entry into CMS confirming the other relevant dates.*

- Did the special agent cooperate with and provide continual real-time consultation with the OIG?

  *The Office of Internal Affairs opened an investigation on July 13, 2011; however, the special agent failed to contact the OIG regarding the progress until December 5, 2011, and February 6, 2012, when the OIG sought a case status report. The investigation was eventually completed without additional consultation with the OIG.*

- Did the special agent cooperate and provide real-time consultation with the department attorney throughout the investigative phase?

  *The Office of Internal Affairs opened an investigation on July 13, 2011; however, the special agent consulted with the department's attorney on only two occasions: August 9, 2011, and April 6, 2012.*

- Did the department attorney cooperate with and provide continual real-time consultation with the OIG throughout the investigative phase?

  *The department attorney did not consult with the OIG from August 2011 through June 2012, when the case was closed.*

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| **2011-06-27** | **11-3037-IR** | **Administrative Investigation** | 1. **Failure to Report**<br>2. **Unreasonable Use of Force**<br>3. **Neglect of Duty** | **Insufficient** |

## Facts of the Case

On June 27, 2011, an officer allegedly used unnecessary force on an inmate by throwing the inmate to the ground and hitting him four times with his hand. Another officer allegedly observed and failed to report the use of force. It was further alleged the officers caused, or contributed to, the situation necessitating the use of force by attempting to force the inmate into a cell after the inmate allegedly expressed concerns for his personal safety.

## Investigative Assessment

The hiring authority failed to refer the matter to Office of Internal Affairs in a timely manner by waiting over three months after learning of the alleged misconduct. The Office of Internal Affairs failed to adequately conduct an investigation and further failed to thoroughly and appropriately prepare an investigative report by not sufficiently investigating all of the allegations and applicable policies and procedures.

# NORTH REGION

## Assessment Questions

- Was the matter referred to OIA as soon as reasonably practical, within 45 calendar days of the date of discovery?

  *The department learned of the misconduct on August 16, 2011, but the hiring authority did not refer the matter to the Office of Internal Affairs until December 8, 2011, more than three months after the date of discovery.*

- Did OIA Central Intake make an appropriate initial determination regarding the case?

  *OIA Central Intake initially rejected the request for investigation. However, upon the urging of the OIG, OIA Central Intake opened an administrative investigation.*

- Would the appropriate initial determination or reconsideration determination have been made by OIA Central Intake and/or OIA Chief without OIG intervention?

  *OIA Central Intake initially rejected the request for investigation. Upon the urging of the OIG, OIA Central Intake opened an administrative investigation.*

- Did the special agent adequately prepare for all aspects of the investigation?

  *The special agent did not obtain information to determine whether the inmate had any sex offense convictions, whether the potential cellmate had a history of assaultive behavior, or whether there were specific policies governing cell moves when an inmate expresses safety concerns.*

- Was the investigative draft report provided to the OIG for review thorough and appropriately drafted?

  *The draft report did not sufficiently address whether the inmate had any sex offense convictions, whether the potential cellmate had a history of assaultive behavior, or whether there were policies governing cell moves when an inmate expresses safety concerns.*

- Was the final investigative report thorough and appropriately drafted?

  *The draft report did not sufficiently address whether the inmate had any sex offense convictions, whether the potential cellmate had a history of assaultive behavior, or whether there were policies governing cell moves when an inmate expresses safety concerns.*

- Was the investigation thorough and appropriately conducted?

  *The investigation failed to gather information to sufficiently confirm or dispel allegations that the officers caused, or contributed to, the situation that necessitated the use of force. Amidst allegations that officers at this institution were setting up inmates with sex crimes convictions to be assaulted by other inmates, the investigation failed to address whether the inmate who had expressed concerns for his safety was a sex offender, whether his potential cellmate had a history of assaultive behavior, or whether there were policies and procedures governing inmate cell moves when an inmate has expressed safety concerns.*

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| **2011-06-29** | **12-0679-IR** | **Administrative Investigation** | 1. **Dishonesty** 2. **Failure to Report** 3. **Unreasonable Use of Force** | **Sufficient** |

## Facts of the Case

It was alleged on June 29, 2011, an officer used unnecessary force on an inmate by kicking and kneeing the inmate along the side of his body, while the inmate was handcuffed and laying on the ground. It was further alleged the officer failed to accurately report his use of force. A sergeant and four other officers allegedly witnessed the force and also failed to accurately report it. The sergeant and all five officers allegedly were dishonest in the subsequent administrative investigation.

## Investigative Assessment

Overall, the department substantially complied with policies and procedures.

# NORTH REGION

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| 2011-07-23 | 11-2461-IR | Criminal Investigation | 1. Criminal Act | Sufficient |

### Facts of the Case

On July 23, 2011, an office technician allegedly brought mobile phones and blue tooth devices into the institution for inmates. It was further alleged the office technician engaged in unlawful communications with inmates. The case was referred to the district attorney's office, which declined to prosecute. The Office of Internal Affairs did not open an administrative investigation because the office technician resigned pending the criminal investigation. A letter indicating the office technician resigned under adverse circumstances was placed in her official personnel file.

### Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| 2011-08-16 | 11-2496-IR | Criminal Investigation | 1. Criminal Act | Sufficient |

### Facts of the Case

On August 16, 2011, an officer allegedly provided heroin and tobacco to an inmate. The investigation failed to establish probable cause to believe a crime was committed. The matter was not referred to the district attorney's office. The Office of Internal Affairs opened an administrative investigation, which the OIG accepted for monitoring.

### Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| 2011-08-21 | 11-2737-IR | Administrative Investigation | 1. Discourteous Treatment<br>2. Failure to Report<br>3. Unreasonable Use of Force | Sufficient |

### Facts of the Case

On August 21, 2011, an officer allegedly took an inmate's identification card from an inmate, bent it, and threw it on the ground in retaliation for the inmate disrespecting the officer. When the inmate bent over to pick up his identification card, the officer allegedly kicked the card away from the inmate, and then kicked the inmate in the back. It was further alleged the officer did not report the incident or his use of force. Three other officers allegedly witnessed the incident but failed to report it.

### Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| 2011-09-01 | 11-2478-IR | Criminal Investigation | 1. Criminal Act | Sufficient |

### Facts of the Case

In September 2011, it was alleged an officer stole money that was to be issued to inmates upon their release from the institution. Allegedly, the total amount of money stolen was approximately 220 dollars. The case was referred to the district attorney's office, which filed a criminal complaint alleging ten misdemeanor counts of theft. The Office of Internal Affairs also opened an administrative investigation, which the OIG accepted for monitoring.

# NORTH REGION

## Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| 2011-09-02 | 11-2804-IR | Administrative Investigation | 1. Neglect of Duty<br>2. Over-Familiarity | Sufficient |

### Facts of the Case
On September 2, 2011, an associate warden allegedly signed a document prepared by an inmate granting the inmate visiting privileges that were against departmental policy. An office technician was allegedly overly familiar with the inmate when she took the document from the inmate and delivered it to the associate warden's residence for signature.

### Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| 2011-10-10 | 12-0071-IR | Administrative Investigation | 1. Dishonesty<br>2. Contraband<br>3. Over-Familiarity | Sufficient |

### Facts of the Case
Between October 10, 2011, and November 10, 2011, it was alleged a dental assistant engaged in an overly familiar relationship and smuggled a mobile phone to an inmate. It was also alleged that on December 14, 2011, the dental assistant was dishonest during her interview with the Office of Internal Affairs.

### Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| 2011-10-12 | 12-0074-IR | Criminal Investigation | 1. Criminal Act | Sufficient |

### Facts of the Case
Following an October 12, 2011, audit, a hiring authority discovered that an inmate support group allegedly donated nearly $7,000 over a period of several years to a church operated by an associate warden. It was alleged the associate warden and two office technicians fraudulently facilitated monetary donations from the inmate group to the church where the associate warden was the pastor and one of the office technicians was an employee. The investigation failed to establish probable cause to believe that a crime was committed. Therefore, the case was not referred to the district attorney's office. The department did not open an administrative investigation due to lack of evidence. The OIG concurred.

### Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

# NORTH REGION

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| 2011-10-29 | 11-3119-IR | Criminal Investigation | 1. Criminal Act | Sufficient |

### Facts of the Case

On October 29, 2011, an officer allegedly falsified his report regarding a use-of-force incident. It was further alleged he battered an inmate without provocation. The investigation failed to establish probable cause to believe a crime was committed. Therefore, the case was not referred to the district attorney's office. The department did not open an administrative investigation due to lack of evidence.

### Investigative Assessment

Overall, the department's investigative process complied with policies and procedures.

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| 2011-11-05 | 12-0666-IR | Administrative Investigation | 1. Failure to Report<br>2. Unreasonable Use of Force<br>3. Neglect of Duty | Sufficient |

### Facts of the Case

On November 5, 2011, a youth counselor allegedly used unnecessary force on a ward by forcibly closing a door on the ward's foot and pushing the ward backwards into his room. It was further alleged the youth counselor failed to document and report the use of force, failed to activate his personal alarm during the incident, and failed to provide the ward with the required medical evaluation as soon as practical following the incident.

### Investigative Assessment

Overall, the department sufficiently complied with policies and procedures.

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| 2011-12-01 | 12-0269-IR | Criminal Investigation | 1. Criminal Act | Sufficient |

### Facts of the Case

In December 2011, it was alleged a nurse provided tobacco and mobile phones to inmates for personal gain. It was further alleged she engaged in a sexual relationship with an inmate. The investigation failed to establish probable cause to believe that a crime was committed. Therefore, the matter was not referred to the district attorney's office. The nurse resigned prior to the completion of the criminal investigation. The Office of Internal Affairs did not open an administrative investigation due to her resignation.

### Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| 2011-12-19 | 12-0072-IR | Criminal Investigation | 1. Criminal Act | Sufficient |

### Facts of the Case

On December 19, 2011, a health records technician allegedly engaged in an overly familiar relationship with an inmate including written and telephonic communication, touching, kissing, and other sexual activity. The Office of Internal Affairs referred the matter to the district attorney's office for prosecution. The health records technician pled no contest to unlawful communications with a prisoner. The Office of Internal Affairs opened an administrative investigation, which the OIG accepted for monitoring.

### Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

# NORTH REGION

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| **2011-12-19** | **12-0126-IR** | **Criminal Investigation** | 1. **Criminal Act** | **Sufficient** |

### Facts of the Case

On December 19, 2011, it was alleged an unknown staff member conspired with inmates to traffic narcotics including heroin and cocaine into the institution. The investigation failed to establish probable cause to believe that a crime was committed. Therefore, the case was not referred to the district attorney's office. The department did not open an administrative investigation due to lack of evidence.

### Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| **2012-01-11** | **12-0867-IR** | **Administrative Investigation** | 1. **Contraband** <br> 2. **Over-Familiarity** <br> 3. **Other Failure of Good Behavior** <br> 4. **Controlled substances - use or possession on duty** <br> 5. **Controlled substances - possession** | **Sufficient** |

### Facts of the Case

It was alleged on January 11, 2012, a supervising cook was communicating by mobile phone with a minor for the purpose of selling and distributing marijuana to minors on a school campus. It was further alleged on January 14, 2012, the supervising cook was in possession of a marijuana smoking pipe on institution grounds and was bringing mobile phones, tobacco, and other contraband items into the institution for inmates for personal gain. It was also alleged that on March 23, 2012, the supervising cook was in possession of methamphetamine residue on institution grounds and provided marijuana laced brownies to a child for distribution to other children.

### Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| **2012-01-19** | **12-0271-IR** | **Criminal Investigation** | 1. **Criminal Act** | **Sufficient** |

### Facts of the Case

On January 19, 2012, it was alleged an officer smuggled contraband including: mobile phones, marijuana, and narcotics into an institution in exchange for money from inmates. The investigation failed to establish probable cause to believe that a crime was committed. The case was not referred to the district attorney's office. The department did not open an administrative investigation due to lack of evidence.

### Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

# NORTH REGION

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| **2012-02-01** | **12-0390-IR** | **Criminal Investigation** | 1. **Criminal Act** <br> 2. **Contraband** | **Sufficient** |

### Facts of the Case

On February 1, 2012, it was alleged an officer was involved in an overly familiar and sexual relationship with an inmate. The officer allegedly sent the inmate mobile phone text messages, nude images of her body, and jewelry. It was further alleged the officer also maintained a personal relationship with the inmate's sibling and facilitated communication between them. The case was referred to the district attorney's office, which filed criminal charges against the officer. The Office of Internal Affairs also opened an administrative investigation, which the OIG accepted for monitoring.

### Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| **2012-03-01** | **12-0825-IR** | **Direct Action with Subject Only** | 1. **Neglect of Duty** <br> 2. **Discourteous Treatment** | **Sufficient** |

### Facts of the Case

On March 1, 2012, an officer allegedly opened two cell doors and released four inmates that were on a modified program order requiring them to be kept apart. The inmates returned to their cells without incident. A sergeant reported the incident to a lieutenant but allegedly no further action was taken. On March 5, 2012, the sergeant mentioned the incident to a captain who later questioned the lieutenant about his failure to document the event. The lieutenant then allegedly confronted the sergeant and accused him of "dry snitching" for reporting the incident to the captain.

### Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| **2012-03-21** | **12-0925-IR** | **Criminal Investigation** | 1. **Criminal Act** | **Sufficient** |

### Facts of the Case

On March 21, 2012, it was alleged a materials and stores supervisor was providing narcotics, marijuana, and mobile phones to inmates for monetary gain. The investigation failed to establish probable cause to believe that a crime was committed by the materials and stores supervisor; therefore, no referral was made to the district attorney's office. The department did not open an administrative investigation due to lack of evidence. However, the investigation revealed that a private citizen was involved in mailing marijuana into the institution. The case against the private citizen was referred to the district attorney's office.

### Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

# SOUTH REGION

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| 2010-02-07 | 10-1313-IR | **Administrative Investigation** | 1. **Neglect of Duty** <br> 2. **Stalking** <br> 3. **Domestic Violence** <br> 4. **Failure to Report Arrest** | **Sufficient** |

## Facts of the Case

On February 7, 2010, an officer allegedly stalked his ex-girlfriend, drove to her sister's apartment, and banged on a bedroom window, shattering it. The officer then allegedly unlawfully entered the residence while in possession of a loaded firearm, and grabbed his ex-girlfriend by the arms and berated her until her she was able to break free and run out of the apartment. The officer was arrested by local law enforcement officers. It was also alleged that the officer was in possession of a loaded firearm without completing the department's range qualification requirements and that he failed to notify the hiring authority of his arrest. The officer was charged and convicted of vandalism, unlawful entry of a dwelling, and prowling and peeking.

## Investigative Assessment

Overall, the department sufficiently complied with policies and procedures.

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| 2010-07-01 | 11-1728-IR | **Criminal Investigation** | 1. **Criminal Act** | **Sufficient** |

## Facts of the Case

Between July 2010 and September 2011, an officer allegedly engaged in various sexual acts with multiple inmates. The case was referred to the district attorney's office, which declined to prosecute. The department did not open an administrative investigation due to lack of evidence.

## Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| 2010-07-26 | 10-3787-IR | **Administrative Investigation** | 1. **Dishonesty** <br> 2. **Failure to Report** <br> 3. **Discourteous Treatment** <br> 4. **Neglect of Duty** | **Sufficient** |

## Facts of the Case

On July 26, 2010, a parole agent allegedly made a threat to a parolee that was observed and not reported by another parole agent. That same day the two parole agents allegedly observed unnecessary use of force against the parolee by outside law enforcement officers and failed to report the incident. It was alleged that each parole agent was dishonest in their respective Office of Internal Affairs interviews regarding the two incidents. It was further alleged that after being ordered not to discuss the matter by the Office of Internal Affairs, the two parole agents discussed the incidents in violation of the order. It was also alleged that on July 28, 2010, a supervisor was told about the use of force against the parolee by an outside law enforcement agency and failed to act. Two other parole agents were alleged to have observed the same use of force on the parolee by outside law enforcement officers and failed to report the incident.

## Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

# SOUTH REGION

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| 2010-08-01 | 11-2964-IR | Criminal Investigation | 1. Criminal Act | Insufficient |

## Facts of the Case

In August 2010, two officers allegedly engaged in sexual misconduct with inmates and acted as look-outs for another officer who engaged in sexual misconduct with an inmate. The investigation failed to establish probable cause to believe that a crime was committed. Therefore, the case was not referred to the district attorney's office. The department did not open an administrative investigation due to lack of evidence.

## Investigative Assessment

Although the Office of Internal Affairs conducted a thorough investigation, it was not completed in a timely manner, as no work was completed on the case for six months. The department attorney failed to make all requisite entries in the case management system and failed to confer with the Office of Internal Affairs regarding the elements of a thorough investigation.

## Assessment Questions

- Did the special agent adequately confer with the department attorney upon case initiation and prior to finalizing the investigative plan?

    *The special agent contacted the department attorney to schedule the initial consultation; however, the department attorney did not respond and did not attend the meeting.*

- Within 21 calendar days, did the department attorney make an entry into CMS accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

    *The department attorney did not make any entry into CMS confirming relevant dates.*

- No later than 21 calendar days following assignment of the case, did the department attorney contact the assigned special agent and the monitor to discuss the elements of a thorough investigation of the alleged misconduct?

    *Although the department attorney contacted the special agent and the OIG providing notice that she was assigned to the case, she did not request a meeting to discuss the elements of a thorough investigation.*

- Did the department provide written confirmation summarizing all critical discussions about the investigative report to the special agent with a copy to the OIG?

    *There is no indication in CMS that the department attorney received the report, reviewed it, or provided feedback to the agent.*

- Was the OIA investigation, or subject only interview, conducted with due diligence?

    *The special agent was assigned to the case in September 2011. No substantive work on the case was completed for six consecutive months.*

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| 2010-10-01 | 11-1184-IR | Administrative Investigation | 1. Dishonesty<br>2. Over-Familiarity<br>3. Insubordination<br>4. Misuse of State Equipment or Property<br>5. Sexual Misconduct | Sufficient |

## Facts of the Case

Between October 10, 2010, and March 23, 2011, a parole agent allegedly solicited sex from a parolee he supervised and exposed his genitals to her. The parolee further alleged that the parole agent lived with another parolee, that the parole agent sent her photographs of his genitals and his parolee girlfriend's genitals, and that the parole agent provided her with advance notice as to when she would be searched by other parole agents. It was further alleged the parole agent was insubordinate by avoiding his investigatory interview and that when he was finally interviewed, he was allegedly dishonest with special agents.

## Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

# SOUTH REGION

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| **2010-10-01** | **11-1323-IR** | **Criminal Investigation** | 1.  **Criminal Act** | **Sufficient** |

### Facts of the Case

Between October 10, 2010, and March 23, 2011, a parole agent allegedly solicited sex from a parolee he supervised and exposed his genitals to her. The parolee further alleged that the parole agent lived with another parolee, that the parole agent sent her photographs of his genitals and his parolee girlfriend's genitals, and that the parole agent provided her with advance notice as to when she would be searched by other parole agents. The investigation failed to establish probable cause to believe that a crime was committed. The matter was not referred to the district attorney's office. The Office of Internal Affairs also opened an administrative investigation, which the OIG accepted for monitoring.

### Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| **2010-11-01** | **11-2876-IR** | **Criminal Investigation** | 1.  **Criminal Act** | **Sufficient** |

### Facts of the Case

Between November 1, 2010, and November 30, 2011, an officer allegedly provided mobile phones and tobacco to an inmate. Officers conducted a cell search of the inmate. The inmate battered two staff members, ran from the area of the cell, and attempted to destroy a mobile phone. Officers located an inmate-manufactured weapon, heroin, and tobacco within the cell. The damaged mobile phone was examined at the institution and it was determined the inmate had been communicating with the officer. The case was referred to the district attorney's office, which filed criminal charges of possession with intent to deliver a mobile phone, delivering a mobile phone, and unlawful communication with an inmate. The Office of Internal Affairs also opened an administrative investigation, which the OIG accepted for monitoring.

### Investigative Assessment

Overall, the department sufficiently complied with policies and procedures.

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| **2011-01-01** | **11-1305-IR** | **Administrative Investigation** | 1.  **Dishonesty**<br>2.  **Over-Familiarity**<br>3.  **Neglect of Duty**<br>4.  **Contraband** | **Sufficient** |

### Facts of the Case

Between January 1, 2011, and March 21, 2011, an officer allegedly engaged in an overly familiar relationship with an inmate and also allegedly provided the inmate contraband including a mobile phone. A search of the inmate's cell revealed he was in possession of a mobile phone that he attempted to destroy upon the initiation of the cell search. It was further alleged that during the cell search, a childhood photograph of the officer and love letters written by the officer were also discovered.

### Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

# SOUTH REGION

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| 2011-01-17 | 11-1004-IR | Administrative Investigation | 1. Dishonesty<br>2. Failure to Report<br>3. Neglect of Duty<br>4. Unreasonable Use of Force | Sufficient |

### Facts of the Case

On January 17, 2011, two officers allegedly went into the cell of a segregated inmate without cause or their supervisor's approval. While in the cell, the officers allegedly used unreasonable force on the inmate by pushing her against the wall and throwing her to the ground causing injuries. It was further alleged the officers failed to report the force and one was dishonest during his interview with the Office of Internal Affairs. Additionally, it was alleged two other officers observed the use of force and failed to report it. Also, one of those officers was alleged to be dishonest during her interview with the Office of Internal Affairs when she initially denied observing the use of force. It was further alleged a sergeant was dishonest when he denied having knowledge of the use of force and that he knew about the incident but failed to take appropriate action. Similarly, it was alleged a lieutenant was informed of the use of force and failed to take appropriate action.

### Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| 2011-02-17 | 11-0574-IR | Administrative Investigation | 1. Dishonesty<br>2. Grand Theft | Sufficient |

### Facts of the Case

On February 17, 2011, a dentist allegedly attempted to steal several thousands of dollars worth of dental equipment. The equipment was found inside the dentist's backpack as he was leaving the institution. It was further alleged the dentist was dishonest in his investigatory interview when he claimed that seven months earlier a supervising dentist gave him permission to take the tools home in order to repair them.

### Investigative Assessment

The department's investigative process sufficiently complied with policies and procedures.

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| 2011-02-17 | 11-1657-IR | Administrative Investigation | 1. Neglect of Duty<br>2. Disclosure of Confidential Information<br>3. Overfamiliarity | Insufficient |

### Facts of the Case

On February 17, 2011, a parole agent allegedly disclosed confidential information regarding an ongoing homicide investigation to a parolee who was a potential suspect in the investigation.

### Investigative Assessment

The hiring authority performed in accordance with the department's policies and procedures. The special agent failed to use due diligence in investigating the matter. Nearly four months lapsed during which no interviews were conducted. The department attorney failed to provide substantive feedback regarding the investigative report.

# SOUTH REGION

## Assessment Questions

- Did OIA Central Intake make a determination regarding the case within 30 calendar days?

  *OIA Central Intake received the request for investigation on May 19, 2011, but did not take action until June 22, 2011, more than 35 days after the request.*

- Within 21 calendar days following receipt of the investigative report, did the department attorney review the report and provide appropriate substantive feedback addressing the thoroughness and clarity of the report?

  *There is no entry in the case management system indicating the department attorney provided any feedback addressing the thoroughness and clarity of the report.*

- Did the department provide written confirmation summarizing all critical discussions about the investigative report to the special agent with a copy to the OIG?

  *The department attorney did not provide written confirmation to the OIG summarizing critical discussions about the investigative report. Also, the department attorney did not make any entries in the case management system indicating any discussions with the special agent regarding the investigative report.*

- Was the OIA investigation, or subject only interview, conducted with due diligence?

  *The case was assigned to an investigator on July 12, 2011. However, the first interview did not occur until November 4, 2011, or after the passage of 116 days. Once started, the investigation was completed in a timely manner.*

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| **2011-03-01** | **11-2225-IR** | **Criminal Investigation** | 1. **Criminal Act** | **Insufficient** |

## Facts of the Case

Between March 2011 and August 2011, a dental assistant allegedly engaged in illegal communications with an inmate and allegedly had sex with him. The district attorney filed a charge of unlawful communication with a prisoner against the dental assistant. The Office of Internal Affairs also opened an administrative investigation, which the OIG accepted for monitoring.

## Investigative Assessment

The department did not perform in compliance with the department's policies and procedures. The hiring authority delayed referring the matter to the Office of Internal Affairs. The special agent delayed starting the investigation. The special agent failed to provide a draft of his investigative report to the OIG for review before it was submitted to the district attorney's office. Additionally, the special agent failed to adequately confer with the OIG regarding whether an administrative case should be opened concurrently or subsequently to the criminal investigation. The special agent failed to ensure an administrative case was opened even after being advised to do so by the special agent in charge and as recommended by the OIG. This failure of the special agent caused undue delay and unnecessary costs to the department by having to pay the dental assistant before she was ultimately terminated pursuant to the administrative case.

# SOUTH REGION

## Assessment Questions

- Was the matter referred to OIA as soon as reasonably practical, within 45 calendar days of the date of discovery?

  *The date of discovery was March 8, 2011; however, the hiring authority did not refer the matter to the Office of Internal Affairs until August 16, 2011, more than 45 days after the date of discovery.*

- Within 21 calendar days, did the department attorney make an entry into CMS accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

  *The department attorney did not make an entry into the case management system regarding the deadline for taking action against the dental assistant.*

- No later than 21 calendar days following assignment of the case, did the department attorney contact the assigned special agent and the monitor to discuss the elements of a thorough investigation of the alleged misconduct?

  *The department attorney did not contact the special agent and OIG to discuss the elements of a thorough investigation within 21 days following assignment of the case.*

- Did the OIA adequately consult with the OIG, department attorney, and the appropriate prosecuting agency to determine if an administrative investigation should be conducted concurrently with the criminal investigation?

  *The special agent delayed the opening of an administrative investigation for several months. This caused not only an undue delay but the department also had to pay the dental assistant additional monies until she was ultimately terminated pursuant to the administrative case.*

- Did the department attorney attend investigative interviews for key witnesses to assess witness demeanor and credibility?

  *The department attorney did not attend interviews for key witnesses.*

- Upon completion of the investigation, was a draft copy of the investigative report timely forwarded to the OIG to allow for feedback before it was forwarded to the HA or prosecuting agency?

  *The special agent failed to provide a draft copy of the investigative report to the OIG for review before it was forwarded to the district attorney's office.*

- Upon completion of the investigation, was a draft copy of the investigative report timely forwarded to the department attorney to allow for feedback before it was forwarded to the HA or prosecuting agency?

  *The special agent failed to provide a draft copy of the investigative report to the department attorney for review before it was forwarded to the district attorney's office.*

- Within 21 calendar days following receipt of the investigative report, did the department attorney review the report and provide appropriate substantive feedback addressing the thoroughness and clarity of the report?

  *The department attorney did not review the report or provide appropriate substantive feedback addressing the thoroughness and clarity of the report within 21 days following receipt of the investigative report.*

- Did the department provide written confirmation summarizing all critical discussions about the investigative report to the special agent with a copy to the OIG?

  *The department attorney did not provide written confirmation summarizing all critical discussions about the investigative report to the special agent with a copy to the OIG.*

- Did the special agent cooperate with and provide continual real-time consultation with the OIG?

  *The special agent failed to provide a copy of his draft investigative report to the OIG before it was submitted to the district attorney's office.*

- Did the special agent cooperate and provide real-time consultation with the department attorney throughout the investigative phase?

  *The special agent did not provide a copy of the draft of the investigative report to the department attorney before it was submitted to the district attorney's office.*

- Was the investigation thorough and appropriately conducted?

  *The special agent delayed in opening an administrative investigation, causing a delay in which the department could serve the dental assistant with a disciplinary action and terminate her.*

# SOUTH REGION

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| 2011-03-08 | 11-1381-IR | **Administrative Investigation** | 1. **Dishonesty** <br> 2. **Failure to Report** <br> 3. **Neglect of Duty** | **Insufficient** |

## Facts of the Case

On March 8, 2011, an inmate allegedly caused a disturbance and refused to share her cell with another inmate. The aggitated inmate allegedly reported to a sergeant, six officers, and two licensed vocational nurses that a sergeant allegedly choked and threatened her. It was alleged that none of those staff members reported the allegations of staff misconduct. Further, it was alleged the sergeant and three officers used force on the inmate when they physically carried the inmate into her cell and none of them reported the use of force. It was also alleged that two officers who witnessed the use of force failed to report it. It was additionally alleged that the sergeant failed to instruct her subordinates to complete use-of-force reports after the incident, she failed to report the complete incident involving the inmate to her lieutenant, and she lied during her interview with the Office of Internal Affairs.

## Investigative Assessment

Overall, the department failed to substantially comply with policies and procedures. The Office of Internal Affairs did not complete the investigation until 19 days before the deadline to take disciplinary action and the department attorney did not attend all material witness interviews.

## Assessment Questions

- Did OIA Central Intake make a determination regarding the case within 30 calendar days?

  *OIA Central Intake received the request for investigation on April 8, 2011, but did not take action until May 18, 2011, more than 30 days after the request.*

- Did the department attorney attend investigative interviews for key witnesses to assess witness demeanor and credibility?

  *The department attorney did not attend the interview of the complaining inmate, nor did she attend the interview of one of the subjects. However, it is noted that the department attorney did attend other numerous material interviews.*

- Was the investigation, or subject interview, completed at least 35 days before the deadline to take disciplinary action?

  *The investigation was completed and provided to the hiring authority on February 14, 2012. The deadline to take disciplinary action expired on March 5, 2012. Therefore, the report was completed and submitted to the hiring authority with only 19 days left before the deadline to take disciplinary action.*

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| 2011-03-21 | 11-1599-IR | **Criminal Investigation** | 1. **Criminal Act** | **Sufficient** |

## Facts of the Case

On March 21, 2011, the investigative services unit received an anonymous note indicating that an inmate was allegedly involved in an overly familiar relationship with an officer. Officers conducted a cell search and discovered a childhood photograph of the officer, a mobile phone, and love letters written by the officer. The case was referred to the district attorney's office, which filed a criminal complaint against the officer. The Office of Internal Affairs also opened an administrative investigation, which the OIG accepted for monitoring.

## Investigative Assessment

The Office of Internal Affairs conducted a timely and very thorough investigation.

# SOUTH REGION

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| 2011-04-25 | 11-2161-IR | **Administrative Investigation** | 1. **Dishonesty** <br> 2. **Failure to Report** <br> 3. **Attempt to dissuade a witness** <br> 4. **Unreasonable Use of Force** | **Insufficient** |

## Facts of the Case

On April 25, 2011, two officers allegedly used unnecessary force when they slammed an inmate face first onto the floor and struck the inmate with fists, causing injury to the inmate. Each officer allegedly lied in their respective interviews with the Office of Internal Affairs. A medical staff person who allegedly observed some of the use of force also allegedly failed to report the observations and then lied during the Office of Internal Affairs interview.

## Investigative Assessment

Overall, the department's investigative process was insufficient. The hiring authority failed to submit a timely request for investigation. The Office of Internal Affairs did not complete the investigation until 22 days before the deadline to take disciplinary action. Although the special agent was receptive to the OIG's recommendations, including conducting a second interview of a complaining witness, the department attorney failed to attend an interview of the complaining witness.

## Assessment Questions

- Was the matter referred to OIA as soon as reasonably practical, within 45 calendar days of the date of discovery?

  *The hiring authority did not refer the matter to the Office of Internal Affairs until approximately 120 days after discovery of the incident.*

- Did OIA Central Intake make a determination regarding the case within 30 calendar days?

  *The determination took slightly over 30 days.*

- Within 21 calendar days, did the department attorney make an entry into CMS accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

  *The department attorney did not make any entry into CMS confirming relevant dates.*

- Did the department attorney attend investigative interviews for key witnesses to assess witness demeanor and credibility?

  *A department attorney attended most of the key interviews, but failed to attend the most significant interview of the complaining staff member witness.*

- Within 21 calendar days following receipt of the investigative report, did the department attorney review the report and provide appropriate substantive feedback addressing the thoroughness and clarity of the report?

  *The department attorney did not timely provide appropriate substantive feedback regarding the thoroughness and clarity of the report.*

- Did the department provide written confirmation summarizing all critical discussions about the investigative report to the special agent with a copy to the OIG?

  *The department attorney did not provide written confirmation summarizing all critical discussions about the investigative report to the special agent and OIG.*

- Was the OIA investigation, or subject only interview, conducted with due diligence?

  *Although the initial interview was conducted promptly, no additional interviews were completed until very close to the deadline for taking disciplinary action. The final investigative report was not completed until 22 days prior to the deadline for taking disciplinary action.*

- Was the investigation, or subject interview, completed at least 35 days before the deadline to take disciplinary action?

  *The investigative report was completed 22 days prior to the deadline for taking disciplinary action.*

# SOUTH REGION

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| 2011-05-01 | 11-2465-IR | Criminal Investigation | 1. Criminal Act | Sufficient |

### Facts of the Case

Between May 2011 and August 2011, a licensed vocational nurse allegedly engaged in sexual conduct with an inmate on multiple occasions. It was also alleged the nurse engaged in unauthorized communications with several inmates and supplied the inmates with drugs and mobile phones. The district attorney's office filed two felony counts of unlawful sexual activity and one misdemeanor count of unlawful communication with an inmate against the licensed vocational nurse. The Office of Internal Affairs opened an administrative investigation, which the OIG accepted for monitoring.

### Investigative Assessment

The Office of Internal Affairs conducted a timely and thorough investigation. The department attorney was not timely assigned to the case in order to participate in the investigation in a meaningful way.

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| 2011-05-05 | 11-2166-IR | Administrative Investigation | 1. Dishonesty<br>2. Neglect of Duty<br>3. Code of Silence<br>4. Failure to Report<br>5. Unreasonable Use of Force<br>6. Conspiracy | Insufficient |

### Facts of the Case

On May 5, 2011, two officers allegedly slammed an inmate to the ground and punched him even after he was placed in handcuffs. The officers allegedly failed to accurately report the incident, lied during their interviews with the Office of Internal Affairs, and violated direct orders from the Office of Internal Affairs not to discuss the investigation. A control booth officer was allegedly distracted during this use-of-force incident.

### Investigative Assessment

The hiring authority failed to timely refer the matter to the Office of Internal Affairs for investigation. The Office of Internal Affairs failed to complete a timely investigation in that the investigation was not completed until 17 days before the deadline to take disciplinary action. The department attorney failed to make a timely computerized entry regarding the deadline for taking disciplinary action. The department attorney also failed to provide written confirmation summarizing critical discussions about the investigative report to the special agent and to the OIG.

### Assessment Questions

- Was the matter referred to OIA as soon as reasonably practical, within 45 calendar days of the date of discovery?

  *The department learned of the misconduct on May 5, 2011, but the hiring authority did not refer the matter to the Office of Internal Affairs until July 27, 2011, more than 83 days after the date of discovery.*

- Within 21 calendar days, did the department attorney make an entry into CMS accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

  *The department attorney did not make any entry into CMS confirming relevant dates.*

- Did the department provide written confirmation summarizing all critical discussions about the investigative report to the special agent with a copy to the OIG?

  *The department attorney did not provide written confirmation summarizing critical discussions about the investigative report to the special agent and to the OIG.*

- Was the investigation, or subject interview, completed at least 35 days before the deadline to take disciplinary action?

  *The investigation was not completed until 17 days before the deadline to take disciplinary action.*

# SOUTH REGION

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| 2011-05-13 | 11-1804-IR | Administrative Investigation | 1. Discourteous Treatment<br>2. Verbal Threats<br>3. Hostile Work Environment<br>4. Disrupt Work Place<br>5. Brought Discredit to Department<br>6. Neglect of Duty<br>7. Physical Threat | Sufficient |

## Facts of the Case

On May 13, 2011, while a case records technician was complaining about co-workers to his supervisor, he allegedly stated he could see "why people would come to work and shoot everyone." He also allegedly told his supervisor he kept a weapon in his car for his own protection. The case records technician's comments led his supervisor and management to believe he had a weapon in his vehicle, allegedly posing a threat to the safety of other staff members.

## Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| 2011-05-16 | 11-2089-IR | Administrative Investigation | 1. Failure to Report<br>2. Neglect of Duty<br>3. Dishonesty<br>4. Unreasonable Use of Force | Insufficient |

## Facts of the Case

On May 16, 2011, two officers allegedly used pepper spray and struck an inmate multiple times with a baton causing a fracture to his forearm. It was further alleged a lieutenant who had knowledge of the use of force and the fact that the inmate suffered a fractured forearm allegedly failed to obtain a videotaped interview of the inmate as required by the department's policies and procedures.

## Investigative Assessment

The Office of Internal Affairs unreasonably delayed the completion of this investigation. The investigation was completed with only eight days left before the deadline to take disciplinary action. The delay in completing the investigation caused significant disruptions for the hiring authority who had very little time to consider the evidence in the case. The delays in investigation were unreasonable and unexplained. The hiring authority and department attorney generally complied with the department's policies and procedures.

# SOUTH REGION

## Assessment Questions

- Did the special agent adequately prepare for all aspects of the investigation?

  *There were significant periods of time where the investigation stalled. While the special agent conducted background investigation for the purposes of interview preparation, and in furtherance of the investigation, there were large periods of inactivity causing the completion of the investigation to be unnecessarily delayed.*

- Upon completion of the investigation, was a draft copy of the investigative report timely forwarded to the OIG to allow for feedback before it was forwarded to the HA or prosecuting agency?

  *A draft copy of the investigative report was submitted to the OIG with only 11 days remaining before the deadline for taking disciplinary action.*

- Upon completion of the investigation, was a draft copy of the investigative report timely forwarded to the department attorney to allow for feedback before it was forwarded to the HA or prosecuting agency?

  *The draft investigative report was not provided to the department attorney until there were only 11 days remaining before the deadline for taking disciplinary action.*

- Did the department provide written confirmation summarizing all critical discussions about the investigative report to the special agent with a copy to the OIG?

  *The department attorney did not provide written confirmation regarding discussions about the investigative report.*

- Was the OIA investigation, or subject only interview, conducted with due diligence?

  *The case was assigned to a special agent on August 26, 2011. On September 6, 2011, the special agent, department attorney, and the OIG met and discussed the deadline for taking disciplinary action. All parties agreed that the deadline for taking disciplinary action would expire on May 15, 2012. However, the special agent did not conduct any interviews on this case until December 20, 2011, or after the passage of 117 days. Thereafter, another two-and-a-half months passed before the second interview was conducted. As the deadline for taking disciplinary action loomed closer, and the OIG reminded the special agent that the case was nearing the deadline, the Office of Internal Affairs stated that the deadline for taking disciplinary action as agreed upon was incorrect and that there was additional time to complete the investigation. Given the questionable timeframe in which the allegation of misconduct was made, the Office of Internal Affairs eventually agreed that the original date as agreed upon would remain as the deadline for taking disciplinary action. The investigation was not closed and submitted to the hiring authority for consideration until there were only eight days left to take disciplinary action.*

- Was the investigation, or subject interview, completed at least 35 days before the deadline to take disciplinary action?

  *The investigation was not completed until eight days prior to the deadline for taking disciplinary action.*

- Was the investigation thorough and appropriately conducted?

  *The investigation was not appropriately conducted as the investigative report and supporting materials were not submitted to the hiring authority for review until eight days before the deadline for taking disciplinary action.*

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| 2011-05-20 | 11-2375-IR | Administrative Investigation | 1. **Failure to Report** <br> 2. **Unreasonable Use of Force** <br> 3. **Discourteous Treatment** | Insufficient |

## Facts of the Case

On May 20, 2011, it was alleged an officer used unauthorized and unreasonable force on a ward when he placed the ward in a choke hold. After the incident, the officer was allegedly overheard saying he almost put the ward "to sleep." It was also alleged the officer made intentionally misleading statements in his report of the incident regarding his application of force.

## Investigative Assessment

The hiring authority failed to submit a timely request for investigation. The Office of Internal Affairs submitted the report to the hiring authority less than 35 days before the deadline for taking disciplinary action. The department attorney failed to attend any of the witness interviews.

# SOUTH REGION

## Assessment Questions

- Was the matter referred to OIA as soon as reasonably practical, within 45 calendar days of the date of discovery?

  *The department learned of the misconduct on May 20, 2011, but the hiring authority did not refer the matter to the Office of Internal Affairs until August 15, 2011, more than 45 days after the date of discovery.*

- Did the department attorney attend investigative interviews for key witnesses to assess witness demeanor and credibility?

  *The department attorney only attended the interview of the officer. She did not attend the interviews of the percipient witnesses to the incident.*

- Was the investigation, or subject interview, completed at least 35 days before the deadline to take disciplinary action?

  *The investigation was completed on April 24, 2012, and the deadline to take disciplinary action was May 19, 2012, less than 35 days before the deadline.*

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| 2011-05-23 | 11-2595-IR | Administrative Investigation | 1. Failure to Report<br>2. Insubordination<br>3. Retaliation<br>4. Dishonesty to OIA<br>5. Dishonesty in Report<br>6. Altering Evidence<br>7. Neglect of Duty<br>8. Dishonesty | Sufficient |

## Facts of the Case

Between May 23, 2011, and August 15, 2011, a sergeant allegedly falsified the date on drug test results received from a laboratory testing facility. It was also alleged the sergeant created false reports based on the altered evidence, lied to the Office of Internal Affairs about the matter, and retaliated against the individual who reported the alleged misconduct. It was also alleged a lieutenant failed to timely report the sergeant's alleged misconduct and then lied about the incident to the Office of Internal Affairs. It was further alleged a warden failed to follow the department's policies and procedures when he did not submit a timely request for an investigation regarding the lieutenant's misconduct to the Office of Internal Affairs.

## Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| 2011-05-25 | 11-2088-IR | Administrative Investigation | 1. Insubordination<br>2. Neglect of Duty<br>3. Discourteous Treatment | Sufficient |

## Facts of the Case

On May 25, 2011, a sergeant allegedly brought an inmate into the lieutenant's office and began yelling at her to write down the complaints she was making against the sergeant. The sergeant then allegedly threw a pen and pad on the desk in front of the inmate and continued to yell at her. It was further alleged a lieutenant ordered the sergeant to leave the office; however, the sergeant failed to comply with the order and pushed his body into a captain who was trying to keep the sergeant out of the office. Additionally, it was alleged the sergeant lied during his interview with the Office of Internal Affairs.

## Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

# SOUTH REGION

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| 2011-06-28 | 11-2256-IR | **Administrative Investigation** | 1. **Dishonesty** | **Sufficient** |

### Facts of the Case
On June 28, 2011, an officer allegedly submitted a forged physical fitness medical verification form to the institution.

### Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| 2011-07-03 | 11-2670-IR | **Administrative Investigation** | 1. **Dishonesty** <br> 2. **Failure to Report** <br> 3. **Unreasonable Use of Force** <br> 4. **Code of Silence** | **Sufficient** |

### Facts of the Case
On July 3, 2011, an officer allegedly used unnecessary force when, during an attempt to counsel an inmate, he slapped the inmate's hand and then slapped him in the face. The officer acknowledged culpability to a lieutenant, but allegedly falsified his written report and provided a different version of events regarding the incident. Two sergeants and two officers witnessed the incident and allegedly prepared false written reports. One of the sergeants also allegedly encouraged officers to orchestrate their reports. It was also alleged the officers and sergeants lied during their interviews with the Office of Internal Affairs.

### Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| 2011-07-29 | 11-2481-IR | **Administrative Investigation** | 1. **Other Failure of Good Behavior** <br> 2. **Controlled Substances - Undetermined** <br> 3. **Dishonesty** | **Insufficient** |

### Facts of the Case
On July 29, 2011, a search warrant was executed at a parole agent's home during which outside law enforcement officers found marijuana and numerous firearms allegedly belonging to her son. The parole agent allegedly interacted negatively with outside law enforcement when she slipped out of handcuffs they had placed on her.

### Investigative Assessment
The hiring authority substantially complied with the department's policies and procedures; however, the Office of Internal Affairs did not. The special investigator failed to timely complete the parole agent's interview, the only interview necessary, in that it was not completed until more than five months after being assigned the case. The department attorney failed to provide feedback on the investigative report and to document critical discussions about the investigative report.

# SOUTH REGION

## Assessment Questions

- Within 21 calendar days following receipt of the investigative report, did the department attorney review the report and provide appropriate substantive feedback addressing the thoroughness and clarity of the report?

  *There is no indication that the department attorney provided any feedback regarding the report.*

- Did the department provide written confirmation summarizing all critical discussions about the investigative report to the special agent with a copy to the OIG?

  *There is no indication the department attorney provided written confirmation summarizing any critical discussions regarding the report. The department attorney and the special agent met with the OIG monitor and the substance of the report was discussed at length.*

- Was the OIA investigation, or subject only interview, conducted with due diligence?

  *The scope of the investigation was limited by OIA Central Intake to an interview of the parole agent only. The case was assigned to the investigator on October 18, 2011. The subject interview did not take place until March 28, 2012, or after the passage of 163 days.*

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| 2011-08-02 | 11-2316-IR | Criminal Investigation | 1. Contraband | Sufficient |

## Facts of the Case

On August 2, 2011, a captain and several other staff allegedly engaged in smuggling drugs and tobacco into an institution. The investigation failed to establish probable cause to believe that a crime was committed. Therefore, the case was not referred to the district attorney's office. The department did not open an administrative investigation due to lack of evidence.

## Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| 2011-08-21 | 11-2672-IR | Criminal Investigation | 1. Criminal Act | Insufficient |

## Facts of the Case

On August 21, 2011, it was alleged a vocational instructor and cook specialist at a youth facility provided contraband, including mobile phones and tobacco, to wards. It was also alleged the vocational instructor allowed the wards to watch pornographic movies in the janitorial trailer. The investigation failed to establish probable cause to believe that a crime was committed. Therefore, the case was not referred to the district attorney's office. The department did not open an administrative investigation due to lack of evidence.

## Investigative Assessment

The Office of Internal Affairs failed to properly and adequately consult with the OIG during all aspects of the investigation and failed to notify the OIG before conducting interviews. The Office of Internal Affairs also failed to exercise due diligence as there was a three-month period of time when no action was taken on the case. The investigation had already been completed and the only thing that remained outstanding was the report. The department attorney failed to obtain, review, and assess the draft investigative report.

# SOUTH REGION

## Assessment Questions

- Was the matter referred to OIA as soon as reasonably practical, within 45 calendar days of the date of discovery?

  *The department learned of the potential misconduct on August 21, 2011, but the hiring authority did not refer the matter to the Office of Internal Affairs until October 12, 2011, more than 45 days after the date of discovery.*

- Did the department attorney attend investigative interviews for key witnesses to assess witness demeanor and credibility?

  *The department attorney was not assigned to the case until after the interviews had been conducted.*

- Upon completion of the investigation, was a draft copy of the investigative report timely forwarded to the department attorney to allow for feedback before it was forwarded to the HA or prosecuting agency?

  *There is no entry in the case management system to indicate that the report was provided to the department attorney.*

- Within 21 calendar days following receipt of the investigative report, did the department attorney review the report and provide appropriate substantive feedback addressing the thoroughness and clarity of the report?

  *There is no entry in the case management system to indicate the department attorney reviewed the report or provided feedback to the investigator.*

- Did the department provide written confirmation summarizing all critical discussions about the investigative report to the special agent with a copy to the OIG?

  *There is no entry in the case management system indicating the department attorney had a discussion with the special agent regarding the draft report.*

- Was the investigative draft report provided to the OIG for review thorough and appropriately drafted?

  *The draft report did not address allegations made against a second employee. The OIG recommended adding that information to the report. The special agent incorporated the OIG's recommendation in the final report.*

- Was the OIA investigation, or subject only interview, conducted with due diligence?

  *There was a three-month period of time when no action was taken on the case. The investigation had already been completed and the only thing that remained outstanding was the report.*

- Did the special agent cooperate with and provide continual real-time consultation with the OIG?

  *The special agent neglected to inform the OIG of the interviews he conducted at the outset of the investigation. The investigation started prior to a case being opened by the Office of Internal Affairs. The case factors met the OIG criteria for monitoring and as such, the OIG should have been notified of the interviews even though a case was not yet opened.*

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| **2011-09-01** | **11-2238-IR** | **Criminal Investigation** | 1.  **Criminal Act** | **Sufficient** |

## Facts of the Case

On September 1, 2011, a library technical assistant allegedly entered a library with two cans of potato chips, placed them on the desk of an inmate worker, and left the library. Officers searched the inmate's desk and discovered tobacco in the false bottoms of the cans. A search of the library technical assistant's home revealed two additional snack containers containing mobile phones. The case was referred to the district attorney's office, which declined to prosecute. The Office of Internal Affairs also opened an administrative investigation, which the OIG accepted for monitoring.

## Investigative Assessment

The department's investigative process sufficiently complied with policies and procedures.

# APPENDIX B                                                                107
# DISCIPLINARY PHASE CASE SUMMARIES
## CENTRAL REGION

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2009-09-30 | 10-3081-IR | 1. **Other Failure of Good Behavior** | 1. Sustained | **Dismissal** | **Sufficient** |

### Facts of the Case
Between September 1, 2005, and September 30, 2009, an officer allegedly committed welfare fraud by providing false income information to the Department of Social Services and receiving monetary benefits to which he was not entitled. Although the district attorney's office filed criminal charges against the officer, the charges were dismissed when the officer and his wife agreed to reimburse the state for benefits they received.

### Disposition
The hiring authority determined there was sufficient evidence to sustain the allegation against the officer and dismissed the officer. The officer filed an appeal with the State Personnel Board. After a hearing, the State Personnel Board upheld the hiring authority's decision to dismiss the officer.

### Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-05-18 | 11-1681-IR | 1. **Dishonesty** <br> 2. **Other Failure of Good Behavior** | 1. Sustained <br> 2. Sustained | **Dismissal** | **Sufficient** |

### Facts of the Case
Between May 18, 2010, and March 31, 2011, it was alleged an officer conspired with his girlfriend to commit welfare fraud. Allegedly, the officer's girlfriend reported that the officer did not reside with her and their children and did not provide financial support, resulting in the girlfriend receiving food stamps. It was further alleged that the officer was dishonest with outside law enforcement officers when he stated he did not reside with his girlfriend and his children. The matter was submitted to the district attorney's office, which filed criminal charges. The officer was convicted of a misdemeanor welfare violation on November 14, 2011.

### Disposition
The hiring authority determined there was sufficient evidence to sustain the allegations and dismissed the officer. The officer filed an appeal with the State Personnel Board, which he later withdrew prior to the hearing on the matter.

### Disciplinary Assessment
Both the hiring authority and the department attorney performed in accordance with the department's policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-07-17 | 10-3414-IR | 1. **Neglect of Duty** <br> 2. **Dishonesty** | 1. Sustained <br> 2. Not Sustained | **Letter of Reprimand** | **Sufficient** |

### Facts of the Case
On July 17, 2010, following an in-cell assault between two inmates, it was alleged that a sergeant and an officer failed to properly document the assault. It was also alleged that the officer falsified the signature of one of the inmates on related paperwork. It was further alleged that a lieutenant and a captain failed to properly make and document the correct housing assignments for the involved inmates.

# CENTRAL REGION

## Disposition

The hiring authority did not sustain the allegations against the sergeant, the officer, or the captain. The hiring authority did sustain allegations of neglect of duty against the lieutenant and imposed a letter of reprimand. The lieutenant filed an appeal with the State Personnel Board. Following the filing of the appeal, the department and the lieutenant entered into a settlement agreement wherein the letter would be removed from the lieutenant's personnel file six months early if there were no other disciplinary actions. The OIG concurred with the terms of the settlement agreement.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-11-07 | 11-1024-IR | 1. Dishonesty<br>2. Neglect of Duty<br>3. Failure to Report | 1. Sustained<br>2. Sustained<br>3. Not Sustained | Dismissal | Sufficient |

## Facts of the Case

On November 7, 2010, an officer allegedly failed to follow proper procedures in securing an inmate, and as a result, the inmate was able to assault the officer. The officer then allegedly entered into the inmate's assigned cell without waiting for assistance, and utilized pepper spray in an unsafe manner. It was further alleged that the officer submitted an inaccurate report regarding the incident and his actions.

## Disposition

The hiring authority determined there was sufficient evidence to sustain the allegations of dishonesty and neglect of duty and dismissed the officer. The remaining allegation of failing to report the use of force was not sustained. The officer filed an appeal with the State Personnel Board. The department and the officer entered into a settlement agreement, wherein the penalty was reduced to a 10 percent salary reduction for 12 months and the dishonesty allegation was removed from the disciplinary action. The OIG concurred with the settlement because of evidentiary issues with the dishonesty allegation which became more apparent after the *Skelly* hearing.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-11-13 | 11-0254-IR | 1. Discourteous Treatment<br>2. Public Intoxication | 1. Sustained<br>2. Sustained | Salary Reduction | Sufficient |

## Facts of the Case

On November 13, 2010, a sergeant was allegedly drunk in public when he was arrested by outside law enforcement near a restaurant and bar where a fight had broken out. It was further alleged the sergeant was discourteous to outside law enforcement by using profanity and insulting language as they arrested him. The district attorney's office declined to file charges.

## Disposition

The hiring authority determined there was sufficient evidence to sustain the allegations against the sergeant and imposed a 10 percent salary reduction for nine months. After the *Skelly* hearing, the department and the sergeant entered into a settlement agreement whereby the department reduced the penalty to a 5 percent salary reduction for ten months. Based on the factors presented at the *Skelly* hearing, the OIG concurred with the terms of the settlement agreement.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

# CENTRAL REGION

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-11-17 | 11-3032-IR | 1. Neglect of Duty | 1. Sustained | No Penalty Imposed | Sufficient |

### Facts of the Case
It was alleged that on November 17, 2010, a sergeant entered incorrect information into an inmate work assignment database. As a result, on December 7, 2010, a lieutenant, relying on the incorrect information, issued a gate pass to an inmate who was not qualified to receive one.

### Disposition
The hiring authority sustained allegations of neglect of duty against both the sergeant and the lieutenant. The hiring authority determined that discipline was not necessary, and instead had the lieutenant receive additional corrective training. No discipline or training was given to the sergeant, as he had retired prior to the investigative findings being made. The OIG concurred.

### Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-11-27 | 11-0314-IR | 1. Other Failure of Good Behavior<br>2. Criminal Act - Disturbing Peace<br>3. Dishonesty<br>4. Criminal Act - Battery | 1. Sustained<br>2. Sustained<br>3. Not Sustained<br>4. Not Sustained | Salary Reduction | Sufficient |

### Facts of the Case
On November 27, 2010, it was alleged that two officers, while off-duty, got into a bar fight with numerous persons. Although the two officers were both arrested and charged with misdemeanors, they were only convicted of an infraction of disturbing the peace.

### Disposition
The hiring authority determined there was sufficient evidence to sustain allegations that both officers failed to uphold good behavior by engaging in a bar fight and that both officers were convicted of infractions for disturbing the peace. The other allegations for dishonesty and criminal battery were not sustained. The hiring authority imposed a 5 percent salary reduction for six months on the first officer. The first officer filed an appeal with the State Personnel Board. The department and the first officer entered into a settlement agreement, reducing the penalty to a 5 percent salary reduction for three months. The OIG concurred in the settlement agreement. The hiring authority imposed a 5 percent salary reduction for 12 months on the second officer. The second officer did not file an appeal.

### Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-01-27 | 11-0983-IR | 1. Insubordination<br>2. Neglect of Duty | 1. Not Sustained<br>2. Not Sustained | No Penalty Imposed | Insufficient |

### Facts of the Case
It was alleged that on January 27, 2011, a lieutenant was directed by an associate warden to place an inmate into administrative segregation after letters were discovered indicating that the inmate was in danger. The lieutenant allegedly failed to place the inmate into administrative segregation. Also, the lieutenant allegedly told a sergeant that he was told by the associate warden to leave the inmate in his assigned cell and not move him to the administrative segregation unit.

### Disposition
The hiring authority determined there was insufficient evidence to sustain the allegations against the lieutenant.

# CENTRAL REGION

## Disciplinary Assessment

The matter was reviewed by OIA Central Intake for allegations of failing to following orders of a supervisor. However, the facts also indicated that the lieutenant made misleading statements to a sergeant regarding the orders given to the sergeant by the lieutenant. Despite a request by the OIG, OIA Central Intake would not consider the dishonesty allegation. Also, the department failed to conduct the investigative findings and disciplinary determinations in a timely manner. On April 1, 2011, the hiring authority received the case to take disciplinary action without further investigation, but no investigative or disciplinary findings were made until almost ten months later. Additionally, the employee relations officer failed to enter key dates into the case management system.

## Assessment Questions

- Was the disciplinary phase conducted with due diligence by the department?

  *There hiring authority waited almost ten months to make investigative and disciplinary determinations after receiving the case from OIA Central Intake. Due to this long delay, the disciplinary phase was not diligently conducted.*

- Did the HA timely consult with the OIG and the department attorney (if applicable) regarding disciplinary determinations prior to making a final decision?

  *OIA Central Intake referred the matter back to the hiring authority on April 1, 2011, to take action without further investigation. The hiring authority did not consult with the OIG regarding the disciplinary determinations until January 24, 2012, more than ten months after receipt of the case.*

- Did the HA timely consult with the OIG and department attorney (if applicable), regarding the sufficiency of the investigation and the investigative findings?

  *OIA Central Intake referred the matter back to the hiring authority on April 1, 2011, to take action without further investigation. The hiring authority did not consult with the OIG regarding the sufficiency of the investigation and investigative findings until January 24, 2012, more than ten months after receipt of the case.*

- Did the disciplinary officer make an entry into CMS prior to the findings conference accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

  *The employee relations officer did not enter key dates into CMS prior to the findings conference.*

- Would the appropriate initial determination or reconsideration determination have been made by OIA Central Intake and/or OIA Chief without OIG intervention?

  *OIA Central Intake did not make an appropriate initial determination in this case by failing to consider the dishonesty allegation.*

- Did OIA Central Intake make an appropriate initial determination regarding the case?

  *OIA Central Intake did not consider the dishonesty allegation, even after the OIG recommended the issue be addressed at the intake meeting.*

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2011-02-04** | **11-1896-IR** | 1.  **Neglect of Duty** | 1.  **Sustained** | **Salary Reduction** | **Insufficient** |

## Facts of the Case

On February 4, 2011, an officer allegedly opened a cell door and allowed two inmates to exit their assigned cell, without the presence of floor officers, resulting in an assault on another inmate.

## Disposition

The hiring authority determined there was sufficient evidence to sustain the allegations of neglect of duty and imposed a 10 percent salary reduction for six months. The officer filed an appeal with the State Personnel Board. On the date of the pre-hearing settlement conference, the officer failed to appear and the appeal was dismissed by the State Personnel Board.

## Disciplinary Assessment

The hiring authority failed to refer the matter to the Office of Internal Affairs in a timely manner. Three separate levels of review of the incident all determined that staff's actions before, during, and after the use of force were within policy. The OIG pointed out the violation of policy to the hiring authority following a use-of-force review committee in which no one identified such a violation. The hiring authority failed to take immediate action and waited over four months to refer the matter to the Office of Internal Affairs. The department failed to conduct the investigative findings and disciplinary determinations in a timely manner and failed to provide a draft of the pre-hearing settlement conference statement to the OIG prior to it being filed.

# CENTRAL REGION

## Assessment Questions

- Did the department attorney or disciplinary officer cooperate with and provide continual real-time consultation with the OIG throughout the disciplinary phase, until all proceedings were completed, except for those related to a writ?

  *The department attorney failed to provide a draft of the pre-hearing settlement conference statement to the OIG before it was filed, allowing no reasonable opportunity for the OIG to provide feedback.*

- Was the OIG provided with a draft of the pre-hearing settlement conference statement prior to it being filed?

  *The department attorney provided a draft of the pre-hearing settlement conference statement on February 7, 2011, the same day it was filed. The OIG did not have a reasonable amount of time to provide feedback prior to its filing.*

- Did OIA Central Intake make a determination regarding the case within 30 calendar days?

  *OIA Central Intake received the request for investigation on June 23, 2011, but did not take action until July 27, 2011, more than 30 calendar days following the receipt.*

- Was the matter referred to the OIA as soon as reasonably practical, within 45 calendar days of the date of discovery?

  *The department initially determined that the discovery of the alleged misconduct occurred on March 18, 2011, and the matter was referred to the Office of Internal Affairs on June 20, 2011. However, the department attorney, in consultation with the OIG, determined the alleged misconduct was discovered on the date of the incident or the following day, which was February 5, 2011, when the lieutenant reviewed the reports submitted by the officers. The hiring authority referred the matter to the Office of Internal Affairs for action more than four months after the discovery of the alleged misconduct.*

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-04-01 | 11-1262-IR | 1. Neglect of Duty<br>2. Other Failure of Good Behavior<br>3. Failure to Report<br>4. Unreasonable Use of Force | 1. Sustained<br>2. Sustained<br>3. Not Sustained<br>4. Not Sustained | Suspension | Sufficient |

## Facts of the Case

On April 1, 2011, an officer allegedly used unnecessary force on an inmate in an administrative segregation unit when he escorted the inmate to a patio area, removed the inmate's restraints, pushed his knee into the back of the inmate, placed his elbow on the back of the inmate's neck, and pulled the inmate by the hair, trying to provoke the inmate to respond by force. It was further alleged that the officer failed to report his use of force and that six officers and a sergeant witnessed the use of force and also failed to report it.

## Disposition

The hiring authority did not sustain the allegations of the use of force or the failure to report a use of force against the sergeant or any of the officers. The hiring authority did sustain allegations of neglect of duty against the first officer for removing the handcuffs from an administrative segregation unit inmate, against the sergeant for failing to report that the officer removed the inmate's handcuffs, and against the observation officer for failing to observe and failing to provide coverage while in the observation post. The hiring authority imposed a two working-day suspension on the sergeant and the two officers. The department and the first officer entered into a settlement agreement wherein the department agreed to remove the action from the officer's file after 24 months instead of the customary 36 months and the officer agreed to not file an appeal with the State Personnel Board. The sergeant and the observation officer filed appeals with the State Personnel Board. The department and the sergeant entered into a settlement agreement wherein the department agreed to reduce the penalty to a letter of reprimand and the sergeant agreed to waive one day of back pay and to withdraw his appeal. The department and the observation officer entered into a stipulated settlement agreement wherein the department agreed to reduce the penalty to a one working-day suspension and to remove the action from the officer's file after 24 months instead of the customary three years and the observation officer agreed to withdraw his appeal. The OIG found the settlements to be reasonable.

## Disciplinary Assessment

The department attorney and the hiring authority performed in accordance with the department's policies and procedures and an appropriate decision was reached.

# CENTRAL REGION

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-04-14 | 11-2004-IR | 1. Neglect of Duty | 1. Sustained | Salary Reduction | Sufficient |

## Facts of the Case

On April 14, 2011, an officer allegedly opened a cell door, allowing an inmate to exit his cell without floor officers being present. The inmate sat on the dayroom floor in protest. When the floor officers arrived, the inmate became agitated and discourteous, resulting in the officers having to use physical force on the inmate.

## Disposition

The hiring authority determined there was sufficient evidence to sustain the allegation against the officer and imposed a 5 percent salary reduction for six months. The officer filed an appeal with the State Personnel Board. At the pre-hearing settlement conference, the department and the officer entered into a settlement agreement wherein the department agreed to reduce the penalty to a 5 percent salary reduction for two months, and the officer agreed to withdraw her appeal. The OIG concurred with these terms because information was presented at the pre-hearing settlement conference that floor officers were actually present at the time of the alleged incident. This was mitigating information that presented possible evidentiary issues.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-04-15 | 11-1537-IR | 1. Intoxication | 1. Sustained | Salary Reduction | Insufficient |

## Facts of the Case

On April 15, 2011, an off-duty officer, while intoxicated, drove a car into a power pole. A passenger in the vehicle was knocked unconscious. An outside law enforcement officer responded to the scene, performed field sobriety tests and asked the officer how much he had to drink. The officer allegedly failed the field sobriety tests and lied several times by denying he had consumed alcohol. The officer was criminally charged for driving while intoxicated and causing bodily injury to another as a felony offense.

## Disposition

The officer entered a no contest plea to a misdemeanor driving while intoxicated and causing bodily injury to another. The felony charges were dismissed. The hiring authority sustained the allegations of intemperance and driving under the influence while off-duty against the officer, and imposed a 10 percent salary reduction for 24 months. The officer did not file an appeal with the State Personnel Board.

## Disciplinary Assessment

The department failed to conduct the investigative findings and disciplinary determinations in a timely manner. The disciplinary officer also failed to provide the OIG with a draft copy of the disciplinary action and failed to consult with the OIG prior to serving the final disciplinary action on the officer.

# CENTRAL REGION

## Assessment Questions

- Did the department attorney or disciplinary officer cooperate with and provide continual real-time consultation with the OIG throughout the disciplinary phase, until all proceedings were completed, except for those related to a writ?

  *The disciplinary officer failed to provide the OIG with a draft copy of the disciplinary action and failed to consult with the OIG prior to serving the final disciplinary action on the sergeant, in violation of departmental policy.*

- Was the draft disciplinary action provided to the OIG for review appropriately drafted as described in the DOM?

  *The disciplinary officer failed to provide the OIG with a draft copy of the disciplinary action and failed to consult with the OIG prior to serving the final disciplinary action on the sergeant, in violation of departmental policy.*

- Did the department attorney or disciplinary officer provide the OIG with a copy of the draft disciplinary action and consult with the OIG?

  *The disciplinary officer failed to provide the OIG with a draft copy of the disciplinary action and failed to consult with the OIG prior to serving the final disciplinary action on the sergeant, in violation of departmental policy.*

- Did the HA timely consult with the OIG and the department attorney (if applicable) regarding disciplinary determinations prior to making a final decision?

  *The Office of Internal Affairs declined to investigate the allegations and referred the matter back to the hiring authority on June 1, 2011. The hiring authority did not consult with the OIG and department attorney regarding the disciplinary determinations until October 24, 2011, 132 days after receipt of the case.*

- Did the HA timely consult with the OIG and department attorney (if applicable), regarding the sufficiency of the investigation and the investigative findings?

  *The Office of Internal Affairs declined to investigate the allegations and referred the matter back to the hiring authority on June 1, 2011. The hiring authority conducted a review of the investigation and made investigative findings on October 24, 2011, 132 calendar days after receipt of the case.*

- Did the disciplinary officer make an entry into CMS prior to the findings conference accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

  *The disciplinary officer did not accurately make an entry into CMS to confirm the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time prior to the findings conference.*

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2011-05-01** | **11-2842-IR** | 1. **Neglect of Duty** <br> 2. **Other Failure of Good Behavior** | 1. **Sustained** <br> 2. **Sustained** | **Salary Reduction** | **Sufficient** |

## Facts of the Case

Between May 1, 2011, and June 7, 2011, an officer allegedly sent numerous obscene and threatening text messages to his estranged wife. On September 19, 2011, the officer was arrested for sending the messages. It was alleged that the officer failed to timely notify the department of his arrest.

## Disposition

The hiring authority sustained the allegations and imposed a 10 percent salary reduction for 12 months. The hiring authority aggravated the penalty because of the officer's three previous disciplinary actions. The officer filed an appeal with the State Personnel Board which was later dismissed when the officer failed to appear at the pre-hearing settlement conference.

## Disciplinary Assessment

In all critical aspects, the department attorney and the hiring authority performed in accordance with departmental policies.

# CENTRAL REGION

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-05-03 | 11-2107-IR | 1. Neglect of Duty | 1. Sustained | Salary Reduction | Sufficient |

## Facts of the Case

On May 3, 2011, a directive by the warden required inmates to be confined to their cells for most activities, including eating meals in their cells. Two floor officers and a control booth officer allegedly allowed inmates to exit their cells to pick up their food trays then return to their cells to eat their meals. As a result, two inmates immediately engaged in a fight once they were released from their cells to pick up food trays. Officers had to use pepper spray to stop the fight. The directive requiring inmates to be confined to their cells for most activities was rescinded on May 4, 2011, one day after the incident.

## Disposition

The hiring authority determined there was sufficient evidence to sustain the allegations against the three officers and imposed a 5 percent salary reduction for six months on each officer. The three officers filed appeals with the State Personnel Board. The department and the three officers entered into settlement agreements wherein the department agreed to reduce the penalty to a 5 percent salary reduction for three months for each officer. The department further agreed to remove the actions from the officers' official personnel files after 18 months instead of the customary three years. The officers agreed to withdraw their appeals. The OIG concurred with the settlements because there were some mitigating facts and the penalty for each officer, although modified, still remained within the same original penalty level.

## Disciplinary Assessment

Overall, the department attorney and hiring authority performed in accordance with the department's policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-05-13 | 11-1596-IR | 1. Failure to Report<br>2. Neglect of Duty | 1. Sustained<br>2. Sustained | Salary Reduction | Sufficient |

## Facts of the Case

On May 13, 2011, an inmate suffering from dementia allegedly became aggressive with officers as he was being escorted to the shower. As the inmate's fist came toward an officer's face, the officer tried to grab the inmate's arm but instead, struck the inmate in the face. It was alleged the officer failed to report his use of force and then was dishonest about whether he intentionally struck the inmate in the face. It was alleged that a second officer witnessed the use of force but failed to report it. It was also alleged that two nurses witnessed the use of force but failed to report it immediately. The nurses allegedly waited more than 24 hours to report the incident. Following the reports by the nurses, it was further alleged that a sergeant who supervised the two officers failed to order the officers to write reports.

## Disposition

The hiring authority sustained the allegations of neglect of duty against the sergeant and failure to report against the two nurses. The sergeant received a 5 percent salary reduction for three months and the nurses received letters of reprimand. During the *Skelly* hearing, the department modified the penalty against the sergeant to a letter of instruction. The OIG concurred with the modification based on the confusion that existed at the time regarding the force required to be reported when dealing with dementia patients. The two nurses did not file appeals with the State Personnel Board. No allegations were sustained against the two officers.

## Disciplinary Assessment

The department attorney and the hiring authority performed in accordance with the department's policies and procedures and an appropriate decision was reached.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-05-13 | 11-2571-IR | 1. Neglect of Duty | 1. Sustained | Salary Reduction | Sufficient |

## Facts of the Case

On May 13, 2011, an officer allegedly activated the switch to a fire door and then failed to secure the door after it was opened, thus allowing inmates to exit the building and attack other inmates on the yard. It was further alleged that three other officers failed to notice that the fire door was not secured during security checks.

# CENTRAL REGION

## Disposition

The hiring authority sustained allegations of neglect of duty and imposed a 5 percent salary reduction for 12 months for the first three officers, and a 5 percent salary reduction for 18 months for the fourth officer. Following the service of the disciplinary actions, the hiring authority and all four officers entered into settlement agreements which modified the penalty to a letter of reprimand for the first three officers, and a 5 percent salary reduction for six months for the fourth officer. In exchange, all four officers agreed not to appeal to the State Personnel Board. The OIG concurred with these settlements because of mitigating information presented at the *Skelly* hearing.

## Disciplinary Assessment

Overall, the department complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2011-05-22** | **11-2003-IR** | 1. **Neglect of Duty** | 1. **Sustained** | **Salary Reduction** | **Insufficient** |

## Facts of the Case

On May 22, 2011, an officer allegedly failed to properly handle a firearm during training. Allegedly, an officer was cleaning his firearm in a classroom following a training session when he accidentally discharged a round. The round struck a metal chair in the classroom, broke into fragments, and a fragment struck another officer in the foot causing a minor injury.

## Disposition

The hiring authority determined there was sufficient evidence to sustain the allegation imposed a 5 percent salary reduction for three months. Before the effective date of the disciplinary action, the officer and the hiring authority entered into a settlement agreement in which the hiring authority agreed to remove the disciplinary action from the officer's personnel file after one year and the officer agreed to waive his appeal rights on this case. The OIG concurred with the terms of the settlement agreement.

## Disciplinary Assessment

OIA Central Intake received this case for review on June 14, 2011, but did not take action until more than 30 days had passed. The case was then returned to the hiring authority for action without further investigation on July 27, 2011, but no investigative or disciplinary findings were made until almost five months later. The employee relations officer also failed to enter key dates into the case management system, failed to provide a draft copy of the disciplinary action to the OIG, and failed to consult with the OIG about the disciplinary action. Additionally, a key clause mandated by the department's policies and procedures was omitted from the settlement agreement.

# CENTRAL REGION

## Assessment Questions

- Was the disciplinary phase conducted with due diligence by the department?

  *The hiring authority waited almost five months to make investigative and disciplinary determinations after OIA Central Intake reviewed and made a recommendation. Due to this long delay, the disciplinary phase was not diligently conducted.*

- If there was a settlement agreement, did the settlement agreement include the key clauses required by DOM?

  *The settlement agreement was missing a key clause required by the department's policies and procedures.*

- Did the department attorney or disciplinary officer provide the OIG with a copy of the draft disciplinary action and consult with the OIG?

  *The employee relations officer did not provide the OIG with a draft copy of the disciplinary action, nor did the employee relations officer consult with the OIG.*

- Did the HA timely consult with the OIG and the department attorney (if applicable) regarding disciplinary determinations prior to making a final decision?

  *OIA Central Intake referred the matter to the hiring authority to take action without further investigation on July 27, 2011. The hiring authority did not consult with the OIG regarding the disciplinary determinations until December 13, 2011, more than 14 days after receipt of the case.*

- Did the HA timely consult with the OIG and department attorney (if applicable), regarding the sufficiency of the investigation and the investigative findings?

  *OIA Central Intake referred the matter to the hiring authority for direct action on July 27, 2011. The hiring authority did not consult with the OIG regarding the sufficiency of the investigation and the investigative findings until December 13, 2011, more than 14 calendar days after receipt of the case.*

- Did the disciplinary officer make an entry into CMS prior to the findings conference accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

  *There is no record in CMS that key dates were ever entered by the employee relations officer.*

- Did OIA Central Intake make a determination regarding the case within 30 calendar days?

  *OIA Central Intake received the request on June 14, 2011, but did not take action until July 27, 2011, more than 30 days after the request.*

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-06-14 | 11-2100-IR | 1. Neglect of Duty | 1. Sustained | Salary Reduction | Sufficient |

## Facts of the Case

On June 14, 2011, a correctional counselor allegedly improperly updated an inmate's file by failing to note that a second inmate, who was an enemy of the first inmate, was now actually housed at the same institution as the first inmate. On June 21, 2011, a second correctional counselor allegedly also improperly updated the first inmate's file by failing to note that the same second inmate, who was an enemy of the first inmate, was now actually housed at the same institution as the first inmate. On July 9, 2011, a sergeant allegedly released the first inmate into the facility where the second inmate was located. Both were listed as enemies of the other. The first inmate assaulted the second inmate with a weapon, resulting in serious bodily injury.

## Disposition

The hiring authority determined there was sufficient evidence to sustain the allegations against the two correctional counselors and the sergeant. The correctional counselors each received a 5 percent salary reduction for five months. At the *Skelly* hearings for the two correctional counselors, each presented evidence that the department's computer system in use at the time of the incident had a delay in updating inmate information which made it impossible to determine what information the correctional counselors would have seen at the time they updated the inmate enemy location. As a result, the hiring authority withdrew the disciplinary actions against the two counselors. The OIG concurred with the decision to withdraw the actions. The sergeant received a 5 percent salary reduction for 12 months. The sergeant filed an appeal with the State Personnel Board. Prior to the hearing, the department and the sergeant entered into a settlement agreement wherein the department agreed to reduce the penalty to a 5 percent salary reduction for three months and the sergeant agreed to withdraw his appeal. The OIG concurred with these terms because of evidentiary issues that became apparent at the pre-hearing settlement conference and mitigating facts presented.

# CENTRAL REGION

## Disciplinary Assessment

The disciplinary actions against the two correctional counselors were ultimately withdrawn after critical information was discovered at their respective *Skelly* hearings. This information could have been discovered earlier through an investigation or at least by conducting interviews with the two correctional counselors. However, the Office of Internal Affairs decided to proceed without any investigation or interviews. In all other critical aspects, the department performed in accordance with the department's policies and procedures. A department attorney was not assigned to this case.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-06-20 | 11-1895-IR | 1. Other Failure of Good Behavior | 1. Sustained | Dismissal | Sufficient |

## Facts of the Case

On June 20, 2011, it was alleged an officer forcibly entered the home of his sister-in-law. Allegedly, the sister-in-law attempted to block the officer's entry into the home, when he grabbed her, pushed her aside, and yelled profanities at her. Once the officer entered the home, he went into the bedroom of the sister-in-law's roommate and allegedly grabbed the roommate's pet snake and killed it. The officer was arrested by outside law enforcement officers. Subsequently, the officer pled guilty to a charge of felony animal cruelty.

## Disposition

The hiring authority sustained the allegations and determined dismissal was the appropriate penalty. The officer was served with a notice of non-punitive termination since he was convicted of a felony crime, he was no longer eligible to be a peace officer. The officer did not file an appeal with the State Personnel Board.

## Disciplinary Assessment

The department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-06-26 | 11-2102-IR | 1. Dishonesty | 1. Sustained | Dismissal | Sufficient |

## Facts of the Case

On June 26, 2011, an officer was allegedly dishonest after he received a letter of instruction and submitted a rebuttal which allegedly contained false information.

## Disposition

This case was consolidated with three other disciplinary actions against the same officer. In this case, the hiring authority determined there was sufficient evidence to sustain the allegation and dismissed the officer. Despite new evidence the officer presented at the *Skelly* hearing, the hiring authority upheld the dismissal. The officer filed an appeal with the State Personnel Board. At the pre-hearing settlement conference, the officer expressed remorse and took responsibility for his actions. The department and the officer entered into a settlement agreement wherein the department agreed to modify the penalty from dismissal to a six-month suspension. Additionally, the officer agreed that any criminal conviction or sustained disciplinary action within the next 24 months would result in an automatic dismissal. Based on the developments at the *Skelly* hearing and pre-hearing settlement conference, the OIG concurred with the settlement.

## Disciplinary Assessment

The hiring authority took four months to make investigative findings and disciplinary determinations on this case. However, this case was consolidated with three other cases against the same officer to reach a global disposition which contributed to the delay.

# CENTRAL REGION

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-07-08 | 11-2101-IR | 1. Neglect of Duty<br>2. Other Failure of Good Behavior | 1. Not Sustained<br>2. Not Sustained | No Penalty Imposed | Insufficient |

## Facts of the Case
On July 8, 2011, an off-duty officer allegedly assaulted his girlfriend in public by grabbing her arm. The officer was arrested, but the district attorney's office declined to prosecute the case.

## Disposition
The hiring authority determined there was insufficient evidence to sustain the allegations.

## Disciplinary Assessment
The department failed to conduct the investigative findings and disciplinary determinations in a timely manner, taking over six months.

## Assessment Questions
- Did the HA timely consult with the OIG and department attorney (if applicable), regarding the sufficiency of the investigation and the investigative findings?

  *The Office of Internal Affairs completed its investigation and referred the matter to the hiring authority on August 19, 2011. The hiring authority did not consult with the OIG and department attorney regarding the sufficiency of the investigation and the investigative findings until February 29, 2012, more than 14 calendar days after receipt of the case.*

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-07-16 | 11-2609-IR | 1. Discourteous Treatment<br>2. Other Failure of Good Behavior | 1. Sustained<br>2. Not Sustained | Letter of Reprimand | Sufficient |

## Facts of the Case
On July 16, 2011, an officer was allegedly involved in a family dispute with his step-daughter. During an argument, it was alleged the officer punched the step-daughter in the face. The matter was referred to the district attorney's office, which declined to file criminal charges.

## Disposition
The hiring authority sustained an allegation of discourteous treatment to a member of the public and issued a letter of reprimand to the officer. Following a *Skelly* hearing, the officer and the hiring authority entered into a settlement agreement wherein the department agreed to remove the letter of reprimand from the officer's personnel file after 18 months, provided that there were no other disciplinary actions against the officer. The OIG concurred in the penalty determinations and the terms of the settlement.

## Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-07-21 | 11-2663-IR | 1. Neglect of Duty | 1. Sustained | Counseling | Sufficient |

## Facts of the Case
On July 21, 2011, an officer allegedly failed to notify floor staff that he opened a grille gate and released inmates. The released inmates then physically attacked other inmates who sustained serious injuries.

## Disposition
Because no written policy existed specifically addressing the opening and closing of grille gates, the hiring authority sustained one modified allegation. The officer received a letter of instruction for failing to communicate with floor officers.

# CENTRAL REGION

## Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-07-25 | 11-2570-IR | 1. Insubordination<br>2. Neglect of Duty | 1. Sustained<br>2. Sustained | Salary Reduction | Sufficient |

### Facts of the Case
On July 25, 2011, a lieutenant allegedly failed to timely complete an incident package regarding an inmate death. Additionally, it was alleged the lieutenant failed to comply with a direct order by a supervisor to have the incident package completed by the close of business on August 17, 2011.

### Disposition
The hiring authority determined there was sufficient evidence to sustain allegations against the lieutenant for insubordination and neglect of duty, and imposed a 10 percent salary reduction for 12 months. The lieutenant filed an appeal with the State Personnel Board. Prior to a hearing, the lieutenant and the department entered into a settlement agreement. The department agreed to modify the penalty to a 10 percent salary reduction for five months, and the lieutenant agreed to withdraw her appeal. The OIG concurred with the settlement because there were mitigating facts and the penalty, although modified, still remained within the same original penalty level.

### Disciplinary Assessment
Overall, the department attorney and hiring authority performed in accordance with departmental policies.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-07-25 | 11-2844-IR | 1. Other Failure of Good Behavior | 1. Sustained | Dismissal | Sufficient |

### Facts of the Case
On July 25, 2011, two officers who resided together allegedly got into a domestic dispute at their home. The first officer allegedly hit the second officer in the arm. The first officer was arrested for the incident and convicted of disturbing the peace, a misdemeanor.

### Disposition
This case was consolidated with three other disciplinary actions against the same officer. In this case, the hiring authority determined there was sufficient evidence to sustain the allegation. The hiring authority dismissed the officer due to a criminal conviction, which arose from a domestic dispute, because it disqualified the officer from serving as a peace officer. At the *Skelly* hearing, the officer provided new information that his conviction had since been changed to another misdemeanor offense which would not preclude him from being a peace officer. As a result, the non-punitive termination was withdrawn, but due to the officer's other disciplinary actions with which this case was combined, the dismissal was upheld. The officer filed an appeal with the State Personnel Board. At the pre-hearing settlement conference, the officer expressed remorse and took responsibility for his actions. The department and the officer entered into a settlement agreement wherein the department agreed to modify the penalty from dismissal to a six-month suspension. Additionally, the officer agreed that any criminal conviction or sustained disciplinary action within the next 24 months would result in automatic dismissal. Based on the developments at the *Skelly* hearing and pre-hearing settlement conference, the OIG concurred with the settlement.

### Disciplinary Assessment
Overall, the department attorney and hiring authority performed in accordance with departmental policies.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-08-18 | 11-3182-IR | 1. Neglect of Duty | 1. Not Sustained | No Penalty Imposed | Insufficient |

### Facts of the Case
On August 18, 2011, an officer allegedly allowed inmates that belonged to different prison gangs to be out of their cells at the same time. As a result, one inmate attacked a second inmate, requiring officers to use force to stop the assault.

# CENTRAL REGION

## Disposition

The hiring authority determined there was insufficient evidence to sustain the allegations.

## Disciplinary Assessment

The hiring authority referred the matter to the Office of Internal Affairs over three months after the discovery of the alleged misconduct with no justification for the delay. OIA Central Intake reviewed the hiring authority's request for investigation and determined sufficient information existed for the hiring authority to take action without an investigation and returned the matter. Upon consultation with the OIG, the hiring authority again referred the matter to OIA Central Intake, requesting that, at a minimum, an interview be conducted with the officer who allegedly engaged in misconduct. This request was sent because it was possible that some of the inmates the officer allowed into the dayroom could have been porters who would have been allowed access to the dayroom under certain circumstances. However, the request for investigation was denied on February 29, 2012. Without knowing why the inmates were released, no allegations could be sustained.

## Assessment Questions

- Did the disciplinary officer make an entry into CMS prior to the findings conference accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

  *The disciplinary officer did not accurately make an entry into CMS to confirm the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time prior to the findings conference .*

- If the case was submitted to OIA Central Intake or to the Chief of OIA for reconsideration, was an appropriate decision made regarding the request?

  *The case was initially referred to the hiring authority to take action without any investigation. The hiring authority sent back the case, requesting that an investigation be opened. An investigation was necessary to determine if any of the inmates that the officer allowed into the dayroom were actually porters who may have been allowed access under certain circumstances. OIA Central Intake declined to open an investigation, and even declined to interview just the officer.*

- Did OIA Central Intake make an appropriate initial determination regarding the case?

  *OIA Central Intake declined to conduct an investigation, including a limited investigation consisting of the taking of the statement of the officer.*

- Was the matter referred to the OIA as soon as reasonably practical, within 45 calendar days of the date of discovery?

  *The discovery of the alleged misconduct occurred on the day of the incident, on August 18, 2011. The matter was referred to the Office of Internal Affairs on December 1, 2011, more than 45 calendar days after the discovery of the alleged misconduct.*

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2011-09-04** | **12-0630-IR** | 1. **Neglect of Duty**<br>2. **Other Failure of Good Behavior** | 1. **Sustained**<br>2. **Sustained** | **Salary Reduction** | **Insufficient** |

## Facts of the Case

On September 4, 2011, an officer allegedly released an inmate from the lower tier shower and a second inmate from the upper tier shower, allowing inmate movement without the presence of floor officers. The two inmates from the showers became engaged in a fight with two other inmates. The inmates used stabbing-type inmate-manufactured weapons during the fight. Officers used multiple less-lethal rounds and pepper spray to stop the fight. All four inmates sustained injuries requiring them to be transported to local hospitals for treatment.

## Disposition

The hiring authority sustained the allegations and imposed a 5 percent salary reduction for 12 months. Following a *Skelly* hearing, the hiring authority agreed to settle the case for a 5 percent salary reduction for 11 months and the officer agreed not to file an appeal with the State Personnel Board. The OIG concurred with the settlement based on information presented at the *Skelly* hearing and because the penalty was only slightly modified.

## Disciplinary Assessment

The hiring authority referred the matter to the Office of Internal Affairs for investigation more than five months after the discovery of the alleged misconduct.

# CENTRAL REGION

## Assessment Questions

- Was the matter referred to the OIA as soon as reasonably practical, within 45 calendar days of the date of discovery?

   *The discovery of the alleged misconduct occurred on September 4, 2011. The matter was referred to the Office of Internal Affairs on February 15, 2012, more than five months after the discovery of the alleged misconduct.*

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-10-30 | 12-0190-IR | 1. **Other Failure of Good Behavior** | 1. Sustained | Dismissal | Sufficient |

### Facts of the Case
It was alleged that on October 30, 2011, a sergeant, while off duty, obtained gasoline for his personal automobile by use of a stolen public transit vanpool gas credit card. The sergeant was convicted of grand theft as a felony for his theft of the gasoline.

### Disposition
Following his conviction for felony theft, the sergeant resigned from his position before the hiring authority could take disciplinary action. The hiring authority sustained the allegations of failure of good behavior for the theft and the conviction, and determined that dismissal was the appropriate penalty.

### Disciplinary Assessment
The hiring authority and department attorney performed their duties in accordance with the department's policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-11-13 | 11-3109-IR | 1. **Under the Influence of Controlled Substance** 2. **Possession of Controlled Substance** | 1. Sustained 2. Sustained | No Penalty Imposed | Sufficient |

### Facts of the Case
On November 13, 2011, outside law enforcement responded to a fire alarm at a motel and arrested an off-duty officer who was there and allegedly under the influence of illegal narcotics and in possession of cocaine.

### Disposition
The hiring authority determined there was sufficient evidence to sustain the allegations. However, the officer resigned prior to the determination of penalty; therefore, disciplinary action was not taken. A letter indicating the officer resigned under adverse circumstances was placed in his official personnel file.

### Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-11-23 | 11-3180-IR | 1. **Neglect of Duty** | 1. Sustained | Counseling | Sufficient |

### Facts of the Case
On November 23, 2011, an officer allegedly opened a cell door in a housing unit, in violation of procedure. As a result, two inmates exited their cell in an attempt to attack two other inmates.

### Disposition
The hiring authority determined there was sufficient evidence to sustain the allegation that the officer neglected his duty, and issued a formal counseling statement to the officer.

# CENTRAL REGION

| Disciplinary Assessment |
| --- |
| Overall, the department substantially complied with policies and procedures. |

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
| --- | --- | --- | --- | --- | --- |
| 2011-12-27 | 12-0189-IR | 1. Neglect of Duty<br>2. Other Failure of Good Behavior<br>3. Use/Under the Influence of Controlled Substance<br>4. Possession of Controlled Substance | 1. Sustained<br>2. Sustained<br>3. Sustained<br>4. Sustained | Dismissal | Sufficient |

## Facts of the Case

On December 27, 2011, an off-duty officer was arrested by outside law enforcement officers for possession of methamphetamine and morphine, being under the influence of a narcotic, and possession of drug paraphernalia. Following his arrest, the officer allegedly failed to report the matter to the hiring authority.

## Disposition

The hiring authority sustained allegations of being under the influence of a controlled substance, possession of a controlled substance, methamphetamine, without a prescription, other failure of good behavior, and neglect of duty for failing to report the arrest. An allegation that the officer possessed morphine without a prescription was not sustained. The hiring authority served a notice of dismissal on the officer. The officer filed an appeal with the State Personnel Board. At a pre-hearing settlement conference the hiring authority allowed the officer to resign in lieu of dismissal and the officer withdrew his appeal. The OIG concurred in the settlement.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

# HEADQUARTERS

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-07-14 | 10-3140-IR | 1. **Disclosure of Confidential Information**<br>2. **Dishonesty** | 1. **Sustained**<br>2. **Not Sustained** | **Suspension** | **Insufficient** |

## Facts of the Case

It was alleged on July 14, 2010, a high-level manager told a lieutenant that he was under criminal investigation by an outside law enforcement agency and that there was a warrant issued for his arrest. It was further alleged the high-level manager ordered a captain to obtain the outside law enforcement reports and then lied to the outside law enforcement agency denying he had made the request.

## Disposition

The hiring authority sustained the allegation of disclosing confidential information but did not sustain the allegation that the high-level manager was dishonest. The OIG did not concur with the hiring authority's investigative findings and requested a higher level of review. At the higher level of review, the department determined the investigative findings would remain as initially determined and a ten working-day suspension was imposed. Following a *Skelly* hearing, the hiring authority reduced the penalty to a five working-day suspension. The high-level manager filed an appeal with the State Personnel Board. Prior to the hearing commencing, the department agreed to remove the disciplinary action from the high-level manager's file and he withdrew his appeal. The OIG concurred with the settlement.

## Disciplinary Assessment

The initial hiring authority did not sustain the dishonesty allegation which was supported by the investigation and the hiring authority's supervisor agreed with that decision. Further, the initial penalty of a ten working-day suspension was reduced to a five working-day suspension. The OIG did not concur with either decision. Also, the department did not timely complete the investigative findings on this matter. The initial hiring authority reviewed this matter in March 2011, but the ultimate findings were not made until July 2011. The department only had one day left to serve the manager with notice of intent to take disciplinary action before the expiration of the disciplinary deadline.

# HEADQUARTERS

## Assessment Questions

- Was the disciplinary phase conducted with due diligence by the department?

  *The department significantly delayed the investigative findings and penalty conference, resulting in the issuance of a letter of intent one day prior to the deadline for taking disciplinary action.*

- Did the HA cooperate with and provide continual real-time consultation with the OIG throughout the disciplinary phase, until all proceedings were completed, except for those related to a writ?

  *During the disciplinary phase, the department removed the high-level manager from his classification and assigned him to a lower classification. The hiring authority did not notify the OIG of this decision even though preliminary discussions on the penalty had already commenced.*

- If an executive review occurred, was the appropriate decision made at the executive review?

  *Following the higher level of, the department did not sustain the dishonesty allegation. The OIG did not concur with the decision.*

- If the case settled, did the department attorney or disciplinary officer properly complete the CDC Form 3021?

  *The OIG was not provided a copy of the CDC Form 3021.*

- Was the OIG provided with a draft of the pre-hearing/settlement conference statement prior to it being filed?

  *The OIG was not provided with a copy of the pre-hearing settlement conference statement.*

- Did the department file a written pre-hearing/settlement conference statement with the SPB containing all required information including, but not limited to, a summary of stipulated facts, time estimate, number of witness with a brief statement of expected testimony, list of documentary evidence, and statement of significant evidentiary issues?

  *The OIG was not notified if a pre-hearing settlement conference statement was filed.*

- Did the HA timely consult with the OIG and the department attorney (if applicable) regarding disciplinary determinations prior to making a final decision?

  *The Office of Internal Affairs completed its investigation and referred the matter to the hiring authority on February 15, 2011. The hiring authority did not consult with the OIG and department attorney regarding the disciplinary determinations until March 9, 2011, more than 14 calendar days after receipt of the case.*

- Did the HA, who participated in the findings conference, appropriately determine the investigative findings for each allegation?

  *The hiring authority determined there was insufficient evidence to sustain the finding of dishonesty.*

- If the HA consulted with the OIG concerning the sufficiency of the investigation and the investigative findings, was the HA adequately prepared?

  *The hiring authority did not review the relevant transcripts and was unaware of critical facts of the case.*

- Did the HA timely consult with the OIG and department attorney (if applicable), regarding the sufficiency of the investigation and the investigative findings?

  *The Office of Internal Affairs completed its investigation and referred the matter to the hiring authority on February 15, 2011. The hiring authority did not consult with the OIG and department attorney regarding the sufficiency of the investigation and the investigative findings until March 9, 2011, more than 14 calendar days after receipt of the case.*

# HEADQUARTERS

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-11-30 | 11-0796-IR | 1. **Other Failure of Good Behavior** <br> 2. **Disclosure of Confidential Information** <br> 3. **Misuse of State Equipment or Property** | 1. **Sustained** <br> 2. **Sustained** <br> 3. **Sustained** | **Dismissal** | **Sufficient** |

## Facts of the Case

It was alleged that between November 30, 2010, and February 16, 2011, a parole administrator used his state-issued computer to disseminate inappropriate emails of pornographic and sexually explicit images. It was further alleged that the parole administrator used his state-issued computer to access pornographic websites, send pornographic images to co-workers, solicit sexually based acts, and purchased narcotics and medications without a prescription.

## Disposition

The hiring authority sustained all of the allegations with the exception of purchasing narcotics and medications without a prescription. The parole administrator was served a notice of dismissal, which he appealed to the State Personnel Board. At the pre-hearing settlement conference, the department and the parole administrator entered into a settlement agreement. The department reduced the penalty of dismissal to a nine-month suspension, and the parole administrator agreed to resign at the end of the suspension. The parole administrator also agreed to waive any rights to back pay and benefits, and agreed to not seek employment with the department in the future. The OIG concurred with the settlement.

## Disciplinary Assessment

Overall, the department complied with policies and procedures.

# NORTH REGION

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2008-09-27 | 11-1732-IR | 1. Failure to Report<br>2. Discourteous Treatment<br>3. Battery on Another Person<br>4. Other Failure of Good Behavior | 1. Sustained<br>2. Sustained<br>3. Sustained<br>4. Not Sustained | Salary Reduction | Sufficient |

## Facts of the Case

On September 27, 2008, at a local bar, one officer allegedly approached a man from behind then punched and threw him on the ground. When outside law enforcement arrived, the officer reported that the man fell on a pool table. Another officer admitted to punching the man after he was knocked to the ground. Additionally, it was alleged that the officers bribed the victim so that he would not file a criminal complaint.

## Disposition

The hiring authority sustained the allegations against the officers, except for the bribery charge, and imposed a 5 percent salary reduction for 36 months. The officers each filed an appeal with the State Personnel Board. The officers presented new evidence that may have changed the deadline to take disciplinary action. This information was not known to the hiring authority, special agent, or department attorney prior to the pre-hearing settlement conference. Therefore, the hiring authority reduced the penalty against each officer to a letter of reprimand that could be removed after one year provided the officers did not engage in any further acts of misconduct. The OIG found the agreement to be reasonable based on new evidence.

## Disciplinary Assessment

Although the hiring authority failed to serve the officers within 30 days of the decision to take disciplinary action, the delay did not adversely impact the case.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2009-04-01 | 10-0517-IR | 1. Dishonesty<br>2. Neglect of Duty | 1. Sustained<br>2. Sustained | Dismissal | Sufficient |

## Facts of the Case

During April 2009 through June 2010, a parole agent allegedly failed to properly supervise parolees and falsified documentation. The parole agent documented home visits, a work place visit, and anti-narcotic testing that allegedly were not performed.

## Disposition

The hiring authority sustained the allegations and served the parole agent with a notice of dismissal. The parole agent filed an appeal with the State Personnel Board. Due to evidentiary problems that developed after service of the disciplinary action, the department entered into a settlement agreement with the parole agent. The department agreed to reduce the penalty from dismissal to a suspension without pay for 12 pay periods in exchange for the parole agent agreeing to withdraw his appeal. OIG concurred with the terms of the settlement agreement because of the evidentiary problems.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

# NORTH REGION

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-05-25 | 10-1471-IR | 1. **Unreasonable Use of Force** <br> 2. **Failure to Report** | 1. **Sustained** <br> 2. **Not Sustained** | **Salary Reduction** | **Sufficient** |

## Facts of the Case

It was alleged that on March 25, 2010, two officers used unnecessary force on a handcuffed ward. Specifically, it was alleged that the officers pushed the ward against a window with such force the window broke, causing the ward to sustain a laceration. It was further alleged that two other officers observed the incident and failed to report their observations and also failed to report their own use of force.

## Disposition

The hiring authority sustained the allegations against four of the officers. The first officer received a 10 percent salary reduction for 18 months. The second officer received a 5 percent salary reduction for 18 months. The third officer received a 5 percent salary reduction for 12 months. The fourth officer received a 10 percent salary reduction for seven months. The hiring authority determined there was insufficient evidence to sustain the allegations against the fifth officer. The four officers filed appeals with the State Personnel Board. The department entered into settlement agreements with three of the four officers. The department agreed to reduce the penalty for the second officer to a 5 percent salary reduction for nine months, to reduce the penalty for the third officer to a 5 percent salary reduction for six months, and to reduce the penalty for the fourth officer to a 10 percent salary reduction for four months in exchange for each officer agreeing to withdraw their appeal. The first officer's case was presented to the State Personnel Board, which found that the department failed to meet its burden of proof and revoked the penalty. The ward failed to appear for the hearing. The OIG concurred with the settlements and found the decision of the State Personnel Board to be reasonable because of the evidentiary problems.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-05-29 | 10-2368-IR | 1. **Other Failure of Good Behavior** <br> 2. **Dishonesty** <br> 3. **Driving Under the Influence** | 1. **Sustained** <br> 2. **Unfounded** <br> 3. **Unfounded** | **Salary Reduction** | **Sufficient** |

## Facts of the Case

On May 29, 2010, a lieutenant was arrested for allegedly driving under the influence. During the arrest, it was alleged that the lieutenant became resistive with the arresting officers. Also, it was alleged that the lieutenant was dishonest with the arresting officers when he stated he was not driving the vehicle.

## Disposition

The hiring authority sustained the allegation that the lieutenant engaged in disorderly conduct in public; however, the allegations of driving under the influence of alcohol and dishonesty were not sustained. The lieutenant was given a 10 percent salary reduction for 13 months. The lieutenant filed an appeal with the State Personnel Board. After hearing, the State Personnel Board upheld the allegations, but reduced the penalty to a 5 percent salary reduction for six months.

## Disciplinary Assessment

The hiring authority complied with policies and procedures in this matter. The department attorney failed to provide a copy of the draft disciplinary action and draft and final copies of the pre-hearing hearing settlement conference statement to the OIG for review and provide feedback.

# NORTH REGION

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-06-12 | 11-0526-IR | 1. Failure to Report<br>2. Neglect of Duty<br>3. Discourteous Treatment<br>4. Dishonesty | 1. Sustained<br>2. Sustained<br>3. Sustained<br>4. Not Sustained | Demotion | Sufficient |

## Facts of the Case

On June 12, 2010, it was alleged that a lieutenant witnessed two officers forcibly place an inmate against a wall and failed to report his observations. It was further alleged that another lieutenant observed the incident and was dishonest in her report of the incident. Also, the lieutenant then allegedly took her original report from the captain's office and shredded it. Then she was allegedly discourteous to the captain when she was asked to return the original report. Further it was alleged that three officers also witnessed the use-of-force and failed to report it.

## Disposition

The hiring authority sustained an allegation of neglect of duty against the lieutenant who witnessed the officer's use of force and imposed a 5 percent salary reduction for six months. However, following a *Skelly* hearing, during which the lieutenant accepted responsibility and expressed remorse, the hiring authority agreed to reduce the penalty to a 5 percent salary reduction for three months. The hiring authority sustained two allegations of neglect of duty and discourteous treatment against the other lieutenant and demoted her to sergeant. However, following a *Skelly* hearing, the hiring authority modified the penalty and imposed a 10 percent salary reduction for 24 months. The lieutenant filed an appeal with the State Personnel Board. The department later entered into a settlement agreement and agreed to modify the penalty to a 5 percent salary reduction for 18 months. The hiring authority sustained an allegation of neglect of duty against one of the officers and issued him a letter of instruction. The hiring authority did not sustain the allegations against the two other officers. The OIG concurred with the settlements.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-06-14 | 10-2863-IR | 1. Dishonesty<br>2. Contraband<br>3. Over-Familiarity<br>4. Neglect of Duty<br>5. Misuse of State Equipment or Property | 1. Sustained<br>2. Sustained<br>3. Sustained<br>4. Sustained<br>5. Not Sustained | Dismissal | Sufficient |

## Facts of the Case

On June 14, 2010, two dental technicians allegedly were involved in attempting to smuggle narcotics and tobacco into the institution.

## Disposition

The hiring authority determined there was sufficient evidence to sustain an allegation of neglect of duty against the first dental technician for allowing inmates to open packages without supervision. The remaining allegations were not sustained. The hiring authority imposed a 5 percent salary reduction for 12 months. The department and dental technician entered into a settlement agreement in which the department reduced the penalty from a 5 percent salary reduction for 12 months to a 5 percent salary reduction for nine months. The dental technician agreed to withdraw his appeal from the State Personnel Board. The hiring authority sustained allegations against the second dental technician for engaging in an overly familiar relationship with inmates, facilitating the introduction of contraband into the institution through institutional mail, allowing inmates access to institutional mail, and providing false or misleading statements during an investigative interview. The hiring authority served the second dental technician with a notice of dismissal. He did not file an appeal with the State Personnel Board. The OIG found the settlement with the first dental technician reasonable.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

# NORTH REGION

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-06-18 | 10-2677-IR | 1. Discourteous Treatment<br>2. Threat or intimidation toward other person | 1. Sustained<br>2. Not Sustained | Salary Reduction | Insufficient |

## Facts of the Case

It was alleged that on June 18, 2010, a youth counselor threatened his girlfriend with violence.

## Disposition

The hiring authority determined there was insufficient evidence to sustain the allegation that the youth counselor threatened his girlfriend, but determined there was sufficient evidence to sustain an allegation that the youth counselor was discourteous. The hiring authority imposed a 5 percent salary reduction for 12 months. The disciplinary action was withdrawn by the State Personnel Board due to the department attorney's failure to appear at the pre-hearing settlement conference.

## Disciplinary Assessment

The department did not substantially comply with policies and procedures. The department's attorney failed to appear at the pre-hearing settlement conference. The department attorney then filed an untimely motion for relief from default and failed to show good cause why relief should be granted. Therefore, the State Personnel Board withdrew the disciplinary action as a result of the failure to appear at the pre-hearing settlement conference.

# NORTH REGION

## Assessment Questions

- Did the department attorney or disciplinary officer cooperate with and provide continual real-time consultation with the OIG throughout the disciplinary phase, until all proceedings were completed, except for those related to a writ?

  *The department attorney did not advise the OIG of the pre-hearing settlement conference date upon receipt of the notice of hearing from the State Personnel Board. The department attorney did not inform the OIG of the default that resulted from their failure to appear at the pre-hearing settlement conference and did not provide the OIG with a copy of the motion for relief from default until specifically requested by the OIG after the OIG inquired as to the status of the case and the appeal.*

- Did the department's advocate appropriately represent the department in petition for rehearing proceedings before the SPB?

  *The department attorney failed to appear at the pre-hearing settlement conference, filed an untimely motion for relief from default, and failed to show good cause why relief should be granted, resulting in withdrawal of the disciplinary action by the State Personnel Board.*

- Was a petition for rehearing filed with the SPB by any party?

  *The department attorney filed a motion for relief from default, which was denied as insufficient and untimely.*

- Was a petition for rehearing filed with the SPB by the department?

  *The department attorney filed a motion for relief from default, which was denied as insufficient and untimely.*

- Did SPB modify the penalty decision, other than by adopting a settlement agreement?

  *Due to the department attorney's failure to appear at the pre-hearing settlement conference, the State Personnel Board withdrew the disciplinary action.*

- Did SPB's decision uphold all of the factual allegations sustained by the HA?

  *Due to the failure to appear at the pre-hearing settlement conference, the State Personnel Board withdrew the disciplinary action.*

- Did the SPB impose any sanction or penalty on the department for failure to comply with the SPB regulations, or deem any filing by the department untimely?

  *Due to the failure to appear at the pre-hearing settlement conference, the State Personnel Board withdrew the disciplinary action and denied the department's motion for relief from default.*

- Did the department's advocate adequately and appropriately address legal issues prior to and during the SPB hearing?

  *The department attorney failed to appear at the pre-hearing settlement conference due to a calendaring error. The department attorney filed a motion for relief from default, but it was not deemed sufficient or timely by the State Personnel Board, which withdrew the disciplinary action.*

- Did the department's advocate who appeared at the pre-hearing/settlement conference have full settlement authority, or the ability to obtain authority immediately by telephone?

  *The department attorney failed to appear at the pre-hearing settlement conference.*

- Did the department's advocate who appeared at the pre-hearing/settlement conference have full familiarity with the facts and issues in the case?

  *The department attorney failed to appear at the pre-hearing settlement conference.*

- Was the OIG provided with a draft of the pre-hearing/settlement conference statement prior to it being filed?

  *OIG was not provided with a draft of the pre-hearing settlement conference statement prior to it being filed.*

- Was the draft disciplinary action provided to the OIG for review appropriately drafted as described in the DOM?

  *The department attorney failed to provide OIG with a draft copy of the disciplinary action.*

- Did the department attorney or disciplinary officer provide the OIG with a copy of the draft disciplinary action and consult with the OIG?

  *The department attorney failed to provide a draft copy of the disciplinary action in a timely fashion. The adverse action was served without providing the OIG with a copy of the draft notice of adverse action.*

# NORTH REGION

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-07-14 | 10-2697-IR | 1. Failure to Report<br>2. Other Failure of Good Behavior<br>3. Possession of Controlled Substances<br>4. Overfamiliarity | 1. Sustained<br>2. Not Sustained<br>3. Not Sustained<br>4. Not Sustained | Salary Reduction | Sufficient |

## Facts of the Case

On July 14, 2010, an off-duty officer reportedly found photographs depicting a marijuana growing operation at his residence which he co-owned with his estranged spouse, a fellow officer. The officer allowed his estranged spouse to dispose of the evidence which was never recovered. The officer also alleged that he personally observed his spouse use marijuana for several years. Furthermore, the officer alleged that his spouse was overly familiar with inmates and produced handwritten notes that were purportedly written by inmates to his spouse. He also reported that on one occasion he returned home to find a former inmate in their home visiting his spouse. Lastly, the officer alleged that he unknowingly ingested marijuana-laced brownies baked by his estranged wife.

## Disposition

The hiring authority sustained an allegation against the officer for failing to report the alleged misconduct of his estranged spouse, a fellow officer, and imposed a 5 percent salary reduction for 30 months. However, following the *Skelly* hearing, at which time the officer expressed regret and accepted responsibility for his actions, the hiring authority and the officer entered into a settlement agreement. The hiring authority agreed to reduce the penalty to a 5 percent salary reduction for 18 months and the officer agreed not to file an appeal with the State Personnel Board. Based on the developments at the *Skelly* hearing, the OIG concurred with the settlement. The hiring authority did not sustain the allegations against the officer's estranged spouse due to insufficient evidence.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-07-16 | 10-2695-IR | 1. Dishonesty<br>2. Other Failure of Good Behavior<br>3. Battery on Other Person | 1. Sustained<br>2. Sustained<br>3. Sustained | Dismissal | Sufficient |

## Facts of the Case

On July 16, 2010, an off-duty officer allegedly punched his wife in the face, pinned her down, and bit her arm. The wife sustained visible injuries on her face and a bite mark on her arm. It is further alleged that the officer was dishonest in his statement to outside law enforcement officers when he alleged that his wife was the aggressor and he was the victim. The officer was subsequently arrested by outside law enforcement on domestic violence charges and was convicted of false imprisonment, a misdemeanor.

## Disposition

The hiring authority determined there was sufficient evidence to sustain the allegations and determined dismissal was the appropriate penalty. The officer filed an appeal with the State Personnel Board. Due to evidentiary problems that arose after the penalty conference, the hiring authority entered into a settlement agreement whereby the penalty was reduced to a suspension without pay for 30 days. Given the evidentiary problems, the OIG found the settlement agreement to be reasonable.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

# NORTH REGION

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2010-08-18** | **10-3035-IR** | 1.  **Dishonesty** | 1.  **Sustained** | **Salary Reduction** | **Insufficient** |

## Facts of the Case

On August 18, 2010, an officer discovered a rodent in a coffee pot located in a sergeant's office. The officer allegedly expressed an opinion that a particular sergeant had placed the rodent in the coffee pot, but later denied making that statement during an interview with the Office of Internal Affairs.

## Disposition

The hiring authority determined there was insufficient evidence to conclusively identify the person or persons responsible for the misconduct. However, an officer who allegedly identified a possible suspect in the case later recanted his statement during an interview with the Office of Internal Affairs. The OIG recommended the hiring authority file an allegation of dishonesty against the officer; however, the hiring authority refused. The matter was elevated to the hiring authority's supervisor for review and he agreed with the hiring authority's decision to not file the additional allegation. The matter was elevated again to a higher level of review. After reviewing the investigation, the department filed the dishonesty allegation against the officer. The allegation was sustained and a 10 percent  salary reduction for 25 months was imposed. Following a *Skelly* hearing, the hiring authority agreed to reduce the penalty to a 5 percent salary reduction for 48 months. The OIG concurred in the settlement due to it being a minor modification.

## Disciplinary Assessment

The hiring authority did not consult with the department attorney or the OIG regarding the sufficiency of the investigation or findings in a timely manner. Further, the hiring authority improperly deemed the investigation insufficient and the department attorney did not provide appropriate consultation to the hiring authority regarding the sufficiency of the investigation. The hiring authority also failed to identify an officer as a subject based upon his dishonesty during an interview with the Office of Internal Affairs and the department attorney did not provide meaningful consultation to the hiring authority regarding disciplinary determination. The OIG requested a higher level of review which ultimately resulted in the proper determination and penalty.

# NORTH REGION

## Assessment Questions

- If an executive review was requested in the case, did OIG request the executive review?

  *The OIG requested a higher level of review of the hiring authority's decision to not sustain an allegation of dishonesty against an officer who was dishonest during his interview with the Office of Internal Affairs.*

- Was an executive review requested to raise an issue to a higher level of management in this case?

  *The OIG requested a higher level of review of the hiring authority's decision to not sustain an allegation of dishonesty against an officer who was dishonest during his interview with the Office of Internal Affairs.*

- Did the department attorney or disciplinary officer provide the OIG with a copy of the draft disciplinary action and consult with the OIG?

  *The department attorney forwarded the action to the hiring authority prior to providing a copy to the OIG for consultation.*

- Was the CDCR Form 403 documenting the penalty properly completed?

  *The form did not contain accurate identifying information. The hiring authority subsequently corrected the form.*

- Did the department attorney provide to the HA and OIG written confirmation of penalty discussions?

  *The department attorney failed to provide any written confirmations of the penalty discussions to the OIG.*

- Did the department attorney provide appropriate legal consultation to the HA regarding disciplinary determinations?

  *The department attorney did not provide meaningful consultation to the hiring authority regarding disciplinary determinations.*

- Did the HA timely consult with the OIG and the department attorney (if applicable) regarding disciplinary determinations prior to making a final decision?

  *The Office of Internal Affairs completed its investigation and referred the matter to the hiring authority on June 1, 2011. The hiring authority did not consult with the OIG and department attorney regarding the disciplinary determinations until July 6, 2011, more than 14 days after receipt of the case.*

- Was the CDCR Form 402 documenting the findings properly completed?

  *The form did not contain accurate identifying information. The hiring authority subsequently corrected the form.*

- Did the HA, who participated in the findings conference, appropriately determine the investigative findings for each allegation?

  *The hiring authority failed to sustain an allegation of dishonesty against an officer.*

- Did the HA, who participated in the findings conference, identify the appropriate subjects and factual allegations for each subject based on the evidence?

  *The hiring authority failed to identify an officer as a subject based upon his dishonesty during an interview with the Office of Internal Affairs.*

- Did the VA provide appropriate legal consultation to the HA regarding the sufficiency of the investigation and investigative findings?

  *The department attorney did not provide appropriate consultation to the hiring authority regarding the sufficiency of the investigation. The department attorney thought that three officers who had already been interviewed needed to be re-interviewed. The OIG and the Office of Internal Affairs disagreed. All three officers had been quite clear in their responses during their initial interviews. The additional interviews were not conducted. The department's final reviewer at the higher review level also believed that the three officers were clear in their interviews.*

- Did the HA properly determine if additional investigation was necessary?

  *The hiring authority improperly determined an additional investigation was necessary. The hiring authority thought that three officers who had already been interviewed needed to be re-interviewed. The OIG and the Office of Internal Affairs disagreed. All three officers had been quite clear in their responses during their initial interviews. No additional information needed to be gleaned. The additional interviews were not conducted. The department's final reviewer at the higher review level also believed that the three officer's were clear in their interviews.*

- Did the HA properly deem the OIA investigation sufficient or insufficient?

  *The hiring authority improperly deemed the investigation insufficient. The hiring authority thought that three officers who had already been interviewed needed to be re-interviewed. The OIG and the Office of Internal Affairs disagreed. All three officers had been quite clear in their responses during their initial interviews. The additional interviews were not conducted. The department's final reviewer at the higher review level also believed that the three officers were clear in their interviews.*

# NORTH REGION

- Did the HA timely consult with the OIG and department attorney (if applicable), regarding the sufficiency of the investigation and the investigative findings?

  *The Office of Internal Affairs completed its investigation and referred the matter to the hiring authority on June 1, 2011. The hiring authority did not consult with the OIG and department attorney regarding the sufficiency of the investigation and the investigative findings until July 6, 2011, more than 14 calendar days after receipt of the case.*

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-08-28 | 11-0204-IR | 1. Neglect of Duty<br>2. Dishonesty | 1. Sustained<br>2. Not Sustained | Salary Reduction | Sufficient |

## Facts of the Case

On August 28, 2010, a condemned inmate was found hanging in his cell and was later pronounced dead at the scene. A sergeant allegedly falsified a welfare report and also failed to maintain inmate assessment forms. It was alleged that three officers failed to conduct hourly visual checks on inmates.

## Disposition

The hiring authority sustained the allegation against one officer who failed to conduct visual cell checks and imposed a 10 percent salary reduction for six months. The officer did not file an appeal with the State Personnel Board. The hiring authority found there was insufficient evidence to sustain the allegation against the other two officers. The hiring authority sustained the allegation of failing to ensure that an inmate count was conducted against the sergeant and imposed a 10 percent salary reduction for 12 months. However, following a *Skelly* hearing, the hiring authority agreed to reduce the penalty to a 10 percent salary reduction for six months and the sergeant agreed not to file an appeal with the State Personnel Board.  Based on the factors presented at the *Skelly* hearing, the OIG concurred with the settlement.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-11-02 | 11-0010-IR | 1. Neglect of Duty | 1. Sustained | Salary Reduction | Sufficient |

## Facts of the Case

On November 2, 2010, an officer and three sergeants allegedly failed to notice that an officer had erroneously released an inmate to parole even though outside law enforcement had placed a warrant hold on the inmate's release.

## Disposition

The hiring authority determined there was sufficient evidence to sustain the allegations against the officer and the three sergeants. The officer received a 5 percent salary reduction for 13 months. However, following a *Skelly* hearing, the hiring authority agreed to reduce the penalty to a 5 percent salary reduction for six months. Two sergeants received a 5 percent salary reduction for 18 months, and one sergeant received a 5 percent salary reduction for 24 months. The three sergeants filed appeals with the State Personnel Board. One sergeant settled his case from a 5 percent salary reduction for 24 months to 5 percent salary reduction for 13 months. The second sergeant settled his case from a 5 percent salary reduction for 18 months to a 5 percent salary reduction for nine months. The third sergeant settled his case from a 5 percent salary reduction for 18 months to a 5 percent salary reduction for six months. Based on factors presented at the *Skelly* hearing, and new evidentiary issues, the OIG concurred with the settlements.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

# NORTH REGION

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-11-04 | 11-1560-IR | 1. Sexual Misconduct<br>2. Contraband | 1. Sustained<br>2. Not Sustained | Dismissal | Insufficient |

## Facts of the Case

On November 4, 2010, a supervising cook allegedly engaged in a sexual relationship with an inmate and introduced contraband into the secured perimeter of the institution for inmates.

## Disposition

The hiring authority determined there was sufficient evidence to sustain the allegation of engaging in a sexual relationship with an inmate and dismissed the supervising cook. The hiring authority determined there was insufficient evidence to sustain the allegation that the supervising cook introduced contraband into the institution. The hiring authority entered into a settlement agreement allowing the supervising cook to resign in lieu of dismissal. The OIG did not concur with the settlement.

## Disciplinary Assessment

The department entered into a settlement agreement with the supervising cook in which she agreed to resign in lieu of dismissal. The OIG did not find the settlement reasonable because the supervising cook was convicted of a misdemeanor for the underlying criminal misconduct in this case, and resignation rather than dismissal provides the supervising cook greater ease in gaining future re-employment with the state.

## Assessment Questions

- Was an executive review requested to raise an issue to a higher level of management in this case?

  *While OIG did not concur with the settlement, it was decided that the disagreement did not rise to the level of warranting a request for a higher level of review.*

- If the penalty was modified by department action or a settlement agreement, did OIG concur with the modification?

  *The OIG did not concur with the settlement agreement as the gravity of the misconduct warranted a dismissal. Further, by allowing the supervising cook to resign in lieu of dismissal, the supervising cook is eligible to return to state service with greater ease.*

- If there was a settlement agreement, was the settlement consistent with the DOM factors?

  *The settlement was not consistent with the department's policies and procedures in that there was grave misconduct that creates a serious risk of harm to the public service if such misconduct reoccurs. By settling, the employee will be able to obtain employment in state service creating a risk of reoccurrence. There was no risk or flaw in the case as the employee confessed to the misconduct and was convicted of the crime.*

- Was the OIG provided with a draft of the pre-hearing/settlement conference statement prior to it being filed?

  *The pre-hearing settlement conference statement was filed with the State Personnel Board on May 3, 2012, and provided to OIG on May 7, 2012.*

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-11-07 | 11-0901-IR | 1. Failure to Report<br>2. Discourteous Treatment<br>3. Unreasonable Use of Force | 1. Sustained<br>2. Sustained<br>3. Not Sustained | Salary Reduction | Sufficient |

## Facts of the Case

On November 7, 2010, four officers allegedly forced an inmate to the ground to restrain him. One of the officers was allegedly discourteous to the inmate, thereby escalating the situation and endangering those involved. Another officer allegedly failed to intervene when he witnessed the discourteous treatment. All officers also allegedly failed to report the use of force they observed.

# NORTH REGION

## Disposition

The hiring authority determined there was insufficient evidence to sustain the allegations of use of force and the failure to report the use of force against three of the officers. The hiring authority determined there was sufficient evidence to sustain an allegation against a fourth officer for failing to report the use of force by another officer and imposed a 5 percent salary reduction for 12 months. The department and the officer entered into a settlement agreement in which the officer agreed to withdraw his appeal with the State Personnel Board and the department reduced the penalty to a 5 percent salary reduction for six months. The OIG concurred with the settlement. The hiring authority determined there was sufficient evidence to sustain an allegation against the fifth officer for his use of profanity toward an inmate. The hiring authority imposed a 5 percent salary reduction for three months. The State Personnel Board revoked the disciplinary action against the fifth officer in its entirety. The administrative law judge found the officer's testimony more credible than the department's witnesses.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures. The department's attorney was well prepared and zealously represented the department at the appeal before the State Personnel Board.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-12-10 | 11-0667-IR | 1. Neglect of Duty | 1. Sustained | Salary Reduction | Insufficient |

## Facts of the Case

On December 10, 2010, two officers allegedly placed an inmate in the wrong cell after he was released from the administrative segregation unit. The inmate claimed the cell belonged to him and then hid himself in the cell. When the inmate who was actually assigned to the cell returned in handcuffs, he was attacked by the other inmate. Officers used pepper spray to stop the attack.

## Disposition

The hiring authority sustained the allegations against both officers for mistakenly securing the wrong inmate in the cell and imposed a 5 percent salary reduction for three months. The first officer filed an appeal with the State Personnel Board. Pursuant to a settlement agreement, the hiring authority agreed the disciplinary action could be removed from the officer's personnel file in 18 months rather than the customary three years. The officer agreed to withdraw his appeal with the State Personnel Board. The OIG found the agreement reasonable. The other officer did not file an appeal with the State Personnel Board.

## Disciplinary Assessment

The department failed to exercise due diligence in this case. Upon receiving the case from OIA Central Intake, the hiring authority waited nearly eight months to consult with the OIG and make findings regarding the allegations and penalty.

## Assessment Questions

- Was the disciplinary phase conducted with due diligence by the department?

  *The case was referred back to the hiring authority on March 2, 2011. The hiring authority did not make a determination regarding the allegations or penalty until November 3, 2011, a delay of nearly eight months.*

- Did the HA timely consult with the OIG and the department attorney (if applicable) regarding disciplinary determinations prior to making a final decision?

  *The Office of Internal Affairs referred the matter back to the hiring authority on March 2, 2011. The hiring authority did not consult with the OIG or make disciplinary determinations until November 3, 2011.*

- Did the disciplinary officer make an entry into CMS prior to the findings conference accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

  *The disciplinary officer did not make an entry in CMS confirming the date of the reported incident, the date of discovery, or the deadline for taking disciplinary action.*

- Was the matter referred to the OIA as soon as reasonably practical, within 45 calendar days of the date of discovery?

  *The department learned of the misconduct on December 10, 2010, but the hiring authority did not refer the matter to the Office of Internal Affairs until February 2, 2011, more than 45 calendar days after the date of discovery.*

# NORTH REGION

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-12-10 | 11-2241-IR | 1. Unreasonable Use of Force<br>2. Dishonesty | 1. Sustained<br>2. Not Sustained | Salary Reduction | Sufficient |

## Facts of the Case
It was alleged that on December 10, 2010, an officer used unnecessary force when he used his foot to stomp on an inmate who was lying on the floor in a prone position. It was also alleged that the officer used excessive force when he continued to spray the inmate with pepper spray after the inmate was in a prone position. Finally, it was alleged that the officer was dishonest in his reports of the incident.

## Disposition
The hiring authority determined there was sufficient evidence to sustain the allegation the officer used excessive force when he continued to spray the inmate with pepper spray and imposed a 5 percent salary reduction for six months. The hiring authority did not sustain the other allegations. Following the *Skelly* hearing, the hiring authority agreed to reduce the penalty to an official letter of reprimand that could be removed from the official personnel file after two years, provided the officer did not engage in similar future acts of misconduct. Based on the factors presented at the *Skelly* hearing, and evidentiary issues, the OIG concurred with the settlement.

## Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-12-14 | 11-0771-IR | 1. Dishonesty<br>2. Neglect of Duty | 1. Sustained<br>2. Sustained | Dismissal | Sufficient |

## Facts of the Case
On December 14, 2010, a registered nurse allegedly failed to follow procedures in the distribution of medication to inmates. It was further alleged that the registered nurse was dishonest in his reporting of the disposal of medication.

## Disposition
The hiring authority sustained the allegations and served the registered nurse with a notice of dismissal. The registered nurse filed an appeal with the State Personnel Board. The department and the registered nurse entered into a settlement agreement. The department agreed to accept the registered nurse's resignation in lieu of dismissal in exchange for the registered nurse agreeing to withdraw his appeal before the State Personnel Board and not to seek or accept future employment with the department. The OIG concurred with the settlement.

## Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-12-15 | 11-0768-IR | 1. Neglect of Duty | 1. Sustained | Salary Reduction | Insufficient |

## Facts of the Case
On December 15, 2010, two officers allegedly opened multiple cell doors at the same time, thereby allowing several inmates to exit their cells and assault another inmate.

## Disposition
The hiring authority determined there was sufficient evidence to sustain the allegations against the first officer and imposed a 10 percent salary reduction for seven months. The officer did not file an appeal with the State Personnel Board. The hiring authority determined there was sufficient evidence to sustain the allegations against the second officer and imposed a 10 percent salary reduction for six months. After a *Skelly* hearing, the department entered into a settlement agreement with the second officer in which the department agreed to a 10 percent salary reduction for four months and the officer agreed not to file an appeal with the State Personnel Board. The OIG concurred in the settlement.

# NORTH REGION

## Disciplinary Assessment

The hiring authority failed to comply with policies and procedures by not completing the findings and penalty conference until 234 days after receipt of the case from OIA Central Intake.

## Assessment Questions

- Was the disciplinary phase conducted with due diligence by the department?

  *The case was received from OIA Central Intake for disciplinary action on March 21, 2011; however, the hiring authority did not complete the penalty conference until November 3, 2011, 234 days later.*

- Did a department attorney attend the Skelly hearing?

  *The department attorney did not attend the Skelly hearing due to other case commitments.*

- Was the disciplinary action served on the employee(s) appropriately drafted as described in the DOM?

  *The disciplinary actions served on the employees were not appropriately drafted as described in the department's policies and procedures because the actions were not served on the officers within 30 days of the decision to take disciplinary action.*

- Did the HA timely consult with the OIG and department attorney (if applicable), regarding the sufficiency of the investigation and the investigative findings?

  *The case was received from OIA Central Intake for direct adverse action on March 21, 2011; however, the hiring authority did not complete the penalty conference until November 3, 2011, 234 days later.*

- Within 21 calendar days, did the department attorney make an entry into CMS accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

  *The department attorney made an entry into CMS. However, she merely stated that she assessed the date of the incident, discovery date, and the deadline for taking disciplinary action without indicating the actual dates.*

- Did OIA Central Intake make a determination regarding the case within 30 calendar days?

  *OIA Central Intake received the request for investigation on January 10, 2011, but did not take action until March 17, 2011, more than 30 days after the request.*

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-01-01 | 11-0751-IR | 1. Dishonesty<br>2. Failure to Report<br>3. Other Failure of Good Behavior | 1. Sustained<br>2. Sustained<br>3. Sustained | Dismissal | Insufficient |

## Facts of the Case

On January 1, 2011, an officer allegedly was involved in a physical altercation with his girlfriend and subsequently was arrested for domestic violence. Additionally, the officer allegedly failed to report the arrest to the hiring authority.

## Disposition

During the investigation, additional allegations of dishonesty were added. The hiring authority determined there was sufficient evidence to sustain all allegations and served the officer with a notice of dismissal. Following the *Skelly* hearing, the hiring authority wanted to settle the matter with the officer by removing one of the three allegations of dishonesty and reducing the penalty from a dismissal to a suspension. The department attorney was in agreement with the settlement; however, the OIG did not agree on the settlement terms. Therefore, the matter was elevated to the hiring authority's supervisor. At the higher level of review, the department determined the allegations and penalty would remain as initially determined. The officer filed an appeal with the State Personnel Board. Prior to the hearing commencing, the department entered into a settlement agreement with the officer in which he agreed to resign in lieu of dismissal. The officer also agreed to not seek future employment with the department and to withdraw his appeal. The OIG concurred with the settlement agreement.

## Disciplinary Assessment

The initial hiring authority sustained the appropriate allegations and determined the appropriate penalty in the matter. However, the initial hiring authority inappropriately wanted to settle the matter for a penalty of less than dismissal. The OIG requested the higher level of review which ultimately resulted in a proper penalty.

# NORTH REGION

## Assessment Questions

- Was an executive review requested to raise an issue to a higher level of management in this case?

  *Following the Skelly hearing, the hiring authority wanted to settle the matter with the officer by removing one of the three allegations of dishonesty and reducing the penalty from a dismissal to a suspension. The department attorney was in agreement with the settlement; however, the OIG did not agree on the settlement terms. Therefore, the matter was elevated to the hiring authority's supervisor. At the higher level of review, the department determined the allegations and penalty would remain as initially determined.*

- Was the draft disciplinary action provided to the OIG for review appropriately drafted as described in the DOM?

  *The department attorney did not include all facts in support of the causes of discipline. He failed to include information regarding the officer being dishonest with local law enforcement.*

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-01-01 | 11-2660-IR | 1. Contraband<br>2. Other Failure of Good Behavior<br>3. Bribery | 1. Sustained<br>2. Sustained<br>3. Sustained | Dismissal | Sufficient |

### Facts of the Case
It was alleged that during 2011, a materials and stores supervisor accepted bribes from inmates and supplied inmates with narcotics. On October 25, 2011, the materials and stores supervisor was intercepted as he attempted to introduce marijuana, tobacco, and mobile phones into the institution.

### Disposition
The hiring authority sustained the allegations and ended the employee's limited term appointment with the department.

### Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-01-08 | 11-0749-IR | 1. Failure to Report<br>2. Neglect of Duty<br>3. Unreasonable Use of Force | 1. Sustained<br>2. Sustained<br>3. Not Sustained | Salary Reduction | Sufficient |

### Facts of the Case
On January 8, 2011, a sergeant allegedly used and failed to report unnecessary force on an inmate who was in restraints by throwing the inmate against the bunk and wall. It was alleged that three officers witnessed that use of force and failed to report it. Later, during the early morning hours, the same sergeant allegedly failed to timely respond to the inmate's need to urinate which resulted in the inmate urinating on himself. The sergeant further disregarded the inmate by not addressing the inmate's need to be cleaned and be given clean clothes. The sergeant was allegedly distracted because he was watching television.

### Disposition
The hiring authority sustained the allegations that the sergeant failed to report his use of force, and that he was neglectful when he did not allow the inmate to be cleaned and did not provide clean clothing after the inmate urinated in his clothes. The hiring authority imposed a 5 percent salary reduction for three months. All other allegations against the sergeant and the three officers were not sustained. The sergeant did not file an appeal with the State Personnel Board.

### Disciplinary Assessment
Overall, the department complied with policies and procedures.

# NORTH REGION

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2011-01-23** | **11-1607-IR** | 1. **Criminal Act**<br>2. **Contraband** | 1. **Sustained**<br>2. **Sustained** | **Dismissal** | **Sufficient** |

## Facts of the Case

On January 23, 2011, an officer allegedly smuggled mobile phones and tobacco into the institution in exchange for money. The officer was charged with a federal offense of wire fraud, to which the officer subsequently plead guilty.

## Disposition

The hiring authority determined there was sufficient evidence to sustain the allegations and dismissed the officer. However, the officer resigned before disciplinary action could be imposed. A letter indicating the officer resigned under adverse circumstances was placed in his official personnel file.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2011-01-29** | **11-1242-IR** | 1. **Dishonesty**<br>2. **Other Failure of Good Behavior** | 1. **Sustained**<br>2. **Sustained** | **Salary Reduction** | **Insufficient** |

## Facts of the Case

On January 29, 2011, an off-duty officer was arrested for allegedly making threats and challenging a civilian to fight. The officer was also allegedly dishonest when he called the institution indicating he would not report to work because of a sick family member shortly before he was arrested. He told responding outside law enforcement officers that he was on his way to work when he saw his wife's car and confronted her passenger. The matter was referred to the district attorney's office, which declined to file charges.

## Disposition

The hiring authority sustained the allegations and imposed a 10 percent salary reduction for six months. The officer filed an appeal with the State Personnel Board. The State Personnel Board dismissed the officer's appeal when he failed to appear at the State Personnel Board hearing.

## Disciplinary Assessment

The department failed to conduct the investigative findings and disciplinary determinations in a timely manner. The hiring authority failed to refer the case to the Office of Internal Affairs within 45 days and the Office of Internal Affairs failed to make a determination on the case within 30 days. The hiring authority also failed to timely consult with the department attorney and the OIG regarding the sufficiency of the investigation and penalty determinations. Additionally, the department attorney failed to make the appropriate entries into the case management system regarding relevant deadlines. However, the delays in the case did adversely affect the outcome of the case as the appropriate discipline was imposed.

# NORTH REGION

## Assessment Questions

- Was the disciplinary phase conducted with due diligence by the department?

  *The case was not processed by OIA Central Intake in a timely manner. The case was received by OIA on April 1, 2011; however a determination regarding the case was not made until May 4, 2011. The case was sent back to the hiring authority in May 4, 2011; however, consultations regarding the sufficiency of the investigation and penalty determinations did not occur until September 13, 2011.*

- Did the HA timely consult with the OIG and the department attorney (if applicable) regarding disciplinary determinations prior to making a final decision?

  *The case was returned to the hiring authority on May 6, 2011; however, the hiring authority did not consult with the OIG and department attorney regarding penalty determinations until September 13, 2011.*

- Did the HA timely consult with the OIG and department attorney (if applicable), regarding the sufficiency of the investigation and the investigative findings?

  *The case was returned to the hiring authority of May 6, 2011; however, the hiring authority did not consult with the OIG and department attorney regarding the sufficiency of the investigation and the investigative findings until September 13, 2011.*

- Within 21 calendar days, did the department attorney make an entry into CMS accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

  *The department attorney was assigned the case on May 16, 2011, yet did not make an entry into CMS accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time.*

- Did OIA Central Intake make a determination regarding the case within 30 calendar days?

  *OIA Central Intake received the request for investigation on April 1, 2011, but did not take action until May 4, 2011, more than 30 days after the request.*

- Was the matter referred to the OIA as soon as reasonably practical, within 45 calendar days of the date of discovery?

  *The department learned of the misconduct on January 29, 2011, but the hiring authority did not refer the matter to the Office of Internal Affairs until March 29, 2011, more than 45 days after the date of discovery.*

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-02-09 | 11-1905-IR | 1. Failure to Report<br>2. Unreasonable Use of Force | 1. Not Sustained<br>2. Unfounded | No Penalty Imposed | Sufficient |

## Facts of the Case

On February 9, 2011, an officer allegedly used unnecessary force when he kicked an inmate in the back while placing the inmate into a holding cell. Further, the officer allegedly tried to dissuade a witness from reporting the incident.

## Disposition

The hiring authority determined there was insufficient evidence to sustain the allegations.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-02-19 | 11-1547-IR | 1. Unreasonable Use of Force | 1. Not Sustained | No Penalty Imposed | Sufficient |

## Facts of the Case

On February 19, 2011, two officers allegedly used excessive force on an agitated inmate when they took him to the ground. It was alleged that the force used by the officers resulted in the inmate sustaining a broken tooth and head injuries.

# NORTH REGION

| Disposition |
|---|
| The hiring authority determined there was insufficient evidence to sustain the allegations. The OIG concurred. |

| Disciplinary Assessment |
|---|
| Overall, the department substantially complied with policies and procedures. |

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-02-26 | 11-1205-IR | 1.  Contraband | 1.  Not Sustained | No Penalty Imposed | Sufficient |

| Facts of the Case |
|---|
| It was alleged on February 26, 2011, that an officer was trafficking mobile phones to inmates for personal gain. |

| Disposition |
|---|
| The hiring authority determined there was insufficient evidence to sustain the allegation. The OIG concurred. |

| Disciplinary Assessment |
|---|
| Overall, the department substantially complied with policies and procedures. |

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-03-01 | 11-2741-IR | 1.  Overfamiliarity<br>2.  Sexual Misconduct<br>3.  Contraband | 1.  Sustained<br>2.  Not Sustained<br>3.  Not Sustained | Dismissal | Sufficient |

| Facts of the Case |
|---|
| Between March 2011 and August 2011, a compliance coordinator allegedly was overly familiar with an inmate when she engaged in sexual acts with the inmate. She also allegedly provided the inmate with a mobile phone. |

| Disposition |
|---|
| The hiring authority sustained the allegation of over-familiarity and determined that dismissal was the appropriate penalty. The hiring authority did not sustain the allegations of sexual misconduct with an inmate or bringing a mobile phone into the institution for an inmate. The compliance coordinator resigned prior to the completion of the investigation; therefore, disciplinary action was not taken. A letter indicating she resigned under adverse circumstances was placed in her official personnel file. |

| Disciplinary Assessment |
|---|
| Overall, the department substantially complied with policies and procedures. |

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-04-03 | 11-1734-IR | 1.  Dishonesty<br>2.  Neglect of Duty<br>3.  Motor Vehicle Accident | 1.  Sustained<br>2.  Sustained<br>3.  Sustained | Dismissal | Sufficient |

| Facts of the Case |
|---|
| On April 3, 2011, an officer allegedly caused damage to a state vehicle and failed to report the damage. It was further alleged that on April 7, 2011, the officer filed a false report denying any knowledge of how the vehicle was damaged. Also, a sergeant allegedly failed to report the damage to the vehicle. |

# NORTH REGION

## Disposition

The hiring authority determined there was sufficient evidence to sustain the allegations against the officer and dismissed him. The hiring authority also sustained the allegation against the sergeant and counseled the sergeant as to his obligations and duties to report damage to state property. The officer filed an appeal with the State Personnel Board. The officer failed to appear for the State Personnel Board hearing; therefore, the appeal was dismissed.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-05-24 | 11-2020-IR | 1. Neglect of Duty | 1. Sustained | Counseling | Insufficient |

### Facts of the Case

It was alleged that on May 24, 2011, an officer failed to open the correct cell door for an inmate who requested to return to his cell to retrieve a jacket. The inmate stood in front of the cell adjacent to his own cell. The officer opened the wrong cell door, allowing two inmates to exit and attack the other inmate. Responding officers utilized force to stop the attack.

## Disposition

The hiring authority determined there was sufficient evidence to sustain the allegation and issued the officer a letter of instruction.

## Disciplinary Assessment

The department delayed in handling the matter. OIA Central Intake took more than 30 calendar days to make a determination regarding the case. Once the case was returned to the hiring authority, five months elapsed until the hiring authority made determinations regarding the sufficiency of the investigation and the appropriate penalty. Ultimately, the case was processed approximately five months prior to the deadline for taking disciplinary action.

## Assessment Questions

- Was the disciplinary phase conducted with due diligence by the department?

  *The department allowed five months to elapse before conducting the disciplinary phase.*

- Did the HA timely consult with the OIG and the department attorney (if applicable) regarding disciplinary determinations prior to making a final decision?

  *The matter was referred back to the hiring authority on August 5, 2011; however the consultation with the OIG and department attorney regarding the disciplinary determinations did not occur until January 5, 2011.*

- Did the HA timely consult with the OIG and department attorney (if applicable), regarding the sufficiency of the investigation and the investigative findings?

  *The case was returned to the hiring authority on August 5, 2011; however, the consultation with the OIG and department attorney regarding the sufficiency of the investigation and the investigative findings did not occur until January 5, 2012.*

- Did OIA Central Intake make a determination regarding the case within 30 calendar days?

  *OIA Central Intake received the request for investigation on June 22, 2011, but did not take action until August 3, 2011.*

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-05-27 | 11-2093-IR | 1. Other Failure of Good Behavior | 1. Not Sustained | No Penalty Imposed | Sufficient |

### Facts of the Case

On May 27, 2011, a parole agent allegedly shared confidential law enforcement information with a parolee's friend.

## Disposition

The hiring authority determined there was insufficient evidence to sustain the allegation. The OIG concurred.

# NORTH REGION

## Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-05-31 | 11-2019-IR | 1. Neglect of Duty | 1. Sustained | Counseling | Sufficient |

### Facts of the Case
On May 31, 2011, an officer allegedly opened the wrong cell door while conducting yard recall thereby permitting two inmates to have unauthorized access to one another. No harm resulted and the officer self-reported the incident.

### Disposition
The hiring authority determined there was sufficient evidence to sustain the allegation and served the officer with a letter of instruction.

### Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-06-07 | 11-2169-IR | 1. Neglect of Duty<br>2. Overfamiliarity | 1. Sustained<br>2. Not Sustained | Salary Reduction | Sufficient |

### Facts of the Case
On June 7, 2011, two officers allegedly failed to follow security procedures in an administrative segregation unit by opening cell doors without proper staff coverage. It was also alleged that one of the officers engaged in a lengthy conversation with an unrestrained inmate after opening the cell door.

### Disposition
The hiring authority sustained the allegation of neglect of duty against the first officer and imposed a 5 percent salary reduction for four months. The first officer did not file an appeal with the State Personnel Board. The hiring authority sustained allegations of neglect of duty against the second officer and imposed a 5 percent salary reduction for six months; however, the second officer retired before the disciplinary action took effect.

### Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-06-09 | 11-2018-IR | 1. Neglect of Duty | 1. Sustained | Letter of Reprimand | Insufficient |

### Facts of the Case
On June 9, 2011, it was alleged an officer was negligent when he opened the wrong cell door, thereby permitting an inmate to exit his cell and attack an inmate who was returning from an exercise yard.

### Disposition
The hiring authority determined there was sufficient evidence to sustain the allegation and served the officer with a letter of reprimand. The officer did not file an appeal with the State Personnel Board.

### Disciplinary Assessment
The disciplinary process was not completed in a timely manner. OIA Central Intake took more than 30 days to process the case. The hiring authority delayed over seven months in conducting the findings and penalty discussions. Additionally, the department attorney did not properly document the penalty discussions.

# NORTH REGION

## Assessment Questions

- Was the disciplinary phase conducted with due diligence by the department?

  *The case was returned to the hiring authority on August 3, 2011; however, the findings and penalty determinations were not made until February 7, 2012.*

- Did the department attorney provide to the HA and OIG written confirmation of penalty discussions?

  *The department attorney did not provide the hiring authority or the OIG with written confirmation of penalty discussions.*

- Did the HA timely consult with the OIG and the department attorney (if applicable) regarding disciplinary determinations prior to making a final decision?

  *The Office of Internal Affairs completed its review and referred the matter to the hiring authority on August 3, 2011. The hiring authority did not consult with the OIG and department attorney regarding the disciplinary determinations until February 7, 2012, more than 14 calendar days after receipt of the case.*

- Did the HA timely consult with the OIG and department attorney (if applicable), regarding the sufficiency of the investigation and the investigative findings?

  *The Office of Internal Affairs completed its review and referred the matter to the hiring authority on August 3, 2011. The hiring authority did not consult with the OIG and department attorney regarding the sufficiency of the investigation and the investigative findings until February 7, 2012, more than 14 calendar days after receipt of the case.*

- Did OIA Central Intake make a determination regarding the case within 30 calendar days?

  *OIA Central Intake received the request for investigation on June 30, 2011, but did not take action until August 3, 2011, more than 30 days after the request.*

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2011-06-11** | **12-0122-IR** | 1. **Neglect of Duty**<br>2. **Intoxication** | 1. **Sustained**<br>2. **Sustained** | **Dismissal** | **Sufficient** |

### Facts of the Case

It was alleged on June 11, 2011, an off-duty officer drove his motorcycle while intoxicated and collided into another vehicle. The other driver lost control of her vehicle and rolled over several times, causing her serious injuries. It was further alleged the officer failed to notify the hiring authority of his subsequent arrest.

### Disposition

The hiring authority determined there was sufficient evidence to sustain the allegations and dismissed the officer. In addition, the officer was also served a non-punitive dismissal based on his guilty plea to a felony charge of driving under the influence causing injuries. The officer did not file an appeal of either action with the State Personnel Board.

### Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2011-06-22** | **11-2094-IR** | 1. **Neglect of Duty** | 1. **Sustained** | **Suspension** | **Insufficient** |

### Facts of the Case

On June 22, 2011, two officers left two cell doors open enabling an inmate to enter the cell of another inmate and assault her, resulting in serious injuries including a concussion and the need for stitches.

# NORTH REGION

## Disposition

The hiring authority determined there was sufficient evidence to sustain the allegations against both officers and served each with a two working-day suspension without pay. However, following a *Skelly* hearing, the hiring authority agreed to reduce the penalty to a one working-day suspension for one of the officers, and the officer agreed not to file an appeal with the State Personnel Board. Although the hiring authority did not consult with the OIG before entering into the settlement agreement, the OIG found the settlement to be reasonable based on the factors presented at the *Skelly* hearing. The penalty against the other officer was sustained following a *Skelly* hearing. The officer did not file an appeal with the State Personnel Board.

## Disciplinary Assessment

The department failed to conduct the investigative findings and disciplinary determinations in a timely manner, and failed to consult with the OIG regarding settlement.

## Assessment Questions

- Was the disciplinary phase conducted with due diligence by the department?

  *The department failed to conduct the investigative findings and disciplinary determinations in a timely manner, more than five months after the case was submitted to the hiring authority for action.*

- Did the HA cooperate with and provide continual real-time consultation with the OIG throughout the disciplinary phase, until all proceedings were completed, except for those related to a writ?

  *The hiring authority did not consult with the OIG before reaching a settlement agreement with one of the officers.*

- Did the department attorney or disciplinary officer cooperate with and provide continual real-time consultation with the OIG throughout the disciplinary phase, until all proceedings were completed, except for those related to a writ?

  *The disciplinary officer did not consult with the OIG regarding the settlement discussions with one of the officers.*

- Did the HA consult with the OIG and department attorney (if applicable) before modifying the penalty or agreeing to a settlement?

  *The hiring authority reached a settlement agreement with one of the officers following the Skelly hearing without consulting the OIG.*

- Was the penalty upheld by the department after a Skelly hearing?

  *Although the penalty was upheld for one of the officers following the Skelly hearing, the hiring authority entered into a settlement agreement with the other officer whereby the penalty was reduced.*

- Did the department unilaterally modify the penalty as a result of a Skelly hearing?

  *The hiring authority entered into a settlement agreement with one of the officers following the Skelly hearing without consulting the OIG.*

- Did the HA timely consult with the OIG and the department attorney (if applicable) regarding disciplinary determinations prior to making a final decision?

  *The Office of Internal Affairs completed its investigation and referred the matter to the hiring authority on August 17, 2011. Although the disciplinary officer and OIG discussed the case within 14 days thereafter, the hiring authority did not consult with the OIG until January 31, 2012, more than five months later.*

- Did the HA timely consult with the OIG and department attorney (if applicable), regarding the sufficiency of the investigation and the investigative findings?

  *The Office of Internal Affairs completed its investigation and referred the matter to the hiring authority on August 17, 2011. Although the disciplinary officer and OIG discussed the case within 14 days thereafter, the hiring authority did not consult with the OIG regarding the sufficiency of the investigation and the investigative findings until January 31, 2012, more than five months later.*

- Did the disciplinary officer make an entry into CMS prior to the findings conference accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

  *The disciplinary officer was assigned on August 19, 2011. Although the disciplinary officer made an entry into CMS confirming the deadline for taking disciplinary action, the entry did not confirm the date of the reported incident or date of discovery.*

- Did OIA Central Intake make a determination regarding the case within 30 calendar days?

  *OIA Central Intake received the request for investigation on July 14, 2011, but did not take action until August 17, 2011, more than 30 calendar days after the request.*

# NORTH REGION

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2011-07-30** | **11-2380-IR** | 1. **False Imprisonment** | 1. **Sustained** | **Salary Reduction** | **Sufficient** |

### Facts of the Case
On July 30, 2011, an officer allegedly battered his girlfriend and attempted to prevent her from calling for help. The district attorney filed criminal charges against the officer, who plead no contest to a charge of false imprisonment.

### Disposition
The hiring authority sustained the allegations of off-duty misconduct as a result of the officer's conviction of false imprisonment and imposed a 10 percent salary reduction for six months. The officer did not file an appeal with the State Personnel Board.

### Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2011-08-04** | **11-2460-IR** | 1. **Neglect of Duty** | 1. **Sustained** | **Counseling** | **Insufficient** |

### Facts of the Case
On August 4, 2011, an officer allegedly opened the wrong cell door for an inmate returning from the exercise yard, thereby allowing the inmate to attack another inmate.

### Disposition
The hiring authority determined there was sufficient evidence to sustain the allegation and served the officer with a letter of instruction.

### Disciplinary Assessment
The department failed to conduct the investigative findings and disciplinary determinations in a timely manner. The department attorney did not properly document his review of the case nor did he provide the hiring authority and OIG written confirmation of disciplinary discussions.

### Assessment Questions

- Was the disciplinary phase conducted with due diligence by the department?

  *The case was returned to the hiring authority on September 28, 2012. The consultations with the department attorney regarding the sufficiency of the investigation, investigative findings, and disciplinary determinations did not occur until February 21, 2012.*

- Did the department attorney provide to the HA and OIG written confirmation of penalty discussions?

  *The department attorney did not provide to the hiring authority and the OIG written confirmation of penalty discussions.*

- Did the HA timely consult with the OIG and the department attorney (if applicable) regarding disciplinary determinations prior to making a final decision?

  *The case was returned to the hiring authority on September 28, 2012; however, the consultation with the OIG and department attorney regarding disciplinary determinations did not occur until February 15, 2012.*

- Did the HA timely consult with the OIG and department attorney (if applicable), regarding the sufficiency of the investigation and the investigative findings?

  *The case was returned to the hiring authority on September 28, 2012; however, the consultation with the OIG and department attorney regarding the sufficiency of the investigation and the investigative findings did not occur until February 15, 2012.*

- Within 21 calendar days, did the department attorney make an entry into CMS accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

  *The department attorney was assigned the case on October 21, 2011. He did not make an entry into CMS accurately confirming the relevant dates until December 16, 2011.*

# NORTH REGION

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2011-08-08** | **11-2462-IR** | 1.  Neglect of Duty | 1.  Sustained | **Salary Reduction** | **Insufficient** |

## Facts of the Case

On August 8, 2011, an officer allegedly failed to properly secure an inmate's cell door while allowing another inmate to return from the exercise yard. The returning inmate was able to enter the unsecured cell and a fight ensued between the two inmates.

## Disposition

The hiring authority determined there was sufficient evidence to sustain the allegation and imposed a 5 percent salary reduction for six months. After the *Skelly* hearing, the hiring authority agreed to reduce the penalty to a letter of reprimand and the officer agreed not to file an appeal with the State Personnel Board. Based on the factors presented at the *Skelly* hearing, the OIG found the agreement to be reasonable.

## Disciplinary Assessment

The department failed to conduct the investigative findings and disciplinary determinations in a timely manner. The hiring authority failed to timely consult with the OIG and the department attorney regarding the investigative findings and penalty determinations.

## Assessment Questions

- Was the disciplinary phase conducted with due diligence by the department?

  *OIA Central Intake returned the matter to the hiring authority on September 28, 2011. The hiring authority did not conduct the findings and penalty conferences until March 28, 2012.*

- Was the disciplinary action served on the employee(s) appropriately drafted as described in the DOM?

  *The disciplinary action served on the officer was not appropriately drafted as described in the department's policies and procedures because the decision to take disciplinary action was made on March 28, 2012, but the disciplinary action was not served on the officer until April 30, 2012, which is more than 30 calendar days.*

- Was the draft disciplinary action provided to the OIG for review appropriately drafted as described in the DOM?

  *The draft disciplinary action provided to the OIG for review was not appropriately drafted as described in the department's policies and procedures because the decision to take disciplinary action was made on March 28, 2012, but the disciplinary action was not served on the officer until April 30, 2012, which is more than 30 calendar days.*

- Did the department attorney provide to the HA and OIG written confirmation of penalty discussions?

  *The department attorney did not provide to the hiring authority and OIG written confirmation of penalty discussions.*

- Did the HA timely consult with the OIG and the department attorney (if applicable) regarding disciplinary determinations prior to making a final decision?

  *The Office of Internal Affairs completed its investigation and referred the matter to the hiring authority on September 28, 2011. The hiring authority did not consult with the OIG and department attorney regarding regarding disciplinary determinations until March 28, 2012, six months after receipt.*

- Did the HA timely consult with the OIG and department attorney (if applicable), regarding the sufficiency of the investigation and the investigative findings?

  *The Office of Internal Affairs completed its investigation and referred the matter to the hiring authority on September 28, 2011. The hiring authority did not consult with the OIG and department attorney regarding the sufficiency of the investigation and the investigative findings until March 28, 2012, six months after receipt of the case.*

- Within 21 calendar days, did the department attorney make an entry into CMS accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

  *The department attorney was assigned the case on September 30, 2011; however, he did not make an entry into CMS regarding the relevant dates until December 16, 2011.*

# NORTH REGION

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-08-10 | 11-2634-IR | 1. Other Failure of Good Behavior | 1. Sustained | Salary Reduction | Sufficient |

## Facts of the Case
On August 10, 2011, an off-duty officer allegedly vandalized his former spouse's vehicle by spraying a corrosive agent on the vehicle, causing the paint to peel off. The officer was subsequently convicted of vandalism, a misdemeanor.

## Disposition
The hiring authority sustained the allegation and imposed a 5 percent salary reduction for six months. The officer did not file an appeal with the State Personnel Board.

## Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-08-22 | 11-2302-IR | 1. Contraband<br>2. Over-Familiarity<br>3. Insubordination | 1. Sustained<br>2. Sustained<br>3. Sustained | Dismissal | Sufficient |

## Facts of the Case
On August 22, 2011, it was alleged that an officer possessed marijuana, methamphetamine, heroin, and ecstasy pills. Additionally, it was alleged that for approximately seven months prior, the officer allegedly conspired with inmates and inmate family members to transport, introduce, and sell narcotics, tobacco, and mobile phones to inmates in exchange for money.

## Disposition
The hiring authority determined there was sufficient evidence to sustain the allegations and served the officer with a notice of dismissal. The officer did not file an appeal with the State Personnel Board.

## Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-08-22 | 11-2498-IR | 1. Neglect of Duty<br>2. Other Failure of Good Behavior | 1. Sustained<br>2. Sustained | Salary Reduction | Sufficient |

## Facts of the Case
On August 22, 2011, an off-duty officer was arrested for domestic violence after he allegedly grabbed his girlfriend by the throat and choked her. The officer also allegedly failed to report his arrest to the hiring authority. The district attorney reviewed the matter and declined to file criminal charges.

## Disposition
The hiring authority determined there was sufficient evidence to sustain the allegations and imposed a 10 percent salary reduction for 24 months. However, following a *Skelly* hearing, the hiring authority agreed to reduce the penalty to a 10 percent salary reduction for 18 months, and the officer agreed not to file an appeal with the State Personnel Board.

## Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

# NORTH REGION

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-08-23 | 11-2658-IR | 1.  Neglect of Duty | 1.  Sustained | Salary Reduction | Sufficient |

**Facts of the Case**

On August 23, 2011, an officer allegedly left a cell door open allowing one inmate to attack another, resulting in serious injury.

**Disposition**

The hiring authority determined there was sufficient evidence to sustain the allegation and imposed a 5 percent salary reduction for six months. The officer did not file an appeal with the State Personnel Board.

**Disciplinary Assessment**

Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-08-29 | 11-2610-IR | 1.  Discourteous Treatment<br>2.  Other Failure of Good Behavior | 1.  Sustained<br>2.  Not Sustained | Salary Reduction | Sufficient |

**Facts of the Case**

On August 29, 2011, an officer allegedly struck his live-in girlfriend in the forehead causing injury and damaging her mobile phone. The district attorney filed criminal charges against the officer, who subsequently pled no contest to misdemeanor violations of damaging a wireless communication device.

**Disposition**

The hiring authority did not sustain the allegation the officer struck his live-in girlfriend. However, the hiring authority did sustain the allegation that the officer damaged the mobile phone and imposed a 5 percent salary reduction for six months. The officer did not file an appeal with the State Personnel Board.

**Disciplinary Assessment**

Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-09-06 | 11-2734-IR | 1.  Discourteous Treatment | 1.  Sustained | Letter of Reprimand | Sufficient |

**Facts of the Case**

On September 6, 2011, an officer allegedly engaged in discourteous treatment when in response to an inmate's taunts, the officer replied in a loud voice, in the presence of other inmates, that the inmate was a prison gang drop out, thereby potentially jeopardizing the inmate's safety.

**Disposition**

The hiring authority determined there was sufficient evidence to sustain the allegation and issued the officer a letter of reprimand. The officer did not file an appeal with the State Personnel Board.

**Disciplinary Assessment**

Overall, the department substantially complied with policies and procedures.

# NORTH REGION

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-09-17 | 11-2744-IR | 1. Neglect of Duty<br>2. Other Failure of Good Behavior | 1. Sustained<br>2. Sustained | Salary Reduction | Sufficient |

## Facts of the Case
On September 17, 2011, an officer allegedly dropped a live ammunition round from an upper platform to the ground in a dining hall where inmates were present. Another officer observed the round fall to the ground and returned it to the officer. However, the officer who dropped the round failed to report it to a supervisor and when his supervisor attempted to contact him, it was alleged the officer had left his post for over an hour to consult with a union representative.

## Disposition
The hiring authority determined there was sufficient evidence to sustain the allegations and imposed a 10 percent salary reduction for 24 months. After the *Skelly* hearing, the department entered into a settlement agreement in which the penalty was modified to a 10 percent salary reduction for ten months. Based on the factors presented at the *Skelly* hearing, the OIG found the agreement to be reasonable.

## Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-09-17 | 12-0461-IR | 1. Neglect of Duty<br>2. Intoxication-Driving under the influence (private vehicle) with collision | 1. Sustained<br>2. Sustained | Dismissal | Sufficient |

## Facts of the Case
On September 17, 2011, an off-duty officer was arrested for driving under the influence and vehicular manslaughter. The officer allegedly drove a motorcycle into a parked vehicle. His passenger was killed at the scene. The officer allegedly had a blood alcohol count two and a half times over the legal limit.

## Disposition
The hiring authority sustained the allegations. However, the officer resigned prior to being served with a notice of dismissal. A letter indicating the officer resigned under adverse circumstances was placed in his official personnel file.

## Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-09-24 | 11-2661-IR | 1. Neglect of Duty<br>2. Other Failure of Good Behavior | 1. Sustained<br>2. Sustained | Suspension | Sufficient |

## Facts of the Case
On September 24, 2011, an off-duty officer was arrested for domestic violence after allegedly taking his spouse's mobile phone and car keys, and physically blocking her exit from their residence, causing injuries to her arms and shoulders. The district attorney declined to prosecute the matter.

## Disposition
The hiring authority sustained the allegations and imposed a 30 working-day suspension. At the *Skelly* hearing the officer expressed remorse. Following the *Skelly* hearing, the hiring authority agreed to modify the penalty to a 5 percent salary reduction for 30 months, and the officer agreed not to file an appeal with the State Personnel Board. Based on the factors presented at the *Skelly* hearing, the OIG found the agreement to be reasonable.

# NORTH REGION

## Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-10-06 | 11-2560-IR | 1. Dishonesty<br>2. Neglect of Duty<br>3. Discourteous Treatment<br>4. Sexual Misconduct<br>5. Over-Familiarity | 1. Sustained<br>2. Sustained<br>3. Sustained<br>4. Not Sustained<br>5. Not Sustained | Dismissal | Sufficient |

### Facts of the Case
On October 6, 2011, a parole agent allegedly sexually assaulted the girlfriend of a parolee.

### Disposition
The hiring authority determined there was sufficient evidence to sustain allegations of neglect of duty, discourteous treatment, and dishonesty for engaging in sexual conduct with the girlfriend of the parolee, and for providing false or misleading statements to outside law enforcement during an investigation. The hiring authority served the parole agent with a notice of dismissal. The hiring authority determined there was insufficient evidence to sustain the allegations of sexual assault. The parole agent filed an appeal with the State Personnel Board. The department and the parole agent entered into a settlement agreement wherein the department agreed to accept the parole agent's resignation in lieu of termination, and the parole agent agreed to withdraw his appeal and not seek future employment with the department. The OIG found the settlement to be reasonable.

## Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-10-31 | 12-0398-IR | 1. Failure to Report | 1. Sustained | Salary Reduction | Sufficient |

### Facts of the Case
On October 31, 2011, it was alleged an officer failed to report the use of force on an inmate by another officer.

### Disposition
The hiring authority sustained the allegation and imposed a 10 percent salary reduction for six months. At the *Skelly* hearing the officer accepted responsibility and acknowledged his mistake. After the *Skelly* hearing, the department and officer entered into a settlement agreement in which the department reduced the penalty to a 5 percent salary reduction for three months. Based on the factors presented at the *Skelly* hearing the OIG found the settlement reasonable.

## Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2012-01-24 | 12-0571-IR | 1. Dishonesty<br>2. Other Failure of Good Behavior | 1. Sustained<br>2. Sustained | Dismissal | Sufficient |

### Facts of the Case
On January 24, 2012, an officer was allegedly dishonest when she stated to law enforcement officers that she had not consumed any alcohol prior to being involved in a vehicle collision. Furthermore, it was alleged the officer drove her car while she was under the influence of alcohol with two unrestrained children in the back seat.

# NORTH REGION

## Disposition

The hiring authority determined there was sufficient evidence to sustain the allegations and served the officer with a notice of dismissal. Prior to the effective date of the dismissal, the department and the officer entered into a settlement agreement whereby the officer agreed to retire and not seek future employment with the department, and the department agreed to withdraw the disciplinary action. The OIG found the agreement to be reasonable.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2012-01-25 | 12-0829-IR | 1. Discourteous Treatment<br>2. Misuse of Authority | 1. Sustained<br>2. Not Sustained | Letter of Reprimand | Sufficient |

## Facts of the Case

It was alleged that on January 25, 2012, a parole agent left a vulgar message on the answering machine of a parolee's parents and then entered the house and erased the message.

## Disposition

The hiring authority sustained the allegation of discourteous treatment towards the public against the parole agent and served him with a letter of reprimand. The hiring authority determined there was insufficient evidence to sustain the allegation of misuse of authority. The parole agent did not file an appeal with the State Personnel Board.

## Disciplinary Assessment

Overall, the department complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2012-02-29 | 12-0568-IR | 1. Other Failure of Good Behavior<br>2. Discourteous Treatment | 1. Sustained<br>2. Sustained | Dismissal | Sufficient |

## Facts of the Case

On February 29, 2012, an off-duty officer allegedly brandished a loaded firearm at a private citizen during a verbal dispute, and was arrested by outside law enforcement. It was further alleged while the officer was in custody, he was uncooperative, disruptive, and combative towards custodial staff.

## Disposition

The hiring authority sustained the allegations and determined that dismissal was the appropriate penalty. However, the officer resigned prior to the completion of the investigation; therefore, disciplinary action was not taken. A letter indicating the officer resigned under adverse circumstances was placed in his official personnel file.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

# SOUTH REGION

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2008-03-30** | **08-4321-IR** | 1. **Other Failure of Good Behavior** | 1. **Sustained** | **Dismissal** | **Sufficient** |

## Facts of the Case

On March 30, 2008, an officer allegedly provided alcohol to his minor step-daughter and to her minor female friend who were spending the night in the officer's home. After providing the minors with alcohol, they became intoxicated and fell asleep. It was further alleged that the officer entered the bedroom where the two minors were sleeping and sexually molested the minor female friend multiple times.

## Disposition

The hiring authority determined there was sufficient evidence to sustain the allegations and dismissed the officer. The officer filed an appeal with the State Personnel Board. Following a hearing, the State Personnel Board sustained the dismissal.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2009-03-27** | **10-3857-IR** | 1. **Dishonesty**<br>2. **Failure to Report**<br>3. **Misuse of Authority**<br>4. **Other Failure of Good Behavior**<br>5. **Unlawful Possession of Firearm**<br>6. **Overfamiliarity** | 1. **Sustained**<br>2. **Sustained**<br>3. **Sustained**<br>4. **Sustained**<br>5. **Sustained**<br>6. **Sustained** | **Dismissal** | **Insufficient** |

## Facts of the Case

On March 27, 2009, a supervising cook was arrested on her way to work for allegedly carrying an unregistered concealed firearm. Additionally, letters were found on her person and in the vehicle allegedly indicating an overly familiar relationship with an inmate.

## Disposition

The hiring authority determined there was sufficient evidence to sustain the allegations and dismissed the supervising cook. The supervising cook filed an appeal with the State Personnel Board. The department attorney settled the case with approval from the hiring authority, allowing the supervising cook to resign and receive two months back pay upon her resignation. The OIG did not find this agreement to be reasonable.

## Disciplinary Assessment

Overall, the hiring authority substantially complied with the department's policies and procedures; however, the department attorney did not. The department attorney failed to provide the OIG with a draft copy of the pre-hearing settlement conference statement or the filed copy. It is unknown whether the department attorney adequately prepared for the hearing because documents which the OIG requested were never provided. Furthermore, shortly before the start of the hearing, the department attorney discussed possible settlement with the hiring authority and the OIG. The department attorney stated, in general terms, that the case may be difficult to prove but provided no legal authority, only that in other cases involving non-peace officers, some employees were able to return to work after a successful outcome at the State Personnel Board. The department attorney failed to analyze the settlement factors set forth in the department's policies and procedures.

# SOUTH REGION

## Assessment Questions

- Did the department attorney or disciplinary officer cooperate with and provide continual real-time consultation with the OIG throughout the disciplinary phase, until all proceedings were completed, except for those related to a writ?

  *The department attorney failed to consult with the OIG during the disciplinary phase. The department attorney failed to provide a draft of the pre-hearing settlement conference statement for input.*

- If the penalty was modified by department action or a settlement agreement, did OIG concur with the modification?

  *The OIG did not concur with the settlement.*

- If there was a settlement agreement, was the settlement consistent with the DOM factors?

  *The department attorney simply advised the hiring authority that the case would be difficult to win before the State Personnel Board. There was no analysis of the settlement factors as set forth in the department's policies and procedures.*

- Was the OIG provided with a draft of the pre-hearing/settlement conference statement prior to it being filed?

  *The department attorney did not provide a draft of the pre-hearing settlement conference statement prior to it being filed.*

- Did the department attorney provide to the HA and OIG written confirmation of penalty discussions?

  *The department attorney did not provide written confirmation of penalty discussions to either the hiring authority or the OIG.*

- Within 21 calendar days, did the department attorney make an entry into CMS accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

  *The department attorney did not make an entry into the case management system confirming the relevant dates.*

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2009-07-25 | 12-0979-IR | 1. Dishonesty | 1. Not Sustained | No Penalty Imposed | Insufficient |

## Facts of the Case

On July 25, 2009, a sergeant was involved in a physical altercation where he was allegedly struck by his girlfriend, who was also a sergeant. The girlfriend and two other witnesses were all department employees on vacation. After being struck, the sergeant contacted local law enforcement who subsequently arrested the girlfriend for domestic violence. The sergeant was interviewed by the Office of Internal Affairs on June 8, 2010, in which he reiterated his previous statement to the outside law enforcement agency. As a result of his statements, the girlfriend and another employee, a correctional counselor, were dismissed from the department. The sergeant was called to testify as a witness in the State Personnel Board hearing relative to an appeal filed by the girlfriend from her dismissal. At the State Personnel Board hearing on October 17 and 18, 2011, it was alleged the sergeant falsely testified that he did not remember if his girlfriend hit him in the face, did remember being involved in a physical altercation with another person and not the girlfriend, and to having a conversation with the hiring authority at the institution where he worked regarding the case against his girlfriend.

## Disposition

The hiring authority determined there was insufficient evidence to sustain the allegation.

## Disciplinary Assessment

The original request for investigation asked the Office of Internal Affairs to open an investigation on the sergeant for alleged dishonesty to the Office of Internal Affairs during the sergeant's investigatory interview on the assault allegation. During the findings conference, the hiring authority identified that request was incorrect and that it was the dishonesty during the State Personnel Board hearing that should have been alleged. However, OIA Central Intake only approved the allegation of the dishonesty during the investigatory interview. During the findings conference, the OIG recommended the allegation that the sergeant provided false testimony be added, or sent to OIA Central Intake for reconsideration of the additional allegation. The department attorney suggested the hiring authority submit a new request for investigation that the sergeant be investigated for providing false testimony. The hiring authority, on the department attorney's recommendation, did not sustain the allegation in this case and elected to submit a new request for investigation related to the sergeant providing false testimony under oath. While effectively that addressed the concerns of the OIG, the case could have been simply returned for reconsideration to the Office of Internal Affairs.

# SOUTH REGION

## Assessment Questions

- Was the disciplinary phase conducted with due diligence by the department?

  *Due to the delay in providing the Office of Internal Affairs with the allegations, the incorrectly articulated allegations in the request for investigation, and the subsequent delay caused because of the necessary analysis, undue time elapsed before the case could be returned to the Office of Internal Affairs for consideration of the appropriate allegations.*

- Did the department attorney provide to the HA and OIG written confirmation of penalty discussions?

  *The department attorney provided a memorandum addressing the allegation that the sergeant was dishonest with the Office of Internal Affairs during his investigatory interview in the original case. When the matter was discussed with the hiring authority, the determination was made to request a new investigation into whether the sergeant provided false testimony under oath. The department attorney did not provide written confirmation of these discussions.*

- Did the HA timely consult with the OIG and the department attorney (if applicable) regarding disciplinary determinations prior to making a final decision?

  *The case was sent to the hiring authority on May 2, 2012. The penalty determinations did not take place until June 11, 2012.*

- Did the HA, who participated in the findings conference, identify the appropriate subjects and factual allegations for each subject based on the evidence?

  *The hiring authority, during the findings conference, pointed out that the allegation was mistyped in the body of the request for investigation. The request for investigation incorrectly asked that the Office of Internal Affairs consider the allegation that the sergeant provided false statements to Office of Internal Affairs on the original case regarding the sergeant who assaulted the subject of this case. The request for investigation did not address the false testimony under oath. The hiring authority chose to not address that allegation in this case.*

- Did the HA timely consult with the OIG and department attorney (if applicable), regarding the sufficiency of the investigation and the investigative findings?

  *The case was sent to the hiring authority on May 2, 2012. The investigatory findings conference did not take place until June 11, 2012, or after the passage of 40 days.*

- Did OIA Central Intake make an appropriate initial determination regarding the case?

  *During discussion with the Office of Internal Affairs, the OIG representative stated that the false testimony under oath by the sergeant should be added to the allegations to be investigated. The OIG recommended the case be approved for investigation to include allegations that the sergeant testified falsely under oath. After extensive discussion, including a presentation by the department attorney, only the allegation that the sergeant was dishonest during his Office of Internal Affairs interview was included. The matter was returned to the hiring authority for disciplinary action without an investigation.*

- Did OIA Central Intake make a determination regarding the case within 30 calendar days?

  *The request for investigation was sent to the Office of Internal Affairs, on February 22, 2012. The Office of Internal Affairs returned the case for disciplinary action without an investigation on May 2, 2012, or after the passage of 71 days.*

- Was the matter referred to the OIA as soon as reasonably practical, within 45 calendar days of the date of discovery?

  *The department learned of the alleged misconduct during an State Personnel Board hearing on October 17, 2011. The request for investigation was sent to the Office of Internal Affairs on February 22, 2012, or after the passage of 129 days.*

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2009-09-01** | **11-0346-IR** | 1. **Dishonesty** <br> 2. **Failure to Report** <br> 3. **Overfamiliarity** | 1. **Sustained** <br> 2. **Sustained** <br> 3. **Sustained** | **Dismissal** | **Insufficient** |

## Facts of the Case

In September 2009, a case records technician allegedly engaged in an overly familiar relationship with a parolee by living with and giving birth to his child. The case records technician failed to notify her hiring authority of the relationship. It was further alleged that the case records technician was dishonest when she told the parolee's parole agent that the department was aware of her relationship. Further, the case records technician allegedly attempted to persuade her supervisor to tell the parolee's parole agent that the case records technician had previously notified the hiring authority of the relationship, when in fact, she had not.

# SOUTH REGION

## Disposition

The hiring authority determined there was sufficient evidence to sustain the allegations and dismissed the case records technician. The case records technician filed an appeal with the State Personnel Board. The State Personnel Board dismissed the appeal after the case records technician failed to appear for a hearing.

## Disciplinary Assessment

The hiring authority and the department attorney failed to exercise due diligence in addressing misconduct. The department became aware of the alleged misconduct in September 2009, but did not take disciplinary action until October 2011. The department attorney did not provide written confirmation of penalty discussions to the OIG, nor did the department attorney appropriately draft the disciplinary action. The disciplinary action required revisions before it was appropriate to serve on the case records technician.

## Assessment Questions

- Was the disciplinary phase conducted with due diligence by the department?

  *The department learned of the misconduct on September 24, 2009, but did not refer the matter to the Office of Internal Affairs until approximately three months later on December 29, 2009. The case was referred back to the hiring authority for disciplinary action with no investigation. Although the department attorney was assigned on February 25, 2010, it does not appear that he conducted a thorough review of the case until September 2011, when he requested the Office of Internal Affairs approve a subject interview. Disciplinary determinations were not made until October 2011, two years after the misconduct was discovered. The OIG did not initially monitor the case, but determined it was necessary due to the lack of diligence by the department in bringing the case to closure.*

- Was the draft disciplinary action provided to the OIG for review appropriately drafted as described in the DOM?

  *The draft disciplinary action was neither properly formatted as required, nor did it contain accurate and sufficient facts to support the action. The OIG made numerous recommendations in order to bring the document into compliance with departmental policy.*

- Did the department attorney provide to the HA and OIG written confirmation of penalty discussions?

  *The OIG did not receive written confirmation of penalty discussions. Additionally, there is no indication in the case management system that the department attorney provided written confirmation of penalty discussions to the hiring authority.*

- Did OIA Central Intake make a determination regarding the case within 30 calendar days?

  *OIA Central Intake received the case on December 29, 2009, but did not make a determination until February 10, 2010.*

- Was the matter referred to the OIA as soon as reasonably practical, within 45 calendar days of the date of discovery?

  *The hiring authority learned of the matter on September 24, 2009, but did not refer the matter to the Office of Internal Affairs until December 29, 2009.*

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-03-01 | 11-0348-IR | 1. Dishonesty<br>2. Overfamiliarity<br>3. Sexual Misconduct<br>4. Contraband | 1. Sustained<br>2. Sustained<br>3. Not Sustained<br>4. Not Sustained | Dismissal | Sufficient |

## Facts of the Case

In March 2010, a lead custodian was allegedly involved in overly familiar relationships with two inmates. Specifically, the custodian provided her telephone number to the inmates and engaged in sexually explicit correspondence with one of them. She also allegedly got a tattoo of the name of one of the inmates on her wrist. It was further alleged that the custodian was providing drugs and mobile phones to the inmates and that she lied during her interview with the Office of Internal Affairs.

## Disposition

The hiring authority determined there was sufficient evidence to sustain one allegation of over-familiarity and one allegation of dishonesty, and served the lead custodian with notice of dismissal. The lead custodian filed an appeal with the State Personnel Board. However, the State Personnel Board dismissed the appeal when the lead custodian failed to appear at the pre-hearing settlement conference.

## Disciplinary Assessment

The hiring authority made appropriate findings and selected a penalty that was supported by the department's policies and procedures. Additionally, the disciplinary phase of the case was handled in a timely manner.

# SOUTH REGION

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-04-17 | 10-3573-IR | 1. Dishonesty<br>2. Unreasonable Use of Force<br>3. Neglect of Duty | 1. Sustained<br>2. Sustained<br>3. Sustained | Dismissal | Insufficient |

## Facts of the Case

On April 17, 2010, a sergeant and two officers allegedly conducted a cell extraction and used unnecessary force on an inmate. Specifically, it was alleged that an inmate covered up the window to his cell for several hours and refused to take the covering down. The sergeant allegedly ordered the cell door opened and he and the two officers went into the cell and forced the inmate down on his bunk causing swelling and bruising to the inmate's head and face. It was also alleged that the sergeant and two officers were dishonest in their reports regarding the incident.

## Disposition

The hiring authority determined there was sufficient evidence to sustain some of the allegations against each of the employees. The hiring authority determined the sergeant was neglectful when he ordered the emergency cell extraction and in using unnecessary force on the inmate. The hiring authority further found the sergeant was dishonest in his reporting of the incident. The hiring authority found that both officers were also dishonest in their reporting of the incident and in their investigative interviews. The hiring authority dismissed all three employees. The sergeant and officers each filed an appeal with the State Personnel Board. A subsequent hiring authority settled the cases. All employees were returned to work after having served an eight month suspension. The OIG did not concur with the settlement with the sergeant.

## Disciplinary Assessment

The department failed to comply with its policies and procedures governing the disciplinary process. The department attorney failed to consult with the OIG concerning settlement. Although the department attorney and hiring authority met with the OIG concerning settlement, they failed to apprise the OIG that offers to settle had already been extended to the three employees. Further, the OIG advised it would seek a higher level of review if the hiring authority chose to settle with the sergeant. Despite this fact, the department attorney reached an agreement to settle with the sergeant before a higher level of review could take place. The department attorney's conduct did not comply with policies and procedures, and hampered the OIG's ability to conduct oversight.

# SOUTH REGION

## Assessment Questions

- Did the HA cooperate with and provide continual real-time consultation with the OIG throughout the disciplinary phase, until all proceedings were completed, except for those related to a writ?

  *Although the hiring authority was aware the OIG was monitoring this case, he allowed the department attorney to extend offers to settle prior to consulting the OIG.*

- Did the department attorney or disciplinary officer cooperate with and provide continual real-time consultation with the OIG throughout the disciplinary phase, until all proceedings were completed, except for those related to a writ?

  *The department attorney did not provide the OIG with a pre-hearing settlement conference statement, nor did the department attorney discuss hearing strategy with the OIG or inform the OIG that he was going to be conducting witness preparation. The department attorney also extended offers to settle to all three subjects before consulting the OIG, thereby preventing the OIG from seeking a higher level of review to challenge the hiring authority's decision to settle with the sergeant.*

- If the penalty was modified by department action or a settlement agreement, did OIG concur with the modification?

  *The OIG did not oppose settlement with the two officers; however strongly opposed settlement with the sergeant.*

- Did the HA consult with the OIG and department attorney (if applicable) before modifying the penalty or agreeing to a settlement?

  *Although the hiring authority and department attorney consulted with the OIG about settlement, that consultation did not take place until after offers to settle had been extended to the employees. The untimely consultation with the OIG rendered the consultation ineffective. The OIG was not informed that the offers had already been extended to the employees at the time of the purported consultation.*

- If there was a settlement agreement, was the settlement consistent with the DOM factors?

  *The subsequent hiring authority and department attorney took the position that the evidence was insufficient to sustain the dismissals and that settlement would provide finality to the case. The OIG disagreed with the department's assessment.*

- Did the department's advocate who appeared at the pre-hearing/settlement conference have full familiarity with the facts and issues in the case?

  *The department attorney did not have full familiarity with the facts and issues in the case. The department attorney was promoting settlement; however, when questioned by the hiring authority why settlement was appropriate, the department attorney did not cite to any facts or perceived weaknesses.*

- Was the OIG provided with a draft of the pre-hearing/settlement conference statement prior to it being filed?

  *The department attorney did not provide the OIG with a copy of the pre-hearing settlement conference statement.*

- Did the department file a written pre-hearing/settlement conference statement with the SPB containing all required information including, but not limited to, a summary of stipulated facts, time estimate, number of witness with a brief statement of expected testimony, list of documentary evidence, and statement of significant evidentiary issues?

  *The department attorney did not provide the OIG with a copy of the pre-hearing settlement conference statement.*

- Did the department attorney provide to the HA and OIG written confirmation of penalty discussions?

  *The department attorney did not provide the hiring authority and OIG written confirmation of penalty discussions.*

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2010-06-15** | **11-0217-IR** | 1.  Insubordination | 1.  Sustained | **Salary Reduction** | **Sufficient** |

## Facts of the Case

On June 15, 2010, a lieutenant was advised that his attorney's refusal to abide by the department's rules regarding the digital recording of witness interviews was impeding an Office of Internal Affairs investigation. The lieutenant was ordered to participate in the interview and to return within two hours with a representative who would not interfere with the investigation. The lieutenant was allegedly insubordinate when he failed to return for his interview and failed to participate in an interview.

## Disposition

The hiring authority determined there was sufficient evidence to sustain the allegation and imposed a 5 percent salary reduction for three months. The lieutenant filed an appeal with the State Personnel Board. After a hearing, the State Personnel Board upheld the penalty.

# SOUTH REGION

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-07-06 | 10-2578-IR | 1. Unreasonable Use of Force<br>2. Discourteous Treatment<br>3. Dishonesty<br>4. Failure to Report | 1. Sustained<br>2. Sustained<br>3. Not Sustained<br>4. Not Sustained | Salary Reduction | Insufficient |

## Facts of the Case

On July 6, 2010, a lieutenant allegedly exchanged profanities with an inmate while in the lieutenant's office. It was further alleged the lieutenant, in a fit of anger, grabbed the seated and restrained inmate on the chest and pushed him to the ground. The lieutenant also allegedly failed to complete a use-of-force report and provided misleading statements to his supervisor. It was further alleged that a licensed vocational nurse falsified a report of injury by the inmate by failing to document how the inmate stated he sustained his observable injuries.

## Disposition

The hiring authority sustained allegations that the lieutenant was discourteous to the inmate and used unnecessary force against the inmate. The hiring authority did not sustain allegations that the lieutenant provided misleading statements to his supervisor or that the lieutenant failed to complete a use-of-force report. The hiring authority imposed a 5 percent salary reduction for nine months. The lieutenant filed an appeal with the State Personnel Board. Prior to the State Personnel Board hearing, the hiring authority settled the case for a 5 percent salary reduction for three months. The OIG did not concur. The hiring authority determined there was insufficient evidence to sustain the allegations against the licensed vocational nurse.

## Disciplinary Assessment

The hiring authority substantially complied with policies and procedures, although the department attorney did not. The department attorney settled this matter without appropriate consultation with the hiring authority or the OIG. The department attorney conveyed an offer to the lieutenant with which the OIG did not agree. The lieutenant rejected the offer. In a subsequent hearing before the State Personnel Board, the department attorney renewed the same offer, without consulting the OIG or the hiring authority. The lieutenant accepted the offer. The department attorney did not inform anyone of the settlement until he sent the stipulation to the hiring authority.

# SOUTH REGION

## Assessment Questions

- Was the disciplinary phase conducted with due diligence by the department?

  *The draft disciplinary action was missing key language, and the statement of facts supporting the allegations was insufficient. In addition, the department attorney failed to adequately consult with the OIG regarding settlement discussions.*

- Did the department attorney or disciplinary officer cooperate with and provide continual real-time consultation with the OIG throughout the disciplinary phase, until all proceedings were completed, except for those related to a writ?

  *The department attorney failed to provide the OIG with written confirmation of the penalty discussions and draft pre-hearing settlement conference statement, and also failed to adequately consult with the OIG regarding settlement discussions. Despite requests, the department attorney also failed to provide the OIG with the CDC Form 3021.*

- Did the department's advocate adequately subpoena and prepare available witnesses for the hearing?

  *There is no indication that the department attorney subpoenaed any witnesses.*

- If the penalty was modified by department action or a settlement agreement, did OIG concur with the modification?

  *The OIG did not agree with the settlement proposition made by the department attorney and the hiring authority. The OIG was not made aware that the lieutenant had accepted the offer after it had previously been rejected. The department attorney never informed the OIG that the matter was settled and instead represented that the matter was scheduled for a hearing with the State Personnel Board.*

- Did the HA consult with the OIG and department attorney (if applicable) before modifying the penalty or agreeing to a settlement?

  *After the rejection of the offer made at the pre-hearing settlement conference, neither the hiring authority nor the department attorney consulted with the OIG. The department attorney entered into the settlement agreement with the lieutenant without consultation with the hiring authority or the OIG. The lieutenant initially rejected the offer and, when asked, the department attorney told the OIG that the matter was scheduled for a hearing with the State Personnel Board. However, the hiring authority provided the OIG with a stipulation wherein the department attorney agreed to settle the matter. This stipulation was never provided to the OIG by the department attorney, and the department attorney never informed the OIG that the case had in fact been settled.*

- If the case settled, did the department attorney or disciplinary officer properly complete the CDC Form 3021?

  *Despite numerous requests of the department attorney, the form was never provided.*

- If there was a settlement agreement, was the settlement consistent with the DOM factors?

  *When the offer to settle was originally discussed with the hiring authority on the day of the pre-hearing settlement conference, the hiring authority initially agreed to settle the matter for what he recommended in his role as Skelly officer. The OIG objected, partially on the ground that the factors surrounding settlements outlined in the department's policies and procedures were not discussed by either the department attorney or the hiring authority. This caused the initial settlement offer tendered by the hiring authority to be withdrawn only to be tendered once again in an in-court conversation with the State Personnel Board administrative law judge. The renewed offer, which was subsequently rejected by the lieutenant at the pre-hearing settlement conference, was eventually accepted by the lieutenant a few days before the scheduled start of the State Personnel Board hearing scheduled for this case. The OIG was provided an executed stipulation by the institution that was entered into months after the initial offer was made. At no time were the department's policies and procedures regarding settlement ever discussed prior to the entry of this settlement agreement.*

- Was the OIG provided with a draft of the pre-hearing/settlement conference statement prior to it being filed?

  *Despite two requests that the pre-hearing settlement conference statement be provided to the OIG, the department attorney failed to provide the document.*

- Was the draft disciplinary action provided to the OIG for review appropriately drafted as described in the DOM?

  *The draft disciplinary action was missing key language, and the statement of facts supporting the allegations was insufficient.*

- Did the department attorney provide to the HA and OIG written confirmation of penalty discussions?

  *The department attorney did not provide written confirmation of penalty discussions with the hiring authority or the OIG.*

- Did the department attorney provide appropriate legal consultation to the HA regarding disciplinary determinations?

  *Although the department attorney provided a written evaluation of the investigation and recommendations regarding the allegations, the department attorney recommended a lower penalty than contemplated by department policies without due consideration of aggravating and mitigating factors.*

# SOUTH REGION

- Within 21 calendar days, did the department attorney make an entry into CMS accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

  *The department attorney did not make an entry into the case management system confirming the required information.*

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-08-24 | 10-3332-IR | 1. Battery - on other person<br>2. Discharge of Lethal Weapon | 1. Sustained<br>2. Sustained | Dismissal | Sufficient |

## Facts of the Case

Between August 24, 2010, and August 25, 2010, it was alleged an officer and his wife were engaged in a domestic dispute. The officer allegedly grabbed his wife's arm the night before. In the morning, the officer allegedly began drinking beer and when the argument resumed, he allegedly retrieved a pistol and fired it into the ground. The officer's wife contacted local law enforcement officers who arrested the officer. The district attorney declined to file charges.

## Disposition

The hiring authority determined there was sufficient evidence to sustain the allegations and dismissed the officer. The officer filed an appeal with the State Personnel Board. Following a hearing, the State Personnel Board dismissed a number of allegations against the officer, but upheld the dismissal penalty. The OIG concurred with the State Personnel Board's decision to sustain the dismissal penalty.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-10-29 | 10-3911-IR | 1. Dishonesty<br>2. Failure to Report<br>3. Contraband<br>4. Neglect of Duty | 1. Sustained<br>2. Sustained<br>3. Sustained<br>4. Not Sustained | Dismissal | Insufficient |

## Facts of the Case

On October 29, 2010, an officer allegedly left his assigned post without authorization to conduct searches of laundry bags coming into the institution from an outside source. The officer claimed that an undisclosed confidential inmate informant told him contraband was being introduced to the institution through the laundry. The officer proceeded by emptying the clean clothes from one laundry bag onto the floor of the laundry room. Another officer left the area to retrieve an empty laundry cart for the clean clothes. When the second officer returned, the first officer had in his possession a bag with tobacco and rolling papers. The second officer reviewed a security video which showed the first officer removed a bag from his jumpsuit. When a sergeant was informed of the situation, the sergeant refused to get involved. It was further alleged that the first officer was dishonest during his investigatory interview.

## Disposition

The hiring authority sustained the allegations against the officer and served him with a notice of dismissal. The hiring authority also sustained the allegation against the sergeant and imposed a 5 percent salary reduction for 24 months. The department and the sergeant entered into a settlement agreement reducing his penalty to a 5 percent salary reduction for 16 months. The OIG concurred. The officer failed to appear for his State Personnel Board hearing; therefore, his appeal was deemed withdrawn.

## Disciplinary Assessment

The hiring authority complied with the department's policies and procedures; however, the department attorney did not. The draft disciplinary action omitted several relevant facts and misidentified the institution. The department attorney was reluctant to cooperate with the OIG attorney when asked for a copy of the pre-hearing settlement conference statement. Although the department attorney finally sent three separate drafts of the pre-hearing settlement conference statement, he never sent a copy of the final statement that was filed with the State Personnel Board. The department attorney did not consult with the OIG or communicate with the hiring authority regarding the hearing. Less than two weeks before the hearing, the department attorney had not yet served subpoenas on critical witnesses. When the department attorney finally requested the institution's disciplinary officer to serve the subpoenas, it became clear that the department would be unable to produce critical witnesses, including the officer who initially reported the misconduct, as he was out-of-state on vacation. The department attorney failed to conduct witness preparation as required, never consulted with the OIG regarding the hearing, never provided any of the requested documents, and never held settlement discussions with the hiring authority or the OIG as required.

# SOUTH REGION

## Assessment Questions

- Was the disciplinary phase conducted with due diligence by the department?

  *Twelve days before the scheduled State Personnel Board hearing, the OIG sent an e-mail request to the department attorney for the hearing materials, including a list of witnesses he intended to call at the hearing. The OIG never received any of the requested documents prior to the hearing. However, four business days prior to the start of the hearing, the department attorney sent the institution a number of subpoenas for service on witnesses for the hearing. The subpoenas were sent to the employee relations officer for service. However, the employee relations officer was not available at the time and attempted service of the subpoenas three business days prior to the start of the hearing. Also three business days before the start of the hearing, the department attorney sent an e-mail to the employee relations officer requesting that a copy of the witnesses' Office of Internal Affairs interviews be provided to allow the witnesses to refresh their recollection. In the same e-mail, the department attorney requested that photographs taken in relation to the case be provided as well. As a result of the delay in the issuance of the subpoenas and the failure to adequately prepare for the hearing, critical witnesses, including percipient witnesses to the misconduct, were unavailable for service of the subpoenas or to attend the hearing.*

- Did the department attorney or disciplinary officer cooperate with and provide continual real-time consultation with the OIG throughout the disciplinary phase, until all proceedings were completed, except for those related to a writ?

  *The department attorney failed to provide requested documents and to consult with the OIG at any point during the disciplinary phase.*

- Did the department's advocate adequately and appropriately address legal issues prior to and during the SPB hearing?

  *The department attorney appropriately consolidated the officer and sergeant's cases after this was brought to his attention by the OIG. However, the department attorney failed to prepare for the case and address any legal issues prior to the case as evidenced by the department attorney's failure to subpoena witnesses for the hearing.*

- Did the department's advocate adequately subpoena and prepare available witnesses for the hearing?

  *Eleven days before the scheduled State Personnel Board hearing for the officer, the OIG learned that no subpoenas had been issued in the case. Having not been informed of any continuances or other scheduling issues, the OIG contacted the department attorney requesting the department attorney's trial notebook the same day. There was no response from the department attorney. Six days later, the department attorney sent a number of subpoenas to the institution for service on necessary witnesses at the institution. The subpoenas were sent to the disciplinary officer, and no information was shared with the OIG regarding the fact that witnesses had not been subpoenaed. During the process of attempting to serve the subpoenas, the disciplinary officer informed the department attorney and the OIG that critical witnesses, including the single most critical witness to the case, were unavailable at the time the hearing was scheduled.*

- If the case settled, did the department attorney or disciplinary officer properly complete the CDC Form 3021?

  *The department attorney did not provide a CDC Form 3021 to the OIG.*

- Did the department enter into a settlement agreement with the employee(s)?

  *A settlement was reached with the sergeant only.*

- Was the OIG provided with a draft of the pre-hearing/settlement conference statement prior to it being filed?

  *The department attorney was reluctant to cooperate with the OIG when asked twice for a copy of the pre-hearing settlement conference statement. The department attorney failed to respond to the first request. When the second request was made, the department attorney sent rough copies of his pre-hearing settlement conference statements electronically questioning why the OIG was requesting the documents three weeks prior to the hearing. Additionally, the department attorney sent three separate drafts of the settlement conference statement, but never sent a copy of the statement that was filed with the State Personnel Board.*

- Was the draft disciplinary action provided to the OIG for review appropriately drafted as described in the DOM?

  *The draft disciplinary action did not include all of the supporting facts, nor did it provide basic details regarding the allegations. Additionally, the draft disciplinary action incorrectly specified that the misconduct happened at another institution. These deficiencies were brought to the attention of the department attorney who did modify the final draft to be in substantial compliance with policies and procedures.*

- Did the department attorney provide to the HA and OIG written confirmation of penalty discussions?

  *The department attorney did not provide written confirmation of penalty discussions.*

- Within 21 calendar days, did the department attorney make an entry into CMS accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

  *The department attorney did not confirm the relevant dates.*

# SOUTH REGION

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-11-04 | 11-0384-IR | 1. Other Failure of Good Behavior<br>2. Domestic Violence | 1. Sustained<br>2. Sustained | Suspension | Insufficient |

## Facts of the Case

On November 4, 2010, an officer allegedly punched his girlfriend in the face, grabbed her arms, and placed her in a "Full Nelson" wrestling hold. Outside law enforcement officers responded and the officer was arrested.

## Disposition

The hiring authority determined there was sufficient evidence to sustain the allegations against the officer and imposed a 12 working-day suspension. The officer filed an appeal with the State Personnel Board. At the pre-hearing settlement conference, the parties began negotiating a settlement in consultation with the hiring authority. Ultimately, based on the open reluctance and hostility of the domestic violence victim in this case, it was agreed to modify the penalty to 9 working-day suspension, with no back pay, and removal of the disciplinary action in 18 months. Given the minimal injury in this case, the recanting victim, and the victim's adamant claims that the officer was acting in defense of property, the OIG concurred with the settlement.

## Disciplinary Assessment

Overall, the hiring authority substantially complied with the department's policies and procedures; however, the department attorney did not. The department attorney provided inaccurate advice to the hiring authority regarding the ability to subpoena a district attorney's representative to testify regarding the criminal filing decision in this matter. The disciplinary action contained supporting information that was beyond the deadline for taking disciplinary action. This supporting information was stricken by an administrative law judge upon motion of the officer's attorney. The department attorney further failed to provide the OIG with a copy of a required case settlement report.

## Assessment Questions

- Was the disciplinary phase conducted with due diligence by the department?

  *The disciplinary action contained supporting information that was beyond the deadline for taking disciplinary action. This supporting information was stricken by an administrative law judge upon motion of the officer's attorney.*

- If the case settled, did the department attorney or disciplinary officer properly complete the CDC Form 3021?

  *The department attorney failed to complete a CDC Form 3021.*

- Was the disciplinary action served on the employee(s) appropriately drafted as described in the DOM?

  *The disciplinary action contained supporting information that was beyond the deadline for taking disciplinary action. This supporting information was stricken by the administrative law judge upon motion of the officer's attorney.*

- Did the department attorney or disciplinary officer provide the OIG with a copy of the draft disciplinary action and consult with the OIG?

  *The department attorney failed to provide the OIG with a copy of the draft disciplinary action and failed to consult with the OIG.*

- Did the department attorney provide to the HA and OIG written confirmation of penalty discussions?

  *The department attorney failed to provide written confirmation of penalty discussions.*

- Did the department attorney provide appropriate legal consultation to the HA regarding disciplinary determinations?

  *The department attorney opined that the district attorney's office could be subpoenaed at a hearing to explain its reasons for declining to file domestic violence criminal charges. This idea is erroneous since the evidence is irrelevant and any effort to subpoena the district attorney's office for such purposes would be quashed.*

- If the HA consulted with the OIG concerning the sufficiency of the investigation and the investigative findings, was the HA adequately prepared?

  *Initially, the hiring authority was not prepared to proceed and, at the OIG's recommendation, the findings and penalty conference was postponed to a later date at which time the hiring authority was prepared.*

# SOUTH REGION

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2010-12-01** | **11-0571-IR** | 1. **Careless Discharge of a Weapon** | 1. **Sustained** | **Salary Reduction** | **Insufficient** |

## Facts of the Case

It was alleged on December 1, 2010, an officer accidently discharged his firearm while at Crisis Response Team range training. The officer was inside a department vehicle when he removed his firearm from its holster causing the discharge of one round. The round went through the holster and into the back of the vehicle seat. There were no injuries.

## Disposition

The hiring authority sustained the allegation and imposed a 5 percent salary reduction for six months. The officer filed an appeal with the State Personnel Board. The department and the officer entered into a settlement agreement reducing the penalty to a 5 percent salary reduction for three months, and agreeing to remove the action from the officer's official personnel file before the standard three years. The hiring authority believed reduction in penalty was appropriate because in addition to the disciplinary action, the officer had also been removed from the Crisis Response Team, which the hiring authority considered to be an additional penalty. While the OIG agreed with the reduction in penalty, it was not informed, and did not agree, to removing the entire action from the officer's official personnel file before the standard three years.

## Disciplinary Assessment

The hiring authority failed to conduct the disciplinary process in a timely manner. The incident occurred in December 2010; however, the officer was not served with the disciplinary action until almost one year later. The hiring authority sufficiently complied with the department's policies and procedures regarding findings and penalty.

## Assessment Questions

- Was the disciplinary phase conducted with due diligence by the department?

  *The incident occurred on December 1, 2010; however, the decision to take action was not made by the hiring authority until June 6, 2011. Additionally, the officer was not served with the disciplinary action until September 2011.*

- If the penalty was modified by department action or a settlement agreement, did OIG concur with the modification?

  *Although the OIG believed the original penalty was appropriate, it did not object to the settlement. However, it is noted that the OIG was not apprised of all of the terms of the settlement until after the matter was completed and would not have concurred with some aspects of the settlement.*

- If the case settled, did the department attorney or disciplinary officer properly complete the CDC Form 3021?

  *The disciplinary officer did not complete the CDCR Form 3021.*

- Did the HA timely consult with the OIG and the department attorney (if applicable) regarding disciplinary determinations prior to making a final decision?

  *The Office of Internal Affairs referred the matter to the hiring authority on February 24, 2011. The hiring authority did not consult with the OIG regarding the disciplinary determinations until May 17, 2011, more than 14 calendar days after receipt of the case.*

- Did the HA timely consult with the OIG and department attorney (if applicable), regarding the sufficiency of the investigation and the investigative findings?

  *The Office of Internal Affairs referred the matter to the hiring authority on February 24, 2011. The hiring authority did not consult with the OIG regarding the sufficiency of the investigation and the investigative findings until May 17, 2011, more than 14 calendar days after receipt of the case.*

- Did the disciplinary officer make an entry into CMS prior to the findings conference accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

  *The disciplinary officer did not make an entry into CMS regarding the deadline for taking disciplinary action.*

# SOUTH REGION

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2010-12-04** | **11-0385-IR** | 1. **Dishonesty**<br>2. **Contraband**<br>3. **Neglect of Duty**<br>4. **Other Failure of Good Behavior**<br>5. **Discourteous Treatment** | 1. **Sustained**<br>2. **Sustained**<br>3. **Sustained**<br>4. **Not Sustained**<br>5. **Not Sustained** | **Dismissal** | **Insufficient** |

## Facts of the Case

On December 4, 2010, an officer was arrested for battery on his ex-wife. At the time of his arrest it was discovered that he was in possession of a loaded firearm that he allegedly was unqualified to possess. It was also alleged the officer was dishonest during an interview with the Office of Internal Affairs when he denied taking his personal mobile phone inside the secured perimeter of the institution and using it while he was on duty.

## Disposition

The hiring authority determined there was sufficient evidence to sustain the allegations of possession of a firearm, taking a mobile phone inside a secure perimeter, and dishonesty, and dismissed the officer. The hiring authority did not sustain the allegation of domestic violence. The officer filed an appeal with the State Personnel Board. Prior to hearing, the department attorney determined the department would not be successful at hearing; therefore, the hiring authority revoked the penalty and allowed the officer to return to work. Under the circumstances, the OIG found the agreement to be reasonable.

## Disciplinary Assessment

Overall, the hiring authority substantially complied with the department's policies and procedures; however, the department attorneys and their supervisor did not. The disciplinary action did not fully state the facts supporting the action as required by the department's policies and procedures. Additionally, the pre-hearing settlement conference statement was deficient in that it did not list all relevant witnesses or documents to support the department's case before the State Personnel Board. Based on these deficiencies, it was unlikely the department would prevail at hearing and, therefore, the hiring authority made an appropriate decision to enter into a settlement agreement with the officer.

# SOUTH REGION

## Assessment Questions

- Did the department's advocate adequately subpoena and prepare available witnesses for the hearing?

  *The department attorney did not subpoena all necessary witnesses, partly because she did not include all necessary witnesses on the pre-hearing settlement conference statement.*

- If the case settled, did the department attorney or disciplinary officer properly complete the CDC Form 3021?

  *The Form 3021 failed to contain the true reasons for the settlement, which included a poorly-written disciplinary action and a faulty pre-hearing settlement conference statement.*

- Did the department's advocate who appeared at the pre-hearing/settlement conference have full familiarity with the facts and issues in the case?

  *At the pre-hearing settlement conference, the department attorney, when challenged by the administrative law judge, was not able to fully articulate why, even though the officer ultimately admitted being dishonest, the dishonesty was nonetheless significant and supported dismissal. The department attorney was unfamiliar with controlling appellate case law regarding dishonesty.*

- Was the OIG provided with a draft of the pre-hearing/settlement conference statement prior to it being filed?

  *The attorney did not provide the OIG with a draft of the pre-hearing settlement conference statement before it was filed with the State Personnel Board.*

- Did the department file a written pre-hearing/settlement conference statement with the SPB containing all required information including, but not limited to, a summary of stipulated facts, time estimate, number of witness with a brief statement of expected testimony, list of documentary evidence, and statement of significant evidentiary issues?

  *Although the department attorney filed a pre-hearing settlement conference statement, it was deficient in many respects. The statement did not include all necessary witnesses, nor did it list all necessary and relevant documentary evidence.*

- Was the disciplinary action served on the employee(s) appropriately drafted as described in the DOM?

  *Even though the attorney's supervisor worked on the disciplinary action, the final action was deficient because it did not include sufficient details of the misconduct nor did it list the necessary documents that would be relied upon to prove the misconduct. As a result of the deficient action, the hiring authority was forced to settle the case and return the officer to work.*

- Was the draft disciplinary action provided to the OIG for review appropriately drafted as described in the DOM?

  *The draft disciplinary action was significantly deficient in many respects. It contained irrelevant material but also failed to include highly relevant information, such as the dates and times the officer made phone calls from his personal mobile phone while he was on duty.*

- Was the notice of intent to take disciplinary action served on the employee(s) appropriately drafted?

  *The OIG was not provided with the notice of intent.*

- Was the CDCR Form 403 documenting the penalty properly completed?

  *The hiring authority did not provide the OIG with the Form 403.*

- Did the department attorney provide to the HA and OIG written confirmation of penalty discussions?

  *Although the attorney provided email confirmation that the findings and penalty conference occurred, he failed to specify which allegations were sustained and the corresponding penalty. The confirmation did not conform to the policy requirements.*

- Was the CDCR Form 402 documenting the findings properly completed?

  *The hiring authority did not provide the OIG with the Form 402.*

# SOUTH REGION

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-12-18 | 11-0258-IR | 1. Dishonesty<br>2. Contraband<br>3. Controlled Substances | 1. Sustained<br>2. Sustained<br>3. Sustained | Dismissal | Sufficient |

## Facts of the Case

On December 18, 2010, Office of Internal Affairs special agents observed a supervising cook remove items from his personal vehicle and place them into a state vehicle. Special agents searched the state vehicle and located a large quantity of marijuana, tobacco, tobacco rolling papers, three mobile phones with chargers, and alcohol. The special agents also searched the supervising cook's home and found numerous items of evidence indicating that the supervising cook had been smuggling contraband items into the institution.

## Disposition

The hiring authority determined there was sufficient evidence to sustain the allegations and dismissed the supervising cook. The supervising cook filed an appeal with the State Personnel Board. Although the supervising cook had been convicted of a felony regarding the conduct at issue, the hiring authority permitted the supervising cook to resign prior to the commencement of the State Personnel Board hearing. The OIG concurred with the settlement.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-01-03 | 11-1655-IR | 1. Unreasonable Use of Force<br>2. Neglect of Duty<br>3. Dishonesty | 1. Sustained<br>2. Sustained<br>3. Not Sustained | Salary Reduction | Insufficient |

## Facts of the Case

On January 3, 2011, a sergeant allegedly used unnecessary force against a disabled inmate who walked with a cane. The sergeant allegedly took the inmate to the ground because the inmate was non-compliant with the sergeant's orders to submit to handcuffs. It was also alleged that the sergeant failed to activate his alarm prior to the use of force, failed to adequately review a subordinate officer's report of the incident, failed to adhere to policy regarding the American with Disabilities Act, and failed to sign his post orders.

## Disposition

The hiring authority determined there was sufficient evidence to sustain the allegations of use of force and neglect of duty, and imposed a 48 working-day suspension. The hiring authority determined there was insufficient evidence to sustain the dishonesty allegation. Following a *Skelly* hearing, the hiring authority agreed to reduce the penalty to a 5 percent salary reduction for six months. The OIG did not concur with the settlement.

## Disciplinary Assessment

Overall, the hiring authority substantially complied with the department's policies and procedures; however, the department attorney did not. The department attorney failed to include an important allegation and supporting facts in the draft disciplinary action. However, upon the OIG's recommendation, the department attorney revised the disciplinary action to include them.

# SOUTH REGION

## Assessment Questions

- If the penalty was modified by department action or a settlement agreement, did OIG concur with the modification?

  *Although the department adequately consulted with the OIG, the OIG did not agree with the terms of the settlement agreement given the gravity of the offenses and the state of the evidence.*

- If the case settled, did the department attorney or disciplinary officer properly complete the CDC Form 3021?

  *The department attorney did not comple the CDCR Form 3021.*

- Was the penalty upheld by the department after a Skelly hearing?

  *The department entered into a settlement with sergeant and agreed to reduce the penalty from a 48-day suspension to a 5 percent salary reduction for six months.*

- Was the draft disciplinary action provided to the OIG for review appropriately drafted as described in the DOM?

  *The draft disciplinary action provided to the OIG did not contain any facts concerning one of the sustained allegations. The OIG recommended that the facts be included, and the department attorney complied with the recommendation.*

- Did the department attorney provide to the HA and OIG written confirmation of penalty discussions?

  *The department attorney failed to provide to the hiring authority and to the OIG written confirmation of penalty discussions.*

- Within 21 calendar days, did the department attorney make an entry into CMS accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

  *Although the department attorney entered the appropriate information into the case management system, the entry was not made within 21 calendar days of his assignment to the case.*

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-03-10 | 11-1535-IR | 1. Dishonesty<br>2. Failure to Report<br>3. Unreasonable Use of Force<br>4. Neglect of Duty<br>5. Discourteous Treatment | 1. Not Sustained<br>2. Not Sustained<br>3. Not Sustained<br>4. Not Sustained<br>5. Not Sustained | No Penalty Imposed | Insufficient |

## Facts of the Case

On March 10, 2011, a sergeant allegedly intervened without cause in the escort of an inmate by another officer. It was alleged the sergeant used unnecessary force on the inmate by grabbing the inmate's handcuffed hands and pulling his hands up towards the inmate's shoulder blades while calling the inmate derogatory names. It was further alleged the sergeant lied during his interview with the Office of Internal Affairs. Additionally, it was alleged that the officer who was in charge of the escort saw the force used by the sergeant and failed to report it.

## Disposition

The hiring authority determined there was insufficient evidence to sustain the allegations.

## Disciplinary Assessment

The hiring authority and department attorney, as well as the attorney's supervisor, failed to comply with department policies and procedures. The hiring authority failed to make disciplinary determinations in a timely manner. Further, at the initial findings conference, the hiring authority sustained several allegations and determined that dismissal was an appropriately penalty for the sergeant. However, the department attorney and his supervisor disagreed with this decision, yet failed to request a higher level of review. Instead, the department attorney and his supervisor met with the hiring authority, without notifying the OIG, at which time the department attorney and his supervisor persuaded the hiring authority to rescind the original decision. Subsequently, the hiring authority held a third findings conference with the department attorney, his supervisor, and the OIG. At this meeting, the hiring authority, in consultation with the department attorney and his supervisor, purported to re-analyze the evidence and decided not to sustain any allegations. The department attorney and his supervisor provided inadequate legal advice to the hiring authority since they did not attend interviews, conduct a site visit, or discuss the case with the special agent. The department attorney and his supervisor indicated that the investigation was not sufficient, yet they failed to ask the special agent to complete any additional investigation. The OIG did not concur with the hiring authority's determination, but chose not to seek a higher level of review.

# SOUTH REGION

## Assessment Questions

- Was the disciplinary phase conducted with due diligence by the department?

  *The investigation was completed and provided to the hiring authority and department attorney on December 23, 2011. However, the hiring authority did not determine the allegations until February 2012.*

- Did the HA cooperate with and provide continual real-time consultation with the OIG throughout the disciplinary phase, until all proceedings were completed, except for those related to a writ?

  *The hiring authority did not consult with the OIG when it met with the department attorney and his supervisor, and came to a final decision regarding the allegations.*

- Did the department attorney or disciplinary officer cooperate with and provide continual real-time consultation with the OIG throughout the disciplinary phase, until all proceedings were completed, except for those related to a writ?

  *The department attorney and his supervisor initiated a meeting with the hiring authority after the initial findings conference without consulting with the OIG. At that meeting, the hiring authority made final determinations regarding the allegations, therefore failing to comply with the department's policies and procedures.*

- Did the HA timely consult with the OIG and the department attorney (if applicable) regarding disciplinary determinations prior to making a final decision?

  *Initially the hiring authority did consult with the OIG and, therefore, some allegations were sustained. However, after the original consultation, the hiring authority met with the department attorney and his supervisor without notice to the OIG and determined that no allegations should be sustained. The hiring authority's ultimate decision regarding disciplinary determinations was made absent OIG consultation.*

- Did the HA, who participated in the findings conference, appropriately determine the investigative findings for each allegation?

  *While the hiring authority made an appropriate decision regarding some of the allegations, the OIG disagreed with several of the hiring authority's decisions concerning the conduct of the sergeant.*

- Did the VA provide appropriate legal consultation to the HA regarding the sufficiency of the investigation and investigative findings?

  *The department attorney advised the hiring authority that the investigation was insufficient; therefore, none of the allegations could be sustained. The OIG did not agree with this position. The investigation was conducted by an experienced special agent who addressed all relevant aspects of the case. It was noted that neither the department attorney, nor his supervisor, were present for any portion of the investigation, did not conduct a site visit of the scene of the incident, and did not consult with the special agent at any time. The department attorney had sufficient time to request the special agent conduct additional investigation prior to the consultation with the hiring authority; however, he did not do so.*

- If the HA determined additional investigation was necessary, was additional investigation requested?

  *The hiring authority determined that the investigation was insufficient; however, it did not request additional investigation. The OIG believed the investigation was sufficient.*

- Did the HA properly determine if additional investigation was necessary?

  *The hiring authority determined that the investigation was insufficient; however, it did not request additional investigation. The OIG believed the investigation was sufficient.*

- Did the HA properly deem the OIA investigation sufficient or insufficient?

  *The OIG did not agree with the hiring authority's determination that the investigation was insufficient.*

- Did the HA timely consult with the OIG and department attorney (if applicable), regarding the sufficiency of the investigation and the investigative findings?

  *The Office of Internal Affairs completed its investigation and referred the matter to the hiring authority on December 23, 2011. The hiring authority did not consult with the OIG and the department attorney regarding the sufficiency of the investigation and the investigative findings until March 6, 2012, only five days before the deadline to take disciplinary action.*

# SOUTH REGION

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2011-03-28** | **11-1079-IR** | 1. **Sexual Misconduct**<br>2. **Overfamiliarity** | 1. **Sustained**<br>2. **Sustained** | **Dismissal** | **Insufficient** |

## Facts of the Case

On March 28, 2011, the Office of Internal Affairs received information that a parole agent was engaged in inappropriate sexual behavior with a female parolee. The parolee was interviewed and alleged that over the course of approximately a year, the parole agent sexually battered the parolee, touched the parolee inappropriately, and solicited sexual favors and massages from the parolee. On April 5, 2011, the parole agent arrived at the parolee's home and was observed on video engaging in the misconduct. Special agents apprehended the parole agent while he was engaged in this activity. The parole agent admitted to his conduct with this parolee and also to inappropriate sexual relations with other parolees on his case load.

## Disposition

The hiring authority sustained the allegations of sexual misconduct and over-familiarity, and served the parole agent with a notice of dismissal. The parole agent filed an appeal with the State Personnel Board. However, the parole agent withdrew his appeal at the State Personnel Board hearing, and the dismissal remained in effect.

## Disciplinary Assessment

Overall, the hiring authority substantially complied with the department's policies and procedures; however, the department attorney did not. The department attorney failed to document the required deadline information into the case management system. Further, the department attorney failed to address a State Personnel Board hearing scheduling conflict in a timely manner. The department attorney inadvertently scheduled the State Personnel Board hearing for this case on the same day as another State Personnel Board hearing, thereby causing the need to have a substitute department attorney prepare for the hearing. The substitute department attorney had little time, less than a week, to prepare for the hearing. Further, despite the fact that the parole agent's misconduct was memorialized on video, and the fact that the hiring authority was steadfast against any settlement, the department attorney continued to attempt to settle in the days prior to the hearing. Based on the evidence in the case, there was no reason to consider settlement. When the substitute department attorney stated that the department would move forward with the case, and just prior to the hearing starting, the parole agent withdrew his appeal.

# SOUTH REGION

## Assessment Questions

- Did the department attorney or disciplinary officer cooperate with and provide continual real-time consultation with the OIG throughout the disciplinary phase, until all proceedings were completed, except for those related to a writ?

  *The department attorney had two State Personnel Board hearings scheduled for the same day and should have known this months before the scheduled start time of the hearings. However, the department attorney did not inform the OIG of the scheduling conflict until a week prior to the hearing. Additionally, in discussions with the OIG regarding hearing strategy, the OIG recommended no settlement discussions and no stipulations to any of the facts of the case. However, as late as a few days before the hearing, after this consultation with the OIG, the department attorney continued to attempt to stipulate to the facts of the case. This was despite the prediction by the OIG that the parole agent would withdraw the appeal if the hearing were forced to move forward. That prediction ultimately was accurate.*

- Did the department's advocate adequately and appropriately address legal issues prior to and during the SPB hearing?

  *The week prior to the hearing, the department attorney informed the OIG that he would not be able to present the department's case because of a scheduling conflict. However, the department attorney did not take any action to have one of the cases reassigned. Rather, the week prior to the hearing, the department attorney contacted the OIG and stated he discussed the matter with the parole agent's attorney, and the two attorneys agreed to postpone the case one day. The department attorney also advised the OIG of an offer made by the parole agent to settle the case and subsequently presented that offer to the hiring authority, which promptly rejected any offer from the parole agent. The department attorney also told the OIG that another attorney would likely be presenting the case because of the scheduling conflict. The following week, at the scheduled State Personnel Board hearing, the administrative law judge asked the substitute department attorney who she was. The administrative law judge advised that the State Personnel Board had been in contact with the original department attorney who apparently did not inform the State Personnel Board of the scheduling conflict. The administrative law judge also had been in contact with the original department attorney regarding the possible delayed hearing, but without a motion to continue the matter, the hearing would go forward as scheduled. This left the substitute department attorney to present the department's case with little time to prepare. Due to the inability to adequately prepare for the hearing, the substitute department attorney entertained various settlement offers made by the parole agent. The OIG attorney stated there was no reason to settle as videotape documented the parole agent engaging in sexual misconduct with the parolee. Still the substitute department attorney conferred with the hiring authority as required, but as the hiring authority absolutely did not agree to any settlement, the department attorney began to proceed with the hearing. Just prior to the start of the hearing the parole agent withdrew his appeal and the termination remained effective.*

- Within 21 calendar days, did the department attorney make an entry into CMS accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

  *The department attorney did not make an entry into the case management system confirming relevant dates.*

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2011-04-30** | **11-2069-IR** | 1. **Failure to Report**<br>2. **Other Criminal Act** | 1. **Sustained**<br>2. **Sustained** | **Salary Reduction** | **Sufficient** |

## Facts of the Case

On April 30, 2011, an officer allegedly threatened to stab two people with a knife he was brandishing in the parking lot of a convenience store. The officer was arrested and charged with felony assault with a deadly weapon and criminal threats, but the charges were later dismissed by the district attorney's office.

## Disposition

The hiring authority determined there was sufficient evidence to sustain the allegations and determined a 10 percent salary reduction for 24 months was the appropriate penalty. However, the officer retired before disciplinary action could be imposed. A letter indicating the officer retired pending disciplinary action was placed in his official personnel file.

## Disciplinary Assessment

The hiring authority substantially complied with the department's policies and procedures. No department attorney was assigned to this case.

# SOUTH REGION

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2011-05-24** | **11-2884-IR** | 1. **Dishonesty**<br>2. **Discourteous Treatment** | 1. **Sustained**<br>2. **Sustained** | **Dismissal** | **Insufficient** |

## Facts of the Case

On May 24, 2011, an officer allegedly used profane and vulgar language with an inmate. The inmate complained to management that the officer used the language and the officer's statements were heard by another officer. On June 20, 2011, when asked about the statements made, the officer allegedly made false statements to a superior officer.

## Disposition

The hiring authority determined there was sufficient evidence to sustain the allegations and dismissed the officer. The officer filed an appeal with the State Personnel Board. The department entered into a settlement agreement with the officer in which he agreed to resign in lieu of dismissal and to never seek future employment with the department. The OIG was not in agreement with this settlement, but the settlement was not unreasonable.

## Disciplinary Assessment

The hiring authority failed to timely submit a request for investigation to the Office of Internal Affairs. The department attorney failed in most critical aspects of this case. The department attorney failed to confirm the date of the incident, date of discovery, and the deadline for taking disciplinary action. Further, the department attorney failed to provide the hiring authority with appropriate legal consultation regarding the findings and the penalty that should be imposed. With regard to the notice of disciplinary action, the department attorney failed to properly document the penalty that was imposed by the hiring authority, and failed to provide sufficient facts within the body of the draft disciplinary action to comply with department policies and procedures. Additionally, the department attorney failed to provide a draft of the disciplinary action to the OIG for review. After the officer filed an appeal with the State Personnel Board, and when the appeal was set for pre-hearing settlement conference, the department attorney failed to provide a draft of the pre-hearing settlement conference statement to the OIG for review prior to it being filed. When the statement was requested and the department attorney sent the filed copy, the OIG notified the department attorney that the statement did not list any witnesses or evidence for this case in the joint pre-hearing settlement conference statement with the officer's other disciplinary action. The department attorney apparently filed an amended pre-hearing settlement conference statement including the witnesses in this case, but again failed to provide the draft of the statement to the OIG. Additionally, despite requests for the same, the department attorney failed to provide the OIG with the officer's pre-hearing settlement conference statement, or the amended pre-hearing settlement conference statement eventually filed with the State Personnel Board. Prior to the pre-hearing settlement conference, the department attorney failed to discuss settlement parameters with the hiring authority, advising the OIG it was because the hiring authority was difficult to reach. At the pre-hearing settlement conference, the officer conveyed an offer to resign in lieu of termination. The department attorney contacted the acting hiring authority and discussed the terms of the settlement, but did not discuss any of the settlement factors related to disciplinary actions as set forth in the department's policies and procedures. When the hiring authority indicated he would allow the officer to resign after having already been terminated, the OIG objected, at which point the department attorney refused to cooperate further with the OIG in violation of departmental policy.

# SOUTH REGION

## Assessment Questions

- Was the disciplinary phase conducted with due diligence by the department?

  *The deficiencies in the disciplinary action as well as the failure of the department attorney to discuss settlement parameters prior to the pre-hearing settlement conference with the hiring authority and the OIG evidences the lack of diligence exercised by the department with the disciplinary process of this officer.*

- Did the department attorney or disciplinary officer cooperate with and provide continual real-time consultation with the OIG throughout the disciplinary phase, until all proceedings were completed, except for those related to a writ?

  *The department attorney failed to cooperate with the OIG at critical stages of the disciplinary proceedings for this case. The department attorney failed to provide a draft copy of the pre-hearing settlement conference statement prior to the statement being filed. When the OIG was finally provided a copy of the already-filed pre-hearing settlement conference statement, it was evident that the department attorney failed to consider the allegations in this case as no witnesses were included in the joint settlement conference statement nor was a separate disciplinary action against the same officer. This was brought to the department attorney's attention who, it appears, filed an amended pre-hearing settlement conference statement with the State Personnel Board. The amended pre-hearing settlement conference statement was similarly not provided to the OIG, and has not been provided by the time of this disciplinary evaluation. At the pre-hearing settlement conference, and after the officer offered to resign in lieu of termination, the department attorney called the hiring authority and discussed the terms of the settlement. The department attorney failed to discuss any departmental policies in consideration of the settlement offer. The OIG disagreed with the decision to allow the officer to resign and expressed that position. The department attorney refused to cooperate further with the OIG in violation of departmental policy.*

- If the penalty was modified by department action or a settlement agreement, did OIG concur with the modification?

  *At the pre-hearing settlement conference on this case, the officer offered to resign in lieu of termination. The department attorney recommended to the hiring authority that this settlement should be agreed upon without any consideration or discussion of any departmental policy factors in favor of settlement. The department attorney did not discuss any of the four prior disciplinary actions against the officer, the facts of the current cases, or the fact that in both of the current cases, the officer had sustained allegations of dishonesty against him. However, the hiring authority was willing to settle the cases without this discussion as the settlement would assure that the officer never returned to employment to the department. The OIG disagreed, but did not find the settlement to be unreasonable.*

- If the case settled, did the department attorney or disciplinary officer properly complete the CDC Form 3021?

  *The department attorney failed to complete the Form 3021 despite a request by OIG.*

- Was the OIG provided with a draft of the pre-hearing/settlement conference statement prior to it being filed?

  *The OIG was not provided a draft of the pre-hearing settlement conference statement prior to it being filed. When the OIG did eventually receive the pre-hearing settlement conference statement filed with the State Personnel Board, the OIG pointed out to the department attorney that he failed to list witnesses and evidence relative to this case within the statement. The department attorney then apparently filed an amended pre-hearing settlement conference statement including the necessary information, but again failed to provide the OIG with either a draft or a copy of the statement, and the department attorney failed to provide a copy of the officer's statement filed with the State Personnel Board.*

- Did the department file a written pre-hearing/settlement conference statement with the SPB containing all required information including, but not limited to, a summary of stipulated facts, time estimate, number of witness with a brief statement of expected testimony, list of documentary evidence, and statement of significant evidentiary issues?

  *The department attorney initially refused to cooperate and provide the material in a timely manner. When the OIG did receive a copy of it, the department attorney failed to include witnesses and evidence relative to this case within the pre-hearing settlement conference statement.*

- Was the draft disciplinary action provided to the OIG for review appropriately drafted as described in the DOM?

  *The draft disciplinary action was not appropriately drafted. The draft disciplinary action stated the incorrect penalty, was poorly worded, and did not state sufficient facts regarding the allegations.*

- Did the department attorney or disciplinary officer provide the OIG with a copy of the draft disciplinary action and consult with the OIG?

  *The department attorney did not provide the draft disciplinary action to the OIG. However, the OIG was provided a copy of the draft by the employee relations officer at the institution.*

- Did the department attorney provide to the HA and OIG written confirmation of penalty discussions?

  *The department attorney provided no written confirmation of penalty discussions.*

# SOUTH REGION

- Did the department attorney provide appropriate legal consultation to the HA regarding disciplinary determinations?

  *The department attorney provided little consultation regarding disciplinary determinations on this case and failed to address any recommendations he might have had in the memorandum provided for that purpose.*

- Did the VA provide appropriate legal consultation to the HA regarding the sufficiency of the investigation and investigative findings?

  *The officer had two pending disciplinary actions at the same time, this case being the second one. The department attorney, prior to the findings and penalty conference, provided a memorandum regarding his recommendations as to findings and penalty. That memorandum failed to address the allegations in this case. When this was pointed out to the department attorney, the department attorney still failed to address his recommendations on this case.*

- Within 21 calendar days, did the department attorney make an entry into CMS accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

  *The department attorney failed to accurately confirm the date of the reported incidences, dates of discovery, and the deadlines for taking disciplinary action. The department attorney did evaluate, incorrectly, the deadline for taking disciplinary action on the later of the allegations, but failed to evaluate the deadline for taking disciplinary action on the misconduct that preceded the officer's dishonesty.*

- Did OIA Central Intake make a determination regarding the case within 30 calendar days?

  *OIA Central Intake received the request on October 19, 2011, but did not approve the matter for direct adverse action without an investigation until November 30, 2011, more than 43 days after the request.*

- Was the matter referred to the OIA as soon as reasonably practical, within 45 calendar days of the date of discovery?

  *The misconduct was alleged by the inmate through an inmate appeal filed on May 29, 2011. The matter was referred to the Office of Internal Affairs on October 19, 2011, more than 144 days later.*

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2011-06-17** | **11-2260-IR** | 1. **Other Failure of Good Behavior** | 1. **Sustained** | **Salary Reduction** | **Insufficient** |

## Facts of the Case

On June 17, 2011, an officer allegedly grabbed his wife's wrist and pulled her off a bed. The officer also allegedly would not allow his wife to leave the residence to seek medical attention unless she agreed not to tell anyone how she hurt her wrist. At the hospital, the wife told a nurse that the officer had caused the injury. Local law enforcement officers arrested the officer for domestic violence.

## Disposition

The hiring authority determined there was sufficient evidence to sustain the allegation and imposed a 10 percent salary reduction for 13 months. During the *Skelly* hearing, the officer and the hiring authority entered into a settlement agreement wherein the penalty was reduced to a 5 percent salary reduction for 13 months. The officer did not file an appeal with the State Personnel Board. The OIG concurred.

## Disciplinary Assessment

The department attorney caused a number of unjustifiable delays and failed in a number of instances to be responsive to the OIG. In preparation for the findings and penalty conference, the department attorney failed to provide a memorandum with a recommended findings and penalty to the OIG. The memorandum was provided to the employee relations officer who in turn provided it to the OIG. Additionally, the department attorney recommended a penalty at the findings and penalty conference that was significantly below the presumptive penalty for this type of misconduct and failed to articulate why the penalty should be mitigated. An analysis of the aggravating and mitigating factors did not support the penalty recommended by the department attorney at the findings and penalty conference. At the *Skelly* hearing, the officer offered to settle the matter after taking responsibility for his conduct. The hiring authority and department attorney consulted with the OIG attorney and the OIG concurred with the settlement because the officer accepted responsibility for his actions. After the settlement was entered into, the OIG requested numerous times that the department attorney provide copies of the stipulation and the required Form 3021. After several requests and after the involvement of the department attorney's supervisor, the stipulation was provided some 22 days after the settlement was reached; however, the Form 3021 was never provided as required by department policy.

# SOUTH REGION

## Assessment Questions

- Was the disciplinary phase conducted with due diligence by the department?

  *The findings and penalty conference did not take place until 62 days after the initial request to schedule the conference.*

- Did the department attorney or disciplinary officer cooperate with and provide continual real-time consultation with the OIG throughout the disciplinary phase, until all proceedings were completed, except for those related to a writ?

  *The department attorney repeatedly failed to respond to requests for information and consult with the OIG.*

- If the case settled, did the department attorney or disciplinary officer properly complete the CDC Form 3021?

  *The OIG requested the department attorney provide a copy of the CDCR Form 3021 a number of times, including sending the same request to his supervisor. The department attorney provided a copy of the stipulation three weeks after the case was settled, but never provided the Form 3021.*

- Did the department attorney provide to the HA and OIG written confirmation of penalty discussions?

  *The department attorney failed to provide the required confirmation of penalty discussions to the hiring authority and to the OIG.*

- Did the department attorney provide appropriate legal consultation to the HA regarding disciplinary determinations?

  *During the findings and penalty conference, the department attorney recommended a penalty that was below the presumptive penalty for this type of misconduct. While the penalty recommended by the department attorney was within the mitigated range of possible penalties, the department attorney did not articulate why the penalty should be mitigated. An analysis of the aggravating and mitigating factors did not support the penalty recommended by the department attorney.*

- Did the HA timely consult with the OIG and the department attorney (if applicable) regarding disciplinary determinations prior to making a final decision?

  *On September 29, 2011, the hiring authority requested that the findings and penalty conference be scheduled. However, due to the department attorney's repeated request for delays, the hiring authority did not hold the findings and penalty conference until 62 days later on November 29, 2011.*

- Did the HA timely consult with the OIG and department attorney (if applicable), regarding the sufficiency of the investigation and the investigative findings?

  *The hiring authority waited several months to consult with the OIG regarding the investigative findings. The delay was attributed in large part to requests by the department attorney to postpone the meeting.*

- Within 21 calendar days, did the department attorney make an entry into CMS accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

  *The department attorney failed to make the required CMS entry of the relevant dates.*

- Did OIA Central Intake make a determination regarding the case within 30 calendar days?

  *The hiring authority submitted the request on June 27, 2011, but OIA Central Intake did not take action until September 7, 2011, more than 30 calendar days after the request.*

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2011-10-06** | **11-2885-IR** | 1. Other Failure of Good Behavior | 1. Sustained | Dismissal | Sufficient |

## Facts of the Case

On October 6, 2011, a lieutenant was convicted of a felony for driving under the influence with prior convictions.

## Disposition

The hiring authority sustained the allegations and determined that dismissal was the appropriate penalty. However, the lieutenant was already separated for being absent without leave prior to the completion of the disciplinary process; therefore, disciplinary action was not taken. A letter indicating the hiring authority sustained the allegation was placed in his official personnel file.

## Disciplinary Assessment

The hiring authority substantially complied with the department's policies and procedures.

# SOUTH REGION

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-12-01 | 12-0873-IR | 1. **Failure to Report**<br>2. **Vandalism**<br>3. **Stalking**<br>4. **Conviction of felony offense**<br>5. **Burglary** | 1. **Sustained**<br>2. **Sustained**<br>3. **Sustained**<br>4. **Sustained**<br>5. **Sustained** | **Dismissal** | **Sufficient** |

## Facts of the Case

Between December 2011 and February 2012, it was alleged an officer committed various criminal acts against his ex-girlfriend. The alleged conduct included vandalizing the ex-girlfriend's car and apartment, breaking into the apartment and stealing the ex-girlfriend's underwear, and threatening to kill her. The ex-girlfriend obtained a temporary restraining order against the officer. The officer allegedly failed to notify the hiring authority of the order. It was further alleged the officer was placed on a 72-hour mental health hold and failed to notify the hiring authority of the event. The officer was arrested and charged with multiple felony offenses, including residential burglary, stalking, threats, and vandalism. He was subsequently convicted of felony stalking.

## Disposition

The hiring authority sustained the allegations and determined dismissal was the appropriate penalty. However, because the officer had already been non-punitively separated from the department due to his failure to report to work, no discipline was imposed. A letter indicating the officer would be served with a disciplinary action should he attempt to reinstate to the department was placed in his official personnel file.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

# APPENDIX C                                                  119
# COMBINED PHASE CASE SUMMARIES
## CENTRAL REGION

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2008-08-16 | 09-2028-IR | 1. Dishonesty<br>2. Neglect of Duty<br>3. Discourteous Treatment<br>4. Medical- Negligent<br>5. Medical- Denial of Care | 1. Sustained<br>2. Sustained<br>3. Sustained<br>4. Sustained<br>5. Sustained | Dismissal | INVESTIGATION<br>**Insufficient**<br>DISCIPLINE<br>**Insufficient** |

## Facts of the Case

On August 16, 2008, officers summoned a licensed psychiatric technician to the cell of an inmate after they observed the inmate displaying bizarre behavior in his cell. When the licensed psychiatric technician contacted the inmate, the inmate continued his bizarre behavior so the licensed psychiatric technician contacted a psychiatrist at the institution. It was alleged the psychiatrist failed to personally evaluate the inmate and allowed the licensed psychiatric technician to determine whether or not the inmate should be taken to the emergency room. It was alleged that a second psychiatrist, who was on call on that date, failed to be available and respond to the institution when called. Several officers removed the inmate from the cell by deploying several canisters of pepper spray into the cell, then using physical force to restrain him. A licensed vocational nurse was present and a member of the cell extraction team. It was alleged that the licensed vocational nurse failed to provide any medical aid and failed to take vital signs from the inmate following the cell extraction. The inmate was carried outside, with his arms restrained behind his back, in a carrier, without having been decontaminated, and with a spit mask over his head and face. The inmate was placed on the ground in over 100 degree heat while officers waited for the ambulance to arrive. A nurse arrived with the ambulance to transport the inmate to the correctional treatment center at the institution. It was alleged that the nurse failed to care for a patient in dire need, failed to communicate necessary information with staff members, failed to take vital signs, or provide any medical attention. It was alleged the nurse made disparaging remarks about the inmate and was discourteous toward other staff members. It was further alleged the nurse was dishonest during his interview conducted by the Office of Internal Affairs. At the correctional treatment center, the inmate was receiving care when a pulse was no longer detected. An attending physician was notified; however, he allegedly left the inmate to review a medical file, allowing five minutes to pass before loss of breathing was also noted and life-saving measures were initiated. Life-saving measures were unsuccessful. An autopsy report revealed that the inmate died as a result of multiple pepper spray exposures.

## Investigative Assessment

OIA Central Intake reviewed this matter and referred it back to the hiring authority for action without an investigation on September 15, 2008. The hiring authority did not make investigation and disciplinary determinations until November 17, 2010, over two years later. At that time, the hiring authority determined an additional investigation was necessary as the involved medical staff members had not been questioned regarding their actions in light of the relevant standards of care for their licensure. On January 4, 2011, almost two and one-half years after the incident, OIA Central Intake corrected its decision and approved an investigation into this matter. Once assigned to a special agent, the special agent conducted a thorough and appropriate investigation with due diligence.

## Assessment Questions

- Did OIA Central Intake make an appropriate initial determination regarding the case?

  *The misconduct occurred on August 16, 2008. On August 18, 2008, the matter was referred to the Office of Internal Affairs. OIA Central Intake returned the matter for action without an investigation. Two and one-half years after the incident, OIA Central Intake was asked to reconsider the matter for an investigation, and at that time corrected its decision and approved an investigation into this matter.*

- Would the appropriate initial determination or reconsideration determination have been made by OIA Central Intake and/or OIA Chief without OIG intervention?

  *The appropriate reconsideration determination would not have been made by OIA Central Intake without OIG intervention.*

- Within 21 calendar days, did the department attorney make an entry into CMS accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

  *The department attorney failed to make an entry into CMS accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline.*

- Did the department provide written confirmation summarizing all critical discussions about the investigative report to the special agent with a copy to the OIG?

  *The department did not provide written confirmation summarizing all critical discussions about the investigative report to the special agent with a copy to the OIG.*

# CENTRAL REGION

## Disposition

The hiring authority did not sustain any of the allegations against the first psychiatrist and determined he did not depart from the standard of care. The first psychiatrist did receive corrective action so as to not defer such a decision to a licensed psychiatric technician in the future. The hiring authority determined there was insufficient evidence to sustain the allegations against the second psychiatrist and made no finding. The licensed vocational nurse was exonerated. The hiring authority did not sustain any of the allegations against the attending physician and determined he acted within the standard of care. The hiring authority sustained all of the allegations against the nurse and dismissed the nurse. The nurse filed an appeal with the State Personnel Board. The department and the nurse entered into a settlement agreement in which the nurse agreed to resign in lieu of termination and to never seek or accept future employment with the department. The department agreed to pay to the nurse six months of salary and benefits. The OIG did not concur with the department's decision to pay the nurse six months of salary and benefits.

## Disciplinary Assessment

The hiring authority delayed two years and three months in making the initial investigative findings. Following the investigation, the final investigative findings and penalty determinations were made 2 years and 11 months following the incident. This delay adversely impacted the case and resulted in an unreasonable disposition. The department attorney did not provide appropriate legal consultation to the hiring authority and was unprepared, resulting in numerous consultations being required. Once the investigative report was received, the hiring authority was able to conduct the consultation within one day and serve the disciplinary action within the required time.

# CENTRAL REGION

## Assessment Questions

- Was the disciplinary phase conducted with due diligence by the department?

  *The disciplinary phase was not conducted with due diligence as the investigative findings and penalty determinations were conducted with just over one month prior to take disciplinary action.*

- Did the department attorney or disciplinary officer cooperate with and provide continual real-time consultation with the OIG throughout the disciplinary phase, until all proceedings were completed, except for those related to a writ?

  *The department attorney failed to provide a draft of the settlement agreement to the OIG for review prior to it being signed and submitted to the State Personnel Board.*

- If the penalty was modified by department action or a settlement agreement, did OIG concur with the modification?

  *The OIG did not concur with the department's decision to pay the nurse six months of salary and benefits.*

- Did the department attorney provide appropriate legal consultation to the HA regarding disciplinary determinations?

  *The department attorney failed to provide appropriate legal consultation to the hiring authority regarding the disciplinary determinations, requiring four separate consultations on September 10, 2010, October 1, 2010, October 29, 2010, and finally on November 17, 2010, when the hiring authority finally determined an additional investigation was necessary.*

- Did the HA timely consult with the OIG and the department attorney (if applicable) regarding disciplinary determinations prior to making a final decision?

  *The Office of Internal Affairs initially returned the matter to the hiring authority on September 15, 2008. The hiring authority did not consult with the OIG and department attorney regarding the disciplinary determinations until September 10, 2010, more than 14 calendar days after receipt of the case. No disciplinary determinations could be made as a result of the numerous consultations and the matter was resubmitted for reconsideration to the Office of Internal Affairs, which approved an investigation into the matter. The Office of Internal Affairs completed its investigation and referred the matter to the hiring authority on July 12, 2011. The hiring authority consulted with the OIG and the department attorney regarding the disciplinary determinations on July 14, 2011.*

- Did the VA provide appropriate legal consultation to the HA regarding the sufficiency of the investigation and investigative findings?

  *The department attorney failed to provide appropriate legal consultation to the hiring authority regarding the sufficiency of the investigation and the investigative findings, requiring four separate consultations on September 10, 2010, October 1, 2010, October 29, 2010, and finally on November 17, 2010, when the hiring authority finally determined an additional investigation was necessary.*

- If the HA determined additional investigation was necessary, was additional investigation requested?

  *On November 17, 2010, the hiring authority determined an additional investigation was necessary and requested one.*

- Did the HA timely consult with the OIG and department attorney (if applicable), regarding the sufficiency of the investigation and the investigative findings?

  *The Office of Internal Affairs initially returned the matter to the hiring authority on September 15, 2008. The hiring authority did not consult with the OIG and department attorney regarding the sufficiency of the investigation and the investigative findings until September 10, 2010, more than 14 calendar days after receipt of the case. The matter was resubmitted for reconsideration to the Office of Internal Affairs which approved an investigation into the matter. The Office of Internal Affairs completed its investigation and referred the matter to the hiring authority on July 12, 2011. The hiring authority consulted with the OIG and the department attorney regarding the sufficiency of the investigation and the investigative findings on July 14, 2011.*

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2009-08-01** | **10-1606-IR** | 1. **Neglect of Duty** <br> 2. **Dishonesty** | 1. **Sustained** <br> 2. **Not Sustained** | **Salary Reduction** | INVESTIGATION **Insufficient** <br><br> DISCIPLINE **Insufficient** |

## Facts of the Case

Between August 2009 and March of 2010, a parole agent was allegedly deficient in record keeping and in meeting minimum specifications for monitoring parolees on his caseload. It was further alleged that the parole agent was dishonest when he made notations in a vehicle usage log that did not correlate with home visits of parolees that he claimed he completed.

# CENTRAL REGION

## Investigative Assessment

The hiring authority delayed the referral of the case to the Office of Internal Affairs for investigation. OIA Central Intake initially made an incorrect decision to approve a limited investigation but later corrected the error by approving a full investigation into the matter. Once the case was approved for investigation, the start of the investigation was delayed for nearly eight months. Additional delays caused the final investigative report to be delivered to the hiring authority with only 15 days left to take disciplinary action. This unnecessary delay negatively impacted the case, requiring a letter of intent to be served to preserve the time to serve the disciplinary action. A department attorney was not assigned to this case.

## Assessment Questions

- Was the matter referred to OIA as soon as reasonably practical, within 45 calendar days of the date of discovery?

  *The department learned of the alleged misconduct on March 12, 2010. The matter was referred to the Office of Internal Affairs on May 11, 2010, more than 45 calendar days after the discovery of the alleged misconduct.*

- Did OIA Central Intake make an appropriate initial determination regarding the case?

  *The hiring authority requested an investigation into this matter. OIA Central Intake initially approved a limited investigation consisting of an interview with the parole agent only. Upon being assigned to a special agent, the case was submitted to OIA Central Intake for reconsideration. On June 8, 2010, OIA Central Intake corrected its decision and approved a full investigation.*

- Did the special agent adequately confer with the OIG upon case initiation and prior to finalizing the investigative plan?

  *On June 29, 2010, the special agent assigned to investigate the case conferred with the OIG prior to finalizing the investigative plan. On July 22, 2010, the special agent was removed from the case and another special agent was assigned to investigate. Despite a request by the OIG for a conference with the newly assigned special agent, a conference was not held until November 3, 2010, after the investigative plan was finalized.*

- Was the OIA investigation, or subject only interview, conducted with due diligence?

  *The department learned of the alleged misconduct on March 12, 2010. The case was assigned to a special agent to conduct the investigation in June 2010. No investigation was conducted by the first special agent assigned to investigate the case. On July 22, 2010, the case was transferred to another special agent to conduct the investigation. No investigation was conducted until November 2010, nearly eight months following the discovery of the alleged misconduct. In November, one witness was interviewed and no other investigation was conducted until January 2011, nearly ten months following the discovery of the alleged misconduct.*

- Was the investigation, or subject interview, completed at least 35 days before the deadline to take disciplinary action?

  *The deadline to take disciplinary action was March 11, 2011. The investigation was completed on February 24, 2011, less than 35 days before the deadline to take disciplinary action.*

- Did the special agent cooperate with and provide continual real-time consultation with the OIG?

  *On November 4, 2010, the special agent conducted an interview of a witness in the case without coordinating the scheduling of the interview with the OIG.*

## Disposition

The hiring authority sustained allegations of neglect of duty and failure to perform within scope of training against the parole agent, but did not sustain allegations of dishonesty relating to the records. The hiring authority imposed a 10 percent salary reduction for six months. The parole agent filed an appeal with the State Personnel Board. The department and the parole agent entered into a settlement agreement wherein the department agreed to reduce the penalty to a 10 percent salary reduction for four months and the parole agent agreed to withdraw his appeal. The OIG concurred with the settlement due to evidentiary issues and defects in the letter of intent.

## Disciplinary Assessment

The hiring authority moved swiftly to make investigative findings and penalty determinations to meet the statutory deadlines in this case. The letter of intent served on the parole agent was defective as it did not include a penalty determination in the document, which could later be raised as a due process issue. This contributed to the decision to subsequently enter into a settlement agreement with the parole agent.

# CENTRAL REGION

## Assessment Questions

- If the case settled, did the department attorney or disciplinary officer properly complete the CDC Form 3021?

  *The OIG cannot evaluate the CDC Form 3021 as one was never provided to the OIG after it was requested.*

- Did the department's advocate who appeared at the pre-hearing/settlement conference have full familiarity with the facts and issues in the case?

  *The OIG did not attend the settlement conference and is unable to determine whether the department's advocate who appeared at the conference had full familiarity with the facts and issues in the case.*

- Was the OIG provided with a draft of the pre-hearing/settlement conference statement prior to it being filed?

  *The OIG was not provided with a draft of the pre-hearing settlement conference statement prior to it being filed. The disciplinary officer provided a copy of the statement after it was filed.*

- Was the notice of intent to take disciplinary action served on the employee(s) appropriately drafted?

  *The notice of intent to take disciplinary action served on the parole agent was not appropriately drafted as it did not include the discipline being imposed on the parole agent.*

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2009-08-15 | 09-3959-IR | 1. **Dishonesty** <br> 2. **Neglect of Duty** | 1. **Sustained** <br> 2. **Sustained** | **Dismissal** | INVESTIGATION <br> **Sufficient** <br> DISCIPLINE <br> **Sufficient** |

## Facts of the Case

On August 15, 2009, it was alleged a lieutenant temporarily housed a high-risk inmate in a general population cell without authorization and was allegedly dishonest when he denied that he failed to inform lower ranking officers of the inmate's elevated risk status before the inmate was released from his cell. It was also alleged a sergeant was dishonest when he reported the lieutenant informed the officers of the inmate's status. Further, it was alleged two officers were dishonest when they denied they had knowledge of the inmate's status as their actions in handling the inmate indicated otherwise. It was further alleged an officer opened the inmate's cell door when he should have known the inmate's status required the inmate be placed in restraints prior to opening his cell door.

## Investigative Assessment

Overall, the department's investigative process substantially complied with policies and procedures.

## Disposition

The hiring authority did not sustain the allegation of dishonesty against the lieutenant, but did sustain a neglect of duty allegation and imposed a 5 percent salary reduction for 12 months. The lieutenant and the hiring authority entered into a settlement agreement wherein the salary reduction was converted to a 12 working-day suspension and the lieutenant agreed not to file an appeal. The allegations against the sergeant and two officers were not sustained. The allegation of dishonesty against one officer was sustained and he was served with a notice of dismissal. The officer filed an appeal with the State Personnel Board. Following a hearing, the State Personnel Board upheld the penalty of dismissal.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

# CENTRAL REGION

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-04-30 | 11-2480-IR | 1. **Over-Familiarity** <br> 2. **Neglect of Duty** <br> 3. **Discourteous Treatment** <br> 4. **Threat/Intimidation** | 1. **Sustained** <br> 2. **Sustained** <br> 3. **Sustained** <br> 4. **Not Sustained** | **Suspension** | INVESTIGATION <br> **Sufficient** <br> DISCIPLINE <br> **Sufficient** |

## Facts of the Case

From April 30, 2010, through June 6, 2011, an officer allegedly engaged in an overly familiar relationship with a parolee by communicating with the parolee on an internet social network. The parolee had been a former inmate at the officer's assigned institution. On June 29, 2011, the officer also allegedly threatened his fiancée, a department staff member.

## Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition

The hiring authority sustained all of the allegations against the officer, except the allegation of threatening his fiancée, and imposed a 60 working-day suspension. The officer did not file an appeal with the State Personnel Board.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-05-23 | 10-2638-IR | 1. **Dishonesty** <br> 2. **Unreasonable Use of Force** <br> 3. **Neglect of Duty** <br> 4. **Code of Silence** | 1. **Sustained** <br> 2. **Sustained** <br> 3. **Sustained** <br> 4. **Sustained** | **Dismissal** | INVESTIGATION <br> **Sufficient** <br> DISCIPLINE <br> **Insufficient** |

## Facts of the Case

On May 23, 2010, an officer was allegedly discourteous, using profanity towards a disabled inmate. That officer and a second officer allegedly used unnecessary force on the inmate by removing the inmate from his cell and dragging him to a temporary holding cell, denying the inmate the use of a wheelchair. It was alleged the two officers failed to report their uses of force. A sergeant and a third officer allegedly witnessed the incident and allegedly failed to report the use of force.

## Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition

Initially the hiring authority determined that the dishonesty allegations against the first officer and the second officer could not be sustained, but the hiring authority did initially sustain allegations against these two officers for unreasonable use of force, failure to report the use of force, and neglect of duty. Consequently, the hiring authority determined 48 working-day suspensions instead of dismissals were appropriate. The OIG disagreed and elevated the matter to the hiring authority's supervisor. At the higher level of review, the department determined the dishonesty allegations should be sustained and dismissals were imposed against the two officers. Both officers filed appeals with the State Personnel Board. Prior to the hearings commencing, the department entered into settlement agreements with the first and second officers whereby the penalties against them were reduced to nine-month suspensions. The hiring authority determined there was sufficient evidence to sustain the allegation against the sergeant, demoting the sergeant to the rank of officer. The sergeant filed an appeal with the State Personnel Board. The department and the sergeant entered into an agreement whereby the department rescinded the disciplinary action and demotion, but terminated the sergeant's limited-term appointment as a sergeant and agreed to retain the sergeant as a permanent full-time officer. The hiring authority determined there was sufficient evidence to sustain an allegation against the third officer for failing to report the use of force he witnessed and imposed a 10 percent salary reduction for three months. However, the third officer was later dismissed due to another unrelated disciplinary action.

# CENTRAL REGION

## Disciplinary Assessment

During the hiring authority's investigative findings and disciplinary determinations, the department attorney asserted that the dishonesty allegations against the first and second officers could not be sustained; consequently, the suspensions were an appropriate penalty instead of dismissal. The OIG disagreed with this assessment. The matter was therefore elevated to the hiring authority's supervisor. At the higher level of review, the department determined the dishonesty allegations should be sustained and dismissals imposed against the two officers.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| | | 1. Neglect of Duty | 1. Sustained | Salary Reduction | INVESTIGATION **Insufficient** DISCIPLINE **Sufficient** |
| **2010-06-25** | **11-0327-IR** | | | | |

## Facts of the Case

On June 25, 2010, it was alleged a lieutenant and a sergeant received information that an inmate was going to be stabbed and they failed to act on that information. It was also alleged that five officers left their assigned areas before being properly relieved, allowing an inmate to be stabbed by his cellmate.

## Investigative Assessment

The Office of Internal Affairs failed to consult with the OIG in advance of scheduling critical witness and subject interviews. Also, the final investigatory reports were not provided to the hiring authority at least 35 days prior to the deadline to take disciplinary action.

## Assessment Questions

- Did the special agent adequately prepare for all aspects of the investigation?

  *On more than one occasion, the special agent did not confer with the OIG or the assigned department attorney before scheduling critical interviews despite prior assurances received from the agent that he would do so.*

- Was the OIA investigation, or subject only interview, conducted with due diligence?

  *The investigation was sent to the Office of Internal Affairs on February 15, 2011. The special agent was assigned on March 7, 2011. On March 28, 2011, the special agent received the case file. The case conference was not held until March 30, 2011, more than 21 days after the Office of Internal Affairs received the case file and 23 days after the agent was assigned to the case. In both May and July of 2011, the special agent informed the OIG that he would not be able to initiate the investigation for several months. The subject interviews were not completed until approximately six months after the date the special agent was assigned to the case.*

- Was the investigation, or subject interview, completed at least 35 days before the deadline to take disciplinary action?

  *The OIA investigative reports were not provided to the OIG, the department attorney or the hiring authority at least 35 days before the deadline date to take disciplinary action. The deadline date was December 13, 2011, and the reports were provided on November 29, 2011.*

- Did the special agent cooperate with and provide continual real-time consultation with the OIG?

  *On more than one occasion, the special agent did not confer with the OIG.*

- Did the special agent cooperate and provide real-time consultation with the department attorney throughout the investigative phase?

  *On more than one occasion, the special agent did not confer with the department attorney.*

## Disposition

The hiring authority sustained the allegation against the lieutenant and imposed a 5 percent salary reduction for 24 months. The lieutenant did not file an appeal with the State Personnel Board. The hiring authority did not sustain any allegations against the sergeant or the five officers.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

# CENTRAL REGION

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-07-06 | 10-2775-IR | 1. **Dishonesty**<br>2. **Failure to Report**<br>3. **Battery** | 1. Sustained<br>2. Sustained<br>3. Sustained | **Dismissal** | INVESTIGATION<br>**Insufficient**<br>DISCIPLINE<br>**Sufficient** |

## Facts of the Case

On July 6, 2010, an officer allegedly battered his wife by throwing her to the ground and punching her in the face. The officer was arrested by outside law enforcement for spousal battery and his wife obtained a temporary restraining order against him. The officer pled no contest to a misdemeanor charge of spousal battery.

## Investigative Assessment

OIA Central Intake delayed taking action on the case when it was initially referred, but promptly took action upon reconsideration after new information was provided. Additionally, although the second special agent assigned to the case managed to complete the investigation in just 16 days, the investigation was submitted to the hiring authority with less than 35 calendar days prior to the deadline for taking disciplinary action.

## Assessment Questions

- Did OIA Central Intake make a determination regarding the case within 30 calendar days?

  *On July 12, 2010, OIA Central Intake received the request for disciplinary action dated July 9, 2010, but did not take action until August 25, 2010, more than 30 calendar days after the request. Additionally, there was a request for reconsideration on January 6, 2011, after new information was received. OIA Central Intake opened an administrative investigation on February 2, 2011.*

- Was the OIA investigation, or subject only interview, conducted with due diligence?

  *The first special agent was assigned on February 25, 2011, but returned the case for reassignment on April 22, 2011, without any significant investigative work being completed. The case was not reassigned to a second special agent until June 13, 2011. The second special agent diligently worked on the case, completing the investigation on June 29, 2011, just 16 days after being assigned to the case.*

- Was the investigation, or subject interview, completed at least 35 days before the deadline to take disciplinary action?

  *The matter was submitted to the hiring authority with less than 35 days to take disciplinary action.*

## Disposition

The hiring authority determined there was sufficient evidence to sustain the allegations against the officer. However, the officer pled no contest to a misdemeanor charge of spousal battery in a criminal court. Due to that conviction, the officer could no longer carry a firearm and was, therefore, no longer qualified to be employed as an officer. Consequently, the officer's employment was terminated. The officer filed an appeal with the State Personnel Board. Following the appeal hearing, the State Personnel Board upheld the termination.

## Disciplinary Assessment

Overall, the department attorney and hiring authority complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-07-14 | 10-2840-IR | 1. **Neglect of Duty**<br>2. **Discourteous Treatment**<br>3. **Threat/ Intimidation**<br>4. **Battery**<br>5. **Dishonesty** | 1. Sustained<br>2. Sustained<br>3. Sustained<br>4. Sustained<br>5. Not Sustained | **Suspension** | INVESTIGATION<br>**Sufficient**<br>DISCIPLINE<br>**Insufficient** |

## Facts of the Case

On July 14, 2010, a sergeant allegedly ordered an officer to conduct a grid search of a yard for weapons, using a metal detector. The officer allegedly refused because he was conducting union business at the time. The officer then allegedly lied when he stated that he had conducted a grid search on a previous day. The officer allegedly told the sergeant to "stop carrying about it." The sergeant allegedly became irate, left his post without authorization, and engaged in a verbal and physical confrontation with the officer wherein the sergeant threatened the officer, bumped his chest against the officer's chest, and poked his finger into the officer's chest. Both the sergeant and officer allegedly yelled and used profanity towards each other in front of other staff members, causing a distraction.

# CENTRAL REGION

## Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition

The hiring authority sustained all allegations against the sergeant and imposed a 48 working-day suspension. The sergeant filed an appeal with the State Personnel Board. The department and the sergeant entered into a settlement agreement wherein the department reduced the penalty to a 26 working-day suspension and the sergeant agreed to withdraw his appeal. The OIG concurred with these terms because the hiring authority wished to complete this case, securing a sustained disciplinary action, because a new, unrelated disciplinary case was now pending against the sergeant. The hiring authority sustained the allegations against the officer for neglect of duty and discourteous treatment towards the sergeant. The hiring authority determined there was insufficient evidence to sustain the dishonesty allegations against the officer. The hiring authority imposed a one working-day suspension, which the officer did not appeal. The OIG concurred with the hiring authority's determinations.

## Disciplinary Assessment

The final investigative report was submitted to the hiring authority with more than three months left to impose disciplinary action; however, the hiring authority delayed over two months before making investigative findings and disciplinary determinations. This shortened the time available to impose penalties on the sergeant and the officer. Ultimately, the department had to serve a letter of intent on the officer. The disciplinary action for the officer was drafted and served more than 30 days after the hiring authority decided to impose the penalty. The department attorney failed to consult with the OIG and also failed to provide a draft copy of the disciplinary action before serving it.

# CENTRAL REGION

## Assessment Questions

- Was the disciplinary phase conducted with due diligence by the department?

  *The final investigative report was submitted to the hiring authority with more than three months left to impose disciplinary action; however, the hiring authority delayed over two months before making investigative findings and disciplinary determinations on June 9, 2011. This shortened the time available to impose penalties on the sergeant and the officer. Ultimately, the department had to serve a letter of intent on the officer. The department attorney then drafted the disciplinary action for the officer on July 22, 2011, which was served on July 26, 2011, more than 30 days after the hiring authority made disciplinary determinations.*

- Did the department attorney or disciplinary officer cooperate with and provide continual real-time consultation with the OIG throughout the disciplinary phase, until all proceedings were completed, except for those related to a writ?

  *The department attorney failed to consult with the OIG regarding the drafting of the disciplinary action and failed to provide a copy of the draft of the disciplinary action to the OIG as required by departmental policy. The OIG was also not provided with a draft of the pre-hearing settlement conference statement prior to it being filed.*

- Was the OIG provided with a draft of the pre-hearing/settlement conference statement prior to it being filed?

  *The OIG was not provided with a draft of the pre-hearing settlement conference statement prior to it being filed.*

- Was there an appeal filed with the SPB?

  *The sergeant filed an appeal, but the officer did not.*

- Was the disciplinary action served on the employee(s) appropriately drafted as described in the DOM?

  *The hiring authority made disciplinary determinations on June 9, 2011. The department attorney drafted the disciplinary action for the officer on July 22, 2011, and it was served on July 26, 2011, more than 30 days after the decision to impose discipline.*

- Was the draft disciplinary action provided to the OIG for review appropriately drafted as described in the DOM?

  *The hiring authority made disciplinary determinations on June 9, 2011. The department attorney drafted the disciplinary action for the officer on July 22, 2011, and it was served on July 26, 2011, more than 30 days after the decision to impose discipline.*

- Did the department attorney or disciplinary officer provide the OIG with a copy of the draft disciplinary action and consult with the OIG?

  *The department attorney failed to consult with the OIG regarding the drafting of the disciplinary action and failed to provide a copy of the draft disciplinary action to the OIG as required by departmental policy.*

- Did the HA timely consult with the OIG and the department attorney (if applicable) regarding disciplinary determinations prior to making a final decision?

  *The Office of Internal Affairs completed its investigation and referred the matter to the hiring authority on March 30, 2011. The hiring authority did not consult with the OIG and the department attorney regarding the disciplinary determinations until June 9, 2011, more than 14 calendar days after receipt of the case.*

- Did the HA timely consult with the OIG and department attorney (if applicable), regarding the sufficiency of the investigation and the investigative findings?

  *The Office of Internal Affairs completed its investigation and referred the matter to the hiring authority on March 30, 2011. The hiring authority did not consult with the OIG and the department attorney regarding the sufficiency of the investigation and the investigative findings until June 9, 2011, more than 14 calendar days after receipt of the case.*

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-07-28 | 10-3316-IR | 1. Neglect of Duty | 1. Sustained | **Salary Reduction** | INVESTIGATION **Sufficient** DISCIPLINE **Insufficient** |

## Facts of the Case

On July 28, 2010, a lieutenant and sergeant allegedly failed to take appropriate action to ensure an inmate's safety after the inmate expressed safety concerns to the sergeant. Allegedly, the inmate indicated he may be targeted for assault by other inmates. The inmate attempted suicide a few hours later.

# CENTRAL REGION

## Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition

The hiring authority determined there was sufficient evidence to sustain the allegation against the lieutenant and imposed a 5 percent salary reduction for 12 months. The lieutenant filed an appeal with the State Personnel Board. After a hearing, the State Personnel Board determined that the lieutenant did not neglect his duty, and revoked the penalty against the lieutenant. The hiring authority determined there was sufficient evidence to sustain the allegation against the sergeant and imposed a 10 percent salary reduction for 12 months. The sergeant filed an appeal with the State Personnel Board. The department and the sergeant entered into an agreement reducing the penalty to a 5 percent salary reduction for 12 months. The OIG concurred with the settlement.

## Disciplinary Assessment

The hiring authority delayed in making investigatory findings and penalty determinations, waiting almost four months after the investigation had concluded.

## Assessment Questions

- If the penalty modification was the result of an SPB decision, did the OIG concur with the modification?

  *OIG understood the State Personnel Board's rationale behind the penalty revocation against the lieutenant.*

- Did SPB modify the penalty decision, other than by adopting a settlement agreement?

  *The State Personnel Board revoked the penalty of a 5 percent salary reduction for 12 months imposed against the lieutenant.*

- Did the department's advocate adequately and appropriately address legal issues prior to and during the SPB hearing?

  *The department attorney adequately prepared for the State Personnel Board hearing. She identified possible weaknesses in the case and addressed those appropriately.*

- Did the department enter into a settlement agreement with the employee(s)?

  *The department and the sergeant entered into a settlement agreement, reducing the penalty to a 5 percent salary reduction for 12 months. The case against the lieutenant did not settle and went on to a State Personnel Board hearing.*

- Was the penalty upheld by the department after a Skelly hearing?

  *At the lieutenant's Skelly hearing, the department considered reducing the penalty to a 5 percent salary reduction for six months. However, the matter did not settle and the disciplinary action proceeded to hearing with the original penalty of 5 percent salary reduction for 12 months.*

- Did the HA timely consult with the OIG and the department attorney (if applicable) regarding disciplinary determinations prior to making a final decision?

  *The Office of Internal Affairs completed its investigation and referred the matter to the hiring authority on March 29, 2011. The hiring authority did not consult with the OIG and department attorney regarding the disciplinary determinations until July 13, 2011, more than 14 calendar days after receipt of the case.*

- Did the HA timely consult with the OIG and department attorney (if applicable), regarding the sufficiency of the investigation and the investigative findings?

  *The Office of Internal Affairs completed its investigation and referred the matter to the hiring authority on March 29, 2011. The hiring authority did not consult with the OIG and department attorney regarding the sufficiency of the investigation and the investigative findings until July 13, 2011, more than 14 calendar days after receipt of the case.*

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-07-29 | 12-0690-IR | 1. **Over-Familiarity** <br> 2. **Neglect of Duty** | 1. **Sustained** <br> 2. **Sustained** | **Dismissal** | INVESTIGATION <br> **Sufficient** <br> DISCIPLINE <br> **Sufficient** |

## Facts of the Case

Between July 29, 2010, and December 12, 2011, an officer allegedly engaged in an overly familiar relationship with an inmate, allegedly receiving hundreds of phone calls from the inmate and providing the inmate with semi-nude photographs of herself. Also, the officer allegedly failed to notify the department that one of her family members was an inmate.

# CENTRAL REGION

## Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition
The hiring authority determined there was sufficient evidence to sustain the allegations against the officer and determined that dismissal was the appropriate penalty. However, the officer resigned before disciplinary action could be imposed. A letter indicating the officer resigned under adverse circumstances was placed in her official personnel file.

## Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-10-23 | 11-0028-IR | 1. Neglect of Duty | 1. Sustained | Salary Reduction | INVESTIGATION **Sufficient** DISCIPLINE **Sufficient** |

### Facts of the Case
On October 23, 2010, a lieutenant allegedly failed to properly review the central files of two inmates prior to approving them to be celled together. It was alleged the lieutenant approved the inmates to be housed together despite the first inmate adding the language "against my will" when signing the document used for the review. It was alleged that several days before the incident, the first inmate had warned an officer that if the officers made him take a cellmate, he would "give them a dead body." It was alleged the officer laughed at the statement and failed to document or report it. On October 24, 2010, the first inmate killed his cellmate while inside the cell.

## Investigative Assessment
The Office of Internal Affairs conducted a timely and thorough investigation. The department attorney and the hiring authority performed in accordance with the department's policies and procedures.

## Disposition
The hiring authority sustained the allegations against the lieutenant and imposed a 10 percent salary reduction for 24 months. The department and the lieutenant entered into a settlement agreement wherein the department agreed to combine this disciplinary action with a second disciplinary action pending against the lieutenant, which carried a lesser penalty, and modified the penalty for both to a 10 percent salary reduction for 12 months. The OIG found the agreement to be reasonable based on mitigating evidence offered at the *Skelly* hearing. The hiring authority did not sustain any allegations against the officer due to lack of sufficient evidence that the alleged statements were made.

## Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-10-27 | 11-1743-IR | 1. Dishonesty 2. Over-Familiarity 3. Neglect of Duty | 1. Sustained 2. Sustained 3. Sustained | Dismissal | INVESTIGATION **Insufficient** DISCIPLINE **Sufficient** |

### Facts of the Case
From October 27, 2010, through June 6, 2011, a psychiatric technician allegedly engaged in an overly familiar relationship with a parolee, who was her ex-boyfriend, by sending text messages to the parolee and allowing the parolee to move in with her. On June 6, 2011, the psychiatric technician also allegedly made dishonest and misleading statements to outside law enforcement by claiming to not know the parolee's whereabouts, even though the parolee was later located and arrested at the psychiatric technician's residence.

# CENTRAL REGION

## Investigative Assessment

OIA Central Intake referred the case for action without any further investigation. However, after the psychiatric technician appealed her dismissal, the department attorney later discovered that there was actually no evidence to support the allegation that the psychiatric technician was dishonest in her statements to outside law enforcement. Facts relating to the dishonesty allegation and over-familiarity allegation were different than what was originally reported to OIA Central Intake. An investigation would have uncovered these factual issues much earlier, thereby impacting the initial decision to sustain these allegations in the first place.

## Assessment Questions

- Did OIA Central Intake make an appropriate initial determination regarding the case?

  *OIA Central Intake referred this case back to the hiring authority for disciplinary action without further investigation. However, there was a lack of evidence to support the allegation of dishonesty. Since there was no investigation, this critical information was not discovered until the department attorney began to prepare witnesses for the State Personnel Board hearing after the psychiatric technician appealed the disciplinary action.*

## Disposition

The hiring authority sustained the allegations and dismissed the psychiatric technician. The psychiatric technician filed an appeal with the State Personnel Board. The department and psychiatric technician entered into a settlement agreement in which the psychiatric technician agreed to resign in lieu of dismissal and agreed to never seek or accept future employment with the department. In return, the department withdrew the disciplinary action and paid the psychiatric technician two months back-pay. The OIG concurred with the settlement.

## Disciplinary Assessment

It was not discovered until shortly before the State Personnel Board hearing that the dishonesty allegation could not be proven. The true facts relating to the dishonesty allegation and the over-familiarity allegation turned out to be different than what was originally reported to OIA Central Intake. An investigation would have uncovered these factual issues, thereby impacting the hiring authority's decision to sustain those two allegations. However, based on the information available at the time, the hiring authority's decision to sustain all three allegations was appropriate. The department attorney discovered there was a lack of evidence to support the dishonesty allegation when she began to prepare witnesses for this case. Based on the available facts, and without having the benefit of an investigation, the department attorney and hiring authority performed in accordance with departmental policies.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-11-08 | 11-0236-IR | 1. **Unreasonable Use of Force** <br> 2. **Neglect of Duty** <br> 3. **Other Failure of Good Behavior** <br> 4. **Discourteous Treatment** <br> 5. **Dishonesty** | 1. **Sustained** <br> 2. **Sustained** <br> 3. **Sustained** <br> 4. **Sustained** <br> 5. **Not Sustained** | **Salary Reduction** | INVESTIGATION **Sufficient** <br> DISCIPLINE **Sufficient** |

## Facts of the Case

On November 8, 2010, after interviewing a parolee at a county jail, a parole agent allegedly used unnecessary force by striking the parolee with his fist once in the chest while the parolee was handcuffed, shackled, and being escorted by multiple detention officers. The parole agent was immediately detained by the law enforcement officers who witnessed the battery. It was further alleged that the parole agent was dishonest in his reporting of the incident. The parole agent was arrested and charged with battery.

## Investigative Assessment

The Office of Internal Affairs conducted a timely and thorough investigation. Overall, the department attorney and hiring authority substantially performed in accordance with the department's policies and procedures.

## Disposition

The hiring authority sustained an allegation of battery on a parolee and use of unnecessary force. The allegation of dishonesty was not sustained. The parole agent was rejected on probation as a parole agent and assessed a 10 percent salary reduction for ten months when he reverted back to an officer. The parole agent filed an appeal with the State Personnel Board. Prior to the hearing, the department and the parole agent entered into a settlement agreement wherein the department agreed to reduce the penalty to a 10 percent salary reduction for seven months and the parole agent agreed to withdraw his appeals on both the disciplinary action and the rejection on probation cases.

# CENTRAL REGION

## Disciplinary Assessment

The department adequately consulted with the OIG throughout the case. While the hiring authority chose a level of discipline that was not unreasonable, the penalty was lower than what the OIG thought was appropriate for this type of conduct. The loss of his status as a parole agent did not actually result in a demotion, as he reverted back to a classification within the institution at the same pay level, although he did lose the opportunity to work in the parole division. Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-12-21 | 12-0439-IR | 1. **Unreasonable Use of Force** <br> 2. **Failure to Report** | 1. **Sustained** <br> 2. **Not Sustained** | **Salary Reduction** | INVESTIGATION **Insufficient** <br> DISCIPLINE **Sufficient** |

## Facts of the Case

On December 21, 2010, two officers allegedly used unnecessary force on a handcuffed inmate. The first officer allegedly choked and punched the inmate, and the second officer allegedly punched and kicked the inmate. Both officers allegedly failed to report their uses of force.

## Investigative Assessment

The investigative report was completed with less than 35 days of the deadline to take disciplinary action.

## Assessment Questions

- Within 21 calendar days, did the department attorney make an entry into CMS accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

  *There is no record in CMS that the department attorney entered key dates within 21 days of assignment.*

- Was the investigation, or subject interview, completed at least 35 days before the deadline to take disciplinary action?

  *The report was completed on November 28, 2011, only 23 days before the deadline to take disciplinary action.*

## Disposition

The hiring authority determined there was insufficient evidence to sustain the allegations against the first officer. However, the hiring authority determined there was sufficient evidence to sustain an allegation against the second officer for unreasonable use of force. The remaining allegations against the second officer for failing to report the uses of force were not sustained. The hiring authority imposed a 5 percent salary reduction for 24 months against the second officer. The second officer did not file an appeal with the State Personnel Board.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-01-04 | 11-2163-IR | 1. **Dishonesty** <br> 2. **Discourteous Treatment** <br> 3. **Failure to Report** | 1. **Sustained** <br> 2. **Sustained** <br> 3. **Not Sustained** | **Dismissal** | INVESTIGATION **Insufficient** <br> DISCIPLINE **Sufficient** |

## Facts of the Case

Between January 4, 2011, and May 26, 2011, a group of two sergeants and eight officers allegedly conspired to harass a lieutenant in an effort to drive him out of his new assignment and to cause him to be wrongfully dismissed.

## Investigative Assessment

The hiring authority did not refer the case to the Office of Internal Affairs until five months after the date of possible misconduct. OIA Central Intake then took approximately two months before taking action on the matter. The department attorney also failed to enter key dates within 21 days of assignment.

# CENTRAL REGION

## Assessment Questions

- Was the matter referred to OIA as soon as reasonably practical, within 45 calendar days of the date of discovery?

  *The department learned of the possible misconduct on January 4, 2011, but the hiring authority did not refer the matter to the Office of Internal Affairs until June 20, 2011, more than 45 calendar days after the date of discovery.*

- Did OIA Central Intake make a determination regarding the case within 30 calendar days?

  *OIA Central Intake received the request for an investigation on June 24, 2011, but did not take action until August 24, 2011, more than 30 days after the request.*

- Within 21 calendar days, did the department attorney make an entry into CMS accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

  *The department attorney was assigned to the case on September 2, 2011, and entered key dates on September 26, 2011, more than 21 days after being assigned.*

## Disposition

The hiring authority determined there was sufficient evidence to sustain the allegation of discourteous treatment against one of the sergeants and four of the officers and issued letters of instruction to each of them. Three other disciplinary cases were consolidated with this case against the fifth officer. The hiring authority determined there was sufficient evidence to sustain two allegations against the fifth officer for discourteous treatment and dishonesty, and dismissed the fifth officer. Following a *Skelly* hearing the hiring authority upheld the dismissal. The fifth officer filed an appeal with the State Personnel Board. At the pre-hearing settlement conference the fifth officer expressed remorse and took responsibility for his actions. The department and the fifth officer entered into a settlement agreement, wherein the department agreed to modify the penalty from dismissal to a six-month suspension. Additionally, the fifth officer agreed that any criminal conviction or sustained disciplinary action within the next 24 months would result in an automatic dismissal. Based on the dispositions of the officer's other three cases and the developments at the pre-hearing settlement conference, the OIG concurred with the settlement. The hiring authority did not sustain any allegations against the other sergeant and three remaining officers.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-01-22 | 11-2181-IR | 1. **Other Failure of Good Behavior** <br> 2. **Threat/Intimidation** | 1. **Not Sustained** <br> 2. **Not Sustained** | **No Penalty Imposed** | INVESTIGATION **Sufficient** <br> DISCIPLINE **Sufficient** |

## Facts of the Case

On January 22, 2011, February 17, 2011, and March 6, 2011, an officer allegedly made threatening and intimidating statements to an inmate, allegedly threatening bodily harm if that inmate went out to the exercise yard. On April 10, 2011, and April 11, 2011, the same officer also allegedly denied a second inmate access to the exercise yard because of the second inmate's friendship with the first inmate and another inmate who had previously assaulted another officer.

## Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition

The hiring authority determined there was insufficient evidence to sustain the allegations.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

# CENTRAL REGION

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-02-01 | 11-1137-IR | 1. **Dishonesty** <br> 2. **Failure to Report** <br> 3. **Unreasonable Use of Force** <br> 4. **Neglect of Duty** <br> 5. **Discourteous Treatment** | 1. **Sustained** <br> 2. **Sustained** <br> 3. **Sustained** <br> 4. **Sustained** <br> 5. **Sustained** | **Dismissal** | INVESTIGATION <br> **Insufficient** <br> DISCIPLINE <br> **Sufficient** |

## Facts of the Case

On February 1, 2011, an officer was allegedly discourteous when he used profanity towards an inmate. It was also alleged the officer used unnecessary physical force on the inmate and was dishonest when he reported the incident. A second officer who witnessed the incident allegedly failed to intervene and failed to alert staff. It was also alleged the second officer was dishonest when she failed to accurately report the first officer's use of force. Both officers were allegedly dishonest in their interviews with the Office of Internal Affairs.

## Investigative Assessment

The department was deficient in some aspects of the investigative process. The special agent did not begin any significant investigative work on this case until five months after being assigned to the case causing the investigative report to be completed with less than 35 days until the deadline to take disciplinary action. Additionally, although the second department attorney adequately worked on this case, no significant work was done by the initial department attorney for the 30 days she was assigned.

## Assessment Questions

- Within 21 calendar days, did the department attorney make an entry into CMS accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

  *The first department attorney was originally assigned to the case on April 20, 2011, but was later removed from this case on May 19, 2011, without having entered any key dates within 21 calendar days of initial assignment. A second department attorney was then assigned to the case on May 19, 2011, and assessed key dates on May 20, 2011.*

- No later than 21 calendar days following assignment of the case, did the department attorney contact the assigned special agent and the monitor to discuss the elements of a thorough investigation of the alleged misconduct?

  *The first department attorney was originally assigned to the case on April 20, 2011, but was later removed from this case on May 19, 2011, without having contacted the special agent and OIG within 21 calendar days of initial assignment. A second department attorney was then assigned to the case on May 19, 2011, contacting the special agent and OIG on May 20, 2011.*

- Was the OIA investigation, or subject only interview, conducted with due diligence?

  *The special agent was assigned to this case on May 4, 2011, but did not begin any meaningful investigative work until October 25, 2011, five months after he was initially assigned. The special agent regularly updated the case status to indicate that other cases with more immediate deadlines to take disciplinary action had to be completed before this case. The investigative report was not completed until January 12, 2012, less than 35 days before the deadline to take disciplinary action.*

- Was the investigation, or subject interview, completed at least 35 days before the deadline to take disciplinary action?

  *The investigative report was not completed until January 12, 2012, less than 30 days before the deadline to take disciplinary action.*

- Did the department attorney cooperate with and provide continual real-time consultation with the OIG throughout the investigative phase?

  *The first department attorney assigned to this case failed to timely enter key dates. However, the second department attorney adequately consulted with the OIG throughout the rest of the investigative phase.*

- Was the investigation thorough and appropriately conducted?

  *The special agent did not begin any meaningful investigative work until five months after he was initially assigned. Once the investigation actually began, it was conducted thoroughly and appropriately.*

# CENTRAL REGION

## Disposition

The hiring authority determined there was sufficient evidence to sustain all allegations and dismissed both officers. Both officers filed appeals with the State Personnel Board. The department and the first officer entered into a settlement agreement, reducing the penalty to a 90 working-day suspension. The department and the second officer also reached a settlement agreement, reducing the penalty to a 10 percent salary reduction for 24 months, with both parties acknowledging that the second officer retired prior to the effective date of the disciplinary action. The agreement also provided that if the second officer returned to work for the department within three years, the penalty would then be imposed. The OIG concurred with the terms of both settlement agreements due to mitigating evidence provided at the *Skelly* hearings, and evidentiary issues with the dishonesty allegations that arose in preparation for hearing.

## Disciplinary Assessment

Other than a one-day delay in serving the disciplinary actions, the department substantially complied with policies and procedures and an appropriate decision was reached.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-02-20 | 11-1733-IR | 1. **Neglect of Duty**<br>2. **Failure to Report**<br>3. **Unreasonable Use of Force** | 1. **Sustained**<br>2. **Not Sustained**<br>3. **Not Sustained** | **Counseling** | INVESTIGATION<br>**Sufficient**<br>DISCIPLINE<br>**Sufficient** |

## Facts of the Case

On February 20, 2011, two officers allegedly used force on an inmate. The first officer allegedly struck the inmate in the face twice with a closed fist. It was alleged that the first officer and a second officer who witnessed the use of force lied about the use of force in official reports by claiming the inmate struck the officer first. Following the first use of force, while the inmate was being escorted, it was alleged that a third officer used unnecessary force to stop the inmate from resisting. A videotaped interview of the inmate was conducted on the same day. It was alleged that the sergeant who conducted the interview was negligent when he had the third officer who had used force on the inmate be the camera operator. Further, the sergeant and the third officer allegedly failed to adequately document the inmate's injuries in an attempt to help conceal the extent of the use of force. It was further alleged that a lieutenant was negligent in her duties when she failed to document the use of force by the third officer.

## Investigative Assessment

In all critical aspects, the investigation was timely and thoroughly conducted. The department attorney and the hiring authority performed in accordance with the department's policies and procedures.

## Disposition

The hiring authority did not sustain the allegations against the first, second, or third officer as the first officer used force to defend himself after the inmate attacked him, he and the second officer accurately reported the use of force, and the third officer reported his use of force and appropriately followed the instructions being provided by the sergeant during the videotaping of the inmate interview. The hiring authority sustained allegations against the sergeant for failing to direct the camera operator to capture the inmate's injuries on video and issued corrective action in the form of a letter of instruction. The hiring authority sustained the allegations against the lieutenant for failing to adequately document the use of force by the third officer and imposed a letter of reprimand. Following the lieutenant's *Skelly* hearing, the department revoked the disciplinary action and issued corrective action in the form of a letter of instruction. The OIG concurred with the decisions of the hiring authority.

## Disciplinary Assessment

The department attorney and the hiring authority performed in accordance with the department's policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-02-24 | 11-2567-IR | 1. **Unreasonable Use of Force**<br>2. **Neglect of Duty** | 1. **Not Sustained**<br>2. **Not Sustained** | **No Penalty Imposed** | INVESTIGATION<br>**Sufficient**<br>DISCIPLINE<br>**Sufficient** |

## Facts of the Case

On February 24, 2011, an inmate alleged that officers used physical force on him by throwing him to the ground several times because he had complained about them for failing to give him yard time. The inmate allegedly reported the use of force to two sergeants who conducted a video recorded interview of the inmate. It was alleged that the sergeants failed to take any further action on the reported use of force and failed to properly secure the video recorded interview in the designated location to preserve the evidentiary value.

# CENTRAL REGION

| Investigative Assessment |
|---|
| The department sufficiently complied with policies and procedures. |

| Disposition |
|---|
| The hiring authority determined there was insufficient evidence to sustain the allegations. |

| Disciplinary Assessment |
|---|
| Overall, the department substantially complied with policies and procedures. |

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-03-05 | 11-1258-IR | 1. **Other Failure of Good Behavior** <br> 2. **Dishonesty** | 1. **Sustained** <br> 2. **Not Sustained** | **Salary Reduction** | INVESTIGATION <br> **Sufficient** <br><br> DISCIPLINE <br> **Sufficient** |

## Facts of the Case
On March 5, 2011, an off-duty officer allegedly fought with several other persons at a convenience store. The officer was arrested by outside law enforcement for assault. The officer also allegedly submitted a misleading memorandum to his supervisor about the incident. The district attorney's office declined to file criminal charges.

## Investigative Assessment
The department's investigative process sufficiently complied with policies and procedures.

## Disposition
The hiring authority determined there was sufficient evidence to sustain the allegation, determining that the officer did not exhibit good behavior and brought discredit to the department. The hiring authority did not sustain the allegation of dishonesty. The hiring authority imposed a 10 percent salary reduction for 18 months. The officer did not file an appeal with the State Personnel Board.

## Disciplinary Assessment
Although there was a delay in making investigatory findings and disciplinary determinations, the hiring authority and the department attorney otherwise performed their duties in accordance with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-04-14 | 11-1680-IR | 1. **Unreasonable Use of Force** <br> 2. **Failure to Report** | 1. **Sustained** <br> 2. **Not Sustained** | **Salary Reduction** | INVESTIGATION <br> **Sufficient** <br><br> DISCIPLINE <br> **Sufficient** |

## Facts of the Case
On April 14, 2011, an officer allegedly used unreasonable force on an inmate when he used physical force to pull the inmate off a dorm bunk, causing the inmate to fall and get injured. The officer then allegedly placed the inmate in a choke hold and placed his knee on the inmate's neck and head area. The officer also allegedly failed to report the use of force.

## Investigative Assessment
The Office of Internal Affairs conducted a timely and thorough investigation. The department attorney and hiring authority performed in accordance with the department's policies and procedures.

## Disposition
The hiring authority determined there was sufficient evidence to sustain the use of force allegation against the officer, but did not sustain any of the remaining allegations. The hiring authority imposed a 5 percent salary reduction for 12 months. However, the officer retired before the disciplinary action could be served. A letter indicating the officer retired under adverse circumstances was placed in his official personnel file.

## Disciplinary Assessment
The department attorney and the hiring authority performed in accordance with the department's policies and procedures and an appropriate disposition was reached.

# CENTRAL REGION

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| | | | | | INVESTIGATION |
| | | | | | **Insufficient** |
| | | 1. Neglect of Duty | 1. Sustained | Suspension | DISCIPLINE |
| **2011-04-23** | **11-1848-IR** | | | | **Sufficient** |

## Facts of the Case

On April 23, 2011, a sergeant allegedly failed to notify the supervising lieutenant when he discovered that two inmates who were documented as enemies had been housed in the same facility and inadvertently released on the exercise yard at the same time. The sergeant also allegedly failed to appropriately complete and process required forms to document inmate compatibility. It was further alleged a lieutenant failed to properly classify and segregate the two inmates. Subsequently, one of the inmates attacked the other inmate, causing serious injury.

## Investigative Assessment

Although the special agent was diligent, the final investigative report was submitted to the hiring authority with less than 35 calendar days left before the deadline to take disciplinary action.

## Assessment Questions

- Did OIA Central Intake make an appropriate initial determination regarding the case?

  *OIA Central Intake failed to identify possible misconduct by the lieutenant; therefore, an allegation for neglect of duty by the lieutenant was not initially included as part of the case when OIA Central Intake opened the investigation. During the course of the investigation, the Office of Internal Affairs appropriately identified the possible misconduct and added the allegation.*

- Did the special agent adequately prepare for all aspects of the investigation?

  *The special agent's initial report did not include information that the sergeant actually complied with departmental policies regarding completing and implementing required forms to document cellmate compatibility. This information tended to show that the sergeant actually did not neglect his duty as originally alleged. This information was later included in the special agent's second investigative report.*

- Was the investigative draft report provided to the OIG for review thorough and appropriately drafted?

  *The initial report did not include information that the sergeant actually complied with departmental policies regarding completing and implementing required forms to document cellmate compatibility. This information was later included in the second investigative report.*

- Was the investigation, or subject interview, completed at least 35 days before the deadline to take disciplinary action?

  *Although the initial investigative report was timely forwarded, the second and final investigative report was completed with less than 35 calendar days left before the deadline to take disciplinary action.*

- Was the investigation thorough and appropriately conducted?

  *The initial investigation did not reveal information that the sergeant actually complied with departmental policies regarding completing and implementing required forms to document cellmate compatibility. This information tended to show that the sergeant actually did not neglect his duty as originally alleged. Based on the initially deficient investigation, an initial determination would have resulted in more allegations being sustained against the sergeant, with more serious penalties imposed. This information was later included in the second investigative report.*

## Disposition

The hiring authority determined there was sufficient evidence to sustain an allegation for neglect of duty against the sergeant and imposed a one working-day suspension. The sergeant filed an appeal with the State Personnel Board. The department and the sergeant entered into an agreement whereby the department would remove the disciplinary action from the sergeant's official personnel file after 18 months if the sergeant did not receive any other disciplinary action within that period. Additionally, the department would reinstate the sergeant's post and bid rights. In return, the sergeant withdrew his appeal and waived any claim to back-pay, benefits, and change in seniority. The OIG concurred with the settlement agreement. No allegations were sustained against the lieutenant.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

# CENTRAL REGION

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-05-16 | 12-0427-IR | 1. Neglect of Duty | 1. Sustained | Letter of Reprimand | INVESTIGATION **Sufficient** DISCIPLINE **Sufficient** |

## Facts of the Case
On May 16, 2011, four officers allegedly failed to properly escort four inmates to their medical appointments. As a result, three of those inmates were able to assault and injure the fourth inmate.

## Investigative Assessment
Overall, the department attorney, hiring authority, and special agent all performed in accordance with the department's policies and procedures.

## Disposition
The hiring authority determined there was sufficient evidence to sustain the allegation against the first officer and issued a letter of reprimand. The first officer did not file an appeal with the State Personnel Board. The allegations against the second and third officers were not sustained. The fourth officer was exonerated of the allegation by the hiring authority.

## Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-05-22 | 11-2435-IR | 1. Failure to Report | 1. Sustained | Salary Reduction | INVESTIGATION **Sufficient** DISCIPLINE **Sufficient** |

## Facts of the Case
On May 22, 2011, an officer allegedly used force on an inmate by holding him down and allowing a second inmate to allegedly attack him. A second officer allegedly encouraged a third inmate to attack a fourth inmate who was the first inmate's cellmate. It was further alleged that the two involved officers and a third officer, who allegedly witnessed the incident, all failed to accurately report the uses of force.

## Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition
The hiring authority determined there was sufficient evidence to sustain the allegation against the first officer for failing to accurately report his use of force and imposed a 5 percent salary reduction for eight months. At the *Skelly* hearing, the first officer presented documentation that he had originally accurately reported his use of force, but inadvertently omitted a sentence when he was directed to re-write the report due to spelling errors. Due to this new information, the hiring authority determined there was insufficient evidence to sustain the allegation against the first officer and the disciplinary action was withdrawn. The OIG concurred. The hiring authority did not sustain any allegations against the second and third officers.

## Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

# CENTRAL REGION

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-06-19 | 12-0922-IR | 1. **Dishonesty**<br>2. **Neglect of Duty**<br>3. **Battery on Inmate** | 1. Not Sustained<br>2. Not Sustained<br>3. Not Sustained | **No Penalty Imposed** | INVESTIGATION<br>**Sufficient**<br>DISCIPLINE<br>**Sufficient** |

## Facts of the Case
On June 19, 2011, an officer allegedly failed to equip himself with his personal alarm device before entering an inmate's cell. While he was in the inmate's cell, the officer then allegedly battered the inmate. It was further alleged that the officer was dishonest in his report of the incident.

## Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition
The hiring authority determined there was insufficient evidence to sustain any of the allegations against the officer.

## Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-06-20 | 11-2881-IR | 1. **Neglect of Duty**<br>2. **Unreasonable Use of Force** | 1. Sustained<br>2. Not Sustained | **Letter of Reprimand** | INVESTIGATION<br>**Sufficient**<br>DISCIPLINE<br>**Sufficient** |

## Facts of the Case
On June 20, 2011, a sergeant and three officers allegedly used unreasonable force on an inmate when they allegedly slammed the inmate against a wall and then allegedly bent the inmate's wrist back for no apparent reason. It was further alleged the sergeant and the three officers failed to report all alleged uses of force. Additionally, the sergeant allegedly improperly removed the inmate from his cell without obtaining prior permission to do so.

## Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition
The hiring authority determined there was sufficient evidence to sustain an allegation against the sergeant for neglect of duty, but did not sustain any other allegations against the sergeant. The hiring authority issued a letter of reprimand to the sergeant, which the sergeant did not appeal. The hiring authority did not sustain any allegations against the three officers.

## Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-07-07 | 12-0066-IR | 1. **Dishonesty**<br>2. **Neglect of Duty** | 1. Not Sustained<br>2. Not Sustained | **No Penalty Imposed** | INVESTIGATION<br>**Insufficient**<br>DISCIPLINE<br>**Sufficient** |

## Facts of the Case
Between July 7, 2011, and November 7, 2011, a lieutenant allegedly failed to properly conduct rules violation hearings and violated inmates' due process rights. It was further alleged the lieutenant was dishonest when he claimed to have reviewed confidential information in the inmates' files in order to properly adjudicate the rules violations in the hearings, when in fact he had not reviewed the materials.

# CENTRAL REGION

## Investigative Assessment

The hiring authority failed to timely process the case by waiting over 80 days after discovering the possible misconduct to refer the case for investigation. OIA Central Intake then failed to take timely action by delaying over 70 days before making a determination. There was no justification for these delays. Despite the combined delay of five months, the Office of Internal Affairs was able to conduct a timely and thorough investigation.

## Assessment Questions

- Was the matter referred to OIA as soon as reasonably practical, within 45 calendar days of the date of discovery?

  *The department learned of the alleged misconduct on July 28, 2011; however, the hiring authority did not refer the matter to the Office of Internal Affairs until October 18, 2011, more than 45 calendar days after the date of discovery.*

- Did OIA Central Intake make a determination regarding the case within 30 calendar days?

  *OIA Central Intake received the request for investigation on October 25, 2011; however, OIA Central Intake did not take action until January 4, 2012, more than 30 calendar days after the request.*

## Disposition

The hiring authority determined there was insufficient evidence to sustain the allegations.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2011-08-20** | **12-0349-IR** | 1. **Neglect of Duty** | 1. **Not Sustained** | **No Penalty Imposed** | INVESTIGATION **Sufficient** DISCIPLINE **Sufficient** |

## Facts of the Case

On August 20, 2011, a parole agent allegedly accepted two dinner tickets valued at $50 each from the father of a parolee she supervised. It was further alleged the parole agent failed to transfer that parolee's case to another parole agent as directed by her supervisor.

## Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition

The hiring authority determined there was insufficient evidence to sustain the allegation against the parole agent because the tickets were actually free.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2011-08-24** | **12-0281-IR** | 1. **Failure to Report** | 1. **Not Sustained** | **No Penalty Imposed** | INVESTIGATION **Sufficient** DISCIPLINE **Sufficient** |

## Facts of the Case

On August 24, 2011, three officers and one correctional counselor allegedly witnessed a fourth officer use force on an inmate, and then allegedly failed to report that use of force.

## Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

# CENTRAL REGION

| Disposition |
| --- |
| The hiring authority determined there was insufficient evidence to sustain the allegations against the three officers and the correctional counselor. |

| Disciplinary Assessment |
| --- |
| Overall, the department substantially complied with policies and procedures. |

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
| --- | --- | --- | --- | --- | --- |
| 2011-09-15 | 11-2495-IR | 1. Misuse of Authority<br>2. Other Failure of Good Behavior | 1. Sustained<br>2. Sustained | Dismissal | INVESTIGATION<br>**Sufficient**<br>DISCIPLINE<br>**Sufficient** |

| Facts of the Case |
| --- |
| From September 15, 2011, to September 23, 2011, an officer responsible for transporting recently paroled inmates allegedly stole over 200 dollars from several inmates by retaining a portion of the cash funds that he was supposed to distribute to each inmate upon release. |

| Investigative Assessment |
| --- |
| Overall, the department's investigative process sufficiently complied with policies and procedures. The special agent was thorough and diligent, expeditiously completing the investigation in less than two months. |

| Disposition |
| --- |
| The hiring authority determined there was sufficient evidence to sustain the allegations and served the officer with a notice of dismissal. However, pursuant to a settlement agreement, the officer resigned before the disciplinary action could be imposed. A letter indicating the officer resigned under adverse circumstances was placed in his official personnel file. The OIG concurred with the settlement agreement. |

| Disciplinary Assessment |
| --- |
| Overall, the department substantially complied with policies and procedures. |

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
| --- | --- | --- | --- | --- | --- |
| 2011-12-28 | 12-0131-IR | 1. Dishonesty<br>2. Over-Familiarity | 1. Sustained<br>2. Sustained | Dismissal | INVESTIGATION<br>**Sufficient**<br>DISCIPLINE<br>**Sufficient** |

| Facts of the Case |
| --- |
| It was alleged on December 28, 2011, an officer engaged in an overly familiar dating relationship with a former officer who was on parole. |

| Investigative Assessment |
| --- |
| The department's investigative process complied with policies and procedures. |

| Disposition |
| --- |
| The hiring authority sustained the allegation that the officer engaged in an overly familiar relationship with the parolee. The hiring authority also sustained an additional allegation that the officer subsequently submitted a false or misleading memorandum regarding her relationship with the parolee. The hiring authority determined dismissal was the appropriate penalty; however, the officer resigned before disciplinary action could be imposed. |

| Disciplinary Assessment |
| --- |
| Overall, the department substantially complied with policies and procedures. |

# CENTRAL REGION

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2012-01-10** | **12-0141-IR** | **1. Over-Familiarity** | **1. Sustained** | **Dismissal** | INVESTIGATION **Sufficient** DISCIPLINE **Sufficient** |

## Facts of the Case

On January 10, 2012, it was alleged that a department personnel specialist was engaged in an overly familiar relationship with a parolee for approximately one year. It was further alleged the personnel specialist admitted to having a sexual relationship with the parolee and concealed the relationship acknowledging it was against departmental policy.

## Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures. This case was initiated under exigent circumstances, requiring a rapid response from the Office of Internal Affairs. The special agent was thorough and diligent, promptly conducting key witness interviews to preserve statements after the personnel specialist resigned.

## Disposition

The hiring authority determined there was sufficient evidence to sustain the allegation and determined dismissal was the appropriate penalty. However, the personnel specialist resigned before disciplinary action could be imposed. A letter indicating the personnel specialist resigned under adverse circumstances was placed in her official personnel file.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

# HEADQUARTERS

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2009-10-12 | 11-2174-IR | 1. Neglect of Duty | 1. Sustained | Letter of Reprimand | INVESTIGATION **Insufficient** DISCIPLINE **Sufficient** |

## Facts of the Case

It was alleged on October 12, 2009, a plant manager failed to engage in the competitive bid process to purchase an electrical switchgear. It was further alleged in March and April 2011, the plant manager authorized construction of a concrete pad and a wooden structure over a firehouse, without proper authorization. It was also alleged an associate warden had knowledge of the unauthorized construction and failed to provide adequate supervision of the plant manager to prevent it.

## Investigative Assessment

Although the assigned special agent conducted a thorough investigation into a complex case, the delay in referring the matter to the Office of Internal Affairs and the delay by OIA Central Intake to make a determination caused the investigation to be completed with only two days left to take disciplinary action.

## Assessment Questions

- Was the matter referred to OIA as soon as reasonably practical, within 45 calendar days of the date of discovery?

  *The date of discovery of the matter was January 13, 2010, however the hiring authority did not refer the matter to the Office of Internal Affairs for investigation until May 26, 2011.*

- Did OIA Central Intake make a determination regarding the case within 30 calendar days?

  *OIA Central Intake received the matter on June 1, 2011, yet did not make a determination until August 24, 2011.*

- Within 21 calendar days, did the department attorney make an entry into CMS accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

  *The department attorney did not make any entry into CMS confirming relevant dates.*

- Did the department provide written confirmation summarizing all critical discussions about the investigative report to the special agent with a copy to the OIG?

  *The department attorney did not provide written confirmation regarding the investigative report.*

- Was the investigation, or subject interview, completed at least 35 days before the deadline to take disciplinary action?

  *The report was completed and submitted to the hiring authority with only two days left before the deadline to take disciplinary action.*

## Disposition

The hiring authority sustained the allegations against the plant manager and determined that a salary reduction would be imposed. However, the plant manager retired before the matter was completed and a letter indicating he retired under adverse circumstances was placed in his official personnel file. The hiring authority sustained only the allegation that the associate warden failed to properly supervise the plant manager regarding the construction of the wooden structure and issued a letter of reprimand. The associate warden did not file an appeal with the State Personnel Board.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

# HEADQUARTERS

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-04-01 | 11-3107-IR | 1. Sexual Misconduct<br>2. Over-Familiarity<br>3. Contraband<br>4. Other Failure of Good Behavior | 1. Sustained<br>2. Sustained<br>3. Not Sustained<br>4. Not Sustained | Dismissal | INVESTIGATION<br>**Insufficient**<br>DISCIPLINE<br>**Sufficient** |

## Facts of the Case

It was alleged that between April 2010 and April 2011, the chief of security at a juvenile facility engaged in an overly familiar sexual relationship with wards. It was alleged that the chief of security grabbed the genital area of two separate wards numerous times, had sexual skin to skin contact with another ward, and allowed wards to engage in sexual acts while he observed. It was further alleged that on February 25, 2011, the chief of security provided money to gang-affiliated inmates at an institution, conspired with the inmates to introduce narcotics into the institution, and relayed messages between inmates. Also, on April 24, 2011, it was alleged that the chief of security encouraged an inmate he was visiting at an institution to expose himself twice during the visit. Further, it was alleged that the chief of security possessed pornographic material inside a juvenile facility.

## Investigative Assessment

The Office of Internal Affairs failed to conduct a timely and thorough investigation. Initially, the Office of Internal Affairs was not going to conduct an administrative investigation of the chief of security. After the department's attorney and the OIG recommended an investigation be conducted, the Office of Internal Affairs agreed to do so. However, the investigation was assigned to a special agent unfamiliar with the case, and with little time to prepare. Due to the time constraints placed on the agent, he was unable to review the draft criminal and administrative reports, or review statements made by the chief of security in the criminal case. Further, the special agent was instructed to conduct a limited investigation. In addition, the Office of Internal Affairs report was submitted to the hiring authority with less than 35 days before the deadline to take disciplinary action. There were unnecessary delays in the companion criminal investigation conducted by the Office of Internal Affairs which created delays in the administrative case. Further, there was an unnecessary delay in the administrative case when the case was removed from the department's Special Investigative Unit which expeditiously investigates high profile and more serious cases and transferred to the regional office where the criminal investigation was being conducted. The chief of security remained on paid administrative leave for nearly one year pending the investigations. Despite the time constraints and limitations placed on the special agent who conducted the investigation, the department attorney and special agent worked collaboratively and quickly in an effort to conduct a thorough investigation under the circumstances and provide the investigative report to the hiring authority prior to the deadline to take disciplinary action.

# HEADQUARTERS

## Assessment Questions

- Did the special agent adequately prepare for all aspects of the investigation?

  *Prior to conducting the administrative investigation, the special agent did not review the draft criminal or administrative report, or review the chief of security's statement made during a criminal investigation.*

- Were all of the interviews thorough and appropriately conducted?

  *The interrogation of the subject was limited in scope. Further, the Office of Internal Affairs failed to provide the special agent sufficient time to familiarize himself with the allegations and facts of the case to conduct a thorough and effective interrogation.*

- Was the investigative draft report provided to the OIG for review thorough and appropriately drafted?

  *The initial draft report provided to the OIG and department attorney did not include the chief of security's interrogation.*

- Was the OIA investigation, or subject only interview, conducted with due diligence?

  *Initially, the Office of Internal Affairs was not going to conduct an investigation. After the department attorney and the OIG recommended an investigation be conducted, the Office of Internal Affairs agreed to do so. However, the investigation was assigned to a special agent unfamiliar with the case, and with little time to prepare. The agent did not review the draft criminal and administrative reports prepared by other agents, or review statements made by the chief of security in the criminal case. Further, the special agent was instructed to conduct a limited investigation. Further, the deadline to take disciplinary action was February 25, 2012, and the administrative interrogation was not conducted until January 25, 2012.*

- Was the investigation, or subject interview, completed at least 35 days before the deadline to take disciplinary action?

  *The deadline to take disciplinary action was February 25, 2012, and the administrative interrogation was not conducted until January 25, 2012, less than 35 days before the deadline to take disciplinary action.*

- Was the investigation thorough and appropriately conducted?

  *Initially, the Office of Internal Affairs was not going to conduct an administrative investigation. After the department attorney and the OIG recommended an investigation be conducted, the Office of Internal Affairs agreed to do so. However, the investigation was assigned to a special agent unfamiliar with the case, and with little time to prepare. The agent did not review the draft criminal and administrative reports prepared by other agents, or review statements made by the chief of security in the criminal case. The agent was instructed to conduct a limited investigation and, therefore, issued a limited notice of interrogation to the subject. There were unnecessary delays in the companion criminal investigation conducted by the Office of Internal Affairs. Further, there was an unnecessary delay in the administrative case when the case was removed from the department's Special Investigative Unit, which expeditiously investigates high profile and more serious cases, to the regional office where the criminal investigation was being conducted and had already languished.*

## Disposition

The hiring authority determined there was insufficient evidence to sustain allegations that the chief of security provided inmates with drugs or possessed pornographic materials inside the juvenile facility. However, the hiring authority sustained allegations that the chief of security engaged in an overly familiar relationship with inmates by providing the inmates money, visited a gang-affiliated inmate, and engaged in inappropriate sexual conduct with the inmate. The hiring authority served the chief of security a notice of dismissal. The department and chief of security entered into a settlement agreement in which the chief agreed to resign prior to the dismissal becoming effective. The settlement agreement also provided that the notice of dismissal would remain in the chief of security's official personnel file. The OIG found the settlement agreement reasonable because the chief of security could have resigned prior to the dismissal becoming effective without a settlement agreement.

## Disciplinary Assessment

The department attorney and hiring authority complied with policies and procedures. The department attorney provided exceptional legal advise to the hiring authority and zealously represented the department during settlement negotiations. The hiring authority, who was appointed shortly before the deadline to take disciplinary action, conducted a thorough review of the investigative report and conducted a timely disciplinary conference in consultation with the department's attorney and the OIG.

# HEADQUARTERS

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-07-01 | 11-1287-IR | 1. **Misuse of State Equipment or Property** <br> 2. **Discourteous Treatment** <br> 3. **Sexual Harassment** <br> 4. **Incompatible Activities** | 1. **Sustained** <br> 2. **Sustained** <br> 3. **Sustained** <br> 4. **Sustained** | **Dismissal** | INVESTIGATION <br> **Sufficient** <br> DISCIPLINE <br> **Insufficient** |

## Facts of the Case

It was alleged from July 2010, to May 5, 2011, a deputy director was discourteous to staff and created a hostile working environment. Allegedly, the deputy director yelled at staff, made condescending remarks, and exhibited patronizing behavior. Further, he allegedly inappropriately touched female staff by thumping them with his fist on their back and chest, forcefully nudging staff with his elbow causing them to lose balance, and by grinding his elbow on the top of the shoulder blade. Also, he allegedly pinched the thigh of a female staff and stated "I'm going to get every ounce of blood out of you". It was also alleged that the deputy director kissed female staff on multiple occasions against their will. It was further alleged that he constantly questioned a female staff regarding her sexual orientation. He also allegedly misused his state property for personal gain and engaged in activities that were in conflict with his duties as a state employee.

## Investigative Assessment

The Office of Internal Affairs utilized appropriate resources to complete a thorough and detailed investigation on a very complex case. Overall, the department complied with policies and procedures.

## Disposition

The hiring authority sustained the allegations and served the deputy director with a notice of dismissal. The deputy director did not file an appeal with the State Personnel Board.

## Disciplinary Assessment

Although the department substantially complied with policies and procedures, they failed to act diligently in serving the disciplinary action. It took the department ten months to complete and serve the disciplinary action on the deputy director. The deputy director was on administrative leave during this time.

## Assessment Questions

- Was the disciplinary phase conducted with due diligence by the department?

  *The department completed the findings and penalty conference on August 5, 2011. The disciplinary action was not served on the subject until June 5, 2012.*

- Did the HA timely consult with the OIG and the department attorney (if applicable) regarding disciplinary determinations prior to making a final decision?

  *The Office of Internal Affairs completed its investigation and referred the matter to the hiring authority on July 12, 2011. The hiring authority did not consult with the OIG and department attorney regarding the disciplinary determinations until August 5, 2011, more than 14 calendar days after receipt of the case.*

- Did the HA timely consult with the OIG and department attorney (if applicable), regarding the sufficiency of the investigation and the investigative findings?

  *The Office of Internal Affairs completed its investigation and referred the matter to the hiring authority on July 12, 2011. The hiring authority did not consult with the OIG and department attorney regarding the sufficiency of the investigation and the investigative findings until August 5, 2011, more than 14 calendar days after receipt of the case.*

# HEADQUARTERS

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-11-30 | 11-0733-IR | 1. **Unreasonable Use of Force** <br> 2. **Neglect of Duty** | 1. **Sustained** <br> 2. **Sustained** | **Salary Reduction** | INVESTIGATION <br> **Sufficient** <br><br> DISCIPLINE <br> **Sufficient** |

## Facts of the Case

It was alleged on November 30, 2010, a lieutenant employed by an out-of-state correctional facility used unnecessary force on an inmate. Allegedly, the lieutenant twisted the inmate's arms up while he was handcuffed. It was further alleged a sergeant observed this use of force and failed to intervene. It was also alleged that the sergeant subsequently took custody of the inmate and performed an unclothed body search on him while he was on the cell floor and still handcuffed, and used unnecessary force in removing the inmate's clothing. Also, the lieutenant allegedly failed to have the incident properly documented.

## Investigative Assessment

Overall, the department substantially complied with policies and procedures.

## Disposition

The hiring authority did not sustain the allegations against the lieutenant. The hiring authority did sustain the allegations against the sergeant and imposed a 5 percent salary reduction for six months. The sergeant filed an appeal with the State Personnel Board. At the pre-hearing settlement conference, the department and the sergeant entered into a settlement agreement. The department reduced the penalty from a six-month salary reduction to a three-month salary reduction and the sergeant withdrew his appeal. The OIG concurred in the settlement reached by the department.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-12-24 | 11-3054-IR | 1. **Dishonesty** <br> 2. **Neglect of Duty** | 1. **Sustained** <br> 2. **Sustained** | **Suspension** | INVESTIGATION <br> **Insufficient** <br><br> DISCIPLINE <br> **Insufficient** |

## Facts of the Case

It was alleged on December 24, 2010, a sergeant instructed two officers to falsify their incident reports following a use-of-force incident. Allegedly, the officers were instructed to report that they both escorted an inmate to a shower for decontamination following the use of pepper spray. It was also alleged the officers purposefully wrote inaccurate reports.

## Investigative Assessment

Although the OIG did not monitor this investigation as it progressed, a review of the investigation, as well as audio recordings of interviews, was conducted. The special agent failed to interview several witnesses regarding their observations. Instead, the special agent relied on the witnesses' written reports which failed to identify which officers escorted the inmates following the incident. In addition, no inmates were interviewed as part of the investigation, including the two inmates who were escorted by the officers who were the subjects of the investigation. Finally, the special agent failed to interview the control booth officer who was on duty during the incident. It would have been this officer's responsibility to watch the escort and open the shower doors allowing the inmates to be segregated. It was extremely likely that the control booth officer would have identified the officers involved in escorting the inmates. In addition, the hiring authority failed to refer this matter to the Office of Internal Affairs as soon as reasonably practical. The misconduct was discovered on January 1, 2011. The hiring authority failed to request an investigation until July 1, 2011. Due to the delay, the investigation was not completed 35 days prior to the deadline to take disciplinary action.

# HEADQUARTERS

## Assessment Questions

- Was the matter referred to OIA as soon as reasonably practical, within 45 calendar days of the date of discovery?

  *The misconduct was discovered January 1, 2011. The hiring authority failed to request an investigation until July 1, 2011.*

- Did the special agent adequately confer with the OIG upon case initiation and prior to finalizing the investigative plan?

  *This case was not monitored by the OIG during the investigative phase.*

- No later than 21 calendar days following assignment of the case, did the department attorney contact the assigned special agent and the monitor to discuss the elements of a thorough investigation of the alleged misconduct?

  *This is not applicable as the OIG was not monitoring this case at the time of the investigation. However, it does appear that the department attorney did consult with the special agent in a timely manner.*

- Were all of the interviews thorough and appropriately conducted?

  *Although the OIG did not attend the interviews, the monitor was able to listen to audio recordings of the subject interviews. The special agent engaged in many leading questions, suggesting the answer for the subject. In addition, the special agent asked basic questions and failed to follow up with more probative questions.*

- Was the investigation, or subject interview, completed at least 35 days before the deadline to take disciplinary action?

  *The investigation was submitted to the hiring authority with less than 35 days to take disciplinary action.*

- Was the investigation thorough and appropriately conducted?

  *The special agent relied solely on the reports of other officers who were present at the scene that were involved in the use of force. Their reports indicated they were not aware of who escorted the inmates from the cell to decontamination. None of these officers were interviewed as part of this case. In addition, the inmates were not interviewed. However, one inmate advised the investigative services unit that it was two male officers that escorted him to decontamination, which corroborates the officer's statement during her admission. In addition, he did not interview other officers in the building, such as the control booth officer, who would have had to provide gun coverage for the escort and open the shower doors for decontamination. It would stand to reason that this officer would have seen and recognized the escorting officers.*

## Disposition

The hiring authority sustained the allegations of dishonesty and neglect of duty as to only one officer. The hiring authority imposed a 60 working-day suspension because the officer admitted her misconduct. The officer did not file an appeal with the State Personnel Board. The other subjects in this case did not receive disciplinary actions due to an insufficient investigation.

## Disciplinary Assessment

The department attorney failed to provide the hiring authority with appropriate legal consultation and the hiring authority failed to determine that an additional investigation was necessary. As a result, the department was not fully aware of all of the facts and circumstances regarding the incident to make a well reasoned decision.

## Assessment Questions

- Did the VA provide appropriate legal consultation to the HA regarding the sufficiency of the investigation and investigative findings?

  *The department attorney failed to determine that an additional investigation was necessary in this case. Only the subjects were interviewed, despite the fact that there were several other potential witnesses available who could have provided relevant evidence.*

- Did the HA properly determine if additional investigation was necessary?

  *The hiring authority failed to determine that an additional investigation was necessary. Only the subjects were interviewed, despite the fact that there were several other potential witnesses available who could have provided relevant evidence.*

# HEADQUARTERS

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2011-03-21** | **11-2076-IR** | 1. **Retaliation** | 1. **Not Sustained** | **No Penalty Imposed** | INVESTIGATION **Insufficient** DISCIPLINE **Sufficient** |

## Facts of the Case

It was alleged on March 21, 2011, a deputy director retaliated against a lieutenant by eliminating her position and placing her on the lay-off list when she had higher seniority than other lieutenants. Allegedly, the deputy director chose the lieutenant's position to be eliminated because she had filed two separate formal complaints against him.

## Investigative Assessment

Although the department completed a thorough and complete investigation, the Office of Internal Affairs began an investigation without consulting with the OIG and the department attorney. Also, the Office of Internal Affairs worked on this case expeditiously. However, they self-imposed unrealistic deadlines which were unnecessary. Although the deadline for taking disciplinary action was not yet approaching, they only gave the OIG and the department attorney one day to review the draft investigative report. The report was not thorough and additional witnesses were identified. The Office of Internal Affairs had to complete a supplemental investigation since the final report was delivered to the hiring authority before the department attorney's recommendations were addressed.

## Assessment Questions

- Did the special agent adequately confer with the OIG upon case initiation and prior to finalizing the investigative plan?

  *The special agent began conducting an investigation without consulting with the OIG.*

- Did the special agent adequately confer with the department attorney upon case initiation and prior to finalizing the investigative plan?

  *The special agent began conducting an investigation without consulting with the department attorney.*

- Upon completion of the investigation, was a draft copy of the investigative report timely forwarded to the OIG to allow for feedback before it was forwarded to the HA or prosecuting agency?

  *The draft report was provided to the OIG on the afternoon of September 28, 2011. The OIG was informed that the final report would be delivered to the hiring authority on September 30, 2011.*

- Upon completion of the investigation, was a draft copy of the investigative report timely forwarded to the department attorney to allow for feedback before it was forwarded to the HA or prosecuting agency?

  *The copy of the draft report was provided to the department attorney on the afternoon of September 28, 2011. The department attorney was informed that the final report would be delivered to the hiring authority on September 30, 2011.*

- Was the investigative draft report provided to the OIG for review thorough and appropriately drafted?

  *The draft report was not thorough. There were additional witnesses that were identified that needed to be interviewed.*

- Was the final investigative report thorough and appropriately drafted?

  *The final investigative report did not include interviews with additional witnesses that were identified. The OIA did conduct the interviews and provided a supplemental report.*

## Disposition

The hiring authority determined there was insufficient evidence to sustain the allegation.

## Disciplinary Assessment

Overall, the department complied with policies and procedures.

# HEADQUARTERS

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-04-10 | 11-2162-IR | 1. Neglect of Duty | 1. Not Sustained | No Penalty Imposed | INVESTIGATION **Sufficient** DISCIPLINE **Sufficient** |

## Facts of the Case

On April 10, 2011, a riot involving approximately 20 to 25 inmates occurred on a yard. Following the incident, it was alleged two captains and a lieutenant directed officers to not include all relevant information in their incident reports. Allegedly, the officers were told to omit the word "riot" from their reports so the fighting inmates would not be moved to the administrative segregation unit.

## Investigative Assessment

Overall, the department's investigative process substantially complied with policies and procedures.

## Disposition

The hiring authority did not sustain the allegations against the two captains and the lieutenant.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-04-10 | 11-3130-IR | 1. Dishonesty 2. Other Failure of Good Behavior 3. Misuse of State Equipment or Property | 1. Sustained 2. Sustained 3. Sustained | Dismissal | INVESTIGATION **Sufficient** DISCIPLINE **Sufficient** |

## Facts of the Case

On April 10, 2011, a supervising senior psychologist allegedly filed a false police report claiming someone had entered her residence, hit her in the face, and stole property. She stated that she lost consciousness and when she awoke, she was on the floor with her blouse torn, her pants off, and her underwear torn. She claimed that her purse, wedding ring, two computers and an X-box gaming system had been stolen from her home by the unknown intruder. Prior to the alleged incident, the supervising senior psychologist allegedly conspired with another person to stage the reported home invasion robbery and battery. She had the co-conspirator remove the reported stolen property from her home and buy boxing gloves used to hit her in order to sustain facial injuries. Also, she allegedly discussed this plan and thoughts of killing her husband with several co-workers. In addition, she allegedly misused her state-issued computer to conduct internet searches related to divorce, murder, poison, and sexual assault, and allegedly took medication from the institution for personal use.

## Investigative Assessment

The OIG did not monitor this case until after the investigation had been completed. The Office of Internal Affairs opened an investigation on May 18, 2011. The investigation was completed on December 15, 2011. The OIG began monitoring the case on December 23, 2011. The OIG reviewed the completed investigation and found it to be sufficient. The investigation was completed by an outside law enforcement agency and the department only conducted an interview of the supervising senior psychologist.

## Disposition

The hiring authority determined there was sufficient evidence to sustain all of the allegations against the supervising senior psychologist, except the allegation that she took medication from the institution for her personal use, determined that dismissal was the appropriate penalty, and served her with a disciplinary action. She filed an untimely appeal with the State Personnel Board then withdrew it prior to the pre-hearing settlement conference.

# HEADQUARTERS

## Disciplinary Assessment

The OIG did not monitor this case until after the supervising senior psychologist was served with the disciplinary action. The hiring authority failed to properly complete the findings and penalty forms. The OIG did not concur with the hiring authority's decision to sustain the allegations that the supervising senior psychologist attempted to recruit or conspire with fellow department employees to murder her husband and stage the home invasion crime, and to falsely report the staged crime. The OIG did not believe there was sufficient evidence indicating she attempted to recruit or conspire with other department employees. Although the hiring authority sustained these allegations during the findings and penalty determination meeting with the department attorney, neither allegation was contained in the disciplinary action. None of these failures adversely affected the outcome of the case. The department complied with policies and procedures in all critical aspects during the disciplinary phase based on subsequent review.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-04-21 | 12-0183-IR | 1. Discourteous Treatment | 1. Not Sustained | No Penalty Imposed | INVESTIGATION **Sufficient** <br> DISCIPLINE **Sufficient** |

### Facts of the Case

It was alleged that on April 21, 2011, a captain threatened an inmate by stating that he was going to have the inmate stabbed and killed. It was further alleged the captain stated that if the inmate did not die from the attack, that he would have him assigned to a housing unit that did not meet the inmate's classification, which would cause a threat to the inmate's safety.

### Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

### Disposition

The hiring authority determined there was insufficient evidence to sustain the allegation.

### Disciplinary Assessment

Overall, the department complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-05-12 | 11-2263-IR | 1. Discourteous Treatment | 1. Not Sustained | No Penalty Imposed | INVESTIGATION **Sufficient** <br> DISCIPLINE **Sufficient** |

### Facts of the Case

On May 12, 2011, a captain allegedly made threats and intimidating comments regarding his intentions to adversely effect the employment and status of a lieutenant and a chief deputy warden.

### Investigative Assessment

Overall, the department substantially complied with policies and procedures.

### Disposition

The hiring authority determined there was insufficient evidence to sustain the allegation.

### Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

# HEADQUARTERS

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-08-01 | 12-0468-IR | 1. Retaliation | 1. Not Sustained | No Penalty Imposed | INVESTIGATION **Sufficient** DISCIPLINE **Sufficient** |

## Facts of the Case
It was alleged that between August 2011 and November 21, 2011, two high-level managers engaged in retaliation against a staff counsel. Specifically, it was alleged the staff counsel was removed from a special committee for reporting complaints against the assistant chief counsel and testifying on the behalf of a former employee and against the department in a civil matter.

## Investigative Assessment
The department complied with policies and procedures.

## Disposition
The hiring authority did not sustain any allegations.

## Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-10-01 | 11-3033-IR | 1. Disclosure of Confidential Information | 1. Sustained | Counseling | INVESTIGATION **Sufficient** DISCIPLINE **Sufficient** |

## Facts of the Case
It was alleged in October 2011, a lieutenant inappropriately disclosed confidential information regarding an employee investigation to a sergeant. It was further alleged in February 2012, the lieutenant disclosed confidential information to an officer regarding the resignation of another employee.

## Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition
The hiring authority sustained one allegation of disclosure of confidential information and gave the lieutenant a letter of instruction.

## Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-10-01 | 12-0123-IR | 1. Failure to Report 2. Misuse of Authority 3. Disclosure of Confidential Information | 1. Unfounded 2. Unfounded 3. Unfounded | No Penalty Imposed | INVESTIGATION **Sufficient** DISCIPLINE **Sufficient** |

## Facts of the Case
It was alleged in October 2011, a regional parole administrator and a chief deputy regional parole administrator failed to appropriately act on misconduct of a subordinate employee. It was further alleged the two administrators inhibited a parole agent from reporting misconduct and shared information from a confidential investigation with the parole agent.

## Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

# HEADQUARTERS

## Disposition
The hiring authority determined there was insufficient evidence to sustain the allegations against the regional parole administrator or the chief deputy regional parole administrator.

## Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2012-04-29 | 12-0837-IR | 1. **Neglect of Duty**<br>2. **Dishonesty** | 1. **Sustained**<br>2. **Not Sustained** | **Counseling** | INVESTIGATION<br>**Insufficient**<br>DISCIPLINE<br>**Sufficient** |

## Facts of the Case
It was alleged that on April 29, 2011, a staff counsel failed to file a complete pre-hearing settlement conference statement with the State Personnel Board. It was further alleged that on May 20, 2011, the staff counsel was dishonest in a declaration filed with the State Personnel Board.

## Investigative Assessment
The special agent complied with policies and procedures in this matter. The hiring authority delayed over six months in referring this matter to the Office of Internal Affairs and the department attorney failed to follow the policies and procedures in properly documenting the case management system.

## Assessment Questions
- Was the matter referred to OIA as soon as reasonably practical, within 45 calendar days of the date of discovery?

  *The date of discovery of the matter was May 11, 2011. The hiring authority referred the matter to the Office of Internal Affairs on December 29, 2012.*

- Within 21 calendar days, did the department attorney make an entry into CMS accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

  *The department attorney did not make any entries in CMS.*

- Did the department provide written confirmation summarizing all critical discussions about the investigative report to the special agent with a copy to the OIG?

  *The OIG was not provided any written confirmation of discussions the department attorney had with the special agent regarding the investigative report.*

## Disposition
The hiring authority sustained the allegation that the staff counsel failed to file a complete pre-hearing settlement conference statement. The dishonesty allegation was not sustained. The staff counsel received a letter of instruction.

## Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

# NORTH REGION

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2009-09-03 | 12-0394-IR | 1. **Dishonesty**<br>2. **Over-Familiarity**<br>3. **Neglect of Duty**<br>4. **Discourteous Treatment**<br>5. **Sexual Misconduct** | 1. **Sustained**<br>2. **Sustained**<br>3. **Sustained**<br>4. **Sustained**<br>5. **Not Sustained** | **Dismissal** | INVESTIGATION<br>**Sufficient**<br>DISCIPLINE<br>**Sufficient** |

## Facts of the Case

It was alleged between September 3, 2009, and January 30, 2010, a supervising cook was overly familiar with an inmate by engaging in a sexual relationship, corresponding with, and purchasing canteen items for the inmate.

## Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition

The hiring authority sustained the allegations of over familiarity, neglect of duty, discourteous treatment, and dishonesty, but did not sustain the allegations of sexual misconduct, and determined that dismissal was the appropriate penalty. However, the supervising cook resigned prior to the completion of the investigation and before disciplinary action could be imposed. A letter indicating the supervising cook resigned under adverse circumstances was placed in her official personnel file.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-01-01 | 11-2975-IR | 1. **Failure to Report**<br>2. **Neglect of Duty**<br>3. **Sexual Misconduct**<br>4. **Over-Familiarity** | 1. **Sustained**<br>2. **Sustained**<br>3. **Not Sustained**<br>4. **Not Sustained** | **Salary Reduction** | INVESTIGATION<br>**Insufficient**<br>DISCIPLINE<br>**Insufficient** |

## Facts of the Case

It was alleged between January 2010 and February 21, 2011, an officer engaged in an overly familiar relationship with inmates by allowing inmates access to a confidential computer, engaging in sexual activity with inmates, and providing contraband to inmates in the form of drugs, mobile phones, and tobacco. A second officer allegedly failed to report his observations concerning the first officer allowing the inmates access to a confidential computer.

## Investigative Assessment

The department attorney failed to accurately assess the deadline for taking disciplinary action.

## Assessment Questions

- Within 21 calendar days, did the department attorney make an entry into CMS accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

  *The department attorney failed to enter the accurate date for taking disciplinary action.*

- Did the department attorney appropriately determine that the deadline for taking disciplinary action as originally calculated should be modified and consult with the OIG and special agent?

  *The department attorney failed to enter the accurate date for taking disciplinary action or appropriately determine that the deadline for taking disciplinary action as originally calculated should be modified.*

# NORTH REGION

## Disposition

The hiring authority sustained the allegation of neglect of duty against the first officer and imposed a 5 percent salary reduction for six months, but determined there was insufficient evidence to sustain the allegations of sexual misconduct or over-familiarity. The hiring authority sustained the allegation of failure to report against the second officer and issued a letter of instruction. After a *Skelly* hearing, the hiring authority reduced the penalty for the first officer to a letter of instruction based upon new evidence. The OIG was not consulted prior to the modification of the penalty. However, given the evidentiary problems and potential statute of limitations defense raised by the officer during the *Skelly* hearing, the OIG agreed that the penalty modification was reasonable.

## Disciplinary Assessment

The hiring authority failed to serve the disciplinary action on the officer before the deadline to take disciplinary action. Further, the hiring authority and department attorney failed to consult with the OIG prior to settling the case.

## Assessment Questions

- Did the HA cooperate with and provide continual real-time consultation with the OIG throughout the writ or court appeal portion?

  *The hiring authority did not consult with OIG before modifying the penalty.*

- Did the department attorney cooperate with and provide continual real-time consultation with the OIG throughout the writ or court appeal portion of the case?

  *The department attorney did not consult with OIG before modifying the penalty.*

- Did the HA cooperate with and provide continual real-time consultation with the OIG throughout the disciplinary phase, until all proceedings were completed, except for those related to a writ?

  *The hiring authority did not consult with OIG before modifying the penalty.*

- Did the department attorney or disciplinary officer cooperate with and provide continual real-time consultation with the OIG throughout the disciplinary phase, until all proceedings were completed, except for those related to a writ?

  *The department attorney did not consult with OIG before modifying the penalty.*

- Did the HA consult with the OIG and department attorney (if applicable) before modifying the penalty or agreeing to a settlement?

  *The hiring authority and the department attorney did not consult with the OIG before modifying the penalty. When asked why they neglected to contact the OIG in advance of the penalty modification, their explanation was that they simply forgot that this was a monitored case and that they were required to consult with the OIG before modifying the penalty. Notwithstanding this deficiency, the modification of penalty was reasonable given the evidentiary problems with the case and the statute of limitations defense.*

- Was the penalty upheld by the department after a Skelly hearing?

  *The penalty was modified to a letter of instruction after the Skelly Hearing.*

- Did the deadline for taking disciplinary action expire before the department completed its findings and served appropriate disciplinary action?

  *The alleged misconduct was reported to the officer's supervising sergeant on February 21, 2011. An investigation was initiated at that time and the investigative services lieutenant was aware of the alleged misconduct on or before February 24, 2011. The hiring authority was made aware of the alleged misconduct on or before February 25, 2011. The disciplinary action was served on the officer on March 1, 2012, after the deadline for taking disciplinary action had expired.*

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-03-01 | 10-3900-IR | 1. **Sexual Misconduct** | 1. **Sustained** | **Dismissal** | INVESTIGATION **Insufficient** DISCIPLINE **Sufficient** |

## Facts of the Case

On March 1, 2010, a maintenance mechanic allegedly committed sexual misconduct by showing inmates nude photographs of his wife and having sexual relations with an inmate.

# NORTH REGION

## Investigative Assessment

The assigned department attorney failed to timely and accurately assess the deadline for taking disciplinary action, failed to contact the assigned special agent and the OIG to discuss the investigative plan, failed to attend interviews, failed to review the investigative report, and failed to provide feedback to the assigned special agent regarding the investigative report. In addition, aside from reviewing documents, the assigned special agent did not begin the investigation for almost seven months after being assigned to the case. Thereafter, there were additional delays of two months and then three months. The maintenance mechanic retired during this time and, therefore, was unreachable for an investigatory interview.

## Assessment Questions

- Within 21 calendar days, did the department attorney make an entry into CMS accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

  *The department attorney did not make an entry into CMS until 35 days after being assigned to the case. In addition, the entry did not accurately confirm the deadline for taking disciplinary action because the department attorney utilized the date the alleged misconduct was discovered rather than the date the alleged misconduct occurred.*

- No later than 21 calendar days following assignment of the case, did the department attorney contact the assigned special agent and the monitor to discuss the elements of a thorough investigation of the alleged misconduct?

  *The department attorney did not contact the assigned special agent or OIG until 35 days after being assigned to the case.*

- Did the department attorney attend investigative interviews for key witnesses to assess witness demeanor and credibility?

  *The department attorney did not attend any interviews.*

- Within 21 calendar days following receipt of the investigative report, did the department attorney review the report and provide appropriate substantive feedback addressing the thoroughness and clarity of the report?

  *The department attorney did not provide any feedback addressing the report.*

- Did the department provide written confirmation summarizing all critical discussions about the investigative report to the special agent with a copy to the OIG?

  *The department attorney did not provide any written feedback regarding the investigative report.*

- Was the OIA investigation, or subject only interview, conducted with due diligence?

  *The special agent was assigned on January 19, 2011. Although the special agent started the investigation by reviewing personnel files on February 24, 2011, there was no other investigative activity until August 1, 2011, a delay of over five months. There was also no investigative activity between September 30, 2011, and November 30, 2011, a two month delay, and between February 3, 2012, and April 26, 2012, an almost three month delay. The subject retired during this time-frame and, consequently, could not be reached for an investigatory interview.*

## Disposition

The hiring authority determined there was sufficient evidence to sustain the allegations and determined that dismissal was the appropriate penalty. However, the maintenance mechanic retired before disciplinary action could be imposed. A letter indicating the maintenance mechanic retired under adverse circumstances was place in his official personnel file.

## Disciplinary Assessment

Overall, the department attorney and hiring authority complied with policies and procedures.

# NORTH REGION

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-03-01 | 11-2016-IR | 1. Contraband<br>2. Over-Familiarity<br>3. Insubordination | 1. Sustained<br>2. Sustained<br>3. Sustained | Dismissal | INVESTIGATION<br>**Sufficient**<br>DISCIPLINE<br>**Sufficient** |

## Facts of the Case

Between March 2010 and July 2011, an officer allegedly engaged in an overly familiar relationship with an inmate by providing him with tobacco and mobile phones. The alleged misconduct was discovered on July 21, 2011, when outside law enforcement responded to the residence of an officer after receiving an anonymous "officer down and dying" call. Upon arrival, outside law enforcement was unable to locate the officer. Later that day, the investigative services unit found a mobile phone in an inmate's cell and later discovered that it contained the officer's phone number and a missed call from the officer's phone. Documents containing suspected references to the officer were also found in the inmate's cell. On the following day, the officer contacted outside law enforcement and reported she was safe and unharmed. The officer later failed to interview with the Office of Internal Affairs despite receiving an order to do so.

## Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition

The hiring authority sustained the allegations and determined that dismissal was the appropriate penalty. However, the officer resigned prior to the completion of the investigation; therefore, disciplinary action was not taken. A letter indicating the officer resigned under adverse circumstances was placed in her official personnel file.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-05-26 | 10-3221-IR | 1. Failure to Report | 1. Sustained | Salary Reduction | INVESTIGATION<br>**Sufficient**<br>DISCIPLINE<br>**Sufficient** |

## Facts of the Case

On May 26, 2010, a lieutenant, sergeant, five officers, and two nurses allegedly used force, or witnessed the use of force, on a combative inmate who was being place in five-point restraints, and failed to write reports documenting the use of force.

## Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition

The hiring authority for custody staff determined there was sufficient evidence to sustain the allegations against the lieutenant, sergeant and against four of the five officers. The lieutenant received a 5 percent salary reduction for three months and filed an appeal with the State Personnel Board. The department ultimately entered into a settlement agreement with the lieutenant whereby he received a letter of reprimand and waived two months of back pay. The OIG found the agreement to be reasonable. The sergeant received a 5 percent salary reduction for 18 months; however, after a *Skelly* hearing, the department agreed to settle the case for a 5 percent salary reduction for six months. The OIG found the agreement to be reasonable. Three officers received letters of instruction. One officer retired before a penalty of a 10 percent salary reduction for 13 months could be imposed and a letter indicating he retired under adverse circumstances was placed in his official personnel file. The hiring authority for medical staff sustained the allegation against one of the nurses and served the nurse with a letter of instruction. The allegations against the other nurse were determined to be unfounded.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

# NORTH REGION

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-06-01 | 12-0268-IR | 1. **Contraband**<br>2. **Over-Familiarity** | 1. **Sustained**<br>2. **Sustained** | **Dismissal** | INVESTIGATION<br>**Sufficient**<br>DISCIPLINE<br>**Sufficient** |

### Facts of the Case
On June 1, 2010, a supervising cook allegedly provided an inmate with tobacco, mobile phones, and tattoo supplies for personal gain.

### Investigative Assessment
The department's investigative process sufficiently complied with policies and procedures.

### Disposition
The hiring authority determined there was sufficient evidence to sustain the allegations and determined dismissal was the appropriate penalty. However, the supervising cook resigned before disciplinary action could be imposed. A letter indicating the supervising cook resigned under adverse circumstances was placed in his official personnel file.

### Disciplinary Assessment
The department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-09-18 | 10-3578-IR | 1. **Neglect of Duty** | 1. **Not Sustained** | **No Penalty Imposed** | INVESTIGATION<br>**Sufficient**<br>DISCIPLINE<br>**Sufficient** |

### Facts of the Case
On September 18, 2010, it was alleged that a youth counselor shared confidential information pertaining to a ward with another ward creating a security threat.

### Investigative Assessment
The department's investigative process sufficiently complied with policies and procedures.

### Disposition
The hiring authority determined there was insufficient evidence to sustain the allegations.

### Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-09-23 | 11-1080-IR | 1. **Contraband**<br>2. **Insubordination**<br>3. **Overfamiliarity**<br>4. **Other Failure of Good Behavior** | 1. **Sustained**<br>2. **Sustained**<br>3. **Sustained**<br>4. **Not Sustained** | **Dismissal** | INVESTIGATION<br>**Sufficient**<br>DISCIPLINE<br>**Sufficient** |

### Facts of the Case
On September 23, 2010, it was alleged an officer introduced tobacco, drugs, and mobile phones into an institution. It was further alleged that on October 15, 2010, the officer collaborated with another officer to bring in more contraband. It was also alleged that on February 3, 2011, the other officer entered the secured perimeter with his personal mobile phone.

# NORTH REGION

## Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition
The hiring authority sustained the allegations against the first officer and served him with a notice of dismissal. However, the officer resigned before the disciplinary action took effect. A letter indicating the officer resigned under adverse circumstances was placed in his official personnel file. The hiring authority sustained the allegation against the second officer for bringing his personal mobile phone into a secured perimeter and imposed a 5 percent salary reduction for 12 months. The second officer did not file an appeal with the State Personnel Board.

## Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-10-01 | 12-0184-IR | 1. Dishonesty<br>2. Over-Familiarity<br>3. Insubordination | 1. Sustained<br>2. Sustained<br>3. Sustained | Dismissal | INVESTIGATION<br>**Sufficient**<br>DISCIPLINE<br>**Sufficient** |

### Facts of the Case
It was alleged between October 2010 and March 2011, a youth counselor was involved in an overly familiar relationship with a ward.

## Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition
The hiring authority sustained the allegations and served the youth counselor with a notice of dismissal. However, pursuant to a settlement agreement, the youth counselor resigned in lieu of dismissal and agreed to never seek employment with the department in the future. The OIG concurred with the settlement.

## Disciplinary Assessment
The department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-11-01 | 11-1722-IR | 1. Dishonesty<br>2. Sexual Misconduct<br>3. Neglect of Duty | 1. Sustained<br>2. Sustained<br>3. Sustained | Dismissal | INVESTIGATION<br>**Sufficient**<br>DISCIPLINE<br>**Sufficient** |

### Facts of the Case
In November 2010, it was alleged an officer was engaged in overly familiar relationships with an inmate and the inmate's wife. It was further alleged the officer smuggled contraband, including drugs and mobile phones, into the institution.

## Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition
The hiring authority sustained the allegations that the officer engaged in over-familiarity with an inmate and the inmate's wife, and brought contraband into a security area for personal gain. The hiring authority determined that dismissal was the appropriate penalty. However, the officer resigned prior to completion of the investigation; therefore, disciplinary action was not taken. A letter indicating the officer resigned under adverse circumstances was placed in his official personnel file.

## Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

# NORTH REGION

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-11-23 | 11-1808-IR | 1. Misuse of Authority | 1. Exonerated | No Penalty Imposed | INVESTIGATION **Sufficient** DISCIPLINE **Sufficient** |

### Facts of the Case
On November 23, 2010, an officer allegedly identified himself as a 24-hour peace officer to an outside law enforcement agency prior to participating in a ride-a-long program. The officer also allegedly displayed his state-issued badge around his neck, displayed a firearm, and conducted a pat-down search of a suspect during the ride-a-long.

### Investigative Assessment
The department's investigative process complied with policies and procedures.

### Disposition
The hiring authority determined there was insufficient evidence to sustain the allegations.

### Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-12-01 | 11-0466-IR | 1. Neglect of Duty 2. Misuse of State Equipment or Property 3. Discourteous Treatment | 1. Sustained 2. Sustained 3. Sustained | Salary Reduction | INVESTIGATION **Sufficient** DISCIPLINE **Sufficient** |

### Facts of the Case
It was alleged that on December 1, 2010, an officer was observed talking to himself and acting in an erratic manner. The officer allegedly proceeded to take a handful of apple crisp from the inmate steam tray and eat it with his bare hands. It was further alleged that the officer then exited the building and sprayed the yard exercise equipment with pepper spray for no apparent reason. The officer was observed yelling at inmates for no apparent reason and while sitting at the dining room table while inmates were eating. The officer was also observed nodding off and almost falling off the table. The officer also allegedly abandoned his post and proceeded to the parking lot to retrieve his lunch from his wife. The officer was required to take a drug test and was found to be under the influence of prescription medications at the time of these incidents. On December 3, 2010, it was alleged that when the officer called in sick, he was disrespectful and used profane language directed toward a sergeant.

### Investigative Assessment
Overall, the department substantially complied with policies and procedures.

### Disposition
The hiring authority determined there was sufficient evidence to sustain the allegations and imposed a 5 percent salary reduction for 24 months. The officer did not file an appeal with the State Personnel Board.

### Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

# NORTH REGION

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-01-13 | 11-1373-IR | 1. **Other Failure of Good Behavior** 2. **Discourteous Treatment** 3. **Failire to Provide a Urinalysis Sample** | 1. **Not Sustained** 2. **Not Sustained** 3. **Not Sustained** | **No Penalty Imposed** | INVESTIGATION **Sufficient** DISCIPLINE **Sufficient** |

## Facts of the Case
On January 13, 2011, a youth counselor was allegedly discourteous and failed to provide a sufficient sample to comply with a random drug test. It was further alleged that another youth counselor, acting as a union representative, interfered with drug testing protocols and was discourteous towards staff.

## Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition
The hiring authority determined there was insufficient evidence to sustain the allegations against both youth counselors.

## Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-02-10 | 11-1015-IR | 1. **Dishonesty** 2. **Failure to Report** | 1. **Sustained** 2. **Unfounded** | **No Penalty Imposed** | INVESTIGATION **Sufficient** DISCIPLINE **Sufficient** |

## Facts of the Case
On February 10, 2011, it was alleged that a lieutenant forged signatures on inmate appeal forms. Further, an office assistant was allegedly aware of the lieutenant's alleged misconduct and failed to report it.

## Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition
The hiring authority sustained the allegations against the lieutenant. However, the hiring authority did not identify a penalty and the lieutenant retired before disciplinary action could be taken. A letter was placed in his file indicating that he retired pending disciplinary action. The hiring authority determined there was insufficient evidence to sustain the allegations against the office assistant.

## Disciplinary Assessment
The department complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-02-15 | 11-1593-IR | 1. **Neglect of Duty** | 1. **Not Sustained** | **No Penalty Imposed** | INVESTIGATION **Insufficient** DISCIPLINE **Sufficient** |

## Facts of the Case
On February 15, 2011, a sergeant and a psychologist allegedly transferred an inmate from the department of mental health supervision to correctional housing without obtaining appropriate approval. Later that day, the inmate was found hanging in his cell and was pronounced dead.

# NORTH REGION

## Investigative Assessment

The investigative report was not delivered to the hiring authority until only 26 days were left to take disciplinary action.

## Assessment Questions

- Was the matter referred to OIA as soon as reasonably practical, within 45 calendar days of the date of discovery?

  *The discovery of the alleged misconduct occurred on February 15, 2011. The matter was referred to the Office of Internal Affairs on May 6, 2011, more than 45 calendar days after the date of discovery.*

- Was the investigation, or subject interview, completed at least 35 days before the deadline to take disciplinary action?

  *The completed report was not delivered to the hiring authority until only 26 days were left to take action.*

## Disposition

The hiring authority determined there was insufficient evidence to sustain the allegations against the officer or the psychologist. However, as a result of a quality improvement plan, the respective departments implemented changes in communication and documentation procedures between the agencies and provided training to staff.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-02-28 | 11-1424-IR | 1. Neglect of Duty<br>2. Dishonesty | 1. Sustained<br>2. Not Sustained | Counseling | INVESTIGATION<br>**Sufficient**<br>DISCIPLINE<br>**Sufficient** |

### Facts of the Case

On February 28, 2011, three officers allegedly told a sergeant that they had suspicions concerning a fourth officer's use of force against an inmate. Allegedly, the three officers questioned whether the fourth officer's use of force was reasonable, but they did not report the circumstances surrounding the incident. When the sergeant instructed the officers to write reports, allegedly they initially refused and later wrote incomplete and inaccurate memos.

## Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition

The hiring authority sustained the allegations of negligence as to all three officers for failing to timely and accurately report their suspicions concerning the use of force, but did not sustain the dishonesty allegations. The three officer were provided corrective counseling.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-02-28 | 11-1605-IR | 1. Dishonesty<br>2. Unreasonable Use of Force | 1. Not Sustained<br>2. Not Sustained | No Penalty Imposed | INVESTIGATION<br>**Sufficient**<br>DISCIPLINE<br>**Sufficient** |

### Facts of the Case

On February 28, 2011, an officer allegedly used unnecessary force by discharging a less-lethal indirect impact round at a ward who did not pose a threat. It was further alleged that a youth counselor provided false or misleading statements regarding the ward's behavior.

## Investigative Assessment

Overall, the department's investigative process complied with policies and procedures.

# NORTH REGION

## Disposition
The hiring authority determined there was insufficient evidence to sustain the allegations against the officer and the youth counselor.

## Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-03-10 | 11-1044-IR | 1. Over-Familiarity | 1. Sustained | Suspension | INVESTIGATION **Sufficient** DISCIPLINE **Sufficient** |

### Facts of the Case
On March 10, 2011, a parolee who had absconded from parole supervision was allegedly discovered residing in an officer's home with the officer's adult son. During an investigation it was further discovered that the officer allegedly communicated with the parolee after the parolee was apprehended and incarcerated.

### Investigative Assessment
Overall, the department's investigative process complied with policies and procedures.

### Disposition
The hiring authority determined there was sufficient evidence to sustain the allegations and imposed a 60 working-day suspension. However, following a *Skelly* hearing, the hiring authority agreed to reduce the penalty to a 10 percent salary reduction for 30 months. The officer did not file an appeal with the State Personnel Board. The OIG concurred with the settlement agreement.

### Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-03-10 | 11-3036-IR | 1. Neglect of Duty | 1. Not Sustained | No Penalty Imposed | INVESTIGATION **Insufficient** DISCIPLINE **Sufficient** |

### Facts of the Case
On March 10, 2011, three officers allegedly failed to accommodate an inmate's request for an emergency cell move after the inmate reported he feared his life was in danger. Later that same day, the inmate was allegedly killed by his cellmate inside their cell.

### Investigative Assessment
The hiring authority waited 272 days before submitting a request for investigation to the Office of Internal Affairs. OIA Central Intake did not make an appropriate initial determination regarding the case. The appropriate determination was finally made only after OIG intervention. The special agent and the department worked diligently under the short time constraints, but the matter was submitted to the hiring authority with less than 35 days to take disciplinary action.

# NORTH REGION

## Assessment Questions

- Was the matter referred to OIA as soon as reasonably practical, within 45 calendar days of the date of discovery?

  *The department learned of the misconduct on March 11, 2011, but the hiring authority did not refer the matter to the Office of Internal Affairs until December 8, 2011, 272 days after the date of discovery.*

- Did OIA Central Intake make an appropriate initial determination regarding the case?

  *OIA Central Intake initially decided to deny the request for investigation. However, after intervention by the OIG, OIA Central Intake agreed to open a full investigation.*

- Would the appropriate initial determination or reconsideration determination have been made by OIA Central Intake and/or OIA Chief without OIG intervention?

  *OIA Central Intake initially decided to deny the request for investigation. However, after intervention by the OIG, OIA Central Intake agreed to open a full investigation.*

- Was the investigation, or subject interview, completed at least 35 days before the deadline to take disciplinary action?

  *The investigation was not completed 35 days before the deadline to take disciplinary action. The case was assigned by OIA Central Intake on December 27, 2011, with a deadline for taking disciplinary action of March 8, 2012. The special agent and department attorney worked diligently to complete the investigation, but given the initial delays and numerous interviews required, the investigation was not able to be completed 35 days before the deadline to take disciplinary action.*

## Disposition

The hiring authority determined there was insufficient evidence to sustain the allegations against the three officers.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-03-18 | 11-2172-IR | 1. **Dishonesty** <br> 2. **Neglect of Duty** <br> 3. **Discourteous Treatment** <br> 4. **Theft - Undetermined/other** | 1. **Sustained** <br> 2. **Sustained** <br> 3. **Sustained** <br> 4. **Not Sustained** | **Suspension** | INVESTIGATION <br> **Sufficient** <br> DISCIPLINE <br> **Sufficient** |

## Facts of the Case

On March 18, 2011, it was alleged a parole agent failed to meet case specification requirements and failed to properly document his supervision records. It was also alleged the parole agent was dishonest to his supervisor when he stated he did not have his field book when requested by his supervisor. It was further alleged the agent was discourteous and disrespectful to his supervisor when, after she informed him an audit was being conducted on his caseload records, he entered her office and removed several documents regarding the audit. Finally, it was alleged the agent recorded false or inaccurate information in the case records regarding a drug test.

## Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition

The hiring authority sustained all of the allegations except the allegation the parole agent removed documents from his supervisor's office. The hiring authority imposed a 49 working-day suspension. However, following a *Skelly* hearing, the hiring authority agreed to reduce the penalty to a 24-month salary reduction, the equivalent of a 49 working-day suspension. Based on the parole agent's long-term, exemplary employment with the department, the OIG concurred with the settlement.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

# NORTH REGION

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-04-09 | 11-1313-IR | 1. **Other Failure of Good Behavior** | 1. **Not Sustained** | **No Penalty Imposed** | INVESTIGATION **Sufficient** DISCIPLINE **Sufficient** |

## Facts of the Case
On April 9, 2011, an off-duty officer allegedly pointed a loaded gun towards his estranged wife during an argument. The officer was charged with brandishing a weapon, but was found not guilty after a jury trial.

## Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition
The hiring authority determined there was insufficient evidence to sustain the allegation against the officer.

## Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-04-16 | 11-1597-IR | 1. **Dishonesty** | 1. **Not Sustained** | **Counseling** | INVESTIGATION **Sufficient** DISCIPLINE **Sufficient** |

## Facts of the Case
On April 16, 2011, an off-duty officer was questioned by law enforcement officers who were investigating a reported shooting in a residential area. The officer allegedly denied having any knowledge of the incident, but upon further questioning, admitted being at a party where he heard gun shots and left the scene.

## Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition
The hiring authority determined there was insufficient evidence to sustain the allegations; however, the officer was issued a letter of instruction reminding him of his duty to fully cooperate with outside law enforcement agencies.

## Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-04-16 | 11-2896-IR | 1. **Failure to Report** 2. **Neglect of Duty** | 1. **Not Sustained** 2. **Not Sustained** | **No Penalty Imposed** | INVESTIGATION **Sufficient** DISCIPLINE **Sufficient** |

## Facts of the Case
On April 16, 2011, several unknown staff members allegedly failed to document their use of force or failed to report the use of force observed when an inmate was placed in five-point restraints. Additionally, it was alleged that unknown staff failed to report an attempted battery on an officer by an inmate.

## Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

# NORTH REGION

| Disposition |
| --- |
| The hiring authority determined there was insufficient evidence to sustain the allegations. |

| Disciplinary Assessment |
| --- |
| Overall, the department substantially complied with policies and procedures. |

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
| --- | --- | --- | --- | --- | --- |
| 2011-05-01 | 11-1858-IR | 1. Unreasonable Use of Force | 1. Not Sustained | No Penalty Imposed | INVESTIGATION **Sufficient** DISCIPLINE **Sufficient** |

| Facts of the Case |
| --- |
| On May 1, 2011, four officers allegedly used unreasonable force while subduing and restraining an inmate. One of the officers allegedly struck the inmate in the head multiple times and kicked the inmate in the ribs causing injuries, including a broken rib. |

| Investigative Assessment |
| --- |
| The department substantially complied with policies and procedures. |

| Disposition |
| --- |
| The hiring authority determined there was insufficient evidence to sustain the allegations against all four officers. |

| Disciplinary Assessment |
| --- |
| The department complied with policies and procedures. |

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
| --- | --- | --- | --- | --- | --- |
| 2011-05-12 | 11-2017-IR | 1. Other Failure of Good Behavior 2. Discourteous Treatment | 1. Not Sustained 2. Not Sustained | No Penalty Imposed | INVESTIGATION **Sufficient** DISCIPLINE **Sufficient** |

| Facts of the Case |
| --- |
| On May 12, 2011, an off-duty officer allegedly uttered a profanity towards his adult step-son and engaged in a physical altercation with him. Outside law enforcement officers were called to intervene and stop the incident. The case was reviewed by the district attorney, which declined to file charges. |

| Investigative Assessment |
| --- |
| Overall, the department's investigative process sufficiently complied with policies and procedures. |

| Disposition |
| --- |
| The hiring authority determined there was insufficient evidence to sustain the allegations. |

| Disciplinary Assessment |
| --- |
| Overall, the department substantially complied with policies and procedures. |

# NORTH REGION

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-05-20 | 12-0724-IR | 1. **Neglect of Duty**<br>2. **Dishonesty**<br>3. **Unreasonable Use of Force** | 1. **Sustained**<br>2. **Not Sustained**<br>3. **Not Sustained** | **No Penalty Imposed** | INVESTIGATION<br>**Insufficient**<br>DISCIPLINE<br>**Sufficient** |

## Facts of the Case

On May 20, 2011, an officer allegedly submitted false or misleading information by indicating that an inmate altercation was under control when he arrived on the scene, that he was an escorting officer, and that he escorted an inmate to be decontaminated and then escorted the inmate to the clinic. Also, it was alleged the officer failed to report that he witnessed the use of pepper spray by another officer. It was further alleged that the officer was dishonest during his interview with the Office of Internal Affairs.

## Investigative Assessment

The hiring authority failed to submit a timely request for investigation. The department attorney did not make the required entries into the case management system. The date of discovery was May 20, 2011; however, the investigation was completed and submitted to the hiring authority on April 20, 2012, approximately 30 days before the deadline to take disciplinary action.

## Assessment Questions

- Was the matter referred to OIA as soon as reasonably practical, within 45 calendar days of the date of discovery?

  *The discovery date was May 20, 2011; however, the hiring authority did not refer the matter to the Office of Internal Affairs until July 12, 2011, more than 45 days after the date of discovery.*

- Within 21 calendar days, did the department attorney make an entry into CMS accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

  *The department attorney made an entry into CMS. However, he merely stated that he assessed the date of the incident, discovery date, and the deadline of taking disciplinary action without indicating the actual dates.*

- Was the investigation, or subject interview, completed at least 35 days before the deadline to take disciplinary action?

  *The investigation was completed and submitted to the hiring authority on April 20, 2012, approximately 30 days before the deadline to take disciplinary action.*

## Disposition

The hiring authority determined there was sufficient evidence to sustain an allegation of neglect of duty against the officer for submitting an inaccurate report. However, the hiring authority determined there was insufficient evidence to sustain the remaining allegations. The hiring authority issued the officer a letter of instruction on report writing.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-05-24 | 11-2749-IR | 1. **Neglect of Duty**<br>2. **Dishonesty** | 1. **Sustained**<br>2. **Not Sustained** | **Counseling** | INVESTIGATION<br>**Sufficient**<br>DISCIPLINE<br>**Sufficient** |

## Facts of the Case

On May 24, 2011, a lieutenant was allegedly dishonest when he reported that an officer was present and assisted in an inmate's rules violation hearing. It was further alleged that the lieutenant failed to verify the department staff who signed the rules violation report.

## Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

# NORTH REGION

## Disposition

The hiring authority determined there was insufficient evidence to sustain the dishonesty allegation. However, the hiring authority sustained the allegation the lieutenant failed to accurately identify the department staff who signed the rules violation and issued him a letter of instruction.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-06-04 | 11-1860-IR | 1. Sexual Misconduct<br>2. Neglect of Duty | 1. Sustained<br>2. Sustained | Dismissal | INVESTIGATION<br>**Sufficient**<br>DISCIPLINE<br>**Sufficient** |

## Facts of the Case

On June 4, 2011, it was alleged an officer engaged in sexually lewd conduct with an inmate by directing the inmate to expose herself while he was alone with the inmate in a supply room. It was further alleged the officer watched other female inmates undress and expose themselves, failed to stop their conduct, and failed to report their conduct.

## Investigative Assessment

Overall, the department's investigative processes complied with policies and procedures.

## Disposition

The hiring authority determined there was sufficient evidence to sustain the allegations and determined dismissal was the appropriate penalty. However, the officer resigned before disciplinary action could be imposed. A letter indicating the officer resigned under adverse circumstances was placed in his official personnel file.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-06-09 | 12-1310-IR | 1. Dishonesty<br>2. Over-Familiarity<br>3. Other Failure of Good Behavior | 1. Not Sustained<br>2. Not Sustained<br>3. Not Sustained | No Penalty Imposed | INVESTIGATION<br>**Insufficient**<br>DISCIPLINE<br>**Sufficient** |

## Facts of the Case

On June 9, 2011, it was alleged an officer was overly familiar with an inmate and sold contraband consisting of mobile phones and tobacco to the inmate. It was also alleged the officer was dishonest during his interview with the Office of Internal Affairs.

## Investigative Assessment

The department's investigative process did not sufficiently comply with policies and procedures. The department learned of the misconduct on June 9, 2011; however, the hiring authority did not refer the matter to the Office of Internal Affairs until August 23, 2011, more than 45 days after the date of discovery. Further, the investigative report was completed and submitted to the hiring authority with only 25 days left before the deadline to take disciplinary action.

# NORTH REGION

## Assessment Questions

- Was the matter referred to OIA as soon as reasonably practical, within 45 calendar days of the date of discovery?

  *The date of discovery was June 9, 2011; however, the hiring authority did not refer the matter to the Office of Internal Affairs until August 23, 2011, more than 45 days after the date of discovery.*

- Within 21 calendar days, did the department attorney make an entry into CMS accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

  *The department attorney did not make any entry into CMS confirming relevant dates.*

- Was the investigation, or subject interview, completed at least 35 days before the deadline to take disciplinary action?

  *The report was completed and submitted to the hiring authority with only 25 days left before the deadline to take disciplinary action.*

## Disposition
The hiring authority determined there was insufficient evidence to sustain the allegations.

## Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-08-01 | 11-3027-IR | 1. Over-Familiarity | 1. Sustained | Dismissal | INVESTIGATION **Sufficient** DISCIPLINE **Sufficient** |

### Facts of the Case
Between August 2011 and November 2011, a stationary engineer allegedly engaged in an overly familiar relationship with an inmate by attempting to kiss the inmate, providing the inmate with his personal phone number, gifts, food, and candy, and agreeing to perform sexual acts with the inmate in exchange for taking her shopping upon her release on parole.

### Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

### Disposition
The hiring authority determined there was sufficient evidence to sustain the allegations and determined dismissal was the appropriate penalty. However, the stationary engineer retired before disciplinary action could be imposed. A letter indicating the stationary engineer retired under adverse circumstances was placed in his official personnel file.

### Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-09-19 | 12-0396-IR | 1. Contraband<br>2. Over-Familiarity | 1. Sustained<br>2. Sustained | Dismissal | INVESTIGATION **Sufficient** DISCIPLINE **Sufficient** |

### Facts of the Case
On September 19, 2011 a records technician allegedly engaged in an overly familiar relationship with an inmate by engaging in a sexual relationship, giving the inmate a greeting card and dog tags, and by communicating with the inmate by mobile phone.

### Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

# NORTH REGION

## Disposition

The hiring authority sustained all allegations and served the records technician with a dismissal. The department and the records technician entered into a settlement agreement whereby the employee resigned from state service. The records technician waived her right to file an appeal with the State Personnel Board and agreed to never apply for or accept employment with the department. The OIG concurred in the settlement.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-09-20 | 12-0515-IR | 1. Neglect of Duty | 1. Exonerated | No Penalty Imposed | INVESTIGATION Sufficient DISCIPLINE Sufficient |

## Facts of the Case

Between September 20, 2011, and October 31, 2011, a sergeant allegedly falsified numerous inmate complaints by signing the reviews indicating he had interviewed the inmates, when he did not. It was further alleged a lieutenant falsified several inmate complaints during the same time period by documenting that the sergeant interviewed the inmates who were never interviewed.

## Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition

The hiring authority determined there was insufficient evidence to sustain the allegations against the lieutenant and the sergeant. The OIG concurred with the decision as the investigation revealed there was a miscommunication and the error was corrected as soon as it was discovered.

## Disciplinary Assessment

The department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-09-27 | 11-2739-IR | 1. Dishonesty | 1. Sustained | Dismissal | INVESTIGATION Sufficient DISCIPLINE Sufficient |

## Facts of the Case

On September 27, 2011, it was alleged an officer forged the chief deputy warden's signature on four documents to request the use of leave credits in lieu of sick leave.

## Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition

The hiring authority sustained the allegations and served the officer with a notice of dismissal. However, pursuant to a settlement agreement, the officer resigned and agreed to never seek employment with the department in the future and the department withdrew the disciplinary action. The OIG found the agreement to be reasonable.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

# NORTH REGION

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-10-25 | 11-2893-IR | 1. **Neglect of Duty** <br> 2. **Misuse of State Equipment or Property** | 1. **Sustained** <br> 2. **Not Sustained** | **Salary Reduction** | INVESTIGATION **Sufficient** <br> DISCIPLINE **Sufficient** |

## Facts of the Case

On October 25, 2011, two officers were randomly selected for drug testing. They were instructed to immediately report to the testing center approximately 15 minutes away from the institution. The officers allegedly stopped at various businesses prior to reporting to the testing center over an hour later. One of the officers allegedly tested positive for alcohol use. It was alleged they misused state property as they were driving a state vehicle at the time. It was further alleged they failed to follow lawful orders to immediately report to the testing center.

## Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition

The hiring authority sustained allegations of neglect of duty and failure to perform within the scope of training against both officers. The allegations of misuse of state property were not sustained. The first officer received a 10 percent salary reduction for six months. The second officer received a 5 percent salary reduction for six months. The department and the officers entered into settlement agreements before appeals were filed whereby the first officer received a 5 percent salary reduction for six months and the second officer received a 5 percent salary reduction for three months. The OIG concurred with the settlements.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-10-29 | 12-0779-IR | 1. **Dishonesty** <br> 2. **Unreasonable Use of Force** | 1. **Not Sustained** <br> 2. **Not Sustained** | **No Penalty Imposed** | INVESTIGATION **Sufficient** <br> DISCIPLINE **Sufficient** |

## Facts of the Case

It was alleged on October 29, 2011, an officer used unreasonable force on an inmate and then failed to accurately report the use of force.

## Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition

The hiring authority determined there was insufficient evidence to sustain the allegations.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-11-02 | 11-3120-IR | 1. **Other Failure of Good Behavior** <br> 2. **Discourteous Treatment** | 1. **Sustained** <br> 2. **Sustained** | **Salary Reduction** | INVESTIGATION **Sufficient** <br> DISCIPLINE **Sufficient** |

## Facts of the Case

On November 2, 2011, an off-duty officer allegedly initiated a fight with an elderly man at the gym. When the elderly man attempted to turn down the gym radio, the officer allegedly grabbed his hand and pushed him into a glass door, causing injuries to the man and damage to the door.

# NORTH REGION

## Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition

The hiring authority determined there was sufficient evidence to sustain the allegations and imposed a 5 percent salary reduction for three months. The officer did not file an appeal with the State Personnel Board.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-11-12 | 11-3181-IR | 1. Other Failure of Good Behavior | 1. Sustained | Dismissal | INVESTIGATION **Insufficient** DISCIPLINE **Sufficient** |

### Facts of the Case

It was alleged that on November 12, 2011, an officer punched a taxi driver who had dropped off the officer's girlfriend, attempted to evade arrest from outside law enforcement, and consumed alcohol in violation of a court order. The district attorney's office filed criminal charges against the officer, who subsequently pled guilty to a charge of assault.

### Investigative Assessment

The case was not processed by OIA Central Intake in a timely manner, there was no initial case conference, the department attorney did not properly document his initial review of the case nor did he properly document his review of the investigative report.

# NORTH REGION

## Assessment Questions

- Did OIA Central Intake make a determination regarding the case within 30 calendar days?

  *OIA Central Intake received the request for investigation on November 25, 2011, but did not take action until December 28, 2011, more than 30 days after the request.*

- Did the special agent adequately confer with the OIG upon case initiation and prior to finalizing the investigative plan?

  *The special agent did not confer with the OIG upon case initiation and prior to finalizing the investigative plan; however, the agent did keep the OIG apprised of case developments.*

- Did the special agent adequately confer with the department attorney upon case initiation and prior to finalizing the investigative plan?

  *Neither the department attorney nor the special agent documented in CMS that they conferred upon case initiation and prior to finalizing the investigative plan.*

- Within 21 calendar days, did the department attorney make an entry into CMS accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

  *The department attorney was assigned the case on January 3, 2012, and did not make any entry into CMS confirming relevant dates.*

- No later than 21 calendar days following assignment of the case, did the department attorney contact the assigned special agent and the monitor to discuss the elements of a thorough investigation of the alleged misconduct?

  *The department attorney was assigned the case January 3, 2012; however, he did not contact the assigned special agent or the OIG to discuss the elements of a thorough investigation of the alleged misconduct.*

- Within 21 calendar days following receipt of the investigative report, did the department attorney review the report and provide appropriate substantive feedback addressing the thoroughness and clarity of the report?

  *The department attorney was provided a copy of the investigative report on March 13, 2012. He did not provide appropriate substantive feedback addressing the thoroughness and clarity of the report. However, the special agent documented in CMS that the department attorney reviewed and approved the report. The department attorney did not document this activity.*

- Did the department provide written confirmation summarizing all critical discussions about the investigative report to the special agent with a copy to the OIG?

  *The department did not provide written confirmation summarizing all critical discussions about the investigative report to the special agent with a copy to the OIG.*

## Disposition

The hiring authority sustained the allegations and determined that dismissal was the appropriate penalty. However, the officer resigned prior to completion of the investigation; therefore, disciplinary action was not taken. A letter indicating he resigned under adverse circumstances was placed in his official personnel file.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-12-16 | 12-0458-IR | 1. **Dishonesty**<br>2. **Neglect of Duty** | 1. **Not Sustained**<br>2. **Not Sustained** | **No Penalty Imposed** | INVESTIGATION **Sufficient**<br>DISCIPLINE **Sufficient** |

## Facts of the Case

On December 16, 2011, an officer allegedly falsified two reports regarding two inmates being in possession of contraband. It is also alleged that the officer neglected his duties by failing to report to a supervisor that he was stuck with a needle.

## Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

# NORTH REGION

## Disposition
The hiring authority determined there was insufficient evidence to sustain the allegations. However, the hiring authority issued a letter of instruction to the officer reinforcing the importance of submitting complete and accurate reports.

## Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-12-21 | 12-0681-IR | 1. Contraband<br>2. Over-Familiarity<br>3. Neglect of Duty<br>4. Discourteous Treatment | 1. Sustained<br>2. Sustained<br>3. Sustained<br>4. Sustained | Dismissal | INVESTIGATION<br>**Sufficient**<br>DISCIPLINE<br>**Sufficient** |

## Facts of the Case
On December 21, 2011, it was alleged a materials and stores supervisor provided a mobile phone to an inmate for financial gain.

## Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition
The hiring authority determined there was sufficient evidence to sustain the allegations and determined dismissal was the appropriate penalty. However, the materials and stores supervisor resigned before disciplinary action could be imposed. A letter indicating the materials and stores supervisor resigned under adverse circumstances was placed in his official personnel file.

## Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2012-02-06 | 12-0872-IR | 1. Other Failure of Good Behavior | 1. Not Sustained | No Penalty Imposed | INVESTIGATION<br>**Sufficient**<br>DISCIPLINE<br>**Sufficient** |

## Facts of the Case
On February 6, 2012, an off-duty parole agent allegedly engaged in a verbal dispute and choked and battered his girlfriend after they both had been drinking at a superbowl party. Additionally, the girlfriend alleged the parole agent brandished a gun at her on two prior occasions.

## Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition
The hiring authority determined there was insufficient evidence to sustain the allegations.

## Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

# NORTH REGION

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2012-03-16 | 12-0828-IR | 1. **Other Failure of Good Behavior** | 1. **Not Sustained** | **No Penalty Imposed** | INVESTIGATION **Sufficient** DISCIPLINE **Sufficient** |

## Facts of the Case

On March 16, 2012, an officer was arrested for allegedly making criminal threats against his wife and her brother. The officer was allegedly seen letting the air out of his wife's tire and possessed a can of pepper spray, a black knife, a black flashlight, and a wrench. Outside law enforcement searched the officer's bedroom and found a black knife, silver wrench, and black flashlight. The officer was arrested, but the district attorney declined to prosecute.

## Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition

The hiring authority determined there was insufficient evidence to sustain the allegation.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

# SOUTH REGION

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2009-01-01 | 11-2669-IR | 1. **Over-Familiarity**<br>2. **Neglect of Duty** | 1. **Not Sustained**<br>2. **Not Sustained** | **No Penalty Imposed** | INVESTIGATION<br>**Sufficient**<br>DISCIPLINE<br>**Sufficient** |

## Facts of the Case
Between 2009 and 2011, an officer was allegedly overly familiar with an inmate when he touched her thigh, asked her to show him her breasts, and failed to report that the same inmate was involved in an overly familiar relationship with another staff member.

## Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition
The hiring authority determined there was insufficient evidence to sustain the allegations against the officer. However, the officer will receive additional training concerning appropriate staff-inmate relations.

## Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2009-04-20 | 10-3144-IR | 1. **Sexual Misconduct**<br>2. **Use of Controlled Substance** | 1. **Not Sustained**<br>2. **Not Sustained** | **No Penalty Imposed** | INVESTIGATION<br>**Sufficient**<br>DISCIPLINE<br>**Sufficient** |

## Facts of the Case
On April 20, 2009, a parole agent allegedly smoked marijuana during a home visit with a parolee and also allegedly made repeated sexual advances toward two parolees.

## Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition
The hiring authority determined there was insufficient evidence to sustain the allegations.

## Disciplinary Assessment
The department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2009-05-01 | 12-1039-IR | 1. **Sexual Misconduct**<br>2. **Over-Familiarity**<br>3. **Neglect of Duty** | 1. **Sustained**<br>2. **Sustained**<br>3. **Sustained** | **Dismissal** | INVESTIGATION<br>**Insufficient**<br>DISCIPLINE<br>**Sufficient** |

## Facts of the Case
It was alleged between May 2009 and May 2012, an officer was overly familiar with an inmate when she allowed the inmate to kiss and hug her. It was further alleged the officer gave the inmate her personal phone number, communicated with him while off-duty, and also gave him greeting cards and letters.

# SOUTH REGION

## Investigative Assessment

The hiring authority did not request an investigation in a timely manner and the Office of Internal Affairs did not complete the investigation until 21 days from the deadline for taking disciplinary action. The case originated as a criminal investigation and the criminal special agent did not request an administrative case be opened in a timely manner. Although the administrative special agent was assigned to the case with less than 35 days before the time to take disciplinary action, he completed a thorough investigation. The department attorney did not properly analyze the relevant date for taking disciplinary action.

## Assessment Questions

- Was the matter referred to OIA as soon as reasonably practical, within 45 calendar days of the date of discovery?

   *The department first discovered the misconduct on September 20, 2011; however, the request for an investigation was not submitted to the Office of Internal Affairs until November 28, 2011, more than 45 days after the date of discovery.*

- Did the special agent adequately confer with the department attorney upon case initiation and prior to finalizing the investigative plan?

   *There is no indication the special agent and department attorney actually met and conferred at the inception of the case. However, it is noted that the special agent was in email contact with the department attorney and provided the attorney with status updates throughout the investigation. It is also noted that, due to time constraints, the investigation was expedited and there was not the usual time for scheduling consultations with stakeholders.*

- Within 21 calendar days, did the department attorney make an entry into CMS accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

   *The department attorney met with the criminal agent and improperly assessed the deadline for taking disciplinary action. The department attorney did not determine the appropriate deadline date until four months into the investigation.*

- No later than 21 calendar days following assignment of the case, did the department attorney contact the assigned special agent and the monitor to discuss the elements of a thorough investigation of the alleged misconduct?

   *The department attorney in the criminal case did not reassess the deadline for taking disciplinary action until May 7, 2012, four months into the investigation. As a result, the administrative case was not opened with sufficient time to complete the investigation prior to 35 days before the deadline for taking disciplinary action.*

- Upon completion of the investigation, was a draft copy of the investigative report timely forwarded to the OIG to allow for feedback before it was forwarded to the HA or prosecuting agency?

   *Due to time constraints, the draft final report was not timely forwarded to the OIG for review. It is noted that the special agent was assigned to this case with very little time to complete the investigation and he took all reasonable steps to conduct a timely investigation.*

- Upon completion of the investigation, was a draft copy of the investigative report timely forwarded to the department attorney to allow for feedback before it was forwarded to the HA or prosecuting agency?

   *Due to time constraints, the draft final report was not timely forwarded to the department attorney for review. It is noted that the special agent was assigned to this case with very little time to complete the investigation and he took all reasonable steps to conduct a timely investigation.*

- Within 21 calendar days following receipt of the investigative report, did the department attorney review the report and provide appropriate substantive feedback addressing the thoroughness and clarity of the report?

   *The department attorney did not provide feedback on the investigatory report.*

- Did the department provide written confirmation summarizing all critical discussions about the investigative report to the special agent with a copy to the OIG?

   *No written confirmation was provided.*

- Was the investigation, or subject interview, completed at least 35 days before the deadline to take disciplinary action?

   *The special agent was assigned to the case with less than 35 days before the deadline to take disciplinary action. He completed the case in 21 days.*

## Disposition

The hiring authority sustained the allegations and determined dismissal was the appropriate penalty; however, the officer resigned before the disciplinary action could be served. A letter indicating the officer resigned under adverse circumstances was placed in her official personnel file.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

# SOUTH REGION

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2009-05-07 | 11-1800-IR | 1. **Neglect of Duty**<br>2. **Dishonesty** | 1. **Sustained**<br>2. **Not Sustained** | **Salary Reduction** | INVESTIGATION **Insufficient**<br><br>DISCIPLINE **Sufficient** |

## Facts of the Case

On May 7, 2009, an audit of the parole cash assistance program for a parole complex revealed several deficiencies in the program, including missing bank drafts, bank drafts issued without approval, missing cash from parolee repayments, missing food vouchers, and missing bus tokens. It was alleged that a program technician failed to follow security policies related to the funds in her possession resulting in the theft of several hundred dollars. It was further alleged that she lied to the Office of Internal Affairs during the investigation.

## Investigative Assessment

The Office of Internal Affairs and department attorney failed to comply with the department's policies and procedures. The Office of Internal Affairs took more than two years to complete the investigation. The department attorney failed to make an entry into the case management system reflecting his analysis regarding the deadline to take disciplinary action and he failed to provide timely feedback to the special agent regarding the investigative report.

## Assessment Questions

- Within 21 calendar days, did the department attorney make an entry into CMS accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

  *The department attorney did not confirm the date of the incident, date of discovery or the deadline for taking disciplinary action at any time.*

- Within 21 calendar days following receipt of the investigative report, did the department attorney review the report and provide appropriate substantive feedback addressing the thoroughness and clarity of the report?

  *The draft investigative report was sent to the OIG and the department attorney on November 21, 2011. The department attorney did not provide feedback on the report until December 20, 2011, or 30 days later.*

- Was the OIA investigation, or subject only interview, conducted with due diligence?

  *The Office of Internal Affairs was also assigned a criminal investigation into this same conduct. The original criminal allegations were opened for investigation on September 2, 2009. The interviews conducted for the criminal case were used as part of the administrative case as well. In the criminal case, however, it was not until August 23, 2010, or nearly a year after the case was opened as a criminal investigation, that the first interview was conducted. Thereafter, the next interview did not take place until another eight months had passed. Still another three months passed before the potential suspects in the criminal case, including the program technician, were interviewed. It would be another two months before the criminal investigation was completed, without any referral to the district attorney's office for possible criminal prosecution. This administrative case was opened after the criminal case was closed. The administrative investigation was completed in another four months. However, due to the delays in the investigation of the criminal allegations, over two years passed before the hiring authority was provided a report to impose discipline.*

## Disposition

The hiring authority determined there was sufficient evidence to sustain the allegation the program technician failed to follow security policies related to the funds in her possession, but did not sustain the dishonesty allegation, and imposed a 10 percent salary reduction for 24 months. The program technician filed an appeal with the State Personnel Board. At the pre-hearing settlement conference, the department entered into a settlement agreement with the office technician. The office technician retired and the department agreed to remove the disciplinary action from her official personnel file and placed the settlement agreement in a sealed envelope marked for department use only. Despite these terms, the OIG generally found the settlement agreement to be reasonable.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

# SOUTH REGION

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2009-06-01** | **11-2158-IR** | 1. **Discourteous Treatment** 2. **Disclosure of Confidential Information** | 1. **Sustained** 2. **Not Sustained** | **Letter of Reprimand** | INVESTIGATION **Insufficient** DISCIPLINE **Sufficient** |

## Facts of the Case

It was alleged in June 2009 two officers assigned to the institutional gang unit gathered confidential information from inmate informants and provided that information to a former officer who had been convicted of various felony offenses in an effort to assist that former officer with the appeal of his criminal conviction. It was additionally alleged in May 2011, both officers were unprofessional to the special agents from the department's Office of Correctional Safety when they refused to assist the special agents upon their arrival at the institution to conduct official business.

## Investigative Assessment

Overall, the hiring authority and the Office of Internal Affairs sufficiently complied with the department's policies and procedures; however, the department attorney did not. The department attorney failed to attend the majority of interviews and, therefore, was not present for the duration of the investigation to provide legal advice and support to the investigator. Additionally, the department attorney failed to adequately analyze the date for taking disciplinary action and failed to complete a timely review of the draft investigative report.

## Assessment Questions

- Within 21 calendar days, did the department attorney make an entry into CMS accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

  *Although the department attorney made an entry into CMS concerning the deadline for taking disciplinary action within 21 days of his assignment to the case, the analysis was not thorough. There were multiple dates of alleged misconduct that the department attorney did not take into account.*

- Did the department attorney attend investigative interviews for key witnesses to assess witness demeanor and credibility?

  *A total of 12 interviews were completed as part of the investigation. The department attorney attended both of the subject interviews as well as one witness interview. However, the department attorney did not attend the interviews of other key witnesses, such as the two Office of Correctional Safety agents who had direct knowledge of the alleged misconduct.*

- Within 21 calendar days following receipt of the investigative report, did the department attorney review the report and provide appropriate substantive feedback addressing the thoroughness and clarity of the report?

  *The Office of Internal Affairs provided the department attorney with the draft final report on February 23, 2012; however, feedback was not provided to the special agent concerning the thoroughness and clarity of the report until March 23, 2012, more than 21 days after receipt.*

- Did the department attorney cooperate with and provide continual real-time consultation with the OIG throughout the investigative phase?

  *Because the department attorney was not present for the majority of the key witness interviews, he was not present throughout the majority of the investigative phase. Therefore, the department attorney did not cooperate and provide real-time consultation with the OIG throughout the investigative phase.*

## Disposition

The hiring authority sustained an allegation that one of the officers was discourteous to the special agents from the Office of Correctional Safety and assessed a letter of reprimand. The officer did not file an appeal with the State Personnel Board. The hiring authority did not sustain allegations against the other officer.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures. Although there was a short delay by the hiring authority in making investigatory findings and penalty determinations, the delay did not adversely impact the case.

# SOUTH REGION

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2009-06-05 | 11-2032-IR | 1. **Dishonesty**<br>2. **Sexual Misconduct**<br>3. **Disorderly Conduct** | 1. **Sustained**<br>2. **Sustained**<br>3. **Sustained** | **Dismissal** | INVESTIGATION<br>**Insufficient**<br>DISCIPLINE<br>**Sufficient** |

## Facts of the Case

On June 5, 2009, an officer found nude photos of her 13 year-old daughter on her husband's telephone. The husband, also an officer, was eventually convicted of using a camera for a lewd purpose.

## Investigative Assessment

The Office of Internal Affairs made an initial inappropriate determination that an investigation was unnecessary in this matter. Once an investigation commenced, the special agent did not adequately consult with the department attorney or the OIG during the investigation of this case. This caused an unnecessary delay in the investigation, including the necessity of conducting a second interview of the officer's wife. The department attorney failed to make a timely entry into the case management system reflecting information regarding the deadline for taking disciplinary action.

## Assessment Questions

- Did OIA Central Intake make an appropriate initial determination regarding the case?

  *OIA Central Intake initially returned the matter to the hiring authority for action without an investigation.*

- Within 21 calendar days, did the department attorney make an entry into CMS accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

  *The department attorney did not make the required entries in CMS.*

- Were all of the interviews thorough and appropriately conducted?

  *The special agent failed to ask all the necessary questions during interviews of witnesses. The department attorney and the OIG were not notified of the interviews. One of the witnesses had to be interviewed a second time because the first interview was not thorough.*

- Did the special agent cooperate with and provide continual real-time consultation with the OIG?

  *The special agent failed to provide notice to the OIG regarding some of his investigative activities.*

- Did the special agent cooperate and provide real-time consultation with the department attorney throughout the investigative phase?

  *The special agent failed to provide notice to the department attorney regarding some of his investigative activities.*

## Disposition

The hiring authority sustained the allegations and dismissed the officer. The officer filed an appeal with the State Personnel Board but failed to appear at the pre-hearing settlement conference. The State Personnel Board dismissed the officer's appeal.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

# SOUTH REGION

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2009-09-12** | **09-3882-IR** | 1. **Dishonesty**<br>2. **Neglect of Duty** | 1. **Sustained**<br>2. **Sustained** | **Salary Reduction** | INVESTIGATION<br>**Sufficient**<br>DISCIPLINE<br>**Insufficient** |

## Facts of the Case

On September 12, 2009, a licensed vocational nurse allegedly made a medication error resulting in an inmate receiving a large dose of liquid methadone in lieu of his prescribed medication, Benadryl. The inmate was removed from his cell on September 14, 2009, and died at an outside hospital on September 15, 2009, as a result of complications caused by acute methadone poisoning. Over the course of the three days the inmate remained in his cell, the inmate did not accept any food or medication, did not shower, and did not put out any trash. The coroner who examined the inmate opined that the inmate was most likely unconscious within two hours of ingesting the methadone. The inmate was required to receive a welfare check every 30 minutes by staff. The departmental forms used to document the welfare checks were later examined by special agents and found to be either incomplete or completed in a manner that did not indicate any unusual circumstances. It was alleged that 4 lieutenants, 4 sergeants, 10 officers, 3 licensed vocational nurses, and 3 licensed psychiatric technicians were negligent in their duties during the 48-hour period between the medication error and the time the inmate was taken out of his cell. It was further alleged that two of the officers and two of the licensed vocational nurses were dishonest during their investigatory interviews when they told special agents or documented in official forms that the inmate was responsive during the period of time the coroner determined the inmate was most likely in a comatose state.

## Investigative Assessment

The department's investigative process sufficiently complied with policies and procedures.

## Disposition

The hiring authority sustained the allegation that the licensed vocational nurse was negligent in her duties when she made the medication error. The licensed vocational nurse was a new employee on probationary status. Before the hiring authority ended her employment with the department, she resigned. The district attorney's office filed one count of involuntary manslaughter against the licensed vocational nurse. The hiring authority sustained the neglect of duty and dishonesty allegations against two officers and two additional licensed vocational nurses. All four staff members were dismissed and filed appeals with the State Personnel Board. The two nurses settled with the department and resigned in lieu of termination. One officer was reinstated and given a 5 percent salary reduction for six months after a State Personnel Board hearing and the other officer's dismissal was upheld by the State Personnel Board. The hiring authority sustained allegations of neglect of duty against one lieutenant, three sergeants, six officers, and one licensed psychiatric technician and imposed varying penalties of salary reductions. The lieutenant, two sergeants, and the psychiatric technician filed appeals with the State Personnel Board. The other employees settled with the department for reduced penalties after their *Skelly* hearings. The psychiatric technician entered into a settlement agreement with the department during the pre-hearing settlement conference, wherein her 5 percent salary reduction for 12 months was reduced to 5 percent for six months. A State Personnel Board hearing was held regarding the cases against a lieutenant and two sergeants. After the presentation by the department attorneys, the State Personnel Board dismissed the cases against the two sergeants and, after the conclusion of the hearing against the lieutenant, dismissed the disciplinary action involving the lieutenant. The hiring authority determined that there was insufficient evidence to sustain allegations against the remaining staff members.

## Disciplinary Assessment

The hiring authority substantially complied with the department's policies and procedures; however, the department attorneys overall did not. There were two department attorneys assigned to the case and two separate hearings were presented to the State Personnel Board. In the first hearing involving two officers accused of neglect and dishonesty, the department attorney substantially complied with the department's policies and procedures. In the second hearing involving two sergeants and a lieutenant accused of neglect of duty, the department attorneys did not properly consult with the OIG and failed to properly prepare for the hearing. They consulted witnesses at a late point during the hearing preparation stage and, at a late juncture, realized there were evidentiary issues with the cases, two of which were later dismissed by the State Personnel Board.

## Assessment Questions

- Did the department attorney or disciplinary officer cooperate with and provide continual real-time consultation with the OIG throughout the disciplinary phase, until all proceedings were completed, except for those related to a writ?

  *The department attorneys failed to properly consult with the OIG regarding their hearing preparation, including service of subpoenas, and hearing strategy.*

- Did the department's advocate adequately subpoena and prepare available witnesses for the hearing?

  *The department attorneys did not timely subpoena witnesses until shortly before the hearings were to commence.*

# SOUTH REGION

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2009-11-02 | 11-1538-IR | 1. **Dishonesty**<br>2. **Failure to Report**<br>3. **Insubordination**<br>4. **Threat/Intimidation**<br>5. **Failure to Report Arrest to Hiring Authority**<br>6. **Battery** | 1. **Sustained**<br>2. **Sustained**<br>3. **Sustained**<br>4. **Sustained**<br>5. **Sustained**<br>6. **Sustained** | **Dismissal** | INVESTIGATION<br>**Insufficient**<br>DISCIPLINE<br>**Sufficient** |

## Facts of the Case

On November 2, 2009, an officer allegedly assaulted and threatened his wife. He was arrested and allegedly failed to report the arrest to the hiring authority. The officer also allegedly lied to a captain and to the Office of Internal Affairs regarding his arrest and the related court proceedings.

## Investigative Assessment

The hiring authority generally complied with the department's policies and procedures; however, the Office of Internal Affairs did not. There were a number of prior cases for which the officer had been investigated for or otherwise disciplined. The officer made statements during his Office of Internal Affairs interview that contradicted what had been previously documented in other cases. The OIG recommended that the circumstances of the prior cases, including whether the officer's current statements coincide with those prior cases, be investigated. The Office of Internal Affairs refused to expand the scope of the investigation to include these additional allegations of dishonesty. Additionally, the Office of Internal Affairs submitted a report to the hiring authority without adequate consultation from the OIG and the department attorney. This prevented the department attorney from providing any feedback, including whether additional investigation should be completed, prior to the submission of the report to the hiring authority.

# SOUTH REGION

## Assessment Questions

- Was the matter referred to OIA as soon as reasonably practical, within 45 calendar days of the date of discovery?

  *The department learned of the criminal allegations against the officer on March 5, 2011, but the hiring authority did not refer the matter to the Office of Internal Affairs until May 11, 2011, more than 68 days after the date of discovery.*

- Within 21 calendar days, did the department attorney make an entry into CMS accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

  *The department attorney did not make an entry into CMS confirming the date of the incident, date of discovery, or the deadline for taking disciplinary action at any time.*

- Did the special agent adequately prepare for all aspects of the investigation?

  *The special agent failed to review prior cases involving the same behavior. For instance, the agent failed to review the prior domestic violence case to find out that the employee purposely failed to tell the arresting officer he is a peace officer, hoping the hiring authority would not know of the arrest. Had it not been for the employer's request for a welfare check on the officer, and finding out there was an outstanding warrant due to a prior domestic violence arrest out of state, the employer may never have known about the arrest. The agent also refused to investigate the circumstances of prior domestic violence allegations, including the terms and conditions of possible probation, thereby preventing the confirmation of what the officer claimed at his Office of Internal Affairs interview. Since the special agent refused to investigate these important material facts as well as many others, she did not adequately prepare for all aspects of the investigation.*

- Were all of the interviews thorough and appropriately conducted?

  *The special agent did not ask critical questions of the officer. The areas of questioning that were missed by the special agent were brought to the special agent's attention by the OIG attorney with recommendations that the officer be asked about those issues, but the agent either forgot to ask the critical questions or refused to do so.*

- Upon completion of the investigation, was a draft copy of the investigative report timely forwarded to the OIG to allow for feedback before it was forwarded to the HA or prosecuting agency?

  *A draft copy of the investigative report was forwarded to the OIG to allow for feedback. The report was also sent to the department attorney for review. However, on the same day the draft report was sent to the OIG and the department attorney, the report was finalized and sent to the hiring authority without input from either OIG or the department attorney.*

- Upon completion of the investigation, was a draft copy of the investigative report timely forwarded to the department attorney to allow for feedback before it was forwarded to the HA or prosecuting agency?

  *A draft copy of the investigative report was forwarded to the department attorney to allow for feedback. The report was also sent to the OIG for review. However, on the same day the draft report was sent to the department attorney and the OIG, the report was finalized and sent to the hiring authority without input from the department attorney or OIG.*

- Within 21 calendar days following receipt of the investigative report, did the department attorney review the report and provide appropriate substantive feedback addressing the thoroughness and clarity of the report?

  *The department attorney did not provide feedback regarding the thoroughness and clarity of the report.*

- Was the investigative draft report provided to the OIG for review thorough and appropriately drafted?

  *Because the investigation did not include the confirmation of certain facts the officer stated during his interview with the Office of Internal Affairs, and the special agent refused to look into those claims made by the officer, the report was not thorough.*

- Was the final investigative report thorough and appropriately drafted?

  *Because the investigation did not include the confirmation of certain facts the officer stated during his Office of Internal Affairs interview, and the special agent refused to look into those claims made by the officer, the report was not thorough. Additionally, the final report was submitted to the hiring authority without any additional input from the OIG and without the opportunity for the department attorney to provide feedback.*

- Was the OIA investigation, or subject only interview, conducted with due diligence?

  *The special agent was assigned on June 8, 2011. The first interview took place on October 12, 2011, or after the passage of 127 days. Thereafter, the next interview was conducted on January 3, 2012, or after the passage of an additional 84 days. All the interviews were completed on January 22, 2012, or after the passage of 229 days from the time the special agent was assigned. During this period, a total of four interviews were conducted, three of which were by telephone.*

# SOUTH REGION

- Did the special agent cooperate with and provide continual real-time consultation with the OIG?

  *The special agent failed to notify the OIG of key witness interviews done after the subject interview. The special agent did not sufficiently cooperate with the OIG during the subject interview. The OIG attorney recommended that certain key details of what the officer stated, and certain vague responses that he gave, be clarified. However, when the special agent continued questioning the officer, the special agent did not make any effort to clarify those issues.*

- Did the special agent cooperate and provide real-time consultation with the department attorney throughout the investigative phase?

  *The department attorney was provided a copy of the draft investigative report, but this draft was also sent to the hiring authority, preventing the department attorney from providing substantive feedback on the report.*

- Was the investigation thorough and appropriately conducted?

  *The special agent assigned to this case did not expand the scope of the investigation to include additional allegations of dishonesty by the officer. During the investigation, it became apparent that the officer might have been dishonest regarding prior criminal cases the officer was arrested or prosecuted for. The OIG recommended the special agent include those allegations of dishonesty in the investigation as well, but those allegations were not addressed. Additionally, the special agent was assigned to this case on June 8, 2011, but the first interview did not take place until October 12, 2011, or after the passage of 127 days. Another three months would pass before the next interview.*

## Disposition

The hiring authority determined there was sufficient evidence to sustain the allegations and dismissed the officer. The officer filed an appeal with the State Personnel Board. The officer failed to appear at the pre-hearing settlement conference; therefore, the State Personnel Board ruled the officer's appeal was deemed withdrawn.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-02-10 | 10-1040-IR | 1. **Failure to Report** <br> 2. **Unreasonable Use of Force** <br> 3. **Neglect of Duty** | 1. **Sustained** <br> 2. **Sustained** <br> 3. **Sustained** | Counseling | INVESTIGATION <br> **Insufficient** <br> DISCIPLINE <br> **Sufficient** |

## Facts of the Case

On February 10, 2010, a parole agent allegedly used unnecessary force when he used his hands to physically turn a parolee's head. Additionally, the parole agent allegedly failed to report the use of force.

## Investigative Assessment

The hiring authority substantially complied with the department's policies and procedures; however, the Office of Internal Affairs and the department attorney did not. The special agent did not commence the investigation until five months after she was assigned to the case and she did not complete the investigation until there were 29 days left to the deadline for taking disciplinary action. The department attorney failed to attend key witness interviews and did not provide timely feedback regarding the investigation.

# SOUTH REGION

## Assessment Questions

- Within 21 calendar days, did the department attorney make an entry into CMS accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

  *The department attorney did not make the necessary entries.*

- Did the department attorney attend investigative interviews for key witnesses to assess witness demeanor and credibility?

  *The department attorney did not attend all key witness interviews.*

- Did the special agent appropriately enter case activity in CMS?

  *The special agent did not appropriately enter case activity in CMS.*

- Within 21 calendar days following receipt of the investigative report, did the department attorney review the report and provide appropriate substantive feedback addressing the thoroughness and clarity of the report?

  *The department attorney did not provide feedback as required.*

- Did the department provide written confirmation summarizing all critical discussions about the investigative report to the special agent with a copy to the OIG?

  *The department attorney did not provide OIG with written confirmation.*

- Was the OIA investigation, or subject only interview, conducted with due diligence?

  *The special agent waited almost five months to begin her investigation and did not complete it until there were 29 days left to the deadline for taking disciplinary action.*

- Was the investigation, or subject interview, completed at least 35 days before the deadline to take disciplinary action?

  *The investigation was not completed until 29 days before the deadline to take disciplinary action.*

## Disposition

The hiring authority determined there was sufficient evidence to sustain the allegations and issued a letter of instruction to the parole agent.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-04-10 | 11-1885-IR | 1. **Dishonesty** <br> 2. **Neglect of Duty** <br> 3. **Other Failure of Good Behavior** <br> 4. **Discourteous Treatment** <br> 5. **Willful Disobedience** <br> 6. **Wilful Disobedience** | 1. **Sustained** <br> 2. **Sustained** <br> 3. **Sustained** <br> 4. **Sustained** <br> 5. **Sustained** <br> 6. **Sustained** | **Dismissal** | INVESTIGATION **Sufficient** <br><br> DISCIPLINE **Insufficient** |

## Facts of the Case

On April 10, 2010, three officers allegedly entered an inmate's cell to retrieve a food tray, and used unreasonable force by grabbing the inmate by the neck and throwing him against the wall. A fourth officer then entered the cell to retrieve the food tray. The three officers allegedly conspired with one another to not report the use of force. Further it was alleged the three officers lied when they were later questioned and denied the use of force.

## Investigative Assessment

The OIG did not monitor this case through the investigative phase.

# SOUTH REGION

## Disposition

The hiring authority sustained all of the allegations against each of the three officers and imposed a penalty of dismissal. The officers each filed an appeal with the State Personnel Board. Following a hearing, the State Personnel Board revoked the dismissals of all three officers. The administrative law judge made a credibility determination and ruled the evidence was insufficient to counter the officers' credible denials. The OIG did not concur because there was credible evidence presented, although not effectively, by the department attorney.

## Disciplinary Assessment

The hiring authority substantially complied with the department's policies and procedures; however, the department attorney did not. The department attorney failed to provide the OIG with a draft of the pre-hearing settlement conference statement prior to it being filed with the State Personnel Board. The department attorney should be credited with effort and willingness to consult with the OIG; however, the department attorney was unfamiliar with the facts of the case, did not represent the department's position adequately, and did not call all possible witnesses or present documentation that would have corroborated key witness testimony. It should also be noted that the department attorney conducting the hearing was not the department attorney who had prepared the pre-hearing settlement conference statement.

## Assessment Questions

- Did the department's advocate appropriately object to evidence presented by appellant(s) at the hearing?

  *The department attorney failed to object to an excessive number of character witnesses that were presented at the hearing.*

- Did the department's advocate present the necessary available evidence regarding the allegations at the hearing?

  *The department attorney did not call all possible witnesses that were either percipient or corroborative of percipient witnesses. Documentation that would corroborate key witness testimony was also not presented. In addition, the department attorney did not elicit all the relevant evidence that could be elicited from the department's witnesses. The department attorney failed to prepare a diagram of the scene and instead asked for a tour of the scene at the hearing. The administrative law judge denied the request and commented that the department should have prepared diagrams or photos if the department felt the evidence important.*

- Did the department's advocate adequately and appropriately address legal issues prior to and during the SPB hearing?

  *There were several legal issues that the department attorney did not appropriately address. A motion to amend the settlement conference statement was poorly argued by the department attorney who failed to make any reference to legal authority or prejudice to the department. The department attorney was also unfamiliar with the department's policies and procedures related to department employees who are subpoenaed as witnesses and the evidence code in general and specifically as it relates to the introduction of prior consistent and inconsistent statements, proper impeachment of witnesses, the introduction of documents, the allowable scope of and limitation on testimony by character witnesses called by appellants and effective cross-examination of character witnesses, and failure to make proper objections. The department attorney was unfamiliar with the law regarding admissibility of a prior letter of instruction and failed, with some time to conduct research, to raise the issue once again when appropriate.*

- Did the department's advocate adequately subpoena and prepare available witnesses for the hearing?

  *Additional witnesses could have been subpoenaed and called in the hearing. The department attorney was very receptive to OIG recommendations to correct the deficiency. It should be noted that the department attorney conducting the hearing was not the department attorney who had prepared the pre-hearing settlement conference statement.*

- Did the department's advocate who appeared at the pre-hearing/settlement conference have full settlement authority, or the ability to obtain authority immediately by telephone?

  *It is not clear whether authority was obtained.*

- Did the department's advocate who appeared at the pre-hearing/settlement conference have full familiarity with the facts and issues in the case?

  *The department attorney was unfamiliar with the facts of the case and was not aware that another department staff member was a witness against the subject officers. The department attorney did not represent the department's position adequately.*

- Was the OIG provided with a draft of the pre-hearing/settlement conference statement prior to it being filed?

  *The department attorney failed to provide the OIG with a draft of the pre-hearing settlement conference statement prior to it being filed with the State Personnel Board.*

# SOUTH REGION

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-05-01 | 11-3052-IR | 1. **Dishonesty**<br>2. **Neglect of Duty**<br>3. **Weapons - Misuse or Non-use of Available Weapons** | 1. **Sustained**<br>2. **Sustained**<br>3. **Sustained** | **Dismissal** | INVESTIGATION<br>**Insufficient**<br>DISCIPLINE<br>**Insufficient** |

## Facts of the Case

Between May 1, 2010, and May 23, 2011, it was alleged a parole agent failed to adequately supervise parolees on his caseload. The parole agent also allegedly falsified records of supervision, time cards, and mileage logs. The parole agent allegedly recorded home visits with parolees when he was assigned to office duty and on his days off. The parole agent also allegedly documented collecting urine samples for narcotics tests as required and failed to actually meet with the parole from whom he allegedly collected the sample. When confronted with the discrepancies and notified that his caseload would be audited, the parole agent became visibly upset to the extent that his supervisors decided to contact local law enforcement and medical personnel to have the parole agent psychologically evaluated. A subsequent inventory search of his state-issued vehicle revealed a personal firearm unsecured within the vehicle along with his state-issued firearm.

## Investigative Assessment

The Office of Internal Affairs conducted a very thorough investigation in a very short amount of time. The hiring authority failed to timely submit this case for investigation when it waited 241 days after discovering the date of misconduct before submitting it to the Office of Internal Affairs, thereby giving the Office of Internal Affairs very little time to complete an investigation. The department attorney failed to complete an analysis of the deadline for taking disciplinary action despite the suggestion that the deadline for taking disciplinary action was much sooner than expected.

# SOUTH REGION

## Assessment Questions

- Was the matter referred to OIA as soon as reasonably practical, within 45 calendar days of the date of discovery?

  *The parole agent's supervisor first suspected that there was an issue with the agent's supervision of his parolees on March 7, 2011, when she received confirmation through a law enforcement database that a parolee on the agent's caseload was deceased. The parole agent did not note that the parolee was deceased and for months afterward stated that the parolee was still in the custody of local law enforcement. However, the supervisor did not act on this information until May 25, 2011, when the supervisor drafted a memorandum detailing suspicion about the parole agent's lack of supervision to the hiring authority. A subsequent audit was conducted of the agent's caseload and the request for investigation was submitted to OIA Central Intake on November 2, 2011, or after the passage of 241 days.*

- Did OIA Central Intake make a determination regarding the case within 30 calendar days?

  *The hiring authority submitted a request for investigation to OIA Central Intake on November 2, 2011. OIA Central Intake opened an administrative investigation into the parole agent's misconduct on December 14, 2011, or after the passage of 43 days.*

- Within 21 calendar days, did the department attorney make an entry into CMS accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

  *The assigned department attorney did not confirm the date of the incident, date of discovery, or the deadline for taking disciplinary action. The department attorney did enter a deadline for taking disciplinary action 22 days after her assignment. However, this was after a meeting with the Office of Internal Affairs and the OIG, and this analysis did not include any additional information.*

- Did the department attorney appropriately determine that the deadline for taking disciplinary action as originally calculated should be modified and consult with the OIG and special agent?

  *The department attorney did not determine the deadline for taking disciplinary action. The original deadline for disciplinary action was assessed to be months later than was actually the case. That erroneous deadline was based on the original documentation received by OIA Central Intake. The OIGl informed the department attorney of the need to conduct an analysis of the deadline for taking disciplinary action as it appeared by the documentation to be much earlier than expected. The department attorney did not do so and instead entered the deadline for taking disciplinary action as discussed when the case agent's investigative plan was discussed.*

- Did the special agent adequately prepare for all aspects of the investigation?

  *The Office of Internal Affairs conducted a very thorough investigation in an extremely short amount of time. The Office of Internal Affairs assigned a number of agents to assist the case agent with the interviews and review of documents and early into the investigation realized that the deadline for taking disciplinary action was looming sooner than believed. The assistance of additional agents helped complete the investigation in a thorough and expeditious manner.*

- Within 21 calendar days following receipt of the investigative report, did the department attorney review the report and provide appropriate substantive feedback addressing the thoroughness and clarity of the report?

  *The department attorney did not review the report and provide appropriate substantive feedback addressing the thoroughness and clarity of the report. The Office of Internal Affairs did not timely provide a copy of the investigative report to the department attorney.*

- Was the investigation, or subject interview, completed at least 35 days before the deadline to take disciplinary action?

  *The investigation was completed within approximately four days of the deadline for taking disciplinary action. However, it should be noted that the assigned investigator had a very short amount of time to investigate the matter because of the delay from the parole agent's supervisor in completing an initial inquiry and audit of the parole agent's caseload.*

## Disposition

The hiring authority sustained the allegations and served the parole agent with a notice of dismissal. At the *Skelly* hearing, the department entered into settlement agreement with the parole agent. The department agreed to extend the effective date of the adverse personnel action by one week and allow the parole agent to retire. The OIG was not adequately consulted with the terms of the settlement; however, the OIG ultimately concurred with the settlement.

## Disciplinary Assessment

The hiring authority substantially complied with the department's policies and procedures; however, the department attorney did not. The parole agent proposed a settlement at his *Skelly* hearing. Although the hiring authority was against any settlement of the case, the department attorney entered into settlement with the parole agent on behalf of the department. The OIG was not properly consulted regarding settlement, only later learning that an agreement had been reached and the hiring authority had approved it. Additionally, the department attorney did not produce the required CDCR Form 3021 to the OIG despite numerous requests.

# SOUTH REGION

## Assessment Questions

- If the case settled, did the department attorney or disciplinary officer properly complete the CDC Form 3021?

  *Despite requests by the OIG, the department attorney did not produce the CDCR Form 3021.*

- Did the department attorney or disciplinary officer appropriately determine that the deadline for taking disciplinary action as originally calculated should be modified and consult with the OIG about the decision to modify?

  *The department attorney did not determine the deadline for taking disciplinary action. The original deadline for disciplinary action was assessed to be months later than was actually the case. That erroneous deadline was based on the original documentation received by OIA Central Intake. The OIG informed the department attorney of the need to conduct an analysis of the deadline for taking disciplinary action as it appeared by the documentation to be much earlier than expected. The department attorney did not do so and instead entered the deadline for taking disciplinary action as discussed when the case agent's investigative plan was discussed.*

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-09-01 | 11-0260-IR | 1. **Dishonesty** <br> 2. **Contraband** <br> 3. **Misuse of State Equipment or Property** | 1. **Sustained** <br> 2. **Sustained** <br> 3. **Sustained** | **Demotion** | INVESTIGATION <br> **Insufficient** <br> DISCIPLINE <br> **Insufficient** |

## Facts of the Case

It was alleged between 2006 and 2010, a sergeant accessed confidential employee disciplinary information and copied the information to a personal thumb drive without authorization. The sergeant allegedly failed to secure the information when he took the thumb drive off grounds. It was also alleged the sergeant was dishonest when he claimed the confidential employee disciplinary information was necessary in carrying out his duties and responsibilities.

## Investigative Assessment

The Office of Internal Affairs and assigned department attorney failed to comply with its policies and procedures governing the investigative process. The investigation was not conducted with due diligence. The Office of Internal Affairs assigned a special agent to the case on December 15, 2010, but significant investigative efforts did not begin until April 27, 2011. The department attorney failed to timely document the date of discovery or the deadline to take disciplinary action in the case management system.

## Assessment Questions

- Within 21 calendar days, did the department attorney make an entry into CMS accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

  *The department attorney failed to timely document the date of discovery or the deadline to take disciplinary action in the case management system.*

- Was the OIA investigation, or subject only interview, conducted with due diligence?

  *The Office of Internal Affairs assigned a special agent to the case on December 15, 2010, but significant investigative efforts did not begin until April 27, 2011.*

## Disposition

The hiring authority sustained the allegations against the sergeant and demoted him to the position of officer. The sergeant filed an appeal with the State Personnel Board. The department settled the matter at hearing after its case was compromised due to unfavorable rulings by the judge and after the employee disciplinary officer testified in favor of the sergeant and against the department's interests. Pursuant to the terms of the settlement, the sergeant was demoted for 18 months. The OIG found the settlement to be reasonable.

## Disciplinary Assessment

Although the hiring authority timely discharged its duties in making findings on the allegations and penalty, the OIG did not agree with the penalty. The employee disciplinary officer compromised the department's case when she testified in favor of the sergeant and against the department's interests at the State Personnel Board hearing. The department attorney failed to timely document appropriate deadlines in the department case management system.

# SOUTH REGION

## Assessment Questions

- If the penalty was modified by department action or a settlement agreement, did OIG concur with the modification?

  *Given the detriment caused by the employee disciplinary officer's performance at the State Personnel Board hearing, the OIG did not oppose the settlement.*

- Did the HA, who participated in the disciplinary conference, select the appropriate penalty based on the sustained allegations?

  *The OIG did not agree with the hiring authority's decision to demote the sergeant. The OIG believed the evidence of dishonesty was significant and warranted dismissal.*

- Was the CDCR Form 402 documenting the findings properly completed?

  *The 402 Form did not include the sustained allegation for dishonesty.*

- Within 21 calendar days, did the department attorney make an entry into CMS accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

  *The department attorney failed to timely document the date of discovery or the deadline to take disciplinary action in the case management system.*

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-09-18 | 10-3859-IR | 1. **Dishonesty**<br>2. **Neglect of Duty** | 1. **Sustained**<br>2. **Sustained** | **Dismissal** | INVESTIGATION<br>**Insufficient**<br>DISCIPLINE<br>**Insufficient** |

## Facts of the Case

On September 18, 2010, it was alleged an officer and a supervising correctional cook were negligent when playing a game of chess while on duty. The supervising cook admitted in a written memorandum that he was playing chess with the officer during the time that a large number of inmate lunches went missing on September 18, 2010. It was further alleged that the officer lied in his written memorandum and his Office of Internal Affairs interview when he denied playing chess with the cook.

## Investigative Assessment

The Office of Internal Affairs failed to substantially comply with policies and procedures. The Office of Internal Affairs approved this case for an investigation limited to an interview of the officer. After the interview, the OIG recommended a broader investigation be conducted to include an interview of the cook and the exploration of other factors discovered at the officer's interview. The department attorney concurred with the OIG's recommendation; however, no further investigation was conducted.

## Assessment Questions

- Did OIA Central Intake make a determination regarding the case within 30 calendar days?

  *OIA Central Intake received the request for investigation on November 9, 2010, but did not approve the case for a subject only interview investigation until December 22, 2010, more than 44 days after the request.*

- Did OIA Central Intake make an appropriate initial determination regarding the case?

  *The hiring authority requested OIA Central Intake to approve the case for disciplinary action without an investigation. OIA Central Intake approved the case for disciplinary action, but with an interview of the officer only. Given the allegations, the Office of Internal Affairs should have opened the case as a full administrative investigation.*

- Was the investigation thorough and appropriately conducted?

  *After the officer's interview, which was the only interview authorized by the Office of Internal Affairs, the OIG attorney and department attorney both recommended that the investigation be expanded to a full administrative investigation. Both attorneys expressed concern that key witnesses were not being interviewed. The case was closed without any further interviews being conducted.*

# SOUTH REGION

## Disposition

The hiring authority sustained the allegations against the supervising cook and issued a one-day suspension. The hiring authority sustained the allegation of dishonesty against the officer but elected not to dismiss him. The OIG did not agree with this disposition and sought a higher level of review, ultimately resulting in the dismissal of the officer. The officer filed an appeal with the State Personnel Board. Prior to the officer's State Personnel Board hearing, the department attorney took the position that conflicting evidence was not considered and recommended that the hiring authority settle the case with the officer for a 5 percent salary reduction for 12 months and remove any reference of dishonesty from the disciplinary action. The OIG did not agree with this disposition and expressed the view that the department should not maintain the employment of a dishonest officer. Despite the objection of the OIG, the hiring authority settled with the officer.

## Disciplinary Assessment

The department failed to comply with its policies and procedures. The hiring authority did not appropriately determine the penalty level to be assessed against the officer causing the OIG to invoke a higher level of review. The department attorney did not provide an appropriate recommendation regarding the proper penalty to the hiring authority.

# SOUTH REGION

## Assessment Questions

- Was the disciplinary phase conducted with due diligence by the department?

  *The department attorneys assigned to the case at various points failed to adequately and competently represent the department's interests. The first department attorney failed to recommend the penalty of dismissal for the allegation of dishonesty during the Office of Internal Affairs interview. Instead, the department attorney recommended sustaining the dishonesty allegation but allowing the officer to remain employed as a peace officer. The second department attorney who represented the department for the State Personnel Board hearing failed to competently analyze the case and improperly allowed witnesses to the case to discuss their possible statements in each others' presence. In failing to competently review the case, the department attorney improperly recommended to the hiring authority not only to reduce the penalty, but also to dismiss the dishonesty allegation, thus allowing the officer to return to work for the department. The failure of the department to maintain the dishonesty allegation and dismiss the officer constitutes a lack of due diligence by the department.*

- Did the department attorney or disciplinary officer cooperate with and provide continual real-time consultation with the OIG throughout the disciplinary phase, until all proceedings were completed, except for those related to a writ?

  *The department attorney responsible for presenting the department's case to the State Personnel Board streadfastly refused to believe that there was an explanation that would explain what she proffered to the hiring authority as evidence contradicting the department's position. The OIG repeatedly stated that the inconsistent evidence that was the basis of the department attorney's changed recommendation was not contradictory at all, merely a different perspective. The department attorney refused to discuss this issue with the hiring authority, insisting that the contradictory evidence necessitated a revisit of the penalty and findings.*

- Did the department's advocate adequately and appropriately address legal issues prior to and during the SPB hearing?

  *The first department attorney assigned to the case did recommend that the allegation that the officer was dishonest to the Office of Internal Affairs be sustained, but given the totality of the circumstances, that department attorney recommended the penalty be mitigated. The hiring authority initially agreed, but upon a higher level of review, that decision was changed to dismissal of the officer for this allegation. While the State Personnel Board hearing was pending, the case was reassigned to a second department attorney. That attorney expressed the opinion that the dishonesty could not be proven given the facts of the case, in direct contravention to the opinion expressed by the first department attorney. The second department attorney then sought to readdress the issue of penalty before the State Personnel Board hearing and ultimately convinced the hiring authority to not only reduce the penalty, but to also strike the dishonesty allegations in the adverse action. These were not appropriate recommendations given that there was no significant change in the stance or evidence in the case.*

- If the penalty was modified by department action or a settlement agreement, did OIG concur with the modification?

  *The case was assigned to a different department attorney for the State Personnel Board hearing than the one that had addressed the findings and penalty. The department attorney assigned for the State Personnel Board hearing discussed settlement with the hiring authority, ultimately recommending that the dishonesty allegation be dismissed and the officer allowed to return to work. The department attorney stated that because of perceived witness inconsistencies, the department could not prevail on the allegations at hearing. The OIG disagreed with the department attorney's analysis and repeatedly stated that the cook's admission to playing chess with the officer when the lunches disappeared is a statement so clearly against the cook's interests that his admission supports the allegation against the officer and that the officer was dishonest with the Office of Internal Affairs as a result. Despite OIG objection, the hiring authority agreed to dismiss the dishonesty allegation. The OIG repeatedly stated on the eve of the State Personnel Board, during settlement discussions, that the information provided by the department attorney was not new, did not directly contradict the statement by the reporting employee, and on that basis, the OIG continuously expressed its disagreement with the settlement.*

- If there was a settlement agreement, was the settlement consistent with the DOM factors?

  *The case was transferred from one department attorney to another for the State Personnel Board hearing. The second department attorney repeatedly recommended settlement of the matter against the officer, but relied mainly on information that was already known at the time the penalty was previously determined. The department attorney did speak with a witness that appeared on the officer's witness list who in some way contradicted the statement made by the employee making the allegation that he and the officer were playing chess at the time the food was taken. However, this witness' statement did not directly contradict the other employee's statement and was known at the time the decision to discipline was made.*

- Did the department enter into a settlement agreement with the employee(s)?

  *A settlement was reached and entered into the first day the scheduled State Personnel Board hearing was to take place.*

- Did the HA, who participated in the disciplinary conference, select the appropriate penalty based on the sustained allegations?

  *The hiring authority sustained a dishonesty allegation against the officer, but elected not to dismiss the officer. The OIG did not agree that this was an appropriate penalty, sought a higher level of review of the matter, and the department ultimately dismissed the officer.*

# SOUTH REGION

- Did the VA provide appropriate legal consultation to the HA regarding the sufficiency of the investigation and investigative findings?

  *The department attorney assigned to the case at the findings and penalty conference recommended the hiring authority sustain a dishonesty allegation, but recommended a penalty other than dismissal. The department attorney stated the fact that the officer denied playing chess when the lunches were taken was "tangential" to the issue of whether the officer was being attentive to his duties and, on that basis, recommended a penalty of suspension. However, the fact that the officer was playing chess was the essence of the allegation of inattention by the officer. Additionally, the department attorney assigned to the case for hearing provided inadequate analysis to the hiring authority regarding settlement. The department attorney stated that the department would not prevail at hearing because of the perceived inconsistency of two witnesses as to whether the officer was playing chess. The department attorney did not explain to the hiring authority that the cook's admission to playing chess with the officer was very credible because of the cook's admission to his own wrongdoing. The department attorney instead advised the hiring authority that because the officer would produce a witness at hearing that would testify he did not see the cook and the officer playing chess, the department could not prove its case.*

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-11-01 | 11-0443-IR | 1. **Neglect of Duty** | 1. **Not Sustained** | **No Penalty Imposed** | INVESTIGATION **Sufficient** DISCIPLINE **Sufficient** |

## Facts of the Case
Between November 2010 and December 2010, a case records technician allegedly received payment for the sale of information retrieved from inmates' confidential files.

## Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition
The hiring authority determined there was insufficient evidence to sustain the allegations.

## Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-12-01 | 11-0720-IR | 1. **Falsification of Time Record** 2. **Falsification of Time Record** 3. **Contraband - Mobile Phones** | 1. Sustained 2. Sustained 3. Sustained | **Dismissal** | INVESTIGATION **Insufficient** DISCIPLINE **Insufficient** |

## Facts of the Case
Between December 1 and December 19, 2010, a licensed psychiatric technician allegedly introduced a mobile phone into the institution. It was also alleged that between February 5, 2011, and February 7, 2011, the psychiatric technician falsified official departmental logs.

## Investigative Assessment
Overall, the Office of Internal Affairs substantially complied with the department's policies and procedures; however, the department attorney did not. The department attorney did not attend any of the investigatory interviews, nor did she review the draft report and provide feedback to the special agent. Additionally, the department attorney did not input the required case information into the case management system.

# SOUTH REGION

## Assessment Questions

- Was the matter referred to OIA as soon as reasonably practical, within 45 calendar days of the date of discovery?

  *The date of discovery of the misconduct was December 19, 2010; however, the hiring authority did not refer the matter to the Office of Internal Affairs until February 8, 2011, more than 45 days after the date of discovery.*

- Within 21 calendar days, did the department attorney make an entry into CMS accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

  *The department attorney did not make an entry in CMS regarding the deadline for taking disciplinary action.*

- No later than 21 calendar days following assignment of the case, did the department attorney contact the assigned special agent and the monitor to discuss the elements of a thorough investigation of the alleged misconduct?

  *The special agent initiated contact with the OIG and department attorney to set up an initial case conference.*

- Did the OIA adequately consult with the OIG, department attorney, and the appropriate prosecuting agency to determine if an administrative investigation should be conducted concurrently with the criminal investigation?

  *A criminal investigation was opened during the pendency of the administrative investigation. It does not appear from the case management system notes that the Office of Internal Affairs consulted with either the OIG or the department attorney prior to opening a criminal investigation.*

- Did the department attorney attend investigative interviews for key witnesses to assess witness demeanor and credibility?

  *The department attorney did not attend any interviews.*

- Within 21 calendar days following receipt of the investigative report, did the department attorney review the report and provide appropriate substantive feedback addressing the thoroughness and clarity of the report?

  *The department attorney received the investigative report on April 23, 2012. There is no indication in CMS that she reviewed the report or provided feedback to the special agent.*

- Did the department provide written confirmation summarizing all critical discussions about the investigative report to the special agent with a copy to the OIG?

  *There is no indication in CMS that the department attorney provided written confirmation of critical discussions she may have had with the special agent.*

## Disposition

The hiring authority determined there was sufficient evidence to sustain the allegations and determined dismissal was the appropriate penalty. However, the licensed psychiatric technician resigned before disciplinary action could be imposed. A letter indicating the licensed psychiatric technician resigned under adverse circumstances was placed in her official personnel file.

## Disciplinary Assessment

The hiring authority failed to conduct disciplinary findings in a timely manner.

## Assessment Questions

- Was the disciplinary phase conducted with due diligence by the department?

  *The hiring authority received the investigative report and exhibits on April 23, 2012, but did not make findings in the case until June 12, 2012.*

- Did the HA timely consult with the OIG and the department attorney (if applicable) regarding disciplinary determinations prior to making a final decision?

  *The hiring authority received the investigative report and exhibits on April 23, 2012, but did not make findings in the case until June 12, 2012.*

- Did the HA timely consult with the OIG and department attorney (if applicable), regarding the sufficiency of the investigation and the investigative findings?

  *The hiring authority received the investigative report and exhibits on April 23, 2012, but did not make findings in the case until June 12, 2012.*

- Within 21 calendar days, did the department attorney make an entry into CMS accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

  *Neither of the two department attorneys who were assigned to the case entered information concerning the deadline for taking disciplinary action.*

# SOUTH REGION

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-12-01 | 11-1847-IR | 1. **Sexual Misconduct**<br>2. **Sexual Battery** | 1. **Sustained**<br>2. **Sustained** | **Dismissal** | INVESTIGATION<br>**Insufficient**<br><br>DISCIPLINE<br>**Sufficient** |

## Facts of the Case

Between December 2010 and July 7, 2011, a parole agent allegedly forced a parolee to take pictures and video of her naked body on the parole agent's iPad and allegedly also committed a sexual battery on her.

## Investigative Assessment

The Office of Internal Affairs unreasonably delayed its investigation despite several recommendations by the OIG to move forward with its investigation. The department attorney failed to make an entry into the case management system regarding the deadline for taking disciplinary action.

## Assessment Questions

- Within 21 calendar days, did the department attorney make an entry into CMS accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

  *The department attorney did not make a timely entry into the case management system regarding the deadline for taking disciplinary action.*

- Did the department attorney appropriately determine that the deadline for taking disciplinary action as originally calculated should be modified and consult with the OIG and special agent?

  *The department attorney did not appropriately determine that the deadline for taking disciplinary action should be modified and did not consult with the special agent and the OIG regarding this issue.*

- Did the OIA adequately consult with the OIG, department attorney, and the appropriate prosecuting agency to determine if an administrative investigation should be conducted concurrently with the criminal investigation?

  *The Office of Internal Affairs unreasonably decided not to concurrently investigate the case while another agency conducted a criminal investigation.*

- Was the OIA investigation, or subject only interview, conducted with due diligence?

  *The Office of Internal Affairs unreasonably waited for months while another agency conducted a criminal investigation.*

## Disposition

The hiring authority sustained the allegations and dismissed the parole agent. The parole agent did not file an appeal with the State Personnel Board.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-12-13 | 11-0722-IR | 1. **Discourteous Treatment**<br>2. **Battery on Private Citizen** | 1. **Sustained**<br>2. **Not Sustained** | **Letter of Reprimand** | INVESTIGATION<br>**Insufficient**<br><br>DISCIPLINE<br>**Sufficient** |

## Facts of the Case

On December 13, 2010, a sergeant was asked to leave a party but allegedly returned and physically attacked a private citizen. Outside law enforcement officers arrested the sergeant. The district attorney declined to file criminal charges.

## Investigative Assessment

The hiring authority failed to refer the case to the Office of Internal Affairs in a timely manner. Further, the Office of Internal Affairs received the case on March 16, 2011, but did not conduct interviews until September 22, 2011, or after the passage of 191 days.

# SOUTH REGION

## Assessment Questions

- Was the matter referred to OIA as soon as reasonably practical, within 45 calendar days of the date of discovery?

  *The department learned of the possible misconduct on December 13, 2010, but the hiring authority did not refer the matter to the Office of Internal Affairs until January 28, 2011, more than 45 days after the date of discovery.*

- Was the OIA investigation, or subject only interview, conducted with due diligence?

  *The Office of Internal Affairs took an inordinate amount of time to begin interviews on this case. The case was assigned to a special agent on March 16, 2011. The first interview in relation to this case happened on September 22, 2011, or after the passage of 191 days.*

## Disposition

The hiring authority sustained the allegation that the sergeant displayed discourteous treatment to members of the public, but did not sustain the allegation that the sergeant committed a battery on a private citizen as it appears the sergeant may have acted in self-defense. The hiring authority imposed a letter of reprimand on the sergeant. The sergeant did not file an appeal with the State Personnel Board.

## Disciplinary Assessment

The department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-12-28 | 11-0735-IR | 1. **Battery on Private Citizen** <br> 2. **Other Failure of Good Behavior** | 1. **Sustained** <br> 2. **Not Sustained** | **Salary Reduction** | INVESTIGATION **Sufficient** <br> DISCIPLINE **Insufficient** |

## Facts of the Case

On December 28, 2010, an officer allegedly grabbed his wife's wrists and shoved her into a wall. Although criminal charges were filed, the officer complied with the counseling requirements imposed by the court and the matter was dismissed.

## Investigative Assessment

The Office of Internal Affairs did not initially make a proper determination in this case, denied the request for an investigation, and approved the hiring authority to take disciplinary action without an investigation. The OIG recommended an investigation. The department attorney agreed with the recommendation and requested reconsideration. Several months later, the Office of Internal Affairs authorized an investigation. The department attorney only attended one of three interviews during the investigation.

## Disposition

The hiring authority determined there was sufficient evidence to sustain the allegation of battery on a private citizen and imposed a 10 percent salary reduction for 18 months. The officer did not file an appeal with the State Personnel Board. The hiring authority determined there was insufficient evidence to sustain the other allegation.

## Disciplinary Assessment

The hiring authority performed as required, but the department attorney did not. When providing legal advice, he failed to consider the seriousness of the officer's misconduct and the strength of the evidence. He downplayed the fact that the district attorney's office filed domestic violence charges against the officer and that the officer entered into an agreement which required him to take anger management and substance abuse classes. The department attorney also failed to initially draft an appropriate disciplinary action.

# SOUTH REGION

## Assessment Questions

- Was the draft disciplinary action provided to the OIG for review appropriately drafted as described in the DOM?

  *The draft disciplinary action required several revisions in order to clearly state the seriousness of the officer's misconduct.*

- Did the department attorney provide to the HA and OIG written confirmation of penalty discussions?

  *No written confirmation was provided.*

- Did the department attorney provide appropriate legal consultation to the HA regarding disciplinary determinations?

  *The department attorney downplayed the misconduct of the officer and failed to grasp the serious of the sustained domestic violence allegations.*

- Did the VA provide appropriate legal consultation to the HA regarding the sufficiency of the investigation and investigative findings?

  *The department attorney failed to consider the totality of the evidence when he provided legal advice to the hiring authority. The department attorney did not adequately consider the investigation conducted by outside law enforcement and ignored the fact that domestic violence charges were filed against the officer by the district attorney's office and that the officer entered into a plea agreement which required him to take anger management classes.*

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2011-01-02** | **11-1912-IR** | 1. **Neglect of Duty** <br> 2. **Dishonesty** | 1. **Sustained** <br> 2. **Not Sustained** | **Salary Reduction** | INVESTIGATION **Insufficent** <br> DISCIPLINE **Insufficent** |

## Facts of the Case

It was alleged on January 2, 2011, two officers allegedly falsified inmate observation forms indicating they observed an inmate in his cell who was no longer housed in that area of the institution.

## Investigative Assessment

The hiring authority did not submit a request for investigation until more than three months after the alleged misconduct. The Office of Internal Affairs denied the request for an investigation or subject interviews. Only after a higher level of review was taken did the Office of Internal Affairs agree to conduct interviews of the officers. The Office of Internal Affairs did not complete the investigation until two days before the deadline to take disciplinary action. A department attorney was not assigned to the case.

## Assessment Questions

- Was the matter referred to OIA as soon as reasonably practical, within 45 calendar days of the date of discovery?

  *The department learned of the misconduct on January 5, 2011, but the hiring authority did not refer the matter to the Office of Internal Affairs until April 20, 2011, more than 100 days after the date of discovery.*

- Did OIA Central Intake make an appropriate initial determination regarding the case?

  *The Office of Internal Affairs initially decided that an investigation was not needed even though there were potential dishonesty allegations.*

- If the case was submitted to OIA Central Intake or to the Chief of OIA for reconsideration, was an appropriate decision made regarding the request?

  *The Office of Internal Affairs did not agree to conduct interviews of the officers until a higher level of review was taken regarding the matter.*

- Would the appropriate initial determination or reconsideration determination have been made by OIA Central Intake and/or OIA Chief without OIG intervention?

  *The appropriate reconsideration determination was not made by OIA Central Intake.*

- Was the investigation, or subject interview, completed at least 35 days before the deadline to take disciplinary action?

  *The investigation was completed two days before the deadline to take disciplinary action.*

# SOUTH REGION

## Disposition

The hiring authority determined there was insufficient evidence to sustain the dishonesty allegation against the officers, but did sustain the allegation that they neglected their duties when they incorrectly attested on their logs that a particular inmate was in his cell when he was actually in another part of the institution. The hiring authority imposed a 10 percent salary reduction for 13 months. The officers filed appeals with the State Personnel Board. At a pre-hearing settlement conference, the department settled for a 10 percent salary reduction for nine months. However, the department also agreed to remove the disciplinary actions from the officers' official personnel files within one year rather than the standard three years. The OIG concurred with the change in the penalty, but did not find the agreement to remove the disciplinary actions early to be reasonable.

## Disciplinary Assessment

The Office of Internal Affairs initially denied the request for an investigation or interviews of the officers, thus precluding an exploration of the potential dishonesty allegations against the officers. Even though there was no investigation, the initial hiring authority intended to find that the officers were not dishonest in their documentation when they signed forms indicating that an inmate was in his cell when he was, in actuality, in another part of the institution. The OIG requested higher level of review, during which the OIG requested that the officers be interviewed regarding the dishonesty and neglect of duty allegations. During the higher level of review, the Office of Internal Affairs finally agreed to conduct interviews of the officers. The interviews revealed that the officers saw another inmate in the cell, but failed to identify that he was not the inmate in question and therefore negligently documented the forms indicating that the inmate was in his cell at the time they conducted their checks. After the information was gleaned from the investigation, the hiring authority reasonably found that the officers were not intentionally dishonest, but that they neglected their duties when they failed to determine that the inmate in the cell was the inmate whom they were documenting in the forms as being in the cell.

## Assessment Questions

- Was the disciplinary phase conducted with due diligence by the department?

  *The delay in the investigation also caused a delay in the department's performance during the disciplinary phase. A letter of intent had to be served on the officers.*

- Did the department attorney or disciplinary officer cooperate with and provide continual real-time consultation with the OIG throughout the disciplinary phase, until all proceedings were completed, except for those related to a writ?

  *The disciplinary officer failed to fully consult with the OIG regarding the terms of the settlement agreements entered into with the officers.*

- If the penalty was modified by department action or a settlement agreement, did OIG concur with the modification?

  *The disciplinary officer conferred with the OIG regarding the proposal to reduce the number of months regarding the salary reduction. However, without OIG consultation, she also agreed that the officers' disciplinary actions would be removed from their official personnel files after one year, rather than the standard three years. The OIG did not concur with this aspect of the settlement agreement.*

- Did the HA consult with the OIG and department attorney (if applicable) before modifying the penalty or agreeing to a settlement?

  *The disciplinary officer conferred with the OIG regarding the proposal to reduce the number of months the salary reduction would be imposed. However, without OIG consultation, she also agreed that the officers' disciplinary actions would be removed from their official personnel files after one year, rather than the standard three years. The OIG did not concur with this aspect of the settlement agreement.*

- If the case settled, did the department attorney or disciplinary officer properly complete the CDC Form 3021?

  *No form was provided to the OIG.*

- Did the HA, who participated in the disciplinary conference, select the appropriate penalty based on the sustained allegations?

  *The hiring authority did not properly consider the potential dishonesty allegation against the officers.*

- Did the HA, who participated in the disciplinary conference, select the appropriate Employee Disciplinary Matrix charges and causes for discipline for each sustained allegation?

  *Without proper evidence to support his initial findings, the hiring authority determined that the officers were not dishonest in their documentation.*

- Did the HA, who participated in the findings conference, appropriately determine the investigative findings for each allegation?

  *The initial hiring authority failed to appropriately identify and determine the finding regarding the potential dishonesty allegation.*

- Did the HA, who participated in the findings conference, identify the appropriate subjects and factual allegations for each subject based on the evidence?

  *The hiring authority initially failed to identify the potential dishonesty allegation against the officers.*

# SOUTH REGION

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-02-01 | 11-1990-IR | 1. Failure to Report<br>2. Over-Familiarity<br>3. Discourteous Treatment | 1. Not Sustained<br>2. Not Sustained<br>3. Not Sustained | Counseling | INVESTIGATION<br>Insufficient<br><br>DISCIPLINE<br>Sufficient |

## Facts of the Case

It was alleged that between February and March 2011, a lieutenant engaged in inappropriate discussions with an inmate by speaking with her about her relationship and also making derogatory comments towards her. It was also alleged the inmate reported to the lieutenant on two different occasions that she was involved in a sexual relationship with a staff member and the lieutenant failed to report the alleged misconduct. Finally, it was alleged that in July 2011, the lieutenant showed his genitals to another inmate.

## Investigative Assessment

Overall, the hiring authority and department attorney sufficiently complied with the department's policies and procedures; however, the Office of Internal Affairs did not. Although the investigation was thorough and complete, it was not conducted in a timely manner. The hiring authority received the investigation only seven days before the deadline to take disciplinary action.

## Assessment Questions

- Was the matter referred to OIA as soon as reasonably practical, within 45 calendar days of the date of discovery?

  *The department learned of the misconduct on April 19, 2011, but the hiring authority did not refer the matter to the Office of Internal Affairs until July 1, 2011, more than 45 days after the date of discovery.*

- Was the OIA investigation, or subject only interview, conducted with due diligence?

  *The special agent was assigned to the case in August 2011, the investigation was not completed until April 2012. The special agent did not complete any substantive work on the case from October through December 2011.*

- Was the investigation, or subject interview, completed at least 35 days before the deadline to take disciplinary action?

  *The investigation was provided to the hiring authority on April 11, 2012. The deadline for taking disciplinary action was April 18, 2012.*

## Disposition

The hiring authority determined there was insufficient evidence to sustain the allegations. However, the lieutenant was provided with a letter of instruction concerning proper interaction with inmates.

## Disciplinary Assessment

The department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-02-20 | 11-1182-IR | 1. Dishonesty<br>2. Neglect of Duty | 1. Sustained<br>2. Sustained | Dismissal | INVESTIGATION<br>Insufficient<br><br>DISCIPLINE<br>Insufficient |

## Facts of the Case

On February 20, 2011, an officer allegedly claimed he conducted a cell search based on confidential information and discovered suspected marijuana in the possession of an inmate. The officer's supervisor instructed the officer to secure the marijuana in an evidence locker and prepare a memorandum regarding the circumstances of the officer's discovery of the marijuana. The officer submitted a memorandum allegedly indicating he secured the marijuana as directed. Upon review of the memorandum, the supervisor discovered the officer did not specify which evidence locker he secured the marijuana in, and upon inquiry, the officer eventually admitted to not securing the evidence and instead took the suspected marijuana home. When asked to produce the marijuana, the officer produced a plastic bag with a small amount of what appeared to be dirt inside the bag. The officer was asked to draft a second memorandum detailing the circumstances of the discovery of the marijuana, and what the officer did with the evidence once he discovered it. The officer's second memorandum allegedly contradicted the original information he provided to his supervisor.

# SOUTH REGION

## Investigative Assessment

The hiring authority substantially complied with the department's policies and procedures. Although the Office of Internal Affairs did not begin the investigation in a timely manner, the investigation was ultimately thorough. The department attorney failed to adequately document the deadline for taking disciplinary action, failed to timely consult with the Office of Internal Affairs, and failed to timely review the draft investigative report.

## Assessment Questions

- Did OIA Central Intake make a determination regarding the case within 30 calendar days?

  *OIA Central Intake received the request for investigation on March 11, 2011, but did not take action until April 27, 2011, more than 48 days after the request.*

- Within 21 calendar days, did the department attorney make an entry into CMS accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

  *The department attorney entered a generic entry in the case management system that the deadline for taking disciplinary action was analyzed, but the entry did not confirm any actual date.*

- No later than 21 calendar days following assignment of the case, did the department attorney contact the assigned special agent and the monitor to discuss the elements of a thorough investigation of the alleged misconduct?

  *The department attorney was assigned before the case agent. The case was assigned on May 10, 2011 but the department attorney did not confer with the case agent and the OIG until July 8, 2011, or after the passage of 60 days.*

- Within 21 calendar days following receipt of the investigative report, did the department attorney review the report and provide appropriate substantive feedback addressing the thoroughness and clarity of the report?

  *The department attorney was provided a draft investigative report on December 16, 2011 for review. The department attorney did not complete his review of the report until January 10, 2012, or after the passage of 26 days.*

- Was the OIA investigation, or subject only interview, conducted with due diligence?

  *The case agent was assigned on May 10, 2011. The first interview of any witness in this case did not occur until November 17, 2011, or after the passage of 192 days.*

## Disposition

The hiring authority determined there was sufficient evidence to sustain the allegations and dismissed the officer. The officer filed an appeal with the State Personnel Board. Pursuant to a settlement agreement, the officer resigned and agreed never to seek employment with the department in the future. Although the OIG was not in agreement with this settlement, the settlement was not unreasonable.

## Disciplinary Assessment

Overall, the hiring authority substantially complied with the department's policies and procedures; however, the department attorney did not. The department attorney failed to provide the hiring authority with appropriate legal consultation regarding the findings and penalty that should be imposed. The department attorney failed to properly document the penalty imposed by the hiring authority in the disciplinary action, failed to provide sufficient facts to comply with the department's policies and procedures, and failed to provide a draft of the disciplinary action to the OIG for review. Further, the department attorney failed to provide a draft of the pre-hearing settlement conference statement to the OIG for review prior to the statement being filed with the State Personnel Board. When the statement was requested and the department attorney sent the filed copy, the OIG notified the department attorney that the statement did not list any witnesses or evidence for another personnel action for which there was an appeal filed jointly with this case's appeal. After requesting and receiving a filed copy of the pre-hearing settlement conference statement from the department attorney, the OIG notified the department attorney that the statement did not list any witnesses or evidence for another disciplinary action for which there was an appeal filed jointly with this case's appeal. The department attorney apparently filed an amended pre-hearing settlement conference statement, but again failed to provide the draft of the statement to the OIG. Prior to the pre-hearing settlement conference, the department attorney failed to discuss settlement with the hiring authority and stated to the OIG at the pre-hearing settlement conference that the reason he did not do so was because the hiring authority was difficult to reach. At the pre-hearing settlement conference, the officer offered to resign in lieu of dismissal. The department attorney contacted the acting hiring authority and discussed the terms of the settlement, but did not discuss any of the department's policies or procedures related to settlement of disciplinary actions. When the acting hiring authority approved the offer to allow the officer to resign, the OIG objected and sought to initiate a higher level of review of the decision to settle the cases with the officer in this manner. The department attorney became visibly upset and unwilling to communicate. Ultimately, the OIG did not seek a higher level of review.

# SOUTH REGION

## Assessment Questions

- Was the disciplinary phase conducted with due diligence by the department?

  *The deficiencies in the disciplinary action as well as the failure of the department attorney to discuss settlement parameters prior to the pre-hearing settlement conference with the hiring authority and the OIG evidences the lack of diligence exercised by the department with the disciplinary process of this officer.*

- Did the department attorney or disciplinary officer cooperate with and provide continual real-time consultation with the OIG throughout the disciplinary phase, until all proceedings were completed, except for those related to a writ?

  *The department attorney failed to cooperate with the OIG at critical stages of the disciplinary proceedings. The department attorney failed to provide a draft copy of the pre-hearing settlement conference statement prior to the statement being filed. When the OIG was finally provided a copy of the already-filed pre-hearing settlement conference statement, it was evident that the department attorney failed to consider the second disciplinary action pending against the officer when the statement was prepared as witnesses for that action were missing from the joint settlement conference statement. This was brought to the department attorney's attention who, it appears, filed an amended pre-hearing settlement conference with the State Personnel Board. The amended pre-hearing settlement conference statement was similarly not provided to the OIG, and has not been provided by the time of this disciplinary evaluation. At the pre-hearing settlement conference, and after the officer offered to resign in lieu of dismissal, the department attorney called the acting hiring authority and discussed the terms of the settlement. The department attorney failed to discuss any departmental policies and procedures in consideration of the settlement offer. The OIG expressed a disagreement with the decision to allow the officer to resign even though he had already been dismissed. The department attorney became visibly upset and unwilling to communicate further with the OIG.*

- If the penalty was modified by department action or a settlement agreement, did OIG concur with the modification?

  *At the pre-hearing settlement conference, the officer offered to resign in lieu of dismissal. The department attorney recommended to the acting hiring authority that this settlement should be agreed upon without any consideration or discussion of any required departmental policies or procedures in favor of settlement. The department attorney did not discuss any of the four prior disciplinary actions against the officer, the facts of the current cases, or the fact that in both of the current cases, the officer had sustained allegations of dishonesty against him. However, the acting hiring authority was willing to settle the cases without this discussion as the settlement would assure that the officer never returned to employment with the department. The OIG disagreed, but did not find the agreement to be unreasonable.*

- If the case settled, did the department attorney or disciplinary officer properly complete the CDC Form 3021?

  *The department attorney did not provide a completed Form 3021 despite requests for the same.*

- Was the OIG provided with a draft of the pre-hearing/settlement conference statement prior to it being filed?

  *The department attorney did not provide a draft of the pre-hearing settlement conference statement prior to it being filed. When the OIG requested the document, the department attorney provided a copy of the pre-hearing settlement conference statement that had already been filed with the State Personnel Board. Upon review, the OIG informed the department attorney that the pre-hearing settlement conference was missing critical witnesses, including all the witnesses in a second and joined disciplinary action pending at the State Personnel Board against the officer. The department attorney then filed an amended pre-hearing settlement conference statement, but again did not provide a draft of the statement prior to it being filed.*

- Was the draft disciplinary action provided to the OIG for review appropriately drafted as described in the DOM?

  *The draft disciplinary action was not appropriately drafted. The draft disciplinary action stated the incorrect penalty at one point, was poorly worded, and did not state sufficient facts regarding the allegations.*

- Did the department attorney or disciplinary officer provide the OIG with a copy of the draft disciplinary action and consult with the OIG?

  *The department attorney did not provide a draft disciplinary action to the OIG. Instead, the OIG received a draft from the institution's employee relations officer after receiving it from the department attorney.*

- Did the department attorney provide to the HA and OIG written confirmation of penalty discussions?

  *The department attorney did not provide written confirmation of penalty discussions.*

- Did the department attorney provide appropriate legal consultation to the HA regarding disciplinary determinations?

  *Based on the allegations, the appropriate penalty in this case was dismissal. However, the department attorney did not recommend the appropriate penalty of dismissal, but suggested a salary reduction in spite of the allegations of dishonesty against the officer.*

# SOUTH REGION

- Did the VA provide appropriate legal consultation to the HA regarding the sufficiency of the investigation and investigative findings?

  *The department attorney provided a memorandum regarding whether the evidence was sufficient to sustain allegations against the officer for this case. There was an additional disciplinary action pending against the officer, but the department attorney's memorandum did not address the sufficiency of the evidence in that case. With regard to the allegations the department attorney did evaluate, the department attorney did not provide adequate consultation to the hiring authority. The memorandum either ignored key evidence in support of the allegations, mischaracterized the nature of the evidence, or correctly stated the evidence but inexplicably recommended not sustaining the allegations. At the findings and penalty conference, the department attorney generally adhered to the contents of his memorandum.*

- Within 21 calendar days, did the department attorney make an entry into CMS accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

  *The department attorney entered a generic entry in the case management system that the deadline for taking disciplinary action was analyzed, but the entry did not confirm any actual dates.*

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-02-23 | 11-1009-IR | 1. **Other Failure of Good Behavior** <br> 2. **Discourteous Treatment** <br> 3. **Vandalism** <br> 4. **Violation of Restraining Order** | 1. **Sustained** <br> 2. **Sustained** <br> 3. **Sustained** <br> 4. **Not Sustained** | **Salary Reduction** | INVESTIGATION <br> **Insufficient** <br> DISCIPLINE <br> **Sufficient** |

## Facts of the Case

On February 23, 2011, an officer allegedly held his girlfriend down on the ground, pounded her head into the floor, and pushed her off-balance causing her head to hit a toilet. When the argument continued in the garage of the residence, the girlfriend allegedly threw a weight at the officer's vehicle, shattering his windshield. The officer allegedly attacked his girlfriend again, pushing her into a wall and causing her to fall to the ground. The officer then allegedly broke two windows of his girlfriend's vehicle with a baseball bat. It was further alleged that the officer was in violation of a restraining order.

## Investigative Assessment

The hiring authority sufficiently complied with the department's policies and procedures. However, the Office of Internal Affairs and the department attorney did not. The hiring authority requested, and the department attorney recommended, that an administrative investigation be opened; however, the Office of Internal Affairs waited almost four months to do so. The department attorney failed to timely provide feedback to the special agent regarding the investigative report and did not document any critical discussions with the special agent regarding the report.

## Assessment Questions

- Did OIA Central Intake make a determination regarding the case within 30 calendar days?

  *The Office of Internal Affairs took almost four months to authorize an administrative investigation.*

- Did OIA Central Intake make an appropriate initial determination regarding the case?

  *OIA Central Intake approved this case for disciplinary action by the hiring authority. However, the hiring authority had originally requested an administrative investigation to be opened. The assistant chief counsel in the region the case originated opined that there was not sufficient information to make a determination based solely on the police reports provided and recommended interviews of the victim and witnesses. Despite the request from the hiring authority and the recommendation of the department attorney, the case was nonetheless returned to the institution to take disciplinary action. The case was eventually opened for administrative investigation to allow the requested interviews to be conducted, but the reconsideration process took an additional three-and-a-half months from the time the case was originally approved only for disciplinary action.*

- Within 21 calendar days following receipt of the investigative report, did the department attorney review the report and provide appropriate substantive feedback addressing the thoroughness and clarity of the report?

  *The draft investigative report was sent to the department attorney on January 30, 2012. The department attorney did not provide feedback to the special agent until a verbal discussion on February 23, 2012, or after the passage of 35 days.*

- Did the department provide written confirmation summarizing all critical discussions about the investigative report to the special agent with a copy to the OIG?

  *No written confirmation of any discussions regarding the investigative report was provided by the department attorney.*

# SOUTH REGION

## Disposition

The hiring authority sustained all of the allegations against the officer, except the allegation that the officer violated a restraining order, and imposed a 10 percent salary reduction for six months. The department and the officer entered into a settlement agreement reducing the penalty to a 10 percent salary reduction for four months. The officer did not file an appeal with the State Personnel Board. The OIG found the agreement to be reasonable.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-03-07 | 11-1257-IR | 1. **Other Failure of Good Behavior** 2. **Domestic Violence** | 1. **Sustained** 2. **Not Sustained** | **Salary Reduction** | INVESTIGATION **Insufficient** DISCIPLINE **Insufficient** |

## Facts of the Case

On March 7, 2011, an officer allegedly had a verbal altercation with his wife, who threw a beer bottle at him but missed. The officer then pushed his wife to the ground. The officer was arrested for domestic violence of his spouse. The district attorney's office did not file criminal charges against the officer.

## Investigative Assessment

There was a significant delay in the completion of the investigation on the part of the Office of Internal Affairs. The special agent was assigned on May 12, 2011 and conducted the first interview on the case on June 30, 2011. The only other interview conducted was of the officer, which took place on January 18, 2012, or after the passage of 203 days from the first interview. The hiring authority and department attorney substantially complied with policies and procedures.

## Assessment Questions

- Within 21 calendar days, did the department attorney make an entry into CMS accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

  *The department attorney made no entries within the case management system confirming the date of the incident, date of discovery, or deadline for taking disciplinary action.*

- Was the OIA investigation, or subject only interview, conducted with due diligence?

  *The special agent was assigned on May 12, 2011, and conducted the first interview on the case on June 30, 2011. The only other interview conducted was of the officer, which took place on January 18, 2012, or after the passage of 203 days from the first interview.*

## Disposition

Although the hiring authority found insufficient evidence to sustain the allegation that the officer engaged in domestic violence, the hiring authority found sufficient evidence to sustain the allegations that the officer was arrested for domestic violence and violated the department's policy regulating employee conduct. The hiring authority imposed a 5 percent salary reduction for 12 months. The officer did not file an appeal with the State Personnel Board.

## Disciplinary Assessment

The hiring authority initially determined that the officer engaged in domestic violence and behaved in a manner that brought discredit to the department, and determined the appropriate penalty. The department attorney failed to acknowledge the officer's admissions that he engaged in domestic violence and recommended to the hiring authority that the allegation not be sustained. The attorney also recommend a lower penalty than was appropriate. Following the initial findings and penalty conference, the department attorney and a supervising attorney revisited the issue with the hiring authority and recommended that the domestic violence allegation should not be sustained and a lesser penalty should be imposed. Despite the evidence and OIG objection, the hiring authority determined that the allegation that the officer committed domestic violence would not be sustained, only that he was arrested for domestic violence and behaved in a manner that brought discredit to the department, and lowered the penalty. The OIG did not agree with the department attorney's position and the hiring authority's decision, but did not seek a higher level of review.

# SOUTH REGION

## Assessment Questions

- Did the department attorney or disciplinary officer cooperate with and provide continual real-time consultation with the OIG throughout the disciplinary phase, until all proceedings were completed, except for those related to a writ?

  *The department attorney and the department attorney's supervisor, despite the initial determination by the hiring authority which was in agreement with the OIG monitor's recommendation, continuously advocated against sustaining the domestic violence allegation despite the evidence in favor of the allegation. Instead of proceeding as requested by the hiring authority, the department attorneys spent an inordinate amount of time challenging the hiring authority's initial finding that the domestic violence allegation be sustained.*

- Was the draft disciplinary action provided to the OIG for review appropriately drafted as described in the DOM?

  *It should be noted that despite the great efforts the department attorney took to ensure the domestic violence allegation was not sustained, the facts of the domestic violence appeared prominently in the disciplinary action.*

- Did the department attorney provide to the HA and OIG written confirmation of penalty discussions?

  *No written confirmation of penalty discussions was provided to the OIG by the department attorney.*

- Did the HA, who participated in the disciplinary conference, select the appropriate penalty based on the sustained allegations?

  *As to the allegations which were sustained, the hiring authority did impose the appropriate penalty.*

- Did the department attorney provide appropriate legal consultation to the HA regarding disciplinary determinations?

  *The department attorney made recommendations to the hiring authority that were inconsistent with the facts of the case. When the hiring authority initially made a determination as to the penalty, the department attorney revisited the issue with the hiring authority and convinced the hiring authority to modify the penalty.*

- Did the HA, who participated in the findings conference, appropriately determine the investigative findings for each allegation?

  *Initially, the hiring authority made the appropriate findings and imposed the appropriate penalty. However, after continued requests for reconsideration by the department attorney, the hiring authority did not sustain the domestic violence allegation and reduced the penalty accordingly. The OIG did not concur with this decision.*

- Did the VA provide appropriate legal consultation to the HA regarding the sufficiency of the investigation and investigative findings?

  *The department attorney advised the hiring authority to sustain allegations that the officer was arrested for domestic violence and behaved in a manner that brought discredit to the department. The department attorney advised to not sustain allegations that the officer engaged in domestic violence by pushing his wife, even though the officer admitted to investigator's that he engaged in that behavior.*

- Within 21 calendar days, did the department attorney make an entry into CMS accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

  *The department attorney did not make an entry in the case management system confirming the date of the incident, date of discovery, or the deadline for taking disciplinary action.*

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-04-14 | 11-2886-IR | 1. **Contraband**<br>2. **Neglect of Duty**<br>3. **Other Failure of Good Behavior**<br>4. **Dishonesty** | 1. **Sustained**<br>2. **Sustained**<br>3. **Sustained**<br>4. **Not Sustained** | **Dismissal** | INVESTIGATION<br>**Sufficient**<br>DISCIPLINE<br>**Insufficient** |

## Facts of the Case

It was alleged on April 14, 2011, an officer was found to be in possession of an internet-capable mobile phone on institution grounds. During a review of the contents of the mobile phone, it was alleged numerous photos of nearly nude children in suggestive poses were discovered, and it was further alleged the officer was accessing pornographic websites, possibly of young children in pornographic situations. After a further review of the officer's mobile phone, it was further alleged the officer was accessing these websites and texting friends and family while on duty.

## Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

# SOUTH REGION

## Disposition

The hiring authority sustained all of the allegations against the officer, except the dishonesty allegation, and served the officer with a notice of dismissal. However, the officer resigned before the disciplinary action took effect. A letter indicating the officer resigned pending disciplinary action was placed in his official personnel file.

## Disciplinary Assessment

Overall, the hiring authority substantially complied with the department's policies and procedures; however, the department attorney did not. The department attorney failed to provide adequate legal advice regarding the penalty to be imposed by recommending the hiring authority not sustain an allegation that the photographs found on the officer's phone were "child pornography." The question of whether the photos were child pornography or not was not relevant to the question of whether possession of the photos on an unauthorized personal mobile phone on facility grounds constituted a violation of departmental policy. Ultimately, the department attorney did recognize this distinction. The department attorney also failed to prepare a disciplinary action in compliance with departmental policy requiring the disciplinary action to allege all facts in support of all allegations. Although the OIG pointed out to the department attorney that some of the facts alleged were insufficient, the department attorney disagreed and included them in the final disciplinary action served on the officer.

## Assessment Questions

- Was the disciplinary action served on the employee(s) appropriately drafted as described in the DOM?

  *The department attorney adequately consulted with the OIG regarding suggested changes to the disciplinary action. The department attorney also implemented some of the suggested edits made by the OIG. However, the department's policies and procedures requiring that all facts supporting the allegations be noted within the disciplinary action was not met. The OIG believes that, at least as to some of the allegations in the disciplinary action, there were insufficient facts alleged to support the allegation.*

- Was the draft disciplinary action provided to the OIG for review appropriately drafted as described in the DOM?

  *The draft disciplinary action failed to allege critical facts that would be necessary to show that the officer violated departmental policy.*

- Did the department attorney provide to the HA and OIG written confirmation of penalty discussions?

  *The department attorney did not provide any written confirmation of penalty discussions.*

- Did the department attorney provide appropriate legal consultation to the HA regarding disciplinary determinations?

  *The department attorney recommended a penalty of a salary reduction in this case. The evidence in this case showed that after the officer's mobile phone was confiscated originally, he acquired another phone, similarly downloaded what would have been considered inappropriate photos onto that phone, and brought the new phone to his workplace despite this investigation and disciplinary action pending. Given the seriousness of the allegations and the pending disciplinary action, the only reasonable penalty to recommend would be dismissal, not a salary reduction.*

- Was the CDCR Form 402 documenting the findings properly completed?

  *The original Form 402 was incorrect in that one allegation that was not sustained was marked as being sustained, and the allegations did not match the allegations within the case management system and what was discussed with the hiring authority. The issue was brought to the employee relations officer's attention and it was determined that the allegations in the case management system had a duplicate allegation listed, causing the Form 402 to be incorrect. The allegation that was improperly documented as being sustained was a mistake. The employee relations officer promptly completed another Form 402 that reflected the correct allegations and dispositions.*

- Did the VA provide appropriate legal consultation to the HA regarding the sufficiency of the investigation and investigative findings?

  *The department attorney prepared a memorandum giving his impressions of the matter. With regard to the allegation that the officer was in possession of "child pornography," the department attorney applied a definition that would have applied in a criminal case setting. For administrative matters such as this, the definition of what constitutes child pornography, especially in a criminal setting, is not as important as whether the possession of what are clearly inappropriate pictures for one to possess in the work environment constitutes failure of good behavior exhibited by the officer.*

- Within 21 calendar days, did the department attorney make an entry into CMS accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

  *The department attorney made no entries into the case management system confirming the date of the incident, date of discovery, or the deadline for taking disciplinary action.*

# SOUTH REGION

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-05-02 | 11-2311-IR | 1. **Other Failure of Good Behavior** <br> 2. **Dishonesty** <br> 3. **Neglect of Duty** | 1. **Sustained** <br> 2. **Not Sustained** <br> 3. **Not Sustained** | **Demotion** | INVESTIGATION **Sufficient** <br> DISCIPLINE **Sufficient** |

### Facts of the Case

On May 2, 2011, a sergeant wrote and submitted a crime incident report to the district attorney's office regarding an alleged incident involving an inmate battery on an officer. On July 20, 2011, a district attorney investigator contacted the sergeant to ask him questions regarding inconsistencies within his report. The sergeant acknowledged that he did not witness the incident and that his report contained inaccurate information. The sergeant further stated he did not bother to change the inaccurate information in his report as it was the lieutenant's responsibility to ensure the accuracy of reports. The district attorney's office did not file charges against the inmate because of the false report submitted by the sergeant.

### Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

### Disposition

The hiring authority sustained the allegation that the sergeant should have informed the institution that he was contacted by the district attorney investigator regarding his misleading report, but did not sustain any other allegations. The hiring authority demoted the sergeant for his conduct regarding this case, as well as for conduct pertaining to other unrelated disciplinary cases against the sergeant. The sergeant did not file an appeal with the State Personnel Board.

### Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-05-05 | 11-2072-IR | 1. **Failure to Report** <br> 2. **Unreasonable Use of Force** <br> 3. **Neglect of Duty** <br> 4. **Assault - Toward a Member of the Department** | 1. **Not Sustained** <br> 2. **Not Sustained** <br> 3. **Not Sustained** <br> 4. **Not Sustained** | **No Penalty Imposed** | INVESTIGATION **Insufficient** <br> DISCIPLINE **Sufficient** |

### Facts of the Case

On May 5, 2011, a sergeant and four officers allegedly performed an unnecessary inmate cell extraction. No threat was posed by the inmate prior to his removal from the cell, no alarm sounded prior to his removal per procedure, and the officers allegedly used force in pinning the inmate to the floor while he was restrained. The sergeant and four officers allegedly failed to submit reports regarding the use of force or regarding a confrontation with a licensed psychiatric technician prior to the cell extraction.

### Investigative Assessment

The hiring authority sufficiently complied with the department's policies and procedures. The department attorney failed to enter the deadline for taking disciplinary action and the date of discovery into the case management system. The Office of Internal Affairs did not complete the investigation until there were 31 days to the deadline for taking disciplinary action.

# SOUTH REGION

## Assessment Questions

- Did OIA Central Intake make a determination regarding the case within 30 calendar days?

  *OIA Central Intake received the request for investigation on May 20, 2011, but did not take action until August 10, 2011, more than 83 days after the request.*

- Within 21 calendar days, did the department attorney make an entry into CMS accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

  *The department attorney entered a generic statement in the case management system that the deadline for taking disciplinary action and the discovery date was assessed, but the department attorney did not identify the relevant dates.*

- Was the investigation, or subject interview, completed at least 35 days before the deadline to take disciplinary action?

  *The final report was submitted to the hiring authority on April 4, 2012, which is 31 days before the deadline to take disciplinary action.*

## Disposition

The hiring authority determined there was insufficient evidence to sustain the allegations against any of the officers and the sergeant.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-07-14 | 11-2086-IR | 1. Battery | 1. Not Sustained | No Penalty Imposed | INVESTIGATION **Insufficient** DISCIPLINE **Sufficient** |

## Facts of the Case

On July 14, 2011, it was alleged an officer became involved in a verbal argument with his wife, an employee at another institution. The fight allegedly escalated into a physical altercation, which was witnessed by a neighbor. The neighbor contacted outside law enforcement who investigated the matter. Initially, the wife allegedly told outside law enforcement that there was only yelling and no physical fighting. The outside law enforcement officers left the home, but were called back a short time later. When outside law enforcement returned, the wife alleged her husband pushed her a number of times during the evening. The officer was arrested for domestic battery.

## Investigative Assessment

Overall, the department failed to substantially comply with policies and procedures. The two department attorneys failed to properly document the date of the incident, date of discovery, or the deadline for taking disciplinary action. The Office of Internal Affairs failed to conduct the investigation in a timely manner. The significant delays in conducting interviews prevented the possibility of locating additional witnesses, including the witness who called outside law enforcement.

## Assessment Questions

- Within 21 calendar days, did the department attorney make an entry into CMS accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

  *This case was assigned to two separate department attorneys during the investigation. Neither department attorney made an entry into CMS confirming the date of the incident, date of discovery, or the deadline for taking disciplinary action.*

- Was the investigative draft report provided to the OIG for review thorough and appropriately drafted?

  *The significant delays in conducting interviews prevented the possibility of locating additional witnesses, including the person who called the local law enforcement officers.*

- Was the OIA investigation, or subject only interview, conducted with due diligence?

  *This case was assigned to two separate special agents for investigation. The first agent was assigned on August 25, 2011. The agent conducted significant background investigation on the case, but conducted no interviews for a period of approximately five months, after which the case was reassigned to a second agent. The second agent was assigned on January 27, 2012. The first interview was attempted on April 9, 2012, or after the passage of 74 days. This interview could not be conducted because the witness was purposely not noticed for the interview. The interview of this witness, the first interview of this case, took place on April 25, 2012, or 253 days after the Office of Internal Affairs approved this case for investigation.*

# SOUTH REGION

## Disposition

The hiring authority determined there was insufficient evidence to sustain the allegation of battery against his wife.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-09-12 | 11-2717-IR | 1. **Neglect of Duty** <br> 2. **Failure to Report** <br> 3. **Unreasonable Use of Force** | 1. **Sustained** <br> 2. **Not Sustained** <br> 3. **Not Sustained** | **Counseling** | INVESTIGATION <br> **Sufficient** <br> DISCIPLINE <br> **Insufficient** |

## Facts of the Case

On September 12, 2011, an officer allegedly grabbed an inmate and threw her to the ground after she refused to provide him with a pair of contraband earrings. It was also alleged the officer failed to report his use of force and also failed to provide the inmate with a receipt for the earrings once he confiscated them.

## Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition

The hiring authority determined there was insufficient evidence to sustain the allegations of use of force and failure to report. However, the hiring authority did sustain the allegation that the officer failed to follow policy by not providing the inmate with a receipt when he confiscated the earrings. Although the hiring authority determined the officer should receive corrective action, the staff tasked with that responsibility failed to take the action.

## Disciplinary Assessment

On May 11, 2012, the hiring authority made a decision to serve the officer with an employee counseling record. However, the hiring authority did not serve the employee counseling record on the officer until two months later on July 11, 2012. The hiring authority also did not provide a copy of the employee counseling record to the OIG for review before it was served on the officer and it was only after repeated requests for the documents that the hiring authority provided copies to the OIG. The hiring authority also failed to complete a required form regarding the penalty to be imposed on the officer.
.

## Assessment Questions

- Was the disciplinary phase conducted with due diligence by the department?

  *On May 11, 2012, the hiring authority decided to serve the officer with an employee counseling record. However, the hiring authority did not serve the employee counseling record until two months later on July 11, 2012.*

- Did the HA cooperate with and provide continual real-time consultation with the OIG throughout the disciplinary phase, until all proceedings were completed, except for those related to a writ?

  *The hiring authority did not provide a copy of the corrective action forms (the employee counseling record) to the OIG for review before it was served on the officer. Also, it was only after repeated requests that the hiring authority provided signed copies of the corrective action forms to the OIG.*

- Was the CDCR Form 403 documenting the penalty properly completed?

  *The disciplinary officer only completed a Form 402. Although the officer received corrective action, because there was a sustained allegation, the disciplinary officer should have completed a Form 403 indicating the action taken by the hiring authority.*

# SOUTH REGION

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-10-17 | 12-0279-IR | 1. **Dishonesty**<br>2. **Contraband**<br>3. **Over-Familiarity** | 1. **Sustained**<br>2. **Sustained**<br>3. **Sustained** | **Dismissal** | INVESTIGATION<br>**Sufficient**<br>DISCIPLINE<br>**Sufficient** |

## Facts of the Case

On October 17, 2011, an inmate alleged to a teacher that a teaching assistant was smuggling mobile phones and tobacco into the institution. On October 18, 2011, the teacher allegedly saw a transfer of contraband from the teaching assistant to an inmate. Subsequently, on January 9, 2012, the teaching assistant was found to have secreted ten vacuum-sealed bags of tobacco in his briefcase. Each bag of tobacco was opened and discovered to contain either a mobile phone or mobile phone charger mixed into and hidden within the tobacco. A subsequent search of his vehicle revealed 18 additional vacuum-sealed packages, each also containing a mobile phone or mobile phone charger.

## Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition

The hiring authority determined there was sufficient evidence to sustain the allegations and dismissed the teaching assistant. The teaching assistant did not file an appeal with the State Personnel Board.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-11-01 | 12-0903-IR | 1. **Contraband**<br>2. **Over-Familiarity** | 1. **Sustained**<br>2. **Sustained** | **Dismissal** | INVESTIGATION<br>**Sufficient**<br>DISCIPLINE<br>**Sufficient** |

## Facts of the Case

It was alleged in November 2011, an officer attempted to introduce contraband, consisting of tobacco and mobile phones with chargers, into an institution.

## Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition

The hiring authority sustained the allegations and served the officer with a notice of dismissal. However, the officer resigned before the disciplinary action took effect. A letter indicating the officer resigned pending disciplinary action was placed in his official personnel file.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures. However, the department attorney did not provide appropriate legal consultation to the hiring authority during the investigative findings conference. The department attorney sought to include allegations of past conduct of introducing contraband into an institution that were never investigated nor corroborated and failed to include an allegation of over-familiarity that was part of the investigation. The mitigating and aggravating facts listed by the department's attorney did not match the facts in the case. After a lengthy discussion with the OIG, the department's attorney agreed the allegations should conform with the allegations in the investigative report.

# SOUTH REGION

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-11-21 | 11-2845-IR | 1. **Dishonesty**<br>2. **Contraband**<br>3. **Misuse of State Equipment or Property**<br>4. **Neglect of Duty**<br>5. **Overfamiliarity** | 1. Sustained<br>2. Sustained<br>3. Sustained<br>4. Not Sustained<br>5. Not Sustained | **Dismissal** | INVESTIGATION<br>**Insufficient**<br>DISCIPLINE<br>**Insufficient** |

## Facts of the Case

It was alleged on November 21, 2011, six DVDs were found in an officer's possession while he was entering the institution. It was also alleged the officer was not in possession of his state-issued stab-proof vest plate. Upon a subsequent search of the officer's vehicle, it was further alleged several wire transfer receipts were found that were linked by account number to an account belonging to an inmate's family member. The officer admitted he had been paid by inmate family members to intentionally ignore visitors giving mobile phones to inmates during visiting sessions.

## Investigative Assessment

The Office of Internal Affairs failed to determine there was sufficient evidence to open an investigation when it initially became aware of possible misconduct by the officer on December 17, 2010. Due to the Office of Internal Affairs' failure to timely pursue the allegations, several allegations were lost because the deadline for taking disciplinary action had passed. After the officer was found with the DVDs and the wire transfer receipts on November 21, 2011, the Office of Internal Affairs properly consulted with the department attorney and the OIG and completed the investigation.

## Assessment Questions

- Within 21 calendar days following receipt of the investigative report, did the department attorney review the report and provide appropriate substantive feedback addressing the thoroughness and clarity of the report?

  *There is no indication that the department attorney provided substantive feedback regarding the thoroughness and clarity of the report.*

- Did the department provide written confirmation summarizing all critical discussions about the investigative report to the special agent with a copy to the OIG?

  *There is no indication that the department attorney provided any written confirmation regarding any discussions about the investigative report with the special agent.*

- Was the investigation, or subject interview, completed at least 35 days before the deadline to take disciplinary action?

  *By the time the investigation was completed, the deadline for taking disciplinary action on the mobile phone smuggling allegation had passed, but the report was completed before the deadline for taking disciplinary action on the dishonesty allegations, among others, was set to expire.*

## Disposition

The hiring authority determined there was sufficient evidence to sustain the allegations of dishonesty, contraband, and misuse of state property, and served the officer with a notice of dismissal. The hiring authority determined there was insufficient evidence to sustain the remaining allegations. The officer resigned before the disciplinary action took effect. A letter indicating the officer resigned pending disciplinary action was placed in his official personnel file.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures. The department attorney failed to provide written confirmation of penalty discussions to the hiring authority and to the OIG. However, it should be noted this case involved a legal issue addressing the deadline for taking disciplinary action. There were allegations made that the officer was involved in the smuggling of mobile phones into the institution almost a year prior to this current case of the officer being found to be in possession of the DVDs. The deadline for taking disciplinary action on those allegations had expired by the time the investigation into the case was completed. However, the department attorney conferred with the OIG and it was determined that acts of dishonesty relating to those allegations were made within the limitations period and, therefore, despite the fact that the original allegations could not be pursued due to the expiration of that limitations period, the dishonesty allegations could.

# SOUTH REGION

## Assessment Questions

- Did the department attorney provide to the HA and OIG written confirmation of penalty discussions?

  *The department attorney did not provide the hiring authority or the OIG written confirmation of penalty discussions.*

- Within 21 calendar days, did the department attorney make an entry into CMS accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

  *The department attorney did not make an entry into the case management system confirming the date of the incident, the date of discovery, and the deadline for taking disciplinary action.*

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-11-28 | 11-3049-IR | 1. Sexual Misconduct<br>2. Contraband<br>3. Over-Familiarity<br>4. Other Failure of Good Behavior | 1. Sustained<br>2. Sustained<br>3. Sustained<br>4. Sustained | Dismissal | INVESTIGATION<br>**Sufficient**<br><br>DISCIPLINE<br>**Sufficient** |

## Facts of the Case

On November 28, 2011, it was alleged an officer was providing mobile phones and tobacco to an inmate. Another staff member alleged he observed the officer the week prior acting suspiciously within the housing unit to which both were assigned. When the staff member went to the staff restroom, he opened the officer's locker and discovered a mobile phone and a gallon-sized zip lock bag containing tobacco. On November 28, 2011, a search was conducted of the cell of the inmate with whom the officer was suspected of engaging in an overly familiar relationship. The inmate battered two staff members, ran from the area of the cell, and attempted to destroy a mobile phone. Staff members located an inmate-manufactured weapon, heroin, and tobacco within the cell. The damaged mobile phone was examined at the institution and it was determined the inmate had been communicating with the officer. During her interview, the officer admitted to engaging in an overly familiar and sexual relationship with the inmate.

## Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition

The hiring authority determined there was sufficient evidence to sustain the allegations and dismissed the officer. The officer did not file an appeal with the State Personnel Board.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

# APPENDIX D                                                      66
# CRITICAL INCIDENT CASE SUMMARIES
## CENTRAL REGION

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| **2010-04-01** | **11-0969-RO** | **Suicide** | **Sufficient** |

### Facts of the Case
On April 1, 2011, an inmate returning to his cell from chapel services found his cellmate hanging by a sheet from the bunk. The cellmate was alone in the cell at the time of his death.

### Disposition
The autopsy revealed that the cause of death was hanging and that the manner of death was suicide. No staff misconduct was identified; therefore, the matter was not referred to the Office of Internal Affairs for investigation.

### Overall Assessment
The department's initial notification to the OIG was beyond one hour following the critical incident; therefore, it was untimely. Other than this late notification, the department adequately responded to the incident. The OIG concurred with the hiring authority's decision not to refer the matter to the Office of Internal Affairs.

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| **2011-01-30** | **11-0325-RO** | **Suicide** | **Sufficient** |

### Facts of the Case
On January 30, 2011, an officer responded to a cell after hearing "man down," while a second officer alerted custody staff. The first officer saw an inmate in the cell, hanging by a noose made from a strip of material from his bed sheet. A second inmate, who had just discovered the first inmate upon returning to their cell, was already trying to help by lifting the first inmate at the waist to relieve pressure on the first inmate's neck. The first officer activated his personal alarm device, alerting additional custody staff and yelled to the second officer for a cut down tool. The first officer entered the open cell door and tried untying the noose as the second inmate continued to lift the first inmate. The second officer arrived with the cut down tool and the noose was cut off. After helping to lay the first inmate on the floor, the second inmate exited the cell. The first inmate was also removed from the cell and two additional officers immediately began life-saving measures on the first inmate. Responding medical staff arrived and continued life-saving measures. The first inmate was transported to the medical clinic where he was later pronounced dead.

### Disposition
The investigation and autopsy determined the first inmate's death to be a suicide. No staff misconduct was identified; therefore, the matter was not referred to the Office of Internal Affairs for investigation.

### Overall Assessment
The department's response was satisfactory in all critical aspects. The department adequately notified and consulted with the OIG regarding the incident. The OIG concurred with the hiring authority's decision not to refer the matter to the Office of Internal Affairs.

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| **2011-02-10** | **11-0459-RO** | **In-Custody Inmate Death** | **Insufficient** |

### Facts of the Case
On February 10, 2011, an officer responded to a cell where an inmate yelled "man down." The officer saw a second inmate lying face down on the cell floor in a pool of blood with his pants partially down. The first inmate stated that, before he fell asleep, he last saw the second inmate sitting on the toilet, and that when he awoke, he found the second inmate lying on the floor. The first inmate also reported that the second inmate had been vomiting earlier. The first inmate was secured and removed from the cell. Responding medical staff began to administer life-saving measures to the second inmate and removed him from the cell. The second inmate was taken to the institution's medical clinic where he was later pronounced dead. The second inmate was terminally ill and his death was determined to be due to natural causes from pre-existing medical conditions.

### Disposition
A final autopsy report indicated the cause of death was natural causes due to a pre-existing medical condition. No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

# CENTRAL REGION

## Overall Assessment

The department failed to adequately consult with the OIG during the notification process. Initial facts provided to the OIG and the investigative services unit were incomplete, merely notifying of an in-custody death due to natural causes. No information was provided about blood in the cell, or that the first inmate was present in the cell when the second inmate was discovered unresponsive. Additionally, the incident report states the investigative services unit responded to process the scene. However, the investigative services unit did not respond because the incident was merely described as an in-custody death due to natural causes. Consequently, the cell was not processed as a potential crime scene. The OIG concurred with the hiring authority's decision not to refer the matter to the Office of Internal Affairs.

## Assessment Questions

- Did the OIG respond to the scene of the critical incident?

  *The institution failed to inform the OIG that the dead inmate had a cellmate who was present in the cell at the time of death, and that there was blood in the cell. Instead, the institution merely notified that there was an in-custody death due to natural causes. Death due to natural causes does not typically warrant an on-scene response from the OIG, unless there are possibly suspicious factors. Therefore, since no further critical details were provided, the OIG did not respond on scene.*

- Was the HA's response to the critical incident appropriate?

  *The department failed to adequately provide the OIG and investigative services unit with critical facts, including blood in the cell and that the first inmate was in the cell when the second inmate was discovered unresponsive. As a result, the scene was not secured and processed as a potential crime scene. In addition, the OIG did not respond since the death was initially reported as due to natural causes.*

- Was the critical incident adequately documented?

  *Reports failed to identify the names of custody and medical staff who responded to assist and transport the inmate to the medical clinic. There was no evidence that reports from the unidentified staff were requested. Custody staff placed the first inmate on administrative segregation status and indicated he was a suspect pending further investigation. However, custody staff did not identify him as a suspect in some of the incident reports.*

- Did the department adequately consult with the OIG regarding the critical incident?

  *The institution failed to inform the OIG that the dead inmate had a cellmate who was present in the cell at the time of death, and that there was blood in the cell. Instead, the institution merely notified that there was an in-custody death due to natural causes. Death due to natural causes does not typically warrant an on-scene response from the OIG, unless there are possibly suspicious factors. Therefore, since no further critical details were provided, the OIG did not respond on scene.*

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| 2011-05-16 | 11-1375-RO | Inmate Serious/Great Bodily Injury | Sufficient |

## Facts of the Case

On May 16, 2011, four inmates walked across the recreation yard to be seen by medical staff. Three of those inmates turned on the fourth inmate and attacked him, stabbing him. Officers then ordered all inmates to get down on the ground. The inmates did not comply until responding officers were close enough to use pepper spray, although the officers did not actually use the pepper spray. Officers discovered two inmate-manufactured weapons in the vicinity of the inmates. The fourth inmate suffered stab wounds to the neck area but refused any medical treatment.

## Disposition

The case was referred to the district attorney's office for prosecution, but was declined because of the fourth inmate's refusal to cooperate with the prosecution. Potential staff misconduct was identified; therefore, the case was referred to the Office of Internal Affairs for investigation. An investigation was opened, which the OIG accepted for monitoring.

## Overall Assessment

The department's overall response to the incident was adequate in all critical aspects. The department's notification and consultation with the OIG was sufficient. However, the hiring authority's decision to refer the matter to the Office of Internal Affairs was made six months following the discovery of the potential misconduct. The OIG concurred with the hiring authority's decision to refer the matter to the Office of Internal Affairs.

# CENTRAL REGION

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| **2011-06-02** | **11-1486-RO** | **Inmate Serious/Great Bodily Injury** | **Insufficient** |

## Facts of the Case

On June 2, 2011, an officer removed his pepper spray can after an inmate refused orders to submit to an unclothed body search. The inmate rushed the officer and did not stop even though the officer deployed his pepper spray. The inmate assaulted the officer, forcing him to the ground in a head lock. Fearing for his life, the officer struck the inmate in the head with his pepper spray can. The inmate called to other inmates to assist in the assault. Three inmates initially moved forward, and one of them threw a large garbage can at three officers who were responding. The three officers used pepper spray on the inmates, stopping their advance. Four officers used a combined 13 baton strikes to try to stop the first inmate's attack, with no effect. Officers stopped the attack on the first officer by using physical force. The inmate sustained two lacerations to the head as well as bruising to the back.

## Disposition

The cases against all four inmates were referred to the district attorney's office for prosecution. The district attorney's office filed charges against the inmate who attacked the first officer and the inmate who threw the garbage can at the officers, but declined to prosecute the other two inmates. No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

## Overall Assessment

The Office of Internal Affairs did not identify this incident as a deadly force incident; therefore, it failed to respond to the institution to conduct an investigation. Although the OIG agreed with the hiring authority's decision not to refer the matter to the Office of Internal Affairs, the hiring authority failed to make this decision in a timely manner, taking over eight months to make the decision.

## Assessment Questions

- Did the OIA adequately respond to the incident?

  *Since the officer intentionally used unconventional force that could have been deadly, the Office of Internal Affairs should have responded. However, the Office of Internal Affairs did not identify this incident as a deadly force incident. Therefore, it failed to respond to the institution to conduct an investigation.*

- Did the HA make a timely decision regarding whether to refer any conduct related to the critical incident to the OIA?

  *Although the incident occurred on June 2, 2011, the determination that the use of force was within departmental policy was made on February 14, 2012, more than 45 days following the discovery of the use of force. The initial reports submitted by the officers involved or witnessing the use of force did not adequately document the incident and numerous clarifications were requested, resulting in the delay to make a determination whether to refer any conduct to the Office of Internal Affairs for an investigation.*

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| **2011-06-06** | **11-1495-RO** | **Inmate Serious/Great Bodily Injury** | **Sufficient** |

## Facts of the Case

On June 6, 2011, while being escorted across the yard in handcuffs, an inmate became verbally aggressive toward the escorting officers and attempted to break free from the escort. The officers used physical force to take the inmate to the ground to gain control. The inmate sustained a fractured knee and laceration over his eye during the incident. The inmate alleged he was not resisting and that officers used unnecessary force.

## Disposition

The institution's executive review committee reviewed the incident and the allegations of unnecessary force. They concluded the officers' reports were consistent with the facts of the incident and the force used was necessary to meet the inmate's level of resistance. No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs.

## Overall Assessment

The department's response was satisfactory in all critical aspects. The department informed the OIG about the incident in a timely and sufficient manner. The OIG agreed with the decision not to submit the matter to the Office of Internal Affairs.

# CENTRAL REGION

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| **2011-06-07** | **11-1508-RO** | **In-Custody Inmate Death** | **Sufficient** |

## Facts of the Case

On June 7, 2011, an officer sounded an alarm after finding an unresponsive inmate sitting on the toilet in his cell. Responding custody and medical staff arrived, the cell door was opened, and live-saving measures were initiated because the inmate did not have a pulse and was not breathing. The inmate was pronounced dead after life-saving measures failed. The inmate was the sole occupant of the cell.

## Disposition

The autopsy revealed that the inmate died of natural causes due to a heart attack. No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

## Overall Assessment

The department's overall response to the incident was adequate in all critical aspects. The department's notification and consultation to the OIG regarding the incident was sufficient. The OIG agreed with the hiring authority's decision not to refer the matter to the Office of Internal Affairs.

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| **2011-06-15** | **11-1600-RO** | **Inmate Serious/Great Bodily Injury** | **Insufficient** |

## Facts of the Case

On June 15, 2011, four inmates were attacked by five inmates from a rival prison gang during an escort. A sergeant and officers used expandable batons and pepper spray to stop the attack. One of the attackers was unintentionally struck in the head with a baton causing a laceration that required seven staples to close. One officer fell while responding to the scene and received a knee injury. Three inmate-manufactured weapons were recovered.

## Disposition

This case against the inmates was not referred to the district attorney's office because it did not meet the referral criteria. No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

## Overall Assessment

The department did not provide the OIG with a timely notification. The OIG concurred with the hiring authority's decision not to refer the matter to the Office of Internal Affairs because there was no written policy violation; however, the department's overall response to this incident was insufficient. The OIG determined that a similar incident could endanger staff and inmates in the future because of inadequate policy and procedures.

## Assessment Questions

- Was the OIG promptly informed of the critical incident?

  *The department failed to notify the OIG.*

- Was the HA's response to the critical incident appropriate?

  *When the OIG expressed concern of this occurring again under the existing program status escort procedures, the warden was unreceptive to the recommendations. Further, the warden did not appear particularly concerned that a staff member was injured in this incident, which could have been avoided if better escort procedures were in place. The OIG recommended remedial training for the staff who took an unnecessary risk by escorting one group of inmates across the yard while a rival group participated in their designated yard program. This action resulted in the use of force and injuries to staff and inmates. The OIG also recommended more defined escort procedures for the modified program between the rival inmate groups to prevent future reoccurrences. The OIG concurred with the hiring authority's decision not to refer the matter to the Office of Internal Affairs because there was no written policy violation.*

# CENTRAL REGION

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| **2011-06-19** | **11-1819-RO** | **In-Custody Inmate Death** | **Sufficient** |

## Facts of the Case

On June 19, 2011, an officer working in the administrative segregation unit was retrieving the evening meal trays when he noticed an inmate had not eaten his meal. The officer ordered the inmate to come to the door but the inmate did not respond. The second inmate in the cell advised the officer that the first inmate had taken his medication and had not awakened since that time. When attempts to wake the first inmate were unsuccessful, officers prepared to extract the first inmate from the cell for a medical evaluation. After the second inmate was removed from the cell, the officers entered the cell and removed the first inmate, placing him on a gurney. Medical staff evaluated the first inmate who appeared to be unconscious, and had blood and swelling on his face. The first inmate was taken to a local hospital where he was admitted and placed on life support. On July 16, 2011, the first inmate was pronounced dead.

## Disposition

An autopsy determined the cause of death to be blunt force trauma. The case against the second inmate was referred to the district attorney's office for prosecution. No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

## Overall Assessment

Overall, the department adequately consulted with the OIG regarding the incident. The OIG concurred with the hiring authority's decision not to refer the matter to the Office of Internal Affairs.

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| **2011-07-08** | **11-1761-RO** | **In-Custody Inmate Death** | **Sufficient** |

## Facts of the Case

On July 8, 2011, an inmate in his cell yelled "man down." An officer walked to the cell and saw one inmate standing at the door and a second inmate lying unresponsive on the cell floor. The officer asked the first inmate what was wrong with his cellmate. The first inmate replied, "He is done." Officers removed both inmates from the cell. Medical staff responded and assessed the second inmate, administering life-saving measures. Medical staff observed a ligature mark around the second inmate's neck. While en route to the local hospital, the second inmate was pronounced dead.

## Disposition

An autopsy determined the cause of death was ligature strangulation. The case against the cellmate was referred to the district attorney's office for prosecution. No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

## Overall Assessment

The department's overall response to the incident was adequate in all critical aspects. The department informed the OIG about the incident in a timely and sufficient manner. The OIG agreed with the hiring authority's decision not to refer the matter to the Office of Internal Affairs.

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| **2011-07-24** | **11-1874-RO** | **In-Custody Inmate Death** | **Sufficient** |

## Facts of the Case

On July 24, 2011, while passing out the morning meal, officers observed an inmate lying facedown and unresponsive in the infirmary. Life-saving measures were not initiated due to obvious signs of death. The inmate was in the infirmary because his jaw was fractured and wired shut.

## Disposition

Potential staff misconduct was identified; therefore, the case was referred to the Office of Internal Affairs for investigation. An investigation of custody and medical staff was opened, which the OIG accepted for monitoring.

## Overall Assessment

The department's response was satisfactory in all critical aspects. The department informed the OIG about the incident in a timely and sufficient manner. The OIG concurred with the hiring authority's decision to refer the matter to the Office of Internal Affairs.

# CENTRAL REGION

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| **2011-07-26** | **11-1878-RO** | **Other Significant Incident** | **Sufficient** |

## Facts of the Case

On July 26, 2011, two officers in a dayroom witnessed an inmate chasing another inmate with a slashing weapon. One officer ordered the inmate to stop while the other activated the alarm. The inmate slashed the neck of the officer that ordered him to stop and began fighting with responding officers. Officers used pepper spray on the attacking inmate, but it was not effective. Physical force was used to bring the inmate under control. Three staff members and one inmate received non-life-threatening injuries as a result of the attack.

## Disposition

The case against the inmate was referred to the district attorney's office for prosecution. No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

## Overall Assessment

The OIG determined that the department adequately responded to the incident in all critical aspects. The department adequately notified and consulted with the OIG on the incident. The hiring authority chose not to refer the matter to the Office of Internal Affairs. The OIG concurred with this decision.

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| **2011-08-04** | **11-1981-RO** | **Inmate Serious/Great Bodily Injury** | **Sufficient** |

## Facts of the Case

On August 4, 2011, officers were escorting an inmate from a shower in the administrative segregation unit when he became resistive. Physical force was used to take the inmate to the ground in order to gain control. Once under control, the inmate was escorted out of the housing unit for a medical evaluation where staff determined he needed to be transferred to an outside hospital for a higher level of care. The inmate was admitted to the hospital for a fractured cheekbone and two facial lacerations requiring sutures.

## Disposition

The institution's executive review committee determined that the use of force was in compliance with policy, procedures, and training and the OIG concurred. No staff misconduct was identified; therefore the case not referred to the Office of Internal Affairs.

## Overall Assessment

Overall, the department's response to the incident was sufficient. The department provided adequate notification and consultation to the OIG regarding the incident. The hiring authority decided not to refer the matter to the Office of Internal Affairs, and the OIG agreed.

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| **2011-08-07** | **11-2008-RO** | **Suicide** | **Sufficient** |

## Facts of the Case

On August 7, 2011, an officer and registered nurse discovered a single-celled inmate hanging from a vent with a sheet wrapped around his neck. Staff announced a medical emergency, performed a medical extraction, and began life-saving measures; however, the inmate did not survive.

## Disposition

The coroner determined the cause of death to be suicide. No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs.

## Overall Assessment

The OIG determined that the department adequately responded to the incident in all critical aspects. The department adequately notified and consulted with the OIG on the incident. The OIG concurred with the hiring authority's decision not to refer the matter to the Office of Internal Affairs.

# CENTRAL REGION

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| 2011-08-13 | 11-2082-RO | In-Custody Inmate Death | Sufficient |

### Facts of the Case

On August 13, 2011, an inmate was feeling dizzy and was treated by medical staff at the institution. During the escort back to his housing unit, the inmate again felt dizzy and collapsed. Custody and medical staff performed life-saving measures at the scene. The inmate was pronounced dead after life-saving measures failed.

### Disposition

The coroner determined the cause of death to be pulmonary embolism. No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs.

### Overall Assessment

The department's overall response to the incident was adequate in all critical aspects. The department informed the OIG about the incident in a timely and sufficient manner. The department completed a death review and determined that the death could have possibly been prevented if the attending physician conducted further tests and suspected a pulmonary embolism. The OIG concurred with the hiring authority's decision not to refer the matter to the Office of Internal Affairs.

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| 2011-08-18 | 11-2109-RO | Inmate Serious/Great Bodily Injury | Sufficient |

### Facts of the Case

On August 18, 2011, during yard recall, two inmates began fighting in the dayroom. The control booth officer fired two less-lethal rounds at the combatants to stop the fight. As officers were restraining the two inmates, a third inmate began to yell at the officers and approached with clenched fists. One officer used pepper spray on the approaching inmate, but it was ineffective at stopping him. Two officers used their batons to gain control of the inmate. One of the officers unintentionally struck the inmate in the head with his baton. The inmate was treated at a local hospital and returned to the institution on the same day.

### Disposition

This case was not referred to the district attorney's office because it did not meet the referral criteria. No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation. The institution's executive review committee found the use of force to be in compliance with departmental policy.

### Overall Assessment

The OIG determined that the department adequately responded to the incident in all critical aspects. Although the department failed to provide adequate notification of the incident to the OIG, the department adequately consulted. The hiring authority decided not to refer the matter to the Office of Internal Affairs, and the OIG agreed.

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| 2011-08-25 | 11-2160-RO | In-Custody Inmate Death | Sufficient |

### Facts of the Case

On August 25, 2011, inmates in a dorm found an elderly inmate unresponsive on his bunk and immediately notified officers. An officer responded, activated the alarm, and began life-saving measures after determining the inmate was not breathing and did not have a pulse. The inmate was pronounced dead at a local hospital after life-saving efforts failed. There was no evidence of foul play.

### Disposition

The coroner's office determined an autopsy was unnecessary based on no evidence of foul play and the inmate's medical history. No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

### Overall Assessment

The department's overall response to the incident was adequate in all critical aspects. The department adequately notified and consulted with the OIG on the incident. The OIG concurred with the hiring authority's decision not to refer the matter to the Office of Internal Affairs.

# CENTRAL REGION

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| **2011-10-10** | **11-2527-RO** | **In-Custody Inmate Death** | **Sufficient** |

## Facts of the Case

On October 10, 2011, an officer responded to a cell after hearing "man down". The officer saw an inmate wash his hands and walk to the back of the cell, while a second inmate was laying on his bed, unresponsive with his head tilted up and his eyes and mouth open. The officer alerted custody and medical staff. The first inmate was secured and removed from the cell. The medical staff administered life-saving measures to the second inmate, but he was later pronounced dead. Due to signs of trauma to the second inmate, the incident was treated as a possible homicide and the investigative services unit responded to process the scene.

## Disposition

The case against the first inmate was referred to the district attorney's office for prosecution. Potential staff misconduct was identified; therefore, the case was referred to the Office of Internal Affairs for investigation. An investigation was opened, which the OIG accepted for monitoring.

## Overall Assessment

The department adequately notified and consulted with the OIG regarding the incident. The OIG concurred with the hiring authority's decision to refer the matter to the Office of Internal Affairs.

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| **2011-10-16** | **11-2577-RO** | **In-Custody Inmate Death** | **Sufficient** |

## Facts of the Case

On October 16, 2011, an officer noticed blood splatter near a cell and saw an inmate inside the cell pouring water on himself. The officer asked the inmate where his cellmate was. The inmate responded by pulling down a sheet to reveal the second inmate, unresponsive and bleeding from multiple stab wounds. Officers handcuffed the first inmate and removed him from the cell. Life-saving measures were administered on the second inmate and he was taken to a local hospital where he was later pronounced dead.

## Disposition

The coroner determined the death to be a homicide. The case against the first inmate was referred to the district attorney's office for prosecution. No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation. However, medical staff received on-the-job training because they failed to properly document care provided during the emergency.

## Overall Assessment

The department's overall response was adequate in all critical aspects. The department adequately notified and consulted with the OIG regarding the incident. The hiring authority chose not to refer the matter to the Office of Internal Affairs and the OIG concurred.

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| **2011-11-19** | **11-2839-RO** | **In-Custody Inmate Death** | **Sufficient** |

## Facts of the Case

On November 19, 2011, an officer discovered an inmate hanging in his cell, with a noose around his neck made from a bed sheet. Following an emergency medical response, the inmate was transported to an outside hospital where physicians determined that he was brain dead. The inmate was pronounced dead after life support was discontinued.

## Disposition

The hiring authority identified potential staff misconduct; therefore the case was referred to the Office of Internal Affairs for investigation. The Office of Internal Affairs opened an administrative investigation, which the OIG accepted for monitoring.

## Overall Assessment

The department's overall response to the incident was adequate except for the medical response. The department informed the OIG about the incident in a timely and sufficient manner. The OIG concurred with the hiring authority's decision to refer the matter to the Office of Internal Affairs.

# CENTRAL REGION

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| **2011-11-25** | **11-2853-RO** | **In-Custody Inmate Death** | **Sufficient** |

### Facts of the Case

On November 25, 2011, an 81-year-old inmate with dementia fell in a restroom while in the institution's hospital, resulting in a head injury. He was transported to an outside hospital two hours later after he developed symptoms consistent with intracranial pressure. The outside hospital did not recommend surgical intervention due to risk factors related to age, medication, and a pre-existing medical condition. The inmate was discharged and transported back to the institution's hospital with expectations that he would not survive. The inmate died the following day.

### Disposition

The coroner determined that cause of death was due to head trauma. No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs. The institution improved policy, procedure, and training related to caring for inmates that are at risk for falls.

### Overall Assessment

The OIG determined that the department adequately responded to the incident in all critical aspects. The department adequately notified and consulted with the OIG on the incident. The hiring authority chose not to refer the matter to the Office of Internal Affairs; the OIG concurred with this decision.

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| **2011-12-22** | **11-3125-RO** | **Inmate Serious/Great Bodily Injury** | **Sufficient** |

### Facts of the Case

On December 22, 2011, while conducting a search for alcohol, officers discovered a cell door jammed up with a piece of cloth. The officers ordered the two inmates in the cell to remove the cloth. The first inmate in the cell removed the cloth. When the inmates exited the cell, the officers noticed injuries consistent with being involved in an altercation. The first inmate claimed that three unidentified, masked inmates rushed into the cell and attacked them. The second inmate claimed he had been beaten with a cane by the first inmate. The second inmate suffered multiple skull fractures and was transported to an outside hospital after his condition worsened. The second inmate became comatose and later underwent brain surgery as a result of the trauma.

### Disposition

The case against the first inmate was referred to the district attorney's office for prosecution. Potential staff misconduct was identified; therefore, the case was referred to the Office of Internal Affairs for investigation. An administrative investigation was opened, which the OIG accepted for monitoring.

### Overall Assessment

The department's overall response to the incident was adequate in all critical aspects. The department informed the OIG about the incident in a timely and sufficient manner. The hiring authority decided to refer the matter to the Office of Internal Affairs, and the OIG agreed. The OIG concurred with the Office of Internal Affairs' response to the hiring authority's referral.

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| **2012-01-26** | **12-0251-RO** | **Other Significant Incident** | **Sufficient** |

### Facts of the Case

On January 26, 2012, an inmate received eleven times his prescribed dose of medication from medical staff over a two day period. The inmate was consequently transferred to an outside hospital for treatment. The inmate was transferred back to the institution after two weeks.

### Disposition

Potential staff misconduct was identified; therefore, the matter was referred to the Office of Internal Affairs. An administrative investigation was opened, which the OIG did not accept for monitoring due to the matter being under jurisdiction of the Federal Medical Receiver.

### Overall Assessment

The department's response was satisfactory in all critical aspects except for a delay in notifying the OIG of the incident. The hiring authority decided to refer the matter to the Office of Internal Affairs, and the OIG agreed.

# CENTRAL REGION

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| 2012-01-28 | 12-0378-RO | Inmate Serious/Great Bodily Injury | Sufficient |

## Facts of the Case

On January 28, 2012, officers placed inmates in handcuffs while conducting cell searches. One inmate managed to slip out of his handcuffs and began stabbing another inmate. A third inmate began kicking the inmate being stabbed. Pepper spray and less-lethal impact rounds were used to stop the attack. The injured inmate was transported via ambulance to a local hospital for potentially life-threatening injuries. The injured inmate later returned to the institution's medical facility.

## Disposition

The case against the inmates was referred to the district attorney's office. No staff misconduct was identified; therefore, the matter was not referred to the Office of Internal Affairs for investigation.

## Overall Assessment

The department's response was satisfactory in all critical aspects. The department adequately notified and consulted with the OIG regarding the incident. The OIG concurred with the hiring authority's decision not to refer the matter to the Office of Internal Affairs.

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| 2012-02-02 | 12-0296-RO | In-Custody Inmate Death | Sufficient |

## Facts of the Case

On February 2, 2012, an inmate who had been on a hunger strike died from unknown causes. There was no evidence to suggest a homicide. However, the inmate's cell was secured as a crime scene and the district attorney's office was contacted.

## Disposition

The inmate's death was determined to be due to natural causes. No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

## Overall Assessment

The department's response was satisfactory in all critical aspects. The department adequately notified and consulted with the OIG regarding the incident. The OIG concurred with the hiring authority's decision not to refer the matter to the Office of Internal Affairs.

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| 2012-03-26 | 12-0838-RO | Hunger Strike | Sufficient |

## Facts of the Case

On March 26, 2012, an inmate re-initiated a hunger strike after several prior hunger strikes. The inmate claimed general safety concerns against staff and other inmates, and made several requests, including out-of-state parole and the witness protection program. The inmate had significant weight loss due to the cumulative hunger strikes. On April 9, 2012, the inmate was taken to a local hospital for medical care due to severe dehydration. He later returned to the institution where he was housed at the correctional treatment center.

## Disposition

No staff misconduct was identified; therefore the matter was not referred to the Office of Internal Affairs for investigation.

## Overall Assessment

The department failed to timely notify the OIG of the critical incident. Other than the delayed notification, the department's overall response to the incident was adequate. The OIG concurred with the hiring authority's decision not to refer the matter to the Office of Internal Affairs.

# CENTRAL REGION

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| **2012-05-17** | **12-1341-RO** | **Hunger Strike** | **Sufficient** |

## Facts of the Case

On May 17, 2012, an inmate initiated a hunger strike in protest, claiming that he had been prevented from speaking with the warden and the Office of Internal Affairs. On May 31, 2012, the inmate complained of chest pain, abdominal pain, and chills. Department staff referred him to a local hospital for diagnostic tests and medical treatment. The inmate was returned to the institution the same day. The inmate ended his hunger strike on June 13, 2012.

## Disposition

No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

## Overall Assessment

The department's response was satisfactory in all critical aspects. However, the department failed to timely notify the OIG when the inmate's medical condition required that he be taken to a local hospital for further medical tests and treatment. Despite this late notification, there was no impact on the department's appropriate response in ensuring the inmate received proper medical care. The OIG concurred with the hiring authority's decision not to refer the matter to the Office of Internal Affairs.

# NORTH REGION

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| **2011-03-10** | **11-0729-RO** | **In-Custody Inmate Death** | **Sufficient** |

## Facts of the Case

On March 10, 2011, an inmate told officers that an inmate had been murdered by his cellmate. Officers responded to the cell and asked the inmate where was his cellmate. The inmate responded that he had killed him. Officers removed the suspect inmate and found his cellmate lying on the floor with his hands and feet tied with shoelaces and had a pen stuck into his right eye. The inmate was pronounced dead after life-saving efforts failed.

## Disposition

The case against the inmate was referred to the district attorney's office for prosecution. No staff misconduct was identified; therefore, the matter was not referred to the Office of Internal Affairs for investigation.

## Overall Assessment

The OIG determined that the department adequately responded to the incident in all critical aspects. The department's notification and consultation to the OIG regarding the incident was sufficient. The hiring authority chose not to refer the matter to the Office of Internal Affairs; the OIG concurred with this decision.

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| **2011-07-13** | **11-1773-RO** | **Other Significant Incident** | **Sufficient** |

## Facts of the Case

On July 13, 2011, a registered nurse was allegedly sexually assaulted by an inmate in a medical examination office.

## Disposition

Potential staff misconduct was identified; therefore, the matter was referred to the Office of Internal Affairs for an investigation. An investigation was opened, which the OIG accepted for monitoring.

## Overall Assessment

The department's response was satisfactory in all critical aspects. The department provided adequate notification and consultation to the OIG regarding the incident. The hiring authority chose to refer the matter to the Office of Internal Affairs; the OIG concurred with this decision.

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| **2011-07-26** | **11-1886-RO** | **Inmate Serious/Great Bodily Injury** | **Sufficient** |

## Facts of the Case

On July 26, 2011, officers smelled marijuana in a housing unit. A cell search was authorized in an attempt to locate the marijuana. An inmate refused to exit his cell. The same inmate then put on a pair of gloves and took an aggressive fighting stance, charging the officers. The officers used pepper spray and several baton strikes to subdue the inmate, striking the inmate on the shoulder and thigh. One of the baton strikes glanced off the inmate's shoulder, striking him behind his right ear. The inmate continued his aggressive behavior; therefore, physical force was used to subdue him to apply restraints. The inmate had a small cut behind his right ear.

## Disposition

The institution's use-of-force review committee reviewed the incident and determined the use of force was within policy and the baton strike causing injury was not an intentional strike to the head. No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

## Overall Assessment

The department's response was satisfactory in all critical aspects. The department adequately notified and consulted with the OIG regarding the incident. The OIG concurred with the hiring authority's decision not to refer the matter to the Office of Internal Affairs.

# NORTH REGION

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| **2011-09-02** | **11-2350-RO** | **In-Custody Inmate Death** | **Sufficient** |

## Facts of the Case

On September 2, 2011, an inmate was found unresponsive in his bed. Emergency medical services were initiated and the inmate was pronounced dead by an attending physician. Institutional personnel reported no obvious signs of trauma.

## Disposition

The coroner's examination, which included toxicology testing, could not determine the cause of death but found no evidence of foul play. The investigative services unit also found no evidence of criminal activity or potential staff misconduct; therefore, this matter was not referred to the Office of Internal Affairs for further investigation.

## Overall Assessment

The department's overall response to the incident was adequate in all critical aspects. The department provided adequate notification and consultation to the OIG regarding the incident, and the OIG concurred with the department's decision not to refer the matter to the Office of Internal Affairs.

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| **2011-09-10** | **11-2281-RO** | **In-Custody Inmate Death** | **Sufficient** |

## Facts of the Case

On September 10, 2011, an officer was conducting routine patient checks with a registered nurse at the correctional treatment center. When they approached the cell the officer noted that the only inmate inside was unresponsive to the officer calling his name. The officer and the registered nurse entered the inmate's cell, and the officer checked for a pulse while the registered nurse checked the inmate for other signs of life and found none. The registered nurse advised the officer that the inmate had a "Do Not Resuscitate Order." The officer notified the sergeant via institutional radio of a possible inmate death, secured the cell, and maintained watch until the arrival of the investigative services unit. The inmate was then pronounced dead by a correctional treatment center physician. The cause of death was listed as death by natural causes.

## Disposition

The correctional treatment center doctor responded and pronounced the inmate dead. The inmate's Death Review Summary concluded that the cause of death was the inmate's repeated refusal for medical care, diagnostic evaluations, and treatments based on his religious beliefs and personal wishes. No staff misconduct was identified.

## Overall Assessment

The OIG determined that the department adequately responded to the incident in all critical aspects. The department provided adequate notification and consultation to the OIG regarding the incident. The hiring authority chose not to refer the matter to the Office of Internal Affairs; the OIG concurred with this decision.

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| **2011-09-17** | **11-2371-RO** | **Inmate Serious/Great Bodily Injury** | **Sufficient** |

## Facts of the Case

On September 17, 2011, an officer observed an inmate walking across the yard toward the correctional treatment center, wiping blood from his face and torso area. The inmate told the officer that he had been attacked by another inmate behind the softball backstop. The inmate placed an inmate-manufactured weapon on the counter and told staff he took the weapon from the inmate who attacked him during the attack. Officers subsequently obtained information resulting in the apprehension of the attacking inmate.

## Disposition

Both inmates were medically evaluated and treated for injuries. The attacking inmate sustained minor lacerations. He was treated at the triage treatment area and placed into administrative segregation. The injured inmate was transported to an outside hospital via Code 2 Ambulance due to the severities of his injuries. The inmate received treatment and was returned to administrative segregation for his safety.

## Overall Assessment

The department's response was satisfactory in all critical aspects, except for its failure to provide timely notification to the OIG regarding the incident. No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation. The OIG concurred with the department's decision not to refer the matter to the Office of Internal Affairs.

# NORTH REGION

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| **2011-09-20** | **11-2383-RO** | **Suicide** | **Sufficient** |

## Facts of the Case

On September 20, 2011, an officer was conducting evening count when he approached a cell occupied solely by one inmate. The officer observed the inmate standing on the cell floor, slouching, with an inmate-manufactured noose secured around his neck, attached to the ceiling light fixture. The officer utilized his institutional radio and announced the emergency. The officer then attempted to gain the inmate's attention by calling his name and knocking on the cell door, but was unsuccessful. Upon arrival of responding officers and medical staff, an emergency cell extraction was performed and the noose was cut from the inmate's neck. The inmate was taken to the triage treatment area for medical treatment. Officers and medical staff performed life-saving measures until a physician ordered them to stop and pronounced the inmate dead.

## Disposition

An autopsy by the coroner's office determined the cause of death was suicide by hanging. No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

## Overall Assessment

The department's response was satisfactory in all critical aspects. The department's notification and consultation to the OIG regarding the incident was sufficient. The OIG agreed with the decision not to submit the matter to the Office of Internal Affairs.

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| **2011-09-21** | **11-2421-RO** | **Inmate Serious/Great Bodily Injury** | **Sufficient** |

## Facts of the Case

On September 21, 2011, youth counselors were supervising recreation events when they observed two wards in a one-on-one fight. The youth counselors activated their alarms and gave verbal instructions to the wards to stop fighting, but did not gain compliance. One ward sustained a head injury after falling to the ground and striking his head on the concrete. The youth counselors gave orders to the combative ward who remained standing to get down on the ground, which he disregarded. The youth counselors then used pepper spray to gain the ward's compliance. Medical staff arrived and provided immediate medical attention to the injured ward. He was treated at a local hospital and later returned to the institution. The other ward sustained minor injuries, was decontaminated, and returned to his housing unit.

## Disposition

No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation. The critical incident review revealed that a one-on-one physical altercation did take place between two wards resulting in the serious bodily injury of one of the wards.

## Overall Assessment

Overall, the department's response was satisfactory in all critical aspects. The department adequately notified and consulted with the OIG on the incident. The OIG concurred with the hiring authority's decision not to refer the matter to the Office of Internal Affairs.

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| **2011-09-27** | **11-2432-RO** | **Inmate Serious/Great Bodily Injury** | **Sufficient** |

## Facts of the Case

On September 27, 2011, two inmates were involved in a one-on-one fight on the yard. The control booth officer fired two less-lethal rounds and responding yard officers ordered the inmates to stop fighting. The inmates continued to fight after the second less-lethal round was fired, but eventually complied with officers' orders. After the incident, it was discovered that one inmate had sustained a one-inch laceration to the side of his head. In a videotaped statement, the injured inmate said he did not know whether he was hit by the less-lethal round or whether his injury was sustained during the fight. The inmate was given medical treatment at the institution and received stitches to close his wound. Institutional medical staff could not determine whether the laceration was caused by the less-lethal round or by the fight.

## Disposition

The institution's use-of-force review committee found that the actions of the officers were within departmental guidelines. No staff misconduct was identified; therefore, the matter was not referred to the Office of Internal Affairs for investigation.

# NORTH REGION

## Overall Assessment
The department's response was satisfactory in all critical aspects, except for its failure to provide timely notification to the OIG regarding the incident. The OIG agreed with the hiring authority's decision not to refer the matter to the Office of Internal Affairs.

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| 2011-10-07 | 11-2503-RO | In-Custody Inmate Death | Sufficient |

## Facts of the Case
On October 7, 2011, a tower officer saw two inmates attacking another inmate on an exercise yard using inmate-manufactured weapons. The officer activated his unit alarm and ordered both inmates to get down on the ground. The inmates ignored the officer's command and continued the attack. When the officer shouldered his firearm, both inmates immediately stopped their attack, backed away from the inmate being attacked, and assumed a prone position. The injured inmate was immediately transported to the institution's triage treatment area where a physician pronounced him dead.

## Disposition
Potential staff misconduct was identified; therefore, the hiring authority referred the matter to the Office of Internal Affairs for investigation. An investigation was opened, which the OIG accepted for monitoring.

## Overall Assessment
The department's response was satisfactory in all critical aspects. The department adequately notified and consulted with the OIG regarding the incident. The OIG concurred with the hiring authority's decision to refer the matter to the Office of Internal Affairs.

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| 2011-10-08 | 11-2507-RO | In-Custody Inmate Death | Sufficient |

## Facts of the Case
On October 8, 2011, a licensed vocational nurse performing routine 15-minute checks of an inmate on suicide watch discovered the inmate unconscious and unresponsive on the floor of his room, but still breathing. Medical staff immediately instituted life-saving measures and continued to do so as the inmate was transported to the medical treatment area. An outside ambulance responded to the scene and pronounced the inmate dead. The county coroner's autopsy concluded the inmate died of cardio-pulmonary disease.

## Disposition
No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

## Overall Assessment
The department's response was satisfactory in all critical aspects. The department adequately notified and consulted with the OIG on the incident. The hiring authority decided not to refer the matter to the Office of Internal Affairs, and the OIG agreed.

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| 2011-10-24 | 11-2613-RO | Suicide | Sufficient |

## Facts of the Case
On October 24, 2011, an officer conducting 30-minute welfare checks discovered an inmate, alone in a cell, in a seated position with a ligature around his neck. The officer activated his personal alarm for emergency response. Officers entered the cell and initiated life-saving measures. While transporting the inmate, an outside ambulance consulted an outside emergency room doctor who declared the inmate dead. The investigative services unit and the county coroner were notified.

## Disposition
A coroner's autopsy concluded that the inmate died by asphyxia due to hanging. Subsequently, a medical staff member at the institution alleged a member of the institution's mental health staff failed to examine the inmate when medical staff reported concerns that the inmate's behavior immediately before his suicide required intervention by mental health staff. As a result, the Office of Internal Affairs opened an investigation into possible misconduct by the mental health staff member.

# NORTH REGION

## Overall Assessment

The department's response was satisfactory in all critical aspects. The department adequately notified and consulted with the OIG on the incident.  Potential staff misconduct was identified; therefore, the case was referred to the Office of Internal Affairs for investigation.  An investigation was opened, which the OIG accepted for monitoring.

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| 2011-10-31 | 11-2662-RO | In-Custody Inmate Death | Sufficient |

### Facts of the Case

On October 31, 2011, an inmate was discovered dead in his assigned cell. Preliminary reports indicated his cellmate had beaten him to death. The dead inmate sustained facial and skull trauma. The cellmate was re-housed in the administrative segregation unit. The coroner's office and district attorneys' investigators responded to the institution to conduct an investigation.

### Disposition

No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation. The case against the cellmate was referred to the district attorney's office for prosecution.

### Overall Assessment

The department's response was satisfactory in all critical aspects. The department adequately notified and consulted with the OIG on the incident. The OIG concurred with the hiring authority's decision not to refer the matter to the Office of Internal Affairs.

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| 2011-11-13 | 11-2777-RO | In-Custody Inmate Death | Sufficient |

### Facts of the Case

On November 13, 2011, an officer observed an inmate lying on the ground at the end of a basketball court. The officer announced a medical emergency over the institutional radio. The inmate was transported to the medical treatment area where medical staff administered life-saving measures but failed to revive the inmate. He was pronounced dead by the attending paramedic.

### Disposition

An autopsy performed by the coroner's office concluded the cause of death was sudden cardiac arrest following exercise due to hypertrophic cardiomyopathy. No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

### Overall Assessment

The department's response was satisfactory in all critical aspects. The department adequately notified and consulted with the OIG on the incident. The OIG concurred with the hiring authority's decision not to refer the matter to the Office of Internal Affairs.

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| 2011-11-15 | 12-0265-RO | Inmate Serious/Great Bodily Injury | Sufficient |

### Facts of the Case

On November 15, 2011, four inmates were fighting on an exercise yard. Officers used chemical agents and less-lethal foam impact rounds to stop the incident. One officer fired five less-lethal foam impact rounds at the combative inmates' legs, with one round striking the intended target on the leg. However, a subsequent round inadvertently struck an inmate on the head causing a laceration that required four staples to close. The inmate never lost consciousness and was medically treated at the facility.

### Disposition

The case was referred to the district attorney's office for prosecution of the involved inmates. No staff misconduct was identified; therefore, the matter was not referred to the Office of Internal Affairs for investigation.

### Overall Assessment

Overall, the department's response to the incident was sufficient. The department adequately notified and consulted with the OIG on the incident. The hiring authority chose not to refer the matter to the Office of Internal Affairs and the OIG concurred with this decision.

# NORTH REGION

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| **2011-12-01** | **11-3012-RO** | **Suicide** | **Sufficient** |

## Facts of the Case
On December 1, 2011, an officer was notified by an inmate that his cellmate was hanging in his cell. The inmate had been on the yard and was out of the cell at the time of the hanging. Officers and medical staff arrived at the cell and began life-saving measures. An outside ambulance also arrived and continued life-saving measures until a staff physician declared the inmate dead. The investigative services unit was notified immediately, custody staff secured the cell and the inmate's body pending the arrival of the investigative services unit and the coroner. There were no signs of trauma.

## Disposition
The county coroner ruled the inmate's death a suicide. No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

## Overall Assessment
The department's response to the incident was sufficient in all critical aspects. The department adequately notified and consulted with the OIG on the incident. The OIG agreed with the hiring authority's decision not to refer the matter to the Office of Internal Affairs.

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| **2011-12-06** | **11-3009-RO** | **Suicide** | **Sufficient** |

## Facts of the Case
On December 6, 2011, an officer was delivering the evening meal and discovered a single-celled inmate hanging from the air vent in his cell. The officer activated his alarm while calling for assistance from other officers. The other officers retrieved and utilized the cut down tool to remove the inmate from the vent. Medical staff arrived simultaneously, immediately began life-saving measures, and requested that an outside ambulance be contacted. The institutional fire department responded and transported the inmate to the correctional treatment center. Outside paramedics arrived at the correctional treatment center and pronounced the inmate dead.

## Disposition
The inmate's death was ruled a suicide by the county corner's office. No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

## Overall Assessment
The department adequately responded to the incident in all critical aspects. The department's notification and consultation to the OIG regarding the incident was sufficient, and the OIG agreed with the hiring authority's decision not to refer the matter to the Office of Internal Affairs.

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| **2011-12-13** | **11-3011-RO** | **In-Custody Inmate Death** | **Sufficient** |

## Facts of the Case
On December 13, 2011, an inmate was discovered unresponsive in his bunk. Responding officers announced an emergency medical alarm, secured the inmate's cellmate, and assessed the unresponsive inmate, finding no pulse or respiration. Medical staff initiated life-saving measures. The inmate was rushed to the correctional treatment center to continue life-savings efforts, but was declared dead a short time later by a department doctor.

## Disposition
The coroner determined the cause of death was a morphine overdose. No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for Investigation.

## Overall Assessment
The department's response to the incident was adequate in all critical aspects. The department adequately notified and consulted with the OIG on the incident. The OIG agreed with the department's decision not to refer the matter to the Office of Internal Affairs.

# NORTH REGION

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| **2011-12-15** | **11-3059-RO** | **Inmate Serious/Great Bodily Injury** | **Sufficient** |

## Facts of the Case

On December 15, 2011, an officer detected a cell fire while performing his duties. The officer moved the cell's only inmate to a safe area, and returned to the cell with a fire extinguisher. The officer opted not to use the extinguisher because he believed the fire was an electrical fire incompatible with the water-based extinguisher, the only type available. The resultant delay in suppressing the fire provided opportunity for it to develop and produce smoke thick enough to warrant evacuation of the housing unit. The institution's fire department contained the fire, limiting the damage to the original cell, and all inmates except for the inmate assigned to the fire-damaged cell were returned to their original cells in a matter of hours.

## Disposition

No staff misconduct was identified; therefore, the matter was not referred to the Office of Internal Affairs for investigation.

## Overall Assessment

Overall, the department's response to the incident was satisfactory in all critical aspects. The department adequately notified and consulted with the OIG on the incident, and the OIG agreed with the hiring authority's decision not to refer the matter to the Office of Internal Affairs.

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| **2011-12-15** | **11-3060-RO** | **Inmate Riot** | **Sufficient** |

## Facts of the Case

On December 15, 2011, a riot erupted between 12 inmates on a recreational yard. Despite numerous orders from officers to stop, the inmates continued to fight with each other. Officers utilized pepper spray, chemical agent grenades, and seven less-lethal rounds to stop the riot. All inmates received medical examinations and were returned to their cells. Officers discovered inmate-manufactured weapons at the scene. There were no injuries to staff members.

## Disposition

No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

## Overall Assessment

The department's response was satisfactory in all critical aspects. The department adequately notified and consulted with the OIG on the incident. The OIG agreed with the hiring authority's decision not to refer the matter to the Office of Internal Affairs.

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| **2011-12-17** | **11-3067-RO** | **Suicide** | **Sufficient** |

## Facts of the Case

On December 17, 2011, officers found an inmate unresponsive in his assigned cell. The inmate had no cellmate and had an inmate-manufactured rope around his neck; however, the rope was not secured to anything else. Officers entered the cell, removed the rope, began life-saving measures, and called 911 to request an ambulance. Medical staff arrived and pronounced the inmate dead.

## Disposition

An autopsy revealed the inmate died of mechanical asphyxia. No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

## Overall Assessment

The department's response was satisfactory in all critical aspects. The department adequately notified and consulted with the OIG on the incident. The OIG concurred with the hiring authority's decision not to refer the matter to the Office of Internal Affairs.

# NORTH REGION

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| **2011-12-24** | **11-3163-RO** | **Inmate Serious/Great Bodily Injury** | **Sufficient** |

## Facts of the Case

On December 24, 2011, an officer held an inmate by his bicep while medical staff gave the inmate his medication. The inmate became agitated and turned his head in the direction of another officer. The officer holding the inmate placed his hand on the inmate's head and ordered him to face the door and swallow his medication. The inmate attempted to break away from the officer's grasp. The officer maintained his hold and forced the inmate to the floor. While on the floor, the inmate spit out his medication. An alarm was activated and officers immobilized the inmate's legs to prevent him from kicking. A nurse administered two court-ordered injections to the inmate. The inmate was escorted to the medical clinic for evaluation. A nurse completed a medical evaluation noting a laceration to the inmate's chin and minor abrasions. During the evaluation the inmate complained of neck pain. The inmate was transported to a local hospital to rule out possible internal head trauma. All tests were negative for fractures. The inmate received treatment for the laceration on his chin and returned to the institution.

## Disposition

No staff misconduct was identified; therefore, the matter was not referred to the Office of Internal Affairs for investigation.

## Overall Assessment

Overall, the department's response to the incident was sufficient. The department adequately notified and consulted with the OIG on the incident. The OIG concurred with the hiring authority's decision not to refer the matter to the Officer of Internal Affairs.

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| **2011-12-24** | **11-3184-RO** | **In-Custody Inmate Death** | **Sufficient** |

## Facts of the Case

On December 24, 2011, an inmate was pronounced dead at an outside hospital by the attending physician. The inmate had been transported to the hospital two or three days earlier after being found unconscious in his cell. The inmate remained in a vegetative state and on life support while at the hospital. The inmate's cellmate was transferred to the administrative segregation unit pending conclusion of an investigation into the cause of death.

## Disposition

An autopsy by the local coroner determined the inmate died of a drug overdose. No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

## Overall Assessment

The department's response was satisfactory in all critical aspect. The department provided adequate notification and consultation to the OIG regarding the incident. The OIG concurred with the hiring authority's decision not to refer the matter to the Office of Internal Affairs.

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| **2011-12-26** | **11-3187-RO** | **In-Custody Inmate Death** | **Sufficient** |

## Facts of the Case

On December 26, 2011, an inmate was pronounced dead by a physician at an outside hospital. The inmate had been taken to the hospital on December 21, 2011, after experiencing breathing problems during inmate dayroom activities.

## Disposition

The autopsy report identified the cause of death as anoxic brain injury. No staff misconduct was identified; therefore, the matter was not referred to Office of Internal Affairs for investigation.

## Overall Assessment

The department's response was satisfactory in all critical aspects. The department adequately notified and consulted with the OIG on the incident. The OIG concurred with the hiring authority's decision not to refer the matter to the Office of Internal Affairs.

# NORTH REGION

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| 2012-01-04 | 12-0028-RO | Inmate Serious/Great Bodily Injury | Sufficient |

## Facts of the Case

On January 4, 2012, a control booth officer released an inmate from his cell to pass out supplies to other inmates; however, the officer allegedly failed to lock and secure the inmate's cell door. While the inmate was passing out supplies, another inmate entered his cell and upon his return, the waiting inmate inflicted 31 stab wounds and a broken nose. Four canisters of pepper spray were used to stop the assault to no avail. An officer then used an expandable baton striking the aggressor inmate several times, effectively stopping the assault.

## Disposition

The case against the inmate was referred to the district attorney's office for prosecution. Staff misconduct was identified; therefore, the case was referred to the Office of Internal Affairs for investigation. An investigation was opened, which the OIG accepted for monitoring.

## Overall Assessment

Overall, the department's response to the incident was satisfactory in all critical aspects. The department adequately notified and consulted with the OIG on the incident. The hiring authority chose to refer the matter to the Office of Internal Affairs; the OIG concurred with this decision.

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| 2012-01-16 | 12-0165-RO | Other Significant Incident | Sufficient |

## Facts of the Case

On January 16, 2012, a parolee living in a trailer on institutional grounds was found hanging from the fence of his residence with a noose around his neck. He was located by parole agents and institutional staff who responded to his residence after his GPS device indicated a low battery. The institution watch commander called 911, and the sheriff and institution's investigative services unit responded. Medical personnel subsequently pronounced him dead. A suicide note was located at the scene.

## Disposition

According to a coroner's report the cause of death was determined to be suicide by hanging, which was consistent with all case reports prepared by department staff. No staff misconduct was identified; therefore, the matter was not referred to the Office of Internal Affairs for investigation.

## Overall Assessment

The department's overall response to the incident was adequate in all critical aspects. The department provided adequate notification and consultation to the OIG regarding the incident. The OIG concurred with the hiring authority's decision not to refer the matter to the Office of Internal Affairs.

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| 2012-01-17 | 12-0177-RO | In-Custody Inmate Death | Sufficient |

## Facts of the Case

On January 17, 2012, a single-celled, unresponsive inmate was discovered lying face down on his mattress during a security check. Officers entered the cell, discovered the inmate was not breathing, and initiated life-saving measures. Medical staff then arrived and the inmate was subsequently pronounced dead.

## Disposition

The coroner's report and autopsy concluded the inmate died due to accidentally ingesting a fatal amount of codeine and methadone. No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

## Overall Assessment

The department's response was satisfactory in all critical aspects. The OIG concurred with the decision not to submit the matter to the Office of Internal Affairs.

# NORTH REGION

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| **2012-02-20** | **12-0430-RO** | **Other Significant Incident** | **Sufficient** |

## Facts of the Case

On February 20, 2012, approximately 600 demonstrators protested outside an institution as part of the "occupy" movement. The department and multiple outside law enforcement agencies prepared a coordinated response and the demonstration occurred without incident. No force was utilized and protestors left peacefully.

## Disposition

No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

## Overall Assessment

The department's response was satisfactory in all critical aspects. The department provided adequate notification and consultation to the OIG regarding the incident. The OIG concurred with the hiring authority's decision not to refer the matter to the Office of Internal Affairs.

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| **2012-03-20** | **12-0680-RO** | **In-Custody Inmate Death** | **Insufficient** |

## Facts of the Case

On March 20, 2012, an inmate was found unresponsive on his cell floor. The inmate was transported to an outside hospital where he was pronounced dead. According to initial reports the death did not appear to be a homicide, and the inmate's cellmate claimed that the inmate fell from the top bed and struck his head. Although the cellmate was interviewed, he was allowed to reenter and clean the cell prior to the investigative services unit securing the area as a crime scene. Further, responding officers left the institution prior to submitting reports. The cellmate was later placed in administrative segregation pending further investigation.

## Disposition

It was determined that the inmate died from natural causes related to liver disease. Although potential staff misconduct was identified for allowing the cellmate to enter and clean the cell, the hiring authority did not refer the matter to the Office of Internal Affairs for an investigation. Instead, the hiring authority provided staff with training regarding crime scene preservation.

## Overall Assessment

The department's overall response to the incident was not adequate due to the department's failure to treat the incident as a potential crime scene and timely process the scene. Further, officers were permitted to leave the institution prior to completing incident reports. The department's notification and consultation to the OIG regarding the incident was sufficient. The OIG agreed with the decision not to submit the matter to the Office of Internal Affairs.

## Assessment Questions

- Was the HA's response to the critical incident appropriate?

  *The cell was not secured as a potential crime scene and the cellmate was allowed to return to the cell before it had been processed as a crime scene. In addition, the cellmate cleaned the cell and collected the dead inmate's belongings. Officers also failed to timely notify the investigative services unit regarding the incident, and were allowed to leave the institution prior to completeing reports.*

- Did the investigative services unit, or equivalent investigative personnel, adequately respond to the critical incident?

  *The investigative services unit was not going to interview inmates in adjoining cells until urged to do so by the OIG.*

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| **2012-03-20** | **12-0760-RO** | **Suicide** | **Sufficient** |

## Facts of the Case

On March 20, 2012 , an unresponsive inmate was discovered by his cell door during a security check. Officers activated the building alarm and, upon entering the cell of the single-celled inmate, discovered an inmate-manufactured rope around his neck, secured to the top of his cell door. Officers removed the noose and initiated life-saving measures. A paramedic pronounced the inmate dead.

# NORTH REGION

## Disposition

A coroner's report concluded the inmate's death was a suicide. No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

## Overall Assessment

The department's response was satisfactory in all critical aspects. The department adequately notified and consulted with the OIG on the incident. The OIG concurred with the hiring authority's decision not to refer the matter to the Office of Internal Affairs.

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| 2012-03-31 | 12-0734-RO | PREA | Sufficient |

## Facts of the Case

On March 31, 2012, an inmate alleged that while being restrained by officers, one of the officers inserted a finger into the inmate's rectum. The inmate further reported that he experienced anal bleeding. The department initiated protocols pursuant to the Prison Rape Elimination Act. The inmate was interviewed and taken to an outside hospital for examination.

## Disposition

At the end of the medical examination process, the inmate made a spontaneous statement indicating that he made up the allegation because he was upset after receiving a rules violation report. The medical results did not show any injury consistent with a sexual assault. No staff misconduct was identified; therefore, the matter was not referred to the Office of Internal Affairs for investigation.

## Overall Assessment

Overall, the department's response to the incident was satisfactory in all critical aspects. The department adequately notified and consulted with the OIG on the incident. The OIG concurred with the hiring authority's decision not to refer the matter to the Office of Internal Affairs.

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| 2012-04-22 | 12-0901-RO | Inmate Serious/Great Bodily Injury | Sufficient |

## Facts of the Case

On April 22, 2012, a riot involving more than 100 inmates occurred in the dining hall. Officers were able to control the incident with the use of pepper spray and less-lethal foam projectiles. An inmate alleged he was hit by a less-lethal round during the riot, sustaining a laceration to his ear. The inmate was medically evaluated and treated by an institution physician. The physician determined the inmate's injury did not appear to be consistent with an injury sustained from a less-lethal round. All inmates exposed to pepper spray were decontaminated and evaluated by medical staff.

## Disposition

No staff misconduct was identified; therefore, the matter was not referred to the Office of Internal Affairs for investigation.

## Overall Assessment

The department's overall response to the incident was adequate in all critical aspects. The department adequately notified and consulted with the OIG on the incident. The OIG agreed with the hiring authority's decision not to refer the matter to the Office of Internal Affairs.

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| 2012-04-23 | 12-0900-RO | In-Custody Inmate Death | Sufficient |

## Facts of the Case

On April 23, 2012, during the morning meal release, an inmate called for officers when he noticed something wrong with his cellmate. An officer responded to the cell and observed the inmate lying on the upper bunk unresponsive. Officers and medical staff arrived at the cell and began life-saving measures. The inmate was transported to the institution's treatment center where he was pronounced dead. The department's investigative services unit secured the cell as a crime scene.

## Disposition

The coroner's autopsy listed the cause of death as a benign tumor of the heart; manner of death was natural causes. No staff misconduct was identified; therefore, the matter was not referred to the Office of Internal Affairs for investigation.

# NORTH REGION

## Overall Assessment

The department's response was satisfactory in all critical aspects. The department adequately notified and consulted with the OIG on the incident. The OIG concurred with the hiring authority's decision not to refer the matter to the Office of Internal Affairs.

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| 2012-04-29 | 12-0939-RO | In-Custody Inmate Death | Sufficient |

## Facts of the Case

On April 29, 2012, officers heard an inmate call "man down" from a cell occupied by two inmates. Officers responded and observed an inmate who was unconscious and experiencing possible seizures. Medical staff responded and initiated life-saving measures. The inmate was transported to the institution's correctional treatment center where he was pronounced dead by the on-duty physician. The institution's investigative services unit secured and processed the cell as a possible crime scene, and conducted inmate interviews.

## Disposition

The department's investigative services unit ruled out the possibility of foul play. A review of the inmate's medical records revealed he suffered from multiple medical issues prior to his death; therefore, an autopsy was not conducted. No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation. However, the department's emergency medical response committee reviewed the incident response and determined additional training would be provided to a nurse in the utilization of oxygen machines.

## Overall Assessment

The department's response to the incident was sufficient. The investigative services unit promptly responded and secured the cell as a possible crime scene, processed evidence, interviewed potential witnesses, consulted with and assisted medical staff, and responded to the OIG's inquiries regarding the incident. The OIG concurred with the hiring authority's decision not to refer the matter to the Office of Internal Affairs.

# SOUTH REGION

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| **2011-11-09** | **11-2722-RO** | **Suicide** | **Sufficient** |

## Facts of the Case
On November 9, 2011, a single-celled inmate was found hanging in his cell from a sheet tied to an air vent. Officers initiated life-saving measures but were unsuccessful. The autopsy report confirmed the manner of death was suicide by hanging.

## Disposition
No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

## Overall Assessment
The OIG determined that the department adequately responded to the incident in all critical aspects. The department's notification and consultation with OIG regarding the incident was sufficient. The OIG concurred with the hiring authority's decision not to refer the matter to the Office of Internal Affairs.

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| **2011-12-04** | **11-2901-RO** | **In-Custody Inmate Death** | **Insufficient** |

## Facts of the Case
On December 4, 2011, an inmate notified officers that his cellmate was dead. Officers responded and initiated life-saving measures but were unsuccessful. The coroner's office determined the cause of death was strangulation. It was alleged the inmate murdered his cellmate.

## Disposition
The case against the inmate was referred to the district attorney's office for prosecution. Potential staff misconduct was identified; therefore, the case was referred to the Office of Internal Affairs for investigation. An investigation was opened, which the OIG accepted for monitoring.

## Overall Assessment
The Office of Internal Affairs failed to make an appropriate determination of the case by not identifying all misconduct involved in the case. In all other critical aspects, the OIG determined the department adequately responded to the incident, and provided sufficient notification and consultation to the OIG regarding the incident.

## Assessment Questions
- Did OIA Central Intake make an appropriate initial determination regarding the case?

  *There were significant case factors to indicate the two inmates were not compatible, but the administrative segregation lieutenant approved them to be housed in the same cell. This lieutenant was not added as a subject by the Office of Internal Affairs.*

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| **2011-12-10** | **11-2965-RO** | **Other Significant Incident** | **Sufficient** |

## Facts of the Case
On December 10, 2011, two inmates attacked another inmate on the exercise yard. Officers used less-lethal projectiles to stop the attack. A round missed the intended target, skipped off the ground, and inadvertently struck one of the attacking inmates in the mouth. The inmate was treated at a local hospital and later returned to the institution.

## Disposition
The case against the inmates was not referred to the district attorney's office for prosecution. No staff misconduct was identified; therefore, the matter was not referred to the Office of Internal Affairs for investigation.

## Overall Assessment
The department's overall response to the incident was adequate in all critical aspects. The department adequately notified and consulted with the OIG regarding the incident. The matter was not referred to the Office of Internal Affairs for investigation. The OIG concurred with this decision.

# SOUTH REGION

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| **2011-12-29** | **11-3202-RO** | **Inmate Serious/Great Bodily Injury** | **Insufficient** |

### Facts of the Case

On December 29, 2011, an inmate stumbled out of his cell and collapsed on the tier. The inmate was transported to a local hospital for evaluation where it was determined he sustained a concussion. It was determined the inmate was assaulted by his cellmate.

### Disposition

The case against the inmate was not referred to the district attorney's office for prosecution. Potential staff misconduct was identified, however, the matter was not referred to the Office of Internal Affairs. An incident report was not completed in a timely manner; therefore, the hiring authority imposed on-the-job training for the staff.

### Overall Assessment

The department's overall response to the incident was insufficient because it failed to promptly notify the OIG and failed to timely complete an incident report. The matter was not referred to the Office of Internal Affairs for investigation. The OIG concurred with this decision.

### Assessment Questions

- Was the OIG promptly informed of the critical incident?

  *The incident occurred in the afternoon of December 29, 2011. The OIG was not notified until the morning of December 30, 2011.*

- Was the critical incident adequately documented?

  *The incident occurred on December 29, 2011, and by the next day it had been determined that the inmate sustained a concussion as a result of being battered by his cellmate. The incident reports were not completed until one to three weeks after the incident. The department's policies and procedures require such incidents to be documented within 72 hours.*

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| **2012-05-29** | **12-1307-RO** | **In-Custody Inmate Death** | **Sufficient** |

### Facts of the Case

On May 29, 2012, an inmate informed an officer that his cellmate was down. An officer looked into the cell and saw that the cellmate was non-responsive. The alarm was sounded, the first inmate was removed from the cell, and life-saving measures were initiated on the cellmate. The cellmate was observed to have a coaxial cable on his neck, ligature marks on his neck, and, within the cell, officers found a pair of work gloves with blood on them. The cellmate was observed with significant blood coming from his face as well. The cellmate was transported to the correctional treatment area where life-saving measures continued until the cellmate was pronounced dead. Local law enforcement conducted a homicide investigation.

### Disposition

The case against the inmate was referred to the district attorney's office for prosecution. No staff misconduct was identified; therefore, the matter was not referred to the Office of Internal Affairs for investigation.

### Overall Assessment

Overall, the department's response to the incident was sufficient. The department informed the OIG about the incident in a timely and sufficient manner. The OIG agreed with the decision not to submit the matter to the Office of Internal Affairs.

# APPENDIX E                                                                    20
# DEADLY FORCE INVESTIGATIVE SUMMARIES
## CENTRAL REGION

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| 2011-01-26 | 11-0552-RO | Use of Deadly Force | Sufficient |

### Facts of the Case

On January 26, 2011, three inmates attacked a fourth inmate while on the exercise yard, hitting and kicking him about his body. The tower officer ordered the yard down, but two of the inmates continued their attack on the fourth inmate, who was now on the ground and stopped defending himself. The tower officer fired one lethal round as a warning into a wall, which had the desired effect and the inmates stopped their attack. The inmate sustained minor injuries.

### Disposition

The institution's executive review committee reviewed the matter and determined that the warning shot fired by the officer was within policy and training and the OIG concurred. The case against the inmates was referred to the district attorney's office for prosecution. No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

### Overall Assessment

Although the Office of Internal Affairs was notified of the incident, their practice is not to respond on scene to warning shots. The OIG was on site during the incident and responded to the scene. The OIG determined that the department adequately responded to the incident in all other critical aspects. The department adequately notified and consulted with the OIG. The hiring authority decided not to refer the matter to the Office of Internal Affairs, and the OIG agreed.

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| 2011-05-19 | 11-1378-RO | Use of Deadly Force | Sufficient |

### Facts of the Case

On May 19, 2011, three inmates allegedly attacked a fourth inmate while they were on the exercise yard. The three inmates continued to punch and kick the fourth inmate as the fourth inmate fell to the ground. A control booth officer fired one warning shot from his rifle causing the three inmates to briefly stop their attack. However, the three inmates resumed their attack on the fourth inmate. Officers utilized their batons on the three inmates, ending the attack. The four inmates suffered injuries consistent with fighting.

### Disposition

The case against the three inmates was referred to the district attorney's office for prosecution; however, the district attorney declined to prosecute. The warning shot was determined to be in accordance with departmental policy and no staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

### Overall Assessment

The department's response was satisfactory in all critical aspects. Although the Office of Internal Affairs was notified of the incident, their practice is not to respond on scene to warning shots. The OIG responded to the scene. The department adequately notified and consulted with the OIG regarding the incident. The OIG concurred with the hiring authority's decision not to refer the matter to the Office of Internal Affairs.

# CENTRAL REGION

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| **2011-06-08** | **11-1506-RO** | **Use of Deadly Force** | **Insufficient** |

## Facts of the Case

On June 8, 2011, an inmate became agitated and came out of his cell, yelling obscenities at officers as they tried to respond to a medical emergency. A sergeant ordered the inmate to get on the ground, but the inmate refused, assuming a fighting posture with fists held up. The sergeant and officers utilized pepper spray on the inmate, without effect. The inmate punched the sergeant in the face. They both fell to the ground, with the inmate on top of the sergeant. The inmate hit the sergeant's face and body. Two officers and a correctional counselor used batons on the inmate. The correctional counselor attempted to strike the inmate's upper left shoulder. However, because the inmate was moving, the correctional counselor struck the inmate's face, above the right eye, causing the inmate to stop the attack. The inmate received treatment on scene and was then taken to an outside hospital for treatment. The inmate's injuries were not life-threatening and he subsequently returned to the institution. The sergeant sustained a concussion, a contusion to the left eye and head area, and bruising.

## Disposition

The case against the inmate was referred to the district attorney's office for prosecution, which filed criminal charges. Potential staff misconduct was identified due to deficient documentation; therefore, the case was referred to the Office of Internal Affairs for investigation. The Office of Internal Affairs declined to investigate the matter, finding the use of force to have been within policy. The OIG concurred with this determination.

## Overall Assessment

Although the Office of Internal Affairs was notified of the incident, it did not identify this incident as a deadly force incident; therefore, it failed to respond to the institution to conduct an investigation. The department's overall response to the incident was adequate except that the officers involved failed to adequately document the uses of force. The department's notification and consultation with the OIG regarding the incident was sufficient. The hiring authority delayed referring the matter to the Office of Internal Affairs more than five months. The OIG concurred with the referral to the Office of Internal Affairs.

## Assessment Questions

- Did the OIA adequately respond to the incident?

  *Although the Office of Internal Affairs was notified of this incident, it did not identify this incident as a use of deadly force and failed to immediately open a deadly force investigation.*

- Was the critical incident adequately documented?

  *The incident was not adequately documented as reports authored by the involved staff failed to provide full and detailed statements regarding the incident.*

- Did the HA make a timely decision regarding whether to refer any conduct related to the critical incident to the OIA?

  *The discovery of potential misconduct occurred on June 8, 2011; however, the case was not referred to OIA Central Intake until November 22, 2011, over five months later.*

# CENTRAL REGION

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| **2011-06-30** | **11-1692-RO** | **Use of Deadly Force** | **Insufficient** |

## Facts of the Case

On June 30, 2011, officers observed inmates fighting in two separate areas of the yard. In the first fight, three inmates were stabbing a fourth inmate. After the inmates refused orders to get down, officers deployed three pepper spray grenades, pepper spray canisters, and three less-lethal rounds to stop the attack. The fourth inmate suffered approximately 15 puncture wounds to the stomach, back, legs, and arms. Several inmate-manufactured weapons were discovered near the attackers. In the second location, two inmates attacked a third inmate with weapons, ignoring orders to stop. An observation officer fired one lethal round as a warning shot. All inmates stopped fighting. One of the attackers stood and threw what was later identified as an inmate-manufactured weapon away from their location. The third inmate suffered a puncture wound to the back. All involved inmates survived.

## Disposition

No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

## Overall Assessment

The officers involved failed to adequately document the uses of force and nearly eight months passed while clarifications to the reports were gathered. The department's notification and consultation with the OIG regarding the incident was sufficient. Although the Office of Internal Affairs was notified, their practice is not to respond on scene to warning shots. The OIG did respond on scene. The OIG concurred with the hiring authority's decision not to refer the matter to the Office of Internal Affairs.

## Assessment Questions

- Was the critical incident adequately documented?

  *The incident was not adequately documented as reports authored by the involved custody staff failed to provide full and detailed statements regarding the incident. At the urging of the OIG, multiple requests for clarifications were issued. On February 21, 2012, nearly eight months later, the reports were reviewed by the use of force review committee and the use of force was determined to have complied with department policy.*

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| **2011-07-22** | **11-1872-RO** | **Use of Deadly Force** | **Sufficient** |

## Facts of the Case

On July 22, 2011, three inmates began attacking a fourth inmate on the exercise yard by striking the inmate in the face and upper torso. Officers used less-lethal rounds and pepper spray to stop the attack. The attacked inmate received a laceration with bruising and swelling to his left eye, and alleged the injury was caused by a less-lethal round. He was transported to a local hospital and returned to the institution the following day.

## Disposition

No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation. The institution did not sustain the inmate's allegation of being struck in the head with a less-lethal round due to a lack of evidence and the OIG concurred. The institutional executive review committee determined that the force used during the incident was within policy and training, and the OIG agreed.

## Overall Assessment

The department's response was satisfactory in all critical aspects. The department informed the OIG about the incident in a timely and sufficient manner, and the OIG responded on scene. The hiring authority decided not to refer the matter to the Office of Internal Affairs, and the OIG agreed.

# CENTRAL REGION

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| **2011-09-17** | **11-2377-RO** | **Use of Deadly Force** | **Sufficient** |

## Facts of the Case

On September 17, 2011, an off-duty parole agent accidentally shot himself in the leg during a training exercise at a public range.

## Disposition

The parole agent was taken to a local hospital where he was treated and released later that same day and returned to work one week after the accident. The local police department completed an investigation of the incident and took no further action. No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for further investigation.

## Overall Assessment

The OIG determined that the department adequately responded to the incident in all critical aspects. The department informed the OIG about the incident in a timely and sufficient manner. The hiring authority decided not to refer the matter to the Office of Internal Affairs, and the OIG agreed.

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| **2011-12-22** | **11-3122-RO** | **Use of Deadly Force** | **Sufficient** |

## Facts of the Case

On December 22, 2011, three inmates began fighting on the exercise yard. The inmates ignored orders to stop fighting. An officer fired several less-lethal rounds at the inmates in attempts to stop the fighting, but could not confirm the points of impact for all the rounds. One less-lethal round struck an inmate in the wrist area. A second officer also fired several less-lethal rounds but could not confirm the points of impact for all the rounds. The second officer fired a less-lethal round that struck a second inmate in the rib cage, but the second inmate continued fighting. The second officer then fired a less-lethal round at the second inmate's thigh, which inadvertently struck the second inmate in the head due to the continued movement by the inmates. Despite the shot and continued orders to stop, the inmates continued to fight. The second officer then fired less-lethal rounds that struck the third inmate in the thigh, arm, rib cage, and shoulder area, which finally caused all three inmates to stop fighting. The inmates were taken to an outside hospital for further treatment. The first inmate sustained fractures to his wrist and arm. The second and third inmates sustained minor injuries.

## Disposition

The institution's executive review committee determined the uses of force to be in compliance with departmental policy. No staff misconduct was identified; therefore, the matter was not referred to the Office of Internal Affairs for investigation.

## Overall Assessment

Other than delayed notification, the department adequately notified and consulted with the OIG regarding the incident. It is the department's practice not to respond on scene unless less-lethal force is intentionally used in a lethal manner or inadvertently causes potential lethal injury. The OIG responded to the scene. The OIG concurred with the hiring authority's decision not to refer the matter to the Office of Internal Affairs.

# CENTRAL REGION

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| **2012-01-23** | **12-0228-RO** | **Use of Deadly Force** | **Insufficient** |

## Facts of the Case

On January 23, 2012, two inmates began fighting on the exercise yard. After the inmates refused several orders to stop, an officer shot two less-lethal rounds to stop the fight. The officer fired the first round at the left leg of the first inmate. Because of the movement of the inmates, the round struck the first inmate in the upper back area, causing a laceration with swelling to the upper back of the inmate. The inmates continued to fight and a second officer used pepper spray to try to stop the fight. The inmates continued to fight and the first officer fired a second less-lethal round. This round was fired at the second inmate's right leg. However, due to the movement of the inmates, the round struck the second inmate in the head and cheek area. This caused the fight to stop. The second inmate sustained a fractured jaw and bleeding and swelling to the head that resolved without invasive medical treatment.

## Disposition

The case against the inmates was not referred to the district attorney's office. No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

## Overall Assessment

The Office of Internal Affairs did not identify this as a use of deadly force incident and, consequently, did not dispatch the deadly force investigation team, even though the inmate who was accidentally shot in the face sustained significant injuries and needed a higher level of care at an outside hospital. The department did, however, adequately notify and consult with the OIG. The OIG responded on scene due to potential unintentional deadly force. No staff misconduct was identified. The OIG concurred with the hiring authority's decision not to refer the matter to the Office of Internal Affairs.

## Assessment Questions

- Did the OIA adequately respond to the incident?

  *The Office of Internal Affairs did not identify this as a use of deadly force incident. The less-lethal round accidentally struck the inmate in the face and the inmate's injuries were significant enough to require a higher level of treatment at an outside hospital. Because the Office of Internal Affairs did not identify this as a use-of-deadly force incident, the deadly force investigation team was not dispatched for an on-scene response. Similar fact circumstances in the past have resulted in inmate deaths and thus justify a deadly force investigation team response in the opinion of the OIG.*

# CENTRAL REGION

| Incident Date | OIG Case Number | Deadly Force Investigation | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-10-25 | 11-2729-IR | 1. Use of Deadly Force | 1. Exonerated | No Penalty Imposed | INVESTIGATION **Insufficient** DISCIPLINE **Sufficient** |

## Facts of the Case

On October 25, 2011, two inmates began assaulting a third inmate on the exercise yard. After numerous orders to stop fighting were ignored, the observation officer fired three less-lethal rounds. The inmates continued to assault the third inmate who was held down by the first inmate. The second inmate was using an inmate-manufactured weapon on the third inmate. The officer then fired one lethal round to stop the attack. The round missed its intended target and the inmates continued their assault on the third inmate. A second officer deployed three gas grenades, which caused the inmates to finally stop their assault.

## Investigative Assessment

The Office of Internal Affairs failed to consult with the district attorney's office before conducting the compelled interview of the officer who fired the lethal round. The OIG repeatedly urged the special agents conducting the criminal and administrative investigations to interview other witnesses prior to taking the compelled statement of the officer who fired the lethal round in order to protect compelled statements obtained in the administrative case from being improperly used in a criminal case. However, the Office of Internal Affairs rejected the OIG's reasoning and obtained a compelled statement. Ultimately, these deficiencies had no negative impact because the district attorney's office did not file any criminal charges. A department attorney was not assigned to this matter.

## Assessment Questions

- Were all of the interviews thorough and appropriately conducted?

  *The OIG repeatedly urged the special agents conducting the criminal and administrative investigations to conduct the interviews of all the other witnesses prior to the taking of the compelled statement of the officer who fired the lethal round in order to protect compelled statements obtained in the administrative case from being improperly used in a criminal case. However, the Office of Internal Affairs rejected the OIG's reasoning and obtained a compelled statement.*

- Did OIA appropriately protect compelled statements obtained in the administrative case from being improperly used in a criminal case?

  *The OIG repeatedly urged the special agents conducting the criminal and administrative investigations to conduct the interviews of all the other witnesses prior to the taking of the compelled statement of the officer who fired the lethal round in order to protect compelled statements obtained in the administrative case from being improperly used in a criminal case. However, the Office of Internal Affairs rejected the OIG's reasoning and obtained a compelled statement.*

- Was the investigation thorough and appropriately conducted?

  *The OIG repeatedly urged the special agents conducting the criminal and administrative investigations to conduct the interviews of all the other witnesses prior to the taking of the compelled statement of the officer who fired the lethal round in order to protect compelled statements obtained in the administrative case from being improperly used in a criminal case. However, the Office of Internal Affairs rejected the OIG's reasoning and obtained a compelled statement.*

## Disposition

The department's independent Deadly Force Review Board found no violation of departmental policy. The hiring authority subsequently exonerated the officer and the OIG concurred.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

# NORTH REGION

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| **2012-03-06** | **12-0567-RO** | **Use of Deadly Force** | **Sufficient** |

## Facts of the Case

On March 6, 2012, a riot erupted on an exercise yard involving approximately 70 inmates. Officers ordered the inmates to get on the ground, but the inmates continued to fight. Officers utilized multiple bursts of pepper spray, dispersion grenades, and 41 less-lethal direct impact rounds to stop the riot. An officer who observed inmates being kicked and hit in the head fired three warning shots from a mini-14 rifle. The warning shots had the desired effect of stopping the fight.

## Disposition

No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs.

## Overall Assessment

Overall, the department's response to the incident was sufficient. The department adequately notified and consulted with the OIG on the incident. The OIG concurred with the hiring authority's decision not to refer the matter to the Office of Internal Affairs.

| Incident Date | OIG Case Number | Deadly Force Investigation | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| | | | | | INVESTIGATION |
| | | | | | **Sufficient** |
| **2011-03-25** | **11-1128-IR** | 1. **Discharge of Lethal Weapon** | 1. **Exonerated** | **No Penalty Imposed** | DISCIPLINE |
| | | | | | **Sufficient** |

## Facts of the Case

On March 25, 2011, an off-duty parole agent observed a stray pit bull attacking a puppy in a residential area. When the agent intervened, the pit bull ran toward the agent. The agent allegedly fired three shots at the dog from his personally-owned handgun. The dog continued to advance causing the agent to allegedly fire two additional rounds, striking and killing the pit bull. Outside law enforcement responded on scene and investigated the matter. The parole agent later notified his supervisor. The Office of Internal Affairs did not learn of the incident until after outside law enforcement responded and investigated. Therefore, the Office of Internal Affairs did not respond on scene. The OIG was also not immediately notified and, therefore, did not respond on scene. The OIG did monitor the case.

## Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition

The department's independent Deadly Force Review Board determined the parole agent was in full compliance with the department's use-of-force policy when he discharged his personal off-duty handgun in order to stop the attack of an aggressive and apparently dangerous dog. The parole agent was exonerated of all allegations and the OIG concurred.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

# NORTH REGION

| Incident Date | OIG Case Number | Deadly Force Investigation | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-04-27 | 11-1312-IR | 1.  Neglect of Duty<br>2.  Use of Deadly Force | 1.  Sustained<br>2.  Not Sustained | Counseling | INVESTIGATION<br>**Sufficient**<br>DISCIPLINE<br>**Sufficient** |

## Facts of the Case

On April 27, 2011, two parole agents allegedly fired their weapons at an attacking dog while attempting contact with a parolee at his girlfriend's residence.

## Investigative Assessment

The Office of Internal Affairs did not respond to the incident scene on April 27, 2011, the day of the shooting. Investigative activity by the Office of Internal Affairs began on May 4, 2011. In all other respects the investigation complied with department policy.

## Disposition

The Deadly Force Review Board found the discharge of a lethal round by the first parole agent was in compliance with the department's use-of-force policy. The hiring authority subsequently exonerated the parole agent and the OIG concurred. The Deadly Force Review Board found the discharge of a lethal round by the second parole agent was justified. However, the Deadly Force Review Board found the agent failed to take sufficient care and responsibility after the incident by failing to take reasonable measures to confirm that a lethal round had been discharged from her firearm. The hiring authority sustained this allegation against the second agent and issued a letter of instruction. The OIG concurred.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

# SOUTH REGION

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| **2012-01-02** | **12-0063-RO** | **Use of Deadly Force** | **Insufficient** |

## Facts of the Case

On January 2, 2012, a group of approximately 25 inmates started to run towards another group of inmates. The yard observation officer activated the yard alarm and ordered all inmates to get down. The inmates failed to get down. An officer used pepper spray in an unsuccessful effort to stop the advancing inmates. The yard observation officer fired a single lethal shot as a warning shot in a direction away from the inmates. The warning shot was effective in stopping all inmate movement.

## Disposition

The hiring authority did not refer the case against the inmates to the district attorney's office for prosecution. No staff misconduct was identified; therefore, the matter was not referred to the Office of Internal Affairs for investigation.

## Overall Assessment

Consistent with their practice, the Office of Internal Affairs did not dispatch a deadly force investigation team. The investigative services unit failed to obtain a public safety statement from the officer who used deadly force. Additionally, the investigative services unit failed to provide the required written confirmation to the deadly force investigation team regarding whether the deadly force was, in fact, a warning shot. The OIG did not respond on scene but monitored the case. The OIG concurred with the hiring authority's decision not to refer the matter to the Office of Internal Affairs.

## Assessment Questions

- Was the HA's response to the critical incident appropriate?

  *The institution investigative services unit failed to obtain a public safety statement from the officer who used deadly force.*

- Did the investigative services unit, or equivalent investigative personnel, adequately respond to the critical incident?

  *The investigative services unit failed to provide the required documentation to the deadly force investigation team regarding whether the deadly force was, in fact, a warning shot.*

- Was the critical incident adequately documented?

  *The department failed to obtain a public safety statement from the officer that used deadly force. Additionally, the investigative services unit failed to provide confirmation to the deadly force investigation team that the deadly force was, in fact, a warning shot.*

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| **2012-03-03** | **12-0521-RO** | **Use of Deadly Force** | **Sufficient** |

## Facts of the Case

On March 3, 2012, a tower officer fired a warning shot from a rifle in an attempt to stop a riot involving ten inmates. An officer on the exercise yard fired a 40mm round that missed the targeted inmate and did not strike anyone. Other officers also used baton strikes and deployed pepper spray and pepper spray grenades during the incident. Several inmates suffered minor injuries as a result of the fighting and were medically treated at the institution. No officers were injured.

## Disposition

No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

## Overall Assessment

The department's response was satisfactory in all critical aspects. Consistent with their practice, the Office of Internal Affairs did not dispatch a deadly force investigation team. The department adequately notified and consulted with the OIG on the incident. The OIG did not respond on scene but monitored the case. The OIG concurred with the hiring authority's decision not to refer the matter to the Office of Internal Affairs.

# SOUTH REGION

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| **2012-03-30** | **12-0733-RO** | **Use of Deadly Force** | **Sufficient** |

## Facts of the Case

On March 30, 2012, approximately 12 inmates engaged in a riot on the exercise yard. Officers utilized pepper spray, 4 pepper spray blast grenades, 19 direct impact rounds from a less-lethal weapon, and 2 warning shots from a Mini-14 rifle in order to stop the incident. No inmates were seriously injured, although one inmate was transported to an outside hospital due to a broken nose. There were no injuries to staff. Four inmate-manufactured weapons were recovered.

## Disposition

The institution's use of force committee determined the two lethal warning shots were within policy. No staff misconduct was identified; therefore, the matter was not referred to the Office of Internal Affairs for investigation.

## Overall Assessment

Overall, the department's response to the incident was sufficient. Although the Office of Internal Affairs was notified, their practice is not to respond to warning shots. The department adequately notified and consulted with the OIG on the incident. The OIG responded on scene. The OIG concurred with the hiring authority's decision not to refer the matter to the Office of Internal Affairs.

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| **2012-05-27** | **12-1309-RO** | **Use of Deadly Force** | **Sufficient** |

## Facts of the Case

On May 27, 2012, officers observed three inmates attacking one inmate near the handball courts in front of a housing unit. The attacked inmate was lying on the ground screaming as two inmates were kicking him in the head. During the assault, nine less-lethal rounds were utilized with no effect. The observation tower officer fired one lethal round from his Mini-14 rifle as a warning shot. The inmates did not stop the assault, causing the observation officer to fire a second warning shot from the rifle. The attacking inmates stopped the assault after the second shot.

## Disposition

No staff misconduct was identified; therefore, the matter was not referred to the Office of Internal Affairs for investigation.

## Overall Assessment

Overall, the department's response to the incident was sufficient. Although the Office of Internal Affairs was notified, their practice is not to respond on scene to warning shots. The department provided adequate notification and consultation to the OIG regarding the incident. The OIG responded on scene. The hiring authority chose not to refer the matter to the Office of Internal Affairs; the OIG concurred with this decision.

# SOUTH REGION

| Incident Date | OIG Case Number | Deadly Force Investigation | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-03-23 | 11-0894-IR | 1. Discharge of Lethal Weapon | 1. Exonerated | No Penalty Imposed | INVESTIGATION **Sufficient** <br> DISCIPLINE **Sufficient** |

### Facts of the Case
On March 23, 2011, a parole agent assigned to a task force attempted to apprehend a parolee-at-large suspected of involvement in multiple robberies. The parolee-at-large, who was in the driver's seat of his vehicle, refused numerous orders to show his hands and exit the vehicle. The parole agent observed the parolee-at-large reach down to the floorboard, at which time the parole agent fired at and shot the parolee-at-large. Outside law enforcement officers transported the parolee-at-large to a local hospital where he was treated for his injuries.

### Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures. The Office of Internal Affairs deadly force investigation team and the OIG responded on scene to the incident.

### Disposition
The department's independent Deadly Force Review Board found no violation of policy, and the hiring authority subsequently exonerated the parole agent. The OIG concurred in the determination by the board.

### Disciplinary Assessment
The department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Deadly Force Investigation | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-05-31 | 11-1592-IR | 1. Discharge of Lethal Weapon | 1. Pending | Pending | INVESTIGATION **Sufficient** <br> DISCIPLINE **Pending** |

### Facts of the Case
On May 31, 2011, while an observation booth officer was preparing to end his shift, he removed his firearm from his holster and accidentally discharged one round into a wall.

### Investigative Assessment
Overall, the department substantially complied with policies and procedures. The Office of Internal Affairs dispatched a deadly force investigation team to the incident. The OIG also responded on scene.

### Disposition
The department's independent Deadly Force Review Board found that the discharge of the round was not in compliance with the department's use-of-force policy. The case was referred to the hiring authority for further action.

### Disciplinary Assessment
Pending

# SOUTH REGION

| Incident Date | OIG Case Number | Deadly Force Investigation | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-08-26 | 11-2180-IR | 1. Discharge of Lethal Weapon | 1. Exonerated | No Penalty Imposed | INVESTIGATION **Sufficient** <br> DISCIPLINE **Sufficient** |

### Facts of the Case
On August 26, 2011, a parole agent fired a single shot from his duty weapon at a charging pit bull at a parolee's residence.

### Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures. The Office of Internal Affairs dispatched its deadly force investigation team to the scene. The OIG did not respond on scene but monitored the case.

### Disposition
The department's independent Deadly Force Review Board found that the discharge of the lethal round was in compliance with the department's use-of-force policy. The hiring authority subsequently exonerated the officer and the OIG concurred.

### Disciplinary Assessment
Overall, the hiring authority substantially complied with the department's policies and procedures.

| Incident Date | OIG Case Number | Deadly Force Investigation | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-11-01 | 11-2688-IR | 1. Discharge of Lethal Weapon | 1. Exonerated | No Penalty Imposed | INVESTIGATION **Sufficient** <br> DISCIPLINE **Sufficient** |

### Facts of the Case
On November 1, 2011, two parole agents went to a house to locate a parolee in connection with a homicide investigation. The parole agents encountered an 80-pound pit bull, which growled and charged at one of the parole agents. The pit bull got within one foot of the parole agent and, fearing for his safety, the parole agent fired one round from a firearm. The round did not strike the dog.

### Investigative Assessment
The Office of Internal Affairs conducted a timely and thorough investigation. The Office of Internal Affairs dispatched its deadly force investigation team on scene. The OIG also responded on scene.

### Disposition
The department's independent Deadly Force Review Board found the discharge of the lethal round was in compliance with the department's use-of-force policy. The hiring authority subsequently exonerated the parole agent and the OIG concurred.

### Disciplinary Assessment
The hiring authority substantially complied with departmental policies and procedures.

# APPENDIX F                                                    4
# POST APPEAL CASE SUMMARIES
## CENTRAL REGION

| Incident Date | OIG Case Number | Allegations | Findings | Rating |
|---|---|---|---|---|
| 2010-01-01 | 10-0594-IR | 1. **Dishonesty** <br> 2. **Other Failure of Good Behavior** | 1. **Sustained** <br> 2. **Sustained** | **Insufficient** |

## Facts of the Case

On January 1, 2010, a correctional counselor allegedly became drunk and disorderly in a hotel room and allegedly battered his wife, causing physical injury. The correctional counselor was also allegedly dishonest to outside law enforcement when questioned about the alleged incident.

## Disposition

The hiring authority determined there was sufficient evidence to sustain the allegations and dismissed the correctional counselor. The correctional counselor filed an appeal with the State Personnel Board. The department and the correctional counselor entered into a settlement agreement, wherein the penalty was reduced to a 90 working-day suspension with back-pay and the correctional counselor withdrew his appeal. The OIG did not concur with the settlement agreement.

## Disciplinary Assessment

The hiring authority relied upon the department attorney's advice that the case should be settled, due to witness and evidentiary issues. The department attorney contended that the correctional counselor's state of intoxication, the alleged victim's refusal to cooperate, and one witness's unavailability created insurmountable challenges. These issues are common issues in domestic violence cases. Therefore, the OIG did not concur with that assessment and believed the advice to be legally insufficient. The OIG found no justification to support awarding back-pay to the correctional counselor.

| Incident Date | OIG Case Number | Allegations | Findings | Rating |
|---|---|---|---|---|
| 2010-03-15 | 10-2186-IR | 1. **Dishonesty** <br> 2. **Insubordination** <br> 3. **Neglect of Duty** <br> 4. **Misuse of State Equipment or Property** <br> 5. **Discourteous Treatment** | 1. **Sustained** <br> 2. **Sustained** <br> 3. **Not Sustained** <br> 4. **Not Sustained** <br> 5. **Not Sustained** | **Insufficient** |

## Facts of the Case

On March 15, 2010, a captain was allegedly discourteous to fellow employees by making demeaning comments. The captain allegedly neglected his duty by improperly processing confidential documents. He was also allegedly insubordinate when he instructed an employee to take action in a manner that contradicted prior directives that the captain had just received. It was further alleged that the captain misused state property by directing staff to copy numerous confidential files. He also allegedly neglected his duty by removing those confidential files from the institution. Finally, the captain was allegedly dishonest when questioned by the warden about those documents, and insubordinate when he failed to return the documents as directed.

## Disposition

The hiring authority sustained the allegations that the captain was insubordinate and made misleading statements to the warden. The hiring authority determined there was insufficient evidence to sustain any of the remaining allegations. The hiring authority demoted the captain to correctional counselor II. The captain filed an appeal with the State Personnel Board. The department entered into a settlement agreement with the captain while the matter was pending before the State Personnel Board. The department agreed to modify the penalty from a permanent demotion to a temporary demotion for a period of 18 months. The department also agreed to strike the finding of dishonesty from the disciplinary action. The captain agreed to dismiss his appeal and waive all claims against the department, including back pay and benefits. The OIG concurred with the modification of the penalty because the demotion remained. Although it was no longer a permanent demotion, the temporary period of 18 months was still significant enough to deter future similar misconduct. However, the OIG did not concur with striking the finding of dishonesty from the disciplinary action.

# CENTRAL REGION

## Disciplinary Assessment

After the department had advised the OIG of the settlement terms, the department struck the dishonesty allegation from the disciplinary action. This was a major change in the findings with which the OIG did not concur.

# SOUTH REGION

| Incident Date | OIG Case Number | Allegations | Findings | Rating |
|---|---|---|---|---|
| 2006-11-23 | 06-4053-IR | 1. **Dishonesty**<br>2. **Neglect of Duty**<br>3. **Other Failure of Good Behavior**<br>4. **Discourteous Treatment**<br>5. **Retaliation** | 1. **Sustained**<br>2. **Sustained**<br>3. **Sustained**<br>4. **Sustained**<br>5. **Sustained** | **Insufficient** |

## Facts of the Case

On November 23, 2006, an officer in the mental health unit allegedly refused the repeated requests of an inmate to leave the cell light on because the inmate was hallucinating and suicidal. The officer also allegedly told the inmate to "shut up and go to sleep" and "go ahead and hang yourself." The inmate attempted suicide within the hour. The officer's partner in the unit reported the misconduct. The subject officer thereafter allegedly threatened and attempted to intimidate the reporting officer by demanding a copy of the officer's report and asking the officer if he was a "snitch," if he was "scared," and if he was "a pussy." In addition, the subject officer allegedly attempted to intimidate the inmate from accurately reporting the incident. About two weeks after the suicide attempt, the subject officer, who had been removed from the mental health unit, was allegedly seen in the unit without permission back-dating notations on the suicidal inmate's bed-card in an effort to discredit the inmate.

## Disposition

The hiring authority determined there was sufficient evidence to sustain the allegations and dismissed the officer. The officer filed an appeal with the State Personnel Board. After hearing, the State Personnel Board modified the dismissal to a 30 work-day suspension. The department filed a writ of mandate with the Superior Court contesting the State Personnel Board's decision. The Superior Court granted the writ in the department's favor. The officer appealed the Superior Court's ruling. The Court of Appeal upheld the Superior Court's ruling and the officer was finally dismissed.

## Disciplinary Assessment

The hiring authority sufficiently complied with departmental policies and procedures; however, the department attorneys failed to comply with policy in many aspects. Initially, after receiving the State Personnel Board's decision modifying the penalty, the department attorney who handled the hearing believed the department should not file a writ as it would not be successful. After OIG intervention, the department filed a writ, although not until eight months after the State Personnel Board's decision was issued. Furthermore, the department attorney and supervisor who were handling the writ and appeal took the position that the OIG had no authority to monitor the process and did not consult with the OIG.

| Incident Date | OIG Case Number | Allegations | Findings | Rating |
|---|---|---|---|---|
| 2009-07-25 | 09-3541-IR | 1. **Dishonesty**<br>2. **Other Failure of Good Behavior** | 1. **Sustained**<br>2. **Sustained** | **Insufficient** |

## Facts of the Case

On July 25, 2009, a sergeant was arrested by an outside law enforcement agency for allegedly assaulting her boyfriend, who was also a sergeant in the department. At the time of the incident, a third sergeant and a correctional counselor were present and provided memorandums to the department regarding the incident. Based on these memorandums, it was alleged that the sergeant who was assaulted fabricated the incident and filed a false police report. It was further alleged that the sergeant who committed the assault and the correctional counselor were dishonest during their investigatory interviews with the Office of Internal Affairs when they were asked about the details of the incident.

## Disposition

The hiring authority determined that there was insufficient evidence to sustain the allegation that the sergeant who was assaulted filed a false police report. The hiring authority sustained the allegations that the sergeant who was arrested engaged in domestic violence and was dishonest, and that the correctional counselor was dishonest. Both employees were dismissed and filed appeals with the State Personnel Board. At the State Personnel Board hearing for the correctional counselor, the department settled the case for a one-year suspension without pay and the ability to return to her position. The OIG did not concur with this settlement. The sergeant elected to go forward with her State Personnel Board hearing. The sergeant prevailed at the hearing and was reinstated to her position.

# SOUTH REGION

### Disciplinary Assessment

Overall, the hiring authority substantially complied with the department's policies and procedures; however, the department attorney did not. The department attorney did not properly prepare for the State Personnel Board hearings due to failure to consolidate the hearings for judicial economy and brevity of presenting evidence. Also, the department attorney failed to adequately present the case at the State Personnel Board hearing. The department attorney failed to list the critical witnesses in the pre-hearing settlement conference statement and was precluded from calling them for the hearing. Further, the department attorney failed to lay the foundation for the relationships between the subjects and witnesses of case, to establish bias in their testimony, and was unable to present evidence to impeach their testimony when they changed their prior statements. The department attorney also narrowly focused the actions to each individual instead of explaining the total context of the conduct of the sergeant and correctional counselor.