# Exhibit 15



# OFFICE OF THE INSPECTOR GENERAL SEMI-ANNUAL REPORT

JULY - DECEMBER 2011

OFFICE OF THE
INSPECTOR GENERAL

ROBERT A. BARTON
INSPECTOR GENERAL

STATE OF CALIFORNIA

APRIL 2012

# CONTENTS

FOREWORD ................................................................................................. 1

SUMMARY OF MONITORING ACTIVITIES ........................................ 2

THE EMPLOYEE MISCONDUCT PROCESS ........................................ 3

MONITORING THE INVESTIGATIVE PHASE ..................................... 5

    *Monitoring Central Intake* ................................................................. 5

    *Allegation Type Distribution* ............................................................. 6

    *Monitoring the Investigation* ............................................................. 7

MONITORING THE DISCIPLINARY PHASE ....................................... 8

    *Findings and Penalties* ...................................................................... 8

    *Monitoring Appeals* ........................................................................... 8

MONITORING CRITICAL INCIDENTS ................................................. 9

    *Monitoring Deadly Force Investigations* ....................................... 11

CONCLUSION ......................................................................................... 13

APPENDICES
(LISTED BY GEOGRAPHICAL REGION) .......................................... 15

    *A – Investigative Phase Case Summaries* ...................................... 15

    *B – Disciplinary Phase Case Summaries* ....................................... 55

    *C – Combined Phase Case Summaries* ........................................... 99

    *D – Critical Incident Case Summaries* ........................................ 220

    *E – Post Appeal Case Summaries* ................................................. 243

# FOREWORD

This fourteenth semi-annual report covers the time period of July to December 2011. I was appointed Inspector General in the middle of that period, on August 29, 2011. Prior to my appointment, the Legislature revised the statutory authority and mandates for the Office of the Inspector General (OIG), but kept intact all of the requirements for the Bureau of Independent Review's (BIR) oversight of the California Department of Corrections and Rehabilitation (CDCR). Pursuant to Penal Code section 6133 et. seq., the OIG is required to report semi-annually on its oversight of CDCR's Office of Internal Affairs investigations and the disciplinary process. As the result of statutory revisions impacting other OIG mission areas, the OIG was reorganized and the former bureau designations were eliminated. The staff and resources in our regional offices that were previously known as the "BIR" now conduct the same function under the title of the "Discipline Monitoring Unit" (DMU).

With the successful conclusion of the *Madrid* litigation and federal oversight of CDCR internal affairs investigations, it is even more imperative that the OIG provide an independent assessment of the employee discipline process. It is our goal to assist in CDCR's continued improvement in this area and the avoidance of future outside intervention. In addition, these reports provide critical public transparency for our State correctional system.

Finally, we have modified our reporting format in response to feedback from our stakeholders. Historically, the semi-annual reports focused on the differing roles of various CDCR offices. The previous format focused on the agents and managers of the Office of Internal Affairs (OIA), the attorneys in the Employment Advocacy Prosecution Team (EAPT), and the wardens and chief executive officers as hiring authorities. In this report, we use a new format. While the areas of critique remain the same, we now assess the CDCR as a whole in the two distinct phases of monitoring. Therefore, cases are now reported at the end of the Investigative Phase and again at the end of the Disciplinary Phase; or if the matter was resolved entirely within the reporting period, there is a combined assessment. In addition, our past reports were devoid of the observations leading to deficient assessments. In this new format, we assess the sufficiency of the case, based on CDCR's overall handling of the case, and do not differentiate between the different parts of the department. Our assessment of the case is based on both process *and* outcome. We have also attempted to provide the reader with a more extensive description of the monitoring process as a whole.

We look forward to feedback from our readers and strive to publish reports that meet our statutory mandates as well as offer all concerned parties a useful tool for improvement. For more information about the Office of the Inspector General, including all reports, please see our website at www.oig.ca.gov.

— ROBERT A. BARTON, INSPECTOR GENERAL

# SUMMARY OF MONITORING ACTIVITIES

The Office of the Inspector General's (OIG) Discipline Monitoring Unit (DMU), [formerly known as the Bureau of Independent Review (BIR)] is responsible for monitoring the California Department of Corrections and Rehabilitation's (CDCR or department) employee disciplinary process. The OIG monitors and assesses the department's internal affairs investigations of alleged employee misconduct, as well as the disciplinary decisions related to sustained employee misconduct and any subsequent appeal. We monitor both administrative and criminal investigations conducted by the department. In addition, we monitor and assess the department's response to critical incidents. We publish our assessment of monitored cases and critical incidents in our semi-annual reports.

This report assesses the same adherence to department policies and critical timelines in the employee discipline process as previous reports, but presents them in a new format. In prior reports, the OIG reported on monitored cases where the investigative phase was complete, discipline had been imposed, and if an appeal was filed, the case was reported separately only if the penalty changed significantly. The previous format focused on the actions taken by CDCR's agents and managers in the Office of Internal Affairs (OIA), the attorneys in the Employment Advocacy Prosecution Team (EAPT), and the hiring authorities (wardens and chief executive officers). In this report, we assess the sufficiency of the case based on how the department as a whole performed, and do not differentiate between the separate parts of the department. Our assessment of the case is based on both process *and* outcome.

We now report cases in two separate phases. First is the investigative phase. If the investigation of a case has concluded, either by submission to the department for disciplinary findings in an administrative case or to the district attorney's office for review in a criminal case, it is reported in the Investigative Phase table (see appendices). Second is the disciplinary phase. In this phase, cases are reported in the Disciplinary Phase table once the department makes a decision on imposing discipline. If a case is appealed, the case is not reported until the conclusion of the appeal process.

This report utilizes the revised format to provide an initial assessment of 330 monitored cases and 59 monitored critical incidents that reached a stage of completion allowing them to be assessed and published. There were also 50 monitored cases previously reported that have now completed the appeal process with the State Personnel Board (SPB). These cases are described and a table is provided discussing only those that were assessed as insufficient. Going forward, the stand alone appeals portion of the report will eventually be eliminated as the new format encompasses future appealed cases into the Disciplinary Phase table.

> This report documents *330* monitored cases, *59* monitored critical incidents and *50* monitored cases previously reported.

Most cases monitored by the OIG involve allegations of administrative misconduct. This includes cases for which the department conducts an internal affairs investigation and then determines if disciplinary action is appropriate, as well as direct action cases wherein the department determines there is enough evidence to impose discipline without an internal affairs investigation, or with a subject only interview (SOI).

This report provides an assessment of 281 administrative cases. These assessments include 196 full administrative investigation cases, 16 direct action cases where the department conducted an SOI and 59 direct action cases without additional investigation or interviews.
In addition, these assessments include ten administrative deadly forces cases that do not necessarily include misconduct allegations, but require an investigation due to the use of deadly force.

The DMU also assessed 49 criminal investigation cases in this report, including 4 criminal deadly force investigations. The number of criminal cases reported in this reporting period decreased from the prior reporting period by six percent, while the number of administrative cases increased by six percent.

## THE EMPLOYEE MISCONDUCT PROCESS

Whenever the department reasonably believes that employee misconduct may have occurred, the matter is forwarded to the OIA's central intake panel for evaluation. It is normally the responsibility of the hiring authority to request an investigation in a timely manner. The hiring authority may be the warden, or in cases of medical personnel, the chief medical officer or chief executive officer within the prison. The OIA also has the authority to independently initiate investigations. After discussions with the department, the OIG has incorporated a 45-day assessment period from the date the potential misconduct is discovered as the reasonable time limit to refer the matter for investigation.

The OIA's central intake panel determines if an internal affairs investigation is warranted, whether enough information exists for the department to proceed with a disciplinary action without an investigation, if a subject only interview is needed, or if no further action is warranted. The OIG participates in the central intake panel meetings to monitor the process, provide recommendations on central intake panel determinations, and determine which cases the OIG will accept for monitoring. The following table is the OIG guide for which cases we accept for monitoring.

| Madrid-Related Criteria | OIG Monitoring Threshold |
|---|---|
| Use of Force | Use of force resulting in, or which could have resulted in, serious injury or death or discharge of a deadly weapon when the discharge does not constitute a warning shot. |
| Dishonesty | Perjury; material misrepresentation in an official law enforcement report; failure to report a use of force resulting in, or which could have resulted in, serious injury or death; or material misrepresentation during an internal affairs investigation. |
| Obstruction | Intimidating, dissuading or threatening witnesses; retaliation against an inmate or against another person for reporting misconduct; or the destruction or fabrication of evidence. |
| Sexual Misconduct | Sexual misconduct prohibited by Penal Code section 289.6. |
| High Profile | Cases involving alleged misconduct by high-ranking department officials; misconduct by any employee causing significant risk to institutional safety and security, or for which there is heightened public interest, or which results in significant injury or death to an inmate, ward, or parolee (excluding medical negligence). |
| Abuse of Position or Authority | Unorthodox punishment or discipline of an inmate, ward, or parolee; or purposely or negligently creating an opportunity or motive for an inmate, ward, or parolee to harm themselves (i.e. suicide), one another, or staff. |
| Criminal Conduct | Trafficking of items prohibited by the Penal Code; or criminal activity that, if convicted, would prohibit a peace officer from carrying a firearm (e.g. - all felonies and certain misdemeanors/wobblers, such as those involving domestic violence, brandishing a firearm, and assault with a firearm). |

Once a case is accepted for monitoring, it is followed through the entire process. If an internal affairs investigation is conducted, the assigned OIG Special Assistant Inspector General (SAIG) consults with the investigators and the department attorney, if one is designated, on the initial plan of investigation. The SAIG attends key interviews and site visits, reviews evidence, and provides recommendations regarding the investigative report. The report also must be reviewed and feedback provided by the department attorney within 21 days of being completed by the OIA. It is then delivered to the hiring authority who determines what, if any, discipline will be imposed on an employee. This completes the Investigative Phase for purposes of OIG monitoring.

The hiring authority is required to review the report within 14 days of delivery. Policy requires the hiring authority to consult with the assigned SAIG if the case is OIG monitored, and the department attorney if one is designated, on their discipline decision. The department attorney is required to consult with the assigned SAIG regarding legal issues and provide any disciplinary documents drafted on behalf of the department for SAIG review. After the hiring authority and the department attorney have decided on discipline, the SAIG advises whether they concur that the appropriate penalty has been imposed based on department policy. If the SAIG believes the hiring authority's decision is unreasonable, the matter may be elevated to the next supervisory level through a process called Executive Review. The department's case-designated attorney assigned to provide legal representation for the case may also invoke Executive Review if they believe the hiring authority's decision is unreasonable.

Employees who are disciplined have a right to challenge the discipline imposed against them by filing an appeal with the State Personnel Board, an independent state agency. The OIG continues to monitor cases through this appeal process. During this process, a case can be concluded by

way of settlement (a mutual agreement between the department and employee), a unilateral action by one party withdrawing the appeal or disciplinary action, or SPB decision after a contested hearing. In cases where the SPB decision is subsequently appealed in court, the OIG continues to monitor the case until final resolution.

# MONITORING THE INVESTIGATIVE PHASE

The investigative phase generally starts with the request for investigation. However, the OIG's monitoring in some instances may precede the referral to the OIA central intake panel. For example, if the OIG monitors a critical incident in which potential misconduct or negligence played a part, the OIG may have already provided a recommendation to the department or the hiring authority to request an internal affairs investigation. In addition, there are a small number of cases described by OIA as "exigent" wherein an investigation may be initiated before there is a formal presentation to the central intake panel. If an exigent case meets our criteria for monitoring, the OIG does not wait for central intake panel to open the case before we start monitoring. These cases include those where a threat to institutional safety or security is imminent and OIA or prison personnel must immediately take action. The department is required to notify the OIG of such cases so we can make a determination of whether or not to initiate our monitoring. However, the bulk of monitored cases are accepted through the central intake process.

## Monitoring Central Intake

The department's central intake panel meets weekly to review the referrals for investigation submitted by the entire department. Within the OIG's DMU are SAIGs assigned to the Headquarters Unit who attend the weekly central intake meetings and also review the investigation referrals. The SAIG also makes recommendations to the department regarding whether the case should be opened for investigation and the level of investigation needed. The SAIG also informs the department which cases the OIG will accept for monitoring. In this six-month reporting period, the OIG reviewed approximately 1,268 cases that were forwarded to the department's central intake panel for evaluation. Currently, the OIG accepts for monitoring about 24 percent of the cases opened by the department each month. This is a slight increase from the prior reporting period.

> The OIG reviewed 1,268 cases and accepted for monitoring about 24 percent of the cases opened by OIA.

One key factor we monitor at the central intake stage is the timeliness of the department action. All investigations have a deadline for taking disciplinary action which prohibits the department from taking action beyond a specified date. For example, in administrative investigations of correctional officers, the deadline for taking disciplinary action is generally one year from the date of discovery. This makes it critical for matters to be referred for investigation, and opened if appropriate, in a timely manner. It is also critical that the department have guidelines for timely referral. The department currently has no standard for referring cases for investigation. The OIG uses 45 days as a reasonable timeframe for the hiring authority to refer cases to the central intake panel to open an investigation.

The hiring authority timely referred 80 percent of the cases in this report to the central intake panel. Although department policy requires the central intake panel to make a determination on a particular case within 30 days of referral to the Office of Internal Affairs, only 70 percent of the cases considered had timely determinations. Each delay at the start of the process impacts the ability of the investigator to complete an investigation in time to provide the required 21 days for review by the department attorney, and the subsequent 14 days for review by the hiring authority before the deadline expires. If each component of the process meets its timeline, there are 255 days, or 8 ½ months, for the investigator to complete an administrative investigation.

**Allegation Type Distribution**

Consistent with prior reporting periods, the OIG focused a large portion of its monitoring activities during this reporting period on cases involving six allegation types: (1) improper use of force; (2) dishonesty in official reports or during investigative interviews; (3) failure to report misconduct; (4) overly familiar conduct between employees and inmates, wards, or parolees; (5) sexual misconduct; and (6) contraband trafficking. The first three types of allegations are of concern because, if true, serious civil rights violations may have occurred. The last three types of allegations are of concern because they impact the safety and security of a correctional institution and contribute to the exploitation of a potentially vulnerable population in the custody of the department. Additionally, these are core issues that were the focus of the *Madrid* remedial orders.

The following chart illustrates the number of times each of the six types of allegations were at issue in the 330 cases assessed in this report. As illustrated, the number of dishonesty and use-of-force allegations, conduct central to the concerns in the *Madrid* lawsuit, decreased during this period.

It is important to note that a single case often addresses many allegations of misconduct, thus, the number of allegations may exceed the number of cases reported. Additionally, the cases monitored by the OIG also include other allegations not contained in the six listed above.



**Allegation Type Distribution**

## Monitoring the Investigation

Once a case is accepted by the OIG for monitoring it is assigned to the region where the investigation will take place. To provide real-time monitoring, the OIG's DMUs are co-located with CDCR's OIAs throughout the state. The North Region offices are in Rancho Cordova, the Central Region offices are in Bakersfield, and the South Region offices are in Rancho Cucamonga. A SAIG is assigned by the regional supervisor to monitor all critical stages. If an internal affairs investigation is conducted, the assigned SAIG consults with the investigator and the department attorney, if one is designated, on the initial plan of investigation. The SAIG attends key interviews and site visits, reviews evidence, and provides recommendations regarding the investigative report before it is finalized. On administrative cases, the report must also be reviewed and feedback provided to the investigator by the department attorney within 21 days of the report being completed by the OIA. The report is then delivered to the hiring authority who determines whether the investigation is complete and what, if any, discipline will be imposed on an employee. If the investigation is deemed incomplete, the hiring authority can request additional investigation. The hiring authority is required to review the report within 14 days of delivery.

If a criminal investigation is monitored, the SAIG attends key interviews and site visits, reviews evidence, and provides recommendations regarding the investigation. At the completion of the investigation, the SAIG meets with the assigned investigator and the investigator's supervisor to determine if probable cause exists that a crime has occurred. If probable cause exists, the matter will be referred to the district attorney for prosecution. If the SAIG disagrees with the decision by the investigator or their supervisor on the probable cause determination, the matter can be elevated to the next supervisory level within the OIA and the OIG.

One key component of monitoring is maintaining contact with the assigned investigator and department attorney in order to consult in real time as the investigation is underway. Because communication is so crucial to the oversight process, the department is assessed on their

cooperation, or lack thereof, with the SAIG. For example, the OIG cannot monitor an interview if we are not timely informed that it will take place.

## MONITORING THE DISCIPLINARY PHASE

The disciplinary phase starts with the hiring authority's determination whether or not to sustain the allegations. If the allegations are sustained, the hiring authority must impose penalty consistent with the provisions of CDCR's Department Operations Manual (DOM).

### Findings and Penalties

A critical step in the administrative disciplinary process is when a hiring authority determines which allegations should be sustained, if any, and the appropriate penalty. Based on the evidence presented, the hiring authority must: 1) determine whether there is enough evidence to make a finding; 2) find that the allegations are unfounded; 3) find that the allegations are not sustained; 4) find that the employee is exonerated; or 5) find that the allegations are sustained. If the allegations are sustained, the hiring authority must determine the appropriate penalty. The appropriate penalty must be drawn from the disciplinary matrix found in CDCR's DOM. The hiring authority consults with the department attorney (on cases where an attorney is assigned) and the SAIG monitoring the case. The hiring authority considers each case on its own merits to determine penalty, while taking into consideration any present aggravating or mitigating factors.

If either the SAIG or the department attorney believes the hiring authority has made an unreasonable decision as to findings or penalty, Executive Review can be sought pursuant to CDCR's DOM. In the Executive Review, the hiring authority's supervisor, the department attorney's supervisor, and an OIG supervisor conducts the disciplinary process. For this report, there are only nine cases where an Executive Review was sought. Of those nine cases, the OIG requested an Executive Review five times while the department attorney requested Executive Review four times. In those four occurrences, the OIG did not concur with the request for Executive Review. In all nine cases, the ultimate decision made at the Executive Review was consistent with the OIG position.

> **The OIG carefully considers the necessity of Executive Review and gives great thought to our position.**

### Monitoring Appeals

In past reports, we published updated information about cases in the Appealed Cases table if the disciplinary penalty initially imposed by the department was significantly modified after an employee filed an appeal with the State Personnel Board. There are many reasons for the discipline imposed against an employee to be modified during the appeal process. For example, key witnesses may change their statements at hearing or not be available to testify. Facts previously unavailable may be discovered. In addition, the department may agree to settle a case with the employee such that the employee receives an agreed upon penalty in exchange for withdrawing the challenge to the disciplinary action.

In this report, all appeals are included in the Disciplinary Phase table. However, during our transition to the new reporting format, there are cases previously reported only through the decision by the hiring authority that are in the process of concluding after appeal. As a result, for this reporting period and perhaps for the foreseeable future, we will report separately on the appellate results of those cases. In addition, cases in this report contain an assessment of the preparation and handling of the appeal by the department representative.

There are 50 such cases reported in previous semi-annual reports that were still pending an appeal before the State Personnel Board that came to conclusion in this reporting period. Of those 50 cases, 15 went to hearing before the SPB, 28 settled without a hearing, and in 7 cases the

> **The department prevailed in 12 of the 15 cases that went to a full hearing. The OIG did not concur in 8 of the 28 cases CDCR settled.**

appeals were either withdrawn by the employee or dismissed by the SPB for a failure to appear by the employee and the penalty imposed was unchanged.

Of the 15 cases that went to hearing, the department prevailed in 12 cases. Of the 28 cases that the department settled, the OIG did not concur with the terms of the settlement agreement approximately 28 percent of the time. Our Appealed Cases table only addresses those cases where we did not concur with the settlement. The Appealed Cases table begins on page 242.

# MONITORING CRITICAL INCIDENTS

The department is required to notify the OIG of all critical incidents immediately following the event. Critical incidents include serious events that require an immediate response by the department, such as riots, homicides, escapes, uses of deadly force, and unexpected inmate deaths. The following table lists the critical incidents for which OIG notification is required.

## Critical Incidents Defined

1. Any use of deadly force, including warning shots;
2. Any on-duty death of a department staff member;
3. Any off-duty death of a department staff member when the death has a nexus to the employee's duties at the department;
4. Any death of an individual in the custody or control of the department,[1] excluding lawful executions;
5. Any serious injury that creates a substantial risk of death to a department staff member or an individual in the custody or control of the department;
6. Any suicide by an adult individual in the custody or control of the department and any suicide or attempted suicide by a juvenile ward in the custody or control of the department;
7. Any riot or disturbance within an institution or facility that requires a significant number of department staff to respond or mutual aid from an outside law enforcement agency;
8. Any incident of notoriety or significant interest to the public;
9. Any allegations of significant misconduct by high-ranking department officials; and
10. Any other significant incident identified by the OIG after proper notification to the department.

---

[1] As used herein, an individual within the custody and control of the department does not include parolees.

The department's hiring authorities and staff under their supervision are primarily responsible for responding to critical incidents.

The OIG maintains a 24/7 contact telephone number with a SAIG assigned to receive notifications. After notification, the OIG monitors the department's management of the incident, either by responding to the site of the incident or by obtaining the incident reports and following up on-scene at a later time. More specifically, we evaluate what caused the incident and the department's immediate response to the incident. The OIG may make recommendations as a result of our review regarding training, policy, or referral for further investigation of potential negligence or misconduct.  If we believe the incident should be referred to the OIA, the OIA's decision regarding any referral is also monitored. If the matter is opened for an investigation the OIG may monitor the ensuing investigation as described previously.

During this reporting period, the OIG assessed 59 critical incidents. Eleven of these were ultimately approved for investigation or other action and were monitored by the OIG.
It is important to note that the number of critical incidents within any period is dependent upon the events taking place within the department. Additionally, in order for the OIG to monitor an incident on scene, the OIG relies on the department to provide timely notification that a defined critical incident has occurred. However, even when notification is untimely, the OIG may still remotely monitor the event by collection of reports and follow-up review. The following chart shows the total number of critical incidents monitored each year by the OIG.



During this period, the department failed to provide timely notification for 20 percent of the reported critical incidents, as required. The percentage of delayed notifications is unacceptably high and is similar to what occurred in the last reporting period. These delays continue to impact the OIG's ability to provide real-time, on-site monitoring for these critical incidents. We have

been advised by hiring authorities that untimely notification may be due to CDCR personnel turnover, especially in management ranks. It is usually the responsibility of CDCR's Administrative Officer of the Day (AOD) at the rank of captain or higher (who is assigned after hours or on weekends), to notify the OIG of critical incidents. We have observed that many of the AODs are new to their posts and are unclear on the notification process. This may be a department training issue that is more properly addressed by the department itself.

Consistent with past reporting periods, the most often monitored critical incidents involved great bodily injury to inmates or wards. In contrast to the prior reporting period, there was a decrease in the number of critical incidents involving the department's use of deadly force. The following chart provides a comparison of the number of critical incidents of each type between this reporting period and the prior one.



**Type of Critical Incidents Comparison**

Although the OIG monitors critical incidents as they occur in the juvenile system, during this reporting period there were only two critical incidents at a juvenile facility. Those two incidents were attempted suicides where there were no injuries to the wards.

In the incidents where deadly force was used, the deadly force was only employed in adult institutions. In those nine cases, there were no inmate fatalities.

**Monitoring Deadly Force Investigations**

Deadly force incidents are a sub-type of critical incidents monitored by the OIG, that by policy automatically result in both an administrative and criminal investigation. Department policy provides for criminal and administrative investigations to be immediately conducted on all deadly force incidents. Occasionally, an outside law enforcement agency will conduct the criminal investigation, most notably when the force occurs outside an institution and in the

community, typically in a parole situation. The nature of the act (intentional use of potentially lethal force) warrants additional scrutiny and review regardless of whether any misconduct is suspected.

The department defines deadly force as any use of force that is likely to result in death. Any discharge of a firearm other than the lawful discharge during weapons qualifications, firearms training, or other legal recreational use of a firearm, is deadly force. For example, an unconventional use of a baton to intentionally strike an inmate in the head or a less than lethal round, such as a rubber projectile being fired intentionally at an inmate's head, are both deadly force. Both are examples of non-deadly force used in a deadly manner, but may be justified if deadly force is warranted.

Any time department staff use deadly force, the department is required to promptly notify the OIG. When notice of a deadly force incident is received, OIG staff immediately responds to the incident scene to evaluate the department's management of the incident and the department's subsequent deadly force investigations.

The OIG also participates as a non-voting member of the department's Deadly Force Review Board (DFRB). The DFRB is an independent body comprised of outside law enforcement experts and one CDCR executive officer. Generally, after the administrative investigation is complete, the investigative report is presented to the DFRB. The DFRB examines the incident to determine the extent to which the use of force complied with department policies and procedures, and to determine the need for modifications to CDCR policy, training, or equipment. The DFRB's findings are presented to the CDCR undersecretary who determines whether further action is needed.

Because the use of deadly force has such serious implications, the department's use of deadly force has always received the highest level of scrutiny. The OIG monitored ten deadly force administrative investigations that concluded during this reporting period and also monitored four deadly force criminal investigations. (The OIG does not monitor a criminal investigation conducted by an outside law enforcement agency.) In the ten deadly force administrative cases, nine cases went before the DFRB during this reporting period. One case was still pending review at the end of this reporting period.

The DFRB found no policy violations by the department in eight of the cases. In one case, the DFRB found the actions of the department employee out of compliance with the department's use-of-force policy.

The DFRB only considers cases referred by DFIT.  In the following cases, there was no DFIT response. There were four instances where the department discharged a firearm as a warning shot. Also, there were eight instances where the force used by the department was applied to the inmate's head, including three cases of expandable baton strikes to an inmate's head. The other five incidents were less than lethal projectiles that inadvertently struck the inmate in the head. The OIG has begun discussions with the OIA to bring higher level scrutiny to cases where unconventional deadly force is used. In the past, the OIA has only opened a deadly force investigation if the inmate actually died from being struck on the head or was injured so severely

that there was a substantial risk of death. The OIA agrees that intentional blows to the head with a weapon, regardless of outcome, constitute deadly force and an assessment of justification should be made. An intentional blow to the head, even if it does not result in serious injury, is still out of policy and potentially a crime if there is no justification to use deadly force.

Additionally, in cases where warning shots are discharged, the OIG believes a more formal determination of the justification for use of deadly force should be made. The requirements for the employment of deadly force must still be present even if the officer only intends a "warning shot." For example, a warning shot may still be a reckless discharge of a firearm if there was no justification to use deadly force in the first place. The OIA has opened a dialogue with the OIG to coordinate the OIG response to warning shots with the OIA review of the institutional inquiry.

## CONCLUSION

Due to the modified format of this report, the OIG cannot fairly compare the department's performance to past reports. This is due to three factors. First, the scope of our assessment has increased in each phase. Second, the manner in which we report sufficiencies and deficiencies has changed to incorporate a composite analysis of the department as a whole in each phase. And finally, while outcome is still assessed, cases that now have a satisfactory outcome still may be deemed deficient if the department did not adhere to process and/or policy. One purpose for now reporting the exact problem is to provide the department with the ability to address those deficiencies and continue their overall improvement in the employee discipline process. The OIG continues to see efforts made by the OIA to meet the ever increasing challenges of their mission and to work with the OIG in our monitoring role. We recognize that due to our modified reporting format, the overall numbers in this report appear to be higher, and in some areas, such as timeliness, that may be the case. However, the OIG will be better able to verify this in its next report.

In the Investigative Phase, our scope increased to fully assess the OIA Central Intake process which was not done in the past. Therefore, this report reflects deficiencies that were not fully assessed in our past reports. In addition, Investigative Phase deficiencies can be attributed to entities within the department other than the assigned agent. For example, we assess the delays of the hiring authority in referring cases, and the performance of the department attorney, if one is designated. This report indicates that in 33 percent of the cases there was some deficiency by the department in the Investigative Phase. The exact nature of each deficiency is now provided in the following tables.

In the Disciplinary Phase, we now fully assess the performance of the hiring authority and department attorney (or representative) up to and including appellate hearings before the State Personnel Board, which were not fully assessed previously. In this phase, we changed from assessing individual parts of the department to reporting the deficiencies of all departmental entities in a combined assessment. In the Disciplinary Phase, the department was deficient in 20 percent of the cases. In those deficient cases, the department either failed to comply with critical policies and procedures, or acted in a manner deemed to be unreasonable by the OIG. Again, the exact nature of each deficient rating is explained in the following tables.

Finally, the department failed to provide the OIG with timely notification in 20 percent of the reported critical incidents. As previously stated, this may be partly due to turnover within the department and the need for training, which is already occurring. If this leads to improvements in this area, it will be reflected in our next report. CDCR administrators are aware of the benefits gained by independent oversight of critical incidents, and the necessary transparency that it provides, and have pledged to work with the OIG in this area.

The following tables detail the 330 monitored cases, the 59 critical incidents, and the post appeal cases that remain from our previous reporting format. As noted previously, in the modified reporting format, the assessments give greater attention to the appeals process than in prior reports. The cases wherein the department failed to comply with policies and procedures resulting in a deficient rating are now reported in greater detail. It is hoped that the inclusion of more specific information on problem areas will enable the department to continue to improve their performance and provide internal guidance to their staff. It is the goal of the OIG that oversight in this area will be value-added to the department, the various stakeholders, and the State.

Appendix A contains the assessments for all cases that concluded the Investigative Phase for this reporting period, both criminal and administrative, listed by geographical region.

Appendix B contains the assessments for all cases that concluded the Discipline Phase for this reporting period, listed by geographical region.

Appendix C contains the dual assessments for all cases where the combined Investigative Phase *and* Discipline Phase were concluded during the reporting period, listed by geographical region.

Appendix D contains the assessments for all of the critical incidents monitored during this reporting period, listed by geographical region.

Appendix E contains the assessment of remaining cases that concluded the appeal process and were deemed by the OIG to be insufficient in process or outcome, listed by geographical region.

# APPENDIX A
# INVESTIGATIVE PHASE CASE SUMMARIES
## CENTRAL REGION

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| 2010-01-22 | 10-0001080-IR | Criminal Investigation | 1. Other Criminal Act | Sufficient |

### Facts of the Case
On January 22, 2010, a control booth officer allegedly allowed three inmates to attack and stab another inmate by opening his cell door. The matter was referred to the district attorney's office, which declined to prosecute. The Office of Internal Affairs opened an administrative case, which the OIG accepted for monitoring.

### Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| 2010-07-17 | 10-0003414-IR | Administrative Investigation | 1. Neglect of Duty<br>2. Neglect of Duty<br>3. Dishonesty | Sufficient |

### Facts of the Case
On July 17, 2010, following an in-cell assault between two inmates, it was alleged that a sergeant and an officer failed to properly document the assault. It was also alleged that the officer falsified the signature of one of the inmates on related paperwork. It was further alleged that a lieutenant and a captain failed to properly make and document the correct housing assignments for the involved inmates.

### Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| 2009-02-12 | 11-0000460-IR | Criminal Investigation | 1. Contraband | Sufficient |

### Facts of the Case
Between February 12, 2009 and October 27, 2010, an office assistant allegedly provided mobile phones to inmates for money. It was further alleged that the office assistant engaged in sexual activity with inmates and parolees. The investigation failed to establish probable cause to believe a crime was committed. Therefore, the case was not referred to the district attorney's office. The Office of Internal Affairs opened an administrative investigation, which the OIG accepted for monitoring.

### Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

| Incident Date **2010-06-07** | OIG Case Number **11-0000653-IR** | Case Type **Administrative Investigation** | Allegations | | Rating **Sufficient** |
|---|---|---|---|---|---|
| | | | 1. | Dishonesty | |
| | | | 2. | Insubordination | |

## Facts of the Case

On June 7, 2010, a lieutenant allegedly instructed an officer to falsify a report that documented the search of an inmate for drugs. It was further alleged that the officer falsified the report documenting the search of an inmate. The lieutenant allegedly provided false or misleading statements during his interview with the Office of Internal Affairs by denying that he instructed the officer to falsify the report. The lieutenant was allegedly insubordinate when he discussed the pending allegations with an officer against a direct order.

## Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

| Incident Date **2011-01-19** | OIG Case Number **11-0000745-IR** | Case Type **Administrative Investigation** | Allegations | | Rating **Insufficient** |
|---|---|---|---|---|---|
| | | | 1. | Failure to Report | |
| | | | 2. | Failure to Report | |
| | | | 3. | Dishonesty | |

## Facts of the Case

On January 19, 2011, it was alleged that an officer used unnecessary force on an inmate when he grabbed the inmate by the back of the neck and intentionally pushed the inmate forward, forcing his head into the metal door frame as they exited the shower area, following the decontamination process. It was alleged that the officer was dishonest when he reported that he slipped and accidentally pushed the inmate's head forward. It was further alleged that seven other officers and a sergeant witnessed the use of force and failed to report it.

## Investigative Assessment

The potential misconduct was discovered on January 19, 2011. Although the hiring authority referred the matter to the Office of Internal Affairs within nine days, OIA Central Intake made a decision on the matter on March 9, 2011. A special agent was assigned to investigate the case on April 1, 2011, and conferred adequately with the department attorney and the OIG. At the request of the department attorney, the first officer interview took place on April 27, 2011. The officer interviewed was dismissed on a separate action and the department attorney wanted to secure his statement before his employment was terminated with the state. Following the interview, the special agent did not conduct interviews or perform any substantial investigation until November 18, 2011, nearly seven months later. Between November 18, 2011 and December 13, 2011, the remainder of the investigation was conducted. The draft of the investigative report was delivered to the department attorney and the OIG on December 21, 2011, with less than 30 days remaining for the department to take action against the officers. The department attorney reviewed the nine separate reports and responded to the special agent the next day, although department policy allows 21 days for the department attorney to do the review and assessment. The final report was delivered to the hiring authority on December 27, 2011, with 22 days remaining for the department to take action. The Office of Internal Affairs did not conduct the investigation with due diligence. The department attorney and the hiring authority performed in accordance with department policies.

## Assessment Questions

- Did OIA Central Intake make a determination regarding the case within 30 calendar days?

  *OIA Central Intake received the referral on February 2, 2011. OIA Central Intake made a determination regarding the case on March 9, 2011, more than 30 days following receipt of the request.*

- Was the Office of Internal Affairs investigation, or subject only interview, conducted with due diligence?

  *The Office of Internal Affairs investigation was not conducted with due diligence, as the special agent failed to conduct any significant investigation for several months.*

- Was the investigation, or subject interview, completed at least 35 days before the deadline to take disciplinary action?

  *The deadline for the department to take action against the officers was January 18, 2012. The final report was completed on December 22, 2011, and delivered to the hiring authority on December 27, 2011. Both dates were less than 35 days before the deadline to take disciplinary action.*

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| **2011-04-01** | **11-0001262-IR** | **Administrative Investigation** | 1. **Neglect of Duty** <br> 2. **Failure to Report** <br> 3. **Other Failure of Good Behavior** <br> 4. **Use of Force** | **Sufficient** |

### Facts of the Case

On April 1, 2011, an officer allegedly used unnecessary force on an inmate in an administrative segregation unit when he escorted the inmate to a patio area, removed the inmate's restraints, pushed his knee into the back of the inmate, placed his elbow on the back of the inmate's neck, and pulled the inmate by the hair, trying to provoke the inmate to respond by force. It was further alleged that the officer failed to report his use of force and that six officers and a sergeant witnessed the use of force and also failed to report it.

### Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| **2011-05-13** | **11-0001596-IR** | **Administrative Investigation** | 1. **Neglect of Duty** <br> 2. **Failure to Report** <br> 3. **Other** <br> 4. **Other Failure of Good Behavior** | **Sufficient** |

### Facts of the Case

On May 13, 2011, an inmate suffering from dementia allegedly became aggressive with officers as he was being escorted to the shower. As the inmate's fist came toward an officer's face, the officer tried to grab the inmate's arm but instead, struck the inmate in the face. It was alleged that the officer failed to report his use of force and then was dishonest about whether he intentionally struck the inmate in the face. It was alleged that a second officer witnessed the use of force but failed to report it. It was also alleged that two nurses witnessed the use of force but failed to report it immediately. The nurses allegedly waited more than 24 hours to report the incident. Following the reports by the nurses, it was further alleged that a sergeant who supervised the two officers failed to order the officers to write reports.

### Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| **2011-03-01** | **11-0002177-IR** | **Criminal Investigation** | 1. **Contraband** | **Sufficient** |

### Facts of the Case

In March 2011, two officers were allegedly smuggling mobile phones into an institution for personal gain. The investigation failed to establish probable cause to believe that a crime was committed. The matter was not referred to the district attorney's office. The Office of Internal Affairs did not open an administrative investigation.

### Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

# HEADQUARTERS

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| **2010-02-09** | **10-0000546-IR** | Criminal **Investigation DFIT** | 1. **Other Criminal Act** | **Insufficient** |

## Facts of the Case

On February 9, 2010, three inmates engaged in a fight involving weapons on the exercise yard. Officers utilized pepper spray, which caused one inmate to comply with orders to stop fighting, but the two remaining inmates continued to stab each other with weapons. An officer fired three less-than-lethal rounds and three lethal rounds causing the inmates to comply with orders. One of the lethal rounds ricocheted off of a sidewalk and struck an uninvolved inmate in the eye. The inmate who was shot and one of the inmates involved in the fight were transported to a local hospital for treatment and later returned to the institution. The case against the officer was referred to the district attorney's office, which declined to file charges.

## Investigative Assessment

The Office of Internal Affairs failed to complete the investigation within the required timeframe and failed to adequately consult with the OIG during the investigation. Also, the special agent did not provide a copy of the investigative report to the OIG prior to submitting it to the prosecuting agency.

## Assessment Questions

- Did the criminal Deadly Force Investigation Team special agent conduct all interviews within 72 hours as required by the DOM?

  *Approximately 25 staff and inmate witnesses were interviewed more than 72 hours after the incident. At least one staff member and four inmate witnesses were interviewed approximately 30 days after the incident. The delay in conducting interviews can be partially attributed to the hiring authority failing to provide the Office of Internal Affairs with a list of involved staff in a timely manner.*

- Upon completion of the investigation, was a copy of the investigative report timely forwarded to the OIG to allow for feedback before it was forwarded to the hiring authority or prosecuting agency?

  *The investigative report was forwarded to the prosecuting agency on August 3, 2010, but the OIG was not provided with a copy until August 10, 2010. The OIG would have made recommendations regarding the adequacy of the report; specifically, names were misspelled, the report did not address applicable penal codes, the OIG was erroneously listed as attending an interview, and information from the subject's compelled statement was included.*

- Was the final investigative report thorough and appropriately drafted?

  *The investigative report was thorough, in that it included all appropriate interviews, but the report failed to address any applicable criminal statutes. Rather, the special agent reviewed and discussed the department's administrative use-of-force policy.*

- Did the Office of Internal Affairs appropriately determine whether there was probable cause to believe a crime was committed and, if probable cause existed, was the investigation referred to the appropriate agency for prosecution?

  *The Office of Internal Affairs appropriately determined there was no probable cause to believe a crime was committed but referred the investigation to the prosecuting agency in compliance with its policy and procedures.*

- Was the Office of Internal Affairs investigation, or subject only interview, conducted with due diligence?

  *The Office of Internal Affairs failed to complete the investigation within the 90 day required timeframe and did not submit the report of investigation to the prosecuting agency until approximately 175 days after the initial assignment.*

- Did the special agent cooperate with and provide continual real-time consultation with the OIG?

  *The special agent cooperated with the OIG and provided notification regarding witness interviews and the investigative plan. However, the Office of Internal Affairs did not provide a copy of the investigative report to the OIG prior to submitting it to the prosecuting agency. In addition, after reviewing the investigative report, there were some investigative tasks performed by the special agent that were not discussed with the OIG.*

- Was the investigation thorough and appropriately conducted?

  *All witnesses were interviewed and the appropriate information was gathered from each witness. However, the witness interviews and the investigation were not completed within the required timeframes. In addition, the investigation inappropriately included information obtained from a compelled statement given by the subject of the investigation.*

- Did the Office of Internal Affairs appropriately protect compelled statements obtained in the administrative case from being improperly used in a criminal case?

  *The officer involved in the deadly force incident gave a compelled statement to a supervisor the day of the incident. Despite recommendations by the OIG to the contrary, the Office of Internal Affairs obtained a copy of the compelled statement given by the officer and included a summary of the statement in the criminal investigative report.*

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| **2009-09-25** | **10-0001093-IR** | Criminal Investigation | 1. Other Criminal Act | Sufficient |

### Facts of the Case
On September 25, 2009, two officers allegedly dragged an inmate into his cell, twisted the inmate's arm and wrist while taking his handcuffs off, and rammed his head into the cell wall. It was also alleged that the officers sexually assaulted the inmate by fondling his genitals and rubbing a flashlight on his buttocks. The case was referred to the district attorney's office, which declined to prosecute. The Office of Internal Affairs opened an administrative investigation, which the OIG accepted for monitoring.

### Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| **2009-12-01** | **10-0001112-IR** | Criminal Investigation | 1. Other Criminal Act | Sufficient |

### Facts of the Case
It was alleged that in December 2009, an officer was trafficking tobacco in order to pay white inmates to assault certain black and homosexual inmates. The matter was referred to the district attorney's office, which declined to file charges. The Office of Internal Affairs opened an administrative investigation, which the OIG accepted for monitoring.

### Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| **2010-03-01** | **10-0001440-IR** | Administrative Investigation | 1. Neglect of Duty<br>2. Neglect of Duty | Sufficient |

### Facts of the Case
It was alleged that on March 1, 2010, a captain, lieutenant, two sergeants, five officers, and a registered nurse failed to follow policy when an inmate was observed swallowing contraband. It was alleged that the inmate was not properly supervised following the incident and was not given a medical evaluation. The inmate later overdosed and died from the contraband that he ingested.

### Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

| Incident Date 2010-07-14 | OIG Case Number 10-0003140-IR | Case Type Administrative Investigation | Allegations | Rating Sufficient |
|---|---|---|---|---|
| | | | 1.  Other | |
| | | | 2.  Dishonesty | |

**Facts of the Case**

It was alleged that on July 14, 2010, a high level manager told a lieutenant that he was under criminal investigation by an outside law enforcement agency and that there was a warrant issued for his arrest. It was further alleged that the high level manager ordered a captain to obtain the outside law enforcement reports and then lied to the outside law enforcement agency denying he had made the request.

**Investigative Assessment**

Overall, the department's investigative process sufficiently complied with policies and procedures.

| Incident Date 2010-07-07 | OIG Case Number 10-0003187-IR | Case Type Administrative Investigation | Allegations | Rating Sufficient |
|---|---|---|---|---|
| | | | 1.  Neglect of Duty | |
| | | | 2.  Neglect of Duty | |

**Facts of the Case**

It was alleged that on July 7, 2010, an associate warden, a lieutenant, a sergeant, and three officers were made aware of a sexual battery by one inmate on another and failed to follow proper protocol in processing the sexual battery allegation.

**Investigative Assessment**

Overall, the department's investigative process sufficiently complied with policies and procedures.

| Incident Date 2010-11-30 | OIG Case Number 11-0000796-IR | Case Type Administrative Investigation | Allegations | Rating Sufficient |
|---|---|---|---|---|
| | | | 1.  Misuse of State Equipment or Property | |
| | | | 2.  Other Failure of Good Behavior | |
| | | | 3.  Other | |
| | | | 4.  Other | |

**Facts of the Case**

It was alleged that between November 30, 2010, and February 16, 2011, a parole administrator used his state issued computer to disseminate inappropriate e-mails of pornographic and sexually explicit images. It was further alleged that the parole administrator used his state issued computer to access pornographic websites, send pornographic images to co-workers, solicit sexually based acts, and purchase narcotics and medications without a prescription.

**Investigative Assessment**

Overall, the department's investigative process sufficiently complied with policies and procedures.

| Incident Date 2011-05-31 | OIG Case Number 11-0001594-IR | Case Type Criminal Investigation DFIT | Allegations 1.    Other Criminal Act | Rating Sufficient |
|---|---|---|---|---|

### Facts of the Case

On May 31, 2011, as an observation booth officer was preparing to end his shift, he removed his firearm from his holster. Upon removal, the officer accidentally discharged one round into a wall. The department's Deadly Force Investigation Team conducted an investigation into this matter. The investigation failed to establish probable cause that a crime was committed; therefore, the matter was not referred to the district attorney.

### Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

| Incident Date 2011-04-18 | OIG Case Number 11-0001726-IR | Case Type Criminal Investigation | Allegations 1.    Other Criminal Act | Rating Sufficient |
|---|---|---|---|---|

### Facts of the Case

On April 18, 2011, it was alleged that a plumber was introducing mobile phones, tobacco, and narcotics into the institution for financial gain. The case was referred to the district attorney's office, which filed criminal charges against the plumber. The Office of Internal Affairs opened an administrative investigation, which the OIG accepted for monitoring.

### Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

| Incident Date 2011-08-22 | OIG Case Number 11-0002262-IR | Case Type Criminal Investigation | Allegations 1.    Other Criminal Act | Rating Sufficient |
|---|---|---|---|---|

### Facts of the Case

On August 22, 2011, it was alleged that an officer possessed marijuana, methamphetamine, heroin, and ecstasy pills. Additionally, it was alleged that for approximately seven months prior, the officer conspired with inmates and inmate family members to transport, introduce, and sell narcotics, tobacco, and mobile phones to inmates in exchange for money. The matter was submitted to the district attorney's office, which filed criminal charges against the officer. The Office of Internal Affairs opened an administrative case, which the OIG accepted for monitoring.

### Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

| Incident Date **2011-04-13** | OIG Case Number **11-0002308-IR** | Case Type **Administrative Investigation** | Allegations 1. **Other** | Rating **Insufficient** |
|---|---|---|---|---|

## Facts of the Case

It was alleged that on April 13, 2011, a lieutenant disclosed confidential information to a contract staff member. Allegedly, an inmate told the lieutenant a male contract staff member was engaging in trafficking narcotics and mobile phones and having sexual relationships with female staff members. The lieutenant allegedly disclosed this information to a female contract staff member who was allegedly in a relationship with the male contract staff member.

## Investigative Assessment

The hiring authority did not submit the matter to the Office of Internal Affairs timely, and the Office of Internal Affairs did not timely make an investigation determination. Further, initially the special agent assigned to the case only conducted an interview of the subject in this matter. Upon urging of the department attorney and the OIG, the special agent conducted a telephonic interview of the complainant contract staff member. However, the special agent failed to notify the OIG and the department attorney of this critical interview.

## Assessment Questions

- Was the matter referred to the Office of Internal Affairs as soon as reasonably practical, within 45 calendar days of the date of discovery?

  *The initial complaint was made to the department on May 18, 2011. The matter was not referred to the Office of Internal Affairs until July 8, 2011.*

- Did OIA Central Intake make a determination regarding the case within 30 calendar days?

  *OIA Central Intake received the matter on July 8, 2011, yet did not make a determination until September 7, 2011.*

- Did the special agent cooperate with and provide continual real-time consultation with the OIG?

  *The special agent conducted an interview of the complaining witness without notification to the OIG.*

- Did the special agent cooperate and provide real-time consultation with the department attorney throughout the investigative phase?

  *The special agent conducted an interview with the complaining witness without notification to the department attorney.*

| Incident Date **2011-10-02** | OIG Case Number **11-0002470-IR** | Case Type **Criminal Investigation** | Allegations 1. **Contraband** 2. **Other Criminal Act** | Rating **Sufficient** |
|---|---|---|---|---|

## Facts of the Case

On October 2, 2011, an officer was searched on institutional grounds and heroin was later found on the ground in the immediate area where the officer was searched. Further, $5,580 in cash was found in the officer's car parked on institutional grounds. A search of the officer's home was conducted and heroin, marijuana, and mobile phones were located. The Office of Internal Affairs conducted an investigation and referred the matter to the district attorney for prosecution. The district attorney's office filed criminal charges against the officer for possession of a controlled substance, bringing a controlled substance into the prison, possession of controlled substance in a prison, and possession of a controlled substance for sale.

## Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

# NORTH REGION

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| **2009-04-01** | **10-0000517-IR** | Administrative Investigation | 1. **Neglect of Duty** <br> 2. **Dishonesty** | **Insufficient** |

## Facts of the Case

From April 2009 through June 2010, a parole agent allegedly failed to properly supervise parolees and falsified documentation. The parole agent documented home visits, a work place visit and anti-narcotic testing that allegedly were not performed.

## Investigative Assessment

The hiring authority failed to submit a timely request for investigation. The Office of Internal Affairs conducted a thorough investigation, although the report was submitted to the hiring authority less than 35 days before the deadline for taking action.

## Assessment Questions

- Was the matter referred to the Office of Internal Affairs as soon as reasonably practical, within 45 calendar days of the date of discovery?

  *The date of discovery of the matter was November 10, 2009. The hiring authority requested an investigation on January 4, 2010.*

- Within 21 calendar days, did the department attorney make an entry into CMS (the case management system) accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

  *The department attorney made an entry in CMS within 21 days of being assigned. However, he merely stated that he assessed the date of the incident, discovery date and deadline for taking disciplinary action without indicating the actual dates.*

- Was the investigation, or subject interview, completed at least 35 days before the deadline to take disciplinary action?

  *The report was completed and submitted to the hiring authority with only 11 days left before the deadline to take disciplinary action.*

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| **2010-03-25** | **10-0001471-IR** | Administrative Investigation | 1. **Use of Force** <br> 2. **Use of Force** <br> 3. **Use of Force** | **Sufficient** |

## Facts of the Case

It was alleged that on March 25, 2010, two youth correctional officers used unnecessary force on a handcuffed ward. Specifically, it was alleged that the officers pushed the ward against a window with such great force that the window broke, causing the ward to sustain a laceration. It was further alleged that three officers observed the incident and failed to report his observations.

## Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

| Incident Date<br>2009-03-16 | OIG Case Number<br>10-0002160-IR | Case Type<br>Administrative Investigation | Allegations | Rating<br>Sufficient |
|---|---|---|---|---|
| | | | 1. **Dishonesty**<br><br>2. **Over-familiarity**<br><br>3. **Discourteous Treatment**<br><br>4. **Misuse of State Equipment or Property**<br><br>5. **Discourteous Treatment**<br><br>6. **Over-familiarity** | |

## Facts of the Case

On March 16, 2009, a supervising correctional cook allegedly engaged in discourteous treatment toward an officer by hugging the officer in the presence of other staff. On April 30, 2009, the cook also allegedly engaged in an overly familiar relationship with an inmate when the cook received a wrapped gift from the inmate. Between April 11, 2009 and April 30, 2009, the cook also allegedly misused state property by furnishing bleach and extra food to inmate kitchen workers, engaged in a pattern of discourteous and disrespectful conduct towards co-workers, and engaged in an overly familiar relationship with an inmate by giving the inmate preferential treatment. The cook also allegedly referred to inmates by inappropriate names. The cook was also allegedly dishonest during his investigatory interview.

## Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

| Incident Date<br>2010-05-29 | OIG Case Number<br>10-0002368-IR | Case Type<br>Administrative Investigation | Allegations | Rating<br>Sufficient |
|---|---|---|---|---|
| | | | 1. **Dishonesty**<br><br>2. **Other Failure of Good Behavior**<br><br>3. **Other Criminal Act** | |

## Facts of the Case

On May 29, 2010, a lieutenant was arrested for allegedly driving under the influence. During the arrest, it was alleged that the lieutenant became resistive with the arresting officers. Also, it was alleged that the lieutenant was dishonest with the arresting officers when he stated he was not driving the vehicle.

## Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

| Incident Date<br>2010-06-14 | OIG Case Number<br>10-0002375-IR | Case Type<br>Criminal Investigation | Allegations | Rating<br>Sufficient |
|---|---|---|---|---|
| | | | 1. **Contraband** | |

## Facts of the Case

On June 14, 2010, two dental technicians allegedly were involved in attempting to smuggle narcotics and tobacco into the institution. The investigation failed to establish probable cause to believe that a crime was committed. The matter was not referred to the district attorney's office. The Office of Internal Affairs opened an administrative investigation, which the OIG accepted for monitoring.

## Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

| Incident Date 2010-07-14 | OIG Case Number 10-0002697-IR | Case Type Administrative Investigation | Allegations | Rating Sufficient |
|---|---|---|---|---|
| | | | 1. Other | |
| | | | 2. Failure to Report | |
| | | | 3. Other Failure of Good Behavior | |
| | | | 4. Over-familiarity | |

### Facts of the Case

On July 14, 2010, an off-duty officer allegedly found photographs depicting a marijuana growing operation at his residence which he co-owned with his estranged spouse, a fellow officer. The officer allegedly allowed his estranged spouse to dispose of the evidence which was never recovered. The officer also alleged that he personally observed his spouse use marijuana for several years. Furthermore, the officer alleged that his spouse was overly familiar with inmates and produced handwritten notes that were purportedly written by inmates to his spouse. He also reported that on one occasion he returned home to find a former inmate in their home visiting his spouse. Lastly, the officer alleged that he unknowingly ingested marijuana laced brownies baked by his estranged spouse.

### Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

| Incident Date 2010-06-14 | OIG Case Number 10-0002863-IR | Case Type Administrative Investigation | Allegations | Rating Sufficient |
|---|---|---|---|---|
| | | | 1. Contraband | |
| | | | 2. Contraband | |
| | | | 3. Over-familiarity | |
| | | | 4. Neglect of Duty | |
| | | | 5. Dishonesty | |
| | | | 6. Misuse of State Equipment or Property | |
| | | | 7. Dishonesty | |

### Facts of the Case

On June 14, 2010, two dental technicians allegedly were involved in attempting to smuggle narcotics and tobacco into the institution.

### Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

| Incident Date 2010-06-23 | OIG Case Number 10-0003070-IR | Case Type Administrative Investigation | Allegations | Rating Sufficient |
|---|---|---|---|---|
| | | | 1. Dishonesty | |

### Facts of the Case

On June 23, 2010, it was alleged that an officer forged an inmate's signature on an official classification form. It was further alleged that the officer was dishonest to his supervisor regarding the forgery.

### Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| **2010-09-09** | **10-0003193-IR** | **Criminal Investigation** | 1. **Other Criminal Act** | **Sufficient** |

## Facts of the Case

It was alleged that on September 9, 2010, an officer had been using methamphetamine and oxycodone without a prescription. It was further alleged that a psychiatric technician from the institution had been selling the officer the prescription drugs and was also using them. The investigation failed to establish probable cause to believe that a crime was committed. The matter was not referred to the district attorney's office. The department did not open an administrative investigation due to lack of evidence.

## Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| **2010-01-04** | **10-0003727-IR** | **Administrative Investigation** | 1. **Neglect of Duty** <br> 2. **Neglect of Duty** | **Insufficient** |

## Facts of the Case

On January 4, 2010, it was alleged that an officer failed to properly secure a cell door, allowing two inmate workers to exit their cell and attack another inmate. It was alleged that two lieutenants failed to enforce a program restriction order and allowed officers to release inmate workers in violation of the order.

## Investigative Assessment

The Office of Internal Affairs failed to process this case in a timely manner. The hiring authority considered the investigation insufficient. However, the hiring authority was not able to request further investigation due to time constraints. The report was submitted to the hiring authority less than 35 days before the deadline for taking action. This could have been avoided had the department conducted a timely investigation.

## Assessment Questions

- Did OIA Central Intake make a determination regarding the case within 30 calendar days?

  *The request for investigation was dated October 10, 2010; however, OIA Central Intake did not make a determination regarding the case until December 8, 2010.*

- Within 21 calendar days, did the department attorney make an entry into CMS accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

  *The department attorney was assigned the case December 13, 2010, and did not make the required CMS entry accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time.*

- Was the Office of Internal Affairs investigation, or subject only interview, conducted with due diligence?

  *The department opened an investigation on December 8, 2010. It was not delivered to the hiring authority until August 3, 2011, less than 35 days prior the deadline for taking disciplinary action. The first special agent was assigned this case on December 16, 2010, and did no substantive investigation. The case was then assigned to another agent on April 19, 2011. The second agent was diligent in completing the investigation.*

- Was the investigation, or subject interview, completed at least 35 days before the deadline to take disciplinary action?

  *The report was completed and submitted to the hiring authority with only 19 days left before the deadline to take disciplinary action.*

| Incident Date 2010-07-10 | OIG Case Number 10-0003920-IR | Case Type Criminal Investigation | Allegations | Rating Sufficient |
|---|---|---|---|---|
| | | | 1. Other Criminal Act | |

### Facts of the Case

On July 10, 2010, an officer allegedly conspired with a parolee to traffic narcotics into an institution. The investigation failed to establish probable cause to believe that a crime was committed; therefore, the matter was not referred to the district attorney's office. The Office of Internal Affairs did not open an administrative investigation.

### Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

| Incident Date 2010-06-28 | OIG Case Number 11-0000128-IR | Case Type Administrative Investigation | Allegations | Rating Sufficient |
|---|---|---|---|---|
| | | | 1. Neglect of Duty | |
| | | | 2. Neglect of Duty | |
| | | | 3. Dishonesty | |

### Facts of the Case

On June 28, 2010, it was alleged that a parole agent failed to properly supervise parolees on her caseload. Allegedly, the parole agent failed to update case records, make face-to-face contacts, and conduct the drug tests that were noted in parolees' files.

### Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

| Incident Date 2010-10-20 | OIG Case Number 11-0000203-IR | Case Type Criminal Investigation | Allegations | Rating Sufficient |
|---|---|---|---|---|
| | | | 1. Other Criminal Act | |

### Facts of the Case

It was alleged on October 20, 2010, that an officer visited numerous pharmacies on 42 occasions over a 12-month period in an effort to obtain prescription pain medication. The case was referred to the district attorney's office which accepted the case for prosecution. The Office of Internal Affairs opened an administrative investigation, which the OIG accepted for monitoring.

### Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

| Incident Date 2010-08-28 | OIG Case Number 11-0000204-IR | Case Type Administrative Investigation | Allegations | Rating Sufficient |
|---|---|---|---|---|
| | | | 1. Dishonesty<br>2. Neglect of Duty<br>3. Neglect of Duty | |

### Facts of the Case

On August 28, 2010, a condemned inmate was found hanging in his cell and was later pronounced deceased at the scene. A sergeant allegedly falsified a report and failed to maintain inmate assessment forms. It was alleged that three officers failed to conduct hourly visual checks on inmates.

### Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

| Incident Date 2010-03-12 | OIG Case Number 11-0000207-IR | Case Type Administrative Investigation | Allegations | Rating Sufficient |
|---|---|---|---|---|
| | | | 1. Dishonesty | |

### Facts of the Case

On March 12, 2010, an officer allegedly lied to outside law enforcement officers serving an arrest warrant on his roommate. Allegedly, the officer claimed the roommate was not home when outside law enforcement officers entered the home and found the roommate hiding in a closet. It was also alleged that the officer was dishonest during his investigatory interview.

### Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

| Incident Date 2010-11-16 | OIG Case Number 11-0000368-IR | Case Type Criminal Investigation | Allegations | Rating Sufficient |
|---|---|---|---|---|
| | | | 1. Other Criminal Act | |

### Facts of the Case

On November 16, 2010, a prison industries supervisor allegedly stole scrap copper, knee pads, washer airbags, storage bins, and other items from the institution. The investigation failed to establish probable cause to believe that a crime was committed. Therefore, the case was not referred to the district attorney's office. The Office of Internal Affairs opened an administrative investigation, which the OIG accepted for monitoring.

### Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

| Incident Date 2010-12-02 | OIG Case Number 11-0000440-IR | Case Type Criminal Investigation | Allegations | Rating Sufficient |
|---|---|---|---|---|
| | | | 1. Other Criminal Act | |

### Facts of the Case

On December 2, 2010, it was alleged that an officer accepted money from inmates in exchange for providing mobile phones and tobacco. The investigation failed to establish probable cause to believe that a crime was committed. Therefore, the case was not referred to the district attorney's office. The department did not open an administrative investigation due to lack of evidence.

### Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

| Incident Date 2010-01-01 | OIG Case Number 11-0000441-IR | Case Type Criminal Investigation | Allegations 1. Other Criminal Act | Rating Sufficient |
|---|---|---|---|---|

### Facts of the Case

Between January 2010 and December 2010, a teacher allegedly engaged in sexual conduct with an inmate. The case was referred to the district attorney's office, which declined to prosecute due to lack of evidence. The Office of Internal Affairs did not open an administrative investigation, as the teacher resigned.

### Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

| Incident Date 2008-09-27 | OIG Case Number 11-0000445-IR | Case Type Criminal Investigation | Allegations 1. Other Criminal Act | Rating Sufficient |
|---|---|---|---|---|

### Facts of the Case

On September 27, 2008, at a local bar, one officer allegedly approached a man from behind then punched and threw him on the ground. When outside law enforcement arrived, the officer reported that the man fell on a pool table. Another officer admitted to punching the man after he was knocked to the ground. Additionally, it was alleged that the officers bribed the victim in order that he would not file a criminal complaint. The investigation failed to establish probable cause to believe that a crime was committed; therefore, the case was not referred to the district attorney's office. The Office of Internal Affairs opened an administrative investigation, which the OIG accepted for monitoring.

### Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

| Incident Date 2010-06-12 | OIG Case Number 11-0000526-IR | Case Type Administrative Investigation | Allegations | Rating Insufficient |
|---|---|---|---|---|
| | | | 1. **Neglect of Duty** | |
| | | | 2. **Use of Force** | |
| | | | 3. **Failure to Report** | |
| | | | 4. **Failure to Report** | |
| | | | 5. **Dishonesty** | |
| | | | 6. **Discourteous Treatment** | |

## Facts of the Case

On June 12, 2010, it was alleged that a lieutenant witnessed two officers forcibly place an inmate against a wall and failed to report his observations. It was further alleged that another lieutenant observed the incident and was dishonest in her report of the incident. Also, the lieutenant then allegedly took her original report from the captain's office and shredded it. Then she was allegedly discourteous to the captain when she was asked to return the original report. Further, it was alleged that three officers also witnessed the use of force and failed to report it.

## Investigative Assessment

The special agent completed a thorough investigation which was delivered to the hiring authority five days before the deadline to take disciplinary action. The special agent was very diligent in her investigation and delays were in large part due to untimely initial case processing by the hiring authority.

## Assessment Questions

- Was the matter referred to the Office of Internal Affairs as soon as reasonably practical, within 45 calendar days of the date of discovery?

  *The date of discovery was June 12, 2010; however, the matter was not referred to the Office of Internal Affairs until December 28, 2010.*

- Did OIA Central Intake make a determination regarding the case within 30 calendar days?

  *The referral to OIA Central Intake was dated December 28, 2010; however, OIA Central Intake did not make a determination regarding the case until February 16, 2011.*

- Within 21 calendar days, did the department attorney make an entry into CMS accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

  *The department attorney was assigned the case on February 23, 2011, and on March 9, 2011, he made an incomplete CMS entry which did not accurately confirm the date of the reported incident and the date of discovery.*

- Was the investigation, or subject interview, completed at least 35 days before the deadline to take disciplinary action?

  *The investigation was delivered to the hiring authority on June 6, 2011. The deadline to take disciplinary action was June 11, 2011. The agent was assigned the case on February 23, 2011. This delay in large part was caused by the hiring authority delay in referring the case to OIA Central Intake.*

| Incident Date 2011-02-08 | OIG Case Number 11-0000748-IR | Case Type Criminal Investigation | Allegations | | Rating Sufficient |
|---|---|---|---|---|---|
| | | | 1. | Other Criminal Act | |

## Facts of the Case

On February 8, 2011, it was alleged that a cook was providing mobile phones, marijuana, and tobacco to inmates in return for money. The investigation failed to establish probable cause to believe a crime was committed. Therefore, the case was not referred to the district attorney's office. The department did not open an administrative investigation due to lack of evidence.

## Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

| Incident Date 2011-01-08 | OIG Case Number 11-0000749-IR | Case Type Administrative Investigation | Allegations | | Rating Sufficient |
|---|---|---|---|---|---|
| | | | 1. | Use of Force | |
| | | | 2. | Failure to Report | |
| | | | 3. | Failure to Report | |
| | | | 4. | Neglect of Duty | |
| | | | 5. | Other | |

## Facts of the Case

On January 8, 2011, a sergeant allegedly used and failed to report unnecessary force on an inmate who was in restraints by throwing the inmate against the bunk and wall. It was alleged that three officers witnessed that use of force and failed to report it. Later, during the early morning hours, the same sergeant allegedly failed to timely respond to the inmate's need to urinate which resulted in the inmate urinating on himself. The sergeant further disregarded the inmate by not addressing the inmate's need to be cleaned and be given clean clothes. The sergeant was allegedly distracted because he was watching television.

## Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

| Incident Date 2011-01-01 | OIG Case Number 11-0000751-IR | Case Type Administrative Investigation | Allegations | | Rating Sufficient |
|---|---|---|---|---|---|
| | | | 1. | Other Failure of Good Behavior | |
| | | | 2. | Failure to Report | |
| | | | 3. | Dishonesty | |

## Facts of the Case

On January 1, 2011, an officer allegedly was involved in a physical altercation with his girlfriend and subsequently was arrested for domestic violence. Additionally, the officer allegedly failed to report the arrest to the hiring authority.

## Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

| Incident Date **2011-03-03** | OIG Case Number **11-0000847-IR** | Case Type **Criminal Investigation** | Allegations<br>1. Other Criminal Act | Rating **Sufficient** |
|---|---|---|---|---|

## Facts of the Case

On March 3, 2011, it was alleged that an officer was engaged in an overly familiar relationship with an inmate and exchanged written correspondence with the inmate. The officer allegedly engaged in a sexual relationship with the inmate, and provided a music CD and jewelry to the inmate. The matter was referred to the district attorney's office, which filed criminal charges. The Office of Internal Affairs opened an administrative investigation, which the OIG accepted for monitoring.

## Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

| Incident Date **2010-11-07** | OIG Case Number **11-0000901-IR** | Case Type **Administrative Investigation** | Allegations<br>1. Discourteous Treatment<br>2. Failure to Report<br>3. Failure to Report<br>4. Use of Force | Rating **Insufficient** |
|---|---|---|---|---|

## Facts of the Case

On November 7, 2010, four officers allegedly forced an inmate to the ground to restrain him. One of the officers was allegedly discourteous to the inmate, thereby escalating the situation and endangering those involved. Another officer allegedly failed to intervene when he witnessed the discourteous treatment. All officers also allegedly failed to report the use of force they observed.

## Investigative Assessment

The investigation was not completed timely. The report was submitted to the hiring authority less than 35 days before the deadline for taking action. However, the investigation was thorough and provided the hiring authority with the information needed to adequately address the allegations.

## Assessment Questions

- Was the matter referred to the Office of Internal Affairs as soon as reasonably practical, within 45 calendar days of the date of discovery?

  *The date of discovery was November 7, 2010. The matter was not referred to the Office of Internal Affairs until February 10, 2011, which is 95 calendar days after discovery.*

- Did OIA Central Intake make a determination regarding the case within 30 calendar days?

  *The request was February 10, 2011. OIA Central Intake did not make its determination until March 16, 2011, which is 34 calendar days.*

- Within 21 calendar days, did the department attorney make an entry into CMS accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

  *Although the department attorney timely made an entry into CMS confirming the date of the reported incident and deadline for taking disciplinary action, the department attorney failed to confirm the date of discovery.*

- Was the investigation, or subject interview, completed at least 35 days before the deadline to take disciplinary action?

  *The deadline for taking disciplinary action was November 6, 2011. The investigation was completed October 17, 2011, which is 21 days before the deadline to taking disciplinary action.*

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| 2010-11-01 | 11-0001140-IR | Criminal Investigation | 1.  Other Criminal Act | Sufficient |

### Facts of the Case
On November 1, 2010, it was alleged that an officer smuggled marijuana, methamphetamine, and mobile phones into the institution for inmates. The investigation failed to establish probable cause to believe that a crime was committed. The matter was not referred to the district attorney's office. The Office of Internal Affairs opened an administrative investigation, which the OIG accepted for monitoring.

### Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| 2011-02-11 | 11-000,-IR | Criminal Investigation | 1.  Contraband | Sufficient |

### Facts of the Case
It was alleged on February 11, 2011, that an officer was involved in an overly familiar relationship with an inmate and provided him narcotics and mobile phones which the inmate sold to other inmates. The investigation failed to establish probable cause to believe that a crime was committed. Therefore, the case was not referred to the district attorney's office. The department did not open an administrative investigation due to lack of evidence.

### Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| 2011-03-01 | 11-0001309-IR | Criminal Investigation | 1.  Other Criminal Act | Sufficient |

### Facts of the Case
On March 1, 2011, it was alleged that a material and stores supervisor had been engaging in sexual misconduct with an inmate and bringing that inmate tobacco, jewelry, and food. The investigation failed to establish probable cause to believe a crime was committed. Therefore, the case was not referred to the district attorney's office. The department did not open an administrative investigation due to lack of evidence.

### Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| 2011-03-21 | 11-0001382-IR | Criminal Investigation | 1.  Other | Sufficient |

### Facts of the Case
On March 21, 2011, it was alleged that an officer was engaged in an overly familiar relationship with an inmate. A search of the inmate's property revealed the phone number of the officer contained in the inmate's phone book. The case was referred to the district attorney's office, which declined to prosecute. The Office of Internal Affairs opened an administrative investigation, which the OIG accepted for monitoring.

### Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

| Incident Date 2011-03-09 | OIG Case Number 11-0001384-IR | Case Type Criminal Investigation | Allegations 1. Other Criminal Act | Rating Sufficient |
|---|---|---|---|---|

### Facts of the Case
On March 9, 2011, it was alleged that an officer was providing narcotics and tobacco to inmates and in exchange the inmates exposed themselves to the officer. The investigation failed to establish probable cause to believe a crime was committed; therefore, the case was not referred to the district attorney's office. The Office of Internal Affairs opened an administrative investigation, which the OIG accepted for monitoring.

### Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

| Incident Date 2011-03-30 | OIG Case Number 11-0001550-IR | Case Type Administrative Investigation | Allegations 1. Neglect of Duty | Rating Sufficient |
|---|---|---|---|---|

### Facts of the Case
On March 30, 2011, two licensed psychiatric technicians allegedly failed to follow department policy when they became aware that an inmate housed in an administrative segregation unit indicated he felt like hurting himself. The inmate later committed suicide.

### Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

| Incident Date 2010-11-04 | OIG Case Number 11-0001560-IR | Case Type Administrative Investigation | Allegations 1. Contraband  2. Sexual Misconduct | Rating Sufficient |
|---|---|---|---|---|

### Facts of the Case
On November 4, 2010, a supervising cook allegedly engaged in a sexual relationship with an inmate and introduced contraband into the secured perimeter of the institution for inmates.

### Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

| Incident Date 2011-01-23 | OIG Case Number 11-0001607-IR | Case Type Administrative Investigation | Allegations 1. Contraband  2. Other | Rating Sufficient |
|---|---|---|---|---|

### Facts of the Case
On January 23, 2011, an officer allegedly smuggled mobile phones and tobacco into the institution in exchange for money. The officer was charged with a federal offense of wire fraud, to which the officer subsequently plead guilty.

### Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

| Incident Date 2008-09-27 | OIG Case Number 11-0001732-IR | Case Type Administrative Investigation | Allegations | Rating Sufficient |
|---|---|---|---|---|
| | | | 1. Other | |
| | | | 2. Discourteous Treatment | |
| | | | 3. Failure to Report | |
| | | | 4. Other Failure of Good Behavior | |

**Facts of the Case**

On September 27, 2008, at a local bar, an officer allegedly approached a man from behind then punched and threw him on the ground. When outside law enforcement arrived, the officer reported that the man fell on a pool table. Another officer admitted to punching the man after he was knocked to the ground. Additionally, it was alleged that the officers bribed the victim so that he would not file a criminal complaint.

**Investigative Assessment**

Overall, the department's investigative process sufficiently complied with policies and procedures.

| Incident Date 2011-04-02 | OIG Case Number 11-0001734-IR | Case Type Administrative Investigation | Allegations | Rating Sufficient |
|---|---|---|---|---|
| | | | 1. Dishonesty | |
| | | | 2. Neglect of Duty | |
| | | | 3. Other | |

**Facts of the Case**

On April 2, 2011, an officer allegedly caused damage to a state vehicle and failed to report the damage. It was further alleged that on April 7, 2011, the officer filed a false report denying any knowledge of how the vehicle was damaged. Also, a sergeant allegedly failed to report the damage to the vehicle.

**Investigative Assessment**

Overall, the department's investigative process sufficiently complied with policies and procedures.

| Incident Date 2011-02-09 | OIG Case Number 11-0001905-IR | Case Type Administrative Investigation | Allegations | Rating Sufficient |
|---|---|---|---|---|
| | | | 1. Failure to Report | |
| | | | 2. Use of Force | |

**Facts of the Case**

On February 9, 2011, an officer allegedly used unnecessary force when he kicked an inmate in the back while placing the inmate into a holding cell. Also, the officer allegedly tried to dissuade a witness from reporting the incident.

**Investigative Assessment**

Overall, the department's investigative process sufficiently complied with policies and procedures.

| Incident Date 2011-08-01 | OIG Case Number 11-0002091-IR | Case Type Criminal Investigation | Allegations | Rating Sufficient |
|---|---|---|---|---|
| | | | 1. Other Criminal Act | |

### Facts of the Case
On August 1, 2011, it was alleged that an officer was furnishing mobile phones to inmates for personal gain. The case was referred to the district attorney's office for prosecution, and criminal charges were filed. The Office of Internal Affairs opened an administrative investigation, which the OIG accepted for monitoring.

### Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

| Incident Date 2011-07-17 | OIG Case Number 11-0002092-IR | Case Type Criminal Investigation | Allegations | Rating Sufficient |
|---|---|---|---|---|
| | | | 1. Other Criminal Act | |

### Facts of the Case
On July 17, 2011, it was alleged that a materials and store supervisor was smuggling mobile phones, marijuana, and tobacco into the institution for personal gain. The matter was referred to the district attorney's office and a criminal complaint was filed. An administrative investigation was not opened because the employee resigned.

### Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

| Incident Date 2010-12-10 | OIG Case Number 11-0002241-IR | Case Type Administrative Investigation | Allegations | Rating Insufficient |
|---|---|---|---|---|
| | | | 1. Use of Force | |
| | | | 2. Use of Force | |
| | | | 3. Dishonesty | |

### Facts of the Case
It was alleged that on December 10, 2010, an officer used unnecessary force when he used his foot to stomp on an inmate who was lying on the floor in a prone position. It was also alleged that the officer used excessive force when he continued to spray the inmate with pepper spray after the inmate was in a prone position. Finally, it was alleged that the officer was dishonest in his reports of the incident.

### Investigative Assessment
The hiring authority failed to refer the case to the Office of Internal Affairs in a timely manner. Further, the Office of Internal Affairs did not make a determination regarding the case within a timely manner.

### Assessment Questions

- Was the matter referred to the Office of Internal Affairs as soon as reasonably practical, within 45 calendar days of the date of discovery?

  *The date of discovery was January 7, 2011; however, the referral to the Office of Internal Affairs was not made until July 8, 2011.*

- Did OIA Central Intake make a determination regarding the case within 30 calendar days?

  *The referral to the Office of Internal Affairs was made on July 8, 2011; however, OIA Central Intake did not make a determination regarding the case until September 7, 2011.*

| Incident Date 2011-01-01 | OIG Case Number 11-0002242-IR | Case Type Criminal Investigation | Allegations 1.  Other Criminal Act | Rating Sufficient |
|---|---|---|---|---|

### Facts of the Case

It was alleged that during 2011, a material and stores supervisor accepted bribes from inmates and supplied inmates with narcotics. On October 25, 2011, the material and stores supervisor was intercepted as he attempted to introduce marijuana, tobacco, and mobile phones into the institution. The investigation was referred to the district attorney's office, which filed criminal charges. The Office of Internal Affairs opened an administrative investigation, which the OIG accepted for monitoring.

### Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

| Incident Date 2011-03-01 | OIG Case Number 11-0002257-IR | Case Type Criminal Investigation | Allegations 1.  Other Criminal Act | Rating Sufficient |
|---|---|---|---|---|

### Facts of the Case

Between March 2011 and August 2011, a compliance coordinator allegedly was overly familiar with an inmate when she engaged in sexual acts with the inmate. She also allegedly provided the inmate with a mobile phone. After consultation with the district attorney's office, the case was not referred to the district attorney's office. The Office of Internal Affairs opened an administrative investigation, which the OIG accepted for monitoring.

### Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

# SOUTH REGION

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| **2009-05-07** | **09-0003258-IR** | Criminal Investigation | 1. Sexual Misconduct<br><br>2. Contraband | Insufficient |

## Facts of the Case

On May 7, 2009, an internal audit was conducted of the parole cash assistance program for a parole complex. The internal audit revealed several deficiencies in the cash assistance program, including missing bank drafts, bank drafts issued without approval, missing cash from parolee repayments, missing food vouchers, and missing bus tokens. The investigation failed to establish probable cause to believe that a crime was committed. The matter was not referred to the district attorney's office. The Office of Internal Affairs opened an administrative investigation, which the OIG accepted for monitoring.

## Investigative Assessment

The hiring authority submitted a request for investigation on June 9, 2009 for the alleged theft. An agent was assigned within the regional Office of Internal Affairs on September 23, 2009. The case was transferred to a different agent on October 21, 2009. The first interview did not take place until August 23, 2010, or after the passage of 306 days. Two more interviews were conducted on March 15, 2011, or after the passage of 235 days. The employees suspected of engaging in misconduct were interviewed on June 28, 2011, a passage of an additional 74 days. The case was closed on August 21, 2011. The case closure date is 803 days from the time the hiring authority made the initial request for investigation. The long delays related to this case were unreasonable and there is sparse documentation within the case management system justifying these delays. The department attorney failed to timely consult with the special agent and the OIG regarding the investigative plan. The department attorney also failed to note in the case management system the deadline for taking action.

## Assessment Questions

- Did OIA Central Intake make a determination regarding the case within 30 calendar days?

  *The case was referred to the Office of Internal Affairs on June 9, 2009. The case was approved for investigation by OIA Central Intake on September 2, 2009, or after the passage of 85 days.*

- Did the special agent adequately confer with the OIG upon case initiation and prior to finalizing the investigative plan?

  *The OIG began monitoring this case approximately 20 days after the case was referred to the regional Office of Internal Affairs. There was no conference between the assigned agent and the OIG regarding investigative plans.*

- Did the special agent adequately confer with the department attorney upon case initiation and prior to finalizing the investigative plan?

  *A conference between the assigned investigator and the department attorney regarding investigative plans was not documented in the case management system.*

- Within 21 calendar days, did the department attorney make an entry into CMS accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

  *The department attorney did not make an entry into the case management system confirming any relevant dates for this case.*

- Did the department attorney attend investigative interviews for key witnesses to assess witness demeanor and credibility?

  *The department attorney attended no interviews in this case.*

- Did the department attorney cooperate with and provide continual real-time consultation with the OIG throughout the investigative phase?

  *Contact from the department attorney was sporadic, and because the department attorney did not attend any witness interviews, there was no consultation with the assigned investigator from the department attorney.*

- No later than 21 calendar days following assignment of the case, did the department attorney contact the assigned special agent and the OIG monitor to discuss the elements of a thorough investigation of the alleged misconduct?

  *The department attorney was assigned to the case on September 21, 2009. No contact from the department attorney to either the agent or the OIG monitor was made for the purpose of discussing the elements of a thorough investigation until November 4, 2009, or after the passage of 44 days.*

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| 2010-03-08 | 10-0000802-IR | **Criminal Investigation** | 1. **Sexual Misconduct**<br><br>2. **Misuse of Authority**<br><br>3. **Other Criminal Act** | **Sufficient** |

## Facts of the Case

On March 8, 2010, a parolee's mother alleged that she was engaging in a sexual relationship with a parole agent in exchange for promises that the parole agent would provide favors for the parolee. On March 19, 2010, the Office of Internal Affairs conducted surveillance of the parole agent at the residence of the parolee and his mother, and subsequently apprehended the parole agent when the parole agent exposed himself in the process of asking for sexual relations. The case was referred to the district attorney's office, which declined to prosecute. The Office of Internal Affairs opened an administrative investigation, which the OIG accepted for monitoring.

## Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| 2010-07-06 | 10-0002578-IR | **Administrative Investigation** | 1. **Discourteous Treatment**<br><br>2. **Failure to Report**<br><br>3. **Dishonesty**<br><br>4. **Use of Force** | **Insufficient** |

## Facts of the Case

On July 6, 2010, a lieutenant allegedly exchanged profanities with an inmate while in the lieutenant's office. It was further alleged that the lieutenant, in a fit of anger, grabbed the seated and restrained inmate on the chest and pushed him to the ground. The lieutenant also allegedly failed to complete a use-of-force report and provided misleading statements to his supervisor. It was further alleged that a licensed vocational nurse falsified a report of injury by the inmate by failing to document how the inmate stated he sustained observable injuries on his person.

## Investigative Assessment

The Office of Internal Affairs, the hiring authority, and the department attorney did not perform in accordance with department policy. The hiring authority redirected the lieutenant to the mailroom following the incident. There is no indication that the department attorney or the OIG were informed of this. The OIG also recommended adding additional subjects of investigation based on a series of questionable actions taken by two other lieutenants and an associate warden. The department attorney recommended not adding the additional subjects. The hiring authority elected not to add the additional subjects, thereby unnecessarily restricting the scope of this investigation and possible misconduct. The Office of Internal Affairs' investigation was incomplete and the case was returned to the Office of Internal Affairs for further investigation twice after the initial report was submitted to the hiring authority. The Office of Internal Affairs submitted a final report to the hiring authority in February 2011, which was approximately six months after the investigator was assigned. After the report was submitted, the hiring authority requested additional investigation against the lieutenant. The additional investigation and interviews took an additional two and one-half months. The report was submitted to the hiring authority less than 35 days before the deadline for taking action. The initial request for further investigation from the hiring authority, however, was not complete, which contributed to the delay.

## Assessment Questions

- Within 21 calendar days, did the department attorney make an entry into CMS accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

  *The department attorney did not confirm the date of the incident, date of discovery of the alleged misconduct, or the deadline for taking disciplinary action.*

- Did the special agent adequately prepare for all aspects of the investigation?

  *The hiring authority requested additional investigation be conducted. The additional investigation sought to clarify certain points that were not adequately addressed in the original report.*

- Were all of the interviews thorough and appropriately conducted?

  *The hiring authority returned the case to the Office of Internal Affairs for additional investigation. The assigned special agent completed the additional clarification interviews thereafter. Once the areas the hiring authority requested clarification on were brought to the attention of the special agent, the agent completed the interviews.*

- Was the Office of Internal Affairs investigation, or subject only interview, conducted with due diligence?

  *The special agent was assigned on August 24, 2010, and conducted the first complainant interview on September 15, 2010. Additional interviews were conducted on October 25, 2010. From then, the next interviews were conducted on January 27, 2011, or after the passage of 94 days. Additionally, after the case was referred back to the special agent for clarification on April 19, 2011, the interview to provide the clarification did not occur until May 26, 2011, or after the passage of 37 days. This happened partially because the lieutenant was off of work due to an injury, partially because the hiring authority's original request for clarification did not list each of the areas for which clarification was sought, and while the deadline for taking disciplinary action was pending.*

- Was the investigation, or subject interview, completed at least 35 days before the deadline to take disciplinary action?

  *The original report was provided with substantial time remaining before the deadline to take disciplinary action. However, during the process of the special agent conducting additional clarification interviews and the final completed report with clarifications was sent to the hiring authority, approximately 3 more months passed and the case was not submitted to the hiring authority at least 35 days before the deadline to take disciplinary action.*

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| **2010-04-17** | **10-0003573-IR** | **Administrative Investigation** | 1.  **Neglect of Duty** <br><br> 2.  **Failure to Report** <br><br> 3.  **Use of Force** <br><br> 4.  **Neglect of Duty** <br><br> 5.  **Dishonesty** <br><br> 6.  **Dishonesty** | **Insufficient** |

## Facts of the Case

On April 17, 2010, a sergeant and two officers allegedly conducted a cell extraction and used unnecessary force on an inmate. Specifically, it was alleged that an inmate covered up the window to his cell for several hours and refused to take the covering down. The sergeant allegedly ordered the cell door opened and he and the two officers went into the cell and forced the inmate down on his bunk causing swelling and bruising to the inmate's head and face. It was also alleged that the sergeant and two officers were dishonest in their reports of the incident.

## Investigative Assessment

For more than five months, the hiring authority delayed sending this matter to the Office of Internal Affairs for review. Despite the initial delay, the special agent conducted a thorough and timely investigation. The department attorney did not attend any of the interviews in the case. Therefore, the department attorney did not provide adequate legal counsel to the investigator. The department attorney did not make the required entries into the case management system nor did he consult with the OIG during the pendency of the investigation. The hiring authority was cooperative for the duration of the investigation.

## Assessment Questions

- Was the matter referred to the Office of Internal Affairs as soon as reasonably practical, within 45 calendar days of the date of discovery?

  *The incident occurred on April 17, 2010, and was discovered on the same date. However, the matter was not referred to the Office of Internal Affairs until October 4, 2010.*

- Within 21 calendar days, did the department attorney make an entry into CMS accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

  *The department attorney did not input any of the required information into the case management system.*

- No later than 21 calendar days following assignment of the case, did the department attorney contact the assigned special agent and the OIG monitor to discuss the elements of a thorough investigation of the alleged misconduct?

  *The special agent initiated the contact with the OIG and the department attorney to set up the initial case conference.*

- Did the department attorney attend investigative interviews for key witnesses to assess witness demeanor and credibility?

  *The department attorney did not attend any interviews in this case, including the two subject interviews. There were a total of 17 interviews conducted.*

- Upon completion of the investigation, was a copy of the investigative report timely forwarded to the OIG to allow for feedback before it was forwarded to the hiring authority or prosecuting agency?

  *The special agent forwarded the final report to the hiring authority before providing a copy to the OIG. As a result, the OIG was prevented from providing feedback to the agent about the report.*

- Within 21 calendar days following receipt of the investigative report, did the department attorney review the report and provide appropriate substantive feedback addressing the thoroughness and clarity of the report?

  *There is no indication in the case management system that the department attorney reviewed the report.*

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| **2009-10-28** | **10-0003734-IR** | **Criminal Investigation** | 1.    **Contraband** | **Sufficient** |

### Facts of the Case

On October 28, 2009, an officer allegedly smuggled heroin and mobile phones into an institution in exchange for money from inmates. The investigation failed to establish probable cause to believe a crime was committed. Therefore, the case was not referred to the district attorney's office. The department did not open an administrative investigation due to lack of evidence.

### Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

| Incident Date 2010-10-27 | OIG Case Number 10-0003786-IR | Case Type Criminal Investigation | Allegations 1. Other Criminal Act | Rating Insufficient |
|---|---|---|---|---|

## Facts of the Case

On October 27, 2010, a private citizen allegedly contacted outside law enforcement because he had been in a business dispute with his business partner and he was fearful because the business partner had a handgun in his possession. Upon responding, outside law enforcement discovered the business partner had a semi-automatic firearm, three high capacity magazines, and 274 rounds of law enforcement-only ammunition. It was alleged that the business partner was not allowed to have a firearm because of his criminal history. A records check of the firearm showed that it was registered to a parole agent. Outside law enforcement contacted the parole agent and he allegedly stated he sold the firearm to the business partner. It was alleged that the parole agent had not gone through appropriate transfer requirements mandated by federal and state law regarding the transferring of firearms. The case was referred to the district attorney's office, which declined to prosecute. The Office of Internal Affairs opened an administrative investigation, which the OIG accepted for monitoring.

## Investigative Assessment

The Office of Internal Affairs did not thoroughly investigate two allegations in this case. First, the assigned investigator did not determine prior to the final report being submitted to the district attorney whether the 274 rounds were indeed law enforcement-only ammunition. Second, the assigned investigator did not determine whether the private citizen who was found to have been in possession of the firearm was in fact prohibited from possessing a firearm by state and federal law. The department attorney failed to attend any witness interviews. The department attorney also failed to timely analyze the deadline for taking action and did not timely meet with the special agent regarding the investigative plan. The department attorney failed to provide written feedback regarding the investigation and report.

## Assessment Questions

- Did OIA Central Intake make a determination regarding the case within 30 calendar days?

  *The hiring authority submitted a request for investigation on November 3, 2010. The case went through OIA Central Intake on December 15, 2010, or after the passage of 42 days.*

- Within 21 calendar days, did the department attorney make an entry into CMS accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

  *The department attorney who was originally assigned to the case did assess the deadline for taking disciplinary action, but no other information related to the date of the incident or the date of discovery was recorded. After the case was reassigned to a different attorney, none of the required information was added.*

- No later than 21 calendar days following assignment of the case, did the department attorney contact the assigned special agent and the OIG monitor to discuss the elements of a thorough investigation of the alleged misconduct?

  *The assigned investigator met separately with the OIG monitor and the department attorney. The department attorney was assigned on January 3, 2011, and met with the assigned investigator on February 1, 2011, or after the passage of 29 days.*

- Did the Office of Internal Affairs adequately consult with the OIG, the department attorney, and the appropriate prosecuting agency to determine if an administrative investigation should be conducted concurrently with the criminal investigation?

  *The Office of Internal Affairs did not consult with the appropriate prosecuting agency to determine if an administrative investigation should be conducted concurrently.*

- Did the special agent adequately prepare for all aspects of the investigation?

  *There were two additional aspects of the case that were not adequately investigated by the assigned investigator. There was an allegation that the 274 rounds of ammunition discovered were for law enforcement issue only. Subsequent to the investigation being completed, it was determined that was not the case. This was not adequately investigated or documented in the investigative report. Additionally, there was an allegation that the private citizen with the weapon was prohibited from possessing a firearm due to his criminal history. It was determined after the conclusion of the investigation and rejection of the case by the district attorney that the individual did in fact have a criminal history, but not one which would prevent him from possessing a firearm. This also was not adequately investigated or documented in the final investigative report.*

- Did the department attorney attend investigative interviews for key witnesses to assess witness demeanor and credibility?

  *The department attorney did not attend key witness interviews.*

- Within 21 calendar days following receipt of the investigative report, did the department attorney review the report and provide appropriate substantive feedback addressing the thoroughness and clarity of the report?

  *The department attorney provided no feedback on the assigned investigator's report.*

- Did the department provide written confirmation summarizing all critical discussions about the investigative report to the special agent with a copy to the OIG?

  *There was no written confirmation summarizing any discussions about the investigative report to either the assigned investigator or to the OIG monitor.*

- Was the Office of Internal Affairs investigation, or subject only interview, conducted with due diligence?

  *The assigned investigator took almost five months before starting interviews on this case.*

- Was the investigation thorough and appropriately conducted?

  *There were two additional aspects of the case that were not adequately investigated by the assigned investigator. There was an allegation that the 274 rounds of ammunition discovered were for law enforcement issue only, but subsequent to the investigation being completed, it was determined that was not the case. Additionally, there was an allegation that the private citizen with the weapon was prohibited from possessing a firearm due to his criminal history. After the final report was submitted, it was determined that the individual did in fact have a criminal history, but not one which would prevent him from possessing a firearm. This also was not adequately investigated or documented in the final investigative report.*

| Incident Date 2009-03-27 | OIG Case Number 10-0003857-IR | Case Type Administrative Investigation | Allegations | Rating Insufficient |
|---|---|---|---|---|
| | | | 1. Other Failure of Good Behavior | |
| | | | 2. Dishonesty | |
| | | | 3. Misuse of Authority | |
| | | | 4. Failure to Report | |
| | | | 5. Failure to Report | |
| | | | 6. Other | |
| | | | 7. Over-familiarity | |

## Facts of the Case

On March 27, 2009, a supervising cook was arrested on her way to work for allegedly carrying an unregistered concealed firearm. Additionally, letters were found on her person and in the vehicle allegedly indicating an overly familiar relationship with an inmate.

## Investigative Assessment

The Office of Internal Affairs did not conduct an investigation in this matter until almost two years passed from the date of the alleged misconduct. Otherwise, the investigation was conducted in substantial compliance with the department's policies and procedures.

## Assessment Questions

- Did the department attorney appropriately determine that the deadline for taking disciplinary action as originally calculated should be modified and consult with the OIG and special agent?

  *The department attorney did not enter the deadline for taking disciplinary action.*

- Did the Office of Internal Affairs adequately consult with the OIG, the department attorney, and the appropriate prosecuting agency to determine if an administrative investigation should be conducted concurrently with the criminal investigation?

  *This case stemmed from an Office of Internal Affairs criminal investigation. The criminal investigation was not conducted with due diligence and the deadline to file criminal charges had passed by the time the investigation was completed without a referral to the district attorney. There was no consultation with the district attorney, the OIG, or the department attorney regarding whether the administrative investigation could be conducted concurrently with the criminal investigation, and nearly two years passed from the date of the alleged misconduct before the administrative case was opened.*

- Within 21 calendar days following receipt of the investigative report, did the department attorney review the report and provide appropriate substantive feedback addressing the thoroughness and clarity of the report?

  *There is no indication that the department attorney provided any feedback regarding the investigative report at any time.*

- Did the department provide written confirmation summarizing all critical discussions about the investigative report to the special agent with a copy to the OIG?

  *The department attorney did not provide any written confirmation summarizing any critical discussion regarding the investigative report.*

- Was the Office of Internal Affairs investigation, or subject only interview, conducted with due diligence?

  *This case stemmed from an Office of Internal Affairs criminal investigation that was not timely completed based on the same set of circumstances surrounding the supervising cook. The deadline to file criminal charges had passed in that investigation before the investigation itself was completed. This case was not opened until after the criminal case was closed, which resulted in a long delay from the time of the discovery of the alleged misconduct to the time the investigation in this case was started. Over two years passed between the date the misconduct was discovered and the date the final report was submitted to the hiring authority for consideration.*

- Did the department attorney cooperate with and provide continual real-time consultation with the OIG throughout the investigative phase?

  *The department attorney provided little cooperation with the OIG. The assigned OIG monitor could not attend the subject interview as the department attorney insisted that it be scheduled on a date convenient for him, not for everyone. No documents regarding the sufficiency of the report were provided to the OIG, nor was there any written confirmation of penalty discussions provided.*

| Incident Date 2010-10-29 | OIG Case Number 10-0003911-IR | Case Type Administrative Investigation | Allegations | Rating Insufficient |
|---|---|---|---|---|
| | | | 1. Contraband<br><br>2. Failure to Report<br><br>3. Neglect of Duty<br><br>4. Dishonesty | |

## Facts of the Case

On October 29, 2010, an officer allegedly left his assigned post without authorization to conduct searches of laundry bags coming into the institution from an outside source. The officer claimed that an undisclosed confidential inmate informant told him contraband was being introduced to the institution through the laundry. The officer emptied the clean clothes from one laundry bag onto the laundry room floor. Another officer left the area to retrieve an empty laundry cart for the clean clothes. When the second officer returned, the first officer had in his possession a bag with tobacco and rolling papers. The second officer reviewed a security video which showed the first officer remove a bag from his jumpsuit. When a sergeant was informed of the situation, the sergeant allegedly refused to get involved. It was further alleged that the first officer was dishonest during his investigatory interview.

## Investigative Assessment

The Office of Internal Affairs and the department attorney did not perform in accordance with policies and procedures. The special agent assigned to this case did not conduct timely interviews and did not timely complete the investigative report. Also, the department attorney did not make timely assessments of the deadline for taking discipline and of the investigative report.

## Assessment Questions

- Did OIA Central Intake make a determination regarding the case within 30 calendar days?

  *The hiring authority submitted a request for investigation to the Office of Internal Affairs on November 19, 2010. The Office of Internal Affairs did not make a decision on the case until December 29, 2010, or after the passage of 40 days.*

- Within 21 calendar days, did the department attorney make an entry into CMS accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

  *The department attorney did not confirm the date of the incident, the date of discovery, the deadline for taking disciplinary action, or any exceptions thereto at any time.*

- Did the department provide written confirmation summarizing all critical discussions about the investigative report to the special agent with a copy to the OIG?

  *The department attorney spoke with the assigned investigator regarding the report but never provided written documentation summarizing that discussion.*

- Was the Office of Internal Affairs investigation, or subject only interview, conducted with due diligence?

  *Between the date the agent was assigned on January 11, 2011, and the date the first interview was conducted on June 29, 2011, 169 days had passed.*

| Incident Date<br>**2010-09-01** | OIG Case Number<br>**11-0000219-IR** | Case Type<br>**Administrative Investigation** | Allegations | Rating<br>**Sufficient** |
|---|---|---|---|---|
| | | | 1. **Misuse of Authority**<br>2. **Dishonesty**<br>3. **Insubordination** | |

### Facts of the Case

On September 1, 2010, an officer allegedly entered an automobile dealer's service department and falsely claimed to be a California Highway Patrol officer. The officer allegedly was involved in a verbal altercation with an employee at the automobile dealership, displayed his department-issued badge, and asked for a service bill to be reduced based on his claimed employment with the California Highway Patrol. The officer allegedly lied to California Highway Patrol investigators about the incident and to the Office of Internal Affairs when questioned about these events.

### Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

| Incident Date<br>**2010-03-01** | OIG Case Number<br>**11-0000348-IR** | Case Type<br>**Administrative Investigation** | Allegations | Rating<br>**Sufficient** |
|---|---|---|---|---|
| | | | 1. **Dishonesty**<br>2. **Over-familiarity**<br>3. **Contraband**<br>4. **Sexual Misconduct** | |

### Facts of the Case

It was alleged that in March 2010, a lead custodian was involved in overly familiar relationships with two inmates. Specifically, the custodian provided her telephone number to the inmates and engaged in sexually explicit correspondence with one of them. She also allegedly got a tattoo of the name of one of the inmates on her wrist. It was further alleged that the custodian was providing narcotics and mobile phones to the inmates and that she lied during her interview with the Office of Internal Affairs.

### Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

| Incident Date<br>**2010-11-04** | OIG Case Number<br>**11-0000384-IR** | Case Type<br>**Administrative Investigation** | Allegations | Rating<br>**Sufficient** |
|---|---|---|---|---|
| | | | 1. **Other Criminal Act**<br>2. **Other Failure of Good Behavior** | |

### Facts of the Case

On November 4, 2010, an officer allegedly punched his girlfriend in the face, grabbed her arms, and placed her in a "Full Nelson" wrestling hold. Outside law enforcement officers responded and the officer was arrested.

### Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

| Incident Date | OIG Case Number | Case Type **Administrative Investigation** | Allegations | Rating **Sufficient** |
|---|---|---|---|---|
| **2010-12-04** | **11-0000385-IR** | | 1.  **Other Failure of Good Behavior**  2.  **Discourteous Treatment**  3.  **Contraband**  4.  **Neglect of Duty**  5.  **Dishonesty** | |

## Facts of the Case

On December 4, 2010, an officer was arrested for battery on his ex-wife. At the time of his arrest it was discovered that he was in possession of a loaded firearm that he allegedly was unqualified to possess. It was also alleged that the officer was dishonest during an interview with the Office of Internal Affairs when he denied taking his personal mobile phone inside the secured perimeter of the institution and using it while he was on duty.

## Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

| Incident Date 2010-07-19 | OIG Case Number 11-0000493-IR | Case Type Administrative Investigation | Allegations | Rating Insufficient |
|---|---|---|---|---|
| | | | 1. Insubordination<br>2. Failure to Report<br>3. Use of Force | |

## Facts of the Case

On July 19, 2010, a supervising parole agent allegedly used excessive force against a disabled and handcuffed parolee during the parolee's arrest. It was further alleged that three parole agents who were present during the arrest failed to document the use of force. After the supervising parole agent was notified of the pending investigation, it was alleged that the supervising parole agent was insubordinate when he disregarded the admonition not to discuss the case with others.

## Investigative Assessment

The Office of Internal Affairs special agent and the department attorney did not act in accordance with department policy during the investigatory phase. The department attorney failed to make an entry in the case management system regarding the deadline for taking disciplinary action and he failed to timely contact the special agent to discuss the elements of a thorough investigation. The special agent permitted the representative of one of the subject parole agents to control the interview and to answer many of the questions directed to the subject parole agent. During one of the interviews, the special agent also asked various questions which were marginally relevant and took inordinate time to ask questions pertinent to the investigation. Additionally, during one interview, the special agent was not familiar with the procedural rules regarding internal affairs investigations. Also, the investigative report was submitted to the hiring authority less than 35 days before the deadline for taking action.

## Assessment Questions

- Within 21 calendar days, did the department attorney make an entry into CMS accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

  *The department attorney did not make an entry into CMS within 21 days of assignment confirming the date of the incident, the date of discovery, or the deadline for taking disciplinary action.*

- No later than 21 calendar days following assignment of the case, did the department attorney contact the assigned special agent and the OIG monitor to discuss the elements of a thorough investigation of the alleged misconduct?

  *The department attorney did not contact the assigned special agent and the OIG monitor to discuss the elements of a thorough investigation within 21 days following assignment of the case.*

- Did the department attorney attend investigative interviews for key witnesses to assess witness demeanor and credibility?

  *While the department attorney was present for the interviews, the department attorney fell asleep on several occasions during the interviews.*

- Upon completion of the investigation, was a copy of the investigative report timely forwarded to the department attorney to allow for feedback before it was forwarded to the hiring authority or prosecuting agency?

  *According to the department attorney, he received a copy of the draft investigative report on August 11, 2011. The department attorney completed his review on September 1, 2011. The final investigative report, however, was forwarded to the hiring authority on August 19, 2011.*

- Was the investigation, or subject interview, completed at least 35 days before the deadline to take disciplinary action?

  *The report was completed and submitted to the hiring authority with only 31 days left before the deadline to take disciplinary action.*

- Were all of the interviews thorough and appropriately conducted?

  *Some of the interviews were thorough and appropriately conducted, but not all. The special agent allowed the representative of one of the subject parole agents to control the interview and to answer several of the questions meant for the subject parole agent. Also, the special agent was not familiar with some of the procedural requirement in internal affairs cases.*

| Incident Date 2010-11-02 | OIG Case Number 11-0000723-IR | Case Type Criminal Investigation | Allegations 1.  Other Criminal Act | Rating Sufficient |
|---|---|---|---|---|

### Facts of the Case

In November 2010, two mobile phones confiscated from inmates contained what appeared to be nude photographs of a female officer. The inmates were interviewed and they alleged that the officer was involved in a sexual relationship with an inmate and that the officer was sending him nude photos of herself. An analysis of the mobile phone indicated that the nude photos were transmitted during the summer of 2009. The Office of Internal Affairs determined that there was insufficient evidence to establish any sexual contact between the officer and any inmate. The Office of Internal Affairs also determined that the statute of limitations for communicating with an inmate had lapsed. Therefore, the case was not referred to the district attorney. The Office of Internal Affairs opened an administrative investigation, which the OIG accepted for monitoring.

### Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

| Incident Date 2010-12-20 | OIG Case Number 11-0000734-IR | Case Type Criminal Investigation | Allegations 1.  Other | Rating Insufficient |
|---|---|---|---|---|

### Facts of the Case

During 2010, a case records technician allegedly received payment for the sale of confidential information retrieved from inmates' central files. The investigation failed to establish probable cause to believe that a crime was committed. The matter was not referred to the district attorney's office. The Office of Internal Affairs opened an administrative investigation, which the OIG accepted for monitoring.

### Investigative Assessment

The Office of Internal Affairs conducted a thorough but untimely investigation. The special agent took more than one year to investigative this relatively simple case and to conclude that probable cause did not exist to refer this case to a prosecuting agency.

### Assessment Questions

- Was the Office of Internal Affairs investigation, or subject only interview, conducted with due diligence?

  *The special agent took more than one year to investigate this relatively simple case and conclude that there was no probable cause to submit to a prosecuting agency.*

| Incident Date 2011-01-24 | OIG Case Number 11-0000788-IR | Case Type Criminal Investigation | Allegations 1.  Other Criminal Act | Rating Sufficient |
|---|---|---|---|---|

### Facts of the Case

On January 24, 2011, an officer allegedly submitted a forged doctor's note to excuse his absence on New Year's Eve. The case was submitted to the district attorney's office, which declined to file criminal charges. The Office of Internal Affairs opened an administrative investigation, which the OIG accepted for monitoring.

### Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

| Incident Date 2010-12-23 | OIG Case Number 11-0000838-IR | Case Type Administrative Investigation | Allegations | Rating Sufficient |
|---|---|---|---|---|
| | | | 1. Neglect of Duty<br><br>2. Neglect of Duty | |

### Facts of the Case

On December 23, 2010, a youth counselor allegedly locked two wards, who should have been in separate rooms, into the same room. Further, three other youth counselors observed the wards locked in the same room and failed to place them in their respective separate rooms.

### Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

| Incident Date 2011-03-28 | OIG Case Number 11-0001079-IR | Case Type Administrative Investigation | Allegations | Rating Sufficient |
|---|---|---|---|---|
| | | | 1. Sexual Misconduct<br><br>2. Over-familiarity<br><br>3. Over-familiarity | |

### Facts of the Case

On March 28, 2011, the Office of Internal Affairs received information that a parole agent was engaged in inappropriate sexual behavior with a female parolee. The parolee was interviewed and alleged that over the course of approximately a year, the parole agent sexually battered the parolee, touched the parolee inappropriately, and solicited sexual favors and massages from the parolee. On April 5, 2011, the parole agent arrived at the parolee's home and was observed on video engaging in the misconduct. Special agents apprehended the parole agent while he was engaged in this activity. The parole agent admitted to his conduct with this parolee and also to inappropriate sexual relations with other parolees on his caseload.

### Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

| Incident Date 2011-04-22 | OIG Case Number 11-0001595-IR | Case Type Criminal Investigation | Allegations | Rating Sufficient |
|---|---|---|---|---|
| | | | 1. Other Criminal Act | |

### Facts of the Case

On April 22, 2011, a licensed vocational nurse allegedly engaged in sexual activity with an inmate. The investigation failed to establish probable cause to believe a crime was committed. Therefore, the case was not referred to the district attorney's office. The licensed vocational nurse resigned; therefore, the Office of Internal Affairs did not open an administrative investigation.

### Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| **2011-01-03** | **11-0001655-IR** | **Administrative Investigation** | 1. **Dishonesty** <br> 2. **Neglect of Duty** <br> 3. **Use of Force** | **Insufficient** |

## Facts of the Case

On January 3, 2011, a sergeant allegedly used unnecessary force against a disabled inmate who walked with a cane. The sergeant allegedly took the inmate to the ground because the inmate was non-compliant with the sergeant's orders to submit to handcuffs. It was also alleged that the sergeant failed to activate his alarm prior to the use of force, failed to adequately review a subordinate officer's report of the incident, failed to adhere to policy regarding the Americans with Disabilities Act, and failed to sign his post orders.

## Investigative Assessment

The Office of Internal Affairs conducted a thorough investigation, although the report was submitted to the hiring authority less than 35 days before the deadline for taking action. The hiring authority was cooperative during the course of the investigation. The department attorney consulted with the special agent and provided adequate legal advice during the investigation.

## Assessment Questions

- Was the matter referred to the Office of Internal Affairs as soon as reasonably practical, within 45 calendar days of the date of discovery?

  *The incident occurred on January 3, 2011; however, the matter was not referred to the Office of Internal Affairs until April 29, 2011. The alleged misconduct was known to supervisory staff on the date of the incident.*

- Within 21 calendar days, did the department attorney make an entry into CMS accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

  *Although the department attorney entered the appropriate information into the case management system, the entry was not made within 21 calendar days of his assignment to the case.*

- Was the investigation, or subject interview, completed at least 35 days before the deadline to take disciplinary action?

  *The investigation was completed and provided to the hiring authority less than 21 days before the deadline to take disciplinary action.*

| Incident Date | OIG Case Number | Case Type | Allegations | Rating |
|---|---|---|---|---|
| **2009-10-25** | **11-0001713-IR** | Administrative Investigation | 1.  **Other Failure of Good Behavior**  2.  **Other** | **Insufficient** |

## Facts of the Case

On October 27, 2010, a private citizen allegedly contacted outside law enforcement because he had been in a business dispute with his business partner and he was fearful because the business partner had a handgun in his possession. Upon responding, outside law enforcement discovered the business partner had a semi-automatic firearm, three high capacity magazines, and 274 rounds of law enforcement-only ammunition. It was alleged that the business partner was not allowed to have a firearm because of his criminal history. A records check of the firearm showed that it was registered to a parole agent. Outside law enforcement contacted the parole agent and he allegedly stated he sold the firearm to the business partner. It was alleged that the parole agent had not gone through appropriate transfer requirements mandated by federal and state law regarding the transferring of firearms.

## Investigative Assessment

The Office of Internal Affairs did not thoroughly investigate two allegations in this case. First, the assigned investigator did not determine prior to the final report being submitted to the district attorney whether the 274 rounds were indeed law enforcement-only ammunition. Second, the assigned investigator did not determine whether the private citizen who was found to have been in possession of the firearm was in fact prohibited from possessing a firearm by state and federal law. The department attorney failed to attend any witness interview. The department attorney also failed to timely analyze the deadline for taking disciplinary action and did not timely meet with the special agent regarding the investigative plan. The department attorney failed to provide written feedback regarding the investigation and report.

## Assessment Questions

- Did OIA Central Intake make a determination regarding the case within 30 calendar days?

  *The original request for investigation was submitted by the hiring authority to OIA Central Intake on November 3, 2010. OIA Central Intake opened a criminal case relative to these allegations on December 15, 2010, or after the passage of 42 days. This administrative case was opened on June 29, 2011.*

- No later than 21 calendar days following assignment of the case, did the department attorney contact the assigned special agent and the OIG monitor to discuss the elements of a thorough investigation of the alleged misconduct?

  *The department attorney was assigned on January 3, 2011. The department attorney did not meet with the assigned special agent until February 1, 2011, or after the passage of 29 days.*

- Did the Office of Internal Affairs adequately consult with the OIG, the department attorney, and the appropriate prosecuting agency to determine if an administrative investigation should be conducted concurrently with the criminal investigation?

  *The Office of Internal Affairs did not confer with the appropriate prosecuting agency prior to opening an administrative investigation.*

- Did the special agent adequately prepare for all aspects of the investigation?

  *There was some indication that the business partner in possession of the firearm was not allowed by law to possess the firearm because of his criminal history. The special agent assigned to investigate the case did not fully investigate this aspect of the case. Additionally, the special agent did not state whether the ammunition discovered was law-enforcement only ammunition.*

- Were all of the interviews thorough and appropriately conducted?

  *The interviews were generally thorough, but the special agent failed to ask the business partner about his criminal history to determine if he was in fact ineligible to possess a firearm.*

- Did the department attorney attend investigative interviews for key witnesses to assess witness demeanor and credibility?

  *The department attorney attended no witness interviews.*

- Within 21 calendar days following receipt of the investigative report, did the department attorney review the report and provide appropriate substantive feedback addressing the thoroughness and clarity of the report?

  *There was no documentation in the case management system that any feedback was provided to the special agent regarding the thoroughness and clarity of the report.*

- Did the department provide written confirmation summarizing all critical discussions about the investigative report to the special agent with a copy to the OIG?

  *The OIG was not provided any written confirmation by the department attorney of any critical discussions about the investigative report.*

- Was the investigative report provided to the OIG for review thorough and appropriately drafted?

  *The report was appropriately drafted, but the thoroughness of the report suffered as a result of an incomplete investigation.*

- Was the final investigative report thorough and appropriately drafted?

  *The report was appropriately drafted, but the thoroughness of the report suffered as a result of an incomplete investigation.*

- Was the investigation thorough and appropriately conducted?

  *The investigation was appropriately conducted, but the special agent did not thoroughly investigate the matter.*

| Incident Date **2011-08-19** | OIG Case Number **11-0002070-IR** | Case Type **Criminal Investigation** | Allegations<br>1. **Other Criminal Act** | Rating **Sufficient** |
|---|---|---|---|---|

### Facts of the Case
On August 19, 2011, a teacher's assistant allegedly smuggled marijuana, mobile phones, and tobacco into the institution for inmate use. The case was referred to the district attorney's office, which filed criminal charges. The Office of Internal Affairs opened an administrative investigation, which the OIG accepted for monitoring.

### Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

# APPENDIX B
# DISCIPLINARY PHASE CASE SUMMARIES
## CENTRAL REGION

| Incident Date 2011-01-23 | OIG Case Number 10-0000747-IR | Allegations 1. Other 2. Other Failure of Good Behavior | Findings 1. Sustained 2. Not Sustained | Penalty Salary Reduction | Rating Sufficient |
|---|---|---|---|---|---|

### Facts of the Case
On January 23, 2011, an officer allegedly struck his wife during an argument. The officer also allegedly had an illegal firearm in his home and failed to report his arrest to the department.

### Disposition
The hiring authority sustained the allegation against this officer for possession of an illegal firearm and failure to report his arrest and imposed a 5 percent salary reduction for 12 months. Subsequent to a Skelly hearing, the officer and the department entered into a settlement agreement pursuant to which the penalty was reduced to a five percent salary reduction for six months. The OIG concurred with the terms of the settlement agreement.

### Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date 2010-05-26 | OIG Case Number 10-0002348-IR | Allegations 1. Other Criminal Act 2. Neglect of Duty 3. Discourteous Treatment 4. Other Failure of Good Behavior | Findings 1. Sustained 2. Sustained 3. Sustained 4. Sustained | Penalty Salary Reduction | Rating Sufficient |
|---|---|---|---|---|---|

### Facts of the Case
On May 26, 2010, an officer was arrested by outside law enforcement following an incident of domestic violence. The officer allegedly kicked and punched his wife while she was holding an infant child. Following his arrest, the officer was charged by the district attorney's office with domestic violence and child neglect.

### Disposition
The hiring authority sustained the allegations and imposed a 10 percent salary reduction for 24 months. The officer did not file an appeal with the State Personnel Board.

### Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date 2010-08-02 | OIG Case Number 10-0003079-IR | Allegations 1.  Neglect of Duty | Findings 1.  Sustained | Penalty Salary Reduction | Rating Insufficient |
|---|---|---|---|---|---|

## Facts of the Case

On August 2, 2010, a sergeant allegedly ordered a cell to be opened without adequate staff members being present. When the cell door was opened, the inmate rushed out of the cell and toward the sergeant, and allegedly the sergeant and an officer ran from the aggressive inmate and secured themselves behind a grill gate, shutting the gate behind them. The sergeant and the officer left a second officer alone with the aggressive inmate and the second officer used pepper spray after the inmate refused to comply with his orders to get down. Following the use of pepper spray, the inmate entered his cell and locked the door, placing a second inmate in the cell in danger. It was further alleged that the sergeant failed to remove the second inmate from the cell. Following the incident, the sergeant transferred the responsibilities to another sergeant instead of remaining as the sergeant in charge of the incident and was less than truthful in her official report of the incident.

## Disposition

The hiring authority sustained the allegations against the sergeant and imposed a ten percent salary reduction for six months. The hiring authority sustained the allegations against the first officer and served her with a letter of reprimand. Both the sergeant and the first officer filed an appeal with the State Personnel Board. The department and the sergeant entered into a settlement agreement. The department reduced the penalty to a ten percent salary reduction for three months and the sergeant agreed to withdraw her appeal. The department and the officer also entered into a settlement agreement. The department agreed to remove the letter of reprimand from the officer's file at the request of the officer after one year, instead of the customary three years. The officer agreed to withdraw her appeal. The OIG found both settlement agreements to be reasonable.

## Disciplinary Assessment

A department attorney was not assigned to this case. The disciplinary officer did not make an entry into the department's case management system prior to the penalty conference. The hiring authority was not diligent in processing the disciplinary matter because the sergeant and the officer were served with the disciplinary actions more than five months after the hiring authority made a discipline decision. In all other critical aspects, the department complied with all policies and procedures.

## Assessment Questions

- Did the disciplinary officer make an entry into CMS prior to the findings conference accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

  *The disciplinary officer did not make an entry into CMS prior to the findings conference accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time.*

- Was the disciplinary action provided to the OIG for review appropriately drafted as described in the DOM?

  *The hiring authority made a discipline decision on November 19, 2010. The disciplinary officer drafted the disciplinary actions and provided copies of the drafts on April 27, 2011. The drafts were provided more than 30 days after the decision to impose discipline.*

- Was the disciplinary action served on the employee(s) appropriately drafted as described in the DOM?

  *The hiring authority made a discipline decision on November 19, 2010. The disciplinary officer served the disciplinary actions on May 10, 2011, which was more than 30 days after the decision to impose discipline.*

- Was the disciplinary phase conducted with due diligence by the department?

  *The hiring authority made a discipline decision on November 19, 2010. The disciplinary officer served the disciplinary actions on May 10, 2011, which was more than 30 days after the decision to impose discipline.*

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-06-08 | 10-0003197-IR | 1. **Neglect of Duty**<br>2. **Use of Force** | 1. **Not Sustained**<br>2. **Sustained** | Salary Reduction | Sufficient |

### Facts of the Case
It was alleged that on June 8, 2010, an officer unnecessarily used pepper spray on an inmate during a calculated cell extraction. Further, a lieutenant allegedly failed to ensure a videotaped interview of the inmate was conducted and failed to report his findings regarding the incident to management in a timely manner.

### Disposition
The hiring authority sustained the allegation that the officer used unnecessary force and imposed a penalty of a five percent salary reduction for six months. The hiring authority sustained the allegations against the lieutenant and imposed a five percent salary reduction for six months. The officer and department entered into a settlement agreement whereby the penalty was reduced from a five percent salary reduction for six months to a five percent salary reduction for four months. The OIG concurred in the settlement. After a Skelly hearing and new evidence was obtained, the hiring authority revoked the action against the lieutenant. The OIG concurred with this decision as well.

### Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-11-08 | 11-0000029-IR | 1. **Other Failure of Good Behavior** | 1. **Sustained** | Salary Reduction | Sufficient |

### Facts of the Case
On November 8, 2010, an officer allegedly pushed his girlfriend and broke a telephone she was holding.

### Disposition
The hiring authority sustained the allegations against the officer and imposed a 10 percent salary reduction for 13 months. The officer did not file an appeal with the State Personnel Board.

### Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-11-08 | 11-0000239-IR | 1. **Neglect of Duty** | 1. **Sustained** | Letter of Reprimand | Sufficient |

### Facts of the Case
On November 8, 2010, an officer allegedly failed to deliver an inmate's request to use the law library. Rather than deliver the request, the officer allegedly threw it in the garbage.

### Disposition
The hiring authority sustained the allegation that the officer neglected his duty, and issued a letter of reprimand. Following the Skelly hearing, the hiring authority reassessed the penalty and withdrew the letter of reprimand and instead issued a letter of instruction. The OIG concurred in the hiring authority's decision to modify the penalty after the Skelly hearing.

### Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2010-11-05** | **11-0000244-IR** | 1. **Neglect of Duty**<br><br>2. **Other Failure of Good Behavior** | 1. **Sustained**<br><br>2. **Sustained** | **Letter of Reprimand** | **Insufficient** |

## Facts of the Case

On November 5, 2010, an officer allegedly failed to secure the lock on an exercise cell located in an administrative segregation unit. As a result, two unrestrained inmates ran out of the cell and attacked two other inmates who were being escorted by officers. It was further alleged that the officer intentionally failed to secure the lock.

## Disposition

The hiring authority sustained the allegations of neglect of duty and issued the officer a letter of reprimand, which the officer appealed to the State Personnel Board. The department and the officer entered into a settlement agreement. The officer agreed to withdraw his appeal and the department agreed to remove the letter of reprimand from his official personnel file after two years instead of the customary three years. The OIG did not concur with the initial penalty selected or the settlement agreement.

## Disciplinary Assessment

The department failed to conduct the findings and disciplinary determinations in a timely manner. The hiring authority did not select the appropriate penalty based on the sustained allegations. The officer's actions in leaving the cell door unlocked allowed the inmates to exit the cell and assault other inmates. A more serious penalty should have been imposed. The department attorney failed to provide a draft of the settlement agreement for review to the OIG before obtaining the signature of all parties. The settlement did not include a department required clause that although the disciplinary action would be removed from the officer's official personnel file, the department could use the disciplinary action to aggravate the penalty if the officer received another disciplinary action in the future.

## Assessment Questions

- Did OIA Central Intake make a determination regarding the case within 30 calendar days?

  *OIA Central Intake received the referral on December 10, 2010. OIA Central Intake made a determination regarding the case on January 19, 2011, more than 30 days following receipt of the request. OIA Central Intake completed its intake process on January 31, 2011.*

- Did the hiring authority timely consult with the OIG and the department attorney (if applicable), regarding the sufficiency of the investigation and the investigative findings?

  *The Office of Internal Affairs declined to investigate the allegations and referred the matter back to the hiring authority for disposition without an investigation on January 31, 2011. The hiring authority conducted a review of the documents contained within the case file and made investigative findings on June 8, 2011, more than 14 calendar days after receipt of the case.*

- Did the hiring authority timely consult with the OIG and the department attorney (if applicable) regarding disciplinary determinations prior to making a final decision?

  *The Office of Internal Affairs declined to investigate the allegations and referred the matter back to the hiring authority for disposition without an investigation on January 31, 2011. The hiring authority made disciplinary determinations on June 8, 2011, more than 14 calendar days after receipt of the case.*

- Did the hiring authority, who participated in the disciplinary conference, select the appropriate penalty based on the sustained allegations?

  *The hiring authority who participated in the disciplinary conference did not select the appropriate penalty based on the sustained allegations. A more serious penalty should have been imposed because of the resulting assault by the inmates.*

- If there was a settlement agreement, did the settlement agreement include the key clauses required by DOM?

  *The settlement agreement did not include the key clauses required by department policies. Specifically, the settlement agreement did not contain a clause that although the disciplinary action would be removed from the officer's official personnel file, the department could use the disciplinary action to aggravate the penalty if the officer received another disciplinary action in the future.*

- Did the department attorney or disciplinary officer cooperate with and provide continual real-time consultation with the OIG throughout the disciplinary phase, until all proceedings were completed, except for those related to a writ?

  *The department attorney failed to provide a draft of the settlement agreement to the OIG before obtaining the signatures from all parties.*

- Was the disciplinary phase conducted with due diligence by the department?

  *The department failed to conduct the investigative findings and disciplinary determinations in a timely manner.*

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-11-12 | 11-0000464-IR | 1. Neglect of Duty | 1. Not Sustained | No Penalty Imposed | Sufficient |

## Facts of the Case
On November 12, 2010, a sergeant allegedly failed to maintain the proper distance between himself and an inmate when he utilized pepper spray on the inmate. A lieutenant and a captain who were present during the incident allegedly failed to intervene during the alleged improper use of pepper spray.

## Disposition
The hiring authority initially sustained the allegation against the sergeant for improperly administering pepper spray, and selected a penalty of a two working-day suspension. However, prior to the discipline becoming effective, the hiring authority reconsidered whether the sergeant was in compliance with policy, and the allegation against the sergeant was not sustained. The hiring authority did not sustain the allegations against the lieutenant and the captain.

## Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-01-04 | 11-0000576-IR | 1. Other | 1. Not Sustained | No Penalty Imposed | Sufficient |

## Facts of the Case
On January 4, 2011, an officer allegedly made threats to the safety and security of an institution and to himself.

## Disposition
The hiring authority determined that the allegation could not be sustained.

## Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

## Recommendations
A recommendation was made to the department attorney to research and define the meaning of the phrase "incapacitated or otherwise unavailable" as used in Government Code section 3304 to better understand whether the deadline for taking disciplinary action can be extended if an officer is on Workers' Compensation leave.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-12-01 | 11-0000719-IR | 1. Neglect of Duty<br><br>2. Discourteous Treatment<br><br>3. Other Failure of Good Behavior | 1. Sustained<br><br>2. Sustained<br><br>3. Sustained | Salary Reduction | Insufficient |

## Facts of the Case

On December 1, 2010, two officers were escorting an inmate in handcuffs to the cell of a second inmate to determine whether the two inmates were compatible for housing purposes. The two officers remained on the lower tier and allegedly allowed the restrained inmate to climb the stairs unescorted to the upper tier of the housing unit and approach the cell of the second inmate. The control booth officer, believing that the restrained inmate was assigned to the cell, allegedly opened the cell door whereupon the second inmate, who was unrestrained, exited the cell and assaulted the restrained inmate. The two officers responded to the top tier and were required to use force on the inmates to stop the assault.

## Disposition

The hiring authority sustained allegations of neglect of duty, discourtesy toward others, inefficiency and other failure of good behavior and imposed a five percent salary reduction for six months on the three officers. All three officers filed appeals with the State Personnel Board. The department and the three officers entered into settlement agreements. The department agreed to reduce the penalty to a five percent salary reduction for three months and the officers agreed to withdraw their appeals with the State Personnel Board. The OIG concurred with the settlement agreements.

## Disciplinary Assessment

The department failed to conduct the investigative findings and disciplinary determinations in a timely manner. The department attorney failed to draft the disciplinary actions in a timely manner and the disciplinary actions were served more than 30 days following the decision to impose discipline. In all other critical aspects, the department attorney and the hiring authority performed in accordance with department policies.

## Assessment Questions

- Was the matter referred to the Office of Internal Affairs as soon as reasonably practical, within 45 calendar days of the date of discovery?

  *The discovery of the alleged misconduct occurred on December 1, 2010. The matter was referred to the Office of Internal Affairs on February 3, 2011, more than 45 calendar days after the discovery of the alleged misconduct.*

- Did the hiring authority timely consult with the OIG and the department attorney (if applicable), regarding the sufficiency of the investigation and the investigative findings?

  *The Office of Internal Affairs declined to investigate the allegations and referred the matter back to the hiring authority for disposition without an investigation on March 2, 2011. The hiring authority conducted a review of the documents contained in the case file and made findings on June 9, 2011, more than 14 calendar days after receipt of the case.*

- Did the hiring authority timely consult with the OIG and the department attorney (if applicable) regarding disciplinary determinations prior to making a final decision?

  *The Office of Internal Affairs declined to investigate the allegations and referred the matter back to the hiring authority for disposition without an investigation on March 2, 2011. The hiring authority made disciplinary determinations on June 9, 2010, more than 14 calendar days after receipt of the case.*

- Was the disciplinary action provided to the OIG for review appropriately drafted as described in the DOM?

  *The hiring authority made a discipline decision on June 9, 2011. The department attorney provided drafts of the disciplinary actions to the OIG for review on July 22, 2010, more than 30 days following the decision to impose discipline. The department attorney finalized the disciplinary actions and they were served on July 27, 2011, July 29, 2011, and August 1, 2011. The three disciplinary actions were served more than 30 days after the decision to impose discipline.*

- Was the disciplinary action served on the employee(s) appropriately drafted as described in the DOM?

  *The hiring authority made a discipline decision on June 9, 2011. The department attorney drafted the disciplinary actions and they were served on July 27, 2011, July 29, 2011, and August 1, 2011. The three disciplinary actions were served more than 30 days after the decision to impose discipline.*

- Was the disciplinary phase conducted with due diligence by the department?

  *The department failed to conduct the investigative findings and disciplinary determinations in a timely manner. The department waited over three months to conduct the investigative findings and disciplinary determinations and failed to meet the required 14 days deadline. The hiring authority made a discipline decision on June 9, 2010. The department attorney provided drafts of the disciplinary actions to the OIG for review on July 22, 2010, more than 30 days following the decision to impose discipline. The department attorney finalized the disciplinary actions and they were served on July 27, 2011, July 29, 2011, and August 1, 2011. The three disciplinary actions were served more than 30 days after the decision to impose discipline.*

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-11-20 | 11-0000744-IR | 1. **Neglect of Duty** <br> 2. **Insubordination** <br> 3. **Other Failure of Good Behavior** | 1. **Sustained** <br> 2. **Sustained** <br> 3. **Sustained** | **Salary Reduction** | **Insufficient** |

## Facts of the Case

On November 20, 2010, an officer allegedly abandoned his assigned post without permission and left inmates in the dayroom area unsupervised. As a result, an inmate was stabbed several times by another inmate. It was further alleged that the control booth officer was less than alert when he failed to notice that there were no officers supervising the dayroom and further he failed to notice that the inmate had been stabbed several times.

## Disposition

The hiring authority sustained allegations of neglect of duty against both officers and an additional allegation of abandoning his post without approval against the first officer. The hiring authority imposed a ten percent salary reduction for six months on the first officer who abandoned his post and a five percent salary reduction for six months on the control booth officer. The control booth officer filed an appeal with the State Personnel Board, but withdrew his appeal prior to hearing.

## Disciplinary Assessment

The case was referred to the Office of Internal Affairs for an investigation and that at a minimum, interviews be conducted of the first officer who abandoned his post and of the control booth officer. The Office of Internal Affairs declined to investigate or interview either officer. The department failed to conduct the investigative findings and disciplinary determinations in a timely manner. The department attorney failed to consult with the OIG regarding the drafting of the disciplinary action and failed to provide a copy of the draft of the disciplinary action. However, the disciplinary action served on the officers was appropriately drafted. In all other critical aspects, the department attorney and hiring authority performed in accordance with department policy.

## Assessment Questions

- Did the hiring authority timely consult with the OIG and the department attorney (if applicable), regarding the sufficiency of the investigation and the investigative findings?

  *The Office of Internal Affairs declined to investigate the allegations and referred the matter back to the hiring authority for disposition without an investigation on March 11, 2011. The hiring authority conducted a review of the documents contained in the case file and made findings on May 12, 2011, more than 14 calendar days after receipt of the case.*

- Did the hiring authority properly determine if additional investigation was necessary?

  *The case was referred to the Office of Internal Affairs for an investigation and that at a minimum, interviews be conducted of the first officer who abandoned his post and the second officer, the control booth officer. The Office of Internal Affairs declined to investigate or interview either officer. The OIG believed interviews should have been conducted. The hiring authority disagreed.*

- Did the hiring authority timely consult with the OIG and the department attorney (if applicable) regarding disciplinary determinations prior to making a final decision?

  *The Office of Internal Affairs declined to investigate the allegations and referred the matter back to the hiring authority for disposition without an investigation on March 11, 2011. The hiring authority made disciplinary determinations on May 12, 2011, more than 14 calendar days after receipt of the case.*

- Did the department attorney or disciplinary officer provide the OIG with a copy of the draft disciplinary action and consult with the OIG?

  *The department attorney failed to provide the OIG with a draft copy of the disciplinary action and consult with the OIG prior to serving the final disciplinary action on the officers, in violation of department policy. The department attorney provided a copy of the disciplinary action to the OIG after the disciplinary actions were served on the officers.*

- Did the department attorney or disciplinary officer cooperate with and provide continual real-time consultation with the OIG throughout the disciplinary phase, until all proceedings were completed, except for those related to a writ?

  *No, see above.*

- Was the disciplinary phase conducted with due diligence by the department?

  *The department failed to conduct the investigative findings and disciplinary determinations in a timely manner.*

- Did OIA Central Intake make an appropriate initial determination regarding the case?

  *OIA Central Intake declined to open an investigation or to conduct limited interviews and returned the matter to the hiring authority for disposition without an investigation. The OIG did not concur.*

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-12-15 | 11-0000746-IR | 1. **Discourteous Treatment**<br><br>2. **Other Failure of Good Behavior** | 1. **Sustained**<br><br>2. **Sustained** | **Letter of Reprimand** | **Sufficient** |

### Facts of the Case
Between December 15, 2010, and December 18, 2010, an officer while off-duty, allegedly choked and hit his former girlfriend. It was further alleged, the officer was in a verbal altercation with his former girlfriend in public requiring outside law enforcement officers to respond.

### Disposition
The hiring authority determined there was insufficient evidence to sustain the battery allegation but sustained an allegation that the officer was discourteous toward the public when he engaged in the verbal altercation resulting in outside law enforcement being called. The hiring authority imposed a letter of reprimand on the officer. However, following a Skelly hearing, the hiring authority reduced the penalty to a letter of instruction. The OIG concurred with the reduction in the penalty.

### Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-02-20 | 11-0001138-IR | 1. **Other Failure of Good Behavior** | 1. **Sustained** | **Salary Reduction** | **Sufficient** |

### Facts of the Case
On February 20, 2011, a sergeant allegedly pushed his girlfriend and took her cell phone. Outside law enforcement responded to the scene and arrested the sergeant.

### Disposition
The hiring authority sustained the allegation and imposed a 10 percent salary reduction for 18 months. Following a Skelly hearing, the sergeant and department entered into a settlement agreement. The department reduced the penalty to a 5 percent salary reduction for 18 months and the sergeant agreed not to file an appeal with the State Personnel Board. The OIG concurred with the settlement agreement.

### Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date 2010-11-04 | OIG Case Number 11-0001139-IR | Allegations | Findings | Penalty No Penalty Imposed | Rating Sufficient |
|---|---|---|---|---|---|
| | | 1. Neglect of Duty | 1. Not Sustained | | |
| | | 2. Discourteous Treatment | 2. Not Sustained | | |
| | | 3. Other Failure of Good Behavior | 3. Not Sustained | | |

## Facts of the Case
On November 4, 2010, while off-duty at his home, an officer allegedly grabbed his wife by the throat and threatened to kill her during an argument over the use of a cell phone.

## Disposition
The hiring authority did not sustain any of the allegations against the officer.

## Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date 2011-02-19 | OIG Case Number 11-0001186-IR | Allegations | Findings | Penalty Salary Reduction | Rating Sufficient |
|---|---|---|---|---|---|
| | | 1. Neglect of Duty | 1. Sustained | | |
| | | 2. Insubordination | 2. Sustained | | |
| | | 3. Other Failure of Good Behavior | 3. Sustained | | |

## Facts of the Case
Between February 19 and February 21, 2011, it was alleged that a sergeant turned off the electrified fence during a sweep of the area for birds, but failed to follow department procedure by not re-energizing the fence at the conclusion of the sweep. It was alleged that the fence was off for a 38 hour period, and during that time, the sergeant, 5 other sergeants, and 15 officers failed to observe that the electrified fence was not operational.

## Disposition
The hiring authority sustained the allegations of neglect of duty against the sergeant who failed to re-energize the fence and imposed a 5 percent salary reduction for 12 months. Following a Skelly hearing, the department and the sergeant entered into a settlement agreement. The department reduced the penalty to a letter of reprimand. The sergeant agreed to retire and waived her right to appeal the action. The hiring authority sustained the allegations of neglect of duty against the remaining five sergeants and 15 officers but elected to provide training regarding the recognition of the status of the electrified fence. The OIG concurred with the settlement agreement reached between the sergeant and the department.

## Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-03-30 | 11-0001320-IR | 1.  Neglect of Duty | 1.  Sustained | Salary Reduction | Sufficient |

### Facts of the Case
On March 30, 2011, a supervising cook allegedly possessed a mobile phone inside an institution without authorization.

### Disposition
The hiring authority sustained the allegation and imposed a five percent salary reduction for six months. The cook did not file an appeal with the State Personnel Board.

### Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2011-04-20** | **11-0001746-IR** | 1. **Neglect of Duty**<br><br>2. **Other Failure of Good Behavior** | 1. **Sustained**<br><br>2. **Sustained** | **Salary Reduction** | **Insufficient** |

## Facts of the Case

On April 20, 2011, a sergeant was instructing officers in a range classroom regarding firearms. It was alleged that he was negligent when, during the discussion, he loaded a magazine, chambered a live round, and accidentally discharged a round, striking the wall of the classroom. No injuries resulted from the sergeant's actions.

## Disposition

The hiring authority sustained the allegation against the sergeant and imposed a five percent salary reduction for three months. The sergeant did not file an appeal with the State Personnel Board.

## Disciplinary Assessment

The department failed to conduct the investigative findings and disciplinary determinations in a timely manner and the department forms documenting the findings and the penalty were provided late to the OIG. However, neither of these adversely impacted the case. The department attorney failed to provide to the hiring authority and the OIG written confirmation of penalty discussions, but in all other critical aspects performed in accordance with department policies and an appropriate disposition was reached.

## Assessment Questions

- Did OIA Central Intake make a determination regarding the case within 30 calendar days?

  *OIA Central Intake received the request for investigation from the hiring authority on May 16, 2011, and made a determination regarding the case on July 6, 2011, more than 30 calendar days following the receipt.*

- Did the hiring authority timely consult with the OIG and the department attorney (if applicable), regarding the sufficiency of the investigation and the investigative findings?

  *The Office of Internal Affairs declined to investigate the allegations and referred the matter back to the hiring authority for disposition without an investigation on July 6, 2011. The hiring authority conducted a review of the investigation and made investigative findings on October 3, 2011, more than 14 calendar days after receipt of the case.*

- Did the hiring authority timely consult with the OIG and the department attorney (if applicable) regarding disciplinary determinations prior to making a final decision?

  *The Office of Internal Affairs declined to investigate the allegations and referred the matter back to the hiring authority for disposition without an investigation on July 6, 2011. The hiring authority made disciplinary determinations on October 3, 2011, more than 14 calendar days after receipt of the case.*

- Was the CDCR Form 402 documenting the findings properly completed?

  *The CDCR form documenting the findings was not properly completed, as it was not provided to the OIG prior to serving the disciplinary action on the sergeant. The disciplinary action was served on November 2, 2011, and the form documenting the findings was signed on November 19, 2011, and provided to the OIG on November 23, 2011.*

- Did the department attorney provide to the hiring authority and the OIG written confirmation of penalty discussions?

  *The department attorney failed to provide to the hiring authority and the OIG written confirmation of penalty discussions.*

- Was the CDCR Form 403 documenting the penalty properly completed?

  *The CDCR form documenting the penalty was not properly completed, as it was not provided to the OIG prior to serving the disciplinary action on the sergeant. The disciplinary action was served on November 2, 2011, and the form documenting the penalty was signed on November 19, 2011, and provided to the OIG on November 23, 2011.*

- Was the disciplinary phase conducted with due diligence by the department?

  *The department failed to conduct the investigative findings and disciplinary determinations in a timely manner.*

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-05-29 | 11-0001747-IR | 1. Other Failure of Good Behavior<br><br>2. Other | 1. Sustained<br><br>2. Sustained | Salary Reduction | Sufficient |

### Facts of the Case
On May 29, 2011, an officer allegedly drove to a house where he believed his ex-girlfriend was located. Upon his arrival he allegedly confronted the homeowner and attempted to force his way into the home. Further, the officer allegedly appeared extremely intoxicated and threatened to kill the homeowner. The homeowner punched the officer in the face to stop his attempt to enter the home. Outside law enforcement was called and responded to the scene.

### Disposition
The hiring authority sustained the allegations, and the officer received a ten percent salary reduction for six months. The officer filed an appeal with the State Personnel Board which he later withdrew.

### Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-05-27 | 11-0002011-IR | 1. Neglect of Duty | 1. Sustained | Salary Reduction | Sufficient |

### Facts of the Case
On May 27, 2011, the department learned an officer had allegedly been arrested on September 9, 2010, for domestic violence. Although the district attorney did not prosecute the officer, the officer allegedly failed to report his arrest to the department.

### Disposition
The hiring authority sustained the allegation that the officer failed to report the arrest and imposed a five percent salary reduction for nine months. The officer and department entered into a settlement agreement whereby the penalty was reduced from a five percent salary reduction for nine months to a five percent salary reduction for six months. The OIG concurred with the settlement.

### Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-04-02 | 11-0002099-IR | 1. Neglect of Duty<br><br>2. Other Failure of Good Behavior | 1. Sustained<br><br>2. Sustained | Salary Reduction | Sufficient |

### Facts of the Case
On April 2, 2011, an officer allegedly violated department policy when he opened a cell door and allowed an inmate to exit his assigned cell, without the presence of floor officers, resulting in an assault on another inmate.

### Disposition
The hiring authority sustained the allegations against the officer and imposed a five percent salary reduction for six months. The officer filed an appeal with the State Personnel Board. The department and the officer entered into a settlement agreement. The department agreed to reduce the penalty to a five percent salary reduction for three months and the officer agreed to withdraw his appeal. The OIG concurred with the settlement.

### Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2011-08-29** | **11-0002488-IR** | 1. **Neglect of Duty** 2. **Other Failure of Good Behavior** 3. **Over-familiarity** 4. **Contraband** 5. **Other Criminal Act** | 1. **Sustained** 2. **Sustained** 3. **Sustained** 4. **Sustained** 5. **Sustained** | **Dismissal** | **Sufficient** |

## Facts of the Case

On August 29, 2011, it was alleged that a cook was in possession of two mobile phones and a charger concealed in a hollowed compartment inside the shoes he was wearing. A subsequent search of the cook's home revealed numerous additional mobile phones, marijuana, shoes with compartments for concealing items, and documentation relating to financial transactions in exchange for the cook providing contraband to inmates. The cook was arrested for bribery and conspiracy.

## Disposition

The hiring authority sustained all the allegations and determined that dismissal was the appropriate penalty. However, the cook resigned prior to being served with a notice of dismissal. A letter indicating the cook resigned under unfavorable circumstances was placed in his official personnel file.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

# HEADQUARTERS

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2009-11-01** | **10-0000783-IR** | 1. **Sexual Misconduct**<br><br>2. **Discourteous Treatment** | 1. **Not Sustained**<br><br>2. **Sustained** | **Suspension** | **Insufficient** |

### Facts of the Case
It was alleged that on November 1, 2009 a correctional counselor inappropriately touched his 17-year-old daughter.

### Disposition
The hiring authority did not sustain the allegation of sexual misconduct, but did sustain the allegation that the correctional counselor engaged in vulgar conduct and imposed a penalty of a 24 working-day suspension. However, the correctional counselor retired before disciplinary action could be taken. A letter was placed in his file indicating that he retired under adverse circumstances.

### Disciplinary Assessment
The hiring authority failed to submit the matter to the Office of Internal Affairs for review. The Office of Internal Affairs received information of the correctional counselor's arrest and contacted the hiring authority. After several weeks had passed, the Office of Internal Affairs gathered the necessary documents and determined sufficient evidence existed to take disciplinary action without an investigation and sent the matter to the hiring authority for disposition. The hiring authority reviewed the matter within 30 days and intended to not sustain any of the allegations, to which the department attorney agreed. Upon the urging of the OIG, the hiring authority agreed to wait on a decision until the district attorney completed a review. Ultimately, the hiring authority waited to complete the disciplinary phase while the matter proceeded through the criminal court process. The hiring authority that ultimately reviewed the matter complied with policies and procedures. The department attorney that ultimately handled the disciplinary phase also complied with policies and procedures.

### Assessment Questions

- Was the matter referred to the Office of Internal Affairs as soon as reasonably practical, within 45 calendar days of the date of discovery?

   *The hiring authority did not refer the matter to the Office of Internal Affairs.*

- Did the hiring authority cooperate with and provide continual real-time consultation with the OIG throughout the disciplinary phase, until all proceedings were completed, except for those related to a writ?

   *The hiring authority did not advise the OIG that the subject had retired. Two months after his retirement, the hiring authority notified the OIG and then the case was set for final disposition.*

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2010-12-04** | **10-0003799-IR** | 1. **Other Failure of Good Behavior** | 1. **Sustained** | **Dismissal** | **Sufficient** |

### Facts of the Case
It was alleged that on December 4, 2010, a special agent was involved in a domestic violence incident with his girlfriend.

### Disposition
The district attorney's office filed criminal charges against the special agent. The hiring authority determined there was sufficient evidence to sustain the allegation. The penalty for this case was combined with another matter pending against the special agent and the special agent was dismissed. The special agent filed an appeal with the State Personnel Board. On the date set for hearing, the special agent failed to appear. The appeal was dismissed.

### Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-08-06 | 11-0002309-IR | 1. Other | 1. Sustained | Salary Reduction | Sufficient |

### Facts of the Case
It was alleged that on August 6, 2011, a high level manager was arrested for driving under the influence of an alcoholic beverage.

### Disposition
The hiring authority sustained the allegation and imposed a five percent salary reduction for two months. However, the manager retired prior to the disciplinary action taking effect. A letter was placed in the manager's official personnel file indicating he retired under adverse circumstances.

### Disciplinary Assessment
The department complied with policies and procedures.

## NORTH REGION

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-06-06 | 10-0002777-IR | 1. Other Failure of Good Behavior | 1. Sustained | Salary Reduction | Sufficient |

### Facts of the Case
On June 6, 2010, an off-duty officer allegedly fired a handgun in his residence during a domestic dispute with his spouse.

### Disposition
The hiring authority determined there was sufficient evidence to sustain the allegation and imposed a 5 percent salary reduction for 12 months. The officer filed an appeal with the State Personnel Board, but he failed to appear for a pre-hearing settlement conference and the appeal was dismissed.

### Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date 2010-06-25 | OIG Case Number 10-0002778-IR | Allegations 1. Other Failure of Good Behavior | Findings 1. Sustained | Penalty Salary Reduction | Rating Insufficient |
|---|---|---|---|---|---|

## Facts of the Case

On June 25, 2010, an off-duty youth counselor allegedly became involved in an altercation with a motorist. The youth counselor exited his vehicle and brandished a handgun toward the motorist. Outside law enforcement officers responded and cited the youth counselor for brandishing a weapon.

## Disposition

The hiring authority sustained the allegation that the youth counselor intimidated a private citizen and engaged in behavior bringing discredit to the department. The youth counselor received a 10 percent reduction in salary for 12 months. The youth counselor filed an appeal with the State Personnel Board. The district attorney's office had filed a misdemeanor charge against the youth counselor, but ultimately dismissed the charge. The department then agreed to modify the penalty to a five percent reduction in salary for six months in exchange for the youth counselor agreeing to withdraw his appeal.

## Disciplinary Assessment

The department did not process the case with due diligence after the case was returned to the hiring authority. The hiring authority waited nearly eight months to process the case. Otherwise, the department complied with its policies and procedures. The OIG concurred with the terms of the settlement agreement.

## Assessment Questions

- Did the hiring authority timely consult with the OIG and the department attorney (if applicable), regarding the sufficiency of the investigation and the investigative findings?

  *The case was returned to the hiring authority on August 25, 2010; however, investigative findings were not made until May 11, 2011.*

- Did the hiring authority timely consult with the OIG and the department attorney (if applicable) regarding disciplinary determinations prior to making a final decision?

  *The case was returned to the hiring authority on August 25, 2010; however, disciplinary determinations were not made until May 11, 2011.*

- Did the department attorney or disciplinary officer provide the OIG with a copy of the draft disciplinary action and consult with the OIG?

  *The department attorney failed to provide a draft copy of the action to the OIG prior to sending it to the hiring authority.*

- Was the disciplinary action provided to the OIG for review appropriately drafted as described in the DOM?

  *The department attorney failed to provide a draft of the action prior to sending it to the hiring authority. Therefore, DOM requirements for draft disciplinary actions were not followed.*

- Did the department attorney attend the Skelly hearing, unless precluded by a legitimate unavoidable scheduling conflict, as required?

  *The Skelly Officer's Report and Recommendation indicates that the department attorney did not attend the Skelly hearing.*

- If an Executive Review was requested in the case, did OIG request the Executive Review?

  *The Executive Review was requested by the department attorney.*

- Was the disciplinary phase conducted with due diligence by the department?

  *The department did not process the case in a timely manner after it was returned to the hiring authority from OIA Central Intake.*

| Incident Date **2010-08-04** | OIG Case Number **10-0002835-IR** | Allegations **1. Other Failure of Good Behavior** | Findings **1. Sustained** | Penalty **Salary Reduction** | Rating **Insufficient** |
|---|---|---|---|---|---|

## Facts of the Case

On August 4, 2010, an off-duty officer allegedly pushed his wife to the ground, causing her to lose her fingernail, and then blocked her from leaving the residence. The officer was arrested for domestic violence and false imprisonment.

## Disposition

The hiring authority determined there was sufficient evidence to sustain an allegation and imposed a five percent salary reduction for three months.

## Disciplinary Assessment

The department failed to exercise due diligence in this case. The department delayed the processing of this case for nearly eight months when it waited to hold the findings conference after the disposition of the criminal matter. Additionally, the hiring authority failed to provide the OIG an opportunity to review the disciplinary action prior to it being served.

## Assessment Questions

- Did the department attorney or disciplinary officer provide the OIG with a copy of the draft disciplinary action and consult with the OIG?

  *The OIG was not provided a reasonable time to review and provide feedback of the draft disciplinary action. The OIG received the draft disciplinary action on the day the disciplinary action was served.*

- Within 21 calendar days, did the department attorney make an entry into CMS accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

  *The department attorney made an incomplete entry. The department attorney failed to confirm the date of the reported incident and the date of discovery.*

- Did the hiring authority timely consult with the OIG and the department attorney (if applicable), regarding the sufficiency of the investigation and the investigative findings?

  *The disposition of the criminal matter occurred on November 3, 2010, and the findings conference did not occur until July 25, 2011.*

- Did the hiring authority timely consult with the OIG and the department attorney (if applicable) regarding disciplinary determinations prior to making a final decision?

  *The disposition of the criminal matter occurred on November 3, 2010; however, the penalty conference did not occur until July 25, 2011.*

- Did the department attorney provide appropriate legal consultation to the hiring authority regarding disciplinary determinations?

  *The department attorney represented to the hiring authority that there was no evidence to support any penalty for the inappropriate behavior and recommended a letter of instruction. In reaching this conclusion, the department attorney summarily dismissed all statements contained within the police documents as hearsay, without considering any legal exceptions to the hearsay rule.*

- Did the hiring authority, who participated in the disciplinary conference, select the appropriate Employee Disciplinary Matrix charges and causes for discipline for each sustained allegation?

  *The hiring authority inappropriately determined the Employee Disciplinary Matrix charge of intimidation, threats or assault of a private citizen without intent to inflict serious injury. The more appropriate charge recommended by the OIG was domestic violence because the victim was the officer's spouse.*

- Was the disciplinary phase conducted with due diligence by the department?

  *The department failed to conduct the disciplinary phase with due diligence. The hiring authority waited nearly eight months to conduct the investigative and penalty conferences after the disposition of the criminal matter. A plea was entered on November 3, 2010, yet the conference was not conducted until July 25, 2011. There was no reasonable explanation for this delay.*

- If the hiring authority determined additional investigation was necessary, was additional investigation requested?

  *The hiring authority submitted a reconsideration request to OIA Central Intake; however, the OIG did not receive a completed CDCR Form 402 indicating additional investigation was necessary.*

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2010-07-18** | **10-0003039-IR** | 1. **Failure to Report**<br><br>2. **Failure to Report**<br><br>3. **Other Failure of Good Behavior** | 1. **Not Sustained**<br><br>2. **Sustained**<br><br>3. **Sustained** | **Dismissal** | **Sufficient** |

## Facts of the Case
On July 18, 2010, a sergeant allegedly stole groceries from a local market while off-duty. The sergeant was prosecuted and pled no contest to misdemeanor grand theft. It was further alleged that the sergeant failed to report her arrest and subsequent conviction.

## Disposition
The hiring authority sustained the allegations the sergeant participated in criminal activity, and failed to report her arrest. The hiring authority did not sustain the allegation that the sergeant failed to report her conviction. Based on the sustained allegations, the hiring authority served the sergeant with a notice of dismissal. However, the sergeant resigned before the disciplinary action took effect. A letter indicating the sergeant resigned pending disciplinary action was placed in her official personnel file.

## Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2010-08-24** | **10-0003192-IR** | 1. **Discourteous Treatment**<br><br>2. **Other** | 1. **Sustained**<br><br>2. **Sustained** | **Salary Reduction** | **Sufficient** |

## Facts of the Case
On August 24, 2010, an officer allegedly made comments that were construed as sexual harassment by other officers.

## Disposition
The hiring authority determined there was sufficient evidence to sustain the allegations and imposed a 10 percent salary reduction for 13 months. The officer appealed the case to the State Personnel Board. The department entered into a settlement agreement with the officer whereby the department agreed to reduce the penalty to a salary reduction of ten percent for eight months. The officer agreed to withdraw his appeal and attend sexual harassment prevention and equal employment opportunity training. The OIG found the settlement agreement to be reasonable.

## Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2010-07-29** | **10-0003924-IR** | 1.  **Neglect of Duty** | 1.  **Not Sustained** | **No Penalty Imposed** | **Insufficient** |

## Facts of the Case

On July 29, 2010, a lieutenant was alleged to have ordered the use of chemical agents on a mental health ward. Allegedly, the lieutenant ordered the use of controlled force on a combative ward and failed to have the controlled use of force videotaped.

## Disposition

The hiring authority determined that there was insufficient evidence to sustain the allegations.

## Disciplinary Assessment

The hiring authority delayed seven months in reviewing this matter for potential discipline. The hiring authority and the department attorney failed to consult with the OIG at critical junctures in this case, including the conference regarding the sufficiency of the investigation. The conference was re-done in order to include the OIG. The deficiencies did not adversely affect the overall outcome in this case.

## Assessment Questions

- Was the matter referred to the Office of Internal Affairs as soon as reasonably practical, within 45 calendar days of the date of discovery?

  *The alleged misconduct was discovered on July 29, 2010. The request for investigation was submitted on November 15, 2010, 110 days later.*

- Did OIA Central Intake make a determination regarding the case within 30 calendar days?

  *The request for investigation was submitted on November 15, 2010. OIA Central Intake made its determination on December 29, 2010, 45 days after receipt.*

- Within 21 calendar days, did the department attorney make an entry into CMS accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

  *A department attorney was assigned the case on January 5, 2011, and documented no case activity until she was removed from the case on June 20, 2011. Another department attorney was assigned on June 27, 2011, and did not make the required CMS entry accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time.*

- Did the hiring authority timely consult with the OIG and the department attorney (if applicable), regarding the sufficiency of the investigation and the investigative findings?

  *The case was returned to the hiring authority from OIA Central Intake on January 3, 2011. The hiring authority and the department attorney held the initial 402 conference on July 12, 2011, more than six months later. In addition, the department attorney and the hiring authority did not include the OIG in the 402 conference, which required that the conference be repeated on July 21, 2011, to include OIG and input from the OIG monitor. However, these deficiencies did not adversely affect the overall outcome in this case.*

- Did the department attorney or disciplinary officer cooperate with and provide continual real-time consultation with the OIG throughout the disciplinary phase, until all proceedings were completed, except for those related to a writ?

  *The department attorney was assigned on June 27, 2011. The department attorney did not meet with the Office of the Inspector General prior to the penalty conference and did not include the OIG monitor in the penalty conference. Consequently, the penalty conference had to be redone in order to include the OIG monitor and consider their input.*

- Was the disciplinary phase conducted with due diligence by the department?

  *The case was returned to the hiring authority from OIA Central Intake on January 3, 2011. The hiring authority and the department attorney held the initial 402 conference on July 12, 2011, more than six months later. In addition, the department attorney and the hiring authority did not include OIG in the 402 conference, which required that the conference be repeated on July 21, 2011, to include the OIG and input from the OIG monitor. However, these deficiencies did not adversely affect the overall outcome in this case.*

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2010-11-08** | **11-0000133-IR** | 1. **Dishonesty**<br><br>2. **Neglect of Duty** | 1. **Not Sustained**<br><br>2. **Sustained** | **Salary Reduction** | **Insufficient** |

## Facts of the Case

On November 8, 2010, a sergeant allegedly forged the signatures of an officer and a sergeant who failed to sign out after completing their assigned shifts. It was also alleged that he was dishonest when speaking to a lieutenant about the actions he took to verify the health and safety of the sergeant who failed to sign out.

## Disposition

The hiring authority determined there was sufficient evidence to sustain the allegation that the sergeant forged the signatures of an officer and a sergeant on their timesheets and imposed a ten percent salary reduction for 24 months.

## Disciplinary Assessment

The department failed to exercise due diligence in this case. The hiring authority delayed ten months before holding the investigation and penalty conferences. Additionally, the department attorney failed to make proper documentation in the case management system.

## Assessment Questions

- Did the hiring authority timely consult with the OIG and the department attorney (if applicable), regarding the sufficiency of the investigation and the investigative findings?

  *The hiring authority received the case back from the Office of Internal Affairs on January 6, 2011; however, the findings conference did not occur until October 20, 2011, more than ten months later.*

- Did the hiring authority timely consult with the OIG and the department attorney (if applicable) regarding disciplinary determinations prior to making a final decision?

  *The hiring authority received the case back from the Office of Internal Affairs on January 6, 2011; however, the hiring authority did not conduct the findings conference until October 20, 2011.*

- Did OIA Central Intake make a determination regarding the case within 30 calendar days?

  *The request for investigation was dated November 29, 2010; however, OIA Central Intake did not make a determination regarding the case until January 5, 2011.*

- Within 21 calendar days, did the department attorney make an entry into CMS accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

  *The department attorney failed to confirm the date of discovery in CMS.*

- Did the department attorney attend the Skelly hearing, unless precluded by a legitimate unavoidable scheduling conflict, as required?

  *The department attorney did not attend the Skelly hearing.*

- Was the disciplinary phase conducted with due diligence by the department?

  *The hiring authority received the case back from OIA Central Intake on January 6, 2011; however, the findings and penalty conferences did not occur until ten months later on October 20, 2011.*

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2010-11-06** | **11-0000253-IR** | 1. **Insubordination**<br><br>2. **Neglect of Duty** | 1. **Sustained**<br><br>2. **Sustained** | **Salary Reduction** | **Sufficient** |

## Facts of the Case

On November 6, 2010, three officers allegedly failed to keep housing unit section doors locked, allowing inmates to move freely in the section. This created an opportunity for two inmates to attack another inmate which necessitated the use of force to quell the incident.

## Disposition

The hiring authority determined there was sufficient evidence to sustain all allegations against the three officers. Two officers received a five percent salary reduction for six months; however, the hiring authority gave the third officer a letter of instruction prior to the initiation of the employee disciplinary process. The two officers that were disciplined did not file an appeal with the State Personnel Board.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | | Findings | | Penalty | Rating |
|---|---|---|---|---|---|---|---|
| **2010-09-21** | **11-0000369-IR** | 1. Use of Force | | 1. No Finding | | **No Penalty Imposed** | **Insufficient** |
| | | 2. Neglect of Duty | | 2. No Finding | | | |

## Facts of the Case

It was alleged that on September 21, 2010, that a sergeant twice ordered an officer to spray an inmate with pepper spray and personally used pepper spray on an inmate who was in the cell by himself refusing to submit to mechanical restraints.

## Disposition

The hiring authority determined there was insufficient evidence to sustain the allegations.

## Disciplinary Assessment

The department failed to exercise due diligence in this case. The department delayed the initial referral and processing of this case. Upon receiving the case back from OIA Central Intake for direct action, the hiring authority waited nearly six months to hold the findings conference.

## Assessment Questions

- Was the matter referred to the Office of Internal Affairs as soon as reasonably practical, within 45 calendar days of the date of discovery?

  *The date of discovery was October 5, 2010; however, the hiring authority did not refer the matter to the Office of Internal Affairs until December 7, 2010.*

- Did OIA Central Intake make a determination regarding the case within 30 calendar days?

  *The request for investigation date was December 7, 2010; however, OIA Central Intake did not make a determination regarding the case until February 2, 2011.*

- Did the disciplinary officer make an entry into CMS prior to the findings conference accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

  *The disciplinary officer failed to make any entry into CMS confirming the date of the reported incident, the date of discovery, or the deadline for taking disciplinary action.*

- Did the hiring authority timely consult with the OIG and department attorney (if applicable), regarding the sufficiency of the investigation and the investigative findings?

  *The hiring authority received the case back from OIA Central Intake for direct action on February 3, 2011; however, the findings conference did not occur until August 12, 2011.*

- Did the hiring authority, who participated in the findings conference, appropriately determine the investigative findings for each allegation?

  *The hiring authority did not sustain the allegations. However, the hiring authority noted that the subject was involved in the act, but received appropriate corrective action on the day of the incident. Thus, the correct finding for each allegation should have been sustained.*

- Was the disciplinary phase conducted with due diligence by the department?

  *The hiring authority delayed the process by waiting nearly two months to refer the matter to the Office of Internal Affairs and another six months from receiving the case back to hold the findings conference. Additionally, OIA Central Intake delayed the process by waiting two months to make a determination regarding this case.*

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2010-11-13** | **11-0000439-IR** | 1.    **Neglect of Duty** | 1.    **Sustained** | **Salary Reduction** | **Sufficient** |

## Facts of the Case

On November 13, 2010, two officers allegedly directed a control booth officer to open the cell door of a hostile inmate, when there was allegedly no immediate threat. Upon opening of the cell door, the inmate took an aggressive stance, resulting in the officers using pepper spray.

## Disposition

The hiring authority determined there was sufficient evidence to sustain the allegations against both officers and imposed a five percent salary reduction for three months for both officers. Both officers filed appeals with the State Personnel Board, following which the hiring authority entered into settlement agreements whereby the penalties were reduced to letters of reprimand for both officers. The OIG found the settlement agreements with both officers to be reasonable.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-11-05 | 11-0000447-IR | 1.  **Neglect of Duty** | 1.  **Sustained** | **Salary Reduction** | **Insufficient** |

## Facts of the Case

On November 5, 2010, an officer allegedly violated program procedures when he allowed two inmates to exit the shower area unrestrained and unescorted, which provided an opportunity for the inmates to attack another inmate. The inmates subsequently attacked the other inmate and inflicted head injuries, which necessitated treatment at an outside hospital.

## Disposition

The hiring authority sustained the allegation against the officer and imposed a salary reduction of five percent for a period of six months.

## Disciplinary Assessment

The department failed to exercise due diligence in this case. The department delayed the initial referral and processing of this case. The hiring authority waited nearly seven months to hold the investigation and penalty conferences. Additionally, the hiring authority was untimely in its response to OIG's questions and failed to provide the OIG an opportunity to review the disciplinary action prior to it being served.

## Assessment Questions

- Did the hiring authority timely consult with the OIG and department attorney (if applicable), regarding the sufficiency of the investigation and the investigative findings?

  *The hiring authority failed to timely consult with the OIG. The hiring authority received the case from OIA Central Intake on February 10, 2011, but did not hold the conference until September 13, 2011.*

- Was the CDCR Form 402 documenting the findings properly completed?

  *The form was properly completed; however, it was not provided to the OIG prior to the service of the adverse action.*

- Did the hiring authority timely consult with the OIG and the department attorney (if applicable) regarding disciplinary determinations prior to making a final decision?

  *The hiring authority failed to timely consult with the OIG regarding disciplinary determinations. The hiring authority received the case from OIA Central Intake on February 10, 2011, but did not hold the penalty conference until September 13, 2011.*

- Was the CDCR Form 403 documenting the penalty properly completed?

  *The form was not signed at least 14 calendar days before service of the notice of adverse action. The form was signed September 21, 2011, and the notice of adverse action was served on September 29, 2011. Additionally, the OIG did not receive a signed copy of CDCR Form 403 prior to it being served on the officer. The OIG received the notice of adverse action and the signed copy of CDCR Form 403 on the same day.*

- Did the department attorney or disciplinary officer provide the OIG with a copy of the draft disciplinary action and consult with the OIG?

  *The disciplinary officer failed to provide the OIG with a copy of the draft disciplinary action and consult with the OIG.*

- Was the matter referred to the Office of Internal Affairs as soon as reasonably practical, within 45 calendar days of the date of discovery?

  *The matter was not referred to the Office of Internal Affairs as soon as reasonably practical. The date of discovery was November 5, 2010. The matter was referred to the Office of Internal Affairs on January 6, 2011.*

- Did OIA Central Intake make a determination regarding the case within 30 calendar days?

  *The request for investigation was dated January 6, 2011; OIA Central Intake did not make a determination regarding the case until February 9, 2011.*

- Did the disciplinary officer make an entry into CMS prior to the findings conference accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

  *The disciplinary officer failed to make an entry into CMS prior to the findings conference accurately confirming the date of the reported incident, the date of discovery, and the deadline for taking disciplinary action.*

- Did the department attorney or disciplinary officer cooperate with and provide continual real-time consultation with the OIG throughout the disciplinary phase, until all proceedings were completed, except for those related to a writ?

  *The disciplinary officer did not provide continual real-time consultation with the OIG throughout the disciplinary process. The disciplinary officer was unresponsive to the OIG's request for additional information. Additionally, the disciplinary officer failed to send CDCR forms 402 and 403 to the OIG prior to sending out the notice of adverse action. More importantly, the disciplinary officer served the notice of adverse action without providing the OIG an opportunity to review it.*

- Did the hiring authority cooperate and provide continual real-time consultation with the OIG throughout the disciplinary phase, until all proceedings were completed, except for those related to a writ?

  *The hiring authority failed to provide continual real-time consultation with the OIG throughout the disciplinary phase. The hiring authority did not provide the OIG with an opportunity to review the notice of adverse action prior to it being served on the officer.*

- Was the disciplinary phase conducted with due diligence by the department?

  *The department failed to conduct the disciplinary phase with due diligence. The hiring authority waited nearly seven months after receiving the case back from OIA Central Intake to hold the investigatory and penalty conferences.*

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2011-01-26** | **11-0000738-IR** | 1.  **Neglect of Duty** | 1.  **Sustained** | **Salary Reduction** | **Sufficient** |

## Facts of the Case
On January 26, 2011, it was alleged that a lieutenant failed to properly complete use-of-force packets, and failed to properly adjudicate rules violations, thus affecting the disciplinary actions against inmates.

## Disposition
The hiring authority sustained the allegation and imposed a 10 percent salary reduction for 12 months. The officer filed an appeal with the State Personnel Board. The department entered into a settlement agreement with the officer and modified the penalty to a 5 percent salary reduction for 12 months and the officer agreed to withdraw his appeal. The OIG concurred with the settlement agreement.

## Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date 2010-11-21 | OIG Case Number 11-0000739-IR | Allegations 1.　Neglect of Duty | Findings 1.　Sustained | Penalty Salary Reduction | Rating Insufficient |
|---|---|---|---|---|---|

## Facts of the Case

On November 21, 2010, an officer allegedly opened a cell door for two inmates on a modified program, who were not allowed out of their cell unrestrained and unescorted. The two inmates attacked another group of inmates, who were out of their cells, with inmate manufactured weapons.

## Disposition

The hiring authority determined there was sufficient evidence to sustain the allegations and imposed a salary reduction of five percent reduction for six months. The officer did not file an appeal with the State Personnel Board.

## Disciplinary Assessment

The department failed to exercise due diligence in the disciplinary phase. The hiring authority waited nearly seven months to hold the investigative and penalty conferences. However, the delays did not adversely affect the outcome of the case.

## Assessment Questions

- Was the matter referred to the Office of Internal Affairs as soon as reasonably practical, within 45 calendar days of the date of discovery?

  *The matter was discovered on November 21, 2010; however, it was not referred to the Office of Internal Affairs until January 6, 2011.*

- Did OIA Central Intake make a determination regarding the case within 30 calendar days?

  *The request for investigation was dated January 6, 2011; however, OIA Central Intake did not make a determination regarding the case until March 9, 2011.*

- Did the disciplinary officer make an entry into CMS prior to the findings conference accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

  *The disciplinary officer failed to make an entry into CMS prior to the findings conference confirming the date of the reported incident, the date of discovery, and the deadline for taking disciplinary action.*

- Did the hiring authority timely consult with the OIG and department attorney (if applicable), regarding the sufficiency of the investigation and the investigative findings?

  *The hiring authority failed to timely consult with the OIG regarding the sufficiency of the investigation and the investigative findings. The hiring authority received the case back from OIA Central Intake for direct action on March 11, 2011; however, the conference was not held until October 21, 2011.*

- Did the hiring authority timely consult with the OIG and the department attorney (if applicable) regarding disciplinary determinations prior to making a final decision?

  *The hiring authority failed to timely consult with the OIG regarding the disciplinary determinations prior to making a final decision. The hiring authority received the case back from OIA Central Intake for direct action on March 11, 2011; however, the conference was not held until October 21, 2011.*

- Was the CDCR Form 403 documenting the penalty properly completed?

  *The completed CDCR Form 403 was not signed by the hiring authority at least fourteen calendar days before service of the notice of adverse action. The CDCR Form 403 was signed on October 21, 2011; however, the notice of adverse action was served October 27, 2011.*

- Was the disciplinary phase conducted with due diligence by the department?

  *The hiring authority failed to timely consult with the OIG regarding the sufficiency of the investigation and disciplinary determinations prior to making a final decision. Approximately seven months elapsed between the time the hiring authority received the case back from OIA Central Intake and holding the conferences.*

| Incident Date 2011-02-13 | OIG Case Number 11-0000962-IR | Allegations 1. Neglect of Duty 2. Dishonesty | Findings 1. Sustained 2. Not Sustained | Penalty Salary Reduction | Rating Sufficient |
|---|---|---|---|---|---|

## Facts of the Case

On February 13, 2011, an officer allegedly failed to follow urinalysis testing procedures and failed to conduct unclothed body searches on four inmates. Also, the officer was allegedly dishonest when he completed and signed a form stating he conducted unclothed body searches of the four inmates.

## Disposition

The hiring authority determined there was sufficient evidence to sustain the allegation of neglect of duty and imposed a five percent salary reduction for six months. The hiring authority determined there was insufficient evidence to sustain the dishonesty allegation. The officer filed an appeal with the State Personnel Board, following which the department entered into a settlement agreement with the officer reducing the penalty to a five percent salary reduction for two months. The OIG concurred with the settlement agreement.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date 2010-12-14 | OIG Case Number 11-0001012-IR | Allegations 1. Neglect of Duty | Findings 1. Sustained | Penalty Counseling | Rating Insufficient |
|---|---|---|---|---|---|

## Facts of the Case

On December 14, 2010, an officer allegedly violated a modified program requiring that certain inmates be kept separate. The officer improperly opened a cell door which led to three inmates from one race attacking an inmate of a different race.

## Disposition

The hiring authority determined there was sufficient evidence to sustain the allegation and served the officer with a letter of instruction.

## Disciplinary Assessment

The case was not processed with due diligence. The case was returned to the hiring authority from OIA Central Intake for imposition of discipline without further investigation on April 6, 2011; however, investigative findings and penalty determinations were not made until November 29, 2011. This delay did not adversely affect the outcome of the case.

## Assessment Questions

- Did the hiring authority timely consult with the OIG and department attorney (if applicable), regarding the sufficiency of the investigation and the investigative findings?

  *The case was returned to the hiring authority on April 6, 2011; however, the consultation with the OIG and department attorney regarding the sufficiency of the investigation and the investigative findings did not take place until November 29, 2011.*

- Did the hiring authority timely consult with the OIG and the department attorney (if applicable) regarding disciplinary determinations prior to making a final decision?

  *The case was returned to the hiring authority on April 6, 2011; however, disciplinary determinations were not made until November 29, 2011.*

- Was the disciplinary phase conducted with due diligence by the department?

  *The case was processed by OIA Central Intake on April 6, 2011; however, the hiring authority did not make finding and penalty determinations until November 29, 2011.*

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2010-10-29** | **11-0001206-IR** | 1. **Neglect of Duty**<br><br>2. **Neglect of Duty** | 1. **Sustained** | **Other** | **Sufficient** |

### Facts of the Case
On October 29, 2010, an officer allegedly failed to follow procedures when he opened the wrong cell door which resulted in a fight between two inmates. An associate warden and two captains allegedly failed to properly identify the misconduct and accurately complete use-of-force critique forms.

### Disposition
The hiring authority sustained the allegations against the officer, the associate warden, and the two captains. The officer was issued a letter of instruction. The associate warden and the two captains received on-the-job training.

### Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2011-04-29** | **11-0001548-IR** | 1. **Other Failure of Good Behavior** | 1. **Not Sustained** | **No Penalty Imposed** | **Sufficient** |

### Facts of the Case
On April 29, 2011, an officer allegedly slapped and kicked his wife, which caused her shoulder to dislocate.

### Disposition
The hiring authority determined there was insufficient evidence to sustain the allegations.

### Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2011-06-23** | **11-0001731-IR** | 1. **Contraband**<br><br>2. **Misuse of State Equipment or Property**<br><br>3. **Dishonesty** | 1. **Sustained**<br><br>2. **Sustained**<br><br>3. **Sustained** | **Dismissal** | **Sufficient** |

### Facts of the Case
On June 23, 2011, it was alleged that a truck driver possessed eight grams of marijuana, rolling papers, cigars, drug paraphernalia, and a mobile phone at an institution.

### Disposition
The hiring authority sustained the allegations and served the truck driver with a notice of dismissal. However, the truck driver resigned before the disciplinary action took effect. A letter indicating he resigned pending disciplinary action was placed in his official personnel file.

### Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date 2011-01-27 | OIG Case Number 11-0001863-IR | Allegations 1. Neglect of Duty | Findings 1. Sustained | Penalty Letter of Reprimand | Rating Insufficient |
|---|---|---|---|---|---|

## Facts of the Case

On January 27, 2011, an officer allegedly failed to notify the department of the change in his eligibility to own or possess a firearm, due to his admission into a mental health facility.

## Disposition

The hiring authority sustained the allegations and issued a letter of reprimand. The department and the officer entered into a settlement agreement whereby the department agreed to remove the letter of reprimand from the officer's official personnel file within two years as opposed to the customary three years. The OIG found the settlement to be reasonable.

## Disciplinary Assessment

The department failed to comply with its policies and procedures governing the disciplinary process. The department failed to conduct the disciplinary phase with due diligence. The hiring authority significantly delayed the disciplinary process by waiting four months to refer the matter to the Office of Internal Affairs. The hiring authority further delayed the process by waiting another four months to hold the findings and penalty conference. The hiring authority originally determined that the appropriate penalty for the misbehavior was counseling. When notified that the OIG did not concur, the hiring authority re-evaluated the case and determined the appropriate penalty. Additionally, the disciplinary officer failed to consult with the OIG regarding the disciplinary action. Moreover, the hiring authority failed to consult with the OIG regarding the settlement agreement.

## Assessment Questions

- Was the matter referred to the Office of Internal Affairs as soon as reasonably practical, within 45 calendar days of the date of discovery?

  *The hiring authority discovered the misconduct on February 3, 2011, but did not refer the matter to the Office of Internal Affairs until June 23, 2011.*

- Did the disciplinary officer make an entry into CMS prior to the findings conference accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

  *The disciplinary officer failed to make any entry into CMS confirming the date of the reported incident, the date of discovery, or the deadline for taking disciplinary action.*

- Did the hiring authority timely consult with the OIG and department attorney (if applicable), regarding the sufficiency of the investigation and the investigative findings?

  *The Office of Internal Affairs sent the case back to the hiring authority for direct action on July 27, 2011, and determinations regarding the regarding the sufficiency of the investigation and the investigative findings were not made until November 18, 2011.*

- Was the CDCR Form 402 documenting the findings properly completed?

  *The OIG received the completed CDCR Form 402 on the same day it received the served disciplinary action, November 28, 2011.*

- Did the hiring authority timely consult with the OIG and the department attorney (if applicable) regarding disciplinary determinations prior to making a final decision?

  *The Office of Internal Affairs sent the case back to the hiring authority on July 27, 2011, and determinations regarding disciplinary determinations were not made until November 18, 2011.*

- Was the CDCR Form 403 documenting the penalty properly completed?

  *The OIG did not receive a completed CDCR Form 403 prior to the service of the disciplinary action. The disciplinary action was served on November 23, 2011. The OIG received a copy of the completed CDCR Form on November 28, 2011.*

- Did the department attorney or disciplinary officer provide the OIG with a copy of the draft disciplinary action and consult with the OIG?

  *The disciplinary officer failed to provide a reasonable time to provide feedback regarding the draft disciplinary action. The OIG received the draft disciplinary action on November 22, 2011. The OIG reviewed the draft disciplinary action in the morning on November 23, 2011, and contacted the disciplinary officer to consult only to discover the disciplinary action was already served.*

- If the case settled, did the department attorney or disciplinary officer properly complete the CDC Form 3021?

  *The disciplinary officer failed to complete the CDC Form 3021. The OIG did not receive a copy of the complete CDC Form 3021 and there is no entry in CMS indicating that the form was completed.*

- Did the hiring authority consult with the OIG and department attorney (if applicable) before modifying the penalty or agreeing to a settlement?

  *The OIG was unaware that the hiring authority entered into a settlement agreement until receiving an e-mail on December 29, 2011, with the settlement agreement attached.*

- Did the department attorney or disciplinary officer cooperate with and provide continual real-time consultation with the OIG throughout the disciplinary phase, until all proceedings were completed, except for those related to a writ?

  *The disciplinary officer did not respond to the OIG's phone calls pertaining to the penalty conference and disciplinary action. Further, the disciplinary officer provided approximately twelve hours to review the disciplinary action prior to serving the officer and, at no time, did the disciplinary officer consult with the OIG monitor concerning the disciplinary action prior to it being served.*

- Did the hiring authority cooperate with and provide continual real-time consultation with the OIG throughout the disciplinary phase, until all proceedings were completed, except for those related to a writ?

  *The hiring authority did not provide continual real-time consultation with the OIG throughout the disciplinary phase. During the penalty conference, the hiring authority determined that corrective action was appropriate for the misconduct that occurred. The OIG informed the hiring authority that it did not concur. The OIG was later notified via e-mail that the hiring authority reconsidered his decision and determined that the penalty as suggested by the OIG was appropriate. Moreover, the hiring authority did not consult with the OIG regarding the settlement agreement. The OIG was not aware of a settlement agreement until receiving the executed document.*

- Was the disciplinary phase conducted with due diligence by the department?

  *The department failed to conduct the disciplinary phase with due diligence. The hiring authority waited nearly four months to refer the matter to the Office of Internal Affairs. The hiring authority further prolonged the disciplinary phase by waiting another four months to conduct the finding and penalty conferences.*

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2011-01-22** | **11-0001907-IR** | 1.   **Neglect of Duty** | 1.   **Sustained** | **Counseling** | **Sufficient** |

## Facts of the Case

On January 22, 2011, two officers were involved in a use-of-force incident with a resistant inmate. During the incident the officers failed to follow policy and procedure. A lieutenant, a captain, and an associate warden allegedly failed to identify the policy violation while reviewing the report.

## Disposition

The hiring authority sustained the allegations against the lieutenant, captain, and associate warden. Each was provided corrective training.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

## Recommendations

The department should revise the use-of-force policy and provide more thorough training for all employees that use force and review use-of-force incidents. By having a unified use-of-force policy and procedure for the department and having a mandatory statewide training program on the unified policy the department's managers will not repeatedly fail to identify policy violations in use-of-force review meetings.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2011-07-26** | **11-0002170-IR** | 1. **Failure to Report** 2. **Other Criminal Act** | 1. **Sustained** 2. **Sustained** | **Dismissal** | **Sufficient** |

## Facts of the Case
It was alleged that on July 26, 2011, an off-duty officer robbed a pharmacy in an attempt to obtain narcotics.

## Disposition
The hiring authority determined there was sufficient evidence to sustain the allegations and served the officer with a notice of dismissal. However, the officer resigned before the disciplinary action took effect. A letter indicating the officer resigned pending disciplinary action was placed in his official personnel file.

## Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

# SOUTH REGION

| Incident Date 2009-04--07 | OIG Case Number 09-0001965-IR | Allegations | Findings | Penalty No Penalty Imposed | Rating Insufficient |
|---|---|---|---|---|---|
| | | 1. **Contraband** <br><br> 2. **Other Failure of Good Behavior** | 1. **Sustained** <br><br> 2. **No Finding** | | |

## Facts of the Case

On April 7, 2009, an officer was arrested by federal law enforcement agents while entering the institution. It was alleged that the officer was involved in a 24 member mortgage fraud conspiracy that took place between January 2005 and April 2008. It was also alleged that the officer was in possession of a digital media device and a DVD hidden inside his stab proof vest when he was entering the secured perimeter of the institution.

## Disposition

The hiring authority made a decision in 2009 to wait for the outcome of the criminal case before making any determination as to whether there was administrative misconduct as to the mortgage fraud conspiracy and the possession of contraband. As a result, the deadline to take disciplinary action for the allegations expired.

## Disciplinary Assessment

The hiring authority did not adequately monitor the deadline for taking disciplinary action. The department failed to act within the three year time period from the date of the misconduct. As a result, the department was unable to take any disciplinary action for the officer's alleged misconduct. A department attorney was not assigned to the case.

## Assessment Questions

- Did the disciplinary officer make an entry into CMS prior to the findings conference accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

  *The disciplinary officer did not make an entry into CMS accurately confirming the deadline for taking disciplinary action.*

- Did the hiring authority timely consult with the OIG and department attorney (if applicable), regarding the sufficiency of the investigation and the investigative findings?

  *The hiring authority did not timely consult with the OIG regarding the sufficiency of the investigation. Over a period of two years, the OIG made numerous requests for updates on when the hiring authority would be prepared to discuss the case. The hiring authority indicated he wanted to wait for the outcome of the criminal trial which remains pending.*

- Did the department attorney or disciplinary officer cooperate with and provide continual real-time consultation with the OIG throughout the disciplinary phase, until all proceedings were completed, except for those related to a writ?

  *The disciplinary officer was often unresponsive when asked about the status of the case and the need to make disciplinary findings.*

- Did the hiring authority cooperate with and provide continual real-time consultation with the OIG throughout the disciplinary phase, until all proceedings were completed, except for those related to a writ?

  *The hiring authority was not responsive to the OIG's recommendation that disciplinary findings be made prior to the completion of the criminal case.*

- Was the disciplinary phase conducted with due diligence by the department?

  *The department waited more than two years to address the case and was ultimately barred from taking any disciplinary action against the officer because the deadline for taking disciplinary action passed.*

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2010-05-21** | **10-0002461-IR** | 1. **Other Failure of Good Behavior** | 1. **Sustained** | **No Penalty Imposed** | **Insufficient** |

## Facts of the Case

On May 21, 2010, a sergeant was arrested for allegedly driving under the influence and causing a collision which resulted in injuries. The sergeant was subsequently convicted of only driving under the influence.

## Disposition

Although the hiring authority determined there was sufficient evidence to support a finding of misconduct, the timeframe for taking disciplinary action expired before any action could be taken. Therefore, the sergeant was not disciplined by the department.

## Disciplinary Assessment

Despite repeated warnings and inquiries from the OIG, the hiring authority failed to adequately monitor the pending criminal case and allowed more than one year to elapse before attempting to serve the sergeant with his disciplinary action. As a result, the deadline to take disciplinary action passed.

## Assessment Questions

- Did the disciplinary officer make an entry into CMS prior to the findings conference accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

  *The disciplinary officer did not make an entry into CMS confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline within 21 days.*

- Did the department attorney or disciplinary officer appropriately determine that the deadline for taking disciplinary action as originally calculated should be modified and consult with the OIG about the decision to modify?

  *The disciplinary officer did not appropriately determine the deadline for taking disciplinary action.*

- Did the hiring authority timely consult with the OIG and department attorney (if applicable), regarding the sufficiency of the investigation and the investigative findings?

  *The OIG made numerous requests for a conference to discuss the sufficiency of the investigation and investigative findings; however, the department failed to timely conduct the conference which resulted in the expiration of the deadline for taking disciplinary action.*

- Did the hiring authority timely consult with the OIG and the department attorney (if applicable) regarding disciplinary determinations prior to making a final decision?

  *The conference to discuss the case was not held in a timely manner.*

- Did the department attorney or disciplinary officer cooperate with and provide continual real-time consultation with the OIG throughout the disciplinary phase, until all proceedings were completed, except for those related to a writ?

  *The disciplinary officer did not cooperate with the OIG throughout the disciplinary phase. The OIG made numerous requests for updates on the status of the criminal case and the scheduling of the conference to determine whether disciplinary action should be taken; however, many of those requests were met with no response.*

- Was the disciplinary phase conducted with due diligence by the department?

  *The department failed to properly monitor the status of the criminal case in order to make a proper assessment of the statute of limitations for taking disciplinary action in the administrative case. As a result, the department was barred from taking any disciplinary action against the sergeant.*

- Did the hiring authority cooperate with and provide continual real-time consultation with the OIG throughout the disciplinary phase, until all proceedings were completed, except for those related to a writ?

  *The disciplinary officer did not cooperate with the OIG throughout the disciplinary phase. The OIG made numerous requests for updates on the status of the criminal case and the scheduling of the conference to determine whether disciplinary action should be taken; however, many of those requests were met with no response.*

| Incident Date 2010-06-11 | OIG Case Number 10-0002576-IR | Allegations 1. **Other** 2. **Other Failure of Good Behavior** | Findings 1. **Sustained** 2. **Sustained** | Penalty **Salary Reduction** | Rating **Sufficient** |
|---|---|---|---|---|---|

## Facts of the Case

It was alleged that on June 11, 2010, an off-duty officer was intoxicated and engaged in an argument with his wife, which escalated when the officer pulled his wife by the hair. Fearing for her safety, the officer's wife locked herself and their young daughter in their car. The officer punched the driver's side window, shattering it. The officer's wife sustained cuts to her neck and hands. As a result of the officer's conduct, outside law enforcement officers were dispatched to the officer's home. When they arrived, the officer was aggressive and refused to comply with orders causing outside law enforcement to utilize a taser on the officer.

## Disposition

The hiring authority determined there was sufficient evidence to sustain the allegations and imposed a salary reduction of 10 percent for 24 months. However, after the Skelly hearing, the department entered into a settlement agreement with the officer and reduced the penalty to 10 percent for 12 months. The OIG concurred with the settlement agreement.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date 2010-05-23 | OIG Case Number 10-0002623-IR | Allegations 1. **Neglect of Duty** | Findings 1. **Sustained** | Penalty **Salary Reduction** | Rating **Insufficient** |
|---|---|---|---|---|---|

## Facts of the Case

On May 23, 2010, an officer allegedly announced in a dorm setting that inmates who wanted packaged soup left at the institution from an inmate who transferred could come up to a table and have them. The officer's announcement allegedly led to a riot that occurred later in the day among the inmates who disagreed on who should get the packaged soup.

## Disposition

The hiring authority sustained the allegation that the officer gave gifts and gratuities to inmates and endangered the safety and security of the institution and imposed a five percent salary reduction for six months. After the Skelly hearing, the penalty was reduced to a five percent salary reduction for three months. The OIG concurred in the reduction of penalty. The officer did not file an appeal with the State Personnel Board.

## Disciplinary Assessment

The department did not comply with its policies. Although there were significant delays in all aspects of this case, including the hiring authority's eight month delay in reviewing the matter for disciplinary purposes, the delays did not adversely affect the case.

## Assessment Questions

- Did the disciplinary officer make an entry into CMS prior to the findings conference accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

  *The disciplinary officer did not confirm the date of the incident, date of discovery, or the deadline for taking disciplinary action in CMS.*

- Did the hiring authority timely consult with the OIG and department attorney (if applicable), regarding the sufficiency of the investigation and the investigative findings?

  *The case was returned to the institution and the disciplinary officer on August 25, 2010. The hiring authority did not complete the consultation with the OIG regarding the sufficiency of the investigation until May 2, 2011, or after the passage of 250 days.*

- Was the penalty upheld by the department after a Skelly hearing?

  *The hiring authority reduced the penalty from a salary reduction of five percent for six months to a salary reduction of five percent for three months.*

- Did the department attorney or disciplinary officer cooperate with and provide continual real-time consultation with the OIG throughout the disciplinary phase, until all proceedings were completed, except for those related to a writ?

  *The OIG sent numerous e-mail requests to the disciplinary officer in an attempt to meet and confer on the facts of this case and to determine a penalty. Despite the numerous requests, it was approximately six months before that conference occurred.*

- Did the hiring authority cooperate with and provide continual real-time consultation with the OIG throughout the disciplinary phase, until all proceedings were completed, except for those related to a writ?

  *The disciplinary officer, on numerous occasions, did not respond to requests from the OIG to meet to discuss the penalty and findings in this case.*

- Was the disciplinary phase conducted with due diligence by the department?

  *By DOM standards, the hiring authority had 14 days to consider the allegations and decide on a penalty for the officer. Instead, the decision whether to discipline and what the penalty would be took approximately nine months.*

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-08-07 | 10-0003632-IR | 1. Discourteous Treatment<br>2. Other Failure of Good Behavior | 1. Not Sustained<br>2. Not Sustained | Other | Sufficient |

## Facts of the Case
On August 7, 2010, an officer allegedly engaged in harassing and annoying behavior toward his ex-girlfriend. Allegedly the officer sent numerous e-mails to his ex-girlfriend and threatened to kill himself. The officer was allegedly seen driving around his ex-girlfriend's place of employment. Outside law enforcement responded to the officer's residence and took the officer for a mental health evaluation.

## Disposition
The hiring authority sustained the allegations of discourteous treatment and failure of good behavior and imposed a salary reduction of five percent for three months. However, following a Skelly hearing, the hiring authority withdrew the action against the officer. While the OIG concurred with the hiring authority's decision to sustain the allegation and impose a penalty, the OIG did not concur with the decision to withdraw the action.

## Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-09-27 | 10-0003733-IR | 1. Other Failure of Good Behavior | 1. Sustained | Salary Reduction | Sufficient |

## Facts of the Case
On September 27, 2010, an officer allegedly grabbed his estranged wife by the throat, threw her to the ground, and then choked her. The officer's estranged wife sustained visible injuries. The officer was arrested by local law enforcement.

## Disposition
The hiring authority sustained the allegations and imposed a salary reduction of ten percent for 24 months. Prior to a Skelly hearing, the hiring authority agreed to reduce the penalty to a 5 percent salary reduction for 24 months. The OIG concurred in penalty modification. The officer did not file an appeal with the State Personnel Board.

## Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2009-12-31** | **10-0003854-IR** | 1. **Other** <br><br> 2. **Dishonesty** | 1. **Sustained** <br><br> 2. **Sustained** | **Dismissal** | **Insufficient** |

## Facts of the Case

It was alleged that on December 31, 2009, a plumber threatened to get his gun and shoot a fellow employee after the two had been involved in an altercation. It was also alleged that the plumber was dishonest to outside law enforcement during the investigation of the incident.

## Disposition

The hiring authority sustained the allegations and determined dismissal was the appropriate penalty. However, the plumber retired prior to the completion of the investigation; therefore, disciplinary action was not taken. A letter indicating the plumber retired under adverse circumstances was placed in his official personnel file.

## Disciplinary Assessment

The hiring authority did not submit the case to the Office of Internal Affairs. Additionally, the hiring authority failed to timely provide the Office of Internal Affairs with all of the requested documentation needed to make a decision on whether any action should be allowed, thereby delaying the case even further. Finally, after an action was approved, the hiring authority and department attorney did not complete the disciplinary process for approximately 11 months.

## Assessment Questions

- Was the matter referred to the Office of Internal Affairs as soon as reasonably practical, within 45 calendar days of the date of discovery?

  *The department was aware of the incident on the date it occurred, December 31, 2009; however, the matter was not submitted to the Office of Internal Affairs until November 2010. The OIG became aware of the allegations in March 2010 and over the next eight months repeatedly made efforts to encourage the hiring authority to submit a request for adverse action.*

- Did OIA Central Intake make an appropriate initial determination regarding the case?

  *The OIG determined that a full investigation was required to adequately determine the scope and severity of the conduct.*

- If the case was submitted to OIA Central Intake or to the Chief of Office of Internal Affairs for reconsideration, was an appropriate decision made regarding the request?

  *The OIG recommended to the hiring authority and the Office of Internal Affairs that a full investigation be opened. The Office of Internal Affairs rejected that recommendation.*

- Did the hiring authority properly deem the Office of Internal Affairs investigation sufficient or insufficient?

  *The department attorney never asked the hiring authority whether the case documentation was sufficient for the hiring authority to come to a conclusion concerning findings.*

- Was the disciplinary phase conducted with due diligence by the department?

  *The disciplinary phase should have been conducted in February 2011. However, despite recommendations to the department attorney and hiring authority by the OIG, the disciplinary phase of the case was not completed until December 2011, approximately 11 months late.*

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-10-24 | 11-0000389-IR | 1.  Other Failure of Good Behavior | 1.  Sustained | Salary Reduction | Insufficient |

## Facts of the Case

On October 24, 2010, an officer allegedly left her three minor children alone at her home while she went to dinner with her boyfriend. The officer did not return for several hours and was contacted by outside law enforcement officers the next morning when she was observed leaving the boyfriend's house at approximately 4:00 am. The officer accompanied the outside law enforcement officers back to her home where the outside law enforcement discovered the home to be unkempt with feces and urine on the floor. The officer's 12-year-old child reported that the officer left her alone and responsible for the other two children.

## Disposition

The hiring authority determined there was sufficient evidence to sustain the allegations and imposed a salary reduction of 10 percent for 24 months. The officer did not file an appeal with the State Personnel Board.

## Disciplinary Assessment

The hiring authority failed to submit a timely request for investigation and action and also failed to conduct the disciplinary proceedings in a timely manner. The department attorney failed to prepare the notice of disciplinary action in a timely manner, but in all other aspects generally performed in compliance with the department's policies and procedures.

## Assessment Questions

- Was the matter referred to the Office of Internal Affairs as soon as reasonably practical, within 45 calendar days of the date of discovery?

  *The institution's investigative services unit discovered that the officer was arrested on October 25, 2010. The matter was submitted to the Office of Internal Affairs for review on December 20, 2010, or after the passage of 66 days.*

- Did OIA Central Intake make a determination regarding the case within 30 calendar days?

  *The institution submitted the case to the Office of Internal Affairs on December 30, 2010. OIA Central Intake did not complete its review until February 3, 2011, or after the passage of 34 days.*

- Did the hiring authority timely consult with the OIG and department attorney (if applicable), regarding the sufficiency of the investigation and the investigative findings?

  *The consultation in this case did not occur until approximately four months had passed.*

- Did the hiring authority timely consult with the OIG and the department attorney (if applicable) regarding disciplinary determinations prior to making a final decision?

  *The consultation in this case did not occur until approximately four months had passed.*

- Was the disciplinary phase conducted with due diligence by the department?

  *Between the time of discovery of this misconduct and the date the notice of disciplinary action was served, approximately nine months had passed.*

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-12-23 | 11-0000572-IR | 1. Neglect of Duty<br>2. Insubordination<br>3. Failure to Report | 1. Sustained<br>2. Not Sustained<br>3. Sustained | **Suspension** | **Insufficient** |

## Facts of the Case

On December 23, 2010, a tower officer allegedly failed to appropriately handle a mini-14 rifle, resulting in the discharge of one round. In addition, the officer failed to immediately report the discharge and only admitted to it after he was asked by a supervisor. Further, at the time of the incident, the officer did not possess his current firearms qualification card and was not appropriately dressed. He was in athletic shoes and not wearing his protective vest.

## Disposition

The hiring authority determined there was sufficient evidence to sustain the allegations and imposed a 24 working-day suspension. The officer did not file an appeal with the State Personnel Board.

## Disciplinary Assessment

Although the hiring authority acted within department policy and procedures and came to a reasoned decision regarding the findings and penalty, it did not address the case in a timely manner. However, the delay did not adversely affect the outcome of this case.

## Assessment Questions

- Did the disciplinary officer make an entry into CMS prior to the findings conference accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

  *Although the disciplinary officer did not make relevant entries into the case management system, the disciplinary officer had not been trained on this responsibility.*

- Was the disciplinary phase conducted with due diligence by the department?

  *The case was ready for disciplinary action in March 2011; however, disciplinary action was not taken until October 2011.*

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2009-07-03 | 11-0000672-IR | 1. **Insubordination**<br><br>2. **Neglect of Duty** | 1. **Sustained**<br><br>2. **Sustained** | **Suspension** | **Insufficient** |

## Facts of the Case

On July 3, 2009, a psychologist allegedly left confidential patient files out in plain view on top of a desk in the psychologist's office.

## Disposition

The hiring authority sustained the allegation and imposed a ten working-day suspension. However, following a Skelly hearing, the psychologist and the department entered into a settlement agreement. The penalty was reduced to a letter of reprimand. The OIG concurred with the settlement agreement.

## Disciplinary Assessment

The hiring authority allowed more than nine months to pass before holding a findings and penalty conference. During that time, the psychologist was charged in a new case with again being negligent and leaving confidential inmate files in an unsecured location. Following the findings and penalty conference, the department attorney failed to produce a draft of the disciplinary action for more than seven months. At that time, the department attorney's supervisor requested another conference with the hiring authority to re-evaluate the findings and the penalty because, among other reasons, so much time had elapsed from the date of the alleged misconduct. After a second conference, the hiring authority determined the initially selected, but not imposed, penalty of dismissal would be reduced to a ten working-day suspension. The department attorney completed the disciplinary action three months later.

## Assessment Questions

- Was the matter referred to the Office of Internal Affairs as soon as reasonably practical, within 45 calendar days of the date of discovery?

  *The date the alleged misconduct was discovered was July 3, 2009, but the matter was not referred to the Office of Internal Affairs until September 25, 2009.*

- Within 21 calendar days, did the department attorney make an entry into CMS accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

  *The department attorney did not make an entry into CMS within 21 days of assignment confirming the date of the incident, the date of discovery, or the deadline for taking disciplinary action.*

- Did the disciplinary officer make an entry into CMS prior to the findings conference accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

  *The disciplinary officer did not make an entry into CMS within 21 days of assignment confirming the date of the incident, the date of discovery, or the deadline for taking disciplinary action.*

- Was the disciplinary action provided to the OIG for review appropriately drafted as described in the DOM?

  *The disciplinary action did not clearly articulate the causes of action and the specific examples cited by the department attorney did not relate to the alleged misconduct.*

- If there was a Skelly hearing, was it conducted pursuant to DOM?

  *The hiring authority failed to notify the OIG or the department attorney about the Skelly hearing in a timely manner.*

- Did a department attorney attend the Skelly hearing, unless precluded by a legitimate unavoidable scheduling conflict, as required?

  *The department attorney did not attend the Skelly hearing because the hiring authority failed to provide notice of the hearing in a timely manner.*

- If the case settled, did the department attorney or disciplinary officer properly complete the CDC Form 3021?

  *A CDC Form 3021 was not completed by the department.*

- Was the disciplinary phase conducted with due diligence by the department?

  *The department allowed more than nine months to pass before holding a conference to determine whether allegations should be sustained. After that time, the department attorney failed to draft the disciplinary action in a timely manner. In total, the disciplinary phase took more than 17 months on a case that involved no investigation.*

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-05-05 | 11-0000673-IR | 1.  **Neglect of Duty** | 1.  **Sustained** | **Suspension** | **Insufficient** |

## Facts of the Case

On May 5, 2010, a psychologist allegedly left confidential patient files out in plain view on top of a desk in the psychologist's office.

## Disposition

The hiring authority sustained the allegation and imposed a ten working-day suspension. However, following a Skelly hearing, the psychologist and the department entered into a settlement agreement. The penalty was reduced to a letter of reprimand. The OIG concurred with the settlement agreement.

## Disciplinary Assessment

The hiring authority allowed more than nine months to pass before holding a findings and penalty conference. During that time, the psychologist was charged in a new case with again being negligent and leaving confidential inmate files in an unsecured location. Following the findings and penalty conference, the department attorney failed to produce a draft of the disciplinary action for more than seven months. At that time, the department attorney's supervisor requested another conference with the hiring authority to re-evaluate the findings and the penalty because, among other reasons, so much time had elapsed from the date of the alleged misconduct. After a second conference, the hiring authority determined the initially selected, but not imposed, penalty of dismissal would be reduced to a ten working-day suspension. The department attorney completed the disciplinary action three months later.

## Assessment Questions

- Within 21 calendar days, did the department attorney make an entry into CMS accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

  *The department attorney did not make an entry into CMS within 21 days of assignment confirming the date of the incident, the date of discovery, or the deadline for taking disciplinary action.*

- Was the disciplinary action provided to the OIG for review appropriately drafted as described in the DOM?

  *The disciplinary action did not clearly articulate the causes of action and the specific examples cited by the department attorney did not relate to the alleged misconduct.*

- If there was a Skelly hearing, was it conducted pursuant to DOM?

  *The hiring authority failed to notify the OIG or the department attorney about the Skelly hearing in a timely manner.*

- Did a department attorney attend the Skelly hearing, unless precluded by a legitimate unavoidable scheduling conflict, as required?

  *The department attorney did not attend the Skelly hearing because the hiring authority failed to provide notice of the hearing in a timely manner.*

- If the case settled, did the department attorney or disciplinary officer properly complete the CDC Form 3021?

  *A CDC Form 3021 was not completed by the department.*

- Was the disciplinary phase conducted with due diligence by the department?

  *The department attorney did not exercise due diligence in drafting the disciplinary action. More than seven months passed from the time the hiring authority sustained allegations to the time the disciplinary action was served on the psychologist.*

| Incident Date 2010-09-04 | OIG Case Number 11-0000786-IR | Allegations 1. Neglect of Duty 2. Neglect of Duty 3. Dishonesty | Findings 1. Sustained 2. Exonerated 3. Sustained | Penalty Counseling | Rating Sufficient |
|---|---|---|---|---|---|

## Facts of the Case

It was alleged that on September 4, 2010, all inmates in a housing unit were directed to vacate their cells so staff could conduct a mandatory security check. A total of 66 inmates refused to come out of their cells. As a result, the 66 inmates were issued disciplinary actions (rules violation reports). A lieutenant allegedly created a generic rules violation report to be used against all of the refusing inmates. An officer allegedly signed 13 of the rules violation reports attesting that he personally ordered 13 of the 66 refusing inmates out of their cells. A sergeant allegedly reviewed and signed off on the rules violation reports. At the subsequent hearings on the 13 rules violation reports, the officer testified that in fact he had not ordered the 13 inmates out of their cells, in contradiction to what was written on the rules violation reports. As a result, the 13 rules violation reports had to be dismissed.

## Disposition

The hiring authority determined that the evidence was insufficient and exonerated the sergeant. The allegation of failure to perform in the scope of training against the lieutenant was sustained; however, no adverse discipline was imposed. Instead, the lieutenant received a letter of instruction. The hiring authority sustained both allegations against the officer and imposed a penalty of a 10 percent salary reduction for 13 months. However, following a Skelly hearing, the hiring authority agreed to settle the case for the reduced penalty of 5 percent for 12 months and also agreed to remove the dishonesty allegation from the action. The OIG concurred with the settlement agreement.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date 2011-01-13 | OIG Case Number 11-0001010-IR | Allegations 1. Neglect of Duty | Findings 1. Sustained | Penalty Salary Reduction | Rating Sufficient |
|---|---|---|---|---|---|

## Facts of the Case

On January 13, 2011, a sergeant allegedly disregarded a statewide directive which required certain inmates to receive meals in their cells, and that any movement was to be conducted with the use of restraints. The sergeant allegedly allowed a buffet style breakfast service, during which an officer was involved in an altercation with an inmate which necessitated the use of force to subdue the inmate. Another officer was bitten in the altercation.

## Disposition

The hiring authority sustained the single allegation of neglect of duty against the sergeant and imposed a salary reduction of five percent for six months as a penalty. After the Skelly hearing, the hiring authority reconsidered the penalty and reduced the discipline to a letter of instruction. The OIG concurred with the modification.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2011-04-27** | **11-0001534-IR** | 1. **Other Criminal Act**<br><br>2. **Other Failure of Good Behavior**<br><br>3. **Discourteous Treatment** | 1. **Sustained**<br><br>2. **Sustained**<br><br>3. **Sustained** | **Salary Reduction** | **Sufficient** |

## Facts of the Case
It was alleged that on April 27, 2011, an off-duty officer, while intoxicated, vandalized a vehicle and was arrested for felony vandalism. The officer subsequently pled guilty to a misdemeanor.

## Disposition
The hiring authority sustained the allegations of drunk in public, vandalism, and discourteous treatment of a private citizen and imposed a salary reduction of five percent for six months. The officer did not file an appeal with the State Personnel Board.

## Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2011-07-22** | **11-0001875-IR** | 1. **Neglect of Duty**<br><br>2. **Dishonesty**<br><br>3. **Discourteous Treatment**<br><br>4. **Other Failure of Good Behavior** | 1. **Sustained**<br><br>2. **Sustained**<br><br>3. **Sustained**<br><br>4. **Sustained** | **Dismissal** | **Sufficient** |

## Facts of the Case
On July 22, 2011, an officer allegedly arrived at the home of his estranged girlfriend, who is also an officer, and yelled for her to come out of her house. When she walked outside, the officer fired a handgun in the air and told the girlfriend to get into his car. The girlfriend complied and the officer drove off down a remote dirt road. The girlfriend was able to get away from the officer and return home unharmed. The officer was subsequently arrested and charged with felony offenses. It was also alleged that the officer was dishonest with outside law enforcement officers.

## Disposition
The hiring authority determined there was sufficient evidence to sustain all of the allegations and imposed a penalty of dismissal. However, the officer had already been separated due to being absent from his job without leave. A letter indicating the department will seek termination if the officer attempts to re-gain reemployment has been placed in his official personnel file.

## Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

# APPENDIX C
# COMBINED PHASE CASE SUMMARIES
## CENTRAL REGION

| Incident Date 2010-01-29 | OIG Case Number 10-0001318-IR | Allegations 1. Neglect of Duty 2. Dishonesty 3. Neglect of Duty | Findings 1. Sustained 2. Sustained 3. Not Sustained | Penalty Dismissal | Rating Sufficient |
|---|---|---|---|---|---|

## Facts of the Case
On January 29, 2010, an officer allegedly endangered himself, other staff, and inmates when he allowed inmates out of their cells while unescorted and unrestrained, resulting in the inmates assaulting one another. The officer and three other officers allegedly failed to activate emergency alarms when the inmates began fighting, and were dishonest when they allegedly conspired with one another to submit official reports containing false and inaccurate information to cover-up the misconduct.

## Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition
The hiring authority sustained all allegations against the first officer and served him with a notice of dismissal. The hiring authority sustained the allegation of dishonesty against the second officer and imposed a 10 percent salary reduction for 30 months. The hiring authority sustained the allegation of dishonesty against the third officer and imposed a 10 percent salary reduction for 24 months. The hiring authority sustained the allegation of dishonesty and neglect of duty against the fourth officer and served the officer with a notice of dismissal. The first officer appealed to the State Personnel Board, but later withdrew the appeal. The hiring authority and second officer entered into a settlement agreement whereby the penalty was reduced to a 10 percent salary reduction for 25 months. The third officer and the department entered into a settlement agreement, whereby the penalty was reduced to a 10 percent salary reduction for 18 months. The fourth officer did not file an appeal with the State Personnel Board. The OIG concurred with the settlement agreements.

## Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2010-3-28** | **10-0001320-IR** | 1. **Neglect of Duty**<br><br>2. **Neglect of Duty** | 1. **Sustained**<br><br>2. **Not Sustained** | **Salary Reduction** | **Sufficient** |

## Facts of the Case

On March 28, 2010, it was alleged that an associate warden, captain, sergeant, lieutenant, classification and parole representative, correctional counselor III, correctional counselor II, case records manager, case records supervisor, case records analyst, and two case records technicians failed to follow department policies which resulted in the early release of an inmate. It was further alleged that the lieutenant and sergeant failed to appropriately process an incident where the released inmate injured another inmate.

## Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition

The hiring authority determined there was insufficient evidence to sustain allegations against the associate warden, captain, lieutenant, sergeant, correctional counselor III, case records supervisor, one of the case records technicians, and the correctional counselor II. The hiring authority sustained allegations of neglect of duty against the classification and parole representative, case records manager, case records analyst, and one of the case records technicians. The classification and parole representative received a 5 percent salary reduction for 24 months. The department and classification and parole representative reached a settlement whereby the penalty was reduced to a 5 percent salary reduction for a period of 12 months. The case records manager received a five percent salary reduction for six months. The department and the case records manager reached a settlement whereby the penalty was reduced to five percent salary reduction for five months and the disciplinary action removed from her official personnel file after 18 months. The case records analyst received a five percent salary reduction for six months. The department and case records analyst reached a settlement agreement whereby the penalty was reduced to a five percent salary reduction for five months and the disciplinary action removed from his official personnel file after 18 months. The case records technician received a 5 percent salary reduction for 12 months. The case records technician did not file an appeal with the State Personnel Board. The OIG concurred with the settlement agreements.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2010-09-05** | **10-0002808-IR** | 1. **Neglect of Duty** <br><br> 2. **Neglect of Duty** | 1. **Not Sustained** <br><br> 2. **Sustained** | **Salary Reduction** | **Insufficient** |

## Facts of the Case

On September 5, 2010, an officer allegedly failed to notice that an inmate he counted during the inmate count was in fact deceased. It was further alleged that the officer and a second officer failed to provide CPR to the inmate when the inmate was found to be unresponsive.

## Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition

The hiring authority sustained an allegation of neglect of duty against the first officer for failing to notice that the inmate he counted as alive was in fact deceased. The allegation against both officers for failing to provide CPR to the inmate was not sustained. The first officer received a five percent salary reduction for six months. Ultimately, the officer and department entered into a settlement agreement reducing the penalty to a letter of reprimand. The OIG concurred with the hiring authority's initial findings and the settlement agreement.

## Disciplinary Assessment

Aside from failing to timely assess the deadline for taking disciplinary action and conducting an initial case consultation, the department attorney performed in accordance with department policies. The hiring authority did not conduct the disciplinary phase of this case with due diligence and almost lost the ability to take action as a result of an almost six-month delay in making findings in the case. Despite the lengthy delay, an appropriate decision was reached.

## Assessment Questions

- Did the hiring authority timely consult with the OIG and department attorney (if applicable), regarding the sufficiency of the investigation and the investigative findings?

  *The hiring authority received the completed report from the Office of Internal Affairs on February 10, 2011, but did not make investigatory findings until August 23, 2011, almost six months later.*

- Did the hiring authority timely consult with the OIG and the department attorney (if applicable) regarding disciplinary determinations prior to making a final decision?

  *The hiring authority received the completed report from the Office of Internal Affairs on February 10, 2011, but did not make disciplinary determinations until August 23, 2011, almost six months later.*

- Was the disciplinary phase conducted with due diligence by the department?

  *The disciplinary phase was not conducted with due diligence, as so much time elapsed from when the report was received by the hiring authority to when action was taken.*

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-09-07 | 10-0002831-IR | 1.  Use of Force | 1.  Exonerated | No Penalty Imposed | Sufficient |

### Facts of the Case
On September 7, 2010, a parole agent, while on duty, was attacked by a German shepherd dog while at a parolee's residence. The parole agent shot and killed the attacking dog with his department issued firearm.

### Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

### Disposition
The department's independent Deadly Force Review Board found no violation of department policy, and the hiring authority subsequently exonerated the officer. The OIG concurred in the determination by the board.

### Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-06-30 | 10-0002860-IR | 1.  Neglect of Duty<br>2.  Over-familiarity | 1.  Sustained<br>2.  Sustained | Salary Reduction | Sufficient |

### Facts of the Case
On June 30, 2010, a lieutenant allegedly divulged confidential information to an inmate pertaining to a housing unit search for narcotics.

### Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

### Disposition
The hiring authority sustained allegations that the lieutenant disclosed confidential information to an inmate. The lieutenant received a 5 percent salary reduction for 20 months. The lieutenant did not file an appeal with the State Personnel Board.

### Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2009-12-01** | **10-0002886-IR** | 1. **Dishonesty** <br><br> 2. **Neglect of Duty** <br><br> 3. **Discourteous Treatment** <br><br> 4. **Other Failure of Good Behavior** <br><br> 5. **Insubordination** | 1. **Sustained** <br><br> 2. **Sustained** <br><br> 3. **Sustained** <br><br> 4. **Sustained** <br><br> 5. **Sustained** | **Dismissal** | **Sufficient** |

## Facts of the Case

In December 2009, an officer allegedly sold an illegal assault weapon to a second officer. It was further alleged that the transaction was conducted without the use of a firearms dealer. In the same month, the second officer allegedly illegally sold the same assault weapon to a third person. On August 19, 2010, the person who purchased the illegal assault weapon from the second officer was the subject of a search warrant and was arrested for being in possession of the illegal assault weapon. The person provided information which led outside law enforcement officers to conduct a search of a third officer's home where they arrested the third officer after they discovered numerous illegal weapons and ammunition, including an automatic assault rifle, and five high capacity magazines. During a search of the third officer's car, a concealed, loaded pistol was discovered. It was further alleged that the third officer helped the second officer with the sale of the illegal assault weapon to the person and also sold other illegal assault weapons to other persons. It was further alleged that the third officer lied to the outside law enforcement officers and to the Office of Internal Affairs agent when questioned about where he acquired the illegal weapons and his participation in the illegal assault weapons transactions.

## Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition

The hiring authority sustained the allegations against all three officers. The first officer received a letter of reprimand, which he appealed to the State Personnel Board. The first officer withdrew his appeal prior to the hearing. The second and third officers were served with notices of dismissal. Following a Skelly hearing, the second officer entered into a settlement agreement with the department. The department agreed to modify the penalty to a 60 working-day suspension and the officer agreed to waive his right to appeal. The OIG concurred with the settlement. The third officer filed an appeal with the State Personnel Board. Prior to the disciplinary action becoming effective, the third officer submitted his resignation, which the department accepted. A letter indicating the officer resigned under adverse conditions was placed in his official personnel file.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2010-06-28** | **10-0002887-IR** | 1. **Neglect of Duty**<br><br>2. **Failure to Report**<br><br>3. **Failure to Report**<br><br>4. **Use of Force**<br><br>5. **Use of Force**<br><br>6. **Failure to Report** | 1. **Sustained**<br><br>2. **Sustained**<br><br>3. **No Finding**<br><br>4. **Not Sustained**<br><br>5. **No Finding**<br><br>6. **Not Sustained** | **Salary Reduction** | **Sufficient** |

## Facts of the Case

On June 28, 2010, a sergeant allegedly entered an inmate's cell, prior to handcuffing the inmate, and physically assaulted him. Two officers allegedly witnessed the incident and failed to intervene to stop the improper use of force. Neither the sergeant nor the two officers reported the use of force.

## Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition

The hiring authority sustained the allegation that the sergeant entered the inmate's cell prior to handcuffing the inmate in violation of department policy and imposed a ten percent salary reduction for nine months. The department subsequently entered into a settlement agreement and modified the penalty to a 5 percent salary reduction for 12 months. The hiring authority found the first officer failed to report that the sergeant violated department policy and imposed a ten percent salary reduction for three months. The officer also received disciplinary action for a separate incident and in that case the hiring authority imposed a 49 working-day suspension. The officer's two cases were consolidated and the department entered into a settlement agreement with a combined penalty of a 10 percent salary reduction for a period of 15 months, with which the OIG concurred. The hiring authority determined there was insufficient evidence to sustain the allegations against the second officer.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date 2010-08-24 | OIG Case Number 10-0003080-IR | Allegations | Findings | Penalty Suspension | Rating Sufficient |
|---|---|---|---|---|---|
| | | 1. Discourteous Treatment | 1. Sustained | | |
| | | 2. Other | 2. Sustained | | |
| | | 3. Other Failure of Good Behavior | 3. Sustained | | |

## Facts of the Case

On August 24, 2010, an officer, while off-duty, was stopped by outside law enforcement for a minor traffic violation. The traffic stop escalated into a physical confrontation between the officer and the outside law enforcement officer. During the course of the physical struggle, the outside law enforcement officer was injured. The off-duty officer was arrested and charged with injuring the officer, and eventually pled to a misdemeanor.

## Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition

The hiring authority sustained allegations against the officer for discourteous treatment of a member of the public, battery on a police officer, and other failure of good behavior. The hiring authority imposed a 45 working-day suspension. The officer did not file an appeal with the State Personnel Board.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date 2010-10-15 | OIG Case Number 10-0003198-IR | Allegations | Findings | Penalty No Penalty Imposed | Rating Sufficient |
|---|---|---|---|---|---|
| | | 1. Use of Force | 1. Exonerated | | |

## Facts of the Case

On October 15, 2010, a discharged parolee attempted to disrupt a class at a parole office. A parole agent and her supervisor contacted the subject and asked him to leave. The subject left the premises but returned later when the class was on a break and began to approach the students who were outside. The subject was armed with a knife and made threatening comments. The parole agent and her supervisor verbally told the subject to stop. The parole supervisor sprayed the subject with pepper spray but it appeared to have no effect. The parole supervisor then attempted to physically stop the subject when the subject punched the parole supervisor in the head. The civilian class instructor then tackled the subject, who began resisting and fighting the instructor and the parole supervisor. The parole agent continually gave verbal instructions to the subject to stop and get down. The subject then pulled a knife and began swinging it at close range at the instructor and parole supervisor who were attempting to subdue him. The parole agent ordered him to drop the knife. When that order was ignored and it appeared the parole supervisor and instructor were at risk, the parole agent fired one round striking the subject in the upper thigh. The agent then kicked the knife away and local law enforcement arrived and secured the scene. The subject was given immediate medical attention and taken to the hospital, in custody.

## Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition

The department's independent Deadly Force Review Board found no violation of department policy, and the hiring authority subsequently exonerated the agent. The OIG concurred in the determination by the board.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

## Recommendations

The OIG recommended the department train Division of Juvenile Justice parole supervisors on notification procedures for the OIG regarding critical incidents, including the use of deadly force.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2010-08-31** | **10-0003403-IR** | 1. **Other Failure of Good Behavior**<br><br>2. **Misuse of Authority**<br><br>3. **Failure to Report** | 1. **Not Sustained**<br><br>2. **Not Sustained**<br><br>3. **Sustained** | **No Penalty Imposed** | **Insufficient** |

## Facts of the Case

On August 31, 2010, an officer allegedly received cash bribes from inmates in exchange for removing derogatory information from their inmate files that were being considered as part of the parole eligibility review process.

## Investigative Assessment

The Office of Internal Affairs conducted a thorough investigation; however, the completed report was delivered to the hiring authority with less than 35 days remaining in which to take action. The hiring authority and department attorney performed in accordance with department policies.

## Assessment Questions

- Was the investigation, or subject interview, completed at least 35 days before the deadline to take disciplinary action?

  *The investigative report was completed 33 days before the deadline to take disciplinary action.*

## Disposition

The hiring authority determined there was insufficient evidence to sustain allegations that the officer accepted bribes from inmates. However, the hiring authority found sufficient evidence to sustain an allegation that the officer failed to report an attempted bribe. The hiring authority did not impose formal discipline, but instead determined a letter of instruction and on-the-job training was appropriate. Prior to issuing the letter of instruction and on-the-job training, the department separated the officer for being absent without leave (AWOL).

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2010-09-24** | **10-0003650-IR** | 1. **Neglect of Duty** | 1. **Sustained** | **Counseling** | **Sufficient** |

## Facts of the Case

On September 24, 2010, a correctional counselor allegedly improperly authorized an inmate for release onto parole. The mistake was not noticed by her supervisor, who had reviewed the pending release authorization. As a result, an inmate who was ineligible for parole was improperly released. Once the mistake was discovered, the inmate was returned to custody without incident.

## Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition

The hiring authority sustained allegations of neglect of duty for both counselors. Rather than impose discipline, the hiring authority instead issued letters of instruction to both counselors.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date 2010-10-16 | OIG Case Number 10-0003766-IR | Allegations 1. Neglect of Duty | Findings 1. Sustained | Penalty Salary Reduction | Rating Sufficient |
|---|---|---|---|---|---|

## Facts of the Case

On October 16, 2010, an officer allegedly dismantled and discarded a mobile phone confiscated from an inmate, instead of logging it as evidence of misconduct by the inmate. Further, the officer allegedly failed to generate a rules violation report for the inmate.

## Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition

The hiring authority sustained the allegations against the officer and imposed a five percent salary reduction for six months. The officer did not file an appeal with the State Personnel Board.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date 2010-09-05 | OIG Case Number 10-0003767-IR | Allegations 1. Use of Force 2. Failure to Report | Findings 1. Not Sustained 2. Not Sustained | Penalty No Penalty Imposed | Rating Insufficient |
|---|---|---|---|---|---|

## Facts of the Case

On September 5, 2010, an inmate urinated on a podium in a dayroom. In response, an officer allegedly used unnecessary force by physically taking the inmate to the ground. Further, the officer allegedly submitted a false report regarding his actions during the incident.

## Investigative Assessment

The hiring authority delayed requesting an investigation into this matter in excess of 45 days. Additionally, the Office of Internal Affairs delayed opening an investigation into this matter in excess of 30 days. The Office of Internal Affairs conducted a thorough investigation. However, the completed report was delivered to the hiring authority with less than 35 days remaining in which to take action. The department attorney performed in accordance with department policies.

## Assessment Questions

- Was the matter referred to the Office of Internal Affairs as soon as reasonably practical, within 45 calendar days of the date of discovery?

  *The alleged misconduct was discovered on September 5, 2010, and referred to the Office of Internal Affairs on October 29, 2010, in excess of 45 days.*

- Did OIA Central Intake make a determination regarding the case within 30 calendar days?

  *OIA Central Intake received the matter on November 1, 2010, but did not take action until December 15, 2010, in excess of 30 days.*

- Was the investigation, or subject interview, completed at least 35 days before the deadline to take disciplinary action?

  *The completed report was not delivered to the hiring authority until only 26 days were left in which to take action.*

## Disposition

The hiring authority did not sustain the allegations against the officer.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-07-15 | 10-0003782-IR | 1. **Neglect of Duty**<br><br>2. **Dishonesty** | 1. **Sustained**<br><br>2. **Not Sustained** | **Salary Reduction** | **Insufficient** |

## Facts of the Case

On July 15, 2010, an officer allegedly reported that a witness was interviewed during an inquiry of an inmate's complaint. It was alleged that the officer made a false report, when it was discovered no witness was interviewed.

## Investigative Assessment

Other than the lengthy delay at the start of this matter, the hiring authority performed in accordance with department policy. The investigative report was thorough; however, the report was submitted to the hiring authority less than 35 days before the deadline for taking action. The department attorney performed in accordance with department policy.

## Assessment Questions

- Was the matter referred to the Office of Internal Affairs as soon as reasonably practical, within 45 calendar days of the date of discovery?

  *The hiring authority discovered the incident on July 15, 2010, but did not refer it for investigation to OIA Central Intake until November 1, 2010, more that 45 days later.*

- Did OIA Central Intake make a determination regarding the case within 30 calendar days?

  *OIA Central Intake received the request for investigation on November 4, 2010, but did not take action until December 8, 2010, more than 30 days later.*

- Was the Office of Internal Affairs investigation, or subject only interview, conducted with due diligence?

  *The investigation was not conducted with due diligence, as the final investigative report was not completed and delivered to the hiring authority until seven days prior to the deadline for the department to take action.*

## Disposition

The hiring authority sustained an allegation of neglect of duty against the officer, but did not sustain an allegation of dishonesty. A penalty of a five percent salary reduction for three months was imposed. Following a Skelly hearing, the hiring authority and the officer entered into a settlement agreement reducing the penalty in this matter to a letter of reprimand. The OIG concurred with the terms of the settlement agreement.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date 2010-09-10 | OIG Case Number 11-0000033-IR | Allegations 1. Use of Force 2. Failure to Report 3. Discourteous Treatment | Findings 1. Not Sustained 2. Not Sustained 3. Not Sustained | Penalty No Penalty Imposed | Rating Insufficient |
|---|---|---|---|---|---|

## Facts of the Case

On September 10, 2010, it was alleged that two officers used unnecessary force on an inmate when they forcibly took him to ground. It was further alleged that one officer punched the inmate while he was on the ground, which the other officer witnessed and failed to report.

## Investigative Assessment

The Office of Internal Affairs did not review the matter within 30 days; however, the special agent assigned to this case conducted a thorough investigation. The investigative report was submitted to the hiring authority less than 35 days before the deadline for taking action. This late completion of the report and its delivery did not affect the outcome of the investigation in this case. The department attorney and the hiring authority performed in accordance with department policy.

## Assessment Questions

- Did OIA Central Intake make a determination regarding the case within 30 calendar days?

  *OIA Central Intake received the request for investigation on November 3, 2010, but did not take action until December 8, 2010, more than 30 days later.*

- Was the Office of Internal Affairs investigation, or subject only interview, conducted with due diligence?

  *The investigation was not conducted with due diligence, as the investigative report was not completed and delivered to the hiring authority until 11 days prior to the deadline for the department to take action.*

- Was the investigation, or subject interview, completed at least 35 days before the deadline to take disciplinary action?

  *The report was not completed and delivered until 11 days before the deadline to take action.*

## Disposition

The hiring authority did not sustain the allegations against either officer.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date 2010-07-27 | OIG Case Number 11-0000069-IR | Allegations 1. Neglect of Duty | Findings 1. Not Sustained | Penalty No Penalty Imposed | Rating Sufficient |
|---|---|---|---|---|---|

## Facts of the Case
On July 27, 2010, two officers allegedly failed to provide emergency medical care to an inmate in medical distress who was in their custody, and then allegedly filed inaccurate reports regarding the incident.

## Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition
The hiring authority determined there was insufficient evidence to sustain the allegations. Although no allegations were sustained, both officers received corrective training in first aid response and scene control.

## Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date 2010-06-23 | OIG Case Number 11-0000241-IR | Allegations 1. Dishonesty | Findings 1. Not Sustained | Penalty No Penalty Imposed | Rating Insufficient |
|---|---|---|---|---|---|

## Facts of the Case
On June 23, 2010, an inmate alleged that an officer planted an inmate manufactured type weapon in his cell. The inmate alleged that the officer then conducted a cell search, located the weapon, and issued a rules violation report. The inmate alleged that the officer engaged in these acts as retaliation because the inmate had filed complaints against the officer in the past.

## Investigative Assessment
There was a four month delay by the hiring authority in referring this matter to the Office of Internal Affairs. The Office of Internal Affairs conducted a thorough investigation, but the investigation was not conducted with due diligence, as the final report was submitted to the hiring authority less than 35 days before the deadline for taking action. Other than the delays, the hiring authority and the Office of Internal Affairs performed in accordance with department policy.

## Assessment Questions

- Was the matter referred to the Office of Internal Affairs as soon as reasonably practical, within 45 calendar days of the date of discovery?

  *The department learned of the allegations on August 16, 2010, but the hiring authority did not refer the matter to OIA Central Intake until December 6, 2010, more than 45 days later.*

- Was the Office of Internal Affairs investigation, or subject only interview, conducted with due diligence?

  *The investigation was not conducted with due diligence, as the report was not completed at least 35 days prior to the deadline in which to take action.*

- Was the investigation, or subject interview, completed at least 35 days before the deadline to take disciplinary action?

  *The report was completed and submitted to the hiring authority with only 33 days before the deadline to take disciplinary action.*

## Disposition
The hiring authority did not sustain any allegations against the officer.

## Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date 2010-07-07 | OIG Case Number 11-0000245-IR | Allegations | Findings | Penalty Salary Reduction | Rating Insufficient |
|---|---|---|---|---|---|
| | | 1. **Neglect of Duty** | 1. **Sustained** | | |
| | | 2. **Insubordination** | 2. **Sustained** | | |
| | | 3. **Other Failure of Good Behavior** | 3. **Sustained** | | |

## Facts of the Case

On July 7, 2010, an officer working in a control booth allegedly allowed an inmate to exit his cell without an escort, in violation of an institutional policy that the inmate be escorted. It was further alleged that a second officer violated institutional policy when he released the same inmate to the medical clinic without being escorted. While en route to the clinic the inmate was attacked by two other inmates. Responding officers used pepper spray and batons to stop the assault. As a result of the assault, a riot started in the exercise yard.

## Investigative Assessment

The hiring authority referred the matter to the Office of Internal Affairs over five months following the discovery of the possible violations. The Office of Internal Affairs determined sufficient information existed for the hiring authority to take action without an investigation and returned the matter. Upon consultation with the department attorney and the OIG, the hiring authority again referred the matter to OIA Central Intake requesting, at minimum, interviews be conducted with the officers who allegedly engaged in misconduct. The limited investigation was timely conducted. The department attorney performed in accordance with department policies.

## Assessment Questions

- Was the matter referred to the Office of Internal Affairs as soon as reasonably practical, within 45 calendar days of the date of discovery?

  *The discovery of the alleged misconduct occurred on July 14, 2010. The matter was referred to the Office of Internal Affairs on December 20, 2010, more than 45 calendar days after the discovery of the alleged misconduct, in violation of department policy.*

- Did OIA Central Intake make an appropriate initial determination regarding the case?

  *OIA Central Intake declined to conduct an investigation, including a limited investigation consisting of the taking of statements from the officers.*

## Disposition

The hiring authority sustained the allegations against both officers for neglect of duty for failing to secure an escort for the inmate and imposed a five percent salary reduction for two months on each officer. The officers filed an appeal with the State Personnel Board. Following a hearing for the first officer, the State Personnel Board sustained the action and the penalty against the control booth officer. The department and the second officer entered into a settlement agreement wherein the department agreed to remove the action from the officer's file after 18 months, instead of the customary three years. The second officer agreed to withdraw his appeal. The OIG found the settlement agreement between the department and the second officer to be reasonable.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date 2010-02-02 | OIG Case Number 11-0000305-IR | Allegations 1. Sexual Misconduct 2. Other Failure of Good Behavior 3. Discourteous Treatment | Findings 1. Not Sustained 2. Sustained 3. Sustained | Penalty Salary Reduction | Rating Insufficient |
|---|---|---|---|---|---|

## Facts of the Case

On February 2, 2010, the Office of Internal Affairs was notified by the district attorney's office that it had filed criminal charges against an officer. It was alleged that the officer had engaged in sexual misconduct against his adopted daughter from approximately 2006 until October 2009. The officer pled no contest to a misdemeanor charge of child endangerment.

## Investigative Assessment

The Office of Internal Affairs conducted a thorough and timely investigation. The hiring authority learned of the allegations on February 2, 2010, but failed to submit a request for an investigation. On January 21, 2011, the Office of Internal Affairs submitted its own request. Despite the original delay, due to the efforts of the assigned Office of Internal Affairs agent, the investigation was not negatively impacted. There was no department attorney assigned to the investigation.

## Assessment Questions

- Was the matter referred to the Office of Internal Affairs as soon as reasonably practical, within 45 calendar days of the date of discovery?

  *The matter was discovered on February 2, 2010, and on January 21, 2011, the Office of Internal Affairs submitted a request for investigation because the hiring authority never submitted a request for investigation.*

## Disposition

The hiring authority sustained allegations against the officer for failure of good behavior and discourteous treatment of a member of the public. An allegation of sexual misconduct was not sustained. The hiring authority imposed a 10 percent salary reduction for 24 months. Following a Skelly hearing, the officer and the department entered into a settlement agreement reducing the penalty to a 5 percent salary reduction for 36 months. The officer agreed not to appeal the matter to the State Personnel Board. The OIG concurred in the settlement agreement reached between the department and the officer.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date 2010-12-01 | OIG Case Number 11-0000378-IR | Allegations 1. Use of Force 2. Dishonesty | Findings 1. Not Sustained 2. Not Sustained | Penalty No Penalty Imposed | Rating Insufficient |
|---|---|---|---|---|---|

## Facts of the Case

On December 1, 2010, an officer allegedly used excessive force on an inmate by physically forcing him onto a bench. Further, the officer allegedly provided false information in an official report when he described the incident.

## Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition

The hiring authority did not sustain any of the allegations against the officer.

## Disciplinary Assessment

The hiring authority delayed in making investigatory findings. The three month delay resulted in the investigatory findings conference to occur only two days prior to the deadline for taking action.

## Assessment Questions

- Did the hiring authority timely consult with the OIG and department attorney (if applicable), regarding the sufficiency of the investigation and the investigative findings?

  *The Office of Internal Affairs completed its investigation and referred the matter to the hiring authority on August 26, 2011. The hiring authority conducted a review of the investigation and made investigatory findings on November 28, 2011, more than 14 calendar days after receipt of the case.*

- Was the disciplinary phase conducted with due diligence by the department?

  *The hiring authority had over three months to make investigatory findings from receipt of the report on August 26, 2011. The findings were made on November 28, 2011, just two days before the deadline in which to take action.*

| Incident Date 2010-11-29 | OIG Case Number 11-0000381-IR | Allegations 1. Over-familiarity | Findings 1. Sustained | Penalty No Penalty Imposed | Rating Insufficient |
|---|---|---|---|---|---|

## Facts of the Case

On November 29, 2010, it was alleged that an officer was engaged in a dating relationship with a parolee who was a member of a criminal street gang.

## Investigative Assessment

The department had several delays in the handling of this matter. The Office of Internal Affairs delayed in its initial review of this case. Also, the Office of Internal Affairs report was submitted to the hiring authority less than 35 days before the deadline for taking action. Additionally the special agent assigned to the case failed to provide a draft report for review in a timely manner to both the department attorney and the OIG. These failures, however, had no effect upon the outcome of the investigation. The department attorney and the hiring authority performed in accordance with department policies and an appropriate decision was reached.

## Assessment Questions

- Did OIA Central Intake make a determination regarding the case within 30 calendar days?

  *OIA Central Intake received the request for investigation on December 22, 2010, but did not take action until January 26, 2011, more than 30 days later.*

- Within 21 calendar days, did the department attorney make an entry into CMS accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline at the time?

  *The department attorney was assigned to the case on February 2, 2011, but did not make entries into the department's case management system confirming the date of the reported incident, the date of discovery, or the deadline for taking disciplinary action until February 24, 2011, more than 21 days later.*

- Upon completion of the investigation, was a copy of the investigative report timely forwarded to the OIG to allow for feedback before it was forwarded to the hiring authority or prosecuting agency?

  *The special agent failed to forward the draft report to the OIG prior to forwarding of it to the hiring authority.*

- Upon completion of the investigation, was a copy of the investigative report timely forwarded to the department attorney to allow for feedback before it was forwarded to the hiring authority or prosecuting agency?

  *The special agent failed to forward a copy of the draft report to the department attorney in time to allow for feedback prior to its delivery to the hiring authority.*

- Within 21 calendar days following receipt of the investigative report, did the department attorney review the report and provide appropriate substantive feedback addressing the thoroughness and clarity of the report?

  *The department attorney did not provide feedback addressing the thoroughness of the report, as it had already been delivered to the hiring authority.*

- Did the department provide written confirmation summarizing all critical discussions about the investigative report to the special agent with a copy to the OIG?

  *The department attorney did not provide written confirmation summarizing discussions about the investigative report to the special agent or the OIG, as the special agent failed to provide a draft report to the department attorney prior to the report being submitted to the hiring authority.*

- Was the Office of Internal Affairs investigation, or subject only interview, conducted with due diligence?

  *The investigative report was not completed and delivered to the hiring authority until 31 days prior to the deadline for the department to take action.*

- Was the investigation, or subject interview, completed at least 35 days before the deadline to take disciplinary action?

  *The report was not completed and delivered until just 31 days before the deadline to take action.*

## Disposition

The hiring authority sustained the allegation against the officer that she was involved in an overly familiar relationship with the parolee. However, no penalty was imposed, as the officer resigned during the course of the investigation.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date 2010-11-11 | OIG Case Number 11-0000382-IR | Allegations 1. Contraband 2. Other Failure of Good Behavior | Findings 1. Sustained 2. Not Sustained | Penalty Salary Reduction | Rating Sufficient |
|---|---|---|---|---|---|

## Facts of the Case

On November 11, 2010, an officer allegedly grabbed his girlfriend in a bear hug, walked her outside his residence and threw her on the ground, causing bruises to her arms. It was further alleged that the officer brought his personal mobile phone into the institution.

## Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition

The hiring authority did not sustain the allegations of domestic violence against the officer. The allegation of bringing contraband into the institution was sustained and the officer received a ten percent salary reduction for three months. The officer did not file an appeal with the State Personnel Board.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2011-01-11** | **11-0000461-IR** | 1.    **Use of Force** | 1.    **Exonerated** | **No Penalty Imposed** | **Insufficient** |

## Facts of the Case

On January 11, 2011, three parole agents responded to a residence to apprehend a parolee-at-large. One parole agent knocked on the front door of the residence and when the door opened, he saw the parolee inside. The agent ordered the parolee to exit the residence through the front door. A second agent responded to the back yard when he believed the parolee was attempting to escape through the back door. The parole agent entered the back yard and as the door opened he identified himself as a parole agent to an unidentified female. The female pushed the agent out of the way, while releasing a large pit bull from the residence. The dog bit the agent's arm, leg, and foot while the agent attempted to defend himself with physical force after losing possession of his pepper spray during the attack. The dog lunged toward the agent's face causing him to fear for his life, so the agent shot one round into the dog's abdomen stopping the attack. Meanwhile, the parolee voluntarily exited the residence and was taken into custody.

## Investigative Assessment

The OIG was not timely notified initially by the department. The Office of Internal Affairs did not initially treat the incident as a deadly force investigation and as a result was not timely in conducting witness interviews, and never conducted a subject interview.

## Assessment Questions

- Did the Office of Internal Affairs properly determine whether the case should be opened as a Deadly Force Investigation Team investigation, rather than a regular administrative or criminal investigation?

  *The case did not receive a full deadly force investigation response despite the urging of the OIG.*

- Did the criminal Deadly Force Investigation Team special agent conduct all interviews within 72 hours as required by the DOM?

  *While interviews on most of the witnesses ultimately occurred, some were not completed due to delays and some were weeks after the incident.*

- Was the Office of Internal Affairs investigation, or subject only interview, conducted with due diligence?

  *Due to the delays, not all of the witnesses could be located and interviewed.*

- Was the investigation thorough and appropriately conducted?

  *The Office of Internal Affairs did not initially treat this as a deadly force investigation; therefore, the special agent did not timely respond to the scene and critical interviews were not conducted in a timely manner.*

- Upon arrival at the scene, did the Deadly Force Investigation Team special agent adequately perform the required preliminary tasks?

  *The Office of Internal Affairs did not initially treat this as a deadly force investigation; therefore, a Deadly Force Investigation Team special agent did not timely respond to the scene and perform required tasks.*

## Disposition

The department's independent Deadly Force Review Board found no violation of department policy, and the hiring authority subsequently exonerated the officer.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

## Recommendations

The OIG recommended the department treat all incidents involving the discharge of a firearm, while on duty, including the discharge of a firearm at a dog, as a deadly force investigation from outset. The OIG emphasized this approach is especially important when the discharge of a firearm occurs in a residential area where civilians are present.

| Incident Date **2010-09-29** | OIG Case Number **11-0000462-IR** | Allegations | Findings | Penalty **Salary Reduction** | Rating **Insufficient** |
|---|---|---|---|---|---|
| | | 1. **Neglect of Duty** | 1. **Sustained** | | |
| | | 2. **Neglect of Duty** | 2. **Not Sustained** | | |
| | | 3. **Insubordination** | 3. **Sustained** | | |
| | | 4. **Other Failure of Good Behavior** | 4. **Sustained** | | |

## Facts of the Case

On September 29, 2010, two officers allegedly failed to search inmates prior to placing them in holding cells. It was also alleged that the officers did not properly supervise two inmates who were allowed to come out of the holding cells and attacked another inmate with an inmate manufactured weapon. The inmates refused the responding officers' orders to stop the attack and an officer used his baton to strike the stabbing inmate in the upper back area and the head, causing a cut to the inmate's head.

## Investigative Assessment

The hiring authority referred the matter to the Office of Internal Affairs for investigation nearly two months after the date of the incident and the date the hiring authority discovered a potential violation of policy. The Office of Internal Affairs declined to investigate and determined sufficient information existed for the hiring authority to take action without an investigation and returned the matter. Following consultation with the department attorney and the OIG, the hiring authority again referred the matter to OIA Central Intake requesting, at minimum, interviews be conducted with the officers who allegedly engaged in misconduct. That request was approved on March 30, 2011, over five months after the discovery of the alleged misconduct. The Office of Internal Affairs conducted the two interviews, which were timely conducted, but did not conduct interviews of any other witnesses. The department attorney performed in accordance with department policy.

## Assessment Questions

- Was the matter referred to the Office of Internal Affairs as soon as reasonably practical, within 45 calendar days of the date of discovery?

  *The discovery of the alleged misconduct occurred on October 20, 2010. The matter was referred to the Office of Internal Affairs on December 23, 2010, more than 45 calendar days after the discovery of the alleged misconduct.*

- Did OIA Central Intake make a determination regarding the case within 30 calendar days?

  *OIA Central Intake received the referral on December 28, 2010. OIA Central Intake made a determination regarding the case on February 9, 2011, more than 30 days following receipt of the request.*

- Did OIA Central Intake make an appropriate initial determination regarding the case?

  *OIA Central Intake declined to conduct an investigation, including a limited investigation consisting of the taking of the statements of the officers.*

## Disposition

The hiring authority sustained the allegations of neglect of duty and imposed a 5 percent salary reduction for 12 months on both officers. One officer filed an appeal with the State Personnel Board, while the second officer did not. Prior to the State Personnel Board scheduling a hearing in the matter, the officer withdrew his appeal.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date 2010-06-22 | OIG Case Number 11-0000463-IR | Allegations 1. Neglect of Duty | Findings 1. Not Sustained | Penalty No Penalty Imposed | Rating Insufficient |
|---|---|---|---|---|---|

## Facts of the Case

On June 22, 2010, a lieutenant allegedly approved the transfer of an inmate to be housed in another building without first reviewing the inmate's file for enemies. Two weeks after the move, the inmate became engaged in a physical altercation with another inmate that was listed as his enemy.

## Investigative Assessment

The hiring authority failed to refer the matter to the Office of Internal Affairs for nearly three months. Despite the request for an investigation, the Office of Internal Affairs declined to investigate and referred the matter to the hiring authority for disposition without an investigation. Upon further discussion, the hiring authority resubmitted the matter to the Office of Internal Affairs for an interview to be conducted of the lieutenant. The Office of Internal Affairs approved a limited investigation consisting of an interview with the lieutenant, which was timely conducted.

## Assessment Questions

- Was the matter referred to the Office of Internal Affairs as soon as reasonably practical, within 45 calendar days of the date of discovery?

  *The discovery of the alleged misconduct occurred on September 30, 2010. The matter was referred to the Office of Internal Affairs on December 20, 2010, more than 45 calendar days after the discovery of the alleged misconduct.*

- Did OIA Central Intake make a determination regarding the case within 30 calendar days?

  *OIA Central Intake received the referral on December 22, 2010. OIA Central Intake initially declined to open an investigation and returned the matter to the hiring authority for disposition without an investigation. The hiring authority re-submitted the matter to OIA Central Intake requesting at minimum an interview with the lieutenant be conducted. On April 29, 2011, four months after receiving the initial request for investigation, the Office of Internal Affairs approved a limited investigation consisting of an interview with the lieutenant.*

- Did OIA Central Intake make an appropriate initial determination regarding the case?

  *OIA Central Intake initially declined to open an investigation and returned the matter to the hiring authority for disposition without an investigation. The hiring authority re-submitted the matter to OIA Central Intake requesting at minimum an interview with the lieutenant be conducted, which OIA Central Intake approved.*

- Would the appropriate initial determination or reconsideration determination have been made by OIA Central Intake and/or Office of Internal Affairs Chief without OIG intervention?

  *OIA Central Intake initially declined to open an investigation and returned the matter to the hiring authority for disposition without an investigation. During the initial penalty discussions with the OIG, it became clear that an appropriate penalty could not be selected without further investigation. As a result, the hiring authority re-submitted the matter to OIA Central Intake requesting at minimum an interview with the lieutenant be conducted, which OIA Central Intake approved.*

- Did the department provide written confirmation summarizing all critical discussions about the investigative report to the special agent with a copy to the OIG?

  *The department did not provide written confirmation summarizing all critical discussions about the investigative report to the special agent with a copy to the OIG.*

## Disposition

The hiring authority determined there was insufficient evidence to sustain the allegations.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2010-12-20** | **11-0000510-IR** | 1. **Use of Force**<br><br>2. **Failure to Report**<br><br>3. **Discourteous Treatment** | 1. **Not Sustained**<br><br>2. **Not Sustained**<br><br>3. **Not Sustained** | **No Penalty Imposed** | **Insufficient** |

## Facts of the Case

On December 20, 2010, an officer allegedly conducted an unclothed body search of an inmate in an unprofessional manner and then ordered the inmate to enter his housing unit and walk across the day room naked. The inmate returned to his cell and got dressed. The inmate then allegedly requested the forms to file a complaint regarding the conduct of the officer. It was alleged that the officer and a second officer refused to provide a complaint form to the inmate. The inmate refused to leave the day room until he received his complaint form or he spoke to a sergeant. It was further alleged that a sergeant used unnecessary force on the inmate by grabbing him by the collar, forcefully escorting him outside and slamming him into the fence. It was alleged that the sergeant, the first, second, and a third officer witnessed the use of force and failed to report it.

## Investigative Assessment

The Office of Internal Affairs delayed the investigation into this matter nearly six months. In all other critical aspects, the Office of Internal Affairs performed in accordance with the department's policies and procedures. The department attorney and the hiring authority performed in accordance with department policy.

## Assessment Questions

- Was the Office of Internal Affairs investigation, or subject only interview, conducted with due diligence?

  *The Office of Internal Affairs assigned the investigation of this matter to a special agent on March 10, 2011. On May 12, 2011, the Office of Internal Affairs reassigned the investigation of this matter to another special agent. The interviews in this case were started on September 7, 2011, nearly six months after the initial assignment, without substantive investigation being conducted.*

## Disposition

The hiring authority determined there was insufficient evidence to sustain the allegations.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2010-10-16** | **11-0000568-IR** | 1. **Discourteous Treatment**<br><br>2. **Neglect of Duty**<br><br>3. **Neglect of Duty** | 1. **Not Sustained**<br><br>2. **Not Sustained**<br><br>3. **Sustained** | **No Penalty Imposed** | **Insufficient** |

## Facts of the Case

On October 16, 2010, it was alleged that an officer made a discourteous comment to an inmate when the inmate threatened to kill himself. It was also alleged that a second and third officer failed to properly complete reports relating to their observations of the inmate prior to his death. Further, two sergeants were alleged to have failed to properly supervise the officers' completion of the reports regarding the deceased inmate.

## Investigative Assessment

OIA Central Intake did not take action on this matter for almost three months. The investigative reports were thorough, although the report was submitted to the hiring authority less than 35 days before the deadline for taking action. The department attorney performed in accordance with department policies.

## Assessment Questions

- Did OIA Central Intake make a determination regarding the case within 30 calendar days?

  *OIA Central Intake received the request for investigation on November 29, 2010, but did not take action until February 23, 2011, more than 30 days later.*

- Was the investigation, or subject interview, completed at least 35 days before the deadline to take disciplinary action?

  *The reports were not completed and submitted to the hiring authority until 19 days prior to the deadline for the department to take action.*

## Disposition

The hiring authority did not sustain the allegations against the first or second officer. The hiring authority sustained an allegation of neglect of duty against the third officer. The hiring authority did not sustain an allegation of neglect of duty against the first sergeant, but did as to the second sergeant. The hiring authority did not impose any penalty against the third officer or the second sergeant, instead ordered corrective training.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-06-01 | 11-0000747-IR | 1. Dishonesty<br><br>2. Neglect of Duty<br><br>3. Other Failure of Good Behavior<br><br>4. Misuse of State Equipment or Property<br><br>5. Other Criminal Act | 1. Sustained<br><br>2. Sustained<br><br>3. Sustained<br><br>4. Sustained<br><br>5. Sustained | Dismissal | Insufficient |

## Facts of the Case

Between June 2010 and November 5, 2010, a pharmacist allegedly took possession of inmate prescribed narcotics and failed to dispose of them through the appropriate means. It was alleged that the pharmacist misappropriated the narcotics for her personal use.

## Investigative Assessment

The Office of Internal Affairs conducted a timely and thorough investigation. The department attorney did not perform in accordance with department policy during the investigation. The department attorney failed to consult with the special agent and the OIG regarding all aspects of this investigation. Although the department attorney was notified that the special agent was going to interview the pharmacist, the attorney declined to participate in the interview or provide legal consultation. The department attorney also failed to review the investigative report and provide feedback to the special agent and the OIG.

## Assessment Questions

- Within 21 calendar days, did the department attorney make an entry into CMS accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

  *The department attorney did not make an entry into CMS accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time.*

- No later than 21 calendar days following assignment of the case, did the department attorney contact the assigned special agent and the OIG monitor to discuss the elements of a thorough investigation of the alleged misconduct?

  *The department attorney did not contact the assigned special agent and the OIG monitor to discuss the elements of a thorough investigation of the alleged misconduct.*

- Did the department attorney attend investigative interviews for key witnesses to assess witness demeanor and credibility?

  *The department attorney failed to attend the investigative interview of the pharmacist to assess her demeanor and credibility.*

- Within 21 calendar days following receipt of the investigative report, did the department attorney review the report and provide appropriate substantive feedback addressing the thoroughness and clarity of the report?

  *There was no information or written confirmation from the department attorney that the department attorney reviewed the report and provided appropriate substantive feedback addressing the thoroughness and clarity of the report.*

- Did the department provide written confirmation summarizing all critical discussions about the investigative report to the special agent with a copy to the OIG?

  *The department did not provide written confirmation summarizing all critical discussions about the investigative report to the special agent with a copy to the OIG.*

- Did the department attorney cooperate with and provide continual real-time consultation with the OIG throughout the investigative phase?

  *The department attorney did not contact the OIG monitor to discuss the elements of a thorough investigation of the alleged misconduct prior to and during the investigation; did not discuss with the OIG a modification of the dates of the incidents as the investigation progressed; and did not provide a summary of the critical discussions, if any, about the investigative report to the special agent with a copy to the OIG.*

## Disposition

The hiring authority sustained the allegations and served the pharmacist with a notice of dismissal. The department and the pharmacist then entered into a settlement agreement, the terms of which permitted the pharmacist to resign in lieu of dismissal, and the pharmacist agreed to not appeal the dismissal to the State Personnel Board and to not seek future employment with the department. The OIG concurred with the settlement agreement.

## Disciplinary Assessment

The department failed to conduct the investigative findings and disciplinary determinations in a timely manner. The department forms documenting the findings and the penalty were provided late to the OIG but this did not adversely impact the case. The department attorney was not diligent in processing the disciplinary matter. Although a department attorney was assigned to this case, the disciplinary officer negotiated and drafted the settlement agreement for the department. A draft of the settlement agreement was timely provided to the OIG and was appropriately drafted. The hiring authority performed in accordance with department policies in all critical aspects other than those mentioned above. The department attorney did not perform in accordance with department policies.

## Assessment Questions

- Did the hiring authority timely consult with the OIG and department attorney (if applicable), regarding the sufficiency of the investigation and the investigative findings?

  *The Office of Internal Affairs submitted the final report to the hiring authority on April 20, 2011. The hiring authority conducted a review of the investigation and made investigative findings on June 9, 2011, more than 14 calendar days after receipt of the case.*

- Was the CDCR Form 402 documenting the findings properly completed?

  *The CDCR form documenting the findings was not properly completed as it was not provided to the OIG prior to serving the disciplinary action on the pharmacist. The disciplinary action was served on July 28, 2011, and the form documenting the findings was provided to the OIG on July 29, 2011.*

- Did the hiring authority timely consult with the OIG and the department attorney (if applicable) regarding disciplinary determinations prior to making a final decision?

  *The Office of Internal Affairs submitted the final report to the hiring authority on April 20, 2011. The hiring authority made disciplinary determinations on June 9, 2011, more than 14 calendar days after receipt of the case.*

- Was the CDCR Form 403 documenting the penalty properly completed?

  *The CDCR form documenting the penalty was not properly completed, as it was not provided to the OIG prior to serving the disciplinary action on the pharmacist. The disciplinary action was served on July 28, 2011, and the form documenting the penalty was provided to the OIG on July 29, 2011.*

- Was the disciplinary action provided to the OIG for review appropriately drafted as described in the DOM?

  *The hiring authority made a final discipline decision for the pharmacist on June 9, 2011. The department attorney drafted the disciplinary action and provided a copy of the draft to the OIG for review on July 26, 2011, more than 30 days after the decision to impose discipline.*

- Was the disciplinary action served on the employee(s) appropriately drafted as described in the DOM?

  *The hiring authority made a final discipline decision for the pharmacist on June 9, 2011. The department attorney drafted the disciplinary action on July 26, 2011, and it was served on July 28, 2011, more than 30 days after the decision to impose discipline.*

- Was the disciplinary phase conducted with due diligence by the department?

  *The department failed to conduct the investigative findings and disciplinary determinations in a timely manner and failed to draft and serve the disciplinary action in a timely manner.*

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2010-05-11** | **11-0000913-IR** | 1. **Contraband** <br> 2. **Over-familiarity** <br> 3. **Other** <br> 4. **Misuse of Authority** | 1. **Not Sustained** <br> 2. **Not Sustained** <br> 3. **Sustained** <br> 4. **Sustained** | **Salary Reduction** | **Insufficient** |

## Facts of the Case

On May 11, 2010, it was alleged that a sergeant was bringing narcotics into a facility. It was further alleged that during the course of the investigation into the allegations, the sergeant contacted an officer who was a witness and attempted to interfere with the investigation by improperly attempting to learn the progress and focus of the investigation.

## Investigative Assessment

The investigating agent was only given seven weeks to complete the investigation before the deadline to take action. Despite the extremely short timeframe, the agent was able to complete a thorough report, although the report was submitted to the hiring authority less than 35 days before the deadline for taking action. There was no department attorney assigned to the investigation, but one was actively participating. The hiring authority performed in accordance with department policy.

## Assessment Questions

- Was the matter referred to the Office of Internal Affairs as soon as reasonably practical, within 45 calendar days of the date of discovery?

  *The matter was originally referred to OIA Central Intake as a request for a criminal investigation in a timely manner. However, the request to conduct a separate administrative investigation did not occur until ten months after discovery.*

- Within 21 calendar days, did the department attorney make an entry into CMS accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

  *Although no department attorney was formally assigned, one was assisting and participating in key aspects of the investigation. The department attorney did not enter the date of the reported incident, the date of discovery, or the deadline for taking disciplinary action in the department's case management system.*

- Upon completion of the investigation, was a copy of the investigative report timely forwarded to the department attorney to allow for feedback before it was forwarded to the hiring authority or prosecuting agency?

  *A department attorney was not formally assigned to the case, but a department attorney actively participated in key aspects of the case. There is no indication the agent forwarded a copy of the report to the department attorney.*

- Within 21 calendar days following receipt of the investigative report, did the department attorney review the report and provide appropriate substantive feedback addressing the thoroughness and clarity of the report?

  *A department attorney was not formally assigned to the case, but a department attorney actively participated in key aspects of the case. There is no indication the department attorney received the report or provided substantive feedback addressing the thoroughness and clarity of the report.*

- Did the department provide written confirmation summarizing all critical discussions about the investigative report to the special agent with a copy to the OIG?

  *A department attorney was not formally assigned to the case, but a department attorney actively participated in key aspects of the case. The department attorney did not provide written confirmation summarizing critical discussions regarding the draft report, but there is no indication the department attorney received the report.*

- Was the investigation, or subject interview, completed at least 35 days before the deadline to take disciplinary action?

  *Although the report was submitted to the hiring authority less than 35 days before the deadline for taking action, the delay was as a result of a delay in opening the administrative investigation, and not the actions of the agent in conducting the investigation.*

## Disposition

The hiring authority did not sustain the allegations against the sergeant that he was bringing narcotics into the facility. However, the hiring authority did sustain an allegation that the sergeant attempted to interfere in the investigation. The hiring authority imposed a five percent salary reduction for three months. The sergeant did not file an appeal with the State Personnel Board.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-02-16 | 11-0000984-IR | 1. Other Failure of Good Behavior | 1. Not Sustained | No Penalty Imposed | Sufficient |

### Facts of the Case

On February 16, 2011, an off-duty officer allegedly got into an argument with his wife. The argument allegedly escalated to the point where the officer pushed the wife to the ground and threatened her. Although the officer was arrested by outside law enforcement who had responded to the scene, the district attorney declined to prosecute the officer.

### Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

### Disposition

The hiring authority did not sustain the allegation against the officer.

### Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-01-21 | 11-0001002-IR | 1. Neglect of Duty<br>2. Misuse of Authority<br>3. Other | 1. Sustained<br>2. Sustained<br>3. Sustained | No Penalty Imposed | Sufficient |

### Facts of the Case

It was alleged that on January 21, 2010, a teacher conducted an unauthorized interview of an inmate and provided information from the interview to unauthorized individuals. The information was subsequently published on several media sites on the internet. The inmate was designated a public interest case inmate and was not allowed to be interviewed without appropriate approvals.

### Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

### Disposition

The hiring authority sustained the allegations. However, the teacher passed away before the case was completed; therefore, the matter was closed.

### Disciplinary Assessment

The department complied with policies and procedures.

| Incident Date 2009-12-01 | OIG Case Number 11-0001067-IR | Allegations 1. Neglect of Duty 2. Misuse of State Equipment or Property | Findings 1. Sustained 2. Sustained | Penalty Salary Reduction | Rating Sufficient |
|---|---|---|---|---|---|

## Facts of the Case
On December 1, 2009, an officer allegedly possessed inmate identification cards and attempted to sell them to the public.

## Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition
The hiring authority sustained the allegations and imposed a five percent salary reduction for six months. The officer filed an appeal with the State Personnel Board. Prior to the hearing, the department and officer entered into a settlement agreement whereby the department agreed to remove the disciplinary action from the officer's official personnel file after 18 months if he did not receive further disciplinary actions. The officer agreed to withdraw his appeal. The OIG concurred with the settlement.

## Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date 2011-01-13 | OIG Case Number 11-0001144-IR | Allegations 1. Discourteous Treatment 2. Other 3. Neglect of Duty 4. Other Failure of Good Behavior | Findings 1. Sustained 2. Sustained 3. Sustained 4. Sustained | Penalty Salary Reduction | Rating Sufficient |
|---|---|---|---|---|---|

## Facts of the Case
On January 13, 2011, an officer allegedly sent 13 discourteous text messages to the son of his estranged girlfriend. The messages contained vulgar language, some threatened to inflict bodily harm, and some challenged the son to a fight. On the same date, the officer allegedly drove to the son's house where he threatened to inflict bodily harm on him and challenged him to a fight, causing the son to call outside law enforcement.

## Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition
The hiring authority sustained the allegations of discourteous treatment and threatening another by sending the text messages, but did not sustain the allegations of the threats at the son's home. The hiring authority imposed a ten percent salary reduction for six months. The officer did not file an appeal with the State Personnel Board.

## Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date 2009-11-29 | OIG Case Number 11-0001321-IR | Allegations | Findings | Penalty Dismissal | Rating Sufficient |
|---|---|---|---|---|---|
| | | 1. Over-familiarity | 1. Sustained | | |
| | | 2. Over-familiarity | 2. Not Sustained | | |
| | | 3. Neglect of Duty | 3. Sustained | | |
| | | 4. Other Failure of Good Behavior | 4. Sustained | | |
| | | 5. Other | 5. Sustained | | |

## Facts of the Case

Between November 29, 2009 and March 14, 2011, it was alleged that an officer improperly maintained a romantic relationship with a person he knew was the sister of an inmate. It was alleged that a second officer made romantic advances toward the same woman, and improperly maintained a romantic relationship with a second person he knew was communicating with the inmate.

## Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition

The hiring authority sustained the allegations of over-familiarity for the first officer and served the officer with a notice of dismissal. The first officer filed an appeal with the State Personnel Board. The department entered into a settlement agreement with the first officer. The department modified the penalty to a 120 calendar-day suspension and the officer agreed to withdraw his appeal. The OIG concurred with the settlement agreement reached between the officer and department. The hiring authority did not sustain any allegations against the second officer.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date 2011-04-18 | OIG Case Number 11-0001322-IR | Allegations | Findings | Penalty Dismissal | Rating Sufficient |
|---|---|---|---|---|---|
| | | 1. Other | 1. Not Applicable | | |
| | | 2. Other | 2. Sustained | | |
| | | 3. Sexual Misconduct | 3. Not Applicable | | |
| | | 4. Sexual Misconduct | 4. Sustained | | |

## Facts of the Case

On April 18, 2011, an officer was allegedly absent from work without authorization. It was also alleged that the officer downloaded child pornography on a private computer while off-duty.

## Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition

The hiring authority sustained the allegations and determined the appropriate penalty was dismissal. However, prior to being interviewed by the Office of Internal Affairs, the officer resigned. A letter was placed in his official personnel file indicating that he retired under adverse circumstances.

## Disciplinary Assessment

The department complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2010-07-01** | **11-0001376-IR** | 1. **Neglect of Duty** | 1. **Sustained** | **Dismissal** | **Sufficient** |
| | | 2. **Dishonesty** | 2. **Sustained** | | |
| | | 3. **Other** | 3. **Sustained** | | |
| | | 4. **Other Failure of Good Behavior** | 4. **Sustained** | | |
| | | 5. **Sexual Misconduct** | 5. **Sustained** | | |
| | | 6. **Over-familiarity** | 6. **Sustained** | | |
| | | 7. **Failure to Report** | 7. **Sustained** | | |

## Facts of the Case

Between July 1, 2010, and February 14, 2011, a registered nurse allegedly engaged in an overly familiar relationship with an inmate, which included engaging in sexual intercourse and exchanging phone calls and text messages. It was further alleged that the nurse failed to report that the inmate possessed a mobile phone and that she was dishonest during her interview with the Office of Internal Affairs.

## Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition

The hiring authority sustained the allegations and served the nurse with a notice of dismissal. The nurse was on probationary status. Therefore, the hiring authority concurrently served her with a rejection on probation, thus ending her employment with the department. The department and the nurse then entered into an agreement, the terms of which permitted the nurse to resign in lieu of dismissal, and the nurse agreed to not appeal the dismissal to the State Personnel Board and to not seek future employment with the department. The OIG concurred with the settlement.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date 2011-04-11 | OIG Case Number 11-0001497-IR | Allegations | Findings | Penalty Counseling | Rating Sufficient |
|---|---|---|---|---|---|
| | | 1.  Neglect of Duty | 1.  Sustained | | |
| | | 2.  Discourteous Treatment | 2.  Not Sustained | | |
| | | 3.  Neglect of Duty | 3.  Not Sustained | | |
| | | 4.  Dishonesty | 4.  Not Sustained | | |

## Facts of the Case

On April 11, 2011, a sergeant allegedly was discourteous to inmates when he conducted a cell search by throwing and tossing the inmates' property throughout the cell while yelling at the inmates to clean the mess. It was further alleged that during the cell search, the sergeant threw a cup on the ground which bounced and struck an inmate. The sergeant allegedly failed to have the inmate who was struck by the cup medically evaluated and was misleading in his report of the incident.

## Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition

The hiring authority sustained an allegation of failing to perform within the scope of training against the sergeant for his failing to record and failing to report to his supervisor that the inmate may have been struck with the cup. The remaining allegations were not sustained. The sergeant received a letter of instruction.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date 2011-04-26 | OIG Case Number 11-0001524-IR | Allegations | Findings | Penalty No Penalty Imposed | Rating Sufficient |
|---|---|---|---|---|---|
| | | 1.  Other Failure of Good Behavior | 1.  Not Sustained | | |
| | | 2.  Dishonesty | 2.  Not Sustained | | |

## Facts of the Case

On April 26, 2011, an officer, while off-duty, allegedly grabbed his girlfriend, a co-worker, by the arm to escort her out of his home during a domestic dispute. It was further alleged that the officer was dishonest with a supervisor about the details of the incident.

## Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition

The hiring authority did not sustain any allegations against the officer.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-06-27 | 11-0001901-IR | 1. Dishonesty<br>2. Neglect of Duty<br>3. Other<br>4. Other Failure of Good Behavior<br>5. Over-familiarity | 1. Sustained<br>2. Sustained<br>3. Sustained<br>4. Sustained<br>5. Sustained | Dismissal | Sufficient |

## Facts of the Case

Between June 27, 2010 and March 25, 2011, an office assistant allegedly exchanged hundreds of text messages and several phone calls with a parolee. Additionally, between April 2011 and July 2011, the office assistant made contact with a second parolee through a social network. The office assistant failed to report to the department that she engaged in these communications with parolees and the office assistant was dishonest about these activities during her interview by the Office of Internal Affairs.

## Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition

The hiring authority sustained the allegations of dishonesty, neglect of duty, and engaging in overly familiar conduct and dismissed the office assistant. The department and the office assistant then entered into a settlement agreement wherein the department allowed the office assistant to resign in lieu of dismissal. The office assistant agreed to not seek employment with the department and to waive her rights to appeal the action. The OIG found the settlement agreement to be reasonable.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-12-21 | 11-0002103-IR | 1. Failure to Report<br>2. Other Failure of Good Behavior | 1. Not Sustained<br>2. Not Sustained | No Penalty Imposed | Sufficient |

## Facts of the Case

On December 21, 2010, an officer allegedly dissuaded an inmate from reporting that his injuries occurred as a result of force used by officers. Two other officers allegedly failed to report the actions of the first officer.

## Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition

The hiring authority did not sustain any of the allegations against the officers.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2010-10-04** | **11-0003070-IR** | 1.  **Neglect of Duty**<br><br>2.  **Dishonesty**<br><br>3.  **Other Failure of Good Behavior**<br><br>4.  **Other** | 1.  **Sustained**<br><br>2.  **Sustained**<br><br>3.  **Sustained**<br><br>4.  **Sustained** | **Dismissal** | **Insufficient** |

## Facts of the Case

On October 4, 2010, and November 19, 2010, an officer allegedly forged two medical notes, which he submitted to the department for the purpose of covering unauthorized and unexcused absences, as well as collecting health related benefits to which he otherwise would not have been entitled.

## Investigative Assessment

The request for an administrative investigation was not done in a timely manner. As a result, the investigator was assigned to conduct the investigation with only 41 days remaining for the department to take disciplinary action. The investigator was able to complete a thorough investigation in 11 days, although the report was submitted to the hiring authority less than 35 days before the deadline for taking action. In all other critical aspects, the department attorney and the hiring authority performed in accordance with department policies.

## Assessment Questions

- Was the matter referred to the Office of Internal Affairs as soon as reasonably practical, within 45 calendar days of the date of discovery?

  *The discovery of the alleged misconduct occurred on January 27, 2011. The matter was referred to OIA Central Intake in a timely manner. The Office of Internal Affairs made a timely decision to accept the matter for a criminal investigation. Following the criminal investigation, the matter was referred to OIA Central Intake requesting an administrative investigation. The request was made on December 14, 2011, with 43 days remaining in which to conduct the investigation and take action.*

- Was the investigation, or subject interview, completed at least 35 days before the deadline to take disciplinary action?

  *The investigation was completed with 23 days remaining for the department to take disciplinary action.*

## Disposition

The hiring authority sustained allegations of dishonesty and neglect of duty and determined the appropriate penalty was dismissal. However, before the officer could be served with a notice of dismissal, he submitted his resignation, which the department accepted. A letter was placed in the officer's official personnel file reflecting that the officer resigned under unfavorable circumstances.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

# HEADQUARTERS

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2010-09-27** | **10-0003801-IR** | 1. **Dishonesty**<br><br>2. **Dishonesty**<br><br>3. **Discourteous Treatment** | 1. **Not Sustained**<br><br>2. **Sustained**<br><br>3. **Sustained** | **Dismissal** | **Insufficient** |

## Facts of the Case

On September 27, 2010, it was alleged that a lieutenant conducted an off grounds surveillance without the warden's approval. Further, he allegedly lied to the warden and stated the chief deputy warden approved the actions. It was also alleged that the lieutenant was frequently absent from work yet indicated on his timesheet that he was at work. Also, the lieutenant allegedly informed his subordinate staff during a meeting that if they continued to question his work hours, he would reassign them. It was also alleged that the lieutenant misused a state owned vehicle by using it to commute to and from his home to work.

## Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition

The initial hiring authority determined there was sufficient evidence to sustain all of the allegations, with the exception of the misuse of the state vehicle. However, the OIG and the department did not agree on the penalty level and the matter was elevated to the hiring authority's supervisor. At the higher level of review, the department determined that the penalty imposed would be dismissal. The lieutenant was served with a notice of dismissal; however, prior to the effective date of the dismissal, the lieutenant retired.

## Disciplinary Assessment

The department attorney initially assigned to the matter complied substantially with department policy. However, the matter was assigned to a second department attorney and there was significant delay in the disciplinary process. Ultimately, the notice of disciplinary action was timely served and the initial delays did not cause an adverse impact to the case.

## Assessment Questions

- Did the hiring authority, who participated in the disciplinary conference, select the appropriate penalty based on the sustained allegations?

  *The hiring authority selected a lesser penalty than prescribed in the department's matrix.*

- Was the disciplinary phase conducted with due diligence by the department?

  *After the initial disciplinary conference, there was over a two month delay in conducting the Executive Review in this matter. Also, there was a two month delay in serving the disciplinary action.*

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2011-01-12** | **11-0000322-IR** | 1. **Misuse of Authority**<br><br>2. **Other** | 1. **Not Sustained**<br><br>2. **Not Sustained** | **No Penalty Imposed** | **Sufficient** |

## Facts of the Case

On January 12, 2011, it was alleged that a parole agent accessed confidential information about a parolee and provided that information to a news agency. The confidential information was then published on a news website.

## Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition

The hiring authority determined there was insufficient evidence to sustain the allegation of improper access and dissemination of confidential information.

## Disciplinary Assessment

The department complied with policies and procedures.

| Incident Date 2010-03-01 | OIG Case Number 11-0000432-IR | Allegations 1. Neglect of Duty | Findings 1. Not Sustained | Penalty No Penalty Imposed | Rating Insufficient |
|---|---|---|---|---|---|

## Facts of the Case

In March 2010, it was discovered that a senior staff counsel had been allegedly overpaid. The senior staff counsel had been on leave for some time and allegedly exhausted all leave credits. The department allegedly continued to issue the senior staff counsel a paycheck for approximately ten additional months, resulting in an overpayment of approximately $96,000. It was alleged that two personnel specialists failed to monitor the senior staff counsel's leave balance and timesheets and demonstrate sufficient knowledge of the department's leave credit and overtime procedures. An office technician allegedly failed to monitor the senior staff counsel's timesheets and attendance. Also, it was alleged that the senior staff counsel's supervisor failed to monitor the balances adequately.

## Investigative Assessment

The hiring authority delayed nearly seven months in submitting this matter to the Office of Internal Affairs. Further, the Office of Internal Affairs delayed three months in making a determination to investigate the matter. Further, once a special agent was assigned, the investigation was not initiated for another three months. However, the Office of Internal Affairs conducted a thorough investigation. The special agent cooperatively worked with the OIG.

## Assessment Questions

- Was the matter referred to the Office of Internal Affairs as soon as reasonably practical, within 45 calendar days of the date of discovery?

  *The department became aware of the over payment issue on March 23, 2010; however, the hiring authority did not request an investigation until October 21, 2010.*

- Did OIA Central Intake make a determination regarding the case within 30 calendar days?

  *The case was opened in the case management system by OIA Central Intake on November 2, 2010; however, the decision to open an investigation did not occur until February 2, 2011.*

- Was the Office of Internal Affairs investigation, or subject only interview, conducted with due diligence?

  *The special agent was assigned this case on February 7, 2011, but virtually no investigative activity occurred until the first week of May 2011.*

## Disposition

The senior staff counsel was only required to report time off and there were different understandings about responsibilities for an employee out for an extended leave between personnel and the legal office. The hiring authority for the personnel specialists did not sustain the allegations, but decided to provide them with training. The hiring authority for the office technician did not sustain the allegations, and exonerated the senior staff counsel's supervisor.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2011-02-25** | **11-0000644-IR** | 1. **Over-familiarity**<br>2. **Contraband**<br>3. **Dishonesty** | 1. **Sustained**<br>2. **Sustained**<br>3. **Sustained** | **Dismissal** | **Insufficient** |

## Facts of the Case

On February 25, 2011, it was alleged that a teacher's assistant was engaged in an overly familiar relationship with an inmate. Allegedly, the teacher's assistant was corresponding with several inmates and had planned to provide at least one inmate with tattoo ink, needles, and chocolate chip cookies in exchange for cash. It was also alleged that the teacher's assistant possessed a knife and pepper spray canister on institutional grounds. Further, the teacher's assistant allegedly was dishonest with the special agents from the Office of Internal Affairs during the investigatory interview.

## Investigative Assessment

The Office of Internal Affairs dispatched an agent to begin an investigation within two days of learning of the misconduct. However, they failed to notify the OIG or the department attorney that an investigation was being conducted. The investigation was completed without consultation with either the OIG or the department attorney.

## Assessment Questions

- Did the special agent adequately confer with the OIG upon case initiation and prior to finalizing the investigative plan?

  *The special agent was assigned this case and immediately dispatched to the institution to conduct the investigation. Neither the special agent nor his supervisors made verbal notification to the OIG that the case was being investigated in an expedited manner.*

- Did the special agent adequately confer with the department attorney upon case initiation and prior to finalizing the investigative plan?

  *The special agent did not contact the department attorney prior to conducting the investigation.*

- Did the special agent adequately confer with the OIG upon case initiation and prior to finalizing the investigative plan?

  *The special agent was dispatched to the institution to conduct the investigation immediately and did not confer with the OIG.*

- Did the special agent adequately confer with the department attorney upon case initiation and prior to finalizing the investigative plan?

  *The special agent did not confer with the department attorney.*

## Disposition

The hiring authority sustained all of the allegations against the teacher's assistant and served her with a notice of dismissal. Following a Skelly hearing, the teacher's assistant resigned. A letter was placed in her official personnel file indicating she resigned under adverse circumstances.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2011-02-25** | **11-0000985-IR** | 1. **Neglect of Duty**<br><br>2. **Discourteous Treatment** | 1. **Not Sustained**<br><br>2. **Not Sustained** | **No Penalty Imposed** | **Sufficient** |

## Facts of the Case
It was alleged that on February 25, 2011, officers inappropriately classified an inmate which may have resulted in his suicide. It was further alleged that officers shared the inmate's commitment offense information with other inmates located in his housing unit.

## Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition
The hiring authority determined there was insufficient evidence to sustain the allegations.

## Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2010-03-01** | **11-0001135-IR** | 1. **Other Criminal Act** | 1. **No Finding** | **No Penalty Imposed** | **Insufficient** |

## Facts of the Case
In March 2010, it was discovered that a senior staff counsel had been allegedly overpaid. The senior staff counsel had been on leave for some time and allegedly exhausted all leave credits. The department allegedly continued to issue the senior staff counsel a paycheck for approximately ten additional months, resulting in an overpayment of approximately $96,000.

## Investigative Assessment
The hiring authority delayed nearly seven months in submitting this matter to the Office of Internal Affairs. The Office of Internal Affairs conducted a thorough investigation. The special agent was unable to interview the senior staff counsel because he had retired and could not be required to participate in an interview.

## Assessment Questions

- Was the matter referred to the Office of Internal Affairs as soon as reasonably practical, within 45 calendar days of the date of discovery?

  *The department became aware of the over payment issue on March 23, 2010; however, the hiring authority did not request an investigation until October 21, 2010.*

## Disposition
The hiring authority found the investigation to be insufficient because it did not contain an interview of the senior staff counsel, which the hiring authority felt was necessary to make appropriate findings about whether the senior staff counsel knew he was inappropriately receiving pay. The senior staff counsel had retired during the investigation; therefore, additional investigation was not requested.

## Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-11-09 | 11-0001324-IR | 1. **Other Failure of Good Behavior**<br><br>2. **Misuse of Authority** | 1. **Sustained**<br><br>2. **Not Sustained** | **Letter of Reprimand** | **Sufficient** |

## Facts of the Case
On November 9, 2010, an employee relations officer, while off-duty, was alleged to have committed a battery on his wife by pushing her in the chest two or three times. He was also allegedly heavily intoxicated when he was arrested by outside law enforcement officers. It was also alleged that the employee relations officer attempted to use his position as a department employee to gain preferential treatment by the arresting officers.

## Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition
The hiring authority determined that the employee relations officer failed to engage in good behavior, but did not attempt to use his position for preferential treatment. The employee relations officer received a letter of reprimand for his behavior.

## Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-07-21 | 11-0001554-IR | 1. **Other Failure of Good Behavior**<br><br>2. **Dishonesty** | 1. **Not Sustained**<br><br>2. **Not Sustained** | **No Penalty Imposed** | **Insufficient** |

## Facts of the Case
It was alleged that in July 2010, an associate warden and a captain disclosed interview questions for a promotional exam to potential candidates. It was also alleged that three lieutenants had knowledge of the interview questions and failed to disclose they knew that information. Further, it was alleged that the captain who received the promotion secured the position fraudulently by having knowledge of the interview questions.

## Investigative Assessment
The Office of Internal Affairs originally received a complaint in this matter in March 2011. The Office of Internal Affairs forwarded the matter to the institution. The matter was submitted to the Office of Internal Affairs on May 6, 2011, but the case responsibility was not assigned to an investigating agent until June 7, 2011. The assigned agent worked diligently to complete the matter and kept the OIG and department attorney informed in all aspects. However, the report was submitted to the hiring authority less than 35 days before the deadline for taking action.

## Assessment Questions

- Was the investigation, or subject interview, completed at least 35 days before the deadline to take disciplinary action?

  *The completed investigation was submitted to the hiring authority with less then a week before the deadline to take disciplinary action.*

## Disposition
The hiring authority determined there was insufficient evidence to sustain the allegations.

## Disciplinary Assessment
The department complied with policies and procedures.

| Incident Date 2011-01-01 | OIG Case Number 11-0001610-IR | Allegations 1. Neglect of Duty 2. Discourteous Treatment | Findings 1. Not Sustained 2. Sustained | Penalty No Penalty Imposed | Rating Sufficient |
|---|---|---|---|---|---|

### Facts of the Case

It was alleged that in January 2011, a chief executive officer discussed an on-going internal affairs investigation with a nurse, who was the subject of the investigation. It was further alleged that a chief nursing executive had knowledge of the chief executive officer's misconduct and failed to report it, yet discussed it with a subordinate employee.

### Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

### Disposition

The hiring authority determined that there was insufficient evidence to sustain the allegation against the chief executive officer. The hiring authority did not sustain the allegation that the chief nursing executive failed to report the chief executive officer's misconduct, but did sustain the allegation that the chief nursing executive discussed the conduct with a subordinate employee. The hiring authority provided counseling and training to the chief nursing executive.

### Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date 2010-10-01 | OIG Case Number 11-0001693-IR | Allegations 1. Discourteous Treatment 2. Neglect of Duty | Findings 1. Not Sustained 2. Not Sustained | Penalty No Penalty Imposed | Rating Sufficient |
|---|---|---|---|---|---|

### Facts of the Case

It was alleged that between October 2010 and November 2010, an associate warden and a captain allowed officers guarding inmates at a local hospital to be unarmed for several hours. It was further alleged that the associate warden made discourteous comments about other high level managers.

### Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

### Disposition

The hiring authority determined there was insufficient evidence to sustain any of the allegations.

### Disciplinary Assessment

The department complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2010-08-01** | **11-0001802-IR** | 1.  **Insubordination**<br><br>2.  **Discourteous Treatment**<br><br>3.  **Other Failure of Good Behavior** | 1.  **Not Sustained**<br><br>2.  **Not Sustained**<br><br>3.  **Not Sustained** | **No Penalty Imposed** | **Insufficient** |

## Facts of the Case

It was alleged that on August 1, 2010, an officer created a false social networking page depicting a high level official. Allegedly, the page made derogatory and slanderous remarks about the official. It was further alleged that the officer was insubordinate to special agents when he failed to attend an investigatory interview.

## Investigative Assessment

The department's overall response to this matter was substantially within compliance of policies and procedures. However, the Office of Internal Affairs did delay completion of the investigation and submitted the matter to the hiring authority to review with less than one week remaining to take disciplinary action. The special agent kept both the OIG and department attorney apprised of matters that arose during the course of the investigation.

## Assessment Questions

- Within 21 calendar days, did the department attorney make an entry into CMS accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

  *The department attorney did not make any entries confirming the necessary disciplinary action deadlines.*

- Was the investigation, or subject interview, completed at least 35 days before the deadline to take disciplinary action?

  *The investigation was submitted to the hiring authority with approximately six days left to take disciplinary action.*

## Disposition

The hiring authority determined there was insufficient evidence to sustain the allegations. However, the officer did receive corrective action to address his discourteous treatment of employees for failing to contact the special agents in advance when he knew he was unable to attend the interview.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2008-01-14** | **11-0002727-IR** | 1. **Dishonesty** | 1. **Not Sustained** | **No Penalty Imposed** | **Insufficient** |

## Facts of the Case

On January 14, 2008, an associate warden allegedly submitted employment application documents for the position of chief deputy warden claiming 30 units of college credit for coursework she did not personally complete.

## Investigative Assessment

This subject only interview was handled appropriately for the most part. However, the department attorney failed to make entries into the case management system.

## Assessment Questions

- Was the matter referred to the Office of Internal Affairs as soon as reasonably practical, within 45 calendar days of the date of discovery?

  *The date of discovery was November 29, 2010, and the request for investigation was not made until February 2, 2011.*

- Was the investigation, or subject interview, completed at least 35 days before the deadline to take disciplinary action?

  *The report was completed and submitted to the hiring authority with only 12 days left before the deadline to take disciplinary action.*

## Disposition

The hiring authority determined there was insufficient evidence to sustain the allegation.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

# NORTH REGION

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2008-08-10** | **09-0000405-IR** | 1. **Other Failure of Good Behavior**<br><br>2. **Other Failure of Good Behavior**<br><br>3. **Neglect of Duty**<br><br>4. **Neglect of Duty**<br><br>5. **Discourteous Treatment**<br><br>6. **Use of Force**<br><br>7. **Discourteous Treatment**<br><br>8. **Dishonesty** | 1. **Sustained**<br><br>2. **Not Sustained**<br><br>3. **Sustained**<br><br>4. **Not Sustained**<br><br>5. **Not Sustained**<br><br>6. **Not Sustained**<br><br>7. **Sustained**<br><br>8. **Sustained** | **Dismissal** | **Insufficient** |

## Facts of the Case

It was alleged that in 2008, six officers working in a housing unit in the institution allowed and encouraged inmate porters to intimidate, threaten, assault, extort, and steal from other inmates. In addition, these officers allegedly allowed inmate porters to facilitate cell moves in the unit without proper correctional authority. The officers allegedly failed to document these actions by the inmate porters. Further, it was alleged that the officers were dishonest during their investigative interviews.

## Investigative Assessment

The hiring authority failed to submit the request for investigation in a timely manner, causing a slight delay. The Office of Internal Affairs conducted a thorough investigation, although the report was submitted to the hiring authority less than 35 days before the deadline for taking action.

## Assessment Questions

- Was the matter referred to the Office of Internal Affairs as soon as reasonably practical, within 45 calendar days of the date of discovery?

    *The date of discovery was November 21, 2008, and the request for investigation was not made until January 21, 2009.*

- Was the investigation, or subject interview, completed at least 35 days before the deadline to take disciplinary action?

    *The report was completed and submitted to the hiring authority with only six days left before the deadline to take disciplinary action.*

## Disposition

The hiring authority sustained allegations of other failure of good behavior, neglect of duty, discourteous treatment, and dishonesty against four of the officers and served them with notices of dismissal. The hiring authority determined that there was insufficient evidence to sustain any allegations against two of the officers. The four officers filed appeals with the State Personnel Board. The department entered into settlement agreements with all four of the officers during the hearing process due to the fact that the inmate witnesses who were critical to the case failed to appear at the hearing and were unable to be located. The dismissal of one of the officers was reduced to a letter of instruction. Two officers' dismissals were reduced to 30 working-day suspensions. The final officer agreed to resign her position and receive back-pay. The OIG concurred with the settlements in this case, due to the lack of critical inmate witnesses' availability at the hearing.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date 2008-11-13 | OIG Case Number 09-0001044-IR | Allegations 1. Over-familiarity | Findings 1. Not Sustained | Penalty No Penalty Imposed | Rating Sufficient |
|---|---|---|---|---|---|

## Facts of the Case
In November 2008, it was alleged that an officer was overly familiar with inmates when she warned them of pending cell searches by the investigative services unit. In addition, it was alleged that the officer brought tobacco and food items to certain inmates. It was also alleged that the officer allowed inmates to enter other inmates' cells to carry out assaults.

## Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition
The hiring authority determined there was insufficient evidence to sustain the allegations.

## Disciplinary Assessment
The department complied with policies and procedures.

| Incident Date 2008-10-01 | OIG Case Number 09-0002034-IR | Allegations 1. Other Failure of Good Behavior 2. Neglect of Duty 3. Neglect of Duty 4. Dishonesty | Findings 1. Sustained 2. Sustained 3. Not Sustained 4. Sustained | Penalty Dismissal | Rating Sufficient |
|---|---|---|---|---|---|

## Facts of the Case
It was alleged that in October 2008, three officers allowed inmates to view official records of cell assignments of other inmates. Additionally, it was alleged that the officers allowed an inmate to access another dormitory housing unit in order to assault an inmate. Further, the officers allegedly failed to properly document the altercation between the two inmates. Finally, the officers were allegedly dishonest during their investigatory interviews.

## Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition
The hiring authority determined there was sufficient evidence to sustain all of the allegations against the officers with the exception of one allegation of neglect of duty. All three officers were dismissed. The officers filed appeals with the State Personnel Board. The department entered into settlement agreements with all three of the officers during the hearing process due to the fact that the inmate witnesses who were critical to the case failed to appear at the hearing and were unable to be located. Two officers' dismissals were reduced to a 30 working-day suspensions. The final officer agreed to resign her position and receive back-pay. The OIG concurred in the settlements.

## Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2008-07-18** | **09-0002035-IR** | 1.  **Other Failure of Good Behavior** | 1.  **Not Sustained** | **No Penalty Imposed** | **Sufficient** |

### Facts of the Case
It was alleged that in 2008, an officer allowed four inmates to enter the cell of another inmate in order to physically assault him.

### Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

### Disposition
The hiring authority determined there was insufficient evidence to sustain the allegation.

### Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2009-10-22** | **10-0000148-IR** | 1.  **Contraband**<br>2.  **Discourteous Treatment**<br>3.  **Other**<br>4.  **Misuse of Authority**<br>5.  **Dishonesty** | 1.  **Not Sustained**<br>2.  **Sustained**<br>3.  **Not Sustained**<br>4.  **Sustained**<br>5.  **Not Sustained** | **Suspension** | **Sufficient** |

### Facts of the Case
On October 22, 2009, two men reported they were pulled from their truck by an off-duty lieutenant who flashed his badge, drew his weapon, and threatened to arrest the men for stealing large rocks near a river. It was also alleged that he identified himself as a CDCR lieutenant, threw the men to the ground, sat on one man's back, and held his gun to the back of the man's head. When outside law enforcement made contact with the lieutenant he denied any unlawful conduct and made assurances that everything was fine because he was a CDCR lieutenant. Additionally, it was alleged that the lieutenant was dishonest in his investigatory interview.

### Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

### Disposition
The hiring authority sustained the allegations that the lieutenant had been discourteous to members of the public and had misused his authority and imposed a penalty of a 48 working-day suspension. However, following a Skelly hearing, the hiring authority agreed to settle the case for a 10 percent salary reduction for 18 months and the lieutenant agreed not to file and appeal with the State Personnel Board. The OIG concurred in the settlement.

### Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2009-12-16** | **10-0000864-IR** | 1.  Discourteous Treatment<br>2.  Other Failure of Good Behavior<br>3.  Use of Force<br>4.  Dishonesty | 1.  Sustained<br>2.  Sustained<br>3.  Sustained<br>4.  Sustained | **Dismissal** | **Sufficient** |

## Facts of the Case
It was alleged that on December 16, 2009, a sergeant initiated a verbal confrontation with an inmate, which escalated and resulted in the sergeant using unnecessary and excessive force. It was alleged that the sergeant sprayed a non-resistive inmate with pepper spray. In addition, it was alleged that during the verbal confrontation the sergeant used profanity. During the investigation of these allegations, the sergeant was alleged to have been dishonest during her investigatory interview when she denied using profanity and when she claimed the inmate was threatening her personal safety.

## Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition
The hiring authority sustained the allegations and the sergeant was served with a notice of dismissal. The sergeant filed an appeal with the State Personnel Board. Following a hearing, the dismissal was upheld.

## Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2010-01-27** | **10-0001053-IR** | 1.  Use of Force<br>2.  Failure to Report<br>3.  Discourteous Treatment<br>4.  Dishonesty | 1.  Sustained<br>2.  Sustained<br>3.  Sustained<br>4.  Sustained | **Dismissal** | **Sufficient** |

## Facts of the Case
On January 27, 2010, it was alleged that an officer used unnecessary force against a handcuffed inmate during an escort. The officer allegedly engaged in a verbal confrontation with the inmate during the escort. He then forced the inmate to the ground and proceeded to punch him in the face and neck area several times. It was alleged that another officer witnessed the unnecessary force and failed to report it.

## Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition
The hiring authority sustained the allegations and served both officers with notices of dismissal. The officers each filed an appeal with the State Personnel Board. Following a hearing, the State Personnel Board modified the dismissal of the officer that used unnecessary force from dismissal to a letter of reprimand. The State Personnel Board revoked the dismissal of the other officer.

## Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2009-12-02** | **10-0001085-IR** | 1. **Use of Force**<br>2. **Dishonesty**<br>3. **Neglect of Duty**<br>4. **Neglect of Duty**<br>5. **Use of Force** | 1. **Sustained**<br>2. **Sustained**<br>3. **Sustained**<br>4. **Not Sustained**<br>5. **Not Sustained** | **Dismissal** | **Sufficient** |

## Facts of the Case

It was alleged that on December 2, 2009, five officers, a sergeant, and a lieutenant used force upon, or witnessed the use of force upon, a ward and failed to document the use of force they used or witnessed. In addition, it was alleged that the five officers, sergeant, and lieutenant failed to send the ward for a medical evaluation following the use-of-force incident. Finally, it was alleged that one of the officers was dishonest regarding the incident during his investigatory interview.

## Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition

The hiring authority sustained the allegations and served the lieutenant and one officer with notices of dismissal. Two officers received a 5 percent salary reduction for 15 months and two other officers received a 5 percent salary reduction for 24 months. The allegations against the sergeant were not sustained. The lieutenant resigned and the two officers who received a 5 percent salary reduction for 15 months did not appeal. The officer who was dismissed and the two officers who received salary reductions of 5 percent for 24 months each filed appeals with the State Personnel Board. The department entered into settlement agreements with all three of the officers. The officer who was dismissed was reinstated with removal of the dishonesty allegation and a four months suspension. One officer received a salary reduction of 5 percent for 12 months and the other officer received a letter of reprimand in settlement of their respective appeals. The OIG concurred with the terms of the settlements. Evidentiary problems developed regarding the three officers who settled with the department, which justified the terms of the settlement agreements.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date 2009-09-15 | OIG Case Number 10-0001338-IR | Allegations 1. Neglect of Duty 2. Failure to Report | Findings 1. Sustained 2. Not Sustained | Penalty Salary Reduction | Rating Insufficient |
|---|---|---|---|---|---|

## Facts of the Case

On September 15, 2009, a youth counselor allegedly allowed a ward to enter the room of another ward in violation of department policy. The violation nearly led to a physical altercation between the wards.

## Investigative Assessment

The department's initial response was untimely. The hiring authority failed to submit a request for investigation for over six months. The delay provided a narrow timeframe in which to complete a thorough investigation and diminished the time necessary to carefully consider the merits of the case. Moreover, the OIG was not given an opportunity to review the investigative report prior to the report being sent to the hiring authority for review. The report was submitted to the hiring authority less than 35 days before the deadline for taking action. Nevertheless the report was thorough, and a proper outcome ultimately occurred.

## Assessment Questions

- Was the matter referred to the Office of Internal Affairs as soon as reasonably practical, within 45 calendar days of the date of discovery?

  *The hiring authority became aware of the misconduct on September 15, 2009, but failed to submit a request for investigation until March 24, 2010.*

- Upon completion of the investigation, was a copy of the investigative report timely forwarded to the OIG to allow for feedback before it was forwarded to the hiring authority or prosecuting agency?

  *The Office of Internal Affairs forwarded the completed investigation to the hiring authority on August 23, 2010. However, the OIG did not become aware of this until August 30, 2010.*

- Was the Office of Internal Affairs investigation, or subject only interview, conducted with due diligence?

  *Despite receiving the untimely request for investigation from the hiring authority, the agent failed to perform any activity on the case for nearly two months.*

- Was the investigation, or subject interview, completed at least 35 days before the deadline to take disciplinary action?

  *The report was completed and submitted to the hiring authority with only 24 days left before the deadline to take disciplinary action.*

## Disposition

The hiring authority sustained the allegation of neglect of duty for the counselor allowing a ward to enter the room of another ward. The allegation that the counselor failed to report the incident was not sustained. The hiring authority imposed a 5 percent reduction in salary for 12 months. The youth counselor filed an appeal with the State Personnel Board. However, he failed to appear at a mandatory settlement conference; therefore, the appeal was dismissed.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2009-04-01** | **10-0001469-IR** | 1. **Discourteous Treatment**<br><br>2. **Neglect of Duty** | 1. **Sustained**<br><br>2. **Sustained** | **Salary Reduction** | **Sufficient** |

## Facts of the Case

On April 1, 2009, a sergeant allegedly used profanity toward an inmate who refused to leave an exercise yard. It was also alleged that an officer used derogatory language toward the inmate in order to incite him to react, which allegedly caused officers to use force and remove the inmate from the yard. Two officers reportedly observed the incident but failed to report the misconduct in their reports.

## Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition

The hiring authority sustained the allegation against the sergeant and imposed a 10 percent salary reduction for 12 months. The allegations against the officers were also sustained and each received a letter of reprimand. Both officers filed an appeal with the State Personnel Board. Pursuant to a settlement agreement, the hiring authority agreed to remove the letters of reprimand from the officers' official personnel files after 18 months. The sergeant did not file an appeal with the State Personnel Board. The OIG concurred with the settlement agreement reached between the department and the officers.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2010-04-04** | **10-0001472-IR** | 1. **Other Failure of Good Behavior** <br><br> 2. **Dishonesty** | 1. **Sustained** <br><br> 2. **Not Sustained** | **Salary Reduction** | **Insufficient** |

## Facts of the Case

On April 4, 2010, a sergeant allegedly was involved in a physical altercation with his wife and her stepson which resulted in injury to his wife. In addition, it was alleged that the sergeant was dishonest when he recounted the incident to responding law enforcement officers.

## Investigative Assessment

The Office of Internal Affairs failed to process the investigation in a timely manner. The Office of Internal Affairs conducted a thorough investigation, although the report was submitted to the hiring authority less than 35 days before the deadline for taking action.

## Assessment Questions

- Did OIA Central Intake make a determination regarding the case within 30 calendar days?

  *The hiring authority submitted the investigatory request on April 14, 2010. OIA Central Intake reviewed the request on May 26, 2010.*

- Within 21 calendar days, did the department attorney make an entry into CMS accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

  *The department attorney made an entry into CMS within 21 days of being assigned confirming the date of the reported incident and the date of discovery. He did not confirm the deadline for taking disciplinary action.*

- No later than 21 calendar days following assignment of the case, did the department attorney contact the assigned special agent and the OIG monitor to discuss the elements of a thorough investigation of the alleged misconduct?

  *The department attorney had been assigned to this case on June 2, 2010, when it was a direct action. Subsequently, the case was opened for an administrative investigation on October 6, 2010. The special agent was assigned to the case on October 14, 2010. The department attorney contacted the special agent on November 19, 2010, to discuss the elements of a thorough investigation. Once the special agent was assigned, 36 days passed before the department attorney contacted the special agent.*

- Was the investigation, or subject interview, completed at least 35 days before the deadline to take disciplinary action?

  *The report was completed and submitted to the hiring authority with only 31 days left before the deadline to take disciplinary action.*

## Disposition

The hiring authority determined there was sufficient evidence to sustain the allegation that the sergeant was involved in a physical altercation with his wife and stepson which resulted in injury to his wife. The hiring authority determined there was insufficient evidence to sustain the allegation that the sergeant was dishonest. The hiring authority imposed a 10 percent salary reduction for 24 months. The officer appealed the action to the State Personnel Board. Thereafter, the hiring authority entered into a settlement agreement with the officer. The hiring authority agreed to modify the penalty to a 10 percent reduction for 3 months and then a 5 percent reduction for 20 months. The officer agreed to withdraw his appeal and to attend a 52 week anger management class. The OIG concurred with the settlement agreement.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-03-30 | 10-0002086-IR | 1. **Dishonesty**<br>2. **Dishonesty**<br>3. **Neglect of Duty**<br>4. **Neglect of Duty** | 1. **Sustained**<br>2. **No Finding**<br>3. **Not Sustained**<br>4. **Sustained** | **Dismissal** | **Sufficient** |

## Facts of the Case
On March 30, 2010, a lieutenant was allegedly dishonest and neglectful when she instructed an officer to prepare a memorandum to the district attorney's office requesting leniency for an inmate. The lieutenant reviewed and signed the memorandum that contained false information, and instructed the officer to deliver it to the district attorney's office. On April 21, 2010, an officer was also allegedly dishonest by preparing a memorandum to the district attorney's office regarding a conversation with a correctional counselor concerning the inmate. On April 15, 2010, another officer was allegedly negligent by participating in preparing a memorandum to the district attorney's office requesting leniency for another inmate.

## Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition
The hiring authority determined there was sufficient evidence to sustain the allegations against the lieutenant and served the lieutenant with a notice of dismissal. However, the lieutenant retired before the disciplinary action took effect. A letter indicating the lieutenant retired pending disciplinary action was placed in her official personnel file. The hiring authority determined there was insufficient evidence to sustain the allegation against one of the officers. The other officer resigned before the hiring authority completed the disciplinary process. A letter was placed in the officer's official personnel file indicating she resigned under unfavorable circumstances.

## Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2009-08-27 | 10-0002088-IR | 1. **Dishonesty** | 1. **Sustained** | **Demotion** | **Sufficient** |

## Facts of the Case
On August 27, 2009, a correctional counselor was allegedly dishonest when he falsified a declaration when serving court documents on an inmate.

## Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition
The hiring authority sustained the allegation and demoted the correctional counselor to officer. The counselor filed an appeal with the State Personnel Board. After a hearing, the State Personnel Board lowered the penalty to a 10 percent salary reduction for 12 months.

## Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2010-02-06** | **10-0002089-IR** | 1. **Dishonesty** <br> 2. **Dishonesty** <br> 3. **Neglect of Duty** <br> 4. **Use of Force** <br> 5. **Use of Force** | 1. **Sustained** <br> 2. **Not Sustained** <br> 3. **Sustained** <br> 4. **Sustained** <br> 5. **Not Sustained** | **Salary Reduction** | **Insufficient** |

## Facts of the Case

It was alleged that on February 6, 2010, an officer used unnecessary force when he took a ward to the ground and placed him in handcuffs while a second officer placed her foot on the ward's back. Neither officer reported their use of force. In addition, four youth counselors allegedly observed the use of force and failed to report their observations. It was further alleged that three officers were misleading in their investigatory interviews related to the incident.

## Investigative Assessment

The investigation was not conducted with due diligence. The Office of Internal Affairs conducted a thorough investigation, although the report was submitted to the hiring authority less than 35 days before the deadline for taking action.

## Assessment Questions

- Was the matter referred to the Office of Internal Affairs as soon as reasonably practical, within 45 calendar days of the date of discovery?

  *The date of discovery was February 11, 2010, and the request for investigation was not made until April 21, 2010.*

- Was the Office of Internal Affairs investigation, or subject only interview, conducted with due diligence?

  *The final report was not sent to the hiring authority until February 4, 2011. The statute of limitations was February 10, 2011.*

- Was the investigation, or subject interview, completed at least 35 days before the deadline to take disciplinary action?

  *The final investigative report was not sent to the hiring authority until six days prior to the expiration of the statute of limitations.*

## Disposition

The hiring authority sustained the allegations of failure to report the use of force and making false or misleading statements during an internal affairs investigation against three officers. One officer was served with a notice of dismissal, and the other officer received a 10 percent reduction in salary for 30 months. The hiring authority sustained the allegations of failure to report the use of force witnessed and neglect of duty against the four youth counselors. One counselor who was also found to be dishonest during the internal affairs investigation received a 10 percent salary reduction for 30 months. The other three counselors were given 5 percent reductions in salary for 13 months. Each of the officers and counselors filed an appeal with the State Personnel Board. The department entered into settlement agreements after several evidentiary issues were discovered that weakened the department's case. As a result, the officer who was dismissed received a 90 working-day suspension. The officer who received a 10 percent reduction in salary for 30 months received a 10 percent salary reduction for 18 months. The counselor who received a 10 percent reduction in salary for 30 months received a 10 percent salary reduction for 15 months. The other three counselors who received 5 percent salary reductions for 13 months received 5 percent salary reductions for 8 months. The OIG concurred with the settlement agreements.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-05-05 | 10-0002132-IR | 1. Other Failure of Good Behavior | 1. Sustained | Dismissal | Sufficient |

### Facts of the Case
On May 5, 2010, an off-duty officer allegedly downloaded child pornographic images on his computer and exchanged the images with others.

### Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

### Disposition
The hiring authority sustained the allegation and served the officer with a notice of dismissal. However, the officer resigned before the disciplinary action took effect. A letter indicating the officer resigned pending disciplinary action was place in his official personnel file.

### Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-05-06 | 10-0002282-IR | 1. Neglect of Duty<br>2. Other Criminal Act<br>3. Other Failure of Good Behavior | 1. Sustained<br>2. Not Sustained<br>3. Sustained | Suspension | Sufficient |

### Facts of the Case
On May 6, 2010, a parole agent allegedly stole prescription medications from a parolee during a visit to his home. It was further alleged that the parole agent had given her prescribed Vicodin tablets to a family member and a friend. In addition, the parole agent allegedly violated speed limits while driving a state vehicle, failed to timely send anti-narcotic urine samples to the laboratory for analysis, failed to adequately document her parole supervision activities, and failed to have access to her safety equipment while on duty.

### Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

### Disposition
The hiring authority determined there was insufficient evidence to sustain the allegation of the theft of medications; however, the hiring authority determined there was sufficient evidence to sustain the remaining allegations. The hiring authority imposed a 36 working-day suspension. The parole agent filed an appeal with the State Personnel Board. The department and the parole agent entered into a settlement agreement. The department reduced the penalty to a 20 working-day suspension and the parole agent withdrew her appeal. The OIG concurred in the settlement agreement reached between the department and the parole agent.

### Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date 2010-03-23 | OIG Case Number 10-0002607-IR | Allegations | Findings | Penalty Dismissal | Rating Sufficient |
|---|---|---|---|---|---|
| | | 1. Dishonesty | 1. Sustained | | |
| | | 2. Insubordination | 2. Sustained | | |
| | | 3. Insubordination | 3. Not Sustained | | |
| | | 4. Dishonesty | 4. Not Sustained | | |
| | | 5. Other | 5. Sustained | | |
| | | 6. Other Failure of Good Behavior | 6. Not Sustained | | |
| | | 7. Neglect of Duty | 7. Sustained | | |

## Facts of the Case

On March 23, 2010, it was alleged that a parole agent failed to obtain prior authorization for absences, failed to maintain his field book, and made false and misleading entries in his field book by representing drug tests were conducted of parolees, when in fact they were not performed.

## Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition

The hiring authority determined there was sufficient evidence to sustain the allegations and dismissed the parole agent. The parole agent did not file and appeal with the State Personnel Board.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2009-04-02** | **10-0002608-IR** | 1. **Neglect of Duty**<br>2. **Neglect of Duty**<br>3. **Use of Force**<br>4. **Use of Force** | 1. **Sustained**<br>2. **Not Sustained**<br>3. **Sustained**<br>4. **Not Sustained** | **Letter of Reprimand** | **Insufficient** |

## Facts of the Case

On April 2, 2009, a sergeant and two officers allegedly used force to handcuff a resistive inmate by pushing the inmate onto a bunk and then failed to document their use of force.

## Investigative Assessment

The Office of Internal Affairs conducted a thorough and complete investigation, although the report was submitted to the hiring authority less than 35 days before the deadline for taking action. The delay did not cause an adverse impact on the case.

## Assessment Questions

- Was the investigation, or subject interview, completed at least 35 days before the deadline to take disciplinary action?

  *The report was completed and submitted to the hiring authority with only 32 days left before the deadline to take disciplinary action.*

## Disposition

The hiring authority determined there was sufficient evidence to sustain the allegations against the sergeant and issued him a letter of reprimand. The sergeant filed an appeal with the State Personnel Board. The department and the sergeant entered into a settlement agreement. The sergeant withdrew his appeal and the department agreed to remove the letter of reprimand after one year in his official personnel file, upon written request. The allegations against the two officers were not sustained. The OIG concurred with the settlement.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date 2010-04-15 | OIG Case Number 10-0002748-IR | Allegations | Findings | Penalty Salary Reduction | Rating Sufficient |
|---|---|---|---|---|---|
| | | 1. Discourteous Treatment | 1. Sustained | | |
| | | 2. Dishonesty | 2. Not Sustained | | |
| | | 3. Other | 3. Not Sustained | | |
| | | 4. Insubordination | 4. Not Sustained | | |
| | | 5. Insubordination | 5. Sustained | | |

## Facts of the Case

On April 15, 2010, an officer allegedly was discourteous and battered another officer. On April 29, 2010, the same officer allegedly was discourteous and insubordinate, and battered a sergeant. The officer was allegedly dishonest when he reported that he could not recall making physical contact with either the officer or the sergeant. It was further alleged that the officer was insubordinate towards an associate warden when he refused to remain in the associate warden's office and write a report.

## Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition

The hiring authority determined there was insufficient evidence to sustain the allegations of dishonesty and battery. However, the hiring authority determined there was sufficient evidence to sustain allegations of discourteous conduct towards the officer, sergeant, and associate warden, and insubordination towards the associate warden. The hiring authority imposed a ten percent salary reduction for seven months, which the officer appealed to the State Personal Board. Prior to the hearing, the hiring authority entered into a settlement agreement reducing the penalty to a ten percent salary reduction for six months in return for the employee withdrawing his appeal. The OIG found the settlement agreement to be reasonable.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date 2009-09-21 | OIG Case Number 10-0002774-IR | Allegations | Findings | Penalty Counseling | Rating Sufficient |
|---|---|---|---|---|---|
| | | 1. Neglect of Duty | 1. Sustained | | |
| | | 2. Failure to Report | 2. Not Sustained | | |

## Facts of the Case

On September 21, 2009, an officer allegedly failed to report that physical force used against an inmate was precipitated by discourteous statements made by another officer. Additionally, it was alleged that the officer failed to properly search a holding cell, which contained institutional mail.

## Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition

The hiring authority determined there was sufficient evidence to sustain the allegation that the officer had failed to properly search a holding cell and served the officer with a letter of instruction.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-06-20 | 10-0002829-IR | 1. Neglect of Duty  2. Neglect of Duty | 1. Sustained  2. Not Sustained | Letter of Reprimand | Insufficient |

## Facts of the Case

On June 20, 2010, an associate warden, a lieutenant, a sergeant, and a psychologist allegedly failed to follow department policies governing cell extractions by not initiating an emergency cell extraction of an inmate who was in the process of physically harming herself.

## Investigative Assessment

The hiring authority failed to submit the request for investigation in a timely manner. The Office of Internal Affairs conducted a thorough investigation, although the report was submitted to the hiring authority less than 35 days before the deadline for taking action.

## Assessment Questions

- Did OIA Central Intake make a determination regarding the case within 30 calendar days?

  *The request for investigation was dated July 28, 2010; however, OIA Central Intake did not make a determination regarding the case until September 1, 2010.*

- Did the department attorney attend investigative interviews for key witnesses to assess witness demeanor and credibility?

  *The department attorney failed to attend subject and key witness investigative interviews to assess witness demeanor and credibility.*

- Was the investigation, or subject interview, completed at least 35 days before the deadline to take disciplinary action?

  *The report was completed and submitted to the hiring authority with only 33 days left before the deadline to take disciplinary action.*

## Disposition

The hiring authority determined there was sufficient evidence to sustain the allegations of neglect of duty and served the sergeant, lieutenant, and associate warden with letters of reprimand. The associate warden retired from state service prior to the disposition of this matter. A letter indicating he retired pending disciplinary action was placed in his official personnel file. The hiring authority determined there was insufficient evidence to sustain the allegation against the psychologist.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2010-06-13** | **10-0003032-IR** | 1. **Neglect of Duty** <br><br> 2. **Use of Force** | 1. **Sustained** <br><br> 2. **Sustained** | **Salary Reduction** | **Sufficient** |

## Facts of the Case
On June 13, 2010, a youth counselor allegedly dragged a ward, who was restrained in handcuffs, across the floor in order to remove the ward's pants and conduct a strip search. The youth counselor also allegedly failed to report his use of force.

## Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition
The hiring authority sustained the allegations against the youth counselor and imposed a 10 percent salary reduction for 12 months. The youth counselor appealed to the State Personal Board. The department settled the case for a ten percent salary reduction for six months. The youth counselor withdrew his appeal. The OIG found the settlement agreement to be reasonable.

## Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2010-07-20** | **10-0003083-IR** | 1. **Neglect of Duty** | 1. **Sustained** | **Letter of Reprimand** | **Sufficient** |

## Facts of the Case
On July 20, 2010, an officer allegedly released an inmate into a unit with inmates from an opposing disruptive group. The inmate was immediately attacked by the opposing inmates.

## Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition
The hiring authority determined there was sufficient evidence to sustain the allegation and served the officer with a letter of reprimand. The officer filed an appeal with the State Personnel Board. The department entered into a settlement agreement with the officer in which he agreed to withdraw his appeal and the department agreed to remove the disciplinary action upon request on, or after, January 22, 2013. The OIG found the settlement agreement to be reasonable.

## Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date 2010-08-17 | OIG Case Number 10-0003084-IR | Allegations 1. Dishonesty 2. Neglect of Duty 3. Other Failure of Good Behavior | Findings 1. No Finding 2. No Finding 3. No Finding | Penalty Other | Rating Sufficient |
|---|---|---|---|---|---|

## Facts of the Case
On August 17, 2010, a parole agent was involved in a vehicle collision. It was subsequently learned that the parole agent had allegedly provided false or misleading statements with regard to the mileage to and from work. The actual distance exceeds the mileage agents are allowed to live from their place of work.

## Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition
The hiring authority elected to non-punitively separate the parole agent by rejecting him on probation, rather than pursue the disciplinary process. The parole agent appealed, but subsequently failed to appear at the pre-hearing settlement conference, resulting in dismissal of the appeal by the State Personnel Board.

## Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date 2010-05-21 | OIG Case Number 10-0003220-IR | Allegations 1. Neglect of Duty 2. Neglect of Duty | Findings 1. Sustained 2. Not Sustained | Penalty Letter of Reprimand | Rating Sufficient |
|---|---|---|---|---|---|

## Facts of the Case
On May 21, 2010, an officer allegedly made comments about an inmate being an informant thereby putting the inmate's safety at risk. The inmate then filed a complaint, which a staff member allegedly gave to the officer. The officer allegedly did not process the complaint.

## Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition
The hiring authority sustained the allegation that the officer made rude and unprofessional comments to an inmate and served the officer with a letter of reprimand. The hiring authority modified the penalty from a letter of reprimand to a letter of instruction after the Skelly hearing. The OIG did not concur with the decision to withdraw the letter of reprimand and issue a letter of instruction.

## Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date 2010-06-19 | OIG Case Number 10-0003223-IR | Allegations | Findings | Penalty Salary Reduction | Rating Sufficient |
|---|---|---|---|---|---|
| | | 1. Discourteous Treatment | 1. Sustained | | |
| | | 2. Other Failure of Good Behavior | 2. Sustained | | |

## Facts of the Case
On June 19, 2010, an off-duty officer allegedly physically assaulted and unlawfully detained his wife during a domestic violence incident.

## Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition
The hiring authority sustained the allegations and imposed a penalty of a 10 percent salary reduction for 18 months. Following the Skelly hearing, the penalty was reduced to a ten percent salary reduction for six months. The OIG did not find the modification to be unreasonable.

## Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date 2010-08-24 | OIG Case Number 10-0003239-IR | Allegations | Findings | Penalty Salary Reduction | Rating Sufficient |
|---|---|---|---|---|---|
| | | 1. Dishonesty | 1. Not Sustained | | |
| | | 2. Discourteous Treatment | 2. Sustained | | |
| | | 3. Discourteous Treatment | 3. Not Sustained | | |
| | | 4. Other Failure of Good Behavior | 4. Not Sustained | | |

## Facts of the Case
On August 24, 2010, an officer allegedly sexually assaulted his adult daughter. He also allegedly brought discredit to the department by wearing his department uniform when arrested. It was also alleged that the officer was discourteous and dishonest while being questioned by outside law enforcement, causing embarrassment to the department. The district attorney declined to file charges on the officer. The officer was also allegedly dishonest during his investigative interview.

## Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition
The hiring authority determined there was insufficient evidence to sustain the allegations of sexual misconduct, discredit to the department when he was arrested in his uniform, and dishonesty. However, the hiring authority sustained the allegation of discourteous conduct while being questioned by outside law enforcement. The hiring authority imposed a penalty of a 10 percent salary reduction for 12 months.

## Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date **2010-07-11** | OIG Case Number **10-0003240-IR** | Allegations 1. **Discourteous Treatment** 2. **Other** 3. **Neglect of Duty** | Findings 1. **Not Sustained** 2. **Not Sustained** 3. **Not Sustained** | Penalty **No Penalty Imposed** | Rating **Insufficient** |
|---|---|---|---|---|---|

## Facts of the Case

An inmate alleged that on July 11, 2010, an officer used profanity towards him which caused the inmate to become angry and as it escalated, the officer forcefully opened a door which struck the inmate. The officer and the inmate then began fighting each other. Later, a sergeant allegedly threatened an inmate who witnessed the fight to get off the yard or he would end up dead. Another sergeant was allegedly present when the threat was made but failed to report the misconduct.

## Investigative Assessment

The hiring authority failed to submit the request for investigation in a timely manner. Also, the Office of Internal Affairs report was submitted to the hiring authority less than 35 days before the deadline for taking action.

## Assessment Questions

- Was the matter referred to the Office of Internal Affairs as soon as reasonably practical, within 45 calendar days of the date of discovery?

  *The date of discovery was July 11, 2010; however, the request for investigation was not dated until August 30, 2010.*

- Did OIA Central Intake make a determination regarding the case within 30 calendar days?

  *The request for investigation was dated August 30, 2010; however, OIA Central Intake did not make a determination regarding the case until October 20, 2010.*

- Within 21 calendar days, did the department attorney make an entry into CMS accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

  *The department attorney was assigned the case on October 26, 2010; however, he did not make an entry into CMS accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time.*

- Was the investigation, or subject interview, completed at least 35 days before the deadline to take disciplinary action?

  *The report was completed and submitted to the hiring authority with only five days left before the deadline to take disciplinary action.*

## Disposition

The hiring authority determined there was insufficient evidence to sustain the allegations.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-07-01 | 10-0003440-IR | 1.    Use of Force | 1.    Not Sustained | No Penalty Imposed | Sufficient |

**Facts of the Case**
It was alleged that on July 1, 2010, an officer pushed an inmate down the stairs and slammed him on the ground during an escort.

**Investigative Assessment**
Overall, the department's investigative process sufficiently complied with policies and procedures.

**Disposition**
The hiring authority found insufficient evidence to sustain the allegation.

**Disciplinary Assessment**
Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-08-18 | 10-0003456-IR | 1. **Neglect of Duty**<br><br>2. **Neglect of Duty** | 1. **Not Sustained**<br><br>2. **Sustained** | **Suspension** | **Insufficient** |

## Facts of the Case

On August 18, 2010, a lieutenant and a sergeant allegedly failed to document a mental health concern regarding an inmate before housing the inmate with another inmate. The lieutenant and sergeant also allegedly failed to make proper notifications concerning their mental health concerns. As a result, the inmate was allegedly sexually assaulted by her cellmate. It was also alleged that a psychologist failed to document her concerns regarding the inmate.

## Investigative Assessment

The department did not complete the investigation with due diligence. The Office of Internal Affairs conducted a thorough investigation, although the report was submitted to the hiring authority less than 35 days before the deadline for taking action.

## Assessment Questions

- No later than 21 calendar days following assignment of the case, did the department attorney contact the assigned special agent and the OIG monitor to discuss the elements of a thorough investigation of the alleged misconduct?

  *Although the supervising attorney contacted the Office of Internal Affairs and the OIG monitor within 21 days of his assignment, the assigned department attorney did not follow-up with either the assigned special agent or the OIG monitor to schedule the initial case conference for over two months after his assignment to the case.*

- Upon completion of the investigation, was a copy of the investigative report timely forwarded to the OIG to allow for feedback before it was forwarded to the hiring authority or prosecuting agency?

  *The draft investigative report was provided to the Office of the Inspector General on August 11, 2011, eight days before the deadline for taking disciplinary action against the sergeant and lieutenant.*

- Upon completion of the investigation, was a copy of the investigative report timely forwarded to the department attorney to allow for feedback before it was forwarded to the hiring authority or prosecuting agency?

  *The draft investigative report was provided to the department attorney on August 11, 2011, eight days before the deadline for taking disciplinary action against the sergeant and lieutenant.*

- Within 21 calendar days following receipt of the investigative report, did the department attorney review the report and provide appropriate substantive feedback addressing the thoroughness and clarity of the report?

  *Although the department attorney reviewed the investigative report, the department attorney did not provide any feedback to the assigned special agent.*

- Did the department provide written confirmation summarizing all critical discussions about the investigative report to the special agent with a copy to the OIG?

  *Although the department attorney reviewed the investigative report, the department attorney did not provide any feedback to the assigned special agent or the Office of the Inspector General.*

- Was the Office of Internal Affairs investigation, or subject only interview, conducted with due diligence?

  *The special agent was assigned January 28, 2011, but did not begin the investigation until July 8, 2011. Thereafter, the investigation was completed promptly; however, the investigation was not completed until approximately one week before the deadline for taking disciplinary action against the sergeant and lieutenant.*

- Was the investigation, or subject interview, completed at least 35 days before the deadline to take disciplinary action?

  *The report was completed and submitted to the hiring authority with only seven days left before the deadline to take disciplinary action.*

## Disposition

The hiring authority determined there was sufficient evidence to sustain the allegation against the sergeant and imposed a two working-day suspension. The hiring authority determined there was also sufficient evidence to sustain the allegations against the psychologist and imposed a ten working-day suspension. The hiring authority determined there was insufficient evidence to sustain the allegation against the lieutenant. The sergeant filed an appeal with the State Personnel Board, following which the department and sergeant reached a settlement agreement. The department issued the sergeant a letter of reprimand and in exchange, the sergeant withdrew his appeal. The OIG concurred with the settlement in this case.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date 2010-10-23 | OIG Case Number 10-0003651-IR | Allegations 1. Other | Findings 1. Not Sustained | Penalty No Penalty Imposed | Rating Sufficient |
|---|---|---|---|---|---|

### Facts of the Case

On October 23, 2010, an off-duty parole agent was allegedly involved in a verbal dispute with her live-in companion that escalated into a physical altercation. The agent allegedly grabbed the victim by the throat and pointed a handgun at the victim.

### Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

### Disposition

The hiring authority determined there was insufficient evidence to sustain the allegations.

### Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date 2010-08-13 | OIG Case Number 10-0003671-IR | Allegations | Findings | Penalty Salary Reduction | Rating Sufficient |
|---|---|---|---|---|---|
| | | 1. Neglect of Duty | 1. Sustained | | |
| | | 2. Neglect of Duty | 2. Not Sustained | | |
| | | 3. Dishonesty | 3. Not Sustained | | |

### Facts of the Case

On August 13, 2010, an officer allegedly left his assigned post, entered an administrative segregation unit and released an inmate from his cell without placing him in restraints, thereby jeopardizing institutional safety and security. The officer also allegedly denied knowledge of the incident when questioned by a lieutenant.

### Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

### Disposition

The hiring authority sustained the neglect of duty allegation regarding the release of the inmate without proper restraints. The remaining allegations were not sustained. The hiring authority imposed a 10 percent salary reduction for 20 months. The officer filed an appeal with the State Personnel Board. The department and the officer entered into a settlement agreement in which the department modified the salary reduction to a 10 percent for 12 months and the officer withdrew his appeal. The OIG concurred with the settlement agreement.

### Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2010-09-09** | **10-0003794-IR** | 1. **Discourteous Treatment** <br> 2. **Discourteous Treatment** | 1. **Sustained** <br> 2. **Not Sustained** | **Letter of Reprimand** | **Sufficient** |

## Facts of the Case

On September 9, 2010, two officers allegedly threatened medical staff in retaliation for medical staff making complaints of misconduct against the officers. The officers allegedly used profanity towards medical staff.

## Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition

The hiring authority determined there was sufficient evidence to sustain the allegation of discourteous conduct against one officer. However, the officer retired prior to the completion of the investigation; therefore, disciplinary action was not taken. A letter indicating he retired under adverse circumstances was placed in his official personnel file. The hiring authority determined there was insufficient evidence to sustain any allegations against the other officer.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2010-08-21** | **10-0003795-IR** | 1. **Use of Force** <br> 2. **Dishonesty** <br> 3. **Neglect of Duty** | 1. **Not Sustained** <br> 2. **Not Sustained** <br> 3. **Sustained** | **Counseling** | **Sufficient** |

## Facts of the Case

It was alleged that on August 21, 2010, an officer used unnecessary force on an inmate by pushing the inmate in the back as the inmate was walking away from the officer. In addition, it was alleged that the officer wrote a false report alleging that the inmate had assaulted him.

## Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition

The hiring authority sustained the allegation of neglect of duty and issued a letter of instruction to the officer instructing him to comply with department policies concerning use of force, alarm procedures, and reporting requirements. The hiring authority found there was insufficient evidence to sustain the remaining allegations.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2010-09-27** | **10-0003914-IR** | 1. **Use of Force** 2. **Neglect of Duty** 3. **Discourteous Treatment** | 1. **Not Sustained** 2. **Not Sustained** 3. **Not Sustained** | **No Penalty Imposed** | **Sufficient** |

## Facts of the Case
On September 27, 2010, an officer allegedly slammed an inmate into a wall and held the inmate's handcuffed hands so high as to cause pain. Also, the officer was allegedly discourteous to the inmate by using foul language. It was also alleged that a lieutenant failed to take appropriate action when he received the inmate's complaint.

## Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition
The hiring authority determined there was insufficient evidence to sustain the allegations against the officer and the lieutenant.

## Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date 2010-07-13 | OIG Case Number 10-0003919-IR | Allegations 1. Discourteous Treatment 2. Dishonesty | Findings 1. Not Sustained 2. Not Sustained | Penalty No Penalty Imposed | Rating Insufficient |
|---|---|---|---|---|---|

## Facts of the Case

On July 13, 2010, an officer was allegedly discourteous to inmates by verbally harassing them and cutting the cords off of one inmate's appliances. It was further alleged that the officer was dishonest when he reported that an inmate spit on him.

## Investigative Assessment

The hiring authority failed to timely submit the case to the Office of Internal Affairs. The Office of Internal Affairs failed to make a timely decision regarding whether to open the case for investigation. The department also failed to complete the investigation in a timely manner. The report was submitted to the hiring authority less than 35 days before the deadline for taking action. In addition, the department attorney failed to timely assess the deadline for taking disciplinary action and failed to attend key witness and subject interviews.

## Assessment Questions

- Was the matter referred to the Office of Internal Affairs as soon as reasonably practical, within 45 calendar days of the date of discovery?

  *The date of discovery was September 24, 2010. The date of referral was November 10, 2010, which is 47 days after discovery.*

- Did OIA Central Intake make a determination regarding the case within 30 calendar days?

  *The request date was November 10, 2010. OIA Central Intake made its decision on December 22, 2010, which is 42 days after the request.*

- Within 21 calendar days, did the department attorney make an entry into CMS accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

  *The department attorney was assigned January 3, 2011; however, the department attorney did not make an entry into CMS regarding the date of reported incident, date of discovery or deadline for taking disciplinary action until February 23, 2011, which is 51 days after assignment.*

- Did the department attorney attend investigative interviews for key witnesses to assess witness demeanor and credibility?

  *The department attorney did not attend any interviews, including the subject interview.*

- Was the investigation, or subject interview, completed at least 35 days before the deadline to take disciplinary action?

  *The report was completed and submitted to the hiring authority with only 15 days left before the deadline to take disciplinary action.*

## Disposition

The hiring authority found there was insufficient evidence to sustain the allegations.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date 2010-08-29 | OIG Case Number 10-0003921-IR | Allegations | Findings | Penalty No Penalty Imposed | Rating Insufficient |
|---|---|---|---|---|---|
| | | 1. Use of Force | 1. Not Sustained | | |
| | | 2. Failure to Report | 2. Not Sustained | | |
| | | 3. Discourteous Treatment | 3. Not Sustained | | |
| | | 4. Misuse of Authority | 4. Not Sustained | | |

## Facts of the Case

On August 29, 2010, an officer allegedly used unreasonable force by slamming an inmate into a wall causing the inmate to strike her head. The officer was allegedly discourteous to the inmate by using foul language toward the inmate. It was further alleged that the officer, along with two other officers, failed to report the use of force. Two sergeants also allegedly failed to report the use of force, and one of the sergeants was allegedly discourteous toward an inmate by making sarcastic comments toward the inmate.

## Investigative Assessment

The Office of Internal Affairs failed to make a timely decision regarding the case after submission by the hiring authority. Further, the Office of Internal Affairs failed to complete the investigation in a timely manner since the investigation was completed five days before the deadline for taking disciplinary action. However, the Office of Internal Affairs conducted a thorough investigation.

## Assessment Questions

- Did OIA Central Intake make a determination regarding the case within 30 calendar days?

  *The Office of Internal Affairs received the matter on November 3, 2010. OIA Central Intake made its decision on December 29, 2010.*

- Within 21 calendar days, did the department attorney make an entry into CMS accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

  *The department attorney was assigned January 5, 2011, but did not enter into CMS the assessment of the date of incident, date of discovery, or deadline for taking disciplinary action until February 23, 2011, which is 49 calendar days.*

- No later than 21 calendar days following assignment of the case, did the department attorney contact the assigned special agent and the OIG monitor to discuss the elements of a thorough investigation of the alleged misconduct?

  *The department attorney was assigned January 5, 2011. Although the department attorney responded to contact from the OIG, the department attorney did not affirmatively contact the assigned special agent within 21 calendar days of case assignment.*

- Did the department attorney attend investigative interviews for key witnesses to assess witness demeanor and credibility?

  *The department attorney did not attend any interviews, including subject interviews.*

- Was the Office of Internal Affairs investigation, or subject only interview, conducted with due diligence?

  *The special agent received the case file on February 9, 2011. The initial case conference took place on February 23, 2011. Although the special agent reviewed personnel files on February 24, 2011, the agent did not begin any further investigation until June 15, 2011. However, the special agent subsequently conducted the remainder of the investigation with due diligence.*

- Was the investigation, or subject interview, completed at least 35 days before the deadline to take disciplinary action?

  *The report was completed and submitted to the hiring authority with only five days left before the deadline to take disciplinary action.*

## Disposition

The hiring authority found there was insufficient evidence to sustain the allegations.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date 2010-12-02 | OIG Case Number 11-0000180-IR | Allegations 1. Contraband 2. Over-familiarity 3. Sexual Misconduct | Findings 1. Not Sustained 2. Sustained 3. Not Sustained | Penalty Other | Rating Sufficient |
|---|---|---|---|---|---|

### Facts of the Case
On December 2, 2010, a California Department of Forestry and Fire Protection (CAL FIRE) captain was allegedly bringing contraband into the secured area for an inmate. It was also alleged that the captain was having a sexual relationship with the inmate.

### Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

### Disposition
The department jointly investigated the allegations with CAL FIRE, who determined there was sufficient evidence to sustain the allegation of over-familiarity, but did not find sufficient evidence to sustain the allegations of providing contraband to inmates or having a sexual relationship with an inmate. Since the subject was not a department employee, the department did not take disciplinary action. Any disciplinary action was imposed by CAL FIRE.

### Disciplinary Assessment
The department complied with policies and procedures.

| Incident Date 2010-10-18 | OIG Case Number 11-0000249-IR | Allegations 1. Failure to Report 2. Neglect of Duty 3. Neglect of Duty 4. Failure to Report | Findings 1. Sustained 2. Sustained 3. Not Sustained 4. Not Sustained | Penalty Dismissal | Rating Sufficient |
|---|---|---|---|---|---|

### Facts of the Case
On October 18, 2010, a lieutenant allegedly arranged and sanctioned a fight between two wards. It was further alleged that five officers observed the fight yet failed to report their observations.

### Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

### Disposition
The hiring authority sustained the allegations against the lieutenant and one of the officers. The lieutenant resigned prior to the completion of the investigation. The hiring authority imposed a penalty of five percent salary reduction for six months for one officer. The hiring authority determined that there was insufficient evidence to sustain the allegations against the other four officers. After a Skelly hearing, the hiring authority revoked the five percent salary reduction taken against the first officer and instead issued letter of instruction. The OIG concurred with the hiring authority's decision to modify the officer's penalty.

### Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-09-23 | 11-0000360-IR | 1.  Other Failure of Good Behavior | 1.  Not Sustained | No Penalty Imposed | Sufficient |

**Facts of the Case**

On September 23, 2010, an off-duty sergeant allegedly entered her ex-boyfriend's home without permission. An argument ensued and the sergeant allegedly scratched and hit her ex-boyfriend. Outside law enforcement officers responded and arrested the sergeant.

**Investigative Assessment**

Overall, the department's investigative process sufficiently complied with policies and procedures.

**Disposition**

The hiring authority determined there was insufficient evidence to sustain the allegation.

**Disciplinary Assessment**

Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-11-27 | 11-0000366-IR | 1.  Other Failure of Good Behavior | 1.  Sustained | Salary Reduction | Sufficient |

**Facts of the Case**

On November 27, 2010, an off-duty officer allegedly pushed his 17-year-old son and grabbed his 19-year-old daughter by the throat.

**Investigative Assessment**

Overall, the department's investigative process sufficiently complied with policies and procedures.

**Disposition**

The hiring authority sustained the allegation that the officer failed to engage in good behavior and imposed a ten percent salary reduction for six months.

**Disciplinary Assessment**

Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2010-11-20** | **11-0000608-IR** | 1. **Neglect of Duty** <br> 2. **Dishonesty** <br> 3. **Neglect of Duty** | 1. **Sustained** <br> 2. **Unfounded** <br> 3. **Unfounded** | **Counseling** | **Sufficient** |

## Facts of the Case
On November 20, 2010, two sergeants allegedly completed an advisement of rights form regarding an inmate complaint that contained inaccurate information and the forged initials of an officer. A lieutenant allegedly failed to comply with the officer's due process rights by questioning the officer without representation.

## Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition
The hiring authority sustained the allegation against the lieutenant and served him with a letter of instruction. The hiring authority determined that there was insufficient evidence to sustain the allegations against the sergeants.

## Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2010-10-12** | **11-0000750-IR** | 1. **Other** <br> 2. **Use of Force** | 1. **Not Sustained** <br> 2. **Not Sustained** | **No Penalty Imposed** | **Sufficient** |

## Facts of the Case
It was alleged that on October 12, 2010, a lieutenant grabbed a ward by the face and hit him in order to retrieve suspected marijuana from the ward's mouth. It was further alleged that the lieutenant failed to properly report this use of force. Additionally, it was alleged that two youth counselors did not report the use of force they observed used by the lieutenant.

## Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition
The hiring authority determined there was insufficient evidence to sustain the allegations.

## Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date 2010-12-19 | OIG Case Number 11-0000896-IR | Allegations | Findings | Penalty No Penalty Imposed | Rating Insufficient |
|---|---|---|---|---|---|
| | | 1. Dishonesty | 1. Unfounded | | |
| | | 2. Failure to Report | 2. Unfounded | | |
| | | 3. Use of Force | 3. Unfounded | | |
| | | 4. Discourteous Treatment | 4. Unfounded | | |

## Facts of the Case

On December 19, 2010, an officer allegedly used unnecessary force by pushing, grabbing, and body slamming an inmate causing injury. A second officer allegedly punched the inmate in the right eye area and called him a derogatory term. These two officers along with a third officer allegedly coordinated an effort to not report the unnecessary use of force.

## Investigative Assessment

The Office of Internal Affairs failed to make a timely determination regarding the case after receiving the case from the hiring authority. Also the Office of Internal Affairs report was submitted to the hiring authority less than 35 days before the deadline for taking action.

## Assessment Questions

- Did OIA Central Intake make a determination regarding the case within 30 calendar days?

  *The hiring authority requested an investigation on January 14, 2011. The Office of Internal Affairs made a determination to open an investigation on March 16, 2011.*

- Was the Office of Internal Affairs investigation, or subject only interview, conducted with due diligence?

  *There was no investigative activity between May 18, 2011 and September 21, 2011: approximately four months.*

- Was the investigation, or subject interview, completed at least 35 days before the deadline to take disciplinary action?

  *The report was completed and submitted to the hiring authority with only 18 days left before the deadline to take disciplinary action.*

## Disposition

The hiring authority determined that the allegations were unfounded against all three officers.

## Disciplinary Assessment

The department complied with policies and procedures.

| Incident Date 2011-01-25 | OIG Case Number 11-0000966-IR | Allegations 1. Neglect of Duty 2. Dishonesty | Findings 1. Not Sustained 2. Not Sustained | Penalty No Penalty Imposed | Rating Sufficient |
|---|---|---|---|---|---|

### Facts of the Case
It was alleged that on January 25, 2011, three officers failed to provide an inmate with access to emergency medical care after being told of his inability to speak. Additionally, it was alleged that one of the officers falsified records which documented the emergency medical response.

### Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

### Disposition
The hiring authority determined there was insufficient evidence to sustain the allegations against the officers.

### Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date 2010-12-15 | OIG Case Number 11-0000967-IR | Allegations 1. Discourteous Treatment 2. Dishonesty | Findings 1. Sustained 2. Not Sustained | Penalty Salary Reduction | Rating Sufficient |
|---|---|---|---|---|---|

### Facts of the Case
On December 15, 2010, an officer allegedly entered an inmate's cell and in a fit of rage deliberately threw personal items belonging to the inmate onto the cell floor. It was also alleged that the officer was dishonest in his report of the incident.

### Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

### Disposition
The hiring authority sustained the neglect of duty allegation and imposed a 10 percent salary reduction for 12 months. The hiring authority and the officer entered into a settlement agreement regarding this case as well as another case, whereby the penalty was modified to a 5 percent salary reduction for 18 months. The officer agreed not to file an appeal with the State Personnel Board. The OIG concurred with the settlement that was reached.

### Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2011-02-02** | **11-0001077-IR** | 1. **Over-familiarity** 2. **Dishonesty** 3. **Neglect of Duty** | 1. **Sustained** 2. **Sustained** 3. **Sustained** | **Dismissal** | **Sufficient** |

## Facts of the Case

On February 2, 2011, it was alleged that a medical clerk was overly familiar with a parolee. Specifically, the clerk was reportedly living with a parolee and was dishonest and uncooperative with local law enforcement concerning the parolee's whereabouts.

## Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition

The hiring authority sustained the over-familiarity allegation; however, the clerk was only a temporary employee of the department, thus no discipline could be taken against her. However, the clerk will not be rehired by the institution and a letter will be placed in her official personnel file indicating the outcome of the investigation and the recommendation for dismissal.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date **2010-09-28** | OIG Case Number **11-0001078-IR** | Allegations | Findings | Penalty **No Penalty Imposed** | Rating **Insufficient** |
|---|---|---|---|---|---|
| | | 1. **Use of Force** | 1. **Unfounded** | | |
| | | 2. **Use of Force** | 2. **Not Sustained** | | |
| | | 3. **Use of Force** | 3. **No Finding** | | |

## Facts of the Case

On September 28, 2010, a sergeant and six officers allegedly kicked and punched an inmate during a transport. Another sergeant allegedly observed the incident but failed to report the misconduct.

## Investigative Assessment

This investigation was delayed by the fact that it involved multiple subjects from two institutions. The Office of Internal Affairs conducted a thorough investigation, although the report was submitted to the hiring authorities less than 35 days before the deadline for taking action.

## Assessment Questions

- Was the matter referred to the Office of Internal Affairs as soon as reasonably practical, within 45 calendar days of the date of discovery?

  *The department received the inmate's written complaint on October 18, 2010. The complaint was forwarded to another institution and received on November 9, 2010. The request for investigation was dated February 17, 2011.*

- Did OIA Central Intake make a determination regarding the case within 30 calendar days?

  *The request for investigation was dated February 17, 2011; however, OIA Central Intake did not hear the case and make a decision until April 13, 2011.*

- Was the investigation, or subject interview, completed at least 35 days before the deadline to take disciplinary action?

  *The deadline for taking disciplinary action was September, 27, 2011; however, the investigative files were not delivered to the hiring authorities until September 20, 2011, and September 21, 2011.*

## Disposition

The hiring authority determined that there was insufficient evidence to sustain the allegations.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date 2011-04-18 | OIG Case Number 11-0001091-IR | Allegations 1.   Use of Force | Findings 1.   Exonerated | Penalty No Penalty Imposed | Rating Sufficient |
|---|---|---|---|---|---|

## Facts of the Case

On April 13, 2011, three inmates assaulted another inmate while on an exercise yard at the institution. Officers repeatedly ordered the inmates to stop fighting. The yard tower officer ordered all inmates on the yard to "get down" over the public address system; however, the assault continued. The tower officer fired one less-than-lethal rubber projectile toward the area around the fighting inmates but this action did not stop the assault. The tower officer then shot one .223 rifle round, striking one of the assailants. This stopped the assault and the involved inmates got down onto the ground. Two inmate-manufactured weapons were recovered in the area of assault. One inmate received approximately 27 stab wounds and was treated at a local hospital. The inmate who was shot with the rifle round was transported by helicopter to a nearby trauma center and survived. Both inmates were returned to the institution after receiving treatment.

## Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition

The department's independent Deadly Force Review Board found no violation of department policy, and the hiring authority subsequently exonerated the officer. The OIG concurred in the determination by the board.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date 2011-01-21 | OIG Case Number 11-0001297-IR | Allegations 1.   Over-familiarity | Findings 1.   Sustained | Penalty Dismissal | Rating Sufficient |
|---|---|---|---|---|---|

## Facts of the Case

On January 21, 2011, it was alleged that a materials and stores supervisor was involved in an overly familiar relationship with a parolee who had previously worked for her while he was incarcerated at the institution.

## Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition

The hiring authority sustained the allegation and determined that the appropriate penalty was dismissal. However, the materials and stores supervisor resigned prior to the completion of the investigation. A letter was placed in her official personnel file indicating she resigned under adverse circumstances.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2011-03-09** | **11-0001317-IR** | 1. **Contraband**<br><br>2. **Over-familiarity** | 1. **Sustained**<br><br>2. **Sustained** | **Dismissal** | **Sufficient** |

### Facts of the Case
On March 9, 2011, it was alleged that an officer was engaged in a sexual relationship with an inmate.

### Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

### Disposition
The hiring authority sustained the allegations and served the officer with a notice of dismissal. However, the officer resigned before the disciplinary action took effect. A letter indicating the officer resigned pending disciplinary action was placed in her official personnel file.

### Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2011-03-21** | **11-0001319-IR** | 1. **Over-familiarity**<br><br>2. **Contraband** | 1. **Sustained**<br><br>2. **Sustained** | **Dismissal** | **Sufficient** |

### Facts of the Case
On March 21, 2011, it was alleged that an officer was engaged in an overly familiar relationship with an inmate. A search of the inmate's property revealed the phone number of the officer contained in the inmate's phone book.

### Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

### Disposition
The hiring authority sustained the allegation and determined that dismissal was the appropriate penalty. However, the officer resigned prior to the completion of the investigation; therefore, disciplinary action was not taken. A letter indicating that she resigned under adverse circumstances was placed in her official personnel file.

### Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2011-03-03** | **11-0001372-IR** | 1. **Contraband**<br><br>2. **Over-familiarity** | 1. **Sustained**<br><br>2. **Sustained** | **Dismissal** | **Sufficient** |

### Facts of the Case
On March 3, 2011, it was reported that an officer was allegedly engaged in an overly familiar relationship with an inmate and exchanged written correspondence with the inmate, engaged in a sexual relationship with the inmate, and had provided a music CD and jewelry to the inmate.

### Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

### Disposition
The hiring authority sustained the allegations and served the officer with a notice of dismissal. However, the officer resigned before the dismissal took effect. A letter indicating the officer resigned pending disciplinary action was placed in the official personnel file.

### Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2011-04-17** | **11-0001374-IR** | 1. **Discourteous Treatment**<br><br>2. **Contraband**<br><br>3. **Neglect of Duty** | 1. **Sustained**<br><br>2. **Sustained**<br><br>3. **No Finding** | **Dismissal** | **Sufficient** |

### Facts of the Case
On April 17, 2011, a sergeant allegedly brought her personal mobile phone into the institution and showed officers sexually explicit pictures of herself that were on the mobile phone. In addition, the sergeant allegedly made sexual comments to the officers.

### Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

### Disposition
The hiring authority sustained the allegations and determined that the appropriate penalty was dismissal. However, the sergeant resigned prior to the completion of the investigation; therefore, disciplinary action was not taken. A letter indicating she resigned under adverse circumstances was placed in her official personnel file.

### Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date 2010-06-12 | OIG Case Number 11-0001672-IR | Allegations<br>1. Failure to Report | Findings<br>1. Sustained | Penalty<br>Other | Rating<br>Sufficient |
|---|---|---|---|---|---|

### Facts of the Case
On June 12, 2010, it was alleged that an officer failed to report a use of force that he witnessed when other officers and a lieutenant restrained an inmate who was attempting to conceal contraband.

### Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

### Disposition
The hiring authority determined there was sufficient evidence to support the allegation and ordered that the officer receive training in use-of-force reporting obligations.

### Disciplinary Assessment
The department complied with policies and procedures.

| Incident Date 2011-03-21 | OIG Case Number 11-0001689-IR | Allegations<br>1. Contraband<br>2. Over-familiarity<br>3. Neglect of Duty | Findings<br>1. Sustained<br>2. Sustained<br>3. Sustained | Penalty<br>Dismissal | Rating<br>Sufficient |
|---|---|---|---|---|---|

### Facts of the Case
On March 21, 2011, it was alleged that a supervising cook was receiving packages containing suspected narcotics, tobacco, and mobile phones from inmates' relatives and delivering them to the inmates for personal gain.

### Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

### Disposition
The hiring authority sustained the allegations and dismissed the supervising cook. Prior to the effective date of the dismissal, the department and the cook entered into a settlement agreement whereby the supervising cook agreed to resign in lieu of dismissal. The supervising cook also agreed to not seek future employment with the department. The OIG concurred with the settlement.

### Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-10-20 | 11-0001690-IR | 1. Other Failure of Good Behavior<br>2. Misuse of State Equipment or Property<br>3. Other<br>4. Dishonesty<br>5. Misuse of Authority<br>6. Neglect of Duty | 1. Sustained<br>2. Sustained<br>3. Sustained<br>4. Sustained<br>5. Sustained<br>6. Sustained | Dismissal | Sufficient |

## Facts of the Case

It was alleged on October 20, 2010, that an officer visited numerous pharmacies on 42 occasions over a 12-month period in an effort to unlawfully obtain prescription pain medication. Additionally, it was alleged that on some of the occasions, the officer wore his uniform in an attempt to facilitate obtaining prescriptions. Finally, it was alleged that the officer filed false police reports related to alleged thefts of his prescription medications.

## Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition

The hiring authority determined there was sufficient evidence to sustain the allegations and dismissed the officer. The officer did not file an appeal with the State Personnel Board.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-02-01 | 11-0001691-IR | 1. Other<br>2. Other Failure of Good Behavior<br>3. Dishonesty | 1. Not Sustained<br>2. Sustained<br>3. Sustained | Counseling | Sufficient |

## Facts of the Case

On February 1, 2011, a case records analyst was contacted by an outside law enforcement officer for a traffic violation. Upon contact with her, the officer smelled marijuana and saw an open container of beer in the back. The analyst indicated that she was somewhere where marijuana was being smoked and her car windows were down which explained why it smelled like marijuana. When she exited the car, she attempted to conceal a small bag of marijuana. The analyst's cousin, a legitimate holder of a medical marijuana card, subsequently claimed responsibility for the marijuana.

## Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition

The hiring authority determined that there was sufficient evidence to sustain the allegation that the analyst was in possession of an open container and that she had initially been evasive when questioned by police, and served the analyst with a letter of instruction.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date **2011-02-28** | OIG Case Number **11-0001862-IR** | Allegations<br>1. Neglect of Duty | Findings<br>1. Not Sustained | Penalty **No Penalty Imposed** | Rating **Sufficient** |
|---|---|---|---|---|---|

## Facts of the Case
It was alleged that on February 28, 2011, an officer failed to perform a required 30-minute welfare check on an inmate who had committed suicide.

## Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition
The hiring authority determined there was insufficient evidence to sustain the allegation.

## Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date **2009-09-01** | OIG Case Number **11-0002167-IR** | Allegations<br>1. Other Failure of Good Behavior<br>2. Other<br>3. Contraband<br>4. Over-familiarity | Findings<br>1. Sustained<br>2. Sustained<br>3. Sustained<br>4. Sustained | Penalty **Dismissal** | Rating **Sufficient** |
|---|---|---|---|---|---|

## Facts of the Case
It was alleged that from September 2009 through July 2011, an officer was introducing tobacco, drugs, and mobile phones into an institution. Subsequently, the officer was arrested after picking up a package containing marijuana, from a post office box, that was intended for delivery to an inmate.

## Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition
The hiring authority sustained the allegations and dismissed the officer. However, the officer resigned before the disciplinary action was taken. A letter indicating the officer resigned under adverse circumstances was placed in his official personnel file.

## Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2010-10-01** | **11-0002223-IR** | 1.   Over-familiarity | 1.   Sustained | **Dismissal** | **Sufficient** |

### Facts of the Case
It was alleged that from October 2010 through June 2011, a supervising cook was involved in an overly familiar relationship with an inmate by providing personal information and exchanging cards and letters with the inmate.

### Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

### Disposition
The hiring authority sustained the allegations and dismissed the supervising cook. Prior to the effective date of the dismissal, the department and the cook entered into a settlement agreement whereby the cook agreed to resign in lieu of dismissal. The cook also agreed to not seek future employment with the department and to waive all rights in regards to her appeal. The OIG concurred with the settlement.

### Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2011-08-01** | **11-0002611-IR** | 1.   Contraband<br><br>2.   Over-familiarity | 1.   Sustained<br><br>2.   Sustained | **No Penalty Imposed** | **Sufficient** |

### Facts of the Case
On August 1, 2011, it was alleged that an officer was furnishing mobile phones, mobile phone chargers, and tobacco to inmates for personal gain.

### Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

### Disposition
The hiring authority determined there was sufficient evidence to sustain the allegations and determined that dismissal was the appropriate penalty. However, the officer resigned prior to the completion of the investigation; therefore, disciplinary action was not taken. A letter indicating he resigned under adverse circumstances was placed in his official personnel file.

### Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

# SOUTH REGION

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2009-05-08 | 09-0002583-IR | 1. Discourteous Treatment<br><br>2. Other Failure of Good Behavior<br><br>3. Dishonesty<br><br>4. Other Failure of Good Behavior<br><br>5. Misuse of Authority | 1. Not Sustained<br><br>2. Not Sustained<br><br>3. Not Sustained<br><br>4. Sustained<br><br>5. Not Sustained | Salary Reduction | Sufficient |

## Facts of the Case

On May 8, 2009, a parole agent allegedly drove recklessly, chased her husband's vehicle, and tried to run him off the road. The parole agent then failed to stop for a police officer when the police officer, who was using his lights and siren, ordered her to stop. Once the parole agent stopped, she ignored the police officer's instructions to remain at the scene and left the area. She also allegedly attempted to punch a private citizen. When questioned, the parole agent allegedly lied to outside law enforcement officers and was also discourteous to them when she demanded a copy of her arrest report. She also allegedly attempted to avoid arrest by informing them that she worked for the department and also interfered with the arrest of her husband.

## Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition

The hiring authority determined there was sufficient evidence that the parole agent failed to exhibit good behavior by being convicted of vehicle code violations and also that she interfered in the arrest of her husband. The other allegations were not sustained. The hiring authority imposed a five percent salary reduction for six months. Following a Skelly hearing, the department and parole agent entered into a settlement agreement. The parole agent's penalty was reduced to a five percent salary reduction for three months. The OIG concurred with the settlement agreement.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date 2009-12-03 | OIG Case Number 10-0000541-IR | Allegations 1.  Neglect of Duty | Findings 1.  Sustained | Penalty Salary Reduction | Rating Insufficient |
|---|---|---|---|---|---|

## Facts of the Case

On December 3, 2009, it was alleged that two officers were negligent when they failed to provide immediate life saving measures to a non-responsive inmate and instead allowed other inmates to perform CPR. It was further alleged that the officers were also neglectful when they failed to control the other inmates, left the scene of the incident, and failed to provide security coverage for responding staff.

## Investigative Assessment

The Office of Internal Affairs conducted a thorough investigation; however, it was submitted to the hiring authority with less than 35 days before disciplinary action had to be taken. Aside from attending the initial case conference, the department attorney failed to provide legal advice to the investigator during the pendency of the investigation.

## Assessment Questions

- Did the department attorney attend investigative interviews for key witnesses to assess witness demeanor and credibility?

  *Eight interviews were conducted in this case, including two subject interviews. The department attorney did not attend any interviews.*

- Within 21 calendar days following receipt of the investigative report, did the department attorney review the report and provide appropriate substantive feedback addressing the thoroughness and clarity of the report?

  *There is no indication in the case management system that the department attorney reviewed the report or provided feedback to the investigator.*

- Was the Office of Internal Affairs investigation, or subject only interview, conducted with due diligence?

  *The special agent was assigned case responsibility in April 2010; however, the agent did not start working on the case until August 2010. The special agent did note in the case management system he was also working on two higher priority cases as well as other cases during this time.*

- Was the investigation, or subject interview, completed at least 35 days before the deadline to take disciplinary action?

  *The investigation was completed and submitted to the hiring authority with less than 21 days before the deadline to take disciplinary action.*

- Did the department attorney cooperate with and provide continual real-time consultation with the OIG throughout the investigative phase?

  *The department attorney did not consult with the OIG during the course of the investigation, nor did the department attorney consult with the special agent.*

## Disposition

The hiring authority determined there was sufficient evidence to sustain the allegations against both officers. Both officers received a salary reduction of 10 percent for 24 months. One of the officers entered into a settlement agreement for a ten percent salary reduction for six months. The other officer pursued an appeal with the State Personnel Board. Her penalty of a 10 percent salary reduction for 24 months was sustained by the State Personnel Board.

## Disciplinary Assessment

Although the hiring authority failed to consult with the OIG regarding a settlement agreement entered into with one of the officers, policies and procedures were complied with in all other respects. Additionally, the department attorney was unprepared for the State Personnel Board hearing and failed to fully represent the department's best interest before the State Personnel Board. As a result, only one of the four allegations was sustained by the State Personnel Board; however, the penalty was upheld.

## Assessment Questions

- Was the disciplinary action provided to the OIG for review appropriately drafted as described in the DOM?

  *The OIG made recommendations to add additional facts to the disciplinary action.*

- Did a department attorney attend the Skelly hearing, unless precluded by a legitimate unavoidable scheduling conflict, as required?

  *The department attorney attended one of the Skelly hearings telephonically. He did not attend the second Skelly hearing. According to his notes in the case management system, the department attorney claims he was only provided with two hours notice of the hearing, and therefore could not attend. He does not claim that he had a calendar conflict. The department attorney did not attend the Skelly hearing telephonically, nor did he arrange for another department attorney to attend the hearing on his behalf.*

- Did the department file a written pre-hearing/settlement conference statement with the State Personnel Board containing all required information including, but not limited to, a summary of stipulated facts, time estimate, number of witness with a brief statement of expected testimony, list of documentary evidence, and statement of significant evidentiary issues?

  *Although the department attorney filed a pre-hearing settlement conference statement with the State Personnel Board, it was incomplete. The statement did not list the appellant as a witness. Nor did it list the second officer as a witness. Furthermore, the statement listed two special agents as witnesses who had no, or minimal, involvement with the investigation and failed to list the primary special agent who was in charge of the investigation. Additionally, the statement included matters that were not relevant to the hearing. Specifically, the exhibit list included personal training records for the officer who had already settled his case.*

- Was the OIG provided with a draft of the pre-hearing/settlement conference statement prior to it being filed?

  *The officer's pre-hearing settlement conference was held on May 18, 2010. The OIG did not receive a copy of the statement until August 29, 2011, and only after requesting the document.*

- If there was a settlement agreement, did the settlement agreement include the key clauses required by DOM?

  *The stipulation was missing a standard clause required by the DOM.*

- If the case settled, did the department attorney or disciplinary officer properly complete the CDC Form 3021?

  *The department attorney did not complete Form 3021.*

- Did the hiring authority consult with the OIG and department attorney (if applicable) before modifying the penalty or agreeing to a settlement?

  *The hiring authority entered into a settlement agreement with one of the officers prior to consulting with the OIG. There was no settlement agreement with the second officer.*

- Did the department's advocate adequately subpoena and prepare available witnesses for the hearing?

  *The department attorney did not subpoena witnesses in a timely manner. The subpoenas were not served until approximately one week prior to the hearing. Additionally, two days prior to the hearing, the department attorney had yet to meet with the witnesses to prepare them for hearing. Additionally, the department attorney did not subpoena all appropriate witnesses, specifically an expert witness, to discuss the relevant policy violations. The failure of the department attorney to present the testimony of an expert witness resulted in most of the allegations not being sustained by the State Personnel Board after hearing.*

- Did the department's advocate adequately and appropriately address legal issues prior to and during the State Personnel Board hearing?

  *During the course of the hearing, the department attorney continually referenced a draft adverse action that had been subsequently modified. As such, he was not working from the same adverse action that was before the judge and opposing counsel. The department attorney did not consider or address the legal strategy to introduce the inculpatory statement of a non-available witness. Additionally, the department attorney failed to introduce evidence concerning several of the allegations to the detriment of the department. As a result, the State Personnel Board did not sustain those allegations. In his closing statement, the department attorney failed to address the legal factors pursuant to case law to support the penalty. However, the penalty was ultimately upheld.*

- Did the department's advocate present the necessary available evidence regarding the allegations at the hearing?

  *Although the department attorney subpoenaed several percipient witnesses who could have provided important testimony in support of the department's action, the department attorney released those witnesses without introducing their testimony at the hearing. Additionally, the department attorney did not attempt to introduce the inculpatory testimony of a non-available witness. Further, the department attorney did not put on any evidence regarding several of the alleged policy violations.*

- Did the department attorney or disciplinary officer cooperate with and provide continual real-time consultation with the OIG throughout the disciplinary phase, until all proceedings were completed, except for those related to a writ?

  *The department attorney did not consult with the OIG regarding preparation for the State Personnel Board hearing.*

- Did the State Personnel Board's decision uphold all of the factual allegations sustained by the hiring authority?

  *The State Personnel Board only sustained one of the four allegations. The State Personnel Board determined that the department had either failed to produce any evidence, or failed to prove, the other three allegations.*

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2010-04-07** | **10-0002239-IR** | 1. **Neglect of Duty** <br> 2. **Misuse of State Equipment or Property** <br> 3. **Dishonesty** | 1. **Sustained** <br> 2. **Sustained** <br> 3. **Not Sustained** | **Letter of Reprimand** | **Insufficient** |

## Facts of the Case

On April 7, 2010, a captain, a lieutenant, and an officer were allegedly involved in a practical joke against an associate warden regarding a toy gun that was found in a cell. It was alleged that a photograph of a one inch soap carving of a revolver was altered to make it appear that the carving was actually six inches in length. The institution was on lock-down status at the time due to unconfirmed reports that there was a firearm and ammunition somewhere in the institution.

## Investigative Assessment

Although the Office of Internal Affairs conducted a thorough investigation, the investigation was not conducted with due diligence. The case was assigned to an investigator from the northern region in May 2010. Citing travel restrictions due to budgetary considerations, the special agent was not able to conduct interviews in the southern region until January 2011. The department attorney did not make an entry into the case management system within 21 days of assignment confirming the date of the incident, the date of discovery, or the deadline for taking disciplinary action.

## Assessment Questions

- Within 21 calendar days, did the department attorney make an entry into CMS accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

  *The department attorney did not make an entry into CMS within 21 days of assignment confirming the date of the incident, the date of discovery, or the deadline for taking disciplinary action.*

- Was the Office of Internal Affairs investigation, or subject only interview, conducted with due diligence?

  *The investigator was assigned to the case in May 2010. Because of travel restrictions, the agent, who was based in the northern region, was unable to conduct the necessary interviews until January 2011.*

## Disposition

The lieutenant retired before the investigation was completed. During their investigative interviews, the captain and the officer admitted that they participated in the practical joke and apologized for letting the joke get out of hand. The hiring authority sustained an allegation of failing to perform within the scope of training against the captain and the officer. The captain and the officer were issued letters of reprimand. Following a Skelly hearing, the officer's letter of reprimand was reduced to a letter of instruction. The OIG concurred with the reduction.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-04-27 | 10-0002773-IR | 1. **Discourteous Treatment**<br><br>2. **Other**<br><br>3. **Neglect of Duty**<br><br>4. **Dishonesty**<br><br>5. **Neglect of Duty** | 1. **Sustained**<br><br>2. **Sustained**<br><br>3. **Not Sustained**<br><br>4. **Not Sustained**<br><br>5. **Sustained** | **Salary Reduction** | **Insufficient** |

## Facts of the Case

On April 27, 2010, a captain allegedly called a lieutenant's wife and disclosed confidential information regarding allegations made against the lieutenant by other staff and inmates. It was further alleged that she lied to an associate warden about making the telephone call. She also allegedly violated the department's nepotism policy by engaging in a romantic relationship with an officer.

## Investigative Assessment

The Office of Internal Affairs failed to conduct a timely and thorough investigation. The special agent submitted the report to the hiring authority with less than 35 days before the deadline for taking action. Additionally, the special agent failed to initially interview a critical witness and failed to obtain documents relevant to the investigation. After the investigative report was submitted to the hiring authority, the special agent then interviewed the noted witness, but failed to notify the OIG of the interview and failed to provide the OIG with a copy of the supplemental report. The department attorney failed to attend any investigative interviews.

## Assessment Questions

- Were all of the interviews thorough and appropriately conducted?

  *The special agent failed to conduct all relevant interviews.*

- Did the department attorney attend investigative interviews for key witnesses to assess witness demeanor and credibility?

  *The department attorney failed to attend any of the interviews.*

- Was the investigation, or subject interview, completed at least 35 days before the deadline to take disciplinary action?

  *The report was not submitted to the hiring authority until there were 30 days left before the deadline for taking disciplinary action. The special agent also conducted an interview after the final report was provided to the hiring authority and submitted a supplemental report.*

- Did the department attorney attend investigative interviews for key witnesses to assess witness demeanor and credibility?

  *The department attorney failed to attend any interviews.*

- Was the investigative report provided to the OIG for review thorough and appropriately drafted?

  *The draft report was not thorough in that the special agent failed to interview a relevant witness.*

- Was the final investigative report thorough and appropriately drafted?

  *The final report was not thorough in that the special agent failed to interview all relevant witnesses.*

- Was the Office of Internal Affairs investigation, or subject only interview, conducted with due diligence?

  *The special agent failed to conduct some interviews until less than one month until the deadline for taking disciplinary action.*

- Did the special agent cooperate with and provide continual real-time consultation with the OIG?

  *The special agent failed to initially interview a critical witness and failed to obtain documents relevant to the investigation. After the investigative report was submitted to the hiring authority, the special agent then interviewed the noted witness, but failed to notify the OIG of the interview and failed to provide the OIG with a copy of the supplemental report.*

- Was the investigation thorough and appropriately conducted?

  *The special agent failed to interview a critical witness.*

## Disposition

The hiring authority determined there was sufficient evidence to sustain the allegation that the captain improperly transmitted confidential information to a lieutenant's wife. The hiring authority determined that there was insufficient evidence to sustain the remaining allegations. The hiring authority imposed a 10 percent salary reduction for 13 months, as well as a transfer from her position. The captain filed an appeal with the State Personnel Board. At a pre-hearing settlement conference, a settlement agreement was reached in which the captain's penalty was reduced to a letter of reprimand. The settlement agreement left her transfer intact. The OIG did not concur with the settlement agreement, but also did not find it to be unreasonable.

## Disciplinary Assessment

The department attorney and the hiring authority both failed to notify the OIG that a pre-hearing settlement conference had been scheduled. The department attorney contacted the OIG on the day of the pre-hearing settlement conference to indicate that the parties had already discussed an agreement and she was calling, at that stage, to consult with the OIG. A settlement agreement was reached, with which the OIG did not concur, but also did not find to be so unreasonable that it required the matter to be elevated to the hiring authority's supervisor for an Executive Review.

## Assessment Questions

- Was the OIG provided with a draft of the pre-hearing/settlement conference statement prior to it being filed?

  *The department failed to notify the OIG that a pre-hearing settlement conference had been scheduled.*

- If the penalty was modified by department action or a settlement agreement, did the OIG concur with the modification?

  *The OIG did not concur with the department's decision to modify the penalty from a salary reduction to a letter of reprimand. However, the OIG did not find the decision to be unreasonable.*

- Did the department attorney or disciplinary officer cooperate with and provide continual real-time consultation with the OIG throughout the disciplinary phase, until all proceedings were completed, except for those related to a writ?

  *The department attorney failed to notify the OIG that a pre-hearing settlement conference had been scheduled. It was on the day of the pre-hearing settlement conference that the department attorney contacted the OIG and at such time the potential settlement was discussed.*

- Did the hiring authority cooperate with and provide continual real-time consultation with the OIG throughout the disciplinary phase, until all proceedings were completed, except for those related to a writ?

  *The hiring authority failed to notify the OIG that a pre-hearing settlement conference had been scheduled.*

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-07-15 | 10-0002838-IR | 1.  Neglect of Duty<br><br>2.  Discourteous Treatment | 1.  Sustained<br><br>2.  Not Sustained | Suspension | Sufficient |

## Facts of the Case

On July 15, 2010, an officer allegedly locked a registered nurse in an isolation-anteroom with an inmate the nurse was treating. It was further alleged that the officer left the area and failed to respond when the nurse knocked on the cell door window indicating she wished to be released. After the nurse's knocking failed to yield a response from anyone, she utilized the inmate call light and another nurse responded. A short time later the officer re-emerged and opened the door for the nurse who was trapped in the room.

## Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition

The hiring authority sustained an allegation of neglect of duty against the officer and suspended the officer without pay for two working-days. The officer retired from state service before the action was served. A letter was placed in his official personnel file indicating the separation occurred under adverse circumstances.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-09-03 | 10-0003014-IR | 1.   Other | 1.   Exonerated | No Penalty Imposed | Insufficient |

## Facts of the Case

On September 3, 2010, a parole agent discharged one round at a pit bull dog that was aggressively running directly at him, but the shot missed and hit a sidewalk. The dog was uninjured and returned back to the yard.

## Investigative Assessment

The Office of Internal Affairs failed to conduct a timely investigation. The Office of Internal Affairs did not begin interviews on this case until two months after the incident.

## Assessment Questions

- Upon arrival at the scene, did the Deadly Force Investigation Team special agent adequately perform the required preliminary tasks?

  *Due to the delay in notification to both the Office of the Inspector General and the Office of Internal Affairs, there was no on-scene response at the time of this incident.*

- Did the criminal Deadly Force Investigation Team special agent conduct all interviews within 72 hours as required by the DOM?

  *It is noted in the case management system that interviews were conducted two months after the incident.*

- Did the special agent adequately confer with the OIG upon case initiation and prior to finalizing the investigative plan?

  *The assigned special agent failed to confer with the OIG prior to finalizing the investigative plan for this case.*

- Was the Office of Internal Affairs investigation, or subject only interview, conducted with due diligence?

  *In addition to approximately two months passing before assignment of the case, the assigned special agent took another two months to complete a draft report.*

## Disposition

The department's independent Deadly Force Review Board found no violation of department policy, and the hiring authority subsequently exonerated the parole agent. The OIG concurred.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date **2010-04-01** | OIG Case Number **10-0003210-IR** | Allegations 1. **Dishonesty** 2. **Neglect of Duty** | Findings 1. **Sustained** 2. **Sustained** | Penalty **Dismissal** | Rating **Insufficient** |
|---|---|---|---|---|---|

## Facts of the Case

From April 1, 2010 through December 1, 2010, a parole agent allegedly was dishonest when she documented that 74 urine samples for drug testing were taken from parolees when there were only 20 actually submitted to the laboratory. The parole agent was allegedly dishonest in records of her supervision notes regarding home visits and the urine samples taken from parolees during those visits. The parole agent allegedly falsified parole reports after her interview with the Office of Internal Affairs to cover up her lack of supervision of parolees.

## Investigative Assessment

A special agent was assigned to the case in October 2010 but did not conduct any interviews. The case was transferred to another agent in April 2011, who then began to conduct interviews. Due to the fact the parole agent was still working in the field, her ineffective parolee supervision was likely continuing and could have posed a danger to the public. Also, the investigative report was submitted to the hiring authority less than 35 days before the deadline for taking action.

## Assessment Questions

- Was the matter referred to the Office of Internal Affairs as soon as reasonably practical, within 45 calendar days of the date of discovery?

  *The department became aware of the alleged misconduct in June 2010 and did not submit the referral until September 2010.*

- Did the department provide written confirmation summarizing all critical discussions about the investigative report to the special agent with a copy to the OIG?

  *The department attorney failed to provide any feedback to the special agent regarding the thoroughness of the report.*

- Was the Office of Internal Affairs investigation, or subject only interview, conducted with due diligence?

  *The initial special agent assigned from the Office of Internal Affairs failed to do any investigative work on the case. When assigned to another special agent, the case was handled with due diligence.*

- Was the investigation, or subject interview, completed at least 35 days before the deadline to take disciplinary action?

  *The report was completed and submitted to the hiring authority with only 24 days left before the deadline to take disciplinary action.*

## Disposition

The hiring authority determined there was sufficient evidence to sustain the allegations against the parole agent and served her with a notice of dismissal. However, the parole agent resigned before the effective date of the dismissal.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date 2010-10-19 | OIG Case Number 10-0003276-IR | Allegations<br><br>1.     Use of Force | Findings<br><br>1.     Exonerated | Penalty<br>No Penalty Imposed | Rating<br>Sufficient |
|---|---|---|---|---|---|

## Facts of the Case

On October 19, 2010, when inclement weather required an emergency recall of the exercise yard, a riot involving more than 100 inmates broke out on the exercise yard and in two housing units. An officer fired two lethal rounds as warning shots onto the exercise yard and then fired two more lethal rounds in one of the housing units. Two inmates were struck with the rounds, one on a thigh and the other on a leg.

## Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition

The department's independent Deadly Force Review Board found no violation of department policy, and the hiring authority subsequently exonerated the officer. The OIG concurred in the determination by the board.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2009-11-11** | **10-0003300-IR** | 1. **Over-familiarity**<br><br>2. **Dishonesty**<br><br>3. **Neglect of Duty**<br><br>4. **Misuse of State Equipment or Property** | 1. **Sustained**<br><br>2. **Not Sustained**<br><br>3. **Sustained**<br><br>4. **Sustained** | **Dismissal** | **Insufficient** |

## Facts of the Case

From November 11, 2009 through September 30, 2010, a parole agent was allegedly engaged in an overly familiar relationship with a parolee who was formerly on his caseload. Allegedly the parole agent would provide clean urine samples for the parolee's narcotics testing, falsify supervision records of the parolee, fail to keep the parolee's address updated, and attend social functions with the parolee.

## Investigative Assessment

The Office of Internal Affairs and the department attorney both failed to comply with department policy. There was a delay on the part of the Office of Internal Affairs in conducting interviews in this case. The Office of Internal Affairs failed to submit the investigative report to the hiring authority timely. The report was submitted to the hiring authority less than 35 days before the deadline for taking action. The department attorney failed to attend interviews of key witnesses. The department attorney also failed to provide timely feedback to the special agent regarding the investigative report.

## Assessment Questions

- Did the department attorney attend investigative interviews for key witnesses to assess witness demeanor and credibility?

  *The department attorney attended the parole agent's interview, but no other interviews.*

- Upon completion of the investigation, was a copy of the investigative report timely forwarded to the OIG to allow for feedback before it was forwarded to the hiring authority or prosecuting agency?

  *The OIG did not receive a draft copy of the investigative report.*

- Upon completion of the investigation, was a copy of the investigative report timely forwarded to the department attorney to allow for feedback before it was forwarded to the hiring authority or prosecuting agency?

  *The department attorney did not receive a draft report from the assigned investigator prior to submission to the hiring authority.*

- Within 21 calendar days following receipt of the investigative report, did the department attorney review the report and provide appropriate substantive feedback addressing the thoroughness and clarity of the report?

  *The department attorney was not provided a report in order to provide feedback.*

- Did the department provide written confirmation summarizing all critical discussions about the investigative report to the special agent with a copy to the OIG?

  *The department attorney was not provided a draft report to discuss with the assigned investigator.*

- Was the Office of Internal Affairs investigation, or subject only interview, conducted with due diligence?

  *The investigator was assigned on November 1, 2010. The investigator conducted an interview with one of the complainants on December 15, 2010, but the next interview did not occur until April 5, 2011, or after the passage of 111 days. There was a passage of almost three months before the remaining witnesses were interviewed and the case closed.*

- Was the investigation, or subject interview, completed at least 35 days before the deadline to take disciplinary action?

  *The report was completed and submitted to the hiring authority with only 26 days left before the deadline to take disciplinary action.*

## Disposition

The hiring authority determined there was sufficient evidence to sustain the allegations and dismissed the parole agent. The parole agent filed an appeal with the State Personnel Board. The parole agent failed to appear for a State Personnel Board settlement conference and the State Personnel Board dismissed the parole agent's appeal.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2009-12-01** | **10-0003333-IR** | 1. **Neglect of Duty** <br> 2. **Dishonesty** <br> 3. **Insubordination** <br> 4. **Misuse of State Equipment or Property** | 1. **Sustained** <br> 2. **Sustained** <br> 3. **Sustained** <br> 4. **Sustained** | **Dismissal** | **Insufficient** |

## Facts of the Case

It was alleged that in 2009 and 2010, a parole agent failed to supervise parolees on his caseload by not meeting with them, not obtaining urine analysis tests, and making false and inaccurate entries in the case notes to make it appear that he was adequately performing his responsibilities. Additionally, it was alleged that the agent used the state vehicle for personal matters and falsified his mileage logs and attendance records. It was also alleged that the agent failed to follow the instructions of his supervisors when directed to complete tasks. Finally, it was alleged that the parole agent was dishonest during his internal affairs interview.

## Investigative Assessment

This complex investigation was aptly handled by the Office of Internal Affairs. The special agent thoroughly reviewed extensive documentation and distilled the relevant information in an organized manner. The agent was well prepared for each interview she conducted. Although the agent did not provide a draft investigative report to the OIG, the final report was clear and concise. The conduct of the department attorney during the investigative phase was not adequate. The department attorney who was initially assigned to the case did not fulfill his responsibilities as required and did not alert the special agent to potential issues regarding the time within which disciplinary action could be taken. Because the department attorney did not attend any of the 12 witness interviews, he was not present to provide the special agent with legal advice for the duration of the investigation.

## Assessment Questions

- Within 21 calendar days, did the department attorney make an entry into CMS accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

  *The initial department attorney was assigned to the case from November 1, 2010 to December 8, 2010. He did not make any entries into the case management system during his assignment to the case.*

- No later than 21 calendar days following assignment of the case, did the department attorney contact the assigned special agent and the OIG monitor to discuss the elements of a thorough investigation of the alleged misconduct?

  *The initial department attorney assigned to the case took no action to assist the investigation in moving forward.*

- Did the department attorney attend investigative interviews for key witnesses to assess witness demeanor and credibility?

  *The special agent conducted 12 witness interviews and 1 subject interview. The department attorney did not attend any of the witness interviews. The department attorney attended the subject interview.*

- Upon completion of the investigation, was a copy of the investigative report timely forwarded to the OIG to allow for feedback before it was forwarded to the hiring authority or prosecuting agency?

  *The final report was not provided to the OIG prior to it being sent to the hiring authority on June 28, 2011.*

- Upon completion of the investigation, was a copy of the investigative report timely forwarded to the department attorney to allow for feedback before it was forwarded to the hiring authority or prosecuting agency?

  *The final report was not provided to the department attorney prior to it being sent to the hiring authority on June 28, 2011.*

- Within 21 calendar days following receipt of the investigative report, did the department attorney review the report and provide appropriate substantive feedback addressing the thoroughness and clarity of the report?

  *There is no indication in the case management system to show the department attorney provided any feedback to the special agent regarding the final report.*

- Did the department provide written confirmation summarizing all critical discussions about the investigative report to the special agent with a copy to the OIG?

  *The department attorney did not provide written confirmation, either through the case management system or e-mail, regarding discussions he may have had with the special agent. There is no indication the department attorney discussed the investigative report with the agent.*

## Disposition

The hiring authority sustained the allegations and determined that the penalty of dismissal was appropriate. However, the parole agent resigned prior to the completion of the investigation; therefore, disciplinary action could not be taken. A letter indicating the parole agent resigned under adverse circumstances was placed in his official personnel file.

## Disciplinary Assessment

The department attorney in large part did not provide adequate legal representation to the department. Because the attorney failed to attend any of the 12 witness interviews, he was not as familiar with the facts as he should have been and erroneously recommended reducing the allegations from 18 to 7. Overall, however, the attorney did provide the hiring authority with adequate legal advice regarding findings and penalty. The hiring authority adequately discharged its responsibilities.

## Assessment Questions

- Within 21 calendar days, did the department attorney make an entry into CMS accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

  *The initial department attorney assigned to the case was a supervisor. He had case responsibility from November 1, 2010 to December 8, 2010. During that time he made no entries in CMS.*

- Did the department attorney provide to the hiring authority and the OIG written confirmation of penalty discussions?

  *The department attorney who handled the disciplinary phase of the case made no entries in the case management system. Likewise, he did not provide written confirmation of penalty discussions to the hiring authority or the OIG.*

| Incident Date 2010-02-04 | OIG Case Number 10-0003459-IR | Allegations 1. Sexual Misconduct 2. Contraband | Findings 1. Not Sustained 2. Not Sustained | Penalty No Penalty Imposed | Rating Insufficient |
|---|---|---|---|---|---|

## Facts of the Case

From February 4, 2010 through September 20, 2010, a supervising cook allegedly introduced marijuana, mobile phones, and iPods into the institution. It was also alleged that the cook was exchanging these items for sexual favors from the wards.

## Investigative Assessment

The Office of Internal Affairs did not conduct a timely investigation. There were significant passages of time between interviews such that many of the wards that were potential witnesses were paroled and released to areas all around the state. This made effective investigation of the case difficult. Additionally, with the passage of time, the cook eventually resigned his position before he could be interviewed. The failure to conduct interviews in a timely manner clearly impacted the investigation in this case.

## Assessment Questions

- Was the matter referred to the Office of Internal Affairs as soon as reasonably practical, within 45 calendar days of the date of discovery?

  *The misconduct was discovered on February 4, 2010. The hiring authority submitted a request for investigation to the Office of Internal Affairs on the criminal case on March 25, 2010, or after the passage of 49 days.*

- Did OIA Central Intake make a determination regarding the case within 30 calendar days?

  *The hiring authority submitted a request for investigation on the criminal case on March 25, 2010. OIA Central Intake opened the criminal case on May 5, 2010, or after the passage of 41 days. The administrative case was a split case from the criminal case.*

- Was the Office of Internal Affairs investigation, or subject only interview, conducted with due diligence?

  *There were significant gaps in time between investigative interviews. At one point, nearly 200 days passed between interviews. The entire investigation took approximately 408 days to complete.*

## Disposition

Although the hiring authority determined there was insufficient evidence to sustain the allegations, the cook resigned before the disciplinary proceedings were concluded.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-07-23 | 10-0003533-IR | 1. **Other Failure of Good Behavior**<br><br>2. **Other**<br><br>3. **Discourteous Treatment**<br><br>4. **Misuse of Authority** | 1. **Not Sustained**<br><br>2. **Not Sustained**<br><br>3. **Not Sustained**<br><br>4. **Not Sustained** | **No Penalty Imposed** | **Insufficient** |

## Facts of the Case

On July 23, 2010, an off-duty officer left a party hosted by an outlaw motorcycle gang, of which he was allegedly a member. It was alleged that the officer and his associates drove their motorcycles in a reckless manner. It was further alleged that after being contacted by outside law enforcement, the officer was discourteous and uncooperative.

## Investigative Assessment

The initial investigation was not thorough and as a result, the hiring authority had to request that additional investigation be undertaken. Further, the investigator was not fully prepared for the interviews, and the investigation was not conducted with due diligence.

## Assessment Questions

- Was the matter referred to the Office of Internal Affairs as soon as reasonably practical, within 45 calendar days of the date of discovery?

  *The incident occurred on July 23, 2010. Outside law enforcement notified the department of the incident on the same day. The request for an investigation was not referred to the Office of Internal Affairs until September 16, 2010.*

- Did the special agent adequately prepare for all aspects of the investigation?

  *The special agent did not research relevant department policy regarding incompatible activities prior to initiating substantive investigative work.*

- Were all of the interviews thorough and appropriately conducted?

  *The special agent did not obtain a photograph of the Hell's Angels club house prior to the interview of the officer. At his interview, the officer claimed he didn't know when he entered the party that it was a Hell's Angels event. Had the special agent had the photograph, which clearly depicted the building belonged to the Hell's Angels, the special agent could have impeached the officer's statement.*

- Was the investigative report provided to the OIG for review thorough and appropriately drafted?

  *Although the report was appropriately drafted, it was not thorough inasmuch as it did not contain sufficient information regarding the extent of the observations by outside law enforcement of the officer's conduct.*

- Was the final investigative report thorough and appropriately drafted?

  *The hiring authority requested the special agent conduct additional investigation prior to making findings on the allegations.*

- Was the investigation, or subject interview, completed at least 35 days before the deadline to take disciplinary action?

  *Although the initial investigation was completed 35 days before the deadline to take disciplinary action, the hiring authority determined the investigation was incomplete and requested additional investigation. The subsequent investigation was not completed within the 35 days. In addition, the hiring authority contributed to the delay by not timely conducting the initial hearing on the findings until July 12, 2011.*

- Was the investigation thorough and appropriately conducted?

  *The special agent was not thoroughly prepared. He failed to obtain a picture of the outside of the outlaw motorcycle club house prior to the subject interview. Had the special agent had that photograph, he could have used it to impeach the subject during his interview when the subject denied knowing that he was at an outlaw motorcycle club house party. Additionally, the special agent did not ask some of the witnesses all of the necessary questions, thereby requiring the hiring authority to request additional investigation.*

## Disposition

The hiring authority determined there was insufficient evidence to sustain the allegations.

## Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date 2010-09-14 | OIG Case Number 10-0003535-IR | Allegations 1. Neglect of Duty | Findings 1. Sustained | Penalty Counseling | Rating Insufficient |
|---|---|---|---|---|---|

## Facts of the Case
On September 14, 2010, a supervising parole agent allegedly discovered pictures of another parole agent on a social networking website. In the photos, the parole agent is seen posing with alleged members of an outlaw motorcycle group.

## Investigative Assessment
The assigned investigator expressed an opinion early into the investigation that the parole agent's association with known motorcycle gang members was not expressly prohibited by law or policy, an opinion that was at least partially shared by the department attorney. The investigation was hampered by the investigator's prejudice against the case at the outset of the investigation. During the pendency of this investigation, an anonymous note was received stating that the parole agent was engaged in association with motorcycle gangs. This note gave very specific information regarding the motorcycle gang, including names and contact information for individuals with information about the parole agent. The Office of Internal Affairs refused to incorporate this information into the investigation, stating that the note had no connection to the allegations.

## Assessment Questions

- Did OIA Central Intake make a determination regarding the case within 30 calendar days?

  *The request for investigation was submitted to OIA Central Intake on October 5, 2010. The case was approved for administrative investigation on November 10, 2010, or after the passage of 36 days.*

- Did the special agent adequately prepare for all aspects of the investigation?

  *Because of the Office of Internal Affairs' refusal to incorporate the additional information received during the pendency of this investigation, the assigned investigator did not confront the parole agent with that information and how that information implicated her with misconduct in this case.*

- Were all of the interviews thorough and appropriately conducted?

  *Because of the Office of Internal Affairs' prejudice to incorporate the additional information received during the pendency of this investigation, the interview of the parole agent was not thorough in that she was not asked questions about her prior dealings with alleged motorcycle gang members.*

- Did the department provide written confirmation summarizing all critical discussions about the investigative report to the special agent with a copy to the OIG?

  *No discussions regarding the investigative report between the assigned investigator and the department attorney appear to have taken place.*

- Did the special agent cooperate with and provide continual real-time consultation with the OIG?

  *In addition to the refusal on the part of the Office of Internal Affairs to incorporating the contents of an anonymous note implicating the parole agent in unprofessional relationships with possible outlaw motorcycle gang members, the assigned investigator unnecessarily delayed interviews of potential witnesses in this case. The witnesses were purported motorcycle gang members.*

- Was the investigation thorough and appropriately conducted?

  *The investigation should have included the information contained on an anonymous note received by the Office of Internal Affairs. Instead of incorporating that information into this investigation, the Office of Internal Affairs asked that a separate investigation be opened into the allegations contained therein. Additionally, the assigned special agent did not interview potential witnesses who happened to be purported motorcycle gang members.*

## Disposition
The hiring authority sustained the allegation and issued the parole agent a letter of instruction.

## Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date 2008-07-01 | OIG Case Number 10-0003732-IR | Allegations | Findings | Penalty Dismissal | Rating Insufficient |
|---|---|---|---|---|---|
| | | 1. Neglect of Duty | 1. Sustained | | |
| | | 2. Over-familiarity | 2. Sustained | | |
| | | 3. Contraband | 3. Sustained | | |
| | | 4. Dishonesty | 4. Sustained | | |

## Facts of the Case

It was alleged that between 2008 and 2011, a chaplain engaged in overly familiar relationships with numerous inmates and parolees. The chaplain allegedly provided inmates with personal information, corresponded with them, accepted collect calls, discussed sexual matters, gave and received gifts, and placed money on inmates' trust accounts. It was further alleged that the chaplain provided money to a third party on behalf of an inmate to pay the inmate's drug debt. The chaplain also allegedly placed money into the trust accounts of third-party inmates in order to prevent the state from collecting restitution from the inmates. Finally, it was alleged that the chaplain lied in his interview with the Office of Internal Affairs.

## Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition

The hiring authority determined there was sufficient evidence to sustain the allegations and dismissed the chaplain. The chaplain did not file an appeal with the State Personnel Board.

## Disciplinary Assessment

The department attorney provided the hiring authority with appropriate legal advice concerning findings and penalty. The hiring authority was prepared and familiar with the facts of the case and made appropriate findings. However, the department attorney took over five weeks to complete the notice of disciplinary action while the chaplain was on paid administrative leave and the final notice of disciplinary action was not complete in that it omitted some of the sustained allegations.

## Assessment Questions

- Was the disciplinary action provided to the OIG for review appropriately drafted as described in the DOM?

  *The draft disciplinary action was inadequate in that it did not reference many of the sustained allegations. For example, the draft action did not reference serious sustained allegations of dishonesty by the chaplain to the Office of Internal Affairs, purchases of packages for third party inmates in order to subvert the department's rules against the number of packages per inmate per quarter, payment of an inmate drug debt, and deposits of funds to third party inmates to subvert the collection of restitution. In addition, the draft action did not contain all of the facts necessary to support some of the allegations. The department attorney maintained that it would take too much time to include all of the allegations in the disciplinary action. The OIG strongly recommended that all of the sustained allegations needed to be detailed in the disciplinary action.*

- Was the disciplinary action served on the employee(s) appropriately drafted as described in the DOM?

  *The OIG provided the department attorney with extensive feedback on the draft disciplinary action. Although the final action was more comprehensive than the draft action, it still failed to include several sustained allegations, specifically, releasing confidential information about the whereabouts of specific inmates to other inmates, and taking pictures of wards without the permission of the superintendent, and having the film developed in the community.*

- Was the disciplinary phase conducted with due diligence by the department?

  *The department attorney took over five weeks to complete the disciplinary action. At the time, the chaplain was on paid administrative leave.*

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2010-09-29** | **10-0003784-IR** | 1. **Neglect of Duty** <br><br> 2. **Dishonesty** | 1. **Not Sustained** <br><br> 2. **Not Sustained** | **No Penalty Imposed** | **Sufficient** |

## Facts of the Case

On September 29, 2010, a psychologist allegedly discovered 30-minute welfare check logs that were to be completed daily were not signed, indicating that the welfare checks had not been completed. The psychologist brought this to the attention of institution administrators who agreed that the logs were not complete. On October 5, 2010, the psychologist received copies of the logs which then showed that the logs were signed by various staff members. It was alleged that the signatures of the officers and the approval signature by the sergeant were added after it was discovered that the logs were not completed.

## Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition

The hiring authority did not sustain any allegations against any of the subjects.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-12-28 | 10-0003856-IR | 1. **Over-familiarity** <br><br> 2. **Contraband** <br><br> 3. **Neglect of Duty** | 1. **Sustained** <br><br> 2. **Not Sustained** <br><br> 3. **Not Sustained** | **Salary Reduction** | **Insufficient** |

## Facts of the Case

From December 28, 2010 until March 18, 2011, an officer allegedly engaged in an overly familiar relationship with an inmate. Specifically, it was alleged that the officer had a romantic relationship with the inmate and accepted collect telephone calls from the inmate on numerous occasions. It was also alleged that the officer provided contraband to the inmate including lighters, rolling papers, and marijuana.

## Investigative Assessment

The Office of Internal Affairs special agent undertook a minimal amount of work on this case. He did not consult with the department attorney during the investigation. Additionally, the agent did not fully prepare for the interview of the critical inmate witness. The department attorney did not consult with either the special agent or the OIG during the investigation. The special agent adequately consulted with the OIG.

## Assessment Questions

- Did the special agent adequately prepare for all aspects of the investigation?

  *The special agent did not adequately prepare for the interview of the main inmate witness. During his interview, the inmate denied having a relationship with the officer before she resigned from the department. There were numerous recorded phone calls between the inmate and the officer prior to her resignation. The content of the calls clearly established they had a romantic relationship. Had the agent reviewed the phone calls prior to the inmate's interview, he could have used that information to impeach the inmate's statement. Additionally, the agent did not review the inmate's approved visitors file until after the inmate interview. It was discovered that the officer was an approved visitor and was residing with the inmate's mother. Had the agent reviewed the file prior to the interview, he could have impeached the inmate with the information.*

- Were all of the interviews thorough and appropriately conducted?

  *The interview of the inmate was not thoroughly conducted because the special agent was not adequately prepared.*

- Did the department attorney attend investigative interviews for key witnesses to assess witness demeanor and credibility?

  *The special agent conducted three witness interviews in this case. The department attorney did not attend any of the interviews.*

- Upon completion of the investigation, was a copy of the investigative report timely forwarded to the department attorney to allow for feedback before it was forwarded to the hiring authority or prosecuting agency?

  *There is no indication in the case management system that the agent provided the department attorney with a copy of the investigative report.*

- Within 21 calendar days following receipt of the investigative report, did the department attorney review the report and provide appropriate substantive feedback addressing the thoroughness and clarity of the report?

  *There is no indication in the case management system that the department attorney received or reviewed the report. Likewise, there is no information to suggest the department attorney provided substantive feedback to the special agent addressing the thoroughness and clarity of the report.*

- Did the department provide written confirmation summarizing all critical discussions about the investigative report to the special agent with a copy to the OIG?

  *There is no indication in the case management system that the department attorney discussed the investigative report with the special agent.*

- Was the investigative report provided to the OIG for review thorough and appropriately drafted?

  *The report was neither thorough nor appropriately drafted. The first draft report did not contain all of the originally identified allegations.*

- Did the special agent cooperate and provide real-time consultation with the department attorney throughout the investigative phase?

  *The special agent did not provide real-time consultation with the department attorney because he did not provide the attorney with notice of interviews or with a copy of the draft final report.*

- Did the department attorney cooperate with and provide continual real-time consultation with the OIG throughout the investigative phase?

  *Other than being present at the initial case conference, the department attorney had no contact with the OIG during the investigative phase of the case.*

- Did the department attorney cooperate with and provide continual real-time consultation with the OIG throughout the investigative phase?

  *Other than being present at the initial case conference, the department attorney had no contact with the OIG during the investigative phase of the case.*

## Disposition

The hiring authority sustained the allegations of over-familiarity, but did not sustain the allegations concerning contraband. The hiring authority determined the penalty would be a 5 percent salary reduction for 24 months. However, the officer resigned prior to the completion of the investigation; therefore, disciplinary action was not served. A letter indicating the officer resigned under adverse circumstances was placed in her official personnel file.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2009-08-29** | **11-0000312-IR** | 1. **Over-familiarity**<br><br>2. **Dishonesty** | 1. **Sustained**<br><br>2. **Not Sustained** | **Counseling** | **Insufficient** |

## Facts of the Case

On August 29, 2009, an office technician was in a vehicle with a parolee when the two of them were contacted by an outside law enforcement agency. It was alleged that the office technician was engaged in an overly familiar relationship with the parolee.

## Investigative Assessment

The Office of Internal Affairs failed to conduct a timely investigation. There was no justification offered for allowing more than 16 months to pass before any investigative efforts were made. The department attorney failed to attend the one interview conducted during this investigation.

## Assessment Questions

- Within 21 calendar days, did the department attorney make an entry into CMS accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

  *The department attorney was assigned on December 2, 2009, and failed to make an entry into CMS that accurately confirmed the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exception to the deadline before December 23, 2009.*

- Within 21 calendar days, did the department attorney make an entry into CMS accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

  *The department attorney was assigned on December 2, 2009, and failed to make an entry into CMS that accurately confirmed the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exception to the deadline before December 23, 2009.*

- Did the department attorney attend investigative interviews for key witnesses to assess witness demeanor and credibility?

  *The department attorney did not attend the interview of the office technician.*

- Was the Office of Internal Affairs investigation, or subject only interview, conducted with due diligence?

  *The special agent was assigned to the case on November 19, 2009. It was determined that the office technician was the only person that needed to be interviewed, but that interview did not take place until May 11, 2011.*

- Was the investigation thorough and appropriately conducted?

  *There were no substantive investigative efforts made by the special agent for nearly 16 months following initial case assignment.*

## Disposition

The hiring authority sustained an allegation of over-familiarity and issued the office technician a letter of instruction.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date 2011-02-03 | OIG Case Number 11-0000370-IR | Allegations 1. Use of Force | Findings 1. Exonerated | Penalty No Penalty Imposed | Rating Sufficient |
|---|---|---|---|---|---|

## Facts of the Case
On February 3, 2011, two parole agents shot at a parolee who drew a handgun and pointed it at one of the parole agents. The parolee died from the gunshot wounds.

## Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition
The department's independent Deadly Force Review Board found no violation of department policy, and the hiring authority subsequently exonerated the agent. The OIG concurred in the determination by the board.

## Disciplinary Assessment
The department complied with policies and procedures.

| Incident Date 2010-05-11 | OIG Case Number 11-0000386-IR | Allegations 1. Neglect of Duty 2. Contraband 3. Over-familiarity 4. Sexual Misconduct | Findings 1. Sustained 2. Sustained 3. Sustained 4. Sustained | Penalty Dismissal | Rating Sufficient |
|---|---|---|---|---|---|

## Facts of the Case
From May 11, 2010 through April 2011, an officer allegedly engaged in an overly familiar relationship with an inmate, kissed the inmate, sent nude photos of herself to the inmate on a mobile phone, and provided the inmate with a pre-paid mobile phone card.

## Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition
The hiring authority sustained the allegations and decided to dismiss the officer. However, the officer resigned before the investigation into her misconduct could be completed and before any disciplinary action could be served. A letter indicating the officer resigned pending disciplinary action was placed in her official personnel file.

## Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date 2010-12-04 | OIG Case Number 11-0000442-IR | Allegations 1. Other Criminal Act | Findings 1. Not Sustained | Penalty No Penalty Imposed | Rating Insufficient |
|---|---|---|---|---|---|

## Facts of the Case
On December 4, 2010, an officer was arrested for domestic violence after he allegedly argued with his wife, pulled her out of the car by her hair and clothes, and dragged her 30 feet into their house. It was further alleged that the officer placed a knife to his wife's neck.

## Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition
The hiring authority determined there was insufficient evidence to sustain the allegations.

## Disciplinary Assessment
Although the hiring authority was prepared and reached an appropriate final decision concerning findings, the disciplinary determinations were not timely. The hiring authority had the completed investigation for approximately three months before it took action.

## Assessment Questions

- Did the department attorney provide to the hiring authority and the OIG written confirmation of penalty discussions?

  *The department attorney assigned to the disciplinary phase did not provide either the hiring authority or the OIG with written confirmation of penalty discussions.*

- Was the disciplinary phase conducted with due diligence by the department?

  *The Office of Internal Affairs provided the hiring authority with the investigative report on June 28, 2011. Disciplinary determinations were not made until October 5, 2011. According to policy, disciplinary determinations should have been made within 14 days after the hiring authority received the investigative report. However, it is noted that the hiring authority consulted with the OIG and department attorney before making a final decision on the outcome of the disciplinary action.*

| Incident Date 2010-12-04 | OIG Case Number 11-0000508-IR | Allegations 1. Contraband  2. Misuse of State Equipment or Property  3. Dishonesty | Findings 1. Sustained  2. Sustained  3. Sustained | Penalty Dismissal | Rating Sufficient |
|---|---|---|---|---|---|

## Facts of the Case
On December 4, 2010, a truck driver allegedly attempted to smuggle alcohol and tobacco into the institution by hiding the contraband in a state issued trash truck. It was further alleged that the truck driver lied to investigators during his investigatory interview.

## Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition
The hiring authority determined there was sufficient evidence to sustain the allegations and dismissed the truck driver. However, the truck driver retired before the dismissal took effect. A letter indicating the truck driver retired pending disciplinary action was placed in his official personnel file.

## Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2010-12-05** | **11-0000529-IR** | 1. **Other Failure of Good Behavior**<br><br>2. **Dishonesty**<br><br>3. **Other**<br><br>4. **Other Failure of Good Behavior** | 1. **Not Sustained**<br><br>2. **Not Sustained**<br><br>3. **Sustained**<br><br>4. **Sustained** | **Salary Reduction** | **Insufficient** |

## Facts of the Case

On December 5, 2010, two officers were involved in an off-duty incident at a nightclub. One officer allegedly confronted two men and engaged in a fight with them. The second officer allegedly tried to attack the two men after they were escorted out of the nightclub by security guards. It was also alleged that the second officer was dishonest with the Office of Internal Affairs during his investigatory interview.

## Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition

The hiring authority sustained the allegations of assault against both officers and imposed a salary reduction of 10 percent for 15 months. The hiring authority did not sustain the dishonesty allegation. Following a Skelly hearing, the action was withdrawn against the first officer, and the second officer's penalty was reduced by way of settlement agreement to a salary reduction of 5 percent for 15 months. The OIG did not concur with the hiring authority's decisions.

## Disciplinary Assessment

The OIG did not concur with the hiring authority's decisions as they related to the sustained allegations and the penalties ultimately imposed. The OIG believed that the evidence demonstrated that the second officer was dishonest in his statements to investigators about the events that led up to the assault and that the evidence was sufficient to sustain the allegation that the first officer assaulted the two civilian bar patrons.

## Assessment Questions

- If the penalty was modified by department action or a settlement agreement, did the OIG concur with the modification?

  *The OIG did not concur in the modification of the penalty because the factors cited by the hiring authority after the Skelly hearing were all known at the time the penalty was imposed and there were no new factors cited in order to justify reducing the penalty.*

| Incident Date **2010-09-01** | OIG Case Number **11-0000785-IR** | Allegations 1. **Over-familiarity** 2. **Contraband** | Findings 1. **Sustained** 2. **Sustained** | Penalty **Dismissal** | Rating **Insufficient** |
|---|---|---|---|---|---|

## Facts of the Case

Between September 2010 and December 2010, a licensed psychiatric technician allegedly engaged in an overly familiar relationship with an inmate by providing the inmate with a mobile phone and communicating with him.

## Investigative Assessment

The Office of Internal Affairs performed in compliance with department policies and procedures. The investigation was thorough and timely, and the report was submitted to the hiring authority for consideration before the deadline to take disciplinary action. The department attorney did not timely make a computerized entry regarding his analysis regarding the deadline for taking disciplinary action. Additionally, the department attorney did not attend any witness interviews, including the interview of the licensed psychiatric technician.

## Assessment Questions

- Did OIA Central Intake make a determination regarding the case within 30 calendar days?

  *The request for investigation was submitted on January 4, 2011. There was no decision by OIA Central Intake until March 9, 2011, or after the passage of 64 days.*

- Did the department attorney appropriately determine that the deadline for taking disciplinary action as originally calculated should be modified and consult with the OIG and special agent?

  *The department attorney assessed the deadline for taking disciplinary action as October 1, 2011, which was incorrect.*

- Within 21 calendar days following receipt of the investigative report, did the department attorney review the report and provide appropriate substantive feedback addressing the thoroughness and clarity of the report?

  *There is no indication the department attorney provided feedback to the assigned investigator regarding the report.*

- Did the department provide written confirmation summarizing all critical discussions about the investigative report to the special agent with a copy to the OIG?

  *The department attorney failed to provide written confirmation of any discussion about the investigative report with the special agent.*

- Within 21 calendar days, did the department attorney make an entry into CMS accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

  *The department attorney did not confirm the date of the reported incident, date of discovery, or the deadline for taking disciplinary action and any exceptions thereto.*

## Disposition

The hiring authority determined there was sufficient evidence to sustain the allegations and dismissed the licensed psychiatric technician. The licensed psychiatric technician filed an appeal with the State Personnel Board. However, the licensed psychiatric technician failed to appear at a pre-hearing settlement conference on this matter. As a result, the State Personnel Board dismissed the licensed psychiatric technician's appeal.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date 2011-02-03 | OIG Case Number 11-0000834-IR | Allegations 1. Dishonesty 2. Over-familiarity 3. Sexual Misconduct | Findings 1. Sustained 2. Sustained 3. Sustained | Penalty Dismissal | Rating Insufficient |
|---|---|---|---|---|---|

## Facts of the Case

On February 3, 2011, an officer allegedly sexually assaulted an inmate. It was also alleged that the officer was dishonest in his investigatory interview.

## Investigative Assessment

The Office of Internal Affairs conducted a very timely and productive interview of the inmate who alleged that she had been sexually assaulted. The investigators devised and executed a well thought out operational plan that yielded incriminating evidence against the officer. At the conclusion of the investigation; however, the Office of Internal Affairs made a decision not to interview inmates who told institutional investigators that they had personally observed the officer engage in sexual contact with the victim. The OIG did not concur with this decision and recommended that any inmate who claimed to have first hand knowledge about the incident be interviewed by investigators in a recorded interview. After discussing the matter with supervising special agents, the witness inmates were interviewed. The OIG also recommended to the Office of Internal Affairs that they discontinue the use of an admonition that was read to one of the witness interviews. The admonition was not a departmentally approved admonition and the language contained in the admonition contributed to the witness's reluctance to cooperate with investigators.

## Assessment Questions

- Within 21 calendar days, did the department attorney make an entry into CMS accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

    *The department attorney did not make an entry into CMS within 21 days of assignment confirming the date of the incident, the date of discovery, or the deadline for taking disciplinary action.*

- Did the special agent adequately prepare for all aspects of the investigation?

    *Although a majority of the interviews were thorough and timely, the investigator did not adequately prepare for the interview of one inmate witness. The investigator started the interview by reading from a non-departmentally approved admonition that contributed to the inmate taking a very defensive posture and refusing to answer questions. The witness was later interviewed by other investigators who did not use the admonishment.*

- Were all of the interviews thorough and appropriately conducted?

    *Although a majority of the interviews were thorough and timely, the investigator did not adequately prepare for the interview of one inmate witness. The investigator started the interview by reading from a non-departmentally approved admonition that contributed to the inmate taking a very defensive posture and refusing to answer questions. The witness was later interviewed by other investigators who did not use the admonishment.*

- Was the investigative report provided to the OIG for review thorough and appropriately drafted?

    *The draft of the investigative report did not include recorded interviews of several inmate witnesses who claimed to have first hand knowledge of the allegations. The OIG recommended that the investigator interview those witnesses prior to closing the investigation. The Office of Internal Affairs ultimately conducted those interviews and included the information gathered from those interviews in the final report.*

## Disposition

The hiring authority sustained all of the allegations against the officer and served him with a notice of dismissal. However, the officer resigned before the disciplinary action took effect. A letter was placed in his official personnel file indicating the resignation was under adverse circumstances.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date 2011-01-24 | OIG Case Number 11-0000841-IR | Allegations 1. Other 2. Discourteous Treatment | Findings 1. Not Sustained 2. Sustained | Penalty Counseling | Rating Sufficient |
|---|---|---|---|---|---|

## Facts of the Case
On January 24, 2011, a captain allegedly made an inappropriate and violent threat to a correctional counselor during a classification committee meeting. The correctional counselor had to seek medical treatment for high blood pressure as a result of the confrontation. Subsequent to the alleged threat made to the correctional counselor, the captain allegedly made similar comments to the chief deputy warden.

## Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition
The hiring authority did not sustain the allegation that the captain made a threat to the correctional counselor, but did sustain the allegation that the captain made a threat to the chief deputy warden. The captain was given a letter of instruction.

## Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-03-04 | 11-0001008-IR | 1. **Neglect of Duty**<br><br>2. **Other**<br><br>3. **Neglect of Duty**<br><br>4. **Misuse of Authority**<br><br>5. **Other Failure of Good Behavior** | 1. **Sustained**<br><br>2. **Not Sustained**<br><br>3. **Not Sustained**<br><br>4. **Not Sustained**<br><br>5. **Not Sustained** | **Counseling** | **Insufficient** |

## Facts of the Case

On March 4, 2011, an off-duty correctional counselor allegedly grabbed his wife by the arms and threw her into the walls of a closet several times. Also, the correctional counselor allegedly ripped the phone line out of the wall when he realized his wife was calling local law enforcement. When outside law enforcement officers arrived at the home, the correctional counselor was detained while attempting to enter a vehicle and drive away. Outside law enforcement officers noted symptoms of alcohol intoxication and noted that the correctional counselor had a loaded firearm. It was further alleged that the correctional counselor attempted to use his position as a peace officer to avoid arrest and failed to report the arrest to the hiring authority. It was also alleged that the correctional counselor failed to report secondary employment to the department.

## Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition

The hiring authority only sustained the allegation that the correctional counselor was engaged in employment outside of the department and had failed to report that employment to the hiring authority. The hiring authority issued a letter of instruction to the correctional counselor.

## Disciplinary Assessment

The department attorney and hiring authority failed to consult with the OIG at critical junctures of the case. The department attorney apparently made recommendations to the hiring authority, recommendations that the hiring authority appears to have followed, without proper consultation with the OIG. Based on the recommendations from the department attorney, the hiring authority did not sustain allegations related to the domestic violence incident despite the fact that the weight of the evidence supported sustaining such allegations. Additionally, it appears that the department attorney engaged in penalty and findings discussions with the hiring authority without notification being made to the OIG. While there was a findings and penalty conference already scheduled between the hiring authority, department attorney, and the OIG, the hiring authority and department attorney contacted the OIG approximately a week before asking whether the conference could be conducted at that time. When it was agreed that the finding and penalty discussion could take place, the department attorney made his recommendations which were followed by the hiring authority without any consideration of opposing viewpoints that would have supported the domestic violence allegations. The department attorney then failed to provide written confirmation of penalty discussions.

## Assessment Questions

- Within 21 calendar days, did the department attorney make an entry into CMS accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

  *The department attorney did not confirm any critical date related to this case, including the deadline by which disciplinary action could be taken.*

- Did the department attorney provide appropriate legal consultation to the hiring authority regarding the sufficiency of the investigation and investigative findings?

  *It is unknown what legal consultation the department attorney provided to the hiring authority. However, a week before the mutually scheduled findings and penalty conference, the OIG monitor received a phone call from the hiring authority who was with the department attorney. It was explained that because the department attorney was available at that time and able to proceed with the findings and penalty conference, the hiring authority and department attorney were requesting to proceed with the conference a week early. The conference was conducted, but it was apparent that the department attorney and the hiring authority had already discussed the case and made decisions on findings and penalty, all without consultation with the OIG. The decisions that were made were contrary to the recommendations of the OIG, including whether domestic violence allegations should be sustained given the nature of victim testimony in these kinds of cases. The department attorney asserted that because the victim in the criminal domestic violence case stated in the trial of this matter that nothing happened and that she fabricated the allegations against the correctional counselor, that conclusively proved that the incident did not happen as she had originally stated to the local law enforcement personnel who arrested the counselor. The department attorney provided no actual transcript from the trial or other documentation supporting his position, and instead maintained that the possibility that the victim in fact lied in court was "speculation." The hiring authority*

*followed the consultation provided by the department attorney despite the fact that the department attorney had no support for his position.*

- Did the hiring authority, who participated in the findings conference, appropriately determine the investigative findings for each allegation?

  *It appears that because the department attorney and the hiring authority discussed this case without consultation with the OIG, the decision not to sustain the allegations of domestic violence against the correctional counselor was not fully discussed. No consideration was given to the likely conclusion that the victim of the domestic violence was in fact dishonest in court and was telling the truth to the law enforcement personnel the night the assault happened. Because of the apparent discussion without consultation, the hiring authority declined to sustain the domestic violence allegations against the correctional counselor.*

- Did the department attorney provide appropriate legal consultation to the hiring authority regarding disciplinary determinations?

  *The department attorney, in what appears to be a consultation with the hiring authority regarding discipline without OIG input, inappropriately recommended not sustaining the allegations of domestic violence against the correctional counselor.*

- Did the department attorney provide to the hiring authority and the OIG written confirmation of penalty discussions?

  *The department attorney provided no written confirmation of penalty discussions.*

- Did the department attorney or disciplinary officer cooperate with and provide continual real-time consultation with the OIG throughout the disciplinary phase, until all proceedings were completed, except for those related to a writ?

  *The department attorney and the hiring authority appear to have engaged in penalty discussions without consultation with the OIG.*

- Did the hiring authority cooperate with and provide continual real-time consultation with the OIG throughout the disciplinary phase, until all proceedings were completed, except for those related to a writ?

  *The hiring authority and department attorney apparently engaged in penalty discussions without informing the OIG that such discussions were taking place or consulting with the OIG.*

- Did the department attorney cooperate with and provide continual real-time consultation with the OIG throughout the writ or court appeal portion of the case?

  *The department attorney did not inform the OIG that penalty discussions were to take place with the hiring authority.*

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2010-12-13 | 11-0001143-IR | 1. Sexual Misconduct | 1. Sustained | Dismissal | Sufficient |

## Facts of the Case

On December 13, 2010, it was alleged that an officer was engaged in a sexual relationship with an inmate. Although the inmate denied the sexual relationship, when it was discovered she was pregnant, the inmate admitted the sexual relationship with the officer.

## Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition

The hiring authority sustained the allegation of sexual misconduct with the inmate and determined that dismissal was the appropriate penalty. However, the officer resigned before the investigation was concluded. A letter was placed in the officer's official personnel file that indicated his resignation was made under adverse circumstances.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date 2010-09-01 | OIG Case Number 11-0001185-IR | Allegations 1. Other Failure of Good Behavior | Findings 1. Sustained | Penalty No Penalty Imposed | Rating Sufficient |
|---|---|---|---|---|---|

### Facts of the Case
On September 1, 2010, an officer allegedly threw a shoe at his wife, which struck her in the arm. The officer was arrested by local law enforcement officers for domestic violence.

### Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

### Disposition
The hiring authority sustained the domestic violence allegation; however, the officer resigned before any disciplinary action could be taken against him.

### Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date 2011-05-08 | OIG Case Number 11-0001302-IR | Allegations 1. Use of Force 2. Other 3. Over-familiarity 4. Failure to Report | Findings 1. Sustained 2. Sustained 3. Sustained | Penalty Dismissal | Rating Sufficient |
|---|---|---|---|---|---|

### Facts of the Case
It was alleged that on May 8, 2011, an off-duty officer negligently discharged his firearm four times striking a person in the hip. It was also alleged that the officer was overly familiar with a parolee. It was further alleged that the officer failed to report his arrest to the hiring authority.

### Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

### Disposition
The department's Deadly Force Review Board found that the officer did not comply with the department's use-of-force policy. The hiring authority sustained all of the allegations and determined dismissal was the appropriate penalty. However, prior to the completion of the investigation, the officer resigned. A letter indicating the officer resigned under adverse circumstances was placed in his official personnel file.

### Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date 2010-11-01 | OIG Case Number 11-0001303-IR | Allegations | Findings | Penalty Dismissal | Rating Sufficient |
|---|---|---|---|---|---|
| | | 1. Sexual Misconduct | 1. Not Sustained | | |
| | | 2. Contraband | 2. Sustained | | |
| | | 3. Contraband | 3. Not Sustained | | |
| | | 4. Dishonesty | 4. Sustained | | |

## Facts of the Case

In November 2010, two mobile phones confiscated from inmates contained what appeared to be nude photographs of a female officer. The inmates were interviewed and they alleged that the officer was involved in a sexual relationship with an inmate and that the officer was sending him nude photos of herself. An analysis of the mobile phone indicated that the nude photos were transmitted during the summer of 2009. It was further alleged that the officer was dishonest in her investigatory interview.

## Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition

The hiring authority sustained an allegation that the officer was in possession of a mobile phone in the institution and also determined that the officer was dishonest in her investigatory interview and determined that dismissal was the appropriate penalty. The officer resigned before the investigation was concluded and a letter was placed in her official personnel file indicating her resignation was under adverse circumstances.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date 2011-04-10 | OIG Case Number 11-0001307-IR | Allegations | Findings | Penalty Dismissal | Rating Sufficient |
|---|---|---|---|---|---|
| | | 1. Other | 1. Sustained | | |
| | | 2. Dishonesty | 2. Sustained | | |

## Facts of the Case

On April 10, 2011, a parole agent was allegedly involved in a domestic violence incident with his girlfriend. Specifically, it was alleged that the agent grabbed his girlfriend's arms, shoved her, balled up his fists, and threatened to hit her. The agent was arrested by local law enforcement officers.

## Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition

The hiring authority sustained the allegations. However, the parole agent resigned prior to the completion of the investigation; therefore, disciplinary action was not taken. A letter indicating he resigned under adverse circumstances was placed in his official personnel file.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2011-04-28** | **11-0001380-IR** | 1. **Use of Force** | 1. **Exonerated** | **No Penalty Imposed** | **Insufficient** |

## Facts of the Case

On April 28, 2011, while off-duty, a lieutenant discharged two lethal rounds from his 12 gauge shotgun, killing his neighbor's dog. The neighbor's dog had dug under the lieutenant's fence and was attacking the lieutenant's dog. The first round pierced the dog's chest and caused the dog to stop his attack. The lieutenant fired a second round to put the dog down. After the incident, the lieutenant notified local law enforcement and the department.

## Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition

The department's independent Deadly Force Review Board found no violation of department policy, and the hiring authority subsequently exonerated the officer. The OIG concurred in the determination by the board.

## Disciplinary Assessment

The department made appropriate and timely findings. However, the hiring authority failed to consult with the OIG as required.

## Assessment Questions

- Did the hiring authority timely consult with the OIG and the department attorney (if applicable), regarding the sufficiency of the investigation and the investigative findings?

  *The hiring authority did not consult with the OIG prior to making findings concerning the investigation.*

- Did the department attorney or disciplinary officer cooperate with and provide continual real-time consultation with the OIG throughout the disciplinary phase, until all proceedings were completed, except for those related to a writ?

  *The disciplinary officer failed to notify the OIG of the hearing on findings and thereby precluded the OIG from fully monitoring the disciplinary phase of the case. However, the OIG did not disagree with the ultimate outcome of the case.*

- Was the disciplinary phase conducted with due diligence by the department?

  *The Deadly Force Review Board reviewed the case on September 27, 2011, and issued its analysis and findings to the department on September 29, 2011. However, the hiring authority did not make findings on the case until December 2, 2011. Pursuant to its own policy, the hiring authority should have taken action within 14 days of receiving the DFRB report.*

| Incident Date 2011-03-11 | OIG Case Number 11-0001476-IR | Allegations 1. Neglect of Duty 2. Dishonesty | Findings 1. Not Sustained 2. Not Sustained | Penalty No Penalty Imposed | Rating Insufficient |
|---|---|---|---|---|---|

## Facts of the Case

On March 11, 2011, a parole agent allegedly failed to properly supervise a parolee when she failed to issue a warrant for a parolee who had dropped out of a drug treatment program. The parole agent also allegedly made a false statement about a contact with the parolee in her record of supervision notes.

## Investigative Assessment

The Office of Internal Affairs acted promptly in handling the matter and the special agent went above and beyond to obtain all relevant documents to ensure she was prepared for the interview of the parole agent. The hiring authority failed to provide complete documentation with the request for investigation. If the department had obtained all relevant documents, it would have been clear that there was no misconduct. The supervising department attorney delayed so long in assigning the case, the department attorney was assigned to the case the day after the subject interview was completed.

## Assessment Questions

- Did OIA Central Intake make a determination regarding the case within 30 calendar days?

  *The case was assigned at OIA Central Intake on April 19, 2011, and the process was not completed until June 6, 2011.*

- Within 21 calendar days, did the department attorney make an entry into CMS accurately confirming the date of the reported incident, the date of discovery, the deadline for taking disciplinary action, and any exceptions to the deadline known at the time?

  *The department attorney made no CMS entries confirming the date of incident, discovery date, or deadline to take action.*

- Did the department attorney attend investigative interviews for key witnesses to assess witness demeanor and credibility?

  *The supervising department attorney did not assign a department attorney to the case until after the interview of the parole agent took place.*

- Within 21 calendar days following receipt of the investigative report, did the department attorney review the report and provide appropriate substantive feedback addressing the thoroughness and clarity of the report?

  *The department attorney provided no feedback addressing the thoroughness and clarity of the report.*

- Did the department provide written confirmation summarizing all critical discussions about the investigative report to the special agent with a copy to the OIG?

  *The department attorney provided no written confirmation to the special agent.*

- Did the department attorney cooperate with and provide continual real-time consultation with the OIG throughout the investigative phase?

  *The department attorney did not comment on the investigative report and did not obtain key documentation that the special agent gathered relevant to the case. There was no consultation.*

## Disposition

The hiring authority determined there was insufficient evidence to sustain the allegations against the parole agent.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date **2011-04-06** | OIG Case Number **11-0001477-IR** | Allegations 1. **Discourteous Treatment** 2. **Misuse of State Equipment or Property** 3. **Neglect of Duty** 4. **Other** | Findings 1. **Sustained** 2. **Sustained** 3. **Not Sustained** 4. **Sustained** | Penalty **Dismissal** | Rating **Sufficient** |
|---|---|---|---|---|---|

## Facts of the Case

On April 6, 2011, a plumber allegedly brought a crossbow into the institution. It was also alleged that the plumber was in possession of a department owned canister of pepper spray which he was not authorized to possess. Additionally, it was alleged that the plumber was discourteous and uncooperative with responding outside law enforcement officers and that the plumber left his job assignment to go home without first obtaining the permission of his supervisor.

## Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition

The hiring authority sustained all of the allegations except the allegation that the plumber left his job assignment without permission and determined that dismissal was the appropriate penalty. The plumber retired prior to the completion of the investigation; therefore, disciplinary action was not taken. A letter indicating he retired under adverse circumstances was placed in the plumber's official personnel file.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date **2011-03-19** | OIG Case Number **11-0001539-IR** | Allegations 1. **Sexual Misconduct** 2. **Dishonesty** | Findings 1. **Sustained** 2. **Sustained** | Penalty **Dismissal** | Rating **Sufficient** |
|---|---|---|---|---|---|

## Facts of the Case

On March 19, 2011, it was alleged that a parole services associate was engaged in an ongoing sexual relationship with an inmate. The relationship allegedly started in February 2010, and included multiple instances of sexual misconduct.

## Investigative Assessment

Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition

The hiring authority sustained the allegations against the parole services associate and dismissed him from state service. However, the parole services associate resigned before the dismissal took effect.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2010-12-15** | **11-0001714-IR** | 1. **Discourteous Treatment** <br> 2. **Discourteous Treatment** | 1. **No Finding** <br> 2. **Not Sustained** | **Other** | **Sufficient** |

## Facts of the Case
On December 15, 2010, a parole agent allegedly was discourteous to a parolee's sister when he told her he found marijuana in a female parolee's sex toy. The parole agent also allegedly told the parolee's sister that she will "owe him." The parole agent also allegedly falsified a report regarding a parole search and the length of time he was at a parolee's house.

## Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition
The hiring authority determined there was insufficient evidence to sustain the allegations. However, the parole agent was provided training regarding how to professionally communicate with the public and regarding the rules against department employees being overly familiar with inmates and parolees.

## Disciplinary Assessment
The department complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2011-01-24** | **11-0001814-IR** | 1. **Dishonesty** <br> 2. **Other** | 1. **Sustained** <br> 2. **Sustained** | **Dismissal** | **Sufficient** |

## Facts of the Case
On January 24, 2011, an officer allegedly submitted a forged doctor's note to excuse his request for sick leave on New Year's Eve. It was further alleged that the officer was dishonest when he submitted a fraudulent department document when he submitted his December timesheet.

## Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition
The hiring authority sustained all of the allegations and dismissed the officer. However, the officer resigned before the disciplinary action took effect. A letter was placed in his file indicating he resigned under adverse circumstances.

## Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date 2011-04-18 | OIG Case Number 11-0001984-IR | Allegations | Findings | Penalty Dismissal | Rating Sufficient |
|---|---|---|---|---|---|
| | | 1. Over-familiarity | 1. Sustained | | |
| | | 2. Contraband | 2. Sustained | | |
| | | 3. Dishonesty | 3. Sustained | | |

### Facts of the Case
On April 18, 2011, it was alleged that a plumber was introducing mobile phones, tobacco, and narcotics into the institution for financial gain.

### Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

### Disposition
The hiring authority sustained the allegations. However, the plumber was non-punitively terminated due to unauthorized absences that resulted from his arrest; therefore, disciplinary action was not taken. A letter regarding the adverse circumstances was placed in his official personnel file.

### Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date 2011-05-01 | OIG Case Number 11-0001985-IR | Allegations | Findings | Penalty No Penalty Imposed | Rating Sufficient |
|---|---|---|---|---|---|
| | | 1. Over-familiarity | 1. Sustained | | |
| | | 2. Contraband | 2. Sustained | | |
| | | 3. Neglect of Duty | 3. Sustained | | |

### Facts of the Case
From May 2011 through December 2011, a supervising cook allegedly engaged in a romantic relationship with an inmate and brought in mobile phones and sold them to the inmates.

### Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

### Disposition
The hiring authority sustained the allegations and recommended dismissal. However, the cook was already separated as a limited term employee. A letter indicating the cook was separated while pending disciplinary action was placed in her official personnel file.

### Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2011-08-19** | **11-0002254-IR** | 1. **Contraband**<br>2. **Other**<br>3. **Over-familiarity**<br>4. **Dishonesty** | 1. **Sustained**<br>2. **Sustained**<br>3. **Sustained**<br>4. **Sustained** | **Dismissal** | **Sufficient** |

## Facts of the Case
On August 19, 2011, a teacher's assistant allegedly smuggled marijuana, methamphetamine, mobile phones, tobacco, and a switchblade knife into the institution. It was also alleged that she was involved in a sexual relationship with an inmate.

## Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition
The hiring authority sustained the allegations and served the teacher's assistant with a notice of dismissal. However, the teacher's assistant resigned before the disciplinary action took effect. A letter indicating the teacher's assistant resigned pending disciplinary action was placed in her official personnel file.

## Disciplinary Assessment
The department complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| **2011-09-01** | **11-0002479-IR** | 1. **Contraband**<br>2. **Over-familiarity**<br>3. **Dishonesty** | 1. **Sustained**<br>2. **Sustained**<br>3. **Sustained** | **Dismissal** | **Sufficient** |

## Facts of the Case
On September 1, 2011, it was alleged that a library technical assistant was providing tobacco and mobile phones to inmates.

## Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

## Disposition
The hiring authority sustained the allegations and dismissed the library technical assistant, but the library technical assistant resigned before the dismissal took effect. A letter reflecting that the subject resigned under adverse circumstances was placed in his official personnel file.

## Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date 2011-10-02 | OIG Case Number 11-0002545-IR | Allegations 1. Contraband | Findings 1. Sustained | Penalty Dismissal | Rating Sufficient |
|---|---|---|---|---|---|

### Facts of the Case
On October 2, 2011, an officer allegedly brought heroin inside the secured perimeter of the institution to sell to inmates. The officer was arrested and charged with felony offenses.

### Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

### Disposition
The hiring authority sustained the allegations. Prior to the completion of the disciplinary process, the officer was non-punitively terminated for failing to adhere to the terms and conditions of administrative leave.

### Disciplinary Assessment
The department complied with policies and procedures.

| Incident Date 2009-01-01 | OIG Case Number 11-0002547-IR | Allegations | Findings | Penalty Dismissal | Rating Sufficient |
|---|---|---|---|---|---|
| | | 1. Contraband | 1. Sustained | | |
| | | 2. Over-familiarity | 2. Sustained | | |
| | | 3. Neglect of Duty | 3. Sustained | | |
| | | 4. Failure to Report | 4. Sustained | | |

### Facts of the Case
It was alleged that between 2009 and 2011, a licensed vocational nurse was involved in overly familiar relationships with three different inmates. The conduct involved sexual activity, exchanging correspondence and text messages, talking on the telephone, and providing personal information to inmates.

### Investigative Assessment
Overall, the department's investigative process sufficiently complied with policies and procedures.

### Disposition
The hiring authority determined there was sufficient evidence to sustain the allegations and served the licensed vocational nurse with a notice of dismissal. However, she resigned before the disciplinary action took effect. A letter indicating the nurse resigned pending disciplinary action was placed in her official personnel file.

### Disciplinary Assessment
Overall, the department substantially complied with policies and procedures.

| Incident Date | OIG Case Number | Allegations | Findings | Penalty | Rating |
|---|---|---|---|---|---|
| 2011-03-08 | 11-0002786-IR | 1. Over-familiarity<br>2. Dishonesty<br>3. Neglect of Duty<br>4. Dishonesty | 1. Sustained<br>2. Sustained<br>3. Sustained<br>4. Not Sustained | Dismissal | Insufficient |

## Facts of the Case

Between March 2011 and August 2011, a dental assistant allegedly engaged in a sexual relationship with an inmate.

## Investigative Assessment

Although the actual investigation was thorough and conducted in a timely manner, the Office of Internal Affairs did not provide the report to the hiring authority until 40 days after the draft was prepared by the special agent even when the hiring authority made inquiries. Due to the dental assistant being on administrative time off, the undue delay resulted in the department incurring unwarranted costs. It should also be noted that the department attorney knew the report was ready for submission and failed to ensure that the hiring authority timely received the report. The department attorney also failed to attend interviews of key witnesses and did not provide written confirmation regarding discussions regarding the investigative report.

## Assessment Questions

- Was the matter referred to the Office of Internal Affairs as soon as reasonably practical, within 45 calendar days of the date of discovery?

  *The hiring authority discovered the alleged misconduct on March 8, 2011. The request for investigation was not completed until August 16, 2011.*

- Did the special agent cooperate with and provide continual real-time consultation with the OIG?

  *Although the special agent provided continual real-time consultation until the draft report was completed, the special agent's supervisor failed to provide the final report in a timely manner to the hiring authority, even when the hiring authority made inquiries. The OIG had to intervene to have the report provided to the hiring authority.*

- Did the department attorney cooperate with and provide continual real-time consultation with the OIG throughout the investigative phase?

  *The department attorney recommended to the special agent that all information referencing confidential informants be removed from the report and failed to notice the OIG monitor. Also, the department attorney, who knew the report was ready for submission, failed to make an inquiry to the special agent or his supervisor.*

- Was the investigation thorough and appropriately conducted?

  *It was inappropriate to fail to provide the investigative report to the hiring authority to allow the case to be concluded where the report was completed and was not sent to the hiring authority for more than 30 days, while the employee was on paid administrative leave.*

- Did the department attorney attend investigative interviews for key witnesses to assess witness demeanor and credibility?

  *The department attorney did not attend interviews of key witnesses.*

## Disposition

The hiring authority determined there was sufficient evidence to sustain the allegation of over-familiarity and dismissed the dental assistant. She did not file an appeal with the State Personnel Board.

## Disciplinary Assessment

Overall, the department substantially complied with policies and procedures.

# APPENDIX D
# CRITICAL INCIDENT CASE SUMMARIES
## CENTRAL REGION

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| **2010-09-07** | **10-0002793-RO** | **Critical Incident** | **Sufficient** |

### Facts of the Case

On September 7, 2010, a parole agent, on duty, was attacked by a dog at a parolee's residence. The parole agent shot and killed the attacking dog with his department issued firearm.

### Disposition

The Office of Internal Affairs responded with a Deadly Force Investigation Team and immediately began an administrative investigation, which the OIG accepted for monitoring. Outside law enforcement did not take any action in this matter against the parole agent.

### Overall Assessment

Overall the department's response in this case was adequate. No employee misconduct related to this incident was identified. Aside from the deadly force administrative investigation, no referrals were made to the Office of Internal Affairs for investigation. The OIG concurred with that determination.

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| **2010-12-15** | **10-0003761-RO** | **Critical Incident** | **Insufficient** |

## Facts of the Case

On December 15, 2010, an inmate was found unconscious lying on the floor in his cell. It appeared to the officers who found him that he had been seriously injured. The inmate was transported to an outside hospital where he was treated for a serious brain injury. A later investigation determined that the injured inmate had in fact been the victim of an assault.

## Disposition

Potential staff misconduct was identified; therefore, the matter was referred to the Office of Internal Affairs. The Office of Internal Affairs declined to open an investigation.

## Overall Assessment

The department's overall response to the incident was inadequate. Supervisory staff did not preserve or process the potential crime scene and suspect, nor did they notify the investigative services unit until the injured inmate was being prepared for flight to an outside hospital. While the department adequately consulted with the OIG regarding the incident, it failed to provide timely initial notification. The hiring authority referred the matter to the Office of Internal Affairs; the OIG concurred with this decision. The Office of Internal Affairs rejected the request for investigation citing the lack of a documented training or policy violation. The OIG did not concur with that decision because department staff are trained on crime scene preservation and the involved supervisors should have known to preserve the crime scene until the investigative services unit could determine the cause of the inmate's injuries.

## Assessment Questions

- Was the OIG promptly informed of the critical incident?

  *The OIG was not notified until two days after the incident.*

- Did the OIG respond to the scene of the critical incident?

  *The OIG did not respond to the scene because the department did not notify the OIG until two days after the incident.*

- Was the hiring authority's response to the critical incident appropriate?

  *The on scene supervisors both failed to direct that the incident be treated as a potential crime scene and failed to notify the investigative services unit in a timely manner. Additionally, the department waited two days before notifying the OIG.*

- Did OIA Central Intake make an appropriate initial determination regarding the case?

  *OIA Central Intake should have opened an investigation, due to the potential neglect of duty coupled with the serious injuries to the inmate.*

- Would the appropriate initial determination or reconsideration determination have been made by OIA Central Intake and/or Office of Internal Affairs Chief without OIG intervention?

  *OIA Central Intake should have opened an investigation due to the potential neglect of duty in securing the scene.*

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| **2011-02-01** | **11-0000345-RO** | **Critical Incident** | **Sufficient** |

## Facts of the Case

On February 1, 2011, four inmates in a housing unit were involved in a fight. In an effort to stop the fighting, officers used pepper spray and another officer fired two less-than-lethal rounds. One of the less-than-lethal rounds inadvertently struck one of the fighting inmates in the head. The inmate who had been hit by the less-than-lethal round was taken to an outside hospital for treatment, but later returned to the institution.

## Disposition

Potential staff misconduct was identified regarding the failure to properly decontaminate an inmate who was exposed to pepper spray. The matter was handled as a training issue instead of discipline and no referral was made to the Office of Internal Affairs.

## Overall Assessment

The department's overall response to the incident was adequate in all critical aspects. The department did not timely advise the OIG about the incident. The OIG was notified three hours after the incident occurred. The hiring authority chose not to refer the matter to the Office of Internal Affairs; the OIG concurred with this decision.

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| **2011-02-03** | **11-0000372-RO** | **Critical Incident** | **Sufficient** |

## Facts of the Case

On February 3, 2011, an inmate approached an officer and reported he had been assaulted. The inmate appeared to have suffered injuries to his face, including a swollen eye and blood coming from his nose. At the institution's medical clinic, the inmate was examined and immediately transported to a local hospital due to a possible broken hand and moderate head injuries. Throughout the night, the head trauma worsened and he was placed on life support due to the lack of brain activity. The inmate died on February 4, 2011.

## Disposition

The subsequent investigation revealed that four inmates attacked and battered the injured inmate in three separate attacks. The attacking inmates were referred to the district attorney's office for prosecution. No staff misconduct was identified; therefore, the matter was not referred to the Office of Internal Affairs for investigation.

## Overall Assessment

Overall, the department's response to the incident was sufficient. The department consulted with the OIG about the incident, but it failed to provide sufficient notification. The OIG was notified of the incident over 24 hours after it occurred. The OIG concurred with the hiring authority's decision not to refer the matter to the Office of Internal Affairs.

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| **2011-02-04** | **11-0000408-RO** | **Critical Incident** | **Insufficient** |

## Facts of the Case

On February 4, 2011, a control booth officer watched as an inmate walked to his cell in the upper tier after finishing his shower. As the officer opened the inmate's cell, his cellmate came out of the cell and started to assault the approaching inmate in the head and torso area. Another inmate ran up to the upper tier and also joined in the assault. The officer activated the alarm and additional officers responded to the area. The officer fired two less-than-lethal rounds to stop the assault. The inmate that was attacked sustained a punctured lung.

## Disposition

Potential staff misconduct was identified; therefore, the case was referred to the Office of Internal Affairs for investigation. An investigation was opened, which the OIG accepted for monitoring. The case against the inmates was referred to the district attorney's office for prosecution.

## Overall Assessment

The department's use-of-force review committee did not adequately review and respond to the incident. The three separate levels of review of the incident all determined that staff's actions before, during, and after the use of force were within policy. Once a potential policy violation was discovered, the hiring authority failed to take immediate action and waited over four months to refer the matter to the Office of Internal Affairs. The department adequately notified and consulted with the OIG on the incident.

## Assessment Questions

- Did the use-of-force review committee adequately review and respond to the incident?

  *The use-of-force review committee did not adequately review and respond to the incident. The OIG recommended the hiring authority review certain policies that were potentially violated by the officer's actions.*

- Did the hiring authority make a timely decision regarding whether to refer any conduct related to the critical incident to the Office of Internal Affairs?

  *The hiring authority did not make a timely decision regarding the referral of the conduct to the Office of Internal Affairs by failing to take immediate action and waiting over four months to refer the matter to the Office of Internal Affairs.*

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| **2011-02-08** | **11-0000436-RO** | **Critical Incident** | **Sufficient** |

## Facts of the Case

On February 8, 2011, officers observed an inmate in a cell unconscious, lying on the floor in a pool of blood. His cellmate was seen kicking the inmate on his legs. Officers ordered the cellmate to get down and the cellmate kicked the inmate several more times and then assumed a prone position. The unconscious inmate was removed from the cell and taken to a local hospital for medical treatment. The inmate suffered a crushed skull and several broken ribs. The inmate's cellmate had injuries to his knuckles consistent with an assault.

## Disposition

The case against the inmate was referred to the district attorney's office for prosecution and felony charges were filed against the inmate. No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

## Overall Assessment

The department's overall response to the incident was adequate in all critical aspects. The department adequately notified and consulted with the OIG on the incident. The hiring authority decided not to refer the matter to the Office of Internal Affairs. The OIG concurred with this decision.

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| 2011-02-10 | 11-0000457-RO | Critical Incident | Sufficient |

## Facts of the Case

On February 10, 2011, a certified nursing assistant was providing one-on-one coverage of an inmate on suicide watch in the correctional treatment center. The nursing assistant noticed the inmate's arm appeared to be discolored and tried to wake the inmate but he was unresponsive. Two officers responded to the cell. One officer announced a medical emergency on the institutional radio, while the other entered the cell along with medical staff. Medical staff began life-saving measures, which continued until the inmate was transported by ambulance to an outside hospital, and later pronounced deceased.

## Disposition

An autopsy was performed by the coroner's office who determined the cause of death was Atherosclerotic and Hypertensive Cardiovascular Disease; manner of death was natural causes. No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

## Overall Assessment

Overall, the department's response to the incident was sufficient. The department adequately notified and consulted with the OIG on the incident. No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation. The OIG concurred with this decision.

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| 2011-03-04 | 11-0000678-RO | Critical Incident | Insufficient |

## Facts of the Case

On March 4, 2011, an inmate was standing at the cell door yelling "man down!" Two officers responded and a medical emergency was announced. Medical staff responded and began CPR. The inmate was transported to the correctional treatment center. After numerous attempts to resuscitate had failed, the inmate was declared deceased by local paramedics.

## Disposition

Staff misconduct was not identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

## Overall Assessment

The department failed to provide notification of the death to the OIG. The OIG learned of the death by reading the department's daily reports of incidents. Once the OIG learned of the death and contacted the department for information, the OIG encountered difficulties in receiving necessary documents to review the incident. The department's response was unsatisfactory because medical staff did not request an autopsy to determine a definitive cause of death. Furthermore, medical staff failed to follow clinical guidelines when documenting medications administered or not administered to the inmate on the date of death. The OIG reviewed the California Correctional Health Care Services Death Review Summary and noted the summary stated, "Autopsy was requested, but not done," when in fact supporting documentation indicates an autopsy was not requested by medical staff. Additionally, the primary cause of death contained in the summary vastly differed from the cause of death documented on the coroner's certificate of death. The hiring authority decided not to refer the matter to the Office of Internal Affairs, and the OIG concurred with this decision; however, the California Correctional Health Care Services Death Review Committee did refer some of the aforementioned issues to appropriate medical executive staff for review, and the OIG concurred.

## Assessment Questions

- Was the OIG promptly informed of the critical incident?

  *The department did not notify the OIG of the death. The OIG learned of the death by reviewing the department's daily report of incidents.*

| Incident Date<br>**2011-03-15** | OIG Case Number<br>**11-0000757-RO** | Case Type<br>**Critical Incident** | Rating<br>**Insufficient** |
|---|---|---|---|

## Facts of the Case

On March 15, 2011, a correctional counselor was crossing a street in the center of a crosswalk on institution grounds when he was struck by a vehicle driven by a lieutenant. The injured correctional counselor was transported to a local hospital via helicopter because of a life-threatening injury.

## Disposition

The injured correctional counselor recovered, but did not return to work. The hiring authority referred the matter to the Office of Internal Affairs and it was referred back to the hiring authority for handling without an investigation. The OIG accepted the case for monitoring.

## Overall Assessment

The department failed to complete an incident report and notify the OIG as required. After consulting with the OIG, the hiring authority completed an incident report and referred the matter to the Office of Internal Affairs where it was initially rejected. The Office of Internal Affairs referred the matter back to the hiring authority after the OIG intervened and recommended the matter be referred back to the hiring authority for appropriate action.

## Assessment Questions

- Was the OIG promptly informed of the critical incident?

  *The OIG was not notified of the incident. The OIG discovered the incident in reviewing of the CDCR daily report of incidents.*

- Did the hiring authority make a timely decision regarding whether to refer any conduct related to the critical incident to the Office of Internal Affairs?

  *The hiring authority did not refer the matter to the Office of Internal Affairs until the OIG recommended the matter be referred.*

- Did the Office of Internal Affairs open an investigation?

  *The Office of Internal Affairs eventually approved an action without an investigation.*

- Did OIA Central Intake make an appropriate initial determination regarding the case?

  *The Office of Internal Affairs initially rejected the case, but later referred the matter back to the hiring authority after the OIG intervened.*

- Would the appropriate initial determination or reconsideration determination have been made by OIA Central Intake and/or Office of Internal Affairs Chief without OIG intervention?

  *The OIG intervened and recommended that the Office of Internal Affairs reconsider their position that misconduct did not exist.*

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| **2011-03-17** | **11-0000784-RO** | **Critical Incident** | **Sufficient** |

## Facts of the Case

On March 17, 2011, an officer was conducting an inmate count when he found an inmate lying on his stomach on his assigned bunk. When asked what was wrong, the inmate complained that his back was hurting. The inmate's speech was slurred and he seemed dazed. The officer announced a medical emergency and the inmate was transported to the institution's medical clinic. Upon arrival, the inmate received a medical evaluation and was cleared to return to his assigned cell. The inmate was placed in a wheelchair and as the escort progressed to the exit door of the treatment center, the escorting officer saw the inmate's head had tilted back and he was having difficulty breathing. The officer immediately called for medical staff to assist him and the inmate was returned to the treatment table. Once on the table, the registered nurse contacted the doctor and requested an ambulance; however, prior to being transported to the local hospital, the inmate stopped breathing. Medical staff initiated CPR, but was unable to revive the inmate. Subsequently, the inmate was pronounced deceased.

## Disposition

An autopsy was performed and the cause of death was determined to be Atherosclerotic and Hypertensive Cardiovascular Disease and the manner of death was natural causes. No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

## Overall Assessment

Overall, the department's response to the incident was sufficient. The department adequately notified and consulted with the OIG on the incident. The OIG concurred with the hiring authority's decision not to refer the matter to the Office of Internal Affairs. The medical care will be reviewed by a medical committee.

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| **2011-03-23** | **11-0000795-RO** | **Critical Incident** | **Sufficient** |

## Facts of the Case

On March 23, 2011, an officer discovered an inmate unresponsive, bound and gagged, in his assigned cell. The cellmate refused to exit the cell, so he was sprayed with pepper spray, and he then complied with orders and was removed from his cell. Officers removed the unresponsive inmate from the cell, removed the ligatures from around his neck, and began life-saving measures along with medical staff. The inmate was transported to the institution's medical clinic where life-saving measures continued, but were unsuccessful. The inmate was later pronounced deceased.

## Disposition

The coroner's office performed an autopsy and determined the cause of death was asphyxia by ligature strangulation and the manner of death was homicide. The case against the inmate suspect was referred to the district attorney's office for prosecution. No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

## Overall Assessment

The department's response was satisfactory in all critical aspects. The department adequately notified and consulted with the OIG on the incident. The hiring authority decided not to refer the matter to the Office of Internal Affairs, and the OIG concurred with this decision.

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| **2011-03-30** | **11-0000921-RO** | **Critical Incident** | **Sufficient** |

## Facts of the Case

On March 30, 2011, an inmate called for officers when his cellmate was unresponsive. Officers and medical staff arrived at the cell and began life-saving measures. The inmate was taken to the institution's medical clinic, where he was pronounced deceased by a physician.

## Disposition

An autopsy revealed that the inmate died due to respiratory arrest due to, or as a consequence of, acute heroin toxicity. No staff misconduct was identified; therefore, the case was not submitted to the Office of Internal Affairs for review.

## Overall Assessment

Overall, the department satisfactorily communicated with the OIG. The hiring authority performed in accordance with policy. The OIG concurred in the hiring authority's decision to not submit the matter to the Office of Internal Affairs.

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| **2011-04-20** | **11-0001120-RO** | **Critical Incident** | **Sufficient** |

## Facts of the Case

On April 20, 2011, a sergeant was instructing students in a range classroom regarding firearms. During the discussion, he loaded a magazine, chambered a live round, and accidentally discharged a round striking the wall of the classroom. No injuries resulted from this action.

## Disposition

Potential staff misconduct was identified; therefore, the case was referred to the Office of Internal Affairs for investigation. The Office of Internal Affairs declined to investigate the matter and referred the case to the hiring authority for action without an investigation. The OIG concurred with the decision to proceed without an investigation and accepted the case for monitoring the discipline process.

## Overall Assessment

The Office of Internal Affairs was notified of the incident involving the use of deadly force but declined to initiate a deadly force investigation into the shooting. The department provided adequate notification and consultation to the OIG regarding the incident. The OIG concurred with the decision to submit the matter to the Office of Internal Affairs.

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| **2011-04-28** | **11-0001191-RO** | **Critical Incident** | **Sufficient** |

## Facts of the Case

On April 28, 2011, two inmates were fighting on an exercise yard. One inmate used an inmate manufactured weapon to stab the other inmate. The two inmates were previously identified as enemies due to a prior fight between them. Nevertheless, the inmates were allowed to be housed in the same unit and officers did not realize they were enemies when both inmates were allowed on the exercise yard at the same time.

## Disposition

Potential staff misconduct was identified; therefore, the hiring authority referred the matter to the Office of Internal Affairs for investigation. An investigation was opened, which the OIG accepted for monitoring.

## Overall Assessment

The department adequately responded to the incident in all critical aspects. The department adequately notified and consulted with the OIG regarding the incident.

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| **2011-05-11** | **11-0001299-RO** | **Critical Incident** | **Sufficient** |

## Facts of the Case

On May 11, 2011, an officer saw two inmates attempting to murder another inmate by stabbing him multiple times with inmate manufactured weapons. The officer announced an alarm using an institutional radio. As responding staff arrived to the location of the attack, the two inmate attackers stopped, ran to a different location, and assumed a prone position. The stabbed inmate was immediately transported in an emergency response vehicle to the institution's medical clinic and later flown to a local hospital for further treatment of his injuries. The inmate manufactured weapons were recovered and processed as evidence.

## Disposition

The injured inmate survived and was returned to the institution three days later. The case against the two attacking inmates was referred to the district attorney's office for prosecution. No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

## Overall Assessment

Overall, the department's response to the incident was sufficient. The department adequately notified and consulted with the OIG on the incident. The hiring authority chose not to refer the matter to the Office of Internal Affairs and the OIG concurred with this decision.

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| **2011-05-14** | **11-0001345-RO** | **Critical Incident** | **Sufficient** |

## Facts of the Case

On May 14, 2011, inmates affiliated with a prison gang were walking back to their assigned housing unit after eating breakfast. When the group walked past a fire exit door, numerous inmates of a rival prison gang rushed out and attacked the group of inmates, culminating in a riot. During the attack, officers observed one inmate lying on the ground, appearing to be unconscious, being kicked in the head by another inmate. The inmate lying on the ground sustained severe injuries to his head and face and a concussion from the kicking, as well as being hit with an inmate's cane. A second inmate was stabbed multiple times in the lower back, penetrating his kidneys and liver. Officers utilized pepper spray and batons to stop the attack.

## Disposition

Potential staff misconduct was identified; therefore, the case was referred to the Office of Internal Affairs for investigation. Upon review of the case, the Office of Internal Affairs determined that the matter could be handled without an investigation and returned the matter to the hiring authority for appropriate action, which the OIG accepted for monitoring.

## Overall Assessment

The department's response was satisfactory in all critical aspects. The department adequately notified and consulted with the OIG on the incident. The OIG concurred with the Office of Internal Affairs' response to the hiring authority's referral.

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| **2011-06-05** | **11-0001491-RO** | **Critical Incident** | **Sufficient** |

## Facts of the Case

On June 5, 2011, an inmate was discharged from a local hospital after being admitted for two days for an underlying medical condition. Two nurses assisted the inmate from the wheelchair into the transportation van for return to the institution. As one of the transportation officers secured the seatbelt, he noticed the inmate had become unresponsive to verbal commands. One of the nurses entered the van and determined the inmate was still breathing. Additional medical staff placed the inmate on a gurney and wheeled him into the emergency room where they began CPR. Subsequently, a doctor pronounced the inmate deceased.

## Disposition

Based on the inmate's medical history, the coroner determined there was no need for an autopsy and the death was due to cardiopulmonary arrest. No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

## Overall Assessment

Overall, the department's response to the incident was sufficient. The department informed the OIG about the incident in a timely and sufficient manner. The hiring authority chose not to refer the matter to the Office of Internal Affairs and the OIG concurred with this decision.

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| **2011-06-07** | **11-0001507-RO** | **Critical Incident** | **Sufficient** |

## Facts of the Case

On June 7, 2011, a large riot erupted involving 50 inmates from two different prison gangs. Officers used chemical agents, an expandable baton, and physical force to stop the riot. One inmate was air-lifted to a local hospital after he suffered lacerations to his face and ear requiring a total of 21 sutures. Three other inmates were transported in ambulances to a local hospital for treatment of lacerations. One inmate received seven staples to his head and another received three sutures above his eyebrow. All inmates were returned to the institution following their medical treatment.

## Disposition

The case against the inmates was referred to the district attorney's office for prosecution. No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

## Overall Assessment

The department adequately responded to the incident in all critical aspects. The department's notification and consultation to the OIG regarding the incident was sufficient. The OIG concurred with the decision not to submit the matter to the Office of Internal Affairs.

| Incident Date 2011-06-17 | OIG Case Number 11-0001606-RO | Case Type Critical Incident | Rating Sufficient |
|---|---|---|---|

## Facts of the Case

On June 17, 2011, an officer conducting an inmate count discovered an inmate hanging by a sheet from the air vent in his cell. The inmate was alone in the cell at the time. Officers entered the cell and the inmate was cut down and CPR was started after the absence of a pulse and respirations was determined. The inmate was pronounced deceased after life-saving efforts failed.

## Disposition

The medical examiner determined the cause of death was ligature hanging. There were no signs of foul play associated with the hanging. Staff misconduct was not identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

## Overall Assessment

The department's overall response to the incident was adequate in all critical aspects. The department failed to provide adequate notification, but adequately consulted with the OIG regarding the incident. The OIG concurred with the decision not to submit the matter to the Office of Internal Affairs.

| Incident Date 2011-07-08 | OIG Case Number 11-0001751-RO | Case Type Critical Incident | Rating Sufficient |
|---|---|---|---|

## Facts of the Case

On July 8, 2011, a mentally ill inmate serving a life term became disruptive while in bed at a local hospital. Although the inmate's leg was secured to the bed frame, he was able to attack an officer with his fists by pushing the bed around the room. A second officer used an expandable baton to stop the attack. One of the baton strikes inadvertently struck the inmate in the head.

## Disposition

The inmate received sutures for his head injury and was returned to the institution. The case against the inmate was not referred to the district attorney's office for prosecution. No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

## Overall Assessment

The department adequately responded to the incident in all critical aspects. The department's notification and consultation to the OIG regarding the incident was sufficient. The OIG concurred with the hiring authority's decision not to refer the matter to the Office of Internal Affairs.

| Incident Date 2011-07-12 | OIG Case Number 11-0001772-RO | Case Type Critical Incident | Rating Sufficient |
|---|---|---|---|

## Facts of the Case

On July 12, 2011, an officer was conducting a security check in a housing unit when he discovered three inmates with injuries consistent with being assaulted. After removing those three inmates, officers conducted a visual inspection of all other inmates and discovered nine inmates with injuries consistent with being involved in an altercation. One of the three inmates was in-and-out of consciousness as a result of the assault. It was subsequently learned that a second inmate also lost consciousness as a result of the beating. Officers did not use force during the incident.

## Disposition

No potential staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation. The case against the inmates was not referred to the district attorney's office for prosecution as the evidence gathered did not meet the criteria for criminal charges to be filed.

## Overall Assessment

The department adequately responded to the incident in all critical aspects. While the department adequately consulted with the OIG regarding the incident, it failed to provide adequate notification. The OIG was notified one day after the incident occurred. The OIG concurred with the decision not to submit the matter to the Office of Internal Affairs.

| Incident Date **2011-08-05** | OIG Case Number **11-0001999-RO** | Case Type **Critical Incident** | Rating **Sufficient** |
|---|---|---|---|

### Facts of the Case
On August 5, 2011, two inmates exited their cell and immediately attacked other inmates of a different race in the dayroom. A total of nine other inmates began fighting. Officers fired ten less-than-lethal direct impact rounds and used pepper spray and a baton to stop the attack. One inmate received injuries consistent with being struck in the head with a direct impact round and was transported by ambulance to a local hospital. Two inmate-manufactured knives were found at the scene.

### Disposition
The case against the aggressor inmates was not referred to the district attorney's office for prosecution. No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs. The OIG concurred with the decision not to refer the matter since the head injuries sustained by the inmate was unintentional.

### Overall Assessment
The department's overall response to the incident was adequate except the incident commander did not promptly interview one of the inmates who sustained a head injury and alleged unnecessary force was used. Additionally, the use-of-force review committee did not address an officer's use of pepper spray closer than the recommended distance.

| Incident Date **2011-08-18** | OIG Case Number **11-0002631-RO** | Case Type **Critical Incident** | Rating **Sufficient** |
|---|---|---|---|

### Facts of the Case
On August 18, 2011, during a confidential interview between an inmate and his court-appointed public defender in a court house holding room, the inmate freed his hand from his handcuffs which were over a wrist brace. The inmate attacked his attorney by punching him in the face. Three transportation officers outside the holding room responded and the inmate complied with the orders to move away from the attorney. During the escort to the transportation van, a transportation officer re-secured the inmate's right handcuff. The attorney sustained lacerations to his nose and above his left eye and was transported to a local hospital by ambulance for treatment.

### Disposition
No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs. The case against the inmate was referred to the district attorney.

### Overall Assessment
The department's response was satisfactory in all critical aspects. The OIG concurred with the hiring authority's decision to not refer the matter to the Office of Internal Affairs.

# HEADQUARTERS

| Incident Date **2011-10-11** | OIG Case Number **11-0002534-RO** | Case Type **Critical Incident** | Rating **Sufficient** |
|---|---|---|---|

### Facts of the Case
On October 11, 2011, a large scale riot occurred at an out-of-state contract correctional facility. Authorities utilized various force options to regain control. No correctional staff members were injured, but several inmates were transported to outside hospitals for medical treatment.

### Disposition
No department staff misconduct was identified as contributing to the riot; therefore, the case was not referred to the Office of Internal Affairs.

### Overall Assessment
The department adequately responded to the incident in all critical aspects. The OIG concurred with the hiring authority's decision to not refer the matter to the Office of Internal Affairs.

# NORTH REGION

| Incident Date<br>**2010-06-12** | OIG Case Number<br>**10-0001939-RO** | Case Type<br>**Critical Incident** | Rating<br>**Sufficient** |
| --- | --- | --- | --- |

### Facts of the Case
On June 12, 2010, an inmate reported that his cellmate was unresponsive. Officers immediately responded and began life-saving measures, which were unsuccessful, and the inmate was pronounced deceased by responding paramedics.

### Disposition
The coroner determined that the inmate died of natural causes. No staff misconduct was identified; therefore, the matter was not referred to the Office of Internal Affairs for investigation.

### Overall Assessment
The department adequately responded to the incident in all critical aspects. The OIG concurred with the hiring authority's decision to not refer the matter to the Office of Internal Affairs.

| Incident Date<br>**2010-10-29** | OIG Case Number<br>**10-0003463-RO** | Case Type<br>**Critical Incident** | Rating<br>**Sufficient** |
| --- | --- | --- | --- |

### Facts of the Case
On October 29, 2010, an officer observed an inmate hanging by his neck from a sheet in the back of the cell. After removing the cellmate, officers entered the cell and cut the noose. Life-saving measures were initiated when medical staff arrived on the scene approximately two minutes later. The inmate never regained consciousness and was officially pronounced deceased on November 4, 2010.

### Disposition
An autopsy confirmed the manner of death was suicide by hanging. No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

### Overall Assessment
The department adequately responded to the incident in all critical aspects. The OIG concurred with the hiring authority's decision to not refer the matter to the Office of Internal Affairs.

| Incident Date<br>**2011-02-28** | OIG Case Number<br>**11-0000646-RO** | Case Type<br>**Critical Incident** | Rating<br>**Sufficient** |
| --- | --- | --- | --- |

### Facts of the Case
On February 28, 2011, an officer discovered an inmate hanging from his cell door bars with a manufactured noose around his neck. The inmate was pronounced deceased by an emergency medical technician who noted in a report that an airway could not be established due to rigor in the inmate's jaw. The inmate was housed in an administrative segregation unit, which required welfare checks every 30 minutes.

### Disposition
Potential staff misconduct was identified; therefore, the matter was referred to the Office of Internal Affairs for an investigation. An investigation was opened, which the OIG accepted for monitoring.

### Overall Assessment
The department adequately responded to the incident in all critical aspects. The OIG concurred with the hiring authority's decision to refer the matter to the Office of Internal Affairs.

| Incident Date<br>**2011-02-08** | OIG Case Number<br>**11-0000852-RO** | Case Type<br>**Critical Incident** | Rating<br>**Sufficient** |
| --- | --- | --- | --- |

### Facts of the Case

On February 8, 2011, officers were conducting clothed body searches of inmates by using a handheld metal detector, prior to the inmates being allowed out to an exercise yard. The metal detector alerted on one inmate. The inmate was escorted to a separate area and as he was being handcuffed he attempted to run from the officers. As officers were taking the inmate to the ground, approximately nine inmates began attacking the officers. Additional officers responded and utilized pepper spray and physical strength holds to quell the incident. Three officers and a sergeant were sent out to an outside hospital for moderate injuries.

### Disposition

Staff misconduct was not identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

### Overall Assessment

The department adequately responded to the incident in all critical aspects. The OIG concurred with the hiring authority's decision to not refer the matter to the Office of Internal Affairs.

| Incident Date<br>**2011-05-07** | OIG Case Number<br>**11-0001263-RO** | Case Type<br>**Critical Incident** | Rating<br>**Sufficient** |
| --- | --- | --- | --- |

### Facts of the Case

On May 7, 2011, a riot involving 11 inmates occurred on an exercise yard. An officer fired one lethal round as a warning shot to quell the situation. Additionally, another officer shot two less-than-lethal rounds at two separate inmates, striking each of them. After the rounds were fired, the inmates complied with officers' orders and stopped fighting.

### Disposition

The case against the inmates was not referred to the district attorney's office for prosecution. Potential staff misconduct was identified; however, the matter was not referred to the Office of Internal Affairs for investigation but rather corrective action was taken in the form of training. The officer received training in where to properly place warning shots in safe areas.

### Overall Assessment

Overall, the department's response to the incident was sufficient. The department adequately notified and consulted with the OIG on the incident. The OIG concurred with the hiring authority's decision not to refer the matter to the Office of Internal Affairs.

| Incident Date<br>**2011-05-20** | OIG Case Number<br>**11-0001408-RO** | Case Type<br>**Critical Incident** | Rating<br>**Sufficient** |
| --- | --- | --- | --- |

### Facts of the Case

On May 20, 2011, riots erupted involving approximately 185 inmates on an exercise yard, an adjacent small yard, and a classroom. Officers deployed pepper spray and less-than-lethal weapons which eventually stopped the fighting. However, during the incident a control booth officer observed a defenseless inmate being kicked in the head by other inmates. Consequently, the officer fired one lethal round as a warning shot, which stopped the attack. Seven inmates suffered stab wounds and other injuries from the fighting. The injured inmates were taken to outside hospitals for treatment. None of the injuries were life-threatening. Four officers were treated for minor injuries at the institution.

### Disposition

The matter was referred to the district attorney's office for possible prosecution of the involved inmates. The hiring authority did not identify any staff misconduct; therefore, the matter was not referred to the Office of Internal Affairs.

### Overall Assessment

The department's response to the incident was adequate. The department sufficiently notified and consulted with the OIG. The OIG concurred with the decision not to submit the matter to the Office of Internal Affairs.

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| **2011-05-24** | **11-0001415-RO** | **Critical Incident** | **Sufficient** |

## Facts of the Case
On May 24, 2011, an officer found an inmate hanging by his neck from a noose attached to the top bars at the front of the cell. Staff performed CPR until paramedics arrived and transported the inmate to a local hospital where the inmate was pronounced deceased.

## Disposition
No staff misconduct was identified; therefore, the matter was not referred to the Office of Internal Affairs for investigation.

## Overall Assessment
The department adequately responded to the incident in all critical aspects. The department adequately notified and consulted with the OIG. The OIG concurred with the hiring authority's decision not to refer the matter to the Office of Internal Affairs.

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| **2011-06-02** | **11-0001479-RO** | **Critical Incident** | **Sufficient** |

## Facts of the Case
On June 2, 2011, an inmate attacked another inmate in the exercise yard using an inmate manufactured weapon. The injured inmate sustained a laceration on the neck and chin area requiring 14 sutures to close the wound. Officers utilized pepper spray and blast dispersion grenades to stop the attack.

## Disposition
No staff misconduct was identified; therefore, the matter was not referred to the Office of Internal Affairs.

## Overall Assessment
The department adequately notified and consulted with the OIG regarding the incident. The OIG concurred with the hiring authority's decision not to refer the matter to the Office of Internal Affairs.

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| **2011-06-06** | **11-0001493-RO** | **Critical Incident** | **Sufficient** |

## Facts of the Case
On June 6, 2011, officers called for medical assistance for an inmate who was having a possible seizure. The inmate subsequently went into cardiac arrest. While performing life-saving measures, medical staff found a syringe in the inmate's waist band. The inmate was taken to an outside hospital, but life-saving efforts were unsuccessful and the inmate was pronounced deceased.

## Disposition
No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs.

## Overall Assessment
The department's response to the incident was adequate in all critical aspects. The OIG concurred with the decision to not refer the matter to the Office of Internal Affairs.

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| **2011-07-07** | **11-0001742-RO** | **Critical Incident** | **Sufficient** |

## Facts of the Case

On July 7, 2011, an officer discovered an inmate with a sheet tied around his neck and secured to the cell desk. The officer activated his personal alarm and additional officers responded. The officers removed the cellmate, then entered the cell and loosened the sheet from the inmate's neck. The inmate was moved to the dayroom, and staff began life-saving measures. Despite attempts at life-saving measures, the inmate was pronounced deceased.

## Disposition

The coroner's office conducted an autopsy and determined the manner of death was homicide. The case against the cellmate was referred to the district attorney's office for review. No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

## Overall Assessment

The department adequately responded to the incident in all critical aspects. The OIG concurred with the decision to not refer the matter to the Office of Internal Affairs.

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| **2011-07-13** | **11-0001805-RO** | **Critical Incident** | **Sufficient** |

## Facts of the Case

On July 13, 2011, a riot erupted in a dining facility involving approximately 11 inmates. Officers ordered the inmates to get on the ground but several of them continued assaulting each other. Officers utilized batons to quell the fighting. One of the inmates had an inmate manufactured weapon and turned aggressively towards one of the officers. Fearing for his life, the officer aimed for and struck the inmate once on the head with his baton. The inmate went to the ground but then got back up to resume his aggression towards the officer. Still fearing for his life, the officer once again aimed for and struck the inmate on the head a second time. The inmate fell to the ground but got back up and turned away to attack another inmate. The officer then struck the inmate on the leg which caused the inmate to stop his attack.

## Disposition

The case against the inmate was referred to the district attorney's office for prosecution. No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

## Overall Assessment

The department adequately responded to the incident in all critical aspects. The OIG concurred with the hiring authority's decision to not refer the matter to the Office of Internal Affairs.

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| **2011-08-04** | **11-0001969-RO** | **Critical Incident** | **Sufficient** |

## Facts of the Case

On August 4, 2011, while officers were releasing inmates for the morning meal, they discovered an inmate lying unresponsive on the floor in his cell. The inmate appeared to have a cloth fashioned into a noose around his neck, cuts on his arm, and a bruise on his head. A razor blade with blood on it was located in the cell. Staff initiated CPR but life-saving efforts failed. The inmate was pronounced deceased approximately 25 minutes later.

## Disposition

Potential staff misconduct was identified; therefore, the case was referred to the Office of Internal Affairs for an investigation. An investigation was opened, which the OIG accepted for monitoring.

## Overall Assessment

The department adequately responded to the incident in all critical aspects. The OIG concurred with the hiring authority's decision to refer the matter to the Office of Internal Affairs.

| Incident Date<br>**2011-08-24** | OIG Case Number<br>**11-0002175-RO** | Case Type<br>**Critical Incident** | Rating<br>**Sufficient** |
|---|---|---|---|

### Facts of the Case
On August 24, 2011, a riot involving five inmates erupted in a dining hall. The combatants ignored officers' orders to stop fighting. The responding officers utilized multiple bursts of pepper spray and applied several baton strikes to gain compliance. One officer inadvertently struck a moving inmate on the head just above his left eye, causing a laceration requiring stitches.

### Disposition
The institution's use-of-force committee reviewed the matter, and no staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs.

### Overall Assessment
The department adequately notified and consulted with the OIG regarding the incident. The OIG concurred with the decision not to submit the matter to the Office of Internal Affairs.

| Incident Date<br>**2011-08-27** | OIG Case Number<br>**11-0002178-RO** | Case Type<br>**Critical Incident** | Rating<br>**Sufficient** |
|---|---|---|---|

### Facts of the Case
On August 27, 2011, an inmate was taken to a local hospital after experiencing abdominal pain and vomiting. The inmate died shortly thereafter at the outside hospital of severe sepsis, which led to organ failure.

### Disposition
The coroner determined that the cause of death was natural causes. No staff misconduct was identified; therefore, the matter was not referred to the Office of Internal Affairs for investigation.

### Overall Assessment
The department's response to the incident was adequate in all critical aspects. The department adequately notified and consulted with the OIG regarding the incident. The OIG concurred with the decision not to submit the matter to the Office of Internal Affairs.

| Incident Date<br>**2011-09-01** | OIG Case Number<br>**11-0002218-RO** | Case Type<br>**Critical Incident** | Rating<br>**Sufficient** |
|---|---|---|---|

### Facts of the Case
On September 1, 2011, officers observed three inmates fighting with each other on the exercise yard. After verbal orders to stop fighting had no effect, officers utilized less-than-lethal rounds and pepper spray to gain compliance. One inmate received minor injuries and was transported to an outside hospital for treatment. He was later returned to the institution.

### Disposition
No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

### Overall Assessment
The department adequately responded to the incident in all critical aspects. The hiring authority chose not to refer the matter to the Office of Internal Affairs and the OIG concurred with this decision.

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| **2011-09-09** | **11-0002279-RO** | **Critical Incident** | **Sufficient** |

### Facts of the Case
On September 9, 2011, a ward attempted suicide, but staff intervened. The ward was examined at an outside hospital and returned to the institution where he was placed on suicide watch.

### Disposition
No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

### Overall Assessment
The department adequately responded to the incident in all critical aspects. The OIG concurred with the hiring authority's decision to not refer the matter to the Office of Internal Affairs.

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| **2011-09-09** | **11-0002280-RO** | **Critical Incident** | **Sufficient** |

### Facts of the Case
On September 9, 2011, a ward attempted suicide, but staff intervened. The ward was examined at an outside hospital and returned to the institution where he was placed on suicide watch.

### Disposition
No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

### Overall Assessment
The department adequately responded to the incident in all critical aspects. The OIG concurred with the hiring authority's decision to not refer the matter to the Office of Internal Affairs.

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| **2011-09-09** | **11-0002284-RO** | **Critical Incident** | **Sufficient** |

### Facts of the Case
On September 9, 2011, officers responded to a housing unit for a medical emergency. An inmate was found lying on his cell floor complaining of pain to his shoulder. After his cellmate was removed, the injured inmate was taken to the medical clinic. While at the clinic, it was discovered that the injured inmate had three or four puncture wounds to his left neck and left forearm area.

### Disposition
The case against the cellmate was referred to the district attorney's office for prosecution. No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs.

### Overall Assessment
The department adequately responded to the incident in all critical aspects. The OIG concurred with the hiring authority's decision to not refer the matter to the Office of Internal Affairs.

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| **2011-09-10** | **11-0002288-RO** | **Critical Incident** | **Sufficient** |

## Facts of the Case
On September 10, 2011, an inmate reported that he had been sexually assaulted by his cellmate about two weeks prior. Prison Rape Elimination Act protocols were initiated and an inquiry was completed by the investigative services unit at the institution.

## Disposition
The inquiry by the investigative services unit did not find any evidence to substantiate the sexual assault and the matter was not referred to the district attorney's office for prosecution. No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

## Overall Assessment
The department's overall response to the incident was adequate in all critical aspects. The department informed the OIG about the incident in a timely and sufficient manner. The OIG concurred with the decision to close the case in the absence of supporting evidence. The OIG concurred with the hiring authority's decision to not refer the matter to the Office of Internal Affairs.

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| **2011-09-15** | **11-0002344-RO** | **Critical Incident** | **Sufficient** |

## Facts of the Case
On September 15, 2011, an inmate reported that he had been sexually assaulted by his cellmate. Prison Rape Elimination Act protocols were initiated and an inquiry was completed by the investigative services unit at the institution.

## Disposition
The inquiry by the investigative services unit did not find any evidence to substantiate the sexual assault and the matter was not referred to the district attorney's office for prosecution. No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

## Overall Assessment
The department's overall response to the incident was adequate in all critical aspects, except that the department did not notify the OIG in a timely manner. The OIG was notified 12 hours after the inmate reported the incident. The OIG concurred with the decision to close the case in the absence of supporting evidence. The OIG concurred with the hiring authority's decision to not refer the matter to the Office of Internal Affairs.

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| **2011-09-01** | **11-0002349-RO** | **Critical Incident** | **Sufficient** |

## Facts of the Case
On September 1, 2011, an inmate reported that she had been sexually assaulted by another inmate. Prison Rape Elimination Act protocols were initiated and an inquiry was completed by the investigative services unit at the institution.

## Disposition
The case was forwarded and accepted for prosecution by the district attorney's office. No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

## Overall Assessment
The department's overall response to the incident was adequate in all critical aspects. The OIG concurred with the hiring authority's decision to not refer the matter to the Office of Internal Affairs.

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| 2011-09-21 | 11-0002385-RO | Critical Incident | Sufficient |

## Facts of the Case

On September 21, 2011, a parole agent placed his state issued handgun on a hook on the back of the restroom stall door while using the restroom at a parole office. When the agent later removed the weapon from the hook, the weapon discharged one round into the door frame of the stall where the bullet lodged.

## Disposition

Although potential staff misconduct was identified, the hiring authority did not refer the matter to the Office of Internal Affairs for an investigation. The hiring authority assigned the parole agent to remedial training on firearms and use-of-force policies. Additionally, the parole agent was issued a letter of instruction.

## Overall Assessment

The department's response was satisfactory in all critical aspects. The OIG concurred with the hiring authority's decision to not refer the matter to the Office of Internal Affairs.

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| 2011-09-21 | 11-0002386-RO | Critical Incident | Sufficient |

## Facts of the Case

On September 21, 2011, two inmates attacked another inmate in a yard. Officers ordered the inmates to get down, but the inmates failed to comply. The observation tower officer fired two less-than-lethal wood rounds and responding staff utilized pepper spray, but inmates continued fighting. Finally, officers used expandable batons to quell the incident.

## Disposition

No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

## Overall Assessment

The department adequately responded to the incident in all critical aspects. The OIG concurred with the hiring authority's decision to not refer the matter to the Office of Internal Affairs.

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| 2011-09-22 | 11-0002428-RO | Critical Incident | Sufficient |

## Facts of the Case

On September 22, 2011, a riot erupted between ten inmates on an exercise yard. Officers ordered the inmates to stop fighting, but inmates failed to comply. Officers then used pepper spray and fired less-than-lethal rounds, which did not quell the incident. An officer observed one inmate knock another inmate to the ground on his back and begin kicking the downed inmate in the head. The officer fired one lethal round as a warning shot. The warning shot had the desired effect, stopping the fight.

## Disposition

The inmates were not referred to the district attorney's office for prosecution. There was no staff misconduct identified; therefore, the matter was not referred to the Office of Internal Affairs for investigation.

## Overall Assessment

The department adequately responded to the incident in all critical aspects. The department sufficiently notified and consulted with the OIG regarding the incident. The OIG concurred with the decision not to submit the matter to the Office of Internal Affairs.

# SOUTH REGION

| Incident Date<br>**2010-08-19** | OIG Case Number<br>**10-0002641-RO** | Case Type<br>**Critical Incident** | Rating<br>**Sufficient** |
|---|---|---|---|

### Facts of the Case
On August 19, 2010, officers found an inmate unconscious and with a noose around his neck. Following an emergency medical response, the inmate was transported to a local hospital and pronounced deceased shortly thereafter. The investigative services unit preserved the crime scene. The cellmate was placed in an administrative segregation unit pending response from local law enforcement officers.

### Disposition
The case against the cellmate was referred to the district attorney's office for prosecution. No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

### Overall Assessment
Overall, the department's response to the incident was sufficient. The department adequately notified and consulted with the OIG regarding the incident.

| Incident Date<br>**2011-03-16** | OIG Case Number<br>**11-0000766-RO** | Case Type<br>**Critical Incident** | Rating<br>**Sufficient** |
|---|---|---|---|

### Facts of the Case
On March 16, 2011, a riot involving approximately 64 inmates occurred in a housing unit. Multiple officers responded and used pepper spray to gain compliance and stop the fighting.

### Disposition
No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

### Overall Assessment
The department adequately responded to the incident in all critical aspects. The department informed the OIG about the incident in a timely and sufficient manner. The hiring authority decided not to refer the matter to the Office of Internal Affairs and the OIG concurred with this decision.

| Incident Date<br>**2011-07-20** | OIG Case Number<br>**11-0001846-RO** | Case Type<br>**Critical Incident** | Rating<br>**Sufficient** |
|---|---|---|---|

### Facts of the Case
On July 20, 2011, three inmates were observed to be fighting on a recreation yard. The inmates were ordered to cease fighting and to lie in a prone position on the ground. All uninvolved inmates complied with the orders, but the three inmates involved in the fighting did not. An officer fired a less-than-lethal foam round at one of the combatants legs. The officer fired the projectile at his intended target, but due to the movement of the inmates involved, one of the inmates was struck on the jaw with the foam projectile. The fighting ceased after the foam round was fired.

### Disposition
The case was not referred to the district attorney's office for prosecution as the identities of the aggressors were not clear. No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

### Overall Assessment
The department adequately notified and consulted with the OIG regarding the incident. The OIG concurred with the decision to not refer the matter to the Office of Internal Affairs.

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| **2011-08-26** | **11-0002171-RO** | **Critical Incident** | **Sufficient** |

## Facts of the Case
On August 26, 2011, a parole agent was attempting to contact a parolee at his residence. As the agent approached the residence, he was charged by a pit bull dog and, fearing for his life, he fired a single shot from his duty weapon striking the dog. Although the bullet struck the dog, the dog was not fatally wounded, and the owner of the dog took custody of the dog for treatment. No other injuries resulted from this incident.

## Disposition
The Office of Internal Affairs dispatched special agents from its Deadly Force Investigation Team to the incident. The Office of Internal Affairs opened both criminal and administrative investigations. The OIG accepted the administrative investigation for monitoring.

## Overall Assessment
The department adequately responded to the incident in all critical aspects. The department adequately notified and consulted with the OIG regarding the incident.

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| **2011-09-04** | **11-0002239-RO** | **Critical Incident** | **Sufficient** |

## Facts of the Case
On September 4, 2011, two inmates battered another inmate on the exercise yard. An officer fired one less-than-lethal projectile at one of the attacking inmates, but inadvertently struck the inmate being battered in the head. The inmate that was struck with the projectile sustained a laceration to the back of his head requiring approximately seven staples. He was treated at a local hospital and later returned to the institution.

## Disposition
The case against the two inmates was referred to the district attorney's office for prosecution, which declined to file criminal charges. No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs.

## Overall Assessment
The department adequately responded to the incident in all critical aspects. The OIG concurred with the decision to not refer the matter to the Office of Internal Affairs.

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| **2011-09-15** | **11-0002317-RO** | **Critical Incident** | **Sufficient** |

## Facts of the Case
On September 15, 2011, an inmate alerted officers that his cellmate needed medical attention. Officers found an inmate unresponsive on the cell floor and initiated life-saving measures. The inmate was transported to a local hospital for further treatment, where he was pronounced deceased.

## Disposition
According to the autopsy report, the cause of death was cardiovascular disease. No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

## Overall Assessment
Overall, the department's response to the incident was adequate. However, the department failed to notify the OIG of the incident in a timely manner. The OIG was notified three hours after the inmate was pronounced deceased. The OIG concurred with the hiring authority's decision to not refer the matter to the Office of Internal Affairs.

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| **2011-09-20** | **11-0002361-RO** | **Critical Incident** | **Sufficient** |

## Facts of the Case

On September 20, 2011, a parole agent shot himself in the leg while attempting to arrest a parolee. The parole agent was treated at a local hospital. No other injuries were reported.

## Disposition

The Office of Internal Affairs dispatched agents from its Deadly Force Investigation Team to the scene of the incident. The Office of Internal Affairs opened both criminal and administrative investigations into the parole agent's firing of his weapon, which the OIG accepted for monitoring.

## Overall Assessment

The department adequately responded to the incident in all critical aspects. The OIG concurred with the decision to refer the matter to the Office of Internal Affairs.

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| **2011-10-03** | **11-0002467-RO** | **Critical Incident** | **Sufficient** |

## Facts of the Case

On October 3, 2011, an inmate was discovered deceased in his cell. An autopsy revealed the inmate had suffered bruising to his brain, multiple fractures to his throat, broken ribs, and a lacerated spleen. The coroner determined the cause of death was a homicide.

## Disposition

The case against the cellmate was referred to the district attorney's office for prosecution. The deceased inmate's cellmate was charged with murder. No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

## Overall Assessment

The department responded adequately to the critical incident, although the notice to the OIG was untimely. The OIG received notification of the death approximately one and one-half hours after the inmate was pronounced deceased. However, four hours passed before the OIG was notified that the death was a potential homicide. Additionally, institution staff was very cooperative with outside law enforcement who conducted the criminal investigation.

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| **2011-10-09** | **11-0002508-RO** | **Critical Incident** | **Sufficient** |

## Facts of the Case

On October 9, 2011, two inmates attacked another inmate on the exercise yard. Officers utilized less-than-lethal impact rounds to stop the attack and inadvertently struck one of the inmates in the head. The inmate sustained a laceration on his head and was treated at the institution.

## Disposition

The case against the two inmates was referred to the district attorney's office for prosecution. No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

## Overall Assessment

Overall, the department responded adequately to the critical incident. However, the OIG was not notified of the critical incident in a timely manner. The OIG received notification of the incident over six hours after it occurred.

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| **2011-10-18** | **11-0002578-RO** | **Critical Incident** | **Sufficient** |

## Facts of the Case

On October 18, 2011, officers observed two separate two-on-one inmate assaults. One of the inmates suffered a life-threatening stab wound to the neck and a stab wound resulting in a collapsed lung. The officers used pepper spray to quell the assaults.

## Disposition

The case against one of the inmates was referred to the district attorney's office for prosecution. No staff misconduct was identified; therefore, the case was not referred to the Office of Internal Affairs for investigation.

## Overall Assessment

The department's overall response to the incident was adequate in all critical aspects. The OIG concurred with the hiring authority's decision to not refer the matter to the Office of Internal Affairs.

| Incident Date | OIG Case Number | Case Type | Rating |
|---|---|---|---|
| **2011-11-01** | **11-0002679-RO** | **Critical Incident** | **Sufficient** |

## Facts of the Case

On November 1, 2011, a parole agent was at a residence attempting to make contact with a potential witness. After the front door was not answered, the parole agent walked to the side of the house when he was charged by a pit bull dog. Fearing for his life, the parole agent fired a single shot from his duty weapon at the dog. The dog was not struck and ran back into the yard. No injuries resulted from the discharge of the firearm.

## Disposition

The Office of Internal Affairs dispatched special agents from its Deadly Force Investigation Team to the incident. The Office of Internal Affairs opened both criminal and administrative investigations. The OIG accepted the administrative investigation for monitoring.

## Overall Assessment

The department adequately responded to the incident in all critical aspects. The department adequately notified and consulted with the OIG regarding the incident. The OIG concurred with the hiring authority's decision to refer the matter to the Office of Internal Affairs.

# APPENDIX E
# POST APPEAL CASE SUMMARIES
## CENTRAL REGION

| Incident Date | OIG Case Number | Allegations | Findings | Rating |
|---|---|---|---|---|
| 2009-11-26 | 10-0000544-IR | 1. Failure to Report<br><br>2. Neglect of Duty<br><br>3. Neglect of Duty<br><br>4. Discourteous Treatment<br><br>5. Other Failure of Good Behavior | 1. Not Sustained<br><br>2. Sustained<br><br>3. Not Sustained<br><br>4. Sustained<br><br>5. Sustained | Insufficient |

## Facts of the Case

On November 26, 2009, an inmate threw a crumpled piece of paper at an officer, accidently striking him in the face. The incident was not reported by the officer that day. The next day, allegedly following a sergeant's instructions, two officers stripped the inmate to his boxers and placed the inmate in an outside holding cell in inclement weather of rain, wind, and cold for over three hours. The inmate alleged that he began to feel pain and had difficulty breathing due to the conditions. The inmate was then moved to an indoor holding cell where he was interviewed by a lieutenant and a sergeant, who had allegedly instructed the officers to take the inmate to the holding cell. After being informed of the misconduct, the lieutenant told the inmate that the inmate had done something wrong the night before, the staff had done something wrong now, so "it was a wash and to forget about it." Additionally, two officers reported in their inmate count that the inmate was in his assigned area during the time he was in the holding cell. The sergeant allegedly failed to assure the count was done properly.

## Disposition

The hiring authority sustained allegations against the sergeant that he directed officers to place the inmate in the outside holding cell in his boxers and failed to ensure that officers conducted the count properly. He was issued a letter of reprimand, which he appealed to the State Personnel Board. The OIG did not concur with this penalty. The department and the sergeant entered into a settlement agreement. The sergeant agreed to withdraw the appeal and the department agreed to remove the letter of reprimand from his official personnel file after 18 months. The hiring authority sustained allegations against one of the officers for removing the inmate to an outside holding cell during inclement weather for one and one half hours, stripping the inmate to his boxers, and failing to properly count the inmate. The hiring authority sustained allegations against a second officer for failing to properly count the inmate. Both officers were served with letters of reprimand. The department and the two officers entered into settlement agreements. The officers agreed not to appeal the discipline to the State Personnel Board and the department agreed to remove the letters of reprimand from their official personnel files after two years. The hiring authority did not sustain allegations against the other officers, and found there was insufficient evidence the lieutenant made the alleged statement to the inmate.

## Disciplinary Assessment

The hiring authority unilaterally modified the penalties without prior consultation with the department attorney and the OIG. The OIG did not concur with the penalties as modified and because no factors were provided regarding the stipulated agreements with the officers, the OIG did not have sufficient information to assess whether the settlement agreements with the two officers were appropriate.

| Incident Date 2010-03-28 | OIG Case Number 10-0002074-IR | Allegations | Findings | Rating Insufficient |
|---|---|---|---|---|
| | | 1.  Dishonesty | 1.  Sustained | |
| | | 2.  Other | 2.  Not Sustained | |
| | | 3.  Discourteous Treatment | 3.  Sustained | |
| | | 4.  Dishonesty | 4.  Not Sustained | |
| | | 5.  Neglect of Duty | 5.  Sustained | |
| | | 6.  Failure to Report | 6.  Sustained | |
| | | 7.  Failure to Report | 7.  Not Sustained | |
| | | 8.  Other | 8.  Sustained | |
| | | 9.  Other | | |

## Facts of the Case

On March 28, 2010, an inmate violated facility rules by placing paper over the observation window to his cell. As a result, four officers and a sergeant allegedly violated policy by conducting a cell extraction and using force against the inmate without authorization, and then conspiring not to report the use of force. After a control booth officer opened the cell door, the other officers allegedly pushed the inmate with a shield, and then used force to lift him up off the floor. The incident was allegedly not properly and fully reported. Further, it was alleged that a second sergeant on March 29, 2010, committed a battery on the same inmate in retaliation for the inmate's earlier action of papering over the cell window.

## Disposition

The hiring authority sustained the allegations that the first sergeant, the first officer, and the second officer failed to follow proper procedures in conducting the cell extraction, failed to report the cell extraction, and were misleading when interviewed by the Office of Internal Affairs. The hiring authority did not sustain the allegations that they battered the inmate. The hiring authority dismissed the first sergeant; however, he retired prior to the effective date of the discipline. The hiring authority also dismissed the first officer, who appealed to the State Personnel Board, and imposed a 60 working-day suspension on the second officer, who did not appeal to the State Personnel Board. The hiring authority sustained the allegations that the third officer and the fourth officer failed to follow proper procedures in conducting the cell extraction and failed to report the cell extraction; however, the hiring authority did not sustain the allegations that they battered the inmate or were misleading when interviewed by the Office of Internal Affairs. The hiring authority imposed a 5 percent salary reduction for 24 months on the third officer, who resigned before the discipline became effective. The fourth officer received a five percent salary reduction for three months, which he appealed to the State Personnel Board. The hiring authority sustained the allegation that the control booth officer improperly opened the inmate's cell door; however, the hiring authority did not sustain the allegations that the control booth officer had been dishonest or failed to report the incident. The hiring authority imposed a five percent salary reduction for two months, which the control booth officer did not appeal to the State Personnel Board. The hiring authority determined that there was insufficient evidence to sustain the allegations that the second sergeant had battered the inmate. Prior to the State Personnel Board hearing, the hiring authority and the first officer entered into a settlement agreement. The hiring authority modified the dismissal to a 60 calendar-day suspension, an award of back pay and benefits for time off, and to remove the disciplinary action from the officer's official personnel file one year early. The officer agreed to dismiss his appeal. The fourth officer unilaterally withdrew and dismissed his appeal to the State Personnel Board shortly after it was filed.

## Disciplinary Assessment

The OIG did not concur in the terms of the settlement agreement with the first officer, as it was a major change in the penalty that was not supported by either the facts of the case or the policy considerations. Notwithstanding the OIG's objections, the department settled the matter. In all other respects, the department complied with policy and procedures.

# North Region

| Incident Date 2009-12-05 | OIG Case Number 10-0000552-IR | Allegations | Findings | Rating Insufficient |
|---|---|---|---|---|
| | | 1. Use of Force | 1. Not Sustained | |
| | | 2. Failure to Report | 2. Not Sustained | |
| | | 3. Neglect of Duty | 3. Sustained | |
| | | 4. Neglect of Duty | 4. Not Sustained | |
| | | 5. Dishonesty | 5. Sustained | |

## Facts of the Case

On December 5, 2009, an officer allegedly entered an inmate's cell and made a threatening statement. The inmate struck the officer in the face and the officer failed to report the incident or the battery. He was also allegedly dishonest in a subsequent report concerning the incident.

## Disposition

The hiring authority determined there was sufficient evidence to sustain the allegations and dismissed the officer. Thereafter, he filed an appeal with the State Personnel Board. The department entered into a settlement agreement with the officer in which the dismissal was modified to a one year suspension.

## Disciplinary Assessment

There was no material change in the underlying facts and the department entered into the settlement agreement only to bring finality to the case. Therefore, the OIG did not concur with the settlement agreement.

# SOUTH REGION

| Incident Date | OIG Case Number | Allegations | Findings | Rating |
|---|---|---|---|---|
| 2008-09-21 | 08-0004077-IR | 1. Dishonesty<br>2. Neglect of Duty<br>3. Failure to Report<br>4. Failure to Report | 1. Sustained<br>2. Sustained<br>3. Sustained<br>4. Unfounded | Insufficient |

## Facts of the Case

On September 21, 2008, four youth correctional counselors allegedly allowed two wards to engage in a fight in a laundry room. One of the wards suffered a broken jaw. Later, the four youth counselors allegedly conspired with two additional counselors and agreed not to cooperate with the investigation regarding the incident. It was further alleged that three of the originally involved youth counselors lied during their interviews with the Office of Internal Affairs.

## Disposition

The hiring authority determined that the allegations against the two uninvolved counselors were unfounded. As to the original four counselors, the hiring authority determined there was sufficient evidence to sustain all of the allegations. The hiring authority dismissed the three youth counselors who lied during their interviews with the Office of Internal Affairs. The hiring authority imposed a 60 working-day suspension without pay against the youth counselor who was truthful during his investigatory interview. The four youth counselors filed appeals with the State Personnel Board. The hiring authority entered into a settlement agreement with the counselor who received a 60 working-day suspension. That counselor's penalty was reduced to a 30 working day suspension and the department agreed to pay the counselor 30 working-days of back pay. In exchange, the counselor agreed to resign from the department. The department and three youth counselors that were dismissed also entered into a settlement agreement. The three youth counselors agreed to resign without back pay, and the department withdrew the disciplinary actions.

## Disciplinary Assessment

The OIG did not concur with the settlement agreement with the counselor who received the suspension, because the counselor had already received a lesser penalty than the other subjects when he admitted the misconduct during his investigatory interview. Further, the OIG was concerned that the settlement terms would make it difficult to locate the counselor and call him as a witness against the other employees. The appeal on behalf of the remaining three counselors was scheduled for hearing before the State Personnel Board. The department attorney recommended to the hiring authority that the department enter into a settlement agreement with one of the remaining counselors. All three of the counselors offered to resign if the department agreed to give them six months back pay. The hiring authority agreed to give one of the employees 30 days back pay in exchange for the resignation. The OIG objected to any back pay, found the hiring authority's decision to be unreasonable, and invoked an Executive Review. While the Executive Review was being scheduled, the hiring authority's supervisor spoke with the department attorney and the OIG. After a discussion, the hiring authority's supervisor decided that she would not authorize any back pay as part of any settlement. The parties went back before the administrative law judge and prepared to move forward with the hearing. Before the hearing started, the three counselors offered to resign without any back pay as part of a settlement agreement. The department entered into the settlement agreement, with which the OIG concurred.

| Incident Date 2009-11-20 | OIG Case Number 10-0000145-IR | Allegations | Findings | Rating Insufficient |
|---|---|---|---|---|
| | | 1. **Other** | 1. **Sustained** | |
| | | 2. **Neglect of Duty** | 2. **Sustained** | |
| | | 3. **Dishonesty** | 3. **Sustained** | |

## Facts of the Case

Between November 20, 2009 and December 1, 2009, a parole agent allegedly hit his spouse and threatened her on multiple occasions. In January 2010, the parole agent was ordered not to contact anyone regarding the internal affairs investigation into his conduct, yet he continued to contact and threaten the victim. He also allegedly lied during his interview with the Office of Internal Affairs. Another parole agent allegedly possessed information about the domestic violence, but did not provide the information when requested by a supervisor.

## Disposition

The hiring authority determined there was sufficient evidence to sustain the allegations of domestic violence and dishonesty and dismissed the parole agent. Additionally, the hiring authority determined there was sufficient evidence to sustain the allegation regarding the parole agent who failed to provide information to his supervisor and imposed a 10 percent salary reduction for 18 months. Both parole agents filed appeals with the State Personnel Board. The parole agent who had knowledge of the incident but failed to provide entered into a settlement agreement for a 10 percent salary reduction for 12 months. The other parole agent withdrew his appeal of the dismissal after he was convicted in criminal court.

## Disciplinary Assessment

Although the OIG concurred in the settlement agreement, the department attorney did not perform in accordance with policies and procedures in the discipline process. The department attorney did not submit an adequate pre-hearing settlement conference statement to the State Personnel Board and, when ordered to amend the statement, the department attorney instead had the non-attorney disciplinary officer amend the inadequate pre-hearing settlement conference statement. Additionally, the hiring authority requested a legal opinion regarding the effect a potential criminal conviction for the domestic violence conduct would have on the officer's ability to meet the qualifications to remain a peace officer. However, after consultation with her supervisor, the department attorney failed to provide legal consultation to the hiring authority on the issue.

| Incident Date | OIG Case Number | Allegations | Findings | Rating |
|---|---|---|---|---|
| **2009-09-23** | **10-0000398-IR** | 1. **Failure to Report**<br><br>2. **Other**<br><br>3. **Dishonesty**<br><br>4. **Other Failure of Good Behavior**<br><br>5. **Neglect of Duty**<br><br>6. **Misuse of State Equipment or Property** | 1. **Sustained**<br><br>2. **Sustained**<br><br>3. **Sustained**<br><br>4. **Sustained**<br><br>5. **Sustained**<br><br>6. **Sustained** | **Insufficient** |

## Facts of the Case

On September 23, 2009, an off-duty building maintenance worker at a department youth facility was allegedly involved in a road rage incident while driving on the freeway. During the incident the maintenance worker sprayed mace into the citizen's open car window. Both vehicles stopped at a location off the freeway and outside law enforcement was called. The maintenance worker allegedly threw the mace into a trash can in an attempt to hide evidence prior to the arrival of law enforcement, and was allegedly dishonest when he told law enforcement that he did not use mace, but instead sprayed air freshener into the citizen's car. The maintenance worker was subsequently arrested and failed to timely report his arrest to the department. Because he was not a sworn peace officer, the maintenance worker was not authorized to possess state-issued mace and he misused state property when he sprayed the mace at the private citizen. The maintenance worker's wife, a youth correctional counselor, allegedly failed to timely return the state-issued mace to the youth facility and allowed her husband to possess it. The maintenance worker's wife, along with three other youth correctional counselors, allegedly knew about the maintenance worker's arrest but failed to timely report it.

## Disposition

The hiring authority determined there was sufficient evidence to sustain all of the allegations of misconduct against the maintenance worker and dismissed him. The allegations were also sustained against the maintenance worker's wife who received a 60 working-day suspension. Allegations were sustained against the three other youth counselors. One of the youth counselors received a ten percent salary reduction for one month, and two of the youth counselors received a ten percent salary reduction for six months. The employees all filed appeals with the State Personnel Board. The department entered into settlements with all five employees. The maintenance worker was allowed to resign in lieu of termination and was given four months of back pay. His wife's penalty was reduced to a suspension of 49 working-days. The first youth counselor's penalty was upheld, but the department agreed to remove the adverse action from his official personnel file prior to the expiration of three years. The penalty for the other two youth counselors was reduced to five percent salary reduction for three years.

## Disciplinary Assessment

The department attorney and original hiring authority settled the action against the maintenance worker in spite of the fact that the OIG advised that the settlement was unreasonable and informed the department attorney that the OIG was going to seek an Executive Review. By entering into a settlement prior to an Executive Review, the department attorney did not comply with policies and procedures. Additionally, another department attorney settled three of the actions without consulting with the OIG. The OIG did not concur with any of the four settlements. As to the action against the youth correctional officer who was the wife of the maintenance worker, the department attorney unreasonably recommended settling that case without justification. The OIG invoked an Executive Review. That action was ultimately settled on terms that were consistent with department policy and the OIG concurred with the settlement.

| Incident Date 2009-05-25 | OIG Case Number 10-0000764-IR | Allegations | | Findings | | Rating Insufficient |
|---|---|---|---|---|---|---|
| | | 1. | Discourteous Treatment | 1. | Sustained | |
| | | 2. | Other | 2. | Sustained | |
| | | 3. | Dishonesty | 3. | Sustained | |

## Facts of the Case

On May 25, 2009, a sergeant allegedly used profanity and the word "rat" during a training class to describe staff who report misconduct. It was further alleged that the sergeant lied during his interview with the Office of the Inspector General about the allegations.

## Disposition

Following an investigation by the Office of the Inspector General, the hiring authority determined there was sufficient evidence to sustain the allegations of discourteous treatment and dishonesty. The sergeant was dismissed and filed an appeal with the State Personnel Board. On the first day of the State Personnel Board hearing, the department entered into a settlement agreement with the sergeant. The sergeant was reinstated as a sergeant and agreed to waive any back pay related to the period of time he was dismissed pending his appeal.

## Disciplinary Assessment

The hiring authority and the department attorney did not perform in accordance with policies and procedures. The sergeant admitted that he had been dishonest during his investigatory interview and was allowed to be reinstated as a supervisor. The OIG did not concur in the settlement agreement which allowed the sergeant to be reinstated with a sustained dishonesty allegation.

| Incident Date 2009-09-30 | OIG Case Number 10-0001808-IR | Allegations | | Findings | | Rating Insufficient |
|---|---|---|---|---|---|---|
| | | 1. | Dishonesty | 1. | Not Sustained | |
| | | 2. | Neglect of Duty | 2. | Sustained | |

## Facts of the Case

On September 30, 2009, a parole agent allegedly failed to release a parole hold that resulted in a parolee being incarcerated past the appropriate release date. Between December 2009 and January 2010, the parole agent allegedly falsified her monthly roster and field book indicating parolees were tested for drug use when they had not been tested.

## Disposition

The hiring authority determined there was insufficient evidence to sustain the dishonesty allegation for falsifying drug test records, but that there was sufficient evidence to sustain the allegation that the parole agent was negligent when she failed to remove a parole hold so that the parolee would be released. The hiring authority issued her a letter of reprimand. The parole agent filed an appeal with the State Personnel Board. After the appeal was filed, the hiring authority withdrew the letter of reprimand and issued a letter of instruction to the parole agent.

## Disciplinary Assessment

The hiring authority initially issued a letter of reprimand. However, when the parole agent appealed the case to the State Personnel Board, the hiring authority realized that the parole agent had not been provided with a copy of the investigative report. It was then that the hiring authority decided to withdraw the action and issue a letter of instruction. The OIG was not notified of the hiring authority's actions until they had already been completed.