KAMALA D. HARRIS
Attorney General of California
JONATHAN L. WOLFF
Senior Assistant Attorney General
JAY C. RUSSELL
Supervising Deputy Attorney General
DEBBIE VOROUS, State Bar No. 166884
PATRICK R. MCKINNEY, State Bar No. 215228
JESSICA KIM, State Bar No. 257766
MANEESH SHARMA, State Bar No. 280084
Deputy Attorneys General
 1300 I Street
 P.O. Box 944255
 Sacramento, CA 94244-2550
 Telephone: (916) 324-5345
 Fax: (916) 324-5205
 E-mail: Debbie.Vorous@doj.ca.gov

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **RALPH COLEMAN, et al.,**<br><br>　　　　　　　　Plaintiffs,<br><br>　　v.<br><br>**EDMUND G. BROWN JR., et al.,**<br><br>　　　　　　　　Defendants. | 2:90-cv-00520 LKK JFM PC<br><br>**DECLARATION OF MICHAEL STAINER IN SUPPORT OF DEFENDANTS' OPPOSITION TO MOTION RELATED TO USE OF FORCE AND DISCIPLINARY MEASURES** |

I, MICHAEL STAINER, declare as follows:

　　1.　　I am the Deputy Director-Facility Operations of the Division of Adult institutions (DAI) for the California Department of Corrections and Rehabilitation (CDCR). I am competent to testify to the matters set forth in this declaration and if called upon to do so, I would and could so testify. I submit this declaration in support of Defendants' Opposition to Plaintiffs' Motion Related to Use of Force and the Disciplinary Process.

　　2.　　I began working for CDCR in 1987 as a correctional officer. Over the years I rose

1

through the correctional ranks to Sergeant, Lieutenant, Captain, Associate Warden, and Chief Deputy Warden.  In December 2010, I became Acting Warden at the California Correctional Institution in Tehachapi and was later appointed Warden.  I later became an Acting Associate Director at the Department of Adult Institutions and was appointed Deputy Director in July, 2012.  In my current role as Deputy Director, I am responsible for the management and oversight of the male and female adult institutions.  I directly supervise Associate Directors, who, in turn, supervise the Wardens of the institutions.  I am charged with ensuring that security arrangements are sufficient to ensure the safety of the inmates, staff, visitors, and the public.  Included in my duties is the oversight of the security operations of the institutions, including regulations and policies to avoid inmate escape, prevent inmate violence, and protect all individuals inside and outside of the security perimeter of each institution and fire camp.

3. I am familiar with CDCR's use-of-force policies and procedures.  I oversee CDCR's efforts to adhere to the use-of-force policy system-wide.  I have read and am familiar with the Declaration of Eldon Vail, dated May 30, 2013, in Support of Plaintiffs' motion and the Declaration of Eldon Vail dated March 14, 2013, filed to support Plaintiffs' Opposition to Defendants' Motion to Terminate the *Coleman* case.

**History and Development of the Statewide Use-of-Force Policy**

4. The *Madrid v. Gomez* class action addressed use-of-force issues specifically at Pelican Bay State Prison.  As part of the changes to the use-of-force policy ordered by the *Madrid* court, CDCR developed new statewide policies and staff training programs on use of force.  CDCR most recently revised its statewide use-of-force policy in August 2010, and the revisions were approved by the *Madrid* Court.  CDCR implemented the policy at all institutions, and Judge Henderson issued an order terminating the *Madrid* class action on March 22, 2011.  The court's decision to terminate *Madrid* demonstrated that CDCR successfully complied with the court's orders to implement reforms of its use-of-force policy, to review and analyze all use-of-force incidents, and to create an employee investigation and disciplinary process that is fair, consistent and transparent.

2

Decl. of Michael Stainer Supp. Defs' Opp'n. to Pls.' Mot. Re: Use of Force
(2:90-cv-00520 LKK JFM PC)

**CDCR's Use-of-Force Policy, Mandatory Reporting, and Review Requirements**

5. CDCR's Current Use-of-Force Policy is set out in Title 15 of the California Code of Regulations, and CDCR's Department Operations Manual Chapter 5, Article 2-Use of Force. A true and correct copy of the Department Operations Manual sections regarding use of force is attached as Exhibit A. Title 15, Section 3268-3268.3 set forth CDCR's regulations on use of force and restraining devices.

6. Every staff use of force is an incident that shall be reported. Any employee who uses force or observes a staff use of force must report it to a supervisor as soon as practical and write a report before being relieved from duty. The reporting requirements—which are set forth in Section 51020.17 of the Operations Manual—are detailed and provide specific guidance to staff concerning what must be included in the report.

7. CDCR has implemented an extensive process for reviewing every use-of-force incident, as required by policy. For every reported incident, a good faith effort must be made at all levels of review to reach a judgment whether the staff's actions prior to, during, and subsequent to the incident were in compliance with regulations, procedure, and applicable law. Each reviewer must also determine whether follow-up action is necessary. The incident commander initially reviews every incident involving force before the reporting employees complete their shift. The incident commander also reviews the incident package documentation to ensure that it is adequately prepared and determines whether the force used was in compliance with policy, procedure and applicable law.

8. The incident commander notifies the first level manager, who is a Facility Captain, Correctional Captain, or the Administrative Officer of the Day. The first level manager reviews all documentation concerning the incident to ensure the use of force was properly documented and reviewed by the incident commander. The first level manager also determines whether the force used was in compliance with policy, procedure and applicable law.

9. The second level of managerial review is conducted by an Associate Warden or higher ranking official. The second level manager, who is detached from staff involved in the incident, is the final level of review before the completed incident package is sent to the Use of

Force Coordinator for review by the Institutional Executive Review Committee. The Associate Warden reviews all documentation in the incident package, and the quality of all reports to ensure the use of force was properly documented and reviewed. The second level manager also determines whether the force used was in compliance with policy, procedure, and applicable law.

10. Once the second level manager completes the review, the incident package is sent to the institution's Use of Force Coordinator, who logs and tracks all use-of-force incidents and all allegations of excessive or unnecessary force. The Use of Force Coordinator also ensures thorough and timely review by the Institutional Executive Review Committee by scheduling all cases for review by the committee within 30 days.

11. The Institutional Executive Review Committee reviews and evaluates every use-of-force incident, and every allegation of excessive and unnecessary force. The committee is chaired by the Warden or Chief Deputy Warden, and includes at least one other manager assigned on a rotational basis, an in-service training manager, one health care practitioner or clinician, and the Use of Force Coordinator. A representative of the Inspector General's Bureau of Independent Review may also attend and monitor the Institutional Executive Review Committee meetings.

12. All Institutional Executive Review Committees are required to meet at least monthly, or on a schedule that permits review of all cases within 30 days. In each case, the committee determines whether the force was reasonable and complied with policy, procedures, and training. During the review process, the committee identifies issues in staff use of force and may require that staff clarify reports, order training, or impose other corrective action.

13. In addition to this system for reviewing every use-of-force incident, CDCR has a comprehensive structure for reviewing and investigating all incidents involving the use of deadly force and every death or great bodily injury that could have been caused by a staff use of force. Each incident is reviewed by the Deadly Force Review Board, and the Department Executive Review Committee. A Deadly Force Investigation Team, a team of trained investigators, conducts criminal and administrative investigations into all such incidents.

14. CDCR also has a Use of Force Joint Use Committee, which reviews and evaluates every recommended revision to CDCR's use-of-force regulations and procedures. This

4

Decl. of Michael Stainer Supp. Defs' Opp'n. to Pls.' Mot. Re: Use of Force
(2:90-cv-00520 LKK JFM PC)

committee—which is chaired by one institution head, and includes at least one Lieutenant or Captain from each Division of Adult Institutions mission region, at least one Use of Force Coordinator, at least three representatives from the California Correctional Peace Officers Association, the Chief of the Bureau of Independent Review, and others as needed—meets as necessary but at least quarterly to review recommended revisions.

**CDCR Provides Extensive Training to Its Staff**

15.  It is the responsibility of all CDCR employees to understand and comply with CDCR's use-of-force policy, related procedures, ongoing training and applicable law. At each institution, the Warden is responsible to ensure that all employees receive appropriate training annually and understand the use-of-force policy and procedures, including both the application of force and subsequent reporting and documentation requirements. Each Warden is required to track all training and discipline related to use of force at his or her institution. All institutional custody staff receive annual training on use of force during block training.

16.  All custody staff must attend the Basic Correctional Officer Academy or a Transitional Academy if the employee is transitioning from a Division of Juvenile Justice or Parole Agent position. Training that is relevant to use of force at the Basic Correctional Officer Academy includes six hours of training on the application of restraint gear, sixty hours on defensive tactics without weapons, seven hours on cell extractions, ten hours on chemical agents, twenty hours on expandable baton, sixteen hours on managing effective interaction and conflict with inmates, 2.5 hours on recognizing signs and symptoms of mental illness, and eight hours on use of force.

17.  Staff also receive ongoing training related to use of force. For example, all staff designated to use or authorized to use expandable batons or 40-mm impact munitions receive training for annual recertification and qualification. CDCR's Office of Training and Professional Development also offers a three day, 72 hour Instructors' course on Expandable Baton Training for Trainers. Upon completion of this course, the participant is certified for 3 years and may train staff at their institution.

5

Decl. of Michael Stainer Supp. Defs' Opp'n. to Pls.' Mot. Re: Use of Force
(2:90-cv-00520 LKK JFM PC)

18. The Lieutenant's Academy includes training on incident reports. The Sergeant's Academy includes training on writing and reviewing incident reports.

19. CDCR's Office of Training and Professional Development also offers an 80 hour training which is required for all Peace Officers. This course covers Arrest & Control, Firearms and Chemical Agents. All participants are required to pass two written exams, qualify at the range, and be exposed to chemical agents.

**Oversight by the Office of Inspector General**

20. The Office of Inspector General reviews CDCR use-of-force incidents by attending Institutional Executive Review Committee meetings and by conducting document-based structured reviews. The Office of Inspector General visits each institution to participate in committee meetings at least six times each year. The role of the Office of Inspector General is to provide an independent conclusion regarding whether the force used was in compliance with CDCR policy and procedures and also whether the review process was complete. The Office of Inspector General can refer an incident to the CDCR Office of Internal Affairs for investigation or approval to take disciplinary action. When the Office of Inspector General does not agree with a decision made by the local hiring authority, they can confer with higher level department managers.

21. The Office of Inspector General also provides oversight and makes recommendations regarding revisions to CDCR's use-of-force policy. In the May 2012 Use-of-Force Report, the Office of Inspector General made seven recommendations to CDCR. CDCR has implemented many of the recommendations, and the current status of each of them is discussed in this paragraph:

a. The first recommendation was that CDCR should streamline the Institutional Executive Review Committee meeting process by not reviewing every incident and allow for more time to review the more serious incidents. CDCR was prepared to initiate a pilot at three institutions implementing this streamlined process but, after Plaintiffs filed this motion, we decided to not immediately move forward with a process that might need to be changed or rewritten depending on the outcome of the motion.

6

  b. The second recommendation stated that CDCR should clearly establish who can conduct and participate in video-recorded interviews, including ensuring that staff involved in the incident do not take part in recording the interviews. CDCR has fully implemented this recommendation by issuing a training memorandum dated August 9, 2012, regarding video requirements. All 33 institutions have submitted proof of practice regarding this new training.

  c. The third recommendation stated that CDCR should establish a single designated reporting point for tracking allegations of force. A memorandum dated September 12, 2012 reiterated section 51020.19.4 of the Operations Manual which designates the local Use of Force Coordinator as the single reporting point. All institutions provided proof of compliance memoranda in accordance with the September 12, 2012 memorandum.

  d. The fourth recommendation dealt with parole regions and is not relevant to this motion. This recommendation was fully implemented.

  e. The fifth recommendation requested that the institutional Appeals Coordinator should notify the Use of Force Coordinator of all inmate appeals containing a use-of-force allegation. A memorandum dated September 9, 2012 signed by the Division of Adult Institutions Director reiterates Section 51020.19.4 of the Operations Manual which designates the local Use of Force Coordinator as the single reporting point. All institutions provided proof of compliance memoranda in accordance with the September 12, 2012 memorandum.

  f. The sixth recommendation stated that all allegations of force examined through a report of findings or appeal inquiry should specify any research conducted to locate related incident reports or video recordings, and document witness statements, interviews, emails, videos or other evidence relied upon to support the findings and conclusion. A memorandum dated September 12, 2012 signed by the Division of Adult Institutions Director has been distributed to the field providing direction on how to address any allegations of force that are examined through a Report of Findings or Appeal Inquiry and ensure they include any relevant research or other evidence relied upon to support the findings and conclusion. All institutions provided proof of compliance memoranda in accordance with the September 12, 2012 memorandum.

7

Decl. of Michael Stainer Supp. Defs' Opp'n. to Pls.' Mot. Re: Use of Force
(2:90-cv-00520 LKK JFM PC)

  g. The seventh recommendation stated that CDCR should make training available to supervisory and managerial staff who will conduct administrative interviews, and each institution should maintain an updated list of qualified instructors/interviewers. The current use-of-force and appeals policy adequately controls the process in which Appeal/Administrative Inquiries are conducted. A memorandum will be issued to all Wardens in the near future directing the institutions to identify supervisors trained in conducting administrative interviews relative to Second Level Staff Complaints. Only those staff members who received the training module will be considered qualified interviewers.

  22. The Office of Inspector General report covering the period of January-June 2012 contained only one recommendation: review and consider statewide implementation of the use-of-force training video and test materials developed by California State Prison-Sacramento. During the October 2012 Wardens meeting, the Wardens for all 33 institutions were provided training regarding this video. In addition, CDCR's Communications Office is currently producing a professionally prepared video for further distribution.

**CDCR's Use of Pepper Spray Is Appropriate and Consistent With Policy, And CDCR Continues to Provide Guidance to Staff on Its Use**

  23. CDCR's policy specifically describes the options that CDCR may tactically employ in a use-of-force situation. Use of force options do not have to be utilized in any particular sequence, but the force option used should be the option staff believes is sufficient and reasonable. Verbal persuasion and orders are used prior to resorting to force. Per the policy, force options include chemical agents, hand-held batons, physical strength and holds, less lethal weapons, and lethal weapons. A less-lethal weapon is any weapon that is not likely to cause death, including a 37mm or 40 mm launcher or any other weapon used to fire less-lethal projectiles. A lethal weapon is any weapon that is likely to result in death.

  24. In many controlled use-of-force situations, the use of chemical agents is preferred over physical strength and/or holds to protect the safety of the inmate and the employee(s) involved. The use of pepper spray in these situations is a result of the reasonable decision to subject an inmate who needs to be extracted from his or her cell to the temporary discomfort of

8

Decl. of Michael Stainer Supp. Defs' Opp'n. to Pls.' Mot. Re: Use of Force
(2:90-cv-00520 LKK JFM PC)

the pepper spray in lieu of subjecting the inmate and the employee to likely physical injury if physical strength and/or holds are utilized.

25. CDCR is committed to ensuring that all use-of-force incidents, including incidents that involve the use of pepper spray, comply with the statewide policy. On September 12, 2012, I issued a memorandum entitled "Use of Chemical Agents During Controlled Use of Force Situations and Review of Use of Force Incidents" to all Wardens and Associate Directors-Division of Adult Institutions. The intent of this memorandum was to reiterate expectations related to the use of force, and specifically regarding the application of pepper spray during controlled use-of-force situations. This memorandum specifically points out that "[s]hould it become evident the application of OC products are not effective, rather than continued deployment of chemical agents; alternate use of force options shall be considered." A true and correct copy of this memorandum is attached as Exhibit B. The Wardens issued this memorandum to their staff, and all institutions provided proof of compliance. In addition, this issue was discussed in detail during the October 2012 Wardens meeting.

**Plaintiffs' Misunderstanding of "Management Status"**

26. Plaintiffs allege in their motion that CDCR uses "Management Status" as a method to bypass the normal rules violation report process in order to summarily punish inmates. Plaintiffs' assertion is not based in fact and shows a lack of understanding of what Management Status really is. Plaintiffs did not actually observe management status at any prison they visited. They relied on slim, anecdotal evidence at two institutions. They present no evidence that the practice is "dangerous" or "abusive."

27. Section 3332, subdivision (f), of Title 15, permits the temporary removal of privileges for "Management Cases." A management case is one in which an inmate is continually disruptive, destructive, or dangerous, despite staff orders and warnings to stop such behavior. For example, an inmate who routinely boards up his cell poses a serious risk because staff cannot monitor the inmate's activities. The inmate will be given a rules violation report, but may also be temporarily subject to management status in order to immediately deescalate the behavior. Only

9

Decl. of Michael Stainer Supp. Defs' Opp'n. to Pls.' Mot. Re: Use of Force
(2:90-cv-00520 LKK JFM PC)

1  inmates already housed in an Administrative Segregation Unit or Security Housing Unit may be
2  placed on management status.

3  28. Inmates placed on management status are removed from their cell and have their
4  property confiscated temporarily. The inmate is then returned to his or her cell. Contrary to the
5  picture the plaintiffs try to paint, management status does not involve holding an inmate in a
6  holding cage in his or her underwear for days on end, or any lengthy period of time. The holding
7  cell is used temporarily while officers clean out the cell.

8  29. Inmates on management status are given an urgent or emergent referral to mental
9  health at most institutions. At Corcoran, for example, the local operating procedure requires an
10 emergent referral to be made. The mental health referrals apply to any inmate placed on
11 management status, regardless of whether they are in the Mental Health Services Delivery
12 System.

13 30. Management cases are monitored closely. No inmate may be on management
14 status for more than ten days. Each day, management status cases are discussed at the morning
15 meeting with the Warden. Placing an inmate on management status also requires the approval of
16 a high level correctional officer such as the Administrative Office of the Day or the Chief Deputy
17 Warden. Once the situation is deescalated, the inmate has his property returned.

18 31. Management status cases do not replace the rules violation report process. Inmates
19 are given rules violation reports for their disruptive or criminal behavior. Management status is
20 used to deescalate continuing dangerous and disruptive behavior that the issuance of an rules
21 violation report will not immediately remedy.

22 I declare under penalty of perjury under the laws of the State of California and the United
23 States of America that the foregoing is true and correct. Executed in Sacramento, California on
24 July 24, 2013.

25                                   */s/ Michael Stainer*
                                    Michael Stainer
26                                   Deputy Director, Division of Adult Institutions (A)
27                                   **(Original signature retained by attorney)**

28

10

Decl. of Michael Stainer Supp. Defs' Opp'n. to Pls.' Mot. Re: Use of Force
(2:90-cv-00520 LKK JFM PC)