**EXHIBIT A**

# CHAPTER 5 — ADULT CUSTODY AND SECURITY OPERATIONS

## ARTICLE 1 — PEACE OFFICER AUTHORITY

*Revised February 29, 2009*

**51010.1    Policy**

It is the policy of the California Department of Corrections and Rehabilitation (CDCR) to ensure that CDCR peace officer authority comports with applicable State statutes, regulation and mutual aid agreements.

**51010.2    Purpose**

The purpose of this Article is to clarify CDCR peace officer authority as it relates to inmates, parolees, and California law enforcement requests for assistance.

**51010.3    Peace Officer Authority**

CDCR peace officer authority is outlined in Penal Code (PC) Sections 830.2(d)(1) & (2) and PC 830.5. While normal CDCR peace officer authority applies generally to custody of inmates either inside or outside of a CDCR facility (e.g. escape pursuit and transportation/hospital custody, etc.) and parolees, appropriately trained and equipped CDCR peace officers can be authorized to act outside of normal duties during emergency and non-emergency situations as specified by law.

A CDCR peace officer has authority that extends to any place in the State while engaged in the performance of the duties of his/her respective employment and for the purposes of carrying out the primary function of his/her employment or as required under Sections 8597, 8598, and 8617 of the Government Code (GC).

**51010.4    Emergency Assistance**

When a government agency (city, county, state, federal) makes an emergency mutual aid request that meets the criteria contained in the State Mutual Aid Plan or the Law Enforcement Mutual Aid Plan, response protocol provided in these plans shall be followed.

GC Section 8597 authorizes that when the appropriate state official proclaims a state of emergency or when a state of war emergency exists, PC Section 830.5 CDCR peace officers have full powers and authority as outlined in PC Section 830.1. Criteria for activation of these plans include, but are not limited to, disasters which may result from flood, fire, earthquake, war, sabotage, or riots.

GC Section 8598 authorizes that when a local emergency exists, PC Section 830.5 peace officers have full powers and authority as outlined in PC Section 830.1.

When acting as peace officers under PC Section 830.1, CDCR peace officers are authorized to exercise any powers which are appropriate or which may be directed by their superior officers.

**51010.5    Non-Emergency Assistance (General Law Enforcement Assistance)**

GC Section 8617 provides that the CDCR may exercise non-emergency mutual aid powers in accordance with the Master Mutual Aid Agreement and local ordinances, resolutions, agreements, or plans.

**51010.6    Provision of Assistance in Emergency and Non-Emergency Situations**

CDCR hiring authorities (e.g. Wardens, Regional Parole Administrators) are authorized to provide CDCR peace officer assistance to law enforcement agencies in emergency and non-emergency situations as consistent with the authority discussed herein. Hiring authorities will notify their supervisors of provision of assistance (e.g. Wardens will notify their Associate Directors). Specially trained and equipped peace officers include, but are not limited to, Crisis Response Team members and Emergency Operations Unit personnel conducting tactical and negotiation operations, and Investigative Services Unit members conducting investigative operations, and should be deployed as appropriate for the particular circumstances.

When CDCR peace officers are assigned to provide emergency or non-emergency law enforcement assistance, these tasks become the primary function of their employment for the duration of the assignment. Unless other agreements have been made, all costs associated with this assistance are the responsibility of the CDCR.

**51010.7    Revisions**

The Assistant Secretary, Office of Correctional Safety, shall ensure that the content of this Article is current and accurate.

**51010.8    References**

PC §§ 830.1, 830.2(d)(1) & (2).
GC §§ 8597, 8598, & 8617.

## ARTICLE 2 - USE OF FORCE

*Effective August 20, 2010*

**51020.1    Policy**

It is the policy of the California Department of Corrections and Rehabilitation's (CDCR), Division of Adult Institutions (DAI), to accomplish custodial and correctional functions with minimal reliance on the use of force. Employees may use reasonable force as required in the performance of their duties, but shall not use unnecessary or excessive force. Staff may, at any point, determine the situation can be resolved without the use of force and terminate the use of force process.

This policy, in conjunction with related procedures and training, defines staff responsibilities and limitations concerning the use of force. Procedures and training are used to assist in applying and interpreting policy.

This policy will assist staff in identifying when and how much force is appropriate under different circumstances, ensure that supervision, monitoring, and evaluation of the use of force is consistent with procedures and training, and ensure the investigation of possible unnecessary or excessive use of force. Staff found culpable of violations of the Use of Force Policy will be subject to disciplinary (preventive, corrective, or adverse action) procedures.

**51020.2    Purpose**

The purpose of this Article is to outline DAI's procedures pertaining to the use of force, as set forth in CCR 3268.

**51020.3    Responsibility**

It is the responsibility of all employees to understand and comply with the Use of Force policy, related procedures, ongoing training, and applicable law.

It is the responsibility of each Institution Head:

- To ensure that all employees receive appropriate training annually and understand the Use of Force policy and procedures, including both the application of force and subsequent reporting and documentation requirements.
- To record and track all training and discipline related to the use of force.

**51020.4    Definitions**

The following shall define language usage in this Article:

**Reasonable Force**

Reasonable force is the force that an objective, trained, and competent correctional employee faced with similar facts and circumstances, would consider necessary and reasonable to subdue an attacker, overcome resistance, effect custody, or gain compliance with a lawful order.

**Unnecessary Force**

Unnecessary force is the use of force when none is required or appropriate.

**Excessive Force**

Excessive force is the use of more force than is objectively reasonable to accomplish a lawful purpose.

**Immediate Use of Force**

Immediate use of force is the force used to respond without delay to inmate behavior that constitutes an imminent threat to institution/facility security or the safety of persons. Employees may use immediate force without prior authorization from a higher official.

**Controlled Use of Force**

A controlled use of force is the force used in an institution/facility setting, when an inmate's presence or conduct poses a threat to safety or security and the inmate is located in an area that can be controlled or isolated. These situations do not normally involve the immediate threat to loss of life or immediate threat to institution security. All controlled use of force situations require the authorization and the presence of a First or Second Level Manager, or Administrative Officer of the Day (AOD) during non-business hours. Staff shall make every effort to identify disabilities and note any accommodations that may need to be considered.

**Non-conventional Force**

Non-conventional Force is force that utilizes techniques or instruments that are not specifically authorized in policy, procedures, or training. Depending on the

circumstances, non-conventional force can be necessary and reasonable; it can also be unnecessary or excessive.

**Non-deadly Force**

Non-deadly force is any use of force that is not likely to result in death.

**Deadly Force**

Deadly force is any use of force that is likely to result in death. Any discharge of a firearm is deadly force.

**Great Bodily Injury (GBI)**

Great bodily injury is any bodily injury that creates a substantial risk of death.

**Serious Bodily Injury**

Serious bodily injury means a serious impairment of physical condition, including, but not limited to the following:
- Loss of consciousness;
- Concussion;
- Bone fracture;
- Protracted loss or impairment of function of any bodily member or organ;
- A wound requiring extensive suturing; or
- Serious disfigurement.

**Response Supervisor**

The Response Supervisor is the first line supervisor responsible for the area where an incident occurs.

**Incident Commander**

The Incident Commander is the second line supervisor responsible for the area where an incident occurs or an allegation of excessive or unnecessary force is received.

**First Level Manager**

A First Level Manager is a Facility Captain/Correctional Captain, or the AOD.

**Second Level Manager**

A Second Level Manager is an Associate Warden.

**Institution Head**

The Institution Head is a Warden or designee.

**Institutional Executive Review Committee (IERC)**

The IERC is a committee of institution staff chaired by the respective Institution Head tasked with reviewing all uses of force and every allegation of excessive or unnecessary force.

**Department Executive Review Committee (DERC)**

The DERC is a committee of staff selected by, and including, the Associate Director who oversees the respective Mission-based group. The DERC has oversight responsibility and final review authority over the IERC. The DERC shall review every use of deadly force and every serious injury, great bodily injury or death that could have been caused by a staff use of force. The DERC shall also review those incidents referred to the DERC by the IERC Chairperson or otherwise requested by the DERC.

**Deadly Force Investigation Teams (DFIT)**

DFIT conducts criminal and administrative investigations into every use of deadly force and every death or great bodily injury that could have been caused by a staff use of force. Based on certain local Memoranda of Understanding, criminal investigations may instead be conducted by an outside police department or sheriff's office. DFIT need not investigate the discharge of deadly force inside an institution/facility if a member of an Investigative Services Unit, or an uninvolved supervisor, confirms that the discharge of deadly force was a warning shot and that no injuries were caused by the shot.

**Deadly Force Review Board (DFRB)**

The DFRB conducts a full and complete review of all incidents involving a use of deadly force (except warning shots) and every death or great bodily injury that could have been caused by a staff use of force, regardless of whether the incident occurs in an institutional or community setting.

**Joint Use Committee (JUC)**

The JUC is a committee of field staff from the DAI tasked with reviewing and evaluating recommended revisions to the Division's Use of Force Policy and Procedures.

**Holding Cells**

All holding cells shall be located within buildings. A holding cell shall not be used as a means of punishment. If clothing is taken from an inmate when he/she is placed in a holding cell, alternate clothing shall immediately be provided.

**51020.5        Use of Force Options**

Use of Force options do not have to be utilized in any particular sequence, but should be the force option staff reasonably believes is sufficient. Verbal persuasion or orders should be issued prior to resorting to force and are required to be provided before controlled force is used. The unresisted searching or escorting of an inmate/parolee and the unresisted application of authorized restraint equipment is not a use of force. Use of force options include but are not limited to:
- Chemical agents
- Hand-held batons
- Physical strength and holds. A choke hold or any other physical restraint which prevents the person from swallowing or breathing shall not be used unless the use of deadly force would be authorized.
- Less-lethal weapons: A less lethal weapon is any weapon that is not likely to cause death. A 37mm or 40mm launcher and any other weapon used to fire less-lethal projectiles is a less lethal weapon.
- Lethal weapons: A firearm is a lethal weapon because it is used to fire lethal projectiles. A lethal weapon is any weapon that is likely to result in death.

**51020.6        Use of Restraints**

*Revised May 3, 2012*

The unresisted application of authorized restraint equipment is not a use of force. When mechanical restraint is required, handcuffs, alone or attached to a waist chain, will be the means of restraint normally used. However, additional mechanical restraints, including leg irons, additional chains, straight jackets, leather cuffs, or other specialized restraint equipment may be used when the circumstances indicate the need for the level of control that such devices will provide. Restrained inmates shall never be left unsupervised in an unsecured area.

Use of mechanical restraints on persons confirmed, or suspected by health care staff to be pregnant shall be subject to the following requirements found in California Code of Regulations (CCR) Title 15 section 3268.2 (d) and (e):
- No leg restraints or waist chains shall be applied.
- If handcuffs are applied, the person's arms shall be brought to the front of her body for application.

Mechanical restraints shall not be placed on an inmate during labor, including during transport to a hospital, during delivery, and while in recovery after giving birth, unless circumstances exist that require the immediate application of mechanical restraints to avoid the imminent threat of death, escape, or great bodily injury. In this case, mechanical restraints may be used only for the period during which such threat exists.

The following state-issued restraints and equipment are authorized for use at the discretion of on-duty staff:
- Handcuffs
- Waist Chain
- Leg Irons
- Escort Chains
- Padlocks
- Security Chain
- Spit Hood
- Martin Chain

The following restraints may be used as specified below:
- Safety Triangle: This device is a handcuff retention device, used to prevent inmates from pulling restraint equipment into their cell and may be used at the discretion of on duty staff. The safety triangle may remain attached to the handcuffs if the inmate is being relocated in the housing unit or if attaching and detaching the safety triangle to and from the handcuffs presents a safety concern. (Such as an irate inmate who has threatened violence or an inmate upon whom force has just been used.) The safety triangle is not intended to control the inmate outside of the cell, nor is it intended to pull an inmate to the cell front in order to remove the handcuffs. The officer controlling the safety triangle must be vigilant and efforts should be directed to prevent the inmate from pulling his hands inside the cell while the door is being closed. Prior to using a safety triangle on an inmate confirmed, or suspected by health care staff to be pregnant, a physician must be consulted and any potential risks fully discussed. The final decision to place the device on the inmate will rest with the Warden or Chief Deputy Warden (CDW) and the reviewing physician. The consultation and its outcome must be documented for inclusion in the inmate's health care record and central file.

- Leather Restraints: Leather restraints are used for four/five point restraint in a Correctional Treatment Center, Outpatient Housing Unit, General Acute Care Hospital, or community hospital when authorized by a physician or psychiatrist. Use of restraint equipment at the direction of medical staff shall be fully documented in the institution Health Care Services record of the restrained inmate.
- Soft Restraints: Soft restraints consist of towel or sheets used to temporarily secure an inmate's ankles and/or arms together. After the application of soft restraints, mechanical restraints are removed and staff are to exit the cell before the inmate has time to release himself from the soft restraints. Soft restraints are used on inmates who try to resist entering their cell and were developed in an effort to avoid using physical force on inmates. The Incident Supervisor may authorize the use of soft restraints. If force is used, it must be appropriately documented. Soft restraints shall not be used on inmates confirmed, or suspected by health care staff to be pregnant.
- Hand Isolation Devices (HID): These devices (e.g., hand mittens, etc) are used as an additional measure to restrict an inmate's ability to use his/her hands. HIDs may only be purchased from an approved vendor and used at an institution when authorized, in writing, by the Warden or CDW. Inmates in HIDs must have constant and direct visual supervision at all times. In instances where HIDs are used for Contraband Surveillance Watch (CSW), staff must maintain a log (CDCR Form 114A) which reflects usage times and correlating actions (e.g., 1200 hrs - One HID was removed so the inmate could eat lunch). Prior to placing a HID on an inmate confirmed, or suspected by health care staff to be pregnant, a physician must be consulted and any potential risks fully discussed. The final decision to place the device on the inmate will rest with the Warden or CDW and the reviewing physician. The consultation and its outcome must be documented for inclusion in the inmate's health care record and central file. Equipment Hygiene - HIDs must be cleaned and sanitized on an ongoing basis (e.g., if soiled after a bowel movement, after termination of the CSW, etc.).

Mechanical restraint equipment shall not be used in any manner described in CCR, Title 15, Section 3268.2(c), Use of Restraints. The use of restraint equipment not identified in this section must be preapproved at the level of Associate Director or higher. As part of the mechanical restraint maintenance process, restraints should be routinely cleaned and sanitized to adhere to an acceptable equipment hygiene standard.

### 51020.7    Deadly Force

The CDCR recognizes the sanctity of human life. Therefore, deadly force will only be used when it is reasonably necessary to:

- Defend the employee or other persons from an immediate threat of death or great bodily injury.
- Prevent an escape from custody.
- Stop acts such as riots or arson that constitute an immediate jeopardy to institutional security and, because of their magnitude, are likely to result in escapes, great bodily injury, or the death of other persons.
- Additionally, CDCR operates facilities that maintain livestock or are situated in remote areas. CDCR recognizes the need to dispose of seriously injured or dangerous animals when no other disposition is practical.
- A firearm shall not be discharged if there is a reason to believe that persons other than the intended target will be injured.

### 51020.7.1    Warning Shots

A warning shot discharged from a lethal weapon is deadly force. Firearms may be discharged as a warning only in the safe area of an institutional/facility setting, and only when the use of deadly force is warranted.

### 51020.8    Non-deadly Force

Non-deadly force will only be used when reasonably necessary to:
- Subdue an attacker.
- Overcome resistance.
- Effect custody, or to
- Gain compliance with a lawful order.

### 51020.9    Medical Evaluation

When force is used, a medical evaluation shall be provided as soon as practical.

### 51020.10    Application of Force

Employees may use force in circumstances that require immediate action, or in circumstances that require a controlled use of force. Any application of force, whether immediate or controlled, must be reasonable and in accord with the applicable standards for deadly or non-deadly force.

### 51020.11    Immediate Use of Force in Cells

When immediate force is necessary for inmates confined in their cells, Oleoresin Capsicum (OC) is the preferred option for carrying out the immediate use of force. A verbal warning shall be given before force is used unless the circumstances require immediate force that precludes a verbal warning.

### 51020.11.1    In-Cell Assaults

Unit staff discovering an in-cell assault shall sound an alarm and order the inmates to stop fighting. If the inmates continue to fight or one inmate continues to assault the other, staff are authorized to use chemical agents to stop the incident.

The cell door should not be opened until sufficient staff is present to evaluate the situation. At least two officers shall be present, prior to the door being opened.

The on-scene staff may use their discretion to order the opening of the cell without both inmates restrained in handcuffs. This discretion would apply in the event of incapacitating injuries, illness, or overriding security concerns.

Should the use of chemical agents fail to stop the incident, the supervisor shall order the assembly of a controlled use of force team and immediate physical force may be used to extract the inmates from the cell. While the team is being formed, at least one staff member shall remain at the cell to continue observation of the incident for documentation purposes.

### 51020.11.2    Food Ports

If during routine duties, correctional officers encounter an inmate who refuses to allow staff to close and lock the food port:

The officer shall verbally order the inmate to relinquish control of the food port and allow staff to secure it. The officer shall issue a warning that chemical agents will be used if he/she does not comply.

If the inmate refuses to relinquish control of the food port after the warning, the officer is authorized to administer chemical agents against the inmate to secure the food port. Alternatively, the officer may choose to contact a supervisor and await further guidance in formulating a response.

If the inmate relinquishes control of the food port, it will be secured and designated staff will follow in-cell decontamination procedures.

In the event the use of chemical agents does not accomplish the goal of regaining control of the food port, the officer shall back away from the cell and contact and advise the custody supervisor of the incident. Controlled force will be initiated while custody staff continue to monitor the inmate. Health care staff shall monitor the inmate at least every 15 minutes.

### 51020.12    Controlled Use of Force General Requirements

Use of Force can be controlled when time and circumstances permit advance planning, staffing and organization. A controlled use of force requires authorization and the presence of a First or Second Level Manager, or an AOD during non-business hours.

The Incident Commander shall personally supervise the controlled use of force.

A controlled use of force shall not be accomplished without the physical presence of licensed health care staff.

All controlled uses of force shall be video recorded. A verbal warning shall be issued prior to a controlled use of force. The verbal warning shall contain the following five elements:

- Address the inmate by name.
- Advise the inmate that he/she is being video recorded.
- Order the inmate to voluntarily comply.
- Advise the inmate of the intent to use chemical agents and physical force if he/she does not comply.
- Advise the inmate that sufficient force will be used to remove him/her from the area.

All controlled uses of force shall include a cool down period of reasonable length to allow the inmate an opportunity to comply with staff's orders. The length of the cool down period can vary depending upon the circumstances. The First or Second Level Manager, or the AOD, shall determine the length of the cool down period and communicate this to the use of force team. The Incident Commander shall document the start time and duration of the cool down period on the CDCR 837-A/A1.

**51020.12.1  Controlled Uses of Force-Video Recording Requirements**

Each controlled use of force shall be video recorded. The camera operator shall procure the camera, videotape or disc, backup videotape or disc, and backup battery.

A briefing, including possible tactics to be used, shall be given to the controlled use of force team by the Response Supervisor and/or Incident Commander. This briefing does not need to be video recorded and should be completed away from the presence of any inmates.

Only one incident shall be recorded on each video recording (videotape or video disc will not include multiple incidents).

If the proposed controlled force involves an extraction of two inmates, two camera operators shall be used. Each camera operator will be designated an inmate prior to the application of the controlled use of force and concentrate on that inmate during the recording.

The camera operator shall ensure that an accurate date and time is displayed on the recording.

Filming shall begin with the camera operator stating their name, rank, date, time, and location of the controlled use of force.

The Incident Commander shall identify the inmate involved and state the circumstances of the proposed controlled use of force and/or extraction.

The Response Supervisor, members of the controlled use of force team, health care staff, and the First/Second Level Manager shall identify themselves on camera.

The camera operator shall continue filming to the scene of the proposed controlled use of force and record the events.

If the video recording is interrupted for any reason once the incident/extraction has begun, the camera operator will give an explanation verbally while recording. The entire incident must be video recorded in one segment or scene. The video recording shall continue as long as the inmate is resistive of staff or combative.

If chemical agents were used and the inmate is allowed to decontaminate, ensure the decontamination is filmed.

Video recording shall continue as health care staff conduct an initial evaluation of the inmate, but shall stop while the inmate is treated.

The Incident Commander shall determine when the incident has concluded.

**51020.12.2  Controlled Use of Force Involving the Seriously Mentally Ill**

When inmates are housed in departmental hospitals, infirmaries, Correctional Treatment Centers (CTC), Enhanced Outpatient Program Units (EOP), or Psychiatric Services Units (PSU), or have an EOP level of care designation, the controlled use of force shall occur as follows:

- A licensed health care practitioner designated by the Health Care Manager shall be consulted prior to the use of chemical agents (see Chemical Agents Restrictions).
- Clinical intervention by a licensed practitioner shall be attempted. Clinical intervention shall also precede the extraction of any inmate who is being extracted upon the written order of a medical doctor, psychiatrist, or psychologist to facilitate a change in housing for treatment purposes.
- The clinician shall attempt to verbally counsel the inmate and persuade the inmate to voluntarily come out of the area without force. These efforts shall continue during the cool down period.
- Whenever circumstances permit, the clinician shall be a mental health provider; i.e., Psychiatric Technician, Licensed Clinical Social Worker, Psychologist, or Psychiatrist.

**51020.12.3  Extractions**

Extractions are the most common form of the controlled use of force and usually occur when the inmate is in a confined area such as a cell, holding cell, section, pod, or small exercise yard.

If an extraction becomes necessary, extraction team members shall be issued extraction equipment:

- Riot helmet, with protective face shield, protective vest, breathing mask, elbow and shin protectors, gloves, and bloodborne pathogen protective suit.
- Protective shield, approximately 22" wide and 48" long.
- Short baton(s), handcuffs, and leg restraints.
- Video camera(s) with a back up videotape or disc and back up batteries.

Prior to an extraction, the Response Supervisor or Incident Commander shall ensure that the members of the extraction team do not include any staff member who was directly involved in the incident precipitating the need for extracting the inmate.

Placement of an inmate on the stomach for a short period of time to restrain an inmate is authorized; however once the inmate is exposed to chemical agents and/or if a spit hood/mask is placed on the inmate, staff shall not place the inmate on his stomach, or in a position that allows the inmate to end up on his stomach, for any period longer than necessary to gain or maintain control.

The inmate will be afforded an opportunity to decontaminate from the effects of the chemical agent. If the inmate is wearing a spit hood/mask the contaminated hood/mask shall be replaced with a clean one as soon as practical.

The procedure for cell extractions where two inmates are in the cell remains the same as for a single celled inmate with the following additions:

- Additional team members shall be assigned as determined by the Incident Commander.
- In the event one of the inmates is compliant with staff's instructions, and if in the judgment of the Incident Commander it is safe to open the cell door, the inmate shall be removed. If it is unsafe to remove the compliant inmate, he shall be required to remain in the cell and appropriate instructions shall be issued for the duration of the incident.

  The procedures for an extraction from an exercise yard, pod, or dayroom whether in a segregated housing unit or general population remain the same as cell extractions except as follows:

  - Additional extraction team members or an additional extraction team may be assigned as determined by the Incident Commander.
  - In the event two or more inmates are to be extracted from the same area, at least one additional supervisor shall be assigned.

**51020.12.4  Health Care Issues**

When an immediate threat does not exist, controlled use of force procedures shall be followed for the following situations:

Involuntary Medication: on-duty Health Care Services staff shall ensure medical authorization for the involuntary medication exists, and shall advise the Incident Commander of such prior to the application of controlled use of force procedures.

Only departmentally approved four/five point restraints shall be applied by authorized medical/mental health staff in an infirmary, CTC, or other CDCR medical facility upon the authorization of a physician or psychiatrist. On duty Health Care Services staff shall ensure authorization exists, and shall advise the Incident Commander of such prior to the controlled use of force under these circumstances.

Inmates who have a disability that prevents application of restraint equipment in the prescribed manner shall be afforded reasonable accommodation under the direction of the supervisor in charge. Mechanical restraints shall be applied to ensure effective application while reasonably accommodating the inmate's disability.

Inmates who have a disability that prevents the employment of standard search methods shall be afforded reasonable accommodation under the direction of the supervisor in charge. Such searches shall be thorough and professional, with safety and security being the paramount concern.

Admission into an Infirmary, CTC or Hospital: When a physician or psychiatrist has determined it is necessary to admit the inmate into an infirmary, CTC, or hospital, on duty Health Care Services staff shall ensure that medical authorization for the admission exists, and shall advise the Incident Commander of such, prior to the controlled use of force. Refer to Sections 51020.14.1 and 51020.15.1 for additional information.

**51020.12.5  Food Trays**

Accountability for food trays is an operational concern for the safety and security of institutions. It is important that the staff who issue food trays to inmates in cells account for all trays after the meal is concluded.

If an inmate attempts to break a food tray, the immediate use of chemical agents is authorized to stop the threat of the inmate obtaining dangerous contraband.

If the inmate refuses to return a food tray, the supervisor and the First or Second Level Managers shall be notified. Staff shall document the inmate's refusal to return the food tray on a CDC-115, Rules Violation Report.

The inmate will be advised that he shall not receive another meal until the first scheduled mealtime after the tray is returned. Additionally, the inmate – and all other inmates in the pod/section – will be placed on escort/restraint status to prevent passing of contraband items. Inmates may exit their cells to acquire various services. If the cell is vacated, staff will use that opportunity to retrieve the food tray.

Notice shall be provided to staff members working subsequent shifts to ensure their awareness of the circumstances. Institution/facility staff shall implement security measures to deter and prevent the movement of the retained food tray from one cell to another.

If the inmate retains control of the food tray for a period of 24 hours, the Manager shall determine if controlled force will be used to retrieve the tray. This does not preclude the Manager from making a determination, based on safety and security concerns, to retrieve the tray using force prior to the 24-hour time frame.

If the goal of the controlled use of force is only to retrieve the tray, all staff shall be informed of this in advance. If the inmate has retreated to the back of the cell and the tray can be safely retrieved without the application of force, then staff shall retrieve the tray and exit the cell.

### 51020.13   Processing Video Records

Video equipment, including cameras, batteries, and blank tapes or discs shall be stored in a designated area at each institution. Video recordings shall be maintained for a period of five years from the date of the incident, or longer if warranted.

Video recordings shall be processed as follows:

- The camera operator shall label the tape with the date, time, inmate's name and CDCR number, the camera operator's name, and incident log number, if applicable.
- The Incident Commander shall, prior to being relieved from duty, forward to the designated area for storage any video recordings of controlled uses of force and any video recordings of inmate injuries or interviews following an immediate use of force or an allegation of excessive or unnecessary force. The Incident Commander shall ensure that all such recordings are secured, logged and processed in a manner to preserve evidentiary value.

Based upon individual institution space availability, an institution may maintain evidentiary related video recordings and non-evidentiary video recordings in separate locations, which shall be identified within a local supplement to this section.

### 51020.14   Use of Less Lethal Weapons

The 37mm and 40mm launchers are weapons designed to discharge less lethal impact munitions or chemical agents. They are authorized for use in all areas including segregated housing units, general population housing units, dayrooms, dining halls, concrete yards, exercise yards and work areas.

### 51020.14.1   Use of Less Lethal Weapons for Inmates Identified as Seriously Mentally Ill

In controlled use of force situations for inmates who are housed in departmental hospitals, infirmaries, or other CDCR medical facilities, or who have an EOP level of care designation, the use of less lethal impact munitions is prohibited for direct or indirect use, i.e., body or barricade removal, unless the Institution Head, Chief Deputy Warden, or AOD authorize their use. Circumstances must be serious in nature, calling for extreme measures to protect staff or inmates, i.e.; the inmate may be armed with a deadly weapon.

This does not preclude staff from using impact munitions in immediate force situations to gain control of a disturbance in an exercise yard, dayroom, dining room, or work area, involving inmates who may or may not be known to be seriously mentally disordered.

### 51020.14.2   Use of Less Lethal Weapons During Controlled Uses of Force

The First or Second Level Manager may authorize the use of less lethal impact munitions during controlled use of force situations in a cell, for inmates not identified as mentally disordered, if the inmate is barricaded, or if circumstances are serious in nature calling for extreme measures to protect staff or inmates (the inmate is armed with a deadly weapon).

### 51020.15   Chemical Agents

Departmentally approved chemical agents include, but are not limited to the following: Oleoresin Capsicum OC Chloroacetophenone (CN), and Orthochlorobenzalmalononitrile (CS). OC may be issued to all on-duty departmentally trained peace officers, certified in the use of chemical agents. Employees shall only administer the amount of chemical agents necessary and reasonable to accomplish the control objective.

Staff shall make every reasonable effort to maintain visual contact with an inmate when administering chemical agents and until the inmate is decontaminated.

### 51020.15.1   Chemical Agents Restrictions

While in the community, non-uniformed peace officers that are issued OC products shall carry the product in a concealed manner, unless the peace officer has a badge clearly displayed.

In institutions/facilities where inmates are housed:

- CN/CS shall not be administered into a cell without the approval of the Institution Head or Chief Deputy Warden.
- When the MK-46 projector is used in cells it should be used with the wand applicator attachment. If it is necessary to use the MK-46 projector in cells without the wand applicator, care shall be taken to avoid soft tissue damage to the inmate.

For controlled use of force incidents involving inmates housed in departmental hospitals, infirmaries, CTCs, EOPs, and PSUs, or who have an EOP level of care designation, a licensed health care employee designated by the Health Care Manager shall be consulted prior to the use of chemical agents:

- The licensed health care practitioners shall document his/her recommendation regarding whether or not there is a contraindication for the use of chemical agents on a Medical Chrono (CDC 128C). This document shall be included in the incident package.
- If, during the consultation, the licensed health care practitioners express concerns regarding the use of chemical agents, the First/Second Level Manager authorizing the use of force and health care practitioners shall discuss the matter to determine the best course of action. Health care staff shall consider in providing their consultation, the potential for injury during the use of physical force, as well as the medical implication of exposure to chemical agents. After the consultation, the decision to use chemical agents or physical force shall rest with the First or Second Level Manager authorizing the use of force.
- If the decision is made to go forward with the use of chemical agents, the licensed health care practitioners is responsible for ensuring proper medical equipment and trained health care staff are available during and after the application of the agent to treat the inmate for any adverse reaction due to exposure.
- The Incident Commander shall document the results of the consultation and the basis for the First/Second Level Manager's final decision in the Crime/Incident Report (CDCR 837-A) and on a General Chrono (CDC 128B) for the health care record.
- Staff shall provide assistance to disabled inmates on a case-by-case basis who are exposed to CS/CN or OC and would otherwise have a difficult time evacuating a contaminated area and/or to reasonably accommodate those disabled inmates during decontamination procedures.

### 51020.15.2   Decontamination from Chemical Agents - General

Any inmate exposed to a chemical agent shall be afforded an opportunity to decontaminate as soon as practical.

If an inmate refuses to decontaminate, no other action is necessary, unless the inmate was exposed in a cell and not removed from the cell where the exposure occurred. In these instances, refer to Section 51020.15.4.

Inmates who are in an adjacent cell or in the general area where chemical agents are used are presumed not to be exposed or requiring decontamination unless determined otherwise.

Decontamination of those inmates not directly exposed to chemical agents will be at the supervisor's discretion based upon obvious, physical effects of the chemical agent.

The need to medically treat an inmate for serious injury may supersede the need to decontaminate from the effects of exposure to chemical agents.

Inmates exposed to chemical agents other than OC shall be allowed to change their clothes as soon as practical.

If CN/CS is used in a cell, the inmate must be allowed to exit the cell for exposure to fresh air, take a shower, and to allow the cell to be decontaminated by vacuum and provided clean linen and clothing. If the inmate refuses to come out, force may be used as necessary to remove him from the cell to ensure the inmate is decontaminated in fresh air and the cell is cleaned.

If an inmate has been exposed to chemical agents subsequent to a spit hood being applied, the spit hood shall be removed and replaced with a new hood if it is safe to do so.

When an inmate is in a litter or gurney and needs to be decontaminated, and is cooperative, caution should be exercised if water is used to decontaminate to ensure the inmate's airway is clear. If the inmate is not cooperative and it presents a danger to either staff or the inmate to decontaminate with water in a litter/gurney, then fresh air is an acceptable decontamination method. The Incident Commander

in conjunction with the health care staff shall evaluate the situation and utilize an appropriate decontamination method.

**51020.15.3    Decontamination from Oleoresin Capsicum**

Decontamination from OC may be accomplished by exposing the individual to fresh moving air, or flushing the affected body area with cool water, e.g., shower, sink water, or wet cloths.

Force shall not be used to decontaminate inmates/parolee from the effects of OC unless a serious threat to the inmate's health is present and health care staff determine the inmate must be decontaminated.

No other decontamination is necessary for inmates who have been medically treated and health care staff have determined the inmate has been decontaminated.

As soon as it is practical and safe to do so, decontamination of the affected cell and housing unit shall be accomplished by ventilating the area to remove the airborne agent. Open doors and windows as permitted, or use portable fans to speed up the process. If applicable manually turn the air exchange system to high. A fan and the use of the air exchange system is not recommended for any dry agent that is utilized (i.e., expulsion grenades or muzzle blast). Wiping the area down with damp cloths or mopping is only necessary if a noticeable amount of residue is visible.

After decontamination, the inmate should not be returned to a contaminated cell until sufficient time has elapsed to allow for dissipation of the OC or until the cell has been cleaned.

**51020.15.4    In-Cell Decontamination from Oleoresin Capsicum**

In-cell decontamination may be used for inmates housed in an institution/facility when the Incident Commander determines that allowing an inmate to decontaminate in a shower is a safety concern. An example would be an inmate who is extremely agitated, or an inmate on whom force was used to insert him/her into the cell or secure the food port. The circumstances leading to the order for in-cell decontamination shall be clearly explained in the Response Supervisor's/Incident Commander's report.

If an inmate refuses to decontaminate, no other action is necessary, unless the inmate was not removed from the cell where the exposure occurred. In these instances, in-cell decontamination procedures described below will be followed:

Health care staff shall advise the inmate how to self-decontaminate in his cell using water from the sink. Health care staff shall monitor the inmate approximately every 15 minutes for a period of not less than 45 minutes starting from the last application of chemical agent.

Health care staff shall document the fact the inmate was given instructions and the approximate times of the 15 minute observations on a CDC 7219, Medical Report of Injury or Unusual Occurrence.

If the inmate is under medical supervision, the documented 15-minute observations are not necessary.

As soon as it is practical and safe to do so, decontamination of affected housing units shall be accomplished by ventilating the area to remove the airborne agent. Open doors and windows as permitted, or use portable fans to speed up the process.

**51020.16    Application of Spit Hoods or Masks**

Only departmentally approved spit hoods/masks are authorized for use. A spit hood/mask shall not be placed upon an inmate who:
- Is in a state of altered consciousness (visibly drowsy, stuporous, or unconscious) or;
- Has any visible signs of a seizure; or
- Is vomiting or exhibits signs of beginning to vomit.

A spit hood/mask may be applied to an inmate if:
- Staff believe there is verbal or physical intent by the inmate to contaminate others with spit or other bodily fluids from the nose or mouth; or
- The inmate is not able to control expelling fluids from the nose or mouth (with the exception of vomit); or
- The inmate is on authorized security precautions according to the procedures of the unit where the inmate is housed.
- If the inmate was contaminated with OC before the mask was applied, the mask shall be kept on until the inmate is afforded decontamination unless the inmate is in a state of altered consciousness (visibly drowsy, stuporous, or unconscious); or has any visible signs of a seizure; or is vomiting or exhibits signs of beginning to vomit. In this case the spit hood/mask will be removed immediately and appropriate treatment will be administered.

If a spit hood/mask was applied and the inmate loses consciousness, begins seizing, or begins vomiting the spit hood/mask shall be removed immediately and appropriate treatment will be administered.

If a spit hood/mask is applied to an inmate, it is imperative that constant supervision of the inmate be maintained for signs of respiratory distress. If any respiratory distress is observed, the spit hood/mask shall be removed until the signs of respiratory distress have dissipated.

Once an inmate is exposed to chemical agents and/or if a spit hood/mask is placed on the inmate, staff shall not place them on their stomachs, or in a position that allows the inmate to end up on his stomach, for any period longer than necessary to secure (e.g. handcuff) and/or gain control of the inmate. A prone position makes it difficult for any exposed individual to breathe and may be a contributing factor in positional asphyxia. Positional asphyxia occurs when an individual's body position interferes with respiration, resulting in death.

If an exposed individual is in handcuffs and requires transportation via a gurney, stokes litter, etc., he shall be positioned on his back or side.

Prior to the use of chemical agents, the building ventilation system must be turned off. If the inmate is located in a cell, all water to the cell should be shut off.

**51020.17    Uses of Force-Reporting Requirements**

Every staff use of force is an incident that shall be reported. Uses of force include non-deadly force, deadly force, immediate force, controlled force and non-conventional force. Verbal commands, the application of restraints to an unresisting inmate and the movement of an unconscious or otherwise incapacitated inmate are not uses of force.

Any employee who uses force or observes a staff use of force shall report it to a supervisor as soon as practical and follow up with appropriate documentation prior to being relieved from duty.

The CDCR 837 Crime/Incident Report forms are used for reporting uses of force. Written reports regarding both immediate and controlled use of force shall be documented on a CDCR 837.

Documentation shall identify any witnesses to the incident and describe the circumstances giving rise to the use of force, and the nature and extent of the force used. For more details on written reports and forms see DOM Section 51030.

**51020.17.1    Involved Staff-Reporting Requirements**
- Written reports regarding staff uses force shall be documented on a CDCR 837-C. Reports must be prepared by the employee participants or witnesses, and reviewed by the Incident Supervisor prior to the employee being relieved from duty. Staff shall not collaborate with each other in the preparation of reports.
- If possible, identify important information in the contents of the report as follows:
- Identities of staff that observed and/or participated in the use of force.
- Description of the actions of the inmate and circumstances leading to the use of force.
- Description of the specific force used or observed.
- If chemical agents were used, identify the type of projector used, and from what distance, e.g., a burst of OC from an MK-3, from six feet.
- Description of the inmate's level of resistance.
- Description of why force was used and description of the threat perceived.
- Description of any identified disabilities ascertained through any tracking system and what form of reasonable accommodation and/or assistance was provided during and after the controlled use of force.
- Description and observations of staff or inmate injuries and the cause of the injury, if known.
- Description of observations of decontamination of chemical agents or medical attention given.
- Description of observations or knowledge of the steps taken to decontaminate the housing unit, and those inmates not directly exposed to chemical agents.
- Documentation of any inmate allegation of an unnecessary or excessive use of force.

  Reports should not normally contain clichés, buzzwords, slang terms, or profanity except as a direct quote.

**51020.17.2    Involved Staff-Additional Reporting Requirement for Deadly Force**

An employee who intentionally or accidentally uses deadly force, whether on or off-duty, shall ensure that a supervisory employee is verbally notified of the incident without delay. A written report shall also be required. This reporting is

not a requirement for the lawful discharge of a firearm during weapon's qualifications, firearms training, or other legal recreational use of a firearm.

#### 51020.17.3   Video Records Made After Immediate Uses of Force That Cause Injury and Allegations of Unnecessary or Excessive Force

A video recording of an inmate shall be made under the following circumstances:

- The inmate has sustained a serious bodily injury or great bodily injury that could have been caused by a staff use of force.
- The inmate has made an allegation of an unnecessary or excessive use of force.

Any visible or alleged injuries shall be video recorded. The video recording shall be conducted by persons not involved in the incident. The video recording should be made within 48 hours of discovery of the injury or allegation.

The video recording shall also include a request of the inmate to be interviewed regarding the circumstances of the incident. If the inmate refuses to be video recorded, such refusal shall be recorded.

#### 51020.17.4   Response Supervisor- Reporting Requirements

In addition to writing his/her own report when applicable, prior to being relieved from duty the Response Supervisor shall:

- Gather written reports from staff involved in the use of force incident.
- Serve as the first level of review for all subordinates' reports and shall ensure that all necessary information is contained in these reports. The Response Supervisor is expected to ensure that each employee's report is prepared independent of any other report.
- Ensure no involved employee is relieved of duty prior to receiving his/her written report, unless the employee is physically unable to prepare the report due to an injury. If due to the circumstances a verbal report is not possible, the Response Supervisor shall explain the reason for not taking a verbal report.
- Obtain applicable medical reports from health care staff, inspect the form(s) and determine if all relevant information is present.
- If applicable, complete Report of Occupational Injury or Illness Form (SCIF-3067).
- If applicable, complete State Compensation Insurance Fund Employee Claim for Workers' Compensation Benefits Form (SCIF-3301).
- If applicable, complete Department of Health Services Report of Request and Decision for HIV Testing (CDC-8439) in cases of potential exposure to blood borne pathogens.

#### 51020.17.5   Response Supervisor-Additional Reporting Requirements for Deadly Force

When there has been a use of deadly force, the on-duty supervisor shall ensure that the chain of command is notified and all necessary health and safety, medical, and security measures are initiated. The supervisor shall go to the location and ensure that the scene is protected.

For incidents occurring in an institutional setting, the Watch Commander shall contact the institution's ISU.

For incidents occurring in a community setting, the on-duty supervisor shall ensure local law enforcement is contacted.

The supervisor shall ask the employee who used deadly force to provide a public safety statement immediately after the incident. This is the employee's oral statement. This statement helps determine the general circumstances of the incident, assess the need for resources, set the perimeter, locate injured persons, and determine the nature of the evidence to be sought. It shall provide basic information such as the number of persons involved in the incident, the number not yet in custody and number and direction of shots fired. The statement shall not include, and the employee should not be asked to provide, a step-by-step narrative of the incident or a motive for his/her actions.

The supervisor shall capture the essence of the oral statement in writing and submit it to the Incident Commander.

In circumstances where the use of deadly force results in death or GBI, the staff using the force will be placed on administrative time off (ATO) for 72 hours in order to facilitate department interviews and staff wellness. These 72 hours will be paid contiguous time off, unless they are scheduled regular days off (RDO). RDOs will count toward the contiguous 72 hours but will not be paid unless the employee is called to work. If the 72 hours ATO overlap with a period of pre-scheduled time off (i.e. vacation, holiday, sick leave, etc.) the ATO will be used in lieu of, not in addition to the affected employee's leave credits.

As soon after the incident as is practical, the response supervisor must also initiate Employee Post Trauma Program (EPTP) protocols as delineated in DOM Section 31020.6.4.

#### 51020.17.6   Health Care Staff Use of Force-Reporting Requirements

Health Care Services staff shall complete and submit a CDCR 837-C whenever a Health Care Services staff member:

- Observes an immediate (not controlled) use of force.
- Uses force on an inmate.
- Provides clinical intervention prior to a use of force.
- Hears an inmate allegation of an unnecessary or excessive use of force during a reportable incident. (If not already reported on a CDC 7219).

  In addition to the requirements noted above, Health Care Services practitioners shall complete and submit a CDC 7219 when assigned as a member of a controlled use of force team. The CDC 7219 shall be completed and submitted to the Response Supervisor prior to the health care staff leaving the institution and shall:

- Include a quote of the inmate's own words in the patient comment section.
- Document observations of the area on the inmate where force was applied, after specific examination.
- Include comments or information garnered from custody staff regarding the type and amount of force used.
- Document the injuries sustained and the medical treatment rendered.
- Document if the inmate refuses medical examination and/or treatment.
- Document any alternative assistive device provided and any medical recommendation / accommodation suggested during and after the use of force.
- Document in-cell decontamination instructions and times of 15-minute checks, if applicable.
- In controlled use of force cases when consultation regarding the use of chemical agents is warranted, the Health Care Services employee providing the consultation shall complete and submit a Medical Chrono (CDC 128C) documenting whether or not there is a contraindication to the use of chemical agents.
- Physical efforts used to restrain appendages of an uncooperative inmate into four/five point restraints during Range of Motion shall be documented on the inmate's Health Record.

In addition to the above requirements, Health Care Services practitioners shall be responsible for providing custody staff and the Use of Force Coordinator, with notification and updated information in the event that the aftercare treatment process reveals new facts about the severity of a force related injury.

#### 51020.17.7   Incident Commander-Reporting Requirements

It is the responsibility of the Incident Commander to notify the Office of Internal Affairs (OIA) and the Bureau of Independent Review (BIR) as soon as possible, but no later than one hour from the time the incident is discovered, of any use of deadly force and every death, great bodily injury or serious bodily injury that could have been caused by a staff use of force. Depending on the specific MOU and the nature of the incident, a call to the county sheriff or police department may also occur.

Prior to being relieved from duty the Incident Commander or designee shall:

- Complete the CDCR 837-A/A1 and CDCR 837-B. This shall be an accurate summary of the events as described in the written reports submitted by all employees.
- Prepare the initial incident report package. This includes the CDCR 837-A/A1, B and C forms; any applicable medical forms; and the Manager/AOD Report of the Controlled Use of Force, if applicable.
- Review all incident reports for quality, accuracy and content.
- Clarify incomplete reports with involved staff by completing a CDCR 837-C-2/3.
- In controlled use of force cases in institutions/facilities involving involuntary medication, placement into four/five point restraints, or admission into an infirmary, CTC or hospital, the Incident Commander shall include in the CDCR 837-A/A1, the name and title of the on duty Health Care Services staff that verified the appropriate medical authorization existed prior to the use of force.
- Prepare and submit a separate CDCR 837-C if he/she actually used force during an incident, or observed the immediate use of force.

323

- Ensure the initial incident package is submitted to DAI / Identification and Warrants Unit, and the respective Associate Director over the institution's Mission Based Region.
- Ensure the initial incident package is submitted to the Warden's Office, the Use of Force Coordinator, and, if requested, to the OIA and BIR.
- Ensure all force related video recordings of inmate injuries or interviews and recordings of controlled force are forwarded to the appropriate location, as set forth in Section 51020.13.
- Initiate the Use of Force Review process as set forth in Section 51020.19.1. However, should an incident or allegation warrant investigation by the DFIT, the OIA, or any other outside investigating agency, the Incident Commander shall suspend all review of that incident until the investigation is complete. In the event the Manager believes an investigation may be necessary, the Manager shall recommend that the case be referred for investigation.

**51020.17.8  First/Second Level Manager-Reporting Requirements for Controlled Uses of Force**

The First or Second Level Manager authorizing the use of controlled force is required to be present during the use of force. After the use of controlled force, the First/Second Level Manager shall complete a Manager's/AOD Report of Controlled Use of Force. This form shall be included as part of the incident package and fulfills the reporting responsibilities of the First/Second Level Manager who authorized the controlled use of force incident.

In controlled use of force cases when Health Care Services clinical staff expresses concerns regarding the use of chemical agents, and the decision to go forward is made by the First/Second Level Manager, the First/Second Level Manager shall document the results of the consultation and the basis for his/her final decision on a General Chrono (CDC 128B) for the health care record and the incident package.

**51020.18  Reporting Allegations of Unnecessary or Excessive Force**

Any employee who observes a use of force that is unnecessary or excessive shall attempt to stop the violation. Any employee who becomes aware of an allegation of unnecessary or excessive force, whether it occurs during a reportable incident or not, shall verbally report the allegation to a custody supervisor as soon as possible, followed with appropriate documentation.

If the allegation occurs in conjunction with a reportable incident, the incident shall be reported in accordance with the requirements set forth in this Article and any such allegation shall be documented and included in the incident report package. Each involved employee shall document all details regarding any allegations or observations of use of force that is unnecessary or excessive. This includes a quote of the allegation, or what was seen or heard, including observations of any apparent injuries, and the name of the supervisor the employee reported the allegation to.

All reports shall be submitted to a custody supervisor.

**51020.18.1  Allegations of Excessive or Unnecessary Force-Supervisor Reporting Requirements**

Whether or not the allegation of excessive or unnecessary force is made in conjunction with a reported use of force, a supervisor who learns of such an allegation shall:

- Make a verbal notification to the Incident Commander as soon as practical.
- Arrange for the inmate to be medically examined and request a full medical assessment of injuries, if any.
- Ensure every staff member who witnessed the allegations and/or staff who witnessed the event leading to the allegations immediately submits the applicable report.
- Review any reports for clarity.
- Submit a package of all documents relating to the allegation, including a copy of the medical report, to the Incident Commander.

**51020.18.2  Allegations of Excessive or Unnecessary Force-Incident Commander and Appeals Coordinator Reporting Requirements**

When informed of allegations of the use of unnecessary or excessive force, the Incident Commander and/or the Appeals Coordinator shall make an initial assessment of the information received and notify the appropriate First or Second Level Manager as soon as practical. The Incident Commander and/or the Appeals Coordinator shall determine whether the seriousness of the allegations and/or extent of the reported injuries warrant immediate notification of the First or Second Level Manager. Additionally, the Incident Commander and/or the Appeals Coordinator shall:

- Ensure health care staff have evaluated the inmate and a medical report has been completed.
- Review written reports of witnesses and obtain statements from inmate witnesses, if any.
- Ensure that the inmate's injuries are video recorded and the inmate is interviewed within 48 hours in accordance with the requirements set forth in 51020.17.3. This shall be done as soon as possible upon receiving verbal notification of the allegation.
- When an allegation is received, whether verbally or through the appeals process, the Appeals Coordinator or Incident Commander shall contact ISU or the Watch Commander and determine if the related incident report exists. The respective Appeals Coordinator or Incident Commander shall note the existence of the incident report by log number in their submittal prior to forwarding the allegation for administrative review.
- If the inmate has suffered serious bodily injury or great bodily injury, the Incident Commander shall notify the OIA and the BIR as soon as possible, but no later than one hour from the time the incident is discovered. In instances where the allegation was submitted through the inmate appeal process and there is no corresponding incident report, the Appeals Coordinator shall, in consultation with the hiring authority, notify the OIA and BIR.
- If, at any point in the review, the Incident Commander and/or the Appeals Coordinator discovers information that leads him/her to reasonably believe or suspect an employee has committed any serious misconduct, the Incident Commander and/or Appeals Coordinator shall immediately forward all information to the Institution Head via the chain of command, recommending an internal affairs investigation if appropriate.
- Prepare a Report of Findings (CDCR Form 3014) and/or Appeal Inquiry. The report shall contain the allegations made, an explanation of the incident, the written or verbal statements of the witnesses, the health care information, and a conclusion and recommendation.
- Submit the Report of Findings and/or Appeal Inquiry and evidence through the chain of command to the Institution Head. The evidence shall include copies of the medical reports, and any other documentation that is deemed significant to further document the incident/allegation. If the Incident Commander learns that the verbal allegation is part of a reported incident, the incident package shall be included with the Report of Findings. Correspondingly, if the Appeals Coordinator learns that the written allegation is part of a reported incident, the incident package shall be included with the appeal for administrative review.

**51020.19  Reviewing the Use of Force**

Each Institution Head shall establish and chair an IERC to evaluate and review every use of force and every allegation of excessive or unnecessary force. Each incident or allegation shall be evaluated at both supervisory and management levels to determine if the force used was reasonable under policy, procedure, and applicable law.

Documentation of all use of force incidents and allegations of excessive or unnecessary force shall be reviewed at supervisory and management levels.

For reported incidents, a good faith effort must be made at all levels of review in order to reach a judgment whether the force used was in compliance with policy, procedure and applicable law and follow-up action if necessary. The following factors must be evaluated:

- The threat perceived by the responsible individual applying the force.
- The need for the application of force
- The relationship between that need and the amount of force used
- The extent of the injury suffered
- Any efforts made to temper the severity of a forceful response.

Should an incident or allegation warrant investigation by the DFIT, the OIA, or any other outside investigating agency, the IERC shall suspend all review of that incident until the investigation is complete. The IERC shall consider the

completed investigative report, and any report by the DFRB, as part of its own review.

**51020.19.1    Incident Commander Review**

The Incident Commander shall review the incident package documentation to ensure that it is adequately prepared and shall reach a judgment whether the force used was in compliance with policy, procedure, and applicable law.

The Incident Commander shall:

- Review all incident reports for quality, accuracy, and content, including, in cases in which allegations of unnecessary or excessive force was alleged, the CDCR Form 3014.
- Clarify incomplete reports with involved staff by completing a CDCR Form 837-C-2/3 Crime/Incident Review Notice to the applicable employee.
- Submit the completed incident package to the First Level Manager.
- Complete an Incident Commander's Review / Critique Use of Force Incidents form. The report shall contain an explanation of the incident, the written or verbal statements of the witnesses, the health care information, and a conclusion and recommendation.
- In the event the Incident Commander believes an investigation may be necessary, the Incident Commander shall suspend review and recommend that the case be referred for investigation.

**51020.19.2    First Level Manager Review**

The First Level Manager of the area where the incident or allegation occurs shall reach a judgment whether the force used was in compliance with policy, procedure, and applicable law.

The manager shall:

- Review all documentation in the incident package, including, in cases in which allegations of unnecessary or excessive force was alleged, the CDCR Form 3014.
- Review the quality of all reports to ensure the use of force was properly documented and reviewed. This includes a review of the Incident Commander's conclusions.
- Conduct an in depth analysis to determine if the use of force described in the incident package was within the guidelines of the Use of Force Policy and Procedures. This analysis should address any non-compliance with policy not identified earlier.
- Complete a review of the incident or allegation on the Manager's Review – First Level form.
- In the event the Manager believes an investigation may be necessary, the Manager shall suspend review and recommend that the case be referred for investigation.

**51020.19.3    Second Level Manager Review**

The second level manager is the final level of review prior to the completed incident package being sent to the Use of Force Coordinator for review by the (IERC). The manager shall reach a judgment whether the force used was in compliance with policy, procedure, and applicable law.

The second level manager shall:

- Review all documentation in the incident package, including, in cases in which allegations of unnecessary or excessive force was alleged, the CDCR Form 3014.
- Review the quality of all reports to ensure the use of force was properly documented and reviewed. This includes a review of the Incident Commander's conclusions and the First Level Manager's conclusions.
- Complete a review of the incident or allegation on the Manager's Review – Second Level form.
- Determine if any corrective action taken by his/her subordinates in relation to the incident was adequate/proper.
- Conduct an in depth analysis to determine if the use of force described in the incident package was within the guidelines of the Use of Force Policy and Procedures. This analysis should address any non-compliance with policy not identified earlier.
- In the event the Manager believes an investigation may be necessary, the Manager shall suspend review and recommend that the case be referred for investigation.

**51020.19.4    Use of Force Coordinator Responsibility**

The Use of Force Coordinator shall log and track all use of force incidents and all allegations of excessive or unnecessary force (including those set forth in inmate appeals) to ensure thorough and timely review by the IERC.

For incidents involving a reported use of force, the Use of Force Coordinator shall prepare an IERC Use of Force Review form. The form provides for the brief review of all aspects of a use of force incident, including whether or not all actions were consistent with policy, and a means for the Use of Force Coordinator to recommend additional clarification or revision to policy, procedure or training for the IERC's consideration.

For allegations of excessive or unnecessary force that do not involve a reported use of force set forth in an incident package, the Use of Force Coordinator shall prepare an Allegation Review package.

The Use of Force Coordinator shall normally schedule all logged use of force cases for review within 30 days of their logged occurrence. Any use of force incident or allegation review that is over 31 days old, and has not received an initial review, shall be scheduled for review at the next scheduled IERC meeting. Unless there are outstanding issues or a corresponding investigation, this review will be both an initial/final review.

Any logged use of force occurrence that included allegations of unnecessary or excessive force, serious bodily injury, GBI or death shall be prioritized after 30 days for final review, upon receipt of any corresponding investigations or final documents. In any event, the IERC Chairperson shall review the status of all pending UOF cases during each IERC Meeting, and assess the status for final review of these cases.

If a completed package has not been received by the Use of Force Coordinator within 31 days of the incident, the Use of Force Coordinator shall conduct a preliminary review of the case, and present it to the IERC for initial review. Once the Use of Force Coordinator has received and analyzed the completed package, the case will be rescheduled for final review by the IERC.

The initial review of the uncompleted package (initial incident package) is intended for the IERC to preliminarily review and document the incident for obvious procedural concerns and does not require an IERC Critique and Qualitative Evaluation form to be completed. The IERC Critique and Qualitative Evaluation form will be completed following the review and analysis of the completed incident package.

The Use of Force Coordinator is responsible for preparing the completed use of force incident package for review by the IERC as follows:

- The Use of Force Coordinator shall regularly schedule IERC meetings. The BIR shall be provided reasonable notice and copies of the complete incident packages to be reviewed in advance of the meetings.
- The Use of Force Coordinator shall conduct an in-depth analysis of the documentation of each use of force case, including the conclusions of the supervisor/managers, on the IERC Use of Force Review form.
- The Use of Force Coordinator shall prepare complete copies of the incident packages to be reviewed by the IERC, which shall include a written recommendation on the IERC Use of Force Review form regarding whether the force used was in compliance with policy, procedure, training and applicable law. This format addresses critical review areas.
- After the IERC's final review all documentation of staff training or discipline will be removed from the incident package and routed to the appropriate Manager for placement into the appropriate file, i.e., employee's training or supervisory files.
- The Use of Force Coordinator may recommend that additional clarification or information is necessary. If the IERC determines additional information or clarification is required, the Use of Force Coordinator will forward a request for this information to the responsible Manager and track the assignment. The Use of Force Coordinator will maintain a copy of the completed incident package until the information/clarification is received. The Use of Force Coordinator will then complete the analysis and resubmit the case to the IERC.
- The Use of Force Coordinator may also identify and recommend revision to policy, procedure or training for the IERC's consideration on the IERC Further Action form. The Use of Force Coordinator will submit the IERC Further Action form to the IERC for review.
- If an investigation has been requested for a use of force incident, the Use of Force Coordinator will track and maintain the completed incident package until completion of the investigation. Upon the completion of the investigation, the IERC Chairperson will be provided a copy of the investigation report and then complete the analysis and present the case to the IERC. During the IERC, the Use of Force Coordinator will verbally present his/her recommendation regarding completed cases. Investigative

reports will be returned to the Investigative Services Unit Office upon completion of the final IERC review of the incident

- The Use of Force Coordinator will ensure the IERC findings are documented on the IERC Critique and Qualitative Evaluation form.
- In cases involving allegations of excessive or unnecessary force in which an Incident Commander or an Appeals Coordinator has forwarded a Report of Findings or an Appeal Inquiry, the Use of Force Coordinator shall prepare an Allegation Review form for review by the IERC and signature by the IERC Chairperson.
- After each IERC, the Use of Force Coordinator shall forward a memorandum to the respective Associate Director Office that provides the date of the meeting, a listing of incidents and allegations reviewed, and notation of the disposition.

**51020.19.5   Institution Executive Review Committee Monitoring Responsibility**

The IERC is a committee of executive staff tasked with reviewing reported use of force incidents and allegations of excessive or unnecessary force. The IERC is the final level of review for most non-deadly use of force incidents. Normally, the IERC is comprised of the following institutional staff:

- Institution Head or Chief Deputy Warden, as chairperson and final decision maker,
- At least one other manager assigned on a rotational basis,
- In-Service Training Manager,
- One health care employee, and
- A Use of Force Coordinator.
- Other designated supervisors and rank and file staff may also attend, as determined by the appointing authority. A representative of the BIR may also attend and monitor IERC meetings.
- The IERC shall meet to review its cases on at least a monthly basis, or on a schedule to ensure all cases are reviewed within 30 days. Unless there are outstanding issues or a corresponding investigation, this review will be both an initial/final review.
- During the IERC, the Chairperson shall personally view a minimum of 30 percent of all video recordings arising from controlled use of force incidents.

The IERC shall determine if the use of force was reasonable and in compliance with policy, procedures and training. The IERC shall also examine the critique and conclusions of subordinate managers and supervisors, and ensure the appropriateness of completed documentation.

The IERC shall complete an Allegation Review of all allegations of excessive or unnecessary force.

The IERC may initiate requests for additional information or clarification (clarification requests will be routed to the responsible Manager and tracked by the Use of Force Coordinator). The final review will determine whether the use of force was reasonable.

The IERC may recommend changes to procedure or training. The IERC is also responsible for identifying possible employee misconduct and recommending the initiation of training, corrective action or disciplinary action in such cases. However, only IERC members in supervisory or management roles (including the Use of Force Coordinator) and the BIR may participate in discussions involving the initiation of corrective or disciplinary action.

The hiring authority may initiate changes to local procedure or training based on the findings or recommendations of the IERC, or forward a recommendation of change to the CDCR policy or procedure via the Associate Director. The Institution Head may also initiate corrective or adverse employee action based upon the findings or recommendations of the IERC.

Should an incident or allegation warrant investigation by the DFIT, the OIA, or any other outside investigating agency, the IERC shall suspend all review of that incident until the investigation is complete. The IERC shall consider the completed investigative report, and any report by the DFRB, as part of its own review.

**51020.19.6   Department Executive Review Committee Monitoring Responsibility**

The Department Executive Review Committee is a committee of staff selected by, and including, the Associate Director who oversees the respective Mission-based group. The DERC shall review all incidents involving deadly force, serious injury, great bodily injury, or death. The DERC shall also review those incidents referred to the DERC by the IERC Chairperson or otherwise requested by the DERC.

The DERC shall conduct a review of the incident and document its findings on the DERC Use of Force Review form. The DERC shall also review the actions of the IERC and in the event the DERC has questions or concerns with actions taken by the IERC, the DERC shall take appropriate action.

The DERC shall refer incidents of a major magnitude to the Director of DAI for final review.

**51020.20   Investigating Deadly Force and Any Use of Force That Could Have Caused Death or Great Bodily Injury**

Every use of deadly force and every death or great bodily injury that could have been caused by a staff use of force shall be investigated by the DFIT and reviewed by the DFRB.

**51020.20.1   Investigative Services Unit (ISU) Monitoring the Use of Deadly Force**

For incidents occurring in an institutional setting, involving the use of deadly force and any use of force resulting in death or GBI, the ISU shall take preliminary charge of the investigation and will remain in charge of the investigation while contacting the DFIT to inform them of the incident.

For incidents occurring in a community setting, local law enforcement and the DFIT shall take preliminary charge of the investigation.

For every discharge of deadly force from a firearm, the ISU shall be tasked with making the prompt determination of whether the deadly force was a warning shot and whether anyone suffered any injuries as a result of the deadly force. The ISU shall verbally notify the DFIT of its determination as soon as possible and shall confirm its determination, along with the reasons in support of it, in a written memorandum to be forwarded to the DFIT. If the ISU is unavailable to assume this responsibility, an uninvolved supervisor shall do so

**51020.20.2   Deadly Force Investigation Team Responsibility**

Trained Department investigators assigned to a Deadly Force Investigation Team shall conduct criminal and administrative investigations of every use of deadly force and every death or great bodily injury that could have been caused by a staff use of force. All DFIT criminal investigations will be referred to the local District Attorney for review where MOU's provide for referral.

Based on certain local Memoranda of Understanding, criminal investigations may instead be conducted by an outside police department or sheriff's office. If an outside law enforcement agency is conducting the criminal investigation, the DFIT investigator will monitor the progress of the criminal investigation while providing appropriate support.

DFIT need not investigate the discharge of deadly force inside an institution/facility if a member of an Investigative Services Unit, or an uninvolved supervisor, confirms that the discharge of deadly force was a warning shot and that no injuries were caused by the shot.

**51020.20.3   Deadly Force Review Board**

The DFRB is the board responsible for conducting a full and complete review of all incidents involving a use of deadly force (except warning shots) and every death or great bodily injury that could have been caused by a staff use of force, regardless of whether the incident occurs in an institutional or community setting.

The DFRB shall be composed of at least four members. Three shall be non-departmental law enforcement professionals. One (1) shall be a Division, Parole Region, or Institutional/facility manager (i.e. Associate Directors, DJJ Superintendents, Chiefs or designees) from outside the chain of command of the involved employee(s). Additional members may be designated by the Secretary or designee.

The reports and findings generated from the separate investigative bodies (DFIT and local law enforcement if applicable) will be presented to the DFRB. The DFRB shall be convened as soon as possible after the criminal and administrative investigations are completed.

The DFRB shall examine all aspects of the incident to determine the extent to which the use of force complied with departmental policies and procedures, and to determine the need for policy, training, and/or equipment modifications.

The DFRB shall report its findings and recommendations in writing, to the Undersecretary assigned to oversee the DAI.

**51020.21    Use of Force Data**

Designated staff shall maintain a database containing use of force information. The database should be capable of producing statistical reports to monitor trends and patterns of force used, whether the report is received in the form of an incident report, a verbal allegation of excessive or unnecessary force, or an allegation contained in inmate appeal. At a minimum the database should address the following categories:

- Date of incident.
- Specific area of institution.
- Staff involved.
- Controlled or immediate use of force.
- Reason for use of force.
- Use of impact munitions.
- Identified inmate disabilities and steps that were taken to reasonably accommodate the inmate during and after the use of force.
- Allegations of unnecessary or excessive use of force.
- Serious injury, great bodily injury or death.

**51020.22    External Review of the Use of Force - The Use of Force Coordinator Responsibility**

For purposes of an external review, the Use of Force Coordinator shall identify and retain use of force cases closed by the IERC during the review period. External reviews of closed use of force cases shall be conducted at least every 24 months.

**51020.23    Revisions - Use of Force Joint Use Committee (JUC)**

The Use of Force JUC is a committee of field staff tasked with reviewing and evaluating recommended revisions to the CDCR's Use of Force Policy and Procedures.

The JUC shall be comprised of the following field staff:

- At least one Institution Head, as chairperson
- At least one staff member from each DAI, mission based region, at the level of Lieutenant or Captain
- At least one Use of Force Coordinator,
- At least three representatives from the CCPOA, as designated by the CCPOA
- The Chief of BIR or designee, and
- Others as needed and assigned by the Deputy Director, DAI,
- The JUC shall meet quarterly as necessary, but not less than annually, to review recommended revisions

**51020.23.1    Revisions Approval**

Any recommendations for revisions to this Article shall be referred to the Use of Force Joint Use Committee. After review and consideration, the Use of Force JUC shall refer revisions to the Director, DAI, for approval, via the Deputy Director.

Only the Director of DAI, or the Director's designee, may issue clarification memoranda to this Article.

**51020.24    Revisions**

The Director, DAI, or designee shall be responsible for ensuring that the contents of this Article are kept current and accurate.

**51020.25    References**

PC § 118.1, 196, 197, 243, 835, 835a, 843.

CCR (15) § 3268, 3268.1, 3268.2, 3275, 3276, 3278, and 3397.

Hudson v. McMillian, 503 U.S. 1 (1992).

Madrid v. Gomez, 889 F.Supp. 1146 (N. D. Cal. 1995).

Remedial Order regarding Madrid v. Gomez, dated June 17, 1996.

Madrid v. Cate (U.S.D.C. N.D. Cal. C90-3094 TEH).

ARTICLE 3 — INCIDENT REPORT

*Effective December 27, 1989*

**51030.1    Policy**

Incidents, events and activities that occur within the jurisdiction of institutions and parole regions of immediate interest to the Department, other governmental agencies or the news media, shall be reported to the Director, the departmental Officer-of-the-Day or the Deputy Director, P&CSD as described in this section.

**51030.2    Purpose**

This procedure defines staff responsibility and provides procedures and criteria for reporting incidents occurring within the Department.

**51030.3    Reportable Incidents**

Examples of incidents which shall be reported:

- All felonies committed by inmates, parolees, employees or the public on institution property, during transportation or under the jurisdiction of parole regions.
- General or partial lockdowns.
- Riots, inmate strikes or general demonstrations.
- Major power failures.
- Serious accidents or injuries.
- Deaths.
- Significant damage or destruction of state property.
- Escapes or attempted escapes, (refer to DOM 55040, Escape Pursuit).
- Any state of emergency as described in CCR 3383.
- Any use or discharge of weapons, chemical agents or tasers.
- Threats against the President or Vice-President of the United States, or threats against state officials.
- Safety grievances (employees).
- Employee job actions.

**51030.4    Incident Reporting Procedures (Institutions)**

All reportable incidents shall be conveyed by telecopier on a CDCR Form 837 series, Administrative Officer-of-the-Day (AOD) Incident Report, to the Director, by the 24-hour-a-day Identification and Warrants (ID) Unit.

The current public and ATSS telephone numbers of the ID Unit shall be included in the telecopier and AOD instruction booklets or memos.

**51030.4.1    Administrative Officer-of-the-Day Incident Report, CDCR Form 837 Series**

The Administrative Officer-of-the-Day Incident Report, CDCR Form 837 series, is the Department's initial written report to Central Office that an incident of departmental interest has occurred. It is essential that all information available at the time of the incident be entered into this report. Any subsequent updating of information relating to the incident should be forwarded to Central Office using the AOD 837 Log Number of that particular incident.

    Initial Report Content

Initial reports by telecopier shall include all pertinent available information. New information significant to the incident shall be telecopied as received.

    Press Releases

The Assistant Director, Communications, shall be notified by telephone of press releases or serious incidents. A written copy of the press release shall be telecopied to Communications following the verbal notification.

**51030.4.2    Incidents on Department Buses**

The transportation sergeant or senior officer in charge of the bus shall be responsible for reporting incidents which occur during departmental transportation. The Captain, Transportation Unit, shall be responsible for the processing and distribution of incident reports prepared by staff of the transportation unit. Copies of the incident report shall be forwarded to institutions receiving inmates involved in transportation incidents.

**51030.5    Formal Incident Reports**

A written incident report shall be prepared and submitted to the Director within 72 hours of all reportable incidents. The Warden or RPA will review and sign this report.

**51030.5.1    Supplemental Incident Reports**

Initial incident reports to the Director shall be updated by supplemental incident reports until the incident is closed. The supplemental reports shall include all subsequent facts, information, and administrative actions taken relative to the incident.

**51030.5.2    Incident Report Log**

Facilities and parole regions shall establish and maintain an official log on all reportable incidents. All initial incident reports shall be assigned a log number. Incident report log numbers shall be obtained from the original CDCR Form 837 series, AOD Report, pertaining to the incident. All supplemental reports pertaining to a single incident shall contain the log number assigned to the initial report and shall be filed sequentially with the original report.

### 51030.6  Format and Content
*Revised February 26, 1993*

The facility watch commander or program lieutenant in charge of the specific area where the incident occurred shall be responsible for the preparation of the incident report. Departmental incident reports shall be prepared in accordance with the following outline and format:
- Subject.
- Synopsis.
- Persons involved.
- Summary.
- Action taken.

The outlined sections shall contain the following information when applicable:
- Subject. This section shall provide a brief one-or-two sentence description of the incident.
- Synopsis. This section shall contain a brief, concise description of the incident and involvement of the principal person(s). It shall also contain a description of the injuries, a prognosis for each injured person, the location of the incident, and the extent of property damage if any.
- Persons Involved. The following information shall be included on principal inmates involved:
  - Name(s) and prison number(s).
  - Custody classification and classification score.
  - Date received by the Department.
  - Date received by the facility.
  - Commitment offense and county of commitment.
  - Parole/discharge date/Board of Prison Term status.
  - List name(s) and job classification(s) of principal staff involved.
- Summary. This section shall contain a detailed report of the entire incident including, when applicable, the following information:
  - Type of incident, date, and approximate time of occurrence.
  - Location of incident.
  - All facts, details, and conclusions.
  - Any criminal acts committed and by whom.
  - Any property damage incurred and value estimate of loss.
  - Number and description of weapon(s) used by perpetrator(s) or recovered following the incident.
  - Types of weapons used by staff, i.e., firearms, chemical agents, tasers, or other lethal/nonlethal weapons. Number of shots fired and/or amount of chemical agents expended shall be included in this section. (See DOM 32010, 54060, and 55050 for additional information on the taser.)
  - Compliance with procedures requiring review of medical/psychiatric records before taser is used and their findings.
  - Detailed and specific description of any physical force used by staff during the incident.
  - Types and amounts of controlled substances seized. Controlled substances shall be reported in grams or dosages.
  - Describe circumstances surrounding any staff, inmate, or visitor death and details of care provided. Any last messages wished transmitted by the deceased shall be quoted.
  - Describe any injuries to staff/inmates/visitors, medical aid provided, and prognosis. An (F) or (M) shall be placed after the names of injured staff members to designate whether male or female.
- Action Taken:
  - Describe any disciplinary or classification committee actions taken and outcome if known.
  - State if case was/was not referred for criminal prosecution. If referred, describe status or outcome if known.
  - State whether or not information officer and/or news media was notified.
  - State if case was referred to the BPT and actions taken if known.
  - State if Chief of Labor Relations was notified in cases of employee injury or death.
  - Describe actions to notify next of kin in cases of serious injury or death.
  - Describe measures taken to prevent recurrence.

### 51030.6.1  Attachments
The following attachments shall be included in incident reports when applicable:
- Arresting and/or witnessing officer reports.
- Reports of principal employees involved.
- Medical and/or death reports on injuries or deaths.
- Photographs shall not be attached to incident reports sent to the Director unless requested.

### 51030.6.2  Copies and Distribution
Incident reports shall be duplicated by the photocopy method only and distributed as follows:
- Two copies to the Director. (Three copies if death of staff or inmate by assault.)
- One copy to each institution if deemed serious or unusual, or if considered to contain information of particular training value. (Individual institutions may also request routine distribution.)

**CYA Wards**
- One copy to the Chief Deputy Director, CYA, for each CYA ward involved.
- One copy upon request to the Region Chief of the Department of Forestry and Fire Protection of conservation camp incidents involving forestry employees.

### 51030.6.2.1  Confidential Incident Reports
Incident reports which contain confidential information shall be written, controlled, and distributed in accordance with CCR 3321, and applicable information practices procedures.

### 51030.7  P&CSD Incident Reporting Policy
P&CSD incidents shall be reported in accordance with departmental policy as outlined in this procedure.

### 51030.7.1  Types of Reportable Incidents
The following types of incidents shall require the preparation of incident reports by P&CSD staff.
- Special incidents.
- Altercation/unholstered firearm.
- Shots fired by agent.
- Threats against public officials.

### 51030.7.2  Incident Reporting Procedures
**Parole Agent**

The Parole Agent involved shall obtain and document all available information and notify the unit supervisor or AOD.

Written reports by Parole Agents for all reportable incidents shall be completed within 24 hours of the incident.

**Supervisory Responsibility**

The unit supervisor or AOD shall notify the deputy Regional Administrator on the day the incident occurs. The deputy Regional Administrator shall evaluate the seriousness of the incident and notify the Regional Administrator and assistant deputy director by telephone when determined necessary.

**Special Incident Report (CDC Form 1662)**

A CDC Form 1662, Special Incident Report, shall be completed by the unit supervisor and telecopied to the deputy Regional Administrator on the day the incident occurs. A complete report with all additional information shall be forwarded to the assistant deputy director. The assistant deputy director shall forward the report to the Director by the Deputy Director when deemed necessary.

### 51030.7.2.1  Altercation/Unholstered Firearm
An incident report shall be prepared when parole staff is involved in an altercation or draws a weapon. The report shall be written on a standard departmental memorandum using the following procedures and format:
- Synopsis.
  - A brief one or two sentence description of the incident.
- Parties Involved.
  - List all persons involved in the incident noting their status as staff, parolees, inmates, or other persons.

- Procedure/Format
- Injuries to persons or property.
  - A description of injuries to any person, medical aid given, and prognosis. When reporting injuries, differentiate whether female or male by (F) or (M) behind the name of injured person. Damage to property of a staff person, parolee, inmate or any other person shall be listed with a damage estimate in dollar value.
- Details of Incident.
  - A detailed description of the altercation or incident involving unholstering of firearm.
- Reporting Staff Signature(s).
  - Report shall be submitted to the unit supervisor for review and approval.

**51030.7.2.2    Shots Fired by Parole Agent**

Any discharge of a firearm by parole staff for other than training purposes whether on duty or off duty shall be immediately reported to the local law enforcement agency and a Confidential Shots Fired Report prepared. Medical aid shall be summoned as soon as possible for any injured person. The Confidential Shots Fired Report and accompanying incident report shall be prepared using the following format and procedures:

**Format**
- Synopsis.
  - A brief one or two sentence description of the incident and number of rounds fired.
- Persons Involved.
  - List all participants and witnesses involved by full name, address, telephone number, and place of employment. Participants shall be listed as: department employee (title), inmate/employee, private citizen, or other appropriate title or identity. Include statements from witnesses and participants.
- Death, Injury, or Property Damage.
  - Describe injuries and/or wounds sustained by any persons. Describe any property damage including names and addresses of owners and give an estimated value of damages. If death occurs to an injured person after completion of the original report a supplemental report shall be submitted.
- Weapons Used.
  - Describe weapon(s) used during incident by employee(s) and other persons. Description for employee firearm shall include type and model number of weapon, serial number, CDC number, number of rounds fired and disposition of the weapon.
  - Firearms used or confiscated from other persons during the incident shall be identified by type and model number, serial number, number of rounds fired (if any) and disposition of the weapon(s). If confiscated weapon(s) was not fired, description shall include whether weapon was loaded or unloaded and number of rounds confiscated. When known, a statement shall be included as to whether the weapon was listed as stolen or how possession was obtained. If unknown at the time of report, the information shall be submitted on a supplemental report when available.
- Assistance by Other Agencies.
  - Names and telephone numbers of all departments and/or agencies assisting or responding in the incident shall be listed. Copies of their reports shall be attached to the incident package when available. Examples of departments/agencies to be included are: law enforcement agencies, ambulance/paramedic services, hospitals, and physicians, etc. Reports from assisting agencies that are unavailable prior to completion of the incident report shall be submitted with a supplemental incident report when received.
- Details of Incident.
  - A detailed chronological account of the incident shall be written. A narrative description of the scene and physical positions of all participants and witnesses shall be prepared and attached to the final report. All P&CSD staff directly involved in the incident shall submit a written report.
- P&CSD Notification.
  - Indicate date and time that the supervisor or AOD was notified of the event, including name of person notified.
- Analysis.
  - The immediate supervisor shall proceed to the scene of the incident and conduct a complete investigation including an examination of the firearm used by staff. The supervisor shall prepare an analysis report within four days of the incident and forward the report to the Regional Administrator and Deputy Director, P&CSD, within 24 hours of completion. The cause of the incident and degree of each participant's involvement shall be included. The analysis section shall be a separate document (addendum) to the main incident report and distribution shall be restricted to the unit supervisor, PA, Regional Administrator, assistant deputy director, and Deputy Director, P&CSD. The analysis section shall be removed from the incident report prior to distribution for training or informational purposes. Revisions to the analysis section shall be effected by supplemental reports to the authorized recipients listed above.

**51030.8    Threats**

Written or oral threats by inmates/parolees against the President or Vice-President of the United States; Governor of California; state, county or city officials; elected state officials; exempt appointees of the Governor; judges; BPT staff; and P&CSD staff; shall require the preparation of an incident report following procedures described in the subsequent sections.

**51030.8.1    Threats Against the President or Vice-President of the United States**

An immediate telephonic/telecopy report shall be made to the following:
- During non-business hours, a telecopy report shall be transmitted to the appropriate division.
- During business hours, the responsible Assistant Deputy Director, Institutions/Paroles shall be contacted who shall notify the Director when appropriate.
- Assistant Director, Law Enforcement and Investigations.
- U.S.Secret Service (local office).
- FBI (local office).

**51030.8.2    Threats Against Other Public Officials**

Threats against the Governor of California and all other officials listed in this section shall require immediate telephonic/telecopy reporting to:
- Appropriate division during non-business hours.
- The responsible Deputy Director, Institutions/Paroles during business hours, who shall notify the Director when appropriate.
- Assistant Director, Law Enforcement and Investigations.
- CHP. Notification may be made to any of the following offices:
  - Division headquarters, Sacramento - (916) 445-1150.
  - Executive Protection Bureau-North - (916) 445-9636.
  - Executive Protection Bureau-South - (213) 620-3216.
- Executive Officer, BPT, if BPT staff are involved.

**51030.8.3    Follow-Up Actions on Threats**

When threats are made in writing, a copy of the threat shall be attached to the incident report.
- An evaluation of the mental condition and the mental history of person making the threat shall be included in the incident report.
- A copy of the incident report shall be distributed to departments and agencies listed in DOM 51030.8.1 and 51030.8.2.
- Upon evaluation of the threat, the inmate or parolee may be placed in custody pending investigation.
- If threat involves a P&CSD staff person, other measures, i.e., arming of the staff person, protection by local law enforcement or LEIU, or reassignment of the employee may be considered.
- Any reportable threat shall be placed in the inmate/parolee C-File and in the field file of parolees. The files shall be clearly noted for identification.

**51030.9    Escape/Abscond/Parole or Discharge**

In the event any inmate under the provision of DOM 51030.8 escapes, is discharged, or released on parole, or any parolee under this provision absconds or

329

is discharged, the appropriate agencies outlined in DOM 51030.8.1 and 51030.8.2 shall be immediately notified.

**51030.10    Revisions**

The Deputy Director, Institutions Division, in conjunction with the Deputy Director, P&CSD, or designee shall ensure that the content of this section is accurate and current.

**51030.11    References**

PC § 76.
18 USC 871.
CCR §§ 3382, 3276 - 3279.
ACA Standards 2-4206 - 2-4208, and 2-4210.

### ARTICLE 4 — POST ORDERS

*Revised July 3, 1998*

**51040.1    Policy**

Each Warden and Health Care Manager shall ensure that post orders are completed for all posted positions, to include special assignment positions (i.e., contraband watch, hospital guarding, etc.).

**51040.2    Purpose**

Post orders shall be complete and concise. Only general functions and specific duty directives shall be referenced in post orders. Department policy directives should be referenced in post orders but not be reiterated in their entirety. Those matters that are not specific to post duties should be communicated to staff through: IST, OJT, or other communication methods.

**51040.3    Staff Responsibility for Post Orders**

The Captain or area Manager (i.e., Health Care Manager, Food Manager, etc.) is responsible for the initiation, revision, distribution, and maintenance of post orders.

**51040.4    Review, Update, and Finalization of Post Orders**

Each Captain and Health Care Manager shall establish a schedule so that all post orders receive an annual review and update to incorporate changes in rules, regulations, policy, institution operations, and the DOM. Whenever a post order is reviewed or updated, the date of the review shall be included on the post order.

- The Captain or area Manager shall assign a second line supervisor to be responsible for the review, revision, and/or preparation of designated post orders.

Post orders shall be accurate, complete, and concise.

- Post order drafts shall be submitted to the immediate supervisor for review then forwarded to the second line supervisor who, after approval of the draft, shall have the post order prepared in final form. The Health Care Manager shall submit the post order drafts to the first line supervisor who, after approval of the draft, shall have the health care staff post order prepared in final form. The respective Associate Warden, Chief Deputy Warden, or Health Care Manager shall review and approve all finalized post orders.

**51040.5    Post Order Format**

Post orders shall not exceed 4 pages in length and shall be prepared utilizing the following format:

- Revision Date:
- Division/Institution:
- Post Description:
- Post Order Number:
- Watch:
- Hours of Work:
- Regular Days Off:
- Direct Supervisor:
- Indirect Supervisor:
- Area of Responsibility:
- General Duties and Responsibilities:
- Special Instructions:
- Operational Time Schedule:
- Signature Blocks.

**51040.5.1    Post Order Language**

Post orders shall contain the following language:

"All peace officers have the responsibility to take appropriate action during an emergency (including physical restraint) and to work assignments as necessitated."

**51040.6    Post Order at Job Site**

The Captain or area Manager shall ensure that a current copy of the Post Order is prepared for every post and a copy shall be physically located at each job site.

**51040.6.1    Post Order Reading and Understanding Requirements**

Supervisors, by authority of the Captain or area Manager, shall ensure that employees read and understand their post orders upon assuming their post.

Employees under post orders are required to sign and date the CDC Form 1860, Post Order Acknowledgment Form, verifying their understanding of the duties and responsibilities of the post. This shall be completed when the employee is assigned to the post, when the post order has been revised, or upon returning from an extended absence.

At a minimum of once each month, supervisors shall inspect the post orders and sign the CDC Form 1860. Any torn or missing pages noted shall be replaced as soon as practical.

**51040.6.2    Post Order Acknowledgment Form**

A CDC Form 1860 shall be attached to each post order and shall be utilized to verify that the assigned staff member has read and understood the post orders for their post.

- When all the signature blocks on the CDC Form 1860 are filled, it shall be removed and maintained in a file in the Captain's office or Health Care Manager's office (for health care staff). The CDC Form 1860 shall be maintained for a period of one year from the date of last entry unless deemed evidentiary (then retained until no longer needed).

**51040.7    Post Order File**

The Captain's office or Health Care Manager's office (for health care services post orders) shall retain all current/updated institution post orders on computer diskette, as well as hard copies. All post orders shall be archived for a period of one year, unless deemed evidentiary (then retained until no longer needed).

**51040.8    Revisions**

The Deputy Director, Institutions Division, or designee shall ensure that the contents of this section are kept current and accurate.

**51040.9    References**

ACA Standards 2-4200 and 2-4201.

### ARTICLE 5 — POST ASSIGNMENT SCHEDULE

*Effective December 19, 1989*

**51050.1    Policy**

All Wardens and RPAs shall maintain currently approved post assignment schedules. The schedules shall reflect the most recent revisions of 30 days duration or longer. Each Warden and Regional Administrator shall update their post assignment schedule in September for the current fiscal year (e.g., September 1988, for fiscal year 1989-90). The post assignment schedules shall reconcile with the most recent Governor's budget available, as amended by legislative action.

**51050.2    Purpose of Post Assignment Process**

The post assignment schedule (PAS) is a vehicle identifying how the Governor's budget is converted to authorized staffing of a facility. The master assignment roster provides an approved method for effectively staffing the operation of an institution on a day-by-day (shift-by-shift) basis.

**51050.3    Maintenance of Schedules**

Separate post assignment schedules shall be maintained for each of the following areas:

- Custody.
- Food service.
- Medical-dental and psychiatric.

**51050.3.1    Custody**

A post assignment schedule for custody shall include all positions in the custodial series within the institution, reception center, or community correctional center. This includes officers, sergeants, lieutenants, captains, training officers, and Associate Wardens.

**51050.3.2    Food Service**

A post assignment schedule for food service shall include all food service positions, exclusive of clerical.