1  KAMALA D. HARRIS
   Attorney General of California
   JONATHAN L. WOLFF
2  Senior Assistant Attorney General
   JAY C. RUSSELL
3  Supervising Deputy Attorney General
   DEBBIE VOROUS, State Bar No. 166884
4  PATRICK R. MCKINNEY, State Bar No. 215228
   JESSICA KIM, State Bar No. 257766
5  MANEESH SHARMA, State Bar No. 280084
   Deputy Attorneys General
6   1300 I Street
    P.O. Box 944255
7   Sacramento, CA 94244-2550
    Telephone:  (916) 324-5345
8   Fax:  (916) 324-5205
    E-mail:  Debbie.Vorous@doj.ca.gov
9
   *Attorneys for Defendants*
10
                  IN THE UNITED STATES DISTRICT COURT
11
               FOR THE EASTERN DISTRICT OF CALIFORNIA
12
                        SACRAMENTO DIVISION
13

14

15  **RALPH COLEMAN, et al.,**                2:90-cv-00520 LKK JFM PC

16                            Plaintiffs,    **DECLARATION OF JOE STEIN IN
                                             SUPPORT OF DEFENDANTS'
17           v.                              OPPOSITION TO PLAINTIFFS' MOTION
                                             RELATED TO USE OF FORCE AND
18                                           DISCIPLINARY MEASURES AND TO
    **EDMUND G. BROWN JR., et al.,**         PLAINTIFFS' MOTION RELATED TO
19                                           THE HOUSING AND TREATMENT OF
                              Defendants.    MENTALLY ILL PRISONERS IN
20                                           SEGREGATION**

21

22       I, Joe Stein, declare as follows:

23       1.   I am a Captain, Adult Institutions.  I am competent to testify to the matters set forth in

24  this declaration and if called upon to do so, I would and could so testify.  I make this declaration

25  in support of Defendants' Opposition to Plaintiffs' Motion Related to Use of Force and

26  Disciplinary Measures and their Motion Related to the Housing and Treatment of Mentally Ill

27  Inmates in Segregation.

28                                           1
    Decl. J. Stein Supp. Defs' Opp'n. to Pls.' Mot. Rel. to Use of Force & Discipl. Measures and Rel.
                       to Housing & Treatment of Mentally Ill Prisoners in Seg.
                                                                    (2:90-cv-00520 LKK JFM PC)

1      2.    I began my career at the California Department of Corrections and Rehabilitation

2    (CDCR) in 1994 as a correctional officer at San Quentin State Prison.  In 2000 I promoted to

3    Sergeant and in 2001 I began working at the academy training correctional officers.  In 2007 I

4    promoted to lieutenant and accepted a position at the Division of Adult Institutions.  I promoted

5    to Correctional Counselor II, Specialist in 2008, and promoted again to Captain in 2011.  Since

6    2007, while working for the Division of Adult Institutions, I have worked almost exclusively on

7    issues pertaining to the *Coleman* class action.  My major projects have included the mental health

8    collaborative training, the Rules Violation process revision in 2011, and the implementation of

9    Guard 1 throughout CDCR.

10      3.    In their motion, Plaintiffs have proposed several unnecessary changes to CDCR's

11    disciplinary process.  These points are addressed in more detail below.  CDCR takes seriously the

12    impact of mental illness on the behavior of inmates.  CDCR has taken great efforts to strike a

13    balance between properly mitigating rules violations by mentally ill inmates while also ensuring

14    the safety and security of other inmates and staff.

**Training is Provided to Custody and Mental Health Staff Regarding Rules Violation and**
15    **Mental Health Assessment Processes**

16      4.    The plaintiffs incorrectly assert that CDCR provides inadequate training to custody

17    staff regarding the Rules Violation and Mental Health Assessments processes.  In October 2011,

18    CDCR instituted a revised training module for the rules violation process with a special focus on

19    Mental Health Assessments.

20      5.    CDCR's training module was designed with input from the Special Master and

21    Plaintiffs throughout 2011.  Plaintiffs offered many comments throughout the drafting process,

22    many of which were incorporated into the final product.  Attached as Exhibit A is a letter from

23    Plaintiffs dated October 31, 2011, endorsing the change in the policy and offering additional

24    minor comments, some of which were incorporated in the current training module.  Attached as

25    Exhibit B is a true and correct copy of the 30-page training module created as a result of this

26    policy revision.

27

28

Decl.  J. Stein Supp. Defs' Opp'n. to Pls.' Mot. Rel. to Use of Force & Discipl. Measures and Rel.
to Housing & Treatment of Mentally Ill Prisoners in Seg.
(2:90-cv-00520 LKK JFM PC)

6.    In a memo titled "Training for Custody and Clinical Staff Regarding Mental Health Input Into the Inmate Disciplinary Process," dated October 26, 2011, the Division of Adult Institutions informed the field that all hearing officers, senior hearing officers, captains, chief disciplinary officers, and appeals coordinators must receive four hours of revised rules violation process training.  Attached as Exhibit C is a true and correct copy of this memo.  In addition to those correctional job classifications, mental health staff involved in reviewing rules violation reports and preparing Mental Health Assessments was also required to attend the training.

7.    Training was done collaboratively.  Before any training occurred, CDCR held "Training for Trainers" sessions to ensure each trainer was appropriately educated on the criteria. These "Training for Trainers" sessions were conducted jointly by a correctional lieutenant and headquarters mental health staff.  When the correctional and mental health staff were ultimately trained on the revised policy, all classifications were trained together to ensure that both staffs were aware of each other's responsibilities.

8.    This training applied to all current employees within the specified job classifications regardless of whether the employee had previously received training related to the rules violation process.

9.    A subsequent memo titled "Revision to the Mental Health Assessment Request Process for Rules Violation Reports (Update)" was issued on November 3, 2011.  Attached as Exhibit D is a true and correct copy of this memo.  That memo made clear that the training shall occur no later than December 30, 2011.  In order to facilitate the training, a 30-page training package, titled "Inmate Disciplinary Process – Mental Health Assessment Training" was created with a revision date of October 24, 2011.

10.   The training module teaches correctional officers and mental health staff the complete rules violation process, including how to complete the mental health assessment.  Staff is trained on which inmates require staff assistants and how to identify those inmates.  Staff is also trained on mitigation of penalties as a result of mental illness.

3

Decl.  J. Stein Supp. Defs' Opp'n. to Pls.' Mot. Rel. to Use of Force & Discipl. Measures and Rel.
to Housing & Treatment of Mentally Ill Prisoners in Seg.
(2:90-cv-00520 LKK JFM PC)

**CDCR Staff Receive Training on When to Refer an Inmate for a Mental Health Assessment**

11.  Plaintiff's expert, Eldon Vail, opines that Correctional Clinical Case Management System level of care inmates are not referred to a Mental Health Assessment because correctional staff does "not have sufficient training or skill to evaluate the behavior of mentally ill inmates." (Vail Rpt. ¶ 80.)  Mr. Vail's statement is incorrect.  CDCR staff is trained on identifying inmates that exhibit symptoms of a mental illness or exhibit bizarre, unusual, or uncharacteristic behavior. Such symptoms, coupled with behavior that results in a rules violation, would result in a referral for a Mental Health Assessment when the offense is a Division D, E, or F offense that would not result in a Security Housing Unit term.

12.  The October 2011 Rules Violation Reports Inmate Disciplinary Process training was designed to teach custody and clinical staff to identify when an inmate's mental health level of care and behavior that leads to a rules violation requires completion of a Mental Health Assessment.  The training reinforces that all Enhanced Outpatient Program, Mental Health Crisis Bed, and Department of State Hospital level of care inmates must be referred to a Mental Health Assessment after being issued a rules violation report.   The training module also reinforces that all inmates at the Correctional Clinical Case Management System level of care must receive a Mental Health Assessment when they are issued a Rules Violation Report  for any Division A, B, or C offense—the most serious offenses, such as murder, battery, and escape—or when they commit an offense that may result in a Security Housing Unit term.

13.  The training also illustrates common mental health symptoms that, if present during the commission of the offense, would require referral to a Mental Health Assessment.  The training also gives examples of bizarre, unusual, or uncharacteristic behaviors that would lead someone to believe that mental illness is influencing an inmate's behavior.

**Consideration of Mental Health Assessment as Mitigation.**

14.  Plaintiffs also complain that the hearing officer does not take the Mental Health Assessment into consideration.  Hearing officers are trained on proper mitigation techniques to use when adjudicating an rules violation offense committed by a mentally ill inmate.  For instance, the October 2011 training recommended not suspending phone privileges where the

Decl.  J. Stein Supp. Defs' Opp'n. to Pls.' Mot. Rel. to Use of Force & Discipl. Measures and Rel. to Housing & Treatment of Mentally Ill Prisoners in Seg.
(2:90-cv-00520 LKK JFM PC)

1   inmate relies on positive outside contact for treatment.  The training also encouraged hearing

2   officers to reduce the severity of a rules violation to the administrative violation level, when

3   appropriate, in order to ensure stability of treatment to a mentally ill inmate.

4       15.  There are a range of penalties for violating an institution rule resulting in an rules

5   violation report, some of which are mandatory and some of which are discretionary.  For

6   example, a guilty finding for certain serious rule violations requires a certain level of credit

7   forfeiture.  (*See* Title 15 § 3323.)  But in addition to mandatory penalties, hearing officers have

8   the authority to impose administrative penalties such as the suspension of privileges, such as yard,

9   telephone, or dayroom, a change in privilege group for no more than 30 days, confinement to

10  quarters not to exceed ten days total and not to exceed five consecutive days, assignment to no

11  more than 40 hours of extra duty, or loss of appliances for a set period of time.  (*See* Title 15 §§

12  3314, 3315.)  Therefore, a hearing officer may take the Mental Health Assessment into

13  consideration by choosing to mitigate penalties.  For example, an officer may elect to not impose

14  an administrative penalty in addition to a mandatory credit forfeiture, where it may be otherwise

15  warranted.

16      16.  Hearing officers are trained to review the entire rules violation packet, including any

17  Mental Health Assessment.  The hearing officer is also instructed to consider the inmate's mental

18  condition and level of care and the clinician's comments on the Mental Health Assessment,

19  especially where mitigation of penalty is warranted.

20      17.  Hearing officers are also trained to document their findings on the Rules Violation

21  Reports, specifically mentioning whether or not mental health factors were considered in

22  mitigation.

23      18.  Chief Disciplinary Officers, the individual in charge of auditing completed Rules

24  Violation Hearings, were trained to investigate whether hearing officer consider the clinician's

25  input contained within the Mental Health Assessment and whether they document the results.

26  Additionally, Chief Disciplinary Officers are trained to investigate whether the hearing officer

27  mitigated the penalty due to the Mental Health Assessment or whether the hearing officer chose

28  to disregard the recommendation.  The Chief Disciplinary Officer shall order the RVR reissued

Decl. J. Stein Supp. Defs' Opp'n. to Pls.' Mot. Rel. to Use of Force & Discipl. Measures and Rel.
to Housing & Treatment of Mentally Ill Prisoners in Seg.
(2:90-cv-00520 LKK JFM PC)

1  and reheard if he or she finds that the inmate's due process rights were not afforded. Attached as

2  Exhibit E is a true and correct copy of DOM § 52080.3.3.1.

3  **Referrals of Rules Violation Report Offenses to the District Attorney's Office**

4      19.  CDCR forwards rules violations that also constitute criminal conduct to local criminal

5  authorities for possible prosecution. Penal Code section 2932, subdivision (f), authorizes CDCR

6  to refer cases for prosecution where the inmate's conduct constitutes a crime. Where there is

7  substantial evidence that such a crime has occurred, section 3316 of Title 15 mandates that CDCR

8  shall refer the rules violation to appropriate authorities for possible investigation and prosecution.

9      20.  From time to time, it is possible that a rules violation by a mentally ill inmate is

10  referred for possible prosecution. As a law enforcement agency, CDCR has a responsibility to

11  report suspected crimes to the appropriate prosecuting authority. CDCR does not refer rules

12  violations to prosecuting authorities as a punitive matter against the inmate. CDCR refers rules

13  violations as a matter of law.

14

15  I declare under penalty of perjury under the laws of the State of California and the United States

16  of America that the foregoing is true and correct. Executed in Sacramento, California on July 24,

17  2013.

18

19

20                          Joe Stein

                         Captain, Adult Institutions

21                           Standardized Procedures Unit

22                 *(original signature retained by attorney)*

23

24

25

26

27

28                               6