# EXHIBIT A

SANFORD JAY ROSEN[i]
MICHAEL W. BIEN
ERNEST GALVAN
GAY C. GRUNFELD

JANE KAHN[2]

# ROSEN, BIEN & GALVAN, LLP

ATTORNEYS AT LAW
315 MONTGOMERY STREET, TENTH FLOOR
SAN FRANCISCO, CALIFORNIA 94104-1823
TELEPHONE (415) 433-6830
FAX: (415) 433-7104
EMAIL: rbg@rbg-law.com
www.rbg-law.com

LAURA BOYSEN-ARAGON
SUMANA COOPPAN
LISA ELLS
AARON J. FISCHER[3]
MICHAEL FREEDMAN
SHIRLEY HUEY[4]
KATHRYN G. MANTOAN
LESLIE C. MEHTA[5]
THOMAS NOLAN
BLAKE THOMPSON
KENNETH WALCZAK[6]
SARAH O. ZIMMERMAN[6]

October 31, 2011

VIA E-MAIL

Matthew A. Lopes, Jr.
Special Master
Pannone Lopes Devereaux & West LLC
317 Iron Horse Way, Suite 301
Providence, RI 02908-5600
MLopes@pldwlaw.com

Re:    *Coleman v. Brown*: Comments re Defendants' RVR Training Materials
       Our File No. 0489-3

Dear Special Master Lopes:

Plaintiffs write to provide comments on Defendants' RVR training materials entitled "Inmate Disciplinary Process Mental Health Assessment Training," and the October 26, 2011 CDCR Memorandum on "Training for Custody and Clinical Staff Regarding Mental Health Input into the Inmate Disciplinary Process," which were provided to Plaintiffs on October 27, 2011. As has been emphasized by all parties at recent meetings on Defendants' new RVR CCCMS policy and the Mental Health Assessment process for disciplinary matters, this training is critical to ensure complete and appropriate implementation that leads to, among other things: meaningful consideration of a class member's mental illness during the disciplinary process; appropriate mitigation of punishment; elimination of inappropriate and counterproductive placements in segregation units; and provision of necessary mental health treatment that addresses class members' psychiatric condition and related problematic behaviors.

Plaintiffs have endorsed the change in the RVR policy insofar as a Mental Health Assessment will now be provided for "any CCCMS inmates receiving a Division A, B, or C RVR, and for any rules violation that may result in being assessed a Security Housing Unit (SHU) term as identified in the California Code of Regulations (CCR) Title 15, Section 3341.5." The training, and ongoing review of this policy's implementation, must

[1]MEMBER OF THE CONNECTICUT AND THE CALIFORNIA BAR
[2]OF COUNSEL
[3]MEMBER OF THE NEW YORK, WASHINGTON, D.C. AND THE CALIFORNIA BAR
[4]MEMBER OF THE WASHINGTON, D.C. AND THE CALIFORNIA BAR
[5]MEMBER OF THE MARYLAND, MISSOURI, KANSAS AND THE CALIFORNIA BAR
[6]MEMBER OF THE ILLINOIS AND THE CALIFORNIA BAR

Special Master Matthew A Lopes, Jr.
October 31, 2011
Page 2

focus significantly on the role of the clinician in completing the Mental Health
Assessment and in participating in the Institutional Classification Committee (ICC), as
well as the required consideration of clinical input both by the disciplinary hearing officer
and at the ICC.[1]

Plaintiffs have previously provided comments regarding aspects of Defendants'
RVR policy for CCCMS prisoners; Defendants have rejected several of Plaintiffs'
comments. Plaintiffs do not waive any objections set forth in previous correspondence
with Defendants and the Special Master Team.

Plaintiffs provide specific comments to the Inmate Disciplinary Process Mental
Health Assessment Training materials below. Plaintiffs request that any changes to these
materials be incorporated into the PowerPoint presentation to be used for the training. *In
addition, Plaintiffs note that the image on Page 13 of the PowerPoint presentation is
inappropriate and has no training value. It should be replaced or removed.*

### Learning Objective 2, Page 5

**Clarify for all staff what rules violations may lead to a SHU term.** Learning
Objective 2 introduces the new policy that a Mental Health Assessment is required for
"any CCCMS inmates receiving a Division A, B, or C RVR, and for any rules violation
that may result in being assessed a Security Housing Unit (SHU) term." Because clinical
staff are unlikely to know what rules violations fall into these categories, the training
should provide staff with a list of such rules violations, as provided in Section 3341.5 of
Title 15, for clarification purposes.

There is a reference at the bottom of Page 5 to "Attachment #9." To what
document does this refer?

### Learning Objective 3, Page 7

---

[1] Plaintiffs note that Page 3 states: "As a prerequisite to this class, you have all
taken the MHSDS training and are familiar with the signs and symptoms of serious
mental disorders." Plaintiffs notified Defendants at the September 2011 *Coleman* Policy
Meeting that at least one CDCR institution reported that such training had been
discontinued for custody staff. Plaintiffs request an update as to whether these trainings
are being consistently provided to all custody staff systemwide.

Special Master Matthew A Lopes, Jr.
October 31, 2011
Page 3

**Provide further guidance as to what recommendations should be documented by the clinician in the Form 115-MH.** The training should specifically direct the clinician completing the Mental Health Assessment to document clinical findings with respect to the impact of a SHU term on the prisoner as well as the possible need for a treatment enhancement or modification to address the prisoner's mental illness and related behaviors. In addition, this section should make clear that the clinician is to make a "mitigation recommendation," if appropriate, as stated on Page 23.

**Learning Objective 4, Page 8**

**Ensure that a Mental Health Referral Chrono is completed for all prisoners for whom a Form 115-MH Mental Health Assessment is required.** For the last several years, the *Coleman* Program Guide has required staff to complete a Form 128-B, Request for Mental Health Services, Staff Referral for all prisoners for whom a Mental Health Assessment is required. *See Coleman* Program Guide, Attachment B, Inmate Disciplinary Process Training at 5-6. In the draft RVR training materials, this referral chrono requirement would apply only to prisoners exhibiting "bizarre, unusual, or uncharacteristic" behaviors. The training materials should be revised such that a Mental Health Referral Chrono is completed for *all* prisoners for whom a Mental Health Assessment is required.

Plaintiffs have previously requested that the RVR policy, and any related training, direct that RVR information, including any Mental Health Assessments, be provided to the prisoner's clinical case manager. Defendants stated that they would provide a report to Plaintiffs and the Special Master on this issue, but have not done so. Plaintiffs note that maintaining and fully implementing the policy described in the *Coleman* Program Guide are necessary to address this critical issue, and that the proposed change would be a step in the wrong direction in this regard.

**Learning Objective 4, Page 10**

**Clarify the list of three circumstances warranting a Mental Health Assessment.** It should be stated below the flow chart on Page 10 that a "Mental Health Assessment Request must be submitted *if any of the following circumstances exist.*" Bullet 2 can then be simplified to state that "The inmate's observed behavior leading to the 115 was 'bizarre, unusual, or uncharacteristic.'"

**Learning Objective 5, Page 12-13**

**Clarify the 5 and 15 day timelines for completion of the Mental Health Assessment.** This section sets forth two timelines for completion of the Mental Health

Special Master Matthew A Lopes, Jr.
October 31, 2011
Page 4

Assessment depending on the nature of the rule violation and the prisoner's level of
mental health care. For a non-MHSDS or CCCMS prisoner, who has been charged with
a division D, E, and F offense, a Mental Health Assessment must be completed within
**five working days** from the initial request from custody to determine whether the
prisoner should be assigned a Staff Assistant. For EOP, MHCB, DMH, or CCCMS
prisoners who have been charged with a division A, B, or C offense, or for any rule
violation that may result in being assessed a SHU term, a Staff Assistant is automatically
assigned. In those cases, the Mental Health Assessment must be completed with **fifteen
calendar days** from the initial request.

This section should be rewritten or a flow chart should be used to illustrate the
decision points that lead to the two timeframes.

### Learning Objective 8, Page 15

**Delete "serious" from "serious mental disorder" in Bullet 2.** The phrase is
inconsistent with all other references to the clinician's duty to determine whether and
how the prisoner's mental disorder may have contributed to the conduct leading to the
RVR.

**Provide further guidance as to what recommendations should be provided by
the clinician in Bullet 3.** The training should specifically direct the clinician completing
the Mental Health Assessment to document clinical findings with respect to the impact of
a SHU term on the prisoner as well as the possible need for a treatment enhancement or
modification to address the mental illness and related behaviors. In addition, this section
should make clear that the clinician is to make a "mitigation recommendation," if
appropriate.

### Learning Objective 9, Page 17

Item Number 3 should identify the prisoner's understanding that the interview is
not confidential as a factor in determining whether there is informed consent. The item
should state: "If the inmate is willing to talk to you, determine if the inmate is capable of
giving informed consent to the interview. You may establish this by asking if s/he
understands the charges against her/him, *if s/he understands that the interview regarding
the RVR is not confidential*, and if s/he understands the disciplinary process."

### Learning Objective 9, Page 19

**Provide more specific training as to the purpose of Question 3.** Training on
Question 3 should make clear to staff that the ICC may assess a SHU term even when a

Special Master Matthew A Lopes, Jr.
October 31, 2011
Page 5

clinician has found that the prisoner's mental illness contributed to the conduct leading to the RVR. The clinician should be directed to document clinical findings with respect to the impact of a SHU term on the prisoner as well as the possible need for a treatment enhancement or modification to address the mental illness and related behaviors. In addition, this section should make clear that the clinician is to make a "mitigation recommendation," if appropriate.

### Learning Objective 9, Page 20

**MH-115s should be an "alert" on the face of a prisoner's eUHR file.** The training materials direct the clinician completing the Mental Health Assessment to make a note in the UHR that a 115-MH has been completed. To ensure that the prisoner's clinical team is aware of this Mental Health Assessment, it should be made an alert on the eUHR file.

### Learning Objective 11, Page 22

**Hearing officers should be trained in making findings regarding the impact of a SHU assessment.** The training discusses the hearing officer's role in mitigating a punishment based on a guilty finding. The training provides that the hearing officer should consider the prisoner's need for stability in the treatment environment to promote and maintain treatment gains. The training also provides that, in some cases, the hearing officer may reduce a serious RVR in order to allow the prisoner to remain in the same housing unit, under the same care. For these processes to be meaningful, the hearing officer must be trained on making findings regarding the impact of a SHU assessment. Because a SHU assessment is determined by the ICC, the hearing officer should consider whether a guilty finding for an RVR may lead to a SHU assessment or consideration by the ICC.

### Learning Objective 12, Pages 27-28

**Direct the Chief Disciplinary Officer (CDO) to review whether a Mental Health Referral Chrono is completed for each prisoner for whom a Form 115-MH Mental Health Assessment is required.** As stated above, the *Coleman* Program Guide has long required that staff complete a Form 128-B, Request for Mental Health Services, Staff Referral for all prisoners receiving a Mental Health Assessment. *See Coleman* Program Guide, Attachment B, Inmate Disciplinary Process at 5-6. The CDO should review whether this chrono is being completed in each case.

[564913-1]

Special Master Matthew A Lopes, Jr.
October 31, 2011
Page 6

### Learning Objective 13, Page 29

**Clarify the role and responsibilities of the Classification Committee through specific examples that illustrate how the Mental Health Assessment and the Hearing Officer's findings will assist the Classification Committee in its decision whether to affirm or modify the prisoner's program, work group or housing assignment.** As emphasized above in our comments regarding Objectives 9 and 11, the mental health evaluator and the hearing officer must be trained in making mitigation findings regarding the impact of a SHU assessment if the prisoner is found guilty. These findings will provide the Classification Committee with critical information for their decision-making process, which is the last and critical piece of the disciplinary policy.

### Additional Issues Regarding Defendants' RVR Policy and Training

Plaintiffs request that the Special Master monitor the outcomes of Defendants' new policy, including with respect to the impact on disciplinary findings and RVR dismissals, mitigation of punishment, subsequent placement in segregation units, and assessment of SHU terms. Defendants should develop and maintain a system to track and assess whether and how the current changes to the RVR policy and the related training impact these important issues.

Defendants have represented that the five-year roll out of RVR Coordinator and support staff positions identified in their June 3, 2011 report is no longer applicable, and that hiring for these positions will be completed no later than July 2012. Plaintiffs request that the Special Master monitor this staffing commitment, as well as training of new staff members on this policy and relevant procedures.

Thank you for your attention and efforts. Please feel free to contact Plaintiffs with any questions or concerns.

Sincerely,

ROSEN, BIEN & GALVAN, LLP

*/s/ Jane E. Kahn*

By:   Jane E. Kahn

JEK:
cc:    *Coleman* Special Master Team

[564913-1]

Special Master Matthew A Lopes, Jr.
October 31, 2011
Page 7


      *Coleman* Co-Counsel
      Debbie Vorous
      David Brice

# EXHIBIT B

**Inmate Disciplinary Process**
**Mental Health Assessment Training**

## INSTRUCTIONAL GOALS:

1.  To train custody and clinical staff regarding their responsibilities related to the preparation, processing, adjudication, and completion of Rules Violation Reports (RVRs), CDC Form 115, and related forms when inmates in the Mental Health Services Delivery System (MHSDS), or those who show signs of possible mental illness, are subjected to the inmate disciplinary process.

2.  To train staff to better determine if an inmate with a mental disorder has the ability to act in his/her own interest, or requires assignment of a Staff Assistant.

3.  To train custody and clinical staff regarding the triggers that prompt completion of a CDCR Form 115-MH: Mental Health Assessment Request.

4.  To train custody and clinical staff regarding the process by which clinical staff provides input into the RVR process.

5.  To train custody staff regarding consideration of clinical input during the hearing of a CDC 115, including penalty mitigation, and documentation thereof.

6.  To train custody staff regarding the roles of the Senior Hearing Officer and the Chief Disciplinary Officer in the disposition of RVRs for mental health inmates.

**Inmate Disciplinary Process**
**Mental Health Assessment Training**

---

### LEARNING OBJECTIVES

**YOU WILL BE ABLE TO IDENTIFY:**

1. The types of chronos that are used by correctional and mental health staff to document inmate behavior.

2. When an inmate's mental health level of care and behavior leading to an RVR require completion of a CDCR Form 115-MH, Rules Violation Report: Mental Health Assessment Request.

3. The three purposes of CDCR Form 115-MH, Rules Violation Report: Mental Health Assessment Request form: 1) determine the need to assign a Staff Assistant; 2) address possible contribution of mental disorder in the behavior that led to the RVR, and; 3) address mental health factors to be considered by Hearing Officer in mitigation of possible penalty.

4. The process from start to finish of an RVR MH assessment.

5. The time limits for completion of CDCR Form 115-MH, Rules Violation Report: Mental Health Assessment Request, by mental health clinicians.

6. Which inmates require assignment of Staff Assistants to facilitate their participation in, and understanding of, the inmate disciplinary process.

7. The staff classifications that may complete the mental health assessment of the inmate prior to the hearing phase of the inmate disciplinary process.

8. The purpose of the inmate interview conducted by mental health clinicians.

9. The sources of information the clinician may use to complete the mental health assessment.

10. The decisions made by the classifying official.

11. The potential actions that may be taken by the Hearing Officer and Senior Hearing Officer following an Administrative or Serious RVR hearing.

12. Three of the actions that the Chief Disciplinary Officer (CDO) may order following review of a completed RVR.

13. Your role and responsibilities in the Classification Committee.

14. The importance of developing treatment plans for inmates who threaten to engage in, or engage in, self-harming behaviors.

---

# INTRODUCTION

To hold inmates accountable for their behavior, the California Department of Corrections and Rehabilitation (CDCR) has developed a system of progressive discipline designed to apply consequences commensurate with the seriousness of an inmate's misconduct. In administering discipline, CDCR must comply with various laws and policies derived from:

- United States Constitution
- California Constitution
- California Penal Code
- California Code of Regulations (Title 15)
- Department Operations Manual (DOM)
- Administrative Bulletins (e.g., 05/06/2009, 06/30/2009, 05/10/2011)
- Instructional Memoranda
- Case Law

In an administrative hearing, inmates are to be afforded protection of their due process rights (i.e. – know the charges, call witnesses, review evidence, prepare for hearing, be present at the hearing, etc…). In addition to these rights related to the disciplinary process, inmates have a right to required health care, including appropriate and required mental health treatment. Based upon the Department's need to facilitate these rights, the disciplinary process was modified in 2003 to ensure that mental health conditions potentially impacting the recipient of an RVR are addressed. The disciplinary process was modified again in June and October 2011.

This training is an orientation to the inmate disciplinary process that will familiarize you with the staff directly involved in the process, and their responsibilities related to the process. For the sake of clarity, acronyms in this instruction will be used sparingly. The last page of your manual is a list of acronyms related to the disciplinary process and mental health program. The term "inmate" refers to an inmate in the MHSDS. Inmates not in the MHSDS may have occasion to receive an RVR MH Mental Health Assessment Request. For simplification, this document will refer to both with the term "inmate."

## LEARNING OBJECTIVE 1

**You will be able to identify the types of chronos used by correctional and mental health staff to document inmate behavior.**

This information is taken from DOM, Chapter 7, Article 3 – Types of Records, and CCR, Title 15 (2011), Subchapter 4, Article 5 – Inmate Discipline.

♦ CDC Form 128-A: Custodial Counseling Chrono (white in color, 1/3rd page size) shall be used only for the purpose of recording minor acts of nonconformance. (*See* Attachment # 1.)

♦ CDC Form 128-B: General Chrono (canary yellow in color, 1/3rd page size) shall be used by staff when subject matter to be reported involves classification, parole, or social service. (*See* Attachment # 2.)

  o The reporting employee shall use the CDC Form 128-B to report such information as the inmate's relationships with fellow inmates, behavior, personal cleanliness, general attitude, and personality.

♦ CDC Form 128-C: Medical/Psychiatric/Dental (pink in color, 1/3rd page size) is used by medical, psychological, psychosocial, psychiatric, and dental departments in place of a "memo." An exception is the psychiatric report prepared by the Board of Prison Hearings. (*See* Attachment # 3.)

♦ CDCR Form 128-MH5 (Rev. 06/06), Mental Health Referral Chrono. This is a two-sided form, printed head-to-head, on 8½" x 3½", blue bond paper (previously printed informally on CDC Form 128). (*See* Attachment # 4.)

♦ CDC 115: RVR (blue in color, full page) is used to document rule infractions. (*See* Attachment # 5.)

♦ CDCR 115-A: Serious RVR (blue in color, full page). (See Attachment # 6)

♦ CDCR 115-MH (Rev. 06/06), RVR: Mental Health Assessment Request. This is a two-sided form, printed on 8 ½" x 5 ½", 3-part NCR paper (White, Blue, and Pink). The instructions will be printed on the back of every page (previously printed informally on CDC Form 128). This is the form that we are primarily concerned with today. (See Attachment # 7)

As previously mentioned, this training is designed to provide an overview of the inmate disciplinary process, with an emphasis on the integration of mental health input into the process. In order for involved staff to make appropriate decisions regarding the inmate disciplinary process they must have all of the pertinent information. This includes information from mental health clinicians that could have significant impact upon the outcome of the inmate disciplinary process. To this end, custody and mental health staff must form a partnership focused on communication and information sharing.

**Inmate Disciplinary Process**
**Mental Health Assessment Training**

## LEARNING OBJECTIVE 2

**You will be able to identify when an inmate's mental health and behavior leading to an RVR require completion of a CDCR Form 115-MH, Rules Violation Report: Mental Health Assessment Request.**

An inmate at the Enhanced Outpatient Program (EOP), Mental Heath Crisis Bed (MHCB), and Department of Mental Health (DMH) level of care, who receive a CDCR Form 115, Rules Violation Report, must be referred for an RVR Mental Health (MH) Assessment. If the inmate's level of care is Correctional Clinical Case Management System (CCCMS) and s/he receives an RVR, s/he MUST be referred for an RVR MH assessment for any Division A, B, or C offense, or if the inmate commits an offense that could result in a SHU term. For any Division D, E, or F offense that would not result in a possible SHU term, s/he MUST be referred for an RVR MH assessment if any of the behavioral and emotional symptoms in the table below are present *and* could be identified as "bizarre, unusual, or uncharacteristic:"

| Mental Health Symptoms |
| --- |
| ♦ Apathy |
| ♦ Catatonia |
| ♦ Cognitive and/or memory Impairment |
| ♦ Delusions |
| ♦ Depression |
| ♦ Difficulty Following Routines or Instructions |
| ♦ Diminished Self Care |
| ♦ Disorganized Speech |
| ♦ Disorientation and Confusion |
| ♦ Fatigue |
| ♦ Grandiosity |
| ♦ Hallucinations |
| ♦ Hostility or Belligerence |
| ♦ Invincibility |
| ♦ Loss of Appetite |
| ♦ Manic Speech |
| ♦ Mood Swings |
| ♦ Restlessness. |
| ♦ Sleep Disturbances |
| ♦ Slowing |
| ♦ Smearing of Feces |
| ♦ Suicidal and/or Self-Injurious (make an emergency referral) |
| ♦ Vulnerability |
| ♦ Withdrawal |

*See Attachment #9 for a more complete list and definitions

**Inmate Disciplinary Process**
**Mental Health Assessment Training**

Bizarre behavior is very odd in manner or appearance when compared to the normal behavior of an average person. Bizarre behavior may manifest in oddities of clothing, grooming, language usage, or actions.

Uncharacteristic or unusual conduct refers to any behavior that differs noticeably from the inmate's typical behavior patterns. Periods of decompensation may begin with alterations in the inmate's normal presentation and evolve into more bizarre or unusual behaviors or presentations.

Examples of uncharacteristic or unusual conduct include observing the inmate talking to himself/herself, disheveled clothing, mood disturbance, appearing distracted or not being able to follow a conversation or simple instructions. Other examples may include increased confrontations with others, refusing to come out of his/her cell and refusing to attend program activities.

NOTES:

_____
_____
_____
_____
_____
_____
_____
_____

**Inmate Disciplinary Process**
**Mental Health Assessment Training**

**LEARNING OBJECTIVE 3**

**You will be able to identify the three purposes of CDCR Form 115-MH, Rules Violation Report: Mental Health Assessment Request form.**

The CDCR Form 115-MH, Rules Violation Report: Mental Health Assessment Request, has three critical functions, as described below:

1. The information provided by the reviewing clinician will help the Classifying Official in determining whether the inmate should be assigned a <u>Staff Assistant</u> due to mental health concerns. The California Code of Regulations, Title 15, Section 3315(d)(2)(A), states in part:

> The inmate shall be assigned a staff assistant, as described in Section 3318(b), to assist in the investigation, preparation, and presentation of a defense at the disciplinary hearing if the chief disciplinary officer or designee determines...[t]he complexity of the issues are such that assistance is necessary so the inmate comprehends the nature of the charges or the disciplinary process.

In addition, Section 3315(d)(2)(E)(1) states:

> Inmate participants in the Mental Health Services Delivery System at the level of Enhanced Outpatient Program, Mental Health Crisis Bed, Department of Mental Health, or Developmentally Disabled Program participants at the level of DD1-DD3 are ineligible to waive or refuse the assignment of a staff assistant. The staff assistant shall perform his/her required duties to the extent possible despite a waiver or refusal by the ineligible inmate to cooperate.

2. The clinician will indicate whether, in his/her opinion, the inmate's <u>mental disorder</u> appeared to contribute to the behavior that led to the RVR. This information is critical to the hearing officer, who will determine a reasonable penalty for the actions leading to the RVR.

3. The clinician will document if there are any mental health factors that should be considered by the hearing officer in assessing a <u>penalty</u> if the inmate is found guilty of the offense. This information is critical to the decision made by the hearing officer, since it may lead to mitigation of the possible penalty, and will incorporate any adverse impact from the penalty upon the inmate's mental health functioning.

NOTES:

_____
_____
_____
_____
_____
_____
_____
_____
_____

**Inmate Disciplinary Process**
**Mental Health Assessment Training**

## LEARNING OBJECTIVE 4

**You will be able to identify the process, from start to finish, of an RVR MH assessment.**

INITIAL OBSERVATION OF MISCONDUCT

Let us begin with an act by an inmate that violates Departmental rules, requiring staff to report the inmate's misconduct on a CDCR Form 115.

```
( Misconduct Occurs )
```

Usually this misconduct is observed by a correctional officer, but may be seen by staff in any classification. Whenever a correctional officer witnesses the misconduct, the officer shall issue the CDCR 115; however, additional staff may be asked to provide input via the informational chrono. Clinical staff must avoid dual role situations in which they are the therapist and the witness, except in cases when they are the sole witness to the event. After witnessing the alleged misconduct, staff must determine if the inmate has violated any of the rules listed in Title 15. If so, the observing staff may write a CDCR-115, citing the rule number violated and describing the misconduct in detail.

The Reporting Employee completes the 115 worksheet or rough draft, documenting the inmate's actions in detail. The worksheet is then given to the Reviewing Supervisor for proofreading.

```
CDCR 115
Worksheet
```

A staff member who witnesses "bizarre, unusual, or uncharacteristic" behavior(s) by an inmate, should complete a CDCR Form 128-MH5, Mental Health Referral Chrono with a detailed description of the behavior. The completed form is routed to Mental Health Services requesting an evaluation of the inmate for possible treatment needs. Officers, hearing officers, and reviewing supervisors are encouraged to call mental health staff if:

- an urgent response is needed
- the behavior of the inmate seems unusual
- there are questions about his or her mental health condition
- a discussion might be more helpful than a written communication.

```
CDCR 128-MH5 Mental
Health Referral Chrono
```

**Inmate Disciplinary Process**
**Mental Health Assessment Training**

> **Scenario:** *[This is an example of a real incident.]* A white inmate is pointing and yelling incoherently at two Hispanic inmates who are playing handball next to the building. The inmate appears to be highly agitated and attacks the two Hispanic inmates by kicking their lower legs and hitting their torsos, yelling, "Remember the Alamo!" This activity is observed by the Yard Officer who yells for the inmates to "get down." The two Hispanic inmates comply, but the aggressor continues his apparently unprovoked attack. The two Hispanic inmates get up and fight back. The combatants ignore repeated orders to stop fighting, so staff utilize force to stop the incident. All the combatants stop fighting and assume a prone position on the ground. The initial aggressor becomes combative with staff when handcuffed and resists removal from the yard.

*Trainer's Note: When completed, ask the class, "Based upon the information provided, what would you do? (Allow 10 minutes for discussion)*

*After the discussion, ask the following question to stimulate additional discussion, "Suppose the Yard Officer knows that this behavior is not typical of this inmate?" (Allow 10 more minutes for discussion)*

REVIEWING CUSTODY SUPERVISOR

Upon receipt of the CDC 115 worksheet, the Reviewing Supervisor will read the description of the misconduct described in the draft and determine if the misconduct should be handled administratively via verbal counseling, documented on CDC Form 128-A, Custodial Counseling Chrono, or documented on CDC Form 115 as an Administrative or Serious RVR.

If the misconduct is deemed serious enough to warrant documentation as an RVR, the 115 will be completed and signed by the Reporting Employee, Reviewing Supervisor, and forwarded to the classifying official.



**Inmate Disciplinary Process**
**Mental Health Assessment Training**

CLASSIFYING OFFICIAL

The Classifying Official will review the RVR and confirm whether the misconduct meets the criteria for classification as an Administrative or Serious RVR. The Classifying Official will also confirm the appropriate "Division," or level, of the offense, from Division A to Division F, for Serious RVRs.

The final action of the Classifying Official is to evaluate the RVR to determine if the circumstances require a Mental Health Assessment of the inmate's actions. Based upon current Department policy, staff must submit a CDCR Form 115-MH, Rules Violation Report: Mental Health Assessment Request for clinical input for any inmate in the MHSDS at the EOP, MHCB, or DMH levels of care. Staff must also submit a CDCR Form 115-MH, Rules Violation Report: Mental Health Assessment Request for clinical input for any inmate in the CCCMS level of care who has been charged with a division A, B, or C offense, or any offense that may result in the assessment of a SHU term.

In addition, staff must submit a CDCR Form 115-MH for any inmate in the MHSDS at the CCCMS level of care whose 115 is classified as a division D (non-SHUable), E, or F, or a non-MHSDS inmate, and who is exhibiting "bizarre, unusual, or uncharacteristic" behavior resulting in a 115.



Mental Health Assessment Request must be submitted if any of the following circumstances exist:

- The inmate is a patient in the MHSDS at the CCCMS level of care and the offense is classified as division A, B, or C offense, or any offense that may result in the assessment of a SHU term.
- The inmate is a participant in the MHSDS at the CCCMS level of care and the offense is NOT SHUable, or the inmate is not an identified participant of the MHSDS. In this case, the observing staff must determine if the inmate's observed behavior leading to the 115 was "bizarre, unusual, or uncharacteristic."
- The inmate is at the EOP, MHCB, or DMH level of care

For CCCMS level of care offenders whose 115s are division D (non-SHUable), E, or F, and for non-MHSDS inmates, the observing staff must determine if the inmate's observed behavior leading to the 115 was "bizarre, unusual, or uncharacteristic." In the event this determination is made, the reporting employee must accurately and thoroughly describe the inmate's behavior.

**Inmate Disciplinary Process**
**Mental Health Assessment Training**

In addition, the Reporting Employee must ensure that to the extent the inmate is in the MHSDS, his/her level of care is reported as the last line of the RVR in the "Circumstances" section of the form.

If it is determined that a mental health assessment is required based upon the inmate's level of care and the behavior leading to the RVR, the Classifying Official shall initiate CDCR Form 115-MH, completing the top portion of the form, stopping at MENTAL HEALTH CLINICIAN section of the form. The 115-MH, 115 and all supporting documents are forwarded to the Mental Health designee for completion of the mental health assessment on Form CDCR 115-MH. The mental health clinician who will do the assessment cannot be the treating clinician, or the same individual who wrote the CDC 115 informational chrono.



NOTES:

_____

_____

_____

_____

_____

_____

_____

_____

**Inmate Disciplinary Process**
**Mental Health Assessment Training**

**LEARNING OBJECTIVE 5**:

**You will be able to identify the time limits for completion of CDCR Form 115-MH, Rules Violation Report: Mental Health Assessment Request, by mental health clinicians.**

Please note there are time restrictions related to processing the 115-MH.  All staff involved in the inmate disciplinary process must adhere to these process timelines.  The Classifying Official must be aware of the importance of expediting initiation of the 115-MH.  This form, along with the RVR and all supporting documents, is forwarded to the mental health designee for completion.

Time constraints begin on the date of discovery of information leading to the charge(s).  The inmate must be issued an initial copy of the CDCR 115 within 15 calendar days of the date of discovery.  In order to determine if a <u>non-MHSDS or CCCMS</u> inmate requires a Staff Assistant, mental health staff must complete the Mental Health Assessment within <u>five working days from initial request from custody</u>.  This time frame may be shorter at some institutions based on their local operating procedures.

Mental health staff members have **fifteen (15) calendar days** to complete the assessment for CCCMS, EOP, MHCB and DMH inmates, and return it to the requesting custody staff.  Although these time limits seem short, mental health staff members are encouraged to complete their assessments as quickly as possible.

**Inmate Disciplinary Process**
**Mental Health Assessment Training**

**LEARNING OBJECTIVE 6:**

**You will be able to identify which inmates require assignment of Staff Assistants to facilitate their participation in and understanding of the inmate disciplinary process.**

On the CDCR 115-MH form the first Mental Health Clinician question is:

For CCCMS/Non-MHSDS only: **Are there any mental health factors that would cause the inmate to experience difficulty in understanding the disciplinary process and representing his/her interests in the hearing that would indicate a need for the assignment of a Staff Assistant?**
[ ] Yes  [ ] No    **Explain "Yes" response.**

This question relates only to CCCMS inmates and Non-MHSDS inmates. Inmates at the EOP, MHCB, and DMH (both the Intermediate Care Facility and the Acute Psychiatric Program) levels of care will automatically be assigned a Staff Assistant. EOP, MHCB and DMH inmates may NOT waive assignment of a Staff Assistant.

If the inmate is in the CCCMS level of care and has been charged with a division A, B, or C RVR or for any rules violation that may result in being assessed a SHU term, a Staff Assistant should be automatically assigned. For CCCMS inmates with division D, E, and F offenses that may not result in being assessed a SHU term, and for all inmates not in the MHSDS, (regardless of the division) reviewing staff must determine if the inmate's actions leading to the RVR could be deemed bizarre, unusual, or uncharacteristic. If the behavior meets any of these criteria, a Staff Assistant must be assigned.

If the inmate does not have an active mental disorder, such that s/he can effectively present their defense, and is believed to be capable of understanding the disciplinary process, a Staff Assistant will generally not be assigned.

Many cases will fall between these extremes. If the inmate is partially impaired in her/his ability to effectively present his/her position, and unable to understand the disciplinary process, the inmate should be assigned a Staff Assistant.

If an inmate was not assigned a Staff Assistant and, at any time during the disciplinary process decompensates to the point that staff feel the inmate is having difficulty understanding the disciplinary process, or is moved into EOP, MHCB or DMH levels of care, a Staff Assistant will immediately be assigned. However, once an inmate is assigned a Staff Assistant, the inmate will retain that Staff assistant throughout the entire disciplinary process.

**LEARNING OBJECTIVE 7**:

**You will be able to identify the staff classifications that may complete the mental health assessment of the inmate prior to the hearing phase of the inmate disciplinary process.**

MENTAL HEALTH CLINICIAN

Mental Health classifications in the CDCR that are allowed to complete mental health assessments include Psychiatrists, Licensed Psychologists, and Licensed Clinical Social Workers. In addition unlicensed, but actively supervised psychologists and social workers, may also complete mental health assessments. To qualify to complete the Form 115-MH, Rules Violation Report: Mental Health Assessment Request, the clinician must have received training on how to do the assessment, and on how to complete the form.

To ensure an objective evaluation and to avoid a dual relationship, a mental health clinician other than the treating clinician is required to complete the mental health assessment of the inmate prior to adjudication of the RVR. This assessment consists of a review of the Unit Health Record (eUHR) and any other records deemed appropriate, a **non-confidential interview** with the inmate, a possible discussion with the treating clinician, and/or a possible interview of the reporting staff.

**LEARNING OBJECTIVE 8**:

**You will understand the purpose of the inmate interview conducted by mental health clinicians.**

The mental health assessment is designed to:

♦ Assess the inmate's current level of functioning and mental stability to determine if s/he is able to understand the nature of the charges and the disciplinary process. Additionally, the mental health assessment is designed to assist staff in determining the need for assignment of a Staff Assistant.

♦ Assess the inmate's level of functioning and mental stability at the time of the alleged violation to determine if a mental disorder may have contributed to the misconduct.

♦ Assess the inmate's level of functioning and mental stability to determine if the penalty (if found guilty) should be mitigated. This should focus on the inmate's level of volitional responsibility for his/her actions, as well as any adverse impact that possible penalties may have on the inmate's treatment plan.

We will now address the first two questions that the clinician must answer on the 115-MH.

1. **For CCCMS/Non-MHSDS only: Are there any mental health factors that would cause the inmate to experience difficulty in understanding the disciplinary process and representing his/her interests in the hearing that would indicate a need for the assignment of a Staff Assistant?  [ ] Yes  [ ] No    Explain "Yes" response.**

If the clinician's response to question #1 is "Yes," the Classifying Official will be alerted to the inmate's need for assistance, and a Staff Assistant will be assigned. A "No" response indicates the inmate is capable of understanding/comprehending the disciplinary process and is capable of representing his/her own interests at the time of the disciplinary hearing.

This does not negate the responsibility of the Classifying Official to review other factors, unrelated to mental health, for assignment of a Staff Assistant such as language barriers, hearing loss, or a TABE (Test of Adult Basic Education) Score of 4.0 or below.

Investigative Employee – The assignment of an Investigative Employee will **NOT** be impacted by any mental health concerns. All Investigative Employees are assigned by the hearing officer for the purpose of gathering information or clarifying existing information. *If a Staff Assistant has been assigned, the Investigative Employee may not interview the inmate unless the Staff Assistant is present.*

2. **In your opinion, did the inmate's mental disorder appear to contribute to the behavior that led to the RVR?  [ ] Yes  [ ] No    Explain "Yes" response.**

At this point, the clinicians may be asking, "How do I formulate this opinion, and what criteria do I use?" Which takes us to our next learning objective........

Revised October 24, 2011                                                                                                    15 of 30

**Inmate Disciplinary Process**
**Mental Health Assessment Training**

**LEARNING OBJECTIVE 9**:

**You will be able to determine sources of information the clinician may use in completing the Rules Violation Report: Mental Health Assessment CDCR Form 115-MH.**

The following information and sample questions are included to help the clinician in the assessment process. You may not need to follow each step in every case or follow the steps in the same order in every case. This information is presented to give the clinician a list of the essential components that should be considered in this difficult task. Be aware of the time constraints for completion and return of the 115-MH to the Classifying Official.

A. Review the CDC 115, RVR.

1. Did the inmate make any irrational statements, was there a rational motive?

2. Was the inmate's behavior bizarre, unusual, or uncharacteristic for him/her?

3. Was the inmate's behavior unprovoked or disproportionate in response to the situation?

4. Is there any other information that will help you formulate the opinions necessary to answer the questions on the 115-MH?

B. Review the relevant parts of the Unit Health Record (UHR), the Central File (C-File), and any other records deemed significant.

1. Does the Central File contain other RVRs? If so, is there a pattern in the type of incident and circumstances surrounding the misconduct?

2. If the inmate is in the MHSDS, what is the level of care, diagnosis, and characteristic symptoms?

3. Does the UHR indicate any recent changes in mental status, behavior, or participation in, and compliance with, the treatment plan?

4. Are psychiatric medications prescribed, and is the inmate compliant with taking the medication(s)? Has there been a recent change in psychiatric medication(s) (dosage, type, etc...)?

5. Does the interview, UHR or any other record indicate any recent psychological stressors for this inmate, such as a death in the family, housing change, medical illness, new conviction, etc...?

C. Consult with the inmate's primary clinician.

D. Locate the inmate and arrange a place that is as private as possible to conduct your interview. Remember this interview will not qualify as being protected by patient/clinician confidentiality. If the inmate refuses to come out of the cell, obtain the information you can at the cell door and follow the procedure below.

**Inmate Disciplinary Process**
**Mental Health Assessment Training**

1. Introduce yourself and explain that you are there to interview the inmate regarding the RVR and that the interview will NOT be confidential.

2. If the inmate refuses to talk to you, which is his/her right, you will need to talk to the Reporting Employee or others to obtain additional information.

3. If the inmate is willing to talk to you, determine if the inmate is capable of giving informed consent to the interview. You may establish this by asking if s/he understands the charges against her/him, and if s/he understands the disciplinary process.

4. If you do not believe the inmate understands the charges, or the disciplinary process, make a note of this in your findings. You may also ask the inmate about whether s/he remembers the incident and can talk about it at all.

5. When conducting the interview, ask open-ended questions to avoid directing the inmate's response. Examples might include the following (pay particular attention to any precipitants):

   a. Can you tell me what happened on (insert date) that lead to you receiving an RVR?
   b. Was there anything unusual or different about the way you felt that day?
   c. Can you describe your behavior on that day?
   d. Can you describe the actions of the Reporting Employee and other witnesses as it relates to your behavior?
   e. Were there any other inmates involved, and what did they do?
   f. Ask any other questions that occur to you from reading the RVR, UHR, C-File, or other related documents.

NOTES:

_____

_____

_____

_____

_____

_____

**Inmate Disciplinary Process**
**Mental Health Assessment Training**

---

**SPECIAL NOTE:**

When given the opportunity to speak to a clinician, some inmates will try, either intentionally or due to mental illness, to lead the discussion to other issues such as being innocent of their crime, family problems, can you "do them a favor," can you get the hearing officer to "go easy" on them, etc. Also, inmates may exaggerate their symptoms if they believe it will be to their advantage. Clinicians are encouraged to be alert to these issues. It is important to keep the interview focused on the incident described in the RVR. Make it clear to the inmate that you are there to gather information for the adjudication of the RVR and that custody will make the decision regarding his/her guilt and assess commensurate consequences, if any.

---

E.  Complete and document in the UHR (eUHR) a mental status exam on the day of the interview. Although you are trying to ascertain the inmate's mental status at the time of the incident, his/her current level of functioning is important as well. By the time you are interviewing the inmate, you should already have taken note of the following:

♦ The condition of the inmate's cell.

♦ The inmate's appearance, including the condition of clothing, personal grooming, and any other notable physical conditions.

♦ The inmate's demeanor and behavior during the interview, degree of cooperation with questions, and any psychomotor abnormalities.

♦ Determine if the inmate is oriented to time, place, person and situation.

♦ Test immediate recall, i.e. Ball, Flag Tree.

♦ Assess attention using Serial Sevens: 100, 93, 86, 79, 72, or spell the word "world" backwards.

♦ Test delayed recall (at 5 minutes): Ball, Flag, Tree.

♦ Is speech normal in rate, rhythm and modulation?

♦ Note affect and mood. Ask what the inmate's mood is today.

♦ Ask if the inmate is eating and sleeping adequately.

♦ Are thoughts well organized, rational and goal-oriented or concrete, loosely associated and irrational?

♦ Does the inmate make delusional comments?

- ◆ Is the inmate hearing voices or seeing things?

- ◆ Is the inmate feeling suicidal or homicidal?

- ◆ What is the degree of the inmate's insight and judgment?


NOTES:

_____
_____
_____
_____
_____
_____


F. Keep in mind that the inmate has the right to terminate the interview at any time.

G. After the previous steps have been completed, the clinician shall complete the MENTAL HEALTH CLINICIAN section of the 115-MH, and return it to the Classifying Official within the applicable time constraints.

It is often difficult to determine if an inmate's behavior at the time of the incident, at which the clinician was not present, was influenced by mental illness. Clinicians are expected to gather all pertinent information, use their best judgment, and answer the three questions on the form, based on the data and information obtained.

If you have answered "Yes" to the question, **"In your opinion, did the inmate's mental disorder appear to contribute to the behavior that led to the Rules Violation Report?",** the Classifying Official shall review the comments and determine whether the inmate disciplinary process is the most appropriate means of correcting and documenting the behavior.

We now address the third question that the clinician must address on the 115-MH:

3. **If the inmate is found guilty of the offense, are there any mental health factors that the hearing officer should consider in assessing the penalty?**
   [ ] Yes  [ ] No     Explain "Yes" response.

This question allows the clinician completing the 115-MH the opportunity to provide input regarding the assessment of privilege restrictions to the hearing officer when the inmate is found guilty of the misconduct. The clinician will indicate, in "lay terms," the importance of such things as telephone access, yard/dayroom activities, and/or visiting, and indicate if restriction of such privileges may conflict with the inmate's mental health treatment plan.

**Inmate Disciplinary Process**
**Mental Health Assessment Training**

Documentation: The last step in this process is that the clinician shall make a note in the UHR on CDC Form 7230, Interdisciplinary Progress Note, the following information:

♦ A CDCR 115-MH was completed on (date).

♦ The inmate was informed that the interview was not confidential.

♦ A summary of the clinical information that formed the basis for the clinician's conclusion, including results of a current mental status examination.

♦ A clear and concise rationale for how clinical information was used to form the basis for the clinician's conclusion on the 115-MH.

NOTES:

_____
_____
_____
_____
_____
_____

---

**Scenario:** Clinician's Input into the Disciplinary Process. (continuation of previous scenario)

The mental health clinician has received the 115 package, including the 115-MH. Now the clinician must answer the three questions contained in the 115-MH.

---

*Trainers Note: When completed, ask the class, "Based upon the information just learned, what would you do?"* **Review the questions on the 115-MH.** *NOTE: Encourage responses from custody and clinical staff. (Allow 10 minutes for discussion)*



## LEARNING OBJECTIVE 10:

**You will be able to understand the decisions made by the classifying official.**

## CLASSIFYING OFFICIAL

Upon receipt of the 115 package, the Classifying Official must thoroughly review the information provided by the clinician in the 115-MH, and complete the required processes. Based upon the circumstances of the RVR, and the mental health assessment of the inmate, the Classifying Official must determine if a Staff Assistant is required. In addition, the Classifying Official will determine if an Investigative Employee is required to gather information related to the upcoming hearing.

The inmate's mental status, and the assignment of a Staff Assistant, does not impact the decision to assign an Investigative Employee. However, the roles of Staff Assistant and Investigative Employee are distinct and separate. Furthermore, the Investigative Employee may NOT interview the inmate without the Staff Assistant present.

If not previously completed, the Classifying Official must review the RVR and determine if it should be processed as an Administrative or Serious RVR. The Classifying Official will also confirm or determine the appropriate "Division," or level, of the offense, from Division A to Division F, for Serious RVRs. If, based upon the input of the clinician, the Classifying Official believes it is in the interest of justice to document the behavior in an alternate manner, the RVR package is forwarded to the Chief Disciplinary Officer with a recommendation.

The Chief Disciplinary Officer or designee will review the entire package, to include the recommendation from the Classifying Official and return the RVR package to the Classifying Official with a decision as soon as possible, but no later than three working days.

The Classifying Official shall then, as directed, do one of the following:

♦ Classify the RVR as Serious and assign the level, or "Division," of the offense.

♦ Classify the RVR as Administrative.

♦ Document the behavior via Form 128-A, Correctional Counseling Chrono, for minor misconduct.

♦ Document the behavior via Form 128-B, Informational Chrono, which is non-disciplinary.

NOTES:

_____

_____

_____

_____

## LEARNING OBJECTIVE 11:

**To understand the actions taken, or that may be taken by the Hearing Officer and Senior Hearing Officer prior to, during, and following an Administrative or Serious RVR hearing.**

## HEARING OFFICER/SENIOR HEARING OFFICER

In order for the 115-MH, Rules Violation Report: Mental Health Assessment Request, process to be successful, the hearing officer must fully understand the impact the disciplinary decision could have on the inmate's mental health and/or treatment plan.

> **miti·gate** (mit′ə gāt′) *verb*, To make or become milder or less severe.

The mitigation of penalties associated with a guilty finding in a disciplinary hearing could have significant implications on the stability of a mentally ill inmate and to the MHSDS itself. For example:

◆ Suspension of phone privileges might have no impact on the inmate's behavior in some cases; whereas, suspension of phone privileges in other cases might cut off the only positive outside contact the inmate has and cause further deterioration. The inmate's treatment might include contact with his/her family and/or friends via the telephone. The suspension of this privilege could result in a deterioration in functioning.

◆ The stability of the treatment environment may be necessary to promote and maintain treatment gains. Reducing a serious disciplinary to administrative might allow the inmate to remain in the same housing unit, under the same care in which s/he currently is progressing. Whereas, if the disciplinary remains serious, the added classification points assessed might increase the inmate's classification score to the next level and require a transfer to a higher security level. This action might be adversely impact the continuity of mental health treatment.

The hearing officer must fully review the entire RVR package, including the clinician's input documented on the CDCR Form 115-MH, Rules Violation Report: Mental Health Assessment Request, prior to conducting the disciplinary hearing.

If the 115-MH indicates the need for assignment of a Staff Assistant, the hearing officer must ensure one has been assigned, and has met with the inmate at least 24 hours prior to initiating the hearing.

The hearing officer shall consider the following information during the hearing:

◆ The inmate's mental condition and level of care.

◆ The clinician's responses to the questions on the 115-MH, specifically, if mitigation in the forfeiture of good time credits and/or privileges is warranted.

**Inmate Disciplinary Process**
**Mental Health Assessment Training**

Additionally, the hearing officer may take other actions during the hearing, as appropriate, such as reducing the charge to a "lesser, included offense," dismissing the charge, etc…

When making the decision on what action should be taken, the hearing officer should consider:

♦ The inmate's level of mental health care.

♦ The inmate's compliance/non-compliance with the mental health treatment plan.

♦ The nature of the offense. Specifically, did the offense appear to be planned or spontaneous in nature? Was there rational motive? Was the alleged infraction disorganized and reflective of symptoms of mental illness? If the 115-MH indicates the inmate's mental health condition significantly contributed to the inmate's behavior, the hearing officer must consider this information when determining the appropriate method of discipline.

Now, lets discuss the next step in the process; the "Findings.

The hearing officer must thoroughly document on the CDC 115, Rules Violation Report, the use of information provided by the clinician and how it was considered in the "Findings" section of the hearing. The hearing officer must also consider whether any mental health factors should be considered in mitigation of the penalty. Whether or not mitigation is deemed appropriate, the hearing officer must document the decision, and the reasoning used to arrive at the decision. If the penalty is mitigated, the hearing officer must document how the disposition was mitigated.

If the clinician's mitigation recommendation is rejected, the hearing officer shall fully explain why the clinician's recommendation was not implemented.

NOTES:

_____
_____
_____
_____
_____
_____

## ADMINISTRATIVE RULES VIOLATION REPORT

The following information is taken from the Department Operations Manual regarding the possible dispositions that can be imposed at the conclusion of the disciplinary hearing.

**DOM, Chapter 5, Article 23** – Inmate Discipline, Section 52080.4.1, Hearing Officer.

Upon completion of the fact-finding portion of the hearing, and based upon information presented in the disciplinary report and the hearing, the following actions may be taken:

♦ Find the inmate guilty if the facts support the charge.

♦ Dismiss the matter if the facts do not support the charge.

♦ Find the inmate guilty of the charge but, in the interest of justice or because of other extenuating circumstances, dismiss the formal disciplinary charge and report the inmate's behavior on a CDC Form 128-A as described in DOM 52080.3.

♦ If treated as a counseling, the CDC Form 115 shall be disposed of as indicated in DOM 52080.15.

♦ Determine the violation to be more serious than is appropriate for an administrative violation hearing. The HO [Hearing Officer] shall terminate the administrative violation hearing and have the matter scheduled for a serious violation hearing. A new CDC Form 115 shall be issued and due process rights granted.

**DOM, Chapter 5, Article 23** – Inmate Discipline, Section 52080.4.3, Administrative Violation Dispositions.

♦ Counseling, with or without a reprimand.

♦ Temporary suspension of designated privileges for a period not to exceed 30 days from the date the inmate is or was deprived of the privilege.

♦ Confined to Quarters (CTQ) for a period not to exceed five (5) days. Inmates shall be released to go to work and program assignments.

♦ One or more weekend and/or holiday lockups not to exceed a total of ten (10) days. Weekend and holiday lockups may not be imposed in addition to CTQ.

♦ Assignment to extra duty, not to exceed 40 hours.

♦ Place a restriction on the inmate's withdrawal from their Trust Account for violations of canteen regulations or procedures or for violations involving deliberate destruction, damage, or misuse of state/private property when the inmate refuses to pay for the cost of repair or replacement of such property, as described in CCR 3090(d) and 3190.

◆ Suspend all or part of any authorized disposition for a period not to exceed 90 days pending the inmate's acceptance of, and compliance with, all specific conditions established for suspension of sentence.

◆ Invoke all or part of a currently suspended disposition for a previous violation when the finding of fact on the current violation also constitutes a finding of the conditions established for the previous suspended sentence.

## SERIOUS RULES VIOLATION REPORT

**DOM, Chapter 5, Article 23** – Inmate Discipline, Section 52080.5.5, Disposition Options.

Upon completion of the fact-finding portion of the hearing, and based upon information presented in the disciplinary report and the hearing, the following actions may be taken:

◆ The inmate may be found not guilty and the charges dismissed.

◆ The inmate may be found guilty of an administrative level violation rather than a serious level violation and the disciplinary report reclassified accordingly, with the inmate assessed an authorized administrative level disposition per CCR 3314.

◆ The inmate may be found guilty as charged and assessed an appropriate serious level disposition.

◆ The inmate may be found guilty of a lesser but included offense, the offense group designation properly modified, and assessed the penalty disposition for that offense group.

**DOM, Chapter 5, Article 23** – Inmate Discipline, Section 52080.5.6, Dispositions of Serious Disciplinary Charges.

◆ Immediate segregation from the inmate general population pending preliminary investigation of the charge, subject to the provisions of CCR 3317 and 3335.

◆ Classification review of segregated status pending a disciplinary hearing on the charge(s) when a disciplinary hearing is not held prior to the next scheduled meeting of the classification committee.

◆ Referral to the DA for possible criminal prosecution when the behavior is a criminal offense.

◆ A disciplinary hearing on the charge(s) and imposition of one or more of the following dispositions if found guilty as charged:

   ➢ Mandatory forfeiture of credit on term of imprisonment for specific acts of behavior, as set forth in CCR 3323.

   ➢ Any penalty authorized for an administrative rule violation as set forth in CCR 3314.

   ➢ Designated privileges may be temporarily suspended for up to 90 days from the date the inmate is or was deprived of the privileges.

**Inmate Disciplinary Process**
**Mental Health Assessment Training**

> ➢ CTQ or confinement to DD for a period not to exceed ten days. An inmate may be released to go to work and program assignments if such release will not jeopardize institution security. A longer period of confinement requires prior approval of the director.

> ➢ One or more weekend and/or holiday lockups not to exceed a total of ten days. This may not be imposed in addition to CTQ.

> ➢ All or part of any disposition except the denial or forfeiture of credits on term of imprisonment may be suspended for a period not to exceed six months pending the inmate's acceptance and compliance with all specified conditions established for suspension of sentence. A disposition denying or forfeiting credit on term of imprisonment shall not be suspended.

> ➢ Any currently suspended disposition for a previous violation may be invoked when the finding of fact on the current violation also constitutes a violation of the conditions established for the previously suspended sentence. In invoking the previously suspended disposition, confinement to quarters or to isolation status shall not be for longer than ten days except as provided in CCR 3322.

♦ Required to attend Alcoholics Anonymous and substance abuse programs, transferred to a substance abuse facility as per CCR 3315(f)(5)(J) if found guilty of CCR 3323(c)(7) or 3323(d)(6).

♦ Required to submit up to a minimum of four random drug tests per month for one year pursuant to CCR 3315(f)(4).

**DOM, Chapter 5, Article 23** – Inmate Discipline, Section 52080.9.3, Hearing Disposition.

A finding of guilty shall be based upon a determination by the person(s) conducting the hearing that a preponderance of evidence submitted at the hearing substantiates the charge. At the end of the hearing, the inmate shall be advised of the findings, the disposition of the charge and the right to and procedure for appeal of the action. Within five working days, the inmate shall be given a copy of the completed rule violation report, containing the findings, disposition, and evidence relied upon to support the conclusions. The rule violation report is not complete until the CDO audit is accomplished.

**Inmate Disciplinary Process**
**Mental Health Assessment Training**

## LEARNING OBJECTIVE 12:

**You will be able to identify three of the actions that the Chief Disciplinary Officer (CDO) may order following review of a completed Rules Violation Report.**

Following the hearing, each completed RVR is reviewed by the assigned Captain for completeness, adherence to Departmental policy, and to ensure that due process has been afforded to the inmate. Following the Captain's review, each RVR is reviewed by the Chief Disciplinary Officer to ensure compliance with all requirements related to the inmate disciplinary process.

**DOM, Chapter 5, Article 23** – Inmate Discipline, Section 52080.3.3, Audit of Disciplinary Rule Violation Report.

Upon completion of the hearing portion of the violation charges, an audit of the violation report shall be completed by the Chief Disciplinary Officer (CDO). The audit shall ensure:

• The CDC Form 115 and 115-A are complete.

• The serious/administrative classification is correct.

• Due process and time constraints were met.

• Charges and circumstances of offense coincide.

• Assessed credit forfeiture conforms to division of offense and credit loss schedules (CCR 3323).

• Findings and disposition were justified by documentation.

• Investigative employee's/staff assistant's determination is appropriate.

• Ensures a copy of the completed CDC Form 115 and 115-A is delivered to the inmate within five working days of audit by CDO.

In addition, it is critical that CDO's review the findings and disposition of each RVR involving a mental health inmate to ensure compliance with the requirements described in this training. Of particular concern, the following issues should be reviewed:

➢ Did the Reporting Employee identify the MHSDS level of care of the inmate committing the misconduct, and include it as the last line in the circumstances section of the RVR?

➢ Did the Reporting Employee and witnesses describe any bizarre, unusual, or uncharacteristic behavior by the inmate in the RVR?

➢ Did the Reporting Employee make a mental health referral for any inmate behaving in a bizarre, unusual, or uncharacteristic manner?

➢ Did the Classifying Official accurately evaluate the RVR to determine if the circumstances require a Mental Health Assessment of the inmate's actions?

➢ Did the Classifying Official generate the 115-MH, if required?

➢ Did the Classifying Official assign a Staff Assistant, if required?

➢ Did the hearing officer consider the input of the clinician contained in the 115-MH, and document the results?

➢ Did the hearing officer document mitigation of the penalty due to a recommendation by the clinician?

➢ If appropriate, did the hearing officer document the reasons for disregarding the clinician's recommendation for mitigation of the penalty?

**DOM, Chapter 5, Article 23** – Inmate Discipline, Section 52080.3.3.1, CDO Actions.

The CDO, following the audit shall, perform one of the following:

1. **Approve the CDCR Form 115 as submitted.**

2. **Order the CDCR Form 115 reissued and reheard if:**
   a. **CDCR Form 115 is incomplete.**
   b. **Due process rights were not afforded.**
      **The order shall be in writing with a copy provided to the inmate.**

3. **Amend the CDCR Form 115 classification and disposition to a lesser, but included charge.**

The Chief Disciplinary Officer's duties shall not be designated below the level of Associate Warden or Parole Administrator. The Chief Disciplinary Officer shall affirm, reverse, or modify the disciplinary action and/or credit forfeiture. The CDO may order a different action, order a different method of discipline, dismiss the charge, order a rehearing of the charge, or any combination of the actions.

As with all other issues affecting an inmate, the disposition of the disciplinary hearing is subject to the inmate appeals process.

NOTES:

_____
_____
_____
_____
_____
_____

**Inmate Disciplinary Process**
**Mental Health Assessment Training**

LEARNING OBJECTIVE 13

**You will understand your role and responsibilities in the Classification Committee.**

*California Code of Regulation (CCR) Title 15, Section 3315(g) states:*

Any serious disciplinary action requiring reconsideration of an inmate's program, work group, or housing assignment, shall be referred to the next reasonably scheduled classification committee for review. This review shall not occur until the chief disciplinary officer's audit of the CDCR Form 115 has been concluded. The classification committee shall affirm or modify the inmate's program, work group, or housing assignment.

In addition to the requirements set for in the CCR, Title 15, and before the committee takes any action, the classification committees shall review all the documentation associated with the CDCR 115, to include but not limited to the CDCR 115-MH. The committee needs to evaluate the clinical input on the CDCR 115-MH to ensure the information is taken into consideration when making any changes to the inmates program, work group, or housing assignment.

*CCR, Title 15, Section 3375 (g)(3), states in part:*

In the cases when the inmate is treated under the  MHSDS and is at the EOP or MHCB level of care, regardless of the inmate's housing, a clinician is required at all hearings. When the inmate is in segregated housing and treated under the MHSDS at any level of care a clinician is required as a committee member at all hearings.

Documentation, and clinical input, shall include but not be limited to the following:

- The inmate's current medical/psychiatric status/level of care.
- MHSDS treatment needs
- The inmate's ability to understand and participate in the classification hearing.

In addition to the CCR, Title 15, **clinicians shall actively participate in the committee** to ensure all relevant clinical issues are considered prior to committee action.

*CCR, Title 15, Section 3375 (g)(4) states:*

In all hearings when the inmate is treated under the MHSDS and is housed in segregated housing, documentation shall include the requirements indicated in subsection CCR, Title 15, Section 3375(g)(3) as well as the following:

- A clinical assessment of the inmate's likelihood of decompensation if retained in segregated housing.
- A summary of the clinical information provided by the clinician when an actively decompensating mentally ill inmate is recommended for transfer to a mental health program by the clinician and the decision of the committee is to retain the Inmate in segregated housing.

**Inmate Disciplinary Process**
**Mental Health Assessment Training**

**LEARNING OBJECTIVE 14:**

    **You will understand the importance of developing treatment plans for inmates who threaten to engage in, or engage in, self-harming behaviors.**

<u>ATTEMPTED SUICIDE AND THE INMATE DISCIPLINARY PROCESS</u>

When clinicians suspect that self-harming behavior, or threats of harm, reflect feigning or exaggeration of symptoms for secondary gain or manipulative purposes, an appropriate intervention should be made. The intervention may focus on clinical needs and/or collaboration with custody staff in order to address environmental stressors.

The 2009 review of suicides in CDCR reveals that a history of suicidal behavior (attempts or ideation) is the single most important risk factor for later suicide. Twenty-four percent of inmates committing suicide in 2009 had a history of suicidal behavior in the community, 36 percent had prior attempts while in CDCR custody, and together, 48 percent apparently had suicidal behavior at some time in their lives. Research completed, nationally and internationally, indicates that there are potential negative implications of dichotomizing malingered claims/attempts from "genuine" claims/attempts.

**Determining that a goal is manipulative does not help distinguish a more lethal attempt from a less lethal attempt.** However, determining that the inmate is using a suicide attempt as a means to reach a goal will help to develop a realistic treatment plan for the inmate

**Suicide attempts require thoughtful assessment and treatment. Multiple prior attempts increase the likelihood of dying by suicide. People who threaten suicide are thinking about it.**

# EXHIBIT C

State of California                                                           Department of Corrections and Rehabilitation

# Memorandum

Date    :    OCT 26 2011

To      :    Associate Directors, Division of Adult Institutions
             Wardens
             Regional Directors
             Chief Executive Officers

Subject :    **TRAINING FOR CUSTODY AND CLINICAL STAFF REGARDING MENTAL HEALTH
             INPUT INTO THE INMATE DISCIPLINARY PROCESS**

In 1998, as a result of concerns related to the Rules Violation Report (RVR) process for inmates in the Mental Health Services Delivery System (MHSDS), the California Department of Corrections and Rehabilitation (CDCR) modified many aspects of the disciplinary process. These changes were documented in the August 14, 1998 memo titled, *"Adjudication of Rule Violation Reports Involving Mental Health Services Delivery System Inmate Program Participants/Patients"*. Additional modifications and training were mandated through five additional memoranda issued in 2003. Of specific concern were two memoranda issued on July 1, 2003, titled, *"Rules Violation Report Training as a Result of Coleman Order"*, and November 13, 2003, titled, *"Clarification of the Mental Health Input into the Disciplinary Process"*.

The July 1, 2003 memorandum states, in part, "However, <u>no exemption from the training is acceptable. All staff who either conduct the mental health assessment or conduct the RVR hearing must receive the four-hour course prior to participation in the RVR process.</u>"

Hearing Officer (HO) training is currently conducted in the Sergeant's Academy and Senior Hearing Officer (SHO) training is currently conducted in the Lieutenant's Academy, typically within one year of promotion into the higher classification. Unfortunately, critical elements of the documentation requirements for mental health input into the Inmate Disciplinary Process was excluded from the Department's SHO training. In addition, ongoing training of clinical staff involved in the mental health assessment process has not been presented regularly.

In September of 2011, the RVR training curriculum was updated to reflect the current expectations. To ensure appropriate training is provided to custody and clinical staff responsible for mental health assessments related to the RVR process, the department is mandating the following:

1) All Hearing Officers, Senior Hearing Officers, Captains, Chief Disciplinary Officers, and Appeals Coordinators shall receive four hours of training related to appropriate documentation of mental health input into the RVR process prior to serving in the capacity of hearing officer, or being assigned responsibility for final review of RVR's.

2) All clinical staff responsible for review of RVR's and preparation of the RVR Mental Health Assessment (CDCR Form 115-MH) shall receive four hours of training related to providing mental health input into the RVR process prior to being allowed to prepare 115-MH forms in the RVR process.

Associate Directors, Division of Adult Institutions
Wardens
Regional Directors
Chief Executive Officers
Page 2

The training should be conducted in a manner that allows for custody and clinical staff to be trained together, ensuring that both staff is aware of their responsibilities as well as the responsibilities of the other discipline. This is one-time training, but must be provided to each staff member responsible to perform these roles prior to their involvement in the RVR process, on an ongoing basis.

As it appears this training may not have been sustained, please ensure all current staff in these classifications have received the training, or are immediately scheduled for the training. In addition, please ensure that all new staff hired into the affected classifications is appropriately trained prior to serving in these capacities.

In an effort to ensure the four hour training provided to institutional staff is consistent among all 33 institutions, a specific "Training-for-Trainers" course has been scheduled. The scheduled training is designed to provide each participant the ability to return to their institution and train the identified staff. Each institution is required to send two custody staff, preferably the In-Service Training (IST) Manager and Assistant Manager, and two mental health clinicians to this training. It is expected that all staff attending this training have received the required "Training-for-Trainers" prior to attending this specific course.

Eight training sites have been selected to minimize staff travel time by clustering the training sites to accommodate all institutions. The locations have been selected to insure staff does not incur travel expenses. Each training session will be held between the hours of 1000 to 1400 at the designated institution's IST Classroom. These times will allow staff to travel up to two hours to and from the training, thus minimizing overtime for travel. Below is a chart outlining the dates and locations of the instructor's training.

| Institutions included: | Location of training to be held in (IST Building): | Date: | Time: |
|---|---|---|---|
| CVSP, ISP, CAL, CEN | CAL | 11/02/2011 | 1000-1400 |
| CIM, CIW, CRC, RJD | CRC | 11/03/2011 | 1000-1400 |
| PBSP | PBSP | 11/07/2011 | 1000-1400 |
| HDSP, CCC | HDSP | 11/16/2011 | 1000-1400 |
| CMF, SOL, FOL, SAC | SAC | 11/22/2011 | 1000-1400 |
| SQ, DVI, MCSP, SCC, VSPW, CCWF | MCSP | 11/29/2011 | 1000-1400 |
| CTF, SVSP, CMC, AVE, COR, SATF, PVSP | PVSP | 12/13/2011 | 1000-1400 |
| WSP, NKSP, KVSP, CCI, LAC | KVSP | 12/14/2011 | 1000-1400 |

Associate Directors, Division of Adult Institutions
Wardens
Regional Directors
Chief Executive Officers
Page 3

Institutional training of all current staff in these classifications shall be completed no later than January 30, 2012, with a proof of practice memorandum indicating compliance sent to Correctional Captain Joseph Stein, Audits and Litigation Unit, via email at Joe.Stein@cdcr.ca.gov, no later than February 3, 2012.

Please submit the names of staff members who will be attending the "Training-for-Trainers" course on behalf of your institution to Lieutenant Bryan Wilbur at Bryan.Wilbur@cdcr.ca.gov or by phone at (916) 322-1725. All names must be received by close of business, Friday, October 28, 2011. Please contact Lieutenant Wilbur with questions regarding the training.


SHARON AUNGST
Chief Deputy Secretary
Division of Correctional Health Care Services

GEORGE J. GIURBINO
Director (A)
Division of Adult Institutions

cc:  James Scaramozzino, Ph.D., Director, Mental Health Clinical Programs, DCHCS
     George J. Giurbino, Director (A), DAI
     Richard J. Subia, Deputy Director, Facility Support, DAI
     Regional Administrators, DCHCS
     Kathleen O'Meara, Chief Psychologist, Clinical Practice, DCHCS
     Associate Wardens of Health Care
     Cynthia Florez-DeLyon, Chief, Office of Policy Standardization, DAI
     Joseph Stein, Correctional Captain, Audits and Litigation Unit, DAI

OCT 26 2011

# EXHIBIT D

State of California                                    Department of Corrections and Rehabilitation

# Memorandum

Date    :    NOV 03 2011

To      :    SEE DISTRIBUTION LIST

Subject :    **REVISION TO THE MENTAL HEALTH ASSESSMENT REQUEST PROCESS FOR RULES VIOLATION REPORTS (UPDATE)**

On August 14, 1998, the California Department of Corrections and Rehabilitation (CDCR) initiated a process requiring mental health review of all Rules Violation Reports (RVR) issued to inmates in the Mental Health Services Delivery System (MHSDS). In addition, any inmate receiving an RVR, exhibiting bizarre behavior, was to be referred for mental health review. The results of these reviews were initially documented by the inmate's primary clinician on an Assessment Form.

In 2003, a modification to the RVR mental health assessment requirements was implemented. All Mental Health Crisis Bed (MHCB) and Enhanced Outpatient Program inmates still required generation and completion of a Mental Health Assessment Request (CDCR Form 115-MH). However, the requirement for inmates at the Correctional Clinical Case Management System (CCCMS) level of care and inmates not in the MHSDS was limited to those demonstrating bizarre, unusual, or uncharacteristic behavior. Additional training was provided to custody and clinical staff involved in the RVR process throughout 2003 to effect this change.

During recent meetings with the *Coleman v. Brown* Special Master, plaintiff's attorneys, and departmental staff, the monitors and plaintiffs expressed concerns that the number of RVRs issued to inmates at the CCCMS level of care that are referred for mental health assessment are insufficient.

As a result, on May 10, 2011, a memorandum was distributed statewide providing direction to ensure all CCCMS inmates receiving a Division A, B, or C RVR shall be referred for a mental health assessment via CDCR Form 115-MH. CCCMS inmates receiving Division D, E, or F RVRs shall be referred based upon existing guidelines for determining referrals for mental health assessment.

Subsequently, on September 21, 2011, an agreement was made between the *Coleman v. Brown* Special Master, plaintiff's attorneys, and departmental staff to expand the May 10, 2011 memorandum to include any CCCMS inmates receiving a Division A, B, or C RVR, *and for any rules violation that may result in being assessed a Security Housing Unit term as identified in the California Code of Regulations (CCR) Title 15, Section 3341.5,* shall be referred for a mental health assessment via CDCR Form 115-MH. The clinical assessment must be considered during the Institutional Classification Committee to ensure the inmate's mental health is considered prior to any committee action. The clinical input must be documented on the CDCR Form 128-G, Classification Chrono.

SEE DISTRIBUTION LIST
Page 2

All custody and clinical staff involved in the inmate disciplinary process shall receive on-the-job training regarding the RVR assessment requirements listed no later than December 30, 2011.

Proof of practice documenting completion of the training for these staff, in the form of a memorandum, shall be submitted to your Associate Director (custody) and your Regional Mental Health Director (clinical) no later than January 2, 2012.

Revised training regarding the *Inmate Disciplinary Process: Mental Health Assessment* requirements will be provided to your In-Service Training Department for ongoing use in training custody and clinical staff involved in the inmate disciplinary process.

For custody questions regarding this change, please contact Joseph Stein, Correctional Captain, Audits and Litigation Unit, Division of Adult Institutions, at (916) 323-2863.    For clinical questions regarding this change, please contact Kathleen O'Meara, Chief Psychologist, Clinical Programs, DCHCS, at (916) 323-1163.


GEORGE J. GIURBINO
Director (A)
Division of Adult Institutions

JAMES SCARAMOZZINO, Ph. D.
Director (A), Statewide Mental Health Program
Division of Correctional Health Care Services

DISTRIBUTION LIST:
Associate Directors-Division of Adult Institutions
Wardens
Regional Mental Health Directors-Division of Correctional Health Care Services
Chief Executive Officers
Health Care Managers
Chiefs of Mental Health
Chief Psychiatrists
Chief Psychologists

cc: Sharon Aungst, Chief Deputy Secretary, Division of Correctional
    Health Care Services
    R. J. Subia, Deputy Director, Facility Support, DAI
    Kathleen O'Meara, Chief Psychologist, Clinical Programs, DCHCS
    Cynthia Florez-DeLyon, Chief, Office of Policy Standardization, DAI
    Joseph Stein, Correctional Captain, Audits and Litigation Unit, DAI

# EXHIBIT E

**52080.3        Disciplinary Methods**

Inmate discipline shall be dispensed by one or more of the following methods in institutions and community based correctional facilities:

- Verbal counseling.  Misbehavior of a minor nature may be handled through verbal counseling and instruction.  When, in the opinion of the staff member conducting the counseling/instruction, the problem has been corrected, a written report of the matter need not be submitted.
- CDC Form 128-A, Custodial Counseling Chrono.  When counseling/instructions as described above are deemed unsuccessful in correcting the problem, a CDC Form 128-A shall be prepared.  The CDC Form 128-A shall include complete circumstances regarding the misbehavior and a statement that repetition of the behavior may result in more serious disciplinary action.  When minor contraband is involved, the CDC Form 128-A shall include disposition of the confiscated contraband.  If a CDC Form 128-A is completed, one copy is given to the inmate and the original is placed in the inmate C-File.  At this point, the disciplinary process ends.
- CDC Form 115, Rules Violation Report.  Inmate behavior which is a violation of law, CCR (15), and/or approved procedure and not of a minor nature, shall be reported on a CDC Form 115.

**52080.3.1        Supervisory Review**

Disciplinary reports (CDC Form 115 and CDC Form 128-A) shall be submitted by the reporting employee to their immediate supervisor for review and approval.  Supervisory review shall not delay prescribed time limits for subsequent action in the disciplinary process.

**52080.3.2        Classification of CDC Form 115**

A CDC Form 115 shall be submitted to designated staff at a job classification not less than the level required to conduct disciplinary hearings for classification of the violation report.  CDC Form 115s shall be classified as either administrative or serious.

- Administrative.  Criteria has been established in CCR 3314.
- Serious.  Criteria has been established in CCR 3315.

The classification of a rule violation report determines the procedure to be followed in preparing for and in conducting a disciplinary hearing and the action that may be taken if the inmate is found guilty of the violation.

After proper classification of a CDC Form 115, the offender receives a copy of the typed CDC Form 115.  CDC Form 804, Notice of a Pending CDC-115 is placed in the inmate C-File.  The CDC Form 804 is used to ensure that the inmate is not approved for release or transfer to another facility while there is a pending CDC Form 115.

**52080.3.3        Audit of Disciplinary Rule Violation Report**

Upon completion of the hearing portion of the violation charges, an audit of the violation report shall be completed by the chief disciplinary officer (CDO).

The audit shall ensure:

- The CDC Form 115 and 115-A are complete.
- The serious/administrative classification is correct.
- Due process and time constraints were met.
- Charges and circumstances of offense coincide.
- Assessed credit forfeiture conforms to division of offense and credit loss schedules (CCR 3323).
- Findings and disposition were justified by documentation.
- Investigative employee's/staff assistant's determination is appropriate.
- Ensures a copy of the completed CDC Form 115 and 115-A is delivered to the inmate within five working days of audit by CDO.

**52080.3.3.1        CDO Actions**

The CDO, following the audit shall, perform one of the following:

- Approve the CDC Form 115 as submitted.
- Order in writing with a copy to the inmate the CDC Form 115 reissued and reheard if:
  - CDC Form 115 is incomplete.
  - Due process rights were not afforded.
- Amend the CDC Form 115 classification and disposition to a lesser, but included charge.

**52080.3.4        Approval of Disciplinary Methods/Actions**

All disciplinary methods/actions are subject to the approval of the Warden or RPA.  The Warden or RPA may set aside, dismiss, order a different action, or order a rehearing of the rules violation upon:

- Their own motion.
- Recommendation of staff.
- Inmate's request or appeal.

An order for a different method of discipline or hearing of disciplinary charges shall not result in any greater penalty or more severe action than originally taken.

*EXCEPTION*:  Upon discovery of new information or evidence which was not available or reasonably discoverable at the time of the disciplinary action, the CDC Form 115 may be reissued and reheard by a different hearing officer.  Findings and penalty assessed may occur without regard to the previous hearing.

**52080.3.5        Chief Disciplinary Officer (CDO)**

The CDO duties shall not be designated below the level of Associate Warden or PA.  The CDO shall:

- Audit CDC Form 115 per the DOM 52080.3.3.
- Review the disciplinary process for problem areas and take corrective action as necessary.
- Review the treatment of inmates confined in DD and consider a modification of sentence when evidence indicates that the inmate is ready to conform to the rules.
- Refer all felonies occurring on institution property, including felony inmate conduct, to the institution's investigations unit for possible investigation and referral for criminal prosecution.
- Initiate disciplinary proceedings for cases referred for prosecution when an inmate revokes, in writing, a previous request for postponement of the disciplinary hearing; the DA declines prosecution; or court proceedings have concluded.
- Determine the proper senior hearing officer or committee level for Divisions A-1, A-2, and B serious CDC Form 115.  This determination may be delegated to a captain, CC-III, or PA-III.
- Provide training in the disciplinary process.

*Note*:  Conservation camps shall not forward serious CDC Form 115s to the CDO for examination due to the affect of geographic distances upon established time limits; however, telephonic discussion of the more serious violations is encouraged.

**52080.3.6        Senior Hearing Officer (SHO)**

SHOs shall not be designated below the level of captain; CC-III; PA-III; or an experienced lieutenant, CC-II and PA-II.  Experienced means:

- An employee who is permanent at the designated staff level and who has received IST and/or OJT covering the responsibilities of an SHO, including observation of a minimum of five actual disciplinary hearings.
- The employee has been certified by the CDO or his/her designee, in writing, as competent to conduct hearings.

*Note*:  A probationary, limited term, or training and development employee meeting the stated criteria and designated staff level may be used.  Acting staff whose permanent position is at a lower level than that designated shall not be assigned.

**52080.3.7        Hearing Officer (HO)**

HO duties shall not be designated below the level of lieutenant or an experienced sergeant, CC-I, or PA-I.  Experienced is defined in DOM 52080.3.6.

**52080.3.8        Changing Rule Violation Classification**

*Revised April 29, 1991*

Classification of rule violations may be changed as follows:

- The staff member who initially classified a CDC Form 115 according to the seriousness of the charges, or a staff member at a higher level, may change the classification of the report before the hearing is held.
  - If classification of the CDC Form 115 is changed, the inmate shall be issued a copy of the modified CDC Form 115 at least 24 hours prior to the hearing, unless the inmate, in writing, waives the 24 hour time period.
- The official conducting the disciplinary hearing may change a serious classification to an administrative classification as a finding of the hearing.
- The Warden or RPA may change a serious classification to an administrative classification before or after a hearing is held.

An administrative classification may not be changed to a serious classification after an administrative violation hearing except upon the order