# EXHIBIT 3

American Psychiatric Association

# Psychiatric Services in Jails and Prisons

**Second Edition**

# Psychiatric Services in Jails and Prisons

*A Task Force Report of the American Psychiatric Association*

Second Edition

**The American Psychiatric Association Task Force to Revise the APA Guidelines on Psychiatric Services in Jails and Prisons**

Henry C. Weinstein, M.D., *Chair*

Kathryn A. Burns, M.D., M.P.H.

Cassandra F. Newkirk, M.D.

John S. Zil, M.D., M.P.H., J.D.

Joel A. Dvoskin, Ph.D., *Consultant*

Henry J. Steadman, Ph.D., *Consultant*

# Psychiatric Services in Jails and Prisons

*A Task Force Report of the American Psychiatric Association*

Second Edition



Published by the American Psychiatric Association
Washington, D.C.

Note: The authors have worked to ensure that all information in this book concerning drug dosages, schedules, and routes of administration is accurate as of the time of publication and consistent with standards set by the U.S. Food and Drug Administration and the general medical community. As medical research and practice advance, however, therapeutic standards may change. For this reason and because human and mechanical errors sometimes occur, we recommend that readers follow the advice of a physician who is directly involved in their care or the care of a member of their family.

The findings, opinions, and conclusions of this report do not necessarily represent the views of the officers, trustees, all members of the task force, or all members of the American Psychiatric Association. Task force reports are considered a substantive contribution of the ongoing analysis and evaluation of problems, programs, issues, and practices in a given area of concern.

Copyright © 2000 American Psychiatric Association
ALL RIGHTS RESERVED
Manufactured in the United States of America on acid-free paper
03 02 01 00   4 3 2 1
First Edition

American Psychiatric Association
1400 K Street, N.W., Washington, DC 20005
www.psych.org

Library of Congress Cataloging-in-Publication Data
American Psychiatric Association. Task Force to Revise the APA Guidelines on Psychiatric Services in Jails and Prisons.
    Psychiatric services in jails and prisons: a task force report of the American Psychiatric Association  /   American Psychiatric Association, Task Force to Revise the APA Guidelines on Psychiatric Services in Jails and Prisons ; Henry C. Weinstein, chair . . . [et al.].—2nd ed.
    p.   ; cm.
    Earlier edition prepared by American Psychiatric Association. Task Force on Psychiatric Services in Jails and Prisons.
    Includes bibliographical references and index.
    ISBN 0-89042-287-7 (alk. paper)
    1. Prisoners—Mental health services—Standards. I. Weinstein, Henry C. II. Title.
    [DNLM: 1. Mental Health Services—organization & administration— United States. 2. Delivery of Health Care—organization & administration— United States. Prisons—United States. 4. Psychotherapy—organization & administration—United States. WM 30 A52285p 2000]
RC451.4.P68 A44 2000
365'.66—dc21
                                                99-050098

British Library Cataloguing in Publication Data
A CIP record is available from the British Library.

## II. Access to Mental Health Care and Treatment

### A. Adequate and Appropriate Access to Care

"Timely and effective access to mental health treatment is the hallmark of adequate mental health care." This was the fundamental principle of adequate mental health care in jails and prisons set out in the first edition of these guidelines.

To determine whether there is adequate and appropriate access to mental health treatment, the mental health service delivery system must be analyzed to ensure that there are no unreasonable barriers to patients' receiving mental health services. Some examples of unreasonable barriers include instituting or allowing disincentives that would deter a patient from seeking care for his or her legitimate mental health needs; interfering with the prompt transmittal of a patient's oral or written request for care; permitting unreasonable delays before patients are seen by mental health staff or outside consultants; charging fees or imposing costs that prevent or deter patients from seeking care; and, obviously, punishing an inmate for seeking or refusing care.

### B. Access to Care in Segregation Units

The difficulties of providing appropriate and adequate access to mental health care and treatment are especially acute in any segregation environment. For the purposes of this document, *segregation* is defined as any unit that confines inmates to their cells 23 or more hours per day. The reasons for such confinement include disciplinary placement and isolation from other inmates for administrative or protective reasons, among others.

In jails and prisons without adequate mental health services, inmates with mental illness often find their way into segregation housing quite unnecessarily, when their mental illness prevents them from understanding or adhering to correctional rules. The recent development of so-called super-max facilities, where inmates may spend years in segregation, thus raises ominous clinical and fairness issues for persons with mental illness.

Thus, one critical barrier to access to mental health care and treatment may occur when an inmate is housed in a segregation environment.

*Principles Governing Psychiatric Services in Jails and Prisons*     5

When an inmate is segregated—for any reason—from the general population, the responsibility to address serious mental health needs remains in effect. Indeed, because of the stressful nature of segregation housing, facilities should make special efforts to assess and address mental health treating needs in these settings.

In providing essential mental health service in segregation housing, the following principles should be observed:

- No inmate should be placed in segregation housing solely because he or she exhibits the symptoms of mental illness, unless there is an immediate and serious danger for which there is no other reasonable alternative. (This principle does not refer to medical or psychiatric seclusion, which should follow state mental health law and professional practice.)
- When an inmate is placed in segregated housing for appropriate correctional reasons, the facility remains responsible for meeting all of the serious medical and psychiatric needs of that inmate. Thus, such inmates must receive any mental health services that are deemed essential, their segregation status notwithstanding.
- Inmates who are in current, severe psychiatric crisis, including but not limited to acute psychosis and suicidal depression, should be removed from segregation until such time as they are psychologically able to tolerate that setting.
- Inmates who are known to have serious mental health needs, especially those with a known history of serious and persistent mental illness, when housed in segregation, must be assessed on a regular basis by qualified mental health practitioners, to identify and respond to emerging crises at the earliest possible moment.

Institutions should provide for regular rounds by a qualified mental health clinician in all segregation housing areas. During these rounds, each inmate should be visited briefly so that any emerging problem can be assessed. The clinician should also communicate with segregation security staff in order to identify any inmate who appears to be showing signs of mental deterioration or psychological problems.

The challenge of providing adequate mental health services to inmates in segregation housing is a critical reflection of and a crucial component of a facility's quality of care.