**EXHIBIT 8**

Pablo Stewart, M.D.                                          March 19, 2013

UNITED STATES DISTRICT COURTS

EASTERN DISTRICT OF CALIFORNIA

AND NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

RALPH COLEMAN, et al.,         )
                               )
        Plaintiffs,            )
vs.                            )   No. Civ S 90-0520 LKK-JFM P
                               )
EDMUND G. BROWN, JR.,          )
et al.,                        )
                               )
        Defendants.            )
                               )
MARCIANO PLATA, et al.,        )
                               )
        Plaintiffs,            )
                               )
vs.                            )   No. C01-1351 THE
                               )
EDMUND G. BROWN, JR.,          )
et al.,                        )
                               )
        Defendants.            )
                               )

DEPOSITION OF

PABLO STEWART, M.D.

TUESDAY, MARCH 19, 2013, 9:00 A.M.

SAN FRANCISCO, CALIFORNIA

REPORTED BY:  BRENDA L. MARSHALL, RPR, CSR NO. 6939

THORSNES LITIGATION SERVICES, LLC

Pablo Stewart, M.D.                                                                 March 19, 2013

```
 1                  UNITED STATES DISTRICT COURTS
 2                  EASTERN DISTRICT OF CALIFORNIA
 3              AND NORTHERN DISTRICT OF CALIFORNIA
 4      UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES
 5       PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE
 6

 7   RALPH COLEMAN, et al.,        )
                                   )
 8              Plaintiffs,        )
     vs.                           )    No. Civ S 90-0520 LKK-JFM P
 9                                 )
     EDMUND G. BROWN, JR.,         )
10   et al.,                       )
                                   )
11              Defendants.        )
                                   )
12   MARCIANO PLATA, et al.,       )
                                   )
13              Plaintiffs,        )
                                   )
14   vs.                           )    No. C01-1351 THE
                                   )
15   EDMUND G. BROWN, JR.,         )
     et al.,                       )
16                                 )
                Defendants.        )
17   _____)
18
19              The Deposition of PABLO STEWART, M.D., taken
20   on behalf of the Defendants, before Brenda L. Marshall,
21   Certified Shorthand Reporter No. 6939, Registered
22   Professional Reporter, for the State of California,
23   commencing at 9:00 a.m., at the U.S. Department of
24   Justice, Office of the Attorney General, 455 Golden Gate
25   Avenue, San Francisco, California.
```

Pablo Stewart, M.D.                                    March 19, 2013

```
 1   GP?  Did you go to any general population yards and talk
 2   to CCCMS inmates?
 3       A.   I don't believe I did.  I know I spoke with
 4   CCCMS in the ad seg unit.
 5       Q.   Okay.  Counsel just raised a good point.  You
 6   didn't provide any notes with your report --
 7       A.   Correct.
 8       Q.   -- right?
 9            Did you take any notes during the visit?
10       A.   I did not.
11       Q.   Okay.  Do you have a photographic memory?
12       A.   Even though it may not seem that way today, I
13   have a pretty good memory in the -- in the -- in sort of
14   the short and intermediate term.  So -- so, yes, to answer
15   your question.
16       Q.   Okay.  You have -- you didn't take any notes,
17   but then you were able to generate a 167-page declaration
18   based on specific information regarding the visits --
19       A.   Correct.
20       Q.   -- correct?
21            So you didn't write anything down?
22       A.   I did not.
23       Q.   And how is it that you recall all the specific
24   details to prepare the declaration without taking any
25   notes?
```

Pablo Stewart, M.D.                                            March 19, 2013

1    A.   Well, my way of working, and I've worked with
2　Mr. Nolan in the past, so we have a -- our sort of style
3　that has worked, to be able to produce a document like
4　this is that immediately after the visit, we would review
5　exactly what we did and go -- and review, like, okay, what
6　did we do at the EOP ad seg, for example, what did we do
7　at the EOP GP unit, and who did we see there, and let's
8　review what the findings were, what my opinions were at
9　that time, and he would then start -- I dictated to him
10　the beginnings of the report.
11　　Q.   Okay.  So did you do that in the car, or were
12　you in another office, or where did you do that?
13　　A.   Well, because of the fact that, you know, the
14　Salinas Valley visit was on a Monday, and then we were at
15　CSP SAC on Tuesday so we did that in the car, immediately
16　afterwards.
17　　Q.   Okay.  And did he write down what you were
18　telling him?
19　　A.   Yes.
20　　Q.   Okay.  So that happened at Salinas Valley;
21　right?
22　　A.   Yes.
23　　Q.   Okay.  And so, then, after -- did that happen at
24　every institution that you visited?
25　　A.   That was how we worked.  Yes.

Pablo Stewart, M.D.                                    March 19, 2013

1    Q.  So for five hours, you were dictating to
2  Mr. Nolan what to put in the report?
3    A.  Yes.
4    Q.  Okay.  So just so I'm clear about the process,
5  so you went to the prison, you dictated to him all your
6  findings and the specifics about each inmate that you had
7  met with, and then he typed that into the report?
8    A.  Yes.
9    Q.  Okay.  And what about information that's in the
10 report you reviewed after the fact?  Because there's
11 information regarding inmates that you reviewed later;
12 right?
13   A.  Yes.
14   Q.  So how did you deal with that?  Did you take any
15 notes about that?
16   A.  No.  I did not take any notes.  Are you
17 referring to reviewing medical records?
18   Q.  Yes.  And other things.  I mean, in your
19 declaration, you reference medical records and other --
20 other documents that influenced your decision.  So what
21 did -- how did you deal with those?  How did you insert
22 that information into the report?
23   A.  Well, when I reviewed it, you know -- again,
24 Mr. Nolan and I worked on this together, and so he had
25 gone to San Quentin, I believe, where they had the setup

Pablo Stewart, M.D.                                                    March 19, 2013

```
 1   constitutional problem.
 2        Q.   Are -- are there any other jurisdictions that
 3   require 10 hours of treatment for inmates that, while they
 4   might not be called EOP, but that level of care?
 5        A.   I'm aware of another system that I consulted
 6   with, it was in New Mexico Department of Corrections, and
 7   when I worked with them -- it's been a number of years --
 8   that they had a similar issue with -- I think they call
 9   something differently, but it was basically a security
10   housing unit for psychiatric patients.  So psychiatric
11   inmates who needed the highest level of security.
12        Q.   Would that be similar to CDCR's psychiatric
13   services unit?
14        A.   And it was -- yes.
15        Q.   Okay.
16        A.   But New Mexico didn't call it that.
17        Q.   Okay.
18        A.   That they felt that the 10 hours was appropriate
19   for those -- those inmates.
20        Q.   All right.  Do you -- so New Mexico, in their
21   issue for mentally ill, they were giving the 10 hours of
22   care.  Are there any other jurisdictions of care that
23   you're aware of that require a minimum of 10 hours for
24   that level of --
25        A.   Again, I don't know if New Mexico is actually
```

Page 62

1  doing it, but I remember that's what the agreement was
2  back then.  They were going to attempt to do that.  I'm
3  not aware of any other jurisdictions.
4       Q.  Okay.  So you said that you were a consultant
5  for the New Mexico Department of Corrections, or in a case
6  involving them; right?
7       A.  Correct.
8       Q.  So have you yourself ever ran a program in a
9  correctional facility?
10      A.  Yes.
11      Q.  And is that the 12-bed unit that you refer to in
12 your report?
13      A.  Well, that was the hospital unit, but, also, for
14 a period of time during the time, I was responsible for
15 the hospital unit.  I was also responsible for the jail
16 psychiatric service for all the jails.
17      Q.  And that was in 1988 and 1989?
18      A.  Yes.
19      Q.  And that was in San Francisco County?
20      A.  Correct.
21      Q.  So you oversaw the operation of mental health
22 care for the jails in Sacramento -- San Francisco County,
23 as well as you were responsible for the 12-bed, locked,
24 inpatient unit?
25      A.  Yes.

```
 1        A.    Not in here.
 2        Q.    No.  But do you -- is -- are the names of those
 3   between three and five inmates -- I don't want to
 4   overstate it -- but are the names of those inmates
 5   documented anywhere?
 6        MR. NOLAN:  The name --
 7        THE WITNESS:  I did not document them.  So I
 8   don't have a list of those people because I didn't take
 9   any notes during the course of my --
10   BY MS. ANDERSON:
11        Q.    Did you report it to counsel after your -- when
12   you were in the car, or something, when you talked about
13   the contents of your report?
14        A.    See, I -- what I remember talking about with
15   those particular people that didn't make the cut, if you
16   will, is that I said, oh, this person was this, he was
17   diagnosed with this, getting these meds, and there was
18   nothing -- their case didn't go into any of the other
19   areas that I was finding.
20        Q.    So who decided they weren't going to go into the
21   report?
22        A.    It was me.
23        Q.    Okay.  And what did you base that on?  Because
24   they didn't have any --
25        MR. NOLAN:  Objection.  Asked and answered.
```

Pablo Stewart, M.D.                                     March 19, 2013

1   San Francisco is a pretty small town, so there are times
2   where we go to social events that are -- we run into each
3   other, and he -- he alerted me that there may be a need
4   for me to make myself available in the new year, meaning
5   2013, for possible prison tours around the Coleman matter.
6           And so that probably was in the fall, maybe late
7   fall.  Close to holidays.
8       Q.   Okay.  And when did you first have a formal
9   meeting with anybody about your work for this particular
10  issue, the termination proceedings?
11      A.   It was -- I know it was during the football
12  playoffs.  So it was in January.  January 2013.
13      Q.   Okay.  And who contacted you?
14      A.   Mr. Bien.
15      Q.   All right.  And did you have a meeting with
16  Mr. Bien to discuss your tasks or your assignments?
17      A.   We had several telephone calls.
18      Q.   Okay.  Did you take any notes?
19      A.   No.
20      Q.   Okay.  What did you discuss during those
21  telephone calls?
22      A.   Well, that -- the call came after the governor's
23  announcement, and I don't remember what day that was, but
24  when he got on TV and, you know, we all saw it, where he
25  said the system was perfect, we should get the lawyers out

CERTIFICATION OF DEPOSITION OFFICER

I, BRENDA L. MARSHALL, CSR, duly authorized to administer oaths pursuant to Section 2093(b) of the California Code of Civil Procedure, hereby certify that the witness in the foregoing deposition was by me sworn to testify to the truth, the whole truth and nothing but the truth in the within-entitled cause; that said deposition was taken at the time and place therein stated; that the testimony of said witness was thereafter transcribed by means of computer-aided transcription; that the foregoing is a full, complete and true record of said testimony; and that the witness was given an opportunity to read and correct said deposition and to subscribe the same.

I further certify that I am not of counsel or attorney for either or any of the parties in the foregoing deposition and caption named, or in any way interested in the outcome of this cause named in said caption.

*Brenda L. Marshall*

BRENDA L. MARSHALL
CSR No. 6939