KAMALA D. HARRIS
Attorney General of California
JONATHAN L. WOLFF
Senior Assistant Attorney General
JAY C. RUSSELL
Supervising Deputy Attorney General
DEBBIE VOROUS, State Bar No. 166884
PATRICK R. MCKINNEY, State Bar No. 215228
JESSICA KIM, State Bar No. 257766
MANEESH SHARMA, State Bar No. 280084
Deputy Attorneys General
    1300 I Street
    P.O. Box 944255
    Sacramento, CA 94244-2550
    Telephone: (916) 324-5345
    Fax: (916) 324-5205
    E-mail: Debbie.Vorous@doj.ca.gov

*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

|  |  |
|---|---|
| **RALPH COLEMAN, et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**EDMUND G. BROWN JR., et al.,**<br><br>Defendants. | 2:90-cv-00520 LKK JFM PC<br><br>**DECLARATION OF JOHN R. DAY IN SUPPORT OF DEFENDANTS' OPPOSITION TO MOTION RE: USE OF FORCE AND DISCIPLINARY MEASURES [CORRECTED]** |

I, John R. Day, declare as follows:

1.  I am the Chief of Headquarters Operations of the California Department of Corrections and Rehabilitation's Office of Internal Affairs. I have worked for the California Department of Corrections and Rehabilitations (CDCR) since January 2, 1987, and I have worked in the Office of Internal Affairs since September 12, 2007. The Office of Internal Affairs is the entity with authority to investigate allegations of employee misconduct within CDCR. Prior to my current assignment I worked as an Officer, Sergeant, Lieutenant, Captain, Associate Warden

1

1   (A), Senior Special Agent, and a Special Agent in Charge (A). During my career, I have been

2   involved in use of force incidents within CDCR facilities, and have reviewed use of force

3   incidents as a supervisor and manager. In my current assignment with the Office of Internal

4   Affairs, I oversee the review and investigation of allegations of unreasonable use of force by

5   CDCR staff.

6           2.      CDCR's Office of Internal Affairs conducts administrative and criminal

7   investigations into allegations of misconduct by CDCR employees. These investigations include

8   allegations of unreasonable or unnecessary force against inmates and the use of deadly force by

9   employees. During 2012, hiring authorities, such as Wardens, referred 107 cases to the Office of

10  Internal Affairs alleging employee misconduct related to use of force incidents. Twenty-nine of

11  those cases were "direct action" cases. A "direct action" case requires no further investigation

12  because the evidence collected at the institutional level clearly indicates that there is a

13  preponderance of evidence that the misconduct occurred. Direct action cases are referred back to

14  the hiring authority for discipline. Fifty-seven of the referred cases required further investigation.

15  Although some of these investigations have not yet been completed, 31 cases had at least one

16  allegation of misconduct sustained against an employee. In 9 of these cases, the misconduct

17  resulted in termination. Twenty-one cases referred in 2012 were rejected as they identified no

18  misconduct.

19          3.      These 107 cases do not include instances where corrective action, training, or policy

20  concerns were addressed at the local level within the authority of the Warden, or other hiring

21  authority. The resolution of the *Madrid v. Gomez* class action required CDCR to resolve as many

22  training and corrective action issues at the institution level as appropriate. Thus, hundreds of

23  corrective actions occur concerning use of force incidents that do not involve the Office of

24  Internal Affairs. Corrective action at the local level can include remedial training or a letter of

25  instruction.

26          4.      Prior to referral to the Office of Internal Affairs, the hiring authority is required to

27  review each use of force incident, and make a determination whether the actions by staff were

28  within policy and training. This extensive review process was established as a result of the

2

1   *Madrid* case which required changes to the Use of Force review process, as well as the employee

2   discipline process.  The CDCR use of force policies in the California Code of Regulations Title

3   15, 3268 and the Department Operations Manual, Chapter 3, Article 14 identify this process.  I

4   participated in the most recent revision and implementation of section 3268 of Title 15 and

5   oversee the process of reviewing all cases referred to the Office of Internal Affairs.  These

6   revisions were made in August of 2010 and approved by the *Madrid* court shortly thereafter.

7   After successfully adopting and implementing the new Use of Force policy, the *Madrid* class

8   action ended in March of 2011.

9   The Use of Force Review Process

10       5.   When a mechanical, chemical, or physical use of force event occurs, is discovered, or

11   is reported, all staff involved in the incident must write a report by the end of their shift.  The

12   supervisor, usually the Sergeant, collects the reports, reviews them, and submits them to the

13   Incident Commander.  The Incident Commander then creates a CDCR Form 837 package and

14   completes a review, ensuring all notifications were made.  The Incident Commander makes a

15   determination of whether the use of force appears justified by law, policy, and procedure.

16       6.   After the review the package goes to the Manager's Review-First Level, typically

17   conducted by a Captain or higher ranking individual.  Again, this review is to determine whether

18   the actions by staff were within policy.  This is done with a specific focus on events which

19   happened before, during, and after the actual use of force event.  This would include

20   consideration of issues which necessitated staff use of force.

21       7.   The next level of review is the Manager's Review-Second Level.  This is typically

22   conducted by an Associate Warden (Correctional Administrator) or higher.  The reviewer is in a

23   position several levels removed from the incident, with additional experience who can provide

24   further critique of the incident.

25       8.   At any of these three levels of review, the reviewer can seek clarification from those

26   involved, or request additional information, such as medical reports.

27       9.   Each institution has a Use of Force Coordinator, the analyst who tracks each of the

28   incidents.  The coordinator submits the use of force incident package to the Institutional

3

1    Executive Review Committee. This committee is comprised of the Warden or Chief Deputy

2    Warden, the Use of Force Coordinator, a health care staff representative, and a training manager.

3    The latter may become involved if institutional policies or training is modified as a result of the

4    findings. A member of the Office of the Inspector General may optionally be present. The Office

5    of the Inspector General is an independent agency charged with monitoring CDCR. Use of force

6    cases monitored by the Office of the Inspector General may be reported to the Legislature and

7    published in public reports.

8        10. After all materials and videos related to each incident are reviewed, the Institutional

9    Executive Review Committee determines if the Use of Force was reasonable and complied with

10   policy. Any employee suspected of misconduct or other serious policy violation may be referred

11   to the Office of Internal Affairs by the Warden for approval of adverse action or investigation.

12       11. The Office of Internal Affairs is an independent division of CDCR. Our office

13   reviews every reported allegation of employee misconduct. Each case is analyzed and presented

14   to the central intake panel comprised of Office of Internal Affairs staff, attorneys from CDCR,

15   and attorneys from the Office of the Inspector General. These stakeholders provide input and

16   transparency in the review of all cases submitted for investigation or approval for "direct action."

17   A "direct action" case requires no further investigation by our office because the evidence

18   collected at the institutional level clearly indicates that there is a preponderance of evidence that

19   the misconduct occurred. Such a case is referred back to the hiring authority for discipline.

20       12. Where the case is not a "direct action," the Office of Internal Affairs undertakes a

21   rigorous investigation of the use of force incident and allegations of misconduct. Our office

22   refers the results of its investigations to the hiring authority. The hiring authority is then

23   authorized to take corrective or punitive action against the employee accused of misconduct if the

24   investigation indicates to the hiring authority that the alleged misconduct occurred. Attorneys

25   from CDCR and the Office of the Inspector General are available to assist in those

26   determinations, and in some cases are required to participate.

27

28

CDCR Has a Tracking and Quality Assurance Process

13. All use of force incidents are tracked by CDCR. A package is created which consists of all reports and interviews by individuals involved in the incident. The package is tracked at each institution by the Use of Force Coordinator and entered into a central computer system that is tracked by the Division of Adult Institutions. Whenever an incident requires investigation into misconduct, that request is forwarded to the Office of Internal Affairs. Each case of employee misconduct is tracked by our office from the time an investigation is requested until case closure. For cases involving criminal acts, the investigation may be referred to the District Attorney.

14. Plaintiffs assert that CDCR's review and investigatory process is ineffective and inconsistent. CDCR's review process, as described above, involves several levels of review starting at a local level where staff is in the best position to gather information about an incident. After the local level review, each additional review is conducted by more senior officers who are detached from the initial incident. This review process is standardized across all institutions. All cases are documented and tracked, and are subject to independent oversight and scrutiny by the Office of the Inspector General.

15. Plaintiffs and their expert, Mr. Vail, also allege that use of force investigators lack investigative skill. CDCR employs and trains skilled investigators, and disagrees with Mr. Vail's statement, which was based on a tiny sample of interviews at just two institutions. In CDCR's multi-tiered review and investigation process, if the Incident Commander or the first or second managerial review determines the need for further inquiry or additional interviews, those individuals are authorized to engage in additional investigation. In my previous experience as a captain at the Manager's Review First Level, clarifications are requested frequently to ensure clarity and thoroughness. Higher level reviewers are not forced to rely solely on the review by lower level reviewers. Thus, if an interview is found to be inadequate or inconsistent, additional interviews can be, and are, conducted.

16. Plaintiffs also demand that CDCR expand the mandatory investigation criteria to include unexplained injuries, impact strikes to lethal target areas, conflicting or incomplete reports, and the application of nonlethal weaponry that exceeds what would normally be expected

5

1  for the type of force reported.  CDCR already includes these categories in its reviews and

2  investigations of use-of-force incidents, including incidents involving misconduct by employees.

3  Moreover, the Institutional Executive Review Committee at each institution reviews all incidents

4  involving deadly force, serious injury, great bodily injury, or death.  The Office of Internal

5  Affairs' Deadly Force Investigation Teams also conduct criminal and administrative

6  investigations into every death or great bodily injury that could have been caused by a staff use of

7  force.  Thus, CDCR already investigates many of the categories identified by Plaintiffs.

8      I declare under penalty of perjury under the laws of the State of California and the United

9  States of America that the foregoing is true and correct.  Executed in Sacramento, California on

10  July 31, 2013.

11

12

John R. Day
Chief, Headquarters Operations,
Office of Internal Affairs,
CDCR

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

6