KAMALA D. HARRIS, State Bar No. 146672
Attorney General of California
JAY C. RUSSELL, State Bar No. 122626
Supervising Deputy Attorney General
THOMAS S. PATTERSON, State Bar No. 202890
Supervising Deputy Attorney General
PATRICK MCKINNEY, State Bar No. 215228
Deputy Attorney General
DEBBIE VOROUS, State Bar No. 166884
Deputy Attorney General
KEVIN A. VOTH, State Bar No. 257227
Deputy Attorney General
  455 Golden Gate Avenue, Suite 11000
  San Francisco, CA  94102-7004
  Telephone:  (415) 703-1624
  Fax:  (415) 703-5843
  E-mail:  Kevin.Voth@doj.ca.gov
*Attorneys for Defendants*
*Edmund G. Brown Jr., Dr. Jeffrey Beard, Ana J. Matosantos, and Cliff Allenby*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **RALPH COLEMAN, et al.,**<br><br>                      Plaintiffs,<br><br>v.<br><br>**EDMUND G. BROWN, JR., et al.,**<br><br>                      Defendants. | 2:90-cv-00520 LKK JFM PC<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO STAY JULY 11, 2013 ORDER (ECF No. 4688) PENDING APPEAL**<br><br>Date: Aug. 19, 2013<br>Time: 10:00 a.m.<br>Courtroom: 4<br>Judge: The Honorable Lawrence K. Karlton<br>Action Filed: Aug. 23, 1990 |

TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on August 19, 2013, at 10:00 a.m. in Courtroom 4 of the United States Courthouse in Sacramento, California, or at whatever other time and place the Court directs, Defendants will and hereby do move to stay this Court's July 11, 2013 Order (ECF No. 4688) directing the Special Master to commence supervision of all Department of State Hospitals programs providing inpatient mental-health care to the plaintiff class, pending appeal to the United States Court of Appeals for the Ninth Circuit.

This motion is based on this notice of motion and motion, the supporting declaration of George Maynard, this Court's file, and any other matters properly before this Court.

## INTRODUCTION

Defendants respectfully request a stay of this Court's July 11, 2013 Order placing Department of State Hospitals (DSH) programs under the authority and supervision of the Special Master, pending appeal in the United States Court of Appeals for the Ninth Circuit. (Order, July 11, 2013 (July 11, 2013 Order or Order), ECF No. 4688.) Despite the absence of any determination that DSH is providing unconstitutional care, the Court's Order burdens DSH with prospective obligations in violation of the Prison Litigation Reform Act (PLRA). *See* 18 U.S.C. § 3626(a)(1)(A).

The July 11, 2013 Order should be stayed pending appeal because Defendants will be irreparably harmed absent a stay, the balance of equities favors Defendants, the public interest weighs in favor of a stay, and Defendants have a strong likelihood of success on the merits. Because Defendants have satisfied the requirements of Federal Rule of Civil Procedure 62, they are entitled to a stay of the Order pending resolution of their appeal.

The Special Master is already prosecuting the terms of the Order, saddling DSH with onerous demands that drain departmental resources and distract from DSH's core mission. DSH is cooperating to the best of its ability, but compliance with the Order is likely to have irrevocable effects that cannot be remedied by success on appeal. Accordingly, the Court should grant Defendants a stay to ensure their rights are protected pending appeal.

1

Defs.' Mot. Stay Jul. 11, 2013 Order Pending Appeal (2:90-cv-00520 LKK JFM PC)

## PROCEDURAL AND FACTUAL BACKGROUND

On September 13, 1995, this Court entered its foundational remedial order, concluding that the State's provision of mental-health care to inmates was constitutionally deficient in six core areas. *Coleman v. Wilson*, 912 F.Supp. 1282, 1305-15 (E.D. Cal. 1995). In particular, the Court found that state correctional officials were liable for unreasonable delays in access to necessary mental-health services including inpatient beds at state hospitals. *Id*. at 1308-09, 1314. But the Court made no finding that inpatient hospitalizations were providing inmates constitutionally inadequate care, and DSH (then known as the Department of Mental Health (DMH)) was not a defendant. *See id*. Indeed, providing treatment under DMH care was part of the cure, not the cause, of the constitutional violations.

Since that time, DSH has collaborated with CDCR officials to provide inmates with inpatient mental-health care as a contractor. (*See, e.g.,* Stipulation and Order, May 21, 1998, ECF No. 945.) DSH has always operated in a support role to CDCR, providing those services under a set of interagency agreements relating to the utilization and construction of beds. (*See id*.) It was not until June 2006 that DMH effectively became a party in this action, when this Court joined the DMH Director as a defendant to facilitate utilization of state hospital beds and services. (Order, June 28, 2006, ECF No. 1855.) The Court, however, did not find that DMH programs provided inmates with unconstitutional care. (*Id*.)

On January 7, 2013, Defendants moved to terminate further prospective relief in this case based on evidence that the constitutional deficiencies identified in 1995 have been remedied. (Defs.' Mot. Terminate, ECF No. 4875.) In their opposition papers, Plaintiffs raised issues regarding purported inadequacies in DSH services. (Pls.' Opp'n Defs.' Mot. Terminate 27-40, ECF No. 4408; Order, Apr. 5, 2013, 8 n.6, ECF No. 4539.) But this Court expressly declined to address Plaintiffs' allegations regarding DSH care because they were outside the scope of the termination motion. (Apr. 5, 2013 Order 8 n.6.) The Court denied Defendants' motion to terminate, but made no finding that DSH mental-health services violated the rights of the plaintiff class. (*Id*. at 26-67.)

2

Defs.' Mot. Stay Jul. 11, 2013 Order Pending Appeal (2:90-cv-00520 LKK JFM PC)

Shortly thereafter, Plaintiffs moved for affirmative relief regarding DSH inpatient care. (Pls.' Mot. Enforcement Ct. Orders & Affirm. Relief (Pls.' Mot.), ECF No. 4543.) Plaintiffs sought to expand judicial oversight of DSH-run programs and requested specific enforcement orders against DSH. (*See id.*) The Court held an evidentiary hearing, but as before, did not make any findings that DSH care was constitutionally inadequate. (July 11, 2013 Order.) Despite this, the Court found the Special Master "has the authority and duty to monitor" the DSH programs, and ordered the immediate expansion of the Special Master's supervisory authority because Plaintiffs' evidence "suggest[ed]" it was necessary. (*Id*. at 11.) The Court directed the Special Master to commence monitoring of DSH programs, beginning with Salinas Valley Psychiatric Program, and eventually expanding to include Vacaville Psychiatric Program, Atascadero State Hospital, Coalinga State Hospital, and California Health Care Facility. (*Id*. at 12.)

The day after the Court entered its order, the Special Master's team started making arrangements for monitoring at Salinas Valley Psychiatric Program (SVPP). (Decl. G. Maynard Supp. Defs.' Mot. Stay (Decl. Maynard) ¶ 5.) The Special Master's team planned a nine-day on-site inspection of SVPP, to be followed by at least two rounds of additional monitoring at other DSH facilities. (*Id*.) On July 31, 2013, the Special Master's team began their on-site monitoring tour at SVPP. (*Id*. ¶ 10.) The tour included wide-ranging requests for documents, as well as access to clinicians, executive and administrative staff, inmates, and program areas. (*Id*. ¶¶ 9-11.) Each day of the monitoring tour requires five members of the executive team to spend the majority of their day assisting the Special Master's team. (*Id*. ¶ 10.) The executive team's regular workflow has been significantly interrupted, and regularly scheduled executive meetings and weekly management meetings have been deferred. (*Id*.) To compound matters, the Special Master's team notified Defendants that Plaintiffs' counsel will also participate in the monitoring tour at SVPP, scheduled for August 20, 2013 through August 22, 2013. (*Id*. ¶ 12.) Defendants have informed the Special Master of their objections to Plaintiffs' participation in the monitoring tours. (*Id*.)

The Court's Order also established a timeline for the Special Master to begin its monitoring of the other DSH programs besides SVPP. (July 11, 2013 Order 12.) The Court directed the

3

Special Master to commence additional monitoring within 75 days of the order (by September 10, 2013) and to file a report on the results by March 31, 2014. (*Id.*) In spite of this projected timeframe, the Special Master has greatly accelerated the pace of monitoring at the California Health Care Facility, Vacaville Psychiatric Program, and Atascadero State Hospital.

The Special Master's team scheduled on-site monitoring tours of the California Health Care Facility (CHCF) for August 12th through 15th, September 4th through 6th, and October 8th through 10th. (Decl. Maynard ¶ 13.) The Special Master's team requested that California Health Care Facility provide patient lists for the August and September tours. (*Id.* ¶ 14.) Documents similar to those provided by SVPP, including program manuals, policies, duty statements, administrative directives, and documents related to inmate movement, will be required for the October site-visit. (*Id.*) During these tours, however, CHCF will still be in the process of transitioning to full capacity by admitting new patients every week. (*Id.*) The executive team and clinicians' time must be fully devoted to program activation, including recruiting staff, orienting and training new staff, admitting new patients, and resolving all on-unit and support-services-system issues. (*Id.*)

The Special Master's team has also scheduled on-site monitoring tours of Vacaville Psychiatric Program, Coalinga State Hospital, and Atascadero State Hospital. (*Id.* ¶ 15.) On-site monitoring tours of Vacaville Psychiatric Program are set for September 11th through 13th and October 15th through 17th. (*Id.*) A tour of Coalinga State Hospital is scheduled for October 21st through 23rd. (*Id.*) Tours of Atascadero State Hospital are scheduled for September 10th through 13th and November 4th through 6th. (*Id.*) The Special Master has not provided further details regarding those planned tours. (*Id.*)

On August 12, 2013, Defendants filed a notice of appeal of the Court's July 11, 2013 Order. (Not. of Appeal, ECF No. 4741.) Defendants now move to stay the Court's Order pending resolution of the appeal.

4

Defs.' Mot. Stay Jul. 11, 2013 Order Pending Appeal (2:90-cv-00520 LKK JFM PC)

# ARGUMENT

## I. DEFENDANTS ARE ENTITLED TO A STAY UNDER FEDERAL RULE OF CIVIL PROCEDURE 62.

This Court is authorized under Federal Rule of Civil Procedure 62 to stay its July 11, 2013 Order to ensure that Defendants' rights are secured pending appeal. Fed. R. Civ. P. 62(c). A party seeking a stay must make a four-factor showing: (1) there is a likelihood of success on the merits; (2) there is a likelihood of irreparable harm in the absence of relief; (3) that the balance of equities weigh in its favor; and (4) that a stay is in the public interest. *Humane Soc'y of U.S. v. Gutierrez*, 558 F.3d 896, 897 (9th Cir. 2009); *see also Nken v. Holder*, 556 U.S. 418, 434-35 (2009). The likelihood of success on the merits and irreparable harm factors are "are the most critical." *Nken*, 556 U.S. at 434 (explaining that when those are satisfied, courts will assess "the harm to the opposing party" and weigh the public interest). Because each of the factors favor Defendants, this Court should grant a stay of its July 11, 2013 Order.

### A. Defendants Are Likely to Succeed on the Merits of their Appeal.

The likelihood-of-success factor cannot be rigidly applied. *Protect Our Water v. Flowers*, 377 F. Supp. 2d 882, 884 (E.D. Cal. 2004). "Prior recourse to the initial decisionmaker would hardly be required as a general matter if it could properly grant interim relief only on a prediction that it has rendered an erroneous decision." *Himebaugh v. Smith*, 476 F. Supp. 502, 510 (C.D. Cal. 1978) (quoting *Wash. Metro. Area v. Holiday Tours*, 559 F.2d 841, 844 (D.C. Cir. 1977)). Rather, the rule fairly contemplates that courts may properly stay their own orders where they there is a "substantial case" on the merits and the status quo should be maintained. *See Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. 1981) (granting stay pending appeal of injunction requiring changes to Texas prison system).

#### 1. There Is a Substantial Question Whether the Court's Order Complies with the PLRA's Restrictions on Prospective Relief.

There is a likelihood that on review, the Court of Appeals will vacate this Court's July 11, 2013 Order because it contravenes the PLRA's restrictions on prospective relief. *See* 18 U.S.C. § 3626(a)(1)(A). Under the statute, the Court is forbidden from granting prospective relief "unless

5

Defs.' Mot. Stay Jul. 11, 2013 Order Pending Appeal (2:90-cv-00520 LKK JFM PC)

the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." *Id*. Thus, at the very least, establishing the existence of a defendant's constitutional violation is a necessary predicate to any provision of prospective relief. *See id*.; *Webb v. Goord*, 340 F.3d 105, 111 (2d Cir. 2003) ("a federal court may not grant any prospective relief at all - let alone appoint a special master" without first making the required statutory findings). Not only did the Court neglect to make any of the required statutory findings, but Plaintiffs failed to adduce evidence that could support a conclusion that DSH programs are providing unconstitutional care. Thus, it is likely that the Court of Appeals will agree that the July 11, 2013 Order impermissibly grants Plaintiffs prospective relief in violation of the PLRA.

Here, the Court acknowledged that it "has never found DSH provides inadequate care to class members." (July 11, 2013 Order 7.) Yet the Court nevertheless concluded that the Special Master has always had the authority to intrude into DSH's mental-health practice. (*Id*.) The Court erred. DSH was not a party to this case in 1995, and in the 17 years since, DSH's provision of mental-health care was never subject to the Special Master's supervisory powers. As Plaintiffs' own opposition papers demonstrate, judicial supervision of DSH has always been limited to inpatient access, population accommodations, and bed-plans – not the quality of DSH care. (Pls.' Separate Statement Recent Orders 3-13, ECF No. 4409.) Similarly, the Court's Order quotes terms from the 2009 Remedial Program Guide under the heading "Utilization Management," including admission and discharge criteria. (July 11, 2013 Order 5-6.) But as the heading denotes, these Program Guide terms are designed to manage access and utilization of inpatient beds, and not the specifics of DSH patient care. (*See id*.)

Despite this procedural and factual record, the Court jettisoned the PLRA's requirements for prospective relief by dubbing DSH's provision of care a "remedial duty" under the 1995 Order and its contracts with CDCR. (*Id*. at 9.) Instead of addressing the statute, the Court devised the circular justification that supervision was proper because none of the Court's "relevant orders exempts DSH . . . from this supervision." (*Id*.) In so doing, the Court imputed liability to DSH for the constitutional violations found against different defendants in 1995, while

6

putting the Special Master's authority beyond the reach of the PLRA. Indeed, the Court did not even make findings that DSH violated this "remedial duty," stating only that there was some basis "for questioning" the adequacy of care, and that the evidence "suggests" monitoring is necessary. (*Id*. at 11.) This is improper under the terms of the PLRA and as a matter of basic equity.

### 2. Plaintiffs Presented No Evidence that Could Justify Imposing the Special Master's Supervision on DSH Programs.

Moreover, Plaintiffs did not present evidence that could support a finding that DSH is providing inadequate care. This case is about deliberate indifference to the mental-health needs of the plaintiff class on a systemic level. But Plaintiffs supported their request for relief with little more than disputed staffing statistics and anecdotal evidence regarding the DSH program at Salinas Valley Psychiatric Program (SVPP). (*See, e.g.,* Hr'g Tr., June 19, 2013, ECF No. 4690.) At best, Plaintiffs established a difference of opinion between medical professionals, which does not amount to deliberate indifference. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989) ("A difference of opinion does not amount to deliberate indifference to Sanchez' serious medical needs.").

Furthermore, the paucity of Plaintiffs' proof not only belies their allegations of inadequate care, but also lays bare the patent overbreadth of the Order. Plaintiffs' witness testimony and arguments focused almost exclusively on issues at SVPP. (*See generally* Pl.'s Mot. 10-26.) Yet, the Court's Order directs the Special Master to exercise monitoring authority over *all* existing DSH programs involving the plaintiff class. (*Id*. 11 & n.11.) As a stark example, the Court's Order requires the Special Master to begin supervision and monitoring of new programs at the California Health Care Facility (CHCF). But, as the Court was aware, CHCF did not even begin admitting patients until July 22, 2013 – one month *after* the hearings were held. (*Id*. 2 n.3.) Despite the impossibility of finding unconstitutional care at CHCF, the Court granted Plaintiffs' request for monitoring relief. Thus, it cannot be said that the Court's expansion of the Special Master's authority is the least-intrusive means necessary to correct an alleged violation of a federal right. *See* 18 U.S.C. § 3626(a)(1)(A).

7

Defs.' Mot. Stay Jul. 11, 2013 Order Pending Appeal (2:90-cv-00520 LKK JFM PC)

Lastly, the Court's Order fails to meaningfully address any of Defendants' evidence that *Coleman* class members housed in DSH programs are receiving appropriate treatment. Defendants' evidence included ten declarations, including those from managers of DSH mental-health programs and CDCR institutions, and three-days worth of witness testimony. (ECF Nos. 4593-4602, 4689, 4691, 4692.) As explained in Defendants' opposition papers and brief, the evidence debunked Plaintiffs' claims that DSH facilities were understaffed or that class members received inadequate care. (Defs.' Opp'n, ECF No. 4592; Defs.' Brief re: Evid. Hearing, ECF No. 4658.) Specifically, Defendants demonstrated that: (1) inmates are provided basic human necessities; (2) there are no material disputes concerning the hiring and use of registry and overtime at the Salinas Valley and Vacaville programs; (3) Defendants are providing access to DSH inpatient care for all class members, regardless of parole status; and (4) Defendants are not mismanaging waitlists for inpatient care. (Defs.' Brief re: Evid. Hearing 3-9.) The Court did not sustain Plaintiffs' objections to Defendants' evidence, but nevertheless disregarded Defendants' showing that DSH is not deliberately indifferent to the medical needs of its patients. (*See* July 11, 2013 Order 2 n.2, 3-13.)

In sum, Defendants' likelihood of success on appeal strongly favors a stay of the Court's Order. Moreover, this Court's disagreement on the merits does not foreclose the propriety of a stay because of the substantial legal and factual issues that must be addressed on appeal. And as further explained below, the Court's Order will likely have irrevocable effects that militate in favor of maintaining the status quo until the appeal is resolved.

**B.     Defendants Are Likely to Suffer Irreparable Harm.**

The Court should stay its July 11, 2013 Order because it is likely to cause Defendants irreparable injury. Under the Special Master's expanded supervisory authority, DSH program staff are forced to redirect scarce resources away from the provision of clinical care and toward the accommodation of the monitoring team's demands. Compliance with the Special Master's demands requires considerable administrative effort and expense, and takes valuable time from both administrators and clinicians. The effect of the harm is even more pronounced because the

8

Defs.' Mot. Stay Jul. 11, 2013 Order Pending Appeal (2:90-cv-00520 LKK JFM PC)

Court's Order imposes burdens on DSH that are not even constitutionally required. Accordingly, a stay of the Court's Order is warranted.

The Special Master's team is already burdening the executive and clinical staff at SVPP with wide-ranging demands for access to inmates, clinicians, executive staff, medical records, and program areas. (*See* Decl. Maynard ¶¶ 5-11.) The first on-site monitoring tour lasted six days, between July 31, 2013 and August 7, 2013. (*Id*. ¶ 10.) During each day of the tour, five members of the executive team, including the chief of psychology, a program director, and two program assistants, spent most of their daily working hours assisting the Special Master's team. (*Id*.) The Special Master's intrusion has derailed the executive team's regular workflow, disrupting or completely deferring regularly scheduled executive meetings. (*Id*.)

Even before the team's arrival, SVPP staff were actively engaged in responding to various document requests, including the production of documents relating to: SVPP's Administrative Directives; Program Manual; Nursing Policy and Procedure; Updates to the Nursing Policy and Procedure; Duty Statements for Medical Technical Assistants (MTA), Senior MTAs, Psychiatric Technicians, Registered Nurses, and Supervising Registered Nurses; and treatment schedules for SVPP's six units. (*Id*. ¶ 9.) After the Special Master arrived, the document demands multiplied to include lists of SVPP inmate cell extractions, all Rules Violation Reports issued to SVPP inmates, all Use-of-Force packages related to SVPP inmates. (*Id*. ¶ 11.) In addition, the Special Master's team demanded reviews of Salinas Valley State Prison's (SVSP) registry of Rules Violation Reports, SVSP's incident-tracking log, and the central files for several SVPP inmates. (*Id*.)

The Special Master's requests for documents regarding the use of force, cell extractions, and rules violations, are especially injurious because they are unrelated to the "adequacy . . . of inpatient care," and are therefore beyond the scope of the Court's Order (July 11, 2013 Order 11.) Indeed, these documents are only relevant to Plaintiffs' pending motion for affirmative relief regarding the use of force and inmate discipline. (Pls.' Mot. Enforcement Ct. Orders & Affirm. Relief Related Use of Force & Disciplinary Measures, ECF No. 4638.) It would be improper for the Court's concerns about inpatient care to be transformed into a means to obtain evidence that

9

could be relevant only to the Plaintiffs' unrelated, pending motions. These demands doubly harm Defendants by imposing an unwarranted administrative burden, while impermissibly assisting Plaintiffs litigate their case.

The Special Master's planned monitoring activities at CHCF are also likely to cause irreparable harm. The monitoring team will conduct scheduled on-site tours at CHCF between August 12th through 15th, September 4th through 6th, and October 8th through 10th of this year. (*Id*. ¶ 13.) These tours will occur while CHCF is still in the midst of program activation. (*Id*. ¶¶ 13-14.) The facility is in the process of growing to full capacity by admitting new patients every week, and the executive team and clinicians must be fully devoted to activation. (*Id*. ¶ 14.) This includes efforts to recruit staff, orient and train new staff, admit new patients, and resolve all on-unit and support services system issues. (*Id*.) Although the Special Master's team has indicated the August and September monitoring rounds will be less demanding than those at SVPP, the tours still pose a significant distraction from CHCF's operational priorities. (*Id*. ¶¶ 13-14.)

The Fifth Circuit's decision in *Ruiz v. Estelle*, 650 F.2d 555 (5th Cir. 1981) is instructive here. In *Ruiz*, the court stayed parts of a district court's injunction that imposed "exacting changes" on the Texas prison system. *Id*. at 558-59. Notably, the court concluded that prison officials would suffer irreparable harm if forced to comply with orders to produce plans for prison modifications of conditions that did not actually cause constitutional harm. *Id*. at 573. "[N]o matter how desirable" a policy was, "the effort and expense" of the state's compliance with a requirement that was not constitutionally mandated demonstrated a likelihood of irreparable harm. *Id*.

The court also found that administrative burdens that interfered with the institutions' obligations posed the potential for irreparable injury. *Id*. at 571, 575-76. The court concluded that certain aspects of the injunction would cause "administrative nightmares" with little, if any, practicable benefit. *Id*. The court stayed these provisions pending appeal because "the burden upon [prison officials] in terms of time, expense, and administrative red tape is too great." *Id*. at 571.

10

Defs.' Mot. Stay Jul. 11, 2013 Order Pending Appeal (2:90-cv-00520 LKK JFM PC)

As in *Ruiz*, here, Defendants are bound to suffer irreparable harm because the burden of indulging the Special Master's fishing expedition is simply too great. The Court's Order requires Defendants to put forth considerable effort and expense towards implementing a remedy that is not even constitutionally required. The monitoring team's demands have already spawned "administrative nightmares" that are disrupting DSH executive and clinical staff's ability to focus on their core mission of providing appropriate mental-health treatment. Moreover, the situation only projects to worsen as the Special Master's net is cast wider and entangles CHCF and the other DSH programs. Accordingly, the Court should stay the Order to forestall any further injury pending appeal.

### C. The Balance of Equities and the Public Interest Weigh Heavily in Defendants' Favor.

The balance of equities in this case tips sharply in Defendants' favor, and supports preserving the status quo until Defendants' appeal is resolved. Given the lack of any finding that DSH care is constitutionally deficient, the likelihood that a stay will injure the plaintiff class is wholly speculative. Supervision of DSH care has never been part of the suite of remedies directed at the alleged Eighth Amendment violations in this case. Moreover, the other remedies under the 1995 Order will remain in place, unaffected by a stay of the Court's July 11, 2013 Order. Thus, there is no likelihood that the plaintiff class will be injured. By contrast, as explained above, the harms DSH must bear under the terms of the Order and the Special Master, are concrete and substantial. Accordingly, the equities in this case favor a stay of the Order pending appeal.

The public interest in the provision of DSH services also militates in favor of staying the Court's Order. DSH bears an obligation to the people of the State that goes beyond the provision of beds and services to CDCR inmates. DSH must admit and treat individuals who are committed to the state hospitals by the courts under specific state statutes. The California Penal Code provides for the commitment of individuals found incompetent to stand trial, determined to be mentally disordered offenders, and determined to be not guilty by reason of insanity. Cal. Penal Code §§ 1370, 2962, 1026. The California Welfare and Institutions Code mandates the

11

Defs.' Mot. Stay Jul. 11, 2013 Order Pending Appeal (2:90-cv-00520 LKK JFM PC)

commitment of individuals who are found to be sexually violent predators. Cal. Welf. & Inst. Code § 6600. Individuals whose mental illness renders them dangerous to themselves or others must also be committed to the state hospital. *Id*., at § 5358. DSH has a duty to fully accomplish its statutory obligations to provide these services without undue distraction or diversion of its scarce resources.

As much as DSH is committed to providing CDCR with staff and services, DSH is bound by statute to provide mental-health care for certain designated persons who are not within the confines or custody of CDCR. But, as is already playing out at SVPP, compliance with the Court's Order and the Special Master's myriad demands, siphons off valuable resources from DSH clinicians and administrators. The Special Master's monitoring detracts from DSH's core mission to provide *all* of its patients with quality mental-health services. In short, the Court's Order attempts to cure a problem that does not exist, while adversely affecting DSH's obligations to a separate class of patients.

## CONCLUSION

This Court should stay its July 11, 2013 Order pending appeal because Defendants will be irreparably harmed absent a stay, the balance of equities favors Defendants, the public interest weighs in favor of a stay, and Defendants have a strong likelihood of success on the merits. Given the speed with which the Order is being carried out, Defendants respectfully request expedited consideration of this motion.

| | | |
|---|---|---|
| 1 | Dated: August 12, 2013 | Respectfully Submitted, |
| 2 | | KAMALA D. HARRIS<br>Attorney General of California |
| 3 | | JAY C. RUSSELL<br>Supervising Deputy Attorney General |
| 4 | | THOMAS S. PATTERSON<br>Supervising Deputy Attorney General |
| 5 | | PATRICK MCKINNEY<br>Deputy Attorney General |
| 6 | | DEBBIE VOROUS<br>Deputy Attorney General |

 */s/ Kevin A. Voth*
KEVIN A. VOTH
Deputy Attorney General
*Attorneys for Defendants*
*Edmund G. Brown Jr., Dr. Jeffrey Beard,*
*Ana J. Matosantos, and Cliff Allenby*

CF1997CS0003
20715461.doc

13

# CERTIFICATE OF SERVICE

Case Name:   **Coleman v. Brown, et al.,**        No.   **2:90-cv-00520 LKK JFM PC**

I hereby certify that on August 12, 2013, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

1. **DEFENDANTS' NOTICE OF MOTION AND MOTION TO STAY JULY 11, 2013 ORDER (ECF No. 4688) PENDING APPEAL**

2. **DECLARATION OF G. MAYNARD IN SUPPORT OF DEFENDANTS' MOTION TO STAY JULY 11, 2013 ORDER (ECF No. 4688) PENDING APPEAL**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on August 12, 2013, at San Francisco, California.

| S. Johnson | /s/ S. Johnson |
|---|---|
| Declarant | Signature |

CF1997CS0003
20719990.doc