DONALD SPECTER – 083925
STEVEN FAMA – 099641
PRISON LAW OFFICE
1917 Fifth Street
Berkeley, California 94710-1916
Telephone: (510) 280-2621

MICHAEL W. BIEN – 096891
JANE E. KAHN – 112239
ERNEST GALVAN – 196065
THOMAS NOLAN – 169692
LORI E. RIFKIN – 244081
AARON J. FISCHER – 247391
MARGOT MENDELSON – 268583
KRISTA STONE-MANISTA – 269083
ROSEN BIEN GALVAN &
GRUNFELD LLP
315 Montgomery Street, Tenth Floor
San Francisco, California 94104-1823
Telephone: (415) 433-6830

JON MICHAELSON – 083815
JEFFREY L. BORNSTEIN – 099358
LINDA L. USOZ – 133749
MEGAN CESARE-EASTMAN – 253845
K&L GATES LLP
4 Embarcadero Center, Suite 1200
San Francisco, California 94111-5994
Telephone: (415) 882-8200

CLAUDIA CENTER – 158255
THE LEGAL AID SOCIETY –
EMPLOYMENT LAW CENTER
180 Montgomery Street, Suite 600
San Francisco, California 94104-4244
Telephone: (415) 864-8848

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al., <br><br>Plaintiffs, <br><br>v. <br><br>EDMUND G. BROWN, JR., et al., <br><br>Defendants. | Case No. Civ S 90-0520 LKK-JFM <br><br>**PLAINTIFFS' RESPONSE TO SPECIAL MASTER'S QUALITY IMPROVEMENT REPORT AND REQUEST FOR COURT ORDER** <br><br>Judge: Hon. Lawrence K. Karlton |

[911917-1]

PLAINTIFFS' RESPONSE TO SPECIAL MASTER'S QUALITY IMPROVEMENT REPORT AND REQUEST FOR COURT ORDER

## INTRODUCTION

On August 2, 2013, in compliance with this Court's Order, the Special Master filed a report on Defendants' quality improvement process and implementation of a self-auditing tool known as the Continuous Quality Improvement Tool ("CQIT"). (Dkt. No. 4730.) The report made a number of substantive findings about Defendants' implementation of the CQIT, but primarily concluded that the further review was needed because the process had been substantially disrupted and abbreviated by the filing of Defendants' Motion to Terminate. The Special Master determined that in order to meaningfully review Defendants' quality assurance and quality improvement ("QI") processes, it would be necessary to re-pilot the quality improvement tool, "with continued observation by members of the special master's staff and plaintiffs' counsel." *Id.* at 30. Defendants agreed to re-pilot the CQIT during the remainder of 2013. *Id.* Now, in response to Defendants' recent representations that they are no longer obliged by this Court to cooperate in the Special Master's quality improvement review, Plaintiffs seek an Order from this Court requiring Defendants to fully cooperate with the Special Master and Plaintiffs' counsel in the ongoing review of the QI process. In keeping with the recommendations and conclusions of the Special Master's report, Plaintiffs request that the Court issue an Order extending the QI monitoring process through the end of 2013 and calling for an additional report by the Special Master to be completed in 2013.

## BACKGROUND & ARGUMENT

On August 30, 2012, the Court ordered Defendants to "review and assess their existing quality assurance process" and "develop an improved quality improvement process." (Dkt. No. 4232 at 5.) The process, which was to be "carried out under the guidance of the Special Master and his staff, with participation and input of the *Coleman* plaintiffs," was initially scheduled through February 2013. *Id*. at 6. In light of the "interrupt[ions]" caused by the Defendants' Motion to Terminate, filed in January 2013, the Court issued a subsequent order requiring compliance through July 1, 2013 and calling for a report by the Special Master on or before August 2, 2013. (Dkt. No. 4561 at 1; Dkt.

[911917-1]

1

PLAINTIFFS' RESPONSE TO SPECIAL MASTER'S QUALITY IMPROVEMENT REPORT AND REQUEST FOR COURT ORDER

1  No. 4562.)

2     The Special Master's ensuing report traced the history of the CDCR's self-auditing
3  tool and recalled that Defendants initially planned to hold a series of meetings with the
4  Special Master and Plaintiffs' counsel between September 2012 and May 2013 with
5  respect to the implementation of the CQIT.  Defendants intended to roll out the audit tool
6  at eight institutions, which the Special Master would monitor with the involvement of
7  Plaintiffs' counsel, over the course of the six-month period allotted by the Court.

8     After Defendants moved to terminate the *Coleman* case in January 2013, however,
9  "the momentum toward completion and roll-out of the tool was seriously disrupted." *Id.* at
10  6.  According to the Special Master, Defendants acted "[c]ontrary to the intent and
11  direction of the Court's order" by eliminating "the opportunity for the special master's
12  experts and plaintiffs' counsel to participate in and contribute to the process … at a time
13  when their input could have added value as the process was unfolding." *Id.* at 6-7.

14     As a consequence of the delays and impediments caused by Defendants'
15  termination motion, the schedule for site visits by the Special Master and Plaintiffs'
16  counsel "had to be significantly compressed." *Id.* at 7.  The revised schedule permitted
17  "virtually no time between site visits to pause, self-correct, and prepare for the next one."
18  *Id.* at 8.  "[T]he intensive back-to-back schedule may have hindered the institutions' and
19  the CDCR audit teams' ability to re-group after an on-site audit and adequately prepare for
20  the next one." *Id.* at 8.  Most importantly, due to the abbreviated schedule, the Special
21  Master was unable to gauge whether or to what extent the CDCR implemented the
22  recommendations that the Special Master and Plaintiffs' counsel provided during the
23  monitoring tours.

24     Based on its abbreviated review, the Special Master Team concluded that the CQIT
25  is "a fundamentally sound tool," but observed that "more work remains to be done to
26  develop this fledgling self-auditing mechanism into a reliable, sustainable means by which
27  CDCR can identify and resolve issues and improve delivery of care to its mentally ill
28  population." *Id.* at 15-16.  Among other things, the Special Master expressed concern

1  about the sufficiency of training for assessors (*id.* at 17), the reliability of the data used in
2  the audit (*id.* at 18), the placement of inmates in modules without seats during group
3  surveys (*id.* at 19), the inaccessibility of the survey language (*id.* at 20), the chilling effect
4  of the presence of institutional mental health staff (*id.* at 22), and the insufficiency of the
5  tool's mechanisms for collecting qualitative input (*id.* at 22, 24). The Special Master also
6  called for the addition of fields for mental health staffing and compliance with heat
7  measures in the audit tool. *Id.* at 26.

8  Plaintiffs' counsel also identified a number of shortcomings in the design and
9  implementation of the CQIT process. (*See* Letter from Krista Stone-Manista to Special
10 Master Matthew Lopes, July 15, 2013, Exh. A.) Plaintiffs' counsel observed that
11 important issues had been omitted from the audit tool and identified serious problems with
12 the preparation and administration of the tool. Plaintiffs' counsel recommended specific
13 questions to be incorporated into the tool and offered to provide assistance with
14 Defendants' ongoing refinement of the tool. Plaintiffs' counsel, like the Special Master,
15 has been unable to ascertain whether any of their recommendations have been followed.

16 Based on these concerns, the Special Master concluded that "more work needs to be
17 done before a full roll-out" and the project needs to be "re-piloted at the same eight
18 institutions some time during the remainder of 2013." *Id.* at 29-30. Moreover, "[t]o
19 facilitate this re-pilot, CDCR and the special master have agreed to suspend the
20 commencement of the upcoming twenty-sixth round of monitoring until the re-pilot has
21 been completed." *Id.* at 30.

22 Notwithstanding the representations Defendants made to the Special Master,
23 Defendants wrote a letter to the Special Master expressing that they are no longer under
24 court order to participate in the ongoing QI process. (*See* August 14, 2013 Letter from
25 Deputy Attorney General Debbie Vorous to Special Master Matthew Lopes, Exh. B.)
26 Claiming that the "time period specified by the Court [for CQIT monitoring] has ended,"
27 Defendants now assert that their agreement to cooperate with the Special Master in the re-
28 piloting process "go[es] above and beyond the Court's requirements." *See id.*

Given the critical importance of the quality improvement process and the possibility that ongoing quality improvement monitoring will delay the Special Master's twenty-sixth round of monitoring, Plaintiffs request that the Court order Defendants to fully cooperate with the Special Master and Plaintiffs' counsel throughout the completion of the Special Master's re-piloting and review of the CQIT. Plaintiffs further request that the Court issue an Order extending the QI monitoring process through the end of 2013 and directing the Special Master to complete a supplemental report in 2013.

DATED: August 16, 2013        Respectfully submitted,

ROSEN BIEN GALVAN & GRUNFELD LLP


By: */s/ Jane Kahn*
    Jane Kahn

Attorneys for Plaintiffs