DONALD SPECTER – 083925
STEVEN FAMA – 099641
PRISON LAW OFFICE
1917 Fifth Street
Berkeley, California 94710-1916
Telephone: (510) 280-2621

MICHAEL W. BIEN – 096891
JANE E. KAHN – 112239
ERNEST GALVAN – 196065
THOMAS NOLAN – 169692
LORI E. RIFKIN – 244081
AARON J. FISCHER – 247391
MARGOT MENDELSON – 268583
KRISTA STONE-MANISTA – 269083
ROSEN BIEN GALVAN &
GRUNFELD LLP
315 Montgomery Street, Tenth Floor
San Francisco, California 94104-1823
Telephone: (415) 433-6830

JON MICHAELSON – 083815
JEFFREY L. BORNSTEIN – 099358
LINDA L. USOZ – 133749
MEGAN CESARE-EASTMAN – 253845
RANJINI ACHARYA – 290877
K&L GATES LLP
4 Embarcadero Center, Suite 1200
San Francisco, California 94111-5994
Telephone: (415) 882-8200

CLAUDIA CENTER – 158255
THE LEGAL AID SOCIETY –
EMPLOYMENT LAW CENTER
180 Montgomery Street, Suite 600
San Francisco, California 94104-4244
Telephone: (415) 864-8848

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>EDMUND G. BROWN, Jr., et al.,<br><br>　　　　Defendants. | Case No. Civ S 90-0520 LKK-JFM<br><br>**PLAINTIFFS' EVIDENTIARY OBJECTIONS RE DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION RELATED TO HOUSING AND TREATMENT OF SERIOUSLY MENTALLY ILL PRISONERS IN SEGREGATION**<br><br>Judge: Hon. Lawrence K. Karlton<br>Date: November 5, 2013<br>Time: 10:30 a.m.<br>Crtrm: 4 |

[916573-2]

**TABLE OF CONTENTS**

**Page**

I. DEFENDANTS' DECLARATIONS SHOULD BE EXCLUDED INSOFAR AS THEY CONTAIN IMPROPER AND INADMISSIBLE EVIDENCE ............... 1

    A. Summary of Evidentiary Objections ............................................................... 1

    B. Amended Declaration of Dr. Tim Belavich, 4759-1 ("Am. Belavich Decl.") ................................................................................................................ 2

    C. Declaration of Kathleen Allison, Docket No. 4713 ("Allison Decl.") ............ 6

    D. Declaration of Charles Scott, Docket No. 4715 ("Scott Decl.") .................... 10

    E. Declaration of Debbie Vorous , Docket No. 4714 ("Vorous Decl.") ............ 12

[916573-2]

i

PLS.' EVIDENTIARY OBJECTIONS RE DEFS.' OPPOSITION TO PLS.' MOTION RELATED TO HOUSING AND TREATMENT OF SERIOUSLY MENTALLY ILL PRISONERS IN SEGREGATION

## I. DEFENDANTS' DECLARATIONS SHOULD BE EXCLUDED INSOFAR AS THEY CONTAIN IMPROPER AND INADMISSIBLE EVIDENCE

Defendants' declarations in support of their Opposition to Plaintiffs' Motion violate the Federal Rules of Evidence, as detailed below.

### A.   Summary of Evidentiary Objections

Defendants' declarants make many statements that are incomplete, misleading, contradicted by deposition testimony, or otherwise of no use to this Court as the trier of fact. Because such statements do not have "any tendency to make a fact more or less probable than it would be without the evidence," they fail the basic test for relevance set forth in Federal Rule of Evidence 401.

Defendants' declarants offer testimony that does not meet the Rule 602 requirement that a witness to testify "*only if* evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter" (emphasis added). Defendants' declarations do not accord with this Rule, and instead assert sweeping conclusions without requisite personal knowledge.

Defendants' declarants also repeatedly proffer expert testimony despite being unqualified to do so. This testimony contravenes the requirements of Federal Rule of Evidence 701, which provides that non-expert "testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception, (b) helpful to … determining a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge." Such statements also violate Federal Rule of Evidence 702, which sets forth the specific requirements as to who may provide expert testimony.

Defendants' purported segregation expert fails to provide testimony that meets the requirements of Federal Rules of Evidence 701, 702, and 703, as he lacks necessary expertise on the matters before the Court, lacks sufficient personal knowledge necessary to provide an opinion, and provides information that is irrelevant and is not helpful to determining any fact in issue.

The declarations are also replete with inadmissible hearsay. The declarants offer

[916573-2]

1

PLS.' EVIDENTIARY OBJECTIONS RE DEFS.' OPPOSITION TO PLS.' MOTION RELATED TO HOUSING AND TREATMENT OF SERIOUSLY MENTALLY ILL PRISONERS IN SEGREGATION

statements made by third parties for the truth of the matter asserted, and to which no hearsay exceptions apply. *See* Fed. R. Evid. 801, 802.

Finally, Defendants' declarants make a number of sweeping assertions about the contents of documents or the characteristics of data without providing the documents or the data. The original copies of these documents and data should be permitted to speak for themselves. *See* Fed. R. Evid. 1002, 1006.

### B. Amended Declaration of Dr. Tim Belavich, 4759-1 ("Am. Belavich Decl.")

On August 22, 2013, the day before Plaintiffs were to file their reply and more than two weeks after his August 7, 2013 deposition, Dr. Belavich filed an "amended" declaration correcting certain aspects of his testimony and replacing his originally filed declaration (Docket No. 4712-1). This belated "amended" declaration fails to cure several of the most significant problems with his initial declaration testimony, as discussed below.

#### 1. Am. Belavich Decl. ¶ 6

Dr. Belavich asserts that CCCMS inmates in segregated housing are "seen with increased frequency" and sets forth a list of services they "will receive" while in segregated housing units. Dr. Belavich provides no basis in personal knowledge for these assertions and does not explain what it means to be seen with "increased frequency." Finally, under the Best Evidence Rule, Dr. Belavich must provide the underlying documentation for these claims. Importantly, the data that Dr. Belavich has provided to Plaintiffs in support of his claims depicts hours of treatment *offered*, not hours received, and is therefore irrelevant and not useful for the trier of fact. *See* Fed. R. Evid. 401, 602, 1002.

#### 2. Am. Belavich Decl. ¶ 7

Dr. Belavich claims that "at a minimum" EOP inmates in segregation are provided weekly clinical contacts, quarterly interdisciplinary treatment teams, and various other services. He provides no foundation or data to support these broad assertions about the frequency or nature of the care offered or received by all EOP inmates in all segregated

[916573-2]

2

PLS.' EVIDENTIARY OBJECTIONS RE DEFS.' OPPOSITION TO PLS.' MOTION RELATED TO HOUSING AND TREATMENT OF SERIOUSLY MENTALLY ILL PRISONERS IN SEGREGATION

housing units. *See* Fed. R. Evid. 602, 1002, 1006.

### 3. Am. Belavich Decl. ¶ 8

Dr. Belavich's claims about the nature and quantity of treatment received by inmates in Psychiatric Services Units also lack foundation in personal knowledge. *See* Fed. R. Evid. 602.

### 4. Am. Belavich Decl. ¶ 9

Dr. Belavich's claims about the amount of treatment received by EOP inmates in administrative segregation are incomplete and inaccurate because the chart upon which he expressly relies omits data from CCWF, which is an administrative segregation hub. The data is therefore of no use to the trier of fact and not relevant. Furthermore, the chart upon which Dr. Belavich relies does not identify the source of the data and he has not produced the underlying data to Plaintiffs. Under the Best Evidence Rule, the underlying data must be presented. *See* Fed. R. Evid. 401, 602, 802, 1002, 1006.

### 5. Am. Belavich Decl. ¶ 10

Dr. Belavich asserts that groups are offered to inmates "if deemed clinically necessary." He provides no foundation for that characterization. Moreover, under the Best Evidence Rule, the data he cites about the care received by inmates in Security Housing Units must be provided to the Court, not simply characterized. The data provided to Plaintiffs demonstrated that Dr. Belavich's summary was incomplete and misleading, as it demonstrated only number of treatment hours *offered*, not treatment hours received, and includes inmates who refused all care. His "amended" declaration clarifies that his data reflected care offered, not received, but still paints a misleading impression of the care being provided in the Security Housing Units. *See* Doc. No. 4759-1 at 4:5-10. His declaration testimony is therefore of no use to the trier of fact and not relevant. *See* Fed. R. Evid. 401, 1002.

### 6. Am. Belavich Decl. ¶ 11

This paragraph contains a string of unsupported assertions. For example, Dr. Belavich provides no foundation for the statement that all inmates receive mental

[916573-2]

3

1 health screening upon placement in segregation. He also offers no support for the claim
2 that CDCR "continuously trains both clinical and correctional staff." Dr. Belavich states
3 that inmates are routinely assessed through the Sustainable Process and characterizes that
4 process as "fully implemented." However, this assertion lacks foundation, and the Special
5 Master quote that Dr. Belavich provides does not support the proposition for which it is
6 offered. Consequently, this statement is not relevant or helpful to the trier of fact. *See*
7 Fed. R. Evid. 401, 602.

### 7.  Am. Belavich Decl. ¶ 12

Dr. Belavich asserts that CDCR has hired 46 new psychiatrists since January 1,
2013 and 31 social workers since September 2012. He provides no underlying data to
support these figures and does not establish any personal knowledge about these purported
hires. He also claims that CDCR is "in the process of hiring another 21 new
psychiatrists." Dr. Belavich does not explain what it means to be in the process of hiring
psychiatrists or how this affects the care received by the hundreds of class members
currently in segregation units. His August 22, 2013 "amended" declaration offers
additional detail about the new psychiatrists allegedly hired and reveals that many of them
are not "new" hires at all. *See* Doc. No. 4759-1 at 5:9-15. He also, without explicitly
disclosing this amendment to the Court, has changed the time frame considered in his
Declaration. His July 24, 2013 Declaration discussed hiring between January 1, 2013 and
May 29, 2013; while his August 22, 2013 Declaration discusses hiring between January 1,
2013 and July 24, 2013. *Compare* Doc. No 4712-1 at 5:10 *with* Doc. No. 4759-1 at 5:10.
Plaintiffs have not been provided with the underlying data that supports either his original
or his "amended" statements. Accordingly, Dr. Belavich's statements are of no value to
the trier of fact. *See* Fed. R. Evid. 401, 602, 1002, 1006.

### 8.  Am. Belavich Decl. ¶ 13

Dr. Belavich provides no foundation for the broad claim that "every prison is
equipped with confidential meeting space that *can be used whenever requested*." *See* Fed.
R. Evid. 602. Further, he clarified during deposition that he meant only to refer to

[916573-2]

4
PLS.' EVIDENTIARY OBJECTIONS RE DEFS.' OPPOSITION TO PLS.' MOTION RELATED TO HOUSING
AND TREATMENT OF SERIOUSLY MENTALLY ILL PRISONERS IN SEGREGATION

1  individual treatment space, and that he has no personal knowledge of whether confidential
2  group treatment space is available at "every prison."  *See* Declaration of Jane E. Kahn in
3  Support of Plaintiffs' Motion for Enforcement of Court Orders and Affirmative Relief
4  Regarding Improper Housing and Treatment of Seriously Mentally Ill Prisoners in
5  Segregation ("Kahn Reply Decl.") Ex. R. (Aug. 7, 2013 Dep. of Tim Belavich) at 142:17-
6  143:10.

### 9.   Am. Belavich Decl. ¶ 14

Dr. Belavich's characterizations of what the Chiefs of Mental Health "have agreed to do" constitute impermissible hearsay offered for the truth of the matter asserted. Moreover, Dr. Belavich's speculations about what will happen "once training has been completed" or "in the next few months" are speculative and lack foundation.  *See* Fed. R. Evid. 401, 602, 801(c), 802.

### 10.   Am. Belavich Decl. ¶¶ 15

Dr. Belavich makes sweeping statements about various policies and practices in administrative segregation units, without any grounding in personal knowledge and without any evidentiary support.  These sweeping statements should be stricken for lack of foundation.  *See* Fed. R. Evid. 602, 701.  Further, his characterization of the Department's "training," "project[s]," and requirements does not substitute for actual documentation of these matters.  *See*  Fed. R. Evid. 1002, 1006.

### 11.   Am. Belavich Decl. ¶¶ 17-19

These paragraphs contain several broad assertions offered without any foundation, including about access to mental health treatment for class members in segregated housing units, practices for transferring inmates who are in psychiatric crisis out of segregated housing units, and the frequency of mental health assessments for inmates in segregation. Dr. Belavich establishes no personal knowledge for any of these assertions.  *See* Fed. R. Evid. 602.

[916573-2]

5

PLS.' EVIDENTIARY OBJECTIONS RE DEFS.' OPPOSITION TO PLS.' MOTION RELATED TO HOUSING
AND TREATMENT OF SERIOUSLY MENTALLY ILL PRISONERS IN SEGREGATION

**C.  Declaration of Kathleen Allison, Docket No. 4713 ("Allison Decl.")**

**1.  Allison Decl. ¶ 8**

Ms. Allison makes a number of vague statements, without any citations or offered support, that Plaintiffs' proposals "ignore[] established due process guidelines," are "incredibly dangerous," and "encourage arbitrary releases." These vague statements lack foundation, and constitute improper opinion testimony. *See* Fed. R. Evid. 701.

**2.  Allison Decl. ¶ 9**

Ms. Allison states that on "rare occasions, inmates may remain in an Administrative Segregation Unit longer than anticipated." She offers no evidentiary support for her characterization of this problem as "rare" or any explanation of what is meant by "longer than anticipated," making this statement without foundation. *See* Fed. R. Evid. 401, 602, 701.

**3.  Allison Decl. ¶ 10**

Ms. Allison offers an inflammatory hypothetical about an imaginary inmate, without pointing to any specific evidence demonstrating that the threat about which she speculates is either real or significant. Her hypothetical is without foundation, in violation of Federal Rules of Evidence 602 and 702, and is improper use of a declaration to present arguments, not facts. *See* E.D. Cal. Local R. 230(h).

**4.  Allison Decl. ¶ 11**

Ms. Allison makes sweeping statements about how the Institutional Classification Committee process purportedly works in each and every instance, without establishing personal knowledge and without any evidentiary support. These sweeping statements should be stricken for lack of foundation. *See* Fed. R. Evid. 602, 701. Further, her characterization of how the classification process works does not substitute for documentation of the actual policies and procedures governing the process, or documents generated during that process. *See* Fed. R. Evid. 1002.

Ms. Allison also makes a vague and argumentative statement, without any citations or offered support, that Plaintiffs' proposals will result in "an arbitrary release of a

[916573-2]

6

PLS.' EVIDENTIARY OBJECTIONS RE DEFS.' OPPOSITION TO PLS.' MOTION RELATED TO HOUSING AND TREATMENT OF SERIOUSLY MENTALLY ILL PRISONERS IN SEGREGATION

1  dangerous individual."  Her statement lacks foundation and is improper use of a
2  declaration to present arguments, not facts.  *See* Fed. R. Evid. 602, 701; E.D. Cal. Local R.
3  230(h).

### 5. Allison Decl. ¶ 12

Ms. Allison states that it is untrue that Defendants underreport length of stay in segregation data for many class members, asserting that in the reports that she reviews, "[t]he administrative segregation length of stay is continuous unless the inmate is released from an Administrative Segregation Unit and readmitted for a different offense or reason." This flatly contradicts the statement on the segregation length of stay data produced monthly by Defendants, that the "[a]ging clock resets when an inmate-patient is moved from one cell to another within the same treatment/custody setting."  *See* Kahn Reply Decl. Ex. E.  At deposition, Ms. Allison testified that she does not review the monthly data that is provided to Plaintiffs and the Special Master (*id.*), and did not look at the CDCR data provided to the Special Master and Plaintiffs pursuant to Court order and submitted in support of Plaintiffs' motion.  *See* Kahn Reply Decl. Ex. S (Aug. 15, 2013 Dep. of Kathleen Allison) ("Allison Dep.") at 103:6-24.  Ms. Allison's statement regarding CDCR monthly data that she did not review is without foundation and should be stricken.  *See* Fed. R. Evid. 602, 701.

### 6. Allison Decl. ¶ 15

Ms. Allison states that since May 2012, there were "zero inmates on the Enhanced Outpatient Program Administrative Segregation Unit hub waitlist."  But Defendants' own June 2013 monthly data, provided to the Special Master and Plaintiffs' counsel pursuant to Court order, indicates that 14 EOP prisoners have been in segregation for more than 90 days, three times the Program Guide mandated timeline for transfer to an EOP ASU hub institution.  *See* Kahn Reply Decl. Ex. E.  Ms. Allison could not explain why the data provided to the Special Master conflicts with CDCR's assertion that no EOPs are held in non-EOP ASU hubs for more than 30 days.  *See* Allison Dep. 118:6-121:16.  Her declaration statement is without foundation and should be stricken.  *See* Fed. R. Evid. 602,

[916573-2]

7

PLS.' EVIDENTIARY OBJECTIONS RE DEFS.' OPPOSITION TO PLS.' MOTION RELATED TO HOUSING AND TREATMENT OF SERIOUSLY MENTALLY ILL PRISONERS IN SEGREGATION

701. Ms. Allison failed to produce the data underlying her statement despite Plaintiffs' request for such documents pursuant to service of a subpoena. *See* Fed. R. Evid. 1002, 1006.

### 7.   Allison Decl. ¶ 16

Ms. Allison's statement that "all [administrative segregation] units except those without electrical capacities authorize inmates to possess at least one entertainment device" is irrelevant as a response to Plaintiffs' assertion that access to such devices is limited in most segregation units, because Ms. Allison does not specify how many units qualify as "without electrical capabilities." Her statement is without foundation and misleading, and should be stricken. *See* Fed. R. Evid. 602, 701.

### 8.   Allison Decl. ¶ 17

Ms. Allison states that "inmates are provided reading materials" and that a "one-for-one book exchange is available in all segregation units" without attaching any policy so mandating or establishing personal knowledge on this matter for every segregation unit. Her statement is without foundation and should be disregarded. *See* Fed. R. Evid. 602, 701. Further, her characterization of how the process for providing reading materials allegedly works is no substitute for documentation of the actual policies and procedures governing the process. *See* Fed. R. Evid. 1002.

### 9.   Allison Decl. ¶ 18

Ms. Allison provides no evidentiary support for her statements as to the purposes and scope of the California Medical Facility's Willis Unit's recent renovation. Her statement is without foundation and should be disregarded. *See* Fed. R. Evid. 602, 701.

### 10.   Allison Decl. ¶ 19

Ms. Allison provides no evidentiary support or underlying data for her statements that it is "common practice for inmates to be moved … for safety reasons that are specific to a particular yard," that it is "generally the inmate's articulation of his or her inability to house in alternative general population yards … that prompts placement in administrative segregation," or that "CDCR uses administrative segregation as a placement of last resort."

[916573-2]

8

PLS.' EVIDENTIARY OBJECTIONS RE DEFS.' OPPOSITION TO PLS.' MOTION RELATED TO HOUSING AND TREATMENT OF SERIOUSLY MENTALLY ILL PRISONERS IN SEGREGATION

Her vague and sweeping statements are without foundation and should be disregarded. *See* Fed. R. Evid. 602, 701. To the extent that they are intended to summarize data or documentation of the classification issues she describes, they are no substitute for production of such materials. *See* Fed. R. Evid. 1002, 1006.

### 11.     Allison Decl. ¶ 20

Ms. Allison's vague statement that CDCR is "in the process of establishing a non-disciplinary segregation unit" that will in some unspecific way allow inmates to "receive more privileges" is without foundation and unhelpful to the trier of fact. *See* Fed. R. Evid. 401, 602, 701. Ms. Allison's subsequent deposition testimony shows this statement to be untrue. There will be no new "unit" at all, and the purported plan will in no way change the fact that non-disciplinary segregation prisoners will be subjected to the same extreme restrictions – the same 23 hours per day in their cell, the same lack of out-of-cell activity, the same mental health treatment delivered in cages, and the same strip searches whenever leaving or returning to the unit for treatment. *See* Allison Dep. at 57:5-58:2.

### 12.     Allison Decl. ¶ 21

Ms. Allison makes statements regarding number of inmates housed in segregation while "waiting for a bed to open on a yard." But she subsequently testified that this number (50 prisoners, including 24 class members) did not include prisoners housed in an ASU as an "overflow" unit (such as at CIM ASU) or housed in segregation while waiting for transfer to an appropriate bed at another CDCR institution. Allison Dep. at 165:13-166:21, 168:7-23. Her testimony is further contradicted by CIM's Chief of Mental Health. *See* Am. Reply Decl. of Victor Jordan in Supp. of Defs.' Mot. to Terminate, Docket No. 4507, Mar. 25, 2013, ¶ 24 (confirming that LOB inmates do not receive welfare checks). Her statements are without foundation, irrelevant, and of no use to the Court. *See* Fed. R. Evid. 401, 602, 701.

### 13.     Allison Decl. ¶ 24

Ms. Allison makes sweeping statements about how the Department of State Hospitals' discharge process works in practice without establishing personal knowledge

[916573-2]

9

PLS.' EVIDENTIARY OBJECTIONS RE DEFS.' OPPOSITION TO PLS.' MOTION RELATED TO HOUSING AND TREATMENT OF SERIOUSLY MENTALLY ILL PRISONERS IN SEGREGATION

1 and without any evidentiary support.  These statements should be stricken for lack of
2 foundation.  *See* Fed. R. Evid. 602, 701.

### 14. Allison Decl. ¶ 25

Ms. Allison's statement that "[t]he decision regarding where CDCR may safely place an inmate due to his or her custody designation is *rightly* with correctional officers, and not with mental health clinicians" (emphasis added) constitutes improper expert testimony that she is not qualified to make.  It should be stricken as outside the province of a lay witness.  *See* Fed. R. Evid. 602, 701.

### 15. Allison Decl. ¶ 27

Ms. Allison's statement that "a blanket exclusion for all mentally ill inmates from the Security Housing Units would greatly diminish the deterrent effect of the unit" constitutes improper expert testimony that she is not qualified to make.  She acknowledges that she has no data to support this statement.  Allison Dep. at 194:1-7.  It should be stricken as outside the province of a lay witness.  *See* Fed. R. Evid. 602, 701.

### 16. Allison Decl. ¶ 34

Ms. Allison's statement that "using a non-contact visiting room for segregation clinical contacts offers no realistic advantage over a therapeutic treatment module" constitutes improper expert testimony that she is not qualified to make as a non-clinician. It should be stricken as outside the province of a lay witness.  *See* Fed. R. Evid. 602, 701.

### D. Declaration of Charles Scott, Docket No. 4715 ("Scott Decl.")

Dr. Scott is not a proper expert on segregation and has no foundation.  His testimony has previously been excluded by this Court.  *See* Order Denying Mot. to Terminate, Docket No. 4539, Apr. 5, 2013, at 22.  He lacks expertise regarding mentally ill prisoners in segregation, has no foundation for any opinion as to conditions in CDCR's segregation units, and relies on irrelevant studies with no application to the issues before the Court.

Dr. Scott has never worked in, consulted on, or conducted a full review of a segregation system at an adult prison, nor has he otherwise studied a prison segregation

[916573-2]

10

PLS.' EVIDENTIARY OBJECTIONS RE DEFS.' OPPOSITION TO PLS.' MOTION RELATED TO HOUSING AND TREATMENT OF SERIOUSLY MENTALLY ILL PRISONERS IN SEGREGATION

1  system.  Kahn Reply Decl. Ex. Q (July 26, 2013 Dep. of Charles Scott, M.D.) ("7/26/13
2  Scott Dep.")) at 18:13-16, 21:23-23:21, 36:23-25.  He lacks the requisite knowledge, skill,
3  experience, training, or education to provide expert testimony on the matters at issue in this
4  motion.  *See* Fed. R. Evid 701, 702.

5      Dr. Scott lacks sufficient facts or data based on personal knowledge or observation
6  that is necessary to base an expert opinion.  He admits that his knowledge of the system is
7  based on the *Coleman* Program Guide, not any review of actual conditions.  *See* 7/26/13
8  Scott Dep. at 143:12-21 (Q: Where did you get this information as to these five aspects of
9  CDCR's system? A. Primarily from the program guide… Q. Have you evaluated the
10 implementation of these [] policies? A. No.); *id.* at 18:21-19:2 ("I did not do evaluations of
11 specific ad seg units.").  Dr. Scott also did not review treatment, conditions, or any other
12 aspect of CDCR's segregation units during the Termination proceedings.  *See* Kahn Reply
13 Decl. Ex. O (Mar. 8, 2013 Dep. of Charles Scott) at 122:21-123:13 (stating that, during the
14 Termination tours, "review of ad seg care was not my area that I was working on"); *id.* at
15 215:24-216:12 (stating that, during the termination tours, "Dr. Dvoskin was looking at
16 EOP and ad seg, not me").  Dr. Scott also testified that he had not toured any CDCR
17 prisons, reviewed any CDCR patient records, reviewed CDCR policies and procedures
18 other than the Program Guide, or spoken with any CDCR clinicians or correctional staff
19 since the Termination proceedings.  7/26/13 Scott Dep. at 16:11-18:4.  Dr. Scott lacks the
20 necessary foundation to offer expert testimony.  *See* Fed. R. Evid. 702, 703.

21     Dr. Scott instead discusses studies of other prisons systems.  *See* Scott Decl. ¶¶ 13-
22 27.  These studies, by their own terms, cannot be applied to conditions in CDCR's
23 segregation system and are thus irrelevant to the issues before the Court.  *See* Pls.' Reply
24 in Support of Motion for Enforcement of Court Orders and Affirmative Relief Regarding
25 Improper Housing and Treatment of Seriously Mentally Ill Prisoners in Segregation, Part
26 I.A.  Dr. Scott's testimony will not will help the trier of fact to understand the evidence or
27 to determine a fact in issue, and thus it should be excluded and disregarded.  *See* Fed. R.
28 702.

[916573-2]

11

PLS.' EVIDENTIARY OBJECTIONS RE DEFS.' OPPOSITION TO PLS.' MOTION RELATED TO HOUSING
AND TREATMENT OF SERIOUSLY MENTALLY ILL PRISONERS IN SEGREGATION

**E.     Declaration of Debbie Vorous , Docket No. 4714 ("Vorous Decl.")**

Plaintiffs object to six of the exhibits submitted in connection with the Declaration of Deputy Attorney General Debbie Vorous.

### 1.     Vorous Decl. Ex. 1

The Colorado Department of Corrections study contained in this exhibit, regarding inmates in a Colorado prison segregation unit, has no relevance or application to issues now before this Court regarding the conditions in CDCR's segregation units, and the psychological harm and risk of such harm on *Coleman* class members placed in those units. *See* Fed. R. Evid. 402.

### 2.     Vorous Decl. Ex. 2

The study contained in this exhibit, regarding inmates in Canada's prison segregation system, has no relevance or application to issues now before this Court regarding the conditions in CDCR's segregation units, and the psychological harm and risk of such harm on *Coleman* class members placed in those units. *See* Fed. R. Evid. 402.

### 3.     Vorous Decl. Ex. 11

The email contained in this exhibit, purportedly sent from a CDCR staff member to one of the Court-appointed experts, is not properly authenticated. Ms. Vorous neither sent or received the email, and has not provided evidence sufficient to support a finding that the document is what she claims it is. *See* Fed. R. Evid. 901.

This email purports to summarize a position taken by the Special Master and a Court-appointed expert. The document constitutes inadmissible hearsay offered for the truth of its content about what the Special Master and Court-appointed expert purportedly said, believed, or did. *See* Fed. R. Evid. 801(c), 802.

### 4.     Vorous Decl. Ex. 12

The documents contained in this exhibit, an email and email attachment purportedly sent from one of the Court-appointed experts to Defendants' counsel, is not properly authenticated. Ms. Vorous neither sent or received the email, and has not provided evidence sufficient to support a finding that the document is what she claims it is. *See* Fed.

[916573-2]

12

PLS.' EVIDENTIARY OBJECTIONS RE DEFS.' OPPOSITION TO PLS.' MOTION RELATED TO HOUSING AND TREATMENT OF SERIOUSLY MENTALLY ILL PRISONERS IN SEGREGATION

1  R. Evid. 901.

2  This document purports to summarize a position taken by the Special Master and
3  the Court-appointed expert.  The document indicates that a Court-appointed expert offered
4  his expertise to work with Defendants on their own project with respect to therapeutic
5  modules in order to mitigate harm and to ensure that the next wave of treatment cells
6  produced by Defendants did not compound problems.  To the extent it is offered for the
7  truth of the document's content about what the Special Master or Court-appointed expert
8  purportedly said, believed, or did, it is inadmissible hearsay.  *See* Fed. R. Evid. 801(c),
9  802.

### 5.     Vorous Decl. Ex. 13

11  The email contained in this exhibit, purportedly sent from Defendants' counsel to
12  other Defendants' counsel and CDCR staff, is not properly authenticated.  Ms. Vorous
13  neither sent or received the email, and has not provided evidence sufficient to support a
14  finding that the document is what she claims it is.  *See* Fed. R. Evid. 901.

15  This email purports to summarize a position taken by a Court-appointed expert.
16  The document constitutes inadmissible hearsay offered for the truth of its content about
17  what the Court-appointed expert purportedly did or did not "approve."  *See* Fed. R. Evid.
18  801(c), 802.

### 6.     Vorous Decl. Ex. 14

20  The emails contained in this exhibit, purportedly sent from CDCR staff to other
21  CDCR staff and Defendants' counsel, are not properly authenticated.  Ms. Vorous neither
22  sent or received these emails, and has not provided evidence sufficient to support a finding
23  that that the document is what she claims it is.  *See* Fed. R. Evid. 901.

24  / / /
25  / / /
26  / / /
27  / / /
28  / / /

[916573-2]

1  The emails purport to summarize a position taken by the Special Master – *i.e.*,
2  "approv[al of] a standardized Treatment Module for use in all institutions." The document
3  constitutes inadmissible hearsay offered for the truth of its content about what the Special
4  Master purportedly did or did not "approve." *See* Fed. R. Evid. 801(c), 802.

DATED: August 23, 2013          Respectfully submitted,

ROSEN BIEN GALVAN & GRUNFELD LLP

By: */s/ Aaron J. Fischer*
    Aaron J. Fischer

Attorneys for Plaintiffs

[916573-2]

14
PLS.' EVIDENTIARY OBJECTIONS RE DEFS.' OPPOSITION TO PLS.' MOTION RELATED TO HOUSING AND TREATMENT OF SERIOUSLY MENTALLY ILL PRISONERS IN SEGREGATION