DONALD SPECTER – 083925
STEVEN FAMA – 099641
PRISON LAW OFFICE
1917 Fifth Street
Berkeley, California 94710-1916
Telephone: (510) 280-2621

MICHAEL W. BIEN – 096891
JANE E. KAHN – 112239
ERNEST GALVAN – 196065
THOMAS NOLAN – 169692
LORI E. RIFKIN – 244081
AARON J. FISCHER – 247391
MARGOT MENDELSON – 268583
KRISTA STONE-MANISTA – 269083
ROSEN BIEN
GALVAN & GRUNFELD LLP
315 Montgomery Street, Tenth Floor
San Francisco, California 94104-1823
Telephone: (415) 433-6830

JON MICHAELSON – 083815
JEFFREY L. BORNSTEIN – 099358
LINDA L. USOZ – 133749
MEGAN CESARE-EASTMAN – 253845
RANJINI ACHARYA – 290877
K&L GATES LLP
4 Embarcadero Center, Suite 1200
San Francisco, California 94111-5994
Telephone: (415) 882-8200

CLAUDIA CENTER – 158255
THE LEGAL AID SOCIETY –
EMPLOYMENT LAW CENTER
180 Montgomery Street, Suite 600
San Francisco, California 94104-4244
Telephone: (415) 864-8848

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>EDMUND G. BROWN, Jr., et al.,<br><br>　　　　Defendants. | Case No. Civ S 90-0520 LKK-JFM<br><br>**PLAINTIFFS' EVIDENTIARY OBJECTIONS RE DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION RELATED TO USE OF FORCE AND DISCIPLINARY MEASURES**<br><br>Judge: Hon. Lawrence K. Karlton<br>Date: September 26, 2013<br>Time: 10:00 a.m.<br>Crtrm: 4 |

[916578-2]

**TABLE OF CONTENTS**

**Page**

I. DEFENDANTS' DECLARATIONS SHOULD BE EXCLUDED INSOFAR AS THEY CONTAIN IMPROPER AND INADMISSIBLE EVIDENCE ............... 1

   A. Summary of Evidentiary Objections ................................................................. 1

   B. Declaration of John R. Day, Docket No. 4705 ("Day Decl.") ......................... 2

   C. Declaration of Steve J. Martin, Docket No. 4706 ("July Martin Decl.") ........................................................................................................... 4

   D. Declaration of Michael Stainer, Docket No. 4708 ("Stainer Decl.") .............. 7

   E. Declaration of Kathleen Allison, Docket No. 4713 ("Allison Decl.") ............ 9

[916578-2]

i

PLAINTIFFS' EVIDENTIARY OBJECTIONS RE DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION RELATED TO USE OF FORCE AND DISCIPLINARY MEASURES

## I. DEFENDANTS' DECLARATIONS SHOULD BE EXCLUDED INSOFAR AS THEY CONTAIN IMPROPER AND INADMISSIBLE EVIDENCE

Defendants' declarations in support of their Opposition to Plaintiffs' Motion, Docket No. 4704 ("Defs' Opp."), violate the Federal Rules of Evidence, as detailed below.

### A.  Summary of Evidentiary Objections

Defendants' declarants make many statements that are incomplete, misleading, contradicted by deposition testimony, or otherwise of no use to this Court as the trier of fact.  Because these statements, as specified below, do not have "any tendency to make a fact more or less probable than it would be without the evidence," they fail the basic test for relevance set forth in Federal Rule of Evidence 401.

Defendants' declarants offer testimony that does not meet the Rule 602 requirement that a witness testify "*only if* evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter" (emphasis added). Defendants' declarations do not accord with this Rule, and instead assert sweeping conclusions without requisite personal knowledge.

Defendants' declarants also repeatedly proffer expert testimony despite being unqualified to do so.  This testimony contravenes the requirements of Federal Rule of Evidence 701, which provides that non-expert "testimony in the form of an opinion is limited to one that is:  (a) rationally based on the witness's perception, (b) helpful to … determining a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge."  Such statements also violate Federal Rule of Evidence 702, which sets forth the specific requirements as to who may provide expert testimony.

Finally, Defendants' declarants make a number of sweeping assertions about the contents of documents or the characteristics of data without providing the documents or the data.  The original copies of these documents and data should speak for themselves. *See* Federal Rule of Evidence 1002, 1006.

[916578-2]

1

PLAINTIFFS' EVIDENTIARY OBJECTIONS RE DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION RELATED TO USE OF FORCE AND DISCIPLINARY MEASURES

**B.  Declaration of John R. Day, Docket No. 4705 ("Day Decl.")**

**1.  Day Decl. ¶ 2**

The data for referrals, investigations, and discipline related to staff misconduct provided by Mr. Day in this paragraph are irrelevant to the issues raised in Plaintiffs' Motion, as they do not:  (1) have any evidentiary value as to the procedures used for reviewing and investigating force or the quality and effectiveness of investigations involving use of force incidents (Aug. 9, 2013 Order, Docket No. 4738, at 3:19-4:6 & n.1); (2) reflect whether any officers were actually disciplined or terminated for misconduct related to use of force incidents, and deliberately omit this information and are therefore misleading in this regard (*see* Declaration of Lori Rifkin in Support of Pls.' Reply ("Rifkin Decl.") ¶ 5 & Ex. D  (August 14, 2013 Deposition of John Day) (hereinafter "Day Depo.") at 129:4-130:6, 142:10-18, 145:17-24) ; or (3) reveal any information about use of force incidents involving *Coleman* class members, because Mr. Day was not able to identify which, if any, of these incidents involved class members.  Day Depo. at 167:8-168:4. Therefore, they do not have "any tendency to make a fact" relevant to this Motion "more or less probable than it would be without the evidence," and should be stricken.  Fed. R. Evid. 401.

Further, Defendants' claim in their Opposition, citing to Paragraph 2 of Mr. Day's declaration, that the Office of Internal Affairs ("OIA") "sustained allegations of misconduct in 31 cases, including 9 cases which resulted in termination," see Defs' Opp. at 7:12-13, is inaccurate and should be stricken.  Mr. Day testified at deposition that only "the hiring authority," and not the OIA, is empowered to sustain or not sustain an allegation of misconduct and to discipline officers as a result.  Day Depo. at 130:12-17 & 222:25-223:9. He also testified at deposition that only six, not nine, employees were eventually subject to dismissal, and that he did not have knowledge as to whether those six dismissals resulted from allegations relating to use of force. Day Depo. at 134:1-16 & 145:17-24.  His declaration testimony is inaccurate, and therefore unhelpful to the trier of fact, and should be stricken.  *See* Fed. R. Evid. 401.

[916578-2]

2

PLAINTIFFS' EVIDENTIARY OBJECTIONS RE DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
RELATED TO USE OF FORCE AND DISCIPLINARY MEASURES

Finally, Mr. Day's summary of the data regarding the OIA's 2012 referrals and investigations should not be substituted for documentation of the data itself, which is not attached. To the extent it purports to accurately represent the data, it is incomplete and misleading. *See* Fed. R. Evid. 1002 & 1006.

### 2. Day Decl. ¶ 3

Mr. Day asserts that "hundreds of corrective actions occur concerning use of force incidents that do not involve the Office of Internal Affairs." He does not cite any evidence or basis in his personal knowledge for the claim that "hundreds" of such actions occur outside the province of his office. In fact, he testified that his office does not review or track use of force incidents that are not referred to the OIA for investigation, and acknowledged that he has no basis in his personal knowledge for accurately stating or estimating the number of corrective actions occurring outside OIA. Day Depo. at 125:15-126:13 & 151:5-154:20. This statement should be stricken. *See* Fed. R. Evid. 602; 701.

### 3. Day Decl. ¶¶ 4-10, 13-16

Mr. Day offers a series of assertions about how the use of force review process currently works at the institutional level, but he has not actually participated in any step of the use of force review process in an institution since 2007. Day Depo. at 151:22-152:16; 154:22-156:15. His claims about the actual current workings of the review process at CDCR institutions are therefore without foundation in personal knowledge and should be stricken. *See* Fed. R. Evid. 602; 701. He also fails to attach, or even cite to, any of the policies upon which he purports to rely, and his characterization of those policies is no substitute for the actual policies themselves. *See* Fed. R. Evid. 1002, 1006.

### 4. Day Decl. ¶ 11

Mr. Day states: "Our office reviews every reported allegation of employee misconduct." He testified at deposition, however, that the OIA's review is limited to those allegations referred to it by institution hiring authorities at their discretion. Day Depo. at 102:16-24. This statement in his declaration is therefore false and should be stricken. *See* Fed. R. Evid. 401, 602, 701.

[916578-2]

3

PLAINTIFFS' EVIDENTIARY OBJECTIONS RE DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION RELATED TO USE OF FORCE AND DISCIPLINARY MEASURES

### 5. Day Decl. ¶ 16

Plaintiffs have asked the Court to order that CDCR expand the mandatory investigation criteria for use of force incidents to require OIA review for several additional categories of incidents. *See* Pls' Mot. re Use of Force and Disciplinary Measures, Docket No. 4368, at 43-44. Mr. Day misleadingly states that "CDCR already includes these categories in its reviews and investigations of use-of-force incidents . . ." Day Decl. ¶ 16 at 6:1-2. During his deposition, Mr. Day testified that only one of the categories identified by Plaintiffs is currently subject to mandatory referral or investigation by OIA. Day Depo. 211:13-214:3. His declaration testimony to the contrary should be stricken as lacking foundation. Fed. R. Evid. 401, 602, 701.

### C. Declaration of Steve J. Martin, Docket No. 4706 ("July Martin Decl.")

#### 1. Objections to July Martin Decl. in Its Entirety

Plaintiffs hereby incorporate their prior objections to Mr. Martin's January 4, 2013 expert report ("January Report") and his March 22, 2013 declaration ("March Martin Decl."). *See* Corrected Pls' Evidentiary Objs. to Defendants' Expert Reports and Declarations, March 19, 2013, Docket No. 4423; Pls' Evidentiary Objs. to Defs' Reply Declarants and Mot. to Strike, March 26, 2013, Docket No. 4513, at 22-24; Pls' Reply to Defs' Resp. to Order to Show Cause, March 26, 2013, Docket No. 4524.

The Court struck Mr. Martin's January 4, 2013 report ("January Report") and March 22, 2013 declaration ("March Martin Decl.") in their entirety. *See* Order Denying Defs.' Motion to Terminate, April 5, 2013, Docket No. 4539 at 22. The reports were struck in their entirety because the Court, *inter alia*, found that Mr. Martin had improperly conducted interviews with *Coleman* class members, and his reports made no reference to these interviews, which left the Court unable to identify which portions of his report are tainted, and because Defendants' conduct prejudiced Plaintiffs. *Id.* at 20-23. The Court recently ruled that even if it "were inclined to reconsider its decision to strike Mr. Martin's report, which it is not, the filing of the notice of appeal from the April 5, 2013 order may preclude it from doing so." Order, August 1, 2013, Docket No. 4726, at 3:5-7. Defendants

[916578-2]

4

PLAINTIFFS' EVIDENTIARY OBJECTIONS RE DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
RELATED TO USE OF FORCE AND DISCIPLINARY MEASURES

1  may not now relitigate this Court's decision on this matter.  Further, the Court's August 1,
2  2013 Order specifically invited Defendants to have Mr. Martin re-tour in the presence of
3  Plaintiffs' counsel in order to provide a new, untainted report.  Aug. 1, 2013 Order, Docket
4  No. 4726 at 3 n.3.  Defendants chose not to do so.  Rifkin Decl. ¶ 7.

5  Nevertheless, in his July Declaration, Mr. Martin incorporates the entirety of the
6  January Report and March Declaration by reference. (July Martin Decl. ¶¶ 2, 5.)  To the
7  extent Mr. Martin continues to rely on his January Report and March Declaration, or the
8  information he gathered during his previous improper tours, his July Declaration clearly
9  lacks proper foundation.  Fed. R. Evid. 702, 703.  Mr. Martin's January Report and March
10 Declaration are also attached as Exhibits A and B to his July Declaration.  Because both
11 have been previously stricken by the Court, they should both be similarly stricken in this
12 proceeding.

13 Furthermore, in striking Mr. Martin's January Report, the Court noted that
14 "Martin's report makes no reference to his interviews with inmates."  April 5, 2013 Order,
15 Docket No. 4539 at 22.  In his July Declaration, Mr. Martin asserts: "I reviewed my notes
16 from the 11 site visits I conducted between February and November 2012, and confirmed
17 that I interviewed only two inmates at a single facility.  These interviews related to two
18 specific use of force incidents that I had reviewed on-site at the R.J. Donovan Correctional
19 Facility…Moreover, neither of the two interviews were used to form the basis for any of
20 the system opinions in my report."  July Martin Decl. ¶¶ 3-4, 1:19-2:5.  These new
21 assertions by Mr. Martin directly contradict his earlier deposition testimony, in which he
22 acknowledged that he interviewed *Coleman* class members.  *See* Declaration of Michael
23 Bien in Support of Pls' Opp. to Defs' Motion to Terminate, Ex. 86 (February 28, 2013
24 Deposition of Steve Martin), Docket No. 4424, at 197.  During that deposition, Mr. Martin
25 testified:

26   Q. When you did your interviews with inmates, where did those interviews
     take place?
27
28   A. Variety of settings.  I would do cell-front interviews, I would call some

[916578-2]

5

1  out for particular-purpose interviews, in a dedicated interview space.  Yard
2  interviews, common space, day-room interviews.  ***Quite a variety of inmate
   interviews.***

4  *See id.* at 38:16-22 (emphasis added).

Because the July Declaration is clearly contradicted by Mr. Martin's previous deposition testimony, those portions of the Declaration that address his actions in interviewing class members, and those portions of the Declaration that are based on any information obtained from these improper interviews, are inadmissible and should be stricken from the record.  *See Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th. Cir. 1991) ("The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony.").

### 2.    July Martin Decl. ¶ 14 at 4:19-26

Mr. Martin misrepresents the foundation for Mr. Vail's opinions regarding CDCR's system-wide failures as merely a "review of seven incidents at three institutions utilizing video evidence alone while ignoring a storehouse of relevant evidence contained in the incident packets and IERC reviews related to the seven incidents."

As outlined in Mr. Vail's four declarations submitted in this case, his foundation consists of, among other things, four full-day prison inspections, a review of hundreds of CDCR documents, a review of more than 50 videos of use of force incidents and inmate interviews, a review of the OIG's use of force and semi-annual reports, interviews with inmates and staff at CDCR institutions, and a review of CDCR's policies and procedures and California regulations regarding use of force.  *See* Vail Reply Decl. ¶¶ 2-6. Mr. Martin's statement is without foundation in facts or data known to Mr. Martin and should be stricken.  Fed. R. Evid. 702.

### 3.    July Martin Decl. ¶ 15 at 5:6-10

Mr. Martin states: "I hereafter cite specific relevant evidence in the thirteen incidents that if incorporated into Mr. Vail's analyses would at the very least alter his conclusions; and in some instances, reverse his conclusions entirely."   This statement

[916578-2]

6

PLAINTIFFS' EVIDENTIARY OBJECTIONS RE DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
RELATED TO USE OF FORCE AND DISCIPLINARY MEASURES

1  improperly speculates as to what information may, or may not, impact the opinions that
2  Mr. Vail has provided in this case, and should be excluded.  *See* Fed. R. Evid. 602.

### 4. July Martin Decl. ¶ 25 at 11:18-21

Mr. Martin states that "[i]t is unknown whether Mr. Vail inadvertently failed to review all the reports, or simply elected not to include the following information from the incident report.…"  In addition to being patently unprofessional, this statement is admittedly speculative and without basis in facts or data known to Mr. Martin, and should be stricken.  *See* Fed. R. Evid. 702.

### 5. July Martin Decl. ¶ 30 at 14:4-7

Mr. Martin concludes, "I have reviewed the RVR packets for each of these cited examples and confirmed that in every instance CDCR clinicians completed the Mental Health Assessment Requests and that the hearing officers thereafter provided appropriate consideration of the assessments in order to accommodate the inmates' mental health conditions."  Mr. Martin is providing an opinion as to whether the hearing officers provided "adequate consideration" of Mental Health Assessments and "accommodate[d] the inmates' mental health conditions."  Mr. Martin is not a psychologist, psychiatrist or other mental health professional.  He admitted during his July deposition that he is not qualified to render opinions regarding accommodation or treatment of mental illness.  Rifkin Decl. ¶ 2 & Ex. A (July 23, 2013 Deposition of Steven Martin) (hereinafter "Martin Depo.") at 64:12-23, 127:19-25.  Furthermore, Mr. Martin's January Report and March Declaration have been stricken, and cannot provide foundation for his current opinions.  Mr. Martin therefore lacks the appropriate foundation on which to opine whether a mentally ill inmate's condition was adequately accommodated.  *See* Fed. R. Evid. 602.

### D. Declaration of Michael Stainer, Docket No. 4708 ("Stainer Decl.")

#### 1. Stainer Decl. ¶ 21

In several instances, Mr. Stainer relies on inadmissible hearsay to support his assertions.  Specifically, Mr. Stainer asserts that "all 33 institutions have submitted proof of practice regarding this new training," (Stainer Decl. ¶ 21 at 7:5) and that "all institutions

provided proof of compliance memoranda in accordance with the September 12, 2012 memorandum," (Stainer Decl. ¶ 21 at 7:9-10, 7:17-18, and 7:26-27), but he does not specify the exact nature of such "proof of practice" or "proof of compliance," and no documentary or other evidence is offered. Mr. Stainer's assertions regarding the existence of proof that CDCR has complied with the Office of Inspector General's recommendations is hearsay offered for the truth of its content about CDCR's implementation of recommendations made by the OIG and no hearsay exceptions apply. *See* Fed. R. Evid. 801(c). Such evidence should be excluded.

### 2. Stainer Decl. ¶ 23

Mr. Stainer characterizes a CDCR policy that he fails to attach. His description of the policy's purported content is hearsay, without foundation, and in violation of the Best Evidence Rule, under which the policy should be admitted into evidence to speak for itself. *See* Fed. R. Evid. 401, 602, 1002.

### 3. Stainer Decl. ¶ 24 at 8:25-28

Mr. Stainer states that: "In many controlled use of force situations, the use of chemical agents is preferred… The use of pepper spray in these situations is a result of the reasonable decision to subject an inmate who needs to be extracted from his or her cell to the temporary discomfort of the pepper spray…" This is speculation beyond Mr. Stainer's personal knowledge, and Mr. Stainer provides no documentary evidence or any foundational facts to support this overbroad assertion. This statement should be excluded. Fed. R. Evid. 602.

### 4. Stainer Decl. ¶ 25 at 9:13

Mr. Stainer refers to a memorandum he issued on September 12, 2012, and then concludes that "[t]he Wardens issued this memorandum to their staff, and all institutions provided proof of compliance." However, Mr. Stainer does not identify the nature of such "proof of compliance," nor does he offer any documentary or other evidence to support his assertion. Mr. Stainer's assertion of the existence of proof of CDCR compliance is inadmissible hearsay offered for the truth of its content about CDCR's implementation of

[916578-2]

8

PLAINTIFFS' EVIDENTIARY OBJECTIONS RE DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION RELATED TO USE OF FORCE AND DISCIPLINARY MEASURES

1 Mr. Stainer's recommendations, and violates the best evidence rule under which any such
2 documentation should be entered into evidence to speak for itself.  This evidence should be
3 excluded.  *See* Fed. R. Evid. 801(c), 1002, 1006.

    **5. Stainer Decl. ¶¶ 27-31**

Mr. Stainer lacks personal knowledge to form a foundation for any opinions regarding the current procedures and practice for "management status" at CDCR prisons, and therefore these opinions should be excluded.  *See* Fed. R. Evid. 602.  Mr. Stainer testified during his deposition that the practice of "management status" is governed exclusively by the local operating procedures of each of CDCR's 34 adult institutions.  Rifkin Decl. ¶ 3 & Ex. A (August 15, 2013 Deposition of Michael Stainer) (hereinafter "Stainer Depo.") at 225:10-226:5, 227:18-228:4.  Mr. Stainer acknowledged his statements about management status were not based on personal review of any local operating procedures governing management status or current observations, but, rather, on hearsay from the warden at a single institution.  Stainer Depo at 227:18-230:1.  Mr. Stainer did not review any local operating procedures about management status.  *Id.* at 233:17-234:2, 247:7-10.

In paragraph 29 of his declaration, Mr. Stainer specifically discusses the local operating procedure at Corcoran.  However, during his deposition Mr. Stainer admitted that he did not review this procedure, and that these statements are based on his conversation with the warden at Corcoran.  Stainer Depo. 228:16-229:10.  Mr. Stainer's statements regarding the procedure at Corcoran should be stricken as lacking in foundation and as inadmissible hearsay.  Fed. R. Evid. 602, 801.

  **E. Declaration of Kathleen Allison, Docket No. 4713 ("Allison Decl.")**

    **1. Allison Decl. ¶¶ 39-41.**

Ms. Allison offers statistical information regarding the numbers of Rules Violation Reports issued at Kern Valley State Prison and at California State Prison, Los Angeles County without citing to or attaching any specific evidentiary basis for those numbers.  Moreover, these numbers differ substantially from those Defendants reported to the

PLAINTIFFS' EVIDENTIARY OBJECTIONS RE DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
RELATED TO USE OF FORCE AND DISCIPLINARY MEASURES

1  Special Master for the same time periods.  Ms. Allison was unable to explain during her
2  deposition on what basis or through what process the data reported in her declaration was
3  obtained and compiled, or whether and how it was modified from that provided to the
4  Special Master.  Rifkin Decl. ¶ 4 & Ex. C (August 15, 2013 Deposition of Kathleen
5  Allison) at 262:6-263:19.  Her declaration testimony is patently unreliable and without
6  foundation, and should be excluded.  Fed. R. Evid. 401, 602, 701.

DATED:  August 23, 2013            Respectfully submitted,

ROSEN BIEN GALVAN & GRUNFELD LLP

By: */s/ Lori E. Rifkin*
    Lori E. Rifkin

Attorneys for Plaintiffs

[916578-2]

10
PLAINTIFFS' EVIDENTIARY OBJECTIONS RE DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION RELATED TO USE OF FORCE AND DISCIPLINARY MEASURES