DONALD SPECTER – 083925
STEVEN FAMA – 099641
PRISON LAW OFFICE
1917 Fifth Street
Berkeley, California 94710-1916
Telephone: (510) 280-2621

MICHAEL W. BIEN – 096891
JANE E. KAHN – 112239
ERNEST GALVAN – 196065
THOMAS NOLAN – 169692
LORI E. RIFKIN – 244081
AARON J. FISCHER – 247391
MARGOT MENDELSON – 268583
KRISTA STONE-MANISTA – 269083
ROSEN BIEN GALVAN & GRUNFELD LLP
315 Montgomery Street, Tenth Floor
San Francisco, California 94104-1823
Telephone: (415) 433-6830

JON MICHAELSON – 083815
JEFFREY L. BORNSTEIN – 099358
LINDA L. USOZ – 133749
MEGAN CESARE-EASTMAN – 253845
K&L GATES LLP
4 Embarcadero Center, Suite 1200
San Francisco, California 94111-5994
Telephone: (415) 882-8200

CLAUDIA CENTER – 158255
THE LEGAL AID SOCIETY –
EMPLOYMENT LAW CENTER
180 Montgomery Street, Suite 600
San Francisco, California 94104-4244
Telephone: (415) 864-8848

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al., <br><br> Plaintiffs, <br><br> v. <br><br> EDMUND G. BROWN, JR., et al., <br><br> Defendants. | Case No. Civ S 90-0520 LKK-JFM <br><br> **OPPOSITION TO MOTION TO STAY JULY 11, 2013 ORDER PENDING APPEAL** <br><br> Judge: Hon. Lawrence K. Karlton |

[916463-5]

OPPOSITION TO MOTION TO STAY JULY 11, 2013 ORDER PENDING APPEAL

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND ............................................................. 2

ARGUMENT ............................................................................................................................ 4

I. DEFENDANTS' STAY APPLICATION MUST BE DENIED BECAUSE DEFENDANTS HAVE FAILED TO PRESENT EVIDENCE OF IRREPARABLE HARM, THE BALANCE OF EQUITIES TIPS IN PLAINTIFFS' FAVOR, AND DEFENDANTS ARE UNLIKELY TO SUCCEED ON THE MERITS .................................................................................. 4

   A. Defendants Fail to Establish that the Denial of a Stay Would Cause Irreparable Injury ............................................................................................ 5

   B. Issuance of the Stay Will Substantially Injure the Other Parties Interested in the Proceeding and the Public Interest Tips Strongly In Favor of Denial of the Stay ....................................................................... 6

   C. Defendants Have Failed to Establish Any Likelihood of Success on the Merits ................................................................................................ 8

      1. The Appellate Court Lacks Jurisdiction Over Defendant's Appeal Because the Order Appealed Does Not Finally Resolve the Issue and Leaves More for the Court and the Special Master To Do ................................................................................ 8

      2. The Court's Order Directing Investigation of DSH Facilities Is Well Within the Established Authority of the Special Master ............. 9

      3. Monitoring by the Special Master Is Not Prospective Relief Under the PLRA .................................................................................. 11

      4. The Court's Order Is Supported by PLRA Findings .......................... 12

**CONCLUSION** ................................................................................................................... 13

# TABLE OF AUTHORITIES

**Page**

## CASES

*Adriana Int'l Corp. v. Lewis & Co.*,
    913 F.2d 1406 (9th Cir. 1990) .................................................................................... 10

*Benjamin v. Fraser*,
    156 F. Supp. 2d 333 (S.D.N.Y. 2001) ........................................................................ 11

*Caiozzo v. Koreman*,
    581 F.3d 63 (2d Cir. 2009) ......................................................................................... 11

*Carruthers v. Jenne*,
    209 F. Supp. 2d 1294 (S.D. Fla. 2002) ....................................................................... 11

*Cohen v. Beneficial Indus. Loan Corp.*,
    337 U.S. 541 (1949) ..................................................................................................... 8

*Coleman v. Brown*,
    428 F. App'x 743 (9th Cir. 2011) ............................................................................... 12

*Coleman v. Wilson*,
    933 F. Supp. 954 (E.D. Cal. 1996) ............................................................................. 11

*Conkright v. Frommert*,
    556 U.S. 1401 (2009) ................................................................................................... 6

*Coopers & Lybrand v. Livesay*,
    437 U.S. 463 (1978) ..................................................................................................... 8

*Cordoza v. Pac. States Steel Corp.*,
    320 F.3d 989 (9th Cir. 2003) ........................................................................................ 8

*Harris v. Bd. of Supervisors, Los Angeles County*,
    366 F.3d 754 (9th Cir. 2004) ........................................................................................ 7

*Humane Soc. of U.S. v. Gutierrez*,
    558 F.3d 896 (9th Cir. 2009) ........................................................................................ 4

*Lair v. Bullock*,
    697 F.3d 1200 (9th Cir. 2012) ...................................................................................... 4

*McElmurry v. U.S. Bank Nat'l Ass'n*,
    495 F.3d 1136 (9th Cir. 2007) ...................................................................................... 8

*Melendres v. Arpaio*,
    695 F.3d 990 (9th Cir. 2012) ........................................................................................ 7

*Natural Res. Def. Council, Inc. v. Winter*,
    502 F.3d 859 (9th Cir. 2007) ........................................................................................ 4

*Nken v. Holder*,
  556 U.S. 418 (2009) .................................................................................. 4, 5, 6

*Protect Our Water v. Flowers*,
  377 F. Supp. 2d 882 (E.D. Cal. 2004) ................................................................ 4, 13

*Rodriguez v. Robbins*,
  715 F.3d 1127 (9th Cir. 2013) .................................................................................. 8

*Saldate v. Adams*,
  573 F. Supp. 2d 1303 (E.D. Cal. 2008) ..................................................................... 4

*Sampson v. Murray*,
  415 U.S. 61 (1974) ..................................................................................................... 6

*Sharp v. Weston*,
  233 F.3d 1166 (9th Cir. 2000) ................................................................................ 13

*Sierra Forest Legacy v. Rey*,
  691 F.Supp.2d 1204 (E.D. Cal. 2010) ...................................................................... 4

*United States v. Clifford Matley Family Trust*,
  354 F.3d 1154 (9th Cir. 2004) ................................................................................ 10

*United States v. One 1986 Ford Pickup*,
  56 F.3d 1181 (9th Cir. 1995) .................................................................................... 8

United States v. Raines,
  362 U.S. 17 (1960) ..................................................................................................... 7

*Wilson v. U.S. Dist. Court for the E. Dist. of Cal.*,
  103 F.3d 828 (9th Cir. 1996) .................................................................................. 11

*Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008) ............................................ 5, 6

*Wood v. GCC Bend, LLC*,
  422 F.3d 873 (9th Cir. 2005) .................................................................................... 9

## **STATUTES**

18 U.S.C. § 3626(a)(1)(a) ........................................................................................................ 11

## **RULES**

Fed. R. Civ. P. 53(f)(2) ............................................................................................................. 9

Fed. R. Civ. P. 62(c) ................................................................................................................. 4

[916463-5]

# TABLE OF ABBREVIATIONS

| | |
|---|---|
| CDCR | California Department of Corrections and Rehabilitation |
| DSH | Department of State Hospitals |
| ICF | Intermediate Care Facility |
| PLRA | Prison Litigation Reform Act |
| SVPP | Salinas Valley Psychiatric Program |

# INTRODUCTION

Defendants have asked this Court to stay its July 11, 2013 Order directing the Special Master to monitor Department of State Hospital ("DSH") programs for *Coleman* class members. The stay motion fails all of the applicable standards and must be denied.

Plaintiffs have demonstrated that conditions in the inpatient psychiatric hospitals operated by the DSH have fallen far below constitutional minima. Extended waits for admission to DSH programs persist. Once admitted, patients find themselves subjected to punitive custodial practices, often spending weeks isolated on lockdown status with virtually no mental health treatment. Severe system-wide staffing shortages have rendered mental health treatment at DSH facilities extremely limited and perfunctory. Rates of injuries to staff and patients have risen as staffing shortages have intensified. DSH has failed even to provide for its patients' basic human needs like clean underwear, soap, and laundered sheets. These deficiencies have had tragic consequences. In the past year, two *Coleman* class members have died at Salinas Valley Psychiatric Program, including the first suicide in the history of the program.

After three months, extensive briefing, and a four-day trial, the Court issued an Order on July 13, 2013 characterizing the conditions at DSH facilities as "urgen[t]." Docket No. 4688, at 12. The Court found significant evidence of the inadequacy of "critical aspects of inpatient care currently provided to members of the plaintiffs class" at inpatient programs operated by DSH. *Id.* at 11. Rather than ordering affirmative relief, the Court directed the Special Master to focus his ongoing monitoring efforts on the conditions and provision of mental health care at DSH facilities. The Court affirmed "the authority and the duty [of Special Master] to monitor all programs for the provision of inpatient mental health care to the plaintiff class." *Id.* In recognition of "the urgency of the issues tendered by plaintiffs," the Court directed the Special Master to report on conditions at the Salinas Valley Psychiatric Program ("SVPP") within 75 days and subsequently to make specific findings and recommendations regarding the "adequacy of all inpatient programs" by March 31, 2014. *Id.* at 11-12.

Now, in the face of overwhelming evidence of constitutional violations and an Order that merely affirms the Special Master's well-established monitoring role, Defendants seek a stay of the order pending appeal, claiming it is *they* who face irreparable injury. Defendant's motion must be denied because Defendants have not and cannot meet their burden of establishing that irreparable harm would flow from the implementation of the Court's Order, which calls only for monitoring by the Special Master. Moreover, Defendants are unable to establish even a remote likelihood of success on the merits, in no small part because their appeal improperly seeks review of an order over which the Court of Appeals lacks jurisdiction.

## FACTUAL AND PROCEDURAL BACKGROUND

Inpatient psychiatric hospitalization has been at issue since the beginning of *Coleman*. The Court has recognized, and Defendants do not dispute, that providing adequate inpatient psychiatric care is a constitutional mandate. "[A]ccess to necessary and constitutionally adequate levels of care for the most seriously mentally ill inmates in the CDCR" is a fundamental element of the *Coleman* remedy. 5/2/06 Order, Docket No. 1800 at 2. To address the persistence of major shortcomings in inpatient psychiatric care, the Court specifically named the Department of State Hospitals (formerly the Department of Mental Health) as a Defendant in this case in 2006. 6/28/06 Order, Docket No. 1855.

As the Court recounted in detail in its July 11, 2013 Order, lack of compliance has required the Court to issue numerous orders regarding access to and care at DSH facilities. These orders have addressed staffing allocations and vacancies at DSH-run programs (*see, e.g.*, 2/7/07 Order, Docket No. 2134), salary and pay parity for DSH clinicians providing care to *Coleman* class members (*see, e.g.*, *id.*; 5/23/07 Order, Docket No. 2237), sufficiency of treatment and counseling space for inpatient programs (*see, e.g.*, 10/18/07 Order, Docket No. 2461), access to inpatient beds for *Coleman* class members (*see, e.g.*, 8/8/08 Order, Docket No. 2930), and transfer timelines for referrals of patients to inpatient care (*see, e.g.*, 7/26/99 Order, Docket No. 1055; 4/4/01 Order, Docket No. 1262). *See also* 8/8/08 Order, at 2-3, n.1 (cataloging Court's previous orders related to psychiatric

hospitalization). Most recently, in denying the State's motion to terminate the *Coleman* case, the Court made special reference to the provision of inpatient psychiatric hospitalization, describing "the unconscionable delays in access to inpatient care" as "one of the most tragic failures in the delivery of mental health care." 4/5/13 Order, Docket No. 4539, at 50.

During the recent four-day trial, Plaintiffs' expert psychiatrist testified that the extremely poor quality and quantity of mental health treatment at DSH facilities is causing needless harm and suffering to *Coleman* class members and that the DSH staffing ratio is well below any reasonable standard for inpatient care. Plaintiffs presented evidence that DSH intentionally reduced the treatment team ratio for its intermediate care facilities ("ICF") as a cost savings measure. A former DSH psychiatrist testified that enormous caseloads prevented him from providing minimally adequate psychiatric care to his patients, and that DSH administrators pressured him to prematurely discharge patients despite clinical indications that they required continuing care. Plaintiffs demonstrated that Defendants misreport DSH staffing data and manipulate waitlist data to minimize the appearance of long delays in access to inpatient care. Plaintiffs also presented expert testimony that DSH's punitive custodial policies are excessive and unnecessary. Defendants' witnesses confirmed the use of prolonged periods of highly restrictive "orientation status," as well as a history of staffing shortages and inadequate provision of clothing and linens.

After considering the evidence, the Court elected to investigate conditions further before issuing final orders. The Court directed the Special Master, under the authority of the 1995 Order of Reference, to focus his ongoing investigations on DSH facilities. The Order required nothing more from Defendants than their continued cooperation with the Special Master's monitoring activities.

**ARGUMENT**

### I. DEFENDANTS' STAY APPLICATION MUST BE DENIED BECAUSE DEFENDANTS HAVE FAILED TO PRESENT EVIDENCE OF IRREPARABLE HARM, THE BALANCE OF EQUITIES TIPS IN PLAINTIFFS' FAVOR, AND DEFENDANTS ARE UNLIKELY TO SUCCEED ON THE MERITS

An injunction pending appeal is "an extraordinary remedy that should be granted sparingly." *Sierra Forest Legacy v. Rey*, 691 F.Supp.2d 1204, 1207 (E.D. Cal. 2010) (internal quotation and citation omitted). Federal Rule of Civil Procedure 62(c) reflects a trial court's "inherent power during the pendency of an appeal to act to preserve the status quo to ensure the effectiveness of the eventual judgment." *Protect Our Water v. Flowers*, 377 F. Supp. 2d 882, 883 (E.D. Cal. 2004).

The standard governing an application for stay pending appeal is the same as the standard for a preliminary injunction. *See Natural Res. Def. Council, Inc. v. Winter*, 502 F.3d 859, 865 (9th Cir. 2007). Courts must assess: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. *Nken v. Holder*, 556 U.S. 418, 434 (2009); *Humane Soc. of U.S. v. Gutierrez*, 558 F.3d 896, 896 (9th Cir. 2009).

In all cases, granting a stay is "an exercise of judicial discretion, and the propriety of its issue is dependent upon the circumstances of the particular case." *Nken*, 556 U.S. at 433 (internal quotations and alterations omitted). The party seeking a stay bears the burden as to all elements of the legal standard as well as the exercise of the court's discretion. *See Lair v. Bullock*, 697 F.3d 1200, 1203 (9th Cir. 2012); *Saldate v. Adams*, 573 F. Supp. 2d 1303, 1314 (E.D. Cal. 2008) ("A party seeking a stay of a lower court's order bears a difficult burden.") (internal quotations omitted).

### A. Defendants Fail to Establish that the Denial of a Stay Would Cause Irreparable Injury

"A stay is an intrusion into the ordinary processes of administration and judicial review," *Nken*, 556 U.S. at 427 (citations omitted), and the party seeking relief must "demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).

Defendants' dilatory pursuit of their appeal and stay is not consistent with any threat of irreparable injury. Defendants waited a full month—until the last possible day—to file their notice of appeal and stay motion. Docket No. 4742. During that month a substantial amount of the Special Master's work under the appealed order has already taken place. By their own account, Defendants participated in several meetings and phone calls with the Special Master and Plaintiffs' counsel relating to the Special Master's obligation to monitor and report on the conditions and adequacy of mental health care at DSH facilities. *See* Declaration of G. Maynard in Support of Defendants' Motion to Stay July 11, 2103 Order Pending Appeal ("Maynard Decl."), Docket No. 4743 at 2-5. Six of the nine scheduled days of on-site monitoring at SVPP took place between July 31 and August 7, 2013, before Defendants even appealed the Court's Order. *See id* at 3-5. To date, Defendants have participated in all three of the Special Master's planned site visits to SVPP, including one in which Plaintiffs' counsel was present.[1] *See id*.; Declaration of Margot Mendelson in Support of Opposition to Motion to Stay July 11, 2013 Order Pending Appeal ("Mendelson Decl.") ¶ 5. If all this somehow inflicts "irreparable injury," Defendants have already suffered much of the "injury" during the weeks they waited to bring their appeal and stay motion.

As evidence of irreparable harm, Defendants allege that compliance with the Special Master's monitoring requires "considerable administrative effort and expense."

---

[1] The Special Master concluded its monitoring of SVPP on August 22, 2013. *See Maynard Decl.* at 3.

Defendants' Notice of Motion and Motion to Stay July 11, 2013 Order Pending Appeal ("Stay Motion"), Docket No. 4742, at 8. In other words, the administrators who are facilitating the Special Master's investigation into the constitutional adequacy of care at DSH facilities could be doing other things during that time. According to Defendants, the opportunity cost of complying with Special Master monitoring is an irreparable injury that should outweigh the harms Plaintiffs would experience if these matters went uninvestigated.

Such exertions do not count as irreparable harm. *See Sampson v. Murray*, 415 U.S. 61, 90 (1974); *Conkright v. Frommert*, 556 U.S. 1401 (2009) (denying motion for stay). The Supreme Court has emphasized that in the stay analysis, "[m]ere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough." *Sampson*, 415 U.S. at 90. Here, Defendants offer nothing more than "money, time and energy … expended" as evidence of irreparable injury.

Relief in the form of a stay pending appeal is extraordinary, and it is intended for extraordinary circumstances and injuries—not ordinary administrative activities. Where, as here, regular monitoring by a Special Master has been ongoing for more than 17 years, it simply does not constitute the irreparable harm required for issuance of a stay.

**B.     Issuance of the Stay Will Substantially Injure the Other Parties Interested in the Proceeding and the Public Interest Tips Strongly In Favor of Denial of the Stay**

In assessing the appropriateness of a stay, courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S at 24 (internal quotation marks omitted). Likewise, courts are tasked with determining "where the public interest lies." *Nken*, 556 U.S. at 434.

Prisoners in California's psychiatric hospitals are languishing in lockdown conditions without access to basic mental health treatment and are forced to wear soiled underwear for days or even weeks in a row. Last month, the Executive Director of the

1  Atascadero State Hospital described the hospital as experiencing "a staffing crisis" and
2  observed that eight psychiatrists were "carrying the workload of at least 35 doctors."
3  Mendelson Decl. ¶ 4 & Ex. C (Aug. 2, 2013 Email from Michael Bien to Defendants and
4  Special Master Team).  This month, Plaintiffs observed patients at SVPP who have been
5  held in highly restrictive "cuff status" and denied mental health programming for two to
6  four months due to their MAX custody status. *Id*. ¶ 6 & Ex. D (Aug. 23, 2013 Email from
7  Jane Kahn to Defendants and Special Master Team).  Defendants continue to deny
8  appropriate treatment to DSH patients by transferring them to CDCR prisons despite open
9  beds at SVPP and Vacaville Psychiatric Program. *Id*. ¶ 2 & Ex. A (July 26, 2013 Email
10 from Jane Kahn to Defendants and Special Master Team).  Defendants' assertion that
11 "there is no likelihood that the plaintiff class will be injured" by the issuance of a stay
12 stands in stark contrast to the evidentiary record and the Court's considered finding that the
13 conditions at DSH facilities require "urgen[t]" attention. *Compare* Stay Motion, at 11,
14 *with* 7/11/13 Order, at 12.

15  The injuries that Plaintiffs are suffering, and will continue to suffer in the absence
16 of action by this Court, are of the greatest magnitude.  At stake is human life and human
17 dignity.  Even if administrative exertions *were* cognizable as an irreparable injury, it is
18 hard to imagine a circumstance in which those interests would outweigh the stark, ongoing
19 injuries to a plaintiff class deprived of minimally adequate mental health care. *See Harris*
20 *v. Bd. of Supervisors, Los Angeles County*, 366 F.3d 754, 766 (9th Cir. 2004) ("Faced with
21 a conflict between financial concerns and preventable human suffering, the court has little
22 difficulty concluding that the balance of hardships tips decidedly in plaintiffs' favor.")
23 (alterations and citations omitted).

24  Moreover, the deprivation of constitutional rights is itself a form of irreparable
25 injury, the correction and prevention of which is "always in the public interest."
26 *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (internal quotation marks and
27 citations omitted); *see also United States v. Raines*, 362 U.S. 17, 27 (1960) "[T]here is the
28 highest public interest in due observance of all the constitutional guarantees …");

*Rodriguez v. Robbins*, 715 F.3d 1127, 1144 (9th Cir. 2013) ("[I]t is well established that the deprivation of constitutional rights unquestionably constitutes irreparable injury.") (internal quotations omitted).

### C. Defendants Have Failed to Establish Any Likelihood of Success on the Merits

#### 1. The Appellate Court Lacks Jurisdiction Over Defendant's Appeal Because the Order Appealed Does Not Finally Resolve the Issue and Leaves More for the Court and the Special Master To Do

The Court's July 11, 2013 Order is not an appealable order. As a general rule, appellate courts lack jurisdiction to review district court rulings until after the entry of a final judgment. *See Coopers & Lybrand v. Livesay,* 437 U.S. 463, 474 (1978). To qualify in the "small class" of orders reviewable under the collateral order exception, *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949), an order must: "[1] conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] be effectively unreviewable on appeal from a final judgment." *Cordoza v. Pac. States Steel Corp.*, 320 F.3d 989, 997 (9th Cir. 2003). "[C]ollateral jurisdiction requires all three elements," and a court "lack[s] collateral order jurisdiction if even one is not met." *McElmurry v. U.S. Bank Nat'l Ass'n*, 495 F.3d 1136, 1140 (9th Cir. 2007).

While post-judgment orders may be more amenable to appellate review, review of the instant order would contravene the very "foundation" of the final judgment rule—the avoidance of "piecemeal litigation." *United States v. One 1986 Ford Pickup*, 56 F.3d 1181, 1184 (9th Cir. 1995). Far from conclusively determining disputed issues as to the adequacy of inpatient care, the Court denied Plaintiffs' motion for additional orders and ordered further investigation to reach a determination. The Court's Order expressly contemplated the entry of future orders by opting to "rel[y] on the Special Master's monitoring, reporting and recommendations *before entering specific remedial orders.*" 7/11/13 Order, at 13 (emphasis added). Consequently, appellate review of this Court's Order before a final determination is reached on the issue of inpatient care and before any

1 affirmative relief is prescribed would be premature and wasteful, and would violate "the
2 historic federal policy against piecemeal appeals." *Wood v. GCC Bend, LLC*, 422 F.3d
3 873, 878 (9th Cir. 2005).

4     Of course, Defendants are not without recourse to challenge the Special Master's
5 findings or any subsequent remedial orders. Should the Defendants wish to object to the
6 Special Master's findings once made, there is a clear process by which they are able to do
7 so. Rule 53 expressly provides that "[a] party may file objections to—or a motion to adopt
8 or modify—the master's order, report, or recommendations no later than 21 days after a
9 copy is served." Fed. R. Civ. P. 53(f)(2). This procedure has been followed assiduously
10 for over 17 years in the *Coleman* case and represents the appropriate mechanism for
11 addressing concerns about the Special Master's monitoring.

### 2. The Court's Order Directing Investigation of DSH Facilities Is Well Within the Established Authority of the Special Master

14     Defendants argue that the Court's Order exceeds the scope of the Special Master's
15 powers because "DSH's provision of mental-health care was never subject to the Special
16 Master's supervisory powers." Stay Motion, at 6. Defendants claim that "the Court
17 acknowledged that 'it has never found DSH provides inadequate care to class members.'"
18 *Id.* (quoting 7/11/13 Order, at 7.) But this assertion blatantly mischaracterizes the Court's
19 Order, which actually reads: "*Defendants' assertion* that the court has never found that
20 DSH provides inadequate care to class members *misses the mark*." 7/11/13 Order, at 7
21 (emphasis added).

22     The Special Master Order of Reference directs the Special Master to monitor
23 implementation of the *Coleman* remedy. 7/11/13 Order, at 4-5 (quoting Order of
24 Reference, Docket No. 639, at 4-5).[2] The *Coleman* remedy includes implementation of the

---

[2] At the time the order of reference was proposed, Defendants had an opportunity to object to the scope of the order. They did so, and the Court reviewed their objections *de novo*. *See* Order of Reference, at 1-3. To the extent Defendants now wish to object to the scope (footnote continued)

*Coleman* Program Guide—which prominently includes requirements for inpatient psychiatric hospital care. *See Coleman* Program Guide, Chapter 6, entitled "Department of Mental Health Inpatient Program." Among other things, the Program Guide memorializes the contractual relationship between CDCR and DSH and CDCR's broad powers over the inpatient care provided to CDCR inmates. 7/11/13 Order, at 5 (quoting *Coleman* Program Guide, Ch. 6.) As the Court's Order recognizes, "[t]he inpatient programs are included in defendants' plan to remedy the Eighth Amendment violation in this case. Monitoring defendants' implementation of and compliance with that part of defendants' remedial plan … are all plainly within the Special Master's duties under the Order of Reference." *Id.* at 7.

Defendants' efforts to undermine the Special Master's established role are contradicted by the Order of Reference and the broad powers granted to special masters under the Federal Rules of Civil Procedure. "As the text of the rule indicates, Rule 53 grants special masters broad authority 'to regulate all proceedings in every hearing' and to 'do all acts and take all measures necessary or proper for the efficient performance of [their] duties.'" *United States v. Clifford Matley Family Trust*, 354 F.3d 1154, 1160 (9th Cir. 2004). The Ninth Circuit has concluded that "[t]he history of Rule 53 supports a broad interpretation of a special master's authority to determine the appropriate procedures for completing his assigned duties." *Id.*

In sum, Defendants have established no likelihood of success on the merits of their specious argument that the Special Master—who operates as an arm of the Court—is acting outside the scope of his mandate.

---

of the Order of Reference, such objections are waived as untimely. *See Adriana Int'l Corp. v. Lewis & Co.*, 913 F.2d 1406, 1410 (9th Cir. 1990) ("[An] objection to the appointment of a special master must be made at the time of the appointment or within a reasonable time thereafter or the party's objection is waived.").

### 3. Monitoring by the Special Master Is Not Prospective Relief Under the PLRA

Based on the flawed premise that the Court's Order represents a new assertion of the Special Master's authority, Defendants argue that the appellate court is likely to vacate the Court's Order because "it contravenes the PLRA's restrictions on prospective relief." Stay Motion, at 5. Specifically, Defendants contend that the Court failed to make the requisite findings under the PLRA to support prospective relief.[3] Defendants fail to recognize that monitoring by the Special Master is *not* prospective relief, and thus the PLRA "restrictions" on such relief have no application here. "[C]ourts have treated the means of obtaining relief differently than the relief itself." *Carruthers v. Jenne*, 209 F. Supp. 2d 1294, 1300 (S.D. Fla. 2002). Accordingly, "monitoring cannot be considered 'prospective relief' under the PLRA." *Id.* In other words, to consider the Special Master's monitoring of conditions as a form of prospective relief under the PLRA would "conflate relief [under the PLRA] with the means to guarantee its provision." *Benjamin v. Fraser*, 156 F. Supp. 2d 333, 342 (S.D.N.Y. 2001) *overruled on non-relevant grounds by Caiozzo v. Koreman*, 581 F.3d 63 (2d Cir. 2009). Indeed, this Court has previously concluded that a special master appointed before the enactment of the PLRA does not constitute prospective relief under the Act. *Coleman v. Wilson*, 933 F. Supp. 954, 957 (E.D. Cal. 1996), *aff'd by Wilson v. U.S. Dist. Court for the E. Dist. of Cal.*, 103 F.3d 828, 830 (9th Cir. 1996).

To require district courts to make new PLRA findings for each specific task to which they direct a special master would be unworkable and inconsistent with the broad role of the special master. Defendants offer no authority for the novel proposition that

---

[3] The PLRA provides that courts "shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(a)(1)(a).

express PLRA findings are required for every investigation a court directs its special master to undertake. The purpose of the Special Master's monitoring, in this case as in all such cases, is to assist the Court in determining what prospective relief is appropriate. The monitoring itself is not prospective relief, and Defendants' argument must be rejected.

### 4. The Court's Order Is Supported by PLRA Findings

Even if the Court were required to make PLRA findings each time it provides direction to its own Special Master, the July 11, 2013 Order would easily survive judicial review. The Order identified major areas in which Defendants have failed to comply with the Constitution and affirmed the centrality of the DSH inpatient programs to the remedy for the well-established Eighth Amendment violations in this case. 7/11/13 Order, at 7-11. In addition to identifying specific areas of constitutional concern, the Court expressly elected to act in the narrowest and least intrusive manner possible—by deploying the Special Master to investigate under his existing authorities, rather than prescribing affirmative relief. *See id.* at 13 (finding it "prudent" to "rel[y] on the Special Master's monitoring, reporting and recommendations before entering specific remedial orders.").

Moreover, the Order expressly references multiple findings of constitutional violations related to DSH, which have been affirmed by the Ninth Circuit as recently as 2011. *See Coleman v. Brown*, 428 F. App'x 743, 744 (9th Cir. 2011). That case is instructive. In 2011, when challenging this Court's order directing accelerated admissions for hospitalization at SVPP, Defendants made the same argument that the district court had failed to make the requisite PLRA findings to support the relief ordered. The Ninth Circuit rejected the challenge on the ground that the "record contains ample evidence of the unconstitutional conditions under which the over 400 seriously mentally ill inmates in the plaintiff class languished, as defendants repeatedly failed to comply with the district court's previous orders to provide them with the necessary inpatient hospital care." *Id.* In upholding the order, the Ninth Circuit observed that "the district court expressly relied on its orders in the expansive record in this case, spanning over two decades and thousands of entries." *Id.* The same is true here, where the order itself is even more routine and

1 discrete.

2       Finally, the Court's Order represents a fact-intensive judicial determination, which would be reviewed on a highly deferential standard. *See Sharp v. Weston*, 233 F.3d 1166, 1174 (9th Cir. 2000) (granting special deference to the district court's order "[i]n light of the history of [Defendant's] noncompliance with prior orders and the deference which we must give to the district judge in fashioning the scope of the remedy.").

## CONCLUSION

Defendants seek an extraordinary remedy that is appropriate when a court has "ruled on an admittedly difficult legal question and the equities of [a] case suggest that the status quo should be maintained" pending a lengthy appeal process. *Protect Our Water*, 377 F. Supp. 2d at 884. Such circumstances do not exist here. The status quo at DSH facilities involves needless suffering, excessive punishment, enormous deprivations, and even loss of life. After reviewing extensive documentary and testimonial evidence, as well as months of briefing, this Court has determined that urgent action is required to address these conditions. In the face of these stark realities, Defendants' attempt to obstruct the Special Master's investigation of DSH must be denied.

DATED: August 28, 2013        Respectfully submitted,

ROSEN BIEN GALVAN & GRUNFELD LLP

By: */s/ Margot Mendelson*
     Margot Mendelson

Attorneys for Plaintiffs

[916463-5]
13
OPPOSITION TO MOTION TO STAY JULY 11, 2013 ORDER PENDING APPEAL