KAMALA D. HARRIS
Attorney General of the State of California
JONATHAN L. WOLFF
Senior Assistant Attorney General
JAY C. RUSSELL
Supervising Deputy Attorney General
DEBBIE VOROUS - 166884
PATRICK McKINNEY - 215228
MANEESH SHARMA - 280084
Deputy Attorneys General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
Telephone: (415) 703-5500
Facsimile: (415) 703-5843
Email: Patrick.McKinney@doj.ca.gov

HANSON BRIDGETT LLP
JERROLD C. SCHAEFER - 39374
PAUL B. MELLO - 179755
WALTER R. SCHNEIDER - 173113
SAMANTHA D. WOLFF - 240280
MEGAN OLIVER THOMPSON - 256654
425 Market Street, 26th Floor
San Francisco, California 94105
Telephone: (415) 777-3200
Facsimile: (415) 541-9366
pmello@hansonbridgett.com

Attorneys for Defendants

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

## AND THE NORTHERN DISTRICT OF CALIFORNIA

## UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

## PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| RALPH COLEMAN, et. al.,<br><br>Plaintiffs,<br><br>v.<br><br>EDMUND G. BROWN, JR., et al.,<br><br>Defendants. | CASE NO. 2:90-cv-00520 LKK JFM P<br><br>**THREE-JUDGE COURT** |
| MARCIANO PLATA, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>EDMUND G. BROWN JR., et al.,<br><br>Defendants. | CASE NO. C01-1351 TEH<br><br>**THREE-JUDGE COURT**<br><br>**DEFENDANTS' STATUS REPORT IN RESPONSE TO JUNE 30, 2011, APRIL 11, 2013, AND JUNE 20, 2013 ORDERS** |

Defendants are continuing to diligently develop the measures in the court-ordered plan. (Decl. Jeffrey Beard Supp. Aug. 29 Status Report (Beard Decl.) ¶ 2.)

Defendants, however, have recently begun to pursue an additional means of complying with the population cap to avoid placing undue stress on the state's criminal justice system. (*Id.*) The amended court-ordered plan will result in the release of thousands of inmates by the end of the year, either through the implementation of retroactive credits or the early-release system. (Beard Decl. ¶ 3.) Local officials, including sheriffs, police chiefs, probation chiefs, district attorneys, mental health providers, county alcohol and drug administrators, and county supervisors, have advised Defendants that they are facing enormous challenges just carrying out the far reaching mandates of Realignment, California's historic prison reform. (*Id.*) They have repeatedly warned Defendants that they lack the institutional capacity at this time to absorb more offenders than they are currently handling under Realignment. (*Id.*) Releasing inmates into communities that lack resources to provide the necessary supervision, treatment, and reentry services will degrade existing services, heighten risks to public safety, and make it far more difficult to build upon Realignment with further lasting reforms. (*Id.*) For all of these reasons, the Legislature is now actively engaged in considering additional prison capacity and further longer term solutions. (*Id.*)

On August 27, 2013, Governor Edmund G. Brown Jr., joined by Assembly Speaker John A. Perez, Republican leaders from both legislative houses, and top law enforcement and local government officials, announced pending legislation to eliminate the need for the mass release of inmates while committing the State to develop more thoughtful, longer term reforms to address prison capacity, control the prison population, and reduce recidivism. (Beard Decl. ¶ 4.) This legislation is currently under consideration in the Assembly.[1] (*Id.*) The legislation will provide an immediate means of achieving compliance with the population cap by authorizing the State to lease additional prison capacity in California and in private prisons out of state. (*Id.*) Moreover,

---

[1] On August 29, 2013, the Assembly Budget Committee approved the legislation for consideration by the full Assembly. (Beard Decl. ¶ 4.)

the legislation expressly requires the State to build upon the significant criminal justice improvements that have already been achieved:

> The additional prison capacity authorized by this bill is an immediate measure to avoid early release of inmates and allow the state to comply with the federal court order.  The measure will also provide time to develop additional thoughtful, balanced and effective long-term solutions with input from our local government and justice partners who are still adjusting to the recent criminal justice reforms of realignment.  The long term changes will build upon the transition of lower level offenders to local jurisdiction, the construction of new prison health care facilities, and improvements to existing health care facilities throughout the prison system.  The administration shall begin immediately, in consultation with stakeholders, including appropriate legislative committees, to assess the state prison system, including capacity needs, prison population levels, and recidivism rates and, factors affecting crime levels.  Not later than January 10, 2015, the Department of Finance shall develop and report to the Legislature regarding balanced solutions that are cost effective and protect public safety.

(*Id.*; Senate Bill 105, sec. 1, attached as Ex. A to Beard Decl.)

Because a reduction of the prison population necessarily shifts responsibility for offenders who would otherwise be in prison to local officials, successful and durable reforms must be developed in collaboration with law enforcement and local government leaders.  (Beard Decl. ¶ 5.)  If enacted, this legislation will meet the immediate requirement of the population cap while allowing substantial reforms to be developed in a manner that will ensure their durability.  (*Id.*)

As for the current state prison population, Exhibit A sets forth the current design bed capacity, population, and population as a percentage of design bed capacity for each state prison and for all state prisons combined.  Exhibit A shows that as of August 21, 2013, 119,792 inmates were housed in the State's 34 adult institutions, which amounts to 146.9% of design bed capacity.[2]

**COURT-ORDERED AMENDED POPULATION REDUCTION PLAN**

I.      **MEASURES IN THE COURT'S AMENDED PLAN**

        A.      **New Construction**

---

[2] The data in Exhibit A is taken from CDCR's August 21, 2013 weekly population report, available on CDCR's Web site at http://www.cdcr.ca.gov/Reports_Research/Offender_Information_Services_Branch/WeeklyWed/TPOP1A/TPOP1Ad130724.pdf

Defendants began admitting patients to the California Health Care Facility in Stockton on July 22, 2013. (Toche Decl. Supp. Aug. 1 Status Report, ECF 2690/4728 ¶ 2.) Inmates with the most severe and long-term medical care and mental health needs are treated at the Stockton facility. *See* California Department of Corrections and Rehabilitation, http://www.cdcr.ca.gov/Facilities_Locator/CHCF.html (last visited August 15, 2013). As of August 21, 2013, 368 inmates have been transferred to CHCF-Stockton. (Exhibit A.)

### B. Expanding Fire Camp Capacity

As Defendants reported in the July 18, 2013 Status Report, this measure has been accomplished. (ECF 2679/4697 at 2-3.) CDCR currently houses 3,951 inmates in fire camps. (Exhibit A.) CDCR intends to continue to house at least 3,800 inmates in fire camps consistent with the Court's Amended Plan. (ECF 2679/4697 at 2-3.)

### C. Increasing Prison Credits

CDCR has developed a tentative process to implement increased prison credits and to address related logistical and policy concerns. (Decl. Toche Supp. Aug. 29 Status Report (Toche Decl.) ¶ 3.) CDCR has also identified inmates who appear to be eligible to receive increased credits. (*Id.*) CDCR has determined that a statewide tracking system will be necessary to limit duplicative reviews and enable the most efficient implementation of this measure. (*Id.*)

### D. Expanding Criteria for Medical Parole

Defendants have been working diligently to prepare for the implementation of the expanded medical parole program in the Court's amended plan. (*See* Toche Decl. ¶ 4.) As previously reported CDCR and the Receiver's Office have agreed to prioritize the review of inmate-patients based on level of care needs and the ability be housed in available community care facilities, such as skilled nursing facilities. (*Id.*) To date, medical staff have identified an initial group of 42 inmates eligible under the expanded criteria for medical parole. (*Id.*) CDCR, the Board, and the Receiver's Office continue to refine the process and discuss the priority of inmate-patients for consideration and the other logistics related to implementing this measure. (*Id.*)

### E. Establishing New Parole Process for Low-Risk Elderly Inmates

CDCR has identified approximately 1,300 inmates who meet the age and sentence criteria,

but who must be further screened for, among other factors, risk. (Toche Decl. ¶ 5.) The review of candidates for medical parole has revealed substantial overlap between inmate-patients eligible for medical parole, and inmate-patients that meet the criteria for elderly parole. (*Id.*) CDCR continues to develop a means to address the potential overlap of inmates who are eligible for both elderly parole and medical parole. (*Id.*)

### F.     Slowing Return of Out-Of-State Inmates

Defendants housed 8,757 inmates in out-of-state facilities as of August 21, 2013. (Exhibit A.) As Defendants previously reported in their July 18, 2013 Status Report, CDCR extended its contracts to continue to house these inmates in out-of-state facilities for up to three years. (ECF 2679/4697 at 5; Beard Decl. Supp. July 18, 2013 Status Report, ECF 2680/4698 ¶ 8.)

### G.     County Jail Capacity

As Defendants reported in their July 18, 2013 Status Report and as discussed above, Defendants are continuing to pursue the viability of contracting with county jails for additional bed space. (ECF 2679/4697 at 5.)

## II.     DEVELOPMENT OF A COURT-ORDERED EARLY RELEASE SYSTEM

Consistent with the Three-Judge Court's June 20, 2013 Order, Defendants have finalized the framework for the court-ordered early release system, which identifies and categorizes offenders based on a number of criteria, including their California Static Risk Assessment Risk Score, prior felonies, and in-prison behavior. (Toche Decl. ¶ 6.) Defendants will further report on the status of the court-ordered early release system in their September 16, 2013, as required by the Court's August 9, 2013 order. (*Id.*)

DATED: August 29, 2013                          HANSON BRIDGETT LLP

                                                By:       /s/ *Paul B. Mello*
                                                       PAUL B. MELLO
                                                       Attorneys for Defendants

1  DATED: August 29, 2013                    KAMALA D. HARRIS
                                             Attorney General of California
2

3
                                             By:     /s/ *Patrick R. McKinney*
4                                                PATRICK R. McKINNEY
                                                 Deputy Attorney General
5                                                Attorneys for Defendants