IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RALPH COLEMAN, et al.,

      Plaintiffs,           No. 2:90-cv-0520 LKK JFM P

   vs.

EDMUND G. BROWN, JR., et al.,

      Defendants.      <u>ORDER</u>

_____/

Defendants have moved to stay pending appeal this court's July 11, 2013 order (ECF No. 4688) directing the Special Master to monitor and report to the court on the adequacy of inpatient hospital care provided to members of the plaintiff class.  Plaintiffs oppose the motion.

The standard for granting a stay pending appeal is well-established.  The court considers four factors:  "'(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'"  <u>Golden Gate Restaurant Ass'n v. City and County of San Francisco</u>, 512 F.3d 1112, 1115 (9th Cir. 2008) (quoting <u>Hilton v. Braunskill</u>, 481 U.S. 770, 776 (1987).  In this circuit, the factors have been formulated into

1

"two interrelated legal tests" that "represent the outer reaches of a single continuum." <u>Lopez</u> [v. Heckler], 713 F.2d [1432] at 1435 [(9th Cir. 1983)] (internal quotation marks omitted). "At one end of the continuum, the moving party is required to show both a probability of success on the merits and the possibility of irreparable injury." <u>Id.</u> We have recently applied, as an alternative test at this end of the continuum, a test originally formulated for granting a preliminary injunction: "(1) a strong likelihood of success on the merits, [and] (2) the possibility of irreparable injury to plaintiff if preliminary relief is not granted[.]" <u>Natural Res. Def. Council, Inc. v. Winter</u>, 502 F.3d 859, 862 (9th Cir.2007). "At the other end of the continuum, the moving party must demonstrate that serious legal questions are raised and that the balance of hardships tips sharply in its favor." <u>Lopez</u>, 713 F.2d at 1435. "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." <u>Winter</u>, 502 F.3d at 862. Further, we "consider 'where the public interest lies' separately from and in addition to 'whether the applicant [for stay] will be irreparably injured absent a stay[.]'" <u>Id.</u> at 863 (quoting <u>Hilton</u>, 481 U.S. at 776, 107 S.Ct. 2113) (first alteration in <u>Winter</u>).

<u>Golden Gate Restaurant Ass'n</u>, 512 F.3d at 1115-16.

Defendants contend that they are likely to succeed on the merits of their appeal because in their view the court's order "contravenes the PLRA's restrictions on prospective relief" and because none of the evidence presented by plaintiffs at the evidentiary hearing which led to the July 11, 2013 order "could support a finding that DSH is providing inadequate care." Motion (ECF No. 4742) at 6, 8. The first contention is legally incorrect and the second is frivolous.

The provision of the Prison Litigation Reform Act of 1995 (PLRA) on which defendants rely, provides that "in any civil action with respect to prison conditions" a court "shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(a)(1)(A). The order from which defendants appeal is an order directing the Special Master to report to the court within seventy-five days, i.e. by September 24, 2013, on the adequacy of staffing levels at the Salinas Valley Psychiatric Program (SVPP) and on whether

1    orientation status at that program, "either as designed or as implemented, unduly interferes with

2    or delays the provision of necessary care to class members at SVPP," and to "complete one

3    round of monitoring the adequacy of all inpatient programs and report to the court thereon not

4    later than March 31, 2014."  Order filed July 11, 2013 (ECF No. 4688) at 13-14.  In a variety of

5    contexts, courts including this one that have considered the question  have concluded that

6    monitoring by a Special Master is not "relief" within the meaning of the PLRA.  See Coleman v.

7    Wilson, 933 F.Supp. 954, 957 (E.D.Cal. 1996) (internal citation omitted) ("An interpretation

8    recognizing a distinction between the relief ordered and the appointment of a special master is

9    supported by the court's order adopting the magistrate judge's findings and recommendations in

10   this case.  There, the court distinguished between the remedies required to cure the constitutional

11   deficiences, . . . , and the appointment of a special master."); see also Madrid v. Gomez, 940

12   F.Supp. 247, 250 (N.D.Cal. 1996) ("[A]ppointment of a Special Master itself . . . does not appear

13   to constitute 'relief.'  This is because a Special Master is simply a device utilized by the Court to

14   assist in the appropriate relief or to monitor relief that is ordered."); see also Benjamin v. Fraser,

15   156 F.Supp.2d 333, 342 (S.D.N.Y. 2001) ("[M]onitoring itself, independent of the conditions to

16   be monitored, cannot be relief.  Monitoring merely informs the court and the parties where the

17   defendants are in the process of providing the ordered relief.  To find otherwise would conflate

18   relief with the means to guarantee its provision.")

19          Moreover, as noted in the order itself, the July 11, 2013 order makes "express"

20   what should be clear from prior orders:  that the Special Master has both "the authority and the

21   duty to monitor all programs for the provision of inpatient mental health care to the plaintiff

22   class."  Order filed July 11, 2013 (ECF No. 4688) at 11.  Pursuant to the original order of

23   reference to the Special Master filed December 11, 1995 (Doc. No. 639), defendants were

24   required to, and did, work with the Special Master to develop a plan to remedy defendants'

25   failure to provide seriously mentally ill inmates with access to constitutionally adequate mental

26   health care.  Also pursuant to that order, implementation of and compliance with that remedial

1   plan was and is to be monitored by the Special Master, who is tasked with making periodic

2   reports to the court on the status of defendants' implementation of and compliance with the

3   remedial plan.  See Order filed July 11, 2013 (ECF No. 4688) at 4-5.  Under the remedial plan,

4   CDCR "is responsible for providing acute and intermediate inpatient care, in a timely manner, to

5   those CDCR inmates clinically determined to be in need of such care."  Id. at 5 (quoting Revised

6   Program Guide at 12-6-1).  CDCR has elected to fulfill that responsibility primarily, though not

7   exclusively, through a contract with DSH.  See id. at 5, 8 n.7.  The Special Master has the duty to

8   monitor defendants' compliance with the remedial plan, including monitoring the adequacy of

9   inpatient mental health care provided to class members.  Neither CDCR's remedial obligation in

10  this action nor the Special Master's duty to monitor compliance therewith is altered by the fact

11  that CDCR has elected to delegate to DSH some or all of CDCR's responsibility to provide class

12  members with access to constitutionally adequate inpatient hospital care.[1]

13          Defendants also contend they are likely to succeed on the merits of their appeal

14  because there is no evidence that DSH is providing inadequate inpatient care.  As described in

15  the July 11, 2013 order,

16          [p]laintiffs have presented significant and troubling evidence
            of, inter alia, severe staffing shortages, apparently redundant
17          custodial policies that delay the start of necessary inpatient
            care and may in fact cause additional harm to class members
18          transferred for such care, denial of basic necessities including
            clean underwear, failure to follow established timelines for
19          transfer of patients to inpatient care, and perhaps premature

20  ───────────────────

21          [1] Defendants acknowledge that "providing treatment under DMH care was part of the
    cure . . . for the constitutional violations," while contending simultaneously that the adequacy of
22  that care is beyond the remedial power of the court and the Special Master because in its original
    order "the Court made no finding that inpatient hospitalizations were providing inmates
23  constitutionally inadequate care" and DSH was not a defendant at the time of trial.  Motion to
    Stay (ECF No. 4742) at 3.  This argument misses the mark.  In the September 13, 1995 order, the
24  court found "a systemic failure to provide adequate mental health care" to thousands of members
    of the plaintiff class.  Coleman v. Wilson, 912 F.Supp. 1282, 1315 (E.D.Cal. 1995).  The remedy
25  for that systemic failure requires access to constitutionally adequate mental health care at every
    level of defendants' mental health care delivery system.  Monitoring by the Special Master is
26  necessary to a determination of whether the mental health care provided at the inpatient level of
    that system is constitutionally adequate.

discharges of patients from inpatient care, all of which call
into question the adequacy of the inpatient care that is being
provided to the plaintiff class.

Order filed July 11, 2013 (ECF No. 4688) at 10-11.  The court found that evidence a "significant

. . . basis for questioning the adequacy of critical aspects of inpatient care currently provided to

members of the plaintiff class."  Id. at 11.  Defendants assertion that there is no such evidence is

frivolous.

In short, the July 11, 2013 order is not a grant of prospective relief within the

meaning of 18 U.S.C. § 3626(a)(1)(A) but instead directs specific monitoring by the Special

Master that is already authorized, required by prior court orders, and rendered urgent by the

significant evidence tendered by plaintiffs suggesting that class members are not receiving

adequate inpatient care.  Defendants have failed to show they are likely to succeed on the merits

of their appeal.[2]

Defendants also contend that they will suffer "irreparable injury" if required to

provide the documents and access to inmates, clinicians, staff, medical records and program

areas associated with monitoring by the Special Master.  See Motion (ECF No. 9) at 10-11.

Defendants did not even seek a stay until thirty-two days after the issuance of the July 11, 2013

order, after a substantial part of the monitoring at SVPP had already occurred.  Id. at 9.  All but

three days of scheduled monitoring at the Correctional Health Care Facility (CHCF) will be

completed by September 6, 2013, and the asserted harm from monitoring at that program appears

speculative.  See id. at 11.  The alleged harm asserted by defendants is not the type of irreparable

harm that requires or justifies a stay of the court's July 11, 2013 order.  Cf. Sampson v. Murray,

415 U.S. 61, 90 (1974) (quoting Virginia Petroleum Jobbers Ass'n v. FPC, 259 F.2d 921, 925

---

[2]  Indeed, as plaintiffs suggest in their opposition there is a serious question about
whether the July 11, 2013 order is an appealable order.  See Thompson v. Enomoto, 815 F.2d
1323, 1326-27 (9th Cir. 1987) (order appointing special master not appealable where order did
not modify existing consent decree, there was no showing of serious or irreparable harm from
the appointment, and appointment could be challenged at a subsequent stage of proceedings).
Resolution of that question is, of course, for the court of appeals.

1  (1958) ("Mere injuries, however substantial, in terms of money, time and energy necessary

2  expended in the absence of a stay, are not enough" to show irreparable harm.)

3          The alternative formulation of the test also requires denial of defendants' motion.

4  For the reasons set forth supra, defendants have not shown that serious legal questions are raised

5  in their appeal from the July 11, 2013 order.  Moreover, the evidence described in that order

6  demonstrates quite clearly that the balance of hardships from not investigating the adequacy of

7  inpatient care provided to members of the plaintiff class tips sharply in favor of plaintiffs.

8          Finally, defendants assert that the public interest lies in staying the order so that

9  DSH can meet its "core mission to provide all of its patients with quality mental health

10  services." Motion (ECF No. 4742) at 13.  The contention, which rests on the frivolous assertion

11  that the July 11, 2013 order "attempts to cure a problem that does not exist," begs the question.

12  The order arises in substantial part from evidence that DSH is not providing adequate mental

13  health services to members of the plaintiff class.  To the extent that defendants assert that the

14  public interest lies in DSH's fulfillment of their obligations to the mentally ill patients in their

15  care, they are correct.  The court's July 11, 2013 order is in aid of that interest and congruent

16  therewith.

17          For all of the foregoing reasons, IT IS HEREBY ORDERED that defendants'

18  August 12, 2013 motion for stay pending appeal (ECF No. 4742) is denied.

19  DATED: September 5, 2013.

20

21

22                    LAWRENCE K. KARLTON
23                    SENIOR JUDGE
                      UNITED STATES DISTRICT COURT
24

25

26