**Coleman v. Brown, 90-520 LKK JFM**
**Joint Statement Re Discovery Dispute on Production of Class Member Records**

Plaintiffs move to compel timely production of prisoner-patient records in connection with Plaintiffs' motions re: Use of Force (UOF) & Disciplinary Measures (Dkt. 4638) and re: Segregation (Dkt. 4580).

**Plaintiffs' Position:**  The parties have long followed a process for Plaintiffs to obtain records of *Coleman* prisoner-patients.  *See* Declaration of Aaron J. Fischer ("Fischer Decl.") ¶¶ 2-3.  But now, with pending motions on critical issues, Defendants are dragging their feet in producing requested records and in some cases refusing to produce records at all.  These tactics, if permitted, will prejudice Plaintiffs' preparation for the upcoming hearings, and the Court will be required to rule without the benefit of relevant and important evidence.  Defendants' position improperly obstructs Plaintiffs' ability to present the most current evidence possible regarding existing violations.[1]  *See Ginest v. Bd. of County Commissioners of Carbon County* 295 F. Supp. 2d 1274 (D. Wy. 2003) (granting discovery in post-judgment proceeding and noting that defendant's proposal would improperly prevent plaintiffs from supplementing the record to show current violations).

Plaintiffs sent a request for records on August 2, 2013.  Fischer Decl. Ex. B.  Defendants objected on the grounds that it is "related to the pending litigation," that it "seeks irrelevant information, or information not reasonably calculated to lead to the discovery of admissible evidence," and that the "proper discovery device" is a Rule 34 discovery request.  *Id.* Ex. C.  On August 6, 2013, Plaintiffs then served a formal discovery request, while maintaining that Rule 34 procedures were not necessary for such requests. *Id.* Ex. D.  Several weeks of meet-and-confer followed, with Defendants refusing to begin production during that time.  Plaintiffs offered proposals to reduce any burden to Defendants, such as prioritizing and narrowing requests and arranging for a copy service to gather records on site (an arrangement used in past time-sensitive situations).  *Id.* ¶ 7.  On August 30, after Plaintiffs provided Defendants their position for a Joint Statement on this dispute, the parties reached a tentative agreement on a schedule for production.  Two disputes, however, remain: (1) Defendants refuse to timely produce records for inmate-patients involved in UOF; and (2) Defendants refuse to produce any records at all for six prisoner-patients.  A court order is required to ensure timely and appropriate production that will permit a full hearing on the merits for the pending motions.

Defendants' Refusal to Timely Produce Records for Prisoner-Patients Involved in UOF Incidents:  Plaintiffs requested records for 18 prisoner-patients involved in UOF incidents reviewed by the parties' experts.  Defendants have refused to agree to a date certain for production in advance of the hearing on the Motion re: UOF & Disciplinary Measures (set to begin September 26).  Instead, Defendants have stated that they would aim to produce C-file records (including custody records, disciplinary records, and UOF incident reports) by September 27, *the day after the hearing begins*.  This date, nearly two months removed from Plaintiffs' August 2 request, would prevent Plaintiffs' experts from reviewing these records and forming opinions about them prior to providing their testimony in court.

In their Opposition, Defendants rely on numerous custodial records regarding incident reports and UOF reviews for incidents involving these prisoner-patients, which Defendants had not previously produced. Defendants have now produced only those parts of these files that they selected for their expert to review.  If Defendants are going to rely on cherry-picked information from files, then they must produce the complete file upon request so that Plaintiffs have the same access to this information.  *See* Fed. R. Evid. 106.  The requested records are also directly related to claims Defendants make in their Opposition that UOF practices do not cause harm to prisoner-patients.  In response, Plaintiffs have submitted the rebuttal expert declaration of Dr. Edward Kaufman, to explain the psychological harm caused by Defendants' practices.  *See* Dkt. 4766-

---

[1] Defendants make numerous assertions regarding current conditions and treatment in their opposition briefs, using class member information that is more current than the records that have been provided to Plaintiffs.  *See, e.g.*, Decl. of K. Allison, Dkt. 4713, July 24, 2013,  ¶ 15, ¶ 21; Decl. of T. Belavich, Dkt. 4712-1, July 24, 2013,  ¶¶ 6, 9, 10; Decl. of E. Monthei, Dkt. 4593, May 9, 2013, ¶¶ 34-40.

3 ¶¶ 17-21. But Defendants' withholding of these records obstructs Plaintiffs' efforts to rebut Defendants' assertion that their practices do not cause harm.

Plaintiffs proposed three weeks ago arranging a copy service to gather these requested records on site, a process that the parties have successfully used before. In July 2011, as part of the then-pending inpatient care waitlist litigation, the parties agreed for a Plaintiff-arranged copy service to gather records, covering a much longer time period (up to five years rather than the 20-month period requested here), for seven prisoner-patients. The process was completed within a week. Fischer Decl. ¶ 13. Defendants should be ordered to provide the records (using their own staff or a copy service) by September 13, allowing Plaintiffs and their experts sufficient time to complete a review in advance of the September 26 hearing. In the alternative, Defendants should be precluded from presenting evidence relating to how UOF events are handled and documented, and whether their UOF practices cause harm to prisoner-patients.

<u>Defendants' Complete Refusal to Produce Records</u>: Defendants have refused to produce records for six prisoner-patients, on the grounds that (1) five have paroled, discharged, or are within a county's Post-Release Supervision program, and (2) one is in a CDCR prison pursuant to Welf. & Inst. Code ("WIC") § 7301. Fischer Decl. Ex. H. These facts in no way affect Defendants' obligation to produce the requested records.

First, Plaintiffs are entitled to records of those prisoner-patients who recently were released from a CDCR prison. Plaintiffs obtained records and information regarding all five prisoner-patients whose records are now in dispute during the Termination proceedings earlier this year, and seek treatment record "updates" and other supplemental information for each. Defendants have stated that Plaintiffs must "obtain waivers from these individuals" to obtain their records, but such a waiver serves no purpose. The protective order in this case protects against the disclosure of "all documents and information obtained in this action by plaintiffs' counsel which identifies a patient or inmate other than the named plaintiffs in this action." Fischer Decl. Ex. A. There is no basis for Defendants' withholding of these records, or for the "waiver" requirement that Defendants now propose. The records requested are directly relevant to the motions now before the Court, and should be produced at once.

Second, Plaintiffs are entitled to records of WIC § 7301 prisoner-patients in CDCR. These individuals have previously been committed to a state hospital and have been determined to "need[] care and treatment under conditions of custodial security which can be better provided within the Department of Corrections and Rehabilitation," and are thus transferred to "an institution under the jurisdiction of the Department of Corrections and Rehabilitation." WIC § 7301. Such prisoner-patients receive the same mental health treatment that is provided to any other *Coleman* class member. Some are housed in CDCR-run prison units (such as at CSP-Sacramento) and others are housed in DSH-run units operated inside a CDCR prison (such as at Salinas Valley Psychiatric Program). These patients are housed with other class members and use treatment resources made available to the *Coleman* class generally. Notably, during the Termination litigation, Defendants provided records for the *same* class member for whom they now refuse to produce records.

***Defendants' Position.*** One more time, Plaintiffs seek an order without having served valid discovery requests. Discovery closed on August 23 when Plaintiffs filed their reply briefs. (7/10/13 Order ¶¶ 2 & 3, ECF 4687; 8/1/13 Order, ECF 4725.) Plaintiffs' document requests violate this Court-ordered discovery cut-off and cannot be enforced. *Draper v. Coombs*, 792 F.2d 915, 924 (9th Cir. 1986). Although the request is unenforceable, Defendants timely served objections on September 5. (Kim Decl. ¶ 2 Ex. A.)

Plaintiffs originally styled their demand as an informal request, but it far exceeded the bounds of past informal requests. (Tebrock Decl. ¶¶ 2 & 3.) Previously, Plaintiffs have asked for one or two individual class member's mental health records limited to a specific time or regarding a specific mental health issue. (*Id.* ¶ 2.) In the past, CDCR has produced documents in response to these limited requests within thirty days. (*Id.*) But here, instead of asking for records of a single class member, Plaintiffs demand multiple categories of records of 83 inmate-

[933943-1]

patients. (Kim Decl. Exs. A & B.) And instead of asking for only mental health records, Plaintiffs also have demanded disciplinary records, placement chronos, and UHRs. (*Id.*)[2]

Even if Plaintiffs' informal request could be enforced in federal court (it cannot), Plaintiffs' untimely demand that Defendants produce records of 83 class members also violates other discovery orders. Plaintiffs demand these documents expressly for the purpose of bolstering their pending motions regarding use of force and segregation. The Court has issued multiple orders to address scheduling and discovery on Plaintiffs' affirmative motions, which resulted in the ruling that discovery closed on August 23. (8/1/13 Order, ECF 4725; 7/10/13 Order, ECF 4687; 6/11/13 Order, ECF 4646.) And on August 9, 2013, the Court ordered that "at this late stage of the proceedings it appears clear that any such request for production in connection with a deposition should be limited to documents relied on by the defense witness in preparing his or her declaration or testimony." (ECF No. 4738 at 3.) Plaintiffs' request is neither related to a deposition nor for documents relied upon by Defendants' experts.

<u>Defendants Timely Produced All Relevant Use of Force Documents</u>. The Court lacks authority to order production pursuant to Plaintiffs' informal request. Even if it had authority, Plaintiffs' misuse of the discovery process to obtain documents after the cut-off date for use at the evidentiary hearing is also fundamentally unfair. Plaintiffs' use-of-force motion established that Plaintiffs' expert based his opinions on his review of use of force videos and "ignored a storehouse of relevant evidence contained in the incident packets and IERC reviews" for the incidents depicted in the videos. (Defs.' Opp'n 16-17, ECF 4704; Steve Martin Opp'n Decl. p 14, ECF 4706.) All of these underlying documents relied on by Defendants' expert, Steve Martin, were produced to Plaintiffs prior to Mr. Martin's deposition. (*See, e.g.,* Kim Decl. Ex. C [7/22/13 email].) Rather than being "cherry-picked," as Plaintiffs argue, the documents provided to Mr. Martin and Plaintiffs were the full incident reports underlying the videos relied on by Plaintiffs' expert. (*See* ECF 4706 ¶¶ 7-8 & 10.) Additional records were available to Plaintiffs during their site visits, but they chose to file their motion without conducting discovery or having their expert review these records.[3] Instead, Plaintiffs represented to the Court that they had no need to take additional discovery since "it all flows from the discovery that was already done in the termination proceeding." (Kim Decl. Ex. E at 2:16-18 [5/23/13 Tr.].) Plaintiffs' belated recognition that their record is inadequate is irrelevant since they have no explanation for their failure to timely develop this available evidence. Moreover, none of the requested documents, or any evidence presented for the first time on reply or afterward, is admissible at the upcoming evidentiary hearing. *See, e.g., Graves v. Arpaio*, 623 F.3d 1043, 1048 (9th Cir. 2010) ("[A]rguments raised for the first time in a reply brief are waived.")

Plaintiffs similarly mischaracterize Defendants' agreement to informally produce additional use-of-force documents. Contrary to Plaintiffs' argument, Defendants agreed to a rolling production of documents according to a priority created by Plaintiffs. (Tebrock Decl. ¶ 6; Kim Decl. Ex. C.) The agreed-upon schedule for informal production may coincide with the start of the evidentiary hearing, but this is irrelevant since it would be improper for Plaintiffs' experts to review and form opinions about information acquired after the close of discovery. (*Id.*) If Plaintiffs truly believe this information is necessary, they can withdraw their motion and seek to re-open discovery.

<u>There Is no Basis to Order Production of Non-Class Member Records Pursuant to Plaintiffs' Informal Request</u>. Plaintiffs present no evidence that they are entitled to documents concerning six individuals who are not members of the *Coleman* class. As Defendants have informed Plaintiffs, five of these individuals are not in CDCR custody because they have paroled, discharged from their sentence, or are under post-release supervision by a county; and the sixth is not a state prisoner but is in CDCR custody pursuant to Section 7301 of the Welfare & Institutions Code.

Plaintiffs' counsel cite no authority to support their claim that they have a right to the records of individuals who have been released or are not state prisoners. Nor could they, as *Coleman* class members are "state prisoners who suffer from serious mental disorders." *Coleman v. Wilson*, 912 F. Supp. 1282, 1293 (E.D. Cal. 1995). Due to

---

[2] Plaintiffs' extraordinarily broad informal request imposes an undue burden on Defendants. (Tebrock Decl. ¶¶ 5 & 6.) Similar to past instances, CDCR Legal offered to produce the records of 2-3 class members per week in Plaintiffs' order of priority. (*Id.* ¶ 5.) Plaintiffs rejected this offer. (*Id.*)

[3] Plaintiffs' reliance on *Ginest v. Bd. of County Commissioners of Carbon County*, 295 F. Supp. 2d 1274 (D. Wy. 2003) to support their contention that Defendants are in some way blocking presentation of evidence is spurious. *Ginest* involved discovery necessary to *oppose* a termination motion filed by Defendants.

CDCR's obligation to maintain record confidentiality, including CDCR's obligations under HIPAA, CDCR can only provide an individual's mental health and central file records to that individual, the individual's attorney, or in accordance with a signed waiver. None of these circumstances apply here. Moreover, Plaintiffs' reference to the Court's protective order is unavailing. It would constitute a breach of privacy for CDCR to provide records concerning these six individuals to Plaintiffs' counsel, regardless of whether Plaintiffs' counsel is prevented from further disclosing the records.

Plaintiffs seek relief from this Court without having first satisfied the basic prerequisite for a motion to compel—a timely discovery request. Plaintiffs' motion must be denied.