1   KAMALA D. HARRIS
    Attorney General of California
2   JONATHAN L. WOLFF
    Senior Assistant Attorney General
3   JAY C. RUSSELL
    Supervising Deputy Attorney General
4   DEBBIE VOROUS, State Bar No. 166884
    PATRICK R. MCKINNEY, State Bar No. 215228
5   MANEESH SHARMA, State Bar No. 280084
    Deputy Attorneys General
6    455 Golden Gate Avenue, Suite 11000
     San Francisco, CA  94102-7004
7    Telephone:  (415) 703-5553
     Fax:  (415) 703-1234
8    E-mail:  patrick.mckinney@doj.ca.gov
    Attorneys for Defendants

    Hanson Bridgett LLP
    JERROLD C. SCHAEFER, State Bar No. 39374
    PAUL B. MELLO, State Bar No. 179755
    WALTER R. SCHNEIDER, State Bar No. 173113
    SAMANTHA D. WOLFF, State Bar No. 240280
     425 Market Street, 26th Floor
     San Francisco, California 94105
     Telephone:   (415) 777-3200
     Fax:  (415) 541-9366
     E-mail:  pmello@hansonbridgett.com

9

10                      IN THE UNITED STATES DISTRICT COURTS

11                   FOR THE EASTERN DISTRICT OF CALIFORNIA

12                  AND THE NORTHERN DISTRICT OF CALIFORNIA

13           UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

14               PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

15

16   **RALPH COLEMAN, et al.,**                      2:90-cv-00520 LKK JFM P

                                    Plaintiffs,      **THREE-JUDGE COURT**
17
     v.
18

19   **EDMUND G. BROWN JR., et al.,**

20                                  Defendants.

21   **MARCIANO PLATA, et al.,**                      C01-1351 TEH

22                                  Plaintiffs,       **THREE-JUDGE COURT**
23
     v.
24                                                    **DECLARATION OF AUDREY BAZOS IN
                                                      SUPPORT OF DEFENDANTS' REQUEST
25   **EDMUND G. BROWN JR., et al.,**                 FOR EXTENSION OF DECEMBER 31,
                                                      2013 DEADLINE AND STATUS REPORT
26                                  Defendants.       IN RESPONSE TO JUNE 30, 2011, APRIL
                                                      11, 2013, JUNE 20, 2013, AND AUGUST 9,
27                                                    2013 ORDERS**

28

                                          1

I, Audrey Bazos, declare as follows:

1.    I am currently employed with the State Department of Finance (DOF) as an Principal Program Budget Analyst.  The mission of the DOF is to serve as the Governor's chief fiscal policy advisor, promoting responsible resource allocation through the state's annual financial plan, and to ensure the financial integrity of the state.  My current duties include supervising two Staff Finance Budget Analysts and together we oversee the budget of the California Department of Corrections and Rehabilitation; specifically the Division of Adult Institutions and the Division of Adult Parole Operations.  I am also responsible for devising the formula for the annual allocation of California Community Corrections Performance Incentives Act (SB 678) grants to county probation departments. I graduated from the UCLA Luskin School of Public Affairs with a Master's degree in Public Policy in 2003.

**A.  Senate Bill 678 and Felony Probation**

2.    Probation is a judicially imposed suspension of sentence and a form of community supervision that courts order in place of a long-term jail or prison sentence.  If an offender successfully completes probation without a violation or a new charge, the probationer will avoid a prison or jail sentence.  As the Legislature has found "[p]robation is a linchpin of the criminal justice system. . . ."  (Cal. Pen. Code § 1228.)

3.    In its 2009 report, the Legislative Analyst's Office (LAO) estimated that 40% of new prison admissions from the courts were due to revocations from probation.  The LAO found that county probation departments had little incentive to improve their methods of supervision and avoid revoking probationers to prison.  The report also acknowledged that in many cases county probation departments had insufficient resources to implement evidence-based probation supervision practices that could help reduce probation failures.  The LAO recommended creation of a financial incentive to counties to improve their community corrections practices and programs and to lower their probation failure rates.  (Legislative Analyst's Office, Achieving Better Outcomes for Adult Probation (2009).)  The report can be found at http://www.lao.ca.gov/2009/crim/Probation/probation_052909.pdf.

4.     The California Community Corrections Performance Incentives Act of 2009 (Senate Bill 678, Chapter 608, Statutes of 2009) ("SB 678") was designed to achieve two purposes: to alleviate state prison overcrowding and establish a system of performance-based funding that shared state General Fund savings with county probation departments when they demonstrated success in reducing the number of adult felony probationers going to state prison because of committing new crimes or violating the terms of probation.

5.     The money allocated pursuant to this program are required to be used to provide supervision and rehabilitative services and spent on evidence-based community correctives practices and programs that have been demonstrated by scientific research to reduce recidivism. (Cal. Pen. Code § 1230(b)(3).)

6.     Specifically, funds may be used to expand the availability of evidence-based rehabilitation programs including, but not limited to, drug and alcohol treatment, mental health treatment, anger management, cognitive behavior programs, and job training and employment services.  (Cal. Pen. Code § 1230 (b)(3)(D).)  Critical to the success of the SB 678 program is the requirement for County probation departments to reinvest their share of the savings in further implementation of evidence-based probation programs and practices.  SB 678 created a State Community Corrections Performance Incentives Fund and authorizes the state to annually allocate money from this fund into a Community Corrections Performance Incentives Fund (CCPIF) established by each county.  (Cal. Pen. Code § 1233.61.)  Each county must use the funding placed into their CCPIF to establish a local community corrections program.  (Cal. Pen. Code § 1230.)

7.     These local programs must be targeted towards felony probationers and the funding should be used for specified purposes related to improving local probation supervision practices. The statutory goals of the program include providing a range of services based on the risk and needs assessment for the purpose of promoting behavioral change that results in reducing recidivism and promoting the successful reintegration of offenders into the community.  (Cal. Pen. Code § 1230.)

8.   Under SB 678, each county is required to identify and track outcome-based measures and report their plans and progress to the Administrative Office of the Courts (AOC).  (Cal. Pen. Code §1231.)

9.   At the end of every calendar year, the California Department of Finance (Finance) is required to determine the statewide and county specific felony probation failure rates.  Based on a county's success at reducing the number of felony probationers sent to prison, as compared to a baseline felony probation failure rate for the years 2006-2008, Finance calculates the amount of savings to be provided to each county.   SB 678 also provides High Performance Grant awards to counties with very low probation failure rates.  These awards support the ongoing use of evidence-based practices in counties with probation failure rates more than 50 percent below the statewide average.  Each county's probation failure rate will be recalculated annually and counties will receive their funding in quarterly installments.

10.  SB 678 grants have been very successful.  The county funding level grew from $89.2 million in 2011-12 to $138.9 million in 2012-13 due to improved performance in the prevention of probation failures from 2010 to 2011.  Over these two years, it is estimated that SB 678 prevented over 15,000 prison admissions.

11.  SB 105, enacted on September 12, 2013, changes the calculation for the payments to counties so that it is now based on the amount the state saves by avoiding incarcerations in contracted facilities, currently estimated to be $29,491 per inmate, rather than using the amount saved by preventing state prison incarceration, which is $10,000 per inmate.  This change in calculation is permanent and does not sunset.

12.  As a result of SB 105, it is anticipated that payments to county probation departments will be approximately $150 million in 2014-15, based on current performance, as opposed to the $50 million that was estimated prior to the passage of SB 105. These additional payments are anticipated to greatly assist county probation departments continue to reduce recidivism among felony probationers, therefore reducing the prison population.

4

13.   Additionally, as a result of SB 75 enacted on June 27, 2013, it is anticipated that payments to county probation departments will be approximately $100 million in 2013-14, based on current performance, as opposed to the $35 million that was estimated at the January 10, 2013 Governor's Budget for 2013-14.  Further, under SB 75 the SB 678 program was made permanent by the elimination of the 2015 sunset that had been included at the program's creation.  (2013 Cal. Stat., Ch. 31, § 22.)  This change should assist counties in making long-term plans.

**B.   Realignment Provided Increased Funding for Evidence-Based Community**

14.   As part of 2011 Realignment, the State allocated Community Corrections funding to each county.  In 2011-12 $354.3 million of base funding was allocated; in 2012-13 $842.9 million of base funding was allocated; and in 2013-14 $998.9 million in base funding was allocated.  An additional $86.8 million is estimated to be allocated to Community Corrections based on 2012-13 growth funds available under 2011 Realignment.

15.   Community Correction Partnerships were statutorily created in each county to recommend a local plan to the county board of supervisors for the implementation of 2011 Realignment.  (Cal. Pen. Code § 1230.)  Each plan may include recommendations to maximize the effective investment of resources in evidence-based correctional sanctions and programs including day reporting centers drug courts, residential multiservice centers, mental health treatment programs, electronic and GPS monitoring programs, victim restitution programs, counseling programs community service programs, educational programs, and work training programs.  (Cal. Pen. Code § 1230.1.)

**C.   California Spends Much More on Prison Health Care than Other Large States.**

16.   The California Department of Corrections and Rehabilitation's overall Health Care expenditures, including Medical Care, Mental Health Care, and Dental Care, totaled $1.231 billion in state fiscal year 2005-06, $1.591 billion in 2006-07, $2.190 billion in 2007-08, $2.544 billion in 2008-09, $2.225 billion in 2009-10, $2.172 billion in 2010-11, and $2.237 billion in 2011-12.

5

17.   As of the 2013-14 Budget Act total inmate Health Care expenditures are estimated to be $2.134 billion in 2012-13 and $2.183 billion in 2013-14.

18.   Over the last six years, the state has spent an average of $2.249 billion per year on prison health care.  This average is based on the expenditures for 2008-09, 2009-10, 2010-11, 2011-12, and the estimated expenditures for fiscal years 2012-13 and 2013-14.

19.   The total Health Care cost per inmate was $7,580 in 2005-06, $9,558 in 2006-07, $13,439 in 2007-08, $16,058 in 2008-09, $14,443 in 2009-10, $14,695 in 2010-11, and $16,273 in 2011-12.  The total Health Care cost per inmate is estimated to be $17,447 in 2012-13, and $17,924 in 2013-14.

20.   Compared to other states, California is spending far more per state prison inmate on health care.  This has been determined based on calls made by my staff at the Department of Finance to other states and a review of publicly available materials for other states.

21.   For example, in 2010-11 the State of Texas average cost per inmate for health care was $2,992 and the Texas prison system had a population of 156,562.  These numbers are based on information my staff obtained from a State of Texas website.  Funding information came from 2012-13 Operating Budget, Texas Department of Criminal Justice: http://www.tdcj.state.tx.us/documents/finance/Agency_Operating_Budget_FY2012.pdf. Population information was obtained from 2011 Texas Department of Criminal Justice Annual Review: http://www.tdcj.state.tx.us/documents/Annual_Review_2011.pdf.  It should be noted that Texas contracts for inmate health care services.

22.   In examining other large states' expenditures, the state that spends the next highest amount per inmate is New York.  In 2010-11 the State of New York's average cost per inmate for health care was $5,958 and the New York prison system had a population of 56,732.  This information was based on discussion my staff had with officials in New York.

23.   As of the 2013-14 Budget Act, it is estimated that the state will spend an approximately $2.183 billion on total inmate health care costs.  This average equals to $17,924 per inmate.  Including 2013-14, it is estimated that the state will spend an average of $2.160

Decl. Audrey Bazos Supp. Defs. Request for Extension

billion on total health care costs since state fiscal year 2006-07.  The average cost per inmate over the same period is $14,979.  In comparison, New York, which is a large state, spends a significant amount on inmate health care, spending $5,958 per inmate in the 2010-11 fiscal year, while Texas spent $2,992 per inmate in that year.

24.  The numbers provided and used in paragraphs 1-12 for the 2012-13 and 2013-14 fiscal years will be updated in the 2014-15 Governor's Budget.  Final expenditures for 2013-14 will be available in the 2015-16 Governor's Budget.

25.  I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.  Executed in Sacramento, California on September 16, 2013.


_____/s/_____
Audrey Bazos
Principal Program Budget Analyst

*(original signature retained by attorney)*

7