DONALD SPECTER – 083925
STEVEN FAMA – 099641
PRISON LAW OFFICE
1917 Fifth Street
Berkeley, California 94710-1916
Telephone: (510) 280-2621

MICHAEL W. BIEN – 096891
JANE E. KAHN – 112239
ERNEST GALVAN – 196065
THOMAS NOLAN – 169692
LORI E. RIFKIN – 244081
AARON J. FISCHER – 247391
MARGOT MENDELSON – 268583
KRISTA STONE-MANISTA – 269083
ROSEN BIEN GALVAN &
GRUNFELD LLP
315 Montgomery Street, Tenth Floor
San Francisco, California 94104-1823
Telephone: (415) 433-6830

JON MICHAELSON – 083815
JEFFREY L. BORNSTEIN – 099358
MEGAN CESARE-EASTMAN – 253845
RANJINI ACHARYA – 290877
K&L GATES LLP
4 Embarcadero Center, Suite 1200
San Francisco, California 94111-5994
Telephone: (415) 882-8200

CLAUDIA CENTER – 158255
THE LEGAL AID SOCIETY –
EMPLOYMENT LAW CENTER
180 Montgomery Street, Suite 600
San Francisco, California 94104-4244
Telephone: (415) 864-8848

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN et. al.,<br><br>Plaintiffs,<br><br>v.<br><br>EDMUND G. BROWN, JR., et al.,<br><br>Defendant. | Case No.   Civ S 90-0520 LKK-JFM<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* NO. 6: TO EXCLUDE OR LIMIT PRESENTATION OF USE-OF-FORCE VIDEOS AT EVIDENTIARY HEARING**<br><br>Date:       September 26, 2013<br>Time:      9:15 a.m.<br>Judge:     Hon. Lawrence K. Karlton<br>Courtroom: 4 |

SF293649

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* NO. 6: TO EXCLUDE OR LIMIT PRESENTATION OF USE-OF-FORCE VIDEOS**

## I. INTRODUCTION

Defendants move to exclude videos depicting CDCR's controlled uses of force against the mentally ill because Defendants considers them "[to] have no relevance," be "a waste of time," and to be "misleading and confusing." The use of force videos are the best direct and objective evidence available to the Court illustrating the force actually used against class members in a myriad of facilities and situations. The fact that Defendants have even brought this motion demonstrates the State's myopic understanding of relevant considerations for use of force practices against prisoners with mental illness and the importance of the issue at bar. Defendants attempts to prevent this Court from reviewing videos documenting their own use of force practices further underscores Plaintiffs' need for immediate affirmative relief.

Given the importance of this evidence, Plaintiffs respectfully request that the Court decide this motion at its earliest convenience, so the parties can prepare for trial.

## II. FACTS

CDCR is required to make a video record of every controlled use of force event. C.C.R. §§ 51020.12-51020.13. CDCR is further required to conduct a video interview with every inmate who alleges that the force used against him or her was excessive, or who was injured. C.C.R. § 51020.17.3. "The Incident Commander shall ensure that all such recordings are secured, logged, and processed in a manner to preserve evidentiary value." C.C.R. § 51020.13. Presumably, the very purpose of these videos is to be available for analysis and review.

Prior to Mr. Vail's inspections of four CDCR prisons in connection with the termination proceeding, Plaintiffs served an inspection demand on Defendants pursuant to Federal Rule of Civil Procedure 34. That demand requested that all "Use of Force Reports [involving class members], including videos," from July 1, 2012 through the date of Plaintiffs' inspections in February 2013, be produced to Plaintiffs during each prison tour. (Plaintiffs' Second Request for Inspection at ¶ 8, dated February 1, 2013, attached as Exh. A to the Declaration of Megan Cesare-Eastman ("Cesare Decl.") submitted herewith.) Mr. Vail concluded each inspection by watching the use of force videos and video interviews that

1

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* NO. 6: TO EXCLUDE OR LIMIT PRESENTATION OF USE-OF-FORCE VIDEOS**

CDCR produced. (Cesare Decl. ¶ 3.) Due to Defendants' failure to identify and produce certain videos, problems with the functionality of CDCR's audio-visual equipment, and time constraints during the inspections, Mr. Vail later returned to San Quentin to view all of the videos produced pursuant to Plaintiffs' inspection demand. (Cesare Decl. ¶ 4.) Altogether, Defendants identified and furnished 17 controlled use of force videos and 36 inmate interviews as the universe of videos, involving class members, that were made at the four prisons (Corcoran, KVSP, LAC and San Quentin) between July 1, 2012 and the dates of Plaintiffs' inspections in February 2013. (Cesare Decl. ¶ 5.) Thus, Defendants' claims that Plaintiffs "selected" certain videos during their tours, or that the universe of videos available for use at trial is not a representative sample, are false.

All 17 controlled use of force videos can be shown in less than six hours, well within the Court's eight-hour limit. (Cesare Decl. ¶ 6; Dkt. 4731, August 7, 2013 Order at 3:4-10.) Defendants have indicated that they will not show any of the videos at trial, limiting Plaintiffs to four hours of footage. (Dkt. 4731, August 7, 2013 Order at 3:4-10.) To the extent Defendants feel that the videos Plaintiffs elect to use at trial are not representative, they have the ability to show all additional footage from the 17 videos, and Plaintiffs encourage them to do so.

Moreover, to address any implication that the videos shown during trial are not representative of CDCR's uses of force against class members in California's prisons, Plaintiffs plan to lodge all 17 controlled use of force videos with the Court as part of the evidentiary record.

## III. ARGUMENT

### A. The Use of Force Videos Are Relevant And Admissible

Defendants' contention that videos showing CDCR's use of force practices against inmates with mental illness are not relevant, at an evidentiary hearing evaluating CDCR's use of force practices against inmates with mental illness, defies credibility. *See*, FRE Rules 401, 402. Nor have Defendants shown a realistic potential for confusion of the issues or undue

delay that would justify the exclusion of such highly relevant evidence pursuant to the balancing test in Rule 403 of the Federal Rules of Evidence.

### 1. The Use Of Force Videos Are Not A "Waste Of Time"

The best evidence rule requires a party to prove the contents of a video recording by submitting the recording itself. FRE, Rule 1002 ("An original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise"). Videos are considered "photographs" for purposes of the rule. *Asociacion De Periodistas De Puerto Rico v. Mueller*, 680 F.3d 70, 80, n.7 (1st Cir. 2012). The "elementary wisdom" of the best evidence rule rests on the fact that "the [writing, recording or photograph itself] is a more reliable, complete and accurate source of information as to its contents and meaning than anyone's description [of it]." *Gordon v. United States*, 344 U.S. 414, 420 (1953); *see also United States v. Holton*, 116 F.3d 1536, 1545 (D.C. Cir. 1997) (The best evidence rule is "a mechanism to prevent fraud or mistransmission of information, i.e., to ensure accuracy").

If the video footage is available, then the content of a video is properly proved only by submitting actual recordings. *Buruca v. District of Columbia*, 902 F.Supp.2d 75, 83 (D.C. Cir. 2012). Where video footage is available, characterization of its contents through testimony is inadmissible as a substitute for that footage. *Id.; see also Freeman v. City of Fort Worth, Texas,* 2011 WL 2669111, at *3 (N.D. Tex. July 7, 2011) (deeming an affidavit inadmissible when it sought to describe the contents of a video that was otherwise available); *Asociacion De Periodistas De Puerto Rico v. Mueller*, *supra*, 680 F.3d at 80 (the best evidence rule requires the use of an original writing, recording or photograph in proving its material content, but a copy of a video recording is a "duplicate" admissible to the same extent as the original).

Showing the videos at trial is not a "waste of time" -- as Defendants claim -- because they are the best evidence of what is actually occurring when inmates with mental illness are subjected to controlled uses of force in California's prisons.[1] Furthermore, given that the

---

[1] In fact, however, the overwhelming majority of use of force incidents are deemed by CDCR to be "immediate" and no video recording is made.

1  videos are available to be shown in connection with expert testimony, the videos will assist the
2  Court in evaluating the evidence.

### 2.  The Use Of Force Videos Are Not "Misleading And Confusing"

Defendants claim that the videos are "misleading and confusing" because they present "only a distorted part of the relevant evidence."  Plaintiffs plan to introduce full use of force review packets for each of the videos presented as evidence (assuming that Defendants produce the full packets, as requested, before trial).  Plaintiffs also plan to introduce relevant portions of the medical records for the class members subjected to these uses of force, in order to present the Court with evidence about the effects of these uses of force on the inmate-patients.  There is nothing "misleading and confusing" about the inclusion and introduction of the videos—which, by CDCR policy, are a part of the complete use of force incident packets for "controlled" uses of force—along with the incident report, reports from all levels of use of force review, and an inmate interview (if conducted).  If Defendants are suggesting that all documents related to each use of force should be presented to the Court, Plaintiffs wholeheartedly agree, and hope that Defendants will indeed produce the complete records to Plaintiffs in advance of the trial, as requested, so that these records may be introduced into evidence.

### 3.  The Use Of Force Videos Are Not Hearsay

Finally, Defendants claim certain statements made in the videos—which they fail to identify—constitute inadmissible hearsay, and request that all audio be excluded.  Defendants fail to recognize that all of the statements in the videos either are not hearsay or are subject to a hearsay exception.  Statements made by CDCR custody or other staff members are vicarious party admissions. FRE, Rule 801(d)(2).  The statements made by the inmate being subjected to force fall within exceptions to the hearsay rule, such as present sense impressions (FRE Rule 803(1)), excited utterances (FRE Rule 803(2)), a contemporaneous description of the speaker's mental, physical or emotional condition (FRE Rule 803(3)), or statements for the purpose of medical diagnosis or treatment (FRE Rule 803(4)).  Defendants can object to any

1  specific statements they believe are hearsay, and do not fall within an exception, at trial as
2  needed.
3      Defendants' claim that showing the videos *with* audio would "not paint a true and
4  accurate picture" and would "confuse the issues," but showing the videos *without* audio would
5  be more accurate, again, defies credibility.  The audio on the videos is directly relevant to the
6  Court's determination of the necessity and reasonableness of the use of force, whether the
7  mental health status of the inmate-patient was appropriately taken into account before and
8  during the use of force, whether there was harm to the inmate-patient as a result of the use of
9  force, and whether Defendants were deliberately indifferent to class members' mental health
10 needs.  Furthermore, as outlined above, Plaintiffs plan to introduce the videos with full use of
11 force packets concerning the incident, obviating Defendants' concerns regarding "context."

12    **B.    The Public Has A Right To View The Use Of Force Videos**
13        **1.    The Public's Essential Right of Access to Trials**
14      Public access to trials "protect[s] the free discussion of governmental affairs" that is
15 essential to the ability of "the individual citizen ... [to] effectively participate in and contribute
16 to our republican system of self-government." *Globe Newspaper Co. v. Superior Court*, 457
17 U.S. 596, 604, (1982) (internal quotation marks omitted).  The United States Supreme Court
18 has observed:

19      A trial is a public event.  What transpires in the court room is public property.
        If a transcript of the court proceedings had been published, we suppose none
20      would claim that the judge could punish the publisher for contempt. … Those
        who see and hear what transpired can report it with impunity.  There is no
21      special prerequisite of the judiciary which enables it, as distinguished from
        other institutions of democratic government, to suppress, edit, or censor events
22      which transpire in proceedings before it.
23

24 *Craig v. Harney*, 331 U.S. 367, 374 (1947).  As a consequence, "[u]nder the First
25 Amendment, the press and the public have a right of access to court proceedings and
26 documents." *Oregonian Publ'g Co. v. United States Dist. Court*, 920 F.2d 1462, 1465 (9th
27 Cir.1990); *see also* N*ixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978) ("It is clear
28

that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents.").

### 2. Defendants Have Not Identified Any Grounds To Deny Public Access To The Videos

Where "the State attempts to deny the right of access in order to inhibit the disclosure of sensitive information, it must be shown that the denial is necessitated by a compelling governmental interest, and is narrowly tailored to serve that interest." *Press–Enterprise Co. v. Superior Court*, 464 U.S. 501, 510 (1984). The evidence presented in this hearing is not exempt from that standard, and Defendants cite no legal authority to the contrary. *See*, e.g. *Newman v. Graddick,* 696 F.2d 796 (11th Cir.1983) (holding that First Amendment right of access specifically applies to hearings in class actions concerning prison overcrowding). Because, however, the videos do contain personally identifying information for inmates who were the victims of these uses of force, Plaintiffs request that the Court issue a narrow and targeted protective order directing any member of the public or press who views the videos not to publicly disclose the names, identification numbers, or other personally-identifying information of the class members depicted therein. Such a protective order would appropriately balance the need to protect the personally identifying information of the victims depicted in the videos, with the important First Amendment interest in allowing public access to the evidence presented at trial, including the videos.

Defendants also claim that public access to the videos should be denied because "Peace Officer" information is protected under undefined "state and federal privacy law." Defendants, however, fail to identify what "Peace Officer" information is protected and on what grounds.[2] Accordingly, their motion is overbroad, and should be denied on that basis

---

[2] To the extent that Defendants intend to rely upon California Penal Code section 832.7(a), it provides no basis for CDCR to limit access to the videos. Section 832.7 states that, under California law, peace officer or custodial officer ***personnel records*** are "confidential and shall not be disclosed in any criminal or civil proceeding except by discovery pursuant to Sections 1043 and 1046 of the Evidence Code" and is therefore inapplicable to the facts at hand. Furthermore this state law provision does not in any way prevent a document from being discoverable in federal litigation, which is governed by federal – not state – rules of privilege. *See* FRE, Rule 501, advisory committee note (federal "common law" governs claim of

alone. *See*, e.g., *Hall v. City of Fairfield*, 2012 U.S. Dist. LEXIS 48616 (E.D. Cal. 2012) (denying motion *in limine* where party did not provide the Court with the specific evidence claimed to be inadmissible). Certainly, Defendants have not presented adequate evidence that protection of such information from public disclosure constitutes a "compelling government interest." Defendants request to preclude public access to the videos should be denied.[3]

## IV.  CONCLUSION

Defendants have not identified any legitimate grounds for excluding or restricting access to the use of force videos at trial, and Plaintiffs respectfully request that the Court deny Defendants' motion *in limine*. So the parties can prepare for trial, Plaintiffs request that the Court decide this motion as soon as practicable.

K&L GATES LLP

Dated: September 19, 2013      By:   /s/ *Megan Cesare-Eastman*
                                     Jon Michaelson
                                     Jeffrey L. Bornstein
                                     Megan Cesare-Eastman
                                     Ranjini Acharya
                                     Attorneys for Plaintiffs

---

privilege in federal question cases); *Agster v. Maricopa County*, 422 F.3d 836, 839 (9th Cir. 2005). To support withholding of such records, CDCR must demonstrate that the "public interest in confidentiality outweighs the necessity for disclosure in the interest of justice." *Jackson v. County of Sacramento*, 175 F.R.D. 653, 655 (E.D. Cal. 1997). In civil rights cases, "current case law suggests the privacy interests police officers have in their records do not outweigh a Plaintiffs' interests in civil rights cases," especially where, as here, a protective order is in place. *Martinez v. City of Pittsburg*, Case No. C 11-01017 SBA (LB), 2012 U.S. Dist. LEXIS 27225, at *10-11 (N.D. Cal. Mar. 1, 2012) (citing cases); *see also Duenez v. City of Manteca*, Case No. 2:11-cv-1820 LKK AC, 2013 U.S. Dist. LEXIS 24954, at *10-11 (E.D. Cal. Feb. 22, 2013) ("Documents that are a part of the personnel records of officers defending civil rights actions, while containing sensitive information, are within the scope of discovery").

[3] To the extent necessary, the Protective Order can also be fashioned to limit or restrict the names and badge numbers of the officers involved in the specific incidents.