DONALD SPECTER – 083925
STEVEN FAMA – 099641
PRISON LAW OFFICE
1917 Fifth Street
Berkeley, California 94710-1916
Telephone: (510) 280-2621

MICHAEL W. BIEN – 096891
JANE E. KAHN – 112239
ERNEST GALVAN – 196065
THOMAS NOLAN – 169692
LISA ELLS – 243657
LORI E. RIFKIN – 244081
AARON J. FISCHER – 247391
MARGOT MENDELSON – 268583
KRISTA STONE-MANISTA – 269083
ROSEN BIEN
GALVAN & GRUNFELD LLP
315 Montgomery Street, Tenth Floor
San Francisco, California 94104-1823
Telephone: (415) 433-6830

JON MICHAELSON – 083815
JEFFREY L. BORNSTEIN – 099358
LINDA L. USOZ – 133749
MEGAN CESARE-EASTMAN – 253845
RANJINI ACHARYA – 290877
K&L GATES LLP
4 Embarcadero Center, Suite 1200
San Francisco, California 94111-5994
Telephone: (415) 882-8200

CLAUDIA CENTER – 158255
THE LEGAL AID SOCIETY –
EMPLOYMENT LAW CENTER
180 Montgomery Street, Suite 600
San Francisco, California 94104-4244
Telephone: (415) 864-8848

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>EDMUND G. BROWN, JR., et al.,<br><br>　　　　　Defendants. | Case No. Civ S 90-0520 LKK-DAD<br><br>**PLAINTIFFS' MEMORANDUM RE: ISSUES FOR TELEPHONIC STATUS CONFERENCE ON TRIAL PRESENTATION OF USE OF FORCE VIDEOS**<br><br>Judge: Hon. Lawrence K. Karlton<br>Date: September 30, 2013<br>Time: 11:00 a.m.<br>Crtrm.: 4 |

# INTRODUCTION

The Court requested that the parties be prepared to address various concerns about the conduct of the evidentiary hearing, scheduled to begin on Tuesday, October 1, 2013, at the telephonic status conference scheduled for Monday, September 30, at 11:00 a.m.

## I. The Trial Should Proceed As Scheduled.

Plaintiffs request that the Court proceed with the trial as scheduled, to commence on Tuesday, October 1 and Wednesday, October 2. Two expert witnesses, Eldon Vail (on Tuesday) and Dr. Edward Kaufman (on Wednesday) will testify in support of Plaintiffs' motion for enforcement of Court orders and affirmative relief related to CDCR's use of force and disciplinary measures against prisoners with mental illness. Both of these experts have again made arrangements to testify on these days at trial. Plaintiffs are willing to proceed with these witnesses no matter what decision is made about the use of force tapes in the courtroom.

## II. The Court's Order Concerning Use of Force Videos

On September 26, 2013, this Court, having considered the briefing by the parties concerning Defendants' Motion *in Limine* No. 6, issued its order denying Defendants' request to exclude the videos, to require them to be shown *in camera* only, or to exclude the audio portion of the videos. *See* Docket No. 4833. The Court properly balanced the interests of Plaintiffs in assuring full and complete review of the evidence by the finder of fact, of the public and press in their right to see, to hear and to attend a public trial, and the asserted privacy interests of the individual prisoners and CDCR staff. The Court ordered that no copies of the use of force videos will be released to the press and that no recording of the proceedings will be permitted. In addition, the Court ordered that members of the public or press who attend the hearing are prohibited from publicly disclosing the names, identification numbers, or other personally-identifying information of any inmate or any peace officer or other CDCR employee who may appear in any such video. *Id.* at 2-3.

The Court's order prohibiting the release of copies of the videos to the press, and prohibiting any recordings of the videos to be made, is well supported by case law

precedent.  In *Nixon v. Warner Communications*, 435 U.S. 589 (1978), the Supreme Court held that the press did not have a constitutional right to copies of taped conversations that were played for the jury and for the public in the courtroom.  The Court compared such tapes to the testimony of a live witness, finding that just as "there is no constitutional right to have [live] testimony recorded and broadcast," there is no First Amendment right of access to tapes that are played in open court during trial.  *Id.* at 610; *see also United States v. McDougal*, 103 F.3d 651, 659 (8th Cir. 1996), cert. denied, 522 U.S. 809 (1997); *United States v. Beckham*, 789 F.2d 401, 415 (6th Cir. 1986); *U.S. v. Mitchell*, 2010 U.S. Dist. LEXIS 21004 (D. Utah Mar. 8, 2010); *U.S. v. Kaufman*, 2005 U.S. Dist. LEXIS 23825 (D. Kan. Oct. 17, 2005)[1].  Paragraph 2.a of the Court's order is appropriate and well supported by existing law.

However, Paragraph 2.b of the Court's order, which prohibits public disclosure of "names, identification numbers or other personally-identifying information" of any inmate or CDCR staff member, may be considered an improper prior restraint and should be modified.   (Plaintiffs' counsel acknowledge that, in response to Defendants' Motion *in Limine*, we suggested that the Court include such a  provision.)  In *Craig v. Harney*, 331 U.S. 367 (1947), in reversing a finding of criminal contempt against various journalists for publishing what they saw and heard in a trial, the Court stated that "[a] trial is a public event.  What transpires in the court room is public property…. Those that see and hear what transpired can report it with impunity."  *Id.* at 374.  Likewise, the Supreme Court in *Oklahoma Publishing Co. v. District Court*, 430 U.S. 308 (1977), reversed a pretrial order enjoining the media from publishing or disseminating the name or picture of a minor child in a juvenile proceeding when that proceeding had been open to the public.

---

[1] In *Valley Broadcasting Co. v. U. S. Dist. Court,* 798 F.2d 1289 (9th Cir. Nev. 1986), the Ninth Circuit found a common law right of access to photos and tapes received into evidence but noted that its holding was fact-specific and limited to the record before it in that case and there may be considerations in other cases that would weigh against access.  In *Valley Broadcasting*, there was no privacy interest at stake where further broadcast of the evidence would lead to further degradation of victims.

Plaintiffs suggest that the Court modify Paragraph 2.b to make it a request to the press and public, rather than an order. In the alternative, Paragraph 2.b should be withdrawn. Plaintiffs do not suggest that the interests of privacy that the Court sought to protect through this part of the order must be ignored. There are various steps, discussed below, that can be taken to permit the tapes to be used appropriately in the evidentiary hearing while minimizing any invasion of privacy of any prisoner or CDCR employee who appears on the tapes.

Plaintiffs request that the Court order Defendants to bring the videos to chambers on Monday (September 30) to permit the Court to see and hear at least one video in advance of trial. This will allow for a greater understanding of the risk of personal identification and how any such risk may be addressed or properly minimized while ensuring that the trial may timely proceed.

### III. The Videos May Be Played in Court While Properly Balancing Privacy Interests and the Public's Right of Access to the Proceedings.

Plaintiffs make the following suggestions on how to permit the playing of the unedited tapes in the courtroom at trial while minimizing risk of personal identification of prisoners or CDCR employees. Because Defendants have not permitted Plaintiffs' counsel and their experts to have possession of the videos, Plaintiffs' ability to address these issues with specificity has been unfairly limited. However, these suggestions will almost certainly address any privacy interests at stake here, and strike an appropriate balance between any such privacy interests and the public's right of access to court proceedings.

#### A. The Video Introductions that Contain Personal-Identifying Information Need Not Be Played in Open Court, and Can Be Omitted Without Time- or Labor-Intensive Editing.

The Court should order that neither party play in open court the introductory portion of each use of force incident video, as such introductions are the primary source of personal-identifying information. In these introductory portions, each correctional officer and CDCR employee identifies himself or herself on camera, and the full (first and last) name and CDCR number of the inmate is stated to the camera. To Plaintiffs' best

recollection, only the last name of the prisoner victims is used in other parts of the videos. It is highly unlikely that an individual person could be identified by the shouting of a last name (without first name or CDCR number, and without provision of spelling of the last name) on a video tape played in a courtroom. In other words, with the omission of these introductions, which are in any event not germane to the critical issues before the Court, privacy interests will be protected without undue restraint of the public's right of access or the parties' ability to present relevant evidence. In addition, as counsel for the Plaintiff class, we have determined that any such risk regarding class member privacy is outweighed by the benefit – both to these individuals and to the class as a whole – of obtaining an order prohibiting these barbaric practices against mentally ill prisoners in the future.

Video footage containing audio with prisoners' last names spoken pose minimal risk of invading privacy. Plaintiffs' counsel have undertaken a search of the last names of the prisoners who appear on the videos, using the CDCR's online "Inmate Locator" system. Using the actual last names and proper spelling (a courtroom observer would be guessing at spelling), Plaintiffs' counsel found the following occurrence of prisoners with the same last name as the prisoners in the tapes, respectively: 174, 32, 3, 857, 17, 1000+, 98, 980, and 18. Two of the men have been released and do not appear on the "Inmate Locator" system. It is highly unlikely that an individual prisoner shown on the video played in the courtroom could be identified, whether through the audio or video images.

**B.  The Court May Permit Presentation of the Videos and Admit Them in Evidence While Ordering Creation of Edited Versions that Redact Audio or Images that Carry Even a Minor Risk of Allowing Personal Identification.**

Plaintiffs request that the Court permit the parties to show the use of force portions of the videos, omitting only the portions discussed in Part III.A, above. Plaintiffs have consulted with various technical professionals concerning the process of editing the use of force videos to enhance protection against the identification of individuals who appear in

4

PLAINTIFFS' MEMORANDUM RE: ISSUES FOR TELEPHONIC STATUS CONFERENCE ON TRIAL PRESENTATION OF USE OF FORCE VIDEOS

1  the videos. Plaintiffs understand that editing the audio (*i.e.*, bleeping out names) is an
2  easier and more rapid process than editing the video to blur faces. Audio editing might
3  take only a few days. Video editing might take up to a week. Neither process is unduly
4  expensive. Because Plaintiffs have been denied possession of a copy of the videos,
5  Plaintiffs are unable to provide more specific estimates of the cost and time requirements
6  for such editing at this time.

7      The Court could order Defendants to have the videos edited once there is agreement
8  on what sounds should be bleeped or images blurred. The original unedited video should
9  be preserved with a copy filed with the court, under seal, and made part of the record of
10 these proceedings.

13 DATED: September 30, 2013    Respectfully submitted,

ROSEN BIEN GALVAN & GRUNFELD LLP

By: */s/ Michael W. Bien*
    Michael W. Bien

Attorneys for Plaintiffs

960394-6