DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST.
SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
TELEPHONE (213) 633-6800
FAX (213) 633-6899

KELLI L. SAGER (State Bar No. 120162)
  kellisager@dwt.com
ROCHELLE L. WILCOX (State Bar No. 197790)
  rochellewilcox@dwt.com

LOS ANGELES TIMES COMMUNICATIONS LLC
KARLENE GOLLER (State Bar No. 147065)
202 West First Street
Los Angeles, California 90012
Telephone:  (213) 237-3760 / Fax:  (213) 237-3810

Attorneys for Non-Party Press Organization
LOS ANGELES TIMES
COMMUNICATIONS LLC

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al., | Case No. **CIV. S-90-520 LKK/JF (PC)** |
| | Assigned to the Hon. |
| Plaintiff, | Lawrence K. Karlton |
| | |
| vs. | **NOTICE OF MOTION AND** |
| | **MOTION OF NON-PARTY PRESS** |
| EDMUND G. BROWN, JR., et al., | **ORGANIZATION LOS ANGELES** |
| | **TIMES COMMUNICATIONS LLC** |
| Defendants. | **FOR AN ORDER TO INTERVENE** |
| | **AND TO MODIFY PROTECTIVE** |
| | **ORDER; MEMORANDUM OF** |
| | **POINTS AND AUTHORITIES;** |
| | **DECLARATION OF ROCHELLE L.** |
| | **WILCOX WITH EX. A** |
| | |
| | Hearing Date:  October 1, 2013 |
| | Time:          9:00 a.m. |
| | Ctrm:          4, 15th Floor |

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on October 1, 2013, at 9:00 a.m. or as soon thereafter as the matter may be heard, in Courtroom 4 of the above-entitled Court, located at 501 I Street, 15th Floor, Sacramento, CA 95814, non-party Press Organization Los Angeles Times Communications LLC ("The Times"), will and hereby does move this Court for an order allowing The Times to intervene for the limited purpose of seeking modification of the Order entered by this Court on September 26, 2013 (the "Order") to the extent that it purports to restrain The Times from publishing information that it may acquire at the evidentiary hearing to be held in this matter on October 1, 2013, or is intended to prevent The Times from publishing information that it either has in its possession already, or acquires independently.[1]  This Motion is made on the following grounds:

1.   It is well established that the public and the press have a right to intervene to protect their First Amendment rights.  Courts consistently have held that intervention "is the procedurally correct course" for third-party challenges to orders that may burden free-speech rights.  See, e.g., Public Citizens v. Liggett Group, Inc., 858 F.2d 775, 783 (1st Cir. 1988); Beckman Indus., Inc. v. Int'l Ins. Co., 966 F.2d 470, 472-473 (9th Cir. 1991); In re Associated Press, 162 F.3d 503, 508 (7th Cir. 1998) (reversing district court and finding that "the Press ought to have been able to intervene in order to present arguments against limitations on the constitutional or common law right of access"); In re Knight Publishing Co., 743 F.2d 231, 234 (4th Cir. 1984) ("[t]o facilitate a trial court's case-by-case determination of closure, 'representatives of the press and general public must be given an opportunity to be heard on the question of their exclusion'" from proceedings).  Here, the Court's Protective Order extends to, and purports to

---

[1] The Times reserves its right to raise other objections to the Protective Order if necessary through a future proceeding.

MOTION TO INTERVENE, MODIFY PROTECTIVE ORDER
DWT 22675854v2 0026175-000450

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

govern, everyone who is present in the courtroom during the evidentiary hearing in this matter.  Thus, The Times will be directly impacted by the Court's Protective Order, which functions as a prior restraint, and has a right to intervene to challenge the Order.

2.    The Supreme Court has made clear that government censorship in the form of a prior restraint is "the most serious and the least tolerable infringement on First Amendment rights."  Nebraska Press Ass'n v. Stuart, 427 U.S. 539, 559 (1976).  Because prior restraints are so antithetical to the First Amendment, they are "presumptively unconstitutional," id., and may be contemplated "only where the evil that would result from the reportage is both great and certain and cannot be militated by less intrusive measures."  CBS v. Davis, 510 U.S. 1315, 1317 (1994) (Blackmun, J., in chambers).  Defendants have not met their high burden here.

Good cause exists for the Court to hear The Times' Motion immediately. The Protective Order was entered on September 26, 2013 – only three court days before the October 1, 2013 evidentiary hearing at which the videotapes will be played.  It effectively demands that news organizations like The Times make the Hobson's Choice of foregoing attendance at the evidentiary hearing, or being subjected to a prior restraint.  As the United States Supreme Court has held, courts should resolve challenges to the validity of a prior restraint on an expedited basis. See Freedman v. Maryland, 380 U.S. 51, 59 (1965) (holding that determination of validity of prior restraint "must be limited to the shortest fixed period compatible with sound judicial resolution"); Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 70 (1963) (prior restraint must be "assured an almost immediate determination of the validity of the restraint").  See also Elrod v. Burns, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, even for minimal periods of time, unquestionably constitutes irreparable injury").  Because any delay will necessarily cause irreparable harm to The Times, it requests that the Court allow this Motion to be presented before the start of the evidentiary hearing on October 1.

MOTION TO INTERVENE, MODIFY PROTECTIVE ORDER
DWT 22675854v2 0026175-000450

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

This Motion is based on the accompanying Memorandum of Points and Authorities and Declaration of Rochelle L. Wilcox with Exhibit A; on all pleadings, records, and files in this case; on all matters of which judicial notice may be taken; and on such argument as may be presented at any hearing on this Motion.

For all the reasons set forth above, non-party media organization Los Angeles Times Communications LLC respectfully requests that the Court grant this Motion and modify the Protective Order that it entered in this matter on September 26, 2013, to remove any restrictions on the rights of The Times or any other member of the public or press to report fully on the evidentiary hearing, including information that may be disclosed in the videotapes shown in open court.

DATED:  September 30, 2013             DAVIS WRIGHT TREMAINE LLP
                                       KELLI L. SAGER
                                       ROCHELLE L. WILCOX

                                       LOS ANGELES TIMES COMMUNICATIONS LLC
                                       KARLENE GOLLER


                                       By: /s/ Rochelle L. Wilcox
                                               Rochelle L. Wilcox

                                       Attorneys for Non-Party Press Organization
                                       LOS ANGELES TIMES
                                       COMMUNICATIONS LLC

MOTION TO INTERVENE, MODIFY PROTECTIVE ORDER
DWT 22675854v2 0026175-000450

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# TABLE OF CONTENTS

Page

1.   SUMMARY OF ARGUMENT ................................................................ 1

2.   THE TIMES SHOULD BE PERMITTED TO INTERVENE FOR
     THE LIMITED PURPOSE OF CHALLENGING THE PROTECTIVE
     ORDER. .......................................................................................... 4

3.   ORDERS RESTRAINING THE PRESS FROM PUBLISHING
     INFORMATION IT LAWFULLY ACQUIRES ARE
     PRESUMPTIVELY UNCONSTITUTIONAL. ...................................... 5

     A.   Prior Restraints Are Presumptively Unconstitutional. ......................... 5

     B.   The Press And Public Have A First Amendment Right To
          Publish Information That They Obtain In Open Court
          Proceedings. ............................................................................. 8

          1.   The Supreme Court Has Never Affirmed An Order
               Restraining Publication Of Information Disclosed
               In Open Court. ................................................................. 8

          2.   Other Courts Consistently Reject Attempts To
               Restrain The Press From Publishing Information
               Acquired In Open Court. ................................................. 11

          3.   The Order Does Not Come Close To Satisfying The
               Stringent Standard To Justify A Prior Restraint. ................... 14

     C.   The Public And Press Have A Presumptive Right To View The
          Videos That Will Be Shown In The Evidentiary Hearing. ................. 16

          1.   The Press And Public Have A Presumptive Right
               Of Access To View The Videotapes. ................................... 16

          2.   The Order Does Not Satisfy The Stringent
               Requirements To Overcome The Presumptive Right
               Of Access. ..................................................................... 19

4.   CONCLUSION .............................................................................. 21

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST. SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# TABLE OF AUTHORITIES

<u>Page</u>

**Cases**

<u>Beckman Indus. v. International Ins. Co.</u>,
966 F.2d 470 (9th Cir. 1992) ..................................................................... 4

<u>Brown & Williamson Tobacco Corp. v. FTC</u>,
710 F.2d 1165 (6th Cir. 1983) ................................................... 18, 19

<u>California ex rel. Lockyer v. Safeway, Inc.</u>,
355 F. Supp. 2d 1111 (C.D. Cal. 2005) ..................................... 17, 19

<u>CBS, Inc. v. District Court</u>,
765 F.2d 823 (9th Cir. 1985) ......................................................... 17

<u>CBS v. Davis</u>,
510 U.S. 1315 (1994) (Blackmun, J., in chambers) ....................... 1, 7

<u>Cooper v. Rockford Newspapers, Inc.</u>,
34 Ill. App. 3d 645, 339 N.E.2d 477 (1975) ..................................... 13

<u>Cox Broadcasting Corp. v. Cohn</u>,
420 U.S. 469 (1975)..................................................... 2, 8, 9, 11

<u>Craig v. Harney</u>,
331 U.S. 367 (1947)................................................................. 8, 9

<u>Elrod v. Burns</u>,
427 U.S. 347 (1976)...................................................................... 4

<u>Evans v. Evans</u>,
162 Cal. App. 4 1157, 1166-1171 (2008) ......................................... 13

<u>Florida Star v. B.J.F.</u>,
491 U.S. 524 (1989).................................................................. 2, 3, 11

<u>Foltz v. State Farm Mut. Auto. Ins. Co.</u>,
331 F.3d 1122 (9th Cir. 2003) ...................................................... 16

<u>Freedom Communications, Inc. v. Superior Court</u>,
167 Cal. App. 4th 150 (2008) .............................................. 12, 13, 14

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST. SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Gilbert v. National Enquirer, Inc.,
    43 Cal. App. 4th 1135 (1996) ........................................................... 15

Globe Newspaper Co. v. Superior Court,
    457 U.S. 596, 102 S. Ct. 2613, 73 L. Ed. 2d 248 (1982)........................ 4, 17, 19

H.B. Fuller Co. v. Doe,
    151 Cal. App. 4th 879 (2007) ........................................................... 20

Hagestad v. Tragesser,
    49 F.3d 1430 (9th Cir. 1995) ........................................................... 18

Hurvitz v. Hoefflin,
    84 Cal. App. 4th 1232 (2000) ........................................................ 3, 15, 20

In re Associated Press,
    162 F.3d 503 (7th Cir. 1998) ........................................................... 4

In re Coordinated Pretrial Proceedings in Petroleum Prod. Antitrust Litig.,
    101 F.R.D. 34 (C.D. Cal. 1984) ........................................................ 18

In re Knight Publishing Co.,
    743 F.2d 231 (4th Cir.1984) ........................................................... 4

In re McClatchy Newspapers, Inc.,
    288 F.3d 369 (9th Cir. 2001) ........................................................ 19, 20

In re Shortridge,
    99 Cal. 526 (1893) ........................................................... 8

Kamakana v. City & County of Honolulu,
    447 F.3d 1172 (9th Cir. 2006) ........................................................ 18, 19, 21

Kansas v. Alston,
    256 Kan. 571, 887 P.2d 681 (1994) ................................................. 13

KCST-TV Channel 39 v. Municipal Court,
    201 Cal. App. 3d 143 (1988) ........................................................... 5

Landmark Communications, Inc. v. Virginia,
    435 U.S. 829 (1978) ........................................................... 10

Loder v. Municipal Court,
    17 Cal. 3d 859 (1976) ........................................................... 20

MOTION TO INTERVENE, MODIFY PROTECTIVE ORDER
DWT 22675854v2 0026175-000450

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST. SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Matter of Continental Illinois Securities Litigation,
    732 F.2d 1302 (7th Cir. 1984) ........................................................... 18

NBC Subsidiary (KNBC-TV), Inc. v. Superior Court,
    20 Cal. 4th 1178 (1999) ....................................................... 16, 17, 19

Near v. Minnesota,
    283 U.S. 697 (1931) ............................................................... 1, 6, 21

Nebraska Press Ass'n v. Stuart,
    427 U.S. 539 (1976) ................................................................ passim

New York Times v. United States,
    403 U.S. 713 (1971) (Brennan, J., concurring) ............................... passim

Oklahoma Publishing Co. v. District Court,
    430 U.S. 308 (1977) ........................................................ 2, 3, 10, 11

Oregonian Publishing Co. v. District Court,
    920 F.2d 1462 (9th Cir. 1990) ........................................................ 16

Organization for a Better Austin v. Keefe,
    402 U.S. 415 (1971) ..................................................................... 14

Perry v. Sindermann,
    408 U.S. 593 (1972) ..................................................................... 15

Press-Enterprise Co. v. Superior Court,
    464 U.S. 501 (1984) ..................................................................... 16

Press-Enterprise Co. v. Superior Court,
    478 U.S. 1 (1986) 478 U.S. ............................................................ 16

Proctor & Gamble. Bankers Trust Co.,
    78 F.3d 219 (6th Cir. 1996) ............................................................ 14

Public Citizens v. Liggett Group, Inc.,
    858 F.2d 775 (1st Cir. 1988) ............................................................. 4

Publicker Industries, Inc. v. Cohen,
    733 F.2d 1059 (3d Cir. 1984) .......................................................... 18

Richmond Newspapers, Inc. v. Virginia,
    448 U.S. 555 (1980) ....................................................... 16, 17, 18, 19

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST. SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Russell v. Gregoire,
124 F.3d 1079 (9th Cir. 1997) .......................................................................... 20

San Jose Mercury News, Inc. v. District Court,
187 F.3d 1096 (9th Cir. 1999) .......................................................................... 18

Sheppard v. Maxwell,
384 U.S. 333 (1966) ........................................................................................... 9

Sipple v. Chronicle Publ'g Co.,
154 Cal. App. 3d 1040 (1984) .......................................................................... 20

Smith v. Daily Mail Publ'g Co.,
443 U.S. 97 (1979) .............................................................................. 10, 11, 14

South Coast Newspapers, Inc. v. Superior Court,
85 Cal. App. 4th 866 (2000) ............................................................................... 3

Southeastern Promotions v. Conrad,
420 U.S. 546 (1975) ............................................................................................ 6

State ex rel. Superior Court v. Sperry,
79 Wn. 2d 69, 483 P.2d 608 (1971) ............................................................ 13, 14

State v. Coe,
101 Wn. 2d 364, 679 P.2d 353 (1984) ............................................................. 14

Sun Co. of San Bernardino v. Superior Court,
29 Cal. App. 3d 815 (1973) .............................................................................. 12

Virginia Dep't of State Police v. Washington Post,
386 F.3d 567 (4th Cir. 2004) ........................................................................... 19

Waller v. Georgia,
467 U.S. 39 (1984) ............................................................................................ 16

**Constitutional Provisions**

United States Constitution, First Amendment ................................................. *passim*

United States Constitution, Fourteenth Amendment ......................................... 9, 10

United States Constitution, Sixth Amendment ..................................................... 2

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST. SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

**Other Authorities**

Mintz, J., The Remains of Privacy's Disclosure Tort, 55 Md. L. Rev. 425, 455 (1996) .......................................................................................... 7

Smolla, R., Smolla & Nimmer on Freedom of Speech § 15:10 (2004) .................... 6

MOTION TO INTERVENE, MODIFY PROTECTIVE ORDER
DWT 22675854v2 0026175-000450

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST. SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## MEMORANDUM OF POINTS AND AUTHORITIES

## 1.    SUMMARY OF ARGUMENT

The Court's September 26, 2013, Order includes a paragraph that on its face is an unconstitutional prior restraint.  <u>See</u> Order at ¶ 2.b.  The Order, as drafted, purports to prevent The Times – or any other member of the media whose representatives attend the evidentiary hearing – from reporting certain information disclosed at that public proceeding; moreover, the breadth of the language suggests that it would prohibit The Times from identifying public officials who appear in videos that will be shown at the hearing, even if the information is already in its possession, or is acquired independently.  <u>Id.</u>

The Supreme Court has described prior restraints as the "most serious and least tolerable infringement on First Amendment rights."  <u>Nebraska Press Ass'n v. Stuart</u>, 427 U.S. 539, 559 (1976).  Granting an emergency stay of a prior restraint against a news organization, Justice Blackmun declared that such orders are a "most extraordinary remedy" that may be used "only where the evil that would result from the reportage is both great and certain and cannot be militated by less intrusive measures."  <u>CBS v. Davis</u>, 510 U.S. 1315, 1317 (1994) (Blackmun, J., in chambers).  The Supreme Court has announced that prior restraints may be justified, if at all, only in the rarest circumstances, such as to prevent the dissemination of information about troop movements during wartime, <u>Near v. Minnesota</u>, 283 U.S. 697, 716 (1931), or to "suppress[] information that would set in motion a nuclear holocaust."  <u>New York Times v. United States</u>, 403 U.S. 713, 726 (1971) (Brennan, J., concurring).  To date, those circumstances have remained purely hypothetical; the Court consistently has invalidated prior restraints, even where substantial interests would be impaired by the publication sought to be enjoined.  <u>See</u>, <u>e.g.</u>, <u>Near</u>, 283 U.S. at 716-718 (invalidating prior restraint against defamatory and racist publication that allegedly disturbed the "public peace"); <u>Nebraska Press</u>, 427 U.S. at 556-561 (invalidating prior restraint against publication of information about

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST. SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

criminal defendant's confession, despite alleged risk to Sixth Amendment rights); New York Times, 403 U.S. at 714 (invalidating prior restraint against publication of the "Pentagon Papers," despite the government's argument that disclosure of that information posed a "grave and immediate danger" to national security).

The Supreme Court has been particularly hostile to prior restraints that prohibit the press from publishing information obtained during court proceedings or from other government proceedings or records.  In Nebraska Press, the Court announced that the "protection against prior restraint should have particular force as applied to reporting of criminal proceedings."  427 U.S. at 559.  Absent a "clear and present danger" to a "state interest of the highest order," such restraints are flatly unconstitutional.  See also Florida Star v. B.J.F., 491 U.S. 524, 533 (1989); Cox Broadcasting Corp. v. Cohn, 420 U.S. 469, 496-497 (1975); Oklahoma Publishing Co. v. District Court, 430 U.S. 308, 309-311 (1977).  Indeed, the Supreme Court has held that not even protecting the identity of a rape victim (Florida Star, 491 U.S. at 537; Cox Broadcasting, 420 U.S. at 496), or the identity of a child charged with murder (Oklahoma Publishing, 430 U.S. at 311), justifies a restriction on the press' right to publish.

Nebraska Press highlights the extraordinarily heavy constitutional presumption against prior restraints that prevent the press from disseminating information about criminal proceedings.  In that case, the Supreme Court struck down a prior restraint that barred the media from publishing information about a defendant's alleged confession in a highly-publicized mass-murder case in rural Nebraska, rejecting the argument that the potential prejudice to the defendant's Sixth Amendment right to a fair trial trumped the press' First Amendment right to be free of government censorship.  427 U.S. at 556-561.  If the defendant's fair-trial rights did not justify a prior restraint in those circumstances – involving the imminent disclosure of highly inculpatory information about an emotionally-charged crime, in a county with a relatively small jury pool – then the presumption

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST. SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

against such orders is virtually insurmountable.  Not surprisingly, one California appellate court observed that it is "unaware of any case, in either federal or state court, that has upheld a prior restraint under the <u>Nebraska Press</u> criteria."  <u>South Coast Newspapers, Inc. v. Superior Court</u>, 85 Cal. App. 4th 866, 870 (2000) (emphasis added).

Given this clear authority, Defendants do not come close to meeting their heavy burden to justify this Court's prior restraint.  Their Motion merely invoked general privacy interests – without any elaboration or explanation – even though the information sought to be restrained includes the identity of public law enforcement officials who are alleged to have engaged in misconduct.  Motion <u>In</u> <u>Limine</u> No. 6, Docket No. 4797, at 4; <u>see</u> <u>also</u> Opposition to Motion <u>In</u> <u>Limine</u> No. 6, Docket No. 4820, at 6; Plaintiffs' Memorandum Re: Issues For Telephonic Status Conference On Trial Presentation Of Use Of Force Videos, Docket No. 4844, at 2-3.  But this is not nearly enough to justify the extreme relief the Court has ordered.  As the Supreme Court consistently has held, privacy interests do not come close to justifying a prior restraint on speech.  <u>See</u>, <u>e.g.</u>, <u>Florida Star</u>, 491 U.S. at 537; <u>Oklahoma Publishing</u>, 430 U.S. at 311; <u>Hurvitz v. Hoefflin</u>, 84 Cal. App. 4th 1232, 1241 (2000).  Because the parties did not and cannot enunciate any other basis for the Court's Protective Order, Paragraph 2.b. should be removed in its entirety.

Finally, it does not matter that the Court's Order is prospective, and purports to restrain the publication of information that may be revealed in an open court proceeding.  As numerous cases make clear, the prior restraint analysis applies fully to orders entered before the information is disclosed, as well as those orders restraining the media from publishing information already in its possession.  Moreover, The Times has a presumptive right of access to attend the evidentiary hearing and view all evidence that will be shown there.  Defendants have not met their heavy burden to justify closure of the evidentiary hearing, or to prevent the press and public from viewing the videotapes that are the subject of the hearing.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST. SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## 2.  THE TIMES SHOULD BE PERMITTED TO INTERVENE FOR THE LIMITED PURPOSE OF CHALLENGING THE PROTECTIVE ORDER.

It is well established that the press has standing to challenge orders that restrain the rights of the press to report on court proceedings.  See, e.g., Globe Newspaper Co. v. Superior Court, 457 U.S. 596, 609 n.25, 102 S. Ct. 2613, 73 L. Ed. 2d 248 (1982) (newspaper has right to be heard on issue of exclusion from court proceedings).  As numerous courts have held, intervention "is the procedurally correct course" for third-party challenges to orders that may burden free-speech rights.  See, e.g., Public Citizens v. Liggett Group, Inc., 858 F.2d 775, 783 (1st Cir. 1988); Beckman Indus. v. Int'l Ins. Co., 966 F.2d 470, 473 (9th Cir. 1992) (non-parties should be permitted to intervene for the purpose of challenging limitations on the right of access); In re Associated Press, 162 F.3d 503, 508 (7th Cir. 1998) ("the Press ought to have been able to intervene in order to present arguments against limitations on the constitutional or common law right of access"); In re Knight Publishing Co., 743 F.2d 231, 234 (4th Cir.1984) ("[t]o facilitate a trial court's case-by-case determination of closure, 'representatives of the press and general public must be given an opportunity to be heard on the question of their exclusion'" from proceedings).

In addition, The Times should be allowed to bring this Motion on an expedited basis, to ensure that its rights can be resolved immediately.  "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."  Elrod v. Burns, 427 U.S. 347, 373 (1976) (emphasis added).  A prior restraint is an "immediate and irreversible sanction," Nebraska Press, 427 U.S. at 559, and "every moment's continuance of [such an order] amounts to a flagrant, indefensible, and continuing violation of the First Amendment."  New York Times, 403 U.S. at 714-715 (Black, J., concurring).  As one court emphasized, "[i]t is irrelevant that a restraint is specifically limited in

MOTION TO INTERVENE, MODIFY PROTECTIVE ORDER
DWT 22675854v2 0026175-000450

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST. SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

time[.]" <u>KCST-TV Channel 39 v. Municipal Court</u>, 201 Cal. App. 3d 143, 146 (1988) (internal citations omitted).

For these reasons, The Times should be permitted to intervene in this case for the limited purpose of challenging the Protective Order.  The Times has been closely monitoring and reporting on these high-profile cases.  <u>See</u> Ex. A.  Allowing The Times to intervene for the purpose of asserting its own rights to be free of the Court's prior restraint is essential so that it can continue to report on these proceedings.  Thus, The Times respectfully requests that it be allowed to intervene in these proceedings to challenge the portion of the Court's Order entered September 26, 2013, that restrains the press and the public from publishing the identities of individuals who may be shown in the videos that will be displayed at the evidentiary hearing.

### 3.   ORDERS RESTRAINING THE PRESS FROM PUBLISHING INFORMATION IT LAWFULLY ACQUIRES ARE PRESUMPTIVELY UNCONSTITUTIONAL.

**A.     Prior Restraints Are Presumptively Unconstitutional.**

The United States Supreme Court has cautioned that "[o]ur liberty depends on the freedom of the press, and that cannot be limited without being lost." <u>Nebraska Press</u>, 427 U.S. at 548 (quoting 9 Papers of Thomas Jefferson 239 (J. Boyd ed. 1943)).  Thus, "[r]egardless of how beneficent-sounding the purposes of controlling the press might be," the Court has "remain[ed] intensely skeptical about those measures that would allow government to insinuate itself into the editorial rooms of this Nation's press." <u>Id.</u> at 560-561 (citation omitted).  The Court's unyielding hostility toward prior restraints is the most important manifestation of that skepticism.

At its core, the prior restraint doctrine expresses a constitutional aversion to government censorship of the press.  The Supreme Court has explained that prior

MOTION TO INTERVENE, MODIFY PROTECTIVE ORDER
DWT 22675854v2 0026175-000450

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST. SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

restraints against speech must be held to a stricter standard than even post-publication criminal penalties because:

> a free society prefers to punish the few who abuse rights of speech after they break the law than to throttle them and all others beforehand.  It is always difficult to know in advance what an individual will say, and the line between legitimate and illegitimate speech is often so finely drawn that the risks of freewheeling censorship are formidable.

Southeastern Promotions v. Conrad, 420 U.S. 546, 559 (1975).

When the government, including the judiciary, censors the press, it harms the "main purpose" of the First Amendment, which is "to prevent all such previous restraints upon publications as [have] been practiced by other governments." Nebraska Press, 427 U.S. at 557.  It is widely agreed that "[t]here is, indeed, something peculiarly totalitarian about government systems of prior restraint."  R. Smolla, Smolla & Nimmer on Freedom of Speech § 15:10 (2004).  The Supreme Court has "learned … from what we view as the unhappy experiences of other nations where government has been allowed to meddle in the internal editorial affairs of newspapers."  Nebraska Press, 427 U.S. at 560.  This core principle is critical here; "the history and language of the First Amendment support the view that the press must be left free to publish news, whatever the source, without censorship, injunctions, or prior restraints."  New York Times, 403 U.S. at 717 (Black, J., concurring).

The Supreme Court's modern prior restraint jurisprudence dates to 1931, when the Court vacated a prior restraint against an anti-Semitic newspaper that disturbed the "public peace" and provoked "assaults and the commission of crime." Near, 283 U.S. at 716.  After discussing the framers' hostility toward prior restraints, Chief Justice Hughes suggested that such orders might be granted only in "exceptional" circumstances, such as to block the publication of information about the movement of soldiers or the sailing dates of troop ships during wartime.  Id.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST. SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Forty years later, in <u>New York Times</u>, the Supreme Court reaffirmed the high constitutional barrier against prior restraints. 403 U.S. at 714. There, the Court unanimously rejected the government's request for an order barring two newspapers from publishing information that the government alleged was stolen from the Department of Defense and contained highly sensitive national security information about the Vietnam War. <u>Id.</u>

Similarly, in <u>CBS v. Davis</u>, 510 U.S. 1315, 1316-1317 (1994) (Blackmun, J., in chambers), the Supreme Court granted an emergency stay of the trial court's preliminary injunction that barred CBS from broadcasting a news report on unsanitary conditions at a beef processor, even though CBS was a defendant in the processor's civil lawsuit arising from the report. In so doing, Justice Blackmun expressly rejected the argument that the First Amendment prior restraint doctrine was inapplicable because CBS allegedly obtained a videotape of the conditions "through calculated misdeeds." <u>Id.</u> at 1316. He noted that "the gagging of publication has been considered acceptable only in exceptional cases," and found that the processor's speculative claims of harm did not meet the burden for imposing "this most extraordinary remedy." <u>Id.</u> at 1317-1318.

These decisions demonstrate the extraordinarily high standard that the government must meet before it can prevent the press from publishing information that it lawfully obtains. As one commentator has explained, the Court's decisions have "raised the presumptive level [of this standard] beyond realistic reach." J. Mintz, The Remains of Privacy's Disclosure Tort, 55 Md. L. Rev. 425, 455 (1996). As shown below, the Court's Order, which restrains the press from publishing information that they acquire in open court proceedings, did not meet that high standard.

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST. SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

**B.    The Press And Public Have A First Amendment Right To Publish Information That They Obtain In Open Court Proceedings.**

**1.    The Supreme Court Has Never Affirmed An Order Restraining Publication Of Information Disclosed In Open Court.**

The Supreme Court consistently has rejected orders that attempt to prevent the press from publishing information about court proceedings.  Indeed, as far back as <u>Craig v. Harney</u>, 331 U.S. 367, 374 (1947), the Court made clear that "[a] trial is a public event.  What transpires in the court room is public property."  In a discussion that is squarely on point here, the <u>Craig</u> Court noted that "[i]f a transcript of the court proceedings had been published, we suppose none would claim that the judge could punish the publisher for contempt. … <u>Those who see and hear what transpired can report it with impunity</u>."  <u>Id.</u> (emphasis added).  Put simply, "[t]here is no special perquisite of the judiciary which enables it … to suppress, edit, or censor events which transpire in proceedings before it."  <u>Id.</u>  As the California Supreme Court observed more than a century ago, "it is a first principle that the people have the right to know what is done in their courts."  <u>In re Shortridge</u>, 99 Cal. 526, 530-531 (1893).

In one of its first modern decisions addressing this issue, the Court nullified a Georgia statute that prohibited the disclosure of rape victims' names, finding in favor of a television station that identified a victim whose name was disclosed in public court records.  <u>Cox Broadcasting</u>, 420 U.S. at 496.  The issue there, as defined by the Court, was "whether the State may impose sanctions on the accurate publication of the name of a rape victim obtained from public records – more specifically, from judicial records which are maintained in connection with a public prosecution and which themselves are open to public inspection."  <u>Id.</u> at 491.  The Court held:  "We are convinced that the State may not do so."  <u>Id.</u>  After discussing the importance of the press in a free society – and its key role in reporting on the

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST. SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

courts – the Court declared that "[w]e are reluctant to embark on a course that would make public records generally available to the media but forbid their publication[.]"  Id. at 496.  The Court explained:

> At the very least, the First and Fourteenth Amendments will not allow exposing the press to liability for truthfully publishing information released to the public in official court records.  If there are privacy interests to be protected in judicial proceedings, the States must respond by means which avoid public documentation or other exposure of private information.  Their political institutions must weigh the interests in privacy with the interests of the public to know and of the press to publish.  <u>Once true information is disclosed in public court documents open to public inspection, the press cannot be sanctioned for publishing it</u>.

Id. at 496 (emphasis added).

A few years later, the Court rejected an order restraining the press from publishing information released in open court.  <u>Nebraska Press Ass'n</u>, 427 U.S. 539.  There, promptly after the case was filed, the court entered an order that "prohibited everyone in attendance from 'releas[ing] or authoriz[ing] the release for public dissemination in any form or manner whatsoever any testimony given or evidence adduced."  Id. at 542.  The "preliminary hearing was held the same day, open to the public but subject to the order."  Id. at 543.  The press filed a motion challenging the order and the court entered a different order restraining them from publishing five categories of information.  Id. at 543.  On review, the state supreme court narrowed the order, prohibiting the press from reporting on any confession in the case, or "other facts 'strongly implicative' of the accused."  Id. at 545.  The Supreme Court reversed the prior restraint, holding:

> To the extent that this order prohibited the reporting of evidence adduced at the open preliminary hearing, it plainly violated settled principles:  "[T]here is nothing that proscribes the press from reporting events that transpire in the courtroom."  <u>Sheppard v. Maxwell</u>, 384 U.S. at 362-363.  <u>See also</u> <u>Cox Broadcasting Corp. v. Cohn</u>, 420 U.S. 469 (1975); <u>Craig v. Harney</u>, 331 U.S. 367 (1947).

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST. SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

> The County Court could not know that closure of the preliminary hearing was an alternative open to it until the Nebraska Supreme Court so construed state law; but <u>once a public hearing had been held, what transpired there could not be subject to prior restraint</u>.

<u>Id.</u> at 568 (emphasis added).

Similarly, in <u>Landmark Communications, Inc. v. Virginia</u>, the Supreme Court invalidated a newspaper's conviction for publishing information from confidential judicial disciplinary proceedings in violation of a criminal statute. 435 U.S. 829, 831-832 (1978). The Court was called upon to decide whether "the publication of truthful information withheld by law from the public domain is … privileged [by the First Amendment]." <u>Id.</u> at 840. Setting aside the issue of how the newspaper obtained the information, the Court held that the First Amendment protected its publication. <u>Id.</u> at 839. In a passage that applies equally here, Justice Stewart explained that the "government cannot take it upon itself to decide what a newspaper may and may not publish," and that although "government may deny access to information and punish its theft, <u>government may not prohibit or punish the publication of that information once it falls into the hands of the press, unless the need for secrecy is manifestly overwhelming</u>." <u>Id.</u> at 849 (Stewart, J., concurring) (emphasis added).

Subsequently, in <u>Oklahoma Publishing</u>, the Supreme Court struck down a prior restraint in a murder case involving an eleven-year-old defendant. 430 U.S. at 308-309. After reporters learned the defendant's name, which was mentioned in open court during a detention hearing, and after photographers took pictures of the defendant leaving the courthouse, the trial court issued an order barring the media from disseminating the defendant's name or photograph. <u>Id.</u> at 308-309. Emphasizing that there was no evidence that the press learned the defendant's name or obtained his photograph "unlawfully," the Court invalidated the trial court's order as a prior restraint that "abridge[d] the freedom of the press in violation of the First and Fourteenth Amendments." <u>Id.</u> at 311-12. <u>See also</u> <u>Smith v. Daily Mail</u>

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST. SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Publ'g Co., 443 U.S. 97, 104 (1979) (invalidating West Virginia statute prohibiting the media from publishing the identity of a juvenile defendant without first obtaining a court order; "if a newspaper lawfully obtains truthful information about a matter of public significance then state officials may not constitutionally punish publication of the information," barring an extraordinary countervailing state interest).

Twelve years later, in Florida Star, the Supreme Court invalidated a state law that prohibited the dissemination of the names of rape victims, declaring that the government cannot proscribe the publication of "lawfully obtain[ed] truthful information about a matter of public significance." 491 U.S. at 533. The Court held that the only exception to this rule was where such a prohibition was necessary "to further a state interest of the highest order." Id. at 537. In Florida Star, however, the Court concluded that not even the state's desire to protect a rape victim's privacy met this stringent standard. Id. at 537-538.

If interests such as protecting the privacy of rape victims (Florida Star and Cox), the rights of juveniles accused of serious crimes (Smith and Oklahoma Publishing), or the fair trial rights of a defendant in a notorious, small town, mass murder case (Nebraska Press) are insufficient to justify a prior restraint, then the concerns that prompted this Court to issue its September 26th prior restraint cannot do so either.

2.    **Other Courts Consistently Reject Attempts To Restrain The Press From Publishing Information Acquired In Open Court.**

As demonstrated above, the Supreme Court has left no room for doubt that all restraints on disclosing information disclosed in open court are subject to the demanding prior restraint analysis. Section 1, infra. Thus, it is not surprising that numerous courts have reversed trial court orders directing the press or public not to publish what they will see or hear in open court.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST. SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1    _Sun Co. of San Bernardino v. Superior Court_, 29 Cal. App. 3d 815 (1973), is

2    on point. There, the Court of Appeal struck down an order preventing the media

3    from publishing the names and photographs of several anticipated trial witnesses –

4    inmates who witnessed a prison killing. The prosecution requested the order out of

5    concern that they might refuse to testify if their identities were published out of fear

6    for their safety. Id. at 817-819. After the press refused to "agree voluntarily not to

7    publish the witnesses' names or photos," the court entered an order prohibiting the

8    press from publishing the name or photograph of any prison inmates called to the

9    stand. Id. at 820-821. The court evaluated the defendant's fair trial rights and then

10   turned to the Supreme Court's prior restraint jurisprudence. Id. at 825.

11           The court explained that "when a court issues an order in a pending criminal

12   action restraining publication of news respecting the proceeding, its order

13   constitutes censorship which carries a heavy presumption against its constitutional

14   validity." Id. at 826 (citation omitted). "This requires that the substantive evil or

15   danger must be extremely serious and the degree of imminence extremely high. …

16   First Amendment rights may not be sacrificed merely because some evil may

17   result." Id. (citations omitted). The appellate court rejected the prior restraint,

18   explaining that the prosecution failed to meet its burden of establishing that

19   significant harm would occur without it. Id. at 829-830. As the court made clear,

20   "First Amendment rights may not be 'sacrificed' on the basis of a possibility that

21   some evil might occur if the utterance is published." Id. at 829-830 (emphasis in

22   original; citations omitted). It explained that "the conclusion is inescapable that a

23   prior restraint on publication in the name of a fair trial should rarely be employed

24   against the communications media …." Id. at 830.

25           Recently, another California Court of Appeal directed a trial court to vacate a

26   prior restraint barring the Orange County Register from reporting information about

27   testimony in an impending trial in which the newspaper was a party. Freedom

28   Communications, Inc. v. Superior Court, 167 Cal. App. 4th 150, 153 (2008).

MOTION TO INTERVENE, MODIFY PROTECTIVE ORDER
DWT 22675854v2 0026175-000450

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST. SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Relying on <u>Nebraska Press</u> and <u>New York Times</u>, the court reiterated that an order barring a news organization from publishing lawfully obtained information about trial proceedings "is unconstitutional under both the United States and California Constitutions," and "must immediately fall." <u>Id.</u> at 154 (emphasis added); <u>see also</u> <u>Kansas v. Alston</u>, 256 Kan. 571, 581-584, 887 P.2d 681 (1994) (Kansas Supreme Court reversed a newspaper's contempt conviction for violating a trial court's order not to publish information discussed in open court; because reporter was lawfully attending an open court proceeding, and trial court's <u>sua</u> <u>sponte</u> gag order was made without requisite findings, the order was an unconstitutional prior restraint).[2]

In an Illinois decision that also is closely on point, the plaintiff complained that a newspaper that was a defendant in a libel suit jeopardized his fair trial rights by "editorializing" about the case. <u>Cooper v. Rockford Newspapers, Inc.</u>, 34 Ill. App. 3d 645, 646-647, 339 N.E.2d 477 (1975). In response to the plaintiff's concerns, the trial court barred the newspaper from writing editorials about the lawsuit (but not from publishing stories in the news section about it) during the pendency of the case, citing the interest in "a fair trial for all parties." <u>Id.</u> at 648. The appellate court invalidated the order as an unconstitutional prior restraint on the defendant's First Amendment rights. <u>Id.</u> at 652.

Finally, two decisions out of Washington State also make clear that the press cannot be restrained from publishing information it acquires in open court. In <u>State ex rel. Superior Court v. Sperry</u>, 79 Wn. 2d 69, 483 P.2d 608 (1971), the trial court entered an order before a criminal trial, prohibiting the media from publishing any

---

[2] The decision in <u>Evans v. Evans</u>, 162 Cal. App. 4 1157, 1166-1171 (2008), also is instructive. In that case, the court reversed as unconstitutional a prior restraint gag order imposed on a former deputy sheriff's ex-wife that prohibited the ex-wife from publishing "defamatory and false statements" about the deputy sheriff on the Internet concerning child custody and child visitation issues. <u>Id.</u> The court rejected the deputy sheriff's claim that the placement by the ex-wife's mother of information from family court proceedings on the Internet would violate his privacy rights and justify a prior restraint on the ex-wife. <u>Id.</u> at 1169-1171.

MOTION TO INTERVENE, MODIFY PROTECTIVE ORDER
DWT 22675854v2 0026175-000450

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST. SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

information revealed outside of the presence of the jury and other trial participants, including any evidence stricken or ruled inadmissible.  Id. at 70.  After the Seattle Times published a story in violation of that order, its reporters were barred from further court proceedings and the court issued an order to show cause re contempt. Id. at 72-73.  The Supreme Court reversed, explaining that "[t]he judiciary cannot under circumstances like those before us, suppress, edit, or censor from the public those events which occur in open court proceedings."  Id. at 78.  See also State v. Coe, 101 Wn. 2d 364, 366, 381, 679 P.2d 353 (1984) (court order prohibiting and television station from airing tape recordings of a criminal defendant's meetings and telephone calls with an undercover police officer that had been admitted into evidence was unconstitutional, notwithstanding the defendant's  evidence that she would suffer psychiatric harm if the tapes were broadcast ).

Similarly, The Times – and other members of the press and public – cannot be restrained from reporting anything that occurs in open court, unless the stringent requirements for prior restraints are met.  As shown below, Defendants did not come close to meeting that burden.

### 3. The Order Does Not Come Close To Satisfying The Stringent Standard To Justify A Prior Restraint.

A prior restraint "comes to th[e] Court with a heavy presumption against its constitutional validity."  Organization for a Better Austin v. Keefe, 402 U.S. 415, 419 (1971).  A court may not issue even a temporary prior restraint unless the restriction is necessary "to further a state interest of the highest order," Smith, 443 U.S. at 102, and the publication "threaten[s] an interest more fundamental than the First Amendment itself."  Proctor & Gamble v. Bankers Trust Co., 78 F.3d 219 , 227 (6th Cir. 1996).  This is an extremely strict standard.  The court must find evidence of a "clear and present danger" of harm to a paramount state interest; "speculati[on]" or "factors unknown and unknowable" never will justify a prior restraint.  Nebraska Press, 427 U.S. at 563; see also Freedom Comm'n, 167 Cal.

MOTION TO INTERVENE, MODIFY PROTECTIVE ORDER
DWT 22675854v2 0026175-000450

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST. SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

App. 4th at 153. Thus, "[i]t is not enough for a court to decide that the fair trial may be affected by the exercise of free speech." Hurvitz v. Hoefflin, 84 Cal. App. 4th 1232, 1241 (2000). Instead, the proponent of the restraint bears "the burden of producing evidence to establish the prejudice." Id.

Here, The Times is informed that the prior restraint was entered to address concerns about the privacy of the prison guards and inmates who are depicted in the videotapes. But the United States Supreme Court has never allowed privacy interests to justify an order prohibiting the press from publishing lawfully obtained information about court proceedings – even when that information relates to the much more sensitive privacy interests of rape victims and juveniles. See Section 1, supra.[3]

The Order at issue here does not provide any justification for broadly restraining the public and the press from publishing any identifying information for individuals who appear in the videos. As the Supreme Court's decisions consistently recognize, privacy interests simply do not suffice. The prior restraint violates the First Amendment and must be removed.[4]

---

[3] See also Hurvitz v. Hoefflin, 84 Cal. App. 4th 1232, 1244 (2000) (plaintiff's asserted "right to privacy" was inadequate to justify a prior restraint, even though "the things [that the defendant, a plastic surgeon,] is alleged to have done to his anaesthetized patients are vulgar and crude in the extreme, and we do not doubt that those patients, if identified, would suffer embarrassment and shame"; "sparing citizens from embarrassment, shame, or even intrusions into their privacy has never been held to outweigh the guarantees of free speech in our federal and state Constitutions"; "[W]e are aware of no case in any jurisdiction in which a prior restraint has been imposed to prevent an intrusion into privacy"); Gilbert v. National Enquirer, Inc., 43 Cal. App. 4th 1135, 1147 (1996) (reversing an injunction barring actress Melissa Gilbert's ex-husband from revealing intimate details about her alleged use of drugs and alcohol and about her sexual relationships, notwithstanding claims that her privacy would be invaded; "[t]he threatened invasion to Gilbert's right of privacy," the court stated, is "not the sort of 'extraordinary circumstance[]' required to justify a prior restraint").

[4] The Supreme Court also has made clear that the government may not condition the receipt of government benefits on the relinquishment of constitutional rights. E.g., Perry v. Sindermann, 408 U.S. 593, 597 (1972) (the government "may not deny a benefit to a person on a basis that infringes his constitutionally protected interests – especially, his interest in freedom of speech"). If the government cannot require a person to give up his or her constitutional rights to obtain a discretionary

MOTION TO INTERVENE, MODIFY PROTECTIVE ORDER
DWT 22675854v2 0026175-000450

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST. SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

**C.    The Public And Press Have A Presumptive Right To View The Videos That Will Be Shown In The Evidentiary Hearing.**

Defendants apparently believe that the Court's prior restraint is justified as a condition of allowing members of the public and press to attend the evidentiary hearing.  But under the First Amendment, the evidentiary hearing is presumptively open.  As the Court implicitly recognized in rejecting Defendants' request for a closed-door evidentiary hearing, Defendants cannot meet their heavy burden to close the evidentiary hearing at which the videos will be shown.[5]

**1.    The Press And Public Have A Presumptive Right Of Access To View The Videotapes.**

Under the First Amendment, the press and the public have a broad, presumptive right of access to judicial proceedings and court records.  See, e.g., Oregonian Publishing Co. v. District Court, 920 F.2d 1462, 1467 (9th Cir. 1990); Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 571 (1980) (criminal trials); Press-Enterprise Co. v. Superior Court, 464 U.S. 501, 505-508 (1984) ("Press-Enterprise I") (voir dire); Waller v. Georgia, 467 U.S. 39, 47 (1984) (suppression hearings); Press-Enterprise Co. v. Superior Court, 478 U.S. 1 (1986) ("Press-Enterprise II") 478 U.S. at 12-13 (preliminary hearings).  See also NBC Subsidiary (KNBC-TV), Inc. v. Superior Court, 20 Cal. 4th 1178, 1217-1218 (1999) ("NBC Subsidiary").  The common law guarantees a similar right of public access to court records.  See, e.g., Foltz v. State Farm Mut. Auto. Ins. Co., 331 F.3d 1122, 1135 (9th Cir. 2003).

---

benefit, a fortiori, this Court cannot require The Times to give up its right to publish as a condition of its attendance at the evidentiary hearing.  See Section 3.C

[5] Moreover, as written, the Order appears to prohibit anyone in attendance at the hearing from disclosing information concerning the identities of individuals in the video, even if the information was already in their possession, or is obtained independently.  No justification exists for such a broad restraint.

MOTION TO INTERVENE, MODIFY PROTECTIVE ORDER
DWT 22675854v2 0026175-000450

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST. SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

This right of access is premised on "the common understanding that 'a major purpose of [the First] Amendment was to protect the free discussion of governmental affairs.'" Globe Newspaper Co. v. Superior Court, 457 U.S. 596, 604 (1982). The presumption of public access "is no quirk of history." Richmond Newspapers, 448 U.S. at 569, 580 n.17. Instead, as the Supreme Court has observed, openness allows "the public to participate in and serve as a check upon the judicial process – an essential component in our structure of self-government." Globe Newspaper Co., 457 U.S. at 606. And in CBS, Inc. v. District Court, 765 F.2d 823, 825 (9th Cir. 1985), this Court reaffirmed that this "right of access is grounded in the First Amendment and in common law, and extends to documents filed in pretrial proceedings as well as in the trial itself." As Judge King explained in California ex rel. Lockyer v. Safeway, Inc., 355 F. Supp. 2d 1111, 1124 (C.D. Cal. 2005), "[t]he courts' legitimacy in our system of government derives in large measure from our historical commitment to offering reasoned decisions publicly setting forth our rationale not only to litigants, but to the people in whose name we administer justice."

This presumption applies with equal force to civil proceedings. See, e.g., Richmond Newspapers, 448 U.S. at 580 n.17 (Burger, C.J.) ("historically both civil and criminal trials have been presumptively open"). As the California Supreme Court noted, "the public has an interest in all civil cases, in observing and assessing the performance of its public judicial system …." NBC Subsidiary, 20 Cal. 4th at 1210 (original emphasis). There, after carefully reviewing cases from across the Nation, the Court concluded that "every lower court opinion of which we are aware that has addressed the issue of First Amendment access to civil trials and proceedings has reached the conclusion that the constitutional right of access applies to civil as well as criminal trials." Id. at 1208 (citations omitted; original emphasis). Thus, it is no surprise that for more than two decades, this Circuit consistently has championed transparency and openness in criminal and civil cases.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST. SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

For example, in <u>Kamakana v. City & County of Honolulu</u>, 447 F.3d 1172, 1179 (9th Cir. 2006), documents related to the investigation of alleged police corruption, which were filed in support of dispositive motions, could not be sealed based on a blanket protective order, especially in the absence of "compelling reasons sufficient to outweigh the public's interest in disclosure." The Honolulu Police Department's claims that production of the documents would "hinder … future operations with other agencies, endanger informants' lives, and cast HPD officers in a false light" were "conclusory offerings [that] do not rise to the level of 'compelling reasons' sufficiently specific to bar the public access to the documents." <u>Id.</u> at 1182.

Similarly, in <u>Hagestad v. Tragesser</u>, 49 F.3d 1430 (9th Cir. 1995), the Court applied the common law right of access to pretrial court documents in a civil sexual abuse case. <u>Id.</u> at 1434. Explaining that the district court failed to "articulate the factual basis for its ruling" as required by the Court's precedents, the Court vacated a sealing order and remanded to the district court for reconsideration. <u>See</u> <u>also</u> <u>San Jose Mercury News, Inc. v. District Court</u>, 187 F.3d 1096, 1102 (9th Cir. 1999) (public's common law right of access in civil cases "creates a strong presumption in favor of access"); <u>In re Coordinated Pretrial Proceedings in Petroleum Prod. Antitrust Litig.</u>, 101 F.R.D. 34, 42-43 (C.D. Cal. 1984) (holding that the common law right of access attaches to documents filed with the court in both civil and criminal cases, making such records presumptively open as soon as they are filed for consideration by a court).[6]

---

[6] <u>See also</u> <u>Brown & Williamson Tobacco Corp. v. FTC</u>, 710 F.2d 1165, 1170, 1179 (6th Cir. 1983) (vacating order that sealed a Federal Trade Commission report and other court records relating to tar and nicotine levels in cigarettes; the "policy considerations discussed in <u>Richmond Newspapers</u> apply to civil as well as criminal cases"); <u>Publicker Industries, Inc. v. Cohen</u>, 733 F.2d 1059, 1069, 1070 (3d Cir. 1984) (vacating order sealing transcript of a hearing; "the civil trial, like the criminal trial, plays a particularly significant role in the functioning of the judicial process and the government as a whole," and "[p]ublic access to civil trials, no less than criminal trials, 'plays an important role in the participation and free discussion of governmental affairs'"); <u>Matter of Continental Illinois Securities Litigation</u>, 732

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST. SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1   These decisions make clear that the evidentiary hearing at which the parties

2   will play the videotape is presumptively open.  As this Court presumably

3   recognized in refusing to close that proceeding, the parties did not meet their heavy

4   burden to seal the proceeding, or any portion of it.

5      **2.      The Order Does Not Satisfy The Stringent Requirements To**

6          **Overcome The Presumptive Right Of Access.**

7      The privacy interests that the parties have invoked do not support an order

8   closing the evidentiary hearing, or redacting identifying information from the tapes

9   in some way.  The right of access guaranteed by the First Amendment and the

10  common law may be overcome only by a showing of (1) "compelling reasons," (2)

11  articulated in specific, on-the-record findings, (3) that a sealing order "is essential to

12  preserve higher values and (4) is narrowly tailored to serve that interest."  See, e.g.,

13  Richmond Newspapers, 448 U.S. at 580-581; Globe Newspaper Co., 457 U.S. at

14  604-605 (1982); Kamakana, 447 F.3d at 1178-1179.  See also Safeway, 355 F.

15  Supp. 2d at 1125; NBC Subsidiary, 20 Cal. 4th at 1217-1218; Brown & Williamson

16  Tobacco Corp. v. FTC, 710 F.2d 1165, 1179 (6th Cir. 1983).

17     The Ninth Circuit has made clear that only a limited array of privacy interests

18  are compelling enough to justify an order sealing court records.  In re McClatchy

19  Newspapers, Inc., 288 F.3d 369, 373-374 (9th Cir. 2002).  There, the Court ordered

20  disclosure of unredacted copies of two proffer letters submitted by a prisoner with

21  his motion to reduce his criminal sentence.  Id. at 371.  The Court distinguished

22  other cases involving "the protection of minor victims of sex crimes from further

23  trauma and embarrassment, … [or] the governmental interest in protecting the

24  ─────────────────────────────────────────

25  F.2d 1302, 1308 (7th Cir. 1984) (court granted newspapers' request to inspect
    report prepared by corporation and admitted into evidence in shareholders'
26  derivative suit, stating that the "policy reasons for granting public access to criminal
    proceedings apply to civil cases as well"); Virginia Dep't of State Police v.
27  Washington Post, 386 F.3d 567, 578 (4th Cir. 2004) (First Amendment-based right
    of access applied to documents filed in connection with summary judgment motion
    in civil rights action; government failed to demonstrate compelling interest
28  warranting sealing based on its ongoing investigation of rape and murder).

MOTION TO INTERVENE, MODIFY PROTECTIVE ORDER
DWT 22675854v2 0026175-000450

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST. SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

privacy of jurors … , preventing abuse of the civil discovery process … [or] not tipping off suspects by disclosure of search warrants." Id. at 374 (citations omitted).  As the Court noted, "[t]hese cases do show that the need to protect individual privacy rights may, in some circumstances, rise to the level of a substantial governmental interest and defeat First Amendment right of access claims" but "[n]o such interest has been established here." Id.

The Court explained that in contrast, "'the citizen's desire to keep a watchful eye on the workings of public agencies' and 'a newspaper publisher's intention to publish information concerning the operation of government" are compelling interests supporting disclosure. Id. (emphasis added; citation omitted).  And despite the state's general interest in protecting reputation, "injury to official reputation is an insufficient reason 'for repressing speech that would otherwise be free.'" Id. (citation omitted; emphasis added).  Thus, the Court held that "[t]he error in suppressing by redaction is clear" and remanded to the district court with directions to release unredacted documents. Id. at 375; see also Russell v. Gregoire, 124 F.3d 1079, 1093-1094 (9th Cir. 1997) (rejecting a privacy argument made by convicted sex offenders who challenged the "Megan's Law" community notification requirements; "[t]he collection and dissemination of information … does not violate any protected privacy interest" and therefore plaintiffs' "privacy claims are fatally defective as a matter of law").[7]

_____

[7] See also Loder v. Municipal Court, 17 Cal. 3d 859, 864-865 (1976) ("overriding social interest" in dissemination of arrestee information outweighs right of privacy); Sipple v. Chronicle Publ'g Co., 154 Cal. App. 3d 1040, 1048-49 (1984) (homosexuality of individual who saved President Ford's life newsworthy and overrides privacy interests when reported in connection with actions that may have saved his life); Hurvitz, 84 Cal. App. 4th at 1245 (there can be no privacy right with respect to a matter which is already public or which has previously become part of the public domain); H.B. Fuller Co. v. Doe, 151 Cal. App. 4th 879, 891-892 (2007) (conclusory averments about "privacy" or "confidentiality" do not meet the strict constitutional requirements for sealing documents).

MOTION TO INTERVENE, MODIFY PROTECTIVE ORDER
DWT 22675854v2 0026175-000450

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST. SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1  Defendants did not come close to meeting their heavy burden here.  Their
2  vague references to privacy interest do not meet even one of the elements required
3  to close court proceedings or seal court records, much less all of them.  <u>First</u>, as
4  shown, the privacy interests are not "compelling reasons" that could support the
5  sealing order.  <u>Second</u>, Defendants' general and unsubstantiated arguments –
6  completely devoid of any specifics about the harm that might befall the individuals
7  impacted – do not even come close to the specificity required by the Ninth Circuit.
8  <u>E.g.</u>, <u>Kamakana</u>, 447 F.3d at 1183-1184 ("[s]imply mentioning a general category
9  of privilege, without any further elaboration or any specific linkage with the
10 documents, does not satisfy the burden").  <u>Third</u>, the parties also have made no
11 effort to demonstrate that the sealing order is "essential to preserve higher values" –
12 nor could they in light of the fact the privacy interests they invoked are not the
13 kinds of interests that could support sealing.  <u>Fourth</u>, the order is not narrowly
14 tailored to serve any interest invoked.  To the contrary, it restrains the publication of
15 <u>all</u> identifying information – for inmates and guards – without regard to individual
16 interests or any prior publication of the identities that may already have occurred.

## 4.   CONCLUSION

18     Over the last 75 years, the United States Supreme Court repeatedly has struck
19 down prior restraints that limited the press' right to report about court proceedings.
20 The Court has made clear that a prior restraint may be contemplated only in the
21 rarest circumstances, such as where necessary to prevent the dissemination of
22 information about troop movements during wartime, <u>Near</u>, 283 U.S. at 716, or to
23 "suppress[] information that would set in motion a nuclear holocaust." <u>New York</u>
24 <u>Times</u>, 403 U.S. at 726 (Brennan, J., concurring).

25     This case does not come close to presenting such extraordinary
26 circumstances.  The Times, therefore, respectfully requests that the Court
27 immediately vacate its September 26, 2013 prior restraint, and permit the public and

MOTION TO INTERVENE, MODIFY PROTECTIVE ORDER
DWT 22675854v2 0026175-000450

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST. SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1    press to attend the evidentiary hearing without restraining their right to publish the

2    information that is disclosed during those proceedings.

3

4    DATED:  September 30, 2013          DAVIS  WRIGHT  TREMAINE  LLP
                                         KELLI L. SAGER
5                                        ROCHELLE L. WILCOX

6

7                                        By: /s/ Rochelle L. Wilcox
8                                               Rochelle L. Wilcox

9                                        Attorneys for Non-Party Press Organization
                                         LOS ANGELES TIMES
10                                       COMMUNICATIONS LLC

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION TO INTERVENE, MODIFY PROTECTIVE ORDER
DWT 22675854v2 0026175-000450

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST. SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899