# EXHIBIT A

## Inmate suicide report hidden; Consultant's work, suppressed by state, says prison practices encouraged deaths.

Los Angeles Times - Los Angeles, Calif.
Subjects:         Litigation, Mental health care, Prisoners, Prison administration, Suicides & suicide attempts
Author:           Paige St. John
Date:             Feb 28, 2013
Start Page:       AA.1
Section:          LATExtra; Part AA; Metro Desk
Text Word Count:  674

**Document Text**

Gov. Jerry Brown has pointed to reams of documents to make the case in court and on the stump that California's prison crisis is over, and inmates are receiving good care.

But there is at least one document the administration wanted to hide.

New court filings reveal that the state suppressed a report from its own consultant warning that California's prison suicide-watch practices encouraged inmate deaths.

Lindsay Hayes, a national expert on suicide prevention in prisons, told corrections officials in 2011 that the state's system of holding suicidal inmates for days in dim, dirty, airless cells with unsanitized mattresses on the floor was compounding the risk that they would take their own lives.

His report described in detail inmates being divested of their clothes and possessions and robed in a "safety smock." Hayes concluded that such conditions encouraged prisoners to declare they were no longer suicidal just to escape the holding cells. Many of them took their own lives soon after.

The state asked Hayes to create a short version of his report that omitted his damaging findings, to give to a court monitor and lawyers for prisoners, the court documents show. Hayes complied, but when inmate attorneys obtained a complete copy, the state asked a U.S. District Court to order it destroyed. The judge refused.

The report says the state's handling of suicidal inmates is "seemingly punitive" and "anti-therapeutic." Hayes noted that guards, not mental health workers, dictate many of the conditions of suicide watches, such as whether to allow daily showers. Hayes alleged prison workers sometimes falsified watch logs showing how frequently those inmates were checked.

Hayes found that in 25 of the cases he reviewed, seven prisoners had killed themselves within hours or days of being released from suicide watch. He found lapses in care -- lengthy delays in checking on the prisoners, failure to attempt CPR -- in 68% of the cases he studied. Hayes did give the state high marks for compiling exhaustive reports after an inmate's death.

Contract records show that corrections officials recruited Hayes, a former consultant for inmate plaintiffs, to begin in 2010 a three-year project on suicide prevention, demonstrating the state's resolve to improve inmate mental health care.

His first report was filed in August 2011. Hayes said in a deposition that none of the follow-up reports and consultations called for in his contract occurred.

"When your report landed, it was not roundly applauded and in fact was buried," Robert Canning, a prison official overseeing Hayes' work, wrote in a June 2012 email to the consultant. There were 32 prison suicides in California in 2012, above the national average.

Other new filings show that the staffing shortage at one prison psychiatric hospital is so critical the psychiatric staff has declared they have been working since Jan. 23 "under protest."

The doctors in Salinas Valley State Prison's psychiatric program, run by the Department of State Hospitals, say they routinely juggle caseloads of up to 60 patients a day, and in some instances have been assigned wards containing as many as 120 patients a day.

"While not hiring psychiatrists may help the budget, it just drives more to leave, and the conditions just get even worse for those of us still here -- and more importantly, for our patients," one of the psychiatrists told The Times, asking that he not

be named for fear of retribution.

The Department of State Hospitals said Wednesday that it recently hired additional psychiatrists, with two starting work next week.

The department's acting director, Cliff Allenby, met with the prison hospital staff Wednesday "to reassure them their concerns have been and are being addressed," said spokesman David O'Brien. "There is currently no anticipated staffing crisis at DSH-Salinas Valley."

Brown has been arguing in federal court that California's prison psychiatric care no longer violates a constitutional prohibition against cruel and unusual punishment and should be freed from oversight. In a round of speeches in January, he cited testimony from state-paid experts that inmates receive timely and responsive mental health care.

--

paige.stjohn@latimes.com

Reproduced with permission of the copyright owner. Further reproduction or distribution is prohibited without permission.

## Prison care still lacking, judge says; The finding undercuts Brown's plan to end court oversight of inmate treatment.

Los Angeles Times - Los Angeles, Calif.

| | |
|---|---|
| Subjects: | Litigation, Prisons, Mental health care, Federal state relations, Federal court decisions, Prisoner treatment |
| Author: | Paige St. John |
| Date: | Apr 6, 2013 |
| Start Page: | AA.1 |
| Section: | LATExtra; Part AA; Metro Desk |
| Text Word Count: | 644 |

**Document Text**

A federal judge Friday rejected Gov. Jerry Brown's claim that California has improved its mental healthcare for inmates enough to end 17 years of court oversight, a victory for prisoners' lawyers who say they will use it to seek further sanctions against the state.

U.S. District Judge Lawrence Karlton's 68-page decision is a blow to Brown's larger ambition to halt court control of California's entire prison medical program and to remove court limits on the prison population. Courts have cited overcrowding as the main reason the state has failed to provide basic medical and mental healthcare.

Brown has vowed to take his case for restoring state control to the same U.S. Supreme Court that less than two years ago said California prison conditions amounted to cruel and unusual punishment.

A spokeswoman for Brown's corrections department called Friday's ruling "unfortunate," saying it failed to give appropriate weight to the state's paid experts, who said adequate improvements had been made in housing and treating mentally ill prisoners.

Karlton tossed out that core evidence, saying it was based on "tainted" reports crafted in secret. He accused California's lawyers of unprofessional conduct by allowing the state's paid experts to question inmates about the care they were receiving without telling their lawyers. The questions were intended to bolster the state's legal case, Karlton wrote.

"There was nothing unethical" about the state's assessment, corrections spokeswoman Deborah Hoffman said in a prepared statement. "We will appeal this decision and are confident that we will prevail."

Karlton found that "ongoing constitutional violations remain," including failure to act on suicide-prevention methods recommended by the court's special master and one of the state's own experts. What gains California has made in reducing waiting lists for seriously ill inmates to receive psychiatric care "are new, and work remains," he said.

The judge found climbing suicide rates, shortages of mental health crisis beds and mental health workers, in addition to inadequate treatment space, despite years of planning, amounting to what he termed "deliberate indifference."

Court records show that Brown's surprise Jan. 7 motion to end federal oversight had been in the works since at least late 2011. The motion triggered a 90-day deadline for a ruling, leaving inmate lawyers roughly 10 weeks to hire experts, tour prisons and build their opposing case and giving Karlton a matter of days to weigh thousands of pages of contradictory depositions.

Lawyers representing more than 32,000 mentally ill inmates said the governor's failed effort may backfire on him. They said it reopened access to prisons and shed light on new problems.

Those include a mental ward where most of the psychiatrists have quit, the use of cages to hold inmates for therapy sessions and the isolation of mentally ill inmates in punitive segregation cells.

"We will be moving for additional relief to fix problems we weren't focused on," said Michael Bien, lead lawyer for inmates in the 23-year-old class-action lawsuit that triggered federal oversight.

The state's experts contended that, after touring 13 of California's 33 prisons, they found that conditions met the minimum adequate care required under the U.S. Constitution and were continuing to improve.

Documents filed in the case provided a glimpse of the Brown administration's thinking -- that it was saddled with a judge who "hated" the state and with battles it couldn't win against a court-appointed special master over 120 detailed aspects of

care. In addition, Sacramento was paying $7 million a year to fund that scrutiny.

The court papers include a five-page December 2011 strategy memo written by Jeffrey Beard, the retired chief of Pennsylvania prisons hired as a consultant to the Brown administration. In the memo, Beard told state lawyers he believed California was close to making the case that the state met the standard for six basic areas of care.

A year later, Brown named Beard as his new corrections chief.

--

paige.stjohn@latimes.com

Reproduced with permission of the copyright owner. Further reproduction or distribution is prohibited without permission.

**Los Angeles Times** | ARTICLE COLLECTIONS

← Back to Original Article

## Mentally ill California inmates ask judge to change policies

*Lawyers representing 33,000 prison inmates want the changes to curb excessive use of force. Corrections officials say the state meets mental health care standards.*

May 30, 2013 | By Paige St. John, Los Angeles Times

When a mentally ill inmate at Corcoran state prison stripped himself naked, yelled that he was the "creator" and threatened to kill himself, guards responded by dousing him with 44 rounds of pepper spray, including four grenades of the caustic chemical.

The December 2011 incident was one of several that prompted the state's own expert to recommend major policy changes to curb excessive use of force. Now, lawyers representing about 33,000 mentally ill inmates are asking a federal judge to force the state to adopt those and other measures.

The motions come only months after Gov. Jerry Brown launched an unsuccessful bid to end court oversight of prison mental health care. A federal judge rejected Brown's request, but during the legal battle, lawyers representing inmates obtained new access to California's 33 prisons. They are now using information about conditions there to seek new orders against the state, including a limit on housing mentally ill inmates in solitary confinement.

The filings are part of a long-running, federal class-action lawsuit against California. The 23-year-old case, along with another over medical care, has led to court-ordered population caps, federal receivership, a U.S. Supreme Court ruling against the state, and multiple threats to hold California's governors in contempt.

California corrections officials contend that prison conditions, including the quality of mental health care, now meet constitutional standards. On Thursday, department spokesman Jeffrey Callison cited court declarations filed by the state's expert, who, Callison said, "found no excessive or unnecessary use of force." He called California's policies "among the best."

But in a deposition taken earlier this year and sealed until parts of it were filed in court Wednesday, that expert, Steve Martin, said no other state uses weapons against inmates to the extent that California does, nor routinely equips its corrections officers with large canisters of pepper spray developed by the military for crowd control.

In his February deposition and in notes he made to himself, Martin expressed misgivings that guards were using the large canisters in small, enclosed cells against unarmed inmates. He said he voiced concerns "about the lack of guidance of when to deploy this weaponry" and the risk of harm that that so much caustic spray at close range could cause inmates.

In multiple meetings with state corrections officials, Martin said, he raised those concerns and gave his own recommendations, including the need to examine cases of apparent excessive force that he said were not investigated.

If a device is being used in a way some might consider inappropriate, Martin said he told state officials: "You better doggone well have some safeguards."

Shortly after, according to state records, a California prison administrator circulated a memo statewide to "clarify expectations" on the use of pepper spray. The Sept. 12, 2012, memo notes that prison policies do not restrict the amount or number of times an inmate may be sprayed, but guards should allow "sufficient time" between applications. No specific length of time is given.

Callison said Thursday that corrections officials could not say if any other of Martin's recommendations had been put in place. Those recommendations included stopping the routine practice of arming prison guards with large canisters of pepper spray intended for crowd control and investigating apparent abuses even when an inmate does not die or is not seriously injured.

In a videotaped incident reviewed by experts, another Corcoran inmate who refused his medication was pepper-sprayed three times within four minutes. He screamed, cried for help and circled his cell blindly until guards cuffed one hand to a door, when he was sprayed again at close range.

Data provided by the state corrections department show force is used on mentally ill inmates two to three times more often than on other prisoners. At four facilities, mentally ill inmates were the subject of nine of 10 "use of force" reports. The incidents were often triggered by minor infractions, such as refusal to return a food tray.

paige.stjohn@latimes.com

**Los Angeles Times**   Copyright 2013 Los Angeles Times

Index by Keyword | Index by Date | Privacy Policy | Terms of Service