Michael Romano, SBN 232182
THREE STRIKES PROJECT
Stanford Law School
559 Nathan Abbott Way
Stanford, CA  94305
Phone:  650.736.7757
Fax:  650.723.8230
e-mail:  mromano@stanford.edu

Attorneys for Amicus Curiae

IN THE UNITED STATES DISTRICT COURTS

FOR THE EASTERN DISTRICT OF CALIFORNIA

AND THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| RALPH COLEMAN, et. al.,<br><br>    Plaintiffs,<br><br>        v.<br><br>ARNOLD SCHWARZENEGGER, et. al.,<br><br>    Defendants. | NO. CIV S90-0520 LKK JFM P<br>**THREE-JUDGE COURT** |
| MARCIANO PLATA, et. al.<br><br>    Plaintiffs,<br><br>        v.<br><br>ARNOLD SCHWARZENEGGER, et. al.,<br><br>    Defendants. | NO. C01-1351 THE<br>**THREE-JUDGE COURT**<br><br>**NOTICE OF MOTION AND MOTION BY AMICUS CURIAE NAACP LEGAL DEFENSE AND EDUCATIONAL FUND, INC. FOR LEAVE TO FILE AN AMICUS CURIAE BRIEF** |

# **TABLE OF CONTENTS**

STATEMENT OF INTEREST ............................................................................. 1

STATEMENT OF FACTS................................................................................. 2

ARGUMENT .................................................................................................. 12

I.    DEFENDANTS CAN AND SHOULD EXERCISE THEIR
      AUTHORITY TO EXPEDITE THE IMPLEMENTATION OF
      PROPOSITION 36 .................................................................................. 12

      A.    Defendants Have Independent Authority To Expedite Resentencing
            Hearings For Prisoners Eligible For Relief Under Proposition 36.......13

      B.    Defendants Can And Should Exercise Supervisory Authority
            Over District Attorneys To Expedite Resentencing Hearings For
            Prisoners Eligible For Relief Under Proposition 36. ............................15

II.   DEFENDANTS CAN AND SHOULD PROVIDE REENTRY
      SERVICES TO PRISONERS RELEASED UNDER
      PROPOSITION 36 .................................................................................. 18

CONCLUSION................................................................................................23

# TABLE OF AUTHORITIES

**California Constitutional Provisions**

Cal. Const., Art. 5, § 13 ......................................................................... 14, 16, 17, 24

Cal. Const., Art. V, § 8 ......................................................................... 16

**Cases**

*Alexander v. Louisiana*, 405 U.S. 625 (1972) ......................................................... 2

*Batson v. Kentucky*, 476 U.S. 79 (1986) ............................................................... 2

*Farrakhan v. Gregoire*, 590 F.3d 989 (9th Cir. 2010) ............................................. 2

*In re Randolph*, 215 Cal.App.3d 790 (1989) ........................................................ 22

*Johnson v. California*, 545 U.S. 162 (2005) .......................................................... 2

*Miller-El v. Dretke*, 545 U.S. 231 (2005) ............................................................. 2

*People v. Honig*, 48 Cal. App. 4th 289 (Cal.App. 3 Dist. (1996)) ......................... 18

*People v. Superior Court (Kaulick)*, 215 Cal. App. 4th 1279 (2013) ...................... 8

*Sonoma Falls Developers, LLC v. Nevada Gold & Casinos, Inc.*,
272 F. Supp. 2d 919 (N.D. Cal. 2003) .................................................................... 4

*Turner v. Fouche*, 396 U.S. 346 (1970) ................................................................. 2

**Statutes**

Cal. Code § 2900 .................................................................................................. 22

Cal. Code § 2900.5 ............................................................................................... 22

Cal. Penal Code § 1170.12(c)(2)(C). .................................................................. 6, 15

Cal. Penal Code § 3000.08 .................................................................. 5, 20, 21

Cal. Penal Code § 667(e)(2)(C), ......................................................... 6, 15

Cal. Penal Code § 1170 (d) ................................................................ 14, 16

Cal. Penal Code §1170 (d) (1) ............................................................ 15, 16

Cal. Penal Code §1170.126 ................................................................. 7, 20

Cal. Penal Code §1170.126 (b) ................................................................. 7

Cal. Penal Code § 1170.126 (f). ...................................................... 7, 8, 9

Cal. Penal Code §§ 3450-3465 ......................................................... 5, 20, 21

**California Rules**

Cal. Rule of Court 4.551 (c) ..................................................................... 7

**Federal Rules**

Federal Rule of Appellate Procedure 29(c) ............................................. 4

**California Regulations**

Cal. Gov't Code § 12550 .......................................................... 14, 16, 17

iv

PLEASE TAKE NOTICE that pursuant to Rule 7-11 of the Local Rules of Practice in Civil Proceedings before the United States District Court for the Northern District of California, the NAACP Legal Defense and Educational Fund, Inc., by and through counsel at the Three Strikes Project at Stanford Law School, seek leave to file the following *amicus curiae* brief in the above captioned matter.

## STATEMENT OF INTEREST

The NAACP Legal Defense and Educational Fund, Inc. ("LDF") is the nation's first civil rights law firm.  LDF was founded as an arm of the NAACP in 1940 by Charles Hamilton Houston and Thurgood Marshall to redress injustice caused by racial discrimination and to assist African Americans in securing their constitutional and statutory rights.  Through litigation, advocacy, public education, and outreach, LDF strives to secure equal justice under law for all Americans, and to break down barriers that prevent communities of color from realizing their basic civil and human rights.

LDF has a longstanding concern with racial discrimination in the administration of criminal justice.  LDF has served as counsel of record or *amicus curiae* in federal and state court litigation challenging such issues as the role of race in capital sentencing, *McCleskey v Kemp*, 481 U.S. 279 (1987); *Furman v. Georgia*, 408 U.S. 238 (1972), the influence of race on prosecutorial discretion, *United States v. Armstrong*, 517 U.S. 456 (1996); *United States v. Bass*, 266 F.3d

1

532 (6th Cir. 2001), the correlation between felon disenfranchisement and racial bias and disproportionality in the criminal justice system, *Farrakhan v. Gregoire*, 590 F.3d 989 (9th Cir. 2010), the discriminatory use of peremptory challenges, *Miller-El v. Dretke*, 545 U.S. 231 (2005); *Johnson v. California*, 545 U.S. 162 (2005); *Batson v. Kentucky*, 476 U.S. 79 (1986), and the discriminatory selection of grand jurors, *Alexander v. Louisiana*, 405 U.S. 625 (1972); *Turner v. Fouche*, 396 U.S. 346 (1970).

LDF was the official sponsor of the California campaign committee "Yes on 36, Three Strikes Reform," which advocated for passage of the Three Strikes Reform Act of 2012 ("Proposition 36").[1]

## STATEMENT OF FACTS

Proposition 36 amended several sections of California's Penal Code and added new Penal Code Section 1170.126. This provision provides an opportunity for certain prisoners sentenced to life in prison for non-serious, non-violent crimes to petition for early release. To date, over 1,000 prisoners have been released under the initiative. See "Progress Report: Three Strikes Reform (Proposition 36), 1,000 Prisoners Released," co-published by the Stanford Law School Three Strikes Project and NAACP Legal Defense and Educational Fund, Inc. (Sept. 10, 2013) ("Prop. 36 Progress Report"), at 5-6, available at

---

[1] No party to this action drafted or paid for this brief. *See* Federal Rule of Appellate Procedure 29(c).

http://www.law.stanford.edu/sites/default/files/child-

page/441702/doc/slspublic/Three%20Strikes%20Reform%20Report.pdf.

As indicated in its September 24, 2013 Order, this Court has directed the defendants in the instant matter "to reduce the state prison population to no more than 137.5% design capacity by December 31, 2013." Order to Meet and Confer, filed Sept. 24, 2013 (Docket No. 2719) at 1. In response, the defendants "informed the Court that, absent an extension, they will begin sending additional prisoners to out-of-state facilities on September 30, 2013." Id. Thus, this Court ordered the parties to meet and confer to "explore how defendants can comply with this Court's" Order and achieve a "durable solution" to the prison overcrowding problem at the heart of this litigation. Id. at 2. The Court indicated that these discussions "shall specifically include" the "three strikers." Id.

This is not the first time that the three strikes population has been discussed in the context of the instant prison overcrowding litigation. On several other occasions this Court and the parties have referred specifically to Proposition 36 as a potential partial solution to reducing the prison population. See, e.g., Defendants' Request for an Extension of December 31, 2013 Deadline, filed Sept. 16, 2013 (Docket No. 2713), at 6. However, some of the representations that have been made to this Court regarding the Three Strikes law and the implementation of Proposition 36 have been inaccurate and incomplete. Thus, Amicus seeks to

3

provide this Court with accurate information about the Proposition 36 and the Three Striker population in the hope of assisting this Court in understanding the role that the Three Strikes law might play in the current litigation, including how timely implementation of Proposition 36 can help remedy the constitutional violations at issue. See Sonoma Falls Developers, LLC v. Nevada Gold & Casinos, Inc., 272 F. Supp. 2d 919 (N.D. Cal. 2003) ("[C]ourts frequently welcome amicus briefs from non-parties concerning legal issues that have potential ramifications beyond the parties directly involved or if the amicus has unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide.") (Punctuation and citations omitted).

Since the inception of this litigation, California has dramatically reduced its prison population.  Indeed, between October 2011 and June 2013, California's prison population has decreased by some 24,000 inmates. The great majority of this decrease was the product of a reduction in the rate of new prison commitments and the expiration of old prison terms. *See* Cal. Penal Code Sections 3450-3465; 3000.08; California Department of Corrections and Rehabilitation 2011 Public Safety Realignment Fact Sheet (April 15, 2013) *available via* www.cdcr.ca.gov. This significant reduction in the size of California's prison population unquestionably diminishes the level of overcrowding, but, as this Court is well

4

aware, the State prison system nonetheless remains dangerously overcrowded and constitutional violations are ongoing.[2]

Historically, one of the primary sources of California's overcrowding problem was the 1994 "Three Strikes and You're Out" law which required extremely long—and sometimes lifetime—prison sentences for repeat offenders. According to the California Department of Corrections, as of June 30, 2013, over 42,000 of California's current prison inmates are serving enhanced sentences pursuant to the Three Strikes law. *See* Dept. of Corrections and Rehabilitation, Data Analysis Unit, "Second and Third Striker Felons in the Adult Institution Population," (June 30, 2013), at Table 1, *available at* www.cdcr.ca.gov/Reports_Research/Offender_ Information_Services_Branch/Quarterly/Strike1/STRIKE1d1306.pdf. Approximately 34,000 of these inmates are serving "second strike" sentences (*i.e.* double the ordinary sentence for their crime) and over 8,000 are serving "third strike" indeterminate life sentences. *Ibid.*; *see also* Cal. Penal Code Sections 667(e)(2)(C), 1170.12(c)(2)(C). In aggregate, the inmates sentenced under the Three Strikes law constitute approximately 35 percent of the current prison population. The majority of these inmates are serving prison terms for non-violent

---

[2] *See* Order to Meet and Confer, filed Sept. 24, 2013 (Docket No. 2719).

crimes. *See* Dept. of Corrections, "Second and Third Striker Felons in the Adult Institution Population," at Table 1.

In November of 2012, over 69 percent of California voters supported the Three Strikes Reform Act of 2012 ("Proposition 36") and adopted important reforms designed to ameliorate some of the problems created by California's famously harsh recidivist sentencing law. As stated explicitly in the preamble to Proposition 36, the measure was designed, in part, to help alleviate prison crowding and relieve the State of long-term health care costs. Proposition 36, Findings and Declarations (2012). Specifically, Proposition 36 provides an opportunity for the early release of prisoners who were sentenced to life in prison under the Three Strikes law for certain non-serious, non-violent crimes and who no longer pose a threat to public safety. *See* Cal. Penal Code Section 1170.126.[3]

This new law works as follows: an inmate who meets the eligibility criteria in the statute may file a petition for recall of sentence in the county Superior Court where he or she was originally convicted. *See* Cal. Penal Code Section 1170.126

---

[3] Proposition 36 was the first voter initiative since the Civil War to approve the reduction of sentences of inmates currently behind bars. *See generally*, David Mills, Michael Romano, "The Passage and Implementation of the Three Strikes Reform Act of 2012 (Proposition 36)," 25 Federal Sentencing Reporter 265 (2013). Official proponents of the initiative included Steve Cooley, then District Attorney of Los Angeles County; George Gascón, former Police Chief and current District Attorney of San Francisco; Jeff Rosen, District Attorney of Santa Clara County; and Charlie Beck, Police Chief of Los Angeles. *See* Cal. Secretary of State, Voter Information Guide, "Proposition 36: Arguments and Rebuttals" (2012) *available at* http://vig.cdn.sos.ca.gov/2012/general/pdf/36-arg-rebuttals.pdf.

(b) ("Any person serving an indeterminate term of life imprisonment imposed [under the relevant statutes] . . . may file a petition for a recall of sentence . . . before the trial court that entered the judgment of conviction in his or her case[.]"). If the inmate sets forth a *prima facie* case of eligibility for relief, the Superior Court must issue an Order to Show Cause to the county District Attorney why the petition should not be granted. *See* Cal. Penal Code Section 117.126 (f); Cal. Rule of Court 4.551 (c); Richard Couzens and Tricia A. Bigelow, *The Amendment of the Three Strikes Sentencing Law*, 23-27 (Judicial Counsel of California, 2013) *available at* http://www.courts.ca.gov/20142.htm (discussing resentencing procedures under Prop. 36). If the People oppose the petitioner's release, the burden of proof falls on the People to establish by a preponderance of the evidence that the petitioner remains an "unreasonable risk of danger to public safety." *People v. Superior Court (Kaulick)*, 215 Cal. App. 4th 1279, 1301-05 (2013); Cal. Penal Code Section 1170.126(f). It is then up to the Superior Court judge to determine whether the People have met their burden. *Ibid.*

Given the substantial potential impact of the Three Strikes law on the size of California's prison population, this Court has correctly recognized that the implementation of Proposition 36 "should result in substantial reduction in the prisoner population," Opinion and Order Denying Defendants' Motion to Vacate or Modify Population Reduction Order, filed April 11, 2013 (Docket No. 2590) at

7

17, n.17, and indicated that consideration should be given to the "three strikers" during the process of negotiating a "durable solution" to the prison overcrowding problem at the heart of this litigation.  Order to Meet and Confer, filed Sept. 24, 2013 (Docket No. 2719).  *Amicus* agrees.

To date, over 1,000 prisoners have been released under Proposition 36. In each of these cases, a judge has conducted an individual review of the prisoner's criminal history and record of prison rehabilitation and discipline, and, pursuant to Cal. Penal Code Section 1170.126 (f), concluded that releasing the inmate would not pose "an unreasonable risk of danger to public safety." According to data provided by the Department of Corrections, judges have granted over 95 percent of the Proposition 36 petitions adjudicated to date. *See* Prop. 36 Progress Report, at 5-6.

The recidivism rate of inmates released under Proposition 36 is remarkably low. Of those inmates who have been resentenced and released under Proposition 36 to date, fewer than two percent have been charged with a new crime (as of August 31, 2013). *See* Prop. 36 Progress Report, at 7. By comparison, the average recidivism rate for inmates released statewide over a similar time period is 16 percent. *See* Joan Petersilia, Ryken Grattet, Jeffrey Lin, and Marlene Beckman, "Assessing Parole Violations and Revocations in California: Finding Strategies for the Future," 33 APPA Perspectives 42 (2009).

Approximately 2,000 additional prisoners are eligible for relief under Proposition 36. Prop. 36 Progress Report, at 5-6. Many of these prisoners also appear ready to reintegrate into society. According to "Static Risk Assessment" projections conducted by the Department of Corrections, approximately 45 percent of the prisoners awaiting resolution of their Proposition 36 petitions are considered a "low risk" of committing any new crime if released from custody; 36 percent qualify as "moderate" risk; and only 7 percent qualify as "high risk" of committing a crime of violence if released.[4] On average, the 2,000 inmates awaiting review of their Proposition 36 petitions are 48 years old and have already served over 9 years in prison. Compared to the general prison population, inmates sentenced to life under the Three Strikes law for non-serious, non-violent crimes are disproportionately African American, disproportionately physically disabled, and disproportionately mentally ill.

Despite the relative success of inmates released under Proposition 36 to date, the rate of releases is trailing off and expected to slow dramatically in the coming

---

[4] Data provided by the Department of Corrections. No risk data was available for 212 of the inmates awaiting resolution of their Proposition 36 petitions. The Department of Corrections calculates recidivism risk using an actuarial called the California Static Risk Assessment (CSRA) instrument. *See generally* Susan Turner, et. al., "Development of the California Static Risk Assessment Instrument (CSRA)," University of California, Irvine, Center for Evidence-Based Corrections, November 2009.

9

months as prosecutors begin to oppose a larger percentage of recall petitions filed under the reform. *See* Prop. 36 Progress Report, at 1.

At the same time, the state prison population is on the rise. Between June 2013 and September 2013 the state prison population climbed from a low of 118,989 inmates to just over 120,000 inmates (*i.e.* 147.1 percent of design capacity). *See* Defendants' Status Report, filed Sept. 16, 2013 (Docket No. 2713-1). This data suggests that the reforms that have been undertaken to address this Court's orders[5] are no longer effectively reducing the prison population.

As this Court is aware, on September 16, 2013, Defendants moved for a three-year extension of time to comply with this Court's June 20, 2013 Order directing them to reduce the prison population by an additional 10,000 inmates, to a total population 110,150 inmates (or 137.5 percent of design capacity) by the end of 2013. Defendants assert that they need more time to implement additional prison population reduction reforms. One of the reforms cited by Defendants is Proposition 36. *See* Defendant's Request for Extension, filed Sept. 16, 2013 (Docket No. 2713) at 6.

Although Proposition 36 has the potential to dramatically reduce the size of California's prison population, it is not being effectively or consistently implemented throughout the state and has not, therefore, produced as many

[5] *See* Defendant's Request for Extension, filed Sept. 16, 2013 (Docket No. 2713) at 6 (describing the State's effort to reduce the prison population).

10

prisoner releases as it can or should. *See* Prop. 36 P Report at 5-6. This is because in some counties, Proposition 36 cases are processed expeditiously, while in other counties there are long backlogs. And it appears that in many counties, inconsistent standards and inadequate resources are applied in Proposition 36 cases. *See* Prop. 36 Progress Report at 6; *see also* Hamed Aleaziz, "LA lags behind on three strikes resentencing: County has most eligible inmates and slowest pace of petition processing." *Daily Journal*, (Sept. 6, 2013).

Furthermore, although Defendants assert that they are doing everything within their legal authority to promptly implement Proposition 36 and that "[t]he release of inmates via Proposition 36 is entirely outside Defendants' control," Defendants' Response to April 11, 2013 Order, filed May 2, 2013 (Docket No. 2609) at 16, *Amicus* contend that this is not correct. Defendants have considerable authority over the implementation of Proposition 36 and they can and should be required to exercise that authority to facilitate the prompt and safe release of appropriate prisoners without delay.

//

//

//

//

11

# **ARGUMENT**

In light of the fact that Proposition 36 offers a legitimate and significant response to this State's prison overcrowding crisis, this Court should order Defendants to expedite implementation of Proposition 36. Such an order would be consistent with this Court's prior orders, the United States Constitution, current state law, and the will of California voters.

## I.    DEFENDANTS CAN AND SHOULD EXERCISE THEIR AUTHORITY TO EXPEDITE THE IMPLEMENTATION OF PROPOSITION 36.

Defendants assert that they are doing everything within their legal authority to implement Proposition 36 as quickly and fairly as possible and that "the release of inmates via Proposition 36 is entirely outside Defendants' control." Defendants' Response to April 11, 2013 Order, filed May 2, 2013 (Docket No. 2609), at 16. They assert that they have no authority over the Proposition 36 process because the reform is implemented entirely within California's Superior Court system, which is administered independently by each of the state's 58 county governments. *Ibid.* They claim that their role in this process is peripheral and primarily involves ensuring that prison records maintained by the Department of Corrections are made available to the parties on the county level. *See* Defendants' Response to April 11, 2013 Order, filed May 2, 2013 (Docket No. 2609), at 15-16. "The State has no input as to whether the inmate should be resentenced [pursuant to Proposition 36].

Thus the State cannot 'expedite' resentencing, as Plaintiffs propose, and certainly cannot ensure that the courts will decide to resentence all of the eligible third-strike petitioners." *Id.* at 16.

Defendants' assertions are misleading: while they do not *decide* whether a particular prisoner is, or is not, appropriate for resentencing under Proposition 36, they can and should expedite the process by requesting a recall of sentence for Proposition 36 eligible prisoners pursuant to subsection (d) of California Penal Code 1170; and/or by exercising their supervisory authority over county District Attorneys, *see* Cal. Const., Art. 5, Sec. 13; Cal. Gov't Code Section 12550, to ensure that the Proposition 36 process is administered fairly and effectively.

## A.    Defendants Have Independent Authority To Expedite Resentencing Hearings For Prisoners Eligible For Relief Under Proposition 36.

Defendants have the legal authority to expedite review of resentencing hearings under Proposition 36.

Under subsection (d) of California Penal Code 1170, the Secretary of the Department of Corrections may "at any time" request that a Superior Court recall almost any state prison sentence (including the sentences of prisoners eligible for relief under Proposition 36). The Department of Corrections Operations Manual states that the Secretary's authority to request a recall of sentence under Penal Code Section 1170 is extremely broad. For example, the Secretary may

13

recommend a recall of sentence "if conditions have changed to the extent that the inmate's continued incarceration is not in the interest of justice." Cal. Department of Corrections and Rehabilitation Operations Manual, Article 6, Section 62020.6 (2013).

Upon receipt of such a request from the Secretary, the Superior Court may recall the prisoner's sentence and "resentence the defendant in the same manner as if he or she had not previously been sentenced." Cal. Penal Code Section 1170 (d) (1). "The court resentencing under this subdivision shall apply the sentencing rules of the Judicial Council so as to eliminate disparity of sentences and promote uniformity of sentencing." *Ibid*.

Thus, any current prisoner whose sentence was recalled under Penal Code 1170(d), and who was eligible for retroactive relief under Proposition 36, would be resentenced under current law and *automatically* receive a reduced sentence because the sentencing rules for non-serious, non-violent convictions have been amended by Proposition 36. *See* Penal Code Sections 667(e)(2)(C), 1170.12(c)(2)(C). The reduced sentence would be roughly equal to twice the ordinary sentence for the prisoner's crime. *Ibid*. Because the remaining roughly 2,000 prisoners who are eligible for resentencing under Proposition 36 have already served over 9 years, on average, for non-serious, non-violent crimes, the vast majority of prisoners resentenced under the process proscribed herein would

14

be released immediately. *See* Cal. Penal Code Section 1170(d)(1) ("Credit shall be given for time served [to any inmate re-sentenced under this subsection].")

In addition, unlike the process established under Proposition 36, any litigation under the Penal Code 1170(d) recall process is conducted by the Office of the Attorney General, representing the Secretary of the Department of Corrections, not the local District Attorney. *See* Cal. Department of Corrections and Rehabilitation Operations Manual, Section 1410.4 (2013). Thus contrary to their assertions, Defendants do have considerable ability to exercise control over (and expedite) resentencing hearings for prisoners eligible for relief under Proposition 36.[6]

> **B.      Defendants Can And Should Exercise Supervisory Authority Over District Attorneys To Expedite Resentencing Hearings For Prisoners Eligible For Relief Under Proposition 36.**

Defendants possess supervisory authority over county District Attorneys. *See* Cal. Const., Art. 5, Sec. 13; Cal. Gov't Code Section 12550. Thus, any argument that the Proposition 36 process is entirely controlled by local prosecutors and judges (not state officeholders), is unavailing.

---

[6] The Governor of California also has constitutional authority to pardon state prisoners. *See* Cal. Constitution, Art. V, Section 8. However, that power is severely constrained in this context because, "[t]he Governor may not grant a pardon or commutation to a person twice convicted of a felony except on recommendation of the Supreme Court, 4 judges concurring." *Ibid.*

15

The California Constitution, state statutes, and case law give the Governor and Attorney General broad supervisory authority over county District Attorneys, including the authority intervene in litigation in any court in the state. The California Constitution provides in relevant part:

> Subject to the powers and duties of the Governor, the Attorney General shall be the chief law officer of the State. It shall be the duty of the Attorney General to see that the laws of the State are uniformly and adequately enforced. . . . *The Attorney General shall have direct supervision over every district attorney* . . . in all matters pertaining to the duties of their office . . . . Whenever in the opinion of the Attorney General any law of the State is not being adequately enforced in any county, it shall be the duty of the Attorney General to prosecute any violations of law of which the superior court shall have jurisdiction, and in such cases the Attorney General shall have all the powers of a district attorney. When required by the public interest or directed by the Governor, the Attorney General shall assist any district attorney in the discharge of duties of that office.

Cal. Const., Art. 5, Sec. 13 (emphasis added); *see also* California Government Code Section 12550 ("The Attorney General has direct supervision over the district attorneys of the several counties of the State . . . . When [s]he deems it advisable or necessary in the public interest, or when directed to do so by the Governor, [s]he shall assist any district attorney in the discharge of his duties[.]").

State courts interpreting these provisions have held that the Attorney General's authority, while not unlimited, is broad and nearly unreviewable by the

16

judicial branch. *See People v. Honig*, 48 Cal. App. 4th 289, 353-356 (Cal.App. 3 Dist. (1996)) ("[A]ssuming, without deciding, that a [party] may object to prosecution by the Attorney General, it cannot be doubted that the superior court's authority to consider the objection would be very limited.").

Several media reports have criticized prosecutors throughout the state, particularly the District Attorney of Los Angeles County, for inefficient administration of petitions filed under Proposition 36. *See*, *e.g.*, Hamed Aleaziz, "LA lags behind on three strikes resentencing," *Daily Journal*, (Sept. 6, 2013); Jack Leonard, "Freed three strikers have low recidivism rate. study finds," *Los Angeles Times* (Sept. 9, 2013) (including response to from the Los Angeles District Attorney). According to data provided by the Department of Corrections, as of August 31, 2013, only 17 percent of the cases filed under Proposition 36 in Los Angeles County have been adjudicated. By contrast, 73 percent of Proposition 36 cases filed in San Bernardino County were adjudicated in the same time period. *See* Prop. 36 Progress Report, at 6.

The data demonstrates that application of Proposition 36 is inconsistent throughout the state. Regardless of whether that problem is a result of mismanagement, misapplication of law, or insufficient resources, Defendants can and should exercise their supervisory authority over District Attorneys to ensure swift and consistent implementation of Proposition 36 throughout the state.

## II.    DEFENDANTS CAN AND SHOULD PROVIDE REENTRY SERVICES TO PRISONERS RELEASED UNDER PROPOSITION 36.

The best way to reduce the prison population is to reduce the rate of crime—particularly the recidivism rate of inmates released from prison under the reforms implemented in the wake of this litigation (including Proposition 36). Defendants undoubtedly appreciate the importance of reducing recidivism by providing certain basic support services to inmates released from custody, including temporary housing, drug treatment, case management, and employment support.

The availability of reentry services is a crucial component of the Proposition 36 process itself. An inmate leaving prison is substantially less likely to be a danger to the community if he or she has stable housing, sobriety support, and employment assistance upon release. *See* Tracey Kaplan, "Santa Clara County to help pay freed three-strikers' rent for a year," *San Jose Mercury News* (Oct. 5, 2013) ("Research has always shown that housing is the linchpin for re-entry success . . . Without housing . . . sobriety and employment don't happen. This is a critically important project, and Santa Clara deserves a lot of credit for undertaking it." (quoting Joan Petersilia)). Because future risk to public safety is the core determination under the Proposition 36 resentencing process, *see* Cal. Penal Code Section 1170.126(f), Defendants can and should assist expedited implementation

18

of the initiative by ensuring that adequate reentry resources are available to eligible inmates.

Unfortunately, prisoners released under Proposition 36 are excluded from receiving the public reentry resources provided to other inmates leaving prison by Defendants and other public agencies. This not only impedes the implementation of Proposition 36 but also endangers California's public safety.

As this Court is aware, the enactment of AB 109, the Criminal Justice Realignment Act, divided supervision and support services offered to inmates released from prison between the State Division of Adult Parole Services and county Probation Offices. *See* Penal Code Sections 3450-3465; 3000.08; California Department of Corrections and Rehabilitation 2011 Public Safety Realignment Fact Sheet (April 15, 2013) *available via* www.cdcr.ca.gov. Prior to AB 109, the State Parole Division provided post-release supervision and support to all inmates leaving prison. *See* Cal. Penal Code Section 3000(a)(1) (2009). The State Parole Division is now responsible for prisoners released following convictions for serious or violent crimes; and county Probation Offices are responsible for prisoners released following convictions of non-serious, non-violent crimes. *See* Penal Code Sections 3450-3465; 3000.08. On average, the Parole Division spends $6,000 per released inmate on post-release supervision and support services. County Probation Offices average $6,300 per released inmate. *See* Prop. 36

19

Progress Report at 9 (citing figures provided by the California Legislative Analyst's Office).

However prisoners released under Proposition 36 are prevented from receiving reentry support services from either county probation offices or state parole, which is maintained by Defendants. This failure by Defendants and by the executive branch to extend meaningful reentry services to a population in dire need suggests a lack of seriousness on the part of those with the capacity to provide reentry services. Were Defendants invested in finding a durable solution to the prison crisis in California, one would expect to see some leadership on their part in this crucial area of reentry.

As most, if not all, prisoners released under Proposition 36 are former parolees (due to their prior incarcerations), it would appear that they remain eligible for parole services offered by Defendants. *See* Cal. Department of Corrections and Rehabilitation Operations Manual, Section 81080.6 (noting that discharged parolees have continuing "eligibility to receive parole services").

Furthermore, because all prisoners released under Proposition 36 were sentenced for non-serious, non-violent crimes, it would appear that county probation offices should supervise their release, and that these prisoners should be eligible for reentry services provided under the county-administered Post-Release Community Supervision program. However, because almost all prisoners

20

resentenced under Proposition 36 have excess custody credits, which satisfy their new reduced prison term *plus* an additional three years, they are not eligible for Post-Release Community Supervision. *See* Code Sections 2900, 2900.5; *see In re Randolph*, 215 Cal.App.3d 790, 795 (1989); *see also* Tracy Kaplan, "Released 'three strikes' inmates have low repeat-offense rate, report says," *San Jose Mercury News*, Sept. 9, 2013 ("Unlike all other prisoners released from state custody, strikers [released under Proposition 36] are not eligible for assistance with housing, jobs or drug treatment because they are not on parole or probation.").

Although Probation offices in most counties are refusing to provide services to inmates released under Proposition 36, the Probation Offices for Santa Clara and Marin counties are exceptions to this rule and have offered reentry services to inmates released under Proposition 36 even though they are not required to do so. *See* Prop. 36 Progress Report, at 8-10. In all other counties, inmates released under Proposition 36 receive nothing more than $200 in "gate money" to assist their immediate reentry from the Department of Corrections. *Ibid.*

Defendants can and should make these post-release services available to those resentenced under Proposition 36 in two ways.

First, Defendants have direct authority to offer support services currently available through the Parole Division to prisoners released under Proposition 36. Because of AB 109, and the reduction of the number of parolees, there should be

excess capacity in state reentry services, including the Substance Abuse Service Coordination Agency and Residential Multi-Service Center programs. *See* Cal. Department of Corrections and Rehabilitation Operations Manual, Section 11010.9.2.4 (2013).

Second, Defendants can and should exercise their supervisory authority over county sheriffs and probation offices to adopt the reentry programs modeled in Santa Clara and Marin counties, ensuring that prisoners released under Proposition 36 are not denied services under the Post-Release Community Supervision program. *See* Cal. Const., Art. 5, Sec. 13 ("The Attorney General shall have direct supervision over every . . . sheriff and over such other law enforcement officers as may be designated by law[.]")

Notably, the recidivism rate of those released so far is well below the state average. As of August 31, 2013, fewer than two percent of inmates released under Proposition 36 were charged with a new crime. On average, these inmates had been out of custody for 4.4 months. By contrast, the average recidivism rate for all inmates leaving prison in California is 16 percent over a similar time period. *See* Joan Petersilia, et al. "Assessing Parole Violations and Revocations in California: Finding Strategies for the Future," 33 APPA Perspectives 42.

In order to maintain the low recidivism rate of inmates released under Proposition 36, assist implementation of the initiative, maximize its effectiveness

22

at reducing the prison population, and help improve public safety throughout California, Defendants should allow prisoners released under Proposition 36 to receive public reentry support services and exercise their authority to ensure that these inmates receive the same services available to all other prisoners leaving state custody.

## CONCLUSION

For the foregoing reasons, this Court should order Defendants to exercise their authority to ensure consistent and expeditious implementation of Proposition 36. This Court should also order Defendants to make reentry services available to inmates released under Proposition 36 at the same levels of service provided to other inmates released from state custody.

*Amicus curiae* remain available to this Court for questions related to implementation of Proposition 36 and the Three Strikes law generally.


DATED:     October 10, 2013                    Respectfully submitted,


/s/ Michael Romano_____            /s/ Christina Swarns_____
Director                                Director, Criminal Justice Project
Three Strikes Project                   NAACP Legal Defense and
Stanford Law School                     Educational Fund, Inc.
559 Nathan Abbott Way                   99 Hudson Street, 16th Floor
Stanford, CA 94305                      New York, NY 10013
mromano@stanford.edu                    cswarns@naacpldf.org