| | |
|---|---|
| DONALD SPECTER – 083925<br>STEVEN FAMA – 099641<br>PRISON LAW OFFICE<br>1917 Fifth Street<br>Berkeley, California 94710-1916<br>Telephone: (510) 280-2621 | MICHAEL W. BIEN – 096891<br>JANE E. KAHN – 112239<br>ERNEST GALVAN – 196065<br>THOMAS NOLAN – 169692<br>LISA ELLS – 243657<br>LORI E. RIFKIN – 244081<br>AARON J. FISCHER – 247391<br>MARGOT MENDELSON – 268583<br>KRISTA STONE-MANISTA – 269083<br>ROSEN BIEN<br>GALVAN & GRUNFELD LLP<br>315 Montgomery Street, Tenth Floor<br>San Francisco, California 94104-1823<br>Telephone: (415) 433-6830 |
| JON MICHAELSON – 083815<br>JEFFREY L. BORNSTEIN – 099358<br>MEGAN CESARE-EASTMAN – 253845<br>RANJINI ACHARYA – 290877<br>K&L GATES LLP<br>4 Embarcadero Center, Suite 1200<br>San Francisco, California 94111-5994<br>Telephone: (415) 882-8200 | CLAUDIA CENTER – 158255<br>THE LEGAL AID SOCIETY –<br>EMPLOYMENT LAW CENTER<br>180 Montgomery Street, Suite 600<br>San Francisco, California 94104-4244<br>Telephone: (415) 864-8848 |

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>      Plaintiffs,<br><br>v.<br><br>EDMUND G. BROWN, JR., et al.,<br><br>      Defendants. | Case No. 2:90-cv-0520 LKK DAD<br><br>**PLAINTIFFS' RESPONSE TO SPECIAL MASTER'S REPORT ON THE SALINAS VALLEY PSYCHIATRIC PROGRAM AND REQUEST FOR ADDITIONAL RECOMMENDATIONS AND ORDERS**<br><br>Judge: Hon. Lawrence K. Karlton |

[967888-6]

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

ARGUMENT......................................................................................................................... 4

I.  THE COURT SHOULD ORDER DEFENDANTS TO IMPLEMENT FORTHWITH THE RECOMMENDATIONS SET FORTH IN THE SPECIAL MASTER'S SEPTEMBER 24, 2013 REPORT, AND ORDER THE SPECIAL MASTER TO REVIEW DEFENDANTS' COMPLIANCE WITHIN 60 DAYS AND MAKE ADDITIONAL RECOMMENDATIONS, AS NECESSARY ......................................................................................................... 4

II. THIS COURT SHOULD ISSUE ADDITIONAL ORDERS RELATED TO THE ISSUANCE OF RVRs, USE OF FORCE, THE USE OF UNSAFE AND INHUMANE OBSERVATION ROOMS, AND THE ROLE OF MTAs.......................................................................................................................... 6

  A.  Defendants Should Be Ordered To Suspend the Issuance of RVRs in SVPP Until the Special Master's Has Reviewed the Status of Defendants' Implementation of the RVR Process to Determine That *Coleman* Class Members Are No Longer Being Punished for Behavior That Is the Result of Their Mental Illness ....................................... 7

  B.  Use of Force Findings Raise Concerns That Indicate A Need For Further Monitoring By Special Master And Recommendations, As Needed ................................................................................................................ 8

  C.  This Court Should Order Defendants To Immediately Cease Their Use of the Unsafe and Inhumane Observation Cells Located in C-Unit and D-Unit Until The Special Master Determines They Have Adequate Tracking Procedures In Place ......................................................... 9

  D.  This Court Should Order the Special Master to Review the "Excessive" Role Played by MTAs at SVPP and Make Recommendations ...................................................................................... 9

CONCLUSION................................................................................................................... 10

PLAINTIFFS' REQUESTED RELIEF............................................................................... 11

[967888-6]

i
PLAINTIFFS' RESPONSE TO SPECIAL MASTER'S REPORT ON THE SALINAS VALLEY PSYCHIATRIC PROGRAM AND REQUEST FOR ADDITIONAL RECOMMENDATIONS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Page**

### STATUTES

18 U.S.C. § 3626(a)(1) ................................................................................................ 11

[967888-6]

PLAINTIFFS' RESPONSE TO SPECIAL MASTER'S REPORT ON THE SALINAS VALLEY PSYCHIATRIC
PROGRAM AND REQUEST FOR ADDITIONAL RECOMMENDATIONS

# TABLE OF ABBREVIATIONS

| | |
|---|---|
| ASH | Atascadero State Hospital |
| CDCR | California Department of Corrections and Rehabilitation |
| CHCF | California Health Care Facility |
| CIW/PIP | California Institute for Women |
| CSH | Coalinga State Hospital |
| DSH | Department of State Hospitals |
| EOP | Enhanced Outpatient Program |
| EPRD | Earliest Possible Release Date |
| MTAs | Medical Technical Assistants |
| RVR | Rules Violation Report |
| SM | Special Master |
| SVPP | Salinas Valley Psychiatric Program |
| VPP | Vacaville Psychiatric Program |

[967888-6]

iii
PLAINTIFFS' RESPONSE TO SPECIAL MASTER'S REPORT ON THE SALINAS VALLEY PSYCHIATRIC
PROGRAM AND REQUEST FOR ADDITIONAL RECOMMENDATIONS

# INTRODUCTION

On July 11, 2013, after more than three full days of testimony concerning the dire state of inpatient care provided to *Coleman* class members in programs operated by the California Department of State Hospitals ("DSH"), the Court found that "given the urgency of the issues tendered by plaintiffs, the Special Master will be directed to forthwith commence monitoring all such programs, and to report to the court on their adequacy and whether any modifications to defendants' remedial plan are required to ensure that members of the plaintiff class are receiving adequate inpatient mental health care." 7/11/13 Order (Docket No. 4688) ("the Order") at 11:20-12:3 (footnote omitted). The Order directed the Special Master to focus first on the Salinas Valley Psychiatric Program (SVPP) program, given the extensive evidence of dangerous, life-threatening practices at SVPP, and required the Special Master to file his report and recommendations about SVPP within seventy-five (75) days. 7/11/13 Order at 13:19-27. Defendants promptly appealed. Notice of Appeal, filed 8/13/13 (Docket No. 4749).

As directed by the Court, the Special Master's team of monitors and experts conducted extensive monitoring at SVPP over the course of nine days spanning three separate visits held between July 31, 2013 and August 22, 2013. Special Master's Report on the Salinas Valley Psychiatric Program ("SM Report" or "the Report"), filed 9/24/13 (Docket No. 4830) at 2. The monitoring tours involved record and document reviews, SVPP staff interviews, and observation of the treatment programs, including custody classification committees. *Id*. The Special Master found that during the course of the visits, "SVPP staff frequently concurred with the monitor's identification of need for improvements in various areas, and [that] … interim executive staff at SVPP indicated that plans were underway to address some of these problems, but necessary specific remedial measures had not yet been developed and put into place." *Id*. at 3. The process undertaken by the Special Master in his review of SVPP's program was transparent, and included DSH executive staff throughout the review. *Id*.

On September 24, 2013, the Special Master filed his report pursuant to the Order.

[967888-6]

1

PLAINTIFFS' RESPONSE TO SPECIAL MASTER'S REPORT ON THE SALINAS VALLEY PSYCHIATRIC PROGRAM AND REQUEST FOR ADDITIONAL RECOMMENDATIONS

In the Report, the Special Master documented extensive, wide-ranging, and shocking deficiencies in the inpatient care provided to *Coleman* class members housed in SVPP. SM Report at 8 ("Staffing at SVPP was significantly inadequate."); 14 ("Patients were receiving only four to six hours of group therapy per week – *barely half of the minimum requirement of ten hours for inmates at the lower, outpatient level of care known as the EOP, within CDCR prisons.*" (emphasis in original)); 15 ("lack of group therapy for Spanish-speaking patients."); 16 ("Group offerings also were not aligned with patients' treatment needs … instead based upon their housing location…."); 19 ("significant number of patients were placed on solo programming, but without apparent clear clinical criteria. SVPP staff acknowledged that *due to staffing shortages, a patient on solo programming may not be removed from his cell even as little as once a week*" (emphasis in original)); 19 ("randomly selected cases indicate a degree of isolation and lack of treatment for these patients [on solo programming] that is deeply disturbing."); 26 ("widespread noncompliance with SVPP's own policies on application of Cuff Status in multiple cases …. *In some cases, Cuff Status was not even mentioned in the patient's health record.*" (emphasis in original)); 28-29 ("When a patient is on Cuff Status, his treatment is severely curtailed …. [t]he patient receives no day room time or yard time with other patients [and] … no group therapy, which is a mainstay of treatment that offers the patient relief from the sensory deprivation of living in a single cell and the loss of dignity that goes with being cuffed whenever out of cell."); 37 ("There were significant problems in the areas of issuance and processing of RVRs for patients at SVPP."); 39 ("mentally disordered patients at SVPP were being subjected to excessive forfeitures of behavioral credits, without adequate consideration of the patient's mental illness in his behavior"); 41 (use of observation cells for seclusion and time-outs in C-Unit and D-Unit, which lacked toilets and had unsafe conditions); 43 ("SVPP did not have systematic quality management, quality assurance, and/or quality improvement processes in place.").

Although the Special Master's Report documented these wide-spread deficiencies at SVPP with precision, he concluded that "it would be unrealistic, and probably

[967888-6]

2

PLAINTIFFS' RESPONSE TO SPECIAL MASTER'S REPORT ON THE SALINAS VALLEY PSYCHIATRIC PROGRAM AND REQUEST FOR ADDITIONAL RECOMMENDATIONS

overwhelming, for the Program to tackle all of these problems at the same time." SM Report at 44. In light of that, and based on promises from the apparently cooperative SVPP interim executive staff that plans were underway to address some of the problems, the Special Master set forth only six recommendations for those areas that required immediate action. *Id.* at 44-45. These recommendations as set forth in the Special Master's Report are:

1. That the Salinas Valley Psychiatric Program be directed to fill remaining staffing vacancies and consider modifying its planned staff-to-patient ratio of 1:35. Priority should be given to filling psychiatry, psychology, and social work positions.

2. That the Salinas Valley Psychiatric Program be directed to increase significantly the amount and quality of individualized and group therapy provided.

3. That the Salinas Valley Psychiatric Program be directed to reconsider and re-evaluate its use of Orientation Status to automatically require patient cuffing whenever out-of-cell and withhold mental health programming or treatment other than a daily cell-front contact by a member of the interdisciplinary treatment team.

4. That the Salinas Valley Psychiatric Program be directed to eliminate the use of Cuff Status to require automatic cuffing of patients when out-of-cell, overriding of patients' stage designations, and barring of patients' access to out-of-cell individual and group treatment.

5. That the Salinas Valley Psychiatric Program be directed to begin tracking all patient bed assignments, and admit referred and accepted patients as quickly as bed availability permits so that all beds are utilized to the fullest extent possible, and in no event beyond 72 hours following bed assignment and 30 days from the date of the referral.

6. That the Salinas Valley Psychiatric Program resolve any and all remaining issues with, and obstacles to, providing patients with the full complement of clean clothing, towels, and bed coverings, and make these provisions available to patients on a timely basis according to established schedules.

*Id.* Plaintiffs agree with these recommendations and request that the Court order Defendants to immediately implement them as set forth in the Report.

Additionally, to ensure Defendants make concrete progress on the aforementioned problems identified during the Special Master's extensive touring, Plaintiffs hereby request that the Court direct the Special Master to review Defendants' compliance with the

[967888-6]

3

PLAINTIFFS' RESPONSE TO SPECIAL MASTER'S REPORT ON THE SALINAS VALLEY PSYCHIATRIC PROGRAM AND REQUEST FOR ADDITIONAL RECOMMENDATIONS

1  recommendations within 60 days, and to make any additional recommendations that he
2  deems necessary upon his follow-up review.  Furthermore, Plaintiffs request that the
3  Special Master be directed to further review the additional deficiencies identified in his
4  report that were not made recommendations, and make recommendations, as necessary.
5  Finally, Plaintiffs request that this Court enter additional orders related to the Special
6  Master's findings, including:  the broken rules violation report (RVR) process; the use of
7  force against *Coleman* class members housed in the inpatient psychiatric hospital program
8  at SVPP;  the undocumented use of observation cells, including unsafe and inhumane
9  observation cells; and the excessive use of MTAs inside therapeutic settings.

## ARGUMENT

**I.  THE COURT SHOULD ORDER DEFENDANTS TO IMPLEMENT FORTHWITH THE RECOMMENDATIONS SET FORTH IN THE SPECIAL MASTER'S SEPTEMBER 24, 2013 REPORT, AND ORDER THE SPECIAL MASTER TO REVIEW DEFENDANTS' COMPLIANCE WITHIN 60 DAYS AND MAKE ADDITIONAL RECOMMENDATIONS, AS NECESSARY**

The Special Master directed Defendants to implement his recommendations "forthwith," but did not set forth a mechanism for ensuring that implementation would commence immediately as recommended.  Many of the problems identified during the site visits were discussed with staff on-site.  The Special Master noted that "staff frequently concurred with the monitor's identification of need for improvements in areas," and the interim executive team "indicated that plans were underway to address some of the problems."  SM Report at 3.  This transparent process, which included briefings at the end of each visit, provided Defendants with ample notice of the problems that the Special Master and his team found over the course of the three visits.

Defendants have requested an extension of time to respond to the Special Master's Report so they can undertake a "substantial effort by the Department of State Hospitals (DSH) and the Salinas Valley Psychiatric Program to research, review, and assess the Special Master's findings and to prepare a response, when necessary, to the details of that report."  Defendants' *Ex Parte* Request for a Seven-Day Extension of Time to Respond to

[967888-6]

4

PLAINTIFFS' RESPONSE TO SPECIAL MASTER'S REPORT ON THE SALINAS VALLEY PSYCHIATRIC PROGRAM AND REQUEST FOR ADDITIONAL RECOMMENDATIONS

Special Master's Report Re: Salinas Valley Psychiatric Program ("Defs' Request for Extension"), filed 10/4/13 (Docket No. 4859) at 2:14-17.  Pam Ahlin, the Interim Executive Director of SVPP, filed a declaration in support of Defs' Request for Extension. *See* Declaration of Pam Ahlin in Support of Defs' Request for Extension ("Ahlin Decl."), filed 10/4/13 (Docket No. 4859-2).  According to Ms. Ahlin, after receiving the Special Master's Report, DSH and SVPP "began researching, reviewing, and assessing its details and findings, particularly the findings concerning the use of orientation and cuff status and the care provided to class members."  Ahlin Decl. at 2:9-12.  The investigation has included "interviewing program staff, compiling and reviewing data regarding placements and mental health treatment of class members, and reviewing other relevant events that bear on the issues raised in the Special Master's report."  *Id.* at 2:12-14.

   The extensive time and effort DSH and SVPP staff apparently are spending on responding to the Report, including multiple staff interviews, data compilation and review, and preparation of a rebuttal, is wasteful and unnecessary:  The Special Master's findings in his Report were not a surprise, as they were shared with DSH officials during the inspections and in informal exits after the inspections.  Any necessary investigation should have been conducted at that time, and any disagreements or disputes should have been raised and resolved at that point, not months later after the Special Master issued his formal report.  Especially given SVPP's well-documented understaffing, which has seriously compromised the delivery of care to *Coleman* class members housed there (*see* SM Report at 5, 8), Defendants should be using their extremely scarce resources requiring SVPP's executive team and program staff to develop the necessary remedial measures that they reported had "not yet been developed."  *See* SM Report at 3.  Those measures should address the dangerous clinical vacancies, shockingly inadequate treatment offerings, punitive RVR processes, unsafe and inhumane observation cells, cuffing procedures that result in lock-down conditions far more severe than segregated housing conditions, and the other deficiencies documented by the Special Master and his team.

   Defendants' Request for Extension and Ms. Ahlin's declaration make clear that they

[967888-6]

5

PLAINTIFFS' RESPONSE TO SPECIAL MASTER'S REPORT ON THE SALINAS VALLEY PSYCHIATRIC PROGRAM AND REQUEST FOR ADDITIONAL RECOMMENDATIONS

1 have not in fact taken affirmative steps promptly to cure the identified deficiencies, but
2 instead are engaging in a wasteful distraction.  They should not now be given additional
3 time to "investigate" the problems that SVPP staff acknowledged existed months ago when
4 the Special Master toured.  Rather, the Court should order Defendants to implement
5 forthwith the recommendations set forth in the Special Master's September 24, 2013
6 Report.

7 Furthermore, given Defendants' efforts to further delay remedial action, this Court
8 should order the Special Master to review Defendants' compliance within 60 days, and to
9 make such additional recommendations as he finds necessary at that time, including any
10 further recommendations related to the problems identified in his report that are not
11 already the subject of formal recommendations.

**II.  THIS COURT SHOULD ISSUE ADDITIONAL ORDERS RELATED TO THE ISSUANCE OF RVRs, USE OF FORCE, THE USE OF UNSAFE AND INHUMANE OBSERVATION ROOMS, AND THE ROLE OF MTAs**

14 The Special Master's Report identified many serious problems uncovered during his
15 extensive monitoring tours.  He chose to limit his formal recommendations, however,
16 because he determined that requiring SVPP to fix every problem at once would likely
17 prove to be an "unrealistic, and probably overwhelming" task.  SM Report at 44.

18 Nonetheless, because they are already well documented in his Report, Plaintiffs
19 request that this Court issue additional orders immediately to address four serious
20 deficiencies, including:  the broken rules violation report (RVR) process; the use of force
21 against *Coleman* class members housed in the inpatient psychiatric hospital program at
22 SVPP; the undocumented use of observation cells, including unsafe and inhumane
23 observation cells; and the excessive use of MTAs inside therapeutic settings.  Absent a
24 specific court order, Defendants may choose to ignore these critical problem areas despite
25 the clear evidence of their existence.

26 / / /
27 / / /
28 / / /

[967888-6]

6

PLAINTIFFS' RESPONSE TO SPECIAL MASTER'S REPORT ON THE SALINAS VALLEY PSYCHIATRIC
PROGRAM AND REQUEST FOR ADDITIONAL RECOMMENDATIONS

### A. Defendants Should Be Ordered To Suspend the Issuance of RVRs in SVPP Until the Special Master's Has Reviewed the Status of Defendants' Implementation of the RVR Process to Determine That *Coleman* Class Members Are No Longer Being Punished for Behavior That Is the Result of Their Mental Illness

The Special Master documented significant problems with the issuance and processing of RVRs for *Coleman* patients receiving care in SVPP. SM Report at 36. Many members of the clinical staff who prepared mental health assessments for patients who had been issued a rule violation reported that they had never been trained on how to do the assessment. *Id.* at 37. Mental health clinicians in the program wrote up their own patients for rule violations based on physician-patient communications that occurred during the course of treatment. *Id*. at 36, 39. The Special Master also identified a group of SVPP patients who had received multiple rule violations for indecent exposure — causing them to losing months, even years, of credits — but who had never received any treatment for their underlying diagnosis. *Id*. at 36.

Based on his monitoring, the Special Master concluded that "[m]entally disordered patients at SVPP were being subjected to excessive forfeiture of behavioral credits, without adequate consideration of the role of the patient's mental illness in the behavior." *Id*. at 39-40. Although patients did not lose privileges if charged with a rule violation,[1] the hearing officers provided no mitigation of loss of credits, which resulted in "accumulations of excessive high numbers of extra days. The result was sometimes bizarrely and cumulatively punitive…." *Id*. at 37.

For example, Patient S, reviewed by the Special Master, received 3 RVRs in a single day and consequently lost 570 days of credit. *Id*. For each of his rule violations, the mental health assessment found that his mental disorder contributed to his behavior, but he was found guilty each time and assessed significant credit losses. Similarly, Patient T lost

---

[1] As noted in the SM Report, "the stated 'mitigation' from the assessments was no loss of privileges, but as was evident over the monitor's nine-day site visit, these patients had very little to no privileges to begin with." *Id*. at 40.

[967888-6]

7

PLAINTIFFS' RESPONSE TO SPECIAL MASTER'S REPORT ON THE SALINAS VALLEY PSYCHIATRIC PROGRAM AND REQUEST FOR ADDITIONAL RECOMMENDATIONS

510 days of credit because of four RVRs for masturbation and one for gassing. In each of the mental health assessments for these RVRs, clinical staff determined that his mental illness contributed to his behavior. *Id*. at 39. Patient U lost 720 days of credit due to seven RVRs issued for indecent exposure, including one written by his own psychiatrist. *Id*. at 39. His earliest possible release date (EPRD) went from March 15, 2012 to July 15, 2014 – *a two year, four month* extension of his sentence. *Id*.

Plaintiffs request that the Court order Defendants to suspend the practice of issuing RVRs to *Coleman* class members housed in SVPP until and unless the Special Master determines that the RVR process has been revised to ensure that *Coleman* class members are not being punished for behavior that is the result of their mental illness.

### B. Use of Force Findings Raise Concerns That Indicate A Need For Further Monitoring By Special Master And Recommendations, As Needed

The Special Master's Report documented thirteen (13) use-of-force incidents against *Coleman* class members receiving treatment in SVPP during the second quarter of 2013, including four cell extractions of patients in the program. SM Report at 40. The MTAs reported that "if doctors were not on site, it was not uncommon for them to order a cell-extraction to remove a patient from his cell." *Id*. Although the Special Master's monitors reviewed the 837 incident packets, they did not review any use-of-force videos, which provide a more complete picture of the type of mental health intervention provided prior to use of force during a cell extraction. It unclear whether such videos exist or were made available to the monitoring team during their site visits. The viewing of cell extraction videos, as well as a review of DSH and CDCR's use of force oversight policies, are both critical in evaluating the propriety of the level of force employed in this inpatient, psychiatric setting, where understaffing and other punitive custodial procedures are already well documented.

Plaintiffs therefore request that this Court direct the Special Master to review the use of force inside of SVPP, including viewing any cell extraction videos, assessing DSH's policies and procedures governing cell extractions and use of pepper spray in the inpatient

[967888-6]

8

PLAINTIFFS' RESPONSE TO SPECIAL MASTER'S REPORT ON THE SALINAS VALLEY PSYCHIATRIC PROGRAM AND REQUEST FOR ADDITIONAL RECOMMENDATIONS

hospital, and reviewing both DSH and CDCR's processes that are employed after a use of force incident. After conducting the review, the Special Master should make any recommendations that he deems appropriate.

### C. This Court Should Order Defendants To Immediately Cease Their Use of the Unsafe and Inhumane Observation Cells Located in C-Unit and D-Unit Until The Special Master Determines They Have Adequate Tracking Procedures In Place

The Special Master's Report also identified the unregulated and undocumented use of observations cells, including those located in C-Unit and D-Unit, that his team determined are "unsafe," because they have breakable windows and low ceilings, and "inhumane," because they lack toilets. SM Report at 40-41. SVPP staff reported that they use these observation cells for both "timeouts" and "seclusion," but the Special Master found that staff failed to track adequately the use of the cells or to document their use in treatment plans. *Id*. The Special Master should be directed to review the use of all observation cells, and make recommendations, as necessary, regarding the continued use of the observation cells in C-Unit and D-Unit. Until Defendants can establish adequate tracking procedures for the use of observation cells, the Court should order Defendants to cease their use of the unsafe and inhumane observation cells located in C-Unit and D-Unit.

### D. This Court Should Order the Special Master to Review the "Excessive" Role Played by MTAs at SVPP and Make Recommendations

The Special Master Report documented the various job assignments that medical technical assistants (MTAs) have in SVPP, many of which require the MTAs to remain present in clinical sessions. The Special Master found that the MTAs' role was "excessive" and that their presence at therapeutic session interferes with confidentiality. SM Report at 4.[2] In addition to escorting patients, MTAs also write RVRs, order cell

---

[2] The Special Master noted that, "with only one exception, MTAs are not used at the other DSH programs for CDCR inmates, including Atascadero State Hospital (ASH), Coalinga (footnote continued)

[967888-6]

9

PLAINTIFFS' RESPONSE TO SPECIAL MASTER'S REPORT ON THE SALINAS VALLEY PSYCHIATRIC
PROGRAM AND REQUEST FOR ADDITIONAL RECOMMENDATIONS

1  extractions, and pepper spray patients. *Id*. at 36, 40, 41.

2  The Special Master was concerned especially about SVPP's policy requiring MTAs
3  to be present during all group sessions and every individual meeting with a clinician. *Id*. at
4  17-18. Two MTAs are required to attend all treatment team meetings, regardless of the
5  patients' stage, status, or general behavioral issues. *Id*. at 13. Prior to entering inpatient
6  treatment at SVPP, many of these same patients had private confidential sessions with their
7  primary case manager when they were receiving mental health treatment in the prisons,
8  where an officer might have sat nearby, "but not inside the room during the clinical
9  session." *Id*. at 17. The Special Master recommended that the decision to have two MTAs
10 in the room during individual clinical sessions should be the exception and not the rule,
11 subject to an individualized assessment of the patient's needs, because he determined that
12 the presence of MTAs in these settings "can inhibit the patient's openness and willingness
13 to provide the clinician with sensitive and clinically valuable information." *Id*. at 17-18.

14 Because of SVPP's heavy reliance on MTAs in delivering inpatient care, and due to
15 the concerns outlined in the Report, Plaintiffs request that the Court order the Special
16 Master to further review the various roles and responsibilities of the MTAs, including the
17 training in mental health issues provided to MTAs, if any, and to make any
18 recommendations, as necessary.

19 **CONCLUSION**

20 The Special Master's Report documented serious and life-threatening deficiencies
21 in the delivery of inpatient care to the *Coleman* class members currently housed in DSH's
22 SVPP Program. The Special Master's formal recommendations are well supported, but
23 were also intentionally limited to account for the enormity of the task facing the interim

---

25 State Hospital (CSH), or the California Health Care Facility (CHCF), nor are they used at
26 the 45-bed inpatient program at the California Institute for Women (CIW/PIP), which is
   run by CDCR. The only other known DSH program for CDCR inmates at which MTAs
27 are used is the Vacaville Psychiatric Program (VPP.)" SM Report at 17, n. 5.

28

[967888-6]

10
PLAINTIFFS' RESPONSE TO SPECIAL MASTER'S REPORT ON THE SALINAS VALLEY PSYCHIATRIC
PROGRAM AND REQUEST FOR ADDITIONAL RECOMMENDATIONS

1  executive staff, who are new to the SVPP Program. The deficiencies identified in the
2  Report are, however, no surprise to the interim executive staff, who testified at the
3  evidentiary hearing and participated in the court-ordered monitoring of the SVPP program.
4      Rather than begin to undertake the steps necessary to fix the problems, SVPP's
5  interim executive staff, who are now settled into their jobs, are now spending precious time
6  and resources assisting their lawyers in preparing an objection to the Special Master
7  Report and recommendations. Given the passage of time since the evidentiary hearing, the
8  July-August 2013 visits to SVPP by the Special Master's team, and the issuance of the
9  Special Master's Report, it is appropriate to supplement the original recommendations with
10 the additional ones set forth in Plaintiffs' Response hereto. These requested orders extend
11 no further than necessary to correct the continuing constitutional violations identified by
12 the Court, and are the least intrusive means necessary at this point in the remedial process
13 to correct the violations. *See* 18 U.S.C. § 3626(a)(1).

## PLAINTIFFS' REQUESTED RELIEF

15     Based on the foregoing, Plaintiffs request that the Court issue the following order:
16     Upon review of the Special Master's September 24, 2013 Report (Docket No.
17 4830), the Court finds that Defendants' current policies and practices governing the
18 Department of State Hospital ("DSH") Salinas Valley Psychiatric Program ("SVPP")
19 subject *Coleman* class members to unnecessary and avoidable pain, suffering, and
20 increased risk of suicide. Each individual remedial order set forth below is narrowly
21 tailored and is the least intrusive means necessary to ensure members of the *Coleman* class
22 receive access to timely and clinically appropriate mental health treatment.
23     It is hereby ORDERED that:
24     1.     Defendants shall implement immediately the recommendations set forth in
25 the Special Master's Report on the Salinas Valley Psychiatric Program, filed 9/24/13,
26 Docket No. 4830:
27          (a)    That the Salinas Valley Psychiatric Program be directed to fill
28 remaining staffing vacancies and consider modifying its planned staff-to-patient ratio of

[967888-6]

1:35. Priority should be given to filling psychiatry, psychology, and social work positions;

    (b)    That the Salinas Valley Psychiatric Program be directed to increase significantly the amount and quality of individualized and group therapy provided;

    (c)    That the Salinas Valley Psychiatric Program be directed to reconsider and re-evaluate its use of Orientation Status to automatically require patient cuffing whenever out of cell and withholding of mental health programming or treatment other than a daily cell-front contact by a member of the interdisciplinary treatment team;

    (d)    That the Salinas Valley Psychiatric Program be directed to eliminate the use of Cuff Status to require automatic cuffing of patients when out-of-cell, overriding of patients' stage designations, and barring of patients' access to out-of-cell individual and group treatment;

    (e)    That the Salinas Valley Psychiatric Program be directed to begin tracking all patient bed assignments, and admit referred and accepted patients as quickly as bed availability permits so that all beds are utilized to the fullest extent possible, and in no event beyond 72 hours following bed assignment and 30 days from the date of the referral; and

    (f)    That the Salinas Valley Psychiatric Program resolve any and all remaining issues with, and obstacles to, providing patients with the full complement of clean clothing, towels, and bed coverings, and make these provisions available to patients on a timely basis according to established schedules.

2.    The Special Master shall be directed to review within 60 days of this order the status of Defendants' compliance with the recommendations set forth above, as well as any other problems identified in his September 24, 2013 Report, and make any further recommendations, as needed.

3.    Defendants shall be directed to suspend the writing of rule violation reports (RVRs) against *Coleman* class members receiving treatment in SVPP until the Special Master's team has reviewed and certified that the RVR process has been revised to ensure that *Coleman* class members are not punished for behavior that is the result of their mental

[967888-6]

12

PLAINTIFFS' RESPONSE TO SPECIAL MASTER'S REPORT ON THE SALINAS VALLEY PSYCHIATRIC PROGRAM AND REQUEST FOR ADDITIONAL RECOMMENDATIONS

1 illness;

2     4.    The Special Master shall be directed to review use-of-force practices, policies, and procedures in DSH facilities, where *Coleman* class members are treated, including SVPP, and make any recommendations, as needed. This review shall include viewing of any existing SVPP use-of-force videos, examining the processes utilized by DSH and CDCR management for reviewing use-of-force incidents, interviewing patients subjected to force and staff ordering and carrying out such force, assessing DSH policies and procedures regarding use of force, and consideration of any other relevant materials as necessary.

    5.    Defendants shall immediately cease using the observation cells located in SVPP's C-Unit and D-Unit, and shall immediately implement tracking of the use of all other observation cells for time-outs and seclusion. The Special Master is hereby directed to review the use of all observation cells and to make recommendations, as necessary, regarding the continued use of the observation cells in C-Unit and D-Unit.

    6.    The Special Master shall be directed to review the role of medical technical assistants in the SVPP, including their training in mental health issues, and make to specific recommendations regarding their scope of responsibilities, as appropriate.

DATED: October 14, 2013

Respectfully submitted,

ROSEN BIEN GALVAN & GRUNFELD LLP

By: */s/ Jane E. Kahn*
     Jane E. Kahn

Attorneys for Plaintiffs

[967888-6]

13

PLAINTIFFS' RESPONSE TO SPECIAL MASTER'S REPORT ON THE SALINAS VALLEY PSYCHIATRIC PROGRAM AND REQUEST FOR ADDITIONAL RECOMMENDATIONS