DONALD SPECTER – 083925
STEVEN FAMA – 099641
PRISON LAW OFFICE
1917 Fifth Street
Berkeley, California 94710-1916
Telephone: (510) 280-2621

MICHAEL W. BIEN – 096891
JANE E. KAHN – 112239
ERNEST GALVAN – 196065
THOMAS NOLAN – 169692
LISA ELLS – 243657
LORI E. RIFKIN – 244081
AARON J. FISCHER – 247391
MARGOT MENDELSON – 268583
KRISTA STONE-MANISTA – 269083
ROSEN BIEN
GALVAN & GRUNFELD LLP
315 Montgomery Street, Tenth Floor
San Francisco, California 94104-1823
Telephone: (415) 433-6830

JON MICHAELSON – 083815
JEFFREY L. BORNSTEIN – 099358
MEGAN CESARE-EASTMAN – 253845
RANJINI ACHARYA – 290877
K&L GATES LLP
4 Embarcadero Center, Suite 1200
San Francisco, California 94111-5994
Telephone: (415) 882-8200

CLAUDIA CENTER – 158255
THE LEGAL AID SOCIETY –
EMPLOYMENT LAW CENTER
180 Montgomery Street, Suite 600
San Francisco, California 94104-4244
Telephone: (415) 864-8848

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al., <br><br>　　　　Plaintiffs, <br><br>　　v. <br><br>EDMUND G. BROWN, JR., et al., <br><br>　　　　Defendants. | Case No. 2:90-cv-0520 LKK DAD <br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* NO, 8: TO EXCLUDE THE SUPPLEMENTAL DECLARATION AND TESTIMONY OF PLAINTIFFS' EXPERT WITNESS PABLO STEWART, M.D. ON ISSUES OUTSIDE THE SCOPE OF PLAINTIFFS' SPECIALIZED CARE FOR THE CONDEMNED PLAN MOTION** <br><br>Judge: Hon. Lawrence K. Karlton <br>Date: October 16, 2013 <br>Time: 9:30 a.m. <br>Crtrm.: 4 |

[980646-1]

## INTRODUCTION

Plaintiffs oppose Defendants' Motion *in Limine* No. 8 To Exclude The Declaration And Testimony of Plaintiffs' Expert Witness Pablo Stewart, M.D., On Issues Outside The Scope of Plaintiffs' Specialized Care For The Condemned Plan Motion. (Dkt. 4869.) Defendants seek to exclude Dr. Stewart's expert testimony on critical matters at issue in the pending enforcement motions, including the sufficiency of the mental health treatment provided to an EOP prisoner on death row who committed suicide at San Quentin in April 2013; the prevalence of suicide among other death row inmates; the psychological harm imposed on seriously mentally ill death row inmates by excessive custodial restrictions on the mental health care provided at Vacaville Psychiatric Program's Acute Psychiatric Program ("APP"); and the psychological condition of an class member about whom Dr. Stewart has previously opined. Defendants mischaracterize the scope of the enforcement motions before this Court and improperly seek the exclusion of important evidence of harm to *Coleman* class members.

Moreover, Defendants have had ample notice of the issues on which Dr. Stewart has and will opine. Plaintiffs filed a trial brief setting forth these issues on September 23, 2013, *see* Plaintiffs' Trial Brief In Support Of Motion For Enforcement Of Court Orders And Affirmative Relief Regarding Inpatient Psychiatric Hospitalization For Condemned Inmates, Dkt. No. 4829, and a supplemental declaration by Dr. Stewart on September 27, 2013, *see* Supplemental Declaration of Pablo Stewart, M.D., In Support Of Plaintiffs' Motion For Enforcement Of Court Orders And Affirmative Relief Re Inpatient Psychiatric Hospitalization For Condemned Inmates, Dkt. No. 4840 ("Stewart Supplemental Decl."). Plaintiffs made Dr. Stewart available for deposition after the filing of his Supplemental Declaration, and Defendants elected not to take that deposition. Because the contents of Dr. Stewart's declaration and testimony fall well within the scope of the pending motion and within Dr. Stewart's well-established expertise, Defendants' eleventh-hour motion

[980646-1]

1

PLS.' OPP. TO DEFS.' MOTION *IN LIMINE* NO 8: TO EXCLUDE SUPP. DECL. & TESTIMONY OF PLS.' EXPERT PABLO STEWART, M.D. ON ISSUES OUTSIDE SCOPE OF PLS.' SPECIALIZED CARE FOR CONDEMNED PLAN MOTION

must be denied.[1]

## ARGUMENT

### I. DR. STEWART'S TESTIMONY ABOUT PRISONER WWW IS DIRECTLY RELEVANT TO PLAINTIFFS' ENFORCEMENT MOTION BECAUSE IT REVEALS THE INADEQUACY OF SAN QUENTIN'S REFERRALS TO HIGHER LEVELS OF CARE AND DEFICIENCIES IN MENTAL HEALTH TREATMENT THAT AFFECT ALL CLASS MEMBERS ON DEATH ROW

Plaintiffs' enforcement motion challenges Defendants' policies and practices for identifying, referring, and transferring death row prisoners in need of higher levels of care including inpatient psychiatric hospitalization. Plaintiffs have demonstrated that class members are suffering needlessly because Defendants fail to adequately screen death row inmates for serious mental illness or transfer them to appropriate levels of care, and Plaintiffs requested a sweep of death row to identify such class members as part of the remedy for this ongoing violation. *See* Notice of Motion and Motion for Enforcement of Court Orders and Affirmative Relief Related to Inpatient Treatment, Dkt. No. 4543 ("Pls' Enforcement Motion re Inpatient Treatment") at 6 ("Defendants are denying appropriate levels of care to critically ill patients on death row at San Quentin."); Proposed Order Granting Motion for Enforcement of Court Orders and Affirmative Relief Related to Inpatient Treatment, Dkt. No. 4543-1, at 1:14-16 ("Defendants shall also evaluate each *Coleman* class member currently on death row and at the EOP level of care within 21 days to determine if a transfer to a higher level of care is appropriate.").

Dr. Stewart has provided expert testimony about one such inmate, Prisoner WWW, who failed to receive the appropriate level of care in San Quentin's death row at tragic consequence. *See* Stewart Supplemental Decl. ¶¶ 6-34. Based on an extensive review of Prisoner WWW's medical records, Dr. Stewart testified about Defendants' repeated failures to provide appropriate levels of care, including by failing to "evaluat[e] [his]

---

[1] This Court has already denied Defendants' previous Motion *in Limine* No. 3 to Preclude Plaintiffs' Expert Witness Pablo Stewart, M.D. From Offering Opinions Not Included In His Report Or Deposition Testimony, Dkt. No. 4794, filed Sept. 19, 2013. *See* Minute Order, Sept. 30, 2013, Dkt. No. 4848.

1  suitability for the Specialized Care Program" or "seek[] transfer to either APP or
2  intermediate inpatient care." *Id.* ¶ 24.  Dr. Stewart traced the inadequacy of Prisoner
3  WWW's mental health treatment up to the time he took his life on April 14, 3013, and
4  ultimately concluded that "this patient's death would likely have been prevented if he had
5  been provided with appropriate access to higher levels of care and more intensive
6  treatment for his mental health conditions." *Id.* ¶ 34.  These opinions bear directly on
7  Defendants' provision of appropriate levels of care to death row inmates.

8  Moreover, Defendants have recently claimed that the Specialized Care for the
9  Condemned Program not only provides care to individuals in the San Quentin outpatient
10 housing unit ("OHU") who have been identified as requiring heightened levels of care, but
11 also provides treatment to all death row inmates housed in San Quentin's East Block,
12 which includes CCCMS and EOP inmates.  *See* Deposition of Eric Monthei at 23:24-
13 24:18, deposition excerpt filed October 14, 2013, Dkt. No. 4866 (Specialized Care
14 Program "extends to the services … being delivered on the East Block").  Defendants
15 cannot claim that the Specialized Care Program provides services to patients outside the
16 San Quentin OHU and simultaneously assert that care provided to patients outside the
17 OHU does not reflect the quality of the Specialized Care Program. Evidence of all
18 inadequate mental health treatment for death row inmates reflects the deficiency of the
19 Specialized Care Program and other death row mental health services as a vehicle for
20 delivering that care and is therefore directly relevant to the issues before this Court.

21 **II.  DR. STEWART'S REVIEW OF SUICIDE RATES IS RELEVANT AND RELIABLE**
22

23 Dr. Stewart's review of death row suicide rates is relevance, rational, and reliable.
24 Disproportionately high suicide rates among death row inmates are of clear relevance to
25 motions which allege that care for death row inmates is systemically and dangerously
26 inadequate.  The methodology employed by Dr. Stewart is no more than simple arithmetic.
27 Such simple mathematical assessments do not require a statistician, as Defendants assert.
28 Moreover, this Court has previously found Dr. Stewart qualified as an expert under

Federal Rule of Evidence 702, and has also credited Dr. Stewart's past testimony on suicide rates and reports. Dr. Stewart's brief discussion of suicide rates among death row inmates explicitly references his extensive discussion of suicide rates and causes in his termination declaration, which has been entered into evidence and relied upon by the courts. *See* Stewart Supplemental Decl. ¶ 35; Expert Declaration Of Pablo Stewart In Support Of Plaintiffs' Opposition to Defendants' Motion To Terminate, Dkt No. 4381 ("Stewart Termination Decl.") ¶¶ 169-282. Finally, Dr. Stewart will be available to the Court to address any questions about his methodology or the figures upon which he has relied in examining suicide rates among death row inmates.

### III. DR. STEWART'S TESTIMONY ABOUT PRISONER GG IS RELEVANT BECAUSE DR. STEWART HAS PREVIOUSLY OPINED ABOUT PRISONER GG'S MENTAL HEALTH AND BECAUSE DEFENDANTS PLACED PRISONER GG'S MENTAL HEALTH CONDITION AT ISSUE

Defendants seek to exclude testimony by Dr. Stewart about the use of force incident involving Prisoner GG, an EOP inmate whom he encountered when he visited the EOP Administrative Segregation Unit at San Quentin in February 2013, in connection with Defendants' termination motion. Dr. Stewart opined about Prisoner GG's mental health and the appropriateness of his mental health treatment in his termination declaration. *See* Stewart Termination Decl. ¶¶ 342-344.

Defendants assert that Dr. Stewart is not a use of force expert, but Plaintiffs are not proffering him as such. Rather, Dr. Stewart's testimony will address Prisoner GG's mental health and the quality of the treatment he has received at San Quentin, which are the subjects on which Dr. Stewart opined in his termination declaration. That report is already part of the record in this case, and Defendants have already deposed Dr. Stewart.

Moreover, Defendants placed Prisoner GG's mental health status at issue when they claimed that there was no evidence that Prisoner GG was mentally ill. On October 2, 2013, Deputy Attorney General Jay Russell objected to testimony by Plaintiffs' expert Eldon Vail about a use of force incident involving Prisoner GG on the grounds that "there's [sic] no facts establishing this inmate is suffering from a mental illness." Oct. 2,

[980646-1]

4

PLS.' OPP. TO DEFS.' MOTION *IN LIMINE* NO 8: TO EXCLUDE SUPP. DECL. & TESTIMONY OF PLS.' EXPERT PABLO STEWART, M.D. ON ISSUES OUTSIDE SCOPE OF PLS.' SPECIALIZED CARE FOR CONDEMNED PLAN MOTION

2013 Trial Transcript, at 274:8-10.  In so doing, Defendants questioned the relevance of the video showing the use of force against Prisoner GG to the pending motion. Dr. Stewart's testimony regarding Prisoner GG's mental health status and diagnosis is provided in response to Defendants' objection.

### IV. DR. STEWART'S TESTIMONY REGARDING RESTRICTIONS ON THE TREATMENT PROVIDED TO DEATH ROW INMATES AT VPP'S ACUTE CARE PROGRAM IS RELEVANT BECAUSE PLAINTIFFS HAVE CHALLENGED DEFENDANTS' UNNECESSARY CUSTODIAL RESTRICTIONS TO INPATIENT CARE

Dr. Stewart has provided expert opinions on the necessity and the psychiatric effects of the custodial restrictions imposed on class members who are transferred from death row for inpatient treatment at DSH Vacaville's acute care program.  Defendants' claim that such opinions fall outside the scope of the pending enforcement motions is misplaced.  Plaintiffs' enforcement motions have directly addressed VPP's acute care program, with a particular focus on custodial barriers to inpatient care.  *See* Pls' Enforcement Motion Re Inpatient Treatment, at 26-27 (requesting Special Master investigation of the care and conditions at VPP).  The Court has already ordered the Special Master to monitor VPP and report on its adequacy.  *See* 7/11/13 Order, Dkt. No. 4688, at 11:16-12:3.  Moreover, Defendants have repeatedly defended their exclusion of death row inmates from ICF-level inpatient hospitalization on the grounds that: (1) APP care is sufficient to handle death row patients' acute mental health treatment needs, and (2) extreme custodial restrictions are necessary and unavoidable when death row patients are transferred for inpatient psychiatric hospitalization. *See* Defendants' Opposition to Plaintiffs' Motion for Enforcement of Court Orders and Affirmative Relief Related to Inpatient Treatment ("Defs' Opp. to Pls' Enforcement Motion Re Inpatient Treatment"), Dkt. No. 4592, at 5 ("Condemned inmates at San Quentin State Prison have ready access to adequate mental health care, including crisis and acute inpatient care at the Vacaville Psychiatric Program."); *id.* at 10-11 (describing extensive custodial restrictions and measures which are purportedly necessary for condemned inmates in DSH-operated facilities).

[980646-1]

5

PLS.' OPP. TO DEFS.' MOTION *IN LIMINE* NO 8: TO EXCLUDE SUPP. DECL. & TESTIMONY OF PLS.' EXPERT PABLO STEWART, M.D. ON ISSUES OUTSIDE SCOPE OF PLS.' SPECIALIZED CARE FOR CONDEMNED PLAN MOTION

In response to this position by defendants, plaintiffs noticed the depositions of the San Quentin Warden, Kevin Chappell, and VPP DSH Director, Ellen Bachman, which defendants opposed. Only after plaintiffs' motion to compel was granted, *see* Order filed Sept. 5, 2013, Dkt. No. 4786, were plaintiffs able to take the depositions, on September 20 and 23, and fully understand the scope of this restriction on APP care for death row inmates. Plaintiffs' Trial Brief, Docket 4829, filed September 23, 2013, as well as Dr. Stewart's Supplemental Declaration, gave defendants additional and clear notice that plaintiffs' requested relief also included the APP death row restrictions. Defendants chose not to take Dr. Stewart's deposition. Dr. Stewart's testimony is thus directly relevant to both of Defendants' arguments and to the broader questions before this Court about the mental health treatment provided to death row inmates.

## CONCLUSION

For all the foregoing reasons, this Court should deny Defendants' Motion *In Limine* No. 8.

DATED: October 15, 2013      Respectfully submitted,

ROSEN BIEN GALVAN & GRUNFELD LLP

By: */s/ Michael W. Bien*
    Michael W. Bien

Attorneys for Plaintiffs

[980646-1]

6

PLS.' OPP. TO DEFS.' MOTION *IN LIMINE* NO 8: TO EXCLUDE SUPP. DECL. & TESTIMONY OF PLS.' EXPERT PABLO STEWART, M.D. ON ISSUES OUTSIDE SCOPE OF PLS.' SPECIALIZED CARE FOR CONDEMNED PLAN MOTION