DONALD SPECTER – 083925
STEVEN FAMA – 099641
PRISON LAW OFFICE
1917 Fifth Street
Berkeley, California 94710-1916
Telephone: (510) 280-2621

MICHAEL W. BIEN – 096891
JANE E. KAHN – 112239
ERNEST GALVAN – 196065
THOMAS NOLAN – 169692
LISA ELLS – 243657
LORI E. RIFKIN – 244081
AARON J. FISCHER – 247391
MARGOT MENDELSON – 268583
KRISTA STONE-MANISTA – 269083
ROSEN BIEN
GALVAN & GRUNFELD LLP
315 Montgomery Street, Tenth Floor
San Francisco, California 94104-1823
Telephone: (415) 433-6830

JON MICHAELSON – 083815
JEFFREY L. BORNSTEIN – 099358
MEGAN CESARE-EASTMAN – 253845
RANJINI ACHARYA – 290877
K&L GATES LLP
4 Embarcadero Center, Suite 1200
San Francisco, California 94111-5994
Telephone: (415) 882-8200

CLAUDIA CENTER – 158255
THE LEGAL AID SOCIETY –
EMPLOYMENT LAW CENTER
180 Montgomery Street, Suite 600
San Francisco, California 94104-4244
Telephone: (415) 864-8848

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al., <br><br> Plaintiffs, <br><br> v. <br><br> EDMUND G. BROWN, JR., et al., <br><br> Defendants. | Case No. 2:90-cv-0520 LKK DAD <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* NO. 1: TO EXCLUDE TESTIMONY OF PLAINTIFFS' EXPERT WITNESS DR. CRAIG HANEY** <br><br> Judge: Hon. Lawrence K. Karlton |

[995523-3]

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* NO. 1: TO EXCLUDE TESTIMONY OF
PLAINTIFFS' EXPERT WITNESS DR. CRAIG HANEY

## INTRODUCTION

Defendants' First Motion *in Limine* seeks to exclude the testimony of Plaintiffs' expert Dr. Craig Haney regarding the psychological effects of segregation on mentally ill inmates. Defendants' motion mischaracterizes Dr. Haney's extensive experience and expertise as well as his methodology. Dr. Haney's opinions, as expressed through his termination expert declaration (Docket No. 4378, filed Mar. 14, 2013 ("Haney Termination Decl.")) and his expert declaration on CDCR segregated housing units (Docket No. 4581, filed May 6, 2013 ("Haney Segregation Decl.")), easily meet the requirements for reliability, relevance, and expertise. Defendants' meritless motion must be denied.

## ARGUMENT

### I. DEFENDANTS' MOTION TO EXCLUDE DR. HANEY'S OPINIONS THAT "RELY ON HIS REVIEW OF SCIENTIFIC LITERATURE" IS WITHOUT MERIT

Dr. Haney is a nationally recognized expert on the subject of the psychological effects of prison settings. His qualifications, set forth in detail in his declarations and curriculum vitae, include almost 40 years of research into the nature and psychological consequences of living in correctional settings. *See* Haney Termination Decl. ¶¶ 1-13 & App. A; Haney Segregation Decl. ¶¶ 2-7. He has previously been qualified as an expert in this litigation, and his opinions were cited widely by the three-judge court, *Coleman v. Schwarzenegger*, 922 F. Supp. 2d 882, 920, 924, 926, 927, 929, 930, 931, 934, 938, 941, 944, 953, 960, 961, 965, 966, 969, 973 (E.D. Cal. 2009), and the United States Supreme Court, *Brown v. Plata*, 131 S. Ct. 1910, 1932, 1932 n.5, 1933, 1935 (2011). His expertise regarding the psychological effects of isolated confinement is widely recognized: in June, 2012, he testified as an invited witness before the United States Senate Judiciary Subcommittee (chaired by Senator Richard Durbin) on this very topic. *See* Haney Segregation Decl. ¶ 7.

Dr. Haney's testimony contains his expert opinions on the conditions and psychological effects of CDCR segregation units. The foundation for these opinions is

[995523-3]

1

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* NO. 1: TO EXCLUDE TESTIMONY OF PLAINTIFFS' EXPERT WITNESS DR. CRAIG HANEY

1  clearly set forth in both declarations and includes extensive firsthand research as well as
2  scholastic review.  In formulating his expert opinions on the matters now before the Court,
3  Dr. Haney conducted multiple tours of CDCR segregation units, interviewed inmates,
4  correctional officers, and clinicians, and reviewed voluminous medical records.  Haney
5  Segregation Decl. ¶¶ 4-7; *see also id.* at n.3 (listing five additional CDCR prisons that he
6  toured in 2007 and 2008).  Dr. Haney's declarations explain his conclusions in detail and
7  provide scholarly context for his conclusions by citing and applying contemporary studies
8  on the psychological effects of prison segregation.  *See id.* ¶¶ 8-11 and nn.8-15.

9  Defendants assert that the studies cited by Dr. Haney "incorporate[] few if any
10 accepted scientific standards of evidence" and lack relevance to California's prison system.
11 *See* Defs.' Mot. *in Limine* No. 1 to Exclude Test. of Pls.' Expert Witness Dr. Craig Haney
12 ("Defs.' MIL No. 1"), Docket No. 4880, at 2.  In support of these claims, Defendants rely
13 on the testimony of Dr. Charles Scott, who claims that the conditions examined by the
14 studies Dr. Haney cites are "fundamentally very different" than the conditions in CDCR's
15 segregation units.  *See id.*  This assertion rings hollow for several reasons.  First,
16 Dr. Haney's declaration carefully sets forth the basis of his statement as to the
17 "overwhelming empirical consensus that isolated confinement places prisoners at grave
18 risk of psychological harm."  Haney Segregation Decl. at n.8; *see also id.* at nn.8-15
19 (extensively citing peer-reviewed studies and scholarly literature); ¶ 8 (observing that
20 "[t]he studies have now spanned a period of over five decades, and were conducted in
21 locations across several continents by researchers with different professional
22 expertise . . . .").  Second, Dr. Haney's declaration has carefully identified the specific
23 issues and circumstances in CDCR segregation units which raise concern and
24 contextualized them with academic literature.  *See id.* ¶¶ 13-27.  Finally, Dr. Scott himself
25 has acknowledged that he did not evaluate CDCR's segregation units and that "review of
26 ad seg care was not [his] area" when touring CDCR in connection with Defendants' joint
27 expert report, which was stricken by this Court.  *See* Decl. of Aaron J. Fischer Supp. Pls.'
28 Mot. *in Limine* to Exclude Decl. & Test. of Charles L. Scott, Docket No. 4885, Ex. B

[995523-3]

2

(March 8, 2013 Dep. of Charles Scott, M.D.) at 122:21-123:12; *id.* Ex. A (July 26, 2013 Dep. of Charles Scott, M.D.) at 18:21-19:2 ("Q. Did you evaluate any of the segregation units in the course of your consultancy on the termination proceedings? … A: I did not do evaluations of specific ad seg units."). Dr. Scott, who has never reviewed CDCR's segregation units, thus has no actual basis on which to assert that the conditions examined in the studies cited by Dr. Haney are "fundamentally very different" than the conditions in CDCR's segregation units.

Dr. Haney's consideration of scientific studies conforms to all the requirements of Federal Rule of Evidence 702, which permits a qualified witness to testify: (1) if the testimony is "based on sufficient facts or data," (2) the testimony is "the product of reliable principles and methods," and (3) the expert "reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. The studies cited by Dr. Haney are published and peer-reviewed, and Dr. Haney's declaration applies them to CDCR's segregation units by describing the particular features and shortcomings of those units, based on his personal examination and inquiry. *See* Haney Segregation Decl. ¶¶ 13-27. It is well within the ambit of Dr. Haney's extensive expertise to interpret and consider scholarly studies in his field, and Defendants' assertions to the contrary are unavailing.

## II. DEFENDANTS' ATTEMPT TO DISCREDIT DR. HANEY'S PROFESSIONAL QUALIFICATIONS AND EXCLUDE HIS TESTIMONY BASED ON INMATE INTERVIEWS IS ALSO WITHOUT MERIT

Defendants also move to exclude the portions of Dr. Haney's testimony that are based on inmate interviews. Although the grounds on which this exclusion is sought are not entirely clear, Defendants appear to allege that Dr. Haney's credentials do not qualify him to interview prisoners or to draw conclusions from those interviews, and that the methodology employed for those interviews was somehow defective. These assertions are baseless.

Dr. Haney is a well-respected, widely published social psychologist and an expert on the precise topic about which he has opined — the psychological effects of segregation. Dr. Haney described his methodology at length during his deposition, explaining, *inter*

[995523-3]

3

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* NO. 1: TO EXCLUDE TESTIMONY OF PLAINTIFFS' EXPERT WITNESS DR. CRAIG HANEY

1  *alia*, that interviewing individuals in confinement is part of his academic practice.  *See*
2  Decl. of Margot Mendelson Opp. Defs.' MIL No. 1, filed concurrently herewith
3  ("Mendelson Decl."), Ex. A. (July 10, 2013 Dep. of Craig Haney, Ph.D.) ("7/10/13 Haney
4  Dep.") at 20:5-21:16.  Dr. Haney described the field of social psychology, *see id.* at 18:15-
5  19:11, and various mechanisms for conducting studies in prison settings, where variables
6  are less subject to control.  *See id.* at 125-20-130:12.  Dr. Haney also explained how he
7  used prisoner interviews, record reviews, and firsthand observations to identify systemic
8  problems with respect to CDCR segregation units.  *See id.* at 37:15-39:13.
9       Defendants' additional attacks on Dr. Haney's methodology range from plainly
10 inaccurate to completely bizarre.  For example, Defendants fault Dr. Haney for failing to
11 explain whether the *questions* he asked the inmates during his expert tours were peer
12 reviewed.  They also seek to exclude Dr. Haney's testimony on the grounds that he failed
13 to identify the "error rate of his questions."  Defendants cite no authority for the novel
14 propositions that questions posed to inmates must be peer reviewed or that "error rates" for
15 interview questions must be identified.  Dr. Scott, whose deposition testimony is cited in
16 support of these assertions, never explains why the expert report he signed in support of
17 Defendants' termination motion, *see* Docket No. 4275-5, Jan. 7, 2013, omits any reference
18 to "peer reviewed" questions or the "error rate" of such questions.  Nor have Defendants
19 provided evidence that their experts have conformed to such standards at any other stage in
20 this litigation.  Courts have specifically provided that an expert's qualifications must be
21 assessed based on "the particular circumstances of the particular case at issue" — not a
22 laundry list of irrelevant factors.  *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150
23 (1999).
24       Defendants also assert that Dr. Haney's reliance on inmate interviews is "flawed
25 because he reached his conclusions without checking corroborative evidence, such as
26 speaking to a correctional counselor or examining mental health records to confirm what
27 an inmate told him was true."  Defs.' MIL No. 1 at 4.  This is simply false.  Contrary to
28 Defendants' claim, Dr. Haney's testimony specifically sets forth that he "had numerous

[995523-3]

4

1  conversations with correctional administrators, clinical staff, and line correctional
2  officers." Haney Segregation Decl. ¶ 15; *see also* Haney Termination Decl. ¶ 19. In fact,
3  Dr. Haney's termination declaration cites conversations with clinicians at every institution
4  he toured about specific inmate-patients, treatment programs, and related matters. *See*
5  Haney Termination Decl. ¶¶ 67 (Dr. Telander), 93 (Dr. Ortigo), 102 (Dr. Wilcox), 105
6  (Dr. Meeker), 112 (Dr. Cordosi), 128 (Dr. Jordan), 131 (Dr. Lindsay), 139 (Dr. Hewitt);
7  187 (Dr. Bola); 229 (Dr. Walsh), 239 (Dr. Jensen).

8        The declaration also references direct interactions with no fewer than six
9  correctional officers, *see id.* ¶¶ 143, 181, 182, 235, 245, 271, and five wardens/deputy
10 wardens, *see id.* ¶¶ 65 (Warden Knipp), 123 (Acting Warden Cash); 151 (Deputy Warden
11 Hill), 229 (Acting Warden Holland), 173 (Acting Warden Gipson). During Dr. Haney's
12 deposition, Defendants asked Dr. Haney whether he "sp[oke] with any of the custody staff
13 about the security risks that were associated with any of the inmates that [he] interviewed."
14 Dr. Haney replied that he did in some instances. *See* 7/10/13 Haney Dep. at 98:5-13.

15       Defendants' claim that Dr. Haney failed to examine medical records to corroborate
16 inmate interviews is similarly unfounded. Defendants' sole evidentiary support for this
17 assertion is, oddly, their own expert's deposition testimony. Meanwhile, Dr. Haney's
18 termination declaration, which he references in his segregation declaration, explicitly cites
19 his review of medical, mental health, and institutional records for numerous prisoners he
20 interviewed. *See, e.g.,* Haney Termination Decl. ¶¶ 86 (Prisoner A's records); 88 (Prisoner
21 G's records); 92 (Prisoner H's records); 105 (reviewed Prisoner K's records); 109
22 (Prisoner B's records); 110 (Prisoner L's records); 165 (Prisoner W's records); 169
23 (Prisoner X's records); 223 (Prisoner HH's records); 245 (Prisoner KK's records); 253
24 (Prisoner NN's records); 254 (Prisoner OO's records); 256 (Prisoner V's records); 261
25 (Prisoner QQ's records); 268 (Prisoner UU's records); 270 (Prisoner VV's records); 272
26 (Prisoner WW's records); 275 (Prisoner XX's records). Moreover, in response to
27 questioning at his deposition, Dr. Haney testified that he "personally" reviewed mental
28 health records for prisoners he interviewed and that his "records review took place . . . a

[995523-3]

5

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* NO. 1: TO EXCLUDE TESTIMONY OF
PLAINTIFFS' EXPERT WITNESS DR. CRAIG HANEY

1 couple weeks at least after [he] interviewed the prisoners." 7/10/13 Haney Dep. at 195:11-
2 18; 14:17-17:2.  During the course of his deposition, Dr. Haney referenced his record
3 review on multiple occasions.  *See id.* at 52:16-22 (reviewed inmate medical records);
4 180:8-22 (reviewed Prisoner B's medical records); 182:21-183:6 (reviewed Prisoner H's
5 medical records);189:2-9 (reviewed eUHR screens and prisoner files); 202:23-203:8
6 (reviewed records for Prisoner W).

## CONCLUSION

Dr. Haney is a highly qualified expert on the psychological impact of incarceration, including in isolation units, and his testimony meets every indicia of reliability. Defendants have not identified any legitimate grounds for excluding Dr. Haney's expert testimony, and Plaintiffs respectfully request that the Court deny Defendants' motion *in limine*.

DATED:  November 12, 2013         Respectfully submitted,

ROSEN BIEN GALVAN & GRUNFELD LLP

By:  */s/ Margot Mendelson*
     Margot Mendelson

Attorneys for Plaintiffs

[995523-3]

6
PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* NO. 1:  TO EXCLUDE TESTIMONY OF PLAINTIFFS' EXPERT WITNESS DR. CRAIG HANEY