DONALD SPECTER – 083925
STEVEN FAMA – 099641
PRISON LAW OFFICE
1917 Fifth Street
Berkeley, California 94710-1916
Telephone: (510) 280-2621

MICHAEL W. BIEN – 096891
JANE E. KAHN – 112239
ERNEST GALVAN – 196065
THOMAS NOLAN – 169692
LISA ELLS – 243657
AARON J. FISCHER – 247391
MARGOT MENDELSON – 268583
KRISTA STONE-MANISTA – 269083
ROSEN BIEN
GALVAN & GRUNFELD LLP
315 Montgomery Street, Tenth Floor
San Francisco, California 94104-1823
Telephone: (415) 433-6830

JON MICHAELSON – 083815
JEFFREY L. BORNSTEIN – 099358
MEGAN CESARE-EASTMAN – 253845
RANJINI ACHARYA – 290877
K&L GATES LLP
4 Embarcadero Center, Suite 1200
San Francisco, California 94111-5994
Telephone: (415) 882-8200

CLAUDIA CENTER – 158255
THE LEGAL AID SOCIETY –
EMPLOYMENT LAW CENTER
180 Montgomery Street, Suite 600
San Francisco, California 94104-4244
Telephone: (415) 864-8848

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>      Plaintiffs,<br><br>  v.<br><br>EDMUND G. BROWN, JR., et al.,<br><br>      Defendants. | Case No. 2:90-cv-0520 LKK DAD<br><br>**DECLARATION OF MICHAEL W. BIEN IN SUPPORT OF PLAINTIFFS' URGENT PETITION FOR A STATUS CONFERENCE TO ADDRESS MODIFIED AND DELAYED SUICIDE REPORT**<br><br>Judge: Hon. Lawrence K. Karlton |

[1069510-1]

I, Michael W. Bien, declare:

1. I am an attorney admitted to practice in California, a member of the Bar of this Court and the managing partner of the firm, Rosen Bien Galvan & Grunfeld LLP, counsel of record for the Plaintiff class. I have personal knowledge of the matters set forth herein, and if called as a witness I could competently so testify. I make this declaration in support of plaintiffs' motion to file additional evidence in support of plaintiffs' enforcement motions and for additional orders in connection with the delayed production of a suicide report by defendants and decisions to modify or delete information from the final suicide report eventually provided to the Special Master and plaintiffs' counsel.

2. On January 8, 2014, I was contacted by a reporter investigating the circumstances of the death of a *Coleman* class member at Mule Creek State Prison on September 7, 2013. The reporter informed me that he had received information from a confidential source that the prisoner had been on suicide precautions in an MHCB unit, and had been pepper sprayed in his cell, and that the pepper spray had contributed to his death. On January 9, 2014, the reporter provided me with copies of two documents that he had received from a confidential source that I have attached to my confidential declaration, filed herewith. **Exhibit A** to my Confidential Declaration is dated October 31, 2013 and is a 22 page Suicide Report for a Mule Creek State Prison class member who died in the MHCB unit on September 7, 2013. **Exhibit B** to my Confidential Declaration has a report print date of December 10, 2013 and is a 23 page report about the same death, titled Combined Death Review Summary. I have confirmed with *Plata* counsel, Steve Fama, that this Document was provided to the Prison Law Office on December 31, 2013.

3. Our office routinely receives copies of defendants' notification to the *Coleman* Special Master of class member suicides. On September 12, 2013, at 4:32 p.m., we were copied on an email sent by Debbie Vorous to the Special Master which stated as follows (prisoner name has been redacted):

[1069510-1]

1

DECLARATION OF MICHAEL W. BIEN IN SUPPORT OF PLAINTIFFS' URGENT PETITION FOR A STATUS CONFERENCE TO ADDRESS MODIFIED AND DELAYED SUICIDE REPORT

1  Subject:  Notification of Inmate Suicide, [     ]

2  Dear Special Master Lopes:

3  This e-mail is to inform you of a death that occurred at Mule Creek State Prison.  On September 7, 2013, at approximately 0510 hours, Inmate [     ], was found unresponsive and lying on the floor in his Correctional Treatment Center (CTC) cell by a registered nurse.  Custody staff were immediately notified and conducted an emergency cell extraction.  Inmate [     ] was removed from his cell and moved to the CTC treatment room; CPR was initiated by custody staff and the registered nurses assigned to the CTC.  Despite the efforts of all responding staff, Inmate [     ] was pronounced deceased via telephone at 0540 hours by a physician at the Sutter Amador Hospital.  Inmate [     ] was admitted to the Mental Health Crisis Bed at MCSP on Thursday, September 5, 2013.

4.  Defendants provide documents, medical records and reports about class member deaths to the Special Master and plaintiffs' counsel by uploading them to a secure, password protected web site.  Attached as **Exhibit C** to my Confidential Declaration is a September 16, 2013 letter to Special Master Lopes from Dr. Belavich concerning this same death at MCSP on September 7, 2013.  No copy of this letter was sent to my office by letter or email in September or at any time.  I do not know whether or not the September 16, 2013 letter was actually sent to the Special Master on or about September 16, 2013.

5.  Neither Ms. Vorous' email notification of the death or Dr. Belavich's September 16 letter make reference to various unusual circumstances surrounding this death including that the *Coleman* class member was pepper-sprayed in the face for refusing to surrender his food port, even though he had a tracheostomy, and that custody refused repeated requests by clinical staff to open the cell and provide emergency medical and psychiatric treatment.

6.  **Exhibit D** to my Confidential Declaration is a 23 page document, the first page of which is a Memorandum dated January 7, 2014, signed by Dr. Belavich and Mr. Stainer, titled Suicide Report for Inmate [     ], Mule Creek State Prison, which

[1069510-1]

2

DECLARATION OF MICHAEL W. BIEN IN SUPPORT OF PLAINTIFFS' URGENT PETITION FOR A STATUS CONFERENCE TO ADDRESS MODIFIED AND DELAYED SUICIDE REPORT

1  attaches the Suicide Report for the same prisoner, dated October 31, 2013.  The attached
2  Suicide Report appears on its face to be the same report as that provided to me by the
3  reporter, previously identified as Exhibit A.  Although the Program Guide mandates that
4  the final suicide report shall be signed by both the Directors of DCHCS and DAI, and
5  provided to legally designated persons within 60 days of date of death (in this case, by
6  November 6, 2013), Defendants did not provide the Suicide Report for this death until it
7  was uploaded to the secure FTP site on January 7, 2014 (more than two months beyond the
8  mandated timelines).  January 7, 2014 is the date on the final suicide report cover sheet,
9  which is signed by both Directors Belavich and Stainer.  This Suicide Report, which was
10 apparently completed in a timely manner, should have been signed and provided to the
11 *Coleman* Special Master, and other legally designated persons, including plaintiffs'
12 counsel, by November 6, 2013.  (*Coleman* Program Guide, 12-10-16.)
13     7.     The January 7, 2014 Suicide Report sets forth serious issues involving
14 custody, medical, nursing and mental health staff, their lack of coordination and failures
15 and violations of Program Guide.  For example, "The CTC CO, Sergeant, Watch
16 Commander, and AOD would not authorize the cell to be opened despite an order at 2225
17 hours for medical treatment and an order at 2235 hours for psychiatric medication to be
18 administered via intramuscular injection."  A handwritten note by the patient made on
19 September 3, 2013 at NKSP, expressing suicidal ideation, and related clinical notes, "was
20 not scanned into the eUHR until September 10, 2013; thereby making it unavailable to the
21 treatment team at MCSP at a critical time."  A psychiatrist, without explanation, on
22 September 6, discontinued suicide precautions one half-hour after writing a note ordering
23 suicide precautions for the next 24 hours and ordered "violence precautions," a term that
24 does not appear in the Program Guide. Ex. D at pages 17-18.  Seven Problems requiring
25 Quality Improvement Plans were identified, including referrals to the OIA and to the Chief
26 Medical Executive for investigation and additional fact-finding of custodial, medical and
27 mental health staff involved in the incident.  Ex. D at pages 18-20.
28

[1069510-1]

3
DECLARATION OF MICHAEL W. BIEN IN SUPPORT OF PLAINTIFFS' URGENT PETITION FOR A STATUS
CONFERENCE TO ADDRESS MODIFIED AND DELAYED SUICIDE REPORT

8.      The January 7, 2014 Suicide Report does *not* include specific findings regarding the custodial failings and the impact of the use of pepper-spray on the behavior and ultimate death of this MHCB patient that were in the October 31, 2013 version of the Executive Suicide Summary Report provided to me by the reporter, Exhibit A:

- The October 31, 2013 original version included a section titled "Five concerns related to custody," Ex. A on page 17.  The January 7, 2014 version changed that section to read "Three concerns related to custody," Ex. D on page 16.

- The following was deleted from the January 7, 2014 version: "4. The inmate was pepper-sprayed when he would not release the food port.  While an open food port is considered a security breach and pepper-spraying the inmate is permitted according to policy, it is recommended that the Warden's Use of Force Committee review this policy, especially as it relates to medically or psychiatrically ill inmates." Ex. A on page 17.

- The following was deleted from the January 17, 2014 version:  "5. Form 114-D, the Inmate Segregation Record, should have noted the third watch's interaction with the inmate holding the food port open, requiring the pepper spray.  Additionally, first watch should have documented the interaction with the inmate about coming out of the cell to receive medical care as well as the injection of Zyprexa.  Neither is on the record." Ex. A on page 17.

- The following Problem requiring a QIP was deleted from the January 17, 2014 version:  "4. Form 114-D, the Inmate Segregation Record, appeared to have been inaccurately completed as important interactions with the inmate, including the actions the [sic] resulted in the discharge of chemical agents and his refusal to come out for medical care had not been documented.  According to policy, all interactions with the inmate should have been documented." Ex. A at pages 19-20.

9.      On January 15 and 16, 2014, I sent two emails to defendants' counsel, including a proposed stipulation and order, requesting that they join in presenting the issues raised by this death, the delayed suicide report and the different versions of the suicide report to the Court.  Defendants' refused to so stipulate in a January 16. 2014 responsive email.  These three emails and the proposed stipulation are attached to my confidential declaration as **Exhibit E**.

[1069510-1]

4
DECLARATION OF MICHAEL W. BIEN IN SUPPORT OF PLAINTIFFS' URGENT PETITION FOR A STATUS
CONFERENCE TO ADDRESS MODIFIED AND DELAYED SUICIDE REPORT

10. The *Coleman* Program Guide, Chapter 10 sets forth requirements for suicide reporting that include a 60-day time limit for the completion of a suicide report that starts at the date of death and the completion of the CDCR 7229B–Inmate Suicide Death Report. In the case of the *Coleman* class member at Mule Creek State Prison, who died on September 7, 2013, his 7229B Suicide Death Report was completed on September 7, 2013, and his suicide report should have been completed on November 6, 2013. Attached to my confidential as **Exhibit F** is a true and correct copy of the 7229B Suicide Death Report, completed for the *Coleman* class member at Mule Creek State Prison, which was uploaded to the secure FTP site by Defendants on January 7, 2014. The *Coleman* Program Guide does not exempt Defendants from completing the suicide review process if CDCR questions whether the death was a suicide. In fact, in the Special Master's review of CDCR's annual suicides, his suicide expert has reviewed those "contested" deaths, which Defendants notice and prepare reports for. *See*, *e.g*., Report on Suicides Completed in the California Department of Corrections and Rehabilitation in Calendar Year 2005, (SM 2005 Suicide Report) Docket No. 2566, filed 11/26/07, p. 2 of 18 ("CDCR modified its initial classification of five inmate deaths as "suicide" or "undetermined" to non-suicidal deaths. Based on the Special Master's expert's review of medical records, coroner's reports, and other documents provided by CDCR, he concluded that these five deaths were the result of suicides more likely than not.") In one of the five cases, the CDCR Suicide Report identified five significant problems with the care of a severely decompensated patient housed in an MHCB overflow, but concluded that the manner of death (suffocation from a mass of wadded-up toilet pepper shoved into his throat) was undetermined. *Id*. at 50 of 51. The Special Master's expert concluded that this death was self-inflicted by the patient, who was housed on suicide precautions, and represented an "absolute failure." *Id*. at 1-2 of 17. CDCR had reviewed each of these "contested" suicides as required by the Program Guide.

11. The Special Master's Suicide Reports utilize the definition of suicide adopted by the World Health Organization (WHO) and the National Violent Death Reporting System (NVDRS), National Center for Injury Prevention and Control, Centers

[1069510-1]

5

DECLARATION OF MICHAEL W. BIEN IN SUPPORT OF PLAINTIFFS' URGENT PETITION FOR A STATUS CONFERENCE TO ADDRESS MODIFIED AND DELAYED SUICIDE REPORT

1  for Disease Control and Prevention, and by CDCR in their own reviews. SM 2005 Suicide
2  Report at 3. The definition includes: "intentional, self-inflicted death committed while
3  under the influence of a mental illness." (*Id.*) This remains the standard in the review of
4  CDCR suicides. Report on Suicides Completed in the California Department of
5  Corrections and Rehabilitation, January 1, 2012–June 30, 2012, Docket No. 4376, filed
6  3/13/13, at 25. Using this definition of "suicide," the intentional acts of self-harm by this
7  agitated and paranoid class member housed in MCSP's MHCB (removing his
8  tracheostomy tube, putting his finger in his stoma to make it bleed, and placing food
9  inside) which resulted in his death should be considered suicide. The abject failure of the
10 clinical and custodial staff to intervene in the self-injurious behavior of this patient
11 provides further support for this finding. (*See*, *e.g.*, SM 2005 Suicide Report, finding the
12 death a suicide, noting that "the inmate purposely, willfully, and without the assistance of
13 others clogged his throat with massive amounts of paper while on suicide precautions
14 while clearly decompensating and had not received Keyhea medications." *Id*. at 1 of 17.)
15    I declare under penalty of perjury under the laws of the United States and the State
16 of California that the foregoing is true and correct, and that this declaration is executed at
17 San Francisco, California this 17th day of January, 2014.

            */s/ Michael W. Bien*
            Michael W. Bien

[1069510-1]