| | |
|---|---|
| DONALD SPECTER – 083925 | MICHAEL W. BIEN – 096891 |
| STEVEN FAMA – 099641 | JANE E. KAHN – 112239 |
| PRISON LAW OFFICE | ERNEST GALVAN – 196065 |
| 1917 Fifth Street | THOMAS NOLAN – 169692 |
| Berkeley, California  94710-1916 | LISA ELLS – 243657 |
| Telephone:   (510) 280-2621 | AARON J. FISCHER – 247391 |
| | MARGOT MENDELSON – 268583 |
| | KRISTA STONE-MANISTA – 269083 |
| | ROSEN BIEN |
| | GALVAN & GRUNFELD LLP |
| | 315 Montgomery Street, Tenth Floor |
| | San Francisco, California  94104-1823 |
| | Telephone:   (415) 433-6830 |
| JON MICHAELSON – 083815 | CLAUDIA CENTER – 158255 |
| JEFFREY L. BORNSTEIN – 099358 | THE LEGAL AID SOCIETY – |
| RANJINI ACHARYA – 290877 | EMPLOYMENT LAW CENTER |
| K&L GATES LLP | 180 Montgomery Street, Suite 600 |
| 4 Embarcadero Center, Suite 1200 | San Francisco, California  94104-4244 |
| San Francisco, California  94111-5994 | Telephone:   (415) 864-8848 |
| Telephone:   (415) 882-8200 | |

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>EDMUND G. BROWN, JR., et al.,<br><br>    Defendants. | Case No. 2:90-cv-0520 LKK DAD<br><br>**POST-TRIAL [PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION REGARDING ENFORCEMENT OF COURT ORDERS AND AFFIRMATIVE RELIEF REGARDING IMPROPER HOUSING AND TREATMENT OF SERIOUSLY MENTALLY ILL PRISONERS IN SEGREGATION**<br><br>Judge:  Hon. Lawrence K. Karlton |

[1063737-1]

Plaintiffs' Motion for Enforcement of Court Orders and Affirmative Relief Related to Improper Housing and Treatment of Seriously Mentally Ill Prisoners in Segregation came on for evidentiary hearing before this Court on November 19, 2013 and concluded on December 19, 2013. The Court having considered the testimony of the witnesses, the evidence, the pleadings and argument on the motion, and the entire record in this case, and good cause appearing, Plaintiffs' motion is GRANTED.

The Court finds that Defendants' policies and practices governing Administrative Segregation Units (ASUs), Psychiatric Services Units (PSUs), and Security Housing Units (SHUs) ("segregation units") subject *Coleman* class members to unnecessary and avoidable pain, suffering, death, and increased risk of suicide. Defendants have failed to remedy ongoing constitutional violations despite many years of remedial efforts and orders of this Court. Defendants subject class members to harm and serious risk of harm in segregation units based on excessive and unlimited lengths of stay, misuse of segregation for non-disciplinary reasons, lack of appropriate screening and exclusionary criteria, the failure to provide minimally adequate mental health care, and harsh, anti-therapeutic, and unsafe conditions.

Each individual remedial order set forth below is narrowly tailored and is the least intrusive means necessary to ensure that members of the *Coleman* class receive access to timely and clinically appropriate mental health treatment and are not placed at unacceptable risk of psychological and physical harm in segregation.

The Court also finds that Defendants' segregation practices for *Coleman* class members constitute illegal discrimination and violate the Americans with Disabilities Act and the Rehabilitation Act. 42 U.S.C. § 12132; 28 C.F.R. § 35.130(a). By failing to timely transfer class members to appropriate non-segregated settings and subjecting them to harsh custodial measures such as blanket strip searches and mental health treatment in cages, Defendants have failed to make the reasonable accommodations necessary to avoid disability discrimination and to ensure that prisoners with a mental disability are housed and treated in the least restrictive placement appropriate to their needs. *See* 28 C.F.R.

[1063737-1]

1

POST-TRIAL [PROPOSED] ORDER GRANTING PLS.' MOTION RE ENFORCEMENT OF COURT ORDERS & AFFIRMATIVE RELIEF RE IMPROPER HOUSING & TREATMENT OF SERIOUSLY MENTALLY ILL PRISONERS IN SEGREGATION

§§ 35.104 (defining disability to include any "emotional or mental illness"), 35.130(b)(7), (d), 35.152(b)(2); *see also Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998); *Olmstead v. L.C. ex rel Zimring*, 527 U.S. 581, 597 (1999) ("Unjustified isolation … is properly regarded as discrimination based on disability."); *see also Biselli v. Cty. of Ventura*, Case No. CV 09-08694 CAS (Ex), 2012 U.S. Dist. LEXIS 79326, *44-45 (C.D. Cal. June 4, 2012).

It is hereby ORDERED that:

Defendants shall revise their policies and procedures, including, but not limited to the Program Guides, to comply with this Order. Defendants shall take any additional steps necessary to implement the requirements of this Order, including, but not limited to, training of custody and clinical staff, obtaining appropriate staffing, and modifying office and treatment space.

**A.  Removal of Class Members Placed in Segregation for Non-Disciplinary Reasons**

No *Coleman* class member shall be placed in any CDCR segregation unit unless he or she has been served with a serious, documented rule violation. Defendants shall immediately stop placing class members in segregation units for any non-disciplinary purpose, including but not limited to safety concerns, pending transfers, drug debts, and lack of appropriate beds. Defendants shall, within 30 days, remove all class members from segregation units who have not been served with serious rule violations.

**B.  Segregation Exclusions for Class Members at Heightened Risk of Serious Harm**

**1.  Housing Placement Upon Discharge from Inpatient Care**

No prisoner discharging from an inpatient (DSH) or crisis level of care (MHCB/OHU) setting shall be placed in a segregated housing unit absent a written clinical determination that the patient will not be put at risk of decompensation or harm by placement in a segregation unit following discharge. This written assessment must be made by clinicians at the discharging program and by clinicians at the receiving institution

or program. This policy shall be effective immediately, and the Special Master shall monitor Defendants' compliance.

### 2.   Exclusion of EOP Class Members

No class member at the EOP level of care shall be placed in any segregation unit until a mental health assessment is completed to determine the relationship between the class member's mental health and the underlying rules violation   This policy shall be overridden only upon: (1) a written finding by the Chief of Mental Health that the patient will not be at risk of decompensation or harm by the placement in segregation; and (2) a written finding by a Correctional Captain that the patient's security needs cannot be met within the EOP housing unit. In all cases, the mental health assessment shall be completed within five calendar days of the alleged rule violation, in compliance with Program Guide requirements. Defendants shall be prohibited from placing any EOP class member into any segregation unit if his or her mental health assessment determines that the rule violation was the result of the patient's mental illness. In such cases, the patient must be referred for a higher level of care, or retained in an EOP general population unit and assessed alternative sanctions.

### 3.   SHU Exclusion

Defendants shall, within 30 days, develop and submit to the Special Master a plan to apply the Pelican Bay SHU exclusion to all CDCR SHU programs. The exclusion criteria should substantially follow the criteria applied to the Pelican Bay SHU exclusion, as set forth by the court in *Madrid v. Gomez* and incorporated by Defendants into the Program Guide.

### C.   Conditions for Class Members Remaining in Segregation Units

#### 1.   Certification of Minimally Adequate Conditions

Effective 30 days from the date of this order, Defendants shall be prohibited from placing class members in any segregated housing unit that has not been found capable of providing a minimally adequate mental health treatment program based on their level of care. A minimally adequate mental health treatment program in segregated housing shall

[1063737-1]

3

POST-TRIAL [PROPOSED] ORDER GRANTING PLS.' MOTION RE ENFORCEMENT OF COURT ORDERS & AFFIRMATIVE RELIEF RE IMPROPER HOUSING & TREATMENT OF SERIOUSLY MENTALLY ILL PRISONERS IN SEGREGATION

include the following.

For any segregated unit housing EOP prisoners:

(1) sufficient mental health and custody staffing;

(2) adequate confidential treatment space;

(3) provision of at least the Program Guide minimum treatment for EOP prisoners (*i.e.*, 10 hours per week); and

(4) provision of at least 10 hours of other out-of-cell time (for outdoor exercise) per week.

For any segregated unit housing CCCMS prisoners:

(1) sufficient mental health and custody staffing;

(2) adequate confidential treatment space;

(3) provision of clinically indicated treatment hours (including appropriate group therapy); and

(4) provision of at least 10 hours of other out-of-cell time (for outdoor exercise) per week.

The Special Master shall provide a report to the Court that identifies which segregated housing units are capable of providing a minimally adequate mental health treatment program, and Defendants shall be required to provide monthly verification that the segregation unit complies with these standards

**2. Strict Time Limits**

The following time limits for the placement of *Coleman* class members in all CDCR segregation units shall apply:

- For EOP class members, there shall be a limit of 10 calendar days in any segregated housing.
- For CCCMS class members, there shall be a limit of 30 calendar days in any segregated housing.

Transfer between one segregation cell (or unit) and another shall not restart the clock in the calculation of class members' length of stay in segregation for purposes of this

order. Likewise, transfer from a segregation unit to a crisis/inpatient placement (such as MHCB, OHU, or DSH) and back to a segregation unit shall not restart the clock in the calculation of a class member's length of stay in segregation for purposes of this order.

Defendants shall provide monthly reports, prepared and signed by the Warden of each prison, identifying each case in which a class member's segregation placement exceeds applicable time limits, the reason for the continued placement, and what steps Defendants are taking to promptly transfer the class member to an appropriate placement and to remedy the barrier that caused the violation of the time limit.

Furthermore, Defendants shall, in cooperation with the Special Master, develop a report providing the complete lengths of stay in all segregation units for all class members. The lengths of stay shall not reset based on changes in level of care, transfer to inpatient care units, institutional transfers, or movements within a housing unit. This report shall be produced to the Court on a monthly basis.

### 3. Elimination of Unduly Harsh Measures for Mentally Ill Prisoners in Segregation

#### (a) Use of Cages for Class Members

Defendants shall, within 30 days, implement a policy prohibiting the use of "therapeutic treatment modules" for group or individual mental health treatment and the use of caged holding cells outside treatment centers and in housing units for holding mentally ill prisoners identified as at risk of self-harm or awaiting clinical evaluation or treatment. Defendants shall, in consultation with the Special Master and Plaintiffs, devise appropriate alternatives to the use of "therapeutic treatment modules" and holding cages that are humane and appropriate to meet the individual clinical and security needs of mentally ill prisoners. Defendants shall develop a system to review and document the necessity of restraints for individual class members; the system shall incorporate a clinical assessment of the impact of such measures on the class member's mental health.

#### (b) Strip Search Policy for Class Members

Defendants shall, within 30 days, implement a policy that prohibits the blanket

1  practice of indiscriminate strip searches for all mentally ill prisoners housed in segregation
2  units. The use of strip searches on mentally ill prisoners housed in segregation shall be
3  permitted only where there is a specific, individualized determination, based on clinical
4  and security input, that such a search is required. In cooperation with the Special Master,
5  Defendants shall develop a system to review and document the necessity of strip searches
6  for individual class members; the system shall incorporate a clinical assessment of the
7  impact of such procedures on the class member's mental health.

8  **(c)    Use of Management Cells for Class Members**

9  Effective immediately, no *Coleman* class member shall be placed in a management
10 cell within any segregation unit.

11 **4.    Suicide Precautions**

12 **(a)    Welfare Checks**

13 Defendants shall, within 30 days, implement a policy and procedure to provide
14 staggered welfare checks (through personal observation by a staff member) at least every
15 thirty minutes to *all* prisoners placed in any segregation unit for the duration of such
16 placements.

17 **(b)    Intake Cells**

18 No prisoner shall be housed in a cell that is not retrofitted for suicide resistance
19 during their first 21 days of housing in any segregation unit.

20 **(c)    Pre-Placement Segregation Screening**

21 Defendants shall further submit, within 30 days, a revised screening protocol to
22 replace the Administrative Segregation Unit (ASU) 31-item questionnaire that Defendants
23 have found to be inadequate, and to implement the revised screening protocol as soon as
24 possible and in consultation with the Special Master and Plaintiffs' counsel. Defendants
25 shall include in their revised screening protocol a thorough mental health history and
26 custody file review to identify *all* prisoners' prior mental health history, prior segregation
27 placements that resulted in MHCB/DSH placements, self-harm, suicide attempts, or other
28 signs of decompensation. For those prisoners who are found to have a "likelihood of

[1063737-1]

6
POST-TRIAL [PROPOSED] ORDER GRANTING PLS.' MOTION RE ENFORCEMENT OF COURT ORDERS & AFFIRMATIVE
RELIEF RE IMPROPER HOUSING & TREATMENT OF SERIOUSLY MENTALLY ILL PRISONERS IN SEGREGATION

decompensation if placed or retained in ASU" (*Coleman* Program Guide 12-7-2), Defendants shall provide a chrono and/or identifier code that will prevent the ASU placement, clearly flag an "ASU exclusion," and identify appropriate alternative placements for such inmate-patients.

### (d) Mental Health Screening of Non-Class Member Prisoners in Segregation

Defendants shall, within 60 days and in consultation with the Special Master and Plaintiffs, conduct a comprehensive assessment of *all* prisoners currently in segregation units who have been housed in such placements for more than 90 days. The assessment shall include a thorough mental health history and custody file review to identify prisoners' prior mental health history, prior segregation placements that resulted in MHCB/DSH placements, self-harm, suicide attempts, or other signs of decompensation. Any prisoner identified as needing mental health treatment shall be immediately referred for care and assessed for exclusion from segregation. For those prisoners who are found to have a "likelihood of decompensation if placed or retained in ASU" (*Coleman* Program Guide 12-7-2), Defendants shall provide a chrono and/or identifier code that will prevent the ASU placement, clearly flag an "ASU exclusion," and identify appropriate alternative placements for such inmate-patients.

### D. Comprehensive Audit of Class Members in All Segregation Units

Defendants shall, under the supervision of the Special Master and with input from Plaintiffs' counsel, develop and implement within 30 days a process to individually review all *Coleman* class members currently held in segregation units (Administrative Segregation Units, EOP ASU hubs, Psychiatric Services Units, and Security Housing Units). Through this review, Defendants shall apply objective classification criteria on a case-by-case basis to assess the actual, current security risk posed by class members. Defendants shall, within 60 days, complete the review of all EOP class members in CDCR segregation units. Within 120 days, Defendants shall review all class members in all segregation units. Defendants shall release to general population settings all class members whose retention

[1063737-1]

7

POST-TRIAL [PROPOSED] ORDER GRANTING PLS.' MOTION RE ENFORCEMENT OF COURT ORDERS & AFFIRMATIVE RELIEF RE IMPROPER HOUSING & TREATMENT OF SERIOUSLY MENTALLY ILL PRISONERS IN SEGREGATION

in segregation is deemed unnecessary when objectively evaluated.

### E. Development of Treatment-Based Disciplinary Programs for Class Members

Defendants, under direction of the Special Master and in cooperation with Plaintiffs' counsel, shall develop and implement, within 90 days, a plan for treatment-based step-down disciplinary units run by mental health clinicians for *Coleman* class members who have been found guilty of a serious rule violation and cannot safely remain in the general population.

**IS IT SO ORDERED.**

DATED: _____, 2014

LAWRENCE K. KARLTON
Senior United States District Judge

[1063737-1]

8
POST-TRIAL [PROPOSED] ORDER GRANTING PLS.' MOTION RE ENFORCEMENT OF COURT ORDERS & AFFIRMATIVE RELIEF RE IMPROPER HOUSING & TREATMENT OF SERIOUSLY MENTALLY ILL PRISONERS IN SEGREGATION