DONALD SPECTER – 083925
STEVEN FAMA – 099641
ALISON HARDY – 135966
SARA NORMAN – 189536
REBEKAH EVENSON – 207825
PRISON LAW OFFICE
1917 Fifth Street
Berkeley, California  94710-1916
Telephone:    (510) 280-2621

JON MICHAELSON – 083815
JEFFREY L. BORNSTEIN – 099358
LINDA L. USOZ – 133749
MEGAN CESARE-EASTMAN – 253845
K&L GATES LLP
4 Embarcadero Center, Suite 1200
San Francisco, California 94111-5994
Telephone: (415) 882-8200

MICHAEL W. BIEN – 096891
JANE E. KAHN – 112239
ERNEST GALVAN – 196065
ROSEN BIEN GALVAN & GRUNFELD LLP
315 Montgomery Street, Tenth Floor
San Francisco, California  94104-1823
Telephone:    (415) 433-6830

CLAUDIA CENTER – 158255
THE LEGAL AID SOCIETY –
EMPLOYMENT LAW CENTER
600 Harrison Street, Suite 120
San Francisco, California  94107-1389
Telephone:    (415) 864-8848

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURTS

EASTERN DISTRICT OF CALIFORNIA

AND NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>             Plaintiffs,<br><br>      v.<br><br>EDMUND G. BROWN, JR., et al.,<br><br>             Defendants. | Case No. Civ S 90-0520 LKK-JFM P<br><br>**THREE JUDGE COURT** |
| MARCIANO PLATA, et al.,<br><br>             Plaintiffs,<br><br>      v.<br><br>EDMUND G. BROWN, JR., et al.,<br><br>             Defendants. | Case No. C01-1351 TEH<br><br>**THREE JUDGE COURT**<br><br>**OBJECTIONS TO DEFENDANTS' JAN. 23, 2014 PROPOSED ORDER RE EXTENSION OF CROWDING REDUCTION DEADLINE** |

# INTRODUCTION

Plaintiffs oppose Defendants' request for a two year extension. Another extension is not warranted because it unduly delays relief to the prisoners who continue to live under abysmal unconstitutional conditions, and Defendants have the means under both state law and previously granted waivers to comply with the population cap on time.

This Court's first obligation is to eliminate the constitutional violations, and it must do so in the fastest way possible consistent with the State's interests in public safety. *Brown v. Plata*, 563 U.S. ___, 131 S.Ct. 1910, 1947 (2011) (requiring State to reduce the prison population "without further delay"). Through Senate Bill 105 the State has made a commitment to reduce overcrowding immediately by sending prisoners to private out-of-state facilities. Although Plaintiffs believe that reducing the population in this way is not durable and is a misguided policy, it is consistent with public safety and promises the achievement of a long elusive goal – compliance with the population limit. There is no justification for any further delay.

Nothing will prevent Defendants from implementing the measures described in their January 23 submission pursuant to state law or under the waivers of state law previously ordered by this Court. If successful, those measures will reduce the need for out-of-state transfers.[1]

# BACKGROUND

While Defendants have reduced crowding at some prisons, the overcrowding crisis persists in many others, with some prisons crowded by as much as 178% over capacity.[2] The crowding

---

[1] The State also proposes that the Court appoint a compliance officer who would be charged with releasing prisoners if Defendants fail to meet the court-ordered benchmarks. Plaintiffs agree, with minor modifications, with this part of their proposal. Such an officer will ensure continued compliance with the Court's orders. There is no reason for the Court to wait before invoking this remedy, since it will take time for such officer to gather the necessary information to perform his or her obligations.

[2] *See* CDCR Weekly Report of Population, Midnight, Jan. 22, 2014, at 2, http://www.cdcr.ca.gov/Reports_Research/Offender_Information_Services_Branch/WeeklyWed/TPOP1A/TPOP1Ad140122.pdf (site last visited Jan. 24, 2014).
The State's latest filings have understated the level of crowding by including in the "design capacity" of the prisons a newly built facility in Stockton, the California Health (footnote continued)

---

1  problem is getting worse not better; if measures are not taken immediately, the prison population

2  is projected to grow by another 10,000 in the next five years.[3]  At the same time, prison health care

3  remains well below constitutional standards and prisoners are continuing to suffer and die from

4  inadequate care.

5      Recent reports from the *Plata* court experts detail the devastating and ongoing impacts of

6  prison crowding.  The court experts found that the Central California Women's Facility (CCWF),

7  which is operating at 178.5% over capacity, is "not providing adequate medical care" and the

8  result is "preventable morbidity and mortality" and "an on-going serious risk of harm to patients;"

9  the experts further concluded that "*the majority of problems are attributable to overcrowding*,

10 insufficient health care staffing, and inadequate medical bed space."  CCWF Health Care Eval.,

11 Dec. 11, 2013 at 5 (*Plata* ECF No. 2745) (emphasis added).  The court experts have evaluated

12 nine other prisons since mid-March 2013, and did not find *any* that were providing adequate care.

13 At five prisons, the experts' overall conclusion – like that at CCWF – was that adequate care is not

14 being provided and that "systemic issues . . . present an on-going serious risk of harm to prisoners

15

16 _____

17 Care Facility (CHCF).  But the trial in this case concerned crowding in the 33 then-existing
18 prisons, and this Court's order caps crowding in the thirty-three prisons at 137.5% of
   capacity.  Aug. 4, 2009 Opinion & Order at 37 n. 35, 120 & 120 n. 61 (ECF Nos.
19 2197/3641).
20     CHCF should not be counted in the overall capacity of the prisons that can be
   crowded at 137.5% of capacity because it is a prison hospital and therefore can never be
21 crowded at above 100% of capacity.  By including the 1818 beds at CHCF in the design
   capacity for all CDCR institutions, CDCR adds 2,500 prisoners (or 1818 times 137.5%) to
22 the overall crowding cap.  But given the imperative not to crowd a hospital, only 1800 of
   those prisoners can be housed at CHCF; the remaining 700 will be sent to the 33 other
23 prisons, thus pushing the other 33 *over* the 137.5% cap.
24     Accordingly, prisoners transferred to CHCF, like those transferred to camps, contract
   beds, or out-of-state prisons, should simply be subtracted from the population of the 33
25 prisons.
26     [3] CDCR Fall 2013 Adult Population Projections at 2,
   http://www.cdcr.ca.gov/Reports_Research/Offender_Information_Services_Branch/Project
27 ions/F13pub.pdf (site last visited Jan. 23, 2014).
28

2

1  and result in preventable morbidity and mortality."[4]  At three other prisons the experts concluded

2  the institutions will only provide "adequate medical care *once ... health care physical plant issues*

3  *are corrected.*"[5]

4      The court experts described how one prisoner was evidently in distress on the floor outside

5  his cell, complaining of abdominal pain, flailing his arms, and stating he was unable to walk; he

6  was abandoned by nurses, and a physician notified of the situation refused to see the patient.

7  Several hours later, the prisoner was found unresponsive, and custody staff failed to initiate CPR.

8  The prisoner died that same day.  R.J. Donovan Corr. Facility Health Care Eval., March 18, 2013,

9  at 25-26 and 48 (*Plata* ECF No. 2572).  In another case, an urologist, after considering a patient's

10  very elevated lab result, recommended a biopsy to rule out cancer.  More than two months later

11  the prisoner had not seen a doctor for follow-up, the biopsy had not occurred, and there was no

12  documentation that it had even been ordered.  Salinas Valley State Prison Health Care Eval., Aug.

13  23, 2013, at 76 (*Plata* ECF No. 2704).

14      In April 2013, this Court concluded based on the evidence before it that there was

15  "overwhelming evidence . . . that defendants themselves recognize the current inadequacy of

16  treatment space in California's prisons."  April 11, 2013 Opinion And Order at 45 (ECF Nos.

17  2590/ 4541).  The evidence is even more overwhelming today, as Defendants have admitted

18  serious physical plant deficiencies in health care facilities in an additional sixteen prisons.  Fama

19  Decl. In Support of Pltffs' Response to Defs.' Proposed Order, filed herewith, at ¶¶ 3-19 & Exhs.

20  A to P.  There are simply too few adequate exam rooms to provide a basic level of care to the

21  _____

22  [4] R.J. Donovan Correctional Facility Health Care Eval., March 18, 2013, at 5 (*Plata*

23  ECF No. 2572); Corcoran State Prison Health Care Eval., July 29, 2013, at 5 (*Plata* ECF No. 2687); Salinas Valley State Prison Health Care Eval., Aug. 23, 2013, at 5 (*Plata* ECF

24  No. 2704); Cal. Institution for Men Health Care Eval., Dec. 20, 2013, at 5 (*Plata* ECF No. 2749); and Cal. State Prison at Sacramento Health Care Eval., Jan. 17, 2014, at 5 (*Plata*

25  ECF No. 2754).

26  [5] Cal. Men's Colony Health Care Eval., March 18, 2013, at 5 (*Plata* ECF No. 2571)

27  (emphasis added); Sierra Conserv'n Ctr. Health Care Eval., Mar. 26, 2013, at 5 (*Plata* ECF No. 2586); Cal. Corr. Inst'n Health Care Eval., May 31, 2013, at 5 (*Plata* ECF No. 2643).

28

OBJECTIONS TO DEFS' JAN. 23, 2014 PROPOSED ORDER; Case No. Civ S 90-0520 LKK-JFM P, C01-1351 TEH

inmate-patient population, and inadequate specialty service, pharmacy, laboratory, and other medical areas. *Id.* Defendants' plan to fix the deficient health care facilities will not be completed until 2017 at the earliest, with completion then – or at all – uncertain. [6]

Prisoners with mental illness continue to suffer the devastating effects of ongoing overcrowding in California prisons, including grossly inadequate mental health care, delayed access to higher levels of care and inpatient psychiatric hospitalization, and extended, unjustified placements in dangerous segregation units. The reductions to date in CDCR's overall levels of crowding have failed to reach the mentally ill population. *See* Bien Decl. In Support of Pltffs' Response to Defs' Proposed Order ("Bien Decl."), filed herewith, at ¶¶ 4-11 and Exhs. 1-3. As a result, the critical shortages and deficiencies that the Supreme Court identified in 2011 persist. Prisoners with mental illness continue to suffer needlessly and die at staggering rates as a consequence of Defendants' failure to provide minimally adequate mental health treatment and conditions of confinement. *Id.* ¶¶ 20-21, 43-44, 53, 56-62 and Exhs. 30-32.

To cope with chronic shortages of crisis beds and persistent waitlists for inpatient psychiatric hospitalization, Defendants continue to place prisoners suffering acute psychiatric distress into makeshift, unlicensed units and unsafe alternative housing cells. *Id.* ¶¶ 14-33 and Exhs. 5-12. Prisoners with mental illness are routinely held for long durations in dangerous segregation units, where they are subjected to treatment in cages and blanket strip searches, merely because Defendants lack safe and appropriate housing placements for them. *Id.* ¶¶ 36-45, 54 and Exhs. 22-26, 29. Mental health treatment is still delivered in non-confidential, anti-therapeutic spaces such as cages and converted storage closets, and primary clinician contacts frequently take place through the door jambs of locked cells. *Id.* ¶¶ 34-35 and Exhs. 13-21.

Despite these deplorable conditions and the increasing rates of suicide in California prisons, Defendants have elected to cancel and delay critical projects to expand mental health

---

[6] April 11, 2013 Opinion & Order at 45-46; *see also* Receiver's Twenty-Fourth Tri-Annual Report, Oct. 1, 2013 at 2, 24 (*Plata* ECF No. 2724) (reporting "significant risk" that health care upgrades will not be completed on time).

1  treatment space for prisoners with mental illness. *Id.* ¶¶ 11-13, 34-35 and Exhs. 4, 13-21. Most

2  recently, Defendants notified the *Coleman* court that the long-planned activation of California

3  Health Care Facility has been further delayed on account of Defendants' inability to recruit

4  psychiatrists to staff the facility. *Id.* ¶¶ 13, 50. Staffing shortages are endemic among mental

5  health clinicians and access-to-care officers, and further diminish the sufficiency of treatment for

6  mentally ill prisoners. *Id.* ¶¶ 46-53 and Exhs. 27-28.

7      In the past year, the *Coleman* court has repeatedly found that the mental health treatment

8  and conditions of confinement for prisoners with mental illness violate the Eighth Amendment.

9  *See* Dec. 10, 2013 Order; ECF. No. 4951; Nov. 13, 2013 Order, ECF No. 4925; July 12, 2013

10 Order, ECF No. 4693; July 11, 2013 Order, ECF No. 4688; April 5, 2013 Order, ECF No. 4539.

11 The court has identified "critical staffing shortages and other impediments to constitutionally

12 adequate mental health care" and has observed the ongoing connection to "severe overcrowding in

13 the California prison system, which has not yet been adequately remedied . . . ." July 11, 2013

14 Order, ECF No. 4688, at 10-11, nn. 8, 10. The *Coleman* court has also expressed "grave concern"

15 about Defendants' continued failure to address foreseeable and preventable suicides, which

16 continue at staggering rates throughout CDCR prisons while Defendants delay their efforts to

17 reduce overcrowding. July 12, 2013 Order, ECF No. 4693, at 4; *see also* Bien Decl. ¶¶ 56-62 and

18 Exh. 32.

19      In light of these serious and ongoing constitutional violations, granting Defendants a two-

20 year extension of time will inevitably result in incalculable suffering. This suffering can be

21 avoided, however, by requiring Defendants to do what they have already admitted is possible –

22 resolve the overcrowding crisis in the short term while longer-term solutions are being developed.

23                                    **ARGUMENT**

24      This Court must enforce its order requiring a timely remedy to the serious constitutional

25 violations at issue in these cases. Defendants have the ability to comply within the deadline using

26 the measures that are approved by both this Court and the Supreme Court, such as increasing good

27 time credits to prisoners who are following the rules and engaged in rehabilitative programming.

28 June 20, 2013 Opinion & Order at 7,8, 37-42 (ECF Nos. 2659/4662) ("This Court wishes to make

1   it perfectly clear what this means: Defendants have no excuse for failing to meet the 137.5%

2   requirement on December 31, 2013.")  Or, Defendants could comply as they said they would last

3   September, by sending California prisoners to out-of-state facilities.  Defs' Request for Extension,

4   Sept. 16, 2013, at 2-3 (ECF Nos. 2713/4803).  Since the constitutional violations persist and

5   Defendants have the means to comply with the existing deadlines for remedying the violations, the

6   extension request must be denied.[7]  *White v. Weiser*, 412 U.S. 783, 797 (1973) ("District Court

7   should not, in the name of state policy, refrain from providing remedies fully adequate to redress

8   constitutional violations which have been adjudicated and must be rectified.").  "California's

9   prisoners, present and future, (and the state's population as a whole) can wait no longer."  Aug. 4,

10   2009 Opinion & Order at 9 (ECF Nos. 2197/3641).

11          Over the past five years, Defendants have changed their minds repeatedly about their

12   preferred approach to crowding reduction.  *See, e.g.,* Defs' Population Reduction Plan, Sept. 18,

13   2009 (ECF Nos. 2237/3678) (first iteration of plan); Defs' Response to Oct. 21, 2009 Order, Nov.

14   12, 2009 (ECF Nos. 2274/3726) (second version); Defs' Response to Jan. 12, 2010 Order, June 7,

15   2011 (ECF Nos. 2365/4016) (third version); Defs' Response to Oct. 11, 2012 Order, Jan. 7, 2013

16   (ECF Nos. 2511/4284) (fourth version); Defs' Request for Extension, Sept. 16, 2013 (ECF Nos.

17   2713/4803) (fifth version); Defs' Amended App. for Extension, Jan. 23, 2014 (ECF Nos.

18   _____

19          [7] Defendants say that they will be "forced" to send prisoners out-of-state unless the
20   Court grants a three year extension.  Defs' Request for Extension, Sept. 16, 2013, at 2,11.
     Not so.  This Court and the Supreme Court have catalogued numerous ways that the State
21   can safely comply with the order without sending prisoners to private prisons in other
     states.  *Brown*, 131 S.Ct. at 1943-44; Aug. 4, 2009 Opinion & Order at 137- 157 (ECF
22   Nos. 2197/3641); June 20, 2013 Opinion & Order at 37-45 (ECF Nos. 2659/4662).
     Defendants have had more than four years to undertake the common sense reforms
23   necessary to safely reduce the prison population – including the reforms that are now
     included in their latest plan.  Instead, they wasted that time engaging in a series of evasive,
24   defiant and contumacious legal maneuvers designed to mislead the court and obscure their
     impending default.  April 11, 2013 Order at 63-65 (ECF Nos. 2590/4541); June 20, 2013
25   Order at 15-22 (ECF Nos. 2659/4662).
26          If Defendants send prisoner to out-of-state prisons it is because they failed – and indeed
27   contumaciously refused – to take other, more efficacious remedies in a timely manner.

28

OBJECTIONS TO DEFS' JAN. 23, 2014 PROPOSED ORDER; Case No. Civ S 90-0520 LKK-JFM P, C01-1351 TEH

1    2755/5023) (sixth version).  They should not get extra time to remedy the ongoing constitutional

2    violations each time the political winds shift. [8]

3        Defendants' newest plan contains some promising elements, but it was designed to have

4    little effect immediately (e.g., the credit earning measures are not retroactive, thus eliminating

5    their immediate impact).  Other aspects of the plan, such as the new categories of prisoners

6    eligible for parole and alternative custody, and funding for new crime reduction programs, are far

7    too uncertain to predict whether and what impact they might have on prison crowding.[9]

8        Meanwhile, the most certain and immediate part of Defendants current plan is to expand

9    prison capacity.  If granted a two-year extension, Defendants will contract for "additional in-state

10   capacity in county jails, community correction facilities, and a private prison."  Defs' Prop. Order

11   at 2, Jan. 23, 2014 (ECF Nos. 2755/ 5024).  In other words, even though the stated purpose of

12   Defendants' extension is to avoid sending prisoners to private out-of-state facilities, their proposal

13   is to use the extension to build capacity in private in-state facilities.  This distinction is not worth a

14   two year delay in the remedy in this case.

15       Nothing in Defendants' plan warrants granting a two year extension of time when serious

16   constitutional violations persist and the State has the means to remedy them now.

17   _____

18       [8] Defendants also make their latest request for an extension with unclean hands,
     having repeatedly argued to this court over the last two years that it would be *premature*

19   for them to begin making new population reduction plans.  Defs' Opp to Mot for Increased
     Reporting at 2, 4, Feb. 27, 2012, (ECF No. 2423/4162) (any conversation about population

20   reduction measures would be "ill-advised and counterproductive" as well as "premature");

21   Defs' Opp. to Renewed Mot. at 7, May 23, 2012, (ECF No. 2442/4191) (it would be
     "premature" to require Defendants to develop additional crowding-reduction measures);

22   Defs' Response to Sept. 7 Order at 2, Sept. 17, 2012 (ECF Nos. 2479/4243) (it would still

23   be "premature" to begin planning for additional population reduction measures).

24       [9] For example, even if funds are available for the Recidivism Reduction Fund,
     disbursement to counties is contingent upon a subsequent legislative appropriation. Cal.

25   Pen. Code § 1233.9 (added by SB 105).  And, even if funds are appropriated, there is no
     way to predict whether the "activities" funded will be effective.   Also, the additional

26   appropriation for probation departments does not begin until next fiscal year, which begins

27   in July 2014.  Defs' Request for Extension, Sept. 16, 2013, at 4.

28

7

1

2     DATED: January 28, 2014

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

PRISON LAW OFFICE

By:   */s/*
     Rebekah Evenson

Attorneys for *Coleman* Plaintiffs
Attorneys for *Plata* Plaintiffs

OBJECTIONS TO DEFS' JAN. 23, 2014 PROPOSED ORDER; Case No. Civ S 90-0520 LKK-JFM P, C01-1351 TEH