DONALD SPECTER – 083925
STEVEN FAMA – 099641
PRISON LAW OFFICE
1917 Fifth Street
Berkeley, California  94710-1916
Telephone:   (510) 280-2621

MICHAEL W. BIEN – 096891
JANE E. KAHN – 112239
ERNEST GALVAN – 196065
THOMAS NOLAN – 169692
LISA ELLS – 243657
AARON J. FISCHER – 247391
MARGOT MENDELSON – 268583
KRISTA STONE-MANISTA – 269083
ROSEN BIEN
GALVAN & GRUNFELD LLP
315 Montgomery Street, Tenth Floor
San Francisco, California  94104-1823
Telephone:   (415) 433-6830

JON MICHAELSON – 083815
JEFFREY L. BORNSTEIN – 099358
RANJINI ACHARYA – 290877
K&L GATES LLP
4 Embarcadero Center, Suite 1200
San Francisco, California  94111-5994
Telephone:   (415) 882-8200

CLAUDIA CENTER – 158255
THE LEGAL AID SOCIETY –
EMPLOYMENT LAW CENTER
180 Montgomery Street, Suite 600
San Francisco, California  94104-4244
Telephone:   (415) 864-8848

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al., | Case No. 2:90-cv-0520 LKK DAD |
| Plaintiffs, | **RESPONSE TO DEFENDANTS' URGENT REQUEST FOR RECONSIDERATION** |
| v. | |
| EDMUND G. BROWN, JR., et al., | Judge:   Hon. Lawrence K. Karlton |
| Defendants. | |

1   There is no basis for reconsideration of this Court's January 30, 2014 Order nor of

2   Judge Drozd's February 5, 2014 Order.  Defendants have seized on a distracting red-

3   herring that bears no relevance to the critical issues here.  The fact that Plaintiffs had

4   access to a barely legible handwritten notation regarding pepper spray in late September

5   2013 is of little or no relevance to the issue here that needs urgent investigation.  Why did

6   Defendants in the midst of a trial over use-of-force, decide to remove the pepper-spray

7   recommendations from their draft suicide report?  That report should have been produced

8   to the Special Master and Plaintiffs' counsel on November 6, 2013—while the use-of-force

9   trial hearing was continuing.  Instead, a draft bearing the date October 31, 2013 was buried

10   and replaced with a final report on January 7, 2014 in which the specific recommendations

11   regarding pepper-spray were removed.  (Bien Decl. ¶ 8 Docket No. 4892-1.)   Defendants

12   now say that the draft dated October 31, 2013 was really written later.  (Belavich Decl. ¶

13   13. Docket No. 5031.)  Even if this report was written later, the other "documentation and

14   reports" regarding the death were presented to Defendants' Suicide Review Case

15   Committee on October 31, 2013—while the Use of Force trial was going on.  (Belavich

16   Decl. ¶ 8, Docket No. 5031.)   That is the conduct that the Court reviewed on January 30,

17   2014, and that still needs investigation.

18   Defendants contend that the modification of the suicide report is not relevant to the

19   issue certified for discovery on January 30, 2014: "whether relevant information

20   concerning this death [of Inmate D] was withheld from plaintiffs or the court during the

21   course of the evidentiary hearing which commenced October 1, 2013."  (Docket No.

22   5034.)  They contend that the suicide report need not have been produced within 60 days

23   because they questioned whether the death was a suicide until the coroner so-ruled on

24   November 27, 2013, and they now assert for the first time since the 2009 Program Guide

25   that a 2002 order sets a longer deadline for the reports.

26   There is no authority in the governing 2009 Program Guide provision, Section 12-

27   10-26, for the notion that Defendants can start a suicide report process and then stop it if

28   they find reasons to contest that the death was a suicide.  Whatever the deadlines might

1

RESPONSE TO DEFENDANTS' URGENT REQUEST FOR RECONSIDERATION

1  have been in the cited 2002 Order, the 2009 Program Guide sets the current standard,

2  which is 60 days from the date of death.

3         There is no question from Dr. Belavich's declaration that Defendants were

4  reviewing this death as a suicide on October 31, 2013, and that at that time "documents

5  and reports" were presented to the Suicide Review Case Committee, and these documents

6  included the details about the inmate being pepper sprayed eight hours before his death.

7  (Belavich Decl. ¶ 8, Docket No. 5031.)  Even if the Court accepts Defendants'

8  interpretation of the suicide reporting requirement to put the deadline outside the time of

9  the use-of-force evidentiary hearing, these undisputed facts raise serious questions

10  regarding the decision of Defendants and their counsel not to come forward with

11  information regarding Inmate D's death outside of the suicide reporting process.

12  Defendants presented witnesses to the Court who denied awareness of a connection

13  between pepper spraying and inmate deaths.  (*See* RT 10/24/2013 at 943:18-21; RT

14  11/6/2013 at 1985:15-18.)  The Court is entitled to answers regarding what Defendants'

15  were doing with the information regarding Inmate D's deaths during the same weeks that

16  they were presenting evidence denying a connection between pepper spray and inmate

17  deaths.

18         Defendants accuse Plaintiffs' counsel of making "false assertions" to the Court.

19  This is an unfounded charge.  Plaintiffs' counsel made a simple mistake regarding the date

20  on which documents about this suicide were received.  (Supp. Bien Decl. Docket No. 5041

21  ¶ 3.)  Counsel learned late on the night before the hearing that Defendants disputed when

22  they made documents available.  (*Id.* ¶ 4.)  As soon as the paralegal staff member

23  responsible for downloading documents was in the office, counsel contacted her to begin

24  investigating Defendants' assertion.  (*Id.* ¶ 5.)  Counsel eventually learned that documents

25  were downloaded and so informed Defendants' counsel.  It took several more days to learn

26  precisely which ones and at what times they were downloaded and reviewed.  (*Id.*)  As

27  soon as this information was gathered, Plaintiffs candidly presented it to the Court in two

28  declarations with personal knowledge, one from Mr. Bien and one from Ms. Kahn, Docket

Nos. 5041 and 5042, with exhibits under seal showing precisely when documents were downloaded. This is not a case of misrepresentation but of a mistake promptly and completely corrected.

Defendants accuse Plaintiffs' counsel of lack of diligence in not poring over the initial Inmate D documents when they were downloaded on September 25, 2013. Plaintiffs downloaded many documents that day, (Kahn Decl. ¶ 3, Exhibit 1). Contrary to their contention, Defendants' "burden" does not end when they upload documents to their transfer site. Their "burden," undertaken in their own suicide prevention plans and Program Guides is to engage in a timely, critical and candid review of the events leading up to the suicide to make sense of what happened, and develop recommendations to save lives in the future. Plaintiffs do not pore over every record regarding suicides when they are uploaded, but rely on the arrival 60 days later of Defendants' analysis, which has the benefit of the information provided by clinicians on site. (Kahn Decl. ¶ 4.) If, instead, Plaintiffs' counsel immediately gave every document in this case to their own experts for independent review, Defendants would rightly complain about excessive time and costs, and that they were not being trusted to develop their own self-monitoring processes. Defendants' self-monitoring must eventually replace Court-supervision. It cannot do so if it relies on Plaintiffs' counsel to search for every hand-written notation in which critical problems are buried, or on leaks to reporters to bring out self-critical analysis that was removed from the reports provided to the Special Master.

In light of the foregoing, Plaintiffs respectfully request that the request for reconsideration and stay be denied.

Dated:  Feb. 6, 2014          By:  */s/ Ernest Galvan*
                                   Ernest Galvan

                                   Attorneys for Plaintiffs