1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                        EASTERN DISTRICT OF CALIFORNIA

10

11  RALPH COLEMAN, et al.,              No. CIV. S-90-520 LKK/DAD (PC)

12              Plaintiffs,

13       v.                             **ORDER**

14  EDMUND G. BROWN, JR., et al.,

15              Defendants.

16

17       Defendants have filed a request for reconsideration of this

18  court's January 30, 2014 order reopening discovery; they also

19  seek to stay the magistrate judge's February 5, 2014 order

20  concerning said discovery (ECF No. 5055).[1]  Plaintiffs oppose the

21  request (ECF No. 5056), and defendants have filed a reply (ECF

22  No. 5057).

23       Defendants seek reconsideration of that part of the court's

24  January 30, 2014 order that opened discovery as to whether

25  relevant information concerning the September 7, 2013 death of a

26  _____

27  [1] Defendants request a hearing on their request for
    reconsideration. The request for reconsideration is resolved
    herein without oral argument.

28

                                    1

Coleman class member was withheld from plaintiffs or the court during the course of the evidentiary hearing which commenced on October 1, 2013.  The crux of the relevant[2] disagreement between the parties centers on whether defendants had any duty to produce a suicide report by November 7, 2013.  Defendants contend that under both the Program Guide and paragraph 7 of a June 13, 2002 order of this court (ECF No. 1384), where there is a genuine issue about whether a death is a suicide no suicide report is required until after the death is determined to be a suicide.  Defs. Req. for Recon. (ECF No. 5055) at 3 n.2.  Plaintiffs disagree.  Pls. Resp. (ECF No. 5056) at 1-2.

Paragraph 7 of the court's June 13, 2002 order has been superseded by the court's March 3, 2006 order (ECF No. 1773)

---

[2] Defendants also contend (i) that discovery was opened based on "false" assertions by plaintiffs' counsel that certain documents related to this class member's death had not been downloaded or reviewed; (ii) that those documents were uploaded in September 2013 and were sufficient to give plaintiffs fair notice of the facts and circumstances of this class member's death; and (iii) that plaintiffs should not be permitted to reopen discovery where they failed to timely review these documents.  Plaintiffs have filed declarations of counsel correcting what they assert was a "mistake" concerning the time when certain documents were downloaded by a paralegal employed by plaintiffs' counsel.  See Suppl. Decl of Bien, filed February 3, 2014 (ECF No. 5014); Decl. of Kahn, filed February 3, 2014 (ECF No. 5042).  The court accepts these corrected representations.  Defendants' contentions concerning whether plaintiffs were on inquiry notice sufficient to obviate whatever duties defendants may have had are insufficient to justify closing discovery on the question of whether relevant information concerning this class member's death was withheld from plaintiffs or the court during the course of the evidentiary hearing which commenced on October 1, 2013.  Those contentions may be renewed, as appropriate, at a later stage of these proceedings should the court be required to decide what information should have been advanced when and by whom.

1  approving all undisputed provisions of that Revised Program Guide

2  and ordering their immediate implementation.[3]  Specific

3  requirements for reporting on inmate suicides were included in

4  the undisputed provisions of the Revised Program Guide approved

5  and required to be implemented by that order, see January 2006

6  Revised Program Guide (ECF No. 1753-10) at 12-10-23 through 12-

7  10-29, and are controlling as to the matters covered therein.[4]

8      The June 13, 2002 order required production of a final

9  suicide report to the special master's experts "within ninety

10  days after any suicide or, if there is a genuine issue whether

11  the death is a suicide, ninety days from the date on which said

12  death is determined to be a suicide." (ECF No. 1384 at 2.)  The

13  Program Guide has changed the timeline for production of suicide

14  reports to sixty days.  Pl. Ex. 1200 at 12-10-24 to 12-10-26.

15  There appears to be no provision in the Program Guide comparable

16  to the alternative described in the June 13, 2002 order extending

17  that timeline "if there is a genuine issue whether the death is a

18  suicide."[5]  As the Program Guide now stands,it outlines a Suicide

19  Death Review process that commences with the completion of two

20  _____

21  [3] The Special Master's Report and Recommendations on Defendants'
   Revised Program Guide, filed February 3, 2006 (ECF No. 1749)
22  describes the three-year process of "intense review, analysis and
   negotiation" that led to promulgation of the Revised Program
23  Guide.  (ECF No. 1749 at 2.)

24  [4] Those provisions remain in the current 2009 version of the
   Program Guide.  See Pls. Ex. 1200, Program Guide 2009 Revision,
25  at 12-10-23 through 12-10-29.

26  [5] The omission may well have been inadvertent and may suggest a
27  revision of the Program Guide may be appropriate.  If the present
   controversy turns out to prove nothing else, it may nonetheless
28  have proved to have value.

forms:  a CDCR 7229A *Initial Inmate Death Report*, a CDCR 7229B *Initial Inmate Suicide Report*.  See Pls. Ex. 1200 at 12-10-24. Both of those documents were completed in the case of this class member's death and uploaded to the CDCR's secure website in September 2013.  See Ex. 2 to Confidential Kahn Decl (ECF No. 5049 *SEALED*); see also Sealed Belavich Decl. (ECF No. 5046-1 *SEALED*).  Under the timelines contained in the Program Guide a suicide report by the Mental Health Suicide Reviewer was due within sixty days of the class member's death.  See Pls. Ex. 1200 at 12-20-26.

Here, defendants contend that the notice of death provided on September 16, 2013 "disclosed that CDCR was uncertain whether [the class member]'s death was a suicide or accidental death." Defs. Req. for Recon. (ECF No. 5055) at 3 n.2.  Defendants have also filed, under seal, a declaration from Dr. Tim Belavich, CDCR's Deputy Director of the Statewide Mental Health Program and the Director (Acting) of the Division of Health Care Services for the California Department of Corrections and Rehabilitation (CDCR) (ECF No. 5046-1 *SEALED*).  In that declaration, Dr. Belavich avers that on October 31, 2013, the Suicide Case Review Subcommittee considered the case, found it did not appear the class member had committed suicide, and decided to await the coroner's report.  Id. at ¶ 8.

The issues raised by plaintiffs' request to open discovery may, in the end, come down to nothing more than a disagreement about whether the Suicide Case Review Subcommittee could, consistent with the requirements of the Program Guide, under the circumstances of this class member's death defer completion and

4

1  forwarding of a suicide report pending receipt of the coroner's

2  report.[6]  Defendants argue forcefully that nothing "in the

3  Program Guide or elsewhere . . . requires a suicide report for

4  deaths of undetermined or accidental causes."  Defs. Reply, filed

5  February 7, 2014 (ECF No. 5057) at 2.  The court need not resolve

6  that question at this time.  Here, a form CDCR 7229B *Initial*

7  *Inmate Suicide Report* was completed three days after the class

8  member's death.  The notice provided by Dr. Belavich on September

9  16, 2013 described the class member's death as "an apparent

10  suicide/unknown death" and the record shows that several steps in

11  the suicide review process were timely followed but the final

12  report was not completed on the timeline set out in the Program

13  Guide.  Under the circumstances of this case, plaintiffs are

14  entitled to conduct discovery into the reason(s) that timeline

15  was not met.

16      For all of the foregoing reasons, IT IS HEREBY ORDERED that

17  defendants' February 6, 2014 motion for reconsideration and to

18  stay discovery (ECF No. 5055) is denied.[7]

19      DATED:  February 7, 2014.

20

21  LAWRENCE K. KARLTON
    SENIOR JUDGE
22  UNITED STATES DISTRICT COURT

23  [6] The Program Guide provides that "[i]f, during the suicide review
    process, other death related information arrives, such as CDCR
24  837 C, CDCR 7229 C, or Coroner's report, the DNC [Death
    Notification Coordinator] will locate the death review folder and
25  place these documents inside.  The DNC shall update the routing
    sheet and notify the SPR FIT [Suicide Prevention and Response
26  Focused Improvement Team] Coordinator of the new information."
    Pls. Ex. 1200 at 12-10-28
27  [7] The court feels compelled to state to the parties that not every
28  mistake is evidence of malicious intent.

5