DONALD SPECTER – 083925
STEVEN FAMA – 099641
PRISON LAW OFFICE
1917 Fifth Street
Berkeley, California 94710-1916
Telephone: (510) 280-2621

MICHAEL W. BIEN – 096891
JANE E. KAHN – 112239
ERNEST GALVAN – 196065
LISA ELLS – 243657
AARON J. FISCHER – 247391
MARGOT MENDELSON – 268583
KRISTA STONE-MANISTA – 269083
ROSEN BIEN GALVAN & GRUNFELD LLP
315 Montgomery Street, Tenth Floor
San Francisco, California 94104-1823
Telephone: (415) 433-6830

JON MICHAELSON – 083815
JEFFREY L. BORNSTEIN – 099358
RANJINI ACHARYA – 290877
K&L GATES LLP
4 Embarcadero Center, Suite 1200
San Francisco, California 94111-5994
Telephone: (415) 882-8200

CLAUDIA CENTER – 158255
THE LEGAL AID SOCIETY –
EMPLOYMENT LAW CENTER
180 Montgomery Street, Suite 600
San Francisco, California 94104-4244
Telephone: (415) 864-8848

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>EDMUND G. BROWN, Jr., et al.,<br><br>    Defendants. | Case No. Civ S 90-0520 LKK-JFM<br><br>**DECLARATION OF LINDA H. WOO IN SUPPORT OF PLAINTIFFS' BRIEFING ON DEFENDANTS' PROPOSED REVISIONS TO USE OF FORCE POLICY** |

I, Linda H. Woo, declare:

1. I am a Senior Paralegal at K&L Gates LLP, counsel of record for Plaintiffs. I have personal knowledge of the matters set forth herein, and if called as a witness, I could competently so testify. I submit this declaration in support of Plaintiffs' Briefing on Defendants' Proposed Revisions to Use of Force Policy.

2. I have reviewed the document attached as Exhibit A to the Declaration of Michael Stainer Re: Revisions to Use of Force Provisions in the California Department of Corrections and Rehabilitation's Department Operations Manual, dated January 21, 2014 (ECF. No. 4987). I understand that this document contains Defendants' proposed revisions to California Department of Corrections and Rehabilitation's ("CDCR") Department Operations Manual ("DOM").

3. I compared this document to the copy of the Department Operations Manual Chapter 5, Article 2 - Use of Force, which was attached as Exhibit A to the Declaration of Michael Stainer in Support of Defendants' Opposition to Motion Related to Use of Force and Disciplinary Measures, filed on July 24, 2013. (ECF. No. 4708).

4. On January 22, 2014, I prepared a Word document, in which I attempted to show the differences between the two versions of the DOM. I did this by visually comparing the text of the two documents to identify the differences between them. Once I had identified the differences, I took the text of the DOM in the form that was attached to Mr. Stainer's July 24, 2013 declaration, and showed the proposed changes contained in the DOM attached to his January 21, 2014 declaration in bold italics (for additions) and bold strikethrough (for deletions). A true and correct copy of this document is attached as Exhibit A.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct and that this declaration is executed in San Francisco on February 12, 2014.

_____
Linda H. Woo

DECLARATION OF LINDA H. WOO IN SUPPORT OF PLAINTIFFS' BRIEFING ON DEFENDANTS' PROPOSED REVISIONS TO USE OF FORCE POLICY

# EXHIBIT A TO THE DECLARATION OF LINDA H. WOO IN SUPPORT OF PLAINTIFFS' BRIEFING ON DEFENDANTS' PROPOSED REVISIONS TO USE OF FORCE POLICY

REVISIONS TO ARTICLE 2 - USE OF FORCE

The following revisions were made to the Use of Force Policy. Changes have been noted in bold strikeout (for deletions) and bold italics (for additions) for our reference.

### 51020.4 Definitions - Controlled Use of Force (Page 3 of 21)
The last sentence was modified with an addition to read:
Staff shall make every effort to identify disabilities, *to include mental health concerns*, and note any accommodations that may need to be considered.

### 51020.4 Definitions - First Level Manager (Page 4 of 21)
Words were deleted to read:
A First Level Manager is a ~~Facility Captain/Correctional~~ Captain, or the AOD.

### 51020.6 - Use of Restraints (Page 5 of 21)
In the paragraph re: Safety Triangle. The fourth sentence was modified to read:
The safety triangle is not intended to control the inmate outside the cell~~, nor is it intended to pull an inmate to the cell front in order to remove the handcuffs~~.

The following paragraph was added in its entirety:
*In the event that an inmate who is attached to a triangle refuses to place their hands in the food/security port to allow the handcuffs to be removed, staff shall follow the procedures outlined in 51020.11.2 Food/Security Ports. If the use of chemical agents does not result in gaining control of the inmate, it may be necessary to pull the safety triangle to retrieve the handcuffs. When it is necessary to pull the safety triangle, a single staff member shall slowly move away from the door while holding onto the safety triangle, in order to bring the inmate's hands through the port. This will be conducted with extreme caution in order to minimize the risk of injury to the inmate. Additional staff may be needed to assist with the safety triangle in the event that the one staff member is insufficient to get the inmate's hands through the food port. Once the inmate's hands, wrists, and forearms are through the port, staff will grasp the inmate's forearms, the tension on the safety triangle shall be released, and the handcuffs removed.*

### 51020.11.2 - Food/Security Ports (Page 6 of 21)
This was previously titled "Food Ports" and all references to "food port" have been changed to reflect "food/security port."

The third paragraph has modified as follows:
If the inmate refuses to relinquish control of the food/*security* port after the warning *and presents an immediate threat to the safety of the officer or inmate (e.g., the inmate is battering or attempting to batter staff or inmates in the area)*, the officer is authorized to administer ~~chemical agents~~ a single 3- second burst of chemical agents against the inmate to secure the food/*security* port. ~~Alternatively, the officer may choose to contact a supervisor and await further guidance in formulating a response.~~

The fifth paragraph has modified as follows:
In the event *an immediate threat is not present or* the use of chemical agents does not accomplish the goal of regaining control of the food/*security* port, the officer shall back away from the cell and contact and advise the custody supervisor of the incident. Controlled force will be initiated while custody staff continue to monitor the inmate. ~~Health care staff~~ *A licensed health care practitioner* shall monitor the inmate at least every 15 minutes.


### 51020.12 - Controlled Use of Force General Requirements (Page 7 of 21)
Adds a second paragraph that reads:
*Once a situation exists that may result in a controlled use of force, a custody staff member shall remain at the cell door to monitor the inmate and continue to attempt to gain compliance from the inmate through verbal prompts until the extraction team arrives and the staff member is relieved by the incident commander to resume their regular duties. The custody staff member will be positioned as close as possible to the affected cell/area, without jeopardizing to their own safety.*

Adds fourth and fifth paragraphs that read:
*Incident Commanders and on-site Managers shall utilize their knowledge, training, and experience, as well as an evaluation of the totality of circumstances, when determining the appropriate force options to be utilized during controlled use of force situations.*

*The following information shall be taken into account prior to any controlled use of force:*

- *Physical health, mental health, and/or developmental disability concerns.*
- *Effective communication needs as identified by the Disability and Effective Communications System (DECS).*
- *Inmate's current demeanor (verbal aggression as opposed to physical aggression, prior history of violence, physical threat to the safety of others, etc.)*
- *History of inmate's actions during any prior cell extractions.*

The following paragraphs were previously consolidated as one paragraph and followed the paragraph re: verbal warnings. It now precedes the verbal warning paragraph:
All controlled use of force shall ~~include~~ *be preceded by* a cool down period of reasonable length to allow the inmate an opportunity to comply with staff orders. *During the cool down period,*

*clinical intervention by a licensed practitioner shall be attempted, regardless of the mental health status of the inmate.* The length of the cool down period can vary depending upon the circumstances. *In situations involving participants in the mental health program, Incident Commanders, on-site Managers, and licensed health care practitioner shall discuss concerns that may affect the length of the cool down period.*

The First of Second Level Manager, or the AOD, shall determine the length of the cool down period and communicate this to the ~~use of force team~~ *Incident Commander*. The Incident Commander shall document the start time and duration of the cool down period on the CDCR 837-A/A1.

### 51020.12.1 - Controlled Use of Force-Video Recording Requirements (Page 8 of 21)
In the first paragraph, an additional sentence was added to the end:
*Prior to initiating video recording, the Incident Commander shall ensure the staff member operating the camera is familiar with the operation of the camera, and the expectations of the camera operator while recording the introductions and extraction in accordance with 51020.12.1 Controlled Uses of Force-Video Recording Requirements.*

In the fourth paragraph re: extraction of team inmates, an additional sentence was added to the end:
*The camera operator(s) will be positioned as close as possible to the immediate area to record as much of the incident as possible, yet at a sufficient distance so as to ensure no interference with the extraction team or jeopardy to their own safety.*

In the seventh paragraph re: Incident Commander identification of inmate, the following was added to the end:
*The circumstances shall include a summary of the events leading up to the controlled use of force and what efforts have been made toward mitigation, to include the duration of the cooling off period, as well as custody, supervisory, medical, and mental health intervention, as applicable. The Incident Commander shall consider factors including the inmate's demeanor, (verbal or physical aggression / passive vs. active resistance) history of violence/cell extractions, safety of others, possession of a weapon, physical design of the area where the inmate is contained, barricades, use of barriers or a personal barrier (cloth of plastic placed about the inmates face and head), and apparent mental state when determining what force options shall be used and the order in which they will be applied. The Incident Commander shall summarize this when stating the intended use of force.*

The following modifications were made through the end of the section:
*The First or Second Level Manager/AOD shall identify themselves on camera and confirm they are authorizing the controlled use of force, including the force options as stated by the*

*Incident Commander. The First or Second Level Manager/AOD shall also ensure the video introduction includes all required information.*

*The licensed health care practitioner shall identify themselves on camera and indicate if the inmate's medical file was reviewed for medical contraindications to the use of chemical agents and if the inmate has any known disabilities that will require any accommodation during the controlled use of force.*

*The licensed health care practitioner who attempts clinical intervention shall identify themselves on camera and provide a detailed timeline of their efforts made to verbally counsel the inmate and persuade the inmate to voluntarily come out of the area without force. This narrative shall include a description of the inmate's reaction. The actual clinical intervention shall not be video recorded.*

The Response Supervisor *and* members of the controlled use of force team, ~~health care staff and First/Second Level Manager~~ shall identify themselves on camera *and state their roles in the controlled use of force*.

*Following the introduction*, the camera operator shall continue filming *enroute* to the scene of the proposed controlled use of force and record the events. *Prior to the application of force, the camera operator should videotape the interior of the cell/area and the inmate's actions.*

*Periodically, after the introductions of chemical agents or use of a barricade removal device, the camera operator should again video record the inmate and the interior of the cell/area.*

If the video recording is interrupted for any reason once the incident/extraction has begun, the camera operator will give an explanation verbally ~~while~~ *of the interruption once* recording *has resumed*. The entire incident must be video recorded in one segment or scene. The video recording shall continue as long as the inmate is resistive of staff or combative.

Two paragraphs in the initial policy were consolidated into one as follows:
*Once the inmate has been extracted,* video recording shall continue as *the licensed* health care ~~staff~~ *practitioner* conducts an initial ~~evaluation~~ *medical assessment* of the inmate, ~~but shall stop while the inmate is treated~~. If chemical agents were used and the inmate is allowed to decontaminate, ensure the decontamination is filmed.

The following was added to the last paragraph:
The Incident Commander shall determine when the incident has concluded *and videotaping shall end. This is typically when the inmate is placed in a holding cell/area or re-housed.*


### 51020.12.2 Controlled Use of Force Involving the Seriously Mentally Ill (Page 9 of 21)
The following was added to the first paragraph:

When inmates are housed in departmental hospitals, infirmaries, Correctional Treatment Centers (CTC), Enhanced Outpatient Program Units (EOP), or Psychiatric Services Units (PSU), or have an EOP level of care designation, *or any inmate who is acting in a bizarre, unusual, uncharacteristic manner,* the controlled use of force shall occur as follows:

Designation of health care practitioner was modified to:
A licensed health care practitioner designated by the ~~Health Care Manager~~ *Chief Executive Officer (CEO)* shall be consulted prior to the use of chemical agents (see Chemical Agents Restrictions).


### 51020.12.3 - Extractions (Page 9 of 21)
The following two extraction equipment were modified:

- Riot helmet with protective face shield, protective vest, ~~breathing mask~~ *respirator*, elbow and shin protectors, gloves, and bloodborne pathogen protective suit.
- ~~Short~~ *Expandable* baton(s), handcuffs, and leg restraints.

The following paragraphs were added prior to paragraph re: placement on stomach:
*The Incident Commander will ensure the Response Supervisor and extraction team members clearly understand their role, appropriate signals, and are familiar with the departmental use of force policy.*

*If time permits prior the actual extraction, a mock extraction may be conducted in a vacated area with participating staff in order to ensure that custodial staff are familiar with their roles during the extraction. Several simulated operations will ensure smoothness, and timing during the actual extraction.*

*Prior to the extraction, the Incident Commander will communicate with the officer responsible/ assigned to open/close cell doors and establish verbal/non-verbal signals specific to the controlled use of force.*

*The Incident Commander shall ensure the control officer understands that only the Incident Commander shall authorize the opening and closing of affected doors.*

*For the safety of staff, prior to being removed from a cell, it is preferred that the inmate submit to a (visual) search. The inmate should remove all clothing, except their underwear, and move back far enough from the cell door to allow a visual inspection. The inmate shall be visually inspected from head to toe, front and back. The inmate will run their fingers around the inside waistband of their underwear. The inmate shall be allowed to retain their underwear while being restrained and removed from the cell.*

*If the inmate refuses to cooperate with the (visual) search, but is willing to submit to restraints, the inmate shall be placed in restraints and removed from the cell. The application of restraints shall not be delayed due to the inmate's refusal to submit to being searched, or to have the inmate remove any clothing. Upon removal from the cell, the inmate should be subjected to search for staff safety.*

### 51020.12.4 - Health Care Issues (Page 10 of 21)
The word "psychologist" was added to the third paragraph to read:
Only departmentally approved four/five point restraints shall be applied by authorized medical/health staff in an infirmary, CTC, or other CDCR medical facility upon the authorization of a physician, *psychologist,* or psychiatrist.

### 51020.14 - Use of Less Lethal Weapons (Page 11 of 21)
The following was added to the end of the paragraph:
*It is recommended a Response Supervisory be assigned the duties of discharging less lethal impact munitions during controlled use of force-cell extraction.*

### 51020.14.2 - Use of Less Lethal Weapons During Controlled Uses of Force (Page 11 of 21)
The section has been modified as follows:
The First or Second Level Manager may authorize the use of less lethal impact munitions during controlled use of force situations in a cell, for inmates not identified as ~~mentally disordered~~ *a participant in the Mental Health Services Delivery System (MHSDS)*, if the inmate is barricaded, or if circumstances are serious in nature calling for extreme measures to protect staff or inmates (the inmate is armed with a deadly weapon. *If the Incident Commander determines the inmate is acting in a bizarre, unusual, uncharacteristic manner, but is not identified as a participant in the MHSDS, a licensed health care practitioner shall be consulted prior to the use of less lethal impact munitions.*

### 51020.15 - Chemical Agents (Page 11 of 21)
The following paragraphs were added:

*During a controlled use of force - cell extraction, only the chemical agents products listed may be deployed. Any future additional products authorized by the Office of Correctional sAfety, Emergency Operations Unit, and approved by the Director, Division of Adult Institutions must be specifically authorized for controlled use of force - cell extraction in order to be utilized during an extraction.*

- *MK-9 OC Vapor - limited to a single burst of no more than 3 seconds in duration per application with a maximum of two applications.*
- *MK-9 OC Fogger - limited to a single burst of no more than 5 seconds in duration per application with a maximum of four applications.*
- *MK-9 OC Foam - limited to a single burst of no more than 5 seconds in duration per application with a maximum of four applications.*
- *OC Vapor Grenade - limited to 2 devices.*
- *OC Flameless Expulsion Grenade - limited to 2 devices*
- *X-10 Barrier Removal Device - limited to a single burst of no more than 5 seconds in duration per application with a maximum of four applications. Chemical agents may only be deployed from the X-10 during the removal of a barricade. The X-10 is not to be used solely as a delivery device for chemical agents.*

*Regardless of which chemical gents are deployed, or in what combination, no more than a total of four (4) chemical agent applications shall be administered. In exigent or unusual circumstances, it may be necessary to exceed the 4 allowed applications. In this event, the Incident Commander shall consult with the First or Second Level Manager/AOD, who can authorize additional chemical agent applications. For each additional chemical agent application authorized, the on-site Manager shall verbalize to the camera, the chemical agent application being authorized and the rationale for the decision.*

*Upon arrival at the extraction site, and prior to the use of any chemical agent, the Incident Commander and Response Supervisor shall consider the totality of circumstances to determine the best course of action. This evaluation shall include, but is not limited to, the physical design and location of cell with regard to cross contamination (i.e., OHU/CTC, open cell front, etc.) when choosing whether to disperse OC or the type of OC. The size of the space shall also be considered when determining how much, and what type of chemical agent shall initially be applied. It may not be necessary to use the allowed 3 second maximum of a chemical agent., or an expulsion grenade, if the inmate is in a single person shower as opposed to a larger space such as cell or holding cell.*

- *Once the evaluation has been completed, a determination can be made regarding the most effective and safe force option to be utilized, e.g., .large open area versus contained cell; expulsion grenade versus fogger product. If the inmate is using a personal barrier to defeat the use of chemical agents, it may be necessary to directly strike the personal barrier with liquid chemical agent products in order to saturate it.*

- *If the inmate is a participant in the mental health program and has not responded to staff for an extended period of time, including during the cool down period, laying motionless on bunk or floor, sitting on edge of bunk head down, no eye contact, and it appears that the inmate does not present in imminent physical threat, additional consideration and evaluation should occur before the use of chemical agents is*

*authorized. This additional evaluation should include input from the assigned housing unit staff and licensed health care practitioners regarding the inmates recent behavior, file review for recent history of violence, previous cell extractions, etc. The rationale shall be explained on camera by the on-site Manager.*

- *A decision to use chemical agents for the extraction should be based on more than passive resistance to placement in restraints or refusal to follow orders.*

*It is recommended a Response Supervisor is assigned the duties of administering chemical agents during controlled use of force-cell extraction. Prior to each use of a chemical agent, the staff member applying it shall display the device in view of the camera. The Incident Commander or Response Supervisor shall state out loud for the camera the time of application and the type of device being applied.*

*The amount of time needed for the chemical agents to become effective will vary based upon the delivery method, individual tolerance levels, and environment. A minimum of (3) three minutes shall lapse between each application of chemical agents before additional chemical agents may be applied.*

*After each application of a chemical agent, the Incident Commander and Response Supervisor shall assess the effectiveness or lack thereof. In the event chemical agents have not proven effective, the Incident Commander and Response Supervisor should carefully weigh the continued use of chemical agents versus use of physical force to complete the extraction. If a decision is made to apply additional chemical agents, the Incident Commander shall verbalize to the camera the rationale for the decision. Example: a vapor grenade was deployed, it has been three minutes, the inmate is not showing any visible reaction, is using a personal barrier, and is shouting. We will now attempt to strike the personal barrier with a fogger product.*


### 5120.15.1 - Chemical Agents Restrictions (Page 13 of 21)
The second paragraph has been revised to read:
In institutions/facilities where inmates are housed:

- *During a controlled use of force, CN/CS, muzzle blast OC, and the MK-46 projector* shall not be administered in~~to a~~ *one/two person* celled *housing, single person expanded metal holding cells, showers, or any other small space* ~~without the approval of the Institution Head or Chief Deputy Warden~~.

- ~~When~~ *During a controlled use of force, CN/CS, muzzle blast OC, and* the MK-46 projector *authorized for use in larger areas such as rotundas, small management yards, large holding cells, exercise yards, etc.* ~~is used in cells it should be used with the wand~~

> ~~applicator attachment. If it is necessary to use the MK-46 projector in cells without the wand applicator, care shall be taken to avoid soft-tissue damage to the inmate.~~

The third paragraph was revised from "Health Care Manager" to "Chief Executive Officer" to read:
For controlled use of force incidents involving inmates housed in departmental hospitals, infirmaries, CTCs, EOPs, and PSUs, or who have an EOP level of care designation, a licensed health care employee designated by the ~~Health Care Manager~~ *Chief Executive Officer (CEO)* shall be consulted prior to the use of chemical agents.

The second bullet point in paragraph 3 has been revised to read:
If, during the consultation, the licensed health care practitioners express concerns regarding the use of chemical agents, the First/Second Level Manager authorizing the use of force and *licensed* health care practitioners shall discuss the matter to determine the best course of action. *The licensed* health care ~~staff~~ *practitioner* shall consider in providing their consultation, the potential for injury during the use of physical force, as well as the medical implication of exposure to chemical agents. After the consultation, the decision to use chemical agents or physical force shall rest with the First of Second Level Manager authorizing the use of force.

An additional bullet point was added to paragraph 3 to read:
*If a decision is made to use chemical agents in spite of any contraindications, the decision shall be articulated and written justification provided. The written justification must include specific determinations and considerations to justify the need to over-ride the contraindications, beyond the statement of safety to staff or security of the institution. Consideration shall be given to the inmate's mental health status and current mental state.*

The following was added to the end of the previous bullet point 3 to paragraph 3 re: going forward with use of chemical agents and becomes a new paragraph following the above bullet points:
*The Incident Commander and First or Second Line Manager/AOD shall ensure adequate health care staff are present. The Incident Commander shall query the licensed health care practitioner and receive confirmation appropriate medical supplies and equipment are at the extraction site to treat a medical emergency prior to commencing the controlled use of force.*

The bullet point re: Incident Commander documenting the results has been revised to read:
The Incident Commander shall document the results of the consultation and the basis for the First/Second Level Manager's final decision in the Crime/Incident Report (CDCR 837-A/A1) ~~and on a General Chrono (CDC 128B) for the health care record~~.

### 51020.15.2 - Decontamination from Chemical Agents - General (Page 14 of 21)
Paragraph 6 has been revised to read:

Inmates exposed to chemical agents ~~other than OC~~ shall be allowed to change their clothes as soon as practical.

The following paragraph (paragraph 7 in old version) has been deleted in its entirety:
~~If CN/CS is used in a cell, the inmate must be allowed to exit the cell for exposure to fresh air, take a shower, and to allow the cell to be decontaminated by vacuum and provided clean linen and clothing. If the inmate refuses to come out, force may be used as necessary to remove him from the cell to ensure the inmate is decontaminated in fresh air and the cell is cleaned.~~

- The last sentence of the last paragraph has been revised to read:
The Incident Commander in conjunction with the *licensed* health care ~~staff~~ *practitioner* shall evaluate the situation and utilize an appropriate decontamination method.


### 51020.15.2 - Decontamination from Chemical Agents - General (Page 14 of 21)
First paragraph has been revised to read:
Decontamination from OC may be accomplished by exposing the individual to fresh moving air, or flushing the affected body area with cool water, e.g., shower, sink water, or wet cloths *and providing clean clothing*.

The second paragraph has been revised to read:
Force shall not be used to decontaminate inmates/parolees from the effects of OC unless a serious threat to the inmate's health is present and *a licensed* health care ~~staff~~ *practitioner* determines the inmate must be decontaminated.


### 51020.15.4 - In-Cell Decontamination from Oleoresin Capsicum (Page 14 of 21)
2nd sentence in the first paragraph added the word "security" to read:
An example would be an inmate who is extremely agitated, or an inmate on whom force was used to insert him/her into the cell or secure the food*/security* port.

The fourth through xxx paragraph has been revised to read:
*A licensed* health care ~~staff~~ *practitioner* shall advise the inmate how to self-decontaminate in his cell using water from the sink. *A licensed* health care ~~staff~~ *practitioner* shall monitor the inmate approximately every 15 minutes for a period of not less than 45 minutes starting from the last application of chemical agent.

*A licensed* health care ~~staff~~ *practitioner* shall document the fact the inmate was given instructions and the approximate times of the 15 minute observations on a CDC 7219, Medical Report of Injury or Unusual Observations.

### 51020.17.1 - Involved Staff-Reporting Requirements (Page 15 of 21)
The first paragraph in the old version has been revised into multiple paragraphs.
Written reports regarding staff uses force shall be documented on a CDCR 837-C. *This requirement includes a First or Second Level Manager/AOD authorizing the use of controlled force.*

Reports ~~must~~ *shall* be prepared by ~~the~~ *any* employee ~~participants or witnesses~~ *who uses or observes the use of force. The reports shall be submitted to,* and reviewed by the ~~Incident~~ *Response* Supervisor prior to the employee being relieved from duty. Staff shall not collaborate with each other in the preparation of reports.

The seventh paragraph (originally sixth bullet point) has been revised to read:
If chemical agents were used, identify the type of projector used, and from what distance, e.g., a burst of OC from an MK-~~3~~*9*, from six feet.

The following last paragraph was deleted in the revised version:
~~Reports should not normally contain cliches, buzzwords, slang terms, or profanity except as a direct quote.~~

### 51020.17.3 - Video Records Made After Uses of Force That Cause Serious Bodily Injury, or Great Bodily Injury, or Result in Allegations of Unnecessary or Excessive Force (Page 16 of 21)
The second paragraph in the original version has revised and split into two paragraphs to read:
Any visible or alleged injuries shall be video recorded. The video recording shall be conducted by ~~persons~~ *custodial supervisors (sergeants or lieutenants) who did* not ~~involved~~ *use, or observe the force used,* in the incident.

The video recording should be made ~~within~~ *as soon as possible, but no later than* 48 hours of discovery of the injury or allegation.

### 51020.17.5 - Response Supervisor-Additional Reporting Requirements for Deadly Force (Page 16 of 21)
The last paragraph has been revised to read:
As soon after the incident as is practical, the response supervisor must also initiate ~~Employee Post Trauma Program (EPTP)~~ *Peer Support Program (PSP)* protocols as delineated in DOM Section ~~31020.6.4~~ *31040.3.2*.

### 51020.17.6 - Health Care Staff Use of Force - Reporting Requirements (Page 16 of 21)
The first bullet point has been revised to read:
Observes an ~~immediate (not controlled)~~ use of force.

The last paragraph has been revised to read:
In addition to the above requirements, *licensed* health care ~~Services~~ practitioners shall be responsible for providing custody staff and the Use of Force Coordinator, with notification and updated information in the event that the aftercare treatment process reveals new facts about the severity of a force related injury.

### 51020.17.7 - Incident Commander - Reporting Requirements (Page 17 of 21)
The first paragraph has been revised to read:
It is the responsibility of the Incident Commander to notify the Office of Internal Affairs (OIA) and the ~~Bureau of Independent Review (BIR)~~ *Office of Inspector General (OIG)* as soon as possible, but no later than one hour from the time the incident is discovered, of any use of deadly force and every death, great bodily injury or serious bodily injury that could have been caused by a staff use of force. Depending on the specific MOU and the nature of the incident, a call to the county sheriff or police department may also occur.

The sixth paragraph has been revised to read:
In controlled use of force cases in institutions/facilities involving involuntary medication, placement into four/five point restraints, or admission into an infirmary, CTC or hospital, the Incident Commander shall include in the CDCR 837-A/A1, the name and title of the on duty *licensed* health care ~~Services staff~~ *practitioner* that verified the appropriate medical authorization existed prior to the use of force.

The ninth paragraph has been revised to read:
Ensure the initial incident package is submitted to the Warden's Office, the Use of Force Coordinator, and, if requested, to the OIA and ~~BIR~~ *OIG*.

### 51020.17.8 - First/Second Level Manager - Reporting Requirements for Controlled Uses of Force (Page 18 of 21)
The entire section has been revised to read:
The First of Second Level Manager authorizing the use of controlled force is required to be present during the use of force. After the use of controlled force, the First/Second Level Manager shall complete a *CDCR Form 3037* Manager's/AOD Report of Controlled Use of Force. This form shall be included as part of the incident package ~~and fulfills the reporting responsibilities of the First/Second Level Manager who authorized the controlled use of force incident~~.

In controlled use of force cases when *licensed* health care ~~Services~~ *practitioner* clinical staff expresses concerns regarding the use of chemical agents, and the decision to go forward is made by the First/Second Level Manager/*AOD*, the First/Second Level Manager/*AOD* shall document the results of the consultation and the basis for his/her final decision on a General Chrono (CDC 128B) for the health care record and the incident package.

### 51020.18.2 - Allegations of Excessive or Unnecessary Force - Incident Commander and Appeals Coordinator Reporting Requirements (Page 18 of 21)
Second paragraph was revised to read:
Ensure *a licensed* health care ~~staff~~ *practitioner* ~~have~~ *has* evaluated the inmate and a medical report has been completed.

The sixth paragraph was revised to read:
If the inmate has suffered serious bodily injury or great bodily injury, the Incident Commander shall notify the OIA and the ~~BIR~~ *OIG* as soon as possible, but no later than one hour from the time the incident is discovered. In instances where the allegation was submitted through the inmate appeal process and there is no corresponding incident report, the Appeals Coordinator shall, in consultation with the hiring authority, notify the OIA and ~~BIR~~ *OIG*.

### 51020.19.4 - Use of Force Coordinator Responsibility (Page 19 of 21)
The first responsibility of the Coordinator has been revised to read:
The Use of Force Coordinator shall regulatory schedule IERC meetings. The ~~BIR~~ *OIG* shall be provided reasonable notice and copies of the complete incident packages to be reviewed in advance of the meetings.

### 51020.19.5 - Institution Executive Review Committee Monitoring Requirements (Page 20 of 21)
The other designated supervisors paragraph was revised to read:
Other designated supervisors and rank and file staff may also attend, as determined by the appointing authority. A representative of the ~~BIR~~ *OIG* may also attend and monitor IERC meetings.

The last sentence re: IERC recommendation for changes to procedures of training was revised to read:
However, only IERC members in supervisory o management roles (including the Use of Force Coordinator) and the ~~BIR~~ *OIG* may participate in discussions involving the initiation of corrective or disciplinary action.

### 51020.23 - Revisions - Use of Force Joint Use Committee (JUC) (Page 21 of 21)

One of the bullet points was revised to read:
The Chief of ~~BIR~~ *OIG* or designee, and