KAMALA D. HARRIS
Attorney General of California
JAY C. RUSSELL
PATRICK R. MCKINNEY
Supervising Deputy Attorneys General
DEBBIE VOROUS, State Bar No. 166884
ELISE OWENS THORN, State Bar No. 145931
Deputy Attorneys General
 1300 I Street, Suite 125
 P.O. Box 944255
 Sacramento, CA 94244-2550
 Telephone: (916) 324-5345
 Fax: (916) 324-5205
 E-mail: Debbie.Vorous@doj.ca.gov

*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **RALPH COLEMAN, et al.,**<br><br>                              Plaintiffs,<br><br>     v.<br><br>**EDMUND G. BROWN JR., et al.,**<br><br>                              Defendants. | 2:90-cv-00520 LKK DAD PC<br><br>**DEFENDANTS' CORRECTED REPLY IN SUPPORT OF MOTION REGARDING LONG-RANGE MENTAL HEALTH BED PLAN AND UPDATE TO COURT** |

## I.     INTRODUCTION

As discussed in Defendants' motion, Defendants have fully activated all of the court-ordered mental health bed projects, except for the new Stockton and Dewitt Nelson facilities. In total, Defendants have fully activated nearly 1,300 new or converted permanent inpatient and outpatient beds. Defendants are also completing office and treatment space projects at California State Prison-Lancaster and the Central California Women's Facility. While Defendants finish those projects, the inmates who will benefit from them continue to receive appropriate mental

1

Defs.' Corrected Reply In Support of Bed Plan Motion (2:90-cv-00520 LKK DAD PC)

1  health treatment.  For these reasons, there is no legal basis for further orders concerning these
2  projects.
3      Defendants have also substantially activated the California Health Care Facility.  The
4  Department of State Hospitals has fully activated twelve units for intermediate and acute care
5  patients, or 355 of the 514 beds (or 69%) at the facility.  DSH expects to open two additional
6  units on March 24, 2014, leaving only three remaining units to activate.  Accordingly, Defendants
7  have requested modification of the 2013 deadline for full activation.  Defendants seek this relief
8  due to unanticipated challenges in hiring qualified psychiatrists, despite significant recruitment
9  efforts.  Although it has taken longer than Defendants estimated in 2010 to fully activate all of the
10 units, Defendants have adequate capacity to meet the needs of the *Coleman* class members who
11 require inpatient care.  Defendants do not seek an "open-ended" extension as Plaintiffs claim, but
12 instead have agreed to report to the Court every 60 days until the facility is fully activated.
13 Defendants respectfully request that the Court grant this request.
14     Although ordered to directly respond to the motion only, Plaintiffs have improperly filed
15 another closing brief related to their motions on inpatient care and segregated housing,[1] together
16 with a defective motion for affirmative relief.  Plaintiffs' response exceeds the scope and
17 substance of Defendants' motion and update to the Court.  Plaintiffs' procedurally improper
18 requests for affirmative relief should be denied.
19     In addition to being procedurally defective, Plaintiffs' new motion is not well-taken.  On
20 February 10, 2014, after Plaintiffs filed their response/motion, the *Coleman/Plata* Three-Judge
21 Court extended the deadline to achieve the court-ordered reduction in the in-state adult
22 institutions to 137.5% of design bed capacity to February 28, 2016.  (ECF 5060 at 2.)  Over the
23 next two years, Defendants will reduce the population by several thousand inmates to meet the
24 final benchmark.  Defendants have been ordered to implement a number of measures designed to
25 reduce the prison population, many of which will impact *Coleman* class members.  (*Id.* at 2-3.)

---

[1] Plaintiffs filed a third closing brief on their segregated housing motion on the same day they responded to Defendants' bed plan motion.  (ECF 5051.)  On February 20, 2014, the Court ordered Defendants to respond by March 7, 2013.  (ECF 5070.)

2

The Three-Judge Court's order recognizes that Defendants are working to complete the "necessary steps toward achieving a durable solution." (*Id.* at 3.) The Court should refrain from entertaining Plaintiffs' motion to revisit the bed plan, and instead permit Defendants to concentrate their efforts on implementing the measures necessary to achieve the required population reduction.

## II. NO FURTHER RELIEF IS NECESSARY FOR THE NEARLY COMPLETE TREATMENT AND OFFICE SPACE PROJECTS AT CSP-LANCASTER AND THE CENTRAL CALIFORNIA WOMEN'S FACILITY

### A. The Treatment and Office Space Project at California State Prison-Lancaster Will Be Completed Next Month.

The new treatment and office space project at California State Prison-Lancaster to service 100 existing Enhanced Outpatient Program inmates housed in administrative segregation is scheduled for full activation next month. (ECF 4984 at 7:14-15.) As Defendants explained in the motion, further relief is unnecessary because the Court previously approved the change in scope, and Defendants informed the Court of the new activation dates in May 2013. Plaintiffs' disagreement with Defendants' understanding of the history for this project provides no support for their request that the Court find Defendants violated prior court orders. (ECF 5052 at 19:14-16.) Ironically, Plaintiffs waited to raise this issue, despite being aware of the scope changes in 2012 and the new activation dates in June 2013, if not earlier. If Plaintiffs believed that Defendants were violating a Court order regarding this project, they should have raised this issue before now. Nonetheless, to the extent the Court finds that further relief is required, Defendants respectfully request that the Court extend the deadline for full activation of the project until March 31, 2014.

### B. The Treatment and Office Space Project at Central California Women's Facility Will Be Completed in June 2015.

As explained in the motion, Defendants elected to move forward with building a new treatment and office space project for the existing female Enhanced Outpatient Program population despite having been granted relief from a prior order to increase female bed capacity

3

Defs.' Corrected Reply In Support of Bed Plan Motion (2:90-cv-00520 LKK DAD PC)

by 70 beds. (ECF 4984 at 7:21-9:9.)[2]  Similar to the California State Prison-Lancaster project, Plaintiffs apparently now disagree with Defendants' summary of the project's history and again demand that the Court find that Defendants have violated prior court orders. (ECF 5052 at 19:14-15.)

There is no basis for Plaintiffs' request for "Defendants to submit a plan, within thirty days, as to how they intend to provide adequate EOP care for female prisoners at CCWF . . . and to certify that they are taking all available steps to accelerate the project's completion date." (*Id.* at 19:17-22.)  None of Plaintiffs' claims about this facility are accurate.  Plaintiffs first allege overcrowding. (*Id.* at 15:14-16.)  But the Enhanced Outpatient Program for the general population is not overcrowded: as of February 14, 2014, the program had a census of 44, or 81% of bed capacity. (Burleson Decl., ¶ 4.)  Second, Plaintiffs fail to acknowledge that, contrary to their outdated declarations, the inmates in the program have moved from Unit 503 (the unit Plaintiffs identify as having a painted red line to delineate treatment and office space) to a new dormitory housing unit (Unit 501). (*Id.*)  Third, Plaintiffs fail to explain that: (1) both the Special Master's expert and Plaintiffs' counsel toured the new unit, (2) the Special Master's expert approved the move, and (3) that move was completed in September 2013. (*Id.*)  Fourth, inmates in the Enhanced Outpatient Program at the California Women's Facility receive treatment that exceeds Program Guide standards—on average, Enhanced Outpatient Program inmates over the last quarter of 2013 were offered 12.6 hours per week of structured therapeutic treatment activity with 90% of all inmates having scheduled more than 10 hours. (*Id.*)  Between October 1, 2013 and December 31, 2013, there were 10,248 appointments scheduled for this population, with only 212 canceled appointments. (*Id.*)

Contrary to Plaintiffs' objections and representations, Enhanced Outpatient Program inmates receive appropriate, quality mental health care and are provided sufficient treatment and office space.  As Chris Meyer previously testified, CDCR is doing everything it can to accelerate

---

[2] Although Plaintiffs argue that Defendants' bed plans must be based on projections for mental health *beds,* they fail to explain how the projects eliminating mental health beds remain part of the State's "bed" plan.

4

this project. (ECF 4624 ¶¶ 3-5 & 9.) Plaintiffs have failed to meet their burden under the Prison Litigation Reform Act that further orders are necessary or justified. Nonetheless, to the extent the Court finds that further relief is required, Defendants respectfully request that the Court extend the deadline for full activation for the project until June 2015.

### III. THE COURT SHOULD GRANT DEFENDANTS' REQUEST FOR RELIEF CONCERNING THE CALIFORNIA HEALTH CARE FACILITY

Defendants have requested more time to activate California Health Care Facility's remaining five units due to unexpected recruiting challenges, and have committed to provide updates to the Court every 60 days until the facility is fully activated . (ECF 4984 at 10:22-27.) Defendants' request is appropriate and should be granted for several reasons. First, the Department of State Hospitals continues to recruit and hire additional psychiatrists. With two new civil service psychiatrists starting in March, DSH expects to open two additional thirty-bed units on March 24, 2014, leaving only three remaining units to activate. (Price Decl. ¶¶ 3-4.) The State is also addressing the requisite salaries and benefits required to be competitive with private sector and other public sector agencies. (*Id.,* ¶ 5; Reporter's Transcript Re: Evidentiary Hearing (Tr.) 3450:24-3451:1 [T. Belavich].)

Second, as Plaintiffs acknowledge, DSH continues to operate inpatient beds at the Salinas Valley and Vacaville Psychiatric Programs for high-custody inmates needing intermediate and acute care pending full activation of the California Health Care Facility. (ECF 5052 at 12; Price Decl. ¶ 6.) Class members who need inpatient care receive it, whether in a bed at the Salinas Valley or Vacaville Psychiatric Programs, or at the new California Health Care Facility. (*Id.*) There are no facts to support Plaintiffs' claim that inmate-patients are being denied inpatient care. (*See, e.g.,* ECF 5052 at 12:18-22.)[3] Moreover, this Court has already ordered Defendants not to

---

[3] Plaintiffs further complain that Defendants have not provided them with enough information regarding alternative treatment. (*Id.* at 12:22-27.) For example, Plaintiffs criticize Defendants for not providing information regarding the Dewitt Nelson project, even though the Court's December order did not address it. (*Id.* at 13:10-17.) Defendants acknowledge that after they filed their January 21, 2014 update to the Court the Receiver filed his Twenty-Fifth Report identifying serious concerns with the California Health Care Facility and his ability to activate the Dewitt Nelson project. (ECF 5036.) Defendants are working closely with the Receiver to correct the deficiencies identified at the California Health Care Facility and to address any potential
(continued…)

5

Defs.' Corrected Reply In Support of Bed Plan Motion (2:90-cv-00520 LKK DAD PC)

decommission a currently operating temporary mental health program unless there is adequate alternate capacity to accommodate future need in that level of care. (ECF 4199 ¶ 3.a.) The below chart reflects DSH current capacity (both permanent and temporary), census, and bed availability for male high-custody inmates needing intermediate care and for acute inmates as of February 18, 2014:

| DSH Facility | Setting | Capacity | Filled | Holds | Under Repair | Available |
|---|---|---|---|---|---|---|
| **Stockton Acute**[4] | | | | | | |
| | Single Cell | 55 | 34 | 4 | | 17 |
| **Vacaville Acute** | | | | | | |
| | Single Cell | 248 | 206 | 8 | | 34 |
| | **Total Acute** | **303** | **240** | **12** | | **51** |
| | | | | | | |
| **Stockton ICF**[5] | | | | | | |
| | Single Cell | 300 | 250 | 25 | 3 | 22 |
| **Salinas Valley ICF** | | | | | | |
| | Single Cell | 318 | 199 | | | 119 |
| | 4-Man Dorm | 32 | 13 | | | 19 |
| | 2-Man Dorm | 20 | 18 | | | 2 |
| **Vacaville ICF** | | | | | | |
| | Single Cell | 174 | 132 | 2 | | 40 |
| | **Total ICF High** | **844** | **612** | **27** | **3** | **202** |

(Maynard Decl. ¶ 4.)

---

(…continued)
impact to Dewitt's May 31, 2014 full activation date. (Burleson Decl. ¶ 5.)

[4] Stockton acute units include two isolation rooms per unit in the total bed capacity. The two rooms per unit are included in the available bed numbers. (Maynard Decl. ¶ 4.)

[5] Stockton Intermediate Care Facility units include two isolation rooms per unit in the total bed capacity. The two rooms per unit are included in the available bed numbers. (*Id.*)

6

Defs.' Corrected Reply In Support of Bed Plan Motion (2:90-cv-00520 LKK DAD PC)

The above chart reflects that there is more than sufficient current capacity in the system for male high-custody inmates needing an intermediate level of care: 202 available intermediate care facility beds above those currently filled by inmate-patients, and 51 acute care beds above those currently occupied.  Plaintiffs have not offered any evidence to suggest a lack of capacity pending complete activation of the new Stockton facility.

Lastly, Plaintiffs incorrectly argue that "scores of class members remain on 'pending lists' for inpatient program placement." (ECF 5052 at 12:27-13:1.)  As of February 18, 2014, there were 32 accepted referrals for intermediate care. (Maynard Decl. ¶ 5.)  Of those 32 referrals, two were pending involuntary medication hearings, and one was out to court. (*Id*.)  With respect to acute care, there were 14 accepted referrals. (*Id.*)  DSH anticipates admitting all of these currently pending referrals, excepting the inmates pending hearing or out to court, on or before February 28, 2014.  (*Id.*)[6]

There are no factual or legal grounds for further injunctive orders related to the activation of the California Health Care Facility.  The Court should reject Plaintiffs' request to identify and activate any short-term acute or intermediate beds at Atascadero or Coalinga State Hospitals given presently existing capacity.  Moreover, the Court should reject Plaintiffs' ongoing effort to revise its motion relating to inpatient care—this Court has already ordered the Special Master to monitor access to care and ordered that Defendants admit patients pending inpatient care into those beds as quickly as possible (*see* ECF 4925 ¶ 6 (ordering Defendants to admit accepted patients to Salinas Valley as quickly as bed availability permits).

////

////

////

---

[6] Plaintiffs incorrectly assert that the average pending list for APP referrals for the fourth quarter of 2013 was at its highest since the beginning of 2012. (ECF 5052 at 6:7-10.)  The existence of a "pending list" is not evidence of insufficient beds since inmates are on "pending lists" from the date of acceptance.  Similarly, comparing the number of inmates referred to ICF care at a given time is not a fair measure of timely placement and transfer following acceptance into the program.

7

## IV. PLAINTIFFS' REQUESTS FOR MULTIPLE ORDERS FOR FURTHER AFFIRMATIVE RELIEF VIOLATE THE COURT'S ORDER

Plaintiffs' February 5 response to Defendants' motion seeks multiple orders for further affirmative relief related to their segregated housing motion, inpatient motion, and Defendants' ongoing bed planning and construction efforts. (ECF 5052 at 18:27-20:14.) Plaintiffs' unnoticed motion is procedurally defective and, now that the Three-Judge Court has issued its order extending the population reduction benchmarks, unwarranted.

### A. Plaintiffs' Requests for Further Relief Are not Properly Before the Court.

Plaintiffs' response exceeds the scope and substance of Defendants' motion and update to the Court. On December 19, 2013, the court ordered Defendants to file the present motion within 30 days and ordered that Plaintiffs had "15 days thereafter to respond to the motion only." (December 19, 2013 Tr., 3752:24-3753:3.) Plaintiffs' "response" goes far afield from responding to Defendants' motion only—which was limited to the request for an extension of time to fully activate the California Health Care Facility and address the Court's concerns regarding the treatment and office space projects at California State Prison-Lancaster, Central California Women's Facility, and Salinas Valley State Prison.

Rule 7 of the Federal Rules of Civil Procedure provides that a request for a court order must be made by written motion unless made during a hearing or a trial. Plaintiffs' February 5, 2014 response clearly seeks orders from the court. Local Rule 230 provides additional requirements for the noticing and filing of motions. Plaintiffs' response does not meet any of those requirements, and should be disregarded.

### B. The Three-Judge Court's Population Reduction Order Renders Plaintiffs' Requests for Further Bed Planning Efforts Unnecessary.

In addition to the procedural defects, Plaintiffs' motion is not well-taken given the recent Three-Judge Court order. Plaintiffs base their request for multiple new bed plans on the misguided argument that "the current mental health bed need projections [Fall 2013] show that CDCR has significantly under-estimated the number of beds necessary to house and provide appropriate mental health care to the *Coleman* class, and Defendants' bed plan is based on such

8

underestimation." (ECF 5052 at 4:11-14.) The *Coleman/Plata* Three-Judge Court's February 10, 2014 order extending the deadline to achieve the court-ordered population reduction by two years (to February 28, 2016) nullifies these projections. (ECF 5060 at 2.) Defendants are required to implement measures to reduce the current population by approximately 4,000 inmates, reductions that will directly impact *Coleman* class members. (*Id.* at 2-3; ECF 5068 [in-state population as of 2/12/14 totaled 117,686 inmates].) The revised population reduction schedule was ordered by the Court in recognition of the fact that Defendants are working to complete the "necessary steps toward achieving a durable solution." (ECF 5061 at 3.) The Court should therefore refrain from entertaining this motion or issuing any further orders at this time that would interfere with or undermine Defendants' efforts, and permit Defendants to concentrate on implementing the measures necessary to achieve the required population reduction. Further, any order to demonstrate how Defendants will meet mental health bed needs based on outdated population projections would serve no meaningful purpose.

    **C.**    **Defendants Have Adequate Capacity to Serve the Mental Health Needs of the Population.**

If the Court entertains Plaintiffs' defective motion, it should be denied on the merits for the following three reasons.

    **1. Defendants Have Adequately Assessed the Mental Health Bed Need.**

Defendants have not underestimated the mental health bed need. (Burleson Decl. ¶ 6.) Defendants continue to fully implement their 2012 bed plan and the Blueprint, including activating the California Health Care Facility and DeWitt Nelson (which will add 425 Enhanced Outpatient Program beds), and converting temporary beds back to Enhanced Outpatient and general population beds. (*Id.*) When these plans are fully realized, the net number of mental health beds for the male population will exceed the need estimated in the Spring 2012 projections used in Defendants' 2012 bed plan by over 500 beds. (*Id.*) The number of mental health beds for the female population will exceed the projections by 91. (*Id.*)

Moreover, the Spring 2012 mental health bed need projections do not "substantially underestimate actual need," as Plaintiffs' allege. (ECF 5052 at 4:26-5:2.) Pending full activation

9

of the current bed plan, the current capacity is sufficient to meet the need. (Burleson Decl. ¶ 7.) Setting aside the DSH inpatient beds already discussed, the following chart outlines the current population and capacity for the male population:

| Mental Health Program | Current [Temporary and Permanent] | Census as of February 14, 2014 |
|---|---|---|
| EOP-GP | 3,785 | 3,724[7] |
| EOP-ASU | 523 | 518 |
| PSU | 512 | 339 |
| MHCB | 443 | 339 (as of 2/17/14) |

(Burleson Decl. ¶ 7.)

The following chart outlines the current population and capacity for the female population:

| Mental Health Program | Current [Temporary and Permanent] | Census as of February 14, 2014 |
|---|---|---|
| EOP-GP | 129 | 120 |
| EOP-ASU | 20 | 12 |
| PSU | 20 | 14 |
| MHCB | 22 | 11 (as of 2/17/14) |

(Burleson Decl. ¶ 7.)

Relying on Defendants' Fall 2013 Bed Need Study no longer makes sense given the Three-Judge Court's order. (*See,* ECF 5027-1 at 4 & 8 [Bien Decl., Ex 3] (describing study's reliance on 2013 projections of overall institution population).) A more appropriate measure would acknowledge the population reductions that will take place by 2016. As of February 12, 2014, 117,686 inmates were housed in the State's 34 adult institutions, which amounts to 144.3% of

---

[7] Plaintiffs cite to data from November 2013 for the proposition that the Enhanced Outpatient Program population (4,686) is 7% higher than the current capacity. (ECF 5052 at 10:10-11 [Bien Decl., ECF 5027-1 at 85.]) What Plaintiffs neglect to note is that this number includes inmates in non-Enhanced Outpatient Programs pending transfer to such a program, inmates in Reception Centers pending transfer to a program, and inmates housed at the California Health Care Facility for medical care.

10

Defs.' Corrected Reply In Support of Bed Plan Motion (2:90-cv-00520 LKK DAD PC)

design bed capacity. (ECF 5068.) With the activation of Stockton and Dewitt, the population in the State's 34 adult institutions and Dewitt is not expected to exceed approximately 113,000 by February 2016. (Burleson Decl. ¶ 8.)

### 2. CDCR Has More than Adequate Mental Health Crisis Bed Capacity.

Plaintiffs' ancillary request for more Mental Health Crisis Beds is based on the misguided premise that "inadequate access to MHCB Care persists." (ECF 5052 at 8:2.) Plaintiffs rely on outdated information and misrepresentation of data related to Defendants' approved use of alternative housing. Defendants have excess Mental Health Crisis Bed capacity. (Burleson Decl. ¶ 9.) In fact, even when Defendants decommission the temporary beds at the California Institution for Men (34 beds) and California State Prison, Sacramento (20), they will have an excess of 50 male beds based on current census numbers. (*Id.*) And Plaintiffs' assertion that not all 98 Mental Health Crisis Beds at California Health Care Facility are activated is similarly incorrect. (*Id.* ¶ 10.)

Plaintiffs demand that Defendants stop using alternative crisis bed housing, arguing that it proves Defendants do not have sufficient Mental Health Crisis Beds. (ECF 5052 at 8-9.) Plaintiffs are wrong. From May 2012 to December 2013, there are on average 78 inmates placed in alternative housing each month, 81% of whom have been referred to a crisis bed. (Burleson Decl. ¶ 11.) The vast majority of inmates in alternative housing remain there for less than 24 hours and many of the initial referrals are rescinded. (*Id.*) The use of alternative housing is a recognized step in the referral process to an institution with a crisis bed unit, and is not used due to a shortage of crisis beds. (*See* Thorn Decl. ¶ 2, Ex. A [Trans Belavich Depo., 2/22/13 at 201:24-203:19, 206:17-208:19, 209:10-16 and Ex 14.] CDCR now places almost every inmate endorsed for crisis bed placement such a bed within 24 hours. (Tr. 3464:10-20 [T. Belavich].)[8]

---

[8] Plaintiffs incorrectly allege that the "'pending list' for male MHCBs was several times higher in late 2013 than it had been at any point since Realignment's implementation began." (ECF 5052 at 9:12-13.) Plaintiffs misinterpret "pending" placements. CDCR has no waitlist—*i.e.,* inmates waiting beyond the 24 hour Program Guide transfer requirement—and had not had a waitlist for several months. (Thorn Decl. ¶ 3, Ex. B [Program Guide, 12-5-3 & 12-5-4]; Burleson Decl. ¶ 12.)

11

Defs.' Corrected Reply In Support of Bed Plan Motion (2:90-cv-00520 LKK DAD PC)

### 3. Plaintiffs Misrepresent Testimony Concerning Defendants' Bed Planning Efforts.

Plaintiffs incorrectly claim that "Defendants asserted that they are no longer obligated to provide the bed need study report to the Special Master or Plaintiffs' counsel." (ECF 5052 at 18:12-13.) This issue arose because Plaintiffs' counsel incorrectly accused CDCR of violating a court order by not providing the most recent study to Plaintiffs at the time of the December hearing. Mr. Belavich explained that there was no current order to violate, because the order Plaintiffs referred to had expired by its own terms. (Tr. 3498:5-3499:7 [T. Belavich].) Plaintiffs' demands that Defendants be ordered to produce studies (which again would take Defendants' attention away from efforts to create and implement lasting population reduction measures) should be rejected.

## V. CONCLUSION

Good cause exists to extend the full activation deadline for the California Health Care Facility. Plaintiffs' requests for further relief should be denied as improper and unnecessary. Defendants have sufficient inpatient, mental health crisis beds, and Enhanced Outpatient Program beds to meet the demands of the mental health population. An order directing Defendants to submit a plan as to how they intend to provide timely access to inpatient and crisis level care to all class members would be redundant of the plans already in place and which are virtually complete.

////
////
////
////
////
////
////
////

12

Defs.' Corrected Reply In Support of Bed Plan Motion (2:90-cv-00520 LKK DAD PC)

Moreover, Plaintiffs' request for further bed planning efforts is based on outdated projections, not current real-world conditions. Rather than entertain Plaintiffs' excessive and unnecessary requests for affirmative relief, Defendants respectfully request that the Court deny Plaintiffs' motion and instead allow Defendants to concentrate their efforts on implementing the measures necessary to achieve required and lasting population reductions.

Dated: February 25, 2014

Respectfully submitted,

KAMALA D. HARRIS
Attorney General of California
PATRICK R. MCKINNEY
Supervising Deputy Attorney General

/s/ Debbie Vorous

DEBBIE VOROUS
Deputy Attorney General
*Attorneys for Defendants*

CF1997CS0003

Defs.' Corrected Reply In Support of Bed Plan Motion (2:90-cv-00520 LKK DAD PC)