KAMALA D. HARRIS
Attorney General of California
JAY C. RUSSELL
PATRICK R. MCKINNEY
Supervising Deputy Attorneys General
DEBBIE VOROUS, State Bar No. 166884
CHRISTINE M. CICCOTTI, State Bar No. 238695
MANEESH SHARMA, State Bar No. 280084
Deputy Attorneys General
 1300 I Street, Suite 125
 P.O. Box 944255
 Sacramento, CA 94244-2550
 Telephone: (916) 324-5345
 Fax: (916) 324-5205
 E-mail: Debbie.Vorous@doj.ca.gov

*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **RALPH COLEMAN, et al.,** | 2:90-cv-00520 LKK DAD PC |
| Plaintiffs, | **DEFENDANTS' STATUS CONFERENCE STATEMENT** |
| v. | Judge Lawrence K. Karlton |
| **EDMUND G. BROWN JR., et al.,** | Date: March 10, 2014
Time: 1:30 p.m. |
| Defendants. | Courtroom: 4 |

Defendants submit this statement in advance of the March 10, 2014 status conference. On January 23, 2014, the Court vacated submission of Plaintiffs' use-of-force motion "pending resolution of whether, and if so how if at all, issues presented by the death of [a Coleman] class member bear on the use of force questions presented by plaintiffs' May 29, 2013 motion." (Order at 2, Jan. 23, 2014, ECF No. 5022.) As the Court stated on February 10, 2014: "The issues raised by plaintiffs' request to open discovery may, in the end, come down to nothing more than a disagreement about whether the Suicide Case Review Subcommittee could, consistent with the

1

requirements of the Program Guide, under the circumstances of this class member's death defer completion and forwarding of a suicide report pending receipt of the coroner's report." (Order, Feb. 10, 2014, ECF No. 5059.)

The Court's prediction turned out to be accurate. Discovery has shown that Defendants were not required to produce a suicide report by November 7, 2013. CDCR was following Program Guide processes for reviewing and reporting the circumstances surrounding Inmate D's death. As of October 31, 2013, Defendants' mental health clinicians concluded Inmate D's death was not a suicide, but decided not to finalize that conclusion pending receipt of the coroner's autopsy report. After receiving the autopsy report on November 27, 2013—weeks after the close of the evidentiary hearing—wherein the Coroner concluded Inmate D's death to be a suicide, CDCR then completed the review and prepared a report.

In support of their request to open discovery, Plaintiffs claimed that Defendants withheld information, but this is not true. Discovery has shown that Plaintiffs knew of Inmate D's death, including the fact that pepper spray was used the day before his death, before the start of the evidentiary hearing. Plaintiffs also claimed that information concerning Inmate D's death was inappropriately removed from the final report. But discovery has proven that the report continued to be edited until January 2014, long after the close of the evidentiary hearing. Despite Plaintiffs' knowledge, they have continued to assert the factually impossible claim that relevant information was withheld. The Court should reject any further argument from Plaintiffs on this issue, consistent with its recent caution to the parties not to assume malicious intent. (Order at n. 7, Feb, 10, 2014, ECF No. 5059.)

Inmate D's death has no relevance to Plaintiffs' use-of-force motion because there is no connection between the application of pepper spray and Inmate D's death. (Conf. Decl. of Michael Bien (Conf. Bien Decl.), Ex. D, at 3, 12-13, & 14, Jan. 17, 2014.) Inmate D was pepper-sprayed more than 8 hours before his death, decontaminated with water, slept for an hour and a half, and was observed standing at his cell window an hour before his death. (*Id.*) Plaintiffs' verbal semantics of calling Inmate D's death a "pepper spray death" do not make it so. Plaintiffs' counsel's opinion is not a medical one. Nor is it shared by the trained, clinicians and medical

2

professionals, including the county coroner, nor by the court-appointed receiver's office which conducted the death review,.

The parties have agreed that the Court may consider the reports concerning Inmate D's death, and the parties continue to work on a joint statement of facts for the Court's consideration. The documents before this Court demonstrate that Inmate D's death has little relevance to Plaintiffs' use-of-force motion, and that Plaintiffs' arguments concerning why the report was revised have no relevance to the use-of-force motion. Defendants anticipate that Plaintiffs will continue to argue that the Court should consider numerous facts from Inmate D's medical records, but Plaintiffs had these documents before the start of the evidentiary hearing and did not present them. The Court should not re-open this proceeding concerning matters that could have been brought to the Court's attention during Plaintiffs' case-in-chief. Defendants therefore respectfully request that the Court consider the documents presented and take this matter under submission.

Defendants will also be prepared to discuss the issues related to bed planning identified in the Court's March 4, 2014 order. (ECF No. 5094.)

## I. DEFENDANTS HAVE COMPLIED WITH THE COURT'S DISCOVERY ORDERS.

The Court opened discovery concerning this individual class member's death for two limited purposes: (1) the factual circumstances of the death of the class member at issue; and (2) whether relevant information concerning this class member's death was withheld from plaintiffs or the court during the course of the evidentiary hearing on Plaintiffs' use-of-force motion. (Order at 2, Jan. 30, 2014, ECF No. 5034.) The parties reached agreement with respect to the factual circumstances of Inmate D's death, and the Court ordered that "no further discovery as to that issue will be conducted." (Order at 2, Feb. 5, 2014, ECF No. 5054.)

As to the second issue, the Court stated: "The crux of the relevant disagreement between the parties centers on whether defendants had any duty to produce a suicide report by November 7, 2013." (Order at 2, Feb. 10, 2014, ECF No. 5059.) Defendants have provided the discovery requested by Plaintiffs that is consistent with the Court's orders. Discovery has shown that Plaintiffs had all of the relevant information concerning Inmate D's death, including the fact that

3

pepper spray was used the day before his death, before the start of the evidentiary hearing on Plaintiffs' use-of-force motion. (Supp. Decl. Michael Bien, (Supp. Bien Decl.), at ¶¶ 5-6, Feb. 3, 2014, ECF No. 5041; Conf. Bien Decl., at Ex. F; Conf. Decl. of Christine M. Ciccotti, (Conf. Ciccotti Decl.), at Ex. 2.) On September 12, 2013, Defendants' Counsel notified Plaintiffs' Counsel and the Special Master of Inmate D's death via e-mail. (Conf. Bien Decl., at ¶ 3.) On September 25, 2013, Plaintiffs downloaded the following documents: a September 16, 2013 one-page letter to the Special Master notifying him of Inmate D's death; a 24-page Inmate Movement history document; 109 pages from Inmate D's electronic Unit Health Record; and the Initial Inmate Death Report, in two parts, Form 7229-A, dated September 9, 2013 and form 7229-B, dated September 10, 2013. (Supp. Bien Decl., at ¶¶ 5-6.) The CDCR Form 7229-B states: "I/P pepper sprayed by custody staff on 9/6/13." (Conf. Bien Decl., at Ex. F.) The medical records Plaintiffs downloaded also note four times that Inmate D was pepper sprayed on September 6, 2013. (Conf. Ciccotti Decl., at Ex. 2.)

Defendants produced the additional relevant, non-privileged documents responsive to Plaintiffs' document requests on February 11 and 12, 2014. (Conf. Decl. of Krista Stone-Manista, at ¶ 4, Feb. 20, 2014.) Defendants also produced the following four witnesses for deposition: (1) Kathleen Allison; (2) Judy Burleson; (3) Dr. Corey Scheidegger; and (4) Michael Stainer. Discovery disputes arose between the parties, and in a good faith effort to resolve those disputes without waiving any privilege, Defendants allowed Plaintiffs' counsel to review every draft report and related email correspondence prepared between September 7, 2013 and January 7, 2014 over which Defendants had asserted the deliberative process privilege, without waiving said privilege by executing a Joint Non-Disclosure and Protective Agreement. (Conf. Ciccotti Decl., at Ex. 8.) Plaintiffs' counsel reviewed those documents on February 26, 2014.

The parties previously agreed that the Court may consider the reports concerning Inmate D's death that are already before this Court. Consistent with the Court's January 30, 2014 order, the parties met-and-conferred regarding preparation of a joint statement of undisputed material facts, but have been unable to reach agreement at the time of filing, beyond the agreement to submit the reports. (Conf. Ciccotti Decl., at Exs. 6 and 7.) The parties continue to work on a

4

1 stipulated statement of facts, and will present it to the Court if they are able to reach agreement.
2 (*See id.*)  As part of that process, and subject to the *Coleman* protective order and a separate
3 protective agreement, Defendants produced to Plaintiffs additional email correspondence, and
4 draft reports dated October 7, 2013 and October 24, 2013, on March 4 and March 6, 2014.  (*See*
5 *id.*; *see also* Exs. 9 and 10.)

## II. DEFENDANTS HAD NO OBLIGATION TO ISSUE A REPORT CONCERNING INMATE D'S DEATH BEFORE NOVEMBER 7, 2013.

The Court's February 10, 2014 order found that "[t]he crux of the relevant disagreement between the parties centers on whether defendants had any duty to produce a suicide report by November 7, 2013." (Order at 2, Feb. 10, 2014, ECF No. 5059.)  That question has been answered unequivocally: the consensus among CDCR's mental health clinicians, as of October 31, 2013 when the Suicide Case Review Subcommittee reviewed Inmate D's death, was that this death was not a suicide.  (Decl. Patrick McKinney, Ex. 2 at 41:2-9 & 44:5-10 [Scheidegger Tr.], Feb. 20, 2014; Conf. Ciccotti Decl., Ex. 3 at 59:14-60:3, 61:12-61:15, & 98:2-8 [Allison Tr.] & Ex. 4 at 57:8-16 [Burleson Tr.].)  Nevertheless, CDCR determined that Inmate D's death warranted further investigation, and CDCR properly refrained from making any final conclusions without considering vital information—including the coroner's autopsy report.  (*Id.*)  Defendants received the autopsy report on November 27, 2013, and based upon the Coroner's conclusion that Inmate D's death was a suicide, resumed preparation of the suicide report in December 2013.  (Conf. Belavich Decl., ¶ 9 & Ex. 1 at 14; Conf. Bien Decl, Ex. D at 3; Conf. Ciccotti Decl., Ex 1 at 70:25-71:1.)  Defendants issued the final suicide report on January 7, 2014.  (Conf. Bien Decl, Ex. D.)  CDCR's conclusion that Inmate D's death was not a suicide, despite the Coroner's conclusion, is supported by the *Plata* Receiver's death review, which determined that Inmate D's death was either an "accidental injury to self" or "unknown." (Conf. Decl. of Timothy Belavich, (Conf. Belavich Decl.) at ¶ 11, & Ex. 2 at 1 & 3.)

Plaintiffs inaccurately claim that the *Coleman* Program Guide required the suicide report of Inmate D's death to be submitted by November 6, 2013.  The Program Guide states that suicide reports must be submitted within 60 days of a suicide – not deaths of undetermined or accidental

5

causes. (Mental Health Services Delivery System Program Guide (2009 Revision) (Program Guide), 12-10-26.) There can be no suicide report if a death is not a suicide. To the extent the Court has remaining concerns about the clarity of the reporting requirements placed upon CDCR for deaths of undetermined or accidental causes, the Court's July 2013 Order directed the Special Master to conduct a working group to address just these issues. (Order, July 12, 2013, ECF No. 4693.) Moreover, the Special Master met with the parties as recently as February 25, 2014 to discuss suicide reporting requirements, including whether it would be appropriate to revise the Program Guide to clarify language on this point noted by the Court in its February 10 order.

### III. DEFENDANTS PROVIDED ALL REQUIRED INFORMATION REGARDING THE DEATH OF INMATE D TO PLAINTIFFS BEFORE THE START OF THE USE-OF-FORCE HEARING.

Discovery has shown that CDCR was following its suicide reporting process, and there was no withholding of information for a litigation purpose. The evidentiary hearing on Plaintiffs' use-of-force motion started on October 1, 2013. (Order, Jan. 23, 2014, ECF No. 5022.)[1] There is no dispute that, on September 25, 2013, Plaintiffs downloaded information concerning Inmate D's death through the secure FTP site. (Supp. Bien Decl., ¶¶ 5-6.) The initial death report (CDCR Form 7229-B) downloaded by Plaintiffs states: "I/P pepper sprayed by custody staff on 9/6/13." (Conf. Bien Decl., Ex. F.) The medical records Plaintiffs downloaded also specifically reference the use of pepper spray multiple times. (Conf. Ciccotti Decl., at Ex. 2.) Plaintiffs therefore had sufficient information before the start of the evidentiary hearing, and they have acknowledged that they simply failed to consider the information provided to them. (Decl. Jane Kahn, at ¶ 5, Feb. 3, 2014, ECF No. 5042.)

In addition to Plaintiffs' knowledge, discovery has demonstrated the lack of any connection between the clinical review and reporting of Inmate D's death and Plaintiffs' use-of-force motion. Dr. Scheidegger, who had primary responsibility for making changes to the report, testified that she was not aware of Plaintiffs' use-of-force motion until January 2014. (Decl. of Patrick McKinney, Ex. 2 at 6:25-7:16, Feb. 20, 2014.) She further testified about the reasons why a

---

[1] Discovery on Plaintiffs' use-of-force motion closed on August 23, 2013. (Order, at 3, Aug. 9, 2013, ECF No. 4738.) Inmate D died on September 7, 2013. (Conf. Bien Decl., Ex. F.)

6

Defs.' Status Conference Statement (2:90-cv-00520 LKK DAD PC)

suicide report was not prepared for Inmate D in November 2013: mental health professionals concluded Inmate D's death was not a suicide, and they would "hold off on making any further changes to the report pending receipt of the coroner's report." (*Id*. at Ex. 2 at 41:2-9 & 44:5-10; *see also* Conf. Ciccotti Decl., Ex. 3 at 59:14-60:3, 61:12-61:15, 98:2-8 [Allison Tr.].) The consensus reached at that meeting was reiterated by Ms. Allison and Ms. Burleson during their testimony. (Conf. Ciccotti Decl., Exs. 3 at 59:14-60:3 [Allison Tr.] & 4 at 57:8-16 [Burleson Tr.].) Ms. Burleson further testified that, while she had a general awareness of Plaintiffs' use-of-force motion, there was no connection between the motion and the report. (*Id*. at Ex. 4 at 65:5-66:12.) Defendants anticipate that Plaintiffs will point to the fact that a number of items were changed in various draft reports, but this demonstrates that the deliberative process by which CDCR writes and edits its death reports is working appropriately.

Moreover, the changes to the report that Plaintiffs raised in their petition were not made until January 2014, months after the close of the evidentiary hearing on Plaintiffs' use-of-force motion. (Decl. Patrick McKinney, Ex. 2, at 33:18-34:19, 39:3-25 [Scheidegger Tr.], Feb. 20, 2014, ECF No. 5072.; Conf. Ciccotti Decl., Exs. 3 at 68:7-70:6, 104:14-107:4 [Allison Tr.] & 4 at 81:23-25 & 82:19-20 [Burleson Tr.].) There is no evidence of any purposeful attempt on the part of Defendants to withhold information from Plaintiffs, the Court, or the Special Master. Defendants' litigation counsel informed Plaintiffs' counsel that Defendants had not withheld information, and that the Attorney General's Office did not receive a draft of this report before it was finalized on January 7, 2014. (Conf. Ciccotti Decl. at Ex. 7.) Defendants made initial notifications, appropriately conducted a death review, tentatively concluded that Inmate D's death was not a suicide pending receipt of the coroner's autopsy report, and promptly prepared a report after receiving the autopsy report. Any other conclusion is unfounded.

IV. **INMATE D'S DEATH IS NOT RELEVANT TO PLAINTIFFS' USE-OF-FORCE MOTION.**

The parties have agreed that the final suicide report—complete with information concerning the deployment of pepper spray—could be added to the evidence to be considered by this Court in ruling on Plaintiffs' use-of-force motion. (*See* Joint Statement Concerning Disc. at 1, Feb. 3, 2014, ECF No. 5044.) However, discovery has shown no connection between the use of

7

Defs.' Status Conference Statement (2:90-cv-00520 LKK DAD PC)

pepper spray on September 6, 2013, and Inmate D's death the following day.  The autopsy report found no pepper spray residue in Inmate D's stoma.  (Conf. Bien Decl., Ex. D at 14.)  CDCR's suicide report states that Inmate D was pepper sprayed at 8:30 p.m. on September 6 as a result of refusal to close his food port.  (*Id*. at 12-13.)  He proceeded to decontaminate with water from his sink until 10:00 p.m., when he was observed by nurses with his tracheostomy tube intact.  (*Id.*)  Approximately 10 minutes later nurses observed him remove the tracheostomy tube, as he had done on many previous occasions.  (*Id*.)  Between midnight and 2:15 a.m. the next morning he was observed as remaining quietly in his cell, he then slept until 3:00 a.m., stood briefly at his cell window then resumed sleeping until 4:48 a.m., when he was again observed standing at his cell window.  (*Id.*)  This chain of events is not suggestive of the conclusion that pepper spray caused Inmate D's death.

Defendants anticipate that Plaintiffs will cite statements made in the draft reports that reflect CDCR's pre-decisional deliberations concerning Inmate D's death.  Many of these statements are speculative and, as Dr. Belavich testified in his January 29, 2014 declaration, were removed from CDCR's final report for that reason.  (Conf. Belavich Decl., at ¶¶ 15-17.)  Plaintiffs have also speculated that Michael Stainer, the Director of CDCR's Division of Adult Institutions, might have testified differently about whether he knew of any incident where pepper spray caused an inmate's death within CDCR had he known of Inmate D's death.  (Joint Statement, at 16, Feb. 20, 2014, ECF No. 5072.)  Discovery has shown this assertion to be incorrect.  Mr. Stainer testified that he was not aware of Inmate D's death during the evidentiary hearing, and did not become aware of this death until January 2014.  (Conf. Ciccotti Decl., Ex. 5, at 17:19-25 [Stainer Tr.])  Mr. Stainer testified that any alleged connection between the use of pepper spray and Inmate D's death was not based on facts.  (*Id.* at 45:25-46:8 & 63:11-64:8.)

Plaintiffs' characterization of Inmate D's death as a "pepper spray death" is not grounded in medical or other evidence.  Even if the Court disagrees and considers this individual case, it must also consider Defendants' revisions to the statewide use-of-force policy.  (*See* Decl. Michael Stainer, Ex. A "Notice of Change to Department Operations Manual", Jan. 21, 2014, ECF No. 4987-1.)  The revised operating manual now significantly limits pepper spray use when an inmate

8

refuses to allow staff to close and secure a food/security port. (*Id.*)  Staff may no longer use pepper spray or other immediate force options only because an inmate is holding a food/security port open.

As a result of this change in policy, the use of pepper spray on Inmate D is no longer relevant to the use-of-force hearing.  At the time of Inmate D's death, Defendants were already in the process of taking pro-active steps to try to resolve the use of pepper spray on all inmates, including *Coleman* class members.

Ironically, had CDCR issued a report concerning Inmate D's death during the hearing on Plaintiffs' use-of-force motion, the Court may not have considered it. (*See, e.g.,* Tr. November 7, 2013, at 2058:3-4 [stating that the presentation of evidence must be constrained by "real life" considerations].)  Further anecdotal evidence, including the circumstances of Inmate D's death, is cumulative.  Inmate D's tragic death—which Plaintiffs have mischaracterized as a "pepper spray death"—does not answer Plaintiffs' failure to present evidence of alleged systemic constitutional violations during the evidentiary hearing.

/ / /

/ / /

/ / /

/ / /

9

Defs.' Status Conference Statement (2:90-cv-00520 LKK DAD PC)

**CONCLUSION**

The undisputed facts and accompanying documents establish that the use of pepper spray on Inmate D is not relevant to Plaintiffs' use-of-force motion. They also demonstrate that CDCR was appropriately following Program Guide processes for reviewing Inmate D's death. To the extent this individual case identified a need to revisit those processes, the parties are working with the Special Master. Moreover, Plaintiffs' allegation that relevant information concerning Inmate D's death was withheld during the evidentiary hearing was disproven by Plaintiffs' own declaration testimony, as well as Defendants' documents and deposition testimony. For all of these reasons, the Court should consider the facts and documents presented by the parties and take this matter under submission without further proceedings.

Dated: March 6, 2014                    Respectfully submitted,

                                                                      KAMALA D. HARRIS
                                                                      Attorney General of California

                                                                      PATRICK R. MCKINNEY
                                                                      Supervising Deputy Attorney General

                                                                      ***/S/ CHRISTINE M. CICCOTTI***

                                                                      CHRISTINE M. CICCOTTI
                                                                      Deputy Attorney General
                                                                      *Attorneys for Defendants*

CF1997CS0003
31920333.doc

10

Defs.' Status Conference Statement (2:90-cv-00520 LKK DAD PC)