DONALD SPECTER – 083925
STEVEN FAMA – 099641
PRISON LAW OFFICE
1917 Fifth Street
Berkeley, California 94710-1916
Telephone: (510) 280-2621

MICHAEL W. BIEN – 096891
JANE E. KAHN – 112239
ERNEST GALVAN – 196065
THOMAS NOLAN – 169692
LISA ELLS – 243657
LORI E. RIFKIN – 244081
AARON J. FISCHER – 247391
MARGOT MENDELSON – 268583
KRISTA STONE-MANISTA – 269083
ROSEN BIEN GALVAN & GRUNFELD LLP
315 Montgomery Street, Tenth Floor
San Francisco, California 94104-1823
Telephone: (415) 433-6830

JON MICHAELSON – 083815
JEFFREY L. BORNSTEIN – 099358
RANJINI ACHARYA – 290877
K&L GATES LLP
4 Embarcadero Center, Suite 1200
San Francisco, California 94111-5994
Telephone: (415) 882-8200

CLAUDIA CENTER – 158255
THE LEGAL AID SOCIETY –
EMPLOYMENT LAW CENTER
180 Montgomery Street, Suite 600
San Francisco, California 94104-4244
Telephone: (415) 864-8848

*Attorneys for PLAINTIFFS*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>EDMUND G. BROWN JR., et al.,<br><br>　　　　Defendants. | Case No.　2:90-cv-0520 LKK DAD<br><br>**PLAINTIFFS' REPLY BRIEF ON PROPOSED REVISIONS TO USE OF FORCE POLICIES**<br><br>Judge:　Hon. Lawrence K. Karlton |

1

**PLAINTIFFS' REPLY BRIEF ON PROPOSED REVISIONS TO USE OF FORCE POLICIES; 90-CV-0520 LKK DAD**

## I. INTRODUCTION

Plaintiffs respectfully seek leave of this Court to submit this brief in reply to the responsive brief filed by Defendants on February 21, 2014. (ECF No. 5077). Due to an inadvertent error, Plaintiffs' counsel overlooked the due date of March 13, 2014, specified as the date for filing a reply. (*See* ECF No. 5021). In addition to considering Defendants' responsive brief, Plaintiffs and Plaintiffs' expert Eldon Vail have now also considered and wish to address the further proposed revisions submitted by Mr. Stainer for consideration by this Court on March 12, 2014. (ECF. 5111-1).

In their responsive brief of February 21, 2014, Defendants continue to protest that their use of force policies comprise a system that does not, on its face or in practice, violate the Constitution. This assertion flies in the face of compelling evidence presented at trial that *Coleman* class members are subjected to unnecessary and excessive force within California Department of Corrections and Rehabilitation ("CDCR").[1] Defendants' persistence in argument is both misguided and irrelevant. The parties were not asked to traverse the same evidentiary ground covered during the hearing in November. Instead, the parties were asked to brief this Court on how Defendants' proposed revisions to the Department Operations Manual ("DOM") bear on issues raised in Plaintiffs' May motion. Plaintiffs' brief, filed February 12, listed the affirmative relief sought in May, set out the bases for that relief, and explained why Defendants' proposed revisions to the DOM are an inadequate response.

Defendants' responsive brief, aside from containing cursory references to the way in which the proposed revisions are said to "build[] on and clarif[y] California's use-of-force policy for all inmates in several ways" (*See* ECF No. 5077, at 3:15-24), fails to demonstrate how or why those suggested revisions to the DOM would reduce or prevent the unnecessary and excessive use of force against *Coleman* class members.

---

[1] At trial, evidence established that mentally ill prisoners are subjected to force to a greater extent than those in the general population within the CDCR; that unnecessary and excessive application of force has disproportionately adverse effects on Coleman class members; and experts on both sides agreed that controlled, rather than immediate, use of force should be mandated as the norm in relation to *Coleman* class members. (*See* Plaintiffs Brief on Defendants' Proposed Revisions to Use of Force Policy, ECF No. 5065, filed February 12, 2014, at p. 2-3)

1   More recently, on March 12, Defendants submitted further proposed revisions to the DOM.
2   These were attached to the declaration of Michael Stainer, Director, CDCR Division of Adult
3   Institutions. (ECF. 5111-1). In that declaration, Mr. Stainer highlights that these further proposed
4   revisions relate (1) to the immediate use of force to secure a food port, and (2) to the use of the safety
5   triangle in restraining inmates within CDCR. These changes, while incrementally beneficial, still do
6   not address the fundamental constitutional deficiencies identified in Plaintiffs' May 2013 motion.

7   Plaintiffs' expert Eldon Vail has reviewed these proposed further revisions, and has provided
8   his comments to Plaintiffs' counsel. (*See* Exhibit A to the Declaration of Jeffrey L. Bornstein,
9   March 19, 2014). As Mr. Vail observes, the proposed additional changes are helpful but inadequate.
10  In particular, changes to the policies regarding the immediate use of force to secure a food port do not
11  create needed certainty or provide adequate guidance to custody staff, primarily and most importantly
12  because what constitutes an "imminent threat" is still not defined. Further, although the proposed
13  revisions no longer permit an inmate-patient to be pepper sprayed for failing to relinquish a security
14  triangle, they do not mandate use of tethers or lanyards, which would be safer for both inmates and
15  staff. At most, Defendants' further proposals represent only marginal changes to the DOM's flawed
16  use of force provisions. They do not address, let alone resolve, the serious constitutional deficiencies
17  underlying CDCR's use of force policies and procedures as they apply to *Coleman* class members.
18  This failure to acknowledge and attempt to remedy the most fundamental issues is clearest in three
19  main areas.

## II. CDCR POLICIES STILL PLACE INADEQUATE LIMITS ON THE USE OF PEPPER SPRAY AGAINST *COLEMAN* CLASS MEMBERS

22  The proposed revisions still permit -- for no sound correctional reason -- ready access to
23  crowd control sized OC spray for custody officers working in units housing *Coleman* class members.
24  The more readily available large canisters of OC spray remain as a means of gaining inmate-patient
25  compliance, the more vulnerable *Coleman* class members are to application of immediate force in
26  circumstances where controlled force -- or no force at all -- is possible and indeed desirable. Further,
27  by failing to prohibit or even limit use of crowd-control sized canisters of pepper spray, relevant
28  DOM provisions do not ensure that the amount of OC used is proportional to the threat presented by

3

**PLAINTIFFS' REPLY BRIEF ON PROPOSED REVISIONS TO USE OF FORCE POLICIES; 90-CV-0520 LKK DAD**

the inmate-patient. Until OC canisters are removed from the duty belts of custody officers, and until access to MK9 or larger canisters is limited by policy to situations involving true emergencies or threats from larger groups of prisoners, individual class members will continue to be subjected to all too frequent, unnecessary, and excessive immediate uses of force, including those involving pepper spray. Because none of Defendants' proposed revisions to CDCR policies and procedures prohibit unnecessary use of OC spray against *Coleman* class members, there is a continued risk that otherwise preventable deaths will continue.

### III. FAILURE TO PROMOTE INTERDISCIPLINARY CARE AND TREATMENT OF *COLEMAN* CLASS MEMBERS

CDCR fails to address its endemic failings in the housing, treatment and care of its mentally ill inmate-patients. Proposed changes to certain use of force policies and practices do not place enough emphasis on requiring cooperation between custody and mental health staff in all aspects of the management of *Coleman* class members. Importantly, in failing to mandate truly integrated and co-managed interdisciplinary teams, including mental health and medical staff within CDCR to care for *Coleman* inmate-patients, these policies fall well short of the changes needed. In particular, and by way of example, they do not address the tragic sequence of events that took place in September 2013 at Mule Creek State Prison. If custody staff had been required by policy to follow the orders of mental health and/or medical staff to extract Inmate X for decontamination following exposure to pepper spray, it is possible – and we believe likely – that his subsequent death may have been prevented.

Continued unnecessary and excessive use of force against mentally ill inmate-patients will not diminish until custody and mental health staff are trained effectively to work cooperatively to manage the living units housing *Coleman* class members. Similarly, the changes at hand do not establish safer procedures for extracting decompensating inmate-patients through the use of alternatives such as verbal persuasion or management of assaultive behavior techniques rather than OC spray. Until CDCR revisits its policies and procedures and takes seriously the need to implement initial and ongoing joint responsibility and training between mental health and custody staff on how to perform cell extractions -- especially when *Coleman* class members housed in MHCB, EOP and DSH units

ostensibly are being extracted for their own good -- application of excessive and unnecessary force will continue.

## IV. FAILURE TO RECOGNIZE AND ACCOMMODATE MENTAL ILLNESS IN THE DISCIPLINE OF *COLEMAN* CLASS MEMBERS

The proposed further changes still do not address the need for accommodation of *Coleman* class members within CDCR's discipline system. CDCR still mandates issuance of RVRs and subsequent disciplinary adjudication in a way that leads to further segregation, forfeiture of good time credits, and a lack of programming for mentally ill inmates. Unless and until this formulaic approach is reformed, the agency will continue by policy and practice to rely on segregation and restricted programming as the primary means of dealing with mentally ill inmate patients. Nothing in the agency's most recent efforts to take corrective action suggests any changes in this unfortunate (and constitutionally offensive) reality.

## V. CONCLUSION

Plaintiffs are encouraged by Defendants' first steps in acknowledging that CDCR must change its use of force and related policies to prevent further violations of the constitutional rights of *Coleman* class members. Nevertheless, these tentative half measures are a long way from what is needed. Small incremental changes of this kind are not enough to bring about the constitutional reform urgently needed within CDCR. Defendants should be required to properly implement a use of force policy that specifically addresses the needs of *Coleman* class members (as well as comprehensive reforms of closely-related policies and practices). Defendants have failed to do so to date.

Respectfully,

K&L GATES LLP

Dated: March 19, 2014    By:    */s/ Jeffrey L. Bornstein*
Jon Michaelson
Jeffrey L. Bornstein
Ranjini Acharya
Attorneys for PLAINTIFFS