DONALD SPECTER – 083925
STEVEN FAMA – 099641
ALISON HARDY – 135966
SARA NORMAN – 189536
REBEKAH EVENSON – 207825
PRISON LAW OFFICE
1917 Fifth Street
Berkeley, California 94710-1916
Telephone:    (510) 280-2621

MICHAEL W. BIEN – 096891
JANE E. KAHN – 112239
ERNEST GALVAN – 196065
ROSEN BIEN GALVAN & GRUNFELD LLP
315 Montgomery Street, Tenth Floor
San Francisco, California 94104-1823
Telephone:    (415) 433-6830

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURTS

EASTERN DISTRICT OF CALIFORNIA

AND NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| RALPH COLEMAN, et al., | Case No. Civ S 90-0520 LKK-JFM P |
| Plaintiffs, | **THREE JUDGE COURT** |
| v. | |
| EDMUND G. BROWN, JR., et al., | |
| Defendants. | |
| MARCIANO PLATA, et al., | Case No. C01-1351 TEH |
| Plaintiffs, | **THREE JUDGE COURT** |
| v. | **MOTION TO DEFINE DESIGN** |
| EDMUND G. BROWN, JR., et al., | **CAPACITY** |
| Defendants. | |

**INTRODUCTION**

The State's latest filings have understated the current level of crowding by including in the "design capacity" of the prisons a newly built facility in Stockton, the California Health Care Facility and its DeWitt annex ("the Stockton facility"). Defs' April 15 2014 Status Report at 1 (ECF Nos. 2780/5136). But the trial in this case concerned crowding in the thirty-three then-existing prisons, and this Court's order caps crowding in the thirty-three prisons at 137.5% of capacity. Aug. 4 2009 Opinion & Order at 37 n. 35, 120 & 120 n. 61 (ECF Nos. 2197/3641). Stockton is a medical facility with a practical capacity of 100%; by including Stockton in the "design capacity" subject to the system-wide crowding cap, Defendants will inflate the crowding at the original thirty-three prisons beyond what this Court found was constitutionally permissible.

Defendants should not be allowed to count the capacity of the Stockton facility in its overall "design capacity" that can be overcrowded by 137.5 percent. Instead, Defendants should count the prisoners sent to Stockton in the same way they count prisoners sent to camps, out-of-state prisons or community correctional facilities – by subtracting them from the total number of prisoners housed at the thirty-three prisons.

**BACKGROUND**

When this court issued its order setting a system-wide cap of 137.5% of capacity, it did so based on evidence regarding the impacts of crowding at the existing thirty-three prisons. Aug. 4 2009 Opinion & Order at 37 n. 35. Accordingly, the "order is limited to the CDCR's thirty-three adult prison institutions," *Id.* at 120, n. 61, and does not cover the Stockton facility.

The Court noted that "because our order requires defendants to reduce the prison population to a specified percentage of the prison system's design capacity, any additional capacity provided by completed construction could help the state meets its obligations and might allow it to increase the number of prisoners who could constitutionally be housed in the prison system. In such case an adjustment as to the specific terms of the population reduction order, although not to the percentage cap itself, *might conceivably* be appropriate." *Id.* at 108 (emphasis added).

In July 2013, CDCR began admitting prisoner patients to the newly-constructed California

Health Care Facility in Stockton. *Plata* Receiver's Twenty-Fifth Tri-Annual Report at 1 (Jan. 31, 2014, *Plata* ECF No. 2761) ("Receiver's 25[th] Report"). In the following months, it became apparent that there were serious problems with the Stockton facility, and in January 2014, the Receiver halted all medical admissions, *Id.* at 28, and CDCR has also delayed mental health admissions  (March 18 2014 Order at 6-7, *Coleman* ECF No. 5116; April 21 2014 Order at 2-3, *Coleman* ECF No. 5139). The population of Stockton, therefore, is 1,373 prisoners – less than 47% of its capacity. Defs' April 15 2014 Status report, Ex. A (ECF Nos. 2780-1/5136-1).  It is not known when medical admissions will resume, or when the Stockton facility may be filled with prisoners.

Nonetheless, without seeking an "adjustment as to the specific terms of the population reduction order" (Aug. 4 2009 Opinion & Order at 108), Defendants have unilaterally begun counting the entire capacity of the Stockton facility in CDCR's system-wide "design capacity," thus effectively increasing the overall population cap by more than 4,000 prisoners (the design capacity of Stockton plus 137.5%).

The Court's now-superseded June 20 2013 Opinion & Order suggested that the Stockton facility's capacity should be added to the overall design capacity of the thirty-three prisons in part because Plaintiffs "have not objected." Opinion & Order at 27 n. 19 (ECF Nos. 2659/4662.) But this matter has never been squarely presented to the Court for Plaintiffs to file such objection, and Plaintiffs have long made clear that the CHCF capacity should be "subtract[ed] out" from the overall population, not included in the overall design capacity. *See, e.g.*, Feb. 7 2012 Austin Decl., ¶ 4 and Table 1 (ECF Nos. 2420-1/ 4152-1); Pltfs' Objections to Defs' Proposed Order at 1-2, n. 2 (Jan. 28, 2014, ECF Nos. 2757/5026).

## ARGUMENT

Permitting Defendants to count the design capacity of the half-filled Stockton medical facility toward their overall design capacity will increase crowding at the thirty-three prisons above the Court-ordered cap. By including the 2,951 beds at the Stockton Facility in the design capacity for all CDCR institutions, CDCR adds 4,057 prisoners (or 2,951 times 137.5%) to its maximum population. But Stockton is a prison hospital that is not and will not be crowded above

its actual capacity.[1] Accordingly, a maximum of 2,951 prisoners can actually be housed at the Stockton facility; the other 1,106 will be sent to the thirty-three other prisons, thus pushing the other thirty-three over the 137.5% crowding level. In short, including the Stockton facility in the overall "design capacity" will ensure that the thirty-three prisons are crowded at a level that this Court found results in constitutionally inadequate healthcare.

The effect of including Stockton in the design capacity will be even more drastic in the coming year, since the Stockton facility is now and will for the foreseeable future remain well below its capacity. *See, e.g.,* Order, *Coleman* ECF No. 5116, at 6-7; Receiver's 25th Report at 28.

For these reasons, prisoners transferred from the thirty-three original prisons to the Stockton facility – like those transferred to camps, contract beds, or out-of-state prisons – should simply be subtracted from the population of the thirty-three prisons. The beds those prisoners fill should not be counted as part of the "design capacity" that can be crowded at 137.5%.

---

[1] As this Court recognized "certain institutions and programs in the system require a population far below 137.5% design capacity." Aug. 4 2009 Opinion & Order at 131 n. 64. Statutes and other licensing requirements prohibit crowding in specified medical and mental health placements. *See, e.g.*, Cal. Code Regs., Tit. 22 § 79823 (limiting crowding in correctional treatment centers); Feb. 5 2014 Stone-Manista Decl., Ex. 4 (*Coleman* ECF No. 5053)(Department of Mental Health limits population of mental health treatment facilities). Accordingly, the state's own forecasts show health care beds will be filled at lower than 100% of capacity. Jan. 28 2014 Bien Decl., Ex. 3 (*Coleman* ECF No. 5027-1), at 6, 9, 12, 13 (Department of State Hospitals inpatient bed need estimated at 90 percent occupancy); *id*. at 6, 19, 23 (Crisis Beds need estimated at 90 percent occupancy); *id*. at 6, 24, 31 (Enhanced Outpatient Program need estimated at 95 percent occupancy); *id*. at 6, 26, 32 (Enhanced Outpatient Program Ad Seg need estimated at 95 percent occupancy); *id*. at 6, 28, 33 (Psychiatric Services Unit need estimated at 95 percent occupancy). CDCR has historically maintained its other prison hospital – the California Medical Facility – at or below capacity. *See, e.g.*, CDCR Weekly Population Reports for April 24, 2013 (97% of capacity), August 7, 2013 (98.5% of capacity), October 30, 2013 (91% of capacity), January 22, 2014 (87% of capacity), April 23, 2014 (86% of capacity), available at http://www.cdcr.ca.gov/Reports_Research/Offender_Information_Services_Branch/WeeklyWed/Weekly_Wednesday_Tpop1a_Archive.html (site last visited April 25, 2014).

**CONCLUSION**

The Court should define the system-wide design capacity subject to the crowding cap as the combined design capacity of the thirty-three prisons subject to the original population reduction order, and Defendants should be required to submit a revised Status Report that correctly calculates the current system-wide crowding level based on crowding at the thirty-three prisons.

DATED: April 25, 2014                    Respectfully submitted,

                                         PRISON LAW OFFICE

                                         By:  */s/*
                                              Rebekah Evenson

                                         Attorneys for *Coleman* Plaintiffs
                                         Attorneys for *Plata* Plaintiffs

Motion to Define Design Capacity; Case Nos. Civ S 90-0520 LKK-JFM P, C01-1351 TEH