KAMALA D. HARRIS
Attorney General of California
JONATHAN L. WOLFF
Senior Assistant Attorney General
JAY C. RUSSELL
PATRICK R. MCKINNEY
Supervising Deputy Attorneys General
MANEESH SHARMA, State Bar No. 280084
Deputy Attorney General
 455 Golden Gate Avenue, Suite 11000
 San Francisco, CA  94102-7004
 Telephone:  (415) 703-5553
 Fax:  (415) 703-1234
 E-mail:  maneesh.sharma@doj.ca.gov
*Attorneys for Defendants*

Hanson Bridgett LLP
JERROLD C. SCHAEFER, State Bar No. 39374
PAUL B. MELLO, State Bar No. 179755
WALTER R. SCHNEIDER, State Bar No. 173113
SAMANTHA D. WOLFF, State Bar No. 240280
MEGAN OLIVER THOMPSON, SBN 256654
 425 Market Street, 26th Floor
 San Francisco, California 94105
 Telephone:  (415) 777-3200
 Fax:  (415) 541-9366
 E-mail: pmello@hansonbridgett.com

IN THE UNITED STATES DISTRICT COURTS

FOR THE EASTERN DISTRICT OF CALIFORNIA

AND THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| **RALPH COLEMAN, et al.,**<br><br>                                    Plaintiffs,<br><br>         v.<br><br>**EDMUND G. BROWN JR., et al.,**<br><br>                                    Defendants. | 2:90-cv-00520 LKK DAD PC<br><br>**THREE-JUDGE COURT** |
| **MARCIANO PLATA, et al.,**<br><br>                                    Plaintiffs,<br><br>         v.<br><br>**EDMUND G. BROWN JR., et al.,**<br><br>                                    Defendants. | C01-1351 TEH<br><br>**THREE-JUDGE COURT**<br><br>**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO DEFINE DESIGN CAPACITY** |

Over the past four years, multiple rulings by both this Court and the United States Supreme Court have confirmed that Defendants may increase design bed capacity by constructing new facilities. On August 4, 2009, this Court ordered Defendants to file a plan to "reduce the population of CDCR's adult institutions to 137.5% of their combined designed capacity." (Aug. 4, 2009 Order (ECF 2197/3641) at 183.) Months later, the Court issued its January 12, 2010 Order to Reduce Prison Population, stating that design capacity is not static and could be increased through construction. (Jan. 12, 2010 Order (ECF 2287/3767) at ¶ 1.) The United States Supreme Court agreed, expressly recognizing that Defendants could comply with this Court's order by "constructing new facilities to raise the prisons' design capacity." *Brown v. Plata*, 131 S. Ct. 1910, 1937 (2011). Consistent with these rulings, Defendants have constructed new facilities and raised the design capacity of the prison system.

On February 10, 2014, the Court granted Defendants' motion for an extension and set new interim and final benchmarks to reduce the prison population. Now that Defendants are on the path to meeting or exceeding those benchmarks, Plaintiffs ask this Court to move the goal posts by excluding the State's newest institution, the California Health Care Facility (CHCF) in Stockton.[1] This request is an improper and untimely attempt to re-litigate the terms of the system-wide population cap ordered by this Court and should be denied.

I. **BOTH THIS COURT AND THE UNITED STATES SUPREME COURT RULED THAT DEFENDANTS COULD INCREASE DESIGN CAPACITY TO MEET THE POPULATION-REDUCTION BENCHMARKS.**

Plaintiffs' motion argues that the newly-constructed CHCF facility should not be counted toward design capacity because it was not one of the 33 prisons operating at the time of trial. This argument is plainly inconsistent with the orders of this Court and the United States Supreme Court. Both the Three Judge Court and the Supreme Court have repeatedly affirmed Defendants' discretion to increase capacity through construction. When first ordering Defendants to reduce the in-state prison population to 137.5% of design bed capacity in 2009, this Court stated, "[o]f course, our order is based on a percentage of design capacity. If the CDCR closes existing

---

[1] The recently activated DeWitt Nelson Correctional Annex (referred to as "Yard E") is part of the California Health Care Facility.

1

Defendants' Resp. Plaintiffs' Mot. To Define Design Capacity
Case Nos. 2:90-cv-00520 LKK DAD PC & C01-1351 TEH

prisons or constructs new prisons or prison beds, the system's design capacity will change." (Aug. 4, 2009 Order at 131 n. 63.) The Court's January 2010 order—which set the terms of the population reduction order—similarly recognized this concept: "Design capacity for the purposes of these benchmarks may not remain static. For example, an increase in design capacity through construction would decrease the number of inmates by which the prison population would be reduced." (Jan. 12, 2010 Order at ¶ 1.) Moreover, the Supreme Court affirmed that this Court's order "in fact permits the State to comply with the population limit by . . . constructing new facilities to raise the prisons' design capacity." *Brown v. Plata*, 131 S. Ct. 1910, 1937; *id.* at 1941 (Defendants "may choose whether to increase the prisons' capacity through construction or reduce the population . . . .").

Plaintiffs also contend that because CHCF will not be filled to 137.5% of its design capacity, including it in the State's total design capacity will "inflate" the crowding in the State's remaining institutions. (ECF 2784/5141 at 1.) This contention has been considered and rejected by both this Court and the Supreme Court. In 2009, the Court "conclude[d] that a single systemwide cap rather than a series of institution-specific caps or a combination of systemwide and institution-specific caps is appropriate." (Aug. 4, 2009 Order at 121.) And in choosing to issue a system-wide cap, the Court "recogniz[ed] that certain institutions and programs in the system require a population far below 137.5% design capacity." (*Id.* at 131 n. 64.) The Supreme Court agreed, remarking that the order "affords the State flexibility to accommodate differences between institutions. There is no requirement that every facility comply with the 137.5% limit . . . . some facilities may retain populations in excess of the limit provided other facilities fall sufficiently below it so the system as a whole remains in compliance with the order." *Brown v. Plata*, 131 S. Ct. at 1940-41.

II.  **PLAINTIFFS' MOTION MATERIALLY ALTERS THE COURT'S FEBRUARY 10 ORDER EXTENDING THE POPULATION REDUCTION DEADLINE.**

Consistent with the orders discussed above, Defendants engaged in the Court ordered meet-and-confer process and submitted their proposed order to extend the population-reduction benchmarks with the understanding that the Court's orders obligated them to reduce the in-state

adult institution population to 137.5% of design capacity. Defendants' request and proposed order expressly incorporated the impact of new construction on design capacity. (Defs. Sept. 2013 Status Report & Req. for Extension (ECF 2713/4803) at 8 (discussing the completed and continuing construction of CHCF); Defs. Am. App. and Proposed Order Granting Extension (ECF 2755/5023) (referring to Defendants' request to "extend the deadline to reduce the population in the State's 34 adult institutions to 137.5% of design bed capacity").)

The Court's February 10, 2014 Order extending the deadline to meet the population target reflects this established point, as it requires a "reduction [of] the *in-state adult institution* population to 137.5% [of] design capacity." (Feb. 10, 2014 Order (ECF 2766/5060) at 1 (emphasis added).) In its opinion granting the extension, the Court favorably cited the provisions in Defendants' proposed order regarding the Compliance Officer and Defendants' representation not to appeal any inmate releases ordered by the Compliance Officer. (Feb. 10, 2014 Opinion (ECF 2767/5061) at 3.) As demonstrated by recent status updates, Defendants are safely drawing down the prison population in compliance with the benchmarks. (April 15, 2014 Status Report (ECF 2780-1/5136-1).) Altering the State's obligations by excluding new construction from the in-state adult institution design capacity—as Plaintiffs now urge—would retroactively and materially modify the terms of the February 10 Order.

### III. PLAINTIFFS' MOTION IS UNTIMELY.

In addition to ignoring holdings by this Court and the Supreme Court, Plaintiffs' present motion is untimely. Beginning in 2009, Defendants have implemented the Court's population-reduction orders, in part, by increasing capacity through construction. (*See, e.g.* Defs. Nov. 12, 2009 Resp. (ECF 2274-1/3726-1) at 2; Defs. June 7, 2011 Report (ECF 2365/4016).) Defendants have consistently adjusted design capacity upon the completion of new construction. (*See* Meier Decl. Supp. Jul 2012 Status Report (ECF 2454/4211) at ¶ 4 (discussing increase to design capacity from construction); Defs. Aug. 2013 Status Report (ECF 2694-1/4754-1) (reporting increased capacity).) And as this Court recently noted when "crediting defendants fully with additional design capacity" concerning the CHCF facility, Plaintiffs never objected to any of Defendants' plans to increase design capacity, nor its reports incorporating new construction in

3

design capacity. (June 20, 2013 Order (ECF 2659/4662) at 27 n. 19.)

## IV. CONCLUSION

In its orders requiring the prison population to be reduced to 137.5% of the State's system-wide design capacity, this Court has always held that an increase in design capacity would proportionally decrease the number of inmates by which the prison population would be reduced. The Supreme Court, in affirming the Court's 2009 order, held the same. Plaintiffs' request to exclude an in-state adult institution specifically built to serve *Coleman* and *Plata* class members from the definition of design capacity is both inconsistent with the Court's prior orders and unfair, given the State's justified reliance on those orders. Defendants respectfully request that Plaintiffs' motion be denied.

Dated: May 8, 2014

KAMALA D. HARRIS
Attorney General of California

By: */s/ Maneesh Sharma*
MANEESH SHARMA
Deputy Attorney General
*Attorneys for Defendants*

Dated: May 8, 2014

HANSON BRIDGETT LLP

By: */s/ Paul B. Mello*
PAUL B. MELLO
*Attorneys for Defendants*