DONALD SPECTER – 083925
STEVEN FAMA – 099641
ALISON HARDY – 135966
SARA NORMAN – 189536
REBEKAH EVENSON – 207825
PRISON LAW OFFICE
1917 Fifth Street
Berkeley, California 94710-1916
Telephone: (510) 280-2621

MICHAEL W. BIEN – 096891
JANE E. KAHN – 112239
ERNEST GALVAN – 196065
ROSEN BIEN GALVAN & GRUNFELD LLP
315 Montgomery Street, Tenth Floor
San Francisco, California 94104-1823
Telephone: (415) 433-6830

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURTS

EASTERN DISTRICT OF CALIFORNIA

AND NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>　　　　Plaintiffs,<br>　　v.<br>EDMUND G. BROWN, JR., et al.,<br>　　　　Defendants. | Case No. Civ S 90-0520 LKK-JFM P<br><br>**THREE JUDGE COURT** |
| MARCIANO PLATA, et al.,<br><br>　　　　Plaintiffs,<br>　　v.<br>EDMUND G. BROWN, JR., et al.,<br>　　　　Defendants. | Case No. C01-1351 TEH<br><br>**THREE JUDGE COURT**<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO DEFINE DESIGN CAPACITY** |

It is undisputed that the Stockton facility is currently populated at less than half of its capacity and that it will never be filled at above 100% of capacity. Yet Defendants seek to include Stockton on the list of prisons that can be crowded at 137.5% of capacity. In doing so, they are claiming credit for empty housing units. They acknowledge that this accounting trick will result in crowding at the other thirty-three prisons at a level above 137.5% of capacity – something this Court has forbidden.

Defendants point out that this Court always contemplated that some prisons would be more crowded than others, and that is why the Court imposed a system-wide cap rather than a prison-specific cap. But the Court also set an absolute maximum crowding level at the thirty-three prisons, finding based on the evidence presented at trial that crowding those prisons at a level above 137.5% would cause serious constitutional violations imperiling the lives and health of thousands of prisoners. Defendants are now arguing for this Court to order the very thing that its population reduction order prohibits: overcrowding at the thirty-three prisons.

The August 2009, January 2010 and June 2011 orders were explicit on the fact that "systemwide" design capacity is calculated to "encompass only [the] thirty-three adult institutions." Aug. 4 2009 Opinion & Order at 37 n. 35; id. at 120 n. 61 ("our opinion and order is limited to the CDCR's thirty-three adult prison institutions"); Jan. 12 2010 Order to Reduce Prison Population at 4 (ordering the state to "reduce the population of California's thirty-three adult prisons…"); June 30 2011 Order at 1 (requiring Defendants to "reduce the population of California's thirty-three adult prisons.")

Contrary to Defendants' argument, neither the Supreme Court nor this Court held that construction would automatically increase the design capacity of the prisons subject to the cap. The Supreme Court noted that while new construction might help alleviate crowding, it might also result in "cramming more prisoners into existing prisons without expanding administrative and support facilities. [ . . . ] these plans would 'compound the burdens imposed on prison administrators and line staff' by adding to the already overwhelming prison population, creating new barriers to achievement of a remedy." *Brown v. Plata*, 131 S.Ct. 1910, 1938 (2011) (internal citations omitted).

1

Reply iso Motion to Define Design Capacity; Case Nos. Civ S 90-0520 LKK-JFM P, C01-1351 TEH

1  This Court held that additional capacity "*could*" help the state meet its obligations, and if
2  construction was completed, "an adjustment as to the specific terms of the population reduction
3  order… *might conceivably* be appropriate."  Aug. 4 2009 Opinion & Order at 108 (emphasis
4  added).  This is a far cry from the automatic change to systemwide design capacity that
5  Defendants suggest was contemplated by the courts.  The clear import is that if Defendants build
6  new facilities and desire to change the specific terms of the order, they need to move for an
7  "adjustment," something they did not do.

8  Excluding Stockton from the calculus of the prisons that can be crowded at 137.5% would
9  not vitiate the courts' earlier pronouncements that construction could help the State achieve the
10 necessary crowding reduction: by sending prisoners to the newly-built Stockton facility, the State
11 reduces crowding at its original thirty-three prisons, thereby bringing Defendants closer to the
12 crowding cap.

13 Defendants argue that Plaintiffs' objection to the way they are counting design capacity is
14 "untimely" and "materially alters" the Court's prior orders.  This is simply re-writing history; the
15 court's orders explicitly and repeatedly define "systemwide" design capacity as the capacity of the
16 existing thirty-three prisons.  And even before the Stockton facility was completed, Plaintiffs told
17 Defendants and the Court that the Stockton facility should not be included in the "systemwide"
18 design capacity subject to the cap.  Feb. 7 2012 Austin Decl., ¶ 4 and Table 1 (ECF Nos. 2420-1/
19 4152-1) (population of Stockton should be subtracted out from systemwide prison population);
20 May 15, 2013 Austin Decl., p. 6 n. 1 (ECF Nos. 2621-1/4611-1) (completion of Stockton expected
21 to result in a decrease in systemwide prison population).

22 Despite the clear import of this court's orders and Plaintiffs' stated position, Defendants
23 now say they submitted their January 2014 request for an extension premised on the assumption
24 that the Court would permit them to count the Stockton beds toward the design capacity subject to
25 the cap.  Defs' Resp. to Pltfs; Mot to Define Capacity at 2-3 (May 8, 2014 ECF Nos.  2787/5147).
26 But Defendants never actually argued the point, or even made reference to why such an
27 adjustment to the terms of the crowding cap would be appropriate.  Defs' Amended App. For
28 Extension (Jan. 23, 2014 ECF Nos. 2755/5023).  In contrast, Plaintiffs' response explicitly argues

and explains why that accounting trick would be inappropriate. Pltfs' Objections to Defs' Proposed Order at 1-2, n. 2 (Jan. 28, 2014, ECF Nos. 2757/5026).

This Court should reject Defendants' use of sleight of hand to overinflate the population of the thirty-three prisons. For the reasons set forth above and in the moving papers, the Court should grant Plaintiffs' Motion to Define Design Capacity.

DATED: May 16, 2014                    Respectfully submitted,

PRISON LAW OFFICE

By:  /s/
      Rebekah Evenson

Attorneys for *Coleman* Plaintiffs
Attorneys for *Plata* Plaintiffs