KAMALA D. HARRIS
Attorney General of California
PATRICK R. MCKINNEY
Supervising Deputy Attorney General
ELISE OWENS THORN, State Bar No. 145931
CHRISTINE M. CICCOTTI, State Bar No. 238695
Deputy Attorney General
  1300 I Street, Suite 125
  P.O. Box 944255
  Sacramento, CA 94244-2550
  Telephone: (916) 324-4921
  Fax: (916) 324-5205
  E-mail: Elise.Thorn@doj.ca.gov
*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>                                Plaintiffs,<br><br>    v.<br><br>EDMUND G. BROWN JR., et al.,<br><br>                                Defendants. | 2:90-cv-00520 LKK DAD PC<br><br>**DEFENDANTS' RESPONSE TO MARCH 18, 2014 ORDER** |

Defendants respond to the Court's March 18, 2014 order, which directed them to report, on or before June 13, 2014, whether their revised mental health bed plan (the Blueprint) will meet the needs of the mental health population through December 2016 projected by the Spring 2014 population projections. (ECF No. 5116.)

Over the past five years, Defendants have engaged in considerable efforts to develop and implement a bed plan to meet the mental health needs of the prison population. Defendants have worked with their consultant, John Misener of McManis Consulting, to develop a process for forecasting and planning to ensure there is sufficient capacity to meet the needs of the mental health population. (Decl. Judy Burleson ¶ 3 & Ex. 1.) Defendants have sufficient beds within the

1

system which can be designated as mental health beds to meet both current and projected mental health bed needs to December 2016. (*Id.* ¶ 4.) Defendants continue to fully implement their 2012 bed plan and the Blueprint, including activating the California Health Care Facility and DeWitt Nelson Correctional Annex in Stockton. Mental health intake is scheduled to begin at DeWitt Nelson on June 23, 2014. (*Id.*) Once DeWitt Nelson is fully activated, there will be 375 Enhanced Outpatient Program-General Population beds and 50 Enhanced Outpatient Program-Administrative Segregation beds available to meet the needs of the mental health population.

In addition, Defendants have built flexibility into the system to meet ongoing needs. Compared with the Blueprint, the preliminary Spring 2014 mental health bed need study prepared by Defendants' consultant shows an increased need for certain mental health beds. Defendants are continuing to maintain beds beyond what the Blueprint requires, and will continue to use these beds to meet the need. (*Id.* ¶ 5.) The following chart compares the projected need with permanent and temporary mental health bed capacity:

| Mental Health Program | Spring 2014 Preliminary Bed Study Need Projected to 2016 | Blueprint Capacity | Additional Capacity | Total Capacity |
|---|---|---|---|---|
| Acute | 307 | 232 | 80 | 312 |
| ICF-High Custody | 747 | 624 | 126 | 750 |
| ICF-Low Custody | 377 | 340 | 50 | 390 |
| Mental Health Crisis Bed | 389 | 389 | -- | 389 |
| Psychiatric Services Unit | 395 | 512 | -- | 512 |

(Burleson Decl. ¶ 5 & Ex. 1; Decl. Pamela Ahlin ¶¶ 3 & 4.)

The Department of State Hospitals (DSH) continues to operate inpatient beds at the Salinas Valley and Vacaville Psychiatric Programs for high-custody inmates needing intermediate and acute inpatient care. (Decl. Pamela Ahlin ¶ 3.) Although these programs were initially intended to be temporary, DSH sought funding as identified in the May Revision to the Governor's Budget to continue to operate an additional 137 beds at Salinas Valley and Vacaville pending further activation of inpatient beds at Stockton. (*Id.*) Consistent with the Court's June 15, 2012 order

(ECF 4199 ¶ 3.a), DSH will continue to maintain the temporary beds at Salinas Valley and Vacaville until it is established that there are permanent beds to meet mental health needs. (Ahlin Decl. ¶ 5.) For low-custody inmates in need of intermediate inpatient care, DSH has maintained the current capacity of 256 beds, which is 50 beds more than required by the Blueprint. (*Id.* ¶ 4.)

In response to the Court's December 10, 2013 order, Defendants are converting 40 beds to provide intermediate inpatient care to the condemned inmates at San Quentin State Prison. (Burleson Decl. ¶ 6.) This new program will decrease the number of crisis beds system-wide by 17, but CDCR will more than address the projected need by continuing to operate the 34 bed temporary crisis bed unit at the California Institution for Men. (*Id.*) CDCR has 117 psychiatric services unit beds that are not occupied, which provides additional flexibility to address mental health needs. (*Id.* ¶ 7.) CDCR is also adding hundreds of beds through infill construction projects at Mule Creek State Prison and the RJ Donovan Correctional Facility, which are scheduled to be completed in 2016. (*Id.*) CDCR remains willing to use some of these beds to address mental health needs for the Enhanced Outpatient Program, if necessary. (*Id.*)

By maintaining beds at the temporary programs, there is more than sufficient capacity to meet the mental health need at the highest levels of care. (Burleson Decl. ¶¶ 4-7.) Defendants also note critical limitations to the preliminary Spring 2014 mental health bed need study, which may demonstrate that the projections overstate the actual need. First, the study is based on CDCR's Spring 2014 population projection, which includes six months of data and trends through December 31, 2013. (*Id.* ¶ 8.) On February 10, 2014, the *Coleman/Plata* Three-Judge Court extended the deadline to achieve the court-ordered reduction in the in-state adult institutions to 137.5% of design bed capacity to February 28, 2016. (ECF 5060 at 2.) Over the next two years, Defendants will reduce the population by several thousand inmates to meet the final benchmark. Defendants have been ordered to implement a number of measures designed to reduce the prison population, many of which will impact *Coleman* class members. (*Id.* at 2-3.) The only population-reduction measure the preliminary bed study takes into account is the prospective credit-earning increase (from 20% to 33.3%) for non-violent, non-sex second-strike offenders. (Burleson Decl. ¶ 8.)

1  Second, the preliminary mental health bed need study does not take into account population
2  shifts likely to result from the Court's April 10, 2014 order granting, in part, Plaintiffs' motion
3  relating to housing *Coleman* class members in segregation units. (*See* ECF No. 5131 at 73.) The
4  impact of the changes likely to result from the plans Defendants are developing in response to
5  that order are not addressed by the preliminary mental health bed need study, and cannot be
6  presently estimated with specificity. The preliminary study thus reflects a snapshot in time
7  ending December 31, 2013 that does not account for significant events and actual population
8  shifts that have occurred between January and June 2014.

Defendants have engaged with the Special Master and their consultant in a continuous process to forecast and address mental health need. Defendants currently have sufficient beds to meet the mental health needs of the population, and sufficient flexibility to meet future need. Although Defendants have enough beds throughout the system to meet the need, they remain committed to continue to work with their consultant and the Special Master to forecast need to ensure there are adequate beds and treatment space for all *Coleman* class members.

Dated: June 13, 2014

Respectfully submitted,

KAMALA D. HARRIS
Attorney General of California
PATRICK R. MCKINNEY
Supervising Deputy Attorney General

/s/ ELISE OWENS THORN

ELISE OWENS THORN
Deputy Attorney General
*Attorneys for Defendants*

CF1997CS0003
90408902.doc