KAMALA D. HARRIS
Attorney General of California
PATRICK R. MCKINNEY
Supervising Deputy Attorney General
ELISE OWENS THORN, State Bar No. 145931
CHRISTINE M. CICCOTTI, State Bar No. 238695
Deputy Attorneys General
1300 I Street, Suite 125
P.O. Box 944255
Sacramento, CA 94244-2550
Telephone: (916) 324-4921
Fax: (916) 324-5205
E-mail: Elise.Thorn@doj.ca.gov
*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **RALPH COLEMAN, et al.,**<br>Plaintiffs,<br>**v.**<br>**EDMUND G. BROWN JR., et al.,**<br>Defendants. | 2:90-cv-00520 LKK DAD<br>**DEFENDANTS' CORRECTED OBJECTIONS AND RESPONSES TO THE SPECIAL MASTER'S MAY 30, 2014 REPORT** |

**INTRODUCTION**

On May 30, 2014, the Special Master filed his report, as required by this Court's July 11, 2013 order, on inpatient mental health care provided to inmates of the California Department of Corrections and Rehabilitation (CDCR) at Department of State Hospitals (DSH) and CDCR facilities. (ECF No. 5156.) The Special Master made three recommendations for further action following extensive monitoring of the inpatient programs. Those recommendations do not require further court orders as DSH and CDCR have worked with the Special Master and continue to work with him and his team to address the issues raised in the recommendations. In addition to being unnecessary, as addressed in detail in Defendants' pending appeal of the Court's

July 11 order, any order adopting the Special Master's recommendations would constitute improper injunctive relief. Notwithstanding this objection, Defendants will continue to work with the Special Master to further improve the quality of inpatient mental health care services provided to the *Coleman* class.[1]

## I. PLAINTIFFS ARE NOT ENTITLED TO FURTHER INJUNCTIVE RELIEF.

Defendants have every intention of abiding by standing orders in this case, and have worked with and will continue to work with the Special Master and his experts as part of their continuous effort to improve the quality of mental health care provided to the *Coleman* class. Defendants do not, however, agree that the Court's July 11, 2013 order provides a legal basis for the imposition of the further injunctive relief requested by the Special Master. Defendants timely appealed the July 11, 2013 order. (ECF No. 4740.) The following issues have been fully briefed on appeal: (1) the order violates the PLRA's restriction on prospective relief because Plaintiffs failed to show and the Court did not find that the quality of inpatient care at DSH was constitutionally inadequate;[2] and (2) the order improperly relieved Plaintiffs of their burden of proof by directing the Special Master to investigate all DSH facilities although Plaintiffs presented no evidence on either their motion or at the hearing related to DSH-Atascadero, DSH-Coalinga, the California Health Care Facility (which had not yet opened), or the California Institution for Women Psychiatric Inpatient Program. (Appellants' Opening Br., Nov. 20, 2013.)

An order by this Court adopting the Special Master's recommendations would contravene the plain language of the PLRA's restrictions on prospective relief. See 18 U.S.C. § 3626(a)(1)

[1] Defendants have a number of specific points of clarification and corrections to inaccurate findings and statements in the Special Master's report, which will be submitted in a separate letter to the Special Master.

[2] Defendants acknowledge that the Court rejected Defendants' position that specific findings of constitutional violations by DSH were required in order to support the order (Order at 5, ECF No. 4925, Nov. 13, 2013.) In doing so, the Court, in its order responding to Defendants' objections to the Special Master's Report on the Salinas Valley Psychiatric Program, gleaned its authority from the "ongoing remediation of systemic Eighth Amendment violations in the delivery of constitutionally adequate mental health care to California's seriously mentally ill prisoners which has been monitored by a Special Master since 1995 and is part of that remedial process." *Id.* This conclusion is not based on any finding of current systemic failures by DSH or CDCR to provide inpatient care.

(A). Under the statute, a court is forbidden from granting prospective relief "unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." *Id*. Thus, at the very least, establishing the existence of a defendant's constitutional violation is a necessary predicate to any prospective injunctive relief order. *See id*.; *Webb v. Goord*, 340 F.3d 105, 111 (2d Cir. 2003) ("a federal court may not grant any prospective relief at all - let alone appoint a special master" without first making the required statutory findings).

This Court has never found that DSH provides constitutionally inadequate care to class members. At the evidentiary hearing and in their motion, Plaintiffs limited their evidence to the Salinas Valley Psychiatric Program and, to a lesser extent, the Vacaville Psychiatric Program. (Pls.' Mot. Enforcement Ct. Orders & Affirm. Relief 10-26, ECF No. 4543.) Plaintiffs' motion was supported with little more than disputed staffing statistics and anecdotal evidence regarding the Salinas Valley Psychiatric Program. ( *Id.*) Plaintiffs' witness testimony and arguments focused almost exclusively on issues at Salinas Valley. (*See, e.g.,* Hr'g Tr., June 19, 2013, ECF No. 4690.) In its order, the Court stated only that there was an evidentiary basis "for questioning" the adequacy of inpatient care. (Order, July 11, 2013, ECF No. 4688 at 11.) The Court nevertheless directed the Special Master to investigate all inpatient facilities operated by both DSH and CDCR (*id.*), which exceeded the PLRA's restrictions on prospective relief.

Consistent with the order, the Special Master extensively investigated all inpatient facilities operated by DSH and CDCR. The Special Master spent a total of 64 days monitoring the inpatient programs: 16 days at DSH-Atascadero (ECF No. 5156 at 58); 6 days at DSH-Coalinga (ECF No. 5156 at 97); 9 days at the Salinas Valley Psychiatric Program (ECF No. 5156 at 117); 12 days at the Vacaville Psychiatric Program (ECF No. 5156 at 145); 12 days at the California Health Care Facility (ECF No. 5156 at 184); and 9 days at the California Institution for Women Psychiatric Inpatient Program. (ECF No. 5156 at 218.)

For at least two facilities (DSH-Coalinga and the California Institution for Women Psychiatric Inpatient Program), the Special Master concluded that further on-site monitoring is

not necessary. (ECF No. 5156 at 55.) For DSH-Atascadero, further on-site monitoring will also be unnecessary if the facility increases psychiatry staffing levels. (ECF No. 5156 at 51.) For all facilities, the Special Master noted issues and areas for improvement, but not deliberate indifference necessary to support a constitutional violation. For example, while the Special Master team reviewed fourteen issues at all six DSH facilities, the report concluded that only two of the fourteen areas—staffing levels and policies governing patient access to treatment—required further evaluation. (ECF No. 5156 at 55-56.) The accompanying recommendations seek an order requiring Defendants to re-evaluate policies–they do not seek an order mandating the cessation of current policies. Although the Special Master should not have been ordered to monitor the inpatient programs in the first instance, his report provides no legal basis for adopting the recommendation requiring further burdensome monitoring and prospective injunctive relief.

## II. THE SPECIAL MASTER'S RECOMMENDATIONS DO NOT REQUIRE FURTHER INJUNCTIVE RELIEF.

The Special Master made three recommendations to the Court based on the monitoring of inpatient programs pursuant to the Court's July 11, 2013 order. (ECF No. 5156 at 55-56.) Specifically, the Special Master recommended that the Court direct him to further review and report on all six inpatient programs, by means of paper review of the California Institution for Women Psychiatric Inpatient Program and DSH-Coalinga, and by on-site monitoring of DSH-Atascadero, the California Health Care Facility, Salinas Valley Psychiatric Program, and Vacaville Psychiatric Program. (ECF No. 5156 at 55.) The Special Master further recommended that the Court direct him to work with CDCR and DSH to: (1) review and re-evaluate the use of orientation, cuff status, discretionary program status, and the steps/stages processes and any variations thereon at the six inpatient programs; and (2) review and re-evaluate existing clinical staffing levels in the six inpatient programs and their effect on the delivery of treatment, "and to the extent indicated, develop a plan to adjust clinical staffing levels where necessary to ensure that adequate and sufficient treatment can be delivered to CDCR patients at those programs." (ECF No. 5156 at 55-56.)

/ / /

Further injunctive relief is not required or warranted to effect the goals set forth in the Special Master's recommendations. Moreover, there is no reason to adopt the recommendations since each of the recommendations seek further review and evaluation of policies and procedures already in place, or which are currently being examined by DSH and CDCR.

**A. There Is No Need for the Court to Adopt Recommendation No. 1 Requiring Further Monitoring.**

In his first recommendation, the Special Master seeks to continue his paper review of the Psychiatric Inpatient Program at the California Institution for Women and DSH-Coalinga, and to continue on-site monitoring at DSH-Atascadero, the California Health Care Facility at Stockton, the Salinas Valley Psychiatric Program, and the Vacaville Psychiatric Program. (ECF No. 5156 at 55.) As stated above, the evidence presented in connection with Plaintiffs' motion and the Special Master's report do not support the conclusion that the inpatient programs violate the constitution. Despite Plaintiffs' lack of evidence, the Special Master reviewed all six inpatient programs. That review demonstrated that for at least two of the programs, on-site monitoring was not warranted. (ECF No. 5156 at 55.) This finding and the absence of findings of deliberate indifference necessary to support a constitutional violation for the other programs, shows that the Special Master's request to further monitor all of the inpatient programs is inappropriate.

**B. There Is No Basis for this Court to Adopt Recommendation No. 2 Requiring Defendants to Review and Revise Policies at the Inpatient Programs.**

The Special Master's second recommendation, if adopted, would require Defendants to review and re-evaluate policies governing the use of orientation, cuff, and discretionary program status, and the treatment steps/stages processes through which a patient must progress. (ECF No. 5156 at 55.) DSH has already reviewed and adopted new policies related to patient access to treatment. For example, on April 10, 2014, Salinas Valley Psychiatric Program adopted new policies incorporating the Special Master's recommendations on orientation, cuff, and discretionary program status. (Decl. of Dante Karas to Report on the Status of the Department of State Hospitals Salinas Valley Psychiatric Program, ECF No. 5142-1 ¶ 11.) The Special Master recognized DSH's efforts to incorporate the Special Master's recommendations into its revised

policies, dated April 10, 2014. (ECF No. 5156 at 52.) Further review and evaluation of these policies at Salinas Valley Psychiatric Program is unnecessary.

Rather than identify any constitutional or even policy deficiency, the Special Master's report emphasized that Defendants should adopt consistent policies for all inpatient programs. (ECF No. 5156 at 52.) But the report fails to indicate whether or how differences in policies impact the quality of mental health care provided at the individual facilities. The focus should be on whether policies are implemented at each facility so that care meets the constitutional standard. Policies concerning the movement of inmates are uniquely designed and tailored to meet the different custody levels and physical plant limitations at each facility. (Decl. Pam Ahlin ¶ 7.) Defendants disagree that this recommendation is either appropriate or necessary. Nevertheless, DSH is already reviewing these policies. (Decl. Pam Ahlin ¶ 7.)

### C. There Is No Basis for this Court to Adopt Recommendation No. 3 Regarding Staffing.

The Special Master's third recommendation, if adopted, would order Defendants to review and re-evaluate existing clinical staffing levels at all six inpatient programs. (ECF No. 5156 at 56.)

The Special Master found that staffing levels at three facilities—the California Institution for Women Psychiatric Inpatient Program, California Health Care Facility, and DSH-Coalinga—were generally adequate. (ECF No. 5156 at 53.) Any order adopting this recommendation should not extend to these facilities.

At the Vacaville Psychiatric Program, the Special Master criticized staffing although staffing levels have been adequate. (Decl. of Ellen Bachman ¶ ¶6-8.) For example, the established ratio for acute care is 1:15. (Decl. of Ellen Bachman ¶ 6.) Psychiatrists on one acute unit (P2) had a caseload averaging 16.5 during the March visit. (*Id.*) Because this unit has a total of 36 beds, with a full census and 2 psychiatrists assigned, each psychiatrist could reasonably treat 18 patients. (*Id.*) While this is slightly above the 1:15 ratio, it is hardly an indication of understaffing. (*Id.*) Furthermore, the Vacaville Psychiatric Program supplements its staff with Permanent Intermittent Employee psychiatrists as needed. (*Id.*) The three intermediate units cited

as exceeding the 1:35 ratio for psychiatry were L1, L3, and A2. (*Id.*) Unit capacity on L1 was 36 and census during the March visit was 36. (*Id.* at ¶ 7.) Capacity on L3 was 37, with an actual census of 35 during the March visit. (*Id.*) Capacity of A2 is 44, with a census of 41 during the March visit. (*Id.*)

CDCR and DSH continuously evaluate existing clinical staffing levels and work to retain appropriate, qualified mental health professionals. (Karas Decl., ECF No. 5142-1 ¶ 5; Decl. Stirling Price in Support of Mot. Re: Defs. Long-Range Mental Health Bed Plan and Update to Court, ECF No. 4984-1 ¶ 5; Decl. Pam Ahlin ¶ 8; Decl. Timothy Belavich ¶ 6.) Defendants already track and provide monthly data to the Special Master with *Coleman* related-staffing information for inpatient programs. (Decl. Pam Ahlin ¶ 8; Decl. Timothy Belavich ¶ 6.) No further injunctive relief is required to effect this recommendation.

**CONCLUSION**

The Special Master's report improperly requests that this Court enter further injunctive orders which are not supported by the report's findings or the evidence presented by Plaintiffs. Although further orders are not appropriate or necessary, Defendants will continue to work with the Special Master to review and where necessary, improve policies related to access to inpatient mental health care and staffing levels at inpatient facilities.

Dated: July 1, 2014

Respectfully submitted,

KAMALA D. HARRIS
Attorney General of California
PATRICK R. MCKINNEY
Supervising Deputy Attorney General

*/s/ Elise Owens Thorn*

ELISE OWENS THORN
Deputy Attorney General
*Attorneys for Defendants*

CF1997CS0003
32009529.doc