# EXHIBIT A

# [CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION REPORT ON COMPLIANCE WITH SECTIONS 2(b) AND 2(e) OF THE COURT'S APRIL 10, 2014 ORDER]

CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION
REPORT ON COMPLIANCE WITH SECTIONS 2(b) AND 2(e) OF THE COURT'S
APRIL 10, 2014 ORDER

INTRODUCTION

The California Department of Corrections and Rehabilitation (CDCR), in cooperation with the Special Master and counsel for the Plaintiff class, has made substantial changes to its policies and procedures to comply with sections 2(b) and 2(e) of the Court's April 10, orders, summarized as follows:

- CDCR will create specialty units for housing mentally ill inmates who are removed from the general population for disciplinary reasons. These units will provide inmates with additional out-of-cell activities and increased mental health treatment. (*See* Exhibit 1.)

- CDCR will undertake a case-by-case review of inmates with lengthy segregation terms in an attempt to decrease overall lengths of stay for inmates in segregated environments when it is determined that they can be safely returned to a general population setting. (*See* Exhibit 2.)

- Prior to discharge, CDCR will conduct thorough case reviews of all inmates housed in a Department of State Hospitals (DSH) unit or CDCR Psychiatric Inpatient Programs (PIP) with a pending Security Housing Unit (SHU) disciplinary term to ensure that the inmate is returned to appropriate housing and not returned to a SHU. (*See* Exhibit 3.)

Several of CDCR's proposals extend beyond the Court's orders by instituting policy changes that will impact how the Department is run and how class members are treated. These changes are focused on ensuring a strong collaborative environment between mental health and custody staff at both the local level, and at Headquarters, to ensure mental health input is fully considered in programming and housing decisions. These new policies emphasize treatment while in segregation, increased focus on the lengths of stay in segregation, and a thorough review of an inmate's risk of decompensation from being housed in segregation upon release from inpatient care.

DEFENDANTS' PLANS AND POLICY CHANGES DEVELOPED
IN RESPONSE TO SECTIONS 2(b) AND 2(e) OF THE APRIL 10, 2014 ORDER

### Alternative Mental Health Units for Correctional Clinical Case Management System Inmates in Segregated Housing

CDCR proposes two new housing units for inmates in the Correctional Clinical Case Management System (CCCMS) who are removed from the general population for disciplinary reasons – the CCCMS Short Term Restricted Housing Unit (CCCMS-STRH) and the CCCMS

1

Long Term Restricted Housing Unit (CCCMS-LTRH). (*See* Exhibit 1.) CCCMS inmates housed in these units will be provided additional out-of-cell time and treatment. These units change conditions of confinement in segregated units for this population by allowing inmates increased programming, increased mental health contacts, and increased structured mental health treatment, lessening the risk of decompensation while also allowing CDCR to maintain the safety and security of the institution.

*Requirements of the April 10 Order*

With respect to Administrative Segregation units, the court required CDCR to "work under the guidance of the Special Master to develop a protocol for administrative segregation decisions, including, as appropriate, a plan for alternative housing, that will preclude placement of any Coleman class member in existing administrative segregation units when clinical information demonstrates substantial risk of exacerbation of mental illness, decompensation, or suicide from such placement." (Order at p. 73.)

For inmates with SHU terms, the court "prohibited [CDCR] from housing any class member at any SHU in California unless that class member's treating clinician certifies that (1) the behavior leading to the SHU assignment was not the product of mental illness and the inmate's mental illness did not preclude the inmate from conforming his or her conduct to the relevant institutional requirements; (2) the inmate's mental illness can be safely and adequately managed in the SHU to which the inmate will be assigned for the entire length of the SHU term; and (3) the inmate does not face a substantial risk of exacerbation of his or her mental illness or decompensation as a result of confinement in a SHU. In addition, defendants are prohibited from returning any seriously mentally ill inmate to any SHU unit if said inmate has at any time following placement in a SHU required a higher level of mental health care." (Order at p. 74.)

*Steps Taken By CDCR in Developing the Plan*

On June 4, 2014, CDCR first met with the Special Master's team and presented proposals for providing alternative housing and treatment for CCCMS inmates removed from the general population for disciplinary reasons. CDCR again met with the Special Master's team on June 17, June 24, June 25, and July 10, 2014, to discuss further revised proposals.

On July 22, 2014, CDCR presented to both the Special Master and Plaintiffs' counsel a proposal for providing alternative housing for CCCMS inmates removed from the general population for disciplinary reasons. CDCR met with both the Special Master and Plaintiffs' counsel on July 24, 2014, and discussed CDCR's proposal. Following that meeting, the Court extended the time to comply with these portions of the order to August 15, 2014.

On August 4, 2014, Plaintiffs' counsel provided comments on CDCR's proposal. On August 6, 2014, CDCR met again with Plaintiffs' counsel and the Special Master. Following that meeting, the parties agreed to an extension of time until August 25, 2014.

2

On August 13, 2014, Plaintiffs' counsel and the Special Master toured the Standalone Administrative Segregation Unit at California State Prison, Sacramento to assess whether this type of unit would be appropriate for the CCCMS-STRH program. On August 14, 2014, CDCR provided draft memoranda to the Special Master and Plaintiffs' counsel. On August 18, 2014, CDCR provided current Local Operating Procedures on Administrative Segregation Units to the Plaintiffs' counsel and Special Master. Also on that date, Plaintiffs' counsel responded to CDCR's proposal.

On August 20, 2014, CDCR again met with the Special Master and Plaintiffs' counsel. Following that meeting, the parties again stipulated to an extension of time until August 29, 2014, which the Court granted. CDCR considered and sought to incorporate many of Plaintiffs' counsel's comments in its policies. On August 25, 2014, Defendants presented to the Special Master and Plaintiffs' Counsel revised versions of its plans. On August 27, 2014, CDCR again met with the Special Master and Plaintiffs' counsel to discuss these revised plans. At this meeting, the parties agreed that CDCR's policy memoranda and representations as to training and implementation address the requirements of the Court's April 10, 2014 Order for class members in segregation.

*CDCR's Plan Complies with the Court's Order*

The April 10 order generally permits CDCR to house *Coleman* class members in existing administrative segregation units unless clinical information demonstrates a substantial risk of exacerbation of mental illness, decompensation, or suicide from such placement. Similarly, the order permits CDCR to house *Coleman* class members in existing security housing units if a clinician certifies that the placement is appropriate. After meeting-and-conferring with Plaintiffs and in consultation with the Special Master, CDCR has chosen not to propose a certification process, but instead to address the Court's concerns by removing all CCCMS inmates from existing administrative segregation and security housing units and placing them in new dedicated housing units geared toward enhanced treatment and enhanced out-of-cell activities.

In all of the new units contemplated by CDCR's plans, CDCR will use a collaborative approach between custody and mental health staff to ensure the well-being of the inmates housed in these new units. In the CCCMS-STRH, mental health and custody staff will meet daily in the morning to discuss any ongoing behavioral issues or concerns, discuss new arrivals, and share information about any at-risk inmates. Custody and mental health staff will also participate jointly in interdisciplinary treatment team and Institutional Classification Committees (ICC), ensuring that information is shared in both settings so that staff can be aware of each inmate's mental health concerns. This collaboration will allow staff to prevent decompensation and quickly identify inmates who need a higher level of mental health care. CDCR will develop comprehensive training specific to the CCCMS-STRH and CCCMS-LTRH for all staff assigned.

## CCCMS-Short Term Restricted Housing Units for Males

1. *Out-of-Cell Program*

CDCR will offer CCCMS inmates in CCCMS-STRH 20 hours of out-of-cell time per week, double the time offered to CCCMS inmates in existing administrative segregation units. Of the 20 hours, 18.5 hours will involve exercise and recreational activity. CDCR will provide games and exercise equipment for inmate use on the exercise yards. Ninety minutes per week of out-of-cell time will consist of a structured therapeutic group activity. If adopted by the court, each inmate will now be offered out-of-cell time at least once a day, 7 days a week. The 20 hours out-of-cell time offered to each inmate does not include the time the inmate spends out of his cell for showers, attending his weekly primary clinician contact, and attending his IDTT.

CDCR will ensure sufficient staffing to provide additional out-of-cell activities.

2. *Physical Plant Design and Alterations*

To provide the enhanced mental health services and out-of-cell time in the CCCMS-STRH program, the parties have agreed that CDCR may house *Coleman* class members in Standalone administrative segregation units at nine designated institutions. The Standalone units offer a superior physical design that allows staff to offer increased out-of-cell activities while safely housing inmates removed from the general population for disciplinary issues. Each Standalone unit has its own dedicated yard space which allows for ease of access, inmate-patient movement, and scheduling. Additionally, each Standalone unit provides built in treatment space for both group and individual therapy. Defendants are mindful that in 2002, the parties stipulated and the Court ordered that CDCR could not house *Coleman* class members in Standalone Administrative Segregation Units without court approval. Both the Special Master and Plaintiffs agree that the concerns underlying the 2002 stipulation for use of the Standalone units have been addressed by the provisions of this plan, which include increased out of cell time, increased in-cell activities, increased clinical contacts, and access to electricity and cable in the cells.

Infrastructure upgrades to the exercise yards will provide lighting for early morning or evening yard. Where indicated, misters will be installed to cool the yards on hot days. Pull up or dip bars will be installed in the exercise yards, if not already installed.

3. *Suicide Prevention Measures and Mental Health Treatment Offerings*

Under its plan, CDCR will appropriately staff the CCCMS-STRH units with clinicians to provide a robust mental health care program.

Custody staff will make security checks utilizing the Guard One system twice per hour. CDCR will conduct daily rounds by licensed psychiatric technicians (LPT). Every day, custody and mental health staff will meet and discuss any current behavioral issues or concerns. Regular

monitoring by custody staff, LPTs and primary clinicians allows staff to be aware of each inmate's wellbeing and to prevent decompensation before it can start.

In addition to offering inmates the additional 90 minutes of structured group therapy per week, CDCR will also offer inmates a weekly out-of-cell confidential clinical contacts.

The CCCMS-STRH program is dedicated for CCCMS inmates, and class members will not mix with non-class members, resulting in a more therapeutic environment.

4. *Property and Privileges*

Standalone unit cells are provided electricity, allowing each inmate to have an electrical appliance in his cell. Each inmate in the Standalone unit will receive a general orientation packet and an STRH workbook, as well as pen fillers, paper, a calendar, a radio provided on the first day of placement for the duration of placement, nonfiction and fiction books, regular offering of puzzles, crosswords, games, current events materials, the unit's menu, and personal property such as photographs and notebooks.

<u>Reception Center Short Term Restricted Housing Program and<br>CCCMS-Short Term Restricted Housing Units for Females</u>

1. *Out-Of-Cell Program*

CCCMS inmates undergoing Reception Center Processing, and female CCCMS inmates removed from the general population for disciplinary reasons (Female CCCMS-STRH) will be offered 15 hours of out-of-cell activity per week, an additional 5 hours (or 50%) beyond what is currently provided. This 15 hours of out-of-cell time offered to each inmate does not include the time the inmate spends out of her cell for showers, attending her weekly primary clinician contact, and attending her IDTT. Ten of the 15 hours out-of-cell will be for recreational yard activity. The exercise yards will include various exercise equipment. CDCR will offer three and one-half hours of out-of-cell activity on the dayroom floor where physical structure permits. CDCR will also offer an additional 90 minutes of structured therapeutic group activity to CCCMS inmates.

2. *Suicide Prevention Measures and Mental Health Treatment Offerings*

In addition to out-of-cell activities, and the weekly 90 minutes of structured group therapy, CDCR will offer Reception Center CCCMS inmates and female CCCMS-STRH inmates in-cell therapeutic activities. CDCR will offer these inmates weekly out-of-cell clinical contacts with their primary clinician. They will receive daily rounding by a licensed psychiatric technician. Where indicated, they will be seen by a psychiatrist a minimum of every 90 days. Custody staff will make rounds twice per hour utilizing the Guard One monitoring system. Daily morning

5

meetings will also be held between custody and mental health staff to ensure communication between disciplines.

3. *Property and Privileges*

These inmates will also be offered one electrical appliance if the physical plant allows for it, and if not, they will be offered a radio.

## CCCMS-Long Term Restricted Housing Units

1. *Out-of-Cell Program*

Male and female CCCMS inmates serving SHU terms (CCCMS-LTRH) will be offered 15 hours of out-of-cell activity per week, an additional 5 hours (or 50%) beyond what is currently provided. This 15 hours of out-of-cell time offered to each inmate does not include the time the inmate spends out-of-cell for showers, attending weekly primary clinician contacts, and attending IDTT. Ten of the 15 hours will be allocated to recreational yard activity. The exercise yards will include balls and games for the inmates' use, and dip or pull up bars will be provided if not already in place. Misters will also be installed on the yard where necessary to address weather related concerns. CDCR will offer three and one half hours of out-of-cell activity on the dayroom floor by utilizing secure treatment modules. The 15 hours will also include 90 minutes of structured therapeutic group activity.

2. *Suicide Prevention Measures and Mental Health Treatment Offerings*

In addition to out-of-cell activities, and the 90 minutes of weekly structured group therapy, CDCR will offer CCCMS-LTRH inmates in-cell therapeutic activities. CDCR will also offer CCCMS-LTRH inmates weekly out-of-cell clinical contacts with their primary clinician. They will receive daily rounding by a licensed psychiatric technician. Where indicated, they will be seen by a psychiatrist a minimum of every 90 days. Custody staff will make rounds twice per hour utilizing the Guard One monitoring system.

The CCCMS-LTRH program is dedicated for CCCMS inmates, and class members will not mix with non-class members, resulting in a more therapeutic environment.

3. *Property and Privileges*

Similar to the CCCMS-STRH, inmates in CCCMS-LTRH will receive a general orientation packet and a LTRH workbook, as well as pen fillers, paper, a calendar, a radio for the duration of placement, nonfiction and fiction books, regular offering of puzzles, crosswords, games, current events materials, the unit's menu, and personal property such as notebooks and photographs.

*Implementation*

Upon approval by the Court of CDCR's proposed policies, CDCR will continue to work under the guidance of the Special Master, who may seek input from Plaintiffs' Counsel as he deems appropriate, in implementing these revised policies and procedures for class members housed in segregation. Implementation of these various new policies and procedures will require a comprehensive schedule and roll-out period to ensure their effectiveness. CDCR will work to establish this schedule in coordination with the Special Master. CDCR further understands that the effectiveness of the implementation of its plans will be reviewed in accordance with the Special Master's established monitoring process.

CDCR also agrees to continue to meet and confer with Plaintiffs' Counsel on the implementation of these revised policies, and their effectiveness, per the established processes in the *Coleman* litigation.

### Case-by-Case Segregation Length of Stay Review

Although not mandated by the April 10 order, CDCR proposes an initial system-wide (and later ongoing) case-by-case review of mentally ill inmates in segregation who have extended lengths of stay. (*See* Exhibit 2.)[1] The goal of this review is to encourage institutions to find ways to reduce the lengths of stay of class members in segregation, and to expeditiously return class members to less restrictive housing when they no longer pose a threat to the safety and security of the institution. CDCR expects that increased attention to this issue will result in a reduction of

---

[1] The Court, in a footnote, directed Defendants to "provide to the Special Master accurate information that clearly demonstrates the total length of time that any Coleman class member spends in any segregation unit or any segregated housing unit." (Order at p. 56, fn. 39.) CDCR has since evaluated and revised the manner in which it reports length of stay data to the Special Master and Plaintiffs each month. On August 12, 2014, CDCR provided the Special Master and Plaintiffs' counsel a revised length of stay report which lists MHSDS inmates in segregation by level of care and provides the total number of days an inmate has spent in a particular type of segregation unit. Notably, the new report does not reset the clock in the following situations: (1) Mental Health Crisis Bed admissions; (2) Outpatient Housing Unit admissions; (3) General Acute Care Hospital admissions; (4) Correctional Treatment Center admissions; (5) Out to court; (6) Out to medical (Outside hospital); (7) Department of State Hospital admissions; (8) Transfer between institutions; (9) Change in level of mental health care; and (10) Transfer between different segregation units (i.e. Administrative Segregation Unit to Psychiatric Services Unit).

the population in segregated housing, and ensure that an individualized determination is made for each inmate with a lengthy stay, based upon that inmate's case factors.

Under this proposed policy, CDCR will review inmates housed in ASU/CCCMS-STRH units for more than 150 days. CDCR will also review inmates housed in a SHU, Psychiatric Services Unit (PSU), or CCCMS-LTRH who are either serving a determinate SHU term for more than 30 continuous months but are over a year from release or inmates serving an indeterminate SHU term for at least two years. Departmental Review Board and Security Threat Group inmates will be reviewed under existing practices. The review will begin with those inmates having the longest lengths of stays. Once staff are trained, institutions will be given 90 to 180 days (depending on their respective segregation populations) to complete the case-by-case reviews. Institution staff will "determine if the inmate demonstrates an ongoing security risk that potentially threatens institution safety and security." The case-by-case review will include mental health staff input into the efficacy of the inmate's current treatment plan and whether mental health symptoms played a role in the disciplinary violation that caused the inmate to be placed in segregation.

Following the institution review, any inmates who meet the above criteria retained in segregated housing will be referred to a Long Term Segregated Case Conference, which will occur within 30 days of the decision to retain the inmate. The interdisciplinary case conference team will consist of the Associate Director, Warden, senior psychologist, supervisor, or supervising social worker, treating psychiatrist, correctional captain, correctional counselor, and any other pertinent staff. The conference will consider whether the inmate poses an ongoing risk to the safety of the institution and will consider mental health factors in making a determination to retain or release an inmate from segregation.

Any inmate who is not released to the General Population by the Long Term Segregated Case Conference, will be periodically re-reviewed for release through the same process, on a schedule to be determined by the Associate Director at intervals not to exceed 180 days for class members in SHU/PSU/CCCMS-LTRH, and 90 days for class members in the ASU/CCCMS-STRH.

*Implementation*

CDCR intends to complete training of staff who will be conducting the case-by-case reviews, and begin conducting the reviews starting on September 15, 2014. Staff will have 90 days thereafter to complete a review of all MHSDS ASU/CCCMS-STRH inmates house in segregation for over 150 days as of September 15, 2014. Staff will have 180 days thereafter to complete a review of all specified MHSDS SHU/PSU/CCCMS-LTRH inmates housed in segregation as of September 15, 2014.

**Case Conference for Discharging Inmate-Patients with a SHU Term from Inpatient Care**

Although the April 10 order does not require a policy or plan to be filed to address the mental health needs of inmates returning from DSH (or from a CDCR inpatient program) serving SHU terms, at the request of the Special Master, CDCR and DSH met to discuss a system to review this population. On August 20, 2014, CDCR and DSH discussed CDCR's proposal with the Special Master and Plaintiffs' counsel. Following that meeting, CDCR drafted the policy memorandum and presented it to the Special Master and Plaintiffs for further discussion, which took place on August 27, 2014.

CDCR and DSH are creating a system to address the mental health needs of inmates returning from DSH (or from a CDCR inpatient program) who had been admitted there directly from a SHU, or CCCMS-LTRH. (*See* Exhibit 3.) Prior to returning to CDCR, DSH and CDCR will meet regarding each inmate to discuss the strategies used to alleviate the inmate's symptoms, the inmate's adjustment within the inpatient environment, whether the inmate has maximized his or her benefit from the inpatient unit, strategies to consider to minimize the likelihood of decompensation, and whether the inmate can be safely housed at the CCCMS-LTRH or the CCCMS-STRH. In no event will an inmate be returned from DSH or CDCR inpatient care to the SHU.

The information gained from the case conference will be shared with both mental health and custody staff at the CDCR institution the inmate is returning to. Where a higher level of care is indicated, CDCR will not return the inmate to the SHU but instead place him or her in the appropriate alternative housing unit.