KAMALA D. HARRIS
Attorney General of the State of California
JONATHAN L. WOLFF
Senior Assistant Attorney General
JAY C. RUSSELL
PATRICK McKINNEY
Supervising Deputy Attorneys General
MANEESH SHARMA - 280084
Deputy Attorney General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
Telephone: (415) 703-5500
Facsimile: (415) 703-5843
Email: Patrick.McKinney@doj.ca.gov

HANSON BRIDGETT LLP
JERROLD C. SCHAEFER - 39374
PAUL B. MELLO - 179755
WALTER R. SCHNEIDER - 173113
SAMANTHA D. WOLFF - 240280
MEGAN OLIVER THOMPSON - 256654
425 Market Street, 26th Floor
San Francisco, California 94105
Telephone: (415) 777-3200
Facsimile: (415) 541-9366
pmello@hansonbridgett.com

Attorneys for Defendants

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

**AND THE NORTHERN DISTRICT OF CALIFORNIA**

**UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES**

**PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE**

| | |
|---|---|
| RALPH COLEMAN, et. al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>EDMUND G. BROWN JR., et al.,<br><br>    Defendants. | CASE NO. 2:90-cv-00520 KJM DAD P<br><br>**THREE-JUDGE COURT** |
| MARCIANO PLATA, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>EDMUND G. BROWN JR., et al.,<br><br>    Defendants. | CASE NO. C01-1351 TEH<br><br>**THREE-JUDGE COURT**<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR FURTHER ENFORCEMENT ORDER** |

## I. INTRODUCTION

As the most recent status and benchmark report shows, the State is 2,000 inmates *below* the 143% design bed capacity benchmark and has met the February 2015 benchmark as well. All of the court-ordered population reduction measures are well underway: Defendants are drafting regulations and updating their information-technology systems to accommodate the new parole process for non-violent second-strike offenders; they have already scheduled hearings and granted parole to medically incapacitated and elder parole inmates; eligible non-violent second-strike inmates are receiving enhanced credits; all thirteen reentry hubs are now activated; and a new facility for the expanded alternative custody program has been activated. Plaintiffs' attempt to micromanage the ongoing implementation of these measures is unnecessary and counterproductive.

## II. ARGUMENT

**A.    Implementation of New Parole Procedures Is Well Underway.**

Plaintiffs' contention that Defendants have not finalized or implemented parole processes for non-violent second strike offenders or persons eligible for elder parole is mistaken. (Pls.' Mot. to Enforce at 3:12-15.)

Since June 20, 2014, the Board of Parole Hearings (BPH) has granted parole to 63 inmates over age 60 and who have served at least 25 years. (Decl. J. Shaffer Supp. Defs.' Opp'n (Decl. Shaffer), ¶ 7.) On October 1, 2014, BPH will begin utilizing a revised risk assessment in all suitability hearings to determine how advanced age, long-term confinement, and diminished physical condition may impact the inmate's potential risk for future violence. (Decl. Shaffer, ¶ 7 & Defs.' Sept. 15, 2014 Status Update, Ex. B at ¶ 8, *Plata D.E.* 2811-2.) BPH is upgrading its information technology system to accommodate this parole measure and has already trained its commissioners. (Decl. Shaffer, ¶¶ 5 & 6.)

Defendants are also creating an entirely new parole process for non-violent second-strike offenders. Implementing this measure has required developing eligibility criteria, the process for reviewing cases, creating staff roles, and integrating this new measure into existing information technology systems. (Decl. R. Meier Supp. Defs.'

Opp'n (Decl. Meier), ¶ 2.) The May 2014 Revision to the Governor's Budget allocated additional funding to support these efforts. (*Id.* ¶ 4.) Defendants are developing an implementation process that includes, but is not dependent upon, the regulatory process. (*Id.* ¶ 3.)

Defendants are in full compliance with the Court's order. They immediately began work on creating and implementing this new parole measure and have made substantial progress. Requiring immediate implementation of the new parole process for non-violent second strike inmates, with truncated review process, would result in a haphazard policy that could endanger the public and not serve the goals of developing "comprehensive and sustainable prison population-reduction reforms." (*Plata* D.E. 2766 at 1.)

**B.   Minimum Custody Inmates Cannot Earn Enhanced Credits Without Detrimentally Impacting The Fire Camp Population**

Plaintiffs baldly assert—without *any* supporting evidence—that granting 2-for-1 credits to minimum custody inmates who are ineligible for fire camps "would have *no* impact on participation in fire camps." (Pls.' Mot. at 2:12-13, emphasis in original.)[1] Plaintiffs' argument is based on a mistaken and simplistic understanding of how the correctional system operates.

Fire camp placement has become increasingly difficult as the number of potentially eligible inmates has been diminished by realignment. (Decl. Vimal Singh Supp. Defs.' Opp'n (Decl. Singh), ¶ 2; *see also* Decl. Wolff, Ex. B.) Strict criteria limiting fire camp eligibility to low-level, non-violent offenders are necessary because fire camp participants are housed in non-secure facilities and are in contact with members of the public in their role as firefighters. (Decl. Singh, ¶ 2.) To incentivize participation in this voluntary program, CDCR offers 2-for-1 credits. (*Id.* ¶ 4.) Notwithstanding this incentive, there is a

---

[1] Plaintiffs made no meaningful effort to meet and confer prior to the filing. The parties exchanged one letter apiece on this issue, and Defendants' letter explained in detail why the expansion of credits was not feasible. (Decl. S. Wolff Supp. Defs.' Opp'n to Pls.' Mot. to Enforce (Decl. Wolff), ¶¶ 2, 3 & Exs. A, B.)

constant need for volunteers. (*Id.*)

Extending 2-for-1 credits to all minimum custody inmates at this time would severely impact fire camp participation—a dangerous outcome while California is in the middle of a difficult fire season and severe drought.

CDCR offers minimum custody inmates the opportunity to be placed in a minimum support facility (MSF) where they perform a variety of critical job duties outside a prison's secure perimeter, including assignments necessary for the continued operation of the institution and essential to local communities.[2] (Decl. Singh, ¶ 5.) Like fire camps, minimum support facilities draw from the same limited population of low-level, non-violent offenders. (*Id.*) The extension of 2-for-1 credits to all MSF inmates would likely make fire camp beds even more difficult to fill, as low-level, non-violent inmates would choose to participate in the MSF program rather than endure strenuous physical activities and risk injury in fire camps. (*Id.* ¶ 6.)

Even the extension of 2-for-1 credits solely to MSF inmates who are fire camp ineligible would impact fire camps. Nearly two-thirds of the MSF population is fire camp ineligible; the extension of enhanced credit-earning to these inmates would result in higher turnover and an even greater demand for minimum custody inmates. (*Id.* ¶ 7.) CDCR would be forced to draw down its fire camp population to fill these vital MSF positions. (*Id.*) It is simply unnecessary, and inconsistent with the Court's order, to disrupt participation in fire camps and other vital programs when the Court's benchmark has been met.

**C.   Defendants Have Exercised Their Discretion To Exclude Sex Offenders From Those Eligible For Credit Increases**

This Court has consistently indicated its desire to create a flexible framework within which Defendants may fashion reform measures designed to reduce the prison

---

[2] Such job assignments include garage, recycle and refuse collections, Plant Operations positions in support of institutional tradespersons, Caltrans, and city park crews. (*Id.* ¶ 5.)

population.  (*See, e.g.*, June 20, 2013 Order, *Plata D.E.* 2659 at 2:26: "[t]his Court desires to continue to afford a reasonable measure of flexibility"; *Brown v. Plata*, 131 S.Ct. 1910, 1940 (2011): "The order of the three-judge court gives the State substantial flexibility to determine who should be released.".)  Within that framework, Defendants implemented increased credits for non-violent second-strike offenders and excluded sex offenders from this program in order to minimize the risks to public safety.  Defendants have always indicated that this population measure would exclude sex offenders.

As early as May 2, 2013, Defendants stated that a reform that increased the credit-earning capacity of second-strike offenders would exclude sex offenders.  (*Plata D.E.* 2609 at 37:1-3: "Defendants estimate that the prison population could be reduced by approximately 37 inmates by December 31, 2013 if the credit-earning capacity of inmates convicted of "second-strike" felonies (*excluding sex offenders*) is expanded from 20% to 34%." (emphasis added).)

Defendants' seven monthly status updates to this Three-Judge Court since March of this year have all stated that sex offenders are excluded from increased credit earning programs for non-violent offenders.  (Ex. B, *Plata* D.E. 2775-2; Ex. B, *Plata* D.E. 2780-2; Ex. B, *Plata* D.E. 2789-2; Ex. B, *Plata* D.E. 2792-2; Ex. B, *Plata* D.E. 2800-2; Ex. B, *Plata* D.E. 2809-2; Ex. B, *Plata* D.E. 2811-2.)  Despite sex offenders' ineligibility for enhanced credit earning, Defendants nonetheless met and exceeded the most recent benchmark by 2,000 inmates.  (Defs.' September 2014 Status Report, *Plata* D.E. 2811 at 2:6-7.)  Defendants should be afforded the discretion to determine how to implement these measures in a manner consistent with the Court's benchmarks and public safety.

### III.    CONCLUSION

Defendants have made significant strides in implementing population-reduction reforms.  The additional reforms Plaintiffs demand be implemented—extension of enhanced credits to sex offenders and MSF inmates—are ill-advised and unnecessary given the current status of the prison population.  Accordingly, Defendants respectfully request that this Three-Judge Court deny Plaintiffs' motion.

| | | |
|---|---|---|
| 1 | Dated: September 30, 2014 | KAMALA D. HARRIS<br>Attorney General of California |
| 2 | | |
| 3 | | /s/ Patrick R. McKinney |
| 4 | | PATRICK R. MCKINNEY<br>Supervising Deputy Attorney General<br>*Attorneys for Defendants* |
| 5 | | |
| 6 | Dated: September 30, 2014 | HANSON BRIDGETT LLP |
| 7 | | /s/ Paul B. Mello |
| 8 | | PAUL B. MELLO<br>*Attorneys for Defendants* |

9734320.1