KAMALA D. HARRIS
Attorney General of the State of California
JONATHAN L. WOLFF
Senior Assistant Attorney General
JAY C. RUSSELL
PATRICK McKINNEY
Supervising Deputy Attorneys General
MANEESH SHARMA - 280084
Deputy Attorney General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA  94102-7004
Telephone: (415) 703-5500
Facsimile: (415) 703-5843
Email:   Patrick.McKinney@doj.ca.gov

HANSON BRIDGETT LLP
JERROLD C. SCHAEFER - 39374
PAUL B. MELLO - 179755
WALTER R. SCHNEIDER - 173113
SAMANTHA D. WOLFF - 240280
MEGAN OLIVER THOMPSON - 256654
425 Market Street, 26th Floor
San Francisco, California 94105
Telephone:    (415) 777-3200
Facsimile:     (415) 541-9366
pmello@hansonbridgett.com

Attorneys for Defendants

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

# AND THE NORTHERN DISTRICT OF CALIFORNIA

# UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

# PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| RALPH COLEMAN, et. al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>EDMUND G. BROWN JR., et al.,<br><br>　　　　Defendants. | CASE NO. 2:90-cv-00520 KJM DAD P<br><br>**THREE-JUDGE COURT** |
| MARCIANO PLATA, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>EDMUND G. BROWN JR., et al.,<br><br>　　　　Defendants. | CASE NO. C01-1351 TEH<br><br>**THREE-JUDGE COURT**<br><br>**DECLARATION OF VIMAL SINGH IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR ENFORCEMENT ORDER** |

I, Vimal Singh, declare as follows:

1.  I am the Associate Director of the Reception Centers Mission for the California Department of Corrections and Rehabilitations. I have held this position since June 20, 2013. My job duties include oversight of 10 institutions, including 5 reception center institutions, condemned housing units, 4 institutions where fire camps are located, and the minimum support facility (MSF) operations at these institutions. I am competent to testify to the matters set forth in this declaration, and if called upon to do so, I would and could so testify. I submit this declaration in support of Defendants' opposition to Plaintiffs' motion for enforcement order.

2.  Fire camp placement has grown increasingly difficult as the number of potentially eligible inmates has diminished following realignment. This is because strict criteria limit fire camp eligibility to low-level, non-violent offenders, among other criteria relating to time left to serve, commitment offense, medical clearance, and in-custody behavioral history. These strict eligibility criteria are necessary because fire camp participants are housed in non-secure facilities. Additionally, in their role as firefighters, these inmates are in contact with local communities and members of the public.

3.  Fire camp participants must undergo a rigorous physical fitness training program and must meet certain minimum threshold fitness requirements to qualify for placement into the program. There are many inmates who, despite being eligible for fire camp placement based on their classification score, commitment offense, and behavioral history, cannot pass or choose not to complete the training program.

4.  To incentivize participation in this voluntary program, CDCR offers 2-for-1 credits to maintain an adequate stream of inmate volunteers. As a result of regular attrition through parole and/or disciplinary action, there is a constant need for volunteers.

5.  CDCR also offers low-level, non-violent inmates the opportunity to be placed in a minimum support facility (MSF), where inmates perform a variety of job duties *outside* a prison's secure perimeter that are critical to the daily functioning of each institution, including garage, recycle and refuse collections, and various Plant Operations

positions in support of institutional tradespersons.  MSF inmates also perform jobs essential to local communities, such as Caltrans and city park crews.  MSF inmates, unlike fire camp inmates, do not have to undergo a strenuous physical fitness training program and are therefore not required to meet certain physical eligibility criteria.

6.  The extension of 2-for-1 credits to all MSF inmates would likely make fire camp beds even more difficult to fill, as low-level, non-violent inmates would choose to participate in the MSF program rather than endure strenuous physical activities and risk injury in fire camps.

7.  I also believe that extending 2-for-1 credits solely to MSF inmates who are fire camp ineligible would also impact fire camp participation.  Nearly two-thirds of the MSF population is not qualified to volunteer for fire camp placement.  By extending 2-for-1 credits to the majority of the MSF population, higher turnover would result, creating an even greater demand for low-level, non-violent inmates.  Because the population of low-level, non-violent inmates is already strained, CDCR would be forced to draw down its fire camp population to fill these vital MSF positions.  This would further deplete the fire camp population.

I declare under penalty of perjury that the foregoing is true and correct.  Executed in Sacramento, California on September 30, 2014.

     */s/ Vimal Singh*
     Vimal Singh