# Exhibit A

**From:** Rebekah Evenson [mailto:revenson@prisonlaw.com]
**Sent:** Tuesday, August 12, 2014 11:22 AM
**To:** Rice, Benjamin@CDCR
**Cc:** Don Specter; Tebrock, Katherine@CDCR
**Subject:** three judge/ minimum custody credits

Ben,

We would like to talk to you about the status of implementation of the Court's Feb. 10 order.  Specifically, we'd like to discuss t minimum custody credit earning.

Your statements have told the court you are "evaluating" the additional 2:1 minimum custody credits, but the Feb 10 order requires that CDCR "immediately"  implement that measure:  "Minimum custody inmates will be eligible to earn 2-for-1 good time credits to the extent such credits do not deplete participation in fire camps where inmates also earn 2-for-1 good time credits."
As you know, there are many minimum custody inmates who are ineligible for fire camps, and for whom granting credits could never "deplete participation in fire camps."  For example, prisoners with significant disabilities – or serious medical conditions, or less than a year to serve -- cannot go to fire camp.  Preventing them from earning 2:1 credits would have no impact on participation in fire camps.
We'd like to meet to discuss with you:
1.      immediately granting the credits to min custody prisoners who are ineligible for fire camp due to 1) disability; 2) medical condition; 3) length of time remaining on sentence; and
2.      Your analysis about whether granting 2:1 credits to all minimum custody inmates would deplete participation in fire camps.
Please let us know some times in the next three weeks when you are available to meet.

Best,
Rebekah and Don


Rebekah Evenson
*Staff Attorney*
PRISON LAW OFFICE
1917 Fifth Street
Berkeley, CA 94710-1916
Telephone (510) 280-2621
Fax (510) 280-2704
www.prisonlaw.com
_____

*This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies.*

# Exhibit B

# Samantha Wolff

| | |
|---|---|
| **From:** | Samantha Wolff |
| **Sent:** | Monday, September 15, 2014 12:42 PM |
| **To:** | revenson@prisonlaw.com |
| **Cc:** | 'benjamin.rice@cdcr.ca.gov'; Katherine Tebrock; Paul B. Mello; 'Jonathan Wolff'; 'jay.russell@doj.ca.gov'; Patrick McKinney ; Maneesh Sharma; Gabriel Sanchez |
| **Subject:** | Plata/Three Judge Court - MSF credits |

Rebekah,

Thank you for your patience in awaiting our response to your question pertaining to MSF inmates.  MSF and fire camp are independent and unique programs that serve different goals and have different eligibility criteria.  Whether or not an inmate is qualified for either program is determined separately, with evaluations being done on a case-by-case basis.  At this time, CDCR does not plan to extend 2-for-1 credits, which are part of the fire camp program,  to the MSF program.  CDCR has determined that the extension of such credits would fundamentally alter and adversely affect both the fire camp and MSF programs.  CDCR will therefore not be adding 2-for 1 credits to the MSF program.  CDCR continues to reevaluate this decision on an ongoing basis.

As you will soon learn from Defendants' September 15, 2014 status update, CDCR will meet and exceed the 143% benchmark.  Indeed, we anticipate that CDCR will be at least 2,000 inmates *below* the benchmark.  Because CDCR has continued to meet its benchmarks, we do not believe that it is necessary at this time to consider the implementation of additional credit-earnings to the detriment of program participation.  CDCR will reevaluate this decision when and if the need arises.

Additionally, and as you noted in your August 12 email to Ben Rice, the Court's February 10 order provides that Defendants  should implement 2-for-1 credit-earning for minimum custody inmates *so long as* such credit-earnings do not deplete fire camp participation.  After extensively studying this issue, we have serious concerns about the impact of increased credit-earning to a different program for non-fire camp participants.  It has become increasingly difficult to fill fire camp openings, due in part to the vigorous physical fitness training program that is required of the participants, and the decline of potentially eligible inmates following realignment.  To incentivize participation, CDCR offers fire camp participants 2-for-1 credits.  If inmates were awarded the same credit-earnings for MSF participation, which does not have any physical fitness requirements, it would compound the difficulties CDCR already faces in filling fire camp openings.

Further, awarding 2-for-1 credits to a subset of MSF inmates who are not qualified for fire camp placement would not assist CDCR in relieving crowding and would detrimentally impact MSF operations.  MSF inmates perform a variety of job duties outside the secure perimeter, including assignments critical to the continued operation of the institution such as warehouse, garage, out grounds, recycle and refuse collections, as well as various Plant Operations positions in support of institutional tradespersons.  Additionally, many of these inmates provide important service to our communities through assignment to Off-Reservation Community Work Crews.  Almost two-thirds of the MSF population is not qualified for fire camp placement.  If these inmates were granted 2-for-1 credits, it would become increasingly difficult, if not impossible, to staff MSF jobs that are necessary to prison operations.  In order to staff critical MSF jobs, CDCR would have to place Fire Camp qualified inmates in the MSF beds, which would diminish the number of fire camp inmates.  Moreover, the MSF population is not currently experiencing crowding.  Simply put, this is not the place to focus crowding-reduction efforts since crowding is not an issue for this population and their participation in MSF jobs is critical to prison operations.

CDCR continues to monitor and consider these and other programs for credit-earning incentives on an ongoing basis.

Sincerely,
Samantha

---

**Samantha Wolff**
**Senior Counsel**
Hanson Bridgett LLP
(415) 995-5020 Direct
(415) 995-3547 Fax
swolff@hansonbridgett.com



 

---

This communication, including any attachments, is confidential and may be protected by privilege. If you are not the intended recipient, any use, dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify the sender by telephone or email, and permanently delete all copies, electronic or other, you may have.

The foregoing applies even if this notice is embedded in a message that is forwarded or attached.