DONALD SPECTER – 083925
STEVEN FAMA – 099641
ALISON HARDY – 135966
SARA NORMAN – 189536
REBEKAH EVENSON – 207825
PRISON LAW OFFICE
1917 Fifth Street
Berkeley, California 94710-1916
Telephone: (510) 280-2621

MICHAEL W. BIEN – 096891
JANE E. KAHN – 112239
ERNEST GALVAN – 196065
ROSEN BIEN GALVAN &
GRUNFELD LLP
315 Montgomery Street, Tenth Floor
San Francisco, California 94104-1823
Telephone: (415) 433-6830

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURTS

EASTERN DISTRICT OF CALIFORNIA

AND NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES

PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>EDMUND G. BROWN, JR., et al.,<br><br>　　　　　Defendants. | Case No. Civ S 90-0520 KJM DAD PC<br><br>**THREE JUDGE COURT** |
| MARCIANO PLATA, et al.,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>EDMUND G. BROWN, JR., et al.,<br><br>　　　　　Defendants. | Case No. C01-1351 TEH<br><br>**THREE JUDGE COURT**<br><br>**REPLY IN SUPPORT OF MOTION FOR FURTHER ENFORCEMENT ORDER** |

### I. Defendants Admit That They Are Not Granting Credits to Minimum Custody Inmates Who Are Ineligible For Fire Camps.

Defendants admit that notwithstanding the Court's February 10, 2014 order they do not grant two-for-one credits to minimum custody prisoners, even those who are ineligible for fire camps.

Defendants claim that extending credits to prisoners ineligible for fire camps would deplete participation in *other* jobs performed by minimum custody prisoners, such as work assignments in the "garage" or "recycle and refuse collections" crews, or "city park crews" Defendants' Opposition to Plaintiffs' Motion for Further Enforcement Order ("Opp. Br.") at 4 & 4, n. 2. But the February 10 Order does not permit CDCR to withhold credits in order to ensure they have prisoner-labor for garage work, garbage collection, or work in city parks; it only permits CDCR to limit credits where doing so would deplete participation in fire crews – a narrow exception which was specifically defined by Defendants when they applied for their extension of time. Feb. 10, 2014 Order at 3; Defs' [Proposed] Order granting Defs' App. for Extension at 2, Jan. 23, 2014.

Defendants baldly assert that if the labor pool for their garage, garbage, and city park crews is reduced, then "CDCR would be forced to draw-down its fire camp population to fill these vital MSF positions." Opp. Br. at 4. That is a red herring; Defendants would not be "forced" to do anything. They could hire public employees to perform tasks like garbage collection, garage work and recycling; if they deplete the fire crews in order to staff their garage crews, that would be their own *choice* – a dubious choice in light of their assertion that reducing fire camp participation would be "a dangerous outcome while California is in the middle of a difficult fire season and a severe drought." Opp. Br. at 4.[1] The Court should order Defendants to adhere to the plain terms

---

[1] Defendants also assert that granting additional credits to *all* inmates would reduce one incentive for prisoners to sign up for fire camp. Opp Br. at 3-4. But that ignores Plaintiffs' point – granting the credits to prisoners *ineligible* for participation in fire camps (footnote continued)

of its order, which would require at the least that Defendants grant two-for-one credits to minimum custody inmates ineligible to participate in fire camps.

## II. Defendants Admit They Are Not Granting Credits to all Non-Violent Second Strikers.

Defendants also admit that they are not granting credits to all non-violent second strikers, notwithstanding this Court's order. Opp. Br. at 5. They make an even flimsier defense of this violation, asserting that they are entitled to unilaterally change the credit-earning criteria because the Court had "indicated its desire to create a flexible framework within which Defendants may fashion reform measures designed to reduce the prison population." *Id.* (citing the Court's June 20, 2013 Order at 2). That statement profoundly misrepresents the Court's prior orders.

In the June 20, 2013 Order that Defendants rely upon, the Court ordered Defendants to implement a specific population reduction plan, but gave Defendants the right to make certain narrowly circumscribed changes to the plan:

> This Court desires to continue to afford a reasonable measure of flexibility to defendants, notwithstanding their continued failure to cooperate with this Court. To this end, this Court offers defendants three ways in which they can amend the Amended Plan. First, defendants may, if they prefer, revise the expanded good time credit program, so long as defendants' revision results in the release of at least the same number of prisoners as does the expanded measure. This Court will not specify the changes defendants must make in order to meet this requirement. Defendants must inform this Court in a timely manner, however, of their decision to make such changes.

June 20, 2013 Order at 2-3. In that same Order, the Court noted Defendants' long history of non-compliance with prior orders:

> [Plaintiffs' motion for an order to show cause re contempt] has considerable merit. We explained at length in our April 11, 2013 Opinion & Order how defendants' conduct between June 2011 and March 2013 has included a series of contumacious actions. Apr. 11, 2013 Op. & Order at 63-65 (ECF

---

can have no such effect. And Defendants admit that two thirds of minimum custody inmates are ineligible for fire camps. Opp. Br. at 4.

No. 2590/4541). The most recent, and perhaps clearest, example of such an action is defendants' failure to follow the clear terms of our April 11, 2013 order, requiring them to submit a Plan for compliance with our Order, not a Plan for non-compliance. This Court would therefore be within its rights to issue an order to show cause and institute contempt proceedings immediately. Our first priority, however, is to eliminate the deprivation of constitutional liberties in the California prison system. To do so, we must first ensure a timely reduction in the prison population to 137.5% design capacity by December 31, 2013. We will therefore **DEFER** ruling on plaintiffs' motion, and defer instituting any contempt proceedings related to defendants' prior acts until after we are able to determine whether defendants will comply with this order . . . .

June 20, 2013 Order at 50-51 (emphasis in original).[2]

After having been granted the "flexibility" to design their own population reduction plan, and warned about possible contempt sanctions, Defendants nonetheless informed the Court that they will begin sending "thousands of additional inmates out of state" unless the Court gives them additional time to comply with the population cap through more "sustainable" measures. Defs' Application for Extension of Time, Sept. 16, 2013 at 2.

The Court then ordered the parties to meet and confer about "how this Court can ensure a durable solution to the prison crowding problem." Order to Meet and Confer, Sept. 24, 2013 at 2. Following an extended meet and confer process, Defendants filed an "amended" application for an extension of the crowding cap deadline, this time proposing that the Court grant them an extension of time and in exchange they would agree to a Court order that requires them to implement specifically-defined population reduction measures. Defs' Amended App. For Extension of Time and Proposed Order, Jan. 23, 2014. Defendants promised not to appeal from any such order. *Id.* at 3.

---

[2] Defendants immediately sought a stay of the June 20, 2013 Order (Defs' Mot for Stay, June 26, 2013), which the Court denied. Order Denying Mot to Stay, July 3, 2014 at 24 ("After this long history of defendants' noncompliance, this Court cannot in good conscience grant a stay that would allow defendants to both not satisfy the Population Reduction Order and relitigate the Supreme Court's emphatic decision in the very case before us.") Defendants then appealed to the United States Supreme Court, which also denied the stay and dismissed the appeal.

It is only in reliance upon this promise to adhere to the contours of the new plan, and the promise not even to appeal from the order, that the Court granted the extension and ordered Defendants to implement the precise measures set forth in their plan. Feb. 10, 2014 Order at 1-2.

In light of this extended history, it almost defies belief that Defendants now claim that the Court must grant them "flexibility" in deciding whether or not to implement the measures listed in their own proposed order and adopted by the Court. The Court's February 10, 2014, order is not flexible. It's very specific and rigid nature was necessary in light of Defendants long history of contumacious conduct. There is no wiggle room in the order: Defendants must implement it in full. As such, Defendants must be required to grant additional credits to *all* non-violent second strikers, not just the ones whom they now wish to favor.

### III. Defendants Are Unduly Delaying the Court-Ordered Parole Reforms

Defendants must also be required to strictly adhere to the Order requiring them to implement parole reforms "immediately." Defendants were ordered to "create and implement a new parole determination process" for non-violent second strikers "immediately." Feb. 10, 2014 Order at 3. Defendants now claim that they will implement such a program in July 2015 – seventeen months after the Court's order. Meier Decl, ¶ 5. This hardly qualifies as "immediate." The Court should order Defendants to implement the measures by the first of the year.

### IV. Conclusion

Defendants persuaded this Court to give them two more years to comply with its crowding reduction order in exchange for their promise to immediately undertake specifically-defined population reduction measures that they claimed would present a "durable" solution to the crowding problem. Defs' Amended App for Extension of Time, Jan. 23, 2014 at 2. Now that Plaintiffs have demonstrated that Defendants are not actually doing what they promised and what the Court ordered, Defendants baldly assert that this

Court has no role "micromanag[ing]" their population reduction efforts. Opp. Br. At 2. Nothing could be further from the truth. This Court has issued order after order that Defendants have ignored or flat-out defied. This Court granted the most recent extension of time only because Defendants had "belated[ly]" shown that they are "prepared to take the necessary steps toward achieving a durable solution, without additional costly and wasteful litigation and delay." Opinion re: Order Granting in Part and Denying In Part Defs' Request For Extension of December 31, 2013 Deadline, Feb. 10, 2014 at 3.

Two weeks ago, in a case involving these same Defendants, the Ninth Circuit held:

> Disabled inmates have been litigating to ensure that the State provides them with needed accommodation for over two decades – and yet the State still has a long, long way to go before it meets its obligations to these prisoners. The ongoing, intractable nature of this litigation affords the district court considerable discretion in fashioning relief.

*Armstrong v. Brown*, ___ F.3d ____, 12-17103, 2014 WL 4783091, at *9 (9th Cir. Sept. 26, 2014). The Ninth Circuit upheld an injunction that left "the State less discretion than injunctions typically approved in the PLRA context" because "the level of intrusiveness is acceptable based on the history and circumstances of the case." *Id.* at *8.

The history and circumstances of the current dispute warrants a similar result. The Court should enter a further enforcement order requiring Defendants to implement two-for-one credits for minimum custody inmates ineligible for fire camps, requiring Defendants to grant 33% credits to all non-violent second strikers, and setting a hard deadline for Defendants to implement new parole procedures.

DATED: October 7, 2014

        Respectfully submitted,

        PRISON LAW OFFICE

        By: */s/ Rebekah Evenson*
            Rebekah Evenson

        Attorneys for *Coleman* Plaintiffs
        Attorneys for *Plata* Plaintiffs