1  CLAUDIA CENTER – 158255
   AMERICAN CIVIL LIBERTIES UNION
2  FOUNDATION
   DISABILITY RIGHTS PROGRAM
3  39 Drumm Street
   San Francisco, California  94111
4  Telephone:   (415) 343-0770
   Facsimile:   (415) 395-0950
5  Email:       ccenter@aclu.org

6

7  MICHAEL W. BIEN – 096891
   ERNEST GALVAN – 196065
8  BLAKE THOMPSON – 255600
   ROSEN BIEN
9  GALVAN & GRUNFELD LLP
   315 Montgomery Street, Tenth Floor
10 San Francisco, California  94104-1823
   Telephone:  (415) 433-6830
11 Facsimile:   (415) 433-7104
   Email:       mbien@rbgg.com
12               egalvan@rbgg.com
                 bthompson@rbgg.com
13

14 Attorneys for Plaintiffs

KAMALA D. HARRIS – 146672
Attorney General of California
JAY C. RUSSELL – 122626
Supervising Deputy Attorney General
MICHAEL J. Quinn – 209542
Deputy Attorney General
455 Golden Gate Avenue, Suite 11000
San Francisco, California  94102-7004
Telephone:   (415) 703-5717
Facsimile:   (415) 703-5843
E-mail:       Jay.Russell@doj.ca.gov

Attorneys for Defendants

15                    UNITED STATES DISTRICT COURT

16          EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION

| | |
|---|---|
| 17  ROBERT HECKER, et al., | Case No. 2:05-CV-02441 KJM-DAD |
| 18          Plaintiffs, | **DEFENDANTS' [PROPOSED] ORDER FOR FINAL APPROVAL OF SETTLEMENT AGREEMENT** |
| 19      v. | |
| 20  CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, | |
| 21  et al., | |
| 22          Defendants. | |
| 23  RALPH COLEMAN, et al., | Case No. 2:90-CV-00520-KJM-DAD |
| 24          Plaintiffs, | |
| 25      v. | |
| 26  EDMUND G. BROWN, JR., et al., | |
| 27          Defendants. | |
| 28 | |

[1377606-1]

DEFENDANTS' [PROPOSED] ORDER FOR FINAL APPROVAL OF SETTLEMENT AGREEMENT

1    WHEREAS, the parties filed a Joint Motion for Preliminary Approval of Settlement

2  Agreement (the "Joint Motion") and supporting pleadings on August 5, 2014; and

3    WHEREAS, the Court has reviewed the Joint Motion and supporting pleadings

4  thereto; and

5    WHEREAS, on August 7, 2014, the Court preliminarily approved of the Settlement

6  Agreement submitted as part of the Joint Motion (the "Settlement"), and ordered that

7  notice of the proposed settlement be disseminated to the Plaintiff Class within thirty days

8  of the August 7, 2014 order; and

9    WHEREAS, as of September 8, 2014, the California Department of Corrections and

10 Rehabilitation posted the Settlement Notice in all housing units and libraries of each

11 CDCR prison.

12    WHEREAS the August 7, 2014 Order required that any objections to the Settlement

13 be sent to the Court and postmarked by November 7, 2014, and the Court did not receive

14 any objections to the Settlement.

15    WHEREAS, on December 5, 2014, this matter came before the Court for hearing

16 pursuant to Federal Rule of Civil Procedure 23(e) and the Order of this Court dated

17 August 7, 2014, to consider final approval of the proposed settlement set forth in the

18 parties Joint Motion, with no objectors appearing at the hearing; and

19    WHEREAS, due and adequate notice having been given to the Plaintiff Class

20 defined below as required by the Court's August 7, 2014, and the Court having considered

21 all papers filed and proceedings in this case, the pleadings and papers filed in support of

22 preliminary approval of the Settlement, and otherwise being fully informed regarding this

23 litigation and good cause appearing therefore; the Court now finds and orders as follows:

**FINDINGS**

24

25    1.    The Court finds that the proposed settlement is the product of arm's-length,

26 serious, and non-collusive negotiations between experienced and knowledgeable counsel

27 for the Plaintiff Class and Defendants, who have actively and competently prosecuted and

28 defended this litigation.

2.　　　The Court finds that distribution of notice to the class has been completed in conformance with the Court's August 7, 2014 Order and that no class member objected to the proposed settlement.

3.　　　The Court, having carefully considered the Settlement set forth in the parties Joint Motion and supporting documents filed August 5, 2014, finds that the Settlement is fair, adequate and reasonable, and further finds that the benefit to the Plaintiff Class supports final approval of the proposed settlement in light of all of the relevant considerations.

**IT IS HEREBY ORDERED THAT:**

1.　　　This action is determined to be properly maintained as a class action pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure, with an injunctive relief settlement class consisting of all present and future CDCR inmates with psychiatric conditions that are disabilities as defined by the ADA and the Rehabilitation Act, and who are allegedly excluded and/or screened out from any prison program, service, or activity on the basis of their psychiatric disability status.

2.　　　This Court has jurisdiction over the subject matter of this litigation and over all parties to the action, including all members of the Plaintiff Class as defined above.

3.　　　The notices disseminated to the Plaintiff Class as described in Paragraphs 6 through 8 of the Court's August 7, 2014 Order constituted the best notice practicable under the circumstances. Said notices provided due and adequate notice of proceedings for approval of the Settlement and of the matters set forth therein, including the proposed Settlement set forth in the Joint Motion, to all persons entitled to such notice, and said notices fully satisfied the requirements of Rule 23(e) of the Federal Rules of Civil Procedure, the Constitution of the United States, due process and any other applicable rule(s) of this Court.

4.　　　A district court's role in reviewing the substance of a class action settlement under Rule 23 is to ensure that it is 'fair, adequate, and free from collusion.'" *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012), *cert. denied*, 134 S. Ct. 8 (2013)

(quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998)).  The Court finds that in all respects the settlement in this case is fair, adequate, and free from collusion, and that all of the relevant *Hanlon* factors weigh in favor of granting final approval in this case. *See Hanlon*, 150 F.3d 1011 at 1026.  The Court thus grants final approval of the settlement pursuant to Rule 23(e) of the Federal Rules of Civil Procedure.

5.       The parties' Settlement Agreement, attached as **Exhibit A,** is granted final approval and incorporated by reference, and has the full force and effect of an order of this Court.  The Court orders that the matters addressed in Paragraphs 21 and 22 of the Settlement Agreement are hereby incorporated into the *Coleman* Remedial Process, and that the *Coleman* Special Master shall have the power to monitor and enforce the parties' agreements on these issues.  The Court orders the *Coleman* Special Master to oversee the process of amending the Program Guide to incorporate the changes required by the Settlement Agreement, and hereby orders the *Coleman* Special Master to work with the parties through the *Coleman* remedial process to promptly attempt to resolve the remaining issues described in Paragraphs 21 and 22 of the Settlement Agreement.

6.       The Parties shall, within thirty days of this Order, agree on a revised *Coleman* notice advising class members that issues alleged in the present litigation shall now be addressed in *Coleman.* Defendants shall serve on Plaintiffs' counsel a declaration affirming that the revised *Coleman* notice was published as required in this order.

7.       The *Hecker* action is hereby dismissed with prejudice except as to claims regarding assignment of MHSDS inmates to fire/conservation camps, as described in Paragraph 25 of the Settlement Agreement, which are dismissed without prejudice.

**IT IS SO ORDERED.**

DATED:  December ___, 2014

_____
Kimberly J. Mueller

# EXHIBIT A

1

2

3

4

5

6

7

8                        IN THE UNITED STATES DISTRICT COURT

9                       FOR THE EASTERN DISTRICT OF CALIFORNIA

10                                SACRAMENTO DIVISION

11

| | |
|---|---|
| **ROBERT HECKER, et al., on behalf of themselves and others similarly situated,** | **SETTLEMENT AGREEMENT** |
| | **Judge:** |
| Plaintiffs, | **The Honorable Lawrence K. Karlton** |
| **v.** | Action Filed:  December 1, 2005 |
| **CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, et al.,** | 2:05-cv-2441 LKK DAD (PC) |
| Defendants. | |
| | 2:90-cv-0520 LKK DAD |
| **RALPH COLEMAN, et al.,,** | |
| Plaintiffs, | |
| **v.** | |
| **EDMUND G. BROWN, JR., et al.,** | |
| Defendants. | |

26

27

28

# I.   RECITALS

1.   This action was filed on December 1, 2005.  In the presently operative pleading, the Second Amended Complaint, Plaintiffs Robert Hecker, Christopher Lee Jenkins, Peter Taylor, Ying Watt, Askia Ashanti, Ronald Auld, John Mueller, Daniel Hunley, Joseph Cox, Eddie Thomas, Brian K. Stafford, Michael Lovelace, Bobby Daniels, Quinton Gray, John Wesley Williams, Samuel D'Angelo and Jon Schooley, alleged that their rights were being violated under the Americans with Disabilities Act and section 504 of the Rehabilitation Act.  Plaintiffs alleged, among other things, that Defendants:

> have adopted, implemented, ratified, and/or failed to abolish numerous unnecessary and discriminatory policies, practices and procedures affecting the inmates participating in the MHSDS [Mental Health Services Delivery System] including the EOP [Enhanced Outpatient Program] and the CCCMS [Correctional Clinical Case Management System].

(Second Amended Complaint, Docket No. 35, at 12.)  Plaintiffs alleged "systemwide, statewide policies, practices, and procedures [that] function to discriminate against inmates with severe psychiatric disabilities; exclude them from programs, services, and activities; retaliate against them; and segregate them unnecessarily." Plaintiffs further sought to represent "a class of all present and future California inmates of the CDCR with psychiatric conditions that are disabilities as defined by the ADA and the Rehabilitation Act who are excluded and/or screened out from any prison program, service, or activity on the basis of their assignment to or participation in the MHSDS program, including the EOP and CCCMS."  (*Id.* at 14.)

2.   Before the *Hecker* action was filed, the parties in *Coleman v. Brown,* E.D. Cal. No. cv 90-0520 LLK, had attempted to negotiate provisions of the *Coleman* Program Guide (which describes policies and procedures for provision of mental health care for California prison inmates) regarding program access and disability discrimination for prison inmates with psychiatric disabilities.  The parties did not reach a resolution.

3.     On February 3, 2006, the *Coleman* Special Master issued his report and recommendation concerning the Program Guide, concluding that the parties' disputes concerning alleged disability discrimination could not be resolved by the Special Master at that time.

4.     On November 27, 2006, Defendants filed a motion to dismiss the *Hecker* action.

5.     On March 15, 2007, the Court issued an order staying the *Hecker* litigation, and referred the matter to the *Coleman* Special Master to determine whether the claims raised in the present litigation could be resolved within the remedial phase of *Coleman*. The *Coleman* Special Master filed a report on June 12, 2007 stating that the parties were not able to resolve the dispute at that time.

6.     The *Hecker* Plaintiffs filed motions to lift the stay on December 14, 2007, and again on September 9, 2012 and March 1, 2013.  On October 19, 2012, the Court ordered that the parties meet and confer under the guidance of the *Coleman* Special Master to determine again whether the issues in the *Hecker* action could be resolved through the *Coleman* remedial process.

7.     Since that date, the parties have engaged in settlement negotiations with the assistance of the *Coleman* Special Master.  On May 5, 2014, the Court entered an order extending the stay to June 6, 2014.

8.     While the case has been stayed, the parties have resolved issues concerning some of the specific policies, practices, and procedures that may have excluded some EOP and CCCMS participants from some of the benefits of the services, programs, and activities operated by CDCR, and may have discriminated against individuals with psychiatric disabilities.  These specific issues are listed below at Paragraph 21.  To facilitate resolution of these issues, the parties agree that the *Coleman* Program Guide shall be amended to reflect these changed policies, practices, and procedures.  The parties

further agree that implementation of the modified replacement polices, practices and procedures may be enforced by the Court as part of the *Coleman* class action litigation.

9. During the period of the *Hecker* stay, the parties also identified specific policies, practices, and procedures as to which there is no agreement regarding any past or present effect of exclusion or discrimination. Therefore, as to these issues, which are identified in Paragraph 22 below, the parties have reached no agreement that a remedy is required. The parties, however, have agreed that these issues are appropriate for resolution within the *Coleman* remedial process.

10. During the period of the *Hecker* stay, the parties also identified specific policies, practices and procedures that Defendants maintain are legally justified, do not unlawfully have the effect of excluding or discriminating against EOP and CCCMS prisoners, and therefore cannot be addressed in the *Coleman* remedial process. These specific issues are listed at Paragraph 23 below. The parties agree that as to these specific issues, there is no remedy in *Coleman,* and any claims as to them will be dismissed in *Hecker* without prejudice.

11. The parties agree that solely for purposes of settlement and judicial approval of this Agreement, they stipulate that the putative class in *Hecker*—specifically, all present and future CDCR inmates with psychiatric conditions that are disabilities as defined by the ADA and the Rehabilitation Act and who are allegedly excluded and/or screened out from any prison program, service, or activity on the basis of their assignment to or participation in the MHSDS program, including the CCCMS and EOP—may be certified as a class for settlement purposes under Federal Rule of Civil Procedure 23(b)(1), and that an order may be entered, after notice to the class and an opportunity to object, finding the settlement to be fair and reasonable as to this settlement class.

12. All parties and their counsel recognize that, in the absence of an approved settlement, they face lengthy and substantial litigation, including motions to dismiss, motions for class certification, formal discovery, motions for summary judgment, and trial

and potential appellate proceedings, all of which will consume time and resources and present the parties with ongoing litigation risks and uncertainties.  The parties wish to avoid these risks, uncertainties, and consumption of time and resources through a settlement under the terms and conditions of this Agreement.

ACCORDINGLY, without any admission or concession by Defendants of any liability or wrongdoing with respect to the allegations in the complaint, and without any admission or concession by Defendants of any systemic violation of the ADA or the Rehabilitation Act, the complaint, and all claims made in it, shall be finally and fully compromised, settled, and released, and the action dismissed with prejudice upon and subject to the terms and conditions of this Agreement, which the parties enter into freely, voluntarily, knowingly, and with the advice of counsel.

## II.   PARTIES

13.   Plaintiffs Robert Hecker, Christopher Lee Jenkins, Peter Taylor, Ying Watt, Askia Ashanti, Ronald Auld, John Mueller, Daniel Hunley, Joseph Cox, Eddie Thomas, Brian K. Stafford, Michael Lovelace, Bobby Daniels, Quinton Gray, John Wesley Williams, Samuel D'Angelo, and Jon Schooley have been at relevant periods inmates of the California Department of Corrections and Rehabilitation and participates in the Mental Health Services Delivery System (MHSDS) at both the Enhanced Outpatient Program (EOP) and Clinical Correctional Case Management System (CCCMS) levels of care as defined by the *Coleman* Program Guide.  Plaintiffs allege that they are persons with disabilities within the meaning of all applicable statues, and are qualified persons with disabilities within the meaning of Title II of the ADA and Section 504 of the Rehabilitation Act of 1973.  Plaintiffs allegedly represent a class of all present and future CDCR inmates with psychiatric conditions that are disabilities as defined by the ADA and the Rehabilitation Act who are excluded and/or screened out from any prison program, service, or activity on the basis of their assignment to or participation in the MHSDS program, including the EOP and CCCMS.

14.     Defendants are CDCR, the Governor of the State of California, CDCR's secretary, CDCR's undersecretary, CDCR's Director of Adult Institutions, and the Warden of the California Medical Facility.  Each Defendant is a state official sued in his or her official capacity.

## III.     JURISDICTION

15.     This Court has jurisdiction under 28 U.S.C §§ 1331, 2201, and 2202.

## IV.     VENUE

16.     Venue is proper under 28 U.S.C. § 1391(b), because a substantial part of the events alleged by Plaintiff occurred within the Eastern District of California.

## V.     CERTIFICATION OF A SETTLEMENT CLASS, NOTICE, OBJECTIONS, FAIRNESS HEARING

17.     The parties shall jointly request certification of a settlement class to be defined as all present and future CDCR inmates with psychiatric conditions that are disabilities as defined by the ADA and the Rehabilitation Act and who are allegedly excluded and/or screened out from any prison program, service, or activity on the basis of their assignment to or participation in the MHSDS program, including the CCCMS and EOP (the *Hecker* class.)

18.     The parties shall lodge their joint request for certification of the *Hecker* class along with a Notice of Settlement of the *Hecker* Action to be submitted for approval by the Court, and subject to such approval, to be posted in all CDCR institutions.

19.     The parties shall jointly request a fairness hearing on the *Hecker* settlement to be set at a reasonable time after the posting of notice to allow for the receipt and consideration of class member objections.

20.     If this Agreement is not approved by the Court, the parties shall be restored to their respective positions in the action as of the date on which the Agreement was entered, the terms and provisions of this Agreement shall have no force and effect, and shall not be used in this action or in any proceeding for any purpose, and the litigation of this action would resume as if there had been no settlement, with no stipulated class.

## VI.   TERMS AND CONDITIONS

21.   The parties agree that the *Coleman* Program Guide shall be amended, where necessary, so that the following polices, practices, and procedures have been or will be modified:

a.   Prior Policy, Practice, or Procedure:  Automatic Addition of Four Points to Custody Score of Persons in the MHSDS.

Modified Policy, Practice, or Procedure:  Defendants no longer add four points to the classification scores of inmates for participation in the Mental Health Services Delivery System, and they have removed the four points previously added to inmate classification scores on that basis.

b.   Prior Policy, Practice, or Procedure:  Lack Of Reasonable Accommodations During Heat Alerts.

Modified Policy, Practice, or Procedure:  Defendants have agreed to revise their policies to provide that inmates subject to the heat plan promulgated in *Coleman* shall receive meaningful access to equivalent programming—including out-of-cell time—during heat alert days.

c.   Prior Policy, Practice, or Procedure:  Lack of Access to Programming and Jobs.

Modified Policy, Practice, or Procedure:  Defendants have agreed to revise the Interdisciplinary Treatment Team (IDTT) process to ensure that the IDTT team evaluates and, if appropriate, clears Enhanced Outpatient Program (EOP) inmates for participation in prison programs and services, including jobs and education.  Defendants agree that, as part of the *Coleman* monthly data production, or through an equivalent means, Defendants shall produce data regarding the number of inmates in the  EOP and Correctional Clinical Case Management System (CCCMS) programs, as defined by the *Coleman* Program Guide —assigned to jobs, vocational, education, and substance abuse

programs at each institution, as compared to inmates not in the Mental Health Services Delivery System.

d.      Prior Policy, Practice, or Procedure:  Systematically Housing Inmates Out of Security Level Due to Psychiatric Disabilities.

Modified Policy, Practice, or Procedure:  Defendants have opened a Level II program at the Substance Abuse Treatment Facility (SATF), and a Level II male EOP program at Valley State Prison to provide greater opportunities for inmates participating in the Mental Health Services Delivery System to be housed consistent with their security levels.   Defendants agree that, as part of the *Coleman* monthly data production, or through an equivalent means, Defendants shall produce data regarding the number of *Coleman* class members housed at a higher security level than their points would require, as compared to inmates not in the Mental Health Services Delivery System.

e.      Prior Policy, Practice, or Procedure:  Restricting Eligibility for Milestone Credits In Manners That Tend to Exclude Persons With Psychiatric Disabilities.

Modified Policy, Practice, or Procedure:  Defendants have agreed to make available to inmates with psychiatric disabilities milestone credit earning by granting credits for existing Mental Health Services Delivery System groups, such as anger management and criminal thinking groups.  Defendants are also working on new curriculum for additional programs that will earn them milestone credits.  Defendants agree that, as part of the *Coleman* monthly data production, or through an equivalent means, Defendants shall produce data on the percentage of CCCMS and EOP inmates who are earning milestone credits, as compared to inmates not in the Mental Health Services Delivery System.

f.      Prior Policy, Practice, or Procedure:  Excluding Allegations of Discrimination on Account of Psychiatric Disability from the ADA Grievance Process.

Modified Policy, Practice, or Procedure:  Defendants are

implementing a revised ADA grievance process through which inmates with psychiatric disabilities may request reasonable modifications to services, programs, and activities and make requests for reasonable accommodations.  These inmates will also be permitted to grieve any decision rendered under this process via an inmate appeal.

    g.  <u>Prior Policy, Practice, or Procedure</u>:  Restricting eligibility for periodic classification score reductions for EOP inmates for successful programming.

      <u>Modified Policy, Practice, or Procedure</u>:  EOP inmates are now entitled to earn up to four point reductions annually from their classification score for successful programming.

    22.  The parties have not agreed that the following specific policies, practices, and procedures have had the effect of discriminating against or excluding  EOP and CCCMS participants from the benefits of the services, programs, and activities operated by CDCR, and therefore that any remedy is required regarding them.  The parties nevertheless agree that allegations of discrimination related to the following specific policies, practices, and procedures are appropriate for resolution within the *Coleman* remedial process.

    a.  Privileges for inmates with psychiatric disabilities with extended stays in reception centers (i.e. beyond ninety days) due solely to a psychiatric disability;

    b.  Access to substance abuse programs by inmates with psychiatric disabilities;

    c.  Access to minimum security facilities and community-based programs by inmates with psychiatric disabilities;

    d.  Access to reentry hub programs by inmates with psychiatric disabilities;

    e.  Effective communication and discrimination in the Rules Violation Report (RVR) process for inmates with  psychiatric disabilities; and

f. Discrimination in use of restraints, including treatment modules, for prisoners with psychiatric disabilities.

23. Resolution of issues identified in Paragraphs 21 and 22 through the *Coleman* remedial process shall include a reasonable continued period of negotiations facilitated by the Special Master. Any issues resolved in such negotiations may result in further amendments to policies, practices, and procedures to be implemented as part of the *Coleman* remedy. Issues that are not resolved after a reasonable period of negotiations may be presented by Plaintiffs to the *Coleman* court for resolution. The parties agree that for purposes of resolving issues of discrimination or exclusion against prison inmates with psychiatric disabilities, the *Coleman* Court should address whether the specific systemic policies, practices and procedures identified in this paragraph violate the ADA and Rehabilitation Act, and if so what prospective relief is appropriate. Plaintiffs shall have the burden of proving that the specific systemic policies, practices and procedures identified in Paragraphs 21 and 22 violate the ADA and Rehabilitation Act. Defendants shall have an opportunity to respond to any such evidence presented to the Court and to present their own evidence. Brief or isolated instances of alleged disability discrimination shall not constitute an ongoing, system-wide policy or practice in violation of the ADA or Rehabilitation Act.

24. The parties agree that the following issues are not appropriate for resolution in the *Coleman* remedial process, and that upon dismissal of the *Hecker* action, these issues will not become part of the *Coleman* remedy, and that as to these issues the dismissal of *Hecker* will be without prejudice to resolution of these issues in subsequent litigation:

a. Exclusion of CCCMS inmates from participation in the program, service, or activity of assignment to conservation/fire camp.

Defendants agree that any of the individual *Hecker* plaintiffs may pursue ADA or Rehabilitation Act claims concerning fire camp/ conservation camp against Defendants in a separate lawsuit.

## VII.   DISMISSAL

25.      The parties shall jointly request that the *Hecker* Court, after the fairness hearing described in Paragraph 19 above, shall dismiss the *Hecker* action in a form of order jointly proposed by the parties that specifies that the *Hecker* certified class action is dismissed in return for the relief that the *Hecker* class will have received under the terms of this Agreement by virtue of the implementation of specific policy, practice and procedure changes as part of the *Coleman* remedial process.  The form of order shall specify that the dismissal is with prejudice except as to claims regarding assignment of MHSDS inmates to fire/conservation camps.

26.    It is the intention of the parties in signing this Agreement that upon approval by the Court it shall be effective as a full and final accord and satisfaction and release from all claims asserted in the Second Amended Complaint except for claims concerning conservation/fire camp, which will be dismissed without prejudice as described above. By signing this Agreement, Plaintiffs release CDCR, Defendants, and any other past or current State officials and employees from all claims, past, present and future, known or unknown, that arise or could arise from the facts alleged in the complaint.  Nothing in this Agreement will affect the rights of any named *Hecker* Plaintiffs regarding any legal claim that arises after the date that the settlement is executed or regarding claims of *Hecker* Plaintiffs other than those asserted in the Second Amended Complaint  under the ADA and the Rehabilitation Act for injunctive and declaratory relief.

27.      In furtherance of this intention, the parties acknowledge that they are familiar with, and expressly waive, the provisions of California Civil Code section 1542, which states:

> A general release does not extend to claims which the creditor
> does not know or suspect to exist in his or her favor at the time
> of executing the release, which if known by him or her must
> have materially affected his or her settlement with the debtor.

28.     This Agreement is the compromise of various disputed claims and shall not be treated as an admission of liability by any of the parties for any purpose.  The signature of or on behalf of the respective parties does not indicate or acknowledge the validity or merits of any claim or demand of the other party.   The parties further agree that the *Coleman* class does not include persons on parole and that nothing in this agreement limits the ability of Plaintiffs to pursue any claims on behalf of persons on parole.

29.     The parties agree that this Agreement regarding specific policies, practices, and procedures that have allegedly had the effect of excluding some EOP and CCCMS participants from some of the benefits of the services, programs and activities operated by CDCR shall not affect or otherwise impact Defendants' ability to seek termination of prospective relief entered in *Coleman.* Termination of the *Coleman* litigation will terminate the issues that have been or are being resolved under this Agreement.     By this agreement, Defendants do not waive any defenses already asserted in this litigation.

## VIII.  ATTORNEY'S FEES AND COSTS

30.     The parties agree that all claims for reasonable fees and costs for work previously done in this litigation, and any future work done by Plaintiffs' counsel in *Coleman* regarding Plaintiffs' alleged violations of the ADA and Rehabilitation Act by Defendants, may be resolved through the periodic fees process in *Coleman*.  The parties agree that Plaintiffs' counsel's billing rates for such work will be subject to the maximum billing rate under the Prison Litigation Reform Act.  Defendants waive any objection that such work is not compensable in *Coleman* because it involves allegations of violations of the ADA and Rehabilitation Act.  Work performed by Plaintiff's counsel before execution

of this Settlement Agreement may be addressed in the *Coleman* quarterly fees negotiation immediately following the execution of the Settlement Agreement.

## IX.    SUCCESSORS AND ASSIGNS

31.    This Agreement shall be binding on the parties and their respective officers, agents, administrators, successors, assignees, heirs, executors, trustees, attorneys, consultants, and any committee or arrangement of creditors organized with respect to the affairs of any such party.

32.    Plaintiffs represent that they own the interests, rights, and claims that are the subject matter of this Agreement.  Plaintiffs and their principals, agents, attorneys, successors, assigns, heirs, descendants, executors, representatives, partners, and associates fully release and discharge the other parties and their principals, agents, attorneys, successors, assigns, heirs, descendants, executors, representatives, partners, and associates from all rights, claims, and actions that Plaintiffs and their successors now may have or at any time in the future may have against the other parties and their successors except for claims concerning conservation/fire camp dismissed without prejudice.

## X.    REPRESENTATIONS AND WARRANTIES

33.    The consideration recited in this Agreement is the only consideration for this Agreement, and no representations, promises, or inducements have been made to the parties, or any of their representatives, other than those set forth in this Agreement.

34.    This Agreement may be executed simultaneously in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

35.    Each party to this Agreement shall execute or cause to be executed such further and other documents as are needed to carry out the expressed intent and purpose of this Agreement.

36.     This Agreement constitutes a single, integrated agreement expressing the entire agreement of the parties, and there are no other agreements, written or oral, express or implied, between the parties, except as set forth in this Agreement.

37.     No supplement, modification, or amendment to this Agreement shall be binding unless executed in writing by all the parties.  No waiver of any provision of this Agreement shall be binding unless executed in writing by the party making the waiver. No waiver of any provision of this Agreement shall be deemed, or shall constitute, a waiver of any other provision, whether or not similar, nor shall any waiver constitute a continuing waiver.

38.     Unless expressly stated otherwise in this Agreement, the terms, conditions, and provisions of this Agreement are governed by and interpreted under California state law.

39.     Should any provision of this Agreement be held invalid or illegal, such illegality shall not invalidate the whole of this Agreement, but the Agreement shall be construed as if it did not contain the illegal part, and the rights and obligations of the parties shall be construed and enforced accordingly.


The undersigned agree to the above:

Dated: _August 1, 2014_          By: _Robert A. Hecker_____

Dated: _____          By: _____

Approved as to form:

Dated: _____          By: _____
                                         Jay C. Russell, Supervising Deputy Attorney
                                         General
                                         Counsel for Defendants

Approved as to form:

[1251989-1]                                   14

The undersigned agree to the above:

Dated: **8/4/14** _____     By: _____
Dr. Jeffrey A. Beard
Secretary, California Department of Corrections and
Rehabilitation

Dated: _____     By: _____

Approved as to form:

Dated: **August 5, 2014** _____     By: _____
Jay C. Russell
Supervising Deputy Attorney General
Counsel for Defendants

Approved as to form:

Dated: _____     By: _____
Michael W. Bien
Rosen Bien Galvan & Grunfeld LLP
Counsel for the *Coleman* and *Hecker* Plaintiffs

41033326.doc

13(A)

36.    This Agreement constitutes a single, integrated agreement expressing the entire agreement of the parties, and there are no other agreements, written or oral, express or implied, between the parties, except as set forth in this Agreement.

37.    No supplement, modification, or amendment to this Agreement shall be binding unless executed in writing by all the parties.  No waiver of any provision of this Agreement shall be binding unless executed in writing by the party making the waiver. No waiver of any provision of this Agreement shall be deemed, or shall constitute, a waiver of any other provision, whether or not similar, nor shall any waiver constitute a continuing waiver.

38.    Unless expressly stated otherwise in this Agreement, the terms, conditions, and provisions of this Agreement are governed by and interpreted under California state law.

39.    Should any provision of this Agreement be held invalid or illegal, such illegality shall not invalidate the whole of this Agreement, but the Agreement shall be construed as if it did not contain the illegal part, and the rights and obligations of the parties shall be construed and enforced accordingly.


The undersigned agree to the above:

Dated: 7/29/14          By: _____

Dated: 7/29/14          By: JOHn WESlEY WilliAms


Approved as to form:

Dated: _____  By: _____
                             Jay C. Russell, Supervising Deputy Attorney
                             General
                             Counsel for Defendants

Approved as to form:

[1251989-1]

14

36.     This Agreement constitutes a single, integrated agreement expressing the entire agreement of the parties, and there are no other agreements, written or oral, express or implied, between the parties, except as set forth in this Agreement.

37.     No supplement, modification, or amendment to this Agreement shall be binding unless executed in writing by all the parties.  No waiver of any provision of this Agreement shall be binding unless executed in writing by the party making the waiver. No waiver of any provision of this Agreement shall be deemed, or shall constitute, a waiver of any other provision, whether or not similar, nor shall any waiver constitute a continuing waiver.

38.     Unless expressly stated otherwise in this Agreement, the terms, conditions, and provisions of this Agreement are governed by and interpreted under California state law.

39.     Should any provision of this Agreement be held invalid or illegal, such illegality shall not invalidate the whole of this Agreement, but the Agreement shall be construed as if it did not contain the illegal part, and the rights and obligations of the parties shall be construed and enforced accordingly.

The undersigned agree to the above:

Dated: 7/29/2014                By: _____
                                      John Mueller

Dated: _____     By: _____

Approved as to form:

Dated: _____     By: _____
                                      Jay C. Russell, Supervising Deputy Attorney
                                      General
                                      Counsel for Defendants

Approved as to form:

[1251989-1]                             14

36.     This Agreement constitutes a single, integrated agreement expressing the entire agreement of the parties, and there are no other agreements, written or oral, express or implied, between the parties, except as set forth in this Agreement.

37.     No supplement, modification, or amendment to this Agreement shall be binding unless executed in writing by all the parties. No waiver of any provision of this Agreement shall be binding unless executed in writing by the party making the waiver. No waiver of any provision of this Agreement shall be deemed, or shall constitute, a waiver of any other provision, whether or not similar, nor shall any waiver constitute a continuing waiver.

38.     Unless expressly stated otherwise in this Agreement, the terms, conditions, and provisions of this Agreement are governed by and interpreted under California state law.

39.     Should any provision of this Agreement be held invalid or illegal, such illegality shall not invalidate the whole of this Agreement, but the Agreement shall be construed as if it did not contain the illegal part, and the rights and obligations of the parties shall be construed and enforced accordingly.

The undersigned agree to the above:

Dated: 7-30-14                    By: _____
                                      RONALD AULD

Dated: _____            By: _____

Approved as to form:

Dated: _____            By: _____
                                      Jay C. Russell, Supervising Deputy Attorney
                                      General
                                      Counsel for Defendants

Approved as to form:

[1251989-1]                              14

Settlement Agreement & Release  (2:05-cv-2441 LKK DAD (PC))

36.     This Agreement constitutes a single, integrated agreement expressing the entire agreement of the parties, and there are no other agreements, written or oral, express or implied, between the parties, except as set forth in this Agreement.

37.     No supplement, modification, or amendment to this Agreement shall be binding unless executed in writing by all the parties. No waiver of any provision of this Agreement shall be binding unless executed in writing by the party making the waiver. No waiver of any provision of this Agreement shall be deemed, or shall constitute, a waiver of any other provision, whether or not similar, nor shall any waiver constitute a continuing waiver.

38.     Unless expressly stated otherwise in this Agreement, the terms, conditions, and provisions of this Agreement are governed by and interpreted under California state law.

39.     Should any provision of this Agreement be held invalid or illegal, such illegality shall not invalidate the whole of this Agreement, but the Agreement shall be construed as if it did not contain the illegal part, and the rights and obligations of the parties shall be construed and enforced accordingly.

The undersigned agree to the above:

Dated: _July 30th, 2014_          By: _Brian Keith Stafford_
                                        BRIAN STAFFORD

Dated: _____          By: _____

Approved as to form:

Dated: _____          By: _____
                                        Jay C. Russell, Supervising Deputy Attorney
                                        General
                                        Counsel for Defendants

Approved as to form:

36.     This Agreement constitutes a single, integrated agreement expressing the entire agreement of the parties, and there are no other agreements, written or oral, express or implied, between the parties, except as set forth in this Agreement.

37.     No supplement, modification, or amendment to this Agreement shall be binding unless executed in writing by all the parties.  No waiver of any provision of this Agreement shall be binding unless executed in writing by the party making the waiver. No waiver of any provision of this Agreement shall be deemed, or shall constitute, a waiver of any other provision, whether or not similar, nor shall any waiver constitute a continuing waiver.

38.     Unless expressly stated otherwise in this Agreement, the terms, conditions, and provisions of this Agreement are governed by and interpreted under California state law.

39.     Should any provision of this Agreement be held invalid or illegal, such illegality shall not invalidate the whole of this Agreement, but the Agreement shall be construed as if it did not contain the illegal part, and the rights and obligations of the parties shall be construed and enforced accordingly.


The undersigned agree to the above:

Dated: 7-30-2014          By: _Bobby Daniels_____

Dated: _____   By: _____

Approved as to form:

Dated: _____   By: _____
                              Jay C. Russell, Supervising Deputy Attorney
                              General
                              Counsel for Defendants

Approved as to form:

[1251989-1]                        14

36.     This Agreement constitutes a single, integrated agreement expressing the entire agreement of the parties, and there are no other agreements, written or oral, express or implied, between the parties, except as set forth in this Agreement.

37.     No supplement, modification, or amendment to this Agreement shall be binding unless executed in writing by all the parties.  No waiver of any provision of this Agreement shall be binding unless executed in writing by the party making the waiver. No waiver of any provision of this Agreement shall be deemed, or shall constitute, a waiver of any other provision, whether or not similar, nor shall any waiver constitute a continuing waiver.

38.     Unless expressly stated otherwise in this Agreement, the terms, conditions, and provisions of this Agreement are governed by and interpreted under California state law.

39.     Should any provision of this Agreement be held invalid or illegal, such illegality shall not invalidate the whole of this Agreement, but the Agreement shall be construed as if it did not contain the illegal part, and the rights and obligations of the parties shall be construed and enforced accordingly.


The undersigned agree to the above:

Dated:  July 29, 2014                       By: _____
                                                Ying Watt

Dated:  _____          By: _____


Approved as to form:

Dated:  _____          By: _____
                                                Jay C. Russell, Supervising Deputy Attorney
                                                General
                                                Counsel for Defendants

Approved as to form:

36.     This Agreement constitutes a single, integrated agreement expressing the entire agreement of the parties, and there are no other agreements, written or oral, express or implied, between the parties, except as set forth in this Agreement.

37.     No supplement, modification, or amendment to this Agreement shall be binding unless executed in writing by all the parties.  No waiver of any provision of this Agreement shall be binding unless executed in writing by the party making the waiver. No waiver of any provision of this Agreement shall be deemed, or shall constitute, a waiver of any other provision, whether or not similar, nor shall any waiver constitute a continuing waiver.

38.     Unless expressly stated otherwise in this Agreement, the terms, conditions, and provisions of this Agreement are governed by and interpreted under California state law.

39.     Should any provision of this Agreement be held invalid or illegal, such illegality shall not invalidate the whole of this Agreement, but the Agreement shall be construed as if it did not contain the illegal part, and the rights and obligations of the parties shall be construed and enforced accordingly.


The undersigned agree to the above:

Dated:  8-1-2014             By: _____

Dated:  8-1-2014             By: _____


Approved as to form:

Dated:  _____     By: _____
                                  Jay C. Russell, Supervising Deputy Attorney
                                  General
                                  Counsel for Defendants

Approved as to form:

1   Dated: _____   By: _____
2                                   Michael W. Bien
                                    Rosen Bien Galvan & Grunfeld LLP
3                                   Counsel for the *Coleman* and *Hecker* Plaintiffs

4   SF2006200078

5

6

7

8   Dated:  July 28, 2014  By:  Quinton Gray
9
10                                  QUINTON Gray

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
    [1251989-1]                        15

1   Dated:  8/4/14                By:  _____

2                                      Michael W. Bien
                                       Rosen Bien Galvan & Grunfeld LLP
3                                      Counsel for the *Coleman* and *Hecker* Plaintiffs

4   SF2006200078

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28