# Exhibit B

**OFFICE OF LEGAL AFFAIRS**
Benjamin T. Rice
General Counsel
P.O. Box 942883
Sacramento, CA 94283-0001



December 15, 2014

Paul Mello
Hanson Bridgett
1676 N. California Blvd., Suite 620
Walnut Creek, CA 94596

Dear Mr. Mello:

Attached, please find California Department of Corrections and Rehabilitation's Status Update for 3JP.

Sincerely,

*[signature]*

BENJAMIN T. RICE
General Counsel, Office of Legal Affairs
California Department of Corrections and Rehabilitation

Attachments



# DECEMBER 15, 2014 UPDATE TO THE THREE-JUDGE COURT

In response to the Three-Judge Court's February 10, 2014 Order, CDCR Staff report on the status of the following measures being taken to reduce the State's adult inmate population. This report reflects CDCR's efforts as of December 15, 2014 to develop and implement measures to comply with the population reduction order. Because this is an evolving process, CDCR reserves the right to modify or amend its plans as circumstances change. At present, the State's prison population is approximately 140.0% of design capacity.

1. <u>Contracting for additional in-state capacity in county jails, community correctional facilities, and private prison(s):</u>

    Defendants have reduced the population in CDCR's 34 institutions by transferring inmates to in-state facilities.

    a. Private Prison (California City):

    The current population of California City is approximately 2,180 inmates.

    b. Community correctional facilities (CCFs) and modified community correctional facilities (MCCFs):

    The State currently has contracted for 4,218 MCCF beds that are in various stages of activation and transfer. The State also has identified an additional 305 contract beds as potential capacity. The State continues its discussions with these providers.

    c. County jails:

    The State continues to evaluate the need for additional in-state jail bed contracts to house CDCR inmates.

2. <u>Reentry Hubs:</u>

    The State continues to maintain thirteen prison-based reentry hubs.

3. <u>Newly-enacted legislation:</u>

    The State continues to implement Senate Bill 260 (2013), which allows inmates whose crimes were committed as minors to appear before the Board of Parole Hearings (BPH) to demonstrate their suitability for release after serving at least fifteen years of their sentence. From January 1, 2014 through November 30, 2014, the Board held 280 youth offender hearings. An additional 114 were scheduled during this time period, but were waived, postponed, continued, or cancelled and will be scheduled again for a future date. All available inmates who were immediately eligible for a hearing when the law took effect on January 1, 2014, have had a hearing date or have one scheduled on or

before July 1, 2015, as required by the terms of Senate Bill 260.[1]  In addition, nearly all youth offenders who received a grant prior to January 1, 2014, have reached their minimum eligible parole dates and have been processed for release from their life term by BPH.

Proposition 36, passed by the voters in November 2012, revised the State's three-strikes law to permit resentencing for qualifying third-strike inmates whose third strike was not serious or violent.  As of December 10, 2014, approximately 1,939 third-strike inmates have been released.

On November 4, 2014, the voters passed Proposition 47, which requires misdemeanor rather than felony sentencing for certain property and drug crimes and permits inmates previously sentenced for these reclassified crimes to petition for resentencing.  As of December 4, 2014, approximately 132 inmates have been released under Proposition 47.

4. <u>Prospective credit-earning increase for non-violent, non-sex registrant second-strike offenders and minimum custody inmates:</u>

Effective from the date of the Court's February 10, 2014 Order, non-violent, non-sex second-striker offenders are earning credits at the rate of 33.3% (increased from the previous rate of 20%) and release dates have been recalculated.  The State's automated systems have been modified and the court-ordered credits are being automatically applied.  In November, 544 inmates were released as a result of the court-ordered credit increases.[2]  These inmates earned an average of 65.3 days of additional credit.

As provided in the parties' Stipulation and Proposed Order, filed December 12, 2014, starting January 1, 2015, Defendants shall expand 2-for-1 credit earnings for all inmates designated Minimum Custody A or B pursuant to California Code of Regulations Title 15 Section 3377.1 who are currently eligible to earn day-for- day (50%) credits.  Defendants estimate approximately 4,300 inmates are eligible for expanded credit earnings under this measure.  These credits will be applied prospectively.

5. <u>New parole determination process whereby non-violent second-strikers will be eligible for parole consideration by BPH once having served 50% of their sentence:</u>

As reported in Defendants' December 1, 2014 filing, this measure will be implemented beginning January 1, 2015.

6. <u>Parole determination process for certain inmates with indeterminate sentences granted parole with future parole dates:</u>

BPH authorized the release of 4 additional inmates who were granted parole with future dates since the last report to the Court.  The State continues to identify additional potentially eligible inmates who have already been found suitable for parole by BPH.  As

---

[1] There are a few youth offenders who are unavailable for parole consideration hearings. For example, inmates who are in local custody for court proceedings are not available for a parole consideration hearing.  They will be scheduled for a hearing upon returning to CDCR custody.

[2] Of the 544 inmates, 426 have been released to Post Release Community Supervision and 118 have been released to parole.

part of the verification of eligibility, the State will review inmates' disciplinary histories and any outstanding holds, detainers, warrants, or *Thompson* terms. Once eligible inmates are identified, the State works with the inmates to update their parole plans, if needed, and verifies their existing parole plans. BPH then documents its decision and if the inmate is to be released from his or her life term, issues a memorandum to institutions releasing the inmate from his or her life term. Institutions will then process the inmate for release to parole if there are no outstanding holds, detainers, warrants, or *Thompson* terms.

7. <u>Parole process for medically incapacitated inmates:</u>

    The State continues to work closely with the Receiver's Office to implement this measure. The Receiver's Office is continuing to review inmates and is sending completed recommendations to CDCR. Recommendations received from the Receiver's office are reviewed by DAI and referred to BPH for a hearing. As of December 10, 2014, BPH has held 21 medical parole hearings under the revised procedures.

8. <u>Parole process for inmates 60 years of age or older having served at least 25 years:</u>

    The Board has completed upgrades to its main computer system to accommodate electronic identification of eligible inmates and scheduling of hearings. Additional upgrades to the computer system, which will allow for automated tracking and reporting of data relevant to this measure, are expected to be deployed later this month.[3] The Board continues to schedule eligible inmates for hearings who were not already in the Board's hearing cycle, including inmates sentenced to determinate terms. The Board has granted parole to 115 inmates eligible for elderly parole from February 11, 2014, through November 30, 2014.

9. <u>Reentry programs:</u>

    The contract for the San Francisco reentry program is in place. The State continues to refer eligible inmates to county officials and the county is currently reviewing these inmates for placement.

    The Fiscal Year 2014/2015 budget included $20 million for the expansion of reentry programs. The Administration proposes to fund local reentry programs targeting the mental health population who are within six to twelve months of release to facilitate their reentry into the community. The facilities will offer services such as case management services, employment services, and assistance with securing identification cards, housing, and enrollment in programs such as Medi‑Cal and CalWORKs. The facilities will house offenders who will be released to both parole and Post Release Community Supervision, and would allow parole agents and probation officers access to this population for the purpose of developing reintegration plans and strategies for continuity of treatment upon release. CDCR continues to work on contracting, licensure, and permitting issues for the tentatively selected providers.

10. <u>Expanded alternative custody program for females:</u>

---

[3] Board staff are trained to apply the elderly parole factors at all hearings where appropriate. However, for the purposes of this report, inmates are reported as eligible for elderly parole if their suitability hearing was scheduled on or after February 11, 2014, and they met both criteria: (1) age 60 or older and (2) had served at least 25 years of incarceration prior to the end of the calendar year (December 31, 2014). This may undercount the number of inmates who receive the benefit of this measure.

On August 4, 2014, the State activated an 82 bed facility in San Diego, and expects to open a second facility in Southern California in 2015 for the expanded alternative custody program for females, called the Custody to Community Transitional Reentry Program (CCTRP). As of December 10, 2014, 80 female inmates are housed at the San Diego facility. Female inmates in the CCTRP are provided with a range of rehabilitative services that assist with alcohol and drug recovery, employment, education, housing, family reunification, and social support.