IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

RALPH COLEMAN, et al.
    Plaintiffs,

vs.                                                                             No. CIV S-90-0520 KJM DAD PC

EDMUND G. BROWN, JR., et al.
    Defendants

SPECIAL MASTER'S REPORT ON
HIS EXPERT'S AUDIT OF SUICIDE PREVENTION PRACTICES
IN THE PRISONS OF THE CALIFORNIA DEPARTMENT OF
CORRECTIONS AND REHABILITATION

Attached is the *Coleman* Special Master's Expert's Audit of Suicide Prevention Practices in the Prisons of the California Department of Corrections and Rehabilitation (CDCR). It is submitted as part of the Special Master's continuing review of the Defendants' compliance with court-ordered remediation in this matter. This report is the product of on-site examination and critique by the Special Master's expert, Lindsay M. Hayes, M.S., of suicide prevention practices and individual suicide case files in all 34 CDCR institutions, from November 12, 2013 to July 24, 2014. Unlike the earlier reports by other Special Master's experts on suicide prevention, Mr. Hayes' report and recommendations are based on not only his reviews of inmate suicide case files, but also from his findings that were gathered during his on-site institutional inspections. The earlier reports were drawn from in-depth psychiatric reviews and analyses of treatment and case files on CDCR inmates who committed suicide.

The Special Master directed Mr. Hayes to conduct this review to assist a *Coleman* court-ordered workgroup, the Suicide Prevention Management Workgroup, in its task of addressing and resolving the problem of elevated suicide rates among CDCR inmates. (ECF 4693)  Suicide prevention has been a long-running theme in the *Coleman* remedial effort.  This Court noted the need for a program to identify, treat, and supervise inmates at risk for suicide from as far back as its remedial order in this case.  (ECF 612), *Coleman v. Wilson*, 912 F.Supp. 1282, 1298 n.10 (E.D. Cal. 1995 (citing *Balla v. Idaho State Board of Corrections*, 595 F.Supp. 1558, 1577 (D.Idaho 1984)), and has entered several orders on suicide prevention practices over the ensuing years.  On April 5, 2013, in its order denying the Defendants' motion to terminate federal court oversight, the *Coleman* Court stated:

> In summary, for over a decade a disproportionately high number of inmates have committed suicide in California's prison system.  Review of those suicides shows a pattern of identifiable and describable inadequacies in suicide prevention in the CDCR.  Defendants have a constitutional obligation to take and adequately implement all reasonable steps to remedy these inadequacies.  The evidence shows they have not done so. In addition, while defendants represent that they have fully implemented their suicide prevention program, they have not.  An ongoing constitutional violation therefore remains.

(ECF 4539)

Following the filing of the Special Master's Expert's Report on Suicides Completed in CDCR from January 1, 2012 – June 30, 2012 (ECF 4376), on July 12, 2013, the *Coleman* court ordered the establishment of a Suicide Prevention Management Workgroup to address and resolve this problem.  Among other things, the Court ordered that:

> Defendants shall forthwith, under the supervision of the Special Master, establish a suicide prevention/management work group comprised of

> CDCR clinical, custody, and administrative staff, Department of State Hospitals (DSH) staff, the Special Master's experts, plaintiffs' counsel and, as appropriate, the *Plata* receiver to work under the guidance of the Special Master to timely review suicide prevention measures, suicide deaths, and deaths deemed to be of undetermined cause.

(ECF 4693)

The Workgroup was promptly assembled and met three times (July 31, August 21, and October 17, 2013). Its members concluded that the Workgroup required an expert assessment of current suicide prevention practices in all 34 CDCR prisons in order to effectively accomplish its purpose. Consequently, at the Special Master's request, Mr. Hayes was appointed by the *Coleman* court to Special Master's staff as an expert (ECF 4857), and was directed by me to conduct his audit of inmate suicide prevention practices in all CDCR prisons and prepare the attached report.

Mr. Hayes is Project Director for the National Center on Institutions and Alternatives and a nationally recognized expert in the field of suicide prevention in correctional settings. He serves as a suicide prevention consultant to the U.S. Department of Justice Civil Rights Division with regard to investigations of confinement conditions in adult and juvenile correctional facilities throughout the nation. He has assisted other U.S. federal courts with oversight of suicide prevention practices in adult and juvenile correctional systems and evaluated adult and juvenile inmate suicide prevention practices in a variety of state and local jurisdictions. Mr. Hayes has conducted five national studies of suicides in jails, prisons, and juvenile justice facilities, has written over 60 publications in the area of suicide prevention in the correctional setting, and is a frequent lecturer on suicide prevention at professional conferences and seminars. He is a recipient of the National Commission on Correctional Health Care's

Award of Excellence for outstanding contributions in the field of suicide prevention in correctional facilities.

Mr. Hayes' report was distributed in draft form to the *Coleman* parties on November 20, 2014, after which they were given 30 days to submit comments and/or objections to the draft report. Both parties responded timely.

In their response to the draft report, Plaintiffs requested additional recommendations beyond those offered by Mr. Hayes. These requested recommendations were in the areas of staff training, initial health care screenings, suicide risk evaluations, 30-minute welfare checks, use of suicide-resistant cells for newly admitted inmates in administrative segregation, perceptions of suicidal inmates as manipulative, psych tech practices, use of psychiatric observation and crisis evaluation for suicidal inmates, use of alternative housing cells and outpatient housing units for suicidal inmates, and institutional Suicide Prevention and Response Focused Improvement Teams, among other things. While these requests for additional recommendations reflect thoughtful understanding and analysis of various aspects of the problem of inmate suicides in CDCR prisons, they are not being offered or recommended for the Court's consideration at this time.

Defendants' response offered commentary on nearly all of Mr. Hayes' recommendations, generally indicating willingness to work with the Special Master on resolving the identified problem(s) underlying Mr. Hayes' recommendations, and in some cases indicating that remedial measures were already being developed and/or implemented. Defendants' particularized responses to Mr. Hayes' recommendations are referenced within his report where each of the recommendations appears.

The Special Master agrees with the recommendations offered by Mr. Hayes in his attached report. Requests for orders directing implementation of recommendations within reports by the Special Master's experts "should come, if at all, from the special master." (ECF 3731) Accordingly, the Special Master requests that the Court order Defendants to adopt the following recommendations and to work with the Special Master in the Suicide Prevention Management Workgroup, and otherwise as may be necessary, on the development of strategies and the implementation of the changes and practices described in the recommendations within in the areas designated below, as follows:

I. **Suicide Prevention Training**

- Expand the length and content of the pre-service "Crisis Intervention and Suicide Prevention" training workshop to include topics as described above [i.e. including (1) self-injurious v. suicidal behavior and dealing effectively with inmates perceived to be manipulative; (2) identifying inmates at risk for suicide despite their denials of risk; (3) updated research on CDCR suicides; (4) identified problem areas and corrective actions from previous CDCR Suicide Reports; and (5) results of any recent *Coleman* and/or SPRFIT audits of suicide prevention practices.

- Expand the length and content of the annual "Crisis Intervention and Suicide Prevention" training workshop to include the topics described above;

- Ensure that all custody and health care staff receive both pre-service and annual suicide prevention training, and

- Ensure that all pre-service and annual suicide prevention training is conducted by qualified mental health personnel.

II. **Initial Health Screening and Receiving and Release Unit Environment**

- The Initial Health Screening form (CDCR Form 7277) should be revised to omit compound questions and include separate direct questions, such as "Have you ever attempted to commit suicide?" and "Are you currently thinking of hurting yourself?";

- Intake screening should be conducted only in the nurse's office within a reception and receiving (R&R) unit;

- The nurse's office should be of sufficient size to conduct adequate intake screening, and the door to the office (which should contain a large viewing window) should remain closed during the screening process; and

- Nurse and officer safety should remain the top priority during the intake screening process. If an inmate's security classification or unknown security status creates a safety concern, the screening should be conducted in the least restrictive setting that ensures both staff safety and inmate confidentiality

III. **Suicide Risk Evaluations (SREs)**

- CDCR should revise its SRE Mentoring Program to
    - eliminate its "graduation" component after completion of two adequate assessments,
    - conduct ongoing mentoring throughout the year, and
    - audit clinicians' SREs on a regularly scheduled basis.

- Each facility's SPRFIT should audit the <u>quality</u> of completed SREs on a monthly basis.

IV. **30-Minute Welfare Checks in Administrative Segregation, Security Housing Units (SHUs), and Condemned Units**

- Continued implementation and monitoring of the May 9, 2014 directive, including implementation at Facilities C and D at Pelican Bay State Prison and at the California Health Care Facility (Phase 3, per the directive)

V. **Use of Suicide-Resistant Cells for Newly Admitted Inmates in Administrative Segregation Units**

- CDCR should ensure that there are a sufficient number of suicide-resistant retrofitted cells to house newly admitted inmates (i.e., those within their first 72 hours of their housing in the unit) and inmates of special concern or heightened risk of suicide (e.g., inmates recently released from suicide observation status).

- CDCR should enforce its existing policy of housing only newly admitted inmates in retrofitted cells, and immediately re-house inmates remaining in the retrofitted cells beyond their first 72 hours.

- Any inmate discharged from suicide observation status and arriving in administrative segregation from either a Mental Health Crisis Bed or alternative housing should be initially housed in a suicide-resistant, retrofitted cell until such time as recommended by the mental health clinician as part of an individual treatment plan.

- Newly admitted administrative segregation inmates should not be considered protected from suicide risk by being double-celled. They should be placed in suicide-resistant, retrofitted cells.

- Based on current data indicating that risk of suicide in administrative segregation extends well beyond the first 72 hours there, CDCR, under the guidance of the Special Master, should study and determine a more appropriate and effective minimum length of stay in suicide-resistant retrofitted cells for newly admitted inmates.

VI.     **Treatment Planning for Suicidal Inmates**

- CDCR should adopt the recommendations made in connection with SREs, set forth above, which will also improve treatment planning contained in the SREs section above; and

- CDCR should develop a specific timetable for the training of all of its mental health clinicians on treatment planning for the suicidal inmate, using its PowerPoint presentation, "Safety/Treatment Planning for Suicide Risk Assessment," described above.

VII.    **Perception of Suicidal Inmates as Manipulative**

- The perception that all inmates who threaten suicide are manipulative persists among the treatment teams as a misguided mindset that should be repeatedly addressed at different levels including pre-service and annual suicide prevention trainings, the SRE Training and Mentoring Program, and the newly created SRE treatment planning webinar.

VIII.   **Psych Tech Practices**

- CDCR should develop a corrective action plan (CAP) to ensure that supervising nursing staff regularly audits psych tech practices during daily rounds of mental health caseload inmates in administrative segregation and during weekly and bi-weekly rounds in the SHUs.

IX.     **Use of "Psychiatric Observation" and "Crisis Evaluation" Statuses for Suicidal Inmates**

- CDCR should enforce its Program Guide requirements authorizing only the two levels of observation which may be provided for suicidal inmates: (1) observation at staggered intervals not exceeding every 15 minutes for inmates on Suicide Precaution, and (2) continuous observation for inmates on Suicide Watch.

- CDCR, under the guidance of the Special Master, should examine the use of "psychiatric observation" status or other similarly-named practices for use in MHCBs and alternative housing cells for non-suicidal inmates and clarify when it may be used, via a directive or policy and procedure.

X. **Use of "Alternative Housing Cells" and Outpatient Housing Units (OHUs) for Suicidal Inmates**

- The CDCR "Alternative Housing Cell Prioritization" memorandum dated December 12, 2012 should be revised to require that all cells utilized for alternative housing must be suicide-resistant.

- Until all alternative housing cells are suicide-resistant, any inmate housed in an alternative housing cell that is not suicide-resistant should be observed on a continuous basis until transferred to an MHCB.

- Any inmate housed in an alternative housing cell that is suicide-resistant should be observed at staggered intervals not to exceed every 15 minutes (Suicide Precaution), or be on continuous observation (Suicide Watch), depending on the level of the inmate's suicide risk.

- Any inmate housed in an OHU for more than 24 hours should be provided with a suicide-resistant bed.

XI. **Outpatient Housing Unit/Mental Health Crisis Bed Discharge and Efficacy of Five-Day Clinical Follow-Up and 60-Minute Custody Welfare Checks**

- CDCR, under the guidance of the Special Master, should completely revise the current Five-Day Follow-up/60-Minute Welfare Check protocol. At a minimum:

    - The "Interdisciplinary Progress Note – 5-Day Follow-Up" form that contains five days of notes on a single page should be replaced by a form similar to the "Interdisciplinary Progress Note" utilized at the California Training Facility (CTF) that allows clinicians to use a separate sheet for each day of follow-up.

    - All inmates discharged from an MHCB or alternative housing, where they had been housed due to suicidal behavior, should be observed at 30-minute intervals by custody staff, regardless of the housing units to which they are transferred.

    - The length of time an inmate is observed at 30-minute intervals following MHCB or alternative housing discharge should be determined on a case-by-case basis by the mental health clinician

        and clinically justified in the inmate's treatment plan. No other frequency of observation should be authorized.

- All inmates discharged from an MHCB or alternative housing and immediately re-housed in an administrative segregation unit should only be placed in a suicide-resistant, retrofitted cell for a period to be determined on a case-by-case basis by the mental health clinician and clinically justified in the inmate's treatment plan.

- Five-day follow-up assessments and 30-minute checks by custody staff should never be utilized as an alternative to MHCB or alternative housing for an inmate expressing suicidal ideation and/or engaging in self-injurious behavior.

## XII. Local Suicide Prevention and Response Focused Improvement Teams

- CDCR, under the guidance of the Special Master, should re-examine and revise its local SPRFIT model to make the local SPRFITs a more effective quality assurance/improvement tool.

## XIII. Corrective Actions to Address Additional Miscellaneous Issues

- CDCR, under the guidance of the Special Master within the Suicide Prevention Management Workgroup, should examine and consider taking corrective actions to address the problems identified in the attached Report in the following areas:

    - Forms for Documentation of Observation

    - Non-Suicide-Resistant Mental Health Crisis Beds

    - Privileges for Inmates in Mental Health Crisis Beds

    - Informal Recommendations Within CDCR Suicide Reports

    - Frosted Exterior Cell Windows and Sensory Deprivation

    - High Refusal Rates for New Admit Screens in Administrative Segregation

      The Special Master further requests that the Court order him to provide an update report to the Court on the state of Defendants' implementation of suicide prevention policies and practices in CDCR prisons, with said report to be within the Special Master's

regular compliance report following the conclusion of the upcoming Twenty-Sixth Monitoring Round, or to be submitted to the Court as soon as practicable thereafter.

                                           Respectfully submitted,

                                           /s/

                                           Matthew A. Lopes, Jr., Esq.
                                           Special Master

January 14, 2015