# Exhibit B

STATE OF CALIFORNIA—DEPARTMENT OF CORRECTIONS AND REHABILITATION                               EDMUND G. BROWN JR., GOVERNOR

**OFFICE OF LEGAL AFFAIRS**
Benjamin T. Rice
General Counsel
P.O. Box 942883
Sacramento, CA 94283-0001



June 15, 2015


Paul Mello
Hanson Bridgett
1676 N. California Blvd., Suite 620
Walnut Creek, CA  94596

Dear Mr. Mello:


Attached, please find California Department of Corrections and Rehabilitation's Status Update for 3JP.

Sincerely,

BENJAMIN T. RICE
General Counsel, Office of Legal Affairs
California Department of Corrections and Rehabilitation

Attachments



# JUNE 15, 2015 UPDATE TO THE THREE-JUDGE COURT

In response to the Three-Judge Court's February 10, 2014 Order, CDCR Staff report on the status of the following measures being taken to reduce the State's adult inmate population. This report reflects CDCR's efforts as of June 15, 2015 to develop and implement measures to comply with the population reduction order. Because this is an evolving process, CDCR reserves the right to modify or amend its plans as circumstances change. At present, the State's prison population is approximately 134.7% of design capacity.

1. Contracting for additional in-state capacity in county jails, community correctional facilities, and private prison(s):

   Defendants have reduced the population in CDCR's 34 institutions by transferring inmates to in-state facilities.

   a. Private Prison (California City):

      The current population of California City is approximately 2,308 inmates.

   b. Community correctional facilities (CCFs) and modified community correctional facilities (MCCFs):

      The State currently has contracted for 4,218 MCCF beds that are in various stages of activation and transfer.

   c. County jails:

      The State continues to evaluate the need for additional in-state jail bed contracts to house CDCR inmates.

2. Reentry Hubs:

   The State continues to maintain thirteen prison-based reentry hubs.

3. Newly-enacted legislation:

   The State continues to implement Senate Bill 260 (2013), which allows inmates whose crimes were committed as minors to appear before the Board of Parole Hearings (the Board) to demonstrate their suitability for release after serving at least fifteen years of their sentence. From January 1, 2014 through May 31, 2015, the Board held 664 youth offender hearings, resulting in 189 grants, 410 denials, 63 stipulations to unsuitability, and 2 split votes that required referral to the full Board for further consideration. An additional 318 were scheduled during this time period, but were waived, postponed, continued, or cancelled. All available inmates who were immediately eligible for a hearing when the law took effect on January 1, 2014 have had a hearing date or have one scheduled on or before July 1, 2015, as required by the terms of Senate Bill 260. In addition, all youth offenders who received a grant prior to January 1, 2014, have reached

their minimum eligible parole dates and have been processed for release from their life term by the Board.

Proposition 36, passed by the voters in November 2012, revised the State's three-strikes law to permit resentencing for qualifying third-strike inmates whose third strike was not serious or violent. As of June 10, 2015, approximately 2,088 third-strike inmates have been released.

On November 4, 2014, the voters passed Proposition 47, which requires misdemeanor rather than felony sentencing for certain property and drug crimes and permits inmates previously sentenced for these reclassified crimes to petition for resentencing. As of June 10, 2015, approximately 4,030 inmates have been released under Proposition 47.

4. <u>Prospective credit-earning increase for non-violent, non-sex registrant second-strike offenders and minimum custody inmates:</u>

Effective from the date of the Court's February 10, 2014 Order, non-violent, non-sex second-striker offenders are earning credits at the rate of 33.3% (increased from the previous rate of 20%) and are also eligible to earn milestone credits for rehabilitative programs. The State's automated systems have been modified and the court-ordered credits are being automatically applied, including milestone credits. In May, 416 inmates were released as a result of the court-ordered credit increases.[1] These inmates earned an average of 104.8 days of additional credit. Of the 416 inmates released in May, 201 earned milestone completion credits toward their advanced release date. Since April 2014, approximately 2,425 inmates who have been released as a result of this credit measure earned milestone credits toward their advanced release date.

As of January 1, 2015, Defendants expanded 2-for-1 credit earnings for all inmates designated Minimum Custody A or B pursuant to California Code of Regulations Title 15 Section 3377.1 who are currently eligible to earn day-for-day (50%) credits. These credits are being applied prospectively to the 1,490 inmates who are currently eligible under this program. As of June 3, 2015, 1,883 inmates have been released as a result of these expanded 2-for-1 credit earnings.

5. <u>New parole determination process whereby non-violent second-strikers will be eligible for parole consideration by the Board once having served 50% of their sentence:</u>

Classification committees are reviewing inmates for eligibility and referring them to the Board. From January 1, 2015 through May 31, 2015, 1,764 non-violent second-strike inmates were referred to the Board for review for parole. During this time period, the Board approved 397 inmates for release and denied release to 362 inmates. Many cases are pending review because the 30-day period for written input from inmates, victims, and prosecutors has not yet elapsed. Others are pending review until the inmate is within 60 days of his or her 50 percent time-served date.

---

[1] Of the 416 inmates, 291 were released to Post Release Community Supervision and 125 were released to parole.

**2**

6. <u>Parole determination process for certain inmates with indeterminate sentences granted parole with future parole dates:</u>

    The Board authorized the release of 6 additional inmates who were granted parole with future dates since the last report to the Court. The State continues to identify additional potentially eligible inmates who have already been found suitable for parole by the Board. As part of the verification of eligibility, the State will review inmates' disciplinary histories and any outstanding holds, detainers, warrants, or *Thompson* terms. Once eligible inmates are identified, the State works with the inmates to update their parole plans, if needed, and verifies their existing parole plans. The Board then documents its decision and if the inmate is to be released from his or her life term, issues a memorandum to institutions releasing the inmate from his or her life term. Institutions will then process the inmate for release to parole if there are no outstanding holds, detainers, warrants, or *Thompson* terms.

7. <u>Parole process for medically incapacitated inmates:</u>

    The State continues to work closely with the Receiver's Office to implement this measure. The Receiver's Office is continuing to review inmates and is sending completed recommendations to CDCR. Recommendations received from the Receiver's office are reviewed by DAI and referred to the Board for a hearing. As of June 9, 2015, the Board has held 34 medical parole hearings under the revised procedures. An additional 7 were scheduled, but were postponed, continued, or cancelled.

8. <u>Parole process for inmates 60 years of age or older having served at least 25 years:</u>

    The Board continues to schedule eligible inmates for hearings who were not already in the Board's hearing cycle, including inmates sentenced to determinate terms. From February 11, 2014 through May 31, 2015, the Board has held 688 hearings for inmates eligible for elderly parole, resulting in 202 grants, 436 denials, 48 stipulations to unsuitability, and 2 split votes that required referral to the full Board. An additional 257 hearings were scheduled during this time period but were waived, postponed, continued, or cancelled.

9. <u>Reentry programs:</u>

    Contracts for the San Francisco, Marin, Los Angeles, and Kern reentry programs are in place. The State continues to review and refer eligible inmates for placement.

    The Fiscal Year 2014/2015 budget included $20 million for the expansion of reentry programs. The Administration proposes to fund local reentry programs targeting the mental health population who are within 120 days of release to facilitate their reentry into the community. The facilities will offer services such as case management services, employment services, and assistance with securing identification cards, housing, and enrollment in programs such as Medi‑Cal and CalWORKs. The facilities will house offenders who will be released to both parole and Post Release Community Supervision, and would allow parole agents and probation officers access to this population for the purpose of developing reintegration plans and strategies for continuity of treatment upon release.

10. <u>Expanded alternative custody program for females:</u>

The State's alternative custody program for females, Custody to Community Transitional Reentry Program (CCTRP), provides female inmates with a range of rehabilitative services that assist with alcohol and drug recovery, employment, education, housing, family reunification, and social support. Female inmates in the CCTRP program are housed at one of two facilities located in San Diego and Southern California. A Bakersfield facility is expected to open in early July 2015.

The San Diego facility currently houses 82 inmates. The Southern California facility, which opened on April 9, 2015 and is also an 82-bed facility, currently has 51 beds filled. The State continues to transfer inmates into the Southern California facility at a rate of 5-7 inmates per week.