IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

RALPH COLEMAN, et al.
    Plaintiffs

v.                                     No. CIV S-90-0520 KJM DAD PC

EDMUND G. BROWN, JR., et al.
    Defendants

SPECIAL MASTER'S REPORT ON HIS
EXPERT'S REPORT ON SUICIDES COMPLETED IN THE CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
JULY 1, 2012 – DECEMBER 31, 2012

      Attached is the *Coleman* Special Master's Expert's Report on Completed Suicides in the California Department of Corrections and Rehabilitation from July 1, 2012 through December 31, 2012 ("Report"). This is the fifteenth report by the Special Master's expert on completed suicides by CDCR inmates. An expert's report covering the 15 suicides that occurred during the first six months of 2012 was filed on March 13, 2013. (ECF 4376) The attached Report thus completes the Special Master's expert's suicide review and reporting requirements for 2012, and is submitted as part of the Special Master's overall continuing review of Defendants' compliance with court-ordered remediation in this matter.

      The Report was written by Kerry C. Hughes, M.D., who is a nationally recognized expert on mental health care and suicide prevention in the correctional setting. Dr. Hughes has also co-authored past annual expert suicide reports with the Special Master's expert, Raymond F. Patterson, M.D, for the years 1999 through 2001, and a combined report covering years 1999 through 2004.

1

In preparing this Report, Dr. Hughes conducted an in-depth clinical review of each of the 18 suicide cases under study. However, unlike most of the past annual expert suicide reports, this Report does not include Dr. Hughes' detailed individual clinical case reviews. Instead, Dr. Hughes' case findings are discussed in general terms within the text of the Report, and are summarized case-by-case in various appended charts and tables.[1] It is anticipated that the upcoming annual expert suicide reports for 2013 and 2014 will follow this format.

The Special Master and the *Coleman* parties agreed to forego the individual clinical case reviews in the interest of expediting the completion of this Report and bringing the record on suicide prevention in CDCR up to date as quickly as possible. The broader context of ongoing developments and activities in the area of suicide prevention illustrate why this is important.[2]

As noted above, the Special Master's expert's report on inmate suicides during the first half of 2012 was filed on March 13, 2013. (ECF 4376) In light of the intractability of the problems discussed therein, this Court ordered the establishment of a Suicide Prevention Management Workgroup. Its overall charge was to target and resolve the lingering barriers to reducing suicides among CDCR inmates in a significant and enduring way.[3]

---

[1] *See* Report, Appendices C1-C4 ("Inmate Demographics," "Assessment / Treatment / Interventions Implemented," "Identified Issues and Failures with Suicide Prevention and Corrective Action Measures," and "Inmate Suicidal History and Event Characteristics," respectively), Appendix D ("Prevalence of Selected Characteristics Among 18 Suicides by CDCR Inmates, July 1, 2012 – December 31, 2012), and Appendix E ("Frequency of suicides by CDCR Prison July 1, 2012 – December 31, 2012").

[2] Some of the past annual suicide reports by the Special Master's expert also dispensed with individual clinical case reviews. In those instances, as now, the reports were prepared within a context of a court-ordered suicide prevention project and implementation of revised suicide prevention practices in the prisons. It was important then, as it is now, to bring the record on past suicide deaths up to date as quickly as possible and to focus available resources on implementation and testing of the effectiveness of new suicide prevention initiatives, rather than on time-consuming preparation of detailed individual reviews of suicide deaths that had occurred under past conditions that had since been modified. The 2008-2009 combined annual suicide report (ECF 4009) and the 2010 annual suicide report (ECF 4110) were submitted without individual case reviews, following this Court's adoption and ordering of recommended suicide prevention measures that emanated from a multi-faceted court-ordered suicide prevention project (ECF 3954, 4125) – a context analogous to that of the current Suicide Prevention Management Workgroup.

[3] "Defendants shall, forthwith, under the supervision of the Special Master, establish a suicide prevention/management work group comprised of CDCR clinical, custody, and administrative staff, Department of

The Workgroup met on July 31, August 21, and October 17, 2013, and quickly reached a consensus that it needed an audit of current suicide prevention practices in all 34 CDCR prisons in order to accurately identify the existing issues and conditions on which the group should focus its efforts. At the direction of the Special Master, his expert Lindsay Hayes conducted an audit of all 34 CDCR institutions, from November 2013 through July 2014. Mr. Hayes' report on his findings and recommendations was filed on January 14, 2015. (ECF 5258) On February 3, 2015, this Court ordered the Defendants to adopt the recommendations in that report and to work with the Special Master in the Workgroup, and otherwise as may be necessary, on the development of strategies and the implementation of the changes and practices contained in the recommendations within the Hayes report. (ECF 5271)

The Workgroup resumed meeting on February 3, 2015 followed by meetings February 13, March 11, April 6, and May 14, 2015, now with the benefit of the Hayes report and recommendations as its informational foundation. During the brief period since resumption of its meetings, the Workgroup has made considerable progress. As the Workgroup now continues on toward completion of its task, it will derive additional benefit from the attached Report as well from the upcoming annual expert suicide reports for 2013 and 2014. Consequently, it is important to expedite the production of all of these reports, which can be accomplished by dispensing with individual clinical case reviews.

There is another component to the ongoing suicide prevention effort. It involves a gradual integration and eventual merging of the Special Master's experts' suicide review process and CDCR's suicide review process to develop a review process that is completed more quickly after a suicide, i.e. moving toward closer to "real-time" review and the benefits thereof. This

---

State Hospitals (DSH) staff, the Special Master's experts, plaintiffs' counsel and, as appropriate, the *Plata* receiver to work under the guidance of the Special Master to timely review suicide prevention measures, suicide deaths, and deaths deemed to be of undetermined cause." (ECF 4693)

project represents a logical progression -- from the external examinations by the Special Master's experts of CDCR suicides, to the current Suicide Prevention Management Workgroup process, to the development of a process whereby CDCR will eventually self-monitor and self-correct any obstacles it may encounter in maintaining a solid and enduring suicide prevention program. The first step toward this goal has already taken place. On May 14, 2015, the Special Master and members of his expert staff met with CDCR officials to begin discussions about how this coordinated process will work. Again, expedited production of the Special Master's expert's annual suicide reports through 2014 is important to ensuring that the new suicide review process will be developed in the near future on a foundation of current information.

    Dr. Hughes' Report was distributed to the *Coleman* parties in draft form on April 13, 2015. On June 1, 2015, Defendants submitted their revised response to Dr. Hughes' Report, in which they stated that they did not object to his review and the specific findings on the individual suicide reports or the trend data for the time period reviewed. They further stated that they agreed with the recommendation that the parties should consider prior completed suicides within the context of the already-established Suicide Prevention Management Workgroup. Such review has already been directed in any event by this Court in its order dated July 12, 2013. (ECF 4693) The *Coleman* Plaintiffs did not submit any response to the draft Report.

    The Special Master agrees with the issues identified in Dr. Hughes' Report and his recommendation that the further work to be done on suicide prevention be conducted within the context of the Suicide Prevention Management Workgroup. Accordingly, the Special Master requests that the Court adopt in full the attached Report on Completed Suicides in the California

Department of Corrections and Rehabilitation from July 1, 2012 through December 31, 2012.

                                                        Respectfully submitted,

                                                        Matthew A. Lopes, Jr., Esq.
                                                        Special Master

June 17, 2015