**EXHIBIT B**

STATE OF CALIFORNIA—DEPARTMENT OF CORRECTIONS AND REHABILITATION                                    EDMUND G. BROWN JR., GOVERNOR

**OFFICE OF LEGAL AFFAIRS**
Patrick R. McKinney II
General Counsel
P.O. Box 942883
Sacramento, CA 94283-0001



November 16, 2015

Paul Mello
Hanson Bridgett
1676 N. California Blvd., Suite 620
Walnut Creek, CA  94596

Dear Mr. Mello:

Attached, please find California Department of Corrections and Rehabilitation's Status Update for 3JP.

Sincerely,

Patrick R. McKinney II
General Counsel, Office of Legal Affairs
California Department of Corrections and Rehabilitation

Attachments



# NOVEMBER 16, 2015 UPDATE TO THE THREE-JUDGE COURT

In response to the Three-Judge Court's February 10, 2014 Order, CDCR Staff report on the status of the following measures being taken to reduce the State's adult inmate population. This report reflects CDCR's efforts as of November 16, 2015 to develop and implement measures to comply with the population reduction order. Because this is an evolving process, CDCR reserves the right to modify or amend its plans as circumstances change. At present, the State's prison population is approximately 135.8% of design capacity.

1. <u>Contracting for additional in-state capacity in county jails, community correctional facilities, private prison(s), and reduction of out-of-state beds:</u>

    Defendants have reduced the population in CDCR's 34 institutions by transferring inmates to in-state facilities.

    a. Private Prison (California City):

        The current population of California City is approximately 2,071 inmates.

    b. Community correctional facilities (CCFs) and modified community correctional facilities (MCCFs):

        The State currently has contracted for 4,218 MCCF beds that are in various stages of activation and transfer.

    c. County jails:

        The State continues to evaluate the need for additional in-state jail bed contracts to house CDCR inmates.

    d. Reduction of inmates housed out-of-state:

        On February 10, 2014 the Court ordered Defendants to "explore ways to attempt to reduce the number of inmates housed in out-of-state facilities to the extent feasible." Since that time, the State has reduced the out-of-state inmate population to 5,447 and has closed the Oklahoma out-of-state facility. Under the Fiscal Year 2015-16 budget, an additional 550 out-of-state beds will be reduced by the end of June 2016.

2. <u>Reentry Hubs:</u>

    The State continues to maintain thirteen prison-based reentry hubs.

3. <u>Newly-enacted legislation:</u>

    The State continues to implement Senate Bill 260 (2013), which allows inmates whose crimes were committed as minors to appear before the Board of Parole Hearings (the Board) to demonstrate their suitability for release after serving at least fifteen years of their sentence. From January 1, 2014 through October 31, 2015, the Board held 872

youth offender hearings, resulting in 240 grants, 543 denials, 87 stipulations to unsuitability, and there are currently 2 split votes that require referral to the full Board for further consideration. An additional 438 hearings were scheduled during this time period, but were waived, postponed, continued, or cancelled. On October 3, 2015, the State enacted Senate Bill 261, which expands the youth offender parole process described above to include inmates who committed their controlling offense before the age of 23. Inmates who are immediately eligible for a hearing will receive a hearing date by January 1, 2018, if sentenced to an indeterminate life term, and by December 31, 2021, if sentenced to a determinate life term.

On October 3, 2015, the State also enacted Senate Bill 230, which provides that life inmates who are granted parole will be eligible for release, subject to applicable review periods, upon reaching their minimum eligible parole date. Life inmates will no longer be granted parole with future parole dates.

Proposition 36, passed by the voters in November 2012, revised the State's three-strikes law to permit resentencing for qualifying third-strike inmates whose third strike was not serious or violent. As of November 12, 2015, approximately 2,157 third-strike inmates have been released.

On November 4, 2014, the voters passed Proposition 47, which requires misdemeanor rather than felony sentencing for certain property and drug crimes and permits inmates previously sentenced for these reclassified crimes to petition for resentencing. As of November 11, 2015, approximately 4,498 inmates have been released under Proposition 47.

4. Prospective credit-earning increase for non-violent, non-sex registrant second-strike offenders and minimum custody inmates:

Effective from the date of the Court's February 10, 2014 Order, non-violent, non-sex second-striker offenders are earning credits at the rate of 33.3% (increased from the previous rate of 20%) and are also eligible to earn milestone credits for rehabilitative programs. The State's automated systems have been modified and the court-ordered credits are being automatically applied, including milestone credits. In October, 296 inmates were released as a result of the court-ordered credit increases.[1] These inmates earned an average of 138.5 days of additional credit. Of the 296 inmates released in October, 166 earned milestone completion credits toward their advanced release date. Since April 2014, approximately 3,380 inmates who have been released as a result of this credit measure earned milestone credits toward their advanced release date.

As of January 1, 2015, Defendants expanded 2-for-1 credit earnings for all inmates designated Minimum Custody A or B pursuant to California Code of Regulations Title 15 Section 3377.1 who are currently eligible to earn day-for-day (50%) credits. These credits are being applied prospectively to the 800 inmates who are currently eligible under this program. Since January 1, 2015, 2,601 total inmates have been released receiving expanded 2-for-1 earnings.

---

[1] Of the 296 inmates, 182 were released to Post Release Community Supervision and 114 were released to parole.

2

5. <u>New parole determination process whereby non-violent second-strikers will be eligible for parole consideration by the Board once having served 50% of their sentence:</u>

    Classification committees are reviewing inmates for eligibility and referring them to the Board.  From January 1, 2015 through October 31, 2015, 3,165 non-violent second-strike inmates were referred to the Board for review for parole.  During this time period, the Board approved 1,158 inmates for release and denied release to 1,083 inmates.  Many cases are pending review because the 30-day period for written input from inmates, victims, and prosecutors has not yet elapsed.  Others are pending review until the inmate is within 60 days of his or her 50 percent time-served date.

6. <u>Parole determination process for certain inmates with indeterminate sentences granted parole with future parole dates:</u>

    The Board authorized the release of 3 additional inmates who were granted parole with future dates since the last report to the Court.  The State continues to identify additional potentially eligible inmates who have already been found suitable for parole by the Board.  As part of the verification of eligibility, the State will review inmates' disciplinary histories and any outstanding holds, detainers, warrants, or *Thompson* terms.  Once eligible inmates are identified, the State works with the inmates to update their parole plans, if needed, and verifies their existing parole plans.  The Board then documents its decision and if the inmate is to be released from his or her life term, issues a memorandum to institutions releasing the inmate from his or her life term.  Institutions will then process the inmate for release to parole if there are no outstanding holds, detainers, warrants, or *Thompson* terms.  As described above, Senate Bill 230, enacted on October 3, 2015, has eliminated the process of granting parole with future dates.  The State will continue to implement this measure until SB 230 goes into effect.

7. <u>Parole process for medically incapacitated inmates:</u>

    The State continues to work closely with the Receiver's Office to implement this measure.  The Receiver's Office is continuing to review inmates and is sending completed recommendations to CDCR.  Recommendations received from the Receiver's office are reviewed by DAI and referred to the Board for a hearing.  As of November 9, 2015, the Board has held 56 medical parole hearings under the revised procedures.  An additional 18 were scheduled, but were postponed, continued, or cancelled.

8. <u>Parole process for inmates 60 years of age or older having served at least 25 years:</u>

    The Board continues to schedule eligible inmates for hearings who were not already in the Board's hearing cycle, including inmates sentenced to determinate terms.  From February 11, 2014 through October 31, 2015, the Board has held 996 hearings for inmates eligible for elderly parole, resulting in 267 grants, 651 denials, 78 stipulations to unsuitability, and there currently are no split votes that require further review by the full Board.  An additional 450 hearings were scheduled during this time period but were waived, postponed, continued, or cancelled.

9. <u>Reentry programs:</u>

    Contracts for the San Francisco, Marin, Los Angeles, and Kern County reentry programs are in place.  The State continues to review and refer eligible inmates to county officials for consideration for placement.  As of November 13, 2015, the 150-bed facility in Los

Angeles County houses 127 inmates and the 50-bed facility in Kern County houses 17 inmates.

The Fiscal Year 2014/2015 budget included $20 million for the expansion of reentry programs.  The Fiscal Year 2015/16 budget authorized CDCR's continued use of unspent funds from the prior year's budget to further expand these programs and to continue to provide reintegration services, such as case management, employment, and assistance with enrolling in public benefit programs, to inmates nearing release to facilitate their reentry into the community.

10. Expanded alternative custody program:
The State's alternative custody program for females, Custody to Community Transitional Reentry Program (CCTRP), provides female inmates with a range of rehabilitative services that assist with alcohol and drug recovery, employment, education, housing, family reunification, and social support.  Female inmates in the CCTRP program are housed at one of three facilities located in San Diego, Santa Fe Springs (LA), and Bakersfield.

As of November 12, 2015, the 82-bed San Diego facility houses 82 female inmates, the 82-bed Santa Fe Springs (LA) facility houses 81 female inmates, and the 75-bed Bakersfield facility houses 75 female inmates.