ROBERT A. BARTON
Inspector General
JAMES C. SPURLING, State Bar No. 109432
Chief Counsel
SHAUN R. SPILLANE, State Bar No. 258604
Attorney
  10111 Old Placerville Road, Suite 110
  Sacramento, CA 95827
  Telephone: (916) 255-1102
  Fax: (916) 255-1403
  Email: spurlingj@oig.ca.gov

Attorney for Defendants California Office of the Inspector General,
Robert A. Barton, Roy Wesley, and Michael J. Maddox

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BRYAN BLUE, et al. | Case No.: 2:15-cv-02656-KJM-CKD |
| Plaintiff, | **NOTICE OF RELATED CASES** |
| v. | **[Local Rule 123]** |
| CALIFORNIA OFFICE OF THE INSPECTOR GENERAL, et al., | |
| Defendants. | |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

As required by Rule 123 of the Local Rules of the United States District Court for the Eastern District of California, Defendants California Office of the Inspector General (OIG), Robert A. Barton, Roy Wesley, and Michael J. Maddox (the OIG Defendants) file this Notice of Related Cases. The instant case involves what these Defendants perceive as an attempt by plaintiffs, individual correctional officers and the labor organization that represents the state's correctional officers, to chill independent oversight of matters involving alleged past, present, and ongoing deprivations of the federal constitutional rights of inmates in the custody and care of the California Department of Corrections and Rehabilitation. Because plaintiffs' lawsuit is intended to prevent these Defendants from performing their statutorily mandated oversight

Notice of Related Cases
Blue, et al. v. California Office of the Inspector General, et al.; Case No. 2:15-cv-02656-KJM-CKD

responsibilities in these very areas, the instant case should be deemed related to the following cases:

**1.** ***Armstrong, et al. v. Brown, et al.*, United States District Court for the Northern District of California, Case No. 4:94-cv-02307-CW.** On June 29, 1994, disabled prisoners and parolees in California filed this lawsuit charging that, on account of their disabilities, the Department of Corrections and Rehabilitation (CDCR) was generally depriving disabled prisoners of benefits and accommodations provided to other prisoners or required by due process. After determining CDCR's policies and procedures violated the Americans with Disabilities Act and the Rehabilitation Act, the district court entered a remedial order and injunction in which, among other things, plaintiffs' counsel were granted access to CDCR information and documentation, the ability to interview and depose CDCR staff and inmates, and physical access to CDCR institutions, in order to monitor CDCR's progress in remedying violations of the ADA.

After a series of additional orders and hearings, the district court, in 2012, modified the standing injunction to require CDCR to track and investigate all allegations, whether from inmates, staff, or third parties, "that any employee of the Department of Corrections and Rehabilitation was responsible for any member of the Plaintiff class not receiving access to services, programs, activities, accommodations or assistive devices required by any of the following: the Armstrong Remedial Plan, the Americans with Disabilities Act or this Court's prior orders." All investigations that reveal employee noncompliance are required to follow the procedures set forth in a November 21, 2008 CDCR memorandum entitled "Expectations for Staff Accountability and Non-compliance of the Disability Placement Program," which sets forth a process by which the hiring authority is to be made aware of the details of the misconduct and is responsible for determining the appropriate course of action to take, if any.

The district court continues to exercise jurisdiction over this case, monitoring CDCR's compliance with its remedial plans.

/ / /

/ / /

    *2.*    *Madrid, et al. v. Department of Corrections, et al.*, **United States District Court for the Northern District of California, Case No. 3:90-cv-03094-TEH.** This class action lawsuit was filed on October 26, 1990 to challenge the constitutionality of a broad range of conditions and practices at Pelican Bay State Prison. The plaintiffs alleged that the defendants unconstitutionally condoned a pattern and practice of using excessive force against inmates, failed to provide inmates with adequate medical and mental health care, imposed inhumane conditions in the Security Housing Unit, utilized cell-assignment procedures that exposed inmates to an unreasonable risk of assault from other inmates, failed to provide adequate procedural safeguards when segregating the prison gang affiliates in the Security Housing Unit, and failed to provide inmates with adequate access to the courts. In an order dated January 10, 1995, the district court concluded that the California Department of Corrections (CDC, now known as CDCR) had "failed to provide inmates at Pelican Bay with constitutionally adequate medical and mental health care," and had "permitted and condoned a pattern of using excessive force, all in conscious disregard of the serious harm that these practices inflict." *Madrid v. Gomez*, 889 F. Supp. 1146, 1279 (N.D. Cal. 1995).

    From 1995 until 2011, the court provided oversight of CDCR's investigatory and disciplinary processes after finding that investigations conducted at the time by internal affairs personnel were "counterfeit investigation[s] pursued with one outcome in mind: to avoid finding officer misconduct as often as possible. [N]ot only are all presumptions in favor of the officer, but evidence is routinely strained, twisted or ignored to reach the desired result. The consequence is to reinforce an already clear message to line staff that unnecessary and excessive force will be tolerated, if not actively encouraged. … Given the lapses in supervision, and the unlikelihood that [Internal Affairs] will find a misuse of force in any given case, officers rarely face the prospect of discipline for using excessive force against inmates." *Id.* at 1192, 1196. Further aggravating the discipline arena, the court found, was evidence of a "code of silence" within the institution "designed to encourage prison employees to remain silent about the improper behavior of their fellow employees, particularly where excessive force has been alleged. Those who defy the code risk retaliation and harassment." *Id.* at 1156. Concluding that injunctive relief was both

necessary and appropriate to ensure an effective remedy of the constitutional violations at issue, the court appointed a special master experienced in prison administration to fashion an appropriate remedy and to monitor the implementation of that remedy. *Id.* at 1282-1283. Part of that remedy was the creation of the Bureau of Independent Review within the Office of the Inspector General, which the court noted would "provide critically needed, systematic 'real-time' monitoring of the investigative and discipline process in cases where there are charges of significant misuse of force." *Madrid v. Woodford*, No. C90-3094 TEH, 2004 WL 2623924, at *9 (N.D. Cal. Nov. 17, 2004).

Although the court dismissed the case and divested itself of jurisdiction in 2011, in its final order, the court expressed an ongoing "concern[] about a reversion to the unconstitutional practices that once existed at Pelican Bay." Exhibit A to the Spillane Declaration in Support of Defendants' Notice of Related Cases ("Spillane Dec"), filed herewith (March 21, 2011 *Madrid* Order Terminating Force-Related Orders and Dismissing Case).

**3.** ***Coleman, et al. v. Brown, et al.*, United States District Court for the Eastern District of California, Case No. 2:90-cv-00520-KJM-KJN.** On April 23, 1990, mentally ill inmates in California state prison filed this class action lawsuit alleging that mental health care provided at most California penal institutions violated their constitutional rights. In 1995, the district court found numerous constitutional violations related to CDCR's treatment of mentally-ill inmates, one of which pertained to the department's indifference to the impact that certain housing assignments and uses-of force have on mentally-ill people, and that insufficient training of staff in recognizing the signs and symptoms of mental illness exacerbates these issues. *Coleman v. Wilson*, 912 F. Supp. 1282, 1293, 1319-1323 (E.D. Cal. 1995). As a result, the district court issued an injunction, ordered CDCR to create remedial plans, and appointed a special master to oversee CDCR's implementation of those plans.

The district court continues to exercise jurisdiction over this case, monitoring CDCR's compliance with its remedial plans.

/ / /

/ / /

**4.**   *California Correctional Peace Officers Association v. State of California, Department of Corrections and Rehabilitation and State of California, Department of Human Resources*, **Superior Court of the State of California for the County of Sacramento, Case No. 34-2015-00188266.**

On November 4, 2015, plaintiff CCPOA filed a labor grievance alleging defendant CDCR violated the terms of the parties' Memorandum of Understanding when it required CDCR employees, who are members of CCPOA, to attend interviews with the Office of the Inspector General. Exhibit B to Spillane Dec (CCPOA Grievance). CCPOA demanded immediate arbitration of the grievance pursuant to the terms of the parties' MOU. (*Id.*) The grievance is premised on the same set of factual allegations as plaintiffs' complaint in the instant case. (*Id.*)

On December 24, 2015, plaintiff CCPOA filed a petition to compel arbitration in Sacramento County Superior Court, complaining that CDCR's[1] failure to set a date for arbitration equated to a refusal to arbitrate, requesting the court compel CDCR to arbitrate the grievance on an expedited basis. Exhibit C to Spillane Dec (Plaintiffs' Petition to Compel Arbitration). In the petition, CCPOA alleges both the grievance and the instant lawsuit "deal with the same underlying set of facts." (*Id.*) On January 4, 2016, CDCR filed its opposition to the petition and requested that the court stay the arbitration pending the outcome of the instant action under California Code of Civil Procedure section 1281.2, subdivision (c) in order to avoid conflicting rulings, expenditure of unnecessary resources, and to prevent the Office of the Inspector General from having issues of facts adjudicated at an arbitration in which it is not a proper party and would be unable to participate. Exhibit D to Spillane Dec (CDCR's Opposition to Plaintiffs' Petition to Compel Arbitration).

The hearing on CCPOA's Petition to Compel Arbitration has been set for January 28, 2016. (*Id.*)

/ / /

/ / /

---

[1] The Petition also names the California Department of Human Resources (CalHR) as a respondent. CalHR is representing CDCR in the arbitration proceeding and is also a named respondent in the Petition to Compel Arbitration.

### I. The OIG's Senate-Authorized Review of High Desert State Prison Was Aimed at Identifying Practices that Violate Inmates' Constitutional Rights that Are Currently Subject to Monitoring by the *Armstrong* and *Coleman* Courts and Were Subject to Monitoring by the *Madrid* Court.

Plaintiffs' complaint in the instant case challenges the manner in which the OIG conducted interviews of various CCPOA-represented CDCR employees during the course of a special review specifically authorized by the California State Senate Rules Committee in accordance with the OIG's enabling statutes. Cal. Penal Code, § 6126, subd. (b). As noted by the Senate Rules Committee in its authorization letter, the following two allegations it received were among the factors that prompted its request that the OIG review the practices at High Desert State Prison (HDSP) to determine whether some members of the prison staff were engaged in a pattern or practice of using inappropriate and excessive force against inmates and whether there was adequate protection of inmates from harm at the prison:

- A March 2015 incident involving a mobility-impaired inmate who was reportedly assaulted by staff, and consequently required outside medical treatment, for refusing to remove and relinquish footwear worn to assist with his medical condition.

- A March 2015 incident involving a hearing- and speech-impaired inmate who was reportedly wrestled to the ground and severely assaulted after non-compliance with oral instructions from custodial staff even though the inmate was wearing a brightly-colored vest identifying his impairments.

Exhibit E to Spillane Dec (June 25, 2015 letter from the California State Senate Rules Committee, authorizing the OIG's review of High Desert State Prison).

These complaints involve serious allegations of physical abuse of members of the *Armstrong* plaintiff class and violations of their rights under the ADA. In order to determine whether there were patterns or practices in place or a culture at the institution that subjected inmates, including disabled inmates, at HDSP to harm, OIG staff visited High Desert State Prison and observed prison living conditions; reviewed the mechanics and effectiveness of the inmate appeals system and reviewed inmate complaints alleging ADA violations; and reviewed recently completed *Armstrong* Plaintiffs' Counsel Monitoring Tour reports and CDCR internal *Armstrong* compliance reviews, noting where complaints the OIG has received correlate with issues identified in the Monitoring Tour reports and internal compliance reviews. Exhibit F to

Spillane Dec (December 16, 2015 OIG Special Review: High Desert State Prison). OIG staff also interviewed former HDSP staff and inmates to ask them general questions about the culture they perceived when they were at HDSP, whether they ever noticed any differential treatment of disabled inmates, whether staff received training or instruction regarding treatment of inmates with disabilities, whether inmates ever complained about the appeals process, and whether other staff ever used excessive force on inmates, among other general topics.

Although issues related to the treatment of disabled inmates were not the sole emphasis of the OIG's review, they comprised a significant portion of the issues the OIG examined at HDSP. The review also considered issues of racism and implicit bias, the treatment of convicted sex offenders, the protection of vulnerable inmates housed on Sensitive Needs Yards, the overall functioning and effectiveness of the institution's staff complaint and inmate appeal process, the frequency with which force was used against inmates, and the adequacy of internal affairs investigations and requests for investigations. Exhibit F to Spillane Dec (December 16, 2015 OIG Special Review: High Desert State Prison). The overall goal of the review, as requested by the Senate Rules Committee, was to identify areas in need of reform at HDSP, evaluate the scope of the problems identified, and propose recommendations aimed at implementing meaningful reform at the institution. Exhibit E to Spillane Dec (June 25, 2015 letter from the California State Senate Rules Committee, authorizing the OIG's review of High Desert State Prison).

On December 16, 2015, the OIG issued a report summarizing its review, which included the following findings, among others:

- There exists a profound lack of management and custody staff emphasis on ADA issues at HDSP, which is specifically designated to house ADA inmates.

- Staff is not sensitive to the needs of disabled inmates nor does staff appear to consider ADA accommodation to be an important aspect of custody duties.

- HDSP is not keeping a consistent Internal Affairs Allegation Log, which makes it difficult to track the results, if any, of any investigations of staff misconduct.

- A perception of insularity and indifference to inmates exists at HDSP, exacerbated by the unique geographical isolation, the high stress environment, and a labor organization that opposes oversight.

- With an appeals process that is fatally flawed and a staff complaint process that results in only about one percent of complaints getting referred for an

- outside investigation at HDSP, coupled with staff's unwillingness to report misconduct for fear of reprisal, it is very difficult to prove excessive or unnecessary use of force.

- Gang violence in Sensitive Needs Yards (housing intended for inmates who have enemy concerns and wish to program and live in a violence-free environment) has grown so bad that some SNY inmates have asked to return to mainline yards rather than continue to face the gangs on the SNYs. Statistics regarding frequency of violence indicate SNY yards are no longer a safe alternative to placement in the general population. Because CDCR considers SNY facilities to be no different than general population facilities, SNY staff have never received any training in supervising vulnerable populations.

Exhibit F to Spillane Dec (December 16, 2015 OIG Special Review: High Desert State Prison).

**II.   This Case Should Be Deemed Related to the Cases Identified Above Because the Action Directly Challenges Acts of Defendants that Were Aimed at Providing Public Oversight of Issues Subject to Decades of Federal Court Oversight in the *Armstrong*, *Coleman*, and *Madrid* Cases.**

Plaintiffs' complaint in the instant case, which was removed to federal court on December 23, 2015, seeks to punish Defendants for not allowing CDCR employees to have representatives during their non-disciplinary informational interviews with OIG's civilian staff.[2] Exhibit G to Spillane Dec (Plaintiffs' Complaint). Before beginning the interviews of these CCPOA-represented CDCR employees, the OIG informed the interviewees that the OIG was not conducting an investigation, that the employee being interviewed was not the subject of an investigation, and that the OIG would not use any statements provided during the interviews to initiate an investigation into the interviewee. Exhibit F to Spillane Dec (December 16, 2015 OIG Special Review: High Desert State Prison). Despite being provided with these pre-interview admonitions and guarantees that satisfied Defendants' obligations under the law, plaintiffs have brought this action to impose monetary damages and equitable remedies against Defendants as an attempt to dissuade Defendants from engaging in similar lawful conduct in the future in furtherance of their statutory duties. Exhibit G to Spillane Dec (Plaintiffs' Complaint).

---

[2] The Office of the Inspector General is a separate agency of the State of California entirely independent from CDCR. Cal. Penal Code § 6125. OIG employees are not designated as peace officers under California law. See Cal. Penal Code § 830 et seq.

Plaintiffs demonstrated their true motive in bringing this lawsuit in a letter CCPOA's State President wrote to the Governor and the California Legislature on November 23, 2015 – the day before it filed the instant action in state court. Exhibit H to Spillane Dec (Letter from CCPOA to Governor Brown). In that letter, CCPOA casts baseless allegations against the OIG after learning of the interviews of its members and ends by calling for the "elimination of the OIG or, at a minimum, a review and redefinition of OIG's function in its public oversight of CDCR." (*Id.*) Because plaintiffs' lawsuit is a strategic lawsuit against public participation (SLAPP), Defendants intend to invoke California state law anti-SLAPP protections codified in California Code of Civil Procedure section 425.16 et seq. Should plaintiffs be permitted to maintain a meritless lawsuit against the OIG that has the effect of precluding the OIG from conducting complete, thorough, and unimpeded reviews of CDCR policies and practices, the types of problems and potential constitutional violations the OIG identified in its review of HDSP might not be discovered in future OIG reviews. At a minimum, the significant costs resulting from protracted litigation would significantly impair the OIG's ability to discharge its statutory obligations. As evidenced by its November 23, 2015 letter, this is the precise result CCPOA seeks. Exhibit H to Spillane Dec (Letter from CCPOA to Governor Brown).

Given the overlap of issues at the heart of the OIG's review with the constitutional deprivations recognized by the *Armstrong*, *Coleman*, and *Madrid* courts and the ongoing interests in ensuring these federal constitutional violations are remedied, the *Armstrong* and *Coleman* courts have a strong interest in adjudicating the merits of this case. HDSP houses approximately 188 members of the *Armstrong* Plaintiff class. Declaration of Michael J. Maddox in Support of Defendants' Notice of Related Cases. 30.7 percent of the total inmate population at HDSP, 50.6 percent of the 1,498 inmates housed on HDSP's Sensitive Needs Yards, and 19 inmates and parolees the OIG interviewed during the course of its review are receiving treatment at the Correctional Clinical Case Management System (CCCMS) level of care, or above. *Id.* Advising mentally-ill inmates to accept a housing assignment in a high-stress, violent environment, while at the same time assuring them it is a safer alternative to general population

///

housing will likely lead to an increase in stress and a worsening of their symptoms and conditions.

Not only do the *Armstrong* and *Coleman* courts have an interest in the State of California's prospective ability to provide unfettered transparency in these areas of constitutional concern, the district courts' years of adjudication of these constitutional issues also places them in a position of expertise such that relation of the cases is likely to effect a savings of judicial effort and other economies. The parties would not need to brief the court on the history of the *Armstrong* or *Coleman* litigation, as it would already be well aware of the types of constitutional violations and the particular context in which those violations have occurred. These courts are also now highly familiar with the complex systems CDCR – a party in all the related actions – has in place that are specific to inmates with disabilities and mental health issues. For the same reasons, assigning the case to the judge who presided over the *Madrid* action would also be appropriate, as the *Madrid* court spent years dealing with some of the issues at the heart of this review – whether inmates were being subjected to excessive use of force, the adequacy of the department's internal review of incidents involving excessive use of force, and whether inmates were safe from harm by others. Exhibit E to Spillane Dec. (June 25, 2015 letter from the California State Senate Rules Committee, authorizing the OIG's review of High Desert State Prison).

Dated: January 8, 2016                           Respectfully Submitted,


                                                 ROBERT A. BARTON
                                                 Inspector General for the State of California


                                                  /s/ Shaun R. Spillane
                                                 _____
                                                 SHAUN R. SPILLANE
                                                 Attorney

                                                 Attorney for Defendants California Office of the Inspector General, Robert A. Barton, Roy Wesley, and Michael J. Maddox