IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA


RALPH COLEMAN, et al.
    Plaintiffs,

    vs.                                No. CIV S-90-0520 KJM KJN

EDMUND G. BROWN, et al.
    Defendants


SPECIAL MASTER'S REPORT ON
HIS EXPERT'S RE-AUDIT AND UPDATE ON SUICIDE PREVENTION PRACTICES
IN THE PRISONS OF THE CALIFORNIA DEPARTMENT OF
CORRECTIONS AND REHABILITATION

This report by the *Coleman* Special Master accompanies his expert Lindsay Hayes' Report, "A Re-Audit and Update on Suicide Prevention Practices in the Prisons of the California Department of Corrections and Rehabilitation (CDCR)." Mr. Hayes' report is a follow-up to his initial report to the Special Master and the Court on suicide prevention practices in CDCR prisons, "An Audit of Suicide Prevention Practices in the Prisons of the California Department of Corrections and Rehabilitation," filed on January 14, 2015 (ECF 5259). These reports are submitted as part of the Special Master's continuing review of the Defendants' compliance with court-ordered remediation in this matter.

The origin of these reports is found in this Court's order of July 12, 2013, directing the establishment of a workgroup known as the Suicide Prevention Management Workgroup (SPMW), to be made up of representatives of the *Coleman* parties and to work under the guidance of the Special Master to address and resolve the problem of persistently elevated rates of suicide among inmates housed in CDCR prisons. (ECF 4693)

The SPMW was organized and held its first meeting on July 31, 2013.  Early on, its members concluded that they required an expert assessment of current suicide prevention practices in CDCR prisons in order to shape the workings of the SPMW in a goal-oriented manner and ultimately succeed at accomplishing the purpose of the Workgroup and fulfillment of the Court's order.  As a result, with the agreement and consent of the parties and on the Special Master's recommendation, Mr. Hayes was appointed as an expert by the *Coleman* Court to the Special Master's staff on October 10, 2013 to assist with addressing issues surrounding prevention of inmate suicides. (ECF 4857).  Mr. Hayes is a nationally-recognized expert in the field of suicide prevention in the correctional setting, currently serving as the Project Director for the National Center on Institutions and Alternatives while continuing his ongoing suicide-prevention work across the United States and his publication of numerous professional books and articles on the subject.

Mr. Hayes' initial audit began on November 12, 2013 and concluded on July 24, 2014, covering all 34 CDCR prisons.  It resulted in his comprehensive initial audit report containing 32 specified recommendations, "An Audit of Suicide Prevention Practices in the Prisons of the California Department of Corrections," filed on January 14, 2015 (ECF 5259).  On February 3, 2015, the *Coleman* court directed the Defendants to adopt the recommendations in that report and to work with the Special Master in the SPMW, and otherwise as may be necessary, on the development of strategies and the implementation of the changes and practices contained in those recommendations.  In the same order, the Court also directed the Special Master to provide an update to the Court on Defendants' progress in implementing suicide prevention policies and practices.  (ECF 5271)  The report filed herewith is submitted in response to the Court's order for an update.

Immediately following entry of the February 3, 2015 order, the SPMW resumed its work and Mr. Hayes commenced a limited re-audit of selected CDCR prisons. He selected 18 prisons for re-audit based on his findings during his initial audit that their suicide prevention practices were problematic, their numbers of their inmate suicides were elevated, and/or their inmate populations on CDCR's Mental Health Service Delivery System (MHSDS) caseload were significant. Like Mr. Hayes' initial audit, his re-audit consisted of both on-site institutional inspections and reviews of inmate suicide case files from the selected institutions. The re-audit began on February 4, 2015 and concluded on July 24, 2015.

On December 9, 2015, Mr. Hayes' re-audit report was distributed in draft form to the *Coleman* parties for comment and/or objections to be submitted to the Special Master no later than 30 days thereafter. On January 8, 2016, Defendants timely submitted their written response to the Special Master. It offered various updates on their progress toward implementing Mr. Hayes' recommendations in his initial audit report, and no objections to his re-audit report. *Coleman* plaintiffs' counsel did not submit objections or comments to the draft report.

Various suicide prevention initiatives to which Defendants have committed within the SPMW process and which remain outstanding are listed on pages 31-32 of Mr. Hayes' re-audit report. These outstanding initiatives are:

    a. A CDCR memorandum and/or Corrective Action Plan (CAP) regarding current physical plant concerns for intake screening in Reception and Receiving Units at each prison, to include interim and long-term CAPs.

    b. A draft memorandum regarding *Program Guide* requirements for observation of patients in Mental Health Crisis Beds (MHCBs) who are *not* on Suicide Watch or Suicide Precaution statuses, to include a "step-down" process, clear definitions in Local Operating Procedures (LOPs) regarding types of behavior necessitating an observation status for non-suicidal patients, and guidance on avoidance of misuse/overuse of safety smocks.

   c. Clarifying CDCR memoranda to resolve confusion and uncertainty surrounding the issuance of possessions and privileges to MHCB patients based on clinical judgment.

   d. Clarifying CDCR memoranda and timetables for implementation of the Revised Interdisciplinary Progress Note - Five-Day Follow-Up Form for use by clinical staff and the 30-Minute Observation Form for use by custody staff.

   e. A revised draft of the "Mental Health Crisis Bed Discharge Custody Checks Policy," to include clarification of requirements for providing five-day clinical follow-ups for suicidal inmate/patients discharged from their placements in alternative housing back to their housing units without having been admitted into MHCBs, and clarification that those inmate/patients who require 30-minute checks beyond their initial 72 hours post-discharge must be automatically referred back to an MHCB.

   f. Installation of "stack-a-bunks" in alternative housing cells.

   g. Issuance of a revised "Suicide Risk Evaluation (SRE) Mentoring Program," to include the requirement that one SRE completed by every mental health clinician be audited every six months.

   h. A draft CDCR proposal to revise the mission of the Suicide Prevention and Response Focused Improvement Team (SPRFIT).

   i. Implementation of new 12-item mental health screening form to be used in administrative segregation units.

   j. Issuance of a "Revised Administrative Segregation Unit Intake Cell Procedure."

   k. An update on Outpatient Housing Unit (OHU)-type housing in administrative segregation units at Richard J. Donovan Correctional Facility (RJD).

In their written response to the draft report, Defendants provided updates on their progress on all of these initiatives except item "k."  Mr. Hayes states on page 31 of his re-audit report that CDCR should continue its cooperative undertaking with the Special Master in the SPMW by fully adopting all 32 specified recommendations[1] in Mr. Hayes' initial audit report

---

[1] Taking into account the Special Master's announcement at the SPMW meeting on September 30, 2015 to postpone for six months further discussion on Recommendations 14, 15, and 16 of the 32 specified recommendations in the initial audit report which remain unresolved. [Recommendation 14:  Any inmate discharged from suicide observation status and arriving in administrative segregation from either an MHCB or alternative housing should be initially housed in a suicide-resistant, retrofitted cell until such time as recommended by the mental health clinician

4

(ECF 5259) and in the Special Master's Report which accompanied it (ECF 5258), and complete any unfinished aspects of the initiatives listed above. The Special Master recognizes the value of the work that has been accomplished thus far by the SPMW and fully agrees with Mr. Hayes' statement.

On page 32 of his re-audit report, Mr. Hayes proposes a further re-audit of those prisons which chronically struggle with their suicide prevention programs, as well as almost all prisons that contain MHCB units. This would allow for (a) the provision of continued guidance and assistance to help bring these prisons' suicide prevention programs up to standards, (b) provision of a means by which to gauge the sustainability of the CDCR's corrective actions and the efficacy of its emerging Continuous Quality Improvement Tool (CQIT) for suicide prevention, and (c) most importantly, in the estimation of Mr. Hayes, it would result in continued reduction of the number and rate of inmate suicides throughout CDCR prisons.

The Special Master also agrees with Mr. Hayes' recommendation that he re-inspect those prisons described in the foregoing paragraph. Accordingly, such further re-inspections will proceed forthwith, to serve the interests indicated above and to proceed toward reaching the goal of reducing the number and rate of inmate suicides in CDCR prisons.

The amount and significance of the work that has been done by the SPMW and Mr. Hayes to reduce suicides in CDCR prisons has been considerable. The work that remains to be

---

as part of an individual treatment plan; <u>Recommendation 15</u>: Newly admitted administrative segregation inmates should not be considered protected from suicide risk by being double-celled. They should be placed in suicide-resistant, retrofitted cells; <u>Recommendation 16</u>: Based on current data indicating that risk of suicide in administrative segregation extends well beyond the first 72 hours there, CDCR, under the guidance of the Special Master, should study and determine a more appropriate and effective minimum length of stay in suicide-resistant retrofitted cells for newly admitted inmates.]

done should continue to completion. Accordingly, the Special Master is not requesting the entry of any additional orders at this time.

                                                       Respectfully submitted,

                                                       /s/

                                                       Matthew A. Lopes, Jr., Esq.
                                                       Special Master

January 13, 2016