IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

RALPH COLEMAN, et al.
    Plaintiffs

    v.                        No. CIV S-90-0520 KJM KJN PC

EDMUND G. BROWN, JR., et al.
    Defendants

SPECIAL MASTER'S REPORT ON HIS
EXPERT'S REPORT ON SUICIDES COMPLETED IN THE CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
JANUARY 1, 2013 – DECEMBER 31, 2013

    Attached is the *Coleman* Special Master's Expert's Report on Completed Suicides in the California Department of Corrections and Rehabilitation (CDCR) from January 1, 2013 through December 31, 2013 (Report). This is the sixteenth report by the Special Master's expert on completed suicides by CDCR inmates. It is submitted as part of the Special Master's overall continuing review of Defendants' compliance with court-ordered remediation in this matter.

    The Report was written by Kerry C. Hughes, M.D., a nationally recognized expert on mental health care and suicide prevention in the correctional setting. He was the author of the special master's expert's report on suicides by CDCR inmates during the latter half of 2012 (ECF 5324, filed June 17, 2015) and co-authored past annual expert suicide reports with the Special Master's expert, Raymond F. Patterson, M.D, for the years 1999 through 2001, and a combined report covering years 1999 through 2004. In preparation of the Report, four of the Special Master's other mental health experts assisted Dr. Hughes' conducting of in-depth clinical reviews and assessments of the health care records and CDCR death review reports for all CDCR inmate

1

suicide deaths during 2013. The other four experts are Jeffrey L. Metzner, M.D.; Kathryn A. Burns, M.D., M.P.H.; Mary Perrien, Ph.D.; and Henry A. Dlugacz, J.D., M.S.W., all of whom are also nationally recognized experts in the field of correctional mental health.

Like Dr. Hughes' report covering those suicides which occurred during the latter half of 2012 (ECF 5324), this Report also foregoes written summaries of the individual clinical suicide case reviews. Instead, it provides Dr. Hughes' general discussion of his case findings within the text of his Report, plus individual 2013 suicide case information and findings, which he summarized within appended charts and tables.[1] The Special Master and the *Coleman* parties agreed to forego written individual clinical case reviews in the interest of expediting completion of the Report and bringing the record on suicide prevention in CDCR prisons up to date as quickly as possible. The broader context of ongoing developments and activities in the area of suicide prevention illustrate why this is important. [2]

In light of the seriousness of the problems covered in the Special Master's expert's report on inmate suicides during the first six months of 2012, (ECF 4376, filed March 13, 2013), the *Coleman* court ordered the establishment of a Suicide Prevention Management Workgroup

---

[1] *See* Report, Appendices C1-C4 ("Inmate Demographics," "Assessment / Treatment / Interventions Implemented," "Identified Issues and Failures with Suicide Prevention and Corrective Action Measures," and "Inmate Suicidal History and Event Characteristics," respectively), and Appendix D ("Frequency of Suicides by CDCR Prison). It is anticipated that the upcoming annual expert suicide report for 2014 will follow the same or a similar format.

[2] Some past annual suicide reports by the Special Master's expert also dispensed with individual clinical case reviews. In those instances, as currently, the reports were prepared within a context of a court-ordered suicide prevention project and implementation of revised suicide prevention practices in the prisons. It was important then, as it is now, to bring the record on past suicide deaths up to date as quickly as possible and to focus available resources on implementation and testing of the effectiveness of new suicide prevention initiatives, rather than on time-consuming preparation of detailed individual reviews of suicide deaths that had occurred under past conditions that had since been modified. The 2008-2009 combined annual suicide report (ECF 4009) and the 2010 annual suicide report (ECF 4110) were submitted without individual case reviews, following this Court's adoption and ordering of recommended suicide prevention measures that emanated from a multi-faceted court-ordered suicide prevention project (ECF 3954, 4125) – a context analogous to that of the current Suicide Prevention Management Workgroup.

(SPMW). Its purpose was to target and resolve the lingering barriers to reducing the elevated rate of suicides among CDCR inmates in a significant and lasting way.[3] The SPMW met on July 31, August 21, and October 17, 2013, and quickly reached a consensus that it needed an audit of current suicide prevention practices in all 34 CDCR prisons in order to accurately identify the existing issues and conditions on which the group should focus its efforts. At the direction of the Special Master, his expert Lindsay Hayes conducted an initial audit of all 34 CDCR institutions, from November 2013 through July 2014. Mr. Hayes' report on his findings and recommendations was filed on January 14, 2015. (ECF 5258) On February 3, 2015, the *Coleman* Court ordered the Defendants to adopt the recommendations in that report and to work with the Special Master in the SPMW, and otherwise as may be necessary, on the development of strategies and the implementation of the changes and practices contained in the recommendations within the Hayes report. (ECF 5271)

    The SPMW resumed meeting on February 3, 2015, followed by additional meetings on February 13, March 11, April 6, May 14, July 20, and September 30, 2015. During that period, with Mr. Hayes' initial report and Dr. Hughes' report and recommendations on suicides that occurred during the latter half of 2012 (ECF 5324, filed June 17, 2015) providing an informational basis, the SPMW made considerable progress. An updated report by Mr. Hayes' on his recent re-audit of 18 selected CDCR prisons (ECF 5396, filed January 13, 2016) and the attached Report by Dr. Hughes, should further assist the SPMW with continuing work toward completion of various specified outstanding tasks and any other remaining work to be done. The

---

[3] "Defendants shall, forthwith, under the supervision of the Special Master, establish a suicide prevention/management work group comprised of CDCR clinical, custody, and administrative staff, Department of State Hospitals (DSH) staff, the Special Master's experts, plaintiffs' counsel and, as appropriate, the *Plata* receiver to work under the guidance of the Special Master to timely review suicide prevention measures, suicide deaths, and deaths deemed to be of undetermined cause." (ECF 4693, filed July 12, 2013)

SPMW will now have the benefit of this further updated record on the state of inmate suicides in CDCR prisons without the additional delay that would have been occasioned if 30 written individual clinical case reviews had been prepared for inclusion in the Report. It is anticipated that Dr. Hughes' upcoming report on suicides in 2014 will also forego written individual suicide case reviews in order to bring the record on CDCR inmate suicides even further up to date as quickly as possible and to help maintain the momentum which the SPMW has demonstrated thus far.

Another component of the ongoing suicide prevention effort involves refinement of the existing suicide review process into a more efficient, closer to "real-time" one, with its attendant advantages. The larger goal of this effort is to develop a process whereby CDCR will eventually self-monitor and self-correct any obstacles it may encounter in maintaining a solid, enduring suicide prevention program. Progress in this direction has already been made. The Special Master and members of his expert staff have been meeting with CDCR officials to examine recent suicide cases and in the process work together on streamlining existing suicide review procedures.

Dr. Hughes' Report was distributed to the *Coleman* parties in draft form on December 29, 2015, with 30 days for submission of any comments or objections to the Special Master. *Coleman* Plaintiff's Counsel have informed the Special Master that they have no objections to Dr. Hughes' Report. On January 8, 2016, Defendants submitted their written response to the Report. They stated that they have no objections to his review, specific findings, or trend data for the covered period, and that they agree with the Special Master's and Dr. Hughes'

recommendation that the parties should continue to consider prior completed suicides within the context of the SPMW.[4]

In Dr. Hughes' Report, he recommends generally the following[5]:

1. That the ongoing work of the Suicide Prevention Management Workgroup should continue;

2. That the Special Master's experts should remain involved in the ongoing CDCR suicide review process, including participation in CDCR suicide case reviews, provision of feedback to CDCR regarding suicide-related policies and procedures, and involvement in the Continuous Quality Improvement and sustainable process efforts; and

3. That the Suicide Prevention Management Workgroup should ultimately work with the CDCR California Correctional Health Care Services Death Review Committee to address issues with communication and cooperation within the CDCR death review process.

---

[4] Such review has already been directed by this Court, per Order dated July 12, 2013. (ECF 4693)

[5] The relevant passages in Dr. Hughes Report appear on pages 15-16 of the Report, and are as follows:

During 2013, CDCR persistently experienced a significantly higher suicide rate, at 22.58 per 100,000, than the rate in U.S. state prisons, which was 15 per 100,000 for the same period. This was not only true for 2013; this elevated suicide rate has persisted for several years. This report and previous annual suicide reviews by the Special Master's expert have noted this untoward distinction and have made repeated recommendations regarding many of the same areas of identified deficiency.

Since the time of the 2013 suicides, CDCR has been working on addressing some of the issues identified above. The reviewer recommends continued work, in the context of the Suicide Prevention Management Workgroup (SPMW). The *Coleman* court ordered the establishment of this group and tasked it with review, under the guidance of the Special Master, of suicide prevention measures, suicide deaths, and deaths deemed to be undetermined cause (ECF 4693). In February 2015, the group was re-convened and ordered to work with the Special Master on the development of strategies and the implementation of changes and practices contained in a separate expert review of suicide prevention practices in CDCR prisons (ECF 5258, 5271).

In addition to the continued work by the SPMW, this reviewer recommends that Special Master's experts continue to be involved in the ongoing CDCR suicide review process, including participation in CDCR suicide case reviews and the provision of feedback to CDCR regarding suicide-related policies and procedures, as well as involvement in the Continuous Quality Improvement and sustainable process efforts. This reviewer further recommends that the SPMW also ultimately work with the CDCR CCHCS Death Review Committee (DRC) to address issues with communication and cooperation within the CDCR inmate death review process, all to better coordinate and integrate the mental health and medical death review processes.

Because these recommendations in Dr. Hughes' Report track prior court orders and the mission of the Suicide Prevention Management Workgroup, they need not be reiterated in additional court orders at this time. Accordingly, the Special Master requests that the Court adopt in full the attached Report by Kerry C. Hughes, M.D. on Completed Suicides in the California Department of Corrections and Rehabilitation from January 1, 2013 through December 31, 2013, and does not request the entry of any orders by the Court at this time.

The Special Master acknowledges the significant amount of time and effort invested by all persons involved in many targeted initiatives to reduce CDCR inmate suicides. This remains a very busy and hopefully an ultimately fruitful time in the entire suicide prevention aspect of *Coleman* remediation. The work should continue until its goal has been accomplished.

    Respectfully submitted,

    Matthew A. Lopes, Jr., Esq.
    Special Master

January 15, 2016