# Exhibit B

STATE OF CALIFORNIA—DEPARTMENT OF CORRECTIONS AND REHABILITATION                                   EDMUND G. BROWN JR., GOVERNOR

**OFFICE OF LEGAL AFFAIRS**
Patrick R. McKinney II
General Counsel
P.O. Box 942883
Sacramento, CA 94283-0001



March 15, 2016


Paul Mello
Hanson Bridgett
1676 N. California Blvd., Suite 620
Walnut Creek, CA  94596

Dear Mr. Mello:


Attached, please find California Department of Corrections and Rehabilitation's March 2016 Status Update for Three-Judge Court proceeding.

Sincerely,


Patrick R. McKinney II
General Counsel, Office of Legal Affairs
California Department of Corrections and Rehabilitation

Attachments

STATE OF CALIFORNIA—DEPARTMENT OF CORRECTIONS AND REHABILITATION                                        EDMUND G. BROWN JR., GOVERNOR



## <u>MARCH 15, 2016 UPDATE TO THE THREE-JUDGE COURT</u>

This report reflects CDCR's efforts as of March 15, 2016 to develop and implement measures to comply with the Three-Judge Court's population reduction order. Because this is an evolving process, CDCR reserves the right to modify or amend its plans as circumstances change.

On February 22, 2016, CDCR activated 792 infill beds and corresponding administrative and health care support facilities at Mule Creek State Prison. The parties are currently engaged in the Court-ordered meet-and-confer process to reach an agreement on how such capacity should be counted for purposes of determining compliance with the Court's population reduction order. As of March 9, 2016, the State's prison population is approximately 135.3% of design capacity if the 792 infill beds are counted at 137.5% for the compliance calculation. If the 792 infill beds are counted at 100% for the compliance calculation, the prison population is approximately 135.6% of design capacity.

1.  <u>Contracting for additional in-state capacity in county jails, community correctional facilities, private prison(s), and reduction of out-of-state beds:</u>

    Defendants have reduced the population in CDCR's 34 institutions by transferring inmates to in-state facilities.

    a.  Private Prison (California City):

        The current population of California City is approximately 1,900 inmates.

    b.  Community correctional facilities (CCFs) and modified community correctional facilities (MCCFs):

        The State currently has contracted for 4,218 MCCF beds that are in various stages of activation and transfer.

    c.  County jails:

        The State continues to evaluate the need for additional in-state jail bed contracts to house CDCR inmates.

    d.  Reduction of inmates housed out-of-state:

        On February 10, 2014, the Court ordered Defendants to "explore ways to attempt to reduce the number of inmates housed in out-of-state facilities to the extent feasible." Since that time, the State has reduced the out-of-state inmate population to 5,010 and has closed the Oklahoma out-of-state facility. Under the Fiscal Year 2015-16 budget, approximately 110 additional out-of-state beds will be reduced by the end of June 2016.

2.  <u>Reentry Hubs:</u>

    The State continues to maintain thirteen prison-based reentry hubs.

3.      Newly-enacted legislation/update on durability:

In response to the Court's March 4, 2016 Order, Defendants will continue to report on enacted and pending legislation, policies, and construction that will ensure that compliance with the Court-ordered population cap is durable.

The State continues to implement Senate Bill 260 (2013), which allows inmates whose crimes were committed as minors to appear before the Board of Parole Hearings (the Board) to demonstrate their suitability for release after serving at least fifteen years of their sentence.  From January 1, 2014 through February 29, 2016, the Board held 1,076 youth offender hearings, resulting in 294 grants, 659 denials, 123 stipulations to unsuitability, and there are currently no split votes that require referral to the full Board for further consideration.  An additional 575 hearings were scheduled during this time period, but were waived, postponed, continued, or cancelled.  On October 3, 2015, the State enacted Senate Bill 261, which expands the youth offender parole process described above to include inmates who committed their controlling offense before the age of 23.  Inmates who are immediately eligible for a hearing will receive a hearing date by January 1, 2018, if sentenced to an indeterminate life term, and by December 31, 2021, if sentenced to a determinate life term.

On October 3, 2015, the State also enacted Senate Bill 230, which provides that life inmates who are granted parole will be eligible for release, subject to applicable review periods, upon reaching their minimum eligible parole date.  Life inmates will no longer be granted parole with future parole dates.

Proposition 36, passed by the voters in November 2012, revised the State's three-strikes law to permit resentencing for qualifying third-strike inmates whose third strike was not serious or violent.  As of March 10, 2016, approximately 2,188 third-strike inmates have been released.

On November 4, 2014, the voters passed Proposition 47, which requires misdemeanor rather than felony sentencing for certain property and drug crimes and permits inmates previously sentenced for these reclassified crimes to petition for resentencing.  As of February 29, 2016, approximately 4,567 inmates have been released under Proposition 47.

On January 27, 2016, Governor Brown announced The Public Safety and Rehabilitation Act of 2016 (the "Act"), which if passed by the voters will serve as a durable remedy and further the goals of enhancing public safety and promoting rehabilitation.[1]  The Act proposes to reform the juvenile and adult criminal justice system in California by (1) creating a parole consideration process for non-violent offenders who have served the full term for their primary criminal offense in state prison, (2) authorizing CDCR to award credits earned for good behavior and approved rehabilitative or educational achievements, and (3) requiring judges to determine whether juveniles charged with certain crimes should be tried in juvenile or adult court.  CDCR will draft and adopt

---

[1] On February 24, 2016, the Sacramento Superior Court granted the California District Attorneys Association's request for a writ of mandate prohibiting the Attorney General from issuing a title and summary for the Act as amended.  Governor Brown sought emergency relief from the California Supreme Court, which stayed enforcement of the writ and issued an order for the real parties in interest to show cause why emergency relief should not be granted.

2

regulations to implement the parole and credits provisions after a period of public review and comment. CDCR's Secretary is also required to certify that the regulations protect and enhance public safety.

Additionally, CDCR is adding 2,376 beds with corresponding administrative and health care support facilities at Mule Creek State Prison and Richard J. Donovan Correctional Facility. As described above, 792 of these beds at Mule Creek have already been activated. CDCR continues to expand community reentry bed usage and is exploring options for increasing reentry bed use, including modifying statutory requirements to enable CDCR to place inmates in reentry facilities up to six months before their release dates, two months earlier than is currently permitted.

4.   <u>Prospective credit-earning increase for non-violent, non-sex registrant second-strike offenders and minimum custody inmates:</u>

Effective from the date of the Court's February 10, 2014 Order, non-violent, non-sex second-striker offenders are earning credits at the rate of 33.3% (increased from the previous rate of 20%) and are also eligible to earn milestone credits for rehabilitative programs. The State's automated systems have been modified and the court-ordered credits are being automatically applied, including milestone credits. In February, 206 inmates were released as a result of the court-ordered credit increases.[2] These inmates earned an average of 162.3 days of additional credit. Of the 206 inmates released in February, 120 earned milestone completion credits toward their advanced release date. Since April 2014, approximately 3,935 inmates who have been released as a result of this credit measure earned milestone credits toward their advanced release date.

As of January 1, 2015, Defendants expanded 2-for-1 credit earnings for all inmates designated Minimum Custody A or B pursuant to California Code of Regulations Title 15 Section 3377.1 who are currently eligible to earn day-for-day (50%) credits. These credits are being applied prospectively to the 3,693 inmates who are currently eligible under this program. Since January 1, 2015, 8,412 total inmates have been released receiving expanded 2-for-1 earnings.[3]

5.   <u>New parole determination process whereby non-violent second-strikers will be eligible for parole consideration by the Board once having served 50% of their sentence:</u>

Classification committees are reviewing inmates for eligibility and referring them to the Board. From January 1, 2015 through February 29, 2016, 6,267 non-violent second-strike inmates were referred to the Board for review for parole. During this time period, the Board approved 1,965 inmates for release and denied release to 1,847 inmates. Many cases are pending review because the 30-day period for written input from inmates, victims, and prosecutors has not yet elapsed. Others are pending review until the inmate is within 60 days of his or her 50 percent time-served date.

---

[2] Of the 206 inmates, 129 were released to Post Release Community Supervision and 77 were released to parole.
[3] Defendants recently discovered that they have underreported the number of inmates who have been receiving the expanded 2-for-1 credits. The issue was solely with the scope of the data queries and all inmates eligible for the Court-ordered credit increase have been and continue to receive the expanded credits as of January 1, 2015.

11514059.1

6.    Parole determination process for certain inmates with indeterminate sentences granted parole with future parole dates:

As mentioned above, on October 3, 2015, the State enacted Senate Bill 230, which provides that life inmates who are granted parole will be eligible for release, subject to applicable review periods, upon reaching their minimum eligible parole date.

7.    Parole process for medically incapacitated inmates:

The State continues to work closely with the Receiver's Office to implement this measure.  The Receiver's Office is continuing to review inmates and is sending completed recommendations to CDCR.  Recommendations received from the Receiver's office are reviewed by DAI and referred to the Board for a hearing.  As of March 9, 2016, the Board has held 74 medical parole hearings under the revised procedures.  An additional 21 were scheduled, but were postponed, continued, or cancelled.

8.    Parole process for inmates 60 years of age or older having served at least 25 years:

The Board continues to schedule eligible inmates for hearings who were not already in the Board's hearing cycle, including inmates sentenced to determinate terms.  From February 11, 2014 through February 29, 2016, the Board has held 1,187 hearings for inmates eligible for elderly parole, resulting in 317 grants, 781 denials, 89 stipulations to unsuitability, and there currently are no split votes that require further review by the full Board.  An additional 554 hearings were scheduled during this time period but were waived, postponed, continued, or cancelled.

9.    Reentry programs:

Contracts for the San Francisco, Marin, Los Angeles, Kern County, and Butte County reentry programs are in place.  The State continues to review and refer eligible inmates to county officials for consideration for placement.  As of March 10, 2016, the 150-bed facility in Los Angeles County houses 110 inmates, the 50-bed facility in Kern County houses 21 inmates, and the 20-bed Butte County facility houses 4 inmates.

10.    Expanded alternative custody program:

The State's alternative custody program for females, Custody to Community Transitional Reentry Program (CCTRP), provides female inmates with a range of rehabilitative services that assist with alcohol and drug recovery, employment, education, housing, family reunification, and social support.  Female inmates in the CCTRP are housed at one of three facilities located in San Diego, Santa Fe Springs (LA), and Bakersfield.

As of March 10, 2016, the 82-bed San Diego facility houses 81 female inmates, the 82-bed Santa Fe Springs (LA) facility houses 80 female inmates, and the 75-bed Bakersfield facility houses 75 female inmates.

11514059.1