UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al., | No. 2:90-cv-0520 KJM DB P |
| Plaintiffs, | |
| v. | ORDER |
| EDMUND G. BROWN, JR., et al., | |
| Defendants. | |

Defendants have filed a request to add two matters to the agenda for discussion at the January 20, 2017 status conference. ECF No. 5525. Defendants' written request follows an oral request made at the November 10, 2016 status conference, at which time the court directed defendants to file in writing their "proposed definition of the topic" so the court could determine whether it would either "approve or modify" the proposed topic for discussion. *See* ECF No. 5521 at 31.

Defendants propose two topics for discussion. The first concerns "efforts to reach agreement between the parties and the Special Master concerning issues that no longer require Court monitoring" and "the development of a process to end Court oversight of those matters for which defendants have demonstrated constitutional compliance…." ECF No. 5525 at 1. The second topic, related to the first, is scheduling regular status conferences with the court to "allow Defendants to better apprise the court of . . . successes, as well as challenges that arise" and to

1

obtain "periodic guidance" from the court "on, among other things, determining when the goals set forth in the Court's August 9, 2016 order discussing the roadmap to the end of federal court oversight may be met." ECF No. 5525 at 2.

   Process to End Court Oversight

   This action has a long and well established process for measuring defendants' compliance with their remedial duties. In 1995, at the start of the remedial phase, the court referred the matter to a Special Master. *See* ECF No. 640. The duties of the Special Master are outlined in the Order of Reference, filed December 11, 1995. *Id.* In relevant part here, one of the duties of the Special Master is to "prepare and file with the court periodic reports assessing defendants' compliance with [the] remedial plan as the court may order." *Id.* at 4. The order also makes provision for the parties to submit written objections to the Special Master before compliance reports are filed with the court and requires the Special Master to consider those objections. *Id*. at 4-5. Finally, the order provides that

> any compliance report of the special master filed in accordance with [the order] shall be adopted as findings of fact and conclusions of law of the court unless, within ten days after being served with the filing of the report, either side moves to reject or modify the report. The court will entertain no objection to the report unless an identical objection was previously submitted to the special master in the form of a specific written objection in accordance with the provisions of paragraph A(5) above. The objecting party shall note each particular finding or recommendation to which objection is made, shall provide proposed alternative findings or recommendations, and may request a hearing before the court. Pursuant to Fed. R. Civ. P. 53(e)(2), the court shall accept the special master's findings of fact unless they are clearly erroneous.

*Id*. at 8.

   To date, the Special Master has filed one hundred thirty-one reports on the status of defendants' development of and compliance with the original remedial plan approved by the court, now known as the Program Guide, and with other court-ordered remedial measures.[1][2][3]

---

[1] The Special Master's compliance monitoring reports are found at Dkt. Nos. 671, 678, 785, 850, 981, 995, 1000, 1036, 1093, 1144, 1213, 1270, 1303, 1317, 1373, 1446, 1519, 1553, 1587, and ECF Nos. 1649, 1746, 1749, 2081, 2082, 2140, 2180, 2274, 2334, 2895, 3029, 3638, 4124, 4205, 4298, 5439. (The use of "Dkt." references a filing made prior to implementation of the court's CM/ECF electronic filing system; "ECF" references a filing made after implementation.)

Having reviewed the process set out in the Order of Reference and its implementation to date, the court concludes it has functioned as intended. The court finds no reason to change it now. Moreover, the court has in several orders already outlined the goals that remain, most recently in the August 9, 2016 order. *See* ECF No. 5477. In light of the court's orders, the many detailed reports the Special Master has provided, and the numerous focused workgroup meetings he has conducted with defendants and with the parties, defendants already have sufficient guidance to map an end of federal court oversight.

With respect to removing issues from monitoring by the Special Master, defendants note in their request the parties currently are working with the Special Master in an effort to reach agreement on matters that may be removed from such monitoring. Consistent with the Order of Reference, the court expects to hear from the Special Master in due course on any agreement reached with the parties to reduce particular areas of his monitoring and that will be the appropriate time for the court to review any proposals to transfer monitoring from the Special Master to defendants.

As noted, defendants also want to discuss "development of a process to end Court

---

[2] The other reports filed by the Special Master are found at Dkt. No. 958 (recommended schedule for implementation of quality assurance plans); Dkt. Nos. 994, 1032, 1033, 1149, 1205, 1206, 1227, 1304, 1351, 1392, ECF Nos. 1661, 1762, 1851, 1921, 2121 (staffing); Dkt. No. 974 (staffing and use of force); Dkt. No. 1008 (administrative segregation, involuntary medications, and identifier coding); Dkt. Nos. 1053, 1082, 1122, 1130, 1224, 1263, 1282, 1326, 1366; Dkt. Nos. 1172, 1235, 1240, 1265, 1272, 1315, 1369, 1410, 1593, 1599, 1602; ECF Nos. 1969, 1994, 2117, 2133, 2186, 2208, 2432, 3758, 4020, 4830, 5156, 5363, 5448 (issues related to access to inpatient beds and mental health crisis beds, bed planning, and adequacy of inpatient mental health care); Dkt. Nos. 1296, 1297, ECF Nos. 1658, 1806, 2084, 2210, 2339, 2566, 3030, 3677, 3918, 4008, 4009, 4109, 4110, 4121, 4307, 4308, , 4375, 4376, 5258, 5259, 5324, 5325, 5395, 5396, 5398, 5399, 5427, 5428 (completed suicides and suicide prevention measures); Dkt. No. 1350 (addressing several issues as required by two court orders); Dkt. No. 1381 (defendants' Intensive Outpatient Care study); ECF Nos. 2302, 2639 (Enhanced Outpatient Program in Reception Centers); ECF No. 4730 (quality improvement process); and ECF Nos. 5164, 5257 (San Quentin Psychiatric Inpatient Program); ECF No. 5266 (implementation of RVR policies and procedures).

[3] The Special Master also filed several reports concerning the transition of issues in *Gates v. Gomez,* No. 2:87-cv-1636 LKK JFM, into this action, as well as a special report on mental health services at California State Prison-Los Angeles County, Dkt. No. 1371; and a report responding to a request from the court for information arising from plaintiffs' motion to convene a three-judge court to limit the prison population, ECF No. 2253.

oversight of those matters for which defendants have demonstrated constitutional compliance. . . ." ECF No. 5525 at 1. Defendants have offered no examples of areas in which they believe constitutional compliance has been demonstrated, nor have they suggested how or whether any such areas could be removed from federal court oversight while remediation in other areas remains ongoing. This is not a topic that can be discussed in the abstract. As the long history of laborious efforts to remedy significant constitutional violations in the delivery of mental health care to California's seriously mentally ill prisoners shows, most of the remedies required are interconnected and non-compliance in one area can have a ripple effect into others. This is currently shown most clearly in the recurrence of wait lists for inpatient care, which is impacting once again not only timely access to inpatient care but also access to mental health crisis beds. It also is demonstrated in the ongoing staffing shortages that persistently plague the mental health care delivery system.

The history also reflects uneven compliance with remedial requirements across California's thirty-five prisons, with some institutions achieving compliance in some areas and not others, some institutions achieving compliance for periods of time and then falling out of compliance, and only relatively few institutions achieving across the board compliance with Program Guide requirements and maintaining that compliance for a significant period of time. As the Special Master noted in his most recent monitoring report, "institutional performance had improved in some areas, remained generally static in others, and had regressed in yet others." ECF No. 5439 at 16.

The most recent round of monitoring was conducted after a two-and-a-half year hiatus in monitoring occasioned primarily by defendants' premature motion to terminate this action, followed by litigation that revealed substantial ongoing constitutional violations and necessitated additional remedial orders. *See* ECF No. 5439 at 11-12. At this juncture, it should be crystal clear that the remedy in this action must be complete, and it must be durable before the court fades away. *Cf. Coleman v. Brown*, 922 F. Supp. 1004, 1043 (E.D. Cal. & N.D. Cal. 2013) (quoting *Horne v. Flores*, 557 U.S. 433, 447 (2009)). Many interrelated factors are at play in any assessment of partial compliance: the ongoing remedial work required by the orders that followed

the litigation in 2013 and 2014, the recurrence of waitlists for inpatient care and the corresponding effects of those waitlists on other levels of mental health care, ongoing serious staffing shortages, and the regression of institutional compliance absent monitoring by the Special Master.  It is impossible for the court, on the record before it, to assess whether court oversight might be ended in certain discreet areas while remedial work continues in others.  If indeed partial termination is possible and appropriate, identification of those opportunities and a plan for how oversight might be ended must be developed in the first instance as a proposal by the parties in consultation with the Special Master.  Defendants have not shown why the court's greater involvement in this process is required at this time.

### Regular Status Conferences

Defendants ask the court to consider scheduling regular status conferences with the court to "allow Defendants to better apprise the court of . . . successes, as well as challenges that arise" and to obtain "periodic guidance" from the court "on, among other things, determining when" the tasks described in the court's August 9, 2016 order, completion of which is a prerequisite to a complete remedy and the end of federal court oversight, "may be met."  ECF No. 5525 at 2.

As it has shown, the court will meet with the parties when, in the court's view, such meetings are necessary to move the remaining remedial tasks forward.  The court will continue to set status conferences until all remedial tasks are complete.  The court will not, however, substitute itself for the Special Master or the reporting process set in place by the Order of Reference and followed for the past twenty years.

Going forward, the court plans to have at least annual status conferences, which will be set at the court's discretion based on the state of the record and the needs identified by either the court or the Special Master.

### Additional Considerations

Finally, the court is compelled to observe – as noted in a separate order as well -- that the Special Master sought an extension of time to report to the court on the status of mental health staffing and implementation of defendants' staffing plan beyond the 120-day period set in the court's August 9, 2016 order.  His extension request was prompted by defendants' inability to

complete all proposals for a staffing plan to finally remedy the twenty-year deficit in adequate mental health staffing in time for the Special Master to file his stand-alone staffing report by the court's original deadline. While the Special Master notes some of the delay resulted from factors beyond defendants' control, *see* ECF No. 5523 at 3, the delay in this instance informs the court's view that the current processes for monitoring and ultimately ensuring compliance should not to be altered.

For all of the foregoing reasons, defendants' request to expand the agenda for the January 20, 2017 status conference will be denied. The court expects that, in preparing his monitoring and other reports, the Special Master will continue to identify, with clarity and specificity, the steps that remain toward satisfactory completion of the goals and other remedial obligations described in the court's August 9, 2016 order.

In accordance with the above, IT IS HEREBY ORDERED that defendants' request to add items to the agenda for the January 20, 2017 status conference is denied.

DATED: December 8, 2016.

_____
UNITED STATES DISTRICT JUDGE