KATHLEEN A. KENEALY
Acting Attorney General of California
WILLIAM C. KWONG
Acting Senior Assistant Attorney General
DANIELLE F. O'BANNON
Supervising Deputy Attorney General
ELISE OWENS THORN, State Bar No. 145931
MANEESH SHARMA, State Bar No. 280084
CHRISTINE M. CICCOTTI, State Bar No. 238695
Deputy Attorney General
  1300 I Street, Suite 125
  P.O. Box 944255
  Sacramento, CA 94244-2550
  Telephone: (916) 323-4025
  Fax: (916) 324-5205
  E-mail: Christine.Ciccotti@doj.ca.gov
*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **RALPH COLEMAN, et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**EDMUND G. BROWN JR., et al.,**<br><br>Defendants. | 2:90-cv-00520 KJM-DB (PC)<br><br>**DECLARATION OF PAM AHLIN IN SUPPORT OF OBJECTIONS TO PLAINTIFFS' REQUEST FOR FURTHER RELIEF ON INPATIENT CARE** |

I, Pam Ahlin, declare:

1. I am the Director of the Department of State Hospitals (DSH) and I have personal knowledge of the facts stated in this declaration and if called upon to testify to those facts, could and would do so competently. I make this declaration in support of Objections to Plaintiffs' Request for Further Relief on Inpatient Care.

2. In 2015, the California Department of Corrections and Rehabilitation (CDCR) and DSH entered into a Memorandum of Understanding concerning DSH's inpatient mental health

1

1    treatment to CDCR's patients in designated licensed beds at DSH-Atascadero, DSH-Coalinga,

2    and in facilities operated within CDCR prisons, specifically the Vacaville Psychiatric Program,

3    the Salinas Valley Psychiatric Program, and the California Health Care Facility at Stockton.

4    Attached hereto as Exhibit A and B are true and correct copies of the 2015 Memorandum of

5    Understanding and DSH's Housing Review Policy.

6         3.    The Memorandum of Understanding and Housing Review Policy provide a

7    transparent process for continuous review of patients housed outside of their Least Restrictive

8    Housing level. The Housing Review Policy requires DSH clinicians to assess patients who are

9    housed outside their Least Restrictive Housing level at every treatment team meeting. At the

10   patient's initial Interdisciplinary Treatment Team review at DSH, the treatment team develops a

11   plan with goals and objectives to stabilize and transition the patient to their Least Restrictive

12   Housing level.  Housing reviews are conducted at each subsequent treatment team review until

13   the patient is able to be safely housed within his Least Restrictive Housing level, or until the

14   patient meets discharge criteria for return to CDCR.

15        4.    DSH implemented the Housing Review Policy, which describes the process to move

16   patients to a least restrictive environment when clinically relevant. The Policy requires a clinical

17   assessment of a patient's readiness to move to a least restrictive environment, including an

18   unlocked dorm setting.  Patients with a Least Restrictive Housing designation for unlocked dorms

19   may be initially admitted to DSH in higher-level environments due to their mental health status at

20   the time of referral.  Such patients may not be clinically ready to move to an unlocked dorm

21   setting despite having a Least Restrictive Housing designation for several reasons.  For example,

22   the patients could be experiencing symptoms such as auditory hallucinations, psychotic

23   symptoms, threatening to kill staff or are engaging in dangerous self-harming behaviors. Patients

24   with these symptoms could engage in harm to themselves or others if they are prematurely placed

25   in a less restrictive setting, such as an unlocked dorm.

26        5.    DSH clinicians assess patients housed outside their Least Restrictive Housing level to

27   determine whether those patients are clinically ready to move to a less restrictive setting.  When

28   patients are clinically ready to move to a less restrictive environment, Defendants promptly move

                                              2

them to an available bed. The Housing Review Policy also memorializes the process of ongoing individualized review and assessment of each patient to determine the appropriate level of mental health treatment for that patient. This individualized assessment allows DSH to provide mental health treatment that stabilizes patients so that they may be placed in the appropriate bed in DSH's continuum of care, or discharged to CDCR if they meet discharge criteria.

6.    In accordance with the Housing Review Policy, the DSH Sacramento Patient Management Unit maintains a central database to track and report on Housing Review decisions. This tracking includes ensuring that Housing Review Forms are received by the Patient Management Unit in accordance with each patient's identified review date as well as a clinical review of any criteria that is restricting a patient from moving to less restrictive housing. Patient Management Unit further provides clinical outreach and consultation to the DSH facilities regarding the qualitative factors utilized in reaching housing decisions to ensure that decisions continue to be individualized based on each patient's clinical condition and in conformance with these adopted policies. As a result of these housing review efforts, since the Memorandum of Understanding was implemented in May 2016, a total of 661 patients have obtained appropriate clinical stability to transfer from a more restrictive environment. Of these 661 patients, 97 were to the unlocked dorm environments at DSH-Atascadero and DSH-Coalinga.

7.    If a CDCR Institutional Classification Committee determines a patient's current custody factors warrant a change in the patient's Least Restrictive Housing level, DSH's Headquarters Patient Management Unit and the patient's Treatment Team are notified to conduct a housing review within 10 business days.

8.    As of January 8, 2017, DSH-Coalinga had a capacity of 1,241 beds, of which 1,236 were full, 48 by *Coleman* class members. DSH-Atascadero had a capacity of 1,184 beds of which 1,156 were filled, 215 by *Coleman* class members.

1       9.   As of January 11, 2017, there were 29 patients waiting for placement in an acute care

2  bed, none of whom were waiting beyond program guide timelines, 10 patients waiting for

3  placement in a low-custody intermediate care bed, none of whom were waiting beyond program

4  guide timelines, and 79 patients waiting for placement in high-custody intermediate care beds, 29

5  of whom were waiting beyond program guide timelines.

6      I declare under penalty of perjury under the laws of the United States of America that the

7  foregoing is true and correct.

8      Executed in Sacramento, California, on January 13, 2017.

9

10                       _____
                          PAM AHLIN
                          Director, Department of State Hospitals

11

12                          *(original signature retained by attorney)*

13  CF1997CS0003

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4

# Exhibit A

# MEMORANDUM OF UNDERSTANDING BETWEEN CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION AND DEPARTMENT OF STATE HOSPITALS FOR MANAGEMENT AND OVERSIGHT OF INTERMEDIATE CARE AND ACUTE INPATIENT PROGRAMS

## I.    INTENT

This Memorandum of Understanding (MOU) establishes the legal framework by which the California Department of Corrections and Rehabilitation (CDCR) and the California Department of State Hospitals (DSH) function cooperatively to provide treatment to CDCR patients requiring inpatient mental health care.  These services shall include clinically appropriate care decisions that conform to all legal requirements and optimize use of available resources to perform mental health evaluation and treatment. DSH operates Intermediate and Acute programs for the treatment of CDCR patients under Penal Code section 2684, subdivision (a) and/or Chapter 6 of the 2009 Mental Health Services Delivery System (MHSDS) Program Guide.

The parties intend to operationalize this MOU through the following policies:

- Joint Policy and Procedure re: Referral, Admissions, and Movement (Attachment 1)
- DSH Rules Violation Reporting Policy – CDCR Patients in DSH Inpatient Programs (Attachment 2)
- Joint Policy re: Suicide Review Process (Attachment 3)
- Joint Policy re: Medical Cases (Attachment 4)
- Joint Policy re: DSH Referral and Penal Code Section 2602 Management (Attachment 5)
- DSH Housing Review Policy (Attachment 6)
- DSH Utilization Management Policy (Attachment 7)
- DSH Treatment Planning and Delivery of Care Policy (Attachment 8)
- Joint Policy re: Non-Formulary Psychotropic Medication (Attachment 9)
- Joint Policy re: Discharge (Attachment 10)
- Joint Policy re: DSH Facility Pre-Release Planning (Attachment 11)

## II.    DEFINITIONS

Acceptance:  DSH agrees to admit a patient for placement at a DSH psychiatric program or hospital.

Acute:  Inpatient programs within DSH psychiatric programs providing intensive, short-term mental health treatment for CDCR patients who have a major mental disorder or an

exacerbation of a chronic major mental illness requiring treatment not available within the intermediate inpatient programs within DSH psychiatric programs and state hospitals. See also MHSDS Program Guide at 12-6-2.

CDCR DSH Referral Unit (DRU): The CDCR Headquarters Mental Health unit responsible for review and oversight of all CDCR referrals to DSH.

Coordinated Clinical Assessment Team (CCAT): A CDCR/DSH team created to ensure a centralized approach to the review and decision-making process for all difficult, perplexing, or disputed CDCR referrals to DSH. The CCAT is comprised of CDCR senior mental health clinicians, CDCR Health Care Placement Oversight Program (HCPOP) representatives, CDCR Classification Services Unit representatives, a Classification & Parole Representative, the referring clinician and his or her supervisor, DSH PMU representatives, DSH executive clinical leadership, and any additional CDCR or DSH staff, as needed. See also MHSDS Program Guide at 12-6-18.

Correctional Treatment Center: A health facility with a specified number of beds within a state prison, county jail, or Department of Juvenile Justice facility designated to provide health care to that portion of the inmate population who do not require general acute care level of services but are in need of professionally supervised health care beyond that normally provided in the community on an outpatient basis.

DSH hospitals:  State hospitals housing CDCR patients under Penal Code section 2684, subdivision (a), currently DSH-Atascadero, DSH-Coalinga, and DSH-Patton. Each DSH hospital is assigned a hub CDCR institution. The hub institutions are, respectively, California Men's Colony, Pleasant Valley State Prison, and California Institution for Women.

DSH psychiatric programs:  DSH programs hosted within the secured perimeter at California Medical Facility (DSH-Vacaville), Salinas Valley State Prison (DSH-Salinas Valley) and California Health Care Facility (DSH-Stockton).

DSH Patient Management Unit (PMU): The DSH headquarters mental health unit responsible for management and oversight of all CDCR referrals to DSH.

Incomplete Referral: A referral received by DSH that does not include all information as outlined in Section IV of this MOU.

Intermediate: Inpatient programs within DSH hospitals and psychiatric programs providing longer-term intermediate and sub-acute mental health treatment for CDCR patients who have a

serious mental disorder requiring treatment that is not available within CDCR.  See also MHSDS Program Guide at 12-6-6.

InterQual:  A set of measurable, clinical indicators, as well as diagnostic and therapeutic services reflecting the need for higher level of care or hospitalization. InterQual Criteria is an evidence-based clinical content decision support tool that provides appropriateness of care decision support covering medical and behavioral health across all levels of care as well as care planning and complex care management. InterQual Criteria are the standard for evidence-based clinical decision support to help ensure provision of the most appropriate care.

Least Restrictive Housing (LRH): A patient's lowest possible custody setting within DSH, as determined by CDCR custody.

MHSDS Program: The CDCR-DSH system of providing mental health screening, diagnostic and treatment to CDCR patients, primarily set forth in the Mental Health Services Delivery System Program Guide (2009) (MHSDS Program Guide) and subsequent policies established in accordance with *Coleman v. Brown*.

Near Miss: An event or situation that could have resulted in an adverse/sentinel event but did not, either by chance or through timely intervention

Patient Movement:  To place patients as quickly as possible into the least restrictive DSH program consistent with HCPOP's custodial case factors review and DSH acceptance.

Referral: The process by which CDCR requests admission of a patient to DSH by providing all information outlined in Section IV of this MOU. .

Rejection: When the referral of a patient for placement at a DSH psychiatric program or hospital is declined by DSH.

Sentinel Event: An event or series of events that cause the death or serious disability of the patient, personnel, or visitor. "Serious disability" means a physical or mental impairment that substantially limits one or more of the major life activities of an individual, or the loss of bodily function, if the impairment lasts more than seven days or is still present at the time of discharge, or unintentional loss of a body part. In accordance with California Correctional Health Care Services' (CCHCS) sentinel event policy, a sentinel event also includes unusual occurrences and near-misses.

Unusual Occurrences: Events that constitute an unusual occurrence include, but are not limited to, poisonings, fires, explosions, death of a patient, employee or visitor due to unnatural causes, sexual acts involving patients, physical assaults on patients, employees, or visitors, all suspected criminal acts involving patients, employees, or visitors, all suspected incidents of physical or sexual abuse to a patient, unexplained or illicit disappearance or loss of a patient's remains, or any disruption of service in the licensed facility.

## III.  GENERAL PROVISIONS

The Secretary of CDCR maintains custodial authority over CDCR patients following their referral and admission to a DSH hospital or psychiatric program.  Except as otherwise set forth in this document, DSH is responsible for day-to-day mental health treatment of patients accepted and admitted by DSH.

A.  In accordance with the MHSDS Program Guide, the parties agree that the policy of both agencies is to expeditiously refer, admit and move patients to the most appropriate level of care in the least restrictive environment that is consistent with their custodial and clinical needs.  The parties agree to work collaboratively to ensure that referrals, admissions, movement within the programs to appropriate levels of care or housing, and return of patients to CDCR are done timely in accordance with the Joint Policy and Procedure re: Referral, Admissions, and Movement.  (Attachment 1.)  The parties agree to ensure that their efforts will effectively utilize staff and available resources.

B.  DSH staff and operations at the DSH psychiatric programs located in CDCR institutions shall comply with all statutes, regulations, CDCR's Department Operations Manual and local operating procedures concerning the safety and security of all staff, patients and property.  DSH psychiatric programs and personnel shall comply with all CDCR and local procedures relating to appeals, public health and infection control, access to medical and dental services, rule violations reports in accordance with the DSH Rules Violation Reporting Policy (Attachment 2), use of force procedures, privileges and property allowances, and visiting policies and procedures.

C.  DSH hospitals and psychiatric programs that are currently Joint Commission accredited shall maintain accreditation.  The parties agree that they will work collaboratively to ensure accreditation is successful.  CDCR shall maintain the correctional treatment center licenses pursuant to Title 22, California Code of Regulations for DSH psychiatric programs.

D. The executive director or designee of each DSH psychiatric program shall participate in the CTC local governing body. CDCR and DSH shall work collaboratively to ensure the requirements of the role of the governing body as delineated in Title 22 are met. These requirements include but are not limited to ensuring compliance with all applicable laws and regulations, appointment of medical director and administrator, and adopting policies and procedures governing the CTC.

E. The parties agree to develop a standardized (content, time of report) bed utilization report within 60 days of the date of the signature of this MOU. Once that report is finalized, DSH shall provide this report to CDCR HCPOP each business day and it shall include, at a minimum, patient name, CDCR number, and length of stay.

F. CDCR shall provide all patient transportation to and from DSH facilities and CDCR institutions and between DSH hospitals and psychiatric programs. Parties agree that transfers will occur as expeditiously as possible, but not to exceed timelines set forth in the MHSDS Program Guide (2009). The patient movement for both admission and discharge shall occur within 72 hours of CDCR's receipt of the Admissions Transfer Chrono (ATC) or discharge documentation.

G. The parties agree that CDCR shall provide access to mental health records upon referral to DSH. DSH shall provide patient records including a discharge summary to CDCR within 24 hours of physical discharge of a patient back to CDCR. The Electronic Health Record System is anticipated to be implemented by May 2016. In the interim, clinical information is made available via secure electronic file transfer systems and the Electronic Unit Health Record.

H. DSH inpatient records for all patients shall be in compliance with Title 22 and Joint Commission, where accredited. DSH staff shall be responsible for maintaining and completing all DSH inpatient mental health records.

I. If a CDCR patient is found unresponsive or requires emergency medical care while housed at a DSH psychiatric program on prison grounds, staff shall follow the emergency procedure policy that is in place at the CDCR institution. If a CDCR patient is found unresponsive while housed at a DSH hospital, staff shall follow the emergency procedure policy that is in place at the DSH hospital.

J. DSH psychiatric programs will report all required unusual occurrences and all sentinel events as defined by Title 22 to the institution's CEO or designee by end of shift.

K.  DSH hospitals and psychiatric programs shall advise the hub or host prison warden and on duty watch commander of unusual or significant events or actions as described in section 51030.3, CDCR Department Operations Manual Section (DOM), by the end of the watch or shift.  In addition to DSH procedures that shall be followed, notifications of a patient's death while admitted to a DSH facility shall be immediately sent to the warden and the prison's chief medical executive, or designees. CDCR shall complete all required notifications in the event of a death. DSH will provide access to its facilities, records, policies and staff when necessary to perform law enforcement and health care reviews into the circumstances of the death. In addition, if a patient commits suicide or attempts suicide and medical treatment is required, a notification of the known circumstances will also be sent to the CDCR Suicide Response Coordinator.  Reviews of suicides occurring within DSH shall be conducted in accordance with the Joint Policy re: Suicide Review Process.  (Attachment 3.)

L.  All clinicians employed by DSH psychiatric programs requiring credentialing and/or privileging are subject to CDCR's statewide credentialing, privileging and peer review procedures.  The local Healthcare Chief Executive Officer shall be advised if DSH psychiatric program providers are suspended from performing clinical duties due to professional misconduct or competency of care issues or are subject to reporting to their licensing board under Business and Professions Code section 805.  Notification must be made to CCHCS's credentialing unit when an employee or contractor is terminated for performance or professional issues.

## IV.  REFERRALS

All referrals to DSH inpatient care are completed consistent with the MHSDS Program Guide timelines. When a referral is made from a Security Housing Unit (SHU) or from SHU via Mental Health Crisis Bed (MHCB), the CDCR referring clinician shall document that this referral is from a SHU or from a SHU via a MHCB on the referral form.

Referral information provided to DSH shall include:

A.  Authority for the patient's transfer - the patient's consent to the transfer to DSH, documentation that the transfer has been determined appropriate and necessary following a due process hearing, or confirmation that the transfer meets emergency certification criteria;

B.  Clinical reason/justification for referral;

C.  Most recent CDCR Suicide Risk Evaluation;

D.  Current treatment plan;

E.  Medical clearance for transportation;

F.  Documentation of medical needs, as applicable; (See also Joint Policy re: Medical Cases, Attachment 4.)

G.  Pharmacy Profile or Medication Administration Record (MAR);

H.  PC 2602 Court Order (when relevant) or supporting documentation; (See also Joint Policy re: DSH Referral and Penal Code Section 2602 Management, Attachment 5.)

I.  TB status which may include a health care evaluation and clearance if TB test results are unavailable; and

J.  Clozaril supporting documentation, if a Clozaril trial is requested.

All referrals shall be accepted or rejected within MHSDS Program Guide timelines.  Rescission of referrals is solely the decision of the referring IDTT.

If an incomplete referral is received by DSH, DSH agrees to notify the DRU immediately, and DRU will provide all required items within one working day.

## V.  ACCEPTANCE OR REJECTION OF REFERRALS

All referrals to DSH inpatient care are reviewed by DSH according to the MHSDS Program Guide timelines and criteria.  The parties agree that patients who have been identified through IDTT for inpatient need are presumed to in fact have such need and will be referred to DSH for inpatient treatment. The referral review completed by DSH is to ensure that clinical criteria for admission are met, and to identify any housing considerations based upon clinical evaluation.

Rejections that occur due to non-clinical reasons shall be raised to the headquarters executive staff of the parties for resolution.

In the event that a patient has substantial co-existing medical needs that they cannot be adequately cared for at the DSH facility to which they were referred, the parties agree to work together to identify a suitable placement in order to ensure the provision of the necessary mental health treatment in accordance with the Joint Policy re: Medical Cases.  (Attachment 4)

Involuntary administration of psychiatric medications on CDCR patients shall be processed in accordance with Penal Code section 2602, associated regulations, and the Joint Policy re: DSH Referral and Penal Code Section 2602 Management.  (See Attachment 5)  A pending hearing or expiration of an order under Penal Code section 2602 will not be a basis for denying or delaying the referral, acceptance, or discharge of a patient.

If DSH anticipates rejecting a referral, the DSH PMU shall notify the CDCR DSH Referral Unit, and a case discussion between DSH designated clinical staff and CDCR headquarters clinical staff shall occur. If resolution is not achieved and a rejection occurs, a CCAT will be held.

If a resolution is not achieved in CCAT, CDCR may elect to appeal the rejection decision via a written appeal, at which time executive leadership will discuss the appeal. CDCR agrees to provide DSH with rejection appeals within two working days of the official rejection notice. The appeal process shall consist of a discussion between designated DSH and CDCR HQ clinical leadership or designees.

## VI. PATIENT MOVEMENT

CDCR's HCPOP shall manage the patient movement for all patients in DSH psychiatric programs in accordance with the Joint Policy and Procedure re: Referral, Admissions, and Movement. (Attachment 1)   CDCR and DSH will follow the DSH Housing Review Policy (Attachment 6) to place and treat patients in the least restrictive housing environment, as determined by current relevant clinical factors, and the CDCR LRH designation.

## VII. ADMISSIONS

The parties shall follow criteria for admission to DSH in accordance with the MHSDS Program Guide and the Joint Policy and Procedure re: Referral, Admissions, and Movement. (Attachment 1)   Admissions to DSH facilities shall be available between 8 a.m. and 4 p.m., Monday through Friday during all regular state business days.   Admissions may be made outside of these hours by mutual agreement and advance coordination.

## VIII. UTILIZATION REVIEW AND MANAGEMENT

The parties shall cooperatively manage length of inpatient stays within DSH psychiatric programs or state hospitals in accordance with the Joint Policy re: Utilization Management. (Attachment 7)

## IX. TREATMENT PLANNING

DSH shall ensure that appropriate treatment planning for all patients under their care occurs in accordance with the DSH Treatment Planning and Delivery of Care Policy.  (Attachment 8)

## X. MEDICATIONS

CDCR and DSH shall utilize the same medication formulary in the psychiatric programs.  Non-formulary decisions by both agencies shall occur in accordance with the Joint Policy re: Non-Formulary Psychotropic Medication.  (Attachment 9)

## XI. MEDICAL SERVICES

In DSH psychiatric programs, the primary care providers shall utilize the established CCHCS process to request medically necessary imaging and specialty consultative services, and shall include all required documentation. All requests will be subject to established evidence based medical necessity criteria, including but not limited to InterQual. Requests for services shall be in accordance with the CCHCS policy [IMSP&P V.4 Chapter 34.1: Utilization Management Program Policy and 34.2: Utilization Management Medical Services Review Procedure].

## XII. DISCHARGE

It is the policy of the parties to expeditiously return patients to outpatient settings as soon as their need for inpatient care has subsided.

Discharge of patients from DSH inpatient programs to CDCR shall be cooperatively managed by the parties in accordance with the discharge criteria and procedure set forth in the MHSDS Program Guide at Chapter 6 (12-6-5 to 12-6-6 and 12-6-12 to 12-6-15) and the Joint Policy re: Discharge. (Attachment 10)

## XIII. INSTITUTIONAL RELEASE

If a patient is to be paroled or otherwise released before they are suitable for discharge from DSH, the parties agree to follow the Joint Policy re: Pre-Release Planning. (Attachment 11)

## XIV. PATIENT RIGHTS

All CDCR patients retain the rights afforded to them pursuant to title 15 unless specifically excepted in the MHSDS Program. Rights shall be afforded to patients- in accordance with Title 22 and Joint Commission, where accredited.

## XV. PROPERTY AND PRIVILEGES

Property allowances for patients housed within DSH psychiatric programs shall be consistent with the requirements set forth in the MHSDS Program Guide and in accordance with CDCR and local procedures.

## XVI. OUT TO COURT

The local CDCR Litigation Coordinator, HCPOP, and DSH shall be advised when an order is received for a patient in a DSH psychiatric program or hospital to appear in court.

## XVII.  TRAINING

CDCR and DSH shall distribute copies of this MOU, all associated policies, procedures, and attachments, and the MHSDS Program Guide to all CDCR institutions, Parole Regions and to relevant DSH hospitals and psychiatric programs.  CDCR and DSH shall conduct system-wide training for all executive staff at DSH psychiatric program or state hospital, and all clinical, program, and administrative staff, including but not limited to, social workers, psychologists, and psychiatrists, supervising clinicians, and discipline chiefs, including CDCR staff involved in the transfer of patients to, or treatment of patients at, a DSH psychiatric program or state hospital on the nature, extent and availability of care, admission criteria, discharge criteria, and procedure for admitting to and discharging from DSH programs. Training shall occur upon hiring and annually, and reviewed thereafter upon the approval by the parties of any modification to this MOU, and/or any associated policy, procedure, or attachment thereto, or to the MHSDS Program Guide.

## XVIII.  COMPLIANCE

CDCR and DSH shall regularly monitor compliance with this MOU.  Any unresolved disputes or failure to comply with the terms of the MOU shall be reported for action to the Departments' Deputy Directors.

## XIX. TERMINATION

This MOU shall remain in effect until the parties agree to modify or terminate the agreement. Amendments to this MOU shall be made only by the written agreement of the parties.  This MOU shall automatically renew every 3 years after the date of signature provided that the parties review the document and communicate in writing their agreement to continue with the MOU prior to the date of renewal.

Dated: 11/04/15

Pamela Ahlin, Director
Department of State Hospitals

Dated: 11/19/15

Timothy Belavich, Ph.D., MSHCA, CCHP-MH, Director (A)
Division of Health Care Services and Deputy Director
Statewide Mental Health Program
California Department of Corrections and Rehabilitation

Dated: 11/20/15

Kelly Harrington, Director
Division of Adult Institutions
California Department of Corrections and
Rehabilitation

Dated: 11/20/15

R. Steven Tharratt, M.D., MPVM, FACP
Director of Health Care Operations
Statewide Chief Medical Executive
California Correctional Health Care
Services

# Exhibit B

Department of State Hospitals

# ADMINISTRATIVE LETTER

| NUMBER:<br>AL2015-22 |
| --- |

| SUBJECT:<br><br>**DSH Housing Review Policy– CDCR Patients in DSH Inpatient Programs** | DATE ISSUED:<br>November 2015 |
| --- | --- |

| REFERENCES/AUTHORITY:<br><br>• By Order of the Director, Department of State Hospitals<br>• Mental Health Services Delivery System Program Guide – 2009 Revision<br>• Defendants' Supplemental Plan to Reduce or Eliminate the Inpatient Waitlists, October 18, 2011, Section II.A<br>• Memorandum of Understanding Between California Department of Corrections and Department of State Hospitals for Management and Oversight of Intermediate Care and Acute Inpatient Programs Treating Patients | SUPERSEDES: |
| --- | --- |

**Purpose**

To formalize the DSH Housing Review process for the movement of CDCR patients who have been clinically placed in higher custody settings within DSH to their Least Restrictive Housing (LRH) designation. This letter clarifies and reinforces the expectations regarding the Modified Custody Criteria and Patient Movement Plan discussed in Section II.A of Defendants' October 18, 2011 Supplemental Plan to Reduce or Eliminate the Inpatient Waitlists.

CDCR custody determines a patient's LRH designation by conducting a custodial review. The LRH designation governs a patient's lowest custody setting within DSH. This policy will help optimize bed utilization management for reducing waitlists and ensure that CDCR patients are housed in the least restrictive environment while receiving inpatient treatment at DSH.

**Responsibility**

Responsibility for policy review and implementation:
DSH Director or designee.

Responsibility for compliance with the policy:
The Executive Directors or designees of the psychiatric programs and state hospitals treating CDCR patients.

Responsibility for compliance with policy by Patient Management

- 1 -

|  | Unit staff at DSH-Sacramento:<br>DSH Deputy Director of Hospital Strategic Planning, or designee. |
|---|---|
| **Policy** | It is the policy of the Department of State Hospitals (DSH) to place and treat all California Department of Corrections & Rehabilitation (CDCR) patients in the least restrictive setting. |
| **Definitions** | **Admission and Discharge Unit (ADU):** A multidisciplinary team at each DSH facility that is responsible for processing and coordinating referrals, admissions, bed management, discharges, and transfers in and out of the facility.  The ADU is, at a minimum, comprised of a registered nurse or a psychiatrist, an analyst, and a manager or administrator, and may include and other staff, as necessary.<br><br>**DSH Patient Management Unit (PMU):** The DSH Headquarters mental health unit responsible for management and oversight of all CDCR referrals to DSH.<br><br>**Health Care Placement Oversight Program (HCPOP):**  The CDCR unit responsible for bed management of health care beds, including beds in DSH psychiatric programs.  HCPOP is also responsible for CDCR patient movement.<br><br>**Least Restrictive Housing (LRH):**  The lowest custody setting in which a patient may be housed within DSH, as determined by CDCR HCPOP. |
| **Policy Requirements** | Utilizing the attached Housing Placement Criteria (Attachment A), housing reviews for CDCR patients shall occur as follows:<br><br>• At initial and subsequent IDTT meetings<br>• At any time Institutional Classification Committee (ICC) action results in change of housing designation<br><br>IDTT Review:<br><br>1. In the event that a patient is clinically placed in a higher custodial setting than his LRH designation allows, the IDTT shall be alerted. (See Joint Referral, Admission, and Patient Movement Policy.)  A Housing Review shall be conducted at the patient's initial IDTT meeting. The IDTT shall develop a treatment plan that includes goals and objectives to transition the patient to the least restrictive DSH |

- 2 -

environment allowed by his LRH designation. The IDTT shall continue to conduct Housing Reviews at all subsequent IDTT meetings until the patient is housed within his LRH.

2.  Upon determination that a patient is suitable for a level of care change (LOC) from Acute to Intermediate, the IDTT shall conduct a Housing Review, and notify the facility's ADU. The ADU shall contact the PMU and HCPOP for coordination of the LOC transfer, in accordance with procedures delineated in the Joint Referral, Admission, and Patient Movement Policy.

3.  An ad hoc IDTT meeting shall be held to conduct a housing review at any time the IDTT believes that a lower custody setting within DSH may be clinically indicated for that patient.

ICC Review:

If an ICC determines that a patient's current custody factors warrant a change to his LRH designation, the DSH representative at the ICC shall obtain a copy of the CDCR Classification Committee Chrono and provide to DSH Program Management, PMU, and the patient's IDTT of the change in designation within 3 business days. Upon notification of a change in a patient's LRH designation, the DSH IDTT shall conduct a Housing Review within 10 business days.

Documentation Requirements:

After the initial Housing Review for admission, all subsequent housing decisions shall be documented in the Current Status section of the treatment plan and on a Housing Decision Form (Attachment B).

Upon admission of a patient, the admitting DSH facility's Bed Utilization Management report shall be updated to reflect each patient's LRH designation.

Each DSH facility shall provide the completed Housing Decision Forms to the PMU on a weekly basis. The PMU shall maintain a database to centrally track and report on Housing Review decisions.

For housing changes within a DSH facility, the facility shall

- 3 -

follow its local operating procedures to finalize the change in housing. The PMU and CDCR's HCPOP shall coordinate transfers between DSH facilities.

This process shall be reviewed annually and revised as needed to ensure optimal bed utilization, and appropriate placement of all CDCR patients receiving treatment within DSH.

**Signature**

Pamela Ahlin, Director
Department of State Hospitals

**Attachments**

Attachment A - Housing Placement Criteria
Attachment B - Housing Decision Form

- 4 -

STATE OF CALIFORNIA — DEPARTMENT OF STATE HOSPITALS                                    EDMUND G. BROWN JR., GOVERNOR

**DIVISION OF HOSPITAL STRATEGIC PLANNING AND IMPLEMENTATION**
Patient Management Unit
1600 Ninth Street, Room 420
Sacramento, CA 95814



## ATTACHMENT A– HOUSING PLACEMENT CRITERIA

### Least Restrictive Housing Matrix

| | **Least Restrictive Housing (LRH) Designation** (CDCR custody) | **Eligible DSH Program** | **Housing Environment Overview** |
|---|---|---|---|
| **Less Restrictive > >>** ------- **< < < < < More Restrictive ------** | Unlocked Dorms (Intermediate) | DSH-Atascadero (256 beds)<br><br>DSH-Coalinga (50 beds): | All rooms are unlocked, units are locked<br>• Four-man dorms<br>• Two-man dorms<br><br>• Ten four-man dorms<br>• Ten single-man rooms |
| | Locked Dorms (Intermediate) | DSH-Vacaville (84 beds): | All dorms are locked;<br>Unit A2:<br>• Four eight-man dorms<br>• Three four-man dorms<br>Unit A3:<br>• One sixteen-man dorm<br>• Two four-man dorms<br>• Two eight-man dorms |
| | Celled Intermediate Program Multi person cell | DSH-Salinas Valley (44 beds): | All cells are locked<br>Unit TC1:<br>• Six four-man cells<br>Unit TC2:<br>• Ten two-man cells |
| | Celled Intermediate Program, S-Suffix | DSH – Stockton (202 beds)<br><br><br><br><br><br>DSH - Salinas Valley (420 beds)<br><br>DSH – Vacaville (94 beds) | All cells are locked<br>Unit TC1:<br>  32 single cells<br>Unit TC2:<br>  54 single cells<br>Units C5 and C6:<br>  58 single cells on each unit<br><br>14 units with 30 cells on each unit<br><br>Unit HCTC:<br>  64 single cells<br>Unit P-3:<br>• 30 single cells |

STATE OF CALIFORNIA — DEPARTMENT OF STATE HOSPITALS                    EDMUND G. BROWN JR., GOVERNOR

DIVISION OF HOSPITAL STRATEGIC PLANNING AND IMPLEMENTATION
PATIENT MANAGEMENT UNIT
1600 NINTH STREET, ROOM 420
SACRAMENTO, CA 95814

## ATTACHMENT B

## DSH – CDCR PATIENT HOUSING DECISION FORM

| PATIENT NAME | DSH # | CDCR # | LEAST RESTRICTIVE HOUSING DESIGNATION Assigned by CDCR |
|---|---|---|---|
| | | | |

| CURRENT DSH FACILITY AND HOUSING | | |
|---|---|---|
| ☐  Salinas Valley | ☐  Stockton | ☐  Vacaville |
| ☐  Single Cell<br>☐  2 – Man Cell<br>☐  4 – Man Cell | ☐  Single Cell (ICF)<br>☐  Single Cell (Acute) | ☐  Single Cell (ICF)<br>☐  Single Cell (Acute)<br>☐  Dorm Beds (4 – Man)<br>☐  Dorm Beds (8 – Man)<br>☐  Dorm Beds (16 – Man) |

| INTER DISCIPLINARY TREATMENT TEAM (IDTT) HOUSING REVIEW & RECOMMENDATION | | |
|---|---|---|
| Recommend Placement in Less Restrictive Housing:<br><br>☐  No<br>☐  Yes | ☐  ASH<br>☐  CSH<br>☐  SVPP<br>☐  VPP | ☐  Single Room<br>☐  2 – Man<br>☐  4 - Man<br>☐  8 - Man<br>☐  16 - Man |
| **Clinical Rationale:** | | |

| Printed Name | Signature | Review Date |
|---|---|---|
| | | |

| ADMISSIONS AND DISCHARGE UNIT REVIEW | | |
|---|---|---|
| **Patient Transferring:** | | **Date:** |
| ☐  No<br>☐  Yes | ☐  ASH<br>☐  CSH<br>☐  SVPP<br>☐  VPP | ☐  Single Room<br>☐  2 – Man<br>☐  4 - Man<br>☐  8 - Man<br>☐  16 - Man |
| ☐  Discharge Transfer Documentation sent to Receiving Facility | | **Date:** |
| ☐  Housing Decision Form Sent to DSH - PMU | | **Date:** |

DSH Housing Review Policy