1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al., | No. 2:90-cv-0520 KJM DB P |
| Plaintiffs, | |
| v. | ORDER |
| EDMUND G. BROWN, JR., et al., | |
| Defendants. | |

This matter is coming on for status conference on January 23, 2017 at 10:00 a.m. to address matters identified in this court's December 9, 2016 order. *See* ECF No. 6 at 5-6. The court has read the materials filed by the parties. ECF Nos. 5542, 5543, 5544. After review of the papers, the court has determined that it requires additional information to supplement the parties' filings, as set forth below. Generally, as the court's additional questions signal, the court is seeking clarity regarding the data on which defendants' decisions are based and on which the court relies in assessing the status of compliance; the court also is concerned about the apparent ongoing disconnect between the number of inmates waiting for appropriate mental health treatment and the number of beds available but unoccupied to allow for that treatment. The court is prepared to receive the information called for here in the form of written declaration(s) or live testimony subject to cross-examination, as appropriate. The parties shall be prepared to present

/////

1

the information so that the hearing does not exceed the one court day currently scheduled on January 23rd.

1. According to Exhibit A of the Declaration of Katherine Tebrock (Tebrock Declaration), ECF No. 5544-2, as of January 12, 2017, defendants have available as follows: for male inmates, 427 mental health crisis beds, 412 acute inpatient beds, 390 intermediate care inpatient beds, and 700 intermediate care-high custody inpatient beds, and for female inmates, 22 mental health crisis beds, 45 acute/intermediate care inpatient beds, and 30 temporary acute/intermediate care beds. As of January 20, 2017, how many of those beds are filled? How many are empty? If any beds are empty, where are the empty beds and why are they empty?

2. As of January 20, 2017, how many inmate-patients are in hospital beds with a custody level above their least restrictive housing designation?

3. According to Exhibit A of the Tebrock Declaration, as of January 12, 2017, the temporary capacity of mental health crisis beds was reduced by 54 beds. Was the temporary status of these beds made permanent? If not, why was this capacity reduced?

4. As of January 20, 2017, how many Isolation Rooms are in temporary use at DSH-Stockton to offset the loss of intermediate care beds in October 2016 and January 2017? Could these beds be made permanent? If not, why not?

5. As of January 20, 2017, how many licensed inpatient beds not already designated for *Coleman* class members are unoccupied at Atascadero State Hospital, Coalinga State Hospital, and Patton State Hospital? Could some or all of those beds be made available for *Coleman* class members if additional inpatient capacity is required immediately? If so, what level(s) of care could be provided? If not, why not?

6. According to the Tebrock Declaration, some hospitals in the community were willing to take a "limited number" of inmate-patients. ECF No. 5544-2 at 4. Which hospitals were willing to take these patients at what point in time? How many patients was each hospital willing to take? Was this for mental health crisis bed care only?

7. According to the Tebrock Declaration, the 2016 bed projections "show no need for additional inpatient beds" and "the fall 2016 projections indicate an increase [sic] need for low-custody intermediate-care beds and a decrease in the need for high-custody intermediate care beds." ECF No. 5544-2. The court requires an explanation of how specifically this information will be reflected in defendants' planned capacity going forward.

8. How would defendants' projected inpatient bed need change if defendants used an 80 percent "occupancy standard" rather than a 90 percent "occupancy standard" to project inpatient bed need? Would use of the 80 percent "occupancy standard" increase defendants' ability to address spikes in demand for inpatient care without exceeding Program Guideline timelines for transfer to such care? *See* ECF No. 5542-1 at 108 (Mental Health Bed Need Study Based on Fall 2016 Population Projections) ("While the inpatient community standard is approximately 80 percent, the California Correctional Health Care Services decided to apply a 90 percent occupancy standard to inpatient programs, and a 95 percent standard to the outpatient programs (excluding CCCMS). The lower occupancy standard increases the probability of having an empty bed available." ).

9. According to the Declaration of Pam Ahlin, ECF No. 5544-1, an "individualized clinical assessment" is part of the determination as to where an inmate-patient will be hospitalized. ECF No. 5544-1 at 2. Does this clinical assessment involve more than a determination of whether the inmate-patient requires intermediate or acute care? If so, does the assessment affect the options available for patient placement? Are the treatment options standard across ICF programs and across acute care programs, or do they differ across individual programs?

10. What, if any, are the actual obstacles to placement of all inmates referred for mental health crisis bed placement within 24 hours of referral as required by the Program Guide? *See* Mental Health Services Program Guide, 2009 Revision, at 12-1-16.

/////

3

11. What, if any, are the actual obstacles to complete and permanent elimination of any circumstance in which Program Guideline timelines for transfer to inpatient hospitalization are exceeded?

12. What, if any, are the actual obstacles to keeping all inpatient hospital beds occupied as long as there are inmates who have been referred and approved for transfer to an inpatient level of care?

IT IS SO ORDERED.

DATED: January 19, 2017.

_____
UNITED STATES DISTRICT JUDGE