Case 2:90-cv-00520-KJM-SCR   Document 5552-1   Filed 01/23/17   Page 1 of 12

PLAINTIFF'S EXHIBIT
CASE NO. 90-520
EXHIBIT NO. A

7Department of State Hospitals

# ADMINISTRATIVE LETTER

| | |
|---|---|
| **NUMBER:** AL2015-17 | |
| **SUBJECT:** JOINT POLICY AND PROCEDURE RE: Referral, Admission and Movement | **DATE ISSUED:** November 2015 |
| **REFERENCES/AUTHORITY:**<br>• By Order of the Director, Department of State Hospitals<br>• Mental Health Services Delivery System Program Guide – 2009 Revision<br>• Memorandum Of Understanding Between California Department Of Corrections and Rehabilitation And Department Of State Hospitals For Management And Oversight Of Intermediate Care And Acute Inpatient Programs | **SUPERSEDES:** |

**Policy**  The California Department of Corrections and Rehabilitation (CDCR) and Department of State Hospitals (DSH) shall identify, accept, and place patients into the least restrictive DSH inpatient program consistent with custodial and clinical factors. DSH and CDCR shall collaboratively manage all DSH inpatient program patient movement.

**Responsibility**  Responsibility for policy review and implementation:
DSH Director or designee.

Responsibility for compliance with the policy:
The Executive Directors or designees of the psychiatric programs and state hospitals treating CDCR patients.

Responsibility for compliance with policy by Patient Management Unit staff at DSH-Sacramento:
DSH Deputy Director of Hospital Strategic Planning, or designee.
CDCR Deputy Director Statewide Mental Health Program or designee.

**Purpose**  To provide a standardized process to ensure identified patients within CDCR are referred to, accepted, and transferred for mental health treatment within DSH psychiatric programs and hospitals.

**Definitions**  **Acute:** Inpatient programs within DSH psychiatric programs providing

- 1 -

Case 2:90-cv-00520-KJM-SCR   Document 5552-1   Filed 01/23/17   Page 2 of 12

intensive, short term acute mental health treatment for CDCR patients who have major mental disorder or, an exacerbation of a chronic major mental illness requiring treatment not available within the intermediate inpatient programs within DSH psychiatric programs and state hospitals. See also Mental Health Services Delivery System (MHSDS) Program Guide at 12-6-2.

**Acceptance:** DSH agrees to admit a patient for treatment at a DSH psychiatric program or hospital.

**Admission and Discharge Unit (ADU):** A multidisciplinary team at each DSH facility that is responsible for processing and coordinating referrals, admissions, bed management, discharges, and transfers in and out of the facility. The ADU is, at a minimum, comprised of a registered nurse or a psychiatrist, an analyst, and a manager or administrator, and may include and other staff, as necessary.

**CDCR DSH Coordinator:** The designated CDCR institution clinical staff member responsible for facilitating DSH referrals and all DSH related activities with prison staff, other CDCR institutions, CDCR Headquarters, and DSH facilities.

**CDCR DSH Referral Unit (DRU):** The CDCR Headquarters Mental Health unit responsible for review and oversight of all CDCR referrals to DSH.

**Custodial Factors:** Custodial factors include, but are not limited to, disciplinary/segregated housing history, sentence length, security and custody levels, history of violence and escape, staff and inmate separation alerts, and security threat group status.

**Clinical Factors:** Clinical factors include but are not limited to medical conditions and mental health levels of care, developmental and/or physical disabilities impacting placement.

**DSH Patient Management Unit (PMU):** The DSH Headquarters mental health unit responsible for management and oversight of all CDCR referrals to DSH.

**Endorsement:** Determination of the most appropriate DSH setting for a patient and official authorization for the placement by a Health Care Placement Oversight Program (HCPOP) Classification Staff Representative made upon review of an inmate's custodial and clinical factors. As it pertains to this policy, the endorsement will consider the clinical factors identified by DSH during level of care (LOC) decision review, and is made after verification of bed availability with the program.

AL2016-17 (Joint Policy re: Referral, Admission, Movement Policy)

**Health Care Placement Oversight Program (HCPOP):** The CDCR unit responsible for bed management of health care beds, including beds in DSH psychiatric programs. HCPOP is also responsible for CDCR patient movement.

**Intermediate:** Inpatient programs within DSH hospitals and psychiatric programs providing longer term intermediate and sub-acute mental health treatment for CDCR patients who have a serious mental disorder requiring treatment that is not available within CDCR. See also MHSDS Program Guide at 12-6-6.

**Least Restrictive Housing (LRH):** The least restrictive setting a patient can be housed within a DSH facility as determined by CDCR HCPOP.

**Penal Code section 2602 (PC 2602) Order:** A court order for involuntary medication of an inmate in the custody of, or housed in, a state prison issued pursuant to the statute. (See Joint DSH Referral and Penal Code Section 2602 Management Policy.)

**Primary Clinician (PC):** A psychologist, clinical social worker, or psychiatrist who performs the necessary case management functions for all patients in their caseloads. This includes assessment, treatment planning and treatment, clinical monitoring, and clinical case reviews.

**Referral:** The process by which CDCR requests admission of a patient to DSH by providing all information outlined in Section IV of the Memorandum of Understanding (MOU) between CDCR and DSH.

**Rejection:** When the referral of a patient for placement at a DSH psychiatric program or hospital is declined by DSH.

| PROCEDURE | CDCR Interdisciplinary Treatment Team (IDTT) |
|---|---|

The CDCR IDTT determines a patient meets the criteria for a referral to a DSH Intermediate or Acute program.

**Primary Clinician (PC)**
    A. The PC shall complete the approved DSH referral documentation and notify the CDCR DSH Coordinator on the same day as the IDTT for Acute and within three (3) business days from IDTT for Intermediate. The following documents are required to make a referral:
        1. The patient's consent to transfer to DSH, or documentation that transfer has been determined appropriate and necessary following a due process hearing, or confirmation that the transfer meets emergency certification criteria;
        2. Clinical reason/justification for referral;
        3. Most recent CDCR Suicide Risk Evaluation;
        4. Current treatment plan;
        5. Medical clearance for transportation;
        6. Documentation of medical needs, as applicable; (See also Joint Medical Needs Policy)
        7. Pharmacy Profile or Medication Administration Record (MAR);
        8. PC Section 2602 Court Order (when relevant) or supporting documentation;
        9. Tuberculosis (TB) status, which may include a health care evaluation and clearance if TB test results are unavailable; and
        10. Clozaril supporting documentation, if a Clozaril trial is requested.
    B. The PC shall discuss the reason for referral to inpatient care with the patient, and inform the patient of the benefits of inpatient treatment and inherent risks should the patient not be admitted for inpatient treatment.
    C. The PC shall address any distress expressed by the patient related to the referral, upcoming transfer, and suspension of Sensitive Needs Yard (SNY) status, as applicable, in a therapeutic manner.
    D. The PC shall ask the patient to sign a CDCR MH 7480A Mental Health Due Process Chrono.
    E. The PC shall inform the CDCR DSH Coordinator of the referral and provide the Coordinator with the CDCR MH 7480 Mental Health Due Process Chrono.

**CDCR Correctional Counselor**
The referring institution Correctional Counselor shall inform patients through IDTT that while in a DSH psychiatric program or state hospital

SNY or general population designations are temporarily put in abeyance. The Correctional Counselor shall document this advisement in Strategic Offender Management System (SOMS) case note.

### CDCR DSH Coordinator

A. The CDCR DSH Coordinator shall ensure all required clinical documentation received from the PC is transmitted to the DRU within two (2) business days from the date of IDTT for an acute referral and within five (5) business days from the date of IDTT for an Intermediate referral.

B. The CDCR DSH Coordinator shall schedule a due process hearing if the patient refuses to sign the consent form. A due process (Vitek) hearing shall be conducted and documentation shall be transmitted to the DRU within five (5) business days from the date of IDTT for Acute and within 10 business days from the date of IDTT for Intermediate.

### DRU

A. Within one (1) business day of receipt for all Acute referrals and within three (3) business days for all Intermediate referrals, the DRU shall review each referral for completeness and clinical need and notifies the CDCR DSH Coordinator and referring clinician whether the referral is complete or incomplete.

B. If the referral is incomplete or lacks justification, the referring DSH Coordinator and clinician shall provide all required information within four hours of notification by DRU for Acute referrals and within 24 hours for Intermediate referrals.

C. Upon completion of the referral and its review, and not to exceed one business day for Acute and three business days for Intermediate, the DRU shall notify the ADU, PMU, and HCPOP that all clinical documentation is complete and ready for review.

D. DSH plans to develop a centralized DSH Patient Management Unit (PMU) for the purposes of conducting clinical reviews and acceptance within the next six months. For the six month period following the signature of the 2015 CDCR DSH MOU the parties shall follow the procedures detailed in Attachment A. After the first six months, the parties shall follow the procedures outlined within this Joint Referral, Admission and Movement Policy and Procedure.

### DSH Clinical Review

### Criteria
Criteria for Acute Admission: A patient may be appropriate for admission

- 5 -

to Acute care when he has been identified by a qualified mental health clinician as experiencing acute exacerbation or active symptoms consistent with one or more of the mental disorders as defined in the current edition of the Diagnostic and Statistical Manual of Mental Disorders and, as a result, meets one or more of the following criteria:

    A. Patient has been unable to stabilize in the MHCB LOC within 10 calendar days and/or is unable to provide for his basic needs or use the supportive treatment resources available to him;

    B. Patient has been assessed as a severe suicide risk;

    C. The patient has a documented pattern of repeated admissions to the MHCB for suicidal ideation;

    D. The patient engages in recent and severe self-injurious behavior;

    E. Patient is a high risk of harming others, as evidenced by:

        1. Recent serious assaultive behavior;

        2. Expressed intention to harm others that is intensified by psychotic symptoms, with a plan and/or means to carry out;

    F. Patients admitted to Acute shall be anticipated to be stabilized sufficiently for discharge from the Acute LOC within 30 to 45 days.

Patients may also be admitted for Acute care when determined to be a danger to self in the absence of a diagnosed mental disorder.

<u>Criteria for Intermediate Admission to DSH</u>: A patient may be appropriate for admission to Intermediate care when identified by a qualified mental health clinician as experiencing active symptoms consistent with one or more of the mental disorders as defined in the current edition of the Diagnostic and Statistical Manual of Mental Disorders and, as a result, meets one or more of the following criteria:

    A. The patient requires highly structured inpatient psychiatric care with 24-hour nursing supervision due to a serious mental disorder, serious to major impairment of functioning in most life areas, stabilization or elimination of chronic ritualistic or repetitive self-injurious/suicidal behavior.

    B. The patient is unable to function in his or her current setting

and requires long term stabilization.

 C. Patient would benefit from a comprehensive treatment program with an emphasis on skill development (i.e. coping skills, daily living, and medication compliance);

 D. The patient has a documented pattern of escalation of threats or behavioral patterns suggestive of risk, that have not stabilized within an outpatient setting;

 E. The behavior is considerably influenced by psychotic symptoms; or serious impairment in communication or judgment; or inability to function in almost all areas.

 F. The patient has a documented pattern of repeated admissions to the MHCB for suicidal ideation or self-injurious behavior.

 G. The patient requires a neurological/neuropsychological consultation.

 H. The patient requires an inpatient diagnostic evaluation.

 I. The patient's psychiatric medication history indicates that a clozapine trial might be useful and the trial cannot be completed within CDCR.

**Admission Procedure**

Within one (1) business day of receipt of the CDCR DSH referral documentation from DRU for Acute and three (3) business days for Intermediate, DSH ADU/PMU shall review and provide the following to HCPOP via electronic means:

 A. Level of care decision.

 B. Any housing considerations based upon clinical evaluation. Housing considerations are made in accordance with criteria in Attachment B.

 C. DSH PMU and CDCR HCPOP will be responsible for the determination and coordination of the appropriate DSH inpatient program where the patient will be treated upon transfer from CDCR. If it is anticipated that the referral will be rejected by DSH staff, the procedure documented in the MOU, Section V, Acceptance or Rejection of Referrals, will be followed.

**HCPOP Custodial Review**

HCPOP shall complete custodial reviews of each DSH referral to determine the LRH based on CDCR custodial factors within one (1)

business day of receipt of the DSH LOC decision for Acute, and three (3) business days for Intermediate. In making Endorsement decisions, the clinical factors provided by DSH will be considered. DSH shall be provided an Endorsement location upon bed availability based on LRH and clinical factors received from DSH ADU/PMU.

### DSH Acceptance Transfer Chrono (ATC)
A. Within one business day of receipt of Endorsement location, DSH PMU shall submit the ATC to CDCR DRU.

B. If the ATC is not submitted or notification of disagreement is not received within one business day, HCPOP shall proceed with Endorsement. In the case of disagreement regarding the Endorsement location, DSH PMU will contact HCPOP immediately for dispute resolution. If resolution cannot be achieved with HCPOP and DSH PMU within one business day, the case shall be escalated to the Director of DSH and Deputy Director of CDCR Statewide Mental Health Program, or their designees, for resolution within one business day.

### Endorsement and Transfer
A. The C&PR of the referring institution, DRU, and HCPOP shall be immediately notified of the ATC via electronic means. HCPOP shall endorse via SOMS upon receipt of the ATC.

B. CDCR shall transport the patient within 72 hours of HCPOP Endorsement.

### Referral Tracking
All referrals to DSH are tracked by CDCR and DSH. Accepted referrals with no bed available are placed on an accepted referrals list, which is provided electronically by DSH to CDCR HCPOP via the standardized Bed Utilization Management Meeting report each business day.

### Patient Movement Within DSH

### CDCR Housing Reviews while in an Intermediate or Acute Program
After a patient is admitted to DSH, the initial classification committee, and every subsequent classification committee, shall determine if a LRH reduction is warranted.

A. The classification committee shall identify patients meeting the custodial criteria for a reduction in their LRH and shall communicate the reduction in LRH to the DSH PMU for initiation of the DSH clinical Housing Review process. See DSH Housing

Review Policy.

B. If a classification committee determines a patient is ineligible for retention in his or her LRH, the patient shall be referred to the DSH PMU for transfer coordination with HCPOP if the patient requires transfer to another DSH facility. If the patient does not require transfer to another DSH facility the patient shall be moved internally in accordance with local operating procedures governing bed movement.

C. HCPOP shall review and endorse each case requiring transfer in accordance with the program's custodial case factors as indicated within this document. See DSH Housing Review Policy.

**DSH Housing Reviews while in an Intermediate Program**
For patients in a higher custodial setting than their LRH allows, DSH IDTTs shall conduct Housing Reviews for consideration of transfer to the patient's designated LRH in accordance with DSH Housing Review Policy.

A. Patients meeting the clinical criteria for lower custody housing that require transfer to another DSH facility shall be referred to the DSH PMU for transfer coordination with HCPOP.

B. Patients eligible for lower custody housing within their current facility shall be moved internally in accordance with local operating procedures governing bed movement.

C. All housing reviews that result in patient transfer to a lower custody housing setting within the same facility shall be reported to HCPOP by the PMU.

**Mental Health LOC Changes while in an Intermediate or Acute Program**

A. In cases where a patient's mental health LOC changes from Intermediate to Acute or Acute to Intermediate, the facility's ADU shall notify the PMU. PMU shall coordinate with HCPOP for custodial review, Endorsement, and transfer as appropriate.

B. HCPOP will treat these LOC changes in the same manner as an initial referral to an Intermediate or Acute program.

| **Signature** | *[signed]* Pamela Ahlin | *[signed]* |
|---|---|---|
| | Pamela Ahlin, Director<br>Department of State Hospitals | Timothy Belavich, Ph.D., MSHCA, CCHP-MH,<br>Director (A)<br>Division of Health Care Services<br>and<br>Deputy Director<br>Statewide Mental Health Program<br>California Department of Corrections and Rehabilitation |

## ATTACHMENT A

The California Department of Corrections and Rehabilitation (CDCR) and the Department of State Hospitals (DSH) agree to augment the Joint Admissions, Referral, and Movement Policy and Procedure for the six month period following the signature of the 2015 CDCR DSH Memorandum of Understanding, as follows:

DSH plans to develop a centralized DSH Patient Management Unit (PMU) for the purposes of conducting clinical reviews and acceptance within the next six months. In the interim, CDCR Health Care Placement Oversight Program (HCPOP) shall provide the CDCR DSH Referral Unit (DRU) with custodial information to assist DSH in routing referral documentation for clinical review and acceptance. This information shall be provided by DRU to DSH PMU at the time the referral is transmitted. To accomplish this procedure, DRU will first notify HCPOP upon receipt of a referral so that HCPOP, via the DRU, can provide DSH information to assist in routing the referral. HCPOP will provide the DRU with this information within the DRU timelines prescribed by the policy.

Following the first six months of the MOU, the parties will follow the timelines and processes outlined within the Joint Referral, Admission and Movement Policy and Procedure.

## ATTACHMENT B

### DSH Clinical Placement Criteria

Upon review of each CDCR referral, DSH shall determine the most appropriate level of care for the patient and appropriate housing level based on the DSH clinical review of the referral, which may differ from the CDCR recommendation.

Level of care decisions shall be made based upon DSH clinical staff review.

Patients must be placed in the least restrictive housing possible given their custodial factors; however, patients may be considered for more restrictive housing when any of the following behaviors are exhibited:

1. Victimization concerns;
2. Command hallucinations/internal stimuli that severely impact functioning and result in behaviors that are violent and/or disruptive;
3. Presence of delusions that result in behaviors that are violent and/or disruptive;
4. Documented pattern of intimidation of lower-functioning patients; agitation, disruptive and difficult to re-direct; or
5. Documented violent incidents within one year of referral, while taking into account how recent, the type, and severity of the violent incident.