UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al., | No. 2:90-cv-0520 KJM DB P |
| Plaintiffs, | |
| v. | ORDER |
| EDMUND G. BROWN, JR., et al., | |
| Defendants. | |

As required by court order, *see* ECF No. 5188, on May 25, 2016, the Special Master filed a monitoring report on the inpatient mental health care programs for class members. ECF No. 5448. Neither party has filed objections to the findings in the report or the recommendations made by the Special Master.

Prior to and following the Special Master's submission of this report, the court has held three status conferences with the parties to address the ongoing problem of waitlists for access to inpatient mental health care. *See* ECF Nos. 5340, 5343, 5498, 5512, 5519, 5552. As a consequence, events have now overtaken some of the findings[1] and this, in turn, affects the first and third recommendations in the report. *See* ECF No. 5544 at 121. As the court informed the

---

[1] For example, the proposal to shift the responsibility for prison-based inpatient mental health care programs from the Department of State Hospitals (DSH) to the California Department of Corrections and Rehabilitation (CDCR), *see, e.g.*, ECF No. 5448 at 14-16, 37-41, has been included in the Governor's budget for 2017-18. *See* ECF No. 5544.

1

parties at the hearing on January 23, 2017, the problem with waitlists for access to inpatient care will be the subject of an order to show cause. Given the foregoing, the court will not adopt the first recommendation in the Special Master's report. The findings in the report will be adopted in full as will the second, third, and fourth recommendations.

In addition, the court will make an additional order to clarify the reporting obligations of the parties going forward. At the hearing on January 23, 2017, it became clear that defendants did not inform the Special Master when twenty inpatient beds were closed at the Salinas Valley Psychiatric Program (SVPP) in October 2016 due to flooding. ECF No. 5560 at 37-38. Nor did defendants inform the Special Master of their decision to begin treating acute inpatients at Atascadero State Hospital (ASH) in 2016. ECF No. 5560 at 66-67. In addition, the Special Master has informed the court that defendants did not notify him of the closure of thirty-eight additional beds at SVPP in January 2017 or the decision to use isolation rooms at DSH-Stockton (Stockton) until ten days before the January 23, 2017 hearing. Given the history of the remedial phase of this action, the court expects that defendants would have provided timely notice to the Special Master and the plaintiffs of the bed closures at SVPP, the decision to once again treat acute care patients at ASH, and the use of isolation rooms at Stockton. The court previously has issued at least one court order requiring advance notice and approval. *See* ECF No. 1800 at 6 ("Until further order of this court, defendants shall not close any intermediate inpatient bed or mental health crisis bed on the basis of state licensing requirements without approval of the special master."). Given the significance of the recent changes, the court will, by this order, direct defendants to meet and confer with the Special Master prior to implementation of any further changes, additions, or reductions in the number and/or use of any inpatient beds or mental health crisis beds.

In accordance with the above, IT IS HEREBY ORDERED that:

1. The findings in the Special Master's Monitoring Report on the Mental Health Inpatient Care programs for Inmates of the California Department of Corrections and Rehabilitation, ECF No. 5448, are adopted in full, as are his second, third, and fourth recommendations, ECF No. 5448 at 121-22.

2. The DSH defendants shall continue to work on their staffing plan for their inpatient programs that treat *Coleman* class members. The plan should be developed in coordination with CDCR's development of its own mental health staffing plan, and within the context of the same meet-and-confer process with the *Coleman* parties, under the guidance of the Special Master. Due to the urgency of the long-standing mental health staffing issues, the DSH defendants shall provide the Special Master with monthly updates on their implementation of their staffing plan so it may be tracked and monitored by the Special Master.

3. Under the guidance and supervision of the Special Master, and with input from the plaintiffs as appropriate, the DSH defendants shall develop a plan within 90 days for the creation of a continuous quality improvement (CQI) process to be utilized in the DSH inpatient programs that treat *Coleman* class members. The DSH defendants shall utilize CDCR as its consultant in this endeavor, availing themselves of the expertise and strategies developed by CDCR staff and the progress achieved thus far by CDCR in its development its own CQI process.

4. The DSH defendants shall develop within 90 days a plan for the creation of a consistent and uniform patient level system to be utilized across all of its inpatient programs that treat *Coleman* class members. There shall be a system for use across all acute care inpatient programs, and a system for use across all intermediate inpatient care programs.

5. Until further order of court, defendants shall meet and confer with the Special Master at least thirty days before making any changes, additions, or reductions in the number and/or use of any inpatient beds or mental health crisis beds. If an emergency situation precludes such meet and confer thirty days in advance, defendants shall consult with the Special Master immediately upon learning of the need to make any changes, additions or reductions in the number and/or

/////
/////

use of inpatient beds or mental health crisis beds.  As used in this order, consultation requires a conference in person or by telephone and not mere written notice or communication.

DATED: March 7, 2017.

_____
UNITED STATES DISTRICT JUDGE