XAVIER BECERRA
Attorney General of California
WILLIAM C. KWONG
Acting Senior Assistant Attorney General
DANIELLE F. O'BANNON
JAY C. RUSSELL
Supervising Deputy Attorneys General
ELISE OWENS THORN, State Bar No. 145931
CHRISTINE M. CICCOTTI, State Bar No. 238695
CHAD A. STEGEMAN, State Bar No. 225745
Deputy Attorneys General
  1300 I Street, Suite 125
  P.O. Box 944255
  Sacramento, CA 94244-2550
  Telephone:  (916) 324-4921
  Fax:  (916) 324-5205
  E-mail:  Chad.Stegeman@doj.ca.gov
*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **RALPH COLEMAN, et al.,** | 2:90-cv-00520 KJM-DB (PC) |
| Plaintiffs, | |
| v. | **DEFENDANTS' EVIDENTIARY OBJECTIONS AND NOTICE OF MOTION AND MOTION TO STRIKE THOMAS NOLAN'S DECLARATION SUPPORT OF PLAINTIFFS' OBJECTIONS AND REQUEST FOR ADDITIONAL RELIEF RE: THE SPECIAL MASTER'S REPORT ON THE STATUS OF MENTAL HEALTH STAFFING AND THE IMPLEMENTATION OF DEFENDANTS' STAFFING PLAN; MEMORANDUM OF POINTS AND AUTHORITIES** |
| **EDMUND G. BROWN JR., et al.,** | |
| Defendants. | |

# TABLE OF CONTENTS

**Page**

Notice of Motion and Motion to Strike ................................................................. 1

Memorandum of Points and Authorities ............................................................... 1

Legal Argument and Objections ........................................................................... 2

I.      Portions of the Nolan Declaration and Exhibits D and F in Their Entirety
        Are Inadmissible as Evidence, They Are Impertinent and Unprofessional,
        and Should Be Stricken. ....................................................................... 2

        A.      Failure to Establish Personal Knowledge or Foundation. ........................... 3

        B.      Statements and Evidence Are Hearsay and Hearsay within Hearsay. ........ 4

        C.      Incorrect, Misleading, Deceptive, and Confusing Evidence Should
                Be Stricken. ............................................................................. 5

        D.      Mr. Nolan Has Not Been Qualified as an Expert. ....................................... 6

        E.      Argument and Factual Statements Unsupported by Record Citations
                Are Inappropriate in an Attorney Declaration. ........................................... 7

II.     Specific Objections to Evidence ................................................................ 8

        A.      Nolan Decl. Exhibit D, ECF No. 5590-1 at 19-20. ..................................... 8

        B.      Nolan Decl. Exhibit F, ECF No.5590-1 at 24-62. ...................................... 9

        C.      Nolan Decl. ¶ 14, ECF No. 5590-1 at 7:13-24. ....................................... 11

        D.      Nolan Decl. ¶ 18, ECF No. 5590-1 at 8:15-25. ....................................... 13

        E.      Nolan Decl. ¶ 20, ECF No. 5590-1 at 9:11-22. ....................................... 14

        F.      Nolan Decl. ¶ 21, ECF No. 5590-1 at 9:23-27. ....................................... 15

        G.      Nolan Decl. ¶ 22, ECF No. 5590-1 at 10:1-8. ........................................ 16

        H.      Nolan Decl. ¶ 23, ECF No. 5590-1 at 10:24-11:4. .................................. 17

        I.      Nolan Decl. ¶ 24, ECF No. 5590-1 at 11:5-16. ...................................... 19

        J.      Nolan Decl. ¶ 25, ECF No. 5590-1 at 11:17-12:3. ................................. 20

Conclusion ........................................................................................................ 22

i

1

## TABLE OF AUTHORITIES

2

**Page**

3

**CASES**

4
5

*Degelman Indus., Ltd. v. Pro-Tech Welding & Fabrication, Inc.*
    No. 06-CV-6346, 2011 WL 6754053 (W.D.N.Y. May 31, 2011) ................................7, 18, 21

6

*E. F. Hutton & Co. v. Brown*
    305 F. Supp. 371 (S.D. Tex. 1969) .............................................................................7, 18, 21

7
8

*Friedel v. City of Madison*
    832 F.2d 965 (2d Cir. 1987).................................................................................................4

9
10

*Gell v. Town of Aulander*
    252 F.R.D. 297 (E.D.N.C. 2008) ........................................................................................4

11

*Hangarter v. Provident Life & Accident Ins. Co.*
    373 F.3d 998 (9th Cir. 2004)...............................................................................................6

12
13

*Hollander v. Am. Cyanamid Co.*
    172 F.3d 192 (2d Cir. 1999)........................................................................................7, 18, 21

14
15

*Hunt v. City of Portland*
    No. 11-35600, 2012 U.S. App. LEXIS 22506 (9th Cir. 2012) ...................................9

16

*Internet Law Library, Inc. v. Southridge Capital Mgmt., L.L.C.*
    No. 01 Civ. 6600, 2005 WL 3370542 (S.D.N.Y. Dec. 12, 2005)...............................7

17
18

*Pack v. Damon Corp.*
    434 F.3d 810 (6th Cir. 2006)................................................................................................9

19
20

*Tucker v. American Int'l Group, Inc.*
    936 F.Supp.2d 1 (D.Conn. 2013) .........................................................................................19

21

*Universal Film Exchs., Inc. v. Walter Reade, Inc.*
    37 F.R.D. 4 (S.D.N.Y. 1965) .......................................................................................18, 21

22

**STATUTES**

23

Penal Code
    §2602....................................................................................................................................11

24
25
26

**COURT RULES**

27

Federal Rules of Civil Procedure
    Rule 12(f) ................................................................................................... *passim*

28

ii

1

# TABLE OF AUTHORITIES
**(continued)**

2

**Page**

3    Federal Rules of Evidence

Rule 401 ................................................................................................16
4
Rule 403 ........................................................................................ *passim*
5
Rule 408 ................................................................................................19

Rule 502(a) ................................................................................... *passim*
6
Rule 602 ........................................................................................ *passim*

Rule 701 ..............................................................................6, 12, 13, 16
7
Rule 702 ..............................................................................6, 12, 13, 16
8
Rule 801 ........................................................................................ *passim*

Rule 802 ..................................................................................................4
9
Rule 805 ..................................................................................................5

Rule 901 .........................................................................................10, 12
10
Rule 1002 .............................................................................................12

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defs.' Evid. Objs. Notice of Mot. & Mot. to Strike Evid. (2:90-cv-00520 KJM-DB (PC))

1        **NOTICE OF MOTION AND MOTION TO STRIKE**

2        TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

3        NOTICE IS HEREBY GIVEN that Defendants object to and move the Court for an order

4    under Federal Rule of Civil Procedure 12(f) striking paragraphs 14, 18, and 20-25, in whole or in

5    part as indicated, of the Declaration of Thomas Nolan in Support of Plaintiff's Objections to the

6    Special Master's Report on the Status of Mental Health Staffing and the Implementation of

7    Defendants' Staffing Plan (ECF No. 5590-1) (Nolan Decl.), and Exhibits D and F, as well as all

8    references to this purported evidence in Plaintiffs' Objections and Request for Additional Relief

9    Re: the Special Master's Report on the Status of Mental Health Staffing and the Implementation

10   of Defendants' Staffing Plan (ECF No. 5590) (Plaintiffs' Objections).  These statements and

11   exhibits should be stricken from the record and Plaintiffs should not be allowed to rely on them

12   because they contain improper expert opinions, lack proper foundation, are unauthenticated,

13   constitute inadmissible hearsay, fail to meet fundamental evidentiary standards for admissibility,

14   are incomplete, impertinent, and are used in a false and misleading way.

15       The evidentiary objections and this motion are based on this Notice of Motion and Motion,

16   the Memorandum of Points and Authorities, the pleading and papers on file, and such other

17   matters as may be presented to the Court.

18             **MEMORANDUM OF POINTS AND AUTHORITIES**

19                       **INTRODUCTION**

20       Thomas Nolan, counsel for Plaintiffs, is an attorney, not a subject-matter expert qualified to

21   give opinions and testify in support of Plaintiffs' Objections.  His declaration is rife with

22   inappropriate testimony, unfounded conclusions, misleading information, and hearsay falling

23   under no exception to the hearsay rule.  His declaration also contains baseless speculation, and

24   relies on conversations, notes, and memoranda of his own co-counsel, which, at minimum, means

25   that he has waived work-product and other privileges associated with the subject matter of his

26   testimony.  It is improper for Plaintiffs to submit what is essentially an expert opinion through

27   their counsel to the Court as testimony that is not subject to cross-examination.  Moreover,

28   statements that reveal sensitive information that was provided in confidential discussions, which

                                    1

1  are now part of a public filing, and which are interpreted through a skewed lens, are

2  unprofessional and should be stricken on that basis alone.

3    Furthermore, support solicited by Plaintiffs from the Union of American Physicians and

4  Dentists (Union) and memorialized in Exhibit F raises concerns about the collective bargaining

5  process, where the same union bargaining for the psychiatrists now complains about the

6  agreement it just brokered.  It is also inadmissible in these proceedings because Exhibit F

7  constitutes an unsworn statement, from a third party opining about this litigation and

8  summarizing select unauthenticated and anonymous information.  It is also hearsay and

9  fundamentally unreliable.  Moreover, the author is not subject to cross-examination, and the

10  statements in the attachments to the letter are also hearsay.  None of the responses to the

11  anonymous survey have been authenticated, and they lack foundation.  Exhibit F should be

12  stricken, along with all references in Plaintiffs' Objections that rely on this exhibit.

13    Finally, Mr. Nolan declares that Exhibit D is a data-recreation prepared by his paralegal.

14  But the table is unreliable because it omits critical data, and whether the omissions were

15  purposeful or not, the table is incorrect, misleading, and therefore confusing and should be

16  stricken.

17  **LEGAL ARGUMENT AND OBJECTIONS**

18  I.  **PORTIONS OF THE NOLAN DECLARATION AND EXHIBITS D AND F IN THEIR ENTIRETY
     ARE INADMISSIBLE AS EVIDENCE, THEY ARE IMPERTINENT AND UNPROFESSIONAL,**
19   **AND SHOULD BE STRICKEN.**

20    Five common objections outline the themes of Plaintiffs' careless approach to the evidence

21  and statements that Defendants challenge.  Specifically, the Court should strike the noted portions

22  of Thomas Nolan's Declaration and Exhibits D and F insofar as they are riddled with (1) claims

23  unsupported by personal knowledge and that make speculative assertions, (2) inadmissible

24  hearsay, (3) deception and gross mischaracterizations, (4) expert testimony where the declarant's

25  only proffered qualification is that he has represented *Coleman* class members for many years,

26  and (5) impertinent and inappropriate attorney factual statements and conclusions without record

27  support.

28

2

### A.    Failure to Establish Personal Knowledge or Foundation.

In many instances Mr. Nolan relies on conversations, notes, and memoranda made by his own co-counsel in making assertions in his declaration, which he cites to as fact in Plaintiffs' Objections.  For instance, in paragraph 21 he states that "I have discussed the 15% pay raise in the UAPD contract for Physicians and Surgeons working at hard-to-hire locations in the CDCR with my co-counsel in *Coleman* at the Prison Law Office.  Based on these conversations, I am informed and believe . . . ."  But he cannot base his percipient testimony or lay opinions on his undisclosed and presumably undocumented conversations with unnamed co-counsel.  He lacks personal knowledge to make any statement following the ellipses above.

He also relies on his years as counsel in this case as a foundation for certain statements, without providing specific personal knowledge.  For example, he states in paragraph 22 that "Based on my conversations with CDCR psychiatrists and other employees over the years working on this case and conversations with Defendants in meetings with the Special Master on staffing issues, I am informed and believe that the Hiring Above Minimum process can be a difficult one."  But regardless his experience as an attorney on the case for many years, he is making assertions without specifying personal knowledge that forms the basis for his assertions.  And statements based on his beliefs as an attorney should be stricken as inappropriate for an attorney declaration.

Federal Rule of Evidence 602 permits a lay witness to testify "*only* if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." (Emphasis added).  Mr. Nolan's declaration demonstrates no regard for this Rule, as he asserts sweeping conclusions, without providing a proper foundation, about the effect that staffing vacancies have on patient care, the State's process and procedures for paying new employees higher salaries than the minimum, and the impact staffing vacancies have on CDCR's suicide prevention efforts.  (*See* Nolan Decl. ¶¶ 14, 18, and 22, ECF No. 5590-1.)

Moreover, Mr. Nolan's declaration does not lay any foundation for the admission of Exhibit F, the Union of American Physicians and Dentists' letter, or any of the items attached to the letter.  For instance, Mr. Nolan attaches no declaration from the author of the letter, the letter is unsworn,

3

1    and Defendants have not had the opportunity to cross-examine the author.  He also fails to

2    authenticate the letter's attachments in any way other than to say the letter is a true and correct

3    copy of what he received.  Rule 901(a) provides that to satisfy the requirement of authenticating

4    an item of evidence, "the proponent must produce evidence sufficient to support a finding that the

5    item is what the proponent claims it is."  Mr. Nolan does not and cannot authenticate the

6    purported survey responses attached to the letter and included in Exhibit F.  They are apparently

7    select records of "answers from CDCR Psychiatrists that [the Union] deemed relevant to

8    Plaintiff's [sic] case."  (*See* 5590-1 at 25.)

9            **B.    Statements and Evidence Are Hearsay and Hearsay within Hearsay.**

10           The undisclosed conversations, notes, memoranda, and letters from Mr. Nolan's own co-

11   counsel and clients in paragraphs 16, 20, 21, and 25 that he relies on in making his statements are

12   hearsay.  He offers these statements made by third parties for the truth of the matter asserted, and

13   no exceptions apply.  *See* Fed. R. Evid. 801, 802.  And Defendants have no way independently to

14   verify the content and reliability of Mr. Nolan's statements short of deposing his co-counsel and

15   clients about these conversations, or obtaining the notes, memoranda, and letters that he

16   purportedly relies on in making assertions in his declaration.  Presumably, as counsel for

17   Plaintiffs, he would assert privileges to protect the content of these communications from

18   disclosure, but without having to go to these lengths, the Court should strike the evidence on the

19   basis that it is hearsay.  Notably, in relying on these statements and documents, thereby putting

20   them squarely at issue, Mr. Nolan has waived attorney-client, work-product, and other privileges

21   associated with the subject matter of his declaration.  *See* Fed. R. Evid. 502(a).

22           Furthermore, Exhibit F is a letter that the psychiatrists' union prepared for Plaintiffs in

23   support of Plaintiffs' Objections.  But this is the very same union that just brokered the deal that

24   Plaintiffs are complaining about.  This conflict aside, the letter is an unsworn statement that is full

25   of hearsay, and hearsay within hearsay, and is otherwise unreliable and is inadmissible.  *See, e.g.,*

26   *Friedel v. City of Madison*, 832 F.2d 965, 969-70 (2d Cir. 1987) (interviews not taken under oath

27   and attached to attorney's affidavit inadmissible); *Gell v. Town of Aulander*, 252 F.R.D. 297, 300-

28   01 (E.D.N.C. 2008) (striking hearsay statements in unsigned affidavits attached to an attorney

4

1    declaration).  Hearsay within hearsay is only admissible if each part of the combined statements

2    conforms with an exception to the rule.  *See* Fed. R. Evid. 805.  Paraphrased statements of

3    purportedly unhappy psychiatrists as well as direct quotations from hand-picked anonymous

4    survey responses pervade the letter.  The letter constitutes hearsay, and the majority of the content

5    in the letter contains hearsay within hearsay.

6    **C.    Incorrect, Misleading, Deceptive, and Confusing Evidence Should Be**
7    **Stricken.**

8         Federal Rule of Evidence 403 allows a court to exclude evidence where its probative value

9    is substantially outweighed by a danger of confusing issues and misleading the trier of fact.  And

10   Federal Rule of Civil Procedure 12(f) allows the court to "strike from a pleading [any] immaterial,

11   impertinent, or scandalous matter."  Misleading, deceptive, and false statements fall within Rule

12   12(f)'s ambit because they are both immaterial and impertinent.  Defendants object to and seek to

13   strike several statements and Exhibit D on these bases.  For example, Exhibit D is a recreation of

14   data into a chart by Mr. Nolan's paralegal.  But it conspicuously confuses critical information – it

15   omits registry psychiatrists and telepsychiatrists to emphasize understaffing at particular prisons.

16   Other figures in the Exhibit make it appear that the total fill rate at an institution were lower than

17   just the number of on-site psychiatrists.  Mistake or not, Exhibit D is incorrect, unreliable, and

18   should be stricken.

19        Exhibit F is also improper under Rule 12(f) and the Federal Rules of Evidence.  This letter

20   is from the same union that recently concluded negotiations with the State on behalf of CDCR

21   psychiatrists.  At minimum, the letter should not be regarded as evidence.  For example, the letter

22   summarizes and actively advocates for Plaintiffs' positions, then selectively incorporates sound

23   bites from biased polling.  (*See* 5590-1 at 25-29.)  It also selectively attaches "answers from

24   CDCR Psychiatrists that [the Union] deemed relevant to Plaintiff's [sic] case."  (*See* 5590-1 at 25.)

25   In preparation for their letter supporting Plaintiffs' Objections, in March 2017 the Union asked

26   CDCR psychiatrists "what information they would like to convey to the Plaintiff's [sic] attorneys

27   in the *Coleman* case." (*Id.*)  The Union even makes the unusual offer that the "attorneys are free

28   to contact those doctors to ask for their participation in the case."  (*Id.*)

5

Defs.' Evid. Objs. Notice of Mot. & Mot. to Strike Evid. (2:90-cv-00520 KJM-DB (PC))

1    Moreover, any statements or conclusions regarding alleged harms caused by psychiatry

2    vacancies based on the survey are suspect.  For example, the survey asked participants to respond

3    to a question that dictates the answer.  As an example:  "Psychiatrist understaffing at your facility

4    has a negative impact on which of the following things?  Choose all that apply.  • Patient Care

5    •Employee Safety •Public Safety."  (ECF No. 5590-1 at 38.)  Any response assumes that

6    "understaffing at your facility has a negative impact."  Finally, missing pages in the attachments

7    means the data purportedly relied on in the cover letter are incomplete or the Union is cherry-

8    picking results and information to suit its purposes.  (*See* ECF No. 5590-1 at 30-37 (omitting

9    pages 2, 3, 6, 7, 9, and 11-16 of the 19 pages referenced at the bottom of each page).)  The letter

10   and its attachments should be stricken because they are not admissible, and impertinent under

11   Rule 12(f).

12        **D.    Mr. Nolan Has Not Been Qualified as an Expert.**

13        Mr. Nolan offers improper opinion testimony despite not being qualified an as expert in any

14   manner. Fed. R. Evid. 701.  These statements contravene the requirements of Fed. R. Evid. 701,

15   which provides that non-expert "testimony in the form of an opinion is limited to one that is: (a)

16   rationally based on the witness's perception, (b) helpful to … determining a fact in issue, and (c)

17   not based on scientific, technical, or other specialized knowledge."  Mr. Nolan offers opinions

18   about complex issues relating, for example, to the relationship between staffing vacancies and

19   harm to *Coleman* class members.  Such statements are also in direct violation of Fed. R. Evid.

20   702, which sets forth the specific requirements about who may provide expert testimony.

21   Paragraphs 14, 18, and 22 of Mr. Nolan's declaration involve conclusions and assessments that

22   are properly the province of expert witnesses, not a lay declarant such as Mr. Nolan.

23        Similarly, Defendants object to Mr. Nolan's repeated assertions of broad legal conclusions,

24   which are appropriately reserved for the Court, not Plaintiffs' counsel.  These statements,

25   including, for example, the conclusion that "Psychiatric staffing shortages can have a profound

26   negative effect on patient care," constitute improper opinions on conclusions of law rather than

27   facts and evidence to be considered in the Court's determination of constitutionality.  *See*

28   *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016-17 (9th Cir. 2004) ("No

6

1  witness – expert or non-expert – should opine on the ultimate legal conclusion, which is province

2  of the court.").

3
4

**E.    Argument and Factual Statements Unsupported by Record Citations Are Inappropriate in an Attorney Declaration.**

5    Mr. Nolan's declaration is used as a vehicle to present facts and argument that should

6  instead be found in reliable record evidence attached to his declaration.  Defendants object to the

7  most egregious instances in paragraphs 18, 20, 23, 24, and 25, where Mr. Nolan claims to recount

8  subject matter and information provided at work groups, presentations, and conversations.

9    An attorney declaration should not include legal arguments, summations and conclusions

10  unsupported by citations in the record or supported by hearsay.  *See, e.g., Degelman Indus., Ltd. v.*

11  *Pro-Tech Welding & Fabrication, Inc.*, No. 06-CV-6346, 2011 WL 6754053, at *2 (W.D.N.Y.

12  May 31, 2011), report and recommendation adopted, No. 06-CV-6346T, 2011 WL 6752565

13  (W.D.N.Y. Dec. 23, 2011) (An attorney declaration or affidavit is generally used to provide the

14  courts with documents and other evidence, for purposes of establishing a record, and should not

15  be used as a "vehicle to lobby the court."); *Internet Law Library, Inc. v. Southridge Capital*

16  *Mgmt., L.L.C.*, No. 01 Civ. 6600 (RLC), 2005 WL 3370542 *3 (S.D.N.Y. Dec. 12, 2005)

17  (granting motion to strike attorney affidavit because "[a]n attorney's affidavit is typically used to

18  present documents to the court and should not be used as counsel's personal vehicle to lobby the

19  court" (citing *Universal Film Exchs., Inc. v. Walter Reade, Inc.*, 37 F.R.D. 4, 5 (S.D.N.Y. 1965)));

20  *E. F. Hutton & Co. v. Brown*, 305 F. Supp. 371, 383 (S.D. Tex. 1969) ("Affidavits are vehicles

21  for the presentation of facts to the Court, not legal arguments.").

22    A declaration that includes unsupported facts, legal arguments, or evidence that is not

23  otherwise admissible, may be stricken at the court's discretion.  *Hollander v. Am. Cyanamid Co.*,

24  172 F.3d 192, 198 (2d Cir. 1999) (upholding decision to strike affidavit which "more resembled

25  an adversarial memorandum than a bona fide affidavit.").  The information in paragraphs 18, 20,

26  23, 24, and 25 cannot be separately considered by this Court through review of other record

27  evidence,  Mr. Nolan's Declaration should be stricken, and he should be admonished to avoid

28  using his declaration in this manner again in the future.

7

## II. SPECIFIC OBJECTIONS TO EVIDENCE.

Defendants respectfully request that the specific evidentiary objections below be sustained and that the evidence attached to and found within the Nolan Declaration be stricken. Each reference in Plaintiffs' Objections to this inadmissible and stricken evidence should also be stricken. They are identified below along with each exhibit or statement Defendants challenge.

### A. Nolan Decl. Exhibit D, ECF No. 5590-1 at 19-20.

Exhibit D, a data-recreation from Mr. Nolan's paralegal, and all references to Exhibit D, including all statements relying on Exhibit D in Plaintiffs' Objections, should be stricken. Specifically, the references in Plaintiffs' Objections that should be stricken include: ECF No. 5590 at 5:3-12, 10:6-8, 10:23-27, 14:11-14, 19:8-12, 19:18- 21:10, 22:20-22.

**Objection 1**

Incorrect, misleading, deceptive, and therefore confusing (Fed. R. Evid. 403): The data compiled by Mr. Nolan's paralegal inaccurately presents CDCR's data. Plaintiffs purportedly used data from CDCR's monthly *Coleman* report as the source documents for Exhibit D attached to the Nolan Declaration, which is then referenced extensively in Plaintiffs' Objections. However, Plaintiffs' excerpts from these reports omit critical pieces of data to reach their desired conclusions by separating out one type of psychiatrist from others. Exhibit D's second column, titled "Psychiatrists Staffing Rate (Line)" has no probative value and only serves to mislead the Court because it only includes on-site, civil service psychiatrists in its calculations. True staffing levels should be based on all psychiatrists, including on-site civil service, on-site registry (contract), and telepsychiatrists serving an institution. This data is ostensibly provided in the third column, titled "Psychiatrist Staffing Rate (All)," however, even this column is suspect. For instance, the "All" staffing rate at CCWF is paradoxically lower than the "Line" staffing rate at the same institution, which should not be possible. Furthermore, Plaintiffs fail to provide documentation to verify the chart as Exhibit P, their purported source document, omits at least eight of the twenty-three pages, including all those for CCWF staffing data.

Plaintiffs' assertion that this table compares staffing rates amongst psychiatrist to staffing rates amongst physicians and surgeons is based on incomplete, misleading, inaccurate, and

8

1  unverifiable data.  Whether purposeful or not, the manipulation of the data is deceptive,

2  Defendants object on this basis and the table should be stricken along with any references to it in

3  Plaintiffs' Objections.

4      Because there is no or little probative value to this incomplete and incorrect table, any value

5  is substantially outweighed by the potential confusion cause by the misleading nature of the table

6  and it should be disregarded and stricken.

7      **B.    Nolan Decl. Exhibit F, ECF No. 5590-1 at 24-62.**

8      Exhibit F, a March 20, 2017 Letter from the Union of American Physicians and Dentists,

9  and all references to Exhibit F, including all statements relying on Exhibit F in Plaintiffs'

10  Objections, should be stricken.  Specifically, the references in Plaintiffs' Objections that should

11  be stricken include:  ECF No. 5590 at 5:13-17, 9:20-24, 11:15-12:4, 15:7-11, 17:1-7, 17:20-28,

12  18:1-8, 19:16, 22:10-20, 22:22-26, and 25:2-24.

13      **Objection 1**

14      Inadmissible Hearsay (Fed. R. Evid. 801(c), 802):  Exhibit F constitutes an unsworn

15  statement, from a third party opining about this litigation, and it summarizes unauthenticated and

16  anonymous information.  It is hearsay and fundamentally unreliable.  Similar to an expert report,

17  which analyzes data and provides opinions, Exhibit F is a report regarding the results of an

18  anonymous survey where 64 clinicians responded, but unsworn reports are hearsay.  *See Hunt v.*

19  *City of Portland*, No. 11-35600, 2012 U.S. App. LEXIS 22506, 2012 WL 5351227 at *2 (9th Cir.

20  2012) ("With respect to the expert's written report, we conclude that the report is hearsay to

21  which no hearsay exception applies."); *see also Pack v. Damon Corp.*, 434 F.3d 810, 815 (6th Cir.

22  2006) ("the [expert] Report is unsworn and thus is hearsay.").

23      **Objection 2**

24      Lack of Foundation (Fed. R. Evid. 602):  Mr. Nolan's declaration does not lay any

25  foundation for the admission of the Union of American Physicians and Dentists' letter, or any of

26  the items attached to the letter.  For instance, Mr. Nolan attaches no declaration from the author

27  of the letter, the letter is unsworn, and Defendants have not had the opportunity to cross-examine

28  the author.

9

1      **Objection 3**

2           Authentication (Fed. R. Evid. 901):  Rule 901(a) provides that to satisfy the requirement of

3      authenticating an item of evidence, "the proponent must produce evidence sufficient to support a

4      finding that the item is what the proponent claims it is."  Mr. Nolan does not and cannot

5      authenticate the purported survey responses attached to the letter and included in Exhibit F.

6      **Objection 4**

7           Misleading, deceptive, and therefore confusing (Fed. R. Evid. 403):  The letter summarizes

8      and actively advocates for Plaintiffs' positions, then selectively incorporates sound bites from

9      biased polling.  (*See* 5590-1 at 25-29.)  It also selectively attaches "answers from CDCR

10     Psychiatrists that [the Union] deemed relevant to Plaintiff's [sic] case."  (*See* 5590-1 at 25.)  In

11     preparation for their letter supporting Plaintiffs' Objections, in March 2017 the Union asked

12     CDCR psychiatrists "what information they would like to convey to the Plaintiff's [sic] attorneys

13     in the *Coleman* case." (*Id*.)  The Union even makes the unusual offer that the "attorneys are free

14     to contact those doctors to ask for their participation in the case."  (*Id*.)  He makes this offer

15     without the consent of the survey participants and with CDCR's knowledge and consent.

16          Any statements or conclusions regarding alleged harms caused by psychiatry vacancies

17     based on the survey are suspect.  For example, the survey asked participants to respond to a

18     question that dictates the answer.  As an example:  "Psychiatrist understaffing at your facility has

19     a negative impact on which of the following things?  Choose all that apply.  • Patient Care

20     •Employee Safety •Public Safety."  (ECF No. 5590-1 at 38.)  Any response assumes that

21     "understaffing at your facility has a negative impact."  Finally, missing pages in the attachments

22     means the data purportedly relied on in the cover letter are incomplete or the Union is cherry-

23     picking results and information.  (*See* ECF No. 5590-1 at 30-37 (omitting pages 2, 3, 6, 7, 9, and

24     11-16 of the 19 pages referenced at the bottom of each page).)

25          Because the probative value of this letter is substantially outweighed by the potential

26     confusion cause by the biased, selective, incomplete, unreliable, and misleading nature of the

27     letter, it should be disregarded and stricken.

28

**Objection 5**

The letter and its attachments should be stricken both because they are not admissible based on the above evidentiary objections and because Exhibit F is impertinent under Rule 12(f). The Union is attempting improperly to leverage this litigation to achieve an end-run around the negotiations it just concluded on behalf of the psychiatrists. The introductory paragraph of the letter itself demonstrates the Union's support of a salary increase through litigation, despite the deal they just made. (*See* 5590-1 at 25.) As noted above, the Union president even invites Plaintiffs' counsel to contact psychiatrists directly. (*Id.*) It also purports to disclose information concerning confidential negotiations between the Union and CalHR, who is not a party to this litigation. (*Id.* at 28.) These disclosures in an unsworn statement to Plaintiffs' counsel are inappropriate, as is Plaintiffs' citation to this information as evidence. The entire letter and its cherry-picked attachments should be stricken, even if the Court overrules Defendants' evidentiary objections.

**C.    Nolan Decl. ¶ 14, ECF No. 5590-1 at 7:13-24.**

"Psychiatrist staffing shortages can have a profound negative effect on patient care. For example, Plaintiffs have received at least nine letters and calls since December 28, 2016 from class members at Lancaster State Prison ("LAC") complaining about problems that are linked to the severe shortage of psychiatrists there. LAC currently has a psychiatrist staffing rate of 54% including tele-psychiatrists. The class members who have written to us report various problems, including waiting weeks to see psychiatrists to restart psychiatric medications and long delays in obtaining appointments to see psychiatrists. One class member reported that despite an involuntary medication order under Penal Code 2602 for the period of October 2016 to October 2017, he was taken off his medications when he transferred from Corcoran to CSP-Lancaster in late December 2016 and did not begin receiving them again until more than three weeks later on January 20, 2017."

Specifically, the reference in Plaintiffs' Objections that should be stricken is at ECF No. 5590 at 11:12-14.

**Objection 1**

Improper "Expert" Testimony of Non-Expert (Fed. R. Evid. 701, 702): Mr. Nolan has provided no evidence of his qualifications, knowledge, or expertise that would support the conclusion that staffing shortages have a "profound negative effect on patient care." Nor can he opine that anonymous letters and phone calls from prisoners complain about problems that are linked to staffing shortages.

**Objection 2**

Lack of Personal Knowledge/Foundation (Fed. R. Evid. 602): Mr. Nolan presents no foundation for his assertion that alleged problems complained about by class members are linked to a shortage of psychiatrists. He also fails to identify the persons who wrote letters or made calls, fails to provide the letters, and has offered nothing that supports the assertions made by the anonymous nine inmates.

**Objection 3**

Inadmissible Hearsay (Fed. R. Evid. 801(c), 802): To the extent that Mr. Nolan's statements purport to present to the Court any statement made either orally or in writing by nine inmates, it is inadmissible hearsay as to the truth of those statements.

**Objection 4**

Best Evidence Rule (Fed. R. Evid. 1002): Mr. Nolan does not provide the letters in support of his statements about the content of the letters, nor can he support his conclusions that alleged problems complained about are linked to staffing shortages. Accordingly, Defendants cannot assess the accuracy of Mr. Nolan's statements. Furthermore, Defendants do not know what else was contained in the content of the letters. To the extent Mr. Nolan may assert that privileges prevented disclosure of the letters and other information, his extensive reliance on the letters, phone calls, and other information effects a subject-matter waiver of any privileges. *See* Fed. R. Evid. 502(a).

**Objection 5**

Authentication (Fed. R. Evid. 901): Rule 901(a) provides that to satisfy the requirement of authenticating an item of evidence, "the proponent must produce evidence sufficient to support a

12

finding that the item is what the proponent claims it is."  Since Mr. Nolan fails to attach

referenced items such as letters from inmates, he cannot satisfy authentication requirements.

### D.    Nolan Decl. ¶ 18, ECF No. 5590-1 at 8:15-25.

"Based on the conversation during the [March 27, 2017] phone call, Plaintiffs'

understanding is that hiring someone above the minimum in the salary range is possible, but not

automatic and not easy.  Defendants indicated that special approval from Cal HR needed to be

obtained and was by no means automatically granted.  I have served as counsel for the *Coleman*

Plaintiffs since approximately 1997.  Based on my conversations with CDCR psychiatrists and

other employees over the years working on this case and conversations with Defendants in

meetings with the Special Master on staffing issues, I am informed and believe that the Hiring

Above Minimum process can be a difficult one and that experienced psychiatrists coming to work

for the CDCR from the private sector are not always able to obtain an initial salary that is higher

than the posted minimums."

There are no references in Plaintiffs' Objections to this paragraph.

**Objection 1**

Speculation/Lack of Personal Knowledge/Foundation (Fed. R. Evid. 602): Mr. Nolan

makes broad assertions about his understanding regarding the difficulty of hiring above minimum

salaries and what psychiatrists experience without personal knowledge, identifying the basis for

his belief, and simply opines that the process can be a "difficult one."  He articulates no

foundation for his assertions and opinions other than vague references "over the years" to

conversations that he may have had in 1997, under different administrations, and different

circumstances.  He also provides no data to justify his statement that "psychiatrists coming to

work for the CDCR from the private sector are not always able to obtain an initial salary that is

higher than the posted minimums."  His assumptions and conclusions are speculation.

**Objection 2**

Improper "Expert" Testimony of Non-Expert (Fed. R. Evid. 701, 702): Mr. Nolan has

provided no evidence of his qualifications, knowledge, or expertise that would support his expert

human-resources opinions regarding the process of "hiring above minimum" salaries.  Nor does

13

1    he analyze the individualized circumstances of any psychiatrist who chose to work at CDCR for

2    the wage offered them to determine, based on his opinion, that they should have been paid more

3    than the posted minimum.

4        **E.    Nolan Decl. ¶ 20, ECF No. 5590-1 at 9:11-22.**

5        "In the last few months, the parties have had several conference calls about serious

6    problems with the mental health program at SVSP.  The crisis is in part due to severe staffing

7    shortages there.  Although defendants have indicated recently that they have increased the use of

8    contract psychiatrists there, SVSP only has one full-time on-site staff psychiatrist out of its total

9    13 allocated psychiatrist positions.  *See* Enclosure 1k of the January 2017 Coleman Monthly

10   Report, Enclosed hereto as Exhibit N.  I am informed and believe that the conference calls

11   between the parties and the Special Master about SVSP problems took place on February 7, 2017

12   and March 9, 2017.  I have reviewed memoranda from my co-counsel based on notes during these

13   calls.  Defendants reported in those calls that there had been a rash of recent civil service staff

14   psychiatrists from SVSP.  Defendants also reported in the call they were limiting the placement of

15   additional prisoners into the EOP units there."

16       Specifically, the references in Plaintiffs' Objections that should be stricken are at ECF No.

17   5590 at 12:6-8, 10-11.

18       **Objection 1**

19       Inadmissible Hearsay (Fed. R. Evid. 801(c), 802):  To the extent that Mr. Nolan's

20   statements purport to present to the Court any statement prepared in notes or memoranda by his

21   co-counsel, which notes and memoranda were apparently the result of a conference call, the

22   statements are inadmissible hearsay as to the truth of what was written.

23       **Objection 2**

24       Lack of Personal Knowledge/Foundation (Fed. R. Evid. 602): Mr. Nolan relies on

25   "memoranda from [his] co-counsel based on notes during these calls," but he was not on the calls

26   himself.  Furthermore, Mr. Nolan does not attach the notes and memoranda that he relies on in

27   making his statements, so we cannot ascertain what he is relying on and cannot refute the

28   accuracy or completeness of what may or may not have been written.  To the extent Mr. Nolan

14

may assert that privileges prevented disclosure of the memoranda and notes, his extensive reliance on these documents has put them squarely "at issue" and effects a subject-matter waiver of any privileges.  *See* Fed. R. Evid. 502(a).  His vague references to notes and memoranda of others cannot make up for his lack of personal knowledge about the testimony he provides in his sworn declaration.

**Objection 3**

Misleading, false, deceptive, and therefore confusing (Fed. R. Evid. 403):  Mr. Nolan's statement that there is only "one full-time on-site staff psychiatrist out of its total 13 allocated psychiatrist positions" is incorrect because it misleads the reader to believe that there was only one psychiatrist serving the institution.  In fact, 5.8 positions were filled by psychiatrists physically on-site or through the telepsych program according to Exhibit N to Mr. Nolan's Declaration.  (ECF No. 5590-1 at 413.)

Because there is no or little probative value to this incorrect and misleading assertion, any value is substantially outweighed by the potential confusion cause by the misleading nature of the numbers of full-time staff stated by Plaintiffs and it should be disregarded and stricken.

**F.    Nolan Decl. ¶ 21, ECF No. 5590-1 at 9:23-27.**

"I have discussed the 15% pay raise in the UAPD contract for Physicians and Surgeons working at hard-to-hire locations in the CDCR with my co-counsel in *Coleman* at the Prison Law Office.  Based on these conversations, I am informed and believe that the [sic] a major factor in the granting of an additional 15% pay increase for hard to hire location doctors was pressure from the Prison Law Office and the *Plata* medical Receiver."

Specifically, the reference in Plaintiffs' Objections that should be stricken is at ECF No. 5590 at 7:14-16.

**Objection 1**

Speculation/Lack of Personal Knowledge/Foundation [Fed. R. Evid. 602]: Mr. Nolan's discussion of a "pay raise" with his unnamed co-counsel, which bonus resulted from confidential collective bargaining negotiations that neither he nor his co-counsel witnessed, does not provide a basis for his speculation that "major factor in the granting of an additional 15% pay increase for

15

1   hard to hire location doctors was pressure from the Prison Law Office and the *Plata* medical

2   Receiver." His statement is speculation. Moreover, Plaintiffs are advised that Mr. Nolan's

3   reliance on these conversations with unnamed persons puts the conversations "at issue" and

4   effects a subject-matter waiver of any privileges. *See* Fed. R. Evid. 502(a).

5        **Objection 2**

6        Inadmissible Hearsay (Fed. R. Evid. 801(c), 802): To the extent that Mr. Nolan's

7   statements and opinions rely on undisclosed discussions with unnamed co-counsel, the statements

8   relied on are inadmissible hearsay, and Mr. Nolan cannot base his opinion and statement on them.

9        **Objection 3**

10       Lack of Relevance (Fed. R. Evid. 401): Speculation regarding the results of "pressure from

11  the Prison Law Office and the *Plata* medical Receiver" is irrelevant here, where the parties are

12  seeking to address mental health care needs, and nationwide staffing shortages for psychiatrists.

13       **G.    Nolan Decl. ¶ 22, ECF No. 5590-1 at 10:1-8.**

14       "One area where the harm from the psychiatrist staffing shortages is evident is in the

15  unavailability of CDCR staff psychiatrists to participate in key quality assurance efforts, such as

16  the Suicide Prevention and Review Focused Improvement Teams ("SPRFIT") which conduct

17  quality improvement reviews of suicides and suicide prevention efforts at each CDCR prison.

18  Based on my experience over many years working on this case, my understanding is that as the

19  most senior and highly trained mental health clinicians, the leadership of Psychiatry Staff

20  members is critical to such quality improvement teams."

21       Specifically, the reference in Plaintiffs' Objections that should be stricken is at ECF No.

22  5590 at 11:7-9.

23       **Objection 1**

24       Improper "Expert" Testimony of Non-Expert (Fed. R. Evid. 701, 702): Mr. Nolan has

25  provided no evidence of his qualifications, knowledge, or expertise that would support his expert

26  opinions about "harm from the psychiatrist staffing shortages," which he opines "is evident in the

27  unavailability of CDCR staff psychiatrists to participate in" the Suicide Prevention and Review

28  Focused Improvement Teams. And while he posits his "many years working on this case" as his

                                          16

1    qualification, Defendants object to his assertion that his experience as litigation counsel is an

2    adequate substitute for a medically trained and board-certified clinician's opinion about harm to

3    the mental health of inmate-patients.  Nor can he opine that "the leadership of Psychiatry Staff

4    members is critical to such quality improvement teams."  This sworn statement is actually

5    attorney advocacy.

6        **Objection 2**

7        Speculation/Lack of Personal Knowledge/Foundation (Fed. R. Evid. 602): Mr. Nolan's

8    reliance on his "years of experience," does not provide the personal knowledge he needs to offer

9    this testimony.  He is speculating that the operational goal of including psychiatrists in Suicide

10   Prevention and Review Focused Improvement Teams is critical to providing constitutionally

11   adequate mental health care, and that the teams are otherwise unequipped to undertake quality

12   improvement reviews.

13       **Objection 3**

14       Misleading and therefore confusing (Fed. R. Evid. 403):  Plaintiffs state in their objections

15   that "[p]sychiatrists also play a central role in leading suicide prevention efforts at each institution,

16   and their absence severely impairs this critical, life-saving process," and they cite to the Nolan

17   Declaration at paragraph 22.  (*See* 5590 at 11:7-9.)  But paragraph 22 does not support the

18   statement in the brief.  There is no evidence that their absence at the relatively new Suicide

19   Prevention and Review Focused Improvement Teams severely impairs critical, life-saving

20   processes.  The blatantly misleading statement and citation should be stricken under Rule 12(f).

21   Certainly there is no or little probative value to this incorrect misleading assertion, any value is

22   substantially outweighed by the potential confusion cause by the misleading nature of the

23   statement by Plaintiffs and it should be disregarded and stricken.

24       **H.    Nolan Decl. ¶ 23, ECF No. 5590-1 at 10:24-11:4.**

25       "On July 19, 2016, I attended one of the initial staffing workgroup meetings with

26   representatives from defendants, plaintiffs and the Special Master team.  At that meeting,

27   Plaintiffs' Counsel asked Defendants about the sudden appearance of high staff psychiatrist

28   vacancies at RJD.  Plaintiffs explained that the number of staff psychiatrists at RJD had fallen

17

1  from 16 positions during the Special Master's 26th Round monitoring visit to RJD, to 7.5

2  positions at the time of the meeting.  We were told at the meeting that tough working conditions

3  at RJD were exacerbated when a psychiatrist who had worked at RJD had committed suicide and

4  that his death led to a number of other psychiatrists at RJD leaving the institution."

5      Specifically, the references in Plaintiffs' Objections that should be stricken are at ECF No.

6  5590 at 12:13-17, 17-20.

7      **Objection 1**

8      Lack of Personal Knowledge/Foundation (Fed. R. Evid. 602): Mr. Nolan's recitation of

9  collaborative workgroup discussions from ten months ago is not appropriate for an attorney

10 declaration.  *Hollander*, 172 F.3d at 198; *E. F. Hutton* & Co., 305 F. Supp. at 383; *Degelman*

11 *Indus.*, 2011 WL 6754053, at *2, *Universal Film Exchs.*, 37 F.R.D. at 5.  He does not indicate

12 who provided him information at Richard J. Donovan, and he does not have personal knowledge

13 regarding "tough working conditions at RJD," whether they were "exacerbated when a

14 psychiatrist who had worked at RJD had committed suicide," or whether "his death led to a

15 number of other psychiatrists at RJD leaving the institution."

16     **Objection 2**

17     Inadmissible Hearsay (Fed. R. Evid. 801(c), 802):  To the extent that Mr. Nolan's

18 statements and opinions rely on information provided by unnamed persons, the statements relied

19 on are inadmissible hearsay, and Mr. Nolan cannot base his statements on them.

20     **Objection 3**

21     Sensitive and personal information that may have been conveyed to Mr. Nolan in

22 workgroups or private conversations is not appropriately disclosed in a public declaration,

23 particularly since the reference here to tough times associated with a staff suicide provides

24 needless and immaterial detail.  Defendants object to Plaintiffs' constant reference to statements

25 made during the course of the Special Master's "workgroups" and other meetings where

26 Defendants are urged to discuss issues openly, only to now find those discussions part of the

27 formal record.  Rather than participating in workgroups and other meetings with a sense of

28 respect and protection, akin to settlement discussions and arguably protected from use as

1    evidence under Federal Rule of Evidence 408, Defendants will be more circumspect in their

2    discussions in future meetings with Plaintiffs.  Mr. Nolan's statements chill the free flow of

3    information between the parties, are immaterial and impertinent, and should otherwise be stricken

4    under Rule 12(f).  *See Tucker v. American Int'l Group, Inc.*, 936 F.Supp.2d 1, 16 (D.Conn. 2013)

5    ("'Even where matter in a pleading is relevant to the controversy, it nonetheless may be stricken

6    is it is . . . set out in 'needless detail''" (quoting *Cabble v. Rollieson*, No. 04-cv-09413, 2006 WL

7    464078, at *11 (S.D.N.Y. Feb. 27, 2006))).

8        **I.    Nolan Decl. ¶ 24, ECF No. 5590-1 at 11:5-16.**

9        "On September 15, 2016, I toured the CDCR telepsychiatry office in Elk Grove with Karen

10   Rea, one of the Special Master's Experts.  We were accompanied by Dr. Kaftarian, the CDCR

11   Psychiatrist in charge of the CDCR telepsychiatry program.  During this tour, Ms. Rea and I

12   observed a total of three different telepsychiatrists working.  Two of the three telepsychiatrists

13   observed during the tour had previously worked at nearby CDCR institutions.  One had worked at

14   Mule Creek State Prison and another had worked at CHCF-Stockton.  Both institutions are less

15   than an hour drive by car from Elk Grove.  During the visit, we also were given a presentation

16   about telepsychiatry by Dr. Kaftarian.  In this presentation and in defendants' staffing plans, it

17   was made clear that further expansion of the CDCR's telepsychiatry program would require

18   construction at San Quentin and Rancho Cucamonga, which will not be completed until sometime

19   in 2018."

20       Specifically, the references in Plaintiffs' Objections that should be stricken are at ECF No.

21   5590 at 20:25-21:2, 21:26-28.

22       **Objection 1**

23       Speculation/Lack of Personal Knowledge/Foundation (Fed. R. Evid. 602):  Mr. Nolan does

24   not describe any of the circumstances concerning why two unnamed psychiatrists who previously

25   worked at Mule Creek State Prison and the California Health Care Facility decided to become

26   telepsychiatrists, whether they left Mule Creek and California Health Care to work in Oak Grove

27   as telepsychiatrists, whether they left CDCR's employ and worked somewhere else before

28   coming back to work for CDCR as telepsychiatrists, or whether he attempted to obtain this

19

1    information from them.  Furthermore, Plaintiffs have no support to say that "many of the

2    [telepsychiatry] positions cannot even be filled until 2018" (ECF No. 5590 at 21:27-28), because

3    Mr. Nolan only references construction projects that will expand telepsychiatry facilities.

4    Plaintiffs' unsupported leap that CDCR can only expand their telepsychiatry offerings by building

5    new offices is improper.

6        **Objection 2**

7        Inadmissible Hearsay (Fed. R. Evid. 801(c), 802):  Nolan's statement is hearsay in that he

8    asserts that "two of the three telepsychiatrists observed during the visit reported they had left

9    positions at nearby prisons less than an hour's drive from the telepsychiatry office to become

10   telepsychiatrists."  (ECF No. 5590 at 20:28-21:2.)  This is an out-of-court statement offered for

11   the truth of the matter asserted.

12       **Objection 3**

13       Misleading, incorrect, and therefore confusing (Fed. R. Evid. 403):  Plaintiffs' statements

14   that "two of the three telepsychiatrists observed during the visit reported they had left positions at

15   nearby prisons less than an hour's drive from the telepsychiatry office to become

16   telepsychiatrists" (ECF No. 5590 at 20:28-21:2) and "many of the [telepsychiatry] positions

17   cannot even be filled until 2018" (ECF No. 5590 at 21:27-28) are misleading and do not reflect

18   the information referenced in Mr. Noland's Declaration at paragraph 24.  Because there is no or

19   little probative value to this incorrect and misleading assertion, any value is substantially

20   outweighed by the potential confusion caused by the statement and it should be disregarded and

21   stricken.

22       **J.    Nolan Decl. ¶ 25, ECF No. 5590-1 at 11:17-12:3.**

23       "I have attended work group meetings last fall and other meetings and calls in the last six

24   months with Plaintiffs' Counsel, the Special Master and his team of experts, and Defendants

25   where the "Lift and Shift" proposal to transfer management of the DSH treatment facilities at

26   CMF, SVSP and CHCF from DSH to CDCR was discussed.  In these discussions, Defendants

27   indicated that they believe most DSH clinicians will agree to move over to CDCR employment if

28   the plan goes forward.  The comments in the surveys set forth in Exhibit F hereto strongly suggest

20

that a number of psychiatrists working for DSH do not want to work for CDCR and strongly

oppose the "Lift and Shift" process for this reason.  I am informed and believe, based on my

review memoranda from my co-counsel based on notes during these calls, that during a call

between Defendants, the Special Master and his team, and Plaintiffs' Counsel on March 9, 2017,

Defendants admitted that during town hall meetings about the proposed "Lift and Shift" transfer,

psychiatrists expressed serious concerns about the change in employment from DSH to CDCR,

and some indicated that they are considering quitting their jobs if the transfer of management to

the CDCR is completed."

Specifically, the reference in Plaintiffs' Objections that should be stricken is at ECF No.

5590 at 15:2-7, 12-16.

**Objection 1**

Lack of Personal Knowledge/Foundation (Fed. R. Evid. 602): Mr. Nolan's recitation of

collaborative workgroup discussions is not appropriate for an attorney declaration. *Hollander*,

172 F.3d at 198; *E. F. Hutton* & Co., 305 F. Supp. at 383; *Degelman Indus*., 2011 WL 6754053,

at *2, *Universal Film Exchs*., 37 F.R.D. at 5.

Mr. Nolan also relies on "memoranda from my co-counsel based on notes during these

calls," but he was not on the calls himself.  Furthermore, Mr. Nolan does not attach the notes and

memoranda that he relies on in making his statements, so we cannot ascertain what he is relying

on and cannot refute the accuracy or completeness of what may or may not have been written.  To

the extent Mr. Nolan may assert that privileges prevented disclosure of the memoranda and notes,

his extensive reliance on these documents effects a subject-matter waiver of any privileges.  *See*

Fed. R. Evid. 502(a).  His vague references to notes and memoranda of others cannot make up for

his lack of personal knowledge about the testimony he provides in his sworn declaration.

Furthermore, he does not specify who made certain statements that he attributes to the

Defendants.  And he otherwise lacks personal knowledge about Defendants' beliefs, or what was

discussed in town hall meetings.

1  **Objection 2**

2      Inadmissible Hearsay (Fed. R. Evid. 801(c), 802):  To the extent that Mr. Nolan's

3  statements purport to present to the Court any statement from notes or memoranda by his co-

4  counsel, which were apparently the result of conference calls, the statements are inadmissible

5  hearsay as to the truth of what was written.  He also relies on Exhibit F, which is inadmissible for

6  the reasons indicated below, including that the document is hearsay.

7                                         **CONCLUSION**

8      Exhibits D and F and the statements made in paragraphs 14, 18, and 20-25 of the Nolan

9  Declaration are inadmissible as evidence, should be stricken from the record, and Plaintiffs

10  should not be allowed to rely on them in support of Plaintiffs' Objections because they contain

11  improper expert opinions, lack proper foundation, rely on documents that are unauthenticated,

12  constitute inadmissible hearsay, fail to meet fundamental evidentiary standards for admissibility,

13  are incomplete, and are used to justify propositions in Plaintiffs' Objections in misleading ways.

14

15  Dated:  April 13, 2017                    Respectfully Submitted,

16                                              XAVIER BECERRA
                                            Attorney General of California
17                                          DANIELLE F. O'BANNON
                                            Supervising Deputy Attorney General
18

19
                                            /s/ CHAD A. STEGEMAN
20                                          CHAD A. STEGEMAN
                                            Deputy Attorney General
21                                          *Attorneys for Defendants*

22
     CF1997CS0003
23

24

25

26

27

28

                                            22