DONALD SPECTER – 083925
STEVEN FAMA – 099641
MARGOT MENDELSON – 268583
PRISON LAW OFFICE
1917 Fifth Street
Berkeley, California 94710-1916
Telephone: (510) 280-2621

MICHAEL W. BIEN – 096891
JEFFREY L. BORNSTEIN – 099358
JANE E. KAHN – 112239
ERNEST GALVAN – 196065
THOMAS NOLAN – 169692
LISA ELLS – 243657
JENNIFER L. STARK – 267062
KRISTA STONE-MANISTA – 269083
JESSICA WINTER – 294237
ROSEN BIEN
GALVAN & GRUNFELD LLP
50 Fremont Street, 19th Floor
San Francisco, California 94105-2235
Telephone: (415) 433-6830

RANJINI ACHARYA – 290877
K&L GATES LLP
4 Embarcadero Center, Suite 1200
San Francisco, California 94111-5994
Telephone: (415) 882-8200

CLAUDIA CENTER – 158255
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN
CALIFORNIA, INC.
39 Drumm Street
San Francisco, California 94111-4805
Telephone: (415) 621-2493

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>EDMUND G. BROWN, JR., et al.,<br><br>Defendants. | Case No. 2:90-CV-00520-KJM-DB<br><br>**PLAINTIFFS' EVIDENTIARY OBJECTIONS RE: DEFENDANTS' RESPONSE TO THE SPECIAL MASTER'S REPORT ON THE STATUS OF MENTAL HEALTH STAFFING**<br><br>Judge: Hon. Kimberly J. Mueller |

[3121830-2]

Defendants have filed five declarations in support of their Response to the Special Master's staffing report. ECF Nos. 5591-1 through 5591-5. These declarations and attached evidence are rife with evidentiary shortcomings and should be excluded to the extent they violate the Federal Rules of Evidence, as detailed below.

## I. DEFENDANTS' DECLARATIONS SHOULD BE EXCLUDED INSOFAR AS THEY CONTAIN IMPROPER AND INADMISSIBLE EVIDENCE

### A. Summary of Evidentiary Objections

Defendants' lay witness declarants offer testimony that does not meet the Federal Rule of Evidence 602 requirement that a witness to testify "*only if* evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter" (emphasis added). Instead, Defendants' declarants proffer expert testimony despite being unqualified to do so. This testimony contravenes the requirements of Federal Rule of Evidence 701, which provides that non-expert "testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception, (b) helpful to … determining a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge." Such statements also violate Federal Rule of Evidence 702, which sets forth the specific requirements as to who may provide expert testimony.

The declarations contain various data, charts and tables presenting data, and other information that is offered with no explanation of the source of the data and the methodology by which the data was compiled or the various charts were prepared. Without adequate authentication of the data itself or of the summary charts, this evidence lacks sufficient authentication that it is true and accurate as required by Federal Rule of Evidence 901.

Finally, Federal Rule of Evidence 1006 allows the use of summaries of complex records only when the underlying data has been provided to both parties. In various cases, as detailed below, Defendants have not identified the source of the data purportedly summarized in their declarations and exhibits and have not provided it to Plaintiffs.

[3121830-2]

1                                                                  2:90-CV-00520-KJM-DB
PLAINTIFFS' EVIDENTIARY OBJECTIONS RE: DEFENDANTS' RESPONSE TO THE
SPECIAL MASTER'S REPORT ON THE STATUS OF MENTAL HEALTH STAFFING

B. **Evidentiary Objections to the Declaration of Michael Golding, ECF No. 5591-1 ("Golding Declaration")**

1. **Golding Declaration Paragraph 2 and Exhibit 1**

According to paragraph 2 of the Golding Declaration, Exhibit 1 to that declaration purports to be a "table summarizing the studies" reviewed by Dr. Golding and his "research team." The declaration does not specify the manner in which these studies were selected, from which databases, and according to what criteria, and does not assert that Dr. Golding personally reviewed each study or personally created, or supervised the creation of, Exhibit 1 based on his review. As such, Exhibit 1 lacks sufficient indicia of reliability and personal knowledge to support its admission under Rules of Evidence 602 and 901. The chart is also materially incomplete; there are no entries in the "discussion" or "results" column for the last-cited article.

Further, Dr. Golding's conclusions in Paragraph 2 of his Declaration that the studies he reviewed "corroborate [the] usefulness" of telepsychiatry and "are consistent with the idea that in most applications [telepsychiatry] is as effective as face-to-face or on-site psychiatric treatment" constitute expert opinions that cannot be offered in a Declaration submitted under Rule 601. Even if Dr. Goldberg's methodology were sound and the chart of the studies he reviewed were complete, his sweeping assertions about the meaning of the studies as a whole would still be outside the province of a lay witness. *See* Fed. R. Evid. 701, 702.

2. **Golding Declaration Paragraphs 4-7**

Paragraphs 4-7 of the Golding Declaration present a series of photographs purporting to show "representative" images of telepsychiatry as used by Defendants. No information is provided regarding the manner in which these photographs were taken, by whom, where, or on what dates; the declaration does not state that Dr. Golding himself has personal knowledge that these photographs are true and accurate depictions of the events they purport to depict, or how they are "representative" of all telepsychiatry use within the CDCR and DSH systems. The declaration does not provide evidence sufficient to support

a finding that these photographs are what they claim to be.  *See* Fed. R. Evid. 901.

### 3. Golding Declaration Paragraphs 8-9

Paragraphs 8 and 9 of the Golding Declaration make a number of sweeping statements about the benefits of telepsychiatry without adequate foundation under Rule 602, and appear to be expert opinions offered in violation of Rules 701 and 702.  In Paragraph 8, there is no foundation for the statement that "[t]here is no evidence from CDCR's use of telepsychiatry" that such use is "absolutely contraindicated for treating patients with any level of mental health need."  Dr. Golding does not state that CDCR has conducted any studies regarding the use of telepsychiatry and does not in any other way demonstrate a foundation, within his personal knowledge, for a conclusion that no evidence of harm exists anywhere in the system.  *See* Fed. R. Evid. 701.

Similarly, in Paragraph 9, there is no foundation offered for the statement that the continuity of care offered by telepsychiatry "is welcome[d] by patients and benefits their treatment," and the statement that telepsychiatry "may offer important clinical advantages for patients" such as continuity of care appear purely hypothetical and not based on the declarant's personal experience in CDCR.  Golding Declaration ¶ 9.  These paragraphs should be excluded to the extent they offer expert conclusions outside the realm of Dr. Golding's personal knowledge.  *See* Fed. R. Evid. 701, 702.

### 4. Golding Declaration Paragraph 10

A chart review conducted by Dr. Golding and another, unnamed, psychiatrist does not constitute evidence within Dr. Golding's personal knowledge to which he may testify as a lay witness.  *See* Fed. R. Evid. 701, 702.  To the extent that this chart review, based on a 32-patient sample within a 36,000-plus-patient system, is offered to support an expert conclusion, its sample size is too small to be meaningful, and as Dr. Golding admits, his findings are not "statistically significant."  Golding Declaration ¶ 10.  Dr. Golding's unsupported implication that telepsychiatry encounters are well-documented as a matter of clinical judgment is without foundation, constitutes impermissible expert opinion, and is unhelpful to the Court as the trier of fact.  *See* Fed. R. Evid. 401, 602, 701, 702.

### C. Evidentiary Objections to the Declaration of Katherine Tebrock, ECF No. 5591-2 ("Tebrock Declaration")

#### 1. Tebrock Declaration Paragraph 4 and Exhibit 1

Exhibit 1 to the Tebrock Declaration purports to be a "table which sets forth the results" of a review of CCCMS class members conducted pursuant to a 2016 memorandum, which is not attached to the declaration. The Exhibit is not authenticated, and no explanation is given in the declaration as to how it was prepared or by whom. *See* Fed. R. Evid. 901. Nor is there any explanation of the source of the data on the Exhibit. The declaration does not provide evidence sufficient to support a finding that Exhibit 1 is what the declarant claims it is, or the basis for the declarant's personal knowledge. *See* Fed. R. Evid. 602, 901

Finally, Federal Rule of Evidence 1006 allows the use of summaries of complex records only when the underlying data has been provided to both parties; Defendants have not identified the source of the data used to prepare Exhibit 1 and have not provided it to Plaintiffs.

#### 2. Tebrock Declaration Paragraph 6-7 and Unnumbered Table

Paragraph 6 to the Tebrock Declaration includes a chart purporting to provide numbers of "monthly psychiatry to patient contact[s]" in each month of 2015 and 2016. Again, the Table is not authenticated, and no explanation is given in the declaration as to how it was prepared or by whom. These unauthenticated numbers in Paragraph 6, and the reiteration of these numbers in Paragraph 7, should be excluded as lacking adequate evidence that they are true and accurate. *See* Fed. R. Evid. 901. Further, Federal Rule of Evidence 1006 allows the use of summaries of complex records only when the underlying data has been provided to both parties; Defendants have not identified the source of this data and have not provided it to Plaintiffs.

Paragraph 7 further states that the table "does not include the thousands of hours psychiatrists participated in" various other appointments and patient contacts. There is no foundation provided for Ms. Tebrock's assertion that "thousands of hours" were spent in

such activities, which is meaningless without any stated timeframe – did psychiatrists spend thousands of hours per month in such activities? Per year? This assertion, which has no evidentiary support and no apparent foundation in Ms. Tebrock's personal knowledge, should be excluded. *See* Fed. R. Evid. 602.

### 3. Tebrock Declaration Paragraph 8 and Exhibit 2

Paragraph 8 of the Tebrock declaration states that inmates are provided "quality treatment at very high compliance rates." The evidence offered for this assertion, Exhibit 2, is titled "Mental Health Staff Psychiatrist Staffing vs Compliance, 2/23/17." No explanation is given as to the sources of data for the various columns in this chart, and the declaration has no discussion of the data sources, the method of preparation, or of by whom this chart was prepared. As such, Exhibit 2 should be excluded for lack of authentication and indicia of reliability. *See* Fed. R. Evid. 901. Further, the declaration does not state that Ms. Tebrock prepared, or even reviewed, Exhibit 2 such that it is within her "personal knowledge" as required for a declaration submitted under Rule 602.

Finally, Federal Rule of Evidence 1006 allows the use of summaries of complex records only when the underlying data has been provided to both parties; Defendants have not identified the source of this data and have not provided it to Plaintiffs.

### 4. Tebrock Declaration Paragraphs 9, 10, 11, 12, 15

Paragraphs 9 and 10 of the Tebrock Declaration set forth an array of statistics about the CDCR mental health population, the size of the current and previous CDCR mental health budgets, the total CDCR mental health staffing, and the percentage of clinical contacts that were "made timely." Paragraph 12 asserts that "most institutions" achieve "compliance about the ninety-fifth percentile" with unspecified medication management indicators, and that CDCR's "statewide compliance" with these unspecified measures "totals ninety-six percent." Paragraph 13 states that CDCR "employs 42.5 telepsychiatrists who provide services to … seventeen institutions." Paragraph 15 sets forth statistics about the mental health program at High Desert State Prison.

No explanation is given as to the sources of any of these data points, and no

evidence is submitted in support of any of these numbers. As such, the statistics provided in Paragraphs 9,10, and 11 should be excluded for lack of authentication and indicia of reliability. *See* Fed. R. Evid. 901. Further, the declaration contains no statements that Ms. Tebrock personally reviewed any reports in preparing this declaration, such that these numbers would be within her "personal knowledge" as required for a declaration submitted under Rule 602.

### 5. Tebrock Declaration Paragraph 11 and Exhibit 3

Exhibit 3 to the Tebrock Declaration is a complex table of monthly vacancy rates by institution for a three-year period. The declaration states in Paragraph 11 that the data provided is "based on" Defendants' monthly reports, but includes no explanation of how Exhibit 3 itself was prepared or by whom. It is unauthenticated and lacks indicia of reliability as required by Rule 901. Nor does the declaration state that Ms. Tebrock prepared, or even reviewed, Exhibit 3 such that it is within her "personal knowledge" as required for a declaration submitted under Rule 602.

### 6. Tebrock Declaration Paragraph 16 and 17

This paragraph asserts that there have been no suicides at High Desert State Prison since 2014 and "there are no known negative patient outcomes" due to use of telepsychiatry at High Desert. There is no explanation of what data was reviewed in support of this conclusion. Ms. Tebrock is not a clinician and her entirely unsupported assertion that there are no "known" (to whom?) harms from telepsychiatry is without foundation and unhelpful to the Court as the trier of fact. *See* Fed. R. Evid. 401, 602, 701. The same is true for her unsupported assertions in Paragraph 17 that clustering of high-acuity patients "may negatively impact care … and negatively impact staff."

## D. Evidentiary Objections to the Declaration of Brandon Price, ECF No. 5591-4 ("Price Declaration")

### 1. Price Declaration Paragraph 5

Mr. Price asserts in Paragraph 5 that "DSH-Coalinga has not received any negative feedback or outcomes as a result of its use of telepsychiatry." He does not provide any

[3121830-2]

6    2:90-CV-00520-KJM-DB
PLAINTIFFS' EVIDENTIARY OBJECTIONS RE: DEFENDANTS' RESPONSE TO THE
SPECIAL MASTER'S REPORT ON THE STATUS OF MENTAL HEALTH STAFFING

1  specificity as to the sources of feedback or data regarding outcomes that he may or may
2  not have reviewed, and does not in any other way demonstrate a foundation, within his
3  personal knowledge, for this sweeping assertion.  *See* Fed. R. Evid. 701.  This assertion,
4  which has no evidentiary support and no apparent foundation in Mr. Price's personal
5  knowledge, should be excluded.  *See* Fed. R. Evid. 602.

6  DATED: April 13, 2017           Respectfully submitted,

7                                  ROSEN BIEN GALVAN & GRUNFELD LLP

8                                  By:  */s/ Krista Stone-Manista*
9                                       Krista Stone-Manista

10                                 Attorneys for Plaintiffs

[3121830-2]