XAVIER BECERRA
Attorney General of California
WILLIAM C. KWONG
Acting Senior Assistant Attorney General
DANIELLE F. O'BANNON
JAY C. RUSSELL
Supervising Deputy Attorneys General
ELISE OWENS THORN, State Bar No. 145931
CHRISTINE M. CICCOTTI, State Bar No. 238695
CHAD A. STEGEMAN, State Bar No. 225745
Deputy Attorneys General
  455 Golden Gate Avenue, Suite 11000
  San Francisco, CA 94102-7004
  Telephone: (415) 703-5826
  Fax: (415) 703-1234
  E-mail: Chad.Stegeman@doj.ca.gov
*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **RALPH COLEMAN, et al.,** | 2:90-cv-00520 KJM-DB (PC) |
| Plaintiffs, | **STIPULATION AND ORDER WAIVING STATE LAW REGARDING L-WING AT CALIFORNIA MEDICAL FACILITY** |
| v. | |
| **EDMUND G. BROWN JR., et al.,** | |
| Defendants. | |

Defendants propose to convert 37 cells on the first floor of the L-Wing at the Correctional Medical Facility (L-1), into 70 temporary unlicensed Intermediate Care Facility level-of-care beds and two observation and restraint rooms for high-custody inmate-patients on the inpatient wait list. The addition of these beds will expand capacity for high-custody inpatient care in the near term and allow Defendants to admit all patients waiting beyond Program Guide timelines. Funds have been earmarked for needed facility modifications and staffing. However, in order to move forward with this solution, temporary waivers of state licensing requirements are needed, which are justified by the current bed shortage and the ongoing risk of serious harm to patients caused by delayed access to inpatient psychiatric hospitalization.

The "Supreme Court has stated that otherwise valid state laws or court orders cannot stand in the way of a federal court's remedial scheme if the action is essential to enforce the scheme." *Stone v. City and County of San Francisco*, 968 F.2d 850, 862 (9th Cir. 1992) (quoting *North Carolina State Bd. of Educ. v. Swann*, 402 U.S. 43, 45 (1971)). The Court's March 24, 2017 order (ECF No. 5583) mandated that Defendants "completely and permanently" comply with Program Guide timelines and eliminate the wait lists for inpatient care. The Court recognized that the addition of the proposed beds at L-1 is an integral part of addressing the immediate need for high-custody Intermediate Care Facility beds. (ECF No. 5583 at 9:17-18; 12:25-13:11.) In light of this urgency, and in order to activate these beds as quickly as possible, Defendants and Plaintiffs jointly request that the Court waive the same state licensing requirements at the L-Wing that the Court waived in 2011.[1]

Within 60 days of the Court's approval of the requested waiver, Defendants shall convert and open the L-1 inpatient beds. Defendants will limit the duration of these waivers to eighteen months following entry of this Court's order. The parties will revisit the need for the waivers

---

[1] This Court has held on at least five prior occasions that state licensing requirements temporarily give way to the use of unlicensed Mental Health Crisis Beds and Intermediate Care Facility inpatient beds. (*See* ECF Nos. 4095 and 1800, Orders filed October 7, 2011, and May 6, 2006, respectively, concerning California Men's Colony; ECF No. 3748, Order filed December 11, 2009, concerning California State Prison, Sacramento; ECF No. 3516, Order filed February 17, 2009, concerning California Institution for Men; and ECF No. 4120, Order filed November 17, 2011, concerning the same beds at issue here at California Medical Facility.)

after twelve months following the Court's order to determine whether any further extension is required. Defendants agree that inmate-patients housed in L-1 will not routinely be restrained (1) when moving from L-1 to programming, (2) on the L-1 Unit, including the dayroom, or (3) when using the N-1 dining room, unless deemed custodially necessary on an individual and documented basis. Defendants also agree that no inmate who is both custodially approved by CDCR and clinically cleared by the Department of State Hospitals (DSH) for placement in one of the DSH facilities will remain or be placed in L-1, absent some extenuating circumstance.

When this Court previously waived state laws to allow Defendants to operate L-1 to address the shortage of inpatient psychiatric hospital beds in November 2011, the Unit was staffed and run by DSH and was single-celled, with a capacity of 36. Defendants' current plan is for L-1 to be staffed and run by CDCR, and for the unit to be double-celled, with a maximum capacity of 70 patients. Plaintiffs have raised various objections and concerns about both of these changes. To address their concerns, Defendants agree that CDCR's operation of L-1 will be subject to monitoring by the Special Master and that a report will issue regarding its implementation in the normal rounding reports completed by the Special Master or a specific report, as the Court deems appropriate. Defendants further agree that any standards and guidelines that emerge from the "lift and shift" process will also apply to L-1. In addition, Defendants will work to limit double-celling on L-1 to the extent possible. Defendants also agree to staff and operate L-1 to offer a minimum 12 hours per day of out-of-cell time, including weekends (including but not limited to treatment hours, socialization yard, and other time out of cell).

Good cause presented to the Court and appearing, the parties stipulate that the Court should waive the licensing requirements described below so that CDCR can convert the 37 cells in L-1 into 70 temporary unlicensed Intermediate Care Facility beds and two observation and restraint rooms.

**IT IS STIPULATED AS FOLLOWS:**

1. The following state licensing requirements shall be waived with respect to the 70 temporary Intermediate Care Facility beds and two observation and restraint rooms in the L-Wing, L-1, at California Medical Facility:

    A. California Health and Safety Code section 1250(j); and

    B. California Code of Regulations, Title 22, sections 79501–79861.

2. Defendants shall apprise the Court promptly should any delays prevent the L-1 conversion from being completed within 60 days of this order.

3. The duration of waiver is eighteen months from the date of this order, and the parties shall consider the need for an extension of the waiver after twelve months.

**IT IS SO STIPULATED.**

Dated: April 6, 2017

XAVIER BECERRA
Attorney General of California
DANIELLE F. O'BANNON
Supervising Deputy Attorney General

/s/ CHAD A. STEGEMAN
CHAD A. STEGEMAN
Deputy Attorney General
*Attorneys for Defendants*

Dated: April 6, 2017

/s/ MICHAEL W. BIEN
MICHAEL W. BIEN
*Attorneys for Plaintiffs*

\* \* \*

ORDER

The court has reviewed the stipulation and proposed order. While approving the three provisions of the parties' stipulation providing for the requested waiver, the court clarifies that this approval should not be construed to condone or approve any continuation of wait lists for inpatient care that exceed Program Guide timelines.

The court further clarifies that, with respect to the text of the parties' filing preceding their stipulation, on page 2, line 15, the court has not taken a position with respect to any of the alternatives available to defendants beyond recognizing the existence of those alternatives. That said, the court recognizes the apparent agreement of the parties that the 70 temporary Intermediate Care Facility beds and 2 observation and restraint rooms in the L-1 Wing are integral to addressing the immediate need for high-custody Intermediate Care Facility beds.

The court's approval of the stipulation is on the following conditions:

(1) To facilitate the Special Master's monitoring of the L-1 Wing unit, defendants shall report to the Special Master monthly as to whether there are any inmate-patients in L-1 wing who have been custodially approved by CDCR and clinically cleared by the Department of State Hospitals (DSH) for placement in one of the DSH facilities and, if so, why any such inmate-patient is in the L-1 Wing rather than in a DSH facility consistent with the patient's Least Restrictive Housing designation or other appropriate DSH facility.

(2) In recognition that the court's October 18, 2007 order, ECF No. 2461, contains important requirements for CDCR operation of inpatient mental health units, *see* ECF No. 2461 at 5 ¶¶ 6-7, the parties are directed to work with the Special Master to bring the plans for the L-1 Wing unit into compliance, as necessary and as expeditiously as possible, with the requirements of the October 18, 2007 order.

With these clarifications and conditions, the stipulation and proposed order are approved.

**IT IS SO ORDERED.**

DATED: April 13, 2017.

_____
UNITED STATES DISTRICT JUDGE

5