DONALD SPECTER – 083925
STEVEN FAMA – 099641
MARGOT MENDELSON – 268583
PRISON LAW OFFICE
1917 Fifth Street
Berkeley, California  94710-1916
Telephone:    (510) 280-2621

MICHAEL W. BIEN – 096891
JEFFREY L. BORNSTEIN – 099358
JANE E. KAHN – 112239
ERNEST GALVAN – 196065
THOMAS NOLAN – 169692
LISA ELLS – 243657
JENNIFER L. STARK – 267062
KRISTA STONE-MANISTA – 269083
JESSICA WINTER – 294237
ROSEN BIEN
GALVAN & GRUNFELD LLP
50 Fremont Street, 19th Floor
San Francisco, California  94105-2235
Telephone:    (415) 433-6830

RANJINI ACHARYA – 290877
K&L GATES LLP
4 Embarcadero Center, Suite 1200
San Francisco, California  94111-5994
Telephone:    (415) 882-8200

CLAUDIA CENTER – 158255
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN
CALIFORNIA, INC.
39 Drumm Street
San Francisco, California  94111-4805
Telephone:    (415) 621-2493

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>       Plaintiffs,<br><br>   v.<br><br>EDMUND G. BROWN, JR., et al.,<br><br>       Defendants. | Case No. 2:90-CV-00520-KJM-DB<br><br>**PLAINTIFFS' RESPONSE TO DEFENDANTS' EVIDENTIARY OBJECTIONS AND MOTION TO STRIKE NOLAN DECLARATION**<br><br>Judge:   Hon. Kimberly J. Mueller |

# **TABLE OF CONTENTS**

Page(s)

I.    DEFENDANTS' EVIDENTIARY OBJECTIONS ARE UNFOUNDED
      AND MUST BE OVERRULED ............................................................................. 1

II.   RESPONSES TO SPECIFIC OBJECTIONS ............................................................ 3

      A.    Exhibit D to the Nolan Declaration Is Admissible Evidence and Is
            Highly Relevant and Probative of Defendants' Current Staffing
            Situation ................................................................................................... 3

      B.    Exhibit F to the Nolan Declaration Is Not Offered for the Truth of the
            Matters Asserted and Would Constitute a Party Admission in Any
            Event ......................................................................................................... 6

      C.    Responses to Objections to Portions of Paragraphs 14, 18, 20-25 .................. 7

III.  CONCLUSION .................................................................................................. 13

1

## <u>**TABLE OF AUTHORITIES**</u>

2

Page(s)

3

<u>Cases</u>

4

*Cameron v. Community Aid for Retarded Children, Inc.*,
    335 F.3d 60 (2nd Cir. 2003) ...................................................................... 2, 6

*United States v. Beck*,
    418 F.3d 1008 (9th Cir. 2005) .................................................................. 7

*Wilkinson v. Carnival Cruise Lines, Inc.*,
    920 F.2d 1560 (11th Cir. 1991) ............................................................ 2, 7

5

6

7

8

9

<u>Statutes</u>

10

Federal Rules of Evidence
    403 .......................................................................................................... 3, 9
    602 ....................................................................................................... passim
    701 ............................................................................................. 2, 7, 11, 12
    801(2)(d) .................................................................................................. 2
    801(c)(2) .............................................................................................. 1, 6
    801(d)(2)(D) ...................................................................................... passim
    803(6) .................................................................................................. 9, 13
    803(6)(A) ............................................................................................ 9, 13
    803(6)(B) ............................................................................................ 9, 13
    803(6)(C) ............................................................................................ 9, 13
    803(6)(E) ............................................................................................ 9, 13
    901 .......................................................................................................... 3
    902(2) ...................................................................................................... 6

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

Defendants have objected to the Declaration of Thomas Nolan in Support of Plaintiffs' Objections to the Special Master's Staffing Report ("Nolan Decl."). *See* Defs.' Evidentiary Objections, Apr. 13, 2017, ECF No. 5600 ("Defs.' Objections"). In their evidentiary objections, Defendants assert that portions of paragraphs 14, 18, 20-25 of the Nolan Declaration should be stricken for lack of personal knowledge and/or the presence of hearsay, and that Exhibits D and F should be stricken in their entirety because they are either misleading or contain hearsay. Defendants' objections are inapt and should be overruled by the Court, for the reasons set forth below.

## I.    DEFENDANTS' EVIDENTIARY OBJECTIONS ARE UNFOUNDED AND MUST BE OVERRULED

The three general objections made by Defendants to the Nolan Declaration are without merit.

<u>First</u>, Defendants assert that Exhibit D, a chart prepared by Plaintiffs' counsel setting forth psychiatrist and physician staffing vacancies by institution, should be stricken. Defendants argue that one of the columns in the chart, which sets forth the base staff psychiatrist staffing rate for each institution, is an incomplete and misleading measure of the psychiatrist staffing picture at each institution because it excludes registry and telepsychiatry positions. *See* Defs.' Objections at 8:12-9:6. Defendants themselves mischaracterize Exhibit D, however, as Plaintiffs also provide, in the same chart, the allegedly "more complete" measure of staffing that Defendants prefer, as discussed in Part II.A, *infra*. In fact, full-time psychiatric staff members who work on site at an institution *are* different from registry and telepsychiatry staff. There is nothing deceptive or misleading about tracking and reporting on psychiatrist staffing in this way.

<u>Second</u>, as set forth in Part II.B, *infra*, Defendants' objection to Exhibit F, an anonymous survey of CDCR psychiatrists conducted by their union, must be rejected because the statements in the survey are not offered for the truth of the matter asserted, but rather to show the low morale and the perceptions of underpayment and harsh working conditions held by CDCR psychiatrists. *See* Fed. R. Evid. 801(c)(2)

1  (requirement that to be hearsay, the evidence in question must be offered "to prove the

2  truth of the matter asserted"); *Cameron v. Community Aid for Retarded Children, Inc.*,

3  335 F.3d 60, 65 (2nd Cir. 2003) (statements revealing state of mind of key actor not

4  hearsay because not offered for the truth of the matter asserted).  Moreover, to any extent

5  that these statements *are* offered for the truth of the matters asserted, they constitute party

6  admissions because they are made Defendants' "agent or employee on a matter within the

7  scope of that relationship and while it existed."  Fed. R. Evid. 801(2)(d); *see Wilkinson v.*

8  *Carnival Cruise Lines, Inc.*, 920 F.2d 1560, 1565 (11th Cir. 1991) (even non-managerial

9  employee's statements considered within scope of rule if made within the course of

10 employment and concerning matters relating to the employment, because"[t]he positions

11 of the individual in the so-called corporate hierarchy is not in and of itself determinative

12 of an 801(d)(2)(D) type of issue").

13      Third, Defendants object to various statements in Mr. Nolan's declaration

14 describing case-related telephone calls and in-person conversations with Defendants and

15 the Special Master.  *See* Defs.' Objections at 11:14-22:6.   However, as described in Part

16 II.C below, the relevant sections of Mr. Nolan's Declaration are all permissible under

17 Federal Rules of Evidence 602 and 701 because they constitute lay testimony based on

18 Mr. Nolan's direct perceptions.  They are also helpful to the Court in determining facts at

19 issue in this briefing.  Further, as they report on statements made by Defendants, they are

20 further admissible into evidence as exceptions to the hearsay rule.  *See* Fed. R. Evid.

21 801(d)(2)(D) (statement is not hearsay when "offered against an opposing party" and

22 "was made by the party's agent or employee on a matter within the scope of that

23 relationship and while it existed.").

24 \\

25 \\

26 \\

27 \\

28

## II.    RESPONSES TO SPECIFIC OBJECTIONS

### A.    Exhibit D to the Nolan Declaration Is Admissible Evidence and Is Highly Relevant and Probative of Defendants' Current Staffing Situation

Defendants object to the chart attached as Exhibit D to the Nolan Declaration. That chart, which was prepared by a paralegal under the supervision of Plaintiffs' counsel, sets forth psychiatrist staffing rates and physician staffing rates at different CDCR prisons.  Plaintiffs have laid a clear and concise foundation authenticating Exhibit D and have provided copies of all of the underlying monthly statistical documents (all originally produced by Defendants).  *See* Nolan Decl., ECF No. 5590-1, ¶ 7, Exs. D, P; *see also* Fed. R. Evid. 602, 901.  Exhibit D is derived directly and accurately from data in Defendants' own reports, pulling data from the different tables to organize the data and adding only a very simple percentage calculation.

Citing Federal Rule of Evidence 403, Defendants object to the second column of Chart D, entitled "Psychiatrist Staffing Rate (Line)."  Defendants assert that this column "has no probative value and only serves to mislead the court because it only includes on-site, civil service psychiatrists in its calculations."  Defs.' Objections at 8:17-19. Defendants argue that "[t]rue staffing levels should be based on all psychiatrists, including on-site civil service, on site registry (contract), and telepsychiatrists serving an institution."  *Id*. at 8:19-21.  Defendants then acknowledge that Plaintiffs also provided the very data they argue constitutes "true staffing levels" in the third column of Exhibit D.  *Id*. at 8:21-22.  But Defendants then assert that "even this column is suspect," citing as an example the fact that the percentage staffing level for all psychiatrists at CCWF is even lower than the staffing level for just "line" (or "staff") psychiatrists at CCWF, which Defendants state "should not be possible."  *Id*. at 8:22-24.  As explained below, it is possible and the data in the chart is accurate and correct.

As required to authenticate Exhibit D under Federal Rules of Evidence 602 and 901, the manner in which the data in Exhibit D was assembled is clearly described in Mr. Nolan's Declaration in Paragraph 7.  *See* Nolan Decl. ¶ 7.  As explained in Paragraph 7,

1  for the CDCR institutions that use telepsychiatrists, Exhibit D is based on a one-page

2  CDCR report that is Exhibit 1k from the CDCR's January 2017 *Coleman* Monthly

3  Report, which is itself attached to the Nolan Declaration as part of Exhibit P.  *See* Nolan

4  Decl., ECF No 5590-1, at ECF page 425.  The one-page Exhibit 1k to the *Coleman*

5  monthly report is entitled "Mental Health Telepsych Allocated and Filled Positions

6  Report," and it contains the raw numbers for the calculations for most of the prisons set

7  forth in Exhibit D.[1]

8       Defendants' monthly report (Exhibit 1k) breaks out allocated and filled "site

9  positions" for staff psychiatrists in the same manner as Plaintiffs' Exhibit D.  If this was

10  an unimportant or misleading statistic, Defendants would not include this information as a

11  separate column in their own monthly psychiatrist staffing summary charts.  Moreover,

12  Defendants' assertion that the third column in Plaintiffs' Exhibit D (the column on

13  psychiatrist staffing including contract and telepsychiatry positions) "is suspect as well"

14  is remarkable, since that column reproduces the percentage numbers exactly from

15  Defendants' monthly data Exhibit 1k (itself included in Exhibit P to the Nolan

16  Declaration) for the 20 institutions using telepsychiatry, including for CCWF.

17       And Defendants' assertion that the greater vacancies for all psychiatrists than for

18  line psychiatrists at CCWF "should not be possible" is also incorrect.  Exhibit 1k to

19  Defendants' monthly staffing report for January 2017 indicates that CCWF has 11.0

20  allocated on site staff psychiatrist positions, and 7.0 of those positions are filled – hence

21  Plaintiffs divided 11.0 by 7.0 to obtain the 64% "line" psychiatry staffing rate set forth in

22  Exhibit D.  *See* Nolan Decl., ECF No. 5590-1 at Ex. ("Allocated and Filled

23  Telepsychiatry Positions – January 2017"), ECF page no. 425.  Exhibit 1k also includes

24  _____

25  [1] For the remaining institutions that do not use any telepsychiatrists and thus are not

26  covered in Defendants' Monthly Report Exhibit 1k, Plaintiffs used staff psychiatrist data from the more voluminous Exhibit 1f to the Monthly *Coleman* Report.  *See* Nolan Decl. at

27  4:11-16 (explaining the use of data from 1f "to gather data on the vacancy rates for institutions that do not have telepsychiatrists assigned to cover them").

28

allocated and filled telepsychiatrist positions for CCWF, and contract/registry usage for CCWF. *Id*. In this regard, it indicates that CCWF did not use any registry (contract) psychiatrists for the period in question. *Id*. It also indicates CCWF was allocated 2.0 telepsychiatry positions but only used 0.5 telepsychiatrists during the period. *Id*. Adding the telepsychiatry staffing allocations and the staff psychiatrist allocations together yields 13.0 positions, out of which only 7.5 were filled (which is a 58% fill rate). That is the reason why including telepsychiatry somewhat surprisingly reduces the staffing rate for CCWF from 64% to 58% -- more telepsychiatry vacancies than filled telepsychiatrist positions are added.

The Court must also reject Defendants' unfounded assertion that Exhibit D "conspicuously confuses critical information – it omits registry psychiatrists and telepsychiatrists to emphasize understaffing at particular institutions." Defs' Objections at 5:14-15. In actuality, as made clear in the discussion above, Exhibit D contains two clearly labeled columns for psychiatrist staffing levels, one of which gives the staff psychiatrist vacancy rate, and a second column which gives the vacancy rate for all psychiatrists including telepsychiatrists and registry psychiatrists. *See* Nolan Decl. ¶ 7 & Ex. D. There is nothing deceptive or misleading about providing both figures. Full-time civil service staff psychiatrists present at a given institution have unique value for a mental health program. First, unlike contractors, they do not work part time, thus enhancing continuity of care. Second, unlike telepsychiatry clinicians, they are physically present on site to work with class members during psychiatric emergencies or when telephone and video communications may be unavailable, and are not subject to the clinical limitations outlined by the Special Master in his staffing report. *See* 2/06/17 Special Master's Staffing Report, ECF No. 5564, at 17 (discussing benefits of on-site psychiatrists over telepsychiatrists, including "ability to discern nonverbal behavior," and being "able to more positively impact the therapeutic milieu by regularly interacting with correctional, nursing and other mental health staff.").

1    There is nothing misleading or deceptive about Exhibit D and the Court should

2   overrule Defendants' evidentiary objections directed to this Exhibit.

3   **B.    Exhibit F to the Nolan Declaration Is Not Offered for the Truth of the
           Matters Asserted and Would Constitute a Party Admission in Any
4          Event**

5    Defendants' next objection is to Exhibit F to the Nolan Declaration, which is a

6   letter from the President of the Union of American Physicians and Dentists dated

7   March 20, 2017.  *See* Nolan Decl. ¶ 10; Ex. F at 25 (ECF pagination).  The self-

8   authenticating letter, on the official stationary of the union and signed by the president of

9   the union, explains that it is enclosing, among other things, results from two anonymous

10  surveys of CDCR psychiatrists, one from December of 2016 and a second from March of

11  2017.  *See* Fed. R. Evid. 902(2). The letter also explains that 64 CDCR psychiatrists

12  responded to the survey from December of 2017.  *Id*.  The materials from the surveys

13  attached to the letter also include comments from numerous psychiatrists about job-

14  related issues.  *Id*.

15   Defendants provide no evidence in support of their spurious – and wholly

16  inaccurate -- assertion that "plaintiffs apparently solicited" this letter and the attached

17  materials from the union.  *See* Defendants' Reply to Plaintiffs' Objections and Request

18  for Additional Relief, ECF No. 5601 at 6:10-11.  Moreover, Defendants' objections to

19  this evidence as hearsay are misplaced because this evidence is not offered for the truth of

20  the matter asserted.    Rather, Exhibit F is evidence concerning the state of mind of CDCR

21  psychiatrists.  *See* Fed. R. Evid. 801(c)(2) (requirement that to be hearsay, the evidence in

22  question must be offered "to prove the truth of the matter asserted"); *Cameron v.*

23  *Community Aid for Retarded Children, Inc.*, 335 F.3d 60, 65 (2nd Cir. 2003) (statements

24  revealing state of mind of key actor not hearsay because not offered for the truth of the

25  matter asserted).

26   These survey comments and responses, whether or not they are objectively true,

27  are indicative of and highly probative of the mental state of the CDCR psychiatrists who

28  filled them out.  They show that many psychiatrists who filled out the survey comments

1    sections are unhappy employees who clearly believe they are underpaid and overworked.

2    They also reflect a sense among this population that conditions are getting worse. *See*

3    *generally* Nolan Decl. ¶10 & Ex. F.  Thus, this evidence is highly relevant to the

4    persistent nature of the psychiatrist staffing problem, and support the possibility that

5    psychiatrist staffing in the CDCR will continue to worsen in the coming months and

6    years.

7         Defendants object to Exhibit F as hearsay in that it is "an unsworn statement from

8    a third party opining about this litigation."  Defs.' Objections at 9:14-15.  But in fact, the

9    relevant evidence cited in these materials are statements responding to the attached

10   surveys from CDCR psychiatrists – not from third parties.  Because the psychiatrists are

11   CDCR employees, even if the Court finds that the statements are offered for the truth of

12   the matters asserted, their statements are admissible as the statements of an opposing

13   party.  The Federal Rules of Evidence exclude statements from the employees of an

14   opposing party from the hearsay rule.  *See* Fed. R. Evid. 801(d)(2)(D); *see also,*

15   *Wilkinson v. Carnival Cruise Lines, Inc.*, 920 F.2d 1560, 1565 (11th Cir. 1991) ("[t]he

16   position of the individual in the so-called corporate hierarchy is not in and of itself

17   determinative of an 801(d)(2)(D) type of issue").

18        **C.    Responses to Objections to Portions of Paragraphs 14, 18, 20-25**

19        Defendants contend that portions of Mr. Nolan's Declaration must be stricken

20   because he has not been designated as an expert.  *See* Defs.' Objections at 6:12-7:2.  This

21   argument misses the mark.  Mr. Nolan's testimony is not offered as expert testimony.

22   Rather, it is based on his own experiences as a lawyer working on this case, and the

23   relevant paragraphs of his declaration are based on his own perceptions during conference

24   calls or meetings with Defendants or based on review of contemporaneous records of

25   those meetings.  *See United States v. Beck*, 418 F.3d 1008, 1015 (9th Cir. 2005)

26   (testimony admissible "within the meaning of Rule 701 where it is based upon personal

27   observation and recollection of concrete facts" (internal quotation marks omitted)).

28   \\

1

2      Response to Objections to Paragraph 14

3      Defendants move to strike the statements in paragraph 14 of Mr. Nolan's

4  Declaration concerning the receipt of letters by his office from prisoners at CSP-Los

5  Angeles County complaining about care there. *See* Defs.' Objections at 11:14-13:2;

6  Nolan Decl. ¶ 14. These statements are based on Mr. Nolan's personal review of and

7  knowledge regarding the letters in question. Moreover, these letters are not offered to

8  show the truth of the matters asserted in the letters, but rather to show that Mr. Nolan has

9  experienced a large volume of class members writing to Plaintiffs' counsel with a

10  concerned state of mind with respect to psychiatrist vacancies and related issues. *See*

   Nolan Decl. ¶ 14.

11     Response to Objections to Paragraph 18

12     Defendants also moved to strike statements in Paragraph 18 of the Nolan

13  Declaration. That paragraph contains descriptions of party statements made by

14  Defendants during a conference call in which Mr. Nolan participated on March 27, 2016.

15  Mr. Nolan indicates that he "participated in a conference call with Plaintiffs' counsel,

16  Defendants, the Special Master, and members of the Special Master's team on Monday

17  afternoon, March 27, 2017." Nolan Decl. ¶¶ 15-18. Thus, it clear that he has personal

18  knowledge of the statements that were made by Defendants during the call about

19  psychiatrist pay and the hiring-above-minimum process. Those party statements are

20  themselves admissible under the exception to the hearsay rule for opposing party

21  statements. *See* Fed R. Evid. 801(d)(2)(D).

22     Response to Objections to Paragraph 20

23     Defendants also object to Paragraph 20 of Mr. Nolan's Declaration. That

24  paragraph discusses the current staffing crisis at Salinas Valley State Prison ("SVSP"),

25  and conveys information obtained from Defendants during recent calls with the parties

26  and the Special Master about conditions at SVSP. *See* Nolan Decl. ¶ 20. Defendants are

27  correct that Mr. Nolan's knowledge about these calls comes from contemporaneous

28  memos written by co-counsel and conversations with co-counsel. However, the

1  information he is recounting about those calls -- that there is a crisis in the mental health

2  program at SVSP "in part due to severe staffing shortages there" -- is based on multiple

3  statements by Defendants in the call that were recorded in memos and e-mails by co-

4  counsel concerning the calls.  Defendants' statements on the calls about the staffing

5  problems at SVSP are themselves admissible as an exception to the hearsay rule for party

6  statements and admissions.  *See* Fed R. Evid. 801(d)(2)(D).  Mr. Nolan's reliance on the

7  memos of co-counsel is likewise allowable because those documents are business

8  records, and Federal Rule of Evidence 803(6) provides an exception to the hearsay rules

9  for just these types of regularly conducted activities.  *See* Fed. R. Evid. 803(6).  Law

10  firms, including Rosen Bien Galvan & Grunfeld, LLP, routinely keep contemporaneous

11  notes of their calls with opposing counsel and Special Masters, and the notes are made by

12  individuals on the calls with personal knowledge of the content of the notes.  *See* Fed. R.

13  Evid. 803(6)(A), 803(6)(B), & 803(6)(C).  Tellingly, Defendants do not dispute the

14  substance of this paragraph or otherwise argue that this information is unreliable.  *See*

15  Fed. R. Evid. 803(6)(E).

16          Defendants also ask the Court to strike Mr. Nolan's statement in this paragraph

17  that "there is only one full-time on site psychiatrist [at SVSP] out of its total 13 allocated

18  psychiatrist positions."  *See* Defs.' Objections at 15:8-10.  Defendants assert that this "is

19  incorrect because it misleads the reader to believe there was only one psychiatrist serving

20  the institution." *Id.* at 15:9-10.  Defendants assert that in fact there are 5.8 psychiatrists

21  serving the institution, citing Exhibit N to the Nolan Declaration (ECF 5590-1 at 413) for

22  this number.  *Id.*  Defendants' objection that this evidence is barred under Federal Rule

23  of Evidence 403 must be rejected.  First, the chart in Exhibit N confirms that there is only

24  one full-time on-site staff psychiatrist at SVSP (actually it says there are 1.3 staff

25  psychiatrists, a number that is hard to interpret but presumably indicates some part time

26  workers).  *See* Nolan Decl. Ex. N, at ECF p. 413.  The chart also indicates that, including

27  telepsychiatrists and a 20% time registry worker, there are a total of 5.8 psychiatrists

28  serving SVSP out of a total of 13 positions, a fill rate of 44%.  *See id.*  Put another way, it

1  shows that 56% of the allocated psychiatrist positions are vacant.  It also remains true that

2  only one of those 5.8 individuals serving SVSP as psychiatrists is an on-site civil service

3  staff psychiatrist, as stated in the Nolan declaration.  There is nothing misleading about

4  Plaintiffs' presentation of the staffing data about SVSP and the Court should overrule

5  Defendants' evidentiary objections to this paragraph.

6      Response to Objections to Paragraph 21

7      Defendants also object to Paragraph 21 of Mr. Nolan's Declaration, which recounts

8  a conversation with co-counsel at the Prison Law Office about the significant role of the

9  Receiver and *Plata* Plaintiffs' Counsel in obtaining the 15% recruitment and retention

10 bonuses provided to all physicians in the CDCR except for psychiatrists.  Defendants

11 object to this for lack of personal knowledge, citing Federal Rule of Evidence 602.  This

12 evidence is offered not for the truth of the matter asserted, but only to report the perception

13 of *Coleman* co-counsel, who also works on the *Plata* case, about this pay raise.  Mr. Nolan

14 does have personal knowledge of the conversation with his co-counsel conveying this

15 perception.  Defendants once again do not dispute the substance of this paragraph, only the

16 form of the evidence, which is telling.

17     Response to Objections to Paragraph 22

18     Defendants object to Paragraph 22 of the Nolan Declaration, which sets forth a

19 summary of some of the key evidence from Court Expert Lindsay Hayes' most recent audit

20 of suicide prevention efforts in the CDCR.  *See* Nolan Decl. ¶ 22 (citing various portions

21 of 1/13/16 Hayes Report, ECF No. 5388, relating to the non-participation of psychiatrists

22 in quality management efforts relating to suicide prevention).  Mr. Nolan also offers his

23 opinion in the paragraph, based on nearly 20 years working on the *Coleman* case,

24 concerning the important role of psychiatrists in the quality management efforts aimed at

25 preventing and reducing suicides.  *Id*.  Defendants do not object to the summaries of

26 evidence from Mr. Hayes' report, including a quoted statement from Mr. Hayes' report

27 that "the lack of psychiatric leadership in suicide prevention remains problematic." *Id*.

28 (citing Hayes Report, ECF No. 5388, at 25).  Those summaries are the main purpose of

1    this paragraph.  Whatever weight Mr. Nolan's statement about the importance of

2    psychiatric participation in suicide prevention efforts is due as the lay opinion of an

3    experienced lawyer working on the *Coleman* case, it is helpful and clearly based on his

4    substantial experiences working on these issues in this case. *See* Fed. R. Evid. 701.

5    Moreover, the Court's expert has essentially said the same thing, as quoted by Mr. Nolan

6    in the same paragraph.  *Compare* Nolan Decl. ¶ 22 *with* 1/13/16 Hayes Report, ECF No

7    5388, at 25 ("the lack of psychiatric leadership in suicide prevention remains

8    problematic.").  Defendants did not object to the statement above in Mr. Hayes' Report.

9            Response to Objections to Paragraph 23

10           Defendants next object to Paragraph 23 of the Nolan Declaration, which recounts

11   statements and information shared by Defendants during a workgroup meeting on July 19,

12   2016 at which Mr. Nolan was present. The statements in question concerned a discussion

13   about psychiatrist vacancies at RJD, where psychiatrist staffing had fallen sharply from 16

14   filled positions to 7.5 positions in a short period of time.  *See* Nolan Decl. ¶ 23.

15   Defendants object to this information as not based on personal knowledge, as hearsay, and

16   as inappropriate to share because the workgroup sessions should be treated as confidential.

17           First, there is no general agreement that conversations at *Coleman* meetings should

18   be kept confidential, and Defendants do not include or cite any such evidence.  Important

19   case information is often shared in such meetings.  Second, Mr. Nolan attended the

20   meeting in question, and thus has personal knowledge making the party statements at the

21   meeting admissible under Federal Rule of Evidence 602, 701 and 801(d)(2)(D).  *See* Fed

22   R. Evid. 602, 701, 801(d)(2)(D).  This information was included to show the difficulty of

23   working in the CDCR and the need to maximize good working conditions, pay and

24   benefits to encourage people to work there.  It is relevant evidence to the issues in the

25   staffing briefing.

26           Response to Objections to Paragraph 24

27           Defendants also object to Paragraph 24 of the Nolan Declaration, which discusses a

28   tour of CDCR telepsychiatry offices in Elk Grove, California, on September 15, 2016,

1   which was attended by Mr. Nolan, counsel for Defendants, and Karen Rea, one of the

2   Special Master's experts.  During this meeting, as Mr. Nolan recounts in the Declaration,

3   two of the telepsychiatrists observed by Mr. Nolan and Ms. Rea acknowledged that before

4   working in Elk Grove, they were staff psychiatrists at nearby institutions.  *See* Nolan Decl.,

5   ECF No. 5590-1, ¶ 24.  Mr. Nolan clearly has personal knowledge of the events that took

6   place on this tour, and counsel for Defendants was also present.  *See* Fed. R. Evidence 602,

7   701.   The statements about working at nearby institutions made by the telepsychiatrists

8   interviewed during the tour that are set forth in Paragraph 24 are also admissible under the

9   exception to the hearsay rule for admissions by a party opponent.  *See* Fed. R. Evid.

10  801(d)(2)(D).   There is no basis for excluding this evidence.

11  <u>Response to Objections to Paragraph 25</u>

12  Defendants' final objection to the Nolan Declaration is to Paragraph 25, which

13  concerns discussions of the "Lift and Shift" proposal to shift management control over

14  DSH-run inpatient treatment facilities inside CDCR prisons to the CDCR.  *See* Nolan

15  Decl. ¶ 25.  Defendants object to Mr. Nolan's description of information gleaned from the

16  collaborative workgroups as lacking personal knowledge.  *See* Defs' Objections at 21:12-

17  15.  However, as to the workgroup meetings, Mr. Nolan clearly indicates he was present

18  for those meetings.  *See* Nolan Decl., ECF 5590-1, ¶ 25 ("I have attended work group

19  meetings last fall, and other meetings and calls in the last six months with Plaintiffs'

20  Counsel, the Special Master and his team of experts and Defendants, where the 'Lift and

21  Shift' proposal […] was discussed.").

22  Defendants also object to a portion of this paragraph where Mr. Nolan discussed a

23  critical admission by Defendants during a conference call meeting on March 9, 2017,

24  when Defendants acknowledged that during town hall meetings about the proposed

25  transfer of control from DSH to CDCR, some psychiatrists indicated they are considering

26  quitting their jobs if the transfer goes forward.  *See* Defs.' Objections at 21:16-23.  Mr.

27  Nolan acknowledges he was not present for these calls and learned about the calls from

28  contemporaneous memos written by co-counsel.  This information is admissible for the

1   same reasons as the information about SVSP in Paragraph 20 of Mr. Nolan's Declaration,

2   discussed above.  Defendants' statements on the calls are themselves admissible as an

3   exception to the hearsay rule for party statements.  *See* Fed R. Evid. 801(d)(2)(D).  Mr.

4   Nolan's reliance on the memos of co-counsel is likewise allowable because those

5   documents are business records, and Federal Rule of Evidence 803(6) provides an

6   exception to the hearsay rules for regularly conducted activities of this nature.  *See* Fed.

7   R. Evid. 803(6).  Law firms, including Rosen Bien Galvan & Grunfeld, LLP, regularly

8   keep notes of their calls with opposing counsel and certainly of calls involving Special

9   Masters and the notes are made by individuals on the calls with personal knowledge of

10  the content of the notes.  *See* Fed. R. Evid. 803(6)(A), 803(6)(B), and 803(6)(C).

11  Tellingly, Defendants do not dispute the substance of this paragraph or otherwise argue

12  that this information is unreliable.  *See* Fed. R. Evid. 803(6)(E).

## III.    CONCLUSION

14       For all of the reasons set forth above, the Court should overrule Defendants'

15  Evidentiary Objections and deny Defendants' Motion to Strike Plaintiffs' Evidence.

16

17  DATED: April 21, 2017            Respectfully submitted,

18                                  ROSEN BIEN GALVAN & GRUNFELD LLP

19

20                                  By:  */s/ Thomas Nolan*

21                                       Thomas Nolan

22                                  Attorneys for Plaintiffs

23

24

25

26

27

28