# Exhibit B

STATE OF CALIFORNIA —DEPARTMENT OF CORRECTIONS AND REHABILITATION                    EDMUND G. BROWN JR., GOVERNOR

**OFFICE OF LEGAL AFFAIRS**
Patrick R. McKinney II
General Counsel
P.O. Box 942883
Sacramento, CA 94283-0001



May 15, 2017

Paul Mello
Hanson Bridgett
1676 N. California Blvd., Suite 620
Walnut Creek, CA 94596

Dear Mr. Mello:

Attached, please find California Department of Corrections and Rehabilitation's May 2017 Status Update for Three-Judge Court proceeding.

Sincerely,

Patrick R. McKinney II
General Counsel, Office of Legal Affairs
California Department of Corrections and Rehabilitation

Attachments



# MAY 15, 2017 UPDATE TO THE THREE-JUDGE COURT

This report reflects CDCR's efforts as of May 15, 2017 to develop and implement measures to comply with the Three-Judge Court's population reduction order. Because this is an evolving process, CDCR reserves the right to modify or amend its plans as circumstances change.

In February and March 2016, CDCR activated 1,584 infill beds and corresponding administrative and health care support facilities at Mule Creek State Prison. In December 2016, CDCR activated an additional 792 infill beds and corresponding administrative and health care support facilities at Richard J. Donovan Correctional Facility. The parties are currently engaged in the Court-ordered meet-and-confer process to reach an agreement on how such capacity should be counted for purposes of determining compliance with the Court's population reduction order. As of May 10, 2017, the State's prison population is approximately 135.0% of design capacity if the 2,376 infill beds are counted at 137.5% for the compliance calculation. If the 2,376 infill beds are counted at 100% for the compliance calculation, the prison population is approximately 136.0% of design capacity.

1. <u>Contracting for additional in-state capacity in county jails, community correctional facilities, private prison(s), and reduction of out-of-state beds:</u>

    Defendants have reduced the population in CDCR's 34 institutions by transferring inmates to in-state facilities.

    a. Private Prison (California City):

       The current population of California City is approximately 2,358 inmates.

    b. Community correctional facilities (CCFs) and modified community correctional facilities (MCCFs):

       The State currently has contracted for 4,218 MCCF beds that are in various stages of activation and transfer.

    c. County jails:

       The State continues to evaluate the need for additional in-state jail bed contracts to house CDCR inmates.

    d. Reduction of inmates housed out-of-state:

       On February 10, 2014, the Court ordered Defendants to "explore ways to attempt to reduce the number of inmates housed in out-of-state facilities to the extent feasible." Since that time, the State has reduced the out-of-state inmate population to 4,272 and has closed the Oklahoma out-of-state facility.

2. <u>Newly-enacted legislation/update on durability:</u>

   In response to the Court's March 4, 2016 Order, Defendants will continue to report on enacted and pending legislation, policies, and construction that will ensure that compliance with the Court-ordered population cap is durable.

   The State continues to implement Senate Bill 260 (2013) and Senate Bill 261 (2015), which allows inmates whose crimes were committed before the age of 23 to appear before the Board of Parole Hearings (the Board) to demonstrate their suitability for release after serving at least fifteen years of their sentence. From January 1, 2014 through April 30, 2017, the Board held 2,859 youth offender hearings, resulting in 742 grants, 1,752 denials, 365 stipulations to unsuitability, and there are currently no split votes that require referral to the full Board for further consideration. An additional 1,556 hearings were scheduled during this time period, but were waived, postponed, continued, or cancelled.

   On October 3, 2015, the State also enacted Senate Bill 230, which provides that life inmates who are granted parole will be eligible for release, subject to applicable review periods, upon reaching their minimum eligible parole date. Life inmates will no longer be granted parole with future parole dates.

   Proposition 36, passed by the voters in November 2012, revised the State's three-strikes law to permit resentencing for qualifying third-strike inmates whose third strike was not serious or violent. As of May 9, 2017, approximately 2,273 third-strike inmates have been released.

   On November 4, 2014, the voters passed Proposition 47, which requires misdemeanor rather than felony sentencing for certain property and drug crimes and permits inmates previously sentenced for these reclassified crimes to petition for resentencing. As of April 30, 2017, approximately 4,678 inmates have been released under Proposition 47.

   On December 16, 2016, the California Secretary of State certified that The Public Safety and Rehabilitation Act of 2016 (the "Act") was passed by the voters.[1] The Act will serve as a durable remedy and gives the State authority to implement many of the court-ordered reforms through regulations. The Act reforms California's juvenile and adult criminal justice systems by: (1) establishing a parole consideration process for convicted non-violent felons upon completion of the full term for their primary offense; (2) expanding current and creating new credit earning programs that authorize CDCR to award credits earned for good behavior and approved rehabilitative or educational achievements, and (3) requiring hearings in juvenile court for all juvenile offenders before they may be transferred to adult court. Initial estimates are that, as a result of the Act, the average daily adult inmate population will be reduced by approximately 2,000 inmates in Fiscal Year 2017-2018, growing to an inmate reduction of approximately 9,500 by Fiscal Year 2020-2021. It is projected that these anticipated reductions will enable the return of all 4,900 inmates from out-of-state facilities by 2020.

   On March 24, 2017, CDCR submitted emergency regulations implementing the parole and credit changes set forth in the Act to the Office of Administrative Law. The Office of

---

[1] Statement of Vote November 8, 2016 General Election (http://elections.cdn.sos.ca.gov/sov/2016-general/sov/2016-complete-sov.pdf)

Administrative Law approved the regulations on April 13, 2017 and on May 1, 2017, Defendants implemented Good Conduct Credits that are awarded to eligible inmates who comply with all prison rules and perform duties as assigned on a regular basis. These regulations codify the court-ordered credit earning increases for non-violent second strike offenders and minimum custody inmates, as well as increase credit earning opportunities all other inmates except the condemned and those serving life without parole. Full details about the expanded credits can be found on CDCR's website at http://www.cdcr.ca.gov/proposition57/. Defendants expect that the Act's remaining credit processes will be implemented in the coming months.

Defendants also intend to implement the Act's non-violent parole on July 1, 2017. The non-violent parole process overlaps significantly with the Court-ordered non-violent second-striker parole process in several substantive respects. For instance, the non-violent parole process uses the same public safety screening criteria and notification procedures for registered victims and prosecuting agencies that CDCR uses for the Court-ordered process. Similarly, the Board of Parole Hearings will apply the same legal standard for reviewing an inmate's suitability for release under the non-violent parole process as is currently used. Defendants expect that an additional 26,000 to 29,000 inmates will be eligible for consideration under the new process. Maintaining both processes will lead to confusion among inmates and require significant overlap and duplication of work by the Board of Parole Hearings and the Department. For these reasons, and because this parole process eliminates the need for the Court's state law waivers, Defendants intend to replace the Court-ordered process on July 1, 2017.

Additionally, CDCR has added 2,376 beds with corresponding administrative and health care support facilities at Mule Creek State Prison and Richard J. Donovan Correctional Facility. CDCR continues to expand community reentry bed usage and is exploring options for increasing reentry bed use, including modifying statutory requirements to enable CDCR to place inmates in reentry facilities up to six months before their release dates, two months earlier than is currently permitted.

As of July 1, 2016, the State is expanding reentry services programming to each of the Department's institutions.[2] This new statewide reentry model will eliminate the need to transfer inmates to designated hub-institutions and allow any inmate with an assessed need for reentry services to access programming at their current institution. CDCR is currently in the process of contracting for services at all institutions.

3. <u>Prospective credit-earning increase for non-violent, non-sex registrant second-strike offenders and minimum custody inmates:</u>

Effective from the date of the Court's February 10, 2014 Order, non-violent, non-sex second-striker offenders are earning credits at the rate of 33.3% (increased from the previous rate of 20%) and are also eligible to earn milestone credits for rehabilitative programs. The State's automated systems have been modified and the court-ordered credits are being automatically applied, including milestone credits. In April, 374 inmates were released as a result of the court-ordered credit increases.[3] These inmates earned an estimated average of 162.1 days of additional credit. Of the 374 inmates released in

---

[2] As a result of the expansion of statewide reentry services, the State has eliminated the reentry hub section of this report.

[3] Of the 374 inmates, 258 were released to Post Release Community Supervision and 116 were released to parole.

3

April, 239 earned milestone completion credits toward their advanced release date. Since April 2014, approximately 8,001 inmates who have been released as a result of this credit measure earned milestone credits toward their advanced release date.

As of January 1, 2015, Defendants expanded 2-for-1 credit earnings for all inmates designated Minimum Custody A or B pursuant to California Code of Regulations Title 15 Section 3377.1 who are currently eligible to earn day-for-day (50%) credits. These credits are being applied prospectively to the 3,464 inmates who are currently eligible under this program. Since January 1, 2015, 15,563 total inmates have been released receiving expanded 2-for-1 earnings.

4. <u>New parole determination process whereby non-violent second-strikers will be eligible for parole consideration by the Board once having served 50% of their sentence:</u>

    Classification committees are reviewing inmates for eligibility and referring them to the Board. From January 1, 2015 through April 30, 2017, 12,059 non-violent second-strike inmates were referred to the Board for review for parole. During this time period, the Board approved 3,947 inmates for release and denied release to 4,415 inmates. Many cases are pending review because the 30-day period for written input from inmates, victims, and prosecutors has not yet elapsed. Others are pending review until the inmate is within 60 days of his or her 50 percent time-served date.

5. <u>Parole determination process for certain inmates with indeterminate sentences granted parole with future parole dates:</u>

    As mentioned above, on October 3, 2015, the State enacted Senate Bill 230, which provides that life inmates who are granted parole will be eligible for release, subject to applicable review periods, upon reaching their minimum eligible parole date.

6. <u>Parole process for medically incapacitated inmates:</u>

    The State continues to work closely with the Receiver's Office to implement this measure. The Receiver's Office is continuing to review inmates and is sending completed recommendations to CDCR. Recommendations received from the Receiver's office are reviewed by DAI and referred to the Board for a hearing. As of May 9, 2017, the Board has held 102 medical parole hearings under the revised procedures. An additional 28 were scheduled, but were postponed, continued, or cancelled.

7. <u>Parole process for inmates 60 years of age or older having served at least 25 years:</u>

    The Board continues to schedule eligible inmates for hearings who were not already in the Board's hearing cycle, including inmates sentenced to determinate terms. From February 11, 2014 through April 30, 2017, the Board has held 1,966 hearings for inmates eligible for elderly parole, resulting in 505 grants, 1,311 denials, 150 stipulations to unsuitability, and there currently are no split votes that require further review by the full Board. An additional 893 hearings were scheduled during this time period but were waived, postponed, continued, or cancelled.

8. <u>Reentry programs:</u>

    Contracts for the San Diego, San Francisco, Los Angeles, Kern County, and Butte County reentry programs are in place. The State continues to review and refer eligible

inmates for placement consideration.  As of May 10, 2017, 486 inmates are housed in reentry facilities.

9.   Expanded alternative custody program:

The State's expanded alternative custody program for females, Custody to Community Transitional Reentry Program (CCTRP), provides female inmates with a range of rehabilitative services that assist with alcohol and drug recovery, employment, education, housing, family reunification, and social support.  Female inmates in the CCTRP are housed at facilities located in San Diego, Santa Fe Springs (LA), Bakersfield, and Stockton.  As of May 10, 2017, 315 female inmates are participating in the CCTRP.