1   XAVIER BECERRA
    Attorney General of California
2   WILLIAM C. KWONG
    Acting Senior Assistant Attorney General
3   DANIELLE F. O'BANNON
    JAY C. RUSSELL
4   Supervising Deputy Attorneys General
    ELISE OWENS THORN, State Bar No. 145931
5   CHRISTINE M. CICCOTTI, State Bar No. 238695
    CHAD STEGEMAN, State Bar No. 225745
6   Deputy Attorneys General
      1300 I Street, Suite 125
7     P.O. Box 944255
      Sacramento, CA 94244-2550
8     Telephone:  (916) 324-4921
      Fax:  (916) 324-5205
9     E-mail:  Elise.Thorn@doj.ca.gov
    *Attorneys for Defendants*

10

11              IN THE UNITED STATES DISTRICT COURT

12           FOR THE EASTERN DISTRICT OF CALIFORNIA

13                     SACRAMENTO DIVISION

14

| | |
|---|---|
| 15  **RALPH COLEMAN, et al.,** | 2:90-cv-00520 KJM-DB (PC) |
| 16                                  Plaintiffs, | **NOTICE OF APPEAL TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT** |
| 17       **v.** | |
| 18 | Judge:         The Honorable Kimberly J. Mueller |
| 19  **EDMUND G. BROWN JR., et al.,** | Action Filed:  Aug. 23, 1990 |
| 20                                  Defendants. | |

21

22          Defendants appeal from this Court's Order of April 19, 2017 (ECF No. 5610), which

23   requires "full and permanent compliance with Program Guide timelines for transfer of inmate-

24   patients to acute and intermediate care facility programs."  Defendants remain strongly committed

25   to providing inmate-patients with timely access to inpatient and other appropriate care for serious

26   mental-health needs.  They also intend to comply with the obligations outlined in the appealed

27   order—in cooperation with the Court, Special Master, and Plaintiffs—and do not anticipate

28   seeking any stay pending appeal.

                                        1

1    However, the Order raises important underlying legal issues that are essential to properly

2  litigating this complex and ongoing remedial class action, and that must be pursued on appeal

3  now in order to obtain clarity and avoid a risk of procedural forfeiture.  Defendants also appeal

4  from all earlier, nonfinal orders that produced the Order and are thereby merged with it.  *See Am.*

5  *Ironworks & Erectors Inc. v. N. Am. Const. Corp.*, 248 F.3d 892, 897 (9th Cir. 2001).

6

7  Dated:  May 19, 2017                              Respectfully submitted,

8                                                    XAVIER BECERRA
                                                     Attorney General of California
9                                                    DANIELLE F. O'BANNON
                                                     Supervising Deputy Attorney General

10                                                   /s/ *Elise Owens Thorn*

11                                                   ELISE OWENS THORN
                                                     Deputy Attorney General
12                                                   *Attorneys for Defendants*

13  CF1997CS0003
    Notice of Appeal.doc
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

# ATTACHMENT

# ECF NO. 5610
# ORDER

1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   RALPH COLEMAN, et al.,                    No.  2:90-cv-0520 KJM DB P

12              Plaintiffs,

13        v.                                   ORDER

14   EDMUND G. BROWN, JR., et al.,

15              Defendants.

16

17

18              In an order filed March 24, 2017, this court directed defendants to show cause in

19   writing why they should not be required to come into full and permanent compliance with

20   Program Guide[1] timelines for transfer to acute and intermediate care facility (ICF) mental health

21   care by May 15, 2017.  ECF No. 5583 at 2, 25.  The court also directed the parties to brief why

22   defendants should not be required to comply with the Program Guide twenty-four hour timeline

23   for transfer to mental health crisis beds (MHCBs) by the same date and, if so, whether full or 90

24   percent compliance across all California Department of Corrections and Rehabilitation (CDCR)

25

26            [1] The Mental Health Services Delivery System Program Guide, 2009 Revision, is the
     operative remedial plan in this action. *See Coleman v. Brown*, 938 F. Supp. 2d 955, 961 (E.D.
27   Cal. 2013).  It is called, variously, the Program Guide or the Revised Program Guide.  References
     in this order to the "Program Guide" or the "Revised Program Guide" are to this document.
28

                                           1

1     institutions should be required. *Id.* at 2. Finally, the court directed the parties to brief how such

2     orders, if made, should be enforced as well as whether monetary sanctions are an appropriate

3     remedy for non-compliance with such orders. *Id.* The parties have timely filed the briefs

4     required by the March 24, 2017 order. *See* ECF Nos. 5593, 5595.

5     I.     BACKGROUND

6          The background and history contained in the March 24, 2017 order is incorporated

7     by reference in this order. *See* ECF No. 5583 at 2-8. The issue currently before the court is

8     enforcement of provisions of defendants' plan to remedy Eighth Amendment violations in the

9     delivery of mental health care to class members. In relevant part, the Program Guide requires:

10       1.    Any inmate referred to an MHCB be transferred within 24 hours of referral;

11       2.    Any inmate referred to any acute inpatient mental health placement be transferred

12          within ten days of referral, if accepted by Department of State Hospitals (DSH)[2]; and

13       3.    Any inmate referred to any intermediate care mental health placement be transferred

14          within 30 days of referral, if accepted by DSH.

15     Program Guide at 12-1-16. It is well-established that defendants have a constitutional obligation

16     to provide class members with "access to adequate mental health care." *Coleman v. Wilson*, 912

17     F.Supp. 1282, 1301 (E.D. Cal. 1995); *see also Coleman v. Brown*, 938 F.Supp.2d at 981. The

18     time frames for transfer to inpatient care contained in the Program Guide "represent defendants'

19     considered assessment of what is sufficiently 'ready access' to each level of care." *Coleman v.*

20     *Brown*, 938 F.Supp.2d at 981. The court turns first to compliance with the timelines for transfer

21     to acute and ICF inpatient care.

22     II.     ARGUMENTS OF THE PARTIES

23       A.     Plaintiffs' Response

24          In their brief, ECF No. 5593, plaintiffs contend (1) the court should order

25     defendants to come into full and permanent compliance with Program Guide timelines for transfer

26

27          [2] Acceptance of referrals by DSH is governed by standards set out in an Administrative Letter dated November 2015 and offered into evidence at the January 23, 2017 hearing as Plaintiffs' Exhibit A.

28

1   to inpatient care by May 15, 2017; (2) the court's order can and should be enforced through civil

2   contempt proceedings; (3) the court has authority to impose monetary sanctions if necessary to

3   coerce compliance but that defendants must be given an opportunity to reduce or avoid such

4   sanctions through compliance; (4) there is a risk imposition of fines would discourage defendants

5   from referring inmate-patients, or encourage rescission of necessary referrals and therefore

6   "careful reporting and monitoring will be required" if this remedy is chosen; (5) the existing data

7   templates are insufficient to allow enforcement of the court's order; (6) the court should order

8   defendants to come into compliance with Program Guide timelines for MHCBs by May 15, 2017

9   and should require 100 percent compliance; and (7) before enforcing an order requiring

10   compliance with MHCB Program Guide timelines, the court should take additional evidence to

11   determine the obstacles to full compliance and ascertain whether targeted remedial orders are

12   required prior to imposition of monetary sanctions.

13         B.     Defendants' Response

14              1.     Summary

15           Defendants oppose issuance of an enforcement order and consideration of

16   monetary sanctions for non-compliance.  Defendants contend requiring full compliance with

17   Program Guide timelines "is not consistent with the constitutional standard or the Prison

18   Litigation Reform Act."  ECF No. 5595 at 3.  Defendants argue that "whether system-wide

19   constitutional deficiencies exist, does not depend on whether the Court's remedial plan has been

20   fully accomplished.  Rather, the question is whether State officials are deliberately indifferent to

21   serious mental-health needs."  *Id*. at 12.  In a similar vein, they contend requiring full compliance

22   with the Program Guide timelines "is at odds with the constitutional deliberate indifference

23   standard" and therefore should not be the benchmark for imposition of monetary sanctions.  *Id*. at

24   15.

25           Defendants further contend imposition of monetary sanctions would violate the

26   Prison Litigation Reform Act "because such relief extends further than necessary to remedy

27   constitutional violations."  *Id*. at 13.  For the reasons set forth in this order, the court finds that full

28   and permanent compliance with Program Guide timelines for transfer to inpatient care is

1  necessary to remedy constitutional violations identified in this action. The court has found, and

2  defendants have acknowledged, that full and permanent compliance with these timelines is

3  feasible. For that reason, the court finds that continued non-compliance would only be

4  remediable through an order of contempt and imposition of coercive monetary sanctions and,

5  therefore, that such relief, if required, would be necessary to remedy the constitutional violation.

6                                  2.    <u>Analysis</u>

7          Defendants' contentions call for a review of two issues: (1) the role of the

8  deliberate indifference standard at this stage of these proceedings; and (2) the role of the Program

9  Guide in assessing constitutional compliance.

10          Defendants' argument concerning the role of the deliberate indifference standard

11  misses the mark and fails to recognize that the court already has repeatedly addressed and rejected

12  this argument, albeit in different contexts. In denying defendants' 2013 motion to terminate these

13  proceedings, the court considered and rejected an argument made by defendants that they are no

14  longer "deliberately indifferent" to the need to provide constitutionally adequate mental health

15  care and therefore should no longer be subject to court supervision. *See Coleman v. Brown*, 938

16  F.Supp.2d at 988-89. Subsequently, in a 2014 order on plaintiffs' motion for enforcement of

17  court orders and additional relief related to use of excessive force, disciplinary measures, and

18  housing and treatment of class members in administrative segregation units (ASUs) and

19  segregated housing units (SHUs), the court again rejected this argument, holding that

20
21
22          once an Eighth Amendment violation is found and injunctive relief ordered, the focus shifts to remediation of the serious deprivations that formed the objective component of the identified Eighth Amendment violation. *See Coleman v. Brown*, 938 F.Supp.2d at 988. Remediation can be accomplished by compliance with targeted orders for relief or by establishing that the "violation has been remedied in another way." *Id.* To the extent the subjective component of an Eighth Amendment violation remains a relevant inquiry, it is coextensive with proof of ongoing objectively unconstitutional conditions. *Id.* at 989.

23
24
25

26  *Coleman v. Brown*, 28 F.Supp.3d 1068, 1077 (E.D. Cal. 2014).

27          The relevant inquiry at this juncture is what, objectively, is required to achieve

28  complete remediation of the constitutional violation with respect to access to inpatient care.

4

1    Defendants contend compliance with the Program Guide "should not measure whether defendants

2    have discharged their constitutional obligations to provide adequate mental health treatment to

3    inmate-patients" and that "[i]nstead, the Court should assist the Defendants by declaring

4    standards for system-wide performance that must be met to satisfy the Eighth Amendment.

5    Substantial compliance with the Program Guide, based on system-wide performance, should be

6    the standard." ECF No. 5595 at 12-13.

7            In the 2013 order cited by defendants in their brief, the court discussed the role of

8    the Program Guide in assessing defendants' compliance with the Eighth Amendment. The court

9    did so in the context of "defendants' pervasive objection that the Special Master is not

10   monitoring with reference to a constitutional standard," addressing what it described as "the

11   fallacy" in that objection. ECF No. 4361 at 6. In particular, the court described at length the

12   development of the Program Guide and its relationship to the requirements of the Eighth

13   Amendment. *Id*. at 4-6. As the court wrote, the Program Guide "represents *defendants*'

14   considered assessment, made in consultation with the Special Master and his experts, and

15   approved by this court, of what is required to remedy the Eighth Amendment violations identified

16   in this action and meet their constitutional obligation to deliver adequate mental health care to

17   seriously mentally ill inmates." *Id*. at 3 (emphasis in original). In that context, the court found

18   that because the Program Guide "is grounded in the requirements of the Eighth Amendment as

19   they have been developed in the context of this action, *see Coleman v. Wilson*, 912 F.Supp. 1282,

20   1301 (E.D. Cal. 1995), the Special Master's Report to the court on defendants' compliance with

21   the provisions of the . . . Program Guide is also grounded in the requirements of the Eighth

22   Amendment. . ." *Id*.

23           In the present context, the transfer timelines in the Program Guide reflect

24   defendants' considered assessment of how to fulfill their constitutional obligation to provide class

25   members with "ready access" to inpatient mental health care – an assessment accepted and

26   blessed by the court. *See* ECF No. 5583 at 14 (quoting *Coleman v. Brown*, 938 F.Supp.2d at 981,

27   in turn quoting *Hoptowit v. Ray*, 682 F.2d 1237, 1253 (9th Cir. 1982)). Compliance with those

28   timelines is a necessary part of a complete remedy in this action.

III.    COMPLIANCE WITH ACUTE AND ICF TIMELINES

       The history of problems with access to inpatient care and their sequelae, laid out several times and most recently in the court's March 24, 2017 order, *see* ECF No. 5583 at 4-6, shows clearly that full and permanent elimination of waitlists for inpatient care that exceed Program Guide timelines is necessary to provide constitutionally adequate access to inpatient mental health care for class members.  That history, and the record before the court, also demonstrate that issuance of a specific order requiring full and permanent compliance with Program Guide timelines, subject to clearly defined exceptions to be developed through a meet and confer process and incorporated as an addendum in the Program Guide,[3] is necessary to achieve remediation of this aspect of the Eighth Amendment violation in this case.  The options available to defendants for achieving this compliance are described in the March 24, 2017 order and incorporated by reference in this order.  *See* ECF No. 5583 at 8-21.

    A.    Full Compliance by May 15, 2017 Deadline

       In their response to the March 24, 2017 order, defendants represent that by May 15, 2017, there will be no inmate-patients waiting beyond Program Guide timelines for transfer to inpatient care, *see* ECF No. 5595 at 1, and defendants describe specific steps they will take to achieve this.  *Id.* at 1-2.  Defendants contend these circumstances, together with additional steps they are taking to achieve permanent elimination of waitlists for inpatient care that exceed Program Guide timelines, obviates the need for court intervention.  *Id.* at 3.  Defendants ignore the lengthy history, laid out in the March 24, 2017 order, of repeated re-emergence of large numbers of inmate-patients waiting well past Program Guide timelines for transfer to inpatient care and, as recently as six years ago, for identification and referral for such essential mental

---

[3] The Special Master has informed the court that the parties are in the preliminary stages of updating the Program Guide to incorporate modifications required by court orders issued since March 2006, when the court gave final approval to most of the Program Guide.  The court encourages development and implementation of a process for the addition of such addenda to the Program Guide, for example through use of so-called "pocket parts."  This process, of course, is not an opportunity to renegotiate matters that have been settled by court order.  Instead, it is a necessary step toward completion of a full and final remedy, with a user-friendly comprehensive Program Guide.

health care.  ECF No. 5583 at 4-7.  Each time, the court has intervened and the Special Master and the parties have expended considerable time and effort assessing the unmet need for care, identifying additional bed capacity, and/or developing new plans to address the continuing constitutional violation evidenced by the waitlists.  As the court made clear in the March 24, 2017 order, this cycle must be broken.  *Id*. at 8.  To that end, the court will enter a specific order requiring defendants, by May 15, 2017, to come into full compliance with Program Guide timelines for transfer of inmate-patients to acute and intermediate care facility programs.

B.     Permanent Compliance

Defendants outline a number of steps they are taking, both in the short term and in the long term, to permanently eliminate waitlists that exceed Program Guide timelines.  *See* ECF No. 5595 at 3-8.   For the reasons set forth in section III(A), the court will also enter a specific order requiring, effective May 15, 2017, permanent compliance with Program Guide timelines for transfer of inmate-patients to acute and intermediate care facility programs.

C.     Clarification Regarding Possible Exclusions

In the March 24, 2017 order, the court signaled its intention, for purposes of enforcement by this court, to exclude from the ten and thirty-day periods in which transfer to inpatient care must occur "any time a class member referred to inpatient mental health care spends in treatment for medical needs deemed more urgent than the mental health need that led to the inpatient referral, or any time a class member spends on out-to-court status pursuant to a court order or subpoena."  *Id*. at 25.  Plaintiffs contend such a blanket exclusion is too broad and based only on a "cursory assertion" by Pamela Ahlin, Director of the Department of State Hospitals. ECF No. 5593 at 9.  Plaintiffs contend (1) defendants should be permitted to make an individualized showing for any inmate-patient held beyond Program Guide timelines; and (2) defendants should continue and complete the referral process for any inmate-patient referred to inpatient mental health care who is also subject to a medical hold or legal proceedings at any step in the process.  *Id*. at 9-10.  Plaintiffs also observe that the monthly bed utilization reports currently filed with the court do not identify medical holds or out-to-court status.  *Id*. at 10.

7

As the court made clear in the March 24, 2017 order, it has no intention of micromanaging defendants in this process.  That said, the record suggests there are circumstances under which time after an inmate-patient has been referred to inpatient mental health care should not be included in the required timelines for transfer to such care.  This in turn, as plaintiffs observe, raises questions about how the referral process should proceed when such circumstances are present.  An addendum to the Program Guide that identifies circumstances under which time after an inmate-patient is referred to inpatient mental health care should be excluded from Program Guide timelines for transfer to such care, and also identifies timelines for completion of the referral process when such circumstances are present, will be necessary going forward.  The parties will be directed to meet and confer under the supervision of the Special Master to develop an addendum to the Program Guide that addresses these matters.  Said addendum shall be completed and submitted to the court for review and final approval within forty-five days.

      D.    Enforcement

Plaintiffs propose "that the Court issue an order setting forth a framework involving monthly reporting and prospective, presumptive fines that may ultimately be avoided through compliance."  ECF No. 5593 at 13.  Under the proposed framework, defendants would be required to track on a daily basis any inmate-patient waiting past Program Guide timelines for transfer to inpatient care and to include this information in their monthly reports to the court.  *Id.* Defendants would be permitted to file sworn declarations attesting to all steps taken to comply with the court's order.  *Id.*  The order would also provide for a fine of up to $1000 per day, per inmate-patient, for each violation, and the fines would be held in abeyance for a period of six months to give defendants the opportunity to "cure, or purge, their non-compliance before the issuance of monetary sanctions."  *Id.* at 14.  Plaintiffs propose that if defendants are not fully compliant with Program Guide timelines starting in May 2017 and continuing for six months, the court hold a contempt hearing consistent with due process requirements.  *Id.*  As discussed above, defendants oppose issuance of an enforcement order as well as enforcement of any such order through contempt proceedings or otherwise.

8

1    As the court noted in the March 24, 2017 order, it is well-established that the court

2  has authority to impose monetary sanctions to compel compliance with its orders.  *See* ECF No.

3  5583 at 26 (citing *U.S. v. United Mine Workers of America*, 330 U.S. 258, 303-04 (1947)).

4    Where the purpose of a fine is to make defendants comply with a
     court order, the court is required to "consider the character and
5    magnitude of the harm threatened by continued contumacy, and the
     probabl[e] effectiveness of any suggested sanction in bringing
6    about the result desired."  *Id*. at 304.  Civil fines "designed to
     compel future compliance with a court order, are considered to be
7    coercive and avoidable through obedience, and thus may be
     imposed in an ordinary civil proceeding upon notice and an
8    opportunity to be heard."  *International Union, United Mine
     Workers of America v. Bagwell*, 512 U.S. 821, 827 (1994).
9

10  ECF No. 5583 at 26.

11    "A court's contempt powers are broadly divided into two categories: civil

12  contempt and criminal contempt. . . .  'The purpose of civil contempt is coercive or

13  compensatory, whereas the purpose of criminal contempt is punitive.'"  *Shell Offshore Inc. v.*

14  *Greenpeace, Inc.,* 815 F.3d 623, 628 (9th Cir. 2016) (*quoting Koninklijke Philips Elecs. N.V. v.*

15  *KXD Tech., Inc.*, 539 F.3d 1039, 1042 (9th Cir. 2008) (internal citation omitted)).  "A court may

16  wield its civil contempt powers for two separate and independent purposes: (1) 'to coerce the

17  defendant into compliance with the court's order'; and (2) 'to compensate the complainant for

18  losses sustained.'"  *Shell Offshore Inc.,* 815 F.3d at 628 (quoting *United Mine Workers of*

19  *America*, 330 U.S. at 303-04).  Due process requires notice and an opportunity to be heard prior

20  to imposition of sanctions for contempt of a court order.  *Lasar v. Ford Motor Co.*, 399 F.3d

21  1101, 1109-10 (9th Cir. 2005).  In addition, "[w]here a fine is not compensatory, it is civil only if

22  the contemnor is afforded the opportunity to purge."  *International Union, United Mine Workers*

23  *of America*, 512 U.S. at 829.  Thus, a civil contemnor must be given an "opportunity to reduce or

24  avoid [a] fine through compliance."  *Id*. (citing *Penfield Co. of Cal. v. SEC*, 330 U.S. 585, 588

25  (1947)).

26    In light of the foregoing principles, the court now notifies defendants that the

27  provisions of this order requiring them to come into full and permanent compliance with Program

28

9

1   Guide timelines for transfer to inpatient care by May 15, 2017 will be enforceable by civil

2   contempt proceedings and, if necessary, imposition of monetary sanctions to coerce compliance.

3           Beginning with their May 15, 2017 Census and Waitlists Report for Inpatient

4   Mental Health Care (monthly report),[4] defendants shall include in the monthly report (1) the total

5   number of inmate-patients, if any, who waited beyond Program Guide timelines for transfer to an

6   acute inpatient mental health care program; (2) the total number of inmate-inpatients, if any, who

7   waited beyond Program Guide timelines for transfer to an ICF mental health care program; (3) the

8   number of days each inmate-patient waited beyond Program Guide timelines; and (4) the total

9   number of inmate-patient wait days for the month (category (1) plus category (2) plus category

10  (3)).  Fines in the amount of $1,000 per inmate-patient per day will begin accumulating on May

11  16, 2017.

12          Pending development of the Program Guide addendum required by this order, *see*

13  Section III(C), *supra*, defendants shall include with their monthly report the total number of

14  inmate-patient days they believe should be excluded from the total reported and an explanation

15  why those days should be excluded.  In addition, defendants shall report to the Special Master on

16  a monthly basis concerning all inmate-patients referred for inpatient care whose referrals are

17  rejected or rescinded and, to the extent defendants do not already provide this information, the

18  reason(s) for the rejections or rescissions.  The Special Master will be directed to report to the

19  court forthwith should there be an appreciable increase in the number of such rejections and/or

20  rescissions.

---

[4] The templates submitted by defendants on March 15, 2017, ECF No. 5577, are approved, with the additions required by this order.  Plaintiffs' objections to the omission of certain templates and data, *see* ECF No. 5582, remain pending before the court and will be resolved by subsequent order.  It is the court's view that, as a general matter, point-in-time data represents at best a partial snapshot of information relevant to remediation of these matters and the additional templates plaintiffs seek would appear to be most useful to defendants as an aid in identification and targeted remediation of any ongoing non-compliance with Program Guide timelines.  In view of the court's decision to proceed with enforcement of the Program Guide timelines, the issue now is whether such trend data needs to be filed with the court.  Again, that will be resolved by subsequent order.

10

This matter will be set for hearing on November 3, 2017 at 10:00 a.m. in Courtroom # 3 for consideration of findings of contempt and requirement of payment of fines that may have accumulated on or after May 16, 2017. If no fines have accumulated, the hearing will be vacated. Given the representations by defendants in their brief concerning the steps they are taking, *inter alia*, to add capacity as well as to ensure appropriate inpatient bed utilization and timely movement of inmate-patients to inpatient programs consistent with the inmates' least restrictive housing (LRH) designations, the court is hopeful that contempt proceedings will not be required and, instead, that defendants will finally achieve full, ongoing, and permanent compliance with this aspect of their remedial plan.

IV.     COMPLIANCE WITH MHCB TRANSFER TIMELINES

The court has also directed the parties to brief whether a court order requiring compliance with Program Guidelines for transfer to MHCBs should require 90 percent compliance across CDCR institutions or 100 percent compliance with defined exceptions as appropriate, and whether a similar order imposing monetary sanctions for violations is an appropriate remedy. *See* ECF No. 5583 at 21-23, 25-26.

After review of the record and the focused briefing by the parties, the court is persuaded that full compliance with the twenty-four hour timeline for transfer to MHCBs is required to satisfy the Eighth Amendment. An inmate in need of an MHCB level of care is, by definition, in a mental health crisis. *See* Program Guide, 2009 Revision, at 12-5-1. As noted above, the twenty-four hour timeline for transfer to an MHCB represents defendants' assessment of what is necessary to meet their Eighth Amendment obligations to inmates in mental health crises. *See* Section II(B)(2), *supra*. As plaintiffs cogently argue, "[t]he Court would not countenance Defendants' failure to timely transfer one out of every ten prisoners suffering a medical crisis to an emergency room; neither should it permit Defendants to fail to timely transfer one out of every ten prisoners undergoing life-threatening mental health crises" to an MHCB. ECF No. 5593 at 19.

While the court intends to issue an enforcement order requiring 100 percent compliance with the twenty-four hour timelines for transfers to MHCBs, subject to exceptions set

11

1    forth in an addendum to be developed as required by this order, the parties both suggest that

2    defendants could not, at present, comply with such an order. Plaintiffs contend additional

3    evidence is required to understand the "extent and root causes of delayed transfers to MHCBs, to

4    ensure that Defendants' system is currently capable of full compliance with the Program Guide's

5    literal transfer timelines requirements, and, if appropriate, to issue further targeted remedial

6    orders subsequent to that hearing and prior to considering monetary sanctions." ECF No. 5593 at

7    21. Plaintiffs present evidence and a number of focused arguments targeting possible

8    explanations for defendants' failure to meet the twenty-four hour transfer timeline for MCHBs, as

9    well as asserted omissions in reporting that would assist in understanding and remedying the

10   delays. *See id*. at 22-25. Defendants state "they need additional capacity to completely address

11   the needs of the class" for MHCB care, and they point to a number of "initiatives" they "have

12   undertaken" as part of a continuing effort to meet the needs of class members who require MHCB

13   care. ECF No. 5595 at 8-10.

14           The data available to the court shows the following. The Fall 2016 population

15   projections forecast a need for this year of 495 male MHCBs and 30 female MHCBs. ECF No.

16   5542-1 at 116, 122. Defendants currently have only 427 male MHCBs and 22 female MHCBs.

17   ECF No. 5577 at 11. These data alone suggest defendants do not presently have sufficient

18   capacity to meet the need for MHCB level of care. Moreover, defendants' reporting to the court

19   does not capture completely the scope of delays. According to defendants' March 15, 2017

20   monthly report, as of February 27, 2017, six male inmates and six female inmates had been

21   waiting more than twenty-four hours for MHCB placement. *Id*. However, the HCPOP report for

22   February 2017 shows that of 671 inmates placed in MHCBs in February 2017, 507 were placed

23   within the twenty-four hour time frame while 164 waited longer than twenty-four hours for

24   placement. A copy of the last page of that report is attached as Exhibit A to this order. The briefs

25   of both parties suggest myriad possible reasons for the ongoing large number of inmates waiting

26   longer than twenty-four hours to be transferred to an MHCB.

27           Good cause appearing, this matter will be set for status conference and, as

28   necessary, evidentiary hearing on August 29, 2017 at 10:00 a.m. The purpose of the status, which

will not exceed one day, will be for the court to take evidence on obstacles to full compliance

with the Program Guide timeline for transfer to MHCBs and targeted remedies for achieving such

compliance.  To facilitate preparation for that hearing, the Special Master shall forthwith convene

a workgroup to focus on outstanding issues related to compliance with the Program Guide

timeline for transfer to MHCBs, including but not limited to (1) use of alternative housing when

an inmate-patient is referred to an MHCB; and (2) any and all obstacles to full compliance with

the twenty-four timeline for transfer to MHCBs.  The purpose of the workgroup meetings are to

identify those issues that must be addressed, to resolve any and all issues the parties can resolve

without court intervention, and to identify any issues that remain for consideration and resolution

by the court.  The workgroup shall also develop an addendum to the Program Guide delineating

exceptions, if any, to the twenty-four hour timelines requirement.

Not later than July 28, 2017, the parties shall file a joint report, approved by the

Special Master, which shall contain (1) a description of issues, if any, resolved by the workgroup

and the substance of agreements reached; (2) a focused and comprehensive list of issues that

remain for resolution by the court; and (3) a list of witnesses and other evidence the parties

propose to offer at the evidentiary hearing.  The court encourages the presentation of declarations

in lieu of direct testimony, as appropriate.  The court will review the submission of the parties and

may modify the scope of the evidentiary hearing.

In accordance with the above, IT IS HEREBY ORDERED that:

1.  On or before May 15, 2017, defendants shall come into full and permanent

compliance with Program Guide timelines for transfer of inmate-patients to acute and

intermediate care facility programs.  This order applies to both male and female inmate-patients.

This order will be enforceable by civil contempt proceedings and, if necessary, imposition of

monetary sanctions to coerce compliance.

2.  The parties shall meet and confer under the supervision of the Special Master

to develop an addendum to the Program Guide that identifies circumstances under which time

after an inmate-patient is referred to inpatient mental health care should be excluded from

Program Guide timelines for transfer to such care and timelines for completion of the referral

13

1 process when such circumstances are present.  Said addendum shall be completed and submitted

2 to the court for review and final approval within forty-five days.

3       3.  Beginning with the May 15, 2017 Census and Waitlists Report for Inpatient

4 Mental Health Care (monthly report), defendants shall include in the monthly report (1) the total

5 number of inmate-patients, if any, who waited beyond Program Guide timelines for transfer to an

6 acute inpatient mental health care program; (2) the total number of inmate-patients, if any, who

7 waited beyond Program Guide timelines for transfer to an ICF mental health care program; (3) the

8 number of days each inmate-patient waited beyond Program Guide timelines; and (4) the total

9 number of inmate-patient wait days for the month (category (1) plus category (2) plus category

10 (3)).  Pending development of the addendum required by paragraph 2 of this order, defendants

11 shall include with their monthly report the total number of inmate-patient days they believe

12 should be excluded from the total reported and an explanation why those days should be

13 excluded.

14       4.  Beginning on or before May 15, 2017, defendants shall report to the Special

15 Master monthly concerning all inmate-patients referred for inpatient care whose referrals are

16 rejected or rescinded and, to the extent defendants do not already provide this information, the

17 reason(s) for the rejections or rescissions.  The Special Master shall report to the court forthwith

18 should there be an appreciable increase in the number of such rejections and/or rescissions.

19       5.  This matter is set for hearing on November 3, 2017 at 10:00 a.m. in Courtroom

20 # 3 for consideration of findings of contempt and requirement of payment of fines that may have

21 accumulated on or after May 16, 2017.  If no fines have accumulated, the hearing will be vacated.

22       6.  This matter is set for status conference and, as necessary, a one day evidentiary

23 hearing on August 29, 2017 at 10:00 a.m. to address achievement of full compliance with the

24 twenty-four hour Program Guide transfer timeline to mental health crisis beds.

25       7.  The Special Master shall forthwith convene a workgroup to focus on

26 outstanding issues related to compliance with the Program Guide timeline for transfer to mental

27 health crisis beds as described in this order.

28

14

8.  Not later than July 28, 2017, the parties shall file a joint report, which shall contain (1) a description of issues, if any, resolved by the workgroup and the substance of agreements reached; (2) a focused and comprehensive list of issues that remain for resolution by the court; and (3) a list of witnesses and other evidence the parties propose to offer at the evidentiary hearing.  The court will accept declarations in lieu of direct testimony, as appropriate. The court will review the submission of the parties and will advise the parties if it is modifying the scope of any evidentiary hearing.

9.  The workgroup convened in accordance with paragraph 7 of this order shall also develop an addendum to the Program Guide that identifies exclusions, if any, to the Program Guide timeline for transfer to mental health crisis bed care.  Said addendum shall be completed and submitted to the court for review and final approval within forty-five days.

DATED:  April 19, 2017.

UNITED STATES DISTRICT JUDGE

MHCB PLACEMENTS BY INSTITUTION AND PRIOR LEVEL OF CARE
FEBRUARY 2017

| Referring Institution | Receiving Institution | Date and Time of Referral | Date and Time of Disposition | Prior LOC | Referral Disposition | Hours to Disposition |
|---|---|---|---|---|---|---|
| WSP-RC | WSP | 02/23/2017 08:42:00 PM | 02/24/2017 12:12:08 PM | CCCMS | Internally Admitted | 15.50 |
| WSP-RC | CHCF | 02/06/2017 08:06:00 AM | 02/06/2017 07:50:00 PM | EOP | Transferred | 11.73 |
| WSP-RC | CHCF | 02/07/2017 08:54:00 PM | 02/08/2017 06:28:00 PM | EOP | Transferred | 21.57 |
| WSP-RC | CHCF | 02/07/2017 12:39:00 PM | 02/07/2017 07:18:39 PM | EOP | Transferred | 6.66 |
| WSP-RC | CHCF | 02/12/2017 07:50:00 PM | 02/13/2017 07:24:29 PM | EOP | Transferred | 23.57 |
| WSP-RC | CHCF | 02/27/2017 02:49:00 PM | 02/27/2017 06:23:00 PM | EOP | Transferred | 3.57 |
| WSP-RC | CHCF | 02/27/2017 02:49:00 PM | 02/28/2017 02:12:00 PM | EOP | Transferred | 23.38 |
| WSP-RC | CHCF | 02/27/2017 07:39:00 PM | 02/28/2017 08:59:00 PM | EOP | Transferred | 25.33 |
| WSP-RC | CHCF | 02/27/2017 12:03:00 PM | 02/27/2017 04:14:50 PM | EOP | Transferred | 4.20 |
| WSP-RC | LAC | 02/03/2017 07:09:00 PM | 02/04/2017 04:25:23 PM | EOP | Transferred | 21.27 |
| WSP-RC | NKSP | 02/16/2017 09:32:00 PM | 02/17/2017 03:50:00 PM | EOP | Transferred | 18.30 |
| WSP-RC | WSP | 02/03/2017 02:11:00 PM | 02/03/2017 03:23:00 PM | EOP | Internally Admitted | 1.20 |
| WSP-RC | WSP | 02/03/2017 12:54:00 PM | 02/03/2017 03:23:00 PM | EOP | Internally Admitted | 2.48 |
| WSP-RC | WSP | 02/08/2017 05:20:00 PM | 02/09/2017 01:18:35 PM | EOP | Internally Admitted | 19.98 |
| WSP-RC | WSP | 02/14/2017 02:05:00 PM | 02/14/2017 04:52:00 PM | EOP | Internally Admitted | 2.78 |
| WSP-RC | WSP | 02/07/2017 05:28:00 PM | 02/08/2017 12:54:03 PM | GP/OP | Internally Admitted | 19.43 |
| **WSP-RC Average** | | | | | | **14.53** |

| SUMMARY OF PLACEMENTS | | | |
|---|---|---|---|
| Time Frames | Total Placements | Average Hours to Disposition | Range for Hours to Disposition |
| Combined | 671 | 21.82 | |
| < or = 24 hours | 507 | 12.40 | |
| > 24 hrs < or = 48 hrs | 124 | 33.92 | 0.02-217.72 |
| > 48 hrs < or = 72 hrs | 15 | 56.52 | |
| > 72 hours | 25 | 132.10 | |

HCPOP
3/14/2017

# ATTACHMENT

# REPRESENTATION STATEMENT

No. _____

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

RALPH COLEMAN, et al.,

                          Plaintiffs-Appellees,

     v.

EDMUND G. BROWN, JR., et al.,

                     Defendants-Appellants.

On Appeal from the United States District Court
for the Eastern District of California

No. 2:90-cv-00520 LKK DAD PC
The Honorable Kimberly J. Mueller, Judge

**REPRESENTATION STATEMENT**

              XAVIER BECERRA
              Attorney General of California
              WILLIAM C. KWONG
              Acting Senior Assistant Attorney General
              THOMAS S. PATTERSON
              DANIELLE F. O'BANNON
              JAY C. RUSSELL
              Supervising Deputy Attorneys General
              ELISE OWENS THORN
              KEVIN A. VOTH
              Deputy Attorneys General
              State Bar No. 257227
               455 Golden Gate Avenue, Suite 11000
               San Francisco, CA  94102-7004
               Telephone: (415) 703-1624
               Fax: (415) 703-5843
               Email:  Kevin.Voth@doj.ca.gov
              *Attorneys for Defendants-Appellants*

The undersigned represents the State Defendants-Appellants in this case—including Edmund G. Brown Jr., Governor of the State of California; Scott Kernan, Secretary of the California Department of Corrections and Rehabilitation; Michael Cohen, Director of the Department of Finance; and Pam Ahlin, Director of the Department of State Hospitals.  Attached is a service list that shows the other parties that are directly interested in this appeal, along with their lead counsels' names, firms, addresses, telephone numbers, and email addresses.  The party listing in the district court's docket (which spans 89 pages in the docket) also includes numerous associated counsel for many parties, as well as additional intervenors, "interested

///

///

///

1

parties," amici curiae, and "miscellaneous" individuals who are not included

on the attached service list.


Dated:  May 19, 2017          Respectfully Submitted,

                              XAVIER BECERRA
                              Attorney General of California
                              WILLIAM C. KWONG
                              Acting Senior Assistant Attorney General
                              THOMAS S. PATTERSON
                              DANIELLE F. O'BANNON
                              JAY C. RUSSELL
                              Supervising Deputy Attorneys General
                              ELISE OWENS THORN
                              Deputy Attorney General


                              */s/ KEVIN A. VOTH*
                              KEVIN A. VOTH
                              Deputy Attorney General
                              *Attorneys for Defendants-Appellants*

SF2013206104
Representation Statement for Notice of Appeal.doc

Service List

| | |
|---|---|
| Michael Bien<br>   (Email: MBien@rbgg.com)<br>Jane E. Kahn<br>   (Email: jkahn@rbgg.com)<br>Jennifer Stark<br>   (Email: jstark@rbgg.com)<br>Krista Michelle Stone-Manista<br>   (Email: kstone-manista@rbgg.com)<br>Lisa Adrienne Ells<br>   (Email: lells@rbgg.com)<br>Margot Knight Mendelson<br>   (Email: mmendelson@rbgg.com)<br>Thomas Bengt Nolan<br>   (Email: tnolan@rbgg.com)<br>Jessica L. Winter<br>   (Email: jwinter@rbgg.com)<br>Michael S. Nunez<br>   (Email: mnunez@rbgg.com)<br>Rosen Bien Galvan & Grunfeld, LLP<br>50 Fremont Street<br>19th Floor<br>San Francisco, CA 94105<br>Phone: (415) 433-6830<br>Fax: (415) 433-7104<br>Email:<br>(Attorney for Plaintiffs) | Donald Specter<br>Prison Law Office<br>1917 Fifth Street<br>Berkeley, CA 94710-1916<br>Phone: (510) 280-2621<br>Fax: (510) 280-2704<br>Email: dspecter@prisonlaw.com<br>(Attorney for Plaintiffs) |
| Aaron Joseph Fischer<br>Disability Rights California<br>1330 Broadway, Ste. 500<br>Oakland, CA 94612<br>Phone: (510) 267-1200<br>Fax: (510) 267-1201<br>Email:<br>aaron.fischer@disabilityrightsca.org | Kimberly Hall Barlow<br>Jones & Mayer<br>3777 N. Harbor Boulevard<br>Fullerton, CA 92835<br>Phone: (714) 446-1400<br>Fax: (714) 446-1448<br>Email: khb@jones-mayer.com |

| | |
|---|---|
| Matthew A. Lopes, Jr.<br>Pannone Lopes & Devereaux LLC<br>317 Iron Horse Way<br>Suite 301<br>Providence, RI 02908<br>Phone: (401) 824-5156<br>Fax: (401) 824-5123<br>Email: mlopes@pldw.com<br>(Special Master) | |

No. _____

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

---

**RALPH COLEMAN, et al.,**

                      Plaintiffs-Appellees,

     **v.**

**EDMUND G. BROWN, JR., et al.,**

                      Defendants-Appellants.

---

**STATEMENT OF RELATED CASES**

    To the best of our knowledge, there are no related cases.

Dated:  May 19, 2017          Respectfully Submitted,

                      XAVIER BECERRA
                      Attorney General of California
                      WILLIAM C. KWONG
                      Acting Senior Assistant Attorney General
                      THOMAS S. PATTERSON
                      DANIELLE F. O'BANNON
                      JAY C. RUSSELL
                      Supervising Deputy Attorneys General
                      ELISE OWENS THORN
                      Deputy Attorney General


                      */s/ KEVIN A. VOTH*
                      KEVIN A. VOTH
                      Deputy Attorney General
                      *Attorneys for Defendants-Appellants*