DONALD SPECTER – 083925
STEVEN FAMA – 099641
MARGOT MENDELSON – 268583
PRISON LAW OFFICE
1917 Fifth Street
Berkeley, California 94710-1916
Telephone: (510) 280-2621

MICHAEL W. BIEN – 096891
JANE E. KAHN – 112239
ERNEST GALVAN – 196065
THOMAS NOLAN – 169692
LISA ELLS – 243657
KRISTA STONE-MANISTA – 269083
JENNY S. YELIN – 273601
MICHAEL S. NUNEZ – 280535
JESSICA WINTER – 294237
ROSEN BIEN
GALVAN & GRUNFELD LLP
50 Fremont Street, 19th Floor
San Francisco, California 94105-2235
Telephone: (415) 433-6830

RANJINI ACHARYA – 290877
K&L GATES LLP
4 Embarcadero Center, Suite 1200
San Francisco, California 94111-5994
Telephone: (415) 882-8200

CLAUDIA CENTER – 158255
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN
CALIFORNIA, INC.
39 Drumm Street
San Francisco, California 94111-4805
Telephone: (415) 621-2493

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al., <br><br>     Plaintiffs, <br><br>     v. <br><br> EDMUND G. BROWN, JR., et al., <br><br>     Defendants. | Case No. 2:90-CV-00520-KJM-DB <br><br> **JOINT REPORT RE SEPTEMBER 28, 2017 EVIDENTIARY HEARING RE: TIMELY MHCB ACCESS** <br><br> Judge: Hon. Kimberly J. Mueller <br><br> Date: September 28, 2017 <br> Time: 10:00 a.m. <br> Crtrm.: 3, 15th Floor |

**INTRODUCTION**

This Court's April 19, 2017 order, ECF No. 5610 ("Order"), addressing Defendants' compliance with Program Guide timelines for transfer to acute, intermediate (ICF), and mental health crisis bed care, ordered the parties to participate in a workgroup convened by the Special Master to "focus on outstanding issues related to compliance with the Program Guide timeline for transfer to mental health crisis beds" and set the issue for "status conference, and, as necessary, a one day evidentiary hearing…to address achievement of full compliance with the twenty-four hour Program Guide transfer timeline to mental health crisis beds." Order at 14. The Court further ordered that "the parties file a joint report," 30 days before the status conference, addressing the following: "1) a description of issues, if any, resolved by the workgroup and the substance of agreements reached; 2) a focused and comprehensive list of issues that remain for resolution by the court; and 3) a list of witnesses and other evidence the parties propose to offer at the evidentiary hearing." Order at 15. Per the Court's order adopting the parties' stipulation, the parties were instructed to file their joint report by August 29, 2017 for the status conference set for September 28, 2017. *See* ECF No. 5656 at 2. The parties hereby submit their joint report.

**I.     ISSUES IDENTIFIED BY WORKGROUP AND SUBSTANCE OF AGREEMENTS REACHED**

The parties met eight times with the Special Master between June 26 and August 29, 2017 pursuant to this Court's Order. Order at 14. Defendants provided their initial plan regarding compliance with timely transfers to mental health crisis beds on June 23, 2017. Plaintiffs responded to the plan on July 6 and July 19, 2017. On July 21, 2017, Defendants responded to Plaintiffs' inquiries and provided additional data for discussion in the all parties workgroup. Defendants provided additional data on August 2, 2017. On August 18 and 25, 2017, CDCR produced an outline of the factors that contribute to delays in timely transfers to crisis beds and proposed solutions CDCR has implemented or will implement to address those factors. The Special Master's workgroups are scheduled to

continue through the end of November and additional issues may be identified and resolved during that time. The parties will update the Court as to any additional issues identified for resolution and any additional agreements reached in their proposed briefing for the September 28, 2017 status conference.

In addition to the substantial work done in the context of the Special Master's workgroups, Defendants have undertaken the following initiatives, with input from the Special Master and Plaintiffs:

- CDCR's activation and assumption of responsibility for the Psychiatric Inpatient Programs at the California Medical Facility, the California Health Care Facility and Salinas Valley State Prison, including implementation of policies and procedures and more recently monitoring by the Special Master.
- Development of CDCR's Custody and Mental Health Partnership Plan.
- CDCR's activation of the Electronic Health Record System.
- Development and implementation of Defendants' Plan to Review the Enhanced Outpatient Program Population.

### A. Defendants' Proposals and Initiatives

CDCR is undertaking several initiatives to address the timely transfer of patients to crisis beds, some of which Defendants referenced in their Response to the Order to Show Cause. *See* ECF No. 559 at 9; ECF No. 5597 at ¶¶ 5-6. Since then Defendants have identified and begun implementing additional initiatives designed to increase efficiencies in transferring patients into open crisis beds more quickly. Those initiatives are outlined below. The parties agree that these initiatives are worth pursuing and may improve Defendants' compliance with the Program Guide's twenty-four-hour MHCB transfer timeline. The parties will continue to meet and confer, with the guidance of the Special Master, regarding the details and implementation of these initiatives, as well as their efficacy at improving Program Guide compliance once implemented. Defendants will provide additional detail regarding the development and status of the initiatives in their

proposed filing submitted to the Court for the September 28 status conference, discussed in Section II below.

1. **Continuation and Expansion of Initiatives Aimed at Ensuring Proper Utilization of Crisis Beds** (*see* ECF No. 559 at 9; ECF No. 5597 at ¶¶ 5-6)

    (a) Expansion of Crisis Intervention Teams to reduce the number of after-hour referrals through early clinical intervention.

    (b) Addition of Dialectical Behavior Therapy programs aimed at patients who regularly and repeatedly require inpatient treatment.

    (c) Additional trainings regarding clinical evaluations, treatment skills, case formulation, patient triaging, and improving inter-disciplinary treatment teams to ensure treatment goals are identified and tracked.

    (d) Increased after-hours staffing to triage potential crises and reduce the number of MHCB rescissions.

    (e) Regionalization of MHCBs to reduce crisis bed readmission rates and to decrease the time for inmate-patient transfers to an outside crisis bed ("clustering").

    (f) Identification of local best practices, including after-hours staffing and behavior-incentive and pain-management programs.

2. **Initiatives to Streamline MHCB Admission, Transfer, and Discharge Processes**

    (a) Eliminating requirement that Form 128C, which notes a patient's clinical acceptance into an MHCB, be completed prior to transfer.

    (b) Eliminating the requirement for a medical clearance prior to transfer to an MHCB.

    (c) Improving communication between headquarters and institution staff regarding MHCB bed assignment to ensure that patients are transferred promptly after endorsement to an MHCB.

    (d) Encouraging referrals to higher levels of care earlier in a patient's MHCB stay, when appropriate.

    (e) Encouraging prompt discharge of patients no longer requiring crisis bed care.

(f) Initiating Clozaril at acute or intermediate care inpatient programs rather than in the MHCB.

(g) Developing a local operating policy to permit safe double-celling of patients in four MHCB beds at Central California Women's Facility ("CCWF") to increase capacity, where appropriate.

(h) Utilizing available crisis beds at California Institution for Women for patients housed at CCWF.

(i) Coordinating medication and pharmacy needs for discharged patients waiting for transfer back to sending institution.

(j) Piloting program to temporarily house patients who have been clinically discharged from Salinas Valley State Prison's MHCB in a designated housing unit at that prison for no longer than 72 hours before the patient is transferred to the bed to which they have been permanently endorsed.

(k) Adding transport vehicles to institutions with large numbers of crisis beds and the psychiatric inpatient programs to expedite the discharge of patients from crisis bed care in order to free up empty beds for incoming patients.

### 3. Initiatives to Improve Headquarters Oversight of MHCB Transfer Delays.

(a) Developing an automated system to track the reason for delays in crisis bed referral timelines.

(b) Creating a focus group to analyze and make recommendations on improving the workflow of Classification & Parole Representatives.

### B. Defendants' Recent Initiatives to Reduce Waitlists for Higher Levels of Care to Increase Availability of Existing MHCBs for New Admissions

Defendants are also focused on eliminating or reducing inpatient waitlists, with the understanding that these efforts will also improve MHCB transfer timelines. First, Defendants converted a 29-bed unit at California Health Care Facility's inpatient program from intermediate care to acute care, with admissions of acute patients beginning on August 18, 2017 and completed on August 25, 2017. Second, Defendants are engaged in a utilization management process to ensure that lengths of stay in inpatient beds, particularly acute beds, are clinically appropriate. Third, Defendants have focused their efforts on increasing utilization of the inpatient beds available to female class members at Patton

State Hospital.  Fourth, Defendants have enhanced the review process for filling the lower-custody ICF beds for male patients, including those at Atascadero State Hospital.  This effort includes sending Regional Administrators and teams from Headquarters to each male CDCR Psychiatric Inpatient Program over the course of three weeks in August and September 2017 to assist local clinicians with a review of existing patients for eligibility to transfer to their least restrictive housing placement and a determination of discharge appropriateness.  Defendants' proposed filing for the September 28, 2017 status conference, discussed below in Section II, will provide further detail on the manner in which the inpatient bed admission and discharges impact the availability of MHCBs and how Defendants' initiatives will help improve patient movement and compliance with the Program Guide's twenty-four-hour transfer timeline for crisis beds if the Court so directs.

While Plaintiffs support these efforts and believe they are a necessary prerequisite to improving timely MHCB access under the Program Guide, Plaintiffs are not confident that they are sufficient to ensure compliance with the Program Guide's inpatient transfer timelines or that they can be permanently sustained. (ECF No. 5583 at 4-6).[1]  The parties anticipate addressing these matters more fully at the November 3, 2017 hearing on inpatient transfer timeline compliance, and at the September 28, 2017 status conference to the extent that Court so desires.

## II.     ISSUES REMAINING FOR RESOLUTION

The parties have to date identified three unresolved issues related to MHCB transfer timeline compliance.  All of the identified unresolved issues relate, at least in part, to the appropriate way to measure and track compliance with the Program Guide's twenty-four hour transfer timeline, which will need to be resolved before the parties and the Court can fully assess Defendants' ability to comply with the Program Guide's timeline for transfer

---

[1] Defendants do not agree that full or 100% compliance with the Program Guide timeframe for crisis bed transfer is an appropriate standard under the Constitution or Prison Litigation Reform Act and have appealed the April 19, 2017 order concerning the same requirement for transfers to inpatient care.  *Coleman v. Brown*, No. 17-16080.

to crisis beds.  Although the workgroup continues to confer, the parties have not yet reached agreement on the issues identified below and will present them to the Court for resolution at the September 28, 2017 status conference.

The parties request simultaneous briefing and replies, with evidence presented by declarations rather than live testimony, on the issues identified below for resolution at the September 28 status conference.  Doing so will permit the Court to resolve these threshold issues and clarify the appropriate metrics for evaluating Defendants' compliance before further proceedings on crisis bed transfer timeline compliance.

Because the parties continue to meet and collaborate, under the guidance of the Special Master, on issues related to compliance with the Program Guide timeline for transfer to MHCBs, the parties request deferral of the presentation of all evidence on the obstacles to full transfer timeframe compliance until resolution of the three issues identified below and conclusion of the workgroup meetings in November 2017.

### A. Proposed Policy Change Regarding After-Hours Referrals to Crisis Care

The parties agree that the Program Guide requires class members in need of crisis bed care to be transferred within twenty-four hours of referral, which is triggered by a clinician's determination that such care is warranted.  Program Guide 12-5-4.  Under CDCR's existing policies and practices, the clinical determination that a patient needs crisis care may be made by on-site or on-call clinicians and at any hour of the day.  Also under current CDCR policy, patients may not be placed in alternative housing absent a crisis bed referral, and may not remain in alternative housing for longer than twenty-four hours after a referral.

Defendants contend that high rates of rescissions of crisis bed referrals represent an obstacle to their ability to meet the twenty-four hour transfer timeline  Data provided to the workgroups shows that, on average, 35% of all referrals to MHCBs are rescinded, the vast majority within the first twenty-four hours.  Defendants maintain that rescinded referrals cause significant delays in the placement of other patients in need of crisis care.

Defendants propose a requirement that a clinician complete an in-person assessment of a patient before referring the patient to a crisis bed. If the request is made during after-hours when the institution does not have a clinician on site to conduct an in-person evaluation, the patient will be placed in Alternative Housing on one-on-one observation if necessary for patient safety. Under Defendants' proposal, the twenty-four hour MHCB transfer timeline would commence only after the full in-person clinical assessment by the on-site clinician, and would not include the time the patient spent in alternative housing prior to the referral. Defendants maintain that this policy change will result in higher quality referrals and will conserve clinical and administrative resources by reducing high rescission rates from after-hours referrals.

Plaintiffs contend that Defendants' proposal is not responsive to the Order and is instead an unwarranted attempt to modify previously negotiated and resolved policies governing the use of alternative housing before a referral to a crisis bed. Plaintiffs also contend that the proposal inappropriately revises and lengthens the existing twenty-four hour MHCB Program Guide transfer timeline rather than improving compliance with the timeline. Moreover, Plaintiffs maintain that Defendants' concerns with rescission rates are better addressed through other already identified strategies, such as Crisis Intervention Teams, training, and augmenting after-hours staffing or requiring on-call clinicians to conduct in-person evaluations where necessary.

### B. Appropriate Measure for Timeliness of External MHCB Transfers

The parties agree that when a patient is referred to an MHCB within his or her home institution, compliance with the Program Guide's twenty-four hour transfer requirement should be measured from the time the referral is made to the time the patient is physically in the crisis bed unit. However, the parties disagree regarding the appropriate measurement for compliance with the twenty-four hour requirement when the patient is referred to a crisis bed in another institution ("external placement").

Defendants maintain that the twenty-four hour timeline for external placements should be measured from the time of referral until the time of placement on a transport

vehicle. Under Defendants' proposed metric, the placement is timely if the patient is safely placed in a transportation vehicle and en route to the MHCB unit within twenty-four hours Defendants have informed Plaintiffs and the Special Master that this measure of Program Guide compliance is currently provided to the Court in their CDCR Mental Health Crisis Bed Patient Census and Waitlist Report, included as Exhibit C to the monthly court-ordered Defendants' Census and Waitlist for Inpatient Mental Health Care. Defendants also report this measure of compliance in the Mental Health Crisis Bed Reports produced to the Special Master and Plaintiffs in Enclosure 7c as part of Defendants' monthly data. *See* ECF No. 5593 at 25; ECF No. 5594 at ¶ 9 & Ex. D.

Defendants maintain that this calculation appropriately accounts for variables outside of Defendants control, including unexpected traffic, breakdowns, or inclement weather. A policy that measures the 24-hour timeline to placement on a special transport vehicle appropriately accounts for unavoidable traffic issues and avoids having to litigate individual exceptions to the 24-hour transfer timeline based on traffic conditions and the like.

Plaintiffs maintain that the Program Guide requires that the timeliness of a patient's transfer to crisis care be measured from the time of referral to the time when the patient is physically present and receiving care in the crisis bed unit at the receiving institution. Regardless, Defendants' proposed calculation extends the twenty-four hour transfer timeline for patients in mental health crisis even where those patients' transport is not complicated by any of the unavoidable delays or obstacles Defendants identify above. Any unforeseeable obstacles to timely transfer within twenty-four hours should be addressed as exceptions to the MHCB transfer timeframes. Otherwise, the transfer timeline is meaningless and Defendants would not be required to report to the Court and Special Master any substantial transportation delays or problems with transportation fleet maintenance that affect class members' rights to timely access to crisis care.

### C. Reporting on MHCB Timeliness and Delays

Plaintiffs remain concerned that CDCR does not have sufficient tracking and

reporting capabilities to ensure oversight of and compliance with the Program Guide's twenty-four-hour MHCB transfer timeline, including time related to external transports discussed above, or with any claimed exceptions to that timeline. Plaintiffs will request relief from the Court related to these issues to ensure that the Court and Special Master have accurate and adequate information to oversee compliance with the MHCB Program Guide transfer timeline.

While Defendants maintain that they have a system in place to track referrals, admissions and discharges of patients to and from crisis care, their current system was not designed to report on the proposed exceptions to the MHCB transfer timelines or data showing the time class members spend on special transport before arriving in a crisis bed. Defendants have agreed to review their reporting systems to determine whether the data now sought can be automatically generated.

DATED: August 29, 2017          Respectfully submitted,

                                ROSEN BIEN GALVAN & GRUNFELD LLP

                                By: */s/ Lisa Ells*
                                    Lisa Ells

                                Attorneys for Plaintiffs

DATED: August 29, 2017          XAVIER BECERRA
                                Attorney General of California

                                By: */s/ Elise Owens Thorn*
                                    Elise Owens Thorn
                                    Deputy Attorney General

                                Attorneys for Defendants