# EXHIBIT 1

Defendants' Plan for Referrals and Transfers to Mental Health Crisis Beds

Defendants' ability to meet crisis bed transfer timeframes have been impacted by several factors including the increase in the Enhanced Outpatient Program (EOP) population.  In 2012, CDCR had an adequate number of crisis beds to meet the need but, since that time, the EOP population has increased from approximately 3900 to approximately 6800 inmates.  Inmates in the EOP account for approximately 64% of all crisis bed referrals.  Crisis bed referrals are also impacted by a high frequency of rescissions, which result in part from clinicians not having adequate time to complete a needs assessment.[1]  Defendants are addressing the long-term need for more crisis beds through the recent approval to build 100 new crisis beds in southern California.

In the meantime, and to ensure that patients in need of inpatient crisis care reach a crisis bed expeditiously, Defendants propose two policy modifications aimed at ensuring appropriate referrals are made by affording clinicians adequate time to assess their patients.  Additionally, Defendants propose three exceptions to transfer timeframes consistent with those already proposed for transfers to acute and intermediate care.  These policy changes, along with the recently approved construction of 100 additional crisis beds, will ensure that Defendants have an adequate number of beds to treat patients who are truly in need of crisis bed care.

1. <u>Referrals Should Only Be Made After a Complete Clinical Evaluation and, when Necessary, Placement and Evaluation in Alternative Housing.</u>

The Program Guide requires that, when crisis bed care is clinically necessary, the "inmate-patient shall be transferred within 24 hours of referral." (Program Guide 12-5-4.)  The policy recognizes that "[n]ot all crises require admission to the MHCB.  Crisis episodes for some inmate-patients may be handled on an outpatient basis." (*Id.* at 12-5-1.)  Consistent with the

---

[1] On average, thirty to forty percent of all referrals are rescinded before the inmate transfers to a crisis bed.

Program Guide, a "referral" is made when a clinician completes a needs assessment and decides that a crisis bed referral is appropriate. To permit adequate time for the clinician to conduct the needs assessment and conclude that the crisis cannot be handled on an outpatient basis, Defendants propose that clinicians be permitted to place inmates in alternative housing and complete the assessment within forty-eight hours. During this evaluation period, all inmates in alternative housing will be provided one-on-one observation as well as a suicide resistant bed. The expectation remains that all necessary crisis bed referrals shall be made expeditiously. As soon as a clinician determines crisis bed placement is warranted, an on-site referral will be made and the inmate will transfer to a crisis bed consistent with Section 2 of this proposal.

Current policy does not allow placement of an inmate in alternative housing absent a referral to a crisis bed. (See Policy re: Housing of Patients Pending Mental Health Crisis Bed Transfer, October 15, 2015.) This policy results in premature referrals, particularly when the consultation is conducted after hours by an on-call clinician who must make a quick referral decision based on discussion with other staff by telephone, but no direct interaction with the inmate. Defendants' rescission rate indicates that clinicians need more time to properly evaluate an inmate before referring to a crisis bed.

Defendants' proposal avoids unnecessary referrals and affords CDCR's clinicians appropriate time to properly evaluate the patient's need for crisis bed care. It also promotes better clinical decision-making and inmate care, and will end the practice of rushing through the referral process just to meet timeframe mandates regardless of the inmate's true need for crisis bed care. Giving clinicians more time to do a complete needs assessment before referring an inmate to a crisis bed will also reduce the number of unnecessary completed referrals, freeing up more beds for inmates truly in need of crisis bed care. This modification will enable CDCR to

better manage the demand for crisis bed placements, and reduce administrative time wasted on unnecessary and inappropriate crisis-bed referrals.  The modification would also allow CDCR to prioritize inmates who require transfers.

   2.  Completion of Transfer

The Program Guide recognizes a distinction between crisis-bed transfers within a single institution and transfers between different institutions.  For instance, in Chapter One at 12-1-16, the Program Guide states that CDCR has twenty-four hours to transfer an inmate referred to a crisis bed.  (See also 12-3-13, noting a transfer of a CCCMS inmate must be "accomplished" within twenty-four hours.)  However, Chapter Five states that "[i]f the referring institution does not have a MHCB or there are no MHCB beds [sic] available where the inmate-patient is currently housed, the inmate-patient shall be transferred to a designated MHCB institution . . . within 24 hours of referral" and "*[i]n most cases*, movement from an institution to a MHCB shall be completed by institutional staff via special transport within 24 hours."  (12-5-3 and 12-5-4, emphasis added.)

    Defendants propose that when an inmate is transferred to a crisis bed in the same institution where the inmate is housed, placement in the crisis bed must occur within twenty-four hours of referral by a mental health clinician.  But when an inmate is transferred to a crisis bed at a different institution, placement on special transport to that institution must occur within twenty-four hours of referral.  This proposal recognizes that transportation between institutions is subject to a variety of delays outside of Defendants' control, such as traffic conditions, weather conditions, and unexpected breakdowns.  And these types of delays are further exacerbated when an inmate must be transferred a long distance to an institution outside a crisis-bed cluster zone.

Defendants already track their compliance with the timeframes in this manner and have reported this data for years.

    3.   <u>Exceptions to Mental Health Crisis Bed Transfer Timeframes</u>

Consistent with timeframe exceptions proposed for transfers to acute and intermediate beds, Defendants propose the following three exceptions for transfers to crisis beds.

    a.  Out to Court

In the unlikely event that an inmate must go out to court while pending a crisis bed transfer, a transfer exceeding twenty-four hours will not be considered a violation of policy. Upon return from court, the inmate will be reevaluated and promptly transferred to a crisis bed if clinically indicated.

    b.  Medical Issues

The Program Guide speaks specifically to medical clearance of inmates referred to crisis bed. The Program Guide states that "[t]he transferring psychiatrist, psychologist, or Chief of Mental Health shall determine whether the inmate-patient is 'medically cleared' to transfer [to a Mental Health Crisis Bed]. State law provides that, before a patient may be transferred to a health facility, the patient must be sufficiently stabilized to be safely transported." (Program Guide at 12-5-4.) Thus, if an inmate is not medically stable, a transfer exceeding twenty-four hours will not be considered a violation of policy provided that the inmate in need of crisis bed care is transferred promptly once the medical issue is resolved.

    c.  Other

Other issues may occur that prevent an inmate from transferring within twenty-four hours. Examples include patient refusal, issues of institutional security, unusual or extreme acts of

nature, or urgent and necessary construction impacting bed availability.  Defendants will evaluate "other" exceptions on a case-by-case basis.