XAVIER BECERRA
Attorney General of California
WILLIAM C. KWONG
Acting Senior Assistant Attorney General
DANIELLE F. O'BANNON
JAY C. RUSSELL
Supervising Deputy Attorneys General
ELISE OWENS THORN, State Bar No. 145931
CHRISTINE M. CICCOTTI, State Bar No. 238695
CHAD STEGEMAN, State Bar No. 225745
TYLER V. HEATH, State Bar No. 271478
Deputy Attorneys General
 1300 I Street, Suite 125
 P.O. Box 944255
 Sacramento, CA 94244-2550
 Telephone: (916) 324-4921
 Fax: (916) 324-5205
 E-mail: Elise.Thorn@doj.ca.gov
*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **RALPH COLEMAN, et al.,** | 2:90-cv-00520 KJM-DB (PC) |
| Plaintiffs, | **DECLARATION OF B. BRIZENDINE, PSY. D. IN SUPPORT OF DEFENDANTS' BRIEF ON OBSTACLES TO FULL COMPLIANCE WITH PROGRAM GUIDE TRANSFER TIMELINES FOR CRISIS BEDS** |
| v. | |
| **EDMUND G. BROWN JR., et al.,** | |
| Defendants. | |

I, Brittany Brizendine, declare:

1. I am the Acting Assistant Deputy Director of the Statewide Mental Health Program for the California Department of Corrections and Rehabilitation (CDCR). I am competent to testify to the matters set forth in this declaration and if called upon to do so, I would and could so testify. I make this declaration in support of Defendants' Brief on Obstacles to Full Compliance with Program Guide Transfer Timelines for Crisis Beds.

1

2. I was appointed as the Acting Assistant Deputy Director of the Statewide Mental Health Program in May 2017. I am familiar with the numerous and complex policies and procedures that govern the prison mental health care delivery system. I am responsible for assisting in the supervision and management of the mental health system's headquarters and regional operations, and am familiar with *Coleman* mandates. I started my work with the prison mental health care delivery system in 2008 as a staff psychologist at California State Prison, Sacramento, where I also worked in the Mental Health Crisis Bed unit, the Enhanced Outpatient Program Administrative Segregation Unit, and the Psychiatric Services Unit. Prior to my current appointment, I served as the Chief Executive Officer of Salinas Valley State Prison, and have served as the Chief of Mental Health at Salinas Valley State Prison and the California Health Care Facility.

**The Mental Health Crisis Bed Referral Process During Business Hours**

3. Currently, for patients identified as needing crisis care during normal business hours, a face-to-face assessment is completed and a level-of-care decision is made.

**The Mental Health Crisis Bed Referral Process After Business Hours**

4. For patients needing after-hours care or when an on-site clinician is unavailable, the patient is assessed by nursing staff who calls the on-call clinician to present the patient's clinical factors. Then, the on-call clinician makes a determination to address the patient's immediate needs. If warranted, the patient is then referred to the mental health crisis bed level of care by the on-call clinician and placed in alternative housing pending a crisis bed admission. Patients placed in alternative housing are observed on a continuous basis and receive a suicide resistant bed, a safety blanket, and a safety smock.

**CDCR's Proposal to Start the Referral Upon a Full Clinical Assessment**

5. In many cases, referrals are made after hours by on-call clinicians. Crisis evaluations made after hours are often made without direct patient-to-clinician contact, which limits a clinician's ability to conduct assessments necessary to differentiate between an appropriate and inappropriate crisis bed referral. This leads to a higher referral and rescission rate than necessary, and as a consequence a higher number of rescissions are required.

2

Decl. of B. Brizendine in Supp. Defs.' Brief on Transfers to Crisis Beds   (2:90-cv-00520 KJM-DB (PC))

6. A face-to-face evaluation is the preferable method to determine each patient's risk of harm and necessary level of care. Not all patients who report a crisis need to be referred to a crisis bed. For example, some patients simply require a short time away from their housing unit while others require referral to a crisis bed. This is why a face-to-face evaluation is important because it allows clinicians to differentiate a patient's clinical needs.

7. While Defendants are staffing clinicians at some locations later in the day and into the evening, on-call referrals still frequently occur. Thus, in order to reduce unnecessary referrals and to reduce the rescission rates, it would be best to ensure that crisis bed referrals only follow a face-to-face evaluation.

8. Unnecessary referrals and rescissions cause unneeded clinical casework that can further delay care being provided to patients in need of crisis bed referrals. For instance, a completed referral includes the Medical Classification information, Medical Clearance for Transfer, a treatment plan update progress note, the Mental Health Intake Evaluation, and a Suicide Risk evaluation as warranted.

9. CDCR's proposal ensures that patients are kept safe in alternative housing while they wait for an onsite face-to-face assessment the next morning. Their time in alternative housing, pending evaluation, would be brief. After the in-person assessment clinicians make a level of care determination.

10. CDCR's proposal also ensures that fewer unnecessary referrals are made and then rescinded because they were made without the assessment necessary to differentiate between an appropriate and inappropriate referral.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed in Elk Grove, California on September 13, 2017.

        ___/s/ *Brittany Brizendine* _____
        BRITTANY BRIZENDINE, Psy.D.
        Acting Assistant Deputy Director,
        Statewide Mental Health Program
        *(original signature retained by attorney)*

3

Decl. of B. Brizendine in Supp. Defs.' Brief on Transfers to Crisis Beds   (2:90-cv-00520 KJM-DB (PC))