UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al., | No. 2:90-cv-0520 KJM DB P |
| Plaintiffs, | |
| v. | ORDER |
| EDMUND G. BROWN, JR., et al., | |
| Defendants. | |

In an order filed April 19, 2017, this court directed the Special Master to "convene a workgroup to focus on outstanding issues related to compliance" with the Program Guide twenty-four hour timeline for transfer to a mental health crisis bed (MHCB). ECF No. 5610 at 14. In the same order, the court ordered the parties to file a joint report containing "(1) a description of issues, if any, resolved by the workgroup and the substance of agreements reached; (2) a focused and comprehensive list of issues that remain for resolution by the court; and (3) a list of witnesses and other evidence the parties propose to offer at the evidentiary hearing" set in the order. *Id.* at 15. The court advised the parties that it would "review the submission . . . and . . . advise the parties if it is modifying the scope of any evidentiary hearing." *Id*. The purpose of the evidentiary hearing is "to address achievement of full compliance with the twenty-four hour Program Guide transfer timeline to mental health crisis beds." *Id*. at 14. Originally set for

August 29, 2017, *id*., the evidentiary is now set for September 28, 2017 at 10:00 a.m. ECF No. 5670.

In their joint report, ECF No. 5669, the parties present three issues to the court for resolution. First, defendants propose that the twenty-four hour timeline for transfer to an MHCB should not commence until a clinician has completed an in-person assessment of a patient identified by staff as needing MHCB placement, and that for any request "made during after-hours when the institution does not have a clinician on site to conduct an in-person evaluation, the patient will be placed in Alternative Housing on one-on-one observation if necessary for patient safety." ECF No. 5669 at 8. Defendants contend a high number of rescissions of MHCB referrals present an obstacle to compliance with the twenty-four hour timeline, and they contend requiring an in-person clinical assessment will reduce this high rescission rate. *Id*. at 7. Plaintiffs oppose the request, contending it "is not responsive to the Order and is instead an unwarranted attempt to modify previously negotiated and resolved policies governing the use of alternative housing before referral to a crisis bed," that it would "inappropriately" revise and lengthen the twenty-four hour timeline, and that there are better ways to address the allegedly high rescission rates. *Id*. at 8.

The second issue tendered by the parties is when the twenty-four hour timeline should start to run for patients who must be transferred to another institution in order to be placed in a crisis bed. Defendants contend the timeline should run from the time of referral until the patient is placed in a transport vehicle. *Id*. at 8-9. Plaintiffs oppose the request, contending that the Program Guide requires timeliness to be measured from the time of referral to the time of placement in a crisis bed and that delays caused by unforeseen transportation obstacles can be addressed as exceptions to the twenty-four hour requirement. *Id*. at 9.

Finally, plaintiffs request additional relief from the court related to defendants' tracking and reporting of MHCB referrals as an aid to ensuring compliance. *Id*. at 9-10. Defendants contend their tracking system is adequate but have agreed to review their reporting systems. *Id*. at 10.

/////

The parties have now filed opening briefs accompanied by evidence, and responsive briefs. ECF Nos. 5677, 5678, 5679, 5680, 5686 and 5688. Plaintiffs also have filed evidentiary objections to evidence filed by defendants. ECF No. 5687. The parties' submissions raise a core issue that requires additional focused discussion, specifically, the effect of defendants' current and ongoing shortfall in the number of both MHCBs and Acute Psychiatric Program (APP) hospital beds on defendants' ability to comply with the twenty-four hour Program Guide timeline for transfer to MHCBs. By this order, defendants will be directed to bring to the evidentiary hearing a person or persons who can address this issue and who can, as appropriate, discuss whether and how defendants can accelerate their planned development of additional MHCBs.

Defendants currently have 427 MHCBs for male inmates and 22 MHCBs for female inmates. ECF No. 5684 at 12. As of August 28, 2017, fourteen of the male MHCBs were "redlined" and therefore unavailable, leaving 413 MHCBs available. *Id*. at 10 n.2, 12. The Spring 2016 Mental Health Bed Need Study projected defendants would need 490 MHCBs for male inmates in 2017 and 493 MHCBs for male inmates in 2018. *See* ECF No. 5542-1 at 116. For female inmates, the projected need was 30 MHCBs by 2017 and 35 by 2018. *Id*. at 122. The Spring 2017 Mental Health Bed Need Study projects an even higher need: 500 MHCBs for male inmates in 2017 and 495 in 2018, and 34 MHCBs for female inmates in 2017 and 41 in 2018. Mental Health Bed Need Study Based on Spring 2017 Population Projections (2017 Bed Need Study) at 14, 20.[1]

The Bed Need Study projects two separate numbers for male MHCBs, one of which is referred to as a "trued" bed need. *Id*. at 14. The "trued" number is lower than the projected need based on 90 percent occupancy, and in the 2017 Bed Need Study is 470 for 2017 and 480 for 2018. This so-called "enhancement" has been used since the Fall 2011 Bed Need Study, and is explained as follows:

---

[1] At the court's request, the Special Master has provided the most current bed need study. The court will direct that it be filed concurrently with this order.

3

> 1. For the Male MHCB, EOP-GP, and EOP-ASU programs and the Female EOP-ASU program, provided a "trued" bed need reporting. This is an adjustment to the official forecasted bed need that eliminates "double-counting."
>
> HCPOP conducts an analysis of pending lists in order to determine current housing/level of care of those on the pending lists so that adjustments could be shown to eliminate "double-counting." For example, an analysis of the APP pending list revealed that a substantial percentage of the inmate-patients were residing in a MHCB. A separate reporting of the "trued" bed need is shown in the MHCB forecast with the observation that the beds used by those inmate-patients on the pending list could be freed-up once adequate APP capacities become available in the future.

2017 Bed Need Study at 5. For some time, defendants' monthly status reports on waitlists for access to inpatient care have suggested a need for additional male APP hospital beds, first with increases in the size of wait lists for transfer to male APP beds and, more recently, a significant number of patients waiting past Program Guide timelines for transfer to those beds. Until August 2017, defendants had approximately the number of male APP beds projected by the Spring 2016 Bed Need Study. The 2017 Bed Need Study projected a substantial increase in the need for these beds, and in August 2017, defendants increased the number of male acute care beds from 360 to 402, see ECF No. 5684, which is close to but still below the forecasted need of 419 APP beds for male inmates for this year. 2017 Bed Need Study at 10.

The foregoing suggests to the court there is a strong correlation between delays in transfer to MHCBs and the number of available beds both for acute inpatient care and mental health crisis bed care. Defendants acknowledge as much. *See, e.g.,* ECF No. 5680-10, Tebrock Decl. ¶ 33. The court requires defendants to explain why they have not activated the number of mental health crisis beds and acute inpatient care beds projected by their Bed Need Studies. Defendants also present evidence that they have "acquired approval to build 100 new crisis beds in Southern California within the next four years." *Id*. ¶ 7. The court also requires defendants to explain whether they can accelerate the building of some or all of these crisis beds.

IT IS SO ORDERED.

DATED: September 22, 2017.

UNITED STATES DISTRICT JUDGE