XAVIER BECERRA
Attorney General of California
WILLIAM C. KWONG
Acting Senior Assistant Attorney General
DANIELLE F. O'BANNON
JAY C. RUSSELL
DAMON MCCLAIN
Supervising Deputy Attorneys General
ELISE OWENS THORN, State Bar No. 145931
CHRISTINE M. CICCOTTI, State Bar No. 238695
CHAD A. STEGEMAN, State Bar No. 225745
TYLER V. HEATH, State Bar No. 271478
Deputy Attorneys General
 1300 I Street, Suite 125
 P.O. Box 944255
 Sacramento, CA 94244-2550
 Telephone: (916) 210-7325
 Fax: (916) 324-5205
 E-mail: Tyler.Heath@doj.ca.gov
*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **RALPH COLEMAN, et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**EDMUND G. BROWN JR., et al.,**<br><br>Defendants. | 2:90-cv-00520 KJM-DB (PC)<br><br>**DEFENDANTS' RESPONSE TO PLAINTIFFS' OBJECTIONS RE: DEFENDANTS' BRIEF AND REPLY ON TRANSFERS TO CRISIS BEDS**<br><br>Date: September 28, 2017<br>Time: 9:00 AM<br>Judge: The Honorable Kimberly J. Mueller |

The Court's April 19, 2017 order set a status conference "to take evidence on obstacles to full compliance with the Program Guide timeline for transfer to [crisis-bed care] and targeted remedies for achieving such compliance." (ECF No 5610.) At the parties' request, the Court ordered them to submit opening briefs and declarations, as well as replies and responsive declarations for the status conference. Defendants complied, and submitted the declarations of

1

1  the Deputy Director and Acting Assistant Deputy Director of California Department of
2  Corrections and Rehabilitation's (CDCR) Statewide Mental Health Program, and exhibits that
3  identified obstacles to full compliance and targeted remedies. Defendants' evidence is comprised
4  of the types of facts and data that the Court requested for the September 28 status conference on
5  obstacles and remedies to crisis-bed timeline compliance. Plaintiffs' objections to Defendants'
6  opening brief and reply are not appropriate or have been waived, and should be overruled.

### I. PLAINTIFFS' OBJECTIONS ARE NOT AN APPROPRIATE PART OF THE PROCESS OUTLINED BY THE COURT AND PARTIES FOR THE SEPTEMBER 28 STATUS CONFERENCE

There is currently no affirmative motion related to crisis care transfer timelines pending before the court. The briefs, declarations, and evidence submitted by Defendants were part of the process contemplated by the Court's April 19, 2017 order. The order stated that "the briefs of both parties suggest myriad possible reasons for the ongoing large number of inmates waiting longer than twenty-four hours to be transferred to an MHCB." (ECF No. 5610.) As a result, the Court set a status conference to take evidence on obstacles to compliance with crisis-bed timelines and potential remedies. (*Id*. at 12:28-13:3.) To prepare for the status conference, the Court ordered the parties and Special Master to convene workgroups to discuss issues "related to compliance with the Program Guide timeline for transfer to MHCBs . . ." (*Id*. at 13:3-7.) The workgroups' purpose was to "identify those issues that must be addressed, to resolve any and all issues the parties can resolve without court intervention, and to identify any issues that remain for consideration and resolution by the court." (*Id*. at 13:7-11.) The parties asked the court to allow them to present the evidence for the status conference by declaration. (ECF No. 5669 at 6:4-6.)

The parties met eight times in their workgroups between June 26 and August 29, 2017. (ECF No. 5669 at 1:20-21.) Defendants engaged fully and transparently in the process set up by the Court and have shared substantial information into various aspects of the mental health crisis bed transfer system. They provided Plaintiffs with their initial plan for timely crisis-care transfers. Plaintiffs responded to the initial plan and Defendants provided multiple responses and data to Plaintiffs' questions. (*Id*. at 1:23-28.) On August 29, 2017, the parties identified the

issues that remained for resolution (ECF No. 5669), and Defendants filed the briefs and declarations the Court requested for addressing those issues at the status conference.

Plaintiffs had ample opportunity during the workgroups to object to the evidentiary quality of the data, tables, reports, and proposals provided by Defendants during the workgroups. At no time did they raise any of the evidentiary objections that they offer in their objections to Defendants' opening and reply brief. Indeed, Plaintiffs have been complementary of the breadth and depth of information shared by Defendants for the workgroup meetings. Defendants' declarants, Deputy Director Katherine Tebrock and acting Assistant Deputy Director Brittany Brizendine, were involved in preparing the proposals and data for the workgroups and presenting the proposals and responding to Plaintiffs' questions. At no point did Plaintiffs object to the qualifications of Defendants' staff to interpret CDCR's data or to opine on the need for and efficacy of Defendants' proposals. Accordingly, Defendants have provided the Court with the same information they provided to Plaintiffs and the Special Master's team during the workgroups with the expectation that this information will help elucidate some of the obstacles to compliance with the Program Guide timeline for transfers to crisis beds.

Defendants' declarations and exhibits are proper for the Courts' status conference.

## II. PLAINTIFFS' OBJECTIONS TO EXHIBITS 3 AND 4 OF THE WEBER DECLARATION AND PARAGRAPH 9 OF THE TEBROCK DECLARATION WERE WAIVED OR ARE OTHERWISE INAPPROPRIATE.

Exhibits 3 and 4 to Nicholas Weber's declaration are letters and charts outlining obstacles to compliance with crisis-bed transfer timelines, data related to the obstacles, and initiatives to address the obstacles. (ECF No. 5680-1, 5680-2, 5680-3, 5680-4, 5680-5, and 5680-6.) Similarly, paragraph 9 of Katherine Tebrock's declaration provides data for crisis-bed referrals, rescissions, and transfer times. The data provided in Ms. Tebrock's declaration is taken from Exhibit 7 to the declaration of Nicholas Weber. Plaintiffs object that Defendants failed to provide the underlying source or methodology for the data. But Plaintiffs waived this objection when they used the same or similar evidence in support of their opening brief and reply. Parties cannot object to evidence that they too seek to introduce. *Ohler v. United States*, 529 U.S. 753, 755 (2000) (relying on Strong, McCormick on Evidence, § 55, p. 246 (5th ed.)). Plaintiffs seek to

3

admit the letter attached as Exhibit 4 as an exhibit to one of their own declarations and rely extensively on the data contained in those exhibits in support of their arguments in their reply. (ECF No. 5679 at Ex. A; ECF No. 5686 at 9-12.) Moreover, they rely on the same type of report relied in paragraph 9 of Ms. Tebrock's declaration. (ECF No. 5678 ¶ 9, Ex. E.) Plaintiffs cannot object to the evidence in one breath, while attempting to use it in support of their own statistics and argument in the next.

Plaintiffs' objection is also not well taken because Plaintiffs requested the data and never objected to it or inquired regarding Defendants' methodology. As stated in the Joint Status Report and briefs of both parties, the workgroup process has been largely collaborative. (ECF No. 5680 at 4:3-20; ECF No. 5669 at 1:20-2:4.) Defendants offered an initial assessment of obstacles to crisis-bed transfers and possible remedies. (ECF no. 5680-1; ECF No. 5680-2 at 2-6.) In response, Plaintiffs asked Defendants to provide data related to rescission rates, readmission rates, crisis-bed clustering, and the length of time it takes to transfer inmates. (ECF No. 5669 at 1:24-28; Weber Decl. at Ex. 2, pp. 1-2 (exhibit submitted under seal).) Defendants provided the requested data and information in the July 21 and August 2 letters that are attached as Exhibits 3 and 4 to Nicholas Weber's Declaration. At the time, Plaintiffs thanked Defendants for the data and information. They did not raise any objection to its form or reliability, nor did they express any concern about Defendants' methodology or request to review the underlying documentation. Plaintiffs should not now be allowed to raise an objection to data they requested and accepted willingly and without hesitation.

It is also disingenuous for Plaintiffs to complain about the data contained in Defendants' Exhibits 3 and 4 when the data they used in their own brief suffers from the same alleged defects. The declaration of Krista Manista-Stone provides statistics regarding lengths of stay in alternative housing and crisis-bed-referral rescissions by institution. (ECF No. 5678 ¶ 9.) The declaration states that the calculations were based on information mined from monthly reports provided by Defendants and performed by someone using Excel functions. (*Id*.) However, Plaintiffs do not provide a declaration from the person that made the calculations describing his or her qualifications or mathematical methodology. (*Id*.) Plaintiffs' desire for the Court to

4

inconsistently apply the rules of evidence is apparent in their willingness to rely on Defendants' reports without complaint when they are used to draw their own conclusions

Plaintiffs' objections to Exhibits 3 and 4 to Nicholas Weber's declaration and paragraph 9 of Katherine Tebrock's declaration should be overruled.

### III. KATHERINE TEBROCK IS THE DEPUTY DIRECTOR FOR CDCR'S STATEWIDE MENTAL HEALTH SERVICES DELIVERY SYSTEM; THE TESTIMONY AND DATA SHE PROVIDES FALL SQUARELY WITHIN THE SCOPE OF HER DUTIES.

Ms. Tebrock is CDCR's Deputy Director of the Statewide Mental Health Services Delivery System. (Tebrock Decl. ¶ 1.) She was appointed in November 2015, and is "responsible for and supervise[s] the mental health system's headquarters and regional teams, and [is] familiar with *Coleman* mandates." (*Id*. ¶ 2.) She is "familiar with the numerous and complex policies and procedures that govern the prison mental-health-care delivery system." (*Id*.) She is competent to testify regarding the information in her declaration and that the information provided in her declaration is true and correct. (*Id*. ¶¶ 1, 11:15-16.) Ms. Tebrock was involved throughout the workgroup process. She presented Defendants' data, Defendants' reasons for their current and proposed remedies, and answered the questions raised by Plaintiffs and the Special Master's team. Moreover, she has previously submitted declarations in this litigation providing details about CDCR's mental-health delivery system and data related to CDCR's mental-health programs, population, and transfer timeframes. (ECF No. 5544-2; ECF No. 5597.) Due to her position in CDCR's Statewide Mental Health Services Delivery system and her responsibilities, she is entitled to an inference of personal knowledge regarding the operations of CDCR's mental health system. *Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999, 1018 (9th Cir. 1990); *Morgan v. Tenet*, 9 F. App'x 698, 700 (9th Cir. 2001) (CIA officer deemed to have personal knowledge of CIA's affairs).

As the Deputy Director, she is qualified to testify in paragraphs 6 to 8 regarding the number of crisis beds, and the number of inmates referred and transported to crisis beds, as well as the number of crisis-bed rescissions. This is particularly true given that Plaintiffs requested the data and were provided it as part of the Special Master's workgroups. Plaintiffs' objections are more about the quality of the data and not its admissibility. The appropriate time to raise those

5

questions was during the workgroups, but Plaintiffs' did not take that opportunity. Plaintiffs' objections to these paragraphs should be overruled.

Similarly, Ms. Tebrock can testify regarding the process of referring, assigning, and transporting patients to mental-health crisis beds described in paragraphs 11 to 18, 20, 23, and 26 of her declaration. As the Deputy Director, she is charged with supervising headquarters and regional staff and is familiar with the policies, procedures, and mandates that are part of that system. Her declaration also describes how the crisis-bed referral and transfer system is overseen by the Healthcare Placement Oversight Program (HCPOP), which tracks each step of the system using the HCPOP Endorsements and Referrals Tracking (HEART) system to track crisis beds. (*Id.* ¶ 10.) Ms. Tebrock is qualified to describe the process of referring, assigning, and transporting patients to crisis care and Plaintiffs' objections under Rules 602 and 901 should be overruled.

Ms. Tebrock explains that the process of referring, assigning, and transporting inmates to crisis beds and cites to Exhibit 6 to Nicholas Weber's declaration as exemplars of those processes. She is able to authenticate those charts as the records and files prepared and maintained by CDCR and based on her familiarity with CDCR's policies and procedures and can do so if required at the September 28 hearing. Even on summary judgment courts "do not focus on the admissibility of the evidence's form. [They] instead focus on the admissibility of its contents." *See Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) (citing *Block v. City of Los Angeles*, 253 F.3d 410, 418-19 (9th Cir. 2001), and *Fed. Deposit Ins. Corp. v. N.H. Ins. Co.*, 953 F.2d 478, 485 (9th Cir. 1991)); *see Cutrona v. Sun Health Corp.*, No. CV 06-2184-PHX-MHM, 2008 WL 4446710, *7 (D. Ariz. Sept. 30, 2008) (in the summary judgment context, even "hearsay is admissible if there is any way to present it in an admissible form at trial"). The charts are also admissible because they are demonstrative exhibits that illustrate the process described by Ms. Tebrock. Plaintiffs' foundation, authenticity, and personal knowledge objections should be overruled.

It is also appropriate for Ms. Tebrock to give the testimony in paragraph 36 that existing policy has resulted in premature referrals from on-call clinicians making decisions because she

6

Defendants' Response to Plaintiffs' Evidentiary Objections Re: Defendants' Brief and Reply on Transfers to Crisis Beds   (2:90-cv-00520 KJM-DB (PC))

bases the testimony on discussions with other staff.  As the Deputy Director, she is aware of the way after-hours referrals are made, reviewed, and analyzed as part of CDCR's assessment of the factors that contribute to the obstacles to compliance with Program Guide transfer timelines.  She is also aware of and qualified to testify to the reasons why CDCR is proposing a change to the after-hours referral process.  *See Karamsetty v. Wells Fargo & Co.*, 967 F. Supp. 2d 1305, 1318 (N.D. Cal. 2013) (bank executive was qualified to testify to purpose of policy).  Specifically, premature referrals lead to unnecessary crisis-care referrals and rescissions, and these obstacles are relevant to the Court's inquiry.  Plaintiffs' objections under Rules 602, 701, and 702 should be overruled.

Finally, Ms. Tebrock has the personal knowledge necessary to state in paragraph 5 of her supplemental declaration that "CDCR is able to call its on-call clinicians to return to the institution the following day or on a weekend day to provide the required face-to-face assessments."  As the Deputy Director, she has personal knowledge of the policies and procedures that CDCR has in place for recalling its clinicians and does not need to have spoken with all on-call clinicians as Plaintiffs claim.  The testimony is also valuable to the Court's understanding of Defendants' after-hours referral proposal.  The evidence is offered in response to Plaintiffs' concern that Defendants' after-hours' proposal would allegedly result in patients staying in alternative housing for extended periods of time while the patient waits for an in-person assessment.  (ECF No. 5688 at 10:22-26.)  The testimony clarifies for the Court and Plaintiffs that Defendants have the ability to recall clinicians the following day or on a weekend day to provide an in-person clinical evaluation the following morning under their proposal.  (*Id*. at 10:26-11:5.)  The Court should overrule Plaintiffs' objections under Rules 403, 602, and 901.

**IV.   DR. BRITTANY BRIZENDINE IS THE ASSISTANT DEPUTY DIRECTOR FOR CDCR'S STATEWIDE MENTAL HEALTH SERVICES DELIVERY SYSTEM; THE TESTIMONY AND DATA SHE PROVIDES FALLS WITHIN THE SCOPE OF HER POSITION.**

Dr. Brizendine declares that she is the Acting Assistant Deputy Director of the Statewide Mental Health Program for CDCR.  She has served in that position since May 2017, and declares that she is familiar with the "numerous complex procedures that govern the prison mental health care delivery system" and the "*Coleman* mandates."  (Brizendine Decl. ¶¶ 1-2.)  She is

7

responsible for supervising and managing headquarters and regional operations. (*Id.* ¶ 2.) She is a doctor of psychology and previously worked as a staff psychologist at California State Prison, Sacramento, where she worked "in the Mental Health Crisis Bed unit, the Enhanced Outpatient Program Administrative Segregation Unit, and the Psychiatric Services Unit." (*Id.*) She also served as the Chief Executive Officer and the Chief of Mental Health for Salinas Valley State Prison, as well as the Chief of Mental Health at the California Health Care Facility. (*Id.*) Similar to Ms. Tebrock, Dr. Brizendine was involved in preparing, and presenting, Defendants' data and the proposals and the underlying reasons for the proposals at the workgroups. Dr. Brizendine has the requisite personal knowledge to testify regarding the policies, procedures, and programs that exist in CDCR's mental-health system. *Barthelemy*, 897 F.2d at 1018.

As the Acting Assistant Deputy Director, Dr. Brizendine has the personal knowledge necessary to support her statements in paragraphs 4 and 9 of her declaration and paragraph 4 of her supplemental declaration, describing the measures that exist to keep patients safe in alternative housing and how current proposals will keep them safe. As a former staff psychologist in EOP and crisis-care programs, and a former Chief of Mental Health and Chief Executive Officer, she is uniquely qualified to testify about how patients will be kept safe in alternative housing under CDCR's after-hours-crisis-bed-referral proposal. Plaintiffs can challenge whether or not they believe Dr. Brizendine's testimony is correct or if the policy is not followed in individual instances, but her testimony is relevant and she has the qualifications to offer the testimony. The Court should overrule Plaintiffs' objections under Federal Rules of Evidence 401, 602, 701, 702, and 801.

Dr. Brizendine is also qualified to testify in paragraphs 5 to 7, and 10 of her declaration, and paragraph 7 of her supplemental declaration, that on-call evaluations limit on-call crisis evaluations and lead to higher rescission rates, and an in-person evaluation is a preferable method to determine a patient's necessary level of care and reduce rescission rates. She is also qualified to testify in paragraph 8 of her supplemental declaration that factors at individual institutions affect rescission rates. She is a psychologist with substantial experience working in EOP and crisis-bed care and supervising mental-health programs at the institutional, regional, and

8

Defendants' Response to Plaintiffs' Evidentiary Objections Re: Defendants' Brief and Reply on Transfers to Crisis Beds   (2:90-cv-00520 KJM-DB (PC))

1 headquarters levels. This includes direct work in programs at different institutions. As the
2 Acting Assistant Deputy Director she supervises headquarters and regional staff and has
3 overarching knowledge the programs, staffing, and patient populations of CDCR's institutions.
4 She was also involved in the workgroup process and the formulation and presentation of
5 Defendants' proposals. She has the knowledge and experience necessary to testify regarding on-
6 call versus in-person crisis evaluations that take place in CDCR's mental-health system.
7 Plaintiffs' objection is more about the weight to give the evidence and not its admissibility.
8 Plaintiffs' objections under Federal Rules of Evidence 602, 701 and 901 should be overruled.

9      Plaintiffs raise a general relevance declaration to paragraphs 6 to 8 of Dr. Brizendine's
10 supplemental declaration in support of Defendants brief. Plaintiffs object that the paragraphs are
11 irrelevant because "the paragraphs are cited nowhere in the brief, and therefore are not 'of
12 consequence in determining the action.'" (ECF No. 5691 at 6:3-7.) Whether something is cited
13 in a brief has never been the standard for relevance or whether something is consequential in
14 determining the action. The Court requested evidence on obstacles and remedies for timely crisis
15 bed transfers. The acting Assistant Deputy Director's clinical analysis of after-hours referrals and
16 rescissions is relevant to the Court's inquiry.

17 Dated: September 26, 2017                                Respectfully submitted,

XAVIER BECERRA
Attorney General of California
DANIELLE F. O'BANNON
Supervising Deputy Attorney General

*/s/ Tyler V. Heath*
TYLER V. HEATH
Deputy Attorney General
*Attorneys for Defendants*

CF1997CS0003
33065324.docx

9

Defendants' Response to Plaintiffs' Evidentiary Objections Re: Defendants' Brief and Reply on Transfers to Crisis Beds (2:90-cv-00520 KJM-DB (PC))