**Exhibit B**



# OCTOBER 16, 2017 UPDATE TO THE THREE-JUDGE COURT

This report reflects CDCR's efforts as of October 16, 2017 to develop and implement measures to comply with the Three-Judge Court's population reduction order. Because this is an evolving process, CDCR reserves the right to modify or amend its plans as circumstances change.

In February and March 2016, CDCR activated 1,584 infill beds and corresponding administrative and health care support facilities at Mule Creek State Prison. In December 2016, CDCR activated an additional 792 infill beds and corresponding administrative and health care support facilities at Richard J. Donovan Correctional Facility. The parties are currently engaged in the Court-ordered meet-and-confer process to reach an agreement on how such capacity should be counted for purposes of determining compliance with the Court's population reduction order. As of October 11, 2017, the State's prison population is approximately 135.5% of design capacity if the 2,376 infill beds are counted at 137.5% for the compliance calculation. If the 2,376 infill beds are counted at 100% for the compliance calculation, the prison population is approximately 136.5% of design capacity.

1. <u>Contracting for additional in-state capacity in county jails, community correctional facilities, private prison(s), and reduction of out-of-state beds:</u>

    Defendants have reduced the population in CDCR's 34 institutions by transferring inmates to in-state facilities.

    a. Private Prison (California City):

        The current population of California City is approximately 2,460 inmates.

    b. Community correctional facilities (CCFs) and modified community correctional facilities (MCCFs):

        The State currently has contracted for 4,218 MCCF beds that are in various stages of activation and transfer.

    c. County jails:

        The State continues to evaluate the need for additional in-state jail bed contracts to house CDCR inmates.

    d. Reduction of inmates housed out-of-state:

        On February 10, 2014, the Court ordered Defendants to "explore ways to attempt to reduce the number of inmates housed in out-of-state facilities to the extent feasible." Since that time, the State has reduced the out-of-state inmate population to 4,375 and has closed the Oklahoma out-of-state facility.

2. <u>Newly-enacted legislation/update on durability:</u>

In response to the Court's March 4, 2016 Order, Defendants will continue to report on enacted and pending legislation, policies, and construction that will ensure that compliance with the Court-ordered population cap is durable.

On October 11, 2017, the State enacted Assembly Bills 1448 and 1308, and Senate Bills 180 and 394. Assembly Bill 1448, with limited exceptions, codifies the elderly parole process for inmates 60 years or older who have served at least 25 years of continuous incarceration.[1] Assembly Bill 1308 expands the youth offender parole process for inmates whose crimes were committed before the age 23 to include inmates whose crimes were committed before the age of 25. Senate Bill 180 repeals sentence enhancements for certain prior controlled substances convictions. Senate Bill 394 creates a parole process for inmates sentenced to life without the possibility of parole who committed their controlling offense before the age of 18.

The State continues to implement Senate Bill 260 (2013) and Senate Bill 261 (2015), which allows inmates whose crimes were committed before the age of 23 to appear before the Board of Parole Hearings (the Board) to demonstrate their suitability for release after serving at least fifteen years of their sentence. From January 1, 2014 through September 30, 2017, the Board held 3,585 youth offender hearings, resulting in 926 grants, 2,191 denials, 468 stipulations to unsuitability, and there are currently no split votes that require referral to the full Board for further consideration. An additional 1,982 hearings were scheduled during this time period, but were waived, postponed, continued, or cancelled.

On October 3, 2015, the State also enacted Senate Bill 230, which provides that life inmates who are granted parole will be eligible for release, subject to applicable review periods, upon reaching their minimum eligible parole date. Life inmates will no longer be granted parole with future parole dates.[2]

Proposition 36, passed by the voters in November 2012, revised the State's three-strikes law to permit resentencing for qualifying third-strike inmates whose third strike was not serious or violent. As of September 30, 2017, approximately 2,288 third-strike inmates have been released.

On November 4, 2014, the voters passed Proposition 47, which requires misdemeanor rather than felony sentencing for certain property and drug crimes and permits inmates previously sentenced for these reclassified crimes to petition for resentencing. As of September 30, 2017, approximately 4,695 inmates have been released under Proposition 47.

On December 16, 2016, the California Secretary of State certified that The Public Safety and Rehabilitation Act of 2016 (the "Act") was passed by the voters.[3] The Act will serve as a durable remedy and gives the State authority to implement many of the court-

---

[1] Persons sentenced under the Three Strikes law; to life without the possibility of parole or death; or convicted of first degree murder of a peace officer are not eligible.
[2] As a result, the State has eliminated the parole process for inmates granted parole with future parole dates section of the report.
[3] Statement of Vote November 8, 2016 General Election (http://elections.cdn.sos.ca.gov/sov/2016-general/sov/2016-complete-sov.pdf)

ordered reforms through regulations. The Act reforms California's juvenile and adult criminal justice systems by: (1) establishing a parole consideration process for convicted nonviolent felons upon completion of the full term for their primary offense; (2) expanding current and creating new credit earning programs that authorize CDCR to award credits earned for good behavior and approved rehabilitative or educational achievements, and (3) requiring hearings in juvenile court for all juvenile offenders before they may be transferred to adult court. Initial estimates are that, as a result of the Act, the average daily adult inmate population will be reduced by approximately 2,000 inmates in Fiscal Year 2017-2018, growing to an inmate reduction of approximately 9,500 by Fiscal Year 2020-2021. It is projected that these anticipated reductions will enable the return of all 4,900 inmates from out-of-state facilities by 2020.

On March 24, 2017, CDCR submitted emergency regulations implementing the parole and credit changes set forth in the Act to the Office of Administrative Law. The Office of Administrative Law approved the regulations on April 13, 2017. On May 1, 2017, Defendants implemented Good Conduct Credits that are awarded to eligible inmates who comply with all prison rules and perform duties as assigned on a regular basis. These regulations codify the court-ordered credit earning increases for non-violent second strike offenders and minimum custody inmates, as well as increase credit earning opportunities all other inmates except the condemned and those serving life without parole. As a result of these changes, Defendants have modified the credit earning section of this report. Full details about the expanded credits can be found on CDCR's website at http://www.cdcr.ca.gov/proposition57/. Defendants implemented the Act's remaining credit processes—Milestone Completion, Rehabilitative Achievement, and Educational Merit credits—on August 1, 2017.

Defendants implemented the Act's nonviolent offender parole process on July 1, 2017. An update on the status of the measure is below.

Additionally, CDCR has added 2,376 beds with corresponding administrative and health care support facilities at Mule Creek State Prison and Richard J. Donovan Correctional Facility. CDCR continues to expand community reentry bed usage and is exploring options for increasing reentry bed use, including modifying statutory requirements to enable CDCR to place inmates in reentry facilities up to six months before their release dates, two months earlier than is currently permitted.

As of July 1, 2016, the State is expanding reentry services programming to each of the Department's institutions.[4] This new statewide reentry model will eliminate the need to transfer inmates to designated hub-institutions and allow any inmate with an assessed need for reentry services to access programming at their current institution. CDCR is currently in the process of contracting for services at all institutions.

3. <u>The Act's credit earning increases:</u>

As reported above, the Act's Good Conduct Credits have codified the Court-ordered credit increases for nonviolent, non-sex registrant second-offenders and minimum custody inmates, as well as well as increased credit earning opportunities all other inmates except the condemned and those serving life without parole. As a result of this

---

[4] As a result of the expansion of statewide reentry services, the State has eliminated the reentry hub section of this report.

3

measure, 1,346 inmates released in August had earned good conduct credit towards their advanced release date. These inmates earned an estimated average of 91.9 days of additional credit.[5]

The State will provide updates on the status of the Act's Milestone Completion, Rehabilitative Achievement, and Educational Merit credits as data becomes available.

4. <u>Parole determination process whereby nonviolent second-strikers will be eligible for parole consideration by the Board once having served 50% of their sentence:</u>

As authorized by the Court's June 20, 2017 Order, Defendants stopped referring inmates to the Board for this parole process on June 30, 2017. From January 1, 2015 through June 30, 2017, 12,677 nonviolent second-strike inmates were referred to the Board for review for parole. From January 1, 2015 through September 30, 2017, the Board approved 4,363 inmates for release and denied release to 5,110 inmates. Some cases are pending review until the inmate is within 60 days of his or her 50 percent time-served date. 457 inmates pending review under this measure have transitioned to the new nonviolent offender parole process because they were eligible for an earlier review under the new process.

5. <u>The Act's nonviolent offender parole process:</u>

CDCR began referring inmates to the Board for this process on July 1, 2017. From July 1, 2017 through September 30, 2017, 3,963 referrals were made to the Board (including 457 inmates who had previously been referred to the Board under the nonviolent second-striker parole consideration process, but were eligible for an earlier review under the nonviolent offender parole process). As of September 30, 2017, 2,001 referrals have been reviewed on the merits, with 404 inmates approved for release and 1,597 denied. Many referrals are pending review, including the 30-day period for written input from inmates, victims, and prosecutors and the Board's jurisdictional review process.

6. <u>Parole process for medically incapacitated inmates:</u>

The State continues to work closely with the Receiver's Office to implement this measure. The Receiver's Office is continuing to review inmates and is sending completed recommendations to CDCR. Recommendations received from the Receiver's office are reviewed by DAI and referred to the Board for a hearing. As of October 9, 2017, the Board has held 114 medical parole hearings under the revised procedures. An additional 28 were scheduled, but were postponed, continued, or cancelled.

7. <u>Parole process for inmates 60 years of age or older having served at least 25 years:</u>

The Board continues to schedule eligible inmates for hearings who were not already in the Board's hearing cycle, including inmates sentenced to determinate terms. From February 11, 2014 through September 30, 2017, the Board held 2,288 hearings for inmates eligible for elderly parole, resulting in 583 grants, 1,522 denials, 183 stipulations to unsuitability, and there currently are no split votes that require further review by the full Board. An additional 1,061 hearings were scheduled during this time period but were waived, postponed, continued, or cancelled.

---

[5] This number does not include inmates released from fire camps.

**4**

    As discussed above, the State enacted Assembly Bill 1448 on October 11, 2017, authorizing an elderly parole program for inmates age 60 or older who have served at least 25 years of incarceration. The State will continue to implement the Court-ordered elderly parole process until this matter is terminated or the February 10, 2014 Order is modified.

8.     <u>Reentry programs:</u>

    Contracts for the San Diego, San Francisco, Los Angeles, Kern County, and Butte County reentry programs are in place. The State continues to review and refer eligible inmates for placement consideration. As of October 11, 2017, 592 inmates are housed in reentry facilities.

9.     <u>Expanded alternative custody program:</u>

    The State's expanded alternative custody program for females, Custody to Community Transitional Reentry Program (CCTRP), provides female inmates with a range of rehabilitative services that assist with alcohol and drug recovery, employment, education, housing, family reunification, and social support. Female inmates in the CCTRP are housed at facilities located in San Diego, Santa Fe Springs (LA), Bakersfield, and Stockton. As of October 11, 2017, 326 female inmates are participating in the CCTRP.

13546461.2