1  XAVIER BECERRA
   Attorney General of California
2  MONICA N. ANDERSON
   Senior Assistant Attorney General
3  DANIELLE F. O'BANNON
   JAY C. RUSSELL
4  Supervising Deputy Attorneys General
   ELISE OWENS THORN, State Bar No. 145931
5  CHRISTINE M. CICCOTTI, State Bar No. 238695
   CHAD A. STEGEMAN, State Bar No. 225745
6  TYLER V. HEATH, State Bar No. 271478
   Deputy Attorney General
7    1300 I Street, Suite 125
     P.O. Box 944255
8    Sacramento, CA 94244-2550
     Telephone:  (916) 210-7325
9    Fax:  (916) 324-5205
     E-mail:  Tyler.Heath@doj.ca.gov
10 *Attorneys for Defendants*

11              IN THE UNITED STATES DISTRICT COURT

12            FOR THE EASTERN DISTRICT OF CALIFORNIA

13                    SACRAMENTO DIVISION

14

15

16 | | |
|---|---|
| **RALPH COLEMAN, et al.,** | 2:90-cv-00520 KJM-DB (PC) |
| Plaintiffs, | **JOINT SUBMISSION OF PROPOSED PROGRAM GUIDE ADDENDA TO INPATIENT CARE AND MENTAL HEALTH CRISIS BED TRANSFER TIMELINES; STIPULATED REQUEST FOR LEAVE TO SUBMIT BRIEFING FOR DECEMBER 20 STATUS CONFERENCE; STIPULATED REQUEST FOR EXTENSION OF TIME TO COMPLETE A MENTAL HEALTH CRISIS BED ADDENDUM** |
| v. | |
| **EDMUND G. BROWN JR., et al.,** | |
| Defendants. | |
| | Judge:      The Honorable Kimberly J. Mueller |

        On April 19, 2017, the Court ordered the parties to "meet and confer under the supervision

of the Special Master to develop an addendum to the Program Guide that identifies circumstances

under which time after an inmate-patient is referred to inpatient mental health care should be

excluded from Program Guide timelines for transfer to such care and timelines for completion of

[3200772.1]                                    1
Joint Submission of Proposed Program Guide Addenda; Stipulated Request for Leave to File Briefing and Request
for Additional Time  (2:90-cv-00520 KJM-DB (PC))

1    the referral process when such circumstances are present." (Ct.'s Order 13:25-14:1, Apr. 19,

2    2017, ECF No. 5610.)  The Court also ordered the parties to "develop an addendum to the

3    Program Guide that identifies exclusions, if any, to the Program Guide timeline for transfer to

4    mental health crisis bed care."  (*Id*. at 15:8-11.)  The parties were required to submit the inpatient

5    and crisis bed addenda to the Court for review and final approval.  (*Id*. at 14:1-2 and 15:10-11.)

6    After the parties requested extensions of the deadlines for finalizing both addenda, the Court

7    ultimately ordered the parties to "submit on or before November 30 a joint statement proposing

8    language for addenda to the Program Guide."  (Ct.'s Order 10:26-27, Nov. 6, 2017, ECF No.

9    5726.)  The parties have continued discussing Defendants' proposed exceptions to the transfer

10   timelines in frequent workgroup meetings and reached agreement on a significant part of the final

11   language.

12
13   I.    ADDENDUM TO ACUTE PSYCHIATRIC CARE AND INTERMEDIATE CARE FACILITY
           TRANSFER TIMELINES

14         Under the supervision of the Office of the Special Master, the parties have reached

15   substantial agreement on the language for the addendum of exceptions to acute psychiatric care

16   and intermediate care facility transfer timelines.  Three issues remain in dispute:

17         1.    Whether, in the case of a patient who refuses to transfer to a Psychiatric Inpatient

18   Program (PIP) after initially consenting to treatment, the timeline shall be suspended for a period

19   of no more than five (5) business days in order to allow for the completion of the due-process

20   hearing as set forth in Defendants' policy for conducting due-process hearings (Defendants'

21   position), or whether a more expedited timeframe of five (5) calendar days should apply

22   (Plaintiffs' position).

23         2.    Whether, in the case of a patient who cannot be transferred due to a medical condition

24   that cannot be treated at a PIP and is deemed more urgent than the need for mental health

25   treatment, a mental health clinician must document whether the medical need continues to

26   outweigh the mental health need on any schedule as dictated by the patient's condition

27   (Defendants' position), or whether the ongoing balancing of medical versus mental health

28

[3200772.1]                                          2

Joint Submission of Proposed Program Guide Addenda; Stipulated Request for Leave to File Briefing and Request
for Additional Time  (2:90-cv-00520 KJM-DB (PC))

1    urgency should be documented by mental health staff in the medical records at least once per

2    week (Plaintiffs' position).

3            3.      Whether, in the case of each of the proposed exceptions, the Program Guide

4    addendum shall require that a patient be transferred to acute care within four (4) or five (5)

5    calendar days, and to intermediate care within seven (7) or ten (10) calendar days, after the

6    exception resolves.  After extensive negotiation and compromises on both sides, Plaintiffs

7    propose the four and seven day timeframes, and Defendants propose the five and ten day

8    timeframes.

9            Attachment 1 to this joint statement is Defendants' most recent proposed addendum.  The

10    language that remains in dispute has been italicized and bolded.  The language that is not

11    italicized and bolded is not in dispute.

12    **II.    ADDENDUM TO MENTAL HEALTH CRISIS BED TRANSFER TIMELINES**

13            Under the supervision of the Office of the Special Master, the parties have met and

14    discussed language for an addendum of exceptions to the Mental Health Crisis Bed timeframe

15    and the barriers to timely admission as well as Defendants' initiatives to improve timely

16    admission.  On July 27, 2017, the parties stipulated to three general exceptions to the timeline and

17    possible yet-to-be identified exceptions.  (ECF No. 5653 at 4-5.)  On August 14, 2017, the parties

18    stipulated to, and the Court ordered, workgroup meetings to discuss data regarding obstacles to

19    the twenty-four-hour transfer timeframe, and review the application of specific exceptions.  (ECF

20    No. 5660 at 2.)  Although the parties' stipulations, and the Court's order, envisioned "a process to

21    exchange written materials, including individual patient-level data" (*id.* at 2), Defendants' current

22    reporting system has not yet been coded and adapted to produce reports with patient-level data

23    showing Defendants' application of the proposed exceptions.  However, the parties have met

24    regularly regarding the exceptions and to discuss Defendants' data and initiatives.

25            On August 29, 2017, the parties presented three issues to the court for resolution at a

26    September 28, 2017 status conference:  (1) Defendants' request to amend current policy such that

27    referrals to crisis bed would have been completed after an in-person assessment of the patient and

28    the time before the in-person assessment would have been excluded from the transfer timeline;

[3200772.1]                                    3

Joint Submission of Proposed Program Guide Addenda; Stipulated Request for Leave to File Briefing and Request
for Additional Time  (2:90-cv-00520 KJM-DB (PC))

1   (2) a dispute regarding when the crisis bed transfer timeline ends; and (3) whether Defendants

2   should be required to develop a report on crisis bed timelines, delays, and exceptions.  (ECF No.

3   5669 at 6-8.)  On October 10, 2017, the Court issued an order which denied Defendants' request

4   to delay the start of the MHCB transfer timeline until after a patient receives an in-person clinical

5   assessment, determined that the twenty-four-hour timeline ends when a patient arrives at the crisis

6   bed, and ordered Defendants to develop templates that capture the same data for MHCB's that are

7   captured in the monthly reports submitted for acute and intermediate transfers.  (Ct.'s Order 14:3-

8   4, 16:1-3, 17:6-11, Oct. 10, 2017, ECF No 5710.)[1]  In addition, the Court directed the parties to

9   work in the workgroups to identify exceptions to the crisis bed transfer timelines that are caused

10  "by unforeseeable delays or obstacles that arise during transportation and intake of an inmate-

11  patient to an MHCB unit," and stated that "the workgroup is the place where the components of

12  such reporting should be specifically developed and addressed."  (ECF No. 5710 at 15:19-16:5.)

13  The Court's October 10, 2017 Order changed the manner in which Defendants track the twenty-

14  four-hour timeline and Defendants have been working since then to adapt their system of

15  tracking.

16      Since the Court's October 10 order, the parties have met in workgroups on October 23,

17  October 30, November 20, November 28, and November 29, 2017.  Defendants discussed with

18  Plaintiffs and Special Master the challenges to developing exceptions contained in the Court's

19  October 10, 2017 order that CDCR can operationalize, track, and report.  Defendants have

20  produced aggregate data showing transportation times to crisis beds for the 2016 and 2017 Fiscal

21  Year, but Defendants have not yet finalized a report to monitor compliance and exceptions to, the

22  twenty-four-hour transfer timeline, or that would allow review of the application of proposed

23  exceptions to individual patient transfers.  The Court's November 6, 2017 Order set this subject

24  for discussion at the December 20, 2017 status conference.  (ECF No. 5726.)

25      Nonetheless, the parties have discussed CDCR's proposal regarding the addendum for crisis

26  bed transfer exceptions and reached a general agreement on the language for exceptions to timely

27      [1] Defendants have appealed the Court's October 10, 2017 order (ECF No. 5757) and
    reserve all of their rights with regards to that appeal, including whether the Court is divested of
28  jurisdiction over the issues decided by the order while the appeal is pending.

[3200772.1]                                                    4

1  MHCB transfers in instances of transfer refusal, urgent medical conditions, and out to court

2  patients.  The parties have not been able to fully discuss the appropriate timeframes for

3  completion of transfer of MHCB patients following resolution of such exceptions or of the scope

4  of the "other" exception for unforeseeable/unusual circumstances.  The parties seek additional

5  time for review of data and further discussion in an attempt to reach agreement on these points.

6        CDCR has also proposed, as a possible exception for transportation delays, a "safe harbor"

7  provision that would apply to patients placed on a special transport by an agreed upon time after

8  referral deemed likely to get them to the crisis bed institution within the twenty-four-hour

9  timeframe, even if in some cases the transfer is not successfully completed within that timeframe

10  because of traffic or other conditions.  Plaintiffs agree that some version of the "safe harbor"

11  provision could work as an exception, but both parties agree more time is needed to review

12  additional data and analyze whether or not the exception is workable and the precise contours of

13  the exception.

14        Attached to this joint submission as Attachment 2 is Defendants' most recent proposed

15  addendum.  The language that the parties agree is not yet finalized, due to the need for additional

16  time to review data and discuss the precise contours of the exceptions in practice, has been

17  italicized and bolded.  The parties have agreed to the language that is not italicized and bolded.

18  Attachment 2 also contains the proposed "safe harbor" exception for transportation delays that

19  Plaintiffs have agreed to consider as an exception.

20        The parties share the Court's goal of finalizing the timeframe exceptions as Program Guide

21  addendums, and therefore seek additional time to narrow the areas under discussion related to the

22  crisis bed addendum, particularly as to those exceptions contemplated by the Court's October 10

23  Order.  During this time, Defendants intend to share additional data on transfer times, complete

24  and share a compliance report on the twenty-four-hour timeline and application of exceptions,

25  and discuss and review whether a "safe harbor" transportation exception is workable.

26  Accordingly, in light of the Court's October 10, 2017 order, the parties request until March 29,

27  2017 to submit a final version of the addendum to the Mental Health Crisis Bed timelines.

28

1    **III.    REQUEST FOR LEAVE TO PROVIDE BRIEFING ON ISSUES IN DISPUTE IDENTIFIED**
2    **ABOVE AND AGENDA ITEMS FROM THE COURT'S NOVEMBER 6, 2017 ORDER.**

3    The parties request leave to file briefs addressing the areas of dispute identified above with

4    respect to the addendum to inpatient transfer timelines.  In addition, Defendants have requested

5    an opportunity to brief agenda items B, C, and D from the Court's November 6, 2017 order, and

6    Plaintiffs agree that briefing would assist the Court in advance of the status conference.

7    Specifically, the parties propose to brief the following agenda items

8        B) how the Court's October 10, 2017 order addressing transportation time for transfer to

9            Mental Health Crisis Beds (MHCBs) affects future reporting;

10        C) effectiveness of Defendants' steps to improve timeliness of transfers to MHCBs; and

11        D) dates for submitting templates for reporting on MHCB transfers and issuance of an

12            enforcement order to achieve compliance with the Program Guide's twenty-four-hour

13            timeline for transfers to MHCB care.

14    (*See* ECF No. 5726 at 10.)  Briefing on agenda items B, C, and D is necessary and appropriate

15    because they require a factual discussion and legal argument and analysis.  The parties may be

16    able to present some of the facts and arguments by oral presentation, but briefing will provide the

17    Court with a more thorough discussion of the topics, and promote judicial efficiency.

18    The parties propose to exchange their positions on these topics, together with any evidence

19    that they intend to file in connection with the briefing, on December 11.  The parties additionally

20    propose to file one joint brief with the Court that will be responsive to each other's positions, by

21    December 15.  Defendants also intend to call witnesses at the December 20, 2017 status

22    conference to discuss the agenda items, and will provide Plaintiffs with a tentative list of these

23    witnesses and the topics on which they intend to elicit testimony on December 11 if the Court

24    agrees to hear live testimony on December 20.

25    The undersigned counsel for the parties certify that they have reviewed the following

26    relevant court orders:  June 6, 1994 (Docket No. 547); September 13, 1995 (Docket No. 612);

27    June 27, 1997 order (Docket No. 858); July 26, 1999 order (ECF No. 1055); July 3, 2000 order

28    (ECF No. 1176); September 14, 2000 (ECF No. 1201); April 4, 2001 order (ECF No. 1262); June

[3200772.1]
6
Joint Submission of Proposed Program Guide Addenda; Stipulated Request for Leave to File Briefing and Request
for Additional Time  (2:90-cv-00520 KJM-DB (PC))

1 | 27, 2001 order (ECF No. 1278); October 8, 2002 order (ECF No. 1431); March 3, 2006 order

2 | (ECF No. 5583); March 12, 2007 order (ECF No. 2158); July 22, 2011 order (ECF No. 4045);

3 | April 5, 2013 order (ECF No. 4539); April 19, 2017 order (ECF No. 5610); June 8, 2017 orders

4 | (ECF Nos. 5631 and 5632); August 14, 2017 stipulation and order (ECF No. 5660); September

5 | 22, 2017 order (ECF No. 5689); October 10, 2017 order (ECF No. 5710); and November 6, 2017

6 | order (ECF No. 5726).

7 | Dated:  November 30, 2017                            Respectfully submitted,

8 |                                                      XAVIER BECERRA
                                                         Attorney General of California
9 |                                                      DANIELLE F. O'BANNON
                                                         JAY C. RUSSELL
10 |                                                     Supervising Deputy Attorney General

11 |                                                     */S/ TYLER V. HEATH*

12 |                                                     TYLER V. HEATH
                                                         Deputy Attorney General
13 |                                                     *Attorneys for Defendants*

14 |

15 |                                                     ROSEN BIEN GALVAN & GRUNFELD
                                                         LLP

16 |                                                     By: */s/ Krista Stone-Manista*

17 |                                                     Attorneys for Plaintiffs

18 |

19 | CF1997CS0003 / 33156717

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

[3200772.1]                                7

# ATTACHMENT 1

**Addendum to 12.11.2101 (A) PIP Policy and Procedure Referral and Admission**

Exceptions to Transfer Timelines:

There are circumstances under which the timelines identified above cannot be met as outlined below. The circumstances identified below shall temporarily suspend the transfer timelines only for the period of time in which the governing exception applies, as detailed below.  More than one exception may apply.

**Transfer Refusal:**

If a patient is accepted to a Psychiatric Inpatient Program (PIP) and, after signing a form consenting to treatment, refuses to transfer, the transfer timeline shall be suspended for a period of no more than *five (5) business days* in order to allow for the completion of a due process hearing.  While the due process hearing is occurring, CDCR shall continue the referral process and once the due process hearing is completed, CDCR shall transfer the patient as expeditiously as possible but no later than *five (5) calendar days* for acute referrals and *ten (10) calendar days* for intermediate care referrals.

If a patient is accepted to a Psychiatric Inpatient Program (PIP) and, after having a completed due process hearing, refuses to transfer, the transfer timeline shall be suspended. Every effort shall be made by the treating clinician to encourage the patient to vacate the cell voluntarily for transfer. If the patient continues to refuse to vacate the cell within 48 hours and still requires inpatient care, the controlled use of force policy shall be initiated. The transfer timeline suspended upon the patient's refusal to vacate the cell shall resume on the 49th hour after refusal.

**Medical Conditions:**

If a patient has a medical condition that cannot be treated at a PIP and that is deemed more urgent than the mental health treatment need at or after the time of the referral, as determined by a joint team of medical and mental health clinicians, a medical hold shall be ordered. The relative urgency of the medical and mental health needs shall be continually monitored by the joint team, and mental health staff shall document the reasons that the medical need continues to outweigh the mental health need *as dictated by the patient's condition*.  If resolution of the medical issue delays CDCR's ability to transfer the patient to the PIP within the transfer timelines, upon clearance for transfer and acceptance to a PIP, the patient shall be transferred to the next available inpatient bed commensurate with the referral. That transfer shall be completed within *five (5) calendar days* of resolution of the medical issue for Acute referrals and within *ten (10) calendar days* for ICF referrals.

**Out to Court:**

During the referral process, if a patient is physically unavailable for transfer to a PIP due to an order to appear in state or federal court, necessitating transfer out of the institution or to an institution nearest the court, or is already out to court when the complete referral is received by IRU, HCPOP shall track the patient and notify IRU, the referring institution and, if applicable, the receiving PIP upon the patient's return from court.

If the time spent out to court delays CDCR's ability to transfer the patient to a psychiatric inpatient program within the transfer timelines, the transfer timeline shall be modified.

Upon evaluation when the patient returns, which shall occur emergently, the evaluating mental health clinician shall ensure the patient is placed in the appropriate clinical setting and the facility's inpatient coordinator notified of the patient's return. If accepted, the admission shall occur as soon as possible and within ***five (5) calendar days*** of returning from court for Acute referrals and within ***ten (10) calendar days*** for ICF referrals.

**Unusual Circumstances**

Transfer timelines may be suspended in unusual circumstances outside the control of CDCR. Such circumstances shall be reported to the Statewide Director of the Mental Health Program, and documented by IRU in a report to the statewide Quality Management committee to monitor frequency and any possible corrective action. Staff shall complete the referral, transfer, and admission process within ***five (5) calendar days*** for Acute referrals and within ***ten (10) calendar days*** for ICF referrals once the circumstances resulting in the delay in transfer have resolved.

# ATTACHMENT  2

**Addendum to 12.05.200 MHCB Referral, Referral Rescission, and Discharge Policy**

Transfer Timelines

Patients requiring Mental Health Crisis Bed (MHCB) care shall be admitted to the MHCB within 24 hours of referral.

Definition of Transfer:  Transfers starts at the day and time the patient's level of care is changed to MHCB within the healthcare record and ends upon arrival, according to the Strategic Offender Management System (SOMS) arrival date/time.

Exceptions to Transfer Timeline:

There are circumstances under which the timeline cannot be met as outlined below. The circumstances identified below shall temporarily suspend the transfer timelines only for the period of time in which the governing exception applies, as detailed below.  Once the exception ends, inmates must be transferred to an MHCB *as expeditiously as possible*. More than one exception may apply.

**Transfer Refusal:**

If a patient refuses to transfer, the transfer timeline shall be suspended. Every effort shall be made by the treating clinician to encourage the patient to vacate the cell voluntarily for transfer. If the patient continues to refuse to vacate the cell within 48 hours and still requires inpatient care, the controlled use of force policy shall be initiated. The transfer timeline suspended upon the patient's refusal to vacate the cell shall resume on the 49th hour after refusal.

**Medical Conditions:**

If a patient is out to hospital or on a medical hold due to a medical condition that cannot be treated at an MHCB and that is deemed more urgent than the mental health treatment need at or after the time of the referral, the transfer timeframe shall be suspended.

If the medical condition is deemed more urgent than the mental health treatment need, as determined by a joint team of medical and mental health clinicians, a medical hold shall be ordered. The relative urgency of the medical and mental health needs shall be continually monitored by the joint team, and mental health staff shall document the reasons that the medical need continues to outweigh the mental health need *as dictated by the patient's condition*.  If resolution of the medical issue delays CDCR's ability to transfer the patient to the MHCB within the transfer timelines, upon clearance for transfer and acceptance to a MHCB, the patient shall be transferred to the next available bed *as expeditiously as possible*.

**Out to Court:**

During the referral process, if a patient is physically unavailable for transfer to an MHCB due to an order to appear in state or federal court, necessitating transfer out of the institution or to an institution nearest the court, HCPOP shall track the patient and transfer the patient upon return from out to court status.  If the time spent out to court delays CDCR's ability to transfer the patient to an MHCB within the transfer timeline, the patient shall be transferred to the next available bed *as expeditiously as possible*.

**Unforeseeable Delays or Obstacles that Arise During Transportation**

*Transfer timelines may be suspended in unusual circumstances outside the control of CDCR, including, but not limited to natural disasters, travel conditions, intake delays, or patient behaviors preventing safe transfer. Such circumstances shall be reported to the Statewide Director of the Mental Health Program, and documented in a report to the statewide Quality Management committee to monitor frequency and any possible corrective action.  Staff shall take every reasonable step to complete the referral, transfer, and admission process as expeditiously as possible.*

**Transportation to Outside MHCBs**

*Inmates admitted to MHCBs within twenty-four (24) hours of referral are compliant with timeframes.  Notwithstanding this requirement, if the inmate is placed on the special transport within eighteen (18) hours of referral but arrives after twenty-four (24) hours, they are deemed compliant with the timeframes.  For inmates who are placed on the special transport within eighteen (18) hours of referral but arrive after hour thirty (30), CDCR will investigate the reason for delay and document the results.*

<u>Documentation</u>

Staff shall document the date and time the patient became unavailable to transfer, the reason for the delay, and the resolution date and time of the delay reason in the healthcare record for all approved exception reasons.  When transfer is delayed due to transfer to court or outside medical, follow up documentation shall occur immediately upon the patient's return, or on the date of expected return, whichever comes first.