1   DONALD SPECTER – 083925           MICHAEL W. BIEN – 096891
    STEVEN FAMA – 099641              JEFFREY L. BORNSTEIN – 099358
2   MARGOT MENDELSON – 268583         JANE E. KAHN – 112239
    PRISON LAW OFFICE                 ERNEST GALVAN – 196065
3   1917 Fifth Street                 THOMAS NOLAN – 169692
    Berkeley, California  94710-1916  LISA ELLS – 243657
4   Telephone:   (510) 280-2621       KRISTA STONE-MANISTA – 269083
                                      JENNY S. YELIN – 273601
5   CLAUDIA CENTER – 158255           MICHAEL S. NUNEZ – 280535
    AMERICAN CIVIL LIBERTIES UNION    JESSICA WINTER – 294237
6   FOUNDATION OF NORTHERN            ROSEN BIEN
    CALIFORNIA, INC.                  GALVAN & GRUNFELD LLP
7   39 Drumm Street                   50 Fremont Street, 19th Floor
    San Francisco, California  94111-4805   San Francisco, California  94105-2235
8   Telephone:   (415) 621-2493       Telephone:   (415) 433-6830

9   Attorneys for Plaintiffs

10

11                    UNITED STATES DISTRICT COURT

12                   EASTERN DISTRICT OF CALIFORNIA

13

14   RALPH COLEMAN, et al.,                Case No. 2:90-CV-00520-KJM-DB

15              Plaintiffs,                 **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR**

16       v.

17   EDMUND G. BROWN, JR., et al.,          **(1) A CASE MANAGEMENT ORDER REGARDING FUTURE EXPERT TOURS;**

18              Defendants.

19                                          **(2) A CASE MANAGEMENT ORDER REGARDING MOTIONS ON STAFFING REQUIREMENTS;**

20

21                                          **(3) A CASE MANAGEMENT ORDER REGARDING TERMINATION MOTIONS;**

22

23                                          **(4) SANCTIONS BASED ON EX PARTE EXPERT PRISON TOURS.**

24

25                                          Judge:   Hon. Kimberly J. Mueller
                                            Date:    February 28, 2018
26                                          Time:    10 a.m.
                                            Crtrm.:  3, 15th Floor
27

28

# TABLE OF CONTENTS

Page(s)

I.      INTRODUCTION ................................................................................................ 1

II.     FACTUAL AND PROCEDURAL BACKGROUND ............................................. 2

    A.      This Court, the Three-Judge Court, and the *Plata* Court Have All Determined that Plaintiffs' Attendance at Defendants' Expert Tours is Appropriate and Necessary ................................................................ 2

    B.      Plaintiffs Proposed a Stipulation Governing Expert Tours and Termination Proceedings Following the *Plata* Court's Order ........................ 4

    C.      Defendants Retained Experts to Review Staffing Issues In Response to the Court's October 10, 2017 Order, and Offered to Meet and Confer About Plaintiffs' Request to Accompany the Experts on Tours ......... 6

III.    A CASE MANAGEMENT ORDER MANDATING THAT ALL ONSITE EXPERT TOURS BE CONDUCTED IN THE PRESENCE OF COUNSEL FOR ALL PARTIES SERVES THE INTEREST OF EFFICIENT DISCOVERY AND JUDICIAL ECONOMY, PROTECTS CLASS MEMBERS, AND IS CONSISTENT WITH LAW AND PRECEDENT .............. 9

    A.      The Attendance of Counsel for All Parties During Expert Tours Promotes Efficiency and Judicial Economy ....................................................... 10

    B.      Attendance of Plaintiffs' Counsel at Defendants' Expert Tours Protects Class Members from Unauthorized Ex Parte Communications ................................................................................. 12

    C.      Plaintiffs' Counsel's and Experts' Confidential Interviews with Class Members Are Not Analogous to Defendants' Ex Parte Expert Tours ......... 13

IV.     A CASE MANAGEMENT ORDER GOVERNING ANY MOTION REGARDING STAFFING REQUIREMENTS WOULD PROMOTE EFFICIENCY AND JUDICIAL ECONOMY GIVEN THE EVENTS SET FORTH ABOVE ............................................................................ 14

V.      A CASE MANAGEMENT ORDER GOVERNING ANY FUTURE TERMINATION MOTIONS WOULD ALSO PROMOTE ORDERLY AND EFFICIENT DISCOVERY AND PROMOTE JUDICIAL ECONOMY ............... 15

VI.     DEFENDANTS' CONDUCT WITH RESPECT TO THE STAFFING EXPERTS' TOURS DEMONSTRATES BAD FAITH AND WARRANTS APPROPRIATE REMEDIES FROM THE COURT ................................................. 19

    A.      Defendants Engaged in Bad-Faith Conduct by Delaying and Refusing to Meaningfully Meet and Confer Regarding the Staffing Experts' Tours and by Allowing those Tours to Proceed Prior to Resolution of this Dispute ...................................................................................... 19

    B.      Plaintiffs Request that the Court Order Appropriate Remedies for Defendants' Conduct .......................................................................... 19

VII.    CONCLUSION .................................................................................................... 20

[3216449.8]

# TABLE OF AUTHORITIES

Page(s)

Cases

*Chambers v. NASCO, Inc.*
 501 U.S. 32 (1991) ........................................................................... 16

*Coleman v. Wilson*
 912 F. Supp. 1282 (E.D. Cal. 1995) ......................................... 2, 9, 12

*Congoleum Indus., Inc. v. Armstrong Cork Co.*
 319 F. Supp. 714 (E.D. Pa. 1970) ................................................... 11

*Fink v. Gomez*
 239 F.3d 989 (9th Cir. 2001) ........................................................... 19

*In re Newman*
 782 F.2d 971 (Fed. Cir. 1986) ......................................................... 10

*Kubota v. Shibuya*
 999 F.2d 517 (Fed. Cir. 1993) ......................................................... 11

*Lewis v. Tel. Emps. Credit Union*
 87 F.3d 1537 (9th Cir. 1996) ........................................................... 20

*Mitchell v. Cate*
 No. 2:08-CV-01196 JAM EFB (E.D. Cal.) ...................................... 11

*Nat'l Dairy Prods. Corp. v. L. D. Schreiber & Co., Inc.*
 61 F.R.D. 581 (E.D. Wis. 1973) ...................................................... 11

*Plata v. Brown*
 745 F.3d 1070, 1077 (9th Cir. 2014) ....................................... passim

*United States v. W.R. Grace*
 526 F.3d 499 (9th Cir. 2008) ........................................................... 16

*Wagoner v. Barger*
 463 F.2d 1377 (C.C.P.A. 1972) ....................................................... 10

Statutes

18 United States Code § 3626(b)(3) ...................................................... 16

18 United States Code § 3626(e)(1) ...................................................... 15

Federal Rule of Civil Procedure 1 ........................................................ 10

Federal Rule of Civil Procedure 16 ...................................................... 16

Federal Rule of Civil Procedure 26(a)(2)(A)-(C) .................................. 4

[3216449.8]

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

The *Coleman* class of prisoners brings this motion after trying for months to secure the agreement of the defendant state officials to an orderly procedure for expert review of the prison mental health program in advance of significant motions in this case.  The orderly procedure Plaintiffs sought is already set forth in this Court's prior orders, and is consistent with Ninth Circuit controlling law set forth in the closely related *Plata* case concerning the same system-wide prison medical care system.  *Plata v. Brown,* 745 F.3d 1070, 1077 (9th Cir. 2014).

In the past two months, Defendants have been delaying meeting and conferring on an orderly process for expert inspections.  Plaintiffs have now learned that Defendants were simultaneously conducting expert inspections of nine prisons for the purpose of preparing motions to this Court for relief from court-ordered mental health staffing requirements. The tours were conducted without the knowledge or approval of the Special Master and without notice to or the opportunity for Plaintiffs' counsel to observe, as required by prior orders of this Court.  To add insult to injury, Defendants deprived Plaintiffs of the opportunity to timely bring this issue before this Court by pretending to engage in a delayed meet and confer process while the tours were underway.  Defendants' conduct and strategy harkens back to their secret termination expert tours conducted in 2011 and 2012, condemned by this Court's April 5, 2013 Order denying the motion to terminate.  Order Den. Defs.' Mot. to Terminate, Apr. 5, 2013, ECF No. 4539, 9-23.

Deprived of the opportunity to observe these tours and to protect the rights of our clients, Plaintiffs request appropriate Court orders to take expedited discovery, to consider appropriate sanctions in a future proceeding, and to enter a case management order prohibiting this conduct and providing appropriate notice to Plaintiffs' counsel and the Court of future litigation including motions to terminate under the Prison Litigation Reform Act ("PLRA").

//

[3216449.8]

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    This Court, the Three-Judge Court, and the *Plata* Court Have All Determined that Plaintiffs' Attendance at Defendants' Expert Tours is Appropriate and Necessary

Prior to the 1993 trial of this matter, the parties agreed to conduct joint expert prison inspections.  The experts were able to achieve a fully shared factual basis from which to draw the expert opinions presented at trial.  *See Coleman v. Wilson*, 912 F. Supp. 1282, 1303 n.22 (E.D. Cal. 1995) (analyzing Defendants' objections to Plaintiffs' experts' methodology and noting that "at least for purposes of prison tours, plaintiffs' experts and defendants' experts used the same methods and worked in teams").

This collaboration did not continue in the remedial stage.  In 2007, the parties litigated the question of expert inspections in this case in connection with the Three-Judge Court proceedings.  Defendants refused to provide notice of their experts' prison tours. The Three-Judge Court ordered that Defendants must "provide plaintiffs and [intervenors] with reasonable notice of any scheduled site inspection by a defense expert, and counsel for plaintiffs and [intervenors] will be permitted to attend and observe any such inspection."  Order, Oct. 30, 2007, ECF No. 2495, at 4.  The court observed that such an order was warranted because:

> The court anticipates that the presence of all counsel on all expert inspections will create the "common factual baseline" described by plaintiffs concerning the events of each inspection, thereby reducing the number of preliminary questions that must be explored in depositions and/or at the trial of this matter.  In addition, given the likelihood that defendants' experts will want to talk with members of the plaintiff class[,] . . . the presence of counsel minimizes potential conflicts arising from these communications.

*Id.*

Defendants chose to ignore this precedent (and law of the case) in 2011 and 2012 when they secretly embarked on a lengthy series of ex parte prison tours with their experts in support of their surprise termination motion filed in January 2013.  In addition to eliminating any possibility of the common factual baseline envisioned by the 2007 order, Defendants arranged for their termination experts to conduct interviews with class

[3216449.8]

1    members for litigation purposes and without the presence of Plaintiffs' counsel.  This

2    Court reiterated the applicability of the 2007 Three-Judge Court order in issuing its Order

3    to Show Cause regarding why Defendants should not be sanctioned in connection with the

4    termination experts' tours:

> Given that joint expert tours were conducted in anticipation of the original trial in this action, and ordered by Judge Moulds in connection with plaintiffs' request for additional relief in this matter in the form of a prisoner release order, if nothing else, common sense should have suggested to defendants and their counsel that the October 30, 2007 order applies to litigation-related expert tours in this action.

9    Order and Order to Show Cause, Mar. 18, 2013, ECF No. 4414, at 2.

10    The Court eventually found Defendants' interviews with unrepresented class

11    members to be sanctionable conduct and struck Defendants' entire expert reports as

12    inextricably tainted by the ethical violation that had occurred throughout the experts' tours.

13    Order Den. Defs.' Mot. to Terminate, Apr. 5, 2013, ECF No. 4539, at 22.  While the Court

14    went on to also consider whether, in the alternative, "defendants have made their case" if

15    the Court were to consider the evidence set out in the tainted expert reports, the Court

16    noted that they should, at best, be given "significantly diminished" weight.  *Id.* at 23 n.21.

17    In light of Defendants' litigation tactics in this case, the *Plata* plaintiffs obtained a

18    court order in 2013 re-opening discovery, requiring all consultant and expert tours to be

19    noticed and jointly conducted, and specifying:

> All counsel will be permitted to accompany all consultants and experts on prison tours, but opposing counsel shall not be permitted to participate or listen in on any communications between retained consultants and experts and their counsel, or between consultants and experts retained by the same party. Reasonable notice of any prison visits by consultants or experts must be provided to opposing counsel.

24    *Plata v. Brown*, No. 3:01-cv-01351-TEH, Feb. 21, 2013, ECF No. 2546, at 4-5.

25    As to plaintiffs' request for notice and discovery in advance of a termination

26    motion, the *Plata* court found that "it would be fundamentally unfair to allow Defendants

27    an unlimited time to prepare for filing a motion while permitting Plaintiffs only the time

28    allowed by the PLRA's automatic stay – less the time required for a hearing and for the

[3216449.8]

1   Court to make a ruling – to prepare an opposition that will likely involve substantial

2   evidence." *Id.* at 3.  The court therefore set forth the following schedule in anticipation of

3   any motion to terminate:

4       1. Defendants shall disclose the identity of any expert witnesses and provide
    expert reports in compliance with Federal Rules of Civil Procedure

5       26(a)(2)(A)-(C) at least 120 days prior to filing any motion to terminate.

6       2. Plaintiffs shall disclose the identity of any expert witnesses and provide

7       expert reports in compliance with Rules 26(a)(2)(A)-(C) no later than 14
    days after Defendants' expert disclosures.

8       3. Expert discovery shall be completed within 120 days after Defendants'

9       expert disclosures.

10

11   *Id.* at 5.

12       Defendants appealed this *Plata* order, arguing that its termination-scheduling

13   provisions violated the PLRA.  The Ninth Circuit affirmed, finding that the termination-

14   scheduling order did not violate the PLRA, and that it was "consistent with [the district

15   court's] broad authority to manage complex litigation."  *Plata v. Brown,* 754 F.3d 1070,

16   1077 (9th Cir. 2014).

17   **B.   Plaintiffs Proposed a Stipulation Governing Expert Tours and Termination Proceedings Following the *Plata* Court's Order**

18

19       After several earlier conversations on the subject, on May 12, 2017, Plaintiffs asked

20   Defendants to enter into a stipulation similar to the scheduling order issued in *Plata*.  Bien

21   Decl. ¶ 1, Ex. A.  With respect to the conduct of expert site inspections, Plaintiffs

22   requested that Defendants agree to two basic principles:

23       1. Opposing counsel will have the right to accompany and observe consultants and
    experts on prison tours, but opposing counsel shall not be permitted to participate or

24       listen in on any communications between retained consultants and experts and their

25       counsel, or between consultants and experts retained by the same party. Reasonable

26       notice of any prison visits by consultants or experts must be provided to opposing
    counsel.

27       //

28       //

4

[3216449.8]

2. Defendants' counsel, experts, and consultants shall not communicate with class members without notice to and the consent of, nor outside the presence of, Plaintiffs' counsel.

*Id.* Ex. A.

Plaintiffs' proposed stipulation also asked Defendants to agree that a reasonable schedule of notice and discovery would govern any motion to terminate filed by Defendants, consistent with the schedule approved by the Ninth Circuit in *Plata v. Brown*, 754 F.3d 1070, 1077 (9th Cir. 2014). *See* Bien Decl. ¶ 1, Ex. A. The proposed schedule was modified from the *Plata* court's order to reflect the parties' experience during the *Coleman* termination proceedings in 2013 and promote the efficient and fair conduct of discovery and trial preparation.

1. To ensure that both parties have sufficient time for discovery if Defendants choose to file a motion to terminate, and given the restrictions of the PLRA's automatic stay provisions, the parties agree that Defendants shall provide the Court and Plaintiffs with at least 170 days' notice of any motion to terminate so that the Court may reopen discovery;

2. Defendants shall disclose the identity of any expert witnesses, including name, resume, and the general subject matter(s) on which the expert(s) will opine, at least 150 days prior to filing any motion to terminate;

3. Plaintiffs shall disclose the identity of any expert witnesses, including name, resume, and the general subject matter(s) on which the expert will opine, no later than 30 days after Defendants' expert disclosures;

4. Expert tours, subject to the provisions outlined in paragraphs A.1 and 2 above, shall be concluded at least 45 days prior to filing any motion to terminate;

5. The parties shall have 45 days to exchange expert reports after the conclusion of the expert tours.

*Id.* Ex. A.

At a meeting on May 22, 2017, Defendants expressed reluctance to enter into a stipulation, stating that no termination motion was then contemplated. *Id.* ¶ 2. While Defendants promised to consider the matter further, Plaintiffs received no counter-proposal. *Id.*

1    **C.    Defendants Retained Experts to Review Staffing Issues In Response to the Court's October 10, 2017 Order, and Offered to Meet and Confer About Plaintiffs' Request to Accompany the Experts on Tours**

2

3    On December 6, 2017, Defendants notified Plaintiffs that they had retained experts

4    to review Defendants' staffing plan in response to the Court's October 10, 2017 order.

5    Bien Decl. ¶ 3.  Plaintiffs requested more information via email on December 11, 2017, to

6    which Defendants provided a partial response on December 13, 2017.  *Id*. ¶¶ 4-5, Exs. B,

7    C.  Plaintiffs requested to accompany the experts on any onsite inspections during an All-

8    Parties' workgroup call on December 18, 2017.  *Id*. ¶ 6.  Defendants stated that the parties

9    could meet and confer further on the subject and asked Plaintiffs to state their objection in

10   writing.  *Id*.  They did not, however, disclose the fact that their experts were already

11   touring the prisons in December 2017 without Plaintiffs, and would continue doing so until

12   late January 2018 even while Plaintiffs were seeking in good faith to informally resolve

13   this dispute.  *Id*. ¶ 14.

14   On December 21, 2017, Plaintiffs formally reiterated their request to attend

15   Defendants' staffing experts' tours and requested to meet and confer further on the subject

16   in early January 2018 given the upcoming holidays.  *Id*. ¶ 7, Ex. D.  Plaintiffs further

17   reiterated their expectation that the expert team not tour any prisons unless this dispute was

18   resolved.  *Id.* Ex. D at 4.  Defendants did not respond.

19   Plaintiffs wrote again to Defendants on January 9, 2018, requesting a response to

20   the December 21 letter.  *Id.* ¶ 8, Ex. E.  Having heard nothing, Plaintiffs' counsel next

21   contacted Defendants' counsel by telephone on January 16 to request a response and was

22   informed Defendants would respond soon.  *Id.* ¶ 9.  Plaintiffs finally received a response

23   by email on January 17 – the day before a previously scheduled All-Parties' meeting, and a

24   month after Plaintiffs first clearly raised the dispute.  *Id*. ¶ 10, Ex. F.  Defendants' response

25   stated that Defendants "do not agree that it is necessary or appropriate for Plaintiffs'

26   counsel to accompany Defendants' consultants on any prison visits," and would not agree

27   that the experts would not conduct tours without Plaintiffs' counsel.  *Id.* Ex. F at 2.  Once

28   again, Defendants did not disclose that most of the experts' tours had already occurred in

[3216449.8]

the month between Plaintiffs' demand to attend and Defendants' response.  The parties further discussed this dispute during the January 18, 2018 All-Parties' Meeting. Defendants maintained their position, but stated they would discuss the matter further, leaving the impression that negotiations were still in progress.  *Id.* ¶¶ 11-12. The Special Master informed Defendants that he too was interested in notice and the opportunity to observe the tours.  *Id.* ¶ 11.  Plaintiffs informed Defendants that unless an agreement was reached, Plaintiffs would file a motion for a court order allowing them to attend the instant staffing expert tours, which Plaintiffs believed in good faith had yet to start, and requesting a standing order regarding the same for all expert inspections going forward.  *Id.*

Plaintiffs then wrote to Defendants on January 22, 2018, reiterating their intent to file a motion, and again informing Defendants of their expectation that the staffing experts would not conduct any onsite tours while this dispute awaits resolution by the Court.  *Id.* ¶ 13, Ex. G.  Plaintiffs offered Defendants an option to agree to an expedited hearing schedule in order to facilitate resolution quickly should Defendants so prefer.  At Defendants' request, the parties held a meet and confer call on the afternoon of January 22, during which Plaintiffs learned for the first time that Defendants' staffing experts had already conducted the bulk of their contemplated prison tours, and that the final tours were scheduled over the following few days. *Id.* ¶ 14.  Defendants stated that the experts had conducted meetings with supervisory staff, observed treatment areas and the physical layouts of the prisons visited, and had conducted meetings with clinicians at each prison. *Id.*

Defendants have since attempted to characterize these experts as "consultants" retained merely to provide recommendations.  But their December 13 email, read in connection with the Court's October 10, 2017 order, makes it clear that the experts were retained to "recommend changes to the current [staffing] plan" – that is, to support Defendants' request to "revisit the previously-ordered staffing ratios" previously denied by the Court as lacking in evidentiary foundation.  *Id.* Ex. C; Order, Oct. 10, 2017, ECF No. 5711, at 25.  Defendants' counsel made this intent explicit on January 18, informing

1  Plaintiffs' counsel that the experts had been retained specifically to opine that the present

2  staffing ratios for psychiatrists were excessive.  Bien Decl. ¶ 12.

3          Defendants' position appears to be that "the staffing consultants are currently non-

4  disclosed experts for consultation purposes" because "Defendants have not filed a motion

5  seeking relief from the Court's staffing orders."  *Id.* ¶ 10, Ex. F.  Under this twisted logic,

6  Defendants need never comply with the Court's orders concerning notice to opposing

7  counsel and the opportunity to observe expert prison tours because the transformation from

8  "consultant" to "litigation expert" will only take place *after* the tours are completed.  This

9  specious tactic makes a mockery of the purpose and intent of the Court's prior orders, and

10 of controlling Ninth Circuit law.

11         Defendants have been open about their intent to challenge the existing court-

12 ordered staffing ratios, which they consistently have been unable to meet: "After more than

13 a decade of trying, unsuccessfully, to hire psychiatrists in sufficient numbers to meet the

14 court-ordered benchmark, it is time to reevaluate the need and feasibility of the outdated

15 staffing ratios from the 2009 staffing plan."  Defs.' Resp. to Special Master's Staffing

16 Report, ECF No. 5591, Mar. 30, 2017, at 4; *see also* Defs.' Reply to Pls.' Objs. Re: Special

17 Master's Staffing Report, ECF No. 5601, Apr. 13, 2017, at 11 ("outdated staffing ratios

18 and vacancy rates should be re-evaluated").  Defendants are gathering evidence to support

19 their clearly stated goal of reducing staffing ratios, especially for psychiatrists, in response

20 to this Court's October 10 Order making plain that such evidence will be required before

21 the Court will consider any such motion.  Order, Oct. 10, 2017, ECF No. 5711, at 24-25.

22         Litigation over the exact subject Defendants have retained these experts to evaluate

23 – the Court-ordered staffing plan – is not only anticipated, it is inevitable.  In such

24 litigation, a shared factual basis regarding how the experts arrived at their findings and

25 recommendations, and in particular, at any conclusions supporting Defendants' litigation

26 position that CDCR "successfully provides mental health care to over 38,000 inmates

27 despite vacancies based on the 2009 staffing ratios," will be critical.  *See* Defs.' Resp. to

28 Special Master's Staffing Report, Mar. 30, 2017, ECF No. 5591, at 17; *see also* Defs.'

[3216449.8]

1  Reply to Pls.' Objs. & Req. for Add'l Relief, Apr. 13, 2017, ECF No. 5601, at 1-2, 7

2  (positing that compensation for CDCR's psychiatrists is "among the highest in the nation,"

3  and that "Defendants are providing more than constitutionally adequate care to class

4  members despite vacancies").

5      This is not the first time that a highly time-sensitive dispute regarding the rules that

6  govern expert tours has arisen in this case.  The repeated nature of this dispute and the

7  precedent in this case, as well as in the overcrowding proceedings establishing Plaintiffs'

8  right to attend expert tours, merits a general case management order precluding such

9  disputes in the future.

10 **III.    A CASE MANAGEMENT ORDER MANDATING THAT ALL ONSITE**
11 **EXPERT TOURS BE CONDUCTED IN THE PRESENCE OF COUNSEL**
   **FOR ALL PARTIES SERVES THE INTEREST OF EFFICIENT**
12 **DISCOVERY AND JUDICIAL ECONOMY, PROTECTS CLASS**
   **MEMBERS, AND IS CONSISTENT WITH LAW AND PRECEDENT**
13

14     There are two main reasons that this Court, the *Plata* court, and the *Coleman/Plata*

15 Three-Judge Court have all found that permitting Plaintiffs' counsel to attend Defendants'

16 experts' tours, where it is foreseeable or inevitable that those experts' work will be used in

17 litigation, is both warranted and wise.  First, permitting Plaintiffs' counsel to observe the

18 tours will save the parties time and money, and will reduce the amount of time needed to

19 establish the basic facts about each expert's tour at their deposition, in motion practice

20 relating to the matters for which the expert was retained, and during any evidentiary

21 hearing or trial.  Ex parte expert tours also harm the Court, by unnecessarily prolonging

22 evidentiary proceedings and requiring judicial resolution of disputes about what occurred

23 during tours.  Second, permitting counsel for Plaintiffs to attend experts' tours is necessary

24 to protect the rights of *Coleman* class members to representation by counsel and to

25 appropriately defend and respond to any motions to alter existing court orders that protect

26 the rights of those class members to constitutionally adequate mental health care.

27     //

28     //

**A.    The Attendance of Counsel for All Parties During Expert Tours Promotes Efficiency and Judicial Economy**

The presence of both counsel during experts' tours of the institutions will reduce the likelihood of factual disputes about what did and did not happen on a tour.  *See* Order, Oct. 30, 2007, ECF No. 2495, at 4.  This will allow the parties and this Court to focus on substantive issues such as the experts' opinions and the strengths and weaknesses of their methodologies.  Joint tour participation also improves the efficient conduct of discovery and trial, as it "reduc[es] the number of preliminary questions that must be explored in depositions and/or at the trial." *Id.*  Thus, dual participation furthers the Federal Rules' essential goal of "secur[ing] the just, speedy, and inexpensive determination of every action."  Fed. R. Civ. P. 1.

Defendants' counsel represented that the staffing experts might meet with clinical and supervisory staff, review the physical plant of a given unit, tour locations in the prison where mental health treatment is provided, the process for escorting prisoners to mental health appointments, and other matters affecting the workload of mental health staff.  Bien Decl. ¶ 11.  Without being present, it is impossible to determine, via a subsequent deposition, the details of nine separate prison tours: for example, which units the experts enter, what information they are provided, whether and to what extent they talk with prison staff or examine log books, medical records or similar documents, how long they spend at each prison and in each unit, and what is occurring on the unit at the time.

For precisely these reasons, and consistent with prior rulings in this case and *Plata*, the practice of permitting both sides to observe an expert examination or investigation is common.  *See, e.g.*, *In re Newman*, 782 F.2d 971, 974 (Fed. Cir. 1986) ("Rule 34 discovery is a common procedure, as is inter partes testing in general, arising in actions where there is a need to conduct inspections and tests for evidentiary purposes. Such tests routinely are made in the presence of the opposing party, and the test data are routinely provided to all parties."); *Wagoner v. Barger*, 463 F.2d 1377, 1382 (C.C.P.A. 1972) (recognizing that "the results of tests made by one party . . . without notice to, and in the absence of, the other

[3216449.8]

1  party . . . [are] for that reason alone entitled to little or no weight"); *superseded on other*

2  *grounds as recognized by Kubota v. Shibuya*, 999 F.2d 517, 522 (Fed. Cir. 1993);

3  *Congoleum Indus., Inc. v. Armstrong Cork Co.*, 319 F. Supp. 714, 716 (E.D. Pa. 1970)

4  (discussing "the established doctrine that evidence of experiments conducted by an

5  interested party, in the absence of his adversary, is always received with suspicion and

6  given only negligible probative value"); *see also Nat'l Dairy Prods. Corp. v. L. D.*

7  *Schreiber & Co., Inc.*, 61 F.R.D. 581, 583 (E.D. Wis. 1973) (ordering counsel and expert

8  from each side to be present at both parties' expert inspections and tests).

9       Moreover, permitting Plaintiffs' counsel to attend the defense experts' tours is

10  required by doctrines of fairness and efficiency.  Plaintiffs have always permitted

11  Defendants' counsel to observe their expert tours.  To preclude Plaintiffs' counsel from

12  observing Defendants' expert tours violates basic notions of equity and reciprocity.

13       Plaintiffs note that in the 2013 *Plata* proceedings described above, Defendants

14  presented, as their sole authority in favor of an order denying Plaintiffs' counsel the

15  opportunity to attend prison tours, an unpublished magistrate judge's order in an entirely

16  separate California prison class action.  *See Mitchell v. Cate*, No. 2:08-CV-01196 JAM

17  EFB (E.D. Cal.), Order re: Discovery Dispute, Oct. 17, 2012, ECF No. 131.  The *Plata*

18  court "reject[ed] [that] conclusory decision" finding that Defendants' own position, which

19  was that "they must be present for all prison tours by Plaintiffs' consultants or experts,"

20  precluded the *Mitchell* court's conclusion that such joint tours violated Rule 26's expert-

21  communications privilege.  *Plata v. Brown*, No. 3:01-cv-01351-TEH, Feb. 21, 2013, ECF

22  No. 2546, at 4.  And in any event, Plaintiffs here do not ask that they attend any

23  confidential meetings between Defendants' experts and their attorneys – only that, when

24  the experts are out in the field meeting with staff and touring prisons, Plaintiffs have an

25  equal opportunity to observe what they see and what they do not see, to hear what is said

26  to them and by whom, to observe what documents and information are provided or

27  withheld, and to see to whom they speak.

28      //

PLTFS' MPA ISO MOTION FOR CASE MANAGEMENT ORDERS AND SANCTIONS

### B.    Attendance of Plaintiffs' Counsel at Defendants' Expert Tours Protects Class Members from Unauthorized Ex Parte Communications

As to the need to prevent unauthorized ex parte communications with class members, Defendants are well aware that they may not communicate with class members for litigation purposes without the presence of Plaintiffs' counsel.  *See* Order Den. Defs.' Mot. to Terminate, Apr. 5, 2013, ECF No. 4539, at 22 (finding that, by allowing experts to conduct ex parte class member interviews, "defendants violated their professional duty and the plaintiffs were prejudiced thereby"); Cal. R. of Prof. Conduct 2-100 (prohibiting ex parte communications with persons represented by counsel).  Defendants' conduct during their secret termination tours alone justifies protective measures for future expert tours.

Defendants have represented that the staffing experts did not intend to interview or communicate with class members.  Bien Decl. ¶ 5, Ex. C.  Because Defendants chose to willfully exclude Plaintiffs from the tours, Plaintiffs cannot, and will never be able to, confirm the veracity of this representation.  Even if Defendants' experts did not set out to formally communicate with class members (this time), it is certainly possible that in touring a prison, experts may informally communicate with class members who approach them.  Certainly in Plaintiffs' counsel's experience, it is extremely common for prisoners to react with curiosity to groups of professionals touring the prisons, and particularly for *Coleman* class members to seek to engage with individuals whom they learn are on-site for "*Coleman.*"  *Id.* ¶ 16.  As that designation has, at various times, been applied to Plaintiffs' counsel, representatives from the Special Master's team, and Defendants' representatives and experts, it is impossible to expect that unsophisticated and vulnerable class members will know with whom they should and should not seek to make contact.  *Id.*

Moreover, in an analysis of clinical staffing and the use of telepsychiatry in Defendants' prisons, the staffing experts could reasonably be expected to review clinical encounters, treatment, telepsychiatry sessions, and other situations where *Coleman* class members present have a right to privacy, to know who these adverse experts are, and to consult with their own attorney about their rights.  Although Defendants' counsel's

description during the January 22, 2018 meet and confer of the activities conducted by the staffing experts omitted mention of observation of any treatment activities, it is unclear how the experts could be expected to opine that CDCR is providing constitutionally adequate care without ever observing the care provided. To the extent that class members' treatment was observed, any such observations raise all the same concerns about potential breaches of class members' rights as direct expert communications would.

For these reasons, general principles of liberal discovery, fairness, and judicial efficiency and economy all weigh in favor of the issuance of a case management order permitting Plaintiffs' counsel to accompany Defendants' experts on any onsite prison inspections when those experts have been retained in anticipation of litigation, or when it appears foreseeable and likely that their findings will be used in litigation.

### C.    Plaintiffs' Counsel's and Experts' Confidential Interviews with Class Members Are Not Analogous to Defendants' Ex Parte Expert Tours

Defendants have asserted that Plaintiffs' request to be notified of and attend any tours conducted by experts retained in anticipation of litigation is unfair because, in some circumstances, Plaintiffs are able to have their retained experts meet with class members outside the presence of Defendants' counsel. Bien Decl. ¶ 14. But as this Court observed in connection with the termination proceedings, "It hardly needs explaining that plaintiffs' counsel and agents are entitled to speak privately with their own clients without violating either Rule 2-100, or any prior order of this court or for that matter, the three-judge court." Order Den. Defs.' Mot. to Terminate, Apr. 5, 2013, ECF No. 4539, at 20. Defendants' argument also ignores their full control over the lives and movements of the Plaintiff class, such that class members may not meet with anyone – including their lawyers – without the full knowledge of Defendants. Nor may Plaintiffs' counsel and their experts enter the prisons to meet with their clients without providing notice to Defendants' counsel and providing "gate clearance" information for security purposes. Bien Decl. ¶ 17. This ensures that Defendants are always apprised of exactly whom Plaintiffs have retained, and exactly where they go and with whom they meet, well in advance of any motion. Plaintiffs

1  have no equivalent ability to learn who Defendants have retained, or with which prison

2  staff they meet, or on what schedule.  Plaintiffs' counsel may not even review class

3  member records without requesting such records from Defendants.  In contrast,

4  Defendants' counsel and can review any records for any class members without ever

5  informing those patients, or Plaintiffs' counsel, that they have done so.  *Id.*

6     Plaintiffs' request to attend when Defendants' onsite tours with litigation experts is

7  an attempt, however limited, to level this inherently unequal playing field.

8  **IV.    A CASE MANAGEMENT ORDER GOVERNING ANY MOTION**
   **REGARDING STAFFING REQUIREMENTS WOULD PROMOTE**
9  **EFFICIENCY AND JUDICIAL ECONOMY GIVEN THE EVENTS SET**
   **FORTH ABOVE**
10

11     Partly to remedy the prejudice to Plaintiffs caused by Defendants' unannounced

12  expert inspections, and partly to ensure an orderly process regardless of such misconduct,

13  this Court should enter a case management order for any planned motion to modify long-

14  standing staffing requirements.

15     There is no way for Plaintiffs to fully and completely learn what occurred during

16  the tours that they were excluded from attending.  While Defendants have stated that they

17  will make the experts available for deposition and otherwise comply with standard

18  discovery regarding expert materials, experience teaches that the experts will not possibly

19  recall everyone with whom they spoke or everything that was said.  Nor will lengthy

20  depositions attempting to recreate every aspect of the nine prison tours conducted in the

21  last two months be either feasible or fruitful.  Even assuming that Defendants' counsel are

22  fully forthcoming with the experts' notes and materials, precluding Plaintiffs' counsel from

23  attending the tours has prevented them from having the full context for those notes and a

24  full and fair opportunity to put the experts' findings into context.

25     For those reasons, Plaintiffs request that there be an adequate period of discovery

26  before Defendants are permitted to file a motion relying on the work of the experts who

27  conducted the recent secret tours.  This would allow Plaintiffs to issue and have time to

28  resolve any disputes regarding formal discovery of the experts' notes and materials,

1   conduct depositions of the experts, and if necessary, retain their own experts to conduct

2   onsite prison inspections and attempt, in only the limited way now available to them, to

3   recreate the information obtained by Defendants' experts during their ex parte tours.

4   Plaintiffs have written to Defendants asking for discovery regarding the experts' work,

5   Bien Decl. ¶ 15, but in the absence of a specific Court order, have no guarantee that

6   Defendants will be any more forthcoming than they have been to date.  Plaintiffs therefore

7   ask the Court to order Defendants to gather and produce the materials requested in

8   Plaintiffs' January 25, 2018 email (Bien Decl. Ex. H) by no later than **February 28, 2018.**

9   *See also* Proposed Order, filed herewith (setting forth specific discovery requests).

10      More generally, and given the complex nature of this problem, a problem created by

11   Defendants' decision to conduct tours without Plaintiffs' counsel despite court orders and

12   Plaintiffs' requests to accompany the experts, Plaintiffs request that Defendants be

13   required to notice any motion regarding staffing requirements at least 120 days in advance

14   of the hearing, and that discovery be open immediately upon filing.

15   **V.    A CASE MANAGEMENT ORDER GOVERNING ANY FUTURE**

16   **TERMINATION MOTIONS WOULD ALSO PROMOTE ORDERLY AND EFFICIENT DISCOVERY AND PROMOTE JUDICIAL ECONOMY**

17      Efficient management of this case also warrants a standing case management order

18   setting forth a timetable for discovery in advance of any filing of a motion to terminate, or

19   modify some or all of the relief ordered by this Court.  Such an order is merited by the time

20   limitations imposed by the PLRA, sanctioned by the Ninth Circuit in an analogous and

21   coordinated case, and fully within the Court's general case-management authority.  *Plata*

22   *v. Brown,* 754 F.3d 1070, 1077 (9th Cir. 2014).

23      The PLRA requires that "[t]he court shall promptly rule on any motion to modify or

24   terminate prospective relief in a civil action with respect to prison conditions."  *See* 18

25   U.S.C. § 3626(e)(1).  To that end, the PLRA imposes extremely strict time limitations

26   governing motions to terminate prospective relief in prison litigation: Unless the Court

27   issues written findings that the existing prospective relief remains necessary to correct a

28   current and ongoing constitutional violation, and meets all PLRA requirements, there is an

[3216449.8]

1   automatic stay of all orders in the case on, at most, the 90th day after the filing of a motion

2   to terminate.  *See* 18 U.S.C. § 3626(b)(3), (e).  While this imposes a serious burden on the

3   Court, there is also a great onus on Plaintiffs to gather and present essential evidence in

4   sufficient time to permit the Court to make a fully informed and timely decision on this

5   complex matter.  Accordingly, the Ninth Circuit has recognized:

6       Providing Plaintiffs with notice that the State intends to file a motion to terminate
        will allow both the State and Plaintiffs to have an adequate record on which the
7       district court may decide the merits of the motion. With the benefit of informed
        briefing from both parties, the district court will be able to make a timely ruling on
8       a motion to terminate, as the PLRA contemplates.

9

10  *Plata v. Brown*, 754 F.3d 1070, 1078 (9th Cir. 2014).

11      The order requested here also comports with the Ninth Circuit's decision because

12  the Defendants here, as in *Plata*, indicated that they have no imminent plans to file any

13  termination motions.  *See id.* at 1077 (the State indicated it would need at least a few

14  months to prepare a termination motion and so "the practical effect of the court's order is

15  to require the State, while it is preparing its motion, to disclose the experts' reports upon

16  which the motion will rely"); Bien Decl. ¶¶ 2, 4.  Assuming Defendants' representations

17  here are accurate, a scheduling order would not limit or affect their statutory right to file

18  for termination, but would only permit the Court to ensure that discovery in connection

19  with such a motion is efficiently managed.  *See Plata*, 754 F.3d at 1077 ("The district

20  court's order is consistent with its broad authority to manage complex

21  litigation.").  Indeed, more generally, this Court has broad power to issue orders governing

22  the timely and orderly conduct of discovery, and it may exercise that practical power in the

23  interest of efficient case management.  *See* Fed. R. Civ. P. 16; *Chambers v. NASCO, Inc.*,

24  501 U.S. 32, 43 (1991) (noting district courts' inherent power "to manage their own affairs

25  so as to achieve the orderly and expeditious disposition of cases"); *United States v. W.R.*

26  *Grace*, 526 F.3d 499, 509 (9th Cir. 2008) (noting that the court may issue case

27  management orders designed to allow the parties to engage in appropriate discovery and

28  adequately prepare their arguments).

In view of the strict time limitations imposed by the PLRA, an order requiring prior notification of any termination motion and a pre-filing opportunity for the parties to conduct discovery will improve the ability of the Court, and the parties, to plan for and efficiently and effectively address any such motion.

And while Defendants have represented to Plaintiffs that a stipulation or case management order governing the timing of termination motions is not necessary because they are not currently contemplating any such motion, prior experience casts doubt on such representations.  Defendants' expert tours in preparation for the 2013 termination motion began in late 2011.  *See* Ex. 2 to Vorous Decl. in Supp. of Defs.' Mot. to Terminate (Report of Defs.' Expert Steve Martin), Jan. 7, 2013, ECF No. 4279, at 7-8.  But in multiple filings in 2012, at the same time they were conducting expert tours to assess current conditions in California's prisons, Defendants repeatedly represented that neither they nor Plaintiffs could or should start conducting similar discovery or investigations until December 2012 at the very earliest.  *E.g.*, Defs.' Resp. to Aug. 3, 2012 Order, Aug. 17, 2012, ECF No. 4226 at 2 ("Expert investigation and discovery proceedings [regarding current conditions in California prisons] should not commence until the end of March 2013."); Defs.' Resp. to June 7, 2012 Order, June 22, 2012, ECF No. 4203, at 2 ("A motion, investigation or discovery based on current conditions" would be "premature" before December 2012 at the earliest, and any discovery conducted before then would be "inferior").  These secret expert tours occurred despite the October 2007 Three-Judge Court Order requiring that Plaintiffs' counsel be notified of and permitted to attend defense experts' prison inspections.  *See* Order, Oct. 30, 2007, ECF No. 2495, at 4.  Further, Defendants represented to the Three-Judge Court on August 17, 2012 that they would not file a motion to modify that court's population reduction order until at least June 28, 2013, only to file just such a motion along with their motion to terminate on January 7, 2013. *See* Defs' Resp. to Aug. 3, 2012 Order, Aug. 17, 2012, ECF No. 4226, at 10.

Defendants spent over a year working with their experts in preparation for their motion to terminate, and filed it with almost no warning to Plaintiffs, who then had just

1   over two months to assemble a mountain of evidence in response.  The Court's work was

2   also significantly impacted, as Defendants filed their voluminous reply briefing on March

3   22, 2013, ECF No. 4487, and the Court issued a 68-page opinion denying the motion just

4   fourteen days later on April 5, 2013, ECF No. 4539.  Defendants' decision to move for

5   termination with no plan or schedule other than the ordinary law and motion rules,

6   significantly impeded the Court's ability to plan for and manage its calendar in order to

7   accommodate that major task.  The Ninth Circuit has held that the Court need not subject

8   the parties or itself to such unplanned proceedings.  *Plata*, 754 F.3d at 1077-78.

9          Plaintiffs therefore request that the Court enter an order, as proposed in the

10   stipulation to which Defendants have not been willing to agree, stating as follows:

11          1.      To ensure that both parties have sufficient time for discovery if

12   Defendants choose to file a motion to terminate, and given the restrictions of

13   the PLRA's automatic stay provisions, the parties agree that Defendants shall

     provide the Court and Plaintiffs with at least 170 days' notice of any motion

14   to terminate so that the Court may reopen discovery;

15          2.      Defendants shall disclose the identity of any expert witnesses,

16   including name, resume, and the general subject matter(s) on which the

17   expert(s) will opine, at least 150 days prior to filing any motion to terminate;

18          3.      Plaintiffs shall disclose the identity of any expert witnesses, including

19   name, resume, and the general subject matter(s) on which the expert will

     opine, no later than 30 days after Defendants' expert disclosures;

20

21          4.      Expert tours, subject to the provisions outlined in paragraphs A.1 and

22   2 above, shall be concluded at least 45 days prior to filing any motion to

     terminate;

23

24          5.      The parties shall have 45 days to exchange expert reports after the

     conclusion of the expert tours.

25

26          //

27          //

28

PLTFS' MPA ISO MOTION FOR CASE MANAGEMENT ORDERS AND SANCTIONS

## VI.    DEFENDANTS' CONDUCT WITH RESPECT TO THE STAFFING EXPERTS' TOURS DEMONSTRATES BAD FAITH AND WARRANTS APPROPRIATE REMEDIES FROM THE COURT

In addition, Plaintiffs request that the Court find that Defendants' unannounced expert tours in December and January 2018, conducted in the absence of Plaintiffs' counsel, were conducted in violation of this Court's prior orders, and are sanctionable, but that the Court reserve judgment on specific sanctions until the Court has been presented with any testimony, reports, or other work produced derived from the inspections.

### A.    Defendants Engaged in Bad-Faith Conduct by Refusing to Meaningfully Meet and Confer Regarding the Staffing Experts' Tours and by Allowing those Tours to Proceed Prior to Resolution of this Dispute

As this Court wrote in 2013, "common sense should have suggested to defendants and their counsel that the October 30, 2007 order applies to litigation-related expert tours in this action" and that ex parte tours are out of bounds.  Order and Order to Show Cause, Mar. 18, 2013, ECF No. 4414, at 2.  If the 2007 and 2013 litigation and orders were not sufficient, Plaintiffs' explicit request to attend the tours during the December 18 workgroup, followed by their December 21 letter informing Defendants of their intent to attend the staffing experts' tours, asking for a meet and confer on this issue, and stating their reasonable assumption that the staffing experts would "not tour any prisons unless and until this issue is resolved," certainly put Defendants on notice that the tours then in progress were problematic.  *See* Bien Decl. ¶¶ 6-7, Ex. D.  But Defendants did not respond to Plaintiffs' letter for almost a month, even while they were conducting and essentially completing their ex parte tours despite the parties' live dispute.  Their conduct in this regard precluded Plaintiffs from seeking timely recourse from the Court, underscoring yet again the need for a clear standing order setting ground rules for joint expert tours.

### B.    Plaintiffs Request that the Court Order Appropriate Remedies for Defendants' Conduct

The Court has inherent power to exclude Defendants' expert evidence as a sanction for misconduct.  *Fink v. Gomez*, 239 F.3d 989, 991-92 (9th Cir. 2001) (court's inherent power is both broader and narrower than other means of imposing sanctions and extends to

[3216449.8]

a full range of litigation abuses when litigant engages in bad faith or willful disobedience of court order); *Lewis v. Tel. Emps. Credit Union*, 87 F.3d 1537, 1557 (9th Cir. 1996) (recognizing "as part of a district court's inherent powers the broad discretion to make discovery and evidentiary rulings conducive to the conduct of a fair and orderly trial" including "the power to exclude testimony of witnesses whose use at trial would unfairly prejudice an opposing party" (internal quotation marks and citations omitted)).

It is clear that Defendants' misconduct in connection with these tours merits sanctions; however, until or unless Defendants rely on the ex parte tours in connection with a motion to this Court, and until Plaintiffs have a full opportunity to conduct discovery in connection with the tours, it is difficult to determine exactly what form of sanctions will be merited when balanced against the harm done to Plaintiffs. Plaintiffs therefore ask the Court to reserve a final ruling on sanctions until the end of any period of discovery and until further briefing on sanctions in connection with any staffing motion Defendants may bring.

## VII.    CONCLUSION

The new round of secret tours has prejudiced the Plaintiff class and will prevent the efficient and just resolution of vital questions by this Court. Defendants' refusal to enter into a case management order for future termination motions presents the same threat. The Court should enter the case management orders contained in the Proposed Order submitted herewith. In addition, the Court should find that the new round of secret tours are sanctionable, while reserving judgment on the appropriate sanctions.

DATED:  January 26, 2018         Respectfully submitted,

ROSEN BIEN GALVAN & GRUNFELD LLP

By:  ___*/s/ Krista Stone-Manista*___
         Krista Stone-Manista

Attorneys for Plaintiffs

[3216449.8]

1

**CERTIFICATION**

2      The undersigned counsel for Plaintiffs certifies that they have reviewed the

3   following relevant court orders: June 6, 1994 (Docket No. 547); September 13, 1995

4   (Docket No. 612); April 4, 2001 (ECF No. 1262); June 13, 2002 (ECF No. 1383); Oct. 30,

5   2007 (ECF No. 2495); June 18, 2009 (ECF No. 3613); September 4, 2009 (ECF No.

6   3665); Mar. 18, 2013 (ECF No. 4414); Apr. 5, 2013, (ECF No. 4539); March 18, 2014

7   (ECF No. 5116); June 19, 2014 (ECF No. 5171); May 18, 2015 (ECF No. 5307); August

8   9, 2016 (ECF No. 5477); March 8, 2017 (ECF No. 5573); October 10, 2017 (ECF No.

9   5711).

10

11   DATED:  January 26, 2018          Respectfully submitted,

12                                     ROSEN BIEN GALVAN & GRUNFELD LLP

13

14                                     By:  _____/s/ Krista Stone-Manista_____

15                                          Krista Stone-Manista

16                                     Attorneys for Plaintiffs

17

18

19

20

21

22

23

24

25

26

27

28