1  DONALD SPECTER – 083925
   STEVEN FAMA – 099641
2  MARGOT MENDELSON – 268583
   PRISON LAW OFFICE
3  1917 Fifth Street
   Berkeley, California  94710-1916
4  Telephone:   (510) 280-2621

5  CLAUDIA CENTER – 158255
   AMERICAN CIVIL LIBERTIES UNION
6  FOUNDATION OF NORTHERN
   CALIFORNIA, INC.
7  39 Drumm Street
   San Francisco, California  94111-4805
8  Telephone:   (415) 621-2493

MICHAEL W. BIEN – 096891
JEFFREY L. BORNSTEIN – 099358
JANE E. KAHN – 112239
ERNEST GALVAN – 196065
THOMAS NOLAN – 169692
LISA ELLS – 243657
KRISTA STONE-MANISTA – 269083
JENNY S. YELIN – 273601
MICHAEL S. NUNEZ – 280535
JESSICA WINTER – 294237
ROSEN BIEN
GALVAN & GRUNFELD LLP
50 Fremont Street, 19th Floor
San Francisco, California  94105-2235
Telephone:   (415) 433-6830

9  Attorneys for Plaintiffs

10

11              UNITED STATES DISTRICT COURT

12              EASTERN DISTRICT OF CALIFORNIA

13

14  RALPH COLEMAN, et al.,

15          Plaintiffs,

16      v.

17  EDMUND G. BROWN, JR., et al.,

18          Defendants.

Case No. 2:90-CV-00520-KJM-DB

**DECLARATION OF MICHAEL W. BIEN IN SUPPORT OF PLAINTIFFS' MOTION FOR**

**(1) A CASE MANAGEMENT ORDER REGARDING FUTURE EXPERT TOURS;**

**(2) A CASE MANAGEMENT ORDER REGARDING MOTIONS ON STAFFING REQUIREMENTS;**

**(3) A CASE MANAGEMENT ORDER REGARDING TERMINATION MOTIONS;**

**(4) SANCTIONS BASED ON EX PARTE EXPERT PRISON TOURS**

Judge:   Hon. Kimberly J. Mueller
Date:    February 28, 2018
Time:    10 a.m.
Crtrm.:  3, 15th Floor

[3218270.3]

1    I, Michael W. Bien, declare:

2    I am an attorney admitted to practice in California, a member of the Bar of this

3    Court and a partner of the firm, Rosen Bien Galvan & Grunfeld LLP, counsel of record for

4    the Plaintiff class.  I have personal knowledge of the matters set forth herein, and if called

5    as a witness I could competently so testify.  I make this declaration in support of Plaintiffs'

6    motion for a case management order regarding expert tours and termination proceedings.

7    1.    On May 12, 2017, I emailed a proposed stipulation governing timing,

8    discovery, and experts in advance of any termination motion to Defendants' counsel

9    Patrick McKinney and Gabriel Sanchez, an attorney in the Governor's office.  I sent this

10    email subsequent to a conference call on April 5, 2017 and other conversations in which I

11    had discussed Plaintiffs' intention to request that Defendants agree to such a stipulation

12    with Mr. McKinney and Mr. Sanchez.  A true and correct copy of my May 12, 2017 email

13    and the accompanying proposed stipulation is attached hereto as **Exhibit A**.

14    2.    At a meeting on May 22, 2017, attended by myself, Secretary Scott Kernan,

15    Mr. McKinney, and Mr. Sanchez, as well as other senior members of Defendants' staff and

16    legal team, Secretary Kernan stated that Defendants were not contemplating a termination

17    motion at that time.  Mr. Sanchez stated that the parties could further discuss a stipulation

18    governing termination proceedings if and when such a motion was contemplated.  In a

19    later telephone conversation with Mr. McKinney he stated that he would propose

20    shortening the notice period for the termination motion.  I followed up again by email on

21    June 28, 2017, but Defendants have not provided any further response to my May 12, 2017

22    email proposing a stipulation on expert tours and termination proceedings.

23    3.    On December 6, 2017, Defendants' counsel Christine Ciccotti called my

24    partner, Lisa Ells, to discuss Defendants' plans in response to this Court's October 10,

25    2017 staffing order.  Ms. Ciccotti informed Ms. Ells that Defendants had hired a team of

26    experts to review and make recommendations regarding Defendants' staffing ratios.  Ms.

27    Ells documented this call in an email to Plaintiffs' counsel immediately following the call.

28

DECLARATION OF MICHAEL W. BIEN ISO PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CASE
MANAGEMENT ORDERS AND SANCTIONS

[3218270.3]

4.      On December 11, 2017, I sent an email to Ms. Ciccotti and Elise Thorn, another of Defendants' counsel, requesting further information about the retained experts, about the work they would be doing, and about how their anticipated work related to the Court's staffing orders.  I also requested confirmation that the experts would not be interviewing or communicating with class members, and asked for an opportunity to discuss Defendants' plans for the experts' work before they proceeded.  A true and correct copy of my email to Defendants' counsel is attached hereto as **Exhibit B**.

5.      On December 13, 2017, Ms. Ciccotti partially responded to my email, and transmitted copies of the staffing experts' CVs.  Ms. Ciccotti confirmed that the experts would not be interviewing or communicating with class members, but did not state that they would be conducting onsite tours, or indicate that such tours were already scheduled or in progress.  A true and correct copy of Ms. Ciccotti's email to me is attached hereto as **Exhibit C**.

6.      On December 18, 2017, the parties again discussed the staffing experts' retention during an All-Parties Workgroup Call.  Defendants' counsel stated that the experts would be developing recommendations, which Defendants anticipated receiving in February 2018 and intended to present to the workgroup thereafter.  I formally requested to accompany the staffing experts' team on any onsite prison tours, as their work was likely to be used in litigation.  Defendants stated that the parties could meet and confer further regarding Plaintiffs' request and requested Plaintiffs' position in writing, but did not state that the experts had already conducted onsite prison tours or that any further tours were scheduled.  I stated that Plaintiffs would send Defendants a formal letter reiterating our request to accompany the experts.

7.      On December 21, 2017, I wrote to Defendants to again request that Plaintiffs participate in any tours conducted by the retained staffing experts, and to again request to meet and confer in advance of any such tours.  A true and correct copy of that letter, transmitted to Defendants on December 21 by email by my associate, Krista Stone-Manista, is attached hereto as **Exhibit D**.

[3218270.3]

1         8.      On January 9, 2018, Ms. Stone-Manista emailed Defendants' counsel to

2  request that Defendants provide a response to our request to attend the experts' tours as

3  soon as possible, so that Plaintiffs could promptly present these issues to the Court if

4  necessary.  A true and correct copy of that email is attached hereto as **Exhibit E**.

5         9.      On January 16, 2018, Ms. Stone-Manista, at my request, called Ms. Thorn to

6  again ask Defendants to respond to my December 21 letter.  Ms. Thorn stated that a

7  response would be forthcoming in the next day or two, and certainly in advance of the

8  workgroup meeting scheduled for January 18, 2018.

9         10.     Defendants responded to my December 21, 2017 letter on January 17, 2018.

10  Their response stated that Defendants did "not agree that it is necessary or appropriate for

11  Plaintiffs' counsel to accompany Defendants' consultants on any prison visits" but did not

12  state that many such visits had already occurred, and did not respond to Plaintiffs' repeated

13  requests that no visits be conducted until the parties had resolved their dispute on this

14  issue.  A true and correct copy of Defendants' January 17, 2018 letter is attached hereto as

15  **Exhibit F**.

16         11.     The following day, during the All-Parties' Meeting held in Sacramento on

17  January 18, 2018, the parties discussed Plaintiffs' request to attend the tours, and

18  Defendants' response.  During that meeting, I and Defendants' counsel, in the presence of

19  the Special Master and his team, discussed what types of activities the staffing experts

20  might undertake during an onsite inspection, and I explained why it was important for us to

21  observe those activities.  Defendants again did not disclose that the staffing experts had

22  already undertaken a series of inspections prior to the date of the workgroup meeting, or

23  that more tours were scheduled for the following week.  I stated that unless an agreement

24  was reached, Plaintiffs would file a motion requesting a court order allowing Plaintiffs to

25  attend the staffing experts' tours, which we believed at that time had not yet started, and

26  also requesting a more general case management order on these issues.  The Special

27  Master stated his interest in notice of the tours and his right to observe the tours by

28  defendants' staffing experts.  No representative of Defendants, in my presence, informed

DECLARATION OF MICHAEL W. BIEN ISO PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CASE
MANAGEMENT ORDERS AND SANCTIONS

the Special Master that the tours were already underway and would be completed the following week.   The Special Master told me in a telephone conversation this week that he had never been informed by Defendants that the staffing experts' tours were underway, had never been offered the opportunity to observe, and was surprised to learn that they had been completed.

12.     During a break from the All-Parties' Meeting, I privately discussed the staffing experts' tours with Ms. Ciccotti.  Ms. Ciccotti stated that the experts had been retained to provide evidence regarding the court-ordered staffing ratios, in response to the Court's October 10, 2017 staffing order, in order to support Defendants' position that the staffing ratios for psychiatrists were unnecessarily high.  She also stated that she would go back and talk to her "team" about plaintiffs' request to observe the tours and promptly respond to me.  She did not inform me that the tours were already underway and that more were planned the following week.

13.     On January 22, 2018, I emailed Defendants' counsel requesting that Defendants agree either that the experts would not conduct tours without the attendance of Plaintiffs' counsel until the Court had an opportunity to decide this dispute, or in the alternative, that Defendants agree to stipulate to an expedited briefing schedule for this motion.  A true and correct copy of my email is attached hereto as **Exhibit G**.

14.     Later in the day on January 22, 2018, I participated in a meet and confer call with Defendants' counsel.  During that call, Defendants informed Plaintiffs for the first time that the staffing experts had already completed three prison tours, and that the final tours were scheduled for that same week.  Defendants' counsel Damon McClain stated that during the three tours he had attended in December, the experts had conducted meetings with supervisory staff, toured treatment areas and reviewed the physical layouts of the prisons visited, and conducted meetings with clinicians.  The parties also discussed Defendants' position that *ex parte* staffing tours were equivalent to confidential attorney-client interviews between Plaintiffs' counsel and/or experts retained by counsel and *Coleman* class members, and Plaintiffs explained their position to the contrary.

4

[3218270.3]

1  Defendants also again represented that they were not presently working on a termination

2  motion.

3      15.    On January 25, 2018, I emailed Defendants' counsel setting forth Plaintiffs'

4  positions regarding the expert tours and summarizing the history of the dispute to date.  I

5  also set forth a series of requests for information about the experts, their activities during

6  the ex parte tours, and the foundations for their reports. A true and correct copy of my

7  email is attached hereto as **Exhibit H**.  Defendants have not replied as of the filing of this

8  Motion.

9      16.    In my experience as lead counsel on this case, I have attended many prison

10  tours and am familiar with the usual practices that occur on such tours.  I am aware that

11  Plaintiffs' counsel routinely introduce themselves to class members as "lawyers for the

12  *Coleman* plaintiffs," that representatives from the Special Master's team introduce

13  themselves as "*Coleman*" representatives, and that Defendants' counsel, experts, and

14  monitoring also sometimes allude to "*Coleman*" as the reason for their presence at a

15  prison.  I am also aware that when groups of Plaintiffs' counsel and experts, Defendants'

16  counsel and experts, and representatives from the Special Master's team are touring a

17  prison together, in any combination, it is very common for class members to approach the

18  tour group in order to raise concerns, including concerns about their mental health

19  treatment.  As I am very familiar with this pattern on tours where Plaintiffs' counsel is

20  present, it seems inevitable that it occurs when Plaintiffs' counsel is not present on tours as

21  well.  In those informal encounters, it is impossible to expect that a class member will be

22  able to distinguish between the various types of monitors and touring personnel, and very

23  likely that class members will be unclear about to whom they are speaking.

24      17.    When Plaintiffs' counsel wishes to conduct a confidential attorney-client

25  interview with a *Coleman* class member, we contact CDCR's Office of Legal Affairs in

26  order to arrange a schedule for that interview.  We are required to provide specific "gate

27  clearance" information about each visiting attorney and/or expert, and are not permitted to

28  enter the prison for confidential interviews without having provided this information and

DECLARATION OF MICHAEL W. BIEN ISO PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CASE
MANAGEMENT ORDERS AND SANCTIONS

[3218270.3]

1    having scheduled an interview with a specific client in advance.  Thus, CDCR and its

2    attorneys are notified each time Plaintiffs' counsel enters any prison, whether an expert

3    accompanies us and exactly who that expert is, and to whom we speak.  Nor are *Coleman*

4    Plaintiffs' counsel permitted to conduct general tours of any prison without the presence of

5    Defendants' counsel.  For example, we would not be permitted to conduct a general tour

6    for purposes of interviewing class members and observing their mental health treatment,

7    without notification to and the presence of Defendants' counsel.

8         18.    Defendants have transitioned to a fully electronic medical records system,

9    which can be viewed from any computer through a designated login system.  Defendants

10   have made these medical records available to counsel for Plaintiffs in *Plata* and in

11   *Armstrong*, for monitoring purposes in those cases.  Although many members of the

12   *Coleman* Plaintiffs' counsel team have medical records access for *Plata* and *Armstrong*

13   purposes, they are not permitted to access records for *Coleman* purposes.  We have

14   requested that Defendants' counsel permit such access to all *Coleman* Plaintiffs' counsel,

15   but have not received a response to our request.  Further, even if we were given online

16   access to the medical records, the system used to access the records states that all activity

17   on the system is tracked.  That is, Defendants can determine exactly whose records we are

18   reviewing, which attorney reviewed those records, and for how long the records were open

19   on the attorney's computer.  Plaintiffs have no such comparable method for determining

20   who reviews class member records for Defendants or which records are reviewed.

21        I declare under penalty of perjury under the laws of the United States and the State

22   of California that the foregoing is true and correct, and that this declaration is executed at

23   San Francisco, California this 26th day of January, 2018.

24

25                                        */s/ Michael W. Bien*
                                         Michael W. Bien
26

27

28

[3218270.3]

# Exhibit A

| | |
|---|---|
| **From:** | Michael W. Bien <MBien@rbgg.com> |
| **Sent:** | Friday, May 12, 2017 1:56 PM |
| **To:** | Gabriel.Sanchez@GOV.CA.GOV; Patrick McKinney |
| **Cc:** | Donald Specter; Matt Lopes |
| **Subject:** | Coleman:  Stipulation for Procedures Governing Motion to Terminate [IWOV-DMS.FID6429] |
| **Attachments:** | Stip and Proposed Order re Notice re Motion to Terminate, 05-12-17, 0489....docx |

Gabe

As we discussed a few weeks ago (during negotiations over the L-1 stipulation), attached please find a proposed stipulation governing timing, discovery and experts in the event that defendants choose to file a motion to terminate in Coleman.  As you know, a similar order is already in place in Plata.

Michael Bien

ROSEN BIEN GALVAN & GRUNFELD LLP
50 Fremont Street, 19th Floor
San Francisco, CA 94105
(415) 433-6830 (telephone)
(415) 433-7104 (fax)
mbien@rbgg.com<mailto:mbien@rbgg.com>
www.rbgg.com<http://www.rbgg.com/>

CONFIDENTIALITY NOTICE The information contained in this e-mail message may be privileged, confidential and protected from disclosure. If you are not the intended recipient, any dissemination, distribution or copying is strictly prohibited. If you think that you have received this e-mail message in error, please e-mail the sender at rbgg@rbgg.com<mailto:rbgg@rbgg.com>.

IRS CIRCULAR 230 NOTICE:  As required by United States Treasury Regulations, you should be aware that this communication is not intended by the sender to be used, and it cannot be used, for the purpose of avoiding penalties under United States federal tax laws.

DONALD SPECTER – 083925
STEVEN FAMA – 099641
MARGOT MENDELSON – 268583
PRISON LAW OFFICE
1917 Fifth Street
Berkeley, California 94710-1916
Telephone: (510) 280-2621

MICHAEL W. BIEN – 096891
JEFFREY L. BORNSTEIN – 099358
JANE E. KAHN – 112239
ERNEST GALVAN – 196065
THOMAS NOLAN – 169692
LISA ELLS – 243657
KRISTA STONE-MANISTA – 269083
ROSEN BIEN
GALVAN & GRUNFELD LLP
50 Fremont Street, 19th Floor
San Francisco, California 94105-2235
Telephone: (415) 433-6830

RANJINI ACHARYA – 290877
K&L GATES LLP
4 Embarcadero Center, Suite 1200
San Francisco, California 94111-5994
Telephone: (415) 882-8200

CLAUDIA CENTER – 158255
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN
CALIFORNIA, INC.
39 Drumm Street
San Francisco, California 94111-4805
Telephone: (415) 621-2493

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al., | Case No. 2:90-CV-00520-KJM-DB |
| Plaintiffs, | **STIPULATION AND [PROPOSED] ORDER RE: PROCEDURES GOVERNING EXPERTS AND MOTION TO TERMINATE** |
| v. | |
| EDMUND G. BROWN, JR., et al., | |
| Defendants. | Judge: Hon. Kimberly J. Mueller |

The parties, by and through their counsel, stipulate and agree as follows:

**A.    Expert/Consultant Tours**

1.    Opposing counsel will have the right to accompany and observe consultants and experts on prison tours, but opposing counsel shall not be permitted to participate or listen in on any communications between retained consultants and experts and their counsel, or between consultants and experts retained by the same party. Reasonable notice

1   of any prison visits by consultants or experts must be provided to opposing counsel.

2       2.      Defendants' counsel, experts, and consultants shall not communicate with

3   class members without notice to and the consent of, nor outside the presence of, Plaintiffs'

4   counsel.

5       **B.      Motion to Terminate under Prison Litigation Reform Act**

6       1.      To ensure that both parties have sufficient time for discovery if Defendants

7   choose to file a motion to terminate, and given the restrictions of the PLRA's automatic

8   stay provisions, the parties agree that Defendants shall provide the Court and Plaintiffs

9   with at least 170 days' notice of any motion to terminate so that the Court may reopen

10  discovery;

11      2.      Defendants shall disclose the identity of any expert witnesses, including

12  name, resume, and the general subject matter(s) on which the expert(s) will opine, at least

13  150 days prior to filing any motion to terminate;

14      3.      Plaintiffs shall disclose the identity of any expert witnesses, including name,

15  resume, and the general subject matter(s) on which the expert will opine, no later than 30

16  days after Defendants' expert disclosures;

17      4.      Expert tours, subject to the provisions outlined in paragraphs A.1 and 2

18  above, shall be concluded at least 45 days prior to filing any motion to terminate;

19      5.      The parties shall have 45 days to exchange expert reports after the

20  conclusion of the expert tours.

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

1    The parties have discussed this stipulation with the *Coleman* Special Master

2  Matthew Lopes, Jr. and he is in agreement with its contents.

3

4    IT IS SO STIPULATED.

5  DATED: May ___, 2017                 Respectfully submitted,

6                                       KAMALA D. HARRIS

7                                       Attorney General of California
                                        DANIELLE F. O'BANNON

8                                       Supervising Deputy Attorney General

9

10                                      By: _____

11                                          ELISE THORN
                                            Deputy Attorney General

12                                      Attorneys for Defendants

13

14  DATED: May ___, 2017                 ROSEN BIEN GALVAN & GRUNFELD LLP

15

16                                      By: _____

17                                          Michael W. Bien

18                                      Attorneys for Plaintiffs

19

20                         **[PROPOSED] ORDER**

21    Pursuant to the foregoing stipulation, and to address the concerns and suggestions

22  raised by Plaintiffs' counsel and the Special Master, IT IS SO ORDERED.

23

24  DATED: _____, 2017

25

26                                      _____
                                        KIMBERLY J. MUELLER

27                                      United States District Judge

28

Exhibit B

**From:**        Michael W. Bien
**Sent:**        Monday, December 11, 2017 1:14 PM
**To:**          Christine Ciccotti; Elise Thorn
**Cc:**          Coleman Team - RBG Only; Steve Fama; Donald Specter; Coleman Special Master Team
**Subject:**     Coleman:  Staffing Order, 489-3 [IWOV-DMS.FID6429]


Christine and Elise

I am following up on a brief call last week from Elise to Lisa concerning defendants' plan to retain some consultants/experts to assist on staffing issues.  We understand that defendants have retained, in some capacity, three experts:  Joseph Penn, Owen Murray and John Allen.  We would appreciate some additional information about what these experts will be doing and how their work relates to defendants' compliance with the Court's staffing orders.  We would also appreciate some additional information about the three men (current CV's would be appreciated).

Please also confirm that these experts will not be interviewing or communicating with Coleman class members.

We would appreciate an opportunity to talk through defendants' plans for any investigations or studies to be performed by these experts before they move forward.

Thanks.


Michael Bien

ROSEN BIEN GALVAN & GRUNFELD LLP
50 Fremont Street, 19th Floor
San Francisco, CA 94105
(415) 433-6830 (telephone)
(415) 433-7104 (fax)
mbien@rbgg.com
www.rbgg.com


CONFIDENTIALITY NOTICE The information contained in this e-mail message may be privileged, confidential and protected from disclosure. If you are not the intended recipient, any dissemination, distribution or copying is strictly prohibited. If you think that you have received this e-mail message in error, please e-mail the sender at rbgg@rbgg.com.

IRS CIRCULAR 230 NOTICE:  As required by United States Treasury Regulations, you should be aware that this communication is not intended by the sender to be used, and it cannot be used, for the purpose of avoiding penalties under United States federal tax laws.

Exhibit C

| | |
|---|---|
| **From:** | Christine Ciccotti <Christine.Ciccotti@doj.ca.gov> |
| **Sent:** | Wednesday, December 13, 2017 12:11 PM |
| **To:** | Michael W. Bien; Elise Thorn |
| **Cc:** | Coleman Team - RBG Only; Steve Fama; Donald Specter; Coleman Special Master Team; Danielle OBannon; Damon McClain |
| **Subject:** | RE: Coleman:  Staffing Order, 489-3 [IWOV-DMS.FID6429] |
| **Attachments:** | Allen Resume.docx; Murray CV_February 2017.doc; Penn_CV_Sept_19_ 2017 __Most_Current_Version.docx |

Mike,

This responds to your question about Defendants' staffing experts.  The experts will be reviewing and evaluating CDCR's current mental-health staffing plan and they may recommend changes to the current plan.  This work relates to the Court's recent staffing orders, which suggest that if Defendants believe the current staffing plan should be revised or updated, they must first present proposed revisions to the Special Master before making a motion to modify the staffing plan.  Of course, we will also share with Plaintiffs any proposed changes to the staffing plan.  I attach CV's for Dr. Penn, Dr. Murray, and John Allen. Neither these experts nor their support staff will be interviewing or communicating with *Coleman* class members.

Sincerely,

Christine

Christine M. Ciccotti
Deputy Attorney General
Office of the Attorney General
Civil Division - Correctional Law Section
1300 I Street
Sacramento, CA  95814
Telephone:  (916) 210-7350 **\* Note New Phone Number**
Christine.Ciccotti@doj.ca.gov

---

**From:** Michael W. Bien [mailto:MBien@rbgg.com]
**Sent:** Monday, December 11, 2017 1:14 PM
**To:** Christine Ciccotti <Christine.Ciccotti@doj.ca.gov>; Elise Thorn <Elise.Thorn@doj.ca.gov>
**Cc:** Coleman Team - RBG Only <ColemanTeam-RBGOnly@rbgg.com>; Steve Fama <sfama@prisonlaw.com>; Donald Specter <dspecter@prisonlaw.com>; Coleman Special Master Team <ColemanSpecialMasterTeam@rbgg.com>
**Subject:** Coleman: Staffing Order, 489-3 [IWOV-DMS.FID6429]

Christine and Elise

I am following up on a brief call last week from Elise to Lisa concerning defendants' plan to retain some consultants/experts to assist on staffing issues.  We understand that defendants have retained, in some capacity, three experts:  Joseph Penn, Owen Murray and John Allen.  We would appreciate some additional information about what these experts will be doing and how their work relates to defendants' compliance with the Court's staffing orders.  We would also appreciate some additional information about the three men (current CV's would be appreciated).

Please also confirm that these experts will not be interviewing or communicating with Coleman class members.

We would appreciate an opportunity to talk through defendants' plans for any investigations or studies to be performed by these experts before they move forward.

Thanks.


Michael Bien

ROSEN BIEN GALVAN & GRUNFELD LLP
50 Fremont Street, 19th Floor
San Francisco, CA 94105
(415) 433-6830 (telephone)
(415) 433-7104 (fax)
mbien@rbgg.com
www.rbgg.com


CONFIDENTIALITY NOTICE The information contained in this e-mail message may be privileged, confidential and protected from disclosure. If you are not the intended recipient, any dissemination, distribution or copying is strictly prohibited. If you think that you have received this e-mail message in error, please e-mail the sender at rbgg@rbgg.com.

IRS CIRCULAR 230 NOTICE:  As required by United States Treasury Regulations, you should be aware that this communication is not intended by the sender to be used, and it cannot be used, for the purpose of avoiding penalties under United States federal tax laws.


CONFIDENTIALITY NOTICE: This communication with its contents may contain confidential and/or legally privileged information. It is solely for the use of the intended recipient(s). Unauthorized interception, review, use or disclosure is prohibited and may violate applicable laws including the Electronic Communications Privacy Act. If you are not the intended recipient, please contact the sender and destroy all copies of the communication.

Exhibit D



**ROSEN BIEN**
**GALVAN & GRUNFELD LLP**

50 Fremont Street, 19th Floor
San Francisco, California 94105-2235
T: (415) 433-6830 ▪ F: (415) 433-7104
www.rbgg.com

Michael W. Bien
Email:  mbien@rbgg.com

December 21, 2017

VIA E-MAIL

Patrick McKinney                    Elise Owens Thorn
General Counsel                     Deputy Attorney General
California Department of Corrections and   Department of Justice
Rehabilitation                      1300 I Street
Office of Legal Affairs             Sacramento, CA 95814
P.O. Box 942883                     Elise.Thorn@doj.ca.gov
Sacramento CA, 94283
Patrick.McKinney@cdcr.ca.gov

Re:    Coleman v. Brown: Plaintiffs' Request to Observe Defendants' Staffing
       Expert Tours
       Our File No. 0489-3

Dear Patrick and Elise:

Plaintiffs write to follow up on prior conversations regarding Defendants' retained staffing experts, and to formally request that the parties meet and confer regarding Plaintiffs' participation in any tours conducted by the retained experts.  We also write to ask that Defendants provide a formal response to our request, sent on May 12, that Defendants agree to a stipulation governing expert tours and the timing of expert disclosures and discovery.  *See* Exhibit A (May 12 email to Gabe Sanchez and Patrick McKinney); Exhibit B (proposed stipulation).

Regarding the staffing experts, on December 11, I wrote to Elise and Christine Ciccotti asking for additional information about the retained experts, Joseph Penn, Owen Murray, and John Allen.  We appreciate Christine's response by email on December 18 and that Defendants provided the experts' CVs.  Christine's email generally stated that the experts "will be reviewing and evaluating CDCR's current mental-health staffing plan and they may recommend changes to the current plan."  Defendants have also made clear that these retained experts may be asked to provide testimony to the Court in support of Defendants' position on pending clinical staffing issues including existing ratios,

[3207478.2]

Patrick McKinney
Elise Thorn
December 21, 2017
Page 2

telepsychiatry, and the like.  In addition, as is apparent from their CVs, these experts have
been working for the AG's Office as litigation experts for some time, including in *Plata*.

As the staffing experts' work will be used in litigation, Plaintiffs are permitted to
discover the full basis for any conclusions and recommendations they reach.  Plaintiffs
request that they be given notice of any experts' tours of CDCR facilities, and have the
opportunity to accompany the experts on any such tours.  It has been a long-standing
practice in *Coleman* for counsel to attend expert tours in order to ensure that the parties
have a clear understanding of the basis for the experts' opinions and to facilitate class
member contacts and ensure efficient resolution of other issues that may arise on tours.
*See* Three-Judge Court Order, Oct. 30, 2007, Plata Docket No. 906 ("Three-Judge Court
Expert Tours Order"), at 4 (requiring Defendants to provide "reasonable notice" to
Plaintiffs in advance of expert tours, and to permit counsel for Plaintiffs to attend such
tours, in order to create a "common factual baseline" and reduce preliminary questions at
deposition and/or trial).  All of these concerns apply with equal force here.  We also
formally request that Defendants provide copies of all documents and information given
to the experts in the course of their reviews as well as a copy of any contracts or
agreements with the experts and all invoices and payments made to the experts.

Further, given Defendants' recent claims that their existing staffing ratios are
higher than necessary to comply with constitutional standards, it is reasonable to assume
that defendants have retained these litigation experts with the goals of decreasing access
to clinical staff compared to current ratios and  of increasing the use of telepsychiatry, as
well as possibly in support of a motion to terminate under the PLRA.  Participation in the
tours by Plaintiffs' counsel would therefore be necessary to protect the rights of *Coleman*
class members to representation by counsel and to appropriately defend and respond to
any motions to terminate or change staffing ratios.  *See* Order Denying Defs.' Motion to
Terminate, ECF No. 4539, Apr. 5, 2013, at 21-22.  These are the same factors that led the
*Plata* Court to enter an order in 2013 permitting all counsel to accompany all consultants
and experts on prison tours.  *See* Exhibit C, attached (Plata Docket No. 2546, Feb. 21,
2013).  Although we note Christine's representation in her December 13 email that the
experts do not intend to interview class members, it is certainly possible that in touring a
prison, the experts may inadvertently communicate with class members who are likely to
approach them.  In addition, we assume that in an analysis of clinical staffing and
telepsychiatry, the staffing experts would be reviewing or observing clinical encounters,
treatment, telepsychiatry sessions and other situations where *Coleman* class members
present have a right to know who these adverse experts are, and to consult with their own
attorney about their rights.  The experts may also intend to review confidential mental
health records and speak with clinical and custody staff about psychiatric treatment of
class members (topics which are subject to the Court's protective order).  Resolution of

Patrick McKinney
Elise Thorn
December 21, 2017
Page 3

these and other issues that may arise during the experts tours would be greatly facilitated by the involvement of Plaintiffs' counsel, as previously recognized by both the Plata and Three-Judge Courts. *See id.*; *see also* Three-Judge Court Expert Tours Order at 4.

In May, I sent Defendants a draft stipulation that would govern the conduct and timing of expert tours and disclosures, with particular focus on discovery procedures in advance of any future motion to termination. *See* Exhibit B. We discussed the proposed stipulation during a meeting on May 22, 2017, at which time Defendants indicated that they felt the stipulation was unnecessary, since no termination motion was envisioned at that time. However, the first section of the proposed stipulation would govern expert tours more broadly. In accordance with the attached *Plata* order and the governing *Coleman* and Three-Judge Court precedents regarding communication with represented parties, we asked Defendants to agree to the following two provisions:

     1.     Opposing counsel will have the right to accompany and observe consultants and experts on prison tours, but opposing counsel shall not be permitted to participate or listen in on any communications between retained consultants and experts and their counsel, or between consultants and experts retained by the same party. Reasonable notice of any prison visits by consultants or experts must be provided to opposing counsel.

     2.     Defendants' counsel, experts, and consultants shall not communicate with class members without notice to and the consent of, nor outside the presence of, Plaintiffs' counsel.

These two provisions are necessary and appropriate, and should apply to the staffing experts' reviews as well as to reviews conducted by any other consultants that Defendants chose to retain for possible future litigation.

//

//

//

//

//

Patrick McKinney
Elise Thorn
December 21, 2017
Page 4


We therefore ask that Defendants re-review the attached proposed stipulation (Exhibit B hereto) and provide a formal answer as to whether they agree to submitting it to the Court.  In addition, we would like to schedule a meet and confer regarding our participation in the staffing expert tours, to occur as early in January as can be arranged. I am available after January 7.  We assume that the Penn team will not tour any prisons unless and until this issue is resolved.

Sincerely,

ROSEN BIEN
GALVAN & GRUNFELD LLP

*/s/ Michael W. Bien*

By:   Michael W. Bien


MWB:ksm

Enclosures: Exhibits A-C
CC: Matthew A. Lopes, Jr.
Coleman Special Master Team
Coleman Co-Counsel
Danielle O'Bannon
Christine Ciccotti
Tyler Heath
Chad Stegeman
Nick Weber

# EXHIBIT A

| | |
|---|---|
| **From:** | Michael W. Bien <MBien@rbgg.com> |
| **Sent:** | Friday, May 12, 2017 1:56 PM |
| **To:** | Gabriel.Sanchez@GOV.CA.GOV; Patrick McKinney |
| **Cc:** | Donald Specter; Matt Lopes |
| **Subject:** | Coleman:  Stipulation for Procedures Governing Motion to Terminate [IWOV-DMS.FID6429] |
| **Attachments:** | Stip and Proposed Order re Notice re Motion to Terminate, 05-12-17, 0489....docx |


Gabe

As we discussed a few weeks ago (during negotiations over the L-1 stipulation), attached please find a proposed stipulation governing timing, discovery and experts in the event that defendants choose to file a motion to terminate in *Coleman*.  As you know, a similar order is already in place in *Plata*.

Michael Bien

ROSEN BIEN GALVAN & GRUNFELD LLP
50 Fremont Street, 19th Floor
San Francisco, CA 94105
(415) 433-6830 (telephone)
(415) 433-7104 (fax)
mbien@rbgg.com
www.rbgg.com


CONFIDENTIALITY NOTICE The information contained in this e-mail message may be privileged, confidential and protected from disclosure. If you are not the intended recipient, any dissemination, distribution or copying is strictly prohibited. If you think that you have received this e-mail message in error, please e-mail the sender at rbgg@rbgg.com.

IRS CIRCULAR 230 NOTICE:  As required by United States Treasury Regulations, you should be aware that this communication is not intended by the sender to be used, and it cannot be used, for the purpose of avoiding penalties under United States federal tax laws.

# EXHIBIT B

1   DONALD SPECTER – 083925            MICHAEL W. BIEN – 096891
    STEVEN FAMA – 099641               JEFFREY L. BORNSTEIN – 099358
2   MARGOT MENDELSON – 268583          JANE E. KAHN – 112239
    PRISON LAW OFFICE                  ERNEST GALVAN – 196065
3   1917 Fifth Street                  THOMAS NOLAN – 169692
    Berkeley, California  94710-1916   LISA ELLS – 243657
4   Telephone:    (510) 280-2621       KRISTA STONE-MANISTA – 269083
                                       ROSEN BIEN
5                                      GALVAN & GRUNFELD LLP
                                       50 Fremont Street, 19th Floor
6                                      San Francisco, California  94105-2235
                                       Telephone:    (415) 433-6830
7
    RANJINI ACHARYA – 290877           CLAUDIA CENTER – 158255
8   K&L GATES LLP                      AMERICAN CIVIL LIBERTIES UNION
    4 Embarcadero Center, Suite 1200   FOUNDATION OF NORTHERN
9   San Francisco, California  94111-5994  CALIFORNIA, INC.
    Telephone:    (415) 882-8200       39 Drumm Street
10                                     San Francisco, California  94111-4805
                                       Telephone:    (415) 621-2493
11

12  Attorneys for Plaintiffs

13              UNITED STATES DISTRICT COURT

14             EASTERN DISTRICT OF CALIFORNIA

15

16  RALPH COLEMAN, et al.,            Case No. 2:90-CV-00520-KJM-DB

17          Plaintiffs,               **STIPULATION AND [PROPOSED]
                                      ORDER RE: PROCEDURES**
18      v.                            **GOVERNING EXPERTS AND
                                      MOTION TO TERMINATE**
19  EDMUND G. BROWN, JR., et al.,

20          Defendants.               Judge:   Hon. Kimberly J. Mueller

21

22

23      The parties, by and through their counsel, stipulate and agree as follows:

24      **A.      Expert/Consultant Tours**

25      1.      Opposing counsel will have the right to accompany and observe consultants

26  and experts on prison tours, but opposing counsel shall not be permitted to participate or

27  listen in on any communications between retained consultants and experts and their

28  counsel, or between consultants and experts retained by the same party.  Reasonable notice

1   of any prison visits by consultants or experts must be provided to opposing counsel.

2        2.      Defendants' counsel, experts, and consultants shall not communicate with

3   class members without notice to and the consent of, nor outside the presence of, Plaintiffs'

4   counsel.

5        **B.      Motion to Terminate under Prison Litigation Reform Act**

6        1.      To ensure that both parties have sufficient time for discovery if Defendants

7   choose to file a motion to terminate, and given the restrictions of the PLRA's automatic

8   stay provisions, the parties agree that  Defendants shall provide the Court and Plaintiffs

9   with at least 170 days' notice of any motion to terminate so that the Court may reopen

10  discovery;

11       2.      Defendants shall disclose the identity of any expert witnesses, including

12  name, resume, and the general subject matter(s) on which the expert(s) will opine, at least

13  150 days prior to filing any motion to terminate;

14       3.      Plaintiffs shall disclose the identity of any expert witnesses, including name,

15  resume, and the general subject matter(s) on which the expert will opine, no later than 30

16  days after Defendants' expert disclosures;

17       4.      Expert tours, subject to the provisions outlined in paragraphs A.1 and 2

18  above, shall be concluded at least 45 days prior to filing any motion to terminate;

19       5.      The parties shall have 45 days to exchange expert reports after the

20  conclusion of the expert tours.

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

Case No. 2:90-CV-00520-KJM-DB
STIPULATION AND [PROPOSED] ORDER

[3130209.3]

1    The parties have discussed this stipulation with the *Coleman* Special Master

2  Matthew Lopes, Jr. and he is in agreement with its contents.

3

4    IT IS SO STIPULATED.

5  DATED: May ___, 2017              Respectfully submitted,

6                                    KAMALA D. HARRIS

7                                    Attorney General of California
                                     DANIELLE F. O'BANNON

8                                    Supervising Deputy Attorney General

9

10                                   By: _____

11                                       ELISE THORN
                                         Deputy Attorney General

12
                                     Attorneys for Defendants
13

14  DATED: May ___, 2017              ROSEN BIEN GALVAN & GRUNFELD LLP

15

16                                   By: _____

17                                       Michael W. Bien

18                                   Attorneys for Plaintiffs

19

20                                **[PROPOSED] ORDER**

21    Pursuant to the foregoing stipulation, and to address the concerns and suggestions

22  raised by Plaintiffs' counsel and the Special Master, IT IS SO ORDERED.

23

24  DATED: _____, 2017

25                                   _____

26                                   KIMBERLY J. MUELLER
                                     United States District Judge

27

28

# EXHIBIT C

1

2

3                 IN THE UNITED STATES DISTRICT COURT

4             FOR THE NORTHERN DISTRICT OF CALIFORNIA

5

6

7    MARCIANO PLATA, et al.,

8                         Plaintiffs,              NO. C01-1351 TEH

9           v.                                     ORDER GRANTING IN PART
                                                   AND DENYING IN PART
10   EDMUND G. BROWN JR., et al.,                  PLAINTIFFS' MOTIONS FOR
                                                   DISCOVERY
11                       Defendants.

12

13         This matter came before the Court on February 19, 2013, on Plaintiffs' February 14,

14   2013 motion for discovery.  Because time was of the essence, the Court issued an order

15   ruling on the motion, as well as on an argument construed as an oral motion, later that same

16   day.  This order explains the Court's reasoning and also sets a schedule for expert disclosures

17   if Defendants opt to file a termination motion.

18

19   **BACKGROUND**

20         On September 5, 2012, this Court set a framework for transitioning away from the

21   Receivership and also ordered the court experts to begin evaluating the quality of care at

22   individual institutions.  On February 12, 2013, Defendants represented that they "will file a

23   termination motion in a few months" if they conclude that the ongoing expert evaluations

24   have not been completed "in a reasonable period" or the experts "lose sight of the governing

25   constitutional standards."  Defs.' Feb. 12, 2013 Response & Obj. to Jan. 29, 2013

26   *Plata/Coleman* Order at 1 (Docket No. 2529).

27         Plaintiffs "recently learned" that Defendants "hired physicians from Texas to evaluate

28   the medical care at California's prisons," and that these physicians were scheduled to visit

United States District Court
For the Northern District of California

1   two prisons between February 20 and 22, 2013.  Specter Decl. ¶¶ 3-4.  Plaintiffs' counsel

2   contacted Defendants' counsel on February 11 and again on February 13 to request

3   permission to accompany the Texas physicians on their prison tours.  *Id.* ¶ 5.  Defendants did

4   not respond to these requests, *id.* ¶¶ 5-6, and Plaintiffs subsequently filed a motion for

5   discovery to be heard on shortened time.  Plaintiffs requested that discovery be re-opened

6   and that Plaintiffs' counsel be allowed to accompany Defendants' hired consultants on their

7   prison tours.

8           On February 14, 2013, the Court granted Plaintiffs' request to hear the motion on

9   shortened time.  Defendants filed a timely opposition the following day.

10          At oral argument, the parties also discussed Defendants' request for their consultants

11  to meet with members of the Receiver's executive staff in the afternoon following the motion

12  hearing.  The Court construed that discussion as an oral motion by Plaintiffs to be allowed to

13  participate in any such meetings.

14

15  **DISCUSSION**

16          The Court addresses each of Plaintiffs' requests in turn below.

17  **I.       Plaintiffs' Motion to Re-Open Discovery**

18          First, Plaintiffs request that discovery be re-opened to allow them "an opportunity to

19  investigate the current conditions in the California state prisons" in anticipation of the

20  potential termination motion under consideration by Defendants.  Mot. at 2.  Plaintiffs'

21  request stems primarily from the Prison Litigation Reform Act's ("PLRA's") automatic stay

22  provisions, which provide that a motion to terminate injunctive relief operates as an

23  automatic stay beginning 30 or 180 days after such a motion is filed.[1]  18 U.S.C.

24  § 3626(e)(2).

25

26          [1]The timing of the automatic stay depends on whether the motion is made under 18
    U.S.C. § 3626(b)(1) or (2), in which case the stay begins 30 days after the motion is filed, or
27  under "any other law," in which case the stay begins 180 days after the motion is filed.  *Id.*
    § 3626(e)(2).  "The court may postpone the effective date of [either] automatic stay . . . for
28  not more than 60 days for good cause."  *Id.* § 3626(e)(3).

United States District Court

For the Northern District of California

1    The Court finds Plaintiffs' concerns about the time limitations imposed by the PLRA

2  to be reasonable, particularly since it is not clear under which provision Defendants might

3  file a motion to terminate.  The Court finds it would be fundamentally unfair to allow

4  Defendants an unlimited time to prepare for filing a motion while permitting Plaintiffs only

5  the time allowed by the PLRA's automatic stay – less the time required for a hearing and for

6  the Court to make a ruling – to prepare an opposition that will likely involve substantial

7  evidence.  As the parties are well aware, this is a complex case, and the Court anticipates

8  that, absent a stipulation, determining whether this case should be terminated will require a

9  detailed factual inquiry.  In addition, Defendants' counsel acknowledged at oral argument

10  that they were not arguing that Plaintiffs have no right to begin preparing for a potential

11  motion to terminate.[2]  Indeed, just as Defendants are entitled to hire consultants to review

12  prison conditions, so are Plaintiffs.  Accordingly, Plaintiffs' motion to re-open discovery is

13  GRANTED to allow Plaintiffs an opportunity to prepare for a potential termination motion at

14  the same time as Defendants.

15    The Court expects the parties to act reasonably while they conduct discovery and

16  anticipates that the parties, acting in good faith, will be able to resolve most, if not all,

17  discovery disputes without further intervention.  If the parties have a dispute that they cannot

18  resolve among themselves, they shall telephone the Court's courtroom deputy and request a

19  referral to a magistrate judge for discovery purposes.

20

21  **II.    Plaintiffs' Motion to Accompany Defendants' Consultants on Prison Visits**

22    Plaintiffs next request an order allowing Plaintiffs' counsel to attend all prison tours

23  by Defendants' consultants or experts.  Defendants object to this request on grounds that

24  granting it would intrude on privileged communications between Defendants' counsel and

25  their consultants.  For support, Defendants rely on Federal Rule of Civil Procedure

26  26(b)(4)(C), which protects communications between a party's attorney and designated

27

28    [2]Counsel argued only that accompanying Defendants' consultants on prison visits
should not be the basis for Plaintiffs' preparation.

1   expert witnesses except for three delineated areas, as well as a brief order from Magistrate

2   Judge Edmund Brennan relying on Rule 26(b)(4)(C) to deny a request similar to the one

3   Plaintiffs have made in this case.  *Mitchell v. Cate*, Case No. 2:08-CV-01196 JAM EFB

4   (E.D. Cal.), Oct. 17, 2012 Order re: Discovery Dispute (Ex. A to Defs.' Req. for Judicial

5   Notice).[3]

6         At oral argument, Plaintiffs' counsel made clear that they do not intend to interfere

7   with any communications between Defendants' counsel and their consultants or experts, or

8   with any communications the consultants or experts may have among themselves.  Instead,

9   Plaintiffs' counsel intend merely to observe, as well as to be present in case any consultant or

10  expert wishes to speak to a member of the Plaintiff class whom counsel represents.

11        The Court rejects the *Mitchell* court's conclusory decision that accompanying experts

12  on a prison tour "would constitute an impermissible invasion into privileged communications

13  between Defendants, their counsel, and their expert consultants as they work together to

14  evaluate Plaintiffs' claims and prepare a defense, and would also violate the work-product

15  privilege," *id.* at 2, and Defendants have cited no other authority to support their position.  To

16  the contrary, Defendants' own position regarding their right to accompany Plaintiffs' counsel

17  on any prison visits demonstrates that Defendants do not themselves believe that observation

18  of a consultant's prison tours by opposing counsel violates any privilege.  Defendants'

19  counsel insist that they must be present for all prison tours by Plaintiffs' consultants or

20  experts – which would be barred by Rule 26 if the Court were to accept Defendants' position

21  in opposition to the instant motion.  Likewise, Defendants' counsel stated at oral argument

22  that they must attend Plaintiffs' monitoring visits because they represent prison staff who

23  have a right to have their attorney present when opposing counsel visit.  The same rationale

24  applies to Plaintiffs' counsel, who represent prison inmates with whom Defendants'

25  consultants may wish to speak.

26        Consequently, the Court finds good cause to GRANT Plaintiffs' motion to accompany

27  Defendants' consultants or experts on their prison visits.  All counsel will be permitted to

28
─────────────────

[3]The Court grants Defendants' unopposed request for judicial notice.

accompany all consultants and experts on prison tours, but opposing counsel shall not be permitted to participate or listen in on any communications between retained consultants and experts and their counsel, or between consultants and experts retained by the same party. Reasonable notice of any prison visits by consultants or experts must be provided to opposing counsel.[4]

In addition, to ensure that both parties have sufficient time for discovery if Defendants file a motion to terminate, and given the restrictions of the PLRA's automatic stay provisions, IT IS HEREBY ORDERED that:

1. Defendants shall disclose the identity of any expert witnesses and provide expert reports in compliance with Federal Rules of Civil Procedure 26(a)(2)(A)-(C) at least 120 days prior to filing any motion to terminate.

2. Plaintiffs shall disclose the identity of any expert witnesses and provide expert reports in compliance with Rules 26(a)(2)(A)-(C) no later than 14 days after Defendants' expert disclosures.

3. Expert discovery shall be completed within 120 days after Defendants' expert disclosures.

## III.    Plaintiffs' Oral Motion to Accompany Defendants' Consultants in Meetings with Receiver's Executive Staff

Finally, the Court construed Plaintiffs' argument regarding meetings between Defendants' consultants and the Receiver's executive staff as an oral motion that Plaintiffs' counsel be permitted to attend such meetings. These meetings do not have the client concerns present during prison visits, and Defendants' counsel do not assert any right to participate in meetings between the Receiver's staff and Plaintiffs' counsel, consultants, or experts. Plaintiffs have not persuaded the Court that good cause exists to grant their oral

---

[4]The Court expects the parties to cooperate on what constitutes "reasonable notice." Any disputes over whether notice was reasonable will be resolved by a magistrate judge. If the judge determines that notice provided for any particular prison visit was not reasonable, then testimony based on that visit will not be permitted.

5

motion, and the motion is therefore DENIED.  Both parties' consultants, experts, and counsel

may communicate with the Receiver's executive staff without the presence of opposing

counsel.

**IT IS SO ORDERED.**

Dated:   02/21/13

_____
THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT

**United States District Court**
For the Northern District of California

6

Exhibit E

| | |
|---|---|
| **From:** | Krista Stone-Manista |
| **Sent:** | Tuesday, January 9, 2018 10:03 AM |
| **To:** | Patrick McKinney; Elise Thorn |
| **Cc:** | Matt Lopes; Coleman Special Master Team; Coleman Team - RBG Only; Steve Fama; Danielle OBannon; Christine.Ciccotti@doj.ca.gov; Tyler Heath; Chad Stegeman (Chad.Stegeman@doj.ca.gov); Nick Weber |
| **Subject:** | RE: Coleman - Plaintiffs' Request to Observe Defendants' Staffing Expert Tours [IWOV-DMS.FID6429] |

All,

We have not yet received a response to this letter regarding our request to attend Defendants' staffing expert tours, and related discovery matters.  Please provide Defendants' response as soon as possible so we may promptly present these issues to the Court if necessary.

Regards,

Krista

**From:** Krista Stone-Manista
**Sent:** Thursday, December 21, 2017 3:17 PM
**To:** Patrick McKinney <Patrick.McKinney@cdcr.ca.gov>; Elise Thorn <Elise.Thorn@doj.ca.gov>
**Cc:** Matt Lopes <mlopes@pldolaw.com>; Coleman Special Master Team <ColemanSpecialMasterTeam@rbgg.com>; Coleman Team - RBG Only <ColemanTeam-RBGOnly@rbgg.com>; Steve Fama <sfama@prisonlaw.com>; Danielle OBannon <Danielle.OBannon@doj.ca.gov>; Christine.Ciccotti@doj.ca.gov; Tyler Heath <Tyler.Heath@doj.ca.gov>; Chad Stegeman (Chad.Stegeman@doj.ca.gov) <Chad.Stegeman@doj.ca.gov>; Nick Weber <Nicholas.Weber@cdcr.ca.gov>
**Subject:** Coleman - Plaintiffs' Request to Observe Defendants' Staffing Expert Tours [IWOV-DMS.FID6429]

Dear Patrick and Elise,

Please see attached correspondence from Mike Bien regarding Defendants' staffing experts' tours.

Regards,

Krista

**Krista Stone-Manista**
ROSEN BIEN GALVAN & GRUNFELD LLP
50 Fremont Street, 19th Floor
San Francisco, CA 94105
(415) 433-6830
KStone-Manista@rbgg.com

CONFIDENTIALITY NOTICE: The information contained in this e-mail message may be privileged, confidential and protected from disclosure. If you are not the intended recipient, any dissemination, distribution or copying is strictly prohibited. If you think that you have received this e-mail message in error, please e-mail the sender at kstone-manista@rbgg.com.

IRS CIRCULAR 230 NOTICE:  As required by United States Treasury Regulations, you should be aware that this communication is not intended by the sender to be used, and it cannot be used, for the purpose of avoiding penalties under United States federal tax laws.

Exhibit F



**XAVIER BECERRA**
*Attorney General*

*State of California*
**DEPARTMENT OF JUSTICE**

1300 I STREET, SUITE 125
P.O. BOX 944255
SACRAMENTO, CA 94244-2550

Public: (916) 445-9555
Telephone: (916) 210-7350
Facsimile: (916) 324-5205
E-Mail: Christine.Ciccotti@doj.ca.gov

January 17, 2018

<u>Via E-Mail</u>
Michael Bien, Esq.
Rosen Bien Galvan & Grunfeld LLP
50 Fremont Street, 19th Floor
San Francisco, CA 94105-2235

RE:    Coleman v. Brown, et al.,
       <u>U.S. District Court, Eastern District of California, Case No. 2:90-cv-00520 KJM-DB</u>
       (PC)

Dear Michael:

We write in response to your December 21, 2017 letter regarding Defendants' retained consultants.

On October 10, 2017, the *Coleman* Court issued an order advising that "[D]efendants have not presented either the Special Master or this court with a specific proposal for new staffing ratios. The court's May 18, 2015 order was clear: any revision to existing staffing ratios requires approval of the Special Master. ECF No. 5307 at 6. That approval is a precondition to seeking leave from this court, also required, before changing any mental health staffing ratio." Order at 14, ECF No. 5711.

As we advised you on December 13, 2017, Defendants' staffing consultants are evaluating CDCR's current mental-health staffing plan to assist Defendants in addressing these points raised by the Court and to offer new ideas to address some of the difficult staffing issues that remain in the case.

As you know, Defendants have not filed a motion seeking relief from the Court's staffing orders. Thus, under the Federal Rules of Civil Procedure, the staffing consultants are currently non-disclosed experts for consultation purposes. If Defendants file a motion seeking to modify their staffing plan, all relevant federal rules related to discovery and disclosure will be followed at the appropriate time.

Consistent with the Court's October 10 order and our December 13 e-mail to you, Defendants intend to evaluate the staffing consultants' recommendations, and will informally share them, along with information the consultants relied on in forming them, during the

January 17, 2018
Page 2

workgroup meetings in March. It is our expectation that the workgroup discussions will be enhanced by the staffing consultants' input, and that the exchange of information will obviate the need for formal motion practice or discovery.[1]

Defendants do not agree that it is necessary or appropriate for Plaintiffs' counsel to accompany Defendants' consultants on any prison visits. And as reiterated in my December 13, 2017 e-mail, Defendants' staffing consultants will not be communicating with class members. If any interaction is necessary for them to complete their analysis, we will meet and confer with Plaintiffs about an appropriate procedure for doing so.

Sincerely,

*/s/ Christine M. Ciccotti*
CHRISTINE M. CICCOTTI
Deputy Attorney General

For    XAVIER BECERRA
Attorney General

CF1997CS0003
33230097.docx

---

[1] For these reasons, Plaintiffs' reliance on the *Plata* order is misplaced. That order concerned termination motions and was premised on the strict timelines of the Prison Litigation Reform Act for such motions. Because of those timelines, the *Plata* Court ordered discovery of expert material earlier than provided for by the federal rules. Here, there is no motion pending, much less a pending termination motion. Thus, the *Plata* order is not relevant to the consultants' work in this context, and may not be applicable to *Coleman* in any event.

Exhibit G

| | |
|---|---|
| **From:** | Michael W. Bien |
| **Sent:** | Monday, January 22, 2018 11:21 AM |
| **To:** | Christine Ciccotti; Elise Thorn |
| **Cc:** | Nick Weber; Patrick McKinney; Coleman Special Master Team; Chad Stegeman; Tyler Heath; Danielle OBannon; Steve Fama; Donald Specter; Coleman Team - RBG Only |
| **Subject:** | Coleman:  Defendants' Staffing Experts' Prison Tours, 489-3 [IWOV-DMS.FID6429] |

Christine and Elise

On January 17, defendants finally responded in writing to my December 21 letter concerning defendants' newly retained "staffing" experts and plaintiffs' request for an orderly and fair discovery process in connection with defendants' stated goal of moving the Court to modify the existing Court-ordered staffing plan and its ratios for psychiatrists and other clinicians.  Plaintiffs requested that defendants stipulate and agree to an order governing, among other things, notice and the opportunity to observe prison tours by litigation experts, modeled on an Order issued by the Court in *Plata*.  The parties have been discussing this proposed stipulation for more than six months. Defendants' January 17 letter rejected the proposed stipulation and the request to give plaintiffs' counsel notice of prison tours and the opportunity to accompany defendants' litigation experts on those tours.

On Thursday, January 18, you indicated that you would "speak again" to your clients and Team about your position.  As we have indicated several times, we have no choice but to file a motion with the Court given defendants' current position and will do so this week unless a satisfactory agreement can be reached.

We assume you will agree that the staffing experts will *not* conduct onsite prison tours until the Court decides this dispute.  (We will move to exclude any study or opinions by these experts based on prison observations conducted without plaintiffs' counsel in attendance.)

We can file the motion as per the Court's normal motion schedule, as follows:

Filing Date: On or before January 26
Defendants' Response: February 9
Plaintiffs' Reply: February 16
Hearing Date: February 23

If you would prefer to expedite the Court's decision, we can also ask the Court to hear our motion on shortened time.  Please let us know if you will stipulate to this expedited schedule, as follows:

Filing Date: January 23
Defendants' Response: January 30
Plaintiffs' Reply: February 2
Hearing Date: February 9

Please provide your response by close of business today.  If we do not hear from you, we will proceed with filing our motion and a motion for hearing on an expedited schedule, as outlined above.

Michael Bien

ROSEN BIEN GALVAN & GRUNFELD LLP

50 Fremont Street, 19th Floor
San Francisco, CA 94105
(415) 433-6830 (telephone)
(415) 433-7104 (fax)
mbien@rbgg.com
www.rbgg.com


CONFIDENTIALITY NOTICE The information contained in this e-mail message may be privileged, confidential and protected from disclosure. If you are not the intended recipient, any dissemination, distribution or copying is strictly prohibited. If you think that you have received this e-mail message in error, please e-mail the sender at rbgg@rbgg.com.

IRS CIRCULAR 230 NOTICE:  As required by United States Treasury Regulations, you should be aware that this communication is not intended by the sender to be used, and it cannot be used, for the purpose of avoiding penalties under United States federal tax laws.

Exhibit H

| | |
|---|---|
| **From:** | Michael W. Bien |
| **Sent:** | Thursday, January 25, 2018 10:52 AM |
| **To:** | Christine Ciccotti; Elise Thorn; 'Damon McClain' |
| **Cc:** | Nick Weber; Patrick McKinney; Coleman Special Master Team; 'Chad Stegeman'; Tyler Heath; Danielle OBannon; Steve Fama; Donald Specter; Coleman Team - RBG Only; Gabriel.Sanchez@GOV.CA.GOV |
| **Subject:** | Coleman:  Defendants' Staffing Experts' Prison Tours, 489-3 [IWOV-DMS.FID6429] |

Damon and Christine

We were surprised and disappointed, to say the least, to learn in our telephone conference Monday afternoon, that during the period of time that the parties were engaged in a meet and confer concerning plaintiffs' request for notice and an opportunity to attend and observe Dr. Penn's prison tours, defendants went ahead with those tours in December and January.   By so doing, you not only denied us the opportunity to observe the tours, but also denied us the opportunity to bring the issue to the Court for decision.

Defendants and their attorneys have long known of plaintiffs' request for notice and the opportunity to observe prison tours by defendants' litigation experts, which has been the practice in *Coleman* (and other CDCR cases) since the mid-1980's (if not before).  Defendants' were required to give notice and the opportunity to observe during the three-judge court proceedings in 2007-8, pursuant to an order from the three-judge court, but chose to proceed with secret prison tours in 2011 and 2012 and a surprise motion to terminate in January 2013.   As a result of defendants' motion to terminate filed in *Coleman*, plaintiffs' counsel in *Plata* moved for an order requiring reasonable notice and an opportunity to observe defendants' expert prison tours and reasonable notice of a motion to terminate.  Judge Henderson so ordered in February 2013.  Docket 2546.

I personally raised with defendants the need for a similar order to be issued in *Coleman* and In May 2017, after several conversations, I sent a proposed stipulation that would, if in place, have covered the current dispute.  Defendants have never responded in writing to the proposal and never clearly indicated "yes" or "no," or suggested alternatives or modifications.  I also made clear that if we could not reach an agreement on a stipulation, we would file a motion with the Court.

Defendants first informed plaintiffs' counsel of the existence and identity of the staffing experts on or about December 8.  In an email on December 11, I asked for more information about the tours and asked you to confirm that your experts would not interview my clients as part of the tours.  During our workgroup call on December 18, we again requested additional information about the tours and for defendants to confirm our right to notice and the opportunity to accompany defendants' experts on the tours and observe.  You said we should meet and confer on the issue and asked us to put our objections and requests in writing, which we did on December 21.  *At no time did defendants inform us that Joseph Penn and his team had started prison tours in December!*  Defendants failed to respond to our December 21 letter for many weeks and not until several communications from my office asking for your response did your January 17 come forth.  On January 18, at the All Parties Meeting in Sacramento, the staffing experts were again discussed and plaintiffs' request for notice and the opportunity to observe was again raised. *Once again, at no time in January, including in defendants' letter of January 17, and at the face-to-face meeting on January 18, did defendants disclose that Joseph Penn and his team were already busy touring prisons!*

Defendants' conduct has been disingenuous and in bad faith.  While you have the right to disagree with plaintiffs' position and to litigate the issue in Court,  your tactics of delay and misrepresentation through omission of the critical fact that the tours were underway, is serious misconduct.   You have, once again, denied plaintiffs' counsel the right to observe defendants' litigation experts as they do their work, gathering evidence through their tours of the

prisons and their interviews with staff, that will form the basis of their opinion concerning staffing ratios. Christine, in our conversation on January 18, already informed us of the critical "opinion" that these experts were hired to provide: the existing staffing ratios for psychiatrists should be adjusted to require fewer psychiatrists. The foundation for this opinion will include, presumably, information learned and observations made during the prison tours.

We will be bringing defendants' conduct to the attention of the Court and will seek appropriate relief.

In the mean-time, please take immediate steps to preserve from destruction all notes, emails, documents, calendar entries, recordings, contracts, agreements, communications, between Penn, Allen and/or Murray and any DAG, any CDCR employee, any state employee including the Governor's Office, from 2011 to the present, in *Plata*, *Coleman*, or any other matter or engagement.

Please also provide the following information as soon as possible and no later than February 15:

1. For each of the recent prison tours in connection with staffing, the date (or dates) of the tour, the hours spent on the tour, the names of the experts who attended and the hours that each of them were on the premises, the names of any CDCR or AG or Governor's Office attorneys who were present for any part of the tour, and the names of any other CDCR or State employees who are not ordinarily employed at the prison who attended any part of the tour;

2. Damon represented that he attended three prison tour with these experts in December, that more tours had occurred in January and/or were occurring this week, and that the tours followed the following pattern: a) meeting with "supervisors" in a conference room, b) a tour of the prison "showing treatment areas," c) a meeting with "clinicians."  Please confirm that this pattern was followed for each prison tour or provide details about any exceptions to this pattern.

3. For each prison tour, please identify all persons present at the initial meeting with supervisors, the location of the meeting and the time the meeting started and ended. Please also identify and produce and documents or information provided to or shown to the experts at the meeting and any notes taken by any person or persons in attendance.

4. For each prison tour, please identify each treatment area shown to the experts during the tour, which experts and other persons were present for each treatment area, the start and end time for each treatment area, whether or not any prisoners were present and, if so, identify the prisoners, whether or not any custody or clinical staff were present and the identity of those persons.  Please also identify and produce any documents or information shown to or provided to the experts at each treatment area and any notes taken by any person or persons in attendance.

5. For each prison tour, please identify all persons present at the final meeting with clinicians, the location of the meeting and the time the meeting started and ended. Please also identify and produce and documents or information provided to or shown to the experts at the meeting and any notes taken by any person or persons in attendance.

6. Please identify and produce any medical or custody records of individual prisoners shown to or provided to the staffing experts and the date and time and location that the records were provided.  If any of the staffing experts were provided with online access to CDCR medical or custody records, please produce the record of each time the system was accessed, for how long, by whom and what records were accessed.

7. Please provide copies of any contracts, agreements or arrangements with Penn, Murray and /or Allen with the AG's Office, CDCR or the Governor's Office from 2011 to the present.

8. Please provide any communications, including, notes, letters, statements, invoices, payments, emails, texts or records of conversations with Penn, Murray and/or Allen and any DAG, CDCR employee or staff of the Governor's Office from 2011 to the present.

9. Please provide records of any payments made to Penn, Murray and/or Allen by the Ag's Office, CDCR or the Governor's Office from 2011 to the present.

10. Please identify and produce any other documents and information provided to or shown to Penn, Murray and/or Allen by the AG's office, CDCR or the Governor's Office from 2011 to the present. For each document, please identify who provided it and when and for what purpose.

Please inform me immediately if you are taking the position that you need not produce the requested documents and information because "discovery is closed," the staffing experts are "consultants" and not litigation experts, or that these requests were not set forth on pleading paper with the formality of a document request or interrogatory.

Michael Bien

ROSEN BIEN GALVAN & GRUNFELD LLP
50 Fremont, 19th Floor
San Francisco, CA 94105
(415) 433-6830 (telephone)
(415) 433-7104 (fax)
mbien@rbgg.com
www.rbgg.com

CONFIDENTIALITY NOTICE The information contained in this e-mail message may be privileged, confidential and protected from disclosure. If you are not the intended recipient, any dissemination, distribution or copying is strictly prohibited. If you think that you have received this e-mail message in error, please e-mail the sender at rbg@rbgg.com.

IRS CIRCULAR 230 NOTICE: As required by United States Treasury Regulations, you should be aware that this communication is not intended by the sender to be used, and it cannot be used, for the purpose of avoiding penalties under United States federal tax laws.

---

**From:** Michael W. Bien
**Sent:** Monday, January 22, 2018 11:20 AM
**To:** Christine Ciccotti <Christine.Ciccotti@doj.ca.gov>; Elise Thorn <Elise.Thorn@doj.ca.gov>
**Cc:** Nick Weber <Nicholas.Weber@cdcr.ca.gov>; McKinney, Patrick@CDCR <Patrick.McKinney@cdcr.ca.gov>; Coleman Special Master Team <ColemanSpecialMasterTeam@rbgg.com>; 'Chad Stegeman' <Chad.Stegeman@doj.ca.gov>; Tyler Heath <Tyler.Heath@doj.ca.gov>; Danielle OBannon <Danielle.OBannon@doj.ca.gov>; Steve Fama <sfama@prisonlaw.com>; Donald Specter <dspecter@prisonlaw.com>; Coleman Team - RBG Only <ColemanTeam-RBGOnly@rbgg.com>
**Subject:** Coleman: Defendants' Staffing Experts' Prison Tours, 489-3 [IWOV-DMS.FID6429]

Christine and Elise

On January 17, defendants finally responded in writing to my December 21 letter concerning defendants' newly retained "staffing" experts and plaintiffs' request for an orderly and fair discovery process in connection with defendants' stated goal of moving the Court to modify the existing Court-ordered staffing plan and its ratios for psychiatrists and other clinicians. Plaintiffs requested that defendants stipulate and agree to an order governing, among other things, notice and the opportunity to observe prison tours by litigation experts, modeled on an Order issued by the Court in *Plata*. The parties have been discussing this proposed stipulation for more than six months. Defendants' January 17 letter rejected the proposed stipulation and the request to give plaintiffs' counsel notice of prison tours and the opportunity to accompany defendants' litigation experts on those tours.

On Thursday, January 18, you indicated that you would "speak again" to your clients and Team about your position.   As we have indicated several times, we have no choice but to file a motion with the Court given defendants' current position and will do so this week unless a satisfactory agreement can be reached.

We assume you will agree that the staffing experts will *not* conduct onsite prison tours until the Court decides this dispute.  (We will move to exclude any study or opinions by these experts based on prison observations conducted without plaintiffs' counsel in attendance.)

We can file the motion as per the Court's normal motion schedule, as follows:

Filing Date: On or before January 26
Defendants' Response: February 9
Plaintiffs' Reply: February 16
Hearing Date: February 23

If you would prefer to expedite the Court's decision, we can also ask the Court to hear our motion on shortened time.  Please let us know if you will stipulate to this expedited schedule, as follows:

Filing Date: January 23
Defendants' Response: January 30
Plaintiffs' Reply: February 2
Hearing Date: February 9

Please provide your response by close of business today.  If we do not hear from you, we will proceed with filing our motion and a motion for hearing on an expedited schedule, as outlined above.


Michael Bien

ROSEN BIEN GALVAN & GRUNFELD LLP
50 Fremont Street, 19th Floor
San Francisco, CA 94105
(415) 433-6830 (telephone)
(415) 433-7104 (fax)
mbien@rbgg.com
www.rbgg.com


CONFIDENTIALITY NOTICE The information contained in this e-mail message may be privileged, confidential and protected from disclosure. If you are not the intended recipient, any dissemination, distribution or copying is strictly prohibited. If you think that you have received this e-mail message in error, please e-mail the sender at rbgg@rbgg.com.

IRS CIRCULAR 230 NOTICE:  As required by United States Treasury Regulations, you should be aware that this communication is not intended by the sender to be used, and it cannot be used, for the purpose of avoiding penalties under United States federal tax laws.