```
 1                   UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF CALIFORNIA
 2                            --oOo--

 3   RALPH COLEMAN, ET AL.,      ) Docket No. 09-CV-520
                                 )
 4                               ) Sacramento, California
                     Plaintiffs, ) February 14, 2018
 5                               ) 2:12 P.M.
            v.                   )
 6                               )
     EDMUND G. BROWN, JR., ET AL.,) Re: Status
 7                               )
                     Defendants. )
 8
                      TRANSCRIPT OF PROCEEDINGS
 9           BEFORE THE HONORABLE KIMBERLY J. MUELLER
                    UNITED STATES DISTRICT JUDGE
10
     APPEARANCES:
11
     For the Plaintiffs:     ROSEN BIEN GALVAN AND GRUNFELD by
12                           MS. LISA ADRIENNE ELLS
                             MS. KRISTA MICHELLE STONE-MANISTA
13                           MR. ERNEST GALVAN
                             50 Fremont Street, 19th Floor
14                           San Francisco, CA 94105

15   For the Defendants:     OFFICE OF THE ATTORNEY GENERAL by
                             MR. DAMON GRANT MCCLAIN
16                           MS. DANIELLE FELICE O'BANNON
                             MR. JAY CRAIG RUSSELL
17                           455 Golden Gate Avenue, Suite 11000
                             San Francisco, CA 94102
18                           MS. CHRISTINE MARIE CICCOTTI
                             MR. TYLER VANCE HEATH
19                           MS. ELISE OWENS THORN
                             1300 I Street, Suite 125
20                           Sacramento, CA 94244-2550

21                  JENNIFER COULTHARD, RMR, CRR
                         Official Court Reporter
22                       501 I Street, Suite 4-200
                          Sacramento, CA 95814
23                        jenrmrcrr2@gmail.com
                            (312)617-9858
24

25        Mechanical Steno- Computer-Aided Transcription.
```

1          SACRAMENTO, CALIFORNIA, WEDNESDAY, FEBRUARY 14, 2018.

2                              --oOo--

3      (In open court.)

4          THE CLERK:  Calling civil matter 90-00520, *Coleman,*

5  *et al. v. Brown, et al*. on for status.

6          THE COURT:  Appearances, please.

7          MR. McCLAIN:  Good afternoon, your Honor; Damon

8  McClain with the Attorney General's Office for defendants.  And

9  I have at the table here with me Christine Ciccotti, Danielle

10 O'Bannon, Jay Russell, Elise Thorn, and Tyler Heath.

11         THE COURT:  All right.  Good afternoon to you all.

12         MS. ELLS:  Good afternoon, your Honor.  This is Lisa

13 Ells for the plaintiffs.  I have with me Christina

14 Stone-Manista and Ernest Galvan.

15         THE COURT:  All right.  Good afternoon to you all.

16         This is on for the status the Court had set.  I had a

17 few observations and questions based on the parties' joint

18 status report; in other words, looking at the record of the

19 case as relevant to the current posture.  So starting with the

20 question of any tours where supposedly the parties have

21 agreement; although, "up to" and "at least" don't mean the same

22 thing.  But here is my fundamental question, because those

23 tours are being proposed, perhaps agreed to, in part, in

24 response to tours that the defense conducted unilaterally.  And

25 while I don't rule out the possibility of allowing some tours

1   at some point, it's not clear to me that that's the first step

2   to take here to cure whatever problem has been created, while

3   recognizing the defense's ability to litigate instead of

4   constructively problem solve, if that's what it wants to do.

5          So my question is this:  The defense filing says these

6   are consultants, they're not experts.  I can't tell if they

7   could be experts at some point.  There appears to be a fair

8   amount of waiver with respect to those consultants already,

9   provision of CVs, information on -- on tours.  Why would I not

10  order the defense to provide to the plaintiffs and the special

11  master within two weeks summaries by the consultants of their

12  methodologies, their observations, their conclusions reached

13  during the tours that have been conducted as a way of possibly

14  precluding the need for any repeat tours, a costly,

15  time-consuming exercise?  So, Mr. McClain, on that point?

16         MR. McCLAIN:  Well, your Honor, so under Rule 26 these

17  consultants are consultants that defendants have hired to

18  assist them --

19         THE COURT:  You don't need to educate the Court.  You

20  don't need to educate the Court on work product and Rule 26 and

21  what happens if there's litigation, okay?  I get that.  But

22  there's already been some waiver with respect to the

23  consultants, and I -- so my question really is -- unless you're

24  telling me you're preserving your litigation rights, which

25  seems somewhat at cross-purposes with other messages in your

1    briefing, so which is it?

2              MR. McCLAIN:  Well, so defendant's position on that,

3    your Honor, is we do want to make clear for the record that

4    defendants do have the right to hire consultants and to work

5    with them confidentially on issues in the case.  And when

6    they're working with consultants confidentially on issues in

7    the case, that the consultant's work is protected under the

8    Work Product Doctrine.

9              THE COURT:  Again, I get that.  Here's the -- the

10   thing is at this point you've disclosed identities.  You've

11   disclosed information about tours that happened, so -- and I'm

12   not saying you don't have the right to litigate.  I just said

13   that, if you were listening to me.

14             MR. McCLAIN:  I know.

15             THE COURT:  The question is given the posture of this

16   case -- and I can -- I mean, I can continue here with the train

17   of thought.  There's been a lot -- there are a lot of people on

18   all sides working really hard to constructively solve the

19   outstanding issues in this case.  And it has appeared to the

20   Court at times that the parties, and the special master would

21   agree, are getting close to solving problems, meeting

22   Constitutional standards and getting to the point where all

23   could agree jointly that this case would come to an end.

24   That's not the only way this case could come to an end.  The

25   Court is fully aware of the options, but the Court issued an

1    order last October, it set a deadline for this coming October

2    in an attempt to focus minds, because deadlines have a way of

3    doing that, and there are past due deadlines when it comes to

4    Constitutional compliance in the staffing area.  I think it's

5    hard to argue otherwise.

6         So the question is if the defense is committed on one

7    track to continue to participate in the constructive

8    problem-solving approach to satisfying the Constitution when it

9    comes to staffing, why would it not agree, as the most

10   efficient way of moving the ball forward now, given the water

11   under the bridge.  Why would it not agree to have the

12   consultants that it's identified, information shared with the

13   plaintiffs, prepare summaries of methodology, observations,

14   conclusions?

15        MR. McCLAIN:  Okay.  So your Honor, I only wanted to

16   make it clear on the record because that -- our position on

17   those issues because at the same time defendants have tried to

18   resolve this issue informally with the plaintiffs, and I simply

19   didn't want that to be taken by the Court as a waiver of rights

20   or the protections that defendants are entitled to.

21        THE COURT:  There's no waiver.

22        MR. McCLAIN:  But --

23        THE COURT:  There is no waiver.  This is a specific

24   question, given the factual record before the Court and taking

25   account of what's happened that has now been brought to the

1    Court's attention.

2         I'm having the status to see if I can possibly keep

3    the constructive problem-solving approach on track.  I can

4    engage in some case management.  I'm pretty confident of that.

5         MR. McCLAIN:  Okay.  So defendants are absolutely

6    interested in staying on the problem-solving track, and I don't

7    think their hiring of consultants is, you know, exclusive of

8    staying on that track.

9         As the Court saw in the status conference report,

10   defendants were willing to allow the plaintiffs to attend five

11   additional tours so that they could understand what happened on

12   those visits.

13        I haven't talked to my clients about the possibility

14   of what you're proposing, but that might be something that

15   we're willing to do in lieu of additional prison visits, if

16   that would satisfy the Court and the plaintiffs.

17        THE COURT:  Well, let me see what the plaintiffs have

18   to say about this idea, but the parties and the players are so

19   familiar with the physical plants --

20        MR. McCLAIN:  Right.

21        THE COURT:  -- and it would be impossible to recreate

22   what happens on those tours.  There are certain representations

23   made under oath.  Court and plaintiffs at this point -- at

24   least the Court takes those at face value.  They could be

25   probed in future motion practice if, in fact, this goes the

1    litigation route.  But because what happened on those tours

2    can't be recreated and because the parties are familiar with

3    the physical plant, that's what's led me to ask the question

4    about the consultants' summaries.  So who's going to respond to

5    that proposal for the plaintiffs?

6                MS. ELLS:  I will, your Honor.

7                THE COURT:  Is that an acceptable alternative?

8                MS. ELLS:  I think the concern we have with that is

9    although we are familiar with the physical plant, whatever was

10   happening at the physical plant at the time of the expert tours

11   is unrecoverable to us except through depositions and discovery

12   and, you know, perhaps there was somebody receiving mental

13   health treatment that was observed, even if they didn't speak

14   to that class member.  They intentionally did not take the

15   names of the clinicians that attended the afternoon meeting, so

16   they don't even know who was at that meeting.  And to the

17   extent that there are notes or information that the experts

18   know about what was said at those meetings, all of that is

19   information that is going to inform the workgroup process,

20   because it will help us understand exactly what the bases of

21   the opinion are in addition to whatever is written in their

22   summary.  And frankly, a lot depends on what that summary looks

23   like because --

24               THE COURT:  But how do tours recreate that?

25               MS. ELLS:  They -- they -- new tours would provide

1    some ability to have a common baseline.  And what we would

2    request in addition to new tours is discovery about the prior

3    tours, to understand what happened at those tours.  And the

4    documents that we've requested in our proposed order and the

5    information that we provided, particularly since it's

6    relatively close in time at this point as opposed to, you know,

7    motion practice that, you know, frankly, looks impending a few

8    months from now, it makes sense for us to have that now,

9    particularly because that is the foundation that I feel like

10   the workgroup process needs and the special master and the

11   plaintiffs need to fully engage with whatever recommendations

12   come out of that process.  So we have some concern about just

13   receiving a roll-up of information with no real ability to

14   understand the basis for that in any meaningful way.

15       THE COURT:  Well, there are two -- you're conflating

16   two issues, aren't you, really?  There's one, what happens if

17   there's litigation and motion practice and how to keep the

18   workgroup.  I'm focused right now on how to keep the workgroup

19   staffing project on track.

20       MS. ELLS:  I appreciate that.  And I understand that

21   there is a distinction.  But my point is, is that in this case,

22   because we were prevented from bringing this issue to the Court

23   because of defendants, frankly, a very intentional misdirection

24   about whether or not and when these tours were occurring during

25   the time that we were attempting to resolve this issue, prevent

1    litigation and raise it timely to this Court for resolution

2    because it was an obviously looming question that we very

3    directly raised in May 2017 when we requested a stipulation

4    about this very process and then again in many phone calls and

5    meetings and letters in the months of December and January, all

6    while defendants were conducting these tours.

7        THE COURT:  I understand that.  I understand that

8    position.

9        MS. ELLS:  We should -- but -- but -- so all of that

10   information should have been available to the workgroup,

11   frankly, to have an informed discussion about that.

12       And the only way to cure it at this point and to have

13   a meaningful workgroup discussion is to receive that

14   information, particularly because defendants admit that all of

15   that will be available to us if there is litigation.  So

16   there's no actual prejudice.  This information exists, it is

17   discoverable; and frankly, under our read of the federal rules,

18   these people are being preserved for litigation.  There is no

19   question about that.  They've made that very clear.  They're

20   retained by the Attorney General's Office.

21       THE COURT:  Well, I haven't heard that yet in response

22   to my question.  A full response to my question would give some

23   indication of that.

24       MS. ELLS:  And one more point is that just -- it might

25   be a different story if defendants agree that they will not use

JENNIFER COULTHARD - OFFICIAL COURT REPORTER - USDC - (312)617-9858

1   these people for litigation, but our understanding of their

2   position is that they fully intend to if this does not resolve

3   in the workgroup process, so --

4          THE COURT:  Well, to be perfectly clear, I'm not going

5   to sanction today.  I'm not going to preclude -- I'm not going

6   to reach the details of any suggestion that persons not be used

7   if there is motion practice; however, the -- I expect those

8   issues to be fully briefed and brought to the Court in a

9   focused manner so I can decide it if there is a motion to

10  terminate.  And so any request for sanctions, any request for

11  disqualification denied at this point but without prejudice to

12  renewal.  And that is, again -- because the reason we're having

13  this is to try to get you to step back.  I think the defense

14  actions have understandably provoked at least an equal reaction

15  from the plaintiffs, given the lack of trust.  It doesn't mean

16  that the Court needs to buy in to this gearing up that both

17  parties are telegraphing they want.  And so I'm not going to do

18  that.

19         I'm going to issue an order following this hearing, a

20  short, focused order in an effort to, again, keep on track the

21  process I was directing with my order of last October.  So at

22  this point, unless Mr. McClain tells me otherwise, I'm going to

23  direct that the consultants provide, within two weeks, written

24  summaries of their methodologies, a summary of their

25  observations and their conclusions.  And if they decline to do

1  that, then they shall notify the Court -- the defense shall

2  notify the Court.  So that would be by February 28th of this

3  year, either provide those summaries to the special master and

4  the plaintiffs or notify the Court that they will not.

5        And then, if I'm going to order tours -- again, at

6  this point I'm not persuaded those tours are -- are necessary,

7  while I understand the desire for a common baseline, but I

8  reserve the right to order tours to be completed by the end of

9  April if they do go forward.  Is it -- in terms of the "up to"

10  and "at least," clarify for me if it is five tours.  I heard

11  Mr. McClain clarify, five tours, and you didn't qualify that.

12  So it is five tours that you're agreeing to if tours happen?

13        MR. McCLAIN:  Yes, your Honor.

14        THE COURT:  And if it's five tours, is that sufficient

15  even though plaintiff has qualified the number five with "at

16  least"?

17        MS. ELLS:  That bargain was being negotiated in the

18  context of defendant's agreements to provide us discovery about

19  the initial tours as well, so I am not confident that five

20  tours will do it, frankly.  I'd have to think about that a

21  little bit more.  But, again, that negotiation fell apart

22  because defendants didn't get back to us about our request for

23  discovery that -- that we, you know, had included in our papers

24  as to whether or not they would produce or even, frankly,

25  preserve that information.  So we remain concerned about having

1   five tours and an expert report that's based on old tours that

2   we don't have any information about except for very high-level

3   information that, frankly, doesn't really fill in the gaps in a

4   way that it needs to and that more full discovery would.  We

5   don't even have the contracts under which these people were

6   retained.

7           THE COURT:  And the discovery, was that full-blown

8   discovery or Rule 26 initial disclosures?  What were the

9   contours of the discovery?

10          MS. ELLS:  It's the discovery that's included in our

11  proposed order, and it's essentially the discovery that we

12  would be entitled to upon these people becoming officially

13  declared to be converted, I guess, from consultants into

14  testifying experts, so --

15          THE COURT:  All right.  I understand that.

16          MS. ELLS:  And it's, frankly, crafted to try and fill

17  in some of the gaps about what we couldn't observe in person

18  because we couldn't bring this matter to the Court in time.

19          MR. McCLAIN:  Your Honor --

20          THE COURT:  Yes.

21          MR. McCLAIN:  -- may I?

22          THE COURT:  Uh-huh.

23          MR. McCLAIN:  I'm going to go back a little bit first.

24  You mentioned before, you actually used the word "termination,"

25  and I just want to make sure that the Court understands

1    defendants are not contemplating bringing any -- any type of

2    termination motion.

3              THE COURT:  That's what you say in your briefing.  So

4    that -- but I think you can understand why there would be

5    mistrust and scepticism on behalf of the plaintiffs.  But

6    clarify for me.  I was going there.  I wanted to clarify.

7              MR. McCLAIN:  I can understand why there would be

8    mistrust, but --

9              THE COURT:  Because transparency requires true

10   advanced notice of plans before any implementation.  I know the

11   defense uses the word "transparency," but I don't know that

12   that squares with all of the behavior.  And if it's not -- if

13   there's behavior that's not in a litigation posture, given the

14   history of this case we can quibble, but I think there's been a

15   pretty strong history of joint action when it's been focused on

16   problem solving and not litigation.

17             MR. McCLAIN:  And defendants are committed to the

18   problem-solving process in these workgroups.  Defendants have

19   every intention of bringing any -- any good recommendations

20   that they get from the consultants to the workgroups.  You

21   know, our -- defendants do not want to litigate.  If we have

22   given the impression that we want to do that or that we're

23   gearing up to do that, that is not something -- we would rather

24   avoid that and -- and work through issues through the

25   workgroups.  We're committed to doing that.

1          THE COURT:  I think the actions need to match the
2     words going forward in all respects.  It doesn't -- you know,
3     yes, the -- I mean, it -- it does appear the defense maybe took
4     one aspect of the staffing question in a direction the Court
5     didn't intend because I meant only to reinforce the
6     constructive problem solving in all parties' workgroups and the
7     subgroups that feed into that.  And so even if -- I'm not
8     telling you I would go there.  The staffing ratios have been
9     around for some time.  The -- if -- if the defense is preparing
10    to make a focused proposal on modification of those ratios, I
11    mean, that's fine, but it needs to start first in the
12    workgroups and get hashed out there with methodologies,
13    assumptions, background information, fully shared.  That's --
14    if that's what's going on, the problem that the defense has
15    created for itself I think is it's resulted in the potential of
16    some backsliding in the sense that the parties were working
17    together.  But my pointed question for you is going to be:  If
18    you're not contemplating a motion for termination, what's the
19    earliest the defendants would file a partial or full
20    termination motion?
21          MR. McCLAIN:  Your Honor, we're not -- we're not
22    contemplating any termination motion right now.  That's not on
23    the table for us.
24          THE COURT:  All right.  There's a record made.
25          MR. McCLAIN:  Absolutely.

1           THE COURT:  So I guess to put it another way, then,

2    there would be simply no prejudice to the Court's requiring the

3    six-month notice, right?  And it would be consistent -- I

4    understand the issues pro and con, given the PRLA and Rule 16.

5    And I don't think the Supreme Court has ultimately reached that

6    question.  I know the Ninth Circuit has in Plata, but I do

7    think there's an argument in such a complex case that the way

8    to properly manage the hearing of any such motion, even if it's

9    never filed, you know, it appears to me this case could result

10   without a motion for termination.  But if it's filed, there

11   could be no prejudice to the defendants in requiring six months

12   notice, given what you're telling me, correct?

13          MR. McCLAIN:  Well, your Honor, I think that six

14   months notice, it's impossible to square that with the PLRA's

15   requirement that the Court rule promptly on a motion like that.

16   I mean --

17          THE COURT:  Well, the majority in Plata, considering

18   similar questions, did.

19          MR. McCLAIN:  Not six months.  And there were -- you

20   know, the Plata order was made under some facts that were

21   distinct to that case, including the fact that the -- that the

22   defendants in that case had announced that they were filing a

23   termination motion in, I think they said, a few months.  Those

24   are all facts that aren't present here.

25          THE COURT:  But what's the prejudice if there's no

JENNIFER COULTHARD - OFFICIAL COURT REPORTER - USDC - (312)617-9858

1  contemplation of a motion?

2        MR. McCLAIN:  The --

3        THE COURT:  If I'm trying to do my job of managing a

4  complex case fairly to all, recognizing I would assume the

5  preferred provision for some expert discovery, what's the --

6  what's the prejudice if the Court ultimately determines that

7  its ability to manage a case, its inherent powers and the

8  powers recognized by Rule 16 allow it to do that?  What's the

9  prejudice, apart from your position the statute doesn't allow

10  it?

11        MR. McCLAIN:  And I understand all of that, but the

12  prejudice is that when the defendants reach a conclusion that

13  the case should be terminated and that the evidence and the

14  facts are there to support that, they shouldn't have to wait,

15  you know, 260 days for a hearing, you know, after noticing that

16  they're going to bring a motion.

17        THE COURT:  I understand that argument.

18        MR. McCLAIN:  Your Honor, could I go back?

19        THE COURT:  You may.  I'm just going to give you some

20  sense of the further clarification I would give you and then

21  ask for -- I know there's a lot of reporting in this case, but

22  I think it might help the Court focus and the parties focus to

23  require one additional monthly report.  But what else do you

24  want to tell me before I go there?

25        MR. McCLAIN:  The schedule that you proposed for

1    having the consultants produce some sort of a summary of their

2    methodology, our consultants are still -- are still working on,

3    essentially, a report for -- for defendants, and they're

4    shooting to complete that sometime around the beginning of

5    March.  So I don't know if I'm entirely clear on what -- on

6    what you're asking that they produce in two weeks.  If it's

7    simply a summary of a description of their methodology when

8    they went to the prisons, that might be something that they

9    could get done but something that is -- it almost sounded as

10   though you were talking about submitting their report in -- you

11   know, by the end of the month, and they weren't even going to

12   be done with the report by then.

13        THE COURT:  I wasn't talking about their report.  If

14   the reports are done close to two weeks from now and the

15   plaintiffs would accept that in lieu -- in lieu of what I order

16   and you're prepared to turn those reports over, that may

17   satisfy the spirit of my order.

18        MR. McCLAIN:  So I guess what I need to know is if the

19   Court wants something that actually summarizes all of their

20   conclusions, which I don't know if they're going to be done

21   reaching those conclusions by the end of the month, then I need

22   to ask that --

23        THE COURT:  I can't force them to reach conclusions

24   they haven't reached.  Whatever they have reached.

25        MR. McCLAIN:  Just -- I'm sorry?

1        THE COURT:  I can't force them to reach conclusions

2   they haven't reached.

3        MR. McCLAIN:  Okay.

4        THE COURT:  So it's whatever conclusions they have

5   reached, just to be clear.  Again, I don't want to force this

6   down the litigation path.  It sounds as if you don't want to

7   either.  It's just really following through on that commitment

8   to transparency that your briefs say the defense has.

9        MR. McCLAIN:  Right.  And my only concern is just

10  whether they can complete within -- within two weeks what the

11  Court has asked.

12       THE COURT:  When will they be done with the reports

13  they're working on now?

14       MR. McCLAIN:  They are shooting to be done the first

15  week in March.  I know that they're still waiting for

16  information that they want to -- that they want to base the

17  reports on, and they're still working on the reports.

18       THE COURT:  And are you saying in as many words that

19  you would be prepared to turn those over if I order it?

20       MR. McCLAIN:  Not the reports, your Honor, but -- I

21  guess my confusion is I'm unclear on exactly what needs to be

22  contained in whatever you're asking the consultants to turn

23  over.

24       THE COURT:  Well, I've given you the basic bullet

25  points, not that it would be a bullet point report, but I

1   can -- in an order following this hearing I'll give you a

2   little more direction.

3          MR. McCLAIN:  Okay.

4          THE COURT:  And I won't wait for the completion of the

5   reports, given what you've said.

6          MR. McCLAIN:  Okay.

7          THE COURT:  All right.  So let me just tell you what

8   else I'm thinking in summary terms.  I am going to order

9   monthly filing of a report that includes the information

10  contained in a report the Court already receives, the special

11  master receives.  It's the summary by institution, by

12  classification.

13         The last report is dated November 2017.  It's the

14  Correctional Healthcare Services Mental Health Institution

15  Vacancies Report.  And I'm looking specifically at the line for

16  staff psychiatrist.  And I'm going to direct that that

17  information be filed with the Court monthly on the 15th of the

18  month for each institution and then also the aggregate figures.

19  No averages.  That may keep us focused on the vacancy issue

20  that most troubles the Court.

21         I don't think it can be disputed that there has not

22  been compliance with the Court ordered staffing for at least 8

23  if not, perhaps, 16 years.

24         And then in terms of the tasks of the workgroup, I'm

25  going to provide some more clear definition of the tasks that

1    that workgroup should be focused on to realistically be on

2    track to satisfy the Court's order when it comes to October

3    2018.  And so specifically I'll want the workgroup to answer

4    the question:  Can the defendants hire enough psychiatrists

5    through salary adjustments, forensic psychiatric fellowships,

6    exhaustion of clustering, exhaustion of clustering, and other

7    recruiting and retention efforts to meet the 2009 staffing

8    ratios.

9            "Secondly, what role does and can telepsychiatry play

10    consistent with the Eighth Amendment to aid in solving a

11    psychiatrist staffing shortage."

12            And bearing in mind that the staffing levels that

13    preceded the current ratios were constitutionally inadequate,

14    are there any adjustments to the psychiatrist staffing ratios

15    that the consultants agree could be made to alleviate the

16    staffing shortages without comprising the constitutionally

17    required access to -- without compromising the constitutionally

18    required access to adequate in-patient care?  So that's -- that

19    information will be in the order I issue following this

20    hearing.

21            Let me just ask if there's other information the

22    parties wish to bring to my attention, then I might take a

23    short recess and consider what else you might have to say.

24            Ms. Ells?

25            MS. ELLS:  Just a moment, your Honor.

JENNIFER COULTHARD - OFFICIAL COURT REPORTER - USDC - (312)617-9858

 1            Your Honor, I guess we would just encourage you, you

 2    didn't discuss the possibility of the case management order.

 3    We would just encourage you that this is the right time to

 4    issue that order and the -- you know, the PLRA stay provision

 5    is not triggered until a motion is filed.  There's no motion

 6    filed, there's no motion contemplated, and there's no

 7    prejudice.

 8            And, you know, the Ninth Circuit made clear that the

 9    point of the provision is to ensure that the Court doesn't

10    unduly delay its decision.  It is not to endorse sandbagging.

11    And that is a very legitimate concern in this case that we feel

12    like we are -- that makes sense for the Court and for the

13    plaintiffs, frankly, to ensure it doesn't happen again and --

14            THE COURT:  I asked the questions I needed to --

15            MS. ELLS:  Okay.

16            THE COURT:  -- know whether or not I would issue --

17            Just so that it's clear, I am issuing that order.

18    It's issued as a bench order now, and it will be explained in a

19    brief order to follow.

20            MS. ELLS:  Okay.

21            THE COURT:  So I -- I've satisfied myself on that

22    point.

23            MS. ELLS:  Thank you, your Honor.

24            The only other thing I'd raise is whether or not your

25    Honor wants to set a deadline, essentially, for resolution of

1  the staffing ratio issue in case it does need to be litigated

2  in advance of October 11th.

3           THE COURT:  I mentioned I wanted a further status.

4  I'm going to set another status, as I said, for June 25th.

5           MS. ELLS:  Okay.

6           THE COURT:  And you'll be required to file a joint

7  status report seven days in advance of that status.  And if we

8  need hearings, motion practice, we'll address that in June.

9  But, again, my goal is to keep this on the constructive

10  problem-solving track, to put it colloquially.

11           Mr. McClain?

12           MR. McCLAIN:  Yes, your Honor, a few -- a few things.

13  One is defendants understood the Court's February 5th order as

14  converting the plaintiff's motion and our request for an

15  extension of time into -- into this status conference.  In the

16  status report, the plaintiffs are taking the position that the

17  motion is still pending and that defendants are now late in

18  opposing it.  And so defendants would like some clarification

19  on that point.

20           THE COURT:  I set this status in an effort to moot the

21  need for further motion practice.

22           MR. McCLAIN:  Okay.

23           THE COURT:  So that's -- that is -- I'm trying to keep

24  you all focused where I think -- while recognizing your rights

25  fully but really trying to -- again, and let me not understate

1    the incredible progress that's been made in many aspects of

2    this case and potential for great progress in the staffing

3    area.  So that's -- I want to keep the focus there.

4              MR. McCLAIN:  I appreciate that, your Honor.

5              THE COURT:  The -- you know, you're -- I'm not

6    saying -- you have not waived any rights; I'm not trying to get

7    you to waive any rights.  I'm trying to manage this case to

8    allow that constructive process to be exhausted and work its

9    way all the way through.  And if -- and as cost effectively as

10   possible.  And if -- if the defense doesn't think that's

11   possible or, for any reason, wants to go another route, it has

12   that right.

13             MR. McCLAIN:  Okay.  Yeah.  I just wanted to make sure

14   that the Court wasn't waiting for an opposition from

15   defendants --

16             THE COURT:  I am not.

17             MR. McCLAIN:  -- and that there isn't still a hearing,

18   I think it was noticed for the 23rd.

19             THE COURT:  Based on what I've -- what we've discussed

20   today, I will vacate that.

21             MR. McCLAIN:  Okay.  I just wanted to clarify one

22   other thing, your Honor.  I heard Ms. Ells was talking about

23   the informal request for documents and other discovery that

24   they sent to defendants, but I guess I wasn't clear on whether

25   the Court was contemplating some sort of an order in response

1    to that.  If the Court was, then defendants have a lot to say

2    about that.

3              THE COURT:  I understand that.  What I was toying

4    with, based on hearing that, was whether or not in addition to

5    clarifying the contours of the consultants' summaries, I should

6    address what's required by Rule 26, the provision for initial

7    disclosures.  But that was just a stray thought.  Do you have

8    thoughts about that?

9              MR. McCLAIN:  Initial disclosures for -- for experts?

10   I'm not sure --

11             THE COURT:  Yeah.  Is it only -- I mean, they're

12   consultants, right?

13             MR. McCLAIN:  Right.

14             THE COURT:  They're not experts.

15             MR. McCLAIN:  But Rule 26 does address expert

16   disclosures.

17             THE COURT:  Right.

18             MR. McCLAIN:  So with that --

19             THE COURT:  Right.  No, that's fair.  Let me think

20   about that.  I was just trying to think about whether or not

21   the federal rules, which are amazing creatures, if they

22   provided some structure here without encouraging the litigation

23   track if it might provide some structure for whatever I

24   prescribe for the consultants' summaries.

25             MR. McCLAIN:  Okay.

1          THE COURT:  So give thoughts on that.  I know you're
2     well versed in the rules.
3          MR. McCLAIN:  Your Honor, I guess just my general
4     thought on that is defendants don't mind providing general
5     information about their consultants, and it has always been
6     defendant's plan to -- to bring any ideas that were worthwhile
7     that the consultants had to the workgroups and to -- to the
8     extent we bring those ideas to the workgroups to explain what
9     those ideas were based on, you know, what the consultants
10    looked at, you know, to come to those conclusions.  Those are
11    all things that we contemplated as coming out in the workgroup
12    process.
13         THE COURT:  All right.  Well, I'm going to try to
14    expedite that.  I think what you're hearing is the more
15    disclosure the better.  The more the sense is you're hiding the
16    ball, the more distrust.
17         MR. McCLAIN:  Okay.
18         THE COURT:  Obvious -- obvious observations.
19         If I need more briefing on contours of discovery, I'll
20    let you know, but I don't think I do.
21         MS. ELLS:  Your Honor, could I raise a couple of quick
22    clarifications?
23         THE COURT:  You may.
24         MS. ELLS:  Okay.  The first of which is I think it
25    would be helpful to the workgroup process to have an order or

JENNIFER COULTHARD - OFFICIAL COURT REPORTER - USDC - (312)617-9858

1  an agreement providing that the experts appear at the workgroup

2  to discuss their findings.  I think that would facilitate both

3  sides' buy-in, I guess, and help us understand more about the

4  basis for -- for the recommendations, frankly, and to allow the

5  special master's experts to also explore those issues.

6          If we're really trying to problem solve, I think a

7  report on paper will only go so far.  And I think actually

8  having them appear, which defendants have indicated they have

9  contemplated doing but that they have not committed to do,

10  would be very helpful to that process.

11          THE COURT:  All right.  Anything else?

12          MS. ELLS:  Yeah.  The only other question is, there is

13  an outstanding issue raised in our motion about a case

14  management order regarding joint tours going forward, and that

15  does not appear to have been resolved or particularly addressed

16  today.  And we have not had -- to the extent that the Court

17  wants more briefing on why that's appropriate, we haven't had

18  an opportunity to address the 14-page brief that defendants

19  gave us less than an hour before the filing.  So if the Court

20  is contemplating that kind of ruling or not, we would request

21  an opportunity to address the propriety of that.

22          THE COURT:  You're talking about as a general rule --

23          MS. ELLS:  Yes.

24          THE COURT:  -- or with respect to the five tours?

25          MS. ELLS:  As a standing order going forward.

1              THE COURT:  Maybe that's a topic for June.

2              MS. ELLS:  Okay.

3              THE COURT:  I think that's soon enough.

4              MS. ELLS:  Okay.

5              THE COURT:  So I'll include some -- an opportunity to

6     address that in a June status report as a threshold matter

7     without full motion practice, unless a party feels it really

8     needs that.

9              MR. McCLAIN:  Your Honor --

10             THE COURT:  Mr. McClain, on the consultants appearing?

11             MR. McCLAIN:  Right.  I would just say it's way too

12    premature for that because we don't even yet have, you know,

13    their conclusions and recommendations.  We don't even know if

14    we are going to be proposing them yet at -- at the workgroups.

15    That is something that we -- that we contemplated if -- you

16    know, if we present their recommendations and if they -- if the

17    parties think that it's worthwhile to bring them in to further

18    discuss them, that's something that we're willing to

19    contemplate, but right now we don't even -- we don't even have

20    anything from them yet, so --

21             THE COURT:  All right.  I'll address that request in

22    my order and maybe direct you to meet and confer on that point

23    with the special master facilitating.

24             MR. McCLAIN:  Okay.  One last point, your Honor.  With

25    respect to the termination scheduling type of order that you're

1    contemplating --

2            THE COURT:  Well, that I just issued from the bench.

3            MR. McCLAIN:  Okay.  I -- for the record, defendants

4    would like to have an opportunity to fully brief that before

5    the Court makes a ruling.

6            THE COURT:  All right.  Well, I'll see if I'm willing

7    to reconsider.

8            MR. McCLAIN:  Okay.

9            THE COURT:  What I said is I issued a bench order, and

10   I'll explain it in a written order to follow.  But if I -- if I

11   wish to reconsider and give you a chance for more full

12   briefing, I'll let you know.

13           MR. McCLAIN:  Okay.

14           THE COURT:  All right?  All right.  Anything else?

15   All right.  Well, I think that addresses all of the Court's

16   concerns.  So I will -- I'll issue a fairly compact order

17   providing direction on your work on the staffing issue going

18   forward, and I'll see you on June 25th -- June 28th, I'm sorry.

19           THE CLERK:  June 28th, yes.

20           THE COURT:  June 28th at 2:00 p.m.  And I'll let you

21   know if I'm going to reconsider to allow further briefing on

22   the notice of termination question.

23           All right.  Thank you very much.

24           MS. ELLS:  Thank you, your Honor.

25           MR. McCLAIN:  Thank you, your Honor.

1    (Concluded at 2:53 P.M.)

2

3                    C E R T I F I C A T E

4

5        I certify that the foregoing is a true and correct

6    transcript of the record of proceedings in the above-entitled

7    matter.

8
     */s/ JENNIFER L. COULTHARD*                February 15, 2018
9                                                       DATE

10

11    JENNIFER L. COULTHARD, RMR, CRR
      Official Court Reporter
12

13

14

15

16

17

18

19

20

21

22

23

24

25