DONALD SPECTER – 083925
STEVEN FAMA – 099641
MARGOT MENDELSON – 268583
PRISON LAW OFFICE
1917 Fifth Street
Berkeley, California 94710-1916
Telephone: (510) 280-2621

CLAUDIA CENTER – 158255
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN
CALIFORNIA, INC.
39 Drumm Street
San Francisco, California 94111-4805
Telephone: (415) 621-2493

MICHAEL W. BIEN – 096891
JEFFREY L. BORNSTEIN – 099358
JANE E. KAHN – 112239
ERNEST GALVAN – 196065
THOMAS NOLAN – 169692
LISA ELLS – 243657
KRISTA STONE-MANISTA – 269083
JENNY S. YELIN – 273601
MICHAEL S. NUNEZ – 280535
JESSICA WINTER – 294237
CARA E. TRAPANI – 313411
MARC J. SHINN-KRANTZ – 312968
ROSEN BIEN
GALVAN & GRUNFELD LLP
50 Fremont Street, 19th Floor
San Francisco, California 94105-2235
Telephone: (415) 433-6830

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

RALPH COLEMAN, et al.,

Plaintiffs,

v.

EDMUND G. BROWN, JR., et al.,

Defendants.

Case No. 2:90-CV-00520-KJM-DB

**JOINT STATUS REPORT RE: JUNE 28, 2018 STATUS CONFERENCE RE: STAFFING**

Judge: Hon. Kimberly J. Mueller
Date: June 28, 2018
Time: 10:00 a.m.
Crtrm.: 3, 15th Floor

## INTRODUCTION

This Court's February 15, 2018 Order, ECF No. 5786 ("Order"), addressing a number of interrelated pending staffing issues, ordered the parties to file a joint status report informing the Court of the parties' progress in resolving the following three questions: (1) "Can defendants hire a sufficient number of psychiatrists, through salary adjustments, forensic psychiatric fellowships, exhaustion of clustering, and other recruiting and retention efforts, to meet the staffing levels for psychiatrists required by the 2009

court-ordered staffing ratios, ECF No. 3693, with a maximum ten percent vacancy rate as required by the court's June 13, 2002 order, ECF No. 1383[?]"; (2) "[w]hat role does and can telepsychiatry play, consistent with the Eighth Amendment, to aid in solving the psychiatrist staffing shortage?"; and (3) "[k]eeping in mind that the staffing levels that preceded the current ratios were constitutionally inadequate, are there any adjustments to the psychiatrist staffing ratios that could be made to alleviate the psychiatrist staffing shortages without compromising the constitutionally required access to adequate mental health care?" Order at 3-4.

Over the last several months, Defendants submitted the following documents and data to address the Court's questions and inform the issues and discussions for the all parties workgroups:

- Status Report on CDCR's January 2017 Staffing Plan (1/12/18)
- Submission re: Psychiatrist Salaries (3/8/18)
- Submission re: draft telepsychiatry policy, and staffing data update on filled PIP and civil service positions (3/16/18)
- Submission of Defendants' staffing consultants' report titled, *Assessment of the California Department of Corrections and Rehabilitation's Mental Health Staffing Plan* (4/7/18)
- First revised draft Telepsychiatry Policy (4/19/18)
- Second revised draft Telepsychiatry Policy (5/11/18)
- DSH Staffing Update (May 2018) (5/16/18)
- CDCR's *Proposal to Achieve a More Efficient and Effective MHSDS with Adjustments to Unneeded Psychiatry Positions* (5/17/18)
- Submission re data and information requested by Plaintiffs during workgroups and data on civil service positions in the Psychiatric Inpatient Programs, the CCHCS Exit Survey, CalHR policy on hiring above minimum, Revised 2017 Filled Civil Service Positions, and the CCHCS Staff Exit Interview Questions (5/31/18)
- Submission re: CDCR's position on further clustering (6/5/18)
- Revisions to CDCR's *Proposal to Achieve a More Efficient and Effective MHSDS with Adjustments to Unneeded Psychiatry Positions* (6/15/18) and January 2018 Psychiatry Allocations

Plaintiffs submitted the following letters to address the Court's questions and respond to Defendants' submissions:

- Letter re: Staffing Consultant Summary (Mar. 7, 2018) (requesting information from Defendants' experts in advance of first staffing workgroup meeting on March 12, 2018)
- Commitments letter re: March 12, 2018 staffing workgroup meeting (Mar. 14, 2018)
- Commitments letter re: March 19, 2018 staffing workgroup meeting (Mar. 21, 2018)
- Commitments letter re: April 2, 2018 staffing workgroup meeting (Apr. 4, 2018)
- Letter re: Plaintiffs' Comments Re: Defendants' Draft Telepsychiatry Policy (Apr. 11, 2018)
- Commitments letter re: April 9, 2018 staffing workgroup meeting (Apr. 12, 2018)
- Letter re: Information Underlying Defendants' Staffing Consultants' Initial Report (Apr. 18, 2018)
- Commitments letter re: April 23, 2018 staffing workgroup meeting (Apr. 26, 2018)
- Letter re: Plaintiffs' Remaining Comments and Concerns Re: Draft Telepsychiatry Policy (Apr. 27, 2018)
- Commitments letter re: April 30, 2018 staffing workgroup meeting (May 3, 2018)
- Letter re: Plaintiffs' Comments and Questions Re: Defendants' Staffing Experts' Report (May 9, 2018)
- Commitments letter re: May 14, 2018 staffing workgroup meeting (May 17, 2018)
- Letter re: Plaintiffs' Final Position on Defendants' Draft Telepsychiatry Policy at Conclusion of Workgroup Process on Telepsychiatry (May 21, 2018)
- Letter re: Plaintiffs' Comments and Questions Re: Defendants' May 17, 2018 Staffing Proposal and May 30, 2018 Letter (June 8, 2018)

As evidenced by this long list of documents, data, and letters shared amongst the workgroup, the parties have made significant progress in addressing the Court's questions through the All-Parties Workgroup since the Court issued its Order on February 15. With respect to the Court's first and third questions, *see* Order at 3-4, the parties are in the midst of negotiating various issues and will further collaborate under the guidance of the Special Master over the course of future meetings. The parties detail the status of these

negotiations jointly in Sections I and III, below.[1]

Regarding the Court's second question, *see* Order at 4, the parties made significant progress in reaching agreements about several aspects of Defendants' draft telepsychiatry policy. However, after meaningfully meeting and conferring on numerous occasions, the parties were unable to reach agreement on a few important issues. The parties briefly outline the remaining disagreements regarding the draft telepsychiatry policy in Section II, below. The parties also request that the Court solicit the views of the Special Master and his experts on these issues.

## I. HIRING A SUFFICIENT NUMBER OF PSYCHIATRISTS

With respect to the Court's first question, *see* Order at 3-4, the parties have discussed Defendants' psychiatrist hiring practices at numerous workgroup meetings. Defendants have provided the workgroup with information regarding their hiring above minimum ("HAM") practices, development of a loan forgiveness program with the Receiver's office, psychiatrist exit interview questions, salary surveys, salary comparisons with the market and CDCR physicians, and recent trends in psychiatrist staffing rates. Plaintiffs have submitted comments on these issues in letters dated March 14, March 21, April 12, May 9, and May 17, 2018. The Special Master has also expressed his desire to meet with the California Department of Finance and it is the parties' understanding that he will do so in the coming months.

Additionally, in response to questions raised by Plaintiffs and the Special Master team in the workgroups during meetings in February and March, Defendants circulated a memorandum on May 31, 2018 detailing some of their psychiatrist recruiting and retention efforts, including additional information regarding Defendants' HAM policy, the psychiatrist applicant pool, comparative salary data, recent trends in telepsychiatry

[1] As discussed in more detail in Section III, Defendants presently have a staffing proposal before the workgroup that would modify the 2009 Staffing Model. Defendants' understanding is that if an agreement cannot be reached in the workgroups, Defendants will bring a motion to modify prior staffing orders. (10/10/17 Order, ECF No. 5711 at 19-20.)

staffing, salary and exit survey data, and hiring practices related to medical assistants and psychiatric nurse practitioners. Plaintiffs are actively reviewing this memorandum, and plan to provide further written comments and possible supporting documentation in advance of future workgroup discussions on this issue.

In addition, the parties have begun to discuss whether further clustering the mental health caseload would allow Defendants to hire a sufficient number of psychiatrists, while still providing adequate mental health care to the *Coleman* class. At the Special Master's request, Defendants circulated their position on clustering to the workgroup on June 5, 2018. The workgroup began initial discussions of the State's clustering analysis at the June 11, 2018 workgroup meeting, and will continue to discuss clustering at future workgroups.

Defendants contend that as a result of the nationwide shortage of psychiatrists, they cannot hire a sufficient number of psychiatrists to meet existing court-ordered requirements through salary adjustments, forensic psychiatric fellowships, further clustering, and other recruiting and retention efforts. (ECF No. 5591 at 9-13, and ECF No. 5601 at 3-6.) Defendants do not believe that additional salary increases will allow CDCR to hire and sustain staffing levels required by the 2009 court-ordered staffing ratios at a ninety percent fill rate. Additionally, similar to Defendants position in 2017, CDCR does not believe that further clustering is appropriate and may in fact be detrimental to its effort to recruit and retain psychiatrists and other mental health clinicians. Defendants provided the staffing workgroup with a detailed analysis of its ability to cluster additional inmates and intends to provide additional information as appropriate. But after careful review of the question, Defendants do not believe that further clustering presents a workable solution. Defendants contend that absent modification of prior staffing orders, particularly as reflected in Defendants' staffing proposal, Defendants cannot satisfy the Court's

October 10, 2017 directive.[2]

Plaintiffs contend that Defendants' conclusion that further compensation increases will not improve recruitment or retention is premature and not adequately supported by the data produced to date. Plaintiffs have asked numerous questions regarding the information shared by Defendants thus far and the parties are still actively discussing ways for Defendants to hire a sufficient number of psychiatrists. Plaintiffs plan to address outstanding salary and hiring issues at future workgroup meetings, and to provide additional information in support of their position. Regarding clustering, the parties have only spent one workgroup meeting discussing Defendants' June 5, 2018 clustering memorandum, and that meeting ended with the Special Master requesting additional information regarding Defendants' analysis. Plaintiffs therefore contend that more discussion is needed to determine whether Defendants can address psychiatry staffing shortages by additional clustering in the mental health program.

## II. TELEPSYCHIATRY

As stated above, the parties made significant progress toward answering the Court's question, "[w]hat role does and can telepsychiatry play, consistent with the Eighth Amendment, to aid in solving the psychiatrist staffing shortage?" Order at 4. Following the Court's direction, CDCR developed a telepsychiatry policy as a Program Guide addendum. CDCR provided an initial draft of the policy to the Special Master and Plaintiffs on March 16, 2018. The parties then convened five workgroups to discuss the policy. CDCR revised the draft policy three times in an attempt to address Plaintiffs' concerns in a way that does not impinge on CDCR's ability to utilize telepsychiatry to provide effective psychiatric care.

The current version of CDCR's draft telepsychiatry policy, dated May 10, 2018 and

---

[2] In anticipation of the possible need to move to modify the 2009 Staffing Model should the parties be unable to reach agreement on Defendants' staffing proposal, Defendants have retained a labor economics group to support their efforts to respond to questions raised regarding salary, compensation, and labor market trends. The labor economists are presently non-designated experts, and Defendants assert all applicable rights and privileges.

attached hereto as Exhibit 1, represents significant progress towards an acceptable agreement governing Defendants' use of telepsychiatry. Despite the parties' agreement on most of the provisions in the May 10 draft, however, four important disagreements remain. The parties briefly outline their respective positions on these issues below.

The first disagreement arises from Plaintiffs' contention that the policy fails to fully implement the Court's directive that telepsychiatry is not appropriate at the highest levels of care, including Mental Health Crisis Beds (MHCBs) and Psychiatric Inpatient Programs (PIPs), except as a last resort or in emergency situations when an on-site psychiatrist is not available. *See* Order, ECF. No. 5711 at 20-23, 30 (Oct. 10, 2017). Defendants disagree that the Court directed any specific language be included in CDCR's policy limiting the use of telepsychiatry. Further, Defendants contend that telepsychiatry is a widely recognized and used treatment delivery system that is no less effective or therapeutic than face-to-face treatment. Notwithstanding this, Defendants have agreed to a policy stating a preference for on-site psychiatric care for patients at the MHCB, Acute Psychiatric Program, and Intermediate Care Facility levels of care.

The second disagreement also relates to the parties' differing interpretations of the Court's October 10, 2017 Order. Specifically, Plaintiffs contend that the policy must reflect the Court's requirement that "telepsychiatry should serve as a supplement rather than a substitute, for on-site psychiatry and should only be used when institutions are unable to recruit psychiatrists or have short term vacancies that cannot be filled by contract psychiatrists," *see* Order, ECF. No. 5711 at 23, 30 (Oct. 10, 2017), in language directed to the use of telepsychiatry *at all levels of care*, not just MHCB and inpatient care. Defendants contend that their policy complies with the requirements and permissive language in the Court's Order, and maintain that telepsychiatry is a standard, widely accepted, and effective method of providing psychiatric care for mentally ill patients, both within correctional and non-correctional environments, and there has been no evidence presented in the workgroups that the use of telepsychiatry has adversely affected any inmate-patient.

The third disagreement arises from Plaintiffs' contention that telepsychiatry is not an appropriate treatment modality for cell-front interactions. As part of the parties' ongoing negotiations, Defendants have invited Plaintiffs and the Special Master to view the use of cell-front telepsychiatry at CHCF, and the parties and the Special Master are currently working to schedule that visit.

The fourth disagreement concerns whether Psychiatric Nurse Practitioners (PNPs) should be permitted to provide telepsychiatric services. Defendants are currently drafting a policy governing the appropriate scope of PNPs' provision of treatment in the MHSDS and have agreed to share the policy with the workgroup.

Given these areas of disagreement, the parties request the opportunity to provide briefing to resolve the remaining telepsychiatry disputes and also request that the Court solicit the views of the Special Master and his experts on these issues. Defendants contend that, to avoid concurrent motion practice, any briefing schedule on CDCR's use of telepsychiatry should be stayed until after the parties have either reached a final agreement or impasse on CDCR's staffing proposals. However, Plaintiffs believe that the issues arising from Defendants' draft telepsychiatry policy are independent of the issues raised in Defendants' staffing proposals, and are therefore ready for briefing to and resolution by the Court.

## III. ADJUSTMENTS TO STAFFING RATIOS

On May 17, 2018, Defendants submitted CDCR's *Proposal to Achieve a More Efficient and Effective MHSDS with Adjustments to Unneeded Psychiatry Positions*. A copy of the proposal is attached as Exhibit 2. The proposal removes staffing positions allocated in the court-ordered 2009 staffing plan that were never implemented or that Defendants believe are not required under the Revised Program Guide. Plaintiffs circulated a response to Defendants' proposal on June 8, 2018.

During the June 11, 2018 workgroup meeting, Defendants presented their psychiatrist staffing proposal to the workgroup. The Special Master's experts shared their views and preliminarily approved most of the proposals with some modifications. On June

15, 2018, Defendants provided additional information and revised certain proposals based on the Special Master's experts' input. A copy of the revisions to the proposals are attached as Exhibit 3. On June 18, 2018, the parties began discussing the revisions and Plaintiffs' comments in their June 8 letter. The next workgroup meeting to discuss staffing issues is scheduled for July 9, 2018. The Special Master has not formulated a position on the proposed psychiatrist staffing modifications.

DATED: June 21, 2018

Respectfully submitted,

ROSEN BIEN GALVAN & GRUNFELD LLP

By: */s/ Thomas Nolan*
Thomas Nolan

Attorneys for Plaintiffs

DATED: June 21, 2018

XAVIER BECERRA
Attorney General of California

By: */s/ Andrew Gibson*
Andrew M. Gibson

Attorneys for Defendants