UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RALPH COLEMAN, et al.,

Plaintiffs,

v.

EDMUND G. BROWN, JR., et al.,

Defendants.

No. 2:90-cv-0520 KJM DB P

ORDER

As required by court order, ECF No. 5786, this matter came on for further status conference regarding staffing and telepsychiatry on June 28, 2018. The parties filed a joint status report, ECF No. 5841, as required by the order, and the parties were represented by counsel at the hearing. *See* ECF No. 5842.

On October 10, 2017, the court set a one-year deadline by which "all outstanding issues pertaining to achieving adequate mental health staffing levels must be resolved and the required staffing levels achieved." ECF No. 5711 at 28. An initial status conference, set for April 12, 2018, was advanced to February 15, 2018 to address a dispute that arose following prison tours conducted unilaterally by consultants retained by defendants to address staffing issues. *See* ECF No. 5786 at 1 (citing ECF No. 5771 at 3). By order after hearing, the court directed the Special Master to "take all steps necessary to create a complete factual record for

/////

consideration and resolution of" three issues outlined in the order, and directed the parties, under the Special Master's guidance, to address the questions, as follows:

> 1. Can defendants hire a sufficient number of psychiatrists, through salary adjustments, forensic psychiatric fellowships, exhaustion of clustering, and other recruiting and retention efforts, to meet the staffing levels for psychiatrists required by the 2009 court-ordered staffing ratios, ECF No. 3693, with a maximum ten percent vacancy rate as required by the court's June 13, 2002 order, ECF No. 1383?
>
> 2. What role does and can telepsychiatry play, consistent with the Eighth Amendment, to aid in solving the psychiatrist staffing shortage?
>
> 3. Keeping in mind that the staffing levels that preceded the current ratios were constitutionally inadequate, are there any adjustments to the psychiatrist staffing ratios that could be made to alleviate the psychiatrist staffing shortages without compromising the constitutionally required access to adequate mental health care?

ECF No. 5786 at 3-4. The purpose of the June 2018 status conference was to inform the court of the progress in resolving these questions, with an eye to ensuring timely compliance with the October 10, 2017 order.

Though significant work remains, the court is encouraged by the progress reported by the parties and by the Special Master. The court remains hopeful that with continued diligent focus on collaboration and the critically important end goal of permanent achievement of constitutionally adequate mental health staffing levels, the parties and the Special Master will be able to report compliance with the October 10, 2017 order by the one-year deadline. To that end, this order provides further guidance on the three questions outlined above, considering both the progress and the disputes on those issues reported in the parties' joint status report, as well as additional information provided to the court by the Special Master.

I. <u>Staffing Ratios</u>

Regarding the third question set forth above, on May 17, 2018, defendants submitted to the Special Master and the plaintiffs a proposal to eliminate positions allocated in the 2009 Staffing Plan that either have never been implemented or, in defendants' view, are not required under the Revised Program Guide. ECF No. 5786 at 8 & Ex. 2 (hereafter "Staffing Proposal"). Plaintiffs have responded to the Staffing Proposal, it has been presented to the All-Parties'

Workgroup, and the Special Master's experts have provided their preliminary responses, signaling approval of some aspects and suggesting some modifications. *Id*. at 8. The Special Master has not formulated a final position on the Staffing Proposal, and it will be the subject of discussion at the next All-Parties' Workgroup meeting, scheduled for July 9, 2018.

Defendants are applauded for the wisdom reflected in conducting a concrete evaluation of the functions described in the 2009 Staffing Plan, considering current circumstances. While the court takes no position on the merits of any aspect of the Staffing Proposal at this time, much of the proposal appears to hold significant promise. The court will allow the process being managed by the Special Master to run its course until October 2018.

II. <u>Hiring/Clustering</u>

The parties' positions with respect to the first question in the February 15, 2016 order are clearly outlined in the joint status report and appear essentially unchanged from their prior positions. *See* ECF No. 5711 at 9-10. Defendants do not believe additional increases in mental health salaries or further clustering of mentally ill inmates will help them meet the operative staffing ratios at the required ten percent vacancy rate, and that further clustering "may in fact be detrimental" to their recruitment and retention efforts. ECF No. 5841 at 5-6. Plaintiffs believe defendants' conclusion on salaries is premature and that further discussion about clustering is necessary. *Id*. at 6.

Defendants report they have "retained a labor economics group to support their efforts to respond to questions raised regarding salary, compensation, and labor market trends." *Id.* at 6 n.2. They state they have retained this expertise "[i]n anticipation of the possible need to move to modify the 2009 Staffing Model" if the parties are unable to agree on the Staffing Proposal. *Id*.

After the court's June hearing, the Special Master confirmed to the court that, as he has previously signaled to the parties, he intends to move forward with hiring an independent labor economist and that he will be doing so within the next three weeks. At this juncture, therefore, the court directs the parties to refrain from any further motion practice. The court previously has directed the Special Master to "create a complete factual record for consideration and resolution" of this issue, as well as the other issues identified in the February 15, 2018 order. ECF No. 5786

3

at 3. Accordingly, the parties will be directed to report to the court on the status of defendants' Staffing Proposal and any outstanding staffing disputes in a joint status report to be filed by September 7, 2018. At the October 2018 hearing, the court will consider only material disputes about any remaining obstacles to timely compliance with the October 10, 2017 order. As used in this order, a material dispute is one whose resolution is required to achieve timely compliance with the October 10, 2017 order. The parties shall prepare their status report in consultation with the Special Master so that he can certify the following with respect to each identified dispute: (1) whether it is material; (2) that good faith efforts to resolve the dispute have been exhausted; and (3) the dispute is not susceptible of resolution except by the court. By September 14, 2018, the Special Master shall provide to the parties and file with the court all parts of the developed factual record relevant to resolution of any dispute he certifies satisfies all three criteria.

  III.  Telepsychiatry

The area of work on the above list closest to completion is defendants' telepsychiatry policy. The parties report four areas of disagreement: whether the policy complies with key provisions of the court's October 10, 2017 order concerning limitations on its use in inpatient settings; whether, and to what extent, telepsychiatry may be used as a substitute for on-site psychiatry at all levels of the Mental Health Services Delivery System (MHSDS); whether telepsychiatry may be used at cell-fronts; and whether psychiatric nurse practitioners should be authorized to provide telepsychiatry services. ECF No. 5841 at 7-8.

The first two disputes arise from a disagreement over interpretation of the relevant requirements of the court's October 10, 2017 order. Defendants' reading of the court's order, or any purported misunderstanding regarding the order's meaning, borders on the frivolous, given that the position defendants take now is substantially similar to the position they took in objections that have been effectively overruled by the court. *See* ECF No. 5591 at 5-9; ECF No. 5711 at 22-23. Nonetheless, the court now confirms the following:

/////

/////

/////

The recommendations of the Special Master concerning the use of telepsychiatry, as clarified by the October 11, 2017 order, shall – or should, in the obligatory sense -- form the basis of the telepsychiatry addendum to the Revised Program Guide. ECF No. 5711 at 23, 30.[1]

### A.  CCCMS

Specifically, consistent with the Special Master's recommendations, telepsychiatry should not replace on-site psychiatry at any level of care above CCCMS.  The Special Master has clarified for the court that his experts agree telepsychiatry may replace on-site psychiatry at the CCCMS level of care as long as the conditions described in the October 10, 2017 order are met, namely: (1) telepsychiatrists visit the institution at least twice a year; and (2) defendants continue a good faith effort to recruit on-site psychiatrists for all institutions providing a CCCMS level of care. ECF No. 5711 at 21.  At hearing, the parties represented there is no dispute over the use of telepsychiatry at the CCCMS level of care.

Until the court approves a final telepsychiatry policy, defendants shall proceed forthwith will full implementation of telepsychiatry at the CCCMS level of care, conditioned on biannual visits from telepsychiatrists to CCCMS programs and continued good faith efforts by defendants to recruit on-site psychiatrists for these programs.

### B.  EOP

Telepsychiatry may supplement on-site psychiatry at the Enhanced Outpatient (EOP) level of care but it should not replace on-site psychiatry.  Although EOP is labeled an "outpatient" program, outpatient is contextual and relative to inpatient programs within the MHSDS; moreover, the Revised Program Guide makes clear EOP is a residential program, synonymous

---

[1] To the extent defendants' asserted confusion arises from use of the word "should" at 21:4, 21:12, 23:10, 23:11 and 30:8 of the October 10, 2017 order, the court observes that this is the term used by the Special Master in the recommendations that were adopted by the court.  *See*, *e.g.*, ECF No. 5711 at 21 (quoting ECF No. 5564 at 15-17).  It is true that "shall" is mandatory, while "should" can be either obligatory or permissive.  *Compare* https://en.oxforddictionaries.com/definition/shall (definition of shall) *with* https://en.oxforddictionaries.com/definition/should (definition of should).  However, the overarching directive of the October 10, 2017 order is that those recommendations are to form the basis of the telepsychiatry policy; in addition, the policy was to be finalized under the guidance of the Special Master and his experts.  Thus, the guidance of the Special Master and his experts about whether "should" carries its obligatory meaning in these contexts controls development of the policy.

with an inpatient setting.  All inmates at this level of care are housed in separate specifically designated EOP housing units, which provide housing, treatment and programming for seriously mentally ill inmates "whose mental illness precludes their placement and participation in the" general population.  Revised Program Guide at 12-4-1.  Any telepsychiatrist assigned to an EOP unit must visit that unit at least four times a year.  *See* ECF No. 5711 at 21.

### C. MHCB

Telepsychiatry may not be used at the MHCB level of care except "'as a last resort or in emergency situations when an on-site psychiatrist is not available.'"  *Id*. at 21 (internal citation omitted).

### D. Finalization of Policy

In issuing the October 10, 2017 order, the court specifically rejected as insufficient evidence tendered by defendants in an effort to demonstrate that telepsychiatry can and should be widely used at all levels of the MHSDS.  *Id*. at 21-22.  Defendants would be well advised to cease their continued reliance here on evidence the court has rejected.  Having considered defendants' argument at the June 2018 hearing, that the telepsychiatry policy should not be finalized until overlapping staffing allocation and ratio issues are resolved, the court is not persuaded.  Rather, the court confirms its tentative position, shared at the hearing, that finalizing the telepsychiatry policy now will clarify the staffing landscape so that other outstanding issues can be resolved in a manner most likely to gain the court's approval.  Accordingly, the court will direct the Special Master to finalize a proposed telepsychiatry policy that is in his view consistent with the provisions of the October 10, 2017 order and the recommendations of his experts.  Specifically, the Special Master shall propose in the final draft policy resolutions to the third and fourth disputes raised by the parties, concerning cell-front telepsychiatry and whether psychiatric nurse practitioners should be permitted to provide telepsychiatry services.  The Special Master shall circulate that proposal to the parties and obtain their responses.  In preparing their responses, the parties shall bear in mind that the Special Master's opinions are informed and guided by a team of nationally recognized experts in correctional mental health, many of whom have served in an expert capacity for most of the twenty-three years this case has been in the remedial phase.  *See*,

*e.g.*, ECF No. 669 at 2-3 & attached curriculum vitae (Jeffrey L. Metzner, M.D.); ECF No. 920 at 1-2 & attached curriculum vitae (Kerry C. Hughes, M.D.); ECF No. 2161-1 at 3 & ECF No. 2162-1 (Mary Perrien, Ph.D.); ECF No. 2211-1 at 3-4 & attached curriculum vitae (Henry A. Dlugacz, Esq.). The Special Master shall file the proposed policy together with any party's responses within thirty days from the date of this order.

Finally, the court notes the Revised Program Guide contemplates annual modifications, as appropriate. The October 10, 2017 order contemplates the possibility that ongoing monitoring may lead to modification of the telepsychiatry policy, *see* ECF No. 5711 at 30, and nothing in this order precludes such modifications as may be required, including as a result of the completion of the work required by the October 10, 2017 order.

IV.    Additional Matters

At hearing, the court authorized the parties to file, by August 3, 2018, a joint status report addressing any additional process, including discovery or motion practice, the parties believe might be required to ensure timely compliance with the October 10, 2017 order. It cannot be said too many times: the court looks with great disfavor on further litigation now to resolve any staffing issues, particularly given the progress the parties are making when focused on constructive problem solving. Nonetheless, should it be apparent to the parties, with the Special Master's oversight, that discovery will be necessary to a full and fair presentation of a material staffing dispute as described above, the parties may, by August 3, 2018, file a joint status report describing the nature of the dispute and the narrow scope of discovery any party believes is required. No discovery or motion practice is authorized unless or until the court approves it.

The October 10, 2017 order requires the parties to file a joint status report not later than thirty days prior to the status conference. ECF No. 5711 at 31. That order will be modified to require discussion of the following specific matters in a joint status report to now be filed by September 7, 2018.

1. The status of defendants' Staffing Proposal, and if full agreement has not been reached, remaining disputes shall be described and presented to the court consistent with the provisions of this order;

7

2. The status of implementation of the final telepsychiatry policy, which will have been approved by the court in August 2018;
3. Whether defendants will timely achieve compliance with the October 10, 2017 order and, if not, why not;
4. If defendants will not timely achieve compliance, the parties' respective positions on enforcement; and
5. If defendants will timely achieve compliance, the parties' respective positions on durability of the staffing remedy, with due consideration given to the fact that the adequacy of telepsychiatry must be monitored for at least one year, as well as to future projections for the size of the mental health population and what steps, if any, may be required to maintain staffing levels commensurate with that population.

V. Conclusion

For the reasons explained in this order, the court is encouraged by the progress to date on the critically important task of achieving and maintaining constitutionally adequate mental health staffing levels in California's prisons. The court expects and anticipates that the parties will continue to work with an eye to avoiding litigation, and that the September 7, 2018 status report will demonstrate that compliance with the October 10, 2017 order will be achieved.

In accordance with the above, IT IS HEREBY ORDERED that:

1. Within thirty days from the date of this order, the Special Master shall complete a final proposed telepsychiatry policy, circulate that proposed policy to the parties, obtain their responses, and file the proposed policy together with any responses from the parties.
2. Defendants shall proceed forthwith will full implementation of telepsychiatry at the CCCMS level of care, conditioned on biannual visits from telepsychiatrists to CCCMS programs and continued good faith efforts by defendants to recruit on-site psychiatrists for these programs.
3. Should the parties and the Special Master believe that discovery will be necessary to a full and fair presentation of a material dispute central to resolution of

outstanding staffing issues, the parties shall file, not later than August 3, 2018, a joint status report addressing any additional process, including discovery or motion practice, that any party believes may be required to resolve such issue(s) to ensure timely compliance with the October 10, 2017 order. Any such joint status report shall specifically describe the dispute and the scope of the discovery a party believes is required.

4. The October 10, 2017 order requiring a joint status report not later than thirty days prior to the October 11, 2017 hearing is modified to require discussion of the following specific matters in a joint status report to be filed by September 7, 2018:

   a. The status of defendants' Staffing Proposal; if full agreement has not been reached, remaining disputes shall be described and presented to the court consistent with the provisions of this order;

   b. The status of implementation of the final telepsychiatry policy;

   c. Whether defendants will timely achieve compliance with the October 10, 2017 order and, if not, why not;

   d. If defendants will not timely achieve compliance, the parties' respective positions on enforcement; and

   e. If defendants will timely achieve compliance, the parties' respective positions on durability of the staffing remedy, with due consideration given to the fact that the adequacy of telepsychiatry must be monitored for at least one year, and consideration of future projections of the size of the mental health population as well as what steps, if any, may be required to maintain staffing levels commensurate with that population.

The status report shall be prepared in consultation with the Special Master, who as discussed above shall certify whether any remaining dispute is material, that good faith efforts to resolve the dispute have been exhausted, and that the dispute is not susceptible of resolution except by the court. The Special Master shall provide to

/////

9

the parties and the court all parts of the developed factual record relevant to resolution of any outstanding dispute so certified.

DATED: July 3, 2018.

_____
UNITED STATES DISTRICT JUDGE