UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al., | No. 2:90-cv-0520 KJM DB P |
| Plaintiffs, | |
| v. | ORDER |
| EDMUND G. BROWN, JR., et al., | |
| Defendants. | |

On February 13, 2018, the Special Master filed his Twenty-Seventh Round Monitoring Report. ECF No. 5779. The report contains numerous findings, but no recommendations for specific court orders. The absence of recommendations for court orders is deliberate, reflecting the Special Master's assessment that the All-Parties Workgroup has proved very effective in addressing a wide range of issues, including some that have plagued remediation for an extended period of time, and that focus should be fully on the tasks that remain before the All-Parties Workgroup, "without any additional layer of responsibility for defendants that would divert their circumscribed resources from the work already underway." *Id*. at 148.[1] Neither party has filed objections to the report or its findings. After review, the Special Master's findings will

/////

_____

[1] In this order citations to pages in documents filed in this action are to page numbers assigned by the court's Electronic Case Filing (ECF) system.

1  be adopted in full.  The court writes separately to emphasize select findings and note a few

2  updates since February 13, 2018.

3                              CQIT and Monitoring Standard

4          The twenty-seventh round of monitoring by the Special Master, which covered

5  twenty-four prisons, began on May 3, 2016 and concluded on January 26, 2017.  *Id*. at 16.  The

6  Monitoring Report describes several encouraging developments.  These include the submission

7  by defendants of their own draft monitoring reports for the first ten institutions monitored using

8  the continuous quality improvement tool (CQIT), and constructive dialogue about refinements in

9  the reporting process in a specific workgroup created by the Special Master for this purpose.  *Id*.

10  at 59-62.  This good progress is tempered by the defendants' decision to unilaterally adjust the

11  compliance monitoring standard to 85 percent from the 90 percent standard that has been used

12  consistently throughout the remedial phase of this litigation.  The court expressly approved the 90

13  percent standard over defendants' objection recently, in a 2013 order, as follows:

> [D]efendants assert that 'the special master's use of the term "compliance" to require a minimal score of 90% against Program Guide requirements is one of the primary reasons the reports are not useful in determining whether the mental health system is constitutionally adequate.'  This objection is . . . without merit. Because the Revised Program Guide is the operative remedial plan in this action, the degree to which defendants have implemented the requirements of the Revised Program Guide is extremely relevant and useful to assessment of whether they are meeting their constitutional obligations.

20  ECF No. 4361 at 9.  In fact, as the Twenty-Seventh Round Monitoring Report shows, the Special

21  Master provides information to the court on the full range of defendants' compliance with their

22  obligations, including and up to 100 percent compliance.  *See*, *e.g.*, ECF No. 5779 at 109-10, 112,

23  113.  Defendants' unilateral adjustment of the monitoring standard, if accepted, would deprive the

24  court of information that is "extremely relevant and useful" to the court's assessment of their

25  constitutional compliance.  In preparing their CQIT reports, defendants shall follow the standard

26  practice, set by the Special Master and approved by the court, and shall report all degrees of

27  compliance with monitored Program Guide requirements, from zero percent to 100 percent.

28  /////

                                          2

The court has discussed with the Special Master the necessity to begin recommending specific benchmarks that, when met, signal constitutional compliance. This process shall begin with the Twenty-Eighth Round Monitoring Report and shall include, as appropriate, specific recommended compliance percentage requirements for each benchmark.

<u>"Lift and Shift" Emblematic of Significant Productivity</u>

Other notable successes during the monitoring period include the successful completion of the transfer of most inpatient mental health care from the Department of State Hospitals (DSH) to the California Department of Corrections and Rehabilitation (CDCR), a project identified as "Lift and Shift." *Id*. at 127. Moreover, as noted below, defendants have for the past nine months achieved full compliance with timeline requirements for transfers to inpatient mental health care programs. The court credits the Special Master's observation that the time span covered by the Report "is quite likely the most productive 18 months we have experienced in the course of the *Coleman* case," *id.* at 129, and looks forward to the same level of productivity continuing apace.

<u>Staffing Challenges Remain</u>

At the same time, the Monitoring Report observes that for the time period covered, "the overall statewide mental health staffing vacancy rate remained stagnant," with any gains in certain positions insufficient to offset losses in others. ECF No. 5779 at 36. As the Special Master notes, on October 10, 2017, the court issued an order governing compliance with necessary mental health staffing levels and setting two status conferences, one for April 12, 2018 and one for October 11, 2018. *Id.* at 44-45. In January 2018, plaintiffs filed a motion for case management orders and sanctions based on unilateral prison tours defendants conducted with their retained consultants in December 2017 and January 2018. ECF No. 5764. In an effort "to keep the parties focused on the orderly, efficient, expeditious and just path to resolution of this action" and to avoid unnecessary delay and detours in the otherwise significant remedial progress that has been made, the court advanced the April 12, 2018 status conference to February 14, 2018. ECF No. 5774; ECF No. 5786 at 2. At the status conference, the court denied plaintiffs'

/////

3

request for orders and sanctions, and issued a bench order requiring defendants to provide six months' notice prior to filing any motion to terminate relief in this action. *See* ECF No. 5793 (transcript); ECF No. 5794 (confirming order). The court also directed the Special Master to "take all steps necessary to create a complete factual record for consideration and resolution" of three specific staffing issues. ECF No. 5786 at 3-4. This direction is consistent with the Special Master's indication in the current Monitoring Report that he will "include staffing as a regular item on the All-Parties Workgroup meeting agenda," in an effort to advance the goal of eliminating long-standing staffing vacancies and assist defendants in achieving compliance with this court's orders. ECF No. 5779 at 51.

The court held a further status conference on June 28, 2018 to assess the progress toward resolution of those issues. *Id.* at 4. In a joint status report filed June 21, 2018, ECF No. 5841, and at the status conference, the court heard from the parties on disputes remaining as a barrier to finalization of a telepsychiatry policy, their current positions with respect to salaries and clustering, and a recent proposal by defendants to eliminate positions allocated in the operative 2009 Staffing Plan. Following the status conference, the court issued an order to provide further guidance in the expectation that defendants will achieve full compliance with the court's October 10, 2017 order. ECF No. 5850.

<u>Collaboration Between Custody and Mental Health Staff</u>

On August 9, 2016, the court directed identification and implementation within six months of a comprehensive strategy to achieve successful collaboration between custody and mental health staff at all prisons that house seriously mentally ill inmates. ECF No. 5477 at 6, 9. That six-month period ended February 9, 2017, approximately two weeks after the twenty-seventh round of monitoring concluded. The Special Master reports that during the monitoring period defendants, working through the All-Parties Workgroup supervised by the Special Master, completed development of the Custody and Mental Health Partnership Plan (CMHPP), including training materials. ECF No. 5779 at 131. However, although the court's August 9, 2016 order should have been complied with shortly after the end of the twenty-seventh monitoring round, the

/////

4

1  Special Master reports a reduction in the number of institutions scheduled for initial

2  implementation of the CMHPP, and that no large complex institution has been included in this

3  trial implementation. *Id*. at 92.

4  For this reason, the court recently asked the Special Master for an update on the

5  status of implementation of the CMHPP. He informs the court that the CMHPP will be

6  implemented at twenty-three institutions. The first step in implementation, called "training for

7  trainers" or "T4T," has been conducted at eleven locations in ten of the twenty-three institutions.[2]

8  Training was completed satisfactorily at ten of these locations; training conducted at California

9  State Prison-Sacramento in September 2017 was incomplete and will be redone in December of

10  this year. Training is scheduled for completion at five other institutions by the end of this year.

11  He also informs the court that he is continuing to monitor the status of implementation of the

12  CMHPP and anticipates providing a further report to the court on the status of its implementation

13  in his Twenty-Eighth Round Monitoring Report.

14  Completion of cultural collaboration training was identified as one of the critical

15  goals to the end of federal court oversight almost seven years ago. *See* ECF No. 5477 at 3

16  (quoting ECF No. 4124 at 85). The six-month time frame set in the court's August 9, 2016 order

17  for completion of this task has long passed. The court intends to set new firm timelines for

18  completion of this goal. It bears repeating: cultural collaboration training must be satisfactorily

19  completed before federal court oversight can end, and this court is endeavoring to shepherd this

20  case to an end sooner rather than later. To that end, within sixty days from the date of this order,

21  defendants shall file a report with the court updating the status of implementation of the CMHPP

22  at every institution that houses seriously mentally ill inmates. If implementation has not begun at

23  all institutions that house seriously mentally ill inmates by the time the report is due, defendants

24  shall provide an explanation for the failure as to any such institution. The report shall also

25

26  [2] Two of the trainings were conducted at the California Institution for Women (CIW), one at CIW and one in the psychiatric inpatient program (PIP) at CIW (CIW-PIP). The Special Master

27  informs the court that implementation of the CMHPP has expanded since the August 9, 2016 order to include at least the CIW-PIP, which is now managed by CDCR following

28  implementation of "Lift and Shift".

5

include a specific timeline for full implementation of the CMHPP at all institutions, including both start and completion dates for implementation. Defendants shall prepare the report in consultation with the Special Master to ensure that the timeline is both achievable and consistent with the court's expectations.

Mentally Ill Inmate Population

For the second monitoring report in a row, the Special Master has cautioned that the population of seriously mentally ill prison inmates "has yet to experience a population decrease in relation and/or in comparison to the decrease of the total [prison] population." ECF No. 5779 at 41; *see also* ECF No. 5439 at 13-14. The Special Master reports that "[d]espite their ongoing efforts surrounding construction and program activations, defendants have been unable to keep pace with the bed needs of the *Coleman* class" and that the size of the mental health population also drives staffing needs. ECF No. 5779 at 41. The question of whether the number of seriously mentally ill inmates may exceed defendants' capacity[3] to meet their constitutional obligations to the plaintiff class has been lurking for at least two years. *See* ECF No. 5779 at 41. As required by court order, defendants currently project their mental health bed needs twice a year. It is the court's view, as intimated by the Special Master, that it may be prudent to study whether the mentally ill inmate population will continue to rise; if so, the reason(s) for that; and, if so, whether and how, defendants will continue to meet program and staffing needs for the projected population if it continues to rise. The Special Master has informed the court that by March 2019, he and the parties will have sufficient information about the effects of Proposition 57 and the ongoing assessments of Enhanced Outpatient Program (EOP) and Correctional Clinical Case Management System (CCCMS) populations to know whether these factors will

---

[3] *See Coleman v. Schwarzenegger*, 922 F.Supp.2d 882, 921 (E.D. Cal. and N.D. Cal. 2009) ("A prison system's capacity is not defined by square footage alone; it is also determined by the system's resources and its ability to provide inmates with essential services such as food, air, and temperature and noise control . . . . As the Corrections Independent Review Panel explained, design capacity 'designate[s] the number of inmates a prison is designed to accommodate according to standards developed by the Commission on Accreditation and the American Correctional Association.' Ex. P4 at 123. These standards 'take into account the need for humane conditions, as well as the need to prevent violence and move inmates to and from programs, such as mental health care, education classes, and drug abuse treatment.' *Id.*"

have a meaningful impact on growth trends in the size of the seriously mentally ill inmate population. The court will direct the Special Master to recommend in his Twenty-Eighth Round Monitoring Report whether the study described in this order should be required and if so how it should be conducted.

Transfer Timelines

The Special Master reports on institutional compliance with timelines for transfer to inpatient care during the monitoring period. ECF No. 5779 at 92-94. Monthly status reports filed by defendants since October 16, 2017 show that since September 13, 2017 no inmate-patient who is not subject to a court approved exception has waited beyond Revised Program Guide timelines for transfer to inpatient care at either the acute or intermediate level of hospital care. This significant achievement has been consistent for the past nine months. *See* ECF No. 5837 at 3. The court commends the Special Master and the parties for the cooperative effort that has led to this major accomplishment and defendants in particular for the day-to-day work required to ensure its continuity. The court notes one caveat however. The Special Master reports continued inconsistent compliance with the requirements of interdisciplinary treatment team (IDTT) policy governing criteria for use of Form 7388-B in considering referrals to higher levels of mental health care. *See* ECF No. 5779 at 77. Compliance with the referral process is an essential component of ensuring that all inmates in need of inpatient mental health care are timely identified and referred for such care. The Special Master shall provide an updated report on the status of compliance with IDTT policy related to Form 7388-B in his Twenty-Eighth Round Monitoring Report.

In addition, as the Special Master notes, the parties were directed by court order to develop addenda identifying exceptions to the Program Guide timelines for transfer to acute and intermediate care facility (ICF) inpatient hospital beds and mental health crisis beds (MHCBs). *Id.* at 21-22. By order filed December 15, 2017, the court approved the addendum to the Program Guide identifying exceptions to the Program Guide timelines for transfer to acute and ICF hospital beds. ECF No. 5750 at 2, 5. Due to the pendency of defendants' appeals from two

/////

7

orders, the deadline for submission of the Program Guide addendum for exceptions to the twenty-four hour timeline for transfers to MHCBs has been vacated, to be reset as needed.  *Id*. at 4-5.

### Toward the End of Federal Oversight

In the current Monitoring Report, the Special Master notes that monitoring will continue to assess the status of the long-running remedial phase of the case.  The court does not question that monitoring must continue for some time yet as contemplated by the Special Master. Almost two years ago, defendants informed the court that the parties were working with the Special Master to reach agreement on reductions in monitoring.  ECF No. 5528 at 3.  At that time, the court signaled that it expected "to hear from the Special Master in due course on any agreement reached with the parties to reduce particular areas of his monitoring" and that any plan for partial termination "must be developed in the first instance as a proposal by the parties in consultation with the Special Master."  *Id*. at 5.  As a means of projecting when the sun might reasonably set on this case, the court will require the Special Master to include in his Twenty-Eighth Round Monitoring Report recommendations for development of a process for determining when constitutional compliance has been durably achieved in the areas subject to monitoring, as well as whether partial termination may be appropriate if certain benchmarks are achieved before total compliance is reached.

### Consolidated Updated Program Guide

Finally, on June 29, 2018, as required by court order the Special Master filed the consolidated updated Program Guide.  *See* ECF No. 5816. The ten-day period for filing objections to the consolidated update Program Guide, *cf*. ECF No. 640 at 8, expired on July 9, 2018, without the filing of any objections.  The court will consider the updated Guide in due course.

With the foregoing observations, updates and direction, IT IS HEREBY ORDERED that the Special Master's Twenty-Seventh Round Monitoring Report, ECF No. 5779, is adopted in full.

DATED:  July 12, 2018.

UNITED STATES DISTRICT JUDGE