XAVIER BECERRA, State Bar No. 118517
Attorney General of California
JAY C. RUSSELL, State Bar No. 122626
Supervising Deputy Attorneys General
ELISE OWENS THORN, State Bar No. 145931
ANDREW M. GIBSON, State Bar No. 244330
TYLER V. HEATH, State Bar No. 271478
IAN MICHAEL ELLIS, State Bar No. 280254
TOBIAS G. SNYDER, State Bar No. 289095
Deputy Attorneys General
  455 Golden Gate Avenue, Suite 11000
  San Francisco, CA  94102-7004
  Telephone:  (415) 510-4426
  Fax:  (415) 703-5843
  E-mail:  Tobias.Snyder@doj.ca.gov
*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **RALPH COLEMAN, et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**EDMUND G. BROWN JR., et al.,**<br><br>Defendants. | 2:90-cv-00520 KJM-DB (PC)<br><br>**DEFENDANTS' NOTICE OF FILING CORRECTED PLEADING AND NOTICE OF ERRATA FOR DEFENDANTS' RESPONSE TO THE SPECIAL MASTER'S REPORT ON THE CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION MENTAL HEALTH SERVICES DELIVERY SYSTEM PROGRAM GUIDE UPDATE (ECF NO. 5861)** |

PLEASE TAKE NOTICE that Defendants are filing concurrently with this notice the correct version of Defendants' Response to the Special Master's Report on the California Department of Corrections and Rehabilitation Mental Health Services Delivery System Program Guide Update, replacing the document filed at ECF 5861 on July 20, 2018.

1

Defendants inadvertently filed an earlier draft of their Response to the Special Master's Report, rather than the intended final draft. Defendants are now filing the correct version of the Response.

Dated: July 23, 2018

Respectfully submitted,

XAVIER BECERRA
Attorney General of California
JAY C. RUSSELL Supervising Deputy Attorney General

*/s/ Tobias G. Snyder*
TOBIAS G. SNYDER
Deputy Attorney General
*Attorneys for Defendants*

CF1997CS0003
21185409.doc

2

Defs.' Not. of Filing Corr. Pldg. & Not. of Errata
(2:90-cv-00520 KJM-DB (PC))

XAVIER BECERRA, State Bar No. 118517
Attorney General of California
JAY C. RUSSELL, State Bar No. 122626
Supervising Deputy Attorneys General
ELISE OWENS THORN, State Bar No. 145931
ANDREW M. GIBSON, State Bar No. 244330
TYLER V. HEATH, State Bar No. 271478
IAN MICHAEL ELLIS, State Bar No. 280254
TOBIAS G. SNYDER, State Bar No. 289095
Deputy Attorneys General
 455 Golden Gate Avenue, Suite 11000
 San Francisco, CA  94102-7004
 Telephone:  (415) 510-4426
 Fax:  (415) 703-5843
 E-mail:  Tobias.Snyder@doj.ca.gov
*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **RALPH COLEMAN, et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**EDMUND G. BROWN JR., et al.,**<br><br>Defendants. | 2:90-cv-00520 KJM-DB (PC)<br><br>**DEFENDANTS' RESPONSE TO THE SPECIAL MASTER'S REPORT ON THE CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION MENTAL HEALTH SERVICES DELIVERY SYSTEM PROGRAM GUIDE UPDATE** |

**INTRODUCTION**

Defendants object to the Special Master's Report on the California Department of Corrections and Rehabilitation Mental Health Services Delivery System (MHSDS) Program Guide Update, filed June 29, 2018 (June 29 Report) under Federal Rule of Civil Procedure 53(f).[1]

---

[1] In its July 12, 2018 Order, the Court stated that "the ten-day period for filing objections to the [June 29 report regarding the] consolidated update Program Guide, *cf*. ECF No. 640 at 8, expired on July 9, 2018, without the filing of any objections." (ECF No. 5852 at 8:20-22.) Defendants' response is timely because the June 29 Report is not a compliance report, and the 21-day period to object under Rule 53(f)(2) controls, rather than the 10-day period in the Order of Reference. The Order of Reference states that "any *compliance report of the special master filed*

1

(ECF No. 5844.) Specifically, Defendants object to the Special Master's recommendation that "[a]ny proposed Program Guide-related regulations be provided to plaintiffs and the Special Master 90 days in advance of the public comment period, and/or any Program Guide-related policies currently incorporated into regulations that substantively change in the future." (ECF No. 5844 at 10.) Defendants do not oppose voluntarily providing the Special Master or Plaintiffs proposed regulations that may directly impact the delivery of mental health care to *Coleman* class members. But the Special Master's recommendation, if adopted, interferes with California's statutory rulemaking process, provides an excessive pre-notice period, and risks undue interference by Plaintiffs and the Special Master with state policymaking in contravention of the Administrative Procedures Act, Prison Litigation Reform Act, and the Court's Order of Reference.

Prior notice of proposed regulations outside the public comment period is unnecessary, and mandating such notice would improperly intrude into California's statutory process for amending state regulations. The public comment period provides adequate time to evaluate Program Guide related regulations, and California law already provides a mechanism for additional notice in the event of complex or substantial proposed regulatory changes.

In addition, the definition of "Program Guide-related regulations" used in the June 29 Report is unbounded and could be interpreted to extend far beyond regulations directly addressing the delivery of mental health care to patients that are part of the MHSDS, thus leading to further disputes between the parties. The Special Master and Plaintiffs are not entitled to "veto" power

---

*in accordance with paragraph A (5) above* shall be adopted as the findings of fact and conclusions of law of the court unless, within ten days after being served with the filing of the report, either side moves to reject or modify the report." (ECF No. 640 at 8:6-10 (emphasis added).) This section referred specifically to the Special Master's duty to file "periodic reports assessing defendants' compliance with such remedial plan," as distinct from, *inter alia*, the duty to "make interim reports to the court on the progress of the remedial plan." (*Id*. at 4:9-10, 16-18.) The parties review and comment on compliance reports, unlike interim reports, before the Special Master files the report, thereby justifying the shortened 10-day response period. In this instance, however, the Special Master did not provide the parties an opportunity to review and comment on the Program Guide update, the Special Master's report on the update, or the Special Master's recommendations. Moreover, the Special Master's recommendations implicate important federalism questions that warrant additional time for Defendants to be able to respond meaningfully.

2

Defs.' Response to Special Master's Report on Program Guide Update
(2:90-cv-00520 KJM-DB (PC))

or a right of preapproval over agency rulemaking, which would represent an improper intrusion in the independence of California state agencies.

## I. THE JUNE 29 REPORT

In the June 29 Report, the Special Master states,

> After much discussion, the parties and the Special Master reached a compromise that ["Program Guide-related policies" already codified into state regulations] would not be included in the consolidated Program Guide update. It is the Special Master's recommendation that any further proposed Program Guide-related regulations be provided to plaintiffs and the Special Master 90 days in advance of the public comment period. This would allow time for review and discussion to determine whether any such proposed policy warrants inclusion in a future Program Guide update. This recommendation would include any Program Guide-related policies currently incorporated into regulations that substantively change in the future.

(ECF No. 5844 at 9). The June 29 Report provides that the term "Program Guide-related polices" is used "to refer to any and all policies which impact the delivery of mental health care to *Coleman* class members, e.g, custody-related policies (RVR, etc.)." (*Id*. at 9 n.7.) The above findings are memorialized in the Special Master's recommendation that "any proposed Program Guide-related regulations be provided to plaintiffs and the Special Master 90 days in advance of the public comment period, and/or any Program Guide-related policies currently incorporated into regulations that substantively change in the future." (*Id*. at 10.)

## II. ADVANCE NOTICE IS UNNECESSARY AND IMPROPERLY INTRUDES INTO CALIFORNIA'S ADMINISTRATIVE RULEMAKING PROCESS.

### A. Placing Existing Policies into Regulations does not Require Policy Development or Negotiation.

The Special Master's recommendation requiring ninety-days advance notice of proposed regulations, which will incorporate already agreed-upon Program Guide-related policies, is unnecessary because promulgating existing policies into regulations does not require negotiation of new policies. Unlike policy development, incorporating already agreed-upon policies into regulations should not trigger yet another lengthy negotiation process between the parties. Most, if not all, Program Guide-related policies were derived from litigation or protracted negotiations, and revisiting each policy as it is adopted into regulations is unnecessary, wasteful, and an intrusion into California's regulatory authority.

3

The Special Master's finding that the ninety-day notice period "would allow time for review and discussion to determine whether any such proposed policy warrants inclusion in a future Program Guide update" is an insufficient justification for requiring advance notice. (ECF No. 5844 at 9.) For example, the recommendation applies only to those policies that the parties would have already negotiated for inclusion in the Program Guide or its update. In other words, Defendants would be required to delay the regulatory process ninety days to "review and discuss[]" policies that the parties had previously determined belong in the Program Guide. Because the content of such a policy would already have been determined by the parties, and such a policy would already be in the Program Guide, no new policy making is implicated and a ninety-day review period is unjustified.

The Special Master's findings articulate no clear purpose for the ninety-day advance notice or explain why the current public comment period is insufficient to provide feedback on proposed regulations adopting long-settled policies.[2] Even if the process of placing agreed-upon policies into regulations were especially complex, the California Government Code provides for advance notice in complex cases. (*See* Cal. Gov. Code § 11346.45(a) (providing advance notice to stakeholders when the proposed regulation involves "complex . . . or a large number of proposals that cannot easily be reviewed during the comment period").)

Because any mental health care policies subject to agency rulemaking would already have been discussed between the parties, and the process of placing said policies into regulations does not require additional policy development, providing a ninety-day advance notice period is unnecessary.

**B. Requiring Advanced Notice Improperly Intrudes into California's Administrative Rulemaking Process.**

The California Administrative Procedures Act (APA) provides the exclusive means by which California agencies may propose regulatory changes. The APA requires agencies to prepare a comprehensive package of information regarding regulatory proposals, to provide that

---

[2] An agency must provide at least a 45-day period in which the public may comment on proposed regulations. Cal. Gov. Code § 11346.4.

4

Defs.' Response to Special Master's Report on Program Guide Update
(2:90-cv-00520 KJM-DB (PC))

information to the Office of Administrative Law, and to make that information available publicly in advance of the public comment period. *See* Cal. Gov. Code § 11340, *et seq*.[3] A requirement that Defendants provide proposed regulations to Plaintiffs and the Special Master before the public comment period would constitute an unwarranted judicial override of the statutory rulemaking process.

"[W]here a court seeks to correct a constitutional violation established in the course of litigation, the court's exercise of equitable discretion must heel close to the identified violation and respect 'the interests of state and local authorities in managing their own affairs, consistent with the Constitution.'" *Gilmore v. California*, 220 F.3d 987, 1005 (9th Cir. 2000) (quoting *Milliken v. Bradley*, 433 U.S. 267, 281 (1977)). There is no suggestion in this case of a constitutional violation in the manner in which Defendants or the State of California promulgate regulations, and mandating additional procedures to be followed during the rulemaking process would move well beyond any alleged constitutional issues regarding the provision of mental-health services to CDCR inmates and strongly implicate separation of powers and federalism concerns.

In *Vermont Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 549 (1978), the Supreme Court held that federal courts could not impose rulemaking procedures on a federal government agency, finding that such imposition would extend beyond the limits of judicial review of agency action. After describing the rulemaking procedures in the federal Administrative Procedures Act—which, like California's APA, require submission of supporting documents and a public notice-and-comment period—the Court found that while "[a]gencies are free to grant additional procedural rights in the exercise of their discretion . . . reviewing courts are generally not free to impose them if the agencies have not chosen to grant them." *Id*. at 524.

---

[3] Under the APA, an agency that seeks to take a rulemaking action must prepare a notice of proposed action, which among other things explains the purpose, authority for and expected impact of the action, along with information regarding how and when the public may submit comments or request a hearing if none is scheduled. Cal. Gov. Code § 11346.5. The agency must provide this notice to the Office of Administrative Law, alongside additional information regarding the purpose and justification for the regulatory action. *Id*. § 11346.2. Agencies must also make this information available to the public, and the agency must provide at least a 45-day period in which the public may comment on proposed regulations. *Id.* § 11346.4.

5

Defs.' Response to Special Master's Report on Program Guide Update
(2:90-cv-00520 KJM-DB (PC))

The Court added that, even apart from the Act, it had "for more than four decades emphasized that the formulation of procedures was basically to be left within the discretion of the agencies to which Congress had confided the responsibility for substantive judgments." *Id; see also Perez v. Mortg. Bankers Ass'n,* 135 S. Ct. 1199, 1207 (2015) (lower-court doctrine that substantial change in agency interpretations required public notice and comment was an improper imposition of a "judge-made procedural right").

In this case, the advance-notice requirement would also implicate federalism concerns. If the Court accepts the Special Master's recommendation, it would impose rulemaking requirements not authorized by applicable California law, and where there has been no suggestion in this case that California's rulemaking procedure itself violates the Constitution or contradicts superseding federal law. As in *Vermont Yankee Nuclear Power Co.*, the Court should not prescribe additional procedural requirements where the California legislature has chosen to vest the authority with state agencies through the APA.

In addition, the APA already provides ample opportunity for interested parties to receive notice of proposed regulations. An agency may consult with interested parties before initiating a rulemaking action. Cal. Gov. Code § 11346. If the proposed changes are complex or substantial, the APA requires the agency to "involve parties who would be subject to the proposed regulations in public discussions regarding those proposed regulations" (commonly referred to as "workshopping"). *Id*. § 11346.45. The workshop process provides an informal process for an agency to discuss proposed changes with stakeholders. It does not trigger the APA's one-year limit between publication of a proposal in the Register and agency action, and if used would provide a way for the parties to discuss proposed rulemaking actions in advance of promulgation—without interfering with the APA's mandatory procedures. Accordingly, it is unnecessary for the Court to interfere with the regulatory process of the State's executive branch or order additional requirements to the regulatory process adopted by the State of California.

Defendants are willing to share proposed regulations with the Special Master and Plaintiffs to facilitate discussion, but they object to a mandate of procedures beyond the APA that would

6

Defs.' Response to Special Master's Report on Program Guide Update
(2:90-cv-00520 KJM-DB (PC))

impermissibly intrude upon the executive branch's discretion on how to conduct its rule-making process.

## III. THE MEANING OF THE TERM "PROGRAM GUIDE-RELATED REGULATION" IS VAGUE AND OVERBROAD AND IMPERMISSIBLY EXPANDS THE PROGRAM GUIDE.

### A. The Definition Is Overbroad.

As written, the Special Master's recommendation potentially encompasses a broad swath of regulations and policies that do not directly relate to the delivery of mental health care to *Coleman* class members.[4]

The June 29 Report defines the term "Program Guide-related policies" to mean "any and all policies which impact the delivery of mental health care to *Coleman* class members, e.g, custody-related policies (RVR, etc)." (ECF No. 5844 at 9 n.7.) This definition is impermissibly broad. The specific reference to the terms "custody-related" and "RVR" suggests that the Special Master considers the term "Program Guide-related" to be expansive. The definition would appear to include any regulation that tangentially impacts the delivery of care to *Coleman* class members, regardless of whether the regulation specifically concerns the delivery of mental health services or primarily impacts *Coleman* class members. For instance, regulations on Rules Violation Report (RVR)[5] processes apply to all inmates, while only some provisions apply directly to mental health issues, such as those requiring a Mental Health Assessment, *see* Cal. Code Regs. tit. 15, § 3317(b).[6] The definition in the June 29 Report does not itself suggest that it is so limited.

---

[4] The phrase "Program Guide-related policies currently incorporated into regulations that substantively change in the future" is also ambiguous. Defendants interpret this language to refer to an amendment to an existing regulation that would require Defendants to draft a notice of proposed action pursuant to the APA. If the Special Master intended to refer to Defendants' policies more generally, then the Special Master's recommendation is unclear as to which policies would trigger the advance-notice period.

[5] A "Rules Violation Report" is the form by which correctional staff report misconduct committed by inmates. *See* Cal. Code Regs. tit. 15, § 3312(a)(3).

[6] Indeed, even regulations pertaining to RVRs touch on eighteen distinct regulatory sections ranging from definitions, reporting, classifications, referral for criminal prosecution, inmate assistance, confidential material, length of confinement, credit forfeiture, and records. (*See* Cal. Code Regs. tit. 15, §§ 3310-3326.)

7

Defs.' Response to Special Master's Report on Program Guide Update
(2:90-cv-00520 KJM-DB (PC))

Moreover, there are many regulations that impact all CDCR inmates and are unrelated to the delivery of mental health care or the 2009 Program Guide, but still could plausibly fall within the umbrella of "impact the delivery of mental health care." These include, for example, regulations relating to the movement of inmates, security levels, modified program procedures, or parole.

While there are three policies identified as updates to the Program Guide that pertain to RVRs (ECF No. 5844 at 12 and 16),[7] those policies expressly address *Coleman* class members. (ECF No. 5844 at 28, 29, 31, 52, 53, 323, 324-27, and 355.) The vague definition of "Program Guide-related regulations" could include virtually any promulgated or modified regulation, requiring Defendants to determine whether and how any proposed regulation on any topic might impact *Coleman* class members and potentially trigger the advance-notice requirement. The effect of such a broad interpretation would inevitably result in delays, unduly burden Defendants, and impermissibly expand the reach of *Coleman* into matters unrelated to the delivery of mental health care.

Accordingly, Defendants request that if the Court does adopt the advance-notice requirement – which Defendants believe is unwarranted – it clarify the scope of the requirement to apply only to regulations adopting policies that are directly related to the Program Guide that concern the delivery of mental health care to *Coleman* class members.

**B.    The Definition Greatly Expands the Scope of the Program Guide at a Late Stage of Remediation.**

The Court has held that the Program Guide is "defendants' considered assessment . . . of what is required to remedy the Eighth Amendment violations identified in this action and to meet their constitutional obligation to deliver adequate mental health care to seriously mentally ill inmates. (Order, ECF 4631 at 3.) Although Defendants disagree with this assessment, it will certainly no longer be accurate if the Court adopts the Special Master's recommendation, which strips from Defendants their right to assess which policies are necessary to remedy violations and

---

[7] 17-0705 Memo on Mental Health Appointment Refusals, 15-1021 Procedure for Rules Violation Report (RVR) Mental Health (MH) Assessment 12.07.601.P(l), and 14-0605 RVRs Issued Relative to Involuntary Medication.

8

Defs.' Response to Special Master's Report on Program Guide Update
(2:90-cv-00520 KJM-DB (PC))

instead declares that *any and all* policies that impact the delivery of mental health care are necessary to remedy the violation. This sea change is especially troubling at this late stage of the litigation. This recommendation, if adopted, represents a dramatic shift in how the Court will gauge compliance with the Eighth Amendment as the Program Guide has also been referred to as "[t]he CDCR defendants' remedial plan." (ECF 5439 at 85, Special Master's Report on the 26th Round of Monitoring, adopted by ECF 5477, Aug. 9, 2016, Order.)

Without clear limitations as to which policies this advance notice period applies, the Court risks greatly expanding the scope of this action at a time when the parties should be focused on narrowing and resolving the few remaining issues. Thus, should the Court adopt the recommendation for advance notice, the Court should clarify that notice only applies to proposed regulations directly related to existing Program Guide policies.

### IV. THE COURT SHOULD CLARIFY THAT THE PURPOSE OF THE ADVANCE-NOTICE REQUIREMENT IS TO FACILITATE PROGRAM GUIDE AMENDMENTS, AND NOT TO PROVIDE THE SPECIAL MASTER WITH LEGISLATIVE AUTHORITY.

In the June 29 Report, the Special Master states that the purpose of the advance-notice requirement is to "allow time for review and discussion to determine whether any such proposed policy warrants inclusion in a future Program Guide update." (ECF No. 5844 at 9.) As part of the administrative rulemaking process, Defendants are amenable to accepting commentary from Plaintiffs or the Special Master as to proposed regulatory changes, and discussing how the Program Guide should reflect these modifications.

However, Defendants are concerned that any advance-notice requirement, if ordered, will afford Plaintiffs and the Special Master a *de facto* right to develop state policy or exercise pre-clearance authority over state regulation. Such an expansion would exceed the authority granted to the Special Master under Federal Rule of Civil Procedure 53, the Court's Order of Reference (ECF No. 640), and the Prison Litigation Reform Act, none of which contemplate a Special Master prospectively micromanaging or dictating agency policy. *See* 18 U.S.C. §§ 3626(a)(1)(A), (f). This is particularly true given that, as mentioned above, there is no

9

Defs.' Response to Special Master's Report on Program Guide Update
(2:90-cv-00520 KJM-DB (PC))

constitutional violation alleged regarding California's rulemaking process that warrants this expansive intrusion into the State's regulation-making authority and process.

Accordingly, the Court should make clear that an advance-notice requirement (if ordered) would only provide the Special Master and Plaintiffs with an opportunity to comment on proposed regulatory actions, and that they would not be granted authority over final decisions beyond that normally afforded to other public commenters under the APA.

## CONCLUSION

Defendants object to the Special Master's recommendation and request that the Court eliminate the advance-notice requirement. To the extent that the Court orders any advance notice, the Court should clarify that the notice period is for the purpose of allowing commentary from the Special Master and Plaintiffs, rather than to provide the Special Master and Plaintiffs the opportunity to pre-clear agency rulemaking. And the Court should further clarify that any such order would only apply to regulations directly affecting the delivery of mental health care to *Coleman* class members.

## CERTIFICATION

The undersigned counsel for the Defendants certifies that he reviewed the following relevant court orders: December 11, 1995 (ECF No. 640); April 19, 2017 (ECF No. 5610); October 10, 2017 (ECF No. 5710); November 6, 2017 (ECF No. 5726); December 15, 2017 (ECF No. 5750); April 10, 2018 (ECF No. 5816); May 31, 2018 (ECF No. 5832); July 12, 2018 (ECF No. 5852); and July 20, 2018 (ECF No. 5860).

/ / /

/ / /

/ / /

10

Defs.' Response to Special Master's Report on Program Guide Update
(2:90-cv-00520 KJM-DB (PC))

1 | Dated: July 20, 2018 | Respectfully submitted,

XAVIER BECERRA
Attorney General of California
JAY C. RUSSELL
Supervising Deputy Attorney General

*/s/ Tobias G. Snyder*
TOBIAS G. SNYDER
Deputy Attorney General
*Attorneys for Defendants*

CF1997CS0003
21185364.docx

11

Defs.' Response to Special Master's Report on Program Guide Update
(2:90-cv-00520 KJM-DB (PC))