1   XAVIER BECERRA
    Attorney General of California
2   MONICA N. ANDERSON
    Senior Assistant Attorney General
3   JAY C. RUSSELL
    ADRIANO HRVATIN
4   Supervising Deputy Attorneys General
    ANDREW GIBSON, State Bar No. 244330
5   ELISE OWENS THORN, State Bar No. 145931
    TYLER HEATH, State Bar No. 271478
6   IAN ELLIS, State Bar No. 280254
    TOBIAS SNYDER, State Bar No. 289095
7   *Attorneys for Defendants*
      600 W Broadway, Suite 1800
8     San Diego, CA 92101-3375
      Telephone: (619)738-9549
9     Fax: (619) 645-2012
      E-mail: Andrew.Gibson@doj.ca.gov
10  *Attorneys for Defendants*

11

12                  IN THE UNITED STATES DISTRICT COURT

13              FOR THE EASTERN DISTRICT OF CALIFORNIA

14                          SACRAMENTO DIVISION

15

16  **RALPH COLEMAN, et al.,**                  Case No. 2:90-cv-00520 KJM-DB (PC)

17                              Plaintiffs,      **NOTICE OF APPEAL TO THE
                                                 UNITED STATES COURT OF APPEALS
18                      v.                       FOR THE NINTH CIRCUIT**

19                                               Judge:       The Honorable Kimberly J. Mueller
                                                 Action Filed: August 23, 1990
20  **EDMUND G. BROWN JR., et al.,**

21                              Defendants.

22

23          Defendants appeal to the U.S. Court of Appeals for the Ninth Circuit from this Court's

24  Order of July 3, 2018 (ECF No. 5850).

25  / / /

26  / / /

27  / / /

28

                                        1

1    Defendants also appeal from all earlier, non-final orders that produced the July 3 Order and

2  are thereby merged with it. *See Am. Ironworks & Erectors Inc. v. N. Am. Const. Corp.*, 248 F.3d

3  892, 897 (9th Cir. 2001).

4  Dated:  August 1, 2018                           Respectfully submitted,

5                                                   XAVIER BECERRA
                                                    Attorney General of California
6                                                   JAY C. RUSSELL
                                                    Supervising Deputy Attorney General
7

8                                                   */s/ Andrew Gibson*

9                                                   ANDREW GIBSON
                                                    Deputy Attorney General
10                                                  *Attorneys for Defendants*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27  CF1997CS0003
    FINAL Notice of Appeal.docx
28

# ATTACHMENT
# ECF NO. 5850
# ORDER

1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    RALPH COLEMAN, et al.,                    No.  2:90-cv-0520 KJM DB P

12                   Plaintiffs,

13         v.                                   ORDER

14    EDMUND G. BROWN, JR., et al.,

15                   Defendants.

16

17         As required by court order, ECF No. 5786, this matter came on for further status

18    conference regarding staffing and telepsychiatry on June 28, 2018.  The parties filed a joint status

19    report, ECF No. 5841, as required by the order, and the parties were represented by counsel at the

20    hearing.  *See* ECF No. 5842.

21         On October 10, 2017, the court set a one-year deadline by which "all outstanding

22    issues pertaining to achieving adequate mental health staffing levels must be resolved and the

23    required staffing levels achieved."  ECF No. 5711 at 28.  An initial status conference, set for

24    April 12, 2018, was advanced to February 15, 2018 to address a dispute that arose following

25    prison tours conducted unilaterally by consultants retained by defendants to address staffing

26    issues.  *See* ECF No. 5786 at 1 (citing ECF No. 5771 at 3).  By order after hearing, the court

27    directed the Special Master to "take all steps necessary to create a complete factual record for

28    /////

                                      1

consideration and resolution of" three issues outlined in the order, and directed the parties, under

the Special Master's guidance, to address the questions, as follows:

> 1. Can defendants hire a sufficient number of psychiatrists, through salary adjustments, forensic psychiatric fellowships, exhaustion of clustering, and other recruiting and retention efforts, to meet the staffing levels for psychiatrists required by the 2009 court-ordered staffing ratios, ECF No. 3693, with a maximum ten percent vacancy rate as required by the court's June 13, 2002 order, ECF No. 1383?
>
> 2. What role does and can telepsychiatry play, consistent with the Eighth Amendment, to aid in solving the psychiatrist staffing shortage?
>
> 3. Keeping in mind that the staffing levels that preceded the current ratios were constitutionally inadequate, are there any adjustments to the psychiatric staffing ratios that could be made to alleviate the psychiatrist staffing shortages without compromising the constitutionally required access to adequate mental health care?

ECF No. 5786 at 3-4. The purpose of the June 2018 status conference was to inform the court of

the progress in resolving these questions, with an eye to ensuring timely compliance with the

October 10, 2017 order.

Though significant work remains, the court is encouraged by the progress reported by the

parties and by the Special Master. The court remains hopeful that with continued diligent focus

on collaboration and the critically important end goal of permanent achievement of

constitutionally adequate mental health staffing levels, the parties and the Special Master will be

able to report compliance with the October 10, 2017 order by the one-year deadline. To that end,

this order provides further guidance on the three questions outlined above, considering both the

progress and the disputes on those issues reported in the parties' joint status report, as well as

additional information provided to the court by the Special Master.

I.    Staffing Ratios

Regarding the third question set forth above, on May 17, 2018, defendants submitted to

the Special Master and the plaintiffs a proposal to eliminate positions allocated in the 2009

Staffing Plan that either have never been implemented or, in defendants' view, are not required

under the Revised Program Guide. ECF No. 5786 at 8 & Ex. 2 (hereafter "Staffing Proposal").

Plaintiffs have responded to the Staffing Proposal, it has been presented to the All-Parties'

1    Workgroup, and the Special Master's experts have provided their preliminary responses,

2    signaling approval of some aspects and suggesting some modifications. *Id*. at 8. The Special

3    Master has not formulated a final position on the Staffing Proposal, and it will be the subject of

4    discussion at the next All-Parties' Workgroup meeting, scheduled for July 9, 2018.

5            Defendants are applauded for the wisdom reflected in conducting a concrete evaluation of

6    the functions described in the 2009 Staffing Plan, considering current circumstances. While the

7    court takes no position on the merits of any aspect of the Staffing Proposal at this time, much of

8    the proposal appears to hold significant promise. The court will allow the process being managed

9    by the Special Master to run its course until October 2018.

10   II.    Hiring/Clustering

11          The parties' positions with respect to the first question in the February 15, 2016 order are

12   clearly outlined in the joint status report and appear essentially unchanged from their prior

13   positions. *See* ECF No. 5711 at 9-10. Defendants do not believe additional increases in mental

14   health salaries or further clustering of mentally ill inmates will help them meet the operative

15   staffing ratios at the required ten percent vacancy rate, and that further clustering "may in fact be

16   detrimental" to their recruitment and retention efforts. ECF No. 5841 at 5-6. Plaintiffs believe

17   defendants' conclusion on salaries is premature and that further discussion about clustering is

18   necessary. *Id*. at 6.

19          Defendants report they have "retained a labor economics group to support their efforts to

20   respond to questions raised regarding salary, compensation, and labor market trends." *Id.* at 6

21   n.2. They state they have retained this expertise "[i]n anticipation of the possible need to move to

22   modify the 2009 Staffing Model" if the parties are unable to agree on the Staffing Proposal. *Id*.

23          After the court's June hearing, the Special Master confirmed to the court that, as he has

24   previously signaled to the parties, he intends to move forward with hiring an independent labor

25   economist and that he will be doing so within the next three weeks. At this juncture, therefore,

26   the court directs the parties to refrain from any further motion practice. The court previously has

27   directed the Special Master to "create a complete factual record for consideration and resolution"

28   of this issue, as well as the other issues identified in the February 15, 2018 order. ECF No. 5786

                                                    3

1   at 3.  Accordingly, the parties will be directed to report to the court on the status of defendants'

2   Staffing Proposal and any outstanding staffing disputes in a joint status report to be filed by

3   September 7, 2018.  At the October 2018 hearing, the court will consider only material disputes

4   about any remaining obstacles to timely compliance with the October 10, 2017 order.  As used in

5   this order, a material dispute is one whose resolution is required to achieve timely compliance

6   with the October 10, 2017 order.  The parties shall prepare their status report in consultation with

7   the Special Master so that he can certify the following with respect to each identified dispute: (1)

8   whether it is material; (2) that good faith efforts to resolve the dispute have been exhausted; and

9   (3) the dispute is not susceptible of resolution except by the court.  By September 14, 2018, the

10  Special Master shall provide to the parties and file with the court all parts of the developed factual

11  record relevant to resolution of any dispute he certifies satisfies all three criteria.

12          III.    Telepsychiatry

13          The area of work on the above list closest to completion is defendants' telepsychiatry

14  policy.  The parties report four areas of disagreement:  whether the policy complies with key

15  provisions of the court's October 10, 2017 order concerning limitations on its use in inpatient

16  settings; whether, and to what extent, telepsychiatry may be used as a substitute for on-site

17  psychiatry at all levels of the Mental Health Services Delivery System (MHSDS); whether

18  telepsychiatry may be used at cell-fronts; and whether psychiatric nurse practitioners should be

19  authorized to provide telepsychiatry services.  ECF No. 5841 at 7-8.

20          The first two disputes arise from a disagreement over interpretation of the relevant

21  requirements of the court's October 10, 2017 order.  Defendants' reading of the court's order, or

22  any purported misunderstanding regarding the order's meaning, borders on the frivolous, given

23  that the position defendants take now is substantially similar to the position they took in

24  objections that have been effectively overruled by the court.  *See* ECF No. 5591 at 5-9; ECF No.

25  5711 at 22-23.  Nonetheless, the court now confirms the following:

26  /////

27  /////

28  /////

4

The recommendations of the Special Master concerning the use of telepsychiatry, as clarified by the October 11, 2017 order, shall – or should, in the obligatory sense -- form the basis of the telepsychiatry addendum to the Revised Program Guide.  ECF No. 5711 at 23, 30.[1]

A. CCCMS

Specifically, consistent with the Special Master's recommendations, telepsychiatry should not replace on-site psychiatry at any level of care above CCCMS.  The Special Master has clarified for the court that his experts agree telepsychiatry may replace on-site psychiatry at the CCCMS level of care as long as the conditions described in the October 10, 2017 order are met, namely: (1) telepsychiatrists visit the institution at least twice a year; and (2) defendants continue a good faith effort to recruit on-site psychiatrists for all institutions providing a CCCMS level of care.  ECF No. 5711 at 21.  At hearing, the parties represented there is no dispute over the use of telepsychiatry at the CCCMS level of care.

Until the court approves a final telepsychiatry policy, defendants shall proceed forthwith will full implementation of telepsychiatry at the CCCMS level of care, conditioned on biannual visits from telepsychiatrists to CCCMS programs and continued good faith efforts by defendants to recruit on-site psychiatrists for these programs.

B. EOP

Telepsychiatry may supplement on-site psychiatry at the Enhanced Outpatient (EOP) level of care but it should not replace on-site psychiatry.  Although EOP is labeled an "outpatient" program, outpatient is contextual and relative to inpatient programs within the MHSDS; moreover, the Revised Program Guide makes clear EOP is a residential program, synonymous

---

[1]  To the extent defendants' asserted confusion arises from use of the word "should" at 21:4, 21:12, 23:10, 23:11 and 30:8 of the October 10, 2017 order, the court observes that this is the term used by the Special Master in the recommendations that were adopted by the court.  *See*, *e.g.*, ECF No. 5711 at 21 (quoting ECF No. 5564 at 15-17).  It is true that "shall" is mandatory, while "should" can be either obligatory or permissive.  *Compare* https://en.oxforddictionaries.com/definition/shall (definition of shall) *with* https://en.oxforddictionaries.com/definition/should (definition of should).  However, the overarching directive of the October 10, 2017 order is that those recommendations are to form the basis of the telepsychiatry policy; in addition, the policy was to be finalized under the guidance of the Special Master and his experts.  Thus, the guidance of the Special Master and his experts about whether "should" carries its obligatory meaning in these contexts controls development of the policy.

1   with an inpatient setting.  All inmates at this level of care are housed in separate specifically

2   designated EOP housing units, which provide housing, treatment and programming for seriously

3   mentally ill inmates "whose mental illness precludes their placement and participation in the"

4   general population.  Revised Program Guide at 12-4-1.  Any telepsychiatrist assigned to an EOP

5   unit must visit that unit at least four times a year.  *See* ECF No. 5711 at 21.

6         C.  MHCB

7         Telepsychiatry may not be used at the MHCB level of care except "'as a last resort or in

8   emergency situations when an on-site psychiatrist is not available.'"  *Id*. at 21 (internal citation

9   omitted).

10         D.  Finalization of Policy

11         In issuing the October 10, 2017 order, the court specifically rejected as insufficient

12   evidence tendered by defendants in an effort to demonstrate that telepsychiatry can and should be

13   widely used at all levels of the MHSDS.  *Id*. at 21-22.  Defendants would be well advised to cease

14   their continued reliance here on evidence the court has rejected.  Having considered defendants'

15   argument at the June 2018 hearing, that the telepsychiatry policy should not be finalized until

16   overlapping staffing allocation and ratio issues are resolved, the court is not persuaded.  Rather,

17   the court confirms its tentative position, shared at the hearing, that finalizing the telepsychiatry

18   policy now will clarify the staffing landscape so that other outstanding issues can be resolved in a

19   manner most likely to gain the court's approval.  Accordingly, the court will direct the Special

20   Master to finalize a proposed telepsychiatry policy that is in his view consistent with the

21   provisions of the October 10, 2017 order and the recommendations of his experts.  Specifically,

22   the Special Master shall propose in the final draft policy resolutions to the third and fourth

23   disputes raised by the parties, concerning cell-front telepsychiatry and whether psychiatric nurse

24   practitioners should be permitted to provide telepsychiatry services.  The Special Master shall

25   circulate that proposal to the parties and obtain their responses.  In preparing their responses, the

26   parties shall bear in mind that the Special Master's opinions are informed and guided by a team of

27   nationally recognized experts in correctional mental health, many of whom have served in an

28   expert capacity for most of the twenty-three years this case has been in the remedial phase.  *See*,

6

1    *e.g.*, ECF No. 669 at 2-3 & attached curriculum vitae (Jeffrey L. Metzner, M.D.); ECF No. 920 at

2    1-2 & attached curriculum vitae (Kerry C. Hughes, M.D.); ECF No. 2161-1 at 3 & ECF No.

3    2162-1 (Mary Perrien, Ph.D.); ECF No. 2211-1 at 3-4 & attached curriculum vitae (Henry A.

4    Dlugacz, Esq.). The Special Master shall file the proposed policy together with any party's

5    responses within thirty days from the date of this order.

6          Finally, the court notes the Revised Program Guide contemplates annual modifications, as

7    appropriate.  The October 10, 2017 order contemplates the possibility that ongoing monitoring

8    may lead to modification of the telepsychiatry policy, *see* ECF No. 5711 at 30, and nothing in this

9    order precludes such modifications as may be required, including as a result of the completion of

10   the work required by the October 10, 2017 order.

11         IV.    Additional Matters

12         At hearing, the court authorized the parties to file, by August 3, 2018, a joint status report

13   addressing any additional process, including discovery or motion practice, the parties believe

14   might be required to ensure timely compliance with the October 10, 2017 order.  It cannot be said

15   too many times:  the court looks with great disfavor on further litigation now to resolve any

16   staffing issues, particularly given the progress the parties are making when focused on

17   constructive problem solving.  Nonetheless, should it be apparent to the parties, with the Special

18   Master's oversight, that discovery will be necessary to a full and fair presentation of a material

19   staffing dispute as described above, the parties may, by August 3, 2018, file a joint status report

20   describing the nature of the dispute and the narrow scope of discovery any party believes is

21   required.  No discovery or motion practice is authorized unless or until the court approves it.

22         The October 10, 2017 order requires the parties to file a joint status report not later than

23   thirty days prior to the status conference.  ECF No. 5711 at 31.  That order will be modified to

24   require discussion of the following specific matters in a joint status report to now be filed by

25   September 7, 2018.

26         1.   The status of defendants' Staffing Proposal, and if full agreement has not been

27              reached, remaining disputes shall be described and presented to the court consistent

28              with the provisions of this order;

7

2. The status of implementation of the final telepsychiatry policy, which will have been approved by the court in August 2018;

3. Whether defendants will timely achieve compliance with the October 10, 2017 order and, if not, why not;

4. If defendants will not timely achieve compliance, the parties' respective positions on enforcement; and

5. If defendants will timely achieve compliance, the parties' respective positions on durability of the staffing remedy, with due consideration given to the fact that the adequacy of telepsychiatry must be monitored for at least one year, as well as to future projections for the size of the mental health population and what steps, if any, may be required to maintain staffing levels commensurate with that population.

V.    Conclusion

For the reasons explained in this order, the court is encouraged by the progress to date on the critically important task of achieving and maintaining constitutionally adequate mental health staffing levels in California's prisons.  The court expects and anticipates that the parties will continue to work with an eye to avoiding litigation, and that the September 7, 2018 status report will demonstrate that compliance with the October 10, 2017 order will be achieved.

In accordance with the above, IT IS HEREBY ORDERED that:

1.    Within thirty days from the date of this order, the Special Master shall complete a final proposed telepsychiatry policy, circulate that proposed policy to the parties, obtain their responses, and file the proposed policy together with any responses from the parties.

2. Defendants shall proceed forthwith will full implementation of telepsychiatry at the CCCMS level of care, conditioned on biannual visits from telepsychiatrists to CCCMS programs and continued good faith efforts by defendants to recruit on-site psychiatrists for these programs.

3. Should the parties and the Special Master believe that discovery will be necessary to a full and fair presentation of a material dispute central to resolution of

8

outstanding staffing issues, the parties shall file, not later than August 3, 2018, a
joint status report addressing any additional process, including discovery or motion
practice, that any party believes may be required to resolve such issue(s) to ensure
timely compliance with the October 10, 2017 order.  Any such joint status report
shall specifically describe the dispute and the scope of the discovery a party
believes is required.

4.  The October 10, 2017 order requiring a joint status report not later than thirty days
prior to the October 11, 2017 hearing is modified to require discussion of the
following specific matters in a joint status report to be filed by September 7, 2018:

   a.   The status of defendants' Staffing Proposal; if full agreement has not been
       reached, remaining disputes shall be described and presented to the court
       consistent with the provisions of this order;

   b.  The status of implementation of the final telepsychiatry policy;

   c.  Whether defendants will timely achieve compliance with the October 10,
       2017 order and, if not, why not;

   d.  If defendants will not timely achieve compliance, the parties' respective
       positions on enforcement; and

   e.  If defendants will timely achieve compliance, the parties' respective
       positions on durability of the staffing remedy, with due consideration given
       to the fact that the adequacy of telepsychiatry must be monitored for at
       least one year, and consideration of future projections of the size of the
       mental health population as well as what steps, if any, may be required to
       maintain staffing levels commensurate with that population.

The status report shall be prepared in consultation with the Special Master, who as
discussed above shall certify whether any remaining dispute is material, that good
faith efforts to resolve the dispute have been exhausted, and that the dispute is not
susceptible of resolution except by the court.  The Special Master shall provide to

/////

9

1    the parties and the court all parts of the developed factual record relevant to

2    resolution of any outstanding dispute so certified.

3    DATED:  July 3, 2018.

4

5    _____
     UNITED STATES DISTRICT JUDGE

# ATTACHMENT REPRESENTATION STATEMENT

No. _____

# IN THE UNITED STATES COURT OF APPEALS

## FOR THE NINTH CIRCUIT

**RALPH COLEMAN, et al.,**

Plaintiffs-Appellees,

**v.**

**EDMUND G. BROWN JR., et al.,**

Defendants-Appellants.

On Appeal from the United States District Court
for the Eastern District of California

No. 2:90-cv-00520 KJM-DB (PC)
The Honorable Kimberly J. Mueller, Judge

## REPRESENTATION STATEMENT

XAVIER BECERRA
Attorney General of California
MONICA N. ANDERSON
Senior Assistant Attorney General
JAY C. RUSSELL
ADRIANO HRVATIN
MISHA D. IGRA
Supervising Deputy Attorneys General
CHAD A. STEGEMAN, State Bar No. 225745
Deputy Attorney General
  California Department of Justice
  455 Golden Gate Ave, Suite 11000
  San Francisco, CA 94102-7020
  Phone:  (415) 510-3624
  E-mail:  Chad.Stegeman@doj.ca.gov
*Attorneys for Defendants-Appellants*

The undersigned represent the State Defendants-Appellants in this case—including Edmund G. Brown Jr., Governor of the State of California; Scott Kernan, Secretary of the California Department of Corrections and Rehabilitation; Michael Cohen, Director of the Department of Finance; and Pam Ahlin, Director of the Department of State Hospitals. Attached is a service list that shows the other parties that are directly interested in this appeal, along with their lead counsels' names, firms, addresses, telephone numbers, and email addresses. The party listing in the district court's docket (which spans 89 pages in the docket) also includes numerous associated counsel for many parties, as well as additional intervenors, "interested parties," amici curiae, and "miscellaneous" individuals who are not included on the attached service list.

Date: August 1, 2018        Respectfully submitted,
                            XAVIER BECERRA
                            Attorney General of California
                            MONICA N. ANDERSON
                            Senior Assistant Attorney General
                            JAY C. RUSSELL
                            ADRIANO HRVATIN
                            MISHA D. IGRA
                            Supervising Deputy Attorneys General

                            */s/ Chad A. Stegman*
                            CHAD A. STEGEMAN
                            Deputy Attorney General
                            *Attorneys for Defendants-Appellants*

1

*Service List*

| | |
|---|---|
| Michael Bien<br>  (Email: MBien@rbgg.com)<br>Jane E. Kahn<br>  (Email: jkahn@rbgg.com)<br>Jennifer Stark<br>  (Email: jstark@rbgg.com)<br>Krista Michelle Stone-Manista<br>  (Email: kstone-manista@rbgg.com)<br>Lisa Adrienne Ells<br>  (Email: lells@rbgg.com)<br>Margot Knight Mendelson<br>  (Email: mmendelson@rbgg.com)<br>Thomas Bengt Nolan<br>  (Email: tnolan@rbgg.com)<br>Jessica L. Winter<br>  (Email: jwinter@rbgg.com)<br>Michael S. Nunez<br>  (Email: mnunez@rbgg.com)<br>Rosen Bien Galvan & Grunfeld, LLP<br>50 Fremont Street<br>19th Floor<br>San Francisco, CA 94105<br>Phone: (415) 433-6830<br>Fax: (415) 433-7104<br> (Attorneys for Plaintiffs) | Donald Specter<br>Prison Law Office<br>1917 Fifth Street<br>Berkeley, CA 94710-1916<br>Phone: (510) 280-2621<br>Fax: (510) 280-2704<br>Email: dspecter@prisonlaw.com<br>(Attorney for Plaintiffs) |
| Aaron Joseph Fischer<br>Disability Rights California<br>1330 Broadway, Ste. 500<br>Oakland, CA 94612<br>Phone: (510) 267-1200<br>Fax: (510) 267-1201<br>Email:<br>aaron.fischer@disabilityrightsca.org | Kimberly Hall Barlow<br>Jones & Mayer<br>3777 N. Harbor Boulevard<br>Fullerton, CA 92835<br>Phone: (714) 446-1400<br>Fax: (714) 446-1448<br>Email: khb@jones-mayer.com |

| Matthew A. Lopes, Jr. | |
|---|---|
| Pannone Lopes & Devereaux LLC | |
| 317 Iron Horse Way | |
| Suite 301 | |
| Providence, RI 02908 | |
| Phone: (401) 824-5156 | |
| Fax: (401) 824-5123 | |
| Email: mlopes@pldw.com | |
| (Special Master) | |

No. _____

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

---

**RALPH COLEMAN, et al.,**

                              Plaintiffs-Appellees,

     v.

**EDMUND G. BROWN JR., et al.,**

                          Defendants-Appellants.

---

**STATEMENT OF RELATED CASES**

The following appeals arise from the same district-court matter and are related:

*Ralph Coleman, et al. v. Edmund Brown, Jr., et al.*, Ninth Cir. No. 17-16080

*Ralph Coleman, et al. v. Edmund Brown, Jr., et al.*, Ninth Cir. No. 17-17328

Dated:  August 1, 2018        Respectfully Submitted,

                                     XAVIER BECERRA
                                     Attorney General of California
                                     MONICA N. ANDERSON
                                     Senior Assistant Attorney General
                                     JAY C. RUSSELL
                                     ADRIANO HRVATIN
                                     MISHA D. IGRA
                                     Supervising Deputy Attorneys General

                                     */s/ Chad A. Stegman*
                                     CHAD A. STEGEMAN
                                     Deputy Attorney General
                                     *Attorneys for Defendants*

4

**CERTIFICATE OF SERVICE**

Case Name:   **Coleman v. Brown, et al.**       No.    **2:90-cv-00520 KJM-DB (PC)**

I hereby certify that on **August 1, 2018**, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

- **NOTICE OF APPEAL TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT**

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on **August 1, 2018**, at Sacramento, California.

| D. Jones | */s/ D. Jones* |
|----------|----------------|
| Declarant | Signature |

CF1997CS0003
13186348.docx

1