DONALD SPECTER – 083925
STEVEN FAMA – 099641
MARGOT MENDELSON – 268583
PRISON LAW OFFICE
1917 Fifth Street
Berkeley, California  94710-1916
Telephone:   (510) 280-2621

CLAUDIA CENTER – 158255
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN
CALIFORNIA, INC.
39 Drumm Street
San Francisco, California  94111-4805
Telephone:   (415) 621-2493

MICHAEL W. BIEN – 096891
JEFFREY L. BORNSTEIN – 099358
ERNEST GALVAN – 196065
THOMAS NOLAN – 169692
LISA ELLS – 243657
KRISTA STONE-MANISTA – 269083
JENNY S. YELIN – 273601
MICHAEL S. NUNEZ – 280535
JESSICA WINTER – 294237
MARC J. SHINN-KRANTZ – 312968
CARA E. TRAPANI – 313411
ROSEN BIEN
GALVAN & GRUNFELD LLP
50 Fremont Street, 19th Floor
San Francisco, California  94105-2235
Telephone:   (415) 433-6830

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

RALPH COLEMAN, et al.,

    Plaintiffs,

v.

EDMUND G. BROWN, JR., et al.,

    Defendants.

Case No. 2:90-CV-00520-KJM-DB

**DECLARATION OF JESSICA WINTER IN SUPPORT OF PLAINTIFFS' RESPONSE TO DEFENDANTS' CORRECTED RESPONSE TO SPECIAL MASTER'S JUNE 29, 2018 REPORT ON CDCR'S MENTAL HEALTH SERVICES DELIVERY SYSTEM PROGRAM GUIDE UPDATE**

Judge:  Hon. Kimberly J. Mueller

I, Jessica Winter, declare:

1. I am an attorney admitted to practice law in California, a member of the bar of this Court, and an associate in the law firm of Rosen Bien Galvan & Grunfeld LLP, counsel of record for Plaintiffs. I have personal knowledge of the matters set forth herein, and if called as a witness I could competently so testify. I make this declaration in support of Plaintiffs' Response to Defendants' Corrected Response to Special Master's June 29,

DECLARATION OF JESSICA WINTER IN SUPPORT OF PLAINTIFFS' RESPONSE TO DEFENDANTS' CORRECTED RESPONSE TO SPECIAL MASTER'S JUNE 29, 2018 REPORT ON CDCR'S MENTAL HEALTH SERVICES DELIVERY SYSTEM PROGRAM GUIDE UPDATE

[3283978.1]

1. 2018 Report on CDCR's Mental Health Services Delivery System Program Guide Update.

2. On July 20, 2018, I sent a comment letter to Defendants regarding proposed regulatory changes regarding the use of "C status" in CDCR facilities. In the letter, I address how the proposed regulatory changes relate to the parties' extended negotiations regarding Defendants' final C status policy memo. Attached hereto as **Exhibit A** is a true and correct copy of my comment letter to Defendants regarding the proposed C status regulatory changes, with the proposed regulatory changes and February 16, 2017 final negotiated version of the C status memo appended thereto.

3. The proposed C status regulations, as discussed in Exhibit A, are the first regulatory revisions intended to supplant a negotiated remedial policy memo that the parties have discussed since the Special Master filed his Report on the Program Guide Update.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct, and that this declaration is executed at San Francisco, California this 3rd day of August, 2018.

/s/ Jessica Winter
Jessica Winter

# Exhibit A



50 Fremont Street, 19th Floor
San Francisco, California 94105-2235
T: (415) 433-6830 ▪ F: (415) 433-7104
www.rbgg.com

Jessica Winter
Email:  jwinter@rbgg.com

July 20, 2018

VIA ELECTRONIC MAIL ONLY

Jerome Hessick
Nick Weber
Andrea Moon
Melissa Bentz
CDCR OLA Team
Jerome.Hessick@cdcr.ca.gov
Nicholas.Weber@cdcr.ca.gov
Andrea.Moon@cdcr.ca.gov
Melissa.Bentz@cdcr.ca.gov

      Re:    Comments on Proposed C Status Regulations
               *Coleman v. Brown*
               Our File No. 489-3

Dear CDCR OLA Team:

      Plaintiffs have reviewed the proposed C status regulatory package Nick Weber circulated on June 22, 2018.  (For ease, that regulatory package, along with the final version of the C status memo circulated to Plaintiffs on June 22, are appended to this letter.)  Several of the provisions are at least partly consistent with what the parties negotiated, under the guidance of the Special Master, in 2017.  But we write to request clarification regarding certain proposed regulatory changes, and we object to substantive differences between the proposed changes and the February 2017 final C status memo, as some significantly undercut the parties' concerted efforts to reverse the unduly punitive use of C status against class members.

**I.    Changes to Section 3044(f)(2)(B) and Addition of Section 3190(k)(3)(a)[1]**

      Defendants propose to change section 3044(f)(2)(B) so that, besides limiting canteen draw for those on C status to one-quarter the maximum amount, available

---

[1] All section references are to the numbering of the sections set forth in the proposed C status regulatory package.

canteen items would include only stationary, stationary supplies, personal hygiene items, and vitamins and medications.  The same limitation is proposed to be added as new section 3190(k)(3)(a).  The parties did not discuss this limitation as part of our 2017 discussions about C status, so it would be helpful to know how the limitation was developed, whether it already existed in practice, and if not, why this change is being proposed.  In addition, what are the canteen items to which individuals on C status under the current set of regulations have access that would no longer be available under the proposed change?  Finally, Plaintiffs object to the removal of all food items from canteen draw as unduly punitive to those on C status.

### II.     Proposed Property-Related Changes to Sections 3044(f)(2)(H) and 3190(k)(2)

The proposed changes to sections 3044(f)(2)(H) and 3190(k)(2) include a statement, mostly consistent with the C status memo, that property disallowed due to placement on C status shall be "stored pending removal from Privilege Group C."  It would be helpful to clarify and add language in both of these regulatory sections specifying that the inmate's institution will store the property.  This addition would be consistent with the text of the C status memo and potentially prevent confusion that could complicate class members' access to property once they are removed from C status.  In addition, the proposed amendments to sections 3190(k)(3) and 3315(f)(5)(N)(2) already include this additional language, so adding the language to sections 3044(f)(2)(H) and 3190(k)(2) would make them explicitly consistent both with policy and other portions of the regulatory scheme.

### III.    Proposed RVR-Related Changes to Sections 3190(k)(2), 3190(k)(3), and 3315(f)(5)(L)

The proposed amendments to sections 3190(k)(2), 3190(k)(3), and 3315(f)(5)(L) state that if an individual receives another RVR (administrative or serious) while on C status, their "disallowed property" will be "dispose[d] of … in accordance with subsection 3191(c)."  Section 3191(c) states that disallowed property must either be sent out of the institution, returned to sender, donated, or thrown away, but that if the prisoner does not have funds to send the property out of the institution, institutional staff decide what steps to take to dispose of the property.  To the extent this provision would newly cause some class members with limited funds to lose their property permanently, Plaintiffs object to it.  It is, however, possible that this amendment is merely a further codification of regulations already governing placement on segregation and/or D status.  If this procedure has already been followed up to this date, as a result of other regulatory requirements governing segregation and/or D status, Plaintiffs disagree with its imposition, but understand the need to amend these regulations for consistency.  If, however, the amendments to these sections change procedures for the disposition of

CDCR OLA Team
July 20, 2018
Page 3

property, permitting, as noted above, indigent class members' property to be lost permanently as a result of an RVR, Plaintiffs will not agree to this unduly punitive approach.

### IV.     Proposed Changes to Sections 3314(e)(3), 3315(f)(5)(C), and 3315(f)(5)(N)(2)

Plaintiffs have no objections to the changes to sections 3314(e)(3), 3315(f)(5)(C), and 3315(f)(5)(N)(2), as they are consistent with the substance of the C status memo.

### V.     Proposed Changes to Section 3315(f)(5)(L) Regarding Entertainment Appliances

Proposed changes to section 3315(f)(5)(L) state that those who are in segregated housing, and therefore in privilege group D, who have been deemed program failures for their conduct while in segregation, shall not possess entertainment appliances and that the entertainment appliances of any such individuals will be stored by the institution.  To the extent this provision is inconsistent with other policies specifically permitting class members access to entertainment appliances in segregation,[2] those policies should be codified as well, as exceptions to this provision.  Plaintiffs would appreciate a more in-depth discussion of the interplay between the proposed regulatory changes and the policies governing entertainment appliances in segregation.

### VI.     Proposed Changes to Section 3376(d)(3)(E)

While many of the proposed changes to section 3376(d)(3)(E) are consistent with the provisions in the C status memo, there are at least two important differences.  First, the proposed changes to this section state that if an IDTT determines C status would be damaging to a class member's mental health condition, the IDTT's determination will be referred to ICC.  The proposed amendment would add a phrase not present in the C status memo, that the referral goes to ICC "*for consideration of* reinstating privileges." (Emphasis added).  When we negotiated the analogous provision in the C status memo, Plaintiffs asked Defendants whether the referral from IDTT to ICC meant that the ICC

---

[2] Including, for example: March 20, 2013 Memo re Administrative Segregation Unit Requirements Regarding Clustering and Entertainment Appliances; December 14, 2010 Memo re Entertainment Appliances in Administrative Segregation; January 22, 2014 Memo re Multi-Powered Radio Loaner Program in Administrative Segregation Units; January 15, 2015 Memo re Creation of CCCMS Short Term and Long Term Restricted Housing; March 12, 2018 SAC PSU BIP and OP; March 12, 2007 Memo re Televisions in Segregation Units; April 27, 2007 Memo re Classification re Entertainment Appliances in ASU.

[3279604.1]

CDCR OLA Team
July 20, 2018
Page 4

necessarily would adopt and implement the IDTT's determination.  Defendants stated it did, de facto, and that therefore additional language assuring that the ICC followed the IDTT's recommendation was not necessary.  Unfortunately, however, the proposed additional language for the regulations is inconsistent with Defendants' representation during negotiations, suggesting that an ICC need only *consider*—and not necessarily implement—an IDTT's determination that a class member's privileges should be reinstated because of the detrimental impact on the class member's mental health status.  The phrase "for consideration of reinstating privileges" should be stricken from the proposed regulatory changes.

Second, the proposed amendments to section 3376(d)(3)(E)(6) state that a class member permanently transferred to a new institution will have his or her C status reviewed by ICC "to determine *if* privileges shall be restored and returned to their previous privilege group status prior to being on Privilege Group C" and that "[a]ssignment to Work Group C shall continue for the duration of time set by the classification committee upon the inmates [*sic*] initial placement on Work Group C, unless removed pursuant to section 3044(f)(1)(C) [which requires at least a 30-day wait before removal from C status]."  These proposed changes are irreconcilably inconsistent with the C status memo, which states that upon permanent transfer, a class member's work and privilege group will revert automatically to the individual's group prior to placement in Privilege Group C.  Plaintiffs and Defendants specifically negotiated this provision of the C status memo, and Plaintiffs object strongly to the proposed regulatory change, which contradicts the parties' negotiated agreement.

* * *

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

[3279604.1]

We appreciate the opportunity to review the proposed regulatory changes regarding C status, and hope to discuss them with Defendants in the near future.

Sincerely,

ROSEN BIEN
GALVAN & GRUNFELD LLP

*/s/ Jessica Winter*

By: Jessica Winter

JLW:cg
Enclosures

cc: *Coleman* Special Master Team    Christine Ciccotti
    Jay Russell    Sean Rashkis
    Adriano Hrvatin    Elaine Ekpo
    Elise Thorn    Joanna Mupanduki
    Andrew Gibson    Co-Counsel
    Tyler Heath

**TEXT OF PROPOSED REGULATIONS**

**In the following text, ~~strikethrough~~ indicates deleted text; <u>underline</u> indicates added or amended text.**

**California Code of Regulations, Title 15, Division 3, Adult Institutions, Programs and Parole**

**Chapter 1 Rules and Regulations of Adult Operations and Programs**

**Subsection 3044(a) through (f)(1)(B) remain unchanged.**

**Article 3.5 Credits**

**Section 3044 Inmate work groups**

**3044(f)(2) is amended to read:**

(f) Privilege Group C
(2) Privileges and non-privileges for Privilege Group C are as follows:
(A). No family visits.
(B). One-fourth the maximum monthly canteen draw <u>and items shall be limited to stationary, stationary supplies, personal hygiene and vitamins/medications.</u>~~as authorized by the secretary~~.
(C). Telephone calls on an emergency basis only as determined by institution/facility staff.
(D). ~~Yard access limited by local institution/facility security needs~~. <u>Institutions shall offer no less than ten hours a week of exercise in an outdoor or covered/enclosed setting each week. Access to dayroom shall not be counted towards the ten hours of exercise.</u> No access to any other recreational or entertainment activities
(E). No inmate packages. Inmates may receive special purchases, as provided in subsections 3190(j) and (k).
<u>(F). Participation in their designated religious service within the chapel or other approved locations once per week.</u>
<u>(G). Participation in a self-help group once per week.</u>
<u>(H). Inmates placed on Privilege Group C pursuant to a disciplinary action and/or classification committee action shall have disallowed property stored pending removal from Privilege Group C.</u>
<u>(I). Inmate participants in the Mental Health Services Delivery System (MHSDS) shall continue to participate in all scheduled structured therapeutic programming activities, which shall not be counted towards the ten hours of exercise.</u>

**Subsection 3044(g)(1) through 3044 (j)(3) remain unchanged.**

NOTE: Authority cited: Sections 2700, 2701 and 5058, Penal Code. Reference: Sections 2932, 2933, 2933.05, 2933.3, 2933.6, 2935, 5005, 5054 and 5068, Penal Code; and *In re Monigold*, 205 Cal.App.3d 1224 (1988).

**Article 9 Personal Property and Religious Personal Property**

**Subsection 3190 (a) through (k)(1) remains unchanged.**

**Section 3190. General Policy.**

**3190(k)(2) is amended to read:**

(2) Inmates assigned to Privilege Group C may not possess entertainment appliances and/or a musical instrument. Inmates placed on Privilege Group C pursuant to a disciplinary action pursuant to ~~subsection~~ subsections 3314(c)(3), 3315(f)(5)(C) or classification committee action shall have the disallowed property stored. ~~until which time the placement is affirmed by a classification committee.~~ Inmates deemed a program failure by a classification committee who receive one or more additional Administrative or Serious Rules Violation Reports while designated as a program failure shall be required to dispose of disallowed property in accordance with subsection 3191 (c).~~Upon placement in Privilege Group C by the classification committee, the inmate shall be afforded the allowable property identified in the APPS for Privilege Group C and will be required to dispose of the non-allowable property in accordance with subsection 3191(c).~~

**Subsection 3190(k)(3) is amended to read:**

(3) Inmates assigned to segregated housing units ~~Administrative Segregation Unit/Security Housing Unit/Psychiatric Services Unit (ASU/SHU/PSU)~~ may possess or acquire one television or one radio or one television/radio combination unit, through the Special Purchase process, facility physical plant limitations permitting, and shall not exceed the six cubic feet maximum limitation. Inmates assigned to ASU are authorized one entertainment appliance. Inmates assigned to SHU/PSU are authorized two entertainment appliances. Eligibility to possess an entertainment appliance commences on the date of Privilege Group D assignment. Inmates who are deemed program failures based on conduct prior to or while in a segregated housing unit, shall not be allowed to possess or acquire entertainment appliances or personal property, excluding the radio or tablet issued upon admission.

An inmate who is deemed to be a program failure, as defined in section 3000, based on conduct prior to or while in segregated housing units ~~the ASU/SHU/PSU~~, shall have his or her entertainment appliance ~~disposed of~~ stored by the institution pending removal of program failure designation. Inmates deemed a program failure who receive one or more additional Administrative or Serious Rules Violation Reports while assigned to program failure status shall be required to dispose of disallowed property in accordance with subsection 3191(c). An inmate who has not been deemed a program failure, but who is found guilty of any Rules Violation Report based on conduct while in the ASU/SHU/PSU, is subject to temporary loss of the entertainment appliance as follows: (1) thirty days for the first offense; (2) sixty days for the second offense; and (3) ninety

days for the third and subsequent offenses. Inmates assigned to Privilege Group D shall not possess a musical instrument.

**Subsection 3190(k)(3)(a) is added:**

<u>An inmate who is deemed to be a program failure, based on conduct prior to or while in a segregated housing unit, shall have his or her maximum monthly canteen draw items limited to stationary, stationary supplies, personal hygiene and vitamins/medications.</u>

**Subsection 3190(k)(4) through (u) remains unchanged**

NOTE: Authority cited: Sections 5058 and 5058.3, Penal Code. Reference: Sections 2086, 2601, 5006 and 5054, Penal Code; *In re Alcala,* Marin County Superior Court, No. 117925, December 20, 1984 and *Armstrong* v. *Davis* Court Ordered Remedial Plan, Amended January 3, 2001; *In re Armstrong,* N.D. Cal, No. C 94-02307, March 20, 1998.

**Subchapter 4. GENERAL INSTITUTION REGULATIONS**

**Subsection 3314(a) through 3314(c)(2) remain unchanged**

**Article 5 Inmate Discipline**

**Section 3314. Administrative Rule Violations.**

**Subsection 3314(e)(3) is amended to read:**

(3) Placement into privilege group B or C for no more than a 30-day period starting the date the rule violation report was adjudicated<u>. Inmates placed on Privilege Group C as a result of a disciplinary action, participating in the MHSDS at the EOP level of care or higher shall be referred to the Interdisciplinary Treatment Team (IDTT) by the hearing official via CDCR Form 128-MH5, Mental Health Referral Chrono as a routine referral for program review.</u>

**Subsection 3314(c)(4) through 3314(10)(j) remain unchanged**

NOTE: Authority cited: Section 5058, Penal Code. Reference: Section 5054, Penal Code.

**Article 5 Inmate Discipline**

**Section 3315. Serious Rule Violations.**

**Subsection 3315 (a) through 3315 (f)(5)(B) remains unchanged.**

**Subsection 3315(f)(5)(C) is amended to read:**

(C) Placement into privilege group B or C for no more than a 90-day period starting from the date the rule violation report was adjudicated. Inmates placed on Privilege Group C as a result of a disciplinary action, participating in the MHSDS at the EOP level of care or higher shall be referred to IDTT by the hearing official via CDCR Form 128-MH5, Mental Health Referral Chrono as a routine referral for program review.

*Subsection* **3315(f)(5)(L)** *is a*mended to read:

(L) Inmates placed in ~~ASU, SHU, PSU~~ segregated housing units, Privilege Group D, who are deemed to be program failures, as defined in section 3000, based on conduct while in the ~~ASU/SHU/PSU~~ segregated housing unit, shall ~~have their entertainment appliance disposed of in accordance with subsection 3191(c).~~ not possess entertainment appliances. An inmate who is deemed a program failure by a classification committee is subject to having his/her personal property/appliances stored by the institution pending removal of program failure designation.  Inmates deemed a program failure who receives one or more additional Administrative or Serious Rules Violation Reports while assigned to program failure status shall be required to dispose of disallowed property.  Inmates who are not deemed to be program failures, but who are found guilty of any RVR per this section based on their conduct while in the ~~ASU/SHU/PSU~~ segregated housing unit, are subject to temporary loss of their entertainment appliances as follows:

1. Thirty days for the first offense.
2. Sixty days for the second offense.
3. Ninety days for the third and subsequent offenses.

**Subsection 3315 (f)(5)(M) remains unchanged.**

**Subsection 3315 (f)(5)(N) is amended to read:**

1. First offense violation shall result in loss of any or all of the following for up to 90 days: canteen, appliances, inmate packages, telephone privileges, and personal property.

2. Second offense and subsequent offense violation(s) shall result in loss of any or all of the following for up to 180 days: canteen, appliances, inmate packages, telephone privileges, and personal property, and referral to a classification committee for review and determination for program failure. An inmate who is deemed a program failure by a classification committee is subject to having his/her personal property/appliances stored by the institution pending removal of program failure designation ~~disposed of in accordance with departmental procedure.~~

**Subsection 3315 (f)(5)(O) through 3315(h) remains unchanged.**

NOTE: Authority cited: Section 5058, Penal Code. Reference: Sections 295-300.3, 314, 530, 532, 646.9, 647, 653m, 2931, 2932, 2933, 4501.1, 4573.6, 4576, 5054, 5068 and 12020, Penal Code.

**Article 10 Classification**

**Subsection 3376 (a) through 3376 (d)(3)(D) remains unchanged.**

**Section 3376 Classification Committees**

**Subsection 3376(d)(3)(E) is amended to read:**

(E) Change an inmate's work/privilege group.

1. *Inmates assigned to Privilege Group C as a result of a classification committee action or disciplinary action, participating in the Mental Health Services Delivery System at the Enhanced Outpatient Program (EOP) level of care or higher, shall be referred to the IDTT via CDCR Form 128-MH5, Mental Health Referral Chrono as a routine referral for program review.*
2. *IDTT may recommend certain privileges be granted to the inmate on a case by case basis when it is determined suspension of privileges would cause decompensation and or would be detrimental to the inmate's mental health status. In this event, the correctional counselor attending IDTT shall refer the inmate to the classification committee for consideration of reinstating privileges.*
3. Each time the classification committee reinstates privileges the attending correctional counselor shall ensure housing unit staff are made aware of any privileges reinstated to the inmate or if the removal of Privilege Group C has occurred. Any changes shall be documented on a 128-B, General Chrono and distributed to the housing unit and the inmate following the classification committee and shall be effective immediately.
4. *The primary clinician is required to monitor the inmate's mental health status. At any time if it is determined the mental health of an inmate placed into Privilege Group C has declined as a result of suspension of privileges, the Primary Clinician shall document their concerns and findings on an Order Requisition and forward a copy to the assigned correctional counselor for referral to the Classification Committee. The primary clinician shall communicate with the Classification Committee clinician prior to the classification committee commences ensuring the recommendation noted on the 128-C Chrono is reviewed discussed and documented.*
5. *The classification committee shall consider the input provided by the primary clinician via the CDC 128-C, when determining whether an inmate will be removed from Privilege Group C and document the findings on the Classification Committee Chrono.*
6. *An inmate deemed a program failure, who is permanently transferred shall be reviewed at the initial classification committee by the receiving institution to determine if privileges shall be restored and returned to their previous privilege group status prior to being placed on Privilege Group C. Assignment to Work Group C shall continue for the duration of time set by the classification committee upon the inmates initial placement on Work Group C, unless removed pursuant to section 3044 (f)(1)(C)*

**Subsection 3376(d)(3)(F) through 3376(D) remains unchanged.**

NOTE: Authority cited: Sections 3303 and 3309, Welfare and Institutions Code; and Sections 5058 and 6252, Penal Code.  Reference: Sections 2933, 5054 and 5068, Penal Code.

# Memorandum

Date : February 16, 2017

To : Associate Directors, Division of Adult Institutions
Wardens
Chief Executive Officers
Chiefs of Mental Health

Subject : **WORK GROUP C AND PRIVILEGE GROUP C PROGRAM**

The purpose of this memorandum is to provide direction relative to assigning inmates to Privilege Group C and/or Work Group C, in addition to established regulations in the California Code of Regulations (CCR), Title 15 Sections 3044 (b)(5) and 3044 (f). Additionally, out of cell activities shall be standardized for all inmates assigned to Privilege Group C. Each Warden shall ensure the following for all inmates assigned to Privilege Group C:

- Offered no less than ten hours of exercise in an outdoor or covered/enclosed setting each week. Dayroom access shall not be counted towards the ten hours of exercise.

- Participation in their designated religious services within the chapel or other approved location.

- Ability to participate in a self-help group once per week.

- Personal property will no longer be sent home. Personal property shall be inventoried and stored by the institution pending removal from Privilege Group C.

- Inmate participants in the Mental Health Services Delivery System (MHSDS) shall continue to participate in all scheduled structured therapeutic programming activities, which shall not be counted towards the ten hours of exercise.

Each time an inmate participant in the MHSDS at the Enhanced Outpatient Program (EOP) level of care is assigned to Privilege Group C and/or Work Group C as a result of a disciplinary action or program failure designation, the hearing official and/or classification committee shall refer the inmate to the Interdisciplinary Treatment Team (IDTT) via CDCR Form 128-MH5, *Mental Health Referral Chrono* as a routine referral. Per Program Guide (2009 Revision), all routine referrals shall be addressed within 5 business days.

Due to the more restrictive privileges associated with Privilege Group C, IDTT may recommend certain privileges be granted to the inmate on a case by case basis when it is determined suspension of such privileges would be detrimental to the inmate's mental health status. In this event, the correctional counselor attending IDTT shall refer the inmate to the classification committee.

Associate Directors, Division of Adult Institutions
Wardens
Chief Executive Officers
Chiefs of Mental Health
Page 2

Consistent with current process, Primary Clinicians are required to monitor the mental health status of their patients. If at any time, the Primary Clinician believes Privilege Group C is having too severe of an impact, this concern and all pertinent information shall be documented on a CDC 128-C, *Chrono Medical, Psych., Dental*, and forwarded to the assigned correctional counselor for referral to classification committee. The patient's primary clinician shall communicate with the designated classification committee clinician prior to the classification committee meeting to ensure the recommendation in the 128-C is acknowledged and understood. The classification committee shall consider the input provided by the Primary Clinician via the CDC 128-C, when determining whether an inmate-patient will be removed from Privilege Group C.

The correctional counselor attending the classification committee shall be responsible for ensuring housing unit staff are made aware of any privileges reinstated to an inmate or if the removal of Privilege Group C has occurred as a result of a committee action. The correctional counselor shall document changes on a CDC Form 128-B, *General Chrono*, which will be scanned into the Electronic Records Management System. A copy shall be provided to the inmate and housing unit staff following committee.

If an inmate assigned to Work Group C and/or Privilege Group C is permanently transferred, they will revert to their previous Work and/or Privilege Group. This will provide the inmate the opportunity to successfully program at the new institution. If an inmate assigned to Work Group C and/or Privilege Group C is admitted to an inpatient mental health bed, Work Group C and/or Privilege Group C shall be suspended until return to outpatient housing.

In accordance with CCR, Title 15, Section 3044 (c)(6)(A), inmates housed in administrative segregation shall be designated Privilege Group D, not Privilege Group C with the exception of an inmate designated as non-disciplinary status (NDS) who shall retain their privilege group prior to ASU placement.

The Division of Adult Institutions will begin amending Work Group C and Privilege Group C regulations to align CCR, Title 15 and the Department Operations Manual with this directive.

Wardens and Chiefs of Mental Health shall ensure this information is incorporated into their Department Operations Manual Supplement and/or Local Operational Procedures. A proof

Associate Directors, Division of Adult Institutions
Wardens
Chief Executive Officers
Chiefs of Mental Health
Page 3

of practice memorandum and copies of updated procedures shall be submitted within 45 days of this memorandum to Jason Scholl, Staff Services Manager I, Mental Health Compliance Team, at Jason.Scholl@cdcr.ca.gov. Please forward all questions to your respective mission's Associate Director.

KATHLEEN ALLISON
Director
Division of Adult Institutions

KATHERINE TEBROCK, ESQ.
Deputy Director
Statewide Mental Health Program

cc: Connie Gipson
Jeff Macomber
Dawn Lorey
Eric Hobbs
Angela Ponciano
Amy Eargle
Laura Ceballos
Michael Golding
Regional Mental Health Administrators
Regional Health Care Executives