XAVIER BECERRA
Attorney General of California
MONICA N. ANDERSON
Senior Assistant Attorney General
JAY C. RUSSELL, State Bar No. 122626
Supervising Deputy Attorney General
ELISE OWENS THORN, State Bar No. 145931
ANDREW M. GIBSON, State Bar No. 244330
IAN MICHAEL ELLIS, State Bar No. 280254
TOBIAS G. SNYDER, State Bar No. 289095
TYLER V. HEATH, State Bar No. 271478
Deputy Attorney General
 1300 I Street, Suite 125
 P.O. Box 944255
 Sacramento, CA 94244-2550
 Telephone:  (916) 210-7325
 Fax:  (916) 324-5205
 E-mail:  Tyler.Heath@doj.ca.gov
*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **RALPH COLEMAN, et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**EDMUND G. BROWN JR., et al.,**<br><br>Defendants. | 2:90-cv-00520 KJM-DB (PC)<br><br>**DECLARATION OF B. BRIZENDINE, PSY. D. IN SUPPORT OF DEFENDANTS' RESPONSE RE: SPECIAL MASTER'S DRAFT TELEPSYCHIATRY POLICY**<br><br>Judge:     The Honorable Kimberly J. Mueller |

I, Brittany Brizendine, declare:

1.    I am the Assistant Deputy Director of the Statewide Mental Health Program for the California Department of Corrections and Rehabilitation (CDCR).  I am competent to testify to the matters set forth in this declaration and if called upon to do so, I would and could so testify.  I make this declaration in support of Defendants' response to the Special Master's draft telepsychiatry policy.

1

Declaration of B. Brizendine PSY. D. In Support of Defendants' Response Re: Special Master's Draft
Telepsychiatry Policy  (2:90-cv-00520 KJM-DB (PC))

2.     I was appointed as the Assistant Deputy Director of the Statewide Mental Health Program in May 2017.  I am familiar with the numerous and complex policies and procedures that govern the prison mental health care delivery system.  I am responsible for assisting in the supervision and management of the mental health system's headquarters and regional operations, and am familiar with *Coleman* mandates.  I started my work with the prison mental health care delivery system in 2008 as a staff psychologist at California State Prison, Sacramento, where I also worked in the Mental Health Crisis Bed unit, the Enhanced Outpatient Program Administrative Segregation Unit, and the Psychiatric Services Unit.  Prior to my current appointment, I served as the Chief Executive Officer (CEO) of Salinas Valley State Prison, and have served as the Chief of Mental Health at Salinas Valley and the California Health Care Facility.

3.     Before I started working for CDCR, I held a number of positions in the community providing mental health care to individuals though Kaiser Permanente Department of Psychiatry and through several community mental health care centers.  At one such center, I provided direct treatment for patients in the Partial Hospitalization Program which is a 5 day a week intensive program designed as either a step down from inpatient hospitalization or to prevent an avoidable hospitalization.

4.     As the Assistant Deputy Director, and through my prior positions working in CDCR's Mental Health Statewide Delivery System (MHSDS), I have personal knowledge of the licensing requirements, care requirements, physical settings, and various elements for all of CDCR's levels of care, which include the Correctional Clinical Case Management System (CCCMS), the Enhanced Outpatient Program (EOP), Mental Health Crisis Bed (MCHB), Intermediate Care Facility (ICF), and Acute Psychiatric Program (APP).  I have personally worked in the EOP Administrative Segregation Unit, and the Psychiatric Services Unit, as well as in the MHCB.  I have served as an administrator for each level of care, including as the administrator for the largest MHCB in California (98 bed MHCB at California Health Care Facility).  As Salinas Valley's CEO, I served as the hiring authority over all healthcare which includes medical,

2

nursing, dental, mental health, laboratory, pharmacy, etc. including a medial inpatient unit (Correctional Treatment Center).

5.    Based on my personal knowledge of, and experience working in, CDCR's levels of care, as well as my experience working in the community, CDCR's EOP level of care is not an inpatient program.

6.    The MHSDS Program Guide describes the EOP as an outpatient program. It states that CDCR's "[o]utpatient care is provided in an array of treatment levels and modalities including a day treatment program and an outpatient clinic of care." (Revised Program Guide, 12-1-1.) The EOP level of care is the "most intensive level of outpatient mental health care within the MHSDS." (*Id.* at 12-4-1.) It is for inmate-patients suffering from mental illness that are stable and largely able to function on their own, but would benefit from "the structure of a therapeutic environment that is less restrictive than inpatient settings." (*Id.* at 12-1-8.) Inmate-patients can receive treatment for their crisis symptoms, but only for those symptoms that can be managed as "outpatient therapy." (*Id.*) The Program Guide further states that, "[t]he goal of the EOP is to provide focused evaluation and treatment of mental health conditions which are limiting an inmate's ability to adjust to a GP placement. The overall objective is to provide clinical intervention to return the individual to the least restrictive clinical and custodial environment. (*Id.* at 12-4-1.)

7.    CDCR's EOP level of care has a number of characteristics that distinguish it from inpatient or residential treatment programs, including its staffing, housing, and patient acuity. EOP provides an outpatient level of care so the patient can receive intensive mental health treatment, while pursuing their educational certifications and degrees. EOP inmates hold jobs and engage in various rehabilitation opportunities, but go home to their housing unit at the end of their day.

8.    EOP inmate-patients are housed in designated living units at hub institutions. EOP housing units have no special characteristics as compared to general population housing units aside from intake cells for administrative segregation units. Depending on the institution, the patients may receive treatment in or near the housing units. The EOP separate housing unit is

1   primarily meant as a security measure to help protect a potentially vulnerable inmate-patient

2   population.

3       9.      It is not the separate housing unit that characterizes the level of care, but the staffing

4   and amount and intensity of the care provided to the patient.  The EOP level of care has staffing

5   ratios that were set by Defendants' Staffing Plan, filed with the Court on September 30, 2009.

6   (*See* ECF No. 3693.)  The staffing requirements are less robust than those required at CDCR's

7   higher levels of care.

8       10.     The EOP inmate population is also integrated with the other inmate populations.

9   CDCR has worked with the *Coleman* Special Master and Plaintiffs' counsel towards integration

10  of EOP inmate-patients into the full array of programs and opportunities available to patients and

11  into the larger inmate population.  This includes providing EOP inmates with jobs, religious

12  services, recreation time, education services, self-help and rehabilitation programs through the

13  Department of Rehabilitation, the Community Resources Manager Inmate Leisure Time Activity

14  Groups, and others.  The EOP inmate-patients may also have contact with other inmates during

15  times of inmate movement or if they are at an institution that provides some treatment to multiple

16  levels of care in the same area.

17      11.     The EOP is <u>not</u> akin to an inpatient level of care.  Inpatient care is for "inmate-

18  patients whose conditions cannot be successfully treated in the outpatient setting or in short-term

19  MHCB placements."  (*Id.* at 12-1-9.)  Inmates referred to inpatient care are suffering severe

20  impairment or distress due to their mental illness, experiencing dangerous decompensation due to

21  their mental-illness, and/or may be at risk of harming themselves or others.  (*See Id.* at 12-1-8, 12-

22  5-1, 12-6-7; Mental Health Services, Correctional Treatment Center: Psychiatric Inpatient

23  Program, Treatment Planning and Procedures: Referral and Admission Policy and Procedure,

24  12.11.2101(A).)  The Program Guide specifically states that inmate-patients at the EOP level of

25  care are not so impaired that they require the intensive 24-hour patient care provided by inpatient

26  care.  (Program Guide at 12-4-1.)

27      12.     CDCR's MHSDS provides inpatient level care at the ICF, APP, and MHCBs.  MHCB

28  and APP, both considered acute level of care, provide care for higher acuity level inmate-patients,

4

with ICF level of care designed generally for less acute and longer term inpatient care. The inpatient levels of care have higher acuity patients than in the outpatient levels of care, more robust staffing levels, higher intensity treatment settings, and provide more monitoring and care, most specifically with regard to nursing care. Inpatient levels of care take place in a closed treatment environment where all treatment for the patient must be within the licensed unit, all medications must be by doctor order, and the unit provides 24-hour nursing care.

14.    All of CDCR's inpatient levels of care, other than those with federal court waivers, must meet specific licensing requirements under Title 22. (Revised Program Guide, 12-5-1.) EOP units are outpatient units, not licensed, and do not need to meet Title 22's licensing standards.

15.    EOP provides significantly less care than the MHCB and other inpatient levels of care. A significant distinguishing factor is that it does not need to provide 24-hour nursing care. Also, healthcare staff is not posted in the housing units of outpatient programs on first watch (e.g., approximately 10:00 p.m. to 6:00 a.m.). EOP inmate-patients routinely meet with an Interdisciplinary Treatment Team (IDTT) every 90 days, weekly clinical contacts, and a monthly psychiatry visit. (*Id.* at 12-4-8.). Comparatively, inpatient care requires significantly more treatment. The cornerstone of that care is 24-hour nursing care, which includes an initial assessment at the time of admission, nursing care plans, monitoring of vitals and patients eating and sleeping, and nursing checks every fifteen minutes and/or the use of a call system. At the APP and ICF levels of care, a patient must be seen by a physician once every 72 hours, and then weekly after the first month if the program has a California Department of Public Health Flex Program. APP and ICF patients also must receive an IDTT in the first 72 hours of admission and again after seven days. After that, APP patients receive weekly IDTTs and ICF patients receive monthly IDTTs.

16.    The care provided in the MHCB is even more enhanced over the other levels of inpatient care. It requires an initial IDTT within 72 hours, followed by weekly IDTTs, psychiatry appointments every 72 hours, and daily clinical contacts (by either a psychiatrist or a psychologist). (Revised Program Guide at 12-5-11.)

17. Inpatients units include more robust staffing for their more intense level of treatment and higher acuity patients. With the exception of the MHCBs, the inpatient ratios are not set by the Defendants 2009 Staffing Model.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on August 1, 2018, at Elk Grove, California.

/s/ ***Brittany Brizendine***
B. BRIZENDINE, Psy.D.

CF1997CS0003 / 13186137.docx