XAVIER BECERRA, State Bar No. 118517
Attorney General of California
JAY C. RUSSELL, State Bar No. 122626
ADRIANO HRVATIN, State Bar No. 220909
Supervising Deputy Attorneys General
ELISE OWENS THORN, State Bar No. 145931
ANDREW M. GIBSON, State Bar No. 244330
TYLER V. HEATH, State Bar No. 271478
IAN MICHAEL ELLIS, State Bar No. 280254
TOBIAS G. SNYDER, State Bar No. 289095
Deputy Attorneys General
  455 Golden Gate Avenue, Suite 11000
  San Francisco, CA 94102-7004
  Telephone: (415) 510-4426
  Fax: (415) 703-5843
  E-mail: Tobias.Snyder@doj.ca.gov
*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>                  Plaintiffs,<br><br>v.<br><br>EDMUND G. BROWN JR., et al.,<br><br>                  Defendants. | 2:90-cv-00520 KJM-DB (PC)<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE DEFENDANTS' EVIDENCE IN SUPPORT OF DEFENDANTS' AUGUST 12, 2018 OBJECTIONS TO THE SPECIAL MASTER'S PROPOSED TELEPSYCHIATRY POLICY**<br><br>Date: September 7, 2018<br>Time: 10:00 a.m.<br>Dept.: Courtroom 3, 15th Floor<br>Judge: The Honorable Kimberly J. Mueller |

1

Defs.' Opp'n. Pls.' Mot. Strike (2:90-cv-00520 KJM-DB (PC))

# INTRODUCTION

Plaintiffs move to strike two pieces of evidence Defendants filed in support of their objections to the Special Master's Proposed Telepsychiatry Policy: a declaration from Defendants' expert Dr. Joseph Penn, responding to a report filed by Plaintiffs' undisclosed expert Dr. Pablo Stewart (Penn Rebuttal Declaration (ECF No. 5879-3)); and paragraph 11 of Dr. Kevin Kuich's declaration, describing a cell-front telepsychiatry demonstration held on July 11, 2018 at California Health Care Facility (Kuich Paragraph (ECF No. 5879-2 at ¶ 11)). Plaintiffs' motion to strike should be denied.

First, Plaintiffs' motion is based on the assertion that the Court prohibited the parties from filing "new" evidence in support of any objections to the Special Master's proposed telepsychiatry policy. (ECF No. 5872.) The contention lacks merit. Plaintiffs fail to point to specific language in any order, including the Court's July 3, 2018 Order, supporting this proposition. Instead, Plaintiffs rely on the Court's comments during the June 28, 2018 status conference. (ECF No. 5870.) But Plaintiffs' citations do not support any prohibition on the filing of evidence with the Court. Plaintiffs' motion attempts to deprive Defendants of the benefit of the Federal Rules of Civil Procedure based on Plaintiffs' interpretation of the Court's statements made during a hearing, as opposed to any order, statute, or rule.

Indeed, the Penn Rebuttal Declaration was necessary given Plaintiffs' submission of a surprise declaration by Dr. Stewart. In January of this year, Plaintiffs sought sanctions against Defendants in part for failing to disclose retained *consulting* experts (ECF No. 5764-1); and despite the Court's admonitions regarding transparency, the Plaintiffs submitted to the Special Master the declaration of a previously undisclosed *testifying* expert. Defendants were entitled under the Federal Rules of Civil Procedure to rebut Dr. Stewart's surprise testimony, and Plaintiffs should not be rewarded for their own delay in disclosure by striking Dr. Penn's report.

In addition, the motion to strike should be denied because Plaintiffs have suffered no injury. The "new evidence" contained in the Penn Rebuttal Declaration and Kuich Paragraph are the same arguments that Defendants raised in prior discussions between the parties and the Special Master, including Defendants' August 1, 2018 letter, which addressed the Special Master's initial

2

1  draft telepsychiatry policy. (ECF No. 5873-5.) Defendants presented the challenged evidence in
2  the Kuich Declaration to Plaintiffs and the Special Master on a number of occasions. And
3  Defendants' August 1, 2018 letter contained the same arguments set forth in Dr. Penn's report to
4  rebut Dr. Stewart's opinions. Neither argument changed Plaintiffs' or the Special Master's
5  positions, and Plaintiffs fail to explain how any of the "new" evidence would have been material
6  to their ultimate position.

7  Finally, Plaintiffs have not been deprived of an opportunity to "respond" to Defendants'
8  declarations. After three weeks of inaction, Plaintiffs chose to "strike" Defendants' evidentiary
9  support rather than respond to it—for example, through the all-party work-group process the
10 Court ordered to address CDCR's staffing issues.

11 Plaintiffs' motion to strike has no foundation in the facts or law. Because Plaintiffs have
12 not referenced any Court order or statute prohibiting the filing of the Penn Rebuttal Declaration
13 and Kuich Paragraph, and have not established that they were prejudiced in any way by the filing
14 of these documents, the Court should deny Plaintiffs' motion to strike.

## ARGUMENT

**I.  THE COURT DID NOT PROHIBIT THE PARTIES FROM FILING ADDITIONAL EVIDENCE ALONGSIDE THEIR OBJECTIONS TO THE SPECIAL MASTER'S REPORT.**

18 Under Federal Rule of Civil Procedure 53(f)(2), a party "may file objections to . . . the
19 master's order, report, or recommendations no later than 21 days after a copy is served, unless the
20 court sets a different time." Plaintiffs assert that this rule does not apply, claiming that the Court
21 "ordered a clear process for finalizing a proposed telepsychiatry policy that required the parties to
22 submit all comments, objections, and evidence regarding use of telepsychiatry to the Special
23 Master before he filed his proposed telepsychiatry policy." (Mov. Br. at 4:21-23.) But Plaintiffs
24 cite no law or rules supporting their argument. And, despite repeating the word "clear" six times,
25 Plaintiffs fail to identify what language in the Court's July 3, 2018 Order or in the Court's June
26 28, 2018 statements *clearly* prohibited the filing of the Penn Rebuttal Report or the Kuich
27 Paragraph.

28

3

Defs.' Opp'n. Pls.' Mot. Strike (2:90-cv-00520 KJM-DB (PC))

1    Plaintiffs only cite a single comment by the Court during the June 28, 2018 status
2 conference to suggest that the Court "explain[ed] that parties needed to submit to the Special
3 Master 'anything' that they wished the Court 'to consider in reviewing and ultimately deciding on
4 his proposed policy' within thirty days of court order subsequently filed on July 3, 2018." (Mov.
5 Br. at 6:3-5.)  Taken as a whole, however, the passage cited by Plaintiffs merely expresses the
6 Court's plan to gather in one place the evidence that had been exchanged between the parties over
7 the course of many months, so that the Court could have a complete record in front of it before
8 reviewing the Special Master's proposed telepsychiatry policy.  (*See* ECF No. 5870 (Tr. of June
9 28, 2018 Status Conf.) at 9:14-25 ("Well, I am prepared to review the record more closely.  And
10 so any record you want me to scrutinize in looking at the Special Master's proposal -- I'm not
11 approving his proposed policy in advance -- you can let me know.  So that would be the idea.
12 Rather than taking the time for an extended period of objections, again, my thought is to have the
13 Special Master package up the comments, and anything the parties want me to consider in
14 reviewing and ultimately deciding on his proposed policy, I would review.  So you would have a
15 chance to present that to me in format that is the most useful to educate me about your
16 position.").)  In other words, the Court indicated that the parties submit all relevant information
17 for the Court's consideration.  It did not, however, prohibit the parties from subsequently
18 submitting relevant evidence, particularly evidence to rebut an undisclosed expert.  Plaintiffs'
19 interpretation of the Court's statements on June 28, 2018 does not support their motion.
20    Moreover, Plaintiffs refer only generally to the Court's July 3, 2018 Order, which is what
21 actually determined the process by which the Special Master would propose a telepsychiatry
22 policy.  This is because the July 3 Order contains no language that would prohibit Defendants
23 from filing evidence alongside their objections.  Rather, the Court's specific decree on the topic,
24 directed at the Special Master and not the parties, reads in its entirety: "Within thirty days from
25 the date of this order, the Special Master shall complete a final proposed telepsychiatry policy,
26 circulate that proposed policy to the parties, obtain their responses, and file the proposed policy
27 together with any responses from the parties."  (ECF No. 5850 at 8:19-22.)
28

4

Nothing in that language, or elsewhere in the July 3 Order, prohibited the parties from objecting to the Special Master's report attaching the proposed policy or supporting their objections with evidence. Because Plaintiffs' motion to strike lacks any cognizable foundation, it must be denied.

## II. DEFENDANTS WERE ENTITLED TO FILE THE PENN REBUTTAL REPORT GIVEN PLAINTIFFS' FAILURE TO DISCLOSE THEIR RETENTION OF DR. PABLO STEWART.

Under Federal Rule of Civil Procedure 26(a)(2)(D), a party may submit rebuttal expert testimony "within 30 days after the other party's disclosure" if the testimony "is intended solely to contradict or rebut evidence on the same subject matter identified by another party." The Penn Rebuttal Report was timely filed within this deadline, and as discussed above nothing in the Court's words or orders vitiated the timelines of Rule 26.[1]

Even beyond the Federal Rules, however, the equities balance against striking the Penn Rebuttal Report. On January 26, 2018, Plaintiffs moved for sanctions against Defendants for failing to invite Plaintiffs' counsel to accompany Defendants' retained consulting experts on tours of correctional institutions, arguing that Defendants acted inappropriately by failing to disclose their retained *consulting* experts because they might potentially become *testifying* experts – despite no such anticipatory disclosure requirement existing in Federal Rule of Civil Procedure 26. (*See* ECF No. 5764-1 at 10:22-11:21.) At the following status conference, the Court made clear that she intended for the parties to work collaboratively, and notwithstanding the lack of such requirement in Rule 26 the parties would be expected to disclose retained experts, including consulting experts. (*See* ECF No. 5793 (Tr. of Feb. 14, 2018 Status Conf.) at 25:14-16 ("I think what you're hearing is the more disclosure the better. The more the sense is you're hiding the ball, the more distrust.").)

---

[1] Plaintiffs admit that the Penn Rebuttal Declaration "is specifically responsive" to the expert report of Dr. Stewart, thus constituting a rebuttal report under Rule 26(a)(2)(D). (Mov. Br. at 3:24-4:1). Dr. Stewart's report was served on July 12, 2018. (*Id.*) The thirty-day period running from July 12, 2018 ended on August 11, 2018 – a Saturday. Per Federal Rule of Civil Procedure 6(a)(1)(C), the period extended to the next court day, which was Monday, August 13, 2018, the same day Defendants served the Penn Rebuttal Declaration.

5

Defs.' Opp'n. Pls.' Mot. Strike (2:90-cv-00520 KJM-DB (PC))

The parties spent the better part of nine months discussing and negotiating the use of telepsychiatry to treat *Coleman* class members within the work groups, during which time Plaintiffs never produced evidence supporting a limit on Defendants' use of telepsychiatry—let alone disclosed the retention of their testifying expert. Defendants learned of his retention only when Plaintiffs submitted the full and final report to the work group on July 12, 2018, only three weeks before the Special Master was ordered to file his telepsychiatry policy and report with this court. Dr. Stewart has no specialized experience with telepsychiatry, and yet his report was the first time Plaintiffs purported to present *any* evidence that contradicted the wide-spread acceptance of telepsychiatry as a means of delivering mental-health care. Defendants are, therefore, entitled to rebut Dr. Stewart's faulty report with Dr. Penn's Declaration, and given the surprise nature of Plaintiffs' expert the Defendants should not have been forced to rush their response to be ready before the Special Master's report was filed.

If a party fails to timely disclose its expert witnesses, the court has the authority to strike expert disclosure and reports. The Ninth Circuit has stated:

> Rule 26 of the Federal Rules of Civil Procedure requires the parties to disclose the identities of each expert and, for retained experts, requires that the disclosure includes the experts' written reports. Parties must make these expert disclosures at the times and in the sequence that the court orders. Rule 37 "gives teeth" to Rule 26's disclosure requirements by forbidding the use at trial of any information that is not properly disclosed. Rule 37(c)(1) is a "self-executing," "automatic" sanction designed to provide a strong inducement for disclosure. The only exceptions to Rule 37(c)(1)'s exclusion sanction apply if the failure to disclose is substantially justified or harmless.

*Goodman v. Staples The Office Superstore,* 644 F.3d 817, 827 (9th Cir. 2011) (citations omitted)). If anything, Plaintiffs' failure to timely disclose their retention of Dr. Stewart justifies the striking of his report, not the rebuttal prepared by Defendants' disclosed expert – especially in light of Plaintiffs' January 2018 objections to Defendants' consultants and this Court's admonitions.

Defendants were entitled under the Federal Rules to rebut Dr. Stewart's report with timely filed objections. However, even beyond the Rules, Plaintiffs should not be rewarded for engaging in months-long stalling tactics and Defendants deserve the opportunity to respond to Plaintiffs' undisclosed expert.

6

Defs.' Opp'n. Pls.' Mot. Strike (2:90-cv-00520 KJM-DB (PC))

### III. PLAINTIFFS' MOTION TO STRIKE SHOULD BE DENIED BECAUSE THEY HAVE FAILED TO SHOW ANY PREJUDICE.

Plaintiffs' motion to strike also fails because the Penn Rebuttal Declaration and Kuich Paragraph present no prejudice or harm to the Plaintiffs. *See Goodman*, 644 F.3d at 827 ("The only exceptions to Rule 37(c)(1)'s exclusion sanction apply if the failure to disclose is substantially justified or harmless"). These declarations simply formalize arguments and information that were already presented to Plaintiffs and the Special Master during the work-group process, as contemplated by the Court. Moreover, Plaintiffs fail to identify what opportunity to respond was "lost" on account of the timing of Defendants' submissions.

#### A. The Penn Rebuttal Declaration and the Kuich Paragraph Merely Formalize Arguments Made During the Work-Group Process.

Plaintiffs note that Defendants included with their objections a newly created declaration from Katherine Tebrock, which matched comments made by Ms. Tebrock during the work-group process, as well as arguments contained in Defendants' August 1, 2018 letter to the Special Master. Plaintiffs do not object to Ms. Tebrock's declaration, asserting that they take no issue with testimony "provided to the Special Master for consideration informally . . . even if formalized later." (Mov. Br. at 2 fn. 1.)

This characterization applies equally to the Kuich Paragraph and Penn Rebuttal Declaration. Paragraph 11 of the Kuich Declaration simply describes the setup of a July 11, 2018 cell-front telepsychiatry demonstration at California Health Care Facility. (*See* ECF No. 5879-2 ¶ 11.) Plaintiffs' counsel and the Special Master attended and participated in this demonstration, as described in the Kuich Paragraph. And, the discussion of sound-quality issues in the Kuich Paragraph is substantially similar to comments made by CDCR staff and representatives during the demonstration, which were heard by the Special Master's and Plaintiffs' representatives. For Plaintiffs to now claim that the content of this paragraph is somehow "new" and was not "provided to the Special Master for consideration informally" is disingenuous.

Likewise, the Penn Rebuttal Declaration supports and amplifies the informal objections and arguments Defendants made to the Special Master. The Penn Rebuttal Declaration fleshes out the

7

Defs.' Opp'n. Pls.' Mot. Strike (2:90-cv-00520 KJM-DB (PC))

critiques of the Dr. Stewart report set forth in Defendants' August 1, 2018 letter. (*See* ECF No. 5873-5 at 17-21.) For example, Dr. Penn rebutted Dr. Stewart's declaration in several ways, including that: (1) Dr. Stewart misrepresented the scientific literature regarding telepsychiatry, which is widely accepted as a safe and beneficial treatment modality in correctional settings; (2) Dr. Stewart is not qualified to opine on telepsychiatry generally or in the correctional setting; and (3) contrary to Dr. Stewart's opinion, telepsychiatry is appropriate for higher levels of care and in-patient settings and should not be limited to routine encounters. (ECF No. 5879-3 (Penn Rebuttal Report) at 1-3.) Defendants' August 1, 2018 letter made these same critiques, arguing that Dr. Stewart's report lacked foundation and failed to support his argument that telepsychiatry should be limited to low-level cases (ECF No. 5873-5 (August 1 letter) at § VIII(A)), misrepresented scientific literature (*id.* at § VIII(B)), failed to support a recommendation to limit the use of telepsychiatry for cell-front applications (*id*. at § VIII(C)), and that Dr. Stewart is not qualified to opine regarding telepsychiatry. (I*d*. at § VIII(D)).

Plaintiffs do not and cannot claim to be surprised that Defendants' properly retained and disclosed expert, Dr. Penn, disputed Dr. Stewart's qualifications to opine on telepsychiatry, and the faulty analysis contained in his report. Nor can Plaintiffs credibly dispute that Defendants submitted a rebuttable expert report timely under the Federal Rules. *See* Fed. R. Civil P. 26(a)(2)(D).

Plaintiffs' motion to strike should be denied because Defendants' evidence covers the same ground as previous discussions between the parties and the Special Master.

> **B. Plaintiffs Cannot Show Any Prejudice from Receiving the Penn Rebuttal Declaration and Kuich Paragraph on August 13, 2018 Rather Than On August 2, 2018.**

Plaintiffs' motion to strike should also be denied because there is no prejudice to Plaintiffs arising from Defendants' presentation of evidence on August 13, 2018 (ECF No. 5879), rather than on August 2, 2018 (ECF No. 5872).

Plaintiffs assert that Defendants' filings "had the effect of depriving Plaintiffs of any opportunity to address or respond to the new evidence, including Defendants' expert's sustained attack on Plaintiffs' expert report." (Mov. Br. at 2:19-21.) This statement is inaccurate for two

8

reasons. First, Dr. Penn's Declaration is a rebuttal report, and therefore called for no further response. Second, even if Defendants had served the Penn Rebuttal Declaration and Kuich Paragraph with their August 1, 2018 letter, Plaintiffs do not identify what "opportunity" to respond they purportedly lost. Plaintiffs could not have addressed the declarations until after the Special Master's report was filed on August 2, 2018. Plaintiffs could have filed a substantive response to Defendants' objections, including the Penn's Rebuttal Declaration.[2] But Plaintiffs failed to do so.[3] Instead, they seek to strike Dr. Penn's Rebuttal Report and the Kuich Paragraph based on a stretched interpretation of statements made in open court that have no support in any enforceable court order.

## CONCLUSION

Plaintiffs' motion to strike should be denied because: (1) nothing in the Federal Rules of Civil Procedure or any order of this Court prohibited Defendants' from submitting the Penn Rebuttal Report and Kuich Declaration; (2) Defendants are entitled to respond to Plaintiffs' undisclosed expert report; (3) there is no "new" evidence to strike; and (4) Plaintiffs have suffered no prejudice based on Defendants' August 13, 2018 filing.

Dated: September 5, 2018   Respectfully submitted,

XAVIER BECERRA
Attorney General of California
ADRIANO HRVATIN
Supervising Deputy Attorney General


*/s/ Tobias G. Snyder*
TOBIAS G. SNYDER
Deputy Attorney General
*Attorneys for Defendants*

CF1997CS0003, 42043011.docx

---

[2] The Special Master filed his report on August 2, 2018. Per Federal Rule of Civil Procedure 53(f), the parties had 21 days to object to his report, or until August 23. Defendants filed their objections on August 13, 2018, leaving Plaintiffs with ten days to file a response to the Special Master's report, at which time they could have included a sur-rebuttal to the Penn Rebuttal Declaration.

[3] The parties have regularly filed responses to objections to the Special Master's reports. For example, Plaintiffs filed a response to Defendants' objections to the Special Master's 2017 staffing report. (*See* ECF No. 5603.)

9

Defs.' Opp'n. Pls.' Mot. Strike (2:90-cv-00520 KJM-DB (PC))

# CERTIFICATE OF SERVICE

Case Name:   **Coleman v. Brown, et al.,**       No.   **2:90-cv-00520 KJM-DB (PC)**

I hereby certify that on September 5, 2018, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE DEFENDANTS' EVIDENCE IN SUPPORT OF DEFENDANTS' AUGUST 12, 2018 OBJECTIONS TO THE SPECIAL MASTER'S PROPOSED TELEPSYCHIATRY POLICY**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on September 5, 2018, at San Francisco, California.

|  |  |
|---|---|
| R. Caoile | /s/ R. Caoile |
| Declarant | Signature |

CF1997CS0003
42043044.docx