XAVIER BECERRA
Attorney General of California
MONICA N. ANDERSON
Senior Assistant Attorney General
JAY C. RUSSELL
ADRIANO HRVATIN
Supervising Deputy Attorneys General
ELISE OWENS THORN, State Bar No. 145931
ANDREW GIBSON, State Bar No. 244330
TYLER V. HEATH, State Bar No. 271478
IAN MICHAEL ELLIS, State Bar No. 280254
TOBIAS B. SNYDER, State Bar No. 289095
Deputy Attorneys General
  1300 I Street, Suite 125
  P.O. Box 944255
  Sacramento, CA  94244-2550
  Telephone:  (916) 324-4921
  Fax:  (916) 324-5205
  E-mail:  Elise.Thorn@doj.ca.gov
*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **RALPH COLEMAN, et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**EDMUND G. BROWN JR., et al.,**<br><br>Defendants. | 2:90-cv-00520 KJM-DB (PC)<br><br>**DEFENDANTS' REPORT ON THE STATUS OF THE IMPLEMENTATION OF THE CUSTODY AND MENTAL HEALTH PARTNERSHIP PLAN** |

Defendants submit this status report to address the Court's July 12, 2018 order that "within sixty days from the date of this order, defendants shall file a report with the court updating the status of implementation of the CMHPP [Custody and Mental Health Partnership Plan] at every institution that houses seriously mentally ill inmates."  (ECF No. 5852 at 5-6.)  The Custody and Mental Health Partnership Plan (Partnership Plan) was developed in response to a recommendation from the Special Master that the Court order "defendants and the Special Master

1

1   to meet and confer to discuss, consider, and develop strategies and initiatives to improve

2   collaboration between custody and mental health."  (ECF No. 5439 at 142.)  On August 9, 2016,

3   the Court adopted the Special Master's recommendation and ordered Defendants and the Special

4   Master to meet and confer to develop strategies and initiatives to improve collaboration at all

5   institutions where mentally ill inmates are housed."  (ECF No. 5477 at 9.)

6          The California Department of Corrections and Rehabilitation (CDCR) met the Court's

7   order and conferred with the Special Master and his team of experts over the past two years to

8   develop the Partnership Plan.  The Partnership Plan was designed to fully address the concerns

9   underlying the Court's August 9, 2016 order regarding culture and collaboration between mental

10  health and custody staff.  The *California Department of Corrections and Rehabilitation's Report*

11  *on the Custody and Mental Health Partnership Plan* and the final 2017 Partnership Plan are

12  attached to this status report.

13         CDCR has been implementing stages of the Partnership Plan since August 2017 under the

14  Special Master's supervision.  Indeed, CDCR has implemented various stages of the Plan at

15  thirteen of its institutions, also under the Special Master's supervision.  Notwithstanding the

16  parties' collaborative work on this issue over the last two years, on September 5, 2018, the

17  Special Master notified Defendants for the first time that the Partnership Plan is allegedly

18  deficient because it does not include training directed at the Correctional Clinical Case

19  Management System level-of-care programs.  Neither the Special Master nor Plaintiffs have

20  previously taken this position.  Nor were any new facts presented pertaining to Correctional

21  Clinical Care Management System programs that would warrant the expansion of the Partnership

22  Plan beyond its previously agreed-upon boundaries.

23         Defendants developed the Partnership Plan consistent with the Court's 2016 order and with

24  the Special Master's and Plaintiffs' input and supervision.  The purpose of the Partnership Plan

25  was to provide a comprehensive remedy to address the issues raised in the Special Master's

26  Twenty-Sixth Round Monitoring Report.  The attached plan is the full response to the August 9,

27  2016 order.  Significant resources have been spent in compliance with the Court's August 9, 2016

28  order on collaboration.  Given the size and complexity of California's correctional system, and

2

1    the lead times necessary to implement institutional changes, it is difficult for Defendants to

2    accommodate unnecessary last-minute changes to years-long improvement plans—especially

3    when these plans were developed under the supervision and at the direction of the Special Master.

4    Absent some showing of harm or that the Plan does not address the issues to be remedied,

5    additional resources should not be expended, and the Plan should be implemented as approved.

6    Dated:  September 10, 2018                              Respectfully submitted,

7
                                                            XAVIER BECERRA
                                                            Attorney General of California
8                                                           JAY C. RUSSELL
                                                            Supervising Deputy Attorney General
9

10                                                          */s/ Elise Owens Thorn*
                                                            ELISE OWENS THORN
                                                            Deputy Attorney General
11                                                          *Attorneys for Defendants*

12

13    CF1997CS0003

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>California Department of Corrections and Rehabilitation's Report on the
Custody and Mental Health Partnership Plan</u>

On July 12, 2018, this Court ordered that "within sixty days from the date of this order, defendants shall file a report with the court updating the status of implementation of the [Custody and Mental Health Partnership Plan] at every institution that houses seriously mentally ill inmates." (ECF No. 5852, Order, at pages 5-6.) The Partnership Plan, as developed over the last two years by the California Department of Corrections and Rehabilitation (CDCR) in conjunction with the Special Master, was designed to comprehensively address the concerns underlying the Court's August 9, 2016, order regarding culture and collaboration between mental health and custody staff. The Partnership Plan, its development, roll-out, and implementation, is described in detail below.

CDCR began regularly meeting with the Special Master in September 2016 and over the course of the next two years, consulted with members of his team to develop the Partnership Plan. Most recently, in accordance with this Court's order to "prepare…[this] report in consultation with the Special Master to ensure that the timeline is both achievable and consistent with the court's expectations," CDCR met with the Special Master and his team on September 5, 2018. (*Id.*) At that time, despite having been intimately involved with the development planning and implementation of the Partnership Plan for the last two years, the Special Master, for the first, time informed CDCR that in his view the Partnership Plan was deficient. Specifically, the Special Master notified CDCR that it would be required to implement some form of the Partnership Plan at each Correctional Clinical Case Management System (CCCMS) program[1].

CDCR disagrees with this late-stage assertion that a plan for the CCCMS programs is required to comply with the Court's orders or is necessary to remedy the issues identified in the Special Master's monitoring reports. This recommendation is especially unwarranted in light of the time and effort CDCR already expended to comply with the Court's order. CDCR stands by the Partnership Plan it negotiated with the Special Master and Plaintiffs prior to this recent turn of events. The Partnership Plan is designed specifically to respond to the concerns brought forward in the Special Master's monitoring reports by implementing a system focused on daily interdisciplinary communication, strong and visible leadership, and a well-trained and responsive staff. This last minute change in expectations hinders progress and underscores the need for clear benchmarks for compliance with this Court's orders.

　　1.　Development of the Partnership Plan

On August 9, 2016, the Court ordered Defendants to "meet and confer to discuss, consider, and develop strategies and initiatives to improve collaboration between custody and mental health at all institutions where mentally ill inmates are housed. The Special Master shall include plaintiffs in these meetings as appropriate. Strategies may include additional or modified trainings,

---

[1] Twenty-nine institutions have CCCMS programs.

enhanced communication, and leadership development. The goal of any training or change in methods of communication across disciplines should be developed with an eye toward long-term and sustainable cultural change. The court expects identification of a comprehensive strategy and the start of its implementation at the institutions where it is required within six months from the date of this order." (ECF no. 5477, Order, at page 9.)

Shortly after the Court's August 2016 order, CDCR began its development of the Custody and Mental Health Partnership Plan (Partnership Plan). The Partnership Plan was developed in order to fully comply with the Court's order as well as to address the Special Master's findings in his Twenty-Sixth Round Monitoring Report, which the August 9, 2016 order adopted.

In September 2016, CDCR began discussing the development of the Partnership Plan during all-parties' workgroups as well as in private discussions between CDCR and the Special Master team.[2] At that time, CDCR provided a project plan for the development of the Partnership Plan to the Special Master and Plaintiffs. In October 2016, in furtherance of the Court's order, CDCR provided the Special Master and Plaintiffs with a proposed modification to the custody officer post orders for officers assigned to Enhanced Outpatient Program units. At that time, CDCR also provided Plaintiffs' and the Special Master with a draft mission statement and a list of lesson plans for institutional training.[3]

Subsequent to further good faith negotiations, CDCR presented the draft Partnership Plan, along with lesson plan outlines, to the Special Master and Plaintiffs in January 2017. Between January and April 2017, CDCR shared revised lesson plans with the Special Master and Plaintiffs and incorporated their feedback into the final product. In April 2017, CDCR began working with its Office of Training and Professional Development to develop formal lesson plans and instructions. CDCR provided the Special Master and Plaintiffs with a final draft of its Partnership Plan and lesson plans in June 2017 in advance of the July 2017 executive kickoff. At no time during these negotiations did the Special Master ever indicate that the Partnership Plan should be expanded to CCCMS programs.

The final plan requires training for local Partnership Plan facilitators, increased executive oversight via monthly joint rounding of mental health programs, quarterly multi-discipline trainings/ round tables, staff huddles, and an orientation group for new Enhanced Outpatient Program patients. As made clear in the Partnership Plan, the elements of the Partnership Plan were to be rolled out for staff working in Enhanced Outpatient Program (EOP) mainlines, EOP administrative segregations, Psychiatric Services Units, Mental Health Crisis Beds, Short Term

---

[2] Between the Court's August 9, 2016, order and finalization of the Partnership Plan in late 2017, CDCR presented its status and engaged in negotiations during all parties workgroups at least nine times: August 16, 2016, September 27, 2016, October 25, 2016, December 6, 2016, January 19, 2017, February 16, 2017, June 19, 2017, July 10, 2017, and September 14, 2017.

[3] The training lesson plans are presented during on-the-job-training sessions at institutions that have implemented the Partnership Plan and touch on more than two dozen issues which include, but are not limited to, the roles of custody and mental health staff, de-escalation, confidentiality, and team dynamics and communication skills.

Restricted Housing units, and Long Term Restricted Housing units. Accordingly, staff working at these programs in twenty-three institutions would participate in the plan. [4]

Following this development and good faith negotiation period, the Special Master and Plaintiffs approved of CDCR's Partnership Plan. In reliance on this approval and in order to comply with the Court's August 9, 2016, order, CDCR set out to implement the plan at twenty-three institutions per its agreement.

   2.   Roll Out at Pilot Institutions and Subsequent Modifications

On July 12, 2017, CDCR held an executive kickoff meeting with leadership from the first four institutions chosen to pilot the Partnership Plan[5]. The kick-off was attended by Plaintiffs' counsel and the Special Master team. Those four institutions received Training for Trainers (T4T) instruction between July and October 2017. Members of the Special Master team attended each of these trainings and again provided feedback. Based on this feedback, CDCR modified the T4T and lesson plans prior to rolling out the Partnership Plan to additional institutions. At no time during this training did the Special Master team indicate that the Partnership Plan should be expanded to CCCMS programs.

While institutions generally begin implementing the complete plan within sixty-days of T4T, as discussed in section three below, the four pilot institutions were directed to begin implementation in late November 2017 so that CDCR could incorporate feedback into the final Partnership Plan.[6] The final plan is attached as Exhibit A.

   3.   Implementing the Plan

After the completion of T4T, CDCR evaluates an institution's ability to implement the rest of the Partnership Plan and issues an "Implementation Memo" for each institution that has received T4T. The memo is attached to a template local operating procedure which is generally provided to the institution within two weeks of T4T. The memo directs the institution to create a Partnership Plan local operating procedure and requires that it be submitted to headquarters within thirty days.

Typically, joint executive rounding begins the same month that the institution submits its local operating procedure. Executive rounding is an element of the Partnership Plan which requires that at least one custody executive, such as the warden, and one mental health executive, such as the chief of mental health, jointly tour mental health programs within their institutions at least

---

[4] The development of the Partnership Plan, its elements, and roll-out progress were also described in the Special Master's Twenty-Seventh Round Monitoring Report. (See ECF no. 5779 at pages 83 et seq.)
[5] California State Prison, Los Angeles, Central California Women's Facility, California Institution for Women, and California State Prison, Sacramento
[6] Although it has implemented a few elements of the Partnership Plan, California State Prison, Sacramento, will receive new T4T in late 2018 as it was not deemed ready to implement the entire plan following its September 2017 T4T.

monthly.[7]  This joint rounding helps provide leadership visibility to all staff and inmates as well as ensures that leadership is aware of program issues that might not otherwise be brought to their attention.  Joint rounding includes tier walks, confidential interviews with staff, and other information gathering in order to assess the extent of any issue that negatively impacts the functioning of the program.

Simultaneously, institutions begin holding daily huddles in each mainline Enhanced Outpatient Program, Psychiatric Services Units, and Mental Health Crisis Beds.  CDCR also requires that huddles take place at Long Term and Short Term Restricted Housing units.  Huddles were already required in Administrative Segregation EOP units.  Mental health and custody staff are required to participate in these daily huddles.  The huddles are mechanisms to share information with staff about the program and to address immediate inmate-specific issues that arise.

Quarterly roundtable on-the-job-training, another element of the Partnership Plan, usually begins the same or the next month that an institution submits a local operating procedure for approval.  At these quarterly meetings, lesson plans focusing on collaboration, communication and working with inmates with mental illness are presented.  Staff working in the EOP mainline, EOP administrative segregation units, Psychiatric Services Units, crisis beds, psychiatric inpatient units, Long Term Restricted Housing units, and Short Term Restricted Housing units, receive these quarterly trainings.  The trainings are jointly attended by custody and mental health staff (nursing staff are optional attendees) who work together in their respective units.  CDCR has designed eight distinct lesson plans that cover over two dozen topics to be presented at these quarterly meetings over the next few years.

Finally, the Partnership Plan requires institutions to provide the Enhanced Outpatient Program orientation group for all new patients in the Enhanced Outpatient Program.  The group curriculum is in its final stages of development.  Once institutions receive training, institutions will select group clinical and inmate facilitators and begin scheduling groups.

    4.  Status of Partnership Plan Implementation

CDCR has, in good faith, relied on the feedback and recommendations of the Special Master team as it has developed and rolled out the Partnership Plan over the past two years.  CDCR is in the process of providing training and implementing the Partnership Plan at the twenty-three institutions with EOP, crisis beds, or mental health segregation units.  The roll-out schedule for the twenty-three institutions is attached (Exhibit B).  Following the 2017 T4T of the four pilot institutions, CDCR began T4T again in January 2018.  To date, thirteen institutions have received T4T.[8]  Those thirteen are in various stages of implementing the other elements of the

---

[7] Mental health programs that must be visited at least annually include Enhanced Outpatient Programs, Administrative Segregation Enhanced Outpatient Programs, Psychiatric Services Units, Mental Health Crisis Bed Programs and Short Term and Long Term Restricted Housing units.
[8] This includes California State Prison, Sacramento which will receive re-training in December 2018.

Partnership Plan[9].  The ten remaining institutions with EOP, crisis beds, or mental health segregation units, will receive T4T by the end of 2018.[10]  Members of the Special Master team have attended nearly all of the T4Ts.

As discussed in section three, above, all of these institutions will be required to issue an operating procedure and begin implementing the plan within a few months of completing T4T. The remaining institutions that receive T4T in December 2018 should be fully implementing the Partnership Plan by the end of the March 2019.

Enhanced Outpatient Program orientation groups are slated to begin by the end of 2018. Curriculum is being finalized and training is scheduled to begin in October 2018.  Institutions that have completed their operating procedure may schedule the group in their next scheduled group training block, which is updated quarterly.

The Partnership Plan, its implementation, and roll out schedule have been developed in consultation with the Special Master team.  CDCR has been transparent about their plan and the roll-out process and has relied on feedback and approval from the Special Master and Plaintiffs as they rolled the Partnership Plan out across the EOP, crisis bed, and mental health segregation programs in CDCR.  The roll-out schedule necessarily takes into account other initiatives in which CDCR is engaged, including the ongoing monthly Enhanced Outpatient Program population review, transfer of inpatient beds to CDCR, suicide prevention initiatives, sustainable process, all parties workgroups on myriad topics such as inpatient timeframes and staffing, and CDCR self-monitoring tours.

5.  Expanding the Partnership Plan to Correctional Clinical Case Management System Programs

On September 5, 2018, CDCR was first informed that the scope of the Partnership Plan was deficient because it did not include the CCCMS programs.  The Special Master's last-minute recommendation, in light of years of regular discussion and collaboration, is not well taken. Despite two years of close consultation, including feedback provided by the Special Master team following each draft of the Partnership Plan, its lesson plans, and T4Ts, CDCR was never informed that the plan was deficient with respect to CCCMS programs.  Nor was CDCR

---

[9] In addition to California State Prison, Los Angeles, Central California Women's Facility, California Institution for Women, and California State Prison, Sacramento, T4T has been provided at San Quentin, R.J. Donovan Correctional Facility, Salinas Valley State Prison, Valley State Prison, Substance Abuse Treatment Facility, California Healthcare Facility, Mule Creek State Prison, California Men's Colony, and Kern Valley State Prison. All thirteen of these Enhanced Outpatient Program institutions are in various stages of implementing the Partnership Plan.

[10] California Medical Facility will receive training in November 2018.  Wasco State Prison, North Kern State Prison, Pleasant Valley State Prison, California Institution for Men, California State Prison, Corcoran, High Desert State Prison, California State Prison, Solano, Pelican Bay State Prison, and Deuel Vocational Institution will tentatively receive T4T in December.

informed on September 5, 2018, of any new facts pertaining to CCCMS programs that would warrant the expansion of the Partnership Plan beyond its previously agreed upon boundaries.

The Partnership Plan is sufficient to achieve compliance with the court's August 9, 2016 order. The successful development of the plan was detailed in the 27th Round Monitoring Report.  (See ECF no. 5779 at pages 87-92.)  The monitoring report outlines the process that lead to the development of the Partnership Plan.  The report states, in part, that "[b]etween January and July of 2017, the workgroup developed the Custody and Mental Health Partnership Plan ("Partnership Plan").  The multi-faceted partnership strategy was designed to advance cultural collaboration between mental health and custody staff, with the goals of facilitating access, and delivering adequate mental health care to *Coleman* class members, with an ultimate goal of accomplishing sustained cultural change."  (*Id*. at pages 87-88, footnote omitted.)  The report continues by discussing each element of the plan while also noting which mental health programs would implement them.  Notably, the only criticism of the Partnership Plan was the pace of its roll-out.  (*Id*. at pages 91-92.)  At no point in the 27th Round Monitoring Report was the plan's scope noted to be deficient.

CDCR objects to this last minute notification that the Partnership Plan is deficient, especially in light of the significant resources CDCR has expended in the development of this plan and the close consultations with the Special Master's team over the past two years.  The Partnership Plan is sufficient to remedy the concerns noted by the Special Master's monitoring report and the Court's August 9, 2016 and July 12, 2018 orders.  Accordingly, CDCR will continue to roll out and implement the Partnership Plan as it was negotiated and developed for two years in consultation with the Special Master and Plaintiffs.  As this situation makes clear, Defendants have not been provided with clear benchmarks to measure compliance.  Without clear, timely, and unambiguous benchmarks, this action cannot be brought to resolution.

# Exhibit A

California Department of Corrections and Rehabilitation
Custody and Mental Health Partnership Plan
September 6, 2017

CDCR recognizes that a collaborative partnership between custody and mental health staff is necessary to facilitate access to care and maintain an environment supportive of inmates' treatment goals, particularly in mental health settings.

A detailed plan has been developed to enhance this collaboration and proposes mission and vision statements encompassing the purpose of the Custody and Mental Health Partnership. There are several facets to this plan, including Executive Leadership Rounding, Quarterly Partnership Round Tables to include Staff Training, and Jointly Led EOP Orientation Groups.

## I.  **Mission, Vision, and Values**

As a first step, CDCR created custody and mental health partnership mission and vision statements that emphasize the need for collaborative relationships and communications.  The various CDCR, Mental Health Program and Custody and Mental Health Partnership mission, vision and values (where applicable) statements are presented below. The CDCR and CDCR Mental Health Program existing statements already include elements of collaboration, partnership, and professionalism consistent with the Partnership statement. The Partnership mission and vision statements complement the existing mission and vision statements, but highlight the need for collaboration and communication.

   A.  CDCR Vision, Mission, Values and Goals

Vision

With our partners, we protect the public from crime and victimization.

Mission

We enhance public safety through safe and secure incarceration of offenders, effective parole supervision, and rehabilitative strategies to successfully reintegrate offenders into our communities.

Values

Service: We serve and are responsible to the public. We value their trust and invite their involvement.

Leadership: We serve as positive role models and foster an environment that supports a balance between professional development, professional job performance, and personal wellness.

Integrity: We conduct ourselves professionally through fair, honest, and ethical behavior. We have the courage to do what is right, even in the face of adversity.

Accountability: We accept responsibility for our actions and decisions as well as their consequences.

1

Respect: We respect each other's differences and treat others with courtesy, dignity, and consideration.

Trust: We are people of character. We keep our word and honor our commitments.

Collaboration: We work with our stakeholders as partners to support mutual understanding of ideas and open exploration of our differences.

B.  CDCR Mental Health Program Mission and Vision Statement

<u>Mission</u>

To provide ethical, professional, and effective mental health care services for individuals remanded to the California Department of Corrections and Rehabilitation.

<u>Vision</u>

Our services meet or exceed national mental health care standards. We ensure optimal functioning of individuals in our care and promote their successful reintegration into society by using research, evaluation and assessment to develop and enhance evidence-based treatment strategies. We foster safe and secure environments within the institution and are committed to public safety.

We are a competent, well-trained staff, who uphold and live our organizational values to promote interdisciplinary cooperation, employee wellness, effective leadership, humane treatment, and a highly productive workforce.

Self-governance, program and service evaluation, assessments, and continuous self-monitoring are used to ensure quality improvement and system-wide, multi-level information sharing and decision making. Our information technology system is state of the art and staffing and space meet evolving operational requirements.

We are an accredited program, cooperating and partnering with external stakeholders to sustain sufficient funding to fulfill our mission and to minimize recidivism by providing continuity of care.

C.  Custody and Mental Health  Partnership Vision and Mission Statements

<u>Vision</u>

The CDCR environment is a partnership based upon humane behavior, professionalism, respect and courtesy that promotes tolerant and appropriate conduct toward staff and inmates.

<u>Mission</u>

A partnership between mental health and custody staff that results in the delivery of quality mental health services in a safe and secure manner, improving institutional operations and patient care.

2

## II. Executive Leadership

CDCR recognizes organizational change can only occur if driven by the highest levels of executive leadership. Not only must leaders embrace the principles of organizational change, they must model and communicate the behaviors expected from all staff. To that end, CDCR and California Correctional Health Care Services have developed several strategies to ensure the endorsement and support for organizational change from top leadership is conveyed to all staff.

A. Joint Rounding

Institution leadership, to include the Warden, Chief Deputy Warden, Chief Executive Officer, Chief of Mental Health and the Chief Nurse Executive, engages in joint rounding of mental health programs. The configuration of staff who will round together, and the program(s) selected to be rounded, will depend on institutional need. The purpose of rounding is twofold: 1. Joint rounding provides visibility to all staff and inmates, ensuring that the custody and healthcare/mental health partnership is recognized and valued. 2. Joint rounding facilitates awareness of program issues that might not otherwise rise to the level of top leadership knowledge, ensures inmates have a direct voice to leadership and allows these problems to be addressed and solved expeditiously.

1. Frequency

Joint rounding shall occur no less frequently than monthly. However, more frequent rounding is encouraged. All rounds should be unannounced.

2. Program Selection

It is expected that institutions will round on those programs that program metrics, informal reports and/or complaints, or other information suggest need particular attention from leadership. In addition, Enhanced Outpatient Programs (EOP), Administrative Segregation Enhanced Outpatient Programs (EOP Hubs), Psychiatric Services Units (PSU), Mental Health Crisis Bed (MHCB) Programs and Short Term Restricted Housing (STRH) and Long Term Restricted Housing (LTRH) programs shall receive a round at least annually.

3. Staff Conducting Rounds

At least one custody and one health care representative must conduct the monthly rounds. Designees may not be substituted to conduct rounding. Which specific staff conducts rounds will vary depending on the program challenges that have been identified.

4. Content of Rounds

Rounds consist of touring programs, including clinics, and asking both staff and inmates questions that assess the functioning of the program. Rounding should

include tier walks, confidential interviews with staff, and other information gathering activities designed to assess the extent of any issues impacting the functioning of the program. Examples of possible questions will be provided as a general guide but questions should be tailored to the issues a particular institution and/or program is confronting. In addition, physical plant issues should be examined.

5. Dissemination of Information

A summary of the programs rounded, critical topics identified through rounding, and identification of staff who rounded will be shared at the Executive Staff meeting (i.e., weekly Warden's Meeting), the institution Quality Management Committee and the Mental Health Subcommittee. Summaries may also be shared with the regional teams and headquarters staff. The topic of joint rounding will be included on the Executive Staff meeting agenda monthly.

B. Safe Reporting

CDCR's Code of Conduct (Department Operations Manual, Chapter 3, Article 22, Section 33030.1) instructs employees to report misconduct, or any unethical or illegal activity, and cooperate fully with any investigation. Consistent with the Department Operations Manual, Chapter 3, Article 14, Sections 31140.5 and 31140.9, any employee may report any form of misconduct, including discrimination and harassment, to a supervisor or manager. The February 17, 2004 memorandum titled "ZERO TOLERANCE REGARDING THE 'CODE OF SILENCE'" reinforces each employee's duty to safely report and remain free of retaliation per DOM, Chapter 3, Article 14, Section 31140.10. The California Whistleblower Protection Act (Government Code section 8547 et seq., also ensures safe reporting for staff.

These materials will be disseminated, as a complete package, to all staff. In addition, the regulations and policies will be addressed in training (see Training section below).

In addition, all staff may utilize the Health Care Incident Reporting System to report any incidents impacting patient safety. The Health Care Incident Reporting Form may be accessed through the CCHCS Quality Management Page, Patient Safety portal. The form is currently under revision.

## III. **Quarterly Partnership Round Table and Training**

Quarterly partnership round tables and training will occur with line staff, supervisors and managers. Detailed information about the round tables will be presented in subsequent sections. As an overview, round tables are designed to provide a structure for communication and exchange of information, to establish a joint and visible custody and mental health partnership in each program, and to plan and coordinate patient care activities and clinical operations with the goal of preventing lapses in care and improving patient outcomes. Partnership training will be accomplished through quarterly mental health, nursing and custody round table meetings held at the program level. Finally, issues, including program specific concerns, issues

concerning policy, and systemic issues that cannot be resolved at the lower levels are funneled to the Executive Leadership Meeting (Warden's meeting) for resolution. Concerns shall be elevated via a memorandum addressed to the Warden and Chief Executive Officer, requesting placement on the Executive Leadership Meeting agenda.  The memorandum shall include a description of the issue, steps the program has taken to attempt to resolve the issue, and results of those actions (Attachment 1).

A.  Huddles

Huddles that already occur in ASU EOP and MHCB will be expanded to mainline EOP, PSU, and STRH and LTRH units.  These meetings comprise custody and mental health staff, and nursing staff when available.

Designated mental health staff and custody leadership and line staff from each program will attend these huddles. Nursing staff will attend as able. Meetings are typically brief (10 to 20 minutes duration) in which high level and urgent inmate-patient issues are addressed. For example, discussion about mental health patients might include inmate-patients who had a medication change that could produce behavioral changes, who were observed engaging in unusual behavior (such as talking to a wall), whose cells are unhygienic, or who recently received bad news. The mental health huddle report will be developed to incorporate items specific to mental health and custody.

1.  Scripts

CCHCS currently uses "scripts" to guide the morning huddles. Mental health will develop scripts to elicit information relevant to mental health, nursing, and custody.

2.  Frequency and attendance.

Huddles occur daily on second watch on normal business days. Huddles in program areas will be attended by custody and mental health leadership and line staff. Nursing staff may attend as able.

Huddles will also occur daily on third watch on normal business days and will be attended by custody and mental health line staff. Nursing staff may attend as able.

On weekends and holidays, huddles will occur in MHCBs and will be attended by custody and mental health line staff.

At least once weekly, supervisors/managers/executives are in attendance. Institutions may determine the best mechanism to ensure supervisory and managerial staff participation.

B.  Quarterly Partnership Round Tables and Training

5

Two-hour Custody and Mental Health Partnership round tables and On-The-Job Training will occur quarterly on second and third watch in the EOP, EOP ASU, PSU, MHCB and STRH and LTRH programs. The round tables will occur separately by program to ensure training topics are relative and specific to each program, i.e., General Population EOP staff will meet separately from the staff working in the EOP ASU program. Programs will not schedule the training during the same week. On-The-Job-Training (OJT) will be assigned a BET code and tracked by the local IST Manager The identified mental health program supervisors (i.e. sergeant and supervising psychologist) will work with the local IST Manager to schedule the program specific OJT Quarterly Round Table trainings consistent with either the existing facility OJT schedule, in lieu of a regularly scheduled staff meeting or training day, or by way of a program modification. Once scheduled, the IST manager will forward the Quarterly Round Table schedule for each program to the Regional Mental Health Compliance Team and the Regional Mental Health Administrator.

The training will be a modification of the Custody and Mental Health Collaboration that was developed and delivered in CDCR in 2010 – 2012. The lesson plans will be distinct, stand-alone lessons. OJT lessons will consist of brief presentations, followed by discussion topics, presentation of scenarios (institution generated when possible), and activities. In addition to the OJT lessons in the Custody and Mental Health Collaboration training, several additional lessons have been added. For example, there are new lessons on custodial procedures and team dynamics. A preliminary outline of the new training modules is attached (Attachment 1).

Lesson plans will be presented, sequentially, once per quarter over the course of two years, as follows:

1. Fourth quarter 2017 (October-December, 2017) OJT Lesson 1: Custody and Mental Health Partnership
2. First quarter 2018 (January-March, 2018) OJT Lesson 2: A Day in the Life of Custody; Mental Health Operations
3. Second quarter 2018 (April-June, 2018) OJT Lesson 3: Employee Conduct and Professionalism
4. Third quarter 2018 (July-September, 2018) OJT Lesson 4: Team Dynamics and Communication Skills
5. Fourth quarter 2018 (October-December, 2018) OJT Lesson 5: Effective Communication and De-escalation Strategies for Inmate-Patients with Mental Illness
6. First quarter 2019 (January-March, 2019) OJT Lesson 6: Boundaries and Confidentiality
7. Second quarter 2019 (April-June, 2019) OJT Lesson 7: Mental Illness, Staff Perceptions and Misrepresenting Symptoms
8. Third quarter 2019 (July-September, 2019) OJT Lesson 8: Goals of Mental Health Treatment in a Correctional Setting: Roles of Custody and Mental Health Staff in ICC/IDTT

The training objectives have also been refined and are presented below:

<u>Custody and Mental Health Training Objectives</u>

- List common custody and mental health goals
- Identify and support other discipline's missions
- Describe other discipline's perspectives and roles
- Address identified barriers to care and security
- Strengthen open and direct communication between disciplines
- Describe how effective mental health services improve institutional operations
- Minimize program disruption and crises
- Increase proactive problem solving
- Increase mental health staff awareness of custodial operations
- Increase custodial staff awareness of mental health issues and behaviors

Attendance

Program line staff (custody, mental health, group nurses and available nursing staff), program supervisors, and sergeants will attend. Lieutenants and captains may attend on a rotational basis.

For mental health staff, attendance at the Quarterly Round Tables is required for social workers, psychologists, psychiatrists and recreation therapists. The mental health program supervisor should determine which staff will attend on second watch and which will attend on third watch. If a mental health staff member is unable to attend the Quarterly Round Table due to leave or because the training was scheduled on a regular day off, that staff member will attend the Quarterly Round Table at another program in their institution, if one is available.

For custody staff, the sergeant will schedule the officers to attend the Quarterly Round Tables On-The-Job Training during the assigned shifts (both 2W and 3W) for the mental health escort and mental health housing unit staff within the identified mental health programs. If an officer is unable to attend the OJT Quarterly Round Table training due to regular day off or approved leave, they may also attend the OJT Quarterly Round Table training at another mental health program in their institution, if one is available during their shift.

C. Round Table Facilitators

Facilitators of the round tables and trainings will be each program's sergeants and mental health program supervisors. These supervisors will deliver the training modules and will serve as consultants to staff regarding the Partnership Model. They can also answer questions regarding safe reporting. Each institutions local In-Service Training (IST) department will schedule and track the quarterly round tables and provide quarterly reports of staff attendance to the regional teams.

D.  Messaging the Model

In order for the Custody and Mental Health Partnership to be successful, messaging will be critical.  The Model must remain at the forefront of awareness, emphasized in all meetings, and become a part of everyday business.

E.  Kick-off Training for Managers and Supervisors

A kick-off training for custody and mental health managers and supervisors and IST staff will be developed.  This training will be held locally at each institution. The first segment of training will introduce the new Custody and Mental Health Partnership Model. Additional topics include a review of relevant policies regarding safe reporting, retaliation, whistle blowing, peer pressure, and zero tolerance for reporting. The duty to report *each and every incident* of misconduct will be underscored.  A discussion of the types of behaviors that constitute misconduct, including more minor behaviors such as disrespectful comments, will be held. Best practices will be reviewed, with particular emphasis on reinforcement of appropriate staff behavior.  The second segment of training will include only the program supervisors (sergeants and mental health supervisors) and will focus on how to conduct the round tables, the training content, and how to facilitate training.

Regional Mental Health Administrators and Senior Psychologist, Specialists and Regional Lieutenants will also attend both segments.  When staff transfer between or leave programs, the regional staff will assume the task of training new supervisors. Utilizing regional staff to train new supervisors allows for sustainability of the program and permits training to occur rapidly as needed.

## IV. EOP Orientation Group

New EOP Orientation groups will be held for all inmates newly placed in EOP. Groups will be led by a sergeant, mental health clinician and an inmate. These groups are designed to help inmates better adjust to the EOP setting and to begin to develop skills to cope with issues commonly experienced in EOP.  In addition, group participants will establish a connection with staff and another inmate to whom they can turn if they experience difficulties early in their EOP stay. A workgroup consisting of institutional custody and mental health staff convened on September 1. This group identified key issues to include in the EOP Orientation curricula.

Custody and mental health staff also met with several of the EOP Inmate Advisory Council representatives to ensure inmate concerns were incorporated. A draft of the EOP Orientation curricula has been developed and is under review.

Beginning in January, 2018, custody and mental health staff will participate in a guidelines for group facilitator's session. Group facilitator sessions will be held at the regional offices (Southern and Northern). Attendees will be the EOP GP mental health and custody supervisors, a designated mental health clinician who will lead the groups, the mental health training coordinator, and the IST manager or designee. A separate training for the inmate group leaders will be delivered  by the custody and mental health trainers. Appropriate inmate trainers will be

identified by the IDTT's. Groups will begin in March, 2018 and will be held on a scheduled, ongoing basis and will count toward EOP treatment hours offered.

## V. **Implementation Plan**

A trial implementation of the Custody and Mental Health Partnership model will be conducted to determine the efficacy of the model and identify barriers to its full implementation. The following institutions have been selected for the initial phase:


Central California Women's Facility (CCWF)
California State Prison, Los Angeles County (LAC)
California Institution for Women (CIW)
California State Prison, Sacramento (SAC)

# Exhibit B

**Custody and Mental Health Partnership Plan Roll-Out**

| Participating Institutions | Partnership Plan Elements | | | | | |
|---|---|---|---|---|---|---|
| | T4T Date | Operating Procedure Completed | Executive Rounds Start Date | MH Program Huddles Start Date | Quarterly OJT Roundtable Lesson Plans Completed | Intro To EOP Groups |
| CCWF | 7/26-27/17 | 2/4/2018 | Feb-18 | Feb-18 | Lesson Plans 1 & 2 | TBD |
| CIW | 8/8-9/17 | 1/2/2018 | 2/6/2018 | Feb-18 | Lesson Plans 1, 2 & 3 | TBD |
| SAC | 9/19-20/17 | 1/2/2018 | 12/18/2017 | Dec-17 | TBD | TBD |
| LAC | 10/3-4/17 | 1/3/2018 | 12/17/2017 | Dec-17 | Lesson Plans 1 & 2 | TBD |
| SQ | 1/24-25/18 | 3/12/2018 | Feb-18 | Feb-18 | Lesson Plans 1 & 2 | TBD |
| RJD | 2/21-22/18 | 4/18/2018 | 3/23/2018 | Apr-18 | Lesson Plan 1 & 2 | TBD |
| SVSP | 3/26-27/18 | 5/11/2018 | 18-May | 18-May | Lesson Plan 1 | TBD |
| VSP | 4/17-18/18 | 6/26/2018 | Jun-18 | Jun-18 | TBD | TBD |
| SATF | 5/2-3/18 | 7/11/2018 | Jul-18 | Jul-18 | TBD | TBD |
| CHCF | 6/19-20/18 | 8/15/2018 | Sep-18 | TBD | TBD | TBD |
| MCSP | 7/18-19/18 | 8/30/2018 | TBD | TBD | TBD | TBD |
| CMC | 7/24-25/18 | TBD | TBD | TBD | TBD | TBD |
| KVSP | 9/5-6/18 | TBD | TBD | TBD | TBD | TBD |
| CMF | 11/6-7/18 | TBD | TBD | TBD | TBD | TBD |
| COR | Dec-18 | TBD | TBD | TBD | TBD | TBD |
| NKSP | Dec-18 | TBD | TBD | TBD | TBD | n/a |
| PVSP | Dec-18 | TBD | TBD | TBD | TBD | n/a |
| WSP | Dec-18 | TBD | TBD | TBD | TBD | n/a |
| CIM | Dec-18 | TBD | TBD | TBD | TBD | n/a |
| SAC (repeat) | Dec-18 | TBD | TBD | TBD | TBD | TBD |
| HDSP | Dec-18 | TBD | TBD | TBD | TBD | n/a |
| PBSP | Dec-18 | TBD | TBD | TBD | TBD | n/a |
| SOL | Dec-18 | TBD | TBD | TBD | TBD | n/a |
| DVI | Dec-18 | TBD | TBD | TBD | TBD | n/a |
| | | | | | | |