DONALD SPECTER – 083925
STEVEN FAMA – 099641
MARGOT MENDELSON – 268583
PRISON LAW OFFICE
1917 Fifth Street
Berkeley, California 94710-1916
Telephone: (510) 280-2621

CLAUDIA CENTER – 158255
AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF NORTHERN CALIFORNIA, INC.
39 Drumm Street
San Francisco, California 94111-4805
Telephone: (415) 621-2493

MICHAEL W. BIEN – 096891
JEFFREY L. BORNSTEIN – 099358
ERNEST GALVAN – 196065
THOMAS NOLAN – 169692
LISA ELLS – 243657
KRISTA STONE-MANISTA – 269083
JENNY S. YELIN – 273601
MICHAEL S. NUNEZ – 280535
JESSICA WINTER – 294237
MARC J. SHINN-KRANTZ – 312968
CARA E. TRAPANI – 313411
ROSEN BIEN GALVAN & GRUNFELD LLP
50 Fremont Street, 19th Floor
San Francisco, California 94105-2235
Telephone: (415) 433-6830

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>EDMUND G. BROWN, JR., et al.,<br><br>　　　　Defendants. | Case No. 2:90-CV-00520-KJM-DB<br><br>**PLAINTIFFS' SEPARATE STATEMENT RE: THE PARTIES' MEET AND CONFER IN RESPONSE TO COURT'S SEPTEMBER 7, 2018 MINUTE ORDER**<br><br>Judge: Hon. Kimberly J. Mueller |

1    In its September 7, 2018 Minute Order, ECF No. 5909, the Court "directed the parties to meet and confer re alternative language to describe the use of telepsychiatry at the Enhanced Outpatient Program (EOP) level of care and to present alternative language by the close of business on 9/12/2018." In teleconference calls on September 11 and 12, 2018, the parties met and conferred in consultation with the Special Master team, but were unable to reach agreement regarding the disputed language in the Special Master's proposed telepsychiatry policy, which states:

> Telepsychiatry may supplement on-site psychiatry at the EOP level of care but it should not replace on-site psychiatry. On-site psychiatrists are required for each program providing an EOP level of care consistent with the staffing ratios delineated in the 2009 Staffing Plan.

Ex. F to Special Master's Report on the Proposed Telepsychiatry Policy Addendum, ECF No. 5872-1 at 4 (Aug. 2, 2018).

During the meet and confer process, Plaintiffs offered various different phrasings to Defendants, all of which were rejected. Consistent with the discussions during the meet and confer process and this Court's minute order, Plaintiffs recommend that the Court adopt the following language for the anticipated provisional telepsychiatry policy:

> Telepsychiatry may supplement on-site psychiatry at the EOP level of care but it should not replace on-site psychiatry. On-site psychiatrists are required for each program providing an EOP level of care.

In removing the second clause of the second sentence of the Special Master's proposed language, Plaintiffs seek to obviate any ambiguity that could be read to support Defendants' claim that the Special Master's current recommended language could be read to require Defendants to hire psychiatrists in addition to what is required under Defendants' 2009 Staffing Plan. *See, e.g.*, Hr'g Tr., ECF No. 5915 at 8 (Sept. 7, 2018) ["9/7/18 Hr'g Tr."] ("We're [Defendants] not clear if what the Court is describing is another position in addition to what's already been provided for in the staffing plan."). As was made clear during the most recent meet and confer process, neither Plaintiffs nor the Special Master intended for the proposed language to require Defendants to augment psychiatry staffing beyond what is required in their Court-ordered staffing plan. Plaintiffs'

1
PLS.' STATEMENT IN RESPONSE TO COURT'S SEPTEMBER 7, 2018 MINUTE ORDER

[3297703.3]

proffered modification, which was shared with, and rejected by, Defendants during the most recent meet and confer process seeks to effectuate that intent. Moreover, while Plaintiffs are amenable to the revised proposal set forth above if it alleviates Defendants' concern regarding what is required under the 2009 Staffing Plan, Plaintiffs submit that the Special Master's above-quoted language, ECF No. 5872-1 at 4, is clear without further modification. The current language simply reinforces the guiding principle set forth by the Court in its October 10, 2017 Order, and subsequently reiterated, requiring that "telepsychiatry should serve as a supplement, rather than as a substitute, for on-site psychiatry." *See* Order, ECF No. 5711 at 8-10, 23, 30 (Oct. 10, 2017); *see also* Order, ECF No. 5850 at 4-5 (July 3, 2018). Reasonably cabining, but not prohibiting, the use of telepsychiatry for treating EOP class members by ensuring telepsychiatry does not eclipse on-site psychiatric care in this manner is consistent with this Court's adoption of the Special Master's finding that reliance on telepsychiatry is less appropriate the higher a patients' mental health acuity. *See* Special Master's Report on the Status of Mental Health Staffing, ECF No. 5564 at 16 (Feb. 6, 2017); *see also* Order, ECF No. 5711 at 29 (Oct. 10, 2017) (adopting findings from Special Master report).

Defendants neither appealed the October 10 order, nor secured a stay. And the current record, including the Special Master's most recent findings and Plaintiffs' expert's report, more than adequately supports the continued wisdom of the Court's October 10 order, particularly given this Court's signaled intent to move forward provisionally subject to further development and monitoring over a modest period of time. Indeed, the language currently set forth in the Special Master's proposed policy is appropriately deferential to Defendants, allowing them to operationalize this language consistent with the Special Master's findings and the Court's order that "telepsychiatry should serve as a supplement, rather than as a substitute, for on-site psychiatry." As part of the forthcoming provisional monitoring contemplated by the Court, 9/7/18 Hr'g Tr. at 18; Tentative Order, ECF No. 5907 at 9 (Sept. 6, 2018), the Special Master will closely monitor this process and entertain modifications as appropriate based on various indicators of adequate care, including those

set forth in the proposed policy. *See* ECF No. 5872-1 at 9.

Indeed, as Defendants' monthly filings with this Court make clear, Defendants currently have the on-site psychiatry staff necessary to operationalize this provision of the Special Master's proposed policy. Contrary to Defendants' counsel's mistaken representation at the hearing on September 7, 2018, Defendants have on-site psychiatrists at every institution where they have an EOP program, including general population, reception center, and EOP administrative segregation hubs. *Compare* Defs.' Monthly Psychiatry Vacancy Report, ECF No. 5900 at 5 (Aug. 31, 2018) (showing the following on-site staff and contract psychiatrists at each prison with an EOP: 6.5 at CCWF, 7.8 at CHCF, 11.0 at CIM, 5.3 at CIW, 17.8 at CMC, 14.3 at CMF, 8.6 at COR, 4.0 at DVI, 4.5 at KVSP, 10.9 at LAC, 11.9 at MCSP, 5.6 at NKSP, 12.4 at RJD, 18.1 at SAC, 4.9 at SATF, 11.0 at SQ, 6.1 at SVSP, 1.0 at VSP, and 4.9 at WSP), *with* 9/9/17 Hr'g Tr. at 18:25-19:5 ("I mean, so for example, if the requirement, whether we were able to agree on language or not, is that there does have to be an on-site psychiatrist in any institution that operates an EOP facility that that day Valley State Prison and Kern Valley State Prison would have to close."). Defendants' apparent decision to assign their on-site psychiatrists to treat CCCMS class members, and to treat the EOP class members at those prisons purely via telepsychiatry, both flouts this Court's October 10 order requiring telepsychiatry to supplement on-site care for acutely ill EOP class members and fails to take sufficient advantage of the Court's clear and unlimited mandate permitting Defendants to immediately treat all CCCMS class members via telepsychiatry. Order, ECF No. 5711 at 8-10, 23, 30 (Oct. 10, 2017); Order, ECF No. 5850 at 5 (July 3, 2018).

Further, Defendants made abundantly clear during the meet and confer that their proposed alternative language would gut the core of Court's October 10 and July 3 orders with respect to the EOP level of care:

> Telepsychiatry may supplement on-site psychiatry at the EOP level of care but it should not replace on-site psychiatry. ~~On-site psychaitrists are required for each program providing an EOP level of care consistent with the staffing ratios delineated in the 2009 Staffing Plan.~~ <u>At least one on-site psychiatrist is required for each institution that houses EOP inmates, with that on-site psychiatrist dedicated to</u>

3

<u>the EOP program at the institution and not to any other level of care that might be operating at the same institution.</u>

When asked how they would interpret the phrase "at least one" in their proposal, Defendants stated that this language would only require Defendants to maintain one on-site psychiatrist at each EOP institution, regardless of the program's size. At an institution such as RJD, which houses over 1,000 EOP patients, retaining a single on-site psychiatrist and permitting the remaining seventeen allocated psychiatry positions to be filled by telepsychiatry would render that on-site psychiatrist a mere token. *See* Defs.' Monthly Psychiatry Vacancy Report, ECF No. 5900 at 5 (Aug. 31, 2018). Defendants' proposal would eviscerate the meaning of "supplement," and flies in the face of the Special Master's findings, and this Court's orders, recognizing that EOP class members are acutely ill and require a residential level of care at which it has not been established that telepsychiatry is appropriate as the predominant treatment milieu.[1]

Plaintiffs agree with the Court's statement at the hearing that "monitoring [is] the appropriate way to fine tune telepsychiatry's adequacy." 9/9/17 Hr'g Tr. at 21. Given that "defendants shall proceed forthwith wi[th] full implementation of telepsychiatry at the CCCMS level of care," Order, ECF No. 5850 at 5 (July 3, 2018), CDCR currently employs more than enough on-site psychiatrists to operationalize the Court's requirement that "telepsychiatry should serve as a supplement, rather than as a substitute, for on-site psychiatry." *See* Order, ECF No. 5711 at 8-10, 30 (Oct. 10, 2017). If staffing rates

---

[1] Consistent with Plaintiffs' pending motion to strike, Defendants' continued attempts to pad the record with new evidence at this late stage borders on the outrageous and should not be countenanced. The newest declaration of Katherine Tebrock filed with Defendants' separate statement, ECF No. 5920 at 9-12, like the evidence Plaintiffs have moved to strike already, attempts to introduce testimony that could have been presented to the Special Master in advance of his report filed with this Court, but was not. It also could have been included in Ms. Tebrock's first declaration filed August 13, 2018 concerning the exact same Special Master August 2, 2018 report, and containing the same proposed language at issue in the instant dispute. ECF No. 5879-4. This Court did not invite additional evidence in its September 7 minute order or the hearing presented the same day. The newest Tebrock declaration should be stricken, or Plaintiffs should be provided with an opportunity to respond.

fluctuate from their current level, Plaintiffs have indicated to Defendants their intent to work together closely with Defendants and the Special Master to address those issues as they arise during the anticipated provisional monitoring period.

DATED: September 12, 2018

Respectfully submitted,

ROSEN BIEN GALVAN & GRUNFELD LLP

By: */s/ Cara E. Trapani*
    Cara E. Trapani

Attorneys for Plaintiffs