IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BEFORE THE HONORABLE KIMBERLY J. MUELLER, JUDGE

RALPH COLEMAN, et al.,

                    Plaintiffs,
vs.                              Sacramento, California
                                 No. 2:90-CV-0520 KJM
EDMUND G. BROWN, JR.,            Wednesday, October 10, 2018
et al.,                          11:00 a.m.

                    Defendants.
_____/


                    ---o0o---

REPORTER'S TRANSCRIPT OF PROCEEDINGS
            RE: STATUS CONFERENCE

                    ---o0o---


APPEARANCES:

For Plaintiffs:         ROSEN BIEN GALVAN & GRUNFELD LLP
                        MICHAEL BIEN, Attorney At Law
                        LISA ELLS,  Attorney At Law
                        JEFFREY BORNSTEIN, Attorney At Law
                        50 Fremont Street, 19th Floor
                        San Francisco, CA  94105


(Appearances continued on page 2.)

Reported by:  CATHERINE E.F. BODENE, CSR #6926, RPR
              Official Court Reporter USDC, 916-446-6360
              501 I Street, Room 4-200
              Sacramento, California  95814


TRANSCRIPT PRODUCED BY COMPUTER-AIDED TRANSCRIPTION

```
1                        APPEARANCES CONTINUED

2                             ---o0o---

3

4    For the Defendants:      OFFICE OF THE ATTORNEY GENERAL
                              ANDREW GIBSON, Deputy AG
5                             600 West Broadway, Suite 1800
                              San Diego, CA  92101
6
                              OFFICE OF THE ATTORNEY GENERAL
7                             JAY RUSSELL, Supervising Deputy AG
                              455 Golden Gate Avenue, Suite 11000
8                             San Francisco, CA  94102

9                             OFFICE OF THE ATTORNEY GENERAL
                              MISHA IGRA, Supervising Deputy AG
10                            ELISE THORN, Deputy AG
                              TYLER HEATH, Deputy AG
11                            1300 I Street
                              Sacramento, CA  95814
12

13   For California           CALIFORNIA DEPARTMENT OF CORRECTIONS &
     Dept. of Corrections     REHABILITATION
14   & Rehabilitation:        PATRICK R. MCKINNEY, II, Atty. at Law
                              1515 S Street, Suite 502-S
15                            Sacramento, CA  95811

16

17   For Office of the        OFFICE OF GOVERNOR
     Governor:                EDMUND G. BROWN, Jr.
18                            Legal Affairs
                              GABRIEL SANCHEZ, Attorney At Law
19                            State Capitol
                              Sacramento, CA  95814
20

21

22   (Telephonic Appearances continued to page 3.)

23

24

25                            ---o0o---
```

```
 1                    TELEPHONIC APPEARANCES

 2                         ---o0o---

 3

 4   Special Master:          PANNONE LOPES DEVEREAUX & O'GARA LLC
                              MATTHEW A. LOPES, JR., Atty. At Law
 5                            1301 Atwood Avenue, Suite 215 N
                              Johnston, RI   02919
 6
     Special Master
 7   Team Members:            DR. JEFF METZNER
                              KERRY WALSH
 8                            REGINA COSTA
                              ANGIE COOPER
 9                            LATRICEA MCCLENDON-HUNT

10

11   Defendant:               KATHERINE TEBROCK,
                              Deputy Director of the
12                            Statewide Mental Health Program

13

14   For Dr. Golding:         DANIEL H. WILLICK, Attorney At Law
                              LAW OFFICE OF DANIEL H. WILLICK
15                            1875 Century Park East, Suite 1600
                              Los Angeles, CA   90067
16

17

18

19

20

21

22

23

24

25                         ---o0o---
```

| | |
|---|---|
| 1 | SACRAMENTO, CALIFORNIA, WEDNESDAY, OCTOBER 10, 2018, 11:00 A.M. |
| 2 | ---o0o--- |
| 3 | THE CLERK:  Calling Civil Case 90-520, Coleman et al., |
| 4 | versus Brown, et al.  On for status conference. |
| 5 | THE COURT:  All right.  Good morning. |
| 6 | MR. GIBSON:  Good morning, Your Honor. |
| 7 | THE COURT:  Appearances, please, for plaintiffs. |
| 8 | MR. BIEN:  Good morning, Your Honor.  Michael Bien, |
| 9 | Lisa Ells and Jeff Bornstein for the plaintiff class. |
| 10 | THE COURT:  All right.  Good morning to you all. |
| 11 | MR. GIBSON:  Good morning, Your Honor.  For the |
| 12 | defense, Andrew Gibson, Jay Russell, Elise Thorn and Tyler |
| 13 | Heath. |
| 14 | THE COURT:  Good morning to you. |
| 15 | MR. WILLICK:  Good morning, Your Honor.  This is -- |
| 16 | THE COURT:  Let me call roll, just so we don't -- is |
| 17 | Daniel Willick on the phone? |
| 18 | MR. WILLICK:  Yes, that's me, Your Honor. |
| 19 | THE COURT:  All right.  And you are counsel for |
| 20 | Dr. Golding? |
| 21 | MR. WILLICK:  Yes, Your Honor. |
| 22 | THE COURT:  All right.  Is Katherine Tebrock on the |
| 23 | phone? |
| 24 | MS. TEBROCK:  I am.  Good morning, Your Honor. |
| 25 | THE COURT:  With the defense, is Simone Renteria on |

1    the phone?

2            No.

3            Special Master Lopes, you're on the phone?

4            SPECIAL MASTER LOPES:  I'm here, Your Honor.

5            THE COURT:  And Jeffrey Metzner is on the phone?

6            MS. METZNER:  I am, Your Honor.

7            THE COURT:  With the special master's team.

8            Is anyone else on the phone?

9            SPECIAL MASTER LOPES:  Yes, Your Honor.  This is Matty

10   Lopes, and with me in my conference room is Kerry Walsh,

11   Latricea McClendon, Angie Cooper and Regina Costa.

12           THE COURT:  Thank you for that.

13           Anyone else on the phone?

14           All right.  Here are my questions based on what's

15   before me.  As you can tell from the minute order I issued, I'm

16   not inclined to grant the ex parte request for a stay.  If

17   anything, Dr. Golding's report suggests to me my need to hear

18   from him to assess the contents of that report.

19           And so recognizing that Mr. Willick is now appearing

20   as counsel for Dr. Golding, is there any reason not to proceed

21   with testimony from Dr. Golding starting Monday, October 15th?

22           MR. WILLICK:  Your Honor, this is Mr. Willick.

23           I would ask for a brief delay to allow me to meet

24   face-to-face with my client to go over the legal issues

25   involved in this matter.

1          THE COURT:  When you say "brief delay," what does

2     "brief" mean?

3          MR. WILLICK:  A day or two.

4          THE COURT:  All right.

5          MR. WILLICK:  Somewhere between a day or two or a

6     week, dependent upon the convenience of the parties and the

7     court.

8          THE COURT:  All right.  At one point plaintiffs

9     indicated a request to interview Dr. Golding.  Has that request

10    been put to Mr. Willick or not?

11         MR. BIEN:  No, Your Honor.  We don't -- there has been

12    no response from defendants to that request, since he's

13    still -- Dr. Golding is still employed.  We haven't had any

14    response at all from the state to any of our requests.

15         THE COURT:  But that request still stands?

16         MR. BIEN:  We would appreciate an opportunity to

17    interview him, but if he's going to testify next week, we

18    don't -- we could do it without interviewing him.

19         THE COURT:  All right.

20         So proceed by the eliciting of testimony?

21         He's subject to a subpoena currently?

22         MR. BIEN:  He is not.  He's still employed.

23         THE COURT:  The defense has agreed to present him?

24         MR. GIBSON:  No, Your Honor, we've not.

25         THE COURT:  All right.

1          Is there some issue there about whether or not he will

2      appear?

3          Mr. Willick, do you have a position on that?

4          MR. WILLICK:  I have not discussed that issue with my

5      client, but I suspect that my client will appear without the

6      necessity of being served with a subpoena.

7          THE COURT:  Or any kind of process, whatever that is?

8          MR. WILLICK:  Whatever kind of process, correct.  He

9      would appear voluntarily.

10          THE COURT:  In terms of Golding's report, I noted the

11      plaintiffs' request for at least a temporary sealing of the

12      report.  My question, as is typical in these cases, can any

13      protection of confidential information, truly confidential

14      information, be achieved through redaction?

15          I don't need an answer today.  I would ask the parties

16      meet and confer regarding that, and let me know that as

17      promptly as possible.

18          In the meantime, the parties have the report, the

19      court has the report, and I have begun reviewing it.  I will

20      review the entire report by early next week, certainly before

21      Dr. Golding testifies.

22          MR. GIBSON:  Your Honor, defendants object to such

23      short notice of Dr. Golding's testimony under oath in a public

24      setting until they've been given a full opportunity to look at

25      the document, review the exhibits and conduct a thorough review

1   of his allegations which are complex.

2          They go to very technical issues with the way data is

3   reported and collected.  These things can't be done on such

4   short notice.  I believe it will do a disservice to getting to

5   the bottom of Dr. Golding's allegations, which defendants, as

6   we reported, take seriously.

7          We believe that the special master, if given an

8   opportunity and time to do so, can conduct a thorough

9   investigation of Dr. Golding's allegations, and then at that

10  time, after that is done, where all the parties are fully

11  informed and there's a factual basis to move forward, that

12  Dr. Golding can then testify so that all parties are able to

13  fully participate in any kind of examination of Dr. Golding and

14  the allegations that he's made.

15          THE COURT:  So your proposal is the special master

16  alone investigate?

17          MR. GIBSON:  We believe the special master can conduct

18  a thorough, independent, fair investigation of Dr. Golding's

19  allegations.  And we believe that he's -- he's an arm of the

20  court.  He's been a part of this case for over a decade.  He

21  understands the ins and outs of what Dr. Golding is alleging,

22  so he can get to the bottom of the issues very quickly.  I

23  would hope within the next 60 to 90 days, and then we can

24  proceed at that time.

25          THE COURT:  Your thoughts on that, Mr. Bien,

1  Miss Ells, Mr. Bornstein?

2      MR. BIEN:  Your Honor, we think that the defendants,

3  who have been in receipt of the report -- and all the

4  allegations in the report concern events that occurred in their

5  headquarters with their officials in the last two years -- are

6  far more prepared to proceed than we are, yet we're willing to

7  go on Monday if Dr. Golding can go on Monday.

8      These are very important issues that affect many

9  issues pending before the court beyond telepsychiatry.  And a

10  delay in bringing those issues to your attention, as evidence

11  that you could understand and comprehend through Dr. Golding's

12  testimony, would stand in the way of making other important

13  decisions that would flow from that.

14      So we think that while we do agree with the idea

15  that -- with the plan for an investigation into these issues,

16  because they raise very serious allegations about trust and

17  honesty in terms of reporting information to the court and

18  special master, there are also issues that we think should be

19  investigated concerning whether or not misrepresentations were

20  made in pleadings and declarations filed to this court, but we

21  think that merely delaying the surfacing of these issues and

22  moving forward with Dr. Golding's testimony does not serve the

23  interests of this court or of the class under these

24  circumstances.

25      THE COURT:  All right.  Let me think about that.

1    Help me understand -- we'll come back to this.

2    Help me understand, if this -- if what is before this

3    court now, in light of Dr. Golding's report, dovetails with

4    PLATA.  The receiver received a copy of the report.  Is this a

5    case in which I need to consider notifying Judge Tigar and

6    contemplate a joint hearing?

7    MR. GIBSON:  Your Honor, based on my understanding,

8    Dr. Golding reached out to the receiver's office originally

9    with this report, so I don't have an opinion one way or another

10   as to whether you should coordinate with Judge Tigar.  But

11   Dr. Golding did reach out to the receiver's office with his

12   report initially.

13   THE COURT:  That's why I ask.

14   Mr. Bien, your position on that?

15   MR. BIEN:  Some of the issues that Dr. Golding

16   addresses have to do with reporting that is made public through

17   the receiver's website and also concerns issues of pharmacy

18   compliance, which is something that is kind of an overlapping

19   issue between Coleman and PLATA.

20   The MapIt system is a system that I think is part of

21   the pharmacy delivery system, and that part of both cases is

22   controlled by the receivership.

23   MR. WILLICK:  If I may, Your Honor?

24   THE COURT:  This is Mr. Willick?

25   MR. WILLICK:  That is correct.

1           THE COURT:  All right.

2           MR. WILLICK:  Briefly, my understanding is that

3    substantial issues in the document from Dr. Golding involve the

4    intersection of mental health and medical care.

5           Dr. Golding and the people whom he works with are

6    psychiatrists.  Psychiatrists are mental health providers and

7    physicians.

8           And I believe that the issues that he's raising are

9    issues regarding the intersection of medical care, psychiatric

10   care and mental health care.

11          THE COURT:  All right.  I just want to make certain I

12   understand the implications of what Mr. Bien just said.

13          Does that counsel in favor of a joint proceeding where

14   this court sits with Judge Tigar?

15          I'm not even thinking about the three-judge court.  I

16   think that's a separate issue, but is there -- if Judge Tigar

17   also would contemplate an evidentiary proceeding, are we

18   talking about separate proceedings or a joint proceeding?

19          MR. BIEN:  I think that, as I understand, Dr. Golding

20   reports to mental health, and all of his complaints and issues

21   that he raised were raised directly with his superiors.

22          It's the pharmacy system, and the reporting of the

23   pharmacy system does have some implications for the PLATA

24   receiver.

25          I just don't know if it is -- if there is enough

1   directly -- he doesn't, as I -- in my review of these documents

2   and the information, it doesn't look like he is, you know, in

3   communication directly with the receivership saying please do

4   this.

5          It is questions to the mental health people about what

6   information they're collecting and that is then reported by the

7   PLATA receiver.

8          THE COURT:  All right.  Mr. Gibson?

9          MR. GIBSON:  Yes.  Thank you, Your Honor.

10         After further conference with my colleagues, we think

11  it would be prudent for the court to coordinate with the PLATA

12  court to conduct any kind of evidentiary hearing to get to the

13  bottom of Dr. Golding's allegations because several things in

14  his report tie directly into the receiver's office, one being

15  MapIt, which was challenged by Dr. Golding as being inaccurate

16  in one form or another.

17         A lot of information is put into MapIt.  The nurses --

18  the nurses are under Plata, under the receiver's oversight.

19  Secondly, Dr. Golding's opinion is that he should not be

20  reporting to psychologists but to medical professionals.  So

21  that also would be something that would intersect with the

22  receiver's office and whether or not the structure that we have

23  in place right now is appropriate.  That's Dr. Golding's

24  allegations.

25         I think all of those things support a joint

1    evidentiary hearing to get to the bottom of Dr. Golding's

2    allegations.

3         THE COURT:  All right.  I'll consider those arguments.

4         In terms of plaintiffs' other questions, I'm looking

5    at Docket Number -- Docket No. 5936.  I want to make certain I

6    understand what the current position of the defendants is.

7         Plaintiffs identify various steps they believe should

8    be taken to preserve this court's ability to supervise the

9    process.  As of October 5th they said they had not heard from

10   the defense.

11        I'm looking specifically on page 3 as assigned by the

12   ECF system of that document which is the request for status

13   conference, looking at items No. 1 and 2.

14        Do the defendants object to the court's issuing an

15   order embodying those recommendations?

16        MR. GIBSON:  Your Honor, we appreciate plaintiffs

17   reaching out and giving us their thoughts on the best way for

18   us to proceed internally with such an investigation.

19        I can assure the court and plaintiffs' counsel that

20   there are processes in place within CDCR to deal with this very

21   kind of thing.  Those include admonitions against all relevant

22   parties and employees not to conduct any kind of retaliatory

23   actions against Dr. Golding.  It also includes a litigation

24   hold.

25        This case already has a litigation hold as to all

1   mental health matters, but we specifically resent a litigation

2   hold as to the issues raised in Dr. Golding's documents.

3            THE COURT:  On what date?

4            MR. GIBSON:  That was today, this morning.  And then I

5   believe yesterday the admonitions were provided to all parties.

6            THE COURT:  So just so I'm clear, number one is the

7   independent investigation.  I have heard, I think, what you

8   have to say about that.

9            In terms of -- and preserve all relevant evidence.

10  Your representation to the court is all relevant evidence

11  related to Dr. Golding's allegations is subject to a litigation

12  hold sent on October 9th?

13           MR. GIBSON:  Correct.  No.  This morning, Your Honor.

14           THE COURT:  October 10th.  Sorry.

15           October 10th.

16           There's been a clear directive sent to whom that there

17  shall be no retaliation against Dr. Golding?

18           MR. GIBSON:  To any of the parties potentially

19  identified in Dr. Golding's documents or other members of the

20  mental health program who could be related some way, although

21  not directly identified in the report, to ensure that there is

22  no retaliation taken against Dr. Golding.

23           THE COURT:  Hold on one second.

24           Does that also include any person who may have

25  assisted Dr. Golding in the report?

1          MR. GIBSON:  We aren't aware of anybody who assisted

2     Dr. Golding.

3          THE COURT:  Mr. Willick?

4          MR. WILLICK:  Yes.  Your Honor, it is my understanding

5     that the contents of the report identifies individuals who

6     assisted Dr. Golding in the report or provided input in the

7     report.  Furthermore, it is my understanding that individuals

8     identified in the report and possibly other individuals in the

9     course of the run-up to the report, for want of better words,

10    are known to people within CDCR and may be suspected or

11    identified as assisting Dr. Golding.

12         Hence, on behalf of Dr. Golding we would be

13    appreciative of any order the court thought appropriate to

14    protect him and any person who assisted him, and I believe

15    there were individuals assisting him, from retaliation.

16         MR. GIBSON:  Your Honor --

17         THE COURT:  Ultimately, the question for you,

18    Mr. Gibson, looking at No. 2 on page 2 of the report, is there

19    any reason for the court not to issue an order clarifying the

20    obligations of the defendant?

21         They appear to not be inconsistent with what you are

22    saying.

23         MR. GIBSON:  No, Your Honor.

24         THE COURT:  Is your standard procedure any reason not

25    to issue that as a court order including all of the items

1  mentioned in number 2, lines 22 through 27, on page 3 of 4,

2  Document Number 5936?

3          MR. GIBSON:  Your Honor, first let me -- I want to

4  clarify for the record.

5          Defendants' admonitions were to all mental health

6  staff not to take any retaliatory conduct against anyone based

7  on the Dr. Golding documents.  So I want to clarify that in the

8  first instance.

9          Secondly, Your Honor, state law governs what

10  defendants can and cannot do under this kind of circumstance.

11  I don't know why it is necessary for the court to issue any

12  kind of order.  We're following the law currently.

13          THE COURT:  So that's what you have to say?

14          All right.  Mr. Willick, anything further?

15          MR. WILLICK:  Notwithstanding what I believe to be the

16  sincere statements from the Deputy Attorney General, I still

17  feel that it would be appropriate for the court to enter an

18  order reiterating or stating that there should not be any

19  retaliation.

20          I must say that Dr. Golding and individuals who worked

21  with him are quite concerned in that regard, particularly given

22  the gravity of the situation and the way in which all

23  participants appear to understand the disclosures made by

24  Dr. Golding.

25          MR. GIBSON:  Your Honor --

1          THE COURT:  I'm prepared to issue an order.  I will --

2     I'm going to rely at this point on the suggestions made by the

3     plaintiffs taking into account what Mr. Willick has said.  I

4     haven't heard any reason not to issue that order.

5          MR. GIBSON:  Yes, Your Honor.  Just let me -- just let

6     me add one thing.  One portion -- Your Honor, if the court

7     wants to issue an order that no retaliatory conduct be done, we

8     have no objections to that.  That's the law.  We understand it.

9          But there is a portion in paragraph 2 that we object

10    to, that the court not issue an order, and that's defendant

11    CDCR conducting their own internal investigation about the

12    allegations.

13         CDCR has a division within itself of internal affairs

14    that conducts fair, independent investigations concerning these

15    kinds of allegations all the time.  That is their job.  They do

16    these, and they do a good job.

17         Now, doing that, CDCR will agree to hold that

18    investigation in abeyance until after the special master has

19    conducted his investigation, but there should be no order

20    preventing CDCR from conducting its own internal investigation

21    based upon an employee's allegations against other employees

22    within CDCR.

23         THE COURT:  Even if it tracks what you've just

24    indicated, that it should halt any plans to conduct an

25    investigation into the charges until any investigation ordered

1    by the court is completed?

2          MR. GIBSON:  Defense will agree to that.  I did not

3    want a wholesale prohibition against CDCR's Division of

4    Internal Affairs from conducting their own investigation.

5          THE COURT:  So that would also extend to the

6    suggestion in Mr. Bien's email of October 4th, you would agree,

7    until any court ordered investigation is completed to not

8    compel any employee of the CDCR, AG's office or governor's

9    office to submit to an interview as a condition of

10   employment.

11         MR. GIBSON:  Yes, Your Honor.  We agree that until an

12   independent investigation is done by the special master or

13   whomever the court feels appropriate, CDCR will not be

14   conducting an investigation compelling employees or officials

15   to participate in an interview.

16         However, just as a clarification, the defense counsel

17   and defendants would still like the opportunity to speak with

18   individuals on a voluntary basis so that they can get to the

19   bottom of Dr. Golding's allegations and not prevent them from

20   performing a full analysis.

21         THE COURT:  How would that be non-investigatory?

22         MR. GIBSON:  It would not be compelling.  We would not

23   be compelling employees to submit to those discussions.

24         THE COURT:  Only compelled interviews are

25   investigatory?

1    MR. GIBSON:  We believe that's what the plaintiffs

2    were --

3    THE COURT:  I'm looking at 3, though.  If you're

4    agreeing to halt any plans to conduct your own investigation

5    until a court-ordered independent investigation is completed,

6    how does that square with taking voluntary statements?

7    MR. GIBSON:  Well, I think the difference is as the

8    court said, compelling --

9    THE COURT:  I'm separating 3 and 4.

10   MR. GIBSON:  I understand, but --

11   THE COURT:  I'm not -- I'm separating 3 from 4.

12   MR. GIBSON:  Sure.  I'm trying to identify the

13   differences in scope and severity is that one would be like a

14   file opened by CDCR with compelled interviews.  But for

15   defendants and defense counsel to fully understand what

16   Dr. Golding is alleging, we should be allowed to speak with

17   mental -- the mental health care team to understand what are

18   very complicated allegations about data collection, data

19   reporting, so that we can conduct an informed examination if

20   and when the court conducts an evidentiary hearing.

21   THE COURT:  All right.  So let me -- I'll ask both

22   Mr. Bien and Mr. Willick to respond to that suggestion.

23   Mr. Bien?

24   MR. BIEN:  Your Honor, that's an investigation.  And

25   we think that -- that is exactly what we think should be done

1    under the direction of the court by an independent entity,

2    whoever the court chooses.

3            Going out and asking the people identified in these

4    emails and meetings to tell their side of the story, to talk

5    about it, is an investigation.  And that's exactly what should

6    happen, but it should not be run by the Attorney General's

7    Office or the CDCR because they're the entity that's being

8    investigated.

9            THE COURT:  Mr. Willick?

10           MR. WILLICK:  My concern is that whatever the court

11   orders to be in place is an independent and objective

12   investigation.

13           I also have a concern, which was previously expressed,

14   about possible retaliation against my client and those

15   individuals who are suspected or identified as assisting my

16   client in preparing his report, which has now come to the

17   court's attention.

18           So what I would say is that whatever the court feels

19   is best for an objective investigation, you know, in a manner

20   which does not subject my client or any person who assisted my

21   client or is suspected of assisting my client to the fear of

22   retaliation is what would be appropriate.

23           THE COURT:  All right.  My order will be a blanket

24   order, and it will preclude gathering of information, even if

25   persons are prepared to provide that information voluntarily.

1   That's the order as of now.

2         It doesn't mean there is not a potential for

3   carve-outs if we move forward to an evidentiary hearing, but at

4   this point it is hard for me to imagine that gathering

5   information from voluntary participants couldn't create

6   problems for any independent investigation.

7         MR. GIBSON:  Understood, Your Honor.

8         THE COURT:  So that's a bench order pending my

9   issuance of a written order hopefully within the next 24

10  hours.

11        MR. GIBSON:  Understood, Your Honor.

12        Just one or two points, the first being that based on

13  the court's order that defendants will be given an opportunity,

14  in advance of any evidentiary hearing, to conduct their own

15  analysis --

16        THE COURT:  I understand that request.  I'm not saying

17  I'm going to grant that.  I understand the request.

18        MR. GIBSON:  Okay.  The second point of contention is

19  defendants' officials, and including mental health program

20  employees, psychologists, psychiatrists, work on a daily basis

21  to provide care outside of Coleman and within Coleman in terms

22  of work groups.  And a lot of the allegations go to the entire

23  system, so I don't want this order to prevent the parties or

24  the CDCR internally from doing the job they need to do.  And

25  it's a delicate balance based on not being able to talk to them

1    at all and performing and going forward with mental health care

2    within CDCR.

3           THE COURT:  Fair enough.  The court, as I have been

4    saying from Day 1 of this court's presiding over this case,

5    my -- I'm not going to lose sight of the goal of achieving a

6    real remedy and a durable remedy.

7           Nothing is going to pull me off track, even if I need

8    to set up a parallel track to get to the bottom of anything

9    that Dr. Golding's report tells me I need to.

10          So in no way do I intend to preclude defendants

11   working in good faith to achieve full compliance to do their

12   fundamental jobs.  To the extent there is any possibility of a

13   violation of the court's order, there needs to be a meet and

14   confer, advance requests from the court if you think you are

15   going to cross the line, you have to come to me and have me

16   identify what is allowable if there is any question.

17          I don't know how else to approach it at this point in

18   time.  Once we get through some taking of evidence from

19   Dr. Golding and an independent investigation, I'll have more

20   clarity.  I just don't have the clarity right now to do

21   anything other than issue a blanket order.

22          MR. GIBSON:  Your Honor, another two things.  I'm not

23   trying to prolong this.

24          THE COURT:  I just want to make certain.  So I'm going

25   to construe plaintiff's request made in Mr. Bien's email of

1    October 4th to interview Dr. Golding as withdrawn.

2              MR. BIEN:  Yes, Your Honor.

3              THE COURT:  All right.  Mr. Gibson.

4              MR. GIBSON:  Yes, Your Honor.  Defendants' ex parte

5    application was for a stay.  I believe that there is good cause

6    shown, based on what the court is ordering now, that a stay

7    should be entered of the proceedings until this investigation

8    is complete.

9              THE COURT:  I haven't ordered an investigation yet.

10             MR. GIBSON:  I understand, Your Honor.

11             THE COURT:  I'm probably going to.  My view -- nothing

12   that I have heard so far has changed my thoughts.  I need to

13   hear from Dr. Golding before I determine how to proceed, to

14   assess what he's saying, credibility.  I need some initial

15   testimony from him.  It may be focused.  It may not explore

16   every aspect of his report.  So I am first going to arrange for

17   his testimony.

18             I'm prepared to entertain Mr. Willick's request for a

19   few days to consult with his client.  Miss Schultz will be in

20   touch with the parties to identify the date by which we can

21   proceed.

22             If I understand correctly, Mr. Willick believes

23   Dr. Golding could be prepared to proceed -- is it by the 17th

24   or certainly by the 22nd of October?

25             MR. WILLICK:  Let me look at my calendar, Your Honor.

1    (Brief pause.)

2         Correct.

3         THE COURT:  All right.  So my plan would be to, at

4    this point, continue October 15th.  I think I need to start

5    with Dr. Golding at this point.  We will continue the start of

6    the hearing to a date to be determined at this point, I

7    believe, no later than October 22nd.

8         I'll hear from -- I'll listen to Dr. Golding's

9    testimony subject to examination by both sides.  Once we

10   conclude that -- it appears that the joint statement had

11   contemplated a total of six hours from Dr. Golding.  I just --

12   without having completed my own review of his report, I don't

13   know what the parties believe is a reasonable period of time

14   given the new posture of the matter.  My thought would be no

15   more than six hours to help me understand the contents of the

16   report now before me.  Then we'd take a pause.  I would hear

17   from the parties, and we would think about next steps.  That is

18   do we continue with the balance of the proceeding, as I had

19   contemplated, or do we, in fact, then take more of a break for

20   some kind of investigation?

21        So thoughts on the amount of time for Dr. Golding's

22   testimony given that approach?

23        MR. BIEN:  Your Honor --

24        THE COURT:  Mr. Bien.

25        MR. BIEN:  Your Honor, Michael Bien.  Our estimate was

1  based on him testifying about telepsychiatry.  From the court's

2  statements today, it appears that the testimony would be

3  broader.  And you know, perhaps it should be expanded to, you

4  know, a day and a half or something to really cover the topics

5  in his report.

6          THE COURT:  Thoughts on that at this point,

7  Mr. Gibson?

8          MR. GIBSON:  Your Honor, we have to agree that any

9  kind of examination of Dr. Golding, because we have not had an

10 opportunity to speak with him about this, would take a longer

11 time than what we anticipated in the joint report.

12         THE COURT:  So one and a half days.

13         To the extent people in the back are passing up notes

14 and a part of this, I would ask they come forward and sit.

15         I see folks.  I recognize them.  Could we have anyone

16 who is really an attorney who is part of this come forward and

17 identify themselves for the record.

18         MS. IGRA:  Misha Igra, Supervising Deputy Attorney

19 General.

20         THE COURT:  Could you spell your name please for the

21 record.

22         MS. IGRA:  Yes, Your Honor.  M-i-s-h-a, I-g-r-a.

23         MR. MCKINNEY:  Patrick McKinney, General Counsel,

24 California Department of Corrections and Rehabilitation.

25         THE COURT:  Good morning, Mr. McKinney.

1          Isn't there someone from the governor's office

2     present?

3          MR. SANCHEZ:  Gabriel Sanchez, Governor's Office.

4          THE COURT:  All right.  So there was a flurry.  Do you

5     need to compare notes?

6          What's your position on the amount of time?

7          MR. GIBSON:  Well, what I think, preliminarily, is

8     that we will not be able to fully prepare for any kind of

9     examination of Dr. Golding.  The bench order has prevented

10    defendants from interviewing anybody, defense counsel from

11    interviewing anybody.  It just is unfair to proceed with any

12    kind of examination of Dr. Golding for -- whether a day or two

13    days -- without being given the opportunity to prepare for it.

14         THE COURT:  I said you could approach me with

15    carve-outs after meeting and conferring.  So you can meet and

16    confer with plaintiffs and propose carve-outs that would allow

17    you to prepare for my consideration.

18         I'm closely supervising the process given the

19    circumstances.  So you are not precluded from seeking

20    carve-outs from me.

21         Do you understand that?

22         MR. GIBSON:  Yes, Your Honor.

23         THE COURT:  All right.

24         MR. SANCHEZ:  This is Gabriel Sanchez.

25         Would it be prudent to allow defendants to potentially

1    bring in other witnesses from CDCR who I understand may have a

2    different point of view from Dr. Golding on some of these

3    counting rules and at least assist the court in presenting a

4    more holistic picture about what may be going on and not

5    confine the court's attention to merely Dr. Golding's

6    testimony, which is important, but, as I understand it

7    preliminarily, there are people that have a different point of

8    view about many of these matters?  It might help the court to

9    hear from them as well.

10          THE COURT:  The court's current thought, because it is

11   Dr. Golding who has come forward, is to first hear from him,

12   and once we complete his testimony, during that pause I

13   mentioned, I can hear a proposal regarding other witnesses.

14          There is a threshold step here.  I think it just

15   requires focusing on what Dr. Golding has to tell the court.

16          I raised the issue of notice to the Appellate Court

17   given that staffing and telepsychiatry are implicated, and

18   so -- just as a courtesy.

19          I don't know that it is this court's job.  As I told

20   you before, I don't have time to read appellate briefs, but is

21   there a courtesy notice due to the Appellate Court given

22   Dr. Golding's report and the proceedings this court now

23   contemplates?

24          Mr. Gibson?

25          MR. GIBSON:  Your Honor, we did see that request.

1    With regard to the first two appeals regarding transfer

2    timelines, we do not believe -- again, this is initially based

3    on our review of Dr. Golding's report -- do not believe that

4    his allegations challenge the transfer timeline data.

5            Notwithstanding that, the subject matter of the

6    appeals is whether or not 100 percent compliance is

7    constitutionally required.  So we don't believe the subject of

8    those two appeals are impacted by Dr. Golding's documents.

9            We are still reviewing further defendants' appeal on

10   the July 3rd order, and we haven't come to any kind of

11   determination on that.

12           THE COURT:  All right.  Well, I'm not -- I don't think

13   it is my job, but I just raise that as a question --

14           MS. ELLS:  Your Honor, if I may?

15           THE COURT:  -- so as not to waste time.

16           Ms. Ells?

17           MS. ELLS:  Yes, I would just like to comment on the

18   two pending appeals currently briefed and ready for argument in

19   the Ninth Circuit on November 13th.

20           We do feel, in particular, that the MHCB appeal

21   appends and relies on a number of reports and data from

22   defendants to make the arguments that defendants were not

23   deliberately indifferent and pointing to error in the court's

24   analysis, and also arguing that this court failed to properly

25   defer under the PLRA.

1          And in particular, we think it is appropriate to

2    appraise the court that although none of the -- none of the

3    pieces of data that Dr. Golding has identified in his role as a

4    psychiatrist are directly implicated, there are larger issues

5    about whether or not other aspects of defendants reporting can

6    be trusted and are transparent.

7          We do feel it is a appropriate to alert the Ninth

8    Circuit to that, and we are prepared to do so.

9          We also feel that it would be appropriate for counsel

10   for defendants to review the pleadings that have been filed in

11   that court and in this court to confirm whether or not any of

12   them need to be amended or withdrawn consistent with their

13   ethical obligations.

14         THE COURT:  All right.  That record is made.  I'm not

15   going to order any notice, but I think it is an issue for the

16   parties to consider.  And this court is making clear how it

17   plans to address Dr. Golding's report at this stage.

18         I have no other questions or comments.  Miss Schultz

19   will be in touch later today to confirm a date by which we can

20   begin to hear from Dr. Golding.

21         Just so you know, I'm going to reach out to

22   Judge Tigar.  I'm not going to necessarily delay my initial

23   proceeding.  If Judge Tigar decides he wants to join me, I'll

24   leave that up to him, so he may be present.

25         But at this point I'm prepared to proceed here as the

1    best way to not delay in this case, to ultimately keep the eye

2    on the ball.  And if the court needs to, to address the

3    substance of Dr. Golding's report.

4           So is there anything else I need to clarify, that you

5    need me to know, Mr. Bien?

6           MR. BIEN:  Your Honor, you mentioned at the beginning

7    of the proceeding whether or not Dr. Golding's report and

8    exhibits contain confidential information.

9           THE COURT:  That could be redacted.

10          MR. BIEN:  That could be redacted.

11          THE COURT:  Without sealing the entire report.

12          MR. BIEN:  Our review -- initial review shows that

13   there are names of inmates, class members identified.  They

14   certainly could be redacted.  And we could work on that and

15   provide it to defendants for their review or work on it with

16   them so that report could be made public.

17          THE COURT:  All right.  Well, that's my direction to

18   the parties.  As a courtesy and looping in Mr. Willick, meet

19   and confer.  Let me know if a redacted version of the report

20   can be filed with the original filed under seal, but

21   accompanying that redacted version.

22          With the understanding that all parties have access to

23   the report, I don't see a need to temporarily seal it now.

24   Nothing would be accomplished in terms of public access.  But

25   if the parties can, by Monday the 15th, let me know if the

1   report can be redacted in a joint statement and a copy of a

2   redacted version, then that will help create the record.

3          All right.  Anything further?  Mr. Gibson?

4          MR. GIBSON:  Yes, Your Honor.  I'm sorry.  I have to

5   clarify, once again, exactly what was told to mental health

6   staff regarding no retaliatory conduct.

7          Mental health staff supervisors, the executives were

8   provided that memorandum not to permit retaliatory conduct, not

9   all mental health staff.

10         THE COURT:  All right.

11         MR. GIBSON:  Okay.

12         THE COURT:  My order will issue shortly, and then the

13  defense will comply with my order.

14         MR. GIBSON:  Yes, Your Honor.

15         One last piece of clarification is that whenever the

16  court -- whenever the parties meet and confer of whenever the

17  court deems Dr. Golding's testimony should begin, is it the

18  court's intention to thereafter, either the next day or soon

19  thereafter, conduct the hearing unless otherwise informed

20  otherwise, so that the parties can get prepared if necessary?

21         My only concern is that to get fully prepared, we

22  believe, for the best -- in the best interests of the

23  defendants, we should focus on the 160-page report and the 60

24  exhibits attached to it.  And to do so, that will take away

25  resources and time from preparing for the telepsychiatric

1   hearing, which has already happened because of this.  And so we

2   feel it would be unfair to both processes to have them back to

3   back, so...

4        THE COURT:  I think that's fair.  My tentative

5   thought, subject to hearing from the plaintiffs, would be that

6   during the pause following Dr. Golding's testimony, that we

7   would talk about next steps.  But there would at least be a

8   break.  So if the court determined it could proceed with the

9   balance of the hearing, there would be at least a week's

10  break.

11       MR. GIBSON:  Thank you, Your Honor.

12       THE COURT:  Does that sound reasonable, Mr. Bien?

13       MR. BIEN:  Yes, Your Honor.  We both have experts that

14  we're trying to rein in, so I think we need to release the

15  dates we grabbed and then ask them for new dates once we get

16  past Dr. Golding's testimony, if the court decides to proceed.

17       THE COURT:  So I think at this point it is fair to say

18  that the earliest the court would proceed with the balance of

19  the hearing would be beginning the week of October 29th.

20       All right.  I'll issue an order.

21       Miss Schultz will be in touch about dates.  I'll look

22  for proposed redactions to the report, and we'll hear from

23  Dr. Golding as soon as we can schedule it.

24       MR. WILLICK:  One final clerical issue.

25       THE COURT:  Mr. Willick.

1           MR. WILLICK:  This is Mr. Willick.

2           I emailed Miss Schultz my contact information, and I

3    would be much appreciative of a copy of the court's order when

4    it is issued.

5           THE COURT:  All right.  We'll add you to the courtesy

6    service list.

7           MR. WILLICK:  Thank you very much, Your Honor.

8           THE COURT:  All right.  Thank you.

9           THE CLERK:  Court is in recess.

10      (Off the record at 11:52 a.m.)

11                        ---o0o---

12

13

14

15                  *REPORTER'S CERTIFICATE*

16                        ---o0o---

17   *STATE OF CALIFORNIA  )*
     *COUNTY OF SACRAMENTO )*
18
         *I certify that the foregoing is a correct transcript*
19   *from the record of proceedings in the above-entitled matter.*

20        *IN WITNESS WHEREOF, I subscribe this certificate at Sacramento,*
     *California.*
21
       */S/_Catherine E.F. Bodene_____*
22   *CATHERINE E.F. BODENE, CSR NO. 6926*
          *Official United States District Court Reporter*
23

24                        ---o0o---

25

fedrptrbodene@gmail.com