XAVIER BECERRA, State Bar No. 118517
Attorney General of California
JAY C. RUSSELL, State Bar No. 122626
ADRIANO HRVATIN, State Bar No. 220909
Supervising Deputy Attorneys General
ELISE OWENS THORN, State Bar No. 145931
ANDREW M. GIBSON, State Bar No. 244330
TYLER V. HEATH, State Bar No. 271478
IAN MICHAEL ELLIS, State Bar No. 280254
TOBIAS G. SNYDER, State Bar No. 289095
Deputy Attorneys General
  455 Golden Gate Avenue, Suite 11000
  San Francisco, CA  94102-7004
  Telephone:  (415) 510-4426
  Fax:  (415) 703-5843
  E-mail:  Tobias.Snyder@doj.ca.gov
*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>EDMUND G. BROWN JR., et al.,<br><br>Defendants. | 2:90-cv-00520 KJM-DB (PC)<br><br>**DEFENDANTS' EX PARTE APPLICATION FOR RECONSIDERATION OF THE COURT'S OCTOBER 12, 2018 ORDER**<br><br>Judge: The Honorable Kimberly J. Mueller<br><br>**REQUEST FOR EXPEDITED RULING BY OCTOBER 19, 2018** |

TO THE COURT AND TO PLAINTIFFS, BY AND THROUGH THEIR COUNSEL:

PLEASE TAKE NOTICE that Defendants apply *ex parte* to this Court for reconsideration of the Court's October 12, 2018 Order.  Defendants make this application under Federal Rules of Civil Procedure 7 and 54(b) and Civil Local Rule 230(j).  Specifically, Defendants move the Court to reconsider Paragraph 7 of the Order, which establishes an initial evidentiary hearing at which the Court will take the testimony of Dr. Michael Golding, on the ground that beginning the

1

Defs.' Mot. Reconsideration (2:90-cv-00520 KJM-DB (PC))

investigation into Dr. Golding's allegations with the unopposed, public testimony of Dr. Golding will irreparably harm Defendants by negating rules of procedure and evidence, slandering state employees in no position to defend themselves, and influence the outcome of any subsequent investigation.  Defendants also move for reconsideration of Paragraphs 3, 4, and 5 of the Order, which prohibit Defendants from investigating the allegations made by Dr. Golding; prohibit Defendants from interviewing employees of the California Department of Corrections and Rehabilitation, Attorney General's Office, and Governor's Office; and require Defendants to meet and confer with Plaintiffs and seek leave of this Court before working in good faith towards an adequate and durable remedy in this action or completing assigned tasks, if such work might implicate the prior two restrictions.  Defendants seek reconsideration on the grounds that these restrictions are manifestly unjust to Defendants, in that they improperly preclude Defendants from preparing for the Court's scheduled October 22, 2018 hearing, and intrude into the attorney-client relationship between Defendants and their counsel.  Defendants also request that, if the Court does not take the October 22, 2018 hearing off calendar, that the hearing be continued by at least a week to relieve the prejudice to Defendants created by their inability to prepare for the October 22, 2018 hearing.

Defendants are concurrently filing an emergency petition for writ of mandamus in the Ninth Circuit Court of Appeals also seeking relief from the Court's October 12, 2018 Order.

This application is based on this notice, the supporting memorandum of points and authorities, the Declaration of Tobias G. Snyder, the pleadings, records and files in this action, and such other matters as may properly come before the Court.

Dated:  October 16, 2018

Respectfully submitted,

XAVIER BECERRA
Attorney General of California

*/s/ Tobias G. Snyder*
TOBIAS G. SNYDER
Deputy Attorney General
*Attorneys for Defendants*

2

Defs.' Mot. Reconsideration (2:90-cv-00520 KJM-DB (PC))

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

The process established by the Court at the October 10, 2018 status conference and in its October 12, 2018 Order concerning the allegations made by Dr. Michael Golding, Chief Psychiatrist for the California Department of Corrections and Rehabilitation (CDCR), is fundamentally unfair to Defendants. Defendants received a copy of the document authored by Dr. Golding late in the evening of October 3, 2018. Defendants were fully transparent and shared the document and its attachments with the Special Master and Plaintiffs' counsel the next morning. Rather than allow an independent investigation into the allegations and permit the parties to conduct their own inquiry, the Court ordered a hearing at which Dr. Golding will be examined. However, the Court's order stripped Defendants (and only Defendants) of any meaningful ability to prepare for the October 22, 2018 hearing by prohibiting them from investigating or receiving information about Dr. Golding's allegations. (ECF No. 5949.)

Defendants move for reconsideration of the Court's October 12, 2018 Order because it reverses the standard process for addressing government employee complaints, prohibits defense counsel from adequately representing and communicating with their clients, even on a voluntary basis, and unreasonably constrains attorney-client communications. It also potentially forces the disclosure of protected attorney-work product by requiring defense counsel to meet and confer with Plaintiffs' counsel and Dr. Golding's counsel—effectively seeking their permission—before Defendants can confidentially communicate with their own counsel on matters that touch on Dr. Golding's allegations. The Court did not place similar conditions on Plaintiffs' counsel, creating a severe imbalance in the parties' ability to prepare for the Court's October 22, 2018 hearing to assess Dr. Golding's knowledge and credibility. The unilateral constraints imposed on Defendants prejudice their fundamental due-process rights, as they cannot adequately understand, prepare for or defend against Dr. Golding's allegations or, following Dr. Golding's October 22 testimony, be in a position to advise the Court "concerning next steps, including resumption of the evidentiary hearing on defendants' planned use of telepsychiatry." (*Id*. at 4.) Moreover, an initial hearing at which only Dr. Golding will be heard, and for which only Plaintiffs will have the

3

full opportunity to prepare, will hinder the Court's stated goal of conducting an objective examination of Dr. Golding's credibility and avoid improperly biasing or influencing a subsequent investigation.

Defendants respectfully request that the Court reconsider its Order and submit Dr. Golding's allegations to an investigation without calling Dr. Golding to testify. If the hearing is kept on calendar, the Court should continue the October 22, 2018 proceedings for at least another week to allow Defendants sufficient time to prepare for Dr. Golding's testimony. Further, Defendants must be allowed sufficient time to discuss the contents of Dr. Golding's allegations with their clients to meaningfully examine Dr. Golding. Many of Dr. Golding's allegations involve technical matters regarding data collection and analyses that can only be adequately understood by defense counsel through attorney-client privileged communications with Defendants' employees. Removing the restrictions placed on Defendants would lead to a process that is more consistent with the Court's stated objective—to protect the fairness and integrity of any prospective independent investigation into Dr. Golding's allegations and how those allegations may impact further proceedings in this matter.[1]

## ARGUMENT

### I. LEGAL STANDARD GOVERNING THIS RECONSIDERATION MOTION.

"A district court has the inherent power to reconsider or modify its interlocutory orders prior to the entry of judgment." *Smith v. Massachusetts*, 543 U.S. 462, 475 (2005). "Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist. No. 1J, Multnomah Cty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993); *see also* Civil Local Rule 230(j). "There may also be other, highly unusual, circumstances warranting reconsideration." *Id.* Defendants meet this standard—the Court's October 12, 2018 Order imposes several unjust constraints on Defendants' ability to assess and address Dr. Golding's knowledge and credibility, and whatever impact the allegations may have on CDCR's telepsychiatry policy, staffing plan, and other issues.

---

[1] Defendants submitted a request that the Court file Dr. Golding's allegations under seal.

4

Defs.' Mot. Reconsideration (2:90-cv-00520 KJM-DB (PC))

## II. THE ORDER IS MANIFESTLY UNJUST BECAUSE IT IMPROPERLY PROHIBITS DEFENDANTS' COUNSEL FROM COMPETENTLY REPRESENTING THEIR CLIENTS.

On the evening of October 3, 2018, Defendants' counsel received a document authored by Dr. Golding, and the following morning provided it to Plaintiffs' counsel and the Special Master. On October 5, 2018, Plaintiffs requested a status conference. (ECF No. 5936.) They also requested that the Court enter an order that Defendants, among other things, "halt any plans to conduct [their] own investigations into the charges" and "not compel any employee of the CDCR, the AG's Office or the Governor's Office to submit to an interview as a condition of their employment." (ECF No. 5936-1.) That same night, Defendants also requested a status conference. (ECF No. 5938.)

The Court held a status conference on October 10, 2018. (ECF No. 5948 (Oct. 10 Hearing Tr.).) During that conference, Defendants' counsel objected to Plaintiffs' request that the Court prohibit an internal investigation by CDCR's Office of Internal Affairs, but offered to suspend any such formal investigation until an investigation by the Special Master or other independent investigator was completed. (*Id*. at 17:1-18:4.) Defendants were amenable to Plaintiffs' request that Defendants "not compel any employee of the CDCR, the AG's Office or the Governor's Office to submit to an interview as a condition of their employment," but Defendants objected to having this prohibition extend to voluntary, informal communications with CDCR employees regarding Dr. Golding's allegations. (Id. at 18:11-9:20.) The Court's October 12, 2018 Order incorrectly asserts that Defendants "had no substantive opposition to entry of the orders requested" by Plaintiffs in their October 5, 2018 filing. (ECF No. 5949 at 3:10-12.) To the contrary—the Court overruled Defendants' objections and adopted Plaintiffs' requests, imposing a prohibition on Defendants against investigating the allegations or communicating with counsel, and adding that Defendants must also meet and confer with Plaintiffs' counsel and obtain Court approval before discussing other issues in case they may be impacted by the Court's bar on discussing Dr. Golding's allegations. (ECF No. 5949 at 9:14-24.)

5

Defs.' Mot. Reconsideration (2:90-cv-00520 KJM-DB (PC))

**A. The Court's Proposed Process to Investigate Dr. Golding's Allegations Contravenes Defendants' Due-Process Rights and Will Frustrate Objective Inquiry Into the Allegations.**

At the October 10, 2018 hearing, Defendants' counsel suggested that Dr. Golding's allegations be referred to the Special Master or Defendants' own specialized investigative agencies for independent inquiry, objecting to the Court's suggestion that Dr. Golding's testimony initially be taken in open court before an investigation might begin. (ECF No. 5948 (Oct. 10 Hearing Tr.) at 7:22-8:14.) Having received the Court's final Order, Defendants' objection to the Court's plan has only been strengthened.

Both state and federal agencies have long experience with allegations of wrongdoing brought by employees, including well-established procedures to address "whistleblower" allegations independently, judiciously, and with respect to the rights of the individual bringing these allegations. For instance, the Whistleblower Protection Act of 1989 established a procedure by which federal employees may report wrongdoing to the Office of Special Counsel, which would refer the matter to the appropriate agency head to conduct an investigation and return a written report to the Special Counsel. *See* 5 U.S.C. § 1213, *et seq*. The California Whistleblower Protection Act provides an potential avenue for state employees to file confidential complaints with an independent body that can evaluate the complaint and, if necessary, launch an independent, confidential investigation into the alleged wrongdoing to be transmitted to the relevant agency head for response. *See* Cal. Gov. Code § 8547, *et seq.* CDCR's Office of Internal Affairs is empowered to perform a similar function as these independent bodies, as are similar departments across California state agencies. The common denominator of these processes is a focus on initial, independent evaluation by a dedicated agency into the credibility of the allegations; an independent and confidential inquiry into the veracity of the allegations, which may include salacious charges against government employees; and a mandate that corrective action be taken if wrongdoing is found after evidence and/or testimony are collected.

The Court's proposed process turns these statutory procedures on their head, *beginning* with a public airing of the unverified allegations under oath, without any meaningful opportunity for the allegations to be tested against contrary evidence or opposing testimony. In the normal

6

Defs.' Mot. Reconsideration (2:90-cv-00520 KJM-DB (PC))

course, allegations of agency wrongdoing brought by an employee *may* reach the courtroom down the line, once an investigation is complete, if the employee is entitled to compensation or the agency's response is challenged or inadequate.  Here, the court has ordered live testimony in open court *first*, before any facts have been gathered or counsel provided time to prepare.  This process risks causing irreparable harm to Defendants.

Testimony by Dr. Golding—untested, unchallenged, and yet drawing credibility from the Court's authority—will likely influence the shape, scope and potentially outcome of any subsequent investigation.  The setting is highly likely to give a false impression to observers that Dr. Golding's allegations have already been vetted and investigated.  The reputation of third parties may be irrevocably damaged by allegations that ultimately prove false, without these parties having any opportunity to defend themselves.  Moreover, beginning the inquiry with Dr. Golding's testimony will make his personal demeanor, and not the content of his allegations and supporting evidence, the central determinant of how and whether an investigation proceeds.

None of this is necessary.  The ostensible purpose of the October 22, 2018 hearing is to determine whether an investigation is warranted, but Plaintiffs and Defendants have already acknowledged that fact.  By ordering the initial testimony of Dr. Golding, and depriving Defendants of the rules, protections, and procedures that typically attach to employee complaints, the Court's Order works a manifest injustice against Defendants.

**B.    The October 12, 2018 Order Prohibits Counsel from Preparing for the October 22, 2018 Hearing, and Thus Contravenes Defendants' Due-Process Rights.**

Even if the Court is determined to move forward with the October 22 hearing, the Court's Order goes far beyond any relief necessary to ensure that Defendants do not "create problems for any independent investigation."  (ECF No. 5948 (Oct. 10 Hearing Tr.) at 21:5-6.)  Instead, the Order prevents Defendants and their counsel from discussing the allegations among themselves or communicating with their clients about Dr. Golding's allegations, while leaving Plaintiffs entirely unrestrained.  In fact, the Order appears to prohibit Defendants' counsel from preparing in any way for the October 22, 2018 hearing to assess the credibility of Dr. Golding and his allegations.  Blocking Defendants' counsel from communicating with their clients and prohibiting Defendants

7

from preparing for the October 22, 2018 hearing is unnecessary to protect an independent investigation into Dr. Golding's allegations, and is manifestly unjust to Defendants.

The Order appears to contemplate that the parties will question Dr. Golding at the October 22, 2018 hearing after the Court provides the parties' counsel with suggested "areas of inquiry." (*See* ECF No. 5949 at 4:23-25 ("The court anticipates issuing a brief order prior to hearing to guide the parties in preparation of discrete areas of inquiry.").) In the interim, "Defendants shall not conduct any investigation of their own into the allegations contained in Dr. Golding's report." (*Id.* at 5:14-15.) The term "investigation" is not defined, but under its plain meaning, Defendants' counsel is prohibited from undertaking any action to prepare for the hearing.[2] Specifically, Defendants' counsel cannot speak with the individuals maligned by Dr. Golding. Yet many of these same people are the only sources of information necessary to make a full assessment of the credibility of the allegations. At present, counsel for Defendants are required to parse Dr. Golding's report and its supporting attachments without being able to ask their clients even basic questions, such as the meaning of acronyms or terms of art in the attachments or how CDCR's data tracking systems operate in the abstract.

Probing the bases for and accuracy of Dr. Golding's allegations is the ostensible purpose of the October 22, 2018 hearing, yet Defendants and their counsel are materially hindered in their ability to prepare for that undertaking. At the same time, the order places no constraints on Plaintiffs' counsel. Defendants do not believe that the Court intended its Order to block Defendants' ability to prepare for the hearing in this manner, but the Order requires modification—or, at the least, clarification—to prevent a manifest injustice against Defendants.

Defendants understand that the Court does not want to compromise any formal inquiry into Dr. Golding's allegations. But that goal would be accomplished by ordering Defendants to preserve evidence and hold in abeyance any internal investigation by the Office of Internal Affairs—two steps that Defendants assured the Court would be done. Indeed, it is quite possible that Dr. Golding's testimony, and any public attention it receives, will itself compromise a

---

[2] At the October 10, 2018 status conference, the Court stated the "order will be a blanket order, and it will preclude gathering of information, even if persons are prepared to provide that information voluntarily." (Oct. 10 Hearing Tr. at 20:23-25.)

8

Defs.' Mot. Reconsideration (2:90-cv-00520 KJM-DB (PC))

subsequent investigation, especially if the examination of Dr. Golding becomes one-sided given the restrictions placed on Defendants. It is manifestly unjust to prohibit Defendants' counsel from conducting *any* voluntary inquiry into serious allegations against their clients, an injustice compounded by the fact that no restrictions whatsoever have been placed on Plaintiffs' counsel.[3]

The fundamental unfairness of the Court's Order infringes on Defendants' due-process rights. *See*, *e.g.*, *Fed. Sav. & Loan Ins. Corp. v. Ferm*, 909 F.2d 372, 375 (9th Cir. 1990) (in analyzing whether an order is fundamentally unfair, the court balances the intrusion on parties' interests against the public interest). Here, the order is fundamentally unfair because it significantly intrudes on the Defendants' rights, with no similar restraint on Plaintiffs, which serves no public interest. To be clear, Defendants' rights to due process and fundamental fairness would be infringed even if the same limitations were imposed on Plaintiffs' counsel, because such order would still interfere with or bar certain attorney-client certain communications. Defendants have a significant right to confidential discussions with their attorneys and for their attorneys to confidentially develop litigation strategies without interference from the Court or Plaintiffs' counsel. This is particularly true given that individuals named in the report and others may have valid explanations, responses, or defenses to its allegations—all of which speak to Dr. Golding's knowledge and credibility, which the Court intends to examine on October 22, 2018. Further, given the upcoming testimony from Dr. Golding, without any inquiry or investigation into the validity of the allegations, defense counsel must defend the Department on the record without being able to speak with clients regarding the validity of these allegations. The Court and the parties all have an interest in a fully-informed examination of Dr. Golding's allegations. That interest is significantly impaired by the Court's order preventing Defendants from discussing the allegations among themselves and with their counsel.

In short, the Court's Order precludes Defendants and their counsel from meaningfully analyzing the allegations and presenting information that is vital to assessing Dr. Golding's

---

[3] Because the Order does not address Plaintiffs at all, they could conceivably submit a list of informal questions to Dr. Golding's independent counsel, their own clients, their stable of retained expert witnesses, or potentially CDCR's former and current employees, all without violating the Court's order.

9

Defs.' Mot. Reconsideration (2:90-cv-00520 KJM-DB (PC))

credibility and whether his allegations bear upon the status of the durable remedy in this case. The Court should reconsider the October 12, 2018 order so that Defendants' counsel may meet their fundamental duty to protect their clients' interests and to have sufficient time to prepare for a hearing. To the extent that the Court is concerned that an informal investigation might interfere with an independent inquiry, this concern is addressed by the Court's orders to preserve evidence.

### C. The Court's Order Invades Defendants' Attorney-Client Relationship.

The attorney-client privilege is considered by the Ninth Circuit to be "perhaps, the most sacred of all legally recognized privileges, and its preservation . . . essential to the just and orderly operation of our legal system." *U.S. v. Bauer*, 132 F.3d 504, 510 (9th Cir. 1997). The October 12, 2018 Order's failure to define "investigation" intrudes into the attorney-client relationship between Defendants and their counsel. Under the Order, Defendants' counsel is prohibited from speaking with their clients, or even with each other, to the extent those communications are deemed an "interview." For example, Deputy Attorney General Andrew Gibson, lead defense counsel, is prohibited from "interviewing" named Defendant Katherine Tebrock, CDCR's Deputy Director for Statewide Mental Health, to discuss the allegations. In fact, named Defendant Governor Brown and his staff are prohibited from asking Mr. Gibson for information concerning the Dr. Golding's allegations, as again this would constitute a voluntary "interview" by a Defendant of an employee of the Attorney General's Office.

The October 12, 2018 Order thus improperly intrudes into Defendants' counsel's ability to conduct privileged attorney-client communications with their clients. By doing so, the Order deprives Defendants the right to counsel on all issues relating Dr. Golding's allegations. Indeed, the Order *explicitly* mandates the elimination of that which the attorney-client privilege exists to protect: "full and frank communication between attorneys and their clients." *Upjohn Co. v. United States,* 449 U.S. 383, 389-90 (1981) ("The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client."), quoting *Hunt v. Blackburn*, 128 U.S. 464, 470 (1888) (privilege "is founded upon the necessity, in the interest and administration of justice, of the aid of persons having knowledge of the law and skilled in its practice, which assistance can only be safely and

10

Defs.' Mot. Reconsideration (2:90-cv-00520 KJM-DB (PC))

readily availed of when free from the consequences or the apprehension of disclosure."). The privilege, and the rationale behind it, extends to governments and their employees. *United States v. Jicarilla Apache Nation,* 564 U.S. 162, 169-70 (2011) ("The [attorney-client] privilege aids government entities and employees in obtaining legal advice founded on a complete and accurate factual picture.").

The prejudice to Defendants goes beyond simply preparing for Dr. Golding's testimony at the October 22, 2018 hearing. The Court has also ordered that, "[f]ollowing Dr. Golding's testimony, the court will hear from counsel concerning next steps, including resumption of the evidentiary hearing on defendants' planned use of telepsychiatry." (ECF No. 5949 at 4:25-27.) Defendants cannot properly and fully prepare to address these issues if they cannot discuss Dr. Golding's allegations and its implications with each other. Without the ability to confer with each other and with their attorneys concerning Dr. Golding's allegations, Defendants are precluded from presenting fact-based information concerning Dr. Golding's allegations and their impact, if any, on further proceedings in this matter.

Because the October 12, 2018 Order effectively prohibits Defendants' counsel from competently representing their clients and prepare for Dr. Golding's examination, the Order imposes a manifest injustice on Defendants and should be reconsidered.

**D.  The Court's Order For Defendants to Meet and Confer With Plaintiffs Before Speaking with Their Counsel is Likely to Result in the Disclosure of Attorney Work Product.**

The law protecting an attorney's work product is well-settled. "In performing his [or her] various duties . . . it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests." *Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947). Were an attorney's work product left open to opposing counsel, "much of what is now put down in writing would remain unwritten [and] [a]n attorney's thoughts, heretofore inviolate, would not be his [or her] own. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served." *Id*.

11

Defs.' Mot. Reconsideration (2:90-cv-00520 KJM-DB (PC))

The October 12, 2018 Order requires that Defendants make Plaintiffs' counsel privy to confidential attorney work product for defense counsel to continue "working in good faith toward an adequate and durable remedy in this action." The Order states that "[t]o the extent any provision of this order might preclude defendants from working in good faith toward an adequate and durable remedy in this action, or from doing any other work with which they are tasked, they may request specific relief from the court," and that before any such request, Defendants must meet and confer with Plaintiffs' counsel and alert Dr. Golding's counsel." (ECF No. 5949 at 5:19-24.) Accordingly, Defendants must first engage Plaintiffs' counsel any time they wish to communicate with their clients on *any matter involving this case* if that communication *might* in some way touch on Dr. Golding's allegations. Neither law nor facts support this prior restraint on Defendants, their employees, or their attorneys.

The October 12, 2018 Order's prior-restraint language will necessarily require breaching the attorney-client privilege and work-product protection. For example, if an attorney at CDCR's Office of Legal Affairs wishes to speak with a clinician about appointment scheduling—a subject that might touch on issues raised by Dr. Golding—that attorney is now required to inform Plaintiffs' counsel and request permission for the conversation, a process that will invariably require disclosing at least some contents of the communications and/or the attorney's motivation to hold the conversation. The Order's prior-restraint language also requires Defendants to provide Plaintiffs' counsel with the names of individuals who may potentially fall within the preclusion of issues relating to Dr. Golding's allegations, a roadmap that Plaintiffs can use to immediately solicit these individuals for information—because, as mentioned above, the Order does not in any way prohibit Plaintiffs' counsel from investigating Dr. Golding's allegations.

**CONCLUSION**

Defendants respectfully request that the Court reconsider its October 12, 2018 Order. The Court should take the October 22 hearing off calendar and refer this matter for investigation by the Special Master or CDCR's Office of Internal Affairs. The Court should also rescind the restrictions that prohibit Defendants from discussing Dr. Golding's allegations with their clients and investigating these allegations in a manner that would not risk compromising any subsequent

12

Defs.' Mot. Reconsideration (2:90-cv-00520 KJM-DB (PC))

1  independent investigation.  Defendants should also be relieved of any requirement to meet and
2  confer with Plaintiffs and seek Court permission before communicating with their own clients and
3  their employees.  If the hearing is not taken off-calendar, given that the Court's Order has
4  hamstrung Defendants' ability to prepare for Dr. Golding's testimony, the hearing should be
5  continued to October 29, 2018, at the earliest.[4]

Dated:  October 16, 2018                              Respectfully submitted,

XAVIER BECERRA
Attorney General of California

*/s/ Tobias G. Snyder*
TOBIAS G. SNYDER
Deputy Attorney General
*Attorneys for Defendants*

CF1997CS0003

---

[4] Defendant further request that, if the Court is not inclined to grant this motion on an *ex parte* basis, the Court set a hearing on shortened time, for a date at least one court day prior to the scheduled October 22, 2018 hearing, to hear Defendants' request as a noticed motion.

13

Defs.' Mot. Reconsideration (2:90-cv-00520 KJM-DB (PC))

# CERTIFICATE OF SERVICE

Case Name:   *Coleman v. Brown, et al.,*         No.   **2:90-cv-00520 KJM-DB (PC)**

I hereby certify that on October 16, 2018, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**DEFENDANTS' EX PARTE APPLICATION FOR RECONSIDERATION OF THE COURT'S OCTOBER 12, 2018 ORDER**

**DECLARATION OF TOBIAS SNYDER IN SUPPORT OF EX PARTE APPLICATION FOR RECONSIDERATION OF THE COURT'S OCTOBER 12, 2018 ORDER**

**[PROPOSED] ORDER GRANTING DEFENDANTS' EX PARTE APPLICATION FOR RECONSIDERATION OF THE COURT'S OCTOBER 12, 2018 ORDER**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on October 16, 2018, at San Francisco, California.

| G. Garcia | */s/ G. Garcia* |
|---|---|
| Declarant | Signature |

CF1997CS0003
42064623.docx