1               IN THE UNITED STATES DISTRICT COURT
                 EASTERN DISTRICT OF CALIFORNIA
2             BEFORE THE HONORABLE KIMBERLY J. MUELLER


3    RALPH COLEMAN, et al.,

4                     Plaintiffs,
     vs.                            Sacramento, California
5                                   No. 2:90-CV-0520
     EDMUND G. BROWN, JR.,          Wednesday, October 17, 2018
6    et al.,                        9:31 a.m.

7                     Defendants.
     _____/
8

9

10                        --oOo--
                 REPORTER'S TRANSCRIPT OF PROCEEDINGS
11                 TELEPHONIC STATUS CONFERENCE
                          --oOo--
12

13   APPEARANCES (All by Telephone):

14   For Plaintiffs:        ROSEN BIEN GALVAN & GRUNFELD LLP
                            LISA A. ELLS
15                          CARA E. TRAPANI
                            JEFFREY BORNSTEIN
16                          Attorneys at Law
                            101 Mission Street, 6th Floor
17                          San Francisco, CA  94105

18   For the Defendants:    OFFICE OF THE ATTORNEY GENERAL
                            ANDREW GIBSON
19                          Attorney at Law
                            600 West Broadway, Suite 1800
20                          San Diego, CA  92101

21   (Appearances continued on page 2.)

22   Official Reporter:     KACY PARKER BARAJAS
                            CSR No. 10915, RMR, CRR, CRC
23                          501 I Street
                            Sacramento, CA  95814
24                          kbarajas.csr@gmail.com

25   *Proceedings recorded by mechanical stenography.  Transcript produced by
     computer-aided transcription.*

```
 1   APPEARANCES (Continued):

 2   For the Defendants:      OFFICE OF THE ATTORNEY GENERAL
                              TYLER HEATH
 3                            JAY RUSSELL
                              Attorneys at Law
 4                            455 Golden Gate Avenue, Suite 11000
                              San Francisco, CA  94102
 5
                              OFFICE OF THE ATTORNEY GENERAL
 6                            ELISE THORN
                              Attorney at Law
 7                            1300 I Street
                              Sacramento, CA  95814
 8
     For Dr. Michael          STEWART & MUSELL
 9   Golding:                 WENDY E. MUSELL
                              Attorney at Law
10                            2200 Powell Street, Suite 440
                              Emeryville, CA  94104
11
     Special Master:          PANNONE LOPES DEVEREAUX & O'GARA LLC
12                            MATTHEW A. LOPES, JR.
                              Attorney at Law
13                            1301 Atwood Avenue, Suite 215 N
                              Johnston, RI  02919
14
     Special Master Team:     KERRY WALSH
15                            KRISTINA HECTOR
                              LATRICEA McCLENDON HUNT
16                            ANGIE COOPER
                              DR. JEFFREY METZNER
17
     Also Present by          MISHA IGRA
18   Telephone:               Attorney at Law
                              NICK WEBER
19                            Attorney at Law
                              MONICA ANDERSON
20                            Senior Assistant Attorney General
                              CHRISTINE CICCOTTI
21                            Attorney at Law
                              JOANNA MUPANDUKI
22                            Attorney at Law

23                            --oOo--

24

25
```

1      SACRAMENTO, CALIFORNIA, WEDNESDAY, OCTOBER 17, 2018, 9:31 AM

2          THE CLERK:  Calling civil case 90-520, Coleman, et

3      al. versus Brown, et al.  This is on for status conference.

4          THE COURT:  All right.  Good morning.  Let me call

5      roll because the parties are appearing telephonically, as is

6      Dr. Golding's counsel, and because this is telephonic, it will

7      be important for you to wait for me to call on you so the

8      record is clear.  So first for Coleman, Ms. Ells, are you

9      present?

10          MS. ELLS:  Yes, your Honor.

11          THE COURT:  Mr. Bornstein?

12          MR. BORNSTEIN:  Good morning, your Honor.

13          THE COURT:  And Ms. Trapani?

14          MS. TRAPANI:  Yes, your Honor.

15          THE COURT:  All right.  Is anyone else appearing

16      telephonically for Coleman?

17          SPECIAL MASTER LOPES:  Your Honor, this is

18      Matty Lopes, and I'm here with Kerry Walsh, Latricea McClendon

19      Hunt, Angie Cooper, and on the line you have Kristina Hector

20      and Dr. Jeff Metzner.

21          THE COURT:  All right.  So that is the special master

22      and his team, and that is the Court's special master.

23          And then for defendants, Mr. Gibson?

24          MR. GIBSON:  Yes, your Honor, I'm here.

25          THE COURT:  Ms. Thorn?

1          MS. THORN:  Yes, your Honor.

2          THE COURT:  Mr. Russell?

3          MR. RUSSELL:  Yes, your Honor.

4          THE COURT:  Mr. Heath?

5          MR. HEATH:  Yes, your Honor.

6          THE COURT:  And Ms. Igra?

7          MS. IGRA:  Yes, your Honor.

8          THE COURT:  All right.  Is there anyone else

9   appearing?  I understand there's some persons monitoring, and

10  I'll clarify those names shortly.  But is there anyone else

11  formally appearing for the defendants?

12         MS. IGRA:  Your Honor, this is Misha Igra.  I'm not

13  formally appearing for defendants.  I'm not an attorney on this

14  action.

15         THE COURT:  All right.  Thank you for that

16  clarification.

17         Then I understand counsel for Dr. Golding is present

18  telephonically, and there is new counsel now.  Is it pronounced

19  Musell?

20         MS. MUSELL:  Musell.  And good morning, your Honor.

21         THE COURT:  All right.  Musell, is that correct?

22         It's Musell but I'll answer to whatever you want to

23  call me, your Honor.

24         THE COURT:  Musell, I want to make certain.  All

25  right.  Ms. Musell, counsel for Dr. Golding.

1           And then monitoring, I understand we have Nick Weber?

2           MR. WEBER:  Yes, your Honor.

3           THE COURT:  Monica Anderson?

4           MS. ANDERSON:  Correct, your Honor.

5           THE COURT:  Christine Ciccotti?

6           MS. CICCOTTI:  Yes, your Honor.

7           THE COURT:  And Joanna, is it Mupanduki?

8           MS. MUPANDUKI:  Yes, your Honor.

9           THE COURT:  All right.  And titles of those monitoring

10    are included on the Court's calendar.

11           Here I want to provide you with an update, first,

12    because I think it moots the defendants' ex parte application.

13    The Court has wanted to move as swiftly as possible so as to

14    keep the case on track while also properly considering

15    Dr. Golding's report.  And in the process of further review of

16    that report, although I have more to do, here is my current

17    thinking.  And so I want to outline you an approach -- outline

18    for you an approach for moving forward.  Except any brief

19    comments today, the bottom line is currently I anticipate

20    converting Monday's session set for October 22nd in the

21    afternoon to a further full status at which point you could

22    respond more fully to what I'm proposing today.

23           I also am going to request some focused, very concise

24    briefing on one issue which is the question of sealing or not.

25    And I'm hoping that on the 22nd in the afternoon we can also

1  discuss what will happen with the balance of the proceedings

2  currently set for this year.

3         So first, in terms of the Golding report and assessing

4  that report, as I've reviewed it further and thought about the

5  range of issues, my question really is -- because I gather, to

6  their credit, the defendants agree that the report does prompt

7  the need for some investigation suggesting that they're taking

8  the contents of the report seriously.  One of the Court's

9  observations has been that the Court has not verified and the

10  exhibits aren't authenticated in the way that courts usually

11  think about those matters, and so my question, and ultimately

12  it's one for Ms. Musell, would Dr. Golding be prepared in the

13  form of a declaration to verify the contents of the report,

14  that is, swearing under penalty of perjury or affirming that

15  the contents are true and correct?  And to the extent he can

16  authenticate exhibits, is he prepared to do that?  So that

17  would be in the form of a paper filing or submission.

18         Ms. Musell?

19         MS. MUSELL:  My understanding is he stands by

20  everything he put in the report, your Honor, so I don't see

21  that as a problem.  I would just want clear directive as to

22  what your Honor would like so that we are complying with all

23  Court orders.

24         THE COURT:  It really is is he -- I don't see anything

25  in the report, you know, that's verified, and so it would be --

1    the Court would be looking for a declaration that formally in a

2    way that the Court can hold Dr. Golding to the statements made

3    in the report, that he's verifying under penalty of perjury

4    that the contents are true and correct.  So he would be

5    prepared to provide that, for example, even by the end of the

6    week?

7              MS. MUSELL:  That is my understanding, your Honor.

8              THE COURT:  All right.

9              MS. MUSELL:  And if I may ask, I understand that

10   there's motions for redaction as well as under seal.  How would

11   you like that to be provided --

12             THE COURT:  At this point --

13             MS. MUSELL:  -- so that we're not running afoul of any

14   privacy rights or other arguments on either side?

15             THE COURT:  The declaration could be submitted in

16   camera initially.  Sooner or later I believe there is a great

17   likelihood that some, if not all, of the report and such a

18   declaration would end up on the public record, and that's what

19   I want to discuss with you in more detail on Monday, perhaps

20   with some additional briefing given the questions that have

21   been raised.  But to the extent Dr. Golding is asserting any

22   privacy rights, that's where you need to do that on his behalf

23   so I understand his position.  But I would allow submission of

24   the declaration in camera.  It would be a fairly

25   straightforward declaration, again verifying under penalty of

1   perjury the contents of the report.

2          With respect to authentication of exhibits, let me

3   first ask the parties, is that an issue here, or do the parties

4   accept that the exhibits provided with the report are

5   authentic, and the Court can consider their contents?

6          Ms. Ells, your position on that?

7          MS. ELLS:  We have no concerns about the authenticity

8   of the exhibits.  It seems appropriate to us that the Court

9   consider them.

10         THE COURT:  Mr. Gibson?

11         MR. GIBSON:  Yes, your Honor, so long as it's

12  initially submitted in camera, we will not have an objection to

13  that so that on Monday at the further status conference we can

14  address whether or not the document itself, as verified by

15  Dr. Golding, is appropriate for disclosure on the public

16  record.

17         THE COURT:  All right.  So that would mean that the --

18  any submission by Dr. Golding does not need to authenticate the

19  exhibits.

20         So Ms. Musell, if you could provide a declaration?  Do

21  you need further direction at this point, or can you provide a

22  declaration by the end of this week, by say noon on Friday, the

23  19th --

24         MR. GIBSON:  Your Honor, this is Andrew Gibson.  I'm

25  sorry to interrupt.  I just wanted to make sure that the

1    question I answered as to whether or not we objected to a

2    declaration that verified the contents of the report and

3    authenticated the exhibits, we do want Dr. Golding to

4    authenticate the exhibits.  I just want to make that clear for

5    the record.

6            THE COURT:  That was not clear I don't think.  That

7    was -- I think that was not responding to my question.  So you

8    do, you object to the exhibits at this point as not

9    authenticated?

10           MR. GIBSON:  Your Honor, we haven't had an opportunity

11   to investigate this matter.  We've been prevented by the

12   Court's order from speaking with anybody who has been included

13   in those emails, so we don't know whether or not they are

14   authentic or not.  So yes, at this point we reserve our right

15   to object to them.

16           THE COURT:  Well, with that, Ms. Musell, I'll modify

17   my direction.  To the extent Dr. Golding can include

18   authenticating information in his declaration, he should.

19           MS. MUSELL:  Thank you, your Honor.  May I ask if

20   Dr. Golding will be subject to any questioning on Monday and

21   Tuesday, and is he required to be present?

22           THE COURT:  At this point, let me hold that thought

23   until the end of our discussion.

24           MS. MUSELL:  Thank you, your Honor.

25           THE COURT:  On the question of sealing or unsealing,

1   really the Court has been holding the report in camera.  So I

2   have not made a decision on whether to seal or not.  If I were

3   to file on the public docket a redacted version of the report,

4   the full report would accompany any redacted version under seal

5   to preserve the appellate record.

6           Here is my question given the parties' positions and

7   the Court's effort to get to the bottom of the standards that

8   apply.  Dr. Golding is not a party.  He is employed by a party.

9   I'm assuming he claims or preserves the right to claim full

10  whistle-blower status.  I would direct the parties to provide

11  me with a focused briefing on the standards applicable to a

12  decision on sealing here.  I believe this could be done in five

13  pages or less from plaintiffs.  From the defense, from

14  Ms. Musell, assuming she has a position on this, what is the

15  law?  I'm fully familiar with the law when it comes to filings

16  by parties.  And if I were to rely on the contents of

17  Dr. Golding's report in a decision, in a substantive decision,

18  at that point I believe I would be required to and I would want

19  to disclose the portions or the entirety of the report on which

20  I relied.  But I'm not there yet.

21          And so what I would request is by 5:00 p.m. on Friday

22  each party and Ms. Musell provide me with a very short brief

23  identifying authority that helps me understand the standards

24  that apply here.

25          Any problem with meeting that deadline, Ms. Ells?

1          MS. ELLS:  No, your Honor.

2          THE COURT:  Mr. Gibson?

3          MR. GIBSON:  No, your Honor.  Just one clarifying, is

4     this briefing -- we'd request that it be submitted in camera.

5     I understand the Court's prior order of October 15th requested

6     the explanation of why this document can't be unsealed, in

7     camera.  Plaintiffs went ahead and filed that on the Court's

8     docket.

9          THE COURT:  This is just a legal brief.  This is five

10    pages identifying cases, rules, whatever authority binding or

11    persuasive guides the Court's decision.  So there's no reason

12    it needs to be submitted in camera.

13         MR. GIBSON:  Your Honor, I mean, we will be -- to

14    apply the law to fact, you'd have to address at least in

15    general terms --

16         THE COURT:  I'm looking for just the authority.  I

17    don't need you -- five pages identifying for me the authority.

18    Again cases, rules, so just think about it as the legal

19    standards portion of a brief only.  I can run my own analysis,

20    and we can discuss the matter further on Monday afternoon.  So

21    those briefs should be filed on the docket.

22         Any problem with that, Mr. Gibson?

23         MR. GIBSON:  No, your Honor.

24         THE COURT:  Ms. Musell?

25         MS. MUSELL:  No, your Honor.  And one issue,

1    Dr. Golding is very concerned about ongoing retaliation, in

2    particular given docket number 5959 which CDCR had indicated

3    that the report could, quote, be slandering state employees.

4    For us there's no question he's a whistle-blower, and given

5    that approach, which is extremely concerning, we would ask that

6    the Court continue its ruling that there be no retaliation

7    against Dr. Golding while these issues are still presenting

8    before your Honor.

9            THE COURT:  All right.  Can you present that in the

10   form of a formal filing?

11           MS. MUSELL:  Yes, your Honor.

12           THE COURT:  And I'm prepared to more fully address

13   that issue on Monday as well.

14           MS. MUSELL:  Thank you, your Honor.

15           THE COURT:  All right.  In terms of the report itself,

16   based on the Court's review to this date, I believe there are

17   actually parallel tracks for moving forward, and so I want to

18   identify those for the parties.  I'm not expecting a full

19   response today, but my identification of these parallel tracks

20   that form the basis for our status on Monday.

21           So one is, you know, the hot button track, which is

22   are there areas where fraud has been committed on the Court?

23   The Court needs to address those.  It needs to address them

24   deliberately, carefully.  At this point, my view of the best

25   way to do that is to carefully identify areas based on the

1   contents of the report once verified, to do it in a tentative

2   identification with the special master's input, also taking

3   into account any overlap with *Plata* reporting whereby the

4   special master would consult with the receiver, then providing

5   the parties a chance to respond.  And once a list is confirmed,

6   which will be the Court's list, then have a focused evidentiary

7   hearing on those areas.

8            So at this point, despite the Court's prior reference

9   to an independent investigation, I believe court processes

10  allow for a full and fair evaluation of any areas where there

11  may have been fraud on the Court.  I of course do not reach any

12  conclusions at this point.  While the Court needs to address

13  those areas, I also have no intention of having that train take

14  the entire case off track, and so that's why I'm using the

15  language of parallel tracks.  And it may be that it takes

16  several weeks, a few months to fully explore the question of

17  potential fraud on the Court.

18           Two other areas which I believe can proceed on

19  parallel tracks, and again this is something we can discuss on

20  Monday afternoon, the 22nd, what are the ways in which the

21  reporting of data to the Court needs to be repaired or improved

22  to ensure full accuracy and compliance going forward so the

23  Court can have a true measure of progress towards a durable

24  remedy.  And along these lines, the Court ultimately believes

25  it may need to put in place its own independent auditor to

1    review improved or repaired methods of reporting.

2            Related to the data reporting is a question of whether

3    or not there are provisions in prior court orders or the

4    program guide that are truly unclear such that amendments are

5    required.  I don't have the granular detail at this point to

6    identify those areas.  I'd like to discuss that with the

7    parties more fully on Monday.  It may be I need the parties'

8    assistance to identify those areas with the special master's

9    oversight.

10           I'm also aware that the program guide is still pending

11   before the Court in terms of the Court's identification of an

12   updated version of the guide.  I see these second two tracks,

13   the last two tracks I have identified, as interrelated, but I

14   believe we need to move as expeditiously as possible to keep

15   those matters on track and resolve them as quickly as possible

16   because they address the Court's ability to know where the case

17   is in terms of again progress towards the durable remedy this

18   Court has long believed is within sight, not withstanding the

19   questions now raised.  So that is the Court's assessment of the

20   report and its implications at this point.

21           I will issue an order following the status confirming

22   those tracks and letting the parties know that I do want to

23   discuss them in more detail on Monday and develop specific

24   plans for moving forward.

25           At this point, is there any initial comment or

1    question, Ms. Ells?

2              MS. ELLS:  Well, your Honor, no, not as to this.  I do

3    think that we would like to know the status of defendant's ex

4    parte application and the emergency writs that are pending

5    given your Court's guidance today and in so doing whether or

6    not this Court wishes to clarify anything about its pending

7    order with respect to the limitation on the defendant's ability

8    to conduct noncompelled investigations or interviews.

9              THE COURT:  That's my next topic.

10             MS. ELLS:  Okay.

11             THE COURT:  I realize I'm just providing you with

12    these what I'm calling parallel tracks.  So I'm just -- I'm

13    asking if there's any initial response for me to consider

14    between now and Monday.  I'm not expecting a fully developed

15    response because I'm just sharing this information with you.

16    So I'm not hearing any immediate response, Ms. Ells.

17             MS. ELLS:  No.  I think these are interesting ideas

18    that we'll need to think about a little bit more before we have

19    a fully formed position on Monday.

20             THE COURT:  All right.  Mr. Gibson?

21             MR. GIBSON:  No, your Honor.  Thank you.  I agree

22    further discussion will be helpful on Monday, but my initial

23    impression, your Honor, is the three items you identified I

24    don't -- I believe they're interrelated.  If the data is

25    accurate or complies with rules, there is -- there can be no

1  fraud.  So I see them as being -- I mean, it's -- you can't

2  separate the two.  The underlying information is reliable or

3  was provided and calculated based on the rules agreed to by the

4  parties and the Court, whether or not those rules should go

5  forward but they were in place at the time, then there can be

6  no fraud.  Of course if the data is inaccurate, then of course

7  the question goes to whether or not this was some kind of

8  knowing misrepresentation, but the first step depends on

9  whether or not the information itself was accurate or provided

10  based on the rules in this case.

11          MS. ELLS:  Your Honor, if I may respond to that.

12          THE COURT:  You may briefly.  This is Ms. Ells.

13          MS. ELLS:  Yes.  This is Ms. Ells.  I think that

14  there's a larger question behind all of this which is --

15  whether or not the information is accurate is sort of only a

16  part of the question.  The larger question is did everybody

17  understand what was being reported, even if it was accurately

18  being reported, if it was reported or discussed in a way that

19  was misleading or in a way that was not clear what was being

20  measured, then I think that that is very problematic as well.

21  Simply saying that it is accurate or not is only a very small

22  portion of the question.

23          THE COURT:  All right.  And accuracy can be tied to

24  definitions, and that's why I see the question of looking

25  carefully at court orders and the program guide as implicated

1   by the information now before the Court is important to

2   clarify.  So I understand those positions.  We can talk more

3   about that on Monday.

4          Ms. Musell, did you have anything to say about the

5   Court's identification of these parallel tracks?

6          MS. MUSELL:  No, your Honor, only insofar as a

7   question whether Dr. Golding should be present on Monday and

8   Tuesday given that the Court's order concerning verification of

9   the information in his report, whether he's required to be

10  there, and I would assume that I would be there in order to

11  make sure that Dr. Golding is complying with whatever

12  requirements necessary.

13         THE COURT:  At this point my thought would be that I

14  will let you know once I see his declaration filed by Friday

15  noon.  But assuming that declaration complies with what I've

16  requested, he would not need to be present.

17         MS. MUSELL:  Thank you, your Honor.

18         THE COURT:  Any problem with that approach, Ms. Ells?

19         MS. ELLS:  No, your Honor.

20         THE COURT:  Mr. Gibson?

21         MR. GIBSON:  No, your Honor.

22         THE COURT:  All right.  Then in terms of whether or

23  not and what kind of investigation is needed to fully and

24  fairly address the issues raised by Dr. Golding's report,

25  assuming that the Court does not proceed with taking of

1   testimony from Dr. Golding on Monday, can we agree that we can

2   address that question more fully on Monday itself and ask all

3   parties to cease and desist until Monday at 1:00 p.m.?

4           Ms. Ells?

5           MS. ELLS:  Yes.  We think that's appropriate.

6           THE COURT:  Mr. Gibson?

7           MR. GIBSON:  No, your Honor.  We do not agree with

8   that.

9           THE COURT:  So Mr. Gibson, your position is for three

10  days plus the weekend you cannot cease and desist?

11          MR. GIBSON:  Your Honor, we believe that the Court's

12  order of October 12th improperly intrudes on the

13  attorney-client privilege as stated in our moving papers.

14  Since last week, we have been paralyzed in our ability to

15  represent our clients competently, and any further -- we cannot

16  agree to any kind of further interference with that, whether

17  it's 24 hours or three or four days.  We need to be able to

18  speak with our clients openly and fully on this issue regarding

19  Dr. Golding's allegations in particular and wide reaching.

20  Dr. Golding's allegations touch on all sorts of areas of mental

21  health care within CDCR in this case.  And we have been

22  prevented from communicating with them based on this Court's

23  order, and we can't agree to continue to do that.

24          MS. ELLS:  Your Honor, if I may speak to that.

25          THE COURT:  You may.

1           MS. ELLS:  This is Ms. Ells.  I think that there's a

2    possibility that this Court could provide some clarification on

3    the limitation it imposed in paragraph 4 of its order, and we

4    think, for instance, that it's possible that defendants -- we

5    think defendants are taking an extremely overbroad view of the

6    limitation that the Court's order imposes.  We don't think that

7    there was ever any intent to prohibit them from conducting

8    day-to-day activities.  The Court was concerned, I think

9    appropriately, with ensuring that there is no compelled or

10   coercive conduct to influence any of -- you know, any of the

11   interviews that the defendants have conducted with employees or

12   others in the Attorney General's office.  So we don't think

13   that it's -- we don't think defendants read of this restriction

14   is correct.

15           We also would just point out that defendant's have

16   never attempted to meet and confer with us about what this

17   restriction means or what they would like modified about it

18   that would address their concerns.  We remain very concerned

19   that there's a potential conflict of interest given the nature

20   of the allegations regarding possible fraud on the Court and

21   the implications for the Attorney General's office, in

22   particular, given their sponsorship of some of the data that

23   Dr. Golding claims is fraud and/or materially misleading both

24   before this Court and before the work group proceedings that

25   this Court has ordered.

1          So we -- you know, we understand defendant's concerns.

2     We think that the language in the Court's order should not be

3     read the way that they are.  But however, we are comfortable

4     with modifying it to restrict only compelled interviews with

5     employees of the CDCR, the Attorney General's office or the

6     Governor's office which is what we originally requested in our

7     status conference request, and if the Court finds that

8     appropriate and defendants obviously conduct themselves in a

9     way that does not compel or coerce any aspect of those

10    interviews, then we are comfortable with modifying the Court's

11    order in that respect.

12         THE COURT:  Mr. Gibson, why should I not direct that

13    you meet and confer with Ms. Ells by the end of today, as I

14    clearly gave you the opportunity to do in my order, and file by

15    first thing tomorrow morning the results of any meet and confer

16    with proposed modifications to the Court's order?

17         MR. GIBSON:  Your Honor, with regard to that question

18    in particular, we've identified in our moving papers that that

19    discloses to plaintiffs and Ms. Musell the internal thought

20    processes of our attorneys, in terms of what they do is

21    important.  Paragraph 5 was wide reaching.  It --

22         THE COURT:  Mr. Gibson, please respond to my question.

23    Has Ms. Ells' proposal suggested that she's trying to probe

24    attorney-client privileged communications in proposing a

25    clarification of the Court's order?

1          MR. GIBSON:  Your Honor, I appreciate plaintiff

2     stating intent of this order.  The way we read it was far

3     different, and I think in a reasonable manner in terms we

4     cannot compel an interview or take a voluntarily interview --

5          THE COURT:  Mr. Gibson, how did you read the Court's

6     order suggesting a meet and confer with plaintiff's counsel?

7     And have you done anything to meet and confer?

8          MR. GIBSON:  Your Honor, we read number 5, as we state

9     in our papers, as intruding on the attorney-client work product

10    because it doesn't just touch on whether or not 4 was adequate

11    or appropriate.  It touched on all areas of the case.  So our

12    position, yes, your Honor, is that 5 is inappropriate, and that

13    4, we should be able to conduct voluntary investigations.  In

14    regards to compelled interviews, defendant simply agreed to

15    hold that in abeyance.  State law allows --

16         THE COURT:  Mr. Gibson, did you read out of my order

17    the meet-and-confer language?

18         MR. GIBSON:  No, your Honor.  We felt that that

19    meet-and-confer language violated the attorney work product

20    doctrine, and we asked that the Court make a ruling on that.

21    That was what our motion was.

22         THE COURT:  I'm ordering you to meet and confer with

23    plaintiffs between now and the end of today, and if you refuse

24    to say anything in such meet and confer, that's your choice.

25    But the only subject matter of that discussion is to be whether

1    or not a clarification of the Court's order would satisfy your

2    concerns.  And you're ordered to submit either a joint report

3    by tomorrow morning at 9:00 a.m. with an update on your meet

4    and confer, or if you cannot even join in a joint report, then

5    separate reports by 9:00 a.m. tomorrow morning.

6         MR. GIBSON:  Okay, your Honor.

7         THE COURT:  The other option the Court has considered

8    but I can't -- I find defendant's position entirely unhelpful

9    in thinking about options, but a question for Ms. Musell, is it

10   an option to lift any restrictions and simply have the

11   provisions of the law as developed with respect to

12   whistle-blowers serve as a curb on any unlawful activity?

13        MS. MUSELL:  Well, your Honor --

14        THE COURT:  Is this Ms. Musell?

15        MS. MUSELL:  Yes, your Honor.  This is Ms. Musell.  I

16   thought that your ruling regarding retaliation was entirely

17   appropriate under the circumstances, and given the breadth of

18   issues here, I've represented whistle-blowers for over 20

19   years, that unfortunately many of the provisions that the law

20   means you may seek justice for retaliation years from the time

21   that it occurs.

22        I think given the importance of the issues that affect

23   all of California, it's important to ensure that there is not

24   coerced statements, that there's not ongoing retaliation.  And

25   given the very short period of time that we're talking about,

1    in order to address these important issues that also go to the

2    heart of the -- what the Court must determine in this case, I

3    think that those orders were entirely appropriate, and we

4    certainly would hope that those would be maintained in order to

5    ensure that individuals who are whistle-blowers like

6    Dr. Golding can provide fruitful information in a timely

7    fashion without the worry of ongoing retaliation for providing

8    information that perhaps may reflect poorly on the state.

9        So Dr. Golding remains willing to comply with any and

10   all Court orders.  He's continuing to comply with his

11   employer's directives, but we would ask for that ongoing

12   protection which I think was entirely appropriate under the

13   circumstances.

14       THE COURT:  So Ms. Musell, if you have orders that

15   other courts have issued or authority that would guide the

16   Court's ultimate determination of whether or not to modify or

17   clarify the language in the order that's already issued, could

18   you provide that by 9:00 a.m. tomorrow morning?

19       MS. MUSELL:  I can try, your Honor.  I do have another

20   court appearance to make today, but I will certainly do my

21   best.

22       THE COURT:  All right.  It can be in a -- again, it

23   doesn't need -- I don't need briefing.  If it's identification

24   of authority and orders issued by other courts, that's

25   sufficient.

1          All right.  So that the parties know not

2     unsurprisingly, the Court has heard from some other third

3     parties.  Just to be fully transparent, the Court understands

4     the clerk's office received an anonymous phone call from

5     someone, and the clerk's office, as the Court understands it,

6     simply advised that person that they could put something in

7     writing and provide it to the Court.  I don't believe I've seen

8     that.  A person's communication, my understanding of the

9     communication, again this is relayed to me third hand, is it's

10    someone who was agreeing with Dr. Golding.

11         I have also received in a priority mail express

12    envelope yesterday a letter from a person who works for CDCR

13    disagreeing with Dr. Golding based on news reports alone, as I

14    understand it.

15         So an additional item for Monday will be how should

16    the Court handle communications.  I will disregard anonymous

17    communications without any detail, but to the extent I'm

18    receiving communications from persons who identify themselves

19    in writing, what should I do with those.  We'll talk about that

20    on Monday.

21         So at this point we're going to have a status on

22    Monday at 1:00.  I will let the parties and Dr. Golding know if

23    the verification he provides by Friday the 19th at noon

24    eliminates for now the need for him to appear.  Assuming the

25    Court does proceed to an evidentiary hearing on potential areas

1    of fraud on the Court, I do anticipate directing Dr. Golding to

2    appear with the Court leading the questioning of him.  During

3    any such hearings, we'll again discuss the schedule for that

4    kind of proceeding on Monday.

5         Ms. Musell, would you, even if Dr. Golding is not

6    required to appear, would you plan to attend that session while

7    other parties would be, I would expect them in the courtroom, I

8    would give you the opportunity to appear telephonically if you

9    request.

10        MS. MUSELL:  Thank you, your Honor.  I'm happy to

11   appear in person if it assists in moving the matter forward.

12        THE COURT:  All right.  It may well.  So again that

13   will be Monday at 1:00 p.m.

14        At this point I am prepared to clarify the language in

15   my order, but I need to see if the parties can meet and confer

16   and provide me with some further guidance and also see if

17   Ms. Musell has time to provide me with some additional

18   information by tomorrow morning at 9:00 a.m.

19        MR. GIBSON:  Your Honor, this is Andrew Gibson.  Just

20   to perhaps forego a need for meeting and conferring based on

21   what plaintiff's counsel stated, and I don't want to misstate

22   Ms. Ells' position, so correct me if I'm wrong, but plaintiffs'

23   position is that paragraph --

24        THE COURT:  Mr. Gibson, at this point -- I'm sorry.  I

25   don't -- this session is not to facilitate a meet and confer.

1          MR. GIBSON:  I understand that, your Honor.  But I

2     would like to speak with my clients, and I would like to speak

3     with them after we get off the phone call.  So if this will

4     help clarify that, that's the reason I'm bringing this up

5     because for a week we haven't been able to speak to them.  So

6     if plaintiffs are willing to say that we can speak to our

7     clients on a voluntary basis, I think that goes a long way

8     towards that relief.

9          THE COURT:  I suggest you pick up the phone

10    immediately following this session and talk to Ms. Ells.  If

11    you get me something in writing by noon today or by 11:00 a.m.

12    today, I will consider it promptly.  I need you to put in

13    writing a clarification of your position with proposed language

14    for modifying the Court's order for me to be able to act on

15    your request.  And my prior order provided for meet and confer.

16    I don't understand how you can possibly read it to require that

17    you divulge attorney-client privileged or attorney work

18    product.  I think that's a very hyperreactive reading to that

19    order.

20         MR. GIBSON:  I don't think so, your Honor.  I think

21    the meet and confer only regarded topics outside of that, of

22    the immediate prohibition.  So there was no meet and confer

23    regarding the Court's paragraph 4.  The meet and confer was

24    with regards to paragraph 5, anything that flows through the

25    good faith efforts to --

1          THE COURT:  Hopefully that's clarified now.  If you

2     provide me with a stipulation or clarification today yet, I'll

3     consider it as soon as it comes in.

4          All right.  I'll issue an order otherwise confirming

5     our discussion today, and I'll see you Monday at 1:00 p.m.

6     Thank you.

7          THE CLERK:  Court is in recess.

8          (The proceedings adjourned at 10:16 a.m.)

9                              --oOo--

10    I certify that the foregoing is a correct transcript from the

11    record of proceedings in the above-entitled matter.

12                              /s/ Kacy Parker Barajas

13                              _____
                                KACY PARKER BARAJAS
                                CSR No. 10915, RMR, CRR, CRC

14

15

16

17

18

19

20

21

22

23

24

25