1                    IN THE UNITED STATES DISTRICT COURT
                       EASTERN DISTRICT OF CALIFORNIA
2            BEFORE THE HONORABLE KIMBERLY J. MUELLER, JUDGE


3


4    RALPH COLEMAN, et al.,

5                     Plaintiffs,
     vs.
6                                           No. 2:90-CV-0520 KJM
     EDMUND G. BROWN, JR.,
7    et al.,

8                     Defendants.
     _____/

9


10

                             ---o0o---
11
              REPORTER'S TRANSCRIPT OF PROCEEDINGS
12                    RE: STATUS CONFERENCE
             MONDAY, OCTOBER 22ND, 2018, 1:00 P.M.
13
                             ---o0o---
14


15

     APPEARANCES:
16
     For Plaintiffs:          ROSEN BIEN GALVAN & GRUNFELD LLP
17                            MICHAEL BIEN, Attorney At Law
                              LISA ELLS,  Attorney At Law
18                            JEFFREY BORNSTEIN, Attorney At Law
                              JESSICA WINTERS, Attorney At Law
19                            50 Fremont Street, 19th Floor
                              San Francisco, CA  94105
20


21   (Appearances continued on page 2.)


22

23   *Reported by:  CATHERINE E.F. BODENE, CSR #6926, RPR*
                    *Official Court Reporter USDC, 916-446-6360*
24                  *501 I Street, Room 4-200*
                    *Sacramento, California  95814*
25
     *TRANSCRIPT PRODUCED BY COMPUTER-AIDED TRANSCRIPTION*

```
 1                      APPEARANCES CONTINUED

 2                           ---o0o---

 3

 4    For the Defendants:      OFFICE OF THE ATTORNEY GENERAL
                               ANDREW GIBSON, Deputy AG
 5                             600 West Broadway, Suite 1800
                               San Diego, CA  92101
 6
                               OFFICE OF THE ATTORNEY GENERAL
 7                             JAY RUSSELL, Supervising Deputy AG
                               455 Golden Gate Avenue, Suite 11000
 8                             San Francisco, CA  94102

 9                             OFFICE OF THE ATTORNEY GENERAL
                               ELISE THORN, Deputy AG
10                             1300 I Street
                               Sacramento, CA  95814
11

12

13    Special Master:         PANNONE LOPES DEVEREAUX & O'GARA LLC
                               MATTHEW A. LOPES, JR., Atty. At Law
14                             1301 Atwood Avenue, Suite 215 N
                               Johnston, RI  02919
15

16

17    For Dr. Golding:        STEWART & MUSELL
                               WENDY E. MUSELL, Attorney At Law
18                             2200 Powell Street, Suite 440
                               Emeryville, CA  94104
19

20

21

22

23

24

25                           ---o0o---
```

1          SACRAMENTO, CALIFORNIA, MONDAY, OCTOBER 22ND, 2018, 1:00 P.M.

2                              ---o0o---

3               THE CLERK:  Calling Civil Case 90-520, Coleman, et

4     al., versus Brown, et al.  On for status conference.

5               THE COURT:  All right.  Good afternoon.

6               If I could have appearance for Coleman.

7               MR. BIEN:  Good afternoon, Your Honor.  Michael Bien,

8     Lisa Ells, Jeff Bornstein and Jessica Winter on behalf of the

9     plaintiff class.

10              THE COURT:  Good afternoon to all of you.

11              For the defense?

12              MR. GIBSON:  Good afternoon, Your Honor.  Andrew

13    Gibson, Jay Russell and Elise Thorn.

14              THE COURT:  All right.  Good afternoon.

15              MS. MUSELL:  Good afternoon, Your Honor.  Wendy Musell

16    for Dr. Golding.

17              THE COURT:  All right.  Miss Musell, would you like to

18    come forward, or are you comfortable observing?

19              MS. MUSELL:  Whatever Your Honor would like for

20    Dr. Golding we're more than happy to do.

21              Given we're not a party, I thought it would be

22    appropriate not to sit at a party's table.  Whatever Your Honor

23    would like.

24              THE COURT:  It is fine if you observe from the

25    audience.  I'll ask you if you want to make a statement once I

 1    cover other business.

 2              MS. MUSELL:  Thank you, Your Honor.

 3              THE COURT:  And then just so it is clear, there is one

 4    law clerk monitoring the hearing by phone because she's not

 5    able to be present, but that person will not be saying

 6    anything.  So I think I heard something on the phone, but we

 7    should not hear anything else.

 8              The special master is present, Mr. Lopes.

 9              So here's my schedule.  This is essentially a type of

10    case management conference at this point.  I do first want to

11    address the question of whether or not Dr. Golding's report

12    will be filed under seal, filed with any redactions on the

13    public docket, essentially the status of the Golding report

14    based on the parties' provision of legal standards last Friday.

15              Then I want to talk about how to address the three

16    subject areas that I have identified as being on parallel

17    tracks.  I have some proposals I would like the parties to

18    respond to regarding exploring any suggestion of fraud on the

19    court's -- civil fraud on the court, repairing or improving

20    existing data reporting mechanisms, and clarifying prior court

21    orders of the Program Guide as necessary so there can be no

22    doubt about what the data being submitted to court means.

23              We'll talk about the hearing that's been continued to

24    next week at this point.  There is a status currently set, I

25    believe, for December 14th.  I had thoughts about how to

1    convert and clarify what is going to go on at that status.

2            So first, with respect to Dr. Golding's report and

3    whether or not that should be filed, and if filed, under seal

4    or not under seal and with any redactions.

5            I think it is undisputed the court would certainly

6    redact from any public filing the names and identifying

7    information of any persons who qualify as patients, people

8    receiving treatment.  The question is, if the report is filed

9    publicly, would there be additional redactions?

10           First, just a couple of questions based on terms.

11   Does anyone seriously dispute that the report qualifies as a

12   judicial record?

13           Mr. Bien or Miss Ells, whoever is handling this?

14           MS. ELLS:  We do not dispute that.  We think it is

15   very clear under the law that it is a judicial record.

16           THE COURT:  You agree with that, Mr. Gibson, or

17   whoever is handling this?

18           MR. GIBSON:  No, Your Honor, we don't agree it is a

19   judicial record.

20           THE COURT:  So what's the authority on that point?

21           MR. GIBSON:  Well, Your Honor, Dr. Golding didn't file

22   this.  It wasn't filed under any applicable rule of civil

23   procedure, whether it can be challenged under Rule 12 or

24   Rule 11.

25           We don't see why it is a judicial record other than

1    plaintiffs chose to file it under seal after receiving it from

2    defense counsel.

3              THE COURT:  It is not filed under seal.  It is being

4    retained in camera, just so that is clear.

5              The court only approves sealing.

6              MR. GIBSON:  Understood, Your Honor.  They requested

7    it.  My apologies.  Other than that, Your Honor, we don't

8    believe it qualifies as a judicial record.

9              THE COURT:  The report was provided first to a court

10   receiver, and then also to the special master, correct?

11             It's made its way into the court's hands.  The court

12   has the report.  Does that affect the characterization of the

13   report as a form of judicial record, even if not accompanied by

14   a traditional filing?

15             MR. GIBSON:  Yes, Your Honor.  I think the -- it's

16   the -- we're cautioning calling it a judicial record, giving it

17   the gravitas of a court record when it is not -- it wasn't

18   submitted by a party.

19             To us it would be akin to a correspondence from an

20   employee of CDCR to the court, which the court has already

21   deemed would be returned to sender but under the discretion of

22   the court forwarded to the special master.

23             THE COURT:  So let's just assume for sake of argument

24   the court is exercising its discretion to consider the contents

25   of this report.  I'm not prejudging what my conclusion will be,

1    but if the court, as a public institution is going to consider

2    the contents, and it is going to do so in public proceedings,

3    doesn't that weigh in favor of its publication, even if

4    redacted?

5             MR. GIBSON:  Well, Your Honor, I think the case law

6    speaks for itself in terms of what the presumption is.  I mean,

7    obviously we feel that we -- that the contents of the report,

8    the manner in which it was presented overcome that presumption.

9             MS. ELLS:  Your Honor, may I briefly respond?

10            THE COURT:  You may.

11            MS. ELLS:  A party did file this document, Your Honor.

12   We filed this document when defendants chose not to.

13            THE COURT:  Was it filed?

14            MS. ELLS:  Well, we requested to file it under seal in

15   association with our status conference request, which the court

16   granted.

17            Defendants chose to refer to the report without

18   seeking to actually provide it to the court when they asked for

19   judicial actions based on its contents.  They asked this court

20   to continue various proceedings based on the allegations in

21   that report.

22            The court is taking judicial action based on a report

23   that the public should see.  And it involves public actors, and

24   it involves matters of great public concern.  And I think there

25   is no question it is in the court's hands.  The court is taking

1    judicial action based on it.

2          We've had three status conferences at this point.

3    We've had continuances of hearings that had previously been

4    scheduled.  We've had various effects within the litigation in

5    terms of plaintiffs' counsel backing out of a tentative

6    agreement that we had reached with defendants.  That was

7    predicated on data that Dr. Golding claims is false.  He's

8    claimed that under oath at this point.

9          So I think there is no question it is a judicial

10   record.  And I think there is similarly absolutely no question

11   that it must be filed in the public -- in the public docket.

12         THE COURT:  All right.

13         MS. ELLS:  Also, Your Honor --

14         THE COURT:  I'm really trying to clarify definitions

15   to make sure I understand the parties' positions.

16         In terms of the standard, do the parties have a clear

17   position?  Is it compelling reasons?  Is it good cause?

18         What's the standard I apply given the nature of this

19   filing --

20         MS. ELLS:  There's no --

21         THE COURT:  -- if it is a filing?

22         MS. ELLS:  Excuse me, Your Honor.

23         There is no question it is a compelling interest

24   standard.  The Ninth Circuit clarified in the Center for Auto

25   Safety case that the question of whether or not the good cause

1    standard or the compelling interest standard applies is whether

2    or not the materials are, quote, "more than tangentially

3    related to the merits of a case."

4         I think there is no question that the allegations in

5    here by the state's top psychiatrist, systemwide, go to the

6    merits of this case.  His allegations are that he --

7         THE COURT:  Well, you --

8       (Court Reporter requests one speaker at a time.)

9         MS. ELLS:  This is already in the public record, that

10   his allegations concern compliance and monitoring and whether

11   or not the special master and the court were misled, and

12   various other issues that we haven't even gotten to in these

13   proceedings.

14        But there is no question that this is all at the very

15   heart of this case, particularly in the remedial stage where

16   this court and the parties and the special master are all

17   relying on data and other representations made by the defense

18   counsel that are now seriously called into question by one of

19   their very top people.  And indeed, their very top

20   psychiatrist.

21        And I should also note that before this report came

22   forth, Dr. Golding was already on our witness list for the

23   telepsychiatry hearing that defendants asked to push out, so...

24        THE COURT:  I understand all of that.  That is

25   correct.

1          Your position, Mr. Gibson, on the standard?

2          MR. GIBSON:  Yes, Your Honor.  Again, this is an

3    unusual circumstance.  I just want to speak to exactly what

4    plaintiffs' counsel was addressing.  We have to be very careful

5    talking about the contents of the report until the court

6    actually issues its order releasing any of the content.

7          Now, going back to the standard, we believe it is the

8    good cause standard because there is nothing on point in this

9    case.  This isn't a motion.  This isn't anything akin to what

10   the case law cited by plaintiffs' counsel, which was a

11   preliminary injunction, which is akin to a dispositive motion,

12   which that's what -- that was previously the test, whether or

13   not it was dispositive versus nondispositive.  That's what we

14   believe is the -- would be the standard in this case, is good

15   cause.

16         So I mean, because of the unusual nature of this, it

17   wasn't the subject of any motion or discovery or anything of

18   that nature, we believe the good cause standard applies.

19         THE COURT:  All right.  Then just looking at some of

20   the authority, in the defense brief in particular, Docket No.

21   5977, recognizing it's a brief on standards, so is the defense

22   suggesting that Federal Rule of Civil Procedure 12(f) actually

23   does apply here, that there is redundant, immaterial,

24   impertinent or scandalous content to the report?

25         MR. GIBSON:  No, Your Honor.  We're saying if this was

1   filed under the Rules of Civil Procedure, then we would have

2   the opportunity to challenge it.  Not that we would, but that

3   there would be an opportunity.  But we don't have the

4   opportunity.  Or under Rule 11.  Those were my arguments

5   previously.

6          THE COURT:  Then as the plaintiffs point out, many of

7   the protections accorded to whistleblower communications are

8   meant to protect the whistleblower.

9          Those would not apply.  That is one primary purpose.

10  Agreed?

11         MR. GIBSON:  No.  I believe that one of the purposes

12  is to protect the identity of the whistleblower.

13         Now, I don't think that what plaintiffs' counsel has

14  cited in their briefing talked about the disclosure of

15  information as to others or to the content itself.

16         THE COURT:  And there, isn't the critical question

17  with respect to the identity of others disclosed -- apart from

18  patients, people receiving treatment -- the persons disclosed

19  are public employees?

20         Agreed?

21         MR. GIBSON:  Yes, Your Honor.

22         THE COURT:  All right.  Is there any exception to that

23  general statement, that the identity of any other persons,

24  those persons are public employees?

25         MR. GIBSON:  Your Honor, I think the point is is that

1   you can point out that I am a public employee, but I think when

2   you put it into the context of the allegations made in

3   Dr. Golding's allegations, that's when you have a whole

4   separate issue that needs to be resolved.

5          And again, this particular issue hasn't been before at

6   least the Ninth Circuit, as far as we understand, but by

7   analogy we can refer to state law, which holds these kinds of

8   allegations confidential pending an investigation.

9          THE COURT:  I have no doubt that within 30 seconds of

10  my making a decision there will be a notice of appeal such that

11  the Ninth Circuit can clarify this question.  So I will take

12  account of that possibility.

13         In terms of the investigation, there is a concern, in

14  certain context, about protecting the integrity of

15  administrative investigations, of any private investigations.

16         Under no circumstances is this court currently

17  contemplating any kind of criminal referral, just so that is

18  clear.  The investigation, to the extent that word is even

19  appropriate at this point, is going to be in the form of a

20  focused evidentiary proceeding before this court.

21         So are any of the cases that you have cited in your

22  brief, are they addressing those circumstances, where the court

23  is not going to refer the matter for any third-party

24  investigation?

25         No administrative investigation.  No private

1  investigation.  This court will, as it always does, conduct

2  itself in public.  It will hold a public hearing, and we're

3  going to talk about the details of that in a bit.  But do any

4  of the cases address that circumstance, where the court has

5  taken upon itself the need to clarify in particular whether or

6  not there has been any civil fraud on the court?

7          Mr. Gibson?

8          MR. GIBSON:  No, Your Honor.  I didn't see anything on

9  point.  However, it was defendants' understanding that the

10  issue as to whether or not there would be an investigation

11  and/or an evidentiary hearing was still up for further

12  discussion.

13          So we were operating under that understanding, is that

14  there would be an independent investigation by either the

15  special master or some other third party, whomever the court

16  may choose as best fit to conduct that investigation.

17          THE COURT:  At this point the court is not

18  contemplating that.  The court is contemplating a procedure

19  whereby we go through some steps to identify the areas to be

20  covered by a focused evidentiary hearing.  We'll do that

21  through public filings.  The court will ultimately finalize a

22  list, and then we'll set a date for an evidentiary hearing.

23          So I am not -- I'm not planning on having any

24  independent investigation.

25          MR. GIBSON:  Your Honor, just one point of

1   clarification was that defendants' previous agreement to hold

2   in abeyance any kind of state investigation was under the

3   impression that the court would be conducting their own

4   investigation.

5          So with that being said, the state should be allowed

6   to do what it is permitted to do under state law and conduct

7   that investigation.  And therefore, that does have -- it could

8   implicate what we've cited in our briefing, which is that we

9   would like to maintain the integrity of any investigation so

10  that information that is gleaned from Dr. Golding's allegations

11  and any subsequent investigation can be used to further get to

12  the truth from witnesses, rather than having it put out into

13  the public's sphere.

14         THE COURT:  Well, I thought I made clear at the last

15  status that I was going to preside over evidentiary proceedings

16  myself, and I had read the state's filing in that to understand

17  that.

18         I can double-check that.

19         In terms of the other cases, many of the cases the

20  defense cites are cases involving private parties only.  In

21  terms of the Buckovetz case, a District Court case out of the

22  Southern District of California, a case against the U.S.

23  Department of Navy, that involved a FOIA request, personnel

24  records and allegations of sexual harassment.

25         The court decision there was channeled by those

1   considerations and seemed to turn on the concern regarding

2   personal facts that, under the circumstances, legitimately

3   could be kept from the public eye.

4          So that case is quite distinguishable, is it not --

5          MR. GIBSON:  Again, Your Honor --

6          THE COURT:  -- from the facts here?

7          Sexual harassment is in no way the kind of alleged

8   behavior akin to misrepresenting data?

9          MR. GIBSON:  No.  I don't want to equate sexual

10   harassment and the allegations by Dr. Golding.  But I do feel

11   that the allegations by Dr. Golding are serious, and that the

12   same kind of interests are found here as in the Buckovetz case.

13          THE COURT:  Then also looking at U.S. v Chow, the

14   Northern District case, in that case it was the names of

15   unindicted third parties were captured in wiretaps -- Title III

16   wiretaps.  And there the court was considering the privacy, in

17   part, of unindicted coconspirators who were identified only

18   through intercepted communications with constitutional

19   implications.  So again, distinguishable, no?

20          MR. GIBSON:  Again, Your Honor, I think what -- we're

21   not trying to analogize the allegations to criminal.  It is

22   simply to show that there has been no formal charges or

23   investigation done against the individuals.

24          THE COURT:  Even if the state were to proceed with its

25   investigation, would that result in criminal charges?

1          MR. GIBSON:  No, Your Honor.  Your Honor, I can't

2     speak to what would happen with the investigation.

3          THE COURT:  That's not contemplated?

4          MR. GIBSON:  Your Honor, I'm not aware of any state

5     investigation that is contemplated in any fashion whatsoever.

6     I'm simply saying that's a possibility that should be

7     permitted.  And if the state wants to investigate, that they

8     should be able to do so on an impartial basis without this

9     information already being put out into the public sphere.

10         THE COURT:  On that point, Miss Ells?

11         MS. ELLS:  Your Honor, I think, again, that none of

12    the case law, as you said, supports the position that

13    defendants are in, which is the people at issue that the state

14    wants to conceal from the public are public actors, and they

15    are working on a case of great public concern.

16         And they also are working in a context in which they

17    are not innocent bystanders.  They are accused by the state's

18    top psychiatrist, under penalty of perjury, of engaging in

19    wrongdoing.

20         And the cases that the state has focused on are all

21    innocent third parties or confidential informants whose lives

22    are literally at risk -- their safety is at risk if their names

23    are released to the public.

24         And most of the cases that the state relies on, if not

25    all, are all -- they're all under the lower standard.  They are

1   not applying the compelling interest standard that applies

2   here.

3           So I think that if the court views the law

4   appropriately, which is that this is, again, under Ninth

5   Circuit law, this is evidence that goes to the very heart of

6   this case.

7           Every aspect of the remedy in this case relies on the

8   representations made by defendants about their data and about

9   their compliance and many other aspects of the report that we

10  haven't even discussed.  So every action that this court

11  engages in, including whatever steps this court takes next with

12  respect to this report itself, and its exhibits, all of those

13  are at the very heart of this litigation and of this case so it

14  must be a compelling interest standard.

15          And under that standard, it is a very strong

16  presumption of public access.  And defendants have to provide

17  specific articulable facts supporting any redactions that they

18  want, and they can't be hypothetical conjecture.

19          And what the state is asking this court to do is

20  basically say, Oh, there is a risk of reputational harm so we

21  should protect these people's identities.  But Your Honor, if

22  that's the standard, literally any case, civil or criminal,

23  that involves embarrassing allegations that could hurt

24  somebody's reputation would have to be sealed.

25          It is just far beyond what the First Amendment and the

1    Public Right of Access will allow.  And again, this is a case

2    that has great concern for the public and for the plaintiff

3    class.  And these allegations go to the very heart of the

4    matter, and they must be brought to the public light.

5            And there is no justification under any of the cases

6    that defendants have cited, most of which literally don't even

7    apply the correct standard, and almost none of which would

8    redact any sort of private information of any sort.

9            Many of them just articulate what the standard in the

10   Ninth Circuit is without applying it in any context that would

11   be analogous.  And the ones that are closest to the analogy are

12   ones that are easily distinguishable for the reasons that the

13   court has already articulated.

14           So I think there is no basis here to engage in the

15   redaction or the sealing of this very important report that the

16   court is going to take action based on and that underlies every

17   aspect of this litigation at this point.

18           THE COURT:  All right.  Final question --

19           MR. GIBSON:  Your Honor, if I may, can I just respond

20   shortly?

21           THE COURT:  Well, rather than back and forth -- I

22   mean, is there -- is there something I haven't heard already?

23           MR. GIBSON:  Well, first off, plaintiffs said we

24   didn't use any analysis.  That was under the court's

25   direction.

 1          THE COURT:  That's correct.

 2          MR. GIBSON:  Okay.  The other is that plaintiffs

 3    represented that we're only talking about privacy.  That is not

 4    it.  That is part of it.  But of course the overriding concern

 5    is the impartiality of any subsequent investigation by the

 6    state auditor.

 7          THE COURT:  All right.  So final question.  I

 8    anticipate issuing a written order to explain myself, given the

 9    lack of clear guidance under these exact circumstances.  I

10    expect it will be a fairly brief order.  I'll issue something

11    by tomorrow.  I'll think a little more about this if the state

12    engages in its own investigation question.

13          Should I stay the implementation of that order for --

14    again, my guess is the brief's already written -- for 48 hours

15    to allow the defense an opportunity to appeal?

16          Miss Ells, any reason not to do that?

17          MS. ELLS:  Well, Your Honor, I think that you should

18    probably have them articulate why a stay would be appropriate

19    here.  Because in our view there is no likelihood they'll

20    prevail on the merits, and we don't think that the Ninth

21    Circuit would view this kind of appeal favorably.

22          We think it is an abuse of discretion standard.  This

23    court has a lot of discretion to do whatever it thinks is

24    appropriate.  And we'll just -- you know, the one issue that we

25    haven't already articulated is this is already a public record

1     under the California Public Records Act.

2          So I think that the appeal serves little purpose.

3     This is already something the public has a right to under

4     California law.  And so it doesn't actually serve any purpose,

5     and there is no irreparable injury.  And we think an appeal

6     would be frivolous.

7          THE COURT:  Are those arguments that have to be made

8     necessarily to the Appellate Court, if the court determines the

9     report should be unsealed?

10         MS. ELLS:  Well, they're required to move in this

11    court for a stay first, Your Honor.  The Ninth Circuit requires

12    that.

13         THE COURT:  I guess my point is, rather than

14    accompanying the order -- assume for sake of argument that I'm

15    going to unseal the report, typically I would immediately file

16    it on the docket.  The question is, are there such significant

17    issues here that I should delay the filing on the docket, at

18    the very least, if the defense is going to appeal that

19    decision?

20         MR. GIBSON:  Your Honor, I don't want to make any kind

21    of decisions in a vacuum.  We don't know what the order is

22    going to be, but if the hypothetical order that the court is

23    going to issue is to unseal Dr. Golding's allegations, without

24    redacting even the names of individuals Dr. Golding has

25    identified, notwithstanding the inmate patients --

 1          THE COURT:  I have a redacted version of the report

 2    that redacts the names of patients.

 3          MR. GIBSON:  Yes, Your Honor.  I understand that.

 4          You have plaintiffs' version.  You have not received

 5    defendants' version.  We were following prior court orders on

 6    those grounds.  We're happy to provide that to you.

 7          However, again, just with the hypothetical being that

 8    you are going to unseal that document, defendants would request

 9    at least a 48-hour time frame between the order and any actual

10    unsealing of the document to determine the best course of

11    action, including filing an appeal.

12          THE COURT:  Do you think the plaintiffs missed -- I

13    believe plaintiff and Dr. Golding may have both provided

14    redacted versions of the report.  They may be identical.

15          Do you think they -- do you, in good faith, believe

16    they've missed anything that needs to be redacted if the court

17    limits redactions to patient identification and confidential

18    medical information alone?

19          MR. GIBSON:  Yes, Your Honor.  We are also saying if

20    the court is going to unseal the document, the court should

21    also redact identifiers for those people that Dr. Golding is

22    alleging --

23          THE COURT:  I understand.  The public employees who

24    are not patients who are identified as engaging in

25    communications that underlie Dr. Golding's allegations?

1    Right?

2            MR. GIBSON:  Yes, Your Honor.  All identifiers of

3    those individuals.  Yes.  That information -- if the court is

4    intending not to redact that information, then defendants would

5    need time between the court's order and any actual unsealing of

6    the document to determine the best course of action.

7            THE COURT:  All right.  But if the court limits

8    redaction to patient information only, do you agree what I have

9    in redacted form satisfies that concern?

10           MR. GIBSON:  One minute, Your Honor.

11       (Defendants counsel confer.)

12           MR. GIBSON:  Your Honor, we haven't done a close

13   analysis between what plaintiffs submitted and what Dr. Golding

14   submitted.  My understanding is Dr. Golding's exhibits don't

15   redact all inmate identifiers.

16           MS. ELLS:  Your Honor, if I may, plaintiffs took that

17   upon themselves and provided a copy to defendants and this

18   court that did so.

19           THE COURT:  All right.  Those are my only questions

20   about the Golding report.  I expect that you'll see an order

21   shortly.

22           MS. ELLS:  Your Honor, may I make one small point

23   about the effect of a stay?

24           THE COURT:  At this point I think you have a

25   well-taken point, that it would be for defense to move for a

1  stay of filing on the public record.

2          The question is, if I'm wrong, should I file it on the

3  public record, even if it is on the docket for a short period

4  of time?

5          That's the question really.

6          MR. GIBSON:  Your Honor, I believe there would be

7  irreparable harm by that.  Even on the record for a matter of a

8  day, essentially it would be the horse out of the barn and you

9  can't get it back in.

10          THE COURT:  I'm anticipating those arguments, and I'm

11  trying to think through all the ways in which the dominoes fall

12  here.

13          So now that I have said that, Miss Ells, anything

14  further?

15          MS. ELLS:  I guess the final point we would make, just

16  preliminarily before we see what defendants would say in their

17  stay papers, is there is also a concern it might prejudice the

18  ability of class members to seek relief in separate proceedings

19  that might be related or affected by the allegations in

20  Dr. Golding's sworn statement and exhibits, which, again, are

21  already subject to the PRA, and which defendants have provided

22  no specific articulable basis for sealing.

23          THE COURT:  Should I consider the PRA?  I know there

24  is some references in the cases.

25          Do I need to go through that analysis here?

1          MS. ELLS:  No.  I think it supports Your Honor's --

2     well, I'm presuming that Your Honor is inclined to consider

3     filing the version that only redacts patient names.  And I

4     think it supports both the lack of irreparable injury since

5     these are documents that are already public, ostensibly, under

6     the Public Records Act, and it supports the sort of view that

7     this court has taken that -- or I mean, that plaintiffs have

8     taken, that this is public actors, acting in their official

9     capacities, accused by, at the very highest levels, of

10    wrongdoing, and the public has a right to know that.

11         THE COURT:  All right.  What I'm doing here is

12    exploring all the possible angles to make certain I'm not

13    missing some aspect --

14         MR. GIBSON:  Your Honor --

15         THE COURT:  -- of our law as it applies to this report

16    given the nature of the report in the context of these

17    proceedings.

18         So Mr. Gibson?

19         MR. GIBSON:  Yes, Your Honor.  Thank you.  One last

20    point.

21         Defendants are not attempting to prevent the

22    disclosure of Dr. Golding's allegations in perpetuity, simply

23    to allow an investigation to be done.

24         All of the cases cited by plaintiffs refer to an

25    investigation, investigation and disclosure of investigation

1    after an independent agency has done what they're supposed to

2    do.  State law permits the state auditor to conduct an

3    investigation and hold the allegations in confidentiality

4    pending that investigation.

5            THE COURT:  Doesn't that assume the allegations are

6    made internally within the administrative framework in which

7    that auditor works?

8            MR. GIBSON:  Yes, Your Honor.  But that's also the

9    same way that CDCR works internally.  Their policy of internal

10   affairs is to keep all allegations pending any kind of

11   investigation, which they are entitled to do.  Notwithstanding

12   that, Dr. Golding chose to submit this document to the

13   receiver's office and the PLATA court.

14           MS. ELLS:  Your Honor, nothing in that --

15           THE COURT:  Just so -- I don't think I really need --

16   this is a -- this is an Article III Federal Court, and I'm

17   considering this without deference to whatever any state

18   auditor wants to do.  I'm considering it in the context of what

19   happens in this case.  And so I just don't see how those --

20   that's not even an analogy.

21           I cannot be held to a delay occasioned by whatever a

22   state auditor feels the need to do, and that's why I was asking

23   you about the cases because none of the cases are analogous to

24   this situation.

25           MR. GIBSON:  Yes, Your Honor.  It's simply state law.

1    It is not binding precedent on this court.  It was simply one

2    of the concerns that the defendants have, maintaining the

3    integrity of any investigation so that any witnesses that were

4    subsequently interviewed aren't already impacted.

5           THE COURT:  That's the one thing I'm going to think

6    briefly about.  But Dr. Golding, who had the right to maintain

7    confidentiality, request confidentiality, is requesting

8    publication of the report.

9       (Miss Rifkin stands in the audience.)

10          In terms of -- you're not before the bar, Miss Rifkin.

11   I recognize you, but this is a separate proceeding.

12          In terms of how the case moves forward, my plan,

13   subject to hearing from you this afternoon, is with respect to

14   identifying whether or not there is any potential fraud on the

15   court in terms of the manner of reporting of information, my

16   plan is to provide to the parties within -- I believe within

17   seven days a list of areas where I believe that that's a

18   question that has been raised by Dr. Golding's report.

19          I would do that in an order on the docket.  I would

20   give the parties seven days to respond and tell me if they

21   disagree with the way I have defined the areas.

22          Within seven days then I would issue my own final

23   list, and then within 30 days, or perhaps at time of the

24   December 14th status, I would have an evidentiary hearing on

25   those areas.

1          So that's my plan with respect to any areas where I

2    believe there is a serious question about potential fraud on

3    the court.

4          With respect to the other two areas I previously

5    identified in my order of October 17th, I would direct the

6    parties to meet and confer on both the question of repair or

7    improvement of existing data reporting mechanisms and the

8    identification of orders and Program Guide provisions that need

9    to be clarified.

10         This would be with the special master's supervision.

11   I would ask the parties to meet and confer within the next 14

12   days, again coordinating with the special master, and provide

13   to the court a joint status report on their identification of

14   areas where those two approaches are required.

15         And if there is the need for hearings on those areas,

16   then the parties would also propose a schedule for addressing

17   those issues.  It could dovetail with any evidentiary hearing.

18   We could add resolution of those two issues to the status

19   conference on December 14th.

20         So any response to that proposal that we work between

21   now and the end of the year to try to resolve all the issues

22   related to the court's receipt of data that is essential to its

23   assessing of the remedy in this case and do it in that way?

24         The court is taking the lead on any potential fraud on

25   the court.  The parties, working under the special master's

1    supervision, to identify other areas that may not rise to the

2    level of fraud but that need fixing or clarifying.

3            Mr. Bien?  Miss Ells?

4            MR. BIEN:  Your Honor, it's difficult for us to

5    express the level of impact that the Golding report has had on

6    our view of the litigation and where we are and how we move

7    forward.

8            Until we understand exactly what happened -- and again

9    these are only allegations, but they're Dr. Golding's

10   allegations now under oath -- it's difficult for us to imagine

11   moving forward so rapidly in a meet and confer context.

12           There's a trust element that is critical for the

13   parties and counsel.  Obviously, it is also critical for

14   interactions with the special master and the court.  But from

15   our perspective, in order to do our job on behalf of the

16   plaintiff class, we need to understand a lot more about what

17   happened, the allegations made by Dr. Golding, who was aware of

18   the allegations internally, who made the decisions that he

19   refers to, and if, in fact, there were misrepresentations made

20   to the court, who was party to that decision to make those

21   misrepresentations.

22           While I understand the court and share the court's

23   sense of urgency to move forward with the remedial process

24   because there are clearly serious problems out there that need

25   to be addressed, we are concerned that without an understanding

1  of who is running the ship for the State of California, and

2  whether that entity is moving forward in an appropriate way, an

3  ethical way, a moral way, how can we just proceed in terms of

4  negotiating on the side?

5        Again, I'm just raising the problem that we see.  Many

6  of the --

7        THE COURT:  Just so I understand, it had occurred to

8  me there -- there may be impediments to meeting and conferring

9  in the way that this court prefers the parties do.

10       Do you have thoughts about the second two areas

11 identified in the court's order of October 17th?

12       Do they need to await resolution of the fraud question

13 or --

14       MR. BIEN:  I think --

15       THE COURT:  The defendants are under ongoing reporting

16 obligations.  Those are not being lifted.  So those reports are

17 going to keep coming in.

18       There will be a question mark beside those reports

19 until I get to the bottom of what's gone on here, whether or

20 not it is by virtue of fraud or lack of clarity or, you know,

21 reading orders as expansively as possible.

22       So the thought of having some kind of parallel track

23 was to try to get the court back to a point where it can review

24 the incoming data in a way that it has confidence that it is

25 reading it properly.

1            So what are your thoughts about the other two areas

2     identified on the 17th?

3            MR. BIEN:  In terms of the data, and it's not only

4     computer data, but all of the information that flows from the

5     defendants to the special master and to the court, and

6     obviously to plaintiffs' counsel, I do think that it would be

7     appropriate for there to be a process to verify the data, to

8     fully understand the data, and to make sure that not only the

9     data that was specifically identified by Dr. Golding, but other

10    data we all rely on in making our evaluation of the standard of

11    care and the compliance with court orders is accurate.

12           So I do think we agree the court has identified a

13    critical issue.  I don't think that we're in a position to

14    negotiate the extent of the problem yet.  And it would be -- I

15    do think that we can maybe discuss a process for verifying the

16    data, but it seems that --

17           THE COURT:  So could that be in a -- in a discussion

18    supervised by the special master?  There could be a discussion

19    of the process to resolve all of the issues?

20           I'm trying to understand your position with respect to

21    whether or not any potential fraud on the court first needs to

22    be resolved.

23           MR. BIEN:  I think that questions about the data are

24    now at issue.  We can start the process of determining how to

25    verify the information and make sure it's appropriate, accurate

1    and transparent.

2          We also would make suggestions to the court and

3    special master about the kind of expertise that might be

4    necessary to really understand the data, and perhaps such an

5    auditor or additional resources could be added to the special

6    master team so that the kind of analysis necessary to

7    understand what is driving the various charts and graphs is

8    really a resource, that I'm not sure is on the special master

9    team at this moment.

10          THE COURT:  It is not.  The court has considered

11    whether or not it needs its own independent data auditor.  So

12    that certainly is on the court's mind.  One way or the other

13    there is going to need to be something like that.  So I'm

14    thinking about that.

15          Let me hear from Mr. Gibson, if you're the right

16    person.  What's your thought about these other two tracks as

17    I've called them.

18          Is there anything that can be done in the short-term,

19    or does it need to wait further clarification?

20          MR. GIBSON:  Well, Your Honor, we're open to meeting

21    and conferring with plaintiffs' counsel under the direction of

22    the special master.

23          We respect plaintiffs' position.  We understand the

24    serious nature of these allegations, and we just want to move

25    this forward as quickly as possible, but we want to do so in a

1    thorough manner.  So I think B and C of what the court has

2    identified, you know, essentially assumes that there may be

3    inaccuracies in the data, or if the data was reported in a

4    certain way, it was reported in that way because of

5    deficiencies in the Program Guides or vagueness in prior orders

6    or some kind of error in the mechanism in which the data is

7    reported and gathered.

8            So I think the first step is to determine whether or

9    not -- what the data is reporting and whether or not the data

10   is accurate.  Then we can take those next steps afterwards.  If

11   that investigation or evidentiary hearing or whatever the court

12   wants to identify it, determines that there was some inaccurate

13   data, then the cause for that could be -- could help shape what

14   B and C will be.

15          THE COURT:  All right.  Well, it may be I simply

16   direct the special master in carefully crafted language to meet

17   with the parties.

18          The thought has been -- I think there are certain

19   things in the report that suggest a need for some clarification

20   at the very least.  And ultimately the court may just

21   sua sponte identify those itself, but the thought was there

22   might be certain areas where the parties actually could agree,

23   you know, that there is a problem here, we can fix it, and it

24   would take something off the table in terms of the court's need

25   to develop an evidentiary record.

1          If the trust has eroded to the point where the parties

2     can't even discuss that, or threshold evidentiary findings need

3     to be made first, then we can proceed in that manner.

4          In terms of communications received from

5     non-parties -- other non-parties, do the parties have a

6     proposal as to what the court does with those?

7          At this point I do have one letter.

8          Mr. Bien?  Miss Ells?

9          MR. BIEN:  Your Honor, in the past I think the

10    court -- I would recommend the same -- actually, I don't know.

11    I guess it depends what it is.  Sometimes you get

12    correspondence from class members, and they are usually sent

13    back to class counsel.

14         I would suggest that if someone has submitted

15    something to the court, that it be provided to both sides and

16    they proceed as appropriate.  If it relates to issues under

17    investigation, each side will make use of it, I guess.

18         It is hard to know what -- I guess normally you just

19    reject the filing if it is not made by a party.  But if it goes

20    to an issue before the court, we suggest that it be provided to

21    both sides.

22         THE COURT:  Mr. Gibson?

23         MR. GIBSON:  Your Honor, defendants believe the court

24    has briefly addressed this kind of issue in its April 21st,

25    2016 order, ECF No. 5435, directing that any correspondence

1   from the staff of state agencies shall be returned to the staff

2   with a copy of the April 21st order, and the court, in its

3   discretion, may forward it to the special master.

4          Defendants don't see any reason to change that court's

5   order.

6          THE COURT:  So not treat such filings as a form of

7   discovery that the court shares with the parties?

8          MR. GIBSON:  No, Your Honor.

9          THE COURT:  All right.

10         In terms of the hearing, I believe currently set for

11  next Monday, I don't see how we can proceed with the full

12  evidentiary hearing the court had contemplated.  I believe the

13  foundational data questions need to be resolved first.

14         And so unless anyone really disagrees -- Mr. Gibson, I

15  see Mr. Bien nodding his head.  Do you disagree with that?

16         MR. GIBSON:  No, Your Honor.

17         THE COURT:  So I'm going to vacate that hearing to be

18  reset.  We'll talk about the date by which it could be reset as

19  promptly as possible.  That will be on the agenda for the

20  December 14th status.

21         MR. BIEN:  Your Honor, may I address something?

22         I think if the court is proceeding as it suggests, to

23  have an evidentiary hearing about whether or not there was

24  fraud on the court, plaintiffs' counsel would require discovery

25  to get -- to understand what happened.

1          And to just do a hearing based on the materials in the

2     Golding report is inadequate for us to really respond to

3     whatever defense comes from the other side.

4          So we would request, if there is an evidentiary

5     hearing, to take focused discovery.  I guess we can base it on

6     the list of issues that are identified by the court and the

7     parties.  We can then suggest what kind of discovery and under

8     what limitations.  But without that, we feel that we cannot

9     make a full and fair presentation to the court.

10         THE COURT:  Your position on that, Mr. Gibson?

11         MR. GIBSON:  Well, Your Honor, I see the need to

12    gather information ahead of any evidentiary hearing.  I believe

13    that an independent investigation would be able to have that

14    joint foundation for all parties in terms of what the evidence

15    is.  And the court has done that previously in regards to the

16    special master's reports to the court, and I think that would

17    be -- defendants believe that is the best course of action

18    here.

19         Notwithstanding that, with regards to any hearing

20    on -- I know the court is identifying it as "potential fraud."

21    Fraud is a serious allegation, one that needs to be met by

22    clear and convincing evidence.  So I am concerned about whose

23    burden of proof and who is going to be setting up that evidence

24    at the hearing.  And that will shape in terms of what the

25    discovery is and what defendants need to do.

1        I fail to see how defendants would have the burden of

2    proof at that hearing.

3        THE COURT:  In the parties' filings, in response to

4    the court's initial identification of areas, you'll have a

5    chance to tell me what you think you need for that hearing to

6    be a full and fair hearing.

7        The court had contemplated it would take the lead in

8    asking questions.

9        MR. BIEN:  Your Honor --

10        THE COURT:  My current thinking.  I'll listen to the

11    parties' positions.

12        MR. BIEN:  One thing that we wanted to clarify for the

13    court is that plaintiffs' counsel does not have access to any

14    of the underlying information that's reflected in the data

15    discussed in the Golding report.

16        What we have -- we get some -- we get the same things

17    the court gets.  Sometimes we get, in private meetings and meet

18    and confers, other charts and information.  But we don't have

19    any access to the actual data.  We can't request a report.  We

20    don't have anyone to talk to about what is reflected in the

21    report.

22        So we would have -- obviously we could ask questions

23    based on what Dr. Golding has identified, but we're not -- we

24    don't feel we're in an appropriate position to fully understand

25    the various reports that he discusses and how they're created

1    and what the rules are underlying them.

2            THE COURT:  I'll allow plaintiff to propose the

3    minimum amount of discovery it believes is needed to prepare

4    for any evidentiary proceeding.

5            All right.  I don't have any other questions.

6            Let me ask, Miss Musell, is there anything you would

7    like to say for the record at this point?

8            If so, if you could please come forward.

9            MS. MUSELL:  Thank you, Your Honor.  Dr. Golding

10   thanks you for the opportunity to provide this position.

11           Dr. Golding's position is that it is a compelling

12   interest standard.  However, that it must be balanced against

13   the rights of the inmate patients.  And so Dr. Golding agrees

14   with Your Honor, that those materials that would provide

15   identifiers' names or if there is other identifiers, should not

16   be provided in the public record.

17           We did attempt to do so.  If that was not adequately

18   done, we would certainly like the opportunity to fix that, if

19   that exists.  It is our understanding that should not be in the

20   record for the materials that we provided to the court.

21           Secondly, Dr. Golding is a whistleblower.  There are

22   other whistleblowers, Your Honor, and we need clarification as

23   to whether this goes to the special master, whether it goes to

24   Your Honor.

25           We are in sort of an unprecedented position, and we

1   just want to make sure that we're complying with Your Honor's

2   orders and ensuring that we're not providing information to

3   those we ought not.

4        As to identifiers of public employees, we did not

5   provide a position.  Although, I could not find case law that

6   would support not providing public employees' names.  And

7   Dr. Golding, of course, has come forward after attempting to

8   work within the system.

9        So with that Your Honor, we would like clarity

10  regarding non-party information, about where that should be

11  provided, in what form, what copies go to whom.

12       There is a very long service list, so who should

13  obtain that information and how and in what form, we would

14  request clarity about that.

15       Additionally, if Dr. Golding, is going to be providing

16  testimony, we'd like the opportunity to meet and confer about

17  the dates that that would occur.

18       And we appreciate and think it is entirely

19  appropriate, the court's orders, as it relates to

20  non-retaliation against Dr. Golding and any individuals who

21  assisted him with the creation of that data.

22       We also appreciate the court's order that indicated

23  that there should not be any non-voluntary interviews.  Because

24  of the concern regarding retaliation, we think that is

25  consistent with the court's discretion as set forth in the

1    Chambers case, which Your Honor had cited as well.

2              And with that, Your Honor, we would submit.

3              THE COURT:  All right.  That order approved the

4    parties' stipulation, once they met and conferred on that

5    point.

6              Just so I'm certain I understand, does Dr. Golding

7    contemplate providing any supplemental materials to supplement

8    the report that's already filed, or would it only be in

9    connection with any hearing?

10             At this point I think the earliest there would be any

11   kind of evidentiary proceeding at which the court would

12   request, direct, whatever the right word is, Dr. Golding appear

13   and testify, would be December.  So you will be provided a copy

14   of any orders the court issues setting the hearing, setting the

15   parameters of the hearing.

16             But in the meantime, prior to the court's confirming a

17   hearing date and setting up a process for a witness list,

18   Dr. Golding would be witness number one.  I would consider

19   whether or not the parties wanted me to hear from other

20   persons, although I'm not promising that at all at this point.

21             Is there anything that Dr. Golding would plan to

22   submit prior to confirmation of a hearing date?

23             MS. MUSELL:  Not at this time.  There were matters,

24   without disclosing them, that were within the ambient of the

25   additional exhibits that, as I read them, are somewhat

1    encapsulated areas of concern.  But those were set forth in the

2    three exhibits.

3              THE COURT:  Attached to the report?

4              MS. MUSELL:  Yes, ma'am.

5              THE COURT:  So I'm going to -- for example, if I'm

6    going to order the report filed on the docket, it would be with

7    the exhibits.

8              MS. MUSELL:  Thank you, Your Honor.

9              THE COURT:  Is that understood?

10             MS. MUSELL:  Yes, it is understood.  If there are any

11   other non-party whistleblowers, if there is clarity whether

12   that should be provided to Your Honor or the special master,

13   that would also be greatly appreciated.

14             THE COURT:  To the extent that anyone is attempting to

15   provide information to the court -- I'm not giving legal advice

16   obviously, but I would say provide it to the court.

17             MS. MUSELL:  Thank you, Your Honor.

18             THE COURT:  In the first instance.  All right.

19             MS. MUSELL:  Thank you.

20             THE COURT:  All right.  Thank you very much.

21             Anything further, Mr. Bien?  Mr. Gibson?

22             At this point I'll issue an order on the Golding

23   report, and I'll issue an order on how to move towards an

24   evidentiary proceeding in this court based on the Golding

25   report.

```
 1              MR. BIEN:  Your Honor, I would just say, with all due
 2    respect for the court's inclination that we -- we heard
 3    defendant suggest that perhaps an independent investigation
 4    here of the facts would be beneficial.  We actually agree with
 5    defendants on that suggestion.  We think that the court would
 6    benefit from retaining a private law firm to work at the
 7    direction of the special master and the court with powers to
 8    conduct its own discovery and write a report to the court.
 9              That would then be the basis of an evidentiary
10    hearing, and that might alleviate some of the -- some of what I
11    anticipate to be tensions over plaintiffs' counsel conducting
12    discovery and doing an investigation in anticipation of an
13    evidentiary hearing.
14              THE COURT:  Do you have precedent for that under these
15    circumstances?
16              That was the court's initial inclination.  I
17    considered that.
18              MR. BIEN:  I think that there is --
19              THE COURT:  It is time-consuming.  It is costly.  It
20    wasn't clear to the court that was, in fact, the most
21    appropriate way to proceed.
22              MR. BIEN:  Can I -- my partner Jeff Bornstein would
23    like to address the court, if that's okay?
24              MR. BORNSTEIN:  Your Honor, I recognize that this is a
25    little different than, obviously, the ordinary case where you
```

1   have a private corporation and the need for an investigative --

2   an independent investigation, but it is similar or analogous in

3   the sense of we have a state agency, it is being represented

4   not only by in-house counsel, but also by the State Attorney

5   General, and normally one would expect that there would be a

6   way in which the State Attorney General would be able to come

7   in and conduct that kind of investigation.

8        Here you've got the same problem of who is

9   representing the interests of the agency, especially where the

10  chief psychiatrist is making serious allegations that also

11  include fraud on the court.

12       The court has the ability and the power to order that

13  an investigation take place.  It obviously could have referred

14  this to the U.S. Attorney's office or the FBI for an

15  investigation, civil or criminal.  It is a civil rights case.

16       You could also empower the special master by having

17  him get either experts or other people to conduct that

18  investigation, or the court could, on its own, empower a

19  special prosecutor or special investigator to be able to do the

20  kind of work that needs to be almost prefatory before an

21  informed evidentiary hearing could take place.

22       Obviously the initial thought that the court had, at

23  least that I heard, was to try and ensure that Dr. Golding's

24  allegations passed a certain level of clarity and/or concern.

25  And that's why I think the court wanted to make sure that it

1   was sworn under oath and that he was standing by those

2   allegations.  And we shared that.  But we think that this goes

3   to the heart of the court's orders.  It goes to the heart of

4   the remedies.  It goes to the heart of the care and treatment

5   that is being provided, or they say is being provided, to the

6   class members that we represent.

7        And not having the ability to either engage in

8   discovery or to have an independent party, that is not beholden

9   to CDCR, go in and try and help the court and help us and help

10  the special master figure out what is really going on, we think

11  is critical.  And we think you do have the power to do that.

12  And we do think --

13       THE COURT:  I do have the power.  There is no question

14  about it.

15       Why would I not hear from Dr. Golding first?

16       MR. BORNSTEIN:  You could.  You absolutely could.

17       THE COURT:  At the very least, why would I not explore

18  the areas I identify first before knowing whether or not,

19  rather than escalating from the get-go?

20       MR. BORNSTEIN:  We have no problem with you doing

21  that.  But what I heard you say was something a little

22  different, which was that you have this -- still this idea of

23  the dual track where we are going to try and resolve --

24       THE COURT:  I have abandoned that now because I heard

25  Mr. Bien say that's not really realistic.

1          MR. BORNSTEIN:  I think if that's what your

2     inclination is, that would make sense.  But I thought that you

3     were ruling out an independent investigation.  And I think --

4          THE COURT:  I'm hoping to avoid that, if the truth be

5     known.

6          If the evidence takes me in that direction, then I

7     will certainly consider it.

8          MR. BORNSTEIN:  Obviously -- sorry.

9          THE COURT:  I'm trying to get to bottom of what is

10    going on with tried and true court approaches, without

11    escalating, without ginning up lots of costs and time.  But it

12    may be that I hear from Dr. Golding and it becomes clear that

13    something more is needed.  But I'm not going to presume that.

14         At this point my inclination is to do whatever I can

15    to contain this, while doing the court's business in public and

16    taking into account all of the information that ultimately

17    should inform the court's decision.

18         I don't see appointing an independent investigator

19    now.  I've already said I don't -- I mean, I don't contemplate,

20    unless the evidence take us there, any kind of criminal

21    referral.  And I think civil evidentiary proceedings may be

22    sufficient to get to the bottom of what's going on here.

23         So I'm going to exhaust that possibility first.

24    That's what I'm -- that's what I mean to say.

25         MR. BORNSTEIN:  I understand.

1          THE COURT:  It is the case that, I suppose, the

2     evidence could take us in a direction where something much more

3     is needed.

4          There is a need for some kind of data auditor.  I

5     don't quite know how and when that comes into play.  I

6     understand that's already been the subject of some discussion

7     with the special master.  The question is what does the court

8     need to feel confident that it is reading reports that I can

9     credit in determining where we are in this long-running case,

10    which is going to run a bit longer now.

11         Anything further, Mr. Gibson?

12         MR. GIBSON:  No, Your Honor.  Just that we would

13    respond whenever the time is appropriate to plaintiffs'

14    position regarding an independent investigator and the scope

15    and nature of that investigation.  But at this time, no, Your

16    Honor.

17         THE COURT:  Yeah.  I don't think we're there yet.  The

18    court will hear from Dr. Golding first, unless new information

19    comes to light that counsels otherwise.

20         All right.  You'll see further orders from me trying

21    to be as clear as possible about how we are proceeding.

22         THE CLERK:  Court is in recess.

23       (Off the record at 2:15 p.m.)

24                    ---o0o---

25

1              *REPORTER'S CERTIFICATE*

2                   *---o0o---*

3

   *STATE OF CALIFORNIA   )*
4  *COUNTY OF SACRAMENTO  )*

5

6        *I certify that the foregoing is a correct transcript*
   *from the record of proceedings in the above-entitled matter.*
7
          *IN WITNESS WHEREOF, I subscribe this certificate at Sacramento,*
8  *California.*

9

10     */S/_Catherine E.F. Bodene_____*
   *CATHERINE E.F. BODENE, CSR NO. 6926*
11        *Official United States District Court Reporter*

12

13

14

15

16

17

18

19

20

21

22

23

24

25