UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, | No. 2:90-cv-0520 KJM DB P |
| Plaintiff, | |
| v. | ORDER |
| EDMUND J. BROWN, JR., et al., | |
| Defendants. | |

    As required by court order, this matter came on for further status conference on November 5, 2018. Lisa Ells, Esq., and Jeffrey Bornstein, Esq., appeared as counsel for plaintiffs. Jay Russell, Supervising Deputy Attorney General, and Andrew Gibson, Elise Thorn and Tyler Heath, Deputy Attorneys General, appeared as counsel for defendants. At the status conference, held in light of the current circumstances of the case, the court had a preliminary discussion with counsel regarding the appointment of an independent investigator, the specifications and qualifications for such an investigator, the scope of the investigator's work, and how the investigation would be funded. Having carefully considered the question and reviewed the applicable law, and having also considered the record and the parties' positions, the court here sets forth its specific plan to retain an independent investigator. The parties are granted seven days to respond to this plan.

1

I.      BACKGROUND

On October 5, 2018, plaintiffs notified the court that defendant California Department of Corrections and Rehabilitations' Statewide Chief Psychiatrist, Dr. Michael Golding, had issued a report (hereafter Golding Report) alleging, among other matters, that data submitted by defendants to this court and to the Special Master have been inaccurate and misleading. Pls.' Req., ECF No. 5936. Plaintiffs also filed notice of a request to seal the Golding Report, ECF No. 5937, and they submitted the report and numerous exhibits to the court for *in camera* review. The court recently declined to seal the report but approved the filing of a redacted version of the Golding Report, accompanied by exhibits and Dr. Golding's declaration verifying the report and authenticating the exhibits. *See* ECF No. 5988.

Since Dr. Golding's Report was submitted to the court, the court has held four status conferences. *See* ECF Nos. 5995, 5980, 5964, 5944. At the second status conference, the court identified three separate areas of concern raised by the Golding Report, and signaled its intention to move forward in all three areas on separate but parallel tracks. The areas of concern are: (1) whether there are areas in which defendants' filings have committed fraud on the court; (2) whether there are "ways in which the reporting of data to the Court needs to be repaired or improved to ensure full accuracy and compliance going forward so the Court can have a true measure of progress towards a durable remedy"; and (3) "whether or not there are provisions in prior court orders or the Program Guide that are truly unclear such that amendments are required." ECF No. 5972 at 12:15-14:20. This order concerns the first of those tracks: whether there are areas where fraud has been committed on the court. *Id*. at 12:21-22.

II.     NEED FOR AN INDEPENDENT INVESTIGATOR

The verified Golding Report contains numerous allegations that defendants have presented misleading or false data to the court. *See, e.g.*, ECF No. 5988-1 at 1-9,[1] 12, 17-18, 24-

---

[1] In this order, citations to page numbers of documents filed in the Court's Electronic Case Filing (ECF) system are to the page number assigned by the ECF system located in the upper righthand corner of the page.

2

25.[2]  The parties agree Dr. Golding's allegations are serious and require investigation.  *See* ECF No. 5948 at 8:5-24, 9:14-24.  While defendants have at times suggested the investigation be conducted by the Special Master, *see id*. at 8:7-9, they have also represented they will delay their own internal investigation pending completion of any independent investigation ordered by this court.  *Id*. at 18:11-15.  Although the Special Master will be a source of relevant information for any investigator, this court has determined he is not in a position to conduct the investigation required.  Several allegations in the Golding Report specifically suggest an intent to mislead the Special Master.  And he must remain unburdened by the task of investigation, and its implications for any persons with whom he regularly interacts, as he continues to help move this case forward to conclusion, to the extent possible in the short term and also in the longer term.  While plaintiffs at one point suggested discovery would be required in the event of an evidentiary hearing, *see* ECF No. 5984 at 34:22-35:9, they subsequently agreed with defendants' suggestion that "an independent investigation would" provide a "joint foundation for all parties in terms of what the evidence is."  *Id*. at 35:12-15, 41:1-8.  While defendants at the most recent status conference backtracked from their position that an independent investigation is the preferred approach, their change in position appears motivated by the desire to prevent any independent investigation at the court's behest.  But the court cannot shrink from the need to resolve the questions of fraud raised by Dr. Golding's report.

It is no secret the court was not initially inclined to proceed by way of an independent investigation.  *See* ECF No. 5948 at 13:23-24.  But after further consideration of the arguments the parties have made, and having learned of the identification of at least one other -- if not more -- whistleblowers, the court is persuaded that appointment of an experienced, highly competent independent investigator is necessary to an efficient resolution of the issues presented by the Golding Report.  As the parties have suggested, such an investigator can establish a solid foundation for any future proceedings on the question of whether there has been any fraud on the

---

[2] These citations are a representative, not an exhaustive, list of the Golding Report's allegations that either directly or inferentially suggest false or misleading information has been presented to the court and to the Special Master.

3

court or, in the alternative, whether defendants have intentionally presented false or misleading information to the court or the Special Master.

   A.   Legal Standards

As previously discussed, the court

> has "inherent powers that are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Dietz v. Bouldin*, 136 S.Ct. 1885, 1891 (2016) (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630-31 (1962)). The exercise of those powers "must be a 'reasonable response to the problems and needs' confronting the court's fair administration of justice" and "cannot be contrary to any express grant of or limitation on the district court's power contained in a rule or statute." *Id*. at 1892 (quoting *Degen v. United States*, 517 U.S. 820, 823-24 (1996)).

ECF No. 5786 at 2. These inherent powers "'cannot be dispensed with in a Court, because they are necessary to the exercise of all others.'" *Chambers v. Nasco, Inc.*, 501 U.S. 32, 43 (1991) (quoting *United States v. Hudson*, 7 Cranch 32, 34, 3 L.Ed. 259 (1812)); *see also Fjelstad v. American Honda Motor Co., Inc.*, 762 F.2d 1334, 1338 (9th Cir. 1985) (quoting *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764-65 (1980) (internal citation omitted) ("The inherent powers of federal courts are those which 'are necessary to the exercise of all others,'. . . ."). Among these "inherent powers" is "the power to conduct an independent investigation in order to determine whether [the court] has been the victim of fraud." *Chambers*, 501 U.S. at 44 (citing *Universal Oil Products Co. v. Root Refining Co.*, 328 U.S. 575, 580 (1946)). This equitable power "is necessary to the integrity of the courts, for 'tampering with the administration of justice . . . involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public.'" *Id*. (quoting *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944)).

The court has not merely the authority, but also the duty, to protect the integrity of the judicial process. *See*, *e.g.*, *Alexander v. Robertson*, 882 F.2d 421, 424 (9th Cir. 1989) (discussing authorities relevant to this proposition). "In determining whether fraud constitutes fraud on the court, the relevant inquiry is not whether fraudulent conduct 'prejudiced the opposing party,' but whether it '"harm[ed]" the integrity of the judicial process.'" *United States*

*v. Estate of Stonehill*, 660 F.3d 415, 555 (9th Cir. 2011) (internal citations omitted). "Most fraud on the court cases involve a scheme by one party to hide a key fact from the court and the opposing party." *Id*. Fraud on the court is shown only "by clear and convincing evidence" that a party tried "to prevent the judicial process from functioning 'in the usual manner'"; it requires a showing of "more than perjury or nondisclosure of evidence, unless that perjury or nondisclosure was so fundamental that it undermined the workings of the adversary process itself." *Id*. at 445.

    B.    <u>Analysis</u>

The Golding Report was submitted to the court less than one week before a scheduled hearing to determine whether defendants had finally, after more than twenty years of remedial effort, "come into complete compliance with the staffing ratios in their 2009 Staffing Plan and the maximum ten percent vacancy rate required by the court's June 13, 2002 order," as required by this court's October 10, 2017 order. ECF No. 5711 at 30. Over the past year, defendants' inability to fulfill required staffing ratios for prison psychiatrists became a central focus of remedial efforts, and the parties were directed to explore, under the guidance of the Special Master, whether any adjustments could be made to psychiatrist staffing ratios to alleviate the persistent shortages "without compromising the constitutionally required access to adequate mental health care." ECF No. 5786 at 4. The court's direction was limited by the fact that "staffing levels that preceded the current [psychiatrist] ratios were constitutionally inadequate," *id*., with the court's noting the "heavy burden" defendants would face in trying to persuade the court that the existing caseloads of prison psychiatrists should be increased. *See* ECF No. 5711 at 14-20.

The Golding Report contains numerous allegations challenging the constitutional adequacy of currently operative psychiatrist staffing ratios. His allegations raise substantial questions as to whether psychiatrist staffing levels in California's prisons can in fact be further reduced, as the court had been willing to entertain, consistent with defendants' federal constitutional obligation to "provide access to adequate mental health care." *Coleman v. Wilson*, 912 F.Supp. 1282, 1298 (E.D.Cal. 1995). Ultimately, the question of staffing levels will be resolved by the court on the merits. As relevant here, many of Dr. Golding's allegations suggest

defendants have distorted in several different ways data presented to the Special Master and the court, and materially altered in several ways the determination of timeliness of required mental health appointments, to justify a reduction in the number of prison psychiatrists deemed necessary to meet defendants' constitutional obligations.

In light of the Golding Report, plaintiffs have withdrawn from an agreement on psychiatrist staffing ratios that they had been on the verge of finalizing with defendants; also, the staffing compliance hearing has been postponed. *See* ECF No. 5949 at 4-5. To right the ship, as noted above, it is necessary for the court to determine whether, if true, the conduct Dr. Golding alleges was fraudulent, or intended to mislead the court or both, in connection with the court's monitoring of the defendants' progress toward achieving and maintaining constitutionally adequate mental health staffing levels in California's prisons. The court has identified specific areas requiring investigation based on its review of the Golding Report. Those areas of investigation are set forth in the attached proposed order for use in appointing an independent investigator, following the procedure described below.

### III. PROCEDURE

As explained above, to ensure both efficiency and independence in resolving this question, this court has determined that an investigation conducted by a highly competent individual with expertise in investigating fraud is necessary. This person will be tasked with (1) gathering all evidence relevant to questions raised by the Golding Report concerning whether there has been any fraud on the court and/or whether any defendants or their designees have intentionally misled the court, and (2) with preparing a report containing findings in response to these questions. The court makes this appointment under its inherent authority, drawing on as appropriate, some of the procedures provided by Federal Rule of Evidence 706 to govern the appointment. *Cf. G.K. Las Vegas Ltd. Partnership v. Simon Property Group, Inc.*, 671 F.Supp.2d 1203, 1209 (D. Nev. 2009) (appointing independent expert under Fed. R. Evid. 706 to "uncover and collect evidence . . . toward resolution of pretrial motions" and to submit final report to parties.).

The court will give the parties an opportunity to show cause in writing why an independent investigator should not be so appointed. *Cf.* Fed. R. Evid. 706(a). The court's appointment decision may be based on agreement of the parties, but also the court's own choice. *Cf. id.* The court will only appoint an independent investigator who consents to serve. *Cf. id.* Consistent with an Order of Appointment, *see* Exhibit A, the court will inform the independent investigator of the duties in writing. Fed. R. Evid. 706(b). The independent investigator will be reasonably compensated in an amount to be set by the court. *Cf. id.* at 706(c). This compensation will be paid as costs in the time and manner directed by the court. *Cf. id.*

Subject to consideration of the arguments of counsel, the court tentatively plans to order defendants to provide the funds to pay the independent investigator's bills. The following considerations guide this tentative decision. First, defendants already are responsible for the remedial costs of this action. *See* ECF No. 640 at 9 (defendants pay Special Master's fees and expenses as part of the costs of this action); ECF No. 673 (defendants pay fees and costs incurred by plaintiffs' counsel in obtaining and monitoring compliance in remedial phase). The investigation is necessary at this time to ensure accurate information is used to determine whether or when defendants can achieve a durable and reliable remedy in this action. Second, defendants pay the Special Master's fees and expenses; they have at one point proposed that the Special Master conduct the investigation and at that time requested no change to the established process for payment of his fees and expenses. *See*, *e.g.*, ECF No. 5948 at 8. Third, plaintiffs are proceeding in this action in forma pauperis, *see*, *e.g.* Dkt.[3] No. 100, and there is no evidence in the record that suggests this class of mentally ill prisoners could contribute to the investigator's costs. *Cf. McKinney v. Anderson*, 924 F.2d 1500, 1510-11 (9th Cir. 1991), *vacated and remanded on other grounds*, 502 U.S. 903 (1991) (court not precluded from appointing expert witness where only one party has means to pay costs).

---

[3] References to "Dkt." are to documents filed in this action prior to implementation of the Court's ECF system and which have not been entered into the ECF system.

Initially, the independent investigator will be directed to submit to the court a report on the independent investigator's findings regarding whether, in each specific category, there has been (1) any fraud on the court, or (2) any intentionally false or misleading information presented to the court. The court will then make further orders for distribution of the report to the parties, filing of the report, and consideration of the investigator's findings.

Attached as Exhibit A to this order is a proposed Order of Appointment outlining the court-appointed investigator's powers, duties and method of payment. The parties may comment on all provisions of the proposed order and the court will consider those comments prior to entry of a final Order of Appointment.

In accordance with the above, IT IS HEREBY ORDERED that:

1. By 5 p.m. within seven (7) days from the date of this order, the parties shall show cause in writing, if any, why the court should not appoint an independent investigator in the exercise of its inherent authority to investigate the Golding Report's allegations that pertain to fraud or intent to mislead the court and/or the Special Master; and

2. Also by 5 p.m. within seven (7) days from the date of this order, the parties may file and serve comments on the proposed Order of Appointment attached as Exhibit A to this order.

DATED: November 13, 2018.

_____
UNITED STATES DISTRICT JUDGE