XAVIER BECERRA
Attorney General of California
MONICA N. ANDERSON
Senior Assistant Attorney General
JAY C. RUSSELL, State Bar No. 122626
ADRIANO HRVATIN, State Bar No. 220909
Supervising Deputy Attorneys General
ELISE OWENS THORN, State Bar No. 145931
ANDREW M. GIBSON, State Bar No. 244330
TOBIAS G. SNYDER, State Bar No. 289095
IAN M. ELLIS, State Bar No. 280254
TYLER V. HEATH, State Bar No. 271478
Deputy Attorneys General
  1300 I Street, Suite 125
  P.O. Box 944255
  Sacramento, CA 94244-2550
  Telephone: (916) 210-7325
  Fax: (916) 324-5205
  E-mail: Tyler.Heath@doj.ca.gov
*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **RALPH COLEMAN, et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**EDMUND G. BROWN JR., et al.,**<br><br>Defendants. | 2:90-cv-00520 KJM-DB (PC)<br><br>**DEFENDANTS' OBJECTIONS TO THE RECOMMENDATIONS OF THE SPECIAL MASTER'S REPORT ON HIS EXPERT'S THIRD RE-AUDIT AND UPDATE OF SUICIDE PREVENTION PRACTICES IN THE PRISONS OF THE CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION**<br><br>Judge:     The Honorable Kimberly J. Mueller |

### INTRODUCTION

On November 5, 2018, the Special Master submitted the "Special Master's Report on his Expert's Third Re-Audit and Update of Suicide Prevention Practices in the Prisons of the California Department of Corrections and Rehabilitation (CDCR)." (ECF No. 5993 [Third Re-Audit].) In it, the Special Master recommends that the Court reject Defendants' proposal to

1

activate temporary unlicensed Mental Health Crisis Beds (MHCB) at R.J. Donovan (RJD) in San Diego. (*Id.* at 9.) Defendants' proposal will improve access and transfer times to crisis care for patients in prisons in the southern California region, while rejecting it will impair access and delay needed care for inmates in the midst of mental-health crises.

Defendants' RJD proposal represents a temporary and safe proposal to meet demand while CDCR completes construction of 100 additional crisis beds in southern California. Moreover, the proposal directly responsds to the Court's prior orders finding that CDCR does "not presently have sufficient capacity to meet the need for [Mental Health Crisis Bed] Level of Care," (ECF No. 5610 at 11-12), and that "defendants must build and activate the required number of mental health crisis beds with an urgency greater than shown." (ECF No. 5710 at 20.) Accordingly, Defendants reiterate their objections to Mr. Hayes's draft Third Re-Audit and request that the Court allow Defendants to proceed with activation of the proposed temporary crisis beds at RJD pending construction of the permanent beds.

I. **THE TEMPORARY RJD CRISIS BEDS ARE A REASONED RESPONSE TO THE NEED FOR ADDITIONAL CRISIS BEDS IN THE SOUTHERN REGION.**

The Eighth Amendment requires Defendants to provide constitutional conditions of confinement to inmates. *Farmer v. Brennan*, 511 U.S. 825 (1994). That obligation includes a duty to "provide access to adequate mental health care." *Coleman v. Wilson*, 912 F. Supp. 1282, 1298 (E.D. Cal. 1995). This Court also recently held that "full compliance with the twenty-four hour timeline for transfer to MHCBs is required to satisfy the Eighth Amendment." (ECF No. 5610 at 11.)[1]

To address the Court's findings and concerns, CDCR identified the need for additional beds in the southern region of the state because patients wait longer to access crisis beds in southern California than other regions. (ECF No. 5680-5 at 9-10.) The additional beds are needed to enable CDCR to transfer patients to crisis beds within the twenty-four hour Program Guide timeline. (ECF No. 5680-2 at 2.)

---

[1] Defendants are currently appealing the Court's requirement that Defendants' achieve 100 percent compliance with the twenty-four-hour timeline for transfer to MHCBs.

2

CDCR provided the proposal to add twenty temporary unlicensed crisis beds at RJD to the Special Master and Plaintiffs in January 2018, shortly after receiving and evaluating the court's October 10, 2017 order. (Weber Decl. at ¶ 1, Ex. 1.) In March 2018, the parties toured the proposed site with the Special Master team. (Ponciano Decl. at ¶ 4.) CDCR conducted an additional tour for the Special Master's suicide prevention expert, Lindsey Hayes, and held a teleconference with the Special Master's experts to discuss their concerns, and further discussed the proposal with Plaintiffs' counsel and the Special Master's team at all-parties' workgroups. (*Id*.) After receiving comments from Plaintiffs' counsel, CDCR provided additional details in writing, addressing improvements to the unit that CDCR made to meet concerns expressed by Mr. Hayes and Plaintiffs' counsel. (Weber Decl. at ¶ 3, Ex. 2 at 31-34.) CDCR provided detailed information in this proposal, providing preliminary plans for the conversion of the unit and offering reasonable solutions to concerns raised by both the Special Master and Plaintiffs. (*Id*.)

CDCR's proposal is a carefully considered plan to undertake several modifications to convert one side of an existing housing unit into a twenty-bed crisis bed unit. Specifically, CDCR has proposed retrofitting patient cells to make them suicide resistant, and converting other cells into observation and restraint rooms, nursing stations, clinical offices for confidential treatment, medication rooms, and storage. (Ponciano Decl. at ¶¶ 7 a-g.)

The building for the proposed unit is presently a general population administrative segregation unit. CDCR will take several steps to minimize any contact between MHCB patients and administrative segregation inmates. (Ponciano Decl. at ¶¶ 5, 9.) These include dividing the unit into two sections to limit disruptions in the MHCB from the administrative segregation side of the building. CDCR will also limit the number of administrative segregation inmates in the building by using it exclusively as extra capacity only if other administrative segregation units are full. (*Id*. at ¶ 9.) If administrative segregation inmates are housed in the building, they will first be housed in the far opposite corner of the unit from MHCB patients. (*Id*.) And CDCR will identify whether any cells should not house an administrative segregation inmate absent an urgent need. (*Id*.) These modifications are also intended to limit line of sight by MHCB patients with administrative segregation unit inmates. (*Id*.)

The RJD proposal also transfers funding and staff allocation from California State Prison, Sacramento's (CSP-SAC) unlicensed crisis beds, which will be deactivated. (http://www.ebudget.ca.gov/2018-19/pdf/BudgetSummary/PublicSafety.pdf.)  In addition to its superior location, the proposed RJD crisis unit is superior to the current CSP-SAC unit for a number of reasons, including:  1) patients have access to small management yards and group recreation on the unit; 2) it provides temperature control within the unit; 3) individual confidential treatment sessions will be provided on the unit, on both floors instead of in the dining area, which is the practice at CSP-SAC; 4) it has available interdisciplinary treatment team and confidential clinical group space; and 5) it will have restraint and observations rooms, a medication room, linen storage, and nurses stations on the unit, none of which are available at CSP-SAC. (Ponciano Decl. at ¶ 16.)

The RJD proposal was fully approved in the 2018 budget. (http://www.ebudget.ca.gov/2018-19/pdf/Enacted/BudgetSummary/PublicSafety.pdf.)   The only remaining contingency is this Court's approval to convert the unit and open a valuable resource for crisis treatment in the southern region of the state.

## II. THE SPECIAL MASTER'S SUICIDE EXPERT'S RECOMMENDATION OFFERS NO LEGAL BASIS FOR REJECTING DEFENDANTS' PROPOSAL.

Defendants' proposal is a reasonable solution to address the longer transfer times experienced by patients in the southern region of the state. RJD houses over 2,200 inmates receiving mental health treatment, but has fourteen crisis beds.  (Ponciano Decl. ¶ at 6).  Mr. Hayes' audit notes that RJD was not meeting transfer timeframes. (ECF No. 5993-1 at 10.) Given the situation, RJD was determined to be the best available option for activating temporary crisis beds of a number of options discussed.  (Ponciano Decl. at ¶ 6.)

Mr. Hayes rejected CDCR's proposal outright approximately nine months after it was proposed.  The rejection ignores the Court's urgency concerning timely transfers, CDCR's common-sense proposal, and CDCR's plan to ensure patient safety.  Mr. Hayes' did not base the rejection on any of the criteria he routinely uses to determine compliance with suicide-prevention policies.  In his audits, Mr. Hayes focuses on twelve primary categories when reviewing CDCR's

4

1  compliance with suicide prevention policies. (ECF No. 5993-1 at 3.)  Several of those are
2  specifically related to MHCBs, including:  1) suicide-resistant crisis bed cells; 2) practices for
3  observing MHCB patients; 3) MHCB practices for possessions and privileges; 4) safety planning
4  for suicidal inmates; 5) MHCB discharges; and 6) emergency medical response equipment in
5  housing units.  (*Id*. at 3, 6, 11, 13, 17, 22.)  But Mr. Hayes' rejection of the temporary beds does
6  not analyze these criteria or the proposal's ability to meet them.  (*Id*. at 33-34.)  The only audit
7  issue considered by Mr. Hayes is whether the cells in the unit would be suicide resistant, and he
8  confirmed that CDCR will fully retrofit all of the cells to make them suicide resistant.  (ECF No.
9  5993-1 at 34.)

10  Mr. Hayes also ignores that the temporary unit may be subject to additional Re-Audits by
11  him and monitoring by the Special Master and his team of experts.  In short, the proposed
12  temporary MHCB unit will be closely monitored to ensure that it is providing adequate mental
13  health to its patients and complying with suicide prevention policies while permanent beds are
14  being constructed.

### III. CDCR PROVIDED SOLUTIONS TO CONCERNS RAISED BY THE SPECIAL MASTER'S EXPERT.

17  In his Third Re-Audit, Mr. Hayes set aside his audit criteria and primarily relies on physical
18  plant concerns as the basis for his rejection of the proposed RJD crisis beds.  Specifically, he
19  questioned the size of the beds, the available lighting in the rooms, their location in a building
20  designated for general population administrative segregation, and a hypothetical and speculative
21  inability to provide confidential and private treatment in the treatment space on the tiers.
22  However, as Mr. Hayes' report recognizes, CDCR provided reasonable solutions to address each
23  of these concerns.

24  To address available lighting, CDCR proposed painting the inside of the cells lighter colors,
25  installing new lightbulbs in the unit, and installing modified doors with larger windows.
26  (Ponciano Decl. at ¶ 10.)  And while the proposed cells are smaller than licensed crisis beds, they
27  are no smaller than cells the Court has permitted CDCR to use in other inpatient settings.
28  Specifically, the cells are slightly larger than the cells in the L-1 Psychiatrist Inpatient Program at

5

Defs.' Objs. To Recomm. Of the Special Master's Report on Suicide Pre. Practices  (2:90-cv-00520 KJM-DB (PC))

1 California Medical Facility (CMF).  (Ponciano Decl. at ¶ 11.)  And in contrast to the CMF unit, inmates in the proposed RJD crisis beds will be single celled.  (*Id.*)  Moreover, CDCR has proposed supplementing additional out-of-cell time for the patients in the small-management yards adjacent to the unit.  (*Id.*)  Additional out-of-cell time was a key to the stipulation agreed to by the parties and the Special Master's team in approving the unlicensed L-1 inpatient beds.  (ECF No. 5950.)  While Mr. Hayes objects that out-of-cell time will be provided in small-management yards, he fails to acknowledge that RJD has adequate yard space to provide appropriate out-of-cell time, unlike the CSP-SAC unlicensed crisis beds that will be closed when the RJD proposal is approved.  (Ponciano Decl. at ¶ 16.)

Additionally, Mr. Hayes' concerns regarding the confidentiality and privacy of the clinical offices and interview rooms are not well founded.  Mr. Hayes speculates that inmates might freely converse through cell doors and ventilation grates.  (ECF No. 5993-1 at 35.)  CDCR is not aware of issues with sound traveling between the cells and treatment space on the unit that would make treatment non-confidential.  (Ponciano Decl. at ¶ 13.)  And CDCR does not believe that inmates will be able to hear treatments that are being conducted several cells away.  (*Id.*)  Nevertheless, if a problem arises with the confidentiality of treatment, CDCR is affirmatively committed to taking action to remedy those concerns.  (*Id.*)

Mr. Hayes also ignores that after a full analysis of its facilities, CDCR has found no other viable alternatives for a temporary unlicensed unit.  CDCR mental health staff and members of the Division of Adult Institutions considered whether other units in the state's southern region would be a more appropriate location for temporary unlicensed crisis beds.  (Ponciano Decl. at ¶ 6.)  Their analysis showed that the proposed RJD unit was the most appropriate location for an unlicensed crisis bed.  (*Id.*)  Mr. Hayes offers no alternative.

Ultimately, Mr. Hayes' reasons for rejecting the proposed temporary crisis beds at RJD are not well founded.  Rather than allow CDCR to make the proposed modifications, provide immediate additional crisis bed access to patients, resolve physical plant concerns raised, and monitor the use of these temporary crisis beds, Mr. Hayes' and the Special Master reject the proposal outright based on concerns that may never in fact materialize.  The Court should allow

6

Defs.' Objs. To Recomm. Of the Special Master's Report on Suicide Pre. Practices  (2:90-cv-00520 KJM-DB (PC))

CDCR to proceed with its proposed temporary beds at RJD, along with the remedies responsive to the issues raised by Mr. Hayes. CDCR will address any issues that actually arise during the monitoring of care provided on the unit.

### IV. DEFENDANTS REQUEST THE REPORT BE CLARIFIED WITH RESPECT TO A SAN QUENTIN SUICIDE.

Defendants request that the Third Re-Audit be clarified with respect to a Quality Improvement Plan that issued following a suicide at San Quentin State Prison (SQ). Mr. Hayes states that "The Suicide Report contained four recommendations for corrective action through a QIP: 1) On the day of his arrival at SQ, the inmate received an Initial Psychiatric Intake Assessment. No documentation of the assessment was found in his records and the psychiatrist had left the facility by the time the on-site review of the inmate suicide…." (ECF no 5993-1 at 149.) However, after review of this issue it was discovered that no note was required as the appointment was cancelled but was inadvertently logged as "complete." Defendants request that the Hayes report note that the QIP was found to be unnecessary because no deviation from policy occurred.

### CONCLUSION

CDCR's proposal to create 20 unlicensed crisis beds at RJD is a reasonable solution to the need for additional crisis beds identified by the Court in prior orders. It will allow CDCR to expand access to crisis beds in the southern region while it awaits completion of 100 additional licensed crisis beds. The Court should not accept the Special Master's recommendation to deny CDCR's proposal, but instead allow CDCR to provide timely and adequate care to patients in mental-heath crises, making any necessary adjustments upon further monitoring.

///
///
///
///
///
///

7

Defs.' Objs. To Recomm. Of the Special Master's Report on Suicide Pre. Practices (2:90-cv-00520 KJM-DB (PC))

CERTIFICATION

The undersigned counsel for the Defendants certifies that he reviewed the following relevant court orders: December 11, 1995 (ECF No. 640); December 11, 2009 (ECF No. 3748); March 24, 2017 (ECF No. 5583); April 19, 2017 (ECF No. 5610); September 22, 2017 (ECF No. 5689); October 10, 2017 (ECF No. 5710).

Dated: November 15, 2018

Respectfully submitted,

XAVIER BECERRA
Attorney General of California
JAY C. RUSSELL
Supervising Deputy Attorney General

*/s/ Tyler V. Heath*
TYLER V. HEATH
Deputy Attorney General
*Attorneys for Defendants*

CF1997CS0003
33659163.docx

Defs.' Objs. To Recomm. Of the Special Master's Report on Suicide Pre. Practices  (2:90-cv-00520 KJM-DB (PC))