XAVIER BECERRA
Attorney General of California
MONICA N. ANDERSON
Senior Assistant Attorney General
JAY C. RUSSELL, State Bar No. 122626
ADRIANO HRVATIN, State Bar No. 220909
Supervising Deputy Attorneys General
ELISE OWENS THORN, State Bar No. 145931
ANDREW M. GIBSON, State Bar No. 244330
TOBIAS G. SNYDER, State Bar No. 289095
IAN M. ELLIS, State Bar No. 280254
TYLER V. HEATH, State Bar No. 271478
Deputy Attorneys General
  1300 I Street, Suite 125
  P.O. Box 944255
  Sacramento, CA 94244-2550
  Telephone: (916) 210-7325
  Fax: (916) 324-5205
  E-mail: Tyler.Heath@doj.ca.gov
*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **RALPH COLEMAN, et al.,**<br><br>                                  Plaintiffs,<br><br>      v.<br><br>**EDMUND G. BROWN JR., et al.,**<br><br>                                  Defendants. | 2:90-cv-00520 KJM-DB (PC)<br><br>**DECLARATION OF A. PONCIANO IN SUPPORT OF DEFENDANTS' OBJECTIONS TO THE SPECIAL MASTER'S REPORT ON HIS EXPERT'S THIRD RE-AUDIT OF SUICIDE PREVENTION PRACTICES** |

I, Angela Ponciano, declare:

1. I am currently employed as the Associate Director of the California Department of Corrections and Rehabilitations' (CDCR) Statewide Mental Health Program. I have held this position since 2014. I offer this declaration in response to the Special Master's Report on his Suicide Expert's Third Re-Audit and Update of Suicide Prevention Practices in the Prisons of the California Department of Corrections and Rehabilitation. I am competent to testify to the matters set forth in this declaration and if called upon to do so, I would and could so testify.

1

2. CDCR is currently in the process of building an additional 100 inpatient beds in the southern region of the state. That project will include 50 inpatient beds at the California Institution for Men and 50 inpatient beds at the R.J. Donovan Correctional Facility (RJD). Those inpatient beds will be available to provide Mental Health Crisis Bed (MHCB) level of care. The units are currently scheduled for activation in 2022.

3. In January 2018, to provide additional crisis beds for patients housed in southern California pending activation of the 100 beds, CDCR proposed using two temporary unlicensed crisis bed units at the California Institution for Women and RJD.

4. In March 2018, I conducted a tour of both proposed units with members of the Special Master's team and the parties' counsel. Following the initial tour, I conducted an additional tour of the proposed RJD unit with members of the Special Master's team, including the Special Master's suicide prevention expert, Lindsay Hayes; and later participated in teleconferences with the Special Master's experts to discuss their concerns with the proposed unit. I also discussed the proposal with Plaintiffs' counsel and the Special Master's team at all parties' workgroups.

5. The proposed RJD crisis bed unit will be located in building B-7, which is a 270-degree design housing unit that is currently designated as a general population administrative segregation unit (ASU). There will be 20 total crisis beds, with ten on the upper tier and ten on the lower tier.

6. Leadership form from Division of Adult Institutions, California Correctional Health Care Services, and the Mental Health Division, and I discussed whether there were other units in the state's southern region that would be a more appropriate location for temporary unlicensed crisis beds rather than the proposed location at RJD. Institutions considered included, but were not limited to, California Institution for Men, California State Prison, Lancaster, California Rehabilitation Center, and California Correctional Institution. Our discussion concluded that RJD is the most appropriate location based on availability of treatment space, ability to recruit and retain staffing, and the proximity to the patients most in need of crisis care. This is particularly true because RJD houses approximately 2249, but only has fourteen crisis beds available.

2

Decl. of Ponciano In Supp. Defs.' Obj. Special Master's Report on Expert's Third-Reaudit (2:90-cv-00520 KJM-DB (PC))

7. In response to CDCR's proposal for the temporary crisis bed unit at RJD, the Special Master's suicide prevention expert expressed concerns about the physical plant and location of the proposed unit. CDCR worked to provide acceptable solutions to all of the issues identified by Mr. Hayes, including the following improvements:

    a. Converting cells on the first and second floors to treatment rooms to allow for one-on-one treatment on the unit.

    b. Placing clinical and nursing offices on the unit to ensure staff are always available.

    c. Designing the dayroom floor with dedicated space for recreational therapy for the MHCB patients.

    d. Providing restraint and observation rooms, medication rooms, nursing stations, and linen storage on the unit.

    e. Ensuring all cells on the unit are suicide resistant by retrofitting them to include suicide resistant sinks, toilets, furniture, and ventilation grates.

    f. Dedicating space to provide confidential group therapy in the institutional classification committee room in Building B6 or in the Healthcare Treatment Building.

    g. Dedicating space for treatment team meetings in the institutional classification committee room in Building B6.

8. CDCR feels comfortable that the proposed RJD location, with the improvements proposed to the existing unit, would allow for the delivery of appropriate crisis level treatment.

9. First, Mr. Hayes objected to the placement of the temporary crisis beds in a building that also serves as an Administrative Housing Unit. CDCR has proposed a number of solutions to minimize any contact between the crisis bed patients and inmates in administrative segregation. The crisis bed patients will have a designated exit and entrance door when leaving or entering the housing unit, and the administrative segregation inmates would use a different door. Moreover, CDCR will prioritize Building B-6 for general population inmates in administrative segregation and only use Building B-7, the building where the crisis beds are located, for overflow. To provide the maximum distance between the crisis bed patients and the inmates in administrative

3

Decl. of Ponciano In Supp. Defs.' Obj. Special Master's Report on Expert's Third-Reaudit (2:90-cv-00520 KJM-DB (PC))

1. segregation, CDCR will also house administrative segregation inmates starting in the opposite far corner of Building B-7 to prevent line of sight between the crisis bed patients and the administrative segregation inmates. CDCR also committed to further assessing the administrative segregation cells that should not be used, except if there is an urgent need, to ensure there is no line of sight between the two populations. Additionally, CDCR proposed placing a dividing chain link fence between the side of the building housing the MHCB unit and the Administrative Housing Unit.

10. Second, Mr. Hayes also raised concerns about the amount of light in the proposed cells. To address this concern, CDCR proposed upgrading the lightbulbs in the unit to increase light. CDCR also offered to replace the cell doors with doors that have larger windows and to paint the cell walls to brighten the cells.

11. Third, Mr. Hayes was concerned with the size of the proposed cells. The cells are not the same size as those in licensed units and CDCR cannot enlarge the actual cells because of the building design. However, the cells are slightly larger than those used in California Medical Facility's (CMF) L-1 Psychiatric Inpatient Program. L-1's cells are approximately 60 square feet, while the RJD cells are 62 square feet when accounting for the toilet and the sink. And unlike the inmates in L-1, CDCR will limit the proposed cells at RJD as single-cell use only. In addition, to compensate for the smaller cells, CDCR proposed increasing out-of-cell time for the patients using the small management yards located next to the building. This is similar to the CMF L-1 inpatient unit where CDCR provides inmates with increased out-of-cell programming.

13. Fourth, Mr. Hayes expressed concerns with the confidentiality of the proposed office and treatment space on the building tiers based on the possibility that inmates might converse through ventilation grates. I believe that the treatment space will be located far enough away from the cells to prevent sound traveling between the cells and the treatment space. I am not aware of any issue with sound traveling between the cells in the proposed unit such that it would compromise the confidentiality of the delivery of care. However, CDCR offered to examine whether the treatment sessions could in fact be heard several cells away, and, if necessary, take corrective action to ensure all treatment sessions are confidential.

4

Decl. of Ponciano In Supp. Defs.' Obj. Special Master's Report on Expert's Third-Reaudit (2:90-cv-00520 KJM-DB (PC))

14. All of the policies and Program Guide guidelines that apply to other Mental Health Crisis Beds will apply equally in the proposed temporary Mental Health Crisis Beds.

15. RJD is also an ideal location to add temporary crisis beds because the facility has adequate staff to meet the needs of additional crisis bed patients. In addition, all staff will be provided the necessary collaboration trainings, and post orders for custody staff will be updated to reflect the unit's mission.

16. If the RJD proposal is accepted, unlicensed crisis beds at California State Prison, Sacramento (CSP-Sac) will be deactivated. The proposed RJD crisis unit is superior to the current CSP-Sac unit for a number of reasons, including: 1) patients have access to small management yards and group recreation on the unit; 2) it provides temperature control within the unit; 3) individual confidential treatment sessions will be provided on the unit, on both floors instead of in the dining area, which is the practice at CSP-Sac; 4) it has available interdisciplinary treatment team and confidential clinical group space; and 5) it will have restraint and observations rooms, a medication room, linen storage, and nurses stations on the unit, which are not available on the CSP-Sac unit.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on November 15, 2018, at Chicago, Illinois.

/s/ **_Angela Ponciano_**
Angela Ponciano, Associate Director
*(original signature retained by attorney)*

CF1997CS0003
33658820.docx

5

Decl. of Ponciano In Supp. Defs.' Obj. Special Master's Report on Expert's Third-Reaudit (2:90-cv-00520 KJM-DB (PC))