UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, | No. 2:90-cv-0520 KJM DB P |
| Plaintiff, | |
| v. | ORDER |
| EDMUND J. BROWN, JR., et al., | |
| Defendants. | |

By order filed November 13, 2018, the court directed the parties to "show cause in writing, if any, why the court should not appoint an independent investigator in the exercise of its inherent authority to investigate the Golding Report's allegations that pertain to fraud or intent to mislead the court and/or the Special Master," and to provide comments on a proposed order of appointment. ECF No. 6002 at 8.

The court required responses by 5:00 p.m. on Tuesday, November 20, 2018, and the parties filed their responses accordingly. Defendants separately filed objections to the proposed order of appointment, seven minutes after the deadline, together with a request for an extension of time to file the objections. The court will grant defendants' request for extension of time so that the objections are preserved as part of the record in this case. At the same time, the court will disregard the objections at this time as filed in derogation of a prior court ruling

denying without prejudice defendants' request to submit a substantive response to the allegations of the Golding Report prior to completion of an independent investigation. *See* ECF No. 5998 at 20:4-23. Nothing in this order precludes defendants from presenting the information in the objections to the independent investigator or, as appropriate, to this court at a subsequent stage of these proceedings.

After review of the parties' responses to the order to show cause, for the reasons explained below, the court will appoint an expert under Federal Rule of Evidence 706 to investigate and prepare a report for the court and the parties on whether there is evidence sufficient to warrant an evidentiary hearing into whether defendants have intentionally presented false or misleading information to the court in one or more of the areas addressed in the Golding Report.

I.  FACTUAL AND PROCEDURAL BACKGROUND

   A.  Court's Ongoing Efforts to Bring Staffing Ratios Into Compliance

On October 10, 2017, the court ordered the California Department of Corrections and Rehabilitation (CDCR) defendants, within one year, to "take all steps necessary to come into complete compliance with the staffing ratios in their 2009 Staffing Plan and the maximum ten percent vacancy rate required by the court's June 13, 2002 order" and set a compliance hearing for October 11, 2018. ECF No. 5711 at 30-31. The court noted that ongoing shortages in the number of prison psychiatrists continued to plague California's prison system. *See id*. at 12-20, 27. During the ensuing year, defendants' inability to fulfill required staffing ratios for prison psychiatrists became a central focus of remedial efforts, and the court directed the parties, under the guidance of the Special Master, to explore whether any adjustments could be made to psychiatrist staffing ratios to alleviate these shortages "without compromising the constitutionally required access to adequate mental health care." ECF No. 5786 at 4. The court qualified this direction with the observation that "staffing levels that preceded the current [psychiatrist] ratios were constitutionally inadequate," *id.*, and by noting the "heavy burden" defendants would face in trying to persuade the court that the existing caseloads of prison psychiatrists should be increased. *See* ECF No. 5711 at 14-20.

By July 2018, there appeared to be "significant promise" that ongoing psychiatrist staffing shortages would in fact be remedied. ECF No. 5850 at 3. In a Joint Status Report filed on September 14, 2018 in advance of the October 11, 2018 hearing, the parties represented that, while discussions were ongoing, they had achieved substantial agreement on a staffing plan that defendants represented would enable them to achieve full compliance with the required staffing remedy by the one-year deadline set in the October 10, 2017 order. ECF No. 5922 at 4. Due to ongoing disagreements over the use of telepsychiatry, the court continued the October 11, 2018 hearing to October 15, 2018, and expanded it to include an evidentiary hearing on defendants' proposed use of telepsychiatry. ECF No. 5928 at 2.

        B.     Presentation of Golding Report Prior to Compliance Hearing

On October 5, 2018, ten days before the scheduled hearing, both parties filed requests for action by the court due to a "whistleblower" report prepared by CDCR's Statewide Chief Psychiatrist, Dr. Michael Golding (hereafter Golding Report) that raised numerous allegations regarding staffing. *See* ECF Nos. 5936, 5938. Plaintiffs represented that the Golding Report contained "serious allegations that, inter alia, data reported to this Court and the Special Master purporting to measure CDCR's compliance with this Court's orders – and specifically with Program Guide requirements for access to psychiatric care – is inaccurate and has been presented in a materially misleading way" and that "Dr. Golding's claims are very serious and, if true, have far reaching implications affecting almost every aspect of this case." ECF No. 5936 at 2. Plaintiffs requested an immediate status conference to consider, among other things, whether the court should order an independent investigation into the allegations contained in the Golding Report. *Id*. at 3. Plaintiffs also filed notice of a request to seal the Golding Report, ECF No. 5937, and they submitted the report and numerous exhibits to the court for in camera review.

Defendants styled their request as one for a stay of proceedings. ECF No. 5938 at 1. They represented the Golding Report concerned various aspects of their Mental Health Services Delivery System (MHSDS) with "potential impact" on evidence defendants were planning to present at the October 15, 2018 hearing and that "[a]mong other things, the document, which is 160 pages long and includes approximately 60 referenced exhibits, questions the

3

methodology through which CDCR calculates multiple mental-health compliance figures and data points and alleges that psychiatrists under Dr. Golding's leadership are not seeing patients as reported in the data tracking system." ECF No. 5938 at 2. Defendants requested the court convert the October 15, 2018 hearing to a status conference "to discuss how the parties and the Special Master, with the Court's guidance, should proceed to address the document's allegations" or, "if the Court [were] not inclined to continue the evidentiary proceedings" the parties be given a short extension of two days to file their joint witness and exhibit list and proposed hearing schedule. *Id.*

        C.      <u>Proceedings Considering Whether to File Golding Report on Public Docket</u>

Since the parties provided Dr. Golding's report to the court, the court has held four status conferences between October 10, 2018 and November 5, 2018. *See* ECF Nos. 5944, 5964, 5980, 5995. Since the initial status conference, Dr. Golding has represented his willingness to provide public testimony about the contents of the report. *See* ECF No. 5948 at 7:1-9; *see also* ECF No. 5972 at 6:19-7:21. In a document filed October 19, 2018, he requested the report be filed on the public docket in this action, with appropriate redaction to protect privacy interests of class members. *See* ECF No. 5976. The court allowed an appropriate period of time for the parties to present their positions concerning public filing and redaction of the Golding Report, and then after considering those positions, the court ordered a redacted version of the Golding Report and exhibits to be filed on the public docket. ECF No. 5986 (October 25, 2018 Order); ECF No. 5988 (Oct. 31, 2018 filing of Redacted Declaration and Report of Michael Golding, M.D.). The court also ordered that the filed Report include Dr. Golding's declaration verifying the report and authenticating the exhibits. *See* ECF No. 5986. During the time the court was considering whether to file the Golding Report on the court's docket, additional whistleblowers with contentions related to those presented by Dr. Golding have been brought to the court's attention and shared with the parties, though documents related to these persons have not been filed in this action at this time. *See* ECF No. 5998 at 4:1-5:1; *see also Anand v. CDCR*, Case No. 34-2018-00226894 (Sac. County Sup. Ct. filed February 9, 2018).

4

|   | D. | Steps Required Prospectively To Address Contents of the Golding Report |

At the second status conference on October 17, 2018, the court identified three separate areas of concern raised by the Golding Report, given the Report's allegations suggesting defendants have distorted data presented to the Special Master and the court and materially altered the determination of timeliness of required mental health appointments, to justify a reduction in the number of prison psychiatrists deemed necessary to meet defendants' constitutional obligations. The court signaled its intention to move forward in all three areas on separate but parallel tracks: (1) whether there are areas in which there has been fraud on the court; (2) whether there are "ways in which the reporting of data to the Court needs to be repaired or improved to ensure full accuracy and compliance going forward so the Court can have a true measure of process towards a durable remedy"; and (3) "whether or not there are provisions in prior court orders or the program guide that are truly unclear such that amendments are required." ECF No. 5972 at 12:15-14:20. On November 13, 2018, the court issued an order to show cause setting forth its proposed plan for addressing the first of the three tracks: whether there are areas where defendants have presented false or misleading data to the court or the Special Master. ECF No. 6002. The court proposed appointment of an independent investigator using its inherent authority and drawing on procedures supplied by Federal Rule of Evidence 706. *Id*. The court also issued a tentative proposed order for use in appointing an independent investigator and invited comment on that order. *Id.* As noted above, the parties have responded, *see* ECF Nos. 6009, 6011, and the court has carefully considered their responses.

II.    NEED FOR AN INDEPENDENT INVESTIGATOR CONFIRMED

As the court discussed in its November 13, 2018 order, the verified Golding Report contains numerous allegations that defendants have presented misleading or false data to the court. *See, e.g.,* ECF No. 6002 at 2-3[1] (citing ECF No. 5988-1 at, *e.g.*, 1-9, 12, 17-18, 24-

---

[1] In this order, citations to page numbers of documents filed in the Court's Electronic Case Filing (ECF) system are to the page number assigned by the ECF system located in the upper righthand corner of the page.

25).[2] The parties agree Dr. Golding's allegations are serious and require investigation, and the court credits the defendants' agreement in this respect. *See* ECF No. 5948 at 8:5-24, 9:14-24. Although plaintiffs propose some expansion of the order of appointment, which the court does not adopt at this time, plaintiffs agree the court can proceed as proposed in the order to show cause and proposed order of appointment. *See* ECF No. 6011. Defendants urge the investigation be conducted instead by the Special Master, ECF No. 6009 at 16-19, or, in the alternative, by the Receiver in *Plata v. Brown*, No. 3:01-01351 JST (N.D. Cal.), to whom Dr. Golding first provided his Report. *Id*. at 19-20.

The court has considered once again whether the Special Master can properly be tasked with the investigation required at this juncture. But upon reconsideration in light of defendants' filing, the court concludes that the Special Master should not be assigned the double duty of serving as the investigator here. While the Special Master will be a key source of information relevant to any investigation, he is an arm of the court and several allegations in the Golding Report specifically suggest an intent to mislead him and members of his team. Moreover, the current Special Master has a deep involvement in this case since at least as early as 2007 and previously as an assistant to the prior Special Master, in both oversight and mediating roles. In these roles, he has developed relationships with the parties and CDCR representatives in a way that informs the court's consideration. The court unequivocally has full confidence in the Special Master and his team, and must maintain and protect the Special Master's role and his ability to communicate and work with the parties now and after the dust raised by the Golding Report has settled. Requesting that the Special Master assess whether he and the court have been misled is not consistent with that long established and ongoing goal. Nor will the court ask the *Plata* Receiver to conduct this investigation. The court requires expertise in determining whether there is evidence of intent to mislead or commit fraud on the court so that the court can decide whether to hold a focused evidentiary hearing probing that question in full adversarial

---

[2] As noted in the November 13, 2018 order, these citations are a representative, not an exhaustive, list of the Golding Report's allegations that either directly or inferentially suggest false or misleading information has been presented to the court and to the Special Master.

6

proceedings. This expertise is beyond the scope of any assistance this court could or would seek from the *Plata* Receiver.

In sum, having considered the parties' responses to the order to show cause, the court continues to be persuaded by the parties' apparent agreement at the third status conference that "an independent investigation would" provide a "joint foundation for all parties in terms of what the evidence is." ECF No. 5984 at 35:12-15, 41:1-8; *see* ECF No. 6002 at 3-4. Even if the court misunderstands the defendants' position articulated at that status conference, an independent investigator with impeccable qualifications, deep experience and readily available resources is what the court requires to efficiently and cost-effectively perform the investigation called for by the Golding Report.

III.     COURT'S AUTHORITY TO APPOINT INDEPENDENT INVESTIGATOR

    A.     Established Procedure Provided by Federal Rule of Evidence 706

As it discussed in the November 13, 2018 order, the court has the inherent authority, and indeed the duty, to protect the integrity of the judicial process. *See* ECF No. 6002 at 4-5 (discussing cases). Exercise of the court's inherent authority can implicate a finding of bad-faith conduct. *See*, *e.g.*, *Chambers v. Nasco, Inc.*, 501 U.S. 32 (1991). But such a determination is premature at this stage of these proceedings and, indeed, may not be supported by the evidence following an investigation into the allegations of the Golding Report and any required adversarial evidentiary proceedings. Here again, having considered defendants' filing in response to the order to show cause, and reflected on the best path forward, the court will rely on an expert appointed under Federal Rule Evidence 706 to conduct the required independent investigation.

Federal Rule of Civil Procedure 706 authorizes the court to appoint an expert witness "[o]n a party's motion, or on its own." Fed. R. Evid. 706(a). The decision whether to appoint an expert under Rule 706 lies in the sound discretion of the court. *See Walker v. American Home Shield Long Term Disability Plan*, 180 F.3d 1065, 1071 (9th Cir. 1999). An expert "may testify in the form of an opinion or otherwise if . . . the expert's scientific, technical,

or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue...." Fed. R. Evid. 702(a).

"A Rule 706 expert typically acts as an advisor to the court on complex scientific, medical, or technical matters." *Armstrong v. Brown*, 768 F.3d 975, 987 (9th Cir. 2014). "Invocation of Rule 706 powers is especially appropriate to protect . . . the public interest. In such cases, many courts rightly assume there is a heightened judicial duty to see that the abuses and inadequacies of the adversaries should not be permitted to obscure the truth." 29 Charles Alan Wright et al., *Federal Practice and Procedure* (Wright) § 6302 (2d ed. Sept. 2018 Update). "Ultimately, the most important question a court must consider when deciding whether to appoint a neutral expert witness is whether doing so will promote accurate factfinding." *Gorton v. Todd*, 793 F.Supp.2d 1171, 1179 (E.D. Cal. 2011); *see also* Wright § 6304 ("The policy goal of Rule 706 is to promote accurate factfinding."); *G.K. Las Vegas Ltd. Partnership v. Simon Property Group, Inc.*, 671 F.Supp.2d 1203, 1209 (D. Nev. 2009) (appointing independent expert under Fed. R. Evid. 706 to "uncover and collect evidence . . . toward resolution of pretrial motions" and to submit final report to parties).

While the court "may ask the parties to submit nominations," it also "may appoint . . . any [expert] of its own choosing." Fed. R. Evid. 706(a). The sole limitation on court appointment is the expert's consent to serve. *Id.*; *see also Walker*, 180 F.3d at 1071 (confirming district court discretion to appoint Rule 706 expert "of its own selection" "sua sponte" as long as parties have notice and an opportunity to be heard). The expert must be informed of the expert's duties, either in writing or "orally at a conference in which the parties have an opportunity to participate." Fed. R. Evid. 706(b). The expert is required to "advise the parties of any findings the expert makes" and his report may be scrutinized through established adversarial procedures. *Id.* at 706(b)(1)-(4).

"The expert is entitled to a reasonable compensation, as set by the court." *Id.* at 706(c). In this civil case, the compensation is payable "by the parties in the proportion and at the time that the court directs – and the compensation is then charged like other costs." *Id.* at 706(c)(1)-(2). For the following reasons, the court confirms its conclusion that defendants will be

8

required to pay the expert's compensation. As explained in the November 13, 2018 order, defendants are responsible for all the remedial costs of this action. *See* ECF No. 640 at 9 (defendants pay Special Master's fees and expenses as part of the costs of this action); Dkt. No. 673[3] (defendants pay fees and costs incurred by plaintiffs' counsel in obtaining and monitoring compliance in remedial phase). The investigation here is necessary to clear the air so the court is assured it has an accurate foundation for determining whether and when defendants have achieved a durable and reliable remedy in this action. The plaintiff class is proceeding with this action in forma pauperis. *See*, *e.g.,* Dkt. No. 100. The expenditure of public funds for witnesses is not authorized by the in forma pauperis statute, 28 U.S.C. § 1915, and no evidence in the record suggests this class of mentally ill prisoners could contribute to the expert's costs. *See McKinney v. Anderson*, 924 F.2d 1500, 1510-11 (9th Cir. 1991), *vacated and remanded on other grounds*, 502 U.S. 903 (1991) (court not precluded from appointing expert witness where only one party has means to pay costs).

B. <u>Appointment Here Not Subject to PLRA</u>

Defendants contend the court's appointment of any independent investigator is limited by provisions of the Prison Litigation Reform Act of 1995 (PLRA) that govern appointment of special masters. *See* ECF No. 6009 at 14-16. This contention is without merit.

As a general matter, Rule 53 of the Federal Rules of Civil Procedure authorizes appointment of a special master to assist the court. Appointment of a special master in prison conditions cases is governed by provisions of the PLRA codified at 18 U.S.C. § 3626(f)-(g). As a general matter, "[t]hese provisions . . . authorize the appointment of a special master in prison litigation to hold hearings, make recommended findings, and perform certain other related functions." *Plata v. Schwarzenegger*, 603 F.3d 1088, 1094 (9th Cir. 2010). The independent investigator the court will appoint here will not serve any of these quasi-judicial functions.

---

[3] Citations identified by Dkt. Number are to documents filed and entered on the docket in this action which have not been entered into the court's ECF system.

9

The sole function of the independent investigator will be to determine whether there is a sufficient factual foundation to require this court to hold an adversarial, evidentiary hearing to determine whether defendants have intentionally presented false or misleading information to the court or the Special Master. The independent investigator will report to the court on the results of the investigation, namely, whether he believes any such facts exist and, if so, what those facts are. The independent investigator will not have any "dispute resolution authority," will not conduct any hearings, and will not make any recommendations to the court concerning adjudication of any facts. *Cf. Armstrong*, 768 F.3d at 987 ("dispute resolution authority . . . is beyond the scope of the duties that may be assigned to a Rule 706 expert."). For these reasons, the court does not rely on Rule 53 in making the appointment of an investigator.

Because the independent investigator will be appointed to serve as an expert under Federal Rule of Evidence 706 and not to perform the functions of a special master, the limits of 18 U.S.C. § 3626(f) do not apply. *See Plata*, 603 F.3d at 1094-96 (provisions of PLRA governing appointment of special masters neither apply to nor prohibit appointment of federal receiver; "[m]onitors (or other court agents) were not included in the limitations applicable to special masters" enacted in the PLRA). Moreover, the Special Master in this case was appointed, and the Order of Reference filed, prior to the effective date of the PLRA. The language in the Order of Reference is neither drawn from nor mandated by 18 U.S.C. § 3626 and the court's adaptation of some of its provisions, as now modified in the attached order it will use to appoint a Rule 706 expert, in no way reflects application of the PLRA to this appointment.

C.     Identification of Expert to Serve as Independent Investigator

As the court has concluded above, to ensure both efficiency and independence in resolving the threshold question of whether a full evidentiary proceeding is required, an investigation conducted by a highly qualified individual with expertise in investigating whether fraud has been committed is necessary. This person will be tasked with (1) gathering all evidence relevant to questions raised by the Golding Report concerning whether there has been any fraud on the court and/or whether any defendants or their designees have intentionally misled the court, and (2) with preparing a report containing the expert's conclusions as to these questions. The

1 expert's report will be presented initially to the court and the parties, and within fourteen (14)
2 days of the report's presentation, the court will hold a status conference with the parties to discuss
3 whether an evidentiary hearing is required, and if so the procedures attendant to any such hearing.
4       Given the task at hand, the court has identified Charles J. Stevens, Esq. of Gibson,
5 Dunn & Crutcher LLP as the expert the court intends to retain for the investigation described by
6 this order. Mr. Stevens' curriculum vitae is attached to this order as Exhibit A. A proposed
7 version of the Order of Appointment that will guide Mr. Stevens' work for the court, revised upon
8 consideration of the parties' filings in response to the order to show cause, is attached to this
9 order as Exhibit B. Mr. Stevens will be authorized to lead the investigation and assemble a
10 qualified team to assist him in carrying out the investigation as fully, fairly and efficiently as
11 possible. The court is advised that Mr. Stevens will accept the appointment. Upon his
12 appointment, the court will hold a short telephonic status conference with the parties to confirm
13 Mr. Stevens' scope of work and anticipated timeline and address any questions of the investigator
14 and the parties before his work begins in earnest.

IV.    CONCLUSION

      As discussed in the November 13, 2018 order and above, the Golding Report was submitted to the court less than one week before a scheduled hearing to determine whether defendants, after more than twenty years of remedial effort, had finally "come into complete compliance with the staffing ratios in their 2009 Staffing Plan and the maximum ten percent vacancy rate required by the court's June 13, 2002 order," as required by this court's October 10, 2017 order. ECF No. 5711 at 30. The Golding Report contains numerous allegations that, if true, call into question whether existing psychiatrist staffing ratios are constitutionally adequate, and raise substantial questions as to whether psychiatrist staffing levels in California's prisons can be further reduced consistent with defendants' federal constitutional obligation to "provide access to adequate mental health care." *Coleman v. Wilson*, 912 F.Supp. 1282, 1298 (E.D. Cal. 1995).

      Even as this case moves forward toward remediation under existing remedial procedures, the court must determine whether the allegations in Dr. Golding's report support a full evidentiary proceeding exploring whether defendants engaged in conduct that was fraudulent

and/or intended to mislead the court in connection with its efforts to ensure defendants achieve and maintain constitutionally adequate mental health staffing levels in California's prisons. This order embodies the court's plan, after hearing from the parties initially, to fulfill the requirements imposed by the Golding Report.

The parties will now be granted a period of seven days to comment on the appointment of Mr. Stevens as described here. At the end of that seven-day period, the court will issue a final Order of Appointment.

In accordance with the above, IT IS HEREBY ORDERED that:

1. Defendants' November 20, 2018 motion for extension of time, ECF No. 6013, is granted;

2. Within fourteen (14) days from the date of this order, the court will appoint an independent expert under Federal Rule of Evidence 706 to investigate the Golding Report's allegations that pertain to fraud or intent to mislead the court and/or the Special Master; and

3. The parties are granted a period of seven (7) days to file their views on the court's plan to appoint Charles J. Stevens, Esq. of Gibson, Dunn & Crutcher LLP, as the court's independent expert.

DATED: November 28, 2018.

_____
UNITED STATES DISTRICT JUDGE