XAVIER BECERRA
Attorney General of California
MONICA N. ANDERSON
Senior Assistant Attorney General
JAY C. RUSSELL, State Bar No. 122626
ADRIANO HRVATIN, State Bar No. 220909
Supervising Deputy Attorneys General
ELISE OWENS THORN, State Bar No. 145931
ANDREW M. GIBSON, State Bar No. 244330
TOBIAS G. SNYDER, State Bar No. 289095
IAN M. ELLIS, State Bar No. 280254
TYLER V. HEATH, State Bar No. 271478
Deputy Attorney General
 455 Golden Gate Avenue, Suite 11000
 San Francisco, CA 94102-7004
 Telephone: (415) 510-3577
 Fax: (415) 703-5843
 E-mail: Adriano.Hrvatin@doj.ca.gov
*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **RALPH COLEMAN, et al.,** | 2:90-cv-00520 KJM-DB (PC) |
| Plaintiffs, | **DEFENDANTS' VIEWS ON THE COURT'S PLAN TO APPOINT CHARLES J. STEVENS AS THE COURT'S INDEPENDENT EXPERT** |
| v. | |
| **EDMUND G. BROWN JR., et al.,** | |
| Defendants. | Judge: The Honorable Kimberly J. Mueller |

## INTRODUCTION

The Court originally proposed bypassing the longtime Special Master and his team in this case, and appointing an "independent investigator" to investigate seven of Dr. Michael Golding's allegations, relying on its inherent authority and "drawing on some of the procedures provided by Federal Rule of Evidence 706." (ECF No. 6002 at 6.) The Court allowed the parties to respond to its November 13, 2018 Order to Show Cause, including the independent investigator's proposed powers and scope of work. Defendants' response to the Order to Show Cause

1

challenged the legal grounds on which the Court based its intention to make the appointment and with Defendants paying all costs. Defendants also provided declaratory and documentary evidence demonstrating that Dr. Golding's allegations lacked foundation, did not amount to fraud, and did not require the quasi-prosecutorial investigation contemplated by the Court.[1] The Court refused to consider Defendants' evidence.

Following the parties' responses to the November 13, 2018 Order to Show Cause, the Court modified its proposed order, appointing Charles J. Stevens as a "neutral expert" under Rule 706 to investigate Dr. Golding's disputed allegations. The Court granted the parties seven days to express their views on its plan to appoint Mr. Stevens as a "neutral expert." Defendants are presently unaware of any conflicts that would prevent Mr. Stevens from serving as a court-appointed expert. And while Mr. Stevens has experience in white-collar fraud litigation, it does not appear from the Court's November 29 Order that Mr. Stevens has scientific, technical, or other specialized knowledge in correctional data systems, correctional mental health care, or more specifically California's correctional system, to help answer the threshold question of whether there were any misrepresentations of data made to the Court or Special Master here. In the absence of any threshold finding of misrepresentations to the Court or Special Master, bringing yet another law firm into this case at substantial state expense to investigate unfounded allegations of "fraud" constitutes an abuse of this Court's discretion under Rule 706. In this regard, Defendants object to how the Court intends to structure, as well as finance, Mr. Stevens' investigation. The Court's modified plan bestows upon Mr. Stevens "powers" that have no foundation in Rule 706, is vague and overly broad, and potentially invades the attorney-client privilege.

At this stage of the proceedings, any appointment of an expert under Rule 706 (the Court's chosen authority) should be narrow in scope. A legally-acceptable plan would have the neutral expert provide the Court with an opinion based on a record developed by the parties regarding the accuracy of CDCR's data reporting system and the resulting data; but not on legal questions of

---

[1] Defendants objected to the Court's reliance on its inherent authority and Rule 706 to appoint an independent investigator (ECF No. 6009), and stand on those objections here.

2

Defs.' Views Court's Plan Appointing Independent Expert (2:90-cv-00520 KJM-DB (PC))

fraud, which are outside the mandate of a Rule 706 expert. Alternatively, given its stated concerns regarding fraud and allegedly misleading information, the Court should order the parties to present evidence responsive to those concerns, and if necessary, to hold an evidentiary hearing. Either plan would at least hew to the traditional adversarial process provided for under Article III of the Constitution and the Eleventh Amendment.

## I. THE COURT'S PLAN APPOINTS AN EXTRAJUDICIAL INVESTIGATOR WITHOUT A LEGAL BASIS FOR THE APPOINTMENT.

Although the Court states that a finding of bad-faith conduct is premature and therefore invoking its inherent authority is not warranted (ECF No. 6018 at 7), the Court's plan nevertheless contemplates a wide-ranging investigation—at substantial expense to state Defendants—to collect evidence "relevant to questions . . . concerning whether there has been any fraud on the court." (*Id*. at 10.) Defendants remain opposed to such an investigation by the Court or its agent, which would be extraordinary considering separation of powers principles.

The Court's November 29 Order did not address or mention the cases cited by Defendants that prohibit federal courts from appointing an investigator "charged with an investigative, quasi-inquisitorial, quasi-prosecutorial role that is unknown to our adversarial system." *Cobell v. Norton*, 334 F.3d 1128, 1142 (D.C. Cir. 2003); *see also In re United States*, 441 F.3d 44, 58 (1st Cir. 2006) ("Unlike in many foreign countries, the federal courts in the American criminal justice system generally do not have the power to act as investigators or prosecutors of misconduct"). "Just as there is a prohibition against a judge 'adjudicating a case where he was also an investigator for the government,' *Johnson v. Carroll*, 369 F.3d 253, 260 (3d Cir. 2004), there is a prohibition against a judge adjudicating a case where he has become an investigator against the government." *In re United States*, 441 F.3d at 66 (requiring recusal where the court stayed a criminal matter to conduct its own investigation into misconduct by grand jury). The Court's proposal presents "the risk that the line will be crossed 'between executive and judicial roles, and between the formulation and evaluation of positions in litigation.'" *Id.* (quoting *In re United States*, 398 F.3d 615, 618 (7th Cir. 2005)). As the Court has framed the appointment, an investigator will assist it "in determining whether there is evidence of intent to mislead or commit

3

Defs.' Views Court's Plan Appointing Independent Expert (2:90-cv-00520 KJM-DB (PC))

1  fraud on the court so that the court can decide whether to hold a focused evidentiary hearing

2  probing the question." (ECF No. 6108 at 6.)  No rule supports such an investigation and using an

3  expert to identify underlying facts may taint whatever future evidentiary proceeding is envisioned

4  by the Court's proposal.  Instead, Mr. Stevens' retention might be more appropriately considered

5  after the parties have responded to the Court's concerns and presented a factual record.

**II.   RULE 706 DOES NOT AUTHORIZE THE COURT'S PLAN TO APPOINT MR. STEVENS.**

"[E]xpert witnesses should not be appointed under Rule 706 where not necessary or significantly useful for the trier of fact to comprehend a material issue in a case." *Gorton v. Todd*, 793 F. Supp. 2d 1171, 1181 (E.D. Cal. 2011); *see also Ass'n of Mexican-Am. Educators v. State of California*, 231 F.3d 572, 590 (9th Cir. 2000) ("Appointment under Rule 706 is appropriate only in "rare cases" requiring "outside technical expertise.") (citing *Reilly v. United States*, 863 F.2d 149, 156 (1st Cir. 1988)).  Mr. Stevens' appointment—at substantial state expense—is improper because scientific or technical expertise is not necessary to answer "whether there is evidence of intent to mislead or commit fraud on the court." (*See* ECF No. 6018 at 6-7.)

### A.   The Court Should First Analyze the Identified Data Reporting Questions for Accuracy.

Defendants have consistently asserted that any process contemplated by the Court should first look at whether the data and reports questioned by Dr. Golding are, in fact, inaccurate before it turns to any questions about whether Defendants acted in a misleading or fraudulent way. (Tr. at 32:8-11, Oct. 22, 2018, ECF No. 5984.)  If the Court required assistance unavailable through the Special Master's team in analyzing CDCR's data tracking system and its rules for accuracy, and then in comparing them against the different methods proposed by Dr. Golding, a Rule 706 expert could potentially perform that technical work. *Armstrong v. Brown*, 768 F.3d 975, 987 (9th Cir. 2014) ("A Rule 706 expert typically acts as an advisor to the court on complex scientific, medical, or technical matters.").  In fact, that would be similar to the approach adopted by the *Plata* Receiver, who has retained "coding experts to assess the accuracy and integrity of the computer programs to calculate measures displayed in the Health Care Services Dashboard" and

4

"report findings to the Receiver and the federal court." (*Plata v. Brown, et al.*, 3:01-cv-01351, Oct. 1, 2018, ECF No. 3076 at 17.) This would be an appropriate use of a Rule 706 expert.

Instead, the Court's plan is to hire a law firm to conduct an investigation and prepare a report, at one party's expense, on the legal question of whether there is evidence showing Defendants acted with an intent to mislead or defraud the Court. The Court grounds its appointment in the assertion that the Court "requires expertise in determining whether there is evidence of intent to mislead or commit fraud on the court." (*See* ECF No. 6018 at 6-7.) But these concepts are not overly technical or outside the expertise of a court reviewing a factual record, and the Court's November 29 plan fail to identify what special technical or scientific knowledge or capacity Mr. Stevens has that the Court, or its Special Master, does not already possess. (*See* ECF No. 6018 at 6-7.) Accordingly, the only purview of a neutral expert under Rule 706 should be related to technical matters, such as the accuracy of CDCR's data system. Determining whether any evidence exists regarding an intent to mislead the Court falls outside the scope of a Rule 706 expert.

**B.    *Armstrong* Does Not Support Appointing Mr. Stevens as a Rule 706 Expert.**

Although the Court cites *Armstrong v. Brown*, 768 F.3d 975 (9th Cir. 2014), to support its plan to appoint Mr. Stevens, *Armstrong* actually stands for the proposition that such an appointment would be outside the bounds of Rule 706. The *Armstrong* court considered whether the district court's proposed expert could properly "resolve disputes between Plaintiffs' counsel and the state about whether non-compliance has occurred, the production of information and the institution of corrective action." 768 F.3d at 987. The Ninth Circuit found such a delegation of authority "impermissible" and beyond "the scope of duties that may be assigned to a Rule 706 expert." *Id*. The Court here similarly proposes to grant impermissible power to its "neutral expert." While the Court states that the expert's report will be provided to the parties, the Court's plan delegates its authority to Mr. Stevens to determine whether, as a threshold matter, there is evidence of fraud sufficient to warrant a hearing. Whether facts support a finding of fraud or intentionally misleading conduct is a *legal* conclusion. *See United States v. Scholl*, 166 F.3d 964,

5

Defs.' Views Court's Plan Appointing Independent Expert (2:90-cv-00520 KJM-DB (PC))

973 (9th Cir. 1999) (reaching a legal conclusion is an inappropriate matter for expert testimony). Such judicial functions may not be delegated to a Rule 706 court expert.

The other cases cited by the Court are similarly distinguishable from what the Court is contemplating doing in this instance. In *Walker v. American Home Shield Long Term Disability Plan*, 180 F.3d 1065 (9th Cir. 1999), the court appointed an expert to help evaluate medical evidence about "an elusive disease of unknown cause." *Id.* at 1071. The court's appointment in *Walker* fell into the traditional role of an expert appointed to provide an opinion on "complex scientific, medical, or technical matters," which is far from the role and powers contemplated by the Court's plan here. Similarly, in *G.K. Las Vegas Ltd. P'ship v. Simon Prop. Grp., Inc.*, 671 F. Supp. 2d 1203 (D. Nev. 2009), the court directed a consulting firm to conduct forensic examinations of computer equipment to determine if emails had been destroyed, as alleged in the plaintiff's complaint. *Id.* at 1205-06. *G.K. Las Vegas* shows that technical expertise may be necessary to assist the Court in making findings of fact. But unless the Court intends to restrict Mr. Stevens' inquiry to a review of CDCR's data collection and reporting, the Court cannot otherwise rely on another person, however well-qualified, to "gather all evidence relevant to questions" concerning fraud.

In sum, the Court's plan to appoint Mr. Stevens as a neutral expert to investigate and make findings of fact regarding non-technical matters falls outside its authority under Rule 706.

### III. THE COURT'S PROPOSED PLAN IS VAGUE AND OVERLY BROAD.

The Court's plan is vague as to the details of Mr. Stevens' authority. The plan also provides Mr. Stevens with powers that are not permitted under Rule 706. Defendants request that the Court provide a more detailed description of Mr. Stevens' scope of work, consistent with Rule 706's limits.

**A.  The Court's Plan Grants Mr. Stevens Powers Beyond Those Authorized by Federal Rule of Evidence 706.**

Although not detailed in its proposed order, the Court appears prepared to grant Mr. Stevens the authority to compel Defendants' compliance with the Court's order of appointment. (*See* ECF No. 6018-2 at 4 (granting "power" to interview "under conditions satisfactory to the

6

1  neutral expert.") Giving Mr. Stevens the authority to compel compliance with the Court's order
2  is inconsistent with Rule 706. Court-appointed neutral experts do not have power to compel
3  production of evidence or testimony.
4      For example, conducting compulsory interviews or depositions is not within the scope of
5  duties exercised by an expert appointed under Rule 706. *See Vanderbusch v. Chokatos*, No. 113-
6  CV-01422, 2017 WL 4574121, at *2 (E.D. Cal. Oct. 13, 2017) ("expert would be appointed to
7  assist the Court, and not to depose witnesses"). Instead, experts are retained to offer their
8  opinions on complicated matters, after having the opportunity to review records and deposition
9  testimony, interview witnesses on a voluntary basis, and conduct site inspections. *See LG Elecs.,*
10 *Inc. v. Q-Lity Computer Inc.*, No. C 01-2187 CW, 2007 WL 2904057, at *2 (N.D. Cal. Oct. 1,
11 2007); *see also Autodesk, Inc. v. ZWCAD Software Co.*, No. 5:14-CV-01409, 2015 WL 2454003,
12 at *1 (N.D. Cal. May 22, 2015) (no law authorizing a court-appointed expert to "whittle down
13 what information each party's appointed expert would be able to consider"); *Oracle Am., Inc. v.*
14 *Google Inc.*, Case No 10–cv–03561, Docket No. 413, at 2 (N.D. Cal. Sept. 9, 2011) (neutral
15 expert may review the record and then prepare and submit a separate independent expert report
16 critiquing the reports submitted by the parties' experts).[2] Nonetheless, the Court's order
17 explicitly provides Mr. Stevens with the power "to interview correctional staff, employees, and
18 appointees of the California Department of Corrections and Rehabilitation," "to interview
19 defendant Governor Edmund G. Brown and members of his staff" and "to interview counsel for
20 defendants and members of their staff." (ECF No. 6018-2 at 5.)
21     Additionally, Rule 706 does not authorize *ex parte* communications between the parties and
22 the expert. *G.K. Las Vegas Ltd. P'ship v. Simon Prop. Grp., Inc.*, 671 F. Supp. 2d at 1225. The
23 same is true for communications between the court and an expert. *United States v. Craven*, 239
24 F.3d 91, 102 (1st Cir. 2001); *Edgar v. K.L.*, 93 F.3d 256, 262 (7th Cir. 1996) (*ex parte*
25 communications can be grounds for disqualification). Yet here, the Court intends for its neutral

---

[2] Authorizing Mr. Stevens to conduct compulsory interviews of state officials for potential evidence supporting Dr. Golding's allegations is inconsistent with an appearance of neutrality. *In re United States*, 441 F.3d at 66; *Gorton v. Todd*, 793 F. Supp. 2d 1171, 1177 (E.D. Cal. 2011) ("The Rule only allows a court to appoint a neutral expert.").

7

Defs.' Views Court's Plan Appointing Independent Expert (2:90-cv-00520 KJM-DB (PC))

expert to consult with the Court's Special Master, who is generally considered an arm of the Court. *See Rohrbough v. Harris*, 549 F.3d 1313, 1318 (10th Cir. 2008) ("special master occupies a special place in court proceedings . . . [and] is more than an advisor or facilitator"); *see also e.g., Reece v. Gragg*, 650 F. Supp. 1297, 1312 (D. Kan. 1986) (stating that special master was an arm of the court and was thus restricted from intervening in daily operations of a jail). Accordingly, Defendants would expect to be included in all discussions and contacts with the Special Master or the Court. Otherwise, the proposed order creates a scheme of *ex parte* communications that are not permitted under Rule 706.

In short, the powers contemplated in the Court's November 29, 2018 proposed order are not permitted under Rule 706.

**B.    The Court's Plan Does Not Properly Define Mr. Stevens' Scope of Work.**

The Court's proposed plan appointing Mr. Stevens is unbounded and does not define the scope of his authority.[3] For example, the Court's prior proposed order described any interview as confidential (ECF No. 6002-1 at 3-4), but confidentiality is not mentioned in the Court's current proposed order (ECF No. 6018-2.) And the Court's plan grants Mr. Stevens authority to interview an unlimited number of government officials. Civil litigants are not permitted to engage in discovery that has no relation to a disputed fact or claim. *See Murphy v. Deloitte & Touche Grp. Ins. Plan*, 619 F.3d 1151, 1163 (10th Cir. 2010) (rules governing discovery, while broad have "never been a license to engage in an unwieldy, burdensome, and speculative fishing expedition"). Yet, the Court's proposed order allows the "neutral expert" to interview the Governor, anyone on the Governor's staff, anyone employed by Defendants' counsel, and anyone employed or appointed by CDCR without reference to a relevant time frame or requirement that the interviewee actually have personal knowledge related to Dr. Golding's allegations. (ECF No. 6018-2 at 5.)

---

[3] The Court also fails to clarify Mr. Stevens' hourly rate. (ECF No. 6018-2 at 4 ("the neutral expert and any of his staff shall be compensated at a reasonable blended hourly rate per hour for services performed as approved by the court").) Defendants reserve the right to object to any invoices submitted to the Court arising from Mr. Stevens' scope of work, including the reasonableness of those fees and Defendants' obligation to pay such fees.

8

Defs.' Views Court's Plan Appointing Independent Expert (2:90-cv-00520 KJM-DB (PC))

1  The Court also plans to grant Mr. Stevens "access to the records, files and papers
2  maintained by defendants," to the extent they are related to his authority, which may be
3  "expanded" upon his own request. (ECF No. 6018-2 at 3-4.) Thus, as currently proposed, the
4  Court's order gives Mr. Stevens access to Defendants' records (confidential or otherwise) without
5  limitation. The Court's plan therefore improperly leaves the documents sought and the interviews
6  conducted entirely up to the neutral expert without limitation.
7  The broad, undefined plan set forth in the Court's proposed order is improperly vague and
8  lacks the detail, scope, and restrictions that are typically provided under a Rule 706 appointment.
9  *See e.g., LG Elecs., Inc. v. Q-Lity Computer Inc.*, No. C 01-2187, 2007 WL 2904057, at *2 (court
10  identified in detail the information to be provided the neutral expert, and the manner in which that
11  information would made available the expert); *see also PSM Holding Corp v. Nat'l Farm Fin.*
12  *Corp.*, No. CV-0508891, 2011 WL 13213879, at *5 (C.D. Cal. Oct. 5, 2011) (court specifically
13  outlined the documents to be provided including depositions, produced discovery, pleadings,
14  declarations, and allowed the parties to object to the expert's requests).
15  Defendants therefore request the Court identify in detail Mr. Stevens' scope of authority,
16  while limiting any authority to be consistent with powers of a Rule 706 neutral expert.

### IV. THERE IS NO FACTUAL OR LEGAL BASIS FOR THE COURT'S PROPOSED PLAN AUTHORIZING MR. STEVENS TO INTERVIEW GOVERNOR EDMUND G. BROWN, JR.

19  Without providing any factual basis or rationale, the Court's November 29, 2018 plan
20  expands the scope of the independent investigator's duties and authority to interview of Governor
21  Brown. The record contains no factual predicate to permit this expanded authority and it is
22  further incongruous with the basis for appointing an expert.
23  The Court's proposed order states that Mr. Stevens' purpose is to "assist the court in
24  investigating allegations raised" by Dr. Golding "to determine whether defendants have
25  committed any fraud on the court or the Special Master." (ECF No. 6018-2 at 1-2.) The Court
26  specifically identified the areas of investigation. (*Id.* at 2.) However, nowhere in Dr. Golding's
27  allegations or its attachments does he suggest, let alone allege, that Governor Brown has any
28  personal knowledge or is a fact witness. Nor have any of the parties provided the Court with

9

Defs.' Views Court's Plan Appointing Independent Expert (2:90-cv-00520 KJM-DB (PC))

information suggesting that Governor Brown was involved in the collection or reporting of CDCR's data.

High-ranking public officials should generally not be compelled to provide testimony in litigation arising out of the "performance of their official duties." *Stagman v. Ryan*, 176 F.3d 986, 995 (7th Cir. 1999) (holding that state attorney general should not be compelled to testify); *see also Kyle Eng'g Co. v. Kleppe*, 600 F.2d 226, 231 (9th Cir. 1979) (stating "[h]eads of government are not normally subject to deposition" and holding interrogatories in lieu of deposition was not unreasonable). Unless there are "reasons to believe" the testimony would lead to relevant admissible evidence, requiring public officials to spend time testifying would "serve little purpose other than to disrupt" the official. *Id*. This Court has already recognized that high-ranking state officials should be compelled to testify only "on a showing that the officials had 'direct personal factual information pertaining to material issues in an action . . . [that] is not available through any other source.'" (ECF No. 2946 at 5 (quoting *Green v. Baca*, 226 F.R.D. 624, 648 (C.D. Cal. 2005)); *see also Edgar v. KL*, 93 F.3d 256, 261 (7th Cir. 1996) ("The judge relented after recognizing that he lacks authority to hale the Governor into court [because] [n]o one contends that the Governor is a fact witness.").

There is no allegation that Governor Brown is a fact witness. Moreover, as detailed in Defendants' response to the Court's November 13, 2018 proposed order, all information relevant to the areas of investigation identified by the Court is available from other sources. (*See* ECF No. 6012.) Compelling Governor Brown (or other high-ranking state officials) to submit to an interview by the Court's expert has no factual or legal support. Defendants strongly object, and the Court's plan should be modified to prohibit the interview of the Governor or other high-ranking state officials.

## V. THE COURT'S PROPOSED PLAN IMPERMISSIBLY AUTHORIZES INQUIRY INTO ATTORNEY-CLIENT COMMUNICATIONS.

Defendants objected to the unlimited grant of authority included in the Court's prior order allowing a special investigator to interview "counsel for defendants and members of their staff," and requiring that the identified parties "shall cooperate with the investigator" and respond to his

10

or her inquiries and requests.  (ECF No. 6002-1 at 4.)  The Court's November 29, 2018 proposed plan maintains the potential for an intrusion into attorney-client privileged communications by allowing the expert broad unrestricted authority "[t]o interview counsel for defendants and members of their staff," and potentially increases the threatened intrusion by removing the requirement that the interviews be confidential.  (ECF No. 6018-2 at 4.)  The attorney-client privilege is "arguably the most fundamental of the common law privileges recognized under" the rules of evidence, *In re Napster, Inc. Copyright Litig.*, 479 F.3d 1078, 1090 (9th Cir. 2007), abrogated on other grounds by *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100 (2009).  Before any exception to the attorney-client privilege is recognized—even for the intrusion of *in camera* review—there must be a threshold showing that the privilege must be abrogated.  *United States v. Zolin*, 491 U.S. 554, 572 (1989) (there must be a "factual basis adequate to support a good faith belief by a reasonable person [] that *in camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies.").

While the Court's proposed plan under Rule 706 does not require Defendants or their counsel to waive the privilege, the proposed plan implies that the Court will entertain such objections to any request by the expert.  Nothing in Rule 706 permits a neutral expert to invade the attorney-client privilege, and Defendants have found no case law holding that a Court is authorized to appoint an expert with the power to investigate attorney-client communications under Rule 706.  Accordingly, the Court should revise it proposed plan by removing paragraph 3 of the proposed order permitting its neutral expert access to Defendants' attorneys and their staff.

**VI.   ANY ORDER APPOINTING AN INVESTIGATOR SHOULD STRICTLY LIMIT THE TIME AND SCOPE OF THE APPOINTMENT.**

The Court's modified plan limits the Court's appointee in a few minor ways—for example, the expert must submit a report within four months.  But the Court's plan does not go far enough.  (ECF No. 6018-2 at 3.)  Rather, it also allows for the expansion of the scope of the investigation and the duties of the expert at the request of any party, the Special Master, or the expert himself.  (ECF No. 6018-2 at 4.)  Accordingly, the scope of the expert's work could extend into other parts

11

of this case and beyond Dr. Golding's allegations, although there are no facts warranting any "expanded" inquiry.

Instead of permitting an open-ended investigation, the Court should consider the evidence already presented by Defendants with additional briefing, if necessary. That procedure would provide a quicker resolution consistent with the judicial process. If, however, the Court continues with its appointment of Mr. Stevens, his appointment should be limited to those powers permitted by Rule 706 and must end once he has provided his report regarding Dr. Golding's allegations.

## CONCLUSION

The Court's modified plan appointing Mr. Stevens as a neutral expert under Federal Rule of Evidence 706 and ordering Defendants to pay all costs fails to remedy the many infirmities identified in Defendants' November 20 objections. Moreover, the Court's revised plan to appoint an expert creates an extra-judicial official with powers that fall outside of Rule 706's authority. Although Defendants have shown that no technical or scientific expertise is required to evaluate Dr. Golding's allegations, any Rule 706 appointment should, at most, be narrow in scope to provide the Court with a neutral opinion based on a record developed by the parties regarding the accuracy of CDCR's data reporting system and accounting rules. For all the reasons stated in Defendants' November 20 filings (*see*, *e.g*., ECF Nos. 6009 & 6012), and for the reasons stated here, Defendants object and request that the Court's plan be significantly revised.

Dated:  December 6, 2018

Respectfully submitted,

XAVIER BECERRA
Attorney General of California
JAY C. RUSSELL
Supervising Deputy Attorney General

/s/ Adriano Hrvatin

ADRIANO HRVATIN
Supervising Deputy Attorney General
*Attorneys for Defendants*

CF1997CS0003
33690000.docx

12

Defs.' Views Court's Plan Appointing Independent Expert (2:90-cv-00520 KJM-DB (PC))