DONALD SPECTER – 083925
STEVEN FAMA – 099641
MARGOT MENDELSON – 268583
PRISON LAW OFFICE
1917 Fifth Street
Berkeley, California  94710-1916
Telephone:    (510) 280-2621

CLAUDIA CENTER – 158255
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN
CALIFORNIA, INC.
39 Drumm Street
San Francisco, California  94111-4805
Telephone:    (415) 621-2493

MICHAEL W. BIEN – 096891
JEFFREY L. BORNSTEIN – 099358
ERNEST GALVAN – 196065
THOMAS NOLAN – 169692
LISA ELLS – 243657
KRISTA STONE-MANISTA – 269083
JENNY S. YELIN – 273601
MICHAEL S. NUNEZ – 280535
JESSICA WINTER – 294237
MARC J. SHINN-KRANTZ – 312968
CARA E. TRAPANI – 313411
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California  94105-1738
Telephone:    (415) 433-6830

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>              Plaintiffs,<br><br>       v.<br><br>EDMUND G. BROWN, JR., et al.,<br><br>              Defendants. | Case No. 2:90-CV-00520-KJM-DB<br><br>**PLAINTIFFS' RESPONSE TO DEFENDANTS' VIEWS ON THE COURT'S PLAN TO APPOINT CHARLES J. STEVENS AS THE COURT'S INDEPENDENT EXPERT**<br><br>Judge:  Hon. Kimberly J. Mueller |

# TABLE OF CONTENTS

Page(s)

INTRODUCTION ........................................................................................................ 1

I.  The Court Has Not Exceeded Its Inherent Authority in Appointing the Independent Expert, or Conferred on Him Improper Authority, but Rather Is Fulfilling Its Duty to Uncover any Fraud Perpetrated Against It. ............................. 1

II. The Court Properly Has Relied on Rule 706 to Appoint the Expert and Define His Powers and Duties. .................................................................................. 5

    A. The Court Has Repeatedly, and Very Clearly, Articulated Why It Cannot Conduct the Initial Investigation and the Court Is Well Within Its Discretion to Reject Defendants' Assertion that the Court Should Reverse the Order of Investigative Steps. ................................................ 6

    B. The Law Supports the Court's Use of a Rule 706 Expert to Investigate the Allegations at Issue Here. ........................................................................ 9

III. The Court Has Carefully Crafted Limits on the Expert's Powers and Delineated the Expert's Duties. ............................................................................. 11

    A. The Court Has Defined the Expert's Powers so that They Do Not Exceed Those Authorized by Rule 706. ...................................................... 11

    B. The Court's Plan Plainly Delineates the Expert's Scope of Work. ............... 14

IV. The Court Has Ample Factual and Legal Basis to Permit the Expert to Interview the Governor and Other High-Ranking Officials. .................................... 15

V.  The Allegations in the Golding Report Easily Meet the Low Threshold to Permit at Least in Camera Review of Attorney-Client Privileged Material. ........... 19

VI. The Court's Order of Appointment Does Not Require Additional Limitations on the Time and Scope of the Investigation. ........................................................... 20

CONCLUSION ......................................................................................................... 22

CERTIFICATION ..................................................................................................... 22

[3329082.8]

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Anand v. Cal. Dep't of Corr. & Rehab.*,
  No. 34-2018-00226894-CU-OE-GDS, Dkt. 9 (Sac. Super. Ct. June 21, 2018).......21

*Ark. Teacher Ret. Sys. v. State St. Bank & Tr. Co.*,
  232 F. Supp. 3d 189 (D. Mass. 2017)....................................................................20

*Armstrong v. Brown*,
  768 F.3d 975 (9th Cir. 2014) ................................................................................9

*Ass'n of Mexican-Am. Educators v. State of California*,
  231 F.3d 572 (9th Cir. 2000) ................................................................................6

*Autodesk, Inc. v. ZWCAD Software Co.*,
  No. 5:14-CV-01409, 2015 WL 2454003 (N.D. Cal. May 22, 2015) ......................12

*Bagley v. Blagojevich*,
  486 F. Supp. 2d 786 (C.D. Ill. 2007) ...................................................................19

*Chambers v. NASCO, Inc.*,
  501 U.S. 32 (1991) ...............................................................................................4

*Cobell v. Norton*,
  334 F.3d 1128 (D.C. Cir. 2003)..........................................................................2, 8

*Detoy v. City and County of San Francisco*,
  196 F.R.D. 362 (N.D. Cal. 2000) .........................................................................19

*Dixon v. Comm'r*,
  316 F.3d 1041 (9th Cir. 2003) ...............................................................................4

*Edgar v. K.L.*,
  93 F.3d 256 (7th Cir. 1996) .................................................................................13

*Fed. Trade Comm'n v. Enforma Natural Prods., Inc.*,
  362 F.3d 1204 (9th Cir. 2004) .............................................................................13

*G.K. Las Vegas Ltd. P'ship v. Simon Prop. Grp.*,
  671 F. Supp. 2d 1203 (D. Nev. 2009) ..................................................................12

*Gorton v. Todd*,
  793 F. Supp. 2d 1171 (E.D. Cal. 2011) .............................................................6, 10

*Hazel-Atlas Glass Co. v. Hartford-Empire Co.*,
  322 U.S. 238 (1944) ..............................................................................................4

*Hendricks & Lewis PLLC v. Clinton*,
  766 F.3d 991 (9th Cir. 2014) .................................................................................4

*Hepting v. AT&T Corp.*,
  439 F. Supp. 2d 974 (9th Cir. 2006) .....................................................................10

ii

PLAINTIFFS' RESPONSE TO DEFENDANTS' VIEWS ON THE COURT'S PLAN TO APPOINT
CHARLES J. STEVENS AS THE COURT'S INDEPENDENT EXPERT

In PSM Holding Corp v. Nat'l Farm Fin. Corp.,
    No. CV0508891MMMFMOX, 2011 WL 13213879 (C.D. Cal. Oct. 5, 2011) ....... 15

*In re Engle Cases,*
    No. 309CV10000JWGYJBT, 2015 WL 12843860 (M.D. Fla. Dec. 22, 2015)....... 20

*In re Napster, Inc. Copyright Litig.,*
    479 F.3d 1078 (9th Cir. 2007) ................................................................................. 20

*In re United States,*
    441 F.3d 44 (1st Cir. 2006) ................................................................................. 2, 3

*Karsjens v. Piper,*
    845 F.3d 394 (8th Cir. 2017) ..................................................................................... 10

*Kyle Eng'g Co. v. Kleppe,*
    600 F.2d 226 (9th Cir. 1979) ..................................................................................... 18

*LG Elecs. Inc. v. Q-Lity Computer Inc.,*
    No. C 01-2187 CW, 2007 WL 2904057 (N.D. Cal. Oct. 1, 2007).................... 12, 15

*Oracle Am. Inc. v. Google Inc.,*
    Case No. 10-cv-03561, Dkt. 413 (N.D. Cal. Sept. 9, 2011).................................... 12

*Scott v. Spanjer Bros., Inc.,*
    298 F.2d 928 (2d Cir. 1962) ..................................................................................... 11

*Small v. Univ. Med. Ctr. of S. Nev.,*
    No. 2:13-CV-00298-APG, 2014 WL 3703914 (D. Nev. Mar. 14, 2014) ............... 20

*Stagman v. Ryan,*
    176 F.3d 986 (7th Cir. 1999)..................................................................................... 18

*United States v. Craven,*
    239 F.3d 91 (1st Cir. 2001) ....................................................................................... 13

*United States v. Estate of Stonehill,*
    660 F.3d 415 (9th Cir. 2011) ................................................................................. 4, 8

*United States v. Scholl,*
    166 F.3d 964 (9th Cir. 1999) ....................................................................................... 9

*United States v. Zolin,*
    491 U.S. 554 (1989) ................................................................................................... 19

*Universal Oil Prods. Co. v. Root Ref. Co.,*
    328 U.S. 575 (1946) ..................................................................................................... 4

*Vanderbusch v. Chokatos,*
    No. 113-CV-01422, 2017 WL 4574121 (E.D. Ca. Oct. 13, 2017) ......................... 12

*Virgo Corp. v. Paiewonsky,*
    39 F.R.D. 9 (D.V.I. 1966).......................................................................................... 19

iii

[3329082.8]

*Walker v. Am. Home Shield Long Term Disability Plan*,
     180 F.3d 1065 (9th Cir. 1999) ............................................................. 10, 11

<u>Other Authorities</u>

29 Charles Alan Wright et al., *Federal Practice and Procedure* § 6302
     (2d ed. Sept. 2018 Update) ...................................................................... 10

PLAINTIFFS' RESPONSE TO DEFENDANTS' VIEWS ON THE COURT'S PLAN TO APPOINT
CHARLES J. STEVENS AS THE COURT'S INDEPENDENT EXPERT

[3329082.8]

1

### INTRODUCTION

2      The Court's plan to appoint Charles J. Stevens, Esq. as the Court's independent

3  expert, as set forth in the November 29, 2018 Order, ECF No. 6018 ("Nov. 29 Order"), is

4  well within the Court's inherent authority and Rule 706's codification of that broad and

5  discretionary authority.  Despite the Court's clearly articulated need and basis for the

6  appointment of an independent expert, Defendants have once again glossed over the

7  potential conflicts at issue here and the Court's efforts to resolve the issues raised by the

8  Golding Report in a careful, comprehensive, and effective manner that also appropriately

9  addresses Defendants' concerns.  Defendants' objections display their general approach to

10  all litigation to-date related to the Golding Report: downplay, delay, and stymie at all

11  costs, rather than cooperating with the Court's efforts to properly address the very serious

12  allegations so that their truth and any associated fraud can be determined in a prompt, fair,

13  and thorough manner.  If Defendants are as confident that Dr. Golding's allegations are

14  unfounded as they claim, they should welcome the Court's well-thought-out and carefully

15  crafted process to clear their names resoundingly.  Regardless of Defendants'

16  protestations, the Court's planned process is well within its power and serves the public

17  interest in ensuring both the integrity of the judiciary and the rightful conduct of the public

18  servant Defendants here.  The Court should proceed as planned.

19  **I.     The Court Has Not Exceeded Its Inherent Authority in Appointing the
20           Independent Expert, or Conferred on Him Improper Authority, but Rather Is
             Fulfilling Its Duty to Uncover any Fraud Perpetrated Against It.**

21      Defendants once again argue that the scope of the investigation is too broad, and

22  that the proposed approach violates separation of powers principles by allowing the

23  independent expert to take on quasi-prosecutorial duties as an arm of the Court.  Defs'

24  Views on Ct.'s Plan to Appoint Charles J. Stevens as Ind. Expert, ECF No. 6022 (Dec. 6,

25  2018) ("Defs' Dec. 6 Objections"), at 3-4.[1]

26

27  [1] The page numbers in this Response, for documents filed in the Electronic Case Filing

28  (footnote continued)

PLAINTIFFS' RESPONSE TO DEFENDANTS' VIEWS ON THE COURT'S PLAN TO APPOINT
CHARLES J. STEVENS AS THE COURT'S INDEPENDENT EXPERT

[3329082.8]

1    Defendants' attempts to draw analogies between the neutral expert and investigation

2  at issue here to the situations in *Cobell v. Norton*, 334 F.3d 1128 (D.C. Cir. 2003), and *In*

3  *re United States,* 441 F.3d 44 (1st Cir. 2006) are entirely unpersuasive.  In *Cobell*, the

4  Federal Department of the Interior had mismanaged trust lands created for the benefit of

5  Native Americans, and the district court relied on its inherent powers to appoint a monitor

6  cum special master to help rectify the Department's misdeeds.  334 F.3d at 1133-35.  In

7  reversing, the District of Columbia Court of Appeals specifically noted that "our holding is

8  a narrow one, tethered to the particular facts" of that case—which are in no way

9  comparable to those here. *See id.* at 1141.  The *Cobell* court determined that the

10  fundamental flaw in  the district court's broad appointment was that it empowered the

11  court monitor, a quasi-judicial entity, with quasi-executive authority by actually charging

12  the monitor with administering the trusts.  *Id.* at 1143.  The objectionable appointment

13  order also was not limited to addressing past mismanagement, but rather granted the court

14  monitor unencumbered, prospective power "to monitor and review all of the defendants'

15  trust reform activities, including the defendants' trust reform progress and any other matter

16  [the monitor] deems pertinent to trust reform."  *Id.* at 1143 (internal alterations omitted).

17  By contrast, this Court has not in any way sought to confer the independent expert with

18  any administrative or executive authority, and the scope of the appointment is not

19  prospective.  The Court's proposed appointment order grants the expert no power to direct

20  Defendants and their employees to do anything, operational or otherwise, other than

21  answer questions and provide documents concerning narrow and clearly defined data and

22  reporting issues during a discrete and relatively short timeframe in the past, and then

23  provide a report that will if necessary form the basis for an adversary proceeding at which

24  Defendants can contest the investigator's factual findings before this Court draws any final

25  factual or legal conclusions.  Given the circumscribed and discrete duties and powers the

26  _____

27  (ECF) system, are to the page numbers assigned by the ECF system.

28

PLAINTIFFS' RESPONSE TO DEFENDANTS' VIEWS ON THE COURT'S PLAN TO APPOINT
CHARLES J. STEVENS AS THE COURT'S INDEPENDENT EXPERT

[3329082.8]

1  Court has outlined, there is no danger that appointment of an independent expert here will

2  run afoul of *Cobell*.

3      *In re United States* is even more clearly inapposite. *See* 441 F.3d 44 (1st Cir. 2006).

4  There, the United States sought recusal of a district court judge due to the appearance of

5  impropriety generated by the judge's secret, self-initiated, and self-styled investigation of

6  the United States, a party to the case. *Id.* at 49, 53-55. In fact, the United States was the

7  party that initially identified and sought relief from the court to address possible

8  improprieties undertaken by its staff. *See id.* at 51. Here, however, Defendants appear

9  bent on burying any improprieties that the Golding report could bring to light, including by

10 attempting to slow and obstruct the Court's planned investigation. And *United States*

11 specifically embraced a flexible approach to evaluating whether and to what extent a

12 district court may engage in investigation of a party's alleged misconduct, and it relied on

13 grand-jury-specific rules—not at issue here—to do so. *See id.* at 58-60.

14     More fundamentally, Defendants willfully ignore the key fact that the proposed

15 investigation here is of potential and far-reaching fraud *on the Court* itself based on the

16 extensive sworn testimony of CDCR's current top psychiatrist and corroborated by a

17 second whistleblower, Dr. Melanie Gonzalez. This is not a matter of garden-variety fraud

18 between private litigants, in a short-lived and relatively low-stakes case, where the

19 existence and extent of the fraud can be sorted out in a straightforward adversarial

20 proceeding. Here, in contrast to such a case, the Court and Special Master are the putative

21 victims of any such fraud.[2] Given these circumstances, the Court is obligated to take the

22 _____

23 [2] That a court, in such circumstances, may take on some characteristics of a party, *see*

24 Defs' Resp. to Ct.'s Nov. 13, 2018 Order to Show Cause Why the Ct. Should Not Appoint

25 an Independent Investigator in the Exercise of its Inherent Auth., ECF No. 6009 at 8 (Nov.

25 20, 2018) ("Defendants' Nov. 20 Resp. to OSC"), is immaterial: The Court has the

26 power—and duty, *Hendricks & Lewis PLLC v. Clinton*, 766 F.3d 991, 1000 (9th Cir.

27

28 (footnote continued)

PLAINTIFFS' RESPONSE TO DEFENDANTS' VIEWS ON THE COURT'S PLAN TO APPOINT
CHARLES J. STEVENS AS THE COURT'S INDEPENDENT EXPERT

[3329082.8]

1   steps necessary to ensure any investigation will be fair, thorough, and unbiased.  That

2   power is inherent to the Court, and is "beyond question.  The power to unearth such a

3   fraud is the power to unearth it effectively."  *Universal Oil Prods. Co. v. Root Ref. Co.*,

4   328 U.S. 575, 580 (1946) (citation omitted); *see also Chambers v. NASCO, Inc.*, 501 U.S.

5   32, 44 (1991) (same); *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 250

6   (1944) (holding a circuit court "had both the duty and the power to vacate its own

7   judgment"); *Hendricks & Lewis PLLC v. Clinton*, 766 F.3d 991, 1000 (9th Cir. 2014)

8   (explaining that to protect the "integrity of the judicial process . . . we not only can act, we

9   should" (quoting *Dixon v. Comm'r*, 316 F.3d 1041, 1046 (9th Cir. 2003), as amended

10  (Mar. 18, 2003)).

11       And Defendants' broad proclamations about the American adversarial system

12  notwithstanding, Defs' Dec. 6 Objections at 3, 12, this Court's limited investigation into

13  Dr. Golding's detailed sworn fraud allegations, which have been echoed by other CDCR

14  whistleblowers including Dr. Gonzalez, is critical to protect and preserve the integrity of

15  the judicial process and the administration of justice.  *United States v. Estate of Stonehill*,

16  660 F.3d 415, 444 (9th Cir. 2011) ("[T]he relevant inquiry is not whether fraudulent

17  conduct prejudiced the opposing party, but whether it harmed the integrity of the judicial

18  process." (citation and internal alteration omitted)).  That concern is especially heightened

19  here where the State itself—not a private actor, but the highest-level public officials

20  charged with serving not only the Plaintiff class but all people of California—stands

21  accused of far-reaching fraud.  Given the weight and import of the allegations in the

22  Golding Report, which Defendants concede are serious, Defendants should be focused

23  more than anyone on ensuring that: (1) the investigation Defendants agree needs to occur

24  shines a light on improprieties, if any did in fact occur; (2) the investigative process is fair

25  _____

26  2014)—to uncover fraud perpetrated against it, as those allegations themselves necessarily

27  place the Court in a non-traditional role in the adversarial process.

28

PLAINTIFFS' RESPONSE TO DEFENDANTS' VIEWS ON THE COURT'S PLAN TO APPOINT
CHARLES J. STEVENS AS THE COURT'S INDEPENDENT EXPERT

1   and conducted by a non-interested party with appropriate expertise; and (3) the process

2   *appears* fair and unbiased in all respects so that everyone, including the public, can have

3   confidence in the outcome.  That can only happen with the type of independent

4   investigation the Court envisions.  And if Defendants' loud (and obviously one-sided)

5   protestations that they did nothing wrong are true, that is exactly what the investigation

6   will find.

7          Given the allegations in the Golding Report; the necessity of uncovering the

8   pertinent data and reporting issues that, if proven, would reach into every corner of this

9   case; and the specifically delineated and limited powers conferred on the expert, the

10   planned investigation is not only well within the Court's authority, but carefully and

11   appropriately tailored to help the Court discern if further adversarial proceedings

12   antecedent to an ultimate determination of fraud on the Court and Special Master are

13   necessary and appropriate.

14   **II.     The Court Properly Has Relied on Rule 706 to Appoint the Expert and Define
           His Powers and Duties.**

15

16          As with their generalized objections to the Court's appointment of an independent,

17   neutral expert, Defendants apparently misapprehend the Court's stated basis for requiring

18   the assistance of an expert to investigate the Golding Report's allegations of

19   misrepresented data.  The Court has already explained repeatedly that it is not an expert in

20   investigating the Golding Report's claims, bolstered by at least one other high-level

21   whistleblower, that Defendants made fraudulent or intentionally misleading

22   representations to the Special Master and the Court.  Its chosen method of efficiently

23   resolving those issues, with an eye toward its continued efforts to move this case toward

24   full remediation as expeditiously as possible, is within the Court's discretion and

25   sufficiently protects Defendants' rights while serving the necessary goal of assisting the

26   Court in ultimately determining whether fraud occurred, subject to an adversarial

27   proceeding in which Defendants can present any contrary viewpoint if necessary.  *See*

28   November 13, 2018 Order, ECF No. 6002 ("Nov. 13 Order") at 3; November 5, 2018

5

1    Transcript, ECF No. 5998 ("Nov. 5 Transcript") at 4, 11.

2        Defendants' citations to *Gorton v. Todd*, 793 F. Supp. 2d 1171 (E.D. Cal. 2011),

3    and *Ass'n of Mexican-Am. Educators v. State of Cal.*, 231 F.3d 572 (9th Cir. 2000), are

4    taken entirely out of context. *See* Defs' Dec. 6 Objections at 4. In *Gorton*, a case in which

5    an indigent state prisoner proceeding with limited representation alleged inadequate

6    medical treatment in violation of his Eighth Amendment rights, Judge Karlton noted that a

7    Rule 706 witness should not be appointed where unnecessary. *See* 793 F. Supp. 2d at

8    1173, 1181. But Defendants ignore Judge Karlton's conclusion that such assistance *was*

9    *needed* to help to evaluate the conflicting evidence in *Gorton*, and thus that "the Magistrate

10   Judge's order denying plaintiff's request for appointment of an expert witness under Rule

11   706 . . . was clearly erroneous." *Id.* at 1186-87. Defendants' citation to *Association of*

12   *Mexican-Am. Educators* is entirely irrelevant, as the Ninth Circuit there held that the

13   appointee at issue was not an expert witness under Rule 706 at all, but a technical advisor.

14   *See* 231 F.3d at 590. The Ninth Circuit then upheld the appointment order at issue, finding

15   the district court did not commit legal error in appointing the technical advisor pursuant to

16   its inherent powers, or in refusing to allow cross-examination or to require an expert

17   report. *Id.* at 590-91.

18       Rule 706 unquestionably grants the Court broad discretion to appoint an expert to

19   assist in resolving these complex issues where, as here, the Court reserves the final factual

20   and legal conclusions for itself.

21       **A.    The Court Has Repeatedly, and Very Clearly, Articulated Why It Cannot Conduct the Initial Investigation and the Court Is Well Within**
22              **Its Discretion to Reject Defendants' Assertion that the Court Should Reverse the Order of Investigative Steps.**
23

24       Defendants request a party-led adversarial process in lieu of, or at least preceding,

25   an independent investigation, but this Court has already explained that it envisions a more

26   traditional adversarial process *after* the neutral expert has teed up any issues that warrant

27   such an intensive process. *See* Nov. 5 Transcript at 5, 16, 20, 22. Defendants have not

28   shown or even explained how that process would be inadequate to protect their interests,

1    assuming the independent expert determines there is a basis for concluding fraud may have

2    occurred, which Defendants claim with utmost confidence will never happen.

3    　　　　While Defendants might prefer a different approach, there are good reasons to delay

4    any adversarial process until after the Court makes a threshold finding that one is

5    warranted and necessary upon review of the expert's report, and the Court has not

6    exceeded its discretion in relying on those reasons to design a process best fit to the

7    unusual circumstances here.  While Defendants sing the praises of an adversarial

8    proceeding between the parties, *see, e.g.*, Defs' Dec. 6 Objections at 2-3, 12, (ignoring, of

9    course, that the primary victim of the alleged fraud is the Court itself), they gloss over the

10   fact that any such proceeding would necessarily require Plaintiffs to have full access to

11   intensive, probing discovery involving the state of mind and intent of high-ranking

12   officials, which would undoubtedly tie up the parties and Court in full-bore hotly contested

13   litigation to the exclusion of any other progress on the remedy in this case.  This Court has

14   repeatedly stated that it intends to avoid that outcome wherever feasible, in order to usher

15   in remediation of the constitutional violations and the end of federal oversight as quickly

16   as possible.  *See, e.g.*, February 21, 2018 Order, ECF No. 5794 at 7-8 (discussing road map

17   toward ending litigation and federal oversight, and gathering multiple prior Court orders re

18   same); *see also* Nov. 29 Order at 11 (discussing ongoing goal of moving the case forward

19   toward remediation).  But invasive discovery would be necessary to ensure an effective

20   and complete review of the allegations raised by the Golding Report and the type of full

21   and fair examination of the issues to which the Court and the public are entitled.

22   Beginning the process, instead, with an independent expert limits the extent to which

23   sensitive or privileged information is exposed to Plaintiffs, and opens up the possibility

24   that the parties and Court can bypass a time-consuming, inefficient, expensive, and

25   potentially burdensome process of discovery and evidentiary hearings that—if recent

26   proceedings are any predictor—are highly likely to spawn further, seemingly endless

27   litigation.  *See* Nov. 29 Order at 11-12.  That rationale is a valid one.  *Karsjens*, 845 F.3d

28   at 405 (ruling that the district court properly employed Rule 706 experts, among other

7

1    efforts, "to streamline the complicated case and attempt to reach an amicable settlement

2    between the parties").  And while the focused investigation is occurring, the parties, with

3    the assistance of the Special Master, can proceed with a process to address the other issues

4    arising out of the Golding Report's allegations including the second and third tracks

5    identified by the Court, as well as any other work on remediation that is possible in the

6    short term.

7            As to Defendants' repeated proposition that the Special Master himself should head

8    the investigation, the reasons for rejecting that approach are obvious and practical.  The

9    Special Master is a *purported victim* of Defendants' material misrepresentations and

10   distortions, a conflict Defendants never address.  Nov. 29 Order at 6; Nov. 13 Order at 3.

11   And Defendants' improper, self-interested "defense" to Dr. Golding's allegations is

12   predicated on the insinuation that the Special Master knew or should have known about all

13   of the purported misconduct to begin with.  *See, e.g.*, Defendants' Comments on the

14   Court's Proposed Order of Appointment, ECF No. 6012 (Nov. 20, 2018) ("Defs' Nov. 20

15   Merits Objections") at 5 ("[T]he Special Master has been kept informed of CDCR's data

16   management practices . . . ."), 7-8 (asserting that Performance Report indicators were

17   developed "with input from the Special Master" and measures were "readily available" to

18   the Special Master).  Having the Special Master conduct the investigation, even assuming

19   his team of clinicians and prison monitors had expertise with investigating fraud

20   comparable to Mr. Stevens, would subject the process to obvious charges of bias that

21   would undermine the integrity of the process and further erode trust in the Courts.  *See*

22   *Estate of Stonehill*, 660 F.3d at 444.  It could even open the Special Master himself up to

23   an attack of impartiality and compromise his position as a long-standing arm of this Court

24   who has been entrusted with a central role assisting with the remediation in this case.  *Cf.*

25   *Cobell*, 334 F.3d at 1143 (questioning whether court official who shifted between monitor

26   and special master was no longer impartial and must be recused).  Indeed, it is notable that

27   Defendants' protestations about federalism, additional cost, and ex parte contacts

28   apparently do not extend to the Special Master even though his charge would be

8

[3329082.8]

1   functionally the same as that of Mr. Stevens.  And once again, Defendants fail to

2   acknowledge the posture of the proceedings here—i.e., that the Golding Report includes

3   allegations that Defendants' representations *to the Court and Special Master* were

4   potentially materially and intentionally distorted or misleading, and therefore that the

5   Court and Special Master are the potential victims of any fraud.  Regardless, it makes

6   sense that this Court would remove itself and the Special Master from the initial

7   investigation as to whether there are grounds to believe fraud may have been committed,

8   and only if there are such grounds, to proceed with an adversarial process.

9       In short, "certainly the defense will have a chance to make its case fully one way or

10   another in response to what Dr. Golding is saying in his report,"  Nov. 5 Transcript at 16,

11   and in the meantime the investigation should proceed as outlined by the Court.[3]

**B.    The Law Supports the Court's Use of a Rule 706 Expert to Investigate the Allegations at Issue Here.**

14      Similar to its misapplication or misapprehension of other characteristics of the

15   neutral expert and his investigation, Defendants mistake the holding in *Armstrong v.*

16   *Brown*, 768 F.3d 975, 987-88 (9th Cir. 2014).  The Court in *Armstrong* took issue *only*

17   with the expert's conferred authority to definitively resolve questions of fact and law in the

18   litigation, without further review by the district court.  *See id.*; *see also United States v.*

---

[3] In their response to the November 13 Order, Defendants initially suggested that the Court

should appoint the *Plata* Receiver as the expert, Defs' Nov. 20 Resp. to OSC at 19-20,

although they provided no cogent reason for doing so.  Nor is any persuasive reason

apparent, given, as this Court notes, the Receiver has no relevant expertise that might assist

the Court efficiently reach its ultimate determination of whether intentional misconduct

took place.  Nov. 29 Order at 6-7; *see also* Nov. 13 Order at 3; Nov. 5 Transcript at 6-7.

Regardless, in their response to the Nov. 29 Order, Defendants have scrapped their ill-

conceived earlier suggestion.  *Cf.* Defs' Dec. 6 Objections at 2 n.1.

[3329082.8]

1   *Scholl*, 166 F.3d 964, 973 (9th Cir. 1999), *as amended on denial of reh'g* (Mar. 17, 1999)

2   (cited by Defendants for uncontroversial evidentiary proposition that expert testimony on

3   ultimate legal conclusions is inadmissible).  The Court's proposed order here has conferred

4   no such authority on the neutral expert, but rather has tasked him with conducting an

5   investigation and providing the Court "a report identifying whether there is evidence

6   sufficient to warrant an evidentiary hearing, . . . and, if so, identifying that evidence."

7   Nov. 29 Order, Ex. B at 4.  This Court has made clear it, not Mr. Stevens, will make the

8   final legal and factual determination regarding the allegations of fraud and intentional

9   misrepresentations, after an adversarial proceeding if necessary.  Nov. 29 Order at 2, 6-7,

10   10-12, Ex. B at 4.  It is therefore consistent with *Armstrong*'s dictates.

11          Defendants also point to case law that, they say, limits the appointment of a Rule

12   706 expert to an individual with scientific or other technical expertise.  *See* Defs' Dec. 6

13   Objections at 4, 6.  But Defendants themselves admit that Rule 706 experts are appropriate

14   where "'necessary or significantly useful for the trier of fact to comprehend a material

15   issue in a case.'"  Defs' Dec. 6 Objections at 4 (quoting *Gorton*, 793 F. Supp. 2d at 1181).

16   That is precisely the situation here, and the Ninth Circuit grants district courts wide

17   discretion in making such appointments.  *Walker v. Am. Home Shield Long Term*

18   *Disability Plan*, 180 F.3d 1065, 1071 (9th Cir. 1999).  And neither the case law, nor the

19   text of the rule, impose the type of limitation asserted by Defendants.  *See* Nov. 29 Order

20   at 8 (quoting, inter alia, 29 Charles Alan Wright et al., *Federal Practice and Procedure* §

21   6302 (2d ed. Sept. 2018 Update)); *see also Karsjens v. Piper*, 845 F.3d 394, 401 n.7 (8th

22   Cir. 2017) (noting that Rule 706 permits a trial court "to appoint independent experts to

23   assist the court understand complex and difficult issues," without limitation to a specific

24   type of expertise); *Hepting v. AT&T Corp.*, 439 F. Supp. 2d 974, 1010 (N.D. Cal. 2006)

25   (explaining the necessity of appointing a Rule 706 expert to evaluate national security

26   concerns, despite that other courts seemed not to have used an expert for this type of task,

27   because "this procedural innovation seems appropriate given the complex and weighty

28   issues the court will confront").  Instead, the Court has broad power to appoint an expert

10

1  "to aid it in the just disposition of a case," particularly where the expert is impartial and in

2  light of the shortcomings of the traditional adversarial system.  *See Scott v. Spanjer Bros.,*

3  *Inc.*, 298 F.2d 928, 930-31 (2d Cir. 1962).

4        In this case, the Court has repeatedly explained why it requires expert assistance.

5  *See* Nov. 5 Transcript at 8 ("I need the assistance of someone to help me [determine

6  whether fraud was committed] . . . ."); *see also* Nov. 13 Order at 3 ("[T]he court is

7  persuaded that appointment of an experienced, highly competent independent expert is

8  necessary to an efficient resolution of the issues presented by the Golding report."); Nov. 5

9  Transcript at 6-7 ("So that leaves the option of a private expert, someone . . . who is

10  experienced in fraud and whistleblower investigations . . . .").  It is not an abuse of

11  discretion to appoint Rule 706 independent expert when the Court is faced with evidence

12  that is "confusing and conflicting."  *Walker*, 180 F.3d at 1071.  And as this Court has

13  already noted, Rule 706 appointments are particularly warranted when, as here, they will

14  aid the public interest in bringing the truth to light.  *See* Nov. 29 Order at 8.  That other

15  courts have not required the specific type of assistance contemplated here does not create

16  an implicit limitation not otherwise recognized by the law; if anything it speaks to the

17  unique circumstances presented here—serious, detailed allegations of fraud on the court,

18  made by CDCR's top psychiatrist under oath and supported by at least one other high-level

19  whistleblower, in a nearly 30-year-old case.  In sum, the Court has not exceeded its broad

20  discretion to appoint a Rule 706 expert, and Defendants identify no law to the contrary.

21  **III.  The Court Has Carefully Crafted Limits on the Expert's Powers and Delineated the Expert's Duties.**

22

23        Contrary to Defendants' claims, *see* Defs' Dec. 6 Objections at 6-9, the Court's

24  proposed order appointing the neutral expert and defining his powers and duties is more

25  than sufficiently specific, and does not authorize powers that exceed Rule 706's bounds.

26        **A.    The Court Has Defined the Expert's Powers so that They Do Not Exceed Those Authorized by Rule 706.**

27

28        Defendants appear to misperceive the Court's proposed order of appointment,

11

1  asserting that the neutral expert would be empowered to compel compliance with the

2  Court's order.  *See* Defs' Dec. Objections at 6-7.  But the Court has not conferred on the

3  expert any such power; rather, it is plain that the Court is the only entity with the power to

4  compel compliance, using the available judicial tools.  Defendants cite no cases holding

5  that a district court lacks the power to authorize a Rule 706 expert to conduct interviews.

6  Instead, of the four unpublished cases Defendants cite on this point, all of which concern

7  inapposite factual scenarios not involving fraud, two simply articulate the defined scope of

8  the expert's powers in those particular circumstances, and two set no scope at all as they

9  declined to appoint an expert.  *See* Defs' Dec. 6 Objections at 7; *see also Vanderbusch v.*

10  *Chokatos*, No. 113-CV-01422, 2017 WL 4574121, at *1-2 (E.D. Ca. Oct. 13, 2017

11  (denying as premature a pro se prisoner plaintiff's motion to appoint a medical expert

12  given the lack of any complex evidence in dispute); *LG Elecs. Inc. v. Q-Lity Computer*

13  *Inc.*, No. C 01-2187 CW, 2007 WL 2904057, at *2 (N.D. Cal. Oct. 1, 2007) (planning to

14  appoint technical expert to analyze issues including patent infringement and validity of

15  asserted claims); *Autodesk, Inc. v. ZWCAD Software Co.*, No. 5:14-CV-01409, 2015 WL

16  2454003, at *1 (N.D. Cal. May 22, 2015) (denying the defendants' motion to appoint  an

17  expert to narrow the scope of computer code to be produced in a copyright infringement

18  and trade secret misappropriation case); *Oracle Am. Inc. v. Google Inc.*, Case No. 10-cv-

19  03561, Dkt. 413, at 2 (N.D. Cal. Sept. 9, 2011) (appointing expert to inform the jury of

20  damages on any claims where liability is found); *cf. G.K. Las Vegas Ltd. P'ship v. Simon*

21  *Prop. Grp.*, 671 F. Supp. 2d 1203, 1208 (D. Nev. 2009) ("Defendants rely on a number of

22  cases in which a court followed certain procedures when dealing with a court appointed

23  expert.  None of these cases, however, stand for the proposition that those actions

24  undertaken by the courts in those cases are required under Rule 706.  The cases cited by

25  Defendants are, in reality, fact-specific dispositions describing how a certain district court

26  interacted with a particular expert at a certain stage in trial.").  None of the cases

27  marshalled by Defendants finds that an order of appointment like the one here would

28  exceed the bounds of Rule 706.

12

[3329082.8]

1    Defendants assert that Rule 706 does not authorize the Court to have ex parte

2  contacts with its own expert, and extrapolate that the same is true as to ex parte contacts

3  between the expert and the Special Master.  Defs' Dec. 6 Objections at 7-8.  But

4  Defendants ignore that the Court expressly prohibits the investigator from involving the

5  Special Master in the investigation itself.  Nov. 29 Order, Ex. B at 4.  The Special Master's

6  role is limited to providing context, a clear attempt by the Court to address Defendants'

7  efficiency concerns.[4]  *Id.* (limiting communication between expert and Special Master to

8  consultations "as necessary to achieve efficiencies in the discharge of the investigative

9  duties required by this order, without involving the Special Master in the investigation

10  itself").  The November 29 Order thus specifically precludes improperly involving the

11  Special Master in the investigation.  The plan confers on the expert no other duty or power

12  to consult with the Special Master, and outlines no communications between the expert

13  and the Court itself short of the final report.

14    Defendants' citation to *Edgar v. K.L.*, 93 F.3d 256 (7th Cir. 1996), is inapt here.  In

15  *Edgar*, the Seventh Circuit granted a writ removing a district court judge from the case

16  where the judge engaged in a series of substantive meetings with an ex parte panel of

17  experts, while falsely describing those meetings as administrative and social.  *Id.* at 258.

18  The Seventh Circuit was concerned about the judge "receiv[ing] information and

19  deliver[ing] instructions in secret" rather than following the Rule 706 procedure that the

20

21  [4] Should the Court or Special Master believe it necessary or appropriate, Defendants'

22  concerns about ex parte contact with the Special Master can be addressed by the issuance

23  of minutes disclosing the contents of any such conversations.  *See United States v. Craven*,

24  239 F.3d 91, 102 (1st Cir. 2001); *Fed. Trade Comm'n v. Enforma Natural Prods., Inc.*,

25  362 F.3d 1204, 1215 (9th Cir. 2004).  This approach would allow the parties to remain

26  informed as to the process, without being as intrusive, burdensome, or inefficient as having

27  the parties attend every conversation between the Special Master and the expert.

28

[3329082.8]

1  expert be informed of the his duties in writing or orally at a conference with the parties.

2  *Id.* at 259.  The proposed order itself, which the parties have had the opportunity to address

3  in writing, plainly informs the parties and independent expert of his duties and mandates

4  that he provide a report to the Court, which will be provided to the parties upon receipt.

5  Nov. 29 Order, Ex. B, at 4.  That is compliant with Rule 706's dictates.

6       **B.**     **The Court's Plan Plainly Delineates the Expert's Scope of Work.**

7       The November 29 Order cogently defines and limits the independent expert's scope

8  of work.  Citing a Tenth Circuit case for the inapt proposition that civil litigants cannot

9  engage in irrelevant discovery, Defendants raise the alarm about the "unlimited number"

10  of government officials to be interviewed, warning that the neutral expert could interview

11  anyone in the Governor's Office, CDCR, or Defendants' counsel's offices regarding

12  irrelevant information and timeframes.  *See* Defs' Dec. 6 Objections at 8.  This argument is

13  absurd.  The Court's November 29 Order specifically provides that the expert's duties

14  "shall be limited to" a subset of seven discrete and specific allegations raised in the

15  Golding Report, and sets a time limit of four months to complete the investigation and

16  report.  Nov. 29 Order, Ex. B at 3-4.  And it limits the expert's powers to those "necessary

17  to the duties" the Court assigned.  *Id.* at 5.  The Court also considered and rejected

18  Plaintiffs' proposals to expand the expert's powers and duties in various ways.[5]  *See*

19  *generally* Plfs' Resp. to Nov. 13, 2018 Order to Show Cause, ECF No. 6011 (Nov. 20,

20  2018).  Defendants also attempt to make hay about the scope of the expert's "authority,

21  which may be 'expanded' upon his own request" and argue that this will lead to no limits

22  on the documents sought and interviews conducted.  *See* Defs' Dec. 6 Objections at 9.

23  This misstates the Court's carefully crafted order, which specifically provides that only the

24   

25  [5] Plaintiffs continue to maintain that additional allegations from the Golding Report sound

26  in fraud and should be investigated, and do not waive their right to move the Court for an

27  expansion of the investigation under its anticipated procedures if and when warranted.

28   

[3329082.8]

1  Court may expand the scope, duties, or powers of the expert.  Nov. 29 Order at 4-5 ("The

2  scope of the court's expert's investigation may be expanded by order of this court . . . . The

3  duties set forth in this order may be further specified, expanded or modified only by order

4  of this court. . . . The powers described herein may only be modified by order of this

5  court.")  Defendants also cite two unpublished district court orders spelling out categories

6  of documents the trial judges, in appropriately exercising their discretion, deemed relevant

7  in the specific contexts of those proceedings.  In *LG Electronics., Inc. v. Q-Lity Computer*

8  *Inc*, the district court set forth categories of voluminous initial documents to be provided to

9  the expert in organized, labeled, and tabbed binders, but also authorized the expert to

10  request "any information or documentation referenced in the documents provided."  No. C

11  01-2187 CW, 2007 WL 2904057, at *2 (N.D. Cal. Oct. 1, 2007).  In *PSM Holding Corp v.*

12  *National Farm Financial Corp.*, the district court appointed two experts and delineated

13  areas for each to address, ordered the parties to meet and confer about what documents to

14  provide to the experts, set forth broad categories of apparently relevant documents, and

15  provided that "[a]ll parties would be directed, upon reasonable request, to provide any

16  additional documents requested by the experts."  No. CV0508891MMMFMOX, 2011 WL

17  13213879, at *5 (C.D. Cal. Oct. 5, 2011).  This Court has in turn specified with laser focus

18  the seven areas of the Golding Report that the expert must investigate and authorized the

19  expert to request only documentation relevant to those areas.  That is more than sufficient

20  to comply with Rule 706, and Defendants point to no case holding otherwise.  The Court

21  has limited and clearly defined the expert's scope of work.

22  **IV.   The Court Has Ample Factual and Legal Basis to Permit the Expert to**

23  **Interview the Governor and Other High-Ranking Officials.**

24  The Court has both the power and rationale to authorize its expert to interview the

25  Governor[6] and other high-ranking state officials to investigate potential fraud on the

26  ─────────────

27  [6] Defendants mischaracterize the expert's authorization in the November 29 Order

28  (footnote continued)

[3329082.8]

1  Special Master and Court if the investigator deems appropriate.  Defendants' concern

2  appears specific to the Defendant Governor, as they make no argument as to the other

3  "high-level officials" they vaguely reference.  Determining whether Defendants

4  intentionally misrepresented facts to the Court *requires* interviewing the highest-level

5  decisionmakers for Defendants.  To warrant an interview, the Court does not need

6  evidence that the Governor was personally involved in entering or downloading data from

7  CDCR's systems.  The Governor is the ultimate authority in charge of the prison system,

8  and is tasked with ensuring it is run consistently with this Court's orders and the

9  Constitution.  He personally appointed other named defendants, including the Deputy

10  Director of the Statewide Mental Health Program who is responsible for overseeing all

11  aspects of CDCR's mental health care.  The Court must be able to understand the extent, if

12  any, of the involvement of the Governor and his staff, and other high-ranking Defendant

13  officials and their staffs, in the purported wrongdoing.  The only way to determine the

14  intent behind the allegations of fraud and misconduct identified in the Golding Report is to

15  interview those individuals.

16         Defendants' arguments that the Court lacks "reasons to believe" the testimony of

17  such individuals will be relevant, *see* Defs' Dec. 6 Objections at 10, ignores the breadth

18  and depth of the allegations in the sworn testimony contained in the Golding Report, the

19  _____

20  to interview the Governor as an expansion upon the November 13 Order to Show Cause.

21  *See* Defs' Dec. 6 Objections at 9.  However, the November 13 version of the Order already

22  authorized interviewing "any defendant, and members of any defendant's staff."  Nov. 13

23  Ord. at 4.  The added specificity in the Court's November 29, 2018 Order in fact *narrowed*

24  the scope of the investigation, and is appropriate given that the Court's inquiry is

25  necessarily focused on past conduct and current-Governor Brown will soon be

26  automatically displaced as a defendant in this case by operation of law, warranting the

27  Court's specificity.

28

PLAINTIFFS' RESPONSE TO DEFENDANTS' VIEWS ON THE COURT'S PLAN TO APPOINT
CHARLES J. STEVENS AS THE COURT'S INDEPENDENT EXPERT

1   existence of additional corroborating whistleblowers, and Defendants' own

2   acknowledgment that substantial portions of the Golding Report are true.  Defendants'

3   November 20 Merits Objections, which this Court properly disregarded as filed in direct

4   contravention of its prior order, presented cherry-picked evidence on re-framed issues

5   obtained through a one-sided informal investigation that lacked any testimony from the

6   highest policymakers.  Even so, Defendants admit the veracity of numerous key facts

7   claimed by Dr. Golding in all seven areas identified by the Court for the neutral expert's

8   investigation, even while quibbling about their import.  *See* Defs' Nov. 20 Merits

9   Objections at 9-12 (issue (a)), 12-13 (issue (b)), 13-15 (issue (c)), 15-16 (issue (d)), 16-20

10  (issue e)), 20-21 (issue (f)), 21-23 (issue g)).[7]  Neither Plaintiffs nor the Court are in any

11  position to evaluate Defendants' state of mind with regard to the allegations in the Golding

12  Report, absent extensive discovery Defendants will assuredly attempt to block.  The

13  independent expert will necessarily need to interview the highest-level decisionmakers to

14  determine whether these allegations support an evidentiary hearing on the issue of fraud on

15  the Court.  The public has a right to know whether the officials that represent them

16  knowingly turned a blind eye to wrongdoing, and permitting the neutral expert to ask about

17  state of mind, which is specific to each individual Defendant and cannot be gleaned by

18  other means, is the only way to address that allegation so it can be deemed substantiated or

19  simply put to rest as unfounded.

20

21  _____

22  [7] Should this Court reconsider its decision to disregard Defendants' November 20 Merits

23  Objections, Plaintiffs request the opportunity to respond greater detail.  Additionally, given

24  that Defendants admit they are continuing to change their data now, Plaintiffs renew their

25  request, made during the status conference, that Defendants track and disclose any changes

26  they are making to avoid contaminating or confounding an independent investigation.  *See*

27  Nov. 5 Transcript at 18.

28

PLAINTIFFS' RESPONSE TO DEFENDANTS' VIEWS ON THE COURT'S PLAN TO APPOINT
CHARLES J. STEVENS AS THE COURT'S INDEPENDENT EXPERT

[3329082.8]

1    The cases Defendants cite do not suggest otherwise and none involve fraud-on-the-

2  court investigations.  And each case stands for the proposition that a district court has wide

3  latitude to shape discovery to the contours of the case.  In *Stagman v. Ryan*, the Seventh

4  Circuit held that the district court did not abuse its discretion in shaping discovery to

5  preclude an accountant terminated by the Office of the Illinois Attorney General from

6  deposing the Attorney General.  *See* 176 F.3d 986 (7th Cir. 1999).  In *Kyle Engineering*

7  *Co. v. Kleppe*, a suit over damages arising from the Small Business Administration's

8  allegedly faulty performance on a contract with plaintiff, the Ninth Circuit noted "[w]e do

9  not see how the district court abused the very wide discretion it is allowed in handling

10  pretrial discovery" when it ordered the Administrator to answer written interrogatories

11  rather than appear at a deposition.  600 F.2d 226, 231 (9th Cir. 1979).

12    In earlier overcrowding proceedings in this matter, the Three-Judge Court held that

13  Plaintiffs would not be permitted to depose two officials, including the governor, but

14  would be permitted to depose a third official.  September 15, 2008 Order on Mot. for

15  Recons., ECF No. 3032 at 9.[8]  Unlike the posture of those proceedings, where Plaintiffs

16  sought to depose officials on the topic of overcrowding as part of an adversarial process,

17  these proceedings involve the authority of the Court itself to grant its own neutral expert

18  the authority to interview officials regarding serious concerns of fraud on the Court.  In the

19  overcrowding proceedings, the Three-Judge Court identified three themes among the cases

20  where district courts exercised their discretion to permit parties to depose high-ranking

21  officials.  First and highly relevant here is when the subject matter of the depositions

22  involves an official acting with improper motive or outside the scope official capacity.  *See*

---

[8] Defendants' December 6 Objections cites to the magistrate judge's August 14, 2008
Order, ECF No. 2946, permitting depositions of all three officials rather than the Three -
Judge Court's September 15, 2008 order granting in part and denying in part Defendant's
motion for reconsideration, ECF No. 3032.  *See* Defs' Dec. 6 Objections at 10.

28

[3329082.8]

1    *id.* at 5 (citing *Bagley v. Blagojevich*, 486 F. Supp. 2d 786, 789 (C.D. Ill. 2007); *Detoy v.*

2    *City & Cty of S.F.*, 196 F.R.D. 362, 370 (N.D. Cal. 2000); *Virgo Corp. v. Paiewonsky*, 39

3    F.R.D. 9, 10 (D.V.I. 1966)).  September 15, 2008 Order on Mot. for Recons., ECF No.

4    3032 at 6.  Here, the subject matter of the interviews—potential misrepresentations or

5    fraud on the Court—is precisely about whether Defendants acted with improper motive.

6    And actions to intentionally commit fraud on the Court are necessarily outside the scope of

7    official capacity, further aligning this scenario with those where courts permit high-ranking

8    officials to be deposed.  The Three-Judge Court also discussed that courts are more willing

9    to permit depositions of high-ranking officials who have unique and relevant information,

10   *see id.*, such as in this case where state of mind is at issue.

11        The Court has broad discretion to authorize its neutral expert to interview high-

12   ranking officials regarding any intent to mislead the Court, and should do so.

13   **V.    The Allegations in the Golding Report Easily Meet the Low Threshold to**

14   **Permit at Least in Camera Review of Attorney-Client Privileged Material.**

15        Defendants' argument that the Court runs the risk of intruding on attorney-client-

16   privileged and work-product-protected materials, citing cases involving the crime-fraud

17   exception, borders on frivolous.  *See* Defs' Dec. 6 Objections at 10-11.  According to

18   Defendants' own cases, the Court need find only a threshold, one-sided basis for defeating

19   the privilege in cases of potential fraud, and "not . . . a stringent one."  *United States v.*

20   *Zolin*, 491 U.S. 554, 572 (1989); *see also id.* at 563 n.7 ("In the context of the fraud

21   exception . . . the [*prima facie*] standard is used to dispel the [attorney-client] privilege

22   altogether *without* affording the client an opportunity to rebut the *prima facie* showing."

23   (citations omitted)).  Specifically,

24        [b]efore engaging in *in camera* review to determine the applicability of the
         crime-fraud exception [to the attorney-client privilege], the judge should
25        require a showing of a factual basis adequate to support a good faith belief
         by a reasonable person that *in camera* review of the materials may reveal
26        evidence to establish the claim that the crime-fraud exception applies."

27   *Id.* at 572.  The allegations in the Golding Report—an authenticated, 400-plus-page

28   document including sworn testimony from CDCR's top psychiatrist claiming that

19

[3329082.8]

1   Defendants intentionally misrepresented or distorted data provided to this Court—more

2   than satisfy this low threshold.  Defendants' position lacks any basis in the law.

3          In addition, courts have the authority to appoint experts and confer on them powers

4   akin to those of the court, including the review of privileged information.  *See, e.g.*, *Ark.*

5   *Teacher Ret. Sys. v. State St. Bank & Tr. Co.*, 232 F. Supp. 3d 189, 194 (D. Mass. 2017);

6   *In re Engle Cases*, No. 309CV10000JWGYJBT, 2015 WL 12843860, at *3 (M.D. Fla.

7   Dec. 22, 2015); *Small v. Univ. Med. Ctr. of S. Nev.*, No. 2:13-CV-00298-APG, 2014 WL

8   3703914, at *2 (D. Nev. Mar. 14, 2014).  Here, the Court has concluded, after careful

9   consideration, that it will confer its authority to review privileged information, by

10  interview or in documentary form, on the expert as an arm of the Court.  Nov. 5 Transcript

11  at 10.  In the Court's process, any privileged and/or protected information will go to that

12  neutral entity, and potentially no further.  Defendants' citation to *In re Napster, Inc.*

13  *Copyright Litigation*, 479 F.3d 1078, 1090 (9th Cir. 2007), is clearly distinguishable

14  because the trial court there circumvented the appropriate procedure by broadly ordering

15  production to the opposing party without any in camera determination that the crime-fraud

16  exception applied.  Otherwise-privileged information would presumably not be exposed

17  here if the independent expert finds Dr. Golding's allegations of fraud lack evidentiary

18  foundation.

19         Simply put, Defendants have not shown that the process the Court has outlined in

20  any way exceeds the bounds of fairness or the Court's power to uncover fraudulent acts

21  committed against it.

22  **VI.    The Court's Order of Appointment Does Not Require Additional Limitations**
           **on the Time and Scope of the Investigation.**
23

24         Defendants vaguely assert that the proposed order of appointment is too broad,

25  despite acknowledging that the Court limited the investigation temporally to four months.

26  Defendants fail to note that the Court was careful to limit the expert's powers and the

27  scope of the investigation, first by focusing the investigation only on potential fraud, not

28  on either of the other two tracks the Court identified as requiring examination.  *See* Nov.

20

13 Order at 2; Nov. 5 Transcript at 7; October 17 Order, ECF No. 5967 at 2 (identifying three categories of allegations in the Golding Report). In its November 13 and November 29 Orders, the Court further limited and defined the scope of the investigation and powers of the expert, so as not to allow the investigation to proceed unbounded. *See* Nov. 13 Order, Ex. A at 2-3.

Beyond that, Defendants' main concern appears to be that the investigation may be expanded at the request of a party, the Special Master, or the expert. *See* Defs' Dec. 6 Objections at 11-12. But Defendants fail to acknowledge that the investigation will not be expanded upon mere request—the Court specified that any expansion will be permitted only by Court order. *See* Nov. 29 Order at 3-4.

Defendants also state that no facts warrant an expanded inquiry, but they do not acknowledge that numerous other whistleblowers have come forward and may have additional information that relates to Dr. Golding's allegations.[9] In addition, it would be exceedingly odd—and contrary to the Court's duty to protect the fair administration of justice—if the investigation turned up additional areas of fraud on the Court or Special Master, but the neutral expert was prohibited from delving into those issues. The Court is wise to protect the ability to expand the investigation if warranted and necessary to ensure that the potential fraud on the Court is fully and closely examined, consistent with its interests in ensuring the integrity of the courts and public trust of the judiciary and the

[9] In addition to the whistleblower reports of Dr. Michael Golding and Dr. Melanie Gonzalez, and the state court whistleblower case of Dr. Karuna Anand, *see* Amended Complaint, *Anand v. Cal. Dep't of Corr. & Rehab.*, No. 34-2018-00226894-CU-OE-GDS, Dkt. 9 (Sac. Super. Ct. June 21, 2018), Plaintiffs' counsel has been contacted by numerous former and current CDCR employees with concerns relevant to the Golding Report. *See* Decl. of Marc Shinn-Krantz in Supp. of Plfs' Resp. to Nov. 13, 2018 Order to Show Cause, ECF No. 6010 at ¶ 9 (Nov. 20, 2018).

[3329082.8]

Defendant state officials.

## CONCLUSION

The Court's proposed process is not only well within its inherent authority and the dictates of Rule 706, but has the benefit of efficiency and neutrality in service of the public good. The process is designed to bring truth to light and conserve resources by allowing the independent expert to focus on the Court's carefully circumscribed, limited-scope investigation, while allowing the parties, the Special Master, and the Court to focus on other important tasks in this longstanding case. If and when the expert determines there is a possible basis for the Court to find Defendants committed fraud, Defendants will have their day in court to prove otherwise. Consistent with its well-articulated rationale, the Court should exercise its discretion to appoint Mr. Stevens as its expert consistent with November 29 proposed order.

## CERTIFICATION

I certify that I have reviewed the following Orders:

| Order | ECF Docket No. |
| --- | --- |
| August 14, 2008 Order | 2946 |
| September 15, 2008 Order | 3032 |
| February 21, 2018 Order | 5794 |
| October 9, 2018 Minute Order | 5941 |
| October 10, 2018 Minute Order | 5944 |
| October 12, 2018 | 5949 |
| October 15, 2018 | 5951 |
| October 16, 2018 Amended Minute Order | 5962 |
| October 17, 2018 Minute Order | 5964 |
| October 17, 2018 Order | 5967 |
| October 18, 2018 Order | 5973 |
| October 19, 2018 Minute Order | 5975 |
| October 22, 2018 Minute Order | 5980 |
| October 25, 2018 Order | 5986 |
| October 31, 2018 Order | 5987 |
| October 31, 2018 Minute Order | 5989 |
| November 2, 2018 Minute Order | 5992 |

22

[3329082.8]

1

| **Order** | **ECF Docket No.** |
|---|---|
| November 7, 2018 Order | 5999 |
| November 13, 2018 Order | 6002 |
| November 29, 2018 Order | 6018 |
| December 7, 2018 Minute Order | 6024 |
| December 11, 2018 Minute Order | 6028 |

DATED:  December 12, 2018          Respectfully submitted,

ROSEN BIEN GALVAN & GRUNFELD LLP

By:  */s Jessica L. Winter*
      Jessica L. Winter

Attorneys for Plaintiffs

PLAINTIFFS' RESPONSE TO DEFENDANTS' VIEWS ON THE COURT'S PLAN TO APPOINT
CHARLES J. STEVENS AS THE COURT'S INDEPENDENT EXPERT

[3329082.8]