UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, | No. 2:90-cv-0520 KJM DB P |
| Plaintiff, | |
| v. | ORDER |
| EDMUND J. BROWN, JR., et al., | |
| Defendants. | |

On November 29, 2018, the court issued an order setting forth its plan to appoint Charles J. Stevens, Esq., Gibson, Dunn & Crutcher LLP, as an independent expert under Federal Rule of Civil Procedure 706. ECF No. 6018. It did so after considering the parties' responses to a November 13, 2018 order to show cause concerning appointment of an independent investigator to investigate the allegations of the report by Michael Golding, M.D., Statewide Chief Psychiatrist for the California Department of Corrections and Rehabilitation (CDCR) (hereafter Golding Report) that pertain to fraud or intent to mislead the court and/or the Special Master, ECF No. 6002. ECF No. 6018 at 1-2.[1] The court granted the parties a period of seven days to

---

[1] In this order, citations to page numbers of documents filed in the Court's Electronic Case Filing (ECF) system are to the page number assigned by the ECF system located in the upper righthand corner of the page.

1

respond to the plan and the identification of Mr. Stevens. *Id*. at 12. On December 6, 2018, the parties timely filed responses. ECF Nos. 6021, 6022. On December 12, 2018, plaintiffs filed a response to defendants' response. ECF Nos. 6029, 6030. The court has reviewed both the initial responses and plaintiffs' December 12, 2018 response,[2] and hereby confirms its most recently disclosed plan to appoint Mr. Stevens as its neutral expert to conduct an independent investigation into certain allegations in the Golding Report, as explained further below.

I. <u>REVIEW OF BACKGROUND</u>

The facts relevant to the court's decision to appoint a neutral expert were set forth in detail in the November 13, 2018 order, ECF No. 6002, and the November 29, 2018 order, ECF No. 6018. Those facts are incorporated by reference into this order. *See* ECF No. 6002 at 2-4; *see also* ECF No. 6018 at 2-5. The parties agree that an investigation into the allegations of the Golding Report is required. *See* ECF No. 6018 at 6 (citing ECF No. 5948 at 8:5-24, 9:14-24). There is no dispute that the court's proposed neutral expert, Charles J. Stevens, Esq., has no conflict that prevents his ability to accept appointment as proposed. *See* ECF Nos. 6021 at 2 & 6022 at 2. The defendants do, however, continue to challenge the scope of the investigation and object to the court's plan to appoint Mr. Stevens as a neutral expert under Federal Rule of Evidence 706.

As the court discussed in its November 13, 2018 order, the verified Golding Report contains numerous allegations that defendants have presented misleading or false data to the court. *See, e.g.,* ECF No. 6002 at 2-3 (citing ECF No. 5988-1 at, *e.g.*, 1-9, 12, 17-18, 24-25).[3] As noted, the parties agree Dr. Golding's allegations are serious and require investigation, and the court has credited and continues to credit the defendants' agreement in this respect. *See* ECF No. 5948 at 8:5-24, 9:14-24. Faced with these allegations, and the parties' agreement that they are

---

[2] As the court was finalizing this order, it received the defendants' motion to strike plaintiffs' response. ECF No. 6031. It will address the motion to strike at the status to be held on December 14, 2018.

[3] As the court has noted previously, these citations are a representative, not an exhaustive, list of the Golding Report's allegations that either directly or inferentially suggest false or misleading information has been presented to the court and to the Special Master.

2

serious and require investigation, *see, e.g.*, ECF No. 5948 at 8:5-24, 9:14-24, as explained in the November 13, 2018 order, the court has the duty to investigate these allegations to protect the integrity of the judicial process. *See* ECF No. 6002 at 4-5 (citing *Alexander v. Robertson*, 882 F.2d 421, 424 (9th Cir. 1989) (discussing relevant authority) and *United States v. Estate of Stonehill*, 660 F.3d 415, 444[4] (9th Cir. 2011)). Also as the court previously has explained, the court itself has the duty ultimately to determine what the allegations mean, if anything, for the data the court is using to assess defendants' progress toward achieving a durable remedy in this long-running action; only once the court is fully satisfied that reliable data show a durable remedy has been achieved can the action be closed. *See* ECF No. 6018 at 9.

II. REVIEW OF RELEVANT LEGAL AUTHORITY

The well-established principle, that the court "has the power to conduct an independent investigation in order to determine whether it has been the victim of fraud," cannot reasonably be questioned. *Chambers v. Nasco, Inc.*, 501 U.S. 32, 44 (1991) (citing *Universal Oil Products Co. v. Root Refining Co.*, 328 U.S. 575, 580 (1946)). At the same time, the court understands it is required to exercise its inherent authority "with restraint and discretion." *Chambers v. Nasco*, 501 U.S. at 44. For this reason, the court should proceed by existing rule or statute where possible, guided always by the requirements of due process. *Id*. at 50. As explained below, under the unique circumstances presented here and after careful consideration, the court has jettisoned its initial concept of relying on inherent authority as the foundation for its neutral investigation and appointment of a neutral expert.[5] Rather, the court has determined that

---

[4] The court corrects a typographical error in ECF No. 6002, correcting the jump citation in *United States v. Stonehill* from 555 to 444.

[5] More than seventy years have passed since the United States Supreme Court's suggestion in *Universal Oil*, 328 U.S. at 581, that "a federal court can always call on law officers of the United States to serve as amici" for purposes of investigating whether fraud has been committed on the court. It appears the suggestion is a vestige of a different era. As previously reported to the parties, the court did contact the office of the U.S. Attorney for the Eastern District of California to determine if it is aware of any mechanism by which the court could obtain its assistance. After considering the court's request, the Executive Assistant United States Attorney for that office reported back in an e-mail dated November 1, 2018, that staff in that office is "unaware of any mechanism by which this court could have the United States Attorney's Office

Federal Rule of Evidence 706 is the appropriate source of authority for the investigation and the appointment of Mr. Stevens. It confirms that determination here.

"[U]nder Ninth Circuit law, district courts enjoy wide latitude" to appoint experts under Rule 706. *Monolithic Power Systems, Inc. v. O2 Micro Intern. Ltd.*, 558 F.3d 1341, 1348 (Fed. Cir. 2009) (applying Ninth Circuit law to review judgment of U.S. District Court for Northern District of California in patent case). As a general rule, appointment of an expert under Rule 706 "'should be reserved for exceptional circumstances in which the ordinary adversary process does not suffice.'" *Id.* (quoting *In re Joint E. & S. Dists. Asbestos Litig.*, 830 F.Supp. 686, 693 (E.D. N.Y. 1993)). The presentation to the court of the Golding Report at this stage of this case unquestionably gives rise to such exceptional circumstances.

As this court observed in its last order, "the most important question a court must consider when deciding whether to appoint a neutral expert witness is whether doing so will promote accurate factfinding." ECF No. 6018 at 8 (quoting *Gorton v. Todd*, 793 F.Supp.2d 1171, 1179 (E.D.Cal. 2011)). To demonstrate the need for a Rule 706 expert, there "must be some evidence, admissible or otherwise, that demonstrates a serious dispute that could be resolved or understood through expert testimony." *Gorton*, 793 F.Supp.2d at 1181. The Golding Report qualifies as "some evidence," which has opened up a "serious dispute"; to resolve that dispute the court in its considered opinion requires its own expert to lay a foundation for proceeding fairly, as needed and in a better-informed manner.

III. REVIEW OF COURT'S REASONS FOR APPOINTING A NEUTRAL EXPERT

The verified Golding Report, ECF No. 5988, contains serious allegations that defendants have presented misleading or false data to the court. *See* ECF No. 6018 at 5-6 (citing ECF No. 6002 at 2-3; in turn citing ECF No. 5988-1 at, *e.g.*, 1-9, 12, 17-18, 24-25). For the court to fulfill its duty to ensure that the record before it is free from fraud or intentional misrepresentation, it must ultimately consider all the evidence relevant to those questions as they

---

serve as an investigator concerning allegations of fraud in an ongoing civil action to which the United States is not a party."

are raised by the Golding Report.  And, for the court to fulfill that duty in the context of this complex civil rights action, which has been in remediation now for twenty-three years and counting, it has concluded it must rely on the assistance of a neutral third party to properly prepare for any evidentiary proceedings over which the court will need to preside.  The court simply cannot itself conduct the initial factual investigation into allegations it may adjudicate in subsequent adversarial proceedings.  The importance in this context of a neutral investigation led by someone who understands what qualifies as actual fraud and what does not, and who also understands the way large and complex governmental organizations operate, cannot be overstated.

As explained in prior orders, the Golding Report was presented to the court by both parties one week before a hearing the court had long planned on enforcement of mental health staffing requirements.  The Report raises serious questions about both data presented to the court and the efficacy of the existing staffing remedy.  The timing and contents of the Report have created serious and genuine mistrust between the parties.  *See, e.g.,* ECF No. 5984 at 28:4-29:5.  For example, the Report caused plaintiffs to withdraw from an agreement the parties had nearly achieved on staffing that was the product of almost a year's worth of effort.  *See* ECF No. 5936 at 2-3.  It is apparent to the court, from the status conferences it has held since receiving the Golding Report, that the continuing level of mistrust signals that neither a standard "meet and confer" process nor the use of traditional discovery methods could, at this stage, efficiently and fairly identify and narrow issues for a possible evidentiary hearing.  The court previously denied plaintiffs' request to conduct discovery leading up to the planned October staffing hearing, in order to prevent unnecessary and time-consuming litigation detours.  ECF No. 5905 at 35:17-36:5.  Reliance on an adversarial process between the parties now, prior to the court's making an initial decision regarding the need for and scope of any evidentiary proceeding, would fully unleash the dogs of discovery wars in highly counterproductive ways.  As plaintiffs observe in their December 12, 2018 response, traditional discovery under the current circumstances would inevitably lead to the parties seeking "invasive discovery" to "ensure an effective and complete review of the allegations raised by the Golding Report and the type of full and fair examination of

the issues to which the Court and the public are entitled." ECF No. 6029 at 12. Plaintiffs' taking the position that such discovery "would necessarily require Plaintiffs to have full access to intensive, probing discovery involving the state of mind and intent of high-ranking officials," confirms the court's independent assessment of the current landscape; plaintiffs are correct that allowing traditional discovery "would undoubtedly tie up the parties and Court in full-bore hotly contested litigation to the exclusion of any other progress on the remedy in this case." *Id*.

Moreover, despite defendants' continued insistence that the Special Master conduct the investigation, the court confirms its prior determination that the required investigation is not properly tasked to the current Special Master. *See* ECF No. 6002 at 3; ECF No. 6018 at 6-7. In light of defendants' persistence in making this argument, the court has considered whether Federal Rule of Civil Procedure 53, providing for the appointment of a Special Master, is a good fit here, even if a new, fully independent Master is appointed for the limited purpose required now in light of the Golding Report. But upon close examination, Rule 53 does not suit the court's requirements, in part because it provides too much: it authorizes appointment of a master, among other things, to hold evidentiary proceedings, make proposed findings of fact, and impose sanctions. *See* Fed. R. Civ. P. 53(a)(1)(B), (c). These powers far exceed those the court requires, when it can rely on Mr. Stevens to perform the job of a neutral expert here. *Cf. Ruiz v. Estelle*, 679 F.2d 1115, 1160 n. 234 (5th Cir. 1982) ("Rule 53 is concerned primarily with the appointment of a special master 'as a factfinder in advance of the court's remedial decree or as an expert to recommend the amount of damages or other remedial relief after a finding of liability.'") (internal citation and emphasis added in *Ruiz* omitted), *quoted in National Organization for the Reform of Marijuana Laws v. Mullen*, 828 F.2d 536, 543 (9th Cir. 1987).

As explained in prior orders, Mr. Stevens' sole function will be to assist the court and the parties in determining "whether there is a sufficient factual foundation to require this court to hold an adversarial, evidentiary hearing to determine whether defendants have intentionally presented false or misleading evidence to the court or the Special Master." ECF No. 6018 at 10. At the conclusion of the investigation, he will report to the court and the parties on the results of the investigation, providing his views on what documents and which witnesses, if

any, support the court's holding of an evidentiary hearing. *See id*. at 10. He will not "have any 'dispute resolution authority,' will not conduct any hearings, and will not make any recommendations to the court concerning adjudication of any facts." *Id*. Mr. Stevens is undeniably an expert in government investigations and fraud; he has extensive, deep experience in managing complex litigation matters, and has conducted multiple internal investigations into allegations of fraudulent or misleading conduct, including investigations prompted by whistleblower allegations. *See* ECF No. 6018-1 at 3-5. He is well-positioned to assist the court in providing "a 'joint foundation for all parties in terms of what the evidence is.'" ECF No. 6018 at 7 (quoting ECF No. 5984 at 35:12-15).

The cases on which defendants rely in opposing the court's plans are inapposite. In *Cobell v. Norton*, 334 F.3d 1128 (D.C. Cir. 2003), the D.C. Court of Appeals reviewed the district court's appointment of a court monitor to supervise remedial efforts following findings that the Secretary of Interior and other federal officials had breached their fiduciary duty to beneficiaries of Individual Indian Money trust accounts in managing those accounts. *Id*. at 1132. The court initially appointed the monitor for one year "to 'monitor and review all of the Interior defendants' trust reform activities and file written reports of his findings with the Court.'" *Id*. Subsequently, the court renewed the appointment and rejected defendants' request to narrow the scope of the monitor's role to limit "the Monitor's investigation to 'steps taken by the Department to rectify the breaches of trust declared by the Court or steps taken that would necessarily delay rather than accelerate the ultimate provision of an adequate accounting.'" *Id*. at 1142. It is clear from the *Cobell* decision that the monitor in that case was vested with wide-ranging authority to assess, monitor, and review a broad scope of defendants' administrative and other activities, beyond those necessary to enforcement of the district court's order. *Id*. at 1143-44. Moreover, the monitor's role before his reappointment had included "personal involvement in [the] case as Court Monitor [that] would cause a reasonable person to doubt his ability to remain impartial while serving as Special Master." *Id*. at 1144.

In *S.E.C. v. First Jersey Securities, Inc.*, 101 F.3d 1450 (2nd Cir. 1996), the court of appeals reversed the district court's appointment of a "Special Agent" to examine whether an

entity, First Jersey, found liable for securities fraud, had "engaged in fraudulent activity beyond that proved at trial" and, if any were found "'to recommend to the Court that defendants disgorge and pay over, as the Court may direct, all illegally-obtained profits.'" *Id*. at 1478.

Finally, *In re United States*, 441 F.3d 44 (1st Cir. 2006), involved a secret investigation of grand jury proceedings, conducted by a United States magistrate judge at the direction of a United States district judge. 441 F.3d at 53-55. The secret investigation followed allegations of prosecutorial misconduct in grand jury proceedings. *See id.* at 57. While confirming a district court's "inherent supervisory authority over grand juries," which "undoubtedly provided some authority to investigate misconduct as to the grand jury proceedings, subject of course, to the broader constitutional principle of the separation of powers," *id*. at 57-58, the First Circuit found the district court had overstepped its inherent authority because the asserted bases for the secret investigation were insufficient and because, under the facts of that case, the investigation "ran the risk of violating the principle of separation of powers by interfering with the constitutional prerogatives of the executive branch of the grand jury." *Id*. at 60-63. None of the foregoing cases cited by defendants, particularly *In re United States*, is remotely applicable to the situation presently before this court.

Here, Mr. Stevens' role will be limited to leading an independent and neutral factual investigation into allegations of the Golding Report, relying on his expertise in identification of evidence relevant to fraud inquiries, as described in this and the last two orders. The purpose of the investigation is limited to assisting this court in assessing whether facts exist that require this court to hold an evidentiary hearing to decide whether fraudulent or misleading information has been presented to the court in this case, in the specific context of ongoing remedial efforts concerning adequate mental health staffing in CDCR's prisons. The court is not delegating to Mr. Stevens the making of any decisions or recommendations concerning the ultimate legal conclusions to be drawn from any facts uncovered during the investigation. He will not engage in ex parte communications with the court or the Special Master regarding the substance of his investigation. He will serve in a neutral capacity, and during the investigation

will act without the court's supervision. He has no conflicts that preclude his service as a neutral expert.

The court provides the following information to lend additional clarity and transparency to the court's prior orders concerning the plan it now confirms. The court will, promptly following his appointment, provide Mr. Stevens with a full copy of the unredacted Golding Report and other relevant documents the court has received from third parties. A complete list of documents provided by the court to Mr. Stevens will be disclosed to the parties. The Special Master shall be available to Mr. Stevens, at Mr. Stevens' request, to provide as necessary a tutorial or purely factual information on the Program Guide and the data collection and reporting mechanisms referenced in the Golding Report. Any communication between Mr. Stevens and the Special Master shall be conducted in a manner so that the parties are able to hear the communication and the parties will be informed of additional documents, if any, provided by the Special Master to Mr. Stevens in connection with any such communication. Mr. Stevens, in his discretion, may consider the information defendants previously filed with their objections. *See* ECF No. 6018 at 2. The court anticipates that the parties will cooperate fully with the investigation to avoid further unnecessary delays in these proceedings.

It is a gross understatement to say the court is extremely frustrated by the turn of events occasioned by its receipt of the Golding Report, at a time when it had appeared the proverbial light at the end of tunnel of this case was coming closer and shining brighter. But the court cannot ignore the possibility that the brightness of the light is illusory if not a tunnel effect and that it has been presented with false or misleading evidence; nor can it ignore the potential implications for a full, fair and final resolution of this case when the time is ripe. While the court does not presume the truth of the averments in Dr. Golding's report, it must ultimately assess them fully, fairly and openly. It must not preclude the gathering of whatever information is relevant to its ultimate assessment. And it is evident that reliance on discovery methods designed for use by litigation adversaries, particularly given the length, complexity and stage of this case, do not fit the court's needs to ensure the integrity of the proceedings still required prior to termination. Having heard from the parties, the court confirms its conclusion that Mr. Stevens'

impeccable credentials and extensive experience make him an ideal candidate to assist the court and the parties in developing the factual foundation necessary to allow the court ultimately to make an informed and just decision resolving the questions raised by the Golding Report.

For the foregoing reasons, the court CONFIRMS:

1. Subject to his confirmation of his consent to appointment, Charles J. Stevens, Esq. of Gibson, Dunn & Crutcher LLP will be appointed promptly thereafter as the court's neutral expert under Federal Rule of Evidence 706, to investigate the Golding Report's allegations that pertain to fraud or intent to mislead the court and/or the Special Master.

2. The court has requested that Mr. Stevens participate by telephone conference in the status conference set for December 14, 2018 at 10:30 a.m. He may arrange for Benjamin B. Wagner, Esq. to be present telephonically as well.

DATED: December 13, 2018.

_____
UNITED STATES DISTRICT JUDGE