XAVIER BECERRA
Attorney General of California
MONICA N. ANDERSON
Senior Assistant Attorney General
JAY C. RUSSELL
ADRIANO HRVATIN
Supervising Deputy Attorneys General
ELISE OWENS THORN, State Bar No. 145931
TYLER HEATH, State Bar No. 271478
IAN ELLIS, State Bar No. 280254
TOBIAS SNYDER, State Bar No. 289095
Deputy Attorneys General
  1300 I Street, Suite 125
  Sacramento, CA 95814
  Telephone:  (916)210-7318
  Fax:  (916) 324-5205
  E-mail:  Elise.Thorn@doj.ca.gov
*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **RALPH COLEMAN, et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**EDMUND G. BROWN JR., et al.,**<br><br>Defendants. | Case No. 2:90-cv-00520 KJM-DB (PC)<br><br>**NOTICE OF APPEAL TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT**<br><br>Judge:        The Honorable Kimberly J. Mueller<br>Action Filed:   August 23, 1990 |

Defendants appeal to the U.S. Court of Appeals for the Ninth Circuit from this Court's

Orders of November 29, 2018 (ECF No. 6018), December 13, 2018 (ECF No. 6032), and

December 14, 2018 (ECF No. 6033).

/ / /

/ / /

/ / /

1

1    Defendants also appeal from all earlier, non-final orders that produced the December 14

2  Order and are thereby merged with it. *See Am. Ironworks & Erectors Inc. v. N. Am. Const. Corp.*,

3  248 F.3d 892, 897 (9th Cir. 2001).

4  Dated:  December 28, 2018                    Respectfully submitted,

5                                               XAVIER BECERRA
                                                Attorney General of California
6                                               JAY C. RUSSELL
                                                ADRIANO HRVATIN
7                                               Supervising Deputy Attorneys General

8                                               */s/ Elise Owens Thorn*

9                                               ELISE OWENS THORN
                                                Deputy Attorney General
10                                              *Attorneys for Defendants*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27  CF1997CS0003
    33715297.docx
28

2

# ATTACHMENT
# ECF NO. 6018
# ORDER

1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                       FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11      RALPH COLEMAN,                              No.  2:90-cv-0520 KJM DB P

12                  Plaintiff,

13            v.                                     ORDER

14      EDMUND J. BROWN, JR., et al.,

15                  Defendants.

16

17

18            By order filed November 13, 2018, the court directed the parties to "show cause in

19      writing, if any, why the court should not appoint an independent investigator in the exercise of its

20      inherent authority to investigate the Golding Report's allegations that pertain to fraud or intent to

21      mislead the court and/or the Special Master," and to provide comments on a proposed order of

22      appointment.  ECF No. 6002 at 8.

23            The court required responses by 5:00 p.m. on Tuesday, November 20, 2018, and

24      the parties filed their responses accordingly.  Defendants separately filed objections to the

25      proposed order of appointment, seven minutes after the deadline, together with a request for an

26      extension of time to file the objections.  The court will grant defendants' request for extension of

27      time so that the objections are preserved as part of the record in this case.  At the same time, the

28      court will disregard the objections at this time as filed in derogation of a prior court ruling

1

denying without prejudice defendants' request to submit a substantive response to the allegations of the Golding Report prior to completion of an independent investigation. *See* ECF No. 5998 at 20:4-23. Nothing in this order precludes defendants from presenting the information in the objections to the independent investigator or, as appropriate, to this court at a subsequent stage of these proceedings.

After review of the parties' responses to the order to show cause, for the reasons explained below, the court will appoint an expert under Federal Rule of Evidence 706 to investigate and prepare a report for the court and the parties on whether there is evidence sufficient to warrant an evidentiary hearing into whether defendants have intentionally presented false or misleading information to the court in one or more of the areas addressed in the Golding Report.

I.      FACTUAL AND PROCEDURAL BACKGROUND

A.      Court's Ongoing Efforts to Bring Staffing Ratios Into Compliance

On October 10, 2017, the court ordered the California Department of Corrections and Rehabilitation (CDCR) defendants, within one year, to "take all steps necessary to come into complete compliance with the staffing ratios in their 2009 Staffing Plan and the maximum ten percent vacancy rate required by the court's June 13, 2002 order" and set a compliance hearing for October 11, 2018. ECF No. 5711 at 30-31. The court noted that ongoing shortages in the number of prison psychiatrists continued to plague California's prison system. *See id.* at 12-20, 27. During the ensuing year, defendants' inability to fulfill required staffing ratios for prison psychiatrists became a central focus of remedial efforts, and the court directed the parties, under the guidance of the Special Master, to explore whether any adjustments could be made to psychiatrist staffing ratios to alleviate these shortages "without compromising the constitutionally required access to adequate mental health care." ECF No. 5786 at 4. The court qualified this direction with the observation that "staffing levels that preceded the current [psychiatrist] ratios were constitutionally inadequate," *id.*, and by noting the "heavy burden" defendants would face in trying to persuade the court that the existing caseloads of prison psychiatrists should be increased. *See* ECF No. 5711 at 14-20.

By July 2018, there appeared to be "significant promise" that ongoing psychiatrist staffing shortages would in fact be remedied.  ECF No. 5850 at 3.  In a Joint Status Report filed on September 14, 2018 in advance of the October 11, 2018 hearing, the parties represented that, while discussions were ongoing, they had achieved substantial agreement on a staffing plan that defendants represented would enable them to achieve full compliance with the required staffing remedy by the one-year deadline set in the October 10, 2017 order.  ECF No. 5922 at 4.  Due to ongoing disagreements over the use of telepsychiatry, the court continued the October 11, 2018 hearing to October 15, 2018, and expanded it to include an evidentiary hearing on defendants' proposed use of telepsychiatry.  ECF No. 5928 at 2.

B.        Presentation of Golding Report Prior to Compliance Hearing

On October 5, 2018, ten days before the scheduled hearing, both parties filed requests for action by the court due to a "whistleblower" report prepared by CDCR's Statewide Chief Psychiatrist, Dr. Michael Golding (hereafter Golding Report) that raised numerous allegations regarding staffing.  *See* ECF Nos. 5936, 5938.  Plaintiffs represented that the Golding Report contained "serious allegations that, inter alia, data reported to this Court and the Special Master purporting to measure CDCR's compliance with this Court's orders – and specifically with Program Guide requirements for access to psychiatric care – is inaccurate and has been presented in a materially misleading way" and that "Dr. Golding's claims are very serious and, if true, have far reaching implications affecting almost every aspect of this case."  ECF No. 5936 at 2.  Plaintiffs requested an immediate status conference to consider, among other things, whether the court should order an independent investigation into the allegations contained in the Golding Report.  *Id*. at 3.  Plaintiffs also filed notice of a request to seal the Golding Report, ECF No. 5937, and they submitted the report and numerous exhibits to the court for in camera review.

Defendants styled their request as one for a stay of proceedings.  ECF No. 5938 at 1.  They represented the Golding Report concerned various aspects of their Mental Health Services Delivery System (MHSDS) with "potential impact" on evidence defendants were planning to present at the October 15, 2018 hearing and that "[a]mong other things, the document, which is 160 pages long and includes approximately 60 referenced exhibits, questions the

3

1   methodology through which CDCR calculates multiple mental-health compliance figures and

2   data points and alleges that psychiatrists under Dr. Golding's leadership are not seeing patients as

3   reported in the data tracking system."  ECF No. 5938 at 2.  Defendants requested the court

4   convert the October 15, 2018 hearing to a status conference "to discuss how the parties and the

5   Special Master, with the Court's guidance, should proceed to address the document's allegations"

6   or, "if the Court [were] not inclined to continue the evidentiary proceedings" the parties be given

7   a short extension of two days to file their joint witness and exhibit list and proposed hearing

8   schedule.  *Id.*

9         C.    Proceedings Considering Whether to File Golding Report on Public Docket

10          Since the parties provided Dr. Golding's report to the court, the court has held four

11   status conferences between October 10, 2018 and November 5, 2018.  *See* ECF Nos. 5944, 5964,

12   5980, 5995.  Since the initial status conference, Dr. Golding has represented his willingness to

13   provide public testimony about the contents of the report.  *See* ECF No. 5948 at 7:1-9; *see also*

14   ECF No. 5972 at 6:19-7:21.  In a document filed October 19, 2018, he requested the report be

15   filed on the public docket in this action, with appropriate redaction to protect privacy interests of

16   class members.  *See* ECF No. 5976.  The court allowed an appropriate period of time for the

17   parties to present their positions concerning public filing and redaction of the Golding Report, and

18   then after considering those positions, the court ordered a redacted version of the Golding Report

19   and exhibits to be filed on the public docket.  ECF No. 5986 (October 25, 2018 Order); ECF No.

20   5988 (Oct. 31, 2018 filing of Redacted Declaration and Report of Michael Golding, M.D.).  The

21   court also ordered that the filed Report include Dr. Golding's declaration verifying the report and

22   authenticating the exhibits.  *See* ECF No. 5986.  During the time the court was considering

23   whether to file the Golding Report on the court's docket, additional whistleblowers with

24   contentions related to those presented by Dr. Golding have been brought to the court's attention

25   and shared with the parties, though documents related to these persons have not been filed in this

26   action at this time.  *See* ECF No. 5998 at 4:1-5:1; *see also Anand v. CDCR*, Case No. 34-2018-

27   00226894 (Sac. County Sup. Ct. filed February 9, 2018).

28

4

D.      Steps Required Prospectively To Address Contents of the Golding Report

At the second status conference on October 17, 2018, the court identified three separate areas of concern raised by the Golding Report, given the Report's allegations suggesting defendants have distorted data presented to the Special Master and the court and materially altered the determination of timeliness of required mental health appointments, to justify a reduction in the number of prison psychiatrists deemed necessary to meet defendants' constitutional obligations.  The court signaled its intention to move forward in all three areas on separate but parallel tracks:  (1) whether there are areas in which there has been fraud on the court; (2) whether there are "ways in which the reporting of data to the Court needs to be repaired or improved to ensure full accuracy and compliance going forward so the Court can have a true measure of process towards a durable remedy"; and (3) "whether or not there are provisions in prior court orders or the program guide that are truly unclear such that amendments are required." ECF No. 5972 at 12:15-14:20.  On November 13, 2018, the court issued an order to show cause setting forth its proposed plan for addressing the first of the three tracks:  whether there are areas where defendants have presented false or misleading data to the court or the Special Master.  ECF No. 6002.  The court proposed appointment of an independent investigator using its inherent authority and drawing on procedures supplied by Federal Rule of Evidence 706.  *Id.*  The court also issued a tentative proposed order for use in appointing an independent investigator and invited comment on that order.  *Id.*  As noted above, the parties have responded, *see* ECF Nos. 6009, 6011, and the court has carefully considered their responses.

II.      NEED FOR AN INDEPENDENT INVESTIGATOR CONFIRMED

As the court discussed in its November 13, 2018 order, the verified Golding Report contains numerous allegations that defendants have presented misleading or false data to the court.  *See, e.g.,* ECF No. 6002 at 2-3[1] (citing ECF No. 5988-1 at, *e.g.,* 1-9, 12, 17-18, 24-

---

[1] In this order, citations to page numbers of documents filed in the Court's Electronic Case Filing (ECF) system are to the page number assigned by the ECF system located in the upper righthand corner of the page.

25).[2]  The parties agree Dr. Golding's allegations are serious and require investigation, and the court credits the defendants' agreement in this respect.  *See* ECF No. 5948 at 8:5-24, 9:14-24. Although plaintiffs propose some expansion of the order of appointment, which the court does not adopt at this time, plaintiffs agree the court can proceed as proposed in the order to show cause and proposed order of appointment.  *See* ECF No. 6011.  Defendants urge the investigation be conducted instead by the Special Master, ECF No. 6009 at 16-19, or, in the alternative, by the Receiver in *Plata v. Brown*, No. 3:01-01351 JST (N.D. Cal.), to whom Dr. Golding first provided his Report.  *Id*. at 19-20.

The court has considered once again whether the Special Master can properly be tasked with the investigation required at this juncture.  But upon reconsideration in light of defendants' filing, the court concludes that the Special Master should not be assigned the double duty of serving as the investigator here.  While the Special Master will be a key source of information relevant to any investigation, he is an arm of the court and several allegations in the Golding Report specifically suggest an intent to mislead him and members of his team. Moreover, the current Special Master has a deep involvement in this case since at least as early as 2007 and previously as an assistant to the prior Special Master, in both oversight and mediating roles.  In these roles, he has developed relationships with the parties and CDCR representatives in a way that informs the court's consideration.  The court unequivocally has full confidence in the Special Master and his team, and must maintain and protect the Special Master's role and his ability to communicate and work with the parties now and after the dust raised by the Golding Report has settled.  Requesting that the Special Master assess whether he and the court have been misled is not consistent with that long established and ongoing goal.  Nor will the court ask the *Plata* Receiver to conduct this investigation.  The court requires expertise in determining whether there is evidence of intent to mislead or commit fraud on the court so that the court can decide whether to hold a focused evidentiary hearing probing that question in full adversarial

---

[2] As noted in the November 13, 2018 order, these citations are a representative, not an exhaustive, list of the Golding Report's allegations that either directly or inferentially suggest false or misleading information has been presented to the court and to the Special Master.

1  proceedings. This expertise is beyond the scope of any assistance this court could or would seek

2  from the *Plata* Receiver.

3      In sum, having considered the parties' responses to the order to show cause, the

4  court continues to be persuaded by the parties' apparent agreement at the third status conference

5  that "an independent investigation would" provide a "joint foundation for all parties in terms of

6  what the evidence is." ECF No. 5984 at 35:12-15, 41:1-8; *see* ECF No. 6002 at 3-4. Even if the

7  court misunderstands the defendants' position articulated at that status conference, an

8  independent investigator with impeccable qualifications, deep experience and readily available

9  resources is what the court requires to efficiently and cost-effectively perform the investigation

10 called for by the Golding Report.

11 III.   COURT'S AUTHORITY TO APPOINT INDEPENDENT INVESTIGATOR

12      A.   Established Procedure Provided by Federal Rule of Evidence 706

13      As it discussed in the November 13, 2018 order, the court has the inherent

14 authority, and indeed the duty, to protect the integrity of the judicial process. *See* ECF No. 6002

15 at 4-5 (discussing cases). Exercise of the court's inherent authority can implicate a finding of

16 bad-faith conduct. *See*, *e.g.*, *Chambers v. Nasco, Inc.*, 501 U.S. 32 (1991). But such a

17 determination is premature at this stage of these proceedings and, indeed, may not be supported

18 by the evidence following an investigation into the allegations of the Golding Report and any

19 required adversarial evidentiary proceedings. Here again, having considered defendants' filing in

20 response to the order to show cause, and reflected on the best path forward, the court will rely on

21 an expert appointed under Federal Rule Evidence 706 to conduct the required independent

22 investigation.

23      Federal Rule of Civil Procedure 706 authorizes the court to appoint an expert

24 witness "[o]n a party's motion, or on its own." Fed. R. Evid. 706(a). The decision whether to

25 appoint an expert under Rule 706 lies in the sound discretion of the court. *See Walker v.*

26 *American Home Shield Long Term Disability Plan*, 180 F.3d 1065, 1071 (9th Cir. 1999). An

27 expert "may testify in the form of an opinion or otherwise if . . . the expert's scientific, technical,

28

1  or other specialized knowledge will help the trier of fact to understand the evidence or to

2  determine a fact in issue...." Fed. R. Evid. 702(a).

3          "A Rule 706 expert typically acts as an advisor to the court on complex scientific,

4  medical, or technical matters." *Armstrong v. Brown*, 768 F.3d 975, 987 (9th Cir. 2014).

5  "Invocation of Rule 706 powers is especially appropriate to protect . . . the public interest.  In

6  such cases, many courts rightly assume there is a heightened judicial duty to see that the abuses

7  and inadequacies of the adversaries should not be permitted to obscure the truth."  29 Charles

8  Alan Wright et al., *Federal Practice and Procedure* (Wright) § 6302 (2d ed. Sept. 2018 Update).

9  "Ultimately, the most important question a court must consider when deciding whether to appoint

10  a neutral expert witness is whether doing so will promote accurate factfinding."  *Gorton v. Todd*,

11  793 F.Supp.2d 1171, 1179 (E.D. Cal. 2011); *see also* Wright § 6304 ("The policy goal of Rule

12  706 is to promote accurate factfinding."); *G.K. Las Vegas Ltd. Partnership v. Simon Property

13  Group, Inc.*, 671 F.Supp.2d 1203, 1209 (D. Nev. 2009) (appointing independent expert under

14  Fed. R. Evid. 706 to "uncover and collect evidence . . . toward resolution of pretrial motions" and

15  to submit final report to parties).

16          While the court "may ask the parties to submit nominations," it also "may appoint

17  . . . any [expert] of its own choosing."  Fed. R. Evid. 706(a).  The sole limitation on court

18  appointment is the expert's consent to serve.  *Id.*; *see also Walker*, 180 F.3d at 1071 (confirming

19  district court discretion to appoint Rule 706 expert "of its own selection" "sua sponte" as long as

20  parties have notice and an opportunity to be heard).  The expert must be informed of the expert's

21  duties, either in writing or "orally at a conference in which the parties have an opportunity to

22  participate." Fed. R. Evid. 706(b).  The expert is required to "advise the parties of any findings

23  the expert makes" and his report may be scrutinized through established adversarial procedures.

24  *Id.* at 706(b)(1)-(4).

25          "The expert is entitled to a reasonable compensation, as set by the court."  *Id.* at

26  706(c).  In this civil case, the compensation is payable "by the parties in the proportion and at the

27  time that the court directs – and the compensation is then charged like other costs."  *Id.* at

28  706(c)(1)-(2).  For the following reasons, the court confirms its conclusion that defendants will be

8

1     required to pay the expert's compensation. As explained in the November 13, 2018 order,

2     defendants are responsible for all the remedial costs of this action. *See* ECF No. 640 at 9

3     (defendants pay Special Master's fees and expenses as part of the costs of this action); Dkt. No.

4     673[3] (defendants pay fees and costs incurred by plaintiffs' counsel in obtaining and monitoring

5     compliance in remedial phase). The investigation here is necessary to clear the air so the court is

6     assured it has an accurate foundation for determining whether and when defendants have

7     achieved a durable and reliable remedy in this action. The plaintiff class is proceeding with this

8     action in forma pauperis. *See*, *e.g.,* Dkt. No. 100. The expenditure of public funds for witnesses

9     is not authorized by the in forma pauperis statute, 28 U.S.C. § 1915, and no evidence in the record

10    suggests this class of mentally ill prisoners could contribute to the expert's costs. *See McKinney*

11    *v. Anderson*, 924 F.2d 1500, 1510-11 (9th Cir. 1991), *vacated and remanded on other grounds*,

12    502 U.S. 903 (1991) (court not precluded from appointing expert witness where only one party

13    has means to pay costs).

14         B.     Appointment Here Not Subject to PLRA

15         Defendants contend the court's appointment of any independent investigator is

16    limited by provisions of the Prison Litigation Reform Act of 1995 (PLRA) that govern

17    appointment of special masters. *See* ECF No. 6009 at 14-16. This contention is without merit.

18         As a general matter, Rule 53 of the Federal Rules of Civil Procedure authorizes

19    appointment of a special master to assist the court. Appointment of a special master in prison

20    conditions cases is governed by provisions of the PLRA codified at 18 U.S.C. § 3626(f)-(g). As a

21    general matter, "[t]hese provisions . . . authorize the appointment of a special master in prison

22    litigation to hold hearings, make recommended findings, and perform certain other related

23    functions." *Plata v. Schwarzenegger*, 603 F.3d 1088, 1094 (9th Cir. 2010). The independent

24    investigator the court will appoint here will not serve any of these quasi-judicial functions.

25

26

___

27       [3] Citations identified by Dkt. Number are to documents filed and entered on the docket in this action which have not been entered into the court's ECF system.

28

9

The sole function of the independent investigator will be to determine whether there is a sufficient factual foundation to require this court to hold an adversarial, evidentiary hearing to determine whether defendants have intentionally presented false or misleading information to the court or the Special Master.  The independent investigator will report to the court on the results of the investigation, namely, whether he believes any such facts exist and, if so, what those facts are.  The independent investigator will not have any "dispute resolution authority," will not conduct any hearings, and will not make any recommendations to the court concerning adjudication of any facts.  *Cf. Armstrong*, 768 F.3d at 987 ("dispute resolution authority . . . is beyond the scope of the duties that may be assigned to a Rule 706 expert.").  For these reasons, the court does not rely on Rule 53 in making the appointment of an investigator.

Because the independent investigator will be appointed to serve as an expert under Federal Rule of Evidence 706 and not to perform the functions of a special master, the limits of 18 U.S.C. § 3626(f) do not apply.  *See Plata*, 603 F.3d at 1094-96 (provisions of PLRA governing appointment of special masters neither apply to nor prohibit appointment of federal receiver; "[m]onitors (or other court agents) were not included in the limitations applicable to special masters" enacted in the PLRA).  Moreover, the Special Master in this case was appointed, and the Order of Reference filed, prior to the effective date of the PLRA.  The language in the Order of Reference is neither drawn from nor mandated by 18 U.S.C. § 3626 and the court's adaptation of some of its provisions, as now modified in the attached order it will use to appoint a Rule 706 expert, in no way reflects application of the PLRA to this appointment.

C.      Identification of Expert to Serve as Independent Investigator

As the court has concluded above, to ensure both efficiency and independence in resolving the threshold question of whether a full evidentiary proceeding is required, an investigation conducted by a highly qualified individual with expertise in investigating whether fraud has been committed is necessary.  This person will be tasked with (1) gathering all evidence relevant to questions raised by the Golding Report concerning whether there has been any fraud on the court and/or whether any defendants or their designees have intentionally misled the court, and (2) with preparing a report containing the expert's conclusions as to these questions.  The

1   expert's report will be presented initially to the court and the parties, and within fourteen (14)

2   days of the report's presentation, the court will hold a status conference with the parties to discuss

3   whether an evidentiary hearing is required, and if so the procedures attendant to any such hearing.

4           Given the task at hand, the court has identified Charles J. Stevens, Esq. of Gibson,

5   Dunn & Crutcher LLP as the expert the court intends to retain for the investigation described by

6   this order.  Mr. Stevens' curriculum vitae is attached to this order as Exhibit A.  A proposed

7   version of the Order of Appointment that will guide Mr. Stevens' work for the court, revised upon

8   consideration of the parties' filings in response to the order to show cause, is attached to this

9   order as Exhibit B.  Mr. Stevens will be authorized to lead the investigation and assemble a

10  qualified team to assist him in carrying out the investigation as fully, fairly and efficiently as

11  possible.  The court is advised that Mr. Stevens will accept the appointment.  Upon his

12  appointment, the court will hold a short telephonic status conference with the parties to confirm

13  Mr. Stevens' scope of work and anticipated timeline and address any questions of the investigator

14  and the parties before his work begins in earnest.

15  IV.     CONCLUSION

16          As discussed in the November 13, 2018 order and above, the Golding Report was

17  submitted to the court less than one week before a scheduled hearing to determine whether

18  defendants, after more than twenty years of remedial effort, had finally "come into complete

19  compliance with the staffing ratios in their 2009 Staffing Plan and the maximum ten percent

20  vacancy rate required by the court's June 13, 2002 order," as required by this court's October 10,

21  2017 order.  ECF No. 5711 at 30.  The Golding Report contains numerous allegations that, if true,

22  call into question whether existing psychiatrist staffing ratios are constitutionally adequate, and

23  raise substantial questions as to whether psychiatrist staffing levels in California's prisons can be

24  further reduced consistent with defendants' federal constitutional obligation to "provide access to

25  adequate mental health care."  *Coleman v. Wilson*, 912 F.Supp. 1282, 1298 (E.D. Cal. 1995).

26          Even as this case moves forward toward remediation under existing remedial

27  procedures, the court must determine whether the allegations in Dr. Golding's report support a

28  full evidentiary proceeding exploring whether defendants engaged in conduct that was fraudulent

11

and/or intended to mislead the court in connection with its efforts to ensure defendants achieve

and maintain constitutionally adequate mental health staffing levels in California's prisons. This

order embodies the court's plan, after hearing from the parties initially, to fulfill the requirements

imposed by the Golding Report.

The parties will now be granted a period of seven days to comment on the

appointment of Mr. Stevens as described here.  At the end of that seven-day period, the court will

issue a final Order of Appointment.

In accordance with the above, IT IS HEREBY ORDERED that:

1.  Defendants' November 20, 2018 motion for extension of time, ECF No. 6013,

is granted;

2.  Within fourteen (14) days from the date of this order, the court will appoint an

independent expert under Federal Rule of Evidence 706 to investigate the Golding Report's

allegations that pertain to fraud or intent to mislead the court and/or the Special Master; and

3.  The parties are granted a period of seven (7) days to file their views on the

court's plan to appoint Charles J. Stevens, Esq. of Gibson, Dunn & Crutcher LLP, as the court's

independent expert.

DATED:  November 28, 2018.

_____
UNITED STATES DISTRICT JUDGE

12

EXHIBIT A

Case 2:90-cv-00520-KJM-DB    Document 6058-1    Filed 12/28/18    Page 17 of 49



# GIBSON DUNN



### Charles J. Stevens

Partner

**CONTACT INFO**

cstevens@gibsondunn.com

TEL: +1 415.393.8391

FAX: +1 415.374.8408

San Francisco
555 Mission Street, Suite 3000 , San Francisco, CA 94105-0921 USA

Print  |  Share  |  vCard

**PRACTICE**

| White Collar Defense and Investigations | Crisis Management | FCPA |

| FDA and Health Care | False Claims Act/Qui Tam Defense | Litigation |

**BIOGRAPHY**

Chuck Stevens is a Partner in Gibson Dunn's Office, where he is Co-Chair of the White Collar Defense and Investigations Practice Group. Mr. Stevens' practice focuses on the representation of corporate clients in internal investigations, government investigations, and enforcement actions regarding business crimes and civil frauds, including healthcare, government contract, and financial institutions fraud. He is regularly called upon to defend clients in high-stakes matters involving the False Claims Act. He also has substantial experience defending civil actions alleging unlawful business practices, fraud and unfair competition. Mr. Stevens often manages complex parallel proceedings involving criminal, civil and regulatory matters.

Mr. Stevens is recognized by *The Best Lawyers in America* (Bet-the-Company Litigation, Commercial Litigation, and Criminal Defense: White Collar*); Global Investigation Review Who's Who Legal: Investigations and Business Crime Defense;* and *Chambers USA: America's Leading Lawyers* where he is described as a "household name," in white collar defense who is "particularly skilled in successfully representing clients in healthcare enforcement matters, alongside wider areas of strength in FCPA, criminal antitrust work and government contract fraud."

Mr. Stevens previously served as the United States Attorney for the Eastern District of California. Appointed by President Clinton, he oversaw the district's two offices and 150 employees, implemented several initiatives involving the False Claims Act, healthcare fraud and political corruption, and served as the supervising United States Attorney in Sacramento for the Unabomber prosecution. During his tenure, he was appointed by Attorney General Janet Reno to the Attorney General's Advisory Committee, an executive committee of United States Attorneys that advised the Attorney General on national law enforcement policy.

Mr. Stevens also served as an Assistant United States Attorney for the Central District of California. As a member of the Public Corruption and Government Contract Fraud Unit, he conducted grand jury investigations and tried federal criminal cases involving government contract fraud, bribery of federal employees, insurance fraud, tax fraud and bank fraud. Mr. Stevens also argued numerous cases to the Ninth Circuit Court of Appeals. He received special commendations from the Department of the Interior OIG and the Bureau of Alcohol, Tobacco and Firearms for successful prosecutions.

Prior to his government service, Mr. Stevens was an associate and then partner in Gibson Dunn where he handled government investigations and complex civil matters. He also has served as a mediator on matters involving the False Claims Act and other government claims. He has taught classes at U.C. Davis Law School in government investigations, criminal procedure, and legal ethics.

Mr. Stevens has been actively involved in the professional community, serving on many boards and committees, including as a member of the Judicial Selection Committee of Senator Diane Feinstein; on the board of directors of the National Association of Former U.S. Attorneys; as an adjunct professor at U.C. Davis School of Law; and as secretary and counsel for Something Special, Inc., a nonprofit devoted to supporting children in foster care.

Mr. Stevens is a 1982 graduate of the U.C. Berkeley School of Law, where he served as Senior Note and Comment Editor of the *California Law Review.* He received his B.A. in English from Colgate University in 1979.

## REPRESENTATIVE GOVERNMENT AND INTERNAL INVESTIGATIONS

- Conducted internal investigation for international technology company regarding whistleblower allegations of financial improprieties by corporate officers.

- Defending health plan in qui tam False Claims Act case alleging misuse of Affordable Care Act funds.

- Represented national health care provider in False Claims Act investigation regarding allegations of unnecessary surgical procedures.

- Defending technology company in qui tam False Claims Act litigation regarding allegations of non-compliance with FDA product safety regulations in performance of government contracts.

- Conducted internal investigation for special committee of board of directors regarding shareholder allegations of mismanagement of health and safety programs.

- Defended national retailer in qui tam False Claims Act litigation regarding prescription billing practices.

- Represented a bank in civil RICO and other claims in an investigation alleging fraud in the sale of mortgage-backed securities.

- Represented nutritional supplement company in District Attorney Task Force investigation alleging false advertising claims.

- Represented major financial institution in state False Claims Act case alleging fraudulent claims based on charges for foreign exchange transactions in the management of pension funds.

- Conducted an internal investigation for a major construction company regarding allegations of antitrust violations in bidding for government contracts.

- Defended national title insurance company in potential section 17200 action by the California Attorney General alleging unlawful business practices involving charges for escrow and title insurance services.

- Conducted an internal investigation for telecommunications company regarding allegations of company misrepresentations to the PUC regarding its sales practices.

- Defended national financial company in an investigation by Attorney General of New York regarding allegations of kickbacks in real estate industry.

- Conducted internal investigation for an international pharmaceutical company regarding allegations of theft of a competitor's trade secrets.

- Defended major health care provider in a federal criminal investigation and False Claims Act case regarding allegations of unnecessary surgical procedures.

- Defended an international law firm in an obstruction of justice investigation regarding allegations of suppressing evidence on behalf of a client in a federal grand jury investigation.

- Defended a manufacturer of jet engine parts in the DOJ investigation of allegations of procurement fraud and violations of the FCPA.

- Defended a national energy company in a federal criminal investigation of allegations of unlawful lobbying activities in Sacramento.

- Represented a national food distributor in a federal criminal antitrust investigation of allegations of bribes and kickbacks in the food distribution business.

- Conducted internal investigation of potential FCPA violations by a high technology company with a network of international sales agents and designed a compliance program.

- Defended winery in federal criminal investigation alleging labeling violations.

- Conducted internal investigation for major accounting firm regarding alleged money laundering by client's foreign subsidiary and implemented a compliance program.

## REPRESENTATIVE CIVIL LITIGATION MATTERS

- Defended national media company in federal civil action alleging constitutional torts based on television broadcast of plaintiffs' involvement in narcotics case, which settled during trial for pretrial offer.

- Defended major telecommunications company in unfair business practices action regarding certain cellular billing practices.

- Defended publisher of financial magazine in libel action by a stockbroker for defamation in an article regarding improper business practices by stockbrokers.

- Defended newspaper publisher in libel action by college basketball player based on article about point shaving in college games, which plaintiff dismissed before trial for waiver of costs.

- Represented a private education company in action challenging regulations adopted by state regulatory agency and prevailed on motion for summary judgment.

- Defended major insurance company in commercial insurance bad faith and fraud case that was tried to jury, which resulted in a defense verdict.

# EDUCATION

University of California - Berkeley - 1982 Juris Doctor

Colgate University - 1979 Bachelor of Arts

## ADMISSIONS

California Bar

# EXHIBIT B

1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9               FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   RALPH COLEMAN,                          No.  2:90-cv-0520 KJM DB P

12              Plaintiff,

13        v.                                 PROPOSED

14   EDMUND J. BROWN, JR., et al.,           ORDER APPOINTING

15              Defendants.                  NEUTRAL EXPERT

16

17              The court appoints Charles J. Stevens, Esq. of Gibson, Dunn & Crutcher LLP to
18
     serve as the court's neutral expert in accordance with Federal Rule of Evidence 706.  Mr. Stevens
19
     may utilize additional staff from Gibson, Dunn & Crutcher LLP or retain additional staff to form
20
     an investigative team as he deems necessary to the full, fair and efficient fulfillment of the neutral
21
     expert's duties under this order.  The additional staff may include but not be limited to Benjamin
22
     Wagner, Esq.  Mr. Stevens shall identify any additional staff besides Mr. Wagner for approval by
23
     the court in advance of their utilization or retention.
24
                The purpose of this appointment is to assist the court in investigating allegations
25
     raised in the verified report of Dr. Michael Golding, Chief Psychiatrist for the California
26
     Department of Corrections and Rehabilitation (CDCR) (Golding Report), ECF No. 5988, to
27
     determine whether defendants have committed any fraud on the court or the Special Master, or
28

                                              1

have intentionally provided false or misleading information to the court or the Special Master.[1]
*See* Order filed November __, 2018.  The specific areas of investigation are described below.

    A.    <u>Duties of the Neutral Expert</u>

    It is HEREBY ORDERED that the duties of the neutral expert are and shall be limited to the following:

    1.  To conduct an independent investigation to identify whether facts exist raising a question whether defendants committed fraud on the court or intentionally misled the court or the Special Master regarding the following matters raised in the Golding Report:

    a.  Lengthening the intervals between psychiatric appointments beyond court-mandated timelines for inmate-patients at the Correctional Clinical Case Management System (CCCMS) and Enhanced Outpatient Program (EOP) levels of care who are transferred to new institutions by resetting the clock for such appointments from the time of transfer rather than from the last completed appointment, rescheduling such appointments at the maximum time allowed in the Program Guide, and reporting compliance with Program Guide requirements using the reset timelines.  *See* Golding Report, ECF No. 5988-1 at 1, 14-23.[2]

    b.  Lengthening the interval between psychiatrist appointments for EOP inmate-patients and reporting compliance based on the extended intervals.  *See id*. at 2, 23-26.

    c.  Combining CCCMS and EOP appointment compliance numbers into one reporting category.  *See id*. at 26-27.

    d.  Inflating compliance numbers by counting every encounter between a psychiatrist and an inmate-patient as an appointment for purposes of measuring Program Guide timeline compliance, without regard to whether the encounter was a psychiatry appointment or,

---

[1]  The redacted version of the Golding Declaration and Report and accompanying exhibits is filed at ECF No. 5988 and is the version to which the court cites in this and all related orders. An unredacted version of the Golding Report is maintained under seal at ECF No. 5990 and will be made available to the independent investigator following his appointment.

[2] The page numbers in this order for documents filed in the court's Electronic Case Filing (ECF) system are to the page number assigned by the ECF system located in the upper righthand corner of each page.

2

*e.g.*, a wellness check or a cell-front attempt to communicate with an inmate patient.  *See id*. at 5-6, 54-57.

                                e.  The manner of reporting of scheduled appointments and missed appointments.  *See id*. at 7-8, 35-47, 62-63.

                                f.  Failing to report that psychiatric supervisors were also performing some or all the functions of staff psychiatrists.  *See id*. at 5, 56-57.

                                g.  The way in which medication non-compliance is measured.  *See id*. at 8, 58-62.

The scope of the court's expert's investigation may be expanded by order of this court after consideration of a request of the expert, the Special Master, or any party, based on a showing that allegations of the Golding Report or facts identified during the investigation, or both, warrant such expansion.

2.  To consult with the Special Master as necessary to achieve efficiencies in the discharge of the investigative duties required by this order, without involving the Special Master in the investigation itself.  In particular, the expert shall consult with the Special Master to assist in the determination of what types of data and information in the areas covered by section A(1)(a)-(g) above are required by the Program Guide, orders of this court, and directives of the Special Master.

3.  To submit to the court within four months a report identifying whether there is evidence sufficient to warrant an evidentiary hearing into whether defendants have intentionally presented false or misleading information to the court in one or more of the areas addressed in the Golding Report and, if so, identifying that evidence.  The time allowed for completion of the report will be extended only upon a showing that substantial work remains to complete the duties assigned by this order.  The court will distribute the report to the parties upon receipt, and make further orders for filing and consideration of the report upon consultation with the parties.

4.  The duties set forth in this order may be further specified, expanded or modified only by order of this court.

3

B.    Powers of the Neutral Expert

IT IS FURTHER ORDERED that the neutral expert shall have such powers as are necessary to the duties assigned by this order, including:

1.  To interview correctional staff, employees, and appointees of the California Department of Corrections and Rehabilitation (CDCR).  Defendants shall provide suitable facilities and arrange for such interviews to be conducted under conditions satisfactory to the neutral expert.

2.  To interview defendant Governor Edmund G. Brown and members of his staff. Defendants shall provide suitable facilities and arrange for such interviews to be conducted under conditions satisfactory to the neutral expert.

3.  To interview counsel for defendants and members of their staff.  Defendants shall provide suitable facilities and arrange for such interviews to be conducted under conditions satisfactory to the neutral expert.

4.  To have access to the records, files and papers maintained by defendants to the extent that such access is related to the performance of the neutral expert's duties under this Order.  Such access shall include all departmental, institutional, and inmate records, including but not limited to, central files, medical records, and mental health records.  The neutral expert may obtain copies of all such relevant records, files, and papers.

5.  The powers described herein may only be modified by order of this court.

C.    Compensation of the Neutral Expert

IT IS FURTHER ORDERED that the neutral expert and any of his staff shall be compensated at a reasonable blended hourly rate per hour for services performed as approved by the court.  The expert shall not be compensated for travel time to and from Sacramento, California.  All reasonable expenses incurred by the neutral expert in performing duties under this order shall be reimbursed as costs.

The independent investigator's fees and expenses shall be borne by the defendants, consonant with the provisions of Federal Rule of Evidence 706(c), as part of the costs of this

4

action.  The matter of payment of the independent investigator's fees is referred to the assigned magistrate judge.  The fees will be paid using the following process:

(1) The independent investigator will submit to the court a proposed monthly invoice for services rendered, summarizing time spent and expenses incurred, which the court will initially review.  The proposed invoice shall be emailed to dborders@caed.uscourts.  After review the court will provide a copy of the invoice to the parties.

(2) Any party shall have seven (7) days after receipt of the invoice from the court to submit to the court objections, if any, to the amount billed in the invoice.  Any objections shall be emailed to dborders@caed.uscourts.gov.

(3) Within seven (7) days thereafter, the independent investigator shall submit to the court and serve on the parties a final monthly invoice for services rendered accompanied by an explanation of the independent investigator's response to any objections. The final monthly invoice shall be emailed to dborders@caed.uscourts.gov and be accompanied by proof of service on the parties.

After this process has been completed in full, the matter of payment of the invoice will then be submitted to the court for review and, as appropriate, issuance of an order for payment of the final invoice.

DATED:

5

# ATTACHMENT
# ECF NO. 6032
# ORDER

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RALPH COLEMAN,

Plaintiff,

v.

EDMUND J. BROWN, JR., et al.,

Defendants.

No. 2:90-cv-0520 KJM DB P

ORDER

On November 29, 2018, the court issued an order setting forth its plan to appoint Charles J. Stevens, Esq., Gibson, Dunn & Crutcher LLP, as an independent expert under Federal Rule of Civil Procedure 706. ECF No. 6018. It did so after considering the parties' responses to a November 13, 2018 order to show cause concerning appointment of an independent investigator to investigate the allegations of the report by Michael Golding, M.D., Statewide Chief Psychiatrist for the California Department of Corrections and Rehabilitation (CDCR) (hereafter Golding Report) that pertain to fraud or intent to mislead the court and/or the Special Master, ECF No. 6002. ECF No. 6018 at 1-2.[1] The court granted the parties a period of seven days to

---

[1] In this order, citations to page numbers of documents filed in the Court's Electronic Case Filing (ECF) system are to the page number assigned by the ECF system located in the upper righthand corner of the page.

1

1    respond to the plan and the identification of Mr. Stevens.  *Id.* at 12.  On December 6, 2018, the

2    parties timely filed responses.  ECF Nos. 6021, 6022.  On December 12, 2018, plaintiffs filed a

3    response to defendants' response.  ECF Nos. 6029, 6030.  The court has reviewed both the initial

4    responses and plaintiffs' December 12, 2018 response,[2] and hereby confirms its most recently

5    disclosed plan to appoint Mr. Stevens as its neutral expert to conduct an independent investigation

6    into certain allegations in the Golding Report, as explained further below.

7    I.       REVIEW OF BACKGROUND

8            The facts relevant to the court's decision to appoint a neutral expert were set forth

9    in detail in the November 13, 2018 order, ECF No. 6002, and the November 29, 2018 order, ECF

10   No. 6018.  Those facts are incorporated by reference into this order.  *See* ECF No. 6002 at 2-4;

11   *see also* ECF No. 6018 at 2-5.  The parties agree that an investigation into the allegations of the

12   Golding Report is required.  *See* ECF No. 6018 at 6 (citing ECF No. 5948 at 8:5-24, 9:14-24).

13   There is no dispute that the court's proposed neutral expert, Charles J. Stevens, Esq., has no

14   conflict that prevents his ability to accept appointment as proposed.  *See* ECF Nos. 6021 at 2 &

15   6022 at 2.  The defendants do, however, continue to challenge the scope of the investigation and

16   object to the court's plan to appoint Mr. Stevens as a neutral expert under Federal Rule of

17   Evidence 706.

18           As the court discussed in its November 13, 2018 order, the verified Golding

19   Report contains numerous allegations that defendants have presented misleading or false data to

20   the court.  *See, e.g.,* ECF No. 6002 at 2-3 (citing ECF No. 5988-1 at, *e.g.,* 1-9, 12, 17-18, 24-25).[3]

21   As noted, the parties agree Dr. Golding's allegations are serious and require investigation, and the

22   court has credited and continues to credit the defendants' agreement in this respect.  *See* ECF No.

23   5948 at 8:5-24, 9:14-24.  Faced with these allegations, and the parties' agreement that they are

24            [2] As the court was finalizing this order, it received the defendants' motion to strike

25   plaintiffs' response.  ECF No. 6031.  It will address the motion to strike at the status to be held on
     December 14, 2018.

26

27            [3] As the court has noted previously, these citations are a representative, not an exhaustive,
     list of the Golding Report's allegations that either directly or inferentially suggest false or
28   misleading information has been presented to the court and to the Special Master.

2

1    serious and require investigation, *see, e.g.*, ECF No. 5948 at 8:5-24, 9:14-24, as explained in the

2    November 13, 2018 order, the court has the duty to investigate these allegations to protect the

3    integrity of the judicial process.  *See* ECF No. 6002 at 4-5 (citing *Alexander v. Robertson*, 882

4    F.2d 421, 424 (9th Cir. 1989) (discussing relevant authority) and *United States v. Estate of*

5    *Stonehill*, 660 F.3d 415, 444[4] (9th Cir. 2011)).  Also as the court previously has explained, the

6    court itself has the duty ultimately to determine what the allegations mean, if anything, for the

7    data the court is using to assess defendants' progress toward achieving a durable remedy in this

8    long-running action; only once the court is fully satisfied that reliable data show a durable remedy

9    has been achieved can the action be closed.  *See* ECF No. 6018 at 9.

10    II.    REVIEW OF RELEVANT LEGAL AUTHORITY

11          The well-established principle, that the court "has the power to conduct an

12    independent investigation in order to determine whether it has been the victim of fraud," cannot

13    reasonably be questioned.  *Chambers v. Nasco, Inc.*, 501 U.S. 32, 44 (1991) (citing *Universal Oil*

14    *Products Co. v. Root Refining Co.*, 328 U.S. 575, 580 (1946)).  At the same time, the court

15    understands it is required to exercise its inherent authority "with restraint and discretion."

16    *Chambers v. Nasco*, 501 U.S. at 44.  For this reason, the court should proceed by existing rule or

17    statute where possible, guided always by the requirements of due process.  *Id*. at 50.  As

18    explained below, under the unique circumstances presented here and after careful consideration,

19    the court has jettisoned its initial concept of relying on inherent authority as the foundation for its

20    neutral investigation and appointment of a neutral expert.[5]  Rather, the court has determined that

21

22          [4] The court corrects a typographical error in ECF No. 6002, correcting the jump citation in
      *United States v. Stonehill* from 555 to 444.

23

24          [5]  More than seventy years have passed since the United States Supreme Court's
      suggestion in *Universal Oil*, 328 U.S. at 581, that "a federal court can always call on law officers
25    of the United States to serve as amici" for purposes of investigating whether fraud has been
      committed on the court.  It appears the suggestion is a vestige of a different era.  As previously
26    reported to the parties, the court did contact the office of the U.S. Attorney for the Eastern District
      of California to determine if it is aware of any mechanism by which the court could obtain its
27    assistance.  After considering the court's request, the Executive Assistant United States Attorney
      for that office reported back in an e-mail dated November 1, 2018, that staff in that office is
28    "unaware of any mechanism by which this court could have the United States Attorney's Office

3

1    Federal Rule of Evidence 706 is the appropriate source of authority for the investigation and the

2    appointment of Mr. Stevens.  It confirms that determination here.

3           "[U]nder Ninth Circuit law, district courts enjoy wide latitude" to appoint experts

4    under Rule 706.  *Monolithic Power Systems, Inc. v. O2 Micro Intern. Ltd.*, 558 F.3d 1341, 1348

5    (Fed. Cir. 2009) (applying Ninth Circuit law to review judgment of U.S. District Court for

6    Northern District of California in patent case).  As a general rule, appointment of an expert under

7    Rule 706 "'should be reserved for exceptional circumstances in which the ordinary adversary

8    process does not suffice.'"  *Id*. (quoting *In re Joint E. & S. Dists. Asbestos Litig.*, 830 F.Supp.

9    686, 693 (E.D. N.Y. 1993)).  The presentation to the court of the Golding Report at this stage of

10   this case unquestionably gives rise to such exceptional circumstances.

11          As this court observed in its last order, "the most important question a court must

12   consider when deciding whether to appoint a neutral expert witness is whether doing so will

13   promote accurate factfinding."  ECF No. 6018 at 8 (quoting *Gorton v. Todd*, 793 F.Supp.2d 1171,

14   1179 (E.D.Cal. 2011)).  To demonstrate the need for a Rule 706 expert, there "must be some

15   evidence, admissible or otherwise, that demonstrates a serious dispute that could be resolved or

16   understood through expert testimony."  *Gorton*, 793 F.Supp.2d at 1181.  The Golding Report

17   qualifies as "some evidence," which has opened up a "serious dispute"; to resolve that dispute the

18   court in its considered opinion requires its own expert to lay a foundation for proceeding fairly, as

19   needed and in a better-informed manner.

20   III.    REVIEW OF COURT'S REASONS FOR APPOINTING A NEUTRAL EXPERT

21          The verified Golding Report, ECF No. 5988, contains serious allegations that

22   defendants have presented misleading or false data to the court.  *See* ECF No. 6018 at 5-6 (citing

23   ECF No. 6002 at 2-3; in turn citing ECF No. 5988-1 at, *e.g.*, 1-9, 12, 17-18, 24-25).  For the court

24   to fulfill its duty to ensure that the record before it is free from fraud or intentional

25   misrepresentation, it must ultimately consider all the evidence relevant to those questions as they

26

27   serve as an investigator concerning allegations of fraud in an ongoing civil action to which the
     United States is not a party."

28

4

1   are raised by the Golding Report.  And, for the court to fulfill that duty in the context of this

2   complex civil rights action, which has been in remediation now for twenty-three years and

3   counting, it has concluded it must rely on the assistance of a neutral third party to properly

4   prepare for any evidentiary proceedings over which the court will need to preside.  The court

5   simply cannot itself conduct the initial factual investigation into allegations it may adjudicate in

6   subsequent adversarial proceedings.  The importance in this context of a neutral investigation led

7   by someone who understands what qualifies as actual fraud and what does not, and who also

8   understands the way large and complex governmental organizations operate, cannot be

9   overstated.

10          As explained in prior orders, the Golding Report was presented to the court by

11  both parties one week before a hearing the court had long planned on enforcement of mental

12  health staffing requirements.  The Report raises serious questions about both data presented to the

13  court and the efficacy of the existing staffing remedy.  The timing and contents of the Report

14  have created serious and genuine mistrust between the parties.  *See, e.g.,* ECF No. 5984 at 28:4-

15  29:5.  For example, the Report caused plaintiffs to withdraw from an agreement the parties had

16  nearly achieved on staffing that was the product of almost a year's worth of effort.  *See* ECF No.

17  5936 at 2-3.  It is apparent to the court, from the status conferences it has held since receiving the

18  Golding Report, that the continuing level of mistrust signals that neither a standard "meet and

19  confer" process nor the use of traditional discovery methods could, at this stage, efficiently and

20  fairly identify and narrow issues for a possible evidentiary hearing.  The court previously denied

21  plaintiffs' request to conduct discovery leading up to the planned October staffing hearing, in

22  order to prevent unnecessary and time-consuming litigation detours.  ECF No. 5905 at 35:17-

23  36:5.  Reliance on an adversarial process between the parties now, prior to the court's making an

24  initial decision regarding the need for and scope of any evidentiary proceeding, would fully

25  unleash the dogs of discovery wars in highly counterproductive ways.  As plaintiffs observe in

26  their December 12, 2018 response, traditional discovery under the current circumstances would

27  inevitably lead to the parties seeking "invasive discovery" to "ensure an effective and complete

28  review of the allegations raised by the Golding Report and the type of full and fair examination of

1    the issues to which the Court and the public are entitled." ECF No. 6029 at 12. Plaintiffs' taking

2    the position that such discovery "would necessarily require Plaintiffs to have full access to

3    intensive, probing discovery involving the state of mind and intent of high-ranking officials,"

4    confirms the court's independent assessment of current landscape; plaintiffs are correct that

5    allowing traditional discovery "would undoubtedly tie up the parties and Court in full-bore hotly

6    contested litigation to the exclusion of any other progress on the remedy in this case." *Id*.

7              Moreover, despite defendants' continued insistence that the Special Master

8    conduct the investigation, the court confirms its prior determination that the required investigation

9    is not properly tasked to the current Special Master. *See* ECF No. 6002 at 3; ECF No. 6018 at 6-

10   7. In light of defendants' persistence in making this argument, the court has considered whether

11   Federal Rule of Civil Procedure 53, providing for the appointment of a Special Master, is a good

12   fit here, even if a new, fully independent Master is appointed for the limited purpose required

13   now in light of the Golding Report. But upon close examination, Rule 53 does not suit the court's

14   requirements, in part because it provides too much: it authorizes appointment of a master, among

15   other things, to hold evidentiary proceedings, make proposed findings of fact, and impose

16   sanctions. *See* Fed. R. Civ. P. 53(a)(1)(B), (c). These powers far exceed those the court requires,

17   when it can rely on Mr. Stevens to perform the job of a neutral expert here. *Cf. Ruiz v. Estelle*,

18   679 F.2d 1115, 1160 n. 234 (5th Cir. 1982) ("Rule 53 is concerned primarily with the

19   appointment of a special master 'as a factfinder in advance of the court's remedial decree or as an

20   expert to recommend the amount of damages or other remedial relief after a finding of liability.'")

21   (internal citation and emphasis added in *Ruiz* omitted), *quoted in National Organization for the*

22   *Reform of Marijuana Laws v. Mullen*, 828 F.2d 536, 543 (9th Cir. 1987).

23             As explained in prior orders, Mr. Stevens' sole function will be to assist the court

24   and the parties in determining "whether there is a sufficient factual foundation to require this

25   court to hold an adversarial, evidentiary hearing to determine whether defendants have

26   intentionally presented false or misleading evidence to the court or the Special Master." ECF No.

27   6018 at 10. At the conclusion of the investigation, he will report to the court and the parties on

28   the results of the investigation, providing his views on what documents and which witnesses, if

1    any, support the court's holding of an evidentiary hearing.  *See id*. at 10.  He will not "have any

2    'dispute resolution authority,' will not conduct any hearings, and will not make any

3    recommendations to the court concerning adjudication of any facts."  *Id*.  Mr. Stevens is

4    undeniably an expert in government investigations and fraud; he has extensive, deep experience

5    in managing complex litigation matters, and has conducted multiple internal investigations into

6    allegations of fraudulent or misleading conduct, including investigations prompted by

7    whistleblower allegations.  *See* ECF No. 6018-1 at 3-5.  He is well-positioned to assist the court

8    in providing "a 'joint foundation for all parties in terms of what the evidence is.'"  ECF No. 6018

9    at 7 (quoting ECF No. 5984 at 35:12-15).

10          The cases on which defendants rely in opposing the court's plans are inapposite.

11   In *Cobell v. Norton*, 334 F.3d 1128 (D.C. Cir. 2003), the D.C. Court of Appeals reviewed the

12   district court's appointment of a court monitor to supervise remedial efforts following findings

13   that the Secretary of Interior and other federal officials had breached their fiduciary duty to

14   beneficiaries of Individual Indian Money trust accounts in managing those accounts.  *Id*. at 1132.

15   The court initially appointed the monitor for one year "to 'monitor and review all of the Interior

16   defendants' trust reform activities and file written reports of his findings with the Court.'"  *Id*.

17   Subsequently, the court renewed the appointment and rejected defendants' request to narrow the

18   scope of the monitor's role to limit "the Monitor's investigation to 'steps taken by the Department

19   to rectify the breaches of trust declared by the Court or steps taken that would necessarily delay

20   rather than accelerate the ultimate provision of an adequate accounting.'"  *Id*. at 1142.  It is clear

21   from the *Cobell* decision that the monitor in that case was vested with wide-ranging authority to

22   assess, monitor, and review a broad scope of defendants' administrative and other activities,

23   beyond those necessary to enforcement of the district court's order.  *Id*. at 1143-44.  Moreover,

24   the monitor's role before his reappointment had included "personal involvement in [the] case as

25   Court Monitor [that] would cause a reasonable person to doubt his ability to remain impartial

26   while serving as Special Master."  *Id*. at 1144.

27          In *S.E.C. v. First Jersey Securities, Inc.*, 101 F.3d 1450 (2nd Cir. 1996), the court

28   of appeals reversed the district court's appointment of a "Special Agent" to examine whether an

7

1  entity, First Jersey, found liable for securities fraud, had "engaged in fraudulent activity beyond

2  that proved at trial" and, if any were found "'to recommend to the Court that defendants disgorge

3  and pay over, as the Court may direct, all illegally-obtained profits.'"  *Id*. at 1478.

4        Finally, *In re United States*, 441 F.3d 44 (1st Cir. 2006), involved a secret

5  investigation of grand jury proceedings, conducted by a United States magistrate judge at the

6  direction of a United States district judge.  441 F.3d at 53-55.  The secret investigation followed

7  allegations of prosecutorial misconduct in grand jury proceedings.  *See id.* at 57.  While

8  confirming a district court's "inherent supervisory authority over grand juries," which

9  "undoubtedly provided some authority to investigate misconduct as to the grand jury proceedings,

10  subject of course, to the broader constitutional principle of the separation of powers," *id.* at 57-58,

11  the First Circuit found the district court had overstepped its inherent authority because the

12  asserted bases for the secret investigation were insufficient and because, under the facts of that

13  case, the investigation "ran the risk of violating the principle of separation of powers by

14  interfering with the constitutional prerogatives of the executive branch of the grand jury."  *Id*. at

15  60-63.  None of the foregoing cases cited by defendants, particularly *In re United States*, is

16  remotely applicable to the situation presently before this court.

17        Here, Mr. Stevens' role will be limited to leading an independent and neutral

18  factual investigation into allegations of the Golding Report, relying on his expertise in

19  identification of evidence relevant to fraud inquiries, as described in this and the last two orders.

20  The purpose of the investigation is limited to assisting this court in assessing whether facts exist

21  that require this court to hold an evidentiary hearing to decide whether fraudulent or misleading

22  information has been presented to the court in this case, in the specific context of ongoing

23  remedial efforts concerning adequate mental health staffing in CDCR's prisons.  The court is not

24  delegating to Mr. Stevens the making of any decisions or recommendations concerning the

25  ultimate legal conclusions to be drawn from any facts uncovered during the investigation.  He

26  will not engage in ex parte communications with the court or the Special Master regarding the

27  substance of his investigation.  He will serve in a neutral capacity, and during the investigation

28

1  will act without the court's supervision. He has no conflicts that preclude his service as a neutral

2  expert.

3        The court provides the following information to lend additional clarity and

4  transparency to the court's prior orders concerning the plan it now confirms. The court will,

5  promptly following his appointment, provide Mr. Stevens with a full copy of the unredacted

6  Golding Report and other relevant documents the court has received from third parties. A

7  complete list of documents provided by the court to Mr. Stevens will be disclosed to the parties.

8  The Special Master shall be available to Mr. Stevens, at Mr. Stevens' request, to provide as

9  necessary a tutorial or purely factual information on the Program Guide and the data collection

10  and reporting mechanisms referenced in the Golding Report. Any communication between Mr.

11  Stevens and the Special Master shall be conducted in a manner so that the parties are able to hear

12  the communication and the parties will be informed of additional documents, if any, provided by

13  the Special Master to Mr. Stevens in connection with any such communication. Mr. Stevens, in

14  his discretion, may consider the information defendants previously filed with their objections.

15  *See* ECF No. 6018 at 2. The court anticipates that the parties will cooperate fully with the

16  investigation to avoid further unnecessary delays in these proceedings.

17        It is a gross understatement to say the court is extremely frustrated by the turn of

18  events occasioned by its receipt of the Golding Report, at a time when it had appeared the

19  proverbial light at the end of tunnel of this case was coming closer and shining brighter. But the

20  court cannot ignore the possibility that the brightness of the light is illusory if not a tunnel effect

21  and that it has been presented with false or misleading evidence; nor can it ignore the potential

22  implications for a full, fair and final resolution of this case when the time is ripe. While the court

23  does not presume the truth of the averments in Dr. Golding's report, it must ultimately assess

24  them fully, fairly and openly. It must not preclude the gathering of whatever information is

25  relevant to its ultimate assessment. And it is evident that reliance on discovery methods designed

26  for use by litigation adversaries, particularly given the length, complexity and stage of this case,

27  do not fit the court's needs to ensure the integrity of the proceedings still required prior to

28  termination. Having heard from the parties, the court confirms its conclusion that Mr. Stevens'

9

impeccable credentials and extensive experience make him an ideal candidate to assist the court and the parties in developing the factual foundation necessary to allow the court ultimately to make an informed and just decision resolving the questions raised by the Golding Report.

For the foregoing reasons, the court CONFIRMS:

1. Subject to his confirmation of his consent to appointment, Charles J. Stevens, Esq. of Gibson, Dunn & Crutcher LLP will be appointed promptly thereafter as the court's neutral expert under Federal Rule of Evidence 706, to investigate the Golding Report's allegations that pertain to fraud or intent to mislead the court and/or the Special Master.

2. The court has requested that Mr. Stevens participate by telephone conference in the status conference set for December 14, 2018 at 10:30 a.m. He may arrange for Benjamin B. Wagner, Esq. to be present telephonically as well.

DATED: December 13, 2018.

_____
UNITED STATES DISTRICT JUDGE

# ATTACHMENT
# ECF NO. 6033
# ORDER

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RALPH COLEMAN,

    Plaintiff,

    v.

EDMUND J. BROWN, JR., et al.,

    Defendants.

No. 2:90-cv-0520 KJM DB P

<u>ORDER APPOINTING</u>

<u>NEUTRAL EXPERT</u>

       The court appoints Charles J. Stevens, Esq. of Gibson, Dunn & Crutcher LLP to serve as the court's neutral expert in accordance with Federal Rule of Evidence 706. Mr. Stevens may utilize additional staff from Gibson, Dunn & Crutcher LLP or retain additional staff to form an investigative team as he deems necessary to the full, fair and efficient fulfillment of the neutral expert's duties under this order. The additional staff may include but not be limited to Benjamin Wagner, Esq. Mr. Stevens shall identify any additional staff besides Mr. Wagner for approval by the court in advance of their utilization or retention.

       The purpose of this appointment is to assist the court in investigating allegations raised in the verified report of Dr. Michael Golding, Chief Psychiatrist for the California Department of Corrections and Rehabilitation (CDCR) (Golding Report), ECF No. 5988, to determine whether defendants have committed any fraud on the court or the Special Master, or

1

1   have intentionally provided false or misleading information to the court or the Special Master.[1]

2   *See* Orders filed November 13 and 29, 2018, and December 13, 2018.  The specific areas of

3   investigation are described below.

4       A.    Duties of the Neutral Expert

5       It is HEREBY ORDERED that the duties of the neutral expert are and shall be

6   limited to the following:

7       1.  To conduct an independent investigation to identify whether facts exist raising

8   a question whether defendants committed fraud on the court or intentionally misled the court or

9   the Special Master regarding the following matters raised in the Golding Report:

10       a.  Lengthening the intervals between psychiatric appointments beyond

11   court-mandated timelines for inmate-patients at the Correctional Clinical Case Management

12   System (CCCMS) and Enhanced Outpatient Program (EOP) levels of care who are transferred to

13   new institutions by resetting the clock for such appointments from the time of transfer rather than

14   from the last completed appointment, rescheduling such appointments at the maximum time

15   allowed in the Program Guide, and reporting compliance with Program Guide requirements using

16   the reset timelines.  *See* Golding Report, ECF No. 5988-1 at 1, 14-23.[2]

17       b.  Lengthening the interval between psychiatrist appointments for EOP

18   inmate-patients and reporting compliance based on the extended intervals.  *See id.* at 2, 23-26.

19       c.  Combining CCCMS and EOP appointment compliance numbers into

20   one reporting category.  *See id.* at 26-27.

21       d.  Inflating compliance numbers by counting every encounter between a

22   psychiatrist and an inmate-patient as an appointment for purposes of measuring Program Guide

23

24       [1]  The redacted version of the Golding Declaration and Report and accompanying exhibits
is filed at ECF No. 5988 and is the version to which the court cites in this and all related orders.

25   An unredacted version of the Golding Report is maintained under seal at ECF No. 5990 and will
be made available to the independent investigator following his appointment.

26

27       [2]  The page numbers in this order for documents filed in the court's Electronic Case Filing
(ECF) system are to the page number assigned by the ECF system located in the upper righthand
corner of each page.

28

1    timeline compliance, without regard to whether the encounter was a psychiatry appointment or,

2    *e.g.*, a wellness check or a cell-front attempt to communicate with an inmate patient. *See id.* at 5-

3    6, 54-57.

4                    e.  The manner of reporting of scheduled appointments and missed

5    appointments. *See id.* at 7-8, 35-47, 62-63.

6                    f.  Failing to report that psychiatric supervisors were also performing some

7    or all the functions of staff psychiatrists. *See id.* at 5, 56-57.

8                    g.  The way in which medication non-compliance is measured. *See id.* at 8,

9    58-62.

10            The scope of the court's expert's investigation may be expanded by order of this

11    court after consideration of a request of the expert, the Special Master, or any party, based on a

12    showing that allegations of the Golding Report or facts identified during the investigation, or

13    both, warrant such expansion.

14            2.  To consult with the Special Master as necessary to achieve efficiencies in the

15    discharge of the investigative duties required by this order, without involving the Special Master

16    in the investigation itself.  In particular, the expert shall consult with the Special Master to assist

17    in the determination of what types of data and information in the areas covered by section

18    A(1)(a)-(g) above are required by the Program Guide, orders of this court, and directives of the

19    Special Master.  All such consultations shall be conducted in the presence of the parties to this

20    action.

21            3.  To submit to the court within four months a report identifying whether there is

22    evidence sufficient to warrant an evidentiary hearing into whether defendants have intentionally

23    presented false or misleading information to the court in one or more of the areas addressed in the

24    Golding Report and, if so, identifying that evidence.  The time allowed for completion of the

25    report will be extended only upon a showing that substantial work remains to complete the duties

26    assigned by this order.  The court will distribute the report to the parties upon receipt, and make

27    further orders for filing and consideration of the report upon consultation with the parties.

28

4.  The duties set forth in this order may be further specified, expanded or modified only by order of this court.

B.    Powers of the Neutral Expert

IT IS FURTHER ORDERED that the neutral expert shall have such powers as are necessary to the duties assigned by this order, including:

1.  To interview correctional staff, employees, and appointees of the California Department of Corrections and Rehabilitation (CDCR).  Defendants shall provide suitable facilities and arrange for such interviews to be conducted under conditions satisfactory to the neutral expert.

2.  To interview defendant Governor Edmund G. Brown and members of his staff. Defendants shall provide suitable facilities and arrange for such interviews to be conducted under conditions satisfactory to the neutral expert.

3.  To interview counsel for defendants and members of their staff.  Defendants shall provide suitable facilities and arrange for such interviews to be conducted under conditions satisfactory to the neutral expert.

4.  To have access to the records, files and papers maintained by defendants to the extent that such access is related to the performance of the neutral expert's duties under this Order.  Such access shall include all departmental, institutional, and inmate records, including but not limited to, central files, medical records, and mental health records.  The neutral expert may obtain copies of all such relevant records, files, and papers.

5. The powers described herein may only be modified by order of this court.

C.    Compensation of the Neutral Expert

IT IS FURTHER ORDERED that the neutral expert and any of his staff shall be compensated at a reasonable blended hourly rate per hour for services performed as approved by the court.  The expert shall not be compensated for travel time to and from Sacramento, California.  All reasonable expenses incurred by the neutral expert in performing duties under this order shall be reimbursed as costs.

/////

4

The independent investigator's fees and expenses shall be borne by the defendants, consonant with the provisions of Federal Rule of Evidence 706(c), as part of the costs of this action. The matter of payment of the independent investigator's fees is referred to the assigned magistrate judge. The fees will be paid using the following process:

(1) The independent investigator will submit to the court a proposed monthly invoice for services rendered, summarizing time spent and expenses incurred, which the court will initially review. The proposed invoice shall be emailed to dborders@caed.uscourts. After review the court will provide a copy of the invoice to the parties.

(2) Any party shall have seven (7) days after receipt of the invoice from the court to submit to the court objections, if any, to the amount billed in the invoice. Any objections shall be emailed to dborders@caed.uscourts.gov.

(3) Within seven (7) days thereafter, the independent investigator shall submit to the court and serve on the parties a final monthly invoice for services rendered accompanied by an explanation of the independent investigator's response to any objections. The final monthly invoice shall be emailed to dborders@caed.uscourts.gov and be accompanied by proof of service on the parties.

After this process has been completed in full, the matter of payment of the invoice will then be submitted to the court for review and, as appropriate, issuance of an order for payment of the final invoice.

DATED: December 14, 2018.

_____
UNITED STATES DISTRICT JUDGE

5

# ATTACHMENT REPRESENTATION STATEMENT

No. _____

## IN THE UNITED STATES COURT OF APPEALS

## FOR THE NINTH CIRCUIT

**RALPH COLEMAN, et al.,**

                                    Plaintiffs-Appellees,

    **v.**

**EDMUND G. BROWN JR., et al.,**

                                    Defendants-Appellants.

On Appeal from the United States District Court
for the Eastern District of California

No. 2:90-cv-00520 KJM-DB (PC)
The Honorable Kimberly J. Mueller, Judge

## REPRESENTATION STATEMENT

XAVIER BECERRA
Attorney General of California
MONICA N. ANDERSON
Senior Assistant Attorney General
JAY C. RUSSELL
ADRIANO HRVATIN
MISHA D. IGRA
Supervising Deputy Attorneys General
YEVGENIY PARKMAN, State Bar No. 310302
Deputy Attorney General
  California Department of Justice
  455 Golden Gate Ave, Suite 11000
  San Francisco, CA 94102-7020
  Phone:  (415) 510-3608
  E-mail:  Jenya.Parkman@doj.ca.gov
*Attorneys for Defendants-Appellants*

The undersigned represent the State Defendants-Appellants in this case—including Edmund G. Brown Jr., Governor of the State of California; Ralph M. Diaz, Acting Secretary of the California Department of Corrections and Rehabilitation; Keely Bosler, Director of the Department of Finance; and Stephanie Clendenin, Acting Director of the Department of State Hospitals. Attached is a service list that shows the other parties that are directly interested in this appeal, along with their lead counsels' names, firms, addresses, telephone numbers, and email addresses. The party listing in the district court's docket also includes numerous associated counsel for many parties, as well as additional intervenors, "interested parties," amici curiae, and "miscellaneous" individuals who are not included on the attached service list.

Date: December 28, 2018          Respectfully submitted,
                                 XAVIER BECERRA
                                 Attorney General of California
                                 MONICA N. ANDERSON
                                 Senior Assistant Attorney General
                                 JAY C. RUSSELL
                                 ADRIANO HRVATIN
                                 MISHA D. IGRA
                                 Supervising Deputy Attorneys General

                                 */s/ Yevgeniy Parkman*
                                 YEVGENIY PARKMAN
                                 Deputy Attorney General
                                 *Attorneys for Defendants-Appellants*

1

*Service List*

| | |
|---|---|
| Michael Bien<br>  (Email: mbien@rbgg.com)<br>Lisa Adrienne Ells<br>  (Email: lells@rbgg.com)<br>Thomas Bengt Nolan<br>  (Email: tnolan@rbgg.com)<br>Jessica L. Winter<br>  (Email: jwinter@rbgg.com)<br>Michael S. Nunez<br>  (Email: mnunez@rbgg.com)<br>Rosen Bien Galvan & Grunfeld, LLP<br>101 Mission Street, 6th Floor<br>San Francisco, CA 94105<br>Phone: (415) 433-6830<br>Fax: (415) 433-7104<br> (Attorneys for Plaintiffs) | Donald Specter<br>  (Email: dspecter@prisonlaw.com)<br>Steve Fama<br>  (Email: sfama@prisonlaw.com)<br>Prison Law Office<br>1917 Fifth Street<br>Berkeley, CA 94710-1916<br>Phone: (510) 280-2621<br>Fax: (510) 280-2704<br> (Attorney for Plaintiffs) |
| Matthew A. Lopes, Jr.<br>Pannone Lopes Devereaux<br>& O'Gara, LLC<br>1301 Atwood Avenue, Suite 215N<br>Johnston, RI 02919<br>Phone: (401) 824-5156<br>Fax: (401) 824-5123<br>Email: mlopes@pldolaw.com<br>(Special Master) | |

CF1997CS0003

2

No. _____

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**RALPH COLEMAN, et al.,**

Plaintiffs-Appellees,

v.

**EDMUND G. BROWN JR., et al.,**

Defendants-Appellants.

## STATEMENT OF RELATED CASES

The following appeals arise from the same district-court matter and are

related:

*Ralph Coleman, et al. v. Edmund Brown, Jr., et al.*, Ninth Cir. No. 17-17328

*Ralph Coleman, et al. v. Edmund Brown, Jr., et al.,* Ninth Cir. No. 18-16445

Dated:  December 28, 2018          Respectfully Submitted,

XAVIER BECERRA
Attorney General of California
MONICA N. ANDERSON
Senior Assistant Attorney General
JAY C. RUSSELL
ADRIANO HRVATIN
MISHA D. IGRA
Supervising Deputy Attorneys General

***/s/ Yevgeniy Parkman***
YEVGENIY PARKMAN
Deputy Attorney General
*Attorneys for Defendants*

3

1

**CERTIFICATE OF SERVICE**

2

Case Name:     **Coleman v. Brown, et al.**          No.     **2:90-cv-00520 KJM-DB (PC)**

3

I hereby certify that on **December 28, 2018**, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

4

5

- **NOTICE OF APPEAL TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT**

6

7

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

8

9

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on **December 28, 2018**, at Sacramento, California.

10

11

| D. Jones | */s/ D. Jones* |
|---|---|
| Declarant | Signature |

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

CF1997CS0003
33716383.docx

28

1