UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, | No. 2:90-cv-0520 KJM DB P |
| Plaintiff, | |
| v. | |
| GAVIN NEWSOM, et al., | ORDER |
| Defendants. | |

This matter is before the court on defendants' objections to the first invoice submitted by the neutral expert appointed in this matter. *See* ECF No. 6064 (amending ECF No. 6033).[1] Although the matter of payment of the neutral expert's fees has been referred to the magistrate judge, *see* ECF No. 6064 at 5, defendants' objections implicate provisions of this court's appointment order. For that reason, those objections have been submitted to this court, *see* ECF No. 6082, and are resolved by this order.

/////

---

[1] Section C of the Amended Order Appointing Neutral Expert governs compensation of the neutral expert. ECF No. 6064 at 5-6. All references in that section to "independent investigator" are references to the neutral expert.

1

## I. BACKGROUND

As required by the December 14, 2018 Order Appointing Neutral Expert, on January 3, 2019, the neutral expert submitted a proposed summary invoice to the magistrate judge for review. *See* ECF No. 6033 at 5.[2] The magistrate judge sent the invoice to the parties on January 9, 2019. *See* ECF No. 6064 at 5. A copy of that invoice is filed concurrently with this order, along with more detailed billing entries provided to the court alone, under seal. As the neutral expert recommended, in order to protect the integrity of the investigation, the magistrate judge did not send the detailed entries to the parties. Attachment A, Email dated January 3, 2019 from Charles J. Stevens, Esq. (filed under seal). The neutral expert seeks compensation for six attorneys at a blended hourly rate of $775 per hour. Attachment A, Invoice dated January 3, 2019 (filed under seal). Each of the six attorneys spent a different amount of time on this matter. *Id*. The bill seeks compensation for 170.1 hours at $775 per hour, totaling $131,827.50 in services rendered plus $459.93 in costs, totaling $132,287.43.

On January 16, 2019, defendants submitted to the magistrate judge objections to the proposed final invoice. *See* Attachment B, January 16, 2019 Letter from Deputy Attorney General Tyler V. Health to Honorable Deborah Barnes. Therein, defendants objected that this court "did not require the expert to establish an adequate factual record to support a fee request," and, specifically, that neither the services performed nor the basis for determination of the blended rate was adequately explained. *Id*. at 1.

By letter to the magistrate judge dated January 22, 2019, a copy of which was served on the parties, a member of the neutral expert's team explained the proposed invoice was accompanied by ten pages of detailed billing entries,

> reflecting a description of work done by each attorney on each date during the two week period covered by the invoice, during which the assigned attorneys researched the background of the issues identified for investigation, received and reviewed voluminous documents, made initial contact with the parties and the whistleblowers, and

---

[2] ECF No. 6033 was amended on January 8, 2019 by ECF No. 6064, which is now the controlling appointment order for the neutral expert.

2

|   |   |
|---|---|
| 1 | otherwise took steps to commence the investigation of multiple issues. |
| 2 | |

Attachment C, January 22, 2019 Letter from Benjamin Wagner, Esq. to Honorable Deborah Barnes, at 2. This letter once again "recommended to the Court that it share only the invoice itself with the parties, since providing the parties with the detailed day-by-day chronicle of the activities of the investigating attorneys might compromise the integrity of the investigation." *Id*. The letter also explained the blended rate is a reasonable blend of the "otherwise-applicable hourly rates for attorneys assigned to this matter [which] range from nearly $700 per hour to over $1200 per hour." *Id*. It also explained that "[t]he majority of attorneys assigned to this matter have a standard hourly rate that exceeds the $775 blended hourly rate in this matter." *Id*. Finally, it explained the blended rate "was based on the rate currently being applied in another investigations matter involving the State of California," and includes "a small adjustment in light of the firm's current hourly rates." *Id*.

By order filed January 31, 2019, the magistrate judge directed defendants to, within five days, inform the court "whether the neutral expert's response resolved some or all of their objections." ECF No. 6079. By letter dated February 4, 2019, defendants reasserted their objections. Attachment D, Letter dated February 4, 2019 from Supervising Deputy Attorney General Adriano Hrvatin to Honorable Deborah Barnes. Thereafter, by order filed February 7, 2019, the magistrate judge directed submission of defendants' objections to this court, ECF No. 6082, a referral this court accepts in order to clarify matters and expedite the magistrate judge's review of future invoices submitted by the neutral expert.

II. <u>ANALYSIS</u>

    A. <u>Reasonableness of Hours Spent</u>

Defendants initially objected that the summary invoice did not provide sufficient detail to allow either the magistrate judge or defendants to assess the reasonableness of the work performed by the neutral expert and his team. Attachment B at 2. As noted, however, the neutral expert's representative has provided a level of detail to the court as client to allow it to properly evaluate the reasonableness of the bill and reiterated the position that the detail should not be

provided to the parties now because doing so would risk compromising the integrity of the independent investigation that is his charge. Attachment C at 2. In response, defendants now contend they "cannot verify" the neutral expert's explanation, and that "the Court's appointment orders do not contemplate that the parties would receive a different invoice than the Court to evaluate the reasonableness of the expert's work." Attachment D at 1.

Defendants rely on *Padgett v. Loventhal*, 706 F.3d 1205, 1208-09 (9th Cir. 2013), to support this objection. *Padgett* articulated the principle that a court should "show [its] work when calculating attorney's fees" and to "'specify reasons'" when it denies an award of costs; it did so in the distinguishable context of evaluating fees and costs awarded to a prevailing party. *Padgett*, 706 F.3d at 1208 (quoting *Ass'n of Mexican-Am. Educators v. State of California*, 231 F.3d 572, 591 (9th Cir. 2000)). The reason for the rule in *Padgett*, to permit appellate review of orders on costs and attorneys' fees, does have force here.[3] The detailed invoice provided by the neutral expert is sufficient to allow this court to meet its obligation under Federal Rule of Evidence 706(c) to set "reasonable compensation" for the neutral expert. And the detailed billing statements will be made a part of the record, filed under seal until the investigation is concluded, and so available for appellate review. Defendants provide no authority for the proposition that they are entitled to withhold payment directed by the court unless they can "verify" the court's independent assessment that the compensation sought is reasonable; the court is unaware of any such authority.

As the court previously has determined, a neutral, independent investigation is essential to aid this court in the proper and efficient disposition of the numerous and serious allegations presented by Dr. Golding's whistleblower report. The neutral expert, whom all agree is exceedingly well-qualified for the task, has advised the court that providing the parties with a more detailed description of services now would risk compromising the integrity of the

---

[3] Compensation of court appointed experts is a "cost" taxable under 28 U.S.C. § 1920, payable "by the parties in the proportion and at the time that the court directs." Fed. R. Evid. 706(c)(2). The reasonableness of such compensation is not based on lodestar calculations applicable to attorneys' fees motions.

4

investigation.  The court accepts his representation of this risk.  It is a risk no party should countenance and the court will not take.

As for the substance of his bill, the neutral expert seeks compensation for 170.1 hours spent by him and his team to conduct background research on the numerous serious issues identified for his investigation, to review "voluminous documents" and to begin initial contacts with parties and other individuals central to this investigation.  In a case of this magnitude, the remedial phase of which has been going on for over two decades, and given the centrality of the issues raised, this is an entirely reasonable amount of time for the neutral expert and his team to spend on these tasks.  Defendants' first objection is overruled.

        B.       <u>Hourly Rate</u>

Defendants also object to the blended hourly rate of $775 per hour.  Attachment D at 2.  Although defendants acknowledge the "impressive backgrounds" of the neutral expert and his partner, they contend there is no justification in the record for paying firm associates at the same rate as Mr. Stevens and Mr. Wagner.  *Id*.  Defendants also object to the fact that the blended rate was not set in the appointment order and the court did not specify how the rate "would be determined to be reasonable."  *Id*.  These objections are also overruled.

First, defendants were given ample opportunity prior to the court's appointment of the neutral expert, including at the December 14, 2018 status conference, to raise questions about what the neutral expert's rate of compensation would be and how it would be set; they did not raise concerns then.  *See*, *e.g.*, ECF No. 6002 at 7 (order to show cause why court should not appoint independent investigator using Fed. R. Evid. 706 procedures for, *inter alia,* costs of investigator and require defendants to pay those costs; ECF No. 6018 at 8-9 (confirming decision to appoint neutral expert under Fed. R. Evid. 706 and to have defendants pay expert's compensation and granting parties seven days to submit views on expert identified by the court); ECF No. 6054 at 12-30 (Transcript of December 14, 2018 hearing).

Second, the case cited by defendants to support this part of their objections, *United States v. City of Akron*, 2013 WL 2422859 (N.D. Ohio 2013), stands for the proposition that assessment of a Rule 706 expert's hourly rate is grounded in the expert's "education, training and

5

experience, and the prevailing market rate" within the venue of the court. 2013 WL 2422859, slip op. at 2. Defendants have presented no evidence that the blended hourly rate exceeds the prevailing market rate for the kind of expertise the neutral expert's team brings to bear, or is unwarranted by the education, training, or experience of any member of the neutral expert's team.

Finally, the court observes that, to the extent the neutral expert's standard billing rate is "presumptively" reasonable, *see United States v. City of Akron*, 2013 WL 2422859, slip op. at 1, the neutral expert has in fact significantly reduced his own standard billing rate by providing services at the blended rate for the rest of the team. Moreover, the neutral expert has explained that most of the team bills at rates above the $775 blended billing rate. No leap of imagination is required to reasonably conclude that use of the blended rate may well have resulted in an invoice reflecting a discount from a standard invoice using current billing rates for the neutral expert and members of his team.[4]

For the foregoing reasons, the blended billing rate of $775 is approved and defendants' objections to the rate are overruled.

C. Conclusion

As the court's prior orders explain, several factors informed the court's decision to appoint a neutral expert to assist in investigating the serious allegations made in the Golding Report. One was the need for highly informed neutrality and independence. Another was the need for efficiency and to allow the Special Master to continue his remedial work with defendants on a parallel track, to the extent possible, while the independent investigation was ongoing. Since it began presiding over this case nearly five years ago, the court has been clear that its goal is to bring remediation of constitutionally inadequate mental health care in California's prisons to completion sooner rather than later. The state's continued failure to complete the remedial work necessary to end federal court supervision does indeed have cost consequences, including

---

[4] Given the reasonable inferences to be drawn from the neutral expert's explanation of the blended billing rate, it would appear the application of standard billing rates could well yield a bill in excess of $150,000. To be clear, the neutral expert has not provided standard billing rates for any member of the team. The court's conclusion here is simply a rough assessment based on the information provided.

6

ongoing payment for the work of the Special Master and his team, as well as quarterly undisputed attorneys' fees to plaintiffs' counsel, not to mention the costs borne by the plaintiff class. The short-term costs of the court's neutral expert are far outweighed by any of these other costs. At this juncture, paying the neutral expert's fees now, as billed, is the right and most cost-effective way forward for defendants.

In accordance with the above, IT IS HEREBY ORDERED that within five days from the date of this order defendants shall pay to the neutral expert the amount of $132,287.43 as reflected in the final invoice rendered through December 2018.

DATED: February 11, 2019.

_____
UNITED STATES DISTRICT JUDGE