


XAVIER BECERRA, State Bar No. 118517
Attorney General of California
JAY C. RUSSELL, State Bar No. 122626
ADRIANO HRVATIN, State Bar No. 220909
Supervising Deputy Attorneys General
ELISE OWENS THORN, State Bar No. 145931
TYLER V. HEATH, State Bar No. 271478
IAN MICHAEL ELLIS, State Bar No. 280254
TOBIAS G. SNYDER, State Bar No. 289095
Deputy Attorneys General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
Telephone: (415) 510-4426
Fax: (415) 703-5843
E-mail: Tobias.Snyder@doj.ca.gov
*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **RALPH COLEMAN, et al.,**<br><br>Plaintiffs,<br><br>**v.**<br><br>**GAVIN NEWSOM, et al.,**<br><br>Defendants. | 2:90-cv-00520 KJM-DB (PC)<br><br>**DEFENDANTS' MOTION FOR PROTECTIVE ORDER**<br><br>Date: March 22, 2019<br>Time: 10:00 a.m.<br>Judge: The Honorable Kimberly J. Mueller |

**NOTICE OF MOTION**

PLEASE TAKE NOTICE that on March 22, 2019 at 10:00 a.m., at 501 I Street, Sacramento, California, 95814, Courtroom 3, 15th Floor, Defendants will and hereby do move this Court under Federal Rule of Civil Procedure 26(c) and Civil Local Rule 141.1 for a protective order against the production by Defendants to the expert investigator appointed in this matter of materials subject to the attorney-client privilege and work-product doctrine. This motion is based on the attached memorandum of points and authorities, the Declaration of Nicholas Weber, and all papers, pleadings and records on file in this action.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

Since early October 2018, progress in this litigation has been halted to consider unfounded fraud allegations brought by Dr. Michael Golding, the California Department of Corrections and Rehabilitation's (CDCR) chief psychiatrist, that CDCR manipulated data metrics to improve the appearance of its performance in providing mental health care to California inmates.

Defendants share the Court's concern that any data provided to the Court, Special Master, Plaintiffs, or the public is accurate, and promptly conducted a careful review of Dr. Golding's allegations. In the detailed substantive response that Defendants filed with the Court last November, Defendants explained why Dr. Golding's allegations of data manipulation were incorrect; identified which assertions of Dr. Golding were factually inaccurate or based on a misunderstanding of the Program Guide's requirements; and explained why none of the allegations demonstrated any intent to defraud. The Court, however, summarily disregarded Defendants' substantive response to the allegations. (ECF No. 6018 at 1.) Then, without making any type of determination that Dr. Golding's allegations had any factual validity, the Court appointed a fraud investigator under Federal Rule of Evidence 706 to help the Court determine whether Defendants had committed fraud on the Court or the Special Master monitoring the remedial phase of this matter.

Although Defendants have already established the absence of any fraud on the Court or the Special Master, Defendants have been transparent and are working in good faith with the Rule 706 expert, Charles Stevens of Gibson, Dunn & Crutcher LLP. Now, however, Gibson Dunn has made clear that it is explicitly calling for the production of documents from Defendants irrespective of whether the documents fall within the attorney-client privilege or attorney work-product doctrine. After a meet-and-confer session, Gibson Dunn confirmed its belief that it is entitled to any documents responsive to its requests, even if privileged.

Defendants have repeatedly and consistently objected to any requirement that Defendants produce information protected by the attorney-client privilege or work-product doctrine. Moreover, neither Gibson Dunn nor the Court has satisfied the requirements for invading the

attorney-client privilege here. While the purported basis to invade these protections has not been explicitly stated, the only plausible legal basis for piercing Defendants' privilege here would be a finding that privileged or protected materials were used to further an illegal scheme relating to Dr. Golding's allegations and thus fall within the crime-fraud exception. But there is no factual basis to support a good-faith belief by a reasonable person that *in camera* review of any privileged materials sought would reveal evidence of fraud. And even if there were a sufficient factual basis (which there is not), the Court has not examined the materials *in camera* to determine whether the crime-fraud exception in fact applies. Until these requirements are met, Defendants are not required to produce any privileged materials. Defendants' concerns are particularly acute here, where Dr. Golding did not allege any wrongdoing by Defendants' counsel and where there has not been any evidence produced indicating that attorney communications were used for the purpose of furthering illegal or unethical activity.

To the extent that the Court seeks to delegate to Gibson Dunn responsibility to determine whether a sufficient threshold showing has been made and to conduct the *in camera* review, such delegation would constitute further abuse of the Court's discretion. The determination of whether a sufficient threshold showing has been made, and whether the crime-fraud exception applies, is a mixed question of law and fact. Even if appointed under Rule 706, Gibson Dunn cannot make such findings. Rather, it is the Court that must determine whether the requisite threshold showing has been made as to the specific materials, conduct an *in camera* review if such a showing has been made, and finally determine whether the crime-fraud exception applies. Until those basic requirements are satisfied, there is no legal basis for invading the attorney-client privilege or work-product protection here.

## FACTUAL BACKGROUND

In early October 2018, Dr. Golding sent a memorandum under his name to the receiver appointed in the litigation concerning medical care in California's prisons—*Plata v. Brown*—outlining various disagreements with how CDCR manages its mental health program. (*See* ECF Nos. 5936, 5938.) Dr. Golding suggested that various data metrics generated by CDCR were being calculated misleadingly, including metrics provided to the Court or the Special Master

overseeing the remedial phase of this action. (*Id*.) On November 5, 2018, the Court held a status conference to discuss how to address Dr. Golding's allegations (ECF No. 5995), and on November 13, 2018 the Court ordered the parties to show cause why it should not appoint an independent investigator to look into the allegations, specifically the possibility that CDCR or its agents had committed a fraud on the Court. (ECF No. 6002.) The Court attached a proposed order appointing an expert investigator under Federal Rule of Evidence 706, which authorizes a court to appoint a neutral expert witness. (ECF No. 6002-1.) The proposed order, among other things, authorized the expert to "interview . . . counsel for defendants and their staff" and to "have unlimited access to the records, files and papers maintained by defendants." (*Id*. at 4:13-14, 21-22.)

In their responses to the proposed order, Defendants objected on multiple grounds. In addition to establishing in detail why none of the allegations demonstrated any fraud on Defendants' part (*see* ECF No. 6012), Defendants objected that the appointment of an outside investigator was unnecessary, would needlessly prolong the case, and under these circumstances would exceed the scope of the Court's inherent authority and authority under Rule 706 (*see* ECF No. 6009). Defendants further objected that the envisioned appointment would misapply Rule 706, contradict the requirements of the Prison Litigation Reform Act, and unfairly compel the State of California to pay all of the Rule 706 expert's costs. (*Id.*) Finally, Defendants specifically objected to the unlimited scope of the expert's potential inquiry, arguing that it would improperly authorize the expert to invade the attorney-client privilege and attorney work product without any threshold showing that privileged materials were subject to any exception. (*Id*. at 13:3-14:13.) On November 29, 2018, the Court issued an order to appoint an expert under Rule 706, stating that Gibson Dunn's Charles Stevens would be appointed within fourteen days, and that all costs would be borne by Defendants. (ECF No. 6018.) The order did not address Defendants' concerns regarding the Court's planned intrusion into the relationship between Defendants and their counsel. (*Id*.)

On December 6, 2018, Defendants again timely objected to the Court's plan to authorize the expert to intrude into Defendants' privileged communications without any prior showing that

would satisfy due process. (ECF No. 6022 at 10:26-11:20.) But in its December 13, 2018 order appointing Mr. Stevens as a Rule 706 expert, the Court still authorized Mr. Stevens to "interview counsel" and "access" documents as written in the previously circulated draft order. (ECF No. 6033 at 4:11-13, 16.)

On December 14, 2018, the Court held a status conference. (ECF No. 6035.) Defendants' counsel inquired about their objections concerning privileged documents, as none of the Court's proposed orders of appointment explicitly discussed access to privileged materials beyond conducting interviews. (*See* Dec. 14, 2018 Hearing Tr. at 15:24-16:7.) The Court replied that it did not intend "to put any artificial limits on the investigation. The information will lead where it will." (*Id*. at 16:8-11.) The Court also stated, "[t]his is not a free-wheeling inquisitorial investigation by an independent investigator. The court defines the limits. And so I'm deferring. I'm not going to provide Mr. Stevens with more direction than I have." (*Id*. at 16:19-24.)

Mr. Stevens then provided his views of the Court's then-anticipated order. Mr. Stevens stated his view that it was "clear . . . from the court's orders that the court contemplates that we will at various times have access to information that is appropriately deemed to be privileged information pursuant to attorney-client privilege." (*Id*. at 25:20-23.) Mr. Stevens further asserted that "the disclosure of privileged information to us would be the functional equivalent of submitting privileged information to the court, under seal, for *in camera* review." (*Id*. at 26:3-6.) In other words, under Gibson Dunn's plan, the firm could invade Defendants' attorney-client privilege, without having to make any threshold factual showing that the privileged materials would disclose some kind of fraud by Defendants. (*Id*. at 26:7-15.) Nor would the Court have to first examine the materials *in camera* to determine whether the crime-fraud exception actually applied.

On December 28, 2018, Defendants timely appealed the Court's final appointment order and the earlier non-final orders leading up to the appointment. (ECF No. 6058.)

On January 8, 2019, the Court amended its order of appointment, elaborating on the types of documents subject to request by the expert and stating that Gibson Dunn's scope of access was

unlimited, though still not explicitly ordering the production of privileged materials by Defendants.[1] (ECF No. 6064.)

On January 15, 2019, Defendants received Gibson Dunn's first set of document requests. (Declaration of N. Weber in Support of Defendants' Motion for Protective Order (Weber Decl.) ¶ 2, Ex. A.) Several of the requests explicitly or implicitly demanded production of attorney-client privileged documents. Requests 15 and 18, in particular, called for the production of communications "involving CDCR employees and counsel for CDCR." (*Id.*) Other requests would also capture privileged communications involving CDCR's in-house counsel and attorneys from the Office of the Attorney General. (*Id.* ¶ 3.)

On January 18, 2019, Defendants responded to Gibson Dunn's letter, objecting to its request for attorney-client-privileged documents. (Weber Decl. ¶ 4, Ex. B.) On January 22, 2019, Defendants' counsel and Gibson Dunn met and conferred regarding the expert's document requests, during which Gibson Dunn took the position that the Court had given it full authority to request disclosure of communications protected by the attorney-client privilege and work-product doctrine despite Defendants' objections. (*Id.* ¶ 5.) The following day, Gibson Dunn elaborated in an email that while request numbers 15 and 18 explicitly called for production of privileged documents, "other requests that do not explicitly request these types of documents may nonetheless call for the production of responsive materials that are subject to the attorney-client privilege or work product doctrine." (*Id.* ¶ 5, Exs. C, D.) While Defendants continued to object to the production of privileged materials, they have worked in good faith to assist Gibson Dunn's investigation and have already produced over a thousand pages of documents, as well as arranged live presentations from CDCR employees to the expert's team to help explain CDCR's data systems. (*Id.* ¶ 6.)

On January 25, 2019, per Defendants' and the Gibson Dunn team's meet-and-confer discussion, Defendants sent a letter to Gibson Dunn containing a set of proposed search terms and

[1] "Such access shall include all departmental, institutional, and inmate records, including but not limited to, central files, medical records, and mental health records. The neutral expert may obtain from the Special Master, all parties, and counsel for Dr. Golding copies of all information he deems relevant to performance of his duties, and medical information may be provided to the neutral expert in unredacted form." (ECF No. 6064 at 5:3-7.)

document custodians to be used to conduct a search for responsive documents. (*Id.* ¶ 7, Ex. E.) The letter identified CDCR attorneys as custodians for several requests, but stated that despite this identification "CDCR continues to object to the production of documents protected by the attorney-client privilege or attorney work-product doctrine, and CDCR does not waive these protections by identifying those custodians." (*Id.* ¶ 7.) On January 30, 2019, Gibson Dunn sent a letter proposing additional search terms and requesting that Deputy Attorneys General Elise Thorn and Andrew Gibson and in-house CDCR counsel Melissa Bentz and Nicholas Weber be included as custodians for several requests. (Weber Decl. ¶ 8, Ex. F.) The letter also reiterated Gibson Dunn's position that "the Court's order appointing the neutral expert authorized [the expert's team] to obtain [privileged] materials." (*Id.* ¶ 4.)

On February 11, 2018, Gibson Dunn sent an email to counsel for Defendants with a list of requested interview witnesses; the list included in-house CDCR counsel Ms. Bentz and Mr. Weber, and Deputy Attorneys General Thorn and Tobias Snyder. (*Id.* ¶ 9, Ex. G.)

## ARGUMENT

### I. LEGAL STANDARD.

To obtain a protective order, the party resisting discovery or seeking limitations must "show good cause for its issuance," and "must make a clear showing of a particular and specific need for the order." *Nutratech, Inc. v. Syntech (SSPF) Int'l, Inc.*, 242 F.R.D. 552, 554 (C.D. Cal. 2007). "In determining good cause a court 'must balance the requesting party's need for information against the injury that might result if uncontrolled disclosure is compelled.'" *Geller v. von Hagens*, 278 F.R.D. 572, 575 (S.D. Cal. 2011) (citation omitted).

"[A] properly asserted claim of privilege is good cause for protective order." *In re Remec, Inc. Sec. Litig.*, No. 04-CV-1948 MMA (AJB), 2009 WL 10673008, at *5 fn. 7 (S.D. Cal. Feb. 20, 2009) (protection of materials subject to work-product protection provided good cause to enter protective order); *see also Doublevision Ent., LLC v. Navigators Specialty Ins. Co.*, No. C 14-02848 WHA, 2015 WL 370111, at *2 (N.D. Cal. Jan. 28, 2015) ("Privilege may establish good cause."); *Acer Inc. v. Tech. Properties Ltd.*, No. C 08-00877 JF HRL, 2010 WL 4807101, at *4 (N.D. Cal. Nov. 19, 2010) (prompt assertion of attorney-client privilege over inadvertently

produced documents established good cause for protective order requiring destruction and return of documents).

### II. THE COURT CANNOT ORDER THE *IN CAMERA* REVIEW OF PRIVILEGED MATERIALS ABSENT A THRESHOLD SHOWING BY GIBSON DUNN THAT THE MATERIALS TO BE EXAMINED ARE SUBJECT TO AN EXCEPTION.

The attorney-client privilege is "arguably the most fundamental of the common law privileges recognized under" the rules of evidence. *In re Napster, Inc. Copyright Litig*., 479 F.3d 1078, 1090 (9th Cir. 2007). The purpose of the privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). The privilege recognizes that "sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client." *Id*. A court's authority to conduct *in camera* review of privileged materials does not "authoriz[e] . . . indiscriminate judicial scrutiny of attorney client relationships." *Fed. Sav. & Loan Ins. Corp. v. Ferm*, 909 F.2d 372, 375 (9th Cir. 1990).

One exception to the inviolability of privileged communications is the so-called crime-fraud exception, under which otherwise privileged communications made to further an illegal scheme are not protected from disclosure. *See United States v. Zolin,* 491 U.S. 554, 556 (1989). The exception applies for materials protected by the work-product doctrine as well. *In re Richard Roe, Inc.*, 68 F.3d 38, 40 n.2 (2d Cir. 1995) ("Where, as here, the attorney-client privilege and the work product immunity substantially overlap, we see no reason to apply a different standard for attorney work product.") (citing *In re Grand Jury Proceedings*, 604 F.2d 798, 803 (3d Cir. 1979)). Significantly, the Court has never cited the crime-fraud exception as a justification to invade attorney-client privilege in this case.

In *Zolin*, the Supreme Court held that courts are authorized, at the behest of a party seeking access to another's privileged documents, to review privileged materials *in camera* to determine whether they fall within the crime-fraud exception. 491 U.S. at 569-70. However, the Supreme Court also held that before such an examination takes place, "the party seeking *in camera* review must make some threshold showing that such review is appropriate." *Id*. at 570. It cautioned that

failing to require a threshold showing "would place the policy of protecting open and legitimate disclosure between attorneys and clients at undue risk," and that "[t]here is also reason to be concerned about the possible due process implications of routine use of *in camera* proceedings." *Id.* at 571. It further noted that "[t]here is no reason to permit opponents of the privilege to engage in groundless fishing expeditions, with the district courts as their unwitting (and perhaps unwilling) agents." *Id.* Accordingly, the Supreme Court adopted the standard that ordering *in camera* review to test the existence of the crime-fraud exception "require[s] a showing of a factual basis adequate to support a good faith belief by a reasonable person that *in camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies." *Id*. at 572 (citations and internal quotation marks omitted).

Mere allegations that privileged communications may fall within the exception is insufficient; "an evidentiary threshold must first be met by the party requesting review before the court may exercise its discretion." *In re Grand Jury Investigation*, 974 F.2d 1068, 1072 (9th Cir. 1992). Specifically, there must be "reasonable cause" to believe that the attorneys' services were used to further an ongoing criminal scheme. *In re Grand Jury Proceedings*, 87 F.3d 377, 381 (9th Cir. 1996). "Reasonable cause is more than suspicion but less than a preponderance of evidence." *United States v. Chen*, 99 F.3d 1495, 1503 (9th Cir. 1996).

Here, Gibson Dunn appears to believe that *no* threshold factual showing is necessary before Defendants' fundamental privileges are invaded. Indeed, the Gibson Dunn team does not appear to believe they have *any* obligation to determine that a privileged communication is subject to the crime-fraud exception before reviewing it in the course of the investigation. Instead, Gibson Dunn has declared that *all* privileged communications maintained by Defendants must be produced if they are responsive to one of several broad document requests issued by the Gibson Dunn team—regardless of whether there is any indication that any particular privileged communication was made in furtherance of an illegal scheme. (Weber Decl., Ex. D.) Dr. Golding's memorandum notably contains no allegations of wrongdoing against the Governor's counsel, CDCR's in-house counsel, or the Office of the Attorney General. This is precisely the

type of "groundless fishing expedition" that the Supreme Court has declared to be inappropriate. *Zolin*, 491 U.S. at 571.

Neither the Court nor Gibson Dunn may declare that entire swaths of Defendants' attorney-client privileged communications and attorney work product must be open to inspection, based on unsupported allegations of wrongdoing against Defendants and the mere speculation that privileged communications may be relevant to understanding the facts. Before any privileged or protected document is produced, there must be a threshold showing that *in camera* inspection of the material may reveal the applicability of the crime-fraud exception under the appropriate standard; moreover, *in camera* inspection must reveal that the crime-fraud exception actually exists before the materials can be ordered produced. *Grassmueck v. Ogden Murphy Wallace, P.L.L.C.*, 213 F.R.D. 567, 573 (W.D. Wash. 2003) (even if the court believes the crime-fraud exception applies on the basis of extrinsic evidence, the court must conduct an *in camera* review before ordering production). Without these safeguards, Defendants are under no legal obligation to produce privileged communications, especially given that neither the Court nor Gibson Dunn have concluded that any fraud at all occurred, let alone with the assistance of counsel.

## III. THIS COURT, NOT GIBSON DUNN, MUST PERFORM ANY *IN CAMERA* INSPECTION.

Even if reasonable cause were established to warrant *in camera* inspection of any particular privileged communications between Defendants and their counsel, it would still be inappropriate for these communications to be produced to the Gibson Dunn team in the first instance.

A Rule 706 expert "acts as an advisor to the court on complex scientific, medical, or technical matters." *Armstrong v. Brown*, 768 F.3d 975, 987 (9th Cir. 2014). Such experts are not empowered to act in an adjudicative capacity, and a court may not "delegate to the Rule 706 expert the power unilaterally and conclusively to make findings of fact and conclusions of law." *Id.* However, questions of whether reasonable cause exists to trigger *in camera* review and whether the crime-fraud exception applies are mixed determinations of law and fact reviewable *de novo* by an appellate court. *In re Grand Jury Subpoena 92-1 (SJ)*, 31 F.3d 826, 829 (9th Cir. 1994). Such determinations are precisely the type of adjudicative function that cannot be

delegated to an expert witness.  Indeed, in rejecting Defendants' proposal that the Special Master be tasked with investigating Dr. Golding's allegations, the Court stated that a Special Master's powers "to hold evidentiary proceedings, make proposed findings of fact, and impose sanctions. . . . far exceed those the court requires."  (ECF No. 6032 at 6:15-16.)  Yet the delegation of this responsibility to Gibson Dunn in the first instance is exactly what the firm has proposed.

If Gibson Dunn can satisfy its threshold factual burden that any of the documents it has requested may fall within the crime-fraud exception, it may request an *in camera* inspection by the Court.  Defendants should then be given an opportunity to respond.  If the Court determines that the threshold showing has been met, Defendants will submit the identified documents to the Court for *in camera* inspection.  If the Court determines that the crime-fraud exception does in fact apply as to those documents, the Court can enter such a finding and compel Defendants to produce these documents to Gibson Dunn.  This is the basic due process required by settled law.

## CONCLUSION

The Court cannot order an invasion into the attorney-client privilege and work-product doctrine without due process.  The law requires a specific prophylactic inquiry—the articulation of reasonable cause to believe materials are subject to, for instance, the crime-fraud exception and a finding that the exception actually applies—before privileged or protected materials may be disclosed and substantively used.  Moreover, the Court cannot delegate the authority to make these decisions to the expert appointed under Rule 706.

Accordingly, the Court should enter an order establishing the procedure proposed by Defendants, under which (1) the expert must make a threshold showing as to any privileged document he wishes to examine, (2) the Court must review the document *in camera* to determine if the exception applies, and (3) only after such determination is made, the document may be produced to the expert.

/ / /

/ / /

/ / /

/ / /

Dated: February 14, 2019

Respectfully submitted,

XAVIER BECERRA
Attorney General of California
ADRIANO HRVATIN
Supervising Deputy Attorney General

*/s/ Tobias G. Snyder*
TOBIAS G. SNYDER
Deputy Attorney General
*Attorneys for Defendants*

CF1997CS0003
42119720.docx