UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RALPH COLEMAN, et al.,

Plaintiffs,

v.

EDMUND G. BROWN, JR., et al.,

Defendants.

No. 2:90-cv-0520 KJM DB P

ORDER

On August 9, 2016, the court directed identification and implementation within six months of a comprehensive strategy to achieve successful collaboration between custody and mental health staff at all prisons that house seriously mentally ill inmates. ECF No. 5477 at 7, 9. That six-month period ended February 9, 2017. In his Twenty-Seventh Round Monitoring Report, the Special Master reported that defendants, working through the All-Parties Workgroup (APW) supervised by the Special Master, completed development of the Custody and Mental Health Partnership Plan (CMHPP), including training materials. ECF No. 5779 at 145.[1] However, although the court's August 9, 2016 order should have been complied with shortly after the end of the twenty-seventh monitoring round, the Special Master also reported a reduction in

/////

---

[1] References to page numbers in this order are to the page numbers assigned by the Court's Electronic Case Filing System (ECF) and located at the upper righthand corner of each page.

1

the number of institutions scheduled for initial implementation of the CMHPP, and that no large complex institution has been included in this trial implementation. *Id*. at 106.

In its July 12, 2018 order on the Twenty-Seventh Round Monitoring Report, the court confirmed the critical role of completion of cultural collaboration training to the remedy in this case. *See* ECF No. 5852 at 5. The court signaled its intention "to set new firm timelines for completion of this" training. *Id*. The order directed defendants to file, within sixty days,

> a report with the court updating the status of implementation of the CMHPP at every institution that houses seriously mentally ill inmates. If implementation has not begun at all institutions that house seriously mentally ill inmates by the time the report is due, defendants shall provide an explanation for the failure as to any such institution. The report shall also include a specific timeline for full implementation of the CMHPP at all institutions, including both start and completion dates for implementation. Defendants shall prepare the report in consultation with the Special Master to ensure that the timeline is both achievable and consistent with the court's expectations.

*Id*. at 5-6.

On September 10, 2018, defendants timely filed the required report. ECF No. 5916. Therein, defendants object to the Special Master's notification to them on September 5, 2018, that the CMHPP is deficient because it "does not include training directed at the Correctional Clinical Case Management System level-of-care programs." *Id*. at 2. Defendants contend

> [n]either the Special Master nor Plaintiffs have previously taken this position. Nor were any new facts presented pertaining to Correctional Clinical Care Management System programs that would warrant the expansion of the Partnership Plan beyond its previously agreed-upon boundaries.
>
> Defendants developed the Partnership Plan consistent with the Court's 2016 order and with the Special Master's and Plaintiffs' input and supervision. The purpose of the Partnership Plan was to provide a comprehensive remedy to address the issues raised in the Special Master's Twenty-Sixth Round Monitoring Report. The attached plan is the full response to the August 9, 2016 order. Significant resources have been spent in compliance with the Court's August 9, 2016 order on collaboration. Given the size and complexity of California's correctional system, and the lead times necessary to implement institutional changes, it is difficult for Defendants to accommodate unnecessary last-minute changes to years-long improvement plans—especially when these plans were developed under the supervision and at the direction of the Special

> Master. Absent some showing of harm or that the Plan does not address the issues to be remedied, additional resources should not be expended, and the Plan should be implemented as approved.

*Id.* at 2-3.

Except for a couple of matters that require clarification, as discussed below, the CMHPP is, as far as it goes, the product of significant effort by everyone involved. It does not, however, incorporate plans for training focused on CCCMS programs or explain why CCCMS programs should not be included other than to point to the APW process. The omission of CCCMS programs from the CMHPP must be addressed, and the court provides for as much in this order.

Both the August 9, 2016 order and the July 12, 2018 order expressly apply to every prison institution that houses mentally ill inmates. *See* ECF No. 5477 at 6 ("a collaborative culture between custody and mental health staff in each prison institution that houses mentally ill inmates" is required for a complete Eighth Amendment remedy in this case); *see also* ECF No. 5852 at 5 (requiring defendants to update the court on "the status of implementation of the CMHPP at every institution that houses seriously mentally ill inmates" and to provide an explanation "[i]f implementation has not begun at all institutions that house seriously mentally ill inmates by the time the report is due.").

The August 9, 2016 order required defendants to meet and confer with the Special Master "to discuss, consider, and develop strategies and initiatives to improve collaboration between custody and mental health *at all institutions where mentally ill inmates are housed*." ECF No. 5477 at 9 (emphasis added). That order was based on findings in the Twenty-Sixth Round Monitoring Report of cultural conflicts at all levels of mental health care delivery in several of California's prisons, including CCCMS. *See* ECF No. 5439 at 63-67. One of those institutions, High Desert State Prison (High Desert), was also the subject of a highly critical report from the California Office of Inspector General (OIG) on the cultural problems at that institution. In his Twenty-Sixth Round Monitoring Report, the Special Master specifically described interviews with CCCMS inmates at High Desert that "[c]orrelat[ed] with the OIG's finding of a culture of indifference towards inmates"; specifically, CCCMS "inmates reported that

3

custody staff routinely did not respond to inmate requests for immediate mental health treatment" and of "knowing of other inmates who engaged in self-injurious behavior as a result of these delayed responses to requests for mental health treatment." *Id*. at 63-64.

Given the foregoing, the court does not understand how training at prisons with CCCMS programs was omitted from the CMHPP. As noted above, defendants' explanation for the omission of CCCMS programs from their cultural collaboration training plan is grounded not in any substantive rationale but rather in their assertion that the CMHPP was developed "with the Special Master's and Plaintiffs' input and supervision." ECF No. 5916 at 2. This explanation, which is not disputed, suggests a failure of the APW process that cannot be attributed solely to defendants.

The record in this case makes clear that training of staff for greater collaboration between custody and mental health is a necessary component of complete remediation in this action. *See*, *e.g.*, ECF No. 5477 at 2-3. That requirement extends to all levels of mental health care in the prison system, and the remedy must be available to all staff who interact with mentally ill inmates at least until the cultural conflicts that plague full remediation are resolved.[2]

Given that the CMHPP represents a step forward and its implementation is underway, the court is prepared to adopt the CMHPP as presented, with one comment and several requirements for the next version of the plan, which the plan itself implies is needed. The court below requires a joint status report that will inform the setting of a deadline for submission of a finalized plan. By finalized, the court means that wherever the current CMHPP refers to a specific step to be done, the next version of the plan will include dates certain by which each of those steps has been or will be completed. For example, for purposes of illustration, the next version of the plan should confirm that: all institutions have issued an operating procedure and begun implementation of that procedure, *see* ECF No. 5916 at 8; the format of mental health huddle reports has been finalized, *see id*. at 15; mental health scripts have been developed, *see id*.;

---

[2] Although the question is not before the court now, it appears likely that a durable remedy will require some form of cultural collaboration training for new staff as well as periodic refresher training as needed for particular staff and/or prison institutions.

4

and lesson plans for training have been finalized with information provided on how proactive problem solving has been incentivized, *see id*. at 16. This list is by no means exhaustive. The next version of the plan should also include a report on the issues identified following trial implementation together with the changes needed or made to address those issues. *See id*. at 19.

Additionally, section III(B) of the CMHPP, Quarterly Partnership Round Tables and Training, provides in part:

> Two-hour Custody and Mental Health Partnership round tables and On-The-Job Training will occur quarterly on second and third watch in the EOP, EOP ASU, PSU, MHCB and STRH and LTRH programs. The round tables will occur separately by program to ensure training topics are relative and specific to each program, i.e., General Population EOP staff will meet separately from the staff working in the EOP ASU program. Programs will not schedule the training during the same week. On-The-Job-Training (OJT) will be assigned a BET code and tracked by the local IST Manager. The identified mental health program supervisors (i.e. sergeant and supervising psychologist) will work with the local IST Manager to schedule the program specific OJT Quarterly Round Table trainings consistent with either the existing facility OJT schedule, in lieu of a regularly scheduled staff meeting or training day, or by way of a program modification. Once scheduled, the IST manager will forward the Quarterly Round Table schedule for each program to the Regional Mental Health Compliance Team and the Regional Mental Health Administrator.
>
> . . . .
>
> Attendance
>
> Program line staff (custody, mental health, group nurses and available nursing staff), program supervisors, and sergeants will attend. Lieutenants and captains may attend on a rotational basis.
>
> For mental health staff, attendance at the Quarterly Round Tables is required for social workers, psychologists, psychiatrists and recreation therapists. The mental health program supervisor should determine which staff will attend on second watch and which will attend on third watch. If a mental health staff member is unable to attend the Quarterly Round Table due to leave or because the training was scheduled on a regular day off, that staff member will attend the Quarterly Round Table at another program in their institution, if one is available.
>
> For custody staff, the sergeant will schedule the officers to attend the Quarterly Round Tables On-The-Job Training during the assigned shifts (both 2W and 3W) for the mental health escort and mental health housing unit staff within the identified mental health programs. If an officer is unable to attend the OJT Quarterly Round Table training due to regular day off or approved leave, they may

> also attend the OJT Quarterly Round Table training at another mental
> health program in their institution, if one is available during their
> shift.

*Id*. at 16-17.  There are some asymmetries in the language in this section, which should be clarified in the next version of the CHMPP.  For example, it is unclear whether "Quarterly Round Tables," attendance at which is mandatory for certain mental health staff, are the same or different from "Quarterly Round Tables On-The-Job Training," for which custody staff are to be scheduled by their sergeants.  In addition, this section provides that mental health staff who are unable to attend the Quarterly Round Table for specified reasons "will attend" one in another program, if available, while custody staff "may also attend" OJT Quarterly Round Table Training at another program, if available.  The next version of the CMHPP should include a careful review to ensure the requirements for mental health and custody staff are, as appropriate, symmetrical and clear; to the extent they are not symmetrical, any asymmetry should be explained.

          To meet the requirements of the court's past orders, the CMHPP must also be expanded to provide for training focused at the CCCMS programs and the custody staff who interact with inmates and mental health staff in those programs.  This remaining matter will be referred to the APW for expansion of the plan to include CCCMS.  At the same time, the court notes this matter is set for settlement conference on February 21, 2019, to exhaust discussions "on whether mentally ill inmates can be located in fewer total institutions to address persistent impediments to Program Guide compliance" in several areas, including cultural compliance training.  ECF No. 6050.  To allow settlement discussions to conclude, and in the event those discussions may have a substantial and material impact on the location of mental health programs throughout the prison system, the court will not set a deadline for completion of the expanded CMHPP in this order.  Instead, the parties will be directed to file a joint report with the court on or before March 8, 2019 on the status of settlement discussions as they impact the cultural collaboration aspect of remediation, and specifically, whether the parties anticipate that mental health programs, including CCCMS, EOP and MHCBs will be clustered at fewer prison institutions and, if so, how this clustering should alter the scope of the cultural collaboration

training requirement set by the court's August 9, 2016 order.  The parties also shall in their joint report propose a date for the court's consideration, by which defendants shall provide the next version of the CMHPP to the court.

For the foregoing reasons, IT IS HEREBY ORDERED that:

1.  The Custody and Mental Health Partnership Plan filed September 10, 2018, ECF No. 5916, is approved to the extent consistent with this order.

2.  On or before March 8, 2019, the parties shall report to the court as required by this order.

DATED:  February 20, 2019.

_____
UNITED STATES DISTRICT JUDGE