UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al., | No. 2:90-cv-0520 KJM DB P |
| Plaintiffs, | |
| v. | ORDER |
| GAVIN NEWSOM, et al., | |
| Defendants. | |

As set by court order this matter came on for special status conference on June 10, 2019, to discuss issues briefed by the parties responsive to the substance of the Neutral Expert Report, ECF No. 6147. ECF No. 6135 at 2. Lisa Ells, Esq., Jessica Winter, Esq., and Cara Trapani, Esq. appeared as counsel for plaintiffs. Adriano Hrvatin, Supervising Deputy Attorney General, Elise Thorn, Deputy Attorney General, and Tyler Heath, Deputy Attorney General, appeared as counsel for defendants. Wendy Musell, Esq., appeared as counsel for non-parties Dr. Michael Golding and Dr. Melanie Gonzalez. This order confirms the following matters addressed at hearing, in addition to the attorney-client privileged materials already addressed by the minute order previously issued following hearing.

/////

1

1. The Neutral Expert Report is accepted to the extent it addresses the areas delegated to the neutral expert by the court in its December 14, 2018 and January 8, 2019 orders, ECF Nos. 6033, 6064. The court did not, and does not, delegate any fact finding to the neutral expert.

2. For the issues listed below, evidence identified by the neutral expert, if confirmed through further proceedings and accepted by the court, could establish that misleading data has been presented to the court and/or the Special Master.

    a. Issue B: Redefining "Monthly" to Lengthen the Intervals between Enhanced Outpatient (EOP) Appointments.

    b. Issue D: Counting All Encounters as Evaluations.

    c. Issue E: Reporting of Scheduled and Missed Appointments.

    d. Issue F: Psychiatric Supervisors Acting as Line Staff.

    e. Issue G: Medication Noncompliance.

An evidentiary hearing as to these issues is set for the time of the next quarterly status conference, presently set for September 13, 2019. The purpose of the evidentiary hearing will be to take evidence, as necessary, to determine (a) whether misleading data was presented to the court and/or the Special Master; (b) if misleading data was presented, how and why that happened; and (c) what action is required to correct the record and avoid future submission of misleading data.

In an effort to narrow the issues for hearing, the parties are directed to meet and confer to determine whether they can stipulate to one or more of the underlying facts suggested by the results of the neutral expert's investigation. Any agreed upon facts shall be presented to the court in the form of a joint stipulation, which shall be filed in accordance with the schedule to be proposed by the parties in accordance with paragraph 3, *infra*, and in any event not later than thirty days from the date of this order.

The parties shall also discuss plaintiffs' proposal to require self-certification of data presented by defendants to the court and/or the Special Master going forward and shall report on the results of that discussion in their joint report.

/////

/////

The parties, may, as appropriate, also explore whether they can reach agreement in any of the other areas within the scope of the evidentiary hearing and include any additional agreements in the joint stipulation.

3. After considering footnote 19 of the Neutral Expert Report, the court requested from the neutral expert a list specifically identifying the issues referred to by that footnote. A copy of the list provided by the neutral expert is appended to this order. The parties shall respond in their joint report to the issues identified in this list. The responses are not necessarily limited to, but shall include, whether any of the issues should be explored further by the court, either in an evidentiary hearing or by other process.

4. This court's November 7, 2018 order, ECF No. 5999, is confirmed and extended to provide that defendants shall not retaliate against any person who provided information to the neutral expert during the course of his investigation.

5. Within seven days from the date of this order, the parties shall submit a proposed schedule for submission of the stipulation and joint statement required by paragraph 2 of this order as well as all steps they deem necessary in preparation for the evidentiary hearing. Because Dr. Golding will be a necessary witness at the evidentiary hearing, the parties shall, as necessary, consult with counsel for Dr. Golding in connection with development of the proposed schedule in preparation for the evidentiary hearing.

6. The court anticipates directing at least the following individuals to appear and provide testimony at the evidentiary hearing: Deputy Tebrock; Dr. Ceballos; Dr. Leidner; Dr. Golding; Assistant Deputy Brizendine; and Dr. Eargle. The parties may propose additional witnesses on a schedule to be set in the proposed schedule required by paragraph 5 of this order.

7. The neutral expert has identified several areas in which he believes clarification of policy may be beneficial to implementation of the remedy in this case going forward. In their brief, defendants represent they will work with the Special Master and the plaintiffs in these areas. *See* ECF No. 6169 at 7. The meet and confer process suggested by the neutral expert is not consistent with the Special Master's role in these proceedings. In view of defendants' representation, however, these issues are referred to the Special Master to explore and, as appropriate, resolve in whatever format he deems appropriate. These issues include, but are not necessarily limited to: (a) whether CDCR policy does, or should, require that EOP and Correctional Clinical Case Management System (CCCMS) inmate-patients transferred from one institution

to another be evaluated by a psychiatrist within 14 days of arrival and prior to the initial Interdisciplinary Treatment Team (IDTT) meeting at the new institution; (b) what contacts between inmate-patients and psychiatrists are properly considered evaluations; (c) why all psychiatrist contacts default to confidential contacts in defendants' electronic reporting system and whether that should be corrected; and (d) whether there are any other reports filed with the court that need to be corrected.

8. The global questions raised by the reports from Drs. Golding and Gonzalez and the amicus, Union of American Physicians and Dentists, concerning the respective roles of psychiatrists and psychologists in policy-making and the delivery of mental health care also are referred to the Special Master. He shall assess those issues in conjunction with his monitoring tasks to ensure that both policy-making decisions and delivery of mental health care are consistent with the requirements of the remedy in this case.

IT IS SO ORDERED.

DATED: June 14, 2019.

_____
UNITED STATES DISTRICT JUDGE

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

555 Mission Street
San Francisco, CA 94105-0921
Tel 415.393.8200
www.gibsondunn.com

Charles J. Stevens
Direct: +1 415.393.8391
Fax: +1 415.374.8408
CStevens@gibsondunn.com

June 7, 2019

RE: Neutral Expert Report, *Coleman v. Newsom*, 2:90-cv-000520 KJM-DB (PC)

The following list briefly summarizes issues raised during the investigation that are generally referred to in footnote 19 of the Neutral Expert Report ("We also spoke to current and former members of CDCR's psychiatry team who raised other issues relating to alleged fraud or wrongdoing more generally. While these witnesses appeared credible, we did not investigate the veracity of their claims given that they dealt with historical conduct outside the scope of our seven issues."):

- False testimony allegedly provided to the *Coleman* Court in October 2013 by a CDCR employee relating to the existence of a hospital program at San Quentin Prison. When the SM investigated in 2014, CDCR allegedly took away 10 beds from the Mental Health Crisis Bed to make it look like the program existed.

- Allegedly false statements contained in a suicide report submitted to the Special Master's team.

- Implementation of a "Zero Provider Cancellation Policy" in Fall 2011 to allegedly inflate inmate-patient contact data submitted to the Coleman court and "manipulate perceptions" of the adequacy of staffing.

- A nurse supervisor allegedly altering a doctor's order related to "keep-on-patient" medications in order to "make the dashboard look better."

- Primary clinicians allegedly being permitted to discharge patients from the Mental Health Crisis Bed without a psychiatrist being involved.

- The Utilization Management ("UM") department allegedly being moved from Mental Health to CCHCS Medical in 2015 because of concerns that the data would be manipulated or altered if Mental Health had continued control over it.

- Psychiatrists allegedly not being permitted to speak with Special Master about patient safety concerns, and being disciplined for doing so.

- A psychiatrist allegedly receiving a cease and desist order for comments (s)he made regarding psychologists supervising psychiatrists, which (s)he believed to be retaliation for his/her involvement in the Golding Report.

Beijing • Brussels • Century City • Dallas • Denver • Dubai • Frankfurt • Hong Kong • Houston • London • Los Angeles • Munich
New York • Orange County • Palo Alto • Paris • San Francisco • São Paulo • Singapore • Washington, D.C.