XAVIER BECERRA, State Bar No. 118517
Attorney General of California
ADRIANO HRVATIN, State Bar No. 220909
Supervising Deputy Attorney General
ELISE OWENS THORN, State Bar No. 145931
TYLER V. HEATH, State Bar No. 271478
Deputy Attorneys General
  455 Golden Gate Avenue, Suite 11000
  San Francisco, CA  94102-7004
  Telephone:  (415) 510-3577
  Fax:  (415) 703-5843
  E-mail:  Adriano.Hrvatin@doj.ca.gov
*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **RALPH COLEMAN, et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**GAVIN NEWSOM, et al.,**<br><br>Defendants. | 2:90-cv-00520 KJM-DB (PC)<br><br>**DEFENDANTS' EX PARTE APPLICATION FOR RECONSIDERATION OF THE COURT'S JUNE 10, 2019 ORDER AND RELATED REQUEST TO EXTEND THE JUNE 17, 2019 DEADLINE TO PRODUCE DOCUMENTS IN CAMERA**<br><br>Judge:  The Hon. Kimberly J. Mueller<br><br>**REQUEST FOR EXPEDITED RULING BY JUNE 17, 2019** |

**TO THE COURT, THE PARTIES, AND COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** Defendants apply *ex parte* to this Court for reconsideration of the Court's June 10, 2019 order, which directs Defendants to submit in camera all of the documents listed on Defendants' privilege log provided to the Court's appointed expert, Gibson, Dunn & Crutcher LLP, during its investigation of Dr. Michael Golding's allegations. Defendants take those allegations seriously and are committed to fulfilling their obligations to provide constitutional care to *Coleman* class members.  The Court's order, however, should be reconsidered for two reasons.  First, the Court did not make the predicate findings necessary to invoke the crime-fraud exception to the attorney-client privilege and work-product doctrine.

1

1  Second, and if the Court believes the current record establishes predicate findings required by
2  United States Supreme Court precedent, the Court should identify those predicate findings and
3  then limit the scope of its in camera review to documents that both pre-date October 3, 2018
4  (when Dr. Golding published his allegations) and are relevant to the predicate findings of alleged
5  fraud on the Court.  Defendants make this application under Federal Rules of Civil Procedure 7
6  and 54(b) and this District's Civil Local Rule 230(j).

7       The Court's order provides that "[f]or the reasons stated" at the June 10, 2019 status
8  conference, "and good cause appearing," Defendants shall submit the privileged documents at
9  issue to the Court by June 17, 2019.  (ECF No. 6180.)  But the United States Supreme Court
10 requires a specific factual predicate to warrant even an in camera review of privileged documents.
11 *United States v. Zolin*, 491 U.S. 554, 556 (1989).  Defendants make this application, not to
12 obstruct the Court's analysis of the issues identified in the Court's expert's report, but to request
13 that the Court take the opportunity to conduct a more granular review and establish the factual
14 predicate for the production of specific documents or categories of documents before irreparably
15 intruding into protected communications between Defendants and their counsel.  This request
16 seeks to balance the Court's stated objectives at the June 10, 2019 status conference with
17 Defendants' counsel's legal and ethical obligations to strategize with their clients and rely on the
18 confidentiality of their work product and the principles protecting the deliberative process for the
19 State's highest executive.

20      This application is based on this notice, the supporting memorandum of points and
21 authorities and declaration of counsel, the pleadings, records, and files in this action, and any
22 other matters that may properly come before the Court.  Defendants do not seek a hearing on their
23 motion, but request an expedited decision on the matter by June 17, 2019, under this District's
24 Civil Local Rules 144(e) and 230(g).  An expedited ruling is appropriate because the order
25 requires Defendants to submit all privileged documents to the Court for in camera inspection by
26 June 17, 2019.

27      Alternatively, Defendants move under Federal Rule of Civil Procedure 6 and this District's
28 Civil Local Rule 144(c) for an extension of the June 17, 2019 submission deadline.  An extension

1  would allow the Court an opportunity to establish the requisite factual predicate and then review
2  Defendants' privilege log to identify the specific documents it wishes to review in camera to aid
3  its analysis of the issues identified at the June 10, 2019 conference for further inquiry.

4  Defendants submit a proposed order with this application for the Court's consideration and
5  approval.[1]

## MEMORANDUM OF POINTS AND AUTHORITIES

## STATEMENT

Defendants are eager to make progress in this class action and to fulfill their obligations to provide constitutional care to *Coleman* class members. Toward this end, Defendants have an interest in transparency and full cooperation with the Court, the Court's expert, the Special Master, and Plaintiffs, limited only by applicable privileges that go to the core of confidential communications between clients and counsel and that protect executive deliberative process.

Defendants share the Court's interest, as articulated at the June 10, 2019 status conference, in seeking to "restore trust" among the parties, including by demonstrating to the Court and the parties Defendants' "full acceptance of responsibility" for the constitutional delivery of mental health care to California inmates and for any deficiencies in their data collection or reporting practices. (June 10 Hrg. Tr. 7:14-19.) For these reasons, Defendants requested an opportunity to respond in writing to any order compelling the production of privileged communications (*id*. at 22:6-19)—but in a minute entry issued following the status conference, the Court simply ordered Defendants to submit all the documents listed on their privilege log provided to the Court's expert for the Court's in camera review by June 17, 2019. (ECF No. 6180.)

The requirements for invading the attorney-client privilege are strict, for good reason. The privilege is so fundamental that attorneys have a duty "[t]o maintain inviolate the confidence, and at every peril to himself or herself to preserve the secrets, of his or her client." Cal. Bus. & Prof. Code § 6068. Piercing that privilege not only cannot be undone but also chills parties' ability to share in unfettered deliberation or benefit from the guidance of counsel. *Upjohn Co. v. United*

---

[1] Defendants are concurrently also filing an emergency petition for writ of mandamus in the Ninth Circuit Court of Appeals seeking relief from the Court's June 10, 2019 order.

*States*, 449 U.S. 383, 389 (1981) (holding that the purpose of the attorney-client privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice"); *Costco Wholesale Corp. v. Super. Ct.*, 47 Cal. 4th 725, 739 (2009) ("[T]he fundamental purpose of the attorney-client privilege is the preservation of the confidential relationship between attorney and client, and the primary harm in the discovery of privileged material is the disruption of that relationship[.]" (citations omitted)). These principles apply equally to government litigants and their counsel. *See*, *e.g.*, *United States v. Jicarilla Apache Nation*, 564 U.S. 162, 169 (2011) (explaining how the "objectives of the attorney-client privilege apply to governmental clients"). The only legal basis for piercing the privilege here would be a finding that privileged or protected materials were used to further an illegal scheme relating to Dr. Golding's allegations, and that the materials thus fall within the crime-fraud exception.

But on the current record, the crime-fraud exception's requirements have not been satisfied and the law therefore prevents Defendants from producing any privileged materials. *See* Cal. Bus. & Prof. Code § 6068; *see also Chubb & Son v. Sup. Ct*., 228 Cal. App. 4th 1094, 1104 (2014) (citing to § 6068 and stating that "[b]esides having to claim the attorney-client privilege on a client's behalf, an attorney must maintain the confidential information of present and former clients"). Defendants' concerns are particularly apparent here, where Dr. Golding did not allege any wrongdoing by Defendants' counsel and where no evidence has been produced or cited—notwithstanding an extensive four-month investigation by the Court's expert—indicating that attorney communications were used to further any fraud. Accordingly, Defendants seek reconsideration of the Court's June 10, 2019 order directing Defendants to submit privileged documents to the Court for in camera review. This motion accepts and does not challenge the Court's stated goal of restoring trust among the parties, and Defendants confirm their commitment to expeditious action and cooperation with the parties and Special Master to work to build trust in Defendants' reporting systems, clarify or correct any information that appears to be misleading, and satisfy the constitutional standards at issue in this litigation.

# ARGUMENT

## I. DEFENDANTS MEET THE STANDARD FOR RECONSIDERATION.

"A district court has the inherent power to reconsider or modify its interlocutory orders prior to the entry of judgment." *Smith v. Massachusetts*, 543 U.S. 462, 475 (2005). "Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist. No. 1J, Multnomah Cty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993); *see also* E.D. Civ. L.R. 230(j). "There may also be other, highly unusual, circumstances warranting reconsideration." *Id*. Defendants meet this standard. Reconsideration is appropriate where the Court has not cited to the crime-fraud exception, or any other recognized legal exception, to justify invading the attorney-client privilege and the confidential deliberations that lie at the core of the relationship between attorney and client, including high-ranking State executives in this case.[2]

## II. THE ORDER WARRANTS RECONSIDERATION.

Well-established precedent narrowly frames the circumstances under which a court can set aside the usual protection afforded by the privilege, and those circumstances are not present here. The attorney-client privilege is "arguably the most fundamental of the common law privileges recognized under" the rules of evidence. *In re Napster, Inc. Copyright Litig.*, 479 F.3d 1078, 1090 (9th Cir. 2007). The privilege recognizes that "sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client." *Upjohn*, 449 U.S. at 389. A court's authority to conduct an in camera review of privileged materials does not "authoriz[e] . . . indiscriminate judicial scrutiny of attorney client relationships." *Fed. Sav. & Loan Ins. Corp. v. Ferm*, 909 F.2d 372, 375 (9th Cir. 1990). One exception to the inviolability of privileged communications is the so-called crime-fraud exception, under which otherwise privileged communications made to further an illegal scheme are not protected from disclosure. *United States v. Zolin*, 491 U.S. 554, 556 (1989). The

---

[2] The Court referred to the crime-fraud exception at the June 10, 2019 status conference, but it made no findings on the topic, let alone findings supporting an in camera review of the entirety of the materials listed on Defendants' privilege log. (June 10 Hrg. Tr. 28:3-12.)

5

exception also applies to attorney work product. *In re Richard Roe*, *Inc.*, 68 F.3d 38, 40 n.2 (2d Cir. 1995) ("Where, as here, the attorney-client privilege and the work product immunity substantially overlap, we see no reason to apply a different standard for attorney work product.") (citing *In re Grand Jury Proceedings*, 604 F.2d 798, 803 (3d Cir. 1979)).

In *Zolin*, the Supreme Court held that courts are authorized, at the behest of a party seeking access to another's privileged documents, to review privileged materials in camera to determine whether they fall within the crime-fraud exception. 491 U.S. at 569-70. However, the Supreme Court also held that before such an examination takes place, "the party seeking in camera review must make some threshold showing that such review is appropriate." *Id*. at 570. It cautioned that failing to require a threshold showing "would place the policy of protecting open and legitimate disclosure between attorneys and clients at undue risk," and that "[t]here is also reason to be concerned about the possible due process implications of routine use of in camera proceedings." *Id*. at 571. Accordingly, the Supreme Court adopted the standard that ordering in camera review to test the existence of the crime-fraud exception "require[s] a showing of a factual basis adequate to support a good faith belief by a reasonable person that in camera review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies." *Id*. at 572 (citations and internal quotation marks omitted).

Allegations that privileged communications may fall within the exception are insufficient; "an evidentiary threshold must first be met by the party requesting review before the court may exercise its discretion." *In re Grand Jury Investigation*, 974 F.2d 1068, 1072 (9th Cir. 1992). Specifically, there must be "reasonable cause" to believe that the attorneys' services were used to further an ongoing criminal scheme. *In re Grand Jury Proceedings*, 87 F.3d 377, 381 (9th Cir. 1996). "Reasonable cause is more than suspicion but less than a preponderance of evidence." *United States v. Chen*, 99 F.3d 1495, 1503 (9th Cir. 1996). In a case directly on point, the Ninth Circuit ruled that failing to apply *Zolin* and meet its evidentiary threshold is clear error—but that reconsideration and application of the *Zolin* standard resolves the error. *See United States v. Christensen*, 828 F.3d 763, 798 (9th Cir. 2016) (concluding that "the district court initially erred

in not applying *Zolin*," but affirming the district court once it "recognized its own error and reconsidered its decision under the correct framework").

Here, the Court ordered Defendants to produce all of the documents listed on a privilege log provided to the Court's expert without first finding "a factual basis adequate to support a good faith belief by a reasonable person that *in camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies." *Zolin*, 491 U.S. at 572.  Instead, the Court ordered the production of those documents "to restore trust" among the participants in this lawsuit, to "button[] up" its expert's analysis, and because the Court raised a concern that Defendants may not have "full[y[] accept[ed] responsibility" for non-fraud-related issues identified in the expert's report.  (June 10 Hrg. Tr. 7:6-19; 21:9-13; 28:9-14.)  But those reasons do not satisfy *Zolin*.  To date, no evidence has been identified to establish the factual predicate to trigger the application of the crime-fraud exception and a resulting in camera review of Defendants' privileged materials.  The Court's order requiring production of Defendants' privileged documents for in camera review thus warrants reconsideration.

Furthermore, at the June 10, 2019 status conference, the Court appeared to accept the expert's conclusion that the non-privileged evidence did not indicate fraud to warrant an evidentiary hearing.  (*Id*. at 5:11-15 ("[A]t this point I'm not inclined to engage in further investigation in the form of evidentiary hearings to answer the very specific focused question as to whether or not there was fraud on the Court.").)  The Court separately acknowledged that Defendants had provided a log to document their privilege claims.  (*Id*. at 27.)  But it was unclear as to whether the Court had reviewed the privilege log.  And without reviewing the log and conducting an individualized analysis to determine which documents could potentially suggest fraud, *Zolin*'s threshold requirement to establish "a factual basis adequate to support a good faith belief by a reasonable person that in camera review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies" cannot be met.  491 U.S. at 572.

The purpose of this motion is to request that the Court first establish the necessary factual predicate and then review Defendants' privilege log to identify the specific documents or categories of documents it maintains will assist the Court's evaluation of the issues that may

warrant an evidentiary hearing, without an unnecessary overreach into privileged communications.[3] This subsequent step is particularly important given the breadth of the Court expert's investigation.

In response to the expert's information requests to Defendants alone, which were not governed by the Federal Rules, Defendants worked with the Court's expert to define search terms that resulted in Defendants' production of almost 23,000 pages of documents. (ECF No. 6147 at 13-14 and 101-104.) The information requests were extensive in both scope and timeframe, and Defendants' collection and review efforts identified a body of privilege materials that do not appear to bear on the Court's anticipated inquiry leading up to an evidentiary hearing. For example, Defendants' privilege log includes a significant portion of documents that post-date the Court's filing of Dr. Golding's allegations. (*See*, *e.g.*, CDCR-PRIV 0000003-109.) Those communications thus occurred long after the alleged events described in Dr. Golding's allegations and will not assist the Court's inquiry. Indeed, there can be no factual basis for the Court to review those documents because "attorney-client communications concerning past or completed crimes [or frauds] do not come within the crime-fraud exception to the attorney-client privilege." *In re Grand Jury Subpoena 92-1(SJ)*, 31 F.3d 826, 831 (9th Cir. 1994). Defendants propose that upon the Court's review of Defendants' privilege log and identification of the specific documents relevant to the Court's anticipated inquiry into allegedly misleading statements, Defendants will submit those documents in camera, consistent with Defendants' representations at the June 10, 2019 status conference. (June 10 Hrg. Tr. 21:5-22:19.)

## CONCLUSION

Defendants request that the Court reconsider its June 10, 2019 order based on Supreme Court authority together with counsel's ethical duty to maintain client confidences. Once the Court establishes the factual predicate required under *Zolin* and then identifies the specific

---

[3] Defendants submit in camera with this application a version of their privilege log that is identical to the log provided to the Court's expert, save for Defendants have added an additional column that identifies each document by a unique bates label prefix ("CDCR" for those documents produced to the expert with privileged material redacted, and "CDCR-PRIV" for documents withheld from production on the basis of privilege or attorney work product) to facilitate the Court's review and identification of documents.

8

Defs.' *Ex Parte* App. Reconsideration (2:90-cv-00520 KJM-DB (PC))

documents on Defendants' privilege log relevant to the Court's analysis of potentially misleading statements, Defendants will submit those documents within five business days of the Court's order. In the interim, and to give the Court the opportunity to conduct the requested threshold analysis, Defendants seek relief from the current June 17, 2019 submission deadline.

Dated: June 14, 2019

Respectfully submitted,

XAVIER BECERRA
Attorney General of California

/s/ Adriano Hrvatin

ADRIANO HRVATIN
Supervising Deputy Attorney General
*Attorneys for Defendants*

CF1997CS0003