UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>GAVIN NEWSOM, et al.,<br><br>Defendants. | No. 2:90-cv-0520 KJM DB P<br><br><br><br>ORDER |

The court held a special status conference with the parties on Monday, June 10, 2019, to review proceedings occasioned originally by the report provided in late 2018 by CDCR's top psychiatrist Dr. Golding, a whistleblower. The court set the June 10th status specifically to review next steps in light of the court's receipt of a report from its neutral expert reviewing information related to Dr. Golding's identification of possible fraud upon the court or defendants' provision of misleading information to the court. *See* ECF No. 6147 (Neutral Expert Report). The same day, shortly following the status, the court issued a minute order confirming its tentative decision, as discussed with the parties, that defendants must produce documents they claim as privileged for *in camera* review on or before June 17, 2019. ECF No. 6180; *cf.* ECF No. 6185, 6/10/19 Reporter's Transcript of Proceedings (RT) at 6:18–7:16, 28:15–25. On Friday, June 14, 2019, just before 7 p.m., defendants filed an ex parte request for reconsideration of the

1

court's June 10, 2019 order. ECF No. 6188. Defendants request an opportunity for further briefing of issues they have raised previously with the court, and also seek an extension of the June 17, 2019 deadline for submission of documents. Questioning whether the court previously reviewed the privilege log, defendants request the court review the privilege log and limit the required production to a subset of documents to be identified by the court and that pre-date the time frame in which Dr. Golding provided his report. On Monday, June 17, 2019, plaintiffs responded to defendants' request, ECF No. 6192, and defendants then filed a reply, ECF No. 6195.

After review of the parties' filings and relevant portions of the record, the court DENIES defendants' request for reconsideration. For the reasons explained below, defendants have not provided grounds for reconsideration, in that they present no new argument or evidence, proof of error or intervening change in law justifying deviation from or modification of the court's prior order. *Sch. Dist. No. 1J, Multnomah Cty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993).

### Defendants' Apparent Inconsistent Positions

First, though, the court notes it is perplexed by defendants' position, which at times has signaled a willingness if not a request for the court, rather than the neutral expert for example, to review the documents they claim as privileged. *See, e.g.,* ECF No. 6086 at 3:6–8.[1] When pressed on the point at the June 10th status conference, defendants' counsel responded to the court's expressed assumption that "if the Court ordered the defense to produce that information [covered by the privilege log] *in camera*, that it would," by replying "Defendants will comply with the order, your Honor, yes." 6/10/19 RT at 21:12–15. Even though defendants' counsel also requested a chance for further briefing, defendants have previously and repeatedly articulated their legal position based on the *Zolin* case discussed below. *See, e.g.,* ECF No. 6022 at 11 (defendants' brief in response to proposed appointment of neutral expert); ECF No. 6086 at 8–9 (motion for protective order); *cf.* ECF No. 6188 at 5–7 (again relying on *Zolin* in motion for

---

[1] ECF page cites refer to ECF generated pagination, not internal document pagination.

reconsideration). The court determined it did not require further briefing. Rather, it ordered the production of documents as it had signaled it planned to do, with the expectation defendants would in fact comply as promised.

### Defendants' Privilege Log Raises Questions On Its Face

While the court took care not to disclose the contents of defendants' privilege log during the June 10th status conference, it had reviewed the log. The log raises questions on its face as explained in summary fashion below.

As it told the parties, the court had requested a copy of the privilege log from its neutral expert prior to the status, with the understanding that defendants provided the log rather than produce the documents the log identified to the neutral expert. In other words, but for the identification of the documents on the log, the court understands defendants considered the documents responsive to the neutral expert's request for documents in carrying out his task as directed by the court. *See, e.g.,* ECF No. 6147 at 14 (Neutral Export Report explaining process around documents request in response to which defendants asserted attorney-client privilege). The court's own review of the privilege log prior to the June 10th status conference raised questions in the court's mind about whether every document identified on the log was properly claimed as privileged, primarily for two reasons: (1) the identity of primary correspondents with respect to certain communications, given that the correspondents do not appear to be attorneys based on the court's own familiarity with the record of this case; and (2) the complete absence of any information identifying correspondents for many other documents.[2]

With their request for reconsideration defendants have provided the court alone a new copy of the privilege log, adding only Bates-stamped page numbers, without curing any of the facial questions raised above.

/////

---

[2] Given that the court continues to treat the log itself as privileged at this juncture, the court provides no further information and is not filing the log under seal in connection with this order. The court understands defendants, in connection with their pending petition for writ of mandamus, have offered to provide a copy of the log to the Ninth Circuit Court of Appeals upon request.

3

### No Waiver Effected by *In Camera* Review Currently Planned

Defendants' provision of the documents covered by the privilege log to the court alone, *in camera*, will not effect a waiver of the claim of privilege. *United States v. Zolin*, 491 U.S. 554, 568–69 (1989) ("[D]isclosure of allegedly privileged materials to the district court for the purposes of determining the merits of a privilege claim does not have the legal effect of terminating the privilege"); *Clarke v. Am. Commerce Nat. Bank*, 974 F.2d 127, 129 (9th Cir. 1992) ("A district court may conduct an *in camera* inspection of alleged confidential communications to determine *whether* the attorney-client privilege applies." (emphasis added)). At an earlier stage of the proceedings related to Dr. Golding's report, the court sought to clarify as much in ordering that provision of privileged materials to the court's neutral expert alone would not effect a waiver. *See* 12/14/18 RT, ECF No. 6054 at 25:18–27:4. Confirming this determination, the court denied defendants' request for a protective order. ECF No. 6096. Nonetheless, defendants still declined to provide the privileged materials to the neutral expert. The neutral expert decided not to litigate the question, determining he could respond to the court's direction, and so finalized his report in a timely manner without incurring additional costs. ECF No. 6147 at 14. However, as the court explained during the June 10th status conference, upon review of the parties' positions regarding the neutral expert's report, ECF Nos. 6170 at, *e.g.*, 8–11 (plaintiffs' response to Neutral Expert Report, asserting, *inter alia,* defendants' refusal to provide requested material to neutral expert despite court's denial of protective order "materially restricted scope of report, and therefore the force of its findings and conclusions" (quoting from heading of section I.A. of brief beginning on page 8)); ECF No. 6169 (defendants' response to neutral expert report selectively embracing "findings"[3] of insufficient evidence regarding fraud without acknowledging the neutral expert's caveat based on the defense failure to provide neutral expert complete record he requested), and in consultation with the court's Special Master, it is clear to the court in the exercise of its inherent authority that the questions raised by the assertion

---

[3] As the court also clarified at the June 10th status conference, it has not delegated the making of any factual findings to the neutral expert. 6/10/19 RT at 5:7–10.

4

of privileged materials cannot simply be swept under the rug, if the trust required for this case to move forward constructively is to be restored and the remedy to be effected in full. That remedy, after all, contemplates the court's full confidence in the reliability of the defendants' reporting. *See, e.g.,* ECF No. 5439 at 104–13 (Special Master's 26th Round Monitoring Report describing CQIT tool to be handed off to defendants upon their demonstrating the capacity to administer and reliably collect data using the tool and report it to the court); ECF No. 5477 (order acknowledging role of CQIT in implementation of durable remedy and end of federal court oversight). Given the neutral expert's identification of certain of defendants' actions as seriously misleading, defendants' reporting to the court has been called into doubt. It is in the interest of all concerned that the doubt be expunged, and that complete trust be restored, between and among the parties, between and among defendants and the Special Master and his team, and between and among defendants and the court, as soon as possible.

As the court outlined at the special status, even as the court has determined for now not to probe further whether fraud has been committed on the court, the court will hold a hearing in September 2019 to clarify the nature, extent and causes related to the very troubling and serious information contained in the neutral expert's report suggesting that defendants have taken certain actions that have misled the other parties, the Special Master and the court. *See* ECF No. 6187 at 2 (Order after June 10, 2019 Special Status Conference citing five instances in which neutral expert has identified evidence suggesting misleading data has been presented to the court and/or the Special Master). To prepare for the hearing, to finalize its scope and ensure there is only one hearing that is as focused as possible, the court in its discretion has determined it must assess whether the materials defendants claim as privileged have any bearing on the issues to be resolved. While the court did consider referring review of the privileged materials back to the neutral expert, it has ultimately determined that its own *in camera* review of the materials is the most fair and efficient course, and certainly the most cost-effective for defendants. The *in camera* review the court plans will involve the court only and one law clerk; no work will be performed by nor any information shared with the Special Master or any member of his team.

/////

5

*In camera* review of materials covered by a government claim of privilege is a time-honored method of ensuring the proper balance is struck between the protection properly afforded to legitimately privileged materials and the appropriate disclosure of materials that do not qualify for protection. *Kerr v. U.S. Dist. Ct.*, 426 U.S. 394, 405–06 (1976). Here, if and only if the court first makes a tentative determination through its review that defendants have not asserted proper claims of privilege with respect to certain materials, or that an exception overcomes the privilege, then the court will provide defendants a full opportunity to respond, *in camera*, before ordering any further disclosure. Moreover, the court will allow sufficient time prior to any ordered disclosure for defendants then to seek review.[4] If however the court reviews the material defendants claim is privileged and determines the claim of privilege is validly asserted with no applicable exception, the court will inform the parties and the Special Master of this determination. While the court anticipates such a determination will be respected and accepted by all, and have a cleansing effect on the proceedings, of course plaintiffs could seek review at that point.

<u>*Zolin* and the Crime-Fraud Exception Inapplicable</u>

While defendants assert the court has not complied with procedures required by *United States v. Zolin*, *supra*, the court is not persuaded *Zolin* applies here. In *Zolin*, the Court held that "*in camera* review may be used to determine whether allegedly privileged attorney-client communications fall within the crime-fraud exception." 491 U.S. at 574. However, it also held, "before a district court may engage in *in camera* review at the request of the party opposing the privilege, that party must present evidence sufficient to support a reasonable belief that *in camera* review may yield evidence that establishes the exceptions' applicability." *Id.* at 574–75. The "threshold showing to obtain *in camera* review may be met by using any relevant evidence, lawfully obtained, that has not been adjudicated to be privileged." *Id.* at 575. The factual backdrop to the Court's decision in *Zolin* involved attempts by the Internal Revenue Service

---

[4] In light of the protections provided by *in camera* review, and the court's process as contemplated here, it appears to the court that defendants' seeking of a writ from the Ninth Circuit is at least premature.

(IRS) to investigate tax returns of the founder of the Church of Scientology, in the face of his assertion of the attorney-client privilege. *Id.* at 556. The district court ordered production of certain documents, but upon review of partial transcripts of two tapes found the tapes contained attorney-client privileged information and no indication that "'future fraud or crime is being planned,'" meaning the crime-fraud exception did not overcome the claim of privilege as to those materials. *Id.* at 559. The appellate court affirmed the district court on the inapplicability of the crime-fraud exception, adopting a "rigid independent-evidence requirement" that meant without the IRS's development of a strong record independent of any materials claimed as privileged, the district court had not been required to listen to the tapes in full before rendering its decision. *Id.* at 575. It was the appellate court's imposition of the "rigid independent-evidence" requirement that the Supreme Court reversed in *Zolin*, vacating and remanding for further proceedings. *Id.*

This case is distinguishable from *Zolin* to the extent this court is setting aside the specific question of fraud for now and instead seeking a complete explanation as to how and why misleading data got presented to the court. The court here is not seeking to resolve a dispute between and among parties regarding one party's claim of privilege; rather it is exercising its inherent authority with restraint and discretion in managing this case to achieve an orderly, just and expeditious resolution of the proceedings necessitated by the Golding report. *See, e.g., Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178 (2017); *In re Levander*, 180 F.3d 1114, 1119 (reminder to use "restraint and discretion"); *see also United States v. Hernandez-Escarsega*, 886 F.2d 1560, 1581 (9th Cir. 1989) ("District courts have the inherent power to receive *in camera* evidence and place it under seal in appropriate circumstances."). Moreover, the court is taking steps to ensure that the institution of the court is respected and that the record of the case is purged of any misleading filing. *Mingo v. Sugar Cane Growers Co-op. of Fla.*, 864 F.2d 101, 102 (11th Cir. 1989) ("The district court possesses the inherent power to police its docket." (citing *Link v. Wabash Railroad Co.*, 370 U.S. 626, 629–30 (1962)).[5]

---

[5] This is not the first time the court has needed to take steps to police the docket of this case. *See* ECF No. 4335 (order to defendants to show cause why plaintiffs' motion to strike defense objections containing personal attack on Special Master should not be granted); ECF No.

To the extent *Zolin* has any applicability here, by analogy, the "threshold showing" of "any relevant evidence, lawfully obtained, that has not been adjudicated to be privileged," is satisfied by contents of the neutral expert's report identifying not only evidence of misleading actions by defendants but the potential for undue pressure from leadership. *See, e.g.*, ECF No. 6147 at 28 n.24 (some psychiatrists report "feeling pressured by institutional leadership to keep performance indicators green or to meet certification thresholds"); *id*. at 48 ("Deputy Tebrock sent an email noting that the Governor's office had asked 'to explain in more detail what metrics can be used to show that the care by psychiatry is adequate.'"); *see also id.* at 14 n.11 (taking no position on whether Governor's office "has an aggressive approach towards data bearing on compliance" without access to communications withheld based on defendants' claim of privilege). The court filed the report on the docket of this case only after providing the parties and Dr. Golding a chance to object, with no objections filed. Also, as defendants previously have suggested, to know whether any crime-fraud exception in fact applies, the court needs to examine the privileged documents first. ECF No. 6086 at 3:6–8.

For all the reasons reviewed above, defendants have not satisfied the requirements for reconsideration of the court's order to produce the materials claimed as privileged for *in camera* review.

In accordance with the above, IT IS HEREBY ORDERED that:

1. Defendants' request for reconsideration is denied, except that,
2. In light of the time taken to resolve the request, defendants' request for an extension of the June 17, 2019 deadline is granted to the extent that defendants shall now provide the materials covered by their privilege log to the court *in camera* by 12 noon on June 19, 2019.

DATED: June 18, 2019.

_____
UNITED STATES DISTRICT JUDGE

---

4353 (order discharging order to show cause noting defendants had withdrawn improper objections).