1  DONALD SPECTER – 083925
   STEVEN FAMA – 099641
2  MARGOT MENDELSON – 268583
   PRISON LAW OFFICE
3  1917 Fifth Street
   Berkeley, California  94710-1916
4  Telephone:   (510) 280-2621

5  CLAUDIA CENTER – 158255
   AMERICAN CIVIL LIBERTIES UNION
6  FOUNDATION OF NORTHERN
   CALIFORNIA, INC.
7  39 Drumm Street
   San Francisco, California  94111-4805
8  Telephone:   (415) 621-2493

   MICHAEL W. BIEN – 096891
   JEFFREY L. BORNSTEIN – 099358
   ERNEST GALVAN – 196065
   THOMAS NOLAN – 169692
   LISA ELLS – 243657
   JENNY S. YELIN – 273601
   MICHAEL S. NUNEZ – 280535
   JESSICA WINTER – 294237
   MARC J. SHINN-KRANTZ – 312968
   CARA E. TRAPANI – 313411
   ROSEN BIEN
   GALVAN & GRUNFELD LLP
   101 Mission Street, Sixth Floor
   San Francisco, California  94105-1738
   Telephone:   (415) 433-6830

9  Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>  Plaintiffs,<br><br>  v.<br><br>GAVIN NEWSOM, et al.,<br><br>  Defendants. | Case No. 2:90-CV-00520-KJM-DB<br><br>**PLAINTIFFS' RESPONSE TO AUGUST 14, 2019 ORDER**<br><br>Judge:  Hon. Kimberly J. Mueller |

1   In its August 14, 2019 Order, the Court reviewed the parties' Joint Report regarding
2   evidence identified in the Neutral Expert Report, and ordered the parties to comment on
3   various aspects of its Order.  ECF No. 6242 at 4-13.  Under the Court's direction, Plaintiffs
4   met and conferred with Defendants prior to filing this response. *Id.* at 13.

5   As an initial matter, Plaintiffs request that the Court revisit its determination that
6   neither Dr. Golding nor Dr. Gonzalez will testify at the evidentiary hearing except as
7   rebuttal witnesses based on a showing that their testimony might materially rebut the other
8   witnesses' testimony.  *Id.* at 12.  The Court should assess the credibility of all key
9   witnesses itself, after cross examination as appropriate.  Several witnesses have submitted
10  declarations under oath, as Dr. Golding has, and the evidentiary hearing represents the
11  appropriate process for testing the credibility of all witnesses in combination with, or in
12  contrast to, each other.  Allowing Drs. Golding and Gonzalez—who identified and
13  personally investigated Defendants' misleading data practices at the heart of this dispute—
14  to provide live testimony at the hearing is also necessary to create a complete factual
15  record for appeal, which Defendants have given every indication they intend to pursue.

16  Moreover, per the Court's prior orders, Plaintiffs' ability to assist the Court in
17  ensuring a full and complete record concerning the very troubling issues at the heart of
18  these proceedings has been severely limited throughout this process because Plaintiffs lack
19  access to any documents or witnesses, including Drs. Golding and Gonzalez.  Drs. Golding
20  and Gonzalez are Defendants' employees, and Plaintiffs have not been in contact with
21  either of them in order to avoid inappropriate ex parte communications with a represented
22  party.  Accordingly, Plaintiffs have no ability to identify what material information Drs.
23  Golding and Gonzalez may have to offer to the Court, nor what their rebuttal testimony
24  could or should consist of vis a vis the other CDCR witnesses from whom the Court
25  intends to hear live testimony.  Plaintiffs' lack of access to Drs. Golding and Gonzalez,
26  combined with Plaintiffs' lack of access to any of the information underlying the Neutral
27  Expert Report, severely limits Plaintiffs' ability to make an offer of proof regarding how
28  their testimony might challenge or call into question the other witnesses' testimony.

Plaintiffs therefore maintain that the Court should take testimony from Drs. Golding and Gonzalez as key witnesses in these proceedings, rather than only upon a showing Plaintiffs have little to no ability to make given their status as CDCR employees.

Regarding the specific areas of the August 14, 2019 Order to which the Court ordered the parties to respond, Plaintiffs separately address each issue below.

## I.   Additional Stipulations

The Court ordered the parties "to hold at least one additional meet and confer session to consider whether additional stipulations can be reached, given the guidance provided in this order."  Aug. 14, 2019 Order, ECF No. 6242 at 13.  Plaintiffs did not receive Defendants' proposals for new stipulations until Monday afternoon and evening, August 26, 2019, two days before this filing and nearly three weeks after the August 8, 2019 telephonic status conference at which the Court signaled its intent to provide the parties more time to reach additional stipulations.  Plaintiffs promptly provided responses to Defendants' proposals the next day, and requested that Defendants reconsider Plaintiffs' previous proposed stipulations.  Despite the narrow timeframe, the parties were able to agree on several additional stipulations.  Although Plaintiffs requested that these stipulations be filed jointly, Plaintiffs received no response to that request as of the time of this filing.

The facts stipulated to by the parties are:

### A.   Issue B – Additional Stipulations

1. Nonetheless, because the change in the definition in the business rule impacted the way compliance for timeliness of psychiatry appointments was measured, the Chief Psychiatrist should have been consulted prior to the creation and implementation of the rule change.

2. CDCR acknowledges that it must notify the Special Master and Plaintiffs regarding business rule changes that materially alter the way compliance with Program Guide requirements is measured before such rule changes are implemented.  CDCR will work with the Special Master and Plaintiffs to determine the best way to keep them

informed of relevant updates to the Performance Report.

3. After meeting and conferring with the Special Master and Plaintiffs, CDCR will also issue internal guidance to all CDCR mental health administrators further clarifying which business rule changes must be provided to the Special Master and Plaintiffs before implementation.

## B. Issue E – Additional Stipulation

1. CDCR acknowledges that additional quality control measures must be taken to ensure that indicators and definitions are developed with appropriate consultation and quality control in the future.

* * *

Plaintiffs were also willing to stipulate to the following additional stipulations Defendants proposed, subject to slight modifications, but Defendants refused:

1. CDCR's failure to update the corresponding definition of the indicator to reflect that the indicator did not include all scheduled appointments that were missed gave the impression that the data underlying the indicator, when it was included as a footnote in CDCR's 2018 Staffing Proposal, reflected all missed scheduled appointments. [Defendants were only willing to stipulate to this fact if the word "inadvertent" preceded the word "failure" and the word "unintentionally" proceeded the word "impression."]

2. If a provider sees a patient after an appointment is scheduled, but simply checks the patient in and out in EHRS when the patient is seen without requesting that the original appointment be rescheduled, that original appointment will be measured as having been completed as scheduled. (Neutral Expert's Report at 74.) [Defendants were only willing to stipulate to this fact if the final clause after the second comma was revised to state, "… only one appointment will be recorded and it will be included in the Appointments Seen As Scheduled indicator as a seen appointment."]

3. While CDCR made no representation to the Court or the Special Master that all patient contacts are seen only by line psychiatrists (Neutral Expert's Report at 77), its failure to further assess the extent to which supervisory psychiatrists, as opposed to line

psychiatrists, were providing care meant that its data on the timeliness of patient contacts, as presented in the 2018 Staffing Proposal, was potentially misleading and not by itself sufficient to justify revising the 2009 staffing assumptions.  [Defendants were not willing to agree to Plaintiffs' addition of "was potentially misleading" in the final clause of this fact.]

## II. Witnesses No Longer Employed by CDCR

The Court ordered the parties to "advise the court whether Ms. Tebrock will appear in response to a court order or whether other process is required for her attendance."  Aug. 14, 2019 Order, ECF No. 6242 at 6.  The Court also identified two additional witnesses that Plaintiffs understand are no longer employed by CDCR:  Drs. Kevin Kuich and John Rekart.  *Id.* at 12.[1]  As expressed in Sections VI. and VII., below, Plaintiffs submit that all three of these individuals are necessary witnesses for the evidentiary hearing.

Plaintiffs understand that Defendants will arrange for Ms. Tebrock and Dr. Rekart to appear at the evidentiary hearing as required.

Plaintiffs were recently contacted by Dr. Kuich, who informed them that he had informed the Court that he is not available to appear at the evidentiary hearing on the week of October 15, 2019 due to a previously-planned job-related commitment.  Dr. Kuich advised that he could be available for testimony at another time, but that due to his current commitments and relocation to Hawaii, he requested to provide any testimony through a deposition.  Plaintiffs advised Defendants of Dr. Kuich's availability prior to this filing.

Plaintiffs understand that Dr. Kuich will be in California the week of September 16, 2019.  Plaintiffs therefore request that the Court grant the parties leave to depose Dr. Kuich on the week of September 16, 2019 due to his unavailability to appear to provide live

---

[1] Plaintiffs also understand that Dr. Amy Eargle is no longer employed by CDCR.  While Plaintiffs do not currently object to the Court's determination regarding Dr. Eargle's need to testify at the evidentiary hearing, Plaintiffs reserve the right to revise their witness proposals based on new information that may arise regarding the evidentiary hearing.  *See* Aug. 14, 2019 Order, ECF No. 6242 at 13.

testimony at the October evidentiary hearing. *Accord* July 11, 2019 Order, ECF No. 6216 at 1 (originally authorizing a similar process for Dr. David Leidner).

### III. Additions to Court's Witness List

The Court should deny Defendants' objection to its order adding Deputy Legal Affairs Secretary Rei Onishi to the witness list for the evidentiary hearing. *See* Aug. 14, 2019 Order, ECF No. 6242 at 12. Defendants' position—that the Court should put any questions it has for Mr. Onishi in written interrogatories and accept written responses, or alternatively, conduct any questioning of Mr. Onishi *in camera*, without Plaintiffs' counsel present—is unsupported by public policy and governing precedent in this case. As such, the Court should reject Defendants' request to modify the August 26, 2019 Order anticipating that Mr. Onishi will provide live testimony at the evidentiary hearing.

The Federal Rules of Civil Procedure require that "[a]t trial, the witnesses' testimony must be taken in open court unless a federal statute, the Federal Rules of Evidence, these rules, or other rules adopted by the Supreme Court provide otherwise." Fed. R. Civ. P. 43(a). "[T]he primary purposes of Rule 43(a) are to ensure that the accuracy of witness statements may be tested by cross-examination and to allow the trier of fact to observe the appearance and demeanor of the witnesses." *Saverson v. Levitt*, 162 F.R.D. 407, 408 (D.D.C. 1995). This reasoning applies here. Plaintiffs are unaware of any legitimate grounds for requiring anything less than Mr. Onishi's public oral testimony, and Defendants presented no authority in support of their objection. Allowing Mr. Onishi to provide written answers to the Court's questions would prevent the type of cross-examination necessary to fully probe the credibility of Defendants' explanations as to how and why misleading data was presented to the Court and the Special Master and what steps Defendants are committed to take to ensure similar problems do not recur.

Allowing Mr. Onishi to testify *in camera*, outside the presence of Plaintiffs' counsel, would only flame the ongoing mistrust among the parties and heighten concerns of Defendants' misconduct. Indeed, this is a matter of great public concern regarding actions taken by the highest California governmental officials, including the Governor's

office as a party in this case. As the Supreme Court has recognized, public access to trial "protect[s] the free discussion of governmental affairs," which is essential to the public's ability to "effectively participate in and contribute to our republican system of self-government." *Globe Newspaper Co. v. Super. Ct.*, 457 U.S. 596, 604 (1982) (citations omitted); *see also Craig v. Harney*, 331 U.S. 367, 374 (1947) ("A trial is a public event. What transpires in the court room is public property. … There is no special prerequisite of the judiciary which enables it, as distinguished from other institutions of democratic government, to suppress, edit, or censor events which transpire in proceedings before it."). This precedent marshals heavily in favor of requiring Mr. Onishi to testify publically.

The Ninth Circuit has also expressed a strong presumption in favor of public access to court proceedings. *See Oregonian Publ'g Co. v. United States Dist. Ct.*, 920 F.2d 1462, 1465 (9th Cir. 1990) ("Under the first amendment, the press and the public have a presumed right of access to court proceedings and documents."); *see also* E.D. Cal. L.R. 141.1 ("All information provided to the Court in a specific action is presumptively public."). Indeed, the last time the Court in this case sought to limit public access to an evidentiary hearing, the Ninth Circuit immediately reversed the decision pursuant to a writ of mandamus. *See In re Los Angeles Times Commc'ns LLC*, No. 13-73467, ECF No. 17 at 2 (9th Cir. Oct. 16, 2013) (vacating portions of *Coleman* district court's orders sealing presentation of evidence in use of force trial).

The Court has explained that it anticipates asking Mr. Onishi only "a focused few questions" that "will be designed to not invade any privilege." Aug. 14, 2019 Order, ECF No. 6242 at 12. If Defendants have concerns regarding the Court's questioning, they will have the opportunity to object during the hearing.

For these reasons, the Court should reject Defendants' request allow Mr. Onishi to provide written or sealed testimony.

**IV.   Issue B: Redefining "Monthly" to Lengthen the Intervals between Enhanced Outpatient (EOP) Appointments**

The Court ordered the parties to propose a date certain by which Defendants would

amend three filed pleadings containing misleading data—Defendants' Response to the Special Master's Report on the Status of Mental Health Staffing, ECF No. 5591 (Mar. 30, 2017); the Declaration of Katherine Tebrock in Support of Defendants' Response to the Special Master's Report on the Status of Mental Health Staffing, ECF No. 5591-2 (Mar. 30, 2017); and Defendants' Reply to Plaintiffs' Objections and Request for Additional Relief Re: the Special Master's Report on the Status of Mental Health Staffing, ECF No. 5601 (Apr. 13, 2017). Aug. 14, 2019 Order, ECF No. 6242 at 5. Defendants have represented that they believe they can correct the EOP routine timely psychiatry contact data in these documents within thirty days. Accordingly, Plaintiffs propose **September 27, 2019** as the deadline for Defendants to correct ECF Nos. 5591, 5591-2, and 5601.

The Court also ordered the parties to propose a date certain by which Defendants would amend their December 2016, January 2017, February 2017, March 2017, and April 2017 ASU EOP Hub self-certification letters, which contained misleading data. Aug. 14, 2019 Order, ECF No. 6242 at 6. On the day this filing was due, Defendants represented, for the first time, that they discovered the data included in these letters were <u>not</u> generated using the erroneous business rule, and therefore these documents allegedly do not need to be corrected. Defendants provided no further information or documentation to substantiate this claim. Plaintiffs therefore lack the information necessary to verify Defendants' position. The Court previously rejected Defendants' argument that they should not have to correct these letters due to their "purported immateriality." *See id.* The Court held that Defendants have an "obligation to correct the record, which must satisfy the highest levels of integrity." *Id.* The Court should not revisit its order based simply on Defendants' bare and unverifiable assertion that the data contained in the December 2016 through April 2017 ASU EOP Hub certification letters is untainted by the 2016 business rule change. Accordingly, Plaintiffs propose that Defendants be required to amend these letters within thirty days, or by **September 27, 2019**.

**V.    Issue D: Counting All Encounters as Evaluations**

The Court accepted the parties' stipulation "that defendants included data on

Timely Psychiatry Contacts based on the erroneous interpretation of the Program Guide requirements in several documents provided to the Special Master and/or filed in this action." Aug. 14, 2019 Order, ECF No. 6242 at 6. The Court ordered Defendants to "propose a date certain by which corrected documents will be provided to the Special Master and filed with the court as necessary to correct the record." *Id.* Those documents are:

- ECF No. 5741-2 at 9-10;
- ECF No. 5841-2 at 4 n.5, 9, 14, 16, 31-33;
- ECF No. 5841-3 at 2;
- ECF No. 5922 at 15, 21;
- ECF No. 5879 at 17;
- ECF No. 5879-4 at 4;
- ECF No. 5591 at 14;
- ECF No. 5591-2 ¶¶ 8 & 10, and at ECF page 9;
- ECF No. 5601 at 8-9;
- documents provided to Special Master and Plaintiffs in connection with the Twenty-Sixth and Twenty-Seventh monitoring rounds;
- documents provided to Special Master and Plaintiffs in connection with Defendants' CQI monitoring tours and in Defendants' draft CQI reports;
- Defendants' monthly ASU EOP Hub and PSU certification letters, which were provided to the Special Master and Plaintiffs; and
- "Exhibit I – HDSP Performance Report" to Defendants' June 5, 2018 Clustering proposal, which was provided to the Special Master and Plaintiffs.

*See* Joint Report, ECF No. 6226 at 12-13.

On the day this filing was due, Defendants represented, for the first time, that they believe it is not possible to retroactively correct the data in these filings. Defendants represented their intention to propose an alternative solution to the Court in their response to the August 14, 2019 Order, but did not provide any details to Plaintiffs. Accordingly,

Plaintiffs have no way to evaluate Defendants' position. As the Court ordered, the record in this case "must satisfy the highest levels of integrity." Aug. 14, 2019 Order, ECF No. 6242 at 6. Even if the Court agrees with Defendants that it is impossible to retroactively correct this data—and it should not, as there is no evidence to support Defendants' position—Defendants must at the very least be required to strike each reference to Timely Psychiatry Contact data in the aforementioned filings and documents, and supplement each of them with an acknowledgement that that data was based on Defendants' "erroneous interpretation" of the Program Guide. *See id.* at 8.

## VI. Issue E: Reporting of Scheduled and Missed Appointments

### A. Correcting Misleading Data in the Record

The Court ordered the parties to propose a date certain by which Defendants would amend the Joint Status Report Re: June 28, 2018 Status Conference, ECF No. 5841, which contained misleading data in a footnote to Defendants' 2018 Staffing Proposal appended as Exhibit 2 to that filing. Aug. 14, 2019 Order, ECF No. 6242 at 9 (citing ECF No. 5841-2 at 4 n.5). The Court also ordered the parties to propose "a date certain by which the relevant definitions and methodologies [regarding the Appointments Seen as Scheduled indicator] will be reviewed and, as necessary, corrected." Aug. 14, 2019 Order, ECF No. 6242 at 9. Defendants have represented that they believe they can modify and refile their 2018 Staffing Proposal within thirty days. Accordingly, Plaintiffs propose **September 27, 2019** as the deadline for Defendants to correct ECF No. 5841-2.

### B. Persons Most Knowledgeable to Provide Testimony on Issue E

The Court ordered the parties to identify:

> a person or persons most knowledgeable of why and how the Appointments Seen as Scheduled indicator was developed incorrectly and in the absence of consultation with Dr. Golding or other quality control measures and what steps defendants plan to take to ensure indicators and definitions are developed with appropriate consultation and quality control in the future.

Aug. 14, 2019 Order, ECF No. 6242 at 9. Plaintiffs agree with Defendants that David Leidner and Laura Ceballos are necessary witnesses as to these issues. Additionally,

Katherine Tebrock, John Rekart, Kevin Kuich, and Eureka Daye should be required to provide testimony.

<u>Katherine Tebrock</u>. As the former Deputy Director of CDCR's Statewide Mental Health Program, Ms. Tebrock can provide testimony as to why Defendants did not consult Dr. Golding or institute other quality control measures in developing the Appointments Seen as Scheduled indicator.

<u>John Rekart</u>. Dr. Rekart "was responsible for much of the design and implementation of EHRS," and therefore can provide testimony on how and why the Appointments Seen as Scheduled indicator was developed incorrectly, and the steps required to ensure indicators and definitions are developed accurately moving forward. *See* Neutral Expert Report, ECF No. 6147 at 17.

<u>Kevin Kuich</u>. Dr. Kuich was the primary headquarters psychiatrist involved in developing and rolling out the EHRS. He worked with Dr. Golding on "the development of the Mental Health components of the EHRS, including configuration of psychiatry forms, orders, and notes" and "took the lead for psychiatry in assisting with the EHRS rollout from about 2015 to 2017." *See id.* at 18, App'x C at 106-07. Dr. Kuich's work on the EHRS and his appointment to Chief of Telepsychiatry in late 2017 coincides with the time the definition of the Appointments Seen as Scheduled indicator was incorrect— "between approximately 2016 and October 2018." *Id.* at 75, App'x C at 107. The Neutral Expert identified evidence that Dr. Kuich attended numerous meetings with CDCR's Mental Health Leadership during this time, and became concerned that Mental Health Leadership did not permit him and Dr. Golding to release psychiatry-specific revisions in the EHRS, or conduct updated training. *See, e.g.*, *id.* at 19, 33 n.26, 61 n.46, 77. Accordingly, he will be able to provide insight into why Dr. Golding and other members of the psychiatry team were not consulted in the development of the Appointments Seen as Scheduled indicator.

<u>Eureka Daye</u>. Ms. Daye is the acting Deputy Director of CDCR's Statewide Mental Health Program. Although not previously identified as a potential witness, Ms. Daye is in

the best position to provide testimony as to what steps Defendants plan to take to ensure appropriate quality control in the future. *See* Aug. 14, 2019 Order, ECF No. 6242 at 9.

**VII.   Issue F: Psychiatric Supervisors Acting as Line Staff**

The Court ordered the parties to identify the person or persons in a position to know:

> (1) why defendants did not disclose in their 2018 Staffing Proposal whether, and to what extent, the reporting of data related to average frequency of patient contacts did not disclose the use of supervisory psychiatrists to complete caseload contacts with patients; and (2) to what extent defendants knowingly relied on active participation of supervisory psychiatrists in performing the duties of line psychiatrists both in defendants' 2018 Staffing Proposal and in supporting their representation that, if adopted, the 2018 Staffing Proposal would bring defendants into compliance with the October 2017 staffing order.

Aug. 14, 2019 Order, ECF No. 6242 at 10.

Plaintiffs agree with Defendants that Angela Ponciano is a necessary witness as to these issues. But the Neutral Expert did not fully credit Ms. Ponciano's ad hoc data analysis regarding psychiatric supervisors performing line staff functions, which she would presumably seek to introduce at the hearing. *See* Neutral Expert Report, ECF No. 6147 at 82. Accordingly, additional witnesses are necessary to shed light on these issues and address the Court's questions. Katherine Tebrock, Brittany Brizendine, Laura Ceballos, and Kevin Kuich are well-positioned to provide additional information and should be required to testify.

Katherine Tebrock. Ms. Tebrock was Defendants' highest-level decisionmaker during the development of the 2018 Staffing Proposal. She was in frequent contact with the Special Master team at that time, and attended and spoke at essentially every workgroup call in 2017 and 2018, including presenting much of Defendants' proposal. The Neutral Expert identified evidence that Drs. Golding and Kuich raised their concerns over the frequency of psychiatric supervisors performing direct patient care duties to Ms. Tebrock and others (including Brittany Brizendine) at the time Defendants were developing and presenting their proposal. *Id*. at 77.

Brittany Brizendine. Ms. Brizendine is the Assistant Deputy Director of CDCR's

Statewide Mental Health Program. She attended many of the workgroup calls devoted to discussing Defendants' 2018 Staffing Proposal, and, according to the evidence identified by the Neutral Expert, may have been aware of these issues during the time Defendants were developing and presenting their proposal. *See id.* at 77.

Laura Ceballos. According to evidence identified in the Neutral Expert Report, Ms. Ceballos would be able to provide testimony regarding Defendants' tracking of the number of hours that supervising psychiatrists spend providing direct care to patients. *Id.* at 80.

Kevin Kuich. Dr. Kuich worked as a staff psychiatrist, then as a senior psychiatrist specialist, prior to becoming the Chief of Telepsychiatry in late 2017. *Id.* at App'x C at 106-07. He also played a role in developing Defendants' 2018 Staffing Proposal. *Id.* at 25. Accordingly, Dr. Kuich has unique insight into the extent to which psychiatry supervisors perform line staff duties at the institutional level, and the effect that had on Defendants' proposal to cut a significant portion of its allocated psychiatrist positions. According to the evidence identified by the Neutral Expert, Dr. Kuich raised this issue in a meeting with Mental Health Leadership, including Ms. Tebrock and Ms. Brizendine, in April 2018. *Id.* at 77. He can therefore be expected to corroborate Dr. Golding's allegations that Ms. Tebrock, Ms. Brizendine, and other headquarters staff were aware of the potentially misleading nature of Defendants' representations that it needed fewer psychiatrists, given the extent to which patients are seen by psychiatric supervisors, not line staff. *Id*.

**VIII.  Timing of Evidentiary Hearing and Further Quarterly Status Conference**

The Court ordered the parties to present their views on the Court's revised schedule leading up to the evidentiary hearing. Aug. 14, 2019 Order, ECF No. 6242 at 13. As noted in the parties' recently-filed Stipulation and Proposed Order for Relief from Evidentiary Hearing Deadlines, Plaintiffs do not object to continuing the evidentiary hearing to the week of October 15, 2019, or to the Court conducting a regular quarterly status conference on September 13, 2019. ECF No. 6248 at 2. Plaintiffs do not object to the Court's proposed deadline of September 5, 2019 for the parties to submit any agenda

items for the quarterly status conference.  *See* Aug. 14, 2019 Order, ECF No. 6242 at 13.

## IX. Plaintiffs' Proposed New Pre-Hearing Deadlines

The Court ordered the parties to "meet and confer and propose new pre-hearing deadlines in their next set of filings related to the evidentiary hearing."  Aug. 26, 2019 Order, ECF No. 6252 at 3.  The pre-hearing deadlines Plaintiffs propose are:

- **September 24, 2019:** Last day for parties to exchange evidentiary exhibits they intend to offer at the hearing
- **October 1, 2019:** Last day for parties to exchange any demonstrative exhibits they intend to offer at the hearing.
- **October 8, 2019:** Last day for parties to file a joint list of exhibits to be presented at the hearing.

Plaintiffs shared these proposed deadlines with Defendants prior to this filing, but Defendants were not willing to stipulate to any deadlines at all.  Instead, Defendants presented their position that it is premature to propose new deadlines.  Plaintiffs disagree, as the August 26, 2019 Order required the parties to propose new deadlines "*in their next set of filings*."  *Id.* (emphasis added).  Accordingly, Plaintiffs request that the Court set the above-proposed deadlines in advance of the evidentiary hearing.  The parties would be able to request a modification of these deadlines if the need arises.

DATED:  August 28, 2019              Respectfully submitted,

ROSEN BIEN GALVAN & GRUNFELD LLP

By: */s/ Cara E. Trapani*
    Cara E. Trapani

Attorneys for Plaintiffs