# EXHIBIT A

# COMPILATION OF THE PARTIES' STIPULATED FACTS AND DEFENDANTS' PROPOSED STIPULATIONS THAT WERE REJECTED BY PLAINTIFFS

## ISSUE B: REDEFINING "MONTHLY"

1. **Stipulated Fact:** The Program Guide states that a psychiatrist shall evaluate each Enhanced Outpatient Program (EOP) inmate-patient "at least monthly to address psychiatric medication issues." (Program Guide at 12-4-9; Neutral Expert Report at 33.)

2. **Stipulated Fact:** The Program Guide does not define the term "monthly." (Neutral Expert Report at 44.)

3. **Stipulated Fact:** The Special Master referenced monitoring whether EOP inmates prescribed psychotropic medications were seen by psychiatrist "every 30 days" in his Twenty-Fourth, Twenty-Fifth, and Twenty-Sixth round monitoring reports. (*See, e.g.*, ECF No. 5439 at 309, 392; ECF No. 4298 at 188, 372; ECF No. 4205 at 229; *see also* Neutral Expert Report at 43.) The Court adopted these reports. (*See* ECF Nos. 5477; 4361; 4232.)

4. *Defendants' Proposed Stipulation: Redefining the term "monthly" when measuring compliance with timely psychiatry contacts was first raised on November 2, 2015 by a medication administrator at the California Health Care Facility at the request of two CDCR psychiatrists. (Neutral Expert Report at 45.) When the psychiatrists attended a webinar hosted by Dr. Leidner to discuss the issue, he instructed them to raise the issue with Dr. Golding. (Id.) On February 25, 2016, the psychiatrists e-mailed Dr. Golding and asked to substitute the 30-day rule with a "monthly" rule to "help ease psychiatrists' tracking issues, reduce staffing needs, help psychiatrists manage their own outpatient caseloads and other issues." (Id. at 46.)*

5. *Defendants' Proposed Stipulation: The medication administrator at the California Health Care Facility raised the issue again in November and December of 2016. (Id.)*

6. *Defendants' Proposed Stipulation: On December 5, 2016, the medication administrator submitted a request on behalf of psychiatry that CDCR's data quality management team for the Statewide Mental Health Program change the definition of the term "monthly" in the business rule for the Performance Report indicator measuring timely compliance with EOP*

routine psychiatric appointments from 30 days to once every calendar month, to never exceed 45 days between appointments. (Id. at 45-46.)

7. **Stipulated Fact:** In December 2016, CDCR modified its business rule for measuring the timeliness of psychiatry appointments for EOP patients.

8. **Stipulated Fact:** Prior to the rule change in December 2016, CDCR used 30 days as the interval to measure compliance with the Program Guide requirement that EOP patients have "monthly" psychiatric evaluations. (Neutral Expert Report. at 45.)

9. *Defendants' Proposed Stipulation:* Under the revised rule, timely compliance continued to require at least one appointment every calendar month, without exception. (Id. at 43, 45-46.)

10. *Defendants' Proposed Stipulation:* Because Dr. Ceballos believed that the methodology was consistent with the Program Guide rule requiring "monthly" psychiatry contacts for EOP patients, she did not believe that the rule change was a change in policy.

11. *Defendants' Proposed Stipulation:* There was no release note for the change since release notes were not being issued at that time. (Neutral Expert Report at 46.)

12. **Stipulated Fact:** No headquarters psychiatrist was consulted before the rule change to the definition of "monthly" was implemented in December 2016. (*Id.* at 44.)

13. *Defendants' Proposed Stipulation:* In December 2016, when CDCR changed the definition in the business rule, there was no established process or practice in place to notify the Chief Psychiatrist before a business rule was changed.

***14.*** ***Defendants' Proposed Stipulation:*** *Instead, the rule change was announced at two statewide Management Reporting webinars, one on December 7, 2016 and one on December 8, 2016, and also appeared in the Compliance Rules Report for the entire time it was in effect. The Compliance Rules Report was viewable both directly and through links from the Performance Report to any staff who had access to the Performance Report.*

15. **Stipulated Fact:** Nonetheless, because the change in the definition in the business rule impacted the way compliance for timeliness of psychiatry appointments was measured, the

Chief Psychiatrist should have been consulted prior to the creation and implementation of the rule change.

16. ***Defendants' Proposed Stipulation:*** *The change in the definition of the term "monthly" in the business rule for the Performance Report indicator measuring timely compliance with EOP routine psychiatric appointments was not reported to the Special Master or the Court because CDCR mental health administrators believed the business rule change was consistent with the Program Guide's requirement that each EOP inmate-patient be evaluated "at least monthly to address psychiatric medication issues." (Neutral Expert Report. at 45.)*

17. ***Defendants' Proposed Stipulation:*** *The decision to implement the business rule change without notifying the Special Master resulted in part from the lack of any criteria for determining what types of business rule changes should be provided to the Special Master; and the lack of a regular process for providing business rule changes to the Special Master.*

18. **Stipulated Fact:** CDCR representatives who implemented the business rule change, including Dr. Ceballos (who oversees CDCR's Mental Health Quality Management team), were regularly in contact with the Special Master, including meeting frequently with the parties during the All-Parties Workgroups, during the time that the change was made and then reversed. (*Neutral Expert Report* at 44.)

19. **Stipulated Fact:** In March 2017, Dr. Michael Golding, a headquarter's Chief Psychiatrist, raised concerns with Dr. David Leidner and Dr. Ceballos regarding increased compliance rates. (*Id.* at 46.) On March 22, 2017 and April 12, 2017, Dr. Golding requested that the rule measuring compliance be changed back to "every 30 days." On April 13, 2017, CDCR agreed to change the rule back. (*Id.* at 48.) Dr. Golding insisted to Dr. Ceballos that the rule change should have been reported to the Court. (*Id.* at 46.) Dr. Ceballos disagreed with Dr. Golding and stated that CDCR did not need to inform the Court about every change, but only "major" changes that have a "significant impact." (*Id.* at 46-47.)

20. **Stipulated Fact:** On April 24, 2017, CDCR reinstated the prior definition of the term "monthly" in the business rule for the Performance Report indicator measuring timely compliance with EOP routine psychiatric appointments to "within 30 days." (*Id.* at 48.)

21. **Stipulated Fact:** CDCR never notified the Special Master, the Court or the Plaintiffs of the business rule change in December 2016 or the April 2017 change back to 30 days. (*Id.* at 42 and 44.)

22. **Stipulated Fact:** CDCR acknowledges that it must notify the Special Master and Plaintiffs regarding business rule changes that materially alter the way compliance with Program Guide requirements is measured before such rule changes are implemented. CDCR will work with the Special Master and Plaintiffs to determine the best way to keep them informed of relevant updates to the Performance Report.

*23.* **Stipulated Fact:** After meeting and conferring with the Special Master and Plaintiffs, CDCR will also issue internal guidance to all CDCR mental health administrators further clarifying which business rule changes must be provided to the Special Master and Plaintiffs before implementation.

*24.* ***Defendants' Proposed Stipulation:*** *These steps reflect CDCR's commitment to ensure that processes and practices are in place to prevent what happened in December 2016 from happening again and rebuild the parties' trust.*

25. **Stipulated Fact:** On March 30, 2017, Defendants filed a Response to the Special Master's Report on the Status of Mental Health Staffing (ECF No. 5591 at 14), and an accompanying declaration by Katherine Tebrock, Deputy Director of CDCR's Mental Health Program (ECF No. 5591-2 at 4, 9), relying on data reported using the revised business rule. (Neutral Expert Report at 44, 48.) Defendants' April 14, 2017 reply brief in support of their objections (ECF No. 5601 at 8-9) also refers to Performance Report data based on the revised business rule. (Neutral Expert Report at 44.)

26. ***Defendants' Proposed Stipulation:*** *Since April 2017, Defendants have implemented a Mental Health Management Change Committee to ensure all stakeholders, including the Chief*

*Psychiatrist, are informed of requests for Performance Report modifications and that CDCR's psychiatrists are made aware of psychiatry indicator-related requests and have an opportunity to opine on the appropriateness of the proposed change in advance.  (Id. at 49.)*

**ISSUE E:  REPORTING OF SCHEDULED AND MISSED APPOINTMENTS**

1. ***Defendants' Proposed Stipulation:***  *The "Appointments Seen as Scheduled" indicator was developed by CDCR's data quality management team for the Statewide Mental Health Program independent of the Program Guide to measure and track whether inmate-patients housed at CDCR's institutions statewide were being seen by a psychiatrist based on scheduled appointments.  (Neutral Expert Report at 73.)*

2. **Stipulated Fact:**  The "Appointments Seen as Scheduled" indicator does not report any Program Guide requirements.  (*Id.* at 72.)

3. ***Defendants' Proposed Stipulation:***  *The "Treatment Refused" and "Treatment Cancelled" indicators do not reflect or capture any Program Guide requirements.  (Id. at 75.)*

4. ***Defendants' Proposed Stipulation:***  *The cutoffs used to calculate the "Treatment Refused" and "Treatment Cancelled" indicators reflect CDCR's chosen methodology for achieving a meaningful data set that can be utilized to enhance care within the institutions.  (Id.)*

5. ***Defendants' Proposed Stipulation:***  *Defendants have not provided data from the "Treatment Refused" or "Treatment Cancelled" indicators to the Court or the Special Master. (Id.)*

6. ***Defendants' Proposed Stipulation:***  *Defendants did not rely on data from the "Treatment Refused" Performance Report indicator to support their proposal to reduce the number of CCCMS patients on psychiatrists' caseloads as part of Defendants' 2018 Staffing Proposals, which were provided to the Special Master, Plaintiffs, and the Court.  (ECF No. 5841-3 at 2; 5922 at 14.)*

7. **Stipulated Fact:** Tracking the number of treatment hours offered, attended, and refused is an important component of the Special Master's compliance monitoring.  (Neutral Expert Report at 71.)

8. *Defendants' Proposed Stipulation:  During monitoring, the Special Master conducts interviews of staff to determine whether the institutions are offering the required number of hours and did not find any major issues with compliance data.  (Id. at 71.)*

9. **Stipulated Fact:**  In 2016, CDCR changed the "Appointments Seen as Scheduled" indicator methodology—which was defined as including ***all*** scheduled appointments—to include only appointments missed due to factors within CDCR's control.  (*Id.* at 75.)  CDCR excluded from the "Appointments Seen as Scheduled" indicator appointments not seen due to patient refusal or no-shows.  (*Id.* at 70.)  At that time, CDCR did not update the corresponding definition of the indicator to reflect that the indicator did not include all scheduled appointments that were missed.  As a result, data on the rate of patients who missed scheduled appointments CDCR provided to the Special Master, Plaintiffs, and the Court in connection with its 2018 Staffing Proposals (ECF No. 5841-2 at 4 n.5) (and to the Special Master and Plaintiffs as part of its CQI evaluations and draft reports, and in connection with the Twenty-Sixth and Twenty-Seventh monitoring rounds, and in Defendants' June 5, 2018 Clustering Proposal) was described in a manner that did not accurately reflect the indicator's underlying methodology.  (Neutral Expert Report at 75.)

10. *Defendants' Proposed Stipulation:  This change was made as a part of its effort to examine whether the mental health system's management of patients was causing patients to miss appointments.  (Id. at 75.)*

11. *Defendants' Proposed Stipulation:  The methodology was changed to bring CDCR in line with the methodology and definition used by California Correctional Health Care Services (CCHCS), and came at a time when CDCR was aligning its performance improvement work plans and reports with those at CCHCS.*

12. ***Defendants' Proposed Stipulation:***  The "Appointments Seen as Scheduled" indicator includes group, IDTT, and individual contacts provided by mental health staff, across all levels of care.  The majority of appointments included in the "Appointments Seen as Scheduled" indicator are not psychiatry contacts and the measure is not directly related to the provision of psychiatric care.

13. ***Defendants' Proposed Stipulation:***  At the time of the change in 2016, Dr. Ceballos did not inform the Chief Psychiatrist about every methodology change.  Instead, she only consulted with the subject matter expert for the affected discipline.

14. ***Defendants' Proposed Stipulation:***  In April 2017, CDCR implemented a Mental Health Management Change Committee to ensure that all stakeholders, including the Chief Psychiatrist, are informed of requests for Performance Report modifications, and to ensure that CDCR's psychiatrists are made aware of psychiatry indicator-related requests and have an opportunity to opine on the appropriateness of proposed changes.  (Neutral Expert Report at 49.)  The work of that committee was paused when Dr. Golding issued his allegations.

15. ***Defendants' Proposed Stipulation:***  The "Appointments Seen as Scheduled" indicator does include appointments not seen due to scheduling errors in the denominator.

16. ***Defendants' Proposed Stipulation:***  If a provider sees a patient after an appointment is scheduled, but simply checks the patient in and out in EHRS when the patient is seen without requesting that the appointment be rescheduled, only one appointment will be recorded and it will be included in the Appointments Seen As Scheduled indicator as a seen appointment.  (Id. at 74.)

17. ***Defendants' Proposed Stipulation:***  CDCR first learned that the indicator's definition did not reflect the change in the methodology when Dr. Golding submitted his allegations to the Plata Receiver on October 3, 2018.  (Id. at 75.)

18. **Stipulated Fact:**  After reviewing Dr. Golding's allegations on October 3, 2018, Defendants corrected the definition for the "Appointments Seen as Scheduled" indicator to accurately reflect the indicator's methodology.  (*Id.*)

19. ***Defendants' Proposed Stipulation:*** *The reporting of the "Appointments Seen as Scheduled" data without updating the definition was an inadvertent oversight and not intended to mislead the Court or the Special Master.*

20. **Stipulated Fact:** CDCR acknowledges that additional quality control measures must be taken to ensure that indicators and definitions are developed with appropriate consultation and quality control in the future.

21. **Stipulated Fact:** The "Treatment Cancelled" indicator reflects only the number of treatment hours cancelled greater than a certain threshold, not the total number of treatment hours cancelled.  (Neutral Expert Report at 70.)

22. **Stipulated Fact:** The "Treatment Refused" indicator reflects only the number of treatment hours cancelled greater than a patient's refusal of fifty percent of all offered treatment and whose attendance is less than one-half of the threshold of required treatment hours for that patient's level of care and housing setting, not the total number of treatment hours refused.  (*Id.* at 70; ECF No. 6012-3 ¶ 43.)

**ISSUE F:  PSYCHIATRIC SUPERVISORS ACTING AS LINE STAFF**

1. **Stipulated Fact:** CDCR psychiatrists in supervisory roles sometimes see patients. (Neutral Expert Report at 77.)

2. **Stipulated Fact:** The degree to which supervising psychiatrists provide direct patient care varies widely by institution and over time.  (*Id.* at 82.)  CDCR's current EHRS system does not include a function for retrieving data on the number of hours that supervisors spend providing direct care to patients.  (*Id.* at 80.)

3. **Stipulated Fact:** Defendants' Court-ordered 2009 Staffing Plan includes requirements for allocating supervisory psychiatrists separate from the required ratios for line psychiatrists.  (2009 Staffing Plan at 22, 31-32 and Ex. 20.)

4. **Stipulated Fact:** The Program Guide states that supervising psychiatrists may provide services to inmate patients assigned to mental health crisis beds.  (Neutral Expert Report

at 79; Program Guide 12-5-33.)  The Program Guide does not state whether supervising psychiatrists can provide care to patients assigned to any other level of mental health care. (Neutral Expert Report at 79.)

5.   **Stipulated Fact:**  In their 2018 Staffing Proposal, Defendants proposed, inter alia, reducing the required number of staffing positions for psychiatrists in units housing inmates assigned to the CCCMS and EOP levels of care.

6.   **Stipulated Fact:**  Defendants' 2018 Staffing Proposal included data related to the average frequency of patient contacts with psychiatrists (Joint Status Statement, ECF No. 5841-2 at 32-33).  That data included contacts completed by supervising psychiatrists.  Defendants' proposal did not specify what contacts were included in the data, including whether the data included only contacts completed by line staff or also included contacts completed by supervising psychiatrists.  (Neutral Expert Report at 80.)

7.   ***Defendants' Proposed Stipulation:**  Plaintiffs and the Special Master were aware that supervising psychiatrists were occasionally seeing patients. (Neutral Expert Report at 77.) Defendants' representation in their 2018 Staffing Proposal that patients were being seen by psychiatrists necessarily included some treatment by supervising psychiatrists. As a result, Defendants believed that the Special Master and Plaintiffs were aware that the data included contacts completed by supervising psychiatrists, and they did not tell the Special Master or Plaintiffs that the data included contacts completed by supervising psychiatrists. (Id.)*

8.   ***Defendants' Proposed Stipulation:**  When gathering data for the 2018 Staffing Proposal, CDCR relied upon the contact data from the EHRS system, which did not specify whether the provider was a supervisor or a line psychiatrist.  CDCR thus did not consider, let alone evaluate, the degree to which different institutions relied upon supervisory patient contacts to satisfy patient contact requirements.*

9.   ***Defendants' Proposed Stipulation:**  Defendants included data on the frequency and timeliness of patient contacts in their 2018 Staffing Proposal to illustrate to the Special Master that certain staffing assumptions from 2009 were outdated or unreasonable from a systemic*

*perspective. Defendants were not trying to use this data to make a statement regarding the adequacy of care at thinly staffed institutions where supervisors may have had to perform the functions of line staff. Defendants acknowledged at the time, and continue to acknowledge, that they need to fill the vacant positions at those institutions to ensure that patients receive adequate mental health care.*

10. **Defendants' Proposed Stipulation:** *While CDCR made no representation to the Court or the Special Master that all patient contacts are seen only by line psychiatrists (Neutral Expert Report at 77), its failure to further assess the extent to which supervisory psychiatrists, as opposed to line psychiatrists, were providing care meant that its data on the timeliness of patient contacts, as presented in the 2018 Staffing Proposal, was not by itself sufficient to justify revising the 2009 staffing assumptions.*

11. **Defendants' Proposed Stipulation:** *CDCR's Associate Director of Statewide Planning and Policy, Angela Ponciano, conducted a review of the data in response to Dr. Golding's allegations by manually searching the system for appointments associated with the name of each supervisor and chief. Her review of the data reflected that a very small portion of appointments statewide were conducted by supervisors. This suggests that the inclusion of supervisory patient contacts may have had little, if any, material effect on Defendants' statewide numbers. (See Neutral Expert Report at 80-81).*

12. **Stipulated Fact:** Defendants' 2018 Staffing Proposal was filed as an attachment to the parties' June 21, 2018 Joint Status Statement. (*Id*. at 79; *see also* ECF No. 5841.) Defendants filed an updated version of their 2018 Staffing Proposal as an attachment to the parties' September 14, 2018 Joint Status Report. (ECF No. 5922.) Both versions of Defendants' Staffing Proposal included data implicated by this issue. (ECF No. 5841-2 at 4 n.5.)

13. **Stipulated Fact:** Defendants represented to the Court that they expected the 2018 Staffing Proposal, if adopted, to immediately lead to CDCR being at or above the staffing levels required in the Court's June 13, 2002 Order, which would immediately bring CDCR into compliance with the October 10, 2017 Order, ECF No. 5711 at 30. (ECF No. 5922 at 4.)

14. ***Defendants' Proposed Stipulation:*** *Since February 2018, Defendants have filed monthly psychiatry vacancy reports with the Court that report only on vacancies for line staff psychiatrists. This is consistent with the court's order requiring only reporting of vacancies for line staff and the subsequent report template negotiated with the Plaintiffs and Special Master.*