1   XAVIER BECERRA
    Attorney General of California
2   MONICA N. ANDERSON
    Senior Assistant Attorney General
3   ADRIANO HRVATIN
    Supervising Deputy Attorney General
4   ELISE OWENS THORN, State Bar No. 145931
    TYLER V. HEATH, State Bar No. 271478
5   ROBERT W. HENKELS, State Bar No. 255410
    Deputy Attorneys General
6    1300 I Street, Suite 125
     P.O. Box 944255
7    Sacramento, CA 94244-2550
     Telephone: (916) 210-7318
8   Fax: (916) 324-5205
     E-mail: Elise.Thorn@doj.ca.gov
9   Attorneys for Defendants

    ROMAN M. SILBERFELD, State Bar No. 62783
    GLENN A. DANAS, State Bar No. 270317
    ROBINS KAPLAN LLP
     2049 Century Park East, Suite 3400
     Los Angeles, CA 90067-3208
     Telephone: (310) 552-0130
     Fax: (310) 229-5800
     E-mail: RSilberfeld@RobinsKaplan.com
    Special Counsel for Defendants

10              IN THE UNITED STATES DISTRICT COURT

11             FOR THE EASTERN DISTRICT OF CALIFORNIA

12                      SACRAMENTO DIVISION

13

14

15  **RALPH COLEMAN, et al.,**                Case No. 2:90-cv-00520 KJM-DB (PC)

16                            Plaintiffs,     **STIPULATION AND ORDER
                                              APPROVING DESERT INSTITUTIONS**
17       **v.**                               **TRANSFER POLICY ADDENDUM**

18
    **GAVIN NEWSOM, et al.,**
19                                            Judge: The Hon. Kimberly J. Mueller
                              Defendants.
20

21       In March 2019, Defendants proposed a policy to expedite the transfer of inmates housed in

22  desert institutions who have a level-of-care change and need to be included in the Mental Health

23  Services Delivery System (MHSDS), and of *Coleman* class members who are inadvertently

24  transferred to a desert institution.[1] The policy shortens the transfer timeframes set forth in the

25  MHSDS Program Guide. The parties met and conferred nearly every month for six months and

26  negotiated the terms of a policy under the direction of the Special Master through the workgroup

27  _____

28  [1] The desert institutions are Calipatria State Prison, California City Correctional Facility,
    the California Correctional Center, Centinela State Prison, Chuckawalla Valley State Prison, and
    Ironwood State Prison.

                                              1

process.  The final agreed-upon policy, entitled *Desert Institutions Expedited Transfer for Mental Health Services Delivery System Inmates*, was submitted as Exhibit A to the parties' stipulation and proposed order filed on September 12, 2019.  (ECF No. 6279.)

On September 19, 2019, the Special Master's deputy informed the parties that the Court required the parties to provide an addendum to the policy submitted on September 12, 2019, defining the terms "calendar day," "working day," and "business day."  The final agreed-upon definitions are attached as Exhibit A.  The definitions will apply to the *Desert Institutions Expedited Transfer for Mental Health Services Delivery System Inmates* submitted to the Court on September 12, 2019, once the Court approves the policy and definitions.

The Special Master has reviewed and concurs with this stipulation.

**IT IS SO STIPULATED**

Dated:  September 20, 2019

XAVIER BECERRA
Attorney General of California
ADRIANO HRVATIN
Supervising Deputy Attorney General

*Elise Owens Thorn*
ELISE OWENS THORN
Deputy Attorney General
*Attorneys for Defendants*

Dated: September 20, 2019

ROSEN BIEN GALVAN & GRUNFELD LLP

*Lisa Ells*
LISA ELLS
*Attorneys for Plaintiffs*

* * *

ORDER

The court has reviewed the *Desert Institutions Expedited Transfer for Mental Health Services Delivery System* policy and the addendum of definitions, both of which are appended as

1  Exhibit A to this order, as well as both the stipulation of the parties filed September 12, 2019,

2  ECF No. 6279, and the stipulation above.  The stipulation filed September 12, 2019 includes the

3  agreement of the parties, with the concurrence of the Special Master, for defendants to file

4  monthly reports on the transfers of *Coleman* class members out of the California Department of

5  Corrections and Rehabilitation (CDCR) desert institutions, and to end on-site monitoring by the

6  Special Master at those institutions.  The stipulation does not remove these institutions or class

7  members who may be housed there from the jurisdiction of this court.  With these observations,

8  the stipulations filed September 12, 2019, ECF No. 6279, and September 20, 2019, ECF No.

9  6290, and the policy and addendum attached to this order as Exhibit A are APPROVED.

10     **IT IS SO ORDERED.**

11  DATED:  September 26, 2019.

13  UNITED STATES DISTRICT JUDGE

[3419376.1]

**Exhibit A**

# Memorandum

Date:

To:     Associate Directors, Division of Adult Institutions
        Wardens
        Chief Executive Officers
        Chiefs of Mental Health
        Chief Medical Executives
        Classification and Parole Representatives

Subject:  **DESERT INSTITUTIONS EXPEDITED TRANSFER FOR MENTAL HEALTH SERVICES DELIVERY SYSTEM INMATES**

The California Department of Corrections and Rehabilitation (CDCR) remains committed to ensure timely mental health access for all inmates who are included in the Mental Health Services Delivery System (MHSDS).

It is CDCR policy to not transfer inmates in the MHSDS to the following desert institutions: CAL, CAC, CCC, CEN, CVSP and ISP. The purpose of this memorandum is to announce the new transfer policy timelines for those inmates housed in desert institutions who have a level of care change and are then identified as requiring inclusion in the MHSDS. Effective December 1, 2019, inmates housed at desert institutions whose mental health level of care (LOC) changes to Correctional Clinical Case Management System (CCCMS) or Enhanced Outpatient Program (EOP) shall be transferred to a MHSDS designated institution consistent with their case factors within 14 calendar days of the LOC change being reflected in the Electronic Health Record System (EHRS). This memorandum makes no changes to existing Mental Health Crisis Bed transfer timelines.

**14-Day Transfer Process for Desert MHSDS Inmates**

1)   The mental health clinician determines the inmate is appropriate for CCCMS or EOP LOC and updates the LOC in the EHRS. On the same day, the clinician notifies the Classification and Parole Representative (C&PR) or designee of the LOC change.

2)   Within one business day of notification, the C&PR shall coordinate with the Population Management Unit (PMU) for appropriate transfer placement.

3)   PMU, in coordination with the institution, will review the case no later than the next working day. All efforts will be made to facilitate transfer to an institution likely to meet the inmate's case factors which would be appropriate for permanent endorsement. Upon determination of approved placement location, institutional staff shall notify the inmate and facilitate the classification committee.

Associate Directors, Division of Adult Institutions
Wardens
Chief Executive Officers
Chiefs of Mental Health
Classification and Parole Representatives
Page 2

4) PMU will review the Desert MHSDS LOC Change Report daily to identify inmates with a mental health LOC change pending the transfer process in order to ensure all inmates requiring transfer are identified in Step #2.

5) Following committee the C&PR will notify PMU the case is ready for review by a Classification Staff Representative (CSR). If there is casework that needs to be completed the CSR is to endorse the case and the receiving institution will be responsible to complete the casework.

6) Upon determination of an appropriate placement, PMU will notify the Statewide Transportation Unit (STU) and add the inmates to an existing bus schedule. It is the expectation that inmates involved in this process shall normally move via the statewide bus schedule. If the inmate cannot be added to an existing bus schedule, STU will notify the sending institution of the need to facilitate a special transport and ensure transfer within the 14-day transfer timeframe requirement.

7) Ongoing coordination will occur between the C&PR and PMU to ensure the timely transfers.

8) Medical Holds will be addressed in accordance with California Correctional Health Care Services Health Care Department Operations Manual, Chapter 1, Article 2, Section 14, Appendix 1: The Medical Classification Factors, subsection (b)(1). A Temporary Medical Hold is used when a patient requires medically necessary health care services, and it is medically prudent to provide these services at the institutions where the patient is currently housed.

If a patient is out to hospital or on a medical hold the transfer timeframe shall be suspended. As soon as possible, but not to exceed 24 hours after a patient on medical hold or who has identified medical issues that raise concern regarding safety for transport is placed in the mental health program, a joint team of medical and mental health clinicians shall discuss which clinical needs, mental health treatment or medical care, take precedence. If the medical condition is deemed more urgent than the mental health treatment need, a medical hold shall be ordered in accordance with current policy if one is not already in place. Mental health staff shall document the discussion in the electronic healthcare record, including the names and positions of those who participated in the discussion, the date and time the discussion occurred, the determination reached, and the specific rationale for the determination. The relative urgency of the medical and mental health needs, as dictated by the patient's condition, shall be continually monitored by the joint team, and mental health staff shall document in the electronic healthcare record the reasons that the medical need continues to outweigh the mental health need. If resolution of the medical issue delays CDCR's ability to transfer the patient to the mental health program within the transfer timelines, the patient shall be transferred as expeditiously as possible, and no later than 14

Associate Directors, Division of Adult Institutions
Wardens
Chief Executive Officers
Chiefs of Mental Health
Classification and Parole Representatives
Page 3

calendar days after the medical hold is lifted. If a medical hold is removed, the provider removing the hold shall contact the referring mental health clinician and document the communication of removal of the medical hold in a progress note.

The responsible provider for lifting the medical hold will notify the C&PR to ensure expedited transfer.

9) The goal is to have the patient be expeditiously housed at an institution that can meet both the medical needs as well as the mental health needs of the patient. The primary care provider (PCP) shall work towards addressing the reason for medical hold to allow for the patient to be transferred to a more appropriate institution that can address both the patient's medical needs and mental health level of care. The Regional Deputy Medical Executive (DME) and Regional Mental Health Administrator may need to work with their counterparts in another region in an effort to help transfer the care to the institution that can meet both the medical and mental health needs of the patients.

If there is disagreement between the PCP and the mental health clinician regarding the patient's most urgent treatment needs, the parties shall immediately elevate their concerns and recommendations to the Chief Medical Executive (CME) and the Chief of Mental Health (CMH), or their designee's. The CME and CMH shall review the totality of the case and make a determination on the priority treatment needs with the final decision being transmitted to the PCP and mental health clinician no later than 24 hours after escalation of concerns. The primary MH Clinician shall ensure this decision is documented in the EHRS and communicated to necessary stakeholders.

Should the CME and CMH be unable to come to resolution on the primary treatment needs of the patient, they shall elevate the recommendations for final decision to the appropriate Regional DME and Regional Mental Health Administrator (s), or their designees. The Regional DME and Regional Mental Health Administrator, or designee, shall make a determination within 24 hours and ensure the decision is documented in the EHRS and that the CME and CMH are notified. The CME and CMH will make all necessary notifications to ensure the appropriate treatment needs of the patient are being met.

10) Transfers will be consistent with California Code of Regulations, Title 15, Section 3379(d)(1) The sending institution shall, prior to any medical or psychiatric transfer, determine whether the inmate has enemies or might be in danger at the receiving facility, and shall: (A) Inform staff of the receiving facility by telephone prior to the transfer regarding any precautions needed to protect the inmate. (B) Make an alternate institutional transfer arrangement which will not jeopardize the inmate. This requirement shall not delay a transfer past the timeframes in this memorandum.

[3416311.1]

Associate Directors, Division of Adult Institutions
Wardens
Chief Executive Officers
Chiefs of Mental Health
Classification and Parole Representatives
Page 4

11) Any inmate-patient within the MHSDS inadvertently transferred to a desert institution shall be transferred out to an appropriate placement within 72 hours.

In-Service Training Managers shall ensure all Licensed Clinical Social Workers, Psychologists, Correctional Counselors, C&PRs/Assistant C&PRs, Captains, and Associate Wardens receive On-the-Job Training on this expectation, using BET Code 11059945 ("Desert Institutions Expedited Transfer for MHSDS Inmates – OJT"), within 30 days from the date of this memorandum. Wardens shall ensure staff training is completed and submit a proof of practice memorandum, along with a copy of their updated local operating procedure, to their respective mission's Associate Director.

If you have any questions, please contact Dawn Lorey, Associate Warden, Mental Health Compliance Team, at (916) 323-2450, or Dennis Halverson, Chief, Population Management Unit, at (916) 324-7812.


CONNIE GIPSON                                R. STEVEN THARRATT, MD, MPVM, FACP
Director                                     Director, Health Care Operations
Division of Adult Institutions               Statewide Chief Medical Executive

cc:   Jennifer Barretto                      Eureka Daye
      Kelly Mitchell                         Brittany Brizendine
      Dawn Lorey                             Laura Ceballos
      Dennis Halverson                       Angela Ponciano
      John Herrera                           Michael Golding
      Brian Moak                             Regional Deputy Medical Executives
                                             Regional Healthcare Executives
                                             Regional Mental Health Administrators
                                             Chief Physicians & Surgeons

**Addendum to Desert Institutions Expedited Transfer for Mental Health Services Delivery System Inmates**

For purposes of this policy, the following definitions apply:

Calendar Day – a consecutive 24-hour day running from midnight to midnight; all days in a month, including weekends and holidays.  When not otherwise modified, the word "day" as used in this policy means calendar day.

Business Day – any day Monday through Friday, excluding state holidays, between the hours of 8:00 a.m. and 5:00 p.m.   Business day and working day are used interchangeably.