Xavier Becerra, State Bar No. 118517
Attorney General of California
Adriano Hrvatin, State Bar No. 220909
Supervising Deputy Attorney General
Kyle A. Lewis, State Bar No. 201041
Elise Owens Thorn, State Bar No. 145931
Tyler V. Heath, State Bar No. 271478
Robert W. Henkels, State Bar No. 255410
Deputy Attorneys General
 1300 I Street, Suite 125
 P.O. Box 944255
 Sacramento, CA 94244-2550
 Telephone: (916) 210-7325
 Fax: (916) 324-5205
 E-mail: Tyler.Heath@doj.ca.gov
*Attorneys for Defendants*

Roman M. Silberfeld, State Bar No. 62783
Glenn A. Danas, State Bar No. 270317
Robins Kaplan LLP
 2049 Century Park East, Suite 3400
 Los Angeles, CA 90067-3208
 Telephone: (310) 552-0130
 Fax: (310) 229-5800
 E-mail: RSilberfeld@RobinsKaplan.com
*Special Counsel for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **RALPH COLEMAN, et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**GAVIN NEWSOM, et al.,**<br><br>Defendants. | 2:90-cv-00520 KJM-DB (PC)<br><br>**DEFENDANTS' TRIAL BRIEF**<br><br>Judge:   The Hon. Kimberly J. Mueller |

**I.   INTRODUCTION**

The Court's order of September 17, 2019 (ECF No. 6288) requires ten individuals to appear in Court for live evidentiary hearing of unknown length beginning on October 15, 2019. Three of those identified witnesses—Deputy Legal Affairs Secretary Rei Onishi, and two attorneys with CDCR's Office of Legal Affairs, Nicholas Weber and Melissa Bentz—are government attorneys currently serving as Defendants' counsel in this litigation. The three government attorneys lack personal knowledge of nearly any of the facts embraced within the three Issues identified by the Court for the upcoming evidentiary hearing. Moreover, whatever very limited knowledge each of them has regarding the facts underlying the Issues identified by

1

the Court falls within one or more of the privileges described below. Though the Court has indicated in prior orders that its questions will be "designed to not invade any privilege" (*see* ECF No. 6242, at 12:27), it is difficult to envision how this could be done within the scope of the three witnesses' personal knowledge.

Defendants comprise a substantial portion of the executive branch of California's government. And the Court's September 17, 2019 order threatens to intrude on the attorney-client privilege, work product immunity, the deliberative process privilege, and consequently the ability of these agencies and the Governor's Office to evaluate and make legal decisions prospectively and function properly. Defendants therefore request that the Court reconsider the portion of its September 17, 2019 order to the extent it requires testimony from the three government attorneys. Defendants request that the Court refrain from calling Mr. Onishi, Mr. Weber and Ms. Bentz as witnesses in court on October 15, 2019, and instead either submit written questions to each of them, to be answered in writing and under oath, or question each of the government's attorneys *in camera*, outside the presence of Plaintiffs' counsel. At a minimum, Defendants respectfully request that the Court rule on this request and address Defendants' arguments below, in advance of the October 15, 2019 evidentiary hearing.

Finally, Defendants request that Dr. Diana Toche, Undersecretary of Health Care Services at the CDCR, be added to the list of witnesses to be called to testify at the October 15, 2019 hearing. Dr. Toche is in the best position to know how remedial efforts concerning any inaccurate data reporting are being implemented by CDCR; any hearing on the subject of remedial efforts will be incomplete without her testimony.

## II. RELEVANT FACTS

Defendants' Trial Brief follows a branch of this case that began with a report submitted to the *Plata* receiver on October 3, 2018 by Dr. Michael Golding, a Chief Psychiatrist employed by CDCR, entitled "CDCR Mental Health System Report." (ECF No. 5988-1.) Dr. Golding's allegations (which have become known as the "Golding Report"), suggested that Defendants had presented materially misleading data and information to the Special Master and the Court. (*Id.*) Dr. Golding identified several areas of supposedly misleading data in his report. (*Id.*) On

2

Defs.' Trial Brief  (2:90-cv-00520 KJM-DB (PC))

December 14, 2018, the Court appointed Gibson, Dunn & Crutcher as a neutral expert under Federal Rule of Civil Procedure 706 to conduct an independent investigation into certain allegations contained in the Golding Report, focusing on seven specific factual issues. (ECF Nos. 6033 & 6064.)

After conducting a four month-long investigation, on April 22, 2019 the neutral expert submitted its report to the Court. The neutral expert found that some of the reporting practices described in the Golding Report had resulted in inaccurate data being reported, but that the evidence did not establish that CDCR intentionally misled the Court or the Special Master as to any of the seven issues. (ECF No. 6147 at 2.)

The Court issued its order accepting the neutral expert's report on June 14, 2019. (ECF No. 6187.) In it, the Court "accepted" the Golding Report, and followed by inquiring about five issues (of the seven analyzed in the neutral expert's report) relating to data reporting. The five issues identified by the Court in its June 14, 2019 order, were: "Issue B: Redefining 'Monthly' to Lengthen the Intervals between Enhanced Outpatient (EOP) Appointments; Issue D: Counting all Encounters as Evaluations; Issue E: Reporting of Scheduled and Missed Appointments; Issue F: Psychiatric Supervisors Acting as Line Staff; Issue G: Medication Noncompliance." (ECF No. 6187, at 2:8-13.) As to these five issues, the Court stated it believed that further proceedings could "establish that misleading data has been presented to the court and/or the special master." (*Id.* at 2:1-7.) The Court set an evidentiary hearing for September 13, 2019 to determine whether misleading data had been presented to the Court and/or Special Master, if so, to determine "how and why that happened," and what steps should be taken to correct the record and prevent future submissions of misleading data. (*Id.* at lines 16-18.) The Court also named six likely witnesses to be called to testify at the evidentiary hearing, all of whom were CDCR headquarters mental health employees. (*Id.* at 3:18-19 (naming Deputy Director Tebrock, Dr. Ceballos, Dr. Leidner, Dr. Golding, Assistant Deputy Director Brizendine, and Dr. Eargle).)

The Court next addressed the evidentiary hearing in its August 14, 2019 order. (ECF No. 6242.) In this order, the Court explained what aspects of Issues B, E, and F it wanted to examine further at the evidentiary hearing. (*Id.* at 5-6; 9; 10-11). The Court also concluded that Issues D

3

Defs.' Trial Brief  (2:90-cv-00520 KJM-DB (PC))

and G did not need to be addressed at the evidentiary hearing at all. (*Id.* at 6-8; 11.) Thus, the Court narrowed the issues to be covered at the evidentiary hearing to Issues B, E, and F. The Court also added the following witnesses to call at the evidentiary hearing: Dr. Kevin Kuich; Dr. John Rekart; Ms. Angela Ponciano; Dr. Shama Chaiken; and Ms. Julie Kirkman.[1] (*Id.* at 12:21-22.) The Court also, for the first time, and at Plaintiffs' request, added Deputy Legal Affairs Secretary Rei Onishi as a witness for the evidentiary hearing, and noted that "the court's questions will be designed not to invade any privilege." (*Id.* at 12:27-28.) Finally, in its August 14 order, the Court moved the evidentiary hearing from September 13, 2019 to October 15, 2019, and invited responses from the parties by August 28. (*Id.* at 13:8-13.)

Consistent with the Court's August 14, 2019 order, Defendants submitted their response on August 29, 2019. In their submission, Defendants laid out their detailed objections to the Court's order requiring the live testimony of Rei Onishi at the evidentiary hearing. (ECF No. 6257, at 16-24.) Defendants' objections to requiring Mr. Onishi to testify at the upcoming hearing relied on the attorney client privilege, work product immunity, and the deliberative process privilege. (*Id.*) The Court never addressed Defendants' legal arguments or requests to modify the August 14, 2019 order regarding Mr. Onishi.

In its September 17, 2019 order, the court added additional members of Defendants' trial team to the list of witnesses for the in-court examination on October 15, 2019. Specifically, the Court ordered Nicholas Weber and Melissa Bentz, both attorneys with CDCR's Office of Legal Affairs, to appear as witnesses, along with Rei Onishi, and ordered that the three government attorneys be questioned about all three issues being raised at the hearing: Issues B, E and F. (ECF No. 6288, at 3:3-7.)

Finally, in its September 17, 2019 order, the Court stated that it "may also ask questions concerning remedial steps to cure the misrepresentations retrospectively and prospectively, to clarify steps already taken or that the court may consider ordering." (*Id*. at 2:9-11.) The Court also noted that the parties may be permitted to call rebuttal witnesses. (*Id.* at lines 14-15.)

---

[1] The Court also removed Dr. Eargle from the witness list for the evidentiary hearing in its August 14, 2019 order. (ECF No. 6242, at 13:2-4.)

4

Due to the serious invasions of various privileges that are certain to be implicated by the questioning of these three witnesses, and the availability of less intrusive methods for questioning them, Defendants hereby file this Trial Brief. Separately, because Dr. Diana Toche, Undersecretary of Health Care Services at the CDCR, would be the person most knowledgeable with respect to any curative steps, whether retrospective or prospective, Defendants request that the Court add her to the witness list for the evidentiary hearing.

This Trial Brief is timely, per Local Rule 285(a).

### III. ARGUMENT

#### A. THE THREE GOVERNMENT ATTORNEYS SHOULD NOT BE CALLED AS WITNESSES BECAUSE THEY HAVE LITTLE OR NO PERSONAL KNOWLEDGE, AND ANY TESTIMONY THEY COULD PROVIDE WOULD BE PROTECTED BY VARIOUS PRIVILEGES.

##### 1. The Three Government Attorneys Have Little or No Personal Knowledge of the Data-Reporting Issues Identified by the Court's September 17, 2019 Order as Subjects for Their Live Testimony.

As this Court has made clear, the evidentiary hearing is not a "free for all." (ECF No. 6185 at 26:6-8.) The Court has now narrowed the issues to three: Issue B: Redefining 'Monthly' to Lengthen the Intervals between Enhanced Outpatient (EOP) Appointments; Issue E: Reporting of Scheduled and Missed Appointments; and Issue F: Psychiatric Supervisors Acting as Line Staff. (ECF 6288, at 2.) The Court has indicated that the three government attorneys—Deputy Legal Affairs Secretary Rei Onishi, along with two attorneys with CDCR's Office of Legal Affairs, Nicholas Weber and Melissa Bentz—will be questioned and subject to cross-examination by Plaintiffs' counsel, as to all three of these issues.

The Court should reconsider calling any of the three government attorneys as witnesses. Mr. Onishi does not have personal knowledge of facts giving rise to Issues B or E, and he thus would not be a helpful witness for the Court. (*See* Onishi Decl. ¶¶ 4-7.) Mr. Onishi was not involved in any of the policy decisions related either to the change of the "monthly" business rule or the Appointments Seen as Scheduled indicator. (*Id.* at ¶ 7.) He thus lacks personal knowledge regarding whether, or how, data relevant to issues one and two were generated and who was consulted (or not), and his testimony would be unhelpful as to those matters. Furthermore, while

5

Mr. Onishi has some knowledge about the data used in Defendants' 2018 Staffing Proposal, he has very limited personal knowledge relevant to issue F.

Mr. Weber and Ms. Bentz also had no knowledge of Issues B or E prior to the Golding Report being filed. (*See* Weber Decl. at ¶¶ 3-5; Bentz Decl. at ¶¶ 3-4.) Indeed, Ms. Bentz did not even begin working on the *Coleman* action until December of 2017, after the short-lived "monthly" business rule had been implemented. (Bentz Decl. at ¶ 2.)

As for Issue F, Ms. Bentz and Mr. Weber can provide information regarding their discussions with the Special Master's team and Plaintiffs' counsel regarding the staffing proposal after dissemination of the proposal on or about May 17, 2018, including discussions and requests for additional data, and modifications to the proposal resulting from the ongoing discussions and negotiations with the Plaintiffs' counsel. (Weber Decl. at ¶ 6; Bentz Decl. at ¶ 5.)

Any other knowledge Ms. Bentz, Mr. Weber, or Mr. Onishi have regarding the three issues identified by the Court falls within the attorney-client privilege, work product immunity, or deliberative process privilege.

### 2. The Attorney-Client Privilege Is Sacrosanct, and Covers the Three Government Lawyers on the Lone Issue as to Which They Could Conceivably Have Relevant, Personal Knowledge.

In addition to lacking personal knowledge, the very limited testimony that the three government attorneys could conceivably provide as called for by the Court's September 17, 2019 order is protected from disclosure by the attorney-client privilege. Federal common law recognizes a privilege for communications between a client and attorney for the purpose of obtaining legal advice. *Gomez v. Vernon,* 255 F.3d 1118, 1131-32 (9th Cir. 2001). "The attorney-client privilege is the oldest and arguably most fundamental of the common law privileges recognized under Federal Rule of Evidence 501." *In re Napster, Inc. Copyright Litig.*, 479 F.3d 1078, 1090 (9th Cir. 2007), abrogated on other grounds by *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100 (2009). And as the Supreme Court has explicitly stated, this privilege applies equally to government clients. *United States v. Jicarilla Apache Nation,* 564 U.S. 162, 169-70 (2011). Accordingly, the government may invoke the attorney-client privilege in civil

6

Defs.' Trial Brief  (2:90-cv-00520 KJM-DB (PC))

1  litigation to protect confidential communications between government officials and government
2  attorneys. *Id.*

3  Mr. Onishi is an attorney who, as Deputy Legal Affairs Secretary, represents and advises
4  the Governor's Office for the State of California, including on the matters at issue in this lawsuit
5  and with respect to the strategy and details of the litigation itself. (Onishi Decl. ¶¶ 2-3.) As such,
6  the attorney-client privilege applies, and protects any confidential communications between
7  himself and other government officials. *See In re Grand Jury Subpoena*, 909 F.3d 26, 32 (1st Cir.
8  2018) (providing that state attorneys are entitled to invoke attorney-client privilege to shield
9  privileged information from federal subpoena).

10  Mr. Weber and Ms. Bentz are both attorneys in CDCR's Office of Legal Affairs. In that
11  capacity, both Mr. Weber and Ms. Bentz advise the CDCR chiefs, directors and executives on
12  interpreting and following orders issued by this Court in the *Coleman* action. All of this advice is
13  given in order to allow the CDCR, an executive branch agency, to comply with existing Court
14  orders or avoid additional enforcement orders of this Court. (*See* Weber Decl. at ¶ 7; Bentz Decl.
15  at ¶ 6.) Both Mr. Weber and Ms. Bentz work closely with CDCR's mental health, Division of
16  Adult Institutions, and other offices or divisions closely in order to advise on their legal
17  obligations and liability risks. (Weber Decl. at ¶ 8; Bentz Decl. at ¶ 7.) As with Mr. Onishi,
18  confidential communications between Mr. Weber and Ms. Bentz and other government officials
19  are protected under the attorney-client privilege.

20  One exception to the inviolability of privileged communications is the so-called crime-
21  fraud exception, under which otherwise privileged communications made to further an illegal
22  scheme are not protected from disclosure. *See United States v. Zolin*, 491 U.S. 554, 556 (1989).
23  Before the privilege may be breached, the party asserting the privilege is owed procedural and
24  evidentiary safeguards. *See id.* at 572 (setting forth the process and evidentiary standard before in
25  camera review of potentially privileged information); *In re Napster*, 497 F.3d at 1092-95 (setting
26  forth the process and evidentiary standard before disclosure of potentially privileged
27  information). The Court may not review information subject to a claim of privilege, even *in
28  camera*, absent a threshold showing that the privilege does not apply. *See Zolin*, 491 U.S. at 572

7

Defs.' Trial Brief  (2:90-cv-00520 KJM-DB (PC))

(there must be a "factual basis adequate to support a good faith belief by a reasonable person [] that *in camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies"). A court's authority to conduct *in camera* review of privileged materials does not "authoriz[e] . . . indiscriminate judicial scrutiny of attorney client relationships." *Fed. Sav. & Loan Ins. Corp. v. Ferm*, 909 F.2d 372, 375 (9th Cir. 1990).

There has been no such threshold showing in this case. Nor has the Court indicated that it thinks such a threshold showing has been made in connection with any of the three government attorneys or that it believes the crime-fraud exception applies in any way to them. Indeed, in the initial order calling Mr. Onishi to be a witness, the Court stated that "it will not delve further into the possibility of fraud on the court at this time." (ECF No. 6242 at 2, n.1.) And while the Court's proposed order stated that it will only have a "focused few questions" that will be "designed to not invade any privilege" (*id*. at 12:26-28), this reverses the required inquiry by foregoing the State's right to procedural and evidentiary safeguards to ensure that the privilege is not wrongfully invaded. With respect to Mr. Weber and Ms. Bentz, the Court has offered even less, without any acknowledgement in its order mandating their appearance as witnesses as to the application of the attorney-client or other privileges. (ECF No. 6288.) Under the Supreme Court's *Zolin* decision, the Court may not even intrude upon the privilege *in camera* without a threshold evidentiary showing that "the attorney's services were used to further an ongoing criminal scheme," *In re Grand Jury Proceedings*, 87 F.3d 377, 381 (9th Cir. 1996), much less in a hearing in open court. Again, here there has been no such evidentiary showing and the Court itself has specifically indicated it is not "delv[ing] further" into the factual prerequisites for the finding required under *Zolin*.

Invading the privilege under these circumstances would have harmful consequences in the form of a chilling effect on clients—here, the Governor of the State of California and CDCR, an executive agency—being able to rely on counsel for advice. Plaintiffs earlier argued that Mr. Onishi's testimony is necessary to evaluate the Governor's Office's "state of mind" with respect to Dr. Golding's allegations. (ECF No. 6226 at 46.) However, the purpose of the attorney-client privilege is to encourage clients to make full disclosure to their attorneys, recognizing that sound

8

advice depends upon lawyers' being fully informed by the client. *Upjohn Co. v. United States,* 449 U.S. 383, 389 (1981). And it therefore protects not only the giving of professional advice to those who can act on it, but also the giving of information *to the lawyer. Id.* at 390. Accordingly, to the extent that Mr. Onishi can provide any information regarding the Governor's Office's "state of mind," that information lies at the core of what is protected by the attorney-client privilege. *See United States v. Chen,* 99 F.3d 1495, 1500 (9th Cir. 1996) ("This valuable social service of counseling clients and bringing them into compliance with the law cannot be performed effectively if clients are scared to tell their lawyers what they are doing, for fear their lawyers will be turned into government informants.").

It should be emphasized that all three government lawyers have played a key role in this litigation, and provided legal advice to the Governor, members of the Governor's staff, as well as the co-Defendant agencies. Perhaps most importantly, the Governor, members of the Governor's staff, and CDCR chiefs, directors, and executives rely on their ability to seek and obtain candid legal advice from Mr. Onishi, Mr. Weber and Ms. Bentz in performing their duties. Thus, the harm that would follow from improperly invading the attorney-client privilege here is not merely theoretical or abstract; in this case, the ability of the Governor himself to engage in candid and open communications with his attorneys while managing the executive branch of the nation's largest state would be irreparably impaired if his conversations—and the legal advice received— were subject to compelled disclosure. This harm is no less if the ability of heads of major California executive agencies to rely on their in-house lawyers were chilled.

Finally, the fact that Mr. Onishi is a member of the Governor's staff, or that Mr. Weber and Ms. Bentz are in-house counsel at the CDCR, does not destroy the protections of the attorney-client privilege. The attorney-client privilege applies to communications between lawyers and their clients when the lawyers act in a counseling and planning role, as well as when the lawyers represent their clients in litigation. *Chen,* 99 F.3d at 1501. And individuals do not forfeit the protections of the attorney-client privilege merely because their attorney is a permanent member of their staff. *See FTV v. Boehringer Ingelheim Pharmaceuticals, Inc.,* 892 F.3d 1264, 1267 (D.C. Cir. 2018) (the "privilege applies to communications between corporate employees

9

Defs.' Trial Brief  (2:90-cv-00520 KJM-DB (PC))

and a corporation's counsel made for the purpose of obtaining or providing legal advice…regardless of whether the attorney is in-house counsel or outside counsel").

### 3. The Three Government Attorneys' Testimony Is Protected by Work Product Immunity.

To the extent the Court may also question the three government attorneys regarding the contents of privileged documents relating to the 2018 Staffing Proposal, any such testimony that would consist of their "mental impressions, conclusions, opinions, or legal theories" are protected by the work-product doctrine. The attorney work-product privilege protects from discovery in litigation "mental impressions, conclusions, opinions, or legal theories of a party's attorney" that were "prepared in anticipation of litigation or for trial." Fed. R. Civ. P. 26(b)(3)(B). The privilege was first recognized in *Hickman v. Taylor*, 329 U.S. 495 (1947), and is codified in Federal Rule of Civil Procedure 26(b)(3). As *Hickman* recognized, shielding from discovery materials prepared "with an eye toward the anticipated litigation" protects the integrity of adversarial proceedings by allowing attorneys to prepare their thoughts and impressions about a case freely and without reservation." 329 U.S. at 498, 510-11. To qualify for work-product protection, documents must: "(1) be 'prepared in anticipation of litigation or for trial' and (2) be prepared 'by or for another party or by or for that other party's representative.'" *United States v. Richey*, 632 F.3d 559, 567 (9th Cir. 2011) (quoting *In re Grand Jury Subpoena*, 357 F.3d 900, 907 (9th Cir. 2004)).

As with respect to the attorney-client privilege, the inviolability of the work-product doctrine is subject to the so-called crime-fraud exception, under which otherwise privileged communications made to further an illegal scheme are not protected from disclosure. *In re Richard Roe, Inc.*, 68 F.3d 38, 40 n.2 (2d Cir. 1995) ("Where, as here, the attorney-client privilege and the work product immunity substantially overlap, we see no reason to apply a different standard for attorney work product.") (citing *In re Grand Jury Proceedings*, 604 F.2d 798, 803 (3d Cir. 1979)). However, before the work-product doctrine may be dispensed with, the court must find that an initial evidentiary showing has been satisfied justifying *in camera* review, and then, after the *in camera* review, must find that the evidence supports application of the

10

Defs.' Trial Brief  (2:90-cv-00520 KJM-DB (PC))

1  crime-fraud exception. *Zolin*, 491 U.S. at 572; *In re Grand Jury Investigation*, 974 F.2d 1068,
2  1072 (9th Cir. 1992).

3  Here, Defendants produced for the Court's *in camera* review privileged documents relating
4  to, among other things, the 2018 Staffing Proposal. These documents were created within the
5  course of this litigation, and to the extent they contain the three government attorneys' "mental
6  impressions, conclusions, opinions, or legal theories," they are protected from further invasion by
7  the Court during the upcoming hearing. If the Court believes that the crime-fraud exception
8  applies, it must make specific findings to that effect. At this point, however, the Court has made
9  no such findings and may therefore not invade the attorney-client privilege or work-product
10 doctrine by questioning the three government attorneys about their "impressions, conclusions,
11 opinions or legal theories" in connection with the privileged documents. As such, these subjects
12 are absolutely privileged and not permissible for questioning.

### 4. The Three Government Attorneys' Testimony Is Also Protected by the Deliberative-Process Privilege.

15 Any responsive testimony the three government attorneys could provide would be
16 protected by the attorney-client privilege and work-product immunity. But to the extent they
17 could provide any information regarding current policies, such testimony would also be protected
18 by the deliberative process privilege.

19 The deliberative process privilege exempts from discovery information reflecting advisory
20 opinions, recommendations, and deliberations comprising part of a process by which government
21 decisions and policies are formulated. *FTC v. Warner Communications, Inc.*, 742 F.2d 1156,
22 1161 (9th Cir. 1984). The privilege is designed to allow agencies to freely explore possibilities,
23 engage in internal debates, or play devil's advocate without fear of public scrutiny. *Assembly of*
24 *California v. United States Dep't of Commerce*, 968 F.2d 916, 920 (9th Cir. 1992). And the key
25 inquiry in determining whether particular information is "deliberative" is whether disclosure of
26 the information would expose the decision-making process in such a way as to discourage candid
27 discussion within the agency and thereby undermine the agency's ability to perform its functions.
28 *Carter v. United States DOC,* 307 F.3d 1084, 1090 (9th Cir. 2002).

11

Defs.' Trial Brief  (2:90-cv-00520 KJM-DB (PC))

Here, any Court questions to Mr. Onishi, Mr. Weber or Ms. Bentz regarding the three main subjects the Court has identified for questioning of them at the evidentiary hearing would fall under the deliberative process privilege. How Mr. Onishi, Mr. Weber and Ms. Bentz, along with Defendants approached, for instance, the 2018 Staffing Proposal, lies at the core of the process of "internal debate" within the government agencies at issue that is protected from public scrutiny.

### B. Defendants' Proposed Alternative Processes Strike the Appropriate Balance Between Honoring the Privileges That Protect the Three Government Attorneys' Testimony and Helping the Court Obtain Information.

#### 1. The Court Should Choose to Elicit Any Information from the Three Government Attorneys by Written Interrogatory.

In light of the challenges posed by the Court's plan to hear live testimony from Mr. Onishi, Mr. Weber and Ms. Bentz on the three issues identified by the Court in its September 17, 2019 order, a preferable alternative would be if the Court were to issue written interrogatories to which the three government lawyers may respond in writing under oath. This would have the advantage of allowing for the "procedural and evidentiary safeguards" that the Supreme Court's *Zolin* decision requires. As explained above, the Court would be required to make affirmative findings that the crime-fraud (or some other) exception to the attorney client privilege and work-product doctrine applies *before* infringing on those evidentiary privileges. No such findings have been made, and the Court has further stated "it will not delve further into the possibility of fraud on the court at this time," (ECF No. 6242 at 2 n.1), thus closing the door on applying *Zolin*. If the Court believes that its questions will not invade any privileges at all, and thus no exception to the privileges need be established, eliciting testimony by written interrogatories would allow for Mr. Onishi, Mr. Weber and Ms. Bentz to assert any specific, relevant privilege(s) and for the Court to make its findings in an orderly fashion. *Cf. Halkin v. Helms (Halkin I)*, 598 F.2d 1, 6 (D.C. Cir. 1978) (discussing the district court's procedure of propounding its own interrogatories to the Secretary of Defense).

///

///

///

12

Defs.' Trial Brief  (2:90-cv-00520 KJM-DB (PC))

### 2. In the Alternative, the Court Should Choose to Interview the Three Government Attorneys *In Camera*.

If the Court is disinclined to put its questions to Mr. Onishi, Mr. Weber and Ms. Bentz via written interrogatories, just as it reviewed the attorney-client documents *in camera*, the Court should, at a minimum, conduct its questioning of the three government attorneys *in camera*, outside the presence of Plaintiffs' counsel, the rest of the Court, and the public. It is well settled that *in camera* proceedings are an appropriate means to resolve disputed issues of privilege. *See, e.g.*, *Kerr v. United States District Court*, 426 U.S. 394, 405-06, (1976) (in suit against the California prison system, upholding requirement that district court individually assess, *in camera*, Adult Authority files for various privileges, before determining whether each should nonetheless be produced); *Kasza v. Browner*, 133 F.3d 1159, 1169 (9th Cir. 1998) ("Elaborating the basis for the claim of privilege through *in camera* submissions is unexceptionable."); *Olam v. Congress Mortg. Co.*, 68 F. Supp. 2d 1110, 1128 (N.D. Cal. 1999) (taking testimony from the mediator in closed proceedings, under seal, to protect mediation privilege). This includes questioning of a witness *in camera*, outside of the presence of opposing counsel, where considerations of confidentiality are paramount. *Halkin I*, 598 F.2d at 9 (privilege invoked by Secretary of Defense, supported by *in camera* testimony of Deputy Director of NSA, regarding applicability of state secrets privilege). The potential damage that might be done to the Governor's Office, CDCR, and this litigation by improperly invading the privileges that apply to the government attorneys' testimony would be substantially mitigated by conducting the questioning in this way, rather than in open court and with opposing counsel.

In short, Mr. Onishi, Mr. Weber, and Ms. Bentz have little or no personal knowledge regarding the facts underlying the issues that the Court has identified for the upcoming evidentiary hearing, and as to the narrow piece regarding staffing (Issue F) that the three government attorneys could conceivably possess any personal knowledge, the attorney-client privilege, work-product immunity, and the deliberative process privilege shield disclosure. Instead of having the three government attorneys testify in court, the Court should instead use

13

Defs.' Trial Brief  (2:90-cv-00520 KJM-DB (PC))

well-established procedures invoked in analogous situations, either of posing written interrogatories to them or, in the alternative, of questioning them *in camera*, outside the presence of other parties.

### C. Dr. Diana Toche Should be Added to the Witness List.

Defendants request that Dr. Diana Toche, Undersecretary of Health Care Services at the CDCR, be added to the list of witnesses to be called to testify at the October 15, 2019 hearing. In its September 17, 2019 order, the Court stated that it "may also ask questions concerning remedial steps to cure the misrepresentations retrospectively and prospectively, to clarify steps already taken or that the court may consider ordering." (ECF No. 6288, at 2:9-11.) The Court also noted that the parties may be permitted to call rebuttal witnesses. (*Id.* at lines 14-15.) Dr. Toche was appointed as Undersecretary in May 2014. She is the undersecretary responsible for mental health policy throughout California's prisons. Dr. Day (the current Deputy Director of Mental Health) and former Deputy Director of Mental Health Katherine Tebrock both reported to Dr. Toche. Dr. Toche is in the best position to know how remedial efforts concerning any inaccurate data reporting are being implemented; any hearing on that subject will likely be incomplete without her testimony.

### IV. CONCLUSION

The Court should grant Defendants' request not to call Deputy Legal Affairs Secretary Rei Onishi, or either of the two attorneys of CDCR's Office of Legal Affairs, Nicholas Weber and Melissa Bentz, as witnesses to appear at the Court's upcoming October 15, 2019 evidentiary hearing. The three government witnesses have almost no knowledge of any of the facts underlying the three issues identified by the Court for the questioning at the hearing, and whatever knowledge they do have is covered by the attorney-client privilege, work product immunity, and/or the deliberate process privilege. If the Court wishes to invade these privileges, it must follow procedures and make preliminary findings that have not been made. Instead, the Court should conduct its questioning of the three government attorneys either by written interrogatories, or *in camera*. Finally, the Court should add Dr. Diana Toche, Undersecretary of Health Care Services at the CDCR, to the witness list for the October 15, 2019 hearing, as Dr.

14

Defs.' Trial Brief  (2:90-cv-00520 KJM-DB (PC))

1  Toche is in the best position to know how remedial efforts concerning any inaccurate data
2  reporting are being implemented by the CDCR.
3  Dated: October 1, 2019                    Respectfully submitted,
4                                            ROBINS KAPLAN LLP
5                                            /s/ Glenn A. Danas
6
7                                            GLENN A. DANAS
                                             *Special Counsel for Defendants*
8  CF1997CS0003
   14159734

15

Defs.' Trial Brief  (2:90-cv-00520 KJM-DB (PC))