| | |
|---|---|
| RALPH COLEMAN, et al., | No. 2:90-cv-0520 KJM DB P |
| Plaintiffs, | |
| v. | ORDER |
| GAVIN NEWSOM, et al., | |
| Defendants. | |

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

As set by court order, on September 13, 2019 this matter came on for the second quarterly status conference of 2019. Michael Bien, Esq., Lisa Ells, Esq. and Marc Shinn-Katz, Esq. appeared as counsel for plaintiffs. Supervising Deputy Attorney General Adriano Hrvatin and Deputy Attorneys General Kyle Lewis, Elise Thorn and Tyler Heath appeared as counsel for defendants. Glenn Danas, Esq. and Roman Silberfeld, Esq., also appeared as special counsel for defendants.

By order filed September 9, 2019, ECF No. 6275, the court set the agenda for the second quarterly status conference. This order confirms rulings made in open court as to each item on the agenda and provides further direction as to certain items.

I. UPDATE ON DESERT INSTITUTION TRANSFER TIMELINE PROPOSAL AND REDUCTION OF MONITORING AT THE DESERT INSTITUTIONS

On September 12, 2019, the Special Master informed the court that the parties had resolved this issue and that a stipulated agreement would be filed for the court's review and approval. In fact, the parties filed a stipulation and proposed order the evening prior to hearing, ECF No. 6279, and they then filed an amended stipulation and proposed order responsive to the court's request for certain definitional clarifications on September 20, 2019, ECF No. 6290. The court approved both stipulations and the policy and addendum appended thereto on September 27, 2019. ECF No. 6295. The court commends the parties and the Special Master for the effort involved and this significant step forward.

II. PROPOSAL TO EXPAND THE CALIFORNIA CORRECTIONAL HEALTH CARE SYSTEM'S QUALITY MANAGEMENT SECTION TO INCLUDE MENTAL HEALTH CARE DATA

The Special Master has informed the court that the following persons have met as a group for the purpose of discussing ways in which the gathering and reporting of mental health care data can become reliable and transparent going forward: Special Master Lopes; Michael Bien, Esq., Lisa Ells, Esq., Donald Specter, Esq., and Steven Fama, Esq., legal counsel for plaintiff class; Ralph Diaz, Acting Secretary of the California Department of Corrections and Rehabilitation (CDCR); Diana Toche, Undersecretary for Healthcare for CDCR; Kelli Evans, Deputy Legal Affairs Secretary for Criminal Justice in the Office of the Governor; Rae Onishi, Esq., Deputy Legal Affairs Secretary to the Governor; CDCR Legal Counsel Jennifer Neill; and *Plata*[1] Receiver Clark Kelso. The group aims to assess whether modifications to the current procedures for gathering and reporting data can not only achieve greater reliability and transparency but also enhance general reporting in this case, and ensure completion and implementation of the Continuous Quality Improvement Tool (CQIT), which is a key component to the end of federal court supervision over the delivery of mental health care to class members. The Special Master seeks permission to postpone hiring his own data expert, as previously

---

[1] *Plata v. Newsom*, Case No. C01-1351 JST (N.D.Cal.).

planned, while this group explores whether it would jointly recommend incorporating into this action any facets of the data collection and reporting processes developed by the *Plata* Receiver over the past seven years.

The court will allow the Special Master to explore the potential for sharing resources and eliminating duplication across this case and *Plata*. To that end, the court has authorized the Special Master to, in his discretion, postpone or proceed with hiring his own data expert, as the need arises. In addition, the court is prepared to authorize the Special Master to engage in discussions with the *Plata* Receiver, to determine whether data resources developed in *Plata* can be applied in *Coleman*, with or without modification to satisfy the different requirements applicable in *Coleman*. This authorization comes with certain conditions and instructions. Most importantly, this court ultimately will need to be persuaded that any collaboration will in fact satisfy the requirements of this action. To that end, it may be necessary for the Special Master to prepare specific matrices identifying data points that must be collected and reported accurately to comply with the Program Guide and court orders in this *Coleman* case, and then demonstrate how these data points compare with what is being collected and reported in *Plata*. The court will also need to understand, at a level sufficient to allow an informed decision, the business rules that apply to report generation, the transparency of those rules and any other procedures or methods used to generate reports.

This court expects to take an active role in this area going forward because of the critical importance of accurate data collection and reporting in this case, underscored by the proceedings prompted by the whistleblower report made by Dr. Golding. To that end, the court has called a coordination meeting, in which the following persons will participate: the Special Master, U.S. District Judge Jon Tigar as the presiding judge in *Plata*, the *Plata* Receiver, and this court. That meeting will take place in the latter part of October.

In addition, the court has requested a report from the Special Master, with input from the parties, within six months regarding whether the general concept of data system sharing is indeed feasible, case compliant and will result in greater efficiency and transparency than could be achieved otherwise.

III. UPDATE ON STATUS OF 100-BED MENTAL HEALTH CRISIS BED (MHCB) PROJECT

The court's September 9, 2019 order, ECF No. 6275, directed the parties to be prepared to address two specific issues with respect to the 100 bed MHCB Project, which defendants apparently have now reduced to a 50 bed project at California Institution for Men, putting plans for another 50 MHCBs at Richard J. Donovan Correctional Facility (RJD) on hold. Although defendants represented at hearing that the project as currently approved in its reduced scope is sufficient to permit defendants to take all unlicensed MHCBs offline and replace them with licensed MHCBs as required by the Program Guide, the court has significant questions and concerns regarding defendants' current plan.

Prior to the September 13 hearing, the Special Master provided the court with a summary of inmate population trends, which appears to show the population of seriously mentally ill inmates higher than it was a decade ago, at which time the three-judge court ordered a population cap on California's prison population.[2] Defendants acknowledged at hearing that the population of seriously mentally inmates in California's prisons has not declined and may have continued to grow to some degree.

In addition, the Special Master has informed the court that there were nine inmate suicides in August of this year. Whether or not this number of inmate suicides is connected to a shortage of MHCBs, the population growth and ongoing MHCB shortage, taken together, raise significant questions in the court's mind about whether this case is anywhere close to full remediation. With respect to MHCBs in particular, it cannot be denied that, historically, deficient bed planning has plagued this case and been a bar to movement in the right direction.

At hearing, plaintiffs raised several serious questions about whether defendants' 50 bed MHCB plan can satisfy remedial requirements in this action, and whether defendants' projected timeline for completion of even the 50 bed projects can be realized. These questions include the following:

---

[2] *Coleman v. Schwarzenegger*, 922 F.Supp.2d 882 (E.D.Cal./N.D.Cal. 2009).

- Will the reduced plan allow defendants to take all 73 unlicensed MHCBs offline and still achieve compliance with the remedial requirements of this case for access to MHCB care?[3]
- Does defendants' current plan adequately account for the licensed MHCB bed need for the male inmate population? Does this plan adequately account for a recent increase in MHCB referrals for male inmates?
- How does the anticipated completion date of November 2022 square with prior testimony from former Deputy Director Tebrock that completion of the 100 bed project would take a total of five years, one year for design completion and four years for construction, particularly if the 50 bed project is not yet through the design phase?
- What is the significance of an increase in the percentage of suicides that occur within thirty days of discharge from higher levels of care?
- Is there pressure on clinicians not to refer class members to higher levels of care? What is the significance of the declining inpatient population at Atascadero State Hospital and Coalinga State Hospital?
- Are defendants accurately reporting compliance rates with the 24-hour timeline for transfer to MHCB care and, in particular, are they starting the 24-hour clock at the time required by the remedial plan?

Plaintiffs request that the court (1) require defendants to continue with the 50 bed project at RJD, and (2) require defendants to provide specific reporting on timelines for decommissioning unlicensed MHCBs.

After hearing, the Special Master informed the court that the issues he has independently identified, as well as those raised by plaintiffs at hearing, suggest a likely need for

---

[3] At hearing, plaintiffs also contended there are approximately two hundred unlicensed inpatient beds in use for class members. This issue will be placed on the agenda for discussion at the December 13, 2019 quarterly status conference.

a study similar to those conducted several times during the remedial phase to determine whether there is an unmet need for MHCB care and inpatient care in CDCR's inmate population.

Good cause appearing, the court sets the following schedule for full briefing and consideration at the next quarterly status conference, set for December 13, 2019. The parties shall file further briefing on the questions raised by plaintiffs at hearing and on whether an unmet bed need study should be conducted. Opening briefs shall be filed fourteen days before hearing, and responsive briefs may be filed not later than seven days before hearing.

IV. STAFFING

It is now more than eleven months since defendants were required to be in compliance with the court's October 10, 2017 order, ECF No. 5711, which required them to hire sufficient staff to comply with the staffing ratios set in their 2009 Staff Plan and the maximum ten percent vacancy rate required by the court's June 13, 2002 order. Recognizing the interruption caused by the filing of the Golding Report and the serious questions now raised regarding the accuracy of defendants' data, it is nonetheless past time for remediation of inadequate mental health staffing levels to be completed.

Just prior to the September 13 hearing, the Special Master informed the court he had received some documents from defendants signaling their interest in and willingness to resume discussions over the use of telepsychiatry, which is a critical issue related to the staffing question. At hearing, all parties confirmed their willingness to resume these discussions in the *Coleman* Special Master's workgroup forthwith.[4] This is a promising step, given that a successful resolution of this issue has the potential for bringing defendants closer to meeting their constitutional obligations to the plaintiff class. The court looks forward to updates from the Special Master on the status of these discussions.

---

[4] At hearing, defendants referred to a separate staffing workgroup led by the *Plata* Receiver. Defendants are reminded that their remedial responsibilities in this action are to this court and its Special Master. Any remedial work on matters within the jurisdiction of this court must, at a minimum, be fully disclosed in the first instance to the Special Master and ultimately to this court to ensure the needs of the plaintiff class here will be met and any necessary coordination can be achieved.

As part of an overall effort to remedy inadequate staffing levels, the court did grant defendants narrow permission to review their psychiatrist staffing ratios to see whether those could be changed in aid of achieving adequate staffing levels. As noted above, in the interim, serious questions have been raised about the reliability of defendants' data; everyone involved in this litigation is working to resolve those questions. Defendants' proposal to refer the issue of staffing back to the Workgroup in this case will be accepted for purposes of coming up with a staffing formula for Department of State Hospital programs and for purposes of negotiating an appropriate telepsychiatry policy.

Nothing in this order precludes the parties, under the supervision of the Special Master, from engaging in voluntary discussion of additional issues related to the staffing remedy. The court will place this matter on the agenda for the December 13, 2019 quarterly status conference for an update on the status of remedial efforts and possible discussion of enforcement issues related to compliance with the October 10, 2017 order, ECF No. 5711. The parties shall address these items in the briefing required above.

IT IS SO ORDERED.

DATED: October 7, 2019.

_____
UNITED STATES DISTRICT JUDGE