DONALD SPECTER – 083925
STEVEN FAMA – 099641
MARGOT MENDELSON – 268583
PRISON LAW OFFICE
1917 Fifth Street
Berkeley, California 94710-1916
Telephone: (510) 280-2621

CLAUDIA CENTER – 158255
AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF NORTHERN CALIFORNIA, INC.
39 Drumm Street
San Francisco, California 94111-4805
Telephone: (415) 621-2493

MICHAEL W. BIEN – 096891
JEFFREY L. BORNSTEIN – 099358
ERNEST GALVAN – 196065
THOMAS NOLAN – 169692
LISA ELLS – 243657
JENNY S. YELIN – 273601
MICHAEL S. NUNEZ – 280535
JESSICA WINTER – 294237
MARC J. SHINN-KRANTZ – 312968
CARA E. TRAPANI – 313411
ROSEN BIEN GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
Telephone: (415) 433-6830

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>GAVIN NEWSOM, et al.,<br><br>　　　　Defendants. | Case No. 2:90-CV-00520-KJM-DB<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' TRIAL BRIEF**<br><br>Judge: Hon. Kimberly J. Mueller |

**TABLE OF CONTENTS**

Page

INTRODUCTION ........................................................................................................................ 1

I. THE GOVERNMENT ATTORNEYS' PERSONAL KNOWLEDGE ..................... 2

II. ATTORNEY-CLIENT PRIVILEGE ........................................................................ 2

III. WORK-PRODUCT PROTECTION ......................................................................... 6

IV. DELIBERATIVE PROCESS PRIVILEGE .............................................................. 6

V. DEFENDANTS' PROPOSED ALTERNATIVE PROCESSES FOR TAKING EVIDENCE FROM THE GOVERNMENT ATTORNEYS ARE UNWARRANTED. .................................................................................................... 8

    A. Written Interrogatories ................................................................................ 10

    B. *In Camera T*estimony ................................................................................ 10

VI. TESTIMONY FROM DIANA TOCHE WOULD BE HELPFUL AND INFORMATIVE. ...................................................................................................... 12

CONCLUSION ......................................................................................................................... 12

# INTRODUCTION

The Court has ordered three government attorneys who have worked on the *Coleman* case to testify at the evidentiary hearing regarding Dr. Golding's whistleblower report, which exposed Defendants' material misrepresentations to the Court, Special Master, and Plaintiffs through the course of these proceedings. As Defendants acknowledge, the Court has already vastly narrowed the scope of the evidentiary hearing, *see* Defs' Trial Br., ECF No. 6304 at 3-4 (Oct. 1, 2019) ("Defs' Br."), and has explained its intention to ask only "a focused few questions for Deputy Legal Affairs Secretary [Rei] Onishi as a witness," and that the "questions will be designed to not invade any privilege." Order, ECF No. 6242 at 12 (Aug. 14, 2019). The Court has also identified as witnesses attorneys Nicholas Weber and Melissa Bentz from CDCR's Office of Legal Affairs, who presumably will receive similar careful treatment. Defendants have responded to the Court's identification of these witnesses by objecting as a blanket rule to any proposed live testimony, claiming that the interests of justice can be served by written interrogatories or *in camera* testimony alone.

But given the Court's carefully crafted approach, designed to avoid any privilege or other legitimate concerns, Defendants' broad objections are unwarranted and their request for a ruling on the objections is premature, particularly because the Court's evaluation of Defendants' purportedly privileged documents remains ongoing. To the extent Defendants identify privilege issues at the upcoming evidentiary hearing, they will be more than free to make those objections as to individual questions posed by the Court or Plaintiffs. And the mere possibility that individual questions or portions of questions could invade a privilege does not justify the wholesale closing of the proceedings to the public, or eliminating the airing of live testimony pertaining to matters of great public concern. The significantly over-protective approach Defendants propose in their trial brief appears to be another attempt to obscure, rather than to accept and acknowledge, the material failings in Defendants' data reporting systems that led to these proceeding in the first place. Other than to add Diana Toche, Undersecretary of Health Care Services for CDCR, to the

witness list, the Court should reject Defendants' proposals.

## I. THE GOVERNMENT ATTORNEYS' PERSONAL KNOWLEDGE

Defendants first assert generally that the proposed attorney-witnesses do not have personal knowledge regarding the matters as to which the Court has identified them as witnesses and therefore that they would not be "helpful." *See* Defs' Br. at 5-6. But Defendants have no idea what the Court intends to ask the witnesses, rendering their protestations purely hypothetical. Moreover, Defendants admit that each of the witnesses does in fact have personal knowledge on at least some of the identified topics, even as they attempt to downplay the import of that knowledge. *See id.* Without hearing the actual questions posed by the Court, Defendants cannot know whether the attorneys have sufficient personal knowledge to address any questions directed to them; Defendants' objections are far too speculative at this juncture to rule on. And if the government attorneys have no personal knowledge related to the topics of questioning, they are more than equipped to say so in response to the Court's or Plaintiffs' questions. Surely this Court is in the best position to know whether eliciting testimony from these witnesses, who admittedly have relevant knowledge, would be helpful to its inquiry, particularly after it has completed its review of the documents Defendants withheld from the Neutral Expert as purportedly privileged.

In sum, Defendants' blanket objections reach far too broadly. That the Court may pose some questions the government attorneys are not able to answer does not render their entire potential testimony irrelevant, nor does it justify deviating from the fundamental principles underlying the policy of open and public court proceedings.

## II. ATTORNEY-CLIENT PRIVILEGE

Defendants' blanket assertion that any testimony the attorney-witnesses may offer must necessarily be protected by attorney-client privilege misses the mark. As Defendants acknowledge, not every communication involving these witnesses is privileged: Only confidential communications between a client and attorney for purposes of obtaining legal advice is protected. Until the Court asks its intended questions, which it has already said

will be designed to avoid invading any privilege, Defendants cannot establish that the privilege even applies in the first place.

Indeed, even assuming that government attorneys share a privilege with their clients coextensive with that enjoyed by non-government attorneys and clients, *see* Wright & Miller, Fed. Prac. & Proc. § 5475 (casting doubt on the existence of the government attorney-client privilege, at least in the same form the privilege exists for non-government attorneys and clients), the privilege is far from absolute. As a preliminary matter, Defendants' own precedents both discuss and apply exceptions to the privilege. *See United States v. Jicarilla Apache Nation*, 564 U.S. 162, 169-70 (2011) (applying the government-fiduciary exception to the attorney-client privilege); *In re Grand Jury Subpoena*, 909 F.3d 26, 31-32 (1st Cir. 2018) ("[I]t is perhaps not surprising that in all of the cases in which any of our fellow circuits have rejected otherwise valid assertions of the attorney-client privilege by government entities or persons, the search for information was aimed at suspected wrongdoing within the government."). The *Grand Jury Subpoena* exception carries particular force here, where the Court's questioning may well bring to light potential wrongdoing.

Defendants make broad-brush assertions of attorney-client privilege as to the government attorneys' potential testimony. As discussed above, however, such assertions are premature absent the context of actual questions put to the attorneys. In any event, a number of considerations apply here that may ultimately limit the force of the government-attorney client privilege. That is yet another reason to allow the testimony to proceed, so that reasonable objections and responses can be considered in the appropriate context and with respect to the actual facts as they develop.

First, as stated above, the privilege may not be implicated by the Court's questioning at all. Contrary to Defendants' dire warnings, not all communications where attorneys are present are privileged. That is particularly the case where "in-house" counsel, such as Mr. Onishi, Mr. Weber, and Ms. Bentz, are involved. Because of the heightened likelihood that communications with in-house counsel will not meet all

1  elements of the privilege, courts scrutinize those communications more closely to
2  determine whether the privilege applies.  *See, e.g.*, *N.C. Elec. Membership Corp. v.*
3  *Carolina Power & Light Co.*, 110 F.R.D. 511, 516 (M.D.N.C. 1986).  Commonly, in-
4  house attorneys will take on administrative or management-type functions, and when
5  acting in those capacities, the attorneys' communications with government employees are
6  not privileged.  *See SodexoMAGIC, LLC v. Drexel Univ.*, 291 F. Supp. 3d, 681, 684-85
7  (E.D. Pa. 2018) ("Discussion between government administrators who are attorneys are
8  not privileged when the attorneys are speaking in their capacity as administrators, and not
9  as legal advisor or client."); *cf. Radiant Burners, Inc. v. Am. Gas Ass'n*, 320 F.2d 314, 324
10 (7th Cir. 1963) (noting "the privilege would never be available to allow a [client] to funnel
11 its papers and documents into the hands of its lawyers for custodial purposes and thereby
12 avoid disclosure").
13        Further, the upcoming proceedings may implicate specific exceptions to the
14 attorney-client privilege, such as the crime-fraud exception.  Defendants acknowledge this
15 exception to the attorney-client privilege, but assert that it does not apply here.  Defs' Br.
16 at 7-8.  Over the course of these proceedings, however, the Court has carefully considered
17 the possible application of this exception and has not definitively ruled it out.  Instead, the
18 Court stated that the *Zolin* crime-fraud standard had been met, at least by analogy, given
19 the contents of the Neutral Expert Report "identifying not only evidence of misleading
20 actions by defendants but the potential for undue pressure from leadership."  *See* Order,
21 ECF No. 6200 at 6-8 (June 18, 2019); *see also* Order, ECF No. 6242 at 2 n.1 (Aug. 14,
22 2019) ("The Court previously determined it will not delve further into the possibility of
23 fraud on the court at this time, while reserving the possibility that new information may at
24 some point cause the court to reconsider this determination." (citing Reporter's Transcript,
25 ECF No. 6185 at 6)).  Moreover, the fact that the Court is continuing to probe Defendants'
26 claims of privilege through multiple *in camera* hearings raises that possibility that
27 additional information will come to light further substantiating the Court's actions.  *See,*
28 *e.g.*, Minute Order, ECF No. 6311 (resetting *in camera* conference with only Defendants

regarding their privilege claims).

Additionally, depending on the course of the proceedings, Defendants could, as they have in the past, place in issue the claimed privileged information, effectuating an implied waiver. *See Laser Indus., Ltd. v. Reliant Techs., Inc.*, 167 F.R.D. 417, 446 (N.D. Cal. 1996); *see also* Order, ECF No. 4341 at 8, 10 (finding that Defendants placed their subjective responses to Mr. Hayes' suicide prevention recommendations at issue by arguing at termination that they were not deliberately indifferent to inmates' serious mental health needs, and therefore that work-product documents relating to Mr. Hayes' recommendations were discoverable).

Indeed, Defendants overstate the chilling effect that live questioning expressly designed *not* to invade privilege, and which would be subject to Defendants' objection at the time of the questioning, might hypothetically have here, especially when balanced against other policy considerations. First, the government has significant coercive power to encourage its employees to provide information to government attorneys, even without the privilege. *See* Wright & Miller, Fed. Prac. & Proc. § 5475; *cf.* Defs' Br. at 8. In addition, many government officers and employees have statutory duties to disclose certain information anyway, and enhanced duties to their constituencies to adhere closely to legal requirements, regardless of whether the privilege protects the communications they make for the purpose of determining those requirements. *See* Wright & Miller, Fed. Prac. & Proc. § 5475. Finally, the open-government principles animating various forms of "sunshine" laws applicable to our democratic institutions compel a different treatment of the privilege in the government attorney-client setting. In light of the foregoing, any limited chilling effect that might hypothetically come into play here must be considered in light of the countervailing policy considerations.

In short, so many considerations and interests are at play with respect to potential government attorney-client communications that the Court cannot accept Defendants' generalized, premature objections at face value, and should instead proceed with its order requiring the witnesses to appear to testify, where Defendants can assert, and the Court can

rule on, specific objections to the Court's questions that are particularized to the actual proceedings.

## III. WORK-PRODUCT PROTECTION

Similar considerations apply to the work-product doctrine, which protects government attorneys' mental impressions, conclusions, and legal theories prepared in anticipation of litigation. *See* Fed. R. Civ. P. 26(b)(3)(B). Defendants claim work-product protection at least as to hypothetical testimony relating to their 2018 staffing proposal. Again, Defendants are asking for a preemptive order applying work-product protection before they even have any idea what the Court intends to ask, much less whether the questions actually invade that protection. Defendants' request for a ruling based on sheer conjecture and guesswork about the Court's questioning is premature and inappropriate. Moreover, as with their broad-brush assertions of attorney-client privilege untethered to any actual objectionable questions, various exceptions and other countervailing considerations could be applicable. *See supra* Section II. The Court should consider carefully any specific claims of attorney work product protection that Defendants assert at trial, when those objections are raised in the factual context that will allow for proper evaluation of the merits.

## IV. DELIBERATIVE PROCESS PRIVILEGE

Defendants next assert that the deliberative process privilege would protect "any information regarding CDCR's current policies." Defs' Br. at 11. This simply is not true, as the deliberative process privilege is in fact far narrower and its application much more circumscribed.

First, the deliberative process protection does not extend to final agency decisions, *see Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980), for at least a couple reasons: (1) The final decision, by its nature, is generally public; and (2) the final decision is the ultimate result of the deliberative process; disclosing it does not expose the discussions and deliberations that led to the decision. In addition, the definition of a "final" agency decision, in an ongoing process of refining regulatory policy, is murky,

so the Court should take care in evaluating whether Defendants' claims of "finality" are well-taken. *See Assembly of Cal. v. U.S. Dep't of Commerce*, 968 F.2d 916, 920-21 (9th Cir. 1992); *Carter v. United States*, 307 F.3d 1084, 1089-90 (9th Cir. 2002).

Second, the privilege does not apply to communications concerning the final decision that occur *after* the final decision has been made. *NLRB v. Sears Roebuck & Co.*, 421 U.S. 132, 151 (1975).

Third, the privilege protects only communications that "reflect the give-and-take of the consultative process," where "disclosure is likely in the future to stifle honest and frank communication within the agency." *Coastal States*, 617 F.2d at 866. The privilege does not protect factual information, and where severable, the factual information may be disclosed. *EPA v. Mink*, 410 U.S. 73, 87 (1973).

Fourth, the deliberative process privilege is qualified, and can be overcome by a showing of relevance and need, or by a showing that the balance of competing interests favors disclosure. *See Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1033 (9th Cir. 1990) (applying the balancing test to official information privilege, often analogized to the attorney-client privilege in the government context); *F.T.C. v. Warner Commc'ns*, 742 F.3d 1156, 1161 (9th Cir. 1984) (providing a non-exhaustive list of factors to weigh in evaluating whether the deliberative process privilege should be overcome:  (1) relevance, (2) availability of alternative evidence, (3) the government's role in the litigation, and (4) the extent to which disclosure would hinder frank and open agency discussion; and also considering whether there was any governmental misconduct or bad faith). This Court cannot engage in this balancing in a vacuum, devoid of the necessary facts.

Notably, in 2006 Defendants claimed in this case the deliberative process privilege with respect to a budget change proposal meant to fund staffing. *See* ECF No. 1827. Plaintiffs argued that Defendants' purpose in asserting the privilege was to disguise who was responsible for excluding the funding request for staffing from the 2006-07 state budget, not unlike the issues here, where pertinent questions include why and how Defendants' data and reporting mechanisms resulted in the production of

1  misrepresentations to the Court, Special Master, and Plaintiffs, and who contributed to that
2  result. At that time, Defendants ultimately withdrew their assertion of the privilege after
3  this Court rejected it. *See* Order, ECF No. 1922 at 1 & n.1.
4      The Court should take similar care here in evaluating whether the deliberative
5  process privilege actually applies to specific facets of the government attorneys' possible
6  testimony, which it cannot do prior to trial. In light of the intricacies involved in the
7  application of this privilege, the Court certainly cannot make a blanket, out-of-context
8  ruling at this juncture.

## V. DEFENDANTS' PROPOSED ALTERNATIVE PROCESSES FOR TAKING EVIDENCE FROM THE GOVERNMENT ATTORNEYS ARE UNWARRANTED.

11     Defendants ask this Court scuttle its plan to take live testimony from the attorney-
12 witnesses and instead replace it with written interrogatories or *in camera* testimony. Doing
13 so would fly in the face of foundational policies maintaining and protecting the openness
14 of court proceedings.
15     First, Defendants effectively ask the Court to seal the government attorneys' entire
16 testimony, a vastly over-inclusive and over-protective step that Defendants cannot justify
17 with vague assertions not directed at any particular testimony. Closing the proceedings in
18 this way would be contrary to basic policies applying to governmental agencies, in
19 addition to the weighty presumptions in favor of public access to court proceedings. *See*
20 *generally Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172 (9th Cir. 2006); E.D. L.R.
21 141, 141.1. Those policies are only heightened in these proceedings, where matters of
22 fundamental public concern, including potential misconduct of public entities and officers,
23 are at issue. *See E.E.O.C. v. Erection Co.*, 900 F.2d 168, 171-72 (Reinhardt, J., concurring
24 in part and dissenting in part). Defendants would need to make a much stronger and more
25 tailored argument to justify sealing the proceedings, particularly because they ask the
26 Court to ignore all the precedent and court rules that permit sealing only on the most
27 narrow basis necessary to protect the sensitive information at issue. They have not done so
28 here.

1   In addition, as Plaintiffs explained in response to the Court's August 14, 2019
2   Order, and as Defendants make no effort to rebut:

> Defendants' position—that the Court should put any questions it has for [the government attorneys] in written interrogatories and accept written responses, or alternatively, conduct any questioning . . . *in camera*, without Plaintiffs' counsel present—is unsupported by public policy and governing precedent in this case.…
>
> The Federal Rules of Civil Procedure require that "[a]t trial, the witnesses' testimony must be taken in open court unless a federal statute, the Federal Rules of Evidence, these rules, or other rules adopted by the Supreme Court provide otherwise." Fed. R. Civ. P. 43(a). "[T]he primary purposes of Rule 43(a) are to ensure that the accuracy of witness statements may be tested by cross-examination and to allow the trier of fact to observe the appearance and demeanor of the witnesses." *Saverson v. Levitt*, 162 F.R.D. 407, 408 (D.D.C. 1995). This reasoning applies here. … Allowing [the government attorneys] to provide written answers to the Court's questions would prevent the type of cross-examination necessary to fully probe the credibility of Defendants' explanations as to how and why misleading data was presented to the Court and the Special Master and what steps Defendants are committed to take to ensure similar problems do not recur.
>
> Allowing [the government attorneys] to testify *in camera*, outside the presence of Plaintiffs' counsel, would only flame the ongoing mistrust among the parties and heighten concerns of Defendants' misconduct. Indeed, this is a matter of great public concern regarding actions taken by the highest California governmental officials, including the Governor's office as a party in this case. As the Supreme Court has recognized, public access to trial "protect[s] the free discussion of governmental affairs," which is essential to the public's ability to "effectively participate in and contribute to our republican system of self government." *Globe Newspaper Co. v. Super. Ct.*, 457 U.S. 596, 604 (1982) (citations omitted); *see also Craig v. Harney*, 331 U.S. 367, 374 (1947) ("A trial is a public event. What transpires in the court room is public property. … There is no special prerequisite of the judiciary which enables it, as distinguished from other institutions of democratic government, to suppress, edit, or censor events which transpire in proceedings before it."). This precedent marshals heavily in favor of requiring [the government attorneys] to testify publically.
>
> The Ninth Circuit has also expressed a strong presumption in favor of public access to court proceedings. *See Oregonian Publ'g Co. v. United States Dist. Ct.*, 920 F.2d 1462, 1465 (9th Cir. 1990) ("Under the first amendment, the press and the public have a presumed right of access to court proceedings and documents."); *see also* E.D. Cal. L.R. 141.1 ("All information provided to the Court in a specific action is presumptively public."). Indeed, the last time the Court in this case sought to limit public access to an evidentiary hearing, the Ninth Circuit immediately reversed the decision pursuant to a writ of mandamus. *See In re Los Angeles Times Commc'ns LLC*, No. 13-73467, ECF No. 17 at 2 (9th Cir. Oct. 16, 2013) (vacating portions of *Coleman* district court's orders sealing presentation of evidence in use of force trial).

28  Plfs' Resp. to August 14, 2019 Order, ECF No. 6255 at 6-7 (Aug. 28, 2019). These

authorities have no less force today, where Defendants have raised the same arguments, but failed to respond to these real and substantial limitations on any request to close the proceedings or proceed by written testimony in lieu of live questioning.

### A. Written Interrogatories

Defendants' new authority in support of their request for written testimony is not persuasive or applicable. Defendants cite *Halkin v. Helms*, 598 F.2d 1 (D.C. Cir. 1978), for the proposition that written interrogatories would be the right approach here, to avoid invading any privilege. But *Halkin* involved the state secrets privilege, and questions directed at the U.S. National Security Agency, Central Intelligence Agency, Federal Bureau of Investigation, and Defense Intelligence Agency, regarding the Vietnam War. The interests at stake were indisputably more compelling, and the potential information subject to disclosure inarguably more sensitive, than anything at play here.

Moreover, allowing the witnesses to proceed by written testimony only would not satisfy this Court's objectives. Allowing Defendants to craft careful answers, without being subjected to any follow-up questioning or cross-examination, would impede the full elucidation of the issues necessary for this case to move forward, particularly where the issues in question arise in large part from Defendants' prior failures to be fully transparent in their filings with this Court and their repeated attempts to disclaim responsibility for doing so. *See* Order, Dkt. 6200 (expressing goal of expunging doubt and restoring complete trust between Defendants and the Court as expeditiously as possible). The witnesses must be placed on the stand and required to answer questions as they are confronted with them, minimizing Defendants' ability to continue to side-step the import of the Court's inquiries.

### B. *In Camera* Testimony

Defendants' new authority in support of their request to provide *in camera* testimony is no more persuasive. Defendants cite here, primarily, cases presenting the unobjectionable rule that particular documents for which claims of privilege have been asserted can be reviewed *in camera* (in notable tension with their earlier assertions that the

Court should not even be able to review their purportedly privileged documents *in camera*, *see, e.g.*, ECF No. 6188). *See* Defs' Br. at 13 (citing *Kerr v. U.S. Dist. Ct.*, 426 U.S. 394, 405-06 (1976); *Kasza v. Browner*, 133 F.3d 1159, 1169 (9th Cir. 1998)). In addition to being inapplicable to the remedy Defendants request here, both *Kerr* and *Kasza* dealt with the state secrets privilege, and far-reaching national security and governmental interests much more weighty than those at stake here.

Defendants also cite two cases arising in different contexts where *in camera* testimony, rather than pre-disclosure review, was deemed justified. *See Olam v. Congress Mortg. Co.*, 68 F. Supp. 2d 1110, 1128 (N.D. Cal. 1999) (*in camera* testimony to protect mediator privilege); *Halkin*, 598 F.2d at 9 (*in camera* testimony to protect information subject to state secrets privilege). But as noted above, *Halkin* implicated much broader national security interests than those at issue here. *Olam* relied on the state-law mediation privilege, and its holding is expressly limited by many "case-specific considerations" that are not comparable to the circumstances here. *See* 68 F. Supp. 2d at 1128. In fact, the *Olam* court also determined that, after hearing testimony *in camera*, it could decide what information from that testimony to disclose publicly, without violating the privilege. The procedures in these cases are more akin to the *in camera* review of the documents Defendants have claimed as privileged, rather than providing support for the proposition that the entire ultimate fact-gathering can be undertaken in secret, as Defendants have requested here as to the testimony of the government attorneys. Indeed, sealing the testimony of the attorney-witnesses from even Plaintiffs would effectively prevent the Court from relying on, discussing, or even referencing that testimony in its ultimate ruling, which defeats the Court's stated intent of putting these matters to bed for good in the near term so it can return its focus to overseeing the remediation of the ongoing constitutional violations that continue to plague this case.

In short, Defendants have not shown that their proposed alternative procedures would adhere to legal authority mandating open court proceedings; that they are otherwise justified by sufficiently important interests; or that they are narrowly tailored to keep from

public view only the sensitive information that would necessarily be implicated by the Court's questioning of the government-attorney witnesses, which this Court has expressly stated will be carefully tailored to avoid implicating legitimate privilege interests.

## VI. TESTIMONY FROM DIANA TOCHE WOULD BE HELPFUL AND INFORMATIVE.

Plaintiffs agree that Diana Toche is an appropriate witness for the evidentiary hearing. She is uniquely qualified to discuss any initiatives CDCR has developed to address and/or solve the problems raised by the Golding Report, and their current status. Ms. Toche's testimony does not, however, obviate the need for testimony from the three government-attorney witnesses. The Court has identified the testimony of those witnesses as relating to the actual misleading representations made to the Court, Special Master, and Plaintiffs, and the reasons for those misrepresentations, rather than to steps taken to prevent those misrepresentations from recurring.

## CONCLUSION

The Court should reject out of hand Defendants' overly broad and premature objections to witness questioning. The objections are made in a vacuum without knowing what that questioning will entail and whether, in fact, it will even implicate any privilege or other protected interest. Defendants will have ample opportunity to make their objections to live testimony before the Court, based on the actual facts and circumstances as they develop in the evidentiary hearing.

DATED: October 8, 2019                    Respectfully submitted,

ROSEN BIEN GALVAN & GRUNFELD LLP

By: */s/ Jessica Winter*
    Jessica Winter

Attorneys for Plaintiffs