1   DONALD SPECTER – 083925                MICHAEL W. BIEN – 096891
    STEVEN FAMA – 099641                   JEFFREY L. BORNSTEIN – 099358
2   MARGOT MENDELSON – 268583              ERNEST GALVAN – 196065
    PRISON LAW OFFICE                      THOMAS NOLAN – 169692
3   1917 Fifth Street                      LISA ELLS – 243657
    Berkeley, California  94710-1916       JENNY S. YELIN – 273601
4   Telephone:    (510) 280-2621           MICHAEL S. NUNEZ – 280535
                                           JESSICA WINTER – 294237
5   CLAUDIA CENTER – 158255                MARC J. SHINN-KRANTZ – 312968
    AMERICAN CIVIL LIBERTIES UNION         CARA E. TRAPANI – 313411
6   FOUNDATION OF NORTHERN                 ROSEN BIEN
    CALIFORNIA, INC.                       GALVAN & GRUNFELD LLP
7   39 Drumm Street                        101 Mission Street, Sixth Floor
    San Francisco, California  94111-4805  San Francisco, California  94105-1738
8   Telephone:    (415) 621-2493           Telephone:    (415) 433-6830

9   Attorneys for Plaintiffs

10

11              UNITED STATES DISTRICT COURT

12              EASTERN DISTRICT OF CALIFORNIA

13

14   RALPH COLEMAN, et al.,                Case No. 2:90-CV-00520-KJM-DB

15              Plaintiffs,                **PLAINTIFFS' DESIGNATIONS FROM
                                           DEPOSITION OF DR. KEVIN KUICH**
16        v.                               **FOR OCTOBER 15, 2019
                                           EVIDENTIARY HEARING**
17   GAVIN NEWSOM, et al.,
                                           Judge:  Hon. Kimberly J. Mueller
18              Defendants.                Date:   October 15, 2019
                                           Time:   9:00 a.m.
19                                         Crtrm.: 3, 15th Floor

20

21

22

23

24

25

26

27

28

1    Plaintiffs hereby submit the following designations from the deposition of

2  Dr. Kevin Kuich, conducted in lieu of trial testimony pursuant to this Court's September 9

3  and 17, 2019 orders (ECF Nos. 6274 and 6288, respectively) finding Dr. Kuich

4  unavailable to testify in person at the October 15, 2019 evidentiary hearing.  *See* Fed. R.

5  Civ. P. 32(a)(4)(B), (E).  Dr. Kuich's deposition was taken on September 19, 2019, and

6  counsel for both Plaintiffs and Defendants had the opportunity to ask questions of the

7  witness.

8        8:3-19:9

9        19:24-41:3

10       42:14-45:12

11       48:8-49:16

12       52:22-57:6

13       59:23-61:12

14       62:21-64:16

15       64:25-73:15

16       76:2-78:18

17       80:14-82:24

18       83:22-84:16

19       84:22-88:11

20       88:17-92:9

21       93:3-97:15

22       98:19-103:6

23       104:3-106:4

24       108:23-118:12

25       119:3-120:5

26       120:22-122:23

27       127:14-130:13

28       132:11-133:16

2

[3449314.1]

1     134:18-135:2

2     136:15-153:4

3     157:14-164:25

4     165:20-170:9

5     171:5-172:1

6     173:18-174:14

7     175:22-193:10

8     200:4-201:12

9     202:8-203:6

10     206:21-207:5

11     222:18-225:2

12     225:23-226:10

13     231:25-234:12

14     241:2-242:15

15     253:16-254:6

16     Additionally, attached as Appendix A hereto are true and correct copies of the

17 exhibits discussed in Dr. Kuich's deposition.  The page and line numbers where each

18 exhibit is introduced are listed below.  Plaintiffs seek to move into evidence for the

19 October 15, 2019 evidentiary hearing all of the below documents except Exhibit 2, which

20 is a court order.

21     Exhibit 1:  (also designated as Pls' Trial Ex. 239):  16:16-17:1

22     Exhibit 2:  19:20-20:2

23     Exhibit 3:  (also designated as Pls' Trial Ex. 127):  50:1-20

24     Exhibit 4:  (also designated as Pls' Trial Ex. 182):  54:6-20

25     Exhibit 5:  (with class member identifying information redacted) (also designated as

26 Pls' Trial Ex. 210):  62:21-63:3

27     Exhibit 6:  (also designated as Pls' Trial Ex. 216):  63:4-8

28     Exhibit 7:  (also designated as Pls' Trial Ex. 194):  63:9-18

3

[3449314.1]

1    Exhibit 8:  (excerpt of document designated as Pls' Trial Ex. 164):  89:20-90:5

2    Exhibit 9:  (also designated as Pls' Trial Ex. 121):  144:2-145:19

3    Exhibit 10:  (also designated as Pls' Trial Ex. 119):  152:6-19

4    Exhibit 11:  (also designated as Pls' Trial Ex. 139):  160:13-161:16

5    Exhibit 12:  (excerpt of document designated as Pls' Trial Ex. 161):  183:20-184:17

6

7    DATED:  October 14, 2019          Respectfully submitted,

8                                      ROSEN BIEN GALVAN & GRUNFELD LLP

9                                      By:  */s Lisa Ells*
10                                           Lisa Ells

11                                      Attorneys for Plaintiffs

[3449314.1]

PLAINTIFFS' DESIGNATIONS FROM DEPOSITION OF DR. KEVIN KUICH FOR OCTOBER 15, 2019
EVIDENTIARY HEARING

# APPENDIX A



Division of Health Care Services
**Mental Health Program Management Overview**
(Page 1 of 7)

**NOT AN EXHIBIT TO GOLDING REPORT**

Red = Vacant
Blue = Pending Hire
Purple = Pending Establishment



Deputy Director, Statewide Mental Health Program
**Division of Health Care Services**
Katherine Tebrock
065-923-9603-001

Chief Psychiatrist, C&RS (Safety)
**Tele Psychiatry-North**
Kevin Kuich
065-943-9774-001

Chief Psychiatrist, C&RS (Safety)
**Tele Psychiatry-South**
Vacant
(Kaftarian 3/06/18)
065-923-9774-002

Chief Psychiatrist, C&RS (Safety)
**Statewide Policy Oversight**
Michael Golding
065-923-9774-001

Sr. Psychiatrist (Sup), C&RS
(Safety)
Varandra Gosein
095-320-9761-002

Sr. Psychiatrist (Sup), C&RS
(Safety)
Shannon Robinson
095-320-9761-001

Sr. Psychiatrist (Spec.),
C&RS (Safety)
Roy Andrew Schultz-Ross
(LT exp. 1/30/20)
(Kuich on LT exp.
11/30/18)
065-923-9759-003

John Lindgren
065-923-9759-007

Navreet Mann
065-923-9759-009

Melanie Gonzalez
065-923-9759-010

Staff Psychiatrist, C&RS
(Safety)
**Alienist**
Vacant
065-923-9758-XXX
(0.25)

Vacant
065-923-9758-XXX
(0.25)

Vacant
065-923-9758-XXX
(0.25)

Vacant
065-923-9758-XXX
(0.25)

Staff Psychiatrist, C&RS
(Safety)
SQ
(26.0)

Staff Psychiatrist, C&RS
(Safety)
CCC
HDSP
PBSP

Staff Psychiatrist, C&RS
(Safety)
SQ
(23.0)

Staff Psychiatrist, C&RS
(Safety)
CAC
CAL
CCI
CEN
CVSP
ISP
KVSP

**NOT AN EXHIBIT TO GOLDING REPORT**

Updated/Revised on 6/28/18

Red = Vaca~
Blue = Pen~      re
** Misallocat~ ~nd/or discrepancy

Division of Health Care Services
**Mental Health F      ~ram**
**Policy and Administrative Suppor~**
(Page 3 of 7)

Mi~~~ (Safety)
**Adm~~istrative**
Assistant Deputy Director
Britany Brizendine
065-923-9249-007

CEA B
**Statewide Planning and Policy**
Associate Director
Angela Ponciano
065-923-7500-002

SSM II
**Policy Support**
Jennifer Johnson
065-923-4801-001

CEA A
**Licensing and Accreditation**
Chief
Vacant
(Martin 9/25/17)
065-923-7500-004

HPS I
Julia Rodden
065-923-8338-003

Susie Sim
065-923-8338-004

Lisa Holcomb
065-923-8338-005

Byron Russell
065-923-8338-007

Fu Yiu
065-923-8338-009

Francesca Basa
065-923-8338-011

Cynthia Bowens
065-923-8338-918
(LT exp. 04/01/19)

SSM I
**Training**
Tiffany Nguyen
065-923-4800-007

SSA/AGPA
Kitdy Rakthay
065-923-5393-828

Hanna Burgess
065-923-5393-829

Timothy
Lindquester
065-923-5393-830

Erica Windtberg
065-923-5157-819

OT (Typing)
Vacant
(Windtberg 2/21/18)
065-923-1139-014

AHPA
Michael Ellis
065-923-8337-011
(On loan to Unit 510)

SSM I
Sean Christophersen
065-923-4800-006

SSA/AGPA
Brian Six
065-923-5393-813

Jocelyn Sanders
065-923-5393-818

Alexandrea Tonis
065-923-5393-821

Ashna Singh
065-923-5393-825

Faye Tran
065-923-5393-831

Tori Foss
065-923-5393-834

MST
Maria Jones
065-923-5278-002

SSM I
Andrew Greene
065-923-4800-005

SSA/AGPA
Kurt Cabigon
065-923-5393-801

Vacant
(Bowens 04/01/18,
LT exp. 4/1/19, ROR)
065-923-5393-820

Vacant
(Sim 9/13/17)
065-923-5393-822
(On hold to fund HPS I
918 pending RFER
approval)

Harutyun (Eric) Grigoryan
065-923-5393-824

John Barbour
065-923-5393-832

Office Technician (T)
Maria Barron
065-923-1139-008

Arianna Genetin
095-320-1139-003
(On loan from
Tele-Psych)

HPM II
Anne Lovell
** 065-923-8428-002

SSA/AGPA
Vacant
(Saechao 6/25/18,
LT exp. 6/24/19, ROR)
065-923-5393-837

HPS I
David Chaney
065-923-8338-012

Beverly Graham
065-923-8338-013

Pierre James
042-155-8338-001
(On loan from Unit 155)

CHSA I, CF
Vacant
(Esparcia 1/19/18)
**065-923-4910-001

HPM II
Vacant
(Padilla 1/15/18)
**065-923-8428-001

SSA/AGPA
Gloria Fernandez
065-923-5393-835

Mun Nguyen
065-923-5157-836

HPS I
Kandie Smith-
Donaldson
065-923-8338-014

Shannon
Magnuson
065-923-8338-015

Updated/Reviewed on 6/20/18

# NOT AN EXHIBIT TO GOLDING REPORT

Red = Vacant
Blue = Pending Hire

Division of Health Care Services
**Mental Health Program**
**Training and Chief Field Operations**
(Page 4 of 7)



MHA, CEA (Safety)
**Administrative**
Assistant Deputy Director
Britany Brizendine
065-923-9249-007

MHA, CEA (Safety)
**Training and Field Operations**
James Vess
065-923-9249-008

Chief Psychologist, CF
**Training**
Travis Williams
065-923-9859-010

Sr. Psychologist, CF
(Spec)
Marilyn Immoos
065-923-9287-005

Carrie Terry
065-923-9287-027

Sunita Ujagar
065-923-9287-028

Rachel Stieferman
065-923-9287-035

Clinical Social Worker
(Health/CF) Safety
Eric Hernandez
065-923-9872-003

Updated/Reviewed on 4/12/18

NOT AN EXHIBIT TO GOLDING REPORT

Red = Va
Blue = Pending Hire
Orange = Temporary Help

Division of Health Care Services
**Mental Health Program
Clinical Support**
(Page 5 of 7)



MHA, CEA (Safety)
**Administrative**
Assistant Deputy Director
Britany Brizendine
065-923-9249-007

Office Technician (T)
Gloria Gin
065-923-1139-013

MHA, CEA (Safety)
**Clinical Support/Suicide
Prevention**
Amy Eargle
065-923-9249-001

Sr. Psychologist, CF (Spec)
**CLARK**
Corey Scheidegger
065-923-9287-001

Kimberly Wells
065-923-9287-040

Sr. Psychologist, CF (Spec)
**Suicide Prevention**
Natalie Coss
065-923-9287-010

Amber Carda
065-923-9287-038

Denae Sammons
(LT exp. 10/22/19)
(Horon on LT exp. 7/23/18,
ROR)
065-923-9287-039

Russell Park
065-923-9287-916

HCER Requested Position
065-923-9872-916

Sr. Psychologist, CF (Spec)
**Clinical Support**
Kim Cornish
065-923-9287-002

Darcie Sharp-Galbreath
065-923-9287-011

Maria Giannuli
065-923-9287-014

Clinical Social Worker
(Health/CF) Safety
Marina Rangel
065-923-9872-004

Updated/Reviewed on 2/12/18

# NOT AN EXHIBIT TO GOLDING REPORT



Red = Vacant
Blue = Pending Hire
Purple = Pending Establishment

Division of Health Care Services
**Mental Health Program**
**Chief Field Operations**
(Page 6 of 7)

MHA, CEA (Safety)
**Administrative**
Assistant Deputy Director
Britany Brizendine
065-923-9249-007

MHA, CEA (Safety)
**Training and Field Operations**
James Vess
065-923-9249-008

MHA, CEA (Safety)
**Region I**
**Elk Grove**
Administrator
Kathleen O'Meara
065-923-9249-003

MHA, CEA (Safety)
**Region II**
**Fresno**
Administrator
Elaine Force
065-923-9249-004

MHA, CEA (Safety)
**Region III**
**Bakersfield**
Administrator
Christopher Cornell
065-923-9249-005

MHA, CEA (Safety)
**Region IV**
**Rancho Cucamonga**
Administrator
Margaret McAloon
065-923-9249-006

AHPA
Stacy Hart
065-923-8337-008

Sr. Psychologist, CF (Sup)
**MDO**
Juliana Rohrer
065-923-9288-005

AHPA
Daniel Stebbins
(LT exp 4/22/19)
(Cherry on XXX, ROR)
065-923-8337-014

Sr. Psychologist, CF (Sup)
**MDO**
Stacy McClain
065-923-9288-004

AHPA
Felicia Lopez
065-923-8337-010

Sr. Psychologist, CF (Sup)
**MDO**
Rick Bjorklund
065-923-9288-003

Sr. Psychologist, CF (Sup)
**Private Prison Oversight**
Nina Hudspeth
(LT exp. 5/11/19)
065-923-9288-002

Sr. Psychologist, CF
(Spec.)
Robin Farrell
065-923-9287-009

Dominique Bressi
065-923-9287-023

Andrea Ames
065-923-9287-029

Corey Montoya
065-943-9287-001

Holly Parks
095-320-9287-004
(On loan from field)

Psychologist-Clinical, CF
Dina Nolte
065-923-9283-001

**MDO**
Angela Sherman
Pending Hire: 8/31/18
065-923-9283-007

Vacant
(Gleason 11/8/17)
065-923-9283-014

Robert Sargent
065-923-9283-015

Felicia Bloem
065-923-9283-021

Richard Lowenthal
065-923-9283-916

Sr. Psychologist, CF
(Spec)
Caitlin Chinn-
Goshgarian
065-923-9287-015

Carrie Anaforian
065-923-9287-024

Shailia Douglas
065-923-9287-030

Terri Pitterger
095-320-9287-002
(On loan from field)

Psychologist-Clinical, CF
**MDO**
Sergio Castillo
065-923-9283-010

Richelle Barb
065-923-9283-011

Eric Roth
065-923-9283-013

Alexis Vosburg
065-923-9283-016

Psychologist-Clinical, CF
**MDO**
Tamar Kenworthy
065-923-9283-017

Megan Holden
065-923-9283-020

Guillermo Franco
065-923-9283-022

Erich Rueschenberg
065-923-3823-916

Lance Portnoff
065-923-3823-916

Sr. Psychologist, CF
(Spec)
Ann Nicholas
065-923-9287-021

Kenneth Olsen
065-923-9287-025

Mary Freire
065-923-9287-037

Psychologist-Clinical, CF
Lauren Thomas
065-923-9283-004

**MDO**
Jessica Garofalo-Howes
065-923-9283-008

Timothy Tennyson
065-923-9283-009

Margo Parker
065-923-9283-012

Elaine Mura
065-923-9283-018

Alison Stanley
065-923-9283-019

AHPA
Jeff Tackett
507-111-2275-999
(Tackett on T&D to
065-923-8337-015
thru 3/1/19)

HPS I
Alan Valle
(LT exp 7/31/19)
065-923-8338-010

Sr. Psychologist, CF (Spec)
Diane Couto Da Silva
065-923-9287-012

Dina Khoury
(LT exp. 7/31/18)
(Meyers on LT
exp. 3/12/19, ROR)
065-923-9287-026

Brian Gotterer
065-923-9287-034

# NOT AN EXHIBIT TO GOLDING REPORT

Updated/Reviewed 6/7/19

Red = Vacant
Blue = Pending Hire
Purple = Pending Establishment

----- = Indirect reporting relationship

Division of Health Care Services
**Mental Health Program**
(Page 7 of 7)

MHA, CEA (Safety)
**Administrative**
Assistant Deputy Director
Britany Brizendine
065-923-9249-007

MHA, CEA (Safety)
**In-Patient/Quality Management**
Laura Ceballos
065-923-9249-002

***Sr. Psychiatrist (Spec)
C&RS (Safety)
Jacob Adams
(LT expires 4/22/19)
(Schultz-Ross on LT exp.
1/30/20, ROR)
065-940-9759-001

Sr. Psychiatrist (Spec.)
C&RS (Safety)
Jack Gills
065-923-9759-011

Psychologist-Clinical, CF
Sylvia Shirikian
065-923-9283-918
(.5)

SSM I
**In-Patient Referral Unit Support**
Crystal Bender
065-900-4800-009

Office Technician (T)
Toniela Williams
065-923-1139-006

SSA/AGPA
Benjamin Molin
065-923-5393-815

Daniel Mendenhall
065-923-5393-826

Christopher Gallegos
065-923-5393-827

Ashley Caluag
065-943-5393-918

Ubaidulla Zhion
065-943-5393-918

Tiffany Kuy
065-943-5393-918

Chief Psychologist, CF
Shama Chaiken
065-923-9859-XXX
(LT exp. 12/31/19)

Sr. Psychologist, CF (Spec)
**In-Patient Referral Unit (IRU)**

Stephanie Skewes
065-923-9287-XXX
(LT exp. 9/18/18)

Latoya Brogdon
065-923-9287-XXX
(LT exp. 10/1/18)

Gretchen Huntington
065-923-9287-XXX
(LT exp. 10/1/18)

Ramona Beresford-Howe
065-923-9287-XXX
(LT exp. 03/18/19)

Marni Schneider
065-923-9287-XXX
(LT exp. 7/4/19)

(All positions pending BCP approval)

Sr. Psychologist, CF (Spec)
Brian Zollweg
065-923-9287-036

Chief Psychologist, CF
**Quality Management**
John Rekart
065-923-9859-003

Sr. Psychologist, CF (Spec)
**EOP Hub Certification**
Robert Canning
065-923-9287-033

Sr. Psychologist, CF
(Spec)
David Leidner
065-923-9287-017

Sr. Psychologist, CF
(Spec)
**CQIT**
Steven Cartwright
065-923-9287-031

Carol Anderson
(LT exp. 12/5/18)
065-923-9287-032

Clinical Social Worker
(Health/CF) Safety
Pak Yan Leung
065-923-9872-001

Sr. Psychologist, CF (Spec)
**EHRS**
Deana Rogers
065-940-9287-001

HPS I
**EHRS**
Andres Murillo
(LT exp. 4/30/19)
(Troung on T&D to
042-040-1401-016,
exp.4/15/20, ROR)
065-940-8338-001

Teresa Owens
065-940-8338-002

HPS I
Ricardo Castillo
065-923-8338-001

SSA/AGPA
**EHRS**
Ernesto Gomez
Pending Hire: TBD
(Murillo 4/30/18, LT
to 065-940-8338-001,
exp 4/30/19, ROR)
065-940-5393-800

Talma-Topeka Gorman
065-940-5157-801

Natasha Lim
Pending Hire: 8/16/18
065-940-5393-802

**NOT AN EXHIBIT TO GOLDING REPORT**

Updated/Reviewed on 7/2/18

1
2
3
4
5
6
7
8                        UNITED STATES DISTRICT COURT
9                  FOR THE EASTERN DISTRICT OF CALIFORNIA
10
11    RALPH COLEMAN, et al.,                    No.  2:90-cv-0520 KJM DB P
12              Plaintiffs,
13        v.                                    ORDER
14    GAVIN NEWSOM, et al.,
15              Defendants.
16
17
18          As required by the court's August 14, 2019 order, ECF No. 6242, the parties have

19    filed responses to that order.  ECF No. 6255 (Plaintiffs' Response); ECF No. 6257 (Defendants'

20    Response).  The court has reviewed those responses and now makes the following orders.

21          1.  Without objection, the court's evidentiary hearing to address specific issues

22    arising from the Golding Report and the Neutral Expert Report, as described in the August 14, 2019

23    order, is set for **October 15, 2019 beginning at 9:00 a.m.**[1]

24          2.  The evidentiary hearing will cover the following issues as discussed in the August

25    14, 2019 order:

26    /////

27    ───────────────────────

28    [1] The court is advancing the start time for the hearing to 9:00 a.m., from the 10:00 a.m. time
      previously contemplated.

                                        1

Δ π EXHIBIT 2
Deponent Kuich
Date 9.19.19 Rptr A.b
WWW.DEPOBOOK.COM

1                    a. Issue B: Redefining "Monthly" to Lengthen the Intervals between

2                    Enhanced Outpatient (EOP) Appointments;

3                    b. Issue E: Reporting of Scheduled and Missed Appointments; and

4                    c. Issue F: Psychiatric Supervisors Acting As Line Staff.

5          As discussed in the August 14, 2019 order, as to each of these issues the hearing

6 will be narrowly focused by the court's questions designed to assist the court in understanding both

7 how and why misleading information in each of the three areas was developed and presented to the

8 court and/or the Special Master. The court also anticipates asking selected questions directed to

9 clarifying the context in which the misleading information was generated and presented. The court

10 may also ask questions concerning remedial steps to cure the misrepresentations retrospectively

11 and prospectively, to clarify steps already taken or that the court may consider ordering.

12          As discussed below, the court anticipates hearing testimony from several witnesses

13 identified below. Each witness will be questioned first by the court, with the parties permitted to

14 ask follow-up questions within the parameters defined by the court's questioning. The parties will

15 be permitted to call rebuttal witnesses at the conclusion of the hearing only if allowed by the court,

16 upon a showing that the testimony of any such witness is material to the court's inquiry and

17 necessary to a complete and just resolution of the issues.

18          3. Witnesses will be called in the following order and will be questioned about one

19 or more issues, as described below.

20              a. Dr. Michael Golding: Issues B, E, and F. The court currently anticipates

21 the primary focus of its questioning of Dr. Golding will be on when he learned of the facts

22 surrounding each issue, what steps he took to address each issue internally, and his views, if any,

23 about why one or more issues could not be resolved successfully internally and prior to presentation

24 of misleading information to the court and/or the Special Master.

25                  b. Former Deputy Director Katherine Tebrock: Issues B, E, and F.

26                  c. Dr. David Leidner: Issues B and E.

27                  d. Dr. Laura Ceballos: Issues B and E.

28                  e. Assistant Deputy Director Angela Ponciano: Issue F.

1       f. Dr. John Rekart: Issue E.

2       g. Assistant Deputy Director Brittany Brizendine: Issue F.

3       h. Nicholas Weber, Attorney with Office of Legal Affairs for the
4       California Department of Corrections and Rehabilitation (CDCR): Issues B, E, and F.

5
6       i. Melissa Bentz, Attorney with Office of Legal Affairs for the CDCR: Issues B, E, and F.

7       j. Deputy Legal Affairs Secretary Rei Onishi: Issues B, E, and F.

8       In addition, the court finds Dr. Kevin Kuich may have testimony relevant and
9 material to issues E and F, and possibly B. Dr. Kuich has informed the court and plaintiffs' counsel
10 that he is unavailable to testify in open court at the time set for hearing. Plaintiffs' request that the
11 court grant the parties leave to depose Dr. Kuich during the week of September 16, 2019 has been
12 GRANTED, with the deposition to occur on Thursday, September 19, 2019. The court directs the
13 parties to inquire generally as to whether Dr. Kuich has information relevant to the court's inquiry
14 about how and why misleading information was presented to the court and/or the Special Master
15 in the three areas encompassed by issues B, E, and F. If he does, the parties should clarify through
16 focused deposition questions when he learned of any facts related to an issue, what steps he took,
17 if any, to address each issue internally, and his views, if any, about why one or more issues could
18 not be resolved successfully internally and prior to presentation of misleading information to the
19 court and/or the Special Master.

20       4. The following schedule for exhibits, proposed by plaintiffs, is adopted with the
21 reminder that the hearing will be narrowly focused as described in this order.

22       a. September 24, 2019: Last day for parties to exchange evidentiary exhibits
23 they will seek to offer at the hearing.

24       b. October 1, 2019: Last date for parties to exchange any demonstrative
25 exhibits they will seek to offer at the hearing.

26       c. October 8, 2019: Last day for parties to file a joint list of evidentiary
27 exhibits and a joint list of demonstrative exhibits they may seek to present at the hearing.

28

1        The court expects the parties to meet and confer on or before October 6, 2019 in an

2 effort to resolve any evidentiary objections that may be raised in response to proposed exhibits.

3 Any objections that cannot be resolved by the parties shall be filed with the court on October 8,

4 2019 with the lists of joint exhibits.

5        5. Defendants are granted fourteen days from the date of this order to file and serve

6 evidence in support of the assertion in their response to the court's August 14, 2019 order that they

7 "did not modify the business rule timely psychiatry contacts conducted for patients in the ASU

8 EOP Hub program" and their corresponding assertion that they "no longer need[ ] to resubmit the

9 five ASU EOP Hub certification letters" they previously represented contained misleading data.

10 *See* ECF No. 6257 at 27.

11        6. Plaintiffs are granted fourteen days from the date of this order to file and serve a

12 response to defendants' proposal for remedying the misleading information contained in timely

13 psychiatry performance reports and documents generated therefrom. *See* ECF No. 6257 at 27-29.

14        IT IS SO ORDERED.

15 DATED: September 17, 2019.

16

17                     UNITED STATES DISTRICT JUDGE

18

19

20

21

22

23

24

25

26

27

28                     4

# EXHIBIT AA
# (2018-07-17-1722hrs)



**Golding, Michael@CDCR**

| | |
|---|---|
| From: | Golding, Michae@CDCR |
| Sent: | Tuesday, July 17, 2018 5:22 PM |
| To: | Kuich, Kevin@CDCR |
| Subject: | FW: CHCF Clinic Model |

7/17/18 ①

Slight edit

**Michael Golding, M.D.**
Statewide Chief Psychiatrist
Mental Health Support Program
California Department of Corrections and Rehabilitation

Phone: 916.662.6541
Email: michael.golding@cdcr.ca.gov



Learn easy ways to save water
during California's drought at
        SaveOurWater.com

**From:** Golding, Michael@CDCR
**Sent:** Tuesday, July 17, 2018 5:17 PM
**To:** Kuich, Kevin@CDCR
**Subject:** CHCF Clinic Model

Hi,

Visit to CHCF on Tues 17th

Kevin Kuich, MD (Statewide Telepsychiatry Chief) and I (Michael Golding, MD Statewide Chief Psychiatrist CDCR) went to CHCF on Tuesday the 17th of July. We visited all yards and spoke with the 3-on site psychiatrists who were there today. Two of them work in the crisis bed and one works in Ad Seg EOP. We also spoke at length with Kandace Adkins. The CHCF Chief Psychiatrist.

**Clinic model:**
*Crisis Bed*
There is no clinic model in the crisis unit hospital beds. Custody will bring patients to seated psychiatrists for initial psychiatric appointments, but not follow-up visits which are all cell-side. There are 3 rooms which all the psychologists, social workers, and Rec Therapists compete for in order to have the privilege of being able to see patients confidentially. The two physicians in the crisis bed were clear that there was no pecking order for these room assignments. Rec therapists have as much priority as physician psychiatrists in claiming the rooms or claiming the custody officer's time. We confirmed the "first come first serve" model with custody.

1

7/17/19 ②

Practically, the absence of clinic space or a clinic model means that psychiatrists will attempt to see crisis bed patients for their initial appointment in a confidential space, but they attempt no follow-up appointments in a confidential setting given the office shortages.

Instead all follow-up appointments are cell-side. Given time constraints, Dr. Black cannot use the shared room (that the Psychologists, Rec Therapists, and Psychiatrists compete for) in order to dictate notes. He says he needs to use Dragon (to dictate his notes), but he has no office and therefore when he leaves the competed-for-space there then is no quiet space where the computer can accurately process his voice. He notes that the occupational therapy supervisor has an office but thinks he should have one to be able to dictate his notes.

If he returns to his "office" (a chair at a table in an open room with many people seated and walking about), he does not have the quiet to dictate. Lack of office space is a constant.

Both psychiatrists said that their decision making was not adequately considered. Dr. Black and Dr. Sandhu both expressed that often when they go to treatment teams, they find out that their patients are going to be discharged during treatment team, sometimes in the beginning of the team when it is announced or sometimes when the patient is told. Effectively the psychiatrists opinion is not considered in making many of the decisions for discharge and both psychiatrists say that their opinion has been overruled. Both asked who is ultimately in charge when discharge decisions are made. They both said that it seemed that the psychologists who made the discharge decisions were in charge and did not need to consider their medical opinion.

On the other hand, they said that if they vigorously objected, often but not always, the psychologists running the treatment team (and making the decisions) would change his or her mind. Nonetheless it was clear that many and most of the decisions about discharge were made by psychologists without consulting the psychiatrist and the decision was a *fait accompli* when the psychiatrist first heard about it in the treatment team.

The psychiatrists also thought that having just psychologists determine that a patient is medically appropriate for admission to the crisis bed hospital is problematic and dangerous. They say that the psychologists determine that it is OK for the patient to come to their hospital and the physician psychiatrist is not consulted. Dr. Atkins (the Chief Psychiatrist) said the admission team used to consult with her, but not anymore. She says that many patients are medically compromised and they hear about the problems after the patient has arrived, when some preparation would have been better.

Huddle in the AM takes about ½ hour. There are about two hours per day of treatment team meetings. Shower time is between 2:30 to 4:30. There is about an hour per day of groups that take the patient away. Huddle plus IDTT plus group takes between 8:00-11:00. Psychiatrists have between 11:00-2:30 to compete for the available rooms for the privilege of having confidential appointments with the patients. After 4:30 custody is usually not available so patients can only be seen cell-side. Psychiatrists usually use the time after 2:30 to do documentation.

*AdSeg EOP*

We visited Ad Seg EOP. There is no clinic model present. The psychiatrist (Dr. Yudovski) says that he is competing with the patients who are on grounds or in groups. Patients will not be brought to him in general but he says he has worked out how to see patients in the yard (standing up) and interacts with many of his patients that way. He also sees them cell-side. In terms of his ability to be involved with decisions about level of care change, he says that he tries to just agree with the decisions that the psychology leaders make (and they usually do not consult him). He says that he has hoped that when he does have a strong medical opinion about a particular patient (because of medication changes or instability) that at least at that point the psychology leadership would hear him out. But he says that the few times he has tried to change a level of care decision, the psychologist simply said, "No."

The Ad Seg psychiatrist frequently sees patients cell-side, but does not know how to record these appointments as non-confidential. The EHRS default-setting is that the appointment is confidential, so even if the psychiatry team were allowed to know the EHRS %'s of patients that are documented as being seen cell-side, since many of our psychiatrists

2

(including this one) do not know how to use the EHRS to record that, the appointments are recorded as confidential though they are not (there are simple fixes to make it easy to record this but these have not been allowed).

C-yard                                                                                                          7/17/18   3
No one shows up" (Chief Psychiatrist Dr. Atkins). Doctors have to find the patients to treat them.

C-Yard: Dr. Atkins noted that the general medical physician has a large independent office and then a room right next to it (a large exam room). Dr. Atkins points out that none of the psychiatric physicians have anything like that. There are two spaces in which patients can be seen (if they were brought). Social Workers, Psychiatrists, and Psychologists compete to use those rooms, but Dr. Atkins said that in general it has not been hard for the psychiatrist to gain access to these confidential spaces. Indeed when we were there, no one was in either of the spaces, so there appears to be space available. But per Dr. Adkins, the hard part on "C-yard" is "finding the patient" to be able to complete an appointment.

Some of the medical yards have 4-beds per dorm. It is hard for the psychiatrist to either get the patient to a room and the room itself is not confidential because of three other medical patients who are there.

Dr. Atkins herself does have an MA assigned to her who helps her to accomplish her tasks. None of the admins assigned to the CMH in general are able to help her but she is very happy about the MA (we explained to her that MA's are not supposed to be used that way, but to assist the clinical staff. Instead, the admins helping the CMH are supposed to be shared with her which they are not.

Dr. Atkins fills in for her psychiatrists and sees patients, like more than half (about 60%) of the Chiefs and Senior Supervisors across the state. There certainly is no clinic manager in any setting nor is there time or personnel available for Dr. Atkins to try to arrange that coverage.

In short, there is no clinic structure at CHCF, psychiatrists struggle for confidential spaces which are frequently absent, and finding patients is a daily struggle. There is not much respect for medical decision-making by physician psychiatrists, but psychologists fill in with medically involved decisions by determining whether the medical context is safe for patients to be admitted in crisis beds hospitals, when medications are titrated sufficiently for patients to leave crisis bed hospitals, when levels of care should be changed in AdSeg. and throughout the hospital etc.

Michael

**Michael Golding, M.D.**
Statewide Chief Psychiatrist
Mental Health Support Program
California Department of Corrections and Rehabilitation

Phone: 916.662.6541
Email: michael.golding@cdcr.ca.gov



**Save Our Water**

Learn easy ways to save water
during California's drought at
SaveOurWater.com

7/17/18
④

4

XAVIER BECERRA
Attorney General of California
WILLIAM C. KWONG
Acting Senior Assistant Attorney General
DANIELLE F. O'BANNON
JAY C. RUSSELL
Supervising Deputy Attorneys General
ELISE OWENS THORN, State Bar No. 145931
CHRISTINE M. CICCOTTI, State Bar No. 238695
CHAD STEGEMAN, State Bar No. 225745
Deputy Attorneys General
  1300 I Street, Suite 125
  P.O. Box 944255
  Sacramento, CA 94244-2550
  Telephone: (916) 324-4921
  Fax: (916) 324-5205
  E-mail: Elise.Thorn@doj.ca.gov
*Attorneys for Defendants*
*California Department of Corrections and*
*Rehabilitation - General*

Δ **EXHIBIT** 4
Deponent Kulch
Date 9.19.19 Rpt: Ab
WWW.DEPOBOOK.COM

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **RALPH COLEMAN, et al.,** | 2:90-cv-00520 KJM-DB (PC) |
| Plaintiffs, | **DECLARATION OF KATHERINE TEBROCK IN SUPPORT OF DEFENDANTS' RESPONSE TO THE SPECIAL MASTER'S REPORT ON THE STATUS OF MENTAL HEALTH STAFFING AND THE IMPLEMENTATION OF DEFENDANTS' STAFFING PLAN** |
| v. | |
| **EDMUND G. BROWN JR., et al.,** | |
| Defendants. | |

I, Katherine Tebrock, declare:

1.    I am the Deputy Director of the California Department of Corrections and Rehabilitation's (CDCR) statewide Mental Health Services Delivery System. I am competent to testify to the matters set forth in this declaration and if called upon to do so, I would and could so testify. I make this declaration in support of Defendants' Response to The Special Master's

1

1   Report on the Status of Mental Health Staffing and the Implementation of Defendants' Staffing

2   Plan.

3       2.   I was appointed as Deputy Director of the Statewide Mental Health Program in

4   November 2015. I am familiar with the numerous and complex policies and procedures that

5   govern the prison mental health care delivery system at the institutional level and have visited and

6   evaluated the prisons with mental health care programs. I am also responsible for and supervise

7   the mental health system's headquarters and regional teams, and am familiar with *Coleman*

8   mandates. I previously served as Chief Deputy General Counsel of Policy with CDCR's Office

9   of Legal Affairs, where my duties included management and oversight of the health care legal

10   team, including the *Coleman* class action litigation.

11       3.   Telepsychiatry is a proven clinical tool that ensures adequate and appropriate mental

12   health services for the *Coleman* class. Telepsychiatry is especially helpful in locations where on-

13   site staff have been difficult to recruit or in places where staffing levels were recently adjusted

14   and CDCR has not yet filled the newly allocated positions.

15       4.   In 2016, CDCR issued a memorandum setting forth its policy to review inmates at the

16   Correctional Clinical Case Management System level of care. Attached hereto as Exhibit 1 is a

17   table which sets forth the results of that review. Of the 2,128 inmates reviewed, 415 were

18   removed from the Correctional Clinical Case Management System to the General Population.

19   This review was a thoughtful and considered approach to determining whether patients were

20   placed at the correct clinical level of care. There is no reason to expect a different result for the

21   inmates at the Enhanced Outpatient Program level of care. The Program Guide already describes

22   objective criteria to review and potentially discharge patients from the Enhanced Outpatient

23   Program, and CDCR does not propose to deviate from that criteria.

24       5.   CDCR has committed to address the concerns raised in the Special Master's Staffing

25   Report related to the Enhanced Outpatient Program review memorandum. The revised

26   memorandum takes into account the current policy to assess inmates' appropriate level of care,

27   both to higher and lower levels. The newly refined memo was provided to the Special Master and

28

2

1    Plaintiffs' counsel on March 29, 2017. Defendants look forward to discussing and implementing

2    the review, working with the Special Master and the Plaintiffs' counsel.

3        6.    The following tables provide the number of completed psychiatrist contacts per

4    appointment based on the data entered in the Electronic Health record System and the Mental

5    Health Tracking System for 2015 and 2016:

**Monthly Psychiatry to Patient Contact**

|  | Total Appointments 2015 | Total Appointments 2016 |
|---|---|---|
| **January** | 25,828 | 24,005 |
| **February** | 24,219 | 24,207 |
| **March** | 26,720 | 25,619 |
| **April** | 27,002 | 23,457 |
| **May** | 25,225 | 23,986 |
| **June** | 25,947 | 24,406 |
| **July** | 27,060 | 22,392 |
| **August** | 26,063 | 21,049 |
| **September** | 24,958 | 22,425 |
| **October** | 26,268 | 22,782 |
| **November** | 22,133 | 21,514 |
| **December** | 24,501 | 22,035 |
| **TOTAL** | **305,924** | **277,877** |

16        7.    In 2015 CDCR provided 305,924 psychiatry appointments to Coleman class members.

17    In 2016 CDCR provided 277,877 psychiatry appointments to Coleman class members. The

18    appointment data does not include the thousands of hours psychiatrists participated in

19    Interdisciplinary Treatment Team meetings and spent seeing patients at unscheduled

20    appointments, such as informal cell-front exchanges and inquiries into mental health during

21    medical examinations, and virtually every other instance in which CDCR personnel inquire into

22    an inmate's well-being.

23        8.    CDCR's recent data on treatment provided to Coleman class members shows that in

24    many cases, despite an institution's staffing vacancy rate, inmates are provided quality treatment

25    at very high compliance rates. Exhibit 2 attached hereto sets forth the psychiatry staffing levels

26    by institution for the period August 1, 2016 through January 31, 2017, as well as the compliance

27    percentages from the Mental Health Performance Report for timely psychiatry contacts,

28    psychiatrist continuity of care, and the Medication Administration Process Improvement Project.

3

9.    CDCR provides mental health care to approximately 38,000 inmates spread across 34 institutions.  CDCR staffs approximately 6,900 Enhanced Outpatient Program beds, 450 Mental Health Crisis Beds, and 85 inpatient acute or intermediate care beds, in addition to providing care for approximately 29,000 Correctional Clinical Case Management System inmates.  To provide this care, CDCR was allocated $396,641,000.00 in fiscal year 2016/2017 to provide mental health care, an increase of $20,063,000.000 from the 2015/2016 budget.

10.  To provide care, CDCR employs 1,668.49, psychologists, social workers, psychiatrists, and supervisors.  CDCR clinicians routinely provide timely care to inmates.  In fact, over the past year, 95% of primary clinician contacts, those made by a psychologist or social worker, were made timely.  90% of psychiatrist clinical contacts were made timely.  And 98% of treatment team meetings were held timely.

11.  Attached hereto as Exhibit 3 is a table presenting the monthly vacancy rates for psychiatrists, psychologists and social workers by institution for 2014, 2015, and 2016.  The data is based on the Coleman Monthly Vacancy Report Mental Health Institution Vacancies by Institution by Classification provided monthly to the Special Master and Plaintiffs.

12.  To ensure medication monitoring for its patients, CDCR uses a detailed monitoring tool titled "Medication Administration Process Improvement Process."  This tool facilitates necessary and appropriate systemic monitoring of medication management, including blood levels, for the following types of medication: (1) Antipsychotics; (2) Clozapine; (3) Mood Stabilizers, including Carbamazepine, Depakote, and Lithium; and (4) Antidepressants.  CDCR clinicians generally maintain high levels of compliance, with most institutions achieving compliance above the ninety-fifth percentile.  CDCR's systemic, statewide compliance with its medication-administration measures totals ninety-six percent over the past twelve months.

13.  As of February 2017, CDCR employs 42.5 telepsychiatrists who provide services to inmates at the following seventeen institutions: California Correctional Institution, Central California Women's Facility, California Health Care Facility, California Institution for Men, California Institution for Women, California State Prison, Corcoran, California Treatment Facility, High Desert State Prison, Kern Valley State Prison, California State Prison, Los Angeles

4

1 County, Mule Creek State Prison, Pelican Bay State Prison, R.J. Donovan Correctional Facility,

2 Substance Abuse Treatment Facility, Salinas Valley State Prison, Valley State Prison, and Wasco

3 State Prison.

4      14.  CDCR's bed plan adds more Enhanced Outpatient Program beds at existing

5 Enhanced Outpatient Program institutions while closing one small program at Pelican Bay State

6 Prison.

7      15.  High Desert currently houses approximately 1,100 Correctional Clinical Case

8 Management System inmates.  Inmates at High Desert receive services from on-site psychology,

9 licensed clinical social workers, and telepsychiatrists. High Desert operates a ten-bed Mental

10 Health Crisis Bed unit in which patients receive services from a combination of on-site and

11 telehealth providers.

12      16.  There has not been a suicide at High Desert since 2014 and there are no known

13 negative patient outcomes attributable to the telepsychiatry services provided at High Desert.

14      17.  Closing High Desert to mentally ill inmates will require CDCR to place the mentally

15 ill High Desert population at other institutions.   Further clustering of high-acuity patients may

16 negatively impact care, particularly at prisons with more complex missions, and negatively

17 impact staff.

18      I declare under penalty of perjury under the laws of the United States of America that the

19 foregoing is true and correct.  Executed in Elk Grove, California on March 30, 2017.

20

21                            /s/ Katherine Tebrock

22                            KATHERINE TEBROCK
                           Deputy Director, Statewide Mental Health

23                            Program
                           *(original signature retained by attorney)*

24

25

26

27

28

# Exhibit 1

| TOTAL BY REGION | GP | CCCMS | EOP | MHCB | ICF | Paroled | Deceased | TOTAL |
|---|---|---|---|---|---|---|---|---|
| REGION 1 | 130 | 367 | 2 | 1 | 0 | 28 | 0 | 528 |
| REGION 2 | 64 | 468 | 2 | 0 | 0 | 32 | 0 | 566 |
| REGION 3 | 184 | 504 | 1 | 0 | 1 | 47 | 1 | 738 |
| REGION 4 | 37 | 201 | 2 | 0 | 0 | 56 | 0 | 296 |
| TOTAL (ALL) | 415 | 1540 | 7 | 1 | 1 | 163 | 1 | 2,128 |
| Percentage | 20% | 72% | 0% | 0% | 0% | 8% | 0% | 100% |



# Exhibit 2

Mental Health Staff-Psychiatrist Staffing vs Compliance
2/23/2017

| SITES | Total Allocated January 2017 | Total Filled January 2017* | Precent Vacant January 2017** | Timely Psychiarty Contacts[1] (Access to Care Banner) 8/1/2016-1/31/2017*** | Psychiatrist Continuity of Care[2] (Quality of Care Banner) 8/1/2016-1/31/2017*** | MAPIP[3] (QM Dashboard-Pop Health Management) 8/1/2016-1/31/2017*** | MH Mission |
|---|---|---|---|---|---|---|---|
| ASP | 5.0 | 3.6 | 71% | 100% | N/A | 100% | CCCMS |
| CCI | 7.0 | 4.5 | 65% | 91% | N/A | 93% | CCCMS |
| CCWF | 12.0 | 7.5 | 63% | 97% | 99% | 92% | FEMALE |
| CHCF | 24.0 | 17.4 | 73% | 72% | 88% | 92% | MHCB/EOP/CCCMS |
| CIM | 12.0 | 10.5 | 88% | 99% | N/A | 95% | RC/CCCMS |
| CIW | 9.0 | 8.4 | 93% | 97% | 75% | 98% | FEMALE |
| CMC | 19.3 | 15.5 | 80% | 99% | 97% | 98% | MHCB/EOP/CCCMS |
| CMF | 17.0 | 13.7 | 81% | 99% | 89% | 97% | MHCB/EOP/CCCMS |
| COR | 14.5 | 9.6 | 66% | 84% | 58% | 98% | MHCB/EOP/CCCMS |
| CRC | 6.0 | 5.5 | 92% | 93% | N/A | 99% | CCCMS |
| CTF | 7.0 | 4.3 | 61% | 92% | N/A | 95% | CCCMS |
| DVI | 4.5 | 5.1 | 113% | 100% | N/A | 99% | RC/CCCMS |
| FSP | 3.0 | 3.4 | 112% | 97% | N/A | 96% | CCCMS |
| HDSP | 6.0 | 4.0 | 67% | 99% | N/A | 94% | CCCMS |
| KVSP | 9.0 | 4.2 | 47% | 88% | 59% | 95% | EOP/CCCMS |
| LAC | 13.0 | 8.6 | 66% | 86% | 55% | 89% | EOP/CCCMS |
| MCSP | 17.0 | 14.7 | 86% | 87% | 84% | 90% | EOP/CCCMS |
| NKSP | 11.0 | 7.0 | 64% | 98% | N/A | 93% | RC/CCCMS |
| PBSP | 4.0 | 3.0 | 76% | 86% | N/A | 92% | CCCMS |
| PVSP | 5.0 | 4.0 | 81% | 98% | N/A | 100% | CCCMS |
| RJD | 16.0 | 12.2 | 76% | 78% | 73% | 96% | EOP/CCCMS |
| SAC | 22.0 | 11.7 | 53% | 66% | 81% | 89% | MHCB/EOP/CCCMS |
| SATF | 17.0 | 9.0 | 53% | 95% | 93% | 96% | MHCB/EOP/CCCMS |
| SCC | 3.0 | 3.0 | 100% | 100% | N/A | 96% | CCCMS |
| SOL | 7.5 | 4.0 | 53% | 84% | N/A | 92% | CCCMS |
| SQ | 9.0 | 13.3 | 148% | 99% | 98% | 96% | RC/CCCMS |
| SVSP | 13.0 | 5.8 | 45% | 78% | 90% | 90% | EOP/CCCMS |
| VSP | 11.0 | 7.0 | 63% | 73% | 81% | 99% | EOP/CCCMS |
| WSP | 10.0 | 7.1 | 71% | 98% | N/A | 78% | RC/CCCMS |

Footnote

[1] Percentage of patient-weeks during which patients were up-to-date on their required psychiatry contacts.

[2] Percentage of psychiatrist contacts seen by the most frequent provider.
All psychiatry contacts seen in person during the 5 months before the start of the reporting period through the end of the reporting period (6 months total) for any patient who has been EOP in the same housing program at the same institution, without interruption, for the past six months.

[3] Percentages in this column represent the average compliance for MAPIP Measures 1A-1G. These percentages do not capture MAPIP Measure 1A-1G that are baseline, 3 months or triggered by medication dose changes.

\* Includes registry

\*\* Percentage compliance < 90% highlighted in red

\*\*\* Percentage compliance > 90% highlighted in green

# Exhibit 3

## Vacancy Rates by Institution With Registry
## Psychiatrists[1]

| Institutions[2] | EOP[3] | 2014 Monthly Average | | | 2015 Monthly Average | | | 2016 Monthly Average | | | 3-Year Average |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Authorized Positions | Adjusted Vacancy[4] | Vacancy Rate | Authorized Positions | Adjusted Vacancy[4] | Vacancy Rate | Authorized Positions | Adjusted Vacancy[4] | Vacancy Rate | |
| Avenal State Prison | | 6.0 | 3.2 | 54% | 5.5 | 2.3 | 41% | 6.0 | 3.0 | 51% | 49% |
| CA Correctional Center | | 0.0 | 0.0 | NC | 0.0 | 0.0 | NC | 0.0 | 0.0 | NC | NC |
| CA Correctional Institution | | 6.0 | 2.3 | 39% | 5.5 | 1.9 | 34% | 4.5 | 2.9 | 64% | 45% |
| CA Health Care Facility | X | 25.5 | 14.3 | 56% | 26.0 | 10.9 | 42% | 27.0 | 14.4 | 53% | 50% |
| CA Institution for Men | | 14.4 | 1.8 | 12% | 14.0 | 2.0 | 14% | 12.0 | 0.0 | 0% | 9% |
| CA Institution for Women | X | 11.0 | 0.6 | 5% | 11.5 | 4.1 | 36% | 11.0 | 4.5 | 41% | 27% |
| CA Medical Facility | X | 16.8 | 3.3 | 19% | 17.6 | 2.6 | 15% | 19.0 | 3.2 | 17% | 17% |
| CA Men's Colony | X | 22.3 | 0.6 | 3% | 22.1 | 1.6 | 7% | 27.7 | 6.1 | 22% | 11% |
| CA State Prison - Corcoran | X | 11.4 | 3.4 | 30% | 11.3 | 2.0 | 18% | 12.3 | 4.5 | 37% | 28% |
| CA State Prison - Los Angeles | X | 13.2 | 1.1 | 8% | 13.0 | 1.5 | 12% | 14.0 | 6.9 | 50% | 23% |
| CA State Prison - Sacramento | X | 22.6 | 1.3 | 6% | 21.5 | 5.7 | 26% | 21.0 | 7.5 | 36% | 23% |
| CA State Prison - San Quentin[5] | | 53.7 | 19.3 | 36% | 59.5 | 14.0 | 23% | 60.2 | 9.4 | 16% | 25% |
| CA State Prison - Solano | | 6.8 | 0.3 | 4% | 7.0 | 0.7 | 10% | 7.0 | 1.2 | 16% | 10% |
| Calipatria State Prison | | 1.0 | 0.0 | 0% | 1.0 | 0.0 | 0% | 1.0 | 0.0 | 0% | 0% |
| Centinela State Prison | | 1.0 | 0.0 | 0% | 1.0 | 0.0 | 0% | 1.0 | 0.0 | 0% | 0% |
| Central CA Women's Facility | X | 10.4 | 2.9 | 28% | 11.3 | 3.4 | 30% | 11.0 | 3.0 | 28% | 29% |
| Chuckawalla Valley State Prison | | 1.0 | 0.0 | 0% | 1.0 | 0.0 | 0% | 1.0 | 0.6 | 58% | 19% |
| Correctional Training Facility | | 5.2 | 1.2 | 23% | 6.0 | 2.0 | 33% | 7.0 | 2.9 | 42% | 33% |
| Deuel Vocational Institution | | 3.3 | -0.7 | -21% | 3.5 | -0.5 | -16% | 5.0 | -0.2 | -4% | -14% |
| Folsom State Prison | | 4.0 | 0.9 | 23% | 4.0 | -0.1 | -2% | 4.0 | 0.1 | 2% | 8% |
| High Desert State Prison | | 3.3 | 2.7 | 80% | 2.2 | 2.2 | 100% | 2.0 | 2.0 | 100% | 93% |
| Ironwood State Prison | | 1.0 | 0.0 | 0% | 1.0 | 0.6 | 58% | 1.0 | 1.0 | 100% | 53% |
| Kern Valley State Prison | X | 9.4 | 1.5 | 16% | 10.0 | 3.5 | 35% | 10.0 | 5.4 | 54% | 35% |
| Mule Creek State Prison | X | 12.0 | 3.3 | 27% | 12.8 | 1.1 | 9% | 14.0 | 2.0 | 14% | 17% |
| North Kern State Prison | | 10.8 | 0.8 | 7% | 11.0 | -0.2 | -1% | 11.0 | 1.8 | 17% | 7% |
| Pelican Bay State Prison | | 3.0 | 1.1 | 37% | 3.0 | 1.3 | 44% | 4.0 | 2.2 | 55% | 45% |
| Pleasant Valley State Prison | | 7.2 | 2.6 | 36% | 6.0 | 2.3 | 39% | 5.0 | 0.3 | 6% | 27% |
| Rehabilitation Center | | 5.2 | 0.9 | 18% | 5.5 | 0.9 | 17% | 7.0 | 2.3 | 33% | 22% |
| Richard J Donovan | X | 16.0 | 0.1 | 0% | 17.5 | 1.0 | 6% | 18.0 | 8.4 | 47% | 18% |
| Salinas Valley State Prison | X | 6.3 | 0.4 | 6% | 8.5 | 3.4 | 39% | 10.5 | 7.4 | 70% | 39% |
| Sierra Conservation Center | | 4.0 | 1.0 | 25% | 4.0 | 1.0 | 25% | 4.0 | 0.7 | 17% | 22% |
| Substance Abuse Treatment Facility | X | 8.6 | 3.7 | 43% | 9.0 | 3.6 | 40% | 10.0 | 5.1 | 51% | 44% |
| Valley State Prison | X | 7.3 | 2.3 | 32% | 8.0 | 4.1 | 51% | 10.0 | 7.2 | 72% | 52% |
| Wasco State Prison | | 9.4 | 2.6 | 28% | 9.5 | -0.5 | -6% | 12.0 | 4.4 | 37% | 20% |
| **Total** | **14** | **339.1** | **78.8** | **23%** | **350.1** | **78.3** | **22%** | **370.2** | **120.1** | **32%** | **26%** |

[1] Classifications: Staff Psychiatrist, Senior Psychiatrist (Supervisor), and Chief Psychiatrist.
[2] Does not include California City.
[3] As of February 2017.
[4] Vacancy rates are adjusted to exclude employees on long-term sick leave and include position equivalents for temporary blanket positions and registry usage.
[5] San Quentin position and vacancy figures include all statewide telepsychiatry staff.
Data Source: Coleman Monthly Vacancy Report "Mental Health Institution Vacancies by Institution by Classification".

## Vacancy Rates by Institution With Registry
## Psychologists[1]

| Institutions[2] | EOP[3] | 2014 Monthly Average | | | 2015 Monthly Average | | | 2016 Monthly Average | | | 3-Year Average[4] |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Authorized Positions | Adjusted Vacancy[4] | Vacancy Rate | Authorized Positions | Adjusted Vacancy[4] | Vacancy Rate | Authorized Positions | Adjusted Vacancy[4] | Vacancy Rate | |
| Avenal State Prison | | 16.2 | 2.2 | 13% | 15.0 | -0.1 | -1% | 15.0 | -0.7 | -5% | 3% |
| CA Correctional Center | | 5.0 | 0.8 | 15% | 5.0 | -0.1 | -2% | 5.0 | 0.1 | 2% | 5% |
| CA Correctional Institution | | 20.0 | 2.7 | 14% | 20.8 | 4.2 | 20% | 24.3 | 5.2 | 21% | 18% |
| CA Health Care Facility | X | 46.2 | 8.5 | 18% | 53.5 | 6.3 | 12% | 62.0 | 16.9 | 27% | 19% |
| CA Institution for Men | | 37.8 | 2.0 | 5% | 38.4 | 1.3 | 3% | 35.5 | -0.7 | -2% | 2% |
| CA Institution for Women | X | 24.4 | 2.1 | 9% | 28.8 | 1.9 | 6% | 36.5 | -2.6 | -7% | 3% |
| CA Medical Facility | X | 44.7 | 2.4 | 5% | 47.5 | 2.4 | 5% | 54.0 | 4.1 | 8% | 6% |
| CA Men's Colony | X | 58.9 | 3.2 | 5% | 64.2 | 8.0 | 12% | 72.4 | 12.3 | 17% | 12% |
| CA State Prison - Corcoran | X | 41.9 | 6.6 | 16% | 53.8 | 10.2 | 19% | 75.7 | 18.3 | 24% | 20% |
| CA State Prison - Los Angeles | X | 44.3 | 4.8 | 11% | 47.5 | 4.6 | 10% | 55.0 | -0.5 | -1% | 7% |
| CA State Prison - Sacramento | X | 75.5 | 4.8 | 6% | 82.4 | 5.6 | 7% | 95.0 | 16.0 | 17% | 10% |
| CA State Prison - San Quentin | | 44.7 | 1.0 | 2% | 44.8 | -1.7 | -4% | 45.5 | 3.5 | 8% | 2% |
| CA State Prison - Solano | | 19.8 | 1.0 | 5% | 20.5 | 2.0 | 10% | 21.0 | 1.9 | 9% | 8% |
| Calipatria State Prison | | 7.1 | 0.6 | 9% | 6.5 | 0.3 | 4% | 6.0 | 0.1 | 1% | 5% |
| Centinela State Prison | | 6.0 | 0.1 | 2% | 6.0 | 0.4 | 6% | 6.0 | -0.1 | -1% | 2% |
| Central CA Women's Facility | X | 29.3 | 5.5 | 19% | 32.0 | 4.4 | 14% | 35.5 | 3.3 | 9% | 14% |
| Chuckawalla Valley State Prison | | 5.0 | 2.5 | 50% | 5.0 | 1.1 | 23% | 5.0 | 0.8 | 16% | 30% |
| Correctional Training Facility | | 15.2 | 2.1 | 14% | 17.0 | 0.2 | 1% | 18.5 | 2.1 | 11% | 9% |
| Deuel Vocational Institution | | 20.3 | 0.7 | 4% | 20.3 | 1.9 | 10% | 19.3 | 1.1 | 6% | 6% |
| Folsom State Prison | | 11.8 | 4.8 | 41% | 12.0 | 5.0 | 42% | 12.0 | 4.7 | 39% | 40% |
| High Desert State Prison | | 17.0 | 4.6 | 27% | 17.0 | 4.1 | 24% | 20.0 | 7.3 | 36% | 29% |
| Ironwood State Prison | | 5.0 | 0.7 | 15% | 5.0 | -0.2 | -4% | 5.0 | 0.4 | 8% | 6% |
| Kern Valley State Prison | X | 24.6 | 5.5 | 23% | 28.0 | 5.5 | 20% | 30.5 | 7.4 | 24% | 22% |
| Mule Creek State Prison | X | 46.3 | 6.0 | 13% | 51.2 | 2.8 | 6% | 60.5 | 8.3 | 14% | 11% |
| North Kern State Prison | | 34.0 | 4.5 | 13% | 34.5 | 4.9 | 14% | 35.0 | 8.2 | 24% | 17% |
| Pelican Bay State Prison | | 17.1 | 0.4 | 3% | 18.0 | 1.7 | 10% | 22.0 | 3.3 | 15% | 9% |
| Pleasant Valley State Prison | | 21.3 | 3.9 | 18% | 19.5 | 4.9 | 25% | 19.0 | 7.3 | 38% | 27% |
| Rehabilitation Center | | 13.0 | 1.5 | 12% | 13.5 | 2.5 | 19% | 16.0 | 3.1 | 19% | 16% |
| Richard J Donovan | X | 53.4 | -1.5 | -3% | 61.6 | -3.1 | -5% | 73.0 | 1.0 | 1% | -2% |
| Salinas Valley State Prison | X | 42.3 | 3.4 | 8% | 48.0 | 3.4 | 7% | 57.5 | 13.5 | 23% | 13% |
| Sierra Conservation Center | | 11.0 | 2.0 | 18% | 11.5 | 3.4 | 29% | 11.0 | 2.6 | 23% | 24% |
| Substance Abuse Treatment Facility | X | 43.9 | 8.0 | 18% | 47.5 | 12.9 | 27% | 51.5 | 11.0 | 21% | 22% |
| Valley State Prison | X | 21.4 | 3.3 | 16% | 27.2 | 5.1 | 19% | 35.5 | 9.3 | 26% | 20% |
| Wasco State Prison | | 35.1 | 6.8 | 20% | 37.0 | 8.1 | 22% | 40.0 | 6.9 | 17% | 20% |
| **Total** | **14** | **959.2** | **107.9** | **11%** | **1,040.2** | **114.1** | **11%** | **1,175.6** | **175.3** | **15%** | **12%** |

[1] Classifications:  Psychologist, Senior Psychologist (Specialist), Senior Psychologist (Supervisor), Clinical Psychology Intern, and Chief Psychologist.

[2] Does not include California City.

[3] As of February 2017.

[4] Vacancy rates are adjusted to exclude employees on long-term sick leave and include position equivalents for temporary blanket positions and registry usage.

Data Source:  Coleman Monthly Vacancy Report "Mental Health Institution Vacancies by Institution by Classification".

Vacancy Rates by Institution With Registry

## Social Workers[1]

| Institutions[2] | EOP[3] | 2014 Monthly Average | | | 2015 Monthly Average | | | 2016 Monthly Average | | | 3-Year Average |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Authorized Positions | Adjusted Vacancy[4] | Vacancy Rate | Authorized Positions | Adjusted Vacancy[4] | Vacancy Rate | Authorized Positions | Adjusted Vacancy[4] | Vacancy Rate | |
| Avenal State Prison | | 8.3 | 1.7 | 21% | 10.4 | 4.4 | 42% | 12.4 | 7.0 | 56% | 40% |
| CA Correctional Center | | 1.0 | 0.8 | 83% | 1.0 | -0.1 | -8% | 1.0 | 0.0 | 0% | 25% |
| CA Correctional Institution | | 13.6 | 1.3 | 10% | 14.8 | 1.3 | 8% | 16.0 | 1.5 | 9% | 9% |
| CA Health Care Facility | X | 12.2 | 0.1 | 1% | 13.0 | 0.1 | 1% | 14.0 | -1.3 | -9% | -2% |
| CA Institution for Men | | 18.8 | 2.0 | 11% | 20.0 | 2.3 | 11% | 20.0 | 0.3 | 1% | 8% |
| CA Institution for Women | X | 14.8 | 2.0 | 13% | 15.0 | 1.7 | 11% | 16.5 | 1.4 | 9% | 11% |
| CA Medical Facility | X | 20.5 | -1.1 | -5% | 20.5 | 0.5 | 2% | 16.5 | -2.5 | -15% | -6% |
| CA Men's Colony | X | 21.3 | 1.4 | 7% | 21.0 | 1.0 | 5% | 20.7 | 0.9 | 4% | 5% |
| CA State Prison - Corcoran | X | 19.3 | 1.2 | 6% | 21.7 | -1.5 | -7% | 21.8 | 1.5 | 7% | 2% |
| CA State Prison - Los Angeles | X | 18.7 | 3.3 | 17% | 21.0 | 7.6 | 36% | 20.0 | 1.9 | 10% | 21% |
| CA State Prison - Sacramento | X | 30.0 | 0.2 | 1% | 31.5 | 0.7 | 2% | 31.0 | 1.2 | 4% | 2% |
| CA State Prison - San Quentin | | 19.9 | 4.5 | 23% | 20.3 | 0.9 | 4% | 23.5 | 5.2 | 22% | 16% |
| CA State Prison - Solano | | 13.0 | 3.2 | 25% | 14.0 | 2.0 | 14% | 14.0 | 2.0 | 15% | 18% |
| Calipatria State Prison | | 1.0 | 0.0 | 0% | 1.0 | 0.0 | 0% | 1.0 | 0.0 | 0% | 0% |
| Centinela State Prison | | 1.0 | 0.1 | 8% | 1.0 | 0.0 | 0% | 1.0 | 0.0 | 0% | 3% |
| Central CA Women's Facility | X | 13.3 | 1.7 | 13% | 14.5 | 2.8 | 20% | 15.0 | 2.2 | 15% | 16% |
| Chuckawalla Valley State Prison | | 0.3 | 0.3 | 100% | 0.0 | 0.0 | NC | 1.0 | 0.5 | 50% | 75% |
| Correctional Training Facility | | 9.7 | 1.9 | 20% | 11.8 | 3.3 | 28% | 13.0 | 3.1 | 24% | 24% |
| Deuel Vocational Institution | | 6.3 | 0.5 | 8% | 7.0 | 0.4 | 6% | 7.0 | 1.5 | 21% | 12% |
| Folsom State Prison | | 5.0 | 2.2 | 43% | 5.0 | 2.0 | 39% | 6.0 | 3.0 | 49% | 44% |
| High Desert State Prison | | 8.0 | 1.5 | 19% | 8.5 | -0.8 | -9% | 10.0 | 0.8 | 8% | 6% |
| Ironwood State Prison | | 0.3 | 0.3 | 100% | 0.0 | 0.0 | NC | 1.0 | 1.0 | 100% | 100% |
| Kern Valley State Prison | X | 13.4 | 0.5 | 3% | 14.0 | 0.5 | 4% | 14.0 | 0.7 | 5% | 4% |
| Mule Creek State Prison | X | 19.0 | 0.2 | 1% | 19.0 | -2.4 | -13% | 21.5 | -3.9 | -18% | -10% |
| North Kern State Prison | | 11.8 | 1.6 | 14% | 13.0 | 0.9 | 7% | 13.0 | -0.8 | -6% | 5% |
| Pelican Bay State Prison | | 4.2 | 1.6 | 38% | 4.5 | -0.2 | -4% | 5.0 | 0.0 | 0% | 11% |
| Pleasant Valley State Prison | | 10.2 | 3.5 | 35% | 10.0 | 1.0 | 10% | 10.0 | 0.8 | 8% | 17% |
| Rehabilitation Center | | 7.6 | 3.0 | 40% | 9.5 | 2.8 | 29% | 10.0 | 1.8 | 18% | 29% |
| Richard J Donovan | X | 22.8 | 0.1 | 0% | 23.0 | -1.7 | -7% | 23.0 | -3.8 | -17% | -8% |
| Salinas Valley State Prison | X | 17.8 | 2.0 | 11% | 18.8 | 2.8 | 15% | 20.0 | 3.3 | 17% | 14% |
| Sierra Conservation Center | | 4.8 | 1.7 | 34% | 5.5 | 0.8 | 15% | 6.5 | 1.6 | 24% | 25% |
| Substance Abuse Treatment Facililty | X | 19.8 | 3.4 | 17% | 20.5 | 3.3 | 16% | 22.0 | 0.6 | 3% | 12% |
| Valley State Prison | X | 11.3 | 0.8 | 7% | 13.5 | 0.5 | 4% | 17.0 | 2.5 | 15% | 8% |
| Wasco State Prison | | 12.5 | 2.4 | 20% | 14.0 | 1.0 | 7% | 15.0 | -1.0 | -6% | 7% |
| **Total** | **14** | **411.4** | **49.8** | **12%** | **438.2** | **37.9** | **9%** | **459.4** | **32.9** | **7%** | **9%** |

[1] Classifications: Supervising Psychiatric Social Worker I and Clinical Social Worker.

[2] Does not include California City.

[3] As of February 2017.

[4] Vacancy rates are adjusted to exclude employees on long-term sick leave and include position equivalents for temporary blanket positions and registry usage.

Data Source: Coleman Monthly Vacancy Report "Mental Health Institution Vacancies by Institution by Classification".

| | |
|---|---|
| **From:** | Bentz, Melissa@CDCR <Melissa.Bentz@cdcr.ca.gov> |
| **Sent:** | Thursday, May 17, 2018 7:34 PM |
| **To:** | Lopes Matthew; Michael W. Bien; Steve Fama; Lisa Ells (LElls@rbgg.com) |
| **Cc:** | Cindy Radavsky (cradavsky@gmail.com); Hector Kristina; Henry Dlugacz (HDlugacz@BLHNY.com); 'jeffrey.metzner@ucdenver.edu' (jeffrey.metzner@ucdenver.edu); Cardoza Jonelie; 'Kerry C. Hughes, M.D.' (dockc99 @aol.com), Walsh Kerry F.; L Hayes; McClendon-Hunt, LaTri-c-ea; Maria Masotta; Lopes Matthew; Jones Mohamedu; mperrien@aol.com; Patricia Williams; Karen Rea; Raffa Steven; Costa Regina; rod@roderickqhickman.com; Tim Rougeux (trougeux@hotmail.com); Ponciano, Angela@CDCR; Tebrock, Katherine@CDCR; Lorey, Dawn@CDCR; Macomber, Jeff@CDCR; Mitchell, Kelly@CDCR; Brizendine, Brittany@CDCR; Moon, Andrea S@CDCR; Weber, Nicholas@CDCR; Hessick, Jerome@CDCR; Adriano Hrvatin; Andrew Gibson; Elise Thorn; Tyler Heath |
| **Subject:** | CDCR Psychiatry Staffing Proposal |
| **Attachments:** | CDCR Psychiatry Staffing Proposal.pdf; Attachment A- Desert Psychiatry Contacts.pdf; Attachment B- Desert Timely Psych Contacts and Referrals.pdf; Attachment C-CCCMS Patients Not on Psychiatric Medication.pdf; Attachment D- RC Fall 2017 Population Projections.pdf; Attachment E- April CIT Tracking Report 5.11.18.xlsx; Attachment F- RC and GP Timely Psychiatry Contacts.pdf; Attachment G- CCCMS ML Psychiatry Contacts.pdf; Attachment H- EOP ML Psychiatry Contacts.pdf |

Good evening,

Attached, please find CDCR's proposal to achieve a more efficient and effective MHSDS with adjustments to unneeded psychiatry positions.

We look forward to discussing these proposals with the Special Master and Plaintiffs' counsel.

Respectfully,

*Melissa C. Bentz*
Attorney, Class Action Team
Office of Legal Affairs
California Department of Corrections and Rehabilitation
Email:   Melissa.Bentz@cdcr.ca.gov
Phone:  (916) 324-7177
Fax:      (916) 327-5306

ATTORNEY CLIENT COMMUNICATION AND/OR ATTORNEY WORK PRODUCT – DO NOT
FORWARD COMMUNICATION WITHOUT THE EXPRESS PERMISSION OF THE AUTHOR.

1



**PROPOSALS TO ACHIEVE A MORE EFFICIENT AND EFFECTIVE MENTAL HEALTH SERVICES DELIVERY SYSTEM WITH ADJUSTMENTS TO UNNEEDED PSYCHIATRY POSITIONS**

On October 10, 2017, the Court ordered the California Department of Corrections and Rehabilitation (CDCR) to come into compliance with the staffing ratios set forth in the 2009 Staffing Model by October 10, 2018, with no more than a 10 percent vacancy rate. 10/10/2017 Staffing Order, ECF No. 5711 at 30. In response to this order, CDCR hired John Allen and Associates as consultants to review the Department's current staffing plan and recommend options for bringing the Department into compliance with the court-ordered vacancy rate.

On February 15, 2018, the Court asked the parties to consider whether there are "any adjustments to the psychiatry staffing ratios that could be made to alleviate the psychiatrists staffing shortages without compromising the constitutionally required access to adequate mental health care." 2/15/2018 Order, ECF No. 5786 at 4. In April 2018, the staffing consultants provided CDCR their initial recommendations. These recommendations were also shared with Plaintiffs and the Special Master.

Plaintiffs and the Special Master have asked CDCR to identify the recommendations that CDCR agrees should be adopted and plan to pursue. In accordance with the Court's February 15, 2018 order, and after carefully reviewing the consultants' recommendations as well as Plaintiffs' response to these recommendations, CDCR has developed a set of staffing-related proposals to achieve a more efficient and effective Mental Health Service Delivery System (MHSDS). As described below, some of the proposals are drawn directly from the consultants' initial recommendations; others reflect modified versions of the recommendations; and still others arise from CDCR's own independent efforts to resolve issues identified by the consultants. If implemented, these proposals will bring Defendants into compliance with the court's October 10, 2017, and June 13, 2002, orders. Defendants look forward to discussing these proposals in the workgroups between the parties.

I.    **Recommendations from the John Allen and Associates Staffing Report**

The staffing consultants provided recommendations in five areas that CDCR agrees should be addressed: 1) "right- sizing" and maintaining the appropriate Enhanced Outpatient Program (EOP) population; 2) improving EHRS functionality to align with MHSDS processes; 3) expanding the use of telepsychiatry; 4) changing the staffing allocations at desert institutions; and 5) moving away from a "one size fits all" approach to treatment. Staffing Consultants' Report at 40. The consultants also recommended improving job satisfaction by remedying burdensome on-call responsibilities for psychiatrists. *Id.* at 17-18. CDCR agrees that adjustments could be made in each of these areas that would improve the system and resolve some of the outstanding staffing issues.

A.    Review the EOP Population

The parties have long recognized that ensuring inmates are appropriately placed in the correct level of care is a cornerstone of providing adequate care and resolving staffing challenges. The staffing consultants' report also stressed the importance of "right-sizing" and maintaining an appropriate EOP population. Staffing Consultants' Report at 40, 42-43. Although based primarily on anecdotal information, the consultants' recommendation reinforces the necessity of this review and the importance of ensuring that the right inmate is in the right level of care so that staff can be properly allocated to each level of care. In July 2017, after months of discussion and negotiation with the Special

1

Master's team and Plaintiffs' counsel, CDCR initiated a review of the EOP population at Mule Creek State Prison. A review of the remaining EOP institutions began in January 2018, with the last institutional review beginning in January 2019. Data for the entire population is expected to be gathered by April 2019.

CDCR remains committed to continuing its EOP review process, as was previously agreed to with the Special Master and Plaintiffs' counsel.[1]

      B.   Improve the Electronic Healthcare Records System (EHRS)

The consultants' report identified improvements to EHRS as critical for increasing efficiency in the MHSDS. Staffing Consultants' Report at 40. In their May 9, 2018 Comments on Defendants' Staffing Experts Report, Plaintiffs agreed that the functionality of EHRS must be improved. Since the implementation of EHRS, CDCR has worked to improve the program so it is more user-friendly and works in tandem with the daily practices of mental health providers. However, CDCR acknowledges the consultants' point that more work needs to be done to support psychiatrists and to better align the logic and workflow of EHRS with the practices of CDCR's mental health system. *Id.* at 26.

CDCR is considering changes to three major areas of EHRS functions, that if improved could positively impact the work environment for psychiatry. These functions include: 1) Documentation; 2) Workflows; and 3) Scheduling. One example of how CDCR proposes to change EHRS is to improve automatic medication reconciliation, which is currently in progress. These improvements will decrease duplicative work and make the system more user-friendly for psychiatrists. CDCR is unable to give specific completion dates for some EHRS improvements as they require external CERNER resources. By improving psychiatrists' work environment and efficiency, psychiatrists should have more time to spend with their patients.

In the comments on Defendants' Staffing Experts Report, Plaintiffs stated that improving functionality of EHRS should be a priority and CDCR agrees. Mental Health is currently in discussion with it partners in the California Correctional Health Care Services (CCHCS) regarding the prioritization of the requested EHRS improvements. Both entities understand the importance of the requested EHRS improvements to psychiatry and the MHSDS as a whole.

      C.   Expand Telepsychiatry

CDCR has used telepsychiatry to treat patients since 1999. In its January 2017 staffing plan, CDCR indicated its intention to expand the use of telepsychiatry by opening additional telepsychiatry offices across the state and increasing the telepsychiatry team to at least 100 positions. The current space plan estimates office space for 105 telepsychiatrists by the end of 2018.

---

[1] During the All Parties Workgroup on Monday, May 14, 2018, the Special Master directed that Plaintiffs shall be allowed to attend four of the remaining EOP reviews. Plaintiffs have chosen to attend the IDTT portion of the EOP reviews at Central California Women's Facility, Salinas Valley State Prison, California State Prison, Corcoran, and California State Prison, Los Angeles County.

One of the consultants' main recommendations is to shift toward providing all outpatient psychiatry care though telehealth.[2] CDCR does not plan to adopt this recommendation in full. Instead, CDCR intends to continue to expand its use of telepsychiatry as appropriate and consistent with the telepsychiatry policy it is continuing to craft with the Special Master's team and Plaintiffs' counsel.[3] A number of CDCR's proposals to achieve a more efficient system depend on the expanded use of telepsychiatry.

> D. Reduce the Psychiatrist Allocation for Desert Institutions in Line with the Limited Workload for the Small Population Temporarily Housed There

CDCR's five desert institutions[4] do not consistently house inmates in the MHSDS and only provide interim mental health programming. These institutions are staffed only to provide necessary mental health care until the inmate can be transferred to an institution that treats MHSDS patients.[5] The Program Guide provides strict transfer timeframes to move MHSDS patients out of the desert institutions. *See* Program Guide at 12-1-16.

The 2009 Staffing Model allocates 0.5 psychiatrists to each of the desert institutions. 2009 Staffing Model at 20. However, the total number of psychiatry contacts for all five desert institutions, including urgent, emergent, and routine contacts, was only 403 over a six month period, meaning an average of 16.8 contacts *per week*. Attachment A- Desert Psychiatry Contacts. Therefore, the workload, which takes into account the average contacts and contact duration for all five desert institutions, could easily be accomplished by half of a psychiatrist allocation.

The staffing consultants' report, noting the inefficient allocation of psychiatrist positions to desert institutions, recommended that CDCR decrease the transfer timeline for CCCMS and EOP inmates out of desert institutions to seven days. Staffing Consultants' Report at 41-42. CDCR has determined that this transfer timeline is not feasible. At the same time, given the minimal workload associated with the small population for which care is provided, CDCR agrees that the psychiatry staffing allocation at the desert institutions should be reduced by using telepsychiatry to provide all required psychiatry care until a patient is transferred to a different institution.

---

[2] Defined as care for the CCCMS and EOP levels of care.

[3] Although the parties and the Special Master's Team are close to reaching an agreement on the telepsychiatry policy, a few important outstanding issues remain. During the workgroup call on Monday, May 14, 2018, the Special Master requested that Plaintiffs memorialize their agreements and concerns with the current version of the telepsychiatry policy in a letter by Monday, May 21, 2018. CDCR will then respond by Friday, May 25, 2018.

[4] California Conservation Center, Calipatria State Prison, Centinela State Prison, Chuckawalla Valley State Prison, and Ironwood State Prison.

[5] CDCR is meeting the needs of class members in the desert institutions. Over the past twelve months, each institution has been 100% compliant with timely psychiatry contacts and timely treatment team meetings. Appointments occurred as scheduled 98% to 100% of the time over the same timeframe. The institutions are 92% to 99% compliant with timely mental health referrals. *See* Attachment B- Desert Timely Psych Contacts and Referrals.

CDCR's proposal is two-fold: 1) reduce the psychiatry allocation for all desert institutions to 0.5; and 2) utilize telepsychiatry to allow access to all five desert institutions.

This proposal would result in a reduction of 2.0 psychiatry positions.

> E. Apply the Psychiatrist Staffing Ratio for the CCCMS General Population Only to the Percent of the Population Who are Prescribed Psychotropic Medication

The 2009 Staffing Model establishes a psychiatry staffing ratio for CCCMS patients in the General Population (GP) who are receiving psychiatric medication. This ratio is based on the Program Guide requirement that "[e]ach CCCMS inmate-patient on psychiatric medication" "be reevaluated by a psychiatrist a minimum of every 90 days." Program Guide at 12-3-11.

However, as the consultants pointed out, this staffing ratio is being incorrectly applied. *See* Staffing Consultants' Report at 45. While the staffing ratio should only be applied to CCCMS patients "on psychiatric medication," the ratio is in fact being applied to the entire CCCMS population, including thousands of CCCMS patients who are not prescribed any psychiatric medication and who are not seeing a psychiatrist. As a result, numerous psychiatry positions within the CCCMS program are currently allocated to provide psychiatry appointments once every 90 days to thousands of CCCMS inmates who are not receiving psychotropic medication and are not actually seeing a psychiatrist on a routine basis. These positions are not required under either the Program Guide or the 2009 Staffing Model. Nor are they required prophylactically in the event that the need for medication arises; CDCR already has systems in place to refer patients to psychiatrists should the need for medications arise and a separate psychiatry staffing allocation for urgent or emergent referrals. Plaintiffs would seem to agree. In their May 9, 2018 Comments on Defendants' Staffing Experts Report, they emphasized that "the Program Guide requires only those CCCMS patients on [psychiatric] medications to be seen every 90 days by a psychiatrist," and that "the notion that non-medicated CCCMS patients have the same minimum care requirements as CCCMS patients on psychotropic medication is wrong." CDCR intends to correct this error.

In addition to not requiring routine psychiatry contacts for those CCCMS inmates who are not on medication, psychiatrists should not be assigned to patients who are not currently prescribed psychotropic medication. Currently, CDCR assigns a psychiatrist to every inmate in the MHSDS, regardless of whether that inmate is on medication. The only workload for psychiatrists assigned to CCCMS inmates who are not on medication is to attend annual IDTTs, even though they are not required to see these inmates for routine contacts.

As noted above, this practice is at odds with the Program Guide requirement that only CCCMS inmates on medication be seen by a psychiatrist. And it is unnecessary, because the psychiatrist is not treating the patient and therefore would have nothing to contribute to the IDTT. Given the limited number of psychiatrists and the difficulty in hiring this scarce position, it is appropriate to limit assignment of psychiatrists only to those individuals who require their services.

CDCR therefore proposes two changes: (1) apply the 2009 psychiatry staffing ratio to CCCMS patients who are receiving psychiatric medication, and eliminating the staffing allocation for routine psychiatry contacts of CCCMS patients who are not on psychotropic medication; and (2) end the practice of assigning psychiatrists to patients at annual IDTTs where the CCCMS patient is not on medication and does not require psychiatry services.

Given that approximately 30 percent[6] of the current CCCMS population has not been on psychotropic medication for 3 months or more and thus is not seeing a psychiatrist, the CCCMS GP staffing allocation should be reduced by approximately 38 positions to accurately account for the actual workload. *See* Attachment C- CCCMS Patients Not on Psychiatric Medication. The future allocations for the percent of the CCCMS population on medication would be based on population (consistent with the current practice), and will be reassessed every six months. This change is not an alteration of the staffing ratio laid out in the 2009 Staffing Model; rather, it represents correctly applying the staffing ratio to the CCCMS population that is in need of routine psychiatry services.

F.    Eliminate Weekend and Holiday Crisis Intervention Psychiatrist Allocations Positions, Yet Retain Eight Positions for On-Call Coverage

A persistent complaint heard by the staffing consultants during their visits to the institutions was the difficulty of working on-call. The staffing consultants' report indicated that the on-call responsibilities of on-site psychiatrists were a "major source of frustration, job dissatisfaction, and concern." Staffing Consultants' Report at 17.

One of the major complaints was the frequency of phone contacts on-call psychiatrists received per night, the difficulty of using EHRS remotely to complete medication orders, and the dissatisfaction that telepsychiatrists and registry psychiatrist do not to take call.[7] Plaintiffs noted their concern regarding the dissatisfaction by on-site psychiatrists that their registry and telepsychiatry counterparts recommended CDCR should consider increasing on-call compensation and requiring all psychiatrists to take call. Plaintiffs' May 9, 2018, letter at 2. It bears mention that the staffing consultants' report came from a limited number of institutions and does not reflect the experience at other institutions. For example, there are institutions at which telepsychiatrists and registry psychiatrists take call.[8] But CDCR agrees that improving the on-call experience is important.

---

[6] Defendants are mindful that this is a higher proportion than that which was disclosed to Plaintiffs in 2016 during the discussion on the CCCMS review process. *See* Plaintiffs' May 9, 2018, letter at page 35. The data reflected in the staffing consultants' report is accurate and the data used for the CCCMS review was undercounting the true number of CCCMS not on medication. The CCCMS review data pulled in the past only reflected CCCMS patients who had once been on psychiatric medication but were now off medication for at least six months. That data collection did not account for the population of patients who had never been on psychiatric medication and had been in the CCCMS program for at least six months. The data provided to the staffing consultants reflects all patients not on medication for at least six months. The CCCMS review process has been adjusted to also review those patients who have never been on medication.

[7] Please note that under current policy, on-call psychiatrists are not required to access EHRS while on-call.

[8] Currently, there are five telepsychiatrists who volunteer to take call on nights and/or weekends at the following institutions: Pelican Bay State Prison, California State Prison, Solano, California State Prison, Corcoran, Chukawalla

CDCR proposes instead to expand the pilot program it began in November 2017 to provide nighttime telepsychiatry coverage for six institutions three days per week. In their May 9, 2018, letter, Plaintiffs expressed an interest in learning more about this program. Plaintiffs' May 9, 2018, letter at page 2. Thus far, the program has been very successful. A local psychiatrist is still required to be on-call, in case an in-person examination of a patient is required overnight, which rarely occurs. Nighttime telepsychiatry will cover virtually all nighttime consultations, and the resulting workload for the local on-call psychiatrist is reduced to nearly zero. This program also addresses the concerns raised by staff regarding the difficulty of remotely accessing EHRS, as the nighttime telepsychiatrists work in a telepsychiatry hub that is hard-wired into CDCR's network and has ready access to electronic records. The staffing consultants noted this pilot program in their report and believed "consideration should be given to expansion and formalization" of the program.

If CDCR were to expand this program to provide night shift telepsychiatry coverage to all institutions, seven days per week, it would likely require an allocation of eight positions. By eliminating the psychiatry allocations for crisis intervention, described in section II.A.(2) below, and using 8 of those positions to hire nighttime telepsychiatrists to cover on-call requirements system-wide, these changes would result in a net reduction of 9.6 psychiatry positions.

## II.    CDCR's Proposals for Adjustments to the 2009 Staffing Model and to Further Promote Efficiency and Job Satisfaction

CDCR is dedicated to maintaining the psychiatry staff required to provide constitutionally adequate mental health care to patients in its custody. CDCR undertook an assessment of how it provides psychiatry services to patients today and compared that with the assumptions underlying the 2009 Staffing Model. As a result of this assessment, CDCR proposes removing positions that are not providing patient care and eliminating excessive staffing allocations based on limited workload. Additionally, CDCR proposes several operational adjustments to improve system efficiency, thereby improving the work environment for psychiatrists and enabling them to serve more patients without negatively impacting patient care.

### A.    Additional Proposals for Adjustments to the 2009 Staffing Model

After review of the system, the staffing consultants determined that 157 psychiatrists should be more than adequate to provide care to the CCCMS and EOP populations in the MHSDS. *See* Staffing Consultants' Report at 46. CDCR's proposal does not recommend eliminating positions based on the consultants' specific methodology. Instead, CDCR looked at whether all of the current psychiatry allocations as mandated by the 2009 Staffing Model were necessary to meet the Program Guide requirements and provide patient care.

---

Valley State Prison, Ironwood State Prison, and High Desert State Prison. There are also a number of registry psychiatrists who take call at various institutions.

The following proposals are meant to answer the questions posed in the court's February 15, 2018, order: "[A]re there any adjustments to the psychiatry staffing ratios that could be made to alleviate the psychiatrists staffing shortages without compromising the constitutionally required access to adequate mental health care?" ECF No. 5786 at 4.

In carefully considering whether "any adjustments to the psychiatry staffing ratios" "could be made to alleviate the psychiatrists staffing shortages," ECF No. 5786 at 4, CDCR has concluded that certain premises on which the 2009 Staffing Model ratios were based have changed or no longer hold true. Numerous psychiatry positions are allocated pursuant to the staffing ratios, but not used for direct patient care. Other psychiatry positions are allocated to meet a hypothetical workload far in excess of what is required by the Program Guide itself. These unnecessarily allocated positions can be eliminated without any impact on current operations or delivery of care. In short, the following proposals can be immediately implemented, while maintaining high rates of psychiatry contacts, IDTT participation, and medication management:

      1.  Modify the Psychiatry Allocation at Reception Centers for Intake and Screening So That It Is Adjusted Biannually Based on Intake Population

The 2009 Staffing Model includes positions to conduct the mental health screenings required for every new commitment and parole violator. The staffing model established 13.5 positions, based specifically on the assumption of an intake of 23.56 inmates per day and a ratio of one psychiatrist per every 33 inmates received in a reception center (RC). *See* 2009 Staffing Model, page 9 and Exhibit 12. This model was based on RC intake data from 2009, but the psychiatry allocations have not been adjusted in the budget process since that time. Nor has this allocation of 13.5 positions been adjusted in response to population changes.

This means that the number of positions allocated to treat that population has remained the same, even as the number of incoming inmates has decreased dramatically over the last ten years, due in part to Assembly Bill 109 (Public Safety Realignment). *See* Attachment D- RC Commitments Extracted from CDCR Fall 2017 Population Projections. In the 2008 to 2009 fiscal year, there were 63,375 court commitments to CDCR's custody. *Id.* Since that time, the number of commitments per year has been cut by almost half. In the last full fiscal year, there were just 36,545 total court commitments to CDCR. *Id.* As a result of this drastic reduction, the current psychiatry allocation for RC intake is well above what is required for that population, and—like other psychiatry allocations—should be adjusted in accordance with population changes.

CDCR proposes to adjust the currently fixed psychiatrist allocation for RC intake and screening to reflect the current incoming population. This would result in a reduction of approximately 6.5 psychiatry positions statewide at this time. To be clear, the proposed adjustment does *not* change the underlying staffing ratio in any way. Rather, it "unfreezes" the allocation of 13.5 positions dating from 2009 so that that number can be adjusted biannually in concert with the current RC intake population. Adjusting staffing allocation in response to population changes is consistent with the approach of the 2009 Staffing Model.

7

2.  Remove Psychiatry Positions Allocated to Crisis Intervention Teams on Weekends and Holidays

The 2009 Staffing Model includes psychiatry positions at every institution to provide crisis intervention on weekends and holidays.  Specifically, the 2009 Staffing Model allocated 0.52 psychiatrist positions at every institution to work weekends and holidays for crisis intervention.  This allocation was based on three premises: 1) adding these positions would allow for quicker interventions on weekends and holidays; 2) additional coverage would reduce costly overtime; and 3) institutions with assigned psychiatrists on evenings and weekends have fewer Mental Health Crisis Bed (MHCB) admissions.  2009 Staffing Model at 21.

The 0.52 psychiatrist allocation at each institution is no longer supported by these premises in light of CDCR's current model for crisis intervention teams (CITs) and nightly on-call psychiatry.  The implementation of CITs has allowed for quicker interventions and has reduced MHCB referrals and admissions.  See Attachment E- CIT Data.  CITs provide conflict resolution skills, educate inmates regarding custody processes, and sometimes move inmates to a different cell.  These types of interventions are best handled by psychologists, nurses, and custody staff.  And since very few interventions require medication management, psychiatrists add little to no value to the crisis intervention process.[9]

In the very few cases on a weekend or holiday where a crisis requires the intervention of a psychiatrist specifically, an on-call psychiatrist is contacted.  Thus, elimination of this psychiatry crisis intervention staffing allocation from each institution will have no impact on patient care or current practices.

If accepted, this proposal would result in a reduction of 0.52 positions at all 34 institutions, or approximately 17.6 psychiatry positions statewide.  This is not an adjustment to the staffing ratios, but a removal of an unnecessary psychiatry allocation.  But rather than completely eliminate all of the positions, CDCR recommends allocating some positions for nighttime on-call psychiatry coverage via telepsychiatry.  See Part I.F, supra.

3.  Adjust the CCCMS Staffing Ratio to Acknowledge the Program Guide Requirement of One Routine Psychiatry Contact Every 90 Days

The 2009 Staffing Model workload assumption for routine psychiatry contacts overstated the Program Guide requirement.  The Program Guide requires that a patient on medication be seen every 90 days and CDCR is meeting this requirement.  See Program Guide at 12-3-11 and see Attachment F- RC and GP Timely Psychiatry Contacts (showing the state average for timely psychiatry contacts for CCCMS inmates is at 94%.).  In contrast, the 2009 Staffing Model assumes that each patient will be seen by a psychiatrist for routine contacts an average of 1.5 times every 90 days.  2009 Staffing Model, Exhibit 10.  CDCR recognizes that one contact per every 90 days is a minimum and psychiatrists can see patients more

---

[9] In the summer of 2017, the parties discussed the composition and roll-out of CITs. Defendants informed Plaintiffs that the CITs are comprised of psychologists, nurses, and custody staff, and the parties agreed to Defendants' CIT model and committed to exploring further expansion of the program. See ECF 5669, Joint Report re: September 28, 2017, Evidentiary Hearing re: Timely MHCB Access.

frequently, if necessary.  Current data shows that psychiatrists are going above the minimum required contacts and seeing patients more often as needed; however, even with the additional contacts, CCCMS patients receive an average of 1.07 psychiatry contacts per every 90 days.  Attachment G- CCCMS ML Psychiatry Contacts.  This is much lower than the 1.5 assumption in the 2009 Staffing Model.  CDCR proposes a revision to the ratio of routine contact frequency to once every 90 days, instead of 1.5 contacts every 90 days.

The 2009 Staffing Model separately allocates staffing for urgent or emergent psychiatry referrals in between routine contacts.  CDCR would leave intact this assumption of additional time for urgent and emergent contacts.

Although this proposal would reduce the psychiatry allocations to correspond with the Program Guide requirements of one routine psychiatry contact every 90 days, such a reduction would not interfere with CDCR's commitment to providing more than the minimum treatment required by the Program Guide to CCCMS inmates who require more individualized treatment.  As mentioned in previous discussions, CDCR intends to create more support for CCCMS inmates who may require it as after, for example, transferring to a new institution or transitioning from EOP.  This includes providing more group treatment and contacts with the inmate's primary clinician.  That said, psychiatry has no role in the anticipated new groups and additional contacts.  The additional groups, provision of coping skills, and whatever other therapy the individual inmate may require will be provided by psychologists, social workers, and recreational therapists, not psychiatrists.  Therefore, the proposed reduction of the additional psychiatry positions would not affect an inmate's need for individualized care in CCCMS.

This proposal would result in a reduction of approximately 17 psychiatry positions, thus changing the 1:280 staffing ratio established in the 2009 Staffing Model to 1:338, with relief, if adopted.

4.    Adjust the EOP Staffing Ratio to Acknowledge the Program Guide Requirement of One Routine Psychiatry Contact Every 30 Days

The 2009 Staffing Model workload assumption applied to CCCMS routine contacts, as described above, was also applied to EOP routine contacts.  2009 Staffing Model, Exhibit 10.  Thus, while the Program Guide requires an EOP participant to be seen once every 30 days, the 2009 Staffing Model assumes that each patient will be seen an average of 1.5 times every 30 days for routine contacts.  *Id.*

CDCR proposes a revision to the ratio based on the Program Guide requirement for routine psychiatry contacts once every 30 days.  Currently, EOP inmates are being seen for routine contacts 0.94 times every 30 days.  Attachment H- EOP ML Psychiatry Contacts.  The 1.5 assumption is inaccurate because it is out of line with the Program Guide requirements.  Further, the 2009 staffing model separately allocates staffing positions for urgent or emergent psychiatry referrals in between routine contacts, which are left intact.  2009 Staffing Model, Exhibit 10.  As explained above, the reduction of psychiatrists would not affect CDCR's ability to provide additional individualized group treatment, recreational therapy, or individual therapy, as these services are provided by classifications other than psychiatrists.

This proposal would result in a reduction of 24 psychiatry positions, thus changing the staffing ratio from 1:120 to 1:145, with relief, if adopted.

B.    Proposals to Increase Efficiency and Job Satisfaction

In addition to the proposals above, CDCR intends to implement two additional proposals: 1) standardize the scheduling model; and 2) implement a clinic model for psychiatry contacts.  CDCR believes, if implemented, these proposals would improve the efficiency of the system by allowing psychiatrists to focus more on seeing patients.  These changes could also lead to higher job satisfaction, which CDCR anticipates will help in the recruitment and retention of psychiatry staff.  While CDCR intends to begin implementation of these proposals immediately, full implementation will take time and the benefits to the system reaped from these proposals may not be immediately evident.

1.    Standardize the Scheduling Model

The current practices for scheduling psychiatry appointments are complicated and inefficient and are the source of many complaints from the field.  Complaints include lack of guidance on appropriate appointment scheduling timeslots, constantly shifting schedules driven by the Program Guide requirements, and inefficient IDTT scheduling.   These issues are a source of frustration and stress for psychiatry staff.

To remedy these issues, CDCR proposes moving to a standardized scheduling model.  A standardized scheduling model will address the above concerns and will create consistency for psychiatrist not only day-to-day, but institution to institution.  CDCR intends to direct the field to schedule appointments of appropriate duration and monitor the scheduling of routine contacts to avoid a last minute rush of appointments, and schedule IDTTs based on the schedule of the treatment team.  In addition to providing instructions to the field with directions and best practices to standardize scheduling across the MHSDS, CDCR will involve the regional staff, Chiefs of Mental Health, and supervisors at the institutions to ensure these directions and best practices are being implemented.  Should any institution struggle in implementing the standardized scheduling model, training and individualized attention will be provided.

The implementation of a standardized scheduling model will create a better work environment for psychiatrists by allowing more certainty in day-to-day scheduling, reducing the last minute schedule changes which can increase stress, and decreasing their time spent unnecessarily in IDTT.  Moving to a standardized scheduling model is also necessary in order to transition to an efficient clinic model, as discussed below.  These changes wrought by implementation of the standardized scheduling model will likewise help address some of the scheduling concerns raised regarding EHRS improvements above.

2.    Implement a Clinic Model for Psychiatry Contacts

One of the most effective ways to improve job satisfaction and increase psychiatry efficiency would be to implement a clinic model for psychiatry contacts.  This model requires inmates come to, or be brought to, the psychiatrist, as opposed to psychiatrists traveling between housing units and facilities to

see patients. This is inefficient. The clinic model is how most medical facilities in the community are organized.

Ideally, this model would have adequate space for mental health providers, a staging area for patients waiting either before or after seeing their provider, and multiple treatment rooms to allow for providers to move from patient to patient, instead of waiting for the patient to enter and exit the treatment room. To ensure the clinic model is as efficient as possible, a strategy must be implemented to address patients who refuse to attend their appointments that will allow the psychiatrist to stay in the clinic.

CDCR will develop a plan to complete a review of all EOP facilities by the end of 2018. Once the review of the facilities is completed, clinics will be created at the locations that have the appropriate infrastructure.

11

| Institutions | Psychiatry Contact 6 months period 10/01/17-03/31/18 | |
| --- | --- | --- |
| | # of Psy_Contact | Average of Duration (min) |
| CAL | 95 | 52 |
| CCC | 1 | 37 |
| CEN | 85 | 59 |
| CVSP | 114 | 39 |
| ISP | 108 | 36 |
| Grand Total | 403 | 46 |

Psych contacts (6months 1017-0318).xlsm

**Timely Psychiatry Contacts 10/1/17 - 3/31/18**

**CCCMS & EOP**

*from Performance Report Last 6 Months*

*Green Cutoff 85% Red Cutoff 75%*

|      | CCCMS | EOP |
|------|-------|-----|
| CAL  | 100%  | N/A |
| CEN  | 100%  | N/A |
| CVSP | 100%  | N/A |
| ISP  | 100%  | N/A |

**Timely Psychiatry Referrals 10/1/17-03/31/18**
**CCCMS & EOP**
*Includes Med Refusals and MHMD Emergent, Urgent, Routine Consults*
*Performance Report Last 6 Months*
*Green Cutoff 85% Red Cutoff 75%*

| Instiution | CCCMS Overdue | CCCMS Ontime | CCCMS % Ontime | EOP Overdue | EOP Ontime | EOP %Ontime | Total %Ontime |
|---|---|---|---|---|---|---|---|
| CAL | | 3 | 100.0% | | 1 | 100.0% | 100.0% |
| CEN | | 2 | 100.0% | | | N/A | 100.0% |
| CVSP | 1 | 12 | 92.3% | | | N/A | 92.3% |
| ISP | | 6 | 100.0% | | | N/A | 100.0% |

## CCCMS Patients Not on Meds
## As of March 31, 2018

| Sites | < 3 months | > 3 Mo < 6 mo | > 6 months |
|---|---|---|---|
| ASP | 131 | 77 | 392 |
| CAL | 1 | 0 | 0 |
| CCI | 186 | 156 | 459 |
| CCWF | 129 | 48 | 133 |
| CHCF | 47 | 30 | 156 |
| CIM | 112 | 50 | 255 |
| CIW | 74 | 28 | 37 |
| CMC | 80 | 44 | 215 |
| CMF | 43 | 37 | 151 |
| COR | 93 | 38 | 180 |
| CRC | 114 | 125 | 216 |
| CTF | 207 | 120 | 556 |
| CVSP | 1 | 0 | 0 |
| DVI | 57 | 10 | 15 |
| FSP | 67 | 38 | 129 |
| HDSP | 128 | 60 | 175 |
| ISP | 4 | 0 | 192 |
| KVSP | 57 | 28 | 159 |
| LAC | 110 | 70 | 214 |
| MCSP | 117 | 72 | 286 |
| NKSP | 133 | 33 | 137 |
| PBSP | 28 | 23 | 73 |
| PVSP | 67 | 50 | 213 |
| RJD | 115 | 70 | 421 |
| SAC | 41 | 14 | 111 |
| SATF | 252 | 140 | 505 |
| SCC | 25 | 23 | 147 |
| SOL | 78 | 45 | 229 |
| SQ | 62 | 32 | 286 |
| SVSP | 68 | 54 | 273 |
| VSP | 111 | 77 | 463 |
| WSP | 268 | 38 | 127 |
| **Grand Total** | **3006** | **1630** | **6905** |

Patient % of Total CCCMS
Population > 3months                                        **29.74%**

Total CCCMS Population per HCPOP Report 20180326R01 - SOMS = 28,698

Fall 2017 Population Projections

## 3  Court Commitments

The number of felon court commitments decreased by 42.4 percent from FY 2007-08 to FY 2013-14 (67,397 to 38,850 commitments; see Table 4 and Figure 4). The largest single-year percent decrease in commitments occurred between FY 2010-11 and FY 2011-12, following the implementation of 2011 Realignment legislation (a decrease from 57,747 to 39,001 commitments or 32.5 percent). After two fiscal years of decline following 2011 Realignment legislation, court commitments increased in FY 2013-14 by 2,855 commitments (an increase from 35,995 to 38,850 commitments or 7.9 percent). Total court commitments decreased by 8.5 percent in FY 2014-15 (38,850 to 35,545 commitments), primarily due to the passage of Proposition 47.

Felon court commitments increased by 0.3 percent during FY 2015-16 (35,545 to 35,635 commitments). The slight increase was followed by a larger 2.6 percent increase in FY 2016-17 (35,635 to 36,545 commitments; see Table 4 and Figure 4).

*Table 4: Felon Court Commitments and Projections by Gender, Fiscal Years 2007-08 through 2021-22*

| | | | Commitments | | | | | |
| Fiscal Year | Male | Percent of Total | Fiscal Year Percent Change | Female | Percent of Total | Fiscal Year Percent Change | Total | Fiscal Year Percent Change |
|---|---|---|---|---|---|---|---|---|
| Actual | | | | | | | | |
| 2007-08 | 59,679 | 88.5% | N/A | 7,718 | 11.5% | N/A | 67,397 | N/A |
| 2008-09 | 55,853 | 88.1% | -6.4% | 7,522 | 11.9% | -2.5% | 63,375 | -6.0% |
| 2009-10 | 56,631 | 89.1% | 1.4% | 6,936 | 10.9% | -7.8% | 63,567 | 0.3% |
| 2010-11 | 51,306 | 88.8% | -9.4% | 6,441 | 11.2% | -7.1% | 57,747 | -9.2% |
| 2011-12 | 35,855 | 91.9% | -30.1% | 3,146 | 8.1% | -51.2% | 39,001 | -32.5% |
| 2012-13 | 33,658 | 93.5% | -6.1% | 2,337 | 6.5% | -25.7% | 35,995 | -7.7% |
| 2013-14 | 36,083 | 92.9% | 7.2% | 2,767 | 7.1% | 18.4% | 38,850 | 7.9% |
| 2014-15 | 33,079 | 93.1% | -8.3% | 2,466 | 6.9% | -10.9% | 35,545 | -8.5% |
| 2015-16 | 33,263 | 93.3% | 0.6% | 2,372 | 6.7% | -3.8% | 35,635 | 0.3% |
| 2016-17 | 33,948 | 92.9% | 2.1% | 2,597 | 7.1% | 9.5% | 36,545 | 2.6% |
| Projected | | | | | | | | |
| 2017-18 | 35,072 | 93.0% | 3.3% | 2,631 | 7.0% | 1.3% | 37,703 | 3.2% |
| 2018-19 | 35,167 | 92.9% | 0.3% | 2,691 | 7.1% | 2.3% | 37,858 | 0.4% |
| 2019-20 | 35,265 | 92.8% | 0.3% | 2,752 | 7.2% | 2.3% | 38,017 | 0.4% |
| 2020-21 | 35,357 | 92.6% | 0.3% | 2,811 | 7.4% | 2.1% | 38,168 | 0.4% |
| 2021-22 | 35,457 | 92.5% | 0.3% | 2,876 | 7.5% | 2.3% | 38,333 | 0.4% |

Fall 2017 Population Projections

CDCR predicts a continued increase in total court commitments for FY 2017-18 of 3.2 percent (36,545 to 37,703 commitments). This is expected to be followed by smaller increases of 0.4 percent each year for the remainder of the projections cycle (see Table 4 and Figure 4).

Detailed tables showing actual and projected rates of court commitments to state prison are shown in Appendix D, Tables 9 through 14.

Figure 4: Felon Court Commitment Trends and Projections, Fiscal Years 2007-08 through 2021-22



### 3.1    Felon Court Commitment Trends and Projections by Gender

CDCR observed an increase in male felon court commitments of 2.1 percent during FY 2016-17 (685 commitments). The Fall 2017 Projections expect male felon court commitments to increase by 3.3 percent (1,124 commitments) during FY 2017-18, followed by smaller increases of 0.3 percent each year during the projections cycle (see Table 4 and Figure 5).

Female court commitments increased by 9.5 percent in FY 2016-17 (225 commitments). The Fall 2017 Projections predict female commitments to experience increases ranging from 1.3 to 2.3 percent each year during the projections cycle (see Table 4 and Figure 5).



*Figure 5: Felon Court Commitment Trends and Projections by Gender,*
*Fiscal Years 2007-08 through 2021-22*

| Outcome Reasons | CCWF | CHCF | CIW | MCSP | SATF | SVSP | WSP | Grand Total |
|---|---|---|---|---|---|---|---|---|
| ADSEG placement | | | | | | 1 | | 1 |
| Educated regarding custody processes/questions: returned to cell | | | | | | | 9 | 9 |
| educated regarding custody processes; returned to housing | 15 | 10 | 1 | 55 | 79 | | 6 | 166 |
| medical issue addressed by nursing CIT | | 1 | | | 4 | 2 | 1 | 8 |
| MH-5 completed and referred for routine follow-up | | | | | | 5 | | 5 |
| MH-5 completed and referred for urgent follow-up | | | | | | 2 | | 2 |
| MH-5 completed for routine follow up | 7 | | | 2 | 13 | 16 | 6 | 44 |
| MH-5 completed for urgent follow up | 8 | 1 | | 3 | | 7 | 2 | 21 |
| moved to different cell | 13 | 10 | 1 | 4 | 41 | 8 | 14 | 91 |
| new housing; processed loss; returned to custody; Denied SI/HI | | | | | | | 1 | 1 |
| placed in segregation; SNY review | 2 | 1 | | | 1 | 6 | | 10 |
| Placed on TEMPORARY single cell status, and referred to UCC/ICC | | | | | | 4 | | 4 |
| placed on TEMPORARY single cell; referred to ICC/UCC | | 2 | | | 2 | | | 4 |
| Provided conflict intervention techniques: returned to cell | | | | | | 32 | | 32 |
| provided conflict resolution skills; returned to housing | 11 | 162 | 1 | 23 | 121 | | 35 | 353 |
| referral to PCP for medical follow up | | 2 | 1 | 1 | 7 | | 1 | 12 |
| Referral to PCP made to address medical issue | | | | | | 2 | | 2 |
| referred to apporpriate self-help ILTAG/Group | | 1 | | | 1 | | 1 | 3 |
| referred to inmate peer support (if available) | | | | | 1 | | | 1 |
| Referred to MHCB | 68 | 172 | 4 | 16 | 164 | 100 | 46 | 570 |
| Re-housed in ASU | 1 | 2 | | 8 | 1 | 6 | | 18 |
| seen by psychiatry for medication review | | 1 | | 1 | 1 | | 2 | 5 |
| (blank) | | 3 | | 1 | 7 | | 26 | 37 |
| other (explain): | | | | | | 1 | | 1 |
| **Grand Total** | **125** | **368** | **13** | **131** | **454** | **168** | **141** | **1400** |

| Institution | All Other Outcomes | Referred to MHCB | Grand Total |
|---|---|---|---|
| CCWF | 57 | 68 | 125 |
| CHCF | 196 | 172 | 368 |
| CIW | 9 | 4 | 13 |
| MCSP | 115 | 16 | 131 |
| SATF | 290 | 164 | 454 |
| SVSP | 68 | 100 | 168 |
| WSP | 95 | 46 | 141 |
| **Grand Total** | **830** | **570** | **1400** |







CIT Outcome Summary

| Outcome Reasons | CCWF | CHCF | CIW | MCSP | SATF | SVSP | WSP | Grand Total |
|---|---|---|---|---|---|---|---|---|
| ADSEG placement | | | | | | 1 | | 1 |
| Educated regarding custody processes/questions: returned to cell | | | | | | | 9 | 9 |
| educated regarding custody processes; returned to housing | 15 | 10 | 1 | 55 | 79 | | 6 | 166 |
| medical issue addressed by nursing CIT | | | 1 | | 4 | 2 | 1 | 8 |
| MH-5 completed and referred for routine follow-up | | | | | | | 5 | 5 |
| MH-5 completed and referred for urgent follow-up | | | | | | | 2 | 2 |
| MH-5 completed for routine follow up | 7 | | | 2 | 13 | 16 | 6 | 44 |
| MH-5 completed for urgent follow up | 8 | 1 | | 3 | | 7 | 2 | 21 |
| moved to different cell | 13 | 10 | 1 | 4 | 41 | 8 | 14 | 91 |
| new housing; processed loss; returned to custody; Denied SI/HI | | | | | | | 1 | 1 |
| placed in segregation; SNY review | 2 | | 1 | | 1 | 6 | | 10 |
| Placed on TEMPORARY single cell status, and referred to UCC/ICC | | | | | | 4 | | 4 |
| placed on TEMPORARY single cell; referred to ICC/UCC | | | 2 | | 2 | | | 4 |
| Provided conflict intervention techniques: returned to cell | | | | | | 32 | | 32 |
| provided conflict resolution skills; returned to housing | 11 | 162 | 1 | 23 | 121 | | 35 | 353 |
| referral to PCP for medical follow up | | 2 | 1 | 1 | 7 | | 1 | 12 |
| Referral to PCP made to address medical issue | | | | | | 2 | | 2 |
| referred to apporpriate self-help ILTAG/Group | | | 1 | | 1 | | 1 | 3 |
| referred to inmate peer support (if available) | | | | | 1 | | | 1 |
| Referred to MHCB | 68 | 172 | 4 | 16 | 164 | 100 | 46 | 570 |
| Re-housed in ASU | 1 | 2 | | 8 | 1 | 6 | | 18 |
| seen by psychiatry for medication review | | 1 | 1 | 1 | | | 2 | 5 |
| (blank) | | 3 | | 1 | | 7 | 26 | 37 |
| other (explain): | | | | | | 1 | | 1 |
| **Grand Total** | **125** | **368** | **13** | **131** | **454** | **168** | **141** | **1400** |

| Institution | All Other Outcomes | Referred to MHCB | Grand Total |
|---|---|---|---|
| CCWF | 57 | 68 | 125 |
| CHCF | 196 | 172 | 368 |
| CIW | 9 | 4 | 13 |
| MCSP | 115 | 16 | 131 |
| SATF | 290 | 164 | 454 |
| SVSP | 68 | 100 | 168 |
| WSP | 95 | 46 | 141 |
| **Grand Total** | **830** | **570** | **1400** |



**Timely Psychiatry Contacts from 10/01/17 thru 3/31/18**
**Mainline CCCMS**

| | Measurements | Avg Days Overdue | Compliance |
|---|---|---|---|
| Timely Psychiatry Contacts | 321011 | 2.6 | 94% |
| Initial | 4239 | 2.7 | 91% |
| Routine | 316772 | 2.6 | 94% |

## Psychiatry Contacts
### 10/01/17-03/31/18

# of Psy_Contact Column Labels

| Institutions | CCCMS ML | Total | Avg per 90 days | Avg CCCMS ML Pop | Rate |
|---|---|---|---|---|---|
| ASP | 3,300 | 3,300 | 1,650 | 1,106 | 1.49 |
| CAC | 3 | 3 | 2 | 1 | 1.50 |
| CAL | 12 | 12 | 6 | 6 | 1.06 |
| CCI | 3,794 | 3,794 | 1,897 | 1,706 | 1.11 |
| CCWF | 2,963 | 2,963 | 1,482 | 1,049 | 1.41 |
| CEN | 12 | 12 | 6 | 6 | 1.00 |
| CHCF | 729 | 729 | 365 | 541 | 0.67 |
| CIM | 2,336 | 2,336 | 1,168 | 925 | 1.26 |
| CIW | 2,584 | 2,584 | 1,292 | 698 | 1.85 |
| CMC | 1,723 | 1,723 | 862 | 731 | 1.18 |
| CMF | 1,183 | 1,183 | 592 | 576 | 1.03 |
| COR | 1,454 | 1,454 | 727 | 828 | 0.88 |
| CRC | 2,883 | 2,883 | 1,442 | 1,140 | 1.26 |
| CTF | 3,292 | 3,292 | 1,646 | 1,563 | 1.05 |
| CVSP | 88 | 88 | 44 | 17 | 2.61 |
| DVI | 297 | 297 | 149 | 148 | 1.00 |
| FSP | 1,398 | 1,398 | 699 | 618 | 1.13 |
| HDSP | 1,801 | 1,801 | 901 | 1,000 | 0.90 |
| ISP | 71 | 71 | 36 | 20 | 1.81 |
| KVSP | 2,325 | 2,325 | 1,163 | 791 | 1.47 |
| LAC | 1,600 | 1,600 | 800 | 899 | 0.89 |
| MCSP | 2,606 | 2,606 | 1,303 | 1,417 | 0.92 |
| NKSP | 530 | 530 | 265 | 247 | 1.07 |
| PBSP | 589 | 589 | 295 | 256 | 1.15 |
| PVSP | 1,374 | 1,374 | 687 | 632 | 1.09 |
| RJD | 2,334 | 2,334 | 1,167 | 1,430 | 0.82 |
| SAC | 834 | 834 | 417 | 363 | 1.15 |
| SATF | 3,305 | 3,305 | 1,653 | 1,897 | 0.87 |
| SCC | 694 | 694 | 347 | 410 | 0.85 |
| SOL | 2,202 | 2,202 | 1,101 | 974 | 1.13 |
| SQ | 1,197 | 1,197 | 599 | 673 | 0.89 |
| SVSP | 1,462 | 1,462 | 731 | 857 | 0.85 |
| VSP | 2,405 | 2,405 | 1,203 | 1,360 | 0.88 |
| WSP | 548 | 548 | 274 | 231 | 1.19 |
| Total | 53,928 | 53,928 | 26,964 | 25,114 | 1.07 |

Psychiatry Contacts
10/01/17-03/31/18

# of Psy_Contact   Column Labels

| Institutions | EOP ML | EOPMod | Total | Avg per 30 days | Avg EOP ML Pop | Rate |
|---|---|---|---|---|---|---|
| ASP | 12 | | 12 | 2 | 1 | 2.00 |
| CAL | 1 | | 1 | 0 | - | N/A |
| CCI | 33 | | 33 | 6 | 5 | 1.10 |
| CCWF | 1,059 | 14 | 1,073 | 179 | 131 | 1.37 |
| CEN | 2 | | 2 | 0 | - | N/A |
| CHCF | 2,269 | 488 | 2,757 | 460 | 575 | 0.80 |
| CIM | 11 | | 11 | 2 | - | N/A |
| CIW | 701 | 58 | 759 | 127 | 84 | 1.51 |
| CMC | 3,786 | 15 | 3,801 | 634 | 541 | 1.17 |
| CMF | 2,456 | 122 | 2,578 | 430 | 445 | 0.97 |
| COR | 2,490 | 185 | 2,675 | 446 | 585 | 0.76 |
| CRC | 5 | | 5 | 1 | 1 | 0.83 |
| CTF | 11 | | 11 | 2 | 2 | 0.92 |
| DVI | 2 | | 2 | 0 | - | N/A |
| FSP | 32 | | 32 | 5 | 3 | 1.78 |
| HDSP | 9 | | 9 | 2 | 4 | 0.38 |
| ISP | 1 | | 1 | 0 | 1 | 0.17 |
| KVSP | 1,148 | 288 | 1,436 | 239 | 217 | 1.10 |
| LAC | 3,745 | 479 | 4,224 | 704 | 667 | 1.06 |
| MCSP | 3,595 | 344 | 3,939 | 657 | 663 | 0.99 |
| NKSP | 10 | 1 | 11 | 2 | - | N/A |
| PBSP | 10 | | 10 | 2 | 2 | 0.83 |
| PVSP | 3 | | 3 | 1 | 1 | 0.50 |
| RJD | 4,047 | 325 | 4,372 | 729 | 831 | 0.88 |
| SAC | 2,336 | 8 | 2,344 | 391 | 509 | 0.77 |
| SATF | 3,409 | 105 | 3,514 | 586 | 642 | 0.91 |
| SCC | 7 | | 7 | 1 | 1 | 1.17 |
| SOL | 19 | | 19 | 3 | 4 | 0.79 |
| SQ | 549 | 64 | 613 | 102 | 59 | 1.75 |
| SVSP | 2,907 | 18 | 2,925 | 488 | 587 | 0.83 |
| VSP | 1,757 | 59 | 1,816 | 303 | 354 | 0.85 |
| WSP | 10 | 1 | 11 | 2 | - | N/A |
| Total | 36,432 | 2,574 | 39,006 | 6,501 | 6,915 | 0.94 |

**Cara Trapani**

| | |
|---|---|
| **From:** | Bentz, Melissa@CDCR <Melissa.Bentz@cdcr.ca.gov> |
| **Sent:** | Monday, September 17, 2018 12:18 PM |
| **To:** | Lopes Matthew; Michael W. Bien; Steve Fama; Lisa Ells (LElls@rbgg.com) |
| **Cc:** | Cindy Radavsky (cradavsky@gmail.com); Hector Kristina; Henry Dlugacz (HDlugacz@BLHNY.com); 'jeffrey.metzner@ucdenver.edu' (jeffrey.metzner@ucdenver.edu); Cardoza Jonelie; 'Kerry C. Hughes, M.D.' (dockc99 @aol.com); Walsh Kerry F.; L Hayes; McClendon-Hunt, LaTri-c-ea; Maria Masotta; Lopes Matthew; Jones Mohamedu; mperrien@aol.com; Patricia Williams; Karen Rea; Raffa Steven; Costa Regina; rod@roderickqhickman.com; Tim Rougeux (trougeux@hotmail.com); Ponciano, Angela@CDCR; Tebrock, Katherine@CDCR; Lorey, Dawn@CDCR; Macomber, Jeff@CDCR; Mitchell, Kelly@CDCR; Brizendine, Brittany@CDCR; Weber, Nicholas@CDCR; Hessick, Jerome@CDCR; Adriano Hrvatin; Andrew Gibson; Elise Thorn; Tyler Heath; Renteria, Simone@CDCR; Jay Russell; Ian Ellis; Tobias Snyder; Hockerson, Dillon@CDCR; McKinney, Patrick@CDCR |
| **Subject:** | Coleman: Revised Psychiatry Staffing Reductions |

All,

Please see the estimated reductions for the revised psychiatry staffing proposals. Please note that these reductions are based on the July 2018 allocation revisions and are subject to fluctuation based on population:

- Desert Staff- 2.0 positions
- CCCMS not on medication- 30.0 positions
- Crisis Intervention- 17.0 positions
- RC Intake and Screening- 7.0 positions
- CCCMS ratio change to assume 1.25 routine contacts- 13.0 positions
- EOP ratio change to assume 1.25 routine contacts- 10.0 positions

Thus, there is a total reduction of 79.0 positions. As detailed in the psychiatry staffing proposal, CDCR will retain 8.0 positions to implement nighttime on-call telepsychiatry coverage.

Respectfully,

*Melissa C. Bentz*
Attorney, Class Action Team
Office of Legal Affairs
California Department of Corrections and Rehabilitation
Email:  Melissa.Bentz@cdcr.ca.gov
Office Phone: (916) 324-7177
Cell Phone: (916) 628-5385
Fax: (916) 327-5306

ATTORNEY CLIENT COMMUNICATION AND/OR ATTORNEY WORK PRODUCT – DO NOT
FORWARD COMMUNICATION WITHOUT THE EXPRESS PERMISSION OF THE AUTHOR.

1



1   XAVIER BECERRA
Attorney General of California
2   MONICA N. ANDERSON
Senior Assistant Attorney General
3   JAY C. RUSSELL
DAMON G. MCCLAIN
4   Supervising Deputy Attorneys General
ELISE OWENS THORN, State Bar No. 145931
5   ANDREW M. GIBSON, State Bar No. 244330
TYLER V. HEATH, State Bar No. 271478
6   Deputy Attorneys General
1300 I Street, Suite 125
7   P.O. Box 944255
Sacramento, CA 94244-2550
8   Telephone: (415) 510-4426
Fax: (916) 324-5205
9   E-mail: Tobias.Snyder@doj.ca.gov
*Attorneys for Defendants*

10
                    IN THE UNITED STATES DISTRICT COURT
11
                FOR THE EASTERN DISTRICT OF CALIFORNIA
12
                          SACRAMENTO DIVISION
13

14

15  **RALPH COLEMAN, et al.,**              2:90-cv-00520 KJM-DB (PC)

16                          Plaintiffs,    **DEFENDANTS' MONTHLY
                                           PSYCHIATRY VACANCY REPORT**
17              v.
                                           Judge:        The Hon. Kimberly J. Mueller
18  **EDMUND G. BROWN JR., et al.,**

19                          Defendants.

20

21          On February 14, 2018, the Court ordered Defendants to file, on a monthly basis, a report

22   "identifying the psychiatrist vacancy rates at each CDCR institution and in the aggregate

23   systemwide . . . for the preceding month." (ECF No. 5786 at 4.) The Court ordered Defendants

24   to file the report by the 15th day of the month. (*Id.*) On August 22, 2018, the Court agreed to a

25   stipulation filed by the parties shifting the reporting date to the last court day of the month. (ECF

26   No. 5886.)

27

28

                                              1

Δ (π)EXHIBIT 7
Deponent Kuich
Date 9.17.19 Rptr A.D.
WWW.DEPOBOOK.COM

1      A letter from Defendant CDCR is attached enclosing CDCR's Division of Health Care

2 Services Systemwide Mental Health Program Allocated and Filled Psychiatry Positions for

3 September 2018.

4

5 Dated: October 31, 2018                            Respectfully submitted,

6                                         XAVIER BECERRA
                                          Attorney General of California

7                                         JAY C. RUSSELL
                                          DAMON G. MCCLAIN

8                                         Supervising Deputy Attorneys General

9                                        */s/ Tobias G. Snyder*
                                          TOBIAS G. SNYDER

10                                         Deputy Attorney General
                                           *Attorneys for Defendants*

11

12 CF1997CS0003
   September 2018 Vacancy Report.docx.docx

13

14

15

16

17

18

19

20

21

22

23

24'

25

26

27

28

2

Defs.' Monthly Psychiatry Vacancy Report  (2:90-cv-00520 KJM-DB (PC))

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS AND REHABILITATION                    EDMUND G. BROWN JR., GOVERNOR

**DIVISION OF HEALTH CARE SERVICES**
STATEWIDE MENTAL HEALTH PROGRAM
P.O. Box 588500
Elk Grove, CA 95758



October 31, 2018

Elise Owens Thorn, Esq.
California Department of Justice
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-5500

RE:    CDCR'S DIVISION OF HEALTH CARE SERVICES SYSTEMWIDE MENTAL
       HEALTH PROGRAM ALLOCATED AND FILLED PSYCHIATRY POSITIONS

Dear Ms. Thorn:

       The California Department of Corrections and Rehabilitation (CDCR) hereby submits its
monthly report identifying the psychiatry vacancy rates at each CDCR institution and in the
aggregate systemwide for September 2018. It is attached as Exhibit A. In accordance with the
Court's February 14, 2018 order, the report contains the vacancy rates at each CDCR institution
and systemwide and the same data as the Correctional Health Care Services Mental Health
Institution Vacancies: Summary by Institution by Classification. It also includes data from the
monthly telepsychiatry report, as well as a separate column showing the number of psychiatric
nurse practitioners working at each institution and systemwide, and the fill rate including
psychiatric nurse practitioners.

Sincerely,

/s/ Katherine Tebrock
KATHERINE TEBROCK
Deputy Director
Statewide Mental Health Program

# EXHIBIT A

## Division of Health Care Services
## Statewide Mental Health Program
## Allocated and Filled Psychiatry Positions – September 2018

| Sites | Allocated July 2018[1] | | | Filled Sept 2018 | | | | | Filled w PNP Sept 2018 | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | Site | Telepsych | Total | Site[2,3] | Registry[3] | Telepsych[4] | Total | Percentage | PNP[2,3] | Total | Percentage |
| ASP | 5.00 | 0.00 | 5.00 | 0.00 | 3.75 | 0.00 | 3.75 | 75% | 0.00 | 3.75 | 75% |
| CAL | 1.00 | 0.00 | 1.00 | 1.00 | 0.00 | 0.00 | 1.00 | 100% | 0.00 | 1.00 | 100% |
| CCC | 0.00 | 1.00 | 1.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0% | 0.00 | 0.00 | 0% |
| CCI | 4.50 | 3.00 | 7.50 | 0.00 | 3.71 | 2.00 | 5.71 | 76% | 0.00 | 5.71 | 76% |
| CCWF | 10.50 | 2.00 | 12.50 | 5.50 | 0.00 | 0.50 | 6.00 | 48% | 2.85 | 8.85 | 71% |
| CEN | 1.00 | 0.00 | 1.00 | 1.00 | 0.00 | 0.00 | 1.00 | 100% | 0.00 | 1.00 | 100% |
| CHCF | 20.00 | 6.00 | 26.00 | 5.00 | 3.81 | 5.00 | 13.81 | 53% | 1.00 | 14.81 | 57% |
| CHCF PIP | 36.50 | 0.00 | 36.50 | 15.90 | 3.56 | 1.96 | 21.42 | 59% | 0.00 | 21.42 | 59% |
| CIM | 11.50 | 0.00 | 11.50 | 11.00 | 0.00 | 0.00 | 11.00 | 96% | 0.00 | 11.00 | 96% |
| CIW | 10.80 | 1.00 | 11.80 | 4.00 | 2.18 | 0.00 | 6.18 | 52% | 0.00 | 6.18 | 52% |
| CMC | 18.00 | 0.00 | 18.00 | 15.30 | 1.99 | 0.00 | 17.29 | 96% | 0.00 | 17.29 | 96% |
| CMF | 17.00 | 2.00 | 19.00 | 11.90 | 3.43 | 2.00 | 17.33 | 91% | 0.00 | 17.33 | 91% |
| CMF PIP | 32.00 | 0.00 | 32.00 | 8.00 | 3.70 | 1.00 | 12.70 | 40% | 0.00 | 12.70 | 40% |
| COR | 11.50 | 5.00 | 16.50 | 2.50 | 4.15 | 2.50 | 9.15 | 55% | 1.27 | 10.42 | 63% |
| CRC | 5.00 | 0.00 | 5.00 | 5.50 | 0.00 | 0.00 | 5.50 | 110% | 0.00 | 5.50 | 110% |
| CTF | 7.00 | 1.00 | 8.00 | 2.75 | 0.51 | 1.00 | 4.26 | 53% | 1.00 | 5.26 | 66% |
| CVSP | 0.00 | 1.00 | 1.00 | 0.00 | 0.48 | 0.00 | 0.48 | 48% | 0.00 | 0.48 | 48% |
| DVI | 4.50 | 0.00 | 4.50 | 2.00 | 1.85 | 0.00 | 3.85 | 86% | 0.00 | 3.85 | 86% |
| FSP | 3.50 | 0.00 | 3.50 | 4.00 | 0.00 | 0.00 | 4.00 | 114% | 0.00 | 4.00 | 114% |
| HDSP | 2.50 | 4.00 | 6.50 | 1.00 | 0.00 | 3.93 | 4.93 | 76% | 0.00 | 4.93 | 76% |
| ISP | 1.00 | 0.00 | 1.00 | 0.00 | 0.45 | 0.00 | 0.45 | 45% | 0.00 | 0.45 | 45% |
| KVSP | 5.50 | 3.00 | 8.50 | 1.00 | 3.39 | 1.00 | 5.39 | 63% | 0.00 | 5.39 | 63% |
| LAC | 11.00 | 3.00 | 14.00 | 6.00 | 4.60 | 3.00 | 13.60 | 97% | 0.93 | 14.53 | 104% |
| NCSP | 12.50 | 4.00 | 16.50 | 8.00 | 2.09 | 2.33 | 12.42 | 75% | 0.00 | 12.42 | 75% |
| NKSP | 9.50 | 0.00 | 9.50 | 3.00 | 1.78 | 1.00 | 5.78 | 61% | 0.87 | 6.65 | 70% |
| PBSP | 1.00 | 2.00 | 3.00 | 1.00 | 0.00 | 1.20 | 2.20 | 73% | 0.00 | 2.20 | 73% |
| PVSP | 4.00 | 0.00 | 4.00 | 1.00 | 0.87 | 0.00 | 1.87 | 47% | 0.00 | 1.87 | 47% |
| RJD | 15.00 | 3.00 | 18.00 | 5.40 | 5.67 | 3.00 | 14.07 | 78% | 0.00 | 14.07 | 78% |
| SAC | 17.50 | 4.00 | 21.50 | 14.00 | 3.94 | 0.20 | 18.14 | 84% | 0.00 | 18.14 | 84% |
| SATF | 10.50 | 9.00 | 19.50 | 0.00 | 3.62 | 5.00 | 8.62 | 44% | 2.89 | 11.51 | 59% |
| SCC | 2.50 | 0.00 | 2.50 | 2.50 | 0.00 | 0.00 | 2.50 | 100% | 0.00 | 2.50 | 100% |
| SOL | 6.00 | 0.00 | 6.00 | 5.00 | 1.37 | 0.20 | 6.57 | 110% | 0.00 | 6.57 | 110% |
| SQ | 13.00 | 0.00 | 13.00 | 11.00 | 1.05 | 0.00 | 12.05 | 93% | 0.00 | 12.05 | 93% |
| SVSP | 5.50 | 5.00 | 10.50 | 1.00 | 5.63 | 2.20 | 8.83 | 84% | 0.00 | 8.83 | 84% |
| SVSP PIP | 10.00 | 0.00 | 10.00 | 0.00 | 5.84 | 1.00 | 6.84 | 68% | 0.00 | 6.84 | 68% |
| VSP | 6.50 | 3.00 | 9.50 | 0.75 | 0.96 | 4.83 | 6.54 | 69% | 0.00 | 6.54 | 69% |
| WSP | 9.50 | 1.00 | 10.50 | 3.00 | 1.61 | 3.33 | 7.94 | 76% | 0.54 | 8.48 | 81% |
| TOTAL | 342.30 | 63.00 | 405.30 | 169.00 | 75.99 | 48.18 | 283.17 | 70% | 11.35 | 294.52 | 73% |

Footnote

1 Source: MH Memo July 2018 Statewide Mental Health Position Allocated

2 Source: Oct 1, 2018 CCHCS Psychiatrist Vacancy/Coverage Report

3 Source: PSYT_PNP Temp Relief Details (September, 2018)

4 Source: September 30, 2018 Telepsychiatry Provider List

5 Source: PIP Site -PIP Coleman Report (September, 2018)

**Gonzalez, Melanie@CDCR**

| | |
|---|---|
| From: | Gonzalez, Melanie@CDCR |
| Sent: | Wednesday, March 22, 2017 12:27 PM |
| To: | Golding, Michael@CDCR |
| Cc: | Kuich, Kevin@CDCR; Lindgren, John@CDCR |
| Subject: | RE: EOP compliance changed from 30 days to 45 days |
| Attachments: | Current_Due_Dates EOP CHCF.pdf |

Yes, but his explanation makes it sound like this is only impacting Initial appointments. EOP routine follow-ups are now due 45 days after their last appointment, not 30, so it is impacting both initial appointments and routine appointments. I have attached another Current Due Dates report for a different provider – if you check the "Contact DT", "Rule", and "Due DT" columns it will tell you when their last appointment was, whether this is a Routine or initial appointment, and when Current Due Dates thinks the next appointment is due. You can see that the Routine appointments are due 45 days after their last appointment.

Kevin and I did look at the psychiatry contact rule parameters last week, and both agreed that "Then Routinely within 1 Month, or 45 Calendar Days if that is sooner, of the prior completion." does not make sense. 1 month should mean a calendar month, and the longest calendar month is 31 days, so 45 calendar days would never be sooner. If you define 1 month as 30 business days (which would be odd), 45 calendar days is still never sooner – only in November, when there are 3 holidays, is 30 business days ever equivalent to 45 calendar days. And per the above rule, you're supposed to go with whichever is sooner, so I really don't see how this rule change means all EOP routine follow-up appointments are now due in 45 days (as you can see demonstrated in the attached Current Due Dates) instead of 30 days.

**From:** Golding, Michael@CDCR
**Sent:** Wednesday, March 22, 2017 8:55 AM
**To:** Gonzalez, Melanie@CDCR <Melanie.Gonzalez2@cdcr.ca.gov>
**Subject:** FW: EOP compliance changed from 30 days to 45 days

Dave usually has an explanation!
Michael

**Michael Golding, M.D.**
Statewide Chief Psychiatrist
Mental Health Support Program
California Department of Corrections and Rehabilitation

Phone: 916.662.6541
Email: michael.golding@cdcr.ca.gov



EXHIBIT 8
Deponent: Kuich
Date 9-19-19 Rptr. A.D.
WWW.DEPOBOOK.COM



Learn easy ways to save water
during California's drought at
SaveOurWater.com

From: Golding, Michael@CDCR
Sent: Wednesday, March 22, 2017 8:55 AM
To: Leidner, David@CDCR
Cc: Ceballos, Laura@CDCR
Subject: RE: EOP compliance changed from 30 days to 45 days

Thanks Dave. Yea. Missed that.
So an overly creative psychiatrist could first see his patient within 45-days of arrival, not 30 days of arrival, if for example
he gave the patient his meds 14 days after and then interviewed him 30 days later.
Got it.
Michael


Michael Golding, M.D.
Statewide Chief Psychiatrist
Mental Health Support Program
California Department of Corrections and Rehabilitation

Phone: 916.662.6541
Email: michael.golding@cdcr.ca.gov



Learn easy ways to save water
during California's drought at
SaveOurWater.com

From: Leidner, David@CDCR
Sent: Tuesday, March 21, 2017 11:27 PM
To: Golding, Michael@CDCR
Cc: Ceballos, Laura@CDCR
Subject: RE: EOP compliance changed from 30 days to 45 days

You can always check the current Psychiatry Contact rule parameters (as well as all other contact rules) on the
Compliance Rules grid. Here's the rule for EOP and EOPMod:

2

First Psychiatrist Contact required no later than 30 Calendar Days after the Arrival Date or Program Start or MHI Start or Psychotropic Start, whichever happened last. Then Routinely within 1 Month, or 45 Calendar Days if that is sooner, of the prior completion.

The rule was changed to the above in December. If you and Laura feel it should be otherwise, let me know and I will modify.

-Dave

From: Golding, Michael@CDCR
Sent: Tuesday, March 21, 2017 4:45 PM
To: Leidner, David@CDCR
Cc: Ceballos, Laura@CDCR
Subject: FW: EOP compliance changed from 30 days to 45 days

Hi Dave,
Has something changed? What are we missing?
Michael


Michael Golding, M.D.
Statewide Chief Psychiatrist
Mental Health Support Program
California Department of Corrections and Rehabilitation

Phone: 916.662.6541
Email: michael.golding@cdcr.ca.gov



Learn easy ways to save water
during California's drought at
SaveOurWater.com

From: Gonzalez, Melanie@CDCR
Sent: Tuesday, March 21, 2017 2:37 PM
To: Golding, Michael@CDCR; Lindgren, John@CDCR
Subject: EOP compliance changed from 30 days to 45 days

Hi Michael and John,

I have attached a copy of Current Due Dates that my OT sent me in October 2016, which correctly shows my EOP patients' appointments were due 30 days after their last appointment.

Also attached is a copy of Current Due Dates for EOP patients from today, which shows the EOP patients' appointments are not due until 45 days after their last appointment. I ran Current Due Dates at multiple institutions, and all show a 45 day window for EOP Psychiatry appointments.

Melanie

3

**Melanie Gonzalez, MD**
Senior Psychiatrist, Specialist
Elk Grove - Headquarters
California Department of Corrections and Rehabilitation
916-691-0637
Cell phone: 916-823-2864

# EXHIBIT U
# (2018-07-02-1508hrs)



Golding, Michael@CDCR                                    July 2, 2018 ①

| From: | Golding, Michael@CDCR |
|---|---|
| Sent: | Monday, July 02, 2018 3:08 PM |
| To: | Tebrock, Katherine@CDCR |
| Subject: | Power Plans EHRS |

Hi,

You seemed to make a decision mandating that Power Plans be used for scheduling and approved a memo to that effect (but are now maybe possibly agreeing to more discussion), apparently with no understanding at all of the opinion of the psychiatry leadership team, the psychiatry leader on the EHRS project, and virtually every psychiatrist across the state who has spoken with us and been polled -- not to mention failing to take into account the historical process by which the EHRS was built.

Our team and psychiatrists across the state have repeatedly objected over years to the Power Plan design. Our medical colleagues obviously would not use it because of its inefficiency, and we repeatedly expressed our objections even to you.

As you may recall, our exec team (against the express and repeatedly stated opinion of HQ psychiatrists) designed the workflows in ways that psychiatrists vigorously objected to – including mandating powerplans -- which is why you could think that they would be considered standard, in some bizarre meaning of that word.  It's our standard only because psychiatrists, for years, have been denied multiple chances to make the EHRS more efficient for them.

In terms of going down rabbit holes, which you accused me of doing, please note that your making decisions (without any apparent concern about what your psychiatry team thought, while fully listening to your psychology execs) is a very good way of beginning to dig that hole. This pattern has become far more serious, with patient care issues with far greater siginificance than EHRS issues.

Our psychiatry team briefly had hope for improvement earlier this year when the court staffing case began to get focus. You began to take an interest in certain psychiatry issues (including EHRS issues) and  seemed to direct our psychology team to allow changes in the EHRS to help psychiatrists. And there was even a little bit of response.

For example the psychiatry team since 2017 begged our psychology team to enable those psychiatrists who had recently been hired to see patients when they started working, rather than to have to pay them a full salary for a month or more because of no access to the electronic record system. Psychiatrists can't see patients without the EHRS "provisioning" because they need  to be able to individually find information on patients, schedule, and document their work. We begged for two years to create a simple fix for this problem, but were repeatedly thwarted by our fully non-medical exec team and admins who thought this psychiatry need was low priority. Furthermore, denying patients a month of care is also problematic, in addition to financial concerns.

The psychology team put the new psychiatrists in their queue, creating massive waste of time and resources. I note that this waste occurred, for one of the most expensive human resources in our system, our physician psychiatrist. Though we had argued for a couple of years for that change to no avail, you put a stop to their ignoring us on that one issue.

But do note that even still your psychology team did not quite follow your directive (unless you changed it when I was not aware). They did not build a provisioning resource for more than one new psychiatrist at a time, as you and we requested, but built the resource for just one! So if a second new psychiatrist comes to an institution, he or she is out in the cold and not allowed to see patients for several weeks or a month, while we pay him and patients are not seen. But even a little something is someting and we were grateful.

You say that you reported to the court that there has been a priority put on trying to improve the experience for the psychiatric physician with the EHRS, just last month. But this is just not true. Multiple projects requested by psychiatrists are not being done.    *Physician Kevin Kuich says     3/12/2018 ②*

Kevin Kuich says the following:
We have had many instances of things not getting done, or occurring in a poor manner. This is nothing new.

1) When Britt asked us to go to CHCF PIP early after they started on the EHRS, John Rekart indicated he would be providing data flag data and other QM information for the discussion. Despite asking for that data, there was no response. The report was sent to Britt with clear indication that data was not made available to us.
2) A proposal for off-site telepsychiatry was advanced without thoughtful implementation, and sent out in announcements by the registry company to our telepsychiatry staff.
3) When I had asked Britt for data to better understand what Psychiatry is doing in the EHRS (orders fired, Order Rec completed, number of notes, etc), she facilitated a meeting with John, Steven, me and her. It was agreed they could get the data and Steven was working on it. The data never came despite many asks. When discussed with Laura about 4 months later, she placed a request to CCHCS QM to compile the data. It sits in some queue somewhere, and no data has been made available.
4) We have had constant problems with psychiatrists sitting idle because MH Scheduling has not added them as a resource to be scheduled into. We were told there is a MH priority list, and this type of thing was not a priority. We were also told it takes on average 10 days to place someone as a scheduling resource. Just this morning I was asked by the MAT team why it has taken one month to get a new yard added for MAT scheduling at CIM.
   a. The "solution" was to have 2 or 3 people "share" a common schedule for a workday. This solution is confusing, as you can imagine.
   b. Although under the scrutiny of the court we were able to obtain the building of 1 generic scheduling resource per institution to avoid these resource delays, Katherine and Laura agreed to build 4 additional generic resources. There is no timetable for that completion and it sits in another queue.
5) The recent (January 2018) survey to the field indicated a pervasive dissatisfaction with Powerplans and Powerforms. Scheduling complaints are extremely common. We have discussed in may forums, which have included Katherine, on the problems with powerplans and scheduling. Despite the concerns expressed for over 18 months, the relentless march toward powerplans and scheduling goes forward. I am not sure how many times it needs to be demonstrated this is a flawed approach, yet MH continues to double down on the process. This is not a scheduling process endorsed by Medical or Nursing.
   a. Although now fixed, we had problems with social workers and psychologists canceling out medical and lab order in powerplans.
   b. We continue to have problems with multiple open powerplans, and multiple open phases.
   c. It has been demonstrated an innumerable amount of times the number of clicks required to work with powerplans is inefficient relative to one-off orders.
6) When Psychiatry change requests were placed in the MH Solution Center ticket queue, they languished and were not addressed. It was promised they would be built by MH, but that never happened. Finally, in around late fall 2017 MH released the change requests to CERNER, who has been building them out. This in the context of MH somehow able to build items that were of interest and important to them.
7) The consolidation of power continues with the MH Change Management Committee, which has moved from a place to discuss changes to the MH EHRS process, to a group that votes whether to allow changes to move forward to be heard at CLAC in the form of an RFC. It is a committee that has a deficit of voting psychiatrists relative to psychologists. It is now impossible for psychiatry to advance something to CLAC (and heard by all the CCHCS disciplines) that would be unpopular with psychology.
   a. We witnessed this exact situation last week when in the MH QM meeting the two psychiatry voting members were outvoted in the agreement to disregard scheduling orders written by psychiatrists in the interest of the patient, over the interest of the program and data.

We have surveyed the psychiatrists and know how they want to work in the EHRS. It is not how they work currently. Given the continuing push for control, it would seem clear the intent is to engage psychiatrists when the court is looking,

July 12, 2018 ③

but otherwise disregard as has been the case for the last 2 decades. It has been very unsatisfying for psychiatry at all levels.

↑                    HQ Physician-Psychiatrist Kevin Kuich says ↑

I (w/HW) ↓

Of interest recently, perhaps to counteract the tiny bit of pressure you placed on our psychologist/admin exec team a three or four months ago, they designed a committee composed exclusively of psychologists and admins (and one psychiatrist, Kevin Kuich) to prevent what used to occur: Though our psychology team blocked virtually every (but not all) EHRS project that our psychiatrists have wanted, the psychiatrist Kevin Kuich used to be able to appeal to his nursing, medical, and administrative colleagues at CLAC (nursing and medical representatives). Sometimes as fellow medical providers, they could (with their political force) get some of the psychiatrist's EHRS needs met by our colleagues

But that loophole in which psychiatrists could sometimes make some progress was shot down by our exec psychologists. The completely non-medical exec team/administrative team easily outvotes the one physician (Dr. Kuich) on the panel, which means that those who have historically and continually blocked progress with the EHRS -- making disastrous and inefficient design decisions for psychiatrists -- now fully control any attempt by psychiatric physicians to make a difference. We are no longer allowed to appeal to our CLAC (medical and nursing) colleagues, but cannot ask for anything unless our psychologists, with their proven hostility to medical workflows, first approve.

So psychiatrists continue to suffer from the incredible inefficiencies of the EHRS (some of which due to the CERNER design,,,, eg med reconcilliation) but much also due to the enforcement of exec psychology mandates on our physicians in mental health. It's been disastrous and that is perhaps one of the smaller of our problems (virtually all other avenues to improve psychiatric medical care of patients are also being currently thwarted, probably since the incident at the end of April which seemed to have inspired the exec psychology team to prevent the psychiatrists from caring for patients even more.)

I actually can give you several examples where your psychology team has voted to maintain and extend their right to specifically overrule direct medical orders for specific patient care written directly and explicitly in the chart. In discussion with very high ranking physicians in CCHCS, they claim what you are allowing and have for years (overruling physician's direct orders in the chart) is probably illegal (?) This too must stop.

Finally, you say that we are following what the psychiatry experts said. Obviously you either did not allow or did not encourage the psychiatry experts to ask your psychiatry team's opinion about essentially anything related to how psychiatry is practiced in CDCR (The Chief Telepsychiatrist was asked to give them a brief tour of a telepsych facility in which the purpose was to show them the facilities). The opinion of the experts therefore cannot take into account the information that the psychiatry leadership team knows about CDCR and its treatment of psychiatric patients.

You are fond of saying that we should discuss more in person what is said in e-mail messages. But I can point out to you that the topics we are supposed to discuss in e-mail, only occasionally get actually discussed. Perhaps that's why it is not in the front of your mind the very significant issues that are right now adversely affecting patient care, including perhaps the above-mentioned less important issues (??) that merely make psychiatrists miserable and inefficient in utilizing aspects of the EHRS.

And my concerns are at this point far deeper than power plans, as are the concerns of our leadership team in psychiatry. I believe our concerns would be shared by many.

With Concern,
Michael

3

July 12, 2018
④

**Michael Golding, M.D.**
Statewide Chief Psychiatrist
Mental Health Support Program
California Department of Corrections and Rehabilitation

Phone: 916.662.6541
Email: michael.golding@cdcr.ca.gov



Learn easy ways to save water
during California's drought at
SaveOurWater.com

# EXHIBIT S
# (2018-06-18-1359hrs)



## Golding, Michael@CDCR

| | |
|---|---|
| **From:** | Ceballos, Laura@CDCR |
| **Sent:** | Monday, June 18, 2018 1:59 PM |
| **To:** | Rekart, John@CDCR; Williams, Travis@CDCR; Golding, Michael@CDCR; Kuich, Kevin@CDCR; Chaiken, Shama@CDCR; Ponciano, Angela@CDCR; Christophersen, Sean@CDCR; Bender, Crystal@CDCR; Greene, Andrew@CDCR; Johnson, Jennifer (HCS)@CDCR; Tebrock, Katherine@CDCR; Brizendine, Brittany@CDCR; Vess, James@CDCR; McAloon, Margaret@CDCR; Force, Elaine@CDCR; O'Meara, Kathleen@CDCR; Scholl, Jason@CDCR; Cornell, Christopher@CDCR; Cartwright, Steven @CDCR; Gorman, Briauna@CDCR; Castillo, Ric@CDCR; Nguyen, Tiffany@CDCR |
| **Subject:** | MH Change Management Committee - review process |

Hello All,

We received some clarification regarding the change management committee, which I am passing along. Per Katherine, all change requests should come through the change management committee before we pursue an RFC. This helps ensure we make coordinated changes to the system. We are going to work hard to ensure that no changes or processes are slowed by the committee. If you have an RFC, all that is needed is to submit a solution center ticket with "MH EHRS" at the beginning of it, and that gets it tracked and routed straight to our MH team. If you find response times are slow or other performance issues, please notify John, and then me, immediately so we can ensure this doesn't occur.

Please let me know if you have any questions.

Thank You,

Laura Ceballos, cchp, Ph.D.
Mental Health Administrator, Inpatient Facilities, Quality Improvement
Statewide Mental Health Program
916-691-0308

1

# EXHIBIT MM
# (2018-08-02-1232hrs)



**Golding, Michael@CDCR**   *Aug 2, 2018 ①*

| | |
|---|---|
| **From:** | Golding, Michael@CDCR |
| **Sent:** | Thursday, August 02, 2018 12:32 PM |
| **To:** | Kuich, Kevin@CDCR |
| **Subject:** | Re: MH Change Management Committee |

*"Everyone" (or bts)*
*Can determine physician*
*workflows except*
*physicians"*

Hi,

The real problem is that those who know not much and psychologists can determine fully and completely psychiatric workflows, though the two psychiatry voting members (you and I) do not have a chance.

Most work for the psychologists and/or are part of the psychology teams that design these things.

The workflows designed, in addition, continue to focus on "scheduling" so as to fit in their interesting model that in many circumstances, only that which a psychiatrist scheduled occurred, which leads to all the ways in which compliance reports are biased, usually toward making us look better than we are doing.

It also allows our psychologists to continue to try to force our psychiatric physicians to use inefficient power plans and forms which, in addition to being quiet inefficient, also try to mandate the time-frame in which psychiatrists see patients.

Appointments are not even considered late -- or % weeks late — if a psychiatrist schedules it before the maximum timeline and in fact the apppintment is actually (potentially months) late.

And of course our medical colleagues are not forced to use our power plans, nor nursing, nor dental.

This whole thing is just sad that we can't be allowed to interact efficiently because those who have little knowledge of what physician workflows should be, determine physician workflows, and our physicians can not. It is remarkable, despite our even polling our psychiatric physician colleagues to know how they think we can be more efficient, we still cannot make these determinations.

Gosh.

Michael

Sent from my iPhone

On Aug 2, 2018, at 11:12 AM, Kuich, Kevin@CDCR <Kevin.Kuich@cdcr.ca.gov> wrote:

> Hi Michael,
>
> Just relaying to you an interesting exchange I had today in the above noted meeting.
>
> It was confirmed that there is no quorum requirement for the meeting. Decisions are based on the number of members approving the change.
>
> We had a change request today to build an IPOC for the PIPs. It made sense to approve, but my concern was that Crystal Bender would be voting on this proposal. I asked her point blank if she could explain what an IPOC was, which she could not. My point to the committee was that we have members on the committee voting on things they do not understand. Other voting committee members who would similarly be likely unable to describe what an IPOC would be are:
>
> Angela Ponciano

1

Sean Christopherson
Jennifer Johnson
Andrew Greene
Tiffany Nguyen



Since this is such a loose committee with unclear rules and is the gate keeper to move changes into the EHRS, I wanted to make it clear there is some concern about folks being capable of casting an informed vote, given that it seems that everyone has a vote.

Nothing for you to do.....just information.

Thanks,

Kevin

**Kevin Kuich, M.D.**
**Chief Psychiatrist**
**Statewide Telepsychiatry Program**
**Mental Health Support Program**
**Elk Grove - Headquarters**
California Correctional Health Care Services
California Department of Corrections and Rehabilitation
916-691-9918 desk
916-430-9759 mobile
Kevin.Kuich@cdcr.ca.gov

<image001.jpg>

IMPORTANT WARNING:  This message is intended for the use of the person or entity to which it
is addressed and may contain information that is privileged and confidential, the disclosure of
which is governed by applicable law.  If the reader of this message is not the intended recipient, or
the employee or agent responsible to deliver it to the intended recipient, you are hereby notified
that any dissemination, distribution or copying of this information is STRICTLY PROHIBITED. If
you have received this message by error, please notify us immediately and destroy the related
message.  You, the recipient are obligated to maintain it in a safe, secure and confidential
manner.  Re-disclosure without appropriate patient consent or as permitted by law is
prohibited. Unauthorized disclosure or failure to maintain confidentiality could subject you to
penalties described in Federal and State Law.

2

# EXHIBIT III



*Kevin asks EHRS data-bup access*

**Golding, Michael@CDCR**

*Documents*
*RNO access*
*to Data for Kevin EHRS*

| | |
|---|---|
| From: | Golding, Michael@CDCR |
| Sent: | Tuesday, October 24, 2017 5:18 PM |
| To: | Tebrock, Katherine@CDCR |
| Subject: | FW: Follow up on Psychiatry SQL Tracking Request |
| Attachments: | CHCF PIP Psychiatry Audit |

Hi Katherine,

Kevin requests access to the below highlighted information from Dr. Rekart in order to address issues that Dr. Brizendine raised with me today about the productivity of well-paid registry psychiatrists.

This is his "Short-Term" request, the details of which are listed in the highlighted information below. In a different situation, Kevin also asked to receive this type of information in June and Brittany had said that Kevin would be allowed to access the data then. Unfortunately it has not been made available. In a third situation, Brittany made a request of Kevin to audit the CHCF PIP (information not made available again).The information was not provided..

Kevin really should be able to directly query the data base itself to monitor psychiatric trends, which is his long-term request.

Would you be able to ask Dr. Rekart and those who control this database to honor our short term and long term request so we can  answer the questions you and Brittany have repeatedly asked us?

Best,
Michael

Kevin said:
- Short Term
  - o  To address the concerns at a certain institution, I need to know the scheduling information for certain psychiatrists, PLUS the above highlighted data
- Long Term
  - o  Free, unfettered, direct access to query the data base myself to determine Psychiatry trends to improve both the patient and end user experience

The ask at that time was to have data access to know what work-product Psychiatrists are producing, and not relying on what they said they did through scheduling responses. Specifically, I needed to know and need to know for Brittany's current request:

- Orders fired
- Reconciliations done
- Documents signed
- Powerplans ordered
- Medications ordered
- Messages responded to in Message Center

1

Michael Golding, M.D.
Statewide Chief Psychiatrist
Mental Health Support Program
California Department of Corrections and Rehabilitation

Phone: 916.662.6541
Email: michael.golding@cdcr.ca.gov



Learn easy ways to save water
during California's drought at
SaveOurWater.com

From: Kuich, Kevin@CDCR
Sent: Tuesday, October 24, 2017 4:53 PM
To: Golding, Michael@CDCR
Subject: FW: Follow up on Psychiatry SQL Tracking Request

Hi Michael,

Back in June, Britt was kind enough to be in a meeting with John Rekart. Steven Cartwright and myself. The purpose of the meeting was to get task-based Psychiatry performance data, not scheduling data. I wanted to make sure we were not duplicating our former paper system where someone indicated they "saw a patient", yet there is no documentation or orders to prove that occurred. As you know, unfortunately, we simply made that inaccurate and uninformative paper tracking system electronic with the EHRS.

The ask at that time was to have data access to know what work-product Psychiatrists are producing, and not to rely just on what the psychiatrists said they did (i.e. their scheduling response.) Specifically, I needed to know then and I need to know now the below items These items are relevant even today to answer a question that Brittany asked concerning the productivity of well-paid registry psychiatrists at Corcoran.

- Orders fired
- Reconciliations done
- Documents signed
- Powerplans ordered
- Medications ordered
- Messages responded to in Message Center

(All of the above broken down by provider, date and time, so that afterhours work could be assessed as well.)

I requested information a second time after Britt requested John Rekart and I go to CHCF PIP for an audit. That information unfortunately was not delivered either (see attached). Your request Michael is our third attempt to get this information.

I have a short term and long term request:

- Short Term
  - To address the concerns at a certain institution, I need to know the scheduling information for certain psychiatrists, PLUS the above highlighted data

2

- Long Term
  - Free, unfettered, direct access to query the data base myself to determine Psychiatry trends to improve both the patient and end user experience

Thanks Michael. We will get to the bottom of things and find accurate and true information.

Kevin


Kevin Kuich, M.D.
Senior Psychiatrist, Specialist
Elk Grove - Headquarters
California Correctional Health Care Services
California Department of Corrections and Rehabilitation
916-691-9918 desk
916-430-9759 mobile
Kevin.Kuich@cdcr.ca.gov

 CALIFORNIA CORRECTIONAL
**HEALTH CARE SERVICES**



Learn easy ways to save water
during California's drought at
SaveOurWater.com


IMPORTANT WARNING:  This message is intended for the use of the person or entity to which it is addressed and may contain information that is privileged and confidential, the disclosure of which is governed by applicable law.  If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this information is STRICTLY PROHIBITED.  If you have received this message by error, please notify us immediately and destroy the related message.  You, the recipient are obligated to maintain it in a safe, secure and confidential manner.  Re-disclosure without appropriate patient consent or as permitted by law is prohibited.  Unauthorized disclosure or failure to maintain confidentiality could subject you to penalties described in Federal and State Law.


From: Kuich, Kevin@CDCR
Sent: Monday, July 31, 2017 11:54 AM
To: Cartwright, Steven @CDCR
Subject: RE: Follow up on Psychiatry SQL Tracking Request

Sure thing. Done!

Thanks for getting back with me.

K

3

From: Cartwright, Steven @CDCR
Sent: Monday, July 31, 2017 10:13 AM
To: Kuich, Kevin@CDCR
Subject: RE: Follow up on Psychiatry SQL Tracking Request

Hi Kevin,

I have not had much bandwidth to focus on this since we last spoke. It should be feasible, but my priorities continue to be evaluated. Might I suggest adding this to the newly developed QM data request site? Then you will receive automatic status updates.

Let me know if we need to meet.

Steven Cartwright, Psy.D.
Senior Psychologist Specialist
office: 916.691.0321

From: Kuich, Kevin@CDCR
Sent: Tuesday, July 25, 2017 2:27 PM
To: Cartwright, Steven @CDCR <Steven.Cartwright@cdcr.ca.gov>
Subject: FW: Follow up on Psychiatry SQL Tracking Request

Hey Steven,

I know you have a million things happening right now. Just wondering if you need any additional information from me for this data dive.

I will be here this week and next, then I begin my traveling ways again.

Thanks,

Kevin

From: Kuich, Kevin@CDCR
Sent: Wednesday, June 21, 2017 10:24 AM
To: Cartwright, Steven @CDCR
Cc: Brizendine, Brittany@CDCR; Rekart, John@CDCR
Subject: Follow up on Psychiatry SQL Tracking Request

Hi Steven,

Just wanted to circle back around on the EHRS tracking request for psychiatry. Psychiatry needs to have a way to measure discrete tasks. Our current scheduling-based tracking system is useful, but not detailed enough. Although Lighthouse is similarly useful for an overall picture, it does not provide clear data for making critical staffing decisions.

Psychiatrists do many tasks, including:

- Completing documents
- Attending meetings
- Writing orders (labs, meds, scheduling orders)
- Performing Order Reconciliation

4



- Responding to Message Center requests/tasks
- Reviewing charts
- Responding to urgent business hours and afterhours requests

We need to have some way to understand what tasks a psychiatrist has completed for any patient. Ideally, we could query the database looking for the above noted tasks performed per patient, and then aggregate that per day.

It is a difficult transition from a paper tracking sheet entered into the system without regard to task completion, and moving to a task completion based model. We have many strong data analysis options now that EHRS is available. I am happy to work with you to refine this further.

Thanks for your expertise!

Kevin

Kevin Kuich, M.D.
Senior Psychiatrist, Specialist
Elk Grove - Headquarters
California Correctional Health Care Services
California Department of Corrections and Rehabilitation
916-691-9918 desk
Kevin.Kuich@cdcr.ca.gov





Learn easy ways to save water
during California's drought at
SaveOurWater.com

IMPORTANT WARNING:   This message is intended for the use of the person or entity to which it is addressed and may contain information that is privileged and confidential, the disclosure of which is governed by applicable law.  If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this information is STRICTLY PROHIBITED.  If you have received this message by error, please notify us immediately and destroy the related message.  You, the recipient are obligated to maintain it in a safe, secure and confidential manner.  Re-disclosure without appropriate patient consent or as permitted by law is prohibited.  Unauthorized disclosure or failure to maintain confidentiality could subject you to penalties described in Federal and State Law.