DONALD SPECTER – 083925
STEVEN FAMA – 099641
MARGOT MENDELSON – 268583
PRISON LAW OFFICE
1917 Fifth Street
Berkeley, California 94710-1916
Telephone: (510) 280-2621

CLAUDIA CENTER – 158255
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN
CALIFORNIA, INC.
39 Drumm Street
San Francisco, California 94111-4805
Telephone: (415) 621-2493

MICHAEL W. BIEN – 096891
JEFFREY L. BORNSTEIN – 099358
ERNEST GALVAN – 196065
THOMAS NOLAN – 169692
LISA ELLS – 243657
JENNY S. YELIN – 273601
MICHAEL S. NUNEZ – 280535
JESSICA WINTER – 294237
MARC J. SHINN-KRANTZ – 312968
CARA E. TRAPANI – 313411
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
Telephone: (415) 433-6830

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>GAVIN NEWSOM, et al.,<br><br>　　　　Defendants. | CASE NO. 2:90-CV-00520-KJM-DB<br><br>**PLAINTIFFS' RESPONSE TO DEFENDANTS' RESPONSE TO PARAGRAPH 5 OF THE COURT'S SEPTEMBER 17, 2019 ORDER**<br><br>Judge: Hon. Kimberly J. Mueller |

**INTRODUCTION**

In response to this Court's August 14, 2019 Order, Defendants asserted that CDCR did not modify the definition of the business rule for measuring timely psychiatry contacts from thirty days to more than thirty days for patients at the Enhanced Outpatient Program (EOP) level of care housed in the Administrative Segregation Unit (ASU) EOP Hubs. Defs.' Resp. to Aug. 14, 2019 Order, ECF No. 6257 at 27 (Aug. 29, 2019). On that basis, Defendants also asserted they did not need to correct five ASU EOP Hub self-certification letters they provided to the Special Master. *Id.* On September 17, 2019, this Court ordered Defendants to provide evidence to support their claims. Sept. 17, 2019 Order, ECF No. 6288 at 4 ¶ 5. After obtaining an extension to file their response, Defendants notified the Court on October 10 that CDCR had "erred" in its prior filing, and had indeed modified the business rule for the ASU EOP Hubs, contrary to their previous representations to this Court. *See* Defs.' Resp. to Para. 5 of Sept. 17, 2019 Order ("Defs.' Resp."), ECF No. 6330 at 2 (Oct. 10, 2019). Defendants appended an unsworn letter purporting to correct the self-certification letters. *See id.* at Ex. A. The next day, Defendants also a filed a declaration by Dr. David Leidner, in which he took "responsibility for this error." *See* Decl. of David Leidner in Supp. of Defs.' Resp. to Para. 5 of Sept. 17, 2019 Order ("Leidner Decl."), ECF No. 6332 ¶ 5 (Oct. 11, 2019).

Defendants' corrections to the ASU EOP Hub data—which are predicated on only an unsworn letter—do not go far enough. Not only do Defendants fail to correct timely psychiatry contact data for every ASU EOP Hub institution in all of the months affected, Defendants fail to acknowledge the impact of the erroneous business rule change, as well as additional limitations of their methodology for providing the corrected data. For the reasons set forth below, Plaintiffs object to Defendants' filing as insufficient to fully and transparently correct the record consistent with this Court's dictates.

/ / /

/ / /

/ / /

I.  **Defendants Must Provide Corrected Data for All ASU EOP Hub Institutions for All Five Months Affected By the Business Rule Change Because Measuring Timely Psychiatry Contacts Is a Necessary Component of the Court-Ordered Hub Certification Process**

Defendants' assertion that they need not provide corrected information for every EOP ASU Hub unit for all of the months affected is based on a false premise. Defendants claim that because their self-certification process focuses primarily on other Performance Report indicators, compliance with the Program Guide's requirement that EOP class members in segregation see a psychiatrist "at least every 30 days," *see* 2018 Program Guide at 12-7-10, is not necessary. *See* Defs.' Resp. at 6 (asserting that "[t]he timely psychiatry contacts indicator is not one of the five Performance Report indicators requiring ninety percent compliance for certification"). The requirement that ASU EOP patients see their psychiatrists every 30 days is an unequivocally fundamental part of the Program Guide. And Defendants' ASU EOP Hub self-certification process was borne out of this Court's April 2014 order, upon finding that segregation is dangerous and harmful to class members, that Defendants "will be prevented from admitting any *Coleman* class member at the EOP level of care to any EOP ASU hub that does not meet or exceed Program Guide requirements for a period of more than two consecutive months." *Coleman v. Brown*, 28 F. Supp. 3d 1068, 1103-04 (E.D. Cal. 2014). Defendants' argument that compliance with the Program Guide's 30-day psychiatry contact requirement is not a necessary component of the self-certification process is therefore foreclosed by this Court's clear holding. *See* Defs.' Resp. at 6. Indeed, the materials provided by Defendants during their development of this process in 2014 clearly list "Timely Psychiatry Contacts" as one of the areas for which "the program must meet a threshold of 90% [to certify]." *See* Decl. of Cara E. Trapani, filed herewith ("Trapani Decl."), Ex. A at 8. Those same materials make clear that the data for the timeliness of psychiatric contacts supplied by Defendants' Performance Reports "shall be utilized to assess performance" in that area. *See id.*, Ex. A at 19.

Defendants concede that headquarters staff provide "heat grids" containing Performance Report data for the Timely Psychiatry Contacts measure and other indicators "to the regional mental health team and the ASU EOP Hub institutions each month to aid them in the certification process." Defs.' Resp. at 6.  Contrary to Defendants' position that the timely psychiatry contacts indicator does not impact certification, CDCR often determines that an institution fails certification when it reports that it has not met the 90% threshold for each "heat grid" measure.  *See, e.g.*, Trapani Decl., Ex. B at 1.  Indeed, then-Deputy Director Katherine Tebrock's April 2017 Hub certification letter, dated June 22, 2017, found that two institutions, CHCF and SAC, could not be certified due to the timely psychiatry contacts indicator measuring below 90%.  *Id*.  Both institutions in question expressly tied their non-compliance to Defendants' mid-month correction of the business rule to be 30 days, instead of the more generous timeframe allowing 45 days[1] between contacts, and CHCF made clear that it would have failed in each of the prior five months had the true Program Guide requirement been in place.  *See id*. Ex. B at 1, 8.  The fact that the other ASU EOP Hub institutions did not mention the timely psychiatric contact measure in announcing themselves compliant in April 2017 does not mean that the data as to those institutions is not relevant and need not be corrected; if anything, it makes the lack of transparency and clear accountability in the self-certification process even more apparent and suspect, especially since then-Deputy Director Tebrock certified them regardless.  *See id.*, Ex. B at 2.

Defendants are taking the position that they need only correct the erroneous timely psychiatry contact data if an institution explicitly referenced that data in their monthly report to headquarters during the five months CDCR unilaterally redefined the timely

---

[1] Plaintiffs note that the Neutral Expert identified evidence that the rule change allowed, in some cases, for contacts to occur up to 60 days after the prior psychiatry appointment while still being counted as timely.  Neutral Expert Report, ECF No. 6147 at 42 (May 3, 2019).  For ease of reference herein, however, Plaintiffs refer to the business rule change as Dr. Leidner does, as allowing up to 45 days between appointments.  Leidner Decl. ¶ 3.

psychiatry contacts measure to exceed the Program Guide's explicit timeframe. Defs.' Resp. at 6; *see also id* at 6-8 (providing corrected data for only some, but not all, EOP ASU Hub institutions in the five letters impacted by the change). This appears premised on the assertion that only "some of the regional staff reviewed the full set of Performance Report indicators for the ASU EOP Hub program" during the months in question. *See* Defs.' Resp. at 6. If Defendants' unsworn statement is accurate, it demonstrates Defendants' failure to take the self-certification process sufficiently seriously. If some EOP ASU Hub institutions or regional teams do not actually consider whether the acutely mentally ill patients housed in these dangerous segregation units are in fact seeing the psychiatrist as often as the Program Guide mandates before self-certifying, or if the Department's Deputy Director, who is ultimately personally responsible for the certification decision, permits those units to continue treating class members without confirming Program Guide compliance, that represents a serious breakdown of the self-certification process and a violation of this Court's April 2014 order. *See Coleman*, 28 F. Supp. 3d at 1103-04.

The timely psychiatry contact data is a necessary and integral input into the certification process. Dr. Leidner concedes that in December 2016, he "mistakenly" changed the business rule for measuring timely psychiatry contacts in the ASU EOP Hubs to more than 30 days, even though the Program Guide requires such patients see a psychiatrist "at least every 30 days." Leidner Decl. ¶¶ 3-4 (citing 2018 Program Guide at 12-7-10). Accordingly, the data Defendants relied on to prepare the Hub certification letters for the five months in question was patently inaccurate, and significantly more forgiving to CDCR's ability to achieve "compliance." That data must be corrected transparently for each and every institution, and for each and every affected month, so that the record is clear as to whether all of the ASU EOP Hub institutions were in compliance with the Program Guide during this period as required by the Court's April 2014 order. Anything less would improperly minimize the impact of Defendants' provision of misleading information to the Special Master, without disclosure, that necessarily hindered

his ability to oversee this critical and hard-won Eighth Amendment remedy.

## II. Defendants Must Acknowledge that CDCR's Decision to Extend the Interval Between Psychiatry Appointments for ASU EOP Patients Beyond Thirty Days, in Violation of the Program Guide, Significantly Improved Compliance Rates.

As was the case in Defendants' Notice of Errata of ECF Nos. 5591, 5601, and 5841, *see* ECF No. 6302 at 1-4 (Oct. 1, 2019), Defendants' unsworn letter purporting to correct the ASU EOP Hub data fails to concede that the changed business rule allowed CDCR to over-report compliance at nearly every institution they have elected to now correct (and certainly also at those they did not)—and in some cases, to a significant degree. *See, e.g.*, Defs.' Resp. at 7-8 (in January 2017, CCWF's compliance rate dropped from 100% to 86%; in February 2017, CHCF's compliance rate dropped from "over 90%" to 78%). The corrected data reveals that Defendants' change to the Timely Psychiatry Contacts indicator allowed anti-therapeutic segregation units to continue housing EOP class members without providing them the mental health treatment required by the Program Guide in direct contravention of this Court's April 2014 order. Indeed, two institutions expressly stated this in their self-reports for April 2017 after the rule changed back. *See* Trapani Decl. Ex. B at 8, 37. Defendants must take full responsibility for these significant reductions in compliance rates—and the effect their manifestly improper change had on their compliance with the April 2014 order—in order to fully and transparently correct the record. And they must do so under oath, not simply in an unsworn letter.

## III. Former Deputy Director Katherine Tebrock Must Acknowledge the Provision of Misleading Timely Psychiatry Contact Data to the Special Master and the Court

Katherine Tebrock, the former Deputy Director of CDCR's Mental Health Program, provided data relying on the changed business rule to the Court in a March 30, 2017 declaration (ECF No. 5591-2), and to the Special Master in the five ASU EOP Hub certification letters affected by the rule change. Despite Defendants' purported corrections to this data, neither Ms. Tebrock, nor her successor, have ever corrected those documents in a sworn statement. Unless and until Ms. Tebrock corrects her 2017 declaration, and

unless and until Ms. Tebrock or her successor acknowledge that false data was provided to the Special Master in five ASU EOP Hub letters, the record will not be fully corrected.

As to the Hub certification letters, Ms. Tebrock personally signed and affirmed each of Defendants' letters in the period when the timely psychiatry contact indicator used the erroneous business rule. But there has never been any statement from Ms. Tebrock, or her successor, acknowledging that false data was provided to the Special Master and his team. To achieve transparency, Ms. Tebrock or her successor should be required to personally acknowledge that the certifications she provided to the Special Master relied on inaccurate data.

Second, Defendants' Notice of Errata of ECF Nos. 5591, 5601, and 5841, *see* ECF No. 6302 (Oct. 1, 2019), also failed to include a revised declaration by Ms. Tebrock, who relied on the misleading timely psychiatry contact data included as an exhibit to her declaration to argue that CDCR was providing constitutional-level mental health care. *See* Decl. of Katherine Tebrock in Supp. of Defs.' Resp. to Special Master's Report on Staffing, ECF No. 5591-2 at 4 (Mar. 30, 2017). Ms. Tebrock should be required to submit a declaration acknowledging that her March 30, 2017 declaration relied on data using the revised business rule. The fact that Ms. Tebrock no longer works for CDCR is immaterial, especially given that she continues to work for the State of California and is represented in this action.

### IV. Defendants Must Acknowledge Additional Limitations to Their Methodology for Producing Revised Timely Psychiatry Contacts Data for the ASU EOP Hub Institutions

While Plaintiffs appreciate that Defendants acknowledged some limitations to their revised data, *see* Defs.' Resp. at 4-5, Defendants omitted other important limitations. As described in further detail below, Defendants must acknowledge that their revised data is also limited because it (1) counts the initial Interdisciplinary Treatment Team meeting (IDTT) as a compliant psychiatry contact, rather than requiring the initial psychiatry appointment to occur prior to the initial IDTT; (2) fails to acknowledge that exclusion of

non-confidential appointments would further reduce compliance rates; and (3) it fails to count psychiatric contacts for EOP patients in overflow units towards compliance.

### A. Initial Psychiatry Contact Data

Defendants state that they revised the ASU EOP Hub data using the current business rule for timely psychiatry contacts, which apparently provides that "[t]he due date for initial contacts is either fourteen calendar days [after placement] or the date and time of the initial meeting with the [IDTT], whichever comes first." Defs.' Resp. at 5. But, as the Neutral Expert identified, "CDCR Mental Health Leadership understands that the Special Master strongly believes that a new arrival must be evaluated by a psychiatrist before the initial IDTT." Neutral Expert Report, ECF No. 6147 at 41 (May 3, 2019). The Court referred this issue to the Special Master to determine whether CDCR's policy "should[] require that EOP and [CCCMS] inmate-patients transferred from one institution to another be evaluated by a psychiatrist within 14 days of arrival *and prior to the initial [IDTT]*." June 14, 2019 Order, ECF No. 6187 at 3-4 (emphasis added). Plaintiffs understand that Defendants are currently working with the Special Master on this issue. But so long as CDCR measures both initial IDTTs and initial appointments, rather than just initial appointments, as compliant (as is the protocol under the current business rule), the rule will allow for higher compliance. Because any change to the business rule will impact compliance, CDCR should acknowledge this too in its revisions to the ASU EOP Hub data.

### B. Counting Non-Confidential Appointments as Compliant

Defendants must also acknowledge that CDCR's prior "erroneous" methodology of counting all non-confidential psychiatry contacts towards compliance also inflates compliance, as that practice also impacts the ASU EOP Hub data. *See* Aug. 14, 2019 Order, ECF No. 6242 at 8; *see also* Pls.' Resp. to Sept. 17, 2019 Order, ECF No. 6301 at 2-3 (Oct. 1, 2019); Pls.' Resp. to Aug. 14, 2019 Order, ECF No. 6255 at 8-10 (Aug. 28, 2019). Defendants should determine whether or not each psychiatry contact was confidential and then only count confidential appointments in measuring compliance. If

they will not or cannot do so, they should, at minimum, be required to acknowledge this additional problem with their compliance data.

### C. EOP Patients Housed in Overflow Units

According to evidence identified by the Neutral Expert, "CDCR only measures compliance with timely psychiatry contacts for inmate-patients on psychiatric medications at institutions with an EOP program." Neutral Expert Report, ECF No. 6147 at 95 (May, 3, 2019).[2] The failure to track EOP patients in "overflow" housing is inconsistent with the Program Guide's requirements, as well as Defendants' representations during workgroups and policy meetings that class members clinically deemed to need a certain level of care would receive that care, regardless of their particular housing situation. CDCR's exclusion from compliance metrics all data points relating to EOP patients in "overflow" housing therefore results in a misleading impression as to whether all EOP patients are receiving the care they are required to receive. EOP patients are sometimes housed in overflow segregation units when there is insufficient bed space in the ASU EOP Hubs. Including such patients in the Timely Psychiatry Contacts measure for the Hub institutions would therefore impact CDCR's compliance rates because more EOP patients would be included in the measure. If CDCR cannot run this data retroactively, it should say so, and acknowledge this as another factor limiting the accuracy of its revised data.

### V. Additional Outstanding Remediation Issues

In addition to the remedial measures identified above, *see* Sections I-IV, *supra*, as well those identified in Plaintiffs' Response to Defendants' Notice of Errata of ECF Nos. 5591, 5601, and 5841, *see* ECF No. 6316 at 1-4 (Oct. 8, 2019), there are additional steps

---

[2] Defendants claim that CDCR has since updated the timely psychiatry indicator "to measure whether *all* EOP patients are seen every thirty days for a psychiatry appointment, not just those EOP patients that are already prescribed medications." *See* Defs.' Resp. at 5. But it is unclear whether Defendants also include EOP patients housed in overflow settings in this measure. If not, the statement that "*all* EOP patients" are currently counted towards compliance metrics, *see id.*, is misleading, if not plain wrong.

Defendants must take to correct the record in this case. Those steps include, for example, revisiting the self-certification process for the ASU EOP Hub and PSU units.[3] Even if Defendants fully and transparently correct their historic ASU EOP Hub data, these recent revelations demonstrate that the current self-certification process for evaluating the adequacy of mental health care provided in the EOP segregation units must be substantially changed to ensure class members receive appropriate treatment in these exceedingly dangerous settings.[4] *See* Pls.' Resp. to Neutral Expert's Report, ECF No. 6170 at 53-55. Plaintiffs maintain their request for an opportunity to revisit these and other issues in determining the appropriate scope of remediation after the evidentiary hearing. *See* Pls.' Resp. to Defs.' Notice of Errata of ECF Nos. 5591, 5601, and 5841, ECF No. 6316 at 1-4 (Oct. 8, 2019).

DATED: October 21, 2019         Respectfully submitted,

ROSEN BIEN GALVAN & GRUNFELD LLP

By: */s/ Cara E. Trapani*
     Cara E. Trapani

Attorneys for Plaintiffs

---

[3] Defendants have acknowledged that the business rule change impacted the PSU timely psychiatry contacts data, but the self-certification process for those units did not start until after the business rule was changed back to define "monthly" as "30 days." However, Defendants provided timely psychiatry contact data based on the changed business rule (including for the PSUs) to the Special Master during the 27th Monitoring Round, which ended in late January 2017.

[4] As the Court has found, segregation "can and does cause serious psychological harm, including … increased risk of suicide." *Coleman*, 28 F. Supp. 3d at 1105. Indeed, in 2017, 11 of CDCR's 31 suicides occurred in segregation. Trapani Decl. ¶ 4. In 2018, 7 of the 34 suicides occurred in segregation. *Id.* And in 2019 to date, 10 of the 30 suicides occurred in segregation, including 4 in the PSU. *Id.*