REICHMAN JORGENSEN LLP
SHAWNA BALLARD, State Bar No. 155188
KATE FALKENSTIEN, State Bar No. 313753
 100 Marine Parkway, Suite 300
 Redwood Shores, CA 94065
 Telephone: (650) 623-1401
Fax: (650) 623-1449
Email: sballard@reichmanjorgensen.com
        kfalkenstien@reichmanjorgensen.com

*Attorneys for Plaintiff-Intervenor Christopher Lipsey*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **RALPH COLEMAN, et al.** <br><br> Plaintiffs, <br><br> v. <br><br> **GAVIN NEWSOM, et al.,** <br><br> Defendants. | Case No. CIV S-90-0520 KJM DB P <br><br> **CHRISTOPHER LIPSEY'S MOTION TO INTERVENE** <br><br> Hearing Date: December 20, 2019 <br> Time:           10:00 am <br> Courtroom:  3, 15th floor <br> Judge:          Hon. Kimberly Mueller <br> Action Filed: April 23, 1990 |

# **TABLE OF CONTENTS**

FACTS AND PROCEDURAL HISTORY ................................................................................... 2
ARGUMENT .................................................................................................................................. 4
    I.    Lipsey Is Entitled to Mandatory Intervention Under Rule 24(a). ....................................... 4
        A.    Lipsey Has an Interest in Whether He Can Sleep, and This Lawsuit Impairs His Ability to Protect That Interest. ............................................................................................. 5
        B.    Lipsey's Interests in Limiting the Guard One Checks Are Not Adequately Represented in This Lawsuit. ..................................................................................................... 6
        C.    Lipsey's Motion Is Timely. ...................................................................................... 8
            i.    Reason for and Length of Delay ......................................................................... 9
            ii.    Prejudice ........................................................................................................... 11
            iii.    Stage of Proceedings ....................................................................................... 12
    II.    At a Minimum, the Court Should Grant Permissive Intervention Under Rule 24(b). ....... 13
CONCLUSION ............................................................................................................................. 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Advocates for Individuals with Disabilities, LLC v. MidFirst Bank*,
   No. CV-16-01969-PHX-NVW, 2018 WL 3545291 (D. Ariz. July 24, 2018) ........................... 12

*Arakaki v. Cayetano*,
   324 F.3d 1078 (9th Cir. 2003) ............................................................................................. 4, 5, 6

*Banneck v. Fed. Nat'l Mortg. Ass'n*,
   No. 3:17-CV-04657-WHO, 2018 WL 3417477 (N.D. Cal. July 13, 2018) ............................... 10

*Cal. Dep't of Toxic Substances Control v. Commercial Realty Projects, Inc.*,
   309 F.3d 1113 (9th Cir. 2002) .................................................................................................. 7

*Citizens for Balanced Use v. Montana Wilderness Ass'n*,
   647 F.3d 893 (9th Cir. 2011) .................................................................................................... 5

*Crawford v. Honig*,
   37 F.3d 485 (9th Cir. 1994) .................................................................................................... 11

*Freeman v. Delta Air Lines, Inc.*,
   No. C 13-04179 JSW, 2014 WL 5830246 (N.D. Cal. Nov. 10, 2014) ....................................... 5

*Habeas Corpus Res. Ctr. v. United States Dep't of Justice*,
   No. C 13-4517 CW, 2013 WL 6157321 (N.D. Cal. Nov. 22, 2013) .......................................... 5

*Hazel Green Ranch, LLC v. U.S. Dep't of Interior*,
   No. 1:07-CV-00414-OWW-SMS, 2007 WL 2580570 (E.D. Cal. Sept. 5, 2007) ....................... 5

*In re Kovalchick*,
   175 B.R. 863 (Bankr. E.D. Pa. 1994) ....................................................................................... 9

*Lipsey v. Barnes*,
   No. 2:18-cv-00340 KJM DB ................................................................................................. 6, 7

*Lipsey v. Norum*
   (Nov. 17, 2017) ........................................................................................................................ 7

*Perry v. Proposition 8 Official Proponents*,
   587 F.3d 947, 955 (9th Cir. 2009) .......................................................................................... 12

*Piekkola v. Klimek*,
   No. 4:15-CV-04148-KES, 2016 WL 6072354 (D.S.D. Oct. 17, 2016) ...................................... 9

*Prete v. Bradbury*,
   438 F.3d 949, 956 (9th Cir. 2006) ............................................................................................ 5

*Rico v. Beard*,
  No. 2:17-CV-1402-KJM-DB-P, 2019 WL 1036075 (E.D. Cal. Mar. 5, 2019) ......................... 9

*Smith v. L.A. Unified Sch. Dist.*,
  830 F.3d 843 (9th Cir. 2016) ........................................................................................ 8, 10, 11

*Smith v. Marsh*,
  194 F.3d 1045 (9th Cir. 1999) ..................................................................................................8

*Steele v. Goodman*,
  No. 3:17-CV-601, 2019 WL 3366556 (E.D. Va. July 25, 2019) ...............................................9

*Suarez v. Beard*,
  No. 2:18-CV-0340-KJM-DB-P, 2019 WL 4571946 (E.D. Cal. Sept. 20, 2019) ........................9

*Sw. Ctr. for Biological Diversity v. Berg*,
  268 F.3d 810 (9th Cir. 2001) ................................................................................................3, 4

*United States v. Alisal Water Corp.*,
  370 F.3d 915 (9th Cir. 2004) .............................................................................................4, 7, 8

*United States v. California*,
  538 F. App'x 759 (9th Cir. 2013) ..............................................................................................7

*United States v. City of Los Angeles, Cal.*,
  288 F.3d 391 (9th Cir. 2002) .................................................................................................4, 6

*United States v. State of Or.*,
  745 F.2d 550 (9th Cir. 1984) ........................................................................................4, 7, 8, 10

*Wash. State Bldg. & Const. Trades Council, AFL-CIO v. Spellman*,
  684 F.2d 627 (9th Cir. 1982) .....................................................................................................4

*Wilderness Soc. v. U.S. Forest Serv.*,
  630 F.3d 1173 (9th Cir. 2011) ................................................................................................4, 5

*Wright v. Carver*,
  No. 2:06-CV-542 TS, 2008 WL 803109 (D. Utah Mar. 20, 2008) ...........................................9

**Statutes**

42 U.S.C. § 1983 ............................................................................................................................12

**Other Authorities**

Fed. R. Civ. P. 24 .......................................................................................................................3, 4

Fed. R. Civ. P. 25(d) .......................................................................................................................7

TO THE PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on December 20, 2019 at 10:00 am, or as soon as the matter may be heard before the Honorable Kimberly J. Mueller, at the United States District Court at 501 I Street, Sacramento, CA 95814, Plaintiff-Intervenor Christopher Lipsey will move this Court to allow him to intervene in this case. Lipsey's motion is based on this notice, the following memorandum of points and authorities, the declaration and exhibits filed in support, and the pleadings and records on file with the Court in this action.

# INTRODUCTION

By order of this Court in this lawsuit, Christopher Lipsey is presently subject to Guard One "welfare" checks every thirty minutes, twenty-four hours a day, in his cell at California State Prison, Corcoran. This system requires correctional officers to log their rounds by hitting metal buttons on metal cell doors using metal batons, creating so much noise that Lipsey cannot sleep. Lipsey filed a separate lawsuit in 2014 to raise his concerns about the noise caused by Guard One, but the court recently dismissed his injunctive claims because of his nominal membership in the class of plaintiffs in this case. Lipsey's interests in a reasonably quiet system of checks have not been represented in this case, in which the plaintiffs have supported the use of the Guard One system despite its effects on inmate sleep. Lipsey now seeks to intervene so that his concerns may finally be heard on the merits, and he may finally get a good night's sleep.

# FACTS AND PROCEDURAL HISTORY

In 2013, the California Department of Corrections and Rehabilitation ("CDCR") first introduced Guard One and notified the *Coleman* Court. *See* Allison Decl., Dkt. 4713, at 14 (informing the Court that "CDCR [had] acquired an electronic monitoring system called Guard One"). CDCR conducted a pilot study of Guard One at CSP-Centinela before announcing its plans to expand use of Guard One to other prisons. *Id.* While the rationale for that expansion was "to address concerns raised by the special master related to the staggering of the 30-minute welfare checks," *id.*, neither the special master nor the Court mandated the initial choice of Guard One as the check-logging system. There is no indication that CDCR considered any alternative system of logging checks. CDCR purchased Guard One, tested Guard One in Centinela, made the decision to expand Guard One to other prisons, and asserted to the Court that Guard One worked. This Court had not yet mandated the Guard One system, or indeed any thirty-minute welfare checks.

In 2015, this court ultimately mandated the Guard One checks. *See* Order, Dkt. 5271 (Feb. 2, 2015). Both parties to this case agreed to the order requiring the checks. *Id.* (noting that "[n]either party has filed objections to the Special Master's report or the order he requests" which would require the Guard One checks, and that "[n]either party has filed objections to the final

expert report filed with the Special Master's report," which recommended the Guard One checks).

Lipsey was first subjected to Guard One checks on May 28, 2013, in the Pelican Bay Administrative Segregation Unit ("ASU"). Lipsey's Compl. in Intervention ("Int. Compl."), ¶ 18. Lipsey has been subject to the Guard One checks in various prisons since then.  Most recently, Lipsey again returned to solitary confinement in summer 2019, ultimately receiving an 18-month sentence in the Corcoran SHU. *Id.*, ¶ 19.

Across these various prisons, the Guard One checks have consistently prevented Lipsey from getting a good night's sleep.  The checks are loud enough to awaken Lipsey, because of the "metal-on-metal contact when the Guard One pipe strikes the metal buttons," a beeping noise when the pipe connects with the button, and the extra noise officers make by unnecessarily hitting the buttons repeatedly and harder than necessary. *Id.*, ¶¶ 13-15, 21.  Lipsey can hear the checks not only on his own cell, but also on other cells in his section and parts of the neighboring section. *Id.*, ¶ 23.  The system is particularly disruptive to sleep because the checks happen so frequently: on a twice-hourly schedule, just as Lipsey is about to fall asleep after one round of checks, the next one starts. *Id.*, ¶ 26.  Lipsey's inability to sleep has caused serious medical problems, including headaches, dizziness, and exacerbation of Lipsey's schizophrenia and depression. *Id.*, ¶¶ 29-32.

In June 2014, Lipsey filed an independent lawsuit in the Northern District alleging that he has been subjected to cruel and unusual punishment by being awakened every thirty minutes for the years he has spent in solitary confinement, under the "Guard One" system used to record that correctional officers have checked on inmates. *See Lipsey v. Norum*, No. 2:18-cv-00340 KJM DB P (E.D. Cal.).  That lawsuit was transferred to the Eastern District because of the connection to this case. *See* Order of Transfer, Dkt. 161, *Lipsey v. Norum* (Feb. 9, 2018).  It was then related to this case and a number of other independent lawsuits challenging the Guard One system. *See* Order, Dkt. 166, *Lipsey v. Norum* (Mar. 12, 2018).

The Defendants in Lipsey's independent lawsuit filed a motion to dismiss, arguing that the case was precluded by the order in this case requiring Guard One checks. *See* Defs.' Mot. to Dismiss Due to the Preclusive Effect of the *Coleman v. Brown* Class Action, Dkt. 154, *Lipsey v.*

*Norum* (Jan. 3, 2018). Lipsey argued that he had the right to file a collateral lawsuit because he was not adequately represented in this case. *See* Pl.'s Opp. to Defs.' Mot. to Dismiss, Dkt. 155, *Lipsey v. Norum* (Jan. 17, 2018). However, the Magistrate Judge ultimately issued a recommendation to dismiss Lipsey's injunctive and declaratory claims because he is a member of the *Coleman* class. *See* Findings and Recs., Dkt. 197, *Lipsey v. Norum* (Oct. 10, 2019).[1] The Findings suggested that if Lipsey "has concerns regarding the class representation and orders issued in *Coleman*, he should raise those issues in that case." *Id.* at 12.

In light of the Findings and Recommendations in his independent lawsuit, Lipsey hereby files this Motion to Intervene to assert his injunctive claims.

## ARGUMENT

Lipsey seeks to intervene as a plaintiff in order to pursue his claims that he is being subjected to unconstitutional sleep deprivation as a result of the Guard One checks. Courts "must permit" intervention when the intervenor "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). The Court also "may permit" permissive intervention for an intervenor who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). In assessing either type of intervention, "[c]ourts are to take all well-pleaded, nonconclusory allegations in the motion to intervene, the proposed complaint or answer in intervention, and declarations supporting the motion as true absent sham, frivolity or other objections." *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001). Under these standards, Lipsey is entitled to mandatory intervention or, in the alternative, permissive intervention under Rule 24(b).

**I.    Lipsey Is Entitled to Mandatory Intervention Under Rule 24(a).**

"When analyzing a motion to intervene of right under Rule 24(a)(2), [courts in the Ninth Circuit] apply a four-part test: (1) the motion must be timely; (2) the applicant must claim a

---

[1] Lipsey has objected to the Magistrate Judge's recommendation to preserve his ability to collaterally seek injunctive relief against the Guard One checks if this motion is denied. Pl.'s Objs. to Magistrate Judge's Findings and Recs., Dkt. 200, *Lipsey v. Norum* (Oct. 24, 2019).

'significantly protectable' interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action." *Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011).

The four-part test is construed "liberally in favor of potential intervenors." *Sw. Ctr. for Biological Diversity*, 268 F.3d at 818; *Wash. State Bldg. & Const. Trades Council, AFL-CIO v. Spellman*, 684 F.2d 627, 630 (9th Cir. 1982) ("Rule 24 traditionally has received a liberal construction in favor of applicants for intervention."); *United States v. State of Or.*, 745 F.2d 550, 552 (9th Cir. 1984) (noting that the "factors of Rule 24(a) should be construed favorably to intervenor"); *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004) (noting that "the requirements for intervention are broadly interpreted in favor of intervention"). "A liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts." *United States v. City of Los Angeles, Cal.*, 288 F.3d 391, 397–98 (9th Cir. 2002) (quotation omitted).

Here, each factor supports Lipsey's right to intervene. Lipsey has an interest in avoiding unconstitutional sleep deprivation caused by Guard One checks, which is practically threatened by the order in this case requiring those very checks. Lipsey's interest is not represented by the existing parties, who have consented to the checks without disputing their constitutionality or litigating their effects on inmate sleep. And Lipsey has timely raised these arguments after returning to the SHU, where he is again subject to the checks.

A. <u>Lipsey Has an Interest in Whether He Can Sleep, and This Lawsuit Impairs His Ability to Protect That Interest.</u>

"[I]f an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene." Fed. R. Civ. P. 24, Advisory Committee Notes, 1966 Amendments; *see also Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003) (relying on the above comment in the advisory notes). The key question is

whether the intervenor will "suffer a practical impairment of its interests as a result of the pending litigation." *Wilderness Soc.*, 630 F.3d at 1179 (quoting *California ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006)). "To demonstrate a significant protectable interest, an applicant must establish that the interest is protectable under some law and that there is a relationship between the legally protected interest and the claims at issue." *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011). A "constitutional interest" clearly qualifies as such a legally protectable interest. *See, e.g.*, *Habeas Corpus Res. Ctr. v. United States Dep't of Justice*, No. C 13-4517 CW, 2013 WL 6157321, at *1 (N.D. Cal. Nov. 22, 2013); *Freeman v. Delta Air Lines, Inc.*, No. C 13-04179 JSW, 2014 WL 5830246, at *2 (N.D. Cal. Nov. 10, 2014); *Hazel Green Ranch, LLC v. U.S. Dep't of Interior*, No. 1:07-CV-00414-OWW-SMS, 2007 WL 2580570, at *8 (E.D. Cal. Sept. 5, 2007).

Here, Lipsey's interest in avoiding sleep deprivation caused by the Guard One checks constitutes a clear, legally protected interest; his claims stem from the federal and California constitutions. And this lawsuit impairs his ability to protect that interest: if Lipsey is not permitted to pursue his claims, he will by default continue to be subject to the Guard One checks ordered in this case. Furthermore, he will be unable to contest the constitutionality of those checks because he has not been permitted to pursue his injunctive claims in a separate lawsuit. *See* Findings and Recs., Dkt. 197, at 10-12, *Lipsey v. Norum* (Oct. 10, 2019).

B. <u>Lipsey's Interests in Limiting the Guard One Checks Are Not Adequately Represented in This Lawsuit.</u>

"In determining whether a party will adequately represent an intervenor's interest, the Court considers several factors, such as whether an existing party will make all of the intervenor's arguments, whether an existing party is capable of and willing to make such arguments, and whether the intervenor offers any necessary element to the proceedings that would be neglected." *Prete v. Bradbury*, 438 F.3d 949, 956 (9th Cir. 2006). "The burden on proposed intervenors in showing inadequate representation is minimal, and would be satisfied if they could demonstrate that representation of their interests 'may be' inadequate." *Arakaki*, 324 F.3d at 1086 (quoting

1  *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)). "The most important factor in
2  determining the adequacy of representation is how the interest compares with the interests of
3  existing parties." *Id.* (assessing whether existing parties "are capable and willing to make all of
4  [intervenor's] arguments"); *see also United States v. Los Angeles*, 288 F.3d at 403 (finding
5  inadequate representation and permitting intervention based on the "marked divergence of
6  positions concerning key elements of the decree").

7      It is clear that the existing parties to the lawsuit will not represent Lipsey's interests in
8  stopping or limiting the checks; they are demonstrably unwilling to make Lipsey's arguments
9  against the checks. Both parties to this case agreed to the order requiring the checks. *See* Order,
10 Dkt. 5271, at 2 (Feb. 2, 2015) (noting that "[n]either party has filed objections to the Special
11 Master's report or the order he requests" which would require the Guard One checks, and that
12 "[n]either party has filed objections to the final expert report filed with the Special Master's
13 report," which recommended the Guard One checks). Neither party has agreed to limit them in
14 any prison outside Pelican Bay. *Cf.* Am. Stip. And Order, Dkt. 5487, at 2 (Sept. 1, 2016)
15 (addressing noise concerns exclusively at Pelican Bay). Defendants do not even agree that the
16 checks are loud. *Id.* (noting that defendants do not "agree[] that the Security/Welfare checks
17 utilizing Guard One at the Pelican Bay SHU created excessive noise levels or cause any harm to
18 inmates"). And plaintiffs are similarly uninterested in rolling back the Guard One checks.
19 Indeed, when Lipsey's counsel emailed class counsel asking to discuss the checks, class counsel
20 summarily responded that "it is fair to say that the fact of security checks in CDCR's lock-up
21 units, documented via Guard One, is no longer an active issue in the Coleman case." Ex. A to
22 Falkenstien Decl. The very parties who advocate the checks and consider them a settled issue
23 will certainly not raise Lipsey's argument that the checks violate his constitutional rights.

24     Indeed, Lipsey is not adequately represented in this lawsuit at all. Only one of the five
25 initial class representatives is still incarcerated, and he is not subject to the Guard One checks.
26 These points are now conclusively established by discovery that Lipsey received in his separate

lawsuit.[2] In response to Lipsey's Requests for Admission, Defendants—including the CDCR secretary in his official capacity,[3] also a party to this case—have admitted that four of the five class representatives were not incarcerated by the time of the *Coleman* order requiring the Guard One checks. *See* Ex. B to Falkenstien Decl., Defs.' Resp. to Lipsey's First Set of RFAs, at 2-3. They admit that no *Coleman* class representative was "ever housed in a unit where the Guard One system was thereafter used by CDCR" before the *Coleman* court ordered the Guard One checks. *Id.* at 3. And even after the checks were ordered, the remaining incarcerated class representative spent only one night in an administrative segregation unit where he would have been exposed to Guard One checks. *See* Joint Stipulation of Facts, Dkt. 199, *Lipsey v. Norum* (Oct. 24, 2019).[4] Lipsey has conclusively proven that his interests were not represented at the time of the order requiring the Guard One checks or in the intervening four years: no class representative had a stake in whether the Guard One checks caused sleep deprivation, because they were largely out of prison and, to the extent they remained incarcerated, were not subject to the checks.

C. Lipsey's Motion Is Timely.

"Timeliness is a flexible concept; its determination is left to the district court's discretion." *Alisal*, 370 F.3d at 921. Courts in the Ninth Circuit consider three factors in evaluating timeliness of a motion to intervene: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *Cal. Dep't of Toxic Substances Control v. Commercial Realty Projects, Inc.*, 309 F.3d 1113, 1119 (9th Cir. 2002) (citation and internal quotation marks omitted); *see also United States*

---

[2] The protective order in *Lipsey* allows him to use discovery he received in that case in this one. *See* Stipulated Pretrial Protective Order, Dkt. 175, at §§ 2.18, 7.1, *Lipsey v. Norum* (Mar. 5, 2019) (allowing use of discovery in "any Related Case," defined as a "civil case that the court has related to this litigation under Eastern District Local Rule 123 and the undersigned plaintiff's counsel represents the plaintiff").

[3] In *Lipsey v. Norum*, Scott Kernan was the named party sued in his official capacity as secretary of the CDCR. *See* Second Am. Compl., Dkt. 151, ¶ 19, *Lipsey v. Norum* (Nov. 17, 2017). However, Ralph Diaz has now replaced Kernan as secretary. When a "public officer who is a party in an official capacity . . . ceases to hold office," his "successor is automatically substituted as a party." Fed. R. Civ. P. 25(d). By the time the *Lipsey* defendants jointly responded to requests for admission in December 2018, Diaz had become acting secretary and automatically become a party in place of Kernan.

[4] Lipsey agreed to this stipulation to avoid filing the underlying data regarding Ralph Coleman's housing, in an effort to avoid the need for defendants to file a motion to seal.

8

Lipsey's Motion to Intervene (CIV S-90-0520 KJM DB P)

*v. California*, 538 F. App'x 759, 760 (9th Cir. 2013). "[T]he mere lapse of time, without more, is not necessarily a bar to intervention." *Alisal*, 370 F.3d at 921; *see also Oregon*, 745 F.2d at 552 ("Mere lapse of time alone is not determinative."). Indeed, the Ninth Circuit has allowed intervention as long as seventeen years after the adoption of a consent decree. See *Smith v. L.A. Unified Sch. Dist.*, 830 F.3d 843, 854 (9th Cir. 2016). "[T]he timeliness requirement for intervention as of right should be treated more leniently than for permissive intervention because of the likelihood of more serious harm." *Oregon*, 745 F.2d at 552.

        i.        *Reason for and Length of Delay*

The Ninth Circuit has made clear that the relevant date in assessing timeliness is not necessarily the date when the lawsuit was filed. When courts engage in decades-long supervision of injunctive relief, new people become affected as the years go by. For example, in a case challenging special education policies, the Ninth Circuit noted that the intervenors could not have been on notice when the litigation began decades earlier, when "many of the Proposed Intervenors' children had not even been born." *L.A. Unified Sch. Dist.*, 830 F.3d at 860. Similarly, here, Lipsey was not even imprisoned until 2006, more than a decade after this case began. He cannot be faulted for failing to intervene in a lawsuit about prison mental healthcare in the early 1990s, when he was a child, not in prison, and not yet diagnosed with a mental illness that placed him within the class, and when the Court had not yet ordered the checks that concern him.

Instead, the relevant date is when the intervenor developed an interest in the lawsuit and realized that that interest was not adequately protected. *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999) ("The crucial date for assessing the timeliness of a motion to intervene is when proposed intervenors should have been aware that their interests would not be adequately protected by the existing parties."). "[A] party's interest in a specific phase of a proceeding may support intervention at that particular stage of the lawsuit." *Alisal*, 370 F.3d at 921.

Lipsey did not know that he had an interest that could not be adequately protected until the court in *Lipsey v. Norum* recommended dismissing his independent claims in October 2019. *See* Findings and Recs., Dkt. 197, at 10-12, *Lipsey v. Norum* (Oct. 10, 2019). Until that point, he

believed he could adequately protect his interests through a collateral challenge. Thus, the relevant date—when Lipsey realized he had interests that were not adequately protected—was only a month ago.[5]

Even putting aside his expectation that he could proceed through an independent lawsuit, Lipsey has moved expeditiously to intervene given the challenges presented by his lack of counsel and his frequent movement in and out of solitary confinement. Lipsey had no counsel until the summer of 2017. *See* Order Appointing Counsel, Dkt. 141, *Lipsey v. Norum* (July 19, 2017). Courts evaluating intervention do not "hold a non-prejudicial delay against a pro se party who is not benefitted by the delay." *Piekkola v. Klimek*, No. 4:15-CV-04148-KES, 2016 WL 6072354, at *2 (D.S.D. Oct. 17, 2016); *see also Steele v. Goodman*, No. 3:17-CV-601, 2019 WL 3366556, at *9 (E.D. Va. July 25, 2019) (overlooking an "extended delay in bringing the Motion to Intervene" because the intervenor "has no benefit of counsel"). Lipsey's failure to intervene through summer 2017 should not be held against him when he did not have counsel to advise him of the option to intervene and to help him do so. Indeed, Lipsey may not even have been allowed to intervene pro se; courts routinely deny pro se motions to intervene because the presence of a pro se intervenor is considered likely to complicate the proceedings. *See, e.g.*, *In re Kovalchick*, 175 B.R. 863, 869 (Bankr. E.D. Pa. 1994); *Wright v. Carver*, No. 2:06-CV-542 TS, 2008 WL 803109, at *8 (D. Utah Mar. 20, 2008).

After counsel was appointed, Lipsey's movement in and out of solitary confinement prevented intervention on injunctive grounds. As this Court has held in related cases (over plaintiffs' objections), inmates challenging Guard One checks can only seek injunctive relief when they are subject to the checks; this Court has held that their claims are mooted once they are transferred out of solitary confinement and away from the checks. *See, e.g.*, *Rico v. Beard*, No. 2:17-CV-1402-KJM-DB-P, 2019 WL 1036075, at *5 (E.D. Cal. Mar. 5, 2019); *Suarez v. Beard*, No. 2:18-CV-0340-KJM-DB-P, 2019 WL 4571946, at *5 (E.D. Cal. Sept. 20, 2019). This mootness problem made it infeasible for Lipsey to intervene during his prior term in the SHU.

---

[5] Alternatively, if the Court believes that the relevant date was before Lipsey's independent injunctive claims were dismissed, his expectation that he could pursue his claims through a collateral lawsuit at minimum bears on the "reason for" any delay.

While Lipsey was incarcerated in the Corcoran SHU when counsel was appointed, his term was scheduled to end in March 2018, leaving insufficient time for counsel to come up to speed on the case, collect relevant evidence, intervene, and litigate Lipsey's injunctive claims. Thus, Lipsey could not intervene during his previous term in the SHU.

Lipsey returned to the Corcoran SHU with an 18-month sentence in late summer 2019.[6] Int. Compl., ¶ 19. Facing a term long enough to make it possible to litigate injunctive relief, Lipsey has promptly moved to intervene in a matter of months.

    *ii.*    *Prejudice*

Prejudice to the existing parties is "the most important consideration in deciding whether a motion for intervention is untimely." *Oregon*, 745 F.2d at 552 (quoting 7A C. Wright & A. Miller, *Federal Practice and Procedure* § 1916, at 575 (1972)). As the Ninth Circuit has made clear, "the only 'prejudice' that is relevant under this factor is that which flows from a prospective intervenor's failure to intervene after he knew, or reasonably should have known, that his interests were not being adequately represented." *L.A. Unified Sch. Dist.*, 830 F.3d at 857. Parties opposing intervention must show that "their problems are materially different now than they would have been had" the intervenor moved in a more timely fashion. *Oregon*, 745 F.2d at 553. That is, any prejudice must be "*because of* the passage of time." *Id.* (emphasis added); *see also Banneck v. Fed. Nat'l Mortg. Ass'n*, No. 3:17-CV-04657-WHO, 2018 WL 3417477, at *3 (N.D. Cal. July 13, 2018) (granting motion to intervene because any "potential prejudice is not attributable to the timing of [intervenor's] motion, which is the only prejudice that's pertinent to the analysis").

The existing parties will not be prejudiced by any delay in Lipsey's motion. The parties have never litigated the question of whether the Guard One checks caused sleep deprivation. Indeed, by the time Lipsey obtained counsel in summer 2017, class counsel already considered the Guard One checks "no longer an active issue." Ex. A to Falkenstien Decl. No matter when

---

[6] Lipsey does not have access to the records that demonstrate the exact date, but he notified his counsel in a letter dated September 4, 2019.

Lipsey intervened, the parties would have faced the same burden of litigating his constitutional claims for the first time.

Furthermore, the parties have given no ongoing notice to class members as the scope of the litigation has expanded and new inmates have entered the class. "[E]xisting parties cannot complain about delay or prejudice caused by their own efforts to thwart the provision of meaningful notice to affected parties." *L.A. Unified Sch. Dist.*, 830 F.3d at 858. Notice is an ongoing requirement as the scope of a class action shifts over decades of remedial supervision. In a case where a court issued expanded injunctive relief after seven years of ongoing supervision, the Ninth Circuit noted that "expansion of the injunction beyond the scope and contemplation of the 1979 decision through settlement negotiations without notice to absent class members . . . was troubling" and that the "plaintiffs' interests were not represented during the" later proceedings. *Crawford v. Honig*, 37 F.3d 485, 488 (9th Cir. 1994). As in *Crawford*, the scope of the issues in this case has changed over the last 27 years, but there has been no new notice as the issues evolved. The initial *Coleman* plaintiffs sought mental healthcare. The question of suicide monitoring, let alone the propriety of the Guard One system in particular, was not at issue. As *Coleman* has evolved, the continued representation of and notice to class members has fallen short of Due Process requirements. Lipsey received no notice that the Guard One checks were being considered or had been ordered in this case, and the *Coleman* parties cannot hold any delay against Lipsey when they failed to provide constitutionally adequate notice to absent class members.

       iii.     Stage of Proceedings

Finally, the stage of the proceedings does not militate against a timeliness finding. "Where a change of circumstances occurs, and that change is the 'major reason' for the motion to intervene, the stage of proceedings factor should be analyzed by reference to the change in circumstances, and not the commencement of the litigation." *L.A. Unified Sch. Dist.*, 830 F.3d at 854. For example, in that case, the intervenors sought to intervene only to challenge a particular order entered decades into the case, without "seeking to reopen decades of litigation" on other issues. *Id.* The Ninth Circuit reversed the district court for "measur[ing] the timeliness of Appellants'

motions by reference to stages of litigation pre-dating the change in circumstances that motivated" the motion to intervene." *Id.* The quintessential case for delayed intervention is "a consent class injunction with ongoing effect that some parties sought to modify to the detriment of the intervenor-applicant subclass." *See Advocates for Individuals with Disabilities, LLC v. MidFirst Bank*, No. CV-16-01969-PHX-NVW, 2018 WL 3545291, at *19 (D. Ariz. July 24, 2018) (contrasting settled private actions with ongoing class actions where relief remains in flux).

This is just such a case. Lipsey's motion to intervene concerns a particular order issued decades into this litigation, changing the relief to Lipsey's detriment: that is, the 2015 order mandating Guard One checks. Two key changes in circumstance—the issuance of that order and Lipsey's return to solitary confinement such that he is affected by it—motivate his intervention. He does not seek to litigate the voluminous other issues in this case. When a court retains jurisdiction to supervise injunctive relief for decades, *Los Angeles Unified School District* makes clear that it cannot deny intervention based on progress in the case that happened decades before on unrelated issues. As to the narrow issue on which Lipsey seeks to intervene, the proceedings have not moved forward in any meaningful way: the Court issued the order, and no party has contested it since.

## II. At a Minimum, the Court Should Grant Permissive Intervention Under Rule 24(b).

An applicant for permissive intervention must show "(1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common." *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 955 (9th Cir. 2009) (quotation omitted).

These requirements are clearly met here. There are independent grounds for jurisdiction over Lipsey's constitutional claims under 42 U.S.C. § 1983. Lipsey's motion is timely, as discussed *supra*, pp. 7-12. And Lipsey's claim has factual and legal overlap with this action, insofar as orders in this case held that the Guard One checks are constitutionally necessary and Lipsey argues that they are constitutionally barred. Indeed, in relating Lipsey's independent lawsuit to this case, this Court already held that Lipsey's claims "involve[d] the same property, transaction or event and similar questions of fact and law." Order Reassigning Case, Dkt. 166,

13

*Lipsey v. Norum* (Mar. 12, 2018).  Lipsey's claim in intervention is the same as his injunctive claim in the independent lawsuit, and it still involves overlapping questions of fact and law.

## CONCLUSION

For these reasons, Lipsey respectfully requests that the Court permit him to intervene as a plaintiff in this case.

Dated: November 14, 2019

Respectfully submitted,

/s/ *Kate M. Falkenstien*

REICHMAN JORGENSEN LLP
Shawna L. Ballard (SBN 155188)
Kate Falkenstien (SBN 313753)
100 Marine Parkway, Suite 300
Redwood Shores, California 94065
Telephone: (650) 623-1401
Fax: (650) 623-1449
sballard@reichmanjorgensen.com
kfalkenstien@reichmanjorgensen.com

*Attorneys for Plaintiff-Intervenor Christopher Lipsey*