Xavier Becerra, State Bar No. 118517
Attorney General of California
Adriano Hrvatin, State Bar No. 220909
Supervising Deputy Attorney General
Kyle A. Lewis, State Bar No. 201041
Elise Owens Thorn, State Bar No. 145931
Tyler V. Heath, State Bar No. 271478
Robert W. Henkels, State Bar No. 255410
Deputy Attorneys General
 1300 I Street, Suite 125
 P.O. Box 944255
 Sacramento, CA 94244-2550
 Telephone: (916) 210-73258
 Facsimile: (916) 324-5205f
 E-mail: Tyler.Heath@doj.ca.gov
*Attorneys for Defendants*

Roman M. Silberfeld, State Bar No. 62783
Glenn A. Danas, State Bar No. 270317
Robins Kaplan LLP
 2049 Century Park East, Suite 3400
 Los Angeles, CA 90067-3208
 Telephone: (310) 552-0130
 Facsimile: (310) 229-5800
 E-mail: RSilberfeld@RobinsKaplan.com
*Special Counsel for Defendants*

**IN THE UNITED STATES DISTRICT COURT**

**FOR EASTERN DISTRICT OF CALIFORNIA**

**SACRAMENTO DIVISION**

| | |
|---|---|
| **RALPH COLEMAN, et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**GAVIN NEWSOM, et al.,**<br><br>Defendants. | Case No. 2:90-cv-00520 KJM-DB (PC)<br><br>**DEFENDANTS' STATEMENT REGARDING ISSUE NUMBER 1 ON THE COURT'S AGENDA FOR THE DECEMBER 13, 2019 STATUS CONFERENCE**<br><br>Judge: The Hon. Kimberly J. Mueller |

Defendants respectfully submit this statement in response to the Court's minute order of December 4, 2019. While this statement contains the separate statement of Defendants, counsel for Plaintiffs and Defendants have conferred with respect to that portion of Issue 1 that relates to the question of a period of discovery regarding the questions in Issue 1. Counsel for the parties have reached an agreement on this issue as more fully set forth below. The parties anticipate that this portion of our separate briefs will be identical.

**I.   INTRODUCTION**

The direct answer to the Court's questions are as follows:

1.   Defendants have not been unilaterally coordinating remedial efforts with the *Plata* Receiver.

2.   Defendants have not been advising the Court and Special Master only after

significant effort to remediate *Coleman* issues has been expended.

3.  The coordination of remedial efforts has been both properly and timely disclosed to the Special Master.

4.  Since there is overlapping representation of the *Plata* and *Coleman* class through the Prison Law Office, the coordination of remedial efforts has been both properly and timely disclosed to at least one or more of the Plaintiff's counsel in *Coleman*[1].

5.  The parties agree that no period of formal discovery is needed by Plaintiffs' counsel at this point in time. Instead, the parties will engage in informal exchanges of information and meetings, as more fully described below.

Since coordination efforts between *Plata* and *Coleman* began in 2007, and continuing to this day, Defendants have been transparent and open with the Special Master and Plaintiffs' counsel regarding the overlapping aspects between the two cases. This transparency and openness is made clear throughout the monitoring reports of the Special Master as well as the informal exchanges of information that occur with regularity between Defendants and Plaintiffs' counsel in the course of work group meetings, all parties' meetings and other informal contacts.

Over many years, agreements have often been presented to one or more Courts for approval through the joint submissions of the *Plata* Receiver, the *Coleman* Special Master and the Court Representatives in *Armstrong*. These joint agreements evidence the extent of coordination among at least the Receiver and Special Master. One example suffices. ECF 2969, an order of Judges Karlton, Henderson and White dated February 26, 2008 reflects the level and extent of coordination efforts resulting in an order approving the construction of a medical center at San Quentin, the addition of temporary and permanent office and clinical space at CDCR and the construction of approximately 10,000 medical and mental health beds for CDCR[2]. The same level of communication, coordination and consultation continue to this day.

---

[1] For instance, Steve Fama, with Prison Law Office, is counsel for both *Coleman* and the *Plata* case. His office is also counsel of record in both cases.

[2] The project was ultimately downsized, resulting in CDCR's newest institution – California Health Care Facility in Stockton, which provides hospital-level medical and mental health care for hundreds of patients.

## II. THE SPECIAL MASTER AND HIS TEAM HAVE BEEN AND ARE REGULARLY AWARE OF OVERLAPPING MEDICAL/MENTAL HEALTH ISSUES.

The best evidence of the extent to which the Special Master has been engaged and involved in matters that are within the purview and responsibility of the *Plata* Receiver is found in the monitoring reports of the Special Master. These excerpts illustrate the Special Master's understanding of the interplay between the *Plata* and *Coleman*:

- "Presumably, the 'operational control' that Defendant reference is the authority and jurisdiction of the *Plata* Receiver in the areas of nursing, medication management, information technology and medical record keeping." [22nd Monitoring Report, ECF 3990 at 20-23.

- "At the inception of the coordination process, the three courts of the coordinating cases envisioned that the parties to these cases may be involved from time to time in the coordination effort, as common or intertwined issues are addressed and need dictates. In their order formally instituting the coordination process, the courts stated that the *Coleman* special master, the *Plata* receiver and the representatives of the other cases…will hold monthly meetings for the purpose of working collaboratively on issues related to coordination of the remedies…"[*Id.*]

- "On the subject of coordination between the receiver and the special master, it must be kept in mind that the scope of their related activities is broader than only the planning and construction of bed and treatment space.." [24th Monitoring Report, ECF 4205 at 11,24]

- "A medication management audit tool has been developed through the coordinated work of the *Plata* receiver's staff and the *Coleman* special master's psychiatric experts and CDCR staff via the MAPIP." [ECF 4205 at 52]

## III. DISCLOSURE OF COORDINATION INFORMATION TO PLAINTIFFS' COUNSEL.

Defendants have not taken any steps to preclude Plaintiffs' counsel from being aware of or participating in those issues, concerns and problems which affect both *Plata* and *Coleman*. No such steps would have even been necessary because of the overlapping representation of the Plaintiffs in the two matters. Succinctly put, what counsel in *Plata* knows, counsel in *Coleman* knows by reason of the fact that the same counsel appear in both matters.

## IV. BECAUSE THE RECEIVER CONTROLS CDCR'S HEALTHCARE SYSTEM, CDCR'S MENTAL HEALTH COORDINATES WITH CCHCS TO AVOID DUPLICATION OF EFFORTS AND ENSURE THE EFFICIENT USE OF RESOURCES.

The history of coordination between the *Plata* and *Coleman* cases is a long one. At present,

among the issues common to both cases, the *Plata* Receiver is responsible for staffing,[3] nursing, medication management, pharmacy services, contracting, medical records, information technology, and, in some cases, identification of treatment space and beds, among other things. This current list of responsibilities, which reflect the need for integrating medical and mental health care, is not fundamentally different than the list of responsibilities that the *Plata* Receiver was responsible for in 2007. (See, e.g., ECF no. 2247, May 29, 2007 ORDER of Judges Karlton, Henderson and White.)

CDCR and CCHCS regularly collaborate on these common issues and, as discussed in sections II and III supra, have been transparent about the overlap in these key healthcare functions. And the agencies continue to coordinate on projects put forward by the Receiver to ensure there is no conflict between medical and mental health or to determine if efficiencies in common processes can be achieved by working together.

For instance, in 2017, the Receiver announced his plan to codify medical policies from the Inmate Medical Services Policy and Procedures (IMSP&P)[4] into either regulations or the Health Care Department Operations Manual (HCDOM). (See, e.g., Receiver's 36th Triannual Report, October 2, 2017, ECF no. 5702, 37th Triannual Report, February 1, 2018, ECF no. 5769, and 42nd Triannual Report, October 1, 2019, ECF no. 6300, reporting on the progress in moving the IMSP&P to regulations or HCDOM.) In November 2018, CDCR announced to the Special Master and Plaintiffs its desire to codify mental health policies, some of which are in the Program Guide, into regulations. And a year later, in November 2019, in response to the court's July 3, 2019 order to design a mechanism for updating the Program Guide or associated regulations, Defendants put forward a proposal to use the system developed by the Receiver to shepherd CDCR's changes to mental health regulations through CCHCS's Regulation and Policy Section.[5] This plan is

---

[3] CCHCS is the hiring authority at institutions for all healthcare staff, including mental health staff. CDCR Mental Health uses CCHCS's human resources division as well.
[4] The Receiver provides notice of any proposed changes to medical policy to the Special Master's team. Therefore, the Special Master team is informed of changes to the HCDOM, formally the IMSP&P.
[5] Contrary to the Special Master's November 15, 2019 report, CDCR did not propose to place "mental health regulations into the HCDOM." (ECF no. 6390 at 3-4.) Regulations are drafted by CDCR Mental Health and ultimately placed in California Code of Regulations Title 15, after review by the parties, signature of the CDCR secretary and approval by the Office of Administrative Law.

consistent with the long stated court coordination goal to avoid duplication and conflict between the cases.[6]

Use of CCHCS' Regulation and Policy Section allows the agencies to avoid conflict between mental health and medical policy while not unnecessarily duplicating a fully functioning division tasked with reviewing healthcare policy. Defendants' proposal would not have ceded policy substance or drafting control to the Receiver, but would have instead used the existing administrative processing division to facilitate draft regulations or policy through stakeholder review, including the review of the Special Master or Plaintiffs when appropriate. Ultimately the policies, as drafted by CDCR, would be placed in Title 15 or the HCDOM.

## V. FORMAL DISCOVERY ON THESE QUESTIONS.

Counsel for plaintiffs and Defendants conferred on this subject last week. Roman Silberfeld spoke with Michael Bien and Lisa Ells. After a review of the court's questions and the extent to which Plaintiffs' counsel had concerns about these issues, counsel agreed that a period of formal discovery at this time would not be necessary. Instead, counsel agreed to work together in the next 60 days to informally exchange documents and information that Plaintiffs' counsel may request and to provide Plaintiffs' counsel and the *Coleman* Special Master with in person informal access to CDCR employees and, with the permission of the *Plata* Receiver, to employees of the CCHCS, to answer questions about their work, assignments and responsibilities. In addition, counsel agreed to convene one or more 'all hands' meetings of interested participants to further elaborate and discuss the interrelated issues in *Plata* and *Coleman*. Finally, counsel agreed to report to the Court in advance of the Court's next status conference as to whether satisfactory informal information exchange had addressed all concerns or whether, then, a period of formal discovery may be necessary.

DATED: December 10, 2019                ROBINS KAPLAN LLP

By:  /s/  *Roman M. Silberfeld*
ROMAN M. SILBERFELD

---

[6] See 26th Monitoring Round Report, stating that "[i]t should be noted that the Plata and Coleman Courts recognize the importance of these cases not assuming redundant or conflicting paths toward resolution of their interrelated problems." (ECF No. 5439 at 44.)

- 5 -

DEFENDANTS' STATEMENT REGARDING ISSUE NUMBER 1 ON THE COURT'S AGENDA FOR THE DECEMBER 13, 2019 STATUS CONFERENCE