REICHMAN JORGENSEN LLP
SHAWNA BALLARD, State Bar No. 155188
KATE FALKENSTIEN, State Bar No. 313753
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
Telephone: (650) 623-1401
Fax: (650) 623-1449
Email: sballard@reichmanjorgensen.com
       kfalkenstien@reichmanjorgensen.com

*Attorneys for Plaintiff-Intervenor Christopher Lipsey*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **RALPH COLEMAN, et al.**<br><br>Plaintiffs,<br><br>v.<br><br>**GAVIN NEWSOM, et al.,**<br><br>Defendants. | Case No. CIV S-90-0520 KJM DB P<br><br>**CHRISTOPHER LIPSEY'S REPLY BRIEF IN SUPPORT OF MOTION TO INTERVENE**<br><br>Judge:         Hon. Kimberly Mueller<br>Action Filed: April 23, 1990 |

Christopher Lipsey is subject to nightly Guard One checks that prevent him from getting adequate sleep. All he seeks in this motion is to join this case and have those concerns heard. No party has raised an argument against permissive intervention, and the Court may simply grant Lipsey's motion on that basis. Regardless, Lipsey is entitled to mandatory intervention because Plaintiffs do not adequately represent his interests in replacing the Guard One system. Plaintiffs' counsel has not pursued Lipsey's concerns about excessive noise in Corcoran State Prison, and more broadly, they have actively supported the use of the Guard One system with only minor modifications. Because Lipsey disagrees with this objective, he is entitled to pursue his own interests as an intervenor.

## I. Plaintiffs Expressly Do Not Oppose Permissive Intervention, and Defendants Raise No Substantive Objection to It.

This Court need not reach the disputed question of mandatory intervention, because Lipsey is clearly entitled to permissive intervention under Federal Rule of Civil Procedure 24(b). Plaintiffs explicitly "do not oppose Mr. Lipsey's motion for permissive intervention." *See* Pls.' Resp. to Mot. to Intervene ("Pls.' Resp."), Dkt. 6408, at 1, 9.

Defendants' opposition brief does not distinguish between mandatory and permissive intervention, but in substance, it addresses only the requirements for mandatory intervention. The sole argument raised in Defendants' opposition is that Lipsey's interests are already adequately represented. *See* Defs.' Opp. to Mot. to Intervene ("Defs.' Opp."), Dkt. 6407, at 1-3. Lipsey of course disagrees with that contention. *See infra*, pp. 2-6. But the Court need not reach that issue, because inadequate representation is not a requirement for permissive intervention. As Lipsey noted in his opening brief, and Defendants did not contest, there are only three requirements for permissive intervention: Lipsey must show "(1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common." *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 955 (9th Cir. 2009) (quotation omitted). Because Defendants do not contest any of these three requirements, they necessarily concede that permissive intervention is appropriate.

## II. Lipsey Has a Right to Mandatory Intervention Because Plaintiffs Have Not Represented His Interest in Replacing the Guard One Monitoring System.

Were the Court disinclined to allow permissive intervention, Lipsey would nonetheless be entitled to mandatory intervention under Federal Rule 24(a). Mandatory intervention is governed by a four-part test, requiring that: "(1) the motion must be timely; (2) the applicant must claim a 'significantly protectable' interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action." *Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011). Neither existing party contests the first three prongs of the test; everyone apparently agrees that Lipsey has an interest in not being awakened by the Guard One checks, an interest which is practically affected by this litigation. The sole objection pertains to the fourth requirement—whether plaintiffs are already representing Lipsey's interest adequately.

   A. Defendants' Purported Willingness to Address Concerns Raised to the Court Only Underscores the Need for Lipsey to Intervene.

Defendants summarily argue that "class representatives and class counsel adequately represented Lipsey's interests in connection with adopting the Guard One protocol." Defs.' Opp. at 2. But they make no substantive response to Lipsey's argument: his interests have not been represented insofar as plaintiffs have not raised any objection to the noisiness of the Guard One checks in Lipsey's unit in Corcoran, nor have they opposed the use of the Guard One system in principle. Defendants note that they agreed to modify the procedure at Pelican Bay State Prison because of noise concerns there. *Id.* They state that they would "likely engage in a similar process" to address concerns elsewhere, *if they became aware* of "credible noise concerns." *Id.* (emphasis added). But this supposed solution only highlights the problem: Lipsey *has* a credible noise concern, but the existing plaintiffs have not raised it to Defendants or the Court. Lipsey's

intervention is necessary so that the Court may "become aware of credible noise concerns at other facilities," triggering the very evaluation that Defendants agree would be appropriate in such a situation. *See id.*

B. <u>Plaintiffs Have Not Adequately Represented Lipsey's Interests in Replacing the Guard One System.</u>

Plaintiffs' opposition raises two arguments on the adequacy of representation. First, they claim that there were no shortcomings in their representation when the Court ordered the welfare checks in 2015, because plaintiffs had no way of knowing that the checks would be conducted using Guard One—even though the expert report that the Special Master and Court adopted explicitly called for the use of Guard One. Second, they claim that they have adequately represented Lipsey's concerns about excessive noise because they sent emails and letters to Defendants about various noise complaints—even though they identify no such correspondence about the noise in Lipsey's prison since 2014, they have not raised any such concerns to the Court, and they have explicitly supported the use of the Guard One system in much of the correspondence they cite. Neither of these arguments is availing.

    i. *Plaintiffs Knew in 2014-15 That Welfare Checks Would Be Implemented Using Guard One, But They Did Not Object.*

Initially, Plaintiffs argue that they had no reason to object to the Court's orders (or the underlying Special Master recommendation) in 2014-15 because the orders "did not even refer to Guard One." Pls.' Resp. at 7; *see also id.* at 4 ("Neither the Special Master's recommendation nor the Court's order adopting it referred to Guard One."). This presentation of the facts leaves out certain ambiguities. While it is literally true that the Special Master's recommendation did not mention Guard One, the Special Master noted that he "agree[d] with the recommendations offered by Mr. Hayes in his attached report." *See* Special Master's Report, Dkt. 5258, at 5. The Special Master formally adopted Mr. Hayes' recommendation that the prisons continue to implement "the May 9, 2014 directive." *Id.* at 6. That directive, in turn, apparently requires the use of Guard One. *See* Audit of Suicide Prevention Practices in the Prisons of the California

3

1 Department of Corrections and Rehabilitation ("Hayes Report"), Dkt. 5259, at 14.  And the Hayes
2 Report, with which the Special Master agreed, explicitly praised the Guard One system.  *Id.* at 14-
3 15.  Indeed, in related litigation, this Court has held that its orders "required use of the Guard One
4 system."  *Lipsey v. Norum*, No. 2:18-CV-0362-KJM-DB-P, 2019 WL 5079544, at *4 (E.D. Cal.
5 Oct. 10, 2019); *see also Rico v. Beard*, No. 2:17-CV-1402-KJM-DB-P, 2019 WL 1036075, at *2
6 (E.D. Cal. Mar. 5, 2019) (noting that prison officials "were carrying out a facially valid court
7 order in instituting the Guard One system").  In short, given the explicit references in the Hayes
8 Report and the underlying May 9, 2014 directive to the Guard One system, Plaintiffs cannot
9 plausibly claim that they had no idea that the welfare checks they championed would be recorded
10 using Guard One, just because the Special Master's recommendation and Court's order adopting
11 it did not mention Guard One directly.

12 Yet as Defendants rolled out the Guard One system with, at a minimum, the blessing of
13 the Hayes Report, plaintiffs did nothing to push back about the ensuing noise.  Both parties had
14 been given an opportunity to submit objections to the Hayes Report.  *See* Special Master's
15 Report, Dkt. 5258, at 4.  But plaintiffs' objections apparently did not mention Guard One.  *Id.*
16 (noting that Plaintiffs' response "requested additional recommendations beyond those offered by
17 Mr. Hayes," without mentioning any objection to any of the Hayes recommendations including
18 the use of Guard One).  Of course, Plaintiffs may argue that their support of Guard One is
19 warranted, but that is an argument as to the merits of Lipsey's claims.  For the purposes of
20 *intervention*, however, the question is not whose interests should prevail but rather whether
21 plaintiffs adequately represented Lipsey's interests—in ending the use of Guard One.  From the
22 very beginning of the Court-ordered welfare checks, plaintiffs did not pursue Lipsey's goal of
23 using a different, quieter system.

24     ii. *Plaintiffs Have Not Pursued Concerns About Noise in Corcoran, Nor Have They Supported Replacement of the Guard One System with a Quieter Alternative.*
25

26 As the CDCR has continued to use the Guard One system in the nearly six years since the
27 Hayes Report, Plaintiffs next argue that they have tried to address the noise after learning of
28

prisoners' concerns. *See* Pls.' Resp. at 7-8 (relying upon ten letters and emails sent about noise caused by Guard One). But these letters do not demonstrate adequate representation of Lipsey's interests. In the cited letters, plaintiffs' counsel does not contest—and indeed, often affirms—the use of Guard One, and even the fights over implementation of Guard One have not been adequately pursued.

Plaintiffs have simply not opposed the use of Guard One in principle or sought to replace it with a different system. Plaintiffs frame Lipsey's opposition to this approach as a mere "tactical disagreement[]" about how to achieve the same "ultimate objective." *Id.* at 8. But the difference in interests between plaintiffs and Lipsey amounts to more than a tactical dispute about litigation strategy. Lipsey does not merely disagree with Plaintiffs' choice of *how* to pursue their desire to "mitigate the noise associated with Guard One." *Cf. id.* Instead, the disagreement is more fundamental. Plaintiffs have sought to continue using Guard One while making minor modifications to its implementation, but they have expressly disavowed its replacement with a new system. For example, Plaintiff's counsel argued that "discontinuation of Guard One"—even when requested directly by class members—"is not the answer." Ex. H to Gourse Decl., Dkt. 6408.1. Counsel affirmed that "amelioration" of the problems with Guard One "is possible." Ex. A to Gourse Decl., Dkt. 6408.1, at 2. And indeed, even after extensive inmate complaints, plaintiffs' counsel praised Guard One as a "valuable tool." Ex. D to Gourse Decl., Dkt. 6408.1, at 2. Plaintiffs have not asked Defendants to stop using Guard One, nor have they sought to clarify with the Special Master or Court whether the Guard One system itself is required by court order. These positions explicitly reject the core relief Lipsey seeks.

At most, based on the cited examples, Plaintiffs have opposed the *misuse* of the Guard One system, for example to "purposefully bang the Guard One baton on cells to wake up" inmates. *See* Gourse Decl., Dkt. 6408.1, ¶ 13;[1] *see also* Ex. A to Gourse Decl. (opposing

---

[1] Instead of filing under seal or redacting certain information, plaintiffs chose not to file this letter—which is the sole example in the past 18 months of their advocacy regarding the noise caused by Guard One—because it "contains extensive information that is confidential and subject to protective orders." Gourse Decl. ¶ 13. Lipsey thus does not know exactly what changes plaintiffs' counsel requested. But the description in the Gourse Declaration does not suggest an opposition to the use of Guard One in the abstract, but rather an objection to its *misuse* to purposefully wake up inmates. *See id.*

5

interpretation of the protocol as *requiring* officers "to awaken prisoners"); Ex. C (opposing "improper installation" of the Guard One buttons that "exacerbat[es]" the noise); Ex. D (opposing officers' "intentionally awakening" prisoners); Ex. E (noting complaints "about the implementation of welfare checks"); Ex. H (noting that the "root of the problem appears to be" a problem with the installation of the Guard One buttons); Ex. I (opposing the use of *beeping* Guard One wands); Ex. J (raising concerns about the installation of the Guard One buttons in improper locations).  Merely contesting the installation or implementation of the Guard One system does not advance Lipsey's objective—to stop using the system altogether and replace it with a system that does not raise such serious noise concerns.

Furthermore, Plaintiffs' counsel's handful of letters do not address Lipsey's concerns at Corcoran State Prison, where he is incarcerated.  Plaintiffs' counsel's letters regarding the noise caused by Guard One pertain to particular prisons.  *See, e.g.*, Ex. B to Grouse Decl., Dkt. 6408.1 (concerning California State Prison—Los Angeles County); Ex. C (concerning Kern Valley State Prison); Exs. D, E, F, and J (concerning Pelican Bay State Prison); Ex. G (concerning High Desert State Prison); Ex. H (concerning Pleasant Valley State Prison); Ex. I (concerning California Central Women's Facility).  Plaintiffs identify only one time they raised concerns about the noise at Corcoran—in 2014.  *See* Ex. A to Grouse Decl., Dkt. 6408.1.  There is no indication they ever followed up or took any concrete action beyond nominally raising the concerns to opposing counsel.  Nor is there any indication they have ever renewed these concerns since 2014.  This failure is particularly troubling because counsel surely became aware of Lipsey's concerns, at the latest, when he moved to relate his collateral lawsuit to this case in early 2018.  *See* Notice of Related Cases, Dkt. 5788 (Feb. 15, 2018).  A five-year-old letter, which led to no identified changes in the implementation of Guard One, does not adequately represent Lipsey's present concerns about the ongoing sleep deprivation caused by Guard One at Corcoran.

## CONCLUSION

In short, Plaintiffs' own evidence demonstrates that they expressly disagree with Lipsey's ultimate objective—to stop Defendants from using the Guard One system.  They have not even mentioned concerns about the conditions in Lipsey's prison in the last five years, let alone taken

any concrete action to remedy them or even inform the Court of the ongoing noise concerns outside Pelican Bay. Meanwhile, Lipsey continues to be awakened repeatedly throughout the night for months on end. Lipsey deserves the chance to raise his concerns himself. Thus, Lipsey respectfully requests that the Court permit him to intervene as a plaintiff in this case.

Dated: December 13, 2019                    Respectfully submitted,

/s/ *Kate M. Falkenstien*

REICHMAN JORGENSEN LLP
Shawna L. Ballard (SBN 155188)
Kate Falkenstien (SBN 313753)
100 Marine Parkway, Suite 300
Redwood Shores, California 94065
Telephone: (650) 623-1401
Fax: (650) 623-1449
sballard@reichmanjorgensen.com
kfalkenstien@reichmanjorgensen.com

*Attorneys for Plaintiff-Intervenor Christopher Lipsey*