1  XAVIER BECERRA, State Bar No. 118517
   Attorney General of California
2  ADRIANO HRVATIN, State Bar No. 220909
   Supervising Deputy Attorney General
3  KYLE A. LEWIS, State Bar No. 201041
   ELISE OWENS THORN, State Bar No. 145931
4  TYLER V. HEATH, State Bar No. 271478
   ROBERT W. HENKELS, State Bar No. 255410
5  Deputy Attorneys General
    1300 I Street, Suite 125
6   P.O. Box 944255
    Sacramento, CA 94244-2550
7   Telephone:  (916) 210-7325
    Fax:  (916) 324-5205
8   E-mail:  Tyler.Heath@doj.ca.gov
   Attorneys for Defendants

   ROMAN M. SILBERFELD, State Bar No. 62783
   GLENN A. DANAS, State Bar No. 270317
   ROBINS KAPLAN LLP
    2049 Century Park East, Suite 3400
    Los Angeles, CA 90067-3208
    Telephone:  (310) 552-0130
    Fax:  (310) 229-5800
    E-mail:  RSilberfeld@RobinsKaplan.com
   Special Counsel for Defendants

9

10                    IN THE UNITED STATES DISTRICT COURT

11               FOR THE EASTERN DISTRICT OF CALIFORNIA

12                          SACRAMENTO DIVISION

13

| | |
|---|---|
| 14  **RALPH COLEMAN, et al.,** | 2:90-cv-00520 KJM-DB (PC) |
| 15                          Plaintiffs, | **DECLARATION OF DR. DIANA TOCHE SUPPORTING DEFENDANTS'** |
| 16            **v.** | **RESPONSE TO DECEMBER 23, 2019 REMEDIAL ORDER** |
| 17  **GAVIN NEWSOM, et al.,** | |
| 18                          Defendants. | |
| 19 | |

20

21        I, Dr. Diana Toche, declare:

22        1.    I am the Undersecretary of Health Care Services for the California Department of

23  Corrections and Rehabilitation (CDCR), a position I have held since May 2014.  Immediately

24  before this appointment, I served as CDCR's Undersecretary of Administration and Offender

25  Services, a position I held from February 2013 to July 2015.  I am a doctor of dental surgery by

26  education, training, and previously worked in private practice for two years and for seventeen

27  years for a P.L. 93-638 Program that contracted with the Indian Health Service to provide

28  services in the state's Central Valley.  I have been employed by and have served CDCR for

                                          1

1    approximately eleven years as of January 2020.  I submit this declaration to support Defendants'

2    response to the Court's December 23, 2019 remedial order.

3         2.    I reviewed the Court's December 23, 2019 order.  I participated in the Court's

4    evidentiary hearing concerning Dr. Michael Golding's allegations, and I reviewed the Court's

5    order dated December 17, 2019 that followed that hearing.  I understand the importance of the

6    Court's directives and the need for transparency.  The Court's December 23, 2019 order directed

7    me to file an initial statement by January 22, 2020 describing what I've done, and plan to do, to

8    respond to Plaintiffs' counsel's question at the evidentiary hearing regarding the significance of

9    this Court's orders.  (ECF No. 6435 at 3-4.)  I will provide that initial statement separately by the

10   Court's deadline.

11        3.    In its December 23, 2019 order, the Court requests information regarding the parties'

12   joint proposal to relocate "management of California Department of Corrections and

13   Rehabilitation (CDCR) mental health care data from CDCR Mental Health Headquarters to the

14   California Correctional Health Care System (CCHCS) Quality Management Section, overseen by

15   the *Plata* Receiver."  (*Id*. at 2.)  To start evaluating the proposal, the Court ordered Defendants to

16   meet two specific directives.  First, Defendants must ensure that the Special Master has access to

17   all of the business rules they are currently using to process mental health data and generate

18   reports related to the constitutional delivery of mental health care, including access to business

19   rules used by CCHCS's Quality Management Section, if that section is processing data or reports

20   related to delivering constitutional mental health care.  Second, Defendants must provide the

21   Special Master and Plaintiffs with access to all data that affects the care and treatment of

22   members of the Plaintiff class.  (*Id*. at 2-3.)  The Court ordered Defendants to identify the steps

23   taken to address these directives within fourteen days.  (*Id*. at 4.)  This declaration responds to

24   that order.

25        4.    As the Undersecretary of Health Care Services, I take the Court's December 23, 2019

26   order seriously, including the obligation to be responsive to the Court's requests for information

27   and meet CDCR's ongoing willingness to be as transparent as possible with the Special Master

28   and Plaintiffs.  Unfortunately, many stakeholders, individuals with information, and decision

Toche Decl. Supp. Defs.' Resp. Dec. 23, 2019 Remedial Order (2:90-cv-00520 KJM-DB (PC))

1     makers, both within CDCR and otherwise, were out of the office during much of the two-week

2     time period the Court provided (up to January 6, 2020) to respond to its order.  For example, Dr.

3     Eureka Daye, the Acting Deputy Director of Mental Health, has been out of the office, as have

4     many other crucial members of my staff.  Addressing the Court's information requests also

5     requires coordination with the Receiver and the Special Master, and I understand that the Special

6     Master has been out of the office, as have members of the Receiver's staff.  Accordingly, there is

7     more work to be done to address the Court's order.

8          5.     The unavailability of a number of interested stakeholders during the holiday slowed,

9     but did not halt, Defendants' efforts to collect information responsive to the Court's December

10    23, 2019 order, and CDCR has been able to take initial steps towards meeting the Court's

11    directives.  Our records reflect that since as early as October 2014, CDCR has been providing

12    some members of the Special Master's team access to CDCR's mental health quality management

13    and performance reports, but that access does not include the ability to view all business rules

14    used by CDCR to process its mental health data.  I have directed my staff to begin taking the

15    steps necessary to ensure that the Special Master and the members of his team that he designates

16    have appropriate access to CDCR's methodologies and business rules.

17         6.     Furthermore, at least some of the business rules CDCR uses to process its mental

18    health data—it is not currently known precisely how many—are stored in the CCHCS database,

19    which the *Plata* Receiver controls.  CCHCS also processes data and generates its own reports

20    regarding care to class members, and the Court has separately required the Special Master to have

21    access to those underlying business rules as well.  (ECF No. 6435 at 2, 4.)  CDCR cannot

22    unilaterally extend full access to that shared database, which includes both mental health and

23    CCHCS business rules, without input from the Receiver and his staff, for fear of improperly

24    blurring boundaries set in *Coleman* and *Plata*.  Accordingly, CDCR will coordinate these next

25    crucial steps with the *Plata* Receiver, with the input and guidance of the Special Master.

26    Following CCHCS staff's return to work after the year-end holidays, CDCR has spoken with

27    CCHCS staff to schedule further discussions as early as this week, and CDCR will invite the

28    Special Master to participate in these discussions.  These discussions are necessary to facilitate

3

1  CDCR's ability to provide the Special Master with access to all business rules used to process

2  mental health data and generate reports related to the constitutional delivery of mental health care

3  to the Plaintiff class.

4      7.      Separately, the Court's December 23, 2019 order required Defendants to "provide the

5  Special Master and the plaintiffs access to all mental health care data that affects the care and

6  treatment of members of the plaintiff class." (ECF No. 6435 at 4.)  Since the Court issued its

7  December 23, 2019 order, I have met with several members of CDCR's senior mental health care

8  staff and directed them to ensure that the Special Master and Plaintiffs have access to CDCR's

9  mental health performance and on-demand reports.  This level of access will ensure that the

10  Special Master, his team, and Plaintiffs' counsel can obtain reports based on patient-level data.

11  There are some complications with this directive, however.  Some of the information in the

12  mental health performance report and other on-demand reports concerning mental health

13  measurements are maintained by the Receiver, such as the measurement for medication

14  management.  CDCR has started to analyze this issue, which will require further discussions with

15  the Receiver to identify the mental health data owned and maintained by the Receiver and how to

16  best to provide access to those reports and mental health measurements.  CDCR will notify and

17  invite the Special Master to participate in these discussions.  Given potential distinct and

18  competing obligations under *Coleman* and *Plata*, CDCR must be able to coordinate with various

19  parties in the cases to be mindful of the disparate court-ordered obligations and boundaries.

20      8.      I understand that before the Court's December 23, 2019 order and to present,

21  members of the Special Master's staff have had full access to the mental health care records for

22  class members through CDCR's Electronic Mental Health Record System.  I also understand that

23  CDCR agreed to grant Plaintiffs access to the Electronic Mental Health Record System for class

24  members in approximately March 2018.

25      9.      At the Court's direction, Defendants have also engaged the Receiver to identify what

26  mental health data regarding class members is already accessible by the Special Master and

27  Plaintiffs separately through *Plata*, and what more data can be provided through the existing

28  collaborative process to be mindful of the differences between *Plata* and this case.  For instance,

4

1  CDCR is working with CCHCS's information technology department, which controls

2  credentialing for access to CDCR's mental health performance and on demand reports.  CCHCS

3  provides information technology services to CDCR mental health through a coordination

4  agreement.

5        10.   I understand the Court's December 23, 2019 order to contemplate a remedial

6  process—namely, that the parties must take initial steps to demonstrate to the Court the efficacy

7  and efficiency contemplated by their proposal to integrate, as appropriate, data collection and

8  reporting through CCHCS.  Defendants are committed to the Court's process.  There's more work

9  to do, within CDCR, with the Special Master, Plaintiffs, the *Plata* Receiver, and through the

10  established collaborative process.  And the Court needs to stay informed of the parties' ongoing

11  remedial work.  Accordingly, I will be prepared to provide the Court with a status report, as soon

12  as within the next thirty days, on the two specific information requests set forth in the Court's

13  December 23, 2019 order.  If the Court has additional questions on these issues, Defendants can

14  address those, too, in their status report.

15        I declare under penalty of perjury that the foregoing is true and correct to the best of my

16  knowledge.  Executed in Sacramento, California, on January 6, 2020.

17

18                                             */s/ Diana Toche*
                                             Diana Toche
19                                             *(original signature retained by attorneys)*

20  CF1997CS0003

21

22

23

24

25

26

27

28

5