UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al., | No. 2:90-cv-0520 KJM DB P |
| Plaintiffs, | |
| v. | ORDER |
| GAVIN NEWSOM, et al., | |
| Defendants. | |

As required by court order, on December 13, 2019, this matter came on for the third quarterly status conference of 2019. Michael Bien, Esq., Lisa Ells, Esq., Steven Fama, Esq., Jenny Yelin, Esq. and Cara Trapani, Esq., appeared as counsel for plaintiffs. Kyle Lewis and Elise Thorn, Deputy Attorneys General, and Roman Silberfeld, Esq., appeared as counsel for defendants. Also present in court with defendants were Rei Onishi, Deputy Legal Affairs Secretary to Governor Gavin Newsom; Jerome Hessick, General Counsel for California Department of Corrections and Rehabilitation (CDCR); Diana Toche, Undersecretary for Healthcare Services for CDCR; and Christine Ciccotti, General Counsel for the Department of State Hospitals.

/////

/////

1

On December 4, 2019, the court issued an order setting an agenda for the status conference, which guided the proceeding. *See* ECF No. 6403. After consideration of the parties' briefing and discussion with counsel, the court makes the following findings and orders.

I. COORDINATION WITH THE *PLATA* RECEIVER

    A. History, Purpose and Nature of Coordination

Formal coordination between this action and the *Plata*[1] case began in 2006. This court has recently reviewed the origins of the coordination process and noted the court orders issued by the coordinating courts in 2007 and 2008.[2] ECF No. 6396. After review, it appears that at least some of those orders are outdated and in need of updates. The Special Master has informed the court that he and the *Plata* Receiver have begun review of those orders and discussion of necessary updates. The court anticipates receiving proposed updates in due course.

As proceedings before this court have revealed, it also appears that the coordination process has strayed from its founding principles. Given some of the statements in the parties' briefing, the court once again articulates its view that this departure is not the fault of the *Plata* Receiver. From this court's perspective, the fault lies primarily with defendants in this action who have failed to observe the proper boundaries between their remedial responsibilities to this court and its Special Master while they also work with the *Plata* Receiver on other matters. Going forward, as the coordination process continues and becomes more robust, the ground rules for those matters under this court's jurisdiction are as follows.

First, there will be full transparency. If any stakeholder has a question about whether information should be shared, it should be shared. Everyone involved should err on the side of transparency.

Second, the court cannot comprehend why new assertions of possible claims of privilege have arisen in discussions of the coordination process between this court's Special

---

[1] *Plata v. Newsom*, C01-1351 JST (N.D.Cal.).

[2] The coordination process also has extended to *Armstrong v. Schwarzenegger*, Case No. C94-2307 CW (N.D.Cal.).

Master and the *Plata* Receiver, each of whom is an arm of his respective court. During proceedings here on the Golding Report, this court exercised its discretion to not "venture further into the thicket" of privilege claims raised then by defendants. ECF No. 6247 at 10. The court did so in order to avoiding wasting "valuable court time and resources and distract[ing] from the important, indeed imperative, tasks that remain to achieve delivery of constitutionally adequate mental health care," despite the court's "general impression" that defendants had "overreached" with many of their privilege claims. *Id*. All stakeholders are encouraged to think deeply and carefully before asserting claims of privilege in the context of the coordination process or otherwise as related to this case, given the public interests at stake. Going forward, the court will not hesitate to reach the merits and resolve any asserted claim of privilege that affects the *Coleman* class in any way.

B. <u>Whether, and to what extent, defendants have been unilaterally coordinating remedial efforts with the *Plata* Receiver, advising the court and Special Master only after significant effort has been expended; whether, and to what extent, any such efforts have been properly and timely disclosed to the Special Master and/or the plaintiffs; and whether plaintiffs should be granted a period of discovery designed to identify answers to these questions</u>

The parties have agreed to a period of sixty days for an informal exchange of information related to the extent to which defendants have been coordinating remedial efforts with the *Plata* Receiver and whether or not those efforts have been timely disclosed to the Special Master and/or the plaintiffs. The parties also plan to discuss entering into an information-sharing stipulation in *Plata* and *Coleman* similar to the agreement that exists now between the *Coleman* class and the *Armstrong* class. The parties shall present a proposed stipulation and protective order to the court for consideration within thirty days. This matter is continued to the agenda for first quarterly status conference of 2020. *See* Section VII *infra*.

/////

/////

C.  Whether the Special Master should be granted authority to hire his own data expert to support his renewed coordination with the Receiver

At hearing, all parties agreed the Special Master should be authorized to hire his own data expert as part of the ongoing remedial process that follows the court's proceedings on the Golding Report and the proposed coordination of data management with the *Plata* Receiver. The court agrees, and will authorize the Special Master to submit a request to approve this hiring when he has identified an appropriate expert.

D.  Review of reporting channels and committee/subcommittee structures relevant to mental health data collection and reporting

As required by court order, defendants have filed a list of "reporting channels and committee/subcommittee structures relevant to mental health data collection and reporting, whether currently in place or put on hold during the Golding proceedings," ECF No. 6396 at 5. *See* ECF No. 6398. The list is substantially similar to a list provided at the court's request by the *Plata* Receiver; the *Plata* Receiver recently updated his courtesy list to include two additional mental health committees not reflected on the list filed by defendants.

The list filed by defendants is lengthy. At hearing, defendants represented that they intended the list to be fully inclusive, that the list is not static, and that not all committees are currently active. They also represented that they are working with the Special Master on a review of the mental health committees. The discussion of committees will continue at the first quarterly status conference of 2020. By that time, defendants shall provide an updated organizational chart of committees. That chart shall show which committees are active and which are inactive, and to whom active committees report. Defendants shall also be prepared to discuss how the committee structure compares to best business or operations practices. Defendants may, as appropriate, reduce or refine the number of committees for this presentation, explaining changes in the list of committees if they do make changes.

/////

/////

4

E.   Review of *Coleman/Plata* coordination efforts generally

As noted above, the details of coordinated efforts are evolving, and this subject will remain on the agenda for future status conferences. All stakeholders in this action are reminded not to rush into the breach during this critical juncture.

II.   MENTAL HEALTH CRISIS BEDS (MHCBS)

Three separate items concerning MHCBs were included on the agenda for the third quarterly status conference, including (1) an update on defendants' compliance with requirements for 24-hour transfer timeline to mental health crisis beds (MHCBs); (2) questions raised by plaintiffs concerning defendants' 50-MHCB plan; and (3) whether an unmet bed need study for MHCB and inpatient care is required to aid in assessment of defendants' compliance with transfer timelines to MHCB care and the adequacy of their MHCB bed planning. At hearing, the court discussed with the parties the potential need for specific reporting on timelines for decommissioning unlicensed inpatient beds and MHCBs and for review of the so-called sustainable process developed for ensuring timely referral of patients to inpatient mental health care, which is not currently working as it was intended to. The parties agreed these matters were ripe for resolution by the court on the briefing on file, and they stand submitted.

III.   UPDATE ON STATUS OF DEFENDANTS' COMPLIANCE WITH STAFFING REQUIREMENTS AND COURT'S OCTOBER 10, 2017 ORDER, INCLUDING BUT NOT LIMITED TO DISCUSSION OF ENFORCEMENT OF ORDER

With the concurrence of the parties, the deferred questions of defendants' compliance with the October 2018 deadline set in the court's October 10, 2017 order, ECF No. 5711, and enforcement of that order are set for hearing on **April 23, 2020 at 10:00 a.m.**

The parties agree that their outstanding disputes regarding telepsychiatry appear close to resolution and that it would be appropriate to prioritize discussions on telepsychiatry at the settlement conference set for January 17, 2020. The court will provide this information to Judge Drozd, who is presiding over settlement discussions.

## IV. REVIEW OF ITEMS REFERRED TO THE SPECIAL MASTER

Several matters referred to the Special Master during proceedings on the Golding Report and prior to those proceedings remain pending with him.

With respect to one such matter, on November 15, 2019, the Special Master filed a request for extension of time to comply with the court's July 3, 2019 order, ECF No. 6211, requiring the submission of proposed processes for regular updates to the 2018 Program Guide and to any part of the remedy for this action found in state regulations and/or provisions of the California Department Corrections and Rehabilitation (CDCR) Department Operations Manual (DOM). ECF No. 6390. The Special Master's request was based on the fact that the scope of defendants' plan to include mental health care regulations in the Healthcare Department Operations Manual (HC-DOM) overseen by the *Plata* Receiver had only recently become clear to the Special Master and the plaintiffs. By order filed November 19, 2019, ECF No. 6396, the court denied the request pending a further discussion with the parties at the third quarterly status conference. After consideration of the matters discussed at the status conference, particularly those related to renewed robust coordination and transparency, the Special Master's request for extension of time, to and including February 14, 2020, to comply with the July 3, 2019 order, will be granted. The decision to grant this extension of time does not mean the court will accept any particular proposal to integrate mental health regulations, including but not limited to provisions of the Program Guide, into the HC-DOM. As always, any material change to the remedial plans in this action must be approved by this court.

On August 14, 2019, the court referred to the All-Parties' Workgroup a dispute identified during proceedings on the Golding Report over "interpretation of how and why medication non-compliant patients are scheduled for follow-up under the CCHCS Medication Adherence Procedure policy" and "whether all medication non-compliance in fact must be captured." ECF No. 6242 at 11. Also on November 15, 2019, the parties filed a stipulation and proposed order seeking approval of a "Draft Proposed Psychiatrist Medication Adherence Clarifying Directives" as well as additional time to meet and confer over the process by which the Special Master will monitor compliance with this policy. ECF No. 6393 at 2. At hearing the

court directed the parties to file within seven days supplemental briefing on the following three questions: (1) are the CDCR defendants developing their own quality management process for this policy; (2) how does this policy intersect with the Special Master's general monitoring responsibilities; and (3) how, if at all, does the fact that the draft memo clarifies a policy of the *Plata* Receiver affect the monitoring issue presented by the parties' request? That briefing has now been filed and matter is submitted.

Before the next quarterly status conference, the court will provide the parties with a complete list of all matters pending before the Special Master, and a discussion of those matters will be on the agenda for that status conference.

## V. REVIEW OF SPECIAL MASTER'S MONITORING PLANS

The work of the Special Master is divided into several areas: he and his team are monitoring at CDCR Headquarters, they are monitoring delivery of mental healthcare at institutions in the field, they are supervising ongoing work in the All-Parties Workgroup, they are preparing for and participating in settlement discussions supervised by Judge Drozd, and they are staying abreast of ongoing litigation activity before this court. At this critical juncture, none of those critical tasks can give way in favor of others. As the court informed the parties, the Special Master has advised the court this may require the addition of additional staff to his team. The court is prepared to receive and consider such a request in due course.

## VI. PROGRESS ON OUTSTANDING GOALS

### A. Re-evaluation and Updating of CDCR Suicide Prevention Policies and Practices

In its July 3, 2019 order adopting in full the report of the Special Master and his expert on the third re-audit report on suicide prevention practices in CDCR, the court found that implementation of the suicide prevention steps required by prior orders adopting Mr. Hayes' recommendations is taking too long. ECF No. 6212 at 14. In that order, the court signaled that if Mr. Hayes does not report full compliance with those orders in his fourth re-audit report, "the court anticipates reviewing with defendants at a future status conference the specific steps necessary to enable Mr. Hayes to report no later than after his fifth re-audit that all recommendations have by then been implemented." *Id*.

After further consideration and discussion with the parties, the court has determined that this matter must be moved forward expeditiously. To that end, if the Special Master and Mr. Hayes will not be able to report full compliance at the end of the fourth re-audit period, the Special Master and Mr. Hayes are directed to include in their reporting on Mr. Hayes' fourth re-audit specific recommendations for each step defendants must take to implement any items that remain incomplete, as well as a date certain on which the fifth re-audit round will commence. This will allow the court to order defendants to take each of the remaining steps on or before the start of the fifth re-audit and to move to enforcement proceedings if substantial compliance is not shown in the fifth re-audit.

      B.      <u>Transfer to Higher Levels of Care</u>

              1.      <u>Timely Transfer to Inpatient Care</u>

On August 21, 2015, the court ordered defendants to start filing monthly reports on the timeliness of transfers to inpatient care. ECF No. 5343. The first report was due September 15, 2015. *Id.* On April 19, 2017, the court ordered defendants to come into compliance with Program Guide timelines for transfer to inpatient care by May 15, 2017, or face fines of $1,000 per inmate per day. ECF No. 5610. The parties negotiated exceptions to the transfer timelines, which were approved by the court, ECF No. 5750, and defendants have been filing monthly reports. To date, a total of $450,016.56 in fines has accumulated. The vast majority of fines were accrued before October 2017; defendants accrued $1,000 in fines in November 2018, $4,000 in fines in December 2018, and $16.56 in October 2019.[3] Generally, the court's enforcement mechanism appears to be working. Defendants shall continue to file monthly reports and the matter of payment or discharge of accumulated fines will be deferred to a later stage of these proceedings.

/////

/////

---

[3] This represents the $1,000 daily rate prorated to reflect that a transfer was 24 minutes late.

8

2. Timely Transfer to MHCBs

As discussed above, this matter is submitted for decision on the briefing on file.

C. ASU EOP Hub Certification

Since August 1, 2014, defendants have been required to "provide to the court and the Special Master monthly reports on whether each EOP ASU hub meets Program Guide requirements for an EOP ASU level of care." ECF No. 5150 at 2-3 (revising ¶ 2c of ECF No. 5131 at 73:19-74:3). Defendants are prohibited from admitting any *Coleman* class member receiving mental health treatment at the EOP level of care "to any EOP ASU hub that has failed to meet or exceed Program Guide requirements for a period of more than two consecutive months." *Id*.

The reliability of the EOP ASU hub certification letters has been called into question by the Golding proceedings. In addition, at hearing it became clear there are a number of disputes between the parties over whether the certification process is moving defendants toward constitutional compliance for adequate mental health care for EOP inmates in administrative segregation units. This matter will be set on the agenda for the first quarterly status conference of 2020.

D. Bed and Treatment Space Planning and Construction

As discussed above, outstanding issues related to whether defendants' scaled-down MHCB project is adequate and how defendants plan to decommission unlicensed MHCBs and inpatient beds are now submitted before to the court.

E. Staffing

As discussed above, this matter is set for hearing on April 23, 2020, for review of defendants' compliance with, and consideration of enforcement of, this court's October 10, 2017 order.

F. Custody Collaboration

On October 8, 2019, the court approved defendants' updated Custody and Mental Health Partnership Plan and directed its implementation in accordance with timelines set forth in that plan. ECF No. 6314. On or before April 30, 2020, defendants are to certify to the Special

Master that all deadlines in the update have been met or that the tasks described as ongoing are in fact ongoing, or explain why not. *Id*. at 2. At that time, this matter will be ripe for a finding of compliance or to be set for enforcement proceedings.

G. EHRS

Defendants are also tasked with completing full implementation of an adequate electronic medical records system. As all parties acknowledge, the proceedings on the Golding Report highlighted problems for mental health and *Coleman* compliance with the Electronic Health Records System (EHRS) rolled out by the *Plata* Receiver. A process for implementation of necessary updates to the EHRS to meet the needs of psychiatry and mental health must be an urgent priority both for defendants and in the coordination process. This matter will be placed on the agenda for the first quarterly status conference of 2020, at which time the court expects to receive an update indicating substantial progress toward development and implementation of the process for these updates.

H. Continuous Quality Improvement Tool (CQIT)

As has been discussed repeatedly, development and implementation of the CQIT tool is an essential component of the end of federal court oversight. The roll-out of CQIT was suspended during the Golding proceedings and substantial questions about the reliability of defendants' data as relevant to CQIT were raised in those proceedings. Finalization and implementation of CQIT must be restarted promptly, as soon as data issues are resolved. This matter will be placed on the agenda for an update at the first quarterly status conference of 2020.

VII. FURTHER SCHEDULING

This matter is set for the first quarterly status conference of 2020 on **March 23, 2020 at 10:00 a.m.** The parties may file proposed agenda items by close of business on March 2, 2020. The court will issue a final agenda on or before March 16, 2020.

IT IS SO ORDERED.

DATED: January 7, 2020.

_____
CHIEF UNITED STATES DISTRICT JUDGE