1   XAVIER BECERRA, State Bar No. 118517
    Attorney General of California
2   ADRIANO HRVATIN, State Bar No. 220909
    Supervising Deputy Attorney General
3   KYLE A. LEWIS, State Bar No. 201041
    ELISE OWENS THORN, State Bar No. 145931
4   TYLER V. HEATH, State Bar No. 271478
    ROBERT W. HENKELS, State Bar No. 255410
5   Deputy Attorneys General
     1300 I Street, Suite 125
6    P.O. Box 944255
     Sacramento, CA 94244-2550
7    Telephone:  (916) 210-7325
     Fax:  (916) 324-5205
8    E-mail:  Tyler.Heath@doj.ca.gov
    Attorneys for Defendants

    ROMAN M. SILBERFELD, State Bar No. 62783
    GLENN A. DANAS, State Bar No. 270317
    ROBINS KAPLAN LLP
     2049 Century Park East, Suite 3400
     Los Angeles, CA 90067-3208
     Telephone:  (310) 552-0130
     Fax:  (310) 229-5800
     E-mail:  RSilberfeld@RobinsKaplan.com
    Special Counsel for Defendants

9

IN THE UNITED STATES DISTRICT COURT

10

FOR THE EASTERN DISTRICT OF CALIFORNIA

11

SACRAMENTO DIVISION

12

13

14   **RALPH COLEMAN, et al.,**

15                                              Plaintiffs,

16              v.

17   **GAVIN NEWSOM, et al.,**

18                                              Defendants.

19

2:90-cv-00520 KJM-DB (PC)

**DEFENDANT DR. D. TOCHE'S RESPONSE TO DECEMBER 23, 2019 ORDER**

Judge:  The Honorable Kimberly J. Mueller

20          The California Department of Corrections and Rehabilitation (CDCR) is committed to

21   delivering mental health care to patients in its prisons that meets or exceeds the constitutional

22   minimum required by the Eighth Amendment of the United States Constitution.  A necessary

23   component of that commitment is that CDCR's administrators and staff understand and take

24   decisive action to comply with this Court's remedial orders, the Program Guide requirements, and

25   CDCR's mental health policies.  In its December 17 and December 23, 2019 orders, the Court

26   emphasized that it expects CDCR Undersecretary of Health Care Services Dr. Diana Toche to be

27   "thinking deeply about a proper response to plaintiffs' counsel's question [at the hearing on the

28   Golding Report] about how she can work to make clear to those who work for and with her that

1

1  'CDCR has been found to have violated the Constitution as to the mental health program and is

2  under a remedial order supervised by this court' and that '*Coleman* is not just a word' but

3  signifies a federal court order, 'upheld by the United States Supreme Court[,] that governs a

4  remedial process.'"  (ECF No. 6435 at 3 (quoting ECF No. 6427 at 46 and 10/16/19 Reporter's

5  Transcript at 359:12-360:4).)  The Court directed Dr. Toche to provide an initial statement within

6  thirty days "setting forth the steps she had already taken and is planning to take to provide a

7  complete response to the question posed at the hearing and to the gravamen of the court's

8  findings."  (*Id.*)

9      Dr. Toche and CDCR are working on steps to more effectively communicate to its

10  employees their ongoing constitutional obligation to provide mental health care to patients and

11  the importance of this Court's remedial orders, the Special Master's monitoring, the Program

12  Guide, and CDCR mental health policies to fulfilling that obligation.  These steps presently

13  include clear written direction to all staff regarding their obligations, meetings to reinforce the

14  seriousness of those obligations, and additional training.  This effort has already begun with clear

15  and unequivocal direction to all staff.  (Toche Decl. ¶ 5.)  On January 13, 2020, Dr. Toche and

16  Undersecretary of Operations Guillermo Viera Rosa issued a memorandum to all CDCR and

17  California Correctional Health Care Services (CCHCS) staff reminding them that a federal

18  district court in 1995 found that CDCR was providing unconstitutional mental health services and

19  treatment and that the Court's recent orders questioned CDCR's commitment "to ensuring

20  compliance with the court's remedial order" on the ground "that CDCR submitted misleading

21  data in connection with certain mental health metrics to the court and its special Master."  (*Id.*,

22  Ex. A at 1.)  The directive reminds staff that the provision of adequate mental health care is not

23  optional and that the only way CDCR can provide treatment consistent with its constitutional

24  obligations is through "strict adherence to both department and court-ordered policies."  (*Id.*)  If

25  employees encounter barriers or issues with compliance, they may report those concerns to their

26  managers, or to the Office of Internal Affairs, Office of the Inspector General, or the California

27  State Auditor Whistleblower Hotline.  (*Id.*)  And the directive reminds employees of their right to

28  engage with any member of the *Coleman* Special Master's team.  (*Id.* at 2.)  CDCR will require

2

1  all employees to acknowledge that they reviewed and understand the memorandum's directives.

2  (Toche Decl. ¶ 5.)

3  As part of a larger ongoing effort to change CDCR's culture, CDCR prepared a *New Vision*

4  *and Mission Statement for the California Department of Corrections and Rehabilitation and*

5  *California Correctional Health Care Services*.  CDCR developed the *New Vision and Mission*

6  *Statement* before the Court's December 17 and 23, 2019 remedial orders and submit it here to

7  address Plaintiffs' questioning at the recent evidentiary hearing and the Court's remedial orders.

8  (Toche Decl. ¶ 6, Ex. B.)  The *New Vision and Mission Statement* was distributed to CDCR and

9  CCHCS employees statewide on January 6, 2020.  (*Id.*)  It states, among other things, CDCR and

10  CCHCS's shared mission "[t]o facilitate the successful reintegration of the individuals in our care

11  back to their communities equipped with the tools to be drug-free, healthy, and employable

12  members of society by providing education, treatment, rehabilitative, and restorative justice

13  programs, all in a safe and humane environment."  (*Id.*)  The statement reflects CDCR's renewed

14  commitment and focus on enhancing public safety and promoting "successful community

15  reintegration through education, treatment, and active participation in rehabilitative and

16  restorative justice programs."  (*Id.*)

17  Dr. Toche and CDCR believe that the directive and *New Vision and Mission Statement* are

18  important steps, but, as this Court has stated, words on paper alone are not enough.  (Toche Decl.

19  ¶ 7.)  CDCR will present both documents at a statewide meeting of all CDCR wardens and in a

20  separate statewide meeting with chief executive officers who are responsible for managing the

21  health care delivered at the institutions.  (*Id.*)  The goal of these presentations will be to impress

22  on the wardens and chief executive officers that all staff understand and implement the tenets of

23  both documents.  (*Id.*)  CDCR will make clear that the requirements of both documents are

24  mandatory and CDCR's managers have an obligation to make sure that they, and their staffs,

25  understand both documents and act on them.  (*Id.*)  CDCR Secretary Ralph Diaz has already

26  discussed the *New Vision and Mission Statement* at a January 13, 2020 Governor's 2020 Budget

27  Meeting and reinforced CDCR staff's obligation to treat inmates appropriately.  (*Id.*)

28

3

Def. Dr. D. Toche's Resp. Dec. 23, 2019 Order  (2:90-cv-00520 KJM-DB (PC))

1    CDCR will also develop and implement training to respond to Plaintiffs' question to Dr.

2    Toche at the hearing and the Court's findings.  Currently, CDCR provides mandatory training for

3    custody and mental health care professionals who work in CDCR's Mental Health Statewide

4    Delivery System.  (Toche Decl. ¶ 8.)  CDCR will expand the training to include a more robust

5    discussion of *Coleman* and Program Guide obligations, and include Dr. Toche and

6    Undersecretary Rosa's recent directive as part of the annual mental health training.  (*Id.*)  CDCR

7    will also include the directive in its New Employee Orientation and the mental health training at

8    CDCR's Basic Correctional Officer Academy.  (*Id.*)  And, CDCR intends to develop, in

9    consultation with the Special Master and Plaintiffs' counsel, a training module that explains the

10   history of the *Coleman* case, its importance, CDCR's renewed commitment and focus on patient

11   care, and expectations for all CDCR staff.  (*Id.*)  Once the training design is complete and

12   activated, it will be mandatory and CDCR will monitor compliance.  CDCR will make the

13   compliance reports available to the Special Master.  (*Id.*)

14    Training is not the only direct action Dr. Toche or CDCR will take.  Dr. Toche believes that

15   accountability is an important component of any plan to effectively communicate to staff their

16   obligations under this Court's orders and their obligations to CDCRs patients.  (Toche Decl. ¶ 9.)

17   Dr. Toche plans emphasize in meetings she has with staff to discuss the directive, CDCR's *New*

18   *Vision and Mission Statement*, and the Court's December 17, 2019 findings that everyone must be

19   held accountable for fulfilling their constitutional obligation to provide mental health care to

20   CDCR's patients and be aware of, and comply with, this Court's orders.  (*Id.*)  That includes

21   reminding supervisors and managers that they must hold accountable those who they supervise.

22   (*Id.*)

23    Dr. Toche and CDCR do not believe that responding to the Court's directive and Plaintiffs'

24   question is a static process.  (Toche Decl. ¶ 10.)  They have taken certain initial steps to address

25   the Court's orders, but they may need to take additional steps in the future to respond to patients'

26   evolving needs—Dr. Toche and CDCR stand ready to identify and take those steps.  (*Id.*)  Dr.

27   Toche will be prepared to provide any and all updates at the time of the March 20, 2020 status

28

1    conference, as directed by the Court.  (*Id.*)  Moreover, Dr. Toche and CDCR are prepared to

2    respond to any questions the Court may have before the status conference.  (*Id.*)

3         The December 23, 2019 order also required CDCR to list all steps it had taken to provide

4    the Special Master with "access to all business rules . . . [used] to process mental health data and

5    generate informational reports related to delivery of constitutionally adequate mental health care"

6    and all steps taken to "provide the Special Master and Plaintiffs access to all mental health care

7    data that affects the treatment of members of the plaintiff class."  (ECF No. 6435 at 4.)  On

8    January 6, 2020, CDCR provided its initial response to that order outlining the steps it had taken

9    and planned to take to comply with the Court's order.  CDCR also committed to providing the

10   Court an update on its progress by February 5, 2020.  CDCR and Dr. Toche view the efforts to

11   comply with that order and achieve a greater level of transparency as part of their overall

12   response to the "gravamen of the court's findings."  (ECF No. 6435 at 3.)  CDCR continues to

13   take steps to comply with the Court's order and will provide an update by February 5, 2020, as

14   promised.

15   <center>**CERTIFICATION**</center>

16        Defendants' counsel certifies that he reviewed the following orders relevant to this filing:

17   ECF No. 6427; ECF No. 6435; ECF No. 6441.

18   Dated:  January 22, 2020               Respectfully submitted,

19                                            XAVIER BECERRA

20             Attorney General of California
          ADRIANO HRVATIN

21             Supervising Deputy Attorney General

22             */s/ Tyler V. Heath*

23             TYLER V. HEATH

24             Deputy Attorney General
          *Attorneys for Defendants*

25   CF1997CS0003

26   14366595

27

28

<center>5</center>