XAVIER BECERRA, State Bar No. 118517
Attorney General of California
ADRIANO HRVATIN, State Bar No. 220909
Supervising Deputy Attorney General
KYLE A. LEWIS, State Bar No. 201041
ELISE OWENS THORN, State Bar No. 145931
TYLER V. HEATH, State Bar No. 271478
ROBERT W. HENKELS, State Bar No. 255410
Deputy Attorneys General
 1300 I Street, Suite 125
 P.O. Box 944255
 Sacramento, CA 94244-2550
 Telephone: (916) 210-7325
 Fax: (916) 324-5205
 E-mail: Tyler.Heath@doj.ca.gov
*Attorneys for Defendants*

ROMAN M. SILBERFELD, State Bar No. 62783
GLENN A. DANAS, State Bar No. 270317
ROBINS KAPLAN LLP
 2049 Century Park East, Suite 3400
 Los Angeles, CA 90067-3208
 Telephone: (310) 552-0130
 Fax: (310) 229-5800
 E-mail: RSilberfeld@RobinsKaplan.com
*Special Counsel for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **RALPH COLEMAN, et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**GAVIN NEWSOM, et al.,**<br><br>Defendants. | 2:90-cv-00520 KJM-DB (PC)<br><br>**DECLARATION OF D. TOCHE, D.D.S., IN SUPPORT OF DEFENDANT DR. D. TOCHE'S RESPONSE TO DECEMBER 23, 2019 ORDER**<br><br>Judge: The Honorable Kimberly J. Mueller |

I, Dr. Diana Toche, declare:

1. I am the Undersecretary of Health Care Services for the California Department of Corrections and Rehabilitation (CDCR), a position I have held since May 2014. Immediately before this appointment, I served as CDCR's Undersecretary of Administration and Offender Services, a position I held from February 2013 to July 2015. I am a doctor of dental surgery by education, training, and previously worked in private practice for two years and for seventeen years for a P.L. 93-638 Program that contracted with the Indian Health Service to provide services in the state's Central Valley. I have been employed by and have served CDCR for

1

Toche Decl. Supp. Resp. Dec. 23, 2019 Order  (2:90-cv-00520 KJM-DB (PC))

approximately eleven years as of January 2020. I submit this declaration to support Defendants' response to the Court's December 23, 2019 remedial order.

2. I reviewed the Court's December 23, 2019 order. Among other things, the order stated that the Court expected me to be "thinking deeply about a proper response to plaintiffs' counsel's question [at the hearing on the Golding Report] about how she can work to make clear to those who work for and with her that 'CDCR has been found to have violated the Constitution as to the mental health program and is under a remedial order supervised by this court' and that '*Coleman* is not just a word' but signifies a federal court order, 'upheld by the United States Supreme Court[,] that governs a remedial process.'" (ECF No. 6435 at 3 (quoting ECF No. 6427 at 46 and 10/16/19 Reporter's Transcript at 359:12-360:4).) The order directed me to provide an initial statement within thirty days "setting forth the steps she had already taken and is planning to take to provide a complete response to the question posed at hearing and to the gravamen of the court's findings." The purpose of this declaration is to respond to that part of the Court's order.

3. As I stated in my January 6, 2020 declaration, as the Undersecretary of Health Care Services, I take the Court's December 23, 2019 order seriously and the obligations that it imposes on me. In addition, I take seriously all remedial orders issued by this Court and my obligation as a Defendant in this case, and the Undersecretary of Health Care Services, to ensure that CDCR adopts programs and policies that are capable of meeting the Court's orders and providing mental health care to its patients. I also take seriously my obligation to ensure that CDCR's employees are also aware of their obligation to provide mental health care to its patients, follow CDCR's policies and programs, and follow this Court's orders.

4. I attended all of the Court's evidentiary hearing concerning Dr. Michael Golding's allegations and testified during that hearing. I also reviewed the Court's December 17, 2019 order, which followed the hearing. I understand the seriousness of the Court's findings and the important task that is ahead of CDCR and me. As the Court instructed, I have thought, and continue to think, deeply about Plaintiffs' question and the gravamen of the Court's orders and how best to respond to both. I believe that all CDCR employees should think seriously about their obligation to remedy the constitutional violations found in this case and to let that obligation

2

Toche Decl. Supp. Resp. Dec. 23, 2019 Order  (2:90-cv-00520 KJM-DB (PC))

guide their actions. I believe the majority of CDCR's employees who work in the mental health delivery system already understand that obligation. Despite that, a refocusing on that central goal will help CDCR and its employees as we continue to work to improve the overall care provided to patients, address the issues that continue to persist in this case, and respond to the Court's recent findings. Accordingly, CDCR and I have taken and will take the following actions to reiterate to CDCR's employees that they have an ongoing constitutional obligation to provide mental health care to patients and the importance of the Court's remedial orders, the Special Master monitoring, the Program Guide, and CDCR mental health policies to meet that obligation.

5. A central part of the response is a direct, clear, and unequivocal direction to all employees. On January 13, 2020, Undersecretary of Operations Guillermo Viera Rosa and I circulated a memorandum to all CDCR and California Correctional Health Care Services (CCHCS) staff reminding them that a federal district court in 1995 found that CDCR was providing unconstitutional mental health care services and treatment and the Court's recent orders questioned CDCR's commitment "to ensuring compliance with the court's remedial order" and "that CDCR submitted misleading data in connection with certain mental health metrics to the court and its special Master." The directive also reminds staff that the provision of adequate mental health care is mandatory and that the only way CDCR can provide treatment consistent with its constitutional obligations is through "strict adherence to both department and court-ordered policies." It also reminds staff that if they encounter barriers to that mission, there are multiple avenues available to them, including going to their managers, the Office of Internal Affairs, Office of the Inspector General, or the California State Auditor Whistleblower Hotline. It also reminds staff that they have a right to engage the *Coleman* Special Master and his team. CDCR plans to require all staff to acknowledge that they have reviewed and understand the memorandum's directive. CDCR provided the memorandum to Plaintiffs and the Special Master. A copy of the directive is attached as Exhibit A.

6. CDCR also prepared a *New Vision and Mission Statement for the California Department of Corrections and Rehabilitation and California Correctional Health Care Services* to change its focus and culture. CDCR started developing the *New Vision and Mission Statement*

3

Toche Decl. Supp. Resp. Dec. 23, 2019 Order  (2:90-cv-00520 KJM-DB (PC))

before the Court's December remedial orders, and I submit it here to address Plaintiffs' questioning at the recent evidentiary hearing and the Court's remedial orders. It states, among other things, that CDCR and CCHCS share a mission "[t]o facilitate the successful reintegration of the individuals in our care back to their communities equipped with the tools to be drug-free, healthy, and employable members of society by providing education, treatment, rehabilitative, and restorative justice programs, all in a safe and humane environment." The statement reflects CDCR's renewed commitment and focus on a care-based mindset. It was provided to all CDCR employees on January 6, 2020. A copy is attached as Exhibit B.

7. The directive and the *New Vision and Mission Statement* are important steps. However, as this Court has stated, I do not believe that words on paper alone are enough. CDCR will present both in a statewide meeting of all CDCR wardens and in a separate statewide meeting with chief executive officers who are responsible for managing the health care delivered at the institutions. The wardens' quarterly meeting is scheduled for February 25-27, 2020, and the chief executive officers' conference is scheduled for April 15-16, 2020. The goal of the presentations will be to impress on the wardens and chief executive officers the necessity that all staff understand and implement the tenets of both documents. CDCR will make clear that the requirements of both documents are not optional and CDCR's managers have an obligation to make sure they, and their staffs, understand both documents and act on them. I am also aware that CDCR Secretary Ralph Diaz has already discussed the *New Vision and Mission Statement* at a January 13, 2020 Governor's 2020 Budget Meeting and reinforced CDCR staff's obligation to treat all inmates appropriately.

8. CDCR is also planning to develop and implement training to respond to Plaintiffs' questions and the Court's findings. CDCR already provides mandatory training for custody and mental health care professionals that work in CDCR's Mental Health Statewide Delivery System. CDCR intends to expand its discussion of *Coleman* and Program Guide obligations, and include the directive as part of the annual mental health training. CDCR will also make the directive a part of its New Employee Orientation and mental health training at CDCR's Basic Correctional Officer Academy. And finally, CDCR intends to develop, in consultation with the Special Master

4

Toche Decl. Supp. Resp. Dec. 23, 2019 Order  (2:90-cv-00520 KJM-DB (PC))

and Plaintiffs' counsel, a training module that explains the history of the *Coleman* case, its importance, CDCR's renewed commitment and focus, and the expectations for all CDCR staff. Once the training design is complete and activated, it will be mandatory and CDCR will monitor compliance. CDCR will make the compliance reports available to the Special Master.

9.   I also believe that accountability is an important component of any plan to effectively communicate to staff their obligations under this Court's orders and their obligations to their patients. Accordingly, I intend to emphasize in the meetings I have with staff to discuss the directive, CDCR's *New Vision and Mission Statement*, and the Court's December 17, 2019 findings, that everyone must be held accountable for fulfilling their constitutional obligation to provide mental health care to CDCR's patients and be aware of, and comply with, this Court's orders. This includes reminding supervisors and managers that they also need to hold accountable those who they supervise.

10.   I do not believe that this process is static, but ongoing. I believe that I have taken initial steps to address the Court's orders and Plaintiffs' questioning, but I may need to take additional steps in the future to respond to the evolving needs of patients and CDCR. I will continue to work with my staff to identify additional steps and to reinforce the importance of complying with this Court's orders and providing constitutional mental health care to CDCR's patients. As directed by the Court, I will be prepared to update the Court at the March 20, 2020 status conference, and respond to any questions the Court may have before the status conference.

11.   The December 23, 2019 order also required CDCR to identify all steps taken to provide the Special Master with "access to all business rules . . . [used] to process mental health data and generate informational reports related to delivery of constitutionally adequate mental health care" and all steps taken to provide the Special Master and Plaintiffs access to all mental health care data that affects the treatment of members of the plaintiff class." (ECF No. 6435 at 4.) On January 6, 2020, I provided an initial response of the steps already taken and some of the planned steps, and, as promised, I will provide the Court with an update on CDCR's steps to meet the Court's order by February 5, 2019, unless the Court requests information at a different time. I view CDCR's efforts to comply with that order as a step to achieve greater transparency, which is

5

a necessary component of responding to the Court's findings in its December 17, 2020 order. My staff and I continue to work to accomplish the steps outlined in the January 6, 2020 statement to comply with the Court's order.

    I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge. Executed in Sacramento, California, on January 22, 2020.

                                                                    */s/ Diana Toche*
                                                                    Diana Toche
                                                                    (original signature retained)

CF1997CS0003 / 14366598

6

Toche Decl. Supp. Resp. Dec. 23, 2019 Order  (2:90-cv-00520 KJM-DB (PC))