REICHMAN JORGENSEN LLP
SHAWNA BALLARD, State Bar No. 155188
KATE FALKENSTIEN, State Bar No. 313753
 100 Marine Parkway, Suite 300
 Redwood Shores, CA 94065
 Telephone: (650) 623-1401
 Fax: (650) 623-1449
 Email: sballard@reichmanjorgensen.com
        kfalkenstien@reichmanjorgensen.com

*Attorneys for Plaintiff-Intervenor Christopher Lipsey*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **RALPH COLEMAN, et al.,** | Case No. S-90-0520 KJM DB P |
| Plaintiff, | **DECLARATION OF DR. RAFAEL PELAYO IN SUPPORT OF CHRISTOPHER LIPSEY'S MOTION FOR A PRELIMINARY INJUNCTION** |
| **v.** | |
| **GAVIN NEWSOM, et al.,** | Judge:      Hon. Kimberly Mueller |
| Defendants. | Action Filed:  April 23, 1990 |

I, Rafael Pelayo, hereby declare as follows:

1.      I have been retained as an expert in this case to provide my opinions in connection with Christopher Lipsey's allegations of unconstitutional sleep deprivation.  I understand that Mr. Lipsey's claims concern sleep deprivation caused by a system called "Guard One," which the state prison uses to record checks on inmates.  I have been compensated $1,500 for writing this report.

2.      Specifically, I have been asked to provide expert testimony on whether Christopher Lipsey's medical records and claimed symptoms are consistent with his claims of sleep deprivation, and whether the Guard One system as described in Mr. Lipsey's complaint would be likely to cause sleep deprivation and resulting medical problems.  I understand that Mr. Lipsey is filing a motion to stop the guards from conducting the loud checks around him

3.      My opinions in this declaration are based on my personal knowledge, including my professional experience and education; on my review of documents produced or filed in this case; my review of a report by Dr. Jaime Zeitzer regarding sleep conditions in Pelican Bay dated October 25, 2015; and on my medical visit to Jorge Rico, a plaintiff in the related case *Rico v. Beard*.

4.      In particular, I reviewed Mr. Lipsey's medical files while in state prison, which I understand were produced by the Defendants in this case under Bates numbers AGO005057-AGO012480.  I did not receive any medical notes for 2019.  I also reviewed the Second Amended Complaint in *Lipsey v. Norum*, case number 2:18-cv-00362-KJM-DB-P.

5.      I had previously written a report regarding the impact of the incarceration conditions on Jorge Rico.  After visiting and evaluating Mr. Rico in Pelican Bay, I specifically reported on how the Guard One check system being used in solitary confinement was disturbing Mr. Rico's sleep and causing sleep deprivation.

**My Qualifications**

6.      I am a Clinical Professor in the Division of Sleep Medicine at Stanford University School of Medicine.

-1-

7.      I have worked in the field of sleep medicine for 26 years.  I have a medical degree and graduated in 1988.  I joined the Stanford faculty in 1993.

8.      While at Stanford, I have taught classes on sleep, trained physicians, given guest lecturers throughout the country, and published 41 peer-reviewed papers, 29 book chapters and a textbook in this field.

9.      I am a fellow in the American Academy of Sleep Medicine, and the President elect of the California Sleep Society.

**Mr. Lipsey's Medical Background**

10.     Mr. Christopher Lipsey is a 34-year-old prisoner with a prior medical history of elevated blood pressure, headaches, arthroses, substance abuse, and schizoaffective disorder.

11.     The medical records files have several entries regarding Mr. Lipsey suffering from depression with suicidal ideations and behavior along with auditory hallucinations.  Mr. Lipsey has medical file documentation of suicidal behavior (on 2/26/12) prior to the implementation of the Guard One system.

12.     Within the thousands of pages of medical records reviewed there is documentation of Mr. Lipsey having poor sleep. He describes sleeping poorly if he has to share a cell due to lack of trust related to prior incidents with cell mates.

13.     Mr. Lipsey reportedly was first subjected to the Guard One checks in March of 2013 while in the administrative segregation unit (ASU) which appears to have made the mental health issues worse. For example, there is an entry in the "Interdisciplinary Progress Notes" within a month of starting the new check system describing worsening depression, suicidal ideations, and reckless behavior dated 4/14/13.  There is also an interdisciplinary progress note from 4/18/13 that he is not sleeping from the stress of being in Ad Seg.

14.     In reviewing Mr. Lipsey's medical files, I found a number of references to his poor sleep.  For example, there are Chronological Interdisciplinary Progress Note(s) from 8/22/13 and 8/29/13 documenting his poor sleep and his effort to improve it.

-2-

Pelayo Decl. in Supp. of Pl.'s Mot. for Preliminary Injunction

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

15.     There is an entry on 12/20/13 that he has worsening depression since going to Ad seg on 12/2/13 and wakes up tired in "Ad seg," although in that note it says his sleep is not interrupted other than by nocturia.

16.     The Chronological Interdisciplinary Progress note of 7/29/14 reports that he is depressed because he is in prison, "…and said he continues to sleep poorly…"

17.     In the 4/30/15 Mental Health Treatment form, he is described as suffering from nightmares and insomnia for which he is prescribed Vistaril.

18.     There is a Primary Clinician Crisis Evaluation note from 3/14/16 that describes auditory command hallucinations and that he only can sleep 2 hours.  The mental health evaluation/screening in 3/17/16 reports he can't sleep.  In the nursing intake note of 3/29/16 he is reported to only sleep 5 hours.

19.     There is a progress note on 6/9/16 that documents him complaining that his mood is worse and that is related to the "first watch" Sergeant interrupting his sleep which worsens his mood.

20.     In the mental health addendum note of 7/26/16 there is documentation of "…mood swings, anger to depression, passive SI (suicidal ideations) and poor sleep."

21.     There is a physician's handwritten note from 3/16/17 reporting Mr. Lipsey saying, "I am in a very loud noisy section of the SHU I have not slept since I got here I am going to kill myself."

22.     In the health care request form of 10/21/17 he reports not sleeping well due to both the "device they use for welfare checks" along with leg discomfort (which may be restless legs) which allows him only "a hour or two" of sleep per night.  There is a similar entry on the request for medical service form on 10/23/17.

23.     There is a mental health evaluation entry of 2/15/18 where he refuses "CF consult" where he is yelling "I am tired, I want to sleep!".

24.     On the patient history form dated 3/28/18 he reports not sleeping for "40 hours."

-3-

Pelayo Decl. in Supp. of Pl.'s Mot. for Preliminary Injunction

25.     The Mental Health Evaluation of 5/21/18 describes him hearing voices and having insomnia.

26.     There are several entries in the chart that report he is sleeping well.  These are mainly when he is some medical unit.  It is not uncommon for a person with sleep problems to also sleep better on some nights.  The fact that sleep problems can wax and wane adds to the sense of frustration people with sleep problems can have.

27.     There is a relative paucity of information about Mr. Lipsey's sleep within the thousands of pages of Mr. Lipsey medical files I reviewed.  The vast majority of checklists, including the psychiatric evaluation checklists, in his chart do not have boxes to enter sleep information.  Therefore, it is likely that the degree of sleep problems he is suffering from is under documented.

### Mr. Lipsey's Claims of Sleep Deprivation

28.     From my review of Mr. Lipsey's complaint, I note that he alleges the noise from the Guard One system results in "…several dozen metal-on-metal strikes every thirty minutes, awakens Lipsey repeatedly during the night. Once he wakes up, it is difficult for him to fall asleep again, because he is roused by another round of Guard One checks within thirty minutes, just as he is beginning to fall asleep again after having been previously awakened by the prior rounds of checks."

29.     In addition, the complaint alleges that, "Lipsey typically alternates between nights with very limited sleep (approximately 2 to 3 hours, broken into smaller chunks interrupted by Guard One checks) and nights with more sleep (6 to 7 hours). After a night with very limited sleep, Lipsey is so tired that he is sometimes able to sleep through the checks the next night. But the following night, after sleeping more, he again suffers a night of only 2 to 3 hours of sleep. This cycle has continued for the four years that he has been subject to the checks."

### Opinion Regarding Mr. Lipsey's Symptoms

30.     Chronic insomnia is defined as having a minimum duration of 3 months, which is consistent with the timing of Mr. Lipsey's experience when the checks were started.  Despite

-4-

already being previously housed in the ASU, his sleep complaints become more frequent after the Guard One system was started.

31.     It is not just the noise of activating the Guard One system on every cell within the pod but also the loud clanging sound of the metal door leading into the pod being opened and closed 4 times to conduct these checks along with the correctional officer needing to walk around the pod.  Unlike a person with temporary or situational insomnia that could at least look forward to sleeping better when the situation changes, Mr. Lipsey is exposed to unrelenting noise that is out of his control that can further fuels his insomnia and potentially worsens his health.

32.     I would anticipate that the levels of sleep Mr. Lipsey reports would lead to medical symptoms.  Sleeping only a few hours each night on a regular basis is likely to cause irritability, inattentiveness, impulsivity, exacerbations of any mood disorders such as depression, worsening anxiety, general physical discomfort including headaches, and malaise.   Sleep has restorative effects for the brain and lack of sleep will worsen any neurological and psychiatric conditions.  For example, people with migraines are more likely to get more headaches when they are sleep deprived. People with schizophrenia can become more psychotic.  Lack of sleep is associated with impulsive behavior including suicidality. Chronic insomnia increases the risk for depression and disability.  Poor sleep will exacerbate any neurological or psychiatric condition and is likely playing a role in Mr. Lipsey's schizoaffective disorder, depression and overall behavior.

33.     Mr. Lipsey's medical file and complaint reflect his poor sleep with chronic insomnia. Mr. Lipsey's allegations that he has trouble falling asleep within the 30-minute window between Guard One checks is consistent with chronic insomnia.  A very common symptom among my patients with chronic insomnia is a feeling of extreme frustration where the thought of sleeping makes it even harder to sleep.

34.     Mr. Lipsey's allegation that he alternates between nights with very little sleep and nights with more sleep is also entirely consistent with chronic insomnia as authoritatively described in the International Classification of Sleep Disorders, 3rd edition (ICSD-3).[1]  *See*

-5-

American Academy of Sleep Medicine, <u>The International Classification Of Sleep Disorders</u>, 3d ed. (2014).  Chronic insomnia is described as "frequent and persistent difficulty initiating or maintaining sleep results in general sleep dissatisfaction.  The sleep complaint is accompanied by distress about poor sleep and/or impairment in…important areas of functioning. Furthermore, the sleep disturbance and associated waking symptoms occur despite having adequate time and circumstances each night to obtain necessary sleep."

35.    The medical file I reviewed is also consistent with the hallmarks of chronic insomnia.  Recognized waking symptoms of chronic insomnia result in impairment of normal functioning.  These include "…fatigue, reduced motivation, reduced concentration, attention and memory functioning; and irritability or reduced mood."  People with chronic insomnia often reported being unable to nap.  The ICSD also reports that "[s]omatic symptoms such as headaches or gastrointestinal dysfunction" can also be present.  Based on my review of Mr. Lipsey's complaint, these are complaints the Mr. Lipsey also reported.

36.    Mr. Lipsey also described other associated features of chronic insomnia.  These include feelings of reduced well-being and general malaise along with excessive focus on and worry about ongoing sleep difficulties.  With chronic insomnia "…thoughts about ongoing sleep difficulties may occur throughout the day and may be amplified as bedtime approaches." *See* Ex. A.   As mentioned above, a very common symptom among my patients with chronic insomnia is a feeling of extreme frustration where the thought of sleeping makes it even harder to sleep.  Untreated chronic insomnia typically leads to a "vicious cycle of poor sleep, daytime impairment, apprehension of insomnia, and further sleep disturbances."

37.    Mr. Lipsey's allegations are similar to those made by Mr. Rico.  When I examined Mr. Rico, I found evidence of the symptoms of severe sleep deprivation including tachycardia, fatigue, reduced motivation, reduced concentration, attention and memory functioning, headaches, gastrointestinal complaints, anxiety, irritability and worsening mood.

38.    Unlike my other patients, Mr. Lipsey is an inmate in a maximum security prison involved in litigation against the state.  The possibility of malingering or secondary gain has to

Pelayo Decl. in Supp. of Pl.'s Mot. for Preliminary Injunction

be considered.  Chronic insomnia is found in about 12% of the general population so it Mr.

Lipsey is unlikely to be the only person suffering from insomnia in California prisons.  *See* Exs.

A-D.  I was able to locate a few recent publications of sleep conditions among inmates.

However, the absence of a strong history of poor sleep until the Guard One wellness checks were

implemented indicate that it is not merely the fact that he is incarcerated that led to this situation.

39.     In conclusion, based on my review of the materials provided to me in this case, I

believe that Mr. Lipsey's allegations are consistent with his medical records and the literature on

sleep deprivation.  If Mr. Lipsey continues to be subject to the Guard One checks without

modifications, I believe he is likely to suffer medical consequences such as worsening

depression, and increased risk for suicide as well as being more impulsive and having potentially

dangerous greater risk taking behavior.

40.     Chronic insomnia is a treatable condition. Cognitive behavioral therapy (CBT)

for insomnia has been shown to be an effective non-drug treatment. *See* Exs. E-F.  I was unable

to locate a publication of CBT being applied to a prisoner population. but CBT-I has been shown

to be effective in a telemedicine setting.  *See* Ex. G.  If the noise concerns driving his chronic

insomnia can be satisfactorily mitigated, then CBT may be useful non-drug therapeutic approach

for Mr. Lipsey.


Executed this _12_ day of _Feb._, 2020, in _Los Altos_, California.

_[signature]_

Pelayo Decl. in Supp. of Pl.'s Mot. for Preliminary Injunction