UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al., | No. 2:90-cv-0520 KJM DB P |
| Plaintiffs, | |
| v. | ORDER |
| GAVIN NEWSOM, et al., | |
| Defendants. | |

On August 14, 2019, the court referred to the All Parties Workgroup a dispute over "interpretation of how and why medication non-compliant patients are scheduled for follow-up under the CCHCS [California Correctional Health Care Services][1] Medication Adherence Policy." ECF No. 6242 at 11. On November 15, 2019, the parties filed a stipulation and proposed order seeking approval of a "Draft Proposed Psychiatrist Medication Adherence Clarifying Directives" (hereafter "proposed directives" or "directives") as well as additional time to meet and confer over the process by which the Special Master will monitor compliance with this policy." ECF No. 6393 at 2. At the third quarterly status conference of 2019, held on

---

[1] CCHCS was established by the Receiver in *Plata v. Newsom*, Case No. 01-1351 JST (N.D.Cal.), as part of accomplishing the Receiver's remedial responsibilities in that action.

1

1 | December 13, 2019, the court directed the parties to supplement their stipulation with briefing on
2 | three questions: "(1) are the CDCR [California Department of Corrections and Rehabilitation]
3 | defendants developing their own quality management process for this policy; (2) how does this
4 | policy intersect with the Special Master's general monitoring responsibilities; and (3) how, if at
5 | all, does the fact that the draft memo clarifies a policy of the *Plata* Receiver affect the monitoring
6 | issue presented by the parties' request." ECF No. 6441 at 7.

The parties have filed the required supplement. ECF No. 6434. In addition, the Special Master has informed the court that the purpose of the proposed directives is to clarify the steps that must be taken by a mental health prescriber, defined as "a psychiatrist or psychiatric nurse practitioner acting under the supervision of a psychiatrist," when the prescriber receives email alerts automatically generated by the Electronic Health Record System (EHRS). ECF No. 6393 at 5. The court recognizes that the data leading to generation of the specified email alerts will typically be generated by nurses, who are responsible for delivery of prescribed medication and who are supervised by the *Plata* Receiver. The Special Master has informed the court that the focus of monitoring compliance with these directives will be on whether the mental health prescribers, as defined in the directives, follow them appropriately

The court has reviewed both the stipulation and proposed order and the supplemental briefing in light of recent events. As the court discussed in its order after the evidentiary hearing it convened on the Golding Report, it has become clear that defendants have not adequately policed the boundaries between this action and the *Plata* case "to protect and advance the remedies required in this case." ECF No. 6427 at 43. The court has also observed it appears that a coordination process implemented between the *Coleman* court and the *Plata* court "has strayed from its founding principles." ECF No. 6441 at 2. With these considerations in mind, as explained below the parties' stipulation will be approved in part.

The matter before the court originated with evidence reported by the court's Neutral Expert with respect to the Golding Report. That evidence suggested "CDCR's Timely Mental Health Referrals performance indicator is misleading because it does not reflect all patients who required medication non-compliance appointments and therefore overstates Program

2

Guide compliance." ECF No. 6242 at 11. While the parties agreed that not all medication non-compliant patients were included in the performance indicator, *id*., as noted above they disputed "how and why medication non-compliant patients are scheduled for follow-up under the CCHCS Medication Adherence Procedure policy." *Id.*

The CCHCS Medical Adherence Procedure policy is included in CCHCS's "Inmate Medical Services Policies and Procedures" (IMSP&P) and is specifically referenced in the remedial plan for this action, which is titled the Mental Health Services Delivery System Program Guide (hereafter Program Guide).[2] *See* ECF No. 6393 at 5 (citing Program Guide at 12-3-12, 12-4-9, 12-4-12, 12-4-19, 12-6-15, 12-9-8, and 12-10-7).[3] The IMSP&P has "been converted to the Health Care Department Operations Manual (HCDOM)." https://cchcs.ca.gov/imspp/. The HCDOM "outlines the delivery of medical and dental care provided to" inmate-patients in CDCR. https://cchcs.ca.gov/hcdom/. It is promulgated jointly by CDCR's Division of Health Care Services (DHCS) and CCHCS, collectively referred to as "Health Care Services." *See* HCDOM, Chapter 1, Article 1.

The Program Guide applicable in this case requires mental health staff to refer to the medication management provisions of the IMSP&P "regarding procedures for administration of medication, medication refusals, Directly Observed Therapy (DOT), and other aspects of medication administration." ECF No. 5864-1 at 44; *see also* ECF No. 5864-1 at 58, 61, 67, 120, 160 and 173. Thus, the provisions of the IMSP&P identified above are also part of the court-approved remedy in this action. *See* ECF No. 6214 (approving 2018 Program Guide Revision).

The overarching task of the court's Special Master is to "work with defendants and experts to be selected by the special master . . . to develop a remedial plan that effectively addresses the constitutional violations set forth in this court's September 13, 1995 order." ECF

---

[2] The Program Guide sets out the system for the delivery of mental health care to seriously mentally ill inmates incarcerated in CDCR institutions. *See* ECF No. 5864-1 at 3. It is also the plan for that part of this action which requires defendants to remedy Eighth Amendment violations in the delivery of mental health care to these inmates. *See, e.g*., ECF No. 5610 at 1 n.1.

[3] The 2018 Program Guide is found at ECF No. 5864-1. The pages cited by the parties in the proposed clarification are found at ECF No. 5864-1 at 44, 58, 61, 67, 120, 160 and 173.

| | |
|---|---|
| 1 | No. 640 at 3, 4. The Special Master is also required to monitor implementation of all remedies, |
| 2 | which must be approved by the court. See ECF No. 640 at 4. "[D]evelopment of a quality |
| 3 | assurance program" is one of the remedies required in this action. *Coleman v. Wilson*, 912 |
| 4 | F.Supp. 1282, 1308 (E.D.Cal. 1995). In other words, to perform his job, the Special Master must |
| 5 | work closely with defendants as defendants plan and implement quality management systems for |
| 6 | the delivery of mental health care. |
| 7 | With the foregoing in mind, the court turns to the specific stipulation presented by |
| 8 | the parties. The Draft Proposed Psychiatric Medication Adherence Clarifying Directives attached |
| 9 | as Exhibit A to the Joint Report and Stipulation filed November 15, 2019 represents the |
| 10 | agreement of the parties and the Special Master regarding proper interpretation of the relevant |
| 11 | medication management provisions of the IMSP&P as incorporated into the Program Guide. This |
| 12 | interpretation will be approved by this order. The parties also represent that the *Plata* Receiver |
| 13 | has received the proposed directives and it is likely the directives will need to be incorporated |
| 14 | into the HCDOM at a subsequent stage of these proceedings. ECF No. 6434 at 3. The court |
| 15 | accepts these representations. |
| 16 | The parties also request approval of their stipulated agreement "to continue to |
| 17 | meet and confer in the Workgroup process to discuss a process to monitor compliance with the |
| 18 | medication adherence policy, and to file a joint report, within sixty days from the date of the order |
| 19 | approving [the] stipulation, that sets forth the agreement for monitoring, if completed, or a |
| 20 | description of the progress made towards finalizing the monitoring process." ECF No. 6393 at 2. |
| 21 | The supplemental briefing of the parties makes clear that the monitoring contemplated by their |
| 22 | agreement will be accomplished with the use of computer-generated performance reports, and |
| 23 | that proper implementation and monitoring of the proposed directives require both "technical |
| 24 | changes to the electronic health record system" (EHRS) and development of "performance report |
| 25 | indicators." ECF No. 6434 at 2. Defendants propose to develop the performance report |
| 26 | indicators and implementation plan internally first, and then present those to the Special Master |
| 27 | and plaintiffs' counsel for input. *Id*. |
| 28 | |

4

The tasks necessary to proper monitoring of the proposed directives, namely, the technical changes to the EHRS and development of performance report indicators for monitoring compliance with the proposed directives, is occurring in the larger context of remediation of defendants' data management and reporting systems following the conclusion of the evidentiary proceedings on the Golding Report. The court's December 23, 2019 order confirmed that the Special Master is authorized "to hire his own data expert or otherwise make arrangements to ensure he has the necessary expertise at his disposal." ECF No. 6435 at 2-3. That order includes specific direction concerning the Special Master's access to defendants' business rules, mental health care data, and discussions concerning possible "use of the CCHCS Quality Management Section to manage CDCR Mental Health data." *Id*. at 3. While the December 23, 2019 order was issued after the November 15, 2019 stipulation was submitted to the court for review and approval, the provisions and general spirit of the December 23, 2019 order must apply to all aspects of development of defendants' mental health quality management processes going forward. Those provisions clarify long-standing practices that must not be abandoned, particularly at this point in time. To that end, the Special Master must supervise development of the performance indicators and the monitoring plan, with plaintiffs' involvement subject to his direction.

In accordance with the above, IT IS HEREBY ORDERED that:

1. The *Draft Proposed Psychiatric Medication Adherence Clarifying Directives* appended as Exhibit A to the Joint Stipulation of the Parties filed November 15, 2019, ECF No. 6393, is approved for incorporation into the Program Guide, either directly or by reference as an addendum to the Medication Management provisions of the HCDOM referred to in the Program Guide; the court expects this incorporation will take place prior to submission of the 2021 Program Guide and that the manner of incorporation will be clear in that document.

5

2. The Special Master shall supervise full implementation and monitoring of the Psychiatric Medication Adherence Clarifying Directives, consistent with his duties under the Order of Reference, ECF No. 640.

DATED: February 14, 2020.

_____
CHIEF UNITED STATES DISTRICT JUDGE