IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

RALPH COLEMAN, et al.,
    Plaintiffs,

vs.                                      No. 2:90-CV-0520 KJM DB

GAVIN NEWSOM, et al.,
    Defendants.

**SPECIAL MASTER'S AMENDED REPORT ON THE PROPOSED PROCESSES FOR UPDATING THE 2018 PROGRAM GUIDE REVISION, RELATED STATE REGULATIONS, AND RELATED ADDITIONS OR CHANGES TO THE CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION'S DEPARTMENT OPERATIONS MANUAL[1]**

I.    **INTRODUCTION**

On July 3, 2019[2], the court issued an order directing the parties, under the guidance and supervision of the Special Master, "to develop an improved method for regular administrative updating of the 2018 Program Guide Revision and to develop a process for updates and revisions to any part of the remedy found in state regulations and/or provisions of the California Department of Corrections and Rehabilitation's [Department] Operations Manual." ECF No. 6211 at 19. The court directed the Special Master to submit the final proposed processes to the court on or before November 15, 2019.[3] *Id*.

---

[1] On February 14, 2020, the Special Master filed his Report on the Proposed Processes for Updating the 2018 Program Guide Revision, Related State Regulations, and Related Additions or Changes to the California Department of Corrections and Rehabilitation's Department Operations Manual. ECF No. 6466. Due to time constraints, the document filed by the Special Master was incomplete and contained clerical errors. Accordingly, the Special Master hereby submits this amended report. A list of the revisions made is available upon request.

[2] The July 3, 2019 order was amended by an order issued July 9, 2019, ECF No. 6214, but the obligation of the parties and the Special Master to develop a Program Guide update and revision process remained unchanged.

[3] The process for annual revisions in the current version of the Program Guide was flawed from the outset and was never utilized.

1

On November 15, 2019, the Special Master filed a request for an enlargement of time, to February 14, 2020, to submit the final proposed processes to the court. ECF No. 6390. In an order issued November 19, 2019, the court denied the Special Master's request pending a full discussion with the parties at the December 13, 2019 quarterly status conference. ECF No. 6396.

On January 7, 2020, the court issued an order granting the Special Master's request for an enlargement of time up until, and including, February 14, 2020. ECF No. 6441. Consequently, the Special Master recommends that the revised proposal, attached hereto as Exhibit 1, be adopted.

Regarding updates to regulations and California Department of Corrections and Rehabilitation (CDCR) Department of Operations Manual (DOM) provisions, the Special Master requests that his original recommendation, offered in his June 29, 2018 filing, ECF No. 5844, that would require defendants to provide 90 days advance notice to the Special Master and the plaintiffs, be adopted.

## II.  BACKGROUND

For a better understanding of the proceedings that have occurred and how they have brought us to present day, a historical roadmap follows.

The process to update the current Program Guide began in 2017 and was encouraged by the court in its order dated April 19, 2017. ECF No. 5610 at 6, n. 3. In that order, the court acknowledged that the Special Master had informed the court that the "parties are in the preliminary stages of updating the Program Guide to incorporate modifications required by court orders issued since March 2006…." *Id*.

On December 15, 2017, the court issued a subsequent order directing the parties, under the supervision of the Special Master, to complete an update to the Program Guide. ECF No. 5750 at 4. The update was to provide ease of reference to the policies and procedures governing

the provision of mental health care to *Coleman* class members and ensure that both the parties and the court agreed on the contents. *Id*. at 2. On March 30, 2018, the parties filed a stipulated request for an extension of time to May 30, 2018 to file the Program Guide update. ECF No. 5812. The court issued an order on April 10, 2018 granting the parties' request and directing the Special Master to present the final version of the consolidated Program Guide update to the court. ECF No. 5816 at 5.

On May 30, 2018, the Special Master filed a request for an enlargement of time, to June 29, 2018, to present the consolidated Program Guide update to the court. ECF No. 5831. The court issued an order granting the Special Master's request on May 31, 2018. ECF No. 5832.

The Special Master filed his report on the consolidated Program Guide update on June 28, 2018. ECF No. 5844. Within his report, the Special Master offered four recommendations – three of which are pertinent for purposes of the present filing. He recommended that the court enter an order (1) directing the parties, under his guidance and supervision, "to work on the development of an improved method for modifying the Program Guide utilizing the workgroup process already in place" and (2) directing him to report back on the new proposed Program Guide modification process. ECF No. 5844 at 10. His third recommendation relevant to the current filing was that "any proposed Program Guide-related regulations be provided to plaintiffs and the Special Master 90 days in advance of the public comment period, and/or any Program Guide-related policies currently incorporated into regulations that substantively change in the future." *Id*.

Defendants filed their response to the Special Master's report on the consolidated Program Guide update on July 23, 2018.[4] ECF No. 5862. In it, defendants objected to the

---

[4] The defendants filed their initial response on July 20, 2018, ECF No. 5861, but subsequently filed a notice of errata and corrected pleading on July 23, 2018, ECF No. 5862.

Special Master's recommendation that he and plaintiffs be provided 90 days advance notice ahead of the public comment period of any proposed Program Guide-related regulations and/or any Program Guide-related policies currently incorporated into regulations that substantially change in the future.  *Id.* at 4.  Defendants argued that such a recommendation, if adopted, would "interfere[] with California's statutory rulemaking process, provide[] an excessive pre-notice period, and risk[] undue interference by Plaintiffs and the Special Master with state policymaking in contravention of the Administrative Procedures Act, Prison Litigation Reform Act, and the Court's Order of Reference."  ECF No. 5862 at 4.

In support of their position, defendants stated that: the public comment period provided under the Administrative Procedures Act provided sufficient time to review Program Guide-related regulations, the definition of "Program Guide-related regulations" was too broad and could be interpreted to apply to regulations not related to the Program Guide, and it was unnecessary to revisit each Program Guide-related policy before it was adopted as a regulation because most, and perhaps all, of these policies had already been negotiated and agreed upon.  *Id*. at 4-5.  Defendants also posited that adoption of the recommendation would "implicate federalism concerns."  *Id*. at 8.  In the alternative, defendants argued that should the court adopt the Special Master's recommendation, it should make clear that "the notice period is for the purpose of allowing commentary from the Special Master and Plaintiffs, rather than to provide [them] the opportunity to pre-clear agency rulemaking.  And the Court should further clarify that any such order would only apply to regulations directly affecting the delivery of mental health care to *Coleman* class members."[5]  *Id*. at 12.

---

[5] It is worth noting that the defendants never mentioned the HC DOM in their objections.

4

On July 3, 2019, the court issued an order addressing defendants' objections to the Special Master's recommendation regarding advance notice—the only recommendation defendants took issue with. ECF No. 6211. The court noted that the advance notice recommendation "recognize[d] the complexity of [the] case, the law of the case and the need to protect the court-ordered remedy to avoid material modification of the remedy through the state regulatory process and without approval by this court." ECF No. 6211 at 15-16. Additionally, the court stated that the advance notice recommendation was "consistent with the court's primary purpose in requiring submission of an updated Program Guide: ensuring ease of reference and agreement on the contents of the complete remedy, covering mental health services and custodial considerations as well." *Id*. at 16.

Ultimately, the court determined that adoption of the advance notice recommendation was "premature" considering the wide range of issues "implicated by the interface of the Program Guide, state regulations and/or the D.O.M., and the range of work that remains to be done in the All Parties Workgroup."[6] *Id.* Consequently, the court deferred resolution of the recommendation and directed the parties, under the guidance and supervision of the Special Master, to develop an improved method for updating the 2018 Program Guide Revision and a process to update and revise any Program Guide-related state regulations and/or provisions of the

---

[6] Since 2016, the parties have successfully negotiated 11 stipulations through the All-Parties Workgroup. ECF Nos. 5438, 5467, and 5487 (regarding security welfare checks utilizing guard one at Pelican Bay Security Housing Unit); ECF No. 5458 (regarding patient census and waitlist charts for inpatient mental health care); ECF Nos. 5605 and 5950 (regarding waiver of state law for California Medical Facility, L-wing); ECF Nos. 5631, 5660, and 6158 (regarding the Program Guide addendum related to transfer timelines); ECF No. 5668 (regarding defendants' plan to review the Enhanced Outpatient Program population); ECF No. 5931 (regarding waiver of state law for unlicensed crisis bed at California Institution for Women); ECF No. 6194 (regarding extending the deadline for defendants to finalize their custody and mental health partnership plan); ECF No. 6230 (regarding modification of the December 11, 1995 Order of Reference); ECF No. 6296 (regarding the approval of the desert institutions' transfer policy). The parties have also completed over 40 projects including the development of a telepsychiatry policy, the 14-day transfer policy, the lift and shift policy, the Program Guide pocket parts, and the creation of two-100 bed EOP dorms at San Quentin. *See* ECF Nos. 5439, 5770, and 5894.

5

CDCR DOM. *Id*. at 19. The Special Master was directed to submit the final proposed processes to the court on or before November 15, 2019. *Id*.

In response to the court's order, the Special Master asked defendants to prepare a draft proposal for discussion in the All-Parties Workgroup. Defendants provided the Special Master with an initial draft proposal on November 5, 2019. The proposal was divided into three parts: (1) Proposal for Review of Regulations Adopting or Revising All Negotiated or Court- Ordered Remedial Measures Adopted in *Coleman*, (2) Proposal for Review of Additions or Changes to CDCR's DOM or the Health Care DOM (HC DOM) Adopting or Revising All Negotiated or Court-Ordered Remedial Measures Adopted in *Coleman*, and (3) Proposal for Review of Administrative Revisions to the Program Guide. The inclusion of a section addressing additions or changes to the HC DOM, which is administered by California Correctional Health Care Services (CCHCS), an entity under the court-ordered supervision of the *Plata* Receiver, was a new and surprising development.

On November 12, 2019, defendants submitted the revised draft proposal to plaintiffs and the Special Master for review. Plaintiffs provided a response on November 13, 2019, in which they provided some initial comments on the revised draft proposal and included a redlined version of suggested changes.

On November 14, 2019, the Special Master convened an All-Parties Workgroup meeting to further discuss the draft proposal. As defendants' intention to include mental health regulations into the HC DOM administered by CCHCS had only recently become clear to plaintiffs and the Special Master, negotiations, while somewhat positive overall, stalled on this topic and its implications for the regulations process, as well as how plaintiffs and the Special Master would be notified of Program Guide-related proposed regulations and changes.

The Special Master was firm in his position that advance notice to his team and the plaintiffs be incorporated into the proposal given the history of the case and past occasions where the defendants promulgated regulations or went forward with the implementation of a policy related to mental health care without providing notice—as had been done with a regulatory package concerning "C" Status, inpatient referrals and admissions, and the shifting of job responsibilities from medical to mental health clinicians. *See* Plaintiffs' November 7, 2018 email, attached hereto as Exhibit 2. The regulatory package went into effect on January 1, 2018, but was not a topic of discussion until the November 9, 2018 policy meeting.

On November 15, 2019, the Special Master filed a request for an enlargement of time up to and including February 14, 2020 by which to file proposed processes for administrative updates to the Program Guide, and Program Guide-related regulations and DOM provisions. In his request, the Special Master noted that:

> The incorporation of mental health regulations into the Health Care DOM that is administered by CCHCS, an entity under the court-ordered supervision of the *Plata* Receiver, was not contemplated by the Special Master at the time he issued his report on the Program Guide update, as such, neither was it when the court issued its July 3, 2019 order. As a result, negotiations have proven more complex than initially anticipated and additional time is needed for the parties and the Special Master to complete discussions and develop improved policies for updates to the 2018 Program Guide Revision, Program Guide-related state regulations, and Program Guide-Related CDCR DOM and Health Care DOM provisions.

ECF No. 6390.

In an order issued November 19, 2019, the court denied the Special Master's request pending a full discussion with the parties at the December 13, 2019 quarterly status conference. ECF No. 6396. In so doing, the court stated:

> [D]efendants' failure to timely and clearly disclose to the Special Master and to plaintiffs their apparent intention to work under the auspices of the *Plata* Receiver to incorporate mental health regulations into the HC DOM appears at odds with the coordination process, not to mention tone deaf in light of the recent proceedings before this court occasioned by the Golding Report.

7

*Id*. at 3.

On January 7, 2020, the court issued an order granting the Special Master's request for an enlargement of time. ECF No. 6441. The court cautioned that, "[t]he decision to grant this extension of time does not mean the court will accept any particular proposal to integrate mental health regulations, including but not limited to provisions of the Program Guide, into the HC-DOM." *Id*. at 6.

In response to the court's order, the parties began negotiating a proposal through the All-Parties Workgroup. On February 6, 2020, defendants provided a revised proposal for annual revisions to the Program Guide which incorporated plaintiffs' proposed changes and included minor additions made by defendants. During a February 12, 2020 All-Parties Workgroup teleconference to discuss the revised proposal, the parties agreed in principle that defendants' final proposal, as written, could be filed with the court. However, in later discussions held on February 13, 2020 with the Special Master, the defendants made known for the first time that they had remaining concerns and wanted to reserve their right to have additional comments and seek clarity from the court.

The parties conferred again on February 14, 2020 in a last-ditch effort to reach an agreement. By the end of a series of teleconferences and just hours before the Special Master's filing deadline, the parties were able to reach some agreement regarding both the process for administrative updates to the Program Guide and the process for updates to Program Guide-related regulations and/or DOM provisions.

### III.    DIRECTIVES FROM THE JULY 3, 2019 ORDER

The court's July 3, 2019 order instructed the parties, under the guidance and supervision of the Special Master, "to develop an improved method for regular administrative updating of the 2018 Program Guide Revision and to develop a process for updates and revisions to any part of

the remedy found in state regulations and/or provisions of the California Department of Corrections and Rehabilitation's Department[] Operations Manual." ECF No. 6211. These two directives will be addressed in turn.

### A. ADMINISTRATIVE UPDATES TO THE PROGRAM GUIDE

As mentioned previously in this report, during a February 12, 2020 All-Parties Workgroup teleconference to discuss the revised proposal, the parties agreed in principle that defendants' final proposal, as written, could be filed with the court. However, the following day, February 13, 2020, in a teleconference with the defendants, the Special Master, and two of his monitors, the defendants curiously announced additional concerns with the mostly agreed upon proposal and further, wanted additional language added to the proposal to address their concerns. Specifically, the defendants were concerned that the proposal would be expanded in the future to include memoranda and policies that were not Program Guide-related and requested language be added to explicitly delineate what documents the proposal applied to, as well as those that would be excluded. The defendants argued that the addition of such language would preserve their flexibility and provide clarity.

Defendants' other concern related to timing. Within the proposal, the parties had agreed that if they were unable to come to an agreement after a second meet and confer regarding whether a policy was Program Guide-related, they would submit their respective positions to the Special Master. The Special Master would then review the parties' positions and offer his input. If the parties were still unable to agree after receiving the Special Master's thoughts, then the Special Master would file his recommendation with the court. During the February 13, 2020 teleconference, defendants stated that they wanted to add a fixed amount of time the Special Master had to make a recommendation to the court.

On February 14, 2020, the day of the filing, the parties came together one last time to see if an agreement could be made. During discussions on February 14, 2020, defendants proposed that updates to the measures attached as Appendix A to the stipulation of the parties filed December 19, 2019, ECF No. 6431, are not subject to the process outlined above for updates to the Program Guide. The Special Master disagrees. As the court stated in its February 10, 2020 order:

> 2. The list styled "Negotiated or Court-Ordered Remedial Measures Related to Custodial Issues Not Included in the 2018 Program Guide Revision" and attached as Appendix A to the stipulation of the parties filed December 19, 2019, ECF No. 6431, is approved and adopted as the complete list of remedies in this action related to custodial measures not already included in the Program Guide.
>
> 3. This list shall be updated and filed annually simultaneously with the updated Program Guide, consistent with the process and on the schedule to be proposed by the Special Master on or before February 14, 2020.

ECF No. 6460 at 2. The Special Master recommends that the update to this list be filed annually according to the same terms as the other Program Guide updates contained in Appendix A.

While a full agreement was not reached, progress was made with regard to the defendants' timing concern. As it stands, the parties will have 45 days to make a request for an additional meet and confer session if no agreement is made after the first meet and confer session. Relatedly, the Special Master will have 45 days to make a recommendation to the court if the parties are still unable to reach an agreement after receiving the Special Master's input. That said, the Special Master would be remiss if he failed to remind the defendants that they had ample time to raise these concerns in prior negotiations—they did not. Additionally, if at any time the Special Master believes that the administrative process for updates to the Program Guide is not working properly, he will not hesitate to make adjustments.

Accordingly, the Special Master submits that the current proposal is very well-written, narrowly tailored, and reflects what the parties want. Unfortunately, given the defendants' eleventh-hour concerns and clear lack of coordination, the parties were unable to stipulate to an agreed upon process for annual administrative updates to the Program Guide in its entirety. Nonetheless, the Special Master appreciates the parties' cooperation in working toward an agreement and requests that the proposal, attached hereto as Exhibit 1, be adopted.

### B. PROGRAM GUIDE-RELATED UPDATES AND REVISIONS TO STATE REGULATIONS AND THE DOM

As an initial matter, the Special Master must acknowledge that at some point along the way in the negotiation process related to the court's July 3, 2019 order, the discussion veered off track, and the focus shifted to the HC DOM. Indeed, as the Special Master stated in his November 15, 2019 request for an enlargement of time, "[t]he incorporation of mental health regulations into the Health Care DOM that is administered by CCHCS, an entity under the court-ordered supervision of the *Plata* Receiver, was not contemplated by the Special Master at the time he issued his report on the Program Guide update…." ECF No. 6390 at 4.

It is the Special Master's understanding that the *Plata* Receiver's efforts to put all of the proposed medical and dental regulations into either Title 15 as approved regulations or into the HC DOM took years to accomplish. There would be no reason to assume that this same arduous and lengthy process would be any quicker when putting Program Guide provisions into regulations or the HC DOM. Such a process may be appropriate at a future date when compliance with the Program Guide provisions is achieved with a measure of sustainability—but that date has not yet arrived. Accordingly, this submission does not address the possibility of the Program Guide going into regulations. That is an issue left for another day.

11

It bears repeating that the process to update the current Program Guide began in 2017 and was encouraged by the court in its order dated April 19, 2017. ECF No. 5610, n. 3. Nearly three years have passed since then and the parties are just now at the point of approving an agreed upon 2020 Program Guide. This will be the first update to the Program Guide in eleven years. Negotiating matters which should be ministerial in nature has proven to be laborious and time consuming.

The Special Master submits that it is time to get back on track and focus on the proper issue—the delivery of constitutionally adequate patient care. Furthermore, the Special Master proffers that his initial recommendation regarding the 90-day advance notice is reasonable, particularly in light of the defendants' past actions,[7] and requests that the court adopt it accordingly.

Defendants' objections to the recommendation, as outlined in their response to the Special Master's report on the Program Guide update, ECF No. 5862, are unwarranted. As the court previously acknowledged, the Special Master's intentions here are clear—"to protect the court-ordered remedy to avoid material modification of the remedy through the state regulatory process and without approval by this court." ECF No. 6211 at 15-16. The Special Master is not interested in slowing down the regulatory process or engaging in protracted litigation—neither approach provides any benefit to him, the parties, the court, or most importantly, the *Coleman* class members.[8] To the contrary, the Special Master is interested in preserving the fidelity of court orders. Moreover, and despite their objections, even defendants "do not oppose voluntarily

---

[7] *See* discussion *supra* at 7.

[8] Notwithstanding the bumps along the way, the Special Master wants to acknowledge the current administration's efforts in addressing major issues in this case. Within the first year, more progress has been made than in several years of the prior administration. For example, in this year alone, the parties have had successful negotiations concerning the Program Guide, transfers of *Coleman* class members from the desert institutions, and the development of a telepsychiatry policy. The Special Master appreciates the hard work put forth by the defendants throughout these negotiations.

providing the Special Master or Plaintiffs proposed regulations that may directly impact the delivery of mental health care to *Coleman* class members." ECF No. 5862 at 4. This is all that the Special Master requests—nothing more and nothing less.

The issue of updates to Program Guide-related regulations and DOM provisions was also discussed on the February 13, 2020 teleconference with the defendants, Special Master, and two of the Special Master's monitors. Initially, the defendants seemed to suggest that the 90-days advance notice that the Special Master was requesting was unworkable and that it would add considerable delay to an already long and drawn-out regulatory process. In addition, the defendants asked if the 90-days advance notice would just include the Special Master's review or if it would also include all meet and confer sessions. The defendants also asked about providing regulatory packages on issues that impacted *Coleman* class members, but were not, in their opinion, Program-Guide related. The defendants offered heat plans as an example.

During the teleconference on February 14, 2020, the parties were able to agree that the Special Master and plaintiffs would receive 90 days advance notice. Additionally, the parties agreed to meet and confer under the supervision of the Special Master within the next 30 days to determine what processes will take place within the 90-day review period.

During the February 14, 2020 teleconference, and regarding defendants' inquiry around regulatory packages, defendants stated that they were working in good faith and had no intentions to sneak through regulations related to the Program Guide. As the court previously admonished, " [s]o long as remediation is ongoing and supervised by this court, the process going forward for incorporating aspects of the court-approved remedy in this case into state regulation must be carefully and thoughtfully developed so that the regulatory process does not

13

become a vehicle for backdoor, substantive modification of the court-ordered remedy." ECF No. 6214 at 15.

## IV.  CONCLUSION

In view of all of the foregoing, the Special Master recommends that:

- The revised proposal, attached to this report as Exhibit 1, be adopted as the process for annual administrative updates to the Program Guide.

- The court adopt his recommendation that any proposed Program Guide-related regulations be provided to plaintiffs and the Special Master 90 days in advance of the public comment period, and/or any Program Guide-related policies currently incorporated into regulations that substantively change in the future.

- The court direct the Special Master to work with the parties to determine what processes will be conducted during the 90-day advance notice time period and report back to the court within 30 days on the outcome.

February 20, 2020                               Respectfully Submitted,


                                                /s/


                                                _____

                                                Matthew A. Lopes, Jr. Esq.
                                                Special Master

# EXHIBIT 1

**Proposal for Administrative Updates to the Program Guide and Negotiated or Court-Ordered Remedial Measures Related to Custodial Issues**

The Court's July 3, 2019 order directed the parties through the All Parties Workgroup process "[to] develop an improved method for regular administrative updating of the 2018 Program Guide Revision..." (ECF No. 6211 at 15-16, 19, amended by ECF 6214 at 3.)

The Special Master must submit his final proposal for this process to the Court by February 14, 2020 (1/7/2020 Order, ECF 6441 at 6.) CDCR provides this proposal in anticipation of discussions prior to this deadline.

1. Proposal for Review of Revisions to the Program Guide.

Whenever a party presents a proposed policy to the other party and the Special Master, the presenting party shall: (1) indicate whether the proposed policy would revise the operative version of the Program Guide, (2) provide a written rationale for the proposed changes and any other relevant context necessary to understand the proposed policy, and (3) state whether members of the Special Master team have had an opportunity to review and provide input regarding the proposed policy.

The responding party will have 30 days to provide written comments, which shall include, but not be limited to, that party's position regarding whether the policy is Program-Guide related, as well as proposed alternative language. The responding party may request an extension if required, that will not exceed 21 days. Within 21 days of receipt of the responding party's comments, the parties, along with the Special Master, shall meet and confer to determine if an agreement can be reached on the substance of the policy as well as its inclusion in the Program Guide.

If an agreement is not reached during the first meet and confer, the party that presented the proposed policy has 45 days to request, in writing, another meet and confer session. The responding party will submit its final position in writing within 21 days of the request for a second meet and confer. If the parties believe that a second meet and confer is warranted, that further session will be scheduled within 21 days of receipt of the responding party's final position.

If the parties cannot reach an agreement following the second meet-and-confer session, they will submit their positions and proposed language to the Special Master for review within 30 days. The Special Master will, within 30 days of receiving the parties' positions, provide the parties with his guidance and recommendation. If the parties are unable to reach an agreement after receipt of the Special Master's input, the Special Master will file a recommendation with the Court within 45 days.

If an agreement is reached through the above-outlined process, the parties will submit the agreed-upon modification to the Court for approval through a filing capturing all agreed-upon policy revisions reached in the prior 12 months. This modification will be filed annually beginning March 1, 2021.

1

By mutual agreement, any deadlines in this process may be extended by a reasonable amount of time to ensure that complex and meaningful negotiations are not arbitrarily truncated. If one party requests an extension of time, but the other party does not agree that one is warranted, the parties will submit the dispute to the Special Master for resolution.

# EXHIBIT 2

**Gribbin Rachel**

**Subject:** FW: Coleman: enacted regulatory changes affecting class members [IWOV-DMS.FID6429]

**From:** Jessica Winter <JWinter@rbgg.com>
**Sent:** Wednesday, November 07, 2018 5:25 PM
**To:** 'jerome.hessick@cdcr.ca.gov' <jerome.hessick@cdcr.ca.gov>; Nick Weber <Nicholas.Weber@cdcr.ca.gov>; 'melissa.bentz@cdcr.ca.gov' <melissa.bentz@cdcr.ca.gov>; 'dillon.hockerson@cdcr.ca.gov' <dillon.hockerson@cdcr.ca.gov>
**Cc:** Jay Russell <jay.russell@doj.ca.gov>; adriano.hrvatin@doj.ca.gov; Elise Thorn <Elise.Thorn@doj.ca.gov>; 'andrew.gibson@doj.ca.gov' <andrew.gibson@doj.ca.gov>; Tyler Heath <Tyler.Heath@doj.ca.gov>; 'tobias.snyder@doj.ca.gov' <tobias.snyder@doj.ca.gov>; 'ian.ellis@doj.ca.gov' <ian.ellis@doj.ca.gov>; Ciccotti, Christine@DSH <Christine.Ciccotti@dsh.ca.gov>; Rashkis, Sean@DSH <Sean.Rashkis@dsh.ca.gov>; Ekpo, Elaine@DSH <Elaine.Ekpo@dsh.ca.gov>; Mupanduki, Joanna@DSH <Joanna.Mupanduki@dsh.ca.gov>; Coleman Team - RBG Only <ColemanTeam-RBGOnly@rbgg.com>; Steve Fama <sfama@prisonlaw.com>; Jeffrey Bornstein <JBornstein@rbgg.com>; Coleman Special Master Team <ColemanSpecialMasterTeam@rbgg.com>
**Subject:** Coleman: enacted regulatory changes affecting class members [IWOV-DMS.FID6429]

Dear All,

In preparing for this week's meetings, we reviewed some of CDCR's proposed regulatory changes, which took effect January 1, 2018. *See* https://www.cdcr.ca.gov/Regulations/Adult_Operations/docs/NCDR/2018NCR/18-06/18-06.pdf. The proposed changes were published July 6, 2018 and the comment period ended on August 24, 2018. Defendants did not alert us to these apparently now-effective changes; instead, a member of our team found them.

A brief review of the proposed amendments shows that they promulgate changes in procedures relating to acute inpatient admissions, and also shift what appear to be medical decisionmaking responsibilities from medical doctors and psychiatrists to mental health clinicians. We have not had enough time to fully analyze the changes or to consider their full impact or import, but remain very concerned we were not even alerted that these regulations were being developed, much less implemented, despite their direct impact on class members.

We look forward to a discussion of these regulations, and steps for future proposed regulatory changes, at the policy meeting.

Sincerely,

Jessica Winter


**ROSEN BIEN GALVAN & GRUNFELD LLP**

101 Mission Street, Sixth Floor
San Francisco, CA 94105
(415) 433-6830 telephone

1

(415) 433-7104 facsimile
jwinter@rbgg.com

CONFIDENTIALITY NOTICE
The information contained in this e-mail message may be privileged, confidential and protected from disclosure. If you are not the intended recipient, any dissemination, distribution or copying is strictly prohibited. If you think that you have received this e-mail message in error, please e-mail the sender at rbgg@rbgg.com.
IRS CIRCULAR 230 NOTICE:  As required by United States Treasury Regulations, you should be aware that this communication is not intended by the sender to be used, and it cannot be used, for the purpose of avoiding penalties under United States federal tax laws.

2