REICHMAN JORGENSEN LLP
Shawna Ballard, State Bar No. 155188
Kate Falkenstien, State Bar No. 313753
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
Telephone: (650) 623-1401
Fax: (650) 623-1449
Email: sballard@reichmanjorgensen.com
    kfalkenstien@reichmanjorgensen.com

*Attorneys for Plaintiff-Intervenor Christopher Lipsey*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **RALPH COLEMAN, et al.**<br><br>                              Plaintiffs,<br><br>v.<br><br>**GAVIN NEWSOM, et al.,**<br><br>                              Defendants. | Case No. CIV S-90-0520 KJM DB P<br><br>**PLAINTIFF-INTERVENOR CHRISTOPHER LIPSEY'S REPORT REGARDING MEET-AND-CONFER ABOUT MOTION FOR TEMPORARY RESTRAINING ORDER**<br><br>Judge:         Hon. Kimberly Mueller<br>Action Filed:  April 23, 1990 |

Intervenor Christopher Lipsey filed a Motion for a Temporary Restraining Order ("TRO Motion") on February 14, 2020, seeking modifications to the Guard One protocol to reduce noise and allow Lipsey to sleep. *See* Brief in Supp. TRO Motion, Dkt. No. 6462-2. Last week, the Court directed the parties to "meet and confer to determine whether Lipsey's concerns regarding sleep deprivation can be addressed immediately," and to file a report about the discussion. Order Granting Mot. to Intervene, Dkt. 6487, at 5. Counsel for the plaintiff class, Defendants, and Lipsey spoke on March 3, 2020. Lipsey submits this report summarizing the discussion.

The parties discussed Lipsey's three proposals in his TRO Motion—reducing the frequency of the checks to once an hour, replacing the Guard One system with an alternative recording system, and ensuring the Guard One wands do not beep at night—as well as Defendants' alternative proposal to offer Mr. Lipsey earplugs.

At a high level, the parties disagreed about the purpose of the call, making compromise difficult. Defendants were not willing to discuss any possible solutions that would require modifying Court orders, taking the position that the Special Master would need to be involved in any such discussions. Lipsey believed the parties were directed to discuss such proposals amongst themselves to give the Court the benefit of the parties' positions on *possible* modifications, understanding that the Court would ultimately need to approve any changes to the existing orders and that the Court might wish to involve the Special Master. But Defendants were not willing or prepared to discuss any options except those consistent with existing orders (i.e., turning off the beeping at night in compliance with existing orders, or offering earplugs).

Turning to the specific proposals discussed, **first**, Lipsey proposed that Defendants ensure the Guard One wands do not beep at night. Counsel for Lipsey discussed this concern with him before the joint call, and reported that Lipsey continues to experience beeping at night, approximately once a week. Lipsey cannot identify the officers who use beeping wands, because it is often those who are not regularly assigned to the SHU/LTRH[1] and, in the dark, he cannot read their nametags. Lipsey intends to begin recording when officers use beeping wands so that

---

[1] Lipsey's counsel has confirmed that he is receiving the appropriate programming as an LTRH inmate. Lipsey reports that LTRH inmates are housed in the same physical space as the SHU at Corcoran, so this report refers to the SHU/LTRH jointly.

1

Defendants may cross-reference their personnel files to identify the officers involved. Defendants maintain that officers in the Corcoran SHU/LTRH have access to separate Guard One wands, some of which beep and some of which do not, and that no beeping wands are used at night.

In light of this factual dispute, Lipsey and plaintiffs' class counsel proposed four specific solutions: (1) Defendants could label the wands and/or the locations where the wands are stored to ensure officers do not accidentally pick up a beeping wand at night; (2) Defendants could offer training about the two types of wands, or could expand training to officers who only occasionally work in the SHU/LTRH in light of Lipsey's concerns that these temporarily assigned officers are often the ones who mistakenly use the beeping wands; (3) Defendants could permit a site inspection at Corcoran to view the labeling and storage of the wands and inspect their use at night; (4) Defendants could provide pictures of how the wands are stored and labeled. Defendants agreed to look into these options.

**Second**, Lipsey proposed that the Defendants conduct welfare checks only once an hour in Lipsey's unit, or alternatively use the Guard One system to record checks only once an hour. Defendants refused to take a position on this proposal without talking to the Special Master because of the importance of protecting inmates from suicide. Lipsey asked if the Defendants had any response to the evidence in the TRO Motion suggesting that the checks are ineffective in protecting inmates. Defendants were not prepared to discuss the evidence in Lipsey's Motion or any countervailing evidence in Defendants' possession.

**Third**, Lipsey proposed that the parties begin to evaluate alternative monitoring systems that could replace Guard One. For example, Lipsey proposed that the parties agree to a date by which Defendants would identify their positions on the alternatives presented in Lipsey's TRO Motion, agree to a date by which Defendants would propose any other alternative systems, or agree to preliminary meetings with the vendors Lipsey identified to get more information about whether they would be viable options. Defendants had not reviewed the options Lipsey presented in his Motion and were unwilling to discuss or agree to any concrete steps to evaluate alternative monitoring systems. Plaintiff's class counsel does not oppose considering alternative systems and supports collecting information to present to the Special Master.

**Fourth**, the parties discussed Defendants' proposal that Lipsey be offered earplugs. Lipsey's counsel had discussed this option with him before the joint call. Lipsey reported that he had been offered earplugs for the first time on March 2, by Lieutenant A. Randolph. Lipsey declined the offer and raised the same concerns to Lieutenant Randolph that counsel raised at last week's hearing: if Lipsey wears the earplugs, he will not be alert to any possible nighttime cell searches or inmate counts, and if he does not hear officers' orders during the night and thus does not comply, the officers may use physical force to ensure compliance. Lipsey reported that Lieutenant Randolph agreed that if Lipsey did not hear orders and did not comply, officers would be forced to come into his cell and physically awaken him. This situation has not faced Lipsey himself in the past, because he has not worn earplugs. However, Lipsey reported that he had witnessed another inmate who took heavy psychiatric medications fail to wake up for a nighttime search. In that case, officers entered the inmate's cell to awaken him. Startled out of his sleep and unaware that the intruders were officers, the inmate flailed and hit the officers, who then used significant force. The inmate was injured and charged with battery on an officer. This memory informs Lipsey's unwillingness to use earplugs.

Defendants argued that Lipsey's fear was too speculative because he has never personally failed to wake up for a nighttime order. Plaintiffs' class counsel responded that Lipsey's concern was reasonable and that they would not recommend that any inmate make himself vulnerable by wearing earplugs, because officers require inmates to be responsive to unexpected orders and often use force. Class counsel also argued that nighttime searches are relatively common. Defendants disagreed and contested that the incident Lipsey remembered had ever occurred, claiming that they had searched for disciplinary actions based on inmates' missing standing counts in the last 18 months and found none. However, the disciplinary action Lipsey remembers would probably not be directly based on missing a count; rather, an inmate might face discipline for his unintentional response when unexpectedly physically awakened, leading to a battery charge. Lipsey does not have access to Defendants' disciplinary records relating to other inmates to substantiate this fear, but both he and class counsel believe it is a reasonable one.

In short, Defendants have failed to provide any substantive response to the concrete

proposals in Lipsey's TRO Motion—in their opposition brief, last week's hearing, or this week's call. Defendants have identified no evidence that the existing system works to prevent suicide, that an alternative monitoring system is not equally viable, or that Lipsey is not suffering from sleep deprivation due to the existing system. Lipsey respectfully requests that the Court grant his Motion for a Temporary Restraining Order.

Dated: March 5, 2020  Respectfully submitted,

/s/ *Kate M. Falkenstien*

REICHMAN JORGENSEN LLP
Shawna L. Ballard (SBN 155188)
Kate Falkenstien (SBN 313753)
100 Marine Parkway, Suite 300
Redwood Shores, California 94065
Telephone: (650) 623-1401
Fax: (650) 623-1449
sballard@reichmanjorgensen.com
kfalkenstien@reichmanjorgensen.com

*Attorneys for Plaintiff-Intervenor Christopher Lipsey*