XAVIER BECERRA
Attorney General of California
MONICA N. ANDERSON
Senior Assistant Attorney General
ADRIANO HRVATIN
Supervising Deputy Attorney General
ELISE OWENS THORN, State Bar No. 145931
TYLER V. HEATH, State Bar No. 271478
KYLE A. LEWIS, State Bar No. 201041
LUCAS L. HENNES, State Bar No. 278361
Deputy Attorneys General
 1300 I Street, Suite 125
 P.O. Box 944255
 Sacramento, CA 94244-2550
 Telephone: (916) 210-7318
 Fax: (916) 324-5205
 E-mail: Elise.Thorn@doj.ca.gov
*Attorneys for Defendants*

ROMAN M. SILBERFELD, State Bar No. 62783
GLENN A. DANAS, State Bar No. 270317
ROBINS KAPLAN LLP
 2049 Century Park East, Suite 3400
 Los Angeles, CA 90067-3208
 Telephone: (310) 552-0130
 Fax: (310) 229-5800
 E-mail: RSilberfeld@RobinsKaplan.com
*Special Counsel for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **RALPH COLEMAN, et al.,**<br><br>　　　　　　　　　　Plaintiffs,<br><br>　v.<br><br>**GAVIN NEWSOM, et al.,**<br><br>　　　　　　　　　　Defendants. | 2:90-cv-00520 KJM-DB (PC)<br><br>**DEFENDANTS' RESPONSE TO THE SPECIAL MASTER'S REPORT ON THE PROPOSED PROCESSES FOR UPDATING THE 2018 PROGRAM GUIDE REVISION, STATE REGULATIONS, AND CHANGES TO CDCR'S DEPARTMENT OPERATIONS MANUAL** |

**INTRODUCTION**

On February 14, 2020, the Special Master filed his report that recommended proposed processes to update the 2018 Program Guide Revision related state regulations and relevant portions of the California Department of Corrections and Rehabilitation's (CDCR) Department Operations Manual (DOM). (ECF No. 6466.) Defendants and the Special Master agree on an important point—the State has expended significant effort and made substantial progress over the

1

1  past year to address major issues in this case. (*See id.* at 14 n.6.) These actions demonstrate
2  Defendants' continued commitment to providing a constitutionally adequate and sustainable
3  mental health services program for CDCR's patients. Defendants look forward to continuing
4  their work with the Special Master to identify solutions for outstanding issues and remain
5  confident that their collaborative efforts will advance all parties' interests in this case.
6  Defendants respond to the Special Master's report concerning Program Guide modification and
7  review of regulations within this collaborative and transparent process of exchanging information.
8      Defendants share the Court's interest in consolidating the Court's past decisions and
9  clarifying the record of this case, including by updating the Program Guide and compiling in one
10 useful compendium additional measures that, while separate from the Program Guide itself, are
11 relevant to the Program Guide. Recent discussions, however, have made clear that the parties and
12 the Special Master have a disagreement regarding the *content* of the new Program Guide.
13 Plaintiffs and the Special Master insist that the new Program Guide includes all negotiated or
14 Court-ordered remedial measures adopted in this action that cover custodial issues and that are
15 not included in the 2018 Program Guide Revision (the compendium of custody-related measures
16 contained in ECF No. 6431). Defendants disagree, pointing out that much of the content of these
17 measures, while relevant to the constitutional remedy in this case, does not represent Defendants'
18 assessment of what is required to remedy the Eighth Amendment violations in this action and
19 meet their constitutional obligations, and thus cannot be a part of the Program Guide. This
20 disagreement, in turn, has confused the discussions for establishing a process to update the
21 Program Guide, even though the parties agree that a clear process should be established for
22 updating the Program Guide and related policies.
23     Defendants reiterate their position that the proposal attached as Exhibit 1 to the Report is
24 only acceptable to the extent that it does not apply to updates to the compendium of custody-
25 related measures contained in ECF No. 6431, which Defendants maintain are distinct from the
26 Program Guide. Defendants propose that the Court permit further briefing on this matter, or in
27 the alternative, direct the parties to continue to work with the Special Master to develop a
28 comprehensive process for updating the remedial measures that are not part of the Program

2

Defs.' Resp. Special Master's Feb. 14, 2020 Report  (2:90-cv-00520 KJM-DB (PC))

Guide. Regardless, the comprehensive review and resolution of the process to update all parts of the remedy in this case should be deliberate and proceed with great care.

Defendants object to the Special Master's second recommendation concerning the process to update state regulations and the CDCR DOM. Specifically, Defendants object to the Special Master's recommendation that "[a]ny proposed Program Guide-related regulations be provided to plaintiffs and the Special Master 90 days in advance of the public comment period, and/or any Program Guide-related policies currently incorporated into regulations that substantively change in the future." (ECF No. 6466 at 14.) This is substantially the same recommendation as set forth in the Special Master's Report on the California Department of Corrections and Rehabilitation Mental Health Services Delivery System Program Guide Update, filed June 29, 2018. (ECF No. 5844.) Defendants restate and incorporate by reference their objections to this recommendation provided in their response to the June 29, 2018 report on July 23, 2018. (ECF No. 5862.) Defendants object to this recommendation because, absent the revisions Defendants proposed, it is excessive, will hinder the agency's emergency rule making and ability to respond to underground regulation challenges, and will add another three months to the regular rule making process. The proposed 90-day period, in addition to the 45-day notice and comment period already required under the California Administrative Procedure Act (Cal. Gov. Code § 11346.4) for non-emergency regulations, will potentially delay the enactment of CDCR regulations that go through the Special Master's process by approximately 4.5 months or 135 days.

Defendants also object to the Special Master's third recommendation, that "[t]he court shall direct the Special Master to work with the parties to determine what processes will be conducted during the 90-day advance notice time period and report back to the court within 30 days on the outcome" because it presupposes that the negotiation process will take 90 days. Defendants believe that before setting an advance notice time period, the parties must first assess the expectations for such a notice period. Once the parties have a greater understanding of what will be achieved during this time, the process for discussing and assessing modifications of Program Guide-related regulations can be determined. Accordingly, Defendants propose that the Court withhold its review of the second recommendation and, consistent with the third

3

Defs.' Resp. Special Master's Feb. 14, 2020 Report  (2:90-cv-00520 KJM-DB (PC))

recommendation, direct the Special Master to work with the parties to determine what processes will be conducted during the proposed regulatory 90-day advanced notice time period.

## DEFENDANTS' RESPONSE

### I. THE SPECIAL MASTER'S REPORT DOES NOT DISTINGUISH BETWEEN THE PROGRAM GUIDE AND OTHER REMEDIAL MEASURES FOUND IN COURT ORDERS, PLANS, POLICIES AND REGULATIONS.

The Court's July 3, 2019 order adopted the 2018 Program Guide Revision and directed the parties and the Special Master to prepare and file a document that identifies all negotiated or Court-ordered remedial measures adopted in this action that pertain to custodial issues and that are not included in the 2018 Program Guide Revision. (ECF No. 6466 at 9.) The order also directed the parties to develop a process to regularly update the 2018 Program Guide Revision and for updates and revisions to any part of the remedy found in state regulations or provisions of CDCR's DOM. (*Id*.) The Special Master's report and recommendations on these issues are concerning. While Defendants want to finalize the process to update the parts of the remedy found in state regulations and provisions of CDCR's DOM and future updates to the Program Guide, Defendants cannot agree that updates to remedial measures not included in the Program Guide (*i.e.*, custody-related policies, regulations and DOM) establish the constitutional floor for compliance purposes, and that that floor changes annually. For example, Appendix A to the December 19, 2019 filing (ECF No. 6431) includes a panoply of policies and regulations aimed not just at the *Coleman* class but at all inmates within the CDCR generally. Among the policies and regulations are those that govern the provision of housing assignments to all inmates (Title 15 section 3269), regulations governing record keeping on all inmates in segregation (Title 15, section 3344), and policies permitting local custody staff to move inmates between yards within the same institution with different custody levels. (*See*, *e.g*., August 8, 2016, memo, C&PS Approval for Movement to a Higher or Lower Level Facility Within the Same Institution.) While all of these policies are important for running a correctional facility, none are required for an inmate mental health system to meet the Eighth Amendment standard. Consequently, they do not "represent *defendants*' assessment . . . of what is required to remedy the Eighth Amendment

4

Defs.' Resp. Special Master's Feb. 14, 2020 Report  (2:90-cv-00520 KJM-DB (PC))

violations in this action" (ECF No. 4631 at 3 (emphasis in original)), and should not be a part of the Program Guide.

Defendants have stated their concerns during recent policy meetings between the parties and the Special Master. During the February 14, 2020 All Parties Workgroup, for example, Defendants stated that the process to update the Program Guide should be distinct from the process to update policies and measures that are separate from the Program Guide, such as the list of the measures identified in the parties' December 19, 2019 stipulation concerning custodial-related policies. (ECF No. 6431.) Accordingly, Defendants proposed that the following sentences be added to the end of the third full paragraph in Exhibit 1 to Special Master's report (ECF No. 6466 at 16) beginning with, "Whenever a party presents a proposed policy…":

> *"Proposed updates to policies and measures that are not a part of the Program Guide, including updates to any of the measures attached as Appendix A to the stipulation of the parties filed December 19, 2019, ECF No. 6431, are not subject to this process. To ensure transparency and appropriate input the parties will agree to a separate process for updating such items."*

In a letter dated March 4, 2020, Plaintiffs presented their position on the draft 2020 Program Guide and requested that the measures listed in ECF No. 6431 that are not publicly available be appended to the Program Guide. At the March 6, 2020 All Parties Workgroup, the Special Master stated that the Court expects to receive a hard copy of the Program Guide and its appendices, and that all of the custodial policies and orders in ECF No. 6431 are *part of* the Program Guide. This position appears to be in conflict with the orders distinguishing between the sum of the remedial plan in this case and a separate compendium of custody-related policies that are included as a reference for parts of the remedial plan. (ECF Nos. 6214 at 2, 6460 at 2 ("this list shall be updated and filed annually with the updated Program Guide").) The Special Master's recommendation applies the same process for annually updating the Program Guide to updating the custody-related policies, regulations, and orders identified in ECF No. 6431, even though much of the content is not related to the operation of CDCR's patient mental-health system. (*Supra*.)

5

Defs.' Resp. Special Master's Feb. 14, 2020 Report  (2:90-cv-00520 KJM-DB (PC))

Defendants believe that there should be a separate process for revising and updating materials that are not currently part of the Program Guide, as reflected in their proposed language that was excluded from Exhibit 1, and request the opportunity to further brief the Court on this issue, or, in the alternative, direction to work with the Special Master and Plaintiffs to resolve this issue. Defendants request that the Court only approve the Special Master's proposal for administrative updates to the Program Guide and other measures not contained in the Program Guide if it includes the provisions that Defendants requested be added to Exhibit 1. Defendants further propose that the Court direct the Special Master and the parties to meet and confer regarding a separate process for updating the measures not contained in the Program Guide, with the Special Master to report back to the Court within 30 days. Defendants believe that this presents an opportunity for the Special Master and parties to discuss the process for developing benchmarks in this litigation, including a measure of compliance with the Program Guide that is distinct from compliance with policies and state regulations that are not part of the Program Guide.

### A.  The Program Guide Is Only Part of the Remedy in This Case.

The Court's orders establish that the Program Guide is not the sum total of the remedy in this case. In 2013, the Court held that the "Program Guide represents the bulk of the operative remedy." (ECF No. 4361.) On July 9, 2019, the Court reminded the parties that "[t]he remedy for custodial violations of the Eighth Amendment are in the DOM and state regulations." (ECF No. 6214 at 2.) The Court expounded on that statement in its October 8, 2019 order, which did not require the inclusion of custodial policies and related orders themselves in the Program Guide; rather, the Court described the listed policies and orders as part of the remedy in this case akin to staffing plans and mental health bed projections, which are also parts of the general remedial plan that are not included in the Program Guide. (ECF No. 6214 at 2.)

### B.  The List of Remedial Measures Related to Custodial Issues Serves as a Reference for Parts of the Remedy Not Included in the Program Guide.

The July 9, 2019 order distinguishes the list of remedial measures related to custodial issues as a part of the remedy separate from the Program Guide. The Court separated the "Compendium

6

of Additional Settled Remedial Measures" from the sections of the order discussing the contents of the 2018 Program Guide Revision and updates to that revision.  Further, the Court required the parties to file a document "that identifies all negotiated or court-ordered remedial measures adopted in this action that cover custodial issues and are not included in the 2018 Program Guide Revision."  (ECF No. 6214 at 2.)  The Court referred to the filing as a "companion document to the 2018 Program Guide Revision," the purpose of which was to "memorialize the additional remedial planning not reflected in the Program Guide itself."  (*Id.* at 4.)

The February 11, 2020 order also distinguishes the list of custody-related measures from the Program Guide.  The order describes the list as "the complete list of remedies in this action related to custodial measures not already included in the Program Guide."  (ECF No. 6460 at 2.)  And the Court also ordered that the list "shall be updated and filed annually simultaneously with the updated Program Guide, consistent with the process and on the schedule to be proposed by the Special Master on or before February 14, 2020."  (*Id.*)  If the Court's directive intended for the policies and regulations to be incorporated into the Program Guide, the list to be updated concurrently with the Program Guide would be unnecessary and redundant.

Finally, Defendants are unaware of any order, report of the Special Master, or practice that considers custodial regulations found in Title 15 or actual sections of the Inmate Medical Services Policies and Procedures[1] to be part of the Program Guide.  Instead, parts of those regulations and policies and procedures serve as part of the remedy in this case, just like Court-ordered bed and staffing plans.  But they are not properly considered part of the Program Guide and should not be appended as part of the Program Guide.  As stated above, while a list of regulations could properly be appended to the Program Guide as a point of reference, the actual regulations themselves should not be appended to the Program Guide as part of the Guide itself.

---

[1] The Inmate Medical Services Policies and Procedures have since been integrated into CDCR's Health Care Departmental Operations Manual.

7

### C. The Special Master's Proposed Updating Process Will Unnecessarily Expand the Program Guide's Scope.

The Court has repeatedly reminded the parties that the time for changing the Program Guide is over. (ECF No. 6214 at 14 and ECF No. 5710 at 17-18.) The Court adopted the 2018 Program Guide and directed the parties to develop a process for updating it. (*Id.* at 15.) But the Court's orders have recognized that other parts of the remedy exist separate and apart from the Program Guide, such as the list of negotiated or court-ordered remedial measures related to custodial issues not included in the Program Guide. Contrary to this structure, the Special Master now recommends including in the Program Guide, for the first time, policies, orders, and regulations that have historically been separate. For instance, inclusion of the various policies and regulations outlined in Appendix A to the December 19, 2019, filing (ECF No. 6431), would merge policies found in regulations and the Defendants' Department Operations Manual, among other sources, into the Program Guide. Custody regulations and their related policies would now be found in both Title 15 and CDCR's Program Guide. creating confusion amongst staff tasked with implementing policy. And adding custody-related policies and any other policy previously held to be apart from the Program Guide into the Program Guide would again alter the standard for constitutional compliance.

### D. The Court Should Not Alter the Fundamental Character of the Program Guide.

To the extent that the Court orders that all of the measures attached as Appendix A to the stipulation of the parties filed December 19, 2019, ECF No. 6431, are part of the Program Guide, it does so over Defendants' objections and despite Defendants' express position that not all of the contents are part of the remedy in this case. The updated Program Guide will therefore not "represent *defendants'* considered assessment . . . of what is required to remedy the Eighth Amendment violations in this action and meet their constitutional obligation to deliver adequate mental health care to seriously mentally ill inmates." ECF. No. 4631 at 3 (emphasis in original); *Coleman v. Brown*, 938 F. Supp. 2d 955, 981 (E.D. Cal. 2013).

8

Defs.' Resp. Special Master's Feb. 14, 2020 Report  (2:90-cv-00520 KJM-DB (PC))

## II. THE COURT SHOULD NOT APPROVE THE 90-DAY NOTICE PERIOD CONCERNING PROGRAM GUIDE-RELATED REGULATIONS.

As articulated in their objections to the Special Master's June 29, 2018 report on Program Guide Updates (ECF No. 5862), Defendants are amenable to providing the Special Master and Plaintiffs with notice of proposed regulations directly concerning the delivery of mental health care to *Coleman* class members in advance of the public comment period. But the definition of "Program Guide-related regulations" set forth in the Special Master's second recommendation is unbounded and could be interpreted to extend far beyond regulations directly addressing the delivery of mental health care to CDCR patients. In addition, as currently proposed, the recommended 90-day period is excessive; the Special Master's concern that he and his team and Plaintiffs receive advance notice of promulgated regulations can be addressed with a shorter review period. Finally, while Defendants believe that an advanced period for discussion and negotiation with Plaintiffs and the Special Master will help expedite final approval of proposed regulations, Defendants believe it should be made clear that the Special Master and Plaintiffs do not have veto authority over Defendants regulations or a right to preapprove agency decisions, either of which would improperly intrude on Defendants' rule-making authority as California state entities.

### A. The 90-Day Advance Notice Period Is Excessive.

Defendants do not object in principle to providing advance notice of proposed regulations and policies to Plaintiffs and the Special Master. However, a 90-day advance notice period for every regulation is excessive, especially in light of the Special Master's apparently broad understanding of the Program Guide and "Program-Guide related regulations." The Special Master argues that the 90-day period is needed because CDCR has a history of approving and implementing regulations without first providing the Special Master and Plaintiffs an opportunity for review, citing a November 2018 email from Plaintiffs regarding "C-status." (ECF 6466 at 7, 19.) But the Special Master's description is not accurate. In 2017, the parties negotiated changes to C-Status, a process that existed long before 2017, to increase minimum out of cell time and property and privileges to inmates on C-Status. However, the regulations Plaintiffs complained

9

Defs.' Resp. Special Master's Feb. 14, 2020 Report  (2:90-cv-00520 KJM-DB (PC))

of, section 3044(b)(4)(A) and (B), did not relate to the 2017 negotiations, but to other aspects of C-status that were unrelated to the negotiation. CDCR subsequently put forward to the Plaintiffs and Special Master a C-status regulation package that incorporated the 2017 negotiations. Both that regulation package and Plaintiffs' erroneous reading of the 2018 regulation package was addressed in CDCR's May 6, 2019 letter concerning this subject.

Defendants believe that their previously proposed 30-day advance notice period is more conducive to effective review and action that would satisfy the Special Master and Plaintiffs. (ECF No. 5862.) A three-month advance notice obligation combined with the required public comment period (45 days) could unduly delay changes in regulations, especially if changing circumstances or an emergency situation create the need to adapt a specific policy as rapidly as possible. Such an extended notice period specifically would impede the Department of State Hospitals' ability to devise and promulgate regulatory modifications necessary to address its unique operating mission and population, of which CDCR mental health patients are only a very small portion.

In addition, the California Administrative Procedures Act (APA) mandates that state agencies proposing a regulatory change prepare a comprehensive package of information and support to be provided to the Office of Administrative Law and made available publicly in advance of the public comment period. *See* Cal. Gov. Code § 11340, *et seq*. As previously reported by Defendants, this process already provides the public a 45-day comment period for regular rule-making. (ECF No. 5862 at 6, n.2, at 7, n.3.)

The Special Master recommends a 90-day special notice period prior, and in addition to, the 45-day public comment period. Such a 90-day advance reporting requirement may interfere with the processes of developing the notice of proposed rulemaking and supporting documentation, or might require the submission of proposed regulations prior to the creation of supporting documentation. The uncertainty concerning the proposed 90-day notice period is reflected in the Special Master's third recommendation, which asks the Court to direct the Special Master to work with the parties on what processes will be conducted during that time. (ECF No. 6466 at 14.) Defendants believe that the Court should table its approval of the second recommendation and

10

Defs.' Resp. Special Master's Feb. 14, 2020 Report  (2:90-cv-00520 KJM-DB (PC))

1  direct the parties to determine what processes must occur and then determine the appropriate
2  length of time for accomplishing those tasks.
3      Defendants propose that the Court decline the requested 90-day advanced notice for
4  Program-Guide regulations, and instead direct the Special Master and the parties to discuss the
5  processes that will be expected to occur during any advance notice period.  Defendants further
6  propose that, following these discussions, the Special Master report back to the Court concerning
7  the proposed length of a notice period, what processes will be conducted during that period, and
8  greater clarity as to the regulations that will be covered by the proposal.
9      **B.    The Term "Program Guide-Related" Is Vague and Overbroad.**
10     The Special Master's recommended 90-day advance notice period potentially encompasses
11 a broad swath of regulations and policies that do not directly relate to the delivery of mental
12 health care to *Coleman* class members.  For example, his June 29, 2018 report defines the term
13 "Program Guide-related policies" to mean "any and all policies which impact the delivery of
14 mental health care to *Coleman* class members, e.g, custody-related policies (RVR, etc)."  (ECF
15 No. 5844 at 9 fn.7.)  The acronym "RVR" refers to "Rules Violation Report," the form by which
16 correctional staff report discipline inmates for violating prison rules.  *See* Cal. Code Regs., tit. 15
17 § 3312(a)(3).  The RVR process applies generally to all inmates in California; while existing
18 RVR regulations include provisions directly relating to mental health, such as those requiring a
19 Mental Health Assessment for certain patients alleged to have committed a rules violation, *see id.*
20 § 3317(b), the Special Master's June 29, 2018 RVR definition is not so limited.
21     The terms "custody-related" and "RVR" suggest that the Special Master conceives of the
22 term "Program Guide-related" to be quite expansive, potentially including any regulations that
23 tangentially impact the delivery of care to *Coleman* class members regardless of whether these
24 regulations are directed specifically at the delivery of mental health services or primarily impact
25 *Coleman* class members.  But many policies may impact the delivery of mental health care that
26 are not directly related to policies within the 2009 Program Guide, such as regulations relating to
27 the movement of inmates, security levels, lockdown procedures, or parole.  Defendants are
28 concerned that a vague definition of "Program Guide-related regulations" could be interpreted

11

Defs.' Resp. Special Master's Feb. 14, 2020 Report  (2:90-cv-00520 KJM-DB (PC))

broadly to include any regulation promulgated or modified by Defendants, and are seeking to avoid a misunderstanding that would further consume the Special Master's and the parties' attention or lead to confusion.  Defendants are committed to the transparent development of regulations impacting CDCR's mental health system and want to reach a common understanding of what those regulations would be.  This will help all stakeholders determine which policies should be brought to the group for discussion and which can be properly excluded.  Accordingly, Defendants request that the scope of the Special Master's recommendation be narrowed to regulations directly concerning the delivery of mental health care to *Coleman* class members.

### C. The Advanced-Notice Requirement Is Not Intended to Provide the Special Master With Authority to Pre-Clear Agency Policies.

The July 9, 2019 order provides a clear signal to Defendants that the state regulatory process should not be used as a "vehicle for backdoor, substantive modification of the court-ordered remedy."  (ECF No. 6214 at 15.)  Nevertheless, the Special Master's recommendation for a 90-day advance notice requirement goes further than necessary to ensure that policies impacting *Coleman* class members are consistent with the full remedy in this case.  In his June 29, 2018 report, the Special Master stated that the purpose of the advance-notice requirement is to "allow time for review and discussion to determine whether any such proposed policy warrants inclusion in a future Program Guide update."  (ECF No. 5844 at 9.)  But this concern is satisfied by the February 11, 2020 order that requires CDCR to update the list of custody-related policies and regulations an annual basis simultaneously with Program Guide Updates.  Also, the proposed process (ECF No. 6466 at 16-17, Exhibit 1 to the Special Master's report) also provides the vehicle for working through whether a given policy is related to the Program Guide.  As part of the administrative rule-making process, Defendants are amenable to accepting commentary from Plaintiffs or the Special Master as to proposed regulatory changes and discussing whether and how regulatory changes should be reflected in Program Guide modifications.  Indeed, to make this process more efficient and effective from the outset, the Special Master and parties should have greater clarity concerning what policies are "Program-Guide related."

Defs.' Resp. Special Master's Feb. 14, 2020 Report  (2:90-cv-00520 KJM-DB (PC))

However, Defendants are concerned that the advance-notice requirement might expand into a system by which the Special Master is afforded the de facto right to develop state policy or exercise pre-clearance authority over state regulation. Such an exercise would exceed the authority granted to the Special Master under Federal Rule of Civil Procedure 53, the Court's Order of Reference (ECF No. 640), and the PLRA (*see* 18 U.S.C. § 3626(a)(1)(A), (f))—none of which contemplate a Special Master prospectively micromanaging or dictating agency policy.

Accordingly, Defendants believe that the Court should make clear that while the advance notice requirement would provide the Special Master and Plaintiffs with the opportunity to comment on proposed regulatory actions, they would not be granted authority over final decisions beyond that normally afforded to outside commenters under the APA. Defendants further believe that an appropriately tailored advance notice period would reasonably limit the Special Master's influence over state rule-making and assuage their concerns in this regard.

## CONCLUSION

Defendants ask the Court to add their proposed language to Exhibit 1 of the Special Master's report, as detailed above, approve the administrative update proposal, and direct the parties to develop a process for updating policies and measures that are not part of the Program Guide. Defendants ask the Court to not approve the Special Master's second recommendation proposing a 90-day advance notice period for Program Guide-related regulations, and instead, focus the Special Master and parties toward the third recommendation calling for greater discussions on the processes that would occur during such an advance notice period.

## CERTIFICATION

Defendants' counsel certifies that she reviewed the following orders relevant to this filing: ECF No. 4361, ECF No. 5610, ECF No. 5750, ECF No. 6211, ECF No. 6214, ECF No. 6271, ECF No. 6295, ECF No. 6441, and ECF No. 6315.

13

Defs.' Resp. Special Master's Feb. 14, 2020 Report  (2:90-cv-00520 KJM-DB (PC))

| | |
|---|---|
| Dated: March 16, 2020 | Respectfully submitted,<br><br>XAVIER BECERRA<br>Attorney General of California<br>ADRIANO HRVATIN<br>Supervising Deputy Attorney General<br><br>/s/ *Elise Owens Thorn*<br><br>ELISE OWENS THORN<br>Deputy Attorney General<br>*Attorneys for Defendants* |

CF1997CS0003

14

Defs.' Resp. Special Master's Feb. 14, 2020 Report  (2:90-cv-00520 KJM-DB (PC))