XAVIER BECERRA, State Bar No. 118517
Attorney General of California
ADRIANO HRVATIN, State Bar No. 220909
Supervising Deputy Attorney General
ELISE OWENS THORN, State Bar No. 145931
TYLER V. HEATH, State Bar No. 271478
KYLE A. LEWIS, State Bar No. 201041
LUCAS HENNES, State Bar No. 278361
Deputy Attorneys General
 455 Golden Gate Avenue, Suite 11000
 San Francisco, CA 94102-7004
 Telephone: (415) 510-3585
 Fax: (415) 703-5843
 E-mail: Kyle.Lewis@doj.ca.gov
*Attorneys for Defendants*

ROMAN M. SILBERFELD, State Bar No. 62783
GLENN A. DANAS, State Bar No. 270317
ROBINS KAPLAN LLP
 2049 Century Park East, Suite 3400
 Los Angeles, CA 90067-3208
 Telephone: (310) 552-0130
 Fax: (310) 229-5800
 E-mail: RSilberfeld@RobinsKaplan.com
*Special Counsel for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **RALPH COLEMAN, et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**GAVIN NEWSOM, et al.,**<br><br>Defendants. | 2:90-cv-00520 KJM-DB (PC)<br><br>**STIPULATION AND [PROPOSED] ORDER APPROVING THE CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION'S TELEPSYCHIATRY POLICY** |

On January 17, 2020, Defendants and Plaintiffs attended a settlement conference before District Judge Dale A. Drozd, with the Special Master and his experts also present. (ECF Nos. 6429, 6449.) The conference's purpose was to foster agreement among the parties concerning a policy on the California Department of Corrections and Rehabilitation's (CDCR) use of telepsychiatry to provide psychiatric services to its patient population.

Before the conference, Defendants circulated a proposed policy defining CDCR's use of telepsychiatry for patients at various levels-of-care in the Mental Health Services Delivery System (MHSDS) and related operational and administrative details. With Judge Drozd's assistance, the parties, with guidance from the Special Master and his experts, negotiated aspects

of Defendants' proposal and reached an agreement in principle concerning CDCR's telepsychiatry policy. After the conference, Defendants prepared a revised policy reflecting the parties' collective work, and the parties continued to meet, confer, and discuss the policy with input from the Special Master.

On February 12, 2020, the parties reached an agreement on the terms of CDCR's telepsychiatry policy, which is entitled *Telepsychiatry* and submitted as Exhibit A. The parties agree that this is a provisional policy that will not be part of the MHSDS Program Guide, and that the provisional period will last eighteen months from the date of the policy's full implementation throughout CDCR, which will occur within 120 days of the date of the Court's approval of this stipulation. During this 120-day period, Defendants will complete the internal monitoring process which will allow Defendants to provide notice to Plaintiffs and the Special Master, as required by the provisional policy. If Defendants believe that the 120-day period may need to be extended due to the COVID-19 pandemic impacts on CDCR, they will meet and confer with Plaintiffs' counsel and the Special Master concerning an extension. If no agreement is reached, Defendants may seek an order from the Court extending the 120-day period. Defendants will provide regular updates to Plaintiffs' counsel and the Special Master regarding the progress of developing and implementing the internal monitoring process. The parties further agree that this policy replaces all previous policies concerning CDCR's use of telepsychiatry, and that it will be CDCR's operative telepsychiatry policy during the provisional period, unless and until otherwise modified upon the agreement of the parties and the Special Master.

During the provisional period, the Special Master will monitor the use of telepsychiatry under the provisional policy. After completion of the eighteen-month provisional period, the parties will meet and confer with the assistance of the Special Master concerning a final telepsychiatry policy. The parties will have 30 days from the end of the provisional period to determine whether any alterations to the provisional policy are necessary. If no alterations are necessary, Defendants will submit the final telepsychiatry policy for the Court's approval. If a party proposes to alter the provisional policy, the parties, under the guidance of the Special Master, will have a total of 60 days from the end of the provisional period to agree on a modified

final policy.  If no resolution is reached, the parties have 90 days from the end of the provisional period to submit their positions and proposed language for the final telepsychiatry policy to the Special Master for review.  The Special Master will, within 30 days of receiving the parties' positions, provide the parties with his guidance and recommendation.  If the parties are unable to reach an agreement after receipt of the Special Master's input, the Special Master will file a recommendation with the Court within 45 days, after which the parties' will have 30 days to respond consistent with the Order of Reference (ECF No. 640).

    The Special Master has reviewed and concurs with this stipulation.

    **IT IS SO STIPULATED.**

Dated:  March 25, 2020

XAVIER BECERRA
Attorney General of California
ADRIANO HRVATIN
Supervising Deputy Attorney General

/S/ *Kyle A. Lewis*
Kyle A. Lewis
Deputy Attorney General
*Attorneys for Defendants*

Dated:  March 25, 2020

ROSEN BIEN GALVAN & GRUNFELD LLP

/S/ *Lisa Ells*
Lisa Ells
*Attorneys for Plaintiffs*

    **IT IS SO ORDERED.**

Dated:  _____         _____
KIMBERLY J. MUELLER
UNITED STATES DISTRICT COURT

# EXHIBIT A

| | | |
|---|---|---|
| **VOLUME 12:**<br>MENTAL HEALTH SERVICES | Effective Date: | |
| **CHAPTER 8:**<br>PSYCHIATRY SERVICES | Revision Date(s): | |
| | Supersedes: | |
| **12.08.100**<br>TELEPSYCHIATRY | Attachments: | Yes ☐ No ☒ |
| | Director Approval: | |

**Policy**  The Telepsychiatry Program enables psychiatrists to provide real-time psychiatric evaluations and treatment to patients by utilizing videoconferencing to facilitate live communication between the telepsychiatrist, the patient, and the patient's treatment team. Telepsychiatry is designed to facilitate improved patient outcomes and thereby reduce the need for hospitalization and emergency services. Telepsychiatric services, as stated in this policy and procedure, can be a safe and efficient vehicle to provide psychiatric care to CDCR's mental health population.

The Telepsychiatry Program provides mental health services to the Correctional Clinical Case Management System (CCCMS) level of care and may, under specified circumstances outlined in this policy and procedure, be used for higher levels of mental health care. On-site psychiatrists shall remain the preferred method of psychiatric care for Enhanced Outpatient Program (EOP), Mental Health Crisis Bed (MHCB), and Psychiatric Inpatient Program (PIP)[1] programs. To ensure continuity of care for patients within the program, telepsychiatrists will work from CDCR-operated California hubs supervised by local civil service psychiatry supervisors and will be assigned to caseloads at the institution(s) they serve. As appropriate, some telepsychiatrists may not be assigned to caseloads and may instead be used as short term coverage for times when the assigned on-site psychiatrist or telepsychiatrist is unavailable to provide treatment to his or her assigned caseload. For purposes of this assignment, registry telepsychiatrists who have less than five years of experience working for CDCR or the Department of State Hospitals will not be assigned.

**Definitions**

The following term is defined for use in this policy only:

- Supplement means at least 1.0 personnel year (PY) equivalent on-site psychiatrist shall be assigned to each EOP program (e.g., EOP General Population, EOP Administrative Segregation Unit Hub, or Psychiatric Services Unit) per yard at each institution. For each program on a yard that is allocated less than 1.0 PY equivalent for psychiatry per the current approved Staffing Plan, the position shall be filled by on-site psychiatrists. Whenever possible, the assigned on-site psychiatrist shall be full-time, as opposed to assigning several part-time psychiatrists to provide EOP care.

**Equipment**

The telepsychiatrist shall be given the following equipment and resources:
- Computer, monitor, speaker, microphone, camera, scanner/printer (can be individual and/or shared), and phone with access to an outside line.

---

[1] PIP units provide Acute Psychiatric Program (APP) and Intermediate Care Facility (ICF) levels of care.

- A single, enclosed, and confidential office space with a door, desk, and chair. This office space will be sound-proofed, where possible.
- Computer access to all resources, or equivalent resources utilized by on-site psychiatrists.
- Internet access of sufficient speed and stability to allow a videoconference where patient and telepsychiatrist can be seen and heard clearly.
- Access to the Electronic Health Records System (EHRS).

**Professional and Patient Identity**

At the beginning of an initial appointment with a patient, the telepsychiatrist's and patient's identities shall be verified verbally and/or by showing their CDCR-issued photo identification card on the video screen. At the beginning of the patient's first telepsychiatry contact, the telepsychiatrist shall explain the treatment modality, including a description of the role of the tele-presenter (an institutional staff member in an approved clinical classification who facilitates patient encounters with the telepsychiatrist), a plan for a response to interruption in services, and conditions under which a referral is made to in person care.

**Participation in Interdisciplinary Treatment Teams, Meetings, and Huddles**

Telepsychiatrist participation in the Interdisciplinary Treatment Teams (IDTT) is required. As such, telepsychiatrists shall participate in the receiving institution's IDTT meetings. To facilitate telepsychiatrists' participation in IDTTs, IDTT meetings that include a telepsychiatrist shall be held in a location that is appropriately wired to allow for the telepsychiatrist's full participation when their patients are being reviewed.

In addition to IDTT meetings, telepsychiatrists shall participate to the same extent as on-site psychiatrists in all meetings and huddles relevant to the clinical care of their patients.

**Refusals**

If a patient refuses treatment via telepsychiatry, the patient's telepsychiatrist may meet with the other members of the patient's treatment team to consider mental health reasons, behavioral issues, custodial issues, and any other relevant factors to determine whether telepsychiatry is an appropriate delivery method for the patient. The treatment team may work toward resolving any issues contributing to the patient's refusal of telepsychiatry services. A member from the treatment team may utilize brief, focused cell-front discussions with the patient to determine the reasons for appointment refusals. If the patient requires a psychiatric contact, the telepsychiatrist may request a consultation from an on-site provider or conduct a cell-front telepsychiatry contact, as clinically required.

If the treatment team has not been successful in resolving the patient's refusal of telepsychiatric visits, a formal IDTT meeting shall be convened. During this IDTT meeting, the treatment team shall develop a plan to address the reasons for the patient's refusals and contingency plans shall also be made to provide in-person psychiatric care to the patient.

If the treatment team concludes telepsychiatry is not an appropriate treatment modality for the patient because of refusals, the team shall report this finding to the Mental Health Leadership (Chief and/or Senior Psychiatrist and Chief of Mental Health) of the institution receiving telepsychiatry services as well as the Chief of Telepsychiatry. If it is determined that the patient is not appropriate for telepsychiatry, the Chief of Telepsychiatry will work

with the Mental Health Leadership at the institution to ensure the patient has access to appropriate on-site psychiatric treatment.

### Cell Front Telepsychiatry

Telepsychiatry may be used cell front when it is necessary for the telepsychiatrist to speak with the patient and the patient does not attend the scheduled appointment. However, non-confidential telepsychiatry contacts, including cell-front contacts, shall not be considered a Program Guide required clinical contact under any circumstance.

### Contraindications for Telepsychiatry

Patients shall not be entirely excluded from participation in the Telepsychiatry Program based solely on their level of care or their diagnosis. If the telepsychiatrist and Chief of Telepsychiatry determine that the patient needs to be seen by an on-site psychiatrist, he or she will work with the Mental Health Leadership at the institution (Chief and/or Senior Psychiatrist and Chief of Mental Health) to make sure the patient has an appropriate on-site psychiatrist assigned. Similarly, if the treatment team thinks that telepsychiatry is not appropriate for a patient, the team will work with Mental Health Leadership to make sure that the patient is assigned to an on-site psychiatrist.

### Telepsychiatry and Levels of Care

Telepsychiatrists will be assigned to CCCMS, unless they are needed to supplement in the EOP program or there is an emergency situation as determined by Mental Health headquarters. If an institution requires telepsychiatry services, on-site psychiatrists shall be assigned to the higher levels of care.

### Correctional Clinical Case Management Services

Telepsychiatry may replace on-site psychiatry at the CCCMS level of care provided all other conditions pertaining to the CCCMS level of care contained within this policy are adhered to and good faith efforts to recruit on-site psychiatrists continue.

### Enhanced Outpatient Program

Telepsychiatry may supplement on-site psychiatry at the EOP level of care, but it should not replace on-site psychiatry. On-site psychiatrists shall remain the preferred method of psychiatric care for each program providing EOP level of care, consistent with the requirements of the current approved Staffing Plan. Good faith efforts shall be made to recruit and retain on-site psychiatrists to provide services at the EOP level of care. If these good faith efforts are unsuccessful, psychiatric services may be supplemented via telepsychiatry consistent with the requirements described in other sections of this policy and procedure. If an EOP program does not have the on-site psychiatry required by this policy for 30 consecutive calendar days that would not be consistent with this policy's objectives. In such a case, CDCR headquarters shall immediately provide notice via electronic mail to the Special Master and Coleman Plaintiffs' counsel. Within 60 calendar days from the provision of notice, CDCR headquarters shall also provide a plan to address the staffing issue or provide information regarding how that issue has been resolved.

### Mental Health Crisis Bed

Telepsychiatry may not be used at the MHCB level of care except as a last resort in emergency situations when an on-site psychiatrist is not assigned to the program. Good

faith efforts shall be made to recruit and retain on-site psychiatrists to provide services at the MHCB level of care. If these good faith efforts are unsuccessful, psychiatric services may be provided via telepsychiatry. If a telepsychiatrist is required to serve in an MHCB for greater than 14 consecutive calendar days, this would not be consistent with this policy's objective. In such a case, CDCR headquarters shall immediately provide notice via electronic mail to the Special Master and Coleman Plaintiffs' counsel. Within 16 calendar days from the provision of the notice, CDCR headquarters shall also provide a plan to address the staffing issue or provide information regarding how the staffing issue was resolved.

**Psychiatric Inpatient Program**

Telepsychiatry may not be used at the PIP level of care except as a last resort in emergency situations when an on-site psychiatrist is not assigned to the program. Good faith efforts shall be made to recruit and retain on-site psychiatrists to provide services at the PIP level of care. If these good faith efforts are unsuccessful, psychiatric services may be provided via telepsychiatry. If a telepsychiatrist is required to serve in a PIP for greater than 30 consecutive calendar days, this would not be consistent with this policy's objective. In such a case, CDCR headquarters shall immediately provide notice via electronic mail to the Special Master and Coleman Plaintiffs' counsel.  Within 30 calendar days from the provision of the notice, CDCR headquarters shall also provide a plan to address the staffing issue or provide information regarding how the staffing issue was resolved.

**Clinical Emergency Management**

If a clinical emergency arises during a telepsychiatry session (for example, a suicidal, violent or homicidal patient), the telepsychiatrist shall immediately notify the appropriate institution staff as identified by the institution's LOP. The telepsychiatrist shall coordinate with institutional Mental Health Leadership and follow local institutional protocol for managing such emergencies. This may include, but is not limited to, arrangements for the patient to be seen by an on-site psychiatrist, arrangements for safe holding, transport to an emergency triage area, communication with local emergency team members, and placing emergency orders for medications, etc.

**EOP, MHCB and Psychiatric Inpatient Programs**

In the event that a telepsychiatrist is needed in an EOP, MHCB or inpatient setting, the telepsychiatrist shall, to facilitate familiarity with the program and patients, participate in clinical staff meetings and case conferences, and coordinate patient care. On-site staff shall ensure that the telepsychiatrist has the necessary and pertinent information about the patient and the unit for the ongoing assessment and treatment of the patient. Similar to on-site psychiatrists, telepsychiatrists shall be involved in treatment and discharge decisions.

In urgent cases when a patient requires seclusion and restraints, the nurse shall notify the telepsychiatrist, who may place orders remotely, as appropriate. All other elements of seclusion and restraint protocol shall follow existing policies and procedures and all applicable laws and regulations, including the need for a backup physician (psychiatrist or medical provider) who can physically examine the patient within the mandated timeframes. Emergency medications may be ordered by telepsychiatrists, as clinically appropriate.

To ensure continuity of care, telepsychiatrists shall provide relevant clinical information during the hand off to the on-call psychiatrist to convey details regarding a new

admission, to coordinate patient care tasks that require follow-up during after-hours coverage, or if they anticipate specific patient concerns.

Telepsychiatrists and clinical staff, including nursing staff when needed, shall have access to each other to address patient needs.

**Site Visits**

Telepsychiatrists are responsible for maintaining relationships with members of the on-site treatment team through regular communication and by visiting institutions. Telepsychiatrists shall visit their assigned institution within 30 days of assignment. The frequency of follow-up visits shall be determined by the telepsychiatrist's assigned level of care. The telepsychiatrist will spend at least one full working day, consisting of the regular number of hours they would normally be scheduled to work, during each site visit at the facility, and attend meetings as described below:

| *Level of Care* | *Frequency of Site Visit* |
|---|---|
| CCCMS | Biannually |
| EOP, MHCB, PIP | Quarterly |

During each visit, the telepsychiatrist shall participate in the IDTT, meet with necessary health care staff, and see patients face-to-face.

**Physical Environment**

The patients' interview room/environment shall allow for both the telepsychiatrist and the patient to be seen and heard clearly. The patient's and telepsychiatrist's camera shall be positioned with their faces clearly visible to each other. The telepsychiatrist shall also be able to clearly see the patient's body to assess for any signs of movement disorders. When indicated, the telepsychiatrist can request assistance from the tele-presenter, who shall receive appropriate training on how to assess for such physical signs. The telepsychiatry administration and the institution receiving services shall ensure privacy so that others are not able to enter the telepsychiatrist's or patient's room accidently or overhear conversations from inside or outside the rooms. Seating and lighting should be adjusted to provide the clearest video and audio transmission, as well as to ensure the safety of the participants. Rooms for the telepsychiatrist and the patient will be appropriately sound-proofed, when possible, or alternative mechanisms will be utilized (for example, sound-cancelling devices) to ensure privacy. When possible, the tele-presenter should be seated closest to the door.

**Organizational Structure**

All telepsychiatry staff report within the Telepsychiatry Program supervisory chain.

Psychiatric Nurse Practitioners shall not be permitted to provide care through telepsychiatry.

**Workflow Interruptions**

In the event of technology or equipment failure, telepsychiatrists shall immediately notify their direct telepsychiatry supervisor and Mental Health Leadership at the institution (Chief and/or Senior Psychiatrist and Chief of Mental Health), as well as the Integrated Communications Technology Unit. The telepsychiatrist shall also make arrangements with institutional Mental Health Leadership to ensure appropriate patient coverage based on patient need (for example, coverage by on-site provider or rescheduling of

appointments). Telepsychiatrists may also be redirected to another telepsychiatry assignment when this occurs.

**On-Call Coverage by Telepsychiatry**

The telepsychiatry team shall contribute to on-call coverage as assigned, and their provision of services shall be in accordance with California Correctional HealthCare System (CCHCS) Health Care Department Operations Manual (HCDOM), Headquarters' Mental Health Policy, and applicable bargaining unit Memorandums of Understanding.

Telepsychiatrists are not required to travel to the institution where they are providing on-call coverage. Therefore, institutions receiving on-call coverage from the Telepsychiatry Program shall provide a backup physician (psychiatrist or medical provider). This backup physician shall be within one hour of travel time to the facility in order to physically examine a patient if needed (for example, in the case of a patient who requires placement into seclusion or restraints).

**Responsibilities**  The receiving facility shall be responsible for providing the following:

- Timely access for patients to the telepsychiatrist.
- A dedicated and appropriately clinically trained tele-presenter who presents the patient from the originating site to the telepsychiatrist, and is responsible for providing clinical support and coordination. The tele-presenter shall be required to introduce themselves and explain that they are subject to the same confidentiality requirements as the telepsychiatrist and other medical providers. Responsibilities include, but are not limited to, reviewing the patient health record prior to the appointment and remaining with the patient during the appointment. Tele-presenters shall be assigned from position classifications in the following order of priority: medical assistant[2], certified nursing assistant, psychiatric technician, licensed vocational nurse, registered nurse, clinical nurse specialist, nurse practitioner, social worker, psychologist, psychiatrist, or physician. When the tele-presenter is a nurse practitioner, social worker, psychologist or physician, the clinical contact shall be considered a joint appointment.
- A backup tele-presenter when the primary tele-presenter is on leave or unavailable.
- Institutions receiving telepsychiatry services shall have appropriate clinical staff available, including Nursing when needed.
- Support staff responsible for scheduling appointments and processing clinical paperwork, as appropriate.
- A contact list of important names and numbers for the institution. This includes, but is not limited, to the following:
    1. Laboratory
    2. Pharmacy
    3. Nursing station(s)
    4. Housing unit(s)
    5. Primary Clinician(s)
    6. Medical Provider(s)
    7. Mental Health Supervisor(s)
    8. Chief of Mental Health
    9. Chief Psychiatrist or Senior Psychiatrist Supervisor
    10. IT Department

---

[2] Medical Assistants cannot act as a tele-presenter for patients housed in inpatient units licensed as Correctional Treatment Centers

11. Scheduler
12. Medical Records Supervisor

- A confidential treatment space to facilitate patient encounters. This space shall include all equipment needed to facilitate the telepsychiatry encounter, including a computer, phone, scanner, printer, desk, and chair.
- Caseload assignments and scheduled appointments for the telepsychiatrist.
- The maintenance of telemedicine connectivity between institutions and telepsychiatrists.
- Ensuring that telepsychiatrists are appropriately privileged to provide clinical services to any licensed or inpatient units, when applicable.
- Audit reports for local compliance of items such as, but not limited to, Medication Administration Process Improvement Project (MAPIP) criteria and Effective Communication requirements.
- Organized tours for the telepsychiatrists during their initial visits to the institution.
- Developing on-site clinical contingency plans and patient prioritization strategies to manage absences of telepsychiatrists.
- A Local Operating Procedure (LOP) for Telepsychiatry shall be submitted to the Chief of Telepsychiatry, or designee, for review and approval prior to local distribution or implementation. Telepsychiatry services at an institution will not commence until an LOP for Telepsychiatry has been submitted and approved. Current and active LOPs shall be revised as necessary by the institution and submitted to the Chief of Telepsychiatry or designee. Any revisions of the LOP for Telepsychiatry shall be reviewed and approved by the Chief of Telepsychiatry or designee prior to implementation at the institution.
- Routine system tests to ensure that equipment is safe, operational, and secure.

**Purpose**

This policy ensures services provided by the Telepsychiatry Program comply with CDCR's MHSDS Program Guidelines. Telepsychiatrists shall conduct care consistent with CDCR rules, regulations, policies, and local operating policies and procedures of the institution(s) to which they provide services.

**Compliance Indicators**

To be in compliance with this policy, the following requirements shall be met jointly by the Telepsychiatry Program and the institution receiving services:

1. Telepsychiatrists are provided with the appropriate equipment and resources.
2. Telepsychiatrists participate in the same manner as on-site psychiatrists in the receiving institutions' IDTTs and all meetings and huddles relevant to the clinical care of their patients.
3. On-site staff and members of the treatment team communicate with the telepsychiatrist any important patient issues and concerns related to patient care.
4. Telepsychiatrists have access to all necessary clinical information via the health record.
5. Telepsychiatrists will communicate any important patient issues and concerns related to patient care to the on-site staff and members of the treatment team.
6. Patients are not entirely excluded from participation in the Telepsychiatry Program based solely on their level of care or their diagnosis.
7. Telepsychiatrists complete all documentation in the health record by the close of each business day.
8. Telepsychiatrist and patient identity are verified at the beginning of a mental health treatment videoconference.
9. Telepsychiatrists visit their receiving institutions as directed by policy.

10. Ongoing mandatory trainings for all telepsychiatrists.
11. Telepsychiatrists are privileged at each licensed or inpatient unit they serve.

**Action Required**

The following action is required for your institution to be in compliance with the new policy.

| If your institution… | then… |
|---|---|
| has a local operating procedure (LOP) | amend the current LOP to meet the new policy via an addendum within 30 days of the effective date valid until the next LOP revision date. Ensure the LOP is reviewed annually. |
| does not have an LOP | ensure that one is completed within 30 days of the effective date and create an LOP to meet the new policy requirements. Ensure the LOP is reviewed annually. |

**References**

CDCR Mental Health Services Delivery System (MHSDS) Program Guide, 2009 Revision

**Questions**

If you have any questions or need any additional information related to this policy, you may contact the policy unit via e-mail at: CDCR MHPolicyUnit@CDCR