| | |
|---|---|
| XAVIER BECERRA<br>Attorney General of the State of California<br>MONICA N. ANDERSON<br>Senior Assistant Attorney General<br>DAMON C. MCCLAIN<br>ADRIANO HRVATIN<br>Supervising Deputy Attorneys General<br>NASSTARAN RUHPARWAR - 263293<br>ELISE OWENS THORN - 145931<br>TYLER V. HEATH - 271478<br>KYLE A. LEWIS - 201041<br>LUCAS HENNES - 278361<br>Deputy Attorney General<br>455 Golden Gate Avenue, Suite 11000<br>San Francisco, CA  94102-7004<br>Telephone:  (415) 703-5500<br>Facsimile:  (415) 703-5843<br>Email:   Nasstaran.Ruhparwar@doj.ca.gov | HANSON BRIDGETT LLP<br>PAUL B. MELLO - 179755<br>SAMANTHA D. WOLFF - 240280<br>KAYLEN KADOTANI - 294114<br>425 Market Street, 26th Floor<br>San Francisco, California 94105<br>Telephone:   (415) 777-3200<br>Facsimile:      (415) 541-9366<br>pmello@hansonbridgett.com |

Attorneys for Defendants

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

**AND THE NORTHERN DISTRICT OF CALIFORNIA**

**UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES**

**PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE**

| | |
|---|---|
| RALPH COLEMAN, et. al.,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>GAVIN NEWSOM, et al.,<br><br>　　　　Defendants. | CASE NO. 2:90-cv-00520 KJM DB<br><br>**THREE-JUDGE COURT** |
| MARCIANO PLATA, et al.,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>GAVIN NEWSOM, et al.,<br><br>　　　　Defendants. | CASE NO. C01-1351 JST<br><br>**THREE-JUDGE COURT**<br><br>**DEFENDANTS' OPPOSITION AND OBJECTIONS TO PLAINTIFFS' REQUEST FOR JUDICIAL NOTICE [ECF NOs. 3222 and 6532]** |

**INTRODUCTION**

On Wednesday, March 25, Plaintiffs in this action filed an emergency motion for modification of the population cap established by this Court. (ECF Nos. 3219 and 6522.) That motion was supported by seven separate declarations and hundreds of pages of exhibits. (*See* ECF Nos. 3219-3222 and 6523-6529.)

On Thursday, March 26, Plaintiffs filed a Request for Judicial Notice, seeking to have the Court take judicial notice of various court orders and directives from federal, state, and local authorities related to the current COVID-19 health crisis. (ECF Nos. 3222 and 6532.) The request indicates that the referenced documents are "relevant to Plaintiffs' Emergency Motion because they demonstrate that courts across the nation have ordered the relief sought by Plaintiffs . . . ." (*Id.* at 5:8-11.) However, the request is not referenced anywhere in Plaintiffs' emergency motion, and it is unclear for what purpose Plaintiffs seek to have this Court take judicial notice of these court orders and directives. For these reasons, Defendants object to the Request for Judicial Notice.

**ARGUMENT**

**I.   LEGAL STANDARD.**

Judicial notice may be taken at any stage of the proceedings. Fed. R. Evid. 201(d). The Court may take judicial notice of facts that are not subject to reasonable dispute that are either generally known or capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b). The Court may also take judicial notice of "matters of public record," but it may not take judicial notice of disputed facts stated in public records. *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001) (overruled on other grounds by *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1125-1126 (9th Cir. 2001)). And while the Court may take judicial notice of another court's opinion, it may do so "not for the truth of the facts recited within, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity." *Lee*, 250 F.3d at 690 (citing *Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.,* 181 F.3d 410, 426-27 (3rd Cir. 1999)).

1

Defs. Opp. and Objs. to Pl.'s RJN [ECF Nos. 3222 and 6532] Case Nos. 2:90-cv-00520 KJM-DB & C01-1351 JST

## II. PLAINTIFFS' REQUEST FOR JUDICIAL NOTICE IS IMPROPER.

As noted above, Plaintiffs' Request for Judicial Notice is not referenced anywhere in the Emergency Motion. (*See* ECF Nos. 3219 and 6522.) Nor did Plaintiffs' Request specify of which matters from their voluminous exhibits the Court should take judicial notice. (ECF Nos. 3222 and 6532.) Without this specificity, it is impossible to determine which, if any, of the 159 pages of exhibits are irrelevant or otherwise inadmissible under the Federal Rules of Evidence. To the extent that Plaintiffs ask the Court to take judicial notice of the truth of the matters asserted in the exhibits to their Request for Judicial Notice, Defendants object. *Lee*, 250 F.3d at 690. Similarly, to the extent that Plaintiffs ask this Court to take judicial notice of any legal determinations or findings of fact made by the courts in the exhibits to their Request for Judicial Notice, Defendants object on the basis that the Court cannot take judicial notice of other courts' legal determinations. *Id.*; *see also Taylor v. Charter Med. Corp.,* 162 F.3d 827, 829-30 (5th Cir. 1998).

## III. PLAINTIFFS' REQUEST FOR JUDICIAL NOTICE IS OBJECTIONABLE.

Further, even if Plaintiffs are only asking the Court to take judicial notice of the fact that courts across the nation have ordered the relief sought by Plaintiffs, Defendants object to the matters referenced in the documents attached to Plaintiffs' Request (Plaintiffs' RJN Documents) on grounds that they are not relevant pursuant to Fed. R. Evid. 402.

First, Plaintiffs' representations notwithstanding, several of Plaintiffs' RJN Documents do not "demonstrate that courts across the nation have ordered the relief sought by Plaintiffs." Second, for some of Plaintiff's RJN Documents, there is no evidence that the statements made by the judges in Plaintiffs' RJN Documents arose from situations that were similar to the situation we are dealing with in the instant case. For others, the content of Plaintiffs' RJN Documents even proves that the underlying situations are distinguishable.

### A. Exhibit 1 does not support Plaintiffs' remedy and is distinguishable because it encourages direct modification of prison sentences by sentencing judges.

Exhibit 1 does not contain a court order. Instead, it contains a news release about an advisory from the California Supreme Court to other state court officers—not prisons or jails—in which they "urge" or "encourage" court officers to *consider* modifying prison sentences of

2

inmates who have less than 60 days remaining on their jail sentence "with the assistance of justice partners." Plaintiffs' RJN Documents at 5. The stated purpose of Chief Justice Cantil-Sakauye's advisory was to "mitigate some of the health risks to judicial officers, court staff, and court users" – not detainees or inmates. *Id.* at 2.

In the instant case, CDCR has provided a plan detailing its extensive efforts to prevent a COVID-19 outbreak and how CDCR will respond to a potential outbreak in its institutions. While Chief Justice Cantil-Sakauye's advisory is clearly well-intentioned and intended to provide some guidance to state courts during a time of uncertainty, it is only a general advisory—not a court order. Additionally, the advisory explicitly states that the stated measures "will require close collaboration with . . . local justice system partners" to implement. This is a far cry from Plaintiffs' request for a court-mandated inmate release, and it does not support Plaintiffs' request. (*Id.*)

Therefore, Exhibit 1 is not relevant.

**B.  Exhibit 2 does not lend support to Plaintiffs' requested remedy and is distinguishable because it merely authorized a release in response to the parties' agreement.**

Similarly, based on Plaintiffs' own description of the document, Exhibit 2 does not support Plaintiffs' requested remedy. Instead, it contains a court order that *authorizes* the Sacramento County Sheriff's Department to Grant Release based on an agreement that was reached between the parties. It does not appear that the judge considered any sort of evidence or plan relating to the Sheriff's efforts to address COVID-19 and found that the plan was insufficient. And there is no evidence that the court *ordered* the Sacramento County Jail to release inmates without the agreement of Sacramento County.

Therefore, Exhibit 2 is not relevant.

**C.  Exhibit 3 does not support Plaintiffs' remedy and is distinguishable because it is not directed at correctional facilities.**

As with Exhibit 1, Exhibit 3 does not contain a court order, but rather is a letter from the Chief Justice of the Montana Supreme Court to "Montana Courts of Limited Jurisdiction Judges" asking them to review jail rosters and release "as many prisoners as [they] are able, especially

3
Defs. Opp. and Objs. to Pl.'s RJN [ECF Nos. 3222 and 6532] Case Nos. 2:90-cv-00520 KJM-DB & C01-1351 JST

1 those being held for non-violent offenses." Plaintiffs' RJN Documents at 90. This exhibit
2 contains even *less* specific information than Exhibit 1, with just a general statement regarding the
3 difficulty of virus containment in correctional facilities "due to the confines of these facilities."
4 *Id.* Without any explanation of this statement, it cannot be assumed that California's prisons share
5 identical layouts or even identical logistical challenges as Montana correctional facilities,
6 particularly not based on the four sentences in Exhibit 3 referencing those correctional facilities.
7      Therefore, Exhibit 3 is not relevant.

     **D.   Exhibit 4 does not support Plaintiffs' remedy and is distinguishable because it merely authorized a release in response to the parties' agreement.**

10      As with Exhibit 2, Exhibit 4 does not support Plaintiffs' requested remedy because it, too,
11 simply gives court backing to an agreement among all parties—this time in New Jersey—to
12 temporarily suspend custodial jail sentences. *Id.* at 92-105. There is no indication that the court
13 considered a unilateral plan by New Jersey's correctional facilities and found it insufficient, and
14 there is no order by the court substituting its judgment for the discretion of state officials.
15      Therefore, Exhibit 4 is not relevant.

     **E.   Exhibit 5 does not support Plaintiffs' remedy and is distinguishable because it directs the release of pretrial detainees, not convicted felons.**

18      Exhibit 5 of Plaintiffs' RJN Documents is completely irrelevant to Plaintiffs' motion for
19 emergency relief because it contains no discussion of convicted felons housed at correctional
20 facilities, nor "early release" for inmates currently serving sentences. *Id.* at 107-108. Instead,
21 Exhibit 5 directs courts in South Carolina to release "any person charged with a non-capital
22 crime . . . on his own recognizance without surety, unless an unreasonable danger to the
23 community will result or the accused is an extreme flight risk." *Id.* at 107. This is easily
24 distinguishable from the instant case, as Plaintiffs' requested remedy would affect inmates
25 currently serving a felony prison sentence, rather than detainees who have merely been charged
26 with committing a crime. And as with previous exhibits containing directives from state supreme

4
Defs. Opp. and Objs. to Pl.'s RJN [ECF Nos. 3222 and 6532] Case Nos. 2:90-cv-00520 KJM-DB & C01-1351 JST

courts, there is no order to state correctional facilities to involuntarily release inmates, nor is there any evaluation of those correctional facilities' plan for managing COVID-19.

Therefore, Exhibit 5 is not relevant.

### F. Exhibit 6 does not support Plaintiffs' remedy and is distinguishable because it directs the release of pretrial detainees, not convicted felons.

As with Exhibit 5, Exhibit 6 also directs the release of certain pretrial detainees—persons *charged* with crimes, not persons *convicted and sentenced* for those crimes. *Id.* at 110-111. As with previous exhibits, there is no directive from the Harris County judge that Texas correctional facilities release inmates involuntarily, nor is there any evaluation of the Texas correctional facilities' plan for managing COVID-19.

Therefore, Exhibit 6 is not relevant.

### G. Exhibit 7 does not support Plaintiffs' remedy and is distinguishable because it considers the release of pretrial detainees, not convicted felons.

Similarly, Exhibit 7 contains an order from the Washington Supreme Court to state courts counseling them on a statewide response to the COVID-19 crisis. *Id.* at 113-122. The only portion of the order even tangentially related to Plaintiffs' motion in the instant case is a brief paragraph permitting Washington courts to hear motions for pretrial release on an expedited basis. *Id.* at 118-119. As with the two prior exhibits, Exhibit 7 does not contemplate—let alone order—the release of convicted felons from state correctional facilities, nor does it evaluate the state plan for management of COVID-19 in those correctional facilities.

Therefore, Exhibit 7 is not relevant.

### H. Exhibit 8 does not support Plaintiffs' remedy and is distinguishable because it concerns a single petitioner in an immigration court.

Exhibit 8 is not relevant to Plaintiffs' requested relief because it clearly concerns a situation that bears no resemblance to the instant case. Exhibit 8 contains an order from the Ninth Circuit ordering the immediate release of a detainee being held pending removal from the country by immigration authorities. *Id.* at 124. As with all previous exhibits, Exhibit 8 does not order the

5
Defs. Opp. and Objs. to Pl.'s RJN [ECF Nos. 3222 and 6532] Case Nos. 2:90-cv-00520 KJM-DB & C01-1351 JST

release of convicted felons from state correctional facilities, and it does not evaluate any correctional facilities' plan for managing COVID-19. In fact, there is nothing to indicate that the order in Exhibit 8 was anything other than an individualized decision based on a particular detainee's case factors and the information provided in his petition—which Plaintiffs have unhelpfully failed to provide.

Therefore, Exhibit 8 is not relevant.

### I. Exhibit 9 does not support Plaintiffs' remedy and is distinguishable because it concerns a single pretrial detainee.

Exhibit 9 contains many of the same characteristics as previous exhibits—it concerns the release of a pretrial detainee on his own recognizance, it does not direct statewide officials to release convicted felons, and it contains no evaluation of a statewide correctional response to COVID-19. *Id*. at 126-127. However, Exhibit 9 is actually contradictory to Plaintiffs' requested relief, as the language in that order explicitly states "this Order should not be construed as a determination by this Court that pretrial detention is unsafe or otherwise inappropriate as a general matter or in any other specific case." *Id.* at 126. By the order's own language, then, judicial notice of this order is inappropriate.

Therefore, Exhibit 9 is not relevant.

### J. Exhibit 10 does not support Plaintiffs' remedy and is distinguishable because it concerns a single pretrial detainee.

Similarly, Exhibit 10 of Plaintiff's RJN Documents concerns the release of a pretrial detainee based on his motion for reconsideration of bail conditions. *Id.* at 131-137. A review of the order in Exhibit 10 shows that the court engaged in a lengthy review of the detainee's records, including the government's evidence in support of the charges against him, and concluded that "the Defendant has established by clear and convincing evidence that he does not pose a danger to the community" such that temporary release was appropriate in his case. *Id.* There is no generalized directive to state officials to release convicted felons in this order, and there is no

determination that the statewide response to COVID-19 in correctional facilities was insufficient. *Id.*

Therefore, Exhibit 10 is not relevant.

### K.  Exhibit 11 does not support Plaintiffs' remedy and is distinguishable because it concerns a single pretrial detainee.

As with many of Plaintiffs' exhibits, Exhibit 11 concerns the reconsideration of pretrial release for a single detainee, this time before his extradition to Peru. *Id.* at 139-142. While the order in Exhibit 11 does make reference to San Mateo County's management plan for COVID-19 in the jail, it does not explicitly find it insufficient, and—as with other exhibits—there is no generalized directive to release convicted inmates from the jail. *Id.* Given the widely different circumstances between Mr. Toledo's request for release on bail and the instant case, there is simply no useful information the Court can draw from this order.

Therefore, Exhibit 11 is not relevant.

### L.  Exhibit 12 does not support Plaintiffs' remedy and is distinguishable because it concerns a single pretrial detainee.

Similarly, Exhibit 12 contains an order concerning a single detainee, this time at the Wascoe County Detention Facility in Nevada. *Id.* at 144-153. This exhibit, however, is unique in that it is essentially the petitioner's brief, with the order itself at the end of the exhibit. *Id.* at 153. There is no indication in the language of the order that the argument put forth by the petitioner was adopted by the court in granting the requested relief. *Id.* And, as with the rest of Plaintiffs' exhibits, there is no generalize directive to statewide officials requiring release of convicted felons nor a finding that any correctional facility's COVID-19 management plan is insufficient to meet constitutional standards.

Therefore, Exhibit 12 is not relevant.

### M.  Exhibit 13 does not support Plaintiffs' remedy and is distinguishable because it concerns an individual's request to extend deadline for self-surrender.

Exhibit 13 of Plaintiffs' RJN Documents also concerns a single individual, this one requesting an extension of time to report for his federal prison sentence. *Id.* at 155-156. In

addition to the characteristics shared by other exhibits—no directive to state correctional officials requiring release of inmates currently serving a sentence, and no finding that a state correctional facility's management of COVID-19 is deficient—Exhibit 13 is also distinguishable from the instant case because it concerns an individual who has not yet entered a prison or begun serving his sentence. *Id.*

Therefore, Exhibit 13 is not relevant.

### N. Exhibit 14 does not support Plaintiffs' remedy and is distinguishable because it directs the use of currently-existing mechanisms by the federal government.

Finally, Exhibit 14 is a memorandum from the United States Attorney General to the Director of the Federal Bureau of Prisons (BOP) directing the BOP to use their statutory authority to "grant eligible prisoners home confinement in certain circumstances." *Id.* at 158. This is easily distinguishable from the instant case because the BOP already has the authority to grant these prisoners the ability to serve their sentences at home instead of in an institution; by contrast, Plaintiffs are seeking to have this Court order the early release of an unspecified number of inmates, effectively shortening their sentences rather than having them serve them off-site. Exhibit 14 also contains no determination that the BOP's plan for management of COVID-19 is constitutionally insufficient.

Therefore, Exhibit 14 is not relevant.

### CONCLUSION

For the reasons listed above, Defendants request this Court deny Plaintiffs' Request for Judicial Notice.

//
//
//
//
//
//

| | | |
|---|---|---|
| DATED: March 31, 2020 | | HANSON BRIDGETT LLP |
| | By: | */s/ Samantha D. Wolff* |
| | | PAUL B. MELLO |
| | | SAMANTHA D. WOLFF |
| | | KAYLEN KADOTANI |
| | | Attorneys for Defendants |
| DATED: March 31, 2020 | | XAVIER BECERRA |
| | | Attorney General of California |
| | By: | */s/ Damon McClain* |
| | | DAMON MCCLAIN |
| | | Supervising Deputy Attorney General |
| | | NASSTARAN RUHPARWAR |
| | | Deputy Attorney General |
| | | Attorneys for Defendants |

CF1997CS0003
n/a