OFFICES OF

**PAVONE & FONNER, LLP**

A LAW PARTNERSHIP

**BENJAMIN PAVONE, ESQ.**
**STATE BAR NUMBER 181826**
600 WEST BROADWAY, SUITE 700
SAN DIEGO, CALIFORNIA 92101
TELEPHONE: 619 224 8885
FACSIMILE: 619 224 8886
EMAIL: bpavone@cox.net

ATTORNEYS FOR THE
VALLEY FEVER INTERVENORS

# UNITED STATES DISTRICT COURT

## NORTHERN/ EASTERN DISTRICTS OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al., <br><br> Plaintiffs, <br> v. <br> GAVIN NEWSOM, *et al*. <br><br> Defendants. | **CASE NO: 2:90-cv-0520 KJM DB P** <br> **THREE-JUDGE COURT** |
| MARCIANO PLATA, *et al.*, <br><br> Plaintiffs, <br> v. <br> GAVIN NEWSOM, *et al*. <br><br> Defendants. | **CASE NO: 01-cv-01351-JST** <br> **THREE-JUDGE COURT** <br> **VALLEY FEVER PRISONERS' REQUEST FOR:** <br> (1) Written Opinion <br> (2) Published Opinion <br> (3) Plausibility Finding <br> (4) Interlocutory Review |
| In re VALLEY FEVER inmates, <br><br> Intervenors. | Date: April 2, 2020 <br> Time: 1:15 pm <br> Dept: 6 - 2nd Floor <br> Courtroom: 1301 Clay Street, <br> Oakland, CA 94612 <br><br> (Telephonic Hearing Only) |

PLEASE TAKE NOTICE that the 126 valley fever intervenors (hereafter "Intervenors") ask the Court for the following additional relief in conjunction with the Court's decision on PLO's motion, joined by Intervenors:

(1) to issue a written opinion;

(2) to recommend immediate publication of that written decision, pursuant to Thomson Reuter's publication guidelines included herein;

(3) to include language in its opinion, consistent with PLO's constitutional analysis, that wrongful exposure to the coronavirus states a plausible constitutional claim under the Eighth Amendment;

(4) to certify *this issue only* for immediate appeal to the Ninth Circuit, even if the Court grants PLO's motion.  Even if the Court grants the motion, issues a written opinion, and publishes it, such an opinion does not definitively "establish the law" under the rules governing the qualified immunity doctrine.

Only a published appellate opinion can overcome this obstacle.  Without such an opinion, while much of the prison population may be protected by any orders this Court may make, any inmates who actually contract Covid-19 due to CDCR's fumbling of the issue will be barred from asserting a later damage claim unless there is a predicate, published *appellate* opinion already in existence.

# INTRODUCTION

Intervenors seek an ounce of prevention to avoid a pound of cure.

To maximize the protection inmates can expect from potential exposure to coronavirus, inmates can and should benefit from the protection they may obtain from any orders this Court makes.

However, this is only part of the story. The other part is what happens if or when CDCR fumbles the issue down the line and inmates suffer a major contraction event, as they did in the valley fever context. Under the governing rules of the qualified immunity doctrine, the ability to seek damages will be foreclosed if there is no predicate, published appellate opinion on file declaring that potential exposure to coronavirus states a plausible constitutional claim.

Without such a predicate opinion, state officials may, if granted, begrudgingly carry out this Court's orders, as they begrudgingly did the orders in the valley fever context. More importantly, until those orders were implemented in 2013, officials were earlier insulated from all accountability – until a published valley fever appellate opinion removed their immunity and exposed them to the threat of civil liability – which never happened.

Thousands of inmates were infected for life and were later as a group unable to successfully press a claim for relief, in the wake of CDCR's monumunetal decisions not to protect them in any way whatsoever during the epidemic, without the predicate published appellate opinion.

To prevent that same outcome here, and thereby give prison officials maximum incentive to protect prisoners in a preventive fashion (under threat of civil liability), Intervenors seek to forge a path to overcome this critical legal obstacle, here and now, by perfecting a published appellate opinion declaring exposure to Covid-19 to constitute a plausible constitutional violation.

# I.
## GIVEN THE IMPORTANCE OF THE ISSUE, THE COURT SHOULD ISSUE PUBLISH A WRITTEN OPINION.

In numerous contexts, the district courts (and three judge panels) issue written decisions on a motion. N.D.L.R. 7-14; *see, e.g.*, *Coleman v. Schwarzenegger*, 922 F.Supp.2d 882 (E.D.Cal. 2009); *Beagle v. Schwarzenegger*, 107 F.Supp.3d 1056 (E.D.Cal. 2014); *Smith, et al. v. Schwarzenegger et al.*, 137 F.Supp.2d 1233 (E.D.Cal. 2015); *see* Fed.R.Civ.P., Rule 52.

For serious and important decisions, like one such as this having state-wide implications for thousands of people, it is standard practice of the federal courts to issue a written opinion. Dec. B. Pavone ("BLP"), ¶ 1.

Important opinions are often published, in West's official reporter. BLP, ¶ 2. At the district court level, this surprisingly depends on an informal exercise between the author of the district court opinion and the Thomson-Reuters Company, which owns the West "F.Supp" Reporter Series. BLP, ¶ 2.

Under Thomson's protocol, publication of a district court opinion is warranted if the opinion is of "general interest and importance to the bench and bar" such as those that:

    *(i)*    Deal with an issue of first impression;

    *(ii)*    Establish, alter, modify, or explain a rule of law;

    *(iii)*    Provide a review of the law;

    *(iv)*    Involve unique factual situations;

    *(v)*    Present a unique holding; and

    *(vi)*    Involve newsworthy cases.

BLP, ¶ 3; Exhibit 1.[1]

In this case, the coronavirus epidemic, as a novel disease, involves a unique factual situation and involves a newsworthy event, criteria *(iv)* and *(vi)*. Publication of this Court's

---

[1] This is a little more than surprising. Substantial constitutional rights sometimes now depend on the existence of published decisions, even at the district level. That such publication decisions ultimately rest in the hands of a private corporation, even a highly respected one, raises significant constitutional questions.

PAVONE & FONNER, LLP

opinion may also be warranted if its findings explain the law, provide a review of it or present a unique holding, under criteria *(ii)*, *(iii)* and *(v)*.

Intervenors stipulate that prisoner exposure to disease does not present an issue of first impression under criteria *(i)*. *See Gates v. Collier*, 501 F.2d 1291, 1300-1301 (5th Cir.1974); *Hutto v. Finney*, 437 U.S. 678, 682, 685 (1978); *Helling v. McKinney*, 509 U.S. 25, 33 (1993);

Nevertheless, and overall, publication of this Court's written opinion about Covid-19 seems self-evidently a worthy endeavor. BLP, ¶ 4.

## II.
## THE COURT SHOULD FIND THAT POTENTIAL WRONGFUL EXPOSURE TO CORONAVIRUS PRESENTS A PLAUSIBLE CONSTITUTIONAL CLAIM.

Our country's broadly written civil rights statute, 42 U.S.C. § 1983, is only actually enforceable in extremely limited situations: when there exists an exactly-identical earlier case, that was litigated at the trial level and appealed, and where the disposition of that appeal resulted in a published decision finding that the earlier wrong alleged, the exact same one in the instant case, presented a plausible constitutional violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Reichle v. Howards*, 566 U.S. 658, 664; *Hamby v. Hammond*, 821 F.3d 1085, 1092 (9th Cir. 2016); *Mullenix v. Luna*, — U.S. —, 136 S.Ct. 305, 308 (2015); *Kisela v. Hughes*, — U.S. —, 138 S. Ct. 1148 (2018).

Otherwise, the law is not "clearly established" and government officials are awarded automatic immunity. *Hines v. Youseff*, 914 F.3d 1218, 1229 (9th Cir.), *cert. denied sub nom. Smith v. Schwarzenegger*, 140 S. Ct. 159 (2019).

Generally speaking, wrongful exposure to a serious disease, even before contraction, presents a potential Eighth Amendment violation. *Helling v. McKinney*, 509 U.S. 25, 33 (1993). "Nor can we hold that prison officials may be deliberately indifferent to the exposure of inmates to a serious, communicable disease on the ground that the complaining inmate shows no serious current symptoms. That the Eighth Amendment protects against future harm to inmates is not a novel proposition. The Amendment, as we have said, requires that inmates be furnished with the basic human needs, one of which is 'reasonable safety.'" *Ibid*.

Yet, given the qualified immunity doctrine, this protection against diseases is unenforceable unless the exact disease agent, here coronavirus, has been litigation to appellate publication.

Thus, during the last prison disease epidemic, even though at least 37 prisoners (who contracted valley fever arguably in derogation of their rights under *Helling*) filed cases in the district court, their effort did not result in a published *appellate* opinion and this body of trial court literature did not constitute a "consensus of cases of persuasive authority." *Smith, et al. v. Schwarzenegger, et al.*, 137 F.Supp.2d 1233, 1245 (E.D.Cal. 2015), *citing Wilson v. Layne*, 526 U.S. 603, 617 (1999).

For those valley fever prisoners that did appeal, none of their appellate dispositions were published. *Smith v. Schwarzenegger*, 393 Fed.Appx. 518 (9th Cir. 2010); *Gray v. Robinson*, 481 Fed.Appx. 380 (9th Cir. 2012); *Johnson v. Pleasant Valley*, 505 Fed.Appx. 631 (9th Cir. 2013); *Samuels v. Ahlin*, 584 Fed.Appx. 636 (9th Cir. 2014); *Gregge v. Cate*, 584 Fed.Appx. 421 (9th Cir. 2014).

Unpublished appellate decisions about valley fever only rarely establish the law; they did not establish it in the valley fever context. *Smith, et al. v. Schwarzenegger, et al.*, 137 F.Supp.2d 1233, 1245-1246 (E.D.Cal. 2015), *citing Sorrels v. McKee*, 290 F.3d 965, 971 (9th Cir.2002).

No other (older) rules or legal paradigms surrounding the qualified immunity doctrine otherwise resulted in any path for valley fever victims to press their case against the prison officials to a trial. *See Hines v. Youssef*, 914 F.3d 1219, 1233 (9th Cir. 2019); *see Hines v. Youssef*, 9th Cir. Case No. 15-17155, Dkt. 22:21 (AOB, Arg. III) *and* Dkt. 63:21 (Reply, Arg. III) (9th Cir. 2019).

Even published appellate opinions rarely result in a finding that a given wrong ("step one" in *Saucier* qualified immunity parlance) presents a plausible constitutional violation. This is because the U.S. Supreme Court in 2009 permitted the lower courts to skip step one and

dispose of the case on step two, whether the law was clearly established. *Pearson v. Callahan,* 555 U.S. 223, 239-241 (2009).

As explained by Justice Kleinfeld, the ultimate author of the *Hines* opinion:

> The courts below did not decide [step one] whether exposing inmates to a heightened risk of Valley Fever violates the Eighth Amendment. Neither do we. Instead, we go straight to the second prong of the qualified immunity analysis [step two]: whether a right to not face a heightened risk was 'clearly established' at the time.
>
> A right is clearly established if it was 'sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right.' That is, the issue must have been 'beyond debate.'
>
> In determining what is clearly established, we must look at the law 'in light of the specific context of the case, not as a broad general proposition.'
>
> Applying those principles to the cases at hand, we conclude that the specific right that the inmates claim in these cases – the right to be free from heightened exposure to Valley Fever spores – was not clearly established at the time.
>
> A reasonable official could have concluded that the risk was not so grave that it violates contemporary standards of decency to expose anyone unwillingly to such risk, or that exposure to the risk was lawful." *Hines,* 1229.

*Hines* was upheld by the US Supreme Court by virtue of its decision to deny certiorari. *Hines v. Youseff*, 914 F.3d 1218 (9th Cir.), *cert. denied sub nom. Smith v. Schwarzenegger*, 140 S. Ct. 159 (2019).

Consequently, absent an exactly-on-point predicate, published opinion, one that expressly addresses step one by finding the requisite plausibility, the qualified immunity doctrine applies to circularly bar all damage claims now and in the future from exposure to any and every disease. This reality eviscerates section 1983, so much so, that there is a

constitutional collision speeding toward the courts.[2] *See Bates, et al. v. Schwarzenegger, et al.*, Case No. 19-17094, Dkt. 20, pp. 41-56 (Args. IV-VI) (9th Cir. 2020).

On the one hand, the citizens of this country have a fundamental right enacted 150 years ago to enforce section 1983's protection for their constitutional rights; yet, on the other hand, the Supreme Court has arranged the case law such that the process of overcoming the qualified immunity doctrine by making clearly established law never need occur: the courts can circularly and indefinitely skip to step two on any and every issue and thus never formally establish anything.

As a result, every 1983 damage claim (including every valley fever and Covid-19 claim), no matter how egregious, deliberate, malicious or profoundly neglectful, will necessarily fail – now and forever – without a published appellate opinion addressing step one. *See Hines,* 1229.

As it stands today, even after dozens of claims with eye-popping incidence rates alleging wrongful contraction of valley fever have been litigated through the appellate process, now 15

---

[2] "The failure of qualified immunity to achieve its intended policy goals makes its negative impact on government accountability indefensible." Schwartz, J., The Case Against Qualified Immunity, 93 Notre Dame L.Rev. 1797, 1820 (2018).

"Close inspection suggests that something has gone wrong, as a legal matter, in the Court's immunity doctrine … it is so far removed from ordinary principles of legal interpretation." Baude, W., "Is Qualified Immunity Unlawful?, 106 Calif.L.Rev. 45, 77 (2018).

The clearly established test "has pushed qualified immunity far beyond the reach of any functional justification for that protection." Jeffries, J., "The Liability Rule for Constitutional Torts, 99 Va.L.Rev. 207, 253 (2013).

Separation of powers and federalism concerns underlying qualified immunity "provide no compelling justification for the defense, leaving the present model … ripe for replacement or, indeed, rejection." Crocker, K., Qualified Immunity and Constitutional Structure, 117 Mich.L.Rev. 1405, 1407 (2018).

"Judges and scholars alike have thus increasingly arrived at the conclusion that the contemporary doctrine of qualified immunity is unmoored from any lawful justification – and in serious need of correction." *Pauly v. White*, USSC Case No. 17-1078, Cato Institute Amicus Brief, p. 2.

years after the epidemic started, there is still no published appellate opinion declaring that wrongful exposure to valley fever constitutes a plausible constitutional violation – even though no one in regular society actually thinks this. *See Bates, et al. v. Schwarzenegger, et al.*, Case No. 19-17094, Dkt. 20, pp. 25-36 (Arg. I) (9th Cir. 2020).

Regardless, to avoid these contradictions in the Covid-19 situation, Intervenors, who are extraordinarily susceptible to serious and potentially fatal outcomes if they contract it, request a published finding at this level that the threat of such exposure constitutes a plausible constitutional violation, as it is of some value in the qualified immunity context.

### III.
### THE COURT SHOULD CERTIFY THIS ISSUE FOR INTERLOCUTORY APPEAL FOR PURPOSES OF APPELLATE PUBLICATION, EVEN IF IT GRANTS THE MOTION.

Title 28 U.S.C. § 1292(b) provides that:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order …
>
> application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

The constitutional plausibility of wrongful exposure to Covid-19 represents a controlling question of law for purposes of this motion: without such plausibility, PLO and Intervenors' motions necessarily have no merit. Defendants concede this issue, but their concession, laudable as it is, does nothing to legally protect inmates now or in the future unless it is printed by a circuit court in a published appellate opinion. *See* Dkt. 3235:12 [*Plata*]; 6552:12 [*Coleman*].

In terms of advancing this litigation, the threat of civil liability emanating from elimination of the qualified immunity doctrine in advance provides CDCR prison officials a powerful incentive to manage the Covid-19 epidemic with extraordinary responsibility. They

claim they intend to do and are taking drastic steps. Intervenors accept the representation at face value, but this epidemic poses a potentially long slog of continuous responsibility and it is not clear whether CDCR officials down the line will possess as much enthusiasm and diligence over the duration as they presently assert now.

      Accordingly, Intervenors should be allowed to preserve and perfect their later right to pursue damages, not because they are anxious to file lawsuits for damages – they are not – but because the very act of preserving such rights acts as a critical tool to motivate officials now and in the comings months, and in turn, helps to minimize the risk of the prisoners' contraction at all times.

Respectfully Submitted:

Date: March 31, 2020                              PAVONE & FONNER, LLP

                                                                           Benjamin Pavone, Esq.
                                                                           Attorneys for Intervenors