DONALD SPECTER – 083925
STEVEN FAMA – 099641
MARGOT MENDELSON – 268583
PRISON LAW OFFICE
1917 Fifth Street
Berkeley, California 94710-1916
Telephone: (510) 280-2621

MICHAEL W. BIEN – 096891
JEFFREY L. BORNSTEIN – 099358
ERNEST GALVAN – 196065
THOMAS NOLAN – 169692
LISA ELLS – 243657
JENNY S. YELIN – 273601
MICHAEL S. NUNEZ – 280535
JESSICA WINTER – 294237
MARC J. SHINN-KRANTZ – 312968
CARA E. TRAPANI – 313411
ALEXANDER GOURSE – 321631
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
Telephone: (415) 433-6830

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>GAVIN NEWSOM, et al.,<br><br>　　　　Defendants. | Case No. 2:90-CV-00520-KJM-DB<br><br>**DECLARATION OF MARC STERN, M.D. IN SUPPORT OF PLAINTIFFS' MOTION**<br><br>Judge: Hon. Kimberly J. Mueller |

**DECLARATION OF MARC STERN, M.D.**

I, Marc Stern, declare as follows:

1. I am a physician, board-certified in internal medicine, specializing in correctional health care. I most recently served as the Assistant Secretary for Health Care at the Washington State Department of Corrections. I served for four years as a medical subject matter expert for the Officer of Civil Rights and Civil Liberties, U.S. Department of Homeland Security, and as a medical subject matter expert for one year for the California Attorney General's division responsible for monitoring the conditions of confinement in Immigration and Customs Enforcement (ICE) detention facilities. I am a court-appointed medical expert in the class action *Parsons v. Ryan*, CV-12-00601-PHX-ROS. Currently, I am the Medical Advisor for the National Sheriffs' Association on matters related to preventive measures responding to COVID-19. Additionally, in 2009, at the request of the California Receiver Clark Kelso, I toured 10 California State Prisons to assess whether or not the Receiver's assignment – to restore the delivery of health services within the California State Prisons – to constitutionally adequate levels – had been completed. Attached as **Exhibit A** is a copy of my curriculum vitae.

**COVID-19 FACTS**

2. COVID-19 is a serious disease and has reached pandemic status. Over 1.4 million people around the world have received confirmed diagnoses of COVID-19 as of April 7, 2020, including 374,329 people in the United States. COVID-19 is a novel virus. It is very easily spread from person to person, and people can become infected by simply touching surfaces with the virus after the person with the virus has left the area.

3. There is no vaccine for COVID-19, nor is there a cure. The time course of the disease can be very rapid. Individuals can show the first symptoms of infection in as little as two days after exposure and their condition can seriously deteriorate in as little as five days (perhaps sooner) after that.

4. The effects of COVID-19 are very serious, especially for people who are most vulnerable. Vulnerable people include people over the age of 50, and those of any

age with underlying health problems such as – but not limited to – weakened immune systems, hypertension, diabetes, blood, lung, kidney, heart, and liver disease, and possibly pregnancy.

5. Vulnerable people who are infected by the COVID-19 virus can experience severe respiratory illness, as well as damage to other major organs, and death. Treatment for serious cases of COVID-19 requires significant advanced support, including ventilator assistance for respiration and intensive care support.

**CONDITIONS IN CDCR FACILITIES**

6. The California Department of Corrections houses over 116,000 people in facilities built for 89,663. Incarcerated people live in congregate living facilities, with more than a third living in open and crowded dormitories. I have reviewed the Weekly Population Report posted on the website of the CDCR at https://www.cdcr.ca.gov/research/wp-content/uploads/sites/174/2020/03/Tpop1d200318.pdf. This report shows that the California state prisons remain at 130% of capacity. Among the 35 state prisons, all but four are over 100% capacity, and 19 are at or over 130% of design capacity, with eight over 150% capacity. Among the four which are below capacity, their occupancies are still high, from a public health standpoint: 90.9%, 96.2%, 97.3%, and 99.7%.

7. The living units at many of these prisons are clearly too crowded. I have reviewed photographs taken in 2019 and provided to me by plaintiffs' counsel of living areas and day rooms in four prisons: Central California Women's Facility, California Institution for Men, California Medical Facility, and the Substance Abuse Treatment Facility at Corcoran. I also reviewed a CDCR Institutional Bed Audit dated March 23, 2020 that shows that many of the CDCR dormitories are very crowded. For example, at Avenal State Prison, all people are housed in dormitories designed to house 50-100 people. Most of those dormitories are currently at 150% capacity. At the Central California Women's Facility, some of the dormitories are as much as 194% overcrowded.

8.  The level of crowding in the California state prisons, as evidenced by the population reports, the Institutional Bed Audit and the photographs I reviewed, is very significant and dangerous from a public health standpoint.  These crowded conditions, particularly in the dormitories, make it virtually impossible to maintain physical distance from others, as recommended by the U.S. Centers for Disease Control and Prevention.

9.  In addition to the lack of space, the dormitories that I personally viewed, and have viewed through photographs, are laid in such a way that requires their occupants to touch shared surfaces such as sinks, faucets, toilet flushers, and door handles.

10. I have also reviewed the California Receiver's Statewide Dashboards that report various health care metrics for the state's prisons.  According to the most recent dashboard posted at cchcs.ca.gov/wp-content/uploads/sites/60/QM/Public-Dashboard-2019-10.pdf, 14.7% of the people in the state prisons, i.e., over 17,000 people, are classified as medically "high risk."  According to the CCHCS Health Care Department Operations Manual, patients are classified as "high risk" if they suffer from serious health conditions that require case management.[1]  The health conditions CCHCS uses to

---

[1] According to the CCHCS Health Care Department Operations Manual 1.2.14, Appx. 1, section (c)(3)(c), people are classified in the CDCR as "high risk" if they have the following conditions: "Chronic care of complicated, unstable, or poorly-controlled common conditions (e.g., asthma with history of intubation for exacerbations, uncompensated end-stage liver disease, hypertension with end-organ damage, diabetes with amputation). Chronic care of complex, unusual, or high risk conditions (e.g., cancer under treatment or metastatic, coronary artery disease with prior infarction). Implanted defibrillator or pacemaker. High risk medications (e.g., chemotherapy, immune suppressants, Factor 8 or 7, anticoagulants other than aspirin). Transportation over a several day period would pose a health risk, such as hypercoagulable state. Case management is required."

designate patients as "high risk" are almost identical to those used by the U.S. Centers for Disease Control and Prevention to determine who is at elevated risk for complications from COVID-19 infection.

11. California's crowded prisons house thousands of people who are at high risk for serious health consequences if they are infected with COVID-19. An outbreak of COVID-19 in any prison where community health resources are already stressed by COVID-19 will put significant pressure on or exceed the capacity of local health infrastructure. To the extent that the health care infrastructure is overloaded, incarcerated people and local people from the community will die unnecessarily because necessary respirators and hospital facilities are unavailable.

12. Based on the crowded conditions, coupled with the increased concentration of people with high risk of complications, including death, from COVID-19, incarcerated people in California state prisons are at an extraordinary risk of dying from the COVID-19 virus.

**MITIGATION MEASURES**

13. To mitigate the impact of this pandemic in the prisons, the CDCR must identify those people who are at highest risk for severe complications from the virus and ensure that they are safely situated, either by releasing them or ensuring that they are safely housed where they can best practice physical distancing and otherwise reduce the opportunities for infection to the extent possible. This will reduce the number of people who are likely to become seriously ill should they become infected and require treatment at the community hospital.

14. I further recommend taking immediate and concerted efforts to downsize the population to the lowest number possible at each prison, and particularly those with crowded dormitories. This process should prioritize rehousing outside the prison system, or releasing those who are elderly or have underlying medical conditions defined by the CDC and can safely be released consistent with public safety. This process will permit greater flexibility when prisons have outbreaks and require space to isolate and/or

quarantine people.  This will also permit those people remaining in prison to have greater opportunities to physically distance themselves, in keeping with the CDC Guidelines.

15. In addition to recommending every effort towards immediate downsizing, I also recommend that the prisons begin planning now to downsize further as conditions change. The change in conditions we need to anticipate is reduction in workforce (custody and health care staff) as workers respond to their personal needs (self-quarantine or isolation, caring for ill relatives, staying home with school-age children). Insufficient custody staffing poses an obvious risk to the safety of the institution. Insufficient health care staffing poses an obvious risk to the health of residents.

16. Taking immediate and concerted efforts to implement preventive steps as well as reducing the population to the lowest number possible to avoid infection benefits the incarcerated population, the staff and the community.  Priority should be given to those who are elderly or have underlying medical conditions defined by the CDC.  These measures will increase public safety via reducing public health risk.

Pursuant to 28 U.S.C. 1746, I declare under penalty of perjury that the foregoing is true and correct.  Executed this 8th day in April, 2020 in Tumwater, Washington.

_____
Marc Stern, M.D.