DONALD SPECTER – 083925
STEVEN FAMA – 099641
MARGOT MENDELSON – 268583
PRISON LAW OFFICE
1917 Fifth Street
Berkeley, California 94710-1916
Telephone: (510) 280-2621

MICHAEL W. BIEN – 096891
JEFFREY L. BORNSTEIN – 099358
ERNEST GALVAN – 196065
THOMAS NOLAN – 169692
LISA ELLS – 243657
JENNY S. YELIN – 273601
MICHAEL S. NUNEZ – 280535
JESSICA WINTER – 294237
MARC J. SHINN-KRANTZ – 312968
CARA E. TRAPANI – 313411
ALEXANDER GOURSE – 321631
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
Telephone: (415) 433-6830

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>GAVIN NEWSOM, et al.,<br><br>Defendants. | Case No. 2:90-CV-00520-KJM-DB<br><br>**DECLARATION OF MICHAEL W. BIEN IN SUPPORT OF PLAINTIFFS' RESPONSE TO APRIL 6, 2020 ORDER [ECF NO. 6580]**<br><br>Judge: Hon. Kimberly J. Mueller |

DECLARATION OF MICHAEL W. BIEN IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR COVID-19 RELIEF

[3523145.7]

# DECLARATION OF MICHAEL W. BIEN

I, Michael W. Bien, declare:

1. I am an attorney duly admitted to practice before this Court. I am a partner in the law firm of Rosen Bien Galvan & Grunfeld LLP, counsel of record for Plaintiffs. I have personal knowledge of the facts set forth herein, and if called as a witness, I could competently so testify. I make this declaration in support of Declaration Of Michael W. Bien In Support Of Plaintiffs' Emergency Motion For COVID-19 Relief.

2. Attached hereto as **Exhibit 1** is a redacted true and correct copy of the California Correctional Health Care Services (CCHCS) COVID-19 Monitoring Patient Registry last accessed at approximately 8:40 AM on April 8, 2020 and provided to me by *Plata* counsel. The log shows all of the incarcerated people at CDCR who have tested positive for COVID-19 to date. As of that time, 19 incarcerated people, including 11 *Coleman* class members in CDCR have tested positive, including eight EOP class members at CSP-Lancaster (LAC), three CCCMS class members and six non-MHSDS patients at California Institution for Men (CIM), one non-MHSDS patient at North Kern State Prison (NKSP), and one non-MHSDS patient at California Substance Abuse and Treatment Facility at Corcoran (SATF).

3. Attached hereto as **Exhibit 2** is a true and correct copy of CDCR's Population COVID-19 Tracking webpage, last accessed on April 8, 2020 at approximately 8:00 AM, available at https://www.cdcr.ca.gov/covid19/population-status-tracking/. The tracker shows that as of April 8, 2020 at approximately 8:00 AM, CDCR had tested 351 incarcerated people within CDCR, with 69 test results pending, 263 negative, 19 positive, 0 inconclusive, 26 individuals tested in the prior day, 0 patients recovered, and 0 deaths.

4. Attached hereto as **Exhibit 3** is a true and correct copy of CDCR's Employee COVID-19 Status webpage, last accessed on April 8, 2020 at approximately 8:00 AM. The tracker shows that as of the prior day, April 7, 2020, at 5:55 PM, 62 employees at 15 CDCR adult prisons and 4 other worksites, had self-reported positive COVID-19 test results.

5. Attached hereto as **Exhibit 4** is a true and correct copy of a March 30, 2020 memorandum entitled "Suspension of Regulatory Enforcement of Specified Skilled Nursing Facility Requirements" from the California Department of Public Health (CDPH) memorandum last accessed on April 7, 2020, available at https://www.cdph.ca.gov/Programs/CHCQ/LCP/Pages/AFL-20-32.aspx#.XoedFhz4SH0. The memorandum provides that "SNFs shall not refuse to admit or readmit a resident based on their status as a suspected or confirmed COVID-19 case. SNFs shall institute appropriate precautions to prevent the spread of infection to health care personnel and other residents as specified in AFL-20-25.1"

6. Attached hereto as **Exhibit 5** is a true and correct copy of Governor Newsom's Executive Order N-43-20 regarding the provision of telehealth, dated April 3, 2020, available at https://www.gov.ca.gov/wp-content/uploads/2020/04/4.3.20-EO-N-43-20.pdf. The Order limits for purposes of medical treatment in the pandemic numerous California laws concerning confidentiality and privacy to encourage telemedicine in all forms and specifically encourages telemedicine for mental health care.

7. Attached hereto as **Exhibit 6** is a true and correct copy of an email I received from counsel for Defendants on April 6, 2020 at about 5:22 PM transmitting a clean draft of CDCR's COVID-19 Temporary Transfer Guidelines and a redline draft showing changes from a prior version of CDCR's plan. The parties discussed these guidelines during the 10th COVID-19 taskforce call on April 7, 2020.

8. Attached hereto as **Exhibit 7** is a true and correct copy of the clean draft version of CDCR's COVID-19 Temporary Transfer Guidelines received in the above email. Defendants stated during the 10th COVID-19 Taskforce call on April 7, 2020 that a separate document entitled "COVID Emergency Mental Health Treatment Guidance," referred to in the first paragraph of Exhibit 7, had not yet been prepared, and Defendants do not know how the temporary units referenced therein will be staffed, where they will be, or whether they will even exist at every institution. I also understand from the course of the 10 taskforce meetings that most group therapy has ceased system wide, and that

2

1  most, if not all, clinical contacts are now occurring cell-front in high security units, to the
2  extent they are occurring at all.
3       9.     Attached hereto as **Exhibit 8** is a true and correct copy of an email I received
4  from counsel for Defendants on March 24, 2020 transmitting an attached email chain with
5  guidance from DAI to the field regarding guidelines on essential and non-essential
6  movement. The attachment is also included as part of this exhibit.
7       10.     Attached hereto as **Exhibit 9** is a redacted true and correct copy of an email I
8  received from counsel for Defendants on April 2, 2020 transmitting four memoranda
9  released by CDCR's Division of Adult Institutions (DAI), which I describe in the next four
10 paragraphs.
11      11.     Attached hereto as **Exhibit 10** is a redacted true and correct copy of a DAI
12 memorandum dated April 1, 2020, entitled "Restricted Housing, Reception Centers,
13 Psychiatric Inpatient Program Phone Calls." I have repeatedly requested that Defendants
14 make use of cell phones to lessen the risk of virus transmission and burden on custody
15 officers and increase the ability of incarcerated persons to communicate with their families
16 and friends.
17      12.     Attached hereto as **Exhibit 11** is a redacted true and correct copy of a DAI
18 memorandum dated April 1, 2020, entitled "COVID-19 Electronic Appliance Program for
19 Restricted Housing Inmates." I have repeatedly requested that Defendants increase access
20 to entertainment devices of all forms in segregation, quarantine and isolation units. As
21 noted in this document, some segregation units housing class members have no electricity,
22 no access to cable television, and Defendants do not have sufficient numbers of wind-up
23 radios to serve the needs of this population.
24      13.     Attached hereto as **Exhibit 12** is a redacted true and correct copy of a DAI
25 memorandum dated April 1, 2020, entitled "COVID-19 Programming Opportunities For
26 Inmates Participating In The Mental Health Services Delivery System In Restricted
27 Housing." Defendants have attempted to increase access to yard for segregation units by
28 adding third watch access in some but not all segregation units housing class members.

14. Attached hereto as **Exhibit 13** is a redacted true and correct copy of a DAI memorandum dated April 2, 2020, entitled "COVID-19 Emergency Transfers From Level II Dormitories." These transfers to date do not include any attempt to reduce the density of most of the crowded dorms depicted in the photographs included in Plaintiffs' Emergency Motion.

15. Attached hereto as **Exhibit 14** is a true and correct copy of an email I received from counsel for Defendants on April 7, 2020 at about 5:00 PM enclosing part of Defendants' response to the Court's April 6, 2020 Order to provide information concerning *Coleman* class members, ECF 6580. The attachments to this email are described in paragraphs 16 through 20 below. As discussed in paragraph 21 below, counsel for Defendants sent additional documents in a second email at about 5:14 PM. This second email contained a letter dated April 7, 2020 from counsel for CDCR setting forth Defendants' narrative response to the Court's April 6, 2020 order and describing the attachments sent in counsel for Defendants' April 7, 2020, 5:00 PM and 5:14 PM emails.

16. Attached hereto as **Exhibit 15** is a true and correct copy of an a document attached to the April 7, 2020, 5:00 PM email entitled "Mental Health Patients by Institution and Mental Health Level of Care as of 4/7/2020."

17. Attached hereto as **Exhibit 16** is a true and correct copy of an a document attached to the April 7, 2020, 5:00 PM email entitled "Mental Health Patients by Institution and Bed Type as of 4/7/2020."

18. Attached hereto as **Exhibit 17** is a true and correct copy of an a document attached to the April 7, 2020, 5:00 PM email entitled "COVID-19 Mandatory 14-Day Modified Program."

19. Counsel for Defendants also transmitted an attachment with their April 7, 2020, 5:00 PM email an attachment entitled "Pictures of Social Distancing Markings at CDCR Institutions." I have not attached here these photographs, which include un-redacted images of class members and staff.

4
DECLARATION OF MICHAEL W. BIEN IN SUPPORT OF PLAINTIFFS' RESPONSE TO APRIL 6, 2020 ORDER
[ECF NO. 6580]

[3523145.7]

20. Attached hereto as **Exhibit 18** is a true and correct copy of one tab from an Excel spreadsheet entitled "DSH Coleman Census and COVID risk factors 4-6-20_v1 " that counsel for Defendants enclosed in their April 7, 2020, 5:00 PM email. I have not attached the other tabs from this spreadsheet because they are voluminous rosters of class members that would require redactions of the relevant information due to the protective orders in this matter.

21. Attached hereto as **Exhibit 19** is a true and correct copy of the second email I received from counsel for Defendants on April 7, 2020 at about 5:14 PM. This email transmitted a letter dated April 7, 2020 from counsel for CDCR setting forth Defendants' response to the Court's April 6, 2020 order and describing the attachments sent in counsel for Defendants' April 7, 2020 5:00 PM and 5:14 PM emails, one additional new attachment described below in paragraph 23, and a duplicative copy of the memorandum entitled COVID-19 Mandatory 14-Day Modified Program described above.

22. Attached hereto as **Exhibit 20** is a true and correct copy of an the letter dated April 7, 2020 from counsel for CDCR setting forth Defendants' response to the Court's April 6, 2020 order and describing the attachments sent in counsel for Defendants' 5:00 PM and 5:14 PM emails.

23. Counsel for Defendants' April 7, 2020 5:14 PM email also enclosed an attachment entitled "Coleman Class Members with at least one COVID-19 Risk Factor as of 4/7/2020." I have not attached this document here because it is voluminous roster of class members that would require redactions of the relevant information due to the protective orders in this matter.

24. There were 38 suicides in CDCR in 2019. Twenty-seven of these 38 suicides were of participants in the Mental Health Services Delivery System, and many of the decedents had been hospitalized in the months before their deaths and then discharged prior to their suicides. Nine suicides occurred at CSP-Sacramento (SAC) in 2019 and eight of the nine were EOP; six of the nine suicides were in EOP segregation units—five in the PSU and one in the EOP-ASU Hub. Four of the nine suicides involved discharges

from psychiatric hospitalization in a crisis bed or PIP within a few weeks and as little as five hours before the death. Catherine M. Johnson, a paralegal employed at my firm working under my direction and supervision, calculated the above figures based on information from CDCR's death notifications, suicide reports, and electronic health records.

25. Attached hereto as **Exhibit 21** is a true and correct copy of an email from counsel for CDCR on March 27, 2020 at about 10:02 AM confirming that all external transfers from SAC to MCHB, ICF, and Acute levels of care have been suspended since March 25, 2020.

26. Defendants provide a Health Care Placement Oversight Program (HCPOP) Information Report to Plaintiffs and the Special Master as Enclosure 6a to their routine monthly reporting in *Coleman*. Attached hereto as **Exhibit 22** is a true and correct copy of the most recent Enclosure 6a HCPOP report that we received on March 16, 2020, which reflects point-in-time data as of January 27, 2020.

27. Attached hereto as **Exhibit 23** is a true and correct copy of an email from counsel for CDCR on March 28, 2020 at about 11:54 AM entitled, "RE: Coleman - COVID 19 Emergency Plan to Provide Mental Health Care."

28. Attached hereto as **Exhibit 24** is a redacted true and correct copy of an email from counsel for CDCR on March 31, 2020 at about 1:50 PM entitled, "RE: Coleman - Inpatient Census and Waitlist Report/Out of ULD LRH."

29. CDCR has not increased the amount of "gate money" provided to paroling persons in more than 20 years—it remains at $200, less various expenses charged to the paroling person by CDCR for clothing and transportation. CDCR also provides 30 days of prescription medication. Additional financial resources and medication for 90 days will increase the likelihood of safe reentry given the challenges of the pandemic.

//

//

30. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration is executed at San Francisco, California this 8th day of April, 2020.

*/s/ Michael W. Bien*
Michael W. Bien