XAVIER BECERRA
Attorney General of California
MONICA N. ANDERSON
Senior Assistant Attorney General
ADRIANO HRVATIN
Supervising Deputy Attorney General
ELISE OWENS THORN, State Bar No. 145931
TYLER V. HEATH, State Bar No. 271478
KYLE A. LEWIS, State Bar No. 201041
LUCAS HENNES, State Bar No. 278361
Deputy Attorneys General
  1300 I Street, Suite 125
  P.O. Box 944255
  Sacramento, CA 94244-2550
  Telephone: (916) 210-7325
  Fax: (916) 324-5205
  E-mail: Tyler.Heath@doj.ca.gov
*Attorneys for Defendants*

ROMAN M. SILBERFELD, State Bar No. 62783
GLENN A. DANAS, State Bar No. 270317
ROBINS KAPLAN LLP
  2049 Century Park East, Suite 3400
  Los Angeles, CA 90067-3208
  Telephone: (310) 552-0130
  Fax: (310) 229-5800
  E-mail: RSilberfeld@RobinsKaplan.com
*Special Counsel for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **RALPH COLEMAN, et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**GAVIN NEWSOM, et al.,**<br><br>Defendants. | 2:90-cv-00520 KJM-DB (PC)<br><br>**DECLARATION M. DICRO IN SUPPORT OF DEFENDANTS' RESPONSE TO ORDER TO SHOW CAUSE**<br><br>Judge: The Hon. Kimberly J. Mueller |

I, M. DiCiro, declare:

1.     I am a Chief Psychologist in the Forensic Services Division for the California Department of State Hospitals (DSH), a position I've held since January 2016. I have personal knowledge of the statements in this declaration and could testify to them if called to do so. I submit this declaration to support Defendants' response to the Court's April 3, 2020 order to show cause.

/ / /

1

DiCiro Decl. Supp. Defs' Resp. OSC  (2:90-cv-00520 KJM-DB (PC))

2.    I received my Doctoral Degree in Clinical Psychology in 2000 from Spaulding University in Louisville, Kentucky.  I was certified by the America Board of Professional Psychology in Forensic Psychology in April 2019.

3.    Before becoming one of DSH's Chief Psychologists in the Forensic Services Division, I worked as a Senior Psychologist with CDCR from January 2008 to December 2015.  I served as the supervisor of the unlicensed mental health crisis bed unit and then became the clinical director of the Correctional Treatment Center at California State Prison Sacramento (CSP-SAC) from January 2008 to December 2015.  I was a staff psychologist from April 2007 to January 2008 with CDCR.  Prior to my employment with CDCR, I worked in private practice, primarily focused on the forensic assessment of juveniles and adult sex-offenders.

4.    As the Chief Psychologist in the Forensic Services Division, my duties include oversight and management of the Offenders with Mental Health Disorder program.  This includes oversight of DSH's evaluations of Offenders with Mental Health Disorders (OMHD).  I am also familiar with the evaluation and hearing process for the offenders with mental health disorders.

5.    Once the COVID-19 pandemic started to present an exigent threat to the wellness of DSH's staff, patients, and facilities, I helped  ensure that evaluations relative to OMHDs are completed and to ensure that there are processes in place with shelter-in-place orders.  I have been in contact with the Board of Parole Hearings and the California Department of Corrections and Rehabilitation (CDCR) to ensure that the evaluation process occurs in a measured and safe manner—the safety of the community is at risk if we release inmates without taking required steps.

6.    Currently, DSH is required to admit OMHDs if the person has been determined to have a severe mental health disorder that is not currently in remission or cannot be kept in remission without treatment and represents a substantial danger of physical harm to others.  If an inmate is determined to meet the OMHD criteria and arrives at their Minimum Eligible Release Date (MERD), the person must be released from CDCR and can either go to DSH or be paroled to the community.  My understanding is that an inmate cannot be held in CDCR past his or her MERD—to do so could give rise to a constitutional violation for over-detention.

2

7.    An inmate is determined to be an offender with a mental health disorder if she has a severe mental health disorder and that disorder is not in remission, or cannot be kept in remission without treatment, and is a substantial danger of physical harm to others.  OMHDs, by definition, have committed a violent crime, of which their severe mental disorder was one of the causes or an aggravating factor in the commission of the crime.  OMHDs need to receive mental health services upon release to parole and are considered a high public safety risk if their severe mental disorder is left untreated.

8.    Prior to an inmate's release, the psychologist in the OMHD Assessment Unit at CDCR considers a number of factors, including: (a) if the inmate has a severe mental health disorder, that the disorder is not in remission, or cannot be kept in remission without treatment; (b) that the severe mental health disorder was one of the causes or was an aggravating factor in the prisoner's criminal behavior; (c) that the inmate has been in treatment for the severe mental health disorder for 90 days or more within the year prior to the inmate's parole release date; and (d) that by reason of the inmate's severe mental health disorder, the inmate represents a substantial danger of physical harm to others.

9.    If CDCR's evaluator finds that the inmate has a severe mental health disorder, a DSH evaluator conducts a separate and independent evaluation of the inmate's factors.

10.    CDCR's Chief Psychiatrist certifies that the inmate meets criteria after reviewing CDCR and DSH's evaluation—the certification paperwork then is submitted to a Board of Parole Hearings officer for review.  If CDCR's Chief Psychiatrist certifies and the CDCR and DSH evaluator disagree, BPH appoints two independent evaluators.  If one of the independent professionals agrees with CDCR's Chief Psychiatrist, the certification paperwork is submitted to the Board of Parole Hearings officer for review.

11.    If the Board of Parole Hearings officer finds that the inmate meets the criteria for an offender with a mental health disorder, the inmate is sent to DSH to serve his or her parole at the time of release pending a certification hearing.

/ / /

/ / /

12.    The inmate may request a Board of Parole Hearings hearing to determine if he or she meets the criteria for an offender with a mental health disorder.  The inmate may also appeal the Board of Parole Hearings' decision to the Superior Court.

13.    If the Board of Parole Hearings or the Superior Court determine that the inmate does not meet criteria for an offender with a mental health disorder, the person is released into the community on state parole.

14.    If the patient is still in DSH's care at the end of the parole term, which is typically three years long, DSH evaluates the patient's remission and can request that the local District Attorney file a petition for a one-year civil commitment that can be renewed annually.

15.    OMHDs also have a higher rate of recidivism than other commitment types.  OMHDs released from DSH facilities directly to parole recidivate at the highest rate, compared to OMHDs released to DSH's Conditional Release Program.  The Conditional Release Program is a statewide system of community based services which treats patients with the following commitment types: Not Guilty by Reason of Insanity, Incompetent to Stand Trial, OMHDs, and some parolees who have been released to outpatient status.  Most of these arrests occur in the first year of release.  In a five-year span, OMHD patients released into the community from DSH recidivate at a rate of 56.9 %.  This is according to preliminary results of DSH's Conditional Release Program recidivism study.  I am the lead researcher on this study, which was approved by the California Department of Justice, California Committee for the Protection of Human Subjects and the Institutional Review Board for the Department of State Hospitals.

16.  Placement of OMHDs into the community through DSH's Conditional Release Program is not a practicable alternative.  DSH's Conditional Release Program has limited locked facility options for placement and housing providers typically used for DSH's Conditional Release Program patients and are not accepting new patients during the Governor's shelter-in-place order.

/ / /

/ / /

/ / /

4

1     I declare under penalty of perjury that the information in this declaration is true and correct

2     to the best of my knowledge.  Executed on April 8, 2020, Sacramento, California.

3                                                           _/s/ M. DiCiro_____

4                                                           M. DiCiro
                                                            (Original Signature Retained by Counsel)

5

6     CF1997CS0003

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28