XAVIER BECERRA
Attorney General of California
MONICA N. ANDERSON
Senior Assistant Attorney General
ADRIANO HRVATIN
Supervising Deputy Attorney General
ELISE OWENS THORN, State Bar No. 145931
TYLER V. HEATH, State Bar No. 271478
KYLE A. LEWIS, State Bar No. 201041
LUCAS HENNES, State Bar No. 278361
Deputy Attorneys General
　1300 I Street, Suite 125
　P.O. Box 944255
　Sacramento, CA 94244-2550
　Telephone:  (916) 210-7325
　Fax: (916) 324-5205
　E-mail:  Tyler.Heath@doj.ca.gov
*Attorneys for Defendants*

ROMAN M. SILBERFELD, State Bar No. 62783
GLENN A. DANAS, State Bar No. 270317
ROBINS KAPLAN LLP
　2049 Century Park East, Suite 3400
　Los Angeles, CA 90067-3208
　Telephone:  (310) 552-0130
　Fax:  (310) 229-5800
　E-mail:  RSilberfeld@RobinsKaplan.com
*Special Counsel for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **RALPH COLEMAN, et al.,**<br><br>　　　　　　　　　　　　Plaintiffs,<br><br>　　v.<br><br>**GAVIN NEWSOM, et al.,**<br><br>　　　　　　　　　　　　Defendants. | 2:90-cv-00520 KJM-DB (PC)<br><br>**DEFENDANTS' MOTION FOR RECONSIDERATION, REQUEST TO VACATE THE APRIL 21, 2020 EVIDENTIARY HEARING, AND ALTERNATIVE REQUEST FOR CLARIFICATION OF APRIL 10, 2020 ORDER (ECF NO. 6600)** |

**INTRODUCTION**

Defendants request the Court to reconsider its April 10, 2020 order setting an evidentiary hearing regarding the Department of State Hospitals' (DSH) admissions and discharge policy. State officials are working around the clock to combat a global pandemic that has no foreseeable horizon. In this time of worldwide crisis, any evidentiary hearing will significantly impair and divert resources from DSH's ability to manage the ongoing COVID-19 crisis and the consequence will be less time and energy to devote to staff and patient care and safety.

1

Defs.' Mot. for Reconsideration; Req. for Clarification (2:90-cv-00520 KJM-DB (PC))

Furthermore, the evidentiary hearing is no longer necessary, as its apparent focus, DSH's suspension of intake for *Coleman* class members, is no longer in effect.

If the Court wants to nonetheless hold an evidentiary hearing, Defendants request clarification so that they have adequate due process and understand the hearing's purpose and scope. The Court's April 10, 2020 order setting the evidentiary hearing provides little direction as to what specific factual issues will be the subject of the hearing or that call for witness testimony, which party holds the burden of proof, and whether any other witnesses, apart from those listed in the order, may be called and questioned. Defendants also request clarification concerning the witness examination process, such as whether the Court intends to examine witnesses, as it did during the Dr. Golding proceedings, with counsel asking follow-up questions. Given the pending worldwide COVID-19 crisis, which has no horizon, Defendants do not want to engage in unnecessary litigation. But if the Court intends to hold a trial, Defendants have well-established due-process rights, including the necessity of sufficient notice to adequately prepare for the trial so they can make a full record showing that they have appropriately exercised their executive authority to, like here, make rational and informed decisions to keep patients with serious mental illness safe in unexpected and unpredictable situations.

**BACKGROUND**

The world, like DSH and the California Department of Corrections and Rehabilitation (CDCR), continues to be in extreme crisis management to prevent and limit the spread of COVID-19. The Court directed its Special Master and team of experts to hold task-force meetings to monitor Defendants' collective COVID-19 response, which have been robust and productive (as the Special Master reported in his most recent report (ECF No. 6579) and at the April 10, 2020 status conference (ECF No. 6602)), including with respect to DSH's response to the worldwide pandemic and ongoing crisis.

Although the Court established the task force to avoid litigation, presumably so that State officials could focus on protecting inmate-patients and staff in an ever-evolving pandemic requiring real-time decision-making, the Court issued an order to show cause for DSH to "show why [the] court should not order defendants promptly to admit *Coleman* class members to

2

Defs.' Mot. for Reconsideration; Req. for Clarification (2:90-cv-00520 KJM-DB (PC))

*Coleman*-designated inpatient beds in DSH consistent with the protocols established for admission of OMHDs to DSH facilities." (ECF No. 6572 at 2.) DSH presented uncontroverted evidence showing why the Court should discharge the order to show cause, including productive ongoing discussions between DSH, CDCR, and the Special Master's experts regarding a protocol for resuming the transfer of *Coleman* class members to DSH in a safe and controlled manner during the COVID-19 global emergency, the real dangers DSH faced (and continues to face) when it initially suspended transfers, and the deference DSH was due during an emergency of this magnitude. As Defendants briefly explained during the April 10, 2020 status conference, DSH is working in real time to address this still-evolving pandemic. New facts and circumstances exist to obviate the need for an evidentiary hearing.

DSH is authorized to make executive decisions in crisis and emergency circumstances to protect its patients and staff. Exercising appropriate authority, the State's Executive Branch has made, and continues to make, informed decisions to address COVID-19. (*See* ECF No. 6591 at 10-11.) DSH's admissions and discharge policy at issue here expired on April 15, 2020, and, consistent with its authority, DSH will not be renewing the suspension of admissions of *Coleman* patients. (Hendon Decl., ¶ 9; Ex. A.) Instead, DSH is implementing a protocol to resume limited transfers of appropriately screened inmates to DSH, including *Coleman* patients, during the pandemic. (Hendon Decl., ¶ 10; Ex. B.) Given that *Coleman* patients will now be admitted to DSH hospitals as clinically indicated, there is no longer any need for an evidentiary hearing. Defendants are working daily to enact progressive, robust, and proactive measures to prevent and manage the spread of COVID-19 (all of which are available to this Court and the public[1]) throughout CDCR, including to DSH facilities, which to date have no patients testing positive for the disease. (Hendon Decl., ¶ 15.) Recently, Defendants in the *Plata v. Newsom* case filed extensive evidence showing the pre-emptive and on-going pro-active collaborative steps taken by the Governor, CDCR, and the *Plata* Receiver to meet this crisis.[2] For all of these reasons, the Court's proposed evidentiary hearing is premature, if not moot.

---

[1] *See* website https://www.cdcr.ca.gov/covid19/ (last accessed April 15, 2020.)
[2] *See* ECF Nos. 3272, 3274, 3275, 3277, 3278, and 3283 in *Plata v. Newsom*, No. 01-cv-1351-JST (N.D. Cal.).

# DISCUSSION

## I. THE COURT SHOULD RECONSIDER ITS ORDER AND VACATE THE EVIDENTIARY HEARING SO DEFENDANTS CAN CONTINUE TO FOCUS ON PROTECTING PATIENTS FROM COVID-19.

A district court has the inherent power to reconsider and modify its interlocutory orders prior to the entry of judgment. *Smith v. Massachusetts*, 543 U.S. 462, 475 (2005). Reconsideration of an order is appropriate if the district court is presented with newly discovered evidence or committed clear error, or if there is an intervening change in the controlling law. *Kona Enterprises, Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000).

Here, the Court appears to have set this matter for an evidentiary hearing to determine the propriety and constitutional effect of DSH's suspension of new admissions to its hospitals, although the specific topics or scope of the hearing are not clear.  (*See* ECF No. 6600 at 3.) Reconsideration of the April 10, 2020 order is appropriate because the circumstances have changed since the Court set the evidentiary hearing.  Specifically, DSH's suspension of admissions of *Coleman* patients will lapse on April 16, 2020 and be replaced with a protocol to ensure the safe transfer of inmates most in need of its beds.[3]  (Hendon Decl., ¶ XX.)  DSH's new policy will allow for the admission of *Coleman* patients to DSH hospitals based on individual needs and subject to certain protocols designed to minimize the risk of COVID-19 transmission.  (Hendon Decl., ¶¶ 10, 13; Ex. B.)  As such, no evidentiary hearing is necessary because *Coleman* patients are being offered controlled access to DSH inpatient services.

An evidentiary hearing at this time would also undermine State actors' ability to make informed, reasonable, responsive, and critical decisions in moments of crisis like the pandemic still challenging world leaders right now.  Defendants' response to the order to show cause addressed the deference due the executive branch, including prison and state hospital officials, entrusted with the care of mentally ill inmates.  As the United States Court of Appeal for the Fifth Circuit recently noted, state authorities are entitled to great deference concerning responses to a public health crisis.  *In re: Abbott*, Case No. 20-50264, Document No. 00515374865 (5th Cir.,

---

[3] DSH will continue its temporary suspension of other classes of patients as part of its COVID-19 mitigation efforts.  (Declaration of C. Hendon, ¶ 14.)

4

Defs.' Mot. for Reconsideration; Req. for Clarification (2:90-cv-00520 KJM-DB (PC))

Apr. 7, 2020). "[W]hen faced with a society-threatening epidemic, a state may implement emergency measures that curtail constitutional rights so long as the measures have at least some 'real or substantial relation' to the public health crisis and are not 'beyond all question, a plain, palpable invasion of rights secured by the fundamental law.'" *Id*. at 13 (citing *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11, 31 (1905)). "Courts may ask whether the state's emergency measures lack basic exceptions for 'extreme cases,' and whether the measures are pretextual—that is, arbitrary or oppressive. *Id.* (citing *Jacobson* at 38). At the same time, however, courts may not second-guess the wisdom or efficacy of the measures. *Id.* (citing *Jacobson,* 197 U.S. at 28, 30). Further, "[i]t is no part of the function of a court" to decide which measures are "likely to be the most effective for the protection of the public against disease." *Id.* (citing *Jacobson*, 197 U.S. at 30). A court's "fail[ure] to apply (or even acknowledge) the framework governing emergency exercises of state authority during a public health crisis, established over 100 years ago in *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11 (1905)" is "extraordinary error." *Id.* at 10; *see also id.* at 13 ("*Jacobson* remains good law").

Similarly, on the same date as this Court's most recent status conference, an Illinois district court emphasized the deference due state officials in the prison context when responding to this pandemic. *Money v. Pritzker,* --- F. Supp. 3d ---, 2020 WL 1820660, at *1 (N.D. Ill. Apr. 10, 2020). Actions that require courts to get involved in prison management raise "serious concerns under core principles of federalism and the separation of powers." *Id*. at *15. Federalism counsels against courts getting involved in state prison management, while the separation of powers commits the task of running prisons to the "executive and legislative branches." *Id*. at *16. The concerns about "institutional competence [are] especially great where, as here, there is an ongoing, fast-moving public health emergency." *Id*.

DSH took temporary and appropriate action to prevent the introduction and spread of COVID-19 within its facilities to protect their staff and patients, which includes *Coleman* class members. (*See* ECF No. 6590.) Now, responding to fast-evolving circumstances, DSH has implemented a policy allowing for essential transfers of *Coleman* class members in a safe and controlled manner. The Court should afford those decisions significant deference, particularly

5

given that DSH continues to work with the Special Master to see if it can reach agreement on the specifics of that policy for transferring patients as safely as possible based on evolving public health recommendations and as new evidence emerges.  Good cause exists for this Court to reconsider its April 10 order, and the April 21 evidentiary hearing should be vacated.

## II.     DEFENDANTS REQUEST THAT THE COURT CLARIFY THE NATURE OF ANY EVIDENTIARY HEARING.

If the Court elects to proceed with the April 21 evidentiary hearing, Defendants need clarity to adequately prepare for trial and make a full and complete record.  The Court's April 10 order stated only that it intends to hold a focused evidentiary hearing "on the issue of Coleman class members' access to DSH hospitals," with "testimony from Drs. Warburton and Bick and an expert to be designated by plaintiffs[.]"  (ECF 6600 at 4.)  This vague description provides insufficient information for Defendants to adequately prepare for an evidentiary hearing set on just 11 days' notice—with the Court giving Plaintiffs expedited discovery and demanding that Defendants meet other obligations on shortened time apart from the trial.  (*Id.* at 3.)

Defendants are entitled to due process.  At a minimum, they must be informed of the purpose of the hearing, which party bears the burden of proof, and whether the parties will be conducting the examinations or allowed to cross-examine or call additional witnesses.  Are Defendants allowed to submit trial briefs and motions in limine?  Will the Court allow opening and closing statements?  Will the Court, as it did during the Dr. Golding evidentiary proceeding, ask questions first, and in which order will the parties be allowed to examine the witnesses?  Will the Court again give Plaintiffs the opportunity to conduct direct and re-direct witness examinations?  Can the parties submit proposed factual findings and legal conclusions?  Moreover, depending on the issues set for this "focused" hearing, Defendants note that the witnesses the Court identified—Dr. Bick, Dr. Warburton, and Plaintiffs' expert Dr. Stern—may not be best positioned to provide relevant testimony.  Will Defendants have an opportunity to designate rebuttal witnesses, including expert witnesses?  The Court's order setting this evidentiary hearing raises many unanswered questions.  In the event that the Court is considering

6

Defs.' Mot. for Reconsideration; Req. for Clarification (2:90-cv-00520 KJM-DB (PC))

the April 21, 2020 evidentiary hearing to be part of a larger contempt proceeding centered around its April 10, 2020 order to show cause, Defendants are entitled to additional procedural protections that are not present here.[4]  Defendants are entitled to a fair hearing with notice as to the expectations placed upon them.  Defendants therefore seek clarification of the nature of this evidentiary hearing well in advance of the April 21 hearing.  Once the Court has set forth clear parameters for the hearing, Defendants request that they be permitted to submit a list of proposed witnesses to respond to the Court's questions.

**CONCLUSION**

In light of DSH's newly adopted admission protocols and the deference accorded to the executive branch in times of severe crisis, the Court should reconsider its April 10 order and vacate the April 21 evidentiary hearing so Defendants can focus on their work of preventing and managing the spread of COVID-19.  But if the Court wants to proceed with the evidentiary hearing, Defendants are entitled to due process, and they ask that the Court clarify its April 10 order and identify the hearing's scope and procedures so Defendants can make a clear record.

Dated:  April 15, 2020                                        Respectfully submitted,

XAVIER BECERRA
Attorney General of California
ADRIANO HRVATIN
Supervising Deputy Attorney General

/s/ *Lucas Hennes*

LUCAS L. HENNES
Deputy Attorney General
*Attorneys for Defendants*

CF1997CS0003
FINAL DRAFT motion for reconsideration of 4.10.20 order

---

[4] In the Ninth Circuit, a contemnor must be afforded "'reasonable notice of the specific charges and an opportunity to be heard,' and such notice of the contempt charge "must be explicit in order to conform to the requirements of due process." *Little v. Kern Cty. Superior Ct.*, 294 F.3d 1075, 1080-81 (9th Cir. 2002) (citations omitted).  To show civil or criminal contempt, a court must determine that:  1) a court order was in effect, 2) the order required specific conduct by respondent, and 3) the respondent failed to comply with the court's order.  *United States v. City of Jackson, Miss.*, 359 F.3d 727, 731 (5th Cir. 2004).  The party moving to hold a party in civil contempt must prove each element by clear and convincing proof, rather than a preponderance of evidence.  Alternatively, criminal contempt requires proof beyond a reasonable doubt and a jury trial for serious criminal contempt. *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827 (1994).

7

Defs.' Mot. for Reconsideration; Req. for Clarification (2:90-cv-00520 KJM-DB (PC))