| | |
|---|---|
| XAVIER BECERRA<br>Attorney General of California<br>MONICA N. ANDERSON<br>Senior Assistant Attorney General<br>ADRIANO HRVATIN<br>Supervising Deputy Attorney General<br>ELISE OWENS THORN, State Bar No. 145931<br>TYLER V. HEATH, State Bar No. 271478<br>KYLE A. LEWIS, State Bar No. 201041<br>LUCAS HENNES, State Bar No. 278361<br>Deputy Attorneys General<br>  1300 I Street, Suite 125<br>  P.O. Box 944255<br>  Sacramento, CA 94244-2550<br>  Telephone: (916) 210-7325<br>  Fax: (916) 324-5205<br>  E-mail: Tyler.Heath@doj.ca.gov<br>*Attorneys for Defendants* | ROMAN M. SILBERFELD, State Bar No. 62783<br>GLENN A. DANAS, State Bar No. 270317<br>ROBINS KAPLAN LLP<br>  2049 Century Park East, Suite 3400<br>  Los Angeles, CA 90067-3208<br>  Telephone: (310) 552-0130<br>  Fax: (310) 229-5800<br>  E-mail: RSilberfeld@RobinsKaplan.com<br>*Special Counsel for Defendants* |

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **RALPH COLEMAN, et al.,**<br><br>                                    Plaintiffs,<br><br>              v.<br><br>**GAVIN NEWSOM, et al.,**<br><br>                                    Defendants. | 2:90-cv-00520 KJM-DB (PC)<br><br>**DECLARATION OF C. HENDON IN SUPPORT OF DEFENDANTS' MOTION FOR RECONSIDERATION** |

I, C. Hendon, declare:

1.  I am currently employed by the California Department of State Hospitals (DSH) as the Deputy Director for Hospital Strategic Planning and Implementation. I have held this position since December 2018. I submit this declaration to support Defendants' Motion for Reconsideration and Clarification of the Court's April 10, 2020 order. I have personal knowledge of the statements in this declaration and could testify to them if called to do so.

1

Decl. C. Hendon Supp. Defs.' Mot. Reconsideration & Clarification (2:90-cv-00520 KJM-DB (PC))

2. Before being named Deputy Director, I served in a number of other positions at DSH, including as the Enterprise Application Operations Director, Chief of Office of Information and Logistics, Director of the Project Management Office, and a project manager.

3. I received a Bachelor of Arts in psychology from the University of California, Davis, and a Masters of Arts in Counseling Psychology from California State University, Sacramento.

4. In my current position as Deputy Director, I oversee key functions supporting DSH's hospital operations, including, but not limited to, patient referral processing, system-wide admission coordination, data analytics, and policy and regulation development. I also oversee a portion of bed management in a collaborative process between DSH facilities, as well as between the California Department of Corrections and Rehabilitation (CDCR) and DSH. Specifically, I facilitate bed activation and planning, and oversee census and patient movement tracking and reporting. I also manage the development of patient population projections for capacity and other planning.

5. Based on my DSH experience, I have knowledge of, among other things, DSH's patient population and admission types, facility design and capacity, and admission and discharge processes. Moreover, I work closely with CDCR regarding the referral, admission, and discharge of CDCR inmate patients to and from DSH under California Penal Code section 2684. That Penal Code section provides for CDCR to refer patients to DSH for treatment and for the Director of DSH, in her discretion, to accept the patient for treatment. I am familiar with the Memorandum of Understanding agreed to between CDCR and DSH and the associated policies and procedures, which govern the transfer of CDCR patients to DSH for care.

6. Now, as DSH responds to the COVID-19 crisis, my duties include actively participating in the planning for the suspension of admissions and discharges, operationalizing COVID-19 responses to preadmission processes for the small number of admissions that must still occur, and tracking key metrics to assess the impact of operational changes.

7. As previously discussed, DSH temporarily suspended admissions of six of its seven commitment types to help DSH combat the spread of COVID-19 to DSH's hospitals. This suspension included a 30-day suspension of patients admitted to DSH from CDCR under

2

Decl. C. Hendon Supp. Defs.' Mot. Reconsideration & Clarification (2:90-cv-00520 KJM-DB (PC))

California Penal Code section 2684. DSH temporarily suspended admissions of Penal Code section 2684 patients on March 16, 2020. DSH's COVID-19 admission suspension directives can be found online at: https://www.dsh.ca.gov/Treatment/index.html.

8. The suspension of admissions of Penal Code section 2684 patients will automatically expire at midnight on April 15, 2020, unless DSH's Director renews it.

9. DSH's Director will not renew the suspension and will allow it to expire. A true copy of the DSH Director's April 15, 2020 directive is attached to this declaration as Exhibit A.

10. For future transfers, DSH, in collaboration with CDCR, has created a protocol for transfer of *Coleman* class members to DSH. CDCR has agreed to this protocol. A true copy of the present version of the protocol is attached to this declaration as Exhibit B.

11. Before issuing the protocol, DSH discussed it with the Special Master and his experts. These meetings occurred on or about April 9, 2020 from 10:00 – 11:00 am PST, April 13, 2020 from 3:00 – 4:00 pm PST, and April 15, 9:30 – 10:00 am PST. These meetings included discussions of the current best clinical recommendations of limiting movement of all populations to the greatest extent possible, what kind of situations would warrant transfer, what would be the appropriate screening protocols for any necessary transfers, and to what limited extent DSH could quarantine any admissions.

12. I understand that the protocol was also provided to Plaintiffs on or around April 13, 2020.

13. This protocol provides a framework for temporary guidelines that outline the safest way to transfer patients from CDCR into DSH during this pandemic. This protocol is intended to mitigate as much risk as possible, given the particular vulnerability of DSH's patient population and the high number of patients in common areas. It provides for increased and focused communications between the institutions, emphasizing early medical psychiatric consultation to ensure that the psychiatric risk is balanced with the risks associated with the virus. The protocol also provides for a 14-day transfer quarantine, in the absence of COVID-19 testing, to minimize the risk of introducing the virus into DSH facilities.

3

Decl. C. Hendon Supp. Defs.' Mot. Reconsideration & Clarification (2:90-cv-00520 KJM-DB (PC))

14. It is my understanding that at this time, that with the exception of admissions for Penal Code Section 2684 and 2962 patients, DSH's Director will extend the suspension of all other patient admissions for an additional 30 days beyond their initial DSH expiration date.

15. At this time, DSH still does not have any patients who have tested positive for COVID-19.

I declare under penalty of perjury that the information in this declaration is true and correct to the best of my knowledge. Executed on April 15, 2020, Sacramento, California.

                                        ___//s// Catherine Hendon_____
                                        C. Hendon, M.A., Deputy Director

CF1997CS0003

4

Decl. C. Hendon Supp. Defs.' Mot. Reconsideration & Clarification (2:90-cv-00520 KJM-DB (PC))

Exhibit A

State of California – Department of State Hospitals                          Gavin Newsom, Governor



# Memorandum

Date:        April 15, 2020

Subject:     DEPARTMENT DIRECTIVE ON SUSPENSION OF PATIENT ADMISSIONS FROM THE CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION (CDCR)

Pursuant to Governor Gavin Newsom's Proclamation of a State of Emergency dated March 4, 2020, the Director of the Department of State Hospitals issued a Directive suspending the admission of patients placed at DSH facilities pursuant to Penal Code section 2684 (*Coleman* patients). This Directive is set to expire on April 15, 2020. On March 21, 2020, the Governor further provided the Director of the Department of State Hospitals authority to suspend any portion of the Penal Code as necessary to mitigate the effects of the COVID-19 pandemic pursuant to Executive Order N-35-20.

During the last 30 days, the Department worked closely with CDCR to develop a plan to safely resume the transfer of individuals referred to DSH from CDCR pursuant to Penal Code section 2684.

In light of the COVID-19 pandemic and current clinical guidance that facilities must maximize their efforts to prevent the introduction or slow the transmission of COVID-19 into DSH hospitals, as of April 16, 2020, *Coleman* patient admissions to DSH hospitals will resume but effectuated pursuant to temporary guidelines and protocols created by DSH and CDCR.

STEPHANIE CLENDENIN
Director

Attachment: COVID-19 Guidelines for Transfer to DSH Inpatient Care

*"Caring Today for a Safe and Healthy Tomorrow"*

Exhibit B

**COVID-19 Temporary Guidelines for Transfer to DSH Inpatient Care**

In cases where psychiatric inpatient care is required, the process for determining transfer to DSH shall be conducted as follows:

I. Institution Review:
1. Transfer out of the patient's current facility shall not proceed unless meeting the criteria below, as assessed by the treatment team:
   a. an imminent, life-threatening emergency necessitates transfer, or
   b. serious mental health decompensation necessitates transfer, and
   c. the life-threatening condition or serious decompensation cannot be reasonably treated at the current institution or elsewhere within CDCR.

II. Acceptance Procedure:
1. Prior to a referral of a patient to a DSH inpatient program, CDCR Statewide Chief Psychiatrist or designee will consult with the DSH Medical Director or designee on the required transfer and the risk factors noted above. If both are in agreement, then the referral will proceed and the receiving DSH institution will also review and determine acceptance as per normal procedure and protocol. If there is agreement on the transfer of the patient to the DSH inpatient program, the receiving DSH hospital will post the acceptance.
2. If there is a disagreement between the DSH Medical Director and CDCR Statewide Chief Psychiatrist regarding the transfer of a patient to a DSH inpatient program, a second level review will be conducted by the Director of DSH with the Director of CCHCS Health Care Services.

III. Communication and Documentation Requirements:
1. The clearance shall be clearly documented by the primary care physician or psychiatrist in a transfer note, to be included in the chart, addressing the factors included below.
2. The content of the note should also be orally communicated from the sending psychiatrist or other medical physician to the Medical Director at the receiving DSH institution so appropriate measures can be taken prior to patient arrival.
3. The above oral communication must be documented.

IV. Quarantine:
1. As with all current DSH admissions, transfers for DSH-Coalinga, DSH-Atascadero, and DSH-Patton must take place in a manner that minimizes the risk for transmission of COVID-19. Therefore, in the absence of testing, all interagency Mental Health transfer patients shall be quarantined for 14 days either pre or post transfer.

V. DSH Discharges:
1. *Coleman* class members will be discharged when clinically appropriate.
2. *Coleman* class member discharges will be discussed between the DSH Medical Director or designee and the CDCR Director of Health Care Services or designee.
3. If quarantine is needed this will happen in the reverse for DSH to CDCR returns according to CDCR/CCHCS Policy.

VI. <u>Transfer Note Documentation</u>: The following information shall be included in the transfer note:
1. Title Note: Medical screening transfer note
2. Referring Institution
3. Receiving Institution
4. Does the patient have a new or worsening cough?  [Y/N]
5. Does the patient have a fever (>100 F)?  [Y/N]
6. Is the patient experiencing new or worsening shortness of breath?  [Y/N]
7. Is the patient currently on isolation?  [Y/N]
8. Is the patient currently on quarantine?  [Y/N]
9. Is the patient known to be a contact of a confirmed COVID -19 case?  [Y/N]
10. Include the patient's vitals for the last 14 days as available
11. Rationale for recommending transfer.