**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF CALIFORNIA**

**RALPH COLEMAN, et al.,**
     **Plaintiffs,**

     **vs.**                            **No. 2:90-CV-0520 KJM DB**

**GAVIN NEWSOM, et al.,**
     **Defendants.**

**UPDATE TO THE SPECIAL MASTER'S REPORT ON THE STATUS OF THE TWENTY-EIGHTH ROUND OF MONITORING AND MENTAL HEALTH HEADQUARTERS MONITORING IN VIEW OF THE CORONAVIRUS PANDEMIC**

**INTRODUCTION**

Effective March 14, 2020, the Special Master reported that he was suspending his regular in-person monitoring tours of California Department of Corrections and Rehabilitation (CDCR) institutions and Department of State Hospitals (DSH) facilities for three weeks, until April 6, 2020, at which time he would reassess the situation to determine whether in-person monitoring could safely resume.  In view of the ongoing national crisis, as well as the continued shelter-in-place order in the state of California, it is clear that in-person monitoring cannot resume at this time.  Further, recent events have required that the Special Master reconsider his planned approach to off-site monitoring.

The Special Master submits this report to update the court on the status of his monitoring efforts during the continuing coronavirus (COVID-19) pandemic.  At the time of this writing,

CDCR reported 69 confirmed inmate cases[1] and 81 confirmed staff cases[2] of COVID-19 statewide.

## BACKGROUND

In his March 20, 2020 report entitled, "Special Master's Report on the Status of the Twenty-Eighth Round of Monitoring and Mental Health Headquarters Monitoring in View of the Coronavirus Pandemic," the Special Master advised the court of his decision to develop alternative plans for monitoring in order to mitigate the public health risks to *Coleman* class members and others, and he provided an outline of his new plans for off-site monitoring. ECF No. 6512. The continued escalation of the COVID-19 crisis, however, has required that the Special Master refine his initial plan for completing the remainder of the Twenty-Eighth Monitoring Round, as detailed below.

## DEVELOPMENTS SINCE THE SPECIAL MASTER'S FIRST STATUS REPORT AND HIS REVISED PLAN FOR OFF-SITE MONITORING

Since the time the Special Master filed his March 20, 2020 report, it has become necessary to alter his approach to off-site prison monitoring. The court-ordered COVID-19 Pandemic Task Force ("COVID-19 Task Force")—in which defendants are key participants—has continued to meet to work on issues affecting class members' access to mental health care since its inception. ECF No. 6513. The Special Master continues to recognize the immense challenges defendants face daily during the current crisis. As he stated in his recent report on *Coleman* class member access to inpatient care, "[s]taff are putting themselves in harm's way on a daily basis to provide treatment for their patients, and leadership is working diligently to

---

[1] https://www.cdcr.ca.gov/covid19/population-status-tracking/

[2] https://www.cdcr.ca.gov/covid19/cdcr-cchcs-covid-19-status/

manage an evolving challenge."  ECF No. 6565 at 32.[3]   In order to relieve defendants of the

added pressures of having to produce a large number of documents and ensure institution staff is

available to participate in meetings during this unprecedented and challenging time, the Special

Master has revised his plan for off-site prison monitoring.

PRISON MONITORING

The Special Master's plan to remotely monitor an institution's compliance with Program

Guide requirements remains in place.  For all remaining institutions scheduled for monitoring

during the Twenty-Eighth Monitoring Round,[4] the Special Master will utilize the Electronic

Health Record System (EHRS) and institution documentation to conduct a "hybrid EHRS/paper

review."[5]

The "hybrid EHRS/paper review" of an institution will not require a large volume of

document production from an institution, include entrance meetings, or any additional meetings

with institution staff.  It will instead be based primarily on a review of class members' electronic

health records to assess both the mental health care provided to them at the various levels of care

in the mental health programs at an institution and the timeliness of Program Guide required

clinical contacts.  Institutions will be required to provide a minimum amount of documentation

in order to identify *Coleman* class members and to facilitate review of timeliness of transfers to

---

[3] An amended copy of this report was filed on April 6, 2020.  ECF No. 6579.

[4] Those institutions are Avenal State Prison, Central California Women's Facility (CCWF), California Health Care Facility, California Training Facility, Deuel Vocational Institution, Pelican Bay State Prison, Pleasant Valley State Prison, Sierra Conservation Center, San Quentin State Prison (San Quentin), and Valley State Prison.  In the Special Master's preceding status report, CCWF was included, in error, on a list of institutions scheduled for monitoring during the initial three-week suspension of on-site monitoring. ECF No. 6512 at 3 fn3.  San Quentin, which was scheduled for monitoring during that three-week timeframe, was not, at that time, prepared for review and will undergo a review with the remaining prisons.

[5] The "hybrid EHRS/paper review" consists of elements that have been employed in previous on-site monitoring and in "paper reviews." A "paper review" is a form of monitoring consisting of a comprehensive review of an institution's compliance with Program Guide requirements via documentation requested by the Special Master and provided by the institution under review.

inpatient care and the examination of the mental health assessments as a function of the Rules

Violation Report process.  The Special Master will work with CDCR to develop a schedule for

completing the remaining institutions.

CDCR MENTAL HEALTH HEADQUARTERS MONITORING

The Special Master's plan for CDCR Mental Health Headquarters ("central office")

monitoring remains the same.  Central office monitoring will continue on schedule and occur by

means of teleconferencing.  At the appropriate time, the Special Master will conduct an

assessment and determine whether circumstances indicate that it would be appropriate to lift the

suspension on in-person central office monitoring.

**SPECIAL MASTER'S PLAN FOR RESUMPTION OF IN-PERSON MONITORING**

Due to the unpredictability of the duration of the COVID-19 pandemic, as well as its

ultimate impact on prison operations, the Special Master will conduct a reassessment of all

relevant factors and decide whether to lift the suspension on in-person monitoring at a future

time to be determined.  In making his decision, the Special Master will consider current

conditions inside the prisons, the status of the public health emergency, any relevant federal

guidelines, and any new or continuing mandates issued by the State of California, CDCR, and

relevant local California government officials.

The Special Master will continue to keep the court and the parties closely informed of his

monitoring plans for the duration of the COVID-19 pandemic response.


Respectfully submitted,

/s/*Matthew A. Lopes, Jr.*
Matthew A. Lopes, Jr.
Special Master

April 16, 2020

4