DONALD SPECTER – 083925
STEVEN FAMA – 099641
MARGOT MENDELSON – 268583
PRISON LAW OFFICE
1917 Fifth Street
Berkeley, California  94710-1916
Telephone:   (510) 280-2621

MICHAEL W. BIEN – 096891
JEFFREY L. BORNSTEIN – 099358
ERNEST GALVAN – 196065
THOMAS NOLAN – 169692
LISA ELLS – 243657
JENNY S. YELIN – 273601
MICHAEL S. NUNEZ – 280535
JESSICA WINTER – 294237
MARC J. SHINN-KRANTZ – 312968
CARA E. TRAPANI – 313411
ALEXANDER GOURSE – 321631
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California  94105-1738
Telephone:   (415) 433-6830

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>GAVIN NEWSOM, et al.,<br><br>Defendants. | Case No. 2:90-CV-00520-KJM-DB<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION OF APRIL 10, 2020 ORDER**<br><br>Judge: Hon. Kimberly J. Mueller<br>Date: April 21, 2020<br>Time: 10:00 a.m. |

1    Plaintiffs hereby oppose Defendants' motion for reconsideration and/or clarification
2 ("Motion or Mot.," ECF No. 6612) of this Court's April 10, 2020 order ("April 10 Order,"
3 ECF No. 6600) setting an evidentiary hearing on April 21, 2020 to resolve its pending
4 Order to Show Cause "why this Court should not order defendants to promptly to admit
5 *Coleman* class members to *Coleman*-designated inpatient beds in DSH consistent with the
6 protocols established for admission of OHMDs to DSH facilities." April 3, 2020 Order
7 ("April 3 OSC"), ECF No. 6572 at 2. Once again acting unilaterally, Defendants have
8 substituted a facial ban on *Coleman* class member admissions to the 336 DSH beds
9 reserved for their use with a policy that appears likely to amount to a *de facto* ban. *See*
10 Declaration of C. Hendon In Support of Defendants' Motion for Reconsideration
11 ("Hendon Decl."), ECF No. 6612-1, ¶ 10, Ex. B ("DSH Transfer Protocol"). The Special
12 Master has not approved of DSH's Transfer Protocol filed with this Court, nor did
13 Defendants ever present it for discussion at any of the thirteen task force meetings held to
14 date or otherwise meet and confer with Plaintiffs about its adequacy. *See* Motion at 5-6
15 (acknowledging that the Special Master has not agreed to DSH's protocol in its present
16 form). Indeed, from its face, the DSH policy looks manifestly insufficient to ensure class
17 member transfers for treatment in DSH hospitals will actually occur.

18    In particular, Defendants' claim that "*Coleman* patients will now be admitted to
19 DSH hospitals as clinically indicated" (Mot. at 3) appears hollow given that, to qualify for
20 transfer, a patient must meet extremely stringent criteria including establishing that they
21 cannot "reasonably be treated … elsewhere within CDCR" (Hendon Decl. Ex. B at 8[1]). In
22 other words, DSH will not accept patients who are referred and deemed clinically and
23 custodially eligible for transfer to its hospitals unless they are first transferred internally
24 within CDCR, presumably to its patently deficient PIPs, even though DSH has an
25 established quarantine protocol and sufficient physical space to ensure safe transfer to its

---

[1] Because the DSH Transfer Protocol attached as Exhibit B to the Hendon declaration is itself unpaginated, page references are the ECF numbering of the Hendon declaration.

hospitals. *See* Hendon Decl. Ex. B at 8; *see also* Declaration of Cara Trapani In Support of Plaintiffs' Response to April 3, 2020 Order to Show Cause Regarding Access to the Department of State Hospitals ("Trapani OSC Decl."), ECF No. 6589, ¶¶ 2-4 & Ex. 1 (COVID-19 Information Update on DSH website, stating that DSH has identified and prepared spaces for isolating and treating COVID-19 infected patients, has screening protocols in place, and has updated its pandemic response and related plans). Defendants' insistence that DSH-eligible class members transfer across facilities within CDCR before they are considered for admission to DSH flies in the face of all governing COVID-19 guidance and Defendants' own statements, both of which emphasize the need to reduce transfers to only those that are truly necessary. *See, e.g.,* Trapani OSC Decl. ¶¶ 5-6, 9, Exs. 2-3, 6 (CDPH and CCHCS guidance recommending minimizing transfers whenever possible while still ensuring access to essential health care accompanied by reasonable prevention and containment methods); Declaration of Michael Bien in Support of Three-Judge Court Emergency Motion, ECF No. 6529, ¶ 21, Ex. 7 at ECF page 113 (CDC guidance providing for same); *see also* Declaration of Steven Fama In Support of Plaintiffs' Opposition to Reconsideration Motion ("Fama Decl."), filed herewith, ¶ 10, Ex. E (federal COVID-19 guidance emphasizing the need for state psychiatric hospitals to limit patient movement while also preparing to safely treat potentially infected newly arriving patients); *id.* ¶ 9, Ex. D (federal COVID-19 guidance providing that treating mental health patients requires access to both inpatient and outpatient options, and recommending facilities take precautions when admitting new potentially infected patients). Requiring class members who are eligible immediately for treatment at DSH to first transfer to PIP beds needlessly risks additional points of viral exposure for no valid reason. It will also unnecessarily clog the PIP beds with patients who should be at DSH, thereby triggering the cascading exacerbation of Eighth Amendment violations this Court and its Special Master have warned of – and witnessed – so many times before. *See* April 3 OSC at 2; *see also* Special Master's Amended Report on the Current Status of *Coleman* Class Members' Access to Inpatient Care in the Department of State Hospitals, ECF No.

6579, at 10.  While Defendants' DSH Transfer Protocol likely would be sufficient (assuming close monitoring by the Special Master) without the requirement that patients eligible for DSH treatment be transferred internally to PIP beds first, Defendants' insistence on including that roadblock renders the protocol nothing more than a *de facto* ban on access to DSH.  This Court should decline to vacate the April 21, 2020 evidentiary hearing based on Defendants' unilateral imposition of DSH's insufficient Transfer Protocol, which has neither the approval of the Special Master nor Plaintiffs.

Nor does the precedent proffered by Defendants require this Court to defer to Defendants' implementation of a policy that imposes unnecessary roadblocks on class members' Eighth Amendment right to timely access to adequate inpatient care, particularly because their solution runs contrary to governing public health guidance and they are able to safely transfer and quarantine patients at or before arrival to the DSH hospitals.  Defendants' citation to *Money v. Pritzker*, 2020 WL 1820660 (N.D. Ill. Apr. 10, 2020) is obviously distinguishable because that case does not concern an ongoing, entrenched constitutional violation like the one at issue here.  No more persuasive is Defendants' reliance on *In re Abbott*, No. 20-50264, 2020 WL 1685929, at *1 (5th Cir. Apr. 7, 2020), in which a divided panel of the Fifth Circuit held that the Texas Governor's executive order to ban pre-viability abortions was appropriate in light of the current public health crisis.  As noted by the dissent in *In re Abbott*, a public health crisis does not present a carte blanche for the state, which may only "utilize its police power to enact laws to protect the public health and safety . . . so long as the regulation is 'justified by the necessities of the case' and does not violate rights secured by the Constitution 'under the guise of exerting a police power.'"  *Id.* at *19 (quoting *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11, 28 (1905)).  Though *Jacobson* stands for the general proposition that the state has a police power to act during a public health emergency, it does not preclude this Court from determining that the state has not taken sufficient action to protect rights secured by the Constitution.  *See Jacobson*, 197 U.S. at 31 ("[I]f a statute purporting to have been enacted to protect the public health . . . has no real or substantial

relation to those objects, or is, beyond all question, a plain, palpable invasion of rights secured by the fundamental law, it is the duty of the courts to so adjudge, and thereby give effect to the Constitution.").

Defendants further urge this Court to vacate the evidentiary hearing in reliance on their "progressive, robust, and proactive measures to prevent and manage the spread of COVID-19," citing the evidence they have recently filed about these steps in *Plata v. Newsom*, No. 01-cv-1351-JST (N.D. Cal.). *See* Mot. at 3 & n.2. The relevance of these actions to this Court's concerns about DSH's refusal to treat class members is not at all clear. But even on the merits of their claims, Defendants fail to mention that they are refusing to take the steps California's Attorney General personally demanded of the Department of Homeland Security on April 13, 2020, when he called for "urgent action" to prevent "countless deaths" by decreasing the number of people in detention facilities and "prioritizing those that are in fragile health."[2] Even though conditions in the detention facilities Attorney General Becerra describes are the mirror image of those in CDCR, Defendants have thus far failed to take the steps he demands here, such as targeting high-risk individuals for transfer or release, and adequately and proactively addressing the extreme overcrowding in their dorms, including those at the California Institute for Men ("CIM") in which the virus is already running rampant. *See* Fama Decl. ¶ 2 & Ex. A (showing 37 incarcerated people, including 20 class members, at CIM had tested positive as of April 13, 2020); *id.* ¶¶ 3-8 (discussing that patients who tested positive were housed in multiple overcrowded dorms).

Finally, Defendants' alternate request for clarification regarding the upcoming evidentiary hearing is confounding given that the genesis and scope of the hearing is

---

[2] Pursuant to Federal Rule of Evidence 201, Plaintiffs request this Court take judicial notice of the Attorney General's April 13, 2020 letter, which can be found at https://oag.ca.gov/system/files/attachments/press-docs/4.13.20%20-%20Letter%20to%20DHS%20Acting%20Secretary.pdf. Courts routinely take judicial notice of government documents posted on the government agency's official website, as here. *See, e.g.*, *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010).

already clear.  As discussed at the April 10, 2020 status conference, the Court made clear it was setting the evidentiary hearing so that it can complete the record already presented by the parties in response to its April 3, 2020 order to show cause before issuing its decision, including assessing the credibility of Defendants' key declarants in support of their show-cause response.  While Plaintiffs do not object to further discussion of the procedure the Court intends to follow for the evidentiary hearing at tomorrow's status conference, there is no question Defendants have had adequate due process to prepare fully for the April 21, 2020 hearing, given that they waited five full days after this Court's April 10, 2020 order to even request clarification.

Nor should this Court permit expansion of the witness list for the focused evidentiary hearing.  Defendants had the option of presenting testimony in support of their show-cause response from anyone they chose, including outside experts.  The Court has elected to hear from the two Defendant declarants whose testimony is most central to the question at the heart of the show-cause order, which is well within its discretion given that the Court could simply have ruled on the papers.  *See* Fed. R. Civ. P. 78; L.R. 230(g) (stating that any motion may be submitted upon the record and briefs on file if the Court so orders).  Defendants have not articulated any reason in their reconsideration papers that the three identified witnesses from whom the Court intends to take testimony are insufficient to resolve the issues underlying the Court's pending order to show cause.  An expansion of the witness list is simply not warranted.

DATED:  April 16, 2020          Respectfully submitted,

ROSEN BIEN GALVAN & GRUNFELD LLP

By: */s/ Lisa Ells*
     Lisa Ells

Attorneys for Plaintiffs