Gregg McLean Adam, Bar No. 203436
  gregg@majlabor.com
Matthew Taylor, Bar No. 264551
  matthew@majlabor.com
**MESSING ADAM & JASMINE LLP**
235 Montgomery St., Suite 828
San Francisco, California 94104
Telephone:   415.266.1800
Facsimile:   415.266.1128

David A. Sanders, Bar No. 221393
  david.sanders@ccpoa.org
Daniel M. Lindsay, Bar No. 142895
  dan.lindsay@ccpoa.org
**CALIFORNIA CORRECTIONAL PEACE OFFICERS' ASSOCIATION**
755 Riverpoint Drive, Suite 200
West Sacramento, CA 95605-1634
Telephone:   916.340.2959
Facsimile:   916.374.1824

Attorneys for Intervenor California Correctional Peace Officers' Association

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION

| | |
|---|---|
| RALPH COLEMAN, et al., | Case No. 2:90-cv-00520-KJM-DB |
| Plaintiffs, | **CALIFORNIA CORRECTIONAL PEACE OFFICERS' ASSOCIATION'S STATEMENT** |
| v. | |
| GAVIN NEWSOM, et al., | The Hon. Kimberly J. Mueller |
| Defendants. | |

The California Correctional Peace Officers' Association ("CCPOA" or "the Union") submits a short statement to address four issues: (1) a short history of how and why it got involved in the case; (2) its rights and obligations, as the recognized employee organization for correctional officers, under the Ralph C. Dills Act, California Government Code section 3512 *et seq.*; (3) questions concerning its status as an intervenor or otherwise, and (4) the Court's request at the May 1, 2020 Case Management Conference for information about any video or photographic resources to show current prison conditions.

**1. The Union Supported Convening a Three Judge Court in 2006-2007, Intervened in the Three Judge Court Proceeding in 2007, and Supported an Inmate Release Order Through the United States Supreme Court Ruling in *Plata v. Brown* in 2011**

Because significant time has passed since the Union's last significant involvement in the case, and since this Court may not be familiar with it, the Union offers the following short summary:

In 2006-2007, unusually for a public safety employee union, CCPOA filed amicus curiae briefs in support of the plaintiffs' motions to convene a Three Judge Court proceedings under the Prison Litigation Reform Act ("PLRA") in *Coleman*, *Plata,* and *Armstrong*.  After the *Coleman* and *Plata* courts granted plaintiffs' motions and the Three Judge Court was convened, the Union moved for permissive intervention (all the other intervenors were permitted by the PLRA to intervene by right).  The Union's motion was granted, and it participated in the trial, including presenting witness officers.

The Union described the motivations for its actions in the brief it filed in support of Plaintiffs in the United States Supreme Court.  (A copy of the Union's Brief is attached as exhibit A.)  It explained that correctional officers are, as the Three Judge Court found, "essential to providing health care to prisoners."  Among their many responsibilities, correctional officers are the front-line officials who identify medical and mental health conditions among prisoners, escort prisoners to treatment, and oversee clinics to ensure the safety of inmates and staff.  The Union's members play an integral role in nearly every facet of prison health services.

During at least the 2006-2011 timeframe, the Union explained, its members could not adequately perform these duties given the state of overcrowding.  Based on its members' experience with the day-to-day realities of overcrowding and the resulting medical deficiencies in California's prisons, the Union took the extraordinary step of intervening in the three-judge court remedial proceedings on the same side as the plaintiffs.  In its brief, the Union reiterated the experiences of correctional officers and their inability, under the circumstances, to facilitate the provision of constitutionally adequate care.

**2. The Union's Role as the Exclusive Bargaining Agent for Correctional Officers and Role as Non-Exclusive Representative for Correctional Sergeants and Lieutenants**

Since Governor Jerry Brown signed the State Employer-Employee Relations Act of 1978, which became known as the Ralph C. Dills Act (Dills Act), and established collective bargaining for state government employees, CCPOA has been the elected "recognized employee organization" for collective bargaining purposes for rank-and-file correctional officers since then. Under the Dills Act, the State has an obligation to collectively bargaining with the Union over changes to "wages, hours and other terms and conditions of employment." Absent emergency circumstances, the State must generally complete its bargaining obligation before implementing changes in working conditions. In the correctional setting, staffing and safety issues frequently arise as negotiable items. The Union owes a duty of fair representation to those employees it represents.

Correctional sergeants and lieutenants (who are classed as "supervisors") do not enjoy collective bargaining rights. They are covered by the Excluded Employees' Bill of Rights, California Government Code section 3525 *et seq*. They have lesser "meet and confer" rights under section 3533.

**3. The Union's Intervenor Status in the Three Judge Court Proceedings and Uncertain Status in the Individual *Coleman* and *Plata* Cases**

The issue of the status of the Union recently came up in the *Plata* case. At a Case Management Conference on April 10, 2020, Judge Tigar, aware that the Union was an intervenor in the Three Judge Court case, sought to confirm its status in the underlying *Plata* matter.

In an email response to the Court's clerk on April 14, 2020, counsel for the Union wrote, in part:

> We found (and attach) five documents that may shed some light on this issue. There are two orders – (1) the original 2007 order granting the Union intervenor status in the Three Judge Court proceedings and (2) the September 2017 Order concerning the status of intervenors – as well as two Notices of Intention to Remain as Intervenor, one filed in Plata, the other in Coleman. To summarize them, the Union successfully moved to intervene in the Three Judge Court proceedings in 2007. In October 2017, in response to an order from the Three Judge Court, which gave intervenors "in this case" a deadline to apply to remain an intervenor, the Union filed the attached notices in each of the individual cases.

> The fifth document is an October 24, 2017 Order from the Three Judge Court that affirms the Union's continuing intervenor status – at least in the Three Judge Court proceedings. The Union has not previously moved to intervene in either Plata or Coleman, as individual cases.
>
> The Union would appreciate any guidance that the Court can offer as to its intervenor status in Plata. If the Court concludes that the Union's intervenor status in the Three Judge Court proceedings does not give it intervenor status in Plata, the Union will determine whether to move to intervene given the direct interest of correctional staff in the serious matters the Court is weighing or to seek to contribute to proceedings as an amicus curiae
>
> We copy counsel for the parties and the Receiver.

Copies of the April 14, 2020 email and attachments are attached as exhibit B.

To summarize, the Union remains an intervenor in the Three Judge Proceedings but has not intervened in the individual *Plata* or *Coleman* cases.

During a subsequent Case Management Conference, Judge Tigar indicated that he did not believe that the Union's intervenor status in Three Judge Court gave it intervenor status in the underlying *Plata* case. Nonetheless, Judge Tigar has permitted the Union, without objection from either plaintiffs or defendants, to continue to participate in proceedings informally. The Union believes this arrangement suits its interests and benefits the Court and the parties.

CCPOA has had little involvement in the case, beyond monitoring matters, since *Plata v. Brown* issued in 2011; however, as both this Court and the *Plata* court have recognized, the threat presented by the COVID-19 pandemic to correctional facilities closely correlates the interests of inmates and staff. The Union greatly appreciates the Court's continuing concern for the welfare of correctional staff.

The Union's intention is to contribute to these proceedings where it can assist the Court and the parties in navigating these extraordinary circumstances.

**4. The Existence of Video and Photographic Resources Capturing Inmates with Mental Health Conditions in Institutions**

At the Case Management Conference on May 1, 2020, the Union volunteered to reach out to its members in relation to the Court's inquiries about video and photographic resources that might help assess current prison conditions relative to COVID-19. It probably goes without

saying that CDCR is better placed to report on such resources. Nevertheless, having reached out to its elected representatives at each institution, the Union can report two examples that may assist the Court. First, representatives at Mule Creek State Prison reported that Building 18 at the Level 2 Facility, which houses inmates with mental health conditions, has an active video recorder. Second, at one point after measures responsive to COVID-19 were taken, an officer photographed conditions in Housing Units, Yards, and Dining Rooms at Avenal State Prison. CDCR can presumably verify this information.

The Union also asked its representatives their views on how well inmates with mental health conditions were complying with social distancing protocols, a small (and admittedly unscientific) sample result in assessments (on a "1-10 scale," with 10 being the best) from moderate compliance in living and recreational areas at the California Institute for Men, to slightly above average compliance at the Correctional Training facility at Soledad State Prison, to excellent compliance (9 out of 10) at Deuel Vocational Institution.

Dated: May 5, 2020         MESSING ADAM & JASMINE LLP

By   */s/ Gregg McLean Adam*
Gregg McLean Adam
Matthew Taylor
Attorneys for Intervenor California Correctional Peace Officers' Association