DONALD SPECTER – 083925
STEVEN FAMA – 099641
MARGOT MENDELSON – 268583
PRISON LAW OFFICE
1917 Fifth Street
Berkeley, California 94710-1916
Telephone: (510) 280-2621

CLAUDIA CENTER – 158255
DISABILITY RIGHTS EDUCATION
AND DEFENSE FUND, INC.
Ed Roberts Campus
3075 Adeline Street, Suite 210
Berkeley, California 94703-2578
Telephone: (510) 644-2555

MICHAEL W. BIEN – 096891
JEFFREY L. BORNSTEIN – 099358
ERNEST GALVAN – 196065
THOMAS NOLAN – 169692
LISA ELLS – 243657
JENNY S. YELIN – 273601
MICHAEL S. NUNEZ – 280535
JESSICA WINTER – 294237
MARC J. SHINN-KRANTZ – 312968
CARA E. TRAPANI – 313411
ALEXANDER GOURSE – 321631
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
Telephone: (415) 433-6830

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>GAVIN NEWSOM, et al.,<br><br>　　　　Defendants. | Case No. 2:90-CV-00520-KJM-DB<br><br>**NOTICE OF PLATA CORRESPONDENCE RE: PLAN FOR COVID-19 MEDICALLY VULNERABLE RESPONSIVE TO COURT'S MAY 15, 2020 REQUEST**<br><br>Judge: Hon. Kimberly J. Mueller |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, in response to this Court's request at the May 15, 2020 Status Conference, Plaintiffs hereby submit a courtesy copy of correspondence in *Plata, et. al, v. Newsom, et al.*, Case No. CO1-1351 JST, currently pending in the Northern District of California.

Attached as **Exhibit A** is a copy of a May 7, 2020 letter from *Plata* Plaintiffs' counsel Alison Hardy to the *Plata* Receiver and Diana Toche, Undersecretary of Health Care Services for the California Department of Corrections and Rehabilitation (CDCR). In the letter, Ms. Hardy requested CDCR and California Correctional Health Care Services (CCHCS) to develop and implement a plan to identify, evaluate, and safely house medically vulnerable people at risk of severe illness or death from COVID-19.

Attached as **Exhibit B** is a copy of a May 15, 2020 email from Samantha Wolff, counsel for *Plata* Defendants, setting forth the joint response by CDCR, the *Plata* Receiver, and CCHCS to the *Plata* Plaintiffs' May 7, 2020 letter.

DATED:  May 18, 2020                    Respectfully submitted,

                                        ROSEN BIEN GALVAN & GRUNFELD LLP

                                        By: */s/ Marc J. Shinn-Krantz*
                                            Marc J. Shinn-Krantz

                                        Attorneys for Plaintiffs

# EXHIBIT A



**PRISON LAW OFFICE**
General Delivery, San Quentin, CA 94964
Telephone (510) 280-2621 • Fax (510) 280-2704
www.prisonlaw.com

*Director:*
Donald Specter

*Managing Attorney:*
Sara Norman

*Staff Attorneys:*
Rana Anabtawi
Patrick Booth
Steven Fama
Alison Hardy
Sophie Hart
Corene Kendrick
Rita Lomio
Margot Mendelson

May 7, 2020

Clark Kelso, Receiver
Diana Toche, Undersecretary, Health Care Services

Dear folks,

    As stated during this week's Case Management Conference, we remain concerned that CDCR and CCHCS have not taken sufficient steps to protect people who are at risk of severe illness or death from COVID-19. This concern has become even more pressing in light of the deaths in the last 48 hours of three CIM patients who were medically vulnerable to COVID-19.

    According to the Centers for Disease Control and Prevention (CDC), certain individuals, because of their age or underlying medical condition, are at a higher risk for severe illness from COVID-19.  This includes:
- People 65 years and older
- People with the following underlying medical conditions, particularly if not well controlled:
    - Chronic lung disease
    - Moderate to severe asthma
    - Serious heart conditions
    - Diabetes
    - Chronic kidney disease undergoing dialysis
    - Liver disease
- People who are immunocompromised (for example, because of cancer treatment, smoking, bone marrow or organ transplantation, immune deficiencies, poorly controlled HIV or AIDS, or prolonged use of immune-weakening medications)
- People with severe obesity (BMI of 40 or higher)

    As we understand it, Defendants have no plan to offer specific protections to these individuals.  The COVID Plan that Defendants filed in *Coleman* on April 16 stated that defendants have "no plans to target specific portions of the population, such as . . . high risk inmates, for special movement or housing."  (*Coleman v. Newsom*, ECF No. 6616 at 9).

**Board of Directors**
Penelope Cooper, President • Michele WalkinHawk, Vice President • Marshall Krause, Treasurer
Harlan Grossman • Christiane Hipps • Margaret Johns • Cesar Lagleva
Laura Magnani • Michael Marcum • Ruth Morgan • Seth Morris

**Plaintiffs believe such a plan is essential and have requested one repeatedly for the last month. Our requests have been ignored.** On April 7, Don Specter wrote to Secretary Ralph Diaz and the Receiver proposing that "the parties agree initially to a plan to reach our shared goal of protecting those most vulnerable to infection and serious illness." 4/7/20 Email from Don Specter to Ralph Diaz and Clark Kelso. The following day, Secretary Diaz advised Mr. Specter that because Plaintiffs planned to file an emergency motion, he would be communicating only through his Chief Counsel (Jennifer Neill). 4/8/20 Email from Ralph Diaz to Don Specter. Mr. Specter responded that he looked forward to hearing from Ms. Neill. 4/8/20 Email from Mr. Specter to Secretary Diaz. Plaintiffs have not received a substantive response to these concerns since then.

Plaintiffs requested a plan to safely house the medically vulnerable in our two emergency motions. ECF Nos. 3219 at 27, 3219-6 at 2-3, 3266 at 9, 3266-4 at 2. In response to the first motion, Defendants maintained that they were taking numerous measures to combat COVID-19. ECF No. 3235 at 18-24. None of the measures listed addressed Plaintiffs' request for a housing plan. In response to the second motion, Defendants again cited a list of measures undertaken and, again, none addressed the requested housing plan. ECF No. 3277 at 12-15.

Plaintiffs also raised this issue in our CMC statement. ECF No. 3294 at 3-4. Citing CCHCS's April 3 *COVID-19: Interim Guidance for Health Care and Public Health Providers*, Plaintiffs urged Defendants to develop a plan, noting that the Receiver has advised Defendants they may place vulnerable people in special housing:

> During the COVID-19 pandemic, CCHCS institutions may implement additional measures to protect vulnerable patients who are at increased risk for severe COVID-19 disease (e.g., single-cell or protected housing area, limited movement, separate dining and yard time, and telemedicine services). Patients in protective shelter in place should be educated regarding their risk and how to protect themselves, early symptom recognition and request for medical attention, and the availability of testing for COVID-19.

*See* April 3 Guidance at 18 (ECF 3274-6 at 19). Defendants have offered no plans for any such measures.

This issue is not academic. **Since April 16, four people have died of COVID-19. All four of those people were included on a list of medically vulnerable people that CDCR and CCHCS compiled at Plaintiffs' request and delivered on April 8.** All four lived on D yard at CIM, in dormitories. There are thousands more medically vulnerable people housed in dorms throughout the state. Many more will likely die if they are not moved out of dangerous congregate living settings.

As the Court suggested yesterday afternoon, we write once again to request that Defendants, in consultation with CCHCS, develop and implement a plan to safely housed medically vulnerable people. This should include:

1. The identification of people who, because of their age or medical condition, are at higher risk for severe illness if they contract COVID-19.  We understand CCHCS has already completed this step: on March 30, CCHCS identified all people in custody with at least one of the risk factors listed above.  *See* ECF 3249 ¶ 3 & Exh. B.

2. Beginning with those housed in congregate living spaces (dormitories, tents, gyms), medical staff should evaluate whether these individuals are housed appropriately, taking into account the severity of their conditions and medical needs.  We believe this could be done by medical staff at the particular institution where the person is housed, but that CCHCS should issue guidance for this process.

3. A process by which CDCR re-houses those identified by medical staff as requiring safer housing.

We look forward to your prompt response.

Sincerely,

*/s/Alison Hardy*

Alison

cc:   Samantha Wolff
      Paul Mello
      Nasstaran Tara Ruhparwar
      Damon McClain
      Roscoe Barrow
      Bryant Scoffield
      Carrie Stafford
      Michael W. Bien
      Matthew Lopes

# EXHIBIT B

| | |
|---|---|
| **From:** | Marc Shinn-Krantz |
| **Sent:** | Monday, May 18, 2020 9:21 AM |
| **To:** | Greg Gonzalez |
| **Subject:** | Plata - Response to May 7 Letter |

**From:** Samantha Wolff [mailto:████████████]
**Sent:** Friday, May 15, 2020 4:34 PM
**To:** Alison Hardy (████████████); Sophie Hart; Steven Fama; Don Specter
**Cc:** Kelso, Clark@CDCR; Martin Dodd; Tharratt, Steven@CDCR; Barrow, Roscoe@CDCR ████████████;
Cullen, Vincent@CDCR; Kirkland, Richard@CDCR; Neill, Jennifer@CDCR; Stafford, Carrie
(████████████); Scofield, Bryant; Paul B. Mello; Damon McClain; Nasstaran Tara Ruhparwar
**Subject:** Plata - Response to May 7 Letter

Dear Alison,

We have conferred with our client and with representatives from CCHCS and the Receiver's office. The following is their joint response to your questions:

We write in response to your May 7, 2020 letter, in which you request that Defendants develop and implement a plan to "safely house[] medically vulnerable people" in consultation with CCHCS. You indicate that the plan should include the following:

> 1. The identification of people who, because of their age or medical condition, are at higher risk for severe illness if they contract COVID-19;
>
> 2. Beginning with those housed in congregate living spaces (dormitories, tents, gyms), medical staff should evaluate whether these individuals are housed appropriately, taking into account the severity of their conditions and medical needs; and
>
> 3. A process by which CDCR re-houses those identified by medical staff as requiring safer housing.

In response to question 1, as your letter indicates, CCHCS has already identified inmates with at least one risk factor for severe illness if they contract the disease.

Regarding question 2, having identified those at higher risk for potentially more serious disease if infected by the virus, CCHCS does not believe that wholesale, additional analysis on an individual basis is necessary with respect to the risks associated with COVID-19. Medical staff already have policies and procedures in place for

assessing whether medically high-risk inmates are housed in an environment that is conducive to the receipt of ongoing, adequate treatment.  If medical staff determine that any high risk patient who has been moved into "non-standard" housing (e.g., gyms or tents) cannot be treated adequately in their current placement for any reason, whether associated with COVID-19 or not, then alternative placement for that patient may be appropriate.

Finally, in response to question 3, from a public health standpoint, CCHCS believes that at this point in the COVID-19 outbreak in California, mass movement of large numbers of high-risk inmates between institutions without outbreaks is ill-advised and potentially dangerous.  Since the virus can be transmitted by asymptomatic individuals—and CCHCS's own data shows that as many as 50% of those testing positive are asymptomatic—movement itself carries significant risk of spreading transmission of the disease between institutions.  Those institutions that develop outbreaks require rapid, aggressive outbreak investigation, including contact tracing and mass testing, while simultaneously housing uninfected high-risk individuals separate from the possibly infected and the infected populations as an appropriate initial response.  This initial response utilizes the well-accepted public health concepts of sheltering-in-place within the institution, quarantine and isolation.  Currently, there are four institutions with active outbreaks: CIM, LAC, CMC and CIW.  In a situation like that now found at CIM, however, where the virus is present throughout the housing units, the risk of transporting high risk inmates who test negative to institutions where there are no outbreaks may be less than keeping them at the "home" institution.  CDCR will work with CCHCS to facilitate the safe transfer of high risk inmates if deemed appropriate by CCHCS.  To the extent such moves would impact *Coleman* class members, CDCR will consult with the Office of the Special Master.



**Samantha Wolff**
**Partner**
Hanson Bridgett LLP

Click on the below link to access information on COVID-19

This communication, including any attachments, is confidential and may be protected by privilege. If you are not the intended recipient, any use, dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify the sender by telephone or email, and permanently delete all copies, electronic or other, you may have.

The foregoing applies even if this notice is embedded in a message that is forwarded or attached.