1  XAVIER BECERRA
   Attorney General of California
2  MONICA N. ANDERSON
   Senior Assistant Attorney General
3  ADRIANO HRVATIN
   Supervising Deputy Attorney General
4  ELISE OWENS THORN, State Bar No. 145931
   TYLER V. HEATH, State Bar No. 271478
5  KYLE A. LEWIS, State Bar No. 201041
   LUCAS HENNES, State Bar No. 278361
6  Deputy Attorneys General
     1300 I Street, Suite 125
7    P.O. Box 944255
     Sacramento, CA 94244-2550
8    Telephone: (916) 210-7323
     Fax: (916) 324-5205
9    E-mail: Lucas.Hennes@doj.ca.gov
   Attorneys for Defendants

   ROMAN M. SILBERFELD, State Bar No. 62783
   GLENN A. DANAS, State Bar No. 270317
   ROBINS KAPLAN LLP
     2049 Century Park East, Suite 3400
     Los Angeles, CA 90067-3208
     Telephone: (310) 552-0130
     Fax: (310) 229-5800
     E-mail: RSilberfeld@RobinsKaplan.com
   Special Counsel for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **RALPH COLEMAN, et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**GAVIN NEWSOM, et al.,**<br><br>Defendants. | 2:90-cv-00520 KJM-DB (PC)<br><br>**DEFENDANTS' NOTICE OF APPEAL TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT** |

Defendants appeal from this Court's orders dated April 24, 2020 (ECF No. 6639) and May 7, 2020 (ECF No. 6660).

/ / /

/ / /

/ / /

1

1         Defendants also appeal from all earlier, non-final orders that produced the orders and are

2    thereby merged with them. *See Am. Ironworks & Erectors Inc. v. N. Am. Const. Corp.*, 248 F.3d

3    892, 897 (9th Cir. 2001).

4

5    Dated:  May 26, 2020                                    Respectfully submitted,

6                                                           Xavier Becerra
                                                            Attorney General of California
7                                                           Adriano Hrvatin
                                                            Supervising Deputy Attorney General
8

9

10                                                          */s/ Lucas L. Hennes*
                                                            Lucas L. Hennes
11                                                          Deputy Attorney General
                                                            *Attorneys for Defendants*
12

13    CF1997CS0003
      42206473.docx

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# ATTACHMENT
# ECF NO. 6639 ORDER

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al., | No. 2:90-cv-0520 KJM DB P |
| Plaintiffs, | |
| v. | ORDER |
| GAVIN NEWSOM, et al., | |
| Defendants. | |

On April 15, 2020, defendants filed a motion for reconsideration and, in the alternative, for clarification of this court's April 10, 2020 order setting an evidentiary hearing on Tuesday, April 21, 2020 at 10:00 a.m. on the issue of class members' access to Department of State Hospital (DSH) inpatient programs, ECF No. 6600 at 3-4.  ECF No. 6612.  At a further telephonic status conference held on April 17, 2020, one in a continuing series of coronavirus (COVID-19) status conferences, the court accepted the stipulation of the parties and continued the evidentiary hearing to May 19, 2020 at 10:00 a.m., providing that in the interim period all referrals, rejections and completed transfers to and from DSH inpatient programs will be closely monitored by the Special Master.  ECF No. 6622 at 3.  In their motion, which remains pending, defendants seek clarification regarding (1) the factual issues that will be the subject of the hearing; (2) which party holds the burden of proof; (3) whether witnesses other than those specified in the court's order may be called; and (4) the manner in which witnesses will be

/////

1

1  questioned.  The court issues the following order to address these issues and provide further

2  guidance going forward.

3      I.      BACKGROUND

4          In 1995, delays in access to necessary inpatient mental health hospitalization was one of

5  the many identified constitutional deficiencies the court identified in defendants' failure to

6  provide California's seriously mentally ill prison inmates with adequate mental health care.  *See*

7  *Coleman v. Wilson*, 912 F.Supp. 1282, 1309, 1314 (E.D. Cal. 1995).  As ordered by the court,

8  access to timely acute and intermediate inpatient care is a core component of the remedy in this

9  case.  *See* Mental Health Services Delivery System Program Guide, 2018 Revision, ECF No.

10 5864-1 at 106-124, 218-220 (documents cited in conjunction with Program Guide pages 12-6-5,

11 12-6-9, 12-6-13, 12-6-17).[1]  In its order filed June 28, 2006, the court joined as a defendant in this

12 action the Director of the Department of Mental Health (DMH), which is now known as the

13 Department of State Hospitals (DSH).  ECF No. 1855.  At that time, in accordance with Federal

14 Rule of Civil Procedure 21, the court found that

15          [t]he "just, orderly and effective" resolution of this case depends on
           [the Director] being added as a defendant.  It is undisputed that DMH
16         is already an active participant in these proceedings.  Moreover,
           DMH plays a critical role in creating sustainable and effective
17         solutions for inpatient care within the California Department of
           Corrections and Rehabilitation (CDCR).  It is also apparent that, for
18         multiple reasons, DMH is failing to address specific court-ordered
           remedies.  DMH's attempts to remedy the shortage of inpatient beds
19         has been marked by delay and difficulty.  Adding [the Director] as a
           party-defendant to this action, and thereby subjecting DMH to the
20         supervision of the court and the involvement of the Special Master,
           is the only way to ensure an effective remedy in this case.
21

22 ECF No. 1855 at 1-2.  The court's order runs to the Director of DSH, successor to the Director of

23 DMH.  *See* Fed. R. Civ. P. 25(d).

24          In October 2006, the court ordered defendants to "file a final long range plan for the

25 provision of acute and intermediate inpatient beds. . . ."  ECF No. 1998 at 3.  Defendants timely

26

27 [1] References to page numbers in documents filed in the Court's Electronic Case Filing (ECF)
   system are to the page number assigned by the ECF system and located in the upper right hand
28 corner of the page.

2

1   filed the plan on December 19, 2006.  ECF No. 2095.  The plan provided for 256 inpatient beds at

2   Atascadero State Hospital (ASH), 50 beds at Coalinga State Hospital (Coalinga), 5 beds at Napa

3   State Hospital (Napa) and 5 beds at Metro State Hospital (Metro).  ECF No. 2095 at 61.  Since

4   that time, the court has issued several orders requiring defendants to make the full complement of

5   256 ASH beds available to the plaintiff class.  *See*, *e.g.*, May 23, 2007 Order, ECF No. 2236 at 4

6   & n.8; June 18, 2009 Order, ECF No. 3613 at 3-4; June 5, 2012 Order, ECF No. 4199 at 5

7   (deferring as premature defendants' request to reduce number of intermediate care beds available

8   at ASH).[2]

9         The court also, more than once, has focused attention on "unconscionable delays in access

10   to inpatient care and the sequelae therefrom, including periodic substantial decline in clinical

11   referrals to necessary hospital care."  *Coleman v. Brown*, 938 F.Supp.2d 955, 982 (E.D. Cal.

12   2013).  In 2015, the court ordered defendants to "report to the court on whether regular and

13   consistent use of the full complement of 256 beds at [ASH] designated for *Coleman* class

14   members is sufficient to permanently eliminate the ongoing waitlist for inpatient mental health

15   care and if not, why not and what alternate plans are in place for waitlisted class members."

16   August 21, 2015 Order, ECF No. 5343 at 2.  On October 30, 2015, defendants reported on a new

17   "Housing Review policy" they represented would "safely maximize the use of Defendants'

18   inpatient Coleman beds throughout the system, including at DSH-Atascadero" by moving inmate-

19   patients to their least restrictive housing setting "as soon as it is clinically appropriate to do so."

20   ECF No. 5374-1 at 3.

21         Despite these efforts, waitlists grew again.  On January 23, 2017, the court held an

22   evidentiary hearing concerning ongoing issues with timely access to inpatient care.  ECF No.

23   5552.  At that hearing, it became clear defendants had failed to inform the Special Master of

24   several changes they had made to inpatient beds availability and utilization over the past year.

25

26   [2] As discussed below, the availability of the full complement of ASH beds in particular is
essential to avoid long waitlists for access to inpatient care.  *See*, *e.g.*, March 24, 2017 Order,

27   ECF No. 5583, at 15 (discussing defendants' Least Restrictive Housing policy, which allows for
maximization of the use of all inpatient mental health care beds throughout the system and why

28   the beds at ASH, which are low-custody beds, are essential to this part of the remedy).

*See* March 8, 2017 Order, ECF No. 5573 at 1.  For that reason, in its March 8, 2017 order

adopting a monitoring report by the Special Master on inpatient programs for class members, the

court made the following order:

> Until further order of court, defendants shall meet and confer with the Special Master at least thirty days before making any changes, additions, or reductions in the number and/or use of any inpatient beds or mental health crisis beds. If an emergency situation precludes such meet and confer thirty days in advance, defendants shall consult with the Special Master immediately upon learning of the need to make any changes, additions or reductions in the number and/or use of inpatient beds or mental health crisis beds. As used in this order, consultation requires a conference in person or by telephone and not mere written notice or communication.

*Id*. at 3-4.  The order was at least the second of its kind in the remedial phase of this action; more

than a decade earlier the court issued an order imposing similar obligations on defendants.  *See*

May 2, 2006 Order, ECF No. 1800 at 6 (prohibiting defendants from closing "any inpatient bed or

mental health crisis bed on the basis of state licensing requirements without approval of the

special master.").

On March 24, 2017, after consideration of briefs and evidence filed in advance of the

January 2017 evidentiary hearing, testimony received at the hearing, and additional evidence

received after hearing, the court issued an order directing defendants to show cause why they

should not be required to come into full and permanent compliance with Program Guide timelines

for transfers to acute and ICF care no later than May 15, 2017.  ECF No. 5583 at 1-2.  After

considering the parties' briefs in response to the order to show cause, on April 19, 2017, the court

ordered defendants to come into compliance with the transfer timelines by May 15, 2017, directed

the parties to work out a series of exceptions to the transfer timelines, and set fines to accrue at

the rate of $1000 per inmate per day for every day of delay not subject to a court-approved

exception.  ECF No. 5610.  The parties ultimately worked out a series of exceptions, which the

/////

/////

4

court approved in December 2017.  *See* December 15, 2017 Order, ECF No. 5750.[3]  In relevant

part, one of the exceptions covers "Unusual Circumstances":

> Transfer timelines may be suspended in unusual circumstances
> outside the control of CDCR. Such circumstances shall be reported
> to the Statewide Director of the Mental Health Program, and
> documented by IRU [Inpatient Referral Unit] in a report to the
> statewide Quality Management committee to monitor frequency and
> any possible corrective action. Staff shall complete the referral,
> transfer, and admission process within five (5) calendar days for
> Acute referrals and within five (5) calendar days for ICF referrals
> once the circumstances resulting in the delay in transfer have
> resolved.

*See* Ex. 1 to ECF No. 5744.

As most relevant under the current circumstances on March 16, 2020, the Director of

DSH, Stephanie Clendenin telephoned the Special Master to "notify. . . him that DSH would be

suspending admissions of *Coleman* class members" to DSH hospitals in light of the novel

coronavirus (COVID-19) pandemic.  ECF No. 6579, at 5.  The same day, Director Clendenin

issued a directive suspending admissions of *Coleman* class members to DSH hospitals for a

period of thirty days "pursuant to" the Governor's Proclamation of a State of Emergency dated

March 4, 2020.  *Id*. at 38.[4]  This suspension of transfers was the subject of numerous discussions

---

[3]  The proposed exceptions were initially due forty-five days after the April 19, 2017 order issued.
ECF No. 5610, at 13-14.  On May 19, 2017, defendants filed a notice of appeal from the April 19,
2017 order.  ECF No. 5621.  They did not, however, seek a stay of its provisions.  On June 8,
2017, the court approved a stipulation by the parties, which provided for the proposed exceptions
to be submitted to the court for final approval after a five month period during which application
of the proposed exceptions to individual patients would be reviewed by the parties and the Special
Master.  ECF No. 5632.  Ultimately the court set a deadline of November 30, 2017 for submission
of the proposed exceptions, November 6, 2017 Order, ECF No. 5726 at 10-11, and the proposed
exceptions were filed on that date.  *See* ECF No. 5738.

It took approximately four months, with the accumulation of approximately $445,000 in
fines, for defendants to achieve full compliance with the April 19, 2017 order.  *See* ECF Nos.
5636, 5659, 5664, 5684, 5715.  Although the court initially set a hearing for November 3, 2017
for consideration of findings of contempt and requirement of payment of accumulated fines, ECF
No. 5610 at 14, that hearing was vacated in light of defendants' appeal.  *See* ECF Nos. 5720,
5726 at 4-7.  The Court of Appeals dismissed the appeal for lack of jurisdiction in an order filed
November 28, 2018.  ECF No. 6063.  This court's hearing has not yet been reset, but that item of
business remains pending for resolution at an appropriate point in the future.

[4] The directive states that it was issued "pursuant to the Governor's Emergency Proclamation"
and "in accordance with the Director's authority to execute laws relating to the care and treatment

1    of the coronavirus task force convened by the Special Master as directed by this court at a status

2    conference on March 20, 2020.  *See* ECF No. 6513 (minutes directing Special Master to convene

3    coronavirus pandemic task force); *see also* ECF No. 6579 at 8-12 (April 6, 2020 Amended Report

4    from Special Master on Current Status of *Coleman* Class Members to Inpatient Care in the

5    Department of State Hospitals).  The Special Master has reported that as of March 30, 2020, there

6    were twenty unoccupied inpatient beds at ASH and two unoccupied inpatient beds at Coalinga,

7    while the number of class members awaiting endorsement and transfer to inpatient care exceeded

8    the number of available beds.  *Id*. at 11-12.

9         On April 10, 2020, after hearing from the parties in an ongoing series of status

10    conferences called to address the impact of the coronavirus pandemic on the *Coleman* class and

11    Program Guide compliance, this court set an evidentiary hearing for April 21, 2020 to address the

12    issue of class member access to DSH inpatient hospital care.  ECF No. 6600 at 4.  On April 15,

13    2020, defendants filed the pending motion for reconsideration or clarification.  ECF No. 6612.

14    On April 16, 2020, the Director's thirty-day suspension of admissions to DSH programs for

15    *Coleman* class members expired.  Hendon Decl. ¶¶ 8-9, ECF No. 6612-1.  As noted above, on

16    April 17, 2020, the court continued the evidentiary hearing to May 19, 2020, in light of the

17    parties' stipulation to continue the hearing subject to close monitoring in the interim by the

18    Special Master of all referrals, rejections and completed transfers to and from the DSH inpatient

19    programs.  ECF No. 6622 at 3.

20    II.    DISCUSSION

21         Central to the court's resolution of the questions posed by defendants to the extent they

22    seek clarification is a proper understanding of the context in which Director Clendenin issued the

23    directive suspending *Coleman* admissions to DSH for necessary inpatient mental health care.

24    Director Clendenin is a defendant in this long-standing class action and, as detailed above, subject

25    to several of this court's orders governing admission of *Coleman* class members to DSH

26    _____

27    of persons with mental health disorders placed with the State Department of State Hospitals
      (DSH)."  *Id*.  Defendants also have presented a declaration attesting to the Director's discretion
      under Penal Code section 2684 to accept patients referred by CDCR for treatment.  *See* Hendon

28    Decl. ¶¶ 5, 7, 14(f), ECF No. 6590-4.

6

1   hospitals.  Those orders are an integral part of a carefully designed and as yet not fully

2   implemented remedy for longstanding Eighth Amendment violations in the delivery of mental

3   health care to the plaintiff class.  In this context, as explained below, Director Clendenin may not

4   rely solely on state law to take unilateral action that undermines that remedy.  *See Hook v.*

5   *Arizona Dept. of Corrections*, 107 F.3d 1397, 1402-03 (9th Cir. 1997); *see also Valdivia v.*

6   *Schwarzenegger*, 599 F.3d 984, 995 (9th Cir. 2010) (where state law interferes with necessary

7   federal remedy for constitutional violation, "federalism principles require the reconciliation of the

8   state law and federal injunctions.").

9        It is undisputed that the Director's directive was issued as part of a strategy to address the

10  COVID-19 pandemic.  In the March 16, 2020 directive, Director Clendenin relied on a March 4,

11  2020 Emergency Proclamation by California's Governor as authority for her issuance of the

12  directive.  ECF No. 6579 at 38.  In a late night email dated March 21, 2020, Christine Ciccotti,

13  Chief Counsel for DSH, communicated to several stakeholders in this action, including the

14  Special Master and members of his team, counsel for plaintiffs, counsel for defendants, and

15  several CDCR officials, that earlier on the night of March 21, 2020, the Governor had "issued an

16  Executive Order granting the Director of the Department of State Hospitals the authority to waive

17  any provision of the Welfare and Institutions Code or Penal Code to the extent necessary as it

18  relates to the care, custody, and treatment of persons with mental illness committed to DSH, in

19  order to mitigate the effects of COVID-19."  *Id.* at 49 (March 21, 2020 email from Christine

20  Ciccotti).  Ms. Ciccotti asserted this Executive Order gave Director Clendenin "the ability to

21  suspend all patient admissions and discharges, amongst other powers, so we can safely keep our

22  patients in place and try to prevent the introduction or reduce the transmission of this virus within

23  our hospitals."  *Id.*

24       Director Clendenin relied exclusively on discretionary authority granted her under state

25  law and gubernatorial executive orders to close DSH hospitals to *Coleman* class members.  But

26  Director Clendenin has not at any time been relieved of her duty to follow this court's orders to

27  provide  access to *Coleman* class members to the full complement of DSH hospital beds, which

28

1    are an essential component of the Eighth Amendment remedy in this case.[5] "This circuit's law is

2    clear: unless a state law is found to violate a federal law, or unless the Injunction is found

3    necessary to remedy a constitutional violation, federalism principles require the reconciliation of

4    the state law and federal injunctions." *Valdivia*, 599 F.3d at 995. Consequently, Director

5    Clendenin was required to seek modification of those orders before taking unilateral action that

6    violated them.[6]

7           Defendants assert more generally that, in light of the COVID-19 pandemic they "'may

8    implement emergency measures that curtail constitutional rights so long as the measures have at

9    least some "real or substantial relation" to the public health crisis and are not 'beyond all

10    question, a plain, palpable invasion of rights secured by the fundamental law.'" ECF No. 6612 at

11    5 (quoting *In re: Abbott*, Case No. 20-50264, Document No. 00515374865 (5th Cir. Apr. 7, 2020)

12    (quoting *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11, 31 (1905)). Defendants

13    argue that principles of federalism "counsel[] against courts getting involved in state prison

14    management, while the separation of powers commits the task of running prisons to the

15    'executive and legislative branches.'" ECF No. 6612 at 7 (quoting *Money v. Pritzker*, __ F. Supp.

16    3d __, 2020 WL 1820660, at *16 (N.D. Ill. April. 10, 2020)). None of the cases cited by

17    defendants, however, arose in the context of state action undertaken by state actors subject to

18    prior remedial orders of a federal court. Defendants' general arguments ignore the critical fact

19    that defendants here are subject to such remedial orders and may not act in violation of those

20    orders without first seeking and obtaining necessary modifications. The emergency nature of the

21    pandemic does not excuse this requirement. As noted above, the court's March 8, 2017 order

---

22

23    [5] The orders of this court make clear that the DSH hospital beds are a necessary component of the
remedy in this case. Even if defendants believed they could argue differently, consistent with

24    Federal Rule of Civil Procedure 11, they would still be required to seek modification from this
court and, at a minimum, show how Director Clendenin's state law authority could be reconciled

25    with this court's orders. *See Valdivia*, *id*.

26    [6] It is unclear to what extent Director Clendenin is or was aware of this court's prior orders when
she issued the directive. This court required a prior Director of DSH to attest to her familiarity

27    with relevant court orders and to "describe to the court the protocols in place to inform successors
of their obligations under remedial plans presented and approved and/or ordered by this court,"

28    ECF No. 5333 at 3-4, and is prepared to require the same of Director Clendenin if necessary.

1  requires "immediate" telephonic consultation with the Special Master in the event of an

2  emergency requiring closure of inpatient beds in less than thirty days.  ECF No. 5573 at 3-4.

3  Moreover, both the Federal Rules of Civil Procedure and the Local Rules of this court make

4  provision for hearings on shortened time, *see* Fed. R. Civ. P. 6(c); Local Rule 144(e) (E.D. Cal.),

5  and this court has at all times made itself readily available to address issues related to the

6  COVID-19 pandemic as they arise.

7      It should not have to be said that the power of federal courts to issue prospective

8  injunctive relief against state actors to vindicate federal rights is well-established.  It is settled that

9  "[i]n exercising their prospective powers under *Ex parte Young* and *Edelman v. Jordan*, federal

10  courts are not reduced to issuing injunctions against state officers and hoping for compliance.

11  Once issued, an injunction may be enforced."  *Hutto v. Finney*, 437 U.S. 678, 690 (1978).  "[T]he

12  law's primary response to [federalism] concerns" that may arise in the context of long-term

13  "federal court oversight of state programs" "has its source not in the Eleventh Amendment but in

14  the court's equitable powers and the direction given by the Federal Rules of Civil Procedure."

15  *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 441 (2004).  As the Court in *Frew* observed, "[i]n

16  particular, Rule 60(b)(5) allows a party to move for relief if 'it is no longer equitable that the

17  judgment should have prospective application.'  The Rule encompasses the traditional power of a

18  court of equity to modify its decree in light of changed circumstances."  *Id.*; *see also Hook*, 107

19  F.3d at 1404 (Fed. R. Civ. P. 60(b) is available to state defendants to seek necessary

20  modifications of federal court orders.).

21      Here, Director Clendenin acted unilaterally to suspend admission of *Coleman* class

22  members to DSH beds in violation of multiple court orders requiring defendants to keep a full

23  complement of 256 beds available to *Coleman* class members at ASH.  Defendants did not seek

24  modification of any of those orders, and the Director's discretionary authority, without more, is

25  insufficient to support her violation of this court's orders.  This is particularly true where, as here,

26  defendants made no effort to seek relief, however expedited, from this court under Rule 60.

27      Director Clendenin also violated the court's March 8, 2017 order requiring consultation

28  with the Special Master before closing DSH inpatient beds to *Coleman* class members. She

9

1    notified him of her decision to suspend admissions the day the decision was made and she did

2    not, as the order required, consult with him in any way about the decision.

3            This court has broad power to enforce its orders, including through imposition of financial

4    penalties or civil contempt proceedings.  *See Hutto*, 437 U.S. at 690.  The court recognizes that

5    the time period provided by Director Clendenin's directive has now expired, after being in effect

6    for an initial thirty day period.  ECF No. 6611.  Director Clendenin now represents that "DSH

7    will replace the suspension with protocols to safely resume the transfer of" *Coleman* class

8    members.  *Id.* at 3-4.  As discussed above, those transfers must be made in accordance with all

9    relevant orders of this court unless and until those orders are modified.  The court approves one

10   temporary modification at this time as necessary and appropriate, tailored to the current

11   circumstances during which the coronavirus pandemic has not been curbed nor a cure identified.

12   That modification allows that no transfers to DSH inpatient mental health care are taking place

13   without a COVID-19 screening.  *See* ECF No. 6616 at 17 & Attachment V.  In all other respects,

14   the Program Guide requirements for transfer to DSH inpatient hospital beds remain in full force

15   and effect unless and until modified by order of the court.

16           The Special Master's close monitoring will allow the court to know whether in fact DSH

17   is following the court's orders with this one temporary modification. Defendants shall cooperate

18   fully in this close monitoring between now and May 19, 2020, so that the Special Master is able

19   to fully advise the court and the parties whether defendants are in compliance with this order and

20   relevant provisions of the Program Guide.

21           The evidentiary hearing set for May 19, 2020 is maintained.  At the hearing, the court will

22   first hear an update from the Special Master and the parties on the status of defendants'

23   compliance with all applicable requirements for transfer to DSH inpatient hospital beds.  Closer

24   to the May 19 date, the court will set a hearing to clarify the calling of witnesses, introduction of

25   documentary evidence and other details as required to conduct the evidentiary hearing.

26           Finally, the court notes that on April 15, 2020, defendants filed their required monthly

27   status report on transfers to inpatient care.  ECF No. 6611.  In that report, defendants assert that

28   five patients awaiting transfer to inpatient care – two awaiting transfer to acute care and three

1    awaiting transfer to intermediate care – were waiting longer than transfer timelines "pending a

2    medical hold exception due to COVID-19."  ECF No. 6611 at 8.  To the extent these delays were

3    caused by Director Clendenin's March 16, 2020 directive, there is nothing in the record to suggest

4    her decision was within the control of CDCR defendants and for that reason the court deems

5    those delays to fall within the "unusual circumstances" exception to Program Guide transfer

6    timeline requirements.  *See* Ex. 1 to ECF No. 5744.  Going forward, in light of the clarification

7    provided by this order, the court will make further orders as necessary to ensure DSH defendants

8    are held responsible for any delays in transfer to inpatient care caused by action taken in violation

9    of this court's orders.

10           In accordance with the above, IT IS HEREBY ORDERED that:

11        1.   Program Guide requirements for transfer of class members to DSH inpatient hospital

12              beds are temporarily modified to include COVID-19 screening in accordance with the

13              protocols presented to this court and agreed upon by the parties as cited above.

14        2.  In all other respects, the Program Guide requirements for transfer to DSH inpatient

15              hospital beds remain in full force and effect unless and until modified by order of this

16              court.

17        3.  Defendants shall cooperate fully in the Special Master's close monitoring of transfers

18              to DSH inpatient programs until May 19, 2020, so that he is able to fully advise the

19              court and the parties whether defendants are in compliance with this order and

20              applicable provisions of the Program Guide.

21        4.  The evidentiary hearing set for May 19, 2020 at 10:00 a.m. is confirmed.

22    DATED:   April 24, 2020.

23

24    _____

25    CHIEF UNITED STATES DISTRICT JUDGE

26

27

28

11

# ATTACHMENT
# ECF NO. 6660 ORDER

1

2

3

4

5

6

7                                  UNITED STATES DISTRICT COURT

8                                  EASTERN DISTRICT OF CALIFORNIA

9

10    RALPH COLEMAN, et al.,                        No. 2:90-cv-0520 KJM DB P

11              Plaintiffs,

12        v.                                         ORDER

13    GAVIN NEWSOM, et al.,

14              Defendants.

15

16           On April 15, 2020, defendants filed a motion for reconsideration and, in the alternative,

17    for clarification of this court's April 10, 2020 order setting an evidentiary hearing on Tuesday,

18    April 21, 2020 at 10:00 a.m. on the issue of class members' access to Department of State

19    Hospital (DSH) inpatient programs, ECF No. 6600 at 3-4.  ECF No. 6612.  In accordance with

20    the parties' stipulation presented at the further telephonic status conference held on April 17,

21    2020, the court continued the evidentiary hearing to May 19, 2020 at 10:00 a.m.  Order filed April

22    24, 2020, ECF No. 6639, at 11.  During the interim period the court directed its Special Master to

23    closely monitor all *Coleman* class referrals, rejections and completed transfers to and from DSH

24    inpatient programs.  *Id*.

25           Defendants' motion also seeks clarification of (1) the factual issues that will be the subject

26    of the hearing; (2) which party holds the burden of proof; (3) whether a party may call witnesses

27    other than those specified in the court's order; and (4) the manner in which witnesses will be

28    /////

                                                   1

1  questioned.  The court issues the following order to clarify these details in advance of the

2  scheduled hearing.

3       The April 24, 2020 order clarified that, with the exception of a temporary modification to

4  include COVID-19 screening, the *Coleman* Program Guide requirements for transfer of class

5  members to inpatient DSH hospital beds are in full force and effect unless and until they are

6  modified by order of this court.  *Id.*  Consequently, the factual issues that will be the subject of

7  the hearing are:  (1) as required by the April 24, 2020 order, have DSH and CDCR been

8  complying with the Program Guide requirements, as modified by the temporary addition of

9  COVID-19 screening, for transfer of class members to inpatient hospital beds; (2) if they are not

10 complying with those requirements, in what way or ways are they deviating from those

11 requirements; and (3) what is the rationale for any deviation.

12      If the parties agree that defendants are following the requirements of the court's April 24,

13 2020 order, the court is prepared to entertain a stipulation of the parties, approved by the Special

14 Master, to continue the hearing for an additional period not to exceed thirty days to monitor

15 whether the necessary compliance has taken hold under the current circumstances.

16      If defendants are not following the requirements of the court's order, for the reasons

17 explained in the April 24, 2020 order, they have the burden of proving that modification of that

18 order and the underlying Program Guide provisions are required.  The standards applicable to a

19 motion based on Federal Rule of Civil Procedure 60 will apply.

20      Substantive testimony at hearing will be limited to that provided by Dr. Warburton, Dr.

21 Bick and plaintiffs' designated expert, Dr. Stern.  The court may also wish to hear brief testimony

22 from DSH Director Stephanie Clendenin regarding her understanding and awareness of *Coleman*

23 court orders as applicable to DSH, a defendant in this action.  *See* ECF No. 6639 at 8 n.6.  Direct

24 testimony focused on the above factual issues from Dr. Warburton and Dr. Bick, as well as

25 rebuttal testimony from Dr. Stern, may be presented in the form of sworn declarations filed with

26 the court and served on all parties not later than 5:00 p.m. on Friday, May 15, 2020.  All three

27 witnesses and Director Clendenin must be available by videoconference for cross-examination,

28 re-direct examination and, as necessary, any questions from the court.  The courtroom deputy will

2

1  contact the parties several days before the hearing to review the court's procedures for holding a

2  proceeding by videoconference, and to provide information on how to use the technology the

3  court is relying on for videoconference proceedings. No other witness testimony will be taken on

4  the hearing date currently set. Subject to the usual objection process, relevant documentary

5  evidence will be admitted upon motion of the parties, jointly or separately; parties must exchange

6  any documents they plan to offer into evidence no later than 5:00 p.m. on Friday, May 15, 2020.

7       As a general matter, because defendants will have the burden of proof, the hearing will

8  proceed with defendants making the initial presentation of testimony and evidence, followed by

9  cross-examination from plaintiffs and, as necessary, re-direct examination by defendants.

10  Thereafter, plaintiffs will, as appropriate, be permitted to call Dr. Stern in rebuttal. If the court

11  directs Director Clendenin to testify, it will ask a few initial questions before allowing the parties

12  to ask questions, in the same order. The court's questions of the other witnesses, if any, will be

13  interposed during the proceedings if the court has specific concerns that are not otherwise

14  addressed during the proceedings.

15       In accordance with the above, IT IS HEREBY ORDERED that:

16      1.  Defendants' April 15, 2020 motion, ECF No. 6612, is GRANTED in part and

17         DENIED in part; and

18      2.  The evidentiary hearing set for May 19, 2020 at 10:00 a.m. is confirmed to proceed in

19         accordance with the provisions of this order.

20  DATED: May 7, 2020.

21

22

23                  CHIEF UNITED STATES DISTRICT JUDGE

24

25

26

27

28

           3

# ATTACHMENT
## REPRESENTATION STATEMENT
## & STATEMENT OF RELATED CASES

No. 18-16445

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

RALPH COLEMAN, et al.,

Plaintiffs-Appellees,

v.

GAVIN NEWSOM, et al.,

Defendants-Appellants.

On Appeal from the United States District Court
for the Eastern District of California

No. 2:90-cv-00520 KJM-DB (PC)
The Honorable Kimberly J. Mueller, Judge

## REPRESENTATION STATEMENT

XAVIER BECERRA
Attorney General of California
MONICA N. ANDERSON
Senior Assistant Attorney General
MISHA D. IGRA
NEAH HUYNH
ADRIANO HRVATIN
Supervising Deputy Attorneys General
LUCAS L. HENNES, State Bar No. 278361
Deputy Attorney General
  1300 I Street, Suite 125
  P.O. Box 944255
  Sacramento, CA 94244-2550
  Telephone:  (916) 210-7323
  Fax:  (916) 324-5205
  E-mail:  Lucas.Hennes@doj.ca.gov
*Attorneys for Defendants-Appellants*

The undersigned represent the State Defendants-Appellants in this case—including Gavin Newsom, Governor of the State of California; Ralph Diaz, Secretary of the California Department of Corrections and Rehabilitation; Michael Cohen, Director of the Department of Finance; Pam Ahlin, Director of the Department of State Hospitals; and Diana Toche, Undersecretary for Health Care Services for the California Department of Corrections and Rehabilitation.  Attached is a service list that shows the other parties that are directly interested in this appeal, along with their lead counsels' names, firms, addresses, telephone numbers, and email addresses.

//

//

The party listing in the district court's docket (which spans numerous pages) also includes numerous associated counsel for many parties, as well as additional intervenors, "interested parties," amici curiae, and "miscellaneous" individuals who are not included on the attached service list.

Date: May 26, 2020

Respectfully submitted,

XAVIER BECERRA
Attorney General of California
MONICA N. ANDERSON
Senior Assistant Attorney General
MISHA D. IGRA
NEAH HUYNH
ADRIANO HRVATIN
Supervising Deputy Attorneys General

*/s/ Lucas L. Hennes*
LUCAS L. HENNES
Deputy Attorney General
*Attorneys for Defendants-Appellants*

2

*Service List*

| | |
|---|---|
| Michael Bien<br>  (Email: MBien@rbgg.com)<br>Lisa Adrienne Ells<br>  (Email: lells@rbgg.com)<br>Cara Elizabeth Trapani<br>  (Email: ctrapani@rbgg.com)<br>Jessica L. Winter<br>  (Email: jwinter@rbgg.com)<br>Rosen Bien Galvan & Grunfeld, LLP<br>50 Fremont Street<br>19th Floor<br>San Francisco, CA 94105<br>Phone: (415) 433-6830<br>Fax: (415) 433-7104<br> (Attorneys for Plaintiffs) | Donald Specter<br>Prison Law Office<br>1917 Fifth Street<br>Berkeley, CA 94710-1916<br>Phone: (510) 280-2621<br>Fax: (510) 280-2704<br>Email: dspecter@prisonlaw.com<br>(Attorney for Plaintiffs) |
| Aaron Joseph Fischer<br>Disability Rights California<br>1330 Broadway, Ste. 500<br>Oakland, CA 94612<br>Phone: (510) 267-1200<br>Fax: (510) 267-1201<br>Email:<br>aaron.fischer@disabilityrightsca.org | Kimberly Hall Barlow<br>Jones & Mayer<br>3777 N. Harbor Boulevard<br>Fullerton, CA 92835<br>Phone: (714) 446-1400<br>Fax: (714) 446-1448<br>Email: khb@jones-mayer.com |
| Matthew A. Lopes, Jr.<br>Pannone Lopes & Devereaux LLC<br>317 Iron Horse Way<br>Suite 301<br>Providence, RI 02908<br>Phone: (401) 824-5156<br>Fax: (401) 824-5123<br>Email: mlopes@pldw.com<br>(Special Master) | |

No. 18-16445

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**RALPH COLEMAN, et al.,**

Plaintiffs-Appellees,

v.

**GAVIN NEWSOM, et al.,**

Defendants-Appellants.

**STATEMENT OF RELATED CASES**

Counsel are aware of no present appeals arising from the same district-court matter or related cases before this court.

Date: May 26, 2020

Respectfully submitted,

XAVIER BECERRA
Attorney General of California
MONICA N. ANDERSON
Senior Assistant Attorney General
MISHA D. IGRA
NEAH HUYNH
ADRIANO HRVATIN
Supervising Deputy Attorneys General

*/s/ Lucas L. Hennes*
LUCAS L. HENNES
Deputy Attorney General
*Attorneys for Defendants-Appellants*

CF1997CS0003
42206491.docx

4