1  REICHMAN JORGENSEN LLP
   SHAWNA BALLARD, State Bar No. 155188
2  KATE FALKENSTIEN, State Bar No. 313753
   100 Marine Parkway, Suite 300
3  Redwood Shores, CA 94065
   Telephone: (650) 623-1401
4  Fax: (650) 623-1449
   Email: sballard@reichmanjorgensen.com
5        kfalkenstien@reichmanjorgensen.com

6  *Attorneys for Plaintiff-Intervenor Christopher Lipsey*

7
8                       IN THE UNITED STATES DISTRICT COURT
9                      FOR THE EASTERN DISTRICT OF CALIFORNIA
10                                SACRAMENTO DIVISION

11

12
13  **RALPH COLEMAN, et al.**                 Case No. 2:90-cv-00520 KJM DB P

14                        Plaintiffs,          **PLAINTIFF-INTERVENOR
                                               CHRISTOPHER LIPSEY'S PROPOSED
15       v.                                    SUPPLEMENTAL BRIEF IN SUPPORT
                                               OF MOTION FOR TEMPORARY
16  **GAVIN NEWSOM, et al.,**                  RESTRAINING ORDER**

17                        Defendants.          Judge:   Hon. Kimberly Mueller
                                               Action Filed: April 23, 1990
18
19
20
21
22
23
24
25
26
27
28

On February 14, 2020, plaintiff-intervenor Christopher Lipsey filed a Motion for Temporary Restraining Order ("TRO Mot."). *See* Dkt. 6462. Lipsey seeks to address the sleep deprivation caused by the excessively loud Guard One system used to record correctional officers' welfare checks. Specifically, he asks the Court to order Defendants to reduce the frequency of the checks at night and replace Guard One with a different recording system. The Court held a hearing on Lipsey's claims on February 26, 2020. His motion remains pending.

Since the briefing on Lipsey's motion, he has taken discovery regarding other inmates' complaints about the noise caused by Guard One. Newly produced documents bolster his argument on the merits: at least 500 other inmates agree that the Guard One system causes sleep deprivation. Additionally, new information has arisen regarding Lipsey's ongoing standing to seek injunctive relief. Lipsey was temporarily released from segregated housing, but he has now returned to the Administrative Segregation Unit ("ASU") at Kern Valley State Prison, where he is once again subject to Guard One checks.

## PROCEDURAL HISTORY

In granting Lipsey's Motion to Intervene, the Court also explicitly granted Lipsey the right to conduct discovery "to identify the administrative complaints filed by both *Coleman* class members and non-class member inmates related to the use of Guard One at all CDCR institutions where it is currently in use." Dkt. 6487 at 4.

Lipsey served the Court-ordered discovery the next day, on February 28. Defendants produced some responsive complaints on March 16, and produced additional complaints on April 27.[1] Per the parties' agreement, these complaints encompass responsive complaints lodged in the four prisons with Security Housing Units ("SHUs")—Corcoran, California Correctional Institution ("CCI"),

---

[1] The Court had ordered Defendants to respond to Lipsey's discovery within 14 days, *see* Dkt. 6487 at 4, but Defendants insisted that they could not fully respond to the discovery on that timeline and instead moved for a protective order. *See* Ex. B; Motion for Protective Order, Dkt. 6501. After the parties conferred, Lipsey agreed to allow Defendants until April 20 to produce the responsive documents, and subsequently agreed to an additional extension to April 27. Ex. C.

Sacramento, and Pelican Bay.[2] Ex. C. Defendants searched for inmate complaints filed on Form 602, starting when Guard One was first used in each prison. *Id.*

## ARGUMENT

### I. NEW EVIDENCE AGAIN PROVES GUARD ONE CHECKS CAUSE SLEEP DEPRIVATION.

The complaints Defendants have now produced further bolster the evidence cited in Lipsey's opening brief, *see* Dkt. 6462.2 at 5-7, 13, demonstrating an overwhelming number of inmate complaints about the noise and sleep deprivation caused by the Guard One system. Discovery has so far revealed 138 inmates who complained at Corcoran, 6 at CCI, 22 at Sacramento, and 333 at Pelican Bay.[3] *See* Ex. A.[4] These corroborating complaints buttress the evidence in Lipsey's opening brief indicating that the Guard One system awakens inmates and subjects them to sleep deprivation. *See* Mem. In Supp. of TRO Mot., Dkt. 6462.2, at 5-7, 13.

While these numbers are already significant, they likely represent only a fraction of the true number of complaints, because it is clear that Defendants' search was inadequate even from the limited documents publicly filed in other related cases. As just one example of known complaints that have not yet been produced, in the related *Murillo* case, the parties submitted as exhibits 26 complaints signed by at least 100 inmates at CCI—and those reflect only a six-month period in 2014. *See Murillo v. Holland*, No. 1:15-CV-0266-KJM-DB-P, 2019 WL 1099836, at *5 (E.D. Cal. Mar. 8, 2019). Yet in this case, Defendants—other CDCR officials, represented by the same counsel as defendants in *Murillo*—produced only three total complaints from CCI, signed by six total inmates, and none of which are from that six-month period in 2014. When Defendants' search missed the vast majority of

---

[2] To reduce the burden of this discovery on Defendants, the search did not encompass any prison which does not have a SHU and has not had a SHU while the Guard One system has been in use. Although Guard One is used in other forms of restrictive housing in those prisons (including Administrative Segregation Units and Condemned Housing Units), relevant complaints in those prisons would not have been captured in Defendants' search.

[3] These numbers reflect the total number of *inmates* who complained, not the number of grievance forms filed. Those two figures differ because many inmates signed on to jointly submitted group grievances, as reflected in the chart at Exhibit A.

[4] All references to exhibits in this brief refer to the exhibits attached to the Declaration of Kate Falkenstien filed herewith.

Case No. 2:90-cv-00520 KJM DB P     2     Lipsey's Supp'l Br. In Supp. Of TRO Mot.

1  responsive complaints already cited in publicly available documents, it is likely that they also missed
2  many other responsive complaints as well that do not happen to have been filed in related cases. Thus,
3  the grievances discussed in this brief likely undercount the true number of inmate complaints about
4  Guard One. Nonetheless, Lipsey files this brief now to inform the Court about the currently available
5  information, because he has returned to restricted housing and seeks urgent relief.[5]

While Defendants' production has not been exhaustive, the complaints produced so far strongly corroborate Lipsey's claimed sleep deprivation. For example, one inmate wrote that the Guard One checks must be "an idea taught at Academy for Sleep Deprivation." Ex. D. Similarly, another inmate wrote about his "sleep deprivation" caused by officers "banging [his] door with a metal poll (sic) to push a button on inmates' door. Ex. E. Many other inmates raised similar complaints about the metal-on-metal noise. *See e.g.*, Ex. F (writing that "the new count buzzers that have been placed on the doors are not allowing me to sleep. I'm being woke[n] up every 30 minutes"); Ex. G (explaining that "the metal on metal banging every 30 min. all day and night" "causes people to wake up several times a night"); Ex. H (writing that correctional officers were "depriving me of my sleep" with the "loud clanking noise" that "keep[s] me up all night"); Ex. I (writing that "upon the installment of the monitor buttons," the inmates "began suffering from sleep deprivation behind the loud clinking of the monitor device being slammed against the button"); Ex. J (writing that the "very loud" noise from "bang[ing] a metal rod against another piece of metal screwed to the outside" of the cell makes it "physically impossible to sleep"); Ex. K (writing that officers are "tapping on all cell doors every 30 mins with a metal device, not letting me sleep").

The inmates further corroborate other details of Lipsey's complaint. For example, many other inmates explain that merely turning off the beeping of the wand did not solve the problem. *See, e.g.*, Ex. L ("I cannot sleep due to the banging on door, even with silent pipe make no different"). Like Lipsey, other inmates explained that the checks were particularly harmful because "by the time I start to get back to sleep staff are coming again hitting the plate," which "results in the deprivation of sleep."

---

[5] The parties have met and conferred extensively about various missing grievances in Defendants' productions. Lipsey has filed a Motion to Compel herewith regarding these missing grievances, and the parties are preparing a Joint Statement re Discovery Disagreement.

Case No. 2:90-cv-00520 KJM DB P        3        Lipsey's Supp'l Br. In Supp. Of TRO Mot.

Ex. M. And other inmates confirm that the Guard One system is so loud, it can be heard across the unit. *See, e.g.*, Ex. N ("I can hear [the correctional officer] coming because she be hitting all the doors real hard and it's loud"); Ex. O (the Guard One system makes noise "echoing in the entire unit").

The other inmates also corroborate Lipsey's allegations of physical and mental harm from the resulting sleep deprivation. Like Lipsey, another inmate suffered "headaches from lack of sleep" and other body pain. Ex. E; *see also* Ex. P (writing that the checks "are extrem[e]ly to[o] loud I am awaken[ed] every half an hour . . . I'm having heada[ch]es, dizziness, los[s] of ap[pe]tite, blackouts, depression, no daily function because all I want is sleep"); Ex. Q (noting that he "is feeling the effect of th[ese] security checks of constant headaches, tiredness, lack of sleep and without a doubt deteriorating physically and mentally"); Ex. R (writing that the noise "makes it impossible to sleep . . . which ultimately has an adverse effect on our mental and physical health"); Ex. S (requesting a reduction in check frequency "to maintain my sanity" because "I can't sleep at night. To[o] much noise, ev[e]ry 30 min. I wake up in a cold sweat"); Ex. T (noting that sleep deprivation caused by the checks "causes irritability, anxiety, depression . . . high blood pressure, and hypertension"). Indeed, at least one inmate corroborates that the sleep deprivation caused by the checks exacerbates the very suicidal thoughts that it is meant to address: he wrote that "these counts make a lot of noise making it impossible to sleep longer th[a]n 30 minutes let alone throughout the night. . . . Because of this my mind and body has deterioriat[ed], my psychological state is deteriorating to the point I had to be placed on suicide watch because I wanted to kill myself to stop" the sleep deprivation. Ex. U.

In response to these grievances, the CDCR repeatedly affirmed that the loud, metal-on-metal noise was an "inherent" and "unavoidable" aspect of the Guard One system. *See, e.g.*, Ex. D (admitting that "[t]he tapping noise produced by touching the metal tipped pipe to the metal door sensor is unavoidable"); Ex. I (same); Ex. E (responding that that "[b]ecause of the metal on metal contact made when using the pipe, there is unfortunately an inherent and unavoidable noise associated when using the Guard 1 device"); Exs. H, V-X (same).

## II. NEW FACTUAL DEVELOPMENTS DEMONSTRATE LIPSEY'S CLAIM IS NOT MOOT.

In the order granting Lipsey's Motion to Intervene, the Court requested additional information about whether he would continue to be held in restrictive housing and subject to the Guard One checks, in order to evaluate whether his claims were moot. *See* Dkt. 6487 at 3. Counsel filed a letter providing the information available as of early March. *See* Dkt. 6498. At that time, Lipsey expected to be transferred to the general population around March 12, but he had two pending rules violation reports which would likely result in a further term in restricted housing. *Id.* Lipsey did not yet know whether the alleged rules violations would be adjudicated through the prison disciplinary process or formally prosecuted by the District Attorney. *Id.*

Now, Lipsey is once again held in restricted housing, subject to Guard One checks. The district attorney chose to prosecute the conduct at issue in the rules violation reports mentioned in the March letter to the Court. That conduct has now led to a criminal case in Kern County, which is scheduled to go to trial in July 2020. Ex. Y. In early May, Lipsey was transferred to Kern Valley State Prison for proceedings in the criminal case. At Kern Valley, he was placed in the Administrative Segregation Unit ("ASU") at Kern Valley State Prison "pending completion of [his] court proceedings." *See* Ex. Z. Because Lipsey is presently subject to the Guard One checks at issue in his TRO Motion—and experiencing the related sleep deprivation—his motion is clearly not moot.

## CONCLUSION

Lipsey respectfully requests that the Court grant a Temporary Restraining Order reducing the frequency of welfare checks and replacing Guard One with a quieter monitoring system.

| | | |
|---|---|---|
| 1 | Dated: May 29, 2020 | Respectfully submitted, |
| 2 | | /s/ *Kate M. Falkenstien* |
| 3 | | |
| 4 | | REICHMAN JORGENSEN LLP<br>Shawna L. Ballard (SBN 155188)<br>Kate Falkenstien (SBN 313753) |
| 5 | | 100 Marine Parkway, Suite 300<br>Redwood Shores, California 94065 |
| 6 | | Telephone: (650) 623-1401<br>Fax: (650) 623-1449 |
| 7 | | sballard@reichmanjorgensen.com<br>kfalkenstien@reichmanjorgensen.com |
| 8 | | *Attorneys for Plaintiff-Intervenor Christopher Lipsey* |