# Exhibit Q

# REICHMAN JORGENSEN LLP

Kate Falkenstien
Direct Dial: (650) 623-1425
kfalkenstien@reichmanjorgensen.com

100 Marine Parkway
Suite 300
Redwood Shores, CA 94065

June 16, 2020

**By Email**

Lucas Hennes
Deputy Attorney General
Office of the Attorney General, Correctional Law Section
1300 I Street, Sacramento, CA 95814
lucas.hennes@doj.ca.gov

      RE:      Christopher Lipsey discovery in *Coleman v. Newsom*

Dear Mr. Hennes:

      I received your email dated June 11, 2020. Thank you for providing some responses to the questions raised in my May 12 letter. However, these responses do not fully answer my initial questions and raise new red flags about the adequacy of your search.

      <u>First</u>, your responses still do not tell me how many documents—even a rough estimate—your reviewers reviewed at each prison. I cannot evaluate whether the time spent was reasonable without knowing how many documents were reviewed, and I cannot evaluate whether the scope of the review was consistent with your earlier representations about the number of documents to be reviewed (and thus, whether sources of documents seem to have been missed) without knowing how many documents were in fact reviewed. I continue to be concerned that sources of documents were missed given the odd characteristics of the produced documents (for example, the fact that every produced document from Pelican Bay in 2015 was appealed to the second level of review). Those concerns are fleshed out on page 4 of my opening portion of the Motion to Compel; the inference that some sources of documents were not searched is further bolstered by your inability to tell me the number of documents reviewed.

      You claim "it was not possible to estimate the number of documents searched" because grievances "are not maintained like that." I do not understand this response, or how documents would need to be maintained differently to enable an estimate of the number of documents reviewed. You claim that some documents were contained in a digital "scanned archive" that is "one large file"; how is it not possible to tell me the number of pages in this file? Other documents seem to have been stored physically; how is it not possible to identify the number of boxes or filing cabinets reviewed, at a minimum?

      I also do not understand how you can claim not to know even a rough estimate of the number of documents reviewed when Captain Pulley earlier claimed to know the exact number of documents that would need to be reviewed to satisfy my requests. In Defendants' initial responses

SILICON VALLEY · NEW YORK · ATLANTA · WASHINGTON, D.C.

to the Request for Production, Captain Pulley listed the exact number of grievances in each of the four responsive substantive categories (Living Condition, Segregation, Staff Complaint, and Other) in every prison in California, by year. I understood that those were the grievances your reviewers would need to review to respond to my requests. Because Captain Pulley's chart indicated that there were so many grievances to review across all prisons, I agreed to significantly narrow the scope of my requests to just four prisons—relying upon the accuracy of the information in the Pulley chart as my reason to narrow the scope of the requests. Are you now unable to represent that your reviewers in fact reviewed the number of grievances reflected in the Pulley chart at the four prisons we agreed upon? If so, why? Was the Pulley chart incorrect, and if so, why?

Second, you have for the first time told me that responsive grievances about Guard One no longer exist at CCI because of a five-year document destruction policy. As part of our joint agreement to narrow the scope of my requests, you had agreed to a search period stretching back to, at a minimum, the time when the Guard One policy was first implemented at each searched prison. I narrowed my discovery requests on the representation that you would search for responsive documents in that period, and I further repeatedly emphasized in our meet and confers that I believed the most responsive grievances would likely have arisen around the time the policy was first implemented at each prison. It was at best misleading to neglect to mention that your client had destroyed documents that fell within that search period. Did you know at the time we discussed the temporal scope of the search that grievances before 2015—that is, the grievances from the time of first implementation at most prisons—had been destroyed? Is that a policy that applies to all California prisons, or only CCI? If the policy is different at each prisons, what period of grievances were retained at the other prisons you searched? Were grievances at prisons other than CCI retained under a litigation hold in this case or any other case regarding Guard One? Were grievances subject to any such litigation hold reviewed, or are they held in a different system that your reviewers did not review?

As to CCI in particular, I am also confused by your assertion that the responsive documents from more than five years ago were likely not preserved under a litigation hold. You said you "have asked CCI to confirm that the grievances you identified from previous litigation would not have been kept under a litigation hold and are not otherwise in their archives." Has CCI confirmed that? If so, I do not understand how CCI did not preserve grievances that were *produced* in the related *Murillo* case. Were they not protected by a litigation hold as produced documents? Are there no copies of the documents you produced in *Murillo* in your legal files? I now know of the grievances cited in the *Murillo* summary judgment briefing. Were other inmate grievances produced in *Murillo* (but not cited in the summary judgment briefing) that have not been produced in this case? If so, please produce them immediately. I do not have access to any such documents.

Further, I note that you said the five-year destruction policy at CCI applies to "non-staff complaint grievances." What is the destruction policy for staff complaint grievances? Have you produced all responsive staff complaint grievances at CCI going back to the time when Guard One was first implemented there?

Third, your reviewers apparently spent vastly less time than you anticipated when we discussed the scope of the search. Captain Pulley estimated that it would take 8 hours to review every 100 grievances. Again, this estimation was part of the reason I agreed to narrow my requests; based on that estimate, it would have taken thousands of hours to search all California prisons, so I agreed to narrow my request to the four prisons with SHUs. However, based on your email, if I

assume that your reviewers reviewed the documents identified by Captain Pulley at each of the four searched prisons, they spent nowhere near 8 hours per 100 grievances (or 12.5 grievances per hour). I have created this chart to summarize the information you have provided:

| Prison | Number of documents identified in Pulley declaration | Time spent | Grievances per hour |
|---|---|---|---|
| CCI | 617 | 24-25 hours | 24.7 to 25.7 |
| Corcoran | 3397 | 3 full days with 4 staff members = approximately 96 hours, assuming 8-hour days | 35.4 |
| Pelican Bay | 1821 | 24 hours | 75.9 |
| Sacramento | 1493 | 8 hours | 186.6 |

The stark inconsistency between Captain Pulley's estimate, pre-review, and the information you provided me in your email leads me to believe that the reviewers did not spend enough time reading each document, further bolstering my belief that you did not conduct an adequate search. Why were these reviewers capable of reviewing documents between 2 and 15 times faster than Captain Pulley expected? It seems likely to me that these reviewers did not fully review the grievances with the attention to detail Captain Pulley believed would be required. I also do not understand why the time per document varies so wildly between different prisons. Why would the reviewers at CCI have been able to review documents 9 times faster than the reviewer at Sacramento? And on face, it seems impossible that reviewers could have read the documents as fast as your data suggests. 186 grievances an hour is more than 3 *per minute*. The grievances are each approximately 6 pages long, in part handwritten. I do not think it is plausible that the reviewers were capable of reading each page of handwritten text in about 3 seconds, as would be required to support the numbers you have given me from Sacramento.

  Fourth, you represent in your email that many of the grievances are stored in an electronic format. You now claim that the majority of paper documents were staff complaints, suggesting that most grievances in the other three categories are stored digitally. Is that correct? Which grievances exactly are scanned? I am startled to hear that *any* grievances at each institution are stored electronically, because early in our meet-and-confer process (in our March 18, 2020 meet and confer call), I suggested that we agree to search terms to conduct an electronic search. That approach would have limited the burden on CDCR (by not requiring a manual review, or at a minimum limiting the number of documents to be manually reviewed), allowing the search of more prisons as I had initially requested in my RFPs. But you represented to me that CDCR did not store grievances digitally at the institutional level, and that it would be extremely burdensome to scan all inmate complaints in order to search them. On that basis, I did not push for keyword searching or ask you to scan all the documents to enable keyword searching, and I narrowed my discovery requests significantly to make possible a manual review.

  To be clear, the only reason I did not continue to push for keyword searching in the first place was because you represented that the documents were not stored digitally and could not be searched via keywords. Does CDCR in fact store at least some grievances digitally at each institution? Could those grievances be searched using keywords, and will you agree to do so now

that you have disclosed many grievances are stored electronically?  That seems like a reasonable way to address the many missing documents from the manual search, and to permit a review of grievances from the ASUs at additional prisons.

In summary, I continue to believe that Defendants did not conduct an adequate search for responsive grievances, and I will not withdraw my motion to compel on the basis of these answers.  Your responses to my questions raise new red flags and beg more questions than they answer.

Best regards,

/s/ Kate Falkenstien