Exhibit A

# CDCR Announces Additional Actions to Reduce Population and Maximize Space Systemwide to Address COVID-19

**JULY 10, 2020**

*Estimates of 8,000 inmates could be eligible for release by end of August, in addition to the state's reduction of about 10,000 persons since the start of the pandemic*

SACRAMENTO – The California Department of Corrections and Rehabilitation (CDCR) announced today additional actions to protect its most vulnerable population and staff from COVID-19, and to allow state prisons to maximize available space to implement physical distancing, isolation, and quarantine efforts. The department estimates up to 8,000 currently incarcerated persons could be eligible for release by end of August under these new measures, further decompressing facilities.

"We're glad the Governor is taking action to release more people. This is absolutely critical for the health and safety of every Californian. Too many people are incarcerated for too long in facilities that spread poor health. Supporting the health and safety of all Californians means releasing people unnecessarily incarcerated and transforming our justice system." Jay Jordan, Executive Director, Californians for Safety and Justice

CDCR's previous pandemic emergency decompression efforts have reduced inmate populations systemwide by approximately 10,000, to reduce the risk of COVID-19 transmission within its facilities.

"These actions are taken to provide for the health and safety of the incarcerated population and staff," CDCR Secretary Ralph Diaz said. "We aim to implement these decompression measures in a way that aligns both public health and public safety."

Under release authority granted to the CDCR Secretary, which allows alternative confinement or release in any case in which an emergency endangering the lives of incarcerated persons has occurred or is imminent, CDCR is pursuing a series of cohorted release efforts.

Some categories of releases will require additional review for certain incarcerated persons, and some cohorts will be screened on a rolling basis. The department estimates, that through these new efforts up to an estimated 8,000 currently incarcerated persons will be eligible for release.

All individuals will be tested for COVID-19 within seven days of release. CDCR is working closely with stakeholders, local law enforcement partners, and other agencies to leverage state and federal resources for housing in the community to

help meet the reentry needs of these individuals. For all those releasing under these efforts, CDCR is making victim notifications in accordance with all CDCR procedures and state law.

"The Anti-Recidivism Coalition is encouraged by the Governor's response to the dramatic spread of COVID-19 through California's prisons. During these difficult times, it is vital that we all work to protect this vulnerable population and treat them with the dignity and compassion they deserve." Sam Lewis, Exec Director of Anti Recidivism Coalition.

"After witnessing the deadly effects of COVID-19 inside California's dangerously overcrowded prisons, Governor Newsom's plan is the right decision to help protect the lives of people living and working inside prisons and in surrounding communities. In taking this important step, the Governor is following the universal advice of public health and medical experts. We applaud the Governor for working on two crucial fronts: getting the most vulnerable people out of harm's way and stemming the spread of COVID-19 inside prisons and neighboring communities." -Anne Irwin, Director, Smart Justice California.

**New efforts:**

**Release and credit-earning actions**

180-day release

This statewide cohort is currently being screened and released on a rolling basis in order to continuously create more space in all institutions throughout the pandemic. CDCR estimates that 4,800 people could be eligible for release by the end of July.

In order to be eligible, inmates must meet the following criteria:

- Have 180 days or less to serve on their sentence
- Are not currently serving time for domestic violence or a violent crime as defined by law
- Have no current or prior sentences that require them to register as a sex offender under Penal Code 290
- Not have an assessment score that indicates a high risk for violence

One-year release

CDCR is also reviewing for release incarcerated persons with 365 days or less to serve on their sentence, and who reside within identified institutions that house large populations of high-risk patients.

The institutions are: San Quentin State Prison (SQ), Central California Women's Facility (CCWF), California Health Care Facility (CHCF), California Institution for Men (CIM), California Institution for Women (CIW), California Medical Facility (CMF), Folsom State Prison (FOL) and Richard J. Donovan Correctional Facility (RJD).

In order to be eligible, inmates must meet the following criteria:

- Have 365 days or less to serve on their sentence
- Are not currently serving time for domestic violence or a violent crime as defined by law
- Have no current or prior sentences that require them to register as a sex offender
- Not have an assessment indicating a high risk for violence

Individuals who are 30 and over and who meet the eligibility criteria are immediately eligible for release. Those who meet these criteria and are age 29 or under will be reviewed on a case-by-case basis for release. CDCR will consider medical risk, case factors, and time served, among other factors, in determining whether to expedite release for those identified in this cohort.

These cohorts will be screened on a rolling basis until CDCR determines such releases are no longer necessary.

Positive Programming Credits

To recognize the impact on access to programs and credit earning during the COVID-19 pandemic, CDCR will award a one-time Positive Programming Credit (PPC) to all eligible incarcerated people.

This credit of 12 weeks will be awarded to help offset not only credits not earned due to program suspensions, but also to recognize the immense burden incarcerated people have shouldered through these unprecedented times.

In order to be eligible to receive this credit, an incarcerated individual must:

- Currently incarcerated
  - This includes all 35 adult institutions, community correctional facilities, fire camps, Male Community Reentry Program, Community Prisoner Mother Program, Custody to Community Transitional Program, Alternative Custody Program, and those serving a state prison sentence in a state hospital.
- Not be condemned to death or serving life without the possibility of parole
  - As this authorization exists in state law and therefore does not require a regulation change, CDCR must follow the exclusions outlined in the law, which means those serving life without the possibility of parole and people who are condemned are not eligible for credit earning.
- No serious rules violations between March 1 and July 5, 2020
  - This encompasses all Division "A" through "F" offenses, which include but are not limited to murder, rape, battery, assault, arson, escape, possession/distribution of contraband, possession of a cellphone, and gang activity.

CDCR estimates that nearly 108,000 people will be eligible for PPC. Of these, about 2,100 would advance to the point they are eligible for release between July and September.

High-Risk Medical

Individuals deemed "high risk" are considered to be at greater risk for morbidity and mortality should they contract COVID-19. They include people over age 65 who have

chronic conditions, or those with respiratory illnesses such as asthma or chronic obstructive pulmonary disease (COPD).

In order to be eligible, incarcerated persons must meet the following criteria:

- Deemed high risk for COVID-19 complications by CCHCS
- Not serving LWOP or condemned
- Have an assessment indicating a low risk for violence
- No high-risk sex offenders (HRSO)
  - HRSO indicates a convicted sex offender who is required to register pursuant to Penal Code Section 290, and has been identified to pose a higher risk to commit a new sex offense in the community, as determined using a standard risk assessment tools for sex offenders.

Based on individual review of each incarcerated person's risk factors, an estimated number of releases in this cohort is not available.

Additional release efforts

CDCR is reviewing potential release protocols for incarcerated persons who are in hospice or pregnant, as they are considered at high risk for COVID-19 complications. Everybody will be reviewed based on both their current health risk and risk to public safety.

CDCR will also be expediting the release of incarcerated persons who have been found suitable for parole by the Board of Parole Hearings and Governor, but who have not yet been released from prison.

**Previous Decompression Efforts:**

These new measures build on many others already taken to reduce the risk of COVID-19 to all who work and live in the state prison system. Those measures include:

- Reducing CDCR's population in its institutions by more than 10,000 since mid-March.
- Implemented measures to support increased physical distancing, including reducing the number of people who use common spaces at the same time, transferring people out of lower level dorms to celled housing, and erecting tents to create alternate housing and care sites.
- Suspension of movement within and between institutions, other than for critical purposes.
- Suspension of visitation, volunteers, and group programming.
- Implemented mandatory verbal and temperature screenings for staff before they enter any institutions and other CDCR work sites
- Reinforced commitment to hygiene, both institutional and personal, including greater availability of soap and hand sanitizer.
- Providing educational materials to all staff and incarcerated people, including posters, quick reference pocket guides, webinars, and educational videos.

###

Exhibit B

**Alex Padilla**
**California Secretary of State**

| What can we help you with? |
| Search |



# Qualified Statewide Ballot Measures

The following is a list of statewide measures that have qualified for the ballot. For those measures that are currently attempting to qualify, see the **Initiative and Referendum Qualification Status (/elections/ballot-measures/initiative-and-referendum-status/)** page.

For initiative measures that are eligible for the ballot, see the **Eligible Statewide Initiative Measures (/elections/ballot-measures/initiative-and-referendum-status/eligible-statewide-initiative-measures/)** page. An eligible initiative measure is one in which the required number of signatures have been submitted to and verified by the county elections officials. Eligible initiative measures will become qualified for the ballot on the 131st day prior to the next Statewide General Election unless withdrawn by the proponents prior to its qualification by the Secretary of State.

For information on the campaign committees that have organized to support or oppose propositions and ballot measures on the statewide ballot, see the **Propositions and Ballot Measures Campaign Finance Activity (http://cal-access.sos.ca.gov/Campaign/Measures/)** page.

## November 3, 2020, Statewide Ballot Measures

**Proposition 14**

**1880. (19-0022A1)**
**AUTHORIZES BONDS TO CONTINUE FUNDING STEM CELL AND OTHER MEDICAL RESEARCH. INITIATIVE STATUTE.**

Authorizes $5.5 billion in state general obligation bonds to fund grants from the California Institute of Regenerative Medicine to educational, non-profit, and private entities for: (1) stem cell and other medical research, therapy development, and therapy delivery; (2) medical training; and (3) construction of research facilities. Dedicates $1.5 billion to fund research and therapy for Alzheimer's, Parkinson's, stroke, epilepsy, and other brain and central nervous system diseases and conditions. Limits bond issuance to $540 million annually. Appropriates money from General Fund to repay bond debt, but postpones repayment for first five years. Summary of estimate by Legislative Analyst and Director of Finance of fiscal impact on state and local governments: **State costs of $7.8 billion to pay off principal ($5.5 billion) and interest ($2.3 billion) on the bonds. Associated average annual debt payments of about $310 million for 25 years. The costs could be higher or lower than these estimates depending on factors such as the**

interest rate and the period of time over which the bonds are repaid. The state General Fund would pay most of the costs, with a relatively small amount of interest repaid by bond proceeds. (**19-0022A1 (https://www.oag.ca.gov/system/files/initiatives/pdfs/19-0022A1%20%28%28Stem%20Cell%20Research%29% 29_0.pdf)**.)

**Proposition 15**

1870. (19-0008A1)
**INCREASES FUNDING FOR PUBLIC SCHOOLS, COMMUNITY COLLEGES, AND LOCAL GOVERNMENT SERVICES BY CHANGING TAX ASSESSMENT OF COMMERCIAL AND INDUSTRIAL PROPERTY. INITIATIVE CONSTITUTIONAL AMENDMENT.**

Increases funding for K-12 public schools, community colleges, and local governments by requiring that commercial and industrial real property be taxed based on current market value. Exempts from this change: residential properties; agricultural properties; and owners of commercial and industrial properties with combined value of $3 million or less. Increased education funding will supplement existing school funding guarantees. Exempts small businesses from personal property tax; for other businesses, exempts $500,000 worth of personal property. Summary of estimate by Legislative Analyst and Director of Finance of fiscal impact on state and local governments: **Net increase in annual property tax revenues of $7.5 billion to $12 billion in most years, depending on the strength of real estate markets. After backfilling state income tax losses related to the measure and paying for county administrative costs, the remaining $6.5 billion to $11.5 billion would be allocated to schools (40 percent) and other local governments (60 percent). (19-0008 (https://www.oag.ca.gov/system/files/initiatives/pdfs/19-0008%20%28The% 20California%20Schools%20and%20Local%20Communities%20Funding%20Act%20of%202020%29_1.pdf)**.)

**Proposition 16**

**ACA 5 (Resolution Chapter 23), Weber. Government preferences.** (PDF) **(https://elections.cdn.sos.ca.gov/ballot-measures/pdf/aca-5.pdf)**

**Proposition 17**

**ACA 6 (Resolution Chapter 24), McCarty. Elections: disqualification of electors.** (PDF) **(https://elections.cdn.sos.ca.gov/ballot-measures/pdf/aca-6.pdf)**

**Proposition 18**

**ACA 4 (Resolution Chapter 30), Mullin. Elections: voting age.** (PDF) **(https://elections.cdn.sos.ca.gov/ballot-measures/pdf/aca-4.pdf)**

**Proposition 19**

**ACA 11 (Resolution Chapter 31), Mullin. The Home Protection for Seniors, Severely Disabled, Families, and Victims of Wildfire or Natural Disasters Act.** (PDF) **(https://elections.cdn.sos.ca.gov/ballot-measures/pdf/aca11.pdf)**

**Proposition 20**

1840. (17-0044, Amdt.#1)
**RESTRICTS PAROLE FOR NON-VIOLENT OFFENDERS. AUTHORIZES FELONY SENTENCES FOR CERTAIN OFFENSES CURRENTLY TREATED ONLY AS MISDEMEANORS. INITIATIVE STATUTE.**

Imposes restrictions on parole program for non-violent offenders who have completed the full term for their primary offense. Expands list of offenses that disqualify an inmate from this parole program. Changes standards and requirements governing parole decisions under this program. Authorizes felony charges for specified theft crimes currently chargeable only as misdemeanors, including some theft crimes where the value is between $250 and $950. Requires persons convicted of specified misdemeanors to submit to collection of DNA samples for state database. Summary of estimate by Legislative Analyst and Director of Finance of fiscal impact on state and local government: **Increased state and local correctional costs likely in the tens of millions of dollars annually,**

primarily related to increases in penalties for certain theft-related crimes and the changes to the nonviolent offender release consideration process. **Increased state and local court-related costs of around a few million dollars annually related to processing probation revocations and additional felony theft filings. Increased state and local law enforcement costs not likely to exceed a couple million dollars annually related to collecting and processing DNA samples from additional offenders. (17-0044 (https://www.oag.ca.gov/system/files/initiatives/pdfs/17-0044%20%28Reducing%20Crime%29.pdf)**.)

**Proposition 21**

**1862. (19-0001)**
**EXPANDS LOCAL GOVERNMENTS' AUTHORITY TO ENACT RENT CONTROL ON RESIDENTIAL PROPERTY. INITIATIVE STATUTE.**

Amends state law to allow local governments to establish rent control on residential properties over 15 years old. Allows rent increases on rent-controlled properties of up to 15 percent over three years from previous tenant's rent above any increase allowed by local ordinance. Exempts individuals who own no more than two homes from new rent-control policies. In accordance with California law, provides that rent-control policies may not violate landlords' right to a fair financial return on their property. Summary of estimate by Legislative Analyst and Director of Finance of fiscal impact on state and local governments: **Potential reduction in state and local revenues of tens of millions of dollars per year in the long term. Depending on actions by local communities, revenue losses could be less or more. (19-0001 (https://oag.ca.gov/system/files/initiatives/pdfs/19-0001%20%28Rental%20Affordability%20Act%29.pdf)**.)

**Proposition 22**

**1883. (19-0026A1)**
**CHANGES EMPLOYMENT CLASSIFICATION RULES FOR APP-BASED TRANSPORTATION AND DELIVERY DRIVERS. INITIATIVE STATUTE.**

Establishes different criteria for determining whether app-based transportation (rideshare) and delivery drivers are "employees" or "independent contractors." Independent contractors are not entitled to certain state-law protections afforded employees—including minimum wage, overtime, unemployment insurance, and workers' compensation. Instead, companies with independent-contractor drivers will be required to provide specified alternative benefits, including: minimum compensation and healthcare subsidies based on engaged driving time, vehicle insurance, safety training, and sexual harassment policies. Restricts local regulation of app-based drivers; criminalizes impersonation of such drivers; requires background checks. Summary of estimate by Legislative Analyst and Director of Finance of fiscal impact on state and local governments: **Increase in state personal income tax revenue of an unknown amount. (19-0026A1 (https://www.oag.ca.gov/system/files/initiatives/pdfs/19-0026A1%20%28App-Based%20Drivers%29.pdf)**)

**Proposition 23**

**1882. (19-0025A1)**
**AUTHORIZES STATE REGULATION OF KIDNEY DIALYSIS CLINICS. ESTABLISHES MINIMUM STAFFING AND OTHER REQUIREMENTS. INITIATIVE STATUTE.**

Requires at least one licensed physician on site during treatment at outpatient kidney dialysis clinics; authorizes Department of Public Health to exempt clinics from this requirement due to shortages of qualified licensed physicians if at least one nurse practitioner or physician assistant is on site. Requires clinics to report dialysis-related infection data to state and federal governments. Requires state approval for clinics to close or reduce services. Prohibits clinics from discriminating against patients based on the source of payment for care. Summary of estimate by Legislative Analyst and Director of Finance of fiscal impact on state and local governments: **Increased state and local health care costs, likely in the low tens of millions of dollars annually, resulting from increased dialysis treatment costs. (19-0025A1 (https://www.oag.ca.gov/system/files/initiatives/pdfs/19-0025A1%20%28%28Dialysis%29%29.pdf)**.)

**Proposition 24**

**1879. (19-0021A1)**
**AMENDS CONSUMER PRIVACY LAWS. INITIATIVE STATUTE.**

Permits consumers to: (1) prevent businesses from sharing personal information; (2) correct inaccurate personal information; and (3) limit businesses' use of "sensitive personal information"—such as precise geolocation; race; ethnicity; religion; genetic data; union membership; private communications; and certain sexual orientation, health, and biometric information. Changes criteria for which businesses must comply with these laws. Prohibits businesses' retention of personal information for longer than reasonably necessary. Triples maximum penalties for violations concerning consumers under age 16. Establishes California Privacy Protection Agency to enforce and implement consumer privacy laws, and impose administrative fines. Requires adoption of substantive regulations. Summary of estimate by Legislative Analyst and Director of Finance of fiscal impact on state and local governments: **Increased annual state costs of roughly $10 million for a new state agency to monitor compliance and enforcement of consumer privacy laws. Increased state costs, potentially reaching the low millions of dollars annually, from increased workload to DOJ and the state courts, some or all of which would be offset by penalty revenues. Unknown impact on state and local tax revenues due to economic effects resulting from new requirements on businesses to protect consumer information.** (**19-0021A1 (https://www.oag.ca.gov/system/files/initiatives/pdfs/19-0021A1%20%28Consumer%20Privacy%20-%20Version%203%29_1.pdf)**.)

**Proposition 25**

**1856. (18-0009)**
**REFERENDUM TO OVERTURN A 2018 LAW THAT REPLACED MONEY BAIL SYSTEM WITH A SYSTEM BASED ON PUBLIC SAFETY RISK.**

If this petition is signed by the required number of registered voters and timely filed, a referendum will be placed on the next statewide ballot requiring a majority of voters to approve a 2018 state law before it can take effect. The 2018 law replaces the money bail system with a system for pretrial release from jail based on a determination of public safety or flight risk, and limits pretrial detention for most misdemeanors. (**18-0009 (https://oag.ca.gov/system/files/initiatives/pdfs/18-0009%20%28Referendum%20of%20SB%2010%29.pdf)**)

As new initiatives enter circulation, fail, become eligible for, or qualify for an election ballot, the Secretary of State's office will issue initiative status updates. The updates can be found on our **Initiative and Referendum Qualification Status (/elections/ballot-measures/initiative-and-referendum-status/)** page or by signing up for updates below.

Exhibit C

Subscribe to *Documenting America's Path to Recovery* to find out about states' reopening plans

Today's Refinance Rate          Select Loan Amount                                    ▷

**2.53%**                         $225,000                          Calculate Payment
APR 15 Year Fixed                                                  Terms & Conditions apply. NMLS#1136

# California Proposition 20, Criminal Sentencing, Parole, and DNA Collection Initiative (2020)

**California Proposition 20**, the **Criminal Sentencing, Parole, and DNA Collection Initiative**, is on the ballot in California as an initiated state statute on November 3, 2020.

A **"yes"** vote supports this initiative to add crimes to the list of violent felonies for which early parole is restricted; recategorize certain types of theft and fraud crimes as wobblers (chargeable as misdemeanors or felonies); and require DNA collection for certain misdemeanors.

A **"no"** vote opposes this initiative to add crimes to the list of violent felonies for which early parole is restricted; recategorize certain types of theft and fraud crimes as wobblers (chargeable as misdemeanors or felonies); and require DNA collection for certain misdemeanors.

## California Proposition 20



CALIFORNIA REPUBLIC

**Election date**
November 3, 2020
**Topic**
Law enforcement
**Status**
*On the ballot*

| Type | Origin |
|---|---|
| State statute | Citizens |

## Overview

### What would this ballot initiative change about criminal sentencing and supervision policies in California?

*See also: Initiative design*

The ballot initiative would amend several criminal sentencing and supervision laws that were passed between 2011 and 2016.[1]

The ballot initiative would make specific types of theft and fraud crimes, including firearm theft, vehicle theft, and unlawful use of a credit card, chargeable as misdemeanors or felonies, rather than misdemeanors. The ballot initiative would also establish two additional types of crimes in state code—serial crime and organized retail crime—and charge them as wobblers (crimes chargeable as misdemeanors or felonies).[1]

The ballot initiative would require persons convicted of certain misdemeanors that were classified as wobblers or felonies before 2014, such shoplifting, grand theft, and drug possession, along with several other crimes, including domestic violence and prostitution with a minor, to submit to the collection of DNA samples for state and federal databases.[1]

The California Department of Corrections and Rehabilitation (DCR) has a parole review program in which felons convicted of nonviolent crimes, as defined in law, could be released on parole upon completing their sentence for his or her offense with the longest imprisonment term. The ballot initiative would require the parole review board to consider additional factors, such as the felon's age, marketable skills, attitude about the crime, and mental condition, as well as the circumstances of the crimes committed, before deciding whether to release a felon on parole. The ballot initiative would allow prosecutors to request a review of the board's final decision. The ballot initiative would also define 51 crimes and sentence enhancements as violent in order to exclude them from the parole review program.[1]

In California, counties are responsible for supervising paroled felons convicted of non-serious and non-violent crimes, as defined in law, and who were not classified as high-risk sex offenders nor classified as needing treatment from the state Department of Mental Health. Counties have discretion on whether to petition the judicial system to change a felon's post-release supervision terms or status. The ballot initiative would require local probation departments to ask a judge to change the conditions or status of a felon's post-release supervision if the felon violated supervision terms for the third time.[1]

## What existing laws would this ballot initiative change?

The ballot initiative was designed to make changes to AB 109 (2011), Proposition 47 (2014), and Proposition 57 (2016)—three measures that were each intended to reduce the state's prison inmate population. According to Assemblyman Jim Cooper (D-9), the goal of the initiative is to "[reform] the unintended consequences of reforms to better protect the public."[2] Former Gov. Jerry Brown (D) disagreed with Cooper's assessment, saying the initiative is the "latest scare tactic on criminal justice reform."[3]

Before Proposition 47 and Proposition 57, and a month after the passage of AB 109, the U.S. Supreme Court ruled that overcrowding in the state's prisons resulted in cruel and unusual punishment and affirmed a lower court's order to reduce the prison population. AB 109 shifted the imprisonment of non-serious, non-violent, and non-sexual offenders, as defined in state law, from state prisons to local jails. AB 109 also made counties, rather than the state, responsible for supervising certain felons on parole. Proposition 47, which voters approved in 2014, changed several crimes, which the measure considered non-serious and non-violent, from felonies or wobblers to misdemeanors. Former Gov. Brown (D) developed Proposition 57, which voters approved in 2016. Proposition 57 increased parole chances for felons convicted of nonviolent crimes, as defined in state law, and gave them more opportunities to earn sentence-reduction credits for good behavior.

The Center on Juvenile and Criminal Justice, a nonprofit based in San Francisco, described AB 109 and Propositions 47 and 57 as successful sentencing reforms that reduced overcrowding in state prisons.[4] Andrew Do, chair of the Orange County Board of Supervisors, described the measures as "California's dangerous trifecta."[5]

# Initiative design

Click on the arrows (▼) below for summaries of the different provisions of the ballot initiative.

►Penalities for theft-related crimes: classifying certain misdemeanors as wobblers

►**DNA collection:** requiring collection for specific misdemeanors

►**Criteria to consider in nonviolent offender parole program:** additional factors to consider before deciding parole Subscribe to *Documenting America's Path to Recovery* to find out about states' reopening plans

►**Crimes defined as violent:** crimes not eligible for nonviolent offender parole program

►**Changes to probation and parole supervision:** rules regarding probation violations and exchange of information

# Text of measure

## Ballot title

The official ballot title is as follows:[9]

> 66 Restricts Parole for Non-Violent Offenders. Authorizes Felony Sentences for Certain Offenses Currently Treated Only as Misdemeanors. Initiative Statute.[10] 99

## Petition summary

The summary provided for inclusion on signature petition sheets is as follows:[9]

> 66 Imposes restrictions on parole program for non-violent offenders who have completed the full term for their primary offense. Expands list of offenses that disqualify an inmate from this parole program. Changes standards and requirements governing parole decisions under this program. Authorizes felony charges for specified theft crimes currently chargeable only as misdemeanors, including some theft crimes where the value is between $250 and $950. Requires persons convicted of specified misdemeanors to submit to collection of DNA samples for state database.[10] 99

## Fiscal impact statement

The fiscal impact statement is as follows:[9]

> 66 Increased state and local correctional costs likely in the tens of millions of dollars annually, primarily related to increases in penalties for certain theft-related crimes and the changes to the nonviolent offender release consideration process. Increased state and local court-related costs of around a few million dollars annually related to processing probation revocations and additional felony theft filings. Increased state and local law enforcement costs not likely to exceed a couple million dollars annually related to collecting and processing DNA samples from additional offenders.[10] 99

## Full text

The full text of the ballot initiative is below:[1]

Subscribe to *Documenting America's Path to Recovery* to find out about states' reopening plans

# Support

**Keep California Safe** is leading the campaign in support of the ballot initiative.[11] Keep California Safe named the ballot initiative the **Reducing Crime and Keeping California Safe Act**.[1] The campaign is a project of the California Public Safety Partners (CAPSP).[2]

## Supporters

### Officials

- Asm. Jim Cooper (D-9)[12]
- Asm. Vince Fong (R-34)[13]

### Municipalities

- Orange County Board of Supervisors[14]

### Organizations

- Association for Los Angeles Deputy Sheriffs[15]
- Los Angeles Police Protective League[15]
- Peace Officers Research Association of California[15]

### Businesses

- Albertsons Safeway[15]

## Arguments

- **Asm. Jim Cooper (D-9)** said, "Right now California crimes that are considered nonserious and nonviolent—and that allow you to get out of jail or prison earlier—are drugging and raping somebody, raping a developmentally disabled person, spousal abuse, a drive-by shooting, human trafficking of a child. So a myriad of different crimes, some 17 to be exact. The public never had any idea. These were not considered serious or violent crimes in the state of California. When they hear it they're shocked."[16]

# Opposition

## Opponents

### Officials
- Gov. Jerry Brown (D)[17]

### Organizations
- American Civil Liberties Union of Northern California[15]

### Unions
- SEIU California State Council[18]

### Individuals
- Lynn Schusterman[15]
- Patty Quillin[15]

## Arguments

- **Ana Zamora**, director of prosecutorial reform for the ACLU of Northern California, said, "They would like us to believe that California is in dire straits in order to reverse many of the reforms we have put in place since 2012. ... We urge the proponents of this new effort to reject the Trump Administration's return to the failed 1990's era of harsh sentencing and mass incarceration, as the voters of this state have consistently done, and instead work toward keeping California's crime rates the lowest in history."[2]

- **Dan Newman**, a political consultant for the opposition campaign, said, "It's a prison spending scam at a time when we are actively closing prisons and reallocating funds toward what's needed in communities. They're doubling down on solidifying their places on the wrong side of history at a critical moment."[19]

# Campaign finance

Subscribe to *Documenting America's Path to Recovery* to find out about states' reopening plans
*See also: Campaign finance requirements for California ballot measures*

> **The campaign finance information on this page reflects the most recently scheduled reports processed by Ballotpedia, which covered through March 31, 2020. The deadline for the next scheduled reports is July 31, 2020.**

Two PACs—**Keep California Safe** and **Protecting California Cooper Ballot Measure Committee**—were registered to support the ballot initiative. Together, the committees had raised $3.99 million, including $2.00 million from the California Correctional Peace Officers Association Truth in American Government Fund. The committees had spent $2.38 million.[15]

Two PACs—**Committee for California Issues PAC** and **California Public Safety and Rehabilitation**—were registered to oppose the ballot initiative. Together, the committees had raised $809,978, including $250,000 from Patty Quillin and $250,000 from Lynn Schusterman. The committees had spent $232,713.[15]

|  | Cash Contributions | In-Kind Contributions | Total Contributions | Cash Expenditures | Total Expenditures |
|---|---|---|---|---|---|
| Support | $3,761,171.00 | $232,622.90 | **$3,993,793.90** | $2,145,484.98 | $2,378,107.88 |
| Oppose | $760,478.31 | $49,500.00 | **$809,978.31** | $183,213.22 | $232,713.22 |

## Support

The following table includes contribution and expenditure totals for the committee in support of the initiative.[15]

**Committees in support of Proposition 20**

| Committee | Cash Contributions | In-Kind Contributions | Total Contributions | Cash Expenditures | Total Expenditures |
|---|---|---|---|---|---|
| Keep California Safe | $3,731,671.00 | $232,622.90 | $3,964,293.90 | $2,132,855.59 | $2,365,478.49 |
| Protecting California Cooper Ballot Measure Committee | $29,500.00 | $0.00 | $29,500.00 | $12,629.39 | $12,629.39 |
| **Total** | **$3,761,171.00** | **$232,622.90** | **$3,993,793.90** | **$2,145,484.98** | **$2,378,107.88** |

### Donors

The following were the top five donors who contributed to the support committee.[15]

| Donor | Cash Contributions | In-Kind Contributions | Total Contributions |
|---|---|---|---|

| | | | |
|---|---|---|---|
| California Correctional Peace Officers Association Truth in ~~Subscribe to Documenting~~ | $2,000,000.00 *America's Path to Recovery* to find | $0.00 out about states' reopening | $2,000,000.00 plans |
| Association For Los Angeles Deputy Sheriffs PIC | $200,000.00 | $0.00 | $200,000.00 |
| Los Angeles Police Protective League Issues PAC | $200,000.00 | $0.00 | $200,000.00 |
| Jim Cooper for Assembly 2018 | $125,000.00 | $0.00 | $125,000.00 |
| Albertsons Safeway | $100,000.00 | $0.00 | $100,000.00 |

## California Correctional Peace Officers Association

In December 2018, the California Correctional Peace Officers Association's (CCPOA) political fund contributed $2 million to the Keep California Safe PAC. On January 14, 2019, CCPOA president Kurt Stoetzl asked the PAC to return the contribution. Stoetzl said, "As you aware, during the last week of December 2018, CCPOA contributed two million dollars to your Issues Committee. As you may not be aware, this contribution was made by our past president in the final hours of his term. This contribution was made without the new leadership of CCPOA having the opportunity to evaluate the proposed initiative, to determine if the goals of your Issues Committee, and the initiative, are in step in the goals of CCPOA." Stoetzl said the CCPOA wanted the contribution back "so that we can evaluate your positions and determine whether or not we are in support."[20]

# Opposition

The following table includes contribution and expenditure totals for the committee in opposition to the initiative.[15]

**Committees in opposition to Proposition 20**

| Committee | Cash Contributions | In-Kind Contributions | Total Contributions | Cash Expenditures | Total Expenditures |
|---|---|---|---|---|---|
| California Public Safety and Rehabilitation | $500,000.00 | $0.00 | $500,000.00 | $79,523.50 | $79,523.50 |
| Committee for California Issues PAC | $260,478.31 | $49,500.00 | $309,978.31 | $103,689.72 | $153,189.72 |
| **Total** | **$760,478.31** | **$49,500.00** | **$809,978.31** | **$183,213.22** | **$232,713.22** |

## Donors

The following were the top donors to the opposition committee.[15]

| Donor | Cash Contributions | In-Kind Contributions | Total Contributions |
|---|---|---|---|
| Lynn Schusterman | $250,000.00 | $0.00 | $250,000.00 |
| Patty Quillin | $250,000.00 | $0.00 | $250,000.00 |
| American Civil Liberties Union of Northern California | $200,000.00 | $49,500.00 | $249,500.00 |

| Governor Brown's Ballot Measure Committee | $60,478.31 | $0.00 | $60,478.31 |

Subscribe to *Documenting America's Path to Recovery* to find out about states' reopening plans

## Methodology

To read Ballotpedia's methodology for covering ballot measure campaign finance information, click here.

# Background

## Brown v. Plata

In 2009, a three-judge court ordered the state government to reduce the prison population to within 137.5 percent of the state prisons' designed capacities. The three-judge court said, "until the problem of overcrowding is overcome it will be impossible to provide constitutionally compliant care to California's prison population."[21]

California appealed the ruling to the U.S. Supreme Court. The state government said tools existed to resolve the overcrowding issue without reducing the prison population, including constructing new prisons and transferring prisoners to other states. In 2011, the U.S. Supreme Court ruled that overcrowding in the state's prisons resulted in cruel and unusual punishment—a violation of the Eighth Amendment—and affirmed the lower court's order to reduce the prison population. Justice Anthony Kennedy wrote the court's 5-4 decision, ruling, "the court-mandated population limit is necessary to remedy the violation of prisoners' constitutional rights." Justices Ginsburg, Breyer, Sotomayor, and Kagan concurred with the decision. The remaining four justices—Scalia, Thomas, Roberts, and Alito—dissented. Justice Scalia stated, "[Brown v. Plata] is perhaps the most radical injunction issued by a court in our Nation's history: an order requiring California to release the staggering number of 46,000 convicted criminals."[21]

## Assembly Bill 109 (2011)

In 2011, the California State Legislature passed Assembly Bill 109 (AB 109), known as the criminal corrections realignment law. AB 109 transferred the management and supervision of certain felons, who were convicted of non-serious, non-violent, and non-sexual crimes (as defined in law), from the state government to county governments. Before AB 109, state law required felons to serve sentences in state prison.[22]

Title 2.05 of AB 109 was known as the Postrelease Community Supervision Act (PCSA), which required counties, rather than the state, to supervise felons convicted of certain types of crimes after their release from prison. PCSA affected felons who were convicted of crimes that the law described as non-serious and non-violent and who were not classified as high-risk sex offenders nor classified as needing treatment from the state Department of Mental Health. The PCSA gave counties the power to decide methods for punishing violations of supervision conditions, such as flash incarceration, mandatory community service, and mandatory drug treatment. Counties were also given the option to petition a hearing officer to change a felon's supervision conditions, incarcerate a felon in jail for longer than 10 days, or refer a felon to a reentry court.[8]

The California State Senate passed AB 109 in a vote of 24 to 16. The California General Assembly passed AB 109 in a vote of 51 to 27. Gov. Jerry Brown (D) signed AB 109 into law on April 4, 2011. [23]    Subscribe to *Documenting America's Path to Recovery* to find out about states' reopening plans

## Proposition 47 (2014)

*See also: California Proposition 47, Reduced Penalties for Some Crimes Initiative (2014)*

In 2014, voters approved Proposition 47 in a vote of 59.6 percent to 40.4 percent. Proposition 47 classified crimes that the initiative considered *non-violent* and *non-serious* as misdemeanors instead of felonies unless the defendant has prior convictions for murder, rape, certain sex offenses, or certain gun crimes. It also permitted re-sentencing for those currently serving a prison sentence for any of the offenses that the initiative reduces to misdemeanors. Under Proposition 47, about 10,000 inmates were eligible for re-sentencing, according to Lenore Anderson of Californians for Safety and Justice.[24][25]

More than $10.97 million was raised to support the ballot initiative, including $3.50 million from the ACLU and $1.46 million from the Open Society Policy Center. Supporters included Lt. Gov. Gavin Newsom (D), along with U.S. Sen. Rand Paul (R-Kentucky) and former speaker of the U.S. House Newt Gingrich (R-Georgia).[26][27][28]

Opponents raised 5 percent of what supporters' received, totaling $551,800 in contributions. The top contributor to the opposition was the Peace Officers Research Association of California PIC, which provided $286,000. U.S. Sen. Dianne Feinstein (D-California) opposed Proposition 47, as did the state Republican Party.[29][30]

## Proposition 57 (2016)

*See also: California Proposition 57, Parole for Non-Violent Criminals and Juvenile Court Trial Requirements (2016)*

Proposition 57 was approved with 64.5 percent of the vote. The initiative increased parole chances for felons convicted of nonviolent crimes and gave them more opportunities to earn credits for good behavior. The measure allowed individuals convicted of nonviolent felony crimes who served full sentences for their primary offense and passed screening for public security eligible for parole. It also allowed judges, not prosecutors, to decide whether to try certain juveniles as adults in court.[31] Using numbers from early 2016, there were about 25,000 nonviolent state felons that could seek early release and parole under Proposition 57.[32]

The measure was developed by Gov. Jerry Brown (D) and backed by Lt. Gov. Gavin Newsom (D), former speaker of the U.S. House Newt Gingrich (R), and the California Democratic Party.[33][34] The committees supporting Proposition 57 raised an aggregate $15.04 million, with $2.17 million from the state Democratic Party, $1.75 million from Tom Steyer, and $1.00 million from Mark Zuckerberg.

Opponents raised $1.51 million in contributions. The largest donors included the Association for Los Angeles Deputy Sheriffs PIC, which gave $200,000, and the Los Angeles County Professional Peace Officers' Association IEC, which donated $150,000. The California Republican Party, U.S. Rep. Tom McClintock (R-4), and U.S. Rep. Loretta Sanchez (D-46) were opposed to the measure.[35][36][30]

## California's state imprisonment rate

Prior to the enactment of AB 109's Postrelease Community Supervision Act (PCSA) on July 1, 2011, the state's imprisonment rate was 431 inmates per 100,000 residents. The next year the imprisonment rate was 356 inmates per 100,000 residents. In 2018, the rate fell to 317 inmates. The following graph illustrates the state's imprisonment rate from 1995 through 2019. Rates were calculated using the CDCR's prison population reports and the U.S. Census Bureau's annual population estimates.[37][38]

- The first orange bar represents the enactment of AB 109's PCSA on July 1, 2011.
- The second orange bar represents the enactment of Proposition 47 following the election on November 4, 2014.
- The third orange bar represents July 1, 2017—the date when the CDCR started referring inmates for Proposition 57's parole program.

**California's state imprisonment rate per 100,000 residents, 1995-2019**



Chart: Ballotpedia • Source: California Department of Corrections and Rehabilitation

**BALLOT**PEDIA

# Path to the ballot

*See also: California signature requirements and Laws governing the initiative process in California*

In California, the number of signatures needed to qualify a measure for the ballot is based on the total number of votes cast for the office of governor. For an initiated state statute, petitioners must collect signatures equal to 5 percent of the most recent gubernatorial vote. To get this measure on the 2020 ballot, the number of signatures required was 365,880. In California, initiatives can be circulated for 180 days. Signatures needed to be certified at least 131 days before the 2020 general election. As the signature verification process can take several weeks, the California secretary of state issues suggested deadlines for several months before the certification deadline.

The timeline for this initiative was as follows:[39]

- Nina Salarno Besselman submitted a letter requesting a title and summary on October 31, 2017.
- Subscribe to *Documenting America's Path to Recovery* to find out about states' reopening plans.
- A title and summary were issued by the California attorney general's office on January 4, 2018.
- On February 7, 2018, the campaign reported collecting at least 25 percent of the required signatures.
- Proponents of the initiative needed to submit 365,880 valid signatures by July 3, 2018, in order for it to make the ballot.

On July 9, 2018, Secretary of State Alex Padilla reported that more than enough signatures had been submitted for the measure to make the ballot in 2020.[40]

**Cost of signature collection:**
Sponsors of the measure hired Arno Petition Consultants to collect signatures for the petition to qualify this measure for the ballot. A total of $2,046,104.99 was spent to collect the 365,880 valid signatures required to put this measure before voters, resulting in a total cost per required signature (CPRS) of $5.59.

# Brown v. Padilla and Salarno Besselman

### Lawsuit overview

**Issue**: Required number of signatures for the ballot initiative

**Court**: Sacramento County Superior Court

**Plaintiff(s)**: Gov. Jerry Brown

**Defendant(s)**: Secretary of State Alex Padilla and Nina Salarno Besselman

**Plaintiff argument**:
The ballot initiative should have been considered a constitutional amendment, and thus should have required 585,407 signatures, rather than 365,880 signatures, to make the ballot.

**Defendant argument**:
The ballot initiative met the signature requirements as required by the secretary of state.

*Source: Associated Press*

On December 20, 2018, Gov. Jerry Brown (D) filed litigation against Secretary of State Alex Padilla (D) and initiative's official proponent, Nina Salarno Besselman, in the Sacramento County Superior Court. Gov. Brown asked the court to invalidate the initiative because, according to Brown, Secretary of State Padilla used the wrong signature threshold. Padilla required proponents to collect 365,880 signatures—the number required for initiated state statutes. Gov. Brown said 585,407 signatures should have been required—the number required for initiated constitutional amendments. According to Gov. Brown, the initiative should have been treated as a constitutional amendment because of its impact on the constitutional powers that Proposition 57 (2016) provided the Department of Corrections and Rehabilitation.[41]

Jeff Flint, a spokesperson for Keep California Safe, said, "The secretary of state told us how many

signatures are required and that's how many we collected."[41]

Subscribe to *Documenting America's Path to Recovery* to find out about states' reopening plans

# How to cast a vote

*See also: Voting in California*

**Click "Show" to learn more about voter registration, identification requirements, and poll times in California.**

| How to cast a vote in California | [show] |
|---|---|

# See also

**2020 measures**



- 2020 ballot measures
- Law enforcement on the ballot
- Civil and criminal trials on the ballot
- 2020 legislative sessions

**California**



- California ballot measures
- California ballot measure laws

**News and analysis**



- Ballot measure lawsuits
- Ballot measure readability
- Ballot measure polls

# External links

- Initiative #17-0044

Today's Refinance Rate

**2.53%**

APR

Calculate Payment

Terms & Conditions apply. NMLS#1136

Stay Up to Date on States' Path to Recovery to find out about states' reopening plans

| 15-Year Fixed | 2.25% |
| 30-Year Fixed | 2.75% |
| 5/1 ARM | 2.88% |
| $225,000 (5/1 ARM) | $934/mo |
| $350,000 (5/1 ARM) | $1,406/mo |

# Footnotes

1. *California Attorney General*, "Initiative #17-0044," accessed October 31, 2017
2. *The Davis Vanguard*, "Ballot Measure Seeks to Undo California's Criminal Justice Reform," October 31, 2017
3. *The Sacramento Bee*, "Don't fall for this latest scare tactic on criminal justice reform, governor says," February 26, 2018
4. *Center on Juvenile and Criminal Justice*, "AB 109, Prop 47, and Prop 57 Are Safely Reducing the Prison Population, but Durable Public Safety Requires Further Cuts in

Only the first few references on this page are shown above. Click to show more.

Ballotpedia features 311,976 encyclopedic articles written and curated by our professional staff of editors, writers, and researchers. Click here to contact our editorial staff, and click here to report an error. Click here to contact us for media inquiries, and please donate here to support our continued expansion.

| GET ENGAGED | 2020 ELECTIONS | ELECTION RESOURCES | GOVERNMENT |
|---|---|---|---|
| Front Page | Subscribe to *Documenting America's Path to Recovery* to find out about states' reopening plans | | |
| Sample Ballot Lookup | U.S. President | changes | U.S. Congress |
| Who Represents Me? | U.S. Congress | Sample Ballot Lookup | U.S. Supreme Court |
| Email Updates | U.S. Congress special elections | Election Calendar | Federal Courts |
| Ballotpedia Events | State Executives | Election Results | State Executives |
| Donate to Ballotpedia | State Legislatures | Ballotpedia's Candidate Connection | State Legislatures |
| Other Ways to Engage | State Judges | Poll Opening and Closing Times | State Courts |
| Job Opportunities | State Ballot Measures | | State Ballot Measures |
| Report an Error | Local Ballot Measures | State Voter ID Laws | Local Ballot Measures |
| | Municipal Officials | Early Voting | Municipal Government |
| | Mayors | Absentee Voting | School Boards |
| | School Boards | Online Voter Registration | Local Courts |
| | Recalls | Ballot Access | |

| POLITICS | PUBLIC POLICY | ABOUT US |
|---|---|---|
| Trump Admin. Policies | Responses to coronavirus | About Ballotpedia |
| Trump Admin. Cabinet | Overview | Index of Contents |
| Administrative State | Budget | Scope of Ballotpedia |
| Supreme Court Cases | Campaign Finance | History of Ballotpedia |
| State Trifectas | Civil Liberties | Contact us |
| State Triplexes | Education | Media Inquiries |
| Influencers | Election | Advertise with Ballotpedia |
| Redistricting | Endangered Species | Ballotpedia Staff |
| Fact Checks | Energy | Neutrality Policy |
| Polling Indexes | Environment | Privacy Policy |
| | Finance | Editorial Independence |
| | Healthcare | General Disclaimer |
| | Immigration | Ad Policy |
| | Pension | |
| | Redistricting | |
| | Voting | |

Exhibit D

Data Analysis Unit                              Department of Corrections and Rehabilitation
Estimates and Statistical Analysis Section                            State of California
Offender Information Services Branch                                 September 8, 2009

MONTHLY REPORT OF POPULATION
AS OF MIDNIGHT August 31, 2009

TOTAL CDCR POPULATION

| | FELON/ OTHER #1 | CIVIL ADDICT | TOTAL | CHANGE SINCE 08/31/08 NO. | PCT. | DESIGN CAPACITY | PERCENT OCCUPIED | STAFFED CAPACITY |
|---|---|---|---|---|---|---|---|---|
| A. TOTAL INSTITUTIONS | 165,630 | 853 | 166,483 | -5,427 | -3.1 | | | |
| I.  IN-STATE | 157,798 | 853 | 158,651 | -13,259 | -7.7 | | | |
| (MEN, Subtotal) | 147,018 | 623 | 147,641 | -7,867 | -5.0 | | | |
| (WOMEN, Subtotal) | 10,780 | 230 | 11,010 | -551 | -4.7 | | | |
| 1. INSTITUTIONS/CAMPS | 152,611 | 850 | 153,461 | -7,112 | -4.4 | 84,271 | 182.1 | 157,576 |
| INSTITUTIONS | 148,324 | 850 | 149,174 | -7,030 | -4.5 | 80,033 | 186.4 | 153,217 |
| CAMPS(CCC & SCC)* | 4,287 | | 4,287 | -82 | -1.8 | 4,238 | 101.2 | 4,359 |
| 2. COMMUNITY CORR. CTRS. | 4,944 | 3 | 4,947 | -1,337 | -21.2 | 5,846 | 84.6 | |
| CCF PRIVATE | 2,589 | | 2,589 | -317 | -10.9 | 2,752 | 94.1 | |
| CCF PUBLIC | 1,906 | | 1,906 | -823 | -30.1 | 2,461 | 77.4 | |
| DRUG TREATMT FURLOUGH | 262 | 3 | 265 | -103 | -27.9 | 440 | 60.2 | |
| PRISONER MOTHER PGM | 64 | | 64 | -8 | -11.1 | 70 | 91.4 | |
| FAMILY FOUNDATION PGM | 70 | | 70 | -1 | -1.4 | 70 | 100.0 | |
| WORK FUR. IN CUSTODY #2 | 53 | | 53 | -14 | -20.8 | 53 | 100.0 | |
| 3. DMH STATE HOSPITALS | 243 | | 243 | +31 | +14.6 | | | |
| II. OUT OF STATE(COCF) | 7,832 | 0 | 7,832 | | | | | |
| ARIZONA | 4,273 | | 4,273 | | | | | |
| MISSISSIPPI | 2,492 | | 2,492 | | | | | |
| OKLAHOMA | 1,067 | | 1,067 | | | | | |
| B. PAROLE | 109,809 | 1,261 | 111,070 | -13,039 | -10.5 | | | |
| COMMUNITY SUPERVISION | 108,337 | 1,261 | 109,598 | -13,096 | -10.6 | | | |
| COOPERATIVE CASES #3 | 1,472 | | 1,472 | +57 | +4.0 | | | |
| C. NON-CDC JURISDICTION #4 | 1,693 | 0 | 1,693 | -118 | -6.5 | | | |
| OTHER STATE/FED. INST. | 514 | | 514 | +1 | +0.1 | | | |
| OUT OF STATE PAROLE | 941 | | 941 | -184 | -16.3 | | | |
| OUT OF STATE PAL | 62 | | 62 | +3 | +5.0 | | | |
| CYA-W&IC 1731.5(c) #5 | | | | | | | | |
| INSTITUTIONS | 176 | | 176 | +62 | +54.3 | | | |
| D. OTHER POPULATIONS #6 | 18,757 | 133 | 18,890 | -1,145 | -5.7 | | | |
| INMATES | | | | | | | | |
| OUT-TO-COURT, etc. | 2,909 | 40 | 2,949 | +667 | +29.2 | | | |
| ESCAPED | 208 | | 208 | -17 | -7.5 | | | |
| PAROLEES (PAL/RAL) | 15,640 | 93 | 15,733 | -1,795 | -10.2 | | | |
| TOTAL CDCR POPULATION | 295,889 | 2,247 | 298,136 | -14,888 | -4.7 | | | |

CHANGE FROM LAST MONTH
| | | | |
|---|---|---|---|
| A. TOTAL INSTITUTIONS | -1,570 | +8 | -1,562 |
| (MEN, Subtotal) | -1,524 | +5 | -1,519 |
| (WOMEN, Subtotal) | -22 | +3 | -19 |
| B. PAROLE | +8 | -36 | -28 |
| D. PAROLEES (PAL/RAL) | -113 | +11 | -102 |

This report contains the latest available reliable population figures from OBIS.  They have been
carefully audited, but are preliminary, and therefore subject to revision.

*Figure excludes institution based camps.  Total persons in camps, including base camps, are 4,294.
Base camp at CMC is included in institution counts.

Report # TPOP-8.Questions: (916) 327-3262  (CALNET) 467-3262.

MONTHLY INSTITUTION/CAMPS POPULATION DETAIL                        MIDNIGHT August 31, 2009

| INSTITUTIONS/CAMPS | | FELON/ OTHER | CIVIL ADDICT | TOTAL | DESIGN CAPACITY | PERCENT OCCUPIED | STAFFED CAPACITY |
|---|---|---|---|---|---|---|---|
| **MALE** | | | | | | | |
| ASP | (AVENAL SP) | 6,340 | | 6,340 | 2,920 | 217.1 | 6,506 |
| CCC | (CAL CORRECTL CTR) | 5,528 | | 5,528 | 3,883 | 142.4 | 5,724 |
| CCI | (CAL CORRECTL INSTITN) | 5,759 | | 5,759 | 2,783 | 206.9 | 5,732 |
| CIM | (CAL INSTITN FOR MEN) | 4,533 | 24 | 4,557 | 2,976 | 153.1 | 6,011 |
| CMF | (CAL MEDICAL FACIL) | 2,711 | | 2,711 | 2,297 | 118.0 | 2,875 |
| CMC | (CAL MEN'S COLONY) | 6,341 | | 6,341 | 3,838 | 165.2 | 6,458 |
| CRC | (CAL REHAB CTR, MEN) | 3,666 | 552 | 4,218 | 2,491 | 169.3 | 4,408 |
| CAL | (CAL SP, CALIPATRIA) | 4,264 | | 4,264 | 2,308 | 184.7 | 4,218 |
| CEN | (CAL SP, CENTINELA) | 4,500 | | 4,500 | 2,308 | 195.0 | 4,508 |
| COR | (CAL SP, CORCORAN) | 5,340 | 1 | 5,341 | 3,116 | 171.4 | 5,352 |
| LAC | (CAL SP, LOS ANGELES CO) | 4,662 | | 4,662 | 2,400 | 194.3 | 4,790 |
| SAC | (CAL SP, SACRAMENTO) | 2,847 | 1 | 2,848 | 1,828 | 155.8 | 2,979 |
| SQ | (CAL SP, SAN QUENTIN) | 5,233 | 8 | 5,241 | 3,082 | 170.1 | 5,274 |
| SOL | (CAL SP, SOLANO) | 4,941 | | 4,941 | 2,610 | 189.3 | 5,040 |
| SATF | (CAL SATF AND SP - COR) | 6,868 | 3 | 6,871 | 3,424 | 200.7 | 7,009 |
| CVSP | (CHUCKAWALLA VALLEY SP) | 3,378 | | 3,378 | 1,738 | 194.4 | 3,593 |
| CTF | (CORRL TRAING FAC) | 5,515 | | 5,515 | 3,312 | 166.5 | 6,127 |
| DVI | (DEUEL VOCATL INSTITN) | 3,895 | 6 | 3,901 | 1,681 | 232.1 | 3,811 |
| FOL | (FOLSOM SP) | 4,144 | | 4,144 | 2,469 | 167.8 | 4,078 |
| HDP | (HIGH DESERT SP) | 4,453 | 13 | 4,466 | 2,324 | 192.2 | 4,486 |
| IRON | (IRONWOOD SP) | 4,044 | | 4,044 | 2,200 | 183.8 | 4,205 |
| KVSP | (KERN VALLEY SP) | 4,691 | | 4,691 | 2,448 | 191.6 | 4,825 |
| MCSP | (MULE CREEK SP) | 3,733 | | 3,733 | 1,700 | 219.6 | 3,812 |
| NKSP | (NORTH KERN SP) | 5,449 | 3 | 5,452 | 2,694 | 202.4 | 5,354 |
| PBSP | (PELICAN BAY SP) | 3,211 | | 3,211 | 2,380 | 134.9 | 3,407 |
| PVSP | (PLEASANT VALLEY SP) | 4,945 | | 4,945 | 2,308 | 214.3 | 4,922 |
| RIO | (RIO COSUMNES COR CTR-RC) | 466 | | 466 | 0 | - | 400 |
| RJD | (RJ DONOVAN CORR FACIL) | 4,755 | | 4,755 | 2,200 | 216.1 | 4,814 |
| SVSP | (SALINAS VAL SP) | 3,736 | | 3,736 | 2,388 | 156.4 | 3,981 |
| SRTA | (SANTA RITA CO. JAIL-RC) | 832 | | 832 | 0 | - | 750 |
| SCC | (SIERRA CONSERV CTR) | 5,637 | 1 | 5,638 | 3,736 | 150.9 | 5,621 |
| WSP | (WASCO SP) | 5,988 | 11 | 5,999 | 2,984 | 201.0 | 5,848 |
| **MALE TOTAL:** | | 142,405 | 623 | 143,028 | 78,826 | 181.4 | 146,918 |
| **FEMALE** | | | | | | | |
| CIW | (CAL INST FOR WOMEN) | 2,393 | 205 | 2,598 | 1,386 | 187.4 | 2,715 |
| CCWF | (CENT CAL WOMEN'S FACIL) | 3,911 | 4 | 3,915 | 2,004 | 195.4 | 3,966 |
| FRCC | (FRCCC BAKERSFIELD) | 77 | | 77 | 75 | 102.7 | 75 |
| RIO | (RIO COSUMNES COR CTR-RC) | 14 | | 14 | 0 | - | 0 |
| VSP | (VALLEY SP) | 3,811 | 18 | 3,829 | 1,980 | 193.4 | 3,902 |
| **FEMALE TOTAL:** | | 10,206 | 227 | 10,433 | 5,445 | 191.6 | 10,658 |
| **INSTITUTIONS/CAMPS TOTAL:** | | 152,611 | 850 | 153,461 | 84,271 | 182.1 | 157,576 |

#TPOP-1, Page 2

Data Analysis Unit                                      Department of Corrections and Rehabilitation
Estimates and Statistical Analysis Section                                    State of California
Offender Information Services Branch                                         September 8, 2009

MONTHLY REPORT OF POPULATION
NOTES
AS OF MIDNIGHT August 31, 2009

#1   Felon/Other counts are safekeepers, federal cases and inmates from
     other states, felons, county diagnostic cases and Youth Authority
     wards.

#2   Work Furlough in Custody are inmates in Work Furlough programs who
     are out-to-court, in jail, in hospitals, or escapees who have been
     taken into custody and are in jail.

#3   Cooperative Cases are parolees from other states being supervised in
     California.

#4   Non-CDC Jurisdiction are California cases being confined in or paroled
     to other states or jurisdictions.

#5   Welfare and Institution Code (W&IC) 1731.5(c) covers persons under the
     the age of 21 who were committed to CDCR, had
     their sentence amended, and were incarcerated at the California
     Youth Authority for housing and program participation.

#6   Other Population includes inmates temporarily out-to-court, inmates in
     hospitals, escapees, and parole and outpatient absconders.

Exhibit E

California Department of Corrections and Rehabilitation
Division of Correctional Policy Research and Internal Oversight
Office of Research
March 1, 2020

Monthly Report of Population
As of Midnight February 29, 2020

| Total CDCR Population | | | | | |
|---|---|---|---|---|---|
| Population | Felon/ Other | Change Since Last Month | Change Since Last Year | Design Capacity | Percent Occupied | Staffed Capacity |
| A. Total In-Custody/CRPP Supervision | 123,123 | −526 | −3,414 | | | |
| I.   In-State | 123,123 | −526 | −1,951 | | | |
| (Men, Subtotal) | 117,712 | −475 | −1,632 | | | |
| (Women, Subtotal) | 5,411 | −51 | −319 | | | |
| 1. Institution/Camps | 117,344 | −110 | +162 | 89,663 | 130.9 | 123,895 |
| Institutions | 114,308 | −157 | +652 | 85,083 | 134.3 | 119,661 |
| Camps(CCC, CIW, and SCC) | 3,036 | +47 | −490 | 4,580 | 66.3 | 4,234 |
| 2. In-State Contract Beds | 4,315 | −429 | −2,143 | | | |
| Private Community Correctional Facilities | 412 | −380 | −1,670 | | | |
| Public Community Correctional Facilities | 1,598 | −2 | −164 | | | |
| Community Prisoner Mother Program | 24 | 0 | +11 | | | |
| California City Correctional Facility | 2,113 | −27 | −287 | | | |
| Female Community ReEntry Facility, McFarland | 168 | −20 | −33 | | | |
| 3. Department of State Hospitals | 298 | −3 | +116 | | | |
| 4. CRPP Supervision | 1,166 | +16 | −86 | | | |
| Alternative Custody Program | 135 | +2 | −57 | | | |
| Custody to Community Treatment | | | | | | |
| Reentry Program | 384 | +15 | −8 | | | |
| Male Community Reentry Program | 620 | 0 | −24 | | | |
| Medical Parole | 27 | −1 | +3 | | | |
| B. Parole | 52,399 | +92 | +3,022 | | | |
| Community Supervision | 50,620 | +114 | +3,131 | | | |
| Interstate Cooperative Case | 1,779 | −22 | −109 | | | |
| C. Non-CDCR Jurisdiction | 1,077 | +96 | +41 | | | |
| Other State/Federal Institutions | 305 | −1 | −12 | | | |
| Out of State Parole | 736 | +94 | +65 | | | |
| Out of State Parolee at Large | 16 | +4 | +5 | | | |
| DJJ-W&IC 1731.5(c) Institutions | 20 | −1 | −17 | | | |
| D. Other Populations | 6,568 | −37 | +461 | | | |
| Temporary Release to Court and Hospital | 1,626 | +65 | +221 | | | |
| Escaped | 198 | −1 | −1 | | | |
| Parolee at Large | 4,744 | −101 | +241 | | | |
| Total CDCR Population | 183,167 | −375 | +110 | | | |

This report contains the latest available reliable population figures from SOMS.  They have been carefully
audited, but are preliminary, and therefore subject to revision.

California Department of Corrections and Rehabilitation
Division of Correctional Policy Research and Internal Oversight
Office of Research
March 1, 2020

Monthly Report of Population
As of Midnight February 29, 2020

Monthly Institution Population Detail

| Institutions | Felon/ Other | Design Capacity | Percent Occupied | Staffed Capacity |
|---|---|---|---|---|
| **Male Institutions** | | | | |
| Avenal State Prison (ASP) | 4,223 | 2,920 | 144.6 | 4,387 |
| Calipatria State Prison (CAL) | 2,977 | 2,308 | 129.0 | 3,451 |
| California Correctional Center (CCC) | 4,177 | 3,883 | 107.6 | 4,752 |
| California Correctional Institution (CCI) | 3,659 | 2,783 | 131.5 | 4,085 |
| Centinela State Prison (CEN) | 3,405 | 2,308 | 147.5 | 3,446 |
| California Health Care Facility - Stockton (CHCF) | 2,822 | 2,951 | 95.6 | 2,951 |
| California Institution for Men (CIM) | 3,552 | 2,976 | 119.4 | 4,226 |
| California Men's Colony (CMC) | 3,782 | 3,838 | 98.5 | 4,407 |
| California Medical Facility (CMF) | 2,485 | 2,361 | 105.3 | 2,861 |
| California State Prison, Corcoran (COR) | 2,915 | 3,116 | 93.5 | 4,476 |
| California Rehabilitation Center (CRC) | 3,937 | 2,491 | 158.0 | 3,084 |
| Correctional Training Facility (CTF) | 5,073 | 3,312 | 153.2 | 4,887 |
| Chuckawalla Valley State Prison (CVSP) | 2,904 | 1,738 | 167.1 | 2,578 |
| Deuel Vocational Institution (DVI) | 1,994 | 1,681 | 118.6 | 2,190 |
| Folsom State Prison (FOL) | 2,871 | 2,066 | 139.0 | 2,986 |
| High Desert State Prison (HDSP) | 3,255 | 2,324 | 140.1 | 3,461 |
| Ironwood State Prison (ISP) | 2,925 | 2,200 | 133.0 | 3,300 |
| Kern Valley State Prison (KVSP) | 3,512 | 2,448 | 143.5 | 3,622 |
| California State Prison, Los Angeles County (LAC) | 3,200 | 2,300 | 139.1 | 3,400 |
| Mule Creek State Prison (MCSP) | 4,003 | 3,284 | 121.9 | 4,105 |
| North Kern State Prison (NKSP) | 4,249 | 2,694 | 157.7 | 4,011 |
| Pelican Bay State Prison (PBSP) | 2,628 | 2,380 | 110.4 | 3,361 |
| Pleasant Valley State Prison (PVSP) | 3,203 | 2,308 | 138.8 | 3,433 |
| RJ Donovan Correctional Facility (RJD) | 3,893 | 2,992 | 130.1 | 4,038 |
| California State Prison, Sacramento (SAC) | 2,425 | 1,828 | 132.7 | 2,545 |
| California Substance Abuse Treatment Facility (SATF) | 5,297 | 3,424 | 154.7 | 5,111 |
| Sierra Conservation Center (SCC) | 4,326 | 3,836 | 112.8 | 4,570 |
| California State Prison, Solano (SOL) | 4,243 | 2,610 | 162.6 | 3,882 |
| San Quentin State Prison (SQ) | 4,051 | 3,082 | 131.4 | 3,984 |
| Salinas Valley State Prison (SVSP) | 2,957 | 2,452 | 120.6 | 3,509 |
| Valley State Prison (VSP) | 2,988 | 1,980 | 150.9 | 2,954 |
| Wasco State Prison (WSP) | 4,611 | 2,984 | 154.5 | 4,447 |
| **Male Total** | **112,542** | **85,858** | **131.1** | **118,500** |
| **Female Institutions** | | | | |
| Central California Women's Facility (CCWF) | 2,760 | 2,004 | 137.7 | 2,988 |
| California Institution for Women (CIW) | 1,635 | 1,398 | 117.0 | 1,877 |
| Folsom State Prison (FOL) | 407 | 403 | 101.0 | 530 |
| **Female Total** | **4,802** | **3,805** | **126.2** | **5,395** |
| **Institution Total** | **117,344** | **89,663** | **130.9** | **123,895** |

California Department of Corrections and Rehabilitation
Division of Correctional Policy Research and Internal Oversight
Office of Research
March 1, 2020

Monthly Report of Population
As of Midnight February 29, 2020

Notes

- Felon/Other counts are felons, county contract boarders, federal boarders, state boarders, safekeepers, county diagnostic cases, Department of Mental Health boarders, and Division of Juvenile Justice boarders.

- Interstate Cooperative Cases are parolees from other states being supervised in California.

- Non-CDCR Jurisdiction are California cases being confined in or paroled to other states or jurisdictions.

- Welfare and Institution Code (W&IC) 1731.5(c) covers persons under the age of 21 who were committed to CDCR, had their sentence amended, and were incarcerated at the Division of Juvenile Justice for housing and program participation.

- Other Population includes inmates temporarily out-to-court, inmates in hospitals, escapees, and parolees at large.

Exhibit F

California Department of Corrections and Rehabilitation
Division of Correctional Policy Research and Internal Oversight
Office of Research
July 8, 2020

Weekly Report of Population
As of Midnight July 8, 2020

| | Total CDCR Population | | | | | |
|---|---|---|---|---|---|---|
| Population | Felon/ Other | Change Since Last Week | Change Since Last Year | Design Capacity | Percent Occupied | Staffed Capacity |
| A. Total In-Custody/CRPP Supervision | 112,507 | -785 | -12,930 | | | |
| I.  In-State | 112,507 | -785 | -12,930 | | | |
|     (Men, Subtotal) | 107,846 | -736 | -11,883 | | | |
|     (Women, Subtotal) | 4,661 | -49 | -1,047 | | | |
| 1. Institution/Camps | 107,591 | -708 | -10,147 | 89,663 | 120.0 | 125,791 |
|    Institutions | 104,725 | -603 | -10,157 | 85,083 | 123.1 | 121,557 |
|    Camps(CCC, CIW, and SCC) | 2,866 | -105 | +10 | 4,580 | 62.6 | 4,234 |
| 2. In-State Contract Beds | 3,834 | -35 | -2,494 | | | |
|    Public Community Correctional Facilities | 1,487 | -15 | -243 | | | |
|    Community Prisoner Mother Program | 15 | 0 | -8 | | | |
|    California City Correctional Facility | 2,139 | -16 | -264 | | | |
|    Female Community ReEntry Facility, McFarland | 193 | -4 | -63 | | | |
| 3. Department of State Hospitals | 283 | 0 | +88 | | | |
| 4. CRPP Supervision | 799 | -42 | -377 | | | |
|    Alternative Custody Program | 95 | -14 | -68 | | | |
|    Custody to Community Treatment Reentry Program | 258 | -7 | -116 | | | |
|    Male Community Reentry Program | 416 | -23 | -199 | | | |
|    Medical Parole | 29 | +1 | +5 | | | |
|    State Community Custody Program | 1 | | | | | |
| B. Parole | 53,345 | -36 | +2,564 | | | |
|    Community Supervision | 51,727 | -41 | +2,806 | | | |
|    Interstate Cooperative Case | 1,618 | +5 | -242 | | | |
| C. Non-CDCR Jurisdiction | 1,080 | +4 | +4 | | | |
|    Other State/Federal Institutions | 305 | 0 | -15 | | | |
|    Out of State Parole | 720 | -7 | +6 | | | |
|    Out of State Parolee at Large | 15 | 0 | +1 | | | |
|    DJJ-W&IC 1731.5(c) Institutions | 17 | 0 | -11 | | | |
|    County Jail | 23 | +11 | | | | |
| D. Other Populations | 7,246 | +147 | +848 | | | |
|    Temporary Release to Court and Hospital | 1,720 | +46 | +197 | | | |
|    Escaped | 199 | 0 | 0 | | | |
|    Parolee at Large | 5,327 | +101 | +651 | | | |
| Total CDCR Population | 174,178 | -670 | -9,514 | | | |

This report contains the latest available reliable population figures from SOMS.  They have been carefully audited, but are preliminary, and therefore subject to revision.

```
California Department of Corrections and Rehabilitation
Division of Correctional Policy Research and Internal Oversight
Office of Research
July 8, 2020
```

                         Weekly Report of Population
                         As of Midnight July 8, 2020

---

                    Weekly Institution Population Detail

---

| Institutions | Felon/ Other | Design Capacity | Percent Occupied | Staffed Capacity |
|---|---|---|---|---|
| **Male Institutions** | | | | |
| Avenal State Prison (ASP) | 4,016 | 2,920 | 137.5 | 4,719 |
| Calipatria State Prison (CAL) | 3,097 | 2,308 | 134.2 | 3,451 |
| California Correctional Center (CCC) | 3,713 | 3,883 | 95.6 | 4,752 |
| California Correctional Institution (CCI) | 3,691 | 2,783 | 132.6 | 4,085 |
| Centinela State Prison (CEN) | 3,338 | 2,308 | 144.6 | 3,446 |
| California Health Care Facility - Stockton (CHCF) | 2,672 | 2,951 | 90.5 | 3,111 |
| California Institution for Men (CIM) | 2,928 | 2,976 | 98.4 | 4,350 |
| California Men's Colony (CMC) | 3,612 | 3,838 | 94.1 | 4,407 |
| California Medical Facility (CMF) | 2,331 | 2,361 | 98.7 | 2,981 |
| California State Prison, Corcoran (COR) | 3,563 | 3,116 | 114.3 | 4,476 |
| California Rehabilitation Center (CRC) | 3,066 | 2,491 | 123.1 | 3,262 |
| Correctional Training Facility (CTF) | 4,829 | 3,312 | 145.8 | 4,941 |
| Chuckawalla Valley State Prison (CVSP) | 2,190 | 1,738 | 126.0 | 2,578 |
| Deuel Vocational Institution (DVI) | 1,609 | 1,681 | 95.7 | 2,413 |
| Folsom State Prison (FOL) | 2,816 | 2,066 | 136.3 | 2,986 |
| High Desert State Prison (HDSP) | 3,555 | 2,324 | 153.0 | 3,461 |
| Ironwood State Prison (ISP) | 3,176 | 2,200 | 144.4 | 3,300 |
| Kern Valley State Prison (KVSP) | 3,681 | 2,448 | 150.4 | 3,622 |
| California State Prison, Los Angeles County (LAC) | 3,103 | 2,300 | 134.9 | 3,400 |
| Mule Creek State Prison (MCSP) | 3,979 | 3,284 | 121.2 | 4,207 |
| North Kern State Prison (NKSP) | 2,123 | 2,694 | 78.8 | 4,011 |
| Pelican Bay State Prison (PBSP) | 2,515 | 2,380 | 105.7 | 3,361 |
| Pleasant Valley State Prison (PVSP) | 3,165 | 2,308 | 137.1 | 3,535 |
| RJ Donovan Correctional Facility (RJD) | 3,792 | 2,992 | 126.7 | 4,038 |
| California State Prison, Sacramento (SAC) | 2,370 | 1,828 | 129.6 | 2,545 |
| California Substance Abuse Treatment Facility (SATF) | 4,808 | 3,424 | 140.4 | 5,111 |
| Sierra Conservation Center (SCC) | 4,085 | 3,836 | 106.5 | 4,570 |
| California State Prison, Solano (SOL) | 3,696 | 2,610 | 141.6 | 4,010 |
| San Quentin State Prison (SQ) | 3,392 | 3,082 | 110.1 | 4,357 |
| Salinas Valley State Prison (SVSP) | 2,888 | 2,452 | 117.8 | 3,509 |
| Valley State Prison (VSP) | 3,006 | 1,980 | 151.8 | 2,954 |
| Wasco State Prison (WSP) | 2,615 | 2,984 | 87.6 | 4,447 |
| **Male Total** | **103,420** | **85,858** | **120.5** | **120,396** |
| **Female Institutions** | | | | |
| Central California Women's Facility (CCWF) | 2,494 | 2,004 | 124.5 | 2,988 |
| California Institution for Women (CIW) | 1,460 | 1,398 | 104.4 | 1,877 |
| Folsom State Prison (FOL) | 217 | 403 | 53.8 | 530 |
| **Female Total** | **4,171** | **3,805** | **109.6** | **5,395** |
| **Institution Total** | **107,591** | **89,663** | **120.0** | **125,791** |

California Department of Corrections and Rehabilitation
Division of Correctional Policy Research and Internal Oversight
Office of Research
July 8, 2020

Weekly Report of Population
As of Midnight July 8, 2020

---

Notes

---

- Felon/Other counts are felons, county contract boarders, federal boarders, state boarders, safekeepers, county diagnostic cases, Department of Mental Health boarders, and Division of Juvenile Justice boarders.

- Interstate Cooperative Cases are parolees from other states being supervised in California.

- Non-CDCR Jurisdiction are California cases being confined in or paroled to other states or jurisdictions.

- Welfare and Institution Code (W&IC) 1731.5(c) covers persons under the age of 21 who were committed to CDCR, had their sentence amended, and were incarcerated at the Division of Juvenile Justice for housing and program participation.

- Other Population includes inmates temporarily out-to-court, inmates in hospitals, escapees, and parolees at large.

Exhibit G

OCTOBER 16, 2019

# Planning for a Declining Inmate Population

PRESENTED TO:

Assembly Budget Subcommittee No. 5 on Public Safety
Hon. Shirley N. Weber, Chair



LEGISLATIVE ANALYST'S OFFICE

# State Inmate Population Projected to Decline



- The state's inmate population is projected to decline by 6,800 inmates over the next few years—from about 125,100 inmates as of October 9, 2019 to 118,300 as of June 30, 2023. We note, however, that there is considerable uncertainty regarding the specific magnitude.

- The decline is primarily due to Proposition 57 (2016), which made certain nonviolent offenders eligible for parole consideration and expanded the California Department of Correction and Rehabilitation's (CDCR's) authority to reduce prison terms through credits.

- The above population projections reflect adjustments that we made to the administration's most recent inmate population projections to account for the last nine months of actual data and the estimated effects of certain sentencing changes. One such change is Chapter 590 of 2019 (SB 136, Wiener), which eliminates a one year sentence enhancement for prior offenses in certain cases.



# Court-Ordered Prison Population Cap

### State Required to Limit Prison Overcrowding

- The state is under a federal court order to limit the population of its 34 state-owned prisons to about 117,000 inmates, based on their current capacity.
- To ensure the state does not exceed this cap, CDCR keeps the population in the state-owned prisons below the cap by a couple thousand inmates to "buffer" against unexpected increases in the population.

### Inmates Housed Outside of State-Operated Prisons to Avoid Exceeding Population Cap

- CDCR is able to maintain compliance with the court order by housing inmates outside of the 34 state-owned prisons.
- As of October 9, 2019, CDCR housed about:
  - 1,400 male inmates and 270 female inmates in privately operated contract prisons.
  - 1,700 male inmates in publicly operated contract prisons.
  - 6,700 inmates in various other placements, such as state conservation camps.



# Accommodating the Projected Decline in the Inmate Population

## CDCR Required to Consider Various Criteria in Accommodating Population Declines

- As the inmate population declines, existing state law requires CDCR to first remove all male inmates housed in privately operated prisons.

- State law then authorizes CDCR to determine how to accommodate further population declines in the population, but specifies the various criteria that the department must use (such as cost and gender-specific housing needs).

## Closing State-Operated Prisons Would Likely Allow for Greatest Savings

- After removing male inmates from privately operated prisons, we project that the state would need to accommodate a remaining reduction of 5,500 inmates by June 2023

- This decline could be accommodated in various ways. The three main ways are:

  — *Closing State-Operated Prisons.* The state could close both a small- and medium-sized prison yielding total operational savings of around a few hundred million dollars annually. In addition, this could also eliminate the need for costly infrastructure improvements that would otherwise have been made to these prisons.

  — *Eliminating Remaining Contract Prison Beds.* The state could remove the nearly 2,000 remaining inmates from contract prison beds (270 privately operated female beds and 1,700 publicly operated male beds). We note that, given the size of the population decline, the state could eliminate all such beds, as well as close a medium-sized prison. We estimate that such actions could yield total operational savings of a couple hundred million dollars annually.

  — *Allowing Population of State-Operated Prisons to Decline Without Closures.* We estimate that this approach could yield total operational savings in the several tens of millions of dollars annually.

# Options to Accelerate Elimination of Contracts and/or Prison Closure

- To the extent that the state is interested in closing state-operated prisons or eliminating contract prison beds, it could take steps to accelerate the timing of such actions. Below, we discuss some of the options available to achieve this. The impacts of these options may vary significantly in their magnitude and timing and could be subject to implementation challenges.

### Make Further Reductions to the Overall Inmate Population

- Require the Board of Parole Hearings to initiate release consideration for certain nonviolent offenders 60 days earlier than they do now to expedite releases, as we have previously recommended.

- Expand access to minimum custody placements, allowing some inmates to earn more credits, such as by admitting inmates with minor felony detainers, as we have previously recommended.

- Enact sentencing changes, such as expanding eligibility for the youth offender or elderly parole processes. For example, elderly inmates are generally considered for release if they have served more than 25 years in prison and reach 60 years old. Reducing the time served or age eligibility requirements could increase releases.

- Increase credit earning rates and recommend inmates to the courts for resentencing.

### Increase the Number of Inmates in Placements Not Subject to the Population Limit

- Increase the conservation camp population by expanding inmate eligibility (such as by allowing inmates with minor felony detainers into camps) or providing greater participation incentives (such as better pay), as we have previously recommended.

- Allow more inmates to serve the last portion of their sentence outside of prison through the Alternative Custody Program, such as by admitting inmates with more than 12 months left to serve.



## Options to Accelerate Elimination of Contracts and/or Prison Closure

*(Continued)*

### Operate 34 Prisons With a Smaller Buffer

- ■ CDCR could house more inmates in state-owned prisons by reducing the roughly 2,000 inmate buffer against the cap. For example, CDCR could shift 500 inmates from contract beds to state-owned prisons without exceeding the cap. However, the state may want to take additional actions to mitigate the increased risk of violating the court order.



Exhibit H

**DIVISION OF CORRECTIONAL HEALTH CARE SERVICES**
**MENTAL HEALTH PROGRAM**

P.O. Box 942883
Sacramento, CA 94283-0001



September 30, 2009

|  | Via: | Debbie Vorous, Esq. |

Matthew A. Lopes, Jr., Esq.                  Via:    Debbie Vorous, Esq.
Office of the Special Master                          Jeff Steele, Esq.
Pannone Lopes & Devereaux LLC                        Deputy Attorney General
317 Iron Horse Way, Suite 301                        Department of Justice
Providence, RI  02908                                1300 "I" Street, Suite 125
                                                     P. O. Box 944255
                                                     Sacramento, CA  94244-2550

## RE:  COLEMAN MONTHLY REPORT OF INFORMATION REQUESTED AND RESPONSE TO JANUARY 19, 1999, COURT ORDER REGARDING STAFF VACANCIES

Dear Mr. Lopes:

Enclosed is the Coleman Monthly Report reflective of August 2009 data (or as otherwise noted). The following is the list of enclosures:

1. Mental Health Services Delivery System (MHSDS) Staffing Allocation and Vacancy History. **(Pending - to be posted next week)**
2. MHSDS Hiring Activity Report. **(Pending - to be posted next week)**
3. Health Care Placement Oversight Program (HCPOP) Information Report, Summary and Administrative Segregation Greater than 60 Days.
4. Mental Health Contract Services including Summary and Telemedicine Monthly Report for all disciplines.
5. California Department of Corrections and Rehabilitation (CDCR) Reception Center (RC) Monthly Report.
6. Monthly Summary of Mental Health Crisis Bed use by Institution Titles Inpatient Psychiatric Aging Report.
7. Referrals for Transfer to the Department of Mental Health (including admissions).
8. Atascadero State Hospital (ASH) Discharges.
9. Weekly Enhanced Outpatient Program (EOP)/Outpatient Psychiatric Program.
10. The DMH Monthly Report of CDCR Patients in DMH Hospitals--Summary and Penal Code 2684.
11. Suicide Report.
12. Statistics on Contracted Registered Nurse (RN). **(No Longer Available)**
13. RC Processing for MHSDS Inmate Patients.
14. Medical Technical Assistant (MTA) Vacancy Report.
15. Allocated Case Manager Positions and Vacancies for the EOP Administrative Segregated Hub institutions.

Matthew A. Lopes, Jr., Esq.
Page 2

16. EOP Inmates Waiting Transfer to a Psychiatric Services Unit (PSU).
17. Audit reports on Psychiatric Technician Rounds in Administrative Segregation at California State Prison-San Quentin (SQ), California State Prison-Corcoran (COR), and Salinas Valley State Prison (SVSP
18. Mental Health Crisis Beds Wait List.
19. Correctional Treatment Centers and CDCR General Acute Care Hospital Care Placement Issues. **(No longer available)**
20. Transferred and Rescinded Mental Health Crisis Bed Referrals by Institution and Level of Care.

If you have any questions, please contact me at (916) 324-2933.

Sincerely,

DENNIS BEATY
Deputy Director, Program Services
Mental Health Program
Division of Correctional Health Care Services

Enclosures

cc:  Sharon Aungst, Chief Deputy Secretary, Correctional Health Care Services
     Marion Chiurazzi, Psy.D, Deputy Director, Clinical Services, Statewide Mental Health Program, DCHCS
     Mohamedu F., Jones, Esq., *Coleman* Deputy Special Master
     Linda Buffardi, Esq., *Coleman* Deputy Special Master
     Jeffrey L. Metzner, M.D., *Coleman* Expert
     Dennis F. Koson, M.D., *Coleman* Expert
     Kerry C. Hughes, M.D., *Coleman* Expert
     Melissa G. Warren, Ph.D., *Coleman* Expert
     Raymond F. Patterson, M.D, *Coleman* Expert
     Pal Nicoll, MPA, *Coleman* Monitor
     Ted Ruggles, Ph.D., *Coleman* Expert
     Mary Perrien, Ph.D., *Coleman* Expert
     Mary-Joy Spencer, Esq., *Coleman* Monitor
     Yong Joo Erwin, LCSW, *Coleman* Expert
     Kathryn A. Burns, M.D., MPH, *Coleman* Expert
     Henry A. Dlugacz, Esq., *Coleman* Expert

Page 3

Kerry F. Walsh, Esq., *Coleman* Monitor
Angela Shannon, M.D., *Coleman* Expert
Patricia Williams, Esq., *Coleman* Monitor
Haunani Henry, *Coleman* Monitor
J. Ronald Metz, *Coleman* Monitor
William Alvarez, Ph.D., *Coleman* Monitor
Jeff Steele, Esq., Office of the Attorney General
Debbie Vorous, Esq., Office of the Attorney General
Michael Stone, Esq., Office of Legal Affairs
Michael Bien, Esq., Rosen, Bien and Galvan
Donald Specter, Esq., Prison Law Office
Karen Higgins, M.D., Deputy Director (A), Psychiatry Services, DCHCS
Judy Burleson, Coleman Compliance Manager, DCHCS
Mary Neade, Correctional Counselor II, Division of Adult Institutions
Sharon Riegel, HPS II, DCHCS

# Mental Health Population  -  Placement Per Institution

*Grouped by: Ad-Seg, GP, RC, and SHU*
DDPS Download Date: August 28, 2009

CONFIDENTIAL

## SUMMARY
**Mental Health Population - Combined Placement Per Institution**

| Institution | CCCMS Capacity | CCCMS Current Pop | CCCMS % of Capacity | EOP Capacity | EOP Current Pop | EOP % of Capacity | MHCB Capacity | Total MH Pop |
|---|---|---|---|---|---|---|---|---|
| **ASP** | 1099 | 1371 | 125% | | 16 | | | 1387 |
| **CAL** | | 33 | | | 1 | | | 34 |
| **CCC** | | 1 | | | | | | 1 |
| **CCI** | 1349 | 1184 | 88% | | 58 | | | 1242 |
| **CCWF** | 899 | 1184 | 132% | 54 | 55 | 102% | 12 | 1239 |
| **CEN** | | 27 | | | | | | 27 |
| **CIM** | 999 | 1085 | 109% | | 189 | | 34 | 1274 |
| **CIW** | 499 | 688 | 138% | 85 | 109 | 128% | 10 | 797 |
| **CMC** | 1099 | 1210 | 110% | 634 | 539 | 85% | 36 | 1749 |
| **CMF** | 599 | 620 | 104% | 591 | 544 | 92% | 70 | 1164 |
| **COR** | 949 | 1235 | 130% | 204 | 202 | 99% | 23 | 1437 |
| **CRC-M** | 848 | 1042 | 123% | | | | | 1042 |
| **CTF** | 745 | 952 | 128% | | 8 | | | 960 |
| **CVSP** | | 16 | | | 2 | | | 18 |
| **DVI** | 649 | 642 | 99% | | 55 | | | 697 |
| **FOL** | 599 | 751 | 125% | | 3 | | | 754 |
| **HDSP** | 699 | 909 | 130% | | 17 | | 10 | 926 |
| **ISP** | | 20 | | | 2 | | | 22 |
| **KVSP** | 1000 | 1221 | 122% | 96 | 110 | 115% | 12 | 1331 |
| **LAC** | 1149 | 1184 | 103% | 354 | 411 | 116% | 12 | 1595 |
| **MCSP** | 1149 | 1340 | 117% | 546 | 525 | 96% | 8 | 1865 |
| **NKSP** | 799 | 928 | 116% | | 73 | | 10 | 1001 |
| **PBSP** | 349 | 347 | 99% | 66 | 73 | 111% | 10 | 420 |
| **PVSP** | 1499 | 1734 | 116% | | 6 | | 6 | 1740 |
| **RJD** | 1199 | 1354 | 113% | 393 | 414 | 105% | 14 | 1768 |
| **SAC** | 849 | 827 | 97% | 458 | 442 | 97% | 24 | 1269 |
| **SATF** | 1199 | 1531 | 128% | | 15 | | 20 | 1546 |
| **SCC** | 499 | 611 | 122% | | 16 | | | 627 |
| **SOL** | 1199 | 1490 | 124% | | 6 | | 9 | 1496 |
| **SQ** | 899 | 1155 | 128% | 36 | 124 | 344% | | 1279 |
| **SVSP** | 999 | 1099 | 110% | 237 | 241 | 102% | 10 | 1340 |
| **VSPW** | 849 | 1103 | 130% | 9 | 24 | 267% | | 1127 |
| **WSP** | 1049 | 1180 | 112% | | 110 | | 6 | 1290 |
| **TOTAL** | 25718 | 30074 | 117% | 3763 | 4390 | 117% | 336 | 34464 |

| Group<br>Institution(1) | CCCMS | | | EOP (2) | | | MHCB | Total<br>MH Pop | Comments |
|---|---|---|---|---|---|---|---|---|---|
| | Capacity | Current<br>Pop | % of<br>Capacity | Capacity | Current<br>Pop | % of<br>Capacity | Capacity | | |
| **Administrative Segregation Unit (Ad–Seg, ASU)** | | | | | | | | | |
| ASP Ad–Seg | | 38 | | | 1 | | | 39 | |
| CAL Ad–Seg | | 5 | | | | | | 5 | |
| CCI Ad–Seg | | 86 | | | 10 | | | 96 | |
| CCWF Ad–Seg | | 20 | | | 3 | | | 23 | |
| CEN Ad–Seg | | 6 | | | | | | 6 | |
| CIW Ad–Seg | | 14 | | 10 | 7 | 70% | | 21 | *ASU-EOP Hub* |
| CMC Ad–Seg | | 46 | | 54 | 49 | 91% | | 95 | *ASU-EOP Hub* |
| CMF Ad–Seg | | 15 | | 58 | 48 | 83% | | 63 | *ASU-EOP Hub (currently accommodates own population)* |
| COR Ad–Seg | | 87 | | 54 | 54 | 100% | | 141 | *ASU-EOP Hub* |
| CTF Ad–Seg | | 39 | | | | | | 39 | |
| DVI Ad–Seg | | 46 | | | 14 | | | 60 | |
| FOL Ad–Seg | | 44 | | | 1 | | | 45 | |
| HDSP Ad–Seg | | 96 | | | 8 | | | 104 | |
| ISP Ad–Seg | | 4 | | | | | | 4 | |
| KVSP Ad–Seg | | 88 | | | 5 | | | 93 | |
| LAC Ad–Seg | | 179 | | 54 | 63 | 117% | | 242 | *ASU-EOP Hub* |
| MCSP Ad–Seg | | 59 | | 36 | 26 | 72% | | 85 | *ASU-EOP Hub* |
| PBSP Ad–Seg | | 55 | | | | | | 55 | |
| PVSP Ad–Seg | | 136 | | | 2 | | | 138 | |
| RJD Ad–Seg | | 91 | | 63 | 51 | 81% | | 142 | *ASU-EOP Hub* |
| SAC Ad–Seg | | 70 | | 74 | 62 | 84% | | 132 | *ASU-EOP Hub* |
| SATF Ad–Seg | | 95 | | | 6 | | | 101 | |
| SCC Ad–Seg | | 33 | | | 4 | | | 37 | |
| SOL Ad–Seg | | 63 | | | | | | 63 | |
| SQ Ad–Seg | | 62 | | 36 | 18 | 50% | | 80 | *ASU-EOP Hub (currently accommodates own population)* |
| SVSP Ad–Seg | | 180 | | 45 | 58 | 129% | | 238 | *ASU-EOP Hub* |
| VSPW Ad–Seg | | 27 | | 9 | 4 | 44% | | 31 | *ASU-EOP Hub* |
| WSP Ad–Seg | | 32 | | | 20 | | | 52 | |
| **Group Total for Ad–Seg** | | **1,716** | | **493** | **514** | **104%** | | **2,230** | |

| Group / Institution[1] | | CCCMS | | | EOP [2] | | | MHCB | Total MH Pop | Comments |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Capacity | Current Pop | % of Capacity | Capacity | Current Pop | % of Capacity | Capacity | | |
| **General Population (GP)** | | | | | | | | | | |
| ASP | II | 1,099 | 1,333 | 121% | | 15 | | | 1,348 | |
| CAL | I,IV + | | 28 | | | 1 | | | 29 | |
| CCC | I,II,III | | 1 | | | | | | 1 | |
| CCI | I,II,III,IV * | 1,053 | 750 | 71% | | 11 | | | 761 | |
| CCWF | | 745 | 994 | 133% | 54 | 52 | 96% | 12 | 1,046 | |
| CEN | III | | 21 | | | | | | 21 | |
| CIM | I | 366 | 478 | 131% | | 26 | | 34 | 504 | |
| CIW | | 367 | 523 | 143% | 75 | 102 | 136% | 10 | 625 | |
| CMC | I,II,III | 1,099 | 1,164 | 106% | 580 | 490 | 84% | 36 | 1,654 | *Court ordered temporary MHCB cap of 36, beginning 8/2/06.* |
| CMF | I,II,III | 599 | 605 | 101% | 533 | 496 | 93% | 70 | 1,101 | *20 of the MHCBs are temporary (licensed as acute).* |
| COR | I,II,IV + * | 499 | 702 | 141% | 150 | 147 | 98% | 23 | 849 | |
| CRC-M | II | 848 | 1,042 | 123% | | | | | 1,042 | |
| CTF | I,II | 745 | 913 | 123% | | 8 | | | 921 | |
| CVSP | I,II | | 16 | | | 2 | | | 18 | |
| DVI | I,II | 85 | 79 | 93% | | 6 | | | 85 | |
| FOL | III | 599 | 707 | 118% | | 2 | | | 709 | |
| HDSP | I,III,IV * | 608 | 698 | 115% | | 4 | | 10 | 702 | |
| ISP | I,III | | 16 | | | 2 | | | 18 | |
| KVSP | I,IV | 1,000 | 1,133 | 113% | 96 | 105 | 109% | 12 | 1,238 | *SNY EOP* |
| LAC | I,III,IV + | 1,000 | 740 | 74% | 300 | 267 | 89% | 12 | 1,007 | |
| MCSP | I,II,III,IV + | 1,149 | 1,281 | 111% | 510 | 499 | 98% | 8 | 1,780 | *SNY EOP* |
| NKSP | I,III | 80 | 111 | 139% | | 1 | | 10 | 112 | |
| PBSP | I,IV * | 349 | 277 | 79% | 66 | 73 | 111% | 10 | 350 | |
| PVSP | I,III | 1,499 | 1,598 | 107% | | 4 | | 6 | 1,602 | |
| RJD | I,III | 800 | 806 | 101% | 330 | 285 | 86% | 14 | 1,091 | |
| SAC | I,IV | 849 | 728 | 86% | 384 | 380 | 99% | 24 | 1,108 | |
| SATF | II,III,IV * | 1,199 | 1,436 | 120% | | 9 | | 20 | 1,445 | |
| SCC | I,II,III | 499 | 578 | 116% | | 12 | | | 590 | |
| SOL | II,III | 1,199 | 1,427 | 119% | | 6 | | 9 | 1,433 | |
| SQ | I,II | 350 | 575 | 164% | | 65 | | | 640 | |
| SVSP | I,IV * | 999 | 919 | 92% | 192 | 183 | 95% | 10 | 1,102 | |

| Group / Institution[1] | CCCMS | | | EOP [2] | | | MHCB | Total MH Pop | Comments |
|---|---|---|---|---|---|---|---|---|---|
| | Capacity | Current Pop | % of Capacity | Capacity | Current Pop | % of Capacity | Capacity | | |
| VSPW | 687 | 890 | 130% | | 5 | | | 895 | |
| WSP  I,III | 105 | 69 | 66% | | | | 6 | 69 | |
| **Group Total for GP** | 20,476 | 22,638 | 111% | 3,270 | 3,258 | 100% | 336 | 25,896 | |

| Reception Center (RC) | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| CCI-RC | 166 | 203 | 122% | | 29 | | | 232 | |
| CCWF-RC | 154 | 170 | 110% | | | | | 170 | |
| CIM-RC | 633 | 607 | 96% | | 163 | | | 770 | |
| CIW-RC | 132 | 151 | 114% | | | | | 151 | |
| DVI-RC | 564 | 517 | 92% | | 35 | | | 552 | |
| HDSP-RC | 91 | 115 | 126% | | 5 | | | 120 | |
| LAC-RC | 149 | 265 | 178% | | 81 | | | 346 | |
| NKSP-RC | 719 | 817 | 114% | | 72 | | | 889 | |
| RJD-RC | 399 | 457 | 115% | | 78 | | | 535 | |
| SQ-RC | 549 | 518 | 94% | | 41 | | | 559 | |
| VSPW-RC | 162 | 157 | 97% | | 13 | | | 170 | |
| WSP-RC | 944 | 1,079 | 114% | | 90 | | | 1,169 | |
| **Group Total for RC** | 4,662 | 5,056 | 108% | | 607 | | | 5,663 | |

| Security Housing Unit (SHU) | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| CCI-SHU | 130 | 145 | 112% | | 8 | | | 153 | |
| COR-SHU | 450 | 446 | 99% | | 1 | | | 447 | |
| PBSP SHU | | 15 | | | | | | 15 | |
| SAC SHU | | 29 | | | | | | 29 | |
| VSPW SHU | | 29 | | | 2 | | | 31 | |
| **Group Total for SHU** | 580 | 664 | 114% | | 11 | | | 675 | |

| Group<br>Institution[1] | CCCMS | | | EOP [2] | | | MHCB | Total<br>MH Pop | Comments |
|---|---|---|---|---|---|---|---|---|---|
| | Capacity | Current Pop | % of Capacity | Capacity | Current Pop | % of Capacity | Capacity | | |
| **GRAND TOTALS** | 25,718 | 30,074 | 116.9% | 3,763 | 4,390 | 116.7% | 336 | 34,464 | |

| | PSU [2] | | | | DMH | | | | GRAND TOTALS | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | Capacity | Current Pop | % of Capacity | | Capacity | Current Pop | % of Capacity | | *(Without MHCB data)* | | |
| | | | | | | | | | Total MH Capacity | Total MH Population | Percent of Total MH |
| **CIW** | 10 | 6 | 60.0% | **ASH-ICF** | 256 | 170 | 66.4% | | 30,701 | 35,485 | 115.6% |
| **PBSP** | 128 | 116 | 90.6% | **CSH-ICF** | 50 | 50 | 100.0% | | | | |
| **SAC** | 256 | 230 | 89.8% | **CMF-APP** [3] | 162 | 127 | 78.4% | | | | |
| **Total PSU** | 394 | 352 | 89.3% | **CMF-ICF** | 84 | 67 | 79.8% | | | | |
| | | | | **CMF-ICF-H** [4] | 30 | 26 | 86.7% | | | | |
| | | | | **SVPP-ICF-H** | 244 | 229 | 93.9% | | | | |
| | | | | **Totals DMH** | 826 | 669 | 81.0% | | | | |

**Report Footnotes**

(1) " + " is a 270 Design Facility.  " * " is a 180 Design Facility.

(2) EOP, ASU-EOP, and PSU may not reflect actual program vacancies because beds can be held vacant for inmate-patients temporarily housed in MHCB and OHU.

(3) CMF-APP cap has been temporarily reduced from 166 to 162.  There is a Suicide Proofing Project currently underway.  This project began on 4/20/09 and is expected to continue through 2010.  During this period, four beds will be down at a time.

(4) Pursuant to the 6/17/09 Coleman court order, 36 high custody ICF beds at CMF converted to APP beds.  The CMF APP capacity  increased by 36 as patient admissions began 8/21/09.