1  XAVIER BECERRA, State Bar No. 118517
   Attorney General of California
2  ADRIANO HRVATIN, State Bar No. 220909
   Supervising Deputy Attorney General
3  ELISE OWENS THORN, State Bar No. 145931
   TYLER V. HEATH, State Bar No. 271478
4  KYLE A. LEWIS, State Bar No. 201041
   LUCAS HENNES, State Bar No. 278361
5  Deputy Attorneys General
     1300 I Street, Suite 125
6    P.O. Box 944255
     Sacramento, CA 94244-2550
7    Telephone: (916) 210-7318
     Fax: (916) 324-5205
8    E-mail: Elise.Thorn@doj.ca.gov
   *Attorneys for Defendants*

   ROMAN M. SILBERFELD, State Bar No. 62783
   GLENN A. DANAS, State Bar No. 270317
   ROBINS KAPLAN LLP
     2049 Century Park East, Suite 3400
     Los Angeles, CA 90067-3208
     Telephone: (310) 552-0130
     Fax: (310) 229-5800
     E-mail: RSilberfeld@RobinsKaplan.com
   *Special Counsel for Defendants*

9

10              IN THE UNITED STATES DISTRICT COURT

11            FOR THE EASTERN DISTRICT OF CALIFORNIA

12                    SACRAMENTO DIVISION

13

| | |
|---|---|
| 14 **RALPH COLEMAN, et al.,**<br><br>15                                   Plaintiffs,<br><br>16        v.<br><br>17<br>18 **GAVIN NEWSOM, et al.,**<br><br>19                                  Defendants. | Case No. 2:90-cv-00520 KJM-DB (PC)<br><br>**E. THORN DECLARATION SUPPORTING DEFENDANTS' RESPONSE TO JULY 2 ORDER**<br><br>Judge:  The Hon. Kimberly J. Mueller |

20

21        I, Elise Owens Thorn, declare as follows:

22        1.      I am a Deputy Attorney General with the California Office of the Attorney General,

23  attorney of record for Defendants in this case, and I am admitted to practice before the courts of

24  the State of California and before this Court.  I am competent to testify to the matters set forth in

25  this declaration, and if called upon by this Court, would do so.  I submit this declaration in

26  support of Defendants' Response to July 2 Order.

27

28

[3419376.1]                                          1

2.    The Attorney General's Office is counsel of record for Defendants in *Plata v. Newsom*, Case No. 01-cv-01351-JST.  In that capacity, my office receives reports prepared by the *Plata* Court Experts.

3.    Attached as Exhibit D is a true and correct copy of the Plata Court Experts' Salinas Valley State Prison Report, dated April 13, 2017.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed in Sacramento, California on July 15, 2020.


*/s/ Elise Owens Thorn*
Elise Owens Thorn

[3419376.1]                2

Thorn Decl. Supp. Defs. Resp. July 2 Order (2:90-cv-00520 KJM-DB (PC))

# Exhibit D

**Plata Court Experts**
**Salinas Valley State Prison (SVSP) Report**
**April 13, 2017**

## Executive Summary

In February 2017, Judge Thelton Henderson asked the court experts to review the severity of problems at SVSP and the extent to which these problems may be related to staffing deficiencies.

Medical care has been inadequate at SVSP for well over four years as evidenced by two court expert reviews and one OIG inspection. High vacancy rates in physician, nursing and ancillary staffing is the major, but not only factor, contributing to problems at SVSP.  Other factors include:

- Turnover in health care leadership;
- Breakdown in health care systems;
- High percentage (50%) of mental health patients;
- Total inmate population above design capacity (138%);
- Access to care issues related to custody;
- Inability to terminate poorly performing staff after exhausting the disciplinary process.

CCHCS headquarters has increased access to medical providers through telemedicine and registry staff. This support is insufficient to resolve the systemic problems in the SVSP health care program. Furthermore, CCHCS Regional support to SVSP has been limited.

Although the causes of health care issues at SVSP are multifactorial, adequate care cannot be provided until there are adequate staffing levels and this must be a priority. However, to resolve the persistent issues at SVSP, a comprehensive strategy is required by the Receiver, CDCR and CCHCS, including:

- Retaining qualified health care leadership;
- Increasing staff salaries to market rates;
- Reducing SVSP population to design capacity;
- Reducing the mental health population to lower the mental health/medical acuity of the prison;
- Reassessing the custody Access to Care program;
- Fixing systemic deficiencies by greater sustained on-site presence of CCHCS Headquarters and Regional teams to assist local leadership in instituting improvements;

The Receivership should determine whether any measures needed to resolve systemic issues require waivers of state law and/or regulations.  Findings that support our opinions are described below.

## Previous Court Expert and OIG Inspection Findings

As background for this report, we note that in June 2013 the court experts conducted a site visit at SVSP and published the results of our review in August 2013. At that time we observed numerous systemic issues related to health care systems and quality of care.  In November 2016 the OIG assigned SVSP an

overall rating of inadequate.  The OIG report found no area of service proficient and six of twelve primary quality indicators inadequate (50%). SVSP also failed two secondary quality indicators.[1] The list of issues identified by the OIG included the following:

1. A "profound inability to provide patients with adequate access to care".
2. Unstable health care leadership.
3. Significant provider staffing shortages due to inability to hire and retain staff.
4. Severe provider appointment backlogs.
5. Failure to retrieve and/or scan specialty reports and hospital discharge summaries into the eUHR.
6. Failure to scan clinical notes into the eUHR.
7. Failure of providers to follow up after specialty visits and failure to review specialty reports.
8. Failure of providers to review radiology reports.
9. Delayed and missed registered nurse visits.
10. Inconsistent quality of nursing care.
11. Lack of reliable communication of provider orders including medication and nursing orders.
12. Inadequate medication management process.
13. Failure to receive ordered medications.
14. Almost 40% of physician clinical events reviewed were considered deficiencies.
15. Almost 8% of physician clinical events reviewed were of a magnitude that if unaddressed would likely harm the patient.
16. Almost 10% of access to care events were considered significant enough to place the patient at risk of harm.  These were related mostly to timely scheduling of physician appointments.
17. 25% of diagnostic tests evaluated had deficiencies with 14% related to medical records and 8% of tests not being done.


## Court Expert Review

To perform this review, the court experts conducted interviews with Clark Kelso and CCHCS leadership[2], SVSP health care leadership[3], and reviewed 50 health records. Our review showed several factors contributing to the persistent systemic issues at SVSP and are described below.

### Health Care Leadership Turnover

Qualified leadership and supervision are key components to an adequate health program.  SVSP has had significant turnover in health care leadership over a period of years.  The lack of competent and stable leadership has been a major factor in the ongoing problems at this facility.

Over the past 3 years there have been six different Chief Executive Officers (CEO). The Chief Medical Executive (CME) has been in her position for one year and was in an acting position for one year. Prior to her arrival, there had been multiple CMEs.  SVSP has also had 4 Chief Nursing Executives (CNEs) in the past year and 7 (50%) of 14 Supervising Registered Nurse (SRN) positions are vacant.

---

[1] The two secondary quality indicators are: 1) Internal Monitoring, Quality Improvement, and Administrative Operations and 2) Job Performance, Training, Licensing and Certifications.

[2] Rich Kirkland, Deputy Receiver, Steve Tharratt MD, Statewide Chief Medical Executive.

[3] We spoke with Brittany Brizendine, Dr. Kumar CME, Alex Newton CNE, Patrick McMahon, previous Acting CNE,

With respect to leadership SVSP seems now to have an engaged CEO, CME, and CNE.  Following our interviews with health care leadership, we are encouraged that the new leadership team is committed to fixing defective processes.  However, retaining SVSP leadership requires support by regional and headquarter leadership staff to ensure the local leadership has the staff and resources necessary to accomplish their mission.  Key to their success is the ability to hire and retain qualified staff which continues to be problematic.

As an example, the Chief Medical Executive (CME) indicated that she was unable to find qualified Chief Physician & Surgeon candidates for the position. She ultimately hired an in-house candidate who is not adequately performing the duties of the position, including supervision of other providers. The CME also reported spending an inordinate amount of time (25-30%) performing 100% record review for a physician with long-standing performance issues that resulted in actual harm or risk of harm to patients.[4]  A physician whose performance does not improve after prolonged counseling, training and peer review should not be permitted to practice in CDCR. This reflects a failure of the peer review and disciplinary process.

### Staffing Recruitment Challenges

SVSP is located in a geographic area that has a high cost of living.  This, in combination with leadership turnover and challenging patient population has resulted in difficulty with staff recruitment and retention.

Medical provider vacancy rates have increased from 18% in 2013 to 31% in March 2017.  The CME reported that SVSP was allocated 11.5 FTE[5] medical provider positions with 9.3 FTE's filled and 2.2 vacant.  This is misleading because only 2.0 FTE's (17%) are filled by on-site state employees. This includes a nurse practitioner and physician who is assigned to the Correctional Treatment Center (CTC). The remaining 7.3 FTE's are backfilled by 3 remote telemedicine providers and 4.3 FTE providers that are part- or full-time registry.  Thus, almost 50% of medical providers are registry. According to management, this group frequently changes their hours and commitment.  There are insufficient numbers of providers to attend morning huddles in each of the housing unit clinics.  Lack of stable medical providers likely contributes to lack of adherence to policy and procedures, poor communication and fragmentation of care.

Health care leadership reported that a 1200 provider appointment backlog has been recently reduced to 600 but this is still a large backlog.   The facility has initiated a form of rationing because of the staffing deficiencies.  The CME has initiated a "high risk" clinic which is meant to ensure that those with the highest priority problems are seen before other less complicated problems are addressed.  This means that those with less serious problems are not seen timely.  This is not something that SVSP leadership desires or would continue if staffing were adequate.  Over time these types of accommodations are likely to result in harm to patients.

We note that many nursing and ancillary support classifications have high vacancy rates.  The table below shows functional vacancy rates for a variety of support and clinical positions.

---

[4] The physician died in January 2017.
[5] FTE=Full Time Equivalent.

| Key Positions as of 3/24/17 | | | | | | |
|---|---|---|---|---|---|---|
| Classification | PY Allocation | Filled | Vacant | Long Term Medical Leave | Functional Vacancy PY | Functional Vacancy % |
| OT[6] | 22 | 18 | 1 | 3 | 4 | 18% |
| OA[7] | 9 | 5 | 4 | | 4 | 44% |
| HRT[8] I | 5.5 | 5 | 0.5 | | 0.5 | 9% |
| LVN[9] | 61.9 | 39 | 22.9 | 7 | 29.7 | 48% |
| RN[10] | 55.2 | 43.7 | 11.5 | 8 | 19.5 | 35% |
| SRN[11] II | 14.3 | 7 | 7.3 | 1 | 8.3 | 58% |
| PROVIDERS[12] | 11.5 | 9.3 | 2.2 | | 2.2 | 19% |

Health care is a complex process involving coordination of care between different members of a health care team. High vacancies in any category of staff can lead to inefficiency, poorly coordinated care and serious medical errors. Nursing and ancillary staff (OT, HRT) are critical for provider support and efficiency. We were told that provider productivity, despite large backlogs, was recently 6-7 patients per day versus a statewide expectation of 12 patients per day.  This low productivity can be associated with insufficient nursing and support staff as well as provider-specific performance issues. The OIG noted that medical providers at times have to search for reports; laboratory tests are not done; medical documents are not filed in the eUHR; and orders for medications and nursing assignments are miscommunicated. This was evident on our record reviews as well.  SVSP leadership believes these types of errors affect the morale of the providers and contribute to staffing deficiencies.

Nurse staffing is inadequate.  According to nurse leadership, 15 of 55 RN positions are vacant, 26 of 62 LVN positions are vacant, and 12 of 45 psych tech positions are vacant.  Nursing leadership backfills the positions with mandatory overtime and registry. The use of mandatory overtime results in low morale. LVNs that provide clinic support to medical providers have a functional vacancy rate of almost 50%.

Lack of support staff to providers lowers productivity and causes delays in access to care that harms patients. In both court expert and OIG reports, many of the deficiencies are the responsibility of support staff that have significant vacancy rates.  Medical provider, nursing and support staff vacancies must be remedied to remedy existing systemic deficiencies.

It has not been possible to attain an adequate staffing level at SVSP for years.  A rational question is whether this can ever be achieved at reasonable salary levels.  If hiring sufficient staff is not possible, the State may need to consider closing this facility or moving the entire mental health population to a facility closer to a geographic location where it is easier to recruit staff.  This would make SVSP a true

---

[6] Office Technician.
[7] Office Assistant.
[8] Health Records Technician.
[9] Licensed Vocational Nurse.
[10] Registered Nurse.
[11] Supervising Registered Nurse.
[12] Physicians and Nurse Practitioners.

basic facility with fewer complex patients thereby making it easier to manage.  This would lower the pressure on staffing.

Recognizing that SVSP will probably remain where it is, we recommend an approach that addresses both systemic and staffing deficiencies.  Improving staffing levels will undoubtedly raise costs.  The market rates to recruit to this facility may be considerable given that the State has placed a difficult to manage mental health facility in a high cost of living area.   Correcting staffing deficiencies will require assessing the market and determining what salary it will take to attract sufficient staff for each classification level at this particular facility.  This may be difficult with current state bargaining agreements and contracts. Nevertheless, unless this is done, the problems will persist with the accompanying care deficiencies and risk of harm.  Accelerating HCFIP and installation of the electronic medical record may improve the ability to recruit.  These should be expeditiously finished.  The electronic record, in particular, will help in partly eliminating some of the missing medical record documents and will allow existing staff to more effectively scan outside clinical reports to the record.

## Quality of Care and Health Care System Issues

With respect to clinical care outcomes, we conducted in depth review of 50 cases.  Regarding high acuity cases, eleven of eighteen (61%) hospital cases we reviewed were inadequate.  We do not include details of these case reviews in this report, but there were multiple cases of harm to patients including unnecessary and preventable hospitalizations; failure to adequately treat chronic illnesses for extended periods of time; failure to timely diagnose serious illness; and losing patients to specialty follow-up.  In addition, there were numerous cases of failure to adequately diagnose illness, failure to timely or adequately follow up on critical lab values, failure to develop an adequate therapeutic plan, and failure to review consultant reports, thereby failing to initiate consultant's recommendations.  We also reviewed the medical records of 20 high-risk patients with a variety of chronic illnesses, including diabetes, hypertension, asthma, cardiac disease, hepatitis C, cancer, ulcerative colitis, and rheumatoid arthritis.  Most of these patients were being followed in the high-risk clinic described above.  While this procedure appears to have successfully addressed the timeliness of provider visits for this population, we identified problems similar to the ones noted above with medical records, diagnostics, and specialty care.  Based on our and the OIG findings, it is clear that harm and the risk of harm is significant and ongoing to this population.

The scheduling system for health care appointments in MedSats is a major concern.  Health care leadership reported that on two occasions, over 800 chronic disease appointments were lost in MedSats and had to be restored with the assistance of CCHCS.  Despite this, leadership reported that scheduling is still "a mess" and is unreliable, increasing risk of harm to patients with serious medical conditions.

This and other systemic deficiencies can be evaluated using root cause analysis and other process improvement and lean techniques and then resolved by applying what is learned to the operations. Central office has indicated to us that CCHCS has developed expertise in these techniques and it makes sense for those in central office with this expertise to join the regional staff in assisting this deficient institution.

## SVSP Has a High Percentage of Mentally Ill Inmates

On 3/22/17 the SVSP population was 3,400 with a design capacity of 2,452 or 138.7% of design capacity. SVSP is designated a basic care institution. This designation implies a low level of acuity but is misleading

as 1804 (53%) of 3,400 inmates have serious mental illness.  SVSP is also designated an American with Disabilities (ADA) facility which present issues related to management of scarce medical beds.

| SVSP Mental Health Caseload | |
| --- | --- |
| Mental Health Classification | Number of Inmates |
| EOP | 612 |
| ASU EOP | 27 |
| CCCMS | 909 |
| CCCMS ASU | 64 |
| MHCB | 9 |
| DSH | 183 |
| **Total MH population** | **1804** |

The Department of State Hospital (DSH) unit on the SVSP grounds is a 250-bed capacity institution with a current census of 183.  Later this year DHS plans to transfer management of the hospital to CDCR which will increase both the number and acuity of the mental health population at SVSP.  A higher acuity mental health population is more difficult population to manage clinically and is likely to make recruitment of staff even more challenging.

**Custody Issues**

Record review revealed issues unrelated to health care staffing resulting in inadequate access to care. We noted health care staff documented many refusals of care but there was no associated signed refusal of care in the eUHR.  SVSP leadership reported that that this was a serious problem with refusals occurring for all types of clinical encounters including nursing, provider, and specialty appointments.  In many instances custody did not escort the patient's to the clinic to sign refusals of care, raising the question of whether the patient actually refused care.  SVSP leadership conducted a study by sampling refusals to assess how many have a signed refusal.  In a recent study only 30% of refusals included a signed inmate refusal.  The numbers of refusals vary by yard can be high.  Leadership told us that one yard had 70 refusals in one month.  This needs to be assessed more closely to determine if the access to care program is operating effectively at this facility.

## Conclusion

In summary, the factors contributing to long-standing problems at SVSP are multifactorial and require a comprehensive plan at the highest levels of CDCR and CCHCS.  Without a comprehensive approach and sustained support and monitoring, medical care at SVSP will likely continue to be inadequate.