XAVIER BECERRA
Attorney General of California
MONICA N. ANDERSON
Senior Assistant Attorney General
ADRIANO HRVATIN
Supervising Deputy Attorney General
ELISE OWENS THORN, State Bar No. 145931
TYLER V. HEATH, State Bar No. 271478
KYLE A. LEWIS, State Bar No. 201041
LUCAS HENNES, State Bar No. 278361
Deputy Attorneys General
 1300 I Street, Suite 125
 P.O. Box 944255
 Sacramento, CA 94244-2550
 Telephone: (916) 210-7323
 Fax: (916) 324-5205
 E-mail: Lucas.Hennes@doj.ca.gov
*Attorneys for Defendants*

ROMAN M. SILBERFELD, State Bar No. 62783
GLENN A. DANAS, State Bar No. 270317
ROBINS KAPLAN LLP
 2049 Century Park East, Suite 3400
 Los Angeles, CA 90067-3208
 Telephone: (310) 552-0130
 Fax: (310) 229-5800
 E-mail: RSilberfeld@RobinsKaplan.com
*Special Counsel for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **RALPH COLEMAN, et al.,**<br><br>                                         Plaintiffs,<br><br>             v.<br><br>**GAVIN NEWSOM, et al.,**<br><br>                                         Defendants. | 2:90-cv-00520 KJM-DB (PC)<br><br>**DEFENDANTS' SUPPLEMENTAL OPPOSITION TO PLAINTIFF-INTERVENOR LIPSEY'S MOTION FOR A TEMPORARY RESTRAINING ORDER** |

Plaintiff-Intervenor Christopher Lipsey's argument for a temporary restraining order rests on his incorrect premise that inmates continue to complain about the Guard One security welfare check process. But Lipsey's evidence demonstrates that while inmates submitted several grievances in 2014-2015, when the Guard One security checks were first implemented, those grievances have greatly diminished. In fact, in the four institutions with Security Housing Units in 2018, there were two grievances submitted regarding Guard One and, in 2019, just one grievance. (ECF No. 6690-3.) In 2020, there were two complaints, one at California State Prison—Corcoran and one at Pelican Bay State Prison. (*Id*.) The significant reduction in complaints makes sense. The California Department of Corrections and Rehabilitation (CDCR), working with the Special Master and his expert, Lindsey Hayes, have monitored and continue to monitor the Guard One checks and adjustments have been made to reduce the noise and intrusiveness of the checks. Consequently, as demonstrated by the evidence supporting Defendants' opposition to Lipsey's motion, any noise associated with the Guard One checks is minimal, and inmates are not filing grievances about the Guard One checks. Accordingly, Lipsey is not entitled to any relief and his motion should be denied.

## I.   LIPSEY'S MOTION IS PROCEDURALLY IMPROPER.

Under Federal Rule of Civil Procedure 65, a litigant's right to a temporary restraining order are narrow and "restricted to serving [its] underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cty.*, 415 U.S. 423, 439 (1974). Lipsey's motion is inconsistent with Rule 65, as he seeks to affirmatively replace (the opposite of the status quo) the Court-ordered Guard One monitoring system with various proposed alternatives. (*See* ECF Nos. 6462, 6690.)

This Court ordered Defendants to implement the Guard One system to show that they were appropriately conducting welfare checks in restricted housing units. (ECF No. 5271.) Any injunction issued by the Court preventing Defendants from doing so would contradict that order. Accordingly, if Lipsey seeks relief from that order, he should have moved for reconsideration

1

Defs.' Supp. Opp'n Pl.'s Mot. TRO   (2:90-cv-00520 KJM-DB (PC))

under Federal Rule of Civil Procedure 60(b).  Lipsey's current motion is procedurally flawed and should be denied.

## II. THE LOW NUMBER OF INMATE COMPLAINTS SHOWS THAT CDCR'S CONTINUED EFFORTS TO LIMIT GUARD ONE NOISE HAVE WORKED.

Lipsey's supplement suggests that grievances filed at select institutions in 2014 and 2015 support his motion for a temporary restraining order, but he ignores that no more than two inmate grievances were received at these same institutions from 2018 through present day.  To prevail on his motion for a temporary restraining order, Lipsey must show "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).  Lipsey's own evidence does not support a temporary restraining order—inmates are not affected by the minimal noise associated with the Guard One checks.  Lipsey fails to meet his burden, and Defendants provide more than enough evidence to show the steps CDCR has taken to limit any noise associated with Guard One, and that those efforts have paid off based on the insignificant number of grievances submitted in comparison to the number of Guard One checks that occur on a daily basis across the state.

Since 2014, this Court, the Special Master, and CDCR have known about and worked to address the concerns raised by inmates regarding the noise associated with Guard One.  Indeed, in September 2016, the Special Master's expert, along with counsel for Plaintiffs and Defendants, toured Pelican Bay's Security Housing Unit (SHU) at night to investigate the noise complaints.  (ECF No. 5672 at 13, 160; Decl. of C. Parry (Parry Decl.) ¶ 7.)  Mr. Hayes concluded that the noise level was acceptable.  (*Id.*)  And all parties observed the inmates sleeping through the Guard One checks.  (Parry Decl. ¶ 8.)

Moreover, CDCR, with this Court's approval, took proactive steps to change to the way staff conduct Guard One checks.  Specifically, all First Watch checks, those occurring between the hours of 10:00 p.m. and 6:00 a.m., are conducted with the Guard One device in silent mode.

2

(Decl. of P. Bajwa (Bajwa Decl.) ¶¶ 3-18, Exs. B-W; Decl. of A. Konrad ¶ 5, Ex. A; Decl. of R. Davila ¶ 6, Ex. A; Decl. of G. Brown ¶ 5, Exs. A-C; Decl. of E. Silva ¶ 5, Ex. A; Parry Decl. ¶ 5, Exs. A-E.) The difference is that the Guard One checks at Pelican Bay's SHU occur once every hour, instead of twice an hour. (Parry Decl. ¶ 5.) Correctional supervisors now also take it upon themselves to walk the tiers, to ensure correctional staff are conducting the Guard One checks properly and quietly. (Brown Decl. ¶¶ 8-11; Parry Decl. ¶¶ 10-11.) Sergeant Brown, who supervises Kern Valley's Administrative Housing Unit where Lipsey is presently housed, personally walks the tiers to ensure the checks are conducted in the least intrusive manner possible. (Brown Dec. ¶¶ 8-11.) Kern Valley's records reflect no grievances or complaints by Lipsey concerning the checks, nor has Lipsey complained about the First Watch checks. (Brown Decl. ¶ 12.) As Sergeant Brown explains, the First Watch officers are diligent in their efforts to conduct the checks without disturbing the inmates at night. (*Id.* ¶ 10.)

These changes have had a positive and significant impact. The chart below displays the total number of checks completed at Corcoran, California Correctional Institute, Kern Valley State Prison, California State Prison, Sacramento and Pelican Bay State Prison in 2019 and 2020. (Bajwa Decl. ¶ 2, Ex. A; Decl. of S. Pulley (Pulley Decl.) ¶ 4, Ex. B-T.)

|  | 2019 Total Guard One Checks | 2019 Total Grievances | 2020 Total Guard One Checks | 2020 Total Grievances |
|---|---|---|---|---|
| Corcoran | 9,108,045 | 1 | 3,322,467 | 1 |
| CCI | 1,043,090 | 0 | 644,135 | 0 |
| Kern Valley | 3,097,855 | 0 | 1,260,979 | 0 |
| CSP-Sac | 5,194,261 | 0 | 2,124,028 | 0 |
| Pelican Bay | 6,742,643 | 0 | 2,524,697 | 1 |

In contrast with the actual number of Guard One checks conducted by these institutions on, the few grievances cannot even be assigned percentage because the figure is so insignificant.

Defs.' Supp. Opp'n Pl.'s Mot. TRO   (2:90-cv-00520 KJM-DB (PC))

1    The evidence shows that CDCR has taken steps to limit or eliminate the noise caused by
2    Guard One checks, so much so that Lipsey himself has not submitted any further complaint to
3    prison officials.  The overall lack of inmate grievances is a clear indicator that all of CDCR's
4    efforts have made a difference in reducing any Guard One noise and any alleged effect on
5    inmates' ability to sleep.

### III.  LIPSEY SEEKS RELIEF THROUGH ALTERNATIVES THAT ARE NOT VIABLE.

Lipsey suggests four alternatives to the Guard One system, none of which are viable.

Lipsey suggests CDCR consider a smartphone-based tracking system and proposes three different products, Trackforce (ECF 6462-13), Kugadi Guard Tour System (ECF 6462-14), and QR patrol (ECF 6462-15).  But, none of these options are viable because cell phones are not allowed in any CDCR housing unit, and officers cannot have a cell phone while on duty.  (Pulley Decl. ¶ 7.)  Cell phones are contraband under CDCR policy and present a safety and security risk to inmates and staff.  *See*, *e.g*, Cal. Code Regs., tit. 15, § 3006(a).  And if correctional officers begin carrying cell phones, there is a high likelihood that an inmate or inmates will obtain a cell phone.  (*Id.*)  As Lipsey's proposal would violate regulations, CDCR cannot accept it, and the Court should reject it.

Lipsey also suggests CDCR consider Verdaka, which appears to be a video surveillance system for security guards.  (ECF 6462-23.)  This is not a viable option because video surveillance implicates privacy concerns, especially in the housing units.  (Pulley Decl. ¶ 8.)  Additionally, it is not clear how this video surveillance system would address the personal accountability concerns which resulted in the Special Master recommending and the Court approving CDCR's use of Guard One.  (*Id.*)  And any video surveillance would require the diversion of resources to personally review the footage, which is not feasible given the number of Guard One checks conducted at the institutions.  (*Id.*)

The Guard One system was recommended and implemented to ensure that correctional staff are conducting the security checks at the designated times to keep inmates safe.  Defendants' evidence shows correctional staff are averaging a 94% compliance rate, thus demonstrating that

4

Defs.' Supp. Opp'n Pl.'s Mot. TRO   (2:90-cv-00520 KJM-DB (PC))

1  the Guard One system is performing, as expected. (Bajwa Decl. ¶ 2, Ex. A; Pulley Decl. ¶ 7, Ex.
2  B-T.)

## CONCLUSION

The Court should deny Lipsey's motion for a temporary restraining order.

Dated:  July 15, 2020                    Respectfully submitted,

                                         XAVIER BECERRA
                                         Attorney General of California
                                         ADRIANO HRVATIN
                                         Supervising Deputy Attorney General


                                         LUCAS L. HENNES
                                         Deputy Attorney General
                                         *Attorneys for Defendants*

CF1997CS0003
91264543

5