DONALD SPECTER – 083925
STEVEN FAMA – 099641
MARGOT MENDELSON – 268583
PRISON LAW OFFICE
1917 Fifth Street
Berkeley, California 94710-1916
Telephone: (510) 280-2621

CLAUDIA CENTER – 158255
DISABILITY RIGHTS EDUCATION
AND DEFENSE FUND, INC.
Ed Roberts Campus
3075 Adeline Street, Suite 210
Berkeley, California 94703-2578
Telephone: (510) 644-2555

MICHAEL W. BIEN – 096891
JEFFREY L. BORNSTEIN – 099358
ERNEST GALVAN – 196065
THOMAS NOLAN – 169692
LISA ELLS – 243657
JENNY S. YELIN – 273601
MICHAEL S. NUNEZ – 280535
JESSICA WINTER – 294237
MARC J. SHINN-KRANTZ – 312968
CARA E. TRAPANI – 313411
ALEXANDER GOURSE – 321631
AMY XU – 330707
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
Telephone: (415) 433-6830

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>GAVIN NEWSOM, et al.,<br><br>    Defendants. | Case No. 2:90-CV-00520-KJM-DB<br><br>**SECOND JOINT UPDATE ON THE WORK OF THE COVID-19 TASK FORCE**<br><br>Judge: Hon. Kimberly J. Mueller |

At the June 29, 2020 status conference, the Court directed the parties to file a joint report with updates "on the work of the Task Force" by July 15, 2020 and "every two weeks thereafter." ECF No. 6741. This report provides the parties' second COVID-19 Task Force joint update and covers issues discussed since the first joint update filed on July 15, 2020. This report covers the Twenty-Seventh (July 21) and Twenty-Eighth (July 28) COVID-19 Task Force meetings, an all-parties workgroup meeting regarding transfers from California Institution for Women (CIW) to DSH-Patton (July 23) and other matters, and various small workgroup meetings between representatives from Defendants and the Special Master's team. Unless otherwise indicated, the small workgroup meetings include members of Defendants' leadership and the Special Master's team, and not Plaintiffs. The Special Master holds meetings with Plaintiffs to update them on the status of the workgroups.

## I. UPDATE REGARDING COVID-19 CASES IN CDCR AND DSH

### A. CDCR's Report On COVID-19 Cases And Testing

The following table shows, as of July 28, the total number of confirmed COVID-19 cases, both active and resolved to date, and the number and percentage of those cases who are *Coleman* class members and their level of care.

| COVID Result | Total Patients | MHSDS Patients Only | MSHDS patients as % of total |
|---|---|---|---|
| Active | 1744 | 478 (442 CCCMS, 26 EOP, 4 MHCB, 4 ICF, 2 APP) | 27.41% |
| Resolved | 5371 | 1448 (1251 CCCMS, 181 EOP, 6 MHCB, 7 ICF, 3 APP) | 26.96% |
| TOTAL active + Resolved | 7115 | 1926 (1693 CCCMS, 205 EOP, 10 MHCB, 11 ICF, 5 APP) | 27.07% |

CDCR reported that 47 incarcerated people have died due to the novel coronavirus as of July 27, 2020, of whom 21, or 45 percent, were part of the Mental Health Services Delivery System (MHSDS) at the time of their deaths. Between May 8, 2020, and July 28, 2020, there were a total of 366 admissions of incarcerated people statewide to outside community hospitals for COVID-19 and 126, or 34.4 percent of those admissions were

Case 2:90-cv-00520-KJM-SCR    Document 6792    Filed 07/29/20    Page 3 of 13

*Coleman* class members (111 CCCMS and 15 EOP). As of July 28, 2020, 53 incarcerated people are still admitted to the hospital, of whom 19, or 35.8 percent, are *Coleman* class members (16 CCCMS and 3 EOP). CDCR reports these numbers include re-admissions of some patients who were discharged and then re-admitted. It also reports that the numbers exclude patients who were COVID-19 positive and admitted to outside hospitals for reasons other than COVID-19.[1]

According to CDCR, as of July 28, it had tested 65,823 unique incarcerated people and formerly-incarcerated people, 58,614 of whom are still in CDCR custody. Of the 58,614 incarcerated people tested, 17,408, or 29.70 percent, of those tested were part of the MHSDS. CDCR reports that the average turnaround time for tests is 3.7 days.[2] CDCR reports it has also obtained 8,325 point-of-care rapid testing kits, with an additional 5,000 being delivered this week. CDCR reports that all institutions have rapid test capability. CDCR reports these kits are useful for certain purposes but currently cannot replace the existing tests because the rapid testing method has an expected false negative rate of approximately 10 percent to 20 percent of results.

As of July 28, 2020, twenty-two of CDCR's thirty-five institutions were closed to external movement, including four of the five institutions with Psychiatric Inpatient Programs (PIPs): California Medical Facility (CMF) closed on July 22, California Health Care Facility (CHCF) closed on July 9, California Institution for Women (CIW) closed on May 21, 2020, and San Quentin State Prison (SQ), which includes the PIP for condemned patients, closed on June 8, 2020. Salinas Valley State Prison (SVSP), which includes

---

[1] At the July 28 Task Force, CDCR reported that California Correctional Health Care Services (CCHCS) is working on a way to report comprehensive data including hospitalizations since March 2020 due to COVID-19, but it was not ready at the time of this report. Accordingly, the information included is for May 8, 2020 and July 28, 2020. CDCR provided to Plaintiffs' counsel a list of all class members hospitalized due to COVID-19 for this time period.

[2] At the July 28 Task Force, Plaintiffs also raised concerns that the testing data may not be accurate due to possible issues with the COVID-19 Registry. The Parties will continue to meet and confer on this issue.

CDCR's fifth PIP, had closed to movement on June 24, but newly reopened on July 16, 2020.

### B. Update Regarding Specific CDCR Institutions.

San Quentin State Prison (SQ) remains on the modified program/medical quarantine that started on July 14. As of the July 21 Task Force meeting, CDCR reported SQ was not permitting anyone to go outside to the yard or to use phones. CDCR reported canteen and packages are delivered to the housing units, stamped envelopes are distributed to the entire population, patients in the gyms and H-Unit EOP dormitories are being allowed into dayroom in smaller numbers, medication distribution continues, and medical appointments are triaged with priority ducats. SQ continues to use six 10-person tents for medical treatment and the Prison Industry Authority (PIA) furniture facility to treat additional patients. The PIA alternative care site has a 110-bed capacity for symptomatic patients and 140-bed capacity for COVID-19 positive patients who are asymptomatic. CDCR reported that additional custody staffing needs were met without using recent academy graduates. As of the July 21 meeting, CDCR was still confirming the status of entertainment appliances and the availability of working headphones to allow use of radios. Plaintiffs noted the isolating conditions at SQ and expressed strong concerns in particular to SQ cutting off access to phones and yard. Defendants reported that limiting access to phones and yard was initiated based upon recommendations from the California Department of Public Health. The recommendation was made due to concerns regarding the risk of transmission during yard activities and while using communal phones. Plaintiffs also expressed concerns about reports of limitations on providing incarcerated people with alcohol-based hand-sanitizers. At the July 28 meeting, CDCR reported that all mental health treatment at SQ is taking place cell-front. CDCR also reported that phone calls had resumed for everyone as of July 22, while a modified outdoor yard program for only recovered positive cases was also being provided. Any incarcerated persons who were asymptomatic and had not tested positive are still subject to the normal modified program, including no outdoor yard access. Additionally, CDCR confirmed that hand

sanitizer was available in every housing unit, and a one-time donation of hand sanitizer was disbursed.  Finally, CDCR confirmed that all donated appliances and those available in individuals' personal property held at SQ had been disbursed to the population, that those housed in the reception center housing units were still ordering appliances, and that the population housed in tents and the chapel were taking their appliances with them.  SQ is also installing electricity in the south block cells to permit the use of appliances in that unit.

California Institution for Men (CIM) has seen a new increase in positive cases.  At the July 21 Task Force meeting, CDCR reported that CIM needed more space to move patients and was putting up tents that had recently been taken down.  CDCR reported the tents will be used as housing space, not medical space.  CIM is providing yard and dayroom in small groups.  At the July 28 taskforce, CDCR confirmed that there are 13 8-person tents on Facility A.  Plaintiffs asked whether EOP patients or CCCMS patients on heat sensitive medications are housed in the tents, and whether the tents have air conditioning.  Defendants plan to report back at the next Task Force meeting.  Defendants also reported there are currently no EOP groups offered at CIM.

Correctional Health Care Facility (CHCF), including its PIP, has remained closed to movement since July 9, 2020.  At the July 21 Task Force, CDCR reported the institution remained on modified program with 10 units on isolation and the remainder on quarantine, that CHCF was not providing group treatment or dayroom, but is providing limited outdoor yard on 30 minute intervals.  CDCR reported it was developing a modified yard schedule to implement later in the week of July 21.  At the July 28 meeting, CDCR reported that the isolation units are now running modified dayroom and outdoor yard as well.  CDCR also reported there are currently no structured therapeutic groups offered at CHCF except in the EOP ASU Hub.

California Medical Facility (CMF), including its PIP, closed to movement on July 22, 2020.  At the July 21 Task Force meeting, CDCR reported that the institution still had tents up to provide additional housing space, with 58 people housed in tents at that time.

CDCR reported CMF is on modified program limiting outdoor yard to individual housing units, limiting dayroom to 6 to 8 people, and rotating showers. Phone calls are provided.

Salinas Valley State Prison (SVSP), including its PIP, was newly re-opened to movement on July 16, 2020. At the July 21 Task Force meeting, CDCR reported the institution remains on modified programming with individual housing units going to outdoor yard, showers being provided, and dayroom limited by unit, tier, and section. At the July 28 Task Force meeting, CDCR reported that there are currently no EOP groups occurring and no groups occurring in PIP units C5 and C6, but there are limited groups occurring in PIP units TC1 and TC2.

### C.     Update Regarding Temporary Mental Health Unit (TMHUs)

According to CDCR, there were 38 *Coleman* class members in TMHUs as of July 28, which represented a decrease from 58 on July 21. At the July 21 Task Force meeting, CDCR reported that it is continuing to work on tracking patient activity in the TMHUs as part of its COVID-19 Dashboard.

At the July 21 Task Force meeting, the parties discussed that the CDCR small workgroup is working on addressing two practices in the MAX Custody TMHUs: (1) patients being held in the MAX Custody TMHU beyond the maximum length of stay of 10 days permitted by Defendants' temporary policy, and (2) the use of TMHUs as alternative housing, which is not part of Defendants' temporary policy. Plaintiffs discussed their position that Defendants must create a way to ensure patients experiencing mental health emergencies can be appropriately moved to and treated in an inpatient setting like patients who experience other medical emergencies.

### D.     DSH Report Regarding COVID-19 Cases and Facilities

DSH reported that, as of July 28, there were zero confirmed positive cases in its *Coleman* population. As of July 28, 2020, DSH has performed 8,962 tests on a cumulative total of 3,627 patients across all five hospitals. A total of 185 patients and 223 staff have tested positive.

As of July 29, 2020,[3] DSH-Patton was closed to new admissions, except for non-*Coleman* patients designated as Offenders with Mental Health Disorders (OMDs). Twenty-one of DSH-Patton's treatment units, and its two admissions units, were on quarantine as of July 28. An additional three of its treatment units are being used as isolation space. The DSH-Patton unit that houses *Coleman* class members was previously quarantined, had its quarantine lifted on July 6.

DSH-Atascadero is open to new admissions. As of July 27, four of DSH-Atascadero's treatment units were on quarantine due to COVID-19 cases at that facility, but do not include any treatment units housing *Coleman* class members. On July 29, 2020, DSH reported that Unit 33, a *Coleman* unit at DSH-Atascadero was quarantined. A *Coleman* patient on the unit was placed into isolation and COVID-19 test results for the patient are pending.

DSH-Coalinga is open to new admissions. On July 24, one of the *Coleman* treatment units at DSH-Coalinga was placed on quarantine due to a positive staff member on the unit. DSH reports all patients and staff will be tested on the unit. DSH-Coalinga has nine treatment housing units on quarantine as of July 27. DSH-Coalinga's admission unit MA-1 is quarantined.

## II. UPDATES ON DSH CENSUS, WAITLIST, AND ADMISSIONS

### A. Overall Census, Waitlist and Admissions

At the Task Force meetings, DSH and CDCR provided their census, waitlist, and admission reports. As of the July 24 data discussed at the July 28 Task Force meeting, there were 216 *Coleman* class members at DSH-Atascadero (with 40 available beds), 43 at DSH-Coalinga (with seven available beds), and nine at DSH-Patton (with 21 available beds). There are 24 patients awaiting admission to DSH-Atascadero and DSH-Coalinga including 9 ICF patients awaiting admission for more than 30 days, who are at CDCR

---

[3] The Parties' prior status update reported that DSH-Patton was closed to new admissions of *Coleman* class members on June 18, 2020. Defendants are confirming the exact date DSH-Patton closed and will provide that date in the next update.

institutions closed to external movement as a result of COVID-19 cases. There are four patients awaiting admission to DSH-Patton none of whom have been awaiting admission for more than 30 days. All four are currently at closed CDCR institutions. Of the 24 patients awaiting admission to DSH-Atascadero and DSH-Coalinga, there are nine who are at CDCR institutions currently closed to movement.

Since DSH lifted its temporary suspension of admissions effective April 16, 2020, DSH has admitted a total of 70 *Coleman* class members. In the 14 days from July 15 through July 28, DSH has admitted five class members. None of those patients waited longer than 30 days for admission.

On July 16, 2020, Defendants circulated draft updated temporary guidelines for transferring patients from CDCR institutions closed due to COVID-19 to DSH. This was the first draft to include guidance on the standard and procedure for transfers from CDCR institutions that have been closed to movement due to COVID-19. At the July 21 Task Force meeting, Plaintiffs presented their position that they are amenable to this proposal pending information from Defendants and/or monitoring by the Special Master showing whether the standard is being implemented appropriately such that patients transfer when needed. Defendants report they have not yet implemented the guidance.

Also at the July 21 Task Force meeting, DSH presented a simplified progress summary chart to replace the progress summary chart it had been using to track the status of DSH transfers since April 17, 2020. Plaintiffs expressed concerns that the new chart only covers the most recent two weeks of data, and tracked fewer data points for those weeks than the previous version. DSH stated it is no longer maintaining the prior progress summary chart, but it will work to include more data in future iterations of the new version of the chart and provide additional information explaining the current data points being collected. As of the July 28 Task Force meeting, DSH had not yet incorporated additional data.

### B. DSH-Patton Closure

Due to a COVID-19 outbreak, Defendants closed DSH-Patton to new admissions,

except for non-*Coleman* patients designated as OMDs, and it remains closed. On July 23, 2020, in a small workgroup that included Plaintiffs, the parties discussed four patients at CIW-PIP at the ICF level of care who were referred to DSH-Patton for ICF treatment in their least restrictive housing. None of these patients' referrals have been pending for more than 30 days. At the workgroup, DSH presented its position that because the four patients were already being treated at the ICF level of care at CIW-PIP, it would be unsafe, as well as disruptive to those four patients' care, to transfer them during the current outbreaks at both CIW and DSH-Patton. Plaintiffs discussed their position that it is very important to treat patients in the least restrictive setting appropriate to their individual needs. Plaintiffs agreed, however, not to push for their transfer at this time after reviewing the four women's mental health records, which show they are currently receiving more treatment in the CIW-PIP than they would receive if quarantined for an extended period for transfer to DSH-Patton. Plaintiffs noted this calculus would be different for individual patients receiving less treatment and out of cell time.

### III. UPDATES ON THE CDCR AND DSH SMALL WORKGROUP ACTIVITIES.

#### A. CDCR Workgroup

The Special Master's experts have held small workgroups with CDCR and DSH leadership, without Plaintiffs or Defendants' counsel, focused on specific topics. The CDCR small workgroup has met twice since the July 15 joint update and reported its work to the Task Force. As discussed in greater detail below, the workgroup prepared a revised draft of CDCR's plan to conduct EOP ASU Hub and PSU certifications during the COVID-19 pandemic. The workgroup also discussed revisions to a movement matrix and a memorandum clarifying the meaning of clinically "essential" mental health transfers as it is used by the Division of Adult Institutions' (DAI) order to halt movement. On July 23, 2020, counsel for the *Plata* Receiver sent a draft of the movement matrix to Plaintiffs' counsel and requested comments by noon on July 30. The workgroup did not report on the status of the memorandum clarifying the meaning of clinically "essential" mental health

transfers.

### B. DSH Workgroup

The DSH small workgroup has met two times since the July 15 joint update and reported its activities to the Task Force. The workgroup created the July 16 draft guidelines for processing transfers from CDCR institutions closed due to COVID-19, which was discussed with the full Task Force on June 21 as noted above. The small workgroup also reported that it continued to discuss referrals to DSH from CDCR.

### C. Behavioral Treatment Workgroup

Members of CDCR and DSH leadership have also been meeting with the Special Master's experts as part of a Behavioral Treatment small workgroup discussing options to address class members with behavioral issues in addition to their serious mental illness. Since the July 15 joint update, this group met twice, including a meeting with staff from the New York State Office of Mental Health which provides care to inmate-patients in the New York Department of Corrections. The workgroup has been put in touch with staff from Amend at UCSF regarding programs in the Washington State Department of Corrections and in Norway's correctional system.

## IV. ADDITIONAL COVID-19 RELATED UPDATES

### A. Isolation and Quarantine Space

During an all-parties small group meeting on July 23, 2020, the parties and Special Master discussed that the *Plata* court entered an order on July 22, 2020 that the Defendants set aside quarantine and isolation space at each institution, and must account for *Coleman* class members' needs when doing so. *See Plata v. Newsom*, Case No. 4:01-cv-1351-JST, ECF No. 3401 at 3-4 (July 22, 2020). On July 20, the *Armstrong* parties stipulated and the *Armstrong* court entered an order requiring Defendants to set aside quarantine and isolation space for *Armstrong* class members and requiring the *Armstrong* Expert to consult with the *Plata* Receiver. *See Armstrong v. Newsom*, Case No. 4:94-cv-02307-CW, ECF No. 3015 at 2.

The Special Master confirmed he would discuss this issue with the *Plata* Receiver

and *Armstrong* Expert during the coordination meeting scheduled for July 24, 2020.

### B. Update Regarding CDCR's COVID-19 Dashboard

In line with the schedule discussed with the parties' July 15, 2020 stipulation and update regarding COVID-19 Program Guide Departures, ECF No. 6761 at 4, Defendants anticipate the dashboard will go live on approximately August 3, 2020. Defendants anticipate providing an updated version of the COVID-19 Dashboard business rules in the coming days.

### C. Updates to CDCR's COVID-19 Tracking Maps and Charts.

Defendants filed an update to the COVID-19 maps and charts on July 15, 2020. ECF No. 6763. CDCR added explanatory cover sheets for the maps listing each institution's security levels, reception centers (if any), and current closure status. CDCR is working to add institutions' closure and re-opening dates and trend data by the August 15, 2020 filing.

### D. Updated Stipulation and Order Identifying Program Guide Departures.

The parties filed a stipulation and update, and attached appendix identifying current COVID-19-related Program Guide departures on July 15, 2020. ECF No. 6761; ECF No. 6783 (errata). The parties will meet and confer regarding the next update due on August 15, 2020.

### E. Information Regarding the Relationship Between Serious Mental Illness and COVID-19 And Plan for Enhanced Pandemic Treatment Strategies.

On June 19, Plaintiffs sent Defendants and the Special Master a letter and associated exhibits. In the letter, Plaintiffs described their position that a link exists between serious mental illness and COVID-19 risk, and stated that CDCR needs to develop a strategy to provide mental health care to *Coleman* class members and other incarcerated people during the long-term pandemic. During the June 26 status conference, the Court requested that the parties file any data showing a connection between the *Coleman* class and potential vulnerability to COVID-19. In response to the Court's request, Plaintiffs on July 2 filed a brief describing a connection between serious mental

[3586214.8]
10
SECOND JOINT UPDATE ON THE WORK OF THE COVID-19 TASK FORCE

illness and risk of complications for COVID-19, as well as several exhibits.

On June 30, Plaintiffs emailed Defendants with questions regarding materials they understood to be developed by CDCR mental health for "in-cell" use in lieu of out of cell treatment.

On July 21, 2020, Defendants sent Plaintiffs a letter in response to Plaintiffs' June 19 letter and June 30, 2020 email. The parties preliminarily discussed Defendants' July 21 letter at the Task Force meeting that same day. Plaintiffs asked for more details about what out of cell treatment is being provided at institutions with outbreaks that have PIPs and EOP units, including whether group therapy is provided. CDCR responded that it tracks this information and is still working on providing access through the Dashboard. Plaintiffs asked whether CDCR had minimum treatment standards for EOP and PIP patients. CDCR stated its position that there is no system-wide standard because each institution faces unique circumstances such as staffing and physical plant issues, and each institution is providing as much treatment as possible. The parties agreed to discuss the issue in further depth at the July 28 Task Force meeting.

At the July 28 meeting, in response to Plaintiffs' questions, CDCR was not immediately able to give a complete report on mental health groups or out of cell time but indicated that 7 of 10 EOP ASU hubs were providing some mental health groups, and some of those are able to offer approximately 5 hours, although with a reduced number of patients per group to allow for social distancing based on each institution's physical plant. CDCR also indicated that 8 institutions are providing some mainline EOP groups, but the hours have fluctuated, and some Short Term Restrictive Housing (STRH) units are providing groups, but not the full amount required in those programs. CDCR also acknowledged that patients were frequently not present for Interdisciplinary Treatment Team meetings, and it is working to improve documentation of these missed IDTTs to reflect why patients would not be present.

**F.    Update Regarding the ASU EOP Hub and PSU Certification Process.**

Since the July 15 status conference, there have been two small workgroup meetings

between CDCR leadership and the Special Master's team on the ASU EOP Hub and PSU certification process. On July 24, 2020, Defendants provided a revised draft of CDCR's plan to conduct EOP ASU Hub and PSU certifications during the COVID-19 pandemic.

Additionally, the parties identified a dispute with regard to the underlying PSU certification standards, notwithstanding modifications during the pandemic. The parties discussed this issue during a meeting on July 23, 2020, and Defendants sent an email stating their position that, in 2017, the parties agreed to extend the ASU EOP Hub certification process to PSUs with modifications to the threshold certification rate (85 percent rather than 90 percent) and to the penalty for non-certification. On July 24, 2020 Plaintiffs replied with their position that Defendants had abandoned their prior 85 percent proposal during the 2017 negotiations and that the parties had ultimately agreed to extend the same 90 percent threshold certification rate applied to the EOP ASU Hubs to the PSUs. Due to time constraints, this issue was not discussed at the July 28 meeting.

DATED: July 29, 2020    Respectfully submitted,

ROSEN BIEN GALVAN & GRUNFELD LLP

By: */s/ Marc J. Shinn-Krantz*
Marc J. Shinn-Krantz

Attorneys for Plaintiffs

DATED: July 29, 2020    XAVIER BECERRA
Attorney General
Adriano Hrvatin
Supervising Deputy Attorney General

By: */s/ Tyler V. Heath*
Tyler V. Heath
Deputy Attorney General

Attorneys for Defendants

SECOND JOINT UPDATE ON THE WORK OF THE COVID-19 TASK FORCE

[3586214.8]