UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al., | No.  2:90-cv-0520 KJM DB P |
| Plaintiffs, | |
| v. | ORDER |
| GAVIN NEWSOM, et al., | |
| Defendants. | |

On May 29, 2020, the Special Master filed a Report on His Expert's Analysis of Psychiatrist Employment Conditions and Compensation at the California Department of Corrections and Rehabilitation (CDCR) and the Department of State Hospitals (DSH) (Special Master's Report).  ECF No. 6695.  The Special Master attaches the expert report that is the subject of his Report as Appendix A and also includes four appendices.  *Id*. at 186-317.  As directed by the court, *see* ECF No. 6712, the parties have filed a joint status report setting forth their respective positions as to the proper timeline for filing objections to the Special Master's Report.  ECF No. 6726 at 20-27.  Plaintiffs take the position the timeline for objections to the Report is the ten-day period set forth in the Order of Reference, ECF No. 640.  Defendants' view is that the thirty-day period set forth in the July 29, 2019 Stipulation and Order modifying the

1

1   Order of Reference, ECF No. 6230, controls.  As explained below, with a limited exception, the

2   ten-day period in the Order of Reference applies.[1]

3          The background leading to this court's approval of the Special Master's request to

4   hire an independent labor economist is set forth in the Special Master's Report and incorporated

5   by reference here.  ECF No. 6695 at 2-11.  In relevant part, the court approved the Special

6   Master's request to retain EmployStats "to evaluate current salary rates and the efficacy, if any, of

7   compensation increases on defendants' ability to recruit and retain necessary mental health staff

8   to comply with the October 10, 2017 order and the prior court orders described therein. . . ."; the

9   court specifically provided that "consistent with the history of these remedial proceedings, the

10  work of these experts is for use as directed by the Special Master and not as an 'independent

11  source of evidence' in proceedings before this court."  ECF No. 5919 at 2.[2]

12         Consistent with this approval, the Special Master directed EmployStats to conduct

13  market and salary analyses for both CDCR mental health psychiatrists and DSH psychiatrists and

14  to prepare a report of the findings.[3]  ECF No. 6695 at 11-15.  EmployStats provided a draft report

15  to the Special Master on August 14, 2019, and the Special Master distributed the report to the

16  parties the next day.  *Id.* at 15.  Defendants were given a total of sixty days to respond to the draft,

17  thirty days longer than the standard thirty-day period the Special Master provides for the parties

18  to respond to draft reports.  *See*, *e.g.*, ECF No. 5993 (Special Master granted defendants' request

19  _____

20     [1] The court reminds defendants that the novel coronavirus pandemic does not excuse
    unilateral failures to comply with or timely seek relief from this court's orders or the Federal

21  Rules of Civil Procedure, nor does it require any party to accede to such failures.  *Cf*. ECF No.
    6726 at 25:4-7.

22
       [2] The October 10, 2017 order required defendants, within one year, to come into

23  compliance with the staffing ratios in their 2009 Mental Health Staffing Plan, ECF No. 3963, and
    the maximum ten percent staff vacancy rate required by the court's June 13, 2002 order, ECF No.

24  5711 at 30.  More than twenty months after the deadline set by that order, defendants still are not
    in compliance with its requirements.  While enforcement proceedings have been delayed for a

25  number of reasons, they cannot be further deferred, as the court addresses in a separate order.

26
       [3] Although defendants are required to be in compliance with their staffing ratios for all

27  positions, subject to the vacancy rate in the June 13, 2002 order, for the past several years
    remedial efforts have focused primarily on ongoing large vacancy rates in psychiatrist positions.

28

1   for a seven-day extension of time to respond to August 27, 2018 draft suicide re-audit report;

2   responses were submitted October 3, 2018).  Defendants submitted objections to the draft report

3   to which, at the direction of the Special Master, EmployStats responded.  ECF No. 6695 at 16-18.

4   EmployStats' responses are set out in Appendix D to its report.  *See* ECF No. 6695 at 299-317.

5   As noted above, the Special Master's Report was filed May 29, 2020.

6         Two orders govern timelines for the parties to respond to reports from the Special

7   Master.  The Order of Reference, ECF No. 640, provides a ten-day response period for

8   compliance reports circulated by the Special Master to the parties in draft form so that they may

9   submit specific written objections to him within a "reasonable time" for consideration before a

10  final report is filed.  ECF No. 640 at 4.  A stipulation and order filed July 29, 2019, sets a thirty-

11  day deadline for filing objections to "any report by the Special Master that has not been circulated

12  to the parties for review and comment prior to filing. . . ."  ECF No. 6230 at 2-3.  As noted above,

13  plaintiffs contend the ten-day period applies here; defendants argue the thirty-day period applies.

14        While recognizing some ambiguity in the inclusion of the words "compliance

15  report" in the Order of Reference, the court here resolves any such ambiguity by clarifying that

16  the ten-day period in that order controls here.  Since entry of the July 29, 2019 order, the key

17  issue is whether the report "was circulated to the parties for review and comment prior to filing."

18  ECF No. 6230 at 2.  Here, it was.  As noted, defendants had ample time to provide comments and

19  they did so.  Under the circumstances, the ten-day period in the Order of Reference controls and

20  their objections, if any, were due ten days after the Special Master's Report was filed on May 29,

21  2020.

22        To support their contention the thirty-day rule should apply, defendants note the

23  expert report appended to the Special Master's Report "has supplemental material not included in

24  the August draft."  ECF No. 6726 at 25.  Specifically, they identify Appendix D to the

25  EmployStats' Report, which contains EmployStats' detailed responses to defendants' objections,

26  and a page commenting "on the impact of COVID-19 on staffing the labor market."  *Id*.  As to

27  the former, it is standard practice for the Special Master to incorporate in some manner his and/or

28  his experts' response to comments from the parties on draft reports in his final report.  The

1    inclusion of Appendix D is consistent with this practice and does not change the time for filing

2    objections.[4]

3            It appears undisputed the comments in the EmployStats' Report on "COVID-19

4    Considerations" were added after the report was circulated and, therefore, that defendants did not

5    have an opportunity to respond to them.  Those comments are as follows:

6            COVID-19 Considerations

7            In addition to the labor market analysis findings and
     recommendations as described above, the potential impact of the
8    current global pandemic COVID-19 on the staffing
     recommendations discussed in this report is discussed. The impacts
9    of COVID-19 on employment and staffing in the medical field are
     not fully known at the current time and it is not clear what the full
10   extent of the effects will be on recruitment, hiring, and retainment
     at CDCR. However, in relation to CDCR and the federally
11   mandated staffing levels, the COVID-19 pandemic may have
     several impacts as discussed below.
12

13           There may be a number of effects on the labor market for
     psychiatrists. For instance, changing certain professional licensure
14   requirements for health professionals, including psychiatrists, due
     to COVID-19 could result in an increase in supply. On the contrary,
15   due to the circumstances of COVID-19, psychiatrists, along with
     other healthcare workers, could be less likely to enter the workforce
16   for the short term due to quarantine, sickness, or taking care of their
     family. This could make meeting staffing requirements more
17   difficult for CDCR.

18           In addition, the demand for psychiatrists at CDCR may be
     impacted. For example, a reduction in the inmate population may
19   aid in CDCR reaching its mandated staffing levels of psychiatrists.

20           If CDCR's inmate population were to decrease, then CDCR's
     staffing levels, which are based on the size of the mental health
21   inmate population, would increase. According to CDCR's COVID-
     19 preparedness, as of April 13, 2020 CDCR expedited the release
22   of approximately 3,500 inmates. If these types of inmate population
     reductions were to continue, it is possible that CDCR's mental
23   health inmate population based psychiatrist staffing levels could
     increase.

24   _____

25       [4] It is not entirely clear whether defendants also rely on the fact that the Special Master's
     Report itself was not circulated to the parties before it was filed as part of his submission of the
26   EmployStats' Report to support their contention they should be given thirty days to respond.  The
     Special Master's Report is in the nature of a cover report containing relevant background material
27   about the process that led to submission of the EmployStats' Report and defendants have given no
     indication that anything in the Special Master's Report is itself objectionable.
28

In addition, it is possible that CDCR psychiatrists will place greater emphasis on their office space and facility working conditions. As described in this report, CDCR psychiatrists reported that their office space was inadequate prior to the COVID-19 pandemic. The psychiatrists' dissatisfaction in relation to office space is likely to increase during the pandemic as cleaning procedures and safety equipment will need to be implemented and concerns regarding employee health rise.

ECF No. 6695 at 194. With respect to these comments, as defendants have repeatedly suggested, managing the prison population in light of COVID-19 is the "new normal" for which there currently is no horizon. At the September 10, 2020 hearing now set on enforcement of the October 10, 2017 order, all parties will be given a full and fair opportunity to present both evidence and argument concerning the impact of the COVID-19 pandemic on appropriate remedies for ongoing violations of that order. The parties are cautioned that the court is not inclined to find the COVID-19 pandemic is grounds for significant permanent substantive changes in court-approved remedies in this case, particularly with respect to staffing, given that the previously court-approved remedies establish a constitutional floor. *See* ECF No. 5711 at 14-19 (discussing extensive record showing staffing ratios based on constitutional standards and "heavy burden" faced by defendants in seeking to change those ratios).

For all the foregoing reasons, with the limited exception of the comments regarding COVID-19 added on page 194, the time for filing objections to the Special Master's Report and the accompanying EmployStats' Report expired ten days after those reports were filed on May 29, 2020. The court anticipates issuing a further order shortly on the Special Master's Recommendation that the EmployStats' Report and its findings and recommendations be adopted. Although defendants' June 29, 2020 objections, ECF No. 6744, are untimely, in view of the clarification this order provides the court will consider those objections. Plaintiffs' July 2, 2020 request to respond to defendants' objections, ECF No. 6749, is granted and the court will consider any response filed by plaintiffs on or before August 15, 2020. Defendants' objection to the COVID-19 Considerations added to the EmployStats' Report after defendants responded to the

/////

/////

5

1   draft report and any response by plaintiffs will be considered in connection with enforcement

2   proceedings on the October 10, 2017 order, now set for September 10, 2020.

3           IT IS SO ORDERED.

4   DATED:  July 30, 2020.

5

6   _____
    CHIEF UNITED STATES DISTRICT JUDGE
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28