UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

RALPH COLEMAN, et al.,

        Plaintiffs,

    v.

GAVIN NEWSOM, et al.,

        Defendants.

No. 2:90-cv-0520 KJM DB P

ORDER

As the court required, the Special Master has filed a report and recommendations on proposed processes for regular administrative updating of the court-approved remedy in this action, including a revised proposal for the updating process. *See* Special Master's Amended Report on the Proposed Processes for Updating the 2018 Program Guide Revision, Related State Regulations, and Related Additions or Changes to the California Department of Corrections and Rehabilitation's Department Operations Manual (CDCR DOM) (Updating Process Report), ECF No. 6476.[1]  Defendants have filed a response to the report, objecting to some of the recommendations it contains.  ECF No. 6506.[2]

---

[1] The Special Master originally filed his Updating Process Report on February 14, 2020.  ECF No. 6466.  He filed the amended Updating Process Report on February 20, 2020, and the court refers to the amended version throughout this order.

[2] Defendants' response, filed March 16, 2020, represents that it is responsive to the original Updating Process Report.  *See*, *e.g.*, ECF No. 6506 at 1.  The court construes defendants' response as a response to the amended Updating Process Report.

The Special Master makes three recommendations:  that the court (1)  adopt his revised proposal attached as Exhibit 1 to the Updating Process Report "as the process for annual administrative updates to the Program Guide; (2)  require defendants to provide to plaintiffs and the Special Master any proposed new or substantive amendments to Program Guide-related regulations ninety days in advance of the public comment period; and (3) require further work under the supervision of the Special Master "to determine what processes will be conducted during" the ninety day advance notice period, and require the Special Master to report the results of this work within thirty days.  ECF No. 6476 at 14.[3]

Defendants' remedies for the Eighth Amendment violations in custodial practices are found in state regulations and provisions of the CDCR DOM. as well as departmental memoranda and court orders.  The custody remedies are set out in a list styled "Negotiated Court-Ordered Remedial Measures Related to Custodial Issues Not Included in the 2018 Program Guide," ECF No. 6431 at Appendix A, that the court approved on February 11, 2020 as the complete list of custodial remedies.  ECF No. 6460 at 2.  Throughout this order, this list is referred to as the Compendium of Custody Related Remedial Measures. Defendants object that the proposed process should not apply to the remedies contained in the Compendium of Custody Related Remedial Measures, found in state regulations, memoranda and court orders and not in the Program Guide itself, and they restate their previous objections to the recommendation that they be required to give plaintiffs and the Special Master ninety days advance notice of any proposed Program Guide-related rule making.  ECF No. 6506 at 2-3.

Having reviewed the Updating Process Report and defendants' response, the court makes the following findings and orders.

/////

/////

/////

---

[3] References to page numbers in documents filed in the Court's Electronic Case Filing (ECF) system are to the page number assigned by the ECF system and located in the upper right hand corner of the page.

I.      BACKGROUND

A. Remedial Plans Covered By Updating Process Report

Plaintiffs are a "class of seriously mentally ill persons in California's prisons." *Brown v. Plata*, 563 U.S. 493, 506 (2011). "In 1995, the court found defendants in violation of their Eighth Amendment duty to provide [the plaintiff class] with access to adequate mental health care. *Coleman v. Wilson*, 912 F.Supp. 1282 (E.D. Cal. 1995). The court also found Eighth Amendment violations in certain custodial practices as applied to these inmates, including use of force, segregated housing and mechanical restraints. *See id*." July 9, 2019 Order, ECF No. 6214, at 1. Over the course of twenty-three years, the court has given final approval to a comprehensive set of plans for remediation of the identified violations.

> The defendants' remedial plan for the identified violations in the delivery of mental health care to California's prisoners is the California Department of Corrections and Rehabilitation (CDCR) Mental Health Services Delivery System (MHSDS) Program Guide (Program Guide). *See* ECF No. 4361 at 2-6 (discussing history of development of Program Guide as remedial plan for identified constitutional violations). Defendants' proposed remedies for the Eighth Amendment violations in custodial practices are primarily found in state regulations and provisions of the CDCR Department Operations Manual (D.O.M.). *See, e.g.*, ECF No. 5190 (defendants' revised policies and plans for use of force and segregated housing involving class members, required by court order, ECF No. 5131 at 72-74). Other remedial measures include a court-ordered mental health staffing plan, *see* ECF Nos. 3613 at 2 (court order), 3693 (staffing plan), regular mental health bed projections, *see* ECF No. 3629, and concomitant planning for and building of necessary mental health beds and clinical treatment space, *see, e.g.*, ECF No. 3556.

*Id*. at 2. The Special Master has provided the Updating Process Report after nearly three years of effort to update the Program Guide to reflect current policies and practices, to achieve the filing of current comprehensive remedial documents on the record, and to develop processes for regular administrative updates to those remedial documents. *See* ECF No. 6476 at 2-8. The Updating Process Report is focused on the first two remedial documents: the Program Guide and the Compendium of Custody Related Remedial Measures.

B. Relevant History

A number of relevant events preceded the Special Master's submission of the Updating Process Report now before the court. In December 2017, the court ordered the parties,

3

1  supervised by the Special Master, to complete and file, on or before March 31, 2018, a "current

2  consolidated Program Guide "incorporating all court-ordered modifications required since" the

3  Program Guide was approved in March 2006.  December 15, 2017 Order, ECF No. 5750, at 4.

4  After receiving extensions of time, on June 29, 2018, the Special Master filed three proposed

5  Program Guide appendices and a report containing four recommendations.  ECF No. 5844.  On

6  July 20, 2018, the court required the Special Master to "file the entire current consolidated

7  Program Guide, including the 2009 Revised Program Guide, proposed Appendices A and B,

8  thereto" and an index to Appendix A.  ECF No. 5860.  On July 30, 2018, the Special Master filed

9  the entire current consolidated Program Guide with five appendices.  ECF Nos. 5864, 5864-1.

10  The current consolidated Program Guide is denominated the Program Guide 2018 Revision,

11  ECF No. 5864-1, and is referred to as the 2018 Program Guide Revision.

12          One of the recommendations in the Special Master's June 29, 2018 Report was the

13  same as his current second recommendation, that defendants be required to give plaintiffs and

14  Special Master notice ninety days ahead of any public comment period for "'any proposed

15  Program Guide-related regulations. . . .'"  *Compare* ECF No. 6476 at 14 *with* ECF No. 5844

16  at 10.  Defendants objected to this recommendation, *see* ECF No. 5862 at 4, while plaintiffs

17  supported it, *see* ECF No. 5875 at 2.

18          In July 2019, this court issued a comprehensive order giving final approval to the

19  2018 Program Guide Revision and Appendices A through D, ECF No. 5864-1, and directing the

20  preparation of the document identifying all custody related remedial measures, now referred to as

21  the Compendium of Custody Related Remedial Measures.  July 9, 2019 Order, ECF No. 6214

22  at 19.[4]  In addition, the court renewed its direction, with refinements, for development of an

23  "improved method" for regular administrative updates to the Program Guide as well as "a process

24  for updates and revisions to any part of the remedy found in state regulations and/or provisions of

---

25  [4] The court's initial order was filed July 3, 2019.  ECF No. 6211.  An amended order was issued
26  July 9, 2019 to clarify the 2018 Program Guide Revision Appendices approved by the order.  *See*
   ECF No. 6214 at 1 n.1.  The Special Master in his Updating Process Report refers to both orders,
27  as he correctly observes that for purposes of his Updating Process Report the amended order
   made no substantive changes to the initial order.  *See* ECF No. 6476 at 1 n.2.  For ease of
28  reference, in this order all citations to those directives are to the amended order, ECF No. 6214.

the" CDCR DOM. *Id*. This latter part of the July 2019 order led to the Updating Process Report currently before the court.

In the July 2019 order, the court declined to reach the Special Master's recommendation concerning advance notice of proposed regulatory changes. The court found the "recommendation recognizes the complexity of this case, the law of the case and the need to protect the court-ordered remedy to avoid material modification of the remedy through the state regulatory process and without approval by this court" and that it was "consistent with the court's primary purpose in requiring submission of an updated Program Guide: ensuring ease of reference and agreement on the contents of the complete remedy, covering mental health services and custodial considerations as well." *Id*. at 15-16. However, the court found the recommendation premature "given the complex issues implicated by the interface of the Program Guide, state regulations and/or the D.O.M., and the range of work that remains to be done in the All-Parties Workgroup." *Id*. at 16. The court referred the matter back to the All Parties Workgroup with the following direction:

> With its eye firmly focused on the twin needs to protect the approved remedy and preclude disagreement about all of the remedy's contours as the case moves through the final stages of remediation - - compliance, enforcement as necessary, and durability – the court will defer resolution of the fourth recommendation at this time. Rather, this matter, as indicated and as consistent with the Special Master's second recommendation, will be referred back to the Workgroup to finalize a process for updates to the remedy as contained in the 2018 Program Guide Revision. The process for updating and revising any parts of the remedy not incorporated in the 2018 Program Guide Revision, and instead found in state regulations and/or the D.O.M., also will be referred back to the Workgroup to be developed under the guidance of the Special Master.

*Id*.

In its July 2019 order, which was a comprehensive order, the court "clarifie[d] for the record that remedial planning for this action is substantially complete" and also made clear that, with the submission of the additional document identifying custodial remedial measures not included in the Program Guide, remedial planning for this action is complete "except for specific disputes identified in th[e] order" and thereafter the full content of the remedy would be "made

/////

5

1   fully transparent and serve as a reference point for the court and the parties going forward."

2   *Id*. at 4-5.[5]

3           The court identified the outstanding disputes as limited to:  (1) a final proposed

4   policy for use of telepsychiatry; (2) submission of a final proposed addendum for exceptions to

5   the twenty-four hour transfer timeline to mental health crisis beds (MHCBs); (3) setting a date

6   certain for "taking all temporary MHCBs offline and, as necessary, replacing them with

7   permanent licensed MHCB units"; and (4) use of therapeutic treatment modules (TTMs) in

8   inpatient settings.  *Id*. at 18.  Since the court's July 2019 order, the first two issues have been

9   resolved.  *See* ECF Nos. 6539 (approving CDCR's Telepsychiatry Policy); 6295 (approving

10  addendum for exceptions to MHCB twenty-four hour transfer timeline requirement).  In addition,

11  in its order, the court noted the ongoing review of certain policies to determine whether they

12  should be included in the Program Guide, and clarification of interpretation of some Program

13  Guide revisions, but beyond those specifically identified disputes determined that "no substantive

14  disputes regarding the provisions of the 2018 Program Guide Revision" remained.  *Id*. at 18.

15          The court initially directed that proposed processes for regular administrative

16  updates to the Program Guide and the custodial remedies were due November 15, 2019.  ECF

17  No. 6214 at 19.  Shortly before the November due date, the Special Master and the plaintiffs

18  realized that defendants intended to "include mental health regulations into the HC DOM [Health

19  Care Department Operations Manual]" administered by the California Correctional Health Care

20  Services (CCHCS) under the auspices of the Receiver in *Plata v. Newsom*, Case No. C01-1351

21  JST (N.D. Cal.).  ECF No. 6476 at 6.  In its order granting an extension of time until February 14,

22  2020 to file the proposed processes, the court made clear it was not signaling it would "'accept

23  any particular proposal to integrate mental health regulations, including but not limited to

24  provisions of the Program Guide, into the HC-DOM.'"  *Id*. at 8 (quoting ECF No. 6441 at 6).

25  The court understands defendants have not renewed the HC-DOM proposal; the Special Master

26

27  ───────────────
    [5] The court also made clear that substantial completion of remedial planning was "separate and
    apart" from findings regarding implementation of the remedy, and that "[t]he record makes clear
28  . . . a number of implementation tasks remain."  *Id*. at 5.  That finding is confirmed by this order.

specifically notes it would likely prompt an "arduous and lengthy process," the time for which

has not arrived, and that the issue has been "left for another day."  ECF No. 6476 at 11.  If

defendants plan to revive such a proposal during the pendency of this action, the court directs

defendants to provide timely advance notice to the Special Master and plaintiffs, who would need

to be fully involved in all discussions of the proposal.

Defendants filed the Compendium of Custody Related Remedial Measures on

December 19, 2019.  ECF No. 6431.  On the same date, the Special Master filed a report

recommending the court approve and adopt the list.  ECF No. 6432.  The Compendium of

Custody Related Remedial Measures is a list styled "Negotiated or Court Ordered Remedial

Measures Related to Custodial Issues Not Included in the 2018 Program Guide Revision" that is

divided into two sections:  the first is a list of regulatory measures and policy memoranda, and

the second is a list of court orders.  ECF No. 6431 at 4-8.  On February 11, 2020, the court

approved the list and adopted it "as the complete list of remedies in this action related to custodial

measures not already included in the Program Guide."  ECF No. 6460 at 2.  The court required

that the list "be updated and filed annually simultaneously with the updated Program Guide,

consistent with the process and on the schedule to be proposed by the Special Master on or before

February 14, 2020."  *Id*.

II.     DISCUSSION

The Special Master recommends adoption of the following updating process:

> Whenever a party presents a proposed policy to the other party and
> the Special Master, the presenting party shall:  (1) indicate whether
> the proposed policy would revise the operative version of the
> Program Guide, (2) provide a written rationale for the proposed
> changes and any other relevant context necessary to understand the
> proposed policy, and (3) state whether members of the Special
> Master team have had an opportunity to review and provide input
> regarding the proposed policy.

> The responding party will have 30 days to provide written comments,
> which shall include, but not be limited to, the party's position
> regarding whether the policy is Program-Guide related, as well as
> proposed alternative language.  The responding party may request an
> extension if required, that will not exceed 21 days.  Within 21 days
> of receipt of the responding party's comments, the parties, along with
> the Special Master, shall meet and confer to determine if agreement

can be reached on the substance of the policy as well as its inclusion in the Program Guide.

If an agreement is not reached during the first meet and confer, the party that presented the proposed policy has 45 days to request, in writing, another meet and confer session. The responding party will submit its final position in writing within 21 days of the request for a second meet and confer. If the parties believe that a second meet and confer is warranted, that further session will be scheduled within 21 days of receipt of the responding party's final position.

If the parties cannot reach an agreement following the second meet-and-confer session, they will submit their positions and proposed language to the Special Master for review within 30 days. The Special Master will, within 30 days of receiving the parties' positions, provide the parties with his guidance and recommendation. If the parties are unable to reach agreement after receipt of the Special Master's input, the Special Master will file a recommendation with the Court within 45 days.

If an agreement is reached through the above-outlined process, the parties will submit the agreed-upon modification to the Court for approval through a filing capturing all agreed-upon policy revisions reached in the prior 12 months. This modification will be filed annually beginning March 1, 2021.

By mutual agreement, any deadlines in this process may be extended by a reasonable amount of time to ensure that complex and meaningful negotiations are not arbitrarily truncated. If one party requests an extension of time, but the other party does not agree that one is warranted, the parties will submit the dispute to the Special Master for resolution.

ECF No. 6476 at 16-17. For the reasons explained below, the court now gives provisional approval to a modified version of the process proposed by the Special Master.

A. Application of the Proposed Updating Process to Custodial Remedies

Defendants first object that the proposed updating process should not apply to the Compendium of Custody Related Remedial Measures. *See* ECF No. 6506 at 2. Defendants object that "[p]laintiffs and the Special Master insist that the new Program Guide includes all negotiated or Court-ordered remedial measures adopted in this action and that are not included in the 2018 Program Guide Revision." *Id*. Consistent with the court's direction to create the list of custody remedies, the Compendium of Custody Related Remedial Measures consists by definition of measures not included in the Program Guide. Defendants contend they "cannot agree" that the remedial measures in the Compendium of Custody Related Remedial Measures

"establish the constitutional floor for compliance purposes." *Id*. at 4.[6]  They contend many of the policies and regulations have general application to all CDCR inmates and, that "[w]hile all of these policies are important for running a correctional facility, none are required for an inmate mental health system to meet the Eighth Amendment standard." *Id.*  Therefore, according to defendants, the remedial measure in the list "do not 'represent *defendants'* assessment . . . of what is required to remedy the Eighth Amendment violation in this action'. . ., and should not be part of the Program Guide." *Id*. at 4-5 (quoting ECF No. 4631 at 3 (emphasis in original)).  Defendants' contention misses the mark.  All of the remedial measures in this action are grounded in the requirements of the Eighth Amendment, and defendants have been tasked with planning those measures, including Program Guide provisions, *see id*., as well as the revised custodial policies and practices, *see*, *e.g.*, August 11, 2014 Order, ECF No. 5196 (discussing April 10, 2014 Order, ECF No. 5131, directing defendants to work under Special Master's guidance to revise several custodial policies and practices required to remedy constitutional violations identified in this action).

The court's direction to develop a process for regular updates to the Program Guide and the Compendium of Custody Related Remedial Measures may have resulted in a conflation of the two sets of remedial plans and a suggestion that both now be encompassed entirely in the annually updated Program Guide.  *See, e.g.,* ECF No. 6476 at 10-11 (reporting that on day report was filed, defendants suggested proposed updating processes should not apply to Compendium of Custody Related Remedial Measures and, therefore, "the parties were unable to stipulate to an agreed upon process for annual administrative updates to the Program Guide in its entirety.").  The court now clarifies that the Compendium of Custody Related Remedial Measures is not, by reason of any of this court's prior orders, required to be incorporated into the Program Guide.  Instead, beginning on September 1, 2021[7] and continuing annually

---

[6] Defendants contend obliquely "that that floor changes annually." *Id*. at 4.  It is unclear whether they are suggesting the constitutional floor changes annually or, instead, that the applicable regulatory and policy landscape changes annually.  The court presumes the latter.

[7] The Special Master recommends an initial filing date of March 1, 2021.  In order for a full year to precede the next updates, the deadline will be set at  September 1, 2021.

9

1    thereafter until further order of the court, both the Program Guide and the Compendium of

2    Custody Related Remedial Measures shall be filed together on the docket as one docket entry

3    entitled "Annual Update to Program Guide and Compendium of Custody Related Remedial

4    Measures" (hereafter "Annual Update"), with the updated Program Guide entered as one

5    attachment to the docket entry and the updated Compendium of Custody Related Remedial

6    Measures entered as a separate attachment to the same entry.

7            Defendants' objection also has a substantive component.  As noted, they argue that

8    many of the custodial policies and regulations in the Compendium of Custody Related Remedial

9    Measures apply to all CDCR inmates, not just members of the plaintiff class.  And they say

10   they need flexibility in amending those measures in order to properly manage their prison

11   system.  This contention misses the mark.

12           Defendants have adopted and implemented numerous custodial regulations,

13   policies and practices as part of the remedial process in this action, most recently, but not

14   exclusively, as the result of litigation before the court in 2013 and 2014 over use of force and

15   other custodial practices applied to class members.  *See*, *e.g.*, August 11, 2014 Order, ECF

16   No. 5196.  Those remedies were required by the Eighth Amendment.  *See*, *e.g.*, ECF No. 5131,

17   at 2-3 (order on plaintiffs' May 9, 2013 motion related to housing and treatment of class

18   members in administrative segregation, ECF No. 4580, finding defendants had not yet

19   "sufficiently remedied Eighth Amendment violations in use of force, disciplinary measures, and

20   segregated housing relative to class members" and applying Eighth Amendment standards to);

21   and, *e.g.*, 13 (discussing what "remediation of the identified Eighth Amendment violation"

22   requires).  Consistent with the legal principles the court discussed in its April 24, 2020 order,

23   defendants in this action "may not rely solely on state law to take unilateral action that

24   undermines" those remedies.  ECF No. 6639 (citing *Hook v. Arizona Dept. of Corrections*,

25   107 F.3d 1397, 1402-03 (9th Cir. 1997) and *Valdivia v. Schwarzenegger*, 599 F.3d 984, 995

26   (9th Cir. 2010)).  Whether or not some or all of the regulations or policies extend more broadly,

27   to the extent they are part of the court-ordered and/or approved remedies in this action, they

28   cannot be modified with respect to members of the plaintiff class without approval of this court.

1    The Special Master recommends the same process be used to complete the annual

2    updates to both the Program Guide and the Compendium of Custody Related Remedial

3    Measures.  Defendants have not shown why that process is not appropriate for proposed updates

4    to the items listed in the Compendium of Custody Related Remedial Measures insofar as those

5    items apply to or affect class members and are part of the court-ordered remedy in this action.

6    Accordingly, the proposed updating process will be modified to reflect that it applies to both the

7    Program Guide and the Compendium of Custody Related Remedial Measures and, so modified,

8    will be adopted.

9                        B.   Ninety-Day Notice of Proposed Updates to Remedy-Related Regulations

10    Defendants also object to the Special Master's recommendation that plaintiffs and

11    the Special Master be given ninety days' notice prior to the public comment period for

12    consideration of either amendments to existing Program Guide-related regulations or new

13    enactment of Program Guide-related policies into state regulation.  To the extent defendants

14    propose to use the state regulatory process to make substantive changes to the court-ordered

15    remedy in this action, the same legal principles discussed above apply:  defendants may not rely

16    on provisions of state law to unilaterally make substantive changes to the court-ordered remedy in

17    this case.  Defendants must obtain court approval, either by presenting a stipulation of the parties

18    approved by the Special Master, or by motion based on Federal Rule of Civil Procedure 60,

19    before making any substantive change to the remedy in this action.  *See* ECF No. 6639

20    (discussing *Hutto v. Finney*, 437 U.S. 678, 690 (1978) and *Frew ex rel. Frew v. Hawkins*,

21    540 U.S. 431, 443 (2004)).

22    In the interests of judicial economy and efficiency, to ensure that no substantive

23    changes to the remedy in this action are made without court approval, the court will require any

24    party proposing a regulatory, rule-making or policy change that would affect one or more

25    provisions of either the Program Guide or the Compendium of Custodial Remedial Measures to

26    provide advance notice of such proposal to the Special Master and the opposing party as follows.

27    In the case of amendments to, or enactments of, state regulations, the notice shall be given not

28    less than ninety days prior to the public comment period for consideration of such amendments or

11

1   enactments.  In the case of any proposed rule-making or policy action not subject to a public

2   comment period, the notice shall be given not less than ninety days prior to implementation of the

3   proposed change.  The notice shall be accompanied by a statement of the proposing party's view

4   of whether the proposed rule, regulation or policy or amendment thereto, would, if adopted, effect

5   a material modification  of the court-approved remedy in this action,[8] and, if so, which part or

6   parts of the remedy would be affected.  Within fourteen days after receiving a notice, the Special

7   Master shall make a determination whether the proposal would make a material modification of

8   the court-approved remedy in this action and shall notify all parties of his decision with a

9   statement of reasons therefor.

10          All proposed changes deemed by the Special Master not to effect a material

11  modification of the remedy in this case may proceed without going through the updating process

12  provisionally approved by this order.

13          All proposed changes deemed by the Special Master to effect a material

14  modification of one or more parts of the remedy in this case shall proceed through the updating

15  process provisionally approved by this order.

16          Any party may seek reconsideration of a decision by the Special Master

17  concerning whether or not that a proposed change is a material modification of the remedy in this

18  case by submitting a request for reconsideration to this court within five days of that decision,

19  accompanied by the proposed change, the Special Master's decision and statement of reasons, and

20  a short statement presenting the basis on which reconsideration is sought.  The proposed change

21  may be submitted to the updating process provisionally approved by this order at any time after

22  the Special Master makes his decision, including while a request for reconsideration is pending

23  before this court, at the election of the party proposing the change.  All proposed changes

24  determined to be a material modification of the remedy in this case by the Special Master, as

---

[8] In a case of this complexity, at this stage, "material modifications of the court-approved remedy" are not susceptible to comprehensive definition.  The remedial orders of this court and the Special Master's experience of twenty-four years' guiding development of the remedy and monitoring its implementation as well as the good faith of all parties and common sense application of the terms "material" and "modification" will be critical to development of a working definition of the phrase as understood and shared by all stakeholders.

1    described above, or by this court after reconsideration must proceed through the updating process

2    provisionally approved by this order before inclusion in the Annual Update and, if such changes

3    are implemented after proceeding through the process, must be noted as substantive changes

4    affecting the remedy at the time the Annual Update is filed.  The Annual Update will guide

5    implementation and, as necessary, enforcement of full remediation in this action.

6                            C.  ADDITIONAL MATTERS

7             As with many of the other remedial steps previously taken in this action,

8    implementation of the updating process the court provisionally approves in this order will require

9    a trial period to ensure the process in fact serves its purpose and does not unduly constrain

10   defendants' operation of aspects of prison management not governed by the remedy in this case.

11   It will likely take time to develop a process for determining when and whether proposed

12   amendments to more comprehensive regulations listed in the Compendium of Custody Related

13   Remedial Measures will affect class members.  There may be state regulations, provisions in

14   departmental operations manuals maintained by either CDCR or the Department of State

15   Hospitals (DSH), or other CDCR or DSH policies that are intertwined with or directly affect

16   implementation or operation of provisions of the Program Guide; if so, those provisions also

17   should be updated in accordance with the process provisionally approved by this order.  In

18   addition, any or all defendants may, in the regular course of their duties, seek to promulgate new

19   regulations or other policy provisions that could impact one or both of the remedial plan

20   documents the court addresses in this order; as discussed above, such new regulations or policy

21   provisions would also have to proceed through the  update process provisionally approved by this

22   order to ensure they do not work a substantive change in the remedy in this case or, if they do,

23   that such change is approved in advance by the court.

24             To be clear, the court requires an annual updating process for two purposes:  first,

25   to ensure that complete updated remedial documents are filed annually so the scope of the remedy

26   is transparent and readily accessible to all; and second, to limit, to the extent possible, potential

27   conflicts between the court-ordered remedy in this case and provisions of state law that affect the

28   operation of that remedy.

1    The court does not intend by this order to create a cumbersome layer of process on

2    top of the challenging road to complete implementation of the remedy that lies ahead.  Rather, the

3    court's focus remains on complete remediation of the Eighth Amendment violations identified in

4    this action twenty-five years ago.  It is the court's view that defendants have, after years of

5    laborious and extended effort under the guidance of the Special Master and with input from

6    plaintiffs, achieved a set of comprehensive remedial plans.  Complete remediation should be

7    furthered by limiting further substantive changes to those plans, if not avoiding completely, while

8    allowing defendants the latitude to make adjustments as necessary to both achieve full

9    implementation of those plans and continue effective management of their prison and hospital

10   systems.  It is the court's hope and expectation that after one year of working with the provisional

11   process it adopts here, the court, Special Master and the parties will gain a sense of what

12   constitutes a material modification of the remedy in this action and the number of those will be

13   few, easing the way to a streamlined updating process.  *See* note 8 *supra*.

14        As the court discusses in its July 28, 2020 order, ECF No. 6791, and as must be

15   acknowledged here, the COVID-19 pandemic has caused defendants to temporarily depart from a

16   number of Program Guide requirements.  *See* ECF No. 6791 at 2.  As the court explained in that

17   order, the Program Guide is based in Eighth Amendment requirements and, although the court

18   has yet to issue an opinion on whether and if so for how long the pandemic might justify

19   emergency departures from Eighth Amendment requirements, the Program Guide and other

20   court-approved remedies provide the Eighth Amendment floor.  Defendants cannot subject class

21   members indefinitely to conditions that violate the Eighth Amendment.  "'The ultimate duty of

22   the federal court to order that conditions of state confinement be altered when necessary to

23   eliminate cruel and unusual punishments is well established.'"  *Coleman v. Brown*, 28 F.Supp.3d

24   1068, 1077-78 (E.D. Cal. 2014) (quoting *Spain v. Procunier*, 600 F.2d, 189, 194 (9th Cir. 1979)).

25        For these reasons, the court will provisionally approve the updating process for the

26   first year and the court will direct the parties to file a joint submission on the efficacy of the

27   process on September 1, 2021, with input from the Special Master, along with their submission of

28   /////

14

1    the first Annual Update to the Program Guide and the Compendium of Additional Remedial

2    Measures.  With their joint submission, the parties may propose amendments to the process.

3          III.     CONCLUSION

4          The court's purpose in requiring the filing of an Annual Update to the Program

5    Guide and the Compendium of Custody Related Remedial Measures, and for requiring a process

6    for accomplishing those annual updates and ensuring proposed material modification changes are

7    fully vetted first, is to ensure the contents of all components of the remedy in this action are "fully

8    transparent" and available to "serve as a reference point for the court and the parties going

9    forward."  ECF No. 6214 at 5.  The court has approved and adopted both the 2018 Program Guide

10   Update and the Compendium of Custody Related Remedial Measures.  *See* ECF Nos. 6214, 6460.

11   In provisionally approving the updating process described here, the court reinforces that the

12   substance of the remedy in this action, which has taken decades to complete and is not yet fully

13   implemented, may not be changed without leave of court.  At the same time, the updating process

14   will give defendants the flexibility necessary to update procedures that do not effect a material

15   modification of the remedy going forward.

16         In accordance with the above, IT IS HEREBY ORDERED that:

17       1.   The Special Master's Amended Report on Proposed Processes for Updating the 2018

18          Program Guide Revision, Related State Regulations, and Related Additions or

19          Changes to the CDCR Operations Manual, ECF No. 6476, and the recommendations

20          contained therein are adopted to the extent consistent with this order.

21       2.   The following process is provisionally approved and shall be followed for one year in

22          updating the Program Guide, ECF No. 5864-1, and the Compendium of Custody

23          Related Remedial Measures, ECF No. 6431:

24             All proposed new regulations or policies, and all proposed regulatory
               or policy changes that may affect the court-approved remedy in this
25             action shall be presented to the Special Master.  In the case of
               proposed regulatory changes or enactments, this presentation shall
26             be made not less than ninety days' notice prior to the public comment
               period.  In the case of other proposed changes not subject to a public
27             comment period, defendants shall give the Special Master not less
               than ninety days' notice prior to implementation of any proposed
28             rule-making or policy action that would affect one or more of the

remedial measures the court has approved and ordered implemented. The notice shall be accompanied by a statement of the proposing party's view of whether the proposed rule, regulation or policy, or amendment thereto, would, if adopted, be a material modification of the court-approved remedy in this action, and, if so, and which part or parts of the remedy would be affected. Within ten days, the Special Master shall make a determination whether the proposal would make a material modification of the court-approved remedy in this action and shall notify the proposing of his decision with a statement of reasons therefor.

The Special Master's decision that a proposed change would not make a material modification of the remedy in this case shall be final and binding on all parties, and any such proposed change may proceed without further vetting through the updating process described in this order. Any proposed change the Special Master determines would make a material modification of the remedy in this case shall proceed through the updating process below.

Any party may seek reconsideration of the Special Master's decision that a proposed change would make a material modification of the remedy in this case by submitting a request for reconsideration to this court within five days of that decision, accompanied by the proposed policy change, the Special Master's decision and statement of reasons, and a short statement presenting the basis on which reconsideration is sought. The proposed change may be submitted to the update process below at any time after the Special Master's decision is made, including while a request for reconsideration is pending before this court, at the election of the party proposing the change. Any proposed change the Special Master or the court after reconsideration determines would be a material modification of the remedy in this case must proceed through the update process below before incorporation into the Annual Update to the Program Guide and the Compendium of Custody Related Remedial Measures and must be noted as a substantive change affecting the remedy at the time the Annual Update is filed.

In order to be included in an Annual Update, all proposed changes that the Special Master or the court after reconsideration determine would be a material modification of the remedy in this case must proceed through the following update process. To commence the update process, the proposed change shall be presented to the other party. The presenting party shall: (1) indicate whether the proposed policy would revise the operative version of the Program Guide or the Compendium of Custody Related Measures, (2) provide a written rationale for the proposed change and any other relevant context necessary to understand the proposed policy, and (3) include the Special Master's short statement of reasons why the change is substantive.

The responding party will have 30 days to provide written comments, which shall include, but not be limited to, the party's position regarding how the proposed policy would affect either the Program Guide or the Compendium of Custody-Related Measures and which part or parts thereof; as well as proposed alternative language. The

16

responding party may request an extension if required, that will not exceed 21 days. Within 21 days of receipt of the responding party's comments, the parties, along with the Special Master, shall meet and confer to determine if agreement can be reached on the substance of the policy as well as its inclusion in the Program Guide or the Compendium of Custody Related Measures.

If an agreement is not reached during the first meet and confer, the party that presented the proposed policy has 45 days to request, in writing, another meet and confer session. The responding party will submit its final position in writing within 21 days of the request for a second meet and confer. If the parties believe that a second meet and confer is warranted, that further session will be scheduled within 21 days of receipt of the responding party's final position.

If the parties cannot reach an agreement following the second meet-and-confer session, they will submit their positions and proposed language to the Special Master for review within 30 days. The Special Master will, within 30 days of receiving the parties' positions, provide the parties with his guidance and recommendation. If the parties are unable to reach agreement after receipt of the Special Master's input, the Special Master will file a recommendation with the Court within 45 days.

If an agreement is reached through the above-outlined process, the parties will submit the agreed-upon modification to the Court for approval through a filing capturing all agreed-upon policy revisions reached in the prior 12 months.

By mutual agreement, any deadlines in this process may be extended by a reasonable amount of time to ensure that complex and meaningful negotiations are not arbitrarily truncated. If one party requests an extension of time, but the other party does not agree that one is warranted, the parties will submit the dispute to the Special Master for resolution.

3. Beginning September 1, 2021, and continuing annually thereafter until further order of the court, the parties shall jointly file an updated Program Guide and an updated Compendium of Custody Related Remedial Measures, which shall be approved by the Special Master before filing, as one docket entry entitled "Annual Update to Program Guide and Compendium of Custody Related Remedial Measures," with the updated Program Guide entered as one attachment to the docket entry and the Compendium of Custody Related Remedial Measures entered as a separate attachment to the same entry.

/////

/////

/////

17

4.  With the September 1, 2021 updates, the parties shall separately file a joint submission, with input from the Special Master, on the efficacy of the updating process the court provisionally approves in this order together with, as appropriate, any proposed amendments to the process.  Thereafter, the court will give final approval to a process for updating the remedial plans covered by this order.

DATED:  August 1, 2020.

_____
CHIEF UNITED STATES DISTRICT JUDGE

18