,DONALD SPECTER – 083925
STEVEN FAMA – 099641
MARGOT MENDELSON – 268583
PRISON LAW OFFICE
1917 Fifth Street
Berkeley, California 94710-1916
Telephone: (510) 280-2621

CLAUDIA CENTER – 158255
DISABILITY RIGHTS EDUCATION
AND DEFENSE FUND, INC.
Ed Roberts Campus
3075 Adeline Street, Suite 210
Berkeley, California 94703-2578
Telephone: (510) 644-2555

MICHAEL W. BIEN – 096891
JEFFREY L. BORNSTEIN – 099358
ERNEST GALVAN – 196065
THOMAS NOLAN – 169692
LISA ELLS – 243657
JENNY S. YELIN – 273601
MICHAEL S. NUNEZ – 280535
JESSICA WINTER – 294237
MARC J. SHINN-KRANTZ – 312968
CARA E. TRAPANI – 313411
ALEXANDER GOURSE – 321631
AMY XU – 330707
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
Telephone: (415) 433-6830

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>   Plaintiffs,<br><br>   v.<br><br>GAVIN NEWSOM, et al.,<br><br>   Defendants. | Case No. 2:90-CV-00520-KJM-DB<br><br>**JOINT REPORT TO THE COURT PURSUANT TO ECF NO. 6793 REGARDING CERTIFICATION BRIEFING**<br><br>Judge: Hon. Kimberly J. Mueller |

# INTRODUCTION

On November 5, 2019, the parties submitted their respective positions on the need for certification of Defendants' data going forward after the October 2019 evidentiary hearing concerning the allegations in the Golding Report. *See* ECF Nos. 6383, 6384. The Court thereafter took the matter under submission. Order, ECF No. 6427 at 47 (Dec. 17, 2019).

At the July 17, 2020 quarterly status conference, Plaintiffs raised the certification issue again, and the Court, in response to Defendants' request, permitted the parties to engage in a short meet and confer process concerning any need for supplemental briefing on the pending data certification proposals. *See* Minute Order, ECF No. 6778 (July 21, 2020). The parties thereafter requested an additional two weeks to respond to the July 21 Order, which the Court granted. *See* Stip. & Prop. Order, ECF No. 6787 (July 24, 2020); Order, ECF No. 6793 (July 30, 2020). The purpose of the additional time was to allow the parties to meet and confer with the Special Master and his data expert, Dr. Daniel Potter, "to determine whether and to what extent Dr. Potter's work and opinions will touch on the issues of data integrity and certification." Stip. & Order, ECF No. 6793 at 2 (July 30, 2020).

Following the Court's order adopting the stipulation, the parties met and conferred on Thursday, July 30, 2020 and Monday, August 3, 2020, with the Special Master and Dr. Potter. Dr. Potter stated that he currently is becoming familiar with Defendants' data systems and has not started to work on those systems. He also explained that he will begin substantive review of and work on three components of Defendants' data: those related to CQIT, COVID-19, and the EOP ASU certification process.

Following the July 30 and August 3 teleconferences, the parties continued to meet and confer by email, but were not able to agree on a revised certification process, or portions thereof. Accordingly, the parties provide their respective positions on certification below, pursuant to the July 30 Stipulation and Order.

## I. Plaintiffs' Position

During the meet and confer process, Dr. Potter made clear that he is still engaged in preliminary steps of learning about and becoming familiar with Defendants' many data systems. *See* Decl. of Jessica Winter in Supp. of Jt. Report to Ct. Pursuant to ECF No. 6793 Regarding Certification Briefing, ¶¶ 2-3 ("Winter Decl."), filed concurrently herewith. He explained that because many of those systems are complicated as a result of the manner in which they were developed, the process so far has been slow. *Id.*, ¶ 3. At both teleconferences, Plaintiffs stated their position that Dr. Potter's role will not affect any certification process, at least for some time to come, both because it is still far from complete and because Dr. Potter does not intend to address in his initial work any of the many routine reports filed with the Court or submitted to the Special Master and Plaintiffs beyond data for CQIT, COVID-19, and the EOP ASU Hub certification process. *Id.*, ¶¶ 3, 6.

On Thursday, August 6, Defendants provided Plaintiffs with a certification proposal, which, they later stated, "took into account" Dr. Potter's role with regard to Defendants' data processes. *Id.*, Ex. 1 at 4, 5-6. Upon review, however, Plaintiffs noted to Defendants that with one minor exception, the substance of Defendants' "new" proposal matched exactly the proposal in their November 5, 2019 briefing. *Id.* at 4. The one exception is that Defendants agreed to include desert transfer reporting in their list of data reports to be certified. *Compare id.* at 3-4, *with* Defs' Resp. to Plfs' Proposals for Certification of Data, ECF No. 6384 at 5-6 (Nov. 5, 2019). Given the lack of changed circumstances, Plaintiffs repeated that there is no need for further briefing on the proposals for a certification process. Winter Decl., Ex. 1 at 3. Plaintiffs also asked Defendants to identify any other substantive difference they intended by providing their August 6 proposal. *Id.* at 4. Plaintiffs noted the limitations of Dr. Potter's role, the fact that Plaintiffs' November 2019 certification briefing specifically stated that the formality of a given certification could vary with context, and that Plaintiffs had agreed to meet and confer, under the supervision of the Special Master, to resolve disputes about the nature of

1 certifications in particular contexts.  *Id.* at 8; *see* Plfs' Certification Proposal in Resp. to
Court's Oct. 23, 2019 Bench Ruling, ECF No. 6383 at 1, 10, 11 (Nov. 5, 2019).  Plaintiffs also confirmed, consistent with their position in the November 2019 briefing, that Defendants' responses to certain ad hoc data requests—such as during a workgroup or policy meeting—need not be certified.  *See id.* at 10, 11 (stating that ad hoc data requests on monitoring tours need not be certified formally, so long as the sponsor of that data is available to provide information); Winter Decl., Ex. 1 at 8.  Finally, Plaintiffs confirmed that if and when Dr. Potter certifies particular data points, his certification will be sufficient, so long as Defendants agree to disclose and recertify any time those data points are changed.  *Id.* at 3.

On the evening of Thursday, August 6, Defendants first stated their position that additional briefing on certification was needed, notwithstanding that when pressed they were not able to identify a single way in which their "new" proposal differed from their November 2019 proposal (other than the desert transfer reporting piece).  *Id.* at 3-4.  Plaintiffs also pointed out that although Defendants stated their August 6 proposal took Dr. Potter's statements into account, contrary to Dr. Potter's explanation that any good business rules would incorporate a description of significant exclusions from the data presented, Defendants' August 6 proposal, like their November 2019 proposal, failed to incorporate that element of certification.  *Id.* at 3.  And Despite requests for additional information concerning what subjects Defendants believed needed additional briefing, Defendants did not provide a statement of their position until 2:44pm on August 7.  Winter Decl., ¶ 8.

Defendants' attempt at this late hour to spin this limited-scope meet and confer process into a second bite at the apple is a transparent delay tactic.  That Defendants have used this process to attempt to repackage their November 2019 proposal only underscores that they are diverting limited, valuable time and resources from much more pressing matters—matters, literally, of life and death.  The Court should not permit Defendants to provide any further briefing on the issue of certification, as no circumstances have

3
JOINT REPORT TO THE COURT PURSUANT TO ECF NO. 6793 REGARDING CERTIFICATION BRIEFING

materially changed since the parties filed their November 2019 briefing. Plaintiffs therefore request that the Court rule on the pending proposals currently submitted before the Court, including Plaintiffs' request that, in addition to the filed reports Defendants have agreed should be certified, Defendants and their lawyers should be required to certify any and all data (except ad hoc data provided at the Special Master's request) provided to the Court or Special Master.

## II.     Defendants' Position

During the August 3, 2020 teleconference, Plaintiffs represented that their data certification proposal filed on November 5, 2019 (ECF No. 6383) does not require certification for every data point and report submitted to the Special Master and Plaintiffs. This came as a surprise to Defendants, because on its face, Plaintiffs' proposal does not expressly exclude any data from the certification process. With that concession, Defendants believed that a stipulation on data certification would be possible and presented a proposal to Plaintiffs in an e-mail on August 6, 2020. (See Exhibit A to the Thorn Decl. filed concurrently herewith.) Plaintiffs have refused to clarify their position in writing. Defendants maintain their positions regarding Plaintiffs' data certification proposals filed on November 5, 2019. (ECF No. 6384.)

After two meetings with Dr. Potter, the Special Master, and Plaintiffs, as well as multiple communications between the parties discussing the changing scope of Plaintiffs' certification proposals, Defendants believe supplemental briefing is necessary to accomplish two tasks: 1) for Plaintiffs to clarify the scope of their proposals based on the meet-and-confer process and their representations during the process; and 2) for further reporting on the impact that Dr. Potter's work will have on some of the regular reporting Defendants submit to the Special Master and Plaintiffs. Defendants outline those issues below and will elaborate on their arguments in their supplemental briefing.

During the parties' meet and confers, Dr. Potter provided the parties with a synopsis of the issues he is reviewing, which includes investigating whether any of the data collection and management processes have flaws requiring modification. Dr. Potter is also

reviewing the data and processes used for CDCR's Enhanced Outpatient Program Administrative Segregation Unit (EOP ASU) Hub certification process and Continuous Quality Improvement Tool (CQIT).  Defendants understand that Dr. Potter's work includes analysis of the performance report indicators used to measure CDCR's compliance on many issues.  The Special Master described Dr. Potter's work in his June 8 report.  (ECF No. 6705 at 18-20.)  The Special Master's report included a request to file an updated report with the Court within 90 days.  (Id. at 21.)

Given Dr. Potter's initial assessment of CDCR's data systems as described during the teleconference on July 30, it is premature to finalize any data certification processes that include certification of the data still under review and analysis by Dr. Potter.  First, it is not presently known whether Dr. Potter's work will impact the data certification process.  Dr. Potter made it clear that he was still reviewing the data systems and has not yet reached any conclusions and does not know what his role will play in data certification.  Further, it does not make sense to require a certification of data that Dr. Potter has identified as having issues and that may require modification (*see e.g.* Dr. Potter's work described above on the CQIT and EOP ASU hub certifications).  Prematurely requiring certification may lead the parties, the Court, and Special Master to revisit the process after Dr. Potter's review is complete, rendering any certification process implemented a waste of already strained resources.  Defendants request that the Court consider the proposal presented in Defendants' November 5, 2019 brief that the parties develop a data certification process under the Special Master's direction, taking into account the unique characteristics of each report and data point.  Indeed, Plaintiffs suggested during the recent meet and confer that not every item, report, or electronic correspondence containing data requires certification.  Defendants sought to formalize this understanding via a stipulation, but Plaintiffs refused.  (See Thorn Decl., ¶3.)

Defendants are willing to certify data in their monthly reports filed with the Court, and in other data presented in Court filings.  As stated above, Defendants presented a counter-proposal for certification to Plaintiffs on August 6 based on Dr. Potter's statements

that four of the six parts of data certification in Plaintiffs' proposal are an appropriate part of data certification. (See Thorn Decl., Exhibit A.) Defendants' counter-proposal was framed around representations made by Plaintiffs during the meet and confer sessions, and includes a process to develop the data certification for other reports not submitted to the court, and excludes any data certification requirement for data and information provided in response to ad hoc and informal requests, such as during monitoring rounds, prison tours, during work groups, and in response to advocacy letters.

If the Court agrees that Defendants' proposal is reasonable, Defendants request that any order requiring certification allow the parties to form a workgroup, under the guidance of the Special Master, with the goal of memorializing the details and language for the certifications.

With respect to the need for supplemental briefing, the Court should allow briefing following Dr. Potter's reporting and work on data and reporting issues so that any process for data certification takes into account Dr. Potter's work and the parties' respective positions concerning that work.

## CERTIFICATION

In preparing this filing, the parties' counsel reviewed relevant portions of the following Court orders: Stip. & Order, ECF No. 6793 (July 30, 2020); Minutes, ECF No. 6778 (July 17, 2020); Order, ECF No. 6427 (Dec. 17, 2019).

DATED: August 7, 2020                Respectfully submitted,

ROSEN BIEN GALVAN & GRUNFELD LLP

By:     /s/ Jessica Winter
        Jessica Winter

Attorneys for Plaintiffs

| | |
|---|---|
| DATED: August 7, 2020 | XAVIER BECERRA<br>Attorney General of California<br>Adriano Hrvatin<br>Supervising Deputy Attorney General<br><br>By: _/s/ Elise Owens Thorn_<br>Elise Owens Thorn<br>Deputy Attorney General<br><br>Attorneys for Defendants |