1  DONALD SPECTER – 083925
   STEVEN FAMA – 099641
2  MARGOT MENDELSON – 268583
   PRISON LAW OFFICE
3  1917 Fifth Street
   Berkeley, California  94710-1916
4  Telephone:    (510) 280-2621

5  CLAUDIA CENTER – 158255
   DISABILITY RIGHTS EDUCATION
6  AND DEFENSE FUND, INC.
   Ed Roberts Campus
7  3075 Adeline Street, Suite 210
   Berkeley, California  94703-2578
8  Telephone:    (510) 644-2555

MICHAEL W. BIEN – 096891
JEFFREY L. BORNSTEIN – 099358
ERNEST GALVAN – 196065
THOMAS NOLAN – 169692
LISA ELLS – 243657
JENNY S. YELIN – 273601
MICHAEL S. NUNEZ – 280535
JESSICA WINTER – 294237
MARC J. SHINN-KRANTZ – 312968
CARA E. TRAPANI – 313411
ALEXANDER GOURSE – 321631
AMY XU – 330707
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California  94105-1738
Telephone:    (415) 433-6830

10  Attorneys for Plaintiffs

11

12                  UNITED STATES DISTRICT COURT

13              EASTERN DISTRICT OF CALIFORNIA

14

15  RALPH COLEMAN, et al.,              Case No. 2:90-CV-00520-KJM-DB

16           Plaintiffs,               **THIRD JOINT UPDATE ON THE
                                       WORK OF THE COVID-19 TASK**
17       v.                            **FORCE**

18  GAVIN NEWSOM, et al.,              Judge:   Hon. Kimberly J. Mueller

19           Defendants.

20

21

22

23

24

25

26

27

28

[3594006.9]

At the June 26, 2020 status conference, the Court directed the parties to file a joint report with updates "on the work of the Task Force" by July 15, 2020 and "every two weeks thereafter."  ECF No. 6741.  This report provides the parties' third COVID-19 Task Force joint update and covers issues discussed since the second joint update filed on July 29, 2020.  This report covers the Twenty-Ninth (August 4) and Thirtieth (August 11) COVID-19 Task Force meetings, and various small workgroup meetings between representatives from Defendants and the Special Master's team.  Unless otherwise indicated, the small workgroup meetings include members of Defendants' leadership and the Special Master's team, and not Plaintiffs.  The Special Master holds meetings with Plaintiffs to update them on the status of the workgroups.

# I.     UPDATE REGARDING COVID-19 CASES IN CDCR AND DSH

## A.     CDCR's Report On COVID-19 Cases And Testing

The following table shows, as of August 11, 2020, the total number of confirmed COVID-19 cases, currently active, resolved to date, currently hospitalized, hospitalized to date, deaths to date, and the number and percentage of those cases who are *Coleman* class members and their level of care.

| COVID Result | Total Patients | MHSDS Patients Only | MHSDS patients as % of total |
|---|---|---|---|
| **Active** | 1031 | 349 (338 CCCMS, 6 EOP, 1 MHCB, 2 ICF, 2 APP) | 34% |
| **Resolved** | 6768 | 1815 (1595 CCCMS, 199 EOP, 4 MHCB, 11 ICF, 6 APP) | 27% |
| **TOTAL active  + Resolved** | 7799 | 2164 (1933 CCCMS, 205 EOP, 5 MHCB, 13 ICF, 8 APP) | 28% |
| **Currently Hospitalized** | 31 | 9 (7 CCCMS, 2 EOP) | 29% |
| **Cumulative Hospitalized** | 424[1] | 158 (132 CCCMS, 26 EOP) | 37% |
| **Deaths** | 53 | 23 (22 CCCMS, 1 EOP) | 44% |

CDCR reports the above hospitalization numbers include re-admissions of some

---

[1] This number represents cumulative admissions and not patients.

THIRD JOINT UPDATE ON THE WORK OF THE COVID-19 TASK FORCE

[3594006.9]

1    patients who were discharged and then re-admitted.  It also reports that the numbers

2    exclude patients who were COVID-19 positive and admitted to outside hospitals for

3    reasons other than COVID-19.

4         According to CDCR, as of August 11, 2020, it had tested 75,816 unique

5    incarcerated and formerly-incarcerated people, 64,141 of whom are still in CDCR custody.

6    Of the 64,141 incarcerated people tested, 20,306, or 31.66% percent, of those tested were

7    part of the MHSDS.  CDCR's rate of tests per 1,000 incarcerated people (624 per 1,000) is

8    higher than the rates in California (223 per 1,000) and the United States (187 per 1,000) as

9    a whole; CDCR's publicly available Population COVID-19 Tracking dashboard reports

10   that CDCR's rate of confirmed cases per 1,000 incarcerated people (84.7 per 1,000 as of

11   August 12, 2020) is higher than the rates in California (14.5 per 1,000 as of August 10,

12   2020) and the United States (15.4 per 1,000 as of August 10, 2020).

13        As of August 11, 2020, twenty-two of CDCR's thirty-five institutions were closed

14   to external movement, including four of the five institutions with Psychiatric Inpatient

15   Programs (PIPs):  California Medical Facility (CMF) closed on July 22, 2020; California

16   Health Care Facility (CHCF) closed on July 9, 2020; California Institution for Women

17   (CIW) closed on May 21, 2020; and San Quentin State Prison (SQ), which includes the

18   PIP for condemned patients, closed on June 8, 2020.  Salinas Valley State Prison (SVSP),

19   which includes CDCR's fifth PIP, had closed to movement on June 24, but reopened on

20   July 16, 2020.

21        **B.    Update Regarding Specific CDCR Institutions.**

22        San Quentin State Prison (SQ) has implemented a new yard plan for patients with

23   resolved COVID-19 cases, which CDCR reported at the July 28 Task Force.  Following

24   the August 4, 2020 Task Force meeting, Defendants provided a copy of the plan to the

25   Task Force, as well as a copy of the yard schedule for H-Facility, where the EOP

26   dormitories are located.  At the August 4, 2020 Task Force meeting, CDCR reported that

27   all mental health treatment at SQ is via telehealth, and there are no EOP treatment groups

28   in H-Facility.  Defendants acknowledged that providing no mental health groups was

1   likely based on guidance from California's Department of Public Health and California's

2   Office of Emergency Services, and stated they would look into whether EOP group

3   treatment could soon be provided at SQ H-Facility.  At the August 11, 2020 Task Force

4   meeting, CDCR informed the Task Force that COVID-19 cases continue to resolve and all

5   patients moved from tents into the PIA warehouse space and the gym.  CDCR confirmed it

6   is working with San Quentin's Chief Psychiatrist on resuming treatment.  At that meeting,

7   Plaintiffs expressed concerns that EOP group treatment still had not re-started.

8          California Institution for Men (CIM), as previously reported, put up thirteen 8-

9   person tents on Facility A.  CDCR reported that as of July 31, 2020, nineteen CCCMS

10  class members were housed in the tents, including two on heat-sensitive medications.

11  CDCR confirmed that the tents include full cooling and heating services.  Defendants also

12  reported there are some mental health groups being offered in the Reception Center EOP

13  and the Short-Term Restrictive Housing units.

14         Correctional Health Care Facility (CHCF), including its PIP, has remained closed to

15  movement since July 9, 2020.  At the August 4, 2020 Task Force meeting, CDCR reported

16  the institution remained on modified program with nine units on medical isolation and the

17  remainder on quarantine.  CDCR reported that all patients in the PIP are on solo

18  programming status with no groups offered.  CDCR also reported there are some EOP

19  groups offered in the EOP ASU Hub.  At the August 11, 2020 Task Force meeting, CDCR

20  reported the institution had seven units on quarantine and the remainder were confined to

21  quarters.

22         California Medical Facility (CMF), including its PIP, has remained closed to

23  movement since July 22, 2020.  At the August 11, 2020 Task Force meeting, CDCR

24  reported that some general population EOP treatment groups resumed on August 3, 2020,

25  the EOP ASU Hub is offering five hours of groups per week, and CMF-PIP is offering two

26  hours of group per week.

27         Salinas Valley State Prison (SVSP), including its PIP, was re-opened to movement

28  on July 16, 2020.  At the August 4 Task Force meeting, CDCR reported that there are

3

THIRD JOINT UPDATE ON THE WORK OF THE COVID-19 TASK FORCE

[3594006.9]

currently no EOP groups offered, and in the PIP, some group treatment is offered only in unit C5, but not in C6, TC1, or TC2.

Plaintiffs requested at the August 4 and 11, 2020 Task Force meetings that CDCR provide more detailed information in writing regarding the amount of structured therapeutic activity being offered at these institutions.  CDCR agreed to look into the best way to provide this information.

**C.     Update Regarding Temporary Mental Health Unit (TMHUs)**

According to CDCR, there were 27 *Coleman* class members in TMHUs as of August 11, which represented a decrease from 38 class members two weeks prior on July 28.

At the August 4 and 11 Task Force meetings, the parties discussed that the CDCR small workgroup is continuing to work on addressing the practices of (1) patients being held in the MAX Custody TMHU beyond the maximum length of stay of 10 days permitted by Defendants' temporary policy, and (2) the use of TMHUs as alternative housing, which is not part of Defendants' temporary policy.

Plaintiffs raised concerns on August 9, 2020 regarding discrepancies between and omissions from the weekly TMHU and Treat in Place logs Defendants produce, as well as the high number of class members staying in MAX Custody TMHUs longer than ten days. Defendants have not yet responded.

During the August 11, 2020 Task Force meeting, the CDCR small workgroup reported that it planned to discuss how to approach moving patients out of the MAX custody TMHUs at an upcoming meeting.

At the same meeting, Plaintiffs asked for information on how many class members had transferred from TMHUs to inpatient programs, or to EOP programs, under the criteria and processes outlined in CDCR's April 10 and April 17, 2020 policies.  Defendants agreed to look into the matter.

**D.     DSH Report Regarding COVID-19 Cases and Facilities**

DSH reported that, as of August 11, there were no confirmed positive cases in its

4

THIRD JOINT UPDATE ON THE WORK OF THE COVID-19 TASK FORCE

[3594006.9]

1    *Coleman* population.  As of August 11, 2020, DSH has performed 11,576 tests on a

2    cumulative total of 4,048 patients across all five hospitals.  A total of 252 patients and 285

3    staff have tested positive.

4            DSH-Patton was closed to new admissions on June 8, 2020[2] and remains closed,

5    except for non-*Coleman* patients designated as Offenders with Mental Health Disorders

6    (OMDs).  Fifteen of DSH-Patton's treatment units are on quarantine as of August 11.  An

7    additional two of its treatment units are being used as isolation space.  The DSH-Patton

8    unit that houses *Coleman* class members was previously quarantined, but had its

9    quarantine lifted on July 6.

10           DSH-Atascadero is open to new admissions.  As of August 11, 2020, two of DSH-

11   Atascadero's treatment units were on quarantine status due to COVID-19 cases at that

12   facility.  An additional one of its treatment units is being used as isolation space.  On July

13   29, 2020, DSH reported that Unit 33, a *Coleman* unit at DSH-Atascadero, was quarantined.

14   A *Coleman* patient on the unit was placed into isolation and tested for COVID-19.  The

15   patient subsequently tested negative and was returned to his housing unit.

16           DSH-Coalinga is open to new admissions.  On July 24, 2020, one of the *Coleman*

17   treatment units at DSH-Coalinga was placed on quarantine status due to a positive staff

18   member test on the unit.  DSH reported all patients and staff on the unit were tested and

19   results thus far have been negative; outstanding third tests for those who previously

20   refused will be conducted on August 13, 2020.  DSH-Coalinga has 13 treatment housing

21   units on quarantine status as of August 11, 2020.  DSH-Coalinga's admission unit MA-1 is

22   also quarantined.  An additional one of its treatment units is being used as isolation space.

23           At the August 11, 2020 Task Force meeting, Plaintiffs requested information

24   regarding what treatment and programming class members in the quarantine unit housing

25   _____

26   [2] The Parties' July 15 status update reported that DSH-Patton was closed to new
     admissions of *Coleman* class members on June 18, 2020.  The Parties' July 29 status

27   update reported that Defendants were confirming the exact date DSH-Patton closed.
     Defendants have confirmed the closure date was June 8, 2020.  At the time there were no

28   pending *Coleman* class referrals to DSH-Patton.

THIRD JOINT UPDATE ON THE WORK OF THE COVID-19 TASK FORCE

[3594006.9]

1  *Coleman* class members were receiving.  Defendants agreed to look into the matter.

2  **II.      UPDATES ON DSH CENSUS, WAITLIST, AND ADMISSIONS**

3         At the Task Force meetings, DSH and CDCR provided their census, waitlist, and

4  admission reports.  Since DSH lifted its temporary suspension of admissions effective

5  April 16, 2020, DSH has admitted a total of 78 *Coleman* class members.  In the 14 days

6  from July 27 through August 9, 2020, DSH has admitted eight class members.  Five of

7  those patients waited longer than 30 days from time of referral to DSH for admission.

8         As of the August 7 data discussed at the August 11 Task Force meeting, there were

9  199 *Coleman* class members at DSH-Atascadero (with 57 available beds), 40 at DSH-

10  Coalinga (with 10 available beds), and 8 at DSH-Patton (with 22 available beds).

11         There are 29 patients awaiting admission to DSH-Atascadero and DSH-Coalinga,

12  including 11 ICF patients awaiting admission for more than 30 days.  Of the 29 patients

13  awaiting admission to DSH-Atascadero and DSH-Coalinga, there are 26 on hold who are

14  at CDCR institutions currently closed to movement.  There are three patients awaiting

15  admission to DSH-Patton, all of whom have been awaiting admission for more than 30

16  days, and are currently at closed CDCR institutions.

17         On July 16, 2020, Defendants circulated draft updated temporary guidelines for

18  transferring patients from CDCR institutions closed due to COVID-19 to DSH.  This was

19  the first draft to include guidance on the standard and procedure for transfers from CDCR

20  institutions that have been closed to movement due to COVID-19.  At the July 21 Task

21  Force meeting, Plaintiffs presented their position that they are amenable to this proposal

22  pending information from Defendants and/or monitoring by the Special Master showing

23  whether the standard is being implemented appropriately such that patients transfer when

24  needed.  Defendants report that the guidance was implemented,[3] but no patients have

25  qualified for transfer under the guidance.

26

27

_____

28  [3] At the time of this filing, Defendants are confirming the date of implementation.

THIRD JOINT UPDATE ON THE WORK OF THE COVID-19 TASK FORCE

[3594006.9]

III.   **UPDATES ON THE CDCR AND DSH SMALL WORKGROUP ACTIVITIES.**

   A.   **CDCR Workgroup**

The Special Master's experts have held small workgroups with CDCR and DSH leadership, without Plaintiffs or Defendants' counsel, focused on specific topics. As discussed in greater detail below, the CDCR workgroup has covered topics, including: (1) clarifying the meaning of clinically "essential" mental health transfers as it is used by the Division of Adult Institutions' (DAI) order to halt movement and how that relates to the standards in the April 10 and 17, 2020 policies regarding emergent mental health transfers, (2) updates on the COVID-19 Dashboard, (3) treatment for class members during the pandemic, (4) transfers from desert institutions, (5) onsite versus remote regional auditing during COVID-19, and (6) moving patients out of TMHUs and the use of TMHUs as alternative housing.

   B.   **DSH Workgroup**

The DSH small workgroup has met twice since the July 29 joint update and reported its activities to the Task Force. The small workgroup also reported that it continued to discuss referrals to DSH from CDCR. At the August 11, 2020 Task Force meeting, the DSH small workgroup reported they continue to review referrals to DSH hospitals. One of the Special Master's experts reported that the process between CDCR and DSH regarding clinical assessments is working well.

   C.   **Behavioral Treatment Workgroup**

Members of CDCR and DSH leadership had been meeting with the Special Master's experts for the last few months as part of a Behavioral Treatment small workgroup discussing options to address class members with predominate behavioral issues in addition to serious mental illness. On Wednesday, August 5, 2020, CDCR reported to the workgroup that CDCR had determined it would not implement plans for a behavioral health unit due to financial concerns and that, following one final workgroup meeting and presentation, the formal behavioral workgroup would be placed on hold.

7

[3594006.9]

1  CDCR further reported at the August 11 Task Force meeting that Dr. Golding will make a

2  presentation to the small workgroup regarding a compilation of its work over the last

3  several weeks so that CDCR would be prepared to continue this project once resources are

4  available.  Plaintiffs and the Special Master expressed concerns over the workgroup

5  pausing its work because there is a need to provide treatment to patients with behavioral

6  issues.  Plaintiffs expressed their position that Defendants do not have, and never have had,

7  a program to adequately treat *Coleman* class members in need of inpatient behavioral

8  treatment, despite having identified this group as needing such specialized treatment

9  decades ago.  CDCR's position is that it continues to refer these patients to CDCR's PIPs

10  and treat them if they require a higher level of care.

11  **IV.      ADDITIONAL COVID-19 RELATED UPDATES**

12        **A.      Isolation and Quarantine Space**

13        On July 28, 2020, this Court ordered Defendants to work with the Special Master

14  throughout the process of identifying and implementing quarantine bed space as required

15  by the *Plata* court's July 22, 2020 order.  *See* ECF No. 6791 at 5.  Also in that order, this

16  Court ordered Defendants to use their most recent monthly maps filing to identify specific

17  information in response to the *Plata* court's July 22, 2020 isolation and quarantine space

18  order.  ECF No. 6791.  Defendants filed responsive pleadings on July 31 and August 7,

19  2020.  *See* ECF Nos. 6801, 6802 (sealed), 6809.

20        Representatives from the *Coleman* Special Master's team participated in two public

21  health meetings with representatives from CDCR leadership, public health experts, and the

22  *Plata* Receiver.  Subsequently, on August 7 and August 12, 2020, at the invitation of the

23  *Plata* Receiver, representatives in the *Coleman*, *Plata*, *Armstrong*, and *Clark* cases,

24  including counsel for *Coleman* Plaintiffs and a representative from the *Coleman* Special

25  Master's team, convened for two meetings regarding specifics of the quarantine and

26  isolation space planning process for CDCR's prisons.  Key *Coleman* issues discussed

27  included how to account in the space planning process for the needs of class members at

28  EOP or higher levels of care and class members in segregated housing.  The parties made

THIRD JOINT UPDATE ON THE WORK OF THE COVID-19 TASK FORCE

[3594006.9]

1    use of Defendants' maps filings ordered by this Court among other sources of data.

2    **B.      Desert Institution Transfer Policy During the Pandemic**

3         At the August 4, 2020 Task Force meeting, the parties discussed the status of

4    transfers from the desert institutions and treatment for class members held in those

5    institutions past timeframes due to COVID-19.  The number of class members held at the

6    desert institutions has increased each month according to CDCR's monthly filings, and at

7    the August 4, 2020 Task Force meeting, CDCR reported that as of July 29 there were 73

8    CCCMS patients and 1 EOP patient held at desert institutions.  At that meeting CDCR also

9    reported that it was able to provide care to each of these patients, including more frequent

10   contacts for the EOP class member in lieu of group treatment.  At the August 11 Task

11   Force meeting, CDCR confirmed that it was in contact with the Desert Institutions and

12   confirmed its position that CDCR was providing Program Guide level care, excluding EOP

13   groups, to the patients being held at the Desert Institutions due to COVID-19.  In addition

14   to these patients, Defendants' TMHU/Treat in Place log for July 20 to 24, 2020 listed

15   seven class members at the MHCB level of care at three of the desert institutions,

16   including two patients who had been at that level of care for 22 and 27 days respectively as

17   of July 24, 2020.  For all class members in the desert institutions, including those at the

18   MHCB level of care, CDCR reported it is following its standard COVID-19 related

19   guidelines of holding patients in place if they appear to be stable in their current setting

20   and can be safely treated in that setting.  Defendants reported that nearly all patients are in

21   the CCCMS level of care and are receiving appropriate care.  Defendants reported that for

22   patients in need of a higher level of care, the patients are transferred in accordance with the

23   April 10 or April 17, 2020 emergency transfer guidelines.  Defendants agreed to provide

24   more information about emergency transfers out of the desert institutions.  Plaintiffs raised

25   concerns about the lack of mental health treatment at the deserts institutions, the limited

26   mental health staffing allocations there, the current mental health staffing vacancies among

27   the allocated positions, the ability to provide care and programming at the desert

28   institutions designated at Tier 3 and Tier 4 on Defendants' four-tier scale (as of the week

THIRD JOINT UPDATE ON THE WORK OF THE COVID-19 TASK FORCE

[3594006.9]

1  of July 20-24: Calipatria State Prison, Centinela State Prison, and Chuckawalla Valley

2  State Prison), and the risk of high summer temperatures for patients on heat sensitive

3  medications.

4        At the August 11 Task Force meeting, the Parties further discussed the number of

5  class members who were housed in TMHUs and at the CCCMS and EOP levels of care at

6  the desert facilities.  CDCR explained that most of the class members had not been

7  transferred to the desert institutions, but were placed into the MHSDS while at the desert

8  institutions.   CDCR subsequently reported that as of the morning of August 12, 2020,

9  there were a total of 81 MHSDS patients at the six desert institutions.  Of those patients, 77

10  are CCCMS, 1 is EOP, and 3 are MHCB level of care, and all but one of those patients was

11  placed in the MHSDS while housed at the desert institutions.  The one patient who was in

12  the MHSDS prior to his move to a desert institution is CCCMS, and he was moved

13  because he was going out to court.

14
15  **C.      Information Regarding the Relationship Between Serious Mental Illness and COVID-19 And Plan for Enhanced Pandemic Treatment Strategies.**

16        On August 3, 2020, Plaintiffs sent a letter to Defendants following up on previous

17  correspondence and Task Force discussions described in the prior joint update filings

18  regarding Plaintiffs' request that Defendants both take steps to enhance existing care to

19  account for the pandemic and plan for how to return to Program Guide-levels of treatment.

20  The Parties did not discuss this topic during the August 4 or 11, 2020 Task Force meeting,

21  but the Special Master's experts reported that it was and would continue to be a topic of

22  discussion at the CDCR small workgroup.

23  **D.      ASU EOP Hub and PSU Certification Small Workgroup Process.**

24        Since the July 29 joint update, there have been two small workgroup meetings

25  between CDCR leadership and the Special Master's team on the ASU EOP Hub and PSU

26  certification process.

27        At the August 4, 2020 Taskforce, the Parties discussed Defendants' July 24, 2020

28  revised draft of CDCR's plan to conduct EOP ASU Hub and PSU certifications during the

[3594006.9]

1    COVID-19 pandemic.  Plaintiffs asked about language in the draft plan regarding how

2    Defendants will determine if a program was meeting performance requirements before

3    COVID-19 restrictions.  Defendants noted they would report back at the next Task Force.

4    Plaintiffs also raised concerns about the lack of guidance on minimum standards for

5    clinically effective alternative treatments and other offerings to mitigate Hub/PSU

6    performance limitations caused by COVID-19, and the plan to allow remote rather than in-

7    person monitoring by Regional staff in the event that local staff are not available.  Also at

8    the August 4, 2020 Task Force Meeting Plaintiffs asked for confirmation about the current

9    status of the CHCF EOP ASU Hub, which was closed to new intake on May 4, 2020 after

10   failing certification in January and February, 2020; Defendants have not yet responded.

11   Also at that meeting, the Special Master's data expert reported he is working to analyze the

12   Hub certification data.  Plaintiffs sent a follow up letter on August 10, 2020 outlining their

13   comments on this proposed COVID-19-specific certification process.

14          At the August 11 Task Force, Defendants confirmed they are continuing to discuss

15   the regular Court-ordered ASU EOP Hub and PSU certification processes, but reported

16   that they discussed slowing the process down in the small workgroup with the Special

17   Master's experts.  CDCR confirmed that part of the reason was so that they could fully

18   understand the objections Plaintiffs' raised and the Special Master's concerns about the

19   process and ensure that CDCR was looking at the data reporting carefully and being

20   transparent.  Plaintiffs offered to explain their letter further and also expressed concerns

21   about slowing the small workgroup process given that Defendants asked the Court to refer

22   the matter to the Task Force in lieu of granting Plaintiffs' pending request to replace the

23   certification process with a more robust remedy, which the Court took under submission in

24   its December 23, 2019 order.  ECF No. 6435 at 1 n.1

25          **E.      Update Regarding CDCR's COVID-19 Dashboard**

26          CDCR reports that the COVID-19 Dashboard went live in beta form on August 3,

27   2020, with the goal to close out beta testing on August 14 unless further changes are

28   needed.  CDCR reports that future changes to the dashboard will be handled through the

[3594006.9]

1   Change Management Committee process.  On August 4, 2020, Defendants provided the

2   Taskforce with the updated glossary describing the business rules for the August 3 beta

3   release.  At the August 11 the Task Force meeting the parties discussed that the dashboard

4   had been rolled out to the field in beta, but the Special Master's team and Plaintiffs are

5   unable to access it.  Defendants are working to provide access.

6

7   DATED:  August 12, 2020       Respectfully submitted,

8                             ROSEN BIEN GALVAN & GRUNFELD LLP

9

10                        By:  */s/ Marc J. Shinn-Krantz*

11                            Marc J. Shinn-Krantz

12                      Attorneys for Plaintiffs

13   DATED:  August 12, 2020       XAVIER BECERRA

14                      Attorney General
                             Adriano Hrvatin

15                      Supervising Deputy Attorney General

16

17                        By:  */s/ Tyler V. Heath*

18                            Tyler V. Heath
                             Acting Supervising Deputy Attorney General

19

20                      Attorneys for Defendants

21

22

23

24

25

26

27

28

THIRD JOINT UPDATE ON THE WORK OF THE COVID-19 TASK FORCE

[3594006.9]