1  XAVIER BECERRA
   Attorney General of California
2  MONICA N. ANDERSON
   Senior Assistant Attorney General
3  ADRIANO HRVATIN
   Supervising Deputy Attorney General
4  ELISE OWENS THORN, State Bar No. 145931
   TYLER V. HEATH, State Bar No. 271478
5  KYLE A. LEWIS, State Bar No. 201041
   LUCAS HENNES, State Bar No. 278361
6  Deputy Attorneys General
     1300 I Street, Suite 125
7    P.O. Box 944255
     Sacramento, CA 94244-2550
8    Telephone: (916) 210-7323
     Fax: (916) 324-5205
9    E-mail: Lucas.Hennes@doj.ca.gov
   *Attorneys for Defendants*

ROMAN M. SILBERFELD, State Bar No. 62783
GLENN A. DANAS, State Bar No. 270317
ROBINS KAPLAN LLP
  2049 Century Park East, Suite 3400
  Los Angeles, CA 90067-3208
  Telephone: (310) 552-0130
  Fax: (310) 229-5800
  E-mail: RSilberfeld@RobinsKaplan.com
*Special Counsel for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **RALPH COLEMAN, et al.,** | 2:90-cv-00520 KJM-DB (PC) |
| Plaintiffs, | DEFENDANTS' EXPEDITED MOTION TO CONTINUE AUGUST 31, 2020 BRIEFING DEADLINE AND SEPTEMBER 10, 2020 HEARING, OR IN THE ALTERNATIVE, FOR RECONSIDERATION OF JULY 30, 2020 ORDER |
| v. | |
| **GAVIN NEWSOM, et al.,** | |
| Defendants. | |

**TABLE OF CONTENTS**

**Page**

Introduction ........................................................................................................................... 1
Factual and Procedural Background ..................................................................................... 2
Argument ............................................................................................................................... 4
    I.    The Court Should Continue the Briefing and Hearing Directed by the July 30 Order to Allow for a Proper Defense. ............................................................... 4
    II.   Given Recent and Ongoing Population Reduction Measures and Further Anticipated COVID-19 Remedial Efforts, the Court Should Reconsider the July 30 Order and Stay Briefing and the Hearing. ............................................... 6
    III.  CDCR's Mental Health Population is Significantly Lower Than In Previous Years. ................................................................................................... 7
    IV.  CDCR Is Preparing a New Staffing Plan. ............................................................ 8
    V.   Neither the Court Nor the Special Master Has Yet to Clarify Benchmarks for Constitutional Compliance. ............................................................................ 9
Conclusion ........................................................................................................................... 10
Certification ......................................................................................................................... 12

i

Defs.' Exp Exp Mot. Cont. Briefing & Hrg. Sched.; Reconsideration Mot. (2:90-cv-00520 KJM-DB (PC))

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*Little v. Kern Cty. Superior Ct.*
  294 F.3d 1075 (9th Cir. 2002) ............................................................................................... 6

*Sch. Dist. No. 1J, Multnomah Cty., Or. v. ACandS, Inc.*
  5 F.3d 1255 (9th Cir. 1993) ................................................................................................... 7

*Smith v. Massachusetts*
  543 U.S. 462 (2005) ............................................................................................................... 6

ii

Defs.' Exp Exp Mot. Cont. Briefing & Hrg. Sched.; Reconsideration Mot. (2:90-cv-00520 KJM-DB (PC))

# INTRODUCTION

Psychiatrist staffing is one of Defendants' highest priorities, which is why staffing continues to be a significant focus even as the California Department of Corrections and Rehabilitation (CDCR) and the Department of State Hospitals (DSH), along with the rest of the world, grapple with the impacts of the COVID-19 pandemic. But after delaying a hearing on staffing due to intervening events, including the COVID-19 pandemic, the Court now directs the parties to provide significant briefing concerning issues never previously raised by the Court, and to do it all in just thirty days and then conduct a hearing twelve days later. Defendants understand the Court's interest in a staffing hearing, but these unreasonably short deadlines (amidst a pandemic that has severely curtailed movement and the flow of information within and between institutions) do not allow Defendants to prepare a comprehensive response and obtain assistance from their recently retained expert consultants to assess the order's weighty issues and make a full record to inform the Court.

In addition, the July 30, 2020 order's timeframes do not allow the parties to evaluate population management measures instituted in response to the pandemic that have substantially reduced the number of mentally ill inmates and those measures' attendant impact on the prison mental health system. Since the Court issued its October 10, 2017 order mandating that CDCR come into compliance with staffing ratios in Defendants' 2009 staffing plan, CDCR's total mental health population has fallen by 8,000 inmates, with the majority of that reduction occurring in the last five months. The effects of this palpable reduction of the mentally ill inmate population should be examined by Defendants, Plaintiffs, and the Special Master before the contours of a prisoner release order should even be considered.

Furthermore, the order does not permit Defendants to work with the stakeholders to collaboratively discuss and emplace a new staffing plan currently under development. Nor does the order allow Defendants to assess benchmarks concerning constitutional compliance that the Court recently announced it would confirm at the July 2020 status conference, but has yet to issue. Those benchmarks will inform the staffing discussion and provide necessary metrics to

1

further evaluate whether the current staffing plan remains appropriate. Compounding these impairments, the tight timeframes do not allow Defendants to receive information from the Special Master's data expert concerning various CDCR data metrics that are key to evaluating their staffing model and compliance, and thus they cannot prepare an adequate response to the July 30 order.

Given these considerations, and so that Defendants can present their defense on the new issues raised in the July 30 order regarding population reduction, Defendants request that the Court stay the August 31 briefing deadline and September 10 hearing and direct the parties to provide briefing in January 2021 concerning resetting these deadlines.[1] In the interim, Defendants will continue to work with the Special Master and Plaintiffs on staffing. In the alternative, Defendants request that the Court reconsider the July 30 order, stay its timelines, and direct the parties to provide briefing in January 2021.

**FACTUAL AND PROCEDURAL BACKGROUND**

The Court's July 30 order is the product of past orders setting and then continuing status conferences on Defendants' compliance with the Court's October 10, 2017 order. (ECF No. 5711.) The Court's October 10, 2017 order directed Defendants to come into complete compliance with the staffing ratios set forth in the 2009 Staffing Plan, including a maximum ten percent psychiatry staffing vacancy rate required by the Court's June 13, 2002 order. (ECF No. 5711 at 30.) As part of this order, the Court set a "further status conference" for October 11, 2018, to address issues pertaining to enforcement of the order, as well as an evaluation of the durability of the staffing remedy. (*Id.* at 31.)

In response to the Court's October 2017 order, CDCR developed a comprehensive set of proposals to remedy staffing vacancies and correct false assumptions underlying the 2009 staffing plan. CDCR's efforts were interrupted in October 2018, when a psychiatrist issued a report calling into question CDCR's data. (ECF No. 6705 at 2.) On December 23, 2019, following a

---

[1] The Court at several status conferences over the past few months has indicated its willingness to address motions on an expedited basis or on shortened time. Defendants request that accommodation on this motion. If the Court would like to hear argument, Defendants can be available at the Court's earliest convenience.

2

Defs.' Exp Mot. Cont. Briefing & Hrg. Sched.; Reconsideration Mot. (2:90-cv-00520 KJM-DB (PC))

year of investigation and reporting on CDCR's data management and reporting practices, including briefing and an evidentiary hearing, the Court issued an order directed at correcting deficiencies in CDCR's data management and reporting. (ECF No. 6435.) The Court directed the Special Master to hire his own data expert. (*Id.*) The Special Master's data expert was appointed on April 29, 2020 (ECF No. 6466), and on June 8, 2020, the Special Master filed a report documenting the scope and status of the data expert's work, and requested leave to file to file his expert's report within ninety days, on or before September 8, 2020. (ECF No. 6705.) The investigation into CDCR's data further delayed the hearing on Defendants' compliance with the October 10, 2017 order.

On January 7, 2020, the Court reset "the deferred questions of Defendants' compliance with the October 2018 deadline set in the court's October 10, 2017 order . . . and enforcement of that order" for hearing on April 23, 2020. (ECF No. 6441 at 5.) After the onset of the COVID-19 pandemic, the Court vacated the hearing. (ECF No. 6600 at 4.) During the July 2020 quarterly status conference, the Court raised the idea of resetting the hearing in September, for the first time describing it as a "fully adversarial proceeding" to brief the remedies available for "Defendants' ongoing noncompliance." (July 17, 2020 Tr. at 21-23, ECF No. 6781.)

The Court's July 30 order subsequently set a hearing for September 10 to discuss whether "targeted reduction of the mentally ill prison population might be the only path remaining for Defendants to achieve constitutional compliance in this case," among other topics. (ECF No. 6794 at 7.) The July 30 order, which appears to be based upon the assumption that population reduction is the only way to solve Defendants' staffing issues, further directed the parties to file briefs within thirty days detailing the size of such a population reduction and the "general contours" of a plan to achieve that population reduction within one year, and directed briefing on additional subjects. (*Id.* at 8.) Defendants seek relief from the July 30 order's timeframes.

**ARGUMENT**

**I. THE COURT SHOULD CONTINUE THE BRIEFING AND HEARING DIRECTED BY THE JULY 30 ORDER TO ALLOW FOR A PROPER DEFENSE.**

While the Court has previously expressed its desire to conduct a staffing hearing, the subject of the September 10 hearing is substantially different from the Court's earlier orders. Defendants are now ordered to consider a potential prisoner release order—an entirely different question that requires different analysis and expertise. Any assessment of CDCR's current population and staffing needs requires detailed consultation and examination, which cannot occur during the COVID-19 pandemic or in the time allotted before the September 10 hearing. Therefore, the briefing and hearing directed by the Court must be continued so that Defendants can adequately prepare for these significant litigation events.

Immediately after the July 30 order was issued, Defendants commenced a search to identify subject matter experts in the area of correctional mental health services and staffing to assist in their defense. (*See* Declaration of R. Silberfeld Supp. Defs.' Mot. (Silberfeld Decl.) ¶ 2.) Between July 31 and August 13, Defendants identified a number of qualified individuals who could serve as consultants or experts concerning these topics and other issues to assist in responding to the Court's briefing and hearing requirements. (*Id.*) However, in light of logistical considerations, conflicts of interest, or other issues, Defendants were not able to retain experts during that period. (*Id.*)

Between August 14 and 18, Defendants communicated with an expert group, assessed that group's ability to provide consultation, and if needed, expert testimony, regarding the novel issues presented by the Court's order. (Silberfeld Decl. ¶ 3.) Defendants recently retained this expert group, but conversations with this expert group about the scope of work and tasks to be accomplished make clear that neither this group, nor any group, can adequately prepare for the briefing due on August 31 or the hearing on September 10 in such a short timeframe, and particularly under current pandemic conditions. (*Id.*) Defendants' retained expert group anticipates two work streams involving site inspections and staff interviews, but neither work stream can be accomplished during the COVID-19 pandemic due to travel restrictions and prison

4

Defs.' Exp Mot. Cont. Briefing & Hrg. Sched.; Reconsideration Mot. (2:90-cv-00520 KJM-DB (PC))

operational constraints. (*Id.*) And some of these site inspections will involve joint tours with the Plaintiffs, which will require further coordination. As a result, the nature of this virus and the necessary precautions taken across the nation and throughout CDCR preclude Defendants' and the group's ability to perform the necessary review of systems, programs, practices and policies necessary to mount a defense to the Court's order. (*Id.*) Furthermore, the briefing and hearing timeframes do not allow adequate time for any necessary expert depositions by the parties or any pre-trial motions practice. Accordingly, the Court should continue both the briefing and the hearing on the issues raised in the July 30 order so that Defendants can prepare a proper defense utilizing witnesses and their retained expert group. (*Id.*)

Moreover, the sheer scale of the issues contemplated by the July 30 order necessitates a continuance so that Defendants and their expert group can analyze and obtain or provide consultation regarding topics unique to this decades-long civil rights action involving the nation's largest prison system. (Silberfeld Decl. ¶ 4.) As stated above, Defendants expeditiously reviewed the order, in which for the first time this Court seems to assume that a prisoner release order is the *only* means to come into compliance with a prior staffing order. (*Id.* ¶¶ 2, 4.) But the various actions needed to prepare for, brief, and conduct the hearing contemplated by the July 30 order cannot be conducted during an unprecedented pandemic within the extremely constricted schedule set by the Court. (*Id.* ¶¶ 4, 5.)

Finally, the State's ability to present a defense to the serious issues raised in the July 30 order using data and metrics is significantly hampered by the lack of a completed review of CDCR's data systems by the Special Master and his data expert. These systems were called into question during the October 2019 evidentiary hearing, but until the Special Master's data expert independently validates CDCR's mental health data systems, Plaintiffs will object to relevant staffing and mental health program data, impairing Defendants' ability to defend themselves.

Indeed, any position on the relationship between the mental health population and compliance with CDCR's 2009 Staffing Plan necessarily requires data from the mental health performance reports showing the level of care and treatment. For example, the 2009 Staffing Plan outlines how the ratios are informed by the level of treatment provided during

5

Defs.' Exp Mot. Cont. Briefing & Hrg. Sched.; Reconsideration Mot. (2:90-cv-00520 KJM-DB (PC))

Interdisciplinary Treatment Teams and individual contacts.  (ECF No. 3693 at 11-2 and 16-17.) The data showing treatment for *Coleman* class members over the past several years will need to be analyzed to provide a comprehensive understanding of staffing levels.  That evidence necessarily includes data that the expert is still analyzing and that will be the subject of his anticipated report and testimony.  (*See* ECF No. 6705 at 18 (the expert is reviewing "mental health business intelligence, mental health on demand reports, and update/change policies around mental health quality management and fixed benchmarks," and "data and policies regarding the Coleman class members and CDCR's population generally and with respect to COVID-19, including analysis of its risk factors").)

Without this report, presently due September 8—ten days *after* briefing in response to the July 30 order is due and only two days before the hearing—there is no way for Defendants to present data the basic validity of which the parties will not dispute.  Given this severe handicap, Defendants are unfairly disadvantaged and unable to present a defense consistent with their due process rights, let alone one that is effective.

Forcing Defendants to defend against mandatory population reduction and other enforcement remedies (ECF No. 6794 at 8) within the extraordinary confines of the present schedule risks irreparable harm to Defendants' due process rights.  The Court should continue the dates contemplated by the July 30 order, and direct the parties to provide briefing in January 2021 regarding rescheduling the briefing and hearing dates.  *See Little v. Kern Cty. Superior Ct.*, 294 F.3d 1075, 1080-81 (9th Cir. 2002) (citations omitted) (a contemnor must be afforded "'reasonable notice of the specific charges and an opportunity to be heard,' and such notice of the contempt charge "must be explicit in order to conform to the requirements of due process").

II. **GIVEN RECENT AND ONGOING POPULATION REDUCTION MEASURES AND FURTHER ANTICIPATED COVID-19 REMEDIAL EFFORTS, THE COURT SHOULD RECONSIDER THE JULY 30 ORDER AND STAY BRIEFING AND THE HEARING.**

A district court has the inherent power to reconsider and modify its interlocutory orders prior to the entry of judgment.  *Smith v. Massachusetts*, 543 U.S. 462, 475 (2005). Reconsideration is appropriate if the district court (1) is presented with newly discovered

6

Defs.' Exp Mot. Cont. Briefing & Hrg. Sched.; Reconsideration Mot. (2:90-cv-00520 KJM-DB (PC))

evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law. *Sch. Dist. No. 1J, Multnomah Cty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993).

Here, various intervening events over the past few months present new evidence or render the Court's order manifestly unjust, and thus worthy of reconsideration.

### III. CDCR's MENTAL HEALTH POPULATION IS SIGNIFICANTLY LOWER THAN IN PREVIOUS YEARS.

To promote physical distancing and protect the inmate population from risks associated with the COVID-19 pandemic, CDCR has voluntarily accelerated the release of thousands of inmates. As a result, since March 18, 2020, CDCR's total in custody population has been reduced from 117,394 inmates to 98,183 inmates as of August 19, 2020. (*Compare* https://www.cdcr.ca.gov/research/wp-content/uploads/sites/174/2020/03/Tpop1d200318.pdf and https://www.cdcr.ca.gov/research/wp-content/uploads/sites/174/2020/08/Tpop1d200819.pdf.) To date, these releases have helped reduce the number of inmates in CDCR's Mental Health Services Delivery System from 35,834 patients on March 18, 2020, to 30,816 patients on August 19, 2002, a reduction of over 5,000 *Coleman* class members. (Decl. of J. Powell Supp. Defs.' Mot. (Powell Decl.) ¶ 4.) This represents a 14% reduction in the size of the *Coleman* class over just the past five months. The effect of this significant reduction of mentally ill inmates on CDCR's mental health program operations or staff capabilities in such a compressed timeframe has not yet been examined by Defendants, Plaintiffs, or the Special Master, but constitutes a substantially changed condition that did not exist when the Court issued the October 2017 staffing order. In fact, there are presently 8,120 fewer inmates in CDCR's mental health delivery system than on October 9, 2017, when the population stood at 38,936 patients. (Powell Decl. ¶ 5.) That represents a dramatic 21% decrease in the population requiring regular psychiatric care since the time that the Court issued its October 2017 order. And these reductions will continue as individuals are expedited to parole due to the rolling implementation of population reduction measures taken in response to the pandemic.

7

Defs.' Exp Mot. Cont. Briefing & Hrg. Sched.; Reconsideration Mot. (2:90-cv-00520 KJM-DB (PC))

1  Indeed, this evidence calls into question the Court's underlying assumption in the October
2  2017 order that CDCR's current mental health staffing levels are insufficient to meet
3  constitutional obligations. (*See* ECF No. 5711 at 28.) Because the size of CDCR's mentally ill
4  population has *not* at all "remain[ed] at current levels or continue[d] to grow" since the October
5  2017 order was issued, it is manifestly unjust to require briefing and a hearing on population
6  reduction issues when the conditions for that reduction likely no longer exist, particularly in light
7  of this new evidence concerning CDCR's current population. (*Id.*; ECF No. 6794 at 7.) In light
8  of the significant reductions of the size of the Plaintiff class in response to the COVID-19
9  pandemic, any analysis of an even *further* population reduction is premature at this time. The
10 effect of recent population changes has not been evaluated yet. With fewer mentally ill inmates,
11 and new modes for the delivery of mental health care, the parties should be allowed to examine
12 whether Defendants' staffing needs have evolved such that they are now closer to staffing
13 compliance. However, it is physically impossible for such an evaluation to occur in the brief time
14 allotted Defendants to prepare the directed briefing and for the September 10 hearing. (Silberfeld
15 Decl. ¶¶ 3, 4.) Given this new evidence, the Court should reconsider the July 30 order and stay
16 its timeframes concerning briefing and a hearing.

**IV.  CDCR IS PREPARING A NEW STAFFING PLAN.**

As the Court acknowledges, Defendants are "actively engaged in producing [a] new staffing proposal" and related "things [are] being discussed with the Special Master." (ECF 6794 at 2 (July 17, 2020 Tr. at 24, ECF No. 6781).) Indeed, Defendants have consistently worked on staffing plans since 2015, and have resumed these efforts following the evidentiary hearing concerning CDCR data practices. At the recent status conference, the Special Master confirmed that he has "been working with DSH on their staffing plan" and that the recent DSH staffing process "has been a very positive experience" that requires further work and comments from the Plaintiffs. (July 17, 2020 Tr. at 25, ECF No. 6781.) Recognizing that positive work, the Court essentially excluded DSH and its staffing plan from the July 30 briefing and hearing, even though DSH and its staffing are considered integral to the delivery of constitutional care to CDCR patients. (*See* ECF No. 6794.) CDCR should not be held to a staffing hearing at this time,

8

particularly where Defendants informed the Court that CDCR is working on a staffing plan. (*Id*. at 27.) A component of this work concerns developing a standardized staffing plan for the Psychiatric Inpatient Programs, a program which utilizes a significant number of resources. CDCR has been developing this plan with the input of the Special Master but it will not be finalized by the September 10 hearing date. With Defendants taking active steps to develop staffing plans and work with stakeholders concerning this important issue, an adversarial hearing and further litigation are unwarranted and contrary to the Court's professed desire to avoid counterproductive litigation.

## V. NEITHER THE COURT NOR THE SPECIAL MASTER HAS YET TO CLARIFY BENCHMARKS FOR CONSTITUTIONAL COMPLIANCE.

At the recent status conference, in response to Defendants' concern that "twenty-five years into the remedial phase of this litigation, neither the Court nor the Special Master have established benchmarks for 'full and durable' constitutional compliance at *any* population level" (ECF No. 6769 at 15 (emphasis added)), and two years after the Court itself expressly called upon the Special Master to define benchmarks for constitutional compliance (ECF No. 5852 at 3), the Court indicated that it would clarify and confirm benchmarks concerning constitutional compliance.

At the hearing, the Court stated:

> The Court has addressed benchmarks in a couple of areas with respect to transfers and clarified the benchmark there with respect to staffing; at least I'm holding out a benchmark in staffing. We need to resolve staffing sooner rather than later now, and we'll get to that. My tentative plan subject to hearing from you this morning would be to clearly put out there the benchmark the special master has been using reflected in his reports to the Court for quite some time now and ask why these should not be confirmed as the benchmarks. (*Id*. at 11.)

After hearing from the parties, the Court stated that it saw "no reason not to put the special master's benchmarks out there for clarification, for transparency, and I think it can drive the process most efficiently." (*Id*. at 16.) The Court has not yet provided the benchmarks. Indeed,

9

rather than clarify any benchmarks that would help guide the parties' work toward achieving constitutional compliance, the Court found that Defendants had not complied with the October 2017 staffing order and directed the parties to a hearing on a population reduction order and related items. (ECF No. 6794 at 8.) Defendants are entitled to these benchmarks for constitutional compliance to accurately assess the entire operation of CDCR's Mental Health Services Delivery System, including its present staffing needs and staffing model given present conditions, technologies, and clinical thinking, so that Defendants can determine what systemic modifications are required to achieve overall constitutional compliance at any population level. Mental health staffing is inextricably tied to other areas for which the Court will confirm benchmarks, including medical records, and suicide prevention, among others, and having these benchmarks will allow Defendants to appropriately evaluate the topics addressed by the July 30 order.

Because there is new evidence bearing upon the July 30 order, and the order is manifestly unjust, the Court should continue briefing and the hearing.

## CONCLUSION

The briefing and hearing contemplated by the July 30 order address novel issues in this case and require sufficient time to evaluate and prepare an adequate response. The hearing should be continued so that Defendants can adequately prepare for these significant litigation events. As demonstrated by the offer of proof submitted in counsel's supporting declaration, Defendants expeditiously retained an expert group, but the order's unreasonably compacted schedule and the operational limitations caused by the global pandemic prevent their ability to work with their experts to formulate a defense. Defendants are further hampered by the lack of the Special Master's data expert's report, which will provide a common understanding and verity concerning CDCR's mental health data.

In the alternative, given the changed circumstances in California's prisons, including new evidence concerning significantly fewer mentally ill inmates, and other information demonstrating that the July 30 order's briefing and hearing timeframe is manifestly unjust, the order should be stayed. The order prematurely directs the parties to consider a prisoner release to

10

Defs.' Exp Mot. Cont. Briefing & Hrg. Sched.; Reconsideration Mot. (2:90-cv-00520 KJM-DB (PC))

remedy mental health staffing vacancies, despite Defendants' anticipated production of a revised staffing plan and the Court's confirmation of benchmarks defining constitutionally compliant staffing practices.

For these reasons, the Court should continue the timeframes contained in the July 30 order, and direct the parties to provide briefing in January 2021 regarding rescheduling the briefing and hearing dates.

11

Defs.' Exp Mot. Cont. Briefing & Hrg. Sched.; Reconsideration Mot. (2:90-cv-00520 KJM-DB (PC))

**CERTIFICATION**

Defendants' counsel certifies that he reviewed the following orders relevant to this filing: ECF Nos. 1382, 5711, 5852, 6435, 6441, 6466, 6600 and 6794.

Dated: August 21, 2020

Respectfully Submitted,

XAVIER BECERRA
Attorney General of California
ADRIANO HRVATIN
Supervising Deputy Attorney General

*/s/ Kyle A. Lewis*
KYLE A. LEWIS
Deputy Attorney General
*Attorneys for Defendants*

CF1997CS0003/42317871.docx

12

Defs.' Exp Mot. Cont. Briefing & Hrg. Sched.; Reconsideration Mot. (2:90-cv-00520 KJM-DB (PC))