| | |
|---|---|
| XAVIER BECERRA, State Bar No. 118517<br>Attorney General of California<br>MONICA N. ANDERSON, State Bar No. 182970<br>Senior Assistant Attorney General<br>ADRIANO HRVATIN, State Bar No. 220909<br>Supervising Deputy Attorney General<br>ELISE OWENS THORN, State Bar No. 145931<br>TYLER V. HEATH, State Bar No. 271478<br>KYLE A. LEWIS, State Bar No. 201041<br>LUCAS L. HENNES, State Bar No. 278361<br>Deputy Attorneys General<br>  1300 I Street, Suite 125<br>  P.O. Box 944255<br>  Sacramento, CA 94244-2550<br>  Telephone: (916) 210-7318<br>  Fax: (916) 324-5205<br>  E-mail: Elise.Thorn@doj.ca.gov<br>*Attorneys for Defendants* | ROMAN M. SILBERFELD, State Bar No. 62783<br>GLENN A. DANAS, State Bar No. 270317<br>ROBINS KAPLAN LLP<br>  2049 Century Park East, Suite 3400<br>  Los Angeles, CA 90067-3208<br>  Telephone: (310) 552-0130<br>  Fax: (310) 229-5800<br>  E-mail: RSilberfeld@RobinsKaplan.com<br>*Special Counsel for Defendants* |

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **RALPH COLEMAN, et al.,**<br><br>                       Plaintiffs,<br><br>v.<br><br>**GAVIN NEWSOM, et al.,**<br><br>                       Defendants. | 2:90-cv-00520 KJM-DB (PC)<br><br>**DEFENDANTS' EXPEDITED MOTION FOR EXTENSION OF TIME TO IMPLEMENT TELEPSYCHIATRY POLICY (ECF NO. 6539); MEMORANDUM OF POINTS AND AUTHORITIES** |

      Defendants' primary obligation during this international health crisis is to provide necessary care to inmates while keeping both inmates and staff safe. Consistent with this obligation, Defendants move for additional time to fully implement the California Department of Corrections and Rehabilitation's (CDCR) provisional telepsychiatry policy approved by the Court on March 27, 2020. (ECF No. 6539 at 5-12.) Specifically, Defendants request that the Court allow Defendants further time to implement six specific aspects of the telepsychiatry policy impacted by COVID-19, and direct the parties and Special Master to meet and confer every

1

ninety days to assess the need for the delayed implementation according to developments concerning each item. Defendants seek this relief because the COVID-19 pandemic has made it unsafe and impractical to implement the full policy at this time, including by the current August 24 implementation date.[1]

## MEMORANDUM OF POINTS AND AUTHORITIES

As a result of the COVID-19 global pandemic, CDCR has acted quickly and decisively to ensure that it can adequately protect the health and safety of its staff and the prisoners in its custody. The virus's stealth and highly-contagious nature has made this task challenging, and CDCR has had to make significant changes to how it delivers medical and mental health care to the prisoners in its custody. It has also required CDCR to delay implementation of long-planned changes that would not make sense to implement in the midst of a pandemic. For example, before the COVID-19 pandemic materialized in the United States, the parties agreed to a detailed new policy that would change how CDCR utilized telepsychiatry in its prisons. (ECF No. 6539 at 5-12.) But critical components of that policy—like so many other policies drafted in a pre-COVID-19 world—are now unworkable in light of the robust social distancing policies that CDCR has implemented to keep inmates and staff safe. Defendants therefore move the Court to permit CDCR to temporarily hold off on implementing the provisional telepsychiatry policy until it is safe to do so. To be clear, Defendants are not seeking to abandon the telepsychiatry policy this Court has provisionally approved. Rather, they ask the Court to temporarily hold components of that policy in abeyance due to the COVID-19 pandemic and extend the time for full implementation.

## RELEVANT PROCEDURAL HISTORY

The parties agreed on the terms for the provisional telepsychiatry policy on February 12, 2020. (ECF No. 6539 at 1, 2.) The parties negotiated the terms of the policy prior to the state of emergency and filed the stipulation and proposed order for approval of the policy on March 25 (*see* ECF No. 6517), only six days after Governor Newsom issued a State-wide stay-at-home

---

[1] As explained further below, Defendants seek this relief on an expedited basis or on shortened time. Defendants are available for argument at the Court's convenience.

2

Defs.' Expedited Mot. Extend Time Implement Telepsychiatry Policy (2:90-cv-00520 KJM-DB (PC))

order. (Executive Order N-33-20, available at https://www.gov.ca.gov/wp-content/uploads/2020/03/3.19.20-attested-EO-N-33-20-COVID-19-HEALTH-ORDER.pdf). Few could have foreseen at that time that, five months later, California would still be in a state of semi-lockdown.

On March 27, the Court signed and issued the proposed order. (ECF No. 6539.) The order gave Defendants 120 days to implement the new telepsychiatry policy. (*Id.* at 2.) After implementation, the policy will remain provisional for eighteen months during which time the Special Master will monitor the use of telepsychiatry under the provisional policy. (*Id*.) At the end of that eighteen-month period, the parties will have thirty days to determine whether the policy should become final or needs alterations. (*Id*.) The March 27 order anticipated, however, that COVID-19 might require delaying implementation of the new policy. (*Id.* ("If Defendants believe that the 120-day period may need to be extended due to the COVID-19 pandemic impacts on CDCR, they will meet and confer with Plaintiffs' counsel and the Special Master concerning an extension. If no agreement is reached, Defendants may seek an order from the Court extending the 120-day period.").)

When the 120-day period was due to expire in July, the parties obtained a thirty-day extension of time to implement the new policy in order to finalize the development of the Telepsychiatry Resource Management Tool which Defendants will use to monitor compliance with the policy. (ECF No. 6789.) The July order also anticipated that another extension of time might be necessary, given the disruptions caused by COVID-19. (*Id.* at 2 ("If Defendants believe that a further extension of the implementation period is needed, they will meet and confer with Plaintiffs' counsel and the Special Master concerning an extension. If no agreement is reached, Defendants may seek an order from the Court extending the implementation period.").) As that thirty-day extension is set to expire, Defendants move the Court for an extension of time to fully implement the telepsychiatry policy beyond the current August 24 deadline.

Defendants raised this issue with Plaintiffs and the Special Master. On July 23 and 24, 2020, Defendants informed Plaintiffs and the Special Master that they wanted to assess potential impacts from COVID-19 on the implementation of CDCR's provisional telepsychiatry policy and

3

Defs.' Expedited Mot. Extend Time Implement Telepsychiatry Policy (2:90-cv-00520 KJM-DB (PC))

further discuss those impacts with the parties. (Lewis Decl. Supp. Defs.' Mot. Ext. Time ¶ 2.) At the August 11 COVID-19 Task Force meeting, Defendants raised the issue of delayed implementation of parts of the telepsychiatry policy due to COVID-19. The Special Master convened an All Parties Meeting on August 13, where the parties further discussed COVID-19's impacts on the implementation of the telepsychiatry policy. (*Id*. ¶ 3.) On August 17, defense counsel spoke with the Special Master regarding the need for more time to implement parts of the telepsychiatry policy. Thereafter, the Special Master directed his experts to place this issue on the agenda for the COVID-19 small work group meeting among clinicians, scheduled for August 19. (*Id*. ¶ 4.)

During the August 19 small work group meeting, CDCR advised the Special Master's psychiatry experts that, as a result of COVID-19 conditions, CDCR cannot fully implement the provisional telepsychiatry policy by the August 24 deadline. (Mehta Decl. Supp. Defs.' Mot. Ext. Time ¶3.) On August 20, Defendants' counsel again spoke with the Special Master concerning the telepsychiatry implementation issues. Thereafter, the Special Master arranged a meet and confer with Plaintiffs and Defendants to discuss the need for extending the August 24 deadline for certain aspects of the policy. (*Id.* ¶ 5.) On August 21, the parties and Special Master's experts met and conferred to discuss Defendants' request for additional time to implement all provisions of the policy. (*Id.* ¶ 6.) During this meeting, the Special Master stated he could not agree to a stipulation. (*Id.*) That afternoon, Defendants sent a draft stipulation to Plaintiffs and the Special Master extending implementation as to only those portions of the policy impacted by COVID-19, and sought comments from the parties. (*Id.*) No response was received. (*Id.*)

Given the telepsychiatry policy's current August 24 implementation date, Defendants now move for relief from that deadline seeking an extension of time to implement portions of the telepsychiatry policy. Nevertheless, Defendants remain willing to negotiate with Plaintiffs and the Special Master to reach an appropriate stipulation that will allow CDCR to extend implementation of certain narrow components of the provisional telepsychiatry policy to keep inmates safe during this ongoing worldwide pandemic. (*Id.*)

4

Defs.' Expedited Mot. Extend Time Implement Telepsychiatry Policy (2:90-cv-00520 KJM-DB (PC))

# RELEVANT LAW

Once a case schedule has been set, that schedule can be modified "only for good cause and with the judge's consent." *See* Federal Rule of Civil Procedure 16(b)(4). "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). "Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification." *Id.* Defendants have strong grounds to modify the schedule for implementation of CDCR's provisional telepsychiatry policy.

# ARGUMENT

As explained in the supporting declaration of psychiatrist Dr. A. Mehta, CDCR's Acting Deputy Director of Statewide Mental Health Program, and formerly the Statewide Chief of Telepsychiatry, there are several reasons why COVID-19 is preventing CDCR from fully implementing the telepsychiatry plan. Staffing and movement limitations within the telepsychiatry program and in other classifications in CDCR have led to certain restrictions on CDCR's ability to fully implement the provisional telepsychiatry policy. (Mehta Decl. ¶¶ 5-7.) Specifically, there are six policy provisions that cannot be fully implemented under restrictions imposed for public health reasons. CDCR is prepared to implement most of the provisional telepsychiatry policy by the August 24 deadline, but requires additional time because it cannot operationalize the six specific provisions described below for COVID-19-related reasons. (*Id.* ¶ 11.) When certain conditions are satisfied for each item, they can then be implemented and the requested continuance will no longer be necessary.

The following aspects of CDCR's provisional telepsychiatry policy cannot be implemented by the present August 24 deadline due to COVID-19 public health considerations:

<u>On-Site Periodic Site Visits.</u>

1.  The main provision that cannot be fully implemented is the requirement for periodic site visits by all line telepsychiatry staff. (Mehta Decl. ¶ 5.) Due to the risks of contracting and transmitting COVID-19, inmate visits and all non-essential staff movements have been suspended

5

Defs.' Expedited Mot. Extend Time Implement Telepsychiatry Policy (2:90-cv-00520 KJM-DB (PC))

within CDCR. (*Id.*) In cases where staff enter and exit institutions, they are required to get routine COVID-19 testing, and no such regular system currently exists for the telepsychiatry hub buildings. (*Id.*) And telepsychiatrists cannot safely continue site visits without appropriate public health precautions. (*Id.*)

<u>Telepsychiatrists Working Out of Hubs.</u>

2. The provisional policy requires telepsychiatrists to work from CDCR-operated California hubs supervised by local civil service psychiatry supervisors. But as a result of COVID-19, many telepsychiatrists are currently tele-working from their homes. (Mehta Decl. ¶ 6.) Those psychiatrists are being supervised using task logs, with extra Internet technology support, regular check-ins with senior psychiatrists, and regular staff meetings. (*Id.*)

<u>Use of Additional Classifications as Tele-Presenters.</u>

3. The provisional policy sets forth approved classifications that may act as tele-presenters. Dental Assistants are not one of the approved classifications that may be used as tele-presenters, but CDCR is using them to provide those services under COVID-19 conditions to ensure sufficient numbers of tele-presenters. (Mehta Decl. ¶ 7.)

<u>Cell-Front Contacts.</u>

4. The provisional policy does not count non-confidential telepsychiatry contacts, including cell-front contacts, as a Program Guide required clinical contact. But under COVID-19 social distancing restrictions, CDCR must do cell front contacts for situations like "rounding," which are a recognized exception in the COVID response policy. (Mehta Decl. ¶ 8.)

<u>Telepsychiatrists Providing Care in Temporary Mental Health Units.</u>

5. The provisional policy precludes the use of telepsychiatry to treat patients in the Psychiatric Inpatient Programs and the Mental Health Crisis Bed units. Not surprisingly, COVID-19 has caused some additional staffing shortages—as a result, and to fill the gap, CDCR is currently using telepsychiatrists to provide psychiatry services to patients in its Temporary Mental Health Units. (Mehta Decl. ¶ 9.)

///

///

6

Defs.' Expedited Mot. Extend Time Implement Telepsychiatry Policy (2:90-cv-00520 KJM-DB (PC))

       Patient Concerns About COVID-19 Exposure.

6. The provisional policy contains recommendations for responding to and preventing recurrence of patient refusals. It involves a system to determine the cause of the refusal and attempt to mitigate the circumstances to prevent future refusals. For refusals that are based on patients' desire to avoid exposure to COVID-19, those patients' wishes will be respected and CDCR will work with the patients' to offer education about infection prevention strategies. (Mehta Decl. ¶ 10.)

          \*     \*     \*

Except for the above described aspects of CDCR's provisional telepsychiatry policy, CDCR plans to implement that policy by August 24. (Mehta Decl. ¶ 11.) Neither Defendants nor Plaintiffs anticipated that an international pandemic would hit all of CDCR's institutions and affect the nascent provisional telepsychiatry policy. Providing Defendants with additional time to implement these particular aspects of the policy, while allowing the rest of the policy to go forward, will allow the parties to implement a valuable modality of mental health treatment that all parties agree is an integral component to providing inmates with adequate access to mental health services, while protecting staff and patients from the dangers posed by COVID-19. However, because these six aspects of the policy cannot at this time be implemented, the parties will not have sufficient information to assess the efficacy of the telepsychiatry policy at the end of the eighteen-month monitoring period, which begins on August 24. And this informed assessment is necessary to finalize a permanent telepsychiatry policy.

This extension of time to implement these aspects of the telepsychiatry policy will not be permanent. There are conditions that, when achieved, will remove the implementation delay that Defendants are seeking and allow those aspects of the provisional policy to be implemented. (Mehta Decl. ¶¶ 5, 7, 8-9.) Furthermore, the status of telepsychiatry implementation will be regularly discussed in the weekly COVID-19 Task Force meetings and its related clinicians' small work group, which this Court established to provide a forum for policy and operational issues such as this one. Defendants believe that the parties could reassess the need for the

7

Defs.' Expedited Mot. Extend Time Implement Telepsychiatry Policy (2:90-cv-00520 KJM-DB (PC))

COVID-19-related alternative measures every ninety days and report on the status of the need to continue the alternative measures to the Court.

Because of the need to delay implementation of certain aspects CDCR's provisional telepsychiatry policy to provide care to patients while protecting both patients and staff from risks associated with COVID-19, Defendants have shown good cause for relief from the current implementation schedule.

## CONCLUSION

The COVID-19 pandemic creates operational limitations that must be respected for the safety of patients, providers, and staff. In line with these realities, Defendants request that the Court permit CDCR to delay implementation of certain aspects of the provisional telepsychiatry policy, presently due on August 24, impacted by COVID-19 public health concerns. Defendants further request that the Court order the parties to report within ninety days of the entry of an order granting this motion concerning the need for alternative measures to the telepsychiatry policy, and continue to report every ninety days thereafter.

Dated: August 21, 2020

XAVIER BECERRA
Attorney General of California
ADRIANO HRVATIN
Supervising Deputy Attorney General

**/S/ KYLE A. LEWIS**

Kyle A. Lewis
Deputy Attorney General
*Attorneys for Defendants*

CF1997CS0003
34343927.docx

8

Defs.' Expedited Mot. Extend Time Implement Telepsychiatry Policy (2:90-cv-00520 KJM-DB (PC))