XAVIER BECERRA
Attorney General of California
MONICA N. ANDERSON
Senior Assistant Attorney General
ADRIANO HRVATIN
Supervising Deputy Attorney General
ELISE OWENS THORN, State Bar No. 145931
TYLER V. HEATH, State Bar No. 271478
KYLE A. LEWIS, State Bar No. 201041
LUCAS HENNES, State Bar No. 278361
Deputy Attorneys General
  1300 I Street, Suite 125
  P.O. Box 944255
  Sacramento, CA 94244-2550
  Telephone: (916) 210-7325
  Fax: (916) 324-5205
  E-mail: Tyler.Heath@doj.ca.gov
*Attorneys for Defendants*

ROMAN M. SILBERFELD, State Bar No. 62783
GLENN A. DANAS, State Bar No. 270317
ROBINS KAPLAN LLP
  2049 Century Park East, Suite 3400
  Los Angeles, CA 90067-3208
  Telephone: (310) 552-0130
  Fax: (310) 229-5800
  E-mail: RSilberfeld@RobinsKaplan.com
*Special Counsel for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **RALPH COLEMAN, et al.,**<br><br>　　　　　　　　　　　Plaintiffs,<br><br>　　v.<br><br>**GAVIN NEWSOM, et al.,**<br><br>　　　　　　　　　　　Defendants. | 2:90-cv-00520 KJM-DB (PC)<br><br>**DECLARATION OF A. MEHTA, M.D., IN SUPPORT OF DEFENDANTS' MOTION FOR EXTENSION OF TIME TO IMPLEMENT TELEPSYCHIATRY POLICY** |

I, A. Mehta, M.D., declare:

1. I am the Acting Deputy Director of the Statewide Mental Health Program for the California Department of Corrections and Rehabilitation (CDCR). I have held this position since July 2020, and before that I was the Statewide Chief of Telepsychiatry. I have worked at CDCR since July 2013, during which time I have also served as a staff telepsychiatrist, site director for residency training, institutional clinical lead, and acting statewide Chief of Psychiatry. I attended residency in Adult Psychiatry, and completed fellowships in both Child & Adolescent Psychiatry

1

Decl. A. Mehta Supp. Defs.' Mot. Ext. Time  (2:90-cv-00520 KJM-DB (PC))

1  and Forensic Psychiatry. I submit this declaration in support of Defendants' motion for an
2  extension of time to implement certain components of CDCR's provisional telepsychiatry policy.
3  I have personal knowledge of the statements in this declaration and could testify to them if called
4  to do so.
5       2.     On February 12, 2020, the parties in the *Coleman* litigation agreed to a provisional
6  telepsychiatry policy governing CDCR's usage of telepsychiatry for its patients in the Mental
7  Health Services Delivery System.  The Court approved the policy on March 27, giving
8  Defendants 120 days to implement the new telepsychiatry policy.  The order anticipated,
9  however, that COVID-19 might require delaying implementation of the new policy and that the
10 120-day period may need to be extended due to the COVID-19 pandemic impacts on CDCR.  On
11 July 24, the parties submitted a request to extend the 120-day period for an additional 30 days to
12 finalize development of the telepsychiatry management tool.  On July 27, the Court approved the
13 request setting the deadline for full implementation on August 24.  The July 27 order also
14 anticipated that another extension of time might be necessary, given the disruptions caused by
15 COVID-19.
16      3.     Due to restrictions mandated by COVID-19 public health considerations and related
17 operational limitations, CDCR requires an extension of the present deadline to implement certain
18 aspects of the provisional telepsychiatry policy, described in greater detail below.  On August 19,
19 this topic was discussed with the Special Master's experts in the Work Group meeting.  A smaller
20 group convened again on August 20 to discuss further details.  We worked closely with the
21 Special Master's experts to determine the limited nature of the exceptions, and to ensure that all
22 were in agreement.  On August 21, the parties met and conferred with the Special Master and his
23 psychiatry expert, to discuss the need for additional time to fully implement the provisional
24 telepsychiatry policy.  CDCR is prepared to implement most of the provisional telepsychiatry
25 policy by the August 24 deadline, but requires this extension because it cannot operationalize the
26 provisions outlined below due to COVID-19 impacts or concerns.  When certain conditions are
27 satisfied for each provision, they can then be implemented and any additional time will no longer
28 be necessary.

2

Decl. A. Mehta Supp. Defs.' Mot. Ext. Time  (2:90-cv-00520 KJM-DB (PC))

### Provisions of the Telepsychiatry Policy that Cannot be Implemented by August 24.

4. Below is a list of the aspects of CDCR's provisional telepsychiatry policy that cannot be implemented by the present August 24 deadline due to COVID-19 public health considerations.

### On-Site Periodic Site Visits.

5. The requirement for periodic site visits by all telepsychiatrists working in telepsychiatry hubs cannot be accomplished because, due to the risks of contracting and transmitting COVID-19, inmate visits and all non-essential staff movements have been suspended within CDCR. (See, *e.g.*, Appendix A to the Parties' July 15, 2020, Stipulation and Update Addressing Current COVID-19 Related Departures from Program Guide Requirements, ECF No. 6761 at 7.) In cases where staff continue to enter institutions, they are required to get routine COVID testing, and no such regular system currently exists for testing at the telepsychiatry hub buildings. CDCR agrees to resume on-site visits under the following parameters:

    a. Telepsychiatrists serving the Enhanced Outpatient Program (EOP), Mental Health Crisis Bed units (MHCB), or the Psychiatric Inpatient Programs (PIP), will resume site visits beginning three months from the date of this stipulation, and will have one month after that time to complete site visits. This additional time with allow CDCR to secure and arrange COVID-19 testing capabilities for telepsychiatry staff, such that testing can occur before conducting on-site visits. Telepsychiatrists serving the Correctional Clinical Case Management System level of care (CCCMS) will be expected to resume site visits beginning four months from the date of this stipulation, and will have one month after that time to complete their site visits. After the initial visit, regular scheduled visits will continue. Site visits will not be required to last one full working day in situations where that would require an overnight stay away from home for the physician.

    b. Situations in which physicians will not be expected to perform site visits include the following:

3

Decl. A. Mehta Supp. Defs.' Mot. Ext. Time  (2:90-cv-00520 KJM-DB (PC))

        i.      the assigned unit is closed due to COVID-19 related reasons (note: a closed institution will have all units closed, but individual units may also be closed without closing the full institution),

        ii.      the physician is high-risk due to advanced age or medical condition, or the physician is the primary care giver for or living with others who are high risk,

        iii.      the physician lives far enough away from their assigned institution to require airline travel and/or an overnight stay,

        iv.      the physician has been instructed to quarantine by a public health authority or is on self-quarantine due to potential exposure to a known contact,

        v.      if the physician's children's school schedule changes due to COVID prohibit the physician from leaving home for the required commute time, and/or

        vi.      other unanticipated public health related reasons that must be discussed in a work group before the exception is to occur.

<u>Telepsychiatrists Working Out of Hubs.</u>

6.    The telepsychiatry policy requires that telepsychiatrists work from CDCR-operated California hubs supervised by local civil service psychiatry supervisors. As part of the temporary procedures approved due to the COVID-19 pandemic, physicians who meet some of the exceptions in section 1(b) above can tele-work from home under strict conditions (e.g. sufficient bandwidth and privacy to support the sessions) to prevent the spread of disease. (See, *e.g.,* Appendix A to the parties' July 15, 2020, Stipulation and Update Addressing Current COVID-19 Related Departures from Program Guide Requirements, ECF No. 6761 at 7.) Telepsychiatry carefully supervises these physicians with weekly task logs, check-ins by Senior Supervisors, staff meetings, ongoing trainings, and dedicated Internet Technology (IT) support.

    a.    In the case of an outbreak at a hub, all employees at that hub will be expected to tele-work wherever possible until such time as the building is disinfected and re-opened.

    b.    This exception will end when the pandemic is officially declared over, when an effective vaccine is widely available and administered, or if a physician's high-risk/exception status is resolved.

Use of Additional Classifications As Telepresenters.

7. The telepsychiatry policy provides that telepresenters may be assigned from position classifications in the following order of priority: medical assistant, certified nursing assistant, psychiatric technician, licensed vocational nurse, registered nurse, clinical nurse specialist, nurse practitioner, social worker, psychologist, psychiatrist, and physician. (See, *e.g.*, Appendix A to the parties' July 15, 2020, Stipulation and Update Addressing Current COVID-19 Related Departures from Program Guide Requirements, ECF No. 6761 at 7, 17, 23-24.) Due to staffing limitations brought about by COVID-19, additional classifications such as dental assistants or others are being used as telepresenters in rare cases. All new telepresenters receive standardized training and support across all institutions. This exception to the policy will end when approved telepresenters are available.

Cell-Front Contacts.

8. The telepsychiatry policy does not count non-confidential telepsychiatry contacts, including cell-front contacts, as a Program Guide-required clinical contact. Depending on the staffing "tier" that an institution reports during COVID restrictions, clinicians are permitted to perform cell front sessions with patients in Tier 3 or 4 conditions when other options would constitute an unacceptable risk of infection. (See, *e.g.*, Appendix A to the parties' July 15, 2020, Stipulation and Update Addressing Current COVID-19 Related Departures from Program Guide Requirements, ECF No. 6761 at 8, 17.) Telepsychiatrists have also been participating in this process. These cell-front contacts do not count as Program Guide-mandated visits for telepsychiatrists, but are acceptable alternatives while these exceptions continue. This exception will end when the institution is able to return to Tier 1 or 2.

Telepsychiatrists Providing Care in Temporary Mental Health Units.

9. The telepsychiatry policy does not address treatment provided in the Temporary Mental Health Units (TMHUs), which are equivalent to inpatient level of care. Due to yard conversions and staffing shortages, some telepsychiatrists are treating patients in a TMHU setting, when they would not otherwise be providing treatment in an inpatient level of care. To minimize the use of telepsychiatry in a TMHU, CDCR will monitor provider assignments, report

5

Decl. A. Mehta Supp. Defs.' Mot. Ext. Time  (2:90-cv-00520 KJM-DB (PC))

on use of telepsychiatrists providing treatment in TMHUs, and prioritize on-site staff to inpatient coverage. The use of telepsychiatrists to provide inpatient and crisis bed level of care will end when on-site staff are available to take over the TMHU caseload, or when CDCR stops use of TMHUs.

<u>Patient Concerns About COVID-19 Exposure.</u>

10. The telepsychiatry policy contains recommendations for responding to and preventing the recurrence of patient refusals, including a system to determine the cause of the refusal and efforts to mitigate the patient's circumstances to prevent future refusals. For refusals that are based on patients' desire to avoid exposure to COVID-19, those patients' wishes will be respected and CDCR will work with the patients' to offer education about infection prevention strategies.

11. Except for the above described aspects of CDCR's provisional telepsychiatry policy, CDCR can fully implement that policy by August 24. Implementation of these identified items, however, should be delayed given the serious public health considerations and limitations imposed by the COVID-19 pandemic. As described above, there are conditions that, when achieved, will remove the need for the implementation delay that Defendants are seeking. CDCR's goal remains to fully implement all aspects of the provisional telepsychiatry policy when public health considerations and other limitations posed by the pandemic are resolved.

I declare under penalty of perjury that the information in this declaration is true and correct to the best of my knowledge. Executed on August 21, 2020, at San Quentin, California.

*/s/ A. Mehta*
A. Mehta, M.D.

CF1997CS0003

6

Decl. A. Mehta Supp. Defs.' Mot. Ext. Time  (2:90-cv-00520 KJM-DB (PC))