DONALD SPECTER – 083925
STEVEN FAMA – 099641
MARGOT MENDELSON – 268583
PRISON LAW OFFICE
1917 Fifth Street
Berkeley, California 94710-1916
Telephone: (510) 280-2621

CLAUDIA CENTER – 158255
DISABILITY RIGHTS EDUCATION
AND DEFENSE FUND, INC.
Ed Roberts Campus
3075 Adeline Street, Suite 210
Berkeley, California 94703-2578
Telephone: (510) 644-2555

MICHAEL W. BIEN – 096891
JEFFREY L. BORNSTEIN – 099358
ERNEST GALVAN – 196065
THOMAS NOLAN – 169692
LISA ELLS – 243657
JENNY S. YELIN – 273601
MICHAEL S. NUNEZ – 280535
JESSICA WINTER – 294237
MARC J. SHINN-KRANTZ – 312968
CARA E. TRAPANI – 313411
ALEXANDER GOURSE – 321631
AMY XU – 330707
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
Telephone: (415) 433-6830

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>  Plaintiffs,<br><br>  v.<br><br>GAVIN NEWSOM, et al.,<br><br>  Defendants. | Case No. 2:90-CV-00520-KJM-DB<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' EXPEDITED MOTION TO CONTINUE AUGUST 31, 2020 BRIEFING DEADLINE AND SEPTEMBER 10, 2020 HEARING, OR IN THE ALTERNATIVE, FOR RECONSIDERATION OF JULY 30, 2020 ORDER**<br><br>Judge: Kimberly J. Mueller |

[3601736.2]

Defendants present no good cause for vacating the August 31, 2020 briefing deadline or the September 10, 2020 hearing date set by the order of July 30, 2020 (Dkt. No. 6794.) The only reasons given are that Defendants wish to spend the next four months developing a factual record to answer questions that the Court has not asked. Defendants assert that they need months of expert tours of the prisons for a purpose never clearly stated, but that appears to be for attacking the necessity of the 2009 Staffing Plan that Defendants themselves developed. The July 30, 2020 order asks for no briefing on the necessity of the 2009 Staffing Plan, but only the means available to comply with it. Similarly Defendants say they need months of preparation to defend against a prisoner release order. Yet the July 30, 2020 order says nothing about a prisoner release order, but instead asks directly whether Defendants will implement a *voluntary* reduction. As none of the time-consuming projects described in the "Expedited Motion" are necessary to answer the Court's questions, no four-month extension is needed and the "Expedited Motion" should be denied.

In the alternative, if the Court is inclined to accommodate Defendants' scheduling concerns, an extension of time of not more than 14 days should be considered.

## ARGUMENT

**I.  WHAT DEFENDANTS REFER TO AS A "PROPER DEFENSE" IS ACTUALLY AN OUTRIGHT REFUSAL TO ANSWER THE COURT'S QUESTIONS, SO THAT DEFENDANTS CAN INSTEAD RELITIGATE THINGS ALREADY DECIDED IN THIS CASE.**

   **A.  The Staffing Questions Are About What is Needed Now to Comply with the 2009 Staffing Plan, Not What is Needed to Attack the Defendants' Own Plan.**

The July 30, 2020 Order requires briefing on five questions. None of these five questions require four months of expert study of the prisons to answer. Instead of answering the Court's questions, Defendants now want to relitigate their 2009 Staffing Plan. They say they need time to gather a group of staffing experts, and send them on extensive prison tours in order to develop evidence regarding "the 10% hiring vacancy figure," "the performance of CDCR compared to other state prison systems," and

[3601736.2]

PLAINTIFFS' OPPOSITION TO DEFENDANTS' "EXPEDITED MOTION"

1  "[w]hether CDCR clinicians are currently and historically meeting the needs of the
2  *Coleman,* class population" among other things. (Dkt. No. 6830-2, Declaration of Roman
3  Silberfeld Para. 4.) While Defendants are free to commit whatever time and resources they
4  need to investigate these issues, there is no need to investigate them in order to answer the
5  actual questions in the Court's July 30, 2020 order.

6  The two staffing questions in the July 30, 2020 order are: "What remedies are
7  available to the court to enforce its October 10, 2017 order with response to defendants'
8  2009 Staffing Plan," and "What remedies are available for the shortfall in staffing required
9  for the psychiatric inpatient programs operated by the California Department of
10 Corrections and Rehabilitation." (Dkt. No. 6794 at 8:17-22.) These are not questions
11 about the reasons for the 10% hiring vacancy figure, nor about comparisons with other
12 states, nor about how the system performs while understaffed. They are questions about
13 how the Court can enforce the existing plans. The answers concern what the Court can
14 order, not the ways Defendants can try to prove that standards they developed are wrong.

15 As the Court has pointed out, Defendants have had many opportunities to defend
16 the currently understaffed system, or to develop new staffing plans to replace the 2009
17 Staffing Plan. Defendants made these same arguments in the briefing that led to the
18 October 10, 2017 Order. (Dkt. No. 5711 at 12-13.) They made the same arguments in
19 support of their 2013 termination motion. (*Id.* at 14.) The Court has noted that the
20 interstate comparisons that Defendants now want four months to develop were already
21 included as "an aid to development of the 2009 Staffing Plan." (*Id.* at 17.) The Court has
22 given the Defendants many opportunities to revise and revisit the clinician-patient ratios in
23 the 2009 Staffing Plan. (*Id.* at 19.)

24 The expert staffing review that Defendants now describe would be duplicative of
25 the extensive review they performed in 2018. (Dkt. No. 5765 at ECF 5 (describing
26 Defendants' retention of experts "to provide evidence regarding the court-ordered staffing
27 ratios, in response to the Court's October 10, 2017 staffing order, in order to support
28 Defendants' position that the staffing ratios for psychiatrists were unnecessarily high.").)

[3601736.2]                                  2
PLAINTIFFS' OPPOSITION TO DEFENDANTS' "EXPEDITED MOTION"

If Defendants want to re-do their 2018 outside expert study to again attack their own 2009 Staffing Plan, they are free to do so. But their choice to engage in such a wasteful endeavor is not excuse to further delay the remedies so desperately needed now by prisoners with serious mental illness.

### B. Defendants Do Not Need Four Months to "Defend" Against a Prisoner Release Order—They Simply Need to Answer the Question Regarding a Voluntary Population Reduction.

The population questions do not require four months to answer. The first question is just arithmetic—applying the 2009 Staffing Plan ratios to determine how many patients the existing workforce can serve. The second question is whether Defendants can develop a voluntary plan to permanently reduce the number of patients to the number provided in answer to question one. And question three seeks "a description of the contours of such a plan." Defendants claim that they need to develop an entire three-judge court record to defend against a prisoner release order to answer these questions. They do not. The first question is arithmetic; the second question is yes or no, and the third question is what a voluntary plan would look like. They do not need four months to answer these questions.

Nor should these questions be a surprise to anyone. First, the parties have been meeting and conferring for years about the need for targeted population relief for the *Coleman* class. (Dkt. No. 6529 at ECF Page 2, Para 2 (describing the past two years of "ongoing discussions with Defendants about the need to reduce the number of prisoners with serious mental illness in CDCR in light the ongoing chronic shortage of clinical staff, specialized treatment beds, and treatment and office space").) Second, the Special Master and the Court have addressed the question for at least the last four years. (Dkt. No. 5852 at ECF Page 6 ("The question of whether the number of seriously mentally ill inmates may exceed defendants' capacity [footnote omitted] to meet their constitutional obligations to the plaintiff class has been lurking for at least two years" before July 12, 2018).) Third, the Court required the parties to brief the question of a sua sponte three-judge court referral in early July. (Dkt. No. 6750 (Order of July 2, 2020); No. 6766 (Plaintiffs' Brief); No. 6769 (Defendants' Brief).)

## II. There Are No Grounds to Reconsider the July 30 Order.

Reconsideration requires new facts or good cause for why facts now asserted were not previously presented. (E.D. Cal. Local Rule 230(j).) Neither standard is met here. (In this section, the Defendants' outlining is off, as Sections III, IV, and V attempt to set forth grounds for reconsideration. For clarity's sake, each ground is set forth below in subsections A, B and C.)

### A. On-going Population Reductions Are Not New Facts and Are Not Focused on the *Coleman* Class.

Defendants point to their efforts to identify prisoners for release in response to the pandemic. The current population reduction efforts were announced six weeks before July 30. (*Plata v. Newsom,* No. 4:01-cv-01351-JST, Dkt. No. 3356 (filed June 18, 2020).) They are therefore not "new facts." Nor are the current population reduction efforts in any way directed at the *Coleman* class. (*See* Dkt. No. 6766 at 10.)

In any event, Defendants have demonstrated in their "Expedited Motion" that they have the data at their fingertips regarding the current size of the *Coleman* class. Nothing stops them from using this data to answer the Court's questions regarding the size of the voluntary reduction necessary to bring the population in line with the current staffing levels.

### B. Preparation of a New Staffing Plan is Not Grounds for Reconsideration.

Defendants acknowledge that there is nothing new about the fact that they are preparing a new staffing plan: "Defendants have consistently worked on staffing plans since 2015 . . . ." (Dkt. No. 6830 at 8:21.) Defendants have had plenty of time to develop a new staffing plan. (Dkt. No. 5711 at 19 (describing efforts commencing in 2014).) The *Coleman* class of persons in need of mental health treatment now has a right to have *some* plan enforced at *some* time. Defendants cannot forever kick the can down the road while they write plan after plan, always making the same justification that the last plan cannot be enforced because they are now writing a new one.

### C. The Benchmarks that Apply to the July 30, 2020 Order Are Crystal Clear.

Defendants' complaint about "benchmarks" is misplaced here because it is not a new fact relevant to reconsideration; it is their perennial complaint. They admit it was fully discussed at the most recent quarterly status conference. (Dkt. No. 6830 at ECF Page 9.) They offer a snippet of that conference for the notion that they are waiting around for the Court to clarify benchmarks, and are helpless until that happens. There is no ambiguity about the benchmarks; they are clear in the Program Guides and the Special Master's reports. That Defendants would like to now engage in a four-month process of study for the purpose of moving the benchmarks to match their current performance (rather than performing to meet the benchmarks) does not make the benchmarks unclear. Even the snippet that Defendants quote from the July 17, 2020 quarterly status conference makes it evident that staffing benchmarks are already clarified. (Transcript of July 17, 2020 status conference at 11:9-11 (noting that the Court has "clarified the benchmark with respect to staffing").)

### CONCLUSION

As they have many times before in this case, Defendants would like to embark on a long process of study to attack the clear benchmarks set in this case for mental health system staffing. They ask the Court to indefinitely suspend any briefing and hearing on their ability to meet the current staffing benchmarks so they can develop and present new ones. Meanwhile, the *Coleman* class is supposed to wait, with no enforcement of the current benchmarks. The current benchmarks have been studied and litigated for years. They should be enforced now. Defendants, a very large state agency, represented by one of the largest legal organizations in the country, can do two things at once. They can comply with the staffing benchmarks, while also developing a justification for changing them. The "expedited motion" for more delay should be denied.

At most, only a 14-day extension of time should be considered to allow Defendants to correct their misunderstanding of the July 30, 2020 Order and actually answer the

questions presented therein.

**CERTIFICATION**

Plaintiffs' counsel certifies that he has reviewed the following orders relevant to this filing: ECF Nos. 1383 (June 13, 2002), 5711 (Oct. 10, 2017), 5852 (July 12, 2018), 6435 (Dec. 23, 2019), 6441 (Jan. 7, 2020), 6466 (Feb. 14, 2020), 6600 (Apr. 10, 2020), 6750 (July 2, 2020) and 6794 (July 30, 2020).

DATED: August 23, 2020

Respectfully submitted,

ROSEN BIEN GALVAN & GRUNFELD LLP

By: */s/ Ernest Galvan*
Ernest Galvan

Attorneys for Plaintiffs

[3601736.2]

6

PLAINTIFFS' OPPOSITION TO DEFENDANTS' "EXPEDITED MOTION"