DONALD SPECTER – 083925
STEVEN FAMA – 099641
MARGOT MENDELSON – 268583
PRISON LAW OFFICE
1917 Fifth Street
Berkeley, California 94710-1916
Telephone: (510) 280-2621

CLAUDIA CENTER – 158255
DISABILITY RIGHTS EDUCATION
AND DEFENSE FUND, INC.
Ed Roberts Campus
3075 Adeline Street, Suite 210
Berkeley, California 94703-2578
Telephone: (510) 644-2555

MICHAEL W. BIEN – 096891
JEFFREY L. BORNSTEIN – 099358
ERNEST GALVAN – 196065
THOMAS NOLAN – 169692
LISA ELLS – 243657
JENNY S. YELIN – 273601
MICHAEL S. NUNEZ – 280535
JESSICA WINTER – 294237
MARC J. SHINN-KRANTZ – 312968
CARA E. TRAPANI – 313411
ALEXANDER GOURSE – 321631
AMY XU – 330707
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
Telephone: (415) 433-6830

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>GAVIN NEWSOM, et al.,<br><br>    Defendants. | Case No. 2:90-CV-00520-KJM-DB<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' EXPEDITED MOTION FOR EXTENSION OF TIME TO IMPLEMENT TELEPSYCHIATRY POLICY**<br><br>Judge: Hon. Kimberly J. Mueller |

This Court should not countenance Defendants' attempts to continue to delay full implementation of the stipulated telepsychiatry policy for reasons unrelated to the express purpose of the original 120-day deferred implementation period, which was solely to provide Defendants time to develop tracking and reporting tools. Defendants already received an additional thirty days to complete those projects, and have reported they are in fact now complete.

Instead of now simply implementing the policy as required by the Court's March 27 and July 24, 2020 Orders, Defendants' "expedited motion" requests an indefinite delay based on a false premise that Defendants have had insufficient time to plan how to meet the policy's requirements, most of which have been court-ordered for years and the rest of which the parties and Special Master agreed were appropriate to ensure minimally adequate treatment, in lieu of in-person psychiatric treatment. Defendants have been using telepsychiatry for a decade and continue to use it today. The only thing new is an actual policy comporting with the Court's orders, and tools to permit Defendants and the Special Master to monitor how telepsychiatry is actually being employed in the field.

While the onset of the pandemic has complicated matters, all of the deviations Defendants identify and seek permission to indefinitely employ have been readily apparent since the day the stipulated policy was filed with the Court. Yet Defendants have taken no steps in the interim months to proactively address the deviations and plan for achieving compliance in the months and potentially years that COVID-19 will impede the provision of mental health treatment in the prisons. Instead, they simply ask for a permanent pass from this Court, even though it has expressly declined to accept such departures from the required standards as inconsistent with the Eighth Amendment remedy in this case. *See* July 28, 2020 Order at 1-3, ECF No. 6791 ("July 28 Order").

This Court should order Defendants to comply with the March 27, 2020 order and fully implement the telepsychiatry policy, including working with the Special Master and Plaintiffs to develop a clear, measurable plan for achieving compliance as part of their overall remediation of all areas of mental health care currently below Program Guide

standards. *See* Joint Statement in Response to July 28, 2020 Order at 10-17, ECF No. 6831; *see also* July 28 Order at 2-3.

## ARGUMENT

### I. DEFENDANTS' REQUEST FOR ADDITIONAL DELAY IS IMPROPER

After the onset of COVID-19, the parties agreed to, and the Court approved, a 120-day delay in the implementation of the telepsychiatry policy for the sole and specific purpose of permitting Defendants adequate time to develop the tracking and reporting mechanisms required by the policy and attendant stipulation. *See* March 27, 2020 Stipulated Order ("March Telepsych Order") at 2, ECF No. 6539 ("The parties agree that … the provisional period will last eighteen months from the date of the policy's full implementation throughout CDCR, which will occur within 120 days of the date of the Court's approval of this stipulation. During this 120-day period, Defendants will complete the internal monitoring process which will allow Defendants to provide notice to Plaintiffs and the Special Master, as required by the provisional policy"). The four-month period was not a general grace period, as indeed most of the core components of the policy had already been recommended by the Special Master and ordered by this Court more than two years earlier, after Defendants presented a dramatically expanded vision for their telepsychiatry program in their own remedial staffing plan. *See* Oct. 10, 2017 Order at 20-23, 30, ECF No. 6711; *see also* July 3, 2018 Order at 4-7, ECF No. 5850, *aff'd* at Mem. Order, Ninth Cir. No. 18-1645 (Dec. 24, 2019) (dismissing appeal of July 3, 2018 order).

The parties understood at the time of the March stipulation that COVID-19 might complicate and possibly even delay CDCR's completion of the internal monitoring tools, and thus built in a mechanism for meeting and conferring about extensions for that purpose. *See* March Telepsych Order at 2. Indeed, Plaintiffs stipulated to just such a 30-day extension, after confirming that CDCR had "worked diligently to construct and implement CDCR's Telepsychiatry Resource Management Tool, and educate mental health program staff throughout CDCR regarding the tool's use" but needed an additional month to complete the task given "resource conflicts and operational exigencies posed by

3

1  the COVID-19 pandemic." July 27, 2020 Stipulated Order at 2, ECF No. 6789. At no
2  point during the discussions regarding Defendants' first request for an extension of time
3  did Defendants suggest they believed the March stipulated order anticipated or permitted
4  further delays of the implementation period past the completion of the tracking tool. Nor
5  did Defendants raise any concerns whatsoever about the start of the implementation period
6  beyond those related to completion of the tracking and reporting mechanism. *See id.*

7  Indeed, while Defendants referenced at various points over the last month the fact
8  that they are routinely deviating from the telepsychiatry policy pursuant to their COVID-
9  19 interim emergency policies, those deviations are wholly unsurprising and indeed had
10 already been expressly highlighted for months in the parties' Program Guide departures
11 filings. *See, e.g.*, Appx. A to May 20, 2020 Stipulation and Proposed Order re Program
12 Guide Departures, ECF No. 6679, at 9-10 (noting that March 25, 2020 COVID-19 Mental
13 Health Delivery of Care Guidance & Tier Document permits departures from stipulated
14 telepsychiatry policy filed that same day, and approved on March 27, 2020). But in all of
15 those communications, Defendants never raised the possibility of a delayed
16 implementation start with Plaintiffs until the day they filed their motion. Indeed, even
17 after Defendants first requested on the morning of August 21 – the filing date of their
18 "expedited motion" -- that Plaintiffs consider stipulating to the relief they now seek from
19 the Court, they did not provide Plaintiffs and the Special Master with a proposed
20 stipulation until after 4pm PST (well into the evening for the Special Master) that Friday.
21 And Defendants certainly never mentioned orally or in writing that they would file an
22 emergency motion that same day if Plaintiffs did not immediately respond to their late-
23 afternoon proposal. The very notion that Defendants' motion warrants "expedited"
24 consideration is laughable, given any exigency is of Defendants' own making by failing to
25 appropriately meet and confer before the day of their filing even though the issues of
26 which they complain have been well known for five months. Even if the Court were
27 inclined to read the language of the March stipulated order as anticipating a COVID-
28 related delayed implementation of substantive provisions of the policy (rather than merely

one to complete the reporting and tracking tool), Defendants' failure to meaningfully meet and confer before filing their "expedited motion" itself warrants a denial of the requested relief.

Defendants have represented to the Special Master and Plaintiffs that the Telepsychiatry Resource Management Tool needed for internal monitoring and reporting on the requirements of the court-ordered telepsychiatry policy is now complete.  That was the only reason for the delayed implementation date, or the 30-day extension of that period, in the first place.  With CDCR's tool in place, the Special Master can and should commence monitoring compliance for the eighteen-month provisional period approved by this Court.  Defendants have presented no good basis for expanding the delayed implementation start date beyond the express purpose of the parties' stipulation and this Court's order, much less one justifying expedited treatment without any meaningful attempt to meet and confer.  Their request should be denied.

## II.  DEFENDANTS' REQUEST FOR ADDITIONAL DELAY IS UNWARRANTED

Moreover, Defendants' request that this Court bless indefinitely their attempts to water down their own telepsychiatry policy, and therefore indefinitely delay monitoring and finalization of that policy for purposes of the Program Guide, is unwarranted.  As with all of their ongoing failures to comply with Program Guide requirements, Defendants have displayed no serious effort to plan for the provision of appropriate care during this "new normal" of COVID-19.  *See* Joint Statement in Response to July 28, 2020 Order at 10-17, ECF No. 6831; *see also* July 28 Order at 2-3.  Rather than present a plan to Plaintiffs, the Special Master, or this Court demonstrating measurable goals and benchmarks to bring treatment closer to, if not fully in line with, the existing court-ordered requirements, Defendants simply ask this Court to allow them to delay trying until the pandemic is "officially declared over" or a vaccine is widely available, *see* Mehta Decl. ¶ 6, ECF No. 6833-1, and promise vaguely to do their best in the meantime, *see id*. ¶¶ 7-8 (requesting implementation of various provisions be deferred until clinical staff become available).

And at the same time, Defendants ask this Court to push back the Special Master's monitoring of the provisions in question – thereby indefinitely delaying the finalization of their telepsychiatry policy and the remedy in this case.

In casting their request as a motion merely to modify a scheduling order in deferring the implementation date, Defendants appear to forget that many of the provisions at issue here – including on-site prison visits, prohibitions on using telepsychiatry to treat patients needing inpatient care, and limitations on non-confidential cell-front telepsychiatry – have been court-ordered since 2017 or incorporate the formal recommendations of the Special Master, well before the Court ordered Defendants' telepsychiatry policy implemented in March 2020. *See* Oct. 10, 2017 Order at 20-23, 30, ECF No. 6711; *see also* Special Master August 2, 2018 Report re Proposed Telepsychiatry Policy Addendum at 10, ECF No. 5872. Indeed, the confidential treatment requirement that Defendants now seek to evade flows directly from the Program Guide. *See* Aug. 14, 2019 Order at 7-8, ECF No. 6242. Even pre-pandemic, Defendants had already failed for years to comply with or take meaningful steps to implement these requirements to ensure the safety and efficacy of telepsychiatry. Indeed, Defendants have been utilizing telepsychiatry since at least 1999 with no formal policy governing its appropriate use. *See* Special Master May 6, 2016 Twenty-Sixth Round Monitoring Report at 20, ECF No. 5349.

What Defendants ask here is for the Court to approve indefinitely the telepsychiatry-related departures the parties have identified since March on the grounds that the pandemic remains ongoing. But this Court already considered that proposition and declined to do so in the July 28, 2020 order. *See* ECF No. 6791 at 1-3. Rather than seek formal approval (again) for maintaining the status quo of compromised care, Defendants could have spent the last five months coming up with a plan to address the pandemic-related complications of which they now complain. For instance, although Defendants chief contention is that the on-site periodic site visits required since the Court's October 10, 2017 Order cannot be conducted due to lack of staff testing protocols for telepsychiatrists, CDCR does not say why they could not have secured testing many

months ago, as they have for other staff required to enter institutions. *See* Expedited Motion at 5-6, ECF No. 6833. Indeed, the insinuation that telepsychiatrists were not prioritized for testing earlier because of CDCR's restrictions on "non-essential staff movements" reveals the fact that Defendants do not take class members' rights to constitutionally adequate care seriously enough to categorize mental health clinicians as the essential workers they unquestionably are. *See id.* And Defendants ask this Court to bless their choice to continue flouting the October 10, 2017's order prohibiting telepsychiatry in inpatient units – including the make-shift TMHUs that admittedly fall far below Program Guide required care—without making any attempt to describe what efforts, if any, they have made to ensure in-person psychiatry coverage of those units in the five months they have existed. *See id.* at 6. Indeed, the stipulated telepsychiatry policy already has a protocol for just this scenario, but Defendants prefer a carte blanche instead until, at some unspecified time in the future, "on-site staff are available to take over the TMHU caseload, or when CDCR stops use of the TMHUs." Mehta Decl. ¶ 9, ECF No. 6833-1; *see also* March Telepsych Order at 7-8.

Meanwhile, Defendants ask for permission to expand perpetually their use of non-confidential telepsychiatry in lieu of appropriate treatment in a confidential space because cell-front contacts, where prisoners are forced to shout at their virtual doctors through food ports, are apparently now a "recognized exception" to long-standing Program Guide requirements. *See* Expedited Motion at 6, ECF No. 6833. Again, Defendants do not explain why the same tele-presenter who wheels the telepsychiatry equipment cell-front cannot simply facilitate the treatment in a confidential space while utilizing appropriate mask and PPE protocols, or what steps would need to occur to allow for appropriate confidential treatment to happen, including by an on-site psychiatrist if necessary. And Defendants ask this Court to officially sanction their plan to allow frightened class members to simply forgo psychiatric treatment if they fear COVID-19. *See* Expedited Motion at 7, ECF No. 6833. But the protocols in the telepsychiatry policy Defendants seek to skip are specifically designed to encourage the patient's clinical team to address the root

causes of refusals so that patients can engage in mental health treatment. *See* March Telepsych Order at 6-7. The fact that seriously mentally ill patients are legitimately afraid of COVID-19, like the rest of the world, is no excuse to skip Program Guide-required treatment; if anything, it calls for interventions above and beyond those required by the reasonable protocols in the telepsychiatry policy Defendants want to forgo, apparently for the duration of the pandemic.

Instead of granting Defendants' motion, the Court should allow the 18-month provisional monitoring period contemplated by the March stipulated telepsychiatry order to proceed as scheduled. As this Court has noted, monitoring of Defendants' actual practices against court-ordered requirements during the pandemic is an essential part of the remediation in this case. *See* July 28, 2020 Order at 3, ECF No. 6791. During that period, Defendants should be required to come up with a plan, with measurable goals and benchmarks, to bring the mental health care provided in the system back up to required standards notwithstanding the pandemic, rather than continuing to ask this Court to perpetually countenance the emergency half-measures Defendants installed five months ago and have never revisited. Anything less simply erodes the already poor mental health care provided to seriously ill class members and perpetuates the constitutional violations in this case.

DATED: August 25, 2020

Respectfully submitted,

ROSEN BIEN GALVAN & GRUNFELD LLP

By:    */s/ Lisa Ells*
        Lisa Ells

Attorneys for Plaintiffs

8
PLAINTIFFS' OPPOSITION TO DEFENDANTS' EXPEDITED MOTION FOR EXTENSION OF TIME TO IMPLEMENT TELEPSYCHIATRY POLICY
[3602354.5]