| | |
|---|---|
| XAVIER BECERRA<br>Attorney General of California<br>MONICA N. ANDERSON<br>Senior Assistant Attorney General<br>ADRIANO HRVATIN<br>Supervising Deputy Attorney General<br>ELISE OWENS THORN, State Bar No. 145931<br>TYLER V. HEATH, State Bar No. 271478<br>KYLE A. LEWIS, State Bar No. 201041<br>LUCAS HENNES, State Bar No. 278361<br>Deputy Attorneys General<br>  1300 I Street, Suite 125<br>  P.O. Box 944255<br>  Sacramento, CA 94244-2550<br>  Telephone: (916) 210-7325<br>  Fax: (916) 324-5205<br>  E-mail: Tyler.Heath@doj.ca.gov<br>*Attorneys for Defendants* | ROMAN M. SILBERFELD, State Bar No. 62783<br>GLENN A. DANAS, State Bar No. 270317<br>ROBINS KAPLAN LLP<br>  2049 Century Park East, Suite 3400<br>  Los Angeles, CA 90067-3208<br>  Telephone: (310) 552-0130<br>  Fax: (310) 229-5800<br>  E-mail: RSilberfeld@RobinsKaplan.com<br>*Special Counsel for Defendants* |

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **RALPH COLEMAN, et al.,**<br><br>                          Plaintiffs,<br><br>v.<br><br>**GAVIN NEWSOM, et al.,**<br><br>                          Defendants. | 2:90-cv-00520 KJM-DB (PC)<br><br>**DECLARATION OF KYLE A. LEWIS IN SUPPORT OF DEFENDANTS' MOTION TO MODIFY** |

I, Kyle A. Lewis, declare:

1. I am a Deputy Attorney General in the California Office of the Attorney General, representing Defendants in this matter. I submit this declaration in support of Defendants' motion to modify the Court's orders under Federal Rule of Civil Procedure 60(b). I have personal knowledge of the contents of this declaration and could testify to them if called to do so.

2. During an All Parties Meeting on July 23, 2020, Defendants proposed to the Special Master and Plaintiffs that the parties come to an agreement concerning Defendants' notification

1

or consultation of the Special Master or Plaintiffs before taking actions that impact *Coleman* patient transfer to, use of, or availability of inpatient care treatment beds at State facilities in response to emergency situations, including responses to viral outbreaks or other exigencies. Plaintiffs' counsel expressed willingness to listen to Defendants' proposal, and the Special Master was encouraged that the parties were keeping an open dialogue. Defendants agreed to circulate a proposed notification plan among the parties for review and further discussion.

3. On August 4, Defendants delivered a proposed emergency notification procedure concerning mental health program bed changes to the parties, and invited further dialogue concerning it. A true and correct copy of this document, titled "*Coleman* Emergency Notification Proposal," is attached as Exhibit A.

4. During an All Parties Meeting on August 13, the parties discussed Defendants' proposed bed change emergency notification process. The Special Master asked questions about Defendants' issues with the current orders governing notification and consultation. Plaintiffs said that they had not fully reviewed Defendants' proposal, but that they would do so and provide comments concerning it.

5. On August 14, Defendants sent correspondence to the Special Master and Plaintiffs following-up on the positive conversations held thus far concerning Defendants' proposal, and invited written comments so that the parties could further discuss the proposal during the upcoming COVID-19 Task Force meeting. That afternoon, the Special Master contacted defense counsel and stated that Defendants' draft should not be the starting point for discussions on this topic, and that the Court's order were controlling and should be examined first. The Special Master invited further conversation, but said that Defendants were free to file a motion seeking a modification to the Court's orders. To date, Defendants have received no comments from any party concerning the proposed bed change emergency notification process.

6. Given the importance of being able to act rapidly in the face of an emergency to protect the health and safety of patients and staff in State facilities, Defendants are moving to modify orders concerning the bed change notification and consultation procedures. Nevertheless,

2

Decl. Kyle A. Lewis  (2:90-cv-00520 KJM-DB (PC))

Defendants welcome further negotiation with the Special Master and Plaintiffs to reach agreement concerning a bed change emergency notification process that provides sufficient flexibility and clarity for Defendants to manage inpatient beds at State facilities when confronted with emergency situations that threaten the welfare of patients and staff.

I declare under penalty of perjury that the information in this declaration is true and correct to the best of my knowledge. Executed on August 31, 2020, at San Francisco, California.

/s/ Kyle A. Lewis

CF1997CS0003

3

# Exhibit A

## *Coleman* Emergency Notification Proposal

Proposal:
A framework for notification of emergent circumstances and follow-on discussion regarding actions taken by Defendants that effect a temporary change in the number and/or use of mental health beds for *Coleman* class members at the Mental Health Crisis Bed (MHCB), Intermediate Care Facility (ICF), or Acute Psychiatric Program (APP) levels of care, and to which the parties can stipulate. This stipulation will govern future notifications, reduce the need for future litigation, provide clarity for the steps the parties must take, and encourage communication and collaboration between the parties and Special Master.

Framework:
(1) When Defendants determine there is an emergency circumstance that requires immediate action to protect the health and safety of *Coleman* class members and that action results in a temporary, short-term change in the number and/or use of mental health beds for *Coleman* class members at the MHCB, ICF, or APP levels of care, Defendants shall:
   a. Contact the Special Master or his designee and Plaintiffs' Counsel before the action is taken, if feasible, but in no event more than 48 hours after the action is taken, by phone to describe the emergency situation, what actions Defendants are taking, and why such actions are necessary, to be followed by an email confirming the information provided by phone.
   b. Defendants shall discuss the actions taken with the Special Master and Plaintiffs. This may be done in a COVID-19 Task Force meeting, workgroup, or other meeting, as needed, depending on the circumstances of the emergency and Defendants' response.
   c. When Defendants, the Special Master, and Plaintiffs meet, Defendants shall update the parties on the status of the emergency, the current efforts taken to respond, why those efforts are reasonable, what next steps are planned, any effects on the existing bed plans and other *Coleman* remedial requirements (to the extent they are known at the time), and how Defendants plan to provide mental health care for *Coleman* class members during the emergency.  The Special Master and Plaintiffs shall have the opportunity to ask questions, provide input, and request additional meetings or information.
   d. An "emergency" is the existence of conditions of imminent peril to the safety of persons and property within the prison system caused by conditions such as air pollution, fire, flood, storm, epidemic, riot, drought, cyberterrorism, sudden and severe energy shortage, plant or animal

      infestation or disease, the Governor's warning of an earthquake or volcanic prediction, or an earthquake, or other similar conditions. (*See e.g.* Gov. Code § 8558.) An emergency may also include the failure of critical building infrastructure (e.g. water and/or sewage systems), or outbreaks of disease or other circumstances in the institution or in the community that threaten the health and safety of the institution, its staff, or the people being held there. This list in not intended to be exclusive.

    e. "Short-term" means a change in the number and/or use of generally 30 days or less. If it becomes apparent that the reduction in the number of beds or change in the use of mental health beds must continue for longer than 30 days, Defendants will immediately communicate the need and reason to the Special Master and the change will be discussed at the next scheduled monthly mission change meeting under the process utilized by the parties and the Special Master.

(2) If, after the parties meet as described above in section (1), , there is disagreement between the parties regarding the emergency action, the Special Master will review the action taken and report to the Court on the effect, if any, on *Coleman* class members. The parties would have 30 days to file objections to, or move to modify, reject, or adopt, the report.

(3) Nothing in this proposal will affect the current practices for planned changes to existing bed plans or the existing mission change process utilized by the parties and the Special Master.