DONALD SPECTER – 083925
STEVEN FAMA – 099641
MARGOT MENDELSON – 268583
PRISON LAW OFFICE
1917 Fifth Street
Berkeley, California  94710-1916
Telephone:   (510) 280-2621

CLAUDIA CENTER – 158255
DISABILITY RIGHTS EDUCATION
AND DEFENSE FUND, INC.
Ed Roberts Campus
3075 Adeline Street, Suite 210
Berkeley, California  94703-2578
Telephone:   (510) 644-2555

MICHAEL W. BIEN – 096891
JEFFREY L. BORNSTEIN – 099358
ERNEST GALVAN – 196065
LISA ELLS – 243657
THOMAS NOLAN – 169692
JENNY S. YELIN – 273601
MICHAEL S. NUNEZ – 280535
JESSICA WINTER – 294237
MARC J. SHINN-KRANTZ – 312968
CARA E. TRAPANI – 313411
ALEXANDER GOURSE – 321631
AMY XU – 330707
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California  94105-1738
Telephone:   (415) 433-6830

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>GAVIN NEWSOM, et al.,<br><br>Defendants. | Case No. 2:90-CV-00520-KJM-DB<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO MODIFY COURT ORDERS UNDER RULE 60(b)**<br><br>Date:     Sept. 24, 2020<br>Time:    9:00 a.m.<br>Crtrm.: 3, 15th Floor (Videoconference)<br><br>Judge:   Kimberly J. Mueller |

[3609317.10]

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ........................................................................................................................ 2

I.    THE COURT LACKS JURISDICTION TO MODIFY THE ORDERS DUE
      TO DEFENDANTS' CHOICE TO EXERCISE THEIR RIGHT TO
      APPEAL. ..................................................................................................................... 2

II.   DEFENDANTS' MOTION ALSO FAILS TO MEET THE RULE 60(B)(5)
      STANDARD FOR MODIFICATION. ......................................................................... 5

      A.    Defendants Offer No Actual Changed Circumstances To Meet The
            Rule 60(b)(5) Standard. ..................................................................................... 5

      B.    Removing The Requirement For DSH Defendants To Consult With
            The Special Master Is Not Appropriately Tailored To Any Changed
            Circumstance. ..................................................................................................... 7

            1.    The Court's bed planning orders, and in particular the consult
                  provision, remain critically necessary, and now more important
                  than ever, to ensure class members access to DSH. ............................. 8

            2.    Modification of the existing injunction would perpetuate and
                  exacerbate the ongoing constitutional violations and would not
                  serve the public interest. .................................................................... 10

            3.    Modification of the existing injunction would decrease
                  efficiency and increase litigation. ...................................................... 13

III.  DEFENDANTS OFFER NO REASON FOR THE COURT TO MODIFY
      ITS ORDERS UNDER THE RULE 60(B)(6) CATCH-ALL PROVISION. .......... 17

CONCLUSION .................................................................................................................. 17

CERTIFICATION OF ORDERS REVIEWED ................................................................. 18

1

## TABLE OF AUTHORITIES

2

**Page**

3

### CASES

4

*Benner v. Wolf,*
 No. 20-CV-775, 2020 WL 2564920 (M.D. Pa. May 21, 2020) ............................... 12

*Brown v. Plata,*
 563 U.S. 493 (2011) ...................................................................................... 11, 12

*Christianson v. Colt Indus. Operating Corp.,*
 486 U.S. 800 (1988) ............................................................................................. 7

*Coleman v. Brown,*
 938 F. Supp. 2d 955 (E.D. Cal. 2013) .............................................................. 8, 11

*Coleman v. Wilson,*
 912 F. Supp. 1282 (E.D. Cal. 1995) .................................................................... 11

*Frew ex rel. Frew v. Hawkins,*
 540 U.S. 431 (2004) .......................................................................................... 12

*Hoffman ex rel. NLRB v. Beer Drivers & Salesmen's Local Union No. 888,*
 536 F.2d 1268 (9th Cir. 1976) ........................................................................... 3, 4

*Horne v. Flores,*
 557 U.S. 433 (2009) ........................................................................................ 5, 12

*In re Abbott,*
 954 F.3d 772 (5th Cir. 2020) ............................................................................. 12

*In re Rutledge,*
 956 F.3d 1018 (8th Cir. 2020) ....................................................................... 10, 11

*Jackson v. Los Lunas Cmty. Program,*
 880 F.3d 1176 (10th Cir. 2018) ......................................................................... 14

*Jacobson v. Massachusetts,*
 197 U.S. 11 (1905) ............................................................................................ 12

*Kern Oil & Ref. Co. v. Tenneco Oil Co.,*
 840 F.2d 730 (9th Cir. 1988) ............................................................................... 2

*Liljeberg v. Health Servs. Acquisition Corp.,*
 486 U.S. 847 (1988) .......................................................................................... 17

*McClatchy Newspapers v. Cent. Valley Typographical Union No. 46, Int'l Typographical Union,*
 686 F.2d 731 (9th Cir. 1982) ............................................................................ 3, 4

*Reynolds v. McInnes,*
 338 F.3d 1221 (11th Cir. 2003) ......................................................................... 14

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO MODIFY COURT ORDERS UNDER
RULE 60(b)

*Ruby v. Secretary of U.S. Navy*,
  365 F.2d 385 (9th Cir. 1966) ....................................................... 3

*Rufo v. Inmates of Suffolk Cty. Jail*,
  502 U.S. 367 (1992) ................................................................ 5, 7

*Sandin v. Conner*,
  515 U.S. 472 (1995) ................................................................. 12

*Small v. Operative Plasterers' & Cement Masons' Int'l Ass'n Local 200, AFL-CIO*,
  611 F.3d 483 (9th Cir. 2010) ...................................................... 3

*Swain v. Junior*,
  961 F.3d 1276 (11th Cir. 2020) ........................................... 10, 12

*United States v. Alpine Land & Reservoir Co.*,
  984 F.2d 1047 (9th Cir. 1993) ................................................... 17

*United States v. Asarco Inc.*,
  430 F.3d 972 (9th Cir. 2005) ...................................................... 5

*Wilson v. Williams*,
  961 F.3d 829 (6th Cir. 2020) ............................................... 10, 12

**<u>RULES</u>**

Federal Rule of Civil Procedure 60(b) ................................. 10, 16, 17

Federal Rule of Civil Procedure 60(b)(5) ....................................... 5, 7

Federal Rule of Civil Procedure 60(b)(6) ......................................... 17

Federal Rule of Civil Procedure 62(d) ........................................ 2, 3, 4

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO MODIFY COURT ORDERS UNDER
RULE 60(b)

# INTRODUCTION

Plaintiffs oppose Defendants' Motion to Modify Court Orders, ECF No. 6843, which attempts to evade the rules on appellate jurisdiction, and asks to remove measures the Court put in place to remedy years of intransigent exclusion of *Coleman* class members from treatment at the Department of State Hospitals ("DSH"). In their supporting Memorandum of Points and Authorities, ECF No. 6843-1 ("Defs.' Motion"), Defendants ask the Court to modify prior orders that require DSH to make 336 beds available to *Coleman* class members and immediately consult with the Special Master upon learning of the need to make bed utilization changes in the event of an emergency that precludes Defendants from meeting and conferring with the Special Master thirty days in advance of the change. Mischaracterizing this consultation requirement as an order to choose between engaging in litigation or contempt in the event of any emergency, Defendants ask the Court to cut the Special Master out of the process entirely. Specifically, Defendants ask to replace the requirement, as it relates to DSH bed usage, with a procedure that eliminates the consultation requirement altogether and give Defendants two full days to even notify the Special Master, followed by a non-emergency review of Defendants' unilateral action that requires the Special Master to write a report, then followed by a thirty-day period for the parties to file objections or other responses before this Court can even address Defendants' decision to deny Court-ordered hospital beds to class members. (Defs.' Motion at 11-12.)

Defendants request to apply this new procedure through the modification of three orders: The Court's April 24, 2020 Order, ECF No. 6639 (the "April 24 Order") and two orders from 2017 that the Court reiterated therein, namely, the March 8, 2017 order, ECF No. 5573, instituting the consultation requirement, and the December 15, 2017 order, ECF No. 5750, approving the parties' joint stipulation defining the term "unusual circumstances" as it relates to inpatient transfer timeframe exceptions (collectively "the 2017 Orders").

Defendants' motion comes over three months after Defendants appealed the April

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO MODIFY COURT ORDERS UNDER RULE 60(b)

1    24 Order to the Ninth Circuit, which remains pending and precludes the substantive

2    modification of the appealed order Defendants seek here.  *See* Defs.' Ntc. of Appeal ECF

3    No. 6684 (May 26, 2020).  Even beyond the clear jurisdictional bar to the relief they seek,

4    Defendants' motion both fails to meet the threshold Rule 60(b) requirement of identifying

5    a changed circumstance and fails to demonstrate that the requested relief is appropriate to

6    the situation at hand.  The Court should deny Defendants' motion.

7                                              **ARGUMENT**

8    **I.     THE COURT LACKS JURISDICTION TO MODIFY THE ORDERS DUE
            TO DEFENDANTS' CHOICE TO EXERCISE THEIR RIGHT TO APPEAL.**
9

10        Defendants invite this Court to substantively modify its prior orders[1] while their

11   appeal requesting that same relief is pending.  But Defendants' appeal divested this Court

12   of the power to do so even if such action was warranted, which, as discussed in Section II

13   below, it is not.

14        The jurisdictional divestiture doctrine is a "judge-made doctrine designed to avoid

15   the confusion and waste of time that might flow from putting the same issues before two

16   courts at the same time."  *Kern Oil & Ref. Co. v. Tenneco Oil Co.*, 840 F.2d 730, 734 (9th

17   Cir. 1988).  While this Court may modify an interlocutory or final order concerning an

18   injunction to secure Plaintiffs' rights during the pendency of Defendants' appeal pursuant

19   to Federal Rule of Civil Procedure 62(d), the Court is only empowered to make

20   _____

21   [1] Defendants also already filed a motion for reconsideration on April 15, 2020, ECF No.
     6612, of the Court's April 10, 2020 Order, ECF No. 6600 setting the DSH evidentiary
22   hearing.  The Court addressed that motion on May 7, 2020, ECF No. 6660.  Defendants
     appealed the Court's May 7, 2020 order together with the April 24 Order, as well as
23   unspecified "earlier, non-final orders that produced the orders."  *See* Defs.' Ntc. of Appeal,
     ECF No. 6684 at 1-2. Presumably, given their arguments in the instant motion, the 2017
24   Orders are among the potentially many old orders in this case they seek to now appeal,
     given that both of those orders are discussed and clarified in the April 24 Order and
25   Defendants' Rule 60(b) motion treats the 2017 Orders and the April 24 Orders as a single
     set.  Defendants' motion indicates that they are asking to modify the 2017 Orders only in
26   light of the orders they appealed on May 26, 2020, and they request the same modification
     for the 2017 Orders as they seek for the April 24 Order.  For the same reasons that the
27   Court does not have jurisdiction to grant Defendants' requested modification to the April
     24 Order, it does not have jurisdiction to grant that very same relief by modifying the 2017
28   Orders.

1  modifications to preserve the status quo until the Ninth Circuit disposes of the appeal.

2  *Small v. Operative Plasterers' & Cement Masons' Int'l Ass'n Local 200, AFL-CIO*, 611

3  F.3d 483, 495 (9th Cir. 2010) (vacating district court order modifying injunction on appeal

4  because it altered the terms of the appealed order).  The Court may not make changes to

5  the appealed order that would "affect substantial rights of the parties after appeal" rather

6  than simply maintaining the status quo in a manner that protects Plaintiffs' rights.

7  *McClatchy Newspapers v. Cent. Valley Typographical Union No. 46, Int'l Typographical*

8  *Union*, 686 F.2d 731, 735 (9th Cir. 1982).  Rule 62(d) also permits this Court take action

9  during the pendency of an appeal to address new facts as part of its ongoing supervision of

10  Defendants' compliance so long as the subsequent orders "achieve the same compliance

11  purpose" as the order on appeal.  *See id.* (noting an appeal of an order "issued to force

12  compliance with an injunction should not divest the court of jurisdiction to modify that

13  order to achieve the same enforcement purpose"); *see also Hoffman ex rel. NLRB v. Beer*

14  *Drivers & Salesmen's Local Union No. 888*, 536 F.2d 1268, 1276 (9th Cir. 1976)

15  (affirming district court's issuance of additional contempt orders to protect appellees'

16  rights in response to appellants' subsequent violations of same underlying injunctive order

17  even where additional orders modified the original contempt ruling).

18      Under the governing law, this Court may either decline to act on Defendants'

19  motion until the Ninth Circuit disposes of their appeal, or it may exercise jurisdiction to

20  deny the motion consistent with its prior ruling that Defendants' appeal is manifestly

21  invalid.  *See* June 17, 2020 Order, ECF No. 6730 at 4-7[2]; *see Ruby v. Secretary of U.S.*

22  *Navy*, 365 F.2d 385, 389 (9th Cir. 1966) (en banc) (noting district court may opt to decline

23  further action on order subject to suspected invalid appeal until appeal is dismissed).  But it

24  may not assert jurisdiction to grant the motion.  While, assuming arguendo Defendants'

25  appeal is valid, this Court still retains jurisdiction under Rule 62(d) to enforce the April 24

26

27

28

___

[2] All citations to pages in filed documents refer to the ECF pagination unless otherwise stated.

[3609317.10]

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO MODIFY COURT ORDERS UNDER RULE 60(b)

1  Order in a manner that continues to effectuate Plaintiffs' rights.  *See* Joint Status Report,

2  ECF No. 6726 at 2-6 (Plaintiffs' position on jurisdiction).  Defendants' requested relief

3  does not comport with the narrow carve out to the divestiture rule.  Defendants ask this

4  Court to take further action to modify the appealed order not to maintain the status quo and

5  protect Plaintiffs' rights while their appeal is pending, but to gut the appealed orders'

6  substantive protections of the class.  Rule 62(d) does not permit such action, which would

7  also have the undesirable effect of wasting the resources of the Ninth Circuit, where

8  Defendants will undoubtedly raise the same arguments they present here.

9       Defendants also do not cite any new facts that would permit the Court to

10  substantially modify its existing orders as part of its ongoing supervision of the remedy in

11  this case.  *See McClatchy*, 686 F.2d at 734; *Hoffman*, 536 F.2d 1276.  As discussed further

12  below in Section II.A, the only changed circumstance Defendants cite is the COVID-19

13  pandemic, which was well underway at the time of the Court's April 24 Order, when the

14  Court found "[t]he emergency nature of the pandemic does not excuse" the requirement to

15  not violate the Court's remedial orders, including the requirement that Defendants

16  immediately consult with the Special Master in the event of an emergency requiring

17  closure of inpatient beds.  *See* April 24 Order at 8-9.  And indeed, even if Defendants

18  could point to some aspect of the pandemic that is now materially different enough to

19  constitute a new fact, Rule 62(d) still would not authorize this Court to act because the

20  modifications to the April 24 Order Defendants seek do not "achieve the same compliance

21  purpose"—they seek the opposite, to ease their burden at the cost of further undermining

22  class members' constitutional right to access inpatient treatment at DSH's psychiatric

23  hospitals.  *See McClatchy*, 686 F.2d at 734.

24       Instead of moving this Court for reconsideration of the April 24 Order or filing the

25  instant motion close in time to that ruling when this Court unquestionably could have acted

26  if it deemed relief appropriate, Defendants chose to appeal the Order.  That choice has

27  consequences, including precluding the relief they seek here.  Unless Defendants dismiss

28  their appeal, the Court lacks jurisdiction to grant Defendants the substantive modifications

1  they seek while the parties await the Ninth Circuit's ruling on the very issues they present

2  here.

3  **II.    DEFENDANTS' MOTION ALSO FAILS TO MEET THE RULE 60(B)(5)
       STANDARD FOR MODIFICATION.**

4

5         A Federal Rule of Civil Procedure Rule 60(b)(5) motion, as Defendants

6  acknowledge, requires the moving party to first show "a significant change either in factual

7  conditions or in the law warranting modification."  *United States v. Asarco Inc.*, 430 F.3d

8  972, 979 (9th Cir. 2005) (citing *Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367, 384

9  (1992)).  If the moving party first meets that initial burden, then "the district court should

10 determine whether the proposed modification is suitably tailored to the changed

11 circumstance."  *Rufo*, 502 U.S. at 391.  Modification of an existing injunction "must not

12 create or perpetuate a constitutional violation."  *Id.*  And *Horne v. Flores* did not change

13 the *Rufo* standard, but reaffirmed it.  557 U.S. 433, 453-54 (2009).  Here, Defendants do

14 not meet any part of their *Rufo* burden.

15        **A.    Defendants Offer No Actual Changed Circumstances To Meet The Rule
               60(b)(5) Standard.**

16

17        Defendants do not claim any change in the law and point to only one factual

18 circumstance they say has changed—the COVID-19 pandemic.  (Defs.' Motion at 13.)

19 Defendants correctly note that Plaintiffs argued the pandemic was a changed circumstance

20 in Plaintiffs' own motion on March 25, 2020 to modify the Three-Judge Court's August 4,

21 2009 population reduction order, and the Three-Judge Court acknowledged that the

22 pandemic was unprecedented and unforeseen in its April 4, 2020 order denying Plaintiffs'

23 motion.  (Defs.' Motion at 14, n.3.)  Defendants incorrectly conclude that the pandemic is

24 therefore a changed circumstance for purposes of their own motion.  Of course it is not.

25 Unlike Plaintiffs' motion, which cited the pandemic as a circumstance that had changed

26 between the original Three-Judge Court ruling in August 4, 2009 and March 25, 2020,

27 Defendants' motion asks the Court to reconsider its April 24 Order issued well *after* the

28 start of the pandemic.  As Defendants acknowledge, the pandemic was already an existing

1   circumstance at the time of the April 24 Order. (Defs.' Motion at 14.) The very subject of

2   the order is DSH transfers during the pandemic. Defendants do not identify any other facts

3   that constitute a changed circumstance.

4         By the same token, to the extent that Defendants' argument is that the requirements

5   of the Court's 2017 orders, "as interpreted by recent court orders, [are] dangerously

6   inflexible and should be modified" (Defs.' Motion at 13), that argument fails to consider

7   that the Court's April 24 Order expressly considered the 2017 Orders in light of the

8   pandemic. Indeed, the Court's April 24 Order did make one temporary modification to its

9   prior orders allowing "that no transfers to DSH inpatient mental health care are taking

10  place without a COVID-19 screening" as set forth in Defendant's April 16, 2020 filing.

11  April 24 Order at 10 (citing ECF No. 6616 at 17 & Attachment V (Defendants' COVID-19

12  Strategic Plan and April 5, 2020 memorandum entitled COVID-19 Screening Prior to

13  Mental Health Transfers)).

14        Defendants also improperly attempt to rely on what they claim is the changed

15  circumstance of the COVID-19 pandemic to raise concerns about myriad other emergency

16  situations such as flood, fire, earthquake, and other miscellaneous crises. (Defs.' Motion at

17  8, 11, 15, 17, 20-21). The potential emergencies envisioned by Defendants are serious—

18  but totally hypothetical. They are completely disconnected from the actual factual

19  circumstances leading up to DSH's carefully coordinated governmental response, taken

20  almost two weeks after Defendant Newsom's emergency proclamation, asserting state-law

21  emergency powers to unilaterally close DSH to *Coleman* class members in violation of

22  court orders while continuing to admit other patients from CDCR and elsewhere. *See*

23  March 16, 2020 DSH Directive on Suspension of Patient Admissions from CDCR,

24  https://www.dsh.ca.gov/Treatment/docs/DSH_DIrector_Letter_re_Suspension_of_Colema

25  n_Admissions.pdf; *see also* DSH Treatment Notices,

26  https://www.dsh.ca.gov/Treatment/index.html (showing DSH closed admissions to the

27  *Coleman* class before all but one other commitment category, and never closed admissions

28  for OMHD patients who come directly from CDCR). Indeed, even if it was plausible for

1  DSH to compare their clearly calculated choices of which legal classes to continue to

2  accept in the weeks after Defendant Newsom's emergency proclamation to a literally

3  unpredictable natural disaster like an earthquake, the Court's remedial orders already

4  account for such emergencies.  *See* March 8, 2017 Order at 4, ECF No. 5573 (emergency

5  consultation provision); April 24 Order at 4 (reiterating same); December 15, 2017 Order

6  at 4, ECF No. 5750 (approving the parties' negotiated definition of "Unusual

7  Circumstances" for purposes of the Psychiatric Inpatient Program policy addendum filed at

8  ECF No. 5744 at 6); April 24 Order at 5 (reiterating same).  In fact, one of the

9  "geophysical and climatic events" Defendants express concern about here—floods—was

10 the genesis of the March 8, 2017 order imposing the consultation requirement in the first

11 place, and Defendants did not appeal that order or seek reconsideration on the grounds that

12 the requirement was unworkable or unreasonable in any way.  *See* ECF No. 5573 at 2.

13 Defendants do not explain what about the COVID-19 pandemic constitutes a changed

14 factual circumstance that would justify modifying orders that have been unchallenged and

15 unappealed law of the case since 2017.  *See Christianson v. Colt Indus. Operating Corp.*,

16 486 U.S. 800, 819 (1988) (reversals of law of the case "should necessarily be exceptional"

17 and occur "only when the court has a clear conviction of error" (citation omitted)).

18        Because Defendants do not meet the *Rufo* threshold burden of identifying any

19 changed circumstance, the Court should deny the motion for modification under

20 Rule 60(b)(5) outright.

21        **B.    Removing The Requirement For DSH Defendants To Consult With The
               Special Master Is Not Appropriately Tailored To Any Changed**
22             **Circumstance.**

23        Defendants' proposed solution is not appropriately tailored to the exigencies of the

24 COVID-19 pandemic, as required by *Rufo* and Rule 60(b)(5).  The proposed modification

25 would remove a critically necessary protection that the Court put in place to remedy long-

26 standing constitutional violations, it would serve to perpetuate those violations, and it

27 would decrease efficiency.

28

[3609317.10]

7

1           **1.**    **The Court's bed planning orders, and in particular the consult**
2                    **provision, remain critically necessary, and now more important**
                   **than ever, to ensure class members access to DSH.**

3       Delay in access to needed inpatient mental health care has been a serious

4 constitutional deficiency since the start of this case and it remains a "core component of

5 the remedy." *See* April 24 Order at 2. DSH's long history of intransigence in facilitating

6 inpatient access is well documented. *See* June 28, 2006 Order, ECF No. 1855 at 1-2

7 (finding failures by DMH (now DSH) to address specific court-ordered remedies, finding

8 DMH's efforts marked by delay and difficulty, and adding DMH Director as a defendant);

9 May 25, 2016 Special Master's Monitoring Report on the Mental Health Inpatient Care

10 Programs, ECF No. 5448, at 22-40 (detailing long history of DSH refusal to admit class

11 members, and noting on pages 39-40 that the "barriers which defendants claim prevent

12 admission of *Coleman* class members into designated beds at DSH-Atascadero are not

13 new; they are merely recycled under a different terminology every few years"); Special

14 Master's April 6, 2020 Amended Report on the Current Status of *Coleman* Class

15 Members' Access to Inpatient Care in the Department of State Hospitals ("Amended 2020

16 DSH Report"), ECF No. 6579 at 31-32 (noting extensive history of DSH intransigence).

17 The Court's April 24 Order likewise catalogued the long history in this case of deficiencies

18 in timely access to inpatient care and noted in particular that the full availability of DSH

19 beds, especially those at Atascadero State Hospital, is necessary to avoiding long waitlists

20 for care throughout the DSH and CDCR system. *See* April 24 Order at 1-5 & n.3.

21       It is against this historical backdrop of "unconscionable delays in access to inpatient

22 care and the sequelae therefrom, including periodic substantial decline in clinical referrals

23 to necessary hospital care" that the Court has repeatedly issued remedial orders. *See* April

24 24 Order at 3 (quoting *Coleman v. Brown*, 938 F. Supp. 2d 955, 982 (E.D. Cal. 2013)).

25 And it was against this backdrop that, on January 23, 2017, the Court held an evidentiary

26 hearing regarding problems with timely access to inpatient care and growing waitlists. *See*

27 ECF No. 5552. At the hearing, it became clear that Defendants had never informed the

28 Special Master about multiple significant recent changes in the use of beds at several DSH-

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO MODIFY COURT ORDERS UNDER
RULE 60(b)

1    run programs.  *See* March 8, 2017 Order at 2, ECF No. 5573.  With that context, the Court

2    ordered Defendants to meet and confer with the Special Master in advance of making any

3    changes in the number and/or use of inpatient beds, and carefully crafted the emergency

4    consult requirement to balance and accommodate both Defendants' need to act and the

5    class's constitutional right to mental health treatment.  *Id.* at 2-4.  Defendants notably did

6    not object to that order, either by seeking reconsideration or by appealing.

7         DSH has always been slow to open its doors to *Coleman* class members, and quick

8    to close them.  The COVID-19 pandemic presented one more excuse for DSH to close its

9    doors.  On March 17, 2020, the day after DSH halted admission of *Coleman* class

10   members, counsel for DSH confirmed that admissions for several other commitment

11   categories remained open while DSH reviewed "its authority and need for suspension."

12   *See* Amended 2020 DSH Report at 43 (Ex. 3).  DSH ultimately continued admissions for

13   the category of non-*Coleman* patients classified as Offenders with a Mental Health

14   Disorder ("OMHDs").[3]  *See id.* at 6.  And while closing its doors to *Coleman* admissions,

15   DSH reserved and exercised the right to discharge certain *Coleman* patients back to

16   CDCR.  *See* Decl. of Cara E. Trapani In Support of Pls.' Resp. to Apr. 3, 2020 Order to

17   Show Cause, ECF No. 6589 at ¶ 10 & Ex. 7; ¶ 11.  Seemingly in further acknowledgment

18   that it is not really the scope or balance of the Court's orders that Defendants find

19   problematic, but merely the orders' application to DSH, the instant motion seeks

20   modification only with respect to the DSH inpatient beds, and not with respect to CDCR's

21   inpatient beds.  (Defs.' Motion at 11.)  These actions, and in particular the continued

22   admissions of OMHD patients despite suspending access to *Coleman* patients, show that

23   Defendants made a calculated decision to evade the Court's orders while following other

24   legal requirements they decided they were willing to maintain.

25        This new chapter in the lengthening story of barriers to accessing DSH inpatient

26

27   ───────────────────
     [3] This category of patients was previously referred to as Mentally Disordered Offenders
28   ("MDOs").

1   mental health treatment underscores the ongoing need for the DSH bed planning orders,

2   and particularly the consultation provision.  Indeed the need for consultation is greater than

3   ever given the exigencies of the pandemic.  *Cf.* Amended 2020 DSH Report at 32

4   ("Tailoring the delivery of court-ordered inpatient treatment to *Coleman* class members

5   during this pandemic requires enhanced coordination as to how to best allocate scarce

6   hospital beds across the system.").  Defendants' motion does not even hint that removing

7   the consultation provision would bring Defendants closer to providing constitutional level

8   treatment.  Instead, Defendants once again argue for "lowering the constitutional floor" to

9   give them the flexibility to provide less treatment for the *Coleman* class.  (*See* Defs.'

10  Motion at 23.)

11          **2.    Modification of the existing injunction would perpetuate and
                    exacerbate the ongoing constitutional violations and would not
12                  serve the public interest.**

13          Defendants argue that the Court's remedial orders harm the public interest because

14  they fail to give adequate deference to the State, especially in light of the pandemic.  In

15  support of this position, Defendants also cite some new cases that have been published

16  during the pandemic, though none of these cases were in the posture of a Rule 60(b)

17  motion, and none analyze how a court should apply the circumstances of the COVID-19

18  pandemic to a request to reconsider prior remedial orders (much less orders designed to

19  remedy decades-old Eighth Amendment violations).[4]

20          One of these cases is a recent Supreme Court decision.  (Defs.' Motion at 19 (citing

21  *S. Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613, 1613-14 (2020) (mem.

22  op.).  In its *South Bay United* memorandum opinion, the Supreme Court denied an

23

24  _____

    [4] *See In re Rutledge*, 956 F.3d 1018, 1023 (8th Cir. 2020) (petition for  writ of mandamus
25  regarding temporary restraining order); *Wilson v. Williams*, 961 F.3d 829, 833 (6th Cir.
    2020) (appeal of preliminary injunction requiring prison officials to transfer or release
26  incarcerated people due to COVID-19); *Swain v. Junior*, 961 F.3d 1276, 1280 (11th Cir.
    2020) (appeal of preliminary injunction requiring Florida county jail to take protective
27  measures against COVID-19);  *Benner v. Wolf*, __ F. Supp. 3d __, 2020 WL 2564920, at
    *1 (M.D. Pa. May 21, 2020) (motion for temporary restraining order regarding COVID-19
28  stay-at-home orders).

1  interlocutory emergency request to temporarily enjoin enforcement of Governor

2  Newsom's Executive Order placing certain restrictions on attendance at places of worship.

3  Defendants cite this case for the proposition that health and safety issues are primarily

4  entrusted to state elected officials, not the federal judiciary.  (Defs.' Motion at 19).  But

5  critical to the *South Bay United* Court's opinion was its analysis and conclusion that

6  Governor Newsom's order did not violate a constitutional right.  *See S. Bay United* 140 S.

7  Ct. 1613 at 1613 (finding the relevant "restrictions appear consistent with the Free

8  Exercise Clause of the First Amendment").

9         Here, conversely, it is "undisputed" that the original constitutional violation—

10  Defendants' "systemic failure to deliver necessary care to mentally ill inmates" in

11  California prisons—still persists.  *See* Apr. 4, 2020 Three-Judge Court Order, ECF No.

12  6574 at 15 (Mueller, J. concurring); *Coleman v. Wilson*, 912 F. Supp. 1282, 1316 (E.D.

13  Cal. 1995); *see also, e.g.*, *Brown v. Plata*, 563 U.S. 493, 545 (2011); *Coleman v. Brown*,

14  938 F. Supp. 2d 955, 990 (E.D. Cal. 2013).  Specifically, the Court's orders governing

15  access to DSH "are an integral part of a carefully designed and as yet not fully

16  implemented remedy for longstanding Eighth Amendment violations in the delivery of

17  mental health care to the plaintiff class."  April 24 Order at 6-7.  Especially in an

18  intractable case like this, the Court must take steps to bring Defendants closer to, rather

19  than farther from, full remediation of the underlying violations.  *See Brown v. Plata*, 563

20  U.S. at 516.

21         The remaining handful of new cases cited by Defendants are from various other

22  jurisdictions, and none concern existing uncontested constitutional violations.  These cases

23  generally do suggest that some restrictions on civil liberties may be necessary in light of

24  the pandemic, and they acknowledge that a state's power is broadest during emergencies.

25  But they also emphasize that a state's power is not absolute and that it is the judiciary's

26  duty to limit infringement on civil rights, particularly constitutional rights, to the greatest

27  extent possible.  *In re Rutledge*, 956 F.3d 1018, 1023 (8th Cir. 2020) ("constitutional rights

28  do not disappear during a public health crisis" even where liberties may at times be

1    restrained by reasonable regulations); *Wilson v. Williams*, 961 F.3d 829, 840 (6th Cir.

2    2020) (applying normal Eighth Amendment analysis where incarcerated individuals

3    request new protections due to COVID-19, and finding deliberate indifference "objective

4    prong is easily satisfied"); *Swain v. Junior*, 961 F.3d 1276, 1285 (11th Cir. 2020)

5    (applying normal Fourteenth Amendment deliberate indifference analysis where pre-trial

6    detainees request new protections against COVID-19); *Benner v. Wolf*, No. 20-CV-775,

7    2020 WL 2564920, at *4 (M.D. Pa. May 21, 2020) ("It is undeniable that procedural due

8    process is required even in times of emergency." (internal quotation marks omitted)).

9         These cases support the Court's determination in its April 24 Order that minimal

10   and temporary restrictions on civil liberties is a different matter from easing Defendants'

11   affirmative obligations in this case to remedy entrenched, longstanding Eighth Amendment

12   violations.  *See* April 24 Order at 8 (analyzing *In re Abbott*, 954 F.3d 772, 784 (5th Cir.

13   2020) and *Jacobson v. Massachusetts*, 197 U.S. 11, 27 (1905) to determine that neither

14   "arose in the context of state action undertaken by state actors subject to prior remedial

15   orders of a federal court").

16        Defendants also string together well-worn quotes and generic citations to federalism

17   principles in an attempt to create the impression that the public interest is always harmed

18   when a federal court enjoins state action, and that federalism principles dictate that the

19   motion must be granted to avoid undue federal interference with state affairs.  (*See, e.g.*,

20   Defs.' Motion at 12-13, 18 (citing *Horne v. Flores* 557 U.S. 433, 447-50 (2009); *Frew ex*

21   *rel. Frew v. Hawkins*, 540 U.S. 431, 442 (2004); and *Sandin v. Conner*, 515 U.S. 472, 482-

22   83 (1995)).  Defendants' citations ignore that federalism principles also prohibit federal

23   courts from ignoring state government violations of the federal Constitution:  "Courts may

24   not allow constitutional violations to continue simply because a remedy would involve

25   intrusion into the realm of prison administration."  *Brown v. Plata*, 563 U.S. at 511.

26        None of the cases cited by Defendants prohibit the Court from enforcing its existing

27   remedial orders and supervising Defendants' compliance with those orders in light of the

28   pandemic.  Enforcing these orders is well within the Court's discretion and duty.  The

1    Court should decline Defendant's invitation to turn away from its responsibility to

2    maintain the existing remedies in this case.

3            **3.    Modification of the existing injunction would decrease efficiency and increase litigation.**

4

5            Throughout their motion, Defendants mischaracterize the Court's orders as

6    requiring immediate litigation in every emergent situation.  In fact, the Court's orders seek

7    the opposite:  to promote collaboration and speedy resolution of concerns through verbal

8    consultation.  The point of the emergency consult provision, in addition to ensuring notice

9    of changes, is to permit the parties and Special Master the opportunity to come up with

10   mutually agreeable plans of action and to avoid unnecessary litigation.  Substantive

11   consultation is necessary given the long history in this case of after-the-fact notifications of

12   programs being shut down or modified with insufficient consideration of the consequences

13   for class members, and oftentimes with no replacement plans in place to ensure

14   constitutionally adequate care.

15           Defendants suggest an example they say shows the consultation requirement is

16   unworkable during the COVID-19 pandemic.  (Defs.' Motion at 15.)  They note that a

17   positive COVID-19 result among any DSH patient or employee on a particular unit would

18   require immediate quarantine of the involved unit, and serial testing of potentially exposed

19   individuals, and depending on the exposure DSH may need to suspend admissions to the

20   entire hospital.  (*Id.*)  Defendants claim this scenario would place an unworkable

21   obligation on them to litigate each closure.  (*Id.*)  What Defendants leave out is that these

22   closures are not a hypothetical situation.  Since the April 24 Order there have already been

23   quarantines of units housing *Coleman* class members at Atascadero, Coalinga, and Patton

24   State Hospitals, and Patton was closed to new admissions except for OMHD patients on

25   June 8, 2020.  *See* Third Joint Update on Work of the COVID-19 Task Force, ECF No.

26   6813 at 6 & n.2.  Defendants' doomsday scenario of motion practice regarding each

27   quarantine at each hospital or regarding the Patton closure has not come to pass.  The lack

28   of motion practice is in large part *because* Defendants have engaged in regular telephonic

1  meet and confer sessions through the Task Force, and small workgroups between

2  Defendants' leadership and experts from the Special Master's office.  *See, e.g.*, *id.* at 2, 8.

3  Plaintiffs do not know the extent to which Defendants have fulfilled their obligation to

4  immediately consult directly with the Special Master regarding changes in DSH bed

5  availability in recent months, and there may yet be a need for additional litigation

6  regarding access to DSH, but the regular and productive engagement in recent months has

7  enabled the parties and Court to repeatedly push back the DSH evidentiary hearing, and to

8  avoid additional litigation except that occasioned by Defendants' appeal and the instant

9  Rule 60(b) motion.

10       Based on the extra litigation effort Defendants imagine will result from this Court's

11  order to consult the Special Master (which is itself not a changed circumstance, having

12  been an order of the Court for three years), Defendants cite two cases from other circuits

13  for the proposition that the extra workload will be so onerous as to require modification

14  despite the fact that they have the massive resources of the Attorney General's Office plus

15  a separate private law firm retained as special counsel.  Neither case requires modification,

16  and both involved scenarios where the district court itself determined the defendants'

17  obligations had changed to the point of becoming onerous.  *See Reynolds v. McInnes*, 338

18  F.3d 1221, 1229-30 (11th Cir. 2003) (affirming district court's modification of a provision

19  of a 1994 consent decree it found to be "unworkable" based on its special master's

20  agreement and the district court's independent determination that Defendants had made

21  reasonable and good faith, but ultimately unsuccessful, attempts to implement the

22  provision; *Jackson v. Los Lunas Cmty. Program*, 880 F.3d 1176, 1204, 1207 (10th Cir.

23  2018) (remanding for additional factual findings under Rule 60 where district court found

24  defendants' obligations had changed to the point of being substantially onerous, but also

25  found no changed circumstances).

26       Conversely, the record here is clear that Defendants did not make even the barest

27  attempt to consult with the Special Master before halting admissions of *Coleman* class

28  members.  The Special Master confirmed that he merely received a phone call on the day

1   of the suspension "notifying him that DSH would be suspending admissions of *Coleman*

2   class members to their hospitals" a mere hours before the directive was issued.  *See*

3   Amended 2020 DSH Report at 5.  In the Court's April 24 Order finding that Defendants

4   violated the March 8, 2017 consultation requirement, the Court found that Defendants

5   merely "notified" the Special Master of the DSH Director's decision and "did not, as the

6   order required, consult with him in any way about the decision."  April 24 Order at 9-10.

7   Defendants do not dispute this finding.  They too characterize the conversation between

8   the DSH Director and Special Master as giving "notice" of the planned suspension.  Defs.'

9   Resp. to Order to Show Cause, ECF No. 6590 at 9 (April 8, 2020).  In their motion,

10  Defendants do not ask the Court to reconsider its finding that Defendants' failed to consult

11  with the Special Master.  Instead, Defendants ask to be relieved of the obligation to consult

12  him at all.  (Defs.' Motion at 11-12.)

13          The record is also clear that Defendants could have consulted with the Special

14  Master had they wanted to.  Defendant Newsom's emergency proclamation, which

15  provided the purported legal basis for DSH's actions, issued a full twelve days before DSH

16  unilaterally closed its doors first to class members and before taking action on numerous

17  other legal classes—and indeed making the calculated decision not to suspend admissions

18  for patients coming from CDCR under the OMHD classification at all.  The Special Master

19  reported maintaining "frequent contact" and "consultations" with the *Coleman* parties and

20  high-level CDCR officials in the days before DSH announced the suspension at issue here.

21  Amended 2020 DSH Report at 4.  Nothing prevented DSH from consulting with him, and

22  doing so earlier than they provided notice, nor do Defendants' declarations identify any

23  such limitation.  Indeed, Defendants' declarations make clear they were actively

24  coordinating their actions even while failing to inform, much less consult with, the Special

25  Master.  *Compare* Decl. of DSH Director Stephanie Clendenin in Support of Mot. to

26  Modify, ECF No. 6843-2 at ‡‡ 11-15 (explaining she notified the Special Master of her

27  decision on March 16, 2020), *with id.* at ‡ 17 (explaining she provided notice of DSH's

28  decision to CDCR on March 15, 2020, the day before she informed the Special Master),

1    *and* ¶ 20 ("Leading up to the decision to temporarily suspend admissions of almost all

2    patient intake to DSH's hospitals, and thereafter, I, or my staff, have continuously

3    consulted with medical and mental health experts within and outside DSH regarding the

4    steps DSH needed to take to prepare for COVID-19 and the consequences of a potentially

5    longstanding pandemic.").

6         To the extent Defendants felt the need to take action to request emergency relief

7    from the Court's orders, nothing prevented them from doing so.  Defendants have ample

8    experience bringing expedited motions—indeed, they filed two expedited motions just in

9    the two weeks preceding the instant Rule 60(b) motion alone.  *See* ECF Nos. 6830 (Aug.

10   21, 2020); 6833 (Aug. 24, 2020).  The Court was fully available, assuming consultation

11   with the Special Master and Plaintiffs did not result in a mutually agreeable plan of action.

12   But Defendants did not request emergency relief either in the period leading up to the

13   suspension of intake, or in the days that followed.  In fact, Defendants did not request

14   relief —emergency or otherwise—from the 2017 Orders at all:  They simply ignored their

15   obligations to comply with the governing court orders for weeks until the Court finally

16   issued its order to show cause asking for an explanation and justification for Defendants'

17   actions.  *See* Order to Show Cause, ECF No. 6572 (Apr. 3, 2020).

18        That Defendants chose not to consult with the Special Master (or Plaintiffs) in

19   advance of such a major change highlights the need for greater collaboration rather than

20   watering down the existing consultation requirement to a mere days-after-the-fact notice

21   provision as Defendants request.  While Defendants say now that the DSH closure was

22   only temporary, they did not say that at the time they provided notice.  By the terms if the

23   March 16, 2020 letter announcing the suspension, Defendant Clendenin noted it would

24   remain in effect for at least thirty days and was subject to renewal for additional thirty-day

25   periods.  *See* Amended 2020 DSH Report at 38, Ex. 1 (DSH March 16, 2020 Department

26   Directive on Suspension of Patient Admissions from CDCR).  Defendants did not tell the

27   Special Master or Plaintiffs they would lift the closure in thirty days, and in fact likely only

28   lifted the suspension under pressure and with the evidentiary hearing on DSH access

1    looming.  The Court should deny Defendants' motion.

2    **III.    DEFENDANTS OFFER NO REASON FOR THE COURT TO MODIFY ITS**
     **ORDERS UNDER THE RULE 60(B)(6) CATCH-ALL PROVISION.**

3

4          Defendants argue in the alternative for relief under Federal Rule of Civil Procedure

5    Rule 60(b)(6).  (Defs.' Motion at 24.)  As Defendants acknowledge, Rule 60(b)(6) is a

6    catch-all provision that should be applied only in "extraordinary circumstances," *Liljeberg*

7    *v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 864 (1988).  It is "used sparingly."

8    *United States v. Alpine Land & Reservoir Co.*, 984 F.2d 1047, 1049 (9th Cir. 1993).

9    Defendants offer no specific reason that justifies relief from the Court's orders, arguing

10   only that DSH could not have anticipated the pandemic or the Court's orders.  For all the

11   reasons discussed above, the Court should decline Defendants' invitation to modify its

12   orders under Rule 60(b)(6).

13                                    **CONCLUSION**

14          Now is the time for Defendants to increase their engagement with the Special

15   Master, not to seek an end to the consultation process.  Unfortunately, Defendants have

16   chosen a different path, simultaneously appealing and seeking modification of the

17   consultation requirement in this Court's remedial orders.  Defendants' choice to appeal

18   divested this Court of the power to grant the relief Defendants are seeking with the Ninth

19   Circuit.  Defendants' motion also fails to meet the Rule 60(b) standards for modification.

20   Defendants point to no actual changed circumstances.  The only circumstance they

21   identify—the pandemic—was well underway by the time of the April 24 Order, as

22   Defendant Newsom acknowledged when he declared a state of emergency in California

23   over seven weeks earlier on March 4, 2020.  (Defs.' Motion at 8.)  Nor are the

24   modifications Defendants request tailored to the exigencies of the pandemic.  Removing

25   the consultation provision and replacing it with after-the-fact notice would increase rather

26   than decrease litigation.  And displacing protections carefully designed to remedy

27   Defendants' decades-long history of failing to provide constitutional access to inpatient

28   mental health treatment would serve to perpetuate those ongoing violations at a time of

1  exceptionally curtailed access.  The Court should deny Defendants' motion.

2                    **CERTIFICATION OF ORDERS REVIEWED**

3         Plaintiffs' counsel certifies that he reviewed the following orders relevant to this

4  filing: ECF No. 640, ECF No. 1800, ECF No. 1855, ECF No. 1998, ECF No. 2236, ECF

5  No. 3613, ECF No. 4199, ECF No. 5343, ECF No. 5573, ECF No. 5583, ECF No. 5610,

6  ECF No. 5750, ECF No. 6572, ECF No. 6574, ECF No. 6600, ECF No. 6639, ECF No.

7  6660, and ECF No. 6730.

8

9  DATED:  September 10, 2020          Respectfully submitted,

10                                     ROSEN BIEN GALVAN & GRUNFELD LLP

11                                     By:  */s/ Marc J. Shinn-Krantz*

12                                          Marc J. Shinn-Krantz

13                                     Attorneys for Plaintiffs

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO MODIFY COURT ORDERS UNDER
RULE 60(b)