# Exhibit H



101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
T: (415) 433-6830 ▪ F: (415) 433-7104
www.rbgg.com

Marc J. Shinn-Krantz
Email: MShinn-Krantz@rbgg.com

August 12, 2019

VIA ELECTRONIC MAIL ONLY

> **PRIVILEGED AND CONFIDENTIAL**
>
> **SUBJECT TO PROTECTIVE ORDERS**

Nick Weber
Melissa Bentz
Jerome Hessick
Dillon Hockerson
Kristen Moose
CDCR Office of Legal Affairs



Matthew A. Lopes, Jr.
Coleman Special Master

Eureka C. Daye
Deputy Director
CDCR Mental Health Program

Re:  *Coleman v. Newsom*, Urgent Failure to Provide Mental Health Treatment to Patients in the California Health Care Facility Psychiatric Inpatient Program Due to Custody Restrictions
Our File No. 0489-03

Dear All:

Plaintiffs are alarmed by reports, including two recent suicide reports, making clear that CDCR is imposing custody restrictions that interfere with clinicians' ability to provide critically necessary treatment to class members at the acute and intermediate levels of care, especially for patients classified as Maximum Custody at California Health Care Facility's (CHCF) Psychiatric Inpatient Program (PIP). These unconstitutional barriers are extremely dangerous and must be addressed immediately. CDCR's documentation shows that, in many cases, the CHCF PIP—a licensed inpatient psychiatric hospital in the highest custody setting available to class members in the entire

[3422955.4]

PRIVILEGED AND CONFIDENTIAL
CDCR OLA Team
Matthew A. Lopes, Jr.
Eureka Daye
August 12, 2019
Page 2

system—provides no treatment to the most acutely ill patients in the MHSDS, despite the fact that those patients have been transferred to the PIP from lower levels of care by their clinicians for the express purpose of receiving intensive mental health care. The situation at CHCF is apparently so dire that its clinicians are discharging patients to *lower* levels so they can receive at least some treatment. Plaintiffs request an immediate joint tour of CHCF's PIP to evaluate the scope of the custodial barrier problem. Plaintiffs also request that Defendants immediately begin to provide treatment to all class members.

I. **The Custodial Barriers to Treatment Are an Urgent Problem at CHCF Given Multiple Suicides of Patients Housed or Recently Housed in CHCF Inpatient Settings.**

As discussed in Plaintiffs' email last week regarding the ▓▓▓ 2019 suicide of ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ at CHCF-PIP, four additional class members committed suicide in 2018 and 2019 within 25 days of discharging from the CHCF PIP or MHCB programs and a fifth class member committed suicide ten months after discharging from the CHCF PIP. *See* C. Trapani to Defs. August 7, 2019 Email re ▓▓▓▓▓▓ Draft Suicide Report. Together with ▓▓▓▓▓▓▓▓▓ suicide, these six deaths paint a deeply troubling picture. Plaintiffs are particularly disturbed by the suicide reports for two patients who, due to custody restrictions, received little or no treatment during their stays at CHCF's PIP and were discharged to the CSP-Sacramento (SAC) Psychiatric Services Unit (PSU) where they hung themselves this year.

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ committed suicide on ▓▓▓▓ 2019, just weeks after his ▓▓▓▓ 2019 discharge from the CHCF PIP. As Plaintiffs previously stated, ▓ ▓▓▓▓ health records and draft suicide report revealed that CHCF PIP failed to provide even basic treatment to ▓▓▓▓▓ due to custodial barriers, and CHCF PIP clinical staff documented that ▓▓▓▓▓▓ was discharged not because his clinical condition had improved, but because he would receive more treatment in an EOP setting than he could in the PIP. *See* J. Winter to Defs. ▓▓▓▓▓▓▓▓ Email re ▓▓▓▓▓▓▓ ▓▓▓▓▓▓ Draft Suicide Report. ▓▓▓▓▓▓▓▓ complained about the same custodial barriers to critically needed psychiatric treatment in May 2018, when he requested to be removed from Maximum Custody status to receive therapy, and in his July 2018 discharge from CHCF MHCB when he reported that he hoped to receive more treatment in the SAC PSU. *Id.* CDCR's final suicide report for ▓▓▓▓▓▓▓▓ states:

> All members of the treatment team opined Inmate ▓▓▓▓▓ was restricted from treatment at the PIP due to his maximum custody status and the lack of

[3422955.4]

**PRIVILEGED AND CONFIDENTIAL**
CDCR OLA Team
Matthew A. Lopes, Jr.
Eureka Daye
August 12, 2019
Page 3

> treatment modules in their setting. They explained due to the patient's maximum custody status and lack of treatment modules, the only treatment available was through non-confidential individual sessions cell front.
>
> Inmate ▓▓▓▓ was primarily on maximum custody status throughout his PIP treatment and thus was not able to program in treatment groups. The lack of use of treatment modules or ability for the PIP to provide comprehensive group therapy treatment to inmates on maximum custody status significantly restricted Inmate ▓▓▓▓'s inpatient mental health treatment.

▓▓▓▓ Final Suicide Report at 15, 24. The suicide report acknowledges that, due to custody restrictions, ▓▓▓▓ received little or no treatment during his inpatient psychiatric hospitalization stay at CHCF's PIP.

▓▓▓▓ committed suicide on ▓▓▓▓ 2019. In the eighteen months before he killed himself, ▓▓▓▓ repeatedly was referred and transferred to receive inpatient care at CHCF's PIP, but received no actual mental health care in that psychiatric hospital because of his Maximum Custody status. He was first admitted to the CHCF PIP on ▓▓▓▓ 2017 where he displayed low insight and was medication non-complaint. *See* ▓▓▓▓ Final Suicide Report at 10. ▓▓▓▓ treatment team conditioned his removal from Maximum Custody status, and allowance to program in groups without cuffs, on his ability to consistently take his medications and attend individual treatment sessions. *Id.* ▓▓▓▓ was compliant for weeks, then started to refuse treatment. Accordingly, he never made it off Maximum Custody status in the PIP. *Id.* His treatment team decided to discharge him to an EOP-ASU program where he could receive *more* treatment than at CHCF's licensed psychiatric hospital, not because ▓▓▓▓ no longer needed inpatient care. *Id.* ▓▓▓▓ suicide report documents his ongoing need for intensive inpatient treatment after his discharge from the PIP, noting that ▓▓▓▓ "did not last long in the EOP-ASU environment" and was re-referred to inpatient care 40 days later. *Id.* at 11. He was re-admitted to CHCF PIP on January 3, 2018, but soon discharged at his request on March 28, 2018. *Id.* Almost immediately, ▓▓▓▓ was sent back to a crisis bed on April 2, 2018, where he stayed for 14 days, but he was never referred back to the PIP. *Id.* Again, ▓▓▓▓ suicide report notes that, "[d]uring his entire ICF treatment, Inmate ▓▓▓▓ remained on Maximum custody status so he was not allowed to program in treatment groups as there were no treatment modules in the PIP level of care." *Id.* In language almost identical to ▓▓▓▓ suicide report, ▓▓▓▓ final suicide report states:

[3422955.4]

Case 2:90-cv-00520-KJM-SCR   Document 6858-8   Filed 09/14/20   Page 5 of 6
PRIVILEGED AND CONFIDENTIAL
CDCR OLA Team
Matthew A. Lopes, Jr.
Eureka Daye
August 12, 2019
Page 4

Inmate ▮▮▮▮▮ was primarily on Maximum custody status throughout his PIP-CHCF-ICF treatment and thus was not able to program in treatment groups. The lack of use of treatment modules or ability for the PIP to provide comprehensive group therapy treatment to inmates on Maximum custody status significantly restricted Inmate ▮▮▮▮▮'s inpatient mental health treatment.

▮▮▮▮ Final Suicide Report at 22. In the final months before ▮▮▮▮▮ killed himself, he continued to deteriorate but was not referred again for inpatient care, very likely because both he and his EOP clinicians knew he would not receive any such care even if he was referred and transferred again.

As both ▮▮▮▮▮ and ▮▮▮▮▮ final suicide reports discuss, CDCR's complete failure to provide treatment to patients at the PIP due to custodial restrictions is not a violation of CDCR policy and thus did not result in any corrective action or quality improvement plans (QIPs). *See* ▮▮▮▮ Report at 24; ▮▮▮▮ Report at 22. This practice may not violate departmental policy, but it is a clear violation of the Constitution. *See* M. Shinn-Krantz to Defs. July 15, 2019 Ltr. re CHCF Cages Proposal at 7, 9. This custodial barrier amounts to a complete elimination of inpatient care as a treatment option for patients like ▮▮▮▮▮ and ▮▮▮▮▮ We request that Defendants take immediate steps to ensure that all class members in the CHCF PIP and Defendants' other psychiatric hospitals receive constitutionally adequate treatment.

II.   **Plaintiffs Request An Urgent Tour of the CHCF PIP.**

Despite our repeated requests, Defendants have not provided detailed information about the number or duration of time patients in the PIPs are on Maximum Custody status. *See* M. Shinn-Krantz to Defs. July 15, 2019 Ltr. re CHCF Cages Proposal at 9-10 & Attachments C-D. However, initial point-in-time data show that approximately 14% of the 391 acute and intermediate patients at CHCF's PIP were on Maximum Custody status as of March 5, 2019. As discussed in our July 15 letter, we are deeply disturbed by Defendants' report that Maximum Custody patients in the CHCF PIP do not receive any group therapy and receive little to no individual treatment contacts, as well as the report that the Maximum Custody policy interferes with treatment of non-Maximum Custody patients. *See id.* at 6-7. Non-confidential cell-front contacts of the sort described above in the ▮▮▮▮ Suicide report do not constitute treatment, particularly when conducted via telepsychiatry, as class members in the unit report occurs regularly.

**PRIVILEGED AND CONFIDENTIAL**

CDCR OLA Team
Matthew A. Lopes, Jr.
Eureka Daye
August 12, 2019
Page 5

      The lack of access to constitutionally adequate inpatient psychiatric care for patients on Maximum Custody status is extremely dangerous and has contributed directly to at least two class member suicides. Given the scope and urgency of this problem, Plaintiffs ask the Special Master to convene a tour of the CHCF PIP as soon as possible, ideally before the upcoming policy meeting, to document the nature and scope of the custodial barriers to treatment in that program. We note that the CHCF PIP has not been toured since early November 2017, just after CDCR took control over the hospital, and has long suffered from extreme staffing shortages that are almost certainly contributing to the lack of care being provided. We ask that the tour involve onsite observations, interviews with clinical and custody staff and patients in the Maximum Custody units at the PIP, and a significant review of patient records—including both clinical and custodial records—to evaluate the scope of the Maximum Custody status barrier to treatment, as well as other custodial barriers to treatment such as DPS or cuff status, and the pervasive staffing shortages plaguing the program. We also request that the Special Master issue recommendations for immediate corrective action, if deemed warranted.

      Sincerely,

      ROSEN BIEN
      GALVAN & GRUNFELD LLP

      */s/ Marc J. Shinn-Krantz*

      By:  Marc J. Shinn-Krantz

MSK
cc:    *Coleman* Special Master Team
      *Coleman* Co-Counsel
      Adriano Hrvatin
      Elise Thorn
      Tyler Heath
      Damon McClain
      Robert Henkels
      Christine Ciccotti
      Sean Rashkis
      Joanna Mupanduki

[3422955.4]