XAVIER BECERRA, State Bar No. 118517
Attorney General of California
MONICA N. ANDERSON, State Bar No. 182970
Senior Assistant Attorney General
ADRIANO HRVATIN, State Bar No. 220909
Supervising Deputy Attorney General
ELISE OWENS THORN, State Bar No. 145931
TYLER V. HEATH, State Bar No. 271478
KYLE A. LEWIS, State Bar No. 201041
LUCAS HENNES, State Bar No. 278361
Deputy Attorneys General
 1300 I Street, Suite 125
 P.O. Box 944255
 Sacramento, CA 94244-2550
 Telephone: (916) 210-7318
 Fax: (916) 324-5205
 E-mail: Elise.Thorn@doj.ca.gov
*Attorneys for Defendants*

PAUL B. MELLO, State Bar No. 179755
LISA M. POOLEY, State Bar No. 168737
SAMANTHA D. WOLFF, State Bar No. 240280
LAUREL E. O'CONNOR, State Bar No. 305478
HANSON BRIDGETT LLP
 1676 N. California Boulevard, Suite 620
 Walnut Creek, CA 94596
 Telephone: (925) 746-8460
 Fax: (925) 746-8490
 E-mail: PMello@hansonbridgett.com
*Attorneys for Defendants*

ROMAN M. SILBERFELD, State Bar No. 62783
GLENN A. DANAS, State Bar No. 270317
ROBINS KAPLAN LLP
 2049 Century Park East, Suite 3400
 Los Angeles, CA 90067-3208
 Telephone: (310) 552-0130
 Fax: (310) 229-5800
 E-mail: RSilberfeld@RobinsKaplan.com
*Special Counsel for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **RALPH COLEMAN, et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**GAVIN NEWSOM, et al.,**<br><br>Defendants. | 2:90-cv-00520 KJM-DB (PC)<br><br>**DEFENDANTS' REPLY SUPPORTING MOTION TO MODIFY COURT ORDERS UNDER FEDERAL RULE OF CIVIL PROCEDURE 60(B)** |

**INTRODUCTION**

With the world still struggling to address the highly contagious COVID-19 virus and now with large swaths of the State ravaged by wild fires, Defendants move to modify three orders to enable proactive informed executive action to address these life-threatening circumstances and others without first having to seek permission from this Court, its Special Master, or Plaintiffs' counsel. Plaintiffs' opposition baldly mischaracterizes the relief Defendants are seeking and

1

Defs.' Reply Supp. Mot. Modify (2:90-cv-00520 KJM-DB (PC))

seeks to handcuff Defendants in a way that would jeopardize their own clients' safety and welfare, potentially causing the very violation of rights that Plaintiffs in other proceedings have challenged.

Plaintiffs' threshold argument that Defendants' pending appeal divests the Court of jurisdiction is incoherent. It not only reverses Plaintiffs' earlier position on the matter, but flies in the face of this Court's specific invitation to Defendants to demonstrate through a Federal Rule of Civil Procedure 60 motion "that modification of the April 24, 2020 order and underlying Program Guide requirements are warranted." (ECF No. 6730 at 3.)

Plaintiffs also argue that Defendants have failed to establish any change in circumstances sufficient to justify relief under Rule 60, because the COVID-19 pandemic existed before April 24, 2020. This argument is based on two false premises. First, Plaintiffs argue that the current state of the COVID-19 pandemic is no different from the state of the pandemic as it existed on April 24, 2020. This is demonstrably false (and further ignores the recent outbreak of numerous, quick-moving wildfires that have wreaked unprecedented destruction across the state).[1] Second, Plaintiffs' argument is based on the erroneous premise that Defendants are *only* seeking to modify the Court's April 24 order, ignoring the inconvenient fact that Defendants also seek modification of two related orders from 2017 (the March 8 and December 15, 2017 orders). (ECF No. 6843-1 at 11-12.) And Plaintiffs have already conceded that the pandemic is a changed circumstance in their own Rule 60(b)(5) motion to modify the Three-Judge Court's population-reduction order. (Three-Judge Court, No. 4:01-cv-01351, ECF No. 3219 at 28-29.) Plaintiffs forget that in this 30-year-long institutional reform case, the Court has a "continuing duty and responsibility to assess the efficacy and consequences of its order," and "must remain open to a showing or demonstration by either party that the injunction should be altered to ensure that the rights and interests of the parties are given all due and necessary protection." *See Brown v. Plata*, 563 U.S. 493, 542-43 (2011).

Plaintiffs' opposition is further defective because it never shows why in a life-threatening

---

[1] Fortunately, to date, Defendants have not had to evacuate a prison due to the ongoing wildfires, but should that need to occur, Defendants should not have to first file a motion and jeopardize inmate and staff safety.

2

Defs.' Reply Supp. Mot. Modify  (2:90-cv-00520 KJM-DB (PC))

emergency, the Eighth Amendment requires Defendants to allow the Special Master to veto Defendants' intended temporary response to the emergency. Instead, Plaintiffs rely on distortions of Defendants' proposal: that it eliminates consultation with the Special Master or "ask the Court to cut the Special Master out of the process entirely." (ECF No. 6849 at 5.) Contrary to these mischaracterizations, Defendants' proposal specifically includes a set of strict rules for notifying the Special Master, to be followed by extensive consultation as a part of the contemplated mechanism for post-hoc analysis of any emergency response. (*See* ECF No. 6843-1 at 20.) This comports with the existing structure of Special Master monitoring and workgroups. It is also similar to the process established by the Court and Special Master to address the challenges presented by the COVID-19 pandemic. It simply does not allow the Special Master to veto Defendants' intended temporary response to a life-threatening emergency.

Lastly, Plaintiffs argue that Defendants' motion fails to satisfy Rule 60's catch-all provision for relief. Plaintiffs misapply the standard under Rule 60(b)(6) and ignore Defendants' evidence demonstrating Director Clendenin's understanding of what was required under the March 8, 2017 order. Three years later, the Court's order completely erased that understanding when it held that the Director's response to an unforeseen and exceptional crisis was not appropriate, satisfying the exceptional circumstances standard of Rule 60(b)(6).

Plaintiffs cannot have it both ways—they cannot, in the face of worldwide health crisis, criticize Defendants for taking assertive and decisive action to save lives, on the one hand, while simultaneously contending Defendants have not responded quickly enough to address the crisis. (*See*, *e.g*., ECF No. 6522 at 24 ("The State must act now if it is to stop the global COVID-19 pandemic from running rampant in its prison system and striking down the most vulnerable people in its custody."); *id*. at 28-29 (confirming that the "[g]lobal pandemic constitutes a changed circumstance"); *id*. at 36 (arguing through Plaintiffs' expert that, among other thing, "[t]o be effective in reducing the spread of the virus, … downsizing measures must occur now" in the "critical window of opportunity to contain the virus before it permeates the prison system and becomes completely unmanageable" and that CDCR's decision to halt intake from counties "will not enable CDCR to contain the potential exponential growth of cases and serious complications,

3

Defs.' Reply Supp. Mot. Modify  (2:90-cv-00520 KJM-DB (PC))

of morbidity and mortality").) Defendants' actions are focused on keeping patients and staff alive, while at the same time providing constitutionally adequate mental health care to these patients. The Court should reject Plaintiffs' efforts to thwart that objective and grant Defendants' motion to provide clear parameters for decision making in these times of crisis.

## ARGUMENT

### I. PLAINTIFFS' CONTENTION THAT THE COURT IS DIVESTED OF JURISDICTION REVERSES THEIR PRIOR POSITION AND DIRECTLY CONTRADICTS THIS COURT'S JUNE 17 ORDER.

In June 2020, Defendants maintained that this Court was divested of jurisdiction over the subject matter of the April 24 and May 7 orders, including a further evidentiary hearing premised on those orders. Plaintiffs earlier disagreed. (*See* Joint Status Report at 2-10, ECF No. 6726.) The Court expressed its view that those orders are unappealable, and therefore there is no divestiture at all. (June 17, 2020 Order, 6-7, ECF No. 6730.) Unless and until the Ninth Circuit decides that the April 24 and May 7 orders are appealable, Defendants have little choice but to pursue relief using the mechanism the Court identified, while protecting their rights on appeal.

Plaintiffs now agree with Defendants' original position. (*See* Opp'n at 2.) Plaintiffs' about-face regarding divestiture contradicts their earlier position and challenges the Court's findings about its continuing jurisdiction over requests for modification. The Court previously concluded that the April and May orders were non-final because upcoming proceedings would determine whether prior orders "must be modified in light of the pandemic." (June 17 Order, ECF No. 6730 at 6.) If, as Plaintiffs now contend, the Court lacks jurisdiction to modify prior orders subject to Defendants' pending appeal, then Defendants' pending appeal *must be* jurisdictionally proper. *See Armstrong v. Schwarzenegger*, 622 F.3d 1058, 1064 (9th Cir. 2010) (post-judgment orders should be deemed final where there is "little prospect that further proceedings will occur to make them final."). In that case, the April 24 and May 7 orders are not, as this Court stated, mere "interim steps to further proceedings," but are final orders that are immediately appealable under 28 U.S.C. § 1291. (June 17 Order at 6 (citing *Plata v. Schwarzenegger*, 560 F.3d 976, 980 (9th Cir. 2009).)

4

Defs.' Reply Supp. Mot. Modify  (2:90-cv-00520 KJM-DB (PC))

The Court should reject Plaintiffs' jurisdictional Catch-22. Plaintiffs' divestiture double-standard cannot be squared with this Court's prior decision to exercise jurisdiction and proceed as it has, and its invitation to Defendants to file this Rule 60 motion.

## II. DEFENDANTS' MOTION MEETS THE STANDARD FOR RECONSIDERATION UNDER RULE 60(B).

Under Rule 60(b), modification of an order is appropriate when changed factual conditions make compliance with that order substantially unworkable, onerous, or detrimental to the public interest. *Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367, 384-85 (1992). Plaintiffs' contrary arguments notwithstanding, Defendants' motion meets the standard for reconsideration of the March 8, 2017 order by pointing to the effect of the COVID-19 pandemic, an unforeseen circumstance at the time the Court issued the order in question. As further evidence of changed circumstances, Defendants' motion points to the Court's subsequent orders finding Defendants' response to the pandemic violated the March 8, 2017 order and ordering Defendants to take additional steps not previously contemplated. Furthermore, as contemplated by the Supreme Court in *Rufo*, Defendants' proposed modification is appropriately tailored to resolve the problems created by the change in circumstances identified in Defendants' motion, providing a procedural framework that would allow Defendants to take "immediate, temporary action affecting ICF bed usage" in response to an emergency. (ECF No. 6843-1 at 20.) Indeed, as further explained in Defendants' motion, the relief adheres to the remedial powers and structures set up by the Court in its order of reference nearly thirty years ago, while squaring that relief with the powers entrusted to the state's chief executive.

### A. The Unprecedented Worldwide Health Crisis and Pandemic Caused by COVID-19 Represent a Changed Circumstance Since This Court's March 2017 Order.

Plaintiffs argue that Defendants' motion fails to identify a change in circumstances justifying a modification of this Court's order, claiming that because "the pandemic was already an existing circumstance at the time of the April 24 Order," the pandemic cannot be a sufficient changed circumstance to warrant relief under Rule 60(b). (Opp'n at 5-6.) Plaintiffs' argument

5

Defs.' Reply Supp. Mot. Modify (2:90-cv-00520 KJM-DB (PC))

misunderstands Defendants' motion and misstates both the relevant facts and law.

As a threshold matter, Plaintiffs' assertion that circumstances related to the COVID-19 pandemic have not changed since April 24, 2020 cannot be squared with reality. In late April 2020, Defendants—like the rest of the country—were struggling to confront a novel global pandemic and still learning how the COVID-19 virus was spread, how it should be treated, and other aspects of its pathology and longer-term impact on people. In sum, the scientific and public health understanding of COVID-19 was nothing like what it is today. In addition, California was in a different state of crisis five months ago. As of April 30, 2020, California was averaging 1,637 new test-confirmed cases of COVID-19. (California Coronavirus COVID-19 Statewide Update, https://update.covid19.ca.gov, last visited September 17, 2020.) By August 16, two weeks before Defendants filed the instant motion, this average had leapt to 8,081 new cases per day, a fivefold increase. (*Id.*) For Plaintiffs to assert that nothing has changed about the pandemic in the last five months is false.

Setting aside the manner in which the pandemic itself has changed in recent months, the fact remains that Defendants must contend with a global health crisis, a circumstance that was entirely unforeseen during the relevant time period. Contrary to Plaintiffs' claims, the time period relevant to the question of changed circumstances runs from 2017 when the Court issued its orders concerning bed-change notifications (ECF Nos. 5573 & 5750) and the April 24, 2020 order clarifying these orders (ECF No. 6639). Defendants have identified two significant changes in circumstances during this time frame: 1) the onset of the COVID-19 pandemic, and 2) the Court's new interpretation of the 2017 orders that absolutely prohibited Defendants from taking any action without pre-approval by the Special Master, even in the case of a life-threatening emergency (a new definition of "consultation" than had previously been used in the case).

Plaintiffs want the Court to adopt a strict interpretation of changed circumstances, essentially arguing that because the pandemic has been in existence for several months, Defendants cannot use it as grounds for reconsideration of the Court's clarification of previous orders arising in response to the pandemic. That interpretation of changed circumstances is entirely too narrow and would defeat the purpose of Rule 60. Plaintiffs effectively argue that in

6

2017, Defendants should have foreseen the pandemic and the future needs that it might create, as well as the impact on the existing remedy in this case or the additional remedy layered on by the Court's April 24, 2020 order. But Rule 60(b)(5) exists to address the unforeseen, inequitable, and detrimental effects to the public interest that sometimes occur from Court orders and remedies. *Rufo*, 502 U.S. at 384.

Here, it is not only that the COVID-19 pandemic was new and unexpected, but that the Court's modification of its March 8, 2017 injunction to require Defendants' to wait for a Court order, or possibly Special Master permission to take emergency action, is unworkable in response to COVID-19 and future life threatening events. Indeed, as Defendants' uncontroverted evidence shows, before the Court clarified and amended its March 2017 order, DSH had been following what it understood to be existing practice by contacting the Special Master and notifying him of its emergency actions. (ECF No. 6843-2 at 4.) The Court's "clarification" of its previous orders in the face of COVID-19—a true emergency situation—for the first time called into question how the March 2017 order would treat emergencies common in California, such as fires, floods, and earthquakes, further reinforcing the need for modification of the Court's orders. Changed circumstances exist to justify Defendants' proposed modification to the Court's existing orders.

**B.   Defendants Are Not Seeking Removal of Any Consultation Requirement, But Instead Seek Clarification of Defendants' Authority to Act in an Emergency Using a Manageable Communication Protocol**

Significantly, Plaintiffs never dispute any of Defendants' well-supported claims that even a brief delay in the face of an emergency could be catastrophic for patients. Instead, they claim that the current requirement that the Special Master approve Defendants' intended emergency action does not lead to delay. But the record underlying this motion itself reveals the fundamental flaw in the consultation requirement.

To avoid having to file this motion, Defendants collaborated internally and then raised this topic during a special, smaller meeting of the Special Master's weekly COVID-19 task-force meetings. (Decl. of K. Lewis Supp. Mot. Modify, ECF No. 6843-3 at ¶ 2.) Defendants also proposed separate more focused discussions with Plaintiffs' counsel and the Special Master. (*Id*.) Then, on August 4, 2020, Defendants circulated a proposed stipulation with a framework for

7

notification of emergent circumstances and follow-on discussion regarding temporary emergency actions. The Special Master thereafter declined to provide comments on the proposal for Defendants' consideration. (*Id*. ¶ 5.) And Plaintiffs never responded to the proposal. (*Id*. ¶¶ 4-5.) In other words, "consultations" with the Special Master on simple commonsense proposals do not necessarily lead to mutually agreeable solutions, but may ultimately result in litigation. And precisely because such consultation and litigation may not be consistent with the constitutional imperative to take speedy, evasive action to protect patient lives in an emergency, the relief requested here is necessary.

Plaintiffs suggest that Defendants are seeking to modify court orders to limit access to care. They argue that "DSH has always been slow to open its doors to *Coleman* class members, and quick to close them" and that the "COVID-19 pandemic presented one more excuse for DSH to close its doors." (Opp'n at 9.) This argument ignores reality and the evidence before the Court, and is little more than a distraction from the necessary relief Defendants believe they need from the Court's orders to respond to real time future emergencies and meet their constitutional obligations.

From September 2017 through the onset of COVID-19, Defendants were at or near 100% compliance with inpatient transfer timelines, with DSH rejecting very few patient transfers during that timeframe. (*See, e.g.*, ECF No. 6004 at 2 (October 2019 census and waitlist showing no patients had transferred outside transfer timeframes for fourteen months); ECF No. 6286 (August 2020 census and waitlist showing no patients transferred outside of transfer timeframes); ECF No. 6505 (February 2020 census and waitlist reports showing that all but six patients transferred in timeframes, five of whom met an exception).) During that time period, DSH also accepted most of the referrals to its hospitals for care. (*See e.g.* ECF No. 6506 (sealed monthly bed utilization report showing only four rejected referrals and providing detailed explanations for the rejections).) In addition, Plaintiffs have represented multiple times to the Court that DSH has been complying with the Court's various orders regarding the admission of patients. *See, e.g.,* ECF Nos. 6662, 6734, 6797.

8

Defs.' Reply Supp. Mot. Modify  (2:90-cv-00520 KJM-DB (PC))

DSH did not temporarily suspend patient admissions to create a barrier to *Coleman* class members. Instead, DSH temporarily closed its doors to all but one small group of patients, for whom it legally could not delay admission, in order to create a barrier to a deadly pandemic while DSH prepared its facilities to provide mental health care to its 6,000 patients in the face of the pandemic going forward. (*See* ECF No. 6834-2 at 6; ECF No. 6843-4 at 2-3.)[2] Realizing that COVID-19 would pose a threat to all of its patients, DSH exercised appropriate judgment and proactively took steps to limit that threat at an early stage. Although Plaintiffs claim—without evidence—that Defendants took this action as a result of Governor Gavin Newsom's declaration of a state of emergency on March 4, 2020, the evidence shows DSH considered and made their decision with their executive partners over the course of a day, not weeks. (ECF No. 6843-2 at 5.) As Defendants pointed out in their moving papers, DSH acted to protect the constitutional rights of its patients—including *Coleman* class members—to be safe from a known harm. (*See* ECF No. 6843-1 at 22); *see also Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (holding the Constitution is violated when prison officials act with deliberate indifferent to a substantial risk of harm to an inmate's health or safety)). Plaintiffs are wrong that the action was meant to close its doors to class members and did not serve to protect their rights and the rights of DSH's patients.

Plaintiffs' hyperbolic claim that Defendants' reasonable proposal is somehow a dangerous affront ignores the transparency and hyper-scrutiny endemic to the existing remedial scheme in which Defendants fully participate. For years, each month Defendants have filed detailed reports reflecting all inpatient referrals, transfers, admissions, referral rescissions, and referral rejections. (*See e.g.*, ECF No. 6867; ECF No. 6869 (sealed Bed Utilization Report).) Plaintiffs, the Special Master, and the Court all have access to this patient-level information. Defendants do not propose doing away with such monitoring or measures in their proposal. (*See* Lewis Decl. Ex. A.)

Plaintiffs further contend "Defendants' motion does not even hint that removing the

---

[2] DSH only remained open to a small number of patients that had completed their prison sentences and could not legally remain incarcerated, but also posed a serious threat to public safety and could not be released. (*See* ECF No. 6590 at 11-12; Cal. Pen. Code § 2962 ("a prisoner who meets the following criteria ***shall*** be provided necessary treatment by the State Department of State Hospitals") (emphasis added).)

9

Defs.' Reply Supp. Mot. Modify  (2:90-cv-00520 KJM-DB (PC))

consultation provision would bring Defendants closer to providing constitutional level treatment" and that "[i]nstead, Defendants once again argue for "lowering the constitutional floor" to give them the flexibility to provide less treatment for the Coleman class." (Opp'n at 10.) In no way is Defendants' motion postured so as to permit DSH to provide less treatment to *Coleman* patients, and Plaintiffs' assertion misses the point of Defendants' motion. Nowhere does Defendants' proposed notification process "close its doors" to *Coleman* patients or cast them out of DSH facilities. Indeed, Defendants' proposal specifically includes a process for the parties and the Special Master to work through the crisis together after Defendants take necessary action to protect constitutional rights to be protected from threats of serious harm while working to provide necessary mental healthcare. It also speculates, without support, that Defendants propose leaving patients without mental health treatment while they work to avert a life threatening proposal. That is not Defendants' intention nor their aim as evidenced by the temporary solutions Defendants have worked to provide treatment during the COVID-19 pandemic.

Defendants' proposal promotes efficiency by giving the parties a common understanding of exactly what the inpatient bed change notification and consultation process entails, including communication timelines with the Special Master. (Decl. Lewis Ex. A.) This proposal constitutes a practical solution to a condition that has now lead to multiple orders, and it is consistent with the remedy in the case. It seeks to prevent litigation concerning future inpatient bed changes at DSH that, despite Plaintiffs' hollow assertion regarding Defendants' "massive" legal resources, would needlessly consume the Court's resources when the Defendants could notify and consult with the parties in the clearly defined process envisioned by their proposal. (*See* Opp'n at 18.) Indeed, Plaintiffs' have chosen to pursue litigation regarding DSH transfers, even where, as here, they were informed of Defendants' decision to suspend *Coleman* admissions during the early days of the pandemic and voiced no objections at that time. (Clendenin Decl. ¶¶ 4-5, ECF No. 6843-2.)

Plaintiffs contend that Defendants' proposed modification to the DSH bed planning requirement would perpetuate and exacerbate the ongoing constitutional violations and not serve the public interest. (Opp'n at 10.) Nothing could be further from the truth. Defendants'

10

proposed modification is limited to a genuine emergency, and whatever life-saving measures Defendants take will cease once the emergency is over. Rather than perpetuating and exacerbating a constitutional violation, the proposed modification prevents it, as well as serves the public interest. Plaintiffs cannot seriously contend that a temporary denial of access to a DSH facility during a genuine emergency overrides both their own lives and the lives of others. *See In re Rutledge*, 956 F.3d 1018, 1028-29 (8th Cir. 2020) (finding State's "legitimate interests in protecting or promoting the public's health and safety during the COVID-19 pandemic" justified 60-day restriction on access to abortions). Nor can they seriously contend that California's robust system of mental health care, with its myriad requirements engraved into the Program Guide, will revert to the level of care from thirty years ago if the Court now grants Defendants the narrow and commonsense relief they seek in their Rule 60(b) motion.

Plaintiffs also contend the new cases that have been published during the pandemic do not help Defendants, because none of them "were in the posture of a Rule 60(b) motion" or are instructive on whether a court should reconsider prior remedial orders based on changed circumstances such as the COVID-19 pandemic. (Opp'n at 10.) Plaintiffs' first point is superficial, and their second point is based on a cribbed reading of those cases.

For starters, Plaintiffs do not explain why "the posture of [Defendants'] Rule 60(b) motion" renders the new pandemic cases inapplicable here. The overarching theme from each of those cases is that the government, in time of crisis, must be given wide latitude to protect the health and safety of its citizens. So when a post-judgment remedial order hamstrings the State's power under unexpected and extraordinary circumstances, a Rule 60(b) is the proper mechanism to raise the issue with the court and seek modification. Lest there be any doubt about the propriety of Defendants' motion, the Court explicitly invited them to file one in its May 7 order.

Plaintiffs distinguish the Chief Justice's concurrence in *South Bay United* on the ground that in that case that the government's emergency actions did not amount to a constitutional violation. But that is precisely the analysis that should guide the Court here and that justify Defendants' motion: when emergency action is needed to protect patients in Defendants' care, the Constitution does not require the Special Master to approve the action before Defendants can act,

11

nor (in the case of Special Master disapproval) does it require Defendants to first litigate the issue before this Court.  In addition, Defendants cited *South Bay United* and other cases from around the country for the proposition that in the context of a highly contagious and often fatal disease for which "there is no known cure, no effective treatment, and no vaccine," the "Constitution principally entrusts the safety and the health of the people to the politically accountable officials of the States to guard and protect." *S. Bay United Pentecostal Church*, 140 S. Ct. at 1613 (brackets omitted).  So where, as here, state "officials "undertake to act in areas fraught with medical and scientific uncertainties, their latitude must be especially broad" and their decision-making should not be second-guessed by the court unless they exceeded their "broad limits." *Id*. at 1613-14 (brackets and citations omitted).  Plaintiffs do not squarely address these important principles.

### III.  DEFENDANTS SEPARATELY ARE ENTITLED TO RELIEF UNDER RULE 60'S CATCH-ALL PROVISION.

Defendants have demonstrated they are entitled to relief from the Court's orders under the exceptional circumstances rule and the authorities interpreting that rule cited in Defendants' motion.  Rule 60(b)(6) "is to be utilized only where extraordinary circumstances prevented a party from taking timely action to prevent or correct an erroneous judgment." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 864 (1988).

Plaintiffs' only response to the application of Rule 60(b)(6) is that "Defendants offer no specific reason that justifies relief from the Court's orders, arguing only that DSH could not have anticipated the pandemic or the Court's orders."  (Opp'n at 21.)  But that statement is contrary to the evidence presented to support Defendants' motion.  DSH took action it thought was proper under a court order, only to discover its interpretation was at odds with the Court's intention of what qualified as a "consultation" when they made a critical decision that very likely saved lives.  Indeed, Director Clendenin declared that, based on DSH's good faith interpretation of the March 8, 2017 order, she understood that her March 16, 2020 communication to the Special Master satisfied the "consultation" requirement under the 2017 order.  (ECF No. 6843-2 at ¶¶ 10-16.)  No one took issue with Director Clendenin's understanding of the requirements under the 2017 order

12

Defs.' Reply Supp. Mot. Modify  (2:90-cv-00520 KJM-DB (PC))

until March 2020. Only following the Court's April 24, 2020 and May 7, 2020 orders addressing DSH's temporary transfer suspension did DSH understand that before making an emergency decision to save lives, DSH must also request permission from the Court to take emergency action that reduces the number or type of beds DSH provides to treat Coleman class members. (ECF No. 6843-2 at ¶ 25.) For this reason, the exceptional circumstances standard of Rule 60(b)(6) applies to grant DSH the relief requested.

The examples cited in *United States v. Alpine Land & Reservoir Co.*, 984 F.2d 1047 (9th Cir. 1993) help illustrate why it is proper for this Court to apply Rule 60(b)(6) to grant Defendants the relief they seek. In each of the cases where exceptional circumstances justified the application of the rule, the moving party was prevented in some manner from taking action to modify a court order under Rule 60(b), including where the movant was prevented from acting due to illness, incarceration, and a lack of counsel, (*Klapprott v. United States*, 335 U.S. 601 (1949)); where new legislation undermined the soundness of the judgment (*In re Pacific Far East Lines, Inc.*, 889 F.2d 242, 249, 250 (9th Cir. 1989)); where a five-year delay was caused by the movant's reasonable interpretation of an injunction to authorize the movant's conduct and timely relief was sought upon receipt of notice to the contrary (*United States v. Holtzman*, 762 F.2d 720 (9th Cir. 1985)); and where the parties did not receive notice or service that would have put them on notice of a requirement to take action (*Rivera v. Puerto Rico Tel. Co.*, 921 F.2d 393 (1st Cir. 1990) and *J.D. Pharmaceutical Distrib., Inc. v. Save–On Drugs & Cosmetics Corp.*, 893 F.2d 1201, 1207 (11th Cir. 1990)).

Like the examples cited in *Alpine Land & Reservoir Co.*, DSH took action it thought was proper under a court order. Only when the pandemic arose, and DSH needed to take swift action, was the order and DSH's understanding thereof called into question, highlighting and defining for the first time what the Court meant by the term "consultation." DSH could not have predicted the Court's clarification of the term and certainly could not have done anything about it after-the-fact. There is clearly a need for clarification of what is required under emergency circumstances. There is no evidence that DSH acted other than with good faith to follow this Court's order and that exceptional circumstances exist here to grant DSH the relief sought.

13

Defs.' Reply Supp. Mot. Modify  (2:90-cv-00520 KJM-DB (PC))

# CONCLUSION

Defendants have moved to modify the Court's orders concerning notification and consultation regarding DSH's inpatient bed changes, but only as a last resort. In a conscious effort to avoid motion practice, Defendants proffered a proposal to the Special Master and Plaintiffs seeking clarity on inpatient bed change notification protocols necessary to keep inmates safe. Despite weeks of communication regarding this important issue, neither the Special Master nor Plaintiffs provided any written input on Defendants' proposal. Instead, Plaintiffs have reversed their position on the Court's jurisdiction to hear this issue and disregarded matters that predate the COVID-19 pandemic. The Court should reject Plaintiffs' efforts to further constrain Defendants' ability to protect their clients from harm, and it should modify the orders at issue to provide a reasonable and transparent protocol to address emergencies like those facing DSH, Defendants, and the world collectively in during these unprecedented, uncertain, and dangerous times. Defendants expect that the Plaintiff class would appreciate the Court's approval of protocol intended to keep them safe, rather than, as Plaintiffs' opposition would have, expose them to harm.

September 17, 2020                    Respectfully submitted,

                                      XAVIER BECERRA
                                      Attorney General of California

                                      /s/ *Adriano Hrvatin*

                                      ADRIANO HRVATIN
                                      Supervising Deputy Attorney General
                                      *Attorneys for Defendants*

14

Defs.' Reply Supp. Mot. Modify  (2:90-cv-00520 KJM-DB (PC))

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

15

Defs.' Reply Supp. Mot. Modify  (2:90-cv-00520 KJM-DB (PC))