XAVIER BECERRA, State Bar No. 118517
Attorney General of California
ADRIANO HRVATIN, State Bar No. 220909
Supervising Deputy Attorney General
KYLE A. LEWIS, State Bar No. 201041
ELISE OWENS THORN, State Bar No. 145931
TYLER V. HEATH, State Bar No. 271478
LUCAS HENNES, State Bar No. 278361
Deputy Attorneys General
1300 I Street, Suite 125
P.O. Box 944255
Sacramento, CA 94244-2550
Telephone: (916) 210-7318
Fax: (916) 324-5205
E-mail: Elise.Thorn@doj.ca.gov
*Attorneys for Defendants*

ROMAN M. SILBERFELD, State Bar No. 62783
GLENN A. DANAS, State Bar No. 270317
ROBINS KAPLAN LLP
2049 Century Park East, Suite 3400
Los Angeles, CA 90067-3208
Telephone: (310) 552-0130
Fax: (310) 229-5800
E-mail: RSilberfeld@RobinsKaplan.com
*Special Counsel for Defendants*

HANSON BRIDGETT LLP
PAUL B. MELLO, SBN 179755
LISA M. POOLEY, SBN 168737
SAMANTHA D. WOLFF, SBN 240280
LAUREL E. O'CONNOR, SBN 305478
1676 N. California Blvd., Suite 620
Walnut Creek, California 94596
Telephone: 925-746-8460
Facsimile: 925-746-8490

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

**SACRAMENTO DIVISION**

RALPH COLEMAN, et al.,

Plaintiffs,

v.

GAVIN NEWSOM, et al.

Defendants.

Case No. 2:90-CV-00520- KJM-DB

**DEFENDANTS' OBJECTIONS TO THE DECLARATION OF ELIZABETH JONES IN SUPPORT OF PLAINTIFFS' BRIEF REGARDING STAFFING AND POPULATION IN RESPONSE TO THE JULY 30,2020 ORDER**

Judge: Hon. Kimberly J. Mueller
Date: September 24,2020
Time: 10:00
Crtrm.: Video Conference

Defendants Gavin Newsom, et al., hereby object to the following evidence presented by Plaintiffs Ralph Coleman, et al., in connection with Plaintiffs' Brief Regarding Staffing and Population in response to this Court's July 30, 2020 order.

## I. OBJECTION TO THE DECLARATION OF ELIZABETH JONES IN SUPPORT OF PLAINTIFFS' MOTION REGARDING STAFFING AND POPULATION

| No. | EVIDENCE | OBJECTIONS | RULING |
|---|---|---|---|
| 1 | "One of the largest obstacles to deinstitutionalization of persons with mental illness is the widespread assumption that there are no available alternatives outside of institutions. During the past two decades there has been enormous progress in the development of community-based services for persons with serious mental illness on the federal, state and local levels. The assumption that institutionalization is the only alternative is no longer grounded in fact. Diversion of people with mental illness from the criminal justice system to the mental health system is feasible and cost-effective. The basic elements needed are already in place. With the necessary linkages between correctional and community mental health systems, California and other jurisdictions can substantially reduce incarceration of the seriously mentally ill in a safe and cost-effective manner." (Declaration of Elizabeth Jones ("Jones Decl.") ¶ 5, 3:4-14.) | Irrelevant. (Fed. R. Evid. 401) Ms. Jones, Plaintiffs' purported expert witness, opines at length about the value of community-based services; however, nowhere does Ms. Jones identify how her opinion is relevant to the specific questions presented by the Court about CDCR's current staffing and population levels. Moreover, Ms. Jones fails to show how any opinion regarding "diversion" is relevant here, in a case which centers around already incarcerated persons.<br><br>Lacks foundation (Fed. R. Evid. 602) Aside from one "recent" consultation in Alameda County she identifies in Paragraph 4 of her declaration, Ms. Jones has no experience or expertise in California and provides no basis upon which she can reasonably opine on implementation of widespread community-based programming in California's prison system. Similarly, Ms. Jones fails to indicate | |



16883171.4

| | | | |
|---|---|---|---|
| | | that she has reviewed or is even familiar with the Mental Health Services Delivery System (MHDS) Program Guide, and therefore lacks foundation to make a comparison between CDCR's MHDS, other jurisdictions, and the community. | |
| 2 | "Fortunately, during the past two decades community mental health systems have developed cost-effective systems for providing such intensive services in integrative community-based settings." (Jones Decl. ¶ 6, 3:18-20.) | Irrelevant. (Fed. R. Evid. 401) Ms. Jones' testimony about community mental health systems and their provision of cost-effective intensive services is irrelevant to the specific questions presented by the Court about CDCR's current staffing and population levels. | |
| 3 | "Community-based treatment programs for the highest need individuals are built on the Assertive Community Treatment (ACT) team and Full Service Partnership (FSP) models. The ACT model has been implemented in many jurisdictions, and has been refined over the years based on numerous studies. ACT teams include several disciplines, including psychiatry, nursing, employment specialists, case workers, and peer specialists. FSP services are targeted to individuals with serious mental health disabilities who are homeless, involved in the criminal justice system, and/or frequent users of hospital or emergency room services." (Jones Decl. ¶ 8, 3:27-4:6.) | Irrelevant. (Fed. R. Evid. 401) Ms. Jones' testimony about community mental health systems and their provision of cost-effective intensive services is irrelevant to the specific questions presented by the Court about CDCR's current staffing and population levels.<br><br>Lacks foundation. (Fed. R. Evid. 602) Ms. Jones' testimony regarding the implementation of community-based programs for persons incarcerated at CDCR is unsupported by any evidence whatsoever, | |

| | | | |
|---|---|---|---|
| | | including any evidence about the financial or logistical feasibility. Ms. Jones further fails to address how state and county budgets, already stretched beyond measure by Covid-19, would accommodate such integrated programming. Moreover, aside from one "recent" consultation in Alameda County, Ms. Jones lacks any experience or expertise relevant to California's prison system. | |
| 4 | "The ACT and FSP models have proven effective in reducing criminal justice involvement and hospitalization. There are ACT protocols designed specifically for forensic populations (known as Forensic Assertive Community Treatment, or "FACT") that have achieved substantial reductions in returns to custody." (Jones Decl. ¶ 9, 4:7-10.) | Irrelevant. (Fed. R. Evid. 401) Ms. Jones' testimony about the ACT and FSP models is irrelevant to the specific questions presented by the Court about CDCR's current staffing and population levels.<br><br>Lacks foundation. (Fed. R. Evid. 602) Ms. Jones' testimony regarding the implementation of the ACT and FSP models in California is not based on her own experience or expertise, because she lacks any experience or expertise relevant to California's prison system. This testimony is also unsupported by any evidence whatsoever, including any evidence about the financial or logistical feasibility of such implementation. Ms. Jones further fails to address how state and | |

| | | | |
|---|---|---|---|
| | | county budgets, already stretched beyond measure by COVID-19, would accommodate such integrated programming. | |
| 5 | "Community-based outpatient treatment that includes supported housing has proven extremely effective at improving outcomes. Supported housing typically includes a rental subsidy and services to support the individual's tenancy. The support services can include case management, training in independent living skills, medication management and/or other services." (Jones Decl. ¶ 10, 4:11-15.) | Irrelevant. (Fed. R. Evid. 401) Ms. Jones' testimony about community-based outpatient treatment is irrelevant to the specific questions presented by the Court about CDCR's current staffing and population levels.<br><br>Lacks foundation. (Fed. R. Evid. 602) Ms. Jones' testimony regarding implementation of community-based outpatient treatment in California is not based on her own experience or expertise, because she lacks any experience or expertise relevant to California's prison system. This testimony is also unsupported by any evidence whatsoever, including any evidence about the financial or logistical feasibility of such implementation. Ms. Jones further fails to address how state and county budgets, already stretched beyond measure by COVID-19, would accommodate such integrated programming. | |
| 6 | "Full Service Partnerships with supported housing are cost-effective. In Alameda County, for example, the FSP Housing Support Program has demonstrated | Irrelevant. (Fed. R. Evid. 401) Ms. Jones' testimony about Alameda County's FSP Housing | |

| | | | |
|---|---|---|---|
| | reductions in per client costs by an average of more than $50,000 per year compared to institutionalization. Studies of supported housing programs in formerly incarcerated populations have shown large reductions in the likelihood of future incarceration." (Jones Decl. ¶ 11, 4:16-20.) | Support Program is irrelevant to the specific questions presented by the Court about CDCR's current staffing and population levels.<br><br>Lacks foundation. (Fed. R. Evid. 602) Ms. Jones' testimony regarding Alameda County's FSP Housing Support Program is unsupported by any evidence substantiating the financial or logistical feasibility of such programming as applied to California's prison system. Similarly, Ms. Jones fails to indicate that she has reviewed or is even familiar with the Mental Health Services Delivery System (MHDS) Program Guide, and therefore lacks foundation to make a comparison between CDCR's MHDS, other jurisdictions, and the community. Ms. Jones further fails to address how state and county budgets, already stretched beyond measure by COVID-19, would accommodate such integrated programming. | |
| 7 | "Crisis services are also effective in preventing reincarceration by providing a way to resolve emergency situations involving individuals with mental disabilities without resorting to arrests and new charges. I am aware that many counties in California have already implemented mobile crisis services. Studies of crisis | Irrelevant. (Fed. R. Evid. 401) Ms. Jones' testimony about crisis services and their impact on preventing *reincarceration* is irrelevant to the specific questions presented by | |

| | | | |
|---|---|---|---|
| | services show substantial reductions in arrests and incarceration." (Jones Decl. ¶ 12, 4:21-5:1.) | the Court about CDCR's current staffing and population levels.<br><br>Lacks foundation. (Fed. R. Evid. 602) Ms. Jones' testimony regarding crisis services is unsupported by any evidence substantiating the financial or logistical feasibility of such programming as applied to California's prison system state-wide.<br><br>Inadmissible hearsay. (Fed. R. Evid. 801(c), 802) To the extent this testimony relies on what "studies of crises services *show*," it is based on statements by unidentified third parties and is inadmissible as to the truth of those statements. | |
| 8 | "Supported employment programs are a proven component of effective community mental health systems. Supported employment is a package of services and supports to assist people with serious mental illness get and keep a job in the mainstream workforce. Individual Placement and Support (IPS) is the most successful model of supported employment. ISP uses a rapid job search approach, rather than focusing on lengthy assessments, training and counseling. IPS outcomes are favorable for preventing re-incarceration." (Jones Decl. ¶ 13, 5:2-8.) | Irrelevant. (Fed. R. Evid. 401) Ms. Jones' testimony about supporting employment programs is irrelevant to the specific questions presented by the Court about CDCR's current staffing and population levels.<br><br>Lacks foundation. (Fed. R. Evid. 602) Ms. Jones' testimony regarding supporting employment programs is unsupported by any evidence substantiating the financial or logistical feasibility of implementing such | |

| | | | |
|---|---|---|---|
| | | programming state-wide. Ms. Jones further fails to address how state and county budgets, already stretched beyond measure by COVID-19, would accommodate such integrated programming. | |
| 9 | "Peer support services have been proven highly effective. Peer support services are provided by trained specialists who have had their own experiences in the mental health system. Peer specialists assist with transitions from corrections to the community, maintaining connections to treatment providers, maintaining or developing social relationships and participating in community activities. Some peer support systems are specifically designed for formerly incarcerated people. Studies show that peer support services are effective in preventing re-institutionalization of persons released from psychiatric hospitals and diverting people from jail." (Jones Decl. ¶ 14, 5:9-16.) | Irrelevant. (Fed. R. Evid. 401) Ms. Jones' testimony about peer support services is irrelevant to the specific questions presented by the Court about CDCR's current staffing and population levels. | |
| 10 | "Effective implementation of the above program elements will require a system of linkages to transition people from institutions to community-based services. In this respect, California's corrections department is not starting from scratch. For more than a decade, California's corrections department has operated a Transitional Case Management Program, Mental Health Services Continuum (TCMP-MHSCP), for incarcerated people with serious mental illness who are approaching their release dates. According to the September 2019 report of the California Rehabilitation Oversight Board, the TCMP program employs 76 benefits workers assigned to all California adult prisons and fire camps on a full-time basis. Their role is to provide pre-release benefits application assistance regarding Medical, Social Security Administration and Veteran's Administration Benefits. California thus | Irrelevant. (Fed. R. Evid. 401) Ms. Jones' testimony about implementing the community-based programming she identifies is irrelevant to the specific questions presented by the Court about CDCR's current staffing and population levels.<br><br>Lacks foundation. (Fed. R. Evid. 602) Ms. Jones' testimony regarding the feasibility of implementing community-based programming is based on the existence of one program, TCMP- | |

| | | | |
|---|---|---|---|
| | already has a personnel and supervision structure in place to strengthen linkages with community-based providers of FSP Housing Support and ACT programs." (Jones Decl. ¶ 15, 5:17-6:4.) | MHSCP, and an unsupported assumption that because California "already has a personnel and supervision structure in place" for one program, it is feasible for CDCR to implement widespread community-based programming throughout its prisons statewide. However, Ms. Jones provides no evidence substantiating the financial or logistical feasibility of implementing such programming nor does she provide any evidence that counties state-wide are willing or able to make such programming available. Ms. Jones further fails to address how state and county budgets, already stretched beyond measure by COVID-19, would accommodate such integrated programming. | |
| 11 | "Programs such as ACT, FSP, and FSP Housing Support are more cost effective than institutionalization. According to a recent report by the California Legislative Analyst's Office, the average per-person cost of state prison incarceration is $81,203 as of fiscal year 2018-2019. This is an average figure—the cost of incarcerating persons with high levels of mental health care needs is certainly much higher. The type of outpatient community-based mental health treatment I have described comes at a much lower per person cost. For example, the RAND Corporation studied the cost of FSP programs in Los Angeles County between 2012 and 2016. It estimated that the program cost just over $15,000 per year per | Irrelevant. (Fed. R. Evid. 401) Ms. Jones' testimony about the cost-effectiveness of ACT, FSP, and FSP Housing Support is irrelevant to the specific questions presented by the Court about CDCR's current staffing and population levels. Similarly, Ms. Jones makes no mention of any purported knowledge she may have regarding CDCR's patient population, the nature and extent of their | |

| | | | |
|---|---|---|---|
| | adult participant; this resulted in substantial savings in comparison to the government costs incurred for each participant prior to their entry into the FSP program. Even if the targeted population in this matter would require additional housing subsidies beyond those in the RAND study, the savings over incarceration would still be substantial." (Jones Decl. ¶ 16, 6:5-17.) | mental illnesses, or the relative costs for treatment in CDCR.<br><br>Inadmissible hearsay. (Fed. R. Evid. 801(c), 802) To the extent this testimony relies upon reports and studies published by third parties it is inadmissible as to the truth of those out-of-court statements. | |
| 12 | "The use of correctional institutions to house persons in need of mental health services is cost-ineffective for state governments in part because of the structure of federal health benefits funding. Persons who would otherwise be eligible for federal funding through Medicaid or Veteran's Administration benefits are not eligible while incarcerated. State governments thus bear the entire costs of their mental health care, as well as housing, with no federal participation. Community-based programs such as FSPs, by contrast, are subsidized by the federal government." (Jones Decl. ¶ 17, 6:18-24.) | Irrelevant. (Fed. R. Evid. 401) Ms. Jones' testimony about the cost-effectiveness of ACT, FSP, and FSP Housing Support is irrelevant to the specific questions presented by the Court about CDCR's current staffing and population levels.<br><br>Lacks foundation. (Fed. R. Evid. 602) Ms. Jones' testimony is also lacking in foundation as it appears to assume, without evidence, that persons in need of mental health services are incarcerated only because of their mental health status and ignores that persons are incarcerated for the commission of crimes. | |

DATED: September 22, 2020

HANSON BRIDGETT LLP

By: */s/ Paul B. Mello*

PAUL B. MELLO
LISA M. POOLEY
SAMANTHA D. WOLFF
Attorneys for Defendants

DATED: September 22, 2020

Respectfully Submitted,

Xavier Becerra
Attorney General of California
Adriano Hrvatin
Supervising Deputy Attorney General

By: */s/ Kyle A. Lewis*

Kyle A. Lewis
Deputy Attorney General
Attorneys for Defendants

DATED: September 22, 2020

ROBINS KAPLAN LLP

By: */s/ Roman Silberfeld*

ROMAN SILBERFELD
GLENN A. DANAS
Special Counsel for Defendants