XAVIER BECERRA, State Bar No. 118517
Attorney General of California
MONICA N. ANDERSON, State Bar No. 182970
Senior Assistant Attorney General
ADRIANO HRVATIN, State Bar No. 220909
Supervising Deputy Attorney General
ELISE OWENS THORN, State Bar No. 145931
TYLER V. HEATH, State Bar No. 271478
KYLE A. LEWIS, State Bar No. 201041
LUCAS HENNES, State Bar No. 278361
Deputy Attorneys General
  1300 I Street, Suite 125
  P.O. Box 944255
  Sacramento, CA 94244-2550
  Telephone:  (916) 210-7318
  Fax:  (916) 324-5205
  E-mail:  Elise.Thorn@doj.ca.gov
Attorneys for Defendants

PAUL B. MELLO, State Bar No. 179755
LISA M. POOLEY, State Bar No. 168737
SAMANTHA D. WOLFF, State Bar No. 240280
LAUREL E. O'CONNOR, State Bar No. 305478
HANSON BRIDGETT LLP
  1676 N. California Boulevard, Suite 620
  Walnut Creek, CA 94596
  Telephone:  (925) 746-8460
  Fax:  (925) 746-8490
  E-mail:  PMello@hansonbridgett.com
Attorneys for Defendants

ROMAN M. SILBERFELD, State Bar No. 62783
GLENN A. DANAS, State Bar No. 270317
ROBINS KAPLAN LLP
  2049 Century Park East, Suite 3400
  Los Angeles, CA 90067-3208
  Telephone:  (310) 552-0130
  Fax:  (310) 229-5800
  E-mail:  RSilberfeld@RobinsKaplan.com
Special Counsel for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

|  |  |
|---|---|
| **RALPH COLEMAN, et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**GAVIN NEWSOM, et al.,**<br><br>Defendants. | 2:90-cv-00520 KJM-DB (PC)<br><br>**DECLARATION OF J. BICK IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' EXPEDITED MOTION FOR AN ORDER RE QUARANTINE AND ISOLATION** |

I, J. Bick, M.D., declare:

1.    I am currently the Director, Health Care Services, for the California Department of Corrections and Rehabilitation (CDCR) and the California Correctional Health Care Services (CCHCS).  In this capacity, I oversee all health care operations providing services to CDCR's inmate patients, including medical, nursing, quality management, mental health, and dental programs.  Before holding this position, I served as the Deputy Director overseeing CDCR's

1

Bick Decl. Supp. Defs.' Opp'n Pls.' Expedited Mot. Re: Quarantine & Isolation  (2:90-cv-00520 KJM-DB (PC))

16914032.2

mental health and dental programs from January to July 2020, the Chief Medical Executive at CDCR's California Medical Facility from 2010-2019, the facility's Chief Deputy for Clinical Services from 2007-2010, and the facility's Chief Medical Officer from 1994-2007. I make this declaration in support of Defendants' Opposition to Plaintiffs' Expedited Motion for An Order Re Quarantine and Isolation. I have personal knowledge of the statements in this declaration and could testify to them if called to do so.

2.     I received a Medical Doctorate from the University of Michigan Medical School in 1987, and am a board certified internist and an infectious diseases specialist. I completed an infectious diseases fellowship at St. Luke's Medical Center in Chicago, Illinois in 1993, and am a Fellow in the Infectious Diseases Society of America. In addition to my work at CDCR, I have served as a Visiting Associate Professor for Infectious Diseases at the University of Malaya Medical Centre, Kuala Lumpur, Malaysia from 2012-2013; an International Technical Expert on Prisons with the United Nations Office for Project Services, Myanmar from 2013-2014; an Infectious Diseases Consultant for Kajang Prison in Kajang, Malaysia from 2012-2016; and a Court-Appointed Medical Monitor in Leatherwood, et al. v. Campbell, et al., No. CV-02-BE-2812-W (W.D. Ala.), a class action concerning human immunodeficiency virus (HIV) infected prisoners in the Alabama Department of Corrections, from 2005-2007. I have contributed to various publications addressing infectious diseases in the correctional setting, and was the Assistant Editor of the "Infectious Diseases in Corrections Report" from 1997-2008, and have lectured on infectious diseases including Mycobacterium Tuberculosis, Hepatitis C, Methicillin Resistant Staphylococcus aureus, Coccidioidomycosis (Valley fever), and HIV.

3.     The *Coleman* Plaintiffs are requesting that the Court order Defendants to revise CDCR's COVID-19 quarantine and isolation space plan, originally developed in the course of the *Plata v. Newsom* suit involving inmate medical care issues, to include separate isolation and quarantine space for Enhanced Outpatient Program (EOP) inmates and higher levels of care. According to Plaintiffs, if CDCR cannot find the separate space, then it cannot safely house these patients, and they must be placed in the community. In seeking this space, Plaintiffs assume that the California Department of Corrections and Rehabilitation (CDCR) is unable to manage

1   mentally ill patients who are quarantined or isolated in mixed medical units with non-mentally ill

2   inmates. But Plaintiffs' contentions do not acknowledge CDCR's established quarantine and

3   isolation practices and are neither clinically warranted nor feasible for *Coleman* patients.

4          4.    CDCR has medically quarantined or isolated patients before the rise of the COVID-

5   19 pandemic, which is not the first contagious illness to infect and spread throughout the

6   population.  CDCR's quarantine and isolation practices have been in place for years and, to my

7   knowledge, have not been questioned by Plaintiffs.  For instance, the California Seasonal

8   Influenza Infection Prevention and Control Guidance, , developed by the Public Health Branch of

9   California Correctional Health Care Services (CCHCS), governs how CDCR adult correctional

10  facilities should care for patients with confirmed or suspected influenza.  Under this established

11  guidance, CDCR uses isolation and quarantine to control the spread of influenza.  In these

12  situations, *Coleman* class members are subject to the same quarantine and isolation practices as

13  non-class members.  *Coleman* class members may be quarantined or isolated within their housing

14  unit, or they may be quarantined in a medical unit.  Quarantine and isolation for disease

15  management are not new concepts in CDCR, and Plaintiffs are not unaware of these practices.

16         5.    The overwhelming majority of inmates quarantined because of possible coronavirus

17  exposure, including *Coleman* class members, are quarantined as a group within their own housing

18  unit.  By far, the vast majority of EOP patients placed on quarantine status remain in their regular,

19  EOP housing unit, where they continue to receive EOP treatment (other than group therapy).  A

20  minority of patients are housed elsewhere, such as inpatient settings, Mental Health Crisis Beds

21  (MHCB), Temporary Mental Health Units (TMHU), or designated quarantine or isolation space

22  outside of mental health units.  Thus, patients in a quarantined housing unit program together and

23  are moved in small groups to yard, dayroom, and showers.  To the extent EOP patients are moved

24  to a separate, non-EOP unit for quarantine or isolation, CDCR is willing to make its best effort to

25  keep EOP patients clustered together within the designated quarantine or isolation space.

26         6.    Patients who are temporarily housed in COVID-19 quarantine spaces are there

27  because CCHCS medical professionals are screening them and testing them for infection with the

28  COVID-19 virus, a highly contagious and potentially lethal virus.  These patients should not

1   intermingle with others inmates outside of their quarantined unit until it is clear that they can

2   safely do so – either following a negative test or 14-day quarantine without the onset of

3   symptoms consistent with COVID-19.  Although face coverings decrease the likelihood that the

4   COVID-19 virus will be transmitted between individuals, they do not eliminate this risk,

5   particularly because people often do not wear them appropriately or continuously.  While in

6   quarantine, it must be assumed that all patients are infected with the COVID-19 virus, and that

7   they therefore pose a risk to others and to staff during face-to-face clinical contacts, groups, and

8   during time spent with others in a dayroom.

9       7.   Plaintiffs' concern that quarantined or isolated EOP patients will be mixed with

10   general population inmates is misplaced.  A quarantine or isolation unit is not the general

11   population.  Quarantine units are strictly controlled environments with a medical mission similar

12   to that of a medical Outpatient Housing Unit (OHU) or Correctional Treatment Center (CTC).

13   *Coleman* class members in need of medical treatment are housed in OHUs or CTCs with non-

14   *Coleman* class members.  To my knowledge, Plaintiffs have not objected to this practice.  Like

15   CTCs and OHUs, quarantine and isolation beds are not meant to be permanent housing.  Their

16   distinct medical mission protects against the concerns of mixing class members with non-class

17   members.  In short, there is no public health reason to create separate EOP or inpatient patient

18   quarantine or isolation space.  Further, placement in quarantine or isolation, like placement in any

19   medical unit, is time limited.  Patients are carefully monitored by medical and custody staff while

20   on quarantine or isolation status.  Patients housed in set-aside quarantine units do not program

21   with other patients on the unit in order to avoid exposure.  Given the medical milieu and strict

22   controls over the unit, EOP patients are unlikely to have negative interactions with non-EOP

23   patients while on quarantine or isolation.

24       8.   *Coleman* class members placed on quarantine or isolation status, and housed out of

25   their normal housing unit, continue to receive mental health care in the quarantine or isolation

26   unit.  This is true for any such patient housed in an OHU or CTC, or housed in quarantine for any

27   contagious illness, be it the COVID-19 virus, influenza, norovirus, or tuberculosis.  Local

28   treatment teams are well-versed in following patients to the medical units such as the OHU, CTC,

4

1   quarantine, or isolation units, and thus, they are familiar with the concept that a patient's mental

2   health needs continue and care will be delivered.

3          9.   Nor is there a clinical need for Defendants to provide separate quarantine and

4   isolation space for Psychiatric Inpatient Program (PIP) patients, including single cell

5   environments, as Plaintiffs suggest.  PIP patients who must be quarantined will be quarantined in

6   celled housing in the PIP unit.  PIP patients who are infected and must be isolated will be isolated

7   in clinical settings with other infected patients where they will be constantly observed by clinical

8   staff.

9          10.  In addition to the lack of public health need to set aside separate quarantine and

10  isolation space for EOP and PIP patients, the number of EOP patients who are quarantined

11  outside of EOP housing units is very small.

12         11.  Given the small number of EOP patients who are quarantined outside of EOP units,

13  there is no justification for creating separate housing space when current quarantine medical units

14  are available.  Moreover, the concern that these patients will not receive mental health treatment

15  while in quarantine or isolation is erroneous.  Mental health treatment services are still provided

16  to these inmates at the quarantine and isolation locations, while adhering to public health

17  guidance promoting safe encounters between patients and providers to limit the risk of disease

18  introduction or spread.

19

20        I declare under penalty of perjury under the laws of the United States of America that the

21  foregoing is true and correct.  Executed in Davis, California on September 29, 2020.

22                                          */s/ J. Bick*_____

23                                          J. BICK, M.D.
                                            *(original signature retained by attorney)*

24

25

26

27

28
                                            5

16914032.2