XAVIER BECERRA, State Bar No. 118517
Attorney General of California
MONICA N. ANDERSON, State Bar No. 182970
Senior Assistant Attorney General
ADRIANO HRVATIN, State Bar No. 220909
Supervising Deputy Attorney General
ELISE OWENS THORN, State Bar No. 145931
TYLER V. HEATH, State Bar No. 271478
KYLE A. LEWIS, State Bar No. 201041
LUCAS HENNES, State Bar No. 278361
Deputy Attorneys General
  1300 I Street, Suite 125
  P.O. Box 944255
  Sacramento, CA 94244-2550
  Telephone: (916) 210-7318
  Fax: (916) 324-5205
  E-mail: Elise.Thorn@doj.ca.gov
*Attorneys for Defendants*

PAUL B. MELLO, State Bar No. 179755
LISA M. POOLEY, State Bar No. 168737
SAMANTHA D. WOLFF, State Bar No. 240280
LAUREL E. O'CONNOR, State Bar No. 305478
HANSON BRIDGETT LLP
  1676 N. California Boulevard, Suite 620
  Walnut Creek, CA 94596
  Telephone: (925) 746-8460
  Fax: (925) 746-8490
  E-mail: PMello@hansonbridgett.com
*Attorneys for Defendants*

ROMAN M. SILBERFELD, State Bar No. 62783
GLENN A. DANAS, State Bar No. 270317
ROBINS KAPLAN LLP
  2049 Century Park East, Suite 3400
  Los Angeles, CA 90067-3208
  Telephone: (310) 552-0130
  Fax: (310) 229-5800
  E-mail: RSilberfeld@RobinsKaplan.com
*Special Counsel for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **RALPH COLEMAN, et al.,**<br><br>                                    Plaintiffs,<br><br>v.<br><br>**GAVIN NEWSOM, et al.,**<br><br>                                    Defendants. | 2:90-cv-00520 KJM-DB (PC)<br><br>**DECLARATION OF A. MEHTA, M.D. IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' EXPEDITED MOTION FOR AN ORDER RE QUARANTINE AND ISOLATION** |

I, A. Mehta, M.D., declare:

1.  I am the Deputy Director of Statewide Mental Health Programs for the California Department of Corrections and Rehabilitation (CDCR). I previously held this position in an acting capacity from July to September 2020, and prior to that I was the Statewide Chief of Telepsychiatry. I have worked at CDCR since July 2013, during which time I have also served as a staff telepsychiatrist, site director for residency training, institution clinical lead, and acting

1

Mehta Decl. Supp. Defs.' Opp'n Pls.' Expedited Mot. Re: Quarantine & Isolation  (2:90-cv-00520 KJM-DB (PC))

16913953.1

statewide Chief of Psychiatry. I attended residency in Adult Psychiatry, and completed fellowships in both Child & Adolescent Psychiatry and Forensic Psychiatry. I submit this declaration in support of Defendants' Opposition to Plaintiffs' Expedited Motion for an Order Re Quarantine and Isolation. I have personal knowledge of the statements in this declaration and could testify to them if called to do so.

2.   I am familiar with CDCR's plan to safely treat patients in the Mental Health Services Delivery System (MHSDS) during the COVID-19 pandemic. Because of the risk to both inmates and staff, CDCR has taken a number of steps to reduce the risk of infection and spread of the disease. These measures include the use of quarantine and isolation space to physically separate inmates who were infected or exposed to the virus that causes COVID-19, including members of the *Coleman* class in CDCR's MHSDS. *Coleman* patients who are temporarily housed in COVID-19 quarantine or isolation spaces are there because they have tested positive for the virus, or they have been exposed to someone infected with this highly contagious and potentially lethal virus.

3.   Quarantine and isolation space was designated and set aside at institutions primarily so that patients in large dorms who require quarantine or isolation could be held safely. Most cases of quarantine due to potential exposure are likely occurring in the housing unit, except for transfers. Those transfers are generally being held for a short period of time, around 14 days. The Program Guide allows for newly designated EOP patients to remain at their previous housing for 60 days before transfer to an EOP institution; this is far longer than almost any isolation or quarantine. Also, the patient's contact with other inmates of any classification will be significantly limited during isolation or quarantine, as intended when setting aside separate housing for EOP patients.

4.   However, to the extent EOP patients are moved to a separate, non-EOP unit for quarantine and isolation, CDCR can make their best efforts to keep EOP patients clustered together within the designated quarantine or isolation space. Additionally, those EOP patients housed in space set aside for quarantine or isolation continue to receive mental health care in that unit. This is true for any such patient housed in an Outpatient Housing Unit or in a Correctional

2

Mehta Decl. Supp. Defs.' Opp'n Pls.' Expedited Mot. Re: Quarantine & Isolation  (2:90-cv-00520 KJM-DB (PC))

16913953.1

Treatment Center or in quarantine for any contagious illness, be it COVID-19, influenza, norovirus, or tuberculosis, among others.

5. Should a *Coleman* patient be housed temporarily in a quarantine or isolation unit that is not the place where they normally receive their mental health treatment, the patient's care follows them to that unit. The inmate's treatment team ensures their mental health treatment needs are met wherever they are located. CDCR makes every effort to provide mental health programming to these inmates, recognizing that each patient's situation is different, that each CDCR facility has different resources and physical plant space accommodations, and that the status of being quarantined or in isolation can itself impact mental health treatment. For instance, if a *Coleman* patient was exposed in their regularly assigned facility housing unit and quarantined in their regular cell, they would continue receiving all cell-based treatment that conditions allow. This includes individual sessions with their primary clinician and psychiatrist, medication adjustments, cell-based workbooks, and individual leisure activities. Most of their treatment hours other than group are provided in this setting.

6. As of September 28, 2020, there was a total of 11 EOP patients statewide that were confirmed to have COVID-19. Four of those were in EOP (Mod), leaving only 7 in the EOP general population. Because the number of quarantined or isolated EOP patients is relatively small at various institutions across the state, any requirement to set aside separate space for EOP patients within the existing quarantine or isolation units would be an inefficient use of CDCR physical space and staff. This could serve to divert resources and attention from wider efforts to combat the spread of COVID-19, without necessarily demonstrably improving the health of *Coleman* class members.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed in San Quentin, California on September 29, 2020.

                                               */s/ A. Mehta*
                                               A.. MEHTA, M.D.
                                                 *(original signature retained by attorney)*

3

Mehta Decl. Supp. Defs.' Opp'n Pls.' Expedited Mot. Re: Quarantine & Isolation  (2:90-cv-00520 KJM-DB (PC))

16913953.1