XAVIER BECERRA, State Bar No. 118517
Attorney General of California
ADRIANO HRVATIN, State Bar No. 220909
Supervising Deputy Attorney General
KYLE A. LEWIS, State Bar No. 201041
ELISE OWENS THORN, State Bar No. 145931
TYLER V. HEATH, State Bar No. 271478
LUCAS HENNES, State Bar No. 278361
Deputy Attorneys General
1300 I Street, Suite 125
P.O. Box 944255
Sacramento, CA 94244-2550
Telephone: (916) 210-7318
Fax: (916) 324-5205
E-mail: Elise.Thorn@doj.ca.gov
*Attorneys for Defendants*

ROMAN M. SILBERFELD, State Bar No. 62783
GLENN A. DANAS, State Bar No. 270317
ROBINS KAPLAN LLP
2049 Century Park East, Suite 3400
Los Angeles, CA 90067-3208
Telephone: (310) 552-0130
Fax: (310) 229-5800
E-mail: RSilberfeld@RobinsKaplan.com
*Special Counsel for Defendants*

HANSON BRIDGETT LLP
PAUL B. MELLO, SBN 179755
LISA M. POOLEY, SBN 168737
SAMANTHA D. WOLFF, SBN 240280
LAUREL E. O'CONNOR, SBN 305478
1676 N. California Blvd., Suite 620
Walnut Creek, California 94596
Telephone: 925-746-8460
Facsimile: 925-746-8490

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

**SACRAMENTO DIVISION**

| | |
|---|---|
| RALPH COLEMAN, et al.,<br>Plaintiffs,<br>v.<br>GAVIN NEWSOM, et al.<br>Defendants. | Case No. 2:90-CV-00520- KJM-DB<br>**DEFENDANTS' RESPONSE TO THE COURT'S SEPTEMBER 25, 2020 ORDER**<br>Judge: Hon. Kimberly J. Mueller |

**INTRODUCTION**

If 2020 has taught us anything, it is that nothing is static. The Mental Health Services Delivery System (MHSDS) and its population are no exception. Both the number of MHSDS patients and the level of care in which they are placed fluctuate daily. Thus, a point-in-time calculation as to the maximum population at each level of care is unhelpful because it incorrectly assumes that the populations at each level are static and there is no movement between levels of care. Similarly, it also ignores that psychiatrists are not restricted to a specific level of care, but are deployed to treat the patients that are the most in need.

Further, and as Defendants previously explained in their response to the July 30, 2020 order (ECF No. 6853), the delivery of mental health care to the incarcerated population within the California Department of Corrections and Rehabilitation (CDCR) has changed significantly since 2002, when the maximum ten percent staffing vacancy rate was established. In 2009, when CDCR developed the current Staffing Plan, and in 2017, when the Court directed Defendants to come into compliance with the 2009 Staffing Plan ratios. Rather than determine the maximum MHSDS population based upon current staffing levels and outdated staffing models and modalities, this Court, the parties, and the Special Master should focus their efforts on updating a stale staffing plan, just as this Court encouraged in 2018, when it acknowledged that the "staffing ratios have been around for some time," and "modification of those ratios … needs to start first in the workgroups and get hashed out there." (Ct. Tr. from Feb. 14, 2019 Status Conference at 14, ECF No. 5793.)

This process began in earnest in 2018, and Defendants should now be afforded the opportunity to complete that process and update the 2009 Staffing Plan, rather than be forced against their own best judgment to strictly adhere to an outdated plan that Defendants have always said would, and should, evolve and improve. Health care systems designed to serve patients should be dynamic and reflect improvements in best practices and technology, and do not, and should not, rely on plans to deliver care with set staffing ratios from over a decade ago. To suggest otherwise defies good care provision and general management practices. It also ignores that this Court otherwise tries to avoid relying on old facts and stagnant policies; for example, the

Court contemplates modifications to the Program Guide on an annual basis and has set up a process for those modifications to occur. Likewise, multiple bed studies have been required by the Court over the last 11 years. In short, any analysis of staffing ratios that accepts as a premise the methodologies and assumptions underlying the 2009 Staffing Plan is, itself, inherently flawed.

Notwithstanding these limitations and grave concerns, Defendants respond below as ordered in this Court's September 25, 2020 order.

**RESPONSE**

**I. Explanation of Charts Attached to this Filing**

This Court's September 25, 2020 order requires Defendants to describe "with specificity and including charts as necessary the number of class members at each level of the [MHSDS] that can be served by the current filled mental health staffing positions using the positions and the ratios set out in the 2009 Staffing Plan, including telepsychiatrists as authorized under the provisionally approved telepsychiatry policy, as well as regular contractors, and allowing for a ten percent vacancy rate." (ECF No. 6886 at 2:10-15.) As explained in Defendants' response to the July 30 order (at ECF No. 6853) and during the September 24 hearing on this topic, the information provided in response to this question fails to paint an accurate picture of current staffing levels within CDCR's MHSDS for a number of reasons, including: (1) psychiatric nurse practitioners (PNPs), who carry a patient case load and perform direct care under a psychiatrist's supervision, are not presently included in the psychiatry fill rate; (2) the current methodology used to calculate the statewide psychiatry fill rate fails to reflect the actual staffing needs in the inpatient levels of care (and counts empty beds, rather than patients); and (3) in recent years, the use of telepsychiatry has been expanded and the Electronic Health Records System has been implemented, both rendering significant changes within the system. Rather than assess current staffing levels against outdated assumptions and improper ratios, the parties should refocus their efforts on revising the 2009 Staffing Plan to address its significant shortcomings.

Nonetheless, Defendants provide the following information at this Court's request:

Based on the faulty premises that the population at each level of care is static, and that CDCR assigns psychiatrists to a specific level of care, **Attachment A** provides an example or

snapshot of population levels at each level of care to be served by the current filled staff psychiatry positions using the ratios set out in the 2009 Staffing Plan, allowing for a ten percent vacancy rate.[1] The estimated population numbers in this chart are based upon the current number of positions filled by psychiatrists and PNPs at the Correctional Clinical Case Management System (CCCMS), Enhanced Outpatient Program (EOP), and Mental Health Crisis Bed (MHCB) levels of care as of August 2020, plus a ten percent vacancy rate. Therefore, these estimates become invalid if the respective proportion of patients at the CCCMS, EOP and MHCB levels change in any way or if the number of filled positions change in any way. And since the MHSDS is a dynamic population that moves through the various levels of care and subprograms, fixing population numbers at each level of care and subprogram based on the unrealistic assumption that population numbers remain static effectively takes one flawed premise and compounds it with another. (*See* Declaration of Angela Ponciano in Support of Defendants' Response to the Court's September 25, 2020 Order (Ponciano Decl.) ¶ 3.)

The first column in Attachment A lists the various levels of care and sub-programs (*e.g.*, CCCMS Reception Center (CCCMS RC), General Population (GP), Administrative Segregation Unit/Short Term Restricted Housing (ASU/STRH), and Secured Housing Unit/Long Term Restricted Housing (SHU/LTRH)) that have assigned ratios and the static allocations required by the 2009 Staffing Plan. (Ponciano Decl. ¶ 4.)

The second and third columns provide an estimate of the number of patients at each level of care and subprogram who could be served by the current filled staff psychiatry positions. (Ponciano Decl. ¶ 5.) The population numbers in column two are based upon estimates by CDCR. (*Id.*) These estimates are based upon past trends and recent population data. (*Id.*) The third column is the number of staff psychiatrists required to provide care to the population in column two. (*Id.*) The number of staff psychiatrists was determined by applying the appropriate ratio

[1] This is only one example of the population by level of care and sub-programs that can be served by the current filled staff psychiatry positions using the ratios set out in the 2009 Staffing Plan, allowing for a ten percent vacancy rate. There are many other ways the population could be configured to require a certain number of allocated psychiatry positions.

from the 2009 Staffing Plan, as well as the appropriate relief factor. (*Id.*) The allocations for each level of care and subprogram are then added to the static allocations in the 2009 Staffing Plan for a total of 246.18 staff psychiatry positions. (*Id.*) This total is equivalent to the number of positions filled by psychiatrists at the CCCMS, EOP, and MHCB levels of care as of August 2020, plus a ten percent vacancy rate. (*Id.*)

Columns four and five repeat the exercise of estimating for each level of care and subprogram and applying the appropriate ratio from the 2009 Staffing Plan, as well as the appropriate relief factor. (Ponciano Decl. ¶ 6.) Once the static allocations in the 2009 Staffing Plan are added, the total number of positions required to provide services to the estimated population in column four is 269.46. (*Id.*) This total is equivalent to the number of positions filled by psychiatrists and PNPs at the CCCMS, EOP, and MHCB levels of care as of August 2020, plus a ten percent vacancy rate. (*Id.*)

**Attachment B** provides the current fill rate based on the September 28, 2020 CCCMS, EOP, and MHCB patient populations. The first column lists the various levels of care and sub-programs (*e.g.*, CCCMS RC, GP, ASU/STRH, and SHU/LTRH) that have assigned ratios and the static allocations required by the 2009 Staffing Plan. (Ponciano Decl. ¶ 9.)

The second column includes the census for the various levels of care and sub-programs as of September 28, 2020. The census for the CCCMS and EOP RC and GP and MHCB counts the number of patients at each level of care, regardless of where they are currently housed. The census for the segregation units at the CCCMS and EOP levels are based upon the level of care and housing unit of the patient as of September 28, 2020. (Ponciano Decl. ¶ 10.)

The third column is the number of staff psychiatrists required to provide care to the population in column two. (Ponciano Decl. ¶ 11.) The number of staff psychiatrists was determined by applying the ratio from the 2009 Staffing Plan, as well as the relief factor. (*Id.*) The allocations for each level of care and subprogram are then added to the static allocations in the 2009 Staffing Plan for a total of 222.66 staff psychiatry positions. (*Id.*)

The last two columns of the chart provide the current psychiatry fill rate based on the allocations provided in column three. (Ponciano Decl. ¶ 12.) The current number of positions

filled by psychiatrist at the CCCMS, EOP, and MHCB level of care as of August 2020 is 223.06. (*Id.*)  Dividing the current number of positions filled by psychiatrists by the number of positions allocated in column three renders a fill rate of 100%.  (*Id.*)  The current number of positions filled by psychiatrists and PNPs at the CCCMS, EOP, and MHCB levels of care as of August 2020 is 243.76.  (*Id.*)  Dividing the current number of positions filled by psychiatrists and PNPs by the number of positions allocated in column three renders a fill rate of 109%. (*Id.*)  Based upon these calculations, Defendants are in compliance with the 2009 Staffing Plan ratios and the maximum ten percent staffing vacancy rate established in 2002.

## II.     Limitations, Shortcomings and Qualifications for Attachments A and B

First, these charts only include staff psychiatry positions, not psychiatry supervisor positions.

Second, the allocated and filled positions at the PIPs are not included in any of the attachments because PIPs were not included in the 2009 Staffing Plan.

Third, based on the Court's directive, Attachment A incorrectly assumes that psychiatrists hired by institutions cannot be moved between various levels of care based upon need.  In fact, psychiatrists are not restricted to certain levels of care within an institution.  While CDCR allocates staff psychiatry positions based on the 2009 Staffing Plan  (*See* Declaration of A. Mehta in Support of Defendants' Response to the Court's September 25, 2020 Order (Mehta Decl.) ¶ 2), there is no mandate regarding how the institutions must use those psychiatrists.  (*Id.*)  This allows the institutions the flexibility necessary to provide care to all patients as they see fit when they are not fully staffed.  (*Id.*)  Therefore, Attachments A and B do not reflect the operational complexities of psychiatry staffing. (*Id.*)

Fourth, placing arbitrary constraints at any particular level of care is overly simplistic because any shifts in the other levels of care could increase or decrease the overall psychiatry staffing allocation.  (Mehta Decl. ¶ 3.)  For example, because the EOP segregation ratio is 1 psychiatrist for every 64 patients, a minor increase or decrease could easily impact the need for psychiatry positions.  (*Id.*)  Further, the number of patients that CDCR can provide services to at each level of care based on the ratios in the 2009 Staffing Plan will change as the total number of

positions filled by staff psychiatrists and PNPs changes. The system must be fluid enough to handle both changes in the population, but also changes in the number of positions filled.

Fifth, Attachment A, which shows an example of populations at each level of care that can be served by the current number of filled psychiatry positions plus a ten percent vacancy rate, is consistent with the 2009 Staffing Plan, but is inconsistent with operational necessities, such as rounding positions up or down at institutions to establish positions that can actually be filled. (Ponciano Decl. ¶ 7.) For example, the September 2020 allocation application of the 2009 Staffing Plan at Avenal State Prison provides a total allocation of 4.30 psychiatry positions. (*Id.*) But it would be very difficult to fill a .30 position, and therefore, CDCR rounds that allocation up to a 4.50 psychiatry allocation. (*Id.*)

Additionally, Attachment A provides the information requested by this Court's September 25 order, but does not take into account the myriad shortcomings inherent in the 2009 Staffing Plan which have been raised in Defendants' prior briefing and during oral argument on this topic. Defendants therefore provide Attachment B, which is based on census for CCCMS, EOP, and MHCB. This is inconsistent with the current methodology for calculating the fill rate, which would require the MHCB to be based on beds, not census, but it reflects the patient need based on the number of patients at the MHCB level of care as of September 28, 2020. (Ponciano Decl. ¶ 8.) This chart demonstrates why the Court should allow Defendants to work through the proposals in Defendants' September 8, 2020 letter regarding staffing proposals, as well as any other proposals, to adjust the 2009 Staffing Plan. Implementation of some, if not all of the proposals, could have a significant impact on the fill rate.

Finally, any order to reduce the MHSDS caseload to the numbers reflected in these Attachments would run afoul of the Prison Litigation Reform Act's needs-narrowness-intrusiveness requirements. 18 U.S.C. § 3626; *see also* ECF No. 6853 at 22-23.

**III. Defendants' Formal Request to Revisit the 2009 Staffing Plan**

Rather than expend further resources calculating the number of patients who may participate in the MHSDS based upon an antiquated staffing plan, Defendants formally request that this Court order the parties to participate in a work group, with the assistance of the Special

Master and his team, to revisit the 2009 Staffing Plan. Defendants do not believe the interests of the *Coleman* class are best served by the continued reliance upon a stale plan, and therefore intend to adopt a new staffing plan in 2021. To the extent these efforts are rejected by this Court or the Plaintiffs, Defendants intend to seek relief under Federal Rule of Civil Procedure 60(b) within sixty days of this Court's order, and/or under the Prison Litigation Reform Act, 18 U.S.C. § 3626(b)(2). Of course, as demonstrated by Defendants' repeated prior requests, it is Defendants' preference to work together with all stakeholders to address the deficiencies of the 2009 Staffing Plan rather than to seek necessary relief unilaterally.

**CONCLUSION**

For the reasons explained above and in the accompanying declarations, the numbers in the charts attached to this filing reflect multiple problematic assumptions about staffing and population. The 2009 Staffing Plan is outdated and flawed, and must be revisited in light of the significant changes that have occurred since it was adopted over a decade ago, including the way in which mental health care is delivered. Defendants request that this Court order the parties to work with the Special Master to address these tremendous shortcomings and create a revised staffing plan that actually reflects the current realities of the MHSDS system and the patients which it serves.

DATED: October 2, 2020

HANSON BRIDGETT LLP

By: */S/ Paul B. Mello*
PAUL B. MELLO
SAMANTHA D. WOLFF
Attorneys for Defendants

Dated: October 2, 2020

Xavier Becerra
Attorney General of California
Adriano Hrvatin
Supervising Deputy Attorney General

*/S/ Kyle A. Lewis*
Kyle A. Lewis
Deputy Attorney General
*Attorneys for Defendants*

DATED: October 2, 2020

ROBINS KAPLAN LLP

By: */S/ Roma Silberfeld*
ROMAN SILBERFELD
GLENN A. DANAS
Special Counsel for Defendants