XAVIER BECERRA, State Bar No. 118517
Attorney General of California
MONICA N. ANDERSON, State Bar No. 182970
Senior Assistant Attorney General
ADRIANO HRVATIN, State Bar No. 220909
Supervising Deputy Attorney General
ELISE OWENS THORN, State Bar No. 145931
TYLER V. HEATH, State Bar No. 271478
KYLE A. LEWIS, State Bar No. 201041
LUCAS HENNES, State Bar No. 278361
Deputy Attorneys General
  1300 I Street, Suite 125
  P.O. Box 944255
  Sacramento, CA 94244-2550
  Telephone: (916) 210-7318
  Fax: (916) 324-5205
  E-mail: Elise.Thorn@doj.ca.gov
*Attorneys for Defendants*

PAUL B. MELLO, State Bar No. 179755
LISA M. POOLEY, State Bar No. 168737
SAMANTHA D. WOLFF, State Bar No. 240280
LAUREL E. O'CONNOR, State Bar No. 305478
HANSON BRIDGETT LLP
  1676 N. California Boulevard, Suite 620
  Walnut Creek, CA 94596
  Telephone: (925) 746-8460
  Fax: (925) 746-8490
  E-mail: PMello@hansonbridgett.com
*Attorneys for Defendants*

ROMAN M. SILBERFELD, State Bar No. 62783
GLENN A. DANAS, State Bar No. 270317
ROBINS KAPLAN LLP
  2049 Century Park East, Suite 3400
  Los Angeles, CA 90067-3208
  Telephone: (310) 552-0130
  Fax: (310) 229-5800
  E-mail: RSilberfeld@RobinsKaplan.com
*Special Counsel for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **RALPH COLEMAN, et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**GAVIN NEWSOM, et al.,**<br><br>Defendants. | 2:90-cv-00520 KJM-DB (PC)<br><br>**DEFENDANTS' OBJECTIONS TO SPECIAL MASTER'S REPORT ON HIS EXPERT'S FOURTH RE-AUDIT AND UPDATE OF SUICIDE PREVENTION PRACTICES IN THE PRISONS OF THE CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION** |

**INTRODUCTION**

Defendants have dedicated countless hours and resources to develop and improve their suicide prevention practices to save inmate lives. The California Department of Corrections and Rehabilitation (CDCR) and the California Correctional Health Care System (CCHCS), with the Division of Adult Institutions and mental health and nursing leadership, have worked tirelessly and collaboratively with the Special Master's expert, Lindsay Hayes, to address his twenty-nine

1

Defs.' Objections to Report on Fourth Re-Audit (2:90-cv-00520 KJM-DB (PC))

recommendations for developing a durable suicide prevention program.[1]  Following the fourth re-audit of CDCR's suicide prevention practices, on September 23, the Special Master issued findings and recommendations that CDCR is compliant with twelve of Mr. Hayes's initial recommendations (ECF No. 6879 at 27 (providing that CDCR has complied with recommendations 2, 4, 5, 11, 19, 22, 23, 24, 25, 27, 30 and parts of 32.)  The Special Master also found and recommended that the Court order Defendants to complete implementation of the remaining eighteen recommendations (*i.e.*, 1, 3, 6, 7, 8, 9, 10, 12, 13, 17, 18, 20, 21, 26, 28, 29, 31, and the remaining parts of 32.  (*Id.*)  The Special Master outlined the recommendations that require further work in the section of his report titled the "Roadmap to Full Implementation of the Remaining Recommendation."  (*Id*. at 16.)

CDCR is committed to achieving full implementation of these eighteen recommendations.  However, Defendants object as follows to two aspects of the Special Master's recommendations.

First, Defendants object to the way in which the Special Master and Mr. Hayes recommend measuring compliance with respect to the suicide precaution and suicide watch observation requirements in recommendation 21.

Second, Defendants object to the Special Master's proposed 90-percent and 100-percent compliance standards for determining full compliance with Mr. Hayes's recommendations.  The Special Master may *monitor* Defendants' compliance with Mr. Hayes's recommendations using standards that exceed what the Eighth Amendment requires.  In addition, Defendants intend to fully implement Mr. Hayes's recommendations and come as close to 100-percent compliance as possible.  However, the focus of this decades-old class action has shifted from remedying systemic shortfalls in California's prison mental healthcare system that once fell below constitutional requirements, to regulating the day-to-day operations of the current robust system, down to the most minute details.  And under the Eighth Amendment, neither the 90-percent standard for recommendations 9, 10, 13, 17, 18, 20, 26, 28, 29, 31 and 32, nor the 100-percent standard for recommendations 10 and 21 is required.  Adopting them as the standard for

---

[1] Mr. Hayes asserts throughout his report that his work in this case and the twenty-nine recommendations were first presented in 2013.  But he began touring CDCR's institutions in late 2013 and did not issue his first draft report until November 14, 2014.  (ECF No. 5258 at 4.)

2

Defs.' Objections to Report on Fourth Re-Audit (2:90-cv-00520 KJM-DB (PC))

determining Defendants' compliance with the Eight Amendment would therefore run afoul of the Prison Litigation Reform Act's (PLRA) needs-narrowness-intrusiveness requirements. 18 U.S.C. § 3626.

With respect to recommendations 6, 7, 8, and 20, CDCR also again requests Mr. Hayes's help with the data and measures he audits so that it can continue to improve compliance.

## RESPONSE TO THE SPECIAL MASTER'S REPORT

### I. CDCR DISAGREES WITH THE MANNER IN WHICH COMPLIANCE WITH THE OBSERVATION OF SUICIDAL INMATES SHOULD BE MEASURED.

Recommendation 21 requires CDCR to enforce the Program Guide provisions authorizing only two levels of observation: (1) observation at staggered intervals not exceeding every 15 minutes on suicide precaution, and (2) continuous observation for inmates on suicide watch.

CDCR's June 15 response to the re-audit questioned how Mr. Hayes measures compliance with the suicide precaution checks. (ECF No. 6789 at 41-42.) The re-audit states that Mr. Hayes reviewed the Electronic Health Record System (EHRS) "charts of several sampled patients" to "verify the accuracy of observation rounds of patients on Suicide Precaution status." (ECF No. 6879-1 at 14.) He reviewed "four patient charts…selected at each facility for nine-hour periods ranging from 12:00 a.m. through 8:59 a.m." (*Id.*) But Mr. Hayes does not measure the intervals between the nurse's patient observations; he measures the interval between the nurse's entry of the observations in EHRS. (ECF No. 6879 at 73.) Mr. Hayes reviews "the exact date and time that nursing staff entered information." (*Id.*) But both types of data are available in EHRS.

As stated in the June 15 letter, Mr. Hayes should measure the time between the observation-intervals required under the policy. Mr. Hayes's methodology is flawed because it does not measure compliance with the recommendation or with the actual suicide prevention practice. (ECF No. 6789 at 41-42.) CDCR requests that Mr. Hayes measure compliance by auditing the times recorded by the provider as to when the observation occurred, rather than the time the provider accessed EHRS to log the observation. (*Id.*)

Nursing staff occasionally conduct rounds on several patients and then subsequently log the observations into EHRS following the completion of the round. (*Id.*) There is nothing in the

3

Defs.' Objections to Report on Fourth Re-Audit (2:90-cv-00520 KJM-DB (PC))

1    Program Guide or other policy that precludes this practice, which is further justified given the
2    advent of electronic charting, connectivity issues, and emergency or urgent patient care, which
3    can prevent concurrent charting of observations. (*Id.*) Mr. Hayes cites to the CQIT guidebook as
4    support for his requirement that nursing must always document observations at the cell front
5    while observing the patient. (ECF No. 6879 at 74.) But CQIT and the guidebook have not been
6    finalized or implemented. Also, Mr. Hayes does not provide any support for his statement that
7    the practice of entering chart notes after conducting rounds on several patients is contrary to
8    standard practice in correctional facilities. (*Id.*) Mr. Hayes, who has worked with the nursing
9    leadership for many years, described CDCR's requests for clarification with respect to 15-minute
10   observation checks as "disingenuous." (ECF No. 6879 at 74.) But nursing simply requests that
11   monitoring audit the time the nurse was at the cell front with the patient rather that the time the
12   nurse recorded the round. Mr. Hayes appears unwilling to recognize that there are times when
13   perfect compliance is not attainable or to consider reasonable explanations for noncompliance.
14   (*Id.*) Any changes to the practice by nursing as far as time restrictions on entering a chart note
15   should be consistent with CCHCS's practice and, at a minimum, those standards should be
16   consulted before any order issues requiring nursing to vary from their standard of care. CDCR
17   requests the Court order Mr. Hayes to revisit the manner in which he measures compliance with
18   this important requirement of suicide prevention.

**II.    THE SPECIAL MASTER'S RECOMMENDED 90-PERCENT AND 100-PERCENT STANDARD FOR DETERMINING FULL COMPLIANCE WITH INDIVIDUAL RECOMMENDATIONS IS INCONSISTENT WITH THE EIGHTH AMENDMENT AND THE PLRA.**

22   Defendants do not dispute that the Special Master may *monitor* Defendants' compliance
23   with Mr. Hayes's recommendations using standards that exceed what the Eighth Amendment
24   requires. However, the Special Master not only says that he will monitor Defendants' compliance
25   with Mr. Hayes's recommendations at the 90-percent and 100-percent levels, but also
26   recommends that Defendants only be held fully compliant with Mr. Hayes's recommendations—
27   and thus with the Eighth Amendment—if they meet those levels. (*See, e.g.*, ECF No. 6879 at 17
28   ("In order to achieve compliance with implementation of this recommendation [3], defendants

4

1  must ensure that at least 90 percent of custody, medical, and mental health staff at all audited
2  CDCR facilities receive annual suicide prevention training.  Each discipline must have at least 90
3  percent compliance.").)  Defendants object to the Court's adoption of this recommendation
4  because it would run afoul of the PLRA's needs-narrowness-intrusiveness requirements by
5  replacing the applicable "substantial compliance" standard with one that is inconsistent with the
6  Eighth Amendment.

7  Under the PLRA, "[t]he court shall not grant or approve any prospective relief unless the
8  court finds that such relief is narrowly drawn, extends no further than necessary to correct the
9  violation of the Federal right, and is the least intrusive means necessary to correct the violation of
10 the Federal right."  18 U.S.C. § 3626(a)(1)(A).  A violation of the Eighth Amendment cannot be
11 presumed by mere reference to expert guidelines and standards.  *Rhodes v. Chapman*, 452 U.S.
12 337, 348 n.13 (1981).  As other courts have recognized, "it would be impractical, and thus
13 unreasonable, to expect 100% compliance 100% of the time" with respect to the requirements of
14 a complex injunction.  *Wyatt by & Through Rawlins v. Rogers*, 985 F. Supp. 1356, 1388 (M.D.
15 Ala. 1997); *Berry v. Sch. Dist.*, 195 F. Supp. 2d 971, 991 (W.D. Mich. 2002) ("perfect
16 compliance with the court's remedial orders is not required for a constitutional violator to be
17 released from judicial oversight").  Courts do not require perfect compliance, nor should the
18 Special Master or this Court.  The PLRA prohibits relief that is not narrowly tailored and extends
19 further than necessary to correct a constitutional violation, but holding the State to a near-perfect-
20 compliance standard violates this maxim.

21 Mr. Hayes's recommendations, like other professional best practices and expert-based
22 standards, are certainly "helpful and relevant" to the Eighth Amendment analysis, but they do not
23 define the Eighth Amendment floor.  *See Rhodes*, 452 U.S. at 348 n.13; *Graves v. Arpaio*, 48 F.
24 Supp. 3d 1318, 1338 (D. Ariz. 2014) ("Nationally recognized best practices may exceed
25 constitutional standards in some areas and fall short in others.").  In *Rhodes*, for example, the
26 Supreme Court reversed an injunction barring prison officials from double celling inmates as an
27 Eighth Amendment remedy for overcrowding.  452 U.S. at 349-50.  The district court had
28 concluded that double celling was unconstitutional based largely on the fact that the prison

5

Defs.' Objections to Report on Fourth Re-Audit (2:90-cv-00520 KJM-DB (PC))

1  population exceeded design capacity, and on expert recommendations regarding the appropriate
2  amount of minimum living space per inmate. *Id*. The Supreme Court rejected that conclusion
3  because there was no evidence that double celling actually caused inmates harm. *Id*. at 348. The
4  Court faulted the district court for assuming that expert opinions about desirable prison conditions
5  established the constitutional minima. *Id*. at 348 n.13.

6  The Special Master and Mr. Hayes's monitoring and reporting should express the levels of
7  compliance connected to the *Coleman* remedy. But it is not for them to pronounce the degree to
8  which Defendants must substantially comply with the remedy to satisfy their obligations to the
9  *Coleman* class.

### III. DEFENDANTS SEEK GUIDANCE TO ADDRESS OUTSTANDING RECOMMENDATIONS THE SPECIAL MASTER IDENTIFIED IN THE ROADMAP TO FULL IMPLEMENTATION.

12  Defendants appreciate Mr. Hayes's response to concerns raised in the June 15 letter,
13  including his clarification of measurements he uses to monitor certain aspects of CDCR's suicide
14  prevention practices. However, with respect to a handful of the recommendations, CDCR
15  believes that Mr. Hayes could provide more useful data documenting his monitoring activities.

16  With respect to recommendations 6, 7, 8, 9, and 20, and consistent with this Court's order to
17  provide "specific recommendations" to come into compliance with each recommendations, CDCR
18  requests that Mr. Hayes provide specific auditing criteria, including sample sizes where applicable,
19  used to measure compliance. (ECF No. 6879 at 39.) Each of those recommendations are
20  addressed below.

#### A.   Recommendations 6, 7, and 8—initial health screening and receiving and release unit environments.

23  Mr. Hayes identified intake screening deficiencies at five institutions ranging from needed
24  physical plant renovations, privacy during intake screening, installing Therapeutic Treatment
25  Modules, and interviewers using compound questions. Specifically, Mr. Hayes recommends that
26  "CDCR should develop corrective action plans (CAPs) for five facilities reported as non-
27  compliant (CCI, CMC, CMF, SQ, and PVSP). (ECF No. 6879-1 at 9.) Defendants requested
28  clarification of the measurements and Mr. Hayes, at page 7 of his response, agreed to provide the

6

Defs.' Objections to Report on Fourth Re-Audit (2:90-cv-00520 KJM-DB (PC))

1    actual number of cases he has reviewed. (ECF No. 6879 at 70.) Defendants also requested that
2    the underlying metrics be provided so that that institutions are clear on which part of the
3    recommendation has not been met and the actual percent of compliance. CDCR understands the
4    issues with compliance at each institution based on the fourth re-audit report. But what would be
5    helpful for developing develop effective corrective action plans is to break down the compliance
6    information by individual percentages in three areas: quality of administering the screening
7    question, confidentiality, and physical environment. CDCR asked Mr. Hayes to clarify this
8    metric—he refused. (*Id.* at 71.) The Court should order Mr. Hayes to provide the specific
9    information for each metric measured as CDCR requested. CDCR will work with him to ensure
10   that all components of the measure are included in future reporting.

**B.    Recommendation 20— CDCR should develop a corrective action plan to ensure that supervising nursing staff regularly audits psych tech practices during daily rounds of mental health caseload inmates in administrative segregation and during weekly and bi-weekly rounds in SHUs.**

14   CDCR asked Mr. Hayes to clarify the sample size, the number of observations made, and
15   the methodology for onsite observations of psychiatric technician practices. (ECF No. 6897 at
16   41.) Mr. Hayes provided no response, except to call the request "peculiar." (*Id.* at 72.) Because
17   the fourth re-audit found deficiencies in five institutions that had previously been compliant,
18   CDCR wants to review the sample size and number of observations made to determine the extent
19   of the compliance issue. The fourth re-audit report does not provide a sample size (Mr. Hayes
20   only reports that fifteen of twenty institutions were not compliant), which makes it difficult for
21   CDCR to assess whether one psych tech encounter was inadequate or whether it is a larger,
22   actually systemic, problem. Mr. Hayes could help CDCR by breaking out the items he measures
23   for compliance so that CDCR can understand the scope of the problems with non-compliance
24   (whether one staff or twenty), which in turn will help with the development of effective corrective
25   action plans to achieve full compliance.

**CONCLUSION**

27   Defendants continue to work to implement Mr. Hayes's important recommendations.
28   Defendants, however, do not believe that this Court should accept the Special Master's

7

recommendation that 90-percent and 100-percent compliance standards for individual recommendations are required before determining that Defendants have fully implemented Mr. Hayes's recommendations. In addition, in the spirit of transparency, Defendants urge this Court to keep open the door to information sharing, given the Special Master and his expert's obligation under this Court's Order of Reference to provide the guidance Defendants seek, in this and other matters in this case, to provide class members access to adequate mental health care and services.

Dated: October 5, 2020

Respectfully submitted,

XAVIER BECERRA
Attorney General of California
ADRIANO HRVATIN
Supervising Deputy Attorney General

/s/ *Elise Owens Thorn*
Elise Owens Thorn
Deputy Attorney General
*Attorneys for Defendants*

8

Defs.' Objections to Report on Fourth Re-Audit (2:90-cv-00520 KJM-DB (PC))