DONALD SPECTER – 083925
STEVEN FAMA – 099641
MARGOT MENDELSON – 268583
PRISON LAW OFFICE
1917 Fifth Street
Berkeley, California  94710-1916
Telephone:    (510) 280-2621

CLAUDIA CENTER – 158255
DISABILITY RIGHTS EDUCATION
AND DEFENSE FUND, INC.
Ed Roberts Campus
3075 Adeline Street, Suite 210
Berkeley, California  94703-2578
Telephone:    (510) 644-2555

MICHAEL W. BIEN – 096891
JEFFREY L. BORNSTEIN – 099358
ERNEST GALVAN – 196065
LISA ELLS – 243657
THOMAS NOLAN – 169692
JENNY S. YELIN – 273601
MICHAEL S. NUNEZ – 280535
JESSICA WINTER – 294237
MARC J. SHINN-KRANTZ – 312968
CARA E. TRAPANI – 313411
ALEXANDER GOURSE – 321631
AMY XU – 330707
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California  94105-1738
Telephone:    (415) 433-6830

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>    Plaintiffs,<br><br>  v.<br><br>GAVIN NEWSOM, et al.,<br><br>    Defendants. | Case No. 2:90-CV-00520-KJM-DB<br><br>**OCTOBER 15, 2020 JOINT REPORT ADDRESSING CURRENT COVID-19-RELATED DEPARTURES FROM PROGRAM GUIDE REQUIREMENTS**<br><br>Judge:   Hon. Kimberly J. Mueller |

[3632413.1]

1        On April 17, 2020, the Court ordered the parties to file a stipulation identifying

2   "temporary departures from certain Program Guide requirements" for the provision of

3   mental health care arising from Defendants' efforts to respond to the COVID-19

4   pandemic.  ECF No. 6622 at 2-3 (Apr. 17, 2020).  On May 20, 2020, the parties submitted

5   a stipulation and proposed order as the Court directed.  *See* ECF No. 6679 (May 20, 2020).

6   That stipulation set forth a process whereby the parties, on a monthly basis, would meet

7   and confer, under the supervision of the Special Master, and report to the Court on updated

8   changes to the stipulation and its attachment, Appendix A.  *See id.* at 4-5.  The parties filed

9   updates to Appendix A, along with stipulations, on June 15, 2020, *see* ECF No. 6718, and

10  July 15, 2020, *see* ECF No. 6761.

11       The Court disposed of the parties' May 20 stipulation without adopting it in the July

12  28, 2020 Order, ECF No. 6791 ("July 28 Order").  By minute order, the Court required the

13  parties to continue to provide monthly updates regarding changes to Appendix A on the

14  fifteenth of every month except for August 2020.  *See* Minute Order, ECF No. 6814 (Aug.

15  14, 2020).  On August 21, 2020, the parties submitted their August monthly update, along

16  with "their positions on the path to full resumption of Program Guide level mental health

17  care assuming the COVID-19 pandemic has not abated and will not abate for some time,"

18  July 28 Order at 3, and their agreement that the monthly update process should continue,

19  *see* Jt. Report Addressing Current COVID-19-Related Departures from Program Guide

20  Requirements & Resumption of Program Guide Mental Health Care, ECF No. 6831 (Aug.

21  21, 2020) ("August Joint Report").

22       The parties hereby submit the attached updated version of Appendix A, which

23  captures as of the date of this filing the status of COVID-19-related departures from

24  requirements set forth in the Program Guide and/or policies listed in the "Compendium of

25  Custody Related Measures," *see* ECF No. 6661 at 2, jointly filed by the parties on

26  December 19, 2019, ECF No. 6431 ("Compendium policies").

27  / / /

28  / / /

[3632413.1]

1

OCTOBER 15, 2020 JOINT REPORT ADDRESSING CURRENT COVID-19-RELATED DEPARTURES FROM
PROGRAM GUIDE REQUIREMENTS

1      1.      The chart attached hereto as **Appendix A** identifies a further two temporary

2  policies and procedures implemented due to the COVID-19 pandemic that permit or

3  effectuate departures from Program Guide requirements for mental health care.  Appendix

4  A includes policies that depart from the Program Guide and/or Compendium policies in

5  Defendants' efforts to manage the delivery of mental health care during COVID-19.  Some

6  of these policies require care that exceeds the requirements set forth in the Program Guide.

7  True and correct copies of the two new temporary policies and procedures are attached

8  hereto as part of Appendix A.

9      2.      The two Appendix A policies added to the September update—the August

10  14, 2020 Institutional Roadmap to Reopening and the August 19, 2020 revised Movement

11  Matrix—address the quantity and modalities of mental health treatment provided within

12  CDCR, along with intra- and inter-institution transfers for higher levels of mental health

13  care (including to DSH), from desert institutions and reception centers, and to and from

14  restricted housing settings.  The parties have discussed the Movement Matrix substantively

15  at one Taskforce meeting, but have not discussed the substance of the Roadmap to

16  Reopening.  Defendants have stated that another iteration of the Movement Matrix is being

17  drafted.

18      Plaintiffs sent a letter to Defendants on September 10, 2020, expressing major

19  concerns with the revised Movement Matrix and Roadmap to Reopening, and continue to

20  have serious concerns regarding the impact of these policies on class members' access to,

21  and the provision of, mental health treatment in Defendants' institutions.  Defendants have

22  indicated that, as a result of these two policies, revisions to some existing COVID-19

23  policies will be necessary and some are now superseded.  The former Appendix A policies

24  Defendants determined are superseded in full by the revised Movement Matrix and

25  Roadmap to Reopening were removed from the September 15 update to Appendix A.

26  Plaintiffs have repeatedly asked Defendants to clarify and/or provide revised versions of

27  the following policies that Defendants have stated are superseded in part by the Movement

28  Matrix and Roadmap to Reopening:

[3632413.1]

OCTOBER 15, 2020 JOINT REPORT ADDRESSING CURRENT COVID-19-RELATED DEPARTURES FROM
PROGRAM GUIDE REQUIREMENTS

1          (1)     COVID-19 Mental Health Delivery of Care Guidance & Tier Document

2    (Mar. 25, 2020);

3          (2)     COVID Emergency Mental Health Treatment Guidance and COVID

4    Temporary Transfer Guidelines and Workflow (Apr. 10, 2020); and

5          (3)     COVID Emergency Mental Health Treatment Guidance for MAX Custody

6    Patients and COVID EOP Temporary Transfer Guidelines and Workflow (Apr. 17, 2020).

7          As of the September 15, 2020 update, Defendants indicated they were in the process

8    of reviewing all policies in Appendix A to ensure they are up to date and consistent with

9    each other.  Defendants also stated that a memo to the field would be necessary to clarify

10   the status of these policies, once the review is complete.  Plaintiffs believe that any

11   clarifying memo to the field should also address the status of the COVID-19 Surge

12   Mitigation and Management Plan attached as Exhibit 7 to the September 15, 2020 Program

13   Guide Departures Update.  Plaintiffs have also asked Defendants to report on institutions'

14   movements in and out of the Roadmap's "phases."  Plaintiffs have not received responses

15   from Defendants as to their comprehensive review of Appendix A policies, a clarifying

16   memo to the field, or their request for reporting on aspects of the Roadmap to Reopening.

17         Defendants are in the process of revising the April 10 and April 17, 2020 policies

18   and combining them into a single cohesive policy.  Defendants anticipate providing the

19   proposed memorandum to the Task Force for discussion at the October 27, 2020 meeting.

20   Defendants' review of the March 25, 2020, policy is ongoing.  Defendants continually

21   review policies in Appendix A to ensure they are up to date and consistent with each other.

22   Notification to the field about the operative status of policies found in Appendix A will

23   coincide with the finalization of the revision to the April 10 and 17, 2020 policies.  The

24   parties will continue to meet and confer regarding these policies to clarify terms and intent,

25   to work out implementation of the policies with regard to *Coleman* class members, and to

26   address Defendants' reporting on the impacts of the memos.

27         3.     In their May 20, 2020, stipulation, Defendants agreed to provide certain

28   reports to the Special Master and Plaintiffs.  *See* ECF No. 6679 at 3-5, ¶ 2.  Defendants

[3632413.1]

3

1   began producing reports the week of May 25, 2020.  Redacted copies of those reports are

2   appended hereto:

3            a.      Tier Report, September 8 – 11, 2020; September 14-18, 2020;

4   September 21-25, 2020; September 28-October 2, 2020; October 5 – 9, 2020  **Exhibit  1**;

5            b.      Temporary Mental Health Unit (TMHU) and Treat In Place List,

6   September 8 – 11, 2020; September 14-18, 2020; September 21-25, 2020; September 28-

7   October 2, 2020; October 5 – 9, 2020, **Exhibit 2**;

8            c.      Shower and Yard in Segregation Compliance Report for September

9   2020, **Exhibit 3**;

10            d.      TMHU 114-A Tracking Log Report for September 2020, **Exhibit 4**.

11   This report also integrates the report on the custody reviews of Max Custody patients

12   referred to a TMHU.  *See* ECF No. 6679 at 3-4, ¶ 2(c); and

13            e.      On Demand Patient's Pending Inpatient Transfer Registry accessed

14   October 15, 2020, **Exhibit 5**.  This report replaces the prior Temporary Mental Health Unit

15   (TMHU) Registry.

16            f.      COVID-19 Mental Health Dashboard, accessed October 15, 2020,

17   **Exhibit 6.**

18        The parties have agreed on the form of the Tier Reports, ECF No. 6679 at 3, ¶ 2(a),

19   and the TMHU and Treat in Place List, *id.* at ¶ 2(b), although Plaintiffs have identified

20   many discrepancies, omissions, and apparent errors in the latter report and have repeatedly

21   asked Defendants to provide this information—either in the List itself or via the TMHU

22   Registry.  On October 9, 2020, Defendants finalized updating the TMHU Registry and

23   replaced it with the Patient's Pending Inpatient Transfer Registry.  The new registry

24   includes data on all patients housed in a TMHU, patients referred to an acute bed and not

25   housed in a TMHU, crisis bed, or psychiatric inpatient program, and patients referred to

26   intermediate care and not housed in a TMHU, crisis bed, or psychiatric inpatient program.

27   A copy of that new report is attached as Exhibit 5.  Now that the automated TMHU

28   Registry has been upgraded to capture patients referred to higher levels of care housed in

[3632413.1]

4

1  TMHUs and in outpatient settings, Defendants will discontinue the manual TMHU and

2  Treat in Place Reports.

3  　　　　Plaintiffs received notice of the creation of the Patients Pending Inpatient Transfer

4  Registry on October 13, 2020 and have reviewed it only briefly.  Plaintiffs will provide

5  any comments or concerns to Defendants regarding this revised report once they have had

6  an opportunity to review it more extensively.  The parties will continue to meet and confer

7  as necessary regarding this report, including to confirm that it captures all patients referred

8  for inpatient care who are not able to transfer due to pandemic-related restrictions.

9  　　　　On July 22, 2020, Plaintiffs provided written comments to Defendants on the

10  Shower and Yard in Segregation Compliance Report, *id.* at 4, ¶ 2(d), and the TMHU 114-

11  A Tracking Log Report, *id.* at 3, 4 ¶¶ 2(c), (e).  *See* ECF No 6761 at 3 (July 15, 2020).

12  Defendants responded to Plaintiffs' comments by letter on August 5, 2020.  Defendants

13  have also discussed the reports with the Special Master team in the small workgroup

14  setting and are working on modifications to the reports as a result.  The parties met and

15  conferred on September 17, 2020 to continue discussing the content of and methodology

16  used to develop these reports as well as the modifications being considered as a result of

17  the small workgroup.  Plaintiffs have not received responses to their queries from that

18  meeting.  Nor have Defendants provided Plaintiffs revised versions of either of these

19  reports.  Plaintiffs continue to have significant concerns regarding the content and utility of

20  the Shower and Yard in Segregation Compliance Report, and await an opportunity to

21  review the revised TMHU 114-A Tracking Log Report.  Defendants reported that the

22  modifications discussed with the Special Master and Plaintiffs are forthcoming.

23  　　　　Development of the COVID-19 Mental Health Dashboard, *id.* at 5, ¶ 2(f)(ii), has

24  concluded.  Plaintiffs and the Special Master team now have access to the full COVID-19

25  Dashboard, including the Glossary.

26  　　　　4.　　　　On May 20, 2020, the parties reported that they were still negotiating the

27  data Defendants can provide regarding the average number of hours of out-of-cell

28  treatment, including yard and recreation time, offered per week, as well as the status of

[3632413.1]

5

1  available entertainment devices and other in-cell activities for all class members in mental

2  health segregation units.  In meet and confer discussions, Defendants reported that they do

3  not have the capability to report on this information because none of this data is currently

4  automated and they lack a single source of tracking information that could be used to

5  provide a report on these issues.  Defendants reported that, in lieu of a headquarters-level

6  automated tracking report, their typical practice is to regularly audit many of these items

7  via on-site audits by Mental Health Regional Administrators, but on-site audits were

8  paused due to the COVID-19 pandemic.  On-site audits of open institutions resumed in

9  mid-July 2020.  Since that time, Defendants have inspected ten institutions and collected

10  data on the operation of mental health segregation units at those institutions.

11       Defendants did not provide the compiled data, along with methodology, to Plaintiffs

12  on August 26, 2020 as promised.  *See* August Joint Report at 5, ¶ 3.  On September 12,

13  2020, Defendants provided data collected from six institutions on inmate access to

14  entertainment appliances in mental health segregation units.  Additionally, Defendants

15  provided the methodology of the segregation unit audit and a copy of the standard audit

16  form completed by its auditors.  Plaintiffs await further data gathered during these audits.

17  Plaintiffs remain concerned about Defendants' inability to effectively track and report on

18  these requirements at the headquarters level, and about Defendants' reliance on on-site

19  audits as a general matter given Plaintiffs' concerns about the PSU and EOP ASU hub

20  certification process.  The parties nonetheless agree to continue to meet and confer about

21  these issues under the supervision of the Special Master.

22

23

24

25

26

27

28

[3632413.1]

OCTOBER 15, 2020 JOINT REPORT ADDRESSING CURRENT COVID-19-RELATED DEPARTURES FROM
PROGRAM GUIDE REQUIREMENTS

1    DATED:  October 16, 2020          Respectfully submitted,

2                                      ROSEN BIEN GALVAN & GRUNFELD LLP

3
                                       By:  */s/ Jessica Winter*
4                                           Jessica Winter

5                                      Attorneys for Plaintiffs

6

7
     DATED:  October 16, 2020          XAVIER BECERRA
8                                      Attorney General of California

9
                                       By:  */s/ Elise Owens Thorn*
10                                          Elise Owens Thorn
                                            Deputy Attorney General
11
                                       Attorneys for Defendants
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[3632413.1]

OCTOBER 15, 2020 JOINT REPORT ADDRESSING CURRENT COVID-19-RELATED DEPARTURES FROM
PROGRAM GUIDE REQUIREMENTS