1    DONALD SPECTER – 083925        MICHAEL W. BIEN – 096891
     STEVEN FAMA – 099641           JEFFREY L. BORNSTEIN – 099358

2    MARGOT MENDELSON – 268583    ERNEST GALVAN – 196065
     PRISON LAW OFFICE            THOMAS NOLAN – 169692

3    1917 Fifth Street                 LISA ELLS – 243657
     Berkeley, California  94710-1916    JENNY S. YELIN – 273601

4    Telephone:  (510) 280-2621       MICHAEL S. NUNEZ – 280535
                                  JESSICA WINTER – 294237

5    CLAUDIA CENTER – 158255      MARC J. SHINN-KRANTZ – 312968
     DISABILITY RIGHTS EDUCATION   CARA E. TRAPANI – 313411

6    AND DEFENSE FUND, INC.       ALEXANDER GOURSE – 321631
     Ed Roberts Campus              AMY XU – 330707

7    3075 Adeline Street, Suite 210     ROSEN BIEN
     Berkeley, California  94703-2578    GALVAN & GRUNFELD LLP

8    Telephone:  (510) 644-2555       101 Mission Street, Sixth Floor
                                  San Francisco, California  94105-1738

9                                    Telephone:  (415) 433-6830

10   Attorneys for Plaintiffs

11

12                   UNITED STATES DISTRICT COURT

13                   EASTERN DISTRICT OF CALIFORNIA

14

15   RALPH COLEMAN, et al.,        Case No. 2:90-CV-00520-KJM-DB

16           Plaintiffs,         **SEVENTH JOINT UPDATE ON THE WORK OF THE COVID-19 TASK FORCE**

17       v.

18   GAVIN NEWSOM, et al.,         Judge:  Hon. Kimberly J. Mueller

19          Defendants.

20

21

22

23

24

25

26

27

28

This report provides the parties' seventh COVID-19 Task Force joint update and covers issues discussed since the sixth joint update filed on October 2, 2020.[1]  This report covers the Thirty-Seventh (October 6) and Thirty-Eighth (October 13) COVID-19 Task Force meetings (the Task Force did not meet on October 20 or 27), and several small workgroup meetings between representatives from Defendants and the Special Master's team.  Unless otherwise indicated, the small workgroup meetings include members of Defendants' leadership and the Special Master's team, and not Plaintiffs.  The Special Master holds meetings with Plaintiffs to update them on the status of the workgroups.

I.      UPDATE REGARDING COVID-19 CASES IN CDCR AND DSH

    A.      CDCR's Report On COVID-19 Cases And Testing.

The following table shows, as of October 28, 2020, CDCR's report on the total number of confirmed COVID-19 cases, currently active, resolved to date, currently hospitalized, hospitalized to date, deaths to date, and the number and percentage of those cases who are *Coleman* class members and their level of care.

| COVID Result | Total Patients | MHSDS Patients Only | MHSDS patients as % of total |
|---|---|---|---|
| Active | 534 | 178 (174 CCCMS, 3 EOP, 1 MHCB) | 33.3% |
| Resolved | 13,117 | 3,477 (3,204 CCCMS, 237 EOP, 14 ICF, 12 ACUTE, 10 MHCB) | 26.5% |
| TOTAL Active + Resolved | 13,651 | 3,655 (3,378 CCCMS, 240 EOP, 14 ICF, 12 ACUTE, 11 MHCB) | 26.8% |
| Currently Hospitalized | 15 | 4 (All CCCMS) | 26.7% |
| Cumulative Hospitalized | 553 | 183 (156 CCCMS, 27 EOP) | 33.1% |

---

[1] At the June 26, 2020 status conference, the Court directed the parties to file a joint report with updates "on the work of the Task Force" by July 15, 2020 and "every two weeks thereafter."  (ECF No. 6741.)  The Court modified this schedule on August 26, 2020, directing the parties to file COVID-19 Task Force updates every other Friday by 12:00 p.m., beginning on August 28, 2020.  (ECF No. 6837.)  On September 25, 2020, the Court extended the deadline to file the sixth joint update to October 2, 2020 at 12:00 p.m. and directed that further joint updates be filed every four weeks.  (ECF No. 6886.)

[3641583.10]

| **Deaths[2]** | 78 | 27 (25 CCCMS, 1 EOP, 1MHCB) | 34.6% |
|---|---|---|---|

CDCR reports the above hospitalization numbers include re-admissions of some patients who were discharged and then re-admitted.  It also reports that the numbers exclude patients who were COVID-19 positive and admitted to outside hospitals for reasons other than COVID-19.

According to CDCR, as of October 28, 2020, it had tested 100,218 unique incarcerated people and formerly incarcerated people, 81,528 of whom are still in CDCR custody.  Of the total number of in-custody prisoners tested, 25,099 or 30.8% of those tested were part of the MHSDS.  CDCR's rate of tests per 1,000 incarcerated people (832.9 per 1,000) is higher than the rates in California (455.1 per 1,000) and the United States as a whole (406.0 per 1,000); according to CDCR's publicly available Population COVID-19 Tracking dashboard reports, as of October 24, 2020, CDCR's rate of confirmed cases per 1,000 incarcerated people (157.4 per 1,000) is higher than the rates in California (22.9 per 1,000) and the United States (25.9 per 1,000).

As of October 27, 2020, CDCR has designated twenty-two of its thirty-five institutions as closed to movement of incarcerated people not considered "resolved" COVID-19 patients.  Two of the institutions with Psychiatric Inpatient Programs ("PIPs") re-opened since the prior joint update—California Institution for Women re-opened on October 19, 2020, and California Health Care Facility re-opened on October 12, 2020. The other three institutions with PIPs remain closed.  The closed designation does not preclude all movement of incarcerated persons.  The closed designations for North Kern State Prison and Wasco State Prison are qualified by an exception for Reception Center intake, and the closure of the California Correctional Center is qualified by an exception for resolved cases to transfer to fire camp.

---

[2] In light of additional information recently received by Plaintiffs showing an additional class member death, Defendants are working to obtain updated verified information regarding further COVID-19-related deaths.

[3641583.10]

**B.     DSH Report Regarding COVID-19 Cases and Facilities.**

As of October 28, 2020, there were no confirmed positive cases in DSH's *Coleman* patient population.  As of October 28, DSH has performed 22,904 tests on a cumulative total of 5,576 patients across all five hospitals, and a total of 322 patients and 440 staff have tested positive to date, with a total of 4 patients and 13 staff testing positive in the past 14 days across the five hospitals.

As of October 23, 2020, DSH-Atascadero is currently open to admissions, has no *Coleman* patients showing symptoms, and has one active isolation unit housing three asymptomatic *Coleman* patients following their transfers from CDCR.

As of October 23, 2020, DSH-Coalinga is currently open to new admissions, with four housing units on quarantine.  The *Coleman* treatment unit at DSH-Coalinga, which had previously been on quarantine from September 8, 2020 to September 24, 2020 was placed back on quarantine on October 15, 2020 with an estimated reopening date of October 29, 2020.

As of October 26, DSH-Patton has nine housing units on quarantine including the *Coleman* unit, which was placed on quarantine on October 10, 2020 due to carpenters working on the unit who tested positive.  No *Coleman* patients have tested positive.

## II.   UPDATES ON DSH CENSUS, WAITLIST, AND ADMISSIONS

At the Task Force meetings, DSH and CDCR provided their census, waitlist, and admission reports.  Although the Task Force did not meet October 20 or 27, DSH continued to provide its weekly census, waitlist, and admission reports electronically to the Plaintiff's and Special Master for these two weeks.  DSH lifted its temporary suspension of admissions on April 16, 2020.  Since that date through October 23, 2020, DSH has admitted a total of 111 *Coleman* class members.  This includes 17 class members admitted during the workweek of October 19-23, 2020, and 11 class members during the workweek of October 12-16, whose transfers had previously been on hold due to the sending CDCR institution being closed for movement.  No admissions occurred during the workweek of October 5-9.  As of October 23, 2020, there were 195 *Coleman* class members at DSH-

[3641583.10]

1  Atascadero (with 61 available beds), 39 at DSH-Coalinga (with 11 available beds), and 11

2  at DSH-Patton (with 1 bed on hold for a pending admission, and 18 available beds).

3      On October 20, 2020, DSH released updated Draft COVID Temporary Guidelines

4  for Transfer to DSH Inpatient Care. This update to the July 16, 2020 Temporary

5  Guidelines addresses how DSH and CDCR will handle transfers from closed institutions.

6      As of October 23, 2020, Defendants report there are 35 patients awaiting admission

7  to DSH, for an average of 46.7 days for patients with holds and 49.7 days for the active

8  waitlist (maximum of 113 days).  This includes 33 patients awaiting admission to DSH-

9  Atascadero and DSH-Coalinga, including 20 ICF patients awaiting admission for more

10  than 30 days.  Of the 33 patients awaiting admission to DSH-Atascadero and DSH-

11  Coalinga, 31 are housed at institutions CDCR has designated as closed to movement due to

12  COVID-19.  There are 2 ICF patients awaiting admission to DSH-Patton who have been

13  treated in place while awaiting admission for more than 30 days.  Defendants also reported

14  that they anticipated admitting 6 patients during the workweek of October 26-30, 2020, 4

15  of whom were housed at institutions CDCR has designated as closed to movement due to

16  COVID-19.

17  **III.    UPDATES ON THE CDCR AND DSH SMALL WORKGROUP**

18  **ACTIVITIES.**

19      **A.    CDCR Workgroup.**

20      The Special Master's experts have held small workgroups with CDCR and DSH

21  leadership, without Plaintiffs or Defendants' counsel, focused on specific topics.  As

22  discussed further below, these topics included meeting Program Guide requirements,

23  updating the April 10 and 17, 2020 COVID-19 transfer memoranda, and EOP class

24  members participating in the Integrated Substance Use Disorder Treatment (ISUDT)

25  program.

26      **B.    DSH Workgroup.**

27      The DSH small workgroup has met and reported its activities to the Task Force.  At

28  the October 6, 2020 Task Force meetings, DSH reported that no *Coleman* patients had

4

[3641583.10]

been admitted to DSH in the prior workweek.  At the October 13, 2020 Task Force, DSH reported that two patients had been admitted on October 12, 2020, and another 15 were scheduled for potential admission during that week.  Ultimately, Defendants report that eleven patients transferred the week of October 12 and another seventeen transferred the week of October 19, 2020.  DSH confirmed that it is not requiring quarantines for internal transfers between DSH units, which should allow non-*Coleman* patients currently housed in *Coleman* beds to be quickly transferred out if the *Coleman* census begins to rise.  The workgroup also discussed the patients waiting for DSH transfer from CDCR institutions designated as closed.

DSH was concerned about the recent COVID-19 outbreak in SATF on October 26 that produced over 100 positive cases within a 24 hour period.  CDCR/CCHCS was considering transferring 15 identified patients from SATF to DSH on October 27.  Initial reports indicated that the identified patients were not in the SATF Facility where the vast majority of the infected patients were housed.  At the recommendation of CCHCS leadership, DSH contacted SATF's Chief Medical Executive to discuss the outbreak in more detail.  The SATF CME stated that he preferred that no patient be transferred to DSH until there is a clearer understanding of the outbreak.  Defendants consulted with the Special Master's expert regarding this approach during a small workgroup meeting.  Even though the majority of the positive patients are from one facility, the CME was in the process of testing workers with teaching or work assignments who provide services to all the different facilities in SATF.

## IV.   UPDATES ON KEY TASK FORCE TOPICS

### A.   Returning to Program Guide Requirements; Transfer Guidance.

Defendants reported at the latest Task Force meeting, on October 13, 2020, that CDCR continued to work on a plan for meeting Program Guide requirements during the pandemic.  Defendants reported that they had created a draft list of Program Guide requirements to measure.  Following the meeting, Defendants shared the draft list with Plaintiffs showing 12 Program Guide requirements.  Defendants report that their next steps

[3641583.10]

1  are to consider how to measure these items and then how to mitigate limitations on
2  Program Guide requirements occasioned by COVID-19.

3      Defendants again reported that CDCR has continued working on revisions to the
4  April 10 and 17, 2020 COVID-19 transfer and treatment policies for patients needing
5  higher levels of care.  Defendants have provided a draft to the small workgroup and
6  received significant input from the Special Master's experts, which has been incorporated
7  into the most recent complete draft.  It has not yet been provided to Plaintiffs, but will be
8  presented in a Task Force for their review and comment.

9      **B.      Treatment and Programming in the PIPs**

10      At the October 13, 2020 Task Force meeting, Plaintiffs requested an update on the
11  status of treatment and programming in the PIPs and any efforts to improve care.
12  Defendants were not aware of the details of this agenda item until the task force meeting
13  and thus did not have anything to report, but committed to provide an answer at a later
14  time.  A member of the Special Master's office reported that they are continuing to
15  participate in a workgroup of individuals from Division of Adult Institutions (DAI) and
16  California Correctional Healthcare Services (CCHCS) with the goal of increasing out of
17  cell activities and structured clinical activities in the PIPs.

18      At the October 13, 2020, meeting, Plaintiffs also noted they had recently sent
19  several emails on October 8, 2020, regarding concerns about CHCF-PIP relating to
20  custody, staffing, the use of Maximum Custody, and particularly inadequate suicide watch
21  and increased prevalence of custody staff performing suicide watch, and the recent
22  completed suicide of a class member in an Acute unit at CHCF-PIP.  Defendants requested
23  additional information about these reports and committed to follow up with a specific
24  response.  Plaintiffs provided additional information via email later that day.

25      **C.      Psychiatric Inpatient Admissions Unit Policy.**

26      On October 6, 2020 Defendants reported via email that CDCR had begun
27  implementation of the PIP admissions unit policy and will flex beds according to the draft
28  plan provided to the Task Force.  In response to a question from Plaintiffs regarding least

[3641583.10]

restrictive housing (LRH) moves for patients at CHCF, which does not have lower-custody units, Defendants stated CDCR would endorse patients to a PIP that has a bed that meets their needs.

At the October 6, 2020 Task Force meeting, Defendants also noted that they were continuing work on revising the current Movement Matrix and refining the analysis of which prisons or units are appropriate for movement.  Defendants committed to sending a draft of the updated Movement Matrix to the Task Force for comment.

### D.    Decreased Inpatient Referrals During Pandemic

At the October 13, 2020 Task Force, Plaintiffs pointed out that that Acute referrals remain down by about one third from last year's pre-pandemic levels, and that ICF, and MHCB referrals remain down by about half even as instances of self-injurious behavior remain high.  Defendants reported that they had conveyed in a September 30, 2020 email to the field, and in recent meetings with leadership in the field, the importance of continuing to refer patients to higher levels of care as needed.

### E.    EOP ASU Hub and PSU Certification Process

On September 28, 2020, Defendants circulated a letter to the Task Force regarding the certification process for EOP ASU Hubs and PSUs.  At the October 6, 2020 Task Force meeting, Defendants explained their proposal to base certifications on their CQIT Guidebook and to revise the Guidebook and bring those revisions first to the small workgroup and then the Task Force for feedback.  The parties reached no agreement but will meet and confer again.

### F.    Medication Assisted Treatment (MAT) Contacts

On October 8, 2020, Defendants reported that they had discovered through an internal review that certain MAT contacts for substance use disorder were improperly added to Defendants' "Timely Psychiatry Contacts" and "Timely PC Contacts" data indicators for 2017 to 2019, potentially resetting the timelines for routine contacts with psychiatrists or primary clinicians.  Defendants' email noted that this practice was discontinued in March 2020.  Defendants noted that they decided not to remove the

[3641583.10]

1   contacts in question, which would be a complicated and resource-intensive effort given the

2   relative scope of the issue reported by Defendants.  The number of improperly-added MAT

3   contacts was 4,442 between 2017 and 2019, but over the last 12 months alone (between

4   October 1, 2019 and September 30, 2020), there were 1,752,631 primary clinician contacts

5   and 1,254,116 psychiatry contacts.

6       At the October 13, 2020 Task Force meeting, Defendants clarified that this data

7   issue was related to the rollout of the MAT program first at three institutions and later at

8   any institutions for which MAT had been rolled out by March 2020.  Defendants also

9   clarified that the number of primary clinician contacts and psychiatry contacts in the email

10  were actually measurements, not contacts, and agreed to send the clarification in writing.

11  This clarification was sent out on October 29, 2020.  Plaintiffs agreed that it is not a good

12  use of time to correct the data in these indicators, but noted that there may be a need to

13  make a clarification in the Court's record.  Plaintiffs committed to review and report back

14  to Defendants regarding their position on any need to clarify the record.

15      **G.      Increased Housing of Class Members in Segregation Settings**

16      Defendants sent an email on October 13, 2020 in advance of the Task Force

17  meeting responding to Plaintiffs' September 15, 2020 letter, and questions raised at the

18  September 29, 2020 Task Force meeting regarding the increasing numbers of class

19  members being placed in segregation housing and the increasing lengths of stay for class

20  members in those settings.  Defendants' email attributed these increases to COVID-19

21  restrictions on movement issued by DAI and the April 2020 mental health temporary

22  transfer guidance that is currently under revision by Defendants.  Defendants' email stated

23  that while those revisions are in progress, CDCR is prioritizing movement of individuals

24  eligible for placement on a mainline yard and noted that as of October 9, 2020, there are

25  367 MHSDS patients in segregation who are endorsed to a mainline yard, not including

26  patients who are out to court, on a medical hold, or endorsed to a yard in their current

27  institution.  Defendants' email also reported that as of October 13, 2020 there are 353 class

28  members housed in non-MHSDS segregation units, including patients who have not

[3641583.10]

1  exceeded the required transfer timeline, and those who are on medical holds or are out to

2  court.[3]   The parties anticipate they will continue to discuss progress on safely transferring

3  class members out of segregation.

4      **H.    CDCR Mission Changes**

5      At the October 6, 2020 Task Force meeting, the parties discussed CDCR's October

6  1, 2020 monthly mission changes letter.  The parties discussed the following changes:

7  CDCR converted California State Prison Corcoran Unit 3B1 from Level IV to Level II

8  EOP, and deactivated the unit 3A4 Level III EOP housing unit.  CDCR deactivated its

9  Reception Centers at San Quentin State Prison, California Institution for Men, and Deuel

10  Vocational Institution, including deactivating the *Coleman* STRH units within those

11  Reception Centers.  CDCR added Corcoran to the list of prisons where CCCMS class

12  members may be housed at a relatively unrestrictive Minimum Support Facility (MSF).

13  The other prisons are California Men's Colony, Mule Creek State Prison, North Kern State

14  Prison, and Wasco State Prison.  CDCR reported that six crisis beds at Pleasant Valley

15  State Prison remain closed, and 15 beds at California Medical Facility PIP remain closed—

16  13 due to staffing and two for improved COVID-19 physical distancing.  CDCR reported

17  on telepsychiatry office usage statewide.

18      At the October 13, 2020 Task Force meeting, the Defendants noted that they are

19  still in the process of moving some Level IV EOP patients out of Corcoran as a result of

20  the mission changes there.  Some of these patients were endorsed to closed institutions and

21  will be re-endorsed to open institutions.  Also at that meeting, Plaintiffs asked whether the

22  decommissioning of the Reception Center at San Quentin State Prison had affected

23  housing of EOP patients in Administrative Segregation there.  Defendants replied that it

24

25  _____

   [3] This information is based on the housing designation in SOMS; however, the STRH beds
26  at the Reception Centers are not designated as STRH beds.  Therefore, it is possible that
   some of the patients noted as MHSDS patients in non-MHSDS segregation may in fact be
27  in the appropriate bed.  However, those patients have been included in this number for
   complete transparency.

28

[3641583.10]

1   had not and that EOP patients placed in Administrative Segregation should still transfer to

2   an EOP Hub within 30 days.

3        **I.**         **ADA Workers in EOP Dorms (*Armstrong*/*Clark*/*Coleman*).**

4        Some persons with disabilities receive accommodations in the form of assigned

5   "helpers"—other incarcerated persons who have been trained to assist persons with

6   disabilities.  Some of the people receiving this accommodation are also EOP-level

7   *Coleman* class members.  In order to prevent the helpers from becoming COVID-19

8   transmission vectors, CDCR now requires the helpers to be housed together with the

9   persons receiving the help.  Defendants raised the possibility of housing non-EOP helpers

10   in the EOP program at VSP.  The parties conferred about this issue, and Defendants

11   reported on October 7, 2020 that they had resolved the issue and VSP had assigned EOP

12   patients in units A1 and A2 to work as ADA helpers.

13   / / /

14   / / /

15   / / /

16   / / /

17   / / /

18   / / /

19   / / /

20   / / /

21   / / /

22   / / /

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

[3641583.10]

1

**J.      EOP Participation in ISUDT Draft Policy.**

2      At the October 13, 2020 Task Force Meeting, Plaintiffs committed to follow up

3  with a written clarification of their position on the Integrated Substance Use Disorder

4  Treatment (ISUDT) policy.  Plaintiffs sent this clarification via email on October 20, 2020.

5  DATED:  October 30, 2020                    Respectfully submitted,

6                                                              ROSEN BIEN GALVAN & GRUNFELD LLP

7

8                                                              By:  */s/ Marc J. Shinn-Krantz*
9                                                                     Marc J. Shinn-Krantz

10                                                            Attorneys for Plaintiffs

11  DATED:  October 30, 2020                    XAVIER BECERRA
12                                                              Attorney General
                                                              Adriano Hrvatin
13                                                            Supervising Deputy Attorney General

14

15                                                            By:  */s/ Lucas L. Hennes*
16                                                                   Lucas L. Hennes
                                                                   Deputy Attorney General
17
                                                              Attorneys for Defendants
18

19

20

21

22

23

24

25

26

27

28

[3641583.10]

SEVENTH JOINT UPDATE ON THE WORK OF THE COVID-19 TASK FORCE