1  XAVIER BECERRA, State Bar No. 118517
   Attorney General of California
2  ADRIANO HRVATIN, State Bar No. 220909
   Supervising Deputy Attorney General
3  KYLE A. LEWIS, State Bar No. 201041
   ELISE OWENS THORN, State Bar No. 145931
4  TYLER V. HEATH, State Bar No. 271478
   LUCAS HENNES, State Bar No. 278361
5  Deputy Attorneys General
    1300 I Street, Suite 125
6    P.O. Box 944255
    Sacramento, CA 94244-2550
7    Telephone: (916) 210-7318
    Fax: (916) 324-5205
8    E-mail: Elise.Thorn@doj.ca.gov
   *Attorneys for Defendants*

   ROMAN M. SILBERFELD, State Bar No. 62783
   GLENN A. DANAS, State Bar No. 270317
   ROBINS KAPLAN LLP
    2049 Century Park East, Suite 3400
    Los Angeles, CA 90067-3208
    Telephone: (310) 552-0130
    Fax: (310) 229-5800
    E-mail: RSilberfeld@RobinsKaplan.com
   *Special Counsel for Defendants*

9

10 HANSON BRIDGETT LLP
   PAUL B. MELLO, SBN 179755
11 LISA M. POOLEY, SBN 168737
   SAMANTHA D. WOLFF, SBN 240280
12 LAUREL E. O'CONNOR, SBN 305478
   1676 N. California Blvd., Suite 620
13 Walnut Creek, California 94596
   Telephone:   925-746-8460
14 Facsimile:   925-746-8490

15 *Attorneys for Defendants*

16

17             **UNITED STATES DISTRICT COURT**

18           **EASTERN DISTRICT OF CALIFORNIA**

19                **SACRAMENTO DIVISION**

20

21 RALPH COLEMAN, et al.,

22          Plaintiffs,

23      v.

24 GAVIN NEWSOM, et al.

25          Defendants.

Case No. 2:90-CV-00520- KJM-DB

**DECLARATION OF STEVEN CARTWRIGHT, Psy.D. IN SUPPORT OF DEFENDANTS' RESPONSE TO SEPTEMBER 3, 2020 ORDER**

Judge:   Hon. Kimberly J. Mueller

26

27

28

DECL. CARTWRIGHT SUPP. DEFS.' RESPONSE TO SEPT. 3 ORDER

I, Steven Cartwright, Psy.D., declare as follows:

1.      I am currently employed as the Assistant Deputy Director of the California Department of Corrections and Rehabilitation's Statewide Mental Health Services Delivery System (MHSDS).  I have held this position since July 17, 2020.  I have been employed by the California Department of Corrections and Rehabilitation (CDCR) since January 1, 2016.  I offer this declaration in support of Defendants' response to the Court's September 3, 2020 order.  I have personal knowledge of the statements in this declaration and could testify to them if called to do so.

2.      As Assistant Deputy Director, I manage and oversee all CDCR's mental health continuous quality improvement efforts.  CDCR's Continuous Quality Improvement Tool (CQIT) was initially and primarily designed as a quality improvement tool, used to identify and correct problems with compliance and improve the MHSDS and make it one of the best correctional mental health care systems in the world.  CDCR strives to create and maintain a system grounded in best practices, far exceeding constitutional minima, and CQIT was developed with that goal in mind.  CQIT measures CDCR's compliance with its policies, which were designed to inspire best practices and for administrative coordination, among other reasons, and not simply to reflect what is minimally required in a constitutionally adequate system.

3.      CQIT measures indicators that are not Program Guide requirements, including, for example, the following:

- Patient satisfaction with access to care

- Patient perception of individual treatment or group treatment

- Percent of Mental Health Crisis Bed and alternative housing cells that were observed to be clean

- Percent of Rules Violation Reports mitigated

4.      CQIT measures the percent of accepted referrals to Department of State Hospitals (DSH) inpatient programs and the percent of Mental Health Crisis Bed stays that did not exceed 10 days.  CQIT also measures the timely completion of mental health transfers to Mental Health Crisis Beds and the timely completion of primary clinician and psychiatry contacts.

-1-

5.      Defendants have not yet engaged in the process of working with the Special Master to identify those material Program Guide and Compendium provisions (and corresponding CQIT indicators) that are relevant to assessing constitutional compliance.  Defendants welcome the opportunity to take this step.

6.      It is my understanding that the Administrative Segregation Unit EOP Treatment Improvement Plan has been incorporated into the EOP Hub certification process.  The EOP Hub certification process involves a thorough and holistic approach to analyzing compliance with existing policy and procedure.  This process combines quantitative data collected through automated systems (via CQIT) with onsite observations to assess the quality of care provided.  These Administrative Segregation EOP Hubs are evaluated with respect to their provision of adequate numbers of EOP treatment hours, timely primary clinician and psychiatry contacts, timely Interdisciplinary Treatment Teams (IDTT), timely discharge follow-ups, adequate mental health screening, appropriate IDTT staffing, and timely mental health referrals.

7.      This EOP Hub certification process, developed in 2014 and 2015 under the Court's August 11, 2014 order, is currently under review by the Special Master, including the compliance levels required for indicators.  Some core items within that certification must indeed meet a 90 percent threshold for compliance, including timely mental health referrals, EOP treatment hours offered, 10 hours of out-of-cell time offered, and ICC reviews with a mental health clinician present.  However, other indicators are not required to meet a 90 percent compliance rate because such a requirement would not logically apply.  For instance, a 90 percent threshold is not required for patient interviews, because the information that is obtained is not verified.  Instead, the interviews are only designed to help determine if the program is performing well from the patient's perspective.  Similarly, a 90 percent threshold is not required for whether the Interdisciplinary Treatment Team space is well ventilated and temperature controlled, whether there was a conference table available, or whether the Interdisciplinary Treatment Team or group started on time.  For these items, the inquiry must be a simple "yes" or "no" standard, and not a numerical evaluation.  Thus, those items are considered when completing a holistic review of the hub and are not independently measured at a 90 percent compliance rate.

1    I declare under penalty of perjury under the laws of the United States of America that the

2    foregoing is true and correct.  Executed in Elk Grove, California on November 2, 2020.

3

4    _/s/ Steven Cartwright_____
     STEVEN CARTWRIGHT, Psy.D.
5    *(original signature retained by attorney)*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

16996707.3    DECL. CARTWRIGHT SUPP. DEFS.' RESPONSE TO SEPT. 3 ORDER