UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al., | No. 2:90-cv-0520 KJM DB P |
| Plaintiffs, | |
| v. | ORDER |
| EDMUND G. BROWN, JR., et al., | |
| Defendants. | |

        This court filed an order on October 10, 2017, directing the California Department of Corrections and Rehabilitation (CDCR) to, within one year, "take all steps necessary to come into complete compliance with the staffing ratios in their 2009 Staffing Plan and the maximum ten percent vacancy rate required by the court's June 13, 2002 order." October 10, 2017 Order, ECF No. 5711, at 30. Defendants did not timely comply with the October 10, 2017 order and they remain out of compliance. *See* Defs.' Monthly Psychiatry Vacancy Report for Sept. 2020, ECF No. 6929, at 5. The court has delayed enforcement proceedings for two separate reasons, as explained further below. Initially, it did so in light of the whistleblower report made by CDCR Chief Psychiatrist Dr. Michael Golding in October 2018, which led the court to issue a ruling in December 2019. More recently, the court has taken time since the onset of the novel coronavirus

1

(COVID-19) pandemic in the first quarter of this year to consider the pandemic's impacts on the *Coleman* class and Program Guide compliance generally.

COVID-19 persists and has not been suppressed, with ongoing effects on all aspects of delivery of mental health care to class members. But the legitimate need for effective management of the pandemic in the prison system co-exists with defendants' Eighth Amendment obligation to employ a sufficient number of competent mental health staff to identify and provide individualized treatment to members of the plaintiff class. *See Coleman v. Wilson*, 912 F. Supp. 1282, 1305 (E.D.Cal. 1993). The COVID-19 pandemic did not excuse defendant's initial noncompliance, nor does it fully excuse defendants' ongoing noncompliance with the October 10, 2017 order; it also does not provide a basis for a permanent exemption from compliance. Indeed, plaintiffs have filed evidence suggesting that seriously mentally ill prison inmates are at increased risk for contracting COVID-19 and for adverse outcomes from the virus and that the change in conditions of confinement associated with management of the pandemic may exacerbate mental illness. *See* Plaintiffs' Brief Re: Evidence Supporting Serious Mental Illness As Risk Factor for COVID-19 and Need for Additional Mental Health Interventions, ECF No. 6751; Bien Decl., ECF No. 6752, and exhibits attached thereto. Most recently, in the face of the court's providing notice of its plans to refocus on enforcement of its 2017 staffing order by the end of this year, defendants have signaled their desire to begin anew with a clean slate and propose a replacement staffing plan for presumably extended discussion in a workgroup setting. *See* ECF No. 6853 at, *e.g.*, 28[1] (defendants' request, among other things, for court-ordered "time and motion study to determine appropriate staffing ratios"). Plaintiffs meanwhile appear to believe the court can proceed directly to the same kind of enforcement proceedings it had planned in October 2018. *See* ECF No. 6854 at, *e.g.*, 25-30.

/////

/////

---

[1] References to page numbers in documents filed in this action are to the page number assigned by the Court's Electronic Case Filing (ECF) system, located in the upper right hand corner of the page.

2

The court has carefully considered the parties' positions, and reviewed the record as a whole as it relates to the Staffing Plan. While the court continues to believe the time has come to refocus on enforcement if needed, the current record supports the need for a few modest revisions to the Staffing Plan, which can be made efficiently and soon without lengthy detours. This order directs the preparation of those revisions by the time of the fourth quarterly status conference for this year, so the court can turn its full attention to compliance with the October 10, 2017 order and enforcement as needed by the first quarterly status conference in 2021.

I. BACKGROUND

In the year that followed issuance of the October 10, 2017 order, the court issued numerous orders in an effort to facilitate defendants' compliance without the necessity of enforcement proceedings. *See, e.g.*, Feb. 15, 2018 Order, ECF No. 5786, *passim*; Feb. 21, 2018 Order, ECF No. 5794, at 2-4; July 3, 2018 Order, ECF No. 5850, *passim*; Sept. 20, 2018 Order, ECF No. 5928, *passim*.

A. Golding Report

On October 5, 2018, five days before the deadline for defendants to come into compliance with the October 10, 2017 order, the court received notice from both parties of a whistleblower report on staffing issues prepared by CDCR's Chief Psychiatrist, Dr. Michael Golding. ECF Nos. 5936, 5938. Given the serious nature of Dr. Golding's allegations, the court appointed a neutral expert "to assist the court in investigating allegations raised in the verified report" of Dr. Golding (Golding Report), ECF No. 5988, "to determine whether defendants have committed any fraud on the court or the Special Master or have intentionally provided false or misleading information to the court or the Special Master," Dec. 14, 2018 Order, ECF No. 6033, at 1-2. The court received notice of a second whistleblower report dated October 24, 2018, by Dr. Melanie Gonzalez, *see*, *e.g.*, Nov. 7, 2018 Order, ECF No. 5999, and the court ultimately received that report into evidence during the evidentiary hearing it held in October 2019. *See* ECF No. 6359.

/////

/////

1    The court received the Neutral Expert Report on April 22, 2019; the court shared
2  the report with the parties and counsel for Drs. Golding and Gonzalez, and filed it without
3  objection on the docket on May 3, 2019.  ECF Nos. 6146, 6147.  The court subsequently
4  identified specific issues it needed to resolve, and set and held the October 2019 evidentiary
5  hearing on those issues.  *See* June 14, 2019 Order, ECF No. 6187, at 2; Dec. 17, 2019 Order,
6  ECF No. 6427, at 1.  The court's findings and conclusions from that hearing are set out in a forty-
7  nine page order filed December 17, 2019.  ECF No. 6427.  Those findings and conclusions are
8  incorporated in full in this order. Since the court issued its order, defendants have attested to their
9  commitment to provide full and transparent access to all relevant data to the Special Master and
10  to plaintiffs, *see* Toche Decl., ECF No. 6457-1, the court has authorized the Special Master to
11  appoint a data expert, *see* April 29, 2020 Order, ECF No. 6646, and at the December 18, 2020
12  status conference the court will set a firm schedule for completion of all necessary data and
13  quality assurance remediation work.  ECF No. 6847.  As defendants move forward with the
14  staffing plan adjustments called for by this order, the court expects defendants will be fully
15  transparent with all key stakeholders, including but not limited to CDCR psychiatrists, and will
16  continue to take all steps necessary to avoid the errors that required the court's intervention to
17  correct. *See* ECF No. 6427 at, *e.g.*, 41-43 (discussing defendants' marginalization of and failure
18  to consult with psychiatrists in staffing planning).

19    B.   COVID-19

20    As noted above, in light of the onset of the COVID-19 pandemic the court also
21  deferred completion of the staffing remedy and acknowledged certain temporary variances from
22  the well-established requirements of the Program Guide.  July 28, 2020 Order, ECF No. 6791,
23  at 3.  But as defendants' management of the COVID-19 pandemic in the prison system moved
24  from the initial emergency stage to development and implementation of ongoing management
25  strategies consistent with public health requirements, the court issued a series of orders designed
26  ultimately to refocus attention on compliance with the October 10, 2017 order, among other
27  considerations.

28

On July 2, 2020, the court issued an order inviting briefing on "issues that . . . may frame the court's consideration of how best to resume Program Guide enforcement, including but not limited to enforcement of its orders regarding compliance with defendants' 2009 staffing plan, under the circumstances the state's prisons are facing with the extremely troubling advance of the COVID-19 pandemic." July 2 Order, ECF No. 6750, at 1. The parties filed responses on July 15, 2020. *See* ECF Nos. 6766-6770.

On July 30, 2020, the court issued a further order directing the parties to brief, *inter alia*, the size of the mentally ill population that can be served by defendants' current complement of mental health staff, which has remained below required levels, and whether defendants would voluntarily undertake to develop a plan to adjust the mentally ill population to match those levels. July 30, 2020 Order, ECF No. 6794, at 8. The court also directed briefing on additional remedies, if any, available to the court to enforce the October 10, 2017 order. *Id*. The parties filed responses on September 14, 2020. *See* ECF Nos. 6852-6858.

On September 21, 2020, the court issued an order setting October 1, 2020 as the start of the eighteen-month provisional period for monitoring telepsychiatry policy provisions the court previously had approved on March 27, 2020. Sept. 21, 2020 Order, ECF No. 6874, at 2, 6.

On September 25, 2020, following defense counsel's representation at a court hearing on September 24, 2020, that "defendants could use the number of mental health positions actually filled . . . to determine the size of the mental health population that could be served under the ratios required by the 2009 Staffing Plan," the court directed defendants to file a report "prepared under the Special Master's supervision, that describes with specificity and including charts as necessary the number of class members at each level of the Mental Health Care Delivery System (MHSDS) that can be served by the current filled mental health staffing positions using the positions and the ratios set out in the 2009 Staffing Plan, including telepsychiatrists as authorized under the provisionally approved telepsychiatry policy, as well as regular contractors and allowing for a ten percent vacancy rate." Sept. 25, 2020 Order, ECF No. 6886, at 1-2. Defendants filed a response to this order on October 2, 2020. *See* ECF No. 6896.

/////

## II. DISCUSSION

The court has reviewed the briefing and evidence filed by the parties in response to the July 2, 2020, July 30, 2020, and September 25, 2020 orders and also has consulted with the Special Master. Based on this review the court reaches the following conclusions.

First, the record supports a finding that some discrete adjustments to the 2009 Staffing Plan may be appropriate before the court moves finally to full enforcement of the October 10, 2017 order. The evidence tendered by defendants does not support the broad assertion in their brief that the 2009 Staffing Plan is "outdated and substantially flawed." ECF No. 6853 at 32. At the same time, defendants' filing points to certain revisions that may well warrant consideration, by attaching a letter dated September 8, 2020 from Melissa Bentz, Esq., to Special Master Lopes and plaintiffs' counsel. Bentz Letter, Attach. A to Bick Decl., ECF No. 6855, at 9-16 (hereafter Bentz Letter). The Bentz Letter identifies several concrete proposals for modifications to the Staffing Plan including (1) review of the assumptions underlying frequency of psychiatric contacts for Correctional Clinical Case Management System (CCCMS) and EOP patients that inform the psychiatrist staffing ratios for these distinct levels of care and potential adjustment of those ratios based on the review; (2) review of psychiatrist ratios for the CCCMS caseload and relevant data in light of the fact that the existing ratios are based on psychiatrist contact with every CCCMS patient a minimum of once every ninety days, exceeding the Program Guide requirement that applies this minimum review period only to CCCMS patients on psychiatric medication; (3) redirecting psychiatry positions designated for crisis intervention on weekend and holidays to on-call telepsychiatry positions; (4) including psychiatric nurse practitioners (PNPs) in the psychiatrist fill rate; and (5) calculating staffing ratios based on actual numbers of patients, rather than numbers of inpatient beds. *See* Bentz Letter at 13-15.

The Special Master advises the court that the proposals in the Bentz Letter are substantially similar to proposals the parties discussed in 2018; as they are not new ideas, to the extent they represent positions the parties and the Special Master agree on they should be readily susceptible to finalization in the near term; to the extent the parties do not agree they should be able to articulate their positions without prolonged study and deliberation. Accordingly,

6

defendants will be directed to propose modifications to the Staffing Plan in accordance with the foregoing provisions of the Bentz Letter, to work with the Special Master and the COVID-19 Task Force (hereafter Task Force) to achieve consensus on the proposed modifications to the extent possible, and to file a proposed revised Staffing Plan on or before December 11, 2020. Plaintiffs may then file their response to the proposed revisions, if any, on or before December 15, 2020. The court will direct the Special Master to report orally to the court on the status of the defendants' provision of proposed modifications and Task Force discussions. If by December 3, 2020, it appears to the court that defendants are not on track to file a proposed revised staffing plan by December 11, 2020, the court reserves the right at that point to direct the Special Master to file a proposed revised plan for the court's consideration subject to the parties' formal comments and objections, if any.

Second, and relatedly, as the court has recognized "there is basic agreement among the parties that PNPs have a role to play, albeit one requiring careful clarification, in the provision of mental health care to class members. . . ." ECF No. 6886 at 2. In early 2019, defendants presented the Special Master with a draft policy for the use of PNPs in providing mental health care to class members. The Special Master has informed the court that defendants have recently presented him with an updated draft PNP policy for discussion in the Task Force. Such a policy is necessary for the court to properly consider the Bentz Letter's fourth proposal. Good cause appearing, defendants shall file a proposed final PNP policy on or before December 11, 2020, together with the proposed revised staffing plan required above. As with the proposed revised staffing plan, the court will direct the Special Master to report orally to the court on the status of Task Force consideration of and defendants' efforts to finalize the PNP policy. If by December 3, 2020, it appears to the court that defendants are not on track to file a proposed final PNP policy by December 11, 2020, the court reserves the right at that point to direct the Special Master to file a proposed policy for the court's consideration subject to the parties' formal comments and objections, if any.

Finally, by December 15, 2020, defendants also shall provide the court with updated information showing how the proposed revised staffing plan will allow defendants to

7

come into compliance with the court's October 10, 2017 order in light of the size of the mentally ill prison population as part of an overall effort to achieve the necessary staffing remedy in this case.

In accordance with the above, IT IS HEREBY ORDERED:

1. Defendants shall make such minimal modifications to the Staffing Plan as are required to include a role for psychiatric nurse practitioners (PNPs) and to reflect the proposals made in the September 8, 2020 letter authored by Melissa Bentz, Esq.  Defendants also shall consult with the Special Master and the Task Force as appropriate to ensure that their proposed modifications are the product of consensus of all stakeholders to the maximum extent possible, and they shall file their proposed revised Staffing Plan by December 11, 2020.

2. Defendants shall file a proposed policy for the use of PNPs in the delivery of mental health care to class members, finalized in consultation with the Special Master and the Task Force as appropriate.  They shall file this proposed policy on or before December 11, 2020.

3. The Special Master shall report to court informally and orally on defendants' progress to finalize the proposed revised Staffing Plan and proposed PNP policy as required by this order so the court may, if necessary, by December 3, 2020 direct the Special Master to file by December 11, 2020 a proposed revised Staffing Plan and/or proposed PNP policy for the court's consideration subject to the parties' formal comments and objections.

4. Any response to the proposed revised Staffing Plan and the proposed policy for use of PNPs presented to the court shall be filed on or before December 15, 2020.

5. The proposed revised Staffing Plan and the proposed PNP policy required by this order will be included on the agenda for discussion at the fourth quarterly status conference set for December 18, 2020.

6. California Department of Corrections and Rehabilitation Secretary Kathleen Allison shall appear in person at the fourth quarterly status conference set for December 18, 2020, to discuss the proposed revised Staffing Plan with the court.

DATED: November 3, 2020.

_____
CHIEF UNITED STATES DISTRICT JUDGE