DONALD SPECTER – 083925
STEVEN FAMA – 099641
MARGOT MENDELSON – 268583
PRISON LAW OFFICE
1917 Fifth Street
Berkeley, California 94710-1916
Telephone: (510) 280-2621

CLAUDIA CENTER – 158255
DISABILITY RIGHTS EDUCATION
AND DEFENSE FUND, INC.
Ed Roberts Campus
3075 Adeline Street, Suite 210
Berkeley, California 94703-2578
Telephone: (510) 644-2555

MICHAEL W. BIEN – 096891
JEFFREY L. BORNSTEIN – 099358
ERNEST GALVAN – 196065
LISA ELLS – 243657
THOMAS NOLAN – 169692
JENNY S. YELIN – 273601
MICHAEL S. NUNEZ – 280535
JESSICA WINTER – 294237
MARC J. SHINN-KRANTZ – 312968
CARA E. TRAPANI – 313411
ALEXANDER GOURSE – 321631
AMY XU – 330707
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
Telephone: (415) 433-6830

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>       Plaintiffs,<br><br>   v.<br><br>GAVIN NEWSOM, et al.,<br><br>       Defendants. | Case No. 2:90-CV-00520-KJM-DB<br><br>**PLAINTIFFS' RESPONSE TO OBJECTIONS TO PLAINTIFFS' EXHIBIT LIST**<br><br>Judge: Hon. Kimberly J. Mueller |

[3644515.5]

## INTRODUCTION

During the presentation of testimony for the evidentiary hearing on October 23, 2020, the Court admitted nine of Plaintiffs' exhibits, and seven of Defendants' exhibits. All but one exhibit were admitted without objection.[1] Defendants have now filed objections to Plaintiffs' remaining exhibits, despite the fact that they are mostly documents of the same type that Defendants did not object to during the hearing. The bulk of the exhibits in this matter consist of Defendants' policies, procedures, and guidelines for running the prison mental health care system, and responding to the pandemic, as well as reports created by Defendants with data regarding the functioning of the prison mental health care system, and tracking the movement of incarcerated persons. It would have been a colossal waste of time to present each of these documents one-by-one during a six-hour evidentiary hearing. All of the documents whose admission Defendants now dispute are relevant to one or more of three questions that the Court posed to set the bounds of the hearing. The exhibits should be admitted.

**I.    Nothing Requires Plaintiffs to Have Introduced Evidence Through Witnesses at Trial and Defendants Have Had More than a Full and Fair Opportunity to Address Their Purported Concerns.**

No rule requires Plaintiffs to have introduced each document at trial through a sponsoring witness. Recent evidentiary hearings in this matter have included an efficient process to receive documents into evidence without going through each document one by one with a witness. The same happened just last year, for the Golding proceedings, *see* Minutes, ECF No. 6350 at 3 (Oct. 16, 2019) (Court allowing proffer of evidentiary documents from counsel for Dr. Michael Golding without a sponsoring witness); Minute Order, ECF No. 6351 (Oct. 17, 2019) (same); Ex. List, ECF No. 6364-1 (Oct. 22, 2019) (final exhibit list for Golding proceedings showing dozens of documents admitted at close of evidence), and in 2017, for the last hearing regarding class member access to inpatient

---

[1] The transcript pages showing admission of the exhibits are attached as Exhibit QQ to the Declaration of Amy Xu, filed herewith.

psychiatric hospitalization, including at DSH hospitals, *see* Defs' Add'l Exs. & Information for Jan. 23, 2017 Status Conference, ECF No. 5558 (Jan. 27, 2017) (Defendants' submission of additional exhibits following evidentiary hearing regarding access to inpatient care). Before this hearing, the parties sought to avoid time-wasting document management by stipulating to the authenticity of documents produced by Defendants. *See* Stip. re Authenticity of Docs. Produced in Litig. in Advance of Ev'ry Hrg. on Oct. 23, 2020, ECF No. 6919 (Oct. 22, 2020).

Defendants say they did not have an opportunity to address the foundation, relevance, and admissibility of Plaintiffs' exhibits offered at the close of evidence. This argument is groundless. Almost all of the exhibits are Defendants' own documents. Many of them are reports that Defendants generated particularly to address the continuation of mental health care during the pandemic—including exhibits P-1 to P-6, P-13 to 20, P-108, and all their sub-exhibits—precisely the issue the hearing was convened to address. There can be no prejudice to Defendants where they are amply familiar with the documents at issue.

Defendants falsely state that Plaintiffs produced 16 new exhibits to them on the day of the trial. Defs' Obj'ns to Plfs' Requests to Have Exs. Admitted After Close of Witness Test'y at Oct. 23, 2020 Ev'ry Hrg., ECF No. 6932 at 2 (Oct. 30, 2020) ("Defendants' Objections"). Plaintiffs identified only three—not 16—new exhibits on the day of the trial, and two of those, P-103 and P-107, came into evidence without objection. Declaration of Amy Xu in Supp. of Plfs' Resp. to Obj'ns re Plfs' Exs. ("Xu Decl."), ¶ 48 & Ex. QQ at RT 228. Other than the three new exhibits, the exhibit changes on October 23 were updates to previously identified exhibits. Exhibits P-20-6 and P-108 were updates of reports that Defendants provided to Plaintiffs on the evening of Thursday, October 22. *Id.*, ¶¶ 40, 51, 52 & Exs. MM, WW. P-20-6 was the newest installment of the System Wide Weekly Pending Placement Report, while P-108 was the newest installment of the Net Bed Capacity Report. The previous iterations of these reports were on Plaintiffs' October 9 exhibit list, giving Defendants plenty of time to review them. *See* Jt. List of

Witnesses & Exs. for Ev'ry Hrg. Concerning Class Member Access to DSH Programs, ECF No. 6900, Attachment A (Oct. 9, 2020).

Other exhibits that Defendants' challenge as "new" were merely re-uploads of previously identified exhibits. Plaintiffs' re-uploaded P-71-1 to P-71-5, the institution movement lists, to add cover transmission emails, making clear there were no foundational issues about the source of the documents. Xu Decl., ¶ 53 & Ex. TT. Plaintiffs also corrected a missed redaction to P-95, in response to Defendants' pointing out the omission during live testimony on October 23. *Id.*, ¶ 54 & Ex. WW.

Similarly, on October 22, Plaintiffs supplemented their list in good faith—as the parties agreed to do—to add 12 documents. Six of those documents, P-1-22, P-2-12, P-3-22, P-4-22, P-5-24, and P-6-25, were the newest installments of reports already on Plaintiffs' October 9 exhibit list that Defendants have been providing weekly for COVID task force meetings; Defendants provided these installments to Plaintiffs on October 20, 2020. *Id.*, ¶ 27 & Ex. Z. One of the documents, P-71-5, was the newest of the CDCR inter-institution transfer lists Plaintiffs had already identified as P-71-1 to P-71-4.

Exhibits P-105 and P-106 were a specific subset of mental health records reviewed by Dr. Pablo Stewart, as Plaintiffs promised they would provide to Defendants, with regard to two individuals awaiting treatment at DSH. Defendants had notice of the records that Dr. Stewart reviewed, and even had time to put them before the statewide mental health director, Dr. Mehta. *Id.*, Ex. QQ at RT 302.

The three new documents were P-103, P-104 and P-107. P-103 and P-107 were guidelines from the California Department of Public Health, and were admitted during the trial without objection. *Id.* at RT 228. Exhibit P-104 is a guideline developed by the National Council on Behavioral Health and included as guidance on the website of the California Department of Public Health. *Id.* ¶ 46. Defendants were not prejudiced by supplementation of these exhibits.

In addition, the Court has admitted or Defendants conceded admissibility of specific documents they object to now. *See* Defs' Final Ex. List, ECF No. 6931 (Oct. 30, 2020)

(Plaintiffs' Exhibit 59-4; April 15, 2020 COVID-19 Temporary Guidelines for Transfers to DSH); Minutes, ECF No. 6923 at 5 (Oct. 23, 2020) (Plaintiffs' Exhibit 97; Personal Protective Equipment Statewide Inventory + Usage Report, Mar. 31, 2020 to Oct. 15, 2020); Xu Decl., ¶ 49 & Ex. RR at 1 (Plaintiffs' Exhibit P-74, to which Defendants stipulated admissibility, but then objected; 2017 CDCR/DSH MOU – Intermediate + Acute Inpatient Programs); *id.* (Plaintiffs' Exhibit P-75, to which Defendants stipulated admissibility, but then objected; CDCR Policy 12.11.2101(A) re Referral and Admission Procedures & Addendum).  The Court should not permit Defendants to stall further by withholding any well-grounded, specific objections based on actual evidentiary rules.

## II.     Plaintiffs' Exhibits Are Relevant.

Plaintiffs' exhibits are relevant, as explained in more detail in Exhibit 1 to the Declaration of Ernest Galvan, filed herewith.  The exhibits fall into one of several categories, each addressed below.

### A.     Defendants' Policies, Procedures, and Guidelines for Managing the Pandemic Are Relevant to the Balancing of Covid-19 Risks Against the Risks of Blocking Necessary Inpatient Psychiatric Hospitalization.

Defendants' policies and procedures for managing the risk of transmission and infection of COVID-19 are relevant to the balancing of the risk of infection against class members' needs for mental health care, question three the Court identified for the hearing. *See* Order, ECF. No. 6660 at 2 (May 7, 2020).  They indicate the extent to which Defendants have the ability to manage and mitigate COVID-19 risk, notwithstanding class member movements.  The same is true of the documents showing the status of CDCR's PPE supplies, DSH's emergency pandemic management plans, their isolation-space planning documents, and public health recommendations from state agencies, including recommendations it adopted from other organizations.  Also within this group are the documents showing that DSH sought and received permission to change its programming to keep patients safe during the pandemic.  DSH's licensing program flex documents are relevant to DSH's ability to suspend state law requirements during the pandemic to protect patients while still ensuring class member access to DSH.  And the class member records

for two class members awaiting transfer to DSH care provide specific examples of the risks to class members of denying necessary inpatient psychiatric hospitalization.

Defendants offered into evidence many similar documents, including D-9, a mental health Covid-19 screening policy, D-12 and D-22, two versions of the pandemic CDCR/DSH transfer policies and guidelines, and D-43, a population tracking spreadsheet. *See* Defs' Final Ex. List, ECF No. 6931 (Oct. 30, 2020). With all of these CDCR and DSH policies coming into evidence on Defendants' motion, fairness requires that the Court admit the full range of similar CDCR and DSH policies to see the complete context. The history of this litigation has involved the development and refinement of many guidelines, policies, and procedures. When one of those documents comes into evidence, the related documents and prior versions "in fairness ought to be considered at the same time." Fed. R. Evid. 106.

This applies to exhibits P-21 to P-25, P-29 to P-36, P-38 to P-46, P-49, P-51 to P-53, P-57, P-59 to P-61, P-89 to P-91, P-94, P-97, and P-104 to P-106.

**B.   Defendants' Reports Tracking Transfers and Bed Capacity Are Relevant to Show that Defendants Are Capable of Managing Class Member Movement Safely.**

The reports describing the number of all transfers of incarcerated people between CDCR institutions during the pandemic indicate Defendants' ability to transfer class members safely and their choices for prioritizing the transfer of certain categories of incarcerated people, rather than others. These issues are relevant to the Court's question three, the rationale for deviation from Program Guide requirements. The same is true of DSH's reports regarding admission information for OMHDs. Defendants' reports on census, referral, and admission numbers between CDCR and DSH are facially relevant as describing the amount of available space in DSH institutions, DSH's capacity to treat class members, and the extent to which class members are actually being referred and admitted to DSH. Defendants' ad hoc reports regarding transfer, admission, and waitlist numbers, along with the closure and opening of CDCR and DSH institutions, are relevant to Defendants' transfer of class members and capacity to do so safely.

This applies to exhibits P-1 through P-6, P-13, P-14, P-20, P-71, P-72, P-78 to P-80, P-82 to P-87, P-93, and P-108.

### C. Defendants' Pre-Pandemic Policies and Procedures Are Relevant Because They Establish the Requirements for Class Member Transfers to Inpatient Care, from Which Defendants Are Deviating.

Three of Plaintiffs' exhibits are Defendants' pre-pandemic policies for the referral and admission of class members from CDCR to DSH, along with an email from Defendants' counsel regarding Defendants' interpretation of these documents. These documents are relevant to the Court's questions as they embody the requirements for transfers of class members from CDCR to DSH, Defendants' policy of ensuring class member access to DSH, and Defendants' interpretation of that policy and those requirements, all pertaining to the Court's question one.

This applies to exhibits P-74 to P-76.[2]

## III. Defendants' Hearsay Objections to Their Own Documents Fail.

Defendants also object to exhibits P-60, P-61, P-65, P-67, P-76, P-78 to 80, and P-82 to 86 on hearsay grounds. But as Defendants acknowledge, those documents are emails and letters written by CDCR employees, representatives, and/or party officials. Accordingly, they are admissible non-hearsay party-opponent statements. *See* Fed. R. Evid. 801(D)(2)(a)-(d). The same is true of exhibits P-105 and P-106, mental health treatment records written by CDCR employees. *See id.* 801(D)(2)(d).

Defendants' only other specific objection is to one document published by the National Council for Behavioral Health, exhibit P-104. Plaintiffs do not offer P-104 for the truth of the matters asserted in that report, but rather to show the recommendations of a national organization, adopted by the California Department of Public Health, regarding best practices for managing COVID-19 risk in residential behavioral health facilities. In any event, P-104 is judicially noticeable, because the California Department of Public

---

[2] As noted earlier, Defendants stipulated to the admissibility of P-74 and P-75, but then objected to these documents in their October 30 brief.

Health posted it on its website as guidance for the management of COVID-19 in healthcare facilities. *See* Xu Decl., ¶ 46; *Committee to Protect Our Ag. Water v. Occidental Oil & Gas Corp.*, 235 F. Supp. 3d 1132, 1152-53 (Jan. 20, 2017). The Court may take notice of the fact and existence of the recommendations, without regard to their truth. *Id.* at 1152 (citations omitted).

### IV. No "Pause" Is Necessary for Defendants to Respond to this Brief.

Defendants ask the Court to pause the proceedings so they can take another shot at the exhibits after reviewing this brief. This is not necessary. First, Plaintiffs provided Defendants a specific list of exhibits on October 9, 2020. *See* Jt. list of Witnesses & Exhibits for Ev'ry Hrg. Concerning Class Member Access to DSH Programs, ECF No. 6900, Ex. A (Oct. 9, 2020). (Defendants, by contrast, merely summarized categories of exhibits they planned to use at trial. *See id.* at 8-9.) Plaintiffs supplemented that list as agreed upon in good faith, exchanging exhibits on the October 16, 2020 court-ordered deadline, and continued to supplement a limited number of exhibits on a rolling basis, as the trial date approached and as new documents came to light or became available. Xu Decl., ¶ 50 & Ex. SS. Then, immediately following trial, on Monday, October 26, Plaintiffs created and sent a chart of exhibits to Defendants, asking them either to stipulate or object to each of Plaintiffs' proposed exhibits. *Id.*, ¶ 55 & Ex. XX. Plaintiffs asked whether Defendants could stipulate or object by Tuesday, October 27, so that Plaintiffs would have time to respond before the October 30 filing deadline. *Id.* Defendants replied that they would provide a response to Plaintiffs' proposed exhibits on Thursday, October 29, but in fact they did not do so until Friday, October 30. *Id.*, ¶ 56 & Ex. YY. When Defendants did respond on October 30, they provided direct responses to just a handful of exhibits, relying on broad assertions of unfairness, coupled with requests for further delay. *See generally* Defendants' Objections. Altogether, Defendants had specific opportunities on October 9, October 16, October 26, October 27, October 29, and October 30 to object to and provide argument regarding Plaintiffs' exhibits. If Defendants genuinely believed that Plaintiffs' exhibits were inadmissible they could easily have weighed in by now. Instead,

1  Defendants state they will need a "pause" in the proceedings to formulate specific
2  objections. *Id.* at 7. The Court should not reward this tactical approach and lack of
3  diligence by granting Defendants further time to lodge objections.
4      And Defendants still have options available to them to address any genuine
5  concerns they may have regarding exhibits they believe lack adequate context or
6  explanation. Not only may they rely on and place in context any such exhibits in their 15
7  pages of closing argument briefing, but they may also do so in their five-page rebuttal
8  brief. *See* Stip. & Order, ECF No. 6934 (Nov. 2, 2020).

## CONCLUSION

The Court should reject Defendants' blanket, unsupported objections to Plaintiffs' exhibits. Similarly, the Court should not countenance Defendants' most recent efforts to delay proceedings and continue to block class members' access to low-security inpatient psychiatric hospitalization.

## CERTIFICATION

In preparing this brief, Plaintiffs' counsel reviewed the following: Stipulation & Order, ECF No. 6934 (Nov. 2, 2020); Minutes, ECF No. 6923 (Oct. 23, 2020); Order, ECF No. 6660 (May 7, 2020); Ex. List, ECF No. 6364-1 (Oct. 22, 2019); Minute Order, ECF No. 6351 (Oct. 17, 2019); Minutes, ECF No. 6350 (Oct. 16, 2019).

DATED: November 4, 2020        Respectfully submitted,

ROSEN BIEN GALVAN & GRUNFELD LLP

By: */s/ Jessica Winter*
    Jessica Winter

Attorneys for Plaintiffs

[3644515.5]

8

PLAINTIFFS' RESPONSE TO OBJECTIONS TO PLAINTIFFS' EXHIBIT LIST