| | |
|---|---|
| 1  XAVIER BECERRA, State Bar No. 118517<br>   Attorney General of California | PAUL B. MELLO, State Bar No. 179755<br>LISA M. POOLEY, State Bar No. 168737 |
| 2  MONICA N. ANDERSON, State Bar No. 182970<br>   Senior Assistant Attorney General | SAMANTHA D. WOLFF, State Bar No. 240280<br>LAUREL E. O'CONNOR, State Bar No. 305478 |
| 3  ADRIANO HRVATIN, State Bar No. 220909<br>   Supervising Deputy Attorney General | HANSON BRIDGETT LLP<br>   1676 N. California Boulevard, Suite 620 |
| 4  ELISE OWENS THORN, State Bar No. 145931<br>   TYLER V. HEATH, State Bar No. 271478 | Walnut Creek, CA 94596<br>Telephone: (925) 746-8460 |
| 5  KYLE A. LEWIS, State Bar No. 201041<br>   LUCAS HENNES, State Bar No. 278361 | Fax: (925) 746-8490<br>E-mail: PMello@hansonbridgett.com |
| 6  Deputy Attorneys General<br>   1300 I Street, Suite 125 | *Attorneys for Defendants* |
| 7    P.O. Box 944255<br>   Sacramento, CA 94244-2550 | ROMAN M. SILBERFELD, State Bar No. 62783<br>GLENN A. DANAS, State Bar No. 270317 |
| 8    Telephone: (916) 210-7318<br>   Fax: (916) 324-5205 | ROBINS KAPLAN LLP<br>   2049 Century Park East, Suite 3400 |
| 9    E-mail: Elise.Thorn@doj.ca.gov<br>*Attorneys for Defendants* | Los Angeles, CA 90067-3208<br>Telephone: (310) 552-0130 |
| 10 | Fax: (310) 229-5800<br>E-mail: RSilberfeld@RobinsKaplan.com |
| 11 | *Special Counsel for Defendants* |

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **RALPH COLEMAN, et al.,**<br><br>                              Plaintiffs,<br><br>     v.<br><br>**GAVIN NEWSOM, et al.,**<br><br>                              Defendants. | 2:90-cv-00520 KJM-DB (PC)<br><br>**DEFENDANTS' REBUTTAL CLOSING BRIEF FOLLOWING OCTOBER 23, 2020 EVIDENTIARY HEARING** |

Plaintiffs' closing argument presents a scattershot approach to what the Court intended as a "focused" hearing regarding patient transfers from the California Department of Corrections and Rehabilitation (CDCR) to inpatient care at the Department of State Hospitals (DSH). Defendants' evidence shows that they took proactive and informed action to address the COVID-19 pandemic to protect the health and safety of mental health patients and staff at both agencies, in compliance with Program Guide requirements for transfers to DSH inpatient care. Any deviations from Program Guide timeframes resulted from screening and transfer guidelines developed through the Special Master's COVID-19 Task Force, are consistent with Program Guide exceptions and the Court's April 24, 2020 order, and are appropriate under Defendants' discretion to respond to a public health emergency. Plaintiffs' contention that Defendants' quarantine and testing protocols cause unnecessary delays in transfers to inpatient care is irresponsible and poses an unconscionable risk to patient safety. The Court should rule for Defendants.

**ARGUMENT**

**I.    DEFENDANTS ARE COMPLYING WITH THE PROGRAM GUIDE AS MODIFIED BY THE COURT'S APRIL 24, 2020 ORDER.**

Plaintiffs argue that "Defendants have imposed restrictions on patient transfers to DSH that contravene the Program Guide's requirements and extend far beyond the COVID-19 screening permitted by the April 24, 2020 order." (Pls.' Brief at 2.) The facts prove otherwise. The April 24 order specifically allowed CDCR and DSH to screen patients referred to DSH for COVID-19 to limit the virus's spread. Plaintiffs do not explain—and they cannot, given the record—how Defendants' screening process "extend[s] far beyond" the April 24 order, which simply specified that "no transfers to DSH inpatient mental health care are taking place without a COVID-19 screening." (Order, ECF No. 6639 at 10.) With the Special Master and his experts' guidance and input and in Plaintiffs' clear view, Defendants created a system for screening patients for COVID-19 before transferring them to DSH. (10/23/20 Hrg. Tr. 98:1 – 99:4.) For months, Plaintiffs confirmed Defendants' compliance with the April 24 order. Plaintiffs now argue that

1

Defs.' Rebuttal Brief Following October 23 Inpatient Transfers Hearing  (2:90-cv-00520 KJM-DB (PC))

the April 24 order only permitted Defendants to screen patients for COVID-19, but not to delay their transfer based on COVID-19 safety criteria that were long included in the screening system, including during times when Plaintiffs represented that Defendants were complying with the Court's April 24 order. (Pls.' Brief at 5.) Plaintiffs seek to rewrite this history, ignoring the undisputed danger presented by the coronavirus, and suggesting that Defendants were not able to take further actions that they deemed necessary to protect their patients. Plaintiffs' interpretation renders the Court's April 24 order incomprehensible and internally contradictory. According to Plaintiffs, the Court ordered a temporary exception to the Program Guide's transfer timelines to permit necessary COVID-19 screening, but did not permit screening necessary to identify and prevent transmission of COVID-19 if it results in deviations from the transfer timelines.[1]

Plaintiffs' argument that the COVID-19 pandemic does not fall within the unusual circumstances exception to transfer timelines is similarly specious. This pandemic was unforeseen, is stubborn in its persistence, and continues to impact the entire world in unusual and unpredictable ways (e.g., countries across the world are imposing new lockdown orders). Plaintiffs argue that, even though the pandemic has resulted in approximately hundreds of thousands of civilian deaths in this country and nearly one hundred inmate and staff deaths in CDCR, it is not an unusual occurrence because CDCR and DSH have been trying to manage the virus for seven months. But the Program Guide addendum setting forth applicable exceptions does not limit an unusual occurrence to events defined by their duration. Indeed, a worldwide pandemic, like earthquakes, flooding, and unusual occurrences that have widespread impacts on patient movement and programming, is precisely the type of event that was contemplated by the addendum. As Drs. Warburton, Mehta, and Bick all testified, the pandemic is constantly evolving, necessitating similar evolutions in policy to meet the unanticipated challenges posed by a disease that is still not fully understood (even after seven months). (10/23/20 Hrg. Tr. 44-46, 117, and 162.) Indeed, at the time of this filing, there is not yet a proven vaccine.

---

[1] The COVID-19 screening and transfer guidelines are undeniably the product of the COVID-19 Task Force and its attendant small work groups. To the extent that any party is responsible for those supposed deviations—that are intended to foster patient safety, a primary concern among all—that responsibility must be shared among Defendants, Plaintiffs, the Special Master's team, and ultimately this Court.

2

Defs.' Rebuttal Brief Following October 23 Inpatient Transfers Hearing  (2:90-cv-00520 KJM-DB (PC))

## II. THERE IS NO EVIDENCE THAT ANY CLASS MEMBER WAS HARMED BECAUSE OF DSH AND CDCR'S INPATIENT TRANSFER PROTOCOL, WHICH WAS DEVELOPED IN CONSULTATION WITH THE SPECIAL MASTER AND HIS EXPERTS.

Plaintiffs argue that Defendants' decisions to protect patients from COVID-19 harmed their mental health, but failed to present supporting evidence at the October 23 trial. Rather, Plaintiffs' mental health expert testified only in general terms regarding the alleged harms suffered by a small subset of 55 patients while awaiting transfer. (*See, e.g.,* 10/23/20 Hrg. Tr. 258:5-19.) But Plaintiffs do not refute that Defendants provided mental health care to inmates awaiting transfer, or that 26 of the 55 inmates have since transferred to DSH. (*Id.* at 50:1-10.) Moreover, Plaintiffs also cite to their infectious diseases expert's testimony regarding alleged harm suffered by patients awaiting transfer. (ECF No. 6948 at 7.) But this expert is not a mental health expert or knowledgeable about Program Guide requirements. (10/23/20 Hrg. Tr. at 214:16-17; 234:1-24.) His testimony should carry no weight.

## III. DEFENDANTS OBJECT TO THE SUBMISSION OF DR. STEWART'S DECLARATION.

To fix their failure to provide admissible evidence at trial, Plaintiffs submitted with their closing argument a 32-page, 115-paragraph declaration from Dr. Pablo Stewart, purportedly based on nearly 10,000 pages of medical records that had never been identified to Defendants. (ECF No. 6948-1.) Before the trial, Defendants requested an offer of proof for Dr. Stewart's opinions and copies of the medical records he reviewed to support his opinions. (ECF No. 6922-1 at 5, 7.) Plaintiffs failed to identify and produce either Dr. Stewart's opinion or the patient medical records that were provided to him to formulate that opinion and misrepresented that fact to the Court at the hearing. (10/23/20 Hrg. Tr. at 13, 270:9 - 271:11; ECF No. 6922-1 at 5 and 7.)

Plaintiffs' after-the-fact proffer of substantial testimonial evidence fails to address Defendants' objections—i.e., the right and opportunity to properly prepare for Dr. Stewart's expert testimony and conduct a meaningful cross-examination of his opinions.[2] Plaintiffs' strategy—simply entering the rejected expert testimony through a declaration during *closing*

---

[2] This Court acknowledged that right during the hearing by sustaining Defendants' objections upon learning that Plaintiffs failed to provide the specific records underlying Dr. Stewart's opinions. (10/23/20 Hrg. Tr. at 270:9 – 272:25.) Dr. Mehta's testimony that he reviewed some of the 11 patients' records is not inconsistent with Plaintiffs' admission that they failed to provide the specific patient records given to Dr. Stewart.

3

Defs.' Rebuttal Brief Following October 23 Inpatient Transfers Hearing  (2:90-cv-00520 KJM-DB (PC))

*briefing* three weeks after the hearing, without any request or authorization to do so—disregards the Court's express ruling. The Court should reject Plaintiffs' efforts to submit new evidence through an expert after this Court sustained objections to the expert's testimony at trial.

### IV. PLAINTIFFS' PROPOSED RELIEF EXPOSES THEIR CLIENTS TO A KNOWN BUT AVOIDABLE COVID-19 RISK.

Plaintiffs want Defendants to revise their transfer policies with three additional requirements, which are outlined below. These proposed revisions risk the health and safety of not just *Coleman* class members, but also DSH's entire staff and patient population. They also fail to satisfy the need-narrowness-intrusiveness requirements of the Prison Litigation Reform Act. This Court should reject them.

First, Plaintiffs propose that transfers of *Coleman* patients shall not be delayed or held based on screening for COVID-19. This proposal *directly* contradicts the Court's April 24 order establishing an exception for such screening. (*See* ECF No. 6639 at 10.) Plaintiffs' suggestion that testing occur within Program Guide timelines ignores the realities of COVID-19 testing; patients awaiting transfer can and have tested negative for the entire quarantine period of fourteen days before testing positive on the fourteenth day after exposure. (10/23/20 Hrg. Tr. at 62:10-17.) Requiring Defendants to transfer such patients despite inconclusive or incomplete testing greatly reduces the effectiveness of the entire screening process and exposes all DSH patients to heightened risk of infection. Plaintiffs appear willing to expose their clients to a known and preventable risk of COVID-19 transmission and harm, which is particularly egregious given the current spike in COVID-19 nationwide, including in California. Indeed, at the same time plaintiffs are asking DSH to lower its safety standards in order to admit *Coleman* patients more rapidly, it is being sued by other plaintiffs alleging that the pandemic makes DSH hospitals unsafe.[3] No intermediate-level mental health need outweighs the very real risk of death posed by COVID-19 infection, particularly when Defendants have established protocols to effectively and safely transfer *Coleman* patients.

---

[3] *See* https://calmatters.org/health/coronavirus/2020/11/california-psych-hospitals-covid-inmates, last retrieved Nov. 18, 2020.

4

Defs.' Rebuttal Brief Following October 23 Inpatient Transfers Hearing  (2:90-cv-00520 KJM-DB (PC))

Second, Plaintiffs propose that Defendants be precluded from taking a patients' housing at a closed institution into account when attempting to safely transfer patients to DSH care. This proposal is dangerous and contradicts all public health guidance, including that of the federal Receiver in the *Plata* class action. Plaintiffs' contention that "[t]he concept of a "closed" institution . . . is subject solely to Defendants' discretion" is off base—an institution is closed to non-essential movement when doing so is necessary to contain the spread of COVID-19. The criteria for closing institutions is based on science and public health guidance (10/23/20 Hrg. Tr. 115:5-18), and Defendants are working to refine this process to close only parts of institutions that are actively involved in a COVID-19 outbreak. (*Id.* at 170:17-24.) As Dr. Bick testified, "closing" an institution does not prevent all movement in and out of that institution—it simply adds a higher level of review. (*Id.* at 171:7-12.) This Court should not order Defendants to take actions that will necessarily *increase* the risk of infection and death to DSH's patient population.

Third, Plaintiffs propose that COVID-19 positive patients be transferred to DSH. This proposal is irresponsible. Without any evidence that a class member's mental health was harmed by Defendants' screening and transfer protocols, Plaintiffs ask the Court to order dangerous and unnecessary transfers. Defendants have repeatedly demonstrated, including at trial, why they could not responsibly and ethically transfer COVID-19 positive patients to DSH's care based solely on Program Guide timeframes. The Court should reject Plaintiffs' cavalier approach to this insidious disease. Plaintiffs' position demonstrates a fundamental failure to grasp the dangers posed by COVID-19 to patients housed in DSH's congregate environment.

## CONCLUSION

Defendants addressed the Court's three questions concerning *Coleman* patients' access to DSH inpatient beds and demonstrated that they are continually developing guidelines to keep patients safe amidst an ongoing pandemic. Plaintiffs' proposed relief is irresponsible and will undermine the protection to patients and staff provided by these guidelines. The Court should reject Plaintiffs' requests that unreasonably interfere with Defendants' efforts to prevent the spread of COVID-19 among patients and staff.

5

Defs.' Rebuttal Brief Following October 23 Inpatient Transfers Hearing  (2:90-cv-00520 KJM-DB (PC))

| | | |
|---|---|---|
| 1 | Dated: November 18, 2020 | Respectfully Submitted, |
| 2 | | XAVIER BECERRA |
| | | Attorney General of California |
| 3 | | |
| 4 | | /s/ Elise Owens Thorn |
| 5 | | ELISE OWENS THORN |
| | | Deputy Attorney General |
| | | *Attorneys for Defendants* |

6

Defs.' Rebuttal Brief Following October 23 Inpatient Transfers Hearing  (2:90-cv-00520 KJM-DB (PC))