| | |
|---|---|
| XAVIER BECERRA, State Bar No. 118517<br>Attorney General of California<br>ADRIANO HRVATIN, State Bar No. 220909<br>Supervising Deputy Attorney General<br>KYLE A. LEWIS, State Bar No. 201041<br>ELISE OWENS THORN, State Bar No. 145931<br>TYLER V. HEATH, State Bar No. 271478<br>LUCAS HENNES, State Bar No. 278361<br>Deputy Attorneys General<br>  1300 I Street, Suite 125<br>  P.O. Box 944255<br>  Sacramento, CA 94244-2550<br>  Telephone: (916) 210-7318<br>  Fax: (916) 324-5205<br>  E-mail: Elise.Thorn@doj.ca.gov<br>*Attorneys for Defendants* | ROMAN M. SILBERFELD, State Bar No. 62783<br>GLENN A. DANAS, State Bar No. 270317<br>ROBINS KAPLAN LLP<br>  2049 Century Park East, Suite 3400<br>  Los Angeles, CA 90067-3208<br>  Telephone: (310) 552-0130<br>  Fax: (310) 229-5800<br>  E-mail: RSilberfeld@RobinsKaplan.com<br>*Special Counsel for Defendants* |

HANSON BRIDGETT LLP
PAUL B. MELLO, SBN 179755
LISA M. POOLEY, SBN 168737
SAMANTHA D. WOLFF, SBN 240280
LAUREL E. O'CONNOR, SBN 305478
1676 N. California Blvd., Suite 620
Walnut Creek, California 94596
Telephone:    925-746-8460
Facsimile:    925-746-8490

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

**SACRAMENTO DIVISION**

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>GAVIN NEWSOM, et al.<br><br>　　　　Defendants. | Case No. 2:90-CV-00520- KJM-DB<br><br>**DECLARATION OF STEVEN CARTWRIGHT, Psy.D. IN SUPPORT OF DEFENDANTS' REPLY TO PLAINTIFFS' BRIEF IN RESPONSE TO SEPTEMBER 3, 2020 ORDER**<br><br>Judge:　　Hon. Kimberly J. Mueller |

17079613.2

DECL. CARTWRIGHT SUPP. DEFS.' REPLY TO PLTFS.' RESPONSE TO SEPT. 3 ORDER

I, Steven Cartwright, Psy.D., declare as follows:

1. I am currently employed as the Assistant Deputy Director of the California Department of Corrections and Rehabilitation's Statewide Mental Health Services Delivery System (MHSDS). I have held this position since July 17, 2020. I have been employed by the California Department of Corrections and Rehabilitation (CDCR) since January 1, 2016. I have personal knowledge of the statements in this declaration and could testify to them if called to do so.

2. As Assistant Deputy Director, I manage and oversee all CDCR's mental health continuous quality improvement efforts. CDCR's Continuous Quality Improvement Tool (CQIT) was initially and primarily designed as a quality improvement tool, used to identify and correct problems with performance and improve the MHSDS and make it one of the best correctional mental health care systems in the world. CDCR strives to create and maintain a system grounded in best practices, far exceeding constitutional minima, and CQIT was developed with that goal in mind. CQIT measures CDCR's compliance with its policies and other healthcare standards, which were designed to inspire best practices and administrative coordination, among other reasons, and not simply reflect what is minimally required in a constitutionally adequate system.

3. The CQIT review process contains a qualitative component that includes both patient interviews and a review of individual patient files, in concert with an extensive onsite tour over several days. During this time, not only is data collected, but the overall quality of group therapy, classification committee meetings, and interdisciplinary treatment team meetings, among other things, are observed and evaluated.

4. CDCR's Continuous Quality Improvement On Site Audit Guidebook (the Guidebook) advises auditors to "pay special attention to qualitative items that may not be explicitly written in CQIT." (Guidebook, p. 10.) The Guidebook urges auditors to utilize "all information available … to paint a complete picture on institution performance." (*Id.*) CQIT audits include case reviews at each level of care within a facility. The Guidebook advises auditors to obtain a random targeted sample that may be done as a result of a specific issue or question. (*Id.* at p. 64.) For instance, the auditor may randomly select EOP patients only if the inquiry is

-1-

specific to an inquiry at the EOP level of care.  (*Id.*; *see also id.* at p. 29 [auditors reviewing the Mental Health Crisis Bed program must randomly select ten patients who are on "limited issue" and review their health record to evaluate whether orders are inconsistent with policy and decisions are justified].)  A true and correct copy of the Guidebook is attached as **Exhibit A.**  I am informed and believe that the Guidebook was sent to Plaintiffs' counsel and the Special Master team by Nicholas Weber, counsel for CDCR, on July 3, 2018,

5. As part of the CQIT review process, patients are also selected at random and interviewed by auditors to obtain feedback that is considered during the review process.  Patients are asked, among other questions, what keeps them from going to their mental health appointments, do they feel they are being seen as often as they need to be, are they seen quickly when they need to be, do they know their mental health treatment plan, are they satisfied with their mental health treatment team meetings, and how can their treatment be improved, among many other questions.  (Guidebook at pp. 19-23.)

6. Plaintiffs have been invited to attend the previous CQIT audits in person, most recently from August to October of 2018 at nine institutions.  I am informed and believe that counsel for Plaintiffs attended several of these multi-day audit tours.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed in Elk Grove, California on November 30, 2020.

*/s/ Steven Cartwright*
STEVEN CARTWRIGHT, Psy.D.
*(original signature retained by attorney)*