UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RALPH COLEMAN, et al.,

Plaintiffs,

v.

EDMUND G. BROWN, JR., et al.,

Defendants.

No.  2:90-cv-0520 KJM DB P

ORDER

On September 23, 2020, the Special Master filed a report on the fourth re-audit and update on suicide prevention practices in the prisons of the California Department of Corrections and Rehabilitation (CDCR) prepared by the Special Master's suicide prevention expert Lindsay M. Hayes, M.S.  ECF No. 6879.  With his report, the Special Master filed Mr. Hayes' report itself.  ECF No. 6879-1.  On October 5, 2020, defendants filed objections to the Special Master's report.  ECF No. 6898.  On October 14, 2020, plaintiffs filed a response to defendants' objections.  ECF No. 6905.

I.    BACKGROUND

While the pending report is the fourth re-audit report, it is the fifth report and recommendations the Special Master and Mr. Hayes have filed with the court.  The first report was filed January 14, 2015.  ECF Nos. 5258, 5259.  It contained a "comprehensive" set of recommendations for action defendants should take to enhance their suicide prevention policies

1

and practices.  Order filed Feb. 3, 2015, ECF No. 5271, at 2.  On February 3, 2015, this court
ordered defendants to adopt those recommendations.  *Id*. at 3.  There were a total of thirty-two
recommendations in the initial report.  *See* ECF No. 5396 at 4.  The second report, filed
January 13, 2016, concerned Mr. Hayes' first re-audit of CDCR suicide prevention practices.  *See*
ECF Nos. 5395, 5396.  On April 5, 2016, the court adopted Mr. Hayes' report, ECF No. 5396, in
full.  April 5, 2016 Order, ECF No. 5429.  The third report, filed September 7, 2017, concerned
Mr. Hayes' second re-audit of CDCR suicide prevention practices.  ECF Nos. 5671, 5671-1.
After the second re-audit, Mr. Hayes and the Special Master recommended withdrawal of three of
the recommendations from the initial report.  *See id*.  On January 25, 2018, the court adopted the
latter recommendation, Jan. 25, 2018 Order, ECF No. 5762 at 3, leaving twenty-nine
recommendations to be completed.

On November 5, 2018, the Special Master filed a report on Mr. Hayes' third re-
audit of CDCR suicide prevention practices, together with Mr. Hayes' report.  ECF Nos. 5993,
5993-1.  On July 3, 2019, the court adopted those reports and their recommendations in full.
July 3, 2019 Order, ECF No. 6212, at 14.  The court specifically noted that "[i]f Mr. Hayes is
unable to report full compliance with his recommendations at the end of the fourth re-audit, the
court anticipates reviewing with defendants at a future status conference the specific steps
necessary to enable Mr. Hayes to report no later than after his fifth re-audit that all
recommendations have by then been implemented."  *Id*.  The court supplemented this requirement
in an order that followed the third quarterly status conference of 2019, directing the Special
Master and Mr. Hayes "to include in their reporting on Mr. Hayes' fourth re-audit specific
recommendations for each step defendants must take to implement any items that remain
incomplete, as well as a date certain on which the fifth re-audit round will commence," if they
were unable to report full compliance after the fourth re-audit.  Jan. 7, 2020 Order, ECF No.
6441, at 8.

As the reports currently before the court show, Mr. Hayes has now been unable to
report full compliance with his recommendations following his fourth re-audit.  By this order, the
court resolves defendants' objections to the report.  The court also directs defendants to identify,

1  in a notice filed with the court by December 11, 2020, the person or persons most knowledgeable

2  with respect to the steps required to complete implementation of all twenty-nine

3  recommendations and ensure that implementation is durable, who must attend the status

4  conference set for December 18, 2020.

5      A.  Special Master's Recommendations

6       In his report on his expert's fourth re-audit of suicide prevention practices, the

7  Special Master recommends the following:

8        (1) That the Court find defendants in compliance with the
      implementation of Recommendations 2, 4, 5, 11, 19, 22, 23, 24, 25,
9        27, 30, and parts of 32; and

10        (2)  That the Court order defendants to complete the implementation
      of Recommendations 1, 3, 6, 7, 8, 9, 10, 12, 13, 17, 18, 20, 21, 26,
11        28, 29, 31 and the remaining parts of 32 as outlined in the report.

12  ECF No. 6879 at 27.[1]

13      B.  Defendants' Objections and Plaintiffs' Response

14       Defendants raise two objections.  First, they object to the way Mr. Hayes has

15  measured compliance with the suicide precaution and suicide watch observation requirements

16  included in the twenty-first recommendation; specifically, they contend Mr. Hayes should

17  measure compliance with these requirements 'by auditing the times recorded by the provider as to

18  when the observation occurred, rather than the time the provider accessed EHRS [the Electronic

19  Health Record System] to log the observation."  ECF No. 6898 at 2-3.  Second, they object to 90-

20  percent and 100-percent compliance standards recommended by the Special Master for

21  determining compliance with Mr. Hayes' recommendations, contending neither standard is

22  required for compliance with the Eighth Amendment.  *Id*.  Finally, with respect to four

23  recommendations, namely recommendations 6, 7, 8 and 20, defendants contend they "again

24

25

26

27     [1] Citations to page numbers for documents filed in the Court's Electronic Case Filing
(ECF) system are to the page number assigned by the ECF system located in the upper right-hand
corner of the page.

28

1  request[ ] Mr. Hayes's help with the data and measures he audits so [they] can continue to

2  improve compliance." *Id*. at 3.[2]

3          Plaintiffs oppose defendants' first objection, contending primarily that Mr. Hayes'

4  method of measuring compliance is what is required to cure the inaccuracies and false reporting

5  by staff that have plagued compliance with the required suicide precaution and suicide watch

6  observation for years.  *See* ECF No. 6905 at 5-6.  Plaintiffs raise several responses to the second

7  objection:  (1) defendants' objection to the Special Master's use of a 90% compliance standard

8  for staff suicide prevention training is misplaced because for almost six years they have been

9  under a court order to provide such training for "all custody and health care staff"; (2) without

10  conceding that 100 percent compliance would set too high a standard, plaintiffs observe that the

11  90 percent benchmark has been used consistently through all of Mr. Hayes' reports; and (3) the

12  requirement is appropriate given defendants' ongoing failure to slow a rising suicide rate in their

13  prisons.  *Id*. at 5-6.  Finally, plaintiffs contend the compliance metrics and methodology used by

14  Mr. Hayes are clear and have been known to defendants at least since Mr. Hayes' first report in

15  2015 and that defendants' request for clarification thus is "disingenuous."  *Id*. at 7-8.

16          The court addresses each of defendants' objections below.

17  II.    MEASURING COMPLIANCE WITH SUICIDE PREVENTION AND SUICIDE

18          WATCH OBSERVATION REQUIREMENTS

19          The twenty-first recommendation with which defendants are required to comply

20  provides:

21          CDCR should enforce its Program Guide requirements authorizing

22          only the two levels of observation which may be provided for
        suicidal inmates: (1) observation at staggered intervals not exceeding
        every 15 minutes for inmates on Suicide Precaution, and (2)

23          continuous observation for inmates on Suicide Watch.

24  ECF No. 6879 at 31; *see also* 2018 Program Guide Revision, ECF No. 5864-1, at 181-183.  The

25  Special Master reports Mr. Hayes' fourth re-audit showed that "practices remain deficient in the

26  _____

27       [2] Defendants do not object that compliance is impeded in any way as a result of the
COVID-19 pandemic.

28

4

actual observation of suicidal patients."  ECF No. 6879 at 21-22; *see also* ECF No. 6879-1 at 14-

15.  Mr. Hayes reported "very problematic" suicide observation practices at twelve of the

eighteen institutions he visited, "with violations attributable to multiple nursing personnel during

multiple days at each facility."  ECF No. 6879-1 at 14.  In many of these institutions, there were a

significant number of gaps between observation that exceeded fifteen minutes, with the gaps

exceeding an hour in two cases.  *Id.* (two cases showing gaps of 64 minutes and 67 minutes

respectively).  In addition, at California State Prison-Los Angeles County, Mr. Hayes report only

one of ten patients in the mental health crisis bed (MHCB) unit had been placed on suicide

observation status, while others in the unit clearly required such observation.  *Id.* at 15.  Mr.

Hayes also observed that "facility level nursing leadership oversight and responsibility to resolve

the problem" were omitted from an April 2020 corrective action plan (CAP) to train nursing staff

in modification to the Electronic Health Record System (EHRS) that "triggers staggered

observation rounding."  *Id.* at 15.

Defendants object to the method Mr. Hayes used to reach the conclusion that

finding that CDCR is not enforcing this important Program Guide requirement.  Specifically,

defendants contend Mr. Hayes improperly relied on the times providers accessed the EHRS to

record their observations, rather than the observation times recorded by those providers.

Mr. Hayes explains his methodology as follows:

> This reviewer's methodology is simple and has been previously
> discussed with defendants, specifically nursing supervisors. This
> reviewer accesses the Interactive View tab of the EHRS on a patient
> to gain access to the Suicide Watch/Precaution/Medical Observation
> form that is embedded in the chart. By clicking on an hourly column,
> the Result Details template pops up and contains an Action List tab,
> which automatically documents the exact date and time that nursing
> staff entered information. This reviewer examines the only time (e.g.,
> "1:17 PST") that is listed in the Result Details template.  That time
> is compared to the preceding time that had been entered and, if it is
> in excess of 15 minutes, it is recorded as a violation.

ECF No. 6879 at 73.

Defendants are correct that Mr. Hayes relies on the time nursing staff enter the

observation information into the EHRS.  Their objection that this is improper is overruled.  There

is no dispute that the EHRS allows nursing staff to record suicide precaution and suicide

observation watch times at cell front when those observations are actually made, with no delay in reporting.  Mr. Hayes notes, in part, that the Continuous Quality Improvement Tool (CQIT) instructions require nursing staff to "'conduct[ ] and document[ ] these observations at the cell front while observing the [inmate/patient].'"  ECF No. 6879 at 74.  Defendants' objection that the CQIT guidebook and instructions "have not been finalized or implemented" misses the mark; these instructions reflect the fact that contemporaneous cell front documentation of these observations is not only possible but also the only way to ensure the necessary quality control in suicide observation.[3]

As plaintiffs correctly observe, Mr. Hayes has previously reported serious non-compliance with the suicide precaution and suicide watch observation requirements, including falsification of records.  *See* ECF No. 6905 at 2-3 and Hayes' Original Audit and Three Re-Audit Reports cited therein.[4]  Defendants have never objected to those findings, and they have all been adopted in full by this court.  *See* ECF Nos. 5271, 5429, 5762, 6212.[5]  Given both the history of falsification of records and non-compliance with Program Guide suicide observation requirements, contemporaneous cell front recording of suicide watch observations is the only way to eliminate long-standing questions about compliance with these important requirements.  There is no sound reason for rejecting Mr. Hayes' methodology and in fact, given the feasibility of contemporaneous cell front recording it is the only reasonable method.

In view of the adoption of the EHRS, and the long and undisputed history of falsification of records of these key reporting requirements, given that contemporaneous time-

---

[3] The Special Master has informed the court that the proper procedure is for nurses to carry with them laptop computers as they conduct suicide observation rounds and to record each observation as it is made; laptop computers are available in each unit where suicide observation is required.

[4] The Second Re-Audit Report cited by plaintiffs as ECF No. 5672 should be cited as ECF No. 5671-1.  Similarly, the Third Re-Audit Report cited by plaintiffs as ECF No. 5994 should be cited as ECF No. 5993-1.

[5] This court's February 3, 2015 order, ECF No. 5271, is amended to specifically include that the findings in Mr. Hayes' original audit report, ECF No. 5259, are adopted in full.

1  stamp cell front reporting is available and indeed required to demonstrate compliance with those

2  requirements, there is no error in Mr. Hayes' methodology.  Rather, the methodology is sound for

3  the purposes of assessing whether defendants are in fact using the tools available to them to cure

4  the longstanding failure to meet the Program Guide requirements for observation of suicidal

5  inmates.  This objection is overruled.

6  III.    COMPLIANCE STANDARDS

7             As required by the January 7, 2020 order, the Special Master's report includes

8  "specific recommendations for each step defendants must take to implement any item that

9  remains incomplete. . . ."  ECF No. 6441 at 8.  For several of the incomplete items, the

10  recommendations include a percentage compliance that must be achieved for defendants to be

11  considered in compliance.  These include:

12             (1) at least 90 percent of custody and health care staff receive both pre-service and

13  annual suicide prevention training (Recommendation 3);

14             (2) "ensure that at least 90 percent of mental health clinicians at each audited

15  CDCR facility are compliant with the requirements of both the seven-hour SRE [Suicide Risk

16  Evaluation] training and SRE mentoring program," ECF No. 6879 at 19 (Recommendation 9);

17             (3) 100 percent compliance with the requirement that each facility's SPRFIT

18  [Suicide Prevention and Response Focused Improvement Teams] audit the quality of completed

19  SREs on a monthly basis (Recommendation 10);

20             (4) at least 90 percent compliance with requirements for suicide-resistant housing

21  of inmates newly admitted to administrative segregation "during their first 72 hours of

22  placement" (Recommendation 13);

23             (5) make sure that adequate treatment (safety) plans are maintained in at least 90

24  percent of cases reviewed at each audited facility (Recommendation 17);

25             (6) make sure at least 90 percent of mental health clinicians at each audited CDCR

26  facility comply with safety planning training requirements (Recommendation 18);

27             (7) at least 90 percent compliance with adequate psych tech practices and auditing

28  thereof (Recommendation 20);

1         (8)  100 percent compliance with suicide precaution and suicide observation

2  requirements (Recommendation 21);

3         (9) at least 90 percent compliance with requirement that any inmate in an

4  outpatient housing unit for more than twenty-four hours be provided with a suicide-resistant bed

5  (Recommendation 26);

6         (10) adequate completion of second page of "Discharge Custody Check Sheet" in

7  at least 90 percent of reviewed cases (Recommendations 28 and 29);

8         (11) at least 90 percent compliance with adequate SPRFIT practices that are

9  consistent with the SPRFIT policy (Recommendation 31); and

10         (12) at least 90 percent compliance with policies regarding possessions and

11  privileges for mental health crisis bed patients (Recommendation 32).

12  ECF No. 6879 at 16-24.  Defendants object that these proposed compliance standards exceed the

13  requirements of the Eighth Amendment and that adoption of them would violate the Prison

14  Litigation Reform Act's "needs-narrowness-intrusiveness requirements by replacing the

15  applicable 'substantial compliance' standard with one that is inconsistent with the Eighth

16  Amendment."  ECF No. 6898 at 5.[6]  Defendants' objection betrays a fundamental

17  misunderstanding of the nature of these recommendations.

18         It is settled in this action that defendants' constitutional obligation with respect to

19  suicide prevention is "to take and adequately implement all reasonable steps to remedy" the

20  "pattern of identifiable and describable inadequacies in suicide prevention in the CDCR" that has

21  been repeatedly identified and described for almost two decades.  *See Coleman v. Brown*,

22  938 F.  Supp. 2d 955, 979 (E.D. Cal. 2013).  As the record of this case amply reflects, the pattern

23  of inadequacies exists in both clinical judgment and administrative action or inaction.

24  Implementation of the twenty-nine recommendations is a central part of remedying this pattern.

25  ──────────────

26  [6] Defendants also contend "[t]he Special Master and Mr. Hayes's monitoring and reporting should express the levels of compliance connected to the *Coleman* remedy.  But it is not for them to pronounce the degree to which Defendants must substantially comply with the remedy to

27  satisfy their obligations to the *Coleman* class."  ECF No. 6898 at 6. The report and recommendations before the court in no way usurp the court's role; they are in fact submitted as

28  ordered by the court.

1    Defendants are already required by court order to fully adopt the twenty-nine

2    recommendations.  The Special Master's recommendations, if adopted, provide guidance for

3    defendants regarding when he will report to the court that, in his view, they have sufficiently

4    implemented a particular suicide prevention measure recommended by Mr. Hayes as required by

5    this court; they give defendants a clear target to meet by the time Mr. Hayes' fifth round audit

6    begins.  This guidance is necessary and appropriate and will therefore be adopted.

7    The court's adoption of the Special Master's recommendations concerning

8    particular percentage compliance standards with respect to individual provisions of the remedy

9    does not violate the requirements of 18 U.S.C. § 3626(A)(1)(a) by moving away from the

10   requirements of the Eighth Amendment.  As noted above, it is settled in this action that

11   defendants' Eighth Amendment obligation is to adequately implement all reasonable steps that

12   have been identified to reduce the pattern of foreseeable or preventable inadequacies in clinical

13   judgment and administrative action or inaction involved in inmate suicides.  Section

14   3626(A)(1)(a) prevents a federal court from granting prospective relief in prison conditions cases

15   "unless the court finds that such relief is narrowly drawn, extends no further than necessary to

16   correct the violation of the Federal right, and is the least intrusive means necessary to correct the

17   violation of the Federal right."  18 U.S.C. § 3626(A)(1)(a).  To satisfy this requirement in

18   complex cases such as this one, the court must find "that the set of reforms being ordered – the

19   'relief' – corrects the violations of prisoner's rights with the minimal impact possible on

20   defendants' discretion over their policies and procedures."  *Armstrong v. Schwarzenegger*, 622

21   F.3d 1058, 1071 (9th Cir. 2010).

22   The twenty-nine recommendations are interim steps that, when fully implemented,

23   are designed to bring defendants significantly closer to meeting their Eighth Amendment

24   obligations in the area of suicide prevention.[7]  Ultimately, it will be for the court to decide

25   whether defendants have "take[n] and adequately implement[ed] all reasonable steps to remedy"

26   _____

27   [7] Eighth Amendment compliance in this area of this action will require both adequate
implementation of the twenty-nine recommendations as well as remediation of the pattern of
identifiable and describable inadequacies in the annual reports on inmate suicides.

28

1   the "pattern of identifiable and describable inadequacies in suicide prevention in the CDCR."

2   Defendants do not dispute they must fully implement these recommendations, as they were

3   ordered to do five years ago.  Their objection to the Special Master's recommendations regarding

4   when he will report to the court that each has been adequately implemented is overruled.

5   IV.      REQUEST FOR ADDITIONAL GUIDANCE AS TO SPECIFIC
            RECOMMENDATIONS
6

7           Finally, defendants ask for specific additional information concerning the data and

8   metrics used by Mr. Hayes in making his findings on recommendations 6, 7, 8 and 20.  ECF No.

9   6898 at 6-7.  Defendants contend this additional data will facilitate the preparation of corrective

10  action plans to address the deficiencies.  *Id.*  Mr. Hayes reports his methodology has been

11  consistent since he started auditing defendants' suicide prevention efforts in 2015.  ECF No. 6879

12  at 64.  He explains:

13          There are no secrets or surprises with this reviewer's overall
            methodology for auditing.  Consistent with all *Coleman* reports,
14          members of the local facility (usually the SPRFIT), regional and/or
            headquarters staff routinely follow this reviewer around and observe
15          what this reviewer observes. In addition, during PT rounds and R&R
            screening, a nursing supervisor is usually shadowing this reviewer.
16          All of these findings and observations are reported out at each facility
            exit meeting, and there are ample opportunities for clarification at
17          that time.

18  *Id.* at 65.  Defendants do not contest this explanation.

19          The court has reviewed the findings in Mr. Hayes' report concerning each of these

20  four recommendations.  *See* ECF Nos. 6879-1 at 5, 7-9.  The opportunity afforded each institution

21  during the facility exit meetings and the detailed information provided in the report is sufficient to

22  guide defendants in the necessary remedial effort required before the start of Mr. Hayes' fifth

23  round re-audit.  Defendants have made no showing that persuades this court to require Mr. Hayes

24  to change his well-established and transparent auditing practices.

25  /////

26

27

28

V.      ADDITIONAL ISSUES FOR DECEMBER STATUS CONFERENCE

The Special Master's reports on Mr. Hayes' audits of CDCR's suicide prevention practices are one component of his monitoring of the adequacy of CDCR's suicide prevention efforts.  In addition, since he assumed responsibility for monitoring suicide prevention and policy in 1998, *see* Dec. 22, 2000 Order, ECF No. 1229, at 1 n.1, the Special Master has filed reports on inmate suicides completed in CDCR annually.  The last report filed on the docket is the report on inmate suicides completed in calendar year 2014, which the Special Master filed March 29, 2016. *See* ECF Nos. 5427, 5428.  The Special Master has informed the court that his efforts to transition the responsibility for preparation and filing of these reports to defendants broke down earlier this year due to a dispute over the definitions of "foreseeable" and "preventable" used in analysis of individual inmate suicide cases and the role of the foreseeability and preventability analyses in the remedial phase of this action, among other issues.  The court notes defendants have published on their website their own reports on inmate suicides completed in calendar years 2015 and 2016 (hereafter 2015 and 2016 Suicide Reports).  *See* https://www.cdcr.ca.gov/reports/.

Good cause appearing, the parties shall file by 5:00 p.m. on December 11, 2020, a joint summary status report not to exceed ten pages addressing the following issues.  First, with specificity what are the substantive differences between the definitions of foreseeable and preventable used by the Special Master and approved by this court, and those used by the suicide review committees responsible for the analyses reflected in defendants' 2015 and 2016 Suicide Reports.  Second, how, if at all, would those differences affect the court's ability to review the current status of remediation of the identifiable and describable inadequacies described in the Special Master's prior reports on inmate suicides and outlined in the court's April 5, 2013 order, *see Coleman v. Brown*, 938 F. Supp. 2d 955, 973-79 (E.D. Cal. 2013), recognizing that those inadequacies are to be redressed concurrently with full implementation of the twenty-nine recommendations ordered by the court following Mr. Hayes' audit of CDCR's suicide prevention practices.  Third, what do footnotes in defendants' 2015 and 2016 Suicide Reports, *see* 2015 Suicide Report at 39 n.25; 2016 Suicide Report at 45 n.9, signify about (a) whether defendants are adhering to the principles of foreseeability and preventability established in this action and the

1   role of those concepts in remedying the systemic Eighth Amendment violation in implementation

2   of their suicide prevention policies, and (b) whether defendants are adhering to the law of the case

3   with respect to the proper role of deliberate indifference, the subjective component of an Eighth

4   Amendment violation, in the remedial phase of this action.  Finally, defendants shall identify the

5   person or persons most knowledgeable regarding these matters, who shall also attend the

6   December 18, 2020 status conference.

7              In accordance with the above, IT IS HEREBY ORDERED that:

8              1.  The Special Master's September 23, 2020 report, ECF No. 6879, and Mr.

9   Hayes' September 23, 2020 report entitled The Fourth Re-Audit and Update of Suicide

10  Prevention Practices in the Prisons of the California Department of Corrections and

11  Rehabilitation, ECF No. 6879-1, are adopted in full.

12             2.  The court's February 3, 2015 order, ECF No. 5271, is amended to specifically

13  include that the findings in Mr. Hayes' original audit report, ECF No. 5259, are adopted in full.

14             3.  On or before December 11, 2020 at 5:00 p.m., the parties shall file the joint

15  statement required by Section V of this order.  In that joint statement, defendants shall identify

16  the person or persons most knowledgeable of the issues covered in the joint statement, and shall

17  take all steps necessary to ensure the attendance of the person or persons at the status conference

18  set for December 18, 2020.

19             4.  On or before December 11, 2020 at 5:00 p.m., defendants shall file a list of the

20  person or persons most knowledgeable of the steps required to complete implementation of all

21  twenty-nine recommendations previously adopted by the court and to ensure that implementation

22  is durable; defendants shall take all steps necessary to ensure the attendance of the person or

23  persons at the status conference set for December 18, 2020.

24  DATED: December 2, 2020.

25

26  _____

27  CHIEF UNITED STATES DISTRICT JUDGE

28