1
2
3
4
5
6
7

8              UNITED STATES DISTRICT COURT

9           FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   RALPH COLEMAN, et al.,                No.  2:90-cv-0520 KJM KJN P

12              Plaintiffs,

13        v.                               ORDER

14   GAVIN NEWSOM, et al.,

15              Defendants.

16

17

18          The fourth and final quarterly status conference of 2020 is set for videoconference

19   on December 18, 2020 at 10:00 a.m.  *See* Sept. 3, 2020 Order, ECF No. 6846, at 29.  After review

20   of the record, and good cause appearing, the court now sets the following agenda:

21   I.    Discussion of defendants' proposed revised Staffing Plan and proposed Psychiatric
          Nurse Practitioner policy and response thereto, if any.  *See* Nov. 4, 2020 Order, ECF
22        No. 6938, at 8.

23          The court has directed the Secretary of California Department of Corrections and

24   Rehabilitation (CDCR), Kathleen Allison, to attend the status conference to discuss the proposed

25   Revised Staffing Plan with the court.  *Id*. at 9.  The court anticipates discussing the following

26   topics with  Secretary Allison:

27

28

                                     1

A.        Assuming without deciding the court approves proposed modifications to the Staffing Plan, including any proposed Psychiatric Nurse Practitioner policy, what specific steps are required to fully implement the Staffing Plan;

B.        What, if any, are the obstacles to full implementation; and

C.        What is the earliest date at which full implementation can be achieved.

II.      <u>Resumption of Program Guide-level delivery of mental health care.</u>  *See, e.g.*, ECF No. 6398, at 4-5; ECF No. 6791 at 3.

In addition to hearing any information that may be provided by counsel, the court anticipates discussing the following topics with Secretary Allison:

A.  What are CDCR's proposed specific plans for resuming full compliance with the Program Guide;

B.  What is CDCR's proposed timetable for complete resumption of full compliance with the Program Guide;

C.  What is CDCR's specific plan for COVID-19 vaccination of class members;

D.  In any specific vaccination plan, where will seriously mentally ill prisoners fall in order of priority; and

E.  What educational outreach efforts about vaccinations and a vaccination plan are planned for class members.

III.    <u>Data Issues</u>

Discussion to include updates from the Special Master and the parties on the following topics as well as proposed deadlines for completion of ongoing work:

A.  Data for Enhanced Outpatient Program/Administrative Segregation Unit Hub certification;

B.  Data for Continuous Quality Improvement Tool indicators;

C.  Verification of integrity and reliability of CDCR's Mental Health Data Management System;

D.  Operation of CDCR's Mental Health Data Management System going forward; and

E.  Updates to Electronic Health Records System.

IV.     Suicide Prevention.  *See* ECF No. 6973

In addition to any information that may be provided by counsel, the court anticipates discussing with Secretary Allison what specific steps she is taking to ensure that all prison institutions obtain and maintain compliance with court-ordered suicide prevention measures.

The court also anticipates discussing the following topics with the person or persons most knowledgeable identified by defendants, *see* ECF No. 6973 at 12:

A.  What specific steps are required to complete implementation of Recommendations 1, 3, 6, 7, 8, 9, 10, 12, 13, 17, 18, 20, 21, 26, 28, 29, 31 and the remaining parts of 32.  *See* Attachment A to this order.

B.  What specific steps are required to ensure compliance with each recommendation, once achieved, is maintained?

Finally, the court will hear from the parties and the person or persons identified by defendants on the topics identified in section V of the court's December 3, 2020 order, ECF No. 6973, at 11-12.

V.     Quarantine and Isolation Space

The parties should be prepared to update the court on the status of identification of quarantine and isolation space for class members.

VI.     Other Matters

The court will also inquire whether the parties are able to report any improvement in the timeline for transfers to Department of State Hospitals since the court's hearing on transfers.

/////

/////

/////

3

1          The court may identify other issues to be covered at the beginning of the status

2   conference, and will entertain the parties' proposed suggestions for discussion items as well.

3          IT IS SO ORDERED.

4   DATED:  December 11, 2020.

5

6                                                   CHIEF UNITED STATES DISTRICT JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ATTACHMENT A

1      Suicide Prevention Recommendations Remaining to Be Fully Implemented

2

3   Recommendation 1:  Expand the length and content of the pre-service "Crisis Intervention and
    Suicide Prevention training workshop to include topics as described above [i.e., including (1)

4   self-injurious v. suicidal behavior and dealing effectively with inmates perceived to be
    manipulative; (2) identifying inmates at risk for suicide despite their denials of risk; (3) updated

5   research on CDCR suicides; (4) identified problem areas and corrective actions from previous
    CDCR Suicide Reports; and (5) results of any recent *Coleman* and/or SPRFIT audits of suicide

6   prevention practices.

7   Recommendation 3:  Ensure that all custody and health care staff receive both pre-service and
    annual suicide prevention training.

8

9   Recommendation 6:  Intake screening should be conducted only in the nurse's office within an
    R&R unit.

10

11  Recommendation 7:  The nurse's office should be of sufficient size to conduct adequate intake
    screening and the door to the office (which should contain a large viewing window) should

12  remain closed during the screening process.

13  Recommendation 8:  Nurse and officer safety should remain the top priority during the intake
    screening process. If an inmate's security classification or unknown security status creates a

14  safety concern, the screening should be conducted in the least restrictive setting that ensures both
    staff safety and inmate confidentiality.

15

16  Recommendation 9:  CDCR should revise its SRE Mentoring Program to eliminate its
    "graduation" component after completion of two adequate assessments, conduct ongoing

17  mentoring throughout the year, and audit clinicians' SREs on a regularly scheduled basis.

18  Recommendation 10:  Each facility's SPRFIT should audit the quality of completed SREs on a
    monthly basis.

19

20  Recommendation 12:  CDCR should ensure that there are a sufficient number of suicide-resistant
    retrofitted cells to house newly admitted inmates (i.e., those within their first 72 hours of their

21  housing in the unit) and the inmates of special concern or heightened risk of suicide (e.g., inmates
    recently released from suicide observation status).

22

23  Recommendation 13 – CDCR should enforce its existing policy of housing only newly admitted
    inmates in retrofitted cells, and immediately re-house inmates remaining in the retrofitted cells

24  beyond their first 72 hours.

25  Recommendation 17 – CDCR should adopt the recommendations made in connection with SREs
    (Recommendations 9 and 10) set forth above, which will also improve treatment planning

26  contained in the SREs section above.

27

28

Recommendation 18 – CDCR should develop a specific timetable for the training of all of its mental health clinicians on treatment planning for the suicidal inmate, using its PowerPoint presentation, "Safety/Treatment Planning for Suicide Risk Assessment."

Recommendation 20 – CDCR should develop a corrective action plan (CAP) to ensure that supervising nursing staff regularly audits psych tech practices during daily rounds of mental health caseload inmates in administrative segregation and during weekly and bi-weekly rounds in the SHUs.

Recommendation 21 – CDCR should enforce its Program Guide requirements authorizing only the two levels of observation which may be provided for suicidal inmates: (1) observation at staggered intervals not exceeding every 15 minutes on Suicide Precaution, and (2) continuous observation for inmates on Suicide Watch.

Recommendation 26 – Any inmate housed in an OHU for more than 24 hours should be provided with a suicide-resistant bed.

Recommendation 28 – All inmates discharged from an MHCB or alternative housing, where they had been housed due to suicidal behavior, should be observed at 30-minute intervals by custody staff, regardless of the housing units to which they are transferred.

Recommendation 29 – The length of time an inmate is observed at 30-minute intervals following MHCB or alternative housing discharge should be determined on a case-by-case basis by the mental health clinician and clinically justified in the inmate's treatment plan. No other frequency of observation should be authorized.

Recommendation 31 – CDCR under the guidance of the Special Master, should re-examine and revise its local SPRFIT model to make the local SPRFITs a more effective quality assurance/improvement tool.

Recommendation 32 – CDCR, under the guidance of the Special Master, should examine and consider taking reasonable corrective actions to address these additional miscellaneous issues: Privileges for Inmates in MHCBs, Continuous Quality Improvement, and Reception Centers. *See* ECF No. 6879 at 24-25 for specific discussion of remaining parts of this recommendation to be implemented.