1

2

3

4

5

6

7                      UNITED STATES DISTRICT COURT

8                  FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10    RALPH COLEMAN, et al.,                    No.  2:90-cv-0520 KJM DB P

11                  Plaintiffs,

12         v.

13    GAVIN NEWSOM, et al.,                     ORDER

14                  Defendants.

15

16

17              In an order filed September 3, 2020, the court directed the parties to file briefs

18    addressing specific questions presented in the order.  Sept. 3, 2020 Order, ECF No. 6846, at 24-

19    27.  The questions all concern "interim steps toward full and durable implementation" of the two

20    primary remedial plans in this action, the Program Guide and the Compendium of Custody

21    Related Remedial Measures (hereafter Compendium).  *Id*. at 25.  The parties have filed the

22    required briefs and accompanying evidence.  *See* ECF Nos. 6936, 6936-1 (Defendants' Brief and

23    Evidence); ECF Nos. 6937, 6937-1 through 6937-4 (Plaintiffs' Brief and Evidence).  The parties

24    have also filed responsive briefing and evidence as authorized by the court, ECF No. 6946.  *See*

25    ECF No. 6969 (Plaintiffs' Reply); ECF Nos. 6971, 6971-1, 6971-2 (Defendants' Reply and

26    Evidence).

27    /////

28    /////

                                                1

1    I.    BACKGROUND

2         A quality assurance program and a quality improvement process are required parts

3    of the remedy in this action.  *See Coleman v. Wilson*, 912 F. Supp. 1282, 1308 (E.D. Cal. 1995);

4    *see also*, *e.g.*, Mar. 3, 2014 Order, ECF No. 5092, at 4-5[1] (quoted in ECF No. 6846 at 10); Aug.

5    30, 2012 Order, ECF No. 4232, *passim*.  Quality assurance and quality improvement are

6    components of an adequate quality management system:  quality assurance focuses on

7    quantification of system performance, while quality improvement focuses on the quality of that

8    same system's performance.  *See*, *e.g.*, ECF No. 4205 at 74-75.[2]

9         Defendants' expert previously has testified via declaration "that defendants cannot

10   provide adequate mental health care without some form of quality assurance."  *Coleman v.*

11   *Wilson*, 912 F. Supp. at 1308.  The Eighth Amendment requires access to "adequate" mental

12   health care; a quality assurance program is a necessary part of ensuring the adequacy of the

13   mental health care delivered in a system the size of defendants' Mental Health Care Delivery

14   System (MHSDS).  *Id*.  As early as 1998, the Special Master reported to the court that

15
16
17
18
19
> [a] strong quality assurance system is the best, and perhaps the only, long-term method for continuing evaluation and enhancement of the quality of mental health series delivered by the defendants to seriously mentally disordered prisoners in the California Department of Corrections. If effectively implemented and thoroughly institutionalized in the defendants' mental health delivery system, its impact will inure to the benefit of the plaintiff class long after the court has ceased to monitor this case. Quality assurance is the critical key to an enduring remedy.

20   Special Master's Recommended Schedule for Implementation of Defendants' Quality Assurance

21   Plans, filed July 20, 1998, ECF 958, at 3 (quoted in Twenty-Sixth Round Monitoring Report,

22   ECF No. 5439, at 104).

23

24   [1] This order was signed February 27, 2014 and is referred to in the court's September 3, 2020 order by that date as well as its ECF number.  It was entered on the docket in this action on

25   March 3, 2014 and is referred to here by that date and its ECF number.

26
27   [2] Citations to page numbers in documents filed in the Court's Electronic Case Filing (ECF) system are to the page number assigned by the ECF system and located in the upper right hand corner of the page.

28

1    Full implementation of a quality improvement process is equally integral to a

2  durable remedy in this action.  In 2012, the court adopted the Special Master's recommendation

3  and ordered defendants, over the following six months, to

4          review and assess their existing quality assurance process and . . .
          develop an improved quality improvement process by which they can
5          address issues with the quality of care that is delivered, as described
          in the Special Master's Twenty-Fourth Round Monitoring Report.
6          The quality improvement process shall be developed from the
          standpoint of it being the beginning of a transition by CDCR
7          [California Department of Corrections and Rehabilitation] into self-
          monitoring by its own DCHCS [Division of Correctional Health Care
8          Services].

9  ECF No. 4232, at 5-6.  Defendants objected to the recommended order on three grounds:

10  (1) their quality assurance process was "'constitutionally adequate'" and "'an order directing

11  Defendants to revise a presumptively constitutional process" was "not needed'"; (2) the order was

12  "'unnecessary and could be counterproductive'" because of efforts by the Receiver, in *Plata v.*

13  *Brown*, No. 01-1351 JST (N.D. Cal.), "to implement a 'comprehensive remodeling and revision

14  of CDCR's health care quality assurance process, of which mental health's quality assurance

15  process is a subset'"; and (3) they were willing to work with the Special Master without a court

16  order.  ECF No. 4232 at 2 (quoting Defs.' Objections, ECF No. 4212, at 1-2).  Noting that

17  defendants' prior comments to the Special Master about the draft recommendation had signaled

18  their acquiescence in it, ECF No. 4232 at 3, the court refused to entertain defendants' objections

19  because they had not complied with the requirement set forth in the Order of Reference, of

20  presenting their objections to the Special Master in the first instance.  *Id*. at 3-4.  The court

21  specifically noted its concurrence in the Special Master's finding that development and

22  implementation of the quality improvement process would be integral to completion of the

23  remedy in this case.  *Id*. at 4-5.

24    After the court extended the initial six month deadline, *see* Apr. 23, 2013 Order,

25  ECF No. 4561, at 2, on August 2, 2013, the Special Master filed a report on the work required by

26  the August 30, 2012 order.  ECF No. 4730.  The report included "recommendations for further

27  work on the quality improvement process" but no recommendations for specific court orders.

28  /////

1  ECF No. 5092, at 2.[3]  In its order denying plaintiffs' subsequent request for specific orders on the

2  Special Master's report, the court reiterated its finding that defendants had not objected "to the

3  Special Master's recommendation that they be ordered to review and assess their existing quality

4  assurance process and develop an improved quality improvement process as part of the transition

5  to self-monitoring and the end of federal court oversight; indeed, . . ., they acquiesced in the

6  recommendation." *Id*. at 4.  The court also reiterated that "defendants' development and

7  implementation of an improved quality improvement process" is "a key component of a durable

8  remedy" in this action.  *Id*. at 4-5 (quoted in ECF No. 6846 at 10).  CQIT is the "comprehensive

9  tool that, once finalized, defendants will ultimately use as part of" that quality improvement

10  process.  ECF No. 6846 at 10.

11  II.  UPDATE/IDENTIFY KEY CQIT INDICATORS

12  The first and fourth questions raised in the September 3, 2020 order are whether

13  the court should "allow a period of six months for defendants, under the supervision of the

14  Special Master who may seek input from plaintiffs as appropriate, to update the key indicators in

15  CQIT [the Continuous Quality Improvement Tool] to reflect any changes required by the 2018

16  Update to the Program Guide. . . . [and] identify key indicators for CQIT to reflect the material

17  provisions of the Compendium."  ECF No. 6846 at 25, 26.  The parties are in general agreement

18  that the court should order this update.  *See* ECF No. 6936 at 9[4]; *see also* ECF No. 6937 at 3.  In

19  consultation with the Special Master, the court has now determined this update can be finalized

20  within three months from the date this order is filed.

21  Plaintiffs request the court direct the inclusion of their counsel from the beginning

22  of this process, rather than at the discretion of the Special Master.  *See* ECF No. 6937 at 3, 6;

23  ECF No. 6969 at 4.  The 1995 Order of Reference provides that the  main work of the Special

24  _____

25  [3] This order was signed February 27, 2014 and is referred to in the court's September 3, 2020 order by that date as well as its ECF number.  It was entered on the docket in this action on March 3, 2014 and will henceforth be referred to by that date and its ECF number.

26  

27  [4] References to page numbers in documents filed in the Court's Electronic Case Filing (ECF) system are to the page number assigned by the ECF system and located in the upper right hand corner of the page.

28  

4

Master  is "with the defendants in this litigation"; at the same time, because this is an adversarial proceeding in which "[a]ll parties are entitled to the advice of counsel as this litigation proceeds", the Special Master is also "directed to consult with counsel for all parties as necessary in the discharge of his duties."  Dec. 11, 1995 Order, ECF No. 640, at 2-3.  The court finds no reason to depart from this long-standing direction.  Plaintiffs' request is denied.

Defendants contend that while some CQIT indicators "measure compliance with provisions of the Program Guide that reflect constitutional obligations" this is not true of all CQIT indicators; some measure compliance with California Department of Corrections and Rehabilitation [CDCR] policies "designed to inspire best practices and for administrative coordination, among other reasons, and not simply to reflect what is minimally required in a constitutionally adequate system."  ECF No. 6936 at 8.  They contend it is critical that those CQIT "indicators that measure compliance with constitutionally-mandated functions are identified and distinguishable from those that do not carry such import, but instead are used to enhance or improve performance."  *Id*. at 9.

These contentions misperceive the remedial function of the quality improvement process and CQIT.  For the reasons explained above, it is settled in this action that full implementation of the quality improvement process, including CQIT, is essential to a durable remedy in this action.  For that reason, implementation of all components of  CQIT is essential to the proper function of this key remedial requirement; the court's questions did not invite parsing of that tool in any way that would impede this function.  Identification of "key" indicators and confirmation of the degree of compliance required for each indicator serves separate remedial functions by facilitating assessment of the degree to which full implementation of the remedial plans in this action remains to be accomplished.  Once full implementation is accomplished using these measures, what will remain is a demonstration that these fully implemented remedies are durable.

After review of the record, and considering that CQIT has been under development for several years, the court concludes that a three month period is sufficient to update CQIT's list of key indicators.  That will be the order.

5

1

2

III.   CONFIRM UPDATED LIST OF KEY INDICATORS AS COMPREHENSIVE
LIST OF MATERIAL PROGRAM GUIDE/COMPENDIUM PROVISIONS FOR
COMPLIANCE PURPOSES

3

4

5

6

7

The second and fifth questions are whether the court should "confirm that the
updated list of key indicators in CQIT that pertain to Program Guide requirements may properly
be considered a comprehensive list of the material provisions of the Program Guide, that, taken as
a whole and met at the requisite degree of compliance, signal constitutionally adequate
compliance with the Program Guide."  ECF No. 6846 at 25, 26.

8

9

10

11

12

13

14

15

Plaintiffs argue that compliance with the CQIT key indicators can signal
constitutionally adequate compliance with the Program Guide only "in combination with an
overall systemic view of the system that includes review of a significant number of individual
patient cases to determine whether failures are occurring in a pattern that creates a substantial risk
of serious harm to patients."  ECF No. 6937 at 4, 6.  In the reply, defendants contend the CQIT
review process "already contains a qualitative component that includes both patient interviews
and a review of individual patient files, in concert with extensive onsite tours over several days."
ECF No. 6971 at 5.

16

17

18

19

20

21

22

23

24

25

As discussed above, CQIT is the implementation tool for the quality improvement
process that is a necessary component of complete remediation in this action.  The Special
Master's Twenty-Sixth Round Monitoring Report, filed May 6, 2016, includes a thorough
overview of the ongoing development of the comprehensive Continuous Quality Improvement
(CQI) process, for which CQIT is "[t]he self-auditing tool."  ECF No. 5439 at 104-113.  That
overview is incorporated into this order by reference.[5]  It shows that implementation of the
quality improvement process in its entirety, assuming implementation can be achieved, will result
in a process by which defendants not only continuously "measur[e] performance indicators but
also . . . identify[] and craft[] resolutions with system-wide application, and thus . . . improv[e]
the [mental health] care that is delivered throughout CDCR prisons.'"  ECF No. 5439 at 110

26

27

28

[5] No party raised objections to the Twenty-Sixth Round Monitoring Report.  *See* Aug. 9,
2016 Order, ECF No. 5477, at 1.

6

1   (quoting Special Master's Report on Defendants' Quality Improvement Process, ECF No. 5730,

2   at 3).

3        Defendants contend it is "critical" to "identify those material CQIT indicators that

4   undeniably measure a constitutionally adequate mental health care delivery system" in order to

5   avoid requiring of them more than the Eighth Amendment requires and running afoul of the

6   needs-narrowness-intrusiveness requirement of the Prison Litigation Reform Act.  ECF No. 6936

7   at 11.[6]  In their opening brief, defendants also argue that "CQIT was not designed to measure

8   CDCR's provision of the minimum level of services and care that should be provided to *Coleman*

9   class members to meet constitutional standards." *Id*. at 5.  In reply, defendants modify that

10  position to contend CQIT has two purposes:  "not only . . . to measure CDCR's provision of the

11  minimum level of services and care that should be provided to *Coleman* class members to meet

12  constitutional standards," CQIT is "also . . . intended to be aspirational, reflecting best practices

13  and encouraging improvement.  ECF No. 6971 at 2.

14       As discussed above, the quality improvement process serves an integral remedial

15  function in this action:  defendants' assumption of responsibility for self-monitoring the adequacy

16  of mental health care delivered to the plaintiff class.  This function is as essential to the

17  constitutional remedy as are individual components measured by CQIT.  Viewed through this

18  lens, defendants' contention that CQIT includes components that exceed constitutional minima is

19  misplaced.  While key CQIT indicators must be identified as an aid to measurement of

20  compliance with remedial plans in this action, namely the Program Guide and the Compendium,

21  that identification is but a component of full implementation of CQIT and the quality

22  improvement process.  As discussed above, full implementation of CQIT and the quality

23

24       [6] The needs-narrowness-intrusiveness requirement is found in 18 U.S.C. § 3626(a)(1)(A),
    which provides in relevant part:  "Prospective relief in any civil action with respect to prison

25  conditions shall extend no further than necessary to correct the violation of the Federal right of a
    particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless

26  the court finds that such relief is narrowly drawn, extends no further than necessary to correct the
    violation of the Federal right, and is the least intrusive means necessary to correct the violation of

27  the Federal right."

28

1    improvement process is required as part of the constitutional remedy in this action to the same

2    extent as all other court-ordered remedies.

3            Defendants also suggest that "once compliance with a key indicator is durably

4    achieved, that requirement should be terminated from this case, as envisioned by this Court's

5    July 12, 2018 order." *Id*. (citing ECF No. 5852 at 8:12-17).  This contention is, at best,

6    premature.  As the September 3, 2020 order observes, the complex remedy for the persistent

7    Eighth Amendment violation identified in this action must be both fully implemented and durably

8    sustained.  *See* ECF No. 6846 at 29.  Defendants' ultimate constitutional obligation is to provide

9    the tens of thousands of seriously mentally ill inmates in their custody with "access to adequate

10   mental health care," *Coleman v. Wilson*, 912 F. Supp. at 1298, as well as to remedy the identified

11   custody-related violations of plaintiffs' constitutional rights.  Meeting that obligation will require

12   durable implementation of all material aspects of court-ordered relief as well as, ultimately,

13   demonstrating the ability to assume full responsibility for self-monitoring.  The question of

14   whether these remedial objectives can be achieved in full without full court supervision

15   continuing until they are met is not before the court at this time.

16           The court does not address the other arguments raised by the parties in response to

17   questions two and five, either because it would be premature to do so or because the issue

18   presented has already been addressed by the court.

19           After review of the parties' briefing, the court anticipates confirming that the

20   updated list of key indicators in CQIT that pertain to Program Guide requirements is properly

21   considered a comprehensive list of the material provisions of the Program Guide, that, taken as a

22   whole and met at the requisite degree of compliance, signals constitutionally adequate compliance

23   with the Program Guide.

24   IV.    ESTABLISHMENT OF PERCENT COMPLIANCE RATE FOR KEY
            INDICATORS
25

26           The third and sixth questions focus on the percent compliance rate for the

27   identified key indicators, and specifically ask why the court should not "confirm that a 90 percent

28   compliance rate for each key indicator for which the court has not previously expressly

                                              8

1  established a different compliance requirement will indicate, as to that key indicator, the

2  constitutional minimum has been met."  ECF No. 6846 at 25, 26.  Plaintiffs contend a 90 percent

3  compliance rate should be confirmed provisionally, "subject to resetting key indicators at a higher

4  level" if the review of a significant number of patient cases, which they suggest is required to

5  confirm the constitutional adequacy of defendants' delivery of mental health care, reveals

6  ongoing deficiencies.  ECF No. 6937 at 4; ECF No. 6969 at 7.  Defendants, on the other hand,

7  suggest "substantial compliance" is the appropriate standard "as opposed to rigid quantitative

8  percentages."  ECF No. 6936 at 12; ECF No. 6971 at 7-9.

9           The remedial phase of this action has proceeded on the principle that adequate and

10  durable implementation of the comprehensive set of remedial plans finally developed in this

11  action will achieve the constitutional remedy.  With the court's approval, the Special Master has

12  for years used a 90 percent compliance rate as the target for monitoring most of the key measures

13  in those plans.  Generally,  the court is inclined to confirm this compliance rate.  It will, however,

14  direct the Special Master to file findings and recommendations recommending different

15  compliance rates, if any, for one or more of the key indicators on the completed list, providing the

16  parties a final chance to weigh in before court approval.

17       V.    UPDATING CQIT

18           The court also required the parties to address whether the finalized CQIT "should

19  be subject to annual updates when the Program Guide and the Compendium are updated."

20  ECF No. 6846 at 24 n.11.  The parties appear to agree that CQIT must be updated as necessary to

21  remain congruent with the Program Guide and the Compendium, though they have some

22  differences over the precise method for assuring this congruence.  *Compare*  ECF No. 6937 at 5

23  *with* ECF No. 6936 at 9; ECF No. 6971 at 4.

24           The court previously has observed "[t]he 'key indicators' in CQIT are likely

25  equivalent to the material provisions of the Program Guide and the Compendium that may not be

26  modified without court approval," ECF No. 6846 at 24 n.11, and neither party disputes this.

27  Consistent with this determination, once the key CQIT indicators have been identified, defendants

28  will be required to seek leave of court before making any substantive change to any key CQIT

9

1    indicator.  They may do this by including a request for court approval of such changes with the

2    annual updates to the Program Guide and the Compendium, or they may file individual requests

3    for approval when they request court approval of modification to any material provision of the

4    Program Guide or the Compendium.  In either event, they shall include with the annual updates to

5    the Program Guide and the Compendium a certification that the requirements of this order have

6    been met together with a list identifying any material change to a key CQIT indicator or a

7    statement that no such changes have been made in the preceding year.  The court anticipates any

8    such changes will be rare given that the remedial planning for this action has been lengthy and

9    comprehensive, and is essentially complete.  *See, e.g.,* July 9, 2019 Order, ECF No. 6214, at 4;

10   Aug. 3, 2020 Order, ECF No. 6806, at 14; ECF No. 6846 at 3-4.  While defendants will also be

11   expected to update CQIT as necessary, if at all, to ensure it fulfills its equally important role in

12   enabling defendants to assume responsibility for self-monitoring and ending federal oversight,

13   they will not be required at this time to obtain court approval for updates outside those proposed

14   for key indicators.

15   VI.    ADMINISTRATIVE SEGREGATION UNIT (ASU) ENHANCED OUTPATIENT
16          PROGRAM  (EOP) TREATMENT IMPROVEMENT PLAN

17          The court's September 3, 2020 order also required the parties to address "why the

18   court should not confirm a 90 percent compliance rate for the required review of and compliance

19   with all elements of defendants' Administrative Segregation Unit Enhanced Outpatient Program

20   Treatment Improvement Plan (the Plan), including the conduct of a review every 30 days of all

21   EOP inmates housed in ASU hubs for over 90 days."  ECF No. 6846 at 27.  Plaintiffs contend

22   that (1) EOP inmates should no longer be housed in administrative segregation; or, at a minimum

23   (2) the entire EOP ASU Treatment Improvement Plan should be revisited; and (3) if EOP patients

24   remain in administrative segregation, the court should confirm the 90 percent compliance rate.

25   ECF No. 6937 at 10-11.  Defendants contend the court should not confirm the 90 percent

26   compliance rate for the Plan because the Plan "has been incorporated into the EOP Hub

27

28

1    certification process," which is being reviewed by the Special Master, and "because certain

2    indicators do not lend themselves to a numerical threshold."  ECF No. 6936 at 14-15.

3              While plaintiffs are not precluded from making an appropriate motion, the first

4    two issues raised by plaintiffs are not currently before the court and are not addressed by this

5    order.  Given the parties' agreement that the Plan has been incorporated into the EOP Hub

6    certification process and that the Special Master is currently reviewing that process, the court will

7    defer resolution of this question until the Special Master's review is complete, while maintaining

8    this issue as a very high priority.

9              In accordance with the above, IT IS HEREBY ORDERED that:

10             1.  Within **three months** from the date of this order, defendants shall, under

11             the supervision of the Special Master who may seek input from plaintiffs as

12             appropriate, update the key indicators in the Continuous Quality Improvement

13             Tool (CQIT) to reflect any changes required by the 2018 Update to the

14             Program Guide and the  Compendium of Custody Related Remedial Measures.

15             2.  Defendants shall file the updated list of key indicators within **three months**

16             from the date of this order.

17             3.  The court defers confirmation of the compliance rate for each key indicator

18             pending defendants' compliance with paragraph 2 of this order and

19             consideration of findings and recommendations filed by the Special Master, if

20             any, for a different compliance rate for one or more of the key indicators

21             followed by resolution by this court of objections, if any, to such findings and

22             recommendations.

23             4.  After the list of key CQIT indicators has been finalized, defendants will be

24             required to seek leave of court before making any substantive change to any

25             key CQIT indicator.  They may do this by including a request for court

26             approval of such changes with the annual updates to the Program Guide and

27             the Compendium, or they may file individual requests for approval when they

28             request court approval of any material provision of the remedy.  In either

1   event, defendants shall include with the annual updates to the Program Guide

2   and the Compendium their certification that the requirements of this order have

3   been met together with a list identifying any material change to a key CQIT

4   indicator or a statement that no such changes have been made in the preceding

5   year.

6   DATED:  December 16, 2020.

7

8   CHIEF UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28