| | |
|---|---|
| DONALD SPECTER – 083925<br>STEVEN FAMA – 099641<br>MARGOT MENDELSON – 268583<br>PRISON LAW OFFICE<br>1917 Fifth Street<br>Berkeley, California 94710-1916<br>Telephone: (510) 280-2621<br><br>CLAUDIA CENTER – 158255<br>DISABILITY RIGHTS EDUCATION<br>AND DEFENSE FUND, INC.<br>Ed Roberts Campus<br>3075 Adeline Street, Suite 210<br>Berkeley, California 94703-2578<br>Telephone: (510) 644-2555 | MICHAEL W. BIEN – 096891<br>JEFFREY L. BORNSTEIN – 099358<br>ERNEST GALVAN – 196065<br>LISA ELLS – 243657<br>THOMAS NOLAN – 169692<br>JENNY S. YELIN – 273601<br>MICHAEL S. NUNEZ – 280535<br>JESSICA WINTER – 294237<br>MARC J. SHINN-KRANTZ – 312968<br>CARA E. TRAPANI – 313411<br>ALEXANDER GOURSE – 321631<br>AMY XU – 330707<br>ROSEN BIEN<br>GALVAN & GRUNFELD LLP<br>101 Mission Street, Sixth Floor<br>San Francisco, California 94105-1738<br>Telephone: (415) 433-6830 |

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>      Plaintiffs,<br><br>  v.<br><br>GAVIN NEWSOM, et al.,<br><br>      Defendants. | Case No. 2:90-CV-00520-KJM-DB<br><br>**PLAINTIFFS' REPLY TO DEFENDANTS' OBJECTIONS TO SPECIAL MASTER'S TWENTY-EIGHTH ROUND MONITORING REPORT**<br><br>Judge: Hon. Kimberly J. Mueller |

[3708433.2]

On March 15, 2021, Defendants filed objections to the Special Master's Twenty-Eighth Round Monitoring Report ("Report"). Defs.' Objections, ECF No. 7082 (March 15, 2021). Because Defendants' objections to the Report are premised on erroneous or misleading arguments, Plaintiffs requested leave to file a response to Defendants' objections, *see* Request for Leave, ECF No. 7091 (March 18, 2021), which this Court granted, *see* Minute Order, ECF No. 7093 (March 19, 2021). Plaintiffs urge the Court to issue an order adopting the Report in full.

## I. DEFENDANTS' FIRST OBJECTION IS MERITLESS

Defendants' first objection is a mere distraction. They claim the Special Master was wrong to state that "defendants do not take issue with the findings of the Special Master that mental health care provided to the *Coleman* class is inadequate." Defs.' Objections, ECF No. 7082 at 2.[1] But the fact remains that Defendants have the ability to challenge any aspect of the Special Master's report under the Order of Reference, and they did not contest before the Special Master, and do not contest here, the core determination of the Special Master's report: that the care provided to the *Coleman* class remains woefully below the constitutional minimum. Indeed, the handful of underlying facts that Defendants have chosen to contest in their Objections only highlight the literally thousands of factual findings supporting the Special Master's ultimate conclusion Defendants do not dispute. The Special Master's statement is fundamentally accurate, and Defendants' objection should be rejected out of hand.

## II. THE REPORT PROPERLY CALCULATES TELEPSYCHIATRY VACANCY RATES SEPARATELY FROM OVERALL PSYCHIATRY VACANCY RATES

Defendants object to the Special Master's decision to calculate and report on the vacancy rate for telepsychiatry positions "because there are no fixed number of

---

[1] Pin cites in docket filings refer to ECF pagination where available and to internal pagination where ECF pagination is not available. Documents that were not filed using the ECF system or that are otherwise unavailable in digital form are cited as "Dkt. No." rather than "ECF No."

[3708433.2]

1

PLAINTIFFS' REPLY TO DEFENDANTS' OBJECTIONS TO SPECIAL MASTER'S
TWENTY-EIGHTH ROUND MONITORING REPORT

telepsychiatry positions and the Report does not indicate how the Special Master calculated the vacancy rate." Defs.' Objections, ECF No. 7082 at 2. Defendants cite no evidence in support of their factual assertion despite the requirement in the Order of Reference that they must establish clear error for this Court to disturb the Special Master's findings. *See* Order, Dkt. No. 640 at 8 (Dec. 11, 1995) ("Order of Reference").

Regardless, Defendants are wrong on both counts. The Report explains that the telepsychiatry vacancy rate is premised on data "from Defendants' Monthly Psychiatry Vacancy Report (ECF 6892 at page 5)." Twenty-Eighth Round Rpt., ECF No. 7074 at 90 n.35 (March 5, 2021). The cited Monthly Psychiatry Vacancy Report, in turn, lists the total number of "allocated" telepsychiatry positions systemwide and the total number of "filled" telepsychiatry positions systemwide. Monthly Psychiatry Vacancy Report, August 2020, ECF No. 6892 at 5 (Sept. 30, 2020). Defendants themselves designed the format for this report, which has been filed with the Court monthly for years. Yet they do not explain why they chose to identify a total number of "allocated" telepsychiatrist positions if there is "no fixed number" of such positions, or why or how it would be improper to calculate a system-wide vacancy rate for telepsychiatry positions by dividing the total number of "filled" positions by the total number of "allocated" positions. Defs.' Objections, ECF No. 7082 at 2. Nor do they dispute the Report's factual conclusion that the vacancy rate for telepsychiatrist positions was 18 percent based on the data Defendants provided at the time. *Id.*

Defendants' remaining objections to the Report's telepsychiatry findings are similarly meritless. Defendants argue that "the Report improperly calculated telepsychiatry vacancy rates separately from other psychiatry fill rates," and, citing nothing, assert that "[p]sychiatry vacancy rates have long been calculated according to the *total* number of allocated psychiatrists under the 2002 staffing order." Defs.' Objections, ECF No. 7082 at 2. For one thing, the Report *does* calculate a "combined vacancy rate for psychiatrists (onsite and telepsychiatrists)" in addition to a separate vacancy rate for telepsychiatry positions, and concludes that the combined vacancy rate for psychiatrists was 36 percent—

1 | more than three-and-a-half times the 10 percent maximum rate required by the Court's
2 | June 13, 2002 Order.  Twenty-Eighth Round Rpt., ECF No. 7074 at 90; *see also* Order,
3 | ECF No. 1383 at 4 (June 13, 2002).  And there is nothing improper about reporting on
4 | vacancies among sub-categories of psychiatry positions as well as an overall vacancy rate.
5 | The Special Master's longstanding practice has been to report on vacancies in specific
6 | categories of psychiatry positions.  In fact, he has reported on such vacancies in virtually
7 | every monitoring report since the monitoring phase of this case began nearly 25 years ago.
8 | *See, e.g.*, Second Round Monitoring Rpt., Dkt. No. 981 at 10, 17, 23, 31, 46 (Oct. 23,
9 | 1998) (reporting on vacant chief psychiatrist positions); Third Round Monitoring Rpt.,
10 | Dkt. No. 1036 at 41-42, 86, 121, 191, 205-06, 213 (May 26, 1999) (same); Fourth Round
11 | Monitoring Rpt., Dkt. No. 1093 at 22-23, 37, 70-71, 100, 109-10, 188, 202, 304 (Dec. 7,
12 | 1999) (same); Twenty-First Round Monitoring Rpt., ECF No. 3638-8 at 38-39 (July 31,
13 | 2009) (calculating separate vacancy rates for chief and senior psychiatry positions);
14 | Twenty-Second Round Monitoring Rpt., ECF No. 3990 at 400-01 (March 9, 2011) (same);
15 | Twenty-Third Round Monitoring Rpt., ECF No. 4124 at 44-45 (Dec. 1, 2011) (same);
16 | Twenty-Fifth Round Monitoring Rpt., ECF No. 4298 at 47, 52-53 (Jan. 18, 2013) (same);
17 | Twenty-Sixth Round Monitoring Rpt., ECF No. 5439 at 32 (May 6, 2016) (same);
18 | Twenty-Seventh Round Monitoring Rpt., ECF No. 5779 at 46 (Feb. 13, 2018) (same).
19 |     It is clearly appropriate for the Special Master to report the vacancy rate for
20 | telepsychiatry positions as well.  The underlying rationale for employing telepsychiatrists
21 | has always been the supposedly greater ease of filling such positions.  *See* Special Master's
22 | Rpt. on Staffing & Use of Force, Dkt. No. 974 at 2-3 (Sept. 22, 1998) (describing the use
23 | of "telemedicine" as a possible solution to the problem of "recruit[ing] and hir[ing] … in
24 | locations and classifications where it is difficult to attract good candidates"); *see also*
25 | Defs.' Jan. 10, 2017 Staffing Plan, filed as Exhibit B to Special Master Rpt. re: Mental
26 | Health Staffing, ECF No. 5564 at 41 (Feb. 6, 2017) (touting significant expansion of
27 | telepsychiatry plan as "critical" to address longstanding psychiatry vacancies due to
28 | telepsychiatry's purported ability to address "vacancies in hard to recruit areas" and to aid

[3708433.2]   3

PLAINTIFFS' REPLY TO DEFENDANTS' OBJECTIONS TO SPECIAL MASTER'S
TWENTY-EIGHTH ROUND MONITORING REPORT

1  in retention).  The fact that Defendants are not filling their allocated telepsychiatry
2  positions, like their allocated on-site positions, is relevant information for the Court to
3  consider if and when it returns to the question of whether additional staffing remedies are
4  needed.

## III. DEFENDANTS HAVE NOT DEMONSTRATED CLEAR ERROR IN ANY OF THE REPORT'S FACTUAL FINDINGS

7  Defendants also object to a few of the Report's factual findings relating to, *inter
8  alia*, claimed deficiencies in CSP – Corcoran's IEX pilot program and in-service training
9  sign-in sheets, the unavailability of grievance forms in housing units at CCI, and the
10  malfunctioning of swamp coolers at CIW.  *See* Defs.' Objections, ECF No. 7082 at 3-4.
11  But Defendants fail to provide any evidence whatsoever to substantiate their objections, let
12  alone the requisite proof of clear error.  *See id.*; Order of Reference at 8  (requiring
13  adoption of Special Master findings of fact "unless they are clearly erroneous").  "To be
14  clearly erroneous, a decision must strike the court as more than just maybe or probably
15  wrong; it must … strike [the court] as wrong with the force of a five-week-old, unrefrig-
16  erated dead fish." *McCormack v. Hiedeman*, 694 F.3d 1004, 1019 (9th Cir. 2012) (quoting
17  *Alaimalo v. United States*, 645 F.3d 1042, 1060 (9th Cir. 2011)).  Defendants essentially
18  ask this Court to accept their unsupported claims rather than the Special Master's diligent
19  factual findings, which are based on documents provided by Defendants and on-site tours
20  and exits attended by Defendants.  Based on nothing but their bare assertions, they demand
21  that this Court insert new findings into the Special Master's Report that the he declined to
22  make.  The careful process outlined in the Order of Reference is designed to preclude
23  exactly these sorts of attacks on the Special Master's careful monitoring.  Defendants'
24  unsupported allegations are plainly insufficient to establish clear error, and the Court
25  should adopt the Report's findings in full.
26  / / /
27  / / /
28  / / /

[3708433.2]

**CERTIFICATION OF ORDERS REVIEWED**

Plaintiffs' counsel certifies that he reviewed the following orders relevant to this filing: ECF and Dkt. Nos. 640, 1383, 7093.

DATED: March 24, 2021

Respectfully submitted,

ROSEN BIEN GALVAN & GRUNFELD LLP

By: */s/ Alexander Gourse*
    Alexander Gourse

Attorneys for Plaintiffs