MATTHEW RODRIQUEZ, State Bar No. 95976
Acting Attorney General of California
DAMON MCCLAIN, State Bar No. 209508
Supervising Deputy Attorney General
ELISE OWENS THORN, State Bar No. 145931
LUCAS HENNES, State Bar No. 278361
NAMRATA KOTWANI, State Bar No. 308741
Deputy Attorneys General
 1300 I Street, Suite 125
 P.O. Box 944255
 Sacramento, CA 94244-2550
 Telephone:  (916) 210-7318
 Fax:  (916) 324-5205
 E-mail:  Elise.Thorn@doj.ca.gov
*Attorneys for Defendants*

HANSON BRIDGETT LLP
PAUL B. MELLO, SBN 179755
SAMANTHA D. WOLFF, SBN 240280
DAVID C. CASARRUBIAS, SBN 321994
1676 N. CALIFORNIA BLVD., SUITE 620
WALNUT CREEK, CALIFORNIA 94596
TELEPHONE:  925-746-8460
FACSIMILE:  925-746-8490
*Attorneys for Defendants*

ROMAN M. SILBERFELD, State Bar No. 62783
GLENN A. DANAS, State Bar No. 270317
ROBINS KAPLAN LLP
 2049 Century Park East, Suite 3400
 Los Angeles, CA 90067-3208
 Telephone:  (310) 552-0130
 Fax:  (310) 229-5800
 E-mail:  RSilberfeld@RobinsKaplan.com
*Special Counsel for Defendants*

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

# SACRAMENTO DIVISION

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>GAVIN NEWSOM, et al.<br><br>Defendants. | Case No. 2:90-CV-00520- KJM-DB<br><br>**DEFENDANTS' RESPONSE TO PLAINTIFFS' OBJECTIONS TO DEFENDANTS' RESPONSE TO DECEMBER 17, 2020 ORDER RE CQIT INDICATORS [ECF NO. 7101]**<br><br>Judge:   Hon. Kimberly J. Mueller |

## INTRODUCTION

On March 17, 2021, adhering to the directives in this Court's December 17, 2020 Order (ECF No. 6969)[1] and February 18, 2021 Order (ECF No. 7064), Defendants filed CDCR's current

---

[1] References to page numbers for documents filed in the Court's Electronic Case Filing (ECF) system are to page numbers assigned by the ECF system.

list of "key indicators" for its Continuous Quality Improvement (CQI) process.[2] (ECF No. 7089.) On March 23, 2021, Plaintiffs filed a request for leave to file objections to Defendants' list of key indicators, including not only objections and argument regarding Defendants' list, but their own list of 58 measures they either want added to CQI or labeled as a "key indicator." (ECF No. 7101.) The Court granted Plaintiffs' request and accepted Plaintiffs' objections appended to the request for filing in the record. (ECF No. 7102.) On March 24, 2021, Defendants filed a request for leave to file a response to Plaintiffs' objections. (ECF No. 7104.) The Court granted Defendants' request in a bench order on March 25, 2021 and referred the matter to the Special Master for further consideration.

## ARGUMENT

Plaintiffs' objections misrepresent the status of the parties' positions on which indicators should be included to update CQI under the Court's December 17 and February 18 orders. The California Department of Corrections and Rehabilitation (CDCR) has worked closely with the Special Master for years on the Continuous Quality Improvement Tool (CQIT) and its list of indicators has continuously evolved. Indeed, the indicators listed in Defendants March 17 filing (ECF No. 7089-1) generally only track information currently part of the CQI process, which is still under development. The list of indicators is subject to revision and update as CDCR determines not only what is most helpful to measure, but also the specific way in which something should be measured.

With that background in mind, Defendants respond to Plaintiffs' objections. First, Plaintiffs improperly seek to renegotiate CQI to far exceed the items of the remedial plan previously included after years of work between the parties and the Special Master, going far afield from CQI's intended purpose and the limited scope of the Court's December 17 and February 18 orders. Among other problems, Plaintiffs want to include indicators that are already

---

[2] Defendants' filing includes "informational quality improvement indicators" which are not "key" indicators because they either do not measure Program Guide, Compendium, or court-ordered requirements, or they do not measure material provisions of the Program Guide, Compendium, or court orders, but are included within CQI to aid in quality improvement.

separately reported to the Court and those used in the ASU EOP Hub and PSU certification process.[3] (ECF No. 7101 at 6:18-7:18.) Second, Plaintiffs complain that Defendants' list omits many indicators already part of CQI while simultaneously disregarding the reasoning behind Defendants' list, which was carefully developed to improve CDCR's focus, avoid redundant and unnecessary indicators, and prevent the needless expansion of the scope and purpose of CQI. Demonstrating their lack of experience and expertise in actually designing and operating a correctional quality improvement system, Plaintiffs contend that CDCR can radically expand the number of key indicators it tracks without any detrimental impact on the core purposes that the system is meant to serve. But expanding CDCR's already long list of key indicators with many more key indicators, many of which are not yet even in existence, will directly impede the design and operation of CDCR's focused quality improvement system. Furthermore, mandating such an expansion would run afoul of the Prison Litigation Reform Act's needs-narrowness-intrusiveness requirement, which mandates that injunctive relief be "narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct the harm." 18 U.S.C. § 3626(a)(2).[4]

Plaintiffs also attempt to unilaterally redefine a "key" indicator as any item that measures functions that are "necessary to protect class members from serious harm and death." (ECF No. 7101 at 6:10-12; *accord* Reporter's Transcript, March 25, 2021 at 15:9-15, (Mr. Galvan: "We look at whether the indicator measures something that has an impact on whether our clients face a risk

---

[3] Notably, Defendants' ASU EOP Hub and PSU Hub certifications audits are taken from CQI, therefore, those indicators are already incorporated into the CQI process.

[4] In the Court's view, "key" indicators track material provisions of the Program Guide, Compendium, and court orders, which, when "taken as a whole and met at the requisite degree of compliance, signal constitutionally adequate compliance." (*See* ECF No. 6996 at 8:20-23.) At the same time, Defendants have noted that not all of the *specific* Program Guide, Compendium, or court-ordered requirements that may be tracked by a key indicator reflect a constitutional requirement. For example, patients need to be referred to mental health clinicians in a timely manner under the Eighth Amendment ("Timely MH Referrals"), but the specific timeframes within the Program Guide for mental health referrals are policy choices informed by community and correctional best practices; they do not necessarily reflect Defendants' understanding of what the Eighth Amendment requires. Work continues to translate the "key" indicators into specific criteria to measure the key indicators as part of a CQI assessment.

of serious injury or death due to inadequacies in the mental health system. So that's - - when we ask to add things to the list, that's our filter. It's more based on the risks that our clients face than anything procedural about the status of an order requiring it.").) And they do so while saying that "Plaintiffs' counsel does not insist that every single indicator is 'key' to measuring compliance" (ECF No. 7101 at 6:15-17), but that is essentially the malleability that counsel's "filter" provides. Plaintiffs' definition is much broader than the Court's own definition and goes beyond any reasonable standard when used to evaluate whether CDCR is providing mental health services consistent with constitutional requirements.

Finally, Defendants note that the list of CQI indicators Defendants provided was based on actual indicators that have been used in CQI, with the exception of a few indicators that Defendants agreed to add at Plaintiffs' request. Accordingly, it is both improper and objectionable for Plaintiffs to take the title of an indicator and construe it to mean something it was not built for—something they do throughout their objections. (*See* §§ 2., 5., 16., 18., 32., 37., *infra.*)

For all of these reasons, the Court should overrule Plaintiffs' objections and deny their request for additional indicators. In addition, to complete the record, Defendants further address Plaintiffs' incomplete and one-sided points in turn.

1. Treatment Attended.

Plaintiffs want the "Treatment Attended" indicator to be treated as a key indicator instead of an informational indicator purportedly to "ensure that treatment obstacles such as scheduling, lock downs, and shortage of custody staff do not prevent the actual provision of treatment." (ECF No. 7101 at 8:17-27) Ultimately, the requirement is for Defendants to provide appropriate *access* to care.[5] (ECF No. 6996 at 8.) Accordingly, Treatment Offered is the appropriate measure and that is already included in CQI as a key indicator. (ECF No. 7089-1 at 2.)

2. Programs With More Than One Type of Group Offered.

Plaintiffs want "Programs With More Than One Type of Group Offered" included in

---

[5] Also, because patients have the ability to refuse treatment, measuring treatment attended as a key indicator could lead to absurd results such as low compliance rates based on a variable entirely in the plaintiffs' control.

1   Defendants' list and treated as a key indicator. (ECF No. 7101 at 9:1-15.) However, this indicator
2   does not provide information necessary to determine whether appropriate care is being provided at
3   institutions, does not assist with quality improvement, and importantly, does not measure a
4   Program Guide requirement. This indicator was built to monitor CCCMS programs, and while
5   CCCMS patients may have group treatment, it is not required.

6   Furthermore, Plaintiffs' request that the indicator be "corrected" to include EOP programs
7   is misplaced. (ECF No. 7101 at 9:14.) The list of CQI indicators Defendants provided was based
8   on actual indicators that have been used in CQI, with the exception of a few indicators that
9   Defendants agreed to add at Plaintiffs' request. It is improper for Plaintiffs to take the title of an
10  indicator and construe it to mean something it was not built for, such as EOP programs. In any
11  event, the "Treatment Offered" indicator (ECF No. 7089-1 at 2) already measures the number of
12  structured treatment hours offered to patients at the EOP level of care.

13          3.      SREs that Met All Audit Criteria.

14  Plaintiffs want "Suicide Risk Evaluations that Met All Audit Criteria," which is on
15  Defendants' list as an informational indicator (ECF No. 7089-1 at 3), to be treated as a key
16  indicator (ECF No. 7101 at 9:16-24). In its current form, this indicator looks at numerous audit
17  criteria which may change as best practices change. Further, there may be parts of the audit that
18  are directly related to quality improvement and not based on a material part of the Program Guide.
19  Accordingly, it should remain as an informational indicator only.

20  However, as CDCR noted in its March 17 filing, it is currently working on a Suicide
21  Prevention and Response Focused Improvement Team (SPRFIT) Reboot which will include
22  creating an automated SPRFIT report. (ECF No. 7089-1 at 2 n.1.) CDCR is also working on a
23  Suicide Prevention CQI Audit. (*Id*.) Once these items are complete, CDCR will incorporate the
24  appropriate indicators into the larger CQI process and determine what is key and what is
25  informational at a later time. (*Id*.)

26          4.      5-Day Follow-Ups With Documentation of Current Suicidality.

27  Plaintiffs want "5-Day Follow-Ups With Documentation of Current Suicidality," which is
28  on Defendants' list as an information indicator (ECF No. 7089-1 at 3), to be treated as a key

indicator (ECF No. 7101 at 9:25-10:5). As Defendants have previously indicated, Defendants are willing to continue discussions with the Special Mater and Plaintiffs' counsel on what is appropriate to include in the CQI process, including this indicator. (*See also* § 3., *supra*, (a related SPRFIT Reboot and Suicide Prevention CQI audit is currently under development).)

5. Discharges from MHCB with Clinician Review of Discharge (D/C) Summary.

Plaintiffs want "Discharges from MHCB with Clinician Review of D/C Summary" to be treated as a key indicator because it allegedly measures a Program Guide requirement that the Chief of Mental Health at the receiving institution will audit the implementation of the discharge plan and follow-up care. (ECF No. 7101 at 10:6-15.) However, the indicator in question does not audit the portion of the Program Guide cited by Plaintiffs' counsel. Instead, the indicator measures whether the clinician at the receiving program reviewed the MHCB discharge summary. (See ECF No. 7089-1 at 3.) The list of CQI indicators Defendants provided was based on actual indicators that have been used in CQI, with the exception of a few indicators that Defendants agreed to add at Plaintiffs' request. It is improper for Plaintiffs to take the title of an indicator and construe it to mean something it was not built for.

6. Percentage of Patients in Alt Housing with a Bed.

Plaintiffs want "Percentage of Patients in Alt Housing with a Bed," which is on Defendants' list as an informational indicator (ECF No. 7089-1 at 3), to be treated as a key indicator (ECF No. 7101 at 10:16-28). There are other indicators or reports to the Court that look at alt housing and MHCB transfers and whether suicide watch is being conducted appropriately, and those are the items that are material to suicide prevention.

7. IDTTs Meeting All Audit Criteria.

Plaintiffs want "IDTTs Meeting All Audit Criteria," which is on Defendants' list as an informational indictor (ECF No. 7089-1 at 4), to be treated as a key indicator (ECF No. 7101 at 11:1-14). As with other indicators that related to meeting audit criteria, Defendants consider this indicator to be informational because the audit criteria is based on requirements and best practices which may be above and beyond what is required by the Program Guide.

8.  IDTTs Observed in which Management of Patients Resistant to Treatment (TX) is Addressed Through an Individualized TX Intervention and Goals With Custody Input.

Plaintiffs want "IDTTs Observed in which Management of Patients Resistant to TX is Addressed Through an Individualized TX Intervention and Goals With Custody Input," which is on Defendants' list as an informational indicator (ECF No. 7089-1 at 4), to be treated as a key indicator (ECF No. 7101 at 11:15-17). This indicator is an on-site audit and will only apply to patients who are resistant to treatment in observed IDTTs. While this information is potentially important for quality improvement, it is not material because it is a relatively small data point.

9.  IDTTs with Measurable Treatment Goals.

Plaintiffs want "IDTTs with Measurable Treatment Goals," which is on Defendants' list as an informational indicator (ECF No. 7089-1 at 4), to be treated as a key indicator (ECF No. 7101 at 11:18-19). The questions for this audit are similar to those used for the "IDTTs Meeting All Audit Criteria." Accordingly, it should remain as an informational indicator only for the reasons stated above. (*See* § 7., *supra*.)

10. Patients Without Conflicting Diagnoses.

Plaintiffs want "Patients Without Conflicting Diagnosis [*sic*]," which is on Defendants' list as an informational indicator (ECF No. 7089-1 at 5), to be treated as a key indicator (ECF No. 7101 at 11:20-28). This indicator provides information regarding how often a patient has conflicting diagnoses that need to be resolved and can assist in quality improvement. However, because there may be many legitimate reasons why a patient has conflicting diagnoses, this indicator is not material and should remain informational only.

11. EOP and CCCMS with No Provisional Rule Out Diagnosis (DX) Over 90 Calendar Days.

Plaintiffs want "EOP and CCCMS with No Provisional Rule Out DX Over 90 Calendar Days," which is on Defendants' list as an informational indicator (ECF No. 7089-1 at 5), to be treated as a key indicator (ECF No. 7101 at 12:1-3). For the same reasons stated above, this indicator is not material and should remain informational. (*See* § 10., *supra*.)

12. RVRs issued in violation of Title 15 section 3317.2 or for refusing to attend a ducated mental health appointment.

Plaintiffs want "RVRs issued in violation of Title 15 section 3317.2 or for refusing to attend a ducated mental health appointment" included as a key indicator and state that Defendants propose to decommission this indicator although it was previously included in CQI. (ECF No. 7101 at 12:4-14.) However, this is incorrect. During negotiations, Plaintiffs asked that an indicator be created to measure this issue. Indicators are not created to prove a negative, which is what Plaintiffs seem to be requesting. Notwithstanding, CDCR agreed to include a question in one of the indicators regarding RVRs with an on-site audit regarding whether any of the RVRs in the sample were given in violation of Title 15 of the California Code of Regulations, section 3317.2, or refusing to attend a ducated mental health appointment. CDCR does not agree that a separate indicator is necessary.

13. RVRs Recommended for Mitigation That Were Mitigated.

Plaintiffs want "RVRs Recommended for Mitigation That Were Mitigated" included as a key indicator. (ECF No. 7101 at 12:15-13:1.) However, Defendants' CQI already includes as a key indicator "RVRs Recommended for Mitigation with Documentation of Consideration of Mitigation," which is designed to look at this issue and actually measures the same information in a slightly different way. (ECF No. 7089-1 at 5.) Accordingly, this indicator is redundant.

14. Percentage of RVRs that Were Mitigated.

Plaintiffs want "Percentage of RVRs that Were Mitigated" included as a key indicator. (ECF No. 7101 at 13:2-6.) As explained above, Defendants' CQI already includes as a key indicator "RVRs Recommended for Mitigation with Documentation of Consideration of Mitigation," which is designed to look at this issue and actually measures the same information in a slightly different way. (ECF No. 7089-1 at 5.) Accordingly, this indicator is similarly redundant.

15. RVRs Requiring MHAs Where Officer Agreed with MH Clinicians Recommendation for Alternative Documentation of Behavior.

Plaintiffs want "RVRs Requiring MHAs Where Officer Agreed with MH Clinicians Recommendation for Alternative Documentation of Behavior" included as a key indicator. (ECF

No. 7101 at 13:7-12.) However, Defendant's CQI process currently has other indicators that look at whether custody staff are taking clinician recommendations into account when determining whether to mitigate or document behavior in an alternative manner. Accordingly, including this indicator unnecessary.

16. Compare Percent of Inmates Overall that Received RVRs with Percentage of MH Inmates that Received RVRs.

Plaintiffs want "Compare Percent of Inmates Overall that Received RVRs with Percentage of MH Inmates that Received RVRs," which is on Defendants' list as an informational indicator (ECF No. 7089-1 at 7), included as a key indicator. (ECF No. 7101 at 13:16-22.) However, this indicator is simply a comparison of the RVRs received by inmates overall versus *Coleman* class members. The list of CQI indicators Defendants provided was based on actual indicators that have been used in CQI, with the exception of a few indicators that Defendants agreed to add at Plaintiffs' request. It is improper for Plaintiffs to take the title of an indicator and construe it to mean something it was not built for, as they do here. While the indicator may provide helpful information, it does not measure any particular requirement from the Program Guide, Compendium, or court order. Therefore, the indicator is appropriately categorized as informational.

17. RVR MH Assessments Conducted in Private Setting.

Plaintiffs want "RVR MH Assessments Conducted in Private Setting" which is included on Defendants' list as an informational indicator (ECF No.7089-1 at 7) to be treated as a key indicator (ECF No. 7101 at 13:16-22). While it is ideal to interview a patient in a private setting, the information provided during the RVR MH assessment is not confidential. Because privacy is not an essential requirement, this should remain as an informational indicator only.

18. Use of Force Involving MH Inmates.

Plaintiffs want "Use of Force Involving MH Inmates," which is included on Defendants' list as an informational indicator (ECF No. 7089-1 at 5), to be treated as a key indicator (ECF No. 7101 at 13:23-14:2). This is not a traditional indicator, but is instead a number of the use of force incidents over the reporting period involving MH inmates. It is not measured as a percentage. As

mentioned above, the list of CQI indicators Defendants provided was based on actual indicators that have been used in CQI, with the exception of a few indicators that Defendants agreed to add at Plaintiffs' request. It is improper for Plaintiffs to take the title of an indicator and construe it to mean something it was not built for, such as EOP programs.

19. Warden Review of Cases Over 90 Days.

Plaintiffs want "Warden Review of Cases Over 90 Days" which is included on Defendants' list as an informational indicator (ECF No. 7089-1 at 7) to be treated as a key indicator (ECF No. 7101 at 14:3-20). While warden reviews are required, they are simply reviews to see if a patient can be released from segregation before their scheduled Minimum Eligible Release Date. An assessment was already done during the RVR to determine whether mental health affected the patient's behavior and mitigations were recommended. Furthermore, if a patient is decompensating, the IDTT can always recommend the patient be seen in ICC and removed from MAX or can refer to a higher level of care.

Ideally, Defendants would like to get patients out of segregation early. However, a review to see if a patient can be released from segregation early is not key, especially because there is no requirement that the patient actually be released from segregation. As such, it is properly included on Defendants' list as an informational indicator only.

20. EOP Hub CCII and Captain Review for Length of Stay (LOS) Over 90 Days.

Plaintiffs want "EOP Hub CCII and Captain Review for LOS Over 90 Days," which is included on Defendants' list as an informational indicator (ECF No. 7089-1 at 7), to be treated as a key indicator (ECF No. 7101 at 14:21-22). For the reasons stated above, this indicator is appropriately labeled as informational only. (*See* § 19., *supra*.)

21. Percentage of Inmates with LOS Over 150 Days in which ASU Case Reviews were Completed On Time.

Plaintiffs want "Percentage of Inmates with LOS Over 150 Days in which ASU Case Reviews were Completed On Time," which is included on Defendants' list as an informational indicator (ECF No. 7089-1 at 7), to be treated as a key indicator (ECF No. 7101 at 14:23-28). For the reasons stated above, this indicator is appropriately labeled as informational only. (*See* § 19.,

*supra*.)

22. Percentage of Initial ICCs Reviewed and Held within 10 Calendar Days of Arrival.

Plaintiffs want "Percentage of Initial ICCs Reviewed and Held within 10 Calendar Days of Arrival," which is included on Defendants' list as an informational indicator (ECF No. 7089-1 at 7), to be treated as a key indicator (ECF No. 7101 at 15:1-8). Plaintiffs reference a remedy from the 2014 segregation trial in support of their objection, but that remedy is about Non-Disciplinary Segregation (NDS) transfers. It requires patients who meet the criteria for accelerated transfer to be transferred within 72 hours of their initial ICC. The timeline for the initial ICC was not part of that remedy.

Moreover, the 10 day timeline is applicable to all inmates, not just those who are NDS and appropriate for accelerated transfer. In any event, there is a separate indicator that looks at timely transfers for those NDS patients. Thus, Defendants appropriately labeled this indicator as informational only.

23. Percentage of ASU Welfare Check Summaries Reviewed and Signed by Custody Supervisors.

Plaintiffs want "Percentage of ASU Welfare Check Summaries Reviewed and Signed by Custody Supervisors" included as a key indicator. (ECF No. 7101 at 15:9-14.) In doing so, Plaintiffs suggest that Defendants are no longer measuring Guard One checks. However, the indicator they reference only deals with review of welfare check summaries and not Guard One checks. Defendants included in their list as a key indicator "Untimely ASU Welfare Checks Audited" which looks at whether the Guard One checks were timely completed. (ECF No. 7089-1 at 6.) As such, this indicator is unnecessary.

24. High Refusers Due to Custody Reasons with Documented Plan of Action.

Plaintiffs want "High Refusers Due to Custody Reasons with Documented Plan of Action," which is included on Defendants' list as an informational indicator (ECF No. 7089-1 at 7), to be treated as a key indicator (ECF No. 7101 at 15:15-19). This indicator measures how many 128Bs included a plan of action to address the reasons for high refusals and is focused on a solution rather than a process. However, Defendants are willing to continue discussions with the Special

Mater and Plaintiffs' counsel on what is appropriate to include in the CQI process as a key indicator.

25. Percentage of Psych Tech Round Documentation That Meets All Audit Criteria.

Plaintiffs want "Percentage of Psych Tech Round Documentation That Meets All Audit Criteria," which is included on Defendants' list as an informational indicator (ECF No. 7089-1 at 7), to be treated as a key indicator (ECF No. 7101 at 15:20-16:6). However, Defendants generally considered all indicators that are about meeting audit criteria as informational because the audit criteria are based on both requirements and best practices, which may be above and beyond what is required by the Program Guide. Audit criteria also change as best practices evolve. (*See also* § 3., *supra*.) (A related SPRFIT Reboot and Suicide Prevention CQI audit is currently under development).

26. Percentage of PT Rounds Documented While at Cell Front.

Plaintiffs want "Percentage of PT rounds Documented While at Cell Front," which is included on Defendants' list as an informational indicator (ECF No. 7089-1 at 7), to be treated as a key indicator (ECF No. 7101 at 16:7-8). For the reasons stated above, this indicator is appropriately labeled as informational only. (*See* § 25., *supra*.)

27. Psych Tech Rounds Where EC and Interaction with Patient are Achieved/Attempted and Appropriate Referrals are Made as Indicated.

Plaintiffs want "Psych Tech Rounds Where EC and Interaction with Patient are Achieved/Attempted and Appropriate Referrals are Made as Indicated," which is included on Defendants' list as an informational indicator (ECF No. 7089-1 at 7), to be treated as a key indicator (ECF No. 7101 at 16:9-11). For the reasons stated above, this indicator is appropriately labeled as informational only. (*See* § 25., *supra*.)

28. Percentage of Psych Tech Rounds meeting General Process Requirements.

Plaintiffs want "Percentage of Psych Tech Rounds meeting General Process Requirements," which is included on Defendants' list as an informational indicator (ECF No. 7089-1 at 7), to be treated as a key indicator (ECF No. 7101 at 16:12-14). For the reasons stated above, this indicator is appropriately labeled as informational only. (*See* § 25., *supra*.)

29. Percentage of Nursing Staff Current with CPR Training.

Plaintiffs want "Percentage of Nursing Staff Current with CPR Training," which is included on Defendants' list as an informational indicator (ECF No. 7089-1 at 7), to be treated as a key indicator because it is purportedly a part of the Special Master's suicide expert's fourth re-audit's Recommendation 32 (ECF No. 7101 at 16:15-16 citing *id*. at 15:20-16:6). However, contrary to Plaintiffs' representation, this indicator was not included in the Special Master's suicide expert's Recommendation 32 which deals with MHCB practices for possessions and privileges. (*See* ECF Nos. 6879 at 23, 6879-1 at 16-19.) It is properly labeled as informational only.

30. Custody Officers with CPR Training.

Plaintiffs want "Custody Officers with CPR Training" which is included on Defendants' list as an informational indicator (ECF No. 7089-1 at 7) to be treated as a key indicator (ECF No. 7101 at 16:17-18). For the reasons stated above, this indicator is appropriately labeled as informational only. (*See* § 29., *supra*.)

31. Percentage of Peace Officers Observed to Carry their CPR Mouth Shield.

Plaintiffs want "Percentage of Peace Officers Observed to Carry their CPR Mouth Shield," which is included on Defendants' list as an informational indicator (ECF No. 7089-1 at 7), to be treated as a key indicator (ECF No. 7101 at 16:19-20). This is included in the Program Guide, but because it does not appear to be a material requirement, Defendants labeled it as informational only. This indicator is also appropriately labeled as informational only for the reasons stated above. (*See* § 29., *supra*.)

32. Percentage of Eligible MHSDS Patients Receiving Milestone Credits.

Plaintiffs want "Percentage of Eligible MHSDS Patients Receiving Milestone Credits," which is included on Defendants' list as an informational indicator (ECF No. 7089-1 at 7), to be treated as a key indicator (ECF No. 7101 at 16:21-17:1). Notably, it appears that Plaintiffs are taking the title of this indicator and misrepresenting what the indicator was actually built to measure, namely, the percentage of eligible patients who are receiving credits. Patients must actually attend the appropriate groups to receive the credits. Accordingly, this indicator is not

necessarily indicative of any issue with patient care or quality improvement and is appropriately categorized as informational.

33. Adequate Group Treatment Space.

Plaintiffs want "Adequate Group Treatment Space," which is included on Defendants' list as an informational indicator (ECF No. 7089-1 at 8), to be treated as a key indicator (ECF No. 7101 at 17:2-10). The ultimate issue being measured by this indicator is whether patients are offered an adequate amount of treatment. This is measured in numerous different key indicators including Treatment Offered, timely contacts, timely referrals, and Timely IDTTs. (ECF No. 7089-1 at 2.) If those indicators are being met, then it is unnecessary to measure adequate space. If they are not being met, then CDCR should assess the barriers at each institution and address those barriers individually. Accordingly, this indicator is properly labeled informational only.

34. Adequate IDTT Space.

Plaintiffs want "Adequate IDTT Space," which is included on Defendants' list as an informational indicator (ECF No. 7089-1 at 8), to be treated as a key indicator (ECF No. 7101 at 17:11-16). For the reasons stated above, this indicator is appropriately labeled as informational only. (*See* § 33., *supra*.)

35. Adequate Individual Treatment Space.

Plaintiffs want "Adequate Individual Treatment Space," which is included on Defendants' list as an informational indicator (ECF No. 7089-1 at 8), to be treated as a key indicator (ECF No. 7101 at 17:17-18). For the reasons stated above, this indicator is appropriately labeled as informational only. (*See* § 33., *supra*.)

36. Percentage of Clinical Restraint Occurrences Meetings [*sic*] All of the Audit Criteria.

Plaintiffs want "Percentage of Clinical Restraint Occurrences Meetings [*sic*] All of the Audit Criteria," which is included on Defendants' list as an informational indicator (ECF No. 7089-1 at 8), to be treated as a key indicator (ECF No. 7101 at 17:19-25). As with other indicators that related to meeting audit criteria, Defendants consider this indicator to be informational because the audit criteria is based on requirements and best practices which may be above and

beyond what is required by the Program Guide.

37. Seclusion Duration and Seclusion Rate.

Plaintiffs want "Seclusion Duration" and "Seclusion Rate," which are included on Defendants' list as an informational indicator (ECF No. 7089-1 at 9), to be treated as a key indicator (ECF No. 7101 at 17:26-18:12). As with other indicators (*see* §§ 2., 32., *supra*) Plaintiffs are taking the title of this indicator and misrepresenting what the indicator was actually built to measure in order to argue that it measures every conceivably remedy related requirement in the Program Guide. That is incorrect. As Defendants have previously told Plaintiffs, CDCR agrees to measure the frequency and the duration of seclusion incidents.

The frequency of seclusion is the seclusion rate which is just a number. Seclusion duration is also just a number. These indicators are not measuring compliance with a policy. Therefore, the numbers are informational.

38. Keeping Patients in the EOP Minimum of 90 Days After Segregation Discharge.

Plaintiffs request that an indicator be developed that measures whether patients are retained at the EOP level of care for a minimum of 90 days after release from segregation. (ECF No. 7101 at 18:19-23.) They state that this indicator is "an essential measure of the system's ability to prevent harm to patients caused by segregation stays" (*id.*) but they are asking for a process indicator that doesn't actually look at harm or whether it is occurring. Instead, they are looking to see if patients were kept in EOP for 90 days. That does not measure the system's ability to do anything except keep a patient in a particular level of care (whether they need it or not) for a period of time.

Because Plaintiffs have not identified whether there is an actual issue—such as patient decompensation after release from segregation and placement in the CCCMS level of care—that needs to be measured in CQI, Defendants object to the development of this process-type indicator.

39. Mental Health Crisis Bed Intake Assessments.

Plaintiffs request that an indicator be developed that measures mental health crisis bed intake assessments. (ECF No. 7101 at 18:24-28.) However, Defendants already agreed to include an indicator to measure whether the MHCB Intake Assessment is occurring and included it *as a*

-15-   Case No. 2:90-CV-00520- KJM-DB
174401110.6
DEFENDANTS' RESPONSE TO PLAINTIFFS' OBJECTIONS LIST OF KEY CQIT INDICATORS

*key indicator* in their March 17 filing. (*See* ECF No. 7089-1 at 4 ("Timely MHCB Intake Evaluations").) This request is moot.

40.   Psychiatrist Services Unit Behavioral Incentive Programs.

Plaintiffs request that an indicator be developed that measures the proper operation of Psychiatrist Services Unit (PSU) Behavioral Incentive Programs (BIP). (ECF No. 7101 at 19:1-5.) Defendants do not agree that CQI should include an audit of whether or not the PSUs have a BIP or how the BIP is functioning. CQI already includes indicators that measure whether patients in segregation are receiving the appropriate out of cell time and appliances. Additionally, Plaintiffs receive information regarding the number of patients in the BIP in the SAC PSU on a monthly basis. Accordingly, an audit question in CQIT on this issue is unnecessary.

41.   Documentation of Custody-Clinical Contacts.

Plaintiffs request that an indicator be developed that tracks the documentation of custody-clinical contacts. (ECF No. 7101 at 19:6-12.) However, as Defendants have previously told Plaintiffs, CDCR does not have a system in place to include such data in an indicator. More to the point, this is a process issue and is not necessary to provide adequate care. Plaintiffs say that such an indicator is necessary to "address custody-based obstacles to care." (*Id*. at 19:11.) However, even if CDCR could create an indicator to track whether all staff that were consulted about a patient are named in the patient's chart, it would not serve the function of addressing custody-based obstacles to care as Plaintiffs' assert.

42.   5-Day Follow Ups After Discharge from Intermediate and Acute Inpatient Care.

Plaintiffs request that an indicator be developed that measures 5-day follow ups after discharge from intermediate and acute inpatient care. (ECF No. 7101 at 19:13-20.) As explained in their March 17 filing, Defendants are working on a separate Suicide Prevention CQIT which will include indicators to measure many of the suicide prevention requirements. (ECF No. 7089-1 at 2 n.1.) Regardless, the "Timely Discharge Follow Ups" indicator currently measured in CQI includes discharge from PIPs. (ECF No. 7089-1 at 3.) As such, Plaintiffs request is premature, unnecessary, or both.

43.   CCCMS Class Members Minimum Support Facilities.

1  Plaintiffs request that an indicator be developed that shows the level of CCCMS class
2  members in Minimum Support Facilities (MSFs). (ECF No. 7101 at 19:21-26.) This indicator is
3  unnecessary because each CQI report contains census information regarding the institutions'
4  various levels of care. In addition, as Defendants previously told Plaintiffs, CDCR will include the
5  number of CCCMS patients in MSFs at applicable institutions in future CQIT reports as census
6  information. An indicator does not need to be developed.

7  44.  Non-disciplinary Segregation.

8  Plaintiffs request that an indicator be developed that measures compliance with NDS
9  procedures, training, and other processes. (ECF No. 7101 at 19:27-20:4.) Defendants' March 17
10 filing included as a key indicator: "Unit in which Staff Can Identify NDS Patients and Have
11 Tracking Systems for Phone Calls & Property." (ECF No. 7089-1 at 7.) This on-site audit looks at
12 whether segregation units have tracking logs for property and privileges for NDS inmates and
13 whether those patients who are appropriate for accelerated transfer are transferred timely.

14 Plaintiffs' request goes beyond what Defendants already measure and seems to request that
15 CQIT audit whether patients are appropriately placed on NDS status and that they receive
16 appropriate property. The training referenced in the memos cited by Plaintiffs was a one-time
17 training, and thus, is unnecessary to track. Furthermore, patients' NDS status and property are
18 routinely reviewed on-site through classification committees, which occur at least as required by
19 Title 15 of the California Code of Regulations, more often when needed, or when a patient
20 requests a classification committee. If a patient does not believe that he or she is classified
21 appropriately, the patient can ask for another program review or submit an appeal. Given the
22 robust review process already in place, no additional indicators need to be developed.

23 45.  Controlled Versus Immediate Uses of Force.

24 Plaintiffs request that an indicator be developed that evaluates controlled versus immediate
25 uses of force. (ECF No. 7101 at 20:5-16.) However, CDCR already has a robust use of force
26 review process. Institutions review all use of force incidents. Headquarters reviews all use of force
27 incidents resulting in great bodily injury or death or any other incident referred to the
28 Headquarters review process. Given the robust review process already in place, no further

indicators are needed. Additionally, the number of controlled and immediate use of force incidents during the review period are already included in CQI reports.

      46.      Procedures for Mental Health Assessment of Inmate Indecent Exposure and Treatment for Exhibitionism.

Plaintiffs request that an indicator be developed that measures treatment of patients with exhibitionism or those who engaged in indecent exposure or related behaviors. (ECF No. 7101 at 20:17-23.) However, treatment for any diagnosis is already measured in Defendants' CQI process and can be found by looking at treatment plans. (ECF No. 7089-1 at 4 (listing key indicators that include treatment plans).) No other indicators are necessary.

      47.      Least Restrictive Housing in Inpatient Settings.

Plaintiffs request an indicator to measure the requirements of the June 30, 2017 Least Restrictive Housing (LRH) policy. (ECF No. 7101 at 20:24-21:10.) As Plaintiffs are well aware, Defendants agreed to develop an audit which will include an LRH review and will incorporate it into the CQI process once all PIP measures are developed. This request is moot.

## **CONCLUSION**

For all of these reasons, the Court should overrule Plaintiffs' objections and deny their request for additional indicators.

DATED: April 1, 2021                        HANSON BRIDGETT LLP

By:    *s/ Paul B. Mello*
      PAUL B. MELLO
      SAMANTHA D. WOLFF
      DAVID C. CASARRUBIAS
      Attorneys for Defendants

| | | |
|---|---|---|
| 1 | DATED:  April 1, 2021 | Respectfully Submitted, |
| 2 | | Matthew Rodriquez |
| 3 | | Acting Attorney General of California<br>Damon McClain |
| 4 | | Supervising Deputy Attorney General |
| 5 | | By:    *s/ Elise Owens Thorn* |
| 6 | | ELISE OWENS THORN<br>Deputy Attorney General |
| 7 | | Attorneys for Defendants |

-19-    Case No. 2:90-CV-00520- KJM-DB
DEFENDANTS' RESPONSE TO PLAINTIFFS' OBJECTIONS LIST OF KEY CQIT INDICATORS