MATTHEW RODRIQUEZ, State Bar No. 95976
Acting Attorney General of California
MONICA N. ANDERSON, State Bar No. 182970
Senior Assistant Attorney General
DAMON MCCLAIN, State Bar No. 209508
Supervising Deputy Attorney General
ELISE OWENS THORN, State Bar No. 145931
LUCAS HENNES, State Bar No. 278361
NAMRATA KOTWANI, State Bar No. 308741
Deputy Attorneys General
 1300 I Street, Suite 125
 P.O. Box 944255
 Sacramento, CA 94244-2550
 Telephone: (916) 210-7323
 Fax: (916) 324-5205
 E-mail: Lucas.Hennes@doj.ca.gov
*Attorneys for Defendants*

HANSON BRIDGETT LLP
PAUL B. MELLO, State Bar No. 179755
SAMANTHA D. WOLFF, State Bar No. 240280
LAUREL E. O'CONNOR, State Bar No. 305478
DAVID C. CASARRUBIAS, State Bar No. 321994
 1676 N. California Boulevard, Suite 620
 Walnut Creek, CA 94596
 Telephone: (925) 746-8460
 Fax: (925) 746-8490
 E-mail: PMello@hansonbridgett.com
*Attorneys for Defendants*

ROMAN M. SILBERFELD, State Bar No. 62783
GLENN A. DANAS, State Bar No. 270317
ROBINS KAPLAN LLP
 2049 Century Park East, Suite 3400
 Los Angeles, CA 90067-3208
 Telephone: (310) 552-0130
 Fax: (310) 229-5800
 E-mail: RSilberfeld@RobinsKaplan.com
*Special Counsel for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **RALPH COLEMAN, et al.,**<br><br>                    Plaintiffs,<br><br>    v.<br><br>**GAVIN NEWSOM, et al.,**<br><br>                    Defendants. | 2:90-cv-00520 KJM-DB (PC)<br><br>**DEFENDANTS' RESPONSE TO ORDER TO SHOW CAUSE** |

### INTRODUCTION

The Court "tentatively" believes that "retrospective findings on the issues raised at" the October 23, 2020 hearing would be pointless because recent events have mooted those issues. (ECF No. 7107 at 3.) Defendants agree with the Court's tentative mootness finding insofar as it concerns Defendants' compliance with Program Guide requirements, as modified by the

[3707178.5]                                    1

temporary addition of COVID-19 screening, for transfer of class members to inpatient hospital beds.

But the issue of whether Defendants can take emergency life-saving actions during a pandemic or other public health emergency without first seeking leave of court remains unresolved and, thus, is not moot. In its April 24, 2020 order, the Court stated that *Jacobson v. Commonwealth of Massachusetts,* 197 U.S. 11 (1905), does not apply "in the context of state action undertaken by state actors subject to prior remedial orders of a federal court." (ECF No. 6639 at 8.) Months later, in response to Defendants' appeal from the April 24 order (and May 7, 2020 order), the Court informed Defendants that the *Jacobson* issue would not be final until after the October 23 evidentiary hearing, which "may result in an order dispositive of whether this court's prior remedial orders governing access to inpatient mental health care must be modified in light of the pandemic, and if so, how." (ECF No. 6730 at 6.) As Defendants demonstrated during the October 23 evidentiary hearing, their actions aligned with public health guidance and were taken in the interest of saving lives. To the extent that the Court's prior remedial orders would deny the State leeway to take immediate temporary actions to protect *Coleman* class members and the public in times of crisis, it is Defendants' position that *Jacobson* provides otherwise, and they urge this Court to revise its interim findings accordingly. Because effective relief remains available to Defendants on that issue, it is not moot. But if the Court nonetheless finds that issue moot too, then it should vacate the portions of the April 24 and May 7 orders that limit the State's ability to take appropriate emergency actions in this case during a pandemic or other public health emergency.

**PROCEDURAL BACKGROUND**

On March 16, 2020, in response to the COVID-19 pandemic and to protect the health and safety of patients, staff, and the public, the Department of State Hospitals (DSH) closed admissions—temporarily—to nearly all types of patients it admits. (*See* ECF No. 6579 at 51.) On April 3, 2020, after an oral motion by Plaintiffs during a telephonic status conference earlier that day, this Court ordered Defendants to show cause why they should not be ordered to admit *Coleman* class members to *Coleman*-designated inpatient beds in DSH. (ECF No. 6572.) On

[3707178.5]                                                    2

April 10, 2020, after holding multiple status conferences addressing the impact of the coronavirus pandemic on the *Coleman* class and Program Guide compliance, this Court set an evidentiary hearing for April 21, 2020, to address class member access to DSH inpatient hospital care. (ECF No. 6600 at 4.) On April 15, 2020, Defendants moved for reconsideration or clarification of the order setting the evidentiary hearing. (*See* ECF No. 6612.)

On April 17, 2020, the Court continued the evidentiary hearing to May 19, 2020, after the parties stipulated to close monitoring by the Special Master of all referrals, rejections, and completed transfers to and from the DSH inpatient programs. (ECF No. 6622 at 3.)

On April 24, 2020, besides confirming the May 19 evidentiary hearing, the Court "clarified that, with the exception of a temporary modification to include COVID-19 screening, the *Coleman* Program Guide requirements for transfer of class members to inpatient DSH hospital beds are in full force and effect unless and until they are modified by order of this court." (ECF No. 6639 at 6, 11.) The Court ordered that:

> 1. Program Guide requirements for transfer of class members to DSH inpatient hospital beds are temporarily modified to include COVID-19 screening in accordance with the protocols presented to this court and agreed upon by the parties as cited above.
>
> 2. In all other respects, the Program Guide requirements for transfer to DSH inpatient hospital beds remain in full force and effect unless and until modified by order of this court.
>
> 3. Defendants shall cooperate fully in the Special Master's close monitoring of transfers to DSH inpatient programs until May 19, 2020, so that he is able to fully advise the court and the parties whether defendants are in compliance with this order and applicable provisions of the Program Guide.

(ECF No. 6639 at 11.)

On May 7, 2020, the Court granted in part and denied in part Defendants' motion for reconsideration or clarification. (ECF No. 6660.) The Court clarified that the forthcoming evidentiary hearing would address the following factual issues: "(1) as required by the April 24, 2020 order, have DSH and CDCR been complying with the Program Guide requirements, as modified by the temporary addition of COVID-19 screening, for transfer class members to

[3707178.5]          3

1  inpatient hospital beds; (2) if they are not complying with those requirements, in what way or
2  ways are they deviating from those requirements; and (3) what is the rationale for any deviation."
3  (*Id.* at 2.)
4      On October 23, 2020, after multiple stipulated continuances, the Court held this long-
5  awaited evidentiary hearing, with the bulk of the testimony focused on the current rate of
6  transfers from CDCR to DSH inpatient care.  (*See* Tr. Oct. 23, 2020, ECF No. 6935.)  Since the
7  hearing, the parties have filed various motions, briefs, and other filings related to the issues before
8  the Court.  (ECF Nos. 6931-33, 6939, 6943-45, 6947-49, 6960, 6975-76, 6982, 6997, 7041.)
9      On March 26, 2021, based on "the significant progress in management of the COVID-19
10 pandemic generally and the apparent impact of this progress on inpatient transfers to DSH of
11 class members specifically," this Court ordered the parties to show cause why the matters raised
12 at the October 23, 2020 evidentiary hearing should not be found moot.  (ECF No. 7107.)

**ARGUMENT**

**I.  THE ISSUES RAISED AT THE OCTOBER 23 EVIDENTIARY HEARING RELATED TO DSH AND CDCR'S COMPLIANCE WITH PROGRAM GUIDE FOR TRANSFER OF CLASS MEMBERS TO INPATIENT HOSPITAL BEDS ARE MOOT.**

Because DSH and CDCR undeniably have been complying with the Program Guide requirements, as modified by the temporary addition of COVID-19 screening, for transfer of class members to inpatient hospital beds since the brief halt in DSH admissions, the limited issues the Court sought to resolve at the October 23 hearing are moot.

"A claim is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.  The basic question is whether there exists a present controversy as to which effective relief can be granted." *Village of Gambell v. Babbitt,* 999 F.2d 403, 406 (9th Cir. 1993).  If the court can no longer grant effective relief, the issue before the court is moot.  *Wildwest Inst. v. Kurth,* 855 F.3d 995, 1002 (9th Cir. 2017).

On March 16, 2020, Defendants briefly halted DSH admissions after, in their view, properly consulting with the Special Master and invoking their sovereign, emergency powers to protect the health and safety of patients, staff, and the public.  (ECF No. 6612-1 at 2-3.)  On April 16, 2020, DSH re-opened admissions to *Coleman* class members.  (ECF No. 7041

[3707178.5]                                    4

at 4.) Since then, as Defendants demonstrated during the October 23 evidentiary hearing, they have complied with Program Guide timelines, as modified by the Court's April 24 order. For example, since April 2020, over 149 patients have safely and timely transferred to DSH. (*See* ECF No. 7041 at 4-5.) Any delays in the transfer of class members to DSH were caused by restrictions on patient movement due to COVID-19 and were thus proper under the April 24 order. Although Plaintiffs want the transfers to occur faster, there is no dispute that the transfers are occurring at a reasonable and timely pace as COVID rates have subsided, as reported by the parties and the Special Master. (*See* ECF No. 7107 at 2-3.) If Defendants are undeniably complying with the Program Guide timelines, as modified, then there are no compliance issues for the Court to remedy. Therefore, the issues are moot.

## II. THE COURT'S DETERMINATIONS IN THE APRIL 24 AND MAY 7 ORDERS THAT DEFENDANTS MAY NOT TAKE LIFE-SAVING ACTIONS WHEN FACED WITH A PUBLIC HEALTH CRISIS WITHOUT LEAVE OF COURT ARE NOT MOOT.

In its April 24, 2020 order, the Court found that DSH Director Clendenin violated court orders requiring Defendants to keep a full complement of 256 beds available to *Coleman* class members at Atascadero State Hospital, as well as the March 8, 2017 order requiring consultation with the Special Master before closing inpatient beds to *Coleman* class members. (ECF No. 6639 at 9.) The Court also concluded that, notwithstanding *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11, 31 (1905), Defendants could not take temporary emergency actions in violation of the Program Guide, even to safeguard the lives of patients and staff in the face of an extraordinary public health crisis, "without first seeking and obtaining necessary modifications" to the Court's existing remedial orders. (ECF No. 6639 at 8.) In its May 7, 2020 order, the Court elaborated on its April 24, 2020 order, and held that in the case that Defendants determine that they must take temporary emergency actions in violation of the Program Guide to protect life during a pandemic, "they have the burden of proving that modification of that order and the underlying Program Guide provisions are required," under the "standards applicable to a motion based on Federal Rule of Civil Procedure 60." (ECF No. 6660 at 2.)

After Defendants appealed these findings and legal conclusions, the Court clarified that its April 24 and May 7 orders were "no more than interim step[s] to further proceedings, namely, the

[3707178.5]    5

1  evidentiary hearing currently set for June 25, 2020," and not final orders within the meaning of
2  28 U.S.C. § 1291.  (ECF No. 6730 at 6.)  "It is [the October 23, 2020] hearing that may result in
3  an order dispositive of whether this court's prior remedial orders governing access to inpatient
4  mental health care must be modified in light of the pandemic, and if so, how."  (*Id.*)  Based on the
5  Court's clarification, Defendants dismissed their appeal.  (ECF No. 6901.)

   The Court's statements demonstrate that its interlocutory rulings concerning *Jacobson* and
the scope of the State's power during an emergency were subject to modification or revisiting
following the October 23 evidentiary hearing.  However, if these interlocutory rulings are
unchanged in this Court's final order, they will constrain Defendants' ability to act in future
emergencies by requiring them to first move to modify court orders before they can act.  *See
Council of Ins. Agents & Brokers v. Molasky-Arman*, 522 F.3d 925, 933 (9th Cir. 2008) (An issue
is not moot where there remain "present effects that are legally significant."); *Native Village of
Noatak v. Blatchford*, 38 F.3d 1505, 1509 (9th Cir. 1994) (discussing exception to mootness
where issue is capable of repetition but evading review).  The Supreme Court has recognized that
unique public health emergencies, such as the outbreak of a deadly disease, temporarily shift the
balance of constitutional interests and give State officials greater leeway to take actions that
infringe on individual liberty.  *See Jacobson*, 197 U.S. at 29.  Under *Jacobson*, Defendants have
the right, if not the obligation, to take temporary emergency actions to protect the health, safety,
and lives of patients and staff, so long as those actions are not a plain violation of fundamental
rights.  *Id.* at 31.  The Constitution principally entrusts "[t]he safety and the health of the people"
to the politically accountable officials of the States "to guard and protect."  *Id.* at 38.  And when
state officials "undertake[] to act in areas fraught with medical and scientific uncertainties," their
latitude "must be especially broad."  *Marshall v. United States*, 414 U.S. 417, 427 (1974).  The
Court's contrary interlocutory determinations in the April 24 and May 7 orders not only should be
analyzed based on fresh evidence from the October 23 evidentiary hearing, but they should also
be revised to allow Defendants to take necessary action when the next emergency arises.
Therefore, Defendants have a "legally cognizable interest in the outcome," making this issue live

[3707178.5]                                                6

Defs.' Resp. Ord. Show Cause (2:90-cv-00520 KJM-DB (PC))

for effective relief and not moot. *Village of Gambell*, 999 F.2d at 406; *Council of Ins. Agents & Brokers*, 522 F.3d at 933.

### III. IF MOOTNESS PREVENTS THE COURT FROM REVISING ITS DETERMINATIONS IN THE APRIL 24 AND MAY 7 ORDERS, THEN IT SHOULD VACATE THOSE DETERMINATIONS.

If mootness prevents the Court from resolving Defendants' concerns about the Court's April 24, 2020 and May 7, 2020 determinations regarding emergency action in violation of court orders, the Court should vacate those determinations. As stated by the Court in its June 17, 2020 order, the April 24 and May 7 orders were not final. (ECF No. 6639 at 8.) The Court can vacate non-final orders. *See Camreta v. Greene*, 563 U.S. 692, 712–14 (2011). The point of vacatur is to prevent an unreviewable decision "from spawning any legal consequences," so that no party is harmed by a "preliminary" adjudication. *United States v. Munsingwear,* 340 U.S. 36, 40–41 (1950). In this case, where the April 24 and May 7 orders were tentative orders that were never acted upon—no proceedings took place which would test this Court's finding that Defendants violated prior court orders—vacatur would appropriately preclude it from having binding effect. *Id.* at 40.

And while the evidentiary hearing was the "further proceeding" to determine these issues, the focus of the October 23 evidentiary hearing was on contemporaneous departures from Program Guide timelines for transfer to inpatient care, and Defendants presented evidence that they were not departing from those timelines and no modification to court orders was necessary at that time. (*See* ECF No. 6949 at 6-10.) Defendants also provided evidence that their actions were taken in close coordination with public health experts, both from DSH and the California Department of Public Health. (Tr. Oct. 23, 2020, 43:5-10.) In their closing brief, Defendants relied on *Jacobson* in the alternative to justify any deviation from Program Guide timelines the Court believed had occurred. (ECF No. 6949 at 8-10.) And the question of whether DSH Director Clendenin violated prior orders by temporarily halting admissions was not addressed at all. If the Court finds that the issues litigated during the October 23 evidentiary hearing are moot, it would therefore follow that it need not reach the *Jacobson* issue to issue a final order disposing of these issues. If mootness prevents the Court from issuing another order that would make its

[3707178.5]                                     7

Defs.' Resp. Ord. Show Cause (2:90-cv-00520 KJM-DB (PC))

April 24 and May 7 orders final and thus appealable, then it should vacate the April 24 and May 7 orders or parts thereof, including the Court's findings that *Jacobson* does not apply where state actors are subject to federal remedial orders, or that Defendants violated those remedial orders by temporarily halting admissions to DSH hospitals in March 2020. *See NASD Disp. Resol., Inc. v. Jud. Council of State of Cal.*, 488 F.3d 1065, 1068 (9th Cir. 2007) (stating that vacatur is "generally automatic" if a "lower court's judgment, which in the statutory scheme was only preliminary, would escape meaningful appellate review thanks to the happenstance of mootness" (citation and internal quotation marks omitted)).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court find the matters raised at the October 23, 2020 evidentiary hearing related to compliance with the Program Guide for inpatient transfers to be moot. Defendants further request that the Court reverse its determinations in the April 24, 2020 and May 7, 2020 orders that *Jacobson* does not apply where state actors are subject to federal remedial orders and that Defendants violated this Court's orders by temporarily halting admissions to DSH hospitals in March 2020. Defendants alternatively request that those portions of the April 24, 2020 and May 7, 2020 orders be vacated.

DATED: April 9, 2021

MATTHEW RODRIQUEZ
Acting Attorney General
Damon McClain
Supervising Deputy Attorney General

By: */s/ Lucas L. Hennes*
Lucas L. Hennes
Deputy Attorney General

Attorneys for Defendants

[3707178.5]   8

Defs.' Resp. Ord. Show Cause (2:90-cv-00520 KJM-DB (PC))