| | |
|---|---|
| DONALD SPECTER – 083925<br>STEVEN FAMA – 099641<br>MARGOT MENDELSON – 268583<br>PRISON LAW OFFICE<br>1917 Fifth Street<br>Berkeley, California  94710-1916<br>Telephone:   (510) 280-2621<br><br>CLAUDIA CENTER – 158255<br>DISABILITY RIGHTS EDUCATION<br>AND DEFENSE FUND, INC.<br>Ed Roberts Campus<br>3075 Adeline Street, Suite 210<br>Berkeley, California  94703-2578<br>Telephone:   (510) 644-2555 | MICHAEL W. BIEN – 096891<br>JEFFREY L. BORNSTEIN – 099358<br>ERNEST GALVAN – 196065<br>LISA ELLS – 243657<br>THOMAS NOLAN – 169692<br>JENNY S. YELIN – 273601<br>MICHAEL S. NUNEZ – 280535<br>JESSICA WINTER – 294237<br>MARC J. SHINN-KRANTZ – 312968<br>CARA E. TRAPANI – 313411<br>ALEXANDER GOURSE – 321631<br>AMY XU – 330707<br>ROSEN BIEN<br>GALVAN & GRUNFELD LLP<br>101 Mission Street, Sixth Floor<br>San Francisco, California  94105-1738<br>Telephone:   (415) 433-6830 |

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>            Plaintiffs,<br><br>       v.<br><br>GAVIN NEWSOM, et al.,<br><br>            Defendants. | Case No. 2:90-CV-00520-KJM-DB<br><br>**PLAINTIFFS' RESPONSE TO DEFENDANTS' NOTICE OF FILING UPDATED ROADMAP TO REOPENING**<br><br>Judge:   Hon. Kimberly J. Mueller |

As permitted by the Court's March 25, 2021 Order (ECF No. 7112), Plaintiffs hereby respond to Defendants' updated Roadmap to Reopening, filed on April 22, 2021 (ECF No. 7135).

The Court's March 25, 2021 Order required Defendants "to file an updated Roadmap to Reopening which shall reflect their then current plans as relates to resumption of delivery of Program Guide care." ECF No. 7112. The Court has also ordered that "Defendants shall continue to comply with the requirements of the Program Guide to the full extent possible consistent with public health best practices." *See* July 28, 2020 Order, ECF No. 6791 at 4. And it has recognized that Defendants' response to the COVID-19 pandemic should include "a strategic plan that sets out specific goals and objectives to be accomplished by a date certain," and that "such a plan is essential to protection and preservation of the vital interests at stake in this case." Apr. 10, 2020 Order, ECF No. 6600 at 2. On April 22, 2021, Defendants filed an updated CDCR-CCHCS Roadmap to Reopening (Exhibit A to ECF No. 7135, hereafter "Roadmap") and Mental Health COVID-19 Emergency Plan Tier Chart (Exhibit B to ECF No. 7135, hereafter "Tier Chart").[1] Although the documents represent a start at meeting these requirements, they are not complete, and are in some ways inconsistent with the goal of providing minimally adequate mental health care.

Specifically, the Roadmap and Tier Chart (1) contemplate a "New Normal" that offers no insight as to when, if ever, full resumption of Program Guide level mental health care will occur, and (2) contain vague and non-mandatory provisions that make monitoring of the care being provided, let alone enforcement of the documents' provisions, difficult to impossible. The Court should direct the parties to work with the Special Master to identify

---

[1] These documents update the August 14, 2020 Institutional Roadmap to Reopening, *see* Aug. 18, 2020 Joint Report Addressing Current COVID-19-Related Departures From Program Guide Requirements at Ex. B, ECF No. 6831 at 111-114 (Aug. 21, 2020), and the March 25, 2020 COVID-19 Mental Health Delivery of Care Tier Chart, *see* Decl. of Joseph Bick, M.D., In the Matter of Defs.' Opp. to Pls.' Emergency Mot. to Modify Population Reduction Order at Ex. B, ECF No. 6553-5 at 7-14 (Mar. 31, 2020).

concrete, measurable benchmarks, with dates certain for completion, for ensuring that class members receive mental health care that meets at least the Program Guide's constitutional floor. *See* July 28, 2020 Order, ECF No. 6791 at 3 ("[T]he Program Guide is based in Eighth Amendment requirements."). As part of this process, CDCR should convene a group of public health experts to determine appropriate standards and criteria for safely resuming Program Guide level mental health care. Topics that must be concretely addressed include: (1) determining what activities and services people who are vaccinated or "COVID-19 resolved" can participate in given their presumptive immunity, (2) whether mental health staff have returned to the facilities and if not, why not, and (3) explicitly determining whether there is a public health reason to limit group sizes, and if so, why group schedules cannot be expanded (for example to include evenings and weekends) and/or why additional staff cannot be brought in to facilitate additional groups to meet Program Guide standards. Specific details about the level of treatment, including duration and location (e.g., whether a full clinical contact or simple welfare check or screening occurred, and whether the one-on-one or group treatment took place in a confidential treatment space, outdoors, "on the tier," cell-front, etc.) must be included in patients' medical records and in reports to the Special Master to facilitate accurate and transparent monitoring of what treatment is actually being provided.

I. **THE UPDATED ROADMAP AND TIER CHART DO NOT PROVIDE A PATH TO RESTORING MINIMALLY ADEQUATE MENTAL HEALTH CARE.**

Neither the updated Roadmap nor the updated Tier Chart shed light on the timeframe for when Defendants will "resum[e] delivery of Program Guide care." *See* Mar. 25, 2021 Order, ECF No. 7112. Even under Phase 3—the least restrictive phase when no outbreak cases have occurred for more than 28 days—compliance with the Program Guide is not required. *See* Defs.' Notice of Filing of Updated Roadmap to Reopening, ECF No. 7135 at 5, 7 (Apr. 22, 2021). Instead, the Roadmap contemplates a "New Normal," whereby "[p]rogressive reopening of programs and services will be reviewed and implemented weekly by the institution." *Id.* at 7. There are no concrete

standards for the delivery of mental health care in any of the phases or tiers, and no deadline by which Defendants will enforce compliance with Program Guide standards. Even under the least restrictive phase/tier of Defendants' plan, mental health groups "may be reduced in size or [take place] in alternative non-confidential locations." *Id.* at 14. There is no expected duration of Phase 3's "New Normal." The term itself implies it is indefinite.

Circumstances have changed since CDCR issued the earlier versions of the Roadmap and Tier Chart. More than half of all incarcerated persons in CDCR have been fully vaccinated, as have approximately 40% of staff (including more than 70% of all MHSDS staff). *See* Thirteenth Joint Update on the Work of the COVID-19 Task Force, ECF No. 7129 at 2-3 (Apr. 16, 2021). Active cases among incarcerated persons are down to 12 as of April 29, 2021 according to CDCR's public-facing COVID-19 tracking data, available at: https://www.cdcr.ca.gov/covid19/population-status-tracking/. Although the updated Roadmap states that it "takes into account that all CDCR inmates and staff will have been offered a COVID-19 vaccine prior to the end of April 2021," none of the phases or tiers allow for increased treatment, programming, or out-of-cell time based on vaccination status. *See* Defs.' Notice of Filing of Updated Roadmap to Reopening, ECF No. 7135 at 4 (Apr. 22, 2021). Despite the changed circumstances, many aspects of the documents are unchanged from earlier versions, and in some cases are more vague. For example, the Roadmap no longer contains a phase for allowing "[r]esumption of pre-COVID-19 programming," as there was in the original document. *See* Aug. 18, 2020 Joint Report Addressing Current COVID-19-Related Departures From Program Guide Requirements at Ex. B, ECF No. 6831 at 112 (Aug. 21, 2020). And the updated Tier Chart's content is mostly unchanged from the original version Defendants developed in March 2020, when a vaccine was not even on the horizon. *Compare* Defs.' Notice of Filing of Updated Roadmap to Reopening, ECF No. 7135 at 9-14 (Apr. 22, 2021), *with* Decl. of Joseph Bick, M.D., In the Matter of Defs.' Opp. to Pls.' Emergency Mot. to Modify Population Reduction Order at Ex. B (March 25, 2020 Memo—COVID-19 Mental

Health Delivery of Care Guidance), ECF No. 6553-5 at 7-14 (Mar. 31, 2020). Although the updated Tier Chart inverts the order of the tiers and use three rather than four tiers to match the updated Roadmap's phases, most of the Program Guide departures that were present in the original Tier Chart remain. *See* Apr. 21, 2021 Joint Report Addressing Current COVID-19 Related Departures From Program Guide Requirements, ECF No. 7132 at 11-18 (Apr. 21, 2021) (describing Program Guide departures occasioned by the March 25, 2020 Tier Chart). The updated Tier Chart still allows, for example, patients to be limited to in-cell activities only, seen by their IDTT non-confidentially at cell-front, not offered groups depending on space, staffing, and quarantine or isolation status, and not seen timely by their primary clinician and psychiatrist. *See* Defs.' Notice of Filing of Updated Roadmap to Reopening, ECF No. 7135 at 9-14 (Apr. 22, 2021). Patients who are suicidal may still be screened using the Columbia-Suicide Severity Rating Scale screening form, which is just a subpart of the more thorough Suicide Risk Assessment and Self-Harm Evaluation ("SRASHE") process required by current policy. *See id.* at 9, 12; Fourth Re-Audit and Update of Suicide Prevention Practices in CDCR, ECF No. 6879-1 at 20 (Sept. 23, 2020).

As the Court has found, these and other departures from Program Guide standards "likely fall below constitutional minima." *See* July 28, 2020 Order, ECF No. 6791 at 3. More than a year into their initial pandemic response, Defendants' lack of specific planning to return to Program Guide level care has caused and will continue to cause harm to class members. *See, e.g.*, Pls.' Resp. to Order to Show Cause Re: Inpatient Admissions Evid. Hr'g, ECF No. 7119 at 5-9 (Apr. 9, 2021); Aug. 18, 2020 Joint Report Addressing Current COVID-19-Related Departures From Program Guide Requirements, ECF No. 6831 at 10-14 (Aug. 21, 2020).

## II. THE VAGUENESS OF THE UPDATED ROADMAP AND TIER CHART RENDERS MONITORING AND ENFORCEMENT IMPOSSIBLE.

Other than the requirement to move between the phases/tiers once a specific time period has elapsed, or return to Phase/Tier 1 in the event of a new outbreak, the updated

Roadmap and Tier Chart contain very few mandates. Instead, "[t]he Roadmap provides a "general guideline" for the provision of mental health care and other institutional services. *See* Defs.' Notice of Filing of Updated Roadmap to Reopening, ECF No. 7135 at 4 (Apr. 22, 2021). Under Phase 1, for example, "Mental Health [staff] … *may* provide in-cell activities and packet programming." *Id.* at 6 (emphasis added). In Phase 2, "[c]areful resumption" of routine mental health services is permitted, but only "where physical distancing can be maintained." *Id.* at 7. And even under Phase 3 when there have been no new outbreak cases for a month or more, "clinical operations … may resume." *Id*. Resumption is not mandatory. The lack of concrete requirements at each tier and phase make it difficult if not impossible to monitor what mental health care is being provided where, let alone determine whether it is adequate.

Additionally, although the criteria for moving between the phases and tiers is more concrete as compared to earlier versions of the documents, it is not entirely clear when a facility or institution's phase/tier will be formally decided and how that decision will get communicated to staff, patients, and other stakeholders. And staff infection rates appear to play no role whatsoever in the Roadmap. The original version of the Roadmap required the Warden and Chief Executive Officer ("CEO") to report "their current phase [daily], and any plans to move to different phases in subsequent days." *See* Aug. 18, 2020 Joint Report Addressing Current COVID-19-Related Departures From Program Guide Requirements at Ex. B, ECF No. 6831 at 111 (Aug. 21, 2020). But Defendants omitted this specificity in the updated version. While the revised Roadmap more flexibly allows facilities, rather than entire institutions, to move between the phases and tiers, there is no guidance on how frequently the Warden and CEO must update their phase/tier determination on the "Roadmap SharePoint." *See* Defs.' Notice of Filing of Updated Roadmap to Reopening, ECF No. 7135 at 4 (Apr. 22, 2021). Clarity as to the phase and tier of a given mental health program must be readily available to all stakeholders, including patients, institutional staff, the Special Master and Court, and Plaintiffs.

The provision of mental health groups (or lack thereof) is one of the most vague

aspects of Defendants' updated Roadmap and Tier Chart. Tier 1 simply states that "[a]s [the] ability to provide out of cell groups decreases" in-cell recreational therapy activities and treatment materials should be provided. *Id.* at 9. There is no clear statement as to whether groups are expected to continue, and how, under Tier/Phase 1. It is also unclear how often recreational, let alone therapeutic, activities must be provided, whether they are in-cell or out-of-cell, what kind of "in cell treatment materials" are required, or how patients will earn Milestone Credits for their participation. *See id.* Similarly, although Phase 2 and Tier 2 allow mental health groups "where physical distancing can be maintained," there is no guidance on the maximum number of patients allowed in each group or whether patients' immunity status plays a role. *Id.* at 7; *see also id.* at 12. And in the event that physical distancing cannot be maintained, it appears no groups will be provided at all. Even if group capacity varies depending on the location used, the Roadmap does not define how appropriate group sizes are determined, and by whom. It is equally concerning that there is very little difference between Tier 1 and Tier 2 with respect to the provision of mental health groups, despite that Tier 2 designates a facility has gone for 14 days since any new outbreak cases. *See id.* at 5. Group availability should be increased in that circumstance. Even in Tier 3, one month post-outbreak, mental health groups are subject to the same restrictions without any accompanying minimum number of treatment hours required or expected per week. *Id.* at 14.

Defendants' Administrative Segregation Unit ("ASU") Enhanced Outpatient Program ("EOP") Hub and Psychiatric Services Unit ("PSU") Self Certification letters exemplify the paucity of group treatment hours being provided to EOP patients due to lack of concrete guidelines. According to the most recent certification letters provided, pertaining to data from February 2021, most mental health groups in the ASU EOP Hub and PSU at California State Prison, Sacramento have been cancelled since March 16, 2020 in order to "reduce exposure of staff and inmates through physical distancing." *See* Decl. of Cara E. Trapani In Supp. of Pls.' Response to Defs.' Notice of Filing Updated Roadmap to Reopening, filed herewith (hereafter "Trapani Decl.") at ¶ 1 & Ex. A at A-034, A-052.

At California Medical Facility, the ASU EOP Hub reduced group sizes by half. *Id.* at A-044. "Given lack of staffing resources and room capacity, this resulted in patients receiving less than 10 hours of treatment per week." *Id*. California Men's Colony similarly reported "continuing constraints on group capacity and [a] shortage of available treatment space required to offset reduced group sizes." *Id.* at A-009. Only a few institutions, including Richard J. Donovan Correctional Facility and California State Prison, Los Angeles County, reported offering therapy groups outdoors "in an effort to offset the reduction of mental health program activity." *Id.* at A-019, A-028. The ASU EOP Hub and PSU certification letters for January 2021 paint a similar picture. *See generally id.*, ¶ 2 & Ex. B. For example, clinicians in the ASU EOP Hub at California Men's Colony reported making multiple requests that group sizes be increased, but those requests were denied, leaving the institution to "continue[] to work … on investigating safe ways to increase programming." *Id.* at B-012.

   The decision of how to safely provide mental health groups should balance patients' needs from both a public health and mental health perspective. This includes consideration of whether groups are feasible outdoors and/or in well-ventilated spaces, identification of such spaces at every institution housing *Coleman* class members, augmentation of group offerings during the evening and on weekends, guidance on how appropriate physical distancing, sanitation measures, and facial coverings will be enforced, whether groups can proceed in cohorts that remain together, and consideration of whether patients have some level of COVID-19 immunity due to vaccines and/or prior infection. The updated Roadmap and Tier Chart do not provide detailed guidance on any of these matters.

   Other provisions in the Roadmap and Tier Chart make monitoring, let alone enforcement, of the plan impossible. Phase 1 describes episodic care that should be provided, but does not require that patients with emergent and urgent mental health needs are seen in a confidential setting as opposed to cell front. *See* Defs.' Notice of Filing of Updated Roadmap to Reopening, ECF No. 7135 at 6 (Apr. 22, 2021). There is no requirement that mental health groups continue, even for vaccinated patients. *Id.* Phase 1

also fails to describe what services should be *augmented* to account for reductions in treatment, including, for example, increased access to video visitation, entertainment devices, in-cell programming, dayroom, and yard.  *See id.*  Furthermore, because "careful resumption of routine clinical operations for all CCHCS disciplines" can occur in Phase 2, routine clinical operations presumably are not allowed under Phase 1, even for vaccinated patients.  *See* id. at 7.  But this is far from clear and will likely be implemented inconsistently at different facilities and programs.

Another vague provision is that patients waiting for inpatient and MHCB transfers under Tier 2 may only receive enhanced care "as operations allow." *Id.* at 12.  Also, although Tier 1 states in the Inpatient Referrals column that "[r]eferrals [will] continue per policy," the Provision of Treatment column for that same tier directs clinicians to triage "[a]dmissions and discharges related to inpatient processes." *Id.* at 9-10.  This seems inconsistent.  Furthermore, when patients are "identified as [having] suicide risk" in Tier 1 and 2, there is no timeframe for when they must "receive [an] in person evaluation." *Id.* at 9, 12.  Pre-release planning throughout the tiers is limited, especially in Tier 1.

The parties intend to meet and confer regarding Plaintiffs' questions about these and other provisions of the Roadmap and Tier Chart prior to the May 14, 2021 status conference.  *See* Trapani Decl., ¶ 3.  The list of questions Plaintiffs provided and to which Defendants have agreed to respond in writing are attached to the Trapani Declaration, filed herewith, at Exhibit C.  *See id*. at Ex. C.

## CONCLUSION

For all the foregoing reasons, the Court should direct the parties to work with the Special Master, with input from public health experts and accounting for vaccinations, to identify concrete, measurable benchmarks, with dates certain for completion, for ensuring that class members receive Program Guide level mental health care.

/ / /

/ / /

/ / /

# CERTIFICATION

In preparing this brief, Plaintiffs' counsel reviewed the following Court orders: March 25, 2021 Order, ECF No. 7112; July 28, 2020 Order, ECF No. 6791; April 10, 2020 Order, ECF No. 6600.

DATED: April 29, 2021                    Respectfully submitted,

ROSEN BIEN GALVAN & GRUNFELD LLP

By: */s/ Cara E. Trapani*
    Cara E. Trapani

Attorneys for Plaintiffs