1  ROB BONTA
   Attorney General of California
2  MONICA N. ANDERSON, State Bar No. 182970
   Senior Assistant Attorney General
3  DAMON MCCLAIN, State Bar No. 209508
   Supervising Deputy Attorney General
4  ELISE OWENS THORN, State Bar No. 145931
   LUCAS HENNES, State Bar No. 278361
5  NAMRATA KOTWANI, State Bar No. 308741
   Deputy Attorneys General
6    1300 I Street, Suite 125
     P.O. Box 944255
7    Sacramento, CA 94244-2550
     Telephone: (916) 210-7318
8    Fax: (916) 324-5205
     E-mail: Elise.Thorn@doj.ca.gov
9  Attorneys for Defendants

HANSON BRIDGETT LLP
PAUL B. MELLO, SBN 179755
SAMANTHA D. WOLFF, SBN 240280
LAUREL E. O'CONNOR, SBN 305478
DAVID C. CASARRUBIAS, SBN 321994
1676 N. CALIFORNIA BLVD., SUITE 620
WALNUT CREEK, CALIFORNIA 94596
TELEPHONE:   925-746-8460
FACSIMILE:   925-746-8490
Attorneys for Defendants

ROMAN M. SILBERFELD, State Bar No. 62783
GLENN A. DANAS, State Bar No. 270317
ROBINS KAPLAN LLP
  2049 Century Park East, Suite 3400
  Los Angeles, CA 90067-3208
  Telephone: (310) 552-0130
  Fax: (310) 229-5800
  E-mail: RSilberfeld@RobinsKaplan.com
Special Counsel for Defendants

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

# SACRAMENTO DIVISION

RALPH COLEMAN, et al.,

                    Plaintiffs,

          v.

GAVIN NEWSOM, et al.

                    Defendants.

Case No. 2:90-CV-00520- KJM-DB

**DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANTS' ROADMAP TO REOPENING**

Judge:    Hon. Kimberly J. Mueller

## I.    INTRODUCTION

Defendants' Roadmap to Reopening ("Roadmap"), an updated plan created by Defendants to help plan for and support their own statewide operational needs, and provided to the Court at its request, is not an exhaustive manual, nor is it meant to be.  Rather, the Roadmap provides a framework that is intentionally flexible and subject to change as the global pandemic and related public health guidance continues to evolve.  The framework is designed to adapt and apply to the myriad and individual challenges that the institutions face as a result of dissimilar physical plants,

1  staffing issues, program demands, and COVID impacts, among other factors.  In order to keep the
2  state's correctional institutions safe for residents and staff while also working toward resuming
3  normal operations, Defendants will (and must) continue to rely upon the best science available and
4  the guidance provided by public health experts, including the *Plata* Receiver's experts.
5  Defendants' Roadmap thoughtfully balances these priorities.  Plaintiffs, by contrast, seek relief not
6  grounded in any public health expertise and without any showing that the framework set forth
7  within the Roadmap is unconstitutional or would otherwise lead to the unconstitutional delivery of
8  mental health care in the midst of the ongoing pandemic.  Plaintiffs' response to the Roadmap
9  ("Response") is unsupported by law, procedurally improper, and requests relief the Court cannot
10  provide.

11  **II.     ARGUMENT**

12      **A.     PLAINTIFFS FAIL TO SHOW THAT THE ROADMAP IS DEFICIENT**

13          During the March 25, 2021 status conference, the Court ordered Defendants to file their
14  Roadmap, "recognizing that it may be a milestone along the way to full reopening."  (ECF No.
15  7111 at 44:25-45:2.)[1]  Accordingly, on April 22, 2021, Defendants filed their Roadmap as well as
16  their updated Mental Health COVID-19 Emergency Plan Tier Chart ("Tier Chart"), which
17  provides helpful context and a more detailed explanation of specific actions taken during each
18  phase in key areas such as inpatient referrals, suicide prevention, and provision of medical
19  treatment.  (Exhibits A & B to ECF No. 7135.)  In response, Plaintiffs assert that the Roadmap is
20  vague and lacks enforceable benchmarks.  They also cherry-pick particular guidelines in an
21  attempt to undermine the Roadmap by omitting critical context.  But Plaintiffs do not demonstrate
22  that the Roadmap is deficient, or that *Coleman* class members will be subject to the
23  unconstitutional delivery of mental health care as a result of Defendants' implementation of the
24  Roadmap and continuing response to the ever changing COVID-19 pandemic.

25          Plaintiffs' omissions are critical and misleading.  For instance, Plaintiffs complain that the

26  _____

27  [1] The Roadmap filed on April 22, 2021 is an updated plan, indicative of Defendants' efforts to
continually update their plan as public health guidance evolves.  The first version of this plan was
28  filed on September 15, 2020.  (ECF No. 6866 at 3, 34, 40.)

1  updated Tier Chart still allows patients to be limited to in-cell activities and to not be offered

2  groups depending on space, staffing, and quarantine or isolation status.  (ECF No. 7141 at 5:7-10.)

3  They argue that these restrictions depart from the Program Guide, and therefore "likely fall below

4  constitutional minima." (*Id*. at 5:17-18.)  Yet, this argument ignores that this guidance applies

5  solely to Tier-1 facilities[2] – meaning, those facilities or institutions facing an active COVID-19

6  outbreak.  (Exhibits B to ECF No. 7135.)  Plaintiffs seem to take issue with the fact that

7  Defendants intend to follow the advice of public health experts who understand that restricting

8  movement and contact is required to contain outbreaks.  Moreover, Plaintiffs offer no evidence

9  that Defendants should deviate from the Tier 1 guidelines during an outbreak, nor do they cite any

10  public health guidance conflicting with these restrictions.  Instead, Plaintiffs enjoy the luxury of

11  advocating for fewer restrictions while shouldering none of the responsibility when an outbreak

12  occurs.

13          Plaintiffs' arguments are also not tethered to current public health guidance, nor do

14  Plaintiffs submit any public health testimony or evidence in support of their position.  Specifically,

15  Plaintiffs assert that the Roadmap should provide increased treatment, programming, and out-of-

16  cell time for vaccinated residents.  (ECF No. 7141 at 4:13-17.)  Of course, Defendants also believe

17  that increased vaccination rates will make it possible to continue to progress toward resumption of

18  normal operations.  However, Plaintiffs' argument is based on an assumption that vaccines

19  invariably prevent the spread of COVID-19 and all of its variants, an assumption not yet supported

20  by decisive public health data as of April 22, 2021, when the Roadmap was filed.  As this Court

21  observed at the March 25, 2021 status conference, the Roadmap remains a flexible framework, not

22  a static rulebook, and will continue to be updated and evolve with public health guidance.

23          In short, Plaintiffs' Response amounts to nothing more than a wish-list that not only is

24  largely divorced from expert public health guidance, but also ignores the current realities

25  Defendants face in the midst of an ongoing pandemic.

26  _____

27  [2] Both the Roadmap and Tier plans allow different facilities or yards within the same institution to

28  be in different tiers/phases.  Thus, the plans afford flexibility not only to the overall institution, but to the discrete programs within them as well.

1

**B.     PLAINTIFFS' REQUEST IS PROCEDURALLY IMPROPER AND THE COURT LACKS AUTHORITY TO GRANT THE REQUESTED RELIEF IN ANY EVENT**

2

3       Despite no showing of deficiency in the Roadmap, Plaintiffs seek an order requiring

4  Defendants to work with Plaintiffs, the Special Master, and "a group of public health experts" to

5  set static benchmarks and "dates certain" for safe resumption of "Program Guide level mental

6  health care." Plaintiffs' request is procedurally improper and seeks relief that the Court lacks the

7  authority to provide.

8               1.     Plaintiffs must seek relief via noticed motion, not in a responsive filing

9       Parties requesting relief from the court must do so by filing a motion. Fed. R. Civ. P. 7(b).

10  All motions *must specify the grounds supporting the motion*. *Id*. (emphasis added). Here,

11  Plaintiffs request relief from the Court not through an affirmative motion, but rather, in their

12  Response to the Roadmap that Defendants prepared for their own operational purposes and only

13  filed at the Court's request. Plaintiffs' attempt to circumvent the basic rules of civil procedure

14  should be disregarded.

15               2.     Plaintiffs' request lacks specific supporting grounds needed for relief

16       Critically, Plaintiffs also fail to specify grounds supporting their request for relief—and

17  instead only vaguely reference the purported "constitutional floor" set by the Program Guide.

18  (ECF No. 7141 at 3 and 4.) Plaintiffs' attenuated argument seems to be that the Program Guide

19  sets the constitutional standard for care and that Defendants' Roadmap lacks measurable criteria to

20  ensure compliance with the Program Guide. This argument fails for several reasons.

21       First, Plaintiffs fail to show that the Roadmap and the care outlined within it are

22  constitutionally deficient, as explained above. Further, there is no showing that creating the

23  Roadmap, much less instituting static benchmarks in the Roadmap is required to ensure

24  constitutional compliance. Plaintiffs' reliance on language from an April 2020 Court order

25  requiring Defendants to file a plan on COVID-19 prevention (at the beginning of the pandemic) is

26  misplaced. (ECF No. 7141 at 1.) Once again, Plaintiffs rely on language taken out of context, and

27  which was never intended to apply to a document that was not even contemplated at the time the

28  order issued. They also ignore that the purpose of the Roadmap is to provide CDCR institutions

with a framework looking toward resuming operations during an ongoing pandemic.  Because each institution has different physical plants, staffing challenges, program demands, and COVID impacts, the Roadmap enumerates specific guideposts and provides general direction on provision of services while also allowing flexibility to individual institutions in recognition of the unique and disparate challenges they face as a result of the pandemic.  Plaintiffs' challenges to the Roadmap, in part, therefore misapprehend its very purpose.

Further, Plaintiffs' requested relief ignores that Defendants have consulted with the *Plata* Receiver and public health experts since the outset of the COVID-19 pandemic and will continue to do so to address the changing circumstances it presents.  Indeed, the Roadmap incorporates input from the *Plata* Receiver and public health experts and has been updated to reflect changes in public health guidance.  Like the COVID-19 pandemic, Defendants' provision of care will continue to evolve to keep staff and residents safe.  Plaintiffs' simple disagreement with the parameters set forth in the Roadmap is not a basis on which to require Defendants to disregard the advice of their public health experts in favor of a more rigid framework for which Plaintiffs advocate.  Moreover, Plaintiffs' focus on the purported lack of enforceable static benchmarks with "dates certain for completion" simply highlights Plaintiffs' misunderstanding about how these institutions function to keep people safe during an ever-evolving global pandemic—the end of which has no "date certain."

        3.    The Court lacks authority to provide Plaintiffs' requested relief because Plaintiffs fail to show a violation of *Coleman* members' Federal rights or that the relief they seek is narrowly drawn as required by the Prison Litigation Reform Act

In order for the Court to order prospective relief, the Prison Litigation Reform Act ("PLRA") requires evidence of a violation of Plaintiffs' federal rights and a showing that the requested relief is "narrowly drawn" and "extends no further than necessary to correct the violation of the Federal right …." 18 U.S.C. § 3626(a)(1)(a).  Here, Plaintiffs make no showing that the framework provided by the Roadmap would result in the unconstitutional delivery of mental health care to *Coleman* class members, and thus Plaintiffs do not meet the threshold requirement necessary to obtain relief.  Without first establishing a violation of federal law, it is

1   impossible to determine whether the relief Plaintiffs seek is the most narrowly drawn and least

2   intrusive form of relief.

3           Further, even if Plaintiffs could show some violation (they cannot), the relief they request

4   is intrusive, broad, and vague.  " 'States have a strong interest in the administration of their

5   prisons[,]' " and "'federal courts must tread lightly when it comes to questions of managing

6   prisons, particularly state prisons[.]'"  *Frazier v. Kelley*, 2020 WL 2110896 (E.D. Ark, May 4,

7   2020), at *9 (weighing a request for relief in the form of offering inmates COVID-19

8   vaccinations), *citing Woodford v. Ngo*, 548 U.S. 81, 94 (2006).  The "Court should approach

9   intrusion into the core activities of the state's prison system with caution." *Frazier* at *10.  But

10  here, Plaintiffs seek reformation of the entire Roadmap and establishment of benchmarks and

11  related deadlines to be agreed upon by the parties, the Special Master, and some unknown public

12  health experts.  The relief Plaintiffs seek is precisely the type of needless intrusion the Supreme

13  Court has consistently cautioned against on numerous occasions dating back nearly 50 years.  *See*,

14  *e.g.*, *Turner v. Safley*, 482 U.S. 78, 85 (1987) ("where a state penal system is involved, federal

15  courts have … additional reason to accord deference to the appropriate prison authorities");

16  *Meachum v. Fano*, 427 U.S. 215, 229 (1976) ("Federal courts do not sit to supervise state prisons,

17  the administration of which is of acute interest to the States"); *Preiser v. Rodriguez*, 411 U.S. 475,

18  491-92 (1973) ("It is difficult to imagine an activity in which a State has a stronger interest, or one

19  that is more intricately bound up with state laws, regulations, and procedures, than the

20  administration of its prisons.").  Defendants' management of its safety protocols and programming

21  in the midst of a global pandemic must be accorded deference, despite Plaintiffs unsupported

22  protestations to the contrary.  Under these circumstances, where there is neither a showing that the

23  Roadmap is deficient, nor any evidence of a federal violation, and where the requested relief is

24  broad and needlessly intrusive, the Court must disregard Plaintiffs' request for relief.

25  / / /

26  / / /

27  / / /

28  / / /

-6-

III.    **CONCLUSION**

Because Plaintiffs fails to articulate a viable basis for relief, and fail to properly request such relief, Defendants respectfully request that this Court disregard Plaintiffs' request for relief related to Defendants' Roadmap.

DATED:  May 10, 2021                         HANSON BRIDGETT LLP


By:  ____/s/ Samantha Wolff_____
     PAUL B. MELLO
     SAMANTHA D. WOLFF
     LAUREL E. O'CONNOR
     DAVID C. CASARRUBIAS
     Attorneys for Defendants


DATED:  May 10, 2021                         ROB BONTA
                                             Attorney General of California
                                             DAMON MCCLAIN
                                             Supervising Deputy Attorney General


By:  ____/s/ Lucas Hennes_____
     LUCAS L. HENNES
     Deputy Attorney General
     Attorneys for Defendants