1  ROB BONTA, State Bar No. 202668
   Attorney General of California
2  MONICA N. ANDERSON, State Bar No. 182970
   Senior Assistant Attorney General
3  DAMON MCCLAIN, State Bar No. 209508
   Supervising Deputy Attorney General
4  ELISE OWENS THORN, State Bar No. 145931
   LUCAS HENNES, State Bar No. 278361
5  NAMRATA KOTWANI, State Bar No. 308741
   Deputy Attorneys General
6   1300 I Street, Suite 125
    P.O. Box 944255
7   Sacramento, CA 94244-2550
    Telephone: (916) 210-7318
8   Fax: (916) 324-5205
    E-mail: Elise.Thorn@doj.ca.gov
9  Attorneys for Defendants

   HANSON BRIDGETT LLP
   PAUL B. MELLO, State Bar No. 179755
   SAMANTHA D. WOLFF, State Bar No. 240280
   LAUREL E. O'CONNOR, State Bar No. 305478
   DAVID C. CASARRUBIAS, State Bar No. 321994
    1676 N. California Boulevard, Suite 620
    Walnut Creek, CA 94596
    Telephone: (925) 746-8460
    Fax: (925) 746-8490
    E-mail: PMello@hansonbridgett.com
   Attorneys for Defendants

   ROMAN M. SILBERFELD, State Bar No. 62783
   GLENN A. DANAS, State Bar No. 270317
   ROBINS KAPLAN LLP
    2049 Century Park East, Suite 3400
    Los Angeles, CA 90067-3208
    Telephone: (310) 552-0130
    Fax: (310) 229-5800
    E-mail: RSilberfeld@RobinsKaplan.com
   Special Counsel for Defendants

## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

## SACRAMENTO DIVISION

| | |
|---|---|
| **RALPH COLEMAN, et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**GAVIN NEWSOM, et al.,**<br><br>Defendants. | 2:90-cv-00520 KJM-DB (PC)<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF-INTERVENOR LIPSEY'S MOTION FOR LEAVE TO CONDUCT DISCOVERY** |

### INTRODUCTION

Plaintiff-Intervenor Lipsey seeks to modify a long-standing policy and procedure that requires the California Department of Corrections and Rehabilitation (CDCR) to use the Guard One monitoring system when conducting welfare checks on inmates in segregated housing units. This is the sole issue for which this Court has permitted Lipsey to intervene in this long-standing class action focused on the delivery of constitutionally adequate mental health care in California's

1

1    prison system.  (*See* ECF No. 6487 at 3 ["Lipsey may intervene for the limited purpose of

2    addressing his claim that Guard One causes sleep deprivation in violation of the Eighth

3    Amendment to the United States Constitution"].)

4        Lipsey now seeks to expand this clear limit to various tangential issues, including whether

5    Guard One prevents suicides, the manner in which Guard One was approved by the Court and

6    parties, and issues surrounding the thirty-minute welfare checks generally.  From his motion for

7    leave to conduct discovery, it seems clear that Lipsey believes that his seven-year quest to

8    challenge the constitutionality of the Guard One policy and procedure entitles him to treat this

9    thirty-year-old case as a brand-new civil suit.  He is mistaken.  The welfare check policy dates

10   back to 2006 and the Guard One procedure to monitor that policy dates back to 2014.  Both the

11   welfare check policy and Guard One have been the subject of reports by the Special Master and

12   his suicide prevention expert and Court orders.  The time for objecting to the Special Master's

13   reports and for appealing orders concerning the welfare check policies and Guard One has passed.

14   Accordingly, Lipsey's claim must be brought in a motion under Rule 60, with information that is

15   available to him as a class member through the ordinary proceedings of this case—*not* by

16   subjecting CDCR to Rule 26 discovery dating back to 2014.  Moreover, the Special Master has

17   access to all information needed to inform the Court as to whether Guard One remains

18   appropriate as a monitoring tool, including his monitoring reports and his suicide prevention

19   expert's report on the monitoring of the Guard One system since its implementation more than

20   five years ago.  Lipsey has access to all of that information as well.  Simply put, there is no need

21   to give Lipsey access to the broad discovery tools that he demands given the context of his

22   intervention in this case.

23       To the extent that the Court deems *any* discovery appropriate in this context, Defendants

24   request that it be limited to the specific confines of Lipsey's claim—whether Guard One, in its

25   current incarnation, causes sleep deprivation in violation of the Eighth Amendment.  As is evident

26   from Lipsey's previous attempts to serve discovery, such limits are necessary to avoid the

27   unnecessary expense and burden on Defendants that would result from the re-litigation of issues

28   that have been decided in this case for some time.

**ARGUMENT**

**I.     LIPSEY'S DISCOVERY FOCUSES ON OVERTURNING LONG-ESTABLISHED AND COURT-APPROVED POLICY AND PROCEDURES IN *COLEMAN*.**

CDCR's suicide prevention policy requiring round-the-clock welfare checks of inmates housed in segregated housing units is well documented in the Special Master's monitoring reports and this Court's orders adopting the findings and recommendations set forth in those reports.

In 2006, due to the rate of suicides and attempted suicides by California inmates, this Court ordered CDCR to undertake suicide prevention and reduction programs supervised by the court's Special Master. (ECF No. 1830 at 3.) On October 31, 2006, CDCR issued a policy memorandum titled 30-Minute Welfare Checks of Inmates Placed in Administrative Segregation Units, which required custody staff to conduct welfare checks of inmates, at least every 30 minutes, at irregular intervals, for the first three weeks of the inmates' placement in ASU. (ECF No. 2061 and ECF No. 2084 at 6-11.) This Court approved CDCR's policy requiring welfare checks every 30 minutes at irregular intervals and ordered the Special Master to monitor and report on the implementation of the policy. (ECF No. 2139 at 2-3.)

In 2007, the Special Master reported that CDCR had implemented the 30-minute welfare checks, and recommended that CDCR develop a plan to train staff on accurate logging of the checks and to track and self-monitor compliance. (ECF No. 2210 at 4-5 and 10.) The Court adopted the Special Mater's recommendations in full. (ECF No. 2255 at 3.)

To improve consistency in its welfare-check process and maintain inmate safety, CDCR in May 2014 revised its security and welfare check policy to require that the 30-minute checks be conducted using an electronic recording device, also referred to as Guard One. (ECF No. 5259, at 14). Since 2014, the Special Master has monitored CDCR's implementation and use of the Guard One. The Special Master and his expert have recommended that CDCR continue to use the Guard One system to conduct security and welfare checks in segregated housing units and notably, have not, in any of their reports, found that the Guard One system should be discontinued because it causes sleep deprivation.[1]

---

[1] *See* ECF Nos. 5258, 5259, 5395, 5396, 5671, 5672, 5993, 5994 , 6879, and 6879-1.

In 2014, the Special Master's expert found that the Guard One Policy "was a significant and commendable policy change" (ECF No. 5259 at 14) and the Special Master recommended that CDCR continue to use the Guard One security and welfare checks. (ECF No. 5258 at 6.) This Court adopted that recommendation on February 3, 2015. (ECF No. 5271.) The Special Master's reports on the implementation and use of Guard One do not include findings that the Guard One system exposes inmates to sleep deprivation, and the Special Master has not recommended that CDCR cease use of the Guard One security and welfare checks. (ECF Nos. 5258, 5259, 5395, 5396, 5671, 5672, 5993, 5994, 6879, and 6879-1.) The Special Master's suicide expert has reported on two instances where, as a result of unique architectural characteristics of housing units, use of Guard One has been limited. (ECF No. 5994, 15-16; and ECF No. 6879-1, 19-20.) And the orders adopting those findings and recommendations on the Guard One Policy include orders that CDCR continue to conduct security and welfare checks using the Guard One system. (ECF Nos. 5271, 5429, and 5762.)

It is undisputed that the Special Master has rigorously monitored the Guard One system and the Special Master has submitted extensive reports to the Court about the system's effectiveness. Lipsey's claim is directed at the required policy and Court-approved process. Lipsey has access to the docket in this case, which includes the reports and findings that support the continued use of Guard One.

## II. LIPSEY DOES NOT NEED FACT DISCOVERY TO LITIGATE HIS LIMITED CLAIM IN INTERVENTION.

In addition to all of the reports and orders concerning CDCR's welfare check policy and the use of Guard One, Lipsey also has the individual inmate grievances related to noise complaints. Those materials were produced to Lipsey as part of his initial request for production. Accordingly, further fact discovery concerning the impact of Guard One on inmates from Defendants is not needed to resolve Lipsey's claim.

/ / /

/ / /

/ / /

4

1    Additionally, Defendants have already offered to provide Lipsey with answers to specific

2    questions on an informal basis, as they routinely do with all Plaintiffs' requests.  (*See* attached

3    Declaration of Elise Owens Thorn (Thorn Decl.), Ex. B.)  Lipsey has not offered any justification

4    for why this is insufficient to meet his needs, nor has he asserted that Defendants have refused to

5    provide such information informally.

6    **III.    IF FACT DISCOVERY IS DEEMED APPROPRIATE, IT SHOULD BE LIMITED.**

7    If the Court were to agree with Lipsey that the prior order limiting his discovery should be

8    expanded, the Court should still not permit discovery "within the ordinary limits of Rule 26."

9    Such expansive discovery is wholly unnecessary to resolve Lipsey's claim and would impose a

10    heavy burden on Defendants without commensurate benefit.  As this Court stated in its order

11    permitting Lipsey's intervention, that intervention is "for the *limited* purpose of addressing his

12    claim that Guard One causes sleep deprivation in violation of the Eighth Amendment to the

13    United States Constitution."  (ECF No. 6487 at 3 [emphasis added].)  This is significantly

14    narrower than the scope of formal Rule 26 discovery, which permits discovery on "any

15    nonprivileged matter that is relevant to any party's claim or defense . . ." Fed. R. Civ. P. 26(b)(1).

16    None of the cases Lipsey cites in his motion—not one—support his claim for broad-based

17    Rule 26 discovery.  In *Plata,* the question was not whether Rule 26 discovery should be re-

18    opened, but whether the court had authority to set a schedule for expert disclosures before a

19    termination motion could be filed.  *See Plata v. Brown,* 754 F.3d 1070, 1078 (9th Cir. 2014).  In

20    *Grynberg v. BP P.L.C.,* the district court *denied* discovery that was not "directly relevant to the

21    issues raised in [plaintiffs'] Rule 60(b) motion," noting that "courts generally embrace restrictive

22    discovery rights post-trial[.]"  *Grynberg*, 2016 WL 11472270 at *1-2 (citations omitted).  In

23    *Brumfield v. Dodd*, the district court granted a motion to compel discovery under Federal Rule of

24    Civil Procedure 69—a rule which is not at issue here—as contemplated by a permanent

25    injunction allowing such discovery.  *Brumfield*, 2013 WL 360572 at *2.  The district court in

26    *National Law Center on Homelessness and Poverty v. U.S. Dept. of Veterans Affairs* allowed

27    discovery "*limited* to the development of those facts *necessary* to advance the parties' arguments

28    with respect to defendants' motion to vacate the 1993 Order."  842 F. Supp. 2d 127, 131

5

1    (emphasis added). While this is only a partial list of the case law cited by Lipsey, none of the

2    cases cited in his motion stand for the proposition that an intervenor is automatically entitled to

3    broad-based pretrial discovery "within the ordinary limits of Rule 26," and certainly not decades

4    into the remedial phase of litigation, long after discovery has closed.

5        Defendants are not simply raising a speculative concern—Lipsey has already attempted to

6    serve multiple open-ended document requests dating back to before the introduction of the Guard

7    One system (*see* Thorn Decl., Ex. A), and his motion specifically notes that he has not had the

8    opportunity to take any depositions, clearly implying that he believes those to be necessary to

9    litigate his claim in intervention (*see* ECF No. 7146 at 9). Contrary to this implication, Lipsey

10   does not need to take the deposition of Secretary Allison nor review documents dating back to

11   2013 to determine whether Guard One causes sleep deprivation *now*. He certainly does not need

12   "all documents concerning training of CDCR officers or employees relating to noise or inmate

13   sleep" (without time limitation) or "documents sufficient to show the number of prisons subject to

14   the welfare check program before the introduction of the Guard One system." (*See* Thorn Decl.,

15   Ex. A at 9, 11.) Subjecting Defendants to this type of discovery would be unduly burdensome—

16   both in time and in cost—and clearly beyond the scope of Lipsey's limited claim in intervention.

17        Rather than allow open-ended discovery, if the Court believes any discovery is appropriate,

18   Defendants request that such discovery be limited to a reasonable timeframe, such as the past

19   year, and only cover those topics that *directly* address Lipsey's claim for prospective relief. No

20   more expansive fact discovery is necessary to resolve this intervention.

21                             **CONCLUSION**

22        Intervenor Lipsey has not provided a sufficient basis to re-open general discovery that

23   closed in 1993 before the trial in this action. His claim attacks a long-standing policy requiring

24   round-the-clock welfare checks and CDCR's process, approved repeatedly by the Special Master

25   and the Court, to monitor compliance with that policy. Lipsey's proposed discovery seems

26   designed to attack this Court's orders and the reports and opinions submitted by the Special

27   Master's expert on suicide prevention. But the time for objecting to those reports and for

28   appealing the orders regarding welfare checks and the Guard One system has passed. In addition

1    to putting CDCR in an unworkable procedural position, Lipsey's proposed discovery is overly

2    burdensome as it requires CDCR to bear the costs of obtaining documents and information that

3    Lipsey has already been provided, and to which he has access as a member of the *Coleman*

4    plaintiff class.  Nevertheless, should the Court find that some additional fact discovery is

5    appropriate, Defendants respectfully request that it be limited in scope and in time to those

6    inquiries which are directly necessary to resolve Lipsey's claim in intervention for prospective

7    relief.

8    **CERTIFICATION**

9        Counsel for Defendants certifies that she has reviewed the following orders relevant to the

10    issues raised in this opposition:  ECF Nos. 1830, 2139, 2255, 5271, 5429, 5762, and 6487.

11    DATED:  May 14, 2021                ROB BONTA
                                          Attorney General
12                                        DAMON MCCLAIN
                                          Supervising Deputy Attorney General
13

14
                                    By:  */s/ Elise Owens Thorn*
15                                       Elise Owens Thorn
                                         Deputy Attorney General
16

17                                  *Attorneys for Defendants*

18    DATED:  May 14, 2021                HANSON BRIDGETT LLP

19

20
                                    By:  */s/ Samantha Wolff*
21                                       PAUL B. MELLO
                                         SAMANTHA D. WOLFF
22                                       LAUREL E. O'CONNOR
                                         DAVID C. CASARRUBIAS
23                                       Attorneys for Defendants

24

25

26

27

28

7