ROB BONTA, State Bar No. 202668
Attorney General of California
MONICA N. ANDERSON, State Bar No. 182970
Senior Assistant Attorney General
DAMON MCCLAIN, State Bar No. 209508
Supervising Deputy Attorney General
ELISE OWENS THORN, State Bar No. 145931
LUCAS HENNES, State Bar No. 278361
NAMRATA KOTWANI, State Bar No. 308741
Deputy Attorneys General
 1300 I Street, Suite 125
 P.O. Box 944255
 Sacramento, CA 94244-2550
 Telephone: (916) 210-7318
 Fax: (916) 324-5205
 E-mail: Elise.Thorn@doj.ca.gov
*Attorneys for Defendants*

HANSON BRIDGETT LLP
PAUL B. MELLO, State Bar No. 179755
SAMANTHA D. WOLFF, State Bar No. 240280
LAUREL E. O'CONNOR, State Bar No. 305478
DAVID C. CASARRUBIAS, State Bar No. 321994
 1676 N. California Boulevard, Suite 620
 Walnut Creek, CA 94596
 Telephone: (925) 746-8460
 Fax: (925) 746-8490
 E-mail: PMello@hansonbridgett.com
*Attorneys for Defendants*

ROMAN M. SILBERFELD, State Bar No. 62783
GLENN A. DANAS, State Bar No. 270317
ROBINS KAPLAN LLP
 2049 Century Park East, Suite 3400
 Los Angeles, CA 90067-3208
 Telephone: (310) 552-0130
 Fax: (310) 229-5800
 E-mail: RSilberfeld@RobinsKaplan.com
*Special Counsel for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **RALPH COLEMAN, et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**GAVIN NEWSOM, et al.,**<br><br>Defendants. | 2:90-cv-00520 KJM-DB (PC)<br><br>**DECLARATION OF ELISE OWENS THORN** |

I, Elise Owens Thorn, declare as follows:

1.     I am employed as a Deputy Attorney General in the Correctional Law Section of the California Office of the Attorney General, attorney of record for Defendants in this action, and I am admitted to practice before this Court. I have personal knowledge of the facts set forth in this declaration, and if called upon to testify as to those facts, I could and would do so.

///

[3707178.5]

1

2.  On April 5, 2021, Kate Falkenstien, counsel for Plaintiff-Intervenor Lipsey, served on Defendants via email a document entitled "Plaintiff-Intervenor's Second Set of Requests for Production to Defendant." A true and correct copy of that document is attached to this declaration as **Exhibit A**.

3.  On April 6, 2021, Deputy Attorney General Lucas Hennes and I met and conferred with Ms. Falkenstien to discuss a joint schedule for adjudication of Lipsey's claim in intervention. During that call, we also discussed Lipsey's discovery requests from the day prior. Upon the conclusion of the call, Deputy Attorney General Lucas Hennes sent Ms. Falkenstien a letter confirming our discussion and restating our position regarding discovery. A true and correct copy of that letter is attached to this declaration as **Exhibit B**.

4.  On April 8, 2021, Ms. Falkenstien responded to the April 6 letter via email. In that response, Ms. Falkenstien withdrew the pending discovery requests, although she expressly reserved the right to serve them again in the future. A true and correct copy of this email is attached to this declaration as **Exhibit C**.

I declare under penalty of perjury that the foregoing is true. Executed this 14th day of May, 2021 at Sacramento, California.

By:  */s/ Elise Owens Thorn*
Elise Owens Thorn
Deputy Attorney General

# EXHIBIT A

1   REICHMAN JORGENSEN LEHMAN & FELDBERG LLP
    Shawna Ballard, State Bar No. 155188
2   Kate Falkenstien, State Bar No. 313753
    100 Marine Parkway, Suite 350
3   Redwood Shores, CA 94065
    Telephone: (650) 623-1401
4   Fax: (650) 623-1449
     Email: sballard@reichmanjorgensen.com
5           kfalkenstien@reichmanjorgensen.com
    *Attorneys for Plaintiff-Intervenor Christopher Lipsey*

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10                            SACRAMENTO DIVISION

11

12

13  **RALPH COLEMAN, et al.,**                Case No. S-90-0520-KJM-DB P

14                              Plaintiffs,   **PLAINTIFF-INTERVENOR'S SECOND SET
                                              OF REQUESTS FOR PRODUCTION TO**
15        **v.**                              **DEFENDANT**

16  **GAVIN NEWSOM, et al.,**                 Judge:        Hon. Kimberly Mueller

17                              Defendants.

18

19

20          Plaintiff-intervenor Christopher Lipsey, by and through his undersigned counsel, and

21  pursuant to Federal Rule of Civil Procedure 34(a), hereby requests that Defendant respond to the

22  following Second Set of Requests for Production of Documents and produce responsive documents

23  within her possession, custody, or control for inspection and copying at the offices of Reichman

24  Jorgensen Lehman & Feldberg LLP, 100 Marine Parkway, Suite 300, Redwood Shores, CA 94065,

25  within 30 days from the service hereof.  Defendant shall supplement these responses in accordance

26  with Federal Rule of Civil Procedure 26(e)(1).

27

28

**DEFINITIONS**

The following Requests for Production of Documents (collectively, the "Requests") are to be answered with reference to the definitions set forth below, each of which shall be deemed to be a material part of each Request.

1.     "Defendant" and "you" or "your" refer to intervenor-defendant Kathleen Allison, as well as any agents, representatives, attorneys, consultants, or any other persons acting or purporting to act on her behalf.

2.     "CDCR" means the California Department of Corrections and Rehabilitation.

3.     "Class counsel" means the lawyers representing the plaintiff class in the above-captioned case, including Michael Bien, Jeffrey Bornstein, Claudia Center, Lisa Ells, Ernest Galvan, Alexander Gourse, Margot Mendelson, Thomas Nolan, Sara Norman, Michael Nunez, Marc Shinn-Krantz, Donald Specter, Cara Trapani, Jessica Winter, Amy Xu, and Jenny Yelin.

4.     "Communication" means any contact, whether in person, in writing, oral, formal, informal, by telephone, or any method whereby knowledge, facts, or information is imparted or transmitted from one person or entity to another or to a file.

5.     "Complaint" means a document submitted by an inmate to a CDCR official regarding an inmate's concerns, including but not limited to grievances submitted on CDCR forms (such as form 602 and form 22), and any related responses by CDCR officials.

6.     "Document" or "documents" mean all items identified in Federal Rule of Civil Procedure 34(a)(1), however and by whomever prepared, produced, reproduced, disseminated, or made, in any form, in the possession, custody, or control of any of Defendant, her agents, representatives, and attorneys.  The terms "document" and "documents" include, but are not limited to, all written, typed, printed, recorded, photographic, or graphic matter of every type and description; and all letters, correspondence, telegrams, emails (whether maintained on a CDCR email system or on an external system, such as Defendant's personal email account(s)), memoranda, records, minutes of all types of meetings, contracts, subcontracts, agreements, guarantees, intra- and interoffice communications, audited or unaudited financial statements, audit reports, projections, account summaries, daily collateral reports, analyses, results of investigations,

1    reviews, bulletins, proposals, estimates, appraisals, recommendations, critiques, trip reports,

2    financial calculations, notices, diaries, books, desk calendars, appointment books, messages,

3    instructions, work assignments, notes, notebooks, drafts, data sheets, statistical records, graphs and

4    tables, photographs and other images, telephone records, tapes, audio recordings, video recordings,

5    voicemail, partial or complete reports of telephone conversations, text messages, real-time

6    electronic correspondence, public and governmental filings, opinions, and any other writings or

7    recordings.  Lipsey specifically requests discovery of documents, data, or information that exists in

8    electronic or magnetic form on any systems or media, including active systems, archive systems

9    and media, legacy systems and media, backup systems and media, externally hosted systems, cloud-

10    based systems, portable computing devices (such as laptop computers and smartphones), and

11    portable storage devices (such as disks and portable hard drives).  The term "documents" includes

12    communications.

13        7.    The "Guard One Order" means the order requiring the use of the Guard One system

14    issued on February 3, 2015 and published as Dkt. 5271 in the above-captioned case.

15        8.    The "Guard One system" means the system manufactured by TimeKeeping Systems

16    that allows a user to connect an electronic baton to a metal, electronic button, creating a

17    downloadable electronic record of the contact between the baton and button.

18        9.    "Guard One baton" means an electronic baton used as part of the Guard One system.

19        10.    "Guard One button" means an electronic button used as part of the Guard One

20    system.

21        11.    "Person" means an individual, corporation, nonprofit corporation, sole

22    proprietorship, partnership, limited partnership, professional association, joint venture, agency,

23    agent, trust, and/or any other legal entity.

24        12.    "Relating to," "regarding," or "concerning"—or any form of any of those terms—

25    means, in addition to its customary and usual meaning, constituting, reflecting, evidencing,

26    involving, relating to, concerning, recording, embodying, representing, containing, mentioning,

27    analyzing, studying, discussing, evaluating, supporting, contradicting, stating, describing, noting,

28    arising from, or being relevant to. As indicated, these terms necessarily include information that is

1   in opposition to, as well as in support of, Defendant's positions and claims in the above-captioned

2   case.

3       13.    "Welfare checks" mean the rounds conducted by correctional officers during which

4   officers walk around units to verify the health and safety of inmates.

5       14.    "Welfare check program" means the requirement that CDCR employees conduct

6   welfare checks at regular intervals (such as every 30 or 60 minutes) or at a minimum frequency

7   (such as once or twice per hour).

8                          **GENERAL PROVISIONS AND INSTRUCTIONS**

9       1.    All information and documents are to be divulged that are in your possession,

10  custody, or control or are within the possession, custody, or control of your attorneys, investigators,

11  agents, employees or other representatives of you or your attorneys or anyone else from whom you

12  have a superior right to compel production.

13      2.    In the event you withhold any document or information on the basis of privilege

14  (attorney-client communications, work product, or any other alleged privilege), for each document

15  state:

16          a.  the date and place of the communication and/or document;

17          b.  the identity of each person who was present at or who participated in such

18              communication or the author(s) and recipient(s) of the document;

19          c.  the type of communication;

20          d.  the general subject matter of the communication or document; and

21          e.  the nature of the privilege or other reason for not producing the communication or

22              document.

23      3.  The following rules of construction apply to these Requests:

24          a.  the term "all" shall be construed to mean each or any and the terms "each" or "any"

25              shall be construed to mean all as necessary to bring within the scope of the Request

26              all responses that might otherwise be construed to be outside its scope;

27

28

1     b. the connectives "and" and "or" shall be construed either disjunctively or

2      conjunctively as necessary to bring within the scope of the Request all responses

3      that might otherwise be construed to be outside its scope;

4     c. the use of the singular form of any word includes the plural, and vice versa;

5     d. any Request propounded in the masculine shall include the feminine, and vice versa;

6      and

7     e. any Request propounded in the present tense shall include the past tense, and vice

8      versa.

9   4. If you object to all or any portion of any category of documents called for by these

10 Requests, please produce all documents within each category to which your objections do not apply

11 and please state whether any documents are being withheld based on your objection.

12   5. Produce all documents as they are kept in the usual course of business, in the file

13 folders or other organizational order in which they are kept or organized. Plaintiff requests hard

14 copy documents not maintained in electronic form to be produced in electronic imaged form

15 including searchable text. Plaintiff requests that all electronically stored information that may be

16 responsive to these Requests be produced in native format unless that format can be read only by

17 Defendant's proprietary software. If the requested electronically stored information can be read

18 only by Defendant's proprietary software and if that information can be exported into an electronic

19 format that can be read by nonproprietary software (such as Microsoft Word or WordPerfect for

20 word-processed information, Microsoft Outlook "pst" format for email, and Microsoft Office

21 Access or Microsoft Excel for database information), then Plaintiff requests that such information

22 be produced in that electronic format. As to Documents or Communications that already exist as

23 .pdf files, copies of those .pdf files, including any metadata, should be produced. Plaintiff further

24 requests that each production include Concordance load files, consisting of a ".dat" file for data and

25 an ".opt" file for images, in a folder titled "DATA." Load files will provide document boundaries

26 and parent-child relationships for all produced data. Furthermore, load files will provide the

27 following coding field information, where available, for each produced document:

28

a.  BegDoc — First Bates number in the range of Bates numbers associated with the document.

b.  EndDoc — Last Bates number in the range of Bates numbers associated with the document.

c.  BegAttach — First Bates number in the range of Bates numbers associated with the document's attachments.

d.  EndAttach — Last Bates number in the range of Bates numbers associated with the document's attachments.

e.  PgCount — Page count of the document.

f.  Custodian — Name of custodian or source system from which the document was collected.

g.  TextPath — File path to the document level OCR text file.

h.  Confidentiality — Confidentiality designation applied to the document (pursuant to the Consent Protective Order entered in this case).

i.  Redacted (Y/N) — Indication of the presence of any redactions in the document.

j.  MD5 Hash — MD-5 hash value of the document.

k.  From — Sender of the message.

l.  To — Addressee(s) of the message.

m.  CC — Person(s) copied on the message.

n.  BCC — Person(s) blind copied on the message.

o.  Subject — Subject line of the message.

p.  DateSent — Date the message was sent.

q.  TimeSent — Time the message was sent.

r.  DateReceived — Date the message was received.

s.  TimeReceived — Time the message was received.

t.  Author — Author of the document.

u.  Source Device — Device from which the document was collected.

v.  Source Path — File path of the location from the document was collected.

w.  DateCreated — Date the document was created.

x.  DateLastMod — Date the document was last modified.

y.  TimeLastMod — Time the document was last modified.

z.  NativeLink — File path of the document on the production media (only applicable to documents produced natively).

6.     If any of the documents requested have been destroyed, describe the contents of such documents as completely as possible, the date of destruction, and the name of the person who ordered or authorized the destruction.

7.     All Requests for discovery by Lipsey in this case are continuing. In the event that any information or documents come to your attention after you serve your responses to these Requests that are responsive to any Request below or that would alter or change a response in any way, and that were not included in your responses to the Requests, such additional information or documents shall be furnished to attorneys for Lipsey as soon as possible without further request.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

Please produce the following documents and things in your possession, custody, or control:

**REQUEST FOR PRODUCTION NO. 2**

All documents or communications relating to or discussing complaints submitted by inmates (including but not limited to Lipsey) in any CDCR institution to Defendant or other current or former CDCR employees or officers regarding the Guard One system, the welfare check program, night-time noise, or sleep deprivation.

**REQUEST FOR PRODUCTION NO. 3**

All documents relating to any investigation, analysis, evaluation, or study of any noise caused or alleged to be caused by the Guard One system or welfare check program.

**REQUEST FOR PRODUCTION NO. 4**

All documents relating to any investigation, analysis, evaluation, or study of any impact on inmate sleep caused or alleged to be caused by the Guard One system or welfare check program.

**REQUEST FOR PRODUCTION NO. 5**

All documents relating to any investigation, analysis, evaluation, or study of any impact on inmate health caused or alleged to be caused by the Guard One system or welfare check program.

**REQUEST FOR PRODUCTION NO. 6**

All documents relating to any investigation, analysis, evaluation, or study of any impact on inmate suicides or attempted suicides caused or alleged to be caused by the Guard One system or welfare check program.

**REQUEST FOR PRODUCTION NO. 7**

All documents relating to the CDCR's adoption of the Guard One system, including but not limited to communications with class counsel, communications with the supplier or manufacturer of the Guard One system, internal analyses of the costs and benefits of the Guard One system, or other internal communications regarding adoption of the Guard One system.

**REQUEST FOR PRODUCTION NO. 8**

All documents relating to any potential or actual modification of the Guard One system or welfare check program, including but not limited to changes in the frequency of welfare checks, changes to the settings of the Guard One batons (such as whether the batons make a beeping noise when they interact with the Guard One buttons), or changes to the doors in areas where the Guard One system is or was used to conduct welfare checks.

**REQUEST FOR PRODUCTION NO. 9**

All documents concerning the beeping of the Guard One batons, including but not limited to whether to turn off the beeping.

**REQUEST FOR PRODUCTION NO. 10**

All documents concerning the frequency of welfare checks, including but not limited to the decision to conduct checks twice an hour and the decision to reduce the frequency of the checks in certain areas.

**REQUEST FOR PRODUCTION NO. 11**

All documents concerning alternative methods (other than the Guard One system) that CDCR considered at any time to monitor correctional officers' compliance with the welfare check program.

**REQUEST FOR PRODUCTION NO. 12**

Documents sufficient to show the cost of CDCR's purchases of equipment used to carry out the Guard One system.

**REQUEST FOR PRODUCTION NO. 13**

All documents concerning CDCR officers' compliance or lack of compliance with the welfare check program before the introduction of the Guard One system, including but not limited to any evidence of falsified records of welfare checks.

**REQUEST FOR PRODUCTION NO. 14**

All documents concerning compliance with the Guard One Order, including but not limited to communications with class counsel and internal communications regarding the requirements of the Guard One Order.

**REQUEST FOR PRODUCTION NO. 15**

All documents reflecting or relating to communications with class counsel related to the Guard One system, alternatives to the Guard One system, the welfare check program, sleep deprivation, noise, or the Guard One Order, whether before or after the entry of the Guard One Order.

**REQUEST FOR PRODUCTION NO. 16**

All documents concerning training of CDCR officers or employees related to the Guard One system or the welfare check program, including but not limited to policy manuals, internal memoranda, training presentations, or audio or video training programs.

**REQUEST FOR PRODUCTION NO. 17**

All documents concerning training of CDCR officers or employees relating to noise or inmate sleep, including but not limited to policy manuals, internal memoranda, training presentations, or audio or video training programs.

**REQUEST FOR PRODUCTION NO. 18**

All documents concerning training of CDCR officers or employees relating to suicide, including but not limited to policy manuals, internal memoranda, training presentations, or audio or video training programs.

**REQUEST FOR PRODUCTION NO. 19**

Documents sufficient to identify suicides or attempted suicides among mentally ill prisoners while subject to the Guard One system (in units including but not limited to Security Housing Units, Administrative Segregation Units, Condemned Housing Units, and Psychiatric Services Units).

**REQUEST FOR PRODUCTION NO. 20**

Documents sufficient to identify suicides or attempted suicides among non-mentally ill prisoners while subject to the Guard One system (in units including but not limited to Security Housing Units, Administrative Segregation Units, Condemned Housing Units, and Psychiatric Services Units).

**REQUEST FOR PRODUCTION NO. 21**

Documents sufficient to identify suicides or attempted suicides among mentally ill prisoners while subject to the welfare check program before the introduction of the Guard One system (in units including but not limited to Security Housing Units, Administrative Segregation Units, Condemned Housing Units, and Psychiatric Services Units).

**REQUEST FOR PRODUCTION NO. 22**

Documents sufficient to identify suicides or attempted suicides among non-mentally ill prisoners while subject to the welfare check program before the introduction of the Guard One system (in units including but not limited to Security Housing Units, Administrative Segregation Units, Condemned Housing Units, and Psychiatric Services Units).

**REQUEST FOR PRODUCTION NO. 23**

Documents sufficient to show the number of prisoners subject to the Guard One system (in units including but not limited to Security Housing Units, Administrative Segregation Units, Condemned Housing Units, and Psychiatric Services Units).

**REQUEST FOR PRODUCTION NO. 24**

Documents sufficient to show the number of prisoners subject to the welfare check program before the introduction of the Guard One system (in units including but not limited to Security Housing Units, Administrative Segregation Units, Condemned Housing Units, and Psychiatric Services Units).

**REQUEST FOR PRODUCTION NO. 25**

All documents created after December 6, 2018 and concerning Lipsey's health, including but not limited to records of requests for medical attention, records of visits with medical professionals, or mental healthcare records.

**REQUEST FOR PRODUCTION NO. 26**

Documents sufficient to identify the CDCR officers or employees who conducted welfare checks in units where Lipsey was or is housed, including but not limited to personnel assignment records.

**REQUEST FOR PRODUCTION NO. 27**

Documents sufficient to identify any persons who conducted any training related to the Guard One system, the welfare check program, inmate sleep, suicide, or excessive noise.

**REQUEST FOR PRODUCTION NO. 28**

Documents sufficient to show the layout of the units where Lipsey was or is housed and subject to welfare checks.

**REQUEST FOR PRODUCTION NO. 29**

Any photographs or video recordings of the equipment used in the Guard One system.

**REQUEST FOR PRODUCTION NO. 30**

Any photographs or audio or video recordings of CDCR officers or employees conducting welfare checks before or after the introduction of the Guard One system.

1  Dated: April 5, 2021                          Respectfully submitted,

2                                                  /s/ Kate M. Falkenstien

3                                                REICHMAN JORGENSEN LEHMAN &
                                                 FELDBERG LLP
4                                                Shawna L. Ballard (SBN 155188)
                                                 Kate Falkenstien (SBN 313753)
5                                                100 Marine Parkway, Suite 300
                                                 Redwood Shores, California 94065
6                                                Telephone: (650) 623-1401
                                                 Fax: (650) 623-1449
7                                                sballard@reichmanjorgensen.com
                                                 kfalkenstien@reichmanjorgensen.com
8
                                                 *Attorneys for Plaintiff-Intervenor*
9                                                *Christopher Lipsey*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

## **CERTIFICATE OF SERVICE**

3

The undersigned certifies that on April 5, 2021, PLAINTIFF-INTERVENOR'S SECOND

SET OF REQUESTS FOR PRODUCTION TO DEFENDANT was served electronically, via

4

email, on counsel of record in this case, at the following addresses:

5

6

Adriano Hrvatin

7

Adriano.hrvatin@doj.ca.gov
Elise Owens Thorn

8

Elise.thorn@doj.ca.gov
Kyle Lewis

9

Kyle.lewis@doj.ca.gov
Lucas Hennes

10

Lucas.hennes@doj.ca.gov
Tyler Heath

11

Tyler.heath@doj.ca.gov

12

13

Dated: April 5, 2021                                    /s/ Kate Falkenstien

14

Kate Falkenstien

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT B

**MATTHEW RODRIQUEZ**
*Acting Attorney General*

*State of California*
**DEPARTMENT OF JUSTICE**

1300 I STREET, SUITE 125
P.O. BOX 944255
SACRAMENTO, CA 94244-2550

Public:  (916) 445-9555
Telephone:  (916) 210-7323
Facsimile:  (916) 324-5205
E-Mail:  Lucas.Hennes@doj.ca.gov

Kate Falkenstein
Attorney for Plaintiff-Intervenor Lipsey
Reichman Jorgensen Lehman & Feldberg LLP
kfalkenstien@reichmanjorgensen.com

April 6, 2021

RE:    *Coleman v. Newsom, et al.,*
          USDC, Eastern District of California, Case No. 2:90-cv-00520 KJM-DB (PC)

Dear Ms. Falkenstein:

Thank you for meeting and conferring to discuss a proposed schedule for adjudication of Lipsey's claim on the merits per the Court's recent order (ECF No. 7095).  This letter is to confirm that you will send us by no later than April 9 (the end of this week) a draft joint statement setting forth your proposed schedule for adjudication of your client's claim.  We will provide you with our input to the draft joint report by no later than April 16.  We also confirm below our understanding of the current posture of Lipsey's intervention.

First, Defendants understand Lipsey's sole permitted claim in intervention to be that the implementation of the Guard One system causes sufficient noise to unconstitutionally deprive administrative-segregation inmates of sleep on a systemic level in violation of the Eighth Amendment to the United States Constitution.  (*See* ECF No. 6487 at 3 ["Lipsey may intervene for the limited purpose of addressing his claim that Guard One causes sleep deprivation in violation of the Eighth Amendment to the United States Constitution"].)  To the extent that Mr. Lipsey wishes to litigate issues beyond this limited scope—including, for example, whether Guard One prevents suicides, the manner in which Guard One was approved by the Court and parties, and issues surrounding Defendants' thirty-minute welfare checks generally—it is Defendants' position that those issues exceed the scope of Lipsey's limited claim in intervention.

As we have repeatedly stated, Lipsey's claim runs directly counter to the findings and recommendations made and reported by the Special Master and his experts in this case.  And as discussed during our meet-and-confer call, Defendants' use of Guard One is court-ordered and approved by the Special Master, and any injunction preventing use of Guard One would contravene existing court orders.  Rather than pursuing litigation to resolve this claim, we suggested to you that it would be more appropriate to seek a modification of this court order, either under Rule 60(b) of the Federal Rules of Civil Procedure or through a similar vehicle.

17423356.1

April 6, 2021
Page 2

Separately, based on our discussion during our meet-and-confer call, it is apparent to Defendants that Lipsey believes he is entitled to conduct full fact discovery under the Federal Rules of Civil Procedure.  As stated during the call, it is Defendants' position that discovery is closed in this remedial-phase, post-judgment case, and that it has been since prior to the commencement of the trial in 1993.  Additionally, the Court already issued an order limiting the scope of discovery concerning Lipsey's claim to inmate complaints about Guard One (ECF No. 6487 at 4), and Defendants have already responded to that limited discovery.  Regardless, Defendants reiterate their openness to providing documents and information to you on an informal basis, as has been done in this case with Plaintiffs for several years.  Defendants would agree to informally respond to focused requests for specific documents, rather than open-ended Rule 34 document requests seeking broad categories of documents.  Should Lipsey seek to re-open formal discovery to adjudicate his claim in intervention, you must request leave to do so from the Court.

Defendants acknowledge that this case has an extremely voluminous docket and that you may not have reviewed all the relevant orders issued by the Court.  Of note, the Court has a standing order requiring the attorney filing a motion to certify that they have reviewed all applicable orders (and listing the orders by ECF number).  More recently, the Court has issued an order requiring the parties to seek leave to file motions not expressly authorized.  Each of those orders are attached to this letter for your convenience.

We hope to resolve this claim in intervention amicably and expediently.

Sincerely,

LUCAS L. HENNES
Deputy Attorney General

For     MATTHEW RODRIQUEZ
Acting Attorney General

CC:     Brian C. Baran
        Matthew Lopes
        Kerry Walsh

LLH:

17423356.1

1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   RALPH COLEMAN, et al.,                  No. 2:90-cv-0520 KJM DB P

12                   Plaintiffs,

13          v.                                ORDER

14   EDMUND G. BROWN, JR., et al.,

15                   Defendants.

16

17              The court has continued the November 3, 2017 contempt hearing and set a status

18   conference for December 20, 2017 at 10:00 a.m. Min. Order, Oct. 23, 2017, ECF No. 5720. This

19   order explains the continuance and provides the status conference agenda.

20   I.     BACKGROUND

21              On April 19, 2017, the court ordered defendants to "come into full and permanent

22   compliance with Program Guide timelines for transfer of inmate-patients to acute and

23   intermediate care facility programs." ECF No. 5610 at 13.[1]  In accordance with the court's

24   previously signaled intention to exclude certain periods from this requirement, *see id.* at 7 and

25   ECF No. 5583 at 25, the parties were also ordered to "develop an addendum to the Program

26   _____

27          [1] In this order, all references to page numbers in a document filed in the Electronic Case
     Filing (ECF) system of this court or the court of appeals are to the page number assigned by the
     ECF system and located at the top of the page.

28

1

Guide" identifying exceptions to the timelines. *Id*. at 13-14; *see also id*. at 7 and ECF No. 5583 at

25 (prior order signaling intent to exempt certain time periods from timeline calculations).

Defendants were further ordered to include in their monthly Census and Waitlists

Report for Inpatient Mental Health care (monthly report)

> (1) the total number of inmate-patients, if any, who waited beyond Program Guide timelines for transfer to an acute inpatient mental health care program; (2) the total number of inmate-patients, if any, who waited beyond Program Guide timelines for transfer to an ICF [intermediate care facility] mental health care program; (3) the number of days each inmate-patient waited beyond Program Guide timelines; and (4) the total number of inmate-patient wait days for the month (category (1) plus category (2) plus category (3)).

ECF No. 5610 at 14.  In addition,

> [p]ending development of the addendum required by paragraph 2 of this order, defendants shall include with their monthly report the total number of inmate-patient days they believe should be excluded from the total reported and an explanation why those days should be excluded.

*Id*.

By its terms, the order is "enforceable by civil contempt proceedings and, if

necessary, imposition of monetary sanctions to coerce compliance." *Id*. at 13.  The court set a

November 3, 2017 hearing to consider "findings of contempt and requirement of payment of fines

that may have accumulated on or after May 16, 2017," with the hearing to be vacated "if no fines

have accumulated." *Id*. at 14.

Finally, the Special Master was ordered to "convene a workgroup to focus on

outstanding issues related to compliance with the Program Guide timelines for transfer to mental

health crisis beds. . . ." *Id*.  The parties were required to file a joint report explaining which issues

the workgroup resolved, and an evidentiary hearing was set to resolve outstanding issues related

to compliance with the twenty-four hour timeline for transfer to mental health crisis bed (MHCB)

care. *Id*. at 14-15.  The court also ordered the workgroup to develop an addendum for exceptions

to the MHCB transfer timeline. *Id*. at 15.

Defendants have appealed the April 19, 2017 order.  ECF No. 5621.  The appeal is

still pending. *See* Court of Appeals Docket # 17-16080.  The court directed the parties to file a

1    joint statement of their positions on how defendants' appeal impacts this court's jurisdiction over

2    further proceedings.  Min. Order, July 6, 2017, ECF No. 5641.  In the joint statement, defendants

3    argued that the pending appeal divests this court of jurisdiction to decide whether defendants

4    must fully comply with the Program Guide transfer timelines and to adjudicate contempt

5    proceedings for any such noncompliance.  Joint Statement, July 20, 2017, ECF No. 5651 at 7-9.

6    In the alternative, defendants requested the court defer the contempt hearing "to avoid the

7    potential waste of resources in the event the Order is overturned on appeal."  *Id*. at 9.  Plaintiffs

8    argued that the court retains jurisdiction over all issues because the order defendants have

9    appealed is neither a final nor an appealable order.  *Id*. at 12-16.  Plaintiffs have moved to dismiss

10   the appeal for lack of jurisdiction.  Court of Appeals Docket # 17-16080, ECF No. 10.  Plaintiffs'

11   motion is fully briefed.  Court of Appeals Docket # 17-16080, ECF No. 20 (plaintiffs' reply brief

12   filed October 26, 2017).

13           In the meantime, the court has approved the parties' stipulations to complete and

14   submit to the court the proposed addenda creating exceptions to the Program Guide transfer

15   timelines by November 30, 2017.  *See* ECF Nos. 5631, 5632, 5660.

16           At a September 28, 2017 hearing concerning obstacles to compliance with the

17   twenty-four hour timeline for transfer to MHCB care the court noted that it anticipated

18   considering a full report in November on the status of efforts to comply with that timeline and, as

19   necessary, enforcement thereof.  ECF No. 5707 at 5-6, 123-124; *see also* ECF No. 5710 at 2.  In a

20   follow-up order the court resolved three issues considered at the September 28, 2017 hearing.

21   Order, Oct. 10, 2017, ECF No. 5710.  Specifically, the court denied defendants' request to start

22   the twenty-four hour referral timeline only after in-person clinical assessments and to allow

23   inmate-patients identified as needing MHCB level care to be placed in alternative housing

24   pending that in-person clinical assessment.  *Id*. at 11-14.  It also rejected defendants' practice of

25   ending the twenty-four hour transfer timeline when an inmate-patient is placed in a transport

26   vehicle, rather than when the inmate-patient is placed in an MHCB.  *Id*. at 14-16.  Finally, it

27   required development of updated data templates for reporting on access to MHCB care.  *Id*. at 16-

28   17.  In that order, the court directed the parties to be prepared at the November 3, 2017 hearing to

1    provide a filing date for a current, consolidated Program Guide incorporating all modifications

2    required by court orders issued since March 2006. *Id*. at 16 n.6. The court further indicated that

3    the parties should be prepared to address at that hearing what effect the court's resolution of the

4    transportation question noted above will have on reporting going forward. *Id*. at 16.

5            On October 19, 2017, when the November 3 hearing still remained on calendar,

6    defendants filed a request for clarification of the scope of that hearing and for a pretrial

7    conference. ECF No. 5717. Plaintiffs responded on October 21, 2017. ECF No. 5719. The

8    court has denied defendants' request for pretrial conference and clarification without prejudice,

9    ECF No. 5720, and provides additional guidance to the parties in this order.

10   II.     EFFECT OF DEFENDANTS' APPEAL ON NOVEMBER 3, 2017 HEARING

11           It is settled that "[t]he filing of a notice of appeal is an event of jurisdictional

12   significance -- it confers jurisdiction on the court of appeals and divests the district court of its

13   control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer*

14   *Discount Co.*, 459 U.S. 56, 58 (1982). If a notice of appeal is defective "by reason of

15   untimeliness, lack of essential recitals, or reference to a non-appealable order" and that defect "is

16   clear to the district court," the district court "may disregard the purported notice of appeal and

17   proceed with the case, knowing that it has not been deprived of jurisdiction." *Ruby v. Secretary*

18   *of U.S. Navy*, 365 F.2d 385, 389 (9th Cir. 1966). Where a notice of appeal's effect is unclear, the

19   district court "may decline to act further until the purported appellee obtains dismissal of the

20   appeal in the court of appeals." *Id*.

21           In this case, the question of whether the Notice of Appeal divests this court of

22   jurisdiction turns on whether the April 19, 2017 order is non-appealable. Defendants' Notice of

23   Appeal sheds scant light on the matter. It reads in full:

24               Defendants appeal from this Court's Order of April 19,
             2017 (ECF No. 5610), which requires "full and permanent
25           compliance with Program Guide timelines for transfer of inmate-
             patients to acute and intermediate care facility programs."
26           Defendants remain strongly committed to providing inmate-patients
             with timely access to inpatient and other appropriate care for
27           serious mental-health needs. They also intend to comply with the
             obligations outlined in the appealed order—in cooperation with the

28

Court, Special Master, and Plaintiffs—and do not anticipate seeking any stay pending appeal.

However, the Order raises important underlying legal issues that are essential to properly litigating this complex and ongoing remedial class action, and that must be pursued on appeal now in order to obtain clarity and avoid a risk of procedural forfeiture. Defendants also appeal from all earlier, nonfinal orders that produced the Order and are thereby merged with it. *See Am. Ironworks & Erectors Inc. v. N. Am. Const. Corp.*, 248 F.3d 892, 897 (9th Cir. 2001).

ECF No. 5621 at 1-2. Despite defendants' representations in the Notice of Appeal, *id*. at 1, and to this court in the Joint Statement on Jurisdiction, ECF No. 5651 at 9, that they intended to comply with the April 19, 2017 order, their monthly reports filed through October 15, 2017 show 154 inmate-patients waiting a total of 444 days past Program Guide timelines for transfer to inpatient care with no identified exception excusing the delay. *See* Exhibit E to ECF Nos. 5636, 5659, 5664, 5684, 5715. This number of days represents $444,000.00 in accumulated fines as contemplated by the court's April 19, 2017 order, subject to a full show cause hearing. Because fines have accumulated, the show cause hearing will be held in the future. *See* ECF No. 5610 at 14. As set forth below, however, the court has elected to postpone the hearing during the pendency of defendants' appeal.

The parties' joint statement on jurisdiction makes clear defendants are appealing that part of the April 19, 2017 order that requires them to either fully comply with Program Guide timelines or face contempt and monetary sanctions. ECF No. 5651 at 7. In opposition to plaintiffs' motion to dismiss the appeal defendants argue the order "granted an injunction, or at a minimum, modified prior injunctive relief ordered in this case." Court of Appeals Docket # 17-16080, ECF No. 14 at 7.

Plaintiffs contend the appeal does not divest this court of jurisdiction, relying on the settled rule that "[a] civil contempt order is ordinarily not appealable until the district court has adjudicated the contempt motion and applied sanctions." *Plata v. Schwarzenegger*, 560 F.3d 976, 980 (9th Cir. 2009) (citing *SEC v. Hickey*, 323 F.3d 1123, 1127 (9th Cir. 2003)). The April 19, 2017 order neither adjudicated a contempt finding nor imposed sanctions; indeed, the order gave defendants six months to demonstrate compliance and avoid a contempt hearing. *See* ECF

5

1    No. 5610 at 14.  Had defendants' appeal focused solely on the order's enforceability by civil

2    contempt proceedings and coercive monetary sanctions, the court would retain jurisdiction.  Yet

3    that is not the focus of defendants' appeal.

4         As noted above, defendants contend that the April 19, 2017 order imposes a

5    requirement not found in prior orders and is therefore either an injunction or a modification of

6    existing injunctive relief.  *See* ECF No. 5651 at 7-8; Court of Appeals Docket # 17-16080 at 7-8,

7    16.  Defendants also appeal what they characterize as the court's determination that "deviation

8    from the Program Guide timelines amounts to a violation of the Eighth Amendment's deliberate

9    indifference standard."  ECF No. 5651 at 7.

10        The court of appeals has jurisdiction over district court orders that grant or modify

11   injunctions.  *See Thompson v. Enomoto*, 815 F.2d 1323, 1326 (9th Cir. 1987) (quoting 28 U.S.C.

12   § 1292(a)(1)).  The April 19, 2017 order, however, did neither.  Defendants were ordered in

13   March 2006 to "immediately implement" all undisputed provisions of their remedial plan,

14   including the timelines for transfer to acute and ICF levels of inpatient care.  *See*, *e.g.*, *Coleman v.*

15   *Brown*, 938 F.Supp.2d 955, 972 (E.D. Cal. 2013); ECF No. 5583 at 3-4.  The April 19, 2017

16   order was issued to enforce these transfer timelines after a lengthy period of noncompliance.  *See*

17   ECF No. 5610 at 2, 6-7.  Other than to allow clearly defined exceptions to the timelines, *see id*. at

18   6, 13-14, a provision not included in defendants' appeal, *see* ECF No. 5651 at 9, the April 19,

19   2017 order did not modify the March 2006 order.  To the extent allowing for exceptions is a

20   material modification, the modification benefits defendants.  In any event, it does not appear to

21   this court that the April 19, 2017 order is appealable under 28 U.S.C. § 1292(a)(1).

22        The court also is unpersuaded that defendants' argument on appeal concerning the

23   role of deliberate indifference divests this court of jurisdiction to hear contempt proceedings

24   arising from the fines that have accumulated.  *See* ECF No. 5610 at 4-5.  As explained in the

25   April 19, 2017 order, the court has at least twice rejected defendants' argument that ongoing

26   constitutional violations turn, at this stage of these remedial proceedings, on "'whether State

27   officials are deliberately indifferent to serious mental-health needs.'"  *Id*. at 3 (quoting ECF No.

28   5595 at  12); *see Coleman v. Brown*, 938 F.Supp.2d at 988-89 (rejecting argument in April 5,

1    2013 order denying defendants' motion to terminate these proceedings); *Coleman v. Brown*, 28

2    F.Supp.3d 1068, 1077 (E.D. Cal. 2014) (rejecting same argument in April 10, 2014 order on

3    plaintiffs' motion to enforce court orders and for additional relief). Of these orders, defendants

4    appealed only the April 5, 2013 order, *see* ECF No. 4577, and the parties stipulated to voluntarily

5    dismiss that appeal. *See* Court of Appeals Docket # 13-15931, ECF No. 53 (filed May 21, 2015).

6    Defendants did not appeal the April 10, 2014 order.

7           The court's prior rulings on the role of deliberate indifference remain the law of

8    the case. *See*, *e.g.*, *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir. 1993). The court's April 19,

9    2017 order was preceded by an order to show cause filed March 24, 2017. ECF No. 5583. In

10   their response, defendants argued generally and hyperbolically, and at the same time somewhat

11   unclearly, that "perfection in meeting their own policies and guidelines should not be substituted

12   for Eighth Amendment deliberate indifference," ECF No. 5595 at 3, and that they were not acting

13   with deliberate indifference. *Id*. at 11. They never referenced, let alone distinguished, the court's

14   2013 or 2014 orders. *See id*., *passim*.

15          For these reasons as well, the court's April 19, 2017 order appears not to be an

16   appealable order. However, that conclusion is not so clear from the Notice of Appeal as to

17   warrant holding civil contempt proceedings while the appeal is pending. *Cf. Ruby v. Secretary of

18   U.S. Navy*, *supra*. Plaintiffs' motion to dismiss the appeal is largely premised on the arguments

19   included in their portion of the joint statement on jurisdiction. *Compare* ECF No. 5651 at 12-16

20   *with* Court of Appeals Docket # 17-16080, ECF No. 10, at 4-8. Thus, the jurisdictional questions

21   that this court would have to resolve to proceed while the appeal is pending are before the court

22   of appeals. The court therefore declines to proceed with the contempt hearing while defendants'

23   appeal is pending.

24          After the court continued the contempt hearing, ECF No. 5720, plaintiffs filed a

25   response to defendants' request for pretrial conference and clarification regarding the November

26   3, 2017 hearing. ECF No. 5719. Plaintiffs' response suggests, *inter alia*, that continuing the

27   contempt proceedings for ninety days "would allow the parties and the Court to assess whether

28   Defendants' recent compliance can be sustained." *Id*. at 2. In their October 16, 2017 monthly

Case 2:90-cv-00520-KJM-DB   Document 5726   Filed 11/06/17   Page 8 of 11

1   report, defendants do report that since September 13, 2017, all inmate patients not subject to a

2   previously agreed-upon exception have been transferred to acute or ICF inpatient care within

3   Program Guide timelines.  ECF No. 5715 at 2.  With this information, the court agrees that it may

4   be useful to assess the sustainability of defendants' most recent compliance efforts as part of any

5   contempt proceeding.  For this additional reason, the court has taken the November 3, 2017

6   hearing off calendar, to be reset as discussed below.

7   III.   DEFENDANTS' REQUEST FOR PRE-TRIAL CONFERENCE AND
        CLARIFICATION
8

9         As noted, defendants have requested a pre-trial conference and clarification of the

10  scope of any contempt proceedings, ECF No. 5717, and plaintiffs have responded.  ECF No.

11  5719.  The court denied defendants' request without prejudice.  ECF No. 5720.  The court writes

12  now to clarify an issue presented in defendants' request and to confirm that it will set a pre-trial

13  conference, as appropriate, following resolution of defendants' appeal.

14        In their request, defendants state they "are prepared to present documentary

15  evidence and call a significant number of witnesses to testify to the treatment provided to the

16  approximately 150 inmates who may have been transferred to inpatient care outside Program

17  Guide timelines before September 13, 2017, and were not presented to the workgroups as

18  exceptions under the June 8, 2017 stipulation."  ECF No. 5717 at 3.  Plaintiffs object to this

19  evidence as "beyond the scope of the proceedings anticipated by the April 19, 2017 order."  ECF

20  No. 5719 at 2-3.

21        In an order filed December 9, 2016, this court articulated its deep concern about

22  defendants' assertion that inmate-patients not timely transferred to inpatient care nonetheless

23  received "high levels of mental health care" while they were awaiting transfer.  ECF No. 5529 at

24  2.  The court specifically was not convinced by defendants' evidence "that inmate-patients who

25  have exceeded Program Guide timelines for transfer to inpatient care in fact receive the mental

26  health care the Constitution requires while they are waiting."  *Id.* at 2.  The court explained:

27            As the Program Guide makes clear, each level of the MHSDS has
              specific admission criteria. *See* Program Guide, 2009 Revision, at
28            12-1-7 through 12-1-9. Referral to inpatient care "is available for

8

inmate-patients whose conditions cannot be successfully treated in the outpatient setting or in short-term MHCB placements." Program Guide at 12-1-9. By its own terms, defendants' remedial plan makes plain that inmates referred to inpatient mental health care *cannot be successfully treated* at lower levels of care or in MHCBs. MHCBs do, under the Program Guide, provide "*short-term inpatient care for seriously mentally disordered inmate patients awaiting transfer to a hospital program or being stabilized on medication prior to transfer to a less restrictive level of care.*" Program Guide at 12-1-8 (emphasis added). MHCBs are not, however, a substitute for the inpatient care provided through DSH programs. Referrals to DSH inpatient care represent the considered judgment of CDCR clinicians that those inmate patients need a higher level of care than is available in CDCR's EOP and MHCB programs.

*Id*. at 2-3 (emphasis in original). The court concluded that "at most, defendants' representation suggests that efforts are being made to maintain an unacceptable status quo for these inmates while access to essential inpatient care is delayed." *Id*. at 3.

Nowhere do defendants acknowledge the court's December 2016 order or its implications for their proposed defense to contempt proceedings in the form of individualized presentation of evidence. Moreover, the proposed defense misconstrues this court's role. It is patently not the court's role to evaluate the adequacy of care provided to individual class members who have waited beyond Program Guide timelines to be transferred to necessary inpatient hospital care; the court's job is to assess and enforce compliance with the requirements of defendants' remedial plan. The focus of any contempt hearing will be on defendants' systemic efforts to comply with the transfer timelines and to remove obstacles to compliance. The court will, at an appropriate time, set the matter as clarified for pre-trial conference and briefing.

Defendants' failure to acknowledge the December 9, 2016 order raises another concern of the court's, which has been building for at least the past two years. In its August 5, 2015 order, the court questioned the Department of State Hospital defendants' familiarity with this court's prior orders and the case history. *See* ECF No. 5333 at 2. Since then, defendants have filed briefs that fail to acknowledge or discuss prior relevant court orders. This order notes two examples: defendants' response to the March 24, 2017 order to show cause, ECF No. 5595, in which they failed to refer to prior orders on the role of deliberate indifference, and defendants' request for pretrial conference and clarification, ECF No. 5717, which fails to mention relevant

parts of the court's December 9, 2016 order.  Similarly, as discussed in another recent order,

defendants' objections to the Special Master's staffing report omitted reference to several key

court orders and contained at least one representation that contradicted earlier representations

contained in defendants' 2009 Staffing Plan.  *See* Order filed Oct. 10, 2017, ECF No. 5711, at 14-

17.

It should not have to be said:  All parties to this action and their counsel must be

fully familiar with the remedial plans and court orders in this case.  To that end, going forward

each brief filed by any party shall be accompanied by counsel's certification that they have read

all court orders relevant to any issue addressed in such brief, including a list of those orders.  The

court suggests to the parties they may wish to develop a comprehensive agreed-upon list of

controlling orders by subject area, for ease of reference in the required certifications.

IV.     AGENDA FOR DECEMBER 20, 2017 STATUS CONFERENCE

The agenda for the December 20, 2017 status conference will be as follows:

A.  Confirmation and finalization of the Program Guide addenda setting forth

exceptions to the Program Guide timelines for transfer to acute inpatient care, ICF inpatient care

and MHCBs, and timelines for completion of the referral process when such exceptions apply;

B.  Discussion of how the court's October 10, 2017 order addressing transportation

time for transfer to mental health crisis beds (MHCBs) affects future reporting;

C.  Update on the effectiveness of steps defendants are taking to improve the

timeliness of MHCB transfers;

D.  Discussion of a timeframe for submission of new templates for reporting on

MHCB transfers and for issuance of an enforcement order, if necessary, to achieve compliance

with the Program Guide's twenty-four hour timeline for transfer to MHCB care; and

E.  Determination of a filing date for a current, consolidated Program Guide

incorporating all modifications required by court orders issued since March 2006.

With respect to item A, the court expects the parties will submit on or before

November 30 a joint statement proposing language for addenda to the Program Guide as required

1  by this court's April 19, 2017 order and in accordance with their court-approved stipulations,

2  ECF Nos. 5631 and 5660.

3         IT IS SO ORDERED.

4  DATED:  November 3, 2017.

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al., | No. 2:90-cv-0520 KJM KJN P |
| Plaintiffs, | |
| v. | ORDER |
| GAVIN NEWSOM, et al., | |
| Defendants. | |

The court convened the fourth and final quarterly status conference of 2020 by videoconference on December 18, 2020 at 10:00 a.m. *See* ECF No. 6998. At hearing, the court signaled its intention to strike from the record all suggestions for court action presented under the guise of status reports and other documents the court deems non-responsive to its orders. The court also indicated it would provide further clarification following hearing, as it does here.

As the court reviewed on the record, examples of the type of filing the court is striking include, but are not limited to:

1. Plaintiffs' suggestion that Enhanced Outpatient Program (EOP) inmates should not be housed in administrative segregation units. *See*, *e.g.*, ECF No. 6937 at 10-11.

2. Defendants' brief attached to their staffing proposal, ECF No. 6978.

1

3. Defendants' statement on specific suicide prevention issues, ECF No. 6980, to the extent it refers to definitions of foreseeability and preventability as "the Special Master's" definitions and, more generally, to the extent they suggest "foreseeability" and "preventability" analyses have been separated from suicide reviews, particularly in the area of review of clinical inadequacies leading to suicides.

4. Plaintiffs' suggestion that the court can interpret arguments in plaintiffs' July 15, 2020 brief, ECF No. 6766, as a motion for referral of this matter to a three-judge court for consideration of prison population reduction measures targeting the plaintiff class.

Defendants' brief attached to the staffing proposal, ECF No. 6978, is stricken in its entirely. The staffing proposal, ECF No. 6978-1, however, remains of record. The other content referenced above is stricken from the documents in which it is found, though the documents otherwise remain part of the record to the extent they contain material not stricken. The court will not act on those items or any other such requests that may remain on the court's docket. Nothing in this order precludes any party from seeking leave to file a motion on these matters consistent with the further requirements of this order set forth below.

Going forward, any party seeking relief from this court, including from any existing order of this court, must first file a request for leave to file a motion, describing with particularity the relief to be sought and the steps the party has taken to exhaust meet and confer efforts with all opposing counsel. The request also should describe communications with the Special Master regarding the proposed motion as part of the requester's due diligence in determining whether the parties are at impasse. Any such request must not exceed five (5) pages. The court will not entertain any motion unless a request for leave to file that complies with this order is first filed and then the court grants it.

IT IS SO ORDERED.

DATED: December 23, 2020.

2

# EXHIBIT C

| | |
|---|---|
| **From:** | Kate Falkenstien |
| **To:** | Lucas Hennes; Elise Thorn; Damon McClain; Namrata Kotwani |
| **Cc:** | Brian C. Baran |
| **Subject:** | Lipsey Coleman proposed schedule |
| **Date:** | Thursday, April 8, 2021 1:10:42 PM |
| **Attachments:** | 2021 04 08 joint statement on schedule DRAFT.docx |

Hi Lucas,

Thank you for meeting with us earlier this week.  I understand your position that we must seek leave to take discovery.  While I disagree, on further thought, I think it would be most efficient to get clarity from the Court about the discovery issue upfront.  In this proposed schedule, I have set out an initial briefing schedule for a forthcoming motion to take discovery, and pushed back the later dates based on that.  We will file a request for leave to file our discovery motion along with the proposed schedule.  For now, we will withdraw our second set of RFPs, though we reserve the right to serve them again in the future.

I also reviewed your letter dated April 6.  I do not think it is productive right now for us to debate the merits of the discovery requests.  I disagree with you that the requests exceed the scope of Lipsey's claim, and I do not believe that the special master's findings bar Lipsey from investigating these issues further.  But we can confer further about the scope of the specific discovery requests once we resolve the threshold question of whether the Court wants discovery on Lipsey's claim in intervention.

As discussed on our call, please send any edits to the proposed schedule by next Friday, so that we can file on Monday.

Thanks,
Kate

Kate Falkenstien | 650-623-1425 | Reichman Jorgensen Lehman & Feldberg LLP

*NOTICE: This transmission is intended only for the use of the addressee and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify the sender immediately via reply e-mail, and then destroy all instances of this communication. Thank you.*