SHAWNA BALLARD, State Bar No. 155188
KATE FALKENSTIEN, State Bar No. 313753
Reichman Jorgensen Lehman & Feldberg LLP
  100 Marine Parkway, Suite 300
  Redwood Shores, CA 94065
  Telephone: (650) 623-1401
  Fax: (650) 623-1449
  Email: sballard@reichmanjorgensen.com
         kfalkenstien@reichmanjorgensen.com

BRIAN C. BARAN, State Bar No. 325939
Reichman Jorgensen Lehman & Feldberg LLP
  1710 Rhode Island Ave NW, 12th Floor
  Washington, DC 20036
  Telephone: (202) 894-7310
  Fax: (650) 623-1449
  Email: bbaran@reichmanjorgensen.com

*Attorneys for Plaintiff-Intervenor Christopher Lipsey*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **RALPH COLEMAN, et al.**<br><br>　　　　　　Plaintiffs,<br><br>　v.<br><br>**GAVIN NEWSOM, et al.,**<br><br>　　　　　　Defendants. | Case No. 2:90-cv-00520 KJM DB P<br><br>**PLAINTIFF-INTERVENOR CHRISTOPHER LIPSEY'S REPLY IN SUPPORT OF MOTION FOR LEAVE TO CONDUCT DISCOVERY**<br><br>Date:　　　　May 28, 2021<br>Time:　　　　10:00 a.m.<br>Courtroom:　3, 15th floor (or via videoconference)<br>Judge:　　　Hon. Kimberly Mueller<br>Action Filed: April 23, 1990 |

**TABLE OF CONTENTS**

INTRODUCTION ..........................................................................................................................1

ARGUMENT ................................................................................................................................1

      I.      The Question In This Motion Is Whether *Any* Discovery Is Permissible. .....................1

      II.     The Special Master's Reports Are Not A Substitute for Discovery. .............................5

      III.    Rule 26's Limits Are Appropriate; There Is No Legal Justification for a New Standard. ..........................................................................................................8

CONCLUSION ...........................................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Brown v. Plata*,
    563 U.S. 493 (2011) ...........................................................................................................3

*Brumfield v. Dodd*,
    2013 WL 360572 (E.D. La. Jan. 30, 2013) .......................................................................3

*Cassirer v. Thyseen-Bornemisza Collection Found.*,
    862 F.3d 951 (9th Cir. 2017) .............................................................................................3

*Coleman v. Wilson*,
    912 F. Supp. 1282 (E.D. Cal. 1995) ..................................................................................8

*Ginest v. Bd. of Cnty. Comm'rs of Carbon Cnty.*,
    295 F. Supp. 2d 1274 (D. Wyo. 2004) ...............................................................................3

*Grynberg v. BP P.L.C.*,
    2016 WL 11472270 (D.D.C. Mar. 1, 2016) ...............................................................3, 4, 9

*H.K. Porter Co. v. Goodyear Tire & Rubber Co.*,
    536 F.2d 1115 (6th Cir. 1976) ...........................................................................................4

*Loyd v. Ala. Dep't of Corr.*,
    176 F.3d 1336 (11th Cir. 1999) .........................................................................................8

*Nat'l Law Ctr. on Homelessness & Poverty v. U.S. Dep't of Veterans Affs.*,
    842 F. Supp. 2d 127 (D.D.C. 2012) ...............................................................................3, 4

*Palmer v. Rice*,
    231 F.R.D. 21 (D.D.C. 2005) ............................................................................................3

*Plata v. Brown*,
    754 F.3d 1070 (9th Cir. 2014) .......................................................................................3, 4

**Rules**

Fed. R. Civ. P. 26 ...........................................................................................1, 8, 9, 10

Fed. R. Civ. P. 26(b)(1) ..............................................................................................10

Fed. R. Civ. P. 26(b)(2) ..............................................................................................10

Fed. R. Civ. P. 26(c)(1) ..............................................................................................10

# INTRODUCTION

This Court has already decided that Plaintiff Christopher Lipsey should be allowed to litigate his claim that the Guard One "welfare" checks cause sleep deprivation that amounts to cruel and unusual punishment. The next step is to unlock the discovery tools he needs to have a meaningful opportunity to do so. As Lipsey argued in his motion for leave to conduct discovery, ECF No. 7146, unlocking those tools is supported by the governing law and by this Court's consistent approach throughout the ongoing remedial phase of this case. And it is necessary to resolve several disputed factual issues relevant to Lipsey's Eighth Amendment claim.

In response, the California Department of Corrections and Rehabilitation (CDCR) does not meaningfully dispute that discovery can be appropriate in this procedural context and that there are relevant factual disputes. Instead, its argument that the Court should not allow *any* discovery boils down to its lingering disagreement with the Court's decision to allow Lipsey to litigate his claim, plus the unsupported assertion that Lipsey needs nothing more than the Special Master's reports, previously produced inmate grievances, and whatever else the CDCR might choose to disclose informally.

Assuming that some discovery is allowed, the CDCR does no more than quibble with the proper scope. The parties agree that discovery should be limited to the Eighth Amendment claim on which the Court permitted Lipsey to intervene. But the CDCR invites this Court to set aside Rule 26's well-defined standard in favor of inventing a new standard — and then to reach out and apply it now. The better course is to use the established standard, allow the parties to begin the discovery process and to meet and confer about issues as they arise, and then to address any concrete disputes that the parties cannot resolve without the Court's help.

# ARGUMENT

**I.    The Question in This Motion Is Whether *Any* Discovery Is Permissible.**

All that is before the Court right now is whether Lipsey should be allowed to take *any* discovery

as an intervenor at this stage in the case. That is the procedural posture because of the CDCR's own demands. Lipsey served requests for production on April 5, 2021. ECF No. 7165-1 at 16. When the parties met and conferred the next day, the CDCR refused to discuss any of the requests individually, instead taking the position "that discovery is closed in this remedial-phase, post-judgment case, and that it has been since prior to the commencement of the trial in 1993." *Id.* at 19. And it was the CDCR that suggested resolving that threshold issue through a motion for leave to conduct discovery. *Id.* Lipsey acceded to that approach and withdrew his document requests to allow the parties to first seek clarity on the CDCR's threshold objection. *Id.* at 34; *see also* ECF No. 7130 at 2 (joint statement agreeing to "submit briefs on this issue first and resolve whether discovery is permitted").

But now the CDCR wants to litigate the merits of hypothetical objections to hypothetical requests. *See* ECF No. 7165 at 2 (objecting to discovery on topics the CDCR characterizes as "whether Guard One prevents suicides, the manner in which Guard One was approved by the Court and parties, and issues surrounding the thirty-minute welfare checks generally"); *id.* at 6 (objecting to a hypothetical "deposition of Secretary Allison" and to producing "documents dating back to 2013" as irrelevant or unduly burdensome); *id.* (objecting to producing documents regarding CDCR officers' training and the number of prisoners subject to welfare checks before Guard One, as compared to the number subject to Guard One checks, as unduly burdensome). That is not before the Court at this time. Before asking the Court to resolve discovery disputes, the parties should narrow them through the ordinary process of meeting and conferring on objections to particular discovery requests, and only then presenting concrete disputes to the Court through briefing on specific requests and objections.[1]

---

[1] As just one example, the CDCR complains about the relevance of discovery into "whether Guard One prevents suicides." ECF No. 7165 at 2. This is exactly the sort of dispute that would be clarified by meeting and conferring on specific requests once the Court establishes that discovery is permissible. The parties briefly discussed this issue, and Lipsey noted that the effectiveness of Guard One could be relevant if the CDCR intends to argue that the "penological interests" in preventing suicide outweigh the sleep deprivation caused by the checks. *See* ECF No. 7146 at 13. If, however,

The CDCR offers almost no arguments contesting that discovery is permissible during the remedial phase of the case. It has no answer to the extensive procedural history and case law Lipsey cites. This case's history demonstrates that discovery and evidentiary hearings are appropriate and important parts of the ongoing remedial process, which requires continuous evaluation and adjustment. ECF No. 7146 at 6-8, 10 (citing ECF Nos. 2434, 4306, 4632, 4786, 5034, 5794, 6600); *see also Brown v. Plata*, 563 U.S. 493, 516 (2011) ("When a court attempts to remedy an entrenched constitutional violation through reform of a complex institution, such as this statewide prison system, it may be necessary in the ordinary course to issue multiple orders directing and adjusting ongoing remedial efforts.").

Case after case supports that approach. District courts' discretion in this area is broad. *See, e.g., Cassirer v. Thyssen-Bornemisza Collection Found.*, 862 F.3d 951, 958 n.6 (9th Cir. 2017) (noting district courts' "'broad discretion' to permit or deny discovery" (attribution omitted)); *Plata v. Brown*, 754 F.3d 1070, 1077 (9th Cir. 2014) ("broad authority to manage complex litigation"). And courts routinely exercise that broad discretion to allow discovery and conduct evidentiary hearings during remedial proceedings. ECF No. 7146 at 11-12; *see, e.g., Grynberg v. BP P.L.C.*, 2016 WL 11472270, at *1 n.1 (D.D.C. Mar. 1, 2016); *Brumfield v. Dodd*, 2013 WL 360572, at *3 (E.D. La. Jan. 30, 2013); *Nat'l Law Ctr. on Homelessness & Poverty v. U.S. Dep't of Veterans Affs.*, 842 F. Supp. 2d 127, 131-32 (D.D.C. 2012); *Palmer v. Rice*, 231 F.R.D. 21, 26-27 (D.D.C. 2005); *Ginest v. Bd. of Cnty. Comm'rs of Carbon Cnty.*, 295 F. Supp. 2d 1274, 1275 (D. Wyo. 2004).

The CDCR does not appear to disagree. It suggests without citation that the proper vehicle for

---

the CDCR stipulated not to raise such arguments, Lipsey suggested that he would be willing to remove requests regarding Guard One's efficacy. But the parties did not resolve that discussion because the CDCR took the position that *no* discovery was warranted. The parties should attempt to resolve these sorts of disputes over particular requests after the Court permits discovery in the abstract and Lipsey serves concrete requests, burdening the Court with specific disputes only if truly necessary.

Lipsey's claim is "a motion under Rule 60, with information that is available to him as a class member." ECF No. 7165 at 2. But even accepting the CDCR's unsupported premises that there is a final judgment in this case and that Rule 60 is the only avenue for relief, discovery in support of such a motion is still appropriate. *See, e.g.*, *Grynberg*, 2016 WL 11472270, at *1 n.1 ("[I]t is certainly within courts' discretion to order discovery for the purpose of seeking relief from a final judgment . . . ." (citing *H.K. Porter Co. v. Goodyear Tire & Rubber Co.*, 536 F.2d 1115, 1119 (6th Cir. 1976))); *Nat'l Law Ctr.*, 842 F. Supp. 2d at 131-32 (ordering discovery regarding Rule 60(b)(5) motion to vacate an order enforcing an injunction in a long-running class action). The CDCR concedes as much when quibbling about what the cases Lipsey cited say about the proper scope of discovery in that scenario. ECF No. 7165 at 5-6. Moreover, the CDCR appears to agree that *Grynberg* and *National Law Center* indicate that the Court can authorize discovery here, and its attempts to distinguish those cases establish only that any discovery must be relevant — as Lipsey agrees. *Id.* It notes that the specific type of discovery at issue in *Plata v. Brown*, 754 F.3d 1070 (9th Cir. 2014), was expert disclosures, ECF No. 7165 at 5, but it does not explain how that undercuts the broad principles about district courts' authority and the role of discovery for which Lipsey cited that case, ECF No. 7146 at 10-11. And the CDCR's observation that one of Lipsey's cases involved Rule 69, ECF No. 7165 at 5 (discussing *Brumfield*), is true but irrelevant. The bottom line is that contrary to the CDCR's position that discovery should not be allowed because it has been closed "since prior to the commencement of the trial in 1993," ECF No. 7165-1 at 19, this Court's long practice of allowing discovery in remedial phase is well supported by the case law.

The CDCR also suggests that, in place of discovery, Lipsey can simply ask the CDCR for documents "on an informal basis." ECF No. 7165 at 5. But this case's history and the case law establish that actual, formal discovery is appropriate. The CDCR neither argues nor cites any authority suggesting that formal discovery stops being appropriate as soon as a party offers "informal" discovery

instead. That is not a way out of discovery before trial, and the CDCR offers no reason to think that it is a way out now. Nor does it make sense to replace familiar procedures with the unknown. If disputes arise — as the CDCR's hypothetical objections to hypothetical requests foreshadow — what standards would apply? Could the Court adjudicate them, and if so, how? The CDCR offers no reason why, if it is willing to provide discovery sufficient to "meet [Lipsey's] needs" so long as it is labeled "informal," *id.*, it continues to object to providing the same information through the ordinary process.

## II.     The Special Master's Reports Are Not a Substitute for Discovery.

Lipsey explained in his motion how the discovery he seeks is relevant to the Eighth Amendment claim on which this Court permitted him to intervene. ECF No. 7146 at 13-14. The CDCR does not dispute Lipsey's explanation of the Eighth Amendment standard or his identification of disputed factual issues. Instead, the CDCR asserts that the issues on which Lipsey seeks discovery are "tangential," ECF No. 7165 at 2, and that the only information Lipsey needs to litigate his claim is the materials already on the docket, in the Special Master's reports. *Id.* at 2-4. Not so. This Court permitted Lipsey to intervene in part because it recognized a lack of focus in the existing record on the noise caused by Guard One. *See* Feb. 26, 2020 Hearing Tr. 6:14-23, ECF No. 6488 (Court suggesting that "given the range of issues being litigated" in *Coleman*, "perhaps the specific issue that Mr. Lipsey is raising hasn't gotten the kind of laser focus it needs"). This is an extraordinarily complex case that involves many unrelated issues. It is no surprise that the Special Master has not focused and reported in detail on every possible problem in administering mental healthcare throughout the state prison system, especially when the parties have not litigated or emphasized Guard One's noisiness.

The CDCR's own careful wording — emphasizing what the Special Master "has not recommended" and which "findings" his reports "do not include" — and pincite-free string citation hints at the truth: The Special Master's reports are "extensive" and the result of "rigorous[] monitor[ing]" in general, but not when it comes to assessing Guard One and whether it causes sleep

deprivation. ECF No. 7165 at 4 (citing ECF Nos. 5258, 5259, 5395, 5396, 5671, 5672, 5993, 5994, 6879, 6879-1). Indeed, the Special Master's reports themselves say little about Guard One and nothing about the noise it produces or its effect on inmates' ability to sleep. *See* ECF Nos. 5258, 5395, 5671 (no mention of Guard One); ECF No. 5993 at 45 (sole mention of Guard One in a letter from Plaintiffs' counsel attached as an exhibit); ECF No. 6879 at 15 (sole mention of Guard One to note that Recommendation 11 was previously revised "to include auditing" of "compliance" with Guard One).

        The audit reports prepared by the Special Master's expert do briefly discuss Guard One, but they still do not provide the facts needed to adjudicate Lipsey's claim. At best, they provide one expert's interpretation of some of the relevant facts without providing any of the underlying documents the expert relied on. Moreover, the reports are focused not on Guard One's effects or efficacy, but rather on compliance rates — the rates at which CDCR officers timely hit Guard One buttons with Guard One pipes. *See, e.g.*, ECF No. 5259 at 14-15 (recommending continued use of Guard One based on a high-level comparison of the rate of timely logging Guard One checks with the rate of compliance with welfare checks without Guard One); ECF No. 5396 at 9-10 (assessing "compliance with use of Guard One" and noting that the issue regarding the checks' frequency overnight in Pelican Bay "remains unresolved"); ECF No. 5671-1 at 12-13 (noting the stipulation to reduce the checks' frequency overnight at Pelican Bay in light of "continuing noise complaints," but again assessing only whether officers were timely recording checks).[2] Although the second re-audit briefly discusses — and largely dismisses — the noise concerns at Pelican Bay, the expert provides no underlying documentation and cites no sources other than his own observations, such as a few-sentence summary

---

[2] The body of each audit report walks through observations from each of the prisons at issue. The limited mentions of Guard One in that context are mostly to note compliance rates, *see, e.g.*, ECF No. 5259 at 38, 42, 50, 55, 61, 64, 67, 68-69, 76, 82, 86, 99, 102, 115, 121, 125-26, 128, 133, 140, 143, 147, 153, 157, 163, 168, 182, 186, 203, 207-08, 210 216, or in summaries of suicide reports that, if anything, call the system's effectiveness into question, *see, e.g., id.* at 77-78, 136, 151, 161.

of conversations with an unspecified number of unidentified inmates. ECF No. 5671-1 at 159-61. The two most recent audits addressed mounting evidence that despite high rates of timely recording of Guard One checks, CDCR officers are still failing to actually conduct the welfare checks (*i.e.*, to look inside the cells), but the reports provide little information on this issue and ultimately decline to make any recommendations because policy already required CDCR officers to properly conduct the checks, and procedures were already in place to intervene if, after an inmate dies by suicide, the investigation reveals that officers failed to comply. *See* ECF No. 5993-1 at 15-16; ECF No. 6879-1 at 19.

Given these limitations, even if it could ever be appropriate for the nonparty Special Master's reports to substitute for a party's discovery efforts, that is not an option here. Neither the expert nor the Special Master appear to have focused on the question presented by Lipsey's claim: Is Guard One causing sleep deprivation in violation of the Eighth Amendment? The reports do not provide answers to or data about whether Guard One causes sleep deprivation, whether it helps prevent suicide, or even whether it improves compliance with the underlying policy of conducting twice-hourly welfare checks. Instead, the audits have largely stuck to tracking whether CDCR officers touch the Guard One buttons with their batons in compliance with the stated policy.

To the extent the Special Master has investigated Lipsey's concerns, the very point of allowing Lipsey to intervene was to allow him to contest those conclusions. It is undeniably true that the Special Master has already endorsed Guard One. Were that fact alone enough to reject Lipsey's constitutional claim, there would have been no need for intervention. Indeed, that is exactly what the CDCR argued when Lipsey moved to intervene — and the Court rejected that argument. ECF No. 6407 at 2 (CDCR opposing intervention because "the use of Guard One has been litigated" and the Special Master was "continuously monitoring" it); Feb. 26, 2020 Hearing Tr. 19:7-15, ECF No. 6488 (CDCR arguing that "this is something the Special Master and the plaintiffs, there was an agreement about this").

That is consistent with the proper role of a Special Master. The Special Master's investigation

does not establish facts incontrovertibly. The Special Master's role in this case is to assist the Court in developing and implementing a remedy, not to serve as an advocate for any party. *Coleman v. Wilson*, 912 F. Supp. 1282, 1324 n.63 (E.D. Cal. 1995), Dkt. No. 612 ("The special master's responsibility will be twofold: to provide expert advice to the defendants to aid in ensuring that their decisions regarding the provision of mental health care to class members conform to the requirements of the federal constitution, and to advise the court concerning issues relevant to assessing defendants' compliance with their Constitutional obligations."), *appeal dismissed*, 101 F.3d 705 (9th Cir. 1996) (unpublished table decision). No matter how helpful, the Special Master's reports to the Court cannot stand in for adversarial litigation and the discovery needed to conduct it. *See Loyd v. Ala. Dep't of Corr.*, 176 F.3d 1336, 1342 (11th Cir. 1999) (holding that the party was entitled to an evidentiary hearing despite the eleven written reports submitted by a court-appointed monitor because "[a] report alone cannot be cross-examined or disputed" and the party "must be given the opportunity to challenge or supplement the findings of the monitor and to present evidence" on relevant issues). Indeed, that is why the parties are permitted to object to the Special Master's reports, as the CDCR regularly does. *See, e.g.*, ECF No. 7098 at 2 (objecting that the Special Master's 2017 Suicide Report "provides no better or additional information than CDCR's own suicide report"); *id.* at 4-6 & n.4 (objecting to the Special Master's methodology); ECF Nos. 7051, 7052, 7082.

### III. Rule 26's Limits Are Appropriate; There Is No Legal Justification for a New Standard.

Lipsey suggested a straightforward and efficient procedure for conducting discovery on his claim: The Court should grant leave to conduct discovery regarding Lipsey's Eighth Amendment claim; the scope of discovery on that claim should be limited by Rule 26; and any disputes should be resolved in the ordinary way, by first attempting to work them out between the parties and only if necessary presenting them to the Court. ECF No. 7146 at 14. At times, the CDCR seems to agree about the governing standard for any discovery: It urges that discovery "be limited to the specific

confines of Lipsey's claim — whether Guard One, in its current incarnation, causes sleep deprivation in violation of the Eighth Amendment." ECF No. 7165 at 2. That is exactly what Lipsey seeks: to take discovery on issues relevant to his Eighth Amendment claim, with the proper standards for relevance and proportionality defined by Rule 26.[3]

But at other times, the CDCR apparently disagrees, arguing that the Rule 26 standard is too broad and that the Court should instead create a new test confining discovery to "topics that *directly* address Lipsey's claim." ECF No. 7165 at 6. What "*directly*" means in this context — and what is wrong with Rule 26 — is left for Lipsey and the Court to guess. The CDCR cites no case endorsing, applying, or elucidating its proposed new "directly" standard, in the context of discovery in an intervention or otherwise.[4]

To the extent the CDCR's new standard is meant to prevent disproportionate or otherwise unduly burdensome discovery, it offers no advantage over Rule 26 and the settled body of law that comes with it. The CDCR's complaints about Lipsey's suggestion that Rule 26 sets the appropriate scope for discovery are that Rule 26 discovery "is wholly unnecessary to resolve Lipsey's claim," "would impose a heavy burden on Defendants without commensurate benefit," is "unduly

---

[3] If the CDCR intends to argue that Lipsey should be allowed to conduct discovery only on issues relevant to *his own* claim, rather than all claims in this broad litigation, *see* ECF No. 7165 at 5, that is fully consistent with Lipsey's request. Lipsey is seeking "leave to conduct discovery on his claim in intervention," not on every claim in the broader litigation. ECF No. 7146 at 6; *see also id.* at 9 ("Lipsey has not been able to take discovery on any other issues relevant to his Eighth Amendment claim in intervention . . . ."); *id.* at 10 ("propriety of discovery on Lipsey's claim"); *id.* at 14 ("discovery regarding his Eighth Amendment claim"). Lipsey does not seek to take discovery on other claims in this case. *Cf.* ECF No. 7165 at 6 (opposing "re-open[ing] general discovery that closed in 1993 before the trial in this action"). He simply seeks to take discovery on issues relevant to *his claim*, with relevance and proportionality defined by the Rule 26 standard.

[4] Perhaps the CDCR is alluding to *Grynberg*, but that case sheds no light on what the CDCR's preferred adverb does because the discovery at issue did not even "relate[] to" the Rule 60(b) motion. 2016 WL 11472270, at *2. More fundamentally, *Grynberg* makes clear that whatever work "directly" does is meant to protect "the finality of judgments" by limiting Rule 60(b) movants to discovery about the bases for their motions. *See id.* (attribution omitted). *Grynberg* says nothing about the proper scope of discovery on a pending claim in intervention where there is no final judgment to protect.

burdensome . . . both in time and in cost," and is not "limited to a reasonable timeframe." ECF No. 7165 at 5-6. Rule 26 already accounts for all those concerns. Discovery must be "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Courts may (and sometimes must) limit the frequency and extent of discovery, including where "the discovery sought is unreasonably cumulative or duplicative." Fed. R. Civ. P. 26(b)(2). And courts may issue protective orders to prevent "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). The CDCR does not explain why these protections fall short or what its standard would do better. Nor does it cite any authority supporting its request to tack away from Rule 26 and into uncharted waters.

Finally, to the extent the CDCR's objection is to the particular document requests Lipsey voluntarily withdrew so that the parties could seek clarity as to whether any discovery was allowed, again, that objection is premature. *See supra* pp. 1-3. The requests are no longer pending, the parties have not met and conferred about any particular issues, and no party has moved to compel or for a protective order. There is nothing to be gained by wading into this dispute in the abstract.

## **CONCLUSION**

Lipsey has been asking for just shy of seven years for a court to address the merits of his Eighth Amendment claim. The CDCR has been trying to stop him for just as long. But over the CDCR's objection, this Court chose to allow Lipsey to litigate his claim in this case. A full and fair adjudication requires a meaningful opportunity for Lipsey to gather and present relevant evidence. Lipsey therefore respectfully requests that the Court grant his motion and grant leave to conduct discovery regarding Lipsey's Eighth Amendment claim within the ordinary limits of Rule 26.

| | | |
|---|---|---|
| 1 | Dated: May 21, 2021 | Respectfully submitted, |
| 2 | | /s/ Kate Falkenstien |
| 3 | | REICHMAN JORGENSEN LEHMAN & FELDBERG LLP |
| 4 | | Shawna L. Ballard (SBN 155188)<br>Kate Falkenstien (SBN 313753) |
| 5 | | 100 Marine Parkway, Suite 300<br>Redwood Shores, California 94065 |
| 6 | | Telephone: (650) 623-1401<br>Fax: (650) 623-1449 |
| 7 | | sballard@reichmanjorgensen.com<br>kfalkenstien@reichmanjorgensen.com |
| 8 | | REICHMAN JORGENSEN LEHMAN & FELDBERG LLP |
| 9 | | Brian C. Baran (SBN 325939)<br>1710 Rhode Island Ave NW, 12th Floor |
| 10 | | Washington, DC 20036<br>Telephone: (202) 894-7310 |
| 11 | | Fax: (650) 623-1449<br>bbaran@reichmanjorgensen.com |
| 12 | | *Attorneys for Plaintiff-Intervenor Christopher Lipsey* |

**CERTIFICATION**

Lipsey's counsel certify that they have reviewed the following orders relevant to his motion and this reply: Dkt. No. 612 (reported at 912 F. Supp. 1271) and ECF Nos. 1988, 2434, 4306, 4632, 4786, 5034, 5271, 5794, 6487, 6600, 6756, 7095, 7134. Counsel further certify that they have reviewed the following orders Defendants identify as relevant in their response: ECF Nos. 1830, 2139, 2255, 5429, and 5762.

Dated: May 21, 2021                    Respectfully submitted,

/s/ Kate Falkenstien

REICHMAN JORGENSEN LEHMAN & FELDBERG LLP
Shawna L. Ballard (SBN 155188)
Kate Falkenstien (SBN 313753)
100 Marine Parkway, Suite 300
Redwood Shores, California 94065
Telephone: (650) 623-1401
Fax: (650) 623-1449
sballard@reichmanjorgensen.com
kfalkenstien@reichmanjorgensen.com

REICHMAN JORGENSEN LEHMAN & FELDBERG LLP
Brian C. Baran (SBN 325939)
1710 Rhode Island Ave NW, 12th Floor
Washington, DC 20036
Telephone: (202) 894-7310
Fax: (650) 623-1449
bbaran@reichmanjorgensen.com

*Attorneys for Plaintiff-Intervenor Christopher Lipsey*