DONALD SPECTER – 083925
STEVEN FAMA – 099641
MARGOT MENDELSON – 268583
PRISON LAW OFFICE
1917 Fifth Street
Berkeley, California 94710-1916
Telephone: (510) 280-2621

CLAUDIA CENTER – 158255
DISABILITY RIGHTS EDUCATION
AND DEFENSE FUND, INC.
Ed Roberts Campus
3075 Adeline Street, Suite 210
Berkeley, California 94703-2578
Telephone: (510) 644-2555

MICHAEL W. BIEN – 096891
JEFFREY L. BORNSTEIN – 099358
ERNEST GALVAN – 196065
LISA ELLS – 243657
THOMAS NOLAN – 169692
JENNY S. YELIN – 273601
MICHAEL S. NUNEZ – 280535
JESSICA WINTER – 294237
MARC J. SHINN-KRANTZ – 312968
CARA E. TRAPANI – 313411
ALEXANDER GOURSE – 321631
AMY XU – 330707
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
Telephone: (415) 433-6830

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

RALPH COLEMAN, et al.,

        Plaintiffs,

    v.

GAVIN NEWSOM, et al.,

        Defendants.

Case No. 2:90-CV-00520-KJM-DB

**PLAINTIFFS' RESPONSE TO THE SPECIAL MASTER'S REPORT ON CONTINUOUS QUALITY IMPROVEMENT KEY INDICATORS**

Judge: Hon. Kimberly J. Mueller

Plaintiffs, through their counsel, submit this response to the Special Master's report filed at ECF No. 7151 in compliance with the Court's Minute Order of May 14, 2021, ECF No. 7162.

Plaintiffs do not object to the Special Master's request for provisional approval of the preliminary CQIT key indicators listed at ECF No. 7151 at 21-26.

Plaintiffs submit, however, that the Special Master's list is incomplete because it omits the following CQIT indicators that are necessary benchmarks to determine whether

[3748189.3]

the Defendants are providing constitutionally adequate care. Plaintiffs provide this list to ensure that these additional indicators are considered during the period in which the Special Master employs the provisional list.

### 1. "Treatment Attended"

The Special Master's list includes an indicator for "Treatment Offered." ECF No. 7151 at 21, numbered item 5. CQIT also includes a "Treatment Attended" indicator (ECF No. 7089-1 at 3) that should also be treated as key in order to ensure that treatment obstacles such as scheduling, lock downs, and shortage of custody staff do not prevent the actual provision of treatment. "Defendants' ultimate constitutional obligation is to provide the tens of thousands of seriously mentally ill inmates in their custody with 'access to adequate mental health care.'" (Dec. 17, 2020 Order, ECF No. 6996 at 8 (quoting *Coleman v. Wilson*, 912 F. Supp. 1282, 1298 (E.D. Cal. 1995)).) Measuring whether patients are actually attending treatment is a critical indicator of whether Defendants are meeting this obligation.

### 2. "Programs with More Than One Type of Group Offered"

This is an existing CQIT indicator that Defendants have applied to CCCMS programs. *See* ECF No. 7116 at 4-5. Providing adequate programs to the CCCMS patients prevents decompensation that results in persons needing higher levels of care. Plaintiffs also maintain that this indicator needs to be updated during the period of provisional approval of the Special Master's list to include EOP programs. (ECF No. 7101 at 9.) The Program Guide requires that patients receive various scheduled structured therapeutic treatment activities. (*See, e.g.*, Program Guide at 12-3-3, 12-3-11 (CCCMS); 12-4-9 to 12-4-12 (EOP), ECF No. 5864-1 at 35, 43, 58-61.) If a program were to only provide one type of group (for example, only recreational therapy, but no other therapeutic groups), that would signal it is falling below the minimum treatment requirements mandated by the Program Guide.

### 3. "5-Day Follow-Ups With Documentation of Current Suicidality"

Although the Special Master's list includes timeliness of follow-ups, ECF No. 7151

1   at 22 numbered item 1, it omits this qualitative measure.  Adequacy of "[f]ive-day clinical

2   follow-ups for MHCB, Alternative Housing, DSH, and Psychiatric Inpatient Program

3   (PIP) returns" is one of the Special Master's suicide prevention expert's 19 Suicide

4   Prevention Audit Checklist measures.  (*See* Fourth Re-Audit and Update of Suicide

5   Prevention Practices (hereafter "Fourth Re-Audit"), ECF No. 6879-1 at 35 n.10.)  The

6   requirement that "any CQI audit report of a facility's suicide prevention practices …

7   contain data on all 19 suicide prevention measures" is part of the Fourth Re-Audit's

8   Recommendation 32, which has been adopted by the Court.  (*See* Special Master Report on

9   Fourth Re-Audit, ECF No. 6879 at 24; Dec. 24, 2020 Order, ECF No. 7004 at 6.)

10   Defendants' most recent filing on key indicators states that Defendants "are willing to

11   continue discussions with the Special Master and Plaintiffs" on this indicator.  ECF No.

12   7116 at 6.  It should be used during the provisional period to provide information for these

13   continued discussions.

14               **4.    "Percentage of Patients in Alt Housing with a Bed"**

15          Policy 12.05.301 ("Housing of Patients Pending Mental Health Crisis Bed

16   Transfer"), which is incorporated into the 2018 Program Guide at ECF No. 5864-1 at 342,

17   requires that "[w]hile in alternative housing pending transfer, patients shall be provided at

18   minimum, with a safety (no-tear) mattress …."  (*Id.* at 343.)  Compliance with this policy

19   has been lacking.  As the Special Master's suicide prevention expert has found, "suicidal

20   inmates placed in alternative housing were often placed in hazardous, unsafe cells ….

21   [M]any suicidal inmates were housed in these locations for more than 24 hours and

22   oftentimes not provided a bunk, instead having to sleep on a mattress on the floor thus

23   increasing the possibility that an otherwise suicidal inmate would deny their SI to avoid

24   continued perceived punitive conditions."  (Fourth Re-Audit, ECF No. 6879-1 at 12-13.)

25   The most recent audit found that long stays in alternative housing persist at some

26   institutions.  (*Id.*)  This item should be included as a key indicator.

27

28

### 5. Indicators Regarding Quality of Interdisciplinary Treatment Team Meetings (IDTT)

The Special Master's list omits two CQIT indicators that are aimed at the quality of IDTTs. These are: "IDTTs Observed in Which Management of Patients Resistant to TX [Treatment] is Addressed Through an Individualized TX [Treatment] Intervention and Goals With Custody Input" and "IDTTs with Measurable Treatment Goals." (ECF No. 7089-1 at 4.) IDTTs are central to patients' treatment at all levels of care and required under the Program Guide. (*See, e.g.*, Program Guide at 12-4-1, ECF No. 5864-1 at 50 ("Critical components [of the EOP program] include: [a] comprehensive array of mental health services delivered within the framework of an [IDTT]."); 12-5-13, ECF No. 5864-1 at 83 (IDTTs must occur "at least weekly" for MHCB patients). Several 2018 Program Guide pocket part policies highlight the numerous important functions of IDTTs. (*See, e.g.*, 14-0128 Policy – Interdisciplinary Treatment Team – Level of Care Decision 12.01.200, ECF No. 5864-1 at 235; 14-0303 Memo – Interdisciplinary Treatment Team Review of Inmate-Patient's Ability to Participate in Program Assignments, ECF No. 5864-1 at 319.) IDTTs should be monitored not only for timeliness, and for the presence of all required participants, but also for the quality of the care provided. The two omitted indicators measure quality of the care provided in ways that the other indicators do not.

### 6. Indicators Regarding Clarity of Class Member Diagnoses

There are two CQIT indicators omitted from the Special Master's list that are aimed at the quality of clinical diagnostic efforts. These are: "Patients Without Conflicting Diagnosis", and "EOP and CCCMS with No Provisional or Rule Out DX [Diagnosis] Over 90 Calendar Days." (ECF No. 7089-1 at 5.) The Program Guide requires that a patient's "mental health treatment plan must include a detailed description of the [patient's] diagnosis …." (Program Guide at 12-4-8, ECF No. 5864-1 at 57; *see also* Program Guide at 12-3-10, ECF No. 5864-1 at 42 ("The treatment plan includes … [a] diagnosis").) The Special Master's most recent monitoring report found that care in Defendants' institutions was not sufficiently individualized to address patients' clinical needs in part because

"diagnoses in inmates' records required clarification" and "conflicting or multiple diagnoses required resolution." (Special Master's 28th Round Report, ECF No. 7074 at 117-19.) The two indicators serve an important purpose in CQIT to ensure that the tool measures more than just whether certain events took place on time. These are indicators of the quality of services provided and should be included as "key" indicators.

### 7. Indicators Regarding the Rules Violation Report ("RVR") Process

The Special Master's CQIT Report includes the following eight indicators regarding the RVR process:

> "Percentage of RVR MHAs [Mental Health Assessments] Where the Patient Was Informed of the Limits of Confidentiality" ECF No. 7151 at 23 numbered item 1.

> "RVRs Recommended for Mitigation with Documentation of Consideration of Mitigation" *Id.* at 23 numbered item 2.

> "RVRs Where Hearing Officer Disagreed with MH Clinician's Recommendation to Document in an Alternative Manner and Documented Rationale for Disagreement on 128B" *Id.* at 23 numbered item 3.

> "Timely MH RVR Assessments" *Id.* at 23 numbered item 8.

> "RVRs Recommended for Mitigation That Were Mitigated." *Id.* at 23 numbered item 9.

> "RVR MH Assessments Where All Documentation Requirements Were Met" *Id.* at 25 numbered item 33.

> "RVR MH Assessments Conducted in Private Setting" *Id.* at 25 numbered item 34.

> "Compare Percent of Inmate[s] Overall that Received RVRs with Percentage of MH Inmates that Received RVRs" *Id.* at 25 numbered item 37.

As the Special Master describes in detail, much of CQIT's development took place in 2012 and 2013, ECF No. 7151 at 3-5, before this Court's April 10, 2014 order (ECF No. 5131) on use of force and CDCR's discipline process. In 2015, the Court approved a new remedy regarding use of force and discipline, reflected in a set of regulation and policy changes filed at ECF No. 5305 on May 4, 2015. The CQIT key indicators, however, have not been full updated to account for this new remedy.

The 2015 remedial measures required the following changes to CDCR's discipline process that are not yet reflected in CQIT.  Among these new remedial measures are the following three requirements:

### (a)    Mandatory Diversion from Disciplinary Process in Certain Circumstances

Under new sections 3317.2 and 3317(e) of the state prison regulations (Title 15), adopted as part of the *Coleman* remedy, the RVR process may not be used if the alleged RVR behavior occurred in connection with a cell extraction for administration of involuntary medication, involuntary treatment, transfer to an inpatient unit, in connection with being placed in restraints or seclusion, or if the behavior was an act of self-mutilation or attempted suicide.  (*See* ECF No. 5305 at 3-4.)  There is an exception however, for Division A-1 offenses, as well as any assault or battery.  (*Id.* at 5.)

### (b)    Discretionary Diversion from Disciplinary Process for Behavior Strongly Influenced by Symptoms of Mental Illness

Title 15 section 3317(d) directs the disciplinary official to consider a class member's Mental Health Assessment in deciding whether to use a non-RVR method to deal with the alleged infraction.  New section 3317.1 provides that "staff may recommend . . . that the inmate would be better served" by an alternative means of documenting the behavior if the "behavior was strongly influenced by symptoms of mental illness."  (ECF No. 5305 at 4.)

### (c)    Expanded Use of Mental Health Assessments

Former regulations required a Mental Health Assessment before an RVR hearing for persons at EOP level of care or higher, and for CCCMS patients who displayed bizarre, unusual, or uncharacteristic behavior.  New regulations require assessments for a large range of persons, including all CCCMS patients charged with Division A, B or C offenses, or any other violation that might result in a SHU term.  (15 C.C.R. § 3317; ECF No. 5305-1 at 2-3, 7; CDCR DOM § 52080.5.8.)

Plaintiffs have requested the Defendants develop CQIT indicators for the first two

requirements, mandatory and discretionary diversion.  No such indicators have been developed.  The Special Master's list includes indicators regarding the third requirement, Mental Health Assessments, which predated the 2015 remedy.  More indicators are needed, however, for the full RVR remedy.  Plaintiffs submit that such indicators can be developed during the period of provisional approval of the Special Master's list.

### 8.   "Percentage of Eligible MHSDS Patients Receiving Milestone Credits"

This CQIT indicator (which Defendants sought to retain as "informational" only, ECF No. 7116 at 13-14) is a key measure of material provisions of the 2018 Program Guide and Compendium that arose from the *Hecker* litigation.  (*See, e.g.*, 2018 Program Guide, ECF No. 5864-1 at 574 (September 24, 2015 Memo Re: EOP Milestone Credit Group Therapy) & 602 (citing CCR Title 15, Section 3043.3(f)(2)); Compendium, ECF No. 6431 at 4 (CCR Title 15, Section 3043.3(f)(2), regarding Credit Earning, which "codifies provisions of the July 7, 2014, memo Milestone Completion Credits for Participants in the Mental Health Services Delivery System at the Enhanced Outpatient Program Level of Care").)  This is one of the only indicators aimed at class member access to important CDCR programs without discrimination on the basis of mental health status, and should be included as key.

### 9.   "CCCMS Class Members Minimum Support Facilities"

Access to the lower custody level placements without discrimination on the basis of mental health status is also a component of the *Hecker* anti-discrimination remedy incorporated into this case.  (*See* ECF No. 5284-1 at 10.)  The Program Guide pocket parts include a requirement of CCCMS access to low-security minimum support facilities ("MSFs").  (ECF No. 5864-1 at 284-98.)  There is no CQIT indicator yet for this requirement.  Defendants, however, have stated that "CDCR will include the number of CCCMS patients in MSFs at applicable institutions in future CQIT reports as census information."  ECF No. 7116 at 17.  The information should be included as a key indicator of compliance.

### 10.    Least Restrictive Housing [LRH] in Inpatient Settings

The Special Master's list does not include an indicator measuring the requirements of the June 30, 2017, Policy Housing Review/Least Restrictive Housing (12.11.2111), which is part of the Compendium.  (ECF No. 6431 at 5.)  Defendants' inpatient programs are plagued with custody-based obstacles to care, including holding patients in locked-down units that severely limit individual and group treatment.  In order to address these problems, patients are required to be moved out of locked-down units to the least restrictive housing environment compatible with their case factors.  (*See* Special Master's Inpatient Monitoring Report, May 25, 2016, ECF No. 5448 at 9, 120-22.)  In the January 2021 Inpatient Monitoring Report, the Special Master found that Defendants "struggle with placing those patients for whom the setting is not contraindicated for clinical and/or custodial reasons in their LRH."  (ECF No. 7039 at 42.)  Although CQIT does not yet include such an indicator, Defendants have "agreed to develop an audit which will include an LRH review and will incorporate it into the CQI process once all PIP measures are developed."  (ECF No. 7116 at 18.)  When this is developed it should be tracked as a key indicator.

### CONCLUSION

The Court should provisionally approve the Special Master's list of key indicators. Plaintiffs understand that the list of indicators will evolve during the period of provisional use, and have provided the foregoing list to ensure that the additional necessary indicators are considered during this period.

DATED: June 14, 2021                    Respectfully submitted,

ROSEN BIEN GALVAN & GRUNFELD LLP


By:  */s/ Ernest Galvan*
     Ernest Galvan

Attorneys for Plaintiffs

## ORDERS REVIEWED

By my signature above, I certify that I have reviewed the following orders in preparing these objections:

| Date | Docket | Subject |
|---|---|---|
| **5/14/2021** | 7162 | Minute Order |
| **12/24/2020** | 7004 | Suicide Prevention |
| **12/17/2020** | 6996 | Benchmarks |
| **9/3/2020** | 6846 | Benchmarks |
| **5/1/2015** | 5305 | Discipline and Use of Force |
| **4/10/2014** | 5131/5133 | Discipline and Use of Force; 28 F. Supp. 3d 1068. |