1   Rob Bonta, State Bar No. 202668
    Attorney General of California
2   Damon McClain, State Bar No. 209508
    Supervising Deputy Attorney General
3   Elise Owens Thorn, State Bar No. 145931
    Lucas Hennes, State Bar No. 278361
4   Namrata Kotwani, State Bar No. 308741
    Deputy Attorneys General
5     1300 I Street, Suite 125
      P.O. Box 944255
6     Sacramento, CA 94244-2550
      Telephone: (916) 210-7318
7     Fax: (916) 324-5205
      E-mail: Elise.Thorn@doj.ca.gov
8   Attorneys for Defendants

    HANSON BRIDGETT LLP
    PAUL B. MELLO, SBN 179755
    SAMANTHA D. WOLFF, SBN 240280
    DAVID C. CASARRUBIAS, SBN 321994
    1676 N. California Blvd., Suite 620
    Walnut Creek, California 94596
    Telephone:    925-746-8460
    Facsimile:    925-746-8490
    Attorneys for Defendants

    Roman M. Silberfeld, State Bar No. 62783
    Glenn A. Danas, State Bar No. 270317
    Robins Kaplan LLP
      2049 Century Park East, Suite 3400
      Los Angeles, CA 90067-3208
      Telephone: (310) 552-0130
      Fax: (310) 229-5800
      E-mail: RSilberfeld@RobinsKaplan.com
    Special Counsel for Defendants

### UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

### SACRAMENTO DIVISION

| | |
|---|---|
| RALPH COLEMAN, et al., | Case No. 2:90-CV-00520- KJM-DB |
| Plaintiffs, | **DEFENDANTS' OBJECTIONS TO THE SPECIAL MASTER'S REPORT ON THE CONTINUOUS QUALITY IMPROVEMENT TOOL KEY INDICATORS** |
| v. | |
| GAVIN NEWSOM, et al. | |
| Defendants. | |
| | Judge:    Hon. Kimberly J. Mueller |

# <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ................................................................................................................4

OBJECTIONS TO THE SPECIAL MASTER'S REPORT .................................................5

      A.     The Special Master's proposed list of 165 key indicators incorrectly includes numerous indicators that do not track material provisions of the Program Guide, Compendium, and court orders.........................................................5

      B.     The Special Master's proposed list of key indicators was established using a draft list created by Defendants, and is therefore flawed. ..........................................8

            1.     *The Special Master's proposed list contains several duplicative indicators that should be consolidated to avoid confusion.* ...........................8

            2.     *The Special Master's proposed list of key indicators includes several indicators that have been decommissioned and others that should be deemed informational only.* ..........................................................................10

      C.     The provisional nature of the Special Master's proposed list of key indicators leads to indefinite uncertainty. ...............................................................11

CONCLUSION ................................................................................................................14

CERTIFICATION............................................................................................................15

17611966.2

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Coleman v. Wilson*,
    912 F. Supp. 1282 (E.D. Cal. Sept. 13, 1995) ................................................................ 4, 7, 11

**Statutes**

Prison Litigation Reform Act 18 U.S.C. § 3626(a)(1)(A) (PLRA) ............................................ 5, 8

**Other Authorities**

Eighth Amendment of the U.S. Constitution ........................................................................ 5, 6, 8

Case No. 2:90-CV-00520- KJM-DB

17611966.2

DEFENDANTS' OBJECTIONS TO SPECIAL MASTER'S REPORT ON KEY CQIT INDICATORS

1

## INTRODUCTION

2      The California Department of Corrections and Rehabilitation (CDCR) worked closely with

3   the Special Master for years to develop a Continuous Quality Improvement (CQI) process,

4   including identifying indicators for its Continuous Quality Improvement Tool (CQIT). *See*, *e.g.*,

5   ECF No. 5439, at 102.[1] CDCR began conducting CQI audits even while still working with the

6   Special Master and his team on the indicators and the process itself. After four rounds of CQI pilot

7   tours were completed, and over eight years after the Court ordered the development of CQI, this

8   Court defined the meaning of "key" indicators for purposes of CQI. ECF No. 6996. As this Court

9   determined, "key" indicators reflect material provisions of the Program Guide, Compendium, and

10  other Court orders, which, when "taken as a whole and met at the requisite degree of compliance,

11  signal constitutionally adequate compliance." *Id.* at 8:20-23.

12      Following the Court's clarification, the parties worked closely with the Special Master to

13  present a list of indicators consistent with this definition. This work ultimately culminated with

14  CDCR filing its current list of key indicators on March 17, 2021 ("Defendants' List"). ECF No.

15  7089. Consistent with the Prison Litigation Reform Act's prescription that relief extend no further

16  than necessary to correct the violation, Defendants' List is necessarily grounded in the initial

17  components identified by this Court as what is "required for a mental health care system to meet

18  minimum constitutional requirements." *Coleman v. Wilson*, 912 F. Supp. 1282, 1296 n.10 (E.D.

19  Cal. Sept. 13, 1995).

20      The parties and the Special Master continued to meet after the filing of Defendants' List.

21  When the parties were unable to reach agreement, the Court referred the matter to the Special

22  Master, who later filed his Report on the Continuous Quality Improvement Tool Key Indicators

23  (hereafter the "Special Master's CQIT Report" or "Report") that included his own list of proposed

24  key indicators, for which he now seeks provisional approval. *See* ECF Nos. 7101, 7116, 7111 at

25  14-17, 7151 at 21.

26      Defendants assert the following objections to that Report and the Special Master's

27  ───────────────

28  [1] References to page numbers for documents filed in the Court's Electronic Case Filing (ECF) system are to page numbers assigned by the ECF system.

DEFENDANTS' OBJECTIONS TO SPECIAL MASTER'S REPORT ON KEY CQIT INDICATORS

17611966.2

1  proposed list of key, provisional indicators for several reasons. First, the Special Master's Report

2  seemingly ignores the Court's definition of "key" indicators, and instead includes numerous

3  indicators that fail to meet that high threshold, therefore exceeding the scope of the remedy

4  envisioned by this Court over twenty-six years ago. Additionally, the Special Master's Report is

5  inchoate because it was developed from a *draft* list of all CQIT indicators initially created by

6  Defendants that contained numerous redundancies and discrepancies and that did not purport to

7  address which indicators were "key." Defendants' List ultimately addressed the redundancies and

8  discrepancies before it was submitted to this Court, but the Special Master's Report failed to

9  correct (and therefore contains) the errors, described in further detail below. Finally, the Report

10  contains incomplete, placeholder-type indicators, which the Special Master has indicated is

11  expected to be further developed and refined during the 29th Monitoring Round. While

12  Defendants anticipate some future adjustment to the CQI indicators, a final list of key indicators

13  must be established now to ultimately guide resolution of this case. Further, compliance thresholds

14  for necessary indicators must be discussed so Defendants can fully implement CQI.

15      Defendants look forward to a prompt resolution of these outstanding issues so that the

16  parties and the Special Master may turn their focus toward ensuring a lasting remedy in this case.

17  **OBJECTIONS TO THE SPECIAL MASTER'S REPORT**

18  **A.    The Special Master's proposed list of 165 key indicators incorrectly includes**
19  **numerous indicators that do not track material provisions of the Program Guide, Compendium, and court orders.**

20      The Special Master's proposed list of key indicators is based on a misapplication of the

21  Court's definition of "key" indicators, the Eighth Amendment of the U.S. Constitution, and the

22  Prison Litigation Reform Act (PLRA).[2] In the Court's view, "key" indicators track material

23  _____

24  [2] The Special Master's Report also includes a history and background section that attempts to set out the facts related to the development of CQI, CQIT, and related indicators. ECF No. 7151 at 2-
25  13. The Special Master appears to fault Defendants' actions for delays in the development of CQI and CQIT. However, his historical account is not consistent with his own earlier reports regarding
26  the fact that the tool was "fundamentally sound and 'off to a good start'" even after the litigation in 2013 regarding termination. Twenty-Sixth Round Monitoring Report, May 6, 2016, ECF No.
27  5439, at 100. The Special Master's Report also omits some critical events that were certainly more
28  disruptive to the process than termination litigation.  For example, in 2013, Plaintiffs filed several

provisions of the Program Guide, Compendium, and court orders which, when "taken as a whole and met at the requisite degree of compliance, signal constitutionally adequate compliance." *See* ECF No. 6996 at 8:20-23. The Special Master does not subscribe to this definition and, instead, considers indicators to be "key" indicators if they are required by the Program Guide or Court order "or are otherwise material to the provision of adequate mental health care." ECF No. 7151 at 20. The Special Master's definition goes beyond the parameters set out by this Court by focusing generally on the provision of adequate mental health care, untethered to the actual requirements of the Eighth Amendment or this Court's determination of the constitutionally-mandated components of an adequate mental health system. The result is an over-inclusive list of key indicators, many of which do not reflect constitutional requirements or even the "Standards for Mental Health Services in Correctional Facilities" established by the National Commission on Correctional Health Care.

Defendants have consistently noted that not all of the specific Program Guide, Compendium, or court-ordered requirements that may be tracked by an indicator reflect a constitutional requirement. ECF Nos. 6936, 7116. For example, patients must be timely referred to a mental health clinician under the Eighth Amendment ("Timely MH Referrals"), but the specific timeframes within the Program Guide for mental health referrals are policy choices informed by community and correctional best practices; they do not necessarily reflect what the Eighth Amendment requires. *See* ECF No. 7151 at 21 (Access to Care, No. 1). Similarly, CDCR could provide constitutionally adequate mental healthcare irrespective of its performance on several indicators, nonetheless labeled as "key" by the Special Master including, among others[3]:

---

motions for further relief that caused a flurry of discovery and evidentiary hearings lasting through early 2014 and resulted in orders that led to rewriting major policies, and the creation of multiple new programs for the MHSDS. Also, the Special Master's recount of the work CDCR did with respect to the development of CQIT belies his characterization of "derailing" events. However, for the sake of focusing the Court on their specific objections to the Special Master's proposed key indicators list, Defendants reserve their right to respond at a more appropriate time to the Special Master's factual background with a comprehensive factual background of the development of CQI, CQIT, and related indicators.

[3] A complete list of indicators that are included in the Special Master's Report as "key," but which are more properly characterized as "informational," is attached as **Exhibit A** to the Declaration of Paul Mello ("Decl. Mello"), filed herewith.

1   Appointments Cancelled Due to Custody (*id.* at 22 (Access to Care No. 17); Appointments Seen

2   as Scheduled (*id.* (Access to Care No. 18)); Satisfactory SPRFIT Meeting (*id.* at 23 (Suicide

3   Prevention No. 25)); Number of EOP and CCCMS Patients in ASU (*id.* at 25 (Restricted Housing

4   No. 22)); Percentage of High Refusers Due to Custody in Which a Meeting Between MH and

5   Custody was Conducted within 7 Calendar Days (*id.* (Restricted Housing No. 26)); Inmates Who

6   Receive ASU MH Guide (*id.* (Restricted Housing No. 27)); Percentage of Peace Officers

7   Observed to Carry their CPR Mouth Shield (*id.* (Restricted Housing No. 31)); and Percentage of

8   Clinical Restraint Occurrences Meetings [*sic*] All of the Audit Criteria (*id.* (Patient Safety No. 2)).

9   Significantly, none of these examples track the Standards for Mental Health Services in

10  Correctional Facilities established by the National Commission on Correctional Health Care, let

11  alone the Constitution. These indicators (as well as the Special Master's Report more generally),

12  seem to have lost sight of the primary areas of focus identified by this Court in its September 13,

13  1995 Order. (ECF No. 612.)

14          It is with this background in mind that Defendants crafted their current list of key

15  indicators—identifying those material CQI indicators that measure compliance with

16  constitutionally-mandated aspects of an adequate mental health care delivery system. ECF No.

17  7089-1. Not all CQI indicators meet this high standard. The Special Master's determination that

18  nearly *all* CQI indicators are "key indicators" is untethered from the Constitution. And whereas

19  Defendants' List closely tracks the identified constitutional violations in this Court's September

20  13, 1995 Order and seeks to narrowly tailor the key indicators accordingly, the Special Master's

21  Report does not tether its list to those areas which constitute the "components of a minimally

22  adequate prison mental health care delivery system." *Coleman v. Wilson*, 912 F. Supp. 1282, 1296

23  n.10. Accordingly, because the Special Master's list is *not* narrowly drawn and extends further

24  than necessary to correct the violation of the Federal right, any order adopting the Special Master's

25  recommendation would run afoul of the PLRA. 18 U.S.C. § 3626(a)(1)(A).

26          Consistent with the PLRA, Defendants' list correctly identifies key indicators under the

27  Court's definition and distinguishes them from other *informational* quality improvement

28  indicators, which are not "key" indicators because they either do not measure Program Guide,

1  Compendium, or court-ordered requirements, or they do not measure *material* provisions of the

2  Program Guide, Compendium, or court orders. Instead, they are included within CQIT to aid in

3  quality improvement. The Special Master's key indicator list, on the other hand, does not

4  differentiate between key and informational indicators on the sole ground "that it had neither been

5  contemplated nor applied in the development of the original indicators used during the CQIT test

6  phases . . . ." ECF No. 7151 at 19. But this again ignores—or seeks to rewrite—the actual history

7  of CQIT, which was initially and primarily designed as a quality improvement tool. *See* ECF No.

8  6936-1 at 2; Twenty-Fourth Round Monitoring Report, July 2, 2012, ECF No. 4205 at 65

9  (recognizing that an important goal is for CDCR to "diagnos[e] its own problems, i.e. conduct its

10  own 'qualitative analysis,' and create a quality improvement process"). CDCR has always desired

11  to create and maintain a system grounded in best practices, far exceeding constitutional minima,

12  and CQIT was developed with that goal in mind.  ECF No. 6936-1 at 2. Moreover, the Special

13  Master fails to acknowledge that Defendants began developing the CQI process long before this

14  Court opined on its view as to what a "key" indicator actually was. *See* ECF No. 6996 at 8:20-23.

15  Accordingly, Defendants object to the Special Master's key indicators list on the ground that it

16  fails to differentiate "key" indicators from non-key, informational-only indicators—thereby

17  rendering the list overly-inclusive and inconsistent with this Court's orders, the Eighth

18  Amendment, the Prison Litigation Reform Act, and the Standards for Mental Health Services in

19  Correctional Facilities established by the National Commission on Correctional Health Care.

20  **B.    The Special Master's proposed list of key indicators was established using a draft list created by Defendants, and is therefore flawed.**

21
22      1.    *The Special Master's proposed list contains several duplicative indicators that should be consolidated to avoid confusion.*

23        By relying upon an early draft document as a baseline for the Special Master's preliminary

24  list, a number of duplicative indicators were likely inadvertently included in the Report.  The

25  Special Master filed his Report without first giving the Defendants an opportunity to review it and

26  provide informal comments or objections, as required by the Court's scheduling order. The

27  duplication issues identified here, therefore, could not be informally resolved in advance of the

28  Report's filing. Thus, Defendants object to the inclusion of the following duplicative indicators,

which should be consolidated for clarity:

- "Treatment Plans with Reason for Refusal and Intervention Documented for High Refusers." This indicator appears twice as items 4 and 8 in the "Quality of Care" section. ECF No. 7151 at 23.

- "Percentage of IDTTs Observed in which a Health Record and C-File were Available." This indicator appears twice as item 12 in the "Access to Care" section and as item 30 in the "Restricted Housing" section. *Id.* at 22, 25.

- "Percentage of Health Care Staff with Suicide Prevention Training." This indicator appears twice as item 19 in the "Suicide Prevention" section and as item 13 in the "Staffing" section. *Id.* at 22, 26.

- "Observed RC Screens Conducted in a Confidential Setting." This indicator appears as item 15 in the "Access to Care" section. *Id.* at 22. There is also an indicator titled "Percentage of Observed R&R and Reception Center Screens in Confidential Setting and Correct Documentation Used" that appears in the "Suicide Prevention" section. *Id.* at 22 (Suicide Prevention No. 10). Both indicators measure whether Reception Center screens were conducted in a confidential setting.[4]

- "Percentage of MH-7s required completed prior to ASU placement" appears as item 38 in the "Restricted Housing" section. *Id.* at 25. This item seems to be duplicative of the "ASU Pre-Screens" indicator, which also appears in the "Restricted Housing" section. *Id.* at 24 (Restricted Housing No. 4).

- "MH Screens." This indicator appears as item 16 in the "Access to Care" section. *Id.* at 22. The current MH Screens indicator on the Mental Health Performance Report measures several types of Mental Health screens, including Reception Center screens and ASU pre-screens. As mentioned above, there is already an ASU Pre-Screens indicator that appears in the "Restricted Housing" section of the Special Master's list. *Id.* at 24 (Restricted Housing No. 4). If the MH Screens indicator on the list is meant to

---

[4] That said, Reception Center screens and R&R screens should remain separate.

1    capture Reception Center screens, then it should be renamed. Otherwise, the indicator

2    is duplicative of another indicator already on the list.

3    • "Timely Admissions to Inpatient Care" and "Inpatient Transfer Deadlines for PIPs and

4    DSH." These new indicators appear as items 8 and 9 in the "Access to Care" section.

5    *Id.* at 21-22. Both indicators seem to measure transfer timelines to the Acute and ICF

6    levels of care. If so, one should be eliminated.

7        These (and other) errors contained within the Report were detailed in a June 1, 2021, letter

8 to the Special Master from Defendants.  (Decl. Mello, **Exhibit B** [June 1, 2021 letter].) While the

9 parties and the Special Master have not, as of the filing of these objections, substantively

10 discussed the issues raised in Defendants' June 1 letter, Defendants understand the Special Master

11 will consider removing any duplicative indicators appearing on the list he filed with the Court.

12 Defendants appreciate the Special Master's amenability on this issue. Accordingly, Defendants

13 request that the Court sustain their objections, including striking or consolidating the duplicative

14 indicators from the Special Master's list to the extent that these issues are not resolved by the

15 Special Master on his own initiative.

16        2.    *The Special Master's proposed list of key indicators includes several indicators*
17              *that have been decommissioned and others that should be deemed informational*
              *only.*

18        While many of the indicators included in the Special Master's list were previously used by

19 CDCR in its CQI, some of those indicators have since been decommissioned by CDCR as

20 obsolete. (*See*, *e.g.*, ECF No. 7151 at 93-95.)  Others were included in CDCR's current list of key

21 indicators filed with the Court on March 17, 2021, but deemed "informational" only. ECF No.

22 7089-1. For instance, Defendants have previously told the Special Master that they intended to

23 decommission the indicator "Percentage of mental health OHU stays 48 hours or less" (ECF No.

24 7151 at 25 (Utilization and Resource Management No. 2)) because CDCR no longer has mental

25 health OHUs. Thus, this indicator is no longer necessary.

26        Separately, as Defendants have previously explained, especially when an indicator only

27 provides numbers, not percentages (*i.e.* all indicators listed in the "Patient Safety" category, ECF

28 No. 7151 at 25), or where an indicator provides percentages not tied to any policy expectation,

DEFENDANTS' OBJECTIONS TO SPECIAL MASTER'S REPORT ON KEY CQIT INDICATORS

1    including related Program Guide requirements (*i.e.* "Percentage of Eligible MHSDS Patients

2    Receiving Milestone Credits," *id.* at 25 (Restricted Housing No. 32)) the indicator should be

3    treated as informational only. Doing so would be consistent with the Court's view that "key"

4    indicators should track material provisions of the Program Guide, Compendium, and court orders

5    which, when "taken as a whole and met at the requisite degree of compliance, signal

6    constitutionally adequate compliance" (*see* ECF No. 6996 at 8:20-23), all while ensuring that

7    these indicators continue to be included within CQIT to aid in quality improvement.

8    **C.    The provisional nature of the Special Master's proposed list of key indicators leads to**
     **indefinite uncertainty.**

9

10    The Special Master seeks "provisional approval" of these "preliminary indicators" while

11    he continues to "test and monitor the functionality and efficacy of these preliminary CQIT key

12    indicators during the Twenty-Ninth Monitoring Round." (Report, ECF No. 7151 at 21.) However,

13    it is of great concern that after thirty-one years, this case still lacks clear benchmarks with no

14    finality on the horizon. While Defendants understand and agree that CQI indicators will

15    necessarily evolve as CDCR's policies change (and in particular, expect further revisions to

16    indicators related to suicide prevention), the key indicators in this case – those that are closely tied

17    to the "components required for a mental health care system to meet minimum constitutional[ity]"

18    – should not be elusive, nor should they require further refinement after all these years. *See*

19    *Coleman*, 912 F. Supp. at 1296. Defendants therefore object to a process which continues to evade

20    completion.[5]

21    One unfortunate and undesirable consequence of the Special Master's "provisional" and

22    "preliminary" approach is that the Report contains several "placeholder"-type indicators. These

23    placeholder indicators were not the subject of prior discussions of "key" indicators between the

24    Special Master and the parties, have never been used, and require clarification, as it is unclear

25

26    _____

27    [5] In addition to finalizing key indicators, additional work remains before the CQI process may be
     fully implemented, including establishing compliance percentages and data validation, which
28    should be completed as soon as possible so that CDCR can move forward with full implantation of
     CQI.

Case No. 2:90-CV-00520- KJM-DB

DEFENDANTS' OBJECTIONS TO SPECIAL MASTER'S REPORT ON KEY CQIT INDICATORS

what they intend to measure. *Compare* ECF No. 7151 (Special Master's list) *with* ECF No. 7089 (CDCR's current list). It is Defendants' understanding that the Special Master expects the following proposed indicators to be more fully developed during the course of his Twenty-Ninth Monitoring Round:

- "Emergent/urgent MH referrals that result in SRASHEs." ECF No. 7151 at 22 (Suicide Prevention No. 2). This is a new indicator and it is unclear exactly what it is intended to measure. Defendants' list included an indicator titled "Timely Suicide Risk Assessments," which does not appear on the Special Master's list. *See* ECF No. 7089-1 at 3. If the new indicator is meant to measure the timeliness of SRASHEs, like Defendants' current indicator on timely suicide risk assessments, that should be made clear (including whether this new indicator is intended to replace or somehow supplement Defendants' current indicator).

- "Suicide-resistant MHCBs." ECF No. 7151 at 22 (Suicide Prevention No. 4). It appears this new indicator is intended to measure construction on cells, though it is unclear. Specifically, the Special Master's suicide expert, Lindsey Hayes, previously reviewed all Mental Health Crisis Beds and determined which beds are suicide resistant. In fact, he found that Defendants were fully compliant with this recommendation in his most recent re-audit. ECF No. 6879 at 16; see also ECF No. 6973, Order, adopting in full ECF No. 6897. Thus, an ongoing or supplemental review of suicide-resistant beds is unnecessary unless CDCR constructs or modifies cells. As such, the purpose of this indicator, including when and what specifically it is designed to measure, should be made clear.

- "Additional Use of Force (Specificity to be determined)," (*id.* at 23 (Specialized Custody No. 11), "Additional MAPIP (Specific medication monitoring, other MAPIP measures related to psychiatric medication monitoring not included here)," (*id.* at 24 (Medication Management No. 15). The December 17, 2020 order required Defendants to update the CQI key indicators to "reflect any changes required by the 2018 Update to the Program Guide and the Compendium of Custody Related Remedial Measures."

1    ECF No. 6996 at 11. Yet the above indicators are seemingly placeholders with no

2    specific corresponding Program Guide or Compendium requirement. As such, all such

3    indicators should be removed from the list of key indicators.

4    •    "Allocated and filled positions." *Id.* at 26 (Staffing/Personnel Training, and Staff

5    Resources No. 14). This indicator is vague and ambiguous. As explained in

6    Defendant's List, CDCR reports on the number of allocated and filled positions for

7    each classification identified in the "Staffing" section in the CQI report. ECF No. 7089

8    at 8 fn. 6. Thus, it is unclear whether the "Allocated and filled positions" indicator in

9    the Special Master's list is different than what CDCR currently reports for the listed

10    classifications. The Special Master should clarify what this indicator entails and what

11    the listed classifications represent.

12    •    "Sustainability Process." ECF No. 7151 at 26 (Additional Key Indicators No. 1). The

13    Sustainability Process is a separate audit that the Mental Health Regional teams

14    complete on a quarterly basis. The indicators in the Sustainability Process are currently

15    separate from CQI. However, the Special Master's inclusion of this item on his list

16    suggests that he believes that the Sustainable Process audit should be merged with

17    CQI. Moreover, and as with all the "Additional Key Indicators," the Special Master

18    should explain whether this item, which is actually a separate audit with several

19    indicators, is a stand-alone key indicator.

20    •    "ASU EOP Hub Certification." *Id*. (Additional Key Indicators No. 2). As the Special

21    Master is aware, the indicators in the ASU EOP Hub Certification are already included

22    in the list of key indicators. In that respect, the inclusion of the ASU EOP Hub

23    Certification as an indicator by itself is functionally duplicative of other indicators on

24    the Special Master's list. Accordingly, the Special Master should clarify whether this

25    item is different, and if so, how. Moreover, and as with all the "Additional Key

26    Indicators," the Special Master should explain whether this item, which is actually a

27    separate audit with several indicators, is a stand-alone key indicator.

28    •    "PIP (To be developed)." *Id* (Additional Key Indicators No. 3). The December 17,

1    2020 order required Defendants to update the CQI key indicators to "reflect any

2    changes required by the 2018 Update to the Program Guide and the Compendium of

3    Custody Related Remedial Measures." ECF No. 6996 at 11. Yet, the above indicator is

4    seemingly a placeholder with no specific corresponding Program Guide or

5    Compendium requirement. All such indicators should be removed from the list of key

6    indicators. Furthermore, and as with all the "Additional Key Indicators," the Special

7    Master should explain whether this item, which is likely to consist of several different

8    indicators, is a stand-alone key indicator.

9    • "Custody and Mental Health Partnership Collaboration." ECF No. 7151 at 26

10    (Additional Key Indicators No. 4). The Special Master provides no specifics as to what

11    should be included in this item. This should be made clear, particularly because CDCR

12    anticipates that there will be several indicators specific to the CMHPP. Furthermore,

13    and as with all the "Additional Key Indicators," the Special Master should explain

14    whether this item, which is actually a separate audit with several indicators, is a stand-

15    alone key indicator.

16    Defendants object to the inclusion of these vague and ambiguous indicators because their

17    full and final development will unnecessarily delay the CQI process, which has been twenty-six

18    years in the making, and because they have not been the subject of the parties' prior extensive

19    conversations on the subject of key CQI indicators.

20    **CONCLUSION**

21    Defendants filed with the Court a comprehensive list of key indicators that was developed

22    in consultation with the Special Master and Plaintiffs' counsel. Nonetheless, should the Court

23    choose to rely upon the Special Master's Report and proposed list of key indicators, Defendants

24    respectfully request that the Court sustain Defendants' objections and modify the Special Master's

25    Report accordingly. Twenty-six years into the remedial phase of this case, Defendants look

26    forward to finally being able to move forward on finalizing and deploying CQIT to measure

27    Defendants' compliance with the constitutional mandates in this case, and in so doing, ensure a

28    lasting remedy.

Case No. 2:90-CV-00520- KJM-DB

17611966.2
DEFENDANTS' OBJECTIONS TO SPECIAL MASTER'S REPORT ON KEY CQIT INDICATORS

1

<u>**CERTIFICATION**</u>

2

In preparing these objections, Defendants' counsel reviewed the following Court orders

3

relevant to the issues in this filing: ECF Nos. 612, 1384, 4232, 5091, 5092, 5477, 6033, 6846,

4

6969, 6996, 7064, 7111.

5

DATED:  June 14, 2021                              HANSON BRIDGETT LLP

6

7

By:    *s/ Paul B. Mello*

8

PAUL B. MELLO
SAMANTHA D. WOLFF
DAVID C. CASARRUBIAS

9

Attorneys for Defendants

10

11

DATED:  June 14, 2021                              Respectfully Submitted,

12

ROB BONTA

13

Attorney General of California
Damon McClain

14

Supervising Deputy Attorney General

15

By:    *s/ Elise Owens Thorn*

16

ELISE OWENS THORN
Deputy Attorney General

17

Attorneys for Defendants

18

19

20

21

22

23

24

25

26

27

28

17611966.2

DEFENDANTS' OBJECTIONS TO SPECIAL MASTER'S REPORT ON KEY CQIT INDICATORS