# Exhibit B

**Paul B. Mello**

| | |
|---|---|
| **From:** | Bentz, Melissa@CDCR <Melissa.Bentz@cdcr.ca.gov> |
| **Sent:** | Tuesday, June 1, 2021 3:51 PM |
| **To:** | Matt Lopes; Mohamedu Jones; Kerry F. Walsh |
| **Cc:** | Coleman Team - RBG Only; Paul B. Mello; Samantha Wolff; David C. Casarrubias; Laurel E. O'Connor; v_Elise.Thorn@doj.ca.gov; v_Lucas.Hennes@doj.ca.gov; v_Damon.McClain@doj.ca.gov; v_Namrata.Kotwani@doj.ca.gov; v_Carrie.Stafford@cdcr.ca.gov; Thind, Sundeep@CDCR; v_Nicholas.Weber@cdcr.ca.gov; v_dillon.hockerson@cdcr.ca.gov |
| **Subject:** | Coleman: Questions re Special Master's CQI Key Indicator List |
| **Attachments:** | Ltr MCB-ML re Special Master's CQI Key Indicator List- 6.1.2021.pdf |

Special Master Lopes,

Please see the attached letter with questions regarding the Special Master's CQI Key Indicator List filed with the Court on May 6, 2021. We look forward to discussing soon.

Respectfully,

*Melissa C. Bentz*
Attorney, Class Action Team
Office of Legal Affairs
California Department of Corrections and Rehabilitation
Email: Melissa.Bentz@cdcr.ca.gov
Phone: (916) 628-5385

ATTORNEY/CLIENT COMMUNICATION AND/OR ATTORNEY WORK PRODUCT – DO NOT FORWARD COMMUNICATION WITHOUT THE EXPRESS PERMISSION OF THE AUTHOR.

1

STATE OF CALIFORNIA – DEPARTMENT OF CORRECTIONS AND REHABILITATION                                                                GAVIN NEWSOM, GOVERNOR

**OFFICE OF LEGAL AFFAIRS**
Jennifer Neill
General Counsel
P.O. Box 942883
Sacramento, CA 94283-0001



June 1, 2021

Special Master Lopes
Pannone Lopes Devereaux and O'Gara LLC
Northwoods Office Park, Suite 215N
1201 Atwood Avenue
Johnston, RI 02919

*VIA EMAIL ONLY*

Special Master Lopes:

During the parties' May 18, 2021 Data Discussion meeting, Defendants noted that the Special Master's Key Indicator list ("List") included several duplicative indicators. Defendants also raised several other questions relating to the List and were asked to put all questions in writing. After further review of the List and prior draft lists from Defendants, it appears that the Special Master's team may have used an internal tracking document from Defendants as a basis for the List. Defendants revised the items on the internal tracking document to remove duplicates and clarify language before filing Defendants' list with the Court. The use of the draft internal tracking document may have led to some of the below questions, but we are unsure if that is the case without further discussion with the Special Master's team. Defendants look forward to discussing the questions and comments below soon.

**1. Duplicate Indicators**

Upon review of the Key Indicator list filed on May 6, 2021, Defendants noted the following duplicative indicators:

- Treatment Plans with Reasons for Refusal and Intervention Documented for High Refusers- This indicator is items 4 and 8 in the "Quality of Care" section.

- Percentage of IDTTs Observed in Which a Health Record and C-File were Available- This indicator is item 12 in the "Access to Care" section and item 30 in the "Restricted Housing" section.

- Percentage of Health Care Staff with Suicide Prevention Training- This indicator is item 19 in the "Suicide Prevention" section and item 13 in the "Staffing" section.

- Observed RC Screens Conducted in a Confidential Setting- This indicator is item 15 in the "Access to Care" section. There is also an indicator titled "Percentage of R&R and RC

17563895.1

> Screens in Confidential Setting and Correct Documentation" in the "Suicide Prevention" section. Both indicators measure whether RC screens were conducted in a confidential setting. CDCR recommends that RC screens and R&R screens remain separate.

- Percentage of MH-7s Required Completed Prior to ASU Placement is listed as item 38 in the "Restricted Housing" section. This item seems duplicative of the ASU Pre-Screens indicator, which is also in the "Restricted Housing" section.

- MH Screens- This indicator is item 16 in the "Access to Care" section. The current MH Screens indicator on the Mental Health Performance Report measures several types of Mental Health screens, including RC screens and ASU pre-screens. As mentioned above, there is already an ASU Pre-Screens indicator in the "Restricted Housing" section of the List. If the MH Screens indicator on the List is meant to capture RC screens, then it should be renamed. Otherwise, the indicator is duplicative of another indicator already on the list.

- Timely Admissions to Inpatient Care and Inpatient Transfer Deadlines for PIPs and DSH- These new indicators are items 8 and 9 in the "Access to Care" section. Both indicators seems to measure transfer timelines to the Acute and ICF levels of care. What is the difference between the two indicators?

**2. Questions Regarding New Indicators**

The List filed on May 6, 2021, contains several indicators that were not on Defendants' list. Some of these indicators seem like additions to Defendants' list, while others may have simply been retitled. Defendants seek clarity on the following indicators:

- Emergent/Urgent Referrals that Result in a SRASHE- This new indicator is item 2 in the "Suicide Prevention" section. Can you please explain what exactly this indicator would measure? Defendants' list included an indicator titled "Timely Suicide Risk Assessments", which does not appear on the List. Is the new indicator meant to measure the timeliness of SRASHEs like Defendants' current indicator?

- Suicide-Resistant MHCBs- This new indicator is item 4 in the "Suicide Prevention" section. Is this meant to be a one-time indicator? Mr. Hayes has previously reviewed all current MHCBs and has determined whether those beds are suicide-resistant. It is our understanding that re-review of suicide-resistant beds is unnecessary unless there is construction on the cells.

- Additional Use of Force and Additional MAPIP- These indicators are item 11 in the "Specialized Custody" and item 15 in the "Medication Management" sections, respectively. We had a high level discussion regarding the Use of Force indicator during the May 18, 2021 Data Discussion in which a member from the Special Master's team confirmed that this was a placeholder indicator. Does the Special Master's team have any ideas regarding what should be included in this item? Also, can you please explain why these areas should be expanded beyond what is currently part of CQI when the Special Master and the parties have worked together for several years to decide on the indicators currently part of CQI?

- Allocated and Filled Positions- This indicator is item 14 in the "Staffing" section. Other items in the "Staffing" section include a list of classifications. As explained in Defendant's Key Indicator list, CDCR reports on the number of allocated and filled positions for each classification identified in the "Staffing" section in the CQI report. (ECF No. 8 at fn.6.) Is the "Allocated and Filled Positions" indicator in the "Staffing" section different than what CDCR currently reports for the listed classifications? If so, what does the indicator entail and what do the listed classifications represent?

- Sustainability Process- The Sustainable Process is a separate audit that the Mental Health Regional teams complete on a quarterly basis. The indicators in the Sustainable Process are currently separate from CQI. Does the inclusion of this item on the List mean that the Special Master believes that the Sustainable Process audit should be merged with CQI? Also, please explain how this item, which is actually a separate audit with several indicators, is in and of itself a key indicator?

- ASU EOP Hub Certification- As discussed during the May 18, 2021 Data Discussion, the indicators in the ASU EOP Hub Certification are already included in the list of key indicators. In that respect, the inclusion of the ASU EOP Hub Certification as an indicator by itself is functionally duplicative of other indicators on this list. Is this indicator meant to be anything different from what is already included in the other sections of the List? If this item is different, please explain how. Also, please explain how this item, which is actually a separate audit with several indicators, is in and of itself a key indicator?

- PIP (To Be Developed)- Does the Special Master's team have any ideas regarding what should be included in this item? CDCR anticipates that there will be several indicators specific to the PIPs. Please explain how this item, which is likely to include several indicators, is in and of itself a key indicator?

- Custody and Mental Health Partnership- Does the Special Master's team have any ideas regarding what should be included in this item? CDCR anticipates that there will be several indicators specific to the CMHPP. Please explain how this item, which is likely to include several indicators, is in and of itself a key indicator?

**3. Questions Regarding Existing Indicators**

Many of the indicators on the List were previously used in CQI. However, some of those indicators were decommissioned by CDCR as outlined in Defendants' March 14, 2021 letter. Others were included on Defendants' filed list of CQI indicators, but deemed informational. Below are a few questions regarding the Special Masters' inclusion of indicators that Defendants decommissioned or deemed informational.

- Percentage of MH OHU Stays of 48 Hours or Less- This indicator is item 2 in the "Utilization and Resource Management" section. In Defendants' March 18, 2021 letter to the Special Master and Plaintiffs' counsel, I stated that Defendants were decommissioning this indicator because CDCR no longer has mental health OHUs. CDCR's October 15, 2015 policy "Housing of Patients Pending Mental Health Crisis Bed Transfer" states that patients referred to MHCB shall only be housed in alternative housing and that alternative housing

is capped at twenty-four hours. (ECF No. 5864-1 at 342, et seq.) The policy further defines Outpatient Housing Units as alternative housing. (*Id.*) Further, CDCR has separate indicators for alternative housing and MHCB transfer timelines. Please explain why the Special Master's team believes this indicator is still necessary.

- Indicators Without a Compliance Percentage- As discussed during the May 18, 2021 Data Discussion, there are several indicators on the List that only provide numbers, not percentages, (*i.e.* all indicators listed in the "Patient Safety" category.) There are also indicators that may provide percentages, but those percentages are not tied to any policy expectation, (*i.e.* percentage of eligible MHSDS patients receiving milestone credits.) The Special Master's team has acknowledged this and members of the Special Master's team have stated that there may be some key indicators that do not have a compliance percentage attached. We appreciate this acknowledgement and the fact that the List was created without taking compliance into account. However, these items are very different from the other indicators on the list as there is no related Program Guide requirement. Can you please explain how these types of indicators fit into the list as a key indicator?

### 4. Use of CQI Key Indicators During the Upcoming Monitoring Tours

During the May 14, 2021 status conference, the Court stated that "the Special Master plans to use the list of proposed indicators that he's provided to the Court as he begins monitoring." (Transcript at 6:14-16). Defendants understood that the Special Master uses his own monitoring tool, and not CQI, during monitoring rounds. It is our understanding that the List was created based on the list provided by Defendants and the indicators previously used in the CQI process. As noted in ECF 7116, Defendants' list of indicators was based on actual indicators, most of which were used in previous CQI audits. Can you please provide some additional information regarding how the key indicators identified on the List will be used during monitoring?

We look forward to discussing these questions and comments with the Special Master's team soon. Please let us know when you are available to discuss.

Respectfully,

*/s/ Melissa C. Bentz*

Melissa C. Bentz
Attorney
Office of Legal Affairs
California Department of Corrections and Rehabilitation