# EXHIBIT B

**TO DEFENDANTS' JUNE 2021 STATUS REPORT IN RESPONSE TO FEBRUARY 10, 2014 ORDER**

STATE OF CALIFORNIA —DEPARTMENT OF CORRECTIONS AND REHABILITATION                                             GAVIN NEWSOM, GOVERNOR

**OFFICE OF LEGAL AFFAIRS**
Jennifer Neill
General Counsel
P.O. Box 942883
Sacramento, CA 94283-0001



June 11, 2021

Paul Mello
Hanson Bridgett
1676 N. California Boulevard, Suite 620
Walnut Creek, CA 94596

Dear Mr. Mello:

Attached please find the California Department of Corrections and Rehabilitation's June 2021 Status Update for the Three-Judge Court proceeding.

Sincerely,

*Jennifer Neill*

JENNIFER NEILL
General Counsel, Office of Legal Affairs
California Department of Corrections and Rehabilitation

**STATE OF CALIFORNIA —DEPARTMENT OF CORRECTIONS AND REHABILITATION**  **GAVIN NEWSOM, GOVERNOR**



# JUNE 15, 2021 UPDATE TO THE THREE-JUDGE COURT

On February 10, 2014, the Three-Judge Court extended the deadline to achieve the court-ordered reduction in the in-state adult institution population to 137.5% of design capacity to February 28, 2016. (ECF Nos. 2766/5060 & 2767/5061.) This report is CDCR's 85th report submitted since the Court issued its population-reduction order, and the 73rd report submitted since February 2015, when Defendants informed the Court that the population was below the court-ordered reduction. (ECF No. 2838/5278, filed February 17, 2015.) It has now been over seven years since Defendants have been in full compliance with the population-reduction order. As of June 9, 2021, the State's prison population is 109.3 % of design capacity, up from 108.0 % in the previous filing.

### A.     Update on durability:

As previously reported, Proposition 57, the State's durable remedy that enacts many of the Court-ordered reforms as well as expands credit-earning opportunities, was approved by voters in November 2016.

On May 1, 2018, regulations for Proposition 57 were approved and made permanent. Information about these regulations can be found at: https://www.cdcr.ca.gov/proposition57/.

Later, in December 2018, the Office of Administrative Law approved two emergency regulation packages which: (1) amend the nonviolent offender parole process to distinguish between determinately and indeterminately sentenced offenders and implement a parole consideration process for indeterminately sentenced, nonviolent offenders ("Nonviolent Offender Package"); and (2) expands credit earning opportunities ("Credit Earning Package") for inmates who achieve a High School diploma or its equivalent or who complete 52 hours of programming under the Rehabilitative Achievement Credit program. The Credit Earning Package also reduces the minimum amount of time an inmate must serve until released following a sudden award of substantial credit. The Credit Earning Package went into effect on January 9, 2019.

The Nonviolent Offender Package went into effect on January 1, 2019. Following the Court of Appeal's decision *In re McGhee*, effective July 9, 2019, CDCR no longer applies the previously mandated public safety screening criteria to eligible nonviolent offenders. All eligible (determinately and indeterminately sentenced) nonviolent offenders are now referred to the Board of Parole Hearings for consideration, regardless of their in-prison behavior. On September 10, 2019, the Office of Administrative Law approved the emergency regulations repealing the public safety screening criteria for determinately sentenced, nonviolent offenders. On March 26, 2020, the Office of Administrative Law made the emergency regulations permanent. The notices of approval and publication can be found here: https://www.cdcr.ca.gov/regulations/wp-content/uploads/sites/171/2020/04/Adopted-NCR-19-06.pdf?label=Adopted%20Regulations%20for%20Supplemental%20Reforms%20to%20Parole

15853516.1

%20Consideration%20for%20Determinately-Sentenced%20Nonviolent%20Offenders&from=https://www.cdcr.ca.gov/regulations/cdcr-regulations/new-rules-page/.

The California Supreme Court in the case of *In re Gadlin*, effective January 29, 2021, held persons required to register under Penal Code section 290, et seq. based on a prior conviction cannot be categorically excluded from parole consideration under Proposition 57. The Court also held the Department's regulations cannot exclude inmates for a current offense unless it is defined by the regulations as a violent felony. On April 9, 2021, the department filed emergency regulations with the Office of Administrative Law to comply with the court's decision. The Office of Administrative Law approved the emergency regulations on April 29, 2021. In addition, CDCR and the Board of Parole Hearings have made necessary changes to IT systems, policies, and procedures to implement the *Gadlin* decision. All persons who became eligible for parole consideration as a result of the *Gadlin* decision and who otherwise meet the eligibility requirements for parole consideration under Proposition 57 will be referred to the Board of Parole Hearings by July 1, 2021.

In addition, in response to the COVID-19 pandemic, pursuant to Governor Newsom's March 24, 2020 Executive Order N-36-20 and the CDCR Secretary's independent authority under California Government Code § 8658, CDCR reduced the inmate population at CDCR's institutions.

The impact of the above-described regulations include:

1. <u>Increased credit earning opportunities for all inmates except the condemned and those serving life without parole:</u>

    1,060 inmates released in May earned credit authorized by Proposition 57 towards their advanced release date. These inmates earned an estimated average of 192.3 days of additional credit.[1]

2. <u>Determinately Sentenced Nonviolent Offender Parole Process:</u>

    CDCR began referring inmates to the Board for this process on July 1, 2017, pursuant to the emergency regulations promulgated on April 13, 2017. From July 1, 2017 through May 31, 2021, 26,207 referrals were made to the Board. As of May 31, 2021, 23,377 referrals have been reviewed on the merits, with 4,125 inmates approved for release and 19,252 denied. Additionally, 2,143 referrals have been closed because the Board's jurisdictional review of the inmates' criminal history and central file revealed they were not eligible for parole consideration. The remaining referrals are pending review, including the 30-day period for written input from inmates, victims, and prosecutors.

3. <u>Indeterminately Sentenced Nonviolent Offender Parole Process:</u>

    CDCR began screening indeterminately-sentenced, nonviolent offenders for eligibility in January 2019. As of May 31, 2021, 2,604 inmates have been referred to the Board for a

---

[1] This number does not include inmates released from fire camps.

parole consideration hearing, of which 56 were closed because the Board's jurisdictional review of the inmates' criminal history and central file revealed they were not eligible for parole consideration. The Board conducted 943 hearings for indeterminately sentenced nonviolent offenders. The hearings resulted in 262 grants, 610 denials, and 71 stipulations to unsuitability. An additional 955 hearings were scheduled but were postponed, waived, continued, or cancelled. The remaining referrals are pending parole suitability hearings.

**B.    Update on Other Measures Defendants Continue to Implement:**

1. Contracting for additional in-state capacity in county jails, community correctional facilities, private prison(s), and reduction of out-of-state beds:

   Defendants have reduced the population in CDCR's 34 institutions by transferring inmates to in-state facilities.

   a. Private Prison (California City):

      The current population of California City is approximately 2,049 inmates.

   b. Community correctional facilities (CCFs), modified community correctional facilities (MCCFs), and Female Community Reentry Facility (FCRFs):

      The State currently has contracted for zero MCCF and FCRF beds that are in various stages of activation and transfer.

   c. County jails:

      The State continues to evaluate the need for additional in-state jail bed contracts to house CDCR inmates.

   d. Reduction of inmates housed out-of-state:

      On February 10, 2014, the Court ordered Defendants to "explore ways to attempt to reduce the number of inmates housed in out-of-state facilities to the extent feasible." Since that time, the State has reduced the out-of-state inmate population to zero.[2] The last inmates in out-of-state contract beds returned to California at the end of June 2019.

2. Parole process for medically incapacitated inmates:

   The State continues to work closely with the Receiver's Office to implement this measure. The Receiver's Office is continuing to review inmates and is sending completed recommendations to CDCR. Recommendations received from the Receiver's office are reviewed by DAI and referred to the Board for a hearing. As of May 31, 2021, the Board has held 293 medical parole hearings under the revised procedures, resulting in

---

[2] This statistic only concerns inmates in out-of-state contract beds and does not include inmates housed in other states under interstate compact agreements.

3

   191 approvals and 102 denials.  An additional 62 were scheduled, but were postponed, continued, or cancelled.

3. Parole process for elderly inmates:

   As discussed in prior reports, the State enacted Assembly Bill 1448 on October 11, 2017, authorizing an elderly parole program for inmates age 60 or older who have served at least 25 years of incarceration.  Governor Gavin Newsom signed AB 3234 last fall, lowering the age to 50 and the years served to 20 for this program. Assembly Bill 3234 however, specifically excludes persons sentenced under the Three Strikes Law or who are convicted of first-degree murder of a peace officer.  The Board is required to schedule all hearings for persons eligible for a hearing as a result of AB 3234 by no later than December 31, 2022.  It is projected this will result in 1,135 inmates being eligible for a parole hearing by December 31, 2022, based on that change.  Necessary functionality to identify, screen, and calculate parole eligible dates for persons eligible for a parole hearing under the new law is being developed and it is anticipated that all persons newly eligible for an initial parole hearing due to AB 3234 will be scheduled for a parole hearing no later than December 31, 2022.

   The Board continues to schedule eligible inmates for hearings who were not already in the Board's hearing cycle, including inmates sentenced to determinate terms.  The Board also continues to give special consideration to whether age, time served, and diminished physical condition, if any, have reduced a person's risk for future violence in all parole hearings conducted for persons who meet the criteria for an elderly parole hearing.  From February 11, 2014, through May 31, 2021, the Board held 5,499 hearings for inmates eligible for elderly parole, resulting in 1,615 grants, 3,403 denials, 481 stipulations to unsuitability, and there currently are no-split votes that require further review by the full Board.  An additional 3,072 hearings were scheduled during this period but were waived, postponed, continued, or cancelled.

4. Male Community Reentry Programs:

   Contracts for the San Diego County, Los Angeles County, Kern County, and Butte County Male Community Reentry Programs are in place.  The State continues to review and refer eligible inmates for placement consideration.  As of June 9, 2021, 482 inmates are housed in Male Community Reentry Program facilities.

5. Expanded alternative custody program:

   The State's expanded alternative custody program for females, Custody to Community Treatment Reentry Program (CCTRP), provides female inmates with a range of rehabilitative services that assist with alcohol and drug recovery, employment, education, housing, family reunification, and social support.  Female inmates in the CCTRP are housed at facilities located in San Diego, Santa Fe Springs, Bakersfield, Stockton, Sacramento, and Los Angeles.  As of June 9, 2021, 290 female inmates are participating in the CCTRP.

4

6. <u>Reduction of inmate population in response to COVID-19 pandemic:</u>

   On March 24, 2020, Governor Newsom issued an Executive Order N-36-20 suspending the intake of new inmates into CDCR facilities for 30 days. CDCR's Secretary extended the suspension of intake. For the period from March 24 through August 24, 2020, intake was mostly suspended, with only very limited intake occurring in May and June 2020. On an intermittent and limited basis, CDCR resumed intake the week of August 24, 2020. In response to the recent increase of COVID-19 cases in the community and consistent with public health and health care guidance, CDCR suspended intake from county jails effective November 26, 2020, through December 27, 2020. Intake resumed on January 11, 2021, on a limited basis, and resumed to a regular basis on April 2021.

   Further to these efforts to reduce the population, in March 2020, CDCR's Secretary exercised independent authority under California Government Code § 8658 to transition inmates for whom CDCR staff determined that public safety risk does not preclude release to early parole or Post Release Community Supervision. Inmates with 60 days or less remaining on their sentence (as of March 30, 2020) who were not serving a current term for a violent felony, or for a domestic violence offense, and were not required to register as a sex offender had their release to parole or Post Release Community Supervision accelerated under the Secretary's direction. As of April 14, 2020, a total of 3,585 inmates were released as a result of the Secretary's directive and other natural attrition.

   In addition, at the end of June 2020, CDCR implemented a new plan—consisting of several discretionary measures—to further safely reduce the prison population under California Government Code section 8658. On July 10, 2020, CDCR formally announced this new plan. Further details can be found at https://www.cdcr.ca.gov/news/2020/07/10/cdcr-announces-additional-actions-to-reduce-population-and-maximize-space-systemwide-to-address-covid-19/.

   The first measure under this plan releases inmates within 180 days of their release date on a rolling basis if they meet certain criteria. This measure is ongoing. As of December 9, 2020, 6,506 inmates have been released from CDCR's 35 institutions under this measure. The second measure under the plan released inmates with less than a year to serve who resided in particular prisons and who met certain criteria. As a result of this measure, 549 qualifying inmates were release early. The third measure under the plan released high-risk medical inmates who met certain criteria and were individually approved by the Secretary for early release. As a result of this measure, 51 people who were not otherwise eligible for release through the first two programs have been released early to date. This early-release program was suspended on October 31, 2020.

   Under California Code of Regulations, Title 15, section 3043.6, an additional measure under the plan announced on July 10, 2020 awarded twelve weeks of positive programming credits to inmates who met certain criteria. This effort was undertaken to make up for limited access to programs and credit-earning opportunities during the COVID-19 pandemic. Additional information regarding this measure can be found at https://www.cdcr.ca.gov/covid19/positive-programming-credit-faqs/, and the Secretary's

15853516.1

letter to the incarcerated population regarding these credits can be found at https://www.cdcr.ca.gov/covid19/letter-to-all-incarcerated-people/.

7. New Credit Earning Regulations Effective May 1, 2021:

    CDCR passed new credit-earning regulations effective May 1, 2021. Significant credit-earning changes include:

    - an increase in the rate at which people serving sentences for violent crimes earn credits for good conduct from 20% (one day of credit for every four days served) to 33.3% (one day of credit for every 2 days served);

    - an increase in the rate at which people serving sentences for nonviolent crimes with second- or third-strike enhancements earn credits for good conduct from 33.3% (one day of credit for ever two days served) to 50% (one day of credit for each day served); and

    - the creation of Minimum Security Credit, through which people assigned to minimum custody workgroups, firefighting camps, or non-firefighting camps will be awarded 30 days of credit after 30 consecutive days of custody.

    The new regulations also changed disciplinary practices that previously implemented zero-credit-earning days in response to a rules violation. Under the new regulations, incarcerated people will no longer be disciplined with zero-credit-earning days. Instead, where appropriate, discipline will include restricting certain privileges for a limited period, but they will continue earning Good Conduct Credits during that time. Loss of privileges could, however, limit a person's ability to earn additional credits through certain programs. CDCR anticipates that, in addition to incentivizing positive behavior, these new changes will allow more people to reduce the amount of time spent in prison.

8. Update to Design Capacity:

    CDCR recently completed a review of its design capacity at all 34 institutions. The purpose of the review was to identify all beds that have been taken out of service or converted to other uses, and adjust the design capacity bed number accordingly. The review included a comparison between the Strategic Offender Management System (SOMS) and the design capacity bed list, with disputes reconciled through a variety of means, including review of source documents, construction projects, and site verification. CDCR identified 672 beds that are no longer in service, either due to conversion of cells to office space, storage, treatment space, or accessible housing, or because extensive repairs would be needed to re-activate the beds. It also identified 299 beds that should be added to the design capacity, but were improperly excluded in prior counts. Thus, CDCR's design capacity will be reduced by a total of 373 beds and CDCR's system-wide design capacity will be 84,710. A copy of the institution-specific changes in design capacity is attached to this month's report as Exhibit C.

    The updated design capacity will take effect on July 1, 2021, and will be reflected in the subsequent weekly population report set to be published on July 7, 2021.

As of June 9, 2021, 92,958 incarcerated people were housed in the State's 34 adult institutions down from 117,342 since the beginning of March 2020. No inmates were housed in out-of-state facilities and the State's prison population is approximately 109.3 % of design capacity.