UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>EDMUND G. BROWN, JR., et al.,<br><br>Defendants. | No. 2:90-cv-0520 KJM DB P<br><br><br><br>ORDER |

On March 5, 2021, the Special Master filed his Twenty-Eighth Round Monitoring Report (hereafter Report). ECF No. 7074. The report contains numerous findings, but no recommendations for specific court orders. The absence of recommendations for court orders is deliberate, reflecting the Special Master's assessment that the COVID-19 pandemic "has been, and continues to be, enough of a challenge." *Id*. at 199/216.[1] Defendants have filed objections to some of the findings, ECF No. 7082, and plaintiffs have filed a response to defendants' objections, ECF No. 7103. Having reviewed the parties' filings, for the reasons explained below, defendants' objections are overruled except as noted.

---

[1] As a general rule, citations to pages in documents filed in this action are to page numbers assigned by the Court's Electronic Case Filing (ECF) system located in the upper right hand corner of the page. In this order, citations to pages in the Report are first to the page numbers assigned by the Special Master at the bottom of each page and then to the corresponding page numbers assigned by the court's Electronic Case Filing (ECF) system.

1

I. <u>Defendants' First Objection</u>

Defendants' first objection is to the Special Master's response to a general comment by defendants in their response to the draft Twenty-Eighth Round Monitoring Report.[2] Specifically, defendants object to the Special Master's statement that "defendants do not take issue with the findings of the Special Master that mental health care provided to the *Coleman* class is inadequate." Defendants contend this statement "mischaracterizes" general comments in their response to the draft Report, "that 'the breadth of initiatives and revisions to critical areas of the case, including staffing, custody and mental health partnership, data systems, population reduction, and policy updates' were significant and that the final Report should state that its findings might not reflect these important changes and that [the final Report] should be read with that understanding." ECF No. 7082 at 2 (quoting ECF No. 7074-2 at 2). Defendants' objection does not acknowledge in full the Special Master's response to their general comment with respect to the draft Report. The relevant discussion from the Report, in its entirety, follows:

> In their general comments, defendants do not take issue with the findings of the Special Master that mental health care provided to the Coleman class is inadequate; however, defendants take the position that because the findings were made for specified points in time, the report should indicate that important changes have occurred since the findings were made and that the report should be read in [that] context.
>
> Regarding this comment, the Special Master points out that this draft monitoring round report, like all prior monitoring round reports previously shared in draft form with the parties and subsequently filed with the Court, expressly indicated the applicable review periods that were covered during the monitoring round. Moreover, the draft report also presented current information regarding various activities in which the parties have been involved and continue to be involved. Defendants themselves point to the numerous places in the report where the Special Master discussed the myriad of activities involving the parties, several of which are ongoing, some from as far back as since the filing of the Twenty-Seventh Round Monitoring Report on February 13, 2018. ECF No. 5779. To the extent that

/////

---

[2] As required by the December 11, 1995 Order of Reference, the Special Master circulated a draft copy of his Twenty-Eighth Round Monitoring Report to the parties. *See* ECF No. 640 at 4. Consistent with his standard practice, he gave the parties thirty days to respond to the draft. *See* ECF No. 7074 at 6/23. He subsequently gave the parties an extension of time to submit their responses. *Id*.

2

> reporting regarding ongoing activities of the parties and the Special
> Master require updating, the report has been amended. See infra at
> 37, 43, 73, 217, 236 and 258.

ECF No. 7074 at 10-11/27-28. The Report adequately captures and responds to defendants' general comment. This objection is overruled.

II.     Defendants' Second Objection

Defendants' second objection is to the Report's finding that the vacancy rate in telepsychiatry positions was 18 percent during the reporting period. ECF No. 7082 at 2. Defendants contend (1) "there are no fixed number of telepsychiatry positions and the Report does not indicate how the Special Master calculated the vacancy rate," and (2) that the Report should not have calculated the telepsychiatry vacancy rate separately from the total psychiatry vacancy rate. *Id*. Defendants contend vacancy rates have "long been calculated" using the total number of allocated psychiatrist positions. *Id*.

The Special Master reports that the data he relied on for staff psychiatry and telepsychiatry was taken from a court-ordered monthly staffing report filed by defendants. *See* ECF No. 7074 at 73 n.35/90 n.35 (citing ECF No. 6892). As required by this court's February 15, 2018 order, defendants have since March 2018 filed monthly reports on psychiatrist staffing vacancies. *See* ECF No. 5786 at 4-5. Since their inception, the monthly vacancy reports have separately identified, as part of a whole, both the current total of allocated telepsychiatry positions and the number of those positions that are filled. *See* ECF No. 5813 at 5. The monthly vacancy report cited by the Special Master is consistent with this long-standing reporting format. *See* ECF No. 6892 at 5.

Though styled as monthly psychiatry vacancy reports, defendants' reports include calculations of the percentage of allocated psychiatry positions that are filled. *See*, *e.g.*, *id*. The reports do not separately calculate percentage fill rates for the various classifications that are reported, though they do include a fill rate for allocated psychiatrist positions and a separate fill rate including psychiatric nurse practitioner positions. *See*, *e.g.*, *id*. Defendants have not cited to anything in the record that precludes the Special Master from analyzing data provided by

/////

3

defendants to report on vacancy rates in specific staffing categories, nor have they presented evidence to show his analysis of the data is erroneous.[3]

The court will direct the Special Master to clarify for the record the method he used to calculate the telepsychiatry vacancy rate. The court's review of defendants' monthly vacancy report for August 2020,[4] ECF No. 6892, shows 80 telepsychiatry positions allocated as of July 2020, not 78, and a total of 60.83 filled positions that increased to 74.94 with the use of the telepsychiatry registry, rather than 52.67 and 63.92, respectively. *Compare* ECF No. 6892 at 5 *with* ECF No. 7074 at 75/92. The latter total suggests a fill rate of approximately 94 percent (dividing 74.94 filled positions by 80 allocated positions), or a vacancy rate of approximately 6 percent in allocated telepsychiatry positions for the month of August 2020.

For the foregoing reasons, except as noted in this order defendants' second objection is overruled.

### III. Defendants' Third Objection

Defendants object to several findings in specific "Institutional Summaries" within the Report, as follows:

#### A. California State Prison-Corcoran

Defendants object to the finding that "'[i]n-service training sign-in sheets for February and March 2019 . . . did not include all Watches; some sign-in sheets had only custody staff in attendance.'" ECF No. 7082 at 3 (quoting ECF No. 7074 at 465/482). Defendants contend that separate sign-in sheets for custody and mental health staff may be used as provided by CDCR policy and that the sign-in sheets were completed in accordance with the applicable policy. ECF No. 7082 at 3. Defendants have not provided with their objections a copy of the policy to which they refer for the court's review.

/////

---

[3] The type of in-depth analysis provided by the Special Master could prove useful to defendants if staffing shortfalls continue, as well as in assessing defendants' provisionally approved telepsychiatry policy at the end of the provisional period. *See* September 21, 2020 Order, ECF No. 6874.

[4] This document was filed September 30, 2020.   4

1         Defendants also object to the finding that "'[r]equested documentation regarding custody and mental health staff training for the custody mental health partnership that would allow for verification of training was not provided.'" *Id*. (quoting ECF No. 7074 at 465/482). Defendants assert that "all training sign-in sheets and relevant training documentation were provided to the Special Master's team" through uploads to the CDCR Custody and Mental Health Partnership Plan SharePoint, and they represent these documents were enclosed again with their response letter to the draft monitoring report but the "Report fails to account for this response and information." ECF No. 7082 at 3 (citing ECF No. 7074-2 at 12).

        The Order of Reference governing the powers and duties of the Special Master requires the court to accept findings of fact made by the Special Master in his compliance reports unless those findings of fact are "clearly erroneous." ECF No. 640 at 8. "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948) (quoted in *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573 (1985)). Defendants have presented no evidence in support of their objection to either of the findings called out above. The court notes that in their February 2, 2021 letter to the Special Master, defendants state they have enclosed relevant data with the letter. ECF No. 7074-2 at 12. The enclosure is not included in Attachment B to the Twenty-Eighth Round Monitoring Report, *see* ECF No. 7074-2, *passim*. On inquiry from the court, the Special Master confirmed defendants sent a zip file to the Special Master with their February 2, 2021 letter. For the sake of clarity, and good cause appearing, the Special Master will be directed to file an addendum to the Report to clarify what documentation his team requested in this area that defendants did not provide, either in the initial uploads or with their response to the draft Report, and to make such additional modifications to the Report, if any, that may be required in connection with this clarification.

        Finally, defendants object to the Report's finding that discharge requirements for an indecent exposure (IEX) pilot program failed 'to address the underlying condition nor was it indicative that the condition had been resolved or treated.'" ECF No. 7082 at 3. Defendants

contend this mischaracterizes the IEX pilot program, which they assert "is not intended to treat the underlying condition of exhibitionism; rather, the IEX program is a housing and classification program that diverts inmates from segregation terms" and "only a handful of the program participants were even diagnosed with exhibitionism." *Id*. at 3-4. Once again, defendants provide no evidence to support this objection.

The challenged finding, in full, is as follows:

Indecent Exposure (IEX) Pilot Program:

CDCR issued an instructional memorandum regarding an IEX Pilot Program at CSP/Corcoran on November 30, 2017, and the pilot program was approved by California's Office of Administrative Law on February 7, 2018. Its goal was to determine if modification of some of the sanctions for IEX offenses would lead to a reduction in IEX behavior in a non-segregated environment. Under regulations in place at the time of the implementation of the pilot, inmates found guilty of indecent exposure or two or more Sexual Disorderly Conduct offenses in a 12-month period were subject to sanctions under California Code of Regulations (CCR), Title 15, Section 3315(f)(5)(K), and were required to be assessed a Security Housing Unit (SHU) term per CCR, Title 15, Section 3341.9(e)(12)(A).

Inmates in the pilot program, while still subject to CCR Title 15 sanctions discussed above, would not be subject to a SHU term solely based on an IEX offense, however, any D" IEX offense credit loss would become non-restorable.

The pilot applied to EOP, 3CMS, and general population (GP) inmates and accepted inmates from all classification levels. It was considered a non-designated programming facility for housing purposes.

While it was encouraging that the IEX pilot program sought to provide treatment to inmates exhibiting inappropriate sexual behaviors, it was observed that the current conceptualization of the IEX pilot was as a housing unit for inmates with problematic sexual behaviors in contrast to a sex offender specific treatment program.

The discharge criterion from the pilot was 90 continuous days without indecent exposure behavior. This expressed outcome, which was for an inmate to go 90 consecutive days without demonstrating any inappropriate sexual behavior did not address the underlying condition nor was it indicative that the condition had been resolved or treated. Ninety consecutive days without inappropriate sexual behavior was not a useful outcome indicator relevant to successful treatment.

/////

/////

> The lack of discharge planning in the IEX pilot when clinically indicated was of serious concern.

ECF No. 7074 at 470-472/487-489.

Defendants also take out of context the specific finding they challenge. Read in its entirety, the Special Master notes the goal of the program and observes that the program did seek to provide treatment to inmates showing signs of "inappropriate sexual behavior." Defendants present no evidence that the IEX pilot program did not attempt to provide treatment, and in the context of attempted treatment, the Special Master's observations about indicators of successful treatment and the need for discharge planning are entirely proper. Indeed, given the expertise of the Special Master and his team and their long familiarity with remedial efforts in this case, the observations are likely quite useful for CDCR administrators and clinicians. This objection is overruled.

### B. California Correctional Institution

The Special Master reports that "[i]nmates and clinical staff reported, and the monitor's expert observed, that CDCR 602s (inmate grievance forms) were not available on the housing units" at California Correctional Institution (CCI). ECF No. 7074 at 722/739. Defendants object to the Special Master's failure to provide them with a list of specific housing units at CCI that do not make grievance forms available. ECF No. 7082 at 4. First, this is not an objection to the finding. Second, defendants' assertion they need the list to "confirm and, if necessary, address this criticism," *id.*, is without merit. Defendants have direct access to and authority over the administrators in all state prisons, including CCI; the information they seek from the Special Master is equally available to them. This objection is overruled.

### C. California Institution for Women

Defendants object to the Special Master's finding that "'[i]nmates did not report problems with returning indoors during heat alerts. The inmates did report that the SCU was very warm and staff reported the swamp coolers had been malfunctioning.'" ECF No. 7082 at 4 (quoting ECF No. 7074 at 780/797). Essentially, defendants complain this finding is incomplete, arguing the Special Master should note there was no policy violation during the review period and

7

that CDCR did put fans in the hallway as an extra cool-down measure. ECF No. 7082 at 4. Once again, defendants do not present evidence in support of their proposed additional findings. Defendants present no authority to support their assertion that the Special Master is required to complete his findings as they request. The Special Master is not required to omit from his monitoring report information gleaned during monitoring tours that may prove useful to defendants. This objection is overruled.

Upon review of the supplemental filing required by this order, the court anticipates adopting the Twenty-Eighth Round Monitoring Report as supplemented.

For all of the foregoing reasons, IT IS HEREBY ORDERED that:

1. Within fourteen days from the date of this order the Special Master shall file an addendum to the Twenty-Eighth Round Monitoring Report that (a) clarifies the method used to calculate the telepsychiatry vacancy rate reported in the Twenty-Eighth Round Monitoring Report; and (b) clarifies what documentation his team requested for verification of custody and mental health staff training required by the custody mental health partnership plan that defendants did not provide, either in initial uploads or with their response to the draft Report, and also makes such additional modifications to the Report, if any, that may be required in connection with this clarification.

2. Except as noted herein, defendants' objections to the Twenty-Eighth Round Monitoring Report are overruled.

DATED: July 13, 2021.

_____
CHIEF UNITED STATES DISTRICT JUDGE