Rob Bonta, State Bar No. 202668
Attorney General of California
Damon McClain, State Bar No. 209508
Supervising Deputy Attorney General
Elise Owens Thorn, State Bar No. 145931
Lucas Hennes, State Bar No. 278361
Namrata Kotwani, State Bar No. 308741
Deputy Attorneys General
 1300 I Street, Suite 125
 P.O. Box 944255
 Sacramento, CA 94244-2550
 Telephone: (916) 210-7318
 Fax: (916) 324-5205
 E-mail: Elise.Thorn@doj.ca.gov
*Attorneys for Defendants*

HANSON BRIDGETT LLP
Paul B. Mello, SBN 179755
Samantha D. Wolff, SBN 240280
Laurel E. O'Connor, SBN 305478
David C. Casarrubias, SBN 321994
1676 N. California Blvd., Suite 620
Walnut Creek, California 94596
Telephone:  925-746-8460
Facsimile:  925-746-8490
*Attorneys for Defendants*

Roman M. Silberfeld, State Bar No. 62783
Glenn A. Danas, State Bar No. 270317
Robins Kaplan LLP
 2049 Century Park East, Suite 3400
 Los Angeles, CA 90067-3208
 Telephone: (310) 552-0130
 Fax: (310) 229-5800
 E-mail: RSilberfeld@RobinsKaplan.com
*Special Counsel for Defendants*

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

**SACRAMENTO DIVISION**

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>GAVIN NEWSOM, et al.<br><br>　　　　Defendants. | Case No. 2:90-CV-00520- KJM-DB<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION TO MODIFY THE 2009 STAFFING PLAN AS IT RELATES TO ON-SITE PSYCHIATRIC SUPERVISORS**<br><br>Judge:　　Hon. Kimberly J. Mueller |

-1-

Case No. 2:90-CV-00520- KJM-DB

DEFENDANTS' MPAs ISO MOTION TO MODIFY 2009 STAFFING PLAN

17707962.15

**INTRODUCTION**

Defendants bring this motion to modify their court-ordered staffing allocation plan that includes clinical staffing allocations for the California Department of Corrections and Rehabilitation (CDCR) mental health programs and administrative functions (2009 Staffing Plan). ECF No. 3693. After an extensive internal review of on-site psychiatrist supervising and numerous conversations with Plaintiffs, the Special Master, and the Special Master's team over the last year, Defendants decided to go above and beyond the requirements of the 2009 Staffing Plan by allocating a Chief Psychiatrist at every institution with a mental health program, not just those institutions with a Mental Health Crisis Bed (MHCB) unit or "complex and multiple" mental health programs.[1] While Defendants are currently also allocating a "Senior Psychiatry, Supervisor" position to institutions with "large and complex" mental health programs consistent with the 2009 Staffing Plan, CDCR has clarified the allocation criteria. *See* Declaration of Dr. Amar Mehta, ¶ 3. An *additional* senior psychiatry supervisor position will be allocated to those same institutions for every ten additional staff psychiatrists that are assigned thereto. *Id.* The net result of these changes under current conditions is *increasing* supervisory positions allocated to institutions by a total of 3.5 positions (though staffing allocations are subject to change based on application of criteria as the population and institution dynamics shift). *See id.* at ¶¶ 5 & 6, Ex. A. Clarifying the definition of "large and complex," in turn, obviates any need for the current ratio of one "Senior Psychiatry, Supervisor" position for fifty MHCBs in MHCB units with more than six beds—a ratio that has never been workable. Defendants therefore seek to modify the 2009 Staffing Plan by eliminating that ratio.[2]

---

[1] Because Defendants are only adding Chief Psychiatrist positions, and not removing any, this new policy does not conflict with the minimum requirements of the 2009 Staffing Plan, or require court approval.

[2] Defendants' further specifications to what "large and complex" means merely clarifies an existing requirement, and thus does not materially modify the 2009 Staffing Plain. However, to the extent that the Court considers that clarification as inseparable from the request to eliminate the 1:50 ratio, then Defendants alternatively seek to modify the 2009 Staffing Plan to incorporate their clarification of the definition for "large and complex" included herein.

Both Plaintiffs and the Special Master have vetted and agreed in substance with these changes. Defendants respectfully request that the Court grant this Motion and order that the 2009 Staffing Plan be modified accordingly.

## FACTUAL BACKGROUND

On September 30, 2009, Defendants filed a staffing allocation plan that includes clinical staffing allocations for the CDCR mental health programs and administrative functions. ECF No. 3693.[3] On March 4, 2010, the Special Master informed the parties in a letter that CDCR's staffing plan is the "best-designed and most comprehensive effort to cover staffing offered to date," and noted it would "**of course** [be subject] to any necessary modifications as they may become apparent in the future." ECF No. 5564 at 30-36 (original emphasis). The Special Master considered the ratios and allocations for different programs set forth in the plan to be reasonable as long as they could be adjusted based on actual experience and as future analyses unfold. *Id*. at 31-33. on May 18, 2015, the Court issued an order requiring Defendants to seek the approval of the Special Master and seek leave of court before making changes to the existing mental health staffing ratios. ECF No. 5307 at 6:4-5. On January 21, 2021, the Court approved adjustments to the 2009 Staffing Plan in four specific areas proposed by Defendants: (1) establishing a new psychiatrist staffing ratio for CCCMS patients not on medications for six months or more; (2) redirecting psychiatry positions allocated for crisis intervention on weekends and holidays to night shift telepsychiatry; (3) adopting a formal policy for Psychiatric Nurse Practitioners (PNPs) to provide psychiatry services and recognizing PNPs in the psychiatry position allocation fill rate; and (4) creating a telepsychiatry from home policy. ECF No. 7035 at 2.

The 2009 Staffing Plan lays out criteria for when Chief Psychiatrist and senior psychiatry supervisor positions should be allocated to institutions. The Plan requires CDCR to allocate a Chief Psychiatrist to institutions with MHCBs or with "complex and multiple" mental health programs. ECF No. 3693 at 31. The Plan also requires CDCR to allocate a "Senior Psychiatry,

---

[3] Citations to page numbers in documents filed in this action are to the page numbers assigned by the Court's Electronic Case Filing (ECF) system located in the upper right hand corner of the page.

Supervisor" position to institutions that: (1) do not have a Chief Psychiatrist, but have a significant number of staff psychiatrists providing care to a largely stable patient population, or (2) have a Chief Psychiatrist and have a "large and complex" mental health program. *Id.* at 32. In addition, the Plan requires CDCR to allocate a senior psychiatry supervisor at a ratio of one senior psychiatry supervisor to fifty MHCBs in MHCB units with more than six beds. *Id.* at 22.

In practice, however, this has resulted in fractional allocations of psychiatry supervisor positions throughout the State (*e.g.*, 0.12 of a position is allocated to Pleasant Valley State and Wasco State Prisons, 0.16 of a position is allocated to Mule Creek State Prison, and 0.2 of a position is allocated to Salinas Valley State Prison), and it is not operationally feasible to fill these fractional positions. Meta Dec., ¶ 2. Accordingly, CDCR decided to eliminate this unworkable ratio and change the way psychiatry supervisor positions are allocated to ensure that their allocation feasibly allows for actual staffing of those positions based upon concrete criteria. *Id.*

After discussions with Plaintiffs and extensive consultation with the Special Master and his team, and consistent with the 2009 Staffing Plan, CDCR is allocating one "Senior Psychiatry, Supervisor" to every institution that meets all of the following criteria: (1) Serve at least three different mental health program areas (CCCMS, STRH, LTRH, EOP, EOP ASU, PSU, RC, and MHCB), excluding the Psychiatric Inpatient Programs (PIPs); (2) A total mental health population of at least 900 patients, excluding patients in the PIP; and (3) A total of ten or more staff psychiatry positions allocated, including telepsychiatry, excluding positions allocated to the PIP. *See id.* at ¶¶ 3, 4, & 6, Ex. A. CDCR will also allocate an *additional* "Senior Psychiatry, Supervisor" position for every ten additional staff psychiatrists assigned to an institution that meets all other criteria. *Id*. at ¶¶ 3 & 6, Ex. A.  In light of these changes, the current ratio of one "Senior Psychiatry, Supervisor" position for 50 MHCBs, which has always been operationally unworkable, is now also obsolete.

Separately, CDCR is retaining all Chief Psychiatrist positions at institutions with an MHCB unit or "complex and multiple" mental health programs, but is additionally allocating a Chief Psychiatrist position to any other institution with a mental health program. *See id.* at ¶¶ 4 & 6, Ex. A. This policy goes above and beyond what is required by the 2009 Staffing Plan. *Id.* at ¶ 4.

Plaintiffs did not substantively object to Defendants' plan, including the proposed modification to the 2009 Staffing Plan. *See* Declaration of Samantha D. Wolff, ¶ 2. However, Plaintiffs refused to stipulate to the proposed modification because Defendants included a reservation of rights in the parties' draft stipulation to be filed with the Court. *Id.* As a result, and consistent with the Court's May 18, 2015 and December 24, 2020 orders, Defendants filed a request for leave to modify the 2009 Staffing Plan to eliminate the ratio for "Senior Psychiatry, Supervisor" positions for MHCBs. ECF No. 7223. The Court granted Defendants' request in a minute order on July 13, 2021. Dkt. No. 7226. For the reasons discussed below, this Court should grant Defendants' motion to modify the 2009 Staffing Plan.

## **ARGUMENT**

Under Federal Rule of Civil Procedure 60(b)(5), a court may relieve a party from a final order when, among other things, the order's prospective application is no longer equitable. Separately, under Rule 60(b)(6), courts may grant such relief for any other "reason that justifies relief." A motion for relief under either provision must be filed within a "reasonable time." Fed. R. Civ. P. 60(c)(1). Rule 60(b) codifies the court's inherent authority to modify or vacate the prospective relief of their judgments. *United States v. Asarco Inc.*, 430 F.3d 972, 979 (9th Cir. 2005) (applying Rule 60 (b)(5)); *Nicacio v. U.S. I.N.S.*, 797 F.2d 700, 706 (9th Cir. 1985) (applying Rule 60(b)(6)). Alternatively, a defendant may seek modification of an order granting prospective relief where the order approving such relief does not include the requisite findings that the relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. 18 U.S.C. § 3626(b)(2) & (b)(4).

A court that issues an injunction mandating systemic changes to an institution has the continuing duty and responsibility to assess the efficacy and consequences of its order. *Brown v. Plata*, 563 U.S. 493, 542 (2011). Court-ordered institutional reform implicates "sensitive federalism concerns" because it intrudes on elected officials' ability to govern. *Horne v. Flores*, 557 U.S. 433, 447-50 (2009). Accordingly, district courts must take a "flexible approach" to requests to modify orders that dictate the state's core responsibilities. *Id.*; *Rufo v. Inmates of*

*Suffolk Cty. Jail*, 502 U.S. 367, 384-85 (1992). As the Supreme Court has instructed, the district court "must remain open" to altering an order to ensure that the rights and interests of the parties are protected. *Plata*, 563 U.S. at 543. This includes "[p]roper respect for the State and for its governmental processes." *Id.* A court must "formulate its orders to allow the State and its officials the authority necessary to address contingencies that may arise during the remedial process." *Id.* at 544.

**A.    The Court should grant Defendants' requested relief under Rule 60(b)(5) or (b)(6) because the 1:50 supervisor to MHCBs ratio in the 2009 Staffing Plan is unworkable and obsolete.**

The Court should grant Defendants' request to modify the 2009 Staffing Plan—specifically, the 1:50 senior psychiatry supervisor to MHCBs ratio—under Rule 60(b)(5). Under Rule 60(b)(5), Defendants, as the moving parties, must first show a significant change either in factual conditions or in the law warranting modification of the Court's remedial orders. *Asarco Inc.*, 430 F.3d at 979 (citing *Rufo*, 502 U.S. at 384). Modification is appropriate when changed factual conditions make compliance with the order substantially more onerous, when the order proves to be unworkable because of unforeseen obstacles, or when enforcement of the order without modification would be detrimental to the public interest. *Rufo*, 502 U.S. at 384-85. A court does not need to find that the change in circumstances was both unforeseen and unforeseeable. *Id.* at 385 (observing that "litigants are not required to anticipate every exigency that could conceivably arise during the life of a consent decree").

Here, there is a significant change in factual conditions that warrants modification of the 2009 Staffing Plan to remove the 1:50 ratio, namely, CDCR's decision to clarify the "large and complex" criteria for allocation, which, in turn, will result in CDCR's ability to more feasibly staff the allocated positions. Whereas CDCR currently allocates one "Senior Psychiatry, Supervisor" to every "large and complex" institution consistent with the 2009 Staffing Plan, CDCR is clarifying this term to include institutions that meet all of the following criteria: (1) Serve at least three different mental health program areas (CCCMS, STRH, LTRH, EOP, EOP ASU, PSU, RC, and MHCB), excluding the Psychiatric Inpatient Programs (PIPs); (2) A total mental health population of at least 900 patients, excluding patients in the PIP; and (3) A total of ten or more staff

psychiatry positions allocated, including telepsychiatry, excluding positions allocated to the PIP. Mehta Dec. ¶¶ 3 & 6, Ex. A. CDCR is also allocating an *additional* "Senior Psychiatry, Supervisor" position for every ten additional staff psychiatrists assigned to an institution that meets all other criteria. *Id.* These changes not only provide clarity to the allocation criteria for "Senior Psychiatry, Supervisor" positions, but, much like a ratio, would require the allocation of additional supervisory positions as the number of staff psychiatrist positions increase. In light of these additions, the current ratio of one "Senior Psychiatry, Supervisor" position for 50 MHCBs, which has proven to be operationally unworkable, is now also obsolete and unwarranted.[4] Consequently, Defendants have made the necessary showing that modification is appropriate because of a significant change in factual conditions. *See Rufo*, 502 U.S. at 384-85.

It is also worth noting that, while CDCR is retaining the Chief Psychiatrist position at institutions with an MHCB unit or "complex and multiple" mental health programs, CDCR is *additionally* allocating a Chief Psychiatrist position to any other institution with a mental health program. *See* Mehta Dec., ¶¶ 4 & 6, Ex. A. Although this allocation is not required by the 2009 Staffing Plan, this policy will increase the number of Chief Psychiatrist positions statewide. *Id.* at ¶ 4.

CDCR's modifications will eliminate the problems created by the outdated and now unnecessary ratio. *See Rufo*, 502 U.S. at 384-85. And when considered in the context of the entirety of the changes CDCR is implementing (including the additional allocation of Chief Psychiatrist positions statewide), a net increase in psychiatry supervisors statewide will result. While CDCR proposes eliminating the 1:50 ratio for the allocation of senior psychiatry supervisors, the net result of implementing CDCR's entire proposal, based on current populations and programs, is an increase of 3.5 total supervisorial staffing positions statewide. Indeed, CDCR is allocating a Chief Psychiatrist to each institution and is further clarifying when "large and

---

[4] As noted above in fn.1, Defendants maintain that clarifying the definition of "large and complex" is not a material modification of the 2009 Staffing Plan. However, in an abundance of caution, to the extent that the Court considers that clarification as inseparable from the immediate request to eliminate the 1:50 ratio, then Defendants alternatively seek to modify the 2009 Staffing Plan to incorporate their clarification of the definition for "large and complex" included herein.

complex" institutions also warrant the allocation of senior psychiatry supervisors. Thus, whereas currently CDCR has allocated 18 Chief Psychiatrists and 17.5 "Senior Psychiatry, Supervisors" statewide, under the new proposal CDCR would allocate (based on current population and programs at the institutions) 28 Chief Psychiatrists and 11 "Senior Psychiatry, Supervisors" statewide for a net gain of 3.5 supervisory positions. *See* Mehta Dec., ¶ 5. Where, as here, changed circumstances have been shown, this Court may not refuse to rescind or modify an injunctive order. *Horne*, 557 U.S. at 447. Accordingly, the proposed minimal modification is suitably tailored to resolve the problems that persist with the outdated and now unnecessary 1:50 ratio.

Modifying the 2009 Staffing Plan to eliminate the unworkable and now obsolete ratio is also in line with the Court's continuing duty and responsibility to assess the efficacy and consequences of its orders to ensure that the rights and interests of the parties are protected. *Plata*, 563 U.S. at 542-43. The 2009 Staffing Plan requires CDCR to allocate a Senior Psychiatry, Supervisor at a ratio of one psychiatrist to 50 MHCBs in units with more than six beds. ECF No. 3693 at 22. The application of this ratio to the majority of CDCR's MHCB units is no longer operationally feasible or helpful. For example, CDCR has 13 MHCB units that have 20 or fewer beds. Mehta Dec., ¶ 2. Continuing to apply the 1:50 ratio to these units results in the allocation of less than half a senior psychiatry supervisor, with an allocation as low as a tenth of a position at some locations. *Id.* Such an allocation has never been filled, is unlikely to be filled, and, even if filled, does not provide meaningful assistance to the institution. *Id.*

The Court may also grant Defendants' request to modify the 2009 Staffing Plan under Rule 60(b)(6). Rule 60(b)(6) is a "catch-all" provision that authorizes a court to relieve a party from a final order for any reason not covered by the other provisions of the rule. *Delay v. Gordon*, 475 F.3d 1039, 1044 (9th Cir. 2007). Rule 60(b)(6) enables courts to grant relief "whenever such action is appropriate to accomplish justice," but should only be applied in "extraordinary circumstances." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 864 (1988).

In the unique circumstances presented here, the court may alternatively exercise its discretion and grant Defendants' requested relief under Rule 60(b)(6). Doing so would allow CDCR to proceed with its new plan that provides clarity to staffing allocations at "large and

complex" institutions, while simultaneously eliminating the unworkable (and now unnecessary) 1:50 ratio for senior psychiatry supervisors to MHCBs. That Defendants have chosen to unilaterally do more than what the Court expects of them justifies the Court's exercise of its discretionary jurisdiction.

**B.     Alternatively, the Court should grant Defendants relief under 18 U.S.C. § 3626(b)(2), because the 1:50 ratio in the 2009 Staffing Plan was approved without a finding by the Court that the relief was appropriate under the Prison Litigation Reform Act (PLRA).**

Notwithstanding the Court's ability to grant Defendants' request under Rule 60(b), the Court may also grant the relief requested under 18 U.S.C. § 3626(b)(2) that provides:

> In any civil action with respect to prison conditions, a defendant . . . shall be entitled to the immediate termination of any prospective relief if the relief was approved . . . in the absence of a finding by the court that the relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right.

Here, in proposing the 2009 Staffing Plan, Defendants did not believe "that the proposed staffing and services [were] constitutionally required, nor do they believe that th[e] Plan would satisfy the Prison Litigation Reform Act's requirements that prospective relief be narrowly drawn, extend no further than necessary to correct the alleged violation of the federal right, and be the least intrusive means necessary to correct the alleged violation." ECF No. 3693 at 7 n.1. But in ordering the filing of the 2009 Staffing Plan, the Court did not make any findings sufficient to satisfy the PLRA's exacting standards, let alone findings to justify the imposition of the 1:50 ratio in the 2009 Staffing Plan. *See* ECF Nos. 3613, 5307, 5711. Defendants therefore seek to modify these orders by eliminating the outdated 1:50 ratio in the 2009 Staffing Plan, to the extent the orders require implementation of the ratio. *See* 18 U.S.C. § 3626(b)(2), (b)(4) (providing for *modification* of prospective relief). And especially in light of Defendants' other initiatives that are increasing the number of supervisory positions allocated to institutions by a total of 3.5 positions,[5] the Court can and should grant defendants requested relief for modification.

---

[5] Staffing allocations are subject to change based on application of criteria as the population and institution dynamics shift.

## CONCLUSION

For the reasons above, the Court should grant Defendants' narrow motion to modify the 2009 Staffing Plan.

## CERTIFICATION

In preparing this motion, Defendants' counsel reviewed the following Court orders relevant to the issues in this filing: ECF Nos. 3613, 7226, 3666, 3665, 5307, 5711.

DATED: July 27, 2021                HANSON BRIDGETT LLP


By: _____*s/ Samantha D. Wolff*_____
PAUL B. MELLO
SAMANTHA D. WOLFF
LAUREL E. O'CONNOR
DAVID C. CASARRUBIAS
Attorneys for Defendants


DATED: July 27, 2021                Respectfully Submitted,

ROB BONTA
Attorney General of California
Damon McClain
Supervising Deputy Attorney General

By: _____*s/ Elise Owens Thorn*_____
ELISE OWENS THORN
Deputy Attorney General
Attorneys for Defendants