**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA**

**RALPH COLEMAN, et al.,**
  **Plaintiffs,**

   **v.**           **No. 2:90-cv-0520-KJM-DB**

**GAVIN NEWSOM et al.,**
  **Defendants.**

**SPECIAL MASTER'S ADDENDUM TO HIS TWENTY-EIGHTH ROUND
MONITORING REPORT ON THE DEFENDANTS' COMPLIANCE WITH
PROVISIONALLY APPROVED PLANS, POLICIES, AND PROTOCOLS**

## I. INTRODUCTION

On July 14, 2021, the court docketed an order overruling defendants' objections to the

Special Master's Twenty-Eighth Round Monitoring Report ("Report") and requiring the Special

Master to:

> [F]ile an addendum to the Twenty-Eighth Round Monitoring Report that:
>
> (a) clarifies the method used to calculate the telepsychiatry vacancy rates reported in the [Report]; and (b) clarifies what documentation his team requested for verification of custody and mental health staff training required by the custody mental health partnership plan that defendants did not provide…and also makes such additional modifications to the Report, if any, that may be required in connection with this clarification.

ECF No. 7229 at 8. This addendum to the Report is in response to the court order and clarifies

the Report's findings regarding telepsychiatry vacancies and custody and mental health

partnership plan training.

## II.  BACKGROUND

On March 5, 2021, the Special Master filed his Twenty-Eighth Round Monitoring Report.  ECF No. 7074.  On March 15, 2021, defendants filed their objections to the Report.  ECF No. 7082.  There are two specific objections relevant to this filing: the first, relating to the Special Master's analysis of telepsychiatry vacancies, *see id.* at 2; the second, relating to the Special Master's discussion of defendants' response to the Special Master's request for documentation of custody mental health partnership plan training occurring at California State Prison – Corcoran (CSP/Corcoran).  *Id.* at 3.

## III.  TELEPSYCHIATRY VACANCY METHODOLOGY

Defendants objected to the Special Master's finding of an 18 percent vacancy rate in telepsychiatry positions.  *Id.* at 2.  Defendants contend that there are "no fixed number of telepsychiatry positions and the Report does not indicate how the Special Master calculated the vacancy rate."  *Id.*  Further, defendants suggest impropriety in the Special Master's analysis of defendants' own psychiatry staffing reports to derive a vacancy rate specific to telepsychiatry. *Id.*  As noted, the court ordered the Special Master to clarify the "method used to calculate the telepsychiatry vacancy rate" contained in the Report.  ECF No. 7229 at 8.

In its July 14, 2021 order, the court correctly identified the source the Special Master relied on to calculate the telepsychiatry vacancy rate as the court-ordered "Defendants' Monthly Psychiatry Vacancy Report" dated September 30, 2020.  *Id* at 3.  This monthly filing provided telepsychiatry staffing data for August 2020.  ECF No. 6892 at 5.  In defendants' monthly psychiatry vacancy report, allocated, filled, and registry telepsychiatry positions are all reported separately for each institution, including the psychiatric inpatient programs (PIPs).

The methodology used by the Special Master to calculate a vacancy rate was to determine the total number of allocated and filled telepsychiatry positions, including registry positions, and calculate the vacancy rate based on those figures. *See infra* at 4. The Special Master excluded allocated and filled telepsychiatry positions in the PIPs and CDCR's desert institutions from his vacancy rate calculation.[1]

The PIP and desert institution adjustments resulted in the following net allocated and filled telepsychiatry positions: First, the total number of allocated telepsychiatry positions in the defendants' report (80) was adjusted down to 78 after subtracting two desert institution allocations. *See* ECF No. 6892 at 5 (indicating there are 2.0 telepsychiatry position allocations between California Correctional Center and Chuckawalla Valley State Prison, both desert institutions). The total number of filled telepsychiatry positions, including the PIPs, was 60.83 and the number of positions filled by registry, including the PIPs, was 14.11. *See id.* For filled positions, the Special Master subtracted 8.0 PIP telepsychiatry,[2] 2.72 PIP registry telepsychiatry,[3] and 0.3 desert institution registry telepsychiatry positions[4] from the respective totals. After subtracting these PIP and desert institution telepsychiatry filled and registry positions, the net number of filled positions was 63.92. The table below displays the adjustments the Special

---

[1] Since the Special Master filed a separate monitoring report regarding inpatient care, *see* ECF No. 7039, in which staffing issues were addressed, the vacancy rate included in the Report did not include allocated or filled positions from the PIPs. In addition, because the Special Master did not monitor the desert institutions in the Twenty-Eighth Round, allocated and filled telepsychiatrist positions for these institutions were not included in the Special Master's vacancy rate calculation.

[2] *See* ECF No. 6892 at 5 (indicating 8.0 filled telepsychiatry positions between California Health Care Facility Psychiatric Inpatient Program (CHCF-PIP) (four positions), California Medical Facility Psychiatric Inpatient Program (CMF-PIP) (three positions), and Salinas Valley State Prison Psychiatric Inpatient Program (SVSP-PIP) (one position).

[3] *See id.* (indicating 1.53 filled registry positions at CHCF-PIP and 1.19 filled registry positions at CMF-PIP).

[4] *See id.* (indicating 0.3 filled registry positions at Ironwood State Prison (ISP), a desert institution).

Master made to the total allocated and filled telepsychiatry positions when calculating the

telepsychiatry vacancy rate.

| Total Telepsychiatry Positions Allocated | Telepsychiatry -- Filled[5] | Telepsychiatry -- Registry | Total Filled | Vacancy Rate |
|---|---|---|---|---|
| 80 (PIP = 0) (Desert = 2) | 60.83 (PIPs = 8) (Desert = 0) | 14.11 (PIPs = 2.72) (Desert = .3) | 74.93 | 6.3% |
| **Net Allocated Positions** | **Net Telepsychiatry -- Filled** | **Net Telepsychiatry -- Registry** | **Net Total Filled** | **Vacancy Rate** |
| 78 | 52.83 | 11.09 | 63.92 | 18.1% |

To calculate the vacancy rate, the Special Master subtracted the net number of filled

positions (63.92) from the net number of allocated positions (78). The difference (14.08) was

divided by the number of net allocated positions (78); the quotient (0.1805) was multiplied by

100 to arrive at a vacancy rate of 18.1 percent.

## IV. CLARIFICATION REGARDING CUSTODY MENTAL HEALTH PARTNERSHIP PLAN TRAINING

Defendants also objected to findings included in the institutional summary for

CSP/Corcoran regarding custody and mental health partnership plan (CMHPP) training. ECF

No. 7082 at 3. Specifically, defendants objected to the finding that documentation indicated that

only custody staff attended certain trainings, *id.*, and that the sign-in sheets defendants produced

did not include documentation of all CMHPP trainings conducted during the review period. *See*

*id.* (objecting to the Report's statement that "[r]equested documentation regarding custody and

mental health staff training for the custody mental health partnership [plan] that would allow for

verification of training was not provided."). In its July 14, 2021 order, the court required the

---

[5] Although California State Prison at Solano had no telepsychiatry allocations, it reported having filled a 0.3 FTE which was included in the net calculations.

Special Master to clarify "what documentation his team requested for verification of custody and mental health staff training required by the custody mental health partnership plan that defendants did not provide … and also make[] such additional modifications to the Report, if any, that may be required in connection with this clarification."  ECF No. 7229 at 8.

In the document request sent to defendants in advance of the Twenty-Eighth Round monitoring tour of CSP/Corcoran, the Special Master requested the following regarding the custody mental health partnership plan:

- Documentation regarding completion of quarterly round table training for the past twelve months during second and third watch.  Include date and time of training, attendee's names, training class title and lesson plan.  Provide documentation by program.

- A list in a spreadsheet of staff (names and title) by program that did not attend the quarterly round training as scheduled; identify the date/lesson plan missed and plan to make-up the training.

During the on-site monitoring tour at CSP/Corcoran, the monitor was provided a total of 29 In-Service Training (IST) sign-in sheets.  The sign-in sheets were dated February 21, 2019, March 19, 2019, and March 20, 2019, which was inclusive of the first Quarter of 2019.[6]  The institution reported that CMHPP training was provided in mainline Enhanced Outpatient Program (EOP), Administrative Segregation EOP Hub (ASU EOP Hub), Long-Term Restricted Housing (LTRH), Short-Term Restricted Housing (STRH), Mental Health Crisis Bed (MHCB), and Correctional Treatment Center (CTC).  As indicated in the Report, *see* ECF No. 7074 at 482, some trainings appeared to include only custody staff, others only mental health staff.[7]

---

[6] The Twenty-Eighth Round document request was for the prior twelve months of documentation of training. However, CSP/COR did not receive the custody mental health partnership plan training for the trainers until November 2018 so the first quarter of 2019 would have been the only quarter the institution would be able to report.

[7] Specifically, the monitor noted that the following six sign-in sheets for the February 19, 2019 training contained only custody staff: 3A EOP (third watch); 4B IEX (third watch); CTC (third watch); LTRH (third watch); STRH (second watch); MHCB (second watch).  Additionally, three of the March 19 and 20, 2019, sign-in sheets contained only mental health staff: 3B EOP (second watch); MHCB (second watch); and 3A EOP (second watch). The fact

The institution provided a memorandum signed by the Chief of Mental Health stating that CMHPP training was provided on February 21, 2019, March 19, 20, and 22, 2019. *See* Exhibit A. Notably, the institution did not provide any sign-in sheets dated March 22, 2019. The memorandum also stated that "[n]early all Mental Health and custody staff have been trained in these 4 sessions." *Id.* However, the institution did not provide data to substantiate this statement. Finally, the institution did not provide any list or information regarding staff who had *not* attended the training, as the Special Master requested prior to the Twenty-Eighth Round Monitoring tour at CSP/Corcoran. *See supra* at 5. Based on this additional review and analysis of all documentation provided by CSP/Corcoran, the Special Master does not deem it necessary to revise the Report.

## V.  CONCLUSION

As defendants acknowledge in their objections to the Report, the Special Master carefully reviewed each of the defendants' comments and objections to the draft Report. This addendum to the Special Master's Report further clarifies the Special Master's findings relating to two important issues in this case: the use of telepsychiatry services and cultural collaboration between custody and mental health staff. The Special Master looks forward to continuing on-site monitoring in the Twenty-Ninth round and collaborating with the parties on these and other important issues impacting the provision of mental health services to the *Coleman* class.

Respectfully submitted,

*/s/ Matthew A. Lopes, Jr.*

Matthew A. Lopes, Jr., Esq.
Special Master

July 28, 2021

---

that only one job classification attended these training sessions was counterproductive to the partnership plan's goal to have both custody and mental health staff attend the training side-by-side in order to foster professional relationships, remove barriers and improve communications.

# EXHIBIT A



CALIFORNIA CORRECTIONAL
# HEALTH CARE SERVICES

# MEMORANDUM

| Date | : | March 27, 2019 |
|------|---|----------------|
| **To** | : | Round 28 Documents |
| **From** | : | Scott Harris, Chief of Mental Health |
| **Subject** | : | TAB AA #9 Custody and Mental Health Partnership |

Currently, there no staff that did not attend the Quarterly Round training as scheduled.

Custody and Mental Health Partnership Roundtables began on February 21, 2019. Other training offerings occurred on March 19, 20 and the 22nd.    Nearly all Mental Health and custody staff have been trained in these 4 sessions. Corcoran has until March 31st, 2019 to complete trainings and we are on target to meet that goal.

On File

March 27, 2019

_____        _____
Scott K Harris                                         Date
Chief of Mental Health