SHAWNA BALLARD, State Bar No. 155188
KATE FALKENSTIEN, State Bar No. 313753
Reichman Jorgensen Lehman & Feldberg LLP
  100 Marine Parkway, Suite 300
  Redwood Shores, CA 94065
  Telephone:  (650) 623-1401
  Fax:  (650) 623-1449
  Email:  sballard@reichmanjorgensen.com
        kfalkenstien@reichmanjorgensen.com

BRIAN C. BARAN, State Bar No. 325939
Reichman Jorgensen Lehman & Feldberg LLP
  1710 Rhode Island Ave NW, 12th Floor
  Washington, DC 20036
  Telephone:  (202) 894-7310
  Fax:  (650) 623-1449
  Email:  bbaran@reichmanjorgensen.com

*Attorneys for Plaintiff-Intervenor Christopher Lipsey*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **RALPH COLEMAN, et al.**<br><br>                              Plaintiffs,<br><br>    v.<br><br>**GAVIN NEWSOM, et al.,**<br><br>                              Defendants. | Case No. 2:90-cv-00520 KJM DB P<br><br>**PLAINTIFF-INTERVENOR CHRISTOPHER LIPSEY'S NOTICE OF MOTION AND MOTION TO COMPEL**<br><br>Date:          August 27, 2021<br>Time:         10:00 a.m.<br>Courtroom:  3, 15th floor (or via videoconference)<br>Judge:        Hon. Kimberly Mueller<br>Action Filed:  April 23, 1990 |

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

Please take notice that on August 27, 2021, at 10:00 a.m., or as soon as the matter may be heard, before the Honorable Kimberly J. Mueller, at the United States District Court at 501 I Street, Sacramento, CA 95814 (or via videoconference), Plaintiff-Intervenor Christopher Lipsey will move this Court to compel Defendant Kathleen Allison ("Secretary") to produce documents responsive to Lipsey's Requests for Production Nos. 35-36, 41-43, 47-51, and 56. The Secretary's relevance objection to requests directed at her potential defense based on the penological interest in using Guard One is meritless given her refusal to stipulate not to raise that defense.

Counsel for Lipsey and counsel for the Secretary met and conferred on June 29, 2021 and exchanged written correspondence but were unable to resolve their dispute regarding the issues presented. The Special Master attended the parties' conference but has not taken a position. The Court granted the parties' joint request to file motions on these issues on July 20, 2021 and directed the parties to proceed under Local Rule 230. ECF No. 7244 at 4. To avoid duplicative briefing, the parties agreed to present the issue through Lipsey's motion rather than filing cross-motions.

# **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

BACKGROUND ...................................................................................................................2

      A.    The Secretary's Refusal to Stipulate That the Topics at Issue Are
Irrelevant ....................................................................................................2

      B.    Lipsey's Requests and the Secretary's Objections .............................................3

      C.    The Parties' Efforts to Resolve This Dispute ....................................................4

ARGUMENT ........................................................................................................................4

    I.    Discovery Into the Penological Interest in Using Guard One Is Relevant
Because the Secretary Chose to Preserve a Penological Interest Defense....................6

    II.    Each of Lipsey's Requests Seeks Information Relevant to the Potential
Penological Interest Defense...................................................................9

CONCLUSION....................................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Blankenship v. Hearst Corp.*,
    519 F.2d 418 (9th Cir. 1975) ...................................................................5

*Bryant v. Ochoa*,
    2009 WL 1390794 (S.D. Cal. May 14, 2009)...........................................5

*Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court for the Dist. of Mont.*,
    408 F.3d 1142 (9th Cir. 2005) ...................................................................5

*Cardenas v. Dorel Juvenile Grp.*,
    232 F.R.D. 377 (D. Kan. 2005) .................................................................5

*City of Lincoln v. United States*,
    2018 WL 3917711 (E.D. Cal. Aug. 16, 2018)...........................................6

*Crawford v. City of Bakersfield*,
    944 F.3d 1070 (9th Cir. 2019) ...................................................................7

*Daubert v. Merrell Dow Pharm., Inc.*,
    509 U.S. 579 (1993).....................................................................................7

*Garneau v. City of Seattle*,
    147 F.3d 802 (9th Cir. 1998) .....................................................................6

*Grenning v. Miller–Stout*,
    739 F.3d 1235 (9th Cir. 2014) ...........................................................3, 6, 8, 9

*Hankey v. Home Depot USA, Inc.*,
    2020 WL 3060399 (E.D. Cal. June 9, 2020) .............................................7

*Hickman v. Taylor*,
    329 U.S. 495 (1947).....................................................................................7

*Lamon v. Director, Cal. Dep't of Corr.*,
    2009 WL 1911699 (E.D. Cal. July 1, 2009) .............................................5

*Mollica v. County of Sacramento*,
    2021 WL 2417118 (E.D. Cal. June 14, 2021) ...........................................5

*Pit River Tribe v. Bureau of Land Mgmt.*,
    2021 WL 2337598 (E.D. Cal. June 8, 2021) .............................................5

*Rogers v. Giurbino*,
    288 F.R.D. 469 (S.D. Cal. 2012) ...............................................................8

*Turner v. Safley*,
    482 U.S. 78 (1987) ...................................................................................................8

*Witkin v. Wise*,
    2021 WL 2662182 (E.D. Cal. June 29, 2021) ....................................................4, 5

**Rules**

E.D. Cal. L.R. 230 ............................................................................................................4

E.D. Cal. L.R. 251 ............................................................................................................4

Fed. R. Civ. P. 26 ..........................................................................................................3, 7

Fed. R. Civ. P. 26(b) ........................................................................................................8

Fed. R. Civ. P. 26(b)(1) .............................................................................................. *passim*

Fed. R. Civ. P. 37(a)(3)(B) ............................................................................................2, 4

Fed. R. Evid. 401 .............................................................................................................7

**Other Authorities**

Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment ...............................5, 8

Fed. R. Civ. P. 26(b) advisory committee's note to 1937 adoption .................................8

Fed. R. Civ. P. 26(b) advisory committee's note to 1946 amendment ............................7

Fed. R. Civ. P. 26(b)(1) advisory committee's note to 1970 amendment .......................8

8 Wright & Miller, *Federal Practice and Procedure* § 2011
    (3d ed. April 2021 update) ...........................................................................................8

## **INTRODUCTION**

This discovery dispute presents a simple question: Can a defendant refuse to provide discovery about a potential defense on the ground that it is irrelevant while also keeping that very defense relevant by reserving the right to raise it?  Civil Rule 26(b)(1)'s plain text and common sense say no.

After this Court clarified that Plaintiff-Intervenor Christopher Lipsey is permitted to conduct discovery regarding his claim that the Guard One "welfare" checks cause sleep deprivation in violation of the Eighth Amendment, he served requests for production seeking documents relevant to that claim, including potential defenses.  One fact-intensive defense that Lipsey anticipates Defendant Kathleen Allison, the Secretary of the California Department of Corrections and Rehabilitation (CDCR), will raise is the argument that any sleep deprivation Guard One causes is justified by a legitimate penological interest and thus tolerated by the Eighth Amendment.  For example, the Secretary may argue that the sleep deprivation caused by Guard One is permissible because the use of Guard One is necessary to prevent inmate suicides, a penological interest.  The Ninth Circuit has not resolved whether such an argument is viable and, if so, how exactly it would work.

Lipsey would be happy to litigate only whether Guard One causes sleep deprivation and not the extent of any penological interests in using it.  As far as he is concerned, there is no penological interest that could serve as an excuse for depriving him of a basic human need.  Thus, the Secretary would not need to engage in this disputed discovery if she simply agreed to take a possible "penological interests" defense off the table.  But the Secretary refuses to do so.

Instead, the Secretary is trying to have her cake and eat it, too.  She has repeatedly objected to any discovery regarding the potential penological interest in using Guard One to prevent suicide, contending that it is irrelevant.  But at the same time, the Secretary has expressly left open the possibility of making a penological interest argument.  If penological interests are relevant for the

Secretary, then they are relevant for Lipsey.  Lipsey therefore respectfully requests an order under Rule 37(a)(3)(B) compelling the Secretary to produce the requested documents.

## BACKGROUND

Lipsey alleges in his complaint in intervention that Guard One causes sleep deprivation in violation of the Eighth Amendment to the United States Constitution.  ECF No. 6941.  The Court granted Lipsey leave to conduct discovery regarding that claim on June 3, 2021 and set a fact discovery cutoff of October 29, 2021.  ECF No. 7191.  As the Court explained, Lipsey's claim "presents a question of law and fact directly relevant to the implementation of the remedial plan in this case," and so discovery "should and will be permitted" to the extent needed "to ensure [the factual question's] fair presentation and resolution."  *Id.* at 2 (quoting ECF No. 6487 at 3).  The parties and the Court agreed that "such discovery will be limited to the Eighth Amendment claim presented in Lipsey's Complaint in Intervention."  *Id.* (citing ECF No. 6941).

### A.    The Secretary's Refusal to Stipulate That the Topics at Issue Are Irrelevant

On June 3, Lipsey served his third set of requests for production, replacing the second set withdrawn in April.  Ex. A.[1]  At issue here are several requests related to the potential penological interest in using Guard One to prevent inmate suicides.  *Id.* at 8-11 (Request Nos. 35-36, 41-43, 47-51, 56).  In light of the concerns the Secretary had previously raised about those requests' relevance, Lipsey offered at the outset to withdraw or narrow them if the Secretary agreed not to "argue that the penological interest in conducting welfare checks using Guard One affects the Eighth Amendment analysis."  Ex. B at 2.  Lipsey explained that the requests "related to the efficacy of Guard One and the availability of reasonable alternatives" were relevant because he believed that the Secretary might intend to "argue that the penological need to use Guard One (for example, because it is the most

---

[1] All exhibits are attached to the declaration of Kate Falkenstien filed alongside this motion.

effective or most practical way of conducting welfare checks, or because it is necessary or effective in preventing suicides)" undercuts Lipsey's claim. *Id.*; *accord* Ex. D at 2; *see Grenning v. Miller–Stout*, 739 F.3d 1235, 1240 (9th Cir. 2014) ("The precise role of legitimate penological interests is not entirely clear in the context of an Eighth Amendment challenge to conditions of confinement."). At the Secretary's request, Lipsey identified the requests that would be unnecessary if the Secretary entered the suggested stipulation. Ex. B at 1-2.

The Secretary thus had a choice: (a) avoid the need to answer the requests by agreeing that the topics they sought to investigate are irrelevant or (b) preserve a possible defense based on an alleged penological interest in using Guard One to prevent suicide, thus confirming the requests' relevance and obligating the Secretary to respond. Instead, the Secretary tried to forge a third path by declining to stipulate—and thus preserving her penological interest arguments—while also insisting that Lipsey's requests related to those potential arguments were irrelevant. Ex. C at 2; Ex. E at 1.

## B.    Lipsey's Requests and the Secretary's Objections

At issue here are Lipsey's Requests for Production Nos. 35-36, 41-43, 47-51, and 56, which are reproduced in full in the Argument section below. *See infra* pp. 9-14; Ex. A at 8-11. The requests seek documents about the CDCR's decision to adopt Guard One, the problem the CDCR was trying to solve (lack of compliance with welfare checks intended to prevent suicide), and whether Guard One is in fact effective in solving that problem (by improving compliance with welfare checks and, in turn, preventing suicide).

The Secretary objected to each request "on the grounds that it is overly broad and calls for the production of documents that exceed discovery permitted under Rule 26, Fed. R. Civ. Pro., because it seeks documents that are not relevant to Lipsey's claim." *E.g.*, Ex. F at 4 (Request Nos. 35-36); *id.* at

7-8, 10-14 (similar, for Request Nos. 41-43, 47-51, 56).[2]  The Secretary also objected to three of the requests (Nos. 42, 43, and 56) as duplicative of other requests covered by the relevance objection at issue here.  *Id.* at 8, 14.

### C.    The Parties' Efforts to Resolve This Dispute

After exchanging letters and emails about Lipsey's requests, the parties conferred by phone on June 29, 2021.  Falkenstien Decl. ¶ 8.  Although the parties were able to reach an agreement on some issues, they could not resolve the relevance issue.  On July 6, the Secretary served written responses to Lipsey's requests and produced documents in response to some of the requests.  Ex. F.  Based on those responses and the June 29 discussion, the parties agreed that they were at an impasse on the relevance issue.  Ex. G at 1.  Accordingly, the parties jointly sought leave to file cross-motions to compel and for a protective order under Local Rule 251.  ECF No. 7244 at 1-3.  The Court granted leave but directed the parties to proceed on its "regular law and motion calendar in accordance with Local Rule 230."  *Id.* at 4.

### ARGUMENT

Because Lipsey's discovery requests are well within the bounds set by Federal Rule of Civil Procedure 26(b)(1) and this Court's order granting leave to conduct discovery on his claim in intervention, ECF No. 7191, he is entitled to an order compelling production under Rule 37(a)(3)(B).

Courts in this district routinely recognize that "[t]he party seeking to compel discovery has the burden of establishing that its request satisfies the relevancy requirements of Rule 26(b)(1)," after which "the party opposing discovery has the burden of showing that the discovery should be prohibited, and the burden of clarifying, explaining or supporting its objections."  *E.g.*, *Witkin v. Wise*,

---

[2]  The Secretary also noted privilege objections to many of the requests.  Ex. F at 4-5, 7-8 (Nos. 35-36, 41-43).  Those objections are not at issue here.  If the Court overrules the Secretary's relevance objections and she then withholds some responsive documents based on privilege, the parties can confer and address any resulting dispute after the Secretary provides a privilege log (which she has not yet done).

2021 WL 2662182, at *2 (E.D. Cal. June 29, 2021) (quoting *Bryant v. Ochoa*, 2009 WL 1390794, at

*1 (S.D. Cal. May 14, 2009)); *see also Lamon v. Director, Cal. Dep't of Corr.*, 2009 WL 1911699, at

*1 (E.D. Cal. July 1, 2009) (Mueller, J.) ("When the discovery sought appears relevant on its face, the

party resisting the discovery has the burden to establish that the requested discovery does not come

within the scope of relevance or is of such marginal relevance that the potential harm occasioned by

discovery would outweigh the ordinary presumption in favor of broad disclosure." (alteration

incorporated) (quoting *Cardenas v. Dorel Juvenile Grp.*, 232 F.R.D. 377, 382 (D. Kan. 2005))).  The

resisting party's burden to show "why discovery should be denied" is "heavy."  *Pit River Tribe v.*

*Bureau of Land Mgmt.*, 2021 WL 2337598, at *2 (E.D. Cal. June 8, 2021) (quoting *Blankenship v.*

*Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975)).

      Here, the Secretary has not raised any objections based on proportionality or undue burden.

Aside from any privilege concerns about particular documents, *see supra* note 2, the Secretary's sole

objection to providing discovery on the penological interest issue is based on relevance.[3]  Thus, the

only question before the Court is whether Lipsey can meet his initial burden to show that his requests

satisfy Rule 26(b)(1)'s relevancy requirements.  Once Lipsey meets that bar, the Secretary has

preserved no other basis to block the discovery.  *See, e.g.*, *Mollica v. County of Sacramento*, 2021 WL

2417118, at *1 (E.D. Cal. June 14, 2021) ("Objections not raised in a written response to discovery

may not be raised for the first time in a discovery motion." (cleaned up)).[4]

---

[3] To the extent the Secretary's repetition of the words "overly broad" in each relevance objection was meant to raise a proportionality concern, that drive-by boilerplate approach was not sufficient to preserve the objection.  *See* Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment (explaining that the amendment highlighting the proportionality requirement was not "intended to permit the opposing party to refuse discovery simply by making a boilerplate objection that it is not proportional"); *Witkin*, 2021 WL 2662182, at *2 ("[B]oilerplate objections do not suffice." (attribution omitted) (citing *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court for the Dist. of Mont.*, 408 F.3d 1142, 1149 (9th Cir. 2005))).

[4] The Secretary's characterization of some of the requests as "duplicative" of each other, Ex. F at 8, 14 (Nos. 42, 43, 56), is not a basis for withholding the requested documents.  That a document

1

2

I.   **Discovery Into the Penological Interest in Using Guard One Is Relevant Because the Secretary Chose to Preserve a Penological Interest Defense.**

Lipsey understands that the penological interest Guard One allegedly serves is ensuring compliance with welfare checks that in turn prevent suicide.  Although the Ninth Circuit has not yet decided whether "showing a legitimate penological interest" can ever "defeat an Eighth Amendment conditions of confinement claim," it has held that a penological interest *cannot* save a policy that does not in fact serve the asserted interest.  *See Grenning*, 739 F.3d at 1240-41.  The Secretary's penological interest defense would thus necessarily fail if Guard One does not work or if there are reasonable alternatives that would accomplish Guard One's objectives without causing sleep deprivation.  Discovery into the efficacy of Guard One in ensuring compliance with welfare checks and thereby preventing inmate suicides as well as into the existence of reasonable alternatives is therefore relevant.

Lipsey's requests for discovery regarding this "penological interests" defense—which the Secretary has refused to take off the table—fall well within the scope defined by Rule 26(b)(1).  "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense," subject to the usual proportionality considerations—none of which the Secretary has raised here.  Fed. R. Civ. P. 26(b)(1).  Here, that means that Lipsey may obtain discovery relevant to his Eighth Amendment claim and the Secretary's potential defenses to it.  ECF No. 7191 at 2 (granting leave to conduct discovery "limited to the Eighth Amendment claim presented in Lipsey's Complaint in Intervention").

Relevance is a low bar.  *See, e.g.*, *Garneau v. City of Seattle*, 147 F.3d 802, 812 (9th Cir. 1998) ("Relevance for purposes of discovery is defined very broadly.").  For discovery purposes, relevance

---

might be responsive to multiple requests is not a reason to withhold it entirely.  *See City of Lincoln v. United States*, 2018 WL 3917711, at *8 (E.D. Cal. Aug. 16, 2018) (Mueller, J.) (finding that depositions were not "unreasonably duplicative" where the resisting parties "ha[d] not provided the answers to the [requesting party's] questions" through other forms of discovery or where the depositions would involve "some minor overlapping testimony").

is informed by, and still broader than, the already liberal relevance standard for trial. *See, e.g.*, *Hankey v. Home Depot USA, Inc.*, 2020 WL 3060399, at *2 (E.D. Cal. June 9, 2020) ("The relevance standard is applied more liberally in discovery than it is at trial." (cleaned up)); *see also* Fed. R. Evid. 401 ("Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."); *Crawford v. City of Bakersfield*, 944 F.3d 1070, 1077 (9th Cir. 2019) ("Rule 401's 'basic standard of relevance is a liberal one.'" (alteration incorporated) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 587 (1993))). Relevant information "need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

Lipsey's requests easily surpass this minimal requirement for relevance. The requested discovery goes to the core of the Secretary's expected response to Lipsey's claim. Lipsey anticipates that the Secretary will respond on at least two fronts: First, by denying that Guard One causes sleep deprivation. *Compare* ECF No. 6941 at ¶¶ 13-14, 17, 21-32 (Lipsey's complaint in intervention alleging that Guard One is loud and causes sleep deprivation), *with* ECF No. 7005 at ¶ 6(e)-(f), (i), (m)-(q) (Secretary's answer denying these allegations). And second, by arguing that any sleep deprivation Guard One does cause is constitutionally acceptable given the purported penological interest in using Guard One. *See* Ex. E at 1 (declining to stipulate not to make this argument).

Rule 26(b)(1)'s plain text allows Lipsey to investigate both of those responses. So does the purpose of Rule 26. The discovery process is a recognition that "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947); *see* Fed. R. Civ. P. 26(b) advisory committee's note to 1946 amendment ("The purpose of discovery is to allow a broad search for facts, the names of witnesses, or any other matters which may aid a party in the preparation or presentation of [its] case."). Discovery can only level the playing field as intended if parties are able to investigate not only their affirmative claims but also the defenses their

1    opponents might raise.

2          Nothing in Rule 26(b)(1) or elsewhere limits discovery to arguments an opponent has already

3    raised or to formal affirmative defenses.  *See Rogers v. Giurbino*, 288 F.R.D. 469, 478-79 (S.D. Cal.

4    2012) ("Relevance is construed broadly to include any matter that bears on, or reasonably could lead

5    to other matter that could bear on, any issue that may be in the case.").  Instead, so long as they adhere

6    to the proportionality requirement, parties are free to examine potential responses to their arguments.

7    *See, e.g.*, Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment (noting that "information

8    that could be used to impeach a likely witness" "would be relevant to the parties' claims or defenses"

9    so long as the request was "suitably focused"); *see also* Fed. R. Civ. P. 26(b)(1) advisory committee's

10   note to 1970 amendment ("Since decisions as to relevance to the subject matter of the action are made

11   for discovery purposes well in advance of trial, a flexible treatment of relevance is required . . . .").

12   When it was adopted in 1937, Rule 26(b)'s reference to "defense" merely clarified that the rule

13   departed from "the old chancery practice limit[ing] discovery to facts supporting the case of the party

14   seeking it."  Fed. R. Civ. P. 26(b) advisory committee's note to 1937 adoption; *see* 8 Wright & Miller,

15   *Federal Practice and Procedure* § 2011 (3d ed. April 2021 update) (explaining this change).

16         Under these principles, discovery into the extent of any penological interest in using Guard

17   One is relevant.  Ninth Circuit law leaves room for the parties to dispute the role (if any) that

18   penological interests play in the Eighth Amendment analysis.  As the *Grenning* court explained, "[t]he

19   precise role of legitimate penological interests" in analyzing Eighth Amendment conditions of

20   confinement claims "is not entirely clear" because the Supreme Court has sent conflicting signals.  *See*

21   739 F.3d at 1240.  On the one hand, the Supreme Court has held that the "reasonable relationship to a

22   legitimate penological interest" test from *Turner v. Safley*, 482 U.S. 78 (1987), "does not apply to

23   Eighth Amendment claims."  *Grenning*, 739 F.3d at 1240.  On the other hand, the Court has considered

24   penological justifications in determining "whether adverse treatment is sufficiently gratuitous to

constitute punishment for Eighth Amendment purposes," and the Ninth Circuit has sometimes "referred to possible legitimate penological interests when considering" conditions of confinement claims. *Id.* The legal merits of the Secretary's penological interest defense can be addressed at summary judgment. But for now, the Secretary's decision to preserve that defense means that the parties must develop the relevant facts through discovery. What is more, there will be no need to reach this open legal question if the facts show that there is no penological interest in the first place or that any penological interest is not strong enough to make a difference. *See id.* at 1240-41 (declining to decide the issue because the defendants "failed to make such a showing in this case"). Rule 26(b)(1) does not limit Lipsey to gambling on unresolved legal issues for lack of access to the facts.

Ultimately, the Secretary's position confirms the relevance of Lipsey's requested discovery. If the Secretary really thought that penological interests were irrelevant, she would have had no problem with Lipsey's proposed stipulation taking that argument off the table. The Secretary's decision to preserve her potential argument necessarily preserves the relevance of its factual premises. Penological interests are either relevant to Lipsey's claim or not. They cannot be relevant for the Secretary but not for Lipsey.

## II.    Each of Lipsey's Requests Seeks Information Relevant to the Potential Penological Interest Defense.

The disputed requests all fall within Rule 26(b)(1)'s scope because each request is targeted at the Secretary's potential argument based on the penological interest in using Guard One.

**Request No. 35**: "All documents relating to any investigation, analysis, evaluation, or study of any impact on inmate suicides or attempted suicides caused or alleged to be caused by the Guard One system or welfare check program." Ex. F at 4.

This request seeks documents addressing whether Guard One in fact advances the interest in preventing suicide. As Lipsey has twice clarified, Ex. G at 1-2, the request does not "allege[] that the Guard One system . . . causes suicide," Ex. F at 4 (Secretary's objection). Rather, it seeks documents

about Guard One's *impact* on inmate suicides—for example, whether the use of Guard One *has reduced* inmate suicides or not.  Because Guard One ostensibly prevents suicide by ensuring compliance with welfare checks, Lipsey is entitled to see any studies or investigations that the CDCR has undertaken about whether Guard One in fact accomplishes that objective.  The requested documents are relevant.

And contrary to the Secretary's suggestion, Ex. F at 4, the Special Master's involvement in monitoring the efficacy of welfare checks does not exempt the Secretary from discovery on this topic.  That is a reprise of the argument the Secretary made and lost in opposing discovery altogether.  *See* ECF No. 7165 at 4; *see also* ECF No. 6407 at 2 (opposing Lipsey's intervention as "unnecessary" given the Special Master's monitoring).  Even though the Special Master has already recommended the use of Guard One, the Court has permitted Lipsey to intervene and take discovery to investigate whether its use violates his Eighth Amendment rights.

**Request No. 36**: "All documents relating to the CDCR's adoption of the Guard One system, including but not limited to communications with class counsel, communications with the supplier or manufacturer of the Guard One system, internal analyses of the costs and benefits of the Guard One system, or other internal communications regarding adoption of the Guard One system."  Ex. F at 5.

This request is relevant to both Guard One's efficacy and the availability of reasonable alternatives.  The CDCR likely considered the available options and weighed their advantages and disadvantages, including whether they would work, before deciding to purchase Guard One for its entire prison system.  It is reasonable to think that the CDCR's documents related to the adoption of Guard One would shed light on that decisionmaking process.  For example, those documents may address other reasonable alternatives or the lack thereof, or any benefits of Guard One over other possible means of recording welfare checks.

Lipsey understands the Secretary to have agreed to produce responsive documents except for "internal analyses of the costs and benefits of the Guard One system," Ex. F at 5.  *See* ECF No. 7244 at 2 (identifying the categories of documents at issue).  The Secretary's argument that "the cost-benefit analysis Lipsey seeks is . . . not the test applied to determine whether the regulation at issue satisfies a legitimate penological goal," ECF No. 7244 at 2-3, is not a reason to withhold discovery.  Documents need not apply the controlling legal standard to be relevant.  The CDCR's documents analyzing Guard One's costs and benefits are relevant to its alleged penological interest because they would shed light on how Guard One compares to its alternatives and on how the CDCR's expectations played out in practice.  Suppose the CDCR picked Guard One over a quieter alternative.  The Secretary's penological interest argument would be stronger if that alternative were far more expensive or would not have worked nearly as well, and the argument would be weaker the closer that alternative came to achieving comparable results at a similar cost without causing sleep deprivation.  The penological interest could likewise be undercut if the CDCR lacks sufficient or meritorious reasons for picking Guard One or if the expected benefits over any alternatives never materialized.

Moreover, a cost-benefit analysis of Guard One might also be relevant to Lipsey's affirmative claim that Guard One causes sleep deprivation.  Perhaps the CDCR weighed the noise from Guard One as one of its costs but decided that it was worth the benefit.  As an extreme example, imagine a document in which the CDCR acknowledges noise as a cost of Guard One and decides that it is an acceptable cost because it can be expected to fall below a threshold beyond which the CDCR expected it to interfere with sleep.  If Guard One turned out to be noisier than CDCR's own threshold, such a document would be not just relevant but a smoking gun.  Reality will likely be more complex, but this example nonetheless illustrates one of the many ways in which the requested documents could be important.  Without seeing the documents, Lipsey cannot know what he will find; he can only explain why the topics he is asking about are worth investigating.

**Request No. 41**: "Documents sufficient to show the cost of CDCR's purchases of equipment used to carry out the Guard One system." Ex. F at 7.

This request is relevant to the availability of reasonable alternatives. The penological interest in using Guard One cannot justify sleep deprivation if there are other ways to achieve similar benefits without causing that harm. Lipsey anticipates that the Secretary would resist alternatives that are significantly more expensive than Guard One. Lipsey cannot effectively respond to arguments based on the price of alternatives without knowing the price of Guard One. Again, Lipsey has offered to withdraw this request if the Secretary stipulates not to make arguments about Guard One's cost or its cost in comparison to possible alternative monitoring systems, but the Secretary has refused to do so.

**Request No. 42**: "All documents concerning CDCR officers' compliance or lack of compliance with the welfare check program before the introduction of the Guard One system, including but not limited to any evidence of falsified records of welfare checks." Ex. F at 8.

This request is relevant to the penological interest in using Guard One because, as Lipsey understands it, Guard One is meant to solve a problem involving CDCR officers' failure to perform welfare checks as instructed. Whether and to what extent that problem existed is relevant to whether Guard One's benefits (*i.e.*, improving officer compliance) can justify the sleep deprivation it causes. If officer noncompliance was widespread, that might support an argument by the Secretary that some monitoring system was necessary to ensure that welfare checks were adequately conducted. But on the converse, if officer noncompliance was rare, there would be a less compelling need to adopt Guard One—with its attendant harms to inmate sleep—to ensure higher rates of compliance.

**Request No. 43**: "All documents concerning compliance with the Guard One Order, including but not limited to communications with class counsel and internal communications regarding the requirements of the Guard One Order." Ex. F at 8.

Similar to Request No. 42, this request is relevant to the penological interest in using Guard

One because it addresses whether Guard One is solving the problem it was introduced to solve. Because Guard One ostensibly improves compliance with welfare checks, whether it in fact does so bears on the strength of the alleged penological interest in using it.  For example, if officers are making all the noise involved in Guard One without looking inside the cells, Guard One is not achieving its objective of ensuring compliance with the underlying welfare check policy.

**Request No. 47**: "All documents concerning training of CDCR officers or employees relating to suicide, including but not limited to policy manuals, internal memoranda, training presentations, or audio or video training programs."  Ex. F at 10.

Because the asserted penological interest in using Guard One is ultimately to prevent suicide, understanding how the CDCR trains its officers regarding suicide is relevant to understanding what, if anything, Guard One adds to the CDCR's efforts at suicide prevention.

**Request Nos. 48-51**: The next four requests are relevant to determining the suicide rate before and after the introduction of Guard One, which is evidence of whether Guard One is in fact advancing the penological interest in suicide prevention:

- *No. 48*: "Documents sufficient to identify suicides or attempted suicides among mentally ill prisoners while subject to the Guard One system (in units including but not limited to Security Housing Units, Administrative Segregation Units, Condemned Housing Units, and Psychiatric Services Units)."

- *No. 49*: "Documents sufficient to identify suicides or attempted suicides among non-mentally ill prisoners while subject to the Guard One system (in units including but not limited to Security Housing Units, Administrative Segregation Units, Condemned Housing Units, and Psychiatric Services Units)."

- *No. 50*: "Documents sufficient to identify suicides or attempted suicides among mentally ill prisoners while subject to the welfare check program before the introduction of the Guard One system (in units including but not limited to Security Housing Units, Administrative Segregation Units, Condemned Housing Units, and Psychiatric Services Units)."

- *No. 51*: "Documents sufficient to identify suicides or attempted suicides among non-mentally ill prisoners while subject to the welfare check program before the introduction of the Guard One system (in units including but not limited to Security

1    Housing Units, Administrative Segregation Units, Condemned Housing Units, and
2    Psychiatric Services Units)."

3    Ex. F at 10-11.

4    The number of suicides in units that use Guard One is central evidence of whether Guard One

5    is effective in reducing suicides by increasing officer compliance with welfare checks. If the use of

6    the system did not in fact decrease the number of suicides, that would be significant evidence to rebut

7    the Secretary's supposed penological interest in using Guard One to prevent suicides. But Lipsey

8    cannot determine the change in suicide rate without knowing the number of attempted and actual

9    suicides in the same units before and after introducing Guard One.

10   **Request No. 56**: "Documents sufficient to identify any persons who conducted any training

11   related to the Guard One system, the welfare check program, inmate sleep, suicide, or excessive noise."

12   Ex. F at 13.

13   This request is relevant to identify potential witnesses regarding any relevant training and the

14   topics it covered. Although the Secretary's response to this request states that "Defendants do not

15   have any documents responsive to this request in their possession, custody, or control," Ex. F at 14, it

16   is unclear how the Secretary could have reached that conclusion as to training regarding suicide given

17   that her response to Request No. 47 suggests that she did not search for training on that topic.

18   Moreover, the Secretary identified Request No. 56 as one to which her relevance objection applies and

19   for which she is seeking a protective order. ECF No. 7244 at 2. To the extent the Secretary has not

20   searched for or is withholding documents identifying persons who conducted training responsive to

21   Request No. 47, the Court should compel production.

22   *    *    *

23   In sum, each of the requests at issue is relevant. Because the Secretary is relying only on her

24   relevance objection and has not raised any proportionality concerns, the Court should therefore compel

her to respond to the requests.  Lipsey anticipates that with the relevance issue resolved, the parties will be able to negotiate appropriate search terms and custodians.

<u>**CONCLUSION**</u>

Discovery regarding the Secretary's potential defense to Lipsey's Eighth Amendment claim is well within the scope of discovery defined in Rule 26(b)(1) and the Court's order authorizing discovery, ECF No. 7191.  Lipsey respectfully requests that the Court grant his motion and compel the Secretary to produce documents responsive to Requests for Production Nos. 35-36, 41-43, 47-51, and 56.


Dated: July 30, 2021                          Respectfully submitted,

                                              */s/ Brian C. Baran*

                                              REICHMAN JORGENSEN LEHMAN & FELDBERG LLP
                                              Shawna L. Ballard (SBN 155188)
                                              Kate Falkenstien (SBN 313753)
                                              100 Marine Parkway, Suite 300
                                              Redwood Shores, California 94065
                                              Telephone: (650) 623-1401
                                              Fax: (650) 623-1449
                                              sballard@reichmanjorgensen.com
                                              kfalkenstien@reichmanjorgensen.com

                                              REICHMAN JORGENSEN LEHMAN & FELDBERG LLP
                                              Brian C. Baran (SBN 325939)
                                              1710 Rhode Island Ave NW, 12th Floor
                                              Washington, DC 20036
                                              Telephone: (202) 894-7310
                                              Fax: (650) 623-1449
                                              bbaran@reichmanjorgensen.com

                                              *Attorneys for Plaintiff-Intervenor Christopher Lipsey*

1

## **CERTIFICATION**

Lipsey's counsel certify that they have reviewed the following orders relevant to this motion:

ECF Nos. 7191 and 7244.


Dated: July 30, 2021                              Respectfully submitted,

                                                  */s/ Brian C. Baran*

                                                  REICHMAN JORGENSEN LEHMAN & FELDBERG LLP
                                                  Shawna L. Ballard (SBN 155188)
                                                  Kate Falkenstien (SBN 313753)
                                                  100 Marine Parkway, Suite 300
                                                  Redwood Shores, California 94065
                                                  Telephone: (650) 623-1401
                                                  Fax: (650) 623-1449
                                                  sballard@reichmanjorgensen.com
                                                  kfalkenstien@reichmanjorgensen.com

                                                  REICHMAN JORGENSEN LEHMAN & FELDBERG LLP
                                                  Brian C. Baran (SBN 325939)
                                                  1710 Rhode Island Ave NW, 12th Floor
                                                  Washington, DC 20036
                                                  Telephone: (202) 894-7310
                                                  Fax: (650) 623-1449
                                                  bbaran@reichmanjorgensen.com

                                                  *Attorneys for Plaintiff-Intervenor Christopher Lipsey*