# Exhibit A

REICHMAN JORGENSEN LEHMAN & FELDBERG LLP
Shawna Ballard, State Bar No. 155188
Kate Falkenstien, State Bar No. 313753
Brian Baran, State Bar No. 325939
100 Marine Parkway, Suite 350
Redwood Shores, CA 94065
Telephone: (650) 623-1401
Fax: (650) 623-1449
Email: sballard@reichmanjorgensen.com
       kfalkenstien@reichmanjorgensen.com
       bbaran@reichmanjorgensen.com

*Attorneys for Plaintiff-Intervenor Christopher Lipsey*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **RALPH COLEMAN, et al.,**<br><br>                              Plaintiffs,<br><br>v.<br><br>**GAVIN NEWSOM, et al.,**<br><br>                              Defendants. | Case No. S-90-0520-KJM-DB P<br><br>**PLAINTIFF-INTERVENOR'S THIRD SET OF REQUESTS FOR PRODUCTION TO DEFENDANT**<br><br>Judge:         Hon. Kimberly Mueller |

Plaintiff-intervenor Christopher Lipsey, by and through his undersigned counsel, and pursuant to Federal Rule of Civil Procedure 34(a), hereby requests that Defendant respond to the following Third[1] Set of Requests for Production of Documents and produce responsive documents within her possession, custody, or control for inspection and copying at the offices of Reichman Jorgensen Lehman & Feldberg LLP, 100 Marine Parkway, Suite 300, Redwood Shores, CA 94065, within 30 days from the service hereof. Defendant shall supplement these responses in accordance with Federal Rule of Civil Procedure 26(e)(1).

---

[1] For clarity, Lipsey notes that his second set of requests for production, served in April 2021, were withdrawn.

Pl.-Intervenor's Third Set of Requests for Production (S-90-0520-KJM-DB-P)                             1

# DEFINITIONS

The following Requests for Production of Documents (collectively, the "Requests") are to be answered with reference to the definitions set forth below, each of which shall be deemed to be a material part of each Request.

1. "Defendant" and "you" or "your" refer to intervenor-defendant Kathleen Allison, as well as any agents, representatives, attorneys, consultants, or any other persons acting or purporting to act on her behalf.

2. "CDCR" means the California Department of Corrections and Rehabilitation.

3. "Class counsel" means the lawyers representing the plaintiff class in the above-captioned case, including Michael Bien, Jeffrey Bornstein, Claudia Center, Lisa Ells, Ernest Galvan, Alexander Gourse, Margot Mendelson, Thomas Nolan, Sara Norman, Michael Nunez, Marc Shinn-Krantz, Donald Specter, Cara Trapani, Jessica Winter, Amy Xu, and Jenny Yelin.

4. "Communication" means any contact, whether in person, in writing, oral, formal, informal, by telephone, or any method whereby knowledge, facts, or information is imparted or transmitted from one person or entity to another or to a file.

5. "Complaint" means a document submitted by an inmate to a CDCR official regarding an inmate's concerns, including but not limited to grievances submitted on CDCR forms (such as form 602 and form 22), and any related responses by CDCR officials.

6. "Document" or "documents" mean all items identified in Federal Rule of Civil Procedure 34(a)(1), however and by whomever prepared, produced, reproduced, disseminated, or made, in any form, in the possession, custody, or control of any of Defendant, her agents, representatives, and attorneys. The terms "document" and "documents" include, but are not limited to, all written, typed, printed, recorded, photographic, or graphic matter of every type and description; and all letters, correspondence, telegrams, emails (whether maintained on a CDCR email system or on an external system, such as Defendant's personal email account(s)), memoranda, records, minutes of all types of meetings, contracts, subcontracts, agreements, guarantees, intra- and interoffice communications, audited or unaudited financial statements, audit reports, projections, account summaries, daily collateral reports, analyses, results of investigations,

reviews, bulletins, proposals, estimates, appraisals, recommendations, critiques, trip reports, financial calculations, notices, diaries, books, desk calendars, appointment books, messages, instructions, work assignments, notes, notebooks, drafts, data sheets, statistical records, graphs and tables, photographs and other images, telephone records, tapes, audio recordings, video recordings, voicemail, partial or complete reports of telephone conversations, text messages, real-time electronic correspondence, public and governmental filings, opinions, and any other writings or recordings. Lipsey specifically requests discovery of documents, data, or information that exists in electronic or magnetic form on any systems or media, including active systems, archive systems and media, legacy systems and media, backup systems and media, externally hosted systems, cloud-based systems, portable computing devices (such as laptop computers and smartphones), and portable storage devices (such as disks and portable hard drives). The term "documents" includes communications.

      7.     The "Guard One Order" means the order requiring the use of the Guard One system issued on February 3, 2015 and published as Dkt. 5271 in the above-captioned case.

      8.     The "Guard One system" means the system manufactured by TimeKeeping Systems that allows a user to connect an electronic baton to a metal, electronic button, creating a downloadable electronic record of the contact between the baton and button.

      9.     "Guard One baton" means an electronic baton used as part of the Guard One system.

      10.    "Guard One button" means an electronic button used as part of the Guard One system.

      11.    "Person" means an individual, corporation, nonprofit corporation, sole proprietorship, partnership, limited partnership, professional association, joint venture, agency, agent, trust, and/or any other legal entity.

      12.    "Relating to," "regarding," or "concerning"—or any form of any of those terms—means, in addition to its customary and usual meaning, constituting, reflecting, evidencing, involving, relating to, concerning, recording, embodying, representing, containing, mentioning, analyzing, studying, discussing, evaluating, supporting, contradicting, stating, describing, noting, arising from, or being relevant to. As indicated, these terms necessarily include information that is

in opposition to, as well as in support of, Defendant's positions and claims in the above-captioned case.

13. "Welfare checks" mean the rounds conducted by correctional officers during which officers walk around units to verify the health and safety of inmates.

14. "Welfare check program" means the requirement that CDCR employees conduct welfare checks at regular intervals (such as every 30 or 60 minutes) or at a minimum frequency (such as once or twice per hour).

## GENERAL PROVISIONS AND INSTRUCTIONS

1. All information and documents are to be divulged that are in your possession, custody, or control or are within the possession, custody, or control of your attorneys, investigators, agents, employees or other representatives of you or your attorneys or anyone else from whom you have a superior right to compel production.

2. In the event you withhold any document or information on the basis of privilege (attorney-client communications, work product, or any other alleged privilege), for each document state:

   a. the date and place of the communication and/or document;
   b. the identity of each person who was present at or who participated in such communication or the author(s) and recipient(s) of the document;
   c. the type of communication;
   d. the general subject matter of the communication or document; and
   e. the nature of the privilege or other reason for not producing the communication or document.

3. The following rules of construction apply to these Requests:

   a. the term "all" shall be construed to mean each or any and the terms "each" or "any" shall be construed to mean all as necessary to bring within the scope of the Request all responses that might otherwise be construed to be outside its scope;

    b. the connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the Request all responses that might otherwise be construed to be outside its scope;

    c. the use of the singular form of any word includes the plural, and vice versa;

    d. any Request propounded in the masculine shall include the feminine, and vice versa; and

    e. any Request propounded in the present tense shall include the past tense, and vice versa.

4. If you object to all or any portion of any category of documents called for by these Requests, please produce all documents within each category to which your objections do not apply and please state whether any documents are being withheld based on your objection.

5. Produce all documents as they are kept in the usual course of business, in the file folders or other organizational order in which they are kept or organized. Plaintiff requests hard copy documents not maintained in electronic form to be produced in electronic imaged form including searchable text. Plaintiff requests that all electronically stored information that may be responsive to these Requests be produced in native format unless that format can be read only by Defendant's proprietary software. If the requested electronically stored information can be read only by Defendant's proprietary software and if that information can be exported into an electronic format that can be read by nonproprietary software (such as Microsoft Word or WordPerfect for word-processed information, Microsoft Outlook "pst" format for email, and Microsoft Office Access or Microsoft Excel for database information), then Plaintiff requests that such information be produced in that electronic format. As to Documents or Communications that already exist as .pdf files, copies of those .pdf files, including any metadata, should be produced. Plaintiff further requests that each production include Concordance load files, consisting of a ".dat" file for data and an ".opt" file for images, in a folder titled "DATA." Load files will provide document boundaries and parent-child relationships for all produced data. Furthermore, load files will provide the following coding field information, where available, for each produced document:

a. BegDoc — First Bates number in the range of Bates numbers associated with the document.
b. EndDoc — Last Bates number in the range of Bates numbers associated with the document.
c. BegAttach — First Bates number in the range of Bates numbers associated with the document's attachments.
d. EndAttach — Last Bates number in the range of Bates numbers associated with the document's attachments.
e. PgCount — Page count of the document.
f. Custodian — Name of custodian or source system from which the document was collected.
g. TextPath — File path to the document level OCR text file.
h. Confidentiality — Confidentiality designation applied to the document (pursuant to the Consent Protective Order entered in this case).
i. Redacted (Y/N) — Indication of the presence of any redactions in the document.
j. MD5 Hash — MD-5 hash value of the document.
k. From — Sender of the message.
l. To — Addressee(s) of the message.
m. CC — Person(s) copied on the message.
n. BCC — Person(s) blind copied on the message.
o. Subject — Subject line of the message.
p. DateSent — Date the message was sent.
q. TimeSent — Time the message was sent.
r. DateReceived — Date the message was received.
s. TimeReceived — Time the message was received.
t. Author — Author of the document.
u. Source Device — Device from which the document was collected.
v. Source Path — File path of the location from the document was collected.

  w.  DateCreated — Date the document was created.

  x.  DateLastMod — Date the document was last modified.

  y.  TimeLastMod — Time the document was last modified.

  z.  NativeLink — File path of the document on the production media (only applicable to documents produced natively).

6.  If any of the documents requested have been destroyed, describe the contents of such documents as completely as possible, the date of destruction, and the name of the person who ordered or authorized the destruction.

7.  All Requests for discovery by Lipsey in this case are continuing. In the event that any information or documents come to your attention after you serve your responses to these Requests that are responsive to any Request below or that would alter or change a response in any way, and that were not included in your responses to the Requests, such additional information or documents shall be furnished to attorneys for Lipsey as soon as possible without further request.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

Please produce the following documents and things in your possession, custody, or control:

**REQUEST FOR PRODUCTION NO. 31**

All documents or communications relating to or discussing complaints submitted by inmates (including but not limited to Lipsey) in any CDCR institution to Defendant or other current or former CDCR employees or officers regarding the Guard One system, the welfare check program, night-time noise, or sleep deprivation.

**REQUEST FOR PRODUCTION NO. 32**

All documents relating to any investigation, analysis, evaluation, or study of any noise caused or alleged to be caused by the Guard One system or welfare check program.

**REQUEST FOR PRODUCTION NO. 33**

All documents relating to any investigation, analysis, evaluation, or study of any impact on inmate sleep caused or alleged to be caused by the Guard One system or welfare check program.

**REQUEST FOR PRODUCTION NO. 34**

All documents relating to any investigation, analysis, evaluation, or study of any impact on inmate health caused or alleged to be caused by the Guard One system or welfare check program.

**REQUEST FOR PRODUCTION NO. 35**

All documents relating to any investigation, analysis, evaluation, or study of any impact on inmate suicides or attempted suicides caused or alleged to be caused by the Guard One system or welfare check program.

**REQUEST FOR PRODUCTION NO. 36**

All documents relating to the CDCR's adoption of the Guard One system, including but not limited to communications with class counsel, communications with the supplier or manufacturer of the Guard One system, internal analyses of the costs and benefits of the Guard One system, or other internal communications regarding adoption of the Guard One system.

**REQUEST FOR PRODUCTION NO. 37**

All documents relating to any potential or actual modification of the Guard One system or welfare check program, including but not limited to changes in the frequency of welfare checks, changes to the settings of the Guard One batons (such as whether the batons make a beeping noise when they interact with the Guard One buttons), or changes to the doors in areas where the Guard One system is or was used to conduct welfare checks.

**REQUEST FOR PRODUCTION NO. 38**

All documents concerning the beeping of the Guard One batons, including but not limited to whether to turn off the beeping.

**REQUEST FOR PRODUCTION NO. 39**

All documents concerning the frequency of welfare checks, including but not limited to the decision to conduct checks twice an hour and the decision to reduce the frequency of the checks in certain areas.

**REQUEST FOR PRODUCTION NO. 40**

All documents concerning alternative methods (other than the Guard One system) that CDCR considered at any time to monitor correctional officers' compliance with the welfare check program.

**REQUEST FOR PRODUCTION NO. 41**

Documents sufficient to show the cost of CDCR's purchases of equipment used to carry out the Guard One system.

**REQUEST FOR PRODUCTION NO. 42**

All documents concerning CDCR officers' compliance or lack of compliance with the welfare check program before the introduction of the Guard One system, including but not limited to any evidence of falsified records of welfare checks.

**REQUEST FOR PRODUCTION NO. 43**

All documents concerning compliance with the Guard One Order, including but not limited to communications with class counsel and internal communications regarding the requirements of the Guard One Order.

**REQUEST FOR PRODUCTION NO. 44**

All documents reflecting or relating to communications with class counsel related to the Guard One system, alternatives to the Guard One system, the welfare check program, sleep deprivation, noise, or the Guard One Order, whether before or after the entry of the Guard One Order.

**REQUEST FOR PRODUCTION NO. 45**

All documents concerning training of CDCR officers or employees related to the Guard One system or the welfare check program, including but not limited to policy manuals, internal memoranda, training presentations, or audio or video training programs.

**REQUEST FOR PRODUCTION NO. 46**

All documents concerning training of CDCR officers or employees relating to noise or inmate sleep, including but not limited to policy manuals, internal memoranda, training presentations, or audio or video training programs.

**REQUEST FOR PRODUCTION NO. 47**

All documents concerning training of CDCR officers or employees relating to suicide, including but not limited to policy manuals, internal memoranda, training presentations, or audio or video training programs.

**REQUEST FOR PRODUCTION NO. 48**

Documents sufficient to identify suicides or attempted suicides among mentally ill prisoners while subject to the Guard One system (in units including but not limited to Security Housing Units, Administrative Segregation Units, Condemned Housing Units, and Psychiatric Services Units).

**REQUEST FOR PRODUCTION NO. 49**

Documents sufficient to identify suicides or attempted suicides among non-mentally ill prisoners while subject to the Guard One system (in units including but not limited to Security Housing Units, Administrative Segregation Units, Condemned Housing Units, and Psychiatric Services Units).

**REQUEST FOR PRODUCTION NO. 50**

Documents sufficient to identify suicides or attempted suicides among mentally ill prisoners while subject to the welfare check program before the introduction of the Guard One system (in units including but not limited to Security Housing Units, Administrative Segregation Units, Condemned Housing Units, and Psychiatric Services Units).

**REQUEST FOR PRODUCTION NO. 51**

Documents sufficient to identify suicides or attempted suicides among non-mentally ill prisoners while subject to the welfare check program before the introduction of the Guard One system (in units including but not limited to Security Housing Units, Administrative Segregation Units, Condemned Housing Units, and Psychiatric Services Units).

**REQUEST FOR PRODUCTION NO. 52**

Documents sufficient to show the number of prisoners subject to the Guard One system (in units including but not limited to Security Housing Units, Administrative Segregation Units, Condemned Housing Units, and Psychiatric Services Units).

**REQUEST FOR PRODUCTION NO. 53**

Documents sufficient to show the number of prisoners subject to the welfare check program before the introduction of the Guard One system (in units including but not limited to Security Housing Units, Administrative Segregation Units, Condemned Housing Units, and Psychiatric Services Units).

**REQUEST FOR PRODUCTION NO. 54**

All documents created after December 6, 2018 and concerning Lipsey's health, including but not limited to records of requests for medical attention, records of visits with medical professionals, or mental healthcare records.

**REQUEST FOR PRODUCTION NO. 55**

Documents sufficient to identify the CDCR officers or employees who conducted welfare checks in units where Lipsey was or is housed, including but not limited to personnel assignment records.

**REQUEST FOR PRODUCTION NO. 56**

Documents sufficient to identify any persons who conducted any training related to the Guard One system, the welfare check program, inmate sleep, suicide, or excessive noise.

**REQUEST FOR PRODUCTION NO. 57**

Documents sufficient to show the layout of the units where Lipsey was or is housed and subject to welfare checks.

**REQUEST FOR PRODUCTION NO. 58**

Any photographs or video recordings of the equipment used in the Guard One system.

**REQUEST FOR PRODUCTION NO. 59**

Any photographs or audio or video recordings of CDCR officers or employees conducting welfare checks before or after the introduction of the Guard One system.

| | | |
|---|---|---|
| 1 | Dated: June 3, 2021 | Respectfully submitted, |
| 2 | | /s/ *Kate M. Falkenstien* |

REICHMAN JORGENSEN LEHMAN & FELDBERG LLP
Shawna L. Ballard (SBN 155188)
Kate Falkenstien (SBN 313753)
Brian Baran (SBN 325939)
100 Marine Parkway, Suite 300
Redwood Shores, California 94065
Telephone: (650) 623-1401
Fax: (650) 623-1449
sballard@reichmanjorgensen.com
kfalkenstien@reichmanjorgensen.com
bbaran@reichmanjorgensen.com

*Attorneys for Plaintiff-Intervenor Christopher Lipsey*

## CERTIFICATE OF SERVICE

The undersigned certifies that on June 3, 2021, PLAINTIFF-INTERVENOR'S THIRD SET OF REQUESTS FOR PRODUCTION TO DEFENDANT was served electronically, via email, on counsel of record in this case, at the following addresses:

Adriano Hrvatin
Adriano.hrvatin@doj.ca.gov
Elise Owens Thorn
Elise.thorn@doj.ca.gov
Kyle Lewis
Kyle.lewis@doj.ca.gov
Lucas Hennes
Lucas.hennes@doj.ca.gov
Tyler Heath
Tyler.heath@doj.ca.gov

Dated: June 3, 2021                    /s/ Kate Falkenstien
                                       Kate Falkenstien