# Exhibit D

REICHMAN JORGENSEN
LEHMAN & FELDBERG LLP

Kate Falkenstien
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
Direct Dial: (650) 623-1425
kfalkenstien@reichmanjorgensen.com

June 21, 2021

Via Email

Lucas Hennes
1300 I Street, Suite 125
Sacramento, CA 94244
lucas.hennes@doj.ca.gov

Re: Lipsey intervention in *Coleman v. Newsom*, 2:90-cv-00520 KJM-DB

Dear Lucas:

Thank you for your letter of June 18, regarding Mr. Lipsey's third set of requests for production (RFPs). I write to respond to your concerns.

*Limits on timeframe*

You proposed that RFPs 31-32, 36, 39, 45-49, 52, and 55-57 be limited to documents dated between May 1, 2020 and May 31, 2021. However, this timeframe would eliminate many earlier relevant documents. As a few examples:

- RFP 31 asks for documents relating to inmate complaints. As we learned during last summer's discovery, many inmates complained around the time of the introduction of the Guard One checks. Your proposed timeframe would avoid producing any internal communications about those hundreds of inmate complaints.
- RFP 36 asks for documents relating to the adoption of the Guard One system, which occurred long before 2020. Your proposed date range would therefore functionally ensure that there are *no* documents responsive to RFP 36.
- RFP 39 asks about documents concerning the frequency of welfare checks and the choice to reduce the frequency of the checks in certain areas (for example, the Pelican Bay SHU). But we believe the decision was made to reduce the frequency of the checks in the Pelican Bay SHU earlier than May 2020, so any responsive documents about that issue would be excluded by your proposed timeframe.

These documents from before May 2020 are relevant to Lipsey's claim in intervention, and it is not unreasonably burdensome to search the relevant custodians' files for a longer period of time.

You note that there is no limit on the timeframe in these RFPs as written. While they do not state dates, the requests all concern Guard One and thus the responsive documents would necessarily be time-limited by the date when CDCR began to consider or use the Guard One system. For all of the RFPs you listed, we would agree to limit the date of your searches to begin at the time CDCR first evaluated the use of Guard One, if you could identify that date.

1

*Relevance of the efficacy of Guard One in preventing suicide*

I understand that it is your position that "the efficacy of Guard One in preventing suicides or the expense in its implementation in comparison to other possible alternative recording mechanisms for welfare checks" is not relevant to Lipsey's claim in intervention. You listed a set of requests that you contend should be withdrawn or narrowed based on this position. I believe your list largely repeats a list I provided you in my email dated June 15, in which I proposed requests that could be withdrawn or narrowed if you agreed to a stipulation (and the Court approved it) that any penological interest in conducting welfare checks using Guard One (e.g., the interest in preventing suicides and any need to use Guard One to do so) does not affect the Eighth Amendment analysis.[1]

Your letter repeats my list of narrowed requests but does not address the proposed stipulation. You appear to be proposing that Lipsey narrow or eliminate requests related to the efficacy of Guard One in preventing suicide, while defendants preserve their right to make arguments based on the contention that Guard One is effective and/or necessary in preventing suicides. That does not make sense. If you contend that the efficacy of Guard One in preventing suicide is not relevant to Lipsey's Eighth Amendment claim, our proposed stipulation should be uncontroversial. If you are not willing to enter into the stipulation, however, that refusal implicitly concedes that the efficacy of Guard One in preventing suicides *is* relevant to the Eighth Amendment analysis or your defenses. In that event, we are entitled to take discovery on that issue.

Please let us know whether you will agree to our proposed stipulation. If not, please suggest times you would be available to meet and confer about the efficacy-related discovery requests on your list. If you will not agree to a stipulation and also will not provide discovery on these issues, we intend to seek relief from the Court.

*Overbreadth*

To address your overbreadth concerns generally, I think it would be productive to agree upon search terms and custodians to ensure we are on the same page about what is being searched and address any concerns you may have about overbreadth and any concerns we may have about your search methodology. For example, if we are concerned your search terms or custodian list are too narrow, it would probably save you time to discuss that before you invest significant resources in carrying out a search that we would argue was insufficient. And if you are concerned our requests are overbroad or too burdensome, it would help structure that discussion for us to know what searches you intend to run in response to our requests and how

---

[1] Aside from the stipulation, I noticed only two substantive differences between your list and mine. First, you additionally request that we withdraw RFP 40 entirely, which I suggested could be limited to documents concerning possible alternative methods to monitor welfare checks only if they discuss noise or sleep under Guard One. Second, you request that RFPs 45 and 46 be limited to the Guard One system and welfare checks conducted using the Guard One system. We would likely not agree to these two modifications even if you accepted the stipulation we proposed. If you are open to the stipulation, however, we would be open to discussing and negotiating those details further with you.

many document hits you get. Could you propose particular custodians and search terms, so that we can confer about them?

Regarding the specific overbreadth concerns in your letter, you suggest limiting RFPs 31, 44, and 45 to documents specifically about Guard One (and not welfare checks or night-time noise more broadly). We are amenable to some sort of narrowing here. Our concern is that documents discussing welfare checks recorded using Guard One may not use the phrase "Guard One." We would not agree to limit to documents that use the phrase "Guard One," but we could agree to limit to documents that are *about* welfare checks conducted using Guard One. I believe we discussed this issue last year regarding RFP 1 and came to a similar agreement. I think we could work out the details here in discussing search terms as I propose above.

You also propose limiting RFP 46, which concerns training documents about noise or inmate sleep, to training on the Guard One system and welfare checks conducted using the Guard One system. On that request, I believe we disagree more substantively. If CDCR trains officers about inmate sleep deprivation or the effect of noise on inmate sleep, that training would be relevant even if it is unrelated to Guard One. It would be relevant to show that sleep deprivation is an unacceptable condition of confinement, for example.

Thank you again for your attention to these requests. We remain available to discuss at your convenience.

Best Regards,

/s/ Kate Falkenstien