DONALD SPECTER – 083925
STEVEN FAMA – 099641
MARGOT MENDELSON – 268583
PRISON LAW OFFICE
1917 Fifth Street
Berkeley, California 94710-1916
Telephone: (510) 280-2621

CLAUDIA CENTER – 158255
DISABILITY RIGHTS EDUCATION
AND DEFENSE FUND, INC.
Ed Roberts Campus
3075 Adeline Street, Suite 210
Berkeley, California 94703-2578
Telephone: (510) 644-2555

MICHAEL W. BIEN – 096891
JEFFREY L. BORNSTEIN – 099358
ERNEST GALVAN – 196065
LISA ELLS – 243657
THOMAS NOLAN – 169692
JENNY S. YELIN – 273601
MICHAEL S. NUNEZ – 280535
JESSICA WINTER – 294237
MARC J. SHINN-KRANTZ – 312968
CARA E. TRAPANI – 313411
ALEXANDER GOURSE – 321631
AMY XU – 330707
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
Telephone: (415) 433-6830

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>GAVIN NEWSOM, et al.,<br><br>    Defendants. | Case No. 2:90-CV-00520-KJM-DB<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO MODIFY 2009 STAFFING PLAN AS IT RELATES TO ON-SITE PSYCHIATRY SUPERVISORS**<br><br>Judge: Hon. Kimberly J. Mueller |

[3771874.9]

**TABLE OF CONTENTS**

Page

I. Defendants' Proposed Modification Is Not What The Parties and Special Master Agreed To. ................................................................................................ 1

II. Modification Is Not Warranted Under Rule 60(b). ..................................................... 6

    A. Defendants have not met their burden of establishing a significant change in circumstances. ................................................................................ 7

    B. Defendants' Unenforceable Pledge to Increase Chief Psychiatry Allocations At Some Point in the Future Does Not Provide a Basis To Reduce Their Current Staffing Allocations ...................................................... 10

    C. Defendants' Proposed Modification Is Not Suitably Tailored Because It Would Not Advance Remediation ............................................................. 12

III. Modification Is Not Warranted Under the PLRA. .................................................... 15

[3771874.9]

i

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO MODIFY 2009 STAFFING PLAN AS IT RELATES TO ON-SITE PSYCHIATRY SUPERVISORS

# TABLE OF AUTHORITIES

Page

**CASES**

*Brown v. Plata*,
 563 U.S. 493 (2011) ............................................................................ 12, 14, 16

*Coleman v. Brown*,
 922 F. Supp. 2d 1004 (E.D. Cal. & N.D. Cal. 2013) ........................................ passim

*Coleman v. Schwarzenegger*,
 922 F Supp. 2d 882 (E.D. Cal. & N.D. Cal. 2009) ........................................................ 11

*Coleman v. Wilson*,
 912 F. Supp. 1282 (E.D. Cal. 1995) ........................................................................ 13

*Evans v. Fenty*,
 701 F. Supp. 2d 126 (D.D.C. 2010) ................................................................... 10, 12

*Flores v. Rosen*,
 984 F.3d 720 (9th Cir. 2020) ............................................................................... 6, 13

*Frew v. Suehs*,
 775 F. Supp. 2d 930 (E.D. Tex. 2011) ........................................................................ 11

*Horne v. Flores*,
 557 U.S. 433 (2009) ........................................................................................... 10

*Juan F. v. Rell*,
 No. 3:89-cv-859 (CFD), 2010 WL 5590094 (D. Conn. Sept. 22, 2010) .................. 9

*Parsons v. Ryan*,
 912 F.3d 486 (9th Cir. 2018) ............................................................................... 15

*Rufo v. Inmates of Suffolk County Jail*,
 502 U.S. 367 (1992) ............................................................................ 6, 8, 12, 14

*United Student Aid Funds, Inc. v. Espinosa*,
 559 U.S. 260 (2010) ............................................................................................. 6

**RULES**

Fed R. Civ. P. 60(b) .............................................................................................. passim

Earlier this year, the parties, with guidance from the Special Master, discussed and agreed to the substance of a three-pronged modification of Defendants' obligations under the 2009 Staffing Plan with respect to supervisory psychiatrist allocations.[1]  The key elements of the agreed-upon modification are described below and are reflected in Defendants' March 4, 2021 "On-Site Psychiatry Supervisor Proposal (hereafter "Proposal" or "March 4 Proposal"), which Defendants filed with the Court at ECF No. 7250-3.  Rather than asking the Court to adopt the agreed-upon three-part modification, however, Defendants have now filed a Motion seeking something entirely different:  a modification that includes only two of the three key elements of the March 4 Proposal and that omits the portion of that Proposal that would have slightly increased Defendants' supervisory staffing allocations above current levels.  *See* Defs.' Motion to Modify, ECF No. 7250-1 (hereafter "Motion" or "Mot.").  In fact, if adopted, Defendants' requested modification will have the effect of substantially *reducing* their supervisory psychiatry staffing obligations instead of increasing them pursuant to the parties' agreement.  Because Defendants have not identified any changed or extraordinary circumstances that would justify this reduction in their staffing obligations, the Court should either deny Defendants' Motion or construe it as a request to adopt the March 4 Proposal in toto, including all three of its agreed-upon substantive elements.

I.  **Defendants' Proposed Modification Is Not What The Parties and Special Master Agreed To.**

Defendants' court-ordered 2009 Staffing Plan includes several provisions relating to supervisory psychiatry positions.  It requires, among other things, that Defendants allocate and fill a Chief Psychiatrist position at all "prisons with MHCB units and prisons with

---

[1] This had remained a disputed issue following the parties' successful negotiations regarding other aspects of the 2009 Staffing Plan.  *See* 1/27/21 Order, ECF No. 7035 (adopting agreed-upon modifications to 2009 Staffing Plan); *see also* Pls.' Objections to and Comments on Defs.' Proposed Revisions to 2009 Staffing Plan, ECF No. 6994, at 4-7 (maintaining objections to Defendants failure to allocate supervising psychiatrists required by 2009 Staffing Plan).

[3771874.9]

1

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO MODIFY 2009 STAFFING PLAN AS IT RELATES TO ON-SITE PSYCHIATRY SUPERVISORS

complex and multiple mental health programs"; that Defendants allocate and fill Senior Psychiatrist, Supervisor positions at all "prisons that do not have a Chief Psychiatrist but have a significant number of staff psychiatrists," as well as "several prisons that have a Chief Psychiatrist and that have large and complex mental health services"; and that Defendants allocate and fill at least one additional Senior Psychiatrist, Supervisor position for every 50 beds at facilities with MHCB units containing six or more beds (that is, all of them). Defs.' 2009 Staffing Plan, ECF No. 3693 at 22, 31-32. At institutions with MHCBs, the Chief Psychiatrist "shares clinical oversight over the MHCB unit and is responsible for appropriate application of involuntary medication and physical restraint use." *Id.* at 31. In discussing MHCB staffing, the 2009 Staffing Plan further explains that "Senior Psychiatrists supervise staff psychiatrists, provide clinical care for difficult cases, review documentation initiating involuntary medication and restraints, and monitor use of restraints." *Id.* at 18. These requirements are consistent with the Program Guide, which contemplates, inter alia, supervisory psychiatrists providing treatment to MHCB patients and assessing whether those patients should remain in an MHCB for more than 10 days. *See* MHSDS Program Guide at 12-5-1, 12-5-33, ECF No. 5684-1 at 71, 103.

Defendants have knowingly been out of compliance with these Staffing Plan requirements for many years. Between December 2018 and December 2020, for example, Plaintiffs notified Defendants no less than three times that they were failing to allocate Chief Psychiatrist positions to three institutions with MHCB units (CCWF, HDSP, and NKSP). *See* Exs. A & B to Gourse Decl. ISO Mot. for Leave, ECF No. 7072-1 at 7, 18; Pls.' Objs. to and Comments on Defs' Proposed Revisions to 2009 Staffing Plan, ECF No. 6994 at 6. Plaintiffs also notified Defendants on each of these occasions that they were failing to allocate any Senior Psychiatrist, Supervisor positions to ten or more institutions with MHCBs, as well as several institutions that had "large and complex mental health services" under any reasonable definition of that phrase. *See* Exs. A & B to Gourse Decl. ISO Mot. for Leave, ECF No. 7072-1 at 7-9, 18-19; Pls.' Objs. to and Comments on Defs' Proposed Revisions to 2009 Staffing Plan, ECF No. 6994 at 6-8.

[3771874.9]

2

Defendants did not respond to any of Plaintiffs' objections to their clear non-compliance until late 2020, when the parties began to discuss them as part of broader negotiations over several other disputed aspects of Defendants' staffing obligations under the 2009 Plan. In December 2020, the parties successfully resolved most of their disputes and the Court subsequently adopted the parties' agreed-upon modification of Defendants' Staffing Plan. *See* 1/27/21 Order, ECF No. 7035. While the parties' dispute regarding the application of the June 13, 2002 Order to Defendants' supervisory staffing positions reached an impasse by March 2021 and is now the subject of Plaintiffs' pending motion, *see* Pls.' Mot. to Clarify, ECF No. 7118, the parties continued to negotiate, with the assistance of the Special Master, Defendants' allocations of Chief Psychiatrist and Senior Psychiatrist, Supervisor positions under the 2009 Staffing Plan. *See* Pls' Mot. for Leave, ECF No. 7072 at 4 n.1. On March 26, 2021, Defendants presented their "On-Site Psychiatry Supervisor Proposal," dated March 4, 2021, to Plaintiffs and the Special Master. This Proposal had three key elements: **First**, the proposal would eliminate the 2009 Staffing Plan's requirement that Defendants allocate one Senior Psychiatrist, Supervisor for every 50 MHCB beds. *See* Ex. A to Mehta Decl., ECF No. 7250-3 at 2. **Second**, the Proposal would "replace" the 2009 Staffing Plan's criteria for allocating Senior Psychiatrist, Supervisor positions outside of MHCBs with a new, more clear-cut formula.[2] *Id.* **Third**, the Proposal would "revise[] the 2009 Staffing Plan to require Chief Psychiatrists at all institutions with a mental health program." *Id.*

---

[2] Instead of allocating one Senior Psychiatrist, Supervisor position to all institutions with either "a significant number of staff psychiatrists" or a "large and complex" mental health program, the new formula would allocate one Senior Psychiatrist, Supervisor to any institution that (a) "serves at least 3 different mental health program areas (CCCMS., STRH, LTRH, EOP, EOP ASU, PSU, RC, and MHCB), excluding the Psychiatric Inpatient Programs (PIPs)"; (b) has "[a] total mental health population of at least 900 patients, excluding patients in the PIP"; and (c) has "[a] total of 10 or more staff psychiatry positions allocated, including telepsychiatry" but "excluding positions allocated to the PIP." The new formula would also allocate an additional Senior Psychiatrist, Supervisor "for every 10 additional psychiatrists assigned to an institution that meets all other criteria." Ex. A to Mehta Decl., ECF No. 7250-3 at 2-3.

1    The parties and the Special Master team discussed these three components,
2 presented as a single package, during a meeting on April 27, 2021, and Plaintiffs' counsel
3 subsequently notified Defendants and the Special Master that they approved of the
4 Proposal's substance. *See* Gourse Decl. ¶ 3. Additionally, Defendants provided
5 information reflecting the projected impact of the Proposal on current Chief Psychiatrist
6 and Senior Psychiatrist, Supervisor allocations, which is consistent with the figures
7 Defendants present in their Motion: The Proposal would result in 28 Chief Psychiatrists (a
8 net increase of 10 from their current allocations), and 11 Senior Psychiatrist, Supervisors
9 (a net decrease of 6.5 from their current allocations). *See* Mot. at 8. In sum, Plaintiffs
10 agreed to the Proposal to modify the 2009 Staffing Plan with the understanding, based on
11 Defendants' representations, that it would yield an overall increase in total supervisory
12 psychiatry positions. *Id.*

13    Because the parties and Special Master focused on the substance of the March 4
14 Proposal, they did not discuss Footnote 1 of that proposal in which Defendants asserted
15 that "neither the 2009 Staffing Plan itself nor any of the adjustments in this proposal are
16 necessary to remedy an Eighth Amendment." *See* Ex. A to Mehta Decl., ECF No. 7250-3
17 at 2 n.1. Nor did the parties and the Special Master discuss the terms of any stipulation
18 relating to the March 4 Proposal. On June 2, 2021, however, Defendants unexpectedly
19 asked Plaintiffs to enter into a formal stipulation adopting the March 4 Proposal as written,
20 including the legal argument in Footnote 1. Plaintiffs explained that they were willing to
21 stipulate to the substance of the Proposal but could not stipulate to the legal argument in
22 Footnote 1 both because they fundamentally disagree with it, and because the Court's prior
23 orders foreclosed it, including by rejecting the exact language Defendants refused to
24 remove.[3] *See* 10/10/17 Order, ECF No. 5711 at 16 n.5.

---

[3] Contrary to what Defendants assert in their current Motion and the supporting declaration of Samantha D. Wolff, *see* ECF No. 7250-4 ¶ 2, Plaintiffs were willing to stipulate to the substantive provisions of the Proposal as well as additional language reserving
(footnote continued)

[3771874.9]

4

1    Because Plaintiffs would not agree to jointly ask this Court to sanction a legally
2 flawed argument it had already specifically rejected, Defendants now ask the Court to
3 approve a modification that is fundamentally different from what the parties substantively
4 agreed to in the March 4 Proposal.  Like that Proposal, Defendants' requested modification
5 would eliminate the 1:50 ratio for Senior Psychiatrist, Supervisors in MHCB units and
6 would adopt the Proposal's new formula for allocating Senior Psychiatrist, Supervisors
7 outside of MHCB units.  *See* Mot. at 2 & n.2; Proposed Order, ECF No. 7250-5 at 2.
8 Unlike the negotiated Proposal, however, which would have "revise[d] the 2009 Staffing
9 Plan to require Chief Psychiatrists at all institutions with a mental health program," Ex. A
10 to Mehta Decl., ECF No. 7250-3 at 2, Defendants' requested modification does not offset
11 its more restrictive formula for allocating Senior Psychiatrist, Supervisors with a more
12 generous formula for allocating Chief Psychiatrist positions.  *See* Mot. at 2 n.1.  Instead,
13 Defendants ask this Court to reduce the number of Senior Psychiatrist, Supervisors they
14 are required to allocate under the 2009 Staffing Plan without any concomitant increase in
15 the number of Chief Psychiatrists required under that Plan.  The net effect of the requested
16 modification would be to reduce the total number of supervisory psychiatry positions that
17 Defendants are legally required to allocate by at least 6.5 positions, according to
18 Defendants' own calculations.  *See* Mot. at 8 (stating that the March 4 Proposal would
19 reduce the number of Senior Psychiatrist, Supervisor allocations from 17.5 to 11).

20    Plaintiffs did not agree and never would have agreed to the modification Defendants
21 now ask this Court to approve.  Nor did Defendants seek approval from the Special Master
22 for their current plan, reflected in their Motion, to reduce their legal obligations with
23 respect to Senior Psychiatrist, Supervisors, without any concomitant obligation to increase
24 their Chief Psychiatrist allocations.  *See* 5/18/15 Order, ECF No. 5307 at 6 (requiring
25 Special Master approval for any revision to existing staffing ratios).

26
27
28 Defendants' right to seek modification of the Proposal based on changed circumstances after meeting and conferring with Plaintiffs and the Special Master.  *See* Gourse Decl. ¶ 5.

[3771874.9]

5

## II. Modification Is Not Warranted Under Rule 60(b).

As reflected in their Motion and the declaration of their Deputy Director of Mental Health Services, Defendants understand that they need to augment their current levels of psychiatric supervision in order for their system to function properly. But instead of presenting their full Proposal to this Court for approval of a holistic modification of the 2009 Staffing Plan with respect to supervisory psychiatrists, which Plaintiffs and the Special Master supported, Defendants ask this Court to approve a one-way ratchet: modify the 2009 Staffing Plan to reduce Senior Psychiatrist, Supervisor allocations while allowing offsetting increases in Chief Psychiatrist allocations to remain purely voluntary. Defendants' Motion is premised on non-binding promises to increase supervisory psychiatrist allocations overall, but the legal effect of granting it would allow Defendants to finally achieve their long-desired goal of reducing their court-enforceable psychiatric staffing obligations. Defendants' previous failed attempts to do so are amply documented in the Court's October 10, 2017 Order, and their current effort should suffer the same fate. *See* 10/10/17 Order, ECF No. 5711 at 12-19.

Defendants first ask the Court to grant their motion under Rule 60(b) of the Federal Rules of Civil Procedure. Because modification is in tension with bedrock principles of finality and repose, Rule 60(b) permits modification only in limited circumstances. *See United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 270 (2010) (cautioning against broad interpretations of Rule 60(b) that would "swallow the rule" of finality). The party seeking modification "bears the burden of establishing that a significant change in circumstances warrants revision." *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 383 (1992). Satisfying this burden requires "compelling evidence" of the changed circumstances. *Coleman v. Brown*, 922 F. Supp. 2d 1004, 1035, 1038 (E.D. Cal. & N.D. Cal. 2013). If the moving party meets its initial burden, the court still must "consider whether the proposed modification is suitably tailored to the changed circumstance." *Rufo*, 502 U.S. at 383. The moving party must "convincingly explain" why their proposed modification is suitably tailored. *Flores v. Rosen*, 984 F.3d 720, 742-43 (9th Cir. 2020).

[3771874.9]

6

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO MODIFY 2009 STAFFING PLAN AS IT RELATES TO ON-SITE PSYCHIATRY SUPERVISORS

### A. Defendants have not met their burden of establishing a significant change in circumstances.

When Defendants asked this Court in 2017 to reduce their psychiatry staffing obligations under the 2009 Staffing Plan, the Court explained that they faced a particularly "heavy burden" because "for most programs the 2009 Staffing Plan increased the caseload for prison psychiatrists" in spite of the Court's previous findings that Defendants' psychiatry staffing was constitutionally deficient, and because Defendants themselves had determined and represented to the Legislature that the staffing levels in the plan were "'appropriate' and necessary to meet constitutional standards." 10/10/17 Order, ECF No. 5711 at 16-18. As with prior attempts to chip away at their staffing obligations, Defendants did not meet this heavy burden in 2017, and they do not come close to meeting it now.

Defendants first argue that their "decision to clarify the 'large and complex' criteria" for allocating Senior Psychiatrist, Supervisor positions represents a significant change in circumstances that justifies eliminating the 2009 Staffing Plan's requirement that they also allocate at least one Senior Psychiatrist, Supervisor for every 50 MHCB beds. Mot. at 6. This argument makes little sense, even if the Court accepts Defendants' dubious characterization of their proposed formula as a "clarification" of existing requirements rather than substantive modification in its own right. *See* Mot. at 2 n.2 & 7 n.4. If Defendants are right that the new formula they propose for identifying "large and complex" institutions is a mere clarification of the 2009 Plan, it is, by definition, not a changed circumstance for the purposes of Rule 60(b), but a preexisting legal obligation. Nor do Defendants explain how, as a legal matter, one reduction in their supervisory staffing obligations would somehow justify under Rule 60(b) further reductions in those same obligations.

Indeed, while Defendants assert that the "additions" flowing from their new proposed formula for defining "large and complex" institutions warrants eliminating the 1:50 MHCB ratio requirement (Mot. at 7), their claims are seriously misleading.

According to Defendants' own calculations, their proposed "clarification" will have the effect of cutting *by more than one-third* the total number of Senior Psychiatrist, Supervisor positions Defendants currently allocate to their institutions. *See* Mot. at 8 (explaining that implementation of the proposed formula will reduce the total number of Senior Psychiatrist, Supervisor allocations from 17.5 to 11). That fact alone demonstrates that the purported "clarification" Defendants are seeking is in fact a material modification to their existing remedial obligations. And Defendants offer no evidence at all to support their bare assertion that their proposed alternative formula for Senior Psychiatrist, Supervisor allocations has made the 1:50 ratio "obsolete." Mot. at 7. If anything, the dramatic cuts flowing from the re-definition of "large and complex" institutions render the MHCB ratio more important than it would be under Defendants' currently operative definition.

To the extent that Defendants believe that the act of clarification itself represents a significant change in circumstances—because their proposed formula will replace the "operationally [in]feasible" MHCB ratio that has resulted in fractional positions, *see* Mot. at 4—they are similarly off base. This "change" amounts to nothing more than a decision to take a basic step toward satisfying one of Defendants' existing obligations: operationalizing the existing Senior Psychiatrist, Supervisor requirements in the 2009 Staffing Plan. It is not, in and of itself, a changed circumstance, particularly since it was clear even when Defendants filed the 2009 Plan that the ratio would result in partial positions and indeed reflected a decision to enhance the supervisory ratio from then-existing levels. *See* Ex. 20 to Defs' 2009 Staffing Plan , ECF No. 3693-2 at 43-44 (reflecting 4.52 total senior psychiatry positions spread across 18 MHCB units); *see also* 2009 Staffing Plan at 22 (showing decision to lower ratio for Senior Psychiatrist, Supervisor positions in MHCB from then-existing 1:133 to 1:50); *Rufo*, 502 U.S. at 385 (modification cannot be premised on "events that actually were anticipated at the time" of the decree). Moreover, partial compliance with an existing obligation is not itself a change in circumstances justifying modification of that obligation, as Defendants discovered last time they tried to raise this argument. *See Coleman*, 922 F. Supp. 2d at 1034 (rejecting

Defendants' argument that modification of the three-judge court's population-reduction order was justified by Defendants' progress toward compliance with that order); *see also Juan F. v. Rell*, No. 3:89-cv-859 (CFD), 2010 WL 5590094, at *2 (D. Conn. Sept. 22, 2010) (progress toward compliance with consent decree did not demonstrate changed circumstances because such progress "[was] not unforeseen" and represented "the very objective of the entire history of this litigation").

Defendants also assert that the 1:50 ratio should be eliminated regardless of whether circumstances have changed because it is not "operationally feasible or helpful." Mot. at 8. To support this argument Defendants rely on a declaration from their Deputy Director of Mental Health Services, Dr. Amar Mehta, who states that the 1:50 ratio "results in the allocation of less than half a senior psychiatry supervisor, with an allocation as low as a tenth of a position at some locations." Mehta Decl., ECF No. 7250-2 at 2. According to Dr. Mehta, such low allocations "would not provide meaningful assistance to the institution" even if Defendants filled them—which he concedes they "never" have. *Id.* Dr. Mehta's vague and conclusory assertions about the value of fractional allocations Defendants have never bothered to fill are entitled to little weight. *See Coleman*, 922 F. Supp. 2d at 1025. But even if the Court credits these assertions, Dr. Mehta's declaration does not explain why Defendants cannot simply increase their MHCB allocations to a level that *would* be "operationally feasible" and that *would* provide "meaningful assistance," as Defendants' 2009 Staffing Plan would surely allow.[4]

In short, Defendants have failed to meet their burden of establishing that their requested changes to the existing Senior Psychiatrist, Supervisor allocations are warranted under Rule 60(b).

/ / /

---

[4] Defendants agree that the Staffing Plan establishes the *minimum* level of staffing they are required to provide, and that it permits them to exceed these minimum requirements if they deem it necessary. *See* Mot. at 2 n.1

**B.    Defendants' Unenforceable Pledge to Increase Chief Psychiatry Allocations At Some Point in the Future Does Not Provide a Basis To Reduce Their Current Staffing Allocations**

Defendants next assert that their reductions in Senior Psychiatrist, Supervisory positions are justified because of their plan to "retain" Chief Psychiatrist positions at institutions with MHCBs—which the 2009 Staffing Plan notably already requires—and to increase the number of Chief Psychiatrist positions at certain institutions without MHCBs. Mot. at 7.  Of course, Defendants' promise to comply with their *existing* obligation to allocate Chief Psychiatrist positions does not provide an independent basis for modification of the 1:50 ratio, as the 2009 Staffing Plan's current requirement are premised on Defendants' own determination that additional psychiatric supervision is needed in MHCBs, beyond what can be provided by a single Chief Psychiatrist charged with overseeing an entire institution's psychiatry program.  *See* 2009 Staffing Plan, ECF No. 3693 at 8-9, 22, 31-32.  Defendants offer no evidence whatsoever—let alone the compelling evidence needed to satisfy their burden—that the circumstances underlying this determination have changed.  *See Coleman*, 922 F. Supp. 2d at 1034.

A demonstrated, durable *increase* in Chief Psychiatrist allocations throughout CDCR, on the other hand, might have provided Defendants with a plausible basis for eliminating the 1:50 ratio and modifying the "large and complex" criteria in a manner that reduces existing numbers of Senior Psychiatrist, Supervisors.  *See Horne v. Flores*, 557 U.S. 433, 450 (2009) (explaining that modification is warranted where a "durable" alternative remedy has been implemented); *Evans v. Fenty*, 701 F. Supp. 2d 126, 171 (D.D.C. 2010) ("[A]t a minimum, a 'durable' remedy means a remedy that gives the Court confidence that Defendants will not resume their violations of plaintiffs' constitutional rights once judicial oversight ends.").  But Defendants cannot even establish as a factual matter that the changed circumstance they say warrants the reduction in Senior Psychiatrist, Supervisor positions has occurred, much less that it is durable. *Coleman*, 922 F. Supp. 2d at 1038 (noting threshold burden on moving party to present "compelling evidence" of the alleged changed circumstance).  Defendants have had every opportunity

to allocate the increased numbers of Chief Psychiatrists they rely on to justify their Motion, *see, e.g.*, Mot. at 2, 4, 7, but they have not actually done so, much less hired psychiatrists to fill those positions. See Defs.' 7/15/21 Monthly Maps, ECF No. 7236 at 90-98 (showing 18, not the promised 28, Chief Psychiatrist positions allocated). Defendants conducted a special mid-cycle reallocation on April 1, 2021, to implement the psychiatry cuts this Court approved on January 27, 2021. *See* Gourse Decl. ¶ 2; *see also* 1/27/21 Order, ECF No. 7035. But they declined to add *any* additional Chief Psychiatrist positions, let alone the 10 additional positions suggested by their Motion. As usual, Defendants are quick to reduce their psychiatry allocation burdens but not to increase them to the levels they agree are appropriate and necessary.

Nor should this Court rely on Defendants' purported plan to increase Chief Psychiatrist allocations at some unstated point in the future as a basis for granting their requested modification. *See Frew v. Suehs*, 775 F. Supp. 2d 930, 937-38 (E.D. Tex. 2011) (rejecting argument that consent decree provision had been rendered "unnecessary" by the defendants' assurances that they would comply "on their own initiative"). Defendants have failed for over a decade to allocate even the baseline number of Chief Psychiatrists they are legally required to have under their 2009 Plan. *See* Defs.' 7/15/21 Monthly Maps, ECF No. 7236 at 90, 94-95 (showing that Defendants still have not allocated a Chief Psychiatrist to CCWF, HDSP, or NKSP, each of which has an MHCB); *see also* Pls.' Objs. and Comments re: Defs.' Proposed Revisions, ECF No. 6994 at 4-10; Exs. A & B to Gourse Decl. ISO Pls.' Mot. for Leave, ECF No. 7072-1 at 6-9, 17-21. And Defendants have reneged on similar promises of future improvements before. *See, e.g.*, *Coleman v. Schwarzenegger*, 922 F Supp. 2d 882, 956-57 (E.D. Cal. & N.D. Cal. 2009) (recounting Defendants' decision to back out of agreement to construct additional bed space that they had identified to this Court as their primary method of compliance with its orders); *Coleman v. Brown*, 922 F. Supp. 2d at 1037-38 (concluding that Defendants' voluntary commitment to building additional treatment space did not provide a sufficiently durable alternative to the court-ordered population cap they sought to modify, because construction

1  of the additional space was "in its early stages and thus continues to be at risk of non-
2  completion"); *see also Brown v. Plata*, 563 U.S. 493, 516 (2011) ("The *Coleman* and *Plata*
3  courts had a solid basis to doubt that additional efforts to build new facilities and hire new
4  staff would achieve a remedy.").

5  Defendants' illusory, unenforceable promise cannot support a substantial
6  modification of their legal obligations, particularly given their abysmal track record of
7  complying with this Court's staffing orders. All available evidence suggests that
8  Defendants will not follow through on their pledge to increase the number of psychiatrists
9  they employ on any sort of permanent basis unless the Court orders them to do so. *See,*
10 *e.g.*, 10/10/17 Order, ECF No. 5711 at 28 (describing Defendants' "long history of failure
11 to hire a sufficient number of psychiatrists"); *see also Evans*, 701 F. Supp. 2d at 168
12 (declining to modify consent decree in light of the defendants' "proven 30-year history of
13 noncompliance" and the "serious question as to whether defendants are even trying to
14 comply"). Because Defendants "demonstrate[] no sense of the required urgency" to
15 remedy their deficient psychiatry staffing, Special Master's Report on His Expert's
16 Analysis of Psychiatrist Employment, ECF No. 6695 at 3, this Court cannot and should not
17 rely on Defendants' unsubstantiated assurances that they will allocate additional Chief
18 Psychiatrists, particularly since if the Motion is granted as written, the Court (and
19 Plaintiffs) would have no ability to require Defendants to do so.

20 **C.    Defendants' Proposed Modification Is Not Suitably Tailored Because It Would Not Advance Remediation**
21

22 Defendants' proposed reduction in their supervisory psychiatry obligations is not
23 "suitably tailored" to any problems they have identified. *See Rufo*, 502 U.S. at 391. To be
24 suitably tailored, a modification must "resolve the problem" that makes relief necessary
25 without "creat[ing] or perpetuat[ing] a constitutional violation." *Id.* Defendants' proposed
26 modification fails on both counts. By *reducing* the number of supervisory psychiatric
27 positions Defendants are required to provide rather than *increasing* that number, the
28 modification does the opposite of what Defendants' own analysis suggests is needed and

[3771874.9]

12

exacerbates the problem it is purportedly intended to fix.  It also reduces Defendants' staffing obligations below the level that both they and this Court have found to be the constitutional minimum on multiple occasions.  *See, e.g.*, Order, ECF No. 5711 at 15-16.

Far from meeting their burden to "convincingly explain" why their proposed modification is suitably tailored, *Flores*, 984 F.3d at 742-43, Defendants offer no explanation at all.  Nor could they, as there is simply no evidence that cutting Senior Psychiatrist, Supervisors by one-third, with no legally required increase in Chief Psychiatrist positions, "would advance remediation of the Eight Amendment violation in this case; rather there is strong evidence that such a change would slow progress toward the end of federal court oversight."  10/10/17 Order, ECF No. 5711 at 19.  Supervisory psychiatrists continue to play a necessary role in CDCR's mental health system, as they did in 2009 when Defendants presented their plan and deemed it necessary to achieve constitutional compliance.  As the 2009 Staffing Plan itself makes clear, supervising psychiatrists perform a number of essential functions.  *See* 2009 Staffing Plan at 32.  This is especially true in the MHCBs, where they are responsible in part for direct patient care.  *See* MHSDS Program Guide at 12-5-1, 12-5-33, ECF No. 5684-1 at 71, 103; *see also* 2009 Staffing Plan at 22, 31 (requiring Senior Psychiatrist, Supervisors and Chief Psychiatrists to play central role in MHCB).

Defendants also depend on supervisory psychiatrists to carry out the quality assurance plan that Defendants have adopted to satisfy their constitutional obligation to implement a process for ensuring adequate care.  *See Coleman v. Wilson*, 912 F. Supp. 1282, 1308 (E.D. Cal. 1995) (finding that Defendants cannot provide adequate mental health care without quality assurance to ensure staff competence); Twenty-Fifth Round Monitoring Rpt., ECF No. 4298 at 48 (noting "critical" role of chief and senior staff in "ensuring the delivery of good clinical care," especially with respect to "quality improvement activities"); MHSDS Program Guide, ECF No. 5864-1 at 265, 267 (providing for the participation on chief psychiatrists on MHPS committees); *id.* at 171 (requiring the service of chief and supervising psychiatrists on SPR FIT committees); *see*

1  *also* ECF No. 6377, Oct. 15, 2019 Tr. at 33:10-13 (Statewide Chief of Psychiatry testifying
2  that without adequate numbers of supervisory psychiatrists, "each little bit of care that is
3  done per patient is less complete and less well done and, thus, fewer supervisors creates a
4  need for greater frequency of care"), 73:11-74:1 (further testifying that the absence of
5  adequate numbers of supervisory psychiatrists "means you need far more staff
6  psychiatrists" because the quality of care provided is lower); 9/19/19 Kuich Deposition Tr.,
7  ECF No. 6406 at 34:11-35:12 (former Statewide Chief of Telepsychiatry describing
8  importance of supervising psychiatrists in MHSDS).

9  On top of those supervisory duties, this Court has found that supervising
10 psychiatrists in the MHSDS today "have clinical responsibilities far in excess of those
11 contemplated by the 2009 staffing plan."  10/23/19 Golding Bench Ruling Tr., ECF No.
12 6380 at 455:14-16 (noting testimony from Statewide Chief of Psychiatry and former
13 Statewide Chief of Telepsychiatry that supervisors provide direct patient care between a
14 third to half the time).  Indeed, Defendants' recent implementation of their Psychiatric
15 Nurse Practitioner policy only increases the workload for supervisory psychiatrists, who
16 now are responsible for intensive personal supervision of the 10.43 PNPs scattered across
17 nine different institutions.  *See* Defs' PNP Policy and Procedure, ECF No. 6978-1 at 11-13
18 (describing supervisory obligations); *see also* Defs.' 6/21 Monthly Psychiatry Vacancy
19 Rpt., ECF No. 7253 at 4 (showing number and location of PNPs).

20 Defendants have failed to establish that eliminating one-third of their current
21 allocation of Senior Psychiatrist, Supervisors, which is the practical effect of granting their
22 Motion, will bring them closer to remediating their constitutional violations.  *See Rufo*, 502
23 U.S. at 391.  Indeed, it will almost certainly perpetuate the Eighth Amendment violation,
24 in contravention of this Court's fundamental responsibility.  *See Plata*, 563 U.S. at 511.
25 This Court should therefore deny Defendants' motion to modify because it does not satisfy
26 the requirements of Rule 60(b).
27 / / /
28 / / /

## III. Modification Is Not Warranted Under the PLRA.

In the alternative, Defendants briefly assert that modification is justified under the Prison Litigation Reform Act, because "in ordering the filing of the 2009 Staffing Plan, the Court did not make any findings sufficient to satisfy the PLRA's exacting standards, let alone findings to justify the 1:50 ratio in the Staffing Plan." *See* Mot. at 9. Defendants' PLRA argument is wrong for multiple reasons. First, only one of the three orders they cite after the sentence quoted above could plausibly be interpreted to have "order[ed] the filing of Defendants 2009 Staffing Plan," and that order (dated June 18, 2009) did not mandate the 1:50 ratio that Defendants claim it failed to adequately support. *See* 6/18/09 Order, ECF No. 3613 at 2 (ordering Defendants to "resolve all outstanding staffing allocation issues" and "complete a staffing plan by the end of August 2009"). Defendants chose that ratio, not the Court, reflecting the Court's appropriately deferential approach. They can hardly call foul now, nor can the Court be faulted for failing to make findings in an order that predated that choice. The Court does not read minds.

To the extent Defendants are claiming that the June 18, 2009 Order did not make the needed findings in support of its mandate that Defendants to formulate a staffing plan of any kind, their argument fails because it was an order issued for the purpose of implementing an existing remedy and therefore did not require new PLRA findings at all. *See Parsons v. Ryan*, 912 F.3d 486, 501 (9th Cir. 2018). So too with the other two orders cited by Defendants, which mandate that Defendants *adhere to* the 2009 Staffing Plan. *See* 10/10/17 & 5/18/15 Orders, ECF Nos. 5307 & 5711. These orders are not "prospective relief in response to *new* violations of federal rights" because they merely enforce a pre-existing prospective remedy. *Parsons*, 912 F.3d at 501. The constitutional violations the 2009 Staffing Plan was specifically designed to address have been established at least since 1995. *See* 10/10/17 Order, ECF No. 5711 at 2. Defendants have never remediated them, and certainly had not at the time of the 2009 Staffing Plan. *See id.* at 14-15. As a result, the Court's orders requiring adherence to the 2009 Staffing Plan did not require new PLRA findings. *Parsons*, 912 F.3d at 501. Nor did Defendants pursue appeals for any of

1  the alleged PLRA deficiencies they complain of now.

2      In fact, Defendants completely ignore the long line of this Court's orders finding
3  that Defendants' psychiatry staffing is constitutionally deficient and that one of the key
4  remedies for this deficiency is "full implementation of defendants' mental health staffing
5  plan." *See* 10/10/17 Order, ECF No. 5711 at 14-15 (quoting and citing earlier findings
6  from April 5, 2013 order, ECF 4539); *see also id.* at 1 (holding that "full compliance" with
7  the 2009 Staffing Plan is "necessary" for Defendants to "achieve compliance with the
8  Constitution"); 7/30/20 Order, ECF No. 6794 at 3 (describing the ratios in the 2009
9  Staffing Plan as "the minima necessary to meet [Defendants'] constitutional obligations").
10 Indeed, as this Court has repeatedly found, Defendants and their experts have both
11 conceded that the clinical staffing levels required by the 2009 Plan are necessary and
12 appropriate to meet constitutional minima. 10/10/17 Order, ECF No. 5711 at 15 (quoting
13 findings from April 5, 2013 order, ECF No. 4539). This is more than sufficient to satisfy
14 the PLRA.

15     Defendants also appear to suggest that the disclaimer they included in their court-
16 ordered 2009 Staffing Plan automatically absolves them of any responsibility for
17 complying with the Plan's requirements. The Court has already flatly rejected this
18 argument based on the fact that "the Staffing Plan was developed in response to a court
19 order to 'resolve all outstanding staffing allocation issues' to remedy an ongoing
20 constitutional violation." 10/10/17 Order, ECF No. 5711 at 16 n.5. But even if this were
21 not the case, Defendants' interpretation of the PLRA cannot possibly be right. A central,
22 overarching purpose of the PRLA is to ensure that federal courts provide states and local
23 governments with as much flexibility as possible while still ensuring that they satisfy their
24 constitutional obligations. *Cf. Plata*, 563 U.S. at 511. This is exactly what the Court did
25 when it permitted Defendants to develop their own Staffing Plan with assistance from the
26 Special Master, rather than ordering Defendants to comply with a plan they had no hand in
27 creating. Under Defendants' reading of the PLRA, the statute not only requires that courts
28 give defendants the freedom to formulate their own plans for constitutional compliance, it

also grants them unlimited discretion to insulate themselves from accountability simply by including boilerplate disclaimer language in their court-ordered remedial plans. This amounts to nullification, not the careful balance between flexibility and accountability the statute embodies. The PLRA cannot reasonably be interpreted to require such an absurd and constitutionally dubious result.

## CONCLUSION

Because Defendants' request for a substantial reduction in their staffing obligations is not warranted under Rule 60(b) or the PLRA, this Court should either deny their Motion or construe it as a request to adopt the March 4 Proposal in its entirety, as the parties and previously agreed would be appropriate.

DATED: August 10, 2021                Respectfully submitted,

                                      ROSEN BIEN GALVAN & GRUNFELD LLP

                                      By: */s/ Alexander Gourse*
                                          Alexander Gourse

                                      Attorneys for Plaintiffs