Rob Bonta, State Bar No. 202668
Attorney General of California
Damon McClain, State Bar No. 209508
Supervising Deputy Attorney General
Elise Owens Thorn, State Bar No. 145931
Namrata Kotwani, State Bar No. 308741
Deputy Attorneys General
 1300 I Street, Suite 125
 P.O. Box 944255
 Sacramento, CA 94244-2550
 Telephone: (916) 210-7318
 Fax: (916) 324-5205
 E-mail: Elise.Thorn@doj.ca.gov
*Attorneys for Defendants*

Hanson Bridgett LLP
Paul B. Mello, SBN 179755
Samantha D. Wolff, SBN 240280
Laurel E. O'Connor, SBN 305478
David C. Casarrubias, SBN 321994
1676 N. California Blvd., Suite 620
Walnut Creek, California 94596
Telephone:   925-746-8460
Facsimile:   925-746-8490
*Attorneys for Defendants*

Roman M. Silberfeld, State Bar No. 62783
Glenn A. Danas, State Bar No. 270317
Robins Kaplan LLP
 2049 Century Park East, Suite 3400
 Los Angeles, CA 90067-3208
 Telephone: (310) 552-0130
 Fax: (310) 229-5800
 E-mail: RSilberfeld@RobinsKaplan.com
*Special Counsel for Defendants*

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

# SACRAMENTO DIVISION

| | |
|---|---|
| RALPH COLEMAN, et al., <br><br>  Plaintiffs, <br><br> v. <br><br> GAVIN NEWSOM, et al. <br><br>  Defendants. | Case No. 2:90-CV-00520- KJM-DB <br><br> **DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO MODIFY THE 2009 STAFFING PLAN AS IT RELATES TO ON-SITE PSYCHIATRIC SUPERVISORS** <br><br> Judge:   Hon. Kimberly J. Mueller |

## INTRODUCTION

As the Court recently expressed at the August 4, 2021 status conference, "given all the good effort moving towards resolutions" in this case, the parties should avoid litigation when possible. August 4, 2021 Transcript of Proceedings, 6:21-22. That is precisely what Defendants sought to do before being forced to bring their narrow motion to modify the 2009 Staffing Plan to eliminate the current, unworkable, ratio of one "Senior Psychiatry, Supervisor" position for fifty MHCBs in MHCB units with more than six beds. ECF 7250. Defendants sought Plaintiffs' stipulation, and despite Plaintiffs' initial agreement to the substance of Defendants' proposal, Plaintiffs' ultimate rejection of the stipulation necessitated the instant motion.

In their opposition to Defendants' Motion, Plaintiffs do not dispute that Defendants worked collaboratively with Plaintiffs, the Special Master, and the Special Master's team, or that the new plan goes above and beyond the requirements of the 2009 Staffing Plan by *increasing* supervisory positions allocated to institutions by a total of 3.5 positions under current conditions. *See* ECF 7250-2 at 3 ¶¶ 5 & 6, Ex. A.[1] Rather, Plaintiffs confirm that they rejected Defendants' proposal and forced the parties into litigation simply because Defendants' proposed stipulation included a footnote stating that Defendants did not believe that the provisions in the stipulation were required to remedy a constitutional violation.

Likewise here, the crux of Plaintiffs' objection is not the substance of Defendants' plan itself. Plaintiffs support Defendants' plan. ECF 7268 at 4:3-6. Rather, Plaintiffs object on the basis that Defendants are only seeking court approval of one, or alternatively two, aspects of the plan. *Id.* at 4:6-12. Plaintiffs do not believe that Defendants will increase the number of chief psychiatrists beyond what the 2009 Staffing Plan requires without a court order, and on that basis, oppose Defendants' Motion. ECF 7250-2 at 3 ¶ 5. However, Plaintiffs do not even attempt to explain why Defendants' policy of assigning Chief Psychiatrists not only to institutions with an MHCB unit or "complex and multiple" mental health programs, but also to any other institution

---

[1] Citations to page numbers in documents filed in this action are to the page numbers assigned by the Court's Electronic Case Filing (ECF) system located in the upper right hand corner of the page.

with a mental health program, constitutes a modification of the 2009 Staffing Plan or requires court approval. Further, and as described in greater detail below, Plaintiffs' core premise that Defendants will fail to increase Chief Psychiatrist and senior psychiatry supervisor allocations without a court order is erroneous. Indeed, Defendants have already taken concrete steps to implement these changes, and are in the process of taking more, belying the core premise underlying Plaintiffs' opposition. (Supplemental Declaration of Dr. Amar Mehta, M.D. ("Supp. Mehta Dec.") at 2-3 ¶¶ 2-6, Ex. A.) Moreover, these increases are occurring at a time when CDCR's psychiatrist vacancy rate system-wide is just 8 percent statewide—below the 10 percent vacancy rate mandated by the Court.

In light of these changes, the current ratio of one "Senior Psychiatry, Supervisor" position for 50 MHCBs, which has always been operationally unworkable, is now also obsolete. The Court should grant Defendants' Motion and eliminate the 1:50 supervisor to MHCB ratio.

## ARGUMENT

As a threshold matter, Plaintiffs' argument that Defendants' proposed modification does not represent the totality of what was in the proposed March 4, 2021 stipulation (which Plaintiffs ultimately rejected) is irrelevant because Defendants are only required to seek court approval of a material modification of a remedial order in this case. Any other actions that Defendants take to improve their delivery of mental health care to the plaintiff class, that indisputably go above and beyond the constitutional minimum, can be taken at any time without court intervention. *See Bell v. Wolfish*, 441 U.S. 520, 562 (1979) ("[T]he inquiry of federal courts into prison management must be limited to the issue of whether a particular system *violates* any prohibition of the Constitution" (emphasis added)). Here, CDCR's new staffing allocation plan for Chief Psychiatrists and senior psychiatry supervisors goes above and beyond what is required by the 2009 Staffing Plan. Accordingly, the relief requested in Defendants' Motion is appropriately narrowed to only that portion of the parties' abandoned stipulation that *requires* court approval: elimination of the 1:50 ratio of Senior Psychiatry, Supervisors to MHCBs. Alternatively, and in an abundance of caution, to the extent that the Court considers Defendants' separate clarification of the definition of "large and complex" as inseparable from the immediate request to eliminate the

1:50 ratio, then Defendants further seek to modify the 2009 Staffing Plan to incorporate their clarification of the definition for "large and complex" included herein.

Defendants' request for modification is proper under Rule 60(b) as there are significant changed circumstances warranting elimination of the unworkable 1:50 ratio in the 2009 Staffing Plan, namely, increased staffing allocations for supervisory psychiatrist positions. The Court may also choose to exercise its discretion under the circumstances to grant Defendants' requested relief. Alternatively, request for modification is proper under 18 U.S.C. § 3626(b)(2), because the 1:50 ratio in the 2009 Staffing Plan was approved without a finding by the Court that the relief was appropriate under the Prison Litigation Reform Act (PLRA).

### A. Contrary to Plaintiffs' argument, modification of the 2009 Staffing Plan is warranted under Rule 60(b) because there is a significant change in circumstances, namely, increased staffing allocations for supervisory psychiatrist positions.

As Defendants explained in their affirmative motion, Rule 60(b)(5) allows for modification of a remedial order where there has been a significant change in factual conditions that make compliance with the order substantially more onerous. ECF 7250-1 at 6:7-8:19. That significant change in factual conditions here is CDCR's decision to clarify the "large and complex" criteria for the allocation of a "Senior Psychiatry, Supervisor" to include institutions that meet all of the following criteria: (1) Serve at least three different mental health program areas (CCCMS, STRH, LTRH, EOP, ASU, PSU, RC, and MHCB), excluding the PIPs; (2) A total mental health population of at least 900 patients, excluding patients in the PIP; and (3) A total of ten or more staff psychiatry positions allocated, including telepsychiatry, excluding positions allocated to the PIP. ECF 7250-2 at 2-3 ¶¶ 3 & 6, Ex. A. CDCR is also allocating an *additional* "Senior Psychiatry, Supervisor" position for every ten additional staff psychiatrists assigned to an institution that meets all other criteria. *Id.* Furthermore, on top of the Chief Psychiatrist position at institutions with an MHCB unit or "complex and multiple" mental health programs, CDCR is voluntarily exceeding the requirements of the 2009 Staffing Plan by additionally allocating a Chief

Psychiatrist position to any other institution with a mental health program.[2] *See id.*, at 3 ¶¶ 4 & 6, Ex. A.

      CDCR's new staffing allocation plan is a significant change in factual conditions that results in the overall allocation of more supervisory psychiatry positions. This change warrants modification because implementing the new allocation plan while also applying the 1:50 ratio would make compliance substantially more onerous. The new plan is not compatible with the current plan that results in inoperable fractional allocations. *Id.* at 2 ¶ 2; *see, also, Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367, 384-85 (1992) ("Modification of a consent decree may be warranted when changed factual conditions make compliance with the decree substantially more onerous").

      In opposition, Plaintiffs argue that "Defendants' Motion is premised on non-binding promises to increase supervisory psychiatrist allocations overall" (ECF 7268 at 9:10-11), and further argue that "Defendants have not met their burden of establishing a significant change in circumstances" (*id.* at 10:1-12:1). Plaintiffs similarly argue that Defendants' "unenforceable pledge to increase Chief Psychiatry allocations at some point in the future does not provide a basis to reduce their current staffing allocations." *Id.* at 13:1-15:19 (omitting title case capitalization). Plaintiffs are wrong on all accounts. First, Defendants' Motion is not premised on non-binding promises or uncertain future pledges, but the reality of CDCR's new and current plan. Indeed, Defendants' Motion is premised on a months-long plan to increase supervisory psychiatrist allocations that is well under way. *See* Supp. Mehta Dec. at 3 ¶ 6, Ex. A (On-Site Psychiatry Supervisory Model Timeline laying out tasks that have been completed through August 12, 2021 and next steps to be completed through October 1, 2021). For example, on July 1, 2021, CDCR took the first step in effectuating the new staffing model changes by completing standard 607s.[3]

---

[2] These changes, which Defendants have elected to take on unilaterally and that do more than what the Court requires of them, alternatively justify the court's exercise of its discretionary jurisdiction to grant the requested relief under Rule 60(b)(6). ECF 7250-1 at 8:20-9:4.

[3] Standard 607s are "Change in Established Position" forms that are used to document "[e]stablishment, amendment, or abolishment of positions, blanket positions, and other position-related transactions" for purposes of budgetary approval. *See*

*Id.* at 2 ¶ 2, Ex. A. Those staffing model changes included:

- Reclassifying 1.0 Senior Psychiatrist to 1.0 Chief Psychiatrist at ten institutions: ASP, CCI, CCWF, CRC, CTF, FSP, HDSP, NKSP, SCC & SVSP[4];
- Increasing existing Senior Psychiatrists time base from 0.5 to 1.0 at COR, RJD and SATF; and,
- Establishing new 1.0 Senior Psychiatrists at LAC, MCSP & SVSP.

That same day, CDCR also began updating corresponding duty statements and organizational charts to reflect the new staffing model changes. *Id.* From July 1 to July 19, 2021, CDCR's Deputy Director of Mental Health Services, Dr. Amar Mehta, M.D., held discussions with stakeholders to discuss the new staffing model changes, presented the changes to all CEOs and Regional Healthcare Executives, and informed institutional mental health leadership of the new plan. *Id.* at 2 ¶ 3, Ex. A.

Subsequently, on August 12, 2021, CDCR began advertising new Chief Psychiatrist and "Senior Psychiatrist, Supervisor" positions on statewide career websites www.calcareers.ca.gov and www.cchcs.ca.gov/careers/.[5] *Id.* at 2-3 ¶4, Ex. A. That same day, CDCR also initiated focused recruitment efforts with the workforce development unit (WDU). *Id.*

CDCR is also planning to interview candidates during the weeks of September 13-17 and 20-24, 2021 with a target candidate selection date of September 27, 2021. *Id.* at 3 ¶ 5. In sum, Defendants' new staffing allocation for Chief Psychiatrists and senior psychiatry supervisors is already well into the process of being implemented. Because Defendants have demonstrated that their plan is being executed and close to full implementation, Defendants have met their burden of

---

https://www.dgs.ca.gov/Resources/SAM/TOC/6000/6527 (last accessed on 8/15/2021).

[4] For the full name of these and other acronyms, see table of Acronyms and Abbreviations Used, *infra*.

[5] Current listings can be found on https://www.calcareers.ca.gov/CalHRPublic/Search/JobSearchResults.aspx#kw=chief%20psychiatrist (last accessed on 8/15/2021), https://www.calcareers.ca.gov/CalHRPublic/Search/JobSearchResults.aspx#kw=Senior%20Psychiatrist (last accessed on 8/15/2021), and https://cchcs.hodesiq.com/joblist.asp?CustomField_1770=49796 (last accessed on 8/15/2021).

establishing a significant change in circumstances.

Moreover, and contrary to Plaintiffs' argument, Defendants' demonstrated change in circumstances is significant and merits their requested modification of the 2009 Staffing Plan. While CDCR proposes eliminating the 1:50 ratio for the allocation of senior psychiatry supervisors, it is clarifying the criteria for allocating senior psychiatry supervisors at "large and complex" and allocating a Chief Psychiatrist to every institution with a mental health program. ECF 7250-2, Ex. A. Thus, whereas previously CDCR allocated 18 Chief Psychiatrists and 17.5 "Senior Psychiatry, Supervisors" statewide, under the new proposal CDCR would allocate (based on current population and programs at the institutions) 28 Chief Psychiatrists and 11 "Senior Psychiatry, Supervisors" statewide for a net gain of 3.5 supervisory positions. *See id.*, ¶ 5.

Furthermore, as noted in Defendants' Motion, clarifying the definition of "large and complex" does not materially modify the 2009 Staffing Plan because that term has never been specifically defined. Nonetheless, to the extent the Court considers that clarification inseparable from the immediate request to eliminate the 1:50 ratio, Defendants alternatively request that the Court modify the 2009 Staffing Plan to incorporate their clarified definition. ECF 7250 at 2 n.1; ECF 7250-1 at 2 n.1 & 7 n.4. As such, whether Defendants' definition of "large and complex" is construed as a clarification or a change, the Court should rely on it to grant Rule 60(b) relief.

Anticipating that the Court would see Defendants' clarification as a change in circumstances, Plaintiffs claim that such a change is not significant because it is "nothing more than a decision to take a basic step toward satisfying one of Defendants' existing obligations: operationalizing the existing 'Senior Psychiatrist, Supervisor' requirements in the 2009 Staffing Plan." ECF 7268 at 11:15-18. Plaintiffs' argument is off base.[6] Defendants' clarification of the definition of "large and complex" is significant because "Senior Psychiatry, Supervisor" allocations will now be guided by concrete criteria related to the delivery of mental health care

---

[6] Plaintiffs also argue against themselves, suggesting in another part of their opposition that Defendants' clarification should be treated as a "substantive modification" of existing requirements. ECF 7268 at 10.

-7- Case No. 2:90-CV-00520- KJM-DB
DEFENDANTS' REPLY ISO MOTION TO MODIFY 2009 STAFFING PLAN

rather than a fixed ratio that arbitrarily results in fractional allocations that are unlikely to be filled, and even if filled, would not provide meaningful assistance.[7] *See* ECF 7250-2 at 2 ¶¶ 2-3. In addition, these criteria, like a ratio, require the allocation of additional supervisory positions as the number of staff psychiatrist positions increase. Plaintiffs' related citation to *Coleman v. Brown*, 922 F. Supp. 2d 1004 (E.D. Cal & N.D. Cal. 2013) to attempt to undermine Defendants' showing of a changed circumstance is critically flawed. ECF 7268 at 8:26-9:2. Defendants' clarification of the criteria for "large and complex" is not "partial compliance with an existing obligation." *Id.* It is a new approach to implementing the "large and complex" criteria that will result in new supervisory positions at the institutions that need them, and complements the increase in the number of Chief Psychiatrist positions. Together, these changes, which result in increasing staffing allocations for supervisory psychiatrist positions, constitute a significant change in circumstances that warrants modification of the 2009 Staffing Plan under Rule 60(b).

**B.    Plaintiffs concede that a demonstrated increase in Chief Psychiatrist allocations throughout CDCR could be a basis for Defendants' requested elimination of the 1:50 ratio and modifying the "large and complex" criteria in a manner that reduces existing numbers of Senior Psychiatrist, Supervisors.**

Plaintiffs recognize that Defendants' new staffing allocation plan is sufficient to justify the elimination of the 1:50 ratio in the 2009 Staffing Plan under Rule 60(b). *See* ECF 7268 at 13:16-19. They just complain that no increase in Chief Psychiatrist allocations has occurred, or doubt that any such change would be durable. *Id.* at 13:24-26. To their first point, and as explained above and in the accompanying Supplemental Declaration of CDCR's Deputy Director of Mental

---

[7] To be clear, fractional allocations do not provide meaningful assistance to the institutions because, if filled, would only provide fractional assistance to the institution. For example, 0.2 of a Senior Psychiatrists, Supervisor position is currently allocated to SVSP. ECF 7250-2 at 2 ¶ 2. If that position were filled, and assuming the typical 40 hour work week, that supervisor would either work one 8 hour shift a week, or alternatively, work 1.6 hours a day. On its face alone, one can see why either scenario would not result in *meaningful* assistance to the mental health program at SVSP. The level of supervision that could be provided through such a fragmented work schedule is hard to contemplate, hence why Defendants' proposal does away with fractional allocations in favor of whole allocations that will actually be useful to those intuitions with supervisory needs.

Health Services – Division of Health Care Services, Dr. Amar Mehta, the implementation of all the provisions of Defendants' new staffing allocation plan is well underway. *See* Supp. Mehta Dec., *passim*, Ex. A. Job postings have been created and posted, and all CDCR stakeholders have been briefed and are preparing for the increase in allocations.[8] *See id.* In short, implementation of Defendants' new staffing allocation plan is well under way and Plaintiffs' reflexive skepticism is misplaced.

To their second point on durability, Plaintiffs miss the mark by relying on *Horne v. Flores*. ECF 7268 at 13:19-21. In *Horne*, the Court simply held that continued enforcement of an order was not only unnecessary, but improper, if a durable remedy had been implemented. 557 U.S. 433, 450 (2009). But Defendants are not asserting durability, nor are they required to, in order to justify its requested modification of the 2009 Staffing Plan. Rather, they have shown that modification is appropriate because implementing the new allocation plan while also continuing the 1:50 ratio would make compliance substantially more onerous. ECF 7250-1 at 6:13-14. That is all that is necessary. *Rufo*, 502 U.S. at 384-85 (modification is appropriate when changed factual conditions make compliance with an order substantially more onerous).

Plaintiffs separately attempt to undermine Defendants' new allocation plan by pointing to prior unfilled allocations and difficulties constructing additional bed space. ECF 7268 14:11-15:19. This argument is irrelevant. Their opposition ultimately rests on the false premise that Defendants won't actually increase Chief Psychiatrist and "Senior Psychiatry, Supervisors" positions. But these increases are well under way. Supp. Mehta Dec., *passim*. Moreover, these increases are occurring at a time when CDCR's psychiatrist vacancy rate system-wide is just 8 percent statewide—below the 10 percent vacancy rate mandated by the Court.[9] ECF 7235 at 4. The Court should grant Defendants' Motion.

---

[8] Other evidence reflecting Defendants' progress include the incorporation of the new staffing positions in the Governor's budget, and the allocation of eight additional telepsychiatry supervisors to help oversee the telepsychiatry program. *See* http://www.ebudget.ca.gov/2021-22/pdf/Enacted/GovernorsBudget/5210.pdf (last accessed on 8/16/2021) at PDF pp. 7, 41, 43, 44.

[9] Counting psychiatric nurse practitioners, the vacancy rate is 5 percent statewide, far below the 10 percent vacancy rate mandated by the Court. ECF 7235 at 4.

**C. Plaintiffs' attempt to place Defendants' requested modification in a vacuum and ignore the new staffing allocations is improper; Defendants' plan as a whole is suitably tailored to achieving the remedial purpose of the 1:50 ratio in the 2009 Staffing Plan.**

Plaintiffs further argue that because Defendants are not asking the Court to approve the entirety of Defendants' new staffing allocation plan, the Court must completely ignore those portions not subject to approval and consider Defendants' proposal in a vacuum. ECF 7268 at 15:20-17:26. In that vacuum, Plaintiffs say that Defendants are "*reducing* the number of supervisory psychiatric positions [they] are required to provide rather than *increasing* that number" thereby doing "the opposite of what Defendants' own analysis suggests is needed and exacerbat[ing] the problem" they are intending to fix. *Id.* at 15:27-16:1. This argument is misleading.

Defendants are not asking this Court to "approve a one-way ratchet" that only reduces "Senior Psychiatry, Supervisors." *Id*. at 9:7. Rather, Defendants are asking the Court to consider Defendants' Motion in the context of their new staffing allocation plan that, based on current population and programs at the institutions, has the effect of allocating 28 Chief Psychiatrists and 11 Senior Psychiatry, Supervisors statewide for *a net gain* of 3.5 supervisory positions. ECF 7250-2 at 3 ¶ 5. That is hardly a one-way ratchet. Instead, it is a good faith effort to improve Defendants' staffing allocation plan in a way that benefits the institutions providing critical mental health care to the plaintiff class. That certain portions of Defendants' new plan are not subject to a court order is irrelevant to analyzing the change in circumstance. No authority, either statutory or decisional, requires that a change underlying a Rule 60(b) motion be memorialized in a court order. And regardless, as Defendants have explained throughout, CDCR is currently taking concrete steps to increase Chief Psychiatrist allocations statewide.[10]

---

[10] In passing, Plaintiffs also attack the Declaration of Samantha D. Wolff as including an inaccurate assertion of the parties' positions leading up to the abandoned stipulation due to Defendants' request to include a reservation of rights. ECF 7268 at 7-8 n. 3. Plaintiffs misconstrue counsel's declaration, which solely focuses on Defendants' reservation of rights in footnote 1 of the March 4, 2021 proposal, not whether Plaintiffs and the Special Master would agree to reserve Defendants' rights to seek future modification based on changed circumstances. *Compare* ECF 7250-4 at 2 ¶ 2, *with* ECF 7268-1 at 2-3 ¶ 5.

In the alternative, Plaintiffs ask the Court to "construe [Defendants' Motion] as a request to adopt the March 4 Proposal in toto, including all three of its agreed upon substantive elements." ECF 7268 at 4:17-18. This request is improper, not only because such an affirmative request for relief in an opposition brief is procedurally incorrect and should be ignored, but also because any such resulting order would exceed the PLRA's needs-narrowness-intrusiveness mandate. *Interworks Unlimited, Inc v. Digital Gadgets, LLC*, 2019 WL 4570013 at *1 (C.D. Cal. June 11, 2019) (holding that a party "cannot seek affirmative relief by way of an opposition brief"); 18 U.S.C. § 3626(a)(1)(A).

Considering the entirety of Defendants' new staffing proposal, which results in a net gain of 3.5 supervisory positions throughout the state, there is a sufficient showing of a significant change in circumstances warranting modification of the 2009 Staffing Plan under Rule 60(b). That change is suitably tailored to advancing the remedial purpose of the 1:50 ratio in the 2009 Staffing Plan by ensuring adequate psychiatric supervision at institutions providing mental health care based on need rather than an arbitrary ratio. The change is also suitably tailored because it eliminates the absurd results of fractional allocations under the current system that are neither operationally feasible nor useful to the institutions. *See* ECF 7250-2 at 2 ¶ 2.

**D.     Plaintiffs fail to show why alternative relief under the PLRA is unwarranted.**

Finally, Defendants maintain that the Court has sufficient authority under Rule 60(b) to grant Defendants' requested modification. But, alternatively, the Court may grant Defendants' requested relief under the PLRA because the Court approved the 1:50 ratio in the 2009 staffing plan without the requisite findings of need, narrowness, and intrusiveness. ECF 7250-1 at 9:5-26.

The PLRA provides that "The court *shall not . . . approve* any prospective relief *unless* the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of a Federal right, and is the least intrusive means necessary to correct the violation of the federal right." 18 U.S.C. § 3626(a)(1) (emphasis added). Consistently, a defendant is entitled to immediate termination of prospective relief if the relief "was approved" in the absence of the aforementioned findings, which must be in the order awarding such relief. 18 U.S.C. §§ 3626(a)(1)(A), (b)(2); *see Miller v. French*, 530 U.S. 327, 346 (2000) (prospective relief granted

without findings required under the PLRA violates the statute); *Oluwa v. Gomez*, 133 F.3d 1237, 1239 (9th Cir. 2018) (holding that "before granting prospective injunctive relief, the trial court must make the findings mandated by the PLRA"). Plaintiffs do not dispute that the necessary findings were not made in the orders at issue: ECF Nos. 3613, 5307, 5711. *See* ECF 7268 at 18:15-23. Rather, relying on *Parsons v. Ryan*, they claim that a patchwork of prior orders satisfy the PLRA's finding requirements, and so the Court had no obligation to make "new" findings when approving the 1:50 ratio. *Id.* at 18:19-19:14. Plaintiffs' reliance on *Parsons* is misplaced because the Court there didn't even consider the application of 18 U.S.C. § 3623(b)(2) in a party's request to modify a remedial order. 912 F.3d 486, *passim* (9th Cir. 2018). Nor did *Parsons* purport to render the PLRA's express conditions precedent to new injunctive relief meaningless. But to the extent that the Court considers *Parsons*, that case *supports* Defendants' request for modification.

In *Parsons*, the Court held that a district court had made the requisite needs-narrowness-intrusiveness findings under the PLRA where it entered an order approving the parties' stipulation for prospective relief. First, "[i]n approving the Stipulation, the district court held '[b]ased upon the entire record in this case and the parties' Stipulation' that the Stipulation was 'necessary to correct the violations of the Federal right of the Plaintiffs." *Id.* at 501. As a result, the court's conclusion "necessarily required a finding of a constitutional violation—that is, if there was no violation of a federal right, there would be nothing for the Stipulation to 'correct.'" *Id.* Second, the Ninth Circuit also observed that when entering into their stipulation, the parties explicitly agreed that the "stipulation was necessary to correct violations of Plaintiffs' federal rights." *Id.*

Contrary to *Parsons*, the Court here did not include any language in its orders approving the 1:50 ratio that the ratio was being implemented "upon the entire record in this case" or in light of a stipulation that the parties agreed was "necessary to correct the violation of the Federal right of the Plaintiffs." *Id.* Quite the opposite. Defendants expressly included language that they did not believe "that the proposed staffing and services [were] constitutionally required, nor do they believe that th[e] Plan would satisfy the Prison Litigation Reform Act's requirements that prospective relief be narrowly drawn, extend no further than necessary to correct the alleged violation of the federal right, and be the least intrusive means necessary to correct the alleged

violation." ECF No. 3693 at 7 n.1. Nonetheless, the Court *approved* the 2009 Staffing Plan over such objections, and the 1:50 ratio included therein. As such, Defendants are entitled to immediate termination of the 1:50 ratio included in that plan because that relief "was approved" without the required PLRA findings. 18 U.S.C. § 3626(b)(2).

## CONCLUSION

Defendants are implementing CDCR's new psychiatric staffing allocation plan. In light of these changes, the current ratio of one "Senior Psychiatry, Supervisor" position for 50 MHCBs, which has always been operationally unworkable, is now also obsolete. As a result, the Court should grant Defendants' narrow motion to modify the 2009 Staffing Plan and eliminate the 1:50 ratio. The Court should also reject Plaintiffs' improper request to include all three aspects of Defendants' plan—including the increase of Chief Psychiatrist positions statewide—in a Court order, as this request is not properly before the Court. *See* ECF 7250 (Defendants' Notice of Motion and Motion); *Interworks Unlimited, Inc.*, 2019 WL 4570013 at *1.

## CERTIFICATION

In preparing this motion, Defendants' counsel reviewed the following Court orders relevant to the issues in this filing: ECF Nos. 3613, 7226, 3666, 3665, 5307, 5711.

DATED: August 17, 2021                    HANSON BRIDGETT LLP

By: ____*s/ Samantha D. Wolff*____
PAUL B. MELLO
SAMANTHA D. WOLFF
LAUREL E. O'CONNOR
DAVID C. CASARRUBIAS
Attorneys for Defendants

| | |
|---|---|
| 1  DATED: August 17, 2021 | Respectfully Submitted, |
| 2 | |
| 3 | ROB BONTA<br>Attorney General of California<br>Damon McClain |
| 4 | Supervising Deputy Attorney General |
| 5 | By: _____*s/ Elise Owens Thorn*_____<br>ELISE OWENS THORN |
| 6 | Deputy Attorney General<br>Attorneys for Defendants |

-14-   Case No. 2:90-CV-00520- KJM-DB

DEFENDANTS' REPLY ISO MOTION TO MODIFY 2009 STAFFING PLAN

17783657.7

**TABLE OF ACRONYMS AND ABBREVIATIONS USED**

| ACRONYM | FULL TEXT |
|---|---|
| ASP | Avenal State Prison |
| ASU | Administrative Segregation Unit |
| CCCMS | Clinical Correctional Case Management System |
| CCI | California Correctional Institution |
| CCWF | Central California Women's Facility |
| CDCR | California Department of Corrections and Rehabilitation |
| COR | California State Prison, Corcoran |
| CRC | California Rehabilitation Center |
| CTF | Correctional Training Facility |
| EOP | Enhanced Outpatient Program |
| FSP | Folsom State Prison |
| HDSP | High Desert State Prison |
| LAC | California State Prison, Los Angeles County |
| LTRH | Long Term Restricted Housing |
| MCSP | Mule Creek State Prison |
| MHCB | Mental Health Crisis Bed |
| NKSP | North Kern State Prison |
| PIP | Psychiatric Inpatient Program |
| PSU | Psychiatric Services Unit |
| RC | Reception Center |
| RJD | R. J. Donovan Correctional Facility |
| SATF | California Substance Abuse Treatment Facility and State Prison, Corcoran |
| SCC | Sierra Conservation Center |
| STRH | Short Term Restricted Housing |
| SVSP | Salinas Valley State Prison |