ROB BONTA, State Bar No. 202668
Attorney General of California
MONICA N. ANDERSON, State Bar No. 182970
Senior Assistant Attorney General
DAMON MCCLAIN, State Bar No. 209508
Supervising Deputy Attorney General
ELISE OWENS THORN, State Bar No. 145931
NAMRATA KOTWANI, State Bar No. 308741
Deputy Attorneys General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
Telephone: (415) 510-4431
Fax: (415) 703-5843
E-mail: Namrata.Kotwani@doj.ca.gov
*Attorneys for Defendants*

HANSON BRIDGETT LLP
PAUL B. MELLO, State Bar No. 179755
SAMANTHA D. WOLFF, State Bar No. 240280
LAUREL E. O'CONNOR, State Bar No. 305478
DAVID C. CASARRUBIAS, State Bar No. 321994
1676 N. California Boulevard, Suite 620
Walnut Creek, CA 94596
Telephone: (925) 746-8460
Fax: (925) 746-8490
E-mail: PMello@hansonbridgett.com
*Attorneys for Defendants*

ROMAN M. SILBERFELD, State Bar No. 62783
GLENN A. DANAS, State Bar No. 270317
ROBINS KAPLAN LLP
2049 Century Park East, Suite 3400
Los Angeles, CA 90067-3208
Telephone: (310) 552-0130
Fax: (310) 229-5800
E-mail: RSilberfeld@RobinsKaplan.com
*Special Counsel for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

**RALPH COLEMAN, et al.,**

Plaintiffs,

**v.**

**GAVIN NEWSOM, et al.,**

Defendants.

2:90-cv-00520 KJM-DB (PC)

**DEFENDANTS' OPPOSITION TO PLAINTIFF-INTERVENOR CHRISTOPHER LIPSEY'S NOTICE OF MOTION AND MOTION TO COMPEL**

Date: September 3, 2021
Time: 10:00 a.m.
Courtroom: 27, 8th floor ( or via videoconference)
Judge: Hon. Deborah Barnes
Trial Date:
Action Filed: April 23, 1990

## TABLE OF CONTENTS

**Page**

Introduction ........ 1

Argument ........ 3

I. The Implementation of Guard One is a Required Remedy Under the Law of This Case. ........ 3

II. Lipsey's Discovery into CDCR's Penological Interest in Using Guard One Has No Bearing on CDCR's Defenses........ 7

A. Lipsey's Claim Must Be Evaluated on a Deliberate Indifference Standard, Not the Deferential *Turner* Standard. ........ 7

B. The Disputed Elements of Lipsey's Discovery Requests Have No Bearing on the Issues of Deliberate Indifference or Whether Guard One Causes Excessive Noise. ........ 8

Conclusion ........ 11

# TABLE OF AUTHORITIES

**Page**

**CONSTITUTIONAL PROVISIONS**

United States Constitution
Eighth Amendment ........................................ *passim*

**CASES**

*Am. Civil Liberties Union v. F.C.C.*
523 F.2d 1344 (9th Cir. 1975)........................................ 3

*Bearchild v. Cobban*
947 F.3d 1130 (9th Cir. 2020)........................................ 8

*Coleman v. Brown*
756 Fed. App'x. 677 (9th Cir. 2018)........................................ 2, 3, 11

*Farmer v. Brennan*
511 U.S. 825 (1994)........................................ 8

*Gonzalez v. Arizona*
677 F.3d 383 (9th Cir. 2012)........................................ 3, 6

*Grenning v. Miller-Stout*
739 F.3d 1235 (9th Cir. 2014)........................................ 7

*Hofer v. Mack Trucks, Inc.*
981 F.2d 377 (8th Cir. 1992)........................................ 10

*Hudson v. McMillian*
503 U.S. 1 (1992)........................................ 8

*Johnson v. California*
543 U.S. 499 (2005)........................................ 7

*Turner v. Safley*
482 U.S. 78 (1987)........................................ 1, 2, 7

*United States v. Houser*
804 F.2d 565 (9th Cir. 1986)........................................ 3

*United States v. Jingles*
702 F.3d 494 (9th Cir. 2012)........................................ 3

## TABLE OF AUTHORITIES
**(continued)**

**Page**

**RULES**

Federal Rules of Civil Procedure
Rule 26 .......... *passsim*

**INTRODUCTION**

This Court has permitted Christopher Lipsey to intervene in this long-standing class action focused on the delivery of constitutionally adequate mental health care for one specific purpose—to pursue his claim that the Guard One monitoring system ("Guard One") causes sleep deprivation in violation of the Eighth Amendment to the United States Constitution. Lipsey's claim attacks Guard One, which is the monitoring system for conducting welfare checks on inmates in the California Department of Corrections and Rehabilitation's (CDCR) segregated housing units, because it allegedly produces excessive noise. His claim does not seek to overturn long-standing orders requiring twice–hourly welfare checks on inmates in segregated housing units, nor has he moved for a modification of the Court's remedial orders mandating the continued use of Guard One.

Lipsey's discovery related to a *Turner* penological-interest defense that he speculates CDCR will employ is irrelevant and unnecessary. This Court has issued multiple orders requiring that CDCR conduct regular welfare checks of inmates in segregated housing, and since 2015, the Court has approved and required full and continued use of the Guard One system to monitor welfare checks. The Special Master and the Court have already concluded that Guard One, a required remedy in this case, is an appropriate component of CDCR's suicide prevention program that protects inmates. The multiple orders approving the Guard One system as part of the remedy are incontrovertibly law of this case. Thus, there can be no actual dispute over whether there CDCR has a valid penological reason to utilize Guard One.

Lipsey's overbroad and burdensome discovery into the rationale for implementing Guard One and the possible existence of reasonable alternatives seems directed at an improper attempt to undermine and collaterally attack those prior Court orders that long ago settled the issue. If Lipsey is dissatisfied with the Court's previous rulings on Guard One and wants to launch a broad attack on Guard One's utility, he should file a motion seeking a modification of the Court's prior rulings, rather than threaten to bury Defendants in irrelevant discovery.

Moreover, Lipsey is wrong to focus his discovery on the deferential *Turner* standard of review. To meet his burden of showing an Eighth Amendment violation, Lipsey must establish two prongs of a "deliberate indifference" inquiry. He must show an "objective component" which shows that the noise produced by Guard One is unconstitutionally harmful, and a "subjective component" that shows that CDCR deliberately disregarded the risk of harm arising from Guard One. That is all.

Instead of focusing on the narrow purpose of his intervention and the straightforward deliberate-indifference standard that he must satisfy, Lipsey is engaging in a pointless discovery dispute that will not produce evidence relevant to his burden of proof or CDCR's defenses. Lipsey speculates that CDCR will attempt to defend against his Eighth Amendment claim by arguing under *Turner* that a violation of Eighth Amendment rights is permissible because CDCR has a penological interest in using Guard One to prevent inmate suicides. But this defense is not available to CDCR. If Lipsey were to establish that Guard One produces an unconstitutional level of noise and sleep deprivation, and that Defendants have been deliberately indifferent to that condition, the Eighth Amendment would *require* CDCR to appropriately address that condition to remedy the violation. CDCR could not defend against an Eighth Amendment violation by simply arguing that Guard One serves a legitimate penological interest. Thus, Lipsey's purported concern about a penological-interest "defense" is a red herring.

To the extent that the Court deems *any* discovery appropriate in this context, Defendants request that it be limited to the specific confines of Lipsey's claim—whether Guard One, in its current form, causes sleep deprivation in violation of the Eighth Amendment. Such limits are needed to avoid the unnecessary expense and burden on Defendants that would result from the re-litigation of issues that were long ago settled by this Court's rulings.

Lipsey is attempting to put CDCR in an impossible bind—either contradict the Court's rulings concerning Guard One by stipulating that Guard One serves no penological need, or deal with a mountain of irrelevant and burdensome discovery. His position completely ignores that CDCR was required to and has fully implemented Guard One welfare checks as part of the remedy in *Coleman*. CDCR cannot and will not stipulate that Guard One serves no penological

interest—in contradiction of this Court's rulings—merely because Lipsey threatens to abuse the discovery process if it will not do so.

## ARGUMENT

### I. THE IMPLEMENTATION OF GUARD ONE IS A REQUIRED REMEDY UNDER THE LAW OF THIS CASE.

Lipsey's argument for burdensome discovery concerning the penological value of the Guard One system is completely undermined by the Court's prior rulings in this case that Guard One is a necessary part of the class's remedy. Lipsey seeks this discovery with an eye toward neutralizing any defense put forward by Defendants that there is penological interest in using Guard One. But that issue is already settled under the law of this case. Following the law-of-the-case doctrine, this Court should refuse to "rexamin[e] an issue that has already been decided by the same court or a higher court, in the same case." *United States v. Jingles*, 702 F.3d 494, 499 (9th Cir. 2012); *Gonzalez v. Arizona*, 677 F.3d 383, 389 n.4 (9th Cir. 2012); *see also United States v. Houser*, 804 F.2d 565, 567 (9th Cir. 1986). The doctrine encourages the conservation of limited judicial resources and promotes consistency by allowing court decisions to govern the same issues in subsequent stages of the same case. *See Am. Civil Liberties Union v. F.C.C.*, 523 F.2d 1344, 1346 (9th Cir. 1975). This Court has issued no fewer than nine orders requiring CDCR to conduct regular welfare checks of inmates in segregated housing, and since 2015, approving and requiring full and continued use of the Guard One system to monitor the welfare checks. (*See* ECF Nos. 2061, 2039, 2084, 5258, 5271, 5429, 5762, 6212, and 6973.) The Court is "entitled to rely on its previous rulings in these areas, which ha[ve] become final, as the law of the case." *See Coleman v. Brown*, 756 Fed. App'x. 677, 678-79 (9th Cir. 2018).

Those rulings were based on reports from the Court's Special Master who first recommended that CDCR implement Guard One welfare checks in 2014, as part of its suicide prevention plan. Following the first monitoring and audit of welfare checks using Guard One, the Special Master and his expert have monitored CDCR's use of Guard One four times and continued to recommend that CDCR use Guard One to conduct security and welfare checks in segregated housing units and notably, have not, in any of their reports, found that the Guard One

system should be discontinued because it causes sleep deprivation.  (ECF Nos. 5258, 5259, 5395, 5396, 5671, 5672, 5993, 5994, 6879, and 6879-1.)  Because the Court's ruling that Guard One is a proper part of the remedy for class members is now law of the case, there is no valid basis for the overbroad and burdensome discovery that Lipsey seeks to compel concerning whether any penological interest in Guard One exists.

      As far back as 2014, the Special Master's expert found that the Guard One Policy "was a significant and commendable policy change" (ECF No. 5259 at 14) and the Special Master recommended that CDCR continue to use the Guard One security and welfare checks.  (ECF No. 5258 at 6.)  On January 14, 2015, the Special Master's suicide prevention expert recommended "[c]ontinued implementation and monitoring of the May 9, 2014 [Guard One] directive.") (ECF No. 5259 at 15.)  On February 3, 2015, the Court issued an order adopting in full the findings and recommendations in the Special Master's report (ECF No. 5271 at 3), including the recommendation that Defendants continue to implement the Guard One Policy (ECF No. 5258 at 6).

      The suicide expert's subsequent audit reports also reaffirm the role of Guard One welfare checks in CDCR's suicide prevention practices.  On January 13, 2016, the Special Master and his expert issued reports on the expert's Re-Audit Report that reaffirmed their recommendation to fully implement and use the Guard One process.  (ECF No. 5396 at 10.)  On April 5, 2016, the Court entered an order adopting in full the re-audit report.  (ECF No. 5429.)

      On September 7, 2017, the Special Master and his expert issued reports on the expert's second re-audit of CDCR's suicide prevention program.  (ECF No. 5672.)  The report describes the expert's inspection of the use of Guard One at Pelican Bay State Prison (*Id.* at 160), where he observed the Guard One checks and reported that: (1) based on conversations with numerous SHU inmates, with one exception, most seemed indifferent to Guard One; (2) the inmates subjected to Guard One had few, if any, complaints about excessive noise; and (3) the steps taken to mitigate excessive noise provided some reduction in the noise level, but the periodic flushing of toilets throughout the unit created more noise than the Guard One process.  (*Id.*)  On January 25, 2018, the Court entered an order adopting in full the findings and recommendations in the

Special Master's September 7, 2017 report, including the recommendation that Defendants continue to implement the Guard One Policy and that the Special Master continue to monitor its use. (ECF No. 5258 at 6.)

On November 5, 2018, the Special Master and his expert filed the expert's third re-audit report. (ECF No. 5994.) Although the report did not contain any further recommendations concerning Guard One, it noted that all toured institutions have implemented Guard One. On July 3, 2019, the Court adopted in full the expert's third re-audit report. (ECF No. 6212 at 14.)

On September 23, 2020, the Special Master and his expert filed their reports on the expert's fourth re-audit of CDCR's suicide prevention practices. (ECF No. 6879.) The Special Master's report requested that the Court order that Defendants are in compliance with recommendation No. 11 from the 2015 report that calls for CDCR to continue to use Guard One to monitor welfare checks. (ECF No. 6879.) On December 3, 2020, the Court entered an order adopting the fourth re-audit report in full and finding Defendants in compliance with Recommendation No. 11. (ECF No. 6973.)

Thus, audits of CDCR's suicide prevention practices demonstrate that the Special Master has rigorously monitored the Guard One system and submitted extensive reports to the Court about the system's effectiveness and recommending its continued use. Lipsey has access to the docket in this case, which includes the above-cited reports and findings that support the continued use of Guard One, and Defendants have also produced those reports to Lipsey. Indeed, the above-cited reports and orders speak directly to the material requested in response to Requests Nos. 35, 42 and 43. Lipsey contends that Request No 35[1] seeks to "determine whether Guard One in fact advances the interest in preventing suicide (ECF No. 7254 at 14);" Request No. 42

[1] Request No. 35 seeks documents "relating to any investigation, analysis, evaluation, or study of any impact on inmate suicides or attempted suicides caused or alleged to be caused by the Guard One system or welfare check program." "Request No. 42 seeks documents "concerning CDCR officers' compliance or lack of compliance with the welfare check program before the introduction of the Guard One system, including but not limited to any evidence of falsified records of welfare checks." Request No. 43 seeks documents "concerning compliance with the Guard One Order, including but not limited to communications with class counsel and internal communications regarding the requirements of the Guard One Order."

seeks to determine whether Guard One is "actually meant to solve a problem involving CDCR officers' failure to perform welfare checks," (*Id.* at 15); and Request No. 43 seeks to determine whether "Guard One is solving the problem it was introduced to solve." (*Id.* at 16.) The Court's orders and the Special Master's reports amply illustrate the rationale behind the implementation of Guard One—this is simply not an open question in this litigation. The only open question is whether Guard One causes constitutionally impermissible sleep deprivation. It is absurd to argue that implementing a suicide prevention measure that has been recommended by the Special Master and repeatedly ordered by the Court as a remedy in this case does not serve a legitimate penological interest. Taken to its logical end, Lipsey's position assumes that there is no valid purpose for the Court's Guard One rulings and that the Court's Guard One orders unnecessarily engineered an Eighth Amendment violation.

Lipsey's offer to withdraw the document requests at issue if CDCR would stipulate that Guard One serves no penological interest puts Defendants in an untenable bind. On the one hand, CDCR must diligently implement Guard One welfare checks as part of a Court-ordered remediation plan; on the other hand, unless CDCR concedes that Guard One serves no legitimate penological interest, Lipsey will bury CDCR with a deluge of burdensome discovery that has no bearing on his Eighth Amendment claim. This Court should not allow Lipsey to wield Rule 26[2] as a cudgel against CDCR to obtain information that is not relevant to his Eighth Amendment claim. Rather, the Court should preserve its long-standing rulings regarding Guard One's role in suicide prevention, and as a matter of law, treat Guard One as a remedy that serves a legitimate penological interest.

If Lipsey disagrees with the Court's rulings related to Guard One, he should file a motion seeking to modify those rulings. But to date, Lipsey has made no showing that Guard One's role as a Court-ordered remedy is improper because of an intervening change in the controlling case law, new material evidence, or a finding that the prior decision of the Court was clearly erroneous and would work manifest injustice. *Gonzalez*, 677 F.3d at 390 n.4.

[2] All further undesignated references to rules are to the Federal Rules of Civil Procedure.

## II. LIPSEY'S DISCOVERY INTO CDCR'S PENOLOGICAL INTEREST IN USING GUARD ONE HAS NO BEARING ON CDCR'S DEFENSES.

As this Court stated in its order permitting Lipsey's intervention, that intervention is "for the *limited* purpose of addressing his claim that Guard One causes sleep deprivation in violation of the Eighth Amendment to the United States Constitution." (ECF No. 6487 at 3 [emphasis added].) Lipsey argues that the discovery requests at issue are designed to ascertain whether CDCR has a *Turner* penological-interest defense. However, this issue is irrelevant to any defense CDCR might assert against Lipsey's Eighth Amendment claim. Thus, Rule 26(b)(1)'s prohibition on seeking irrelevant documents does not permit the requested burdensome discovery.

### A. Lipsey's Claim Must Be Evaluated on a Deliberate Indifference Standard, Not the Deferential *Turner* Standard.

Under the *Turner* standard, when a prison regulation impinges on certain constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests. *Turner v. Safley*, 482 U.S. 78, 89 (1987). Thus, *Turner* can be used as a defense when policies or regulations impinge on certain constitutional rights. Lipsey argues that his discovery is valid because CDCR will use the *Turner* defense if Lipsey proves that Guard One does violate his Eighth Amendment rights. But the *Turner* standard is not appropriate for adjudicating an Eighth Amendment violation. As the United States Supreme Court has confirmed: "we have not used *Turner* to evaluate Eighth Amendment claims of cruel and unusual punishment in prison. We judge violations of that Amendment under the 'deliberate indifference' standard, rather than *Turner's* 'reasonably related' standard. This is because the integrity of the criminal justice system depends on full compliance with the Eighth Amendment." *Johnson v. California,* 543 U.S. 499, 511 (2005)(internal citations omitted); *Grenning v. Miller-Stout*, 739 F.3d 1235, 1240 (9th Cir. 2014) (The *Turner* standard, "which requires only that prison regulations bear a reasonable relationship to a legitimate penological interest, is not used to evaluate Eighth Amendment claims.")

Lipsey's repeated speculation that CDCR might invoke the *Turner* "penological interest" defense to his Eighth Amendment claim only serves to muddy the waters and does not support his

demand for far-reaching, burdensome, and irrelevant discovery. Lipsey does not cite case law that states a showing of "penological interest" is an actual defense to Eighth Amendment violations (because there is no such defense).

In fact, Lipsey's discovery and CDCR's defenses should both be focused on the "deliberate indifference" inquiry. To evaluate a claim of harm under the Eight Amendment, the Court must find: (1) an "objective component" which shows "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation;" and (2) a "subjective" inquiry into whether prison staff acted "with a sufficiently culpable state of mind." *Bearchild v. Cobban*, 947 F.3d 1130, 1140 (9th Cir. 2020) (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)); *see also Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Lipsey brings an Eighth Amendment condition-of-confinement claim for sleep deprivation caused by excessive noise. Accordingly, he must make: (1) an objective showing that the noise made by the deployment of Guard One causes unconstitutional sleep deprivation; and, (2) a subjective showing that CDCR deliberately disregarded the risk of unconstitutionally excessive noise related to Guard One.

### B. The Disputed Elements of Lipsey's Discovery Requests Have No Bearing on the Issues of Deliberate Indifference or Whether Guard One Causes Excessive Noise.

Rather than tailoring his discovery to documents related to his simple excessive noise claim, Lipsey has manufactured a dispute involving a complex thicket of irrelevant issues—the relationship between suicide reduction and welfare checks (Request for Production[3] (hereinafter "Request") No. 35); the cost-benefit analysis regarding the adoption of Guard One (Request No. 36); cost of equipment used to implement Guard One (Request 41); non-compliance with welfare checks prior to the adoption of Guard One (Request No. 42); compliance with the Court's Guard One order (Request No. 43); training provided to personnel on suicide prevention and persons conducting such training (Request Nos. 45 and 56); and the suicide rate before and after the implementation of Guard One (Request Nos. 48-51).

[3] All references to Requests for document production refer to Lipsey's Third Set of Requests for Production served on June 3, 2021.

Assuming Lipsey is correct that the implementation of Guard One produces noise that results in unconstitutional sleep deprivation, *none* of the facts that would be borne out by the foregoing requests are relevant to that issue or Defendants' defenses to Lipsey's claim. If Lipsey could establish an unconstitutional level of noise and actual sleep deprivation related to Guard One, the Eighth Amendment would *require* CDCR to address that condition in some way to remedy the violation. Merely showing that Guard One was reasonably related to the penological purpose of conducting welfare checks would not relieve CDCR from its constitutional duty under the Eighth Amendment.

Further, Lipsey is mistaken that CDCR could point to a cost-benefit analysis to defend an Eighth Amendment violation. (ECF No. 7254 at 15.) Once an Eighth Amendment violation is established, the sunk cost of implementing Guard One or the cost of reasonable alternatives is immaterial—CDCR would be constitutionally bound to find a way to remedy the violation. Constitutionality is at issue here, not the expense of using Guard One or its alternative. Accordingly, Request No. 36[4] related to CDCR's "internal analyses of the costs and benefits of the Guard One System" and Request No. 41 related to the "the cost of CDCR's purchases of equipment used to carry out the Guard One system" are irrelevant and must be withdrawn.

Requests Nos. 35, 47-51, and 56 seek documents related to the issue of suicides in CDCR prisons which are irrelevant to Lipsey's claim concerning noise. Defendants are not shirking their duty of disclosure and are already responding to portions of those requests which deal with the sound produced by Guard One and Lipsey's Eighth Amendment claim. As shown below, Request Nos. 47-51 and 56 do not seek documents relevant to Lipsey' claim, *i.e.*, documents that establish facts regarding CDCR's deliberate indifference as more or less probable.

Request Nos. 47 and 56 seek documents that relate to suicide prevention training. Lipsey speculates that "the asserted penological interest in using Guard One to prevent suicide" makes

[4] Request No. 36 seeks documents "relating to the CDCR's adoption of the Guard One system, including but not limited to communications with class counsel, communications with the supplier or manufacturer of the Guard One system, internal analyses of the costs and benefits of the Guard One system, or other internal communications regarding adoption of the Guard One system." CDCR has agreed to produce all documents responsive to this Request, except for "internal analyses of the costs and benefits of the Guard One system." (ECF No. 7254 at 16.)

this request relevant because he needs to understand what Guard One adds to CDCR's efforts at suicide prevention. (ECF No. 7254 at 18.) To be clear, Lipsey misrepresents the record here. Defendants have not "asserted" a penological interest defense. That "defense" was manufactured by Lipsey out of whole cloth to support his overbroad discovery requests. Defendants' answer to Lipsey's complaint is clear on that point. (ECF No. 7005 at 5.) What is not clear is how suicide prevention training documents would actually answer the question of whether the sounds emitted from the Guard One system are sufficiently loud to cause sleep deprivation.

CDCR has thousands of correctional officers who undergo court-ordered suicide prevention training every year, training that the Special Master monitors and reports to the Court. Lipsey's request for production of documents related to suicide prevention training generally is overbroad as it calls for documents that have no connection to Guard One and therefore, are not relevant to Lipsey's claim. But Lipsey has also requested training documents related to welfare checks and Guard One usage, and Defendants are producing responsive documents to those requests without objection.

Lipsey's Requests Nos. 48-51 seek the production of all documents related to all attempted suicides and actual suicides in CDCR between the implementation of the welfare check program in 2006 and the present. These requests, overbroad on their face, cover a twenty-five-year time span. Lipsey asserts that these requests will be relevant to rebut "the Secretary's supposed penological interest in using Guard One to prevent suicides." (ECF No. 7254 at 19.) But as discussed above, this is not an available defense to Lipsey's Eighth Amendment claim.

Here, the disputed discovery requests stray far beyond the boundaries of the liberal scope and interpretation of Rule 26(b), which extends discovery to those matters which are relevant to any party's claims or defenses. "[This] often intoned legal tenet should not be misapplied so as to allow fishing expeditions in discovery. Some threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case." *Hofer v. Mack Trucks, Inc.,* 981 F.2d 377, 380 (8th Cir. 1992).

Because Lipsey's disputed document requests are completely unrelated to establishing his claim that the noise produced by Guard One violates the Eighth Amendment or that CDCR has been deliberately indifferent to unconstitutional sleep disruptions, this Court should not compel production.

**CONCLUSION**

Intervenor Lipsey has not shown that Request Nos. 35-36, 41-43, 47-51, and 56 seek documents relevant to the parties' Eighth Amendment claims and defenses. These requests exceed the discovery permitted under Rule 26(b)(1), in so far as they seek documents concerning CDCR's penological interest in implementing Guard One. It is the well-established law of this case that Guard One is a remedy necessary to protect the *Coleman* class.

Defendants respectfully request that the Court deny Lipsey's Motion to Compel documents responsive to Request Nos. 35-36, 41-43, 47-51, and 56. Nevertheless, should the Court find that any additional document production responsive to these Requests is appropriate, Defendants respectfully request that it be limited in scope to those inquiries that are directly necessary to resolve Lipsey's Eighth Amendment claim for prospective relief regarding unconstitutional sleep deprivation caused by Guard One.

DATED: August 20, 2021

ROB BONTA
Attorney General
DAMON MCCLAIN
Supervising Deputy Attorney General

By: */s/ Namrata Kotwani*
Namrata Kotwani
Deputy Attorney General

*Attorneys for Defendants*

DATED: August 20, 2021

HANSON BRIDGETT LLP

By: */s/ Samantha Wolff*
PAUL B. MELLO
SAMANTHA D. WOLFF
LAUREL E. O'CONNOR
DAVID C. CASARRUBIAS

*Attorneys for Defendants*