1                 UNITED STATES DISTRICT COURT
               EASTERN DISTRICT OF CALIFORNIA

2                       --oOo--

3 MATTHEW A. LOPES, JR.,    )
                       )

4              Special Master,)

5 _____)

6 RALPH COLEMAN,         ) Docket No. 90-CV-520
                       ) Sacramento, California

7           Plaintiffs, ) April 26, 2019
                      ) 10:07 a.m.

8      v.             )

9 GAVIN NEWSOM, ET AL,    ) Re: 1st Quarterly Status
                      )     Conference
         Defendants. )

10

11               TRANSCRIPT OF PROCEEDINGS
       BEFORE THE HONORABLE KIMBERLY J. MUELLER
          UNITED STATES DISTRICT JUDGE

12 APPEARANCES:

13 For the Plaintiffs:    ROSEN BIEN GALVAN & GRUNFELD, LLP by
                      MR. MICHAEL W. BIEN

14                       MS. LISA ELLS
                      101 Mission Street, Sixth Floor

15                       San Francisco, CA  94105

16

17

18

19

20             JENNIFER COULTHARD, RMR, CRR
              Official Court Reporter

21             501 I Street, Suite 4-200
              Sacramento, CA 95814

22             jenrmrcrr2@gmail.com
              (530)537-9312

23

24 Reported using mechanical steno - computer-aided transcription

25

```
 1   APPEARANCES (Cont'd):

 2   For the Defendants:       OFFICE OF THE ATTORNEY GENERAL by
                               MR. JAY C. RUSSELL
 3                             MR. ADRIANO HRVATIN
                               455 Golden Gate Avenue, 11th Floor
 4                             San Francisco, CA 94012
                               MS. ELISE THORN
 5                             MR. TYLER V. HEATH
                               1300 I Street, Suite 125
 6                             Sacramento, CA  95814
                               (916)324-8549
 7
     ALSO PRESENT:             OFFICE OF GOVERNOR GAVIN NEWSOM by
 8                             MS. KELLI M. EVANS
                               MR. REI ONISHI
 9                             1303 10th Street, Suite 1173
                               Sacramento, CA 95814
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1              SACRAMENTO, CALIFORNIA, FRIDAY, APRIL 26, 2019
 2                            --o0o--
 3        (In open court.)
 4              THE CLERK:  Calling civil case 90-520, Coleman,
 5   et al. v. Newsom, et al.  This is on for the first quarterly
 6   status conference.
 7              THE COURT:  All right.  Appearances, please, for the
 8   plaintiffs.
 9              MS. ELLS:  Good morning, Your Honor; this is Lisa Ells
10   and Michael Bien for the plaintiffs.
11              THE COURT:  All right.  Good morning to each of you.
12              MR. HRVATIN:  All right.  Good morning, Your Honor;
13   Adriano Hrvatin for the defendants.  Jay Russell --
14              MS. THORN:  Elise Thorn.
15              MR. HRVATIN:  -- and Tyler Heath is also present.
16              THE COURT:  All right.  Good morning to you.
17              MR. HRVATIN:  Good morning, Your Honor.
18              THE COURT:  Let me just ask is Ms. Musell present in
19   the audience?  All right.
20              MR. BIEN:  Excuse me, Your Honor.
21              THE COURT:  That's Dr. Golding's attorney.
22              MR. BIEN:  We spoke to Ms. Musell on the way up here.
23   She had a mediation she was unable to cancel.  She's available
24   by telephone on her cell phone and, you know, if the Court
25   wants her to call in or be -- participate, she can do that, but
```

1   she's sitting in another courthouse in a mediation.

2           THE COURT:  I don't need her to call in, but she'll

3   have a chance to weigh in on the neutral's report.

4           MR. BIEN:  Okay.

5           THE COURT:  And let's start there.  Really I just want

6   to talk about handling of the neutral's report initially.

7           It appears to the Court -- although, because I've been

8   in trial, I haven't had a chance to read the entire report, it

9   appears to the Court that it could be filed on the docket

10  without redaction.  But I'm going to give the parties and

11  Ms. Musell a chance to tell me if they disagree.  And so my

12  question is, is seven days sufficient to let me know if you

13  have any objection to the report being filed on the docket

14  without redaction?

15          MS. ELLS:  Yes, Your Honor.

16          THE COURT:  Who's taking the lead, Mr. Hrvatin?

17          MR. HRVATIN:  Thank you, Your Honor.  We have no

18  objection.

19          THE COURT:  All right.  And I will let Ms. Musell know

20  that as well.  If she needs more time, she can let me know.

21          All right.  And then I'm also looking for separate

22  substantive responses to the report.  And my thought is that

23  we'll have a special status before the next quarterly status to

24  discuss the import of the neutral's conclusions.  So is 14 days

25  sufficient for substantive responses or comments on the report,

1    Ms. Ells?

2             MS. ELLS:  Your Honor, we would appreciate 21 days, if

3    that's a possibility.

4             THE COURT:  All right.  So 21 days for the defendants.

5             MR. HRVATIN:  Your Honor, if it's possible, 30 days

6    would be preferable, just given various competing case matters.

7    Defendants would appreciate that accommodation.

8             THE COURT:  All right.  30 days for the purposes of

9    filing substantive responses to the neutral's report --

10            MR. HRVATIN:  Yes, Your Honor.

11            THE COURT:  -- that I will grant.  So there's a mutual

12   30 days.  And that will also apply to Ms. Musell.

13            But just so it's understood, assuming that the Court

14   concludes -- essentially I'm issuing an order to show cause

15   regarding the filing on the public docket.  So allowing 30 days

16   for the filing of substantive responses does not mean I'll

17   delay filing the report on the docket, if I conclude that's the

18   appropriate thing to do.  And then I will -- I'll schedule a

19   special status approximately 45 days out.

20            Let me ask is the governor's office represented here

21   today?

22            MR. HRVATIN:  Yes, Your Honor.  Our office represents

23   the governor in this matter, but there are representatives from

24   the Governor's Office present in the courtroom.

25            THE COURT:  All right.  I know there's been a change

 1    in who those representatives are.

 2            Could I at least know, as a courtesy, because the

 3    point in asking, I believe having clear representation from the

 4    current Governor's Office at that special status could be very

 5    helpful.

 6            MR. HRVATIN:  Yes, Your Honor.

 7            THE COURT:  And I see someone in the audience nodding

 8    their head.  Could I at least know who's in the audience

 9    representing the governor?

10            MS. THORN:  Hi, Your Honor; Kelli Evans.  I'm the

11    deputy legal affairs secretary for criminal justice.  Pleasure

12    to be here.

13            THE COURT:  All right.  All right.  Thank you for

14    being here.

15            MR. ONISHI:  Good morning, Your Honor; Rei Onishi also

16    in the Governor's Office of Legal Affairs.

17            THE COURT:  All right.  Your presence is acknowledged.

18    And I believe your presence will be important at the special

19    status that we have on the neutral's report.

20            All right.  I have nothing else on the neutral's

21    report.  Is there anything else either party would like to say

22    at this time?  I believe apart from handling of the report

23    there's nothing else I need to know, Ms. Ells?

24            MS. ELLS:  I guess, Your Honor, I think all we would

25    request is -- our position is, is that we think it's very clear

1    that the report can and should be made public and that actually

2    that is consistent with the Court's goals in this

3    investigation, to allow the public to understand what this

4    process looked like and what the results are.  So we would urge

5    you to -- first of all, if it's possible to just confirm today

6    that there is no objection from anybody, then we would urge you

7    to just move forward with putting it on the docket immediately.

8            We can represent to you that Ms. Musell's position is

9    that it should be public as well.  And you're welcome,

10   obviously, to call and confirm that with her.  She is available

11   today to speak.  We think it's a matter of great public

12   interest and we think that it is consistent with the Court's

13   mandate in having this investigation in the first place to get

14   it into the public eye as soon as possible.

15           THE COURT:  All right.  Well, let me just ask does the

16   defense know at this point?  Can it represent that it has no

17   objection to the filing on the public docket?

18           MR. HRVATIN:  Thank you, Your Honor.  I think our

19   clients would like an opportunity to review the -- it's an

20   extensive report and from the beginning I think defendants have

21   expressed their desire to be transparent in this process.  I am

22   not confident right now to confirm with the Court what our

23   position would be on the redaction process that the Court's

24   otherwise set forth with respect to this report, which is

25   similar to what the Court did in the first instance when

1   Dr. Golding's allegations were first published to give the

2   parties an opportunity to confer and determine whether there's

3   an agreement as to any issues with a redaction.  I think that

4   that process that the Court has laid out is appropriate here,

5   and we appreciate the opportunity to --

6           THE COURT:  Given the length --

7           MR. HRVATIN:  -- just give the report a little bit --

8           THE COURT:  I got it.

9           MR. HRVATIN:  Thank you.

10          THE COURT:  So I'll allow the 7 days and I'll allow

11  Ms. Musell to file a written notice of her nonobjection just to

12  confirm her position for Dr. Golding, and I believe she

13  represents one other person officially that may have a stake.

14  It would appear to the Court that the neutral approached the

15  preparation of the report in a way to eliminate the need for

16  redactions, so I'll just make that observation.  And there

17  is -- I believe the presumption of public access applies to the

18  report, but I would carefully consider any objections.

19          All right.  So anyone else on the report?  For the

20  defense?

21          MR. HRVATIN:  No, Your Honor.  Thank you.

22          THE COURT:  All right.  Let's talk about the other

23  matters I identified.  One is the deadline that's still out

24  there for submission of a final proposed addendum covering

25  exceptions to the 24-hour timeline for transfer to mental

1    health crisis bed care.  The appeal has been resolved for some

2    time now, and that means that the addendum, with exceptions,

3    needs to be finalized and submitted to the Court.  So do the

4    parties have a position on when that could be accomplished?  No

5    later than the next status; the next status, which is set

6    currently for September.  I mean, the Court believes this

7    issues should be resolved.

8              MS. THORN:  Your Honor, if I may.

9              THE COURT:  All right.  This is Ms. Thorn.

10             MS. THORN:  When the Court actually vacated the prior

11   deadlines for submission of the addendum and prior to that

12   order in December 2017, the parties had submitted a joint

13   statement with a proposed -- a draft of the proposed policy or

14   addendum for the transfer timelines for crisis beds.  In our

15   joint statement, we did present to the Court the need for some

16   additional work on some of the disputed issues in that draft

17   policy.

18             THE COURT:  That's my reference to the need for

19   finalizing.

20             MS. THORN:  Right.  So at this point we're prepared to

21   work with the special master and plaintiffs on those remaining

22   disputes.  And I'm not sure when the Court anticipates

23   setting -- the status conference you're referring to is the

24   September status conference?

25             THE COURT:  Currently we're holding the date of

1    September 13th with a possibility of continuation to September

2    27th, but in September for certain.

3              MS. THORN:  I think --

4              THE COURT:  So recognizing everything you've just said

5    and the need for a new firm deadline, I'm asking really your

6    input on what should the new deadline be for the finalizing of

7    the addendum.

8              MS. THORN:  It really depends, Your Honor, on our

9    ability to prioritize some of the issues that are pending in

10   this case.  I know the Special Master right now is actively

11   engaged in monitoring the institutions, and there are some

12   other issues we're dealing with through workgroups, so I think

13   we need to confer.  And it really depends on timing of when we

14   can get together and work through those disputed terms.

15             THE COURT:  But agreed that an addendum with the

16   exceptions finalized could be submitted in advance of the next

17   status so the Court could approve it by the time of the next

18   status?

19             MS. THORN:  Defendants believe so.

20             THE COURT:  Do the plaintiffs agree?

21             MS. ELLS:  Yes, Your Honor.

22             One point of clarification.  I think -- so part and

23   parcel of the discussion about the development of the

24   exceptions was that there would be an exchange of patient-level

25   data about how the applications -- how the exceptions were

1    being applied, which is a processes that we underwent with the

2    development of the in-patient exceptions that we found very

3    helpful to sort of work through some of the precise contours of

4    how these exceptions, the proposed exceptions that we were

5    negotiating, would play out in practice so that both sides

6    could sort of get comfortable before it is officially part of

7    the program guide that we're on the same page about how they

8    would function.  And particularly at this stage of the case we

9    feel like building that level of trust is very critical.

10          So we would just say that we are comfortable with the

11   time frame that the Court is describing so long as defendants

12   can commit to providing that kind of information, which is what

13   we had agreed upon before this all got waylaid due to the

14   appeal.

15          So defendants at that stage were developing the

16   reporting capabilities to both report to the Court consistent

17   with the format that they were using for the in-patient

18   exceptions, they didn't have that capability yet; and they were

19   also working on the capability of building reporting for the

20   individual patient-level details so that we could then utilize

21   those as the process of refining the exceptions, so --

22          THE COURT:  Can we just say that this -- within 7 days

23   you'll give me a stipulation of proposed order that sets an

24   exact schedule that provides for the sharing of information as

25   needed to finalize the addendum and then a date by which the

1    addendum will be presented to the Court in advance of September

2    13th?

3              MS. THORN:  Defendants are willing to work on that

4    with plaintiffs, Your Honor, yes.

5              THE COURT:  All right.  That way you can kind of take

6    account of everything else that's going on --

7              MS. THORN:  Yes.

8              THE COURT:  -- but put in place a schedule to keep you

9    focused on this on a paralegal track.

10             All right.  So I'll look for that within seven days.

11             On the question of unlicensed MHCBs, recognizing a

12   connection between this topic and the one we just discussed, at

13   this point I'm looking for clarification on the plans for

14   actual completion of permanent crisis bed units.  I know

15   there's a proposal embedded pending before me in connection

16   with the suicide prevention report, but I'm thinking back to

17   2017 when the defendants indicated there was a plan to build

18   100 new crisis beds in Southern California within the next four

19   years.  What I see now is that the Special Master has been

20   informed that approved and budgeted permanent crisis bed units

21   would be opened in 2022, so that looks like slippage of at

22   least a year.  I understand the proposal is 50 at CIM and 50 at

23   RJD permanent beds.  So at this point what I'm looking for is

24   details that will allow me to closely oversee your

25   operationalizing the actual building of those beds because when

1    I see approved and budgeted with the year 2022, that sounds not

2    necessarily as concrete as it needs to be, particularly given

3    the one-year slippage.  So can -- and maybe it's Ms. Thorn who

4    appears to be nodding her head, but can you tell me what is the

5    current status of the 100-crisis-bed project, the two 50-bed

6    units, if I understand that correctly, and what are the steps

7    needed to ensure those are made available if I have to accept

8    2022 at the latest?  What are the steps needed?

9         MS. THORN:  So at this point, Your Honor, defendants

10   are working through the normal legislative and budget process

11    for the final design and construction of those beds.  The

12    defendant -- CDCR is actually submitting preliminary plans to

13    the joint legislative budget committee by the end of this

14    month.  There will be some anticipated hearings concerning the

15    project, but CDCR continues to work on the plan as represented

16    to the Court in 2017.  At this time, we -- until we have the

17    final approved plans and budget in place -- and we have to wait

18    for the legislature to act on that -- we can't give any

19    concrete dates.  But certainly as those dates become available,

20    we will certainly report them to the Court.

21         THE COURT:  Well, here's -- I want to be more clear

22    about this going forward.  And in the past before this -- this

23    judge became the presiding judge in the case, I understand that

24    activation schedules were used, and I think we need to set in

25    place an activation schedule for these beds so it's not just

1  these status reports with the date slipping.  And so here my

2  tentative, you can tell me if this is -- this is unreasonable

3  before I confirm it, but I need detailed information from the

4  defendants on the statutory steps required to walk through to

5  ensure completion of those 100 beds as permanent beds that will

6  allow me to put in place an activation schedule that I can

7  monitor in a way a court can monitor.  And in a follow-up to

8  this hearing, I can cite to you some of the Court's prior

9  orders and portions of the record.  You may know what I'm

10  talking about better than I do.

11          MS. THORN:  I do, Your Honor.  I do, yes.

12          THE COURT:  All right.  So I'm talking about that

13  approach to closely monitor and ensure that this happens now so

14  that the Court can also set a date certain by which the

15  temporary beds are taken off-line.

16          MS. THORN:  Yes, Your Honor.  And so you anticipate

17  defendants submitting some sort of written outline of those

18  statutory steps --

19          THE COURT:  Yes.

20          MS. THORN:  -- to the Court?

21          THE COURT:  And I'd like to ask for those within 30

22  days.  And I will -- again, I'll issue, following this hearing,

23  a short order that makes very clear, I believe with reference

24  to those prior orders, what I'm looking for.

25          MS. THORN:  That's acceptable.  Thank you.

1     THE COURT:  All right.  Anything on this, Ms. Ells or

2     Mr. Bien?

3     MR. BIEN:  No, Your Honor.  We think -- we agree with

4     your approach.

5     THE COURT:  All right.  On the issue of therapeutic

6     treatment modules, the Special Master has brought to my

7     attention that there's a dispute there, a potential impasse, so

8     here's my question about that issue:  It seems to me there are

9     two ways to break what appears to be an impasse unless you tell

10    me otherwise:  Motion practice directed to this Court; or, if

11    the parties agree, given that there's a judge now available to

12    conduct some settlement discussions in certain areas of the

13    case, is this a question that should be referred to him, if

14    he's willing to accept that additional issue as a settlement

15    discussion topic?  I'm prepared to set a motion briefing

16    schedule or see if the settlement judge would accept referral

17    of this dispute.  What are the parties' thoughts, Ms. Ells,

18    Mr. Bien?

19    MR. BIEN:  Your Honor, the dispute is broader than

20    just whether or not defendants can use the treatment modules in

21    licensed, in-patient psychiatric units.  We've had an ongoing

22    dispute about defendants' use of the modules in their EOP

23    programs, the high security EOP programs, including the PSU and

24    the EOP ad seg hub units.

25    We had a tentative agreement that defendants would

1   begin an experiment pilot of treatment in the PSU outside of

2   treatment modules, and we would hope that we can get an

3   agreement that that plan would go back into effect.  If not,

4   then I think we are at an impasse because we were definitely

5   not agreeable to expanding the use of treatment modules.  Our

6   goal is to eliminate them or limit them as much as possible.

7               THE COURT:  I understand that.

8               MR. BIEN:  So we are willing to continue to negotiate

9   with defendants about this, and I think it would be valuable

10  and appropriate to do that rather than setting it for a motion

11  right now.

12              THE COURT:  All right.  So either self-mediation or at

13  least let the settlement judge know that this is a topic that

14  may come up; is that fair?

15              MR. BIEN:  Yes, Your Honor.  That's our position.

16              THE COURT:  All right.  Would defense agree with that?

17              MS. THORN:  No, Your Honor.  Defendants do not agree

18  with that.  We are aware that plaintiffs have had a

19  long-standing disagreement on the use of treatment modules.

20  Not withstanding their disagreement, treatment modules have

21  been used successfully and without harm to the patients in both

22  the EOP and the in-patient settings for many years.

23  Therapeutic treatment modules are used at CMF in the in-patient

24  setting as well as at Salinas Valley State Prison at the

25  in-patient setting.

1        It's important to note that the Special Master has

2   monitored both of those programs.  There are references to the

3   use of treatment modules in the Special Master's reports with

4   no indication that the use of those modules, in and of

5   themselves, have caused any harm to patients or have interfered

6   in any way in the provision of mental health services.  In

7   fact, they enhance the access to treatment for the max custody

8   patients.

9        THE COURT:  So is that a request for motion practice?

10        MS. THORN:  No, Your Honor, it's not actually even a

11   request for motion practice.  There is actually no standing

12   order precluding defendants' use of the treatment modules.

13   There has been long-standing use of the treatment modules, and

14   there's just no evidence to support any preclusion at this

15   point.

16        About a year and a half ago, in the fall of 2017, the

17   parties started discussing the use of the modules at CHCF

18   specifically for max custody patients solely.  The parties had

19   discussions and in January CDCR presented a proposed policy to

20   plaintiffs, and we haven't yet heard back their position on

21   that policy.  I know they represented that they would be

22   responding to that either this week or next week, and so we

23   believe that there's no motion warranted at this point.

24   Obviously that's plaintiffs' prerogative, but we'd like to hear

25   plaintiffs' response to the policy that we proposed, and we've

1    been waiting four months for that.  In the meantime, patients

2    at CHCF on max custody status are not able to leave their cells

3    as often as they should, and it's impacting their access to

4    care based on safety concerns.

5            THE COURT:  All right.  I understand the contours of

6    the dispute, and that's consistent with my understanding.  I

7    think it's clear that motion practice is not warranted,

8    plaintiffs agree, and I was aware that there was a defense

9    proposal outstanding.  At this point I just wanted to let you

10   know I'm aware of that issue and if this Court needs to resolve

11   a dispute, I will.  At this point I will assume you haven't

12   exhausted self-mediation efforts; and just as a courtesy, I'll

13   make certain the settlement judge knows about the issue, but

14   that's all I will do at this point.

15           If you want to provide me an update at the next status

16   in September, you may do that.  In terms of the next status in

17   September, I'll, again, issue a proposed agenda.  I'll try to

18   do it further in advance and give you an opportunity to let me

19   know if there are other issues you want to address at that

20   status.  I'll ask you now if you know there are things you

21   would like to address then.

22           In terms of some other housekeeping, just so you know,

23   I do anticipate issuing an order on the program guide fairly

24   shortly.  And as I've mentioned, I know the suicide report --

25   the Special Master's recommendation is pending.

1            Also, I understand someone -- I don't know if the

2     person is still in the audience -- someone attempted to provide

3     Ms. Schultz with documents; someone who's not a party.  Just to

4     clarify procedures, the Court does, at times, receive in camera

5     documents in this case.  I have standard proceeds for handling

6     them.  Typically, if someone wants to submit something in

7     camera, they may do that through the Clerk's Office on the

8     fourth floor.  If the person is still present, I would make an

9     exception and allow Ms. Schultz to receive that simply to give

10    it to me.  It doesn't mean I'm going to consider the documents.

11    I think carefully about whether or not I consider them, provide

12    them to the Special Master, provide them to the parties.

13            So anything else we should discuss today or that you

14    want to put on the agenda for September based on what you now

15    know, Ms. Ells, Mr. Bien?

16            MR. BIEN:  Your Honor, in -- whether we can include

17    this in the substantive response to the Neutral Expert report,

18    there are -- as you know, there are many issues raised in

19    Dr. Golding's report that were not referred by the Court to the

20    Neutral Expert.

21            In addition, the Neutral Expert himself has suggested

22    that the parties need to address various issues, but there are

23    many policy issues that were not referred to the Neutral Expert

24    that have not moved forward in response to the Court's guidance

25    to let the neutral experts move forward first, so I think those

1    are very critical issues of patient care, patient safety that

2    need to be addressed as soon as possible, and we would urge

3    that those move up on -- I know there are a lot of issues

4    pending, but I think that Dr. Golding raised some very critical

5    issues.  Nothing in the Neutral Expert's report has lessened

6    these issues' importance or found anything about Dr. Golding's

7    report to be less than fully credible, so these issues remain,

8    and I think they need to be moved up in terms of, you know, the

9    role of the psychiatrists in the treatment team, various other

10   patient safety issues, and that's the one thing I think would

11   need to be addressed sooner than later.

12            THE COURT:  In the briefing due in 30 days, you could

13   identify those issues.

14            MR. BIEN:  Okay.

15            THE COURT:  Just include a separate section if the

16   defense also believes there are issues that should be resolved

17   and we'll bundle all those up and discuss them at the special

18   status to be set in 45 days.

19            MR. BIEN:  Thank you, Your Honor.

20            THE COURT:  All right.  Anything further, Ms. Ells,

21   Mr. Bien?

22            MS. ELLS:  No.  Thank you, Your Honor.

23            THE COURT:  Anything further today for the defense?

24            MR. HRVATIN:  No, Your Honor.  Thank you.

25            THE COURT:  All right.  I'll issue the short order I

 1   mentioned just clarifying what I'm asking for in terms of the

 2   statutory steps.  You're going to get me a proposed stip and

 3   order.  I'll see you in about 45 days and then also in

 4   September.  All right.  Thank you.

 5        (Concluded at 10:35 a.m.)

 6

 7                    C E R T I F I C A T E

 8

 9        I certify that the foregoing is a true and correct

10   transcript of the record of proceedings in the above-entitled

11   matter.

12

13   _____        August 25, 2021
     JENNIFER L. COULTHARD, RMR, CRR              DATE
14   Official Court Reporter

15

16

17

18

19

20

21

22

23

24

25