SHAWNA BALLARD, State Bar No. 155188
KATE FALKENSTIEN, State Bar No. 313753
Reichman Jorgensen Lehman & Feldberg LLP
  100 Marine Parkway, Suite 300
  Redwood Shores, CA 94065
  Telephone: (650) 623-1401
  Fax: (650) 623-1449
  Email: sballard@reichmanjorgensen.com
         kfalkenstien@reichmanjorgensen.com

BRIAN C. BARAN, State Bar No. 325939
Reichman Jorgensen Lehman & Feldberg LLP
  1710 Rhode Island Ave NW, 12th Floor
  Washington, DC 20036
  Telephone: (202) 894-7310
  Fax: (650) 623-1449
  Email: bbaran@reichmanjorgensen.com

*Attorneys for Plaintiff-Intervenor Christopher Lipsey*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **RALPH COLEMAN, et al.**<br><br>Plaintiffs,<br><br>v.<br><br>**GAVIN NEWSOM, et al.,**<br><br>Defendants. | Case No. CIV S-90-0520 KJM DB P<br><br>**PLAINTIFF-INTERVENOR CHRISTOPHER LIPSEY'S REPLY IN SUPPORT OF MOTION TO COMPEL**<br><br>Hearing Date: Sept. 3, 2021<br>Time: 10:00 a.m.<br>Courtroom: 27, 8th fl. (or videoconference)<br>Judge: Hon. Deborah Barnes<br>Action Filed: April 23, 1990 |

More than two months ago, Plaintiff-Intervenor Christopher Lipsey offered to withdraw the discovery at issue in this motion if Defendant Kathleen Allison agreed not to argue that the penological interest in using Guard One somehow affects Lipsey's Eighth Amendment claim that the noisy Guard One system subjects him to unconstitutional sleep deprivation. Defendant refused, explaining that she would not waive her "potential arguments" based on the supposed need to use Guard One to prevent suicides. Now, after Lipsey filed this motion, Defendant has pivoted, feigning confusion about why Lipsey would ever have thought she might assert a defense based on a penological interest in using Guard One—the very defense she refused to waive after Lipsey repeatedly requested she do so in order to narrow the scope of discovery.

Lipsey remains confused about Defendant's position on the relevance of Guard One. While she is now apparently disavowing any argument that a penological interest could justify a violation of Lipsey's Eighth Amendment rights, she appears to be reserving the right to argue that the effectiveness of and need for Guard One is somehow relevant to Lipsey's claim or her defenses. Indeed, even now, she asks this Court to, "as a matter of law, treat Guard One as a remedy that serves a legitimate penological interest." Opp. to Mot. to Compel ("Opp."), ECF No. 7280, at 6. If Defendant contends that the effectiveness of Guard One in preventing suicides or some other interest in using it to record welfare checks is relevant to her defenses to Lipsey's claim in any way—no matter how Defendant characterizes her resulting argument based on that factual contention—then discovery into those factual issues is also relevant.

Aside from her pivot on relevance, Defendant's only other argument is that it is already the "law of the case" that Guard One is effective in preventing suicides, because the Court ordered the use of Guard One. But the "law of the case" is a completely discretionary doctrine, and courts regularly reconsider their own rulings when the facts change or the interests of justice so demand—especially in long-standing remedial proceedings like this one, in which courts must continue to review and reassess the necessary relief. Here, the Court already signaled its willingness to reevaluate this issue when it granted Lipsey's intervention and permitted discovery for the very purpose of reevaluating the use of Guard One in light of Lipsey's constitutional claim. And in any event, this Court has *not* previously ruled that Guard One is effective in

1

preventing suicides. It has merely ordered the use of Guard One, without adjudicating its effectiveness, while adopting underlying expert reports that contain evidence both for and against the effectiveness of the Guard One recording system. Whether Guard One is an effective method of preventing suicides—let alone the only reasonably effective option—remains an open question, and to the extent Defendant will rely on factual assertions about Guard One's effectiveness as part of her defense to Lipsey's claim, discovery into that issue is appropriate and necessary.

**ARGUMENT**

I.   **Defendant Has Taken Contradictory Positions About the Relevance of Any Asserted Penological Interest in the Use of Guard One.**

At times, Defendant appears to concede that she will not argue that her interest in using Guard One affects the Eighth Amendment analysis. She claims that Lipsey need only "establish the two prongs of a 'deliberate indifference' inquiry," and "[t]hat is all." Opp. at 2. Defendant deems it "speculat[ion] that CDCR will attempt to defend against [Lipsey's] Eighth Amendment claim by arguing under *Turner* that a violation of Eighth Amendment rights is permissible because CDCR has a penological interest in using Guard One to prevent inmate suicides." Opp. at 2. Defendant then proclaims that "this defense is not available to CDCR" and that "CDCR could not defend against an Eighth Amendment violation by simply arguing that Guard One serves a legitimate penological interest." Opp. at 2; *see also id.* at 7-8 (arguing that "a showing of 'penological interest'" is not "an actual defense to Eighth Amendment violations"); *id.* at 9 (apparently conceding that "if Lipsey could establish an unconstitutional level of noise and actual sleep deprivation related to Guard One," action would have to be taken "to remedy the violation" no matter "the penological purpose of conducting welfare checks").

Lipsey agrees with Defendant's position as stated in these portions of her brief. Lipsey is of course not trying to invent new defenses for Defendant that she does not intend to assert. If this were Defendant's final position on the matter, it would seem the parties are now in agreement: just as Lipsey requested, Defendant "will not argue that the penological interest in

conducting welfare checks using Guard One affects the Eighth Amendment analysis." *See* Ex. B to Mot., ECF No. 7254-3, at 3. As a few examples, she will not argue that the noise caused by Guard One is somehow justified by its effectiveness in preventing suicides, or that there were no other viable methods of ensuring that correctional officers complied with the welfare check policy (leaving Guard One as the only reasonable choice). Taking Defendant at her word, all parties agree that those sorts of assertions would have no bearing on Lipsey's burden—to show only that the use of Guard One is unconstitutionally harmful and that Defendant deliberately disregarded that risk of harm. If that is Defendant's position, the parties are in agreement.

But Defendant's refusal to agree to Lipsey's proposed stipulation, and her arguments elsewhere in her brief, raise doubts.

First, if Defendant truly does not plan to make any arguments based on the supposed penological interest in using Guard One, Lipsey is baffled why she did not agree to his proposed stipulation all along, obviating the need for this motion. As Lipsey explained in correspondence with Defendant in June, he "included requests for production related to the efficacy of Guard One and the availability of reasonable alternatives because [he] believe[d] [Defendant] may argue that the penological need to use Guard One . . . bears on Lipsey's Eighth Amendment claim."[1] ECF No. 7254-3 at 3. For example, Lipsey was concerned that Defendant might argue that the use of Guard One was somehow justified "because it is the most effective or most practical way or conducting welfare checks, or because it is necessary or effective in preventing suicides." *Id.* Lipsey offered to withdraw the discovery requests at issue in this motion if Defendant did not "intend to make such arguments." *Id.* But rather than disavow such arguments, Defendant's counsel unambiguously stated that he was "not willing to enter into a broad-based stipulation waiving potential arguments in this case." ECF No. 7254-6. Defendant's counsel never rescinded that position, and indeed, Defendant *still* has not agreed to the stipulation.[2] Her refusal

---

[1] This concern originally arose because of language in *Grenning* suggesting, without resolving the legal question, that a defendant might be able "to defeat an Eighth Amendment conditions of confinement claim at summary judgment by showing a legitimate penological interest." *Grenning v. Miller-Stout*, 739 F.3d 1235, 1240 (9th Cir. 2014).

[2] Perhaps Defendant believes she *could* not agree to the stipulation because it somehow
(continued…)

1  to do so calls into question whether she still somehow intends to rely on an asserted penological
2  interest in using Guard One.

3       Second, even in this briefing, Defendant undermines her own promises not to rely on a
4  penological interest as some sort of defense when she argues that the Court should, "as a matter
5  of law, treat Guard One as a remedy that serves a legitimate penological interest."  Opp. at 6.
6  Lipsey addresses the merits of this "law of the case" argument in Part II of this brief below.  But
7  as an initial matter, this argument calls into question Defendant's promise that she will not rely on
8  a penological interest in using Guard One as some sort of defense to Lipsey's claim.  In one
9  breath, Defendant promises that she will not defend against Lipsey's claim by reference to the
10 supposed penological interest in using Guard One.  But in the next, she asserts that there is just
11 such a penological interest and that the Court should *somehow* rely on it.

12      Lipsey is genuinely confused about Defendant's position.  Defendant apparently believes
13 that the asserted penological interest is somehow relevant to Lipsey's claim—why else would she
14 ask the Court to conclude as a matter of law that Guard One serves a penological interest, and
15 why would she refuse to agree to the straightforward stipulation Lipsey proposed?  The ultimate
16 question here is whether Defendant intends to rely upon a specific factual contention: that Guard
17 One is effective in preventing suicides or otherwise penologically necessary.  If so, the disputed
18 discovery is relevant.  As best Lipsey can understand, Defendant is now rejecting at least a
19 particular characterization of how she might rely upon the alleged effectiveness of Guard One as
20 a defense under *Turner*.  But that position is not necessarily a wholesale rejection of her potential
21 reliance in some form on the underlying factual contention that Guard One is effective or
22 necessary to prevent suicides.  Based upon Defendant's refusal to stipulate and her request that
23 the Court conclude as a matter of law that Guard One serves a legitimate penological purpose,

---

would have required her to "contradict the Court's rulings concerning Guard One by stipulating that Guard One serves no penological need."  Opp. at 2.  Defendant never raised this concern about the proposed stipulation in conferring with Lipsey; counsel's position was that Defendant would not agree to the stipulation because she would not "waiv[e] potential arguments" in her favor.  ECF No. 7254-6.  In any event, Lipsey did not ask Defendant to stipulate that there *is* no purpose to using Guard One.  Rather, Lipsey asked Defendant to stipulate that *she would not argue* that any such penological interest affected the Eighth Amendment analysis.  ECF No. 7254-3 at 3.  That decision is fully within her control as a matter of litigation strategy.

1   Lipsey is concerned that Defendant still intends to somehow rely upon the effectiveness of Guard
2   One as a relevant fact, rendering discovery into that factual question necessary.  If, based on the
3   statements in her brief, the Court will bar Defendant from relying on the effectiveness of or need
4   for Guard One in any form, then Lipsey would not demand the discovery at issue in this motion
5   (as he offered to Defendant all along).  But if that door remains open, the discovery remains
6   relevant.

**II.     The "Law of the Case" Doctrine Is Not a Justification to Withhold Discovery Relevant to Lipsey's Claim.**

Having first claimed it is irrelevant whether Guard One is effective in preventing suicides, Defendant next argues that is it already the "law of this case" that Guard One "is an appropriate component of CDCR's suicide prevention program that protects inmates."  Opp. at 1.  Defendant does not cite any law applying the "law of the case" doctrine to limit relevant discovery, merely asserting that "there can be no actual dispute" about whether Guard One is appropriate and effective in preventing suicides because the Court ordered the use of Guard One.  *Id.*; *see also id.* at 6 (claiming it is "absurd to argue" that a Court-ordered suicide prevention measure "does not serve a legitimate penological interest," because to do so would suggest that the Court's order was flawed).

Lipsey does not dispute that the Court ordered the use of Guard One based on the recommendations of the Special Master and his expert, nor that the Special Master and his expert have continued to recommend use of Guard One.  *See* Opp. at 3-6.  But those reports do not constitute proof—let alone irrebuttable proof, overriding any need for further discovery—that Guard One prevents suicides.  Defendant may rely on the Special Master's expert's reports and testimony as evidence to the extent they bear on the effectiveness of Guard One.  And in turn, Lipsey may respond with his own evidence, after taking reasonable discovery on the issue.

The "law of the case" does not require otherwise: it is merely a discretionary doctrine that leaves the Court free to reevaluate its own orders.  The "doctrine is discretionary, not mandatory." *United States v. Houser*, 804 F.2d 565, 567 (9th Cir. 1986).  The Court may reevaluate its rulings

1  "if a showing is made which compels [the court] to reconsider [its] prior decision." *Id.* at 568.
2  For example, courts often decline to apply the "law of the case" doctrine if an earlier "decision is
3  clearly erroneous and its enforcement would work a manifest injustice" or there is "substantially
4  different evidence" "at a subsequent trial." *Gonzalez v. Arizona*, 677 F.3d 383, 389 n.4 (9th Cir.
5  2012); *Houser*, 804 F.2d at 568.[3]  Indeed, courts regularly do reconsider their orders in long-
6  standing remedial proceedings like this one. *See, e.g.*, *Brown v. Plata*, 563 U.S. 493, 516 (2011)
7  ("When a court attempts to remedy an entrenched constitutional violation through reform of a
8  complex institution, such as this statewide prison system, it may be necessary in the ordinary
9  course to issue multiple orders directing and adjusting ongoing remedial efforts."); *Horne v.*
10 *Flores*, 557 U.S. 433, 447-48 (2009) (noting that injunctions in "institutional reform litigation"
11 "often remain in force for many years, and the passage of time frequently brings about changed
12 circumstances—changes in the nature of the underlying problem, changes in governing law or its
13 interpretation by the courts, and new policy insights—that warrant reexamination of the original
14 judgment").  That makes sense: as a court supervises complicated remedial programs over the
15 course of decades, it might need to iterate to find the best way to solve a problem, especially if the
16 initial attempt to do so has inadvertently given rise to another constitutional concern.

17      This is just such a situation.  Lipsey understood the Court to be open to potentially
18 reevaluating its order mandating the use of Guard One.  Defendant characterizes Lipsey's
19 discovery as an attempt to "collaterally attack those prior Court orders that long ago settled the
20 issue" of using Guard One.  Opp. at 1.  Yes—Lipsey believes that the use of Guard One violates
21 his constitutional rights, and he understood the very point of his intervention and this discovery to

---

[3] Defendants acknowledge this line of cases but object that Lipsey has not yet "file[d] a motion seeking modification of the Court's prior rulings, rather than" seeking discovery. Opp. at 1, 6.  But to file a motion to modify the existing orders before or instead of discovery would put the cart before the horse.  The point of the discovery—which the Court authorized—is to reveal the facts that will show whether the current use of Guard One violates Lipsey's rights.  Defendant criticizes Lipsey for, "to date," having made no showing that he falls within the exceptions to the "law of the case" doctrine outlined in *Gonzalez*. Opp. at 6 (emphasis added).  But the discovery at issue in this motion is the vehicle to *find* any such "new material evidence" so that the Court may adjudicate whether its prior order requires modification.  With that information, the Court can then evaluate Lipsey's constitutional claim on the merits and modify its existing orders if necessary.

be to evaluate whether to continue mandating the use of Guard One or instead to modify the Guard One orders to protect Lipsey's Eighth Amendment rights. The Court granted Lipsey's intervention after establishing that Lipsey wanted to intervene "concerning the particular order, the 2015 order mandating Guard One checks" and noting "that perhaps the specific issue that Mr. Lipsey is raising hasn't gotten the kind of laser focus it needs." Feb. 26, 2020 Hearing Tr. at 5:5-19, 6:14-23; *see also* ECF No. 6487 at 3 (noting "that Lipsey's claim, that the implementation of Guard One causes sleep deprivation in violation of the Eighth Amendment, presents a question of law and fact directly relevant to the implementation of the remedial plan in this case"). The Court then authorized discovery, over Defendant's objection, to issues relevant to Lipsey's Eighth Amendment claim. ECF No. 7191. If the Court considered the use and necessity of Guard One completely settled questions, there would be no point to Lipsey's intervention or this discovery.

In any event, it is not the "law of the case" that there is a penological interest in using the Guard One system to record welfare checks, that they are effective in preventing suicides, or that the Guard One recording mechanism is the only reasonably effective recording mechanism for the welfare checks. The "law of the case" doctrine applies when "the issue in question" has been "decided explicitly or by necessary implication in [the] previous disposition." *United States v. Jingles*, 702 F.3d 494, 500 (9th Cir. 2012) (quoting *United States v. Lummi Indian Tribe*, 235 F.3d 443, 452 (9th Cir. 2000) (alteration in original). But this Court has not decided the issue of Guard One's effectiveness. It simply ordered the use of Guard One on the Special Master's expert's recommendation, along with many other policies. *See* ECF 5271. That order to use Guard One did not adopt as law of the case every fact contained in the underlying expert report (which spans more than 200 pages); the actual order was only for CDCR to adopt the particular "recommendations contained in the Special Master's Report." *Id.* at 3. In other words, the Court ordered the use of Guard One, but it made no direct findings about its effectiveness.

Even the underlying expert reports Defendant cites do not directly find that the Guard One recording system is necessary or effective in preventing suicides. *See, e.g.*, ECF No. 5259 at 14 (noting only that the expansion of the use of Guard One was "commendable," while also noting drawbacks of the system including the fact that "it cannot assure that staff are actually observing

the interior of each cell to verify the inmate's well-being" and the fact that "documentation problems continued" despite the use of Guard One); ECF No. 5396 at 10 (simply describing CDCR's continuing use of Guard One, without any discussion of its effectiveness); ECF No. 5271-1 at 160 (discussing the noise caused by Guard One at Pelican Bay in particular, with no discussion of Guard One's effectiveness in preventing suicides). And indeed, at least two of the expert reports Defendant cites contain findings that suggest Guard One may *not* be effective in preventing suicides. *See* ECF No. 5993-1 at 4, 16, 41, 109-10, 173 (noting that the Guard One "compliance rates were tempered by the fact that four inmates who committed suicide in restrictive housing units during 2017 were found to be in various states of rigor mortis and not observed at 30-minute intervals as required"); ECF No. 6879-1 at 4, 19, 52, 62-63, 70, 149 (similar).[4]

In essence, Defendant wants to convert the Court's order to *use* Guard One into a factual finding that Guard One is effective in preventing suicide. But she cites no order in which the Court made that factual finding. While the Court did order the continuing use of Guard One, that basic fact does not make it the law of the case that Guard One reduces the number of inmate suicides or is the only reasonable way to do so—factual issues that were not presented or disputed and which the Court did not rule on. Whether Guard One *actually* prevents suicides, or whether it is the *only* reasonable way of ensuring compliance with welfare checks to prevent suicides, remains an open question. Insofar as Defendant intends to rely upon the supposed effectiveness of Guard One in some form in response to Lipsey's claim, there must be discovery into that factual question.

## CONCLUSION

Lipsey respectfully requests that the Court grant his motion to compel and order Defendant to respond to the disputed discovery requests, or, in the alternative, bar Defendant from relying in any way on an alleged penological interest in using Guard One (including, for

---

[4] To the extent these reports do contain evidence bearing on the effectiveness of Guard One, they are responsive to Lipsey's discovery requests, as Defendant suggests. Opp. at 5-6. The problem is that they are not the *only* documents responsive to Lipsey's requests. Other evidence about the effectiveness of Guard One would also be responsive, and Defendant cannot produce only the responsive documents that favor her.

1  example, the need for or effectiveness of Guard One in preventing inmate suicides).

Dated: August 27, 2021

Respectfully submitted,

/s/ Kate Falkenstien
REICHMAN JORGENSEN LEHMAN & FELDBERG LLP
Shawna L. Ballard (SBN 155188)
Kate Falkenstien (SBN 313753)
100 Marine Parkway, Suite 300
Redwood Shores, California 94065
Telephone: (650) 623-1401
Fax: (650) 623-1449
sballard@reichmanjorgensen.com
kfalkenstien@reichmanjorgensen.com

REICHMAN JORGENSEN LEHMAN & FELDBERG LLP
Brian C. Baran (SBN 325939)
1710 Rhode Island Ave NW, 12th Floor
Washington, DC 20036
Telephone: (202) 894-7310
Fax: (650) 623-1449
bbaran@reichmanjorgensen.com

*Attorneys for Plaintiff-Intervenor Christopher Lipsey*