1  ROB BONTA, State Bar No. 202668
   Attorney General of California
2  DAMON MCCLAIN, State Bar No. 209508
   Supervising Deputy Attorney General
3  ELISE OWENS THORN, State Bar No. 145931
   NAMRATA KOTWANI, State Bar No. 308741
4  Deputy Attorneys General
     1300 I Street, Suite 125
5    P.O. Box 944255
     Sacramento, CA 94244-2550
6    Telephone: (916) 210-7318
     Fax: (916) 324-5205
7    E-mail: Elise.Thorn@doj.ca.gov
   Attorneys for Defendants
8

HANSON BRIDGETT LLP
PAUL B. MELLO, SBN 179755
SAMANTHA D. WOLFF, SBN 240280
LAUREL E. O'CONNOR, SBN 305478
DAVID C. CASARRUBIAS, SBN 321994
1676 N. CALIFORNIA BLVD., SUITE 620
WALNUT CREEK, CALIFORNIA 94596
TELEPHONE:   925-746-8460
FACSIMILE:    925-746-8490
Attorneys for Defendants

ROMAN M. SILBERFELD, State Bar No. 62783
GLENN A. DANAS, State Bar No. 270317
ROBINS KAPLAN LLP
  2049 Century Park East, Suite 3400
  Los Angeles, CA 90067-3208
  Telephone: (310) 552-0130
  Fax: (310) 229-5800
  E-mail: RSilberfeld@RobinsKaplan.com
Special Counsel for Defendants

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| RALPH COLEMAN, et al., | Case No. 2:90-CV-00520- KJM-DB |
| Plaintiffs, | **DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO MODIFY THE 2009 STAFFING PLAN AS IT RELATES TO ON-SITE PSYCHIATRIC SUPERVISORS** |
| v. | |
| GAVIN NEWSOM, et al. | |
| Defendants. | Judge:    Hon. Kimberly J. Mueller |

17783657.9

1

**INTRODUCTION**

2    As the Court recently expressed, "given all the good effort moving towards resolutions,"

3    the parties should avoid litigation when possible. Aug. 4, 2021 Transcript of Proceedings, 6:21-22.

4    That is what Defendants sought to do before being forced to bring their motion to modify the 2009

5    Staffing Plan to eliminate the current, unworkable, ratio of one "Senior Psychiatry, Supervisor"

6    position for fifty MHCBs in MHCB units with more than six beds. ECF 7250. Defendants sought

7    Plaintiffs' stipulation, and despite Plaintiffs' initial agreement to the substance of Defendants'

8    proposal, Plaintiffs' ultimate rejection of the stipulation necessitated the instant motion.

9    In their opposition to Defendants' Motion, Plaintiffs do not dispute that Defendants' plan

10   goes above and beyond the requirements of the 2009 Staffing Plan by *increasing* supervisory

11   positions by a total of 3.5 under current conditions. *See* ECF 7250-2 at 3 ¶¶ 5 & 6, Ex. A. Rather,

12   Plaintiffs rejected Defendants' proposal and forced litigation because of a footnote stating that

13   Defendants did not believe that the provisions were required to remedy a constitutional violation.

14   Likewise here, the crux of Plaintiffs' objection is not the substance of Defendants' plan,

15   which Plaintiffs support. ECF 7268 at 4:3-6. Rather, Plaintiffs object that Defendants are only

16   seeking court approval of one, or alternatively two, aspects of the plan. *Id.* at 4:6-12. But Plaintiffs

17   do not and cannot explain why Defendants' policy of assigning Chief Psychiatrists to any

18   institution with a mental health program constitutes a modification of the 2009 Staffing Plan

19   requiring court approval. And the core premise behind Plaintiffs' objection that Defendants will

20   not actually increase the number of chief psychiatrists beyond what the 2009 Staffing Plan

21   requires without a court order, ECF 7250-2 at 3 ¶ 5, is erroneous. In fact, Defendants have already

22   taken concrete steps to implement these changes, and are in the process of taking more.[1] (Supp.

23

24   _____

[1] Plaintiffs assert that Defendants improperly include new evidence and argument in their reply
25   brief. ECF 7279. But the point—that Defendants are already actively increasing Chief Psychiatrist
     allocations—is not new. *See*, *e.g.*, ECF 7250-1 at 1:7-10, 4:26-27, 7:2-4; ECF 7250-2 at 5-9 & Ex.
26   A. Further, Plaintiffs' Opposition argues that Defendants "offer no evidence whatsoever" that they
     are increasing Chief Psychiatrist allocations, and cites to Defendants' Monthly Maps submission
27   and April 2021 reallocation in support of their position. ECF 7268 at 10:13, 10:28-11:8. But
     "[e]vidence submitted in direct response to evidence raised in the opposition . . . is not 'new.'" *See*
28   *In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 559, fn. 87 (C.D. Cal. Aug. 1, 2014).

DEFENDANTS' REPLY ISO MOTION TO MODIFY 2009 STAFFING PLAN

17783657.9

1   Decl. of Dr. Amar Mehta, M.D. ("Supp. Mehta Dec.") at 2-3 ¶¶ 2-6, Ex. A.) Moreover, these

2   increases are occurring at a time when CDCR's psychiatrist vacancy rate system-wide is just 5

3   percent statewide—far the 10 percent vacancy rate mandated by the Court.

4        In light of these changes, the current ratio of one "Senior Psychiatry, Supervisor" position

5   for 50 MHCBs, which has always been operationally unworkable, is now also obsolete. The Court

6   should grant Defendants' Motion and eliminate the 1:50 supervisor to MHCB ratio.

7                                        **ARGUMENT**

8        As a threshold matter, Plaintiffs' argument that Defendants' proposed modification does

9   not represent the totality of what was in the proposed March 4, 2021 stipulation (which Plaintiffs

10  ultimately rejected) is irrelevant because Defendants are only required to seek court approval of a

11  material modification of a remedial order. Any other actions that Defendants take to improve their

12  delivery of mental health care to the plaintiff class, that indisputably go above and beyond the

13  constitutional minimum, can be taken at any time without court intervention. *See Bell v. Wolfish*,

14  441 U.S. 520, 562 (1979) ("[T]he inquiry of federal courts into prison management must be

15  limited to the issue of whether a particular system *violates* any prohibition of the Constitution"

16  (emphasis added)). Here, CDCR's new staffing allocation plan for Chief Psychiatrists goes above

17  and beyond what is required by the 2009 Staffing Plan. Accordingly, the relief requested in

18  Defendants' Motion is appropriately narrowed to only that portion of the plan that *requires* court

19  approval: elimination of the 1:50 ratio of Senior Psychiatry, Supervisors to MHCBs. Alternatively,

20  and in an abundance of caution, to the extent that the Court considers Defendants' clarification of

21  the definition of "large and complex" as inseparable from the request to eliminate the 1:50 ratio,

22  then Defendants further seek to modify the 2009 Staffing Plan to incorporate their clarification.

23       Defendants' request for modification is proper under Rule 60(b) as there are significant

24  changed circumstances warranting elimination of the unworkable 1:50 ratio, namely, increased

25  staffing allocations for supervisory psychiatrists. The Court may also exercise its discretion to

26  grant Defendants' requested relief. Alternatively, the request for modification is proper under 18

27  U.S.C. § 3626(b)(2), because the 1:50 ratio was initially approved without a finding by the Court

28  that the relief was appropriate under the Prison Litigation Reform Act (PLRA).

17783657.9

DEFENDANTS' REPLY ISO MOTION TO MODIFY 2009 STAFFING PLAN

**A.    Contrary to Plaintiffs' argument, modification of the 2009 Staffing Plan is warranted under Rule 60(b) because there is a significant change in circumstances, namely, increased staffing allocations for supervisory psychiatrist positions.**

As Defendants explained in their affirmative motion, Rule 60(b)(5) allows for modification of a remedial order where there has been a significant change in factual conditions that make compliance with the order substantially more onerous. ECF 7250-1 at 6:7-8:19. That significant change in factual conditions here is CDCR's decision to clarify the "large and complex" criteria for the allocation of a "Senior Psychiatry, Supervisor" to include institutions that meet all of the following criteria: (1) Serve at least three different mental health program areas (CCCMS, STRH, LTRH, EOP, ASU, PSU, RC, and MHCB), excluding the PIPs; (2) A total mental health population of at least 900 patients, excluding patients in the PIP; and (3) A total of ten or more staff psychiatry positions allocated, including telepsychiatry, excluding PIP positions. ECF 7250-2 at 2-3 ¶¶ 3 & 6, Ex. A. CDCR is also allocating an *additional* "Senior Psychiatry, Supervisor" position for every ten additional staff psychiatrists assigned to an institution that meets all other criteria. *Id.* Furthermore, on top of the Chief Psychiatrist position at institutions with an MHCB unit or "complex and multiple" mental health programs, CDCR is exceeding the 2009 Staffing Plan by additionally allocating a Chief Psychiatrist position to any other institution with a mental health program.[2] *See id.*, at 3 ¶¶ 4 & 6, Ex. A.

CDCR's new staffing allocation plan is a significant change in factual conditions that results in the overall allocation of more supervisory psychiatry positions. This change warrants modification because implementing the new allocation plan while also applying the 1:50 ratio would make compliance substantially more onerous. The new plan is not compatible with the current plan that results in inoperable fractional allocations. *Id.* at 2 ¶ 2; *see, also, Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367, 384-85 (1992).

In opposition, Plaintiffs argue that "Defendants' Motion is premised on non-binding promises to increase supervisory psychiatrist allocations overall," (ECF 7268 at 9:10-11) which

---

[2] These changes, which Defendants have elected to take on unilaterally and that do more than what the Court requires of them, alternatively justify the court's exercise of its discretionary jurisdiction to grant the requested relief under Rule 60(b)(6). ECF 7250-1 at 8:20-9:4.

1   does not provide a sufficient basis to reduce current staffing levels. (*Id.* at 13:1-15:19.) Plaintiffs

2   are wrong on all accounts. First, Defendants' Motion is not premised on non-binding promises, but

3   the reality of CDCR's new and current plan, which is well under way. *See* Supp. Mehta Dec. at 3 ¶

4   6, Ex. A. For example, on July 1, 2021, CDCR took the first step in effectuating the new staffing

5   model changes by completing standard 607s.[3] *Id.* at 2 ¶ 2, Ex. A. Those staffing model changes

6   included: (1) Reclassifying 1.0 Senior Psychiatrist to 1.0 Chief Psychiatrist at ten institutions:

7   ASP, CCI, CCWF, CRC, CTF, FSP, HDSP, NKSP, SCC & SVSP; (2) Increasing existing Senior

8   Psychiatrists time base from 0.5 to 1.0 at COR, RJD and SATF; and (3) Establishing new 1.0

9   Senior Psychiatrists at LAC, MCSP & SVSP. Also on July 1, 2021, CDCR began updating

10  corresponding duty statements and organizational charts to reflect the new staffing model changes.

11  *Id.* From July 1 to July 19, 2021, Dr. Mehta held discussions with stakeholders to discuss the new

12  staffing model changes, presented the changes to all CEOs and Regional Healthcare Executives,

13  and informed institutional mental health leadership of the new plan. *Id.* at 2 ¶ 3, Ex. A.

14          Subsequently, on August 12, 2021, CDCR began advertising new Chief Psychiatrist and

15  "Senior Psychiatrist, Supervisor" positions on statewide career websites www.calcareers.ca.gov

16  and www.cchcs.ca.gov/careers/.[4] *Id.* at 2-3 ¶4, Ex. A. That same day, CDCR initiated focused

17  recruitment efforts with the workforce development unit (WDU). *Id.* CDCR is also planning to

18  interview candidates during the weeks of September 13-17 and 20-24, 2021 with a target

19  candidate selection date of September 27, 2021. *Id.* at 3 ¶ 5. In sum, Defendants' new staffing

20  allocation for Chief Psychiatrists and senior psychiatry supervisors is well into the implementation

21  phase. Because Defendants have shown that their plan is being executed and close to full

22  _____

23  [3] Standard 607s are "Change in Established Position" forms that are used to document
    "[e]stablishment, amendment, or abolishment of positions, blanket positions, and other position-

24  related transactions" for purposes of budgetary approval. *See*

25  https://www.dgs.ca.gov/Resources/SAM/TOC/6000/6527 (last accessed on 8/15/2021).

26  [4] Current listings can be found on
    https://www.calcareers.ca.gov/CalHRPublic/Search/JobSearchResults.aspx#kw=chief%20psychiat

27  rist (last accessed on 8/15/2021),
    https://www.calcareers.ca.gov/CalHRPublic/Search/JobSearchResults.aspx#kw=Senior%20Psychi

28  atrist (last accessed on 8/15/2021), and
    https://cchcs.hodesiq.com/joblist.asp?CustomField_1770=49796 (last accessed on 8/15/2021).

1    implementation, Defendants have established a significant change in circumstances.

2         Moreover, and contrary to Plaintiffs' argument, Defendants' demonstrated change in

3    circumstances merits their requested modification of the 2009 Staffing Plan. While CDCR

4    proposes eliminating the 1:50 ratio for the allocation of senior psychiatry supervisors, it is

5    clarifying the criteria for allocating senior psychiatry supervisors at "large and complex"

6    institutions and allocating a Chief Psychiatrist to every institution with a mental health program.

7    ECF 7250-2, Ex. A. Thus, whereas previously CDCR allocated 18 Chief Psychiatrists and 17.5

8    "Senior Psychiatry, Supervisors" statewide, under the new proposal CDCR would allocate (based

9    on current population and programs at the institutions) 28 Chief Psychiatrists and 11 "Senior

10   Psychiatry, Supervisors" statewide for a net gain of 3.5 supervisory positions. *See id.*, ¶ 5.

11        Furthermore, clarifying the definition of "large and complex" does not materially modify

12   the 2009 Staffing Plan because that term has never been specifically defined. Nonetheless, to the

13   extent the Court considers that clarification inseparable from the immediate request to eliminate

14   the 1:50 ratio, Defendants alternatively request that the Court modify the 2009 Staffing Plan to

15   incorporate their clarified definition. ECF 7250 at 2 n.1; ECF 7250-1 at 2 n.1 & 7 n.4. As such,

16   whether Defendants' definition of "large and complex" is construed as a clarification or a change,

17   the Court should rely on it to grant Rule 60(b) relief.

18        Plaintiffs claim that Defendants' clarification is not significant because it is simply a step

19   toward fulfilling existing obligations under the 2009 Staffing Plan. ECF 7268 at 11:15-18.

20   Plaintiffs' argument is off base.[5] Defendants' clarification of the definition of "large and complex"

21   is significant because "Senior Psychiatry, Supervisor" allocations will now be guided by concrete

22   criteria related to the delivery of mental health care rather than a fixed ratio that arbitrarily results

23   in fractional allocations that are unlikely to be filled, and even if filled, would not provide

24   meaningful assistance.[6] *See* ECF 7250-2 at 2 ¶¶ 2-3. In addition, these criteria, like a ratio, require

25   _____

26   [5] Plaintiffs also argue against themselves, suggesting elsewhere in their opposition that
     Defendants' clarification should be treated as a "substantive modification" of existing
27   requirements. ECF 7268 at 10.

28   [6] Fractional allocations do not provide meaningful assistance to the institutions because, if filled,

1  the allocation of additional supervisory positions as the number of staff psychiatrist positions

2  increase. Further, this clarification will result in new supervisory positions at the institutions that

3  need them, and complements the increase in the number of Chief Psychiatrist positions. Together,

4  these changes, which result in increasing staffing allocations for supervisory psychiatrist positions,

5  constitute a significant change in circumstances warranting modification of the 2009 Staffing Plan.

6  **B.    Plaintiffs concede that an increase in Chief Psychiatrist allocations could be a basis to
7  eliminate the 1:50 ratio and modify the "large and complex" criteria in a manner that
     reduces existing numbers of Senior Psychiatrist, Supervisors.**

8  Plaintiffs recognize that Defendants' new staffing allocation plan is sufficient to justify the

9  elimination of the 1:50 ratio under Rule 60(b). *See* ECF 7268 at 13:16-19. They just complain that

10  no increase in Chief Psychiatrist allocations has occurred, or doubt that any such change would be

11  durable. *Id.* at 13:24-26. To their first point, and as explained above and in the accompanying

12  Supplemental Declaration of Dr. Mehta, implementation of Defendants' new staffing allocation

13  plan is well underway. *See* Supp. Mehta Dec., *passim*, Ex. A. Job postings have been created and

14  posted, and all CDCR stakeholders have been briefed and are preparing for the increase in

15  allocations.[7] *See id.* In short, Plaintiffs' reflexive skepticism is misplaced.

16  To their second point on durability, Plaintiffs mistakenly rely on *Horne v. Flores*. ECF

17  7268 at 13:19-21. In *Horne*, the Court simply held that continued enforcement of an order was not

18  only unnecessary, but improper, if a durable remedy had been implemented. 557 U.S. 433, 450

19  (2009). Here, Defendants are not required to have already demonstrated a durable remedy in order

20  to justify their requested modification of the 2009 Staffing Plan. Rather, they have shown that

21  _____

22  would only provide fractional assistance to the institution. For example, 0.2 of a Senior
   Psychiatrist, Supervisor position is currently allocated to SVSP. ECF 7250-2 at 2 ¶ 2. If that
23  position were filled, and assuming the typical 40 hour work week, that supervisor would either
   work one 8 hour shift a week, or alternatively, work 1.6 hours a day. On its face alone, one can see
24  why either scenario would not result in *meaningful* assistance to the mental health program at
   SVSP. The level of supervision that could be provided through such a fragmented work schedule
25  is hard to contemplate, hence why Defendants' proposal eliminates fractional allocations in favor
26  of whole allocations.

27  [7] Other evidence reflecting Defendants' progress include the incorporation of the new staffing
   positions in the Governor's budget, and the allocation of eight additional telepsychiatry
28  supervisors to help oversee the telepsychiatry program. *See* http://www.ebudget.ca.gov/2021-
   22/pdf/Enacted/GovernorsBudget/5210.pdf (last accessed on 8/16/2021) at PDF pp. 7, 41, 43, 44.

DEFENDANTS' REPLY ISO MOTION TO MODIFY 2009 STAFFING PLAN

17783657.9

1   modification is appropriate because implementing the new allocation plan while also continuing

2   the 1:50 ratio would make compliance substantially more onerous. ECF 7250-1 at 6:13-14. That is

3   all that is necessary. *Rufo*, 502 U.S. at 384-85.

4       Plaintiffs separately attempt to undermine Defendants' new allocation plan by pointing to

5   prior unfilled allocations and difficulties constructing additional bed space. ECF 7268 14:11-

6   15:19. This argument is irrelevant. Their opposition ultimately rests on the false premise that

7   Defendants won't actually increase Chief Psychiatrist positions. But these increases are well under

8   way. Supp. Mehta Dec., *passim*. Moreover, these increases are occurring at a time when CDCR's

9   psychiatrist vacancy rate system-wide is just 5 percent statewide—below the 10 percent vacancy

10  rate mandated by the Court. ECF 7235 at 4. The Court should grant Defendants' Motion.

11  **C.    Plaintiffs' attempt to ignore the new staffing allocations is improper; Defendants'
12          plan is suitably tailored to achieving the remedial purpose of the 1:50 ratio.**

13      Plaintiffs argue that because Defendants are not asking the Court to approve the entirety of

14  Defendants' new staffing allocation plan, the Court must completely ignore those portions not

15  subject to approval and consider Defendants' proposal in a vacuum. ECF 7268 at 15:20-17:26. In

16  that vacuum, Plaintiffs say that Defendants are "*reducing* the number of supervisory psychiatric

17  positions [they] are required to provide rather than *increasing* that number," thereby doing "the

18  opposite of what Defendants' own analysis suggests is needed and exacerbat[ing] the problem"

19  they are intending to fix. *Id.* at 15:27-16:1. This argument is wrong, as well as misleading.

20      Defendants are not asking this Court to "approve a one-way ratchet" that only reduces

21  "Senior Psychiatry, Supervisors." *Id.* at 9:7. Rather, Defendants are asking the Court to consider

22  Defendants' Motion in the context of their new staffing allocation plan that, based on current

23  population and programs at the institutions, has the effect of allocating 28 Chief Psychiatrists and

24  11 Senior Psychiatry, Supervisors statewide for *a net gain* of 3.5 supervisory positions. ECF 7250-

25  2 at 3 ¶ 5. That is hardly a one-way ratchet reducing supervisory positions. Instead, it is a good

26  faith effort to improve Defendants' staffing allocation plan. That certain portions of Defendants'

27  new plan are not required by a court order is irrelevant to analyzing the change in circumstance.

28  No authority, either statutory or decisional, requires that a change underlying a Rule 60(b) motion

1    be memorialized in a court order. And regardless, as Defendants have explained throughout,

2    CDCR is currently taking concrete steps to increase Chief Psychiatrist allocations statewide.[8]

3         In the alternative, Plaintiffs ask the Court to "construe [Defendants' Motion] as a request to

4    adopt the March 4 Proposal in toto, including all three of its agreed upon substantive elements."

5    ECF 7268 at 4:17-18. This request is improper, not only because such an affirmative request for

6    relief in an opposition brief is procedurally incorrect and should be ignored, but also because any

7    resulting order would exceed the PLRA's needs-narrowness-intrusiveness mandate. *Interworks*

8    *Unlimited, Inc v. Digital Gadgets, LLC*, 2019 WL 4570013 at *1 (C.D. Cal. June 11, 2019)

9    (holding that a party "cannot seek affirmative relief by way of an opposition brief"); 18 U.S.C. §

10    3626(a)(1)(A).

11         Considering the entirety of Defendants' new staffing proposal, which results in a net gain

12    of 3.5 supervisory positions throughout the state, Defendants have shown a significant change in

13    circumstances warranting modification of the 2009 Staffing Plan under Rule 60(b). That change is

14    suitably tailored to advancing the remedial purpose of the 1:50 ratio in the 2009 Staffing Plan by

15    ensuring adequate psychiatric supervision at institutions providing mental health care based on

16    need rather than an arbitrary ratio. The change is also suitably tailored because it eliminates the

17    absurd results of fractional allocations under the current system that are neither operationally

18    feasible nor useful to the institutions. *See* ECF 7250-2 at 2 ¶ 2.

19    **D.    Plaintiffs fail to show why alternative relief under the PLRA is unwarranted.**

20         Finally, Defendants maintain that the Court has sufficient authority under Rule 60(b) to

21    grant Defendants' requested modification. But, alternatively, the Court may grant Defendants'

22    requested relief under the PLRA because the Court approved the 1:50 ratio in the 2009 staffing

23    plan without the requisite findings of need, narrowness, and intrusiveness. ECF 7250-1 at 9:5-26.

24

25    [8] In passing, Plaintiffs also attack the Declaration of Samantha D. Wolff as including an inaccurate assertion of the parties' positions leading up to the abandoned stipulation due to Defendants'

26    request to include a reservation of rights. ECF 7268 at 7-8 n. 3. Plaintiffs misconstrue counsel's declaration, which solely focuses on Defendants' reservation of rights in footnote 1 of the March

27    4, 2021 proposal, not whether Plaintiffs and the Special Master would agree to reserve Defendants' rights to seek future modification based on changed circumstances. *Compare* ECF

28    7250-4 at 2 ¶ 2, *with* ECF 7268-1 at 2-3 ¶ 5.

Case No. 2:90-CV-00520- KJM-DB

17783657.9

1    The PLRA provides that "The court shall not . . . approve any prospective relief unless the

2  court finds that such relief is narrowly drawn, extends no further than necessary to correct the

3  violation of a Federal right, and is the least intrusive means necessary to correct the violation of

4  the federal right." 18 U.S.C. § 3626(a)(1). A defendant is entitled to immediate termination of

5  prospective relief if the relief was approved in the absence of these findings, which must be

6  included in the order awarding such relief. 18 U.S.C. §§ 3626(a)(1)(A), (b)(2); *see Miller v.*

7  *French*, 530 U.S. 327, 346 (2000) (prospective relief granted without findings required under the

8  PLRA violates the statute); *Oluwa v. Gomez*, 133 F.3d 1237, 1239 (9th Cir. 2018) ("before

9  granting prospective injunctive relief, the trial court must make the findings mandated by the

10  PLRA").  Plaintiffs do not dispute that the necessary findings were not made in the orders at issue:

11  ECF Nos. 3613, 5307, 5711. *See* ECF 7268 at 18:15-23. Rather, they claim that a patchwork of

12  prior orders satisfy the PLRA's requirements. *Id.* at 18:19-19:14. Plaintiffs mistakenly rely on

13  *Parsons v. Ryan*, where the Court didn't consider the application of 18 U.S.C. § 3623(b)(2) to a

14  party's request to modify a remedial order. 912 F.3d 486, *passim* (9th Cir. 2018). Nor did *Parsons*

15  purport to render the PLRA's express conditions precedent to new injunctive relief meaningless.

16    But to the extent that the Court considers *Parsons*, it *supports* Defendants' request for

17  modification. In *Parsons*, the Court held that a district court made the requisite needs-narrowness-

18  intrusiveness findings under the PLRA where it entered an order approving the parties' stipulation

19  for prospective relief and held that the stipulation was "necessary to correct the violations of the

20  Federal right of the Plaintiffs." *Id.* at 501. As a result, the court's conclusion "necessarily required

21  a finding of a constitutional violation—that is, if there was no violation of a federal right, there

22  would be nothing for the Stipulation to 'correct.'" *Id.* Second, when entering into their stipulation,

23  the parties explicitly agreed that the "stipulation was necessary to correct violations of Plaintiffs'

24  federal rights." *Id.*

25    Contrary to *Parsons*, the Court here did not include any language in its orders approving

26  the 1:50 ratio that the ratio was being implemented "upon the entire record in this case" or in light

27  of a stipulation that the parties agreed was "necessary to correct the violation of the Federal right

28  of the Plaintiffs." *Id.* Quite the opposite. Defendants expressly stated that they did not believe

1   "that the proposed staffing and services [were] constitutionally required, nor do they believe that

2   th[e] Plan would satisfy the Prison Litigation Reform Act's requirements that prospective relief be

3   narrowly drawn, extend no further than necessary to correct the alleged violation of the federal

4   right, and be the least intrusive means necessary to correct the alleged violation." ECF No. 3693 at

5   7 n.1. Nonetheless, the Court *approved* the 2009 Staffing Plan over such objections, and the 1:50

6   ratio included therein. As such, Defendants are entitled to immediate termination of the 1:50 ratio

7   included in that plan because that relief "was approved" without the required PLRA findings. 18

8   U.S.C. § 3626(b)(2).

9                                               **CONCLUSION**

10          Defendants are implementing CDCR's new psychiatric staffing allocation plan, and as a

11  result, the current ratio of one "Senior Psychiatry, Supervisor" position for 50 MHCBs, which has

12  always been operationally unworkable, is now also obsolete. The Court should therefore grant

13  Defendants' narrow motion to modify the 2009 Staffing Plan and eliminate the 1:50 ratio. The

14  Court should also reject Plaintiffs' improper request to include all three aspects of Defendants'

15  plan in a Court order, as this request is not properly before the Court. *See* ECF 7250 (Defendants'

16  Notice of Motion and Motion); *Interworks Unlimited, Inc.*, 2019 WL 4570013 at *1.

17                                             **CERTIFICATION**

18          In preparing this motion, Defendants' counsel reviewed the following Court orders

19  relevant to the issues in this filing: ECF Nos. 3613, 7226, 3666, 3665, 5307, 5711.

20  DATED:  August 27, 2021                        HANSON BRIDGETT LLP

21

22                                         By:    *s/ Samantha D. Wolff*
                                                  ─────────────────────────────
23                                                SAMANTHA D. WOLFF
                                                  Attorneys for Defendants

24  DATED:  August 27, 2021                        ROB BONTA
                                                   Attorney General of California
25

26                                         By:    *s/ Elise Owens Thorn*
                                                  ─────────────────────────────
27                                                ELISE OWENS THORN
                                                  Deputy Attorney General
28                                                Attorneys for Defendants

17783657.9
DEFENDANTS' REPLY ISO MOTION TO MODIFY 2009 STAFFING PLAN