ROB BONTA, State Bar No. 202668
Attorney General of California
MONICA N. ANDERSON, State Bar No. 182970
Senior Assistant Attorney General
DAMON MCCLAIN, State Bar No. 209508
Supervising Deputy Attorney General
ELISE OWENS THORN, State Bar No. 145931
LUCAS HENNES, State Bar No. 278361
NAMRATA KOTWANI, State Bar No. 308741
Deputy Attorneys General
 1300 I Street, Suite 125
 P.O. Box 944255
 Sacramento, CA 94244-2550
 Telephone:  (916) 210-7318
 Fax:  (916) 324-5205
 E-mail:  Elise.Thorn@doj.ca.gov
*Attorneys for Defendants*

HANSON BRIDGETT LLP
PAUL B. MELLO, SBN 179755
SAMANTHA D. WOLFF, SBN 240280
LAUREL E. O'CONNOR, SBN 305478
DAVID C. CASARRUBIAS, SBN 321994
1676 N. CALIFORNIA BLVD., SUITE 620
WALNUT CREEK, CALIFORNIA 94596
TELEPHONE:   925-746-8460
FACSIMILE:   925-746-8490
*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

### SACRAMENTO DIVISION

RALPH COLEMAN, et al.,

      Plaintiffs,

    v.

GAVIN NEWSOM, et al.

      Defendants.

Case No. 2:90-CV-00520- KJM-DB

**DEFENDANTS' MOTION FOR RECONSIDERATION PER AUGUST 3, 2020 ORDER REGARDING SPECIAL MASTER'S MATERIAL MODIFICATION DETERMINATION**

Judge:    Hon. Kimberly J. Mueller

## I.    INTRODUCTION

Due to fundamental disagreement about what constitutes a "material modification" of the Program Guide, the Special Master has thwarted Defendants' ability to efficiently implement policy changes which actually *increase* the level of care provided to the Plaintiff class, and which changes are actually "welcome[d]" and "support[ed]" by Plaintiffs' counsel. Without additional guidance from the Court, this disagreement will likely be the first of many, and will surely impede Defendants' ability to further improve mental health care delivered to the Plaintiff class. To avoid wasteful and time-consuming litigation, Defendants ask the Court to adopt a definition of material

1    modification that is both practicable and also focused on furthering the goal of the Program

2    Guide—providing constitutionally adequate mental health care.

3    **II.    FACTUAL BACKGROUND**

4         At issue in this Motion for Reconsideration ("Motion") is the "Revision of Mental Health

5    Crisis Bed Discharge Custody Checks Form and Introduction of Audit Requirement"

6    memorandum ("Memo"). The Memo *expands* custody checks to include all patients who have

7    been discharged from any inpatient program or alternative housing after being admitted for

8    suicidality. (Decl. of Travis Williams, PsyD ("Williams Decl.") at ¶3.) The existing policies only

9    require custody checks for discharges from Mental Health Crisis Beds ("MHCBs") and alternative

10   housing (and as to alternative housing, only when clinically indicated). *Id*. The Memo also

11   expands the existing policy to require that decisions to discontinue custody checks, made on

12   weekends and holidays, must be made by a mental health clinician after a face-to-face assessment.

13   *Id*. The existing policies do not require a face-to-face assessment on weekends and holidays. *Id*.

14   Finally, the Memo introduces a new audit tool aimed at increasing compliance with the current

15   Program Guide requirements. *Id*. Plaintiffs "welcome" and "support" these changes. (Decl. of

16   Melissa Bentz ("Bentz Decl.") ¶5, Ex. 1 (Ex. B at pp. 9-10).)

17        The small workgroup discussed the Memo during several meetings, after which

18   Defendants understood that members of the Special Master's team concluded that the Memo was

19   *not* a material modification to the Program Guide. Williams Decl. at ¶4.

20        Following that assessment, Defendants' internal team deleted certain non-substantive

21   language from the Memo, which merely recited policy already included in the 2018 Program

22   Guide that will remain there and continue in effect. Williams Decl. at ¶4. This revision aimed to

23   make clear that the Memo did not supersede existing policy, but rather, highlighted updates to the

24   form and introduced audit expectations. *Id*. The purpose of the revisions was to reduce confusion

25   for people working in the field. *Id*.

26        On August 9, 2021, Defendants provided the policy to the Special Master and Plaintiffs,

27   requesting a decision as to materiality within fourteen days, consistent with the timelines in the

28   court's August 3, 2020 order, as modified by the Court's June 24, 2021 order. Bentz Decl. at ¶3;

DEFENDANTS' MOTION FOR RECONSIDERATION
RE SPECIAL MASTER'S MATERIAL MODIFICATION DETERMINATION

17823829.5

*see* ECF No. 7212. Later that day, certain members of the Special Master's team objected to the deletions of the non-substantive language from the draft Memo. Williams Decl. at ¶5. Defendants withdrew the Memo the same day, however, upon further review, resubmitted the Memo without further modification on August 11, 2021. Bentz Decl. at ¶3. During the subsequent August 17 data meeting attended by all parties, Defendants understood that a member of the Special Master's team again agreed that the Memo, as revised, was not a material modification. Bentz Decl. ¶4.

Ultimately, following the 14-day period during which the Special Master must make a determination regarding materiality, the Special Master determined that the Memo does materially modify the Program Guide. Bentz Decl. at ¶5, Ex. 1 (Ex. D at pp. 21-22). The primary bases for the Special Master's determination were that the Defendants voluntarily expanded services beyond the current Program Guide requirements and that the deleted language from the Memo removed critical provisions from prior policies. *Id*. Defendants disagree with the Special Master's reasoning and his material modification finding and now seek the Court's order on this Motion, resolving the matter pursuant to the process outlined in the Court's August 3, 2020 Order.[1] *See* ECF 6806 at 12:16-17:5.

## III.   THE MEMO IS NOT A MATERIAL MODIFICATION OF THE PROGRAM GUIDE

### A.   The fundamental disagreement about the definition of "material modification" must be addressed in order to resolve this dispute and prevent future bottlenecking of the update process.

As a threshold issue, there is a fundamental disagreement about what constitutes a "material modification" to the Program Guide. In its August 3, 2020 Order, the Court declined to define what constitutes material modifications of the Program Guide, finding that "[i]n a case of this complexity, at this stage, 'material modifications of the court-approved remedy' are not susceptible to comprehensive definition." ECF No. 6806 at 12, fn 8. The Court further stated that

---

[1] This Motion is not brought as a traditional motion for reconsideration under the Federal Rules of Civil Procedure, but rather, is brought for the Court to reconsider a determination by the Special Master pursuant to the process outlined in the Court's August 3, 2020 order. See ECF 6806 at 12:16-17:5. Accordingly, a *de novo* standard of review applies.

the Special Master's experience, the parties' good faith, and the "common sense application of the terms 'material' and 'modification' would be critical to development of a working definition of the phrase as understood and shared by all stakeholders." *Id*. Unfortunately, over a year later, the parties have been unable to develop such a shared understanding and this fundamental disagreement is now thwarting progress.

In order to resolve this dispute, there must be clarification and consensus on what it means, or at the very least, what it does not mean to "materially modify" the Program Guide.[2] As this Court's August 3, 2020 order recognized, the Special Master wanted the update process to be required for "any proposed new or substantive amendments." See ECF No. 6806, 2:1-8. The Court also observed that the Special Master himself was focused on whether a proposed regulation or policy "would revise the operative version" of the Program Guide. *Id*. at 7:20-22.

But this Court refused to grant such a sweeping notice requirement, observing that the Court's purpose was in large part, "'the need to protect the court-ordered remedy to avoid material modification of the remedy through the state regulatory process and without approval by this court … .'" *Id*. at 5:5-7, quoting ECF No. 6214 at 15-16. Specifically, the Court sought to prevent Defendants from "rely[ing] solely on state law to take unilateral action that undermines" the remedy. ECF No. 6806, 10:22-25 (citing ECF No. 6639, citation omitted). So, instead of making just any "substantive" change to an existing Program Guide or Compendium component the standard, this Court limited the update process to those proposed regulations or policies that would "effect a material modification of the court-approved remedy." Thus, viewed in context, this Court did not want the existing remedy to be *undermined* by state action without prior notice to the Special Master and Plaintiffs. The term "material modification" is one which undermines, *i.e.*, has a material negative effect on the existing content of the Program Guide or Compendium at issue. *See id.* at 13:25-28 (stating that the purpose of the update process is to avoid new regulations or policies whose effect "conflicts" with the existing Program Guide/Compendium remedies).

---

[2] Nothing set forth herein is intended to act as the forfeiture or voluntary relinquishment by Defendants of any grounds for objection to this Court's August 3, 2020 order raised in Defendants' opening brief or otherwise cognizable in Ninth Circuit Appeal No. 20-16734.

DEFENDANTS' MOTION FOR RECONSIDERATION
RE SPECIAL MASTER'S MATERIAL MODIFICATION DETERMINATION

By contrast, the Special Master's interpretations of "material modification" remain unclear. However, with respect to the Memo, the Special Master argues that Defendants' voluntary *expansion* of services to Plaintiffs with no reduction of or conflict with the existing requirements of the Program Guide materially modifies the Program Guide. Defendants disagree for at least two reasons: 1) Defendants' effort to go above and beyond the constitutional minimum in the Memo does not change the minimum level of care required by the Eighth Amendment; and 2) The Special Master's interpretation is inconsistent with the Special Master's experts' determinations on this proposal, which makes such a definition unworkable and would disincentivize Defendants from voluntarily improving and expanding the services provided to Plaintiffs. *See* ECF No. 6806, 14:8-10 (recognizing the need for Defendants to have "the latitude to make adjustments to … continue effective management of their prison and hospital systems.").

As to the first point, the Court has determined that the Program Guide establishes the constitutional minimum level of care.[3] *See* ECF No. 6806. The process outlined in the August 3, 2020 order aims to prevent material modification of the Program Guide through the state policy and regulatory process without the Court's approval. In other words, the Court approved a judicial oversight process to ensure that Defendants don't alter the Program Guide in a way which would *undermine* the level of care required by the Constitution. Here, the Memo proposes an *increase* in services to the Plaintiff class and does not reduce the existing requirements in the Program Guide. Actions that Defendants take to *improve* their delivery of mental health care to the Plaintiff class, and that indisputably go above and beyond the constitutional minimum, can be taken at any time without court intervention. *See Bell v. Wolfish*, 441 U.S. 520, 562 (1979) ("[T]he inquiry of federal courts into prison management must be limited to the issue of whether a particular system violates any prohibition of the Constitution" (emphasis added)). Accordingly, Defendants' voluntary expansion of care beyond the contents of the Program Guide does not materially modify

---

[3] As set forth in Defendants' Response to the Special Master's Report on the Proposed Processes for Updating the 2018 Program Guide Revision, State Regulations, and Changes to CDCR's Department Operations Manual, Defendants maintain that the Program Guide does not set the standard for the constitutional minimum level of care required by the Eighth Amendment to the Constitution. *See* ECF No. 6506 at 4.

-5-

the Program Guide. This Court should overrule the Special Master's determination that the Memo materially modifies the Program Guide.

As to the second point, the Special Master's argument that Defendants' voluntary expansion of services materially modifies the Program Guide is inconsistent with his reasoning elsewhere. Here, the Special Master's experts evaluated the Memo in the small workgroup over several meetings, concluding that it is *not* a material modification of the Program Guide. Subsequently, CDCR decided to strike certain language from the Memo to avoid confusion in the field and ensure that it was clear to providers that the policy in the 2018 Program Guide remains in place. Williams Decl. at ¶4. In other words, this language was deleted as it was merely repeating policy language from the 2016 and 2017 memos on Discharge Custody Checks, and those policies remain in place. *Id*. The Special Master's experts then determined the Memo was, in fact, a material modification of the Program Guide, even though the proposed expansion of services (with no reduction to the existing Program Guide contents) was the *same* in both versions of the Memo. Yet, the Special Master states that the mere expansion of services constitutes a material modification to the 2018 Program Guide. Bentz Decl. at ¶5, Ex. 1 (Ex. D at pp. 21-22).

This type of inconsistency and disagreement as to the definition of "materially modify" is unworkable and causing unnecessary delay.[4] If every improvement made by Defendants without any negative effect on the existing Program Guide nonetheless constitutes a "material modification" to the 2018 Program Guide, Defendants will be disincentivized against voluntarily improving services for fear of the delay the update process then causes, raising the constitutional floor the Program Guide purportedly establishes by such voluntary improvements, and then being held to that increased standard to demonstrate constitutional compliance. In other words, under the Special Master's definition, everything Defendants might do to improve services to Plaintiffs will

---

[4] The Special Master requires Defendants to put policies through the small workgroup for a determination of materiality before he issues his opinion. The problem with this process is highlighted here, where the Special Master then overrules the determination of his experts in the small workgroup, which has now happened twice. Defendants look forward to discussing how to best improve this process with Plaintiffs and the Special Master to avoid such inefficiencies in the future.

DEFENDANTS' MOTION FOR RECONSIDERATION
RE SPECIAL MASTER'S MATERIAL MODIFICATION DETERMINATION

1    add to the Defendants' Eight Amendment obligations *because* inclusion in the Program Guide is

2    treated by this Court as the Eighth Amendment remedy. Such inclusion and expansion then only

3    serve to expand monitoring and prolong the resolution of this case indefinitely. The disincentives

4    that result under the Special Master's interpretation of "material modification" are thus, plain to

5    see and substantial. And if that is the definition, then Defendants' incentive to *expand* services to

6    Plaintiffs in ways having no negative effect on the Program Guide or Compendium will not just be

7    chilled—it will be frozen.

8         Moreover, under the Special Master's interpretation, voluntary improvements would also

9    be subject to the 14-step judicial preapproval process set forth in the August 3, 2020 order. *See*

10   ECF No. 6806, 16:6-10, stating that "Any proposed change the Special Master determines would

11   make a material modification of the remedy in this case shall proceed through the updating

12   process below." Thus, progress will continue to be bottlenecked as the parties will be required to

13   spend months in negotiations (in this case, over something Plaintiffs have welcomed and

14   recognized is an expansion, not a reduction of services), all while the implementation of such

15   improvements is delayed. Such an interpretation of "material modification" will therefore have the

16   perverse effect of discouraging voluntary improvement.

17        To keep this process moving forward, the parties need a pragmatic definition of "material

18   modification" that focuses on the universal goal of maintaining the level of care established by the

19   Program Guide and Compendium. Accordingly, Defendants propose that a "material

20   modification" of the Program Guide is a rule, policy, or regulation that adversely alters—*i.e.*, may

21   cause a substantial detrimental effect to—the base requirements in the Program Guide. This

22   definition is consistent with the goals of this case—to improve the delivery of mental health care

23   and ensure that inmate patients receive constitutionally adequate care—as well as case law, which

24   requires federal courts to focus intervention and prospective relief on violations of the

25   Constitution.  *See Bell*, 441 U.S. at 562; 18 U.S.C. § 3626(a)(1)(A) (prospective relief may not be

26   granted unless the court finds that it "extends no further than necessary to correct the violation of

27   the Federal right").

28   / / /

-7-

17823829.5

**B.     The Memo does not adversely alter the base requirements in the Program Guide**

Applying Defendants' proposed definition reveals that the Memo is not a material modification of the Program Guide because it does not adversely alter the base requirements in the Program Guide. In fact, it does the opposite. The Memo expands custody checks from only MHCBs and alternative housing (where clinically indicated) to all patients discharged from any inpatient program or alternative housing after being admitted for suicidality. Bentz Decl., Ex. 1 (Ex. A at pp. 5-7). The Memo also expands the requirement of face-to-face assessment by a mental health clinician for discontinuation of custody checks to apply to weekends and holidays. *Id*. These expansions increase the level of care provided to the Plaintiff class and Plaintiffs' counsel agree that they are a "welcome change." *Id.* at ¶5, Ex. 1 (Ex. B at pp. 9-10). Moreover, the Plaintiff class will also benefit from the Memo's addition of an audit tool aimed at increasing compliance with Program Guide requirements. *Id.* at Ex. 1 (Ex. A at pp. 5-8). Plaintiffs also "support" this new audit process. *Id*. at ¶5, Ex. 1 (Ex. B at pp. 9-10).

Finally, the Special Master asserts that language regarding "custody responsibilities" and "clinical responsibilities" was deleted from the Memo and thus modifies the Program Guide. This is incorrect. An earlier draft of the Memo included language referencing existing sections of the Program Guide. See ECF No. 5864-1 at 378-380. This language was removed from the Memo after sending an earlier draft to the Special Master's experts, but prior to sending a draft of it to the Special Master and the Plaintiffs because the language duplicates policy already in the Program Guide which remains unchanged and unaffected by the Memo. The substantive language detailing "custody responsibilities" and "clinical responsibilities" that the Special Master believes was deleted still exists in the current Program Guide and will continue to be part of the Program Guide, *i.e.*, the remedy, regardless of the *expanded* services contemplated by the Memo. Williams Decl. at ¶4; *see also* Program Guide at ECF No. 5864-1 at 378-380. The Memo merely attempts to avoid confusing mental health providers *in the field* who may otherwise think that it replaces existing policies, which it does not. Thus, contrary to the Special Master's assertions, the Memo does not materially modify the Program Guide.

17823829.5

1    IV.    **CONCLUSION**

2          In order to resolve this dispute as well as prevent future litigation on this issue, the Court

3    should adopt Defendants' proposed definition of "material modification," which is both pragmatic

4    and aimed at ensuring continued constitutional-level care for the Plaintiff class. The Court should

5    also reject the Special Master's assertions that Defendants' voluntary expansion of care, while

6    maintaining fidelity to the contents of the Program Guide, materially modifies the Program Guide.

7    The consequences of adopting the Special Master's definition would be to discourage voluntary

8    improvement of services to levels above and beyond the contents of the Program Guide, and a

9    resulting bottleneck of the update process. Finally, the Court should overrule the Special Master's

10   determination that the Memo is a material modification of the Program Guide.

11   V.    **CERTIFICATION**

12         In preparing this motion, Defendants' counsel reviewed the following Court orders

13   relevant to the issues in this filing: ECF Nos. 6806 and 7212.

14   DATED:  August 30, 2021                    HANSON BRIDGETT LLP

15

16                                          By:    _/s/ Samantha D. Wolff_

17                                              PAUL B. MELLO
                                                SAMANTHA D. WOLFF
18                                              LAUREL E. O'CONNOR
                                                DAVID C. CASARRUBIAS
19                                              Attorneys for Defendants

20

21   DATED:  August 30, 2021                    Rob Bonta
                                                Attorney General of California
22

23

24                                              _/s/ Damon McClain_

25                                              Damon McClain
                                                Supervising Deputy Attorney General
26                                              Attorneys for Defendants

27

28

17823829.5