1

2

3

4

5

6

7

8                                   UNITED STATES DISTRICT COURT

9                           FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    RALPH COLEMAN, et al.,                          No.  2:90-cv-0520 KJM DB P

12                      Plaintiffs,

13           v.                                        ORDER

14    GAVIN NEWSOM, et al.,

15                      Defendants.

16

17          Christopher Lipsey, Jr. ("Plaintiff Lipsey"), is a plaintiff/intervenor in this class action,

18    which is now in the remedial phase.  Before the court is Lipsey's motion to compel defendant

19    Kathleen Allison ("Secretary Allison"), the Secretary of the California Department of Corrections

20    and Rehabilitation ("CDCR"), to comply with requests for production of documents.  This court

21    held oral argument on the motion on September 3, 2021.  Attorney Kate Falkenstien appeared for

22    plaintiff.  Deputies Attorney General Namrata Kotwani and Adriano Hrvatin appeared for

23    Secretary Allison.  For the reasons set forth below, this court grants in part and denies in part

24    plaintiff's motion.

25                                            **BACKGROUND**

26          Due to the rate of suicides and attempted suicides by California inmates, the court in this

27    class action ordered CDCR to undertake suicide prevention and reduction programs supervised by

28    the court's Special Master.  (ECF No. 1830 at 3.)  In 2006, the court approved a CDCR directive

                                                      1

1    to prisons to conduct welfare checks every 30 minutes in the prisons' administrative segregation

2    units, including short term and long term restrictive housing units, psychiatric services units,

3    Security Housing Units, and Condemned Housing Units (collectively "security housing units").

4         Starting in 2013, some California prisons implemented Guard One, an electronic

5    monitoring system, in security housing units. In 2015, Chief Judge Mueller ordered the use of

6    Guard One to track correctional officers' compliance with the inmate welfare checks required in

7    the security housing units with the goal of reducing inmate suicides.

8         In 2020, Chief Judge Mueller permitted Plaintiff Lipsey to intervene in this action. (ECF

9    No. 6487.) In his complaint in intervention, Plaintiff Lipsey alleges that defendants' use of Guard

10   One violates his Eighth Amendment rights by depriving him of sleep. (ECF No. 6941.) In June

11   2021, Chief Judge Mueller ruled that because Plaintiff Lipsey's claim presents questions of fact

12   directly relevant to the implementation of the remedial plan in this case, he may conduct

13   discovery limited to the Eighth Amendment claim in his complaint in intervention. (ECF No.

14   7191.)

15        In June, Plaintiff Lipsey served requests for production of documents on Secretary

16   Allison. Secretary Allison objected to the eleven requests at issue on the grounds that they are

17   overly broad and seek documents irrelevant to Plaintiff Lipsey's Eighth Amendment claim.[1]

18   (ECF No. 7254-7.) On July 30, Lipsey filed the present motion to compel. (ECF No. 7254.)

19   Secretary Allison filed an opposition (ECF No. 7280) and Plaintiff Lipsey filed a reply (ECF No.

20   7287).

21

22   _____

     [1] Secretary Allison asserts other objections to some requests, such as vagueness, overbreadth, and
23   protection through the attorney/client privilege. The first two objections are simply unexplained
     boilerplate that this court will not consider. See Ramirez v. Cty. of Los Angeles, 231 F.R.D. 407,
24   409 (C.D. Cal. 2005) ("it is well-settled that all grounds for objection must be stated with
     specificity" (citing Davis v. Fendler, 650 F.2d 1154, 1160 (9th Cir.1981)); Allianz Ins. Co. v.
25   Surface Specialties, Inc., No. Civ.A.03–2470–CM–DJW, 2005 WL 44534, at *2 (D. Kan. Jan. 7,
     2005) ("The familiar litany of general objections, including overly broad, burdensome, or
26   oppressive, will not alone constitute a successful objection [nor will it] . . . fulfill the objecting
     party's burden to explain its objections."), cited in Ramirez, 231 F.R.D. at 409. With respect to
27   the privilege objection, Plaintiff Lipsey states that the parties can address that issue if the
     Secretary chooses to assert it for any documents this court orders the Secretary to produce. (See
28   ECF No. 7254 at 9 n.2.)

**MOTION TO COMPEL**

Plaintiff Lipsey's motion challenges Secretary Allison's relevance objection to the eleven document requests.  Plaintiff Lipsey propounded each of these requests to obtain information he contends is relevant to rebut any defense that the implementation and continued use of Guard One serves legitimate penological objectives.  Secretary Allison argues the existence of a penological objective is not relevant to the Eighth Amendment analysis of Plaintiff Lipsey's claim.

**I. Legal Standards for Motion to Compel**

Under Rule 37 of the Federal Rules of Civil Procedure, "a party seeking discovery may move for an order compelling an answer, designation, production, or inspection."  Fed. R. Civ. P. 37(a)(3)(B).  The court may order a party to provide further responses to an "evasive or incomplete disclosure, answer, or response."  Fed. R. Civ. P. 37(a)(4).  "District courts have 'broad discretion to manage discovery and to control the course of litigation under Federal Rule of Civil Procedure 16.'"  Hunt v. County of Orange, 672 F.3d 606, 616 (9th Cir. 2012) (quoting Avila v. Willits Envtl. Remediation Trust, 633 F.3d 828, 833 (9th Cir. 2011)).

The party moving to compel bears the burden of informing the court (1) which discovery requests are the subject of the motion to compel, (2) which of the responses are disputed, (3) why the party believes the response is deficient, (4) why any objections are not justified, and (5) why the information sought through discovery is relevant to the prosecution of this action.  McCoy v. Ramirez, No. 1:13-cv-1808-MJS (PC), 2016 WL 3196738, at *1 (E.D. Cal. June 9, 2016); Ellis v. Cambra, No. 1:02-cv-5646-AWI-SMS PC, 2008 WL 860523, at *4 (E.D. Cal. Mar. 27, 2008).

The purpose of discovery is to "remove surprise from trial preparation so the parties can obtain evidence necessary to evaluate and resolve their dispute."  United States v. Chapman Univ., 245 F.R.D. 646, 648 (C.D. Cal. 2007) (quotation and citation omitted).  Rule 26(b)(1) of the Federal Rules of Civil Procedure offers guidance on the scope of discovery permitted:

> Parties may obtain discovery regarding any nonprivileged information that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely

benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

"Relevance for purposes of discovery is defined very broadly." Garneau v. City of Seattle, 147 F.3d 802, 812 (9th Cir. 1998). "The party seeking to compel discovery has the burden of establishing that its request satisfies the relevancy requirements of Rule 26(b)(1). Thereafter, the party opposing discovery has the burden of showing that the discovery should be prohibited, and the burden of clarifying, explaining or supporting its objections." Bryant v. Ochoa, No. 07cv200 JM (PCL), 2009 WL 1390794, at *1 (S.D. Cal. May 14, 2009) (internal citation omitted).

## II.  Discussion

### A.  Relevance Objection

Generally, Secretary Allison objects to the eleven requests at issue because each request "calls for the production of documents that exceed discovery permitted under Rule 26, Fed. R. Civ. Pro., because it seeks documents that are not relevant to Lipsey's claim. Specifically, this request seeks documents . . . not relevant to whether [Guard One] . . . caused sleep deprivation." (See, e.g., ECF No. 7254-7 at 6.)  Despite her argument that the penological objectives of Guard One are not relevant, the Secretary has refused to stipulate that defendants will not raise the issue. While this court recognizes the Secretary's positions appear in conflict, Secretary Allison's refusal to stipulate was part of the parties' negotiations prior to this motion to compel.  This court will not consider it in determining the relevance of the penological justification for Guard One.

### 1.  Applicable Legal Standards

Discovery meets the relevancy requirements of Rule 26(b)(1) if it "is relevant to any parties' claim or defense" or "appears reasonably calculated to lead to the discovery of admissible evidence." See United States v. Curtin, 489 F.3d 935, 954 (9th Cir. 2007). "'The relevance standard is applied more liberally in discovery than it is at trial.'" Hankey v. Home Depot USA, Inc., No. 2:19-cv-0413-JAM-CKD, 2020 WL 3060399, at *2 (E.D. Cal. June 9, 2020) (quoting N. Shore-Long Island Jewish Health Sys., Inc. v. MultiPlan, Inc., 325 F.R.D. 36, 47 (E.D.N.Y. 2018)).

1    The Supreme Court has described the Eighth Amendment as "the constitutional limitation

2   upon punishments: they cannot be 'cruel and unusual.'"  Rhodes v. Chapman, 452 U.S. 337, 345-

3   46 (1981)

4             Today the Eighth Amendment prohibits punishments which,
          although not physically barbarous, "involve the unnecessary and
5           wanton infliction of pain," *Gregg v. Georgia*, *supra*, at 173, 96 S.Ct.,
          at 2925, or are grossly disproportionate to the severity of the crime,
6           *Coker v. Georgia*, 433 U.S. 584, 592, 97 S.Ct. 2861, 2866, 53
          L.Ed.2d 982 (1977) (plurality opinion); *Weems v. United States*, 217
7           U.S. 349, 30 S.Ct. 544, 54 L.Ed. 793 (1910). Among "unnecessary
          and wanton" inflictions of pain are those that are "totally without
8           penological justification." *Gregg v. Georgia*, *supra*, 428 U.S., at 183,
          96 S.Ct., at 2929; *Estelle v. Gamble*, 429 U.S. 97, 103, 97 S.Ct. 285,
9           290, 50 L.Ed.2d 251 (1976).

10  Id. at 345-46 (footnote omitted).  In the context of medical care, the Court noted that it has held

11  conduct unconstitutional because it was "repugnant to the Eighth Amendment punishments which

12  are incompatible with 'the evolving standards of decency that mark the progress of a maturing

13  society.'"  Estelle, 429 U.S. at 102-03 (citations omitted).

14    An Eighth Amendment challenge to prison conditions requires a prisoner to "satisfy a

15  two-part test.  Grenning v. Miller–Stout, 739 F.3d 1235, 1238 (9th Cir. 2014).  The objective part

16  of the test requires a showing that "the defendants deprived the plaintiff of the 'minimal civilized

17  measure of life's necessities.'"  Id. (quoting Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir.

18  2002)).  The second part of the test is subjective.  The prisoner must show "the defendants 'acted

19  with 'deliberate indifference' in doing so."  Id.

20    The Ninth Circuit recognizes "*general* rights against excess noise and prison conditions

21  that deprive inmates of 'identifiable human need[s],' such as sleep."  Rico v. Ducart, 980 F.3d

22  1292, 1298 (9th Cir. 2020) (emphasis in original).  Plaintiff Lipsey's allegations, if proven, could

23  meet the objective component of the Eighth Amendment test.

24    The second, subjective, part of the Eighth Amendment test

25             requires a showing that the defendant knew of an excessive risk to
          inmate health or safety that the defendant deliberately ignored.
26           *Johnson v. Lewis*, 217 F.3d 726, 734 (9th Cir. 2000).  Whether an
          official possessed such knowledge "is a question of fact subject to
27           demonstration in the usual ways, including inference from
          circumstantial evidence." *Id.* (internal quotation marks omitted).
28           Knowledge of a risk of harm can be inferred where that risk is

5

1
2
"obvious," but prison officials are not liable if they respond reasonably to the risk. *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir .2010).

3
Grenning, 729 F.3d at 1239.

4
5
**2. Are the Penological Objectives of Guard One Relevant to the Eighth Amendment Analysis?**

6
The relevance question asks this:  may defendants contend that Guard One serves a

7
legitimate penological objective in defending against Lipsey's Eighth Amendment claim?  For the

8
reasons set forth below, this court finds this penological objective issue may be relevant to the

9
defense of Plaintiff Lipsey's Eighth Amendment claim.  Therefore, discovery to gather evidence

10
on that issue is appropriate.

11
There is little case law directly addressing this relevance question.  The Supreme Court's

12
decision in Turner v. Safly, 482 U.S. 78 (1987) provides some background to courts'

13
consideration of the issue.  In Turner, the Court held generally that where a prison regulation

14
"impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to

15
legitimate penological interests." 482 U.S. at 89.  Specifically, the Court held that a prison's

16
limitation on inmate-to-inmate correspondence did not violate the First Amendment because the

17
limitation was content neutral and because it was reasonably related to the legitimate interest of

18
prison security and safety. The Court also examined a restriction on the right to marry.  The

19
Court held that the prison's concerns of security and rehabilitation were not reasonably related to

20
restrictions on that right.  Id. at 99-100.

21
In Johnson v. California, 543 U.S. 499 (2005), the Court considered whether Turner's

22
reasonable relationship test should be applied to a claim that a prison regulation classifying

23
prisoners by race violated prisoners' Fourteenth Amendment rights to equal protection.  The

24
Court held that strict scrutiny is the test for race-based prison regulations.  In arriving at that

25
conclusion, the Court discussed its past consideration of prison regulations.  It noted that the

26
reasonable relationship test was not used in Eighth Amendment cases.  "Rather, the question in an

27
Eighth Amendment case is whether prison officials were deliberately indifferent to an inmate's

28
health and safety."  Johnson, 543 U.S. at 511-12 (citations omitted).  "Mechanical deference to

1   the findings of state prison officials in the context of the eighth amendment would reduce that

2   provision to a nullity in precisely the context where it is most necessary." Spain v. Procunier, 600

3   F.2d 189, 193-194 (9th Cir. 1979) (Kennedy, J.), cited in Johnson, 543 U.S. at 511.  Notably, the

4   Court's consideration of Eighth Amendment issues did not result in a holding that penological

5   justifications are irrelevant to Eighth Amendment claims.  Rather, the Court noted that such a

6   justification would not, alone, defeat an Eighth Amendment claim.

7           In 2014, the Ninth Circuit found that "[t]he precise role of legitimate penological interests

8   is not entirely clear in the context of an Eighth Amendment challenge to conditions of

9   confinement." Grenning, 739 F.3d at 1240.  The court examined Supreme Court precedent and

10  found lack of clarity on the issue.  The Ninth Circuit court also recognized that it had considered

11  possible penological interests when ruling on Eighth Amendment issues in the past.

> The Supreme Court has written that the test of *Turner v. Safley*, 482
> U.S. 78 (1987), which requires only a reasonable relationship to a
> legitimate penological interest to justify prison regulations, does not
> apply to Eighth Amendment claims. *Johnson v. California*, 543 U.S.
> 499, 511 (2005) ("[W]e have not used *Turner* to evaluate Eighth
> Amendment claims of cruel and unusual punishment in prison. We
> judge violations of that Amendment under the 'deliberate
> indifference' standard, rather than *Turner's* 'reasonably related'
> standard. This is because the integrity of the criminal justice system
> depends on full compliance with the Eighth Amendment.") (internal
> citations omitted). The existence of a legitimate penological
> justification has, however, been used in considering whether adverse
> treatment is sufficiently gratuitous to constitute punishment for
> Eighth Amendment purposes. *See Rhodes v. Chapman*, 452 U.S. 337,
> 346 (1981) ("Among 'unnecessary and wanton' inflictions of pain
> are those that are 'totally without penological justification.' "
> (quoting *Gregg v. Georgia*, 428 U.S. 153, 183 (1976))). In both
> *Chappell*, 706 F.3d at 1058, and *Keenan*, 83 F.3d at 1090, we
> referred to possible legitimate penological interests when
> considering allegations that continuous lighting violated the Eighth
> Amendment.

23  Id. (full internal citations omitted); see also Perez v. Moore, No. 18-CV-04856-SI, 2020 WL

24  2793647, at *11 (N.D. Cal. May 29, 2020) (Case law is not clear "how the existence of a

25  legitimate penological purpose for officials' actions affects an Eighth Amendment claim in

26  general.").

27          The Ninth Circuit in Grenning did not further consider the issue.  Rather, the court held

28  that "[e]ven if it were possible for a defendant to defeat an Eighth Amendment conditions of

1    confinement claim at summary judgment by showing a legitimate penological interest,

2    Defendants have failed to make such a showing in this case."  739 F.3d at 1240-41.

3           To the extent the Supreme Court's opinion in Johnson limits the use of  penological

4    justification in the defense of an Eighth Amendment claim, in at least two Ninth Circuit cases

5    decided after Johnson, the court did consider whether or not a prison had a penological

6    justification for conduct challenged under the Eighth Amendment.  In Chappell v. Mandeville,

7    706 F.3d 1052 (9th Cir. 2013), the court considered whether the defendants were entitled to

8    qualified immunity in a case raising an Eighth Amendment challenge to continuous lighting

9    during contraband watch.  The court held that "no court had ruled on whether contraband watch

10   constitutes a legitimate penological purpose that would justify continuous lighting."  Therefore,

11   defendants "did not have fair notice that their actions were unconstitutional."  706 F.3d at 1059.

12          More recently, in a case involving an Eighth Amendment claim of sexual assault, the

13   Ninth Circuit held "that a prisoner presents a viable Eighth Amendment claim where he or she

14   proves that a prison staff member, acting under color of law and without legitimate penological

15   justification, touched the prisoner in a sexual manner or otherwise engaged in sexual conduct for

16   the staff member's own sexual gratification, or for the purpose of humiliating, degrading, or

17   demeaning the prisoner."  Bearchild v. Cobban, 947 F.3d 1130, 1144 (9th Cir. 2020) (citations

18   omitted).

19          Secretary Allison argues that Bearchild is inapplicable because it simply reflects what

20   courts have held – that the lack of penological justification applies only where the conduct was

21   egregious and gratuitous.  The Secretary contends that Judge Karlton interpreted the Eighth

22   Amendment standards in that way in an order issued in the present class action in 2014.

23   However, neither the decision in Bearchild nor Judge Karlton's decision in this case require this

24   court to hold at the discovery phase that penological justification may not be part of the Eighth

25   Amendment equation in this case.

26          In his 2014 order, Judge Karlton considered, among other things, whether defendants had

27   sufficiently remedied the Eighth Amendment violations the court found in 1995.  Coleman v.

28   Brown, 28 F. Supp. 3d 1068 (E.D. Cal. 2014) (ECF No. 5131).  In making that determination,

1    Judge Karlton considered whether there were ongoing objectively unconstitutional conditions.

2    Judge Karlton held that

3
4              the presence of a legitimate penological justification for conditions
               of confinement challenged under the Eighth Amendment may be
5              considered in determining whether the challenged condition
               constitutes punishment prohibited by the Eighth Amendment. See
6              Grenning, 739 F.3d at 1240 (discussing Chappell v. Mandeville, 706
               F.3d 1052, 1058 (9th Cir. 2013) and Keenan v. Hall, 83 F.3d 1083,
               1090 (9th Cir. 1996)).

7    (ECF No. 5131 at 11.) Judge Karlton also quoted the Ninth Circuit's statement in Grenning that

8    "'[t]he existence of a legitimate penological justification has . . . been used in considering

9    whether adverse treatment is sufficiently gratuitous to constitute punishment for Eighth

10   Amendment purposes.'" (Id.)

11           Even if the penological justification issue is only available to determine whether or not

12   defendants' conduct was gratuitous, this court will not make a determination that defendants'

13   conduct does or does not meet this standard. It is enough at the discovery phase to find that

14   defendants could raise the penological justification for the use of Guard One to counter plaintiff's

15   showing that sleep deprivation caused by the use of Guard One was objectively so severe that it

16   meets the first Eighth Amendment factor. The factual and legal basis for that argument is better

17   decided at the summary judgment stage. Further, as the court noted in Grinnell, the Ninth Circuit

18   did look to the penological justification when considering challenges to continuous lighting in

19   Chappell and in Keenan. In those cases, the court did not limit the inquiry to conduct that was

20   "gratuitous."

21           This court recognizes that Chief Judge Mueller ordered the use of Guard One in the

22   remedial phase of these proceedings. Secretary Allison argues that Chief Judge Mueller's order

23   establishes a "law of the case" that Guard One serves a legitimate penological interest. "Under

24   the law of the case doctrine, a court will generally refuse to reconsider an issue that has already

25   been decided by the same court or a higher court in the same case." See Jeffries v. Wood, 114

26   F.3d 1484, 1488–89 (9th Cir.1997) (en banc), overruled on other grounds by Gonzalez v.

27   Arizona, 677 F.3d 383 (9th Cir. 2012), aff'd sub nom. Arizona v. Inter Tribal Council of Arizona,

28   Inc., 570 U.S. 1 (2013) . The Ninth Circuit recognized an exception to the law-of-the-case

1    doctrine where "substantially different evidence was adduced at a subsequent trial." Gonzalez,

2    677 F.3d at 390 (citing Jeffries, 114 F.3d at 1489).

3        In making the law-of-the-case argument, the Secretary fails to recognize Chief Judge's

4    Mueller's order is not a ruling on an Eighth Amendment claim.  Rather, it is part of the fluid

5    remedial process in this case and was based on the information available at the time.  In an

6    ongoing remedial phase, changes to remedies based on new facts may be necessary.  See, e.g.,

7    Brown v. Plata, 563 U.S. 493, 516 (2011) ("When a court attempts to remedy an entrenched

8    constitutional violation through reform of a complex institution, such as this statewide prison

9    system, it may be necessary in the ordinary course to issue multiple orders directing and adjusting

10   ongoing remedial efforts.").  In granting Plaintiff Lipsey's motion to intervene, Chief Judge

11   Mueller found that Lipsey's claim is "directly relevant to the implementation of the remedial plan

12   in this case." (ECF No. 6488.)  While suicide prevention is undoubtedly a legitimate penological

13   goal, whether Guard One *serves* that goal is a question that can be revisited in this case.

14       In fact, Chief Judge Mueller has reconsidered the use of Guard One since she originally

15   ordered it in 2015.  Based on concerns that the use of Guard One was affecting inmates' sleep,

16   Chief Judge Mueller amended the way in which Guard One is used. (See ECF No. 5487 (in 2016

17   court approved stipulation limiting use of Guard One to only every hour at Pelican Bay State

18   Prison).)

19       This court recognizes that consideration of the penological justifications for Guard One

20   must necessarily include the fact Guard One's use has been ordered by the court.  Nonetheless,

21   while it likely does not, alone, constitute a defense to the Eighth Amendment claim, the case law

22   described above shows that the issue is potentially available to defendants as part of a broader

23   defense that, objectively, Guard One does not have an unconstitutional impact on sleep.

24   Accordingly, this court finds that whether or not Guard One serves legitimate penological

25   objectives may be relevant to the court's analysis of Plaintiff Lipsey's Eighth Amendment claim.

26   Because broad fact-finding is permitted at the discovery phase, this court will grant Plaintiff

27   Lipsey's motion as to discovery requests that seek information relevant to the penological

28   justification issue.

**B.  Discussion of Individual Requests for Production at Issue**

**Request For Production No. 35**:

All documents relating to any investigation, analysis, evaluation, or study of any impact on inmate suicides or attempted suicides caused or alleged to be caused by the Guard One system or welfare check program.

**Response To Request For Production No. 35**:

Defendants object to this request on the grounds that it is overly broad and calls for the production of documents that exceed discovery permitted under Rule 26, Fed. R. Civ. Pro., because it seeks documents that are not relevant to Lipsey's claim. Specifically, this request seeks documents concerning the efficacy of Guard One and CDCR's long-standing policies requiring welfare checks on inmates placed in segregated housing and security housing units. Lipsey's claim alleges that the Guard One system disturbs his sleep, not that it causes suicide. The efficacy of welfare checks is monitored by the Coleman Special Master and is not relevant to Lipsey's claim. Defendants further object to this request to the extent that it seeks the production of documents that are protected by attorney-client privilege.

**Discussion of Request No. 35**

Plaintiff Lipsey argues that [b]ecause Guard One ostensibly prevents suicide by ensuring compliance with welfare checks, Lipsey is entitled to see any studies or investigations that the CDCR has undertaken about whether Guard One in fact accomplishes that objective." This court agrees.  This request seeks information at the heart of the "legitimate penological objective" inquiry.  If Guard One has been effective in preventing suicide, defendants may be entitled to argue that it serves a penological objective and is, therefore, not the sort of sleep deprivation that, objectively satisfies the Eighth Amendment's prohibition on cruel and unusual punishment.

Secretary Allison next argues that information about the efficacy of the Guard One checks is also irrelevant because its efficacy is monitored by the Special Master.  After considering defendants' similar arguments in opposition to Plaintiff Lipsey's motion to intervene, Chief Judge Mueller permitted Plaintiff Lipsey's claim to go forward, recognizing that the additional information garnered through the claim may be relevant to the use of Guard One. (ECF No. 6487.)  In opposition to Plaintiff Lipsey's request for broader discovery, defendants again argued

11

1 that the use of Guard One is fully monitored by the Special Master and Plaintiff Lipsey has access

2 to the Special Master's findings. (See ECF No. 7165.) While Chief Judge Mueller noted, but did

3 not directly address, defendants' contention, she granted Plaintiff Lipsey's motion for further

4 discovery. (ECF No. 7191.) Judge Mueller's decisions demonstrate a willingness to consider

5 evidence beyond that collected by the Special Master.

6      This court will compel the Secretary to respond to Request for Production of Documents

7 No. 35.

8

9      **Request For Production No. 36**:

10
11      All documents relating to the CDCR's adoption of the Guard One
     system, including but not limited to communications with class
     counsel, communications with the supplier or manufacturer of the
12      Guard One system, internal analyses of the costs and benefits of the
     Guard One system, or other internal communications regarding
13      adoption of the Guard One system.

     **Response To Request For Production No. 36**:
14

15      Defendants object to this request on the grounds that it is overly
     broad and calls for the production of documents that exceed
16      discovery permitted under Rule 26, Fed. R. Civ. Pro., because it
     seeks documents that are not relevant to Lipsey's claim. Specifically,
17      this request seeks documents concerning the adoption of the Guard
     One system, which is not relevant to whether, once implemented, it
18      caused sleep deprivation. Defendants also object to this request on
     the grounds that documents related to a cost-benefit analysis of the
19      Guard One monitoring system have no bearing on Lipsey's limited
     claim in intervention. Defendants further object to this request to the
20      extent that it seeks the production of documents that are protected by
     attorney-client privilege.

21      Without waiving these objections, and after a reasonable search and
     diligent inquiry, Defendants will produce documents that discuss the
22      adoption of Guard One.

23      **Discussion of Request No. 36**

24      Defendants agreed to produce documents regarding the adoption of Guard One but

25 refused to produce those showing any cost/benefit analysis in doing so. (ECF No. 7254 at 16;

26 ECF No. 7280 at 13 n.4.)

27      Any cost/benefit analysis of Guard One relates only to an argument that Guard One was

28 not the best welfare check system available. Plaintiff Lipsey fails to show any legal basis to find

1   that the availability of alternatives to the Guard One system is relevant to any defense that the

2   system serves a legitimate penological objective.  The fact that there may have been welfare

3   check alternatives that may not have disrupted inmate sleep and/or were more financially

4   sensible, should not affect the court's consideration of the efficacy of Guard One.  Therefore, this

5   court will not compel defendants to provide information about the costs and benefits of Guard

6   One and of any alternatives considered.

7

8   **Request For Production No. 41**:

9
    Documents sufficient to show the cost of CDCR's purchases of
    equipment used to carry out the Guard One system.
10

    **Response To Request For Production No. 41**:
11

12   Defendants object to this request on the grounds that it is overly
     broad and calls for the production of documents that exceed
13   discovery permitted under Rule 26, Fed. R. Civ. Pro., because it
     seeks documents that are not relevant to whether the Guard One
14   system causes sleep deprivation. Defendants also object to this
     request to the extent that it seeks the production of documents that
15   are protected by attorney-client privilege.

16   **Discussion of Request No. 41**

17        For the reasons described in this court's discussion of Request No. 36, documents

18   regarding the costs of implementing Guard One are not relevant to any penological justification

19   defense. Plaintiff Lipsey's motion to compel a response to Request No. 41 is denied.

20

21   **Request For Production No. 42**:

22   All documents concerning CDCR officers' compliance or lack of
     compliance with the welfare check program before the introduction
23   of the Guard One system, including but not limited to any evidence
     of falsified records of welfare checks.
24

     **Response To Request For Production No. 42**:
25

26   Defendants object to this request on the grounds that it is overly
     broad and calls for the production of documents that exceed
27   discovery permitted under Rule 26, Fed. R. Civ. Pro., because it
     seeks documents that are not relevant to whether the Guard One
28   system causes sleep deprivation. Defendants also object to this
     request on the grounds that it is duplicative of other requests

1
2

regarding implementation of Guard One, and to the extent that it seeks the production of documents that are protected by attorney-client privilege.

3
4
5

Without waiving these objections, and after a reasonable search and diligent inquiry, Defendants produce the reports by the Coleman Special Master and his suicide prevention expert that concern CDCR's officers' compliance with the Guard One policy.

6

**Discussion of Request No. 42**

7

Plaintiff Lipsey requests documents regarding the efficacy of welfare checks prior to the

8

introduction of Guard One. Secretary Allison agreed to provide documents regarding compliance

9

with Guard One. Secretary Allison's provision of those documents is not responsive to Plaintiff

10

Lipsey's request. This court agrees that information regarding compliance with the welfare check

11

system used prior to the use of Guard One is relevant to compare whether Guard One is serving

12

its purpose - ensuring better compliance with welfare checks.

13

14

**Request For Production No. 43**:

15
16
17

All documents concerning compliance with the Guard One Order, including but not limited to communications with class counsel and internal communications regarding the requirements of the Guard One Order.

**Response To Request For Production No. 43**:

18
19
20
21
22

Defendants object to this request on the grounds that it is overly broad, vague, and ambiguous as to the term compliance, and calls for the production of documents that exceed discovery permitted under Rule 26, Fed. R. Civ. Pro. Defendants also object to this request on the grounds that it is duplicative of other requests regarding use of Guard One and to the extent that it seeks the production of documents that are protected by attorney-client privilege.

23
24

Without waiving these objections, and after a reasonable search and diligent inquiry, Defendants produce the reports by the Coleman Special Master and his suicide prevention expert that concern CDCR's officers' compliance with the Guard One policy.

25

**Discussion of Request No. 43**

26

Secretary Allison agreed to provide documents regarding officers' compliance with the

27

Guard One system ordered by the court. Plaintiff Lipsey simply argues the relevance of such

28

documents. He does not argue that Secretary Allison's production of the specified documents is

14

1   inadequate. (See ECF No. 7254 at 17-19; ECF No. 7287.) Plaintiff Lipsey bears the burden of

2   showing why any discovery response is deficient. McCoy, 2016 WL 3196738, at *1. Because he

3   fails to meet that burden, this court will not order the Secretary to produce further responses to

4   Request No. 43.

5

6   **Request For Production No. 47:**

7   All documents concerning training of CDCR officers or employees
    relating to suicide, including but not limited to policy manuals,
8   internal memoranda, training presentations, or audio or video
    training programs.
9

    **Response To Request For Production No. 47**:
10

11  Defendants object to this request on the grounds that it is overly
    broad and calls for the production of documents that exceed
12  discovery permitted under Rule 26, Fed. R. Civ. Pro., because it
    seeks documents that are not relevant to whether the Guard One
13  system causes sleep deprivation.

14  **Discussion of Request No.47**

15       Secretary Allison agreed to produce documents relevant to the training of officers on the

16  use of Guard One. (See ECF No. 7280 at 14.) This court agrees with the Secretary's argument

17  that documents regarding training on suicide prevention generally are not relevant to Plaintiff

18  Lipsey's contention that Guard One, not other suicide prevention measures, violates the Eighth

19  Amendment. The Secretary will not be ordered to provide further documents responsive to

20  Request No. 47.

21

22  **Requests For Production Nos. 48, 49, 50, and 51:**

23       Request Nos. 48 and 49 seek documents "identifying suicides or attempted suicides" of

24  inmates subject to Guard One. Request Nos. 50 and 51 seek documents "identifying suicides or

25  attempted suicides" of inmates subject to the welfare checks used prior to the implementation of

26  Guard One. Secretary Allison interposes the same objection to each request:

27  Defendants object to this request on the grounds that it is overly
    broad and calls for the production of documents that exceed
28  discovery permitted under Rule 26, Fed. R. Civ. Pro., because it

1          seeks documents that are not relevant to whether the Guard One
2          system causes sleep deprivation.

3      Secretary Allison argues these requests are overbroad because they seek documents that

4  total a 25-year time period from the initiation of the welfare check system in 2006 to the present.

5  She also argues they are not relevant.  (See ECF No. 7280 at 13-16.)

6      The court finds that documents regarding the rate of suicide, or attempted suicide, among

7  inmates who were and/or are subject to the Guard One security checks seeks information relevant

8  to any assertion that Guard One reduces inmate suicide and therefore serves a penological

9  objective.  Further, information on suicides prior to the use of Guard One would provide a basis

10  for comparison to show Guard One has, or has not, improved the rate of inmate suicide.

11      However, this court is concerned that Plaintiff Lipsey seeks documents "identifying"

12  suicides and attempted suicides.  It appears that Lipsey may seek to identify individual prisoners.

13  This court finds such information unnecessary to any possible defense that Guard One has

14  improved the suicide rate and would unnecessarily invade inmates' privacy.

15      With this court's limitation on Request Nos. 48, 49, 50, and 51, the Secretary would be

16  compelled to provide documents apparently identical to documents sought in Request No. 35.

17  Any duplication does no harm to the Secretary who need only provide the responsive documents

18  once.  Therefore, this court will compel the Secretary to respond to Request Nos. 48, 49, 50, and

19  51 by providing:  (1) all documents with information on the number of suicides and attempted

20  suicides during the time Guard One was used in security housing units; and (2) all documents

21  with information on the number of suicides and attempted suicides of inmates in security housing

22  units who were subject to court-ordered welfare checks prior to the implementation of Guard

23  One.

24

25      **Request For Production No. 56**:

26          Documents sufficient to identify any persons who conducted any
           training related to the Guard One system, the welfare check program,
27          inmate sleep, suicide, or excessive noise.

28  ////

16

**Response To Request For Production No. 56**:

> Defendants object to this request on the grounds that it is overly broad and calls for the production of documents that exceed discovery permitted under Rule 26, Fed. R. Civ. Pro., because it seeks documents that are not relevant to whether the Guard One system causes sleep deprivation. Defendants further object to this request on the grounds that it is entirely duplicative of Request Nos. 45, 46, and 47. Without waiving these objections, and after a reasonable search and diligent inquiry, Defendants do not have any documents responsive to this request in their possession, custody, or control.

**Discussion of Request No. 56**

Above, this court grants Plaintiff Lipsey's motion to compel the Secretary to provide information about the substance of officer training in the use of the Guard One system. This court finds the identity of officers who conducted that training to be too attenuated to provide potentially relevant information. The Secretary will not be compelled to provide documents responsive to Request No. 56.

For the foregoing reasons, and good cause appearing, IT IS HEREBY ORDERED that Plaintiff Lipsey's Motion to Compel (ECF No. 7254) is granted in part and denied in part as follows:

1. Within 30 days of the filed date of this order, Secretary Allison shall provide Plaintiff Lipsey with documents responsive to Document Production Request Nos. 35 and 42.

2. Also within 30 days, Secretary Allison shall provide Plaintiff Lipsey with the following documents responsive to Document Production Requests Nos. 48, 49, 50, and 51:

    a. all documents with information on the number of suicides and attempted suicides during the time Guard One was used in security housing units; and

    b. all documents with information on the number of suicides and attempted suicides of inmates in security housing units who were subject to court-ordered welfare checks in security housing units prior to the implementation of Guard One.

2. Plaintiff Lipsey's Motion to Compel further responses to Document Production Request Nos. 36, 43, and 47 is denied.

////

17

1      3. Plaintiff's Lipsey's Motion to Compel responses to Document Production Request

2   Nos. 41 and 56 is denied.

3   Dated: September 9, 2021

4

5

6                                    DEBORAH BARNES
                                     UNITED STATES MAGISTRATE JUDGE
7

8

9

10

11

12

13

14

15

16

17

18   DLB:9
     DB Prisoner Inbox/Civil Rights/S/cole0520.lipsey MTC/
19

20

21

22

23

24

25

26

27

28
                                    18