1        IN THE UNITED STATES DISTRICT COURT
          EASTERN DISTRICT OF CALIFORNIA
2    BEFORE THE HONORABLE DEBORAH BARNES, MAGISTRATE JUDGE

3

    RALPH COLEMAN, et al.,
4
                  Plaintiffs,
5   vs.                              Sacramento, California
                                     No. 2:90-cv-00520-KJM
6   GAVIN NEWSOM, et al.,            Friday, September 3, 2021
                                     10:04 a.m.
7                 Defendants.
    _____/
8
    AND RELATED ACTIONS.
9   _____/

10                      --oOo--
          REPORTER'S TRANSCRIPT OF PROCEEDINGS
11              RE: MOTION TO COMPEL
       *(Proceedings held via Zoom video conference.)*
12                      --oOo--

13  APPEARANCES:

14  For the                    RECHMAN JORGENSEN LEHMAN &
    Plaintiff/Intervenor:      FELDBERG LLP
15                             KATE M. FALKENSTIEN
                               Attorney at Law
16                             100 Marine Parkway, Suite 300
                               Redwood Shores, CA  94065
17
    For the Defendants:        OFFICE OF THE ATTORNEY GENERAL
18                             NAMRATA KOTWANI
                               ADRIANO HRVATIN
19                             Attorneys at Law
                               455 Golden Gate Ave., Suite 11000
20                             San Francisco, CA  94102

21  Official Reporter:         KACY PARKER BARAJAS
                               CSR No. 10915, RMR, CRR, CRC
22                             UNITED STATES DISTRICT COURT
                               501 I Street, Suite 4-200
23                             Sacramento, CA  95814
                               kbarajas.csr@gmail.com
24
    *Proceedings recorded by mechanical stenography.  Transcript*
25  *produced by computer-aided transcription.*

1           SACRAMENTO, CALIFORNIA, FRIDAY, SEPTEMBER 3, 2021, 10:04 AM
2                                --oOo--
3               THE CLERK:  Come to order, the United States District
4    Court for the Eastern District of California is now in session.
5    The Honorable Deborah Barnes, Magistrate Judge, presiding.
6               Calling civil case 90-00520-KJM-DB, Ralph Coleman
7    versus Gavin Newsom, et al.
8               Your Honor, this matter is on calendar for
9    plaintiff/intervenor Christopher Lipsey's motion to compel.
10              THE COURT:  All right.  Good morning everyone.  I hope
11   all in your circles are safe and healthy.
12              Let's start with appearances and also I will ask if
13   you could please indicate whether or not you and your client
14   consent to this proceeding via Zoom.  Let's start with the
15   plaintiffs.
16              MS. FALKENSTIEN:  I'm Kate Falkenstien for
17   plaintiff/intervenor Christopher Lipsey, and we do consent to
18   doing this over Zoom.  Thank you.
19              THE COURT:  Thank you.  Good morning.
20              And for the defense.
21              MS. KOTWANI:  Good morning, your Honor.  I'm Namrata
22   Kotwani for the defendants, and we consent to having this
23   hearing by Zoom.  I'm also joined by my colleague
24   Mr. Adriano Hrvatin.
25              MR. HRVATIN:  Good morning, your Honor.

1       THE COURT:  Good morning to -- who will be speaking
2   this morning for the defense?
3       MS. KOTWANI:  I will be, your Honor.
4       THE COURT:  And are you with the Attorney General's
5   Office, or are you outside counsel?
6       MS. KOTWANI:  I am with the Attorney General's Office,
7   your Honor.
8       THE COURT:  All right.  Is Mr. --
9       MS. KOTWANI:  Hrvatin, your Honor.
10      THE COURT:  Thank you.  Are you with the Attorney
11  General's Office as well?
12      MR. HRVATIN:  Yes, your Honor.
13      THE COURT:  All right.
14      All right.  We're on calendar today for the
15  plaintiff/intervenor Lipsey's motion to dis -- not motion to
16  dismiss, I think for a motion to compel discovery, are we not?
17      MS. FALKENSTIEN:  Yes, that's correct.
18      THE COURT:  All right. And I am going to indicate
19  that I have read the pleadings.  And I'm going to hear from
20  both parties, but I am going to ask that the parties really
21  focus on the issue of relevance.  I think the issue of
22  relevance that's been raised by the defense really touches and
23  concerns all of the discovery requests at issue, and so I do
24  not need to hear argument on each individual discovery request
25  as to why that is or is not relevant, but I think I want to

1    hear from you folks on relevance in general.
2            Also I will be taking the matter under submission this
3    morning, and I will be issuing a written order.
4            Additionally, I am inclined to grant the plaintiff's
5    request, just to give you all a heads up, and I may serve the
6    defense on this issue.  I'm having a difficult time
7    understanding why the -- why there's a -- why there is still
8    the -- how do I want to say this -- specter of a defense that
9    the Guard One -- that the usage of Guard One is justified by a
10   penological interest or justification, and my understanding is
11   that is a potential defense that will be raised by CDCR,
12   et cetera, yet at the same time CDCR is arguing that the
13   requests in that regard are not relevant to the Eighth
14   Amendment claim.
15           And it strikes me -- and additionally what I
16   understand is that CDCR was asked by the plaintiffs if they'll
17   drop the discovery requests at issue if CDCR would agree to not
18   raise the penological justification for use of Guard One, if
19   you would agree to not use it as a defense, and CDCR will not
20   agree to that, which is their right to do so, but they've not
21   agreed, asserting that somehow if they did agree to that, it
22   would be an admission.
23           So I have to tell you, I'm not -- on a larger level,
24   I'm not understanding the relevance argument when there is
25   still the specter that this could be raised as a defense.  I'm

1   also not understanding why, if you agreed not to use this as a
2   defense, how that magically turns into an admission.
3            So perhaps, Ms. Kotwani -- and I'm sure I'm not
4   pronouncing your name correctly because I'm really bad with
5   names -- why don't we start with the larger issue.  I just
6   don't understand your relevance argument when it's potentially
7   a defense.  I'm sorry.  I'm just not getting it.  And your
8   pleading doesn't make it any more obvious to the Court why it
9   almost seems as if CDCR wants to have its cake and eat it too.
10           MS. KOTWANI:  Thank you, your Honor.  I want to
11  clarify the issue.  Let me make it very clear that we're not
12  using a penological interest defense.  That defense is simply
13  not available to us.  Mr. Lipsey here is making an Eighth
14  Amendment claim that the use of Guard One produces excessive
15  noise and unconstitutionally deprives him of sleep.  So in an
16  Eighth Amendment claim, Supreme Court states it, Ninth Circuit
17  states it, and indeed this very Court in an order says that a
18  penological interest defense does not excuse an Eighth
19  Amendment violation.
20           So Mr. Lipsey's burden of proof is to show, one,
21  objectively that Guard One produces an excessive amount of
22  noise, and two, the second prong of the deliberate indifference
23  test to show that CDCR deliberately disregards the risk of
24  noise a substantial harm arising from Guard One.  Now that's
25  their burden of proof.

1             In order to defend that claim, we simply cannot state
2   that we have a reasonable penological interest in implementing
3   Guard One.  If they were to show an Eighth Amendment claim, if
4   they were able to make out or prove their Eighth Amendment
5   claim, a penological interest defense is simply not enough.
6             I can go more into the case law, but let me first make
7   it really clear that we're not going to use the penological
8   interest defense in this case.
9             THE COURT:  So have you -- were you asked to put that
10  statement in writing by the plaintiffs?
11            MS. KOTWANI:  We construed their request that they
12  said we had no penological interest in implementing Guard One.
13  Those are two different things.
14            THE COURT:  Will you answer my first question though
15  before you talk about the two different things.  Was CDCR asked
16  by the plaintiffs to put in writing that you would not be
17  utilizing the penological justification as a defense?
18            MS. KOTWANI:  That's true, your Honor.
19            THE COURT:  And what was your -- and CDCR refused to
20  do that; is that correct?
21            MS. KOTWANI:  That's true.  We were confused by two
22  things here.  That's why we were not able to stipulate.
23            THE COURT:  Before we go into the confusion, did you
24  express CDCR's confusion to the plaintiffs?
25            MS. KOTWANI:  Yes, your Honor.  I believe we did.

1               THE COURT:  Well, either you did -- either you had a

2      conversation with them, or you responded in writing explaining

3      your confusion.  Did either of those -- was there some way it

4      was communicated to CDCR what the confusion was?

5               MS. KOTWANI:  Well, we told them that we would not be

6      able to say that we have no penological interest in

7      implementing the scheme, as we are court ordered to do so.  The

8      Court has said that we are required to follow Guard One.  And

9      so we can't -- and we do believe that the Special Master and

10     the Court's orders in this case are valid, and we are required

11     to follow them.  So we can't stipulate that there's no

12     penological interest in implementing those orders.  However,

13     there exists -- there does not exist a penological interest

14     defense.  So by analogy, you know, in our answer we didn't put

15     that we're going to raise a statute of limitations defense, and

16     yet the plaintiffs have not answered -- have not asked us to

17     stipulate that we won't be using that defense.  We've told

18     them --

19              THE COURT:  Well, isn't statute of limitation arguably

20     an affirmative defense?

21              MS. KOTWANI:  It is, your Honor.  But we're not,

22     neither does our answer indicate.  We've told them in writing

23     this is not a defense.  We've conceded in our motion that this

24     is a defense we are not willing to use.  So it's simply bizarre

25     that they're asking us to -- asking us to stipulate to a

1  defense that's not even legally available to us.  Both
2  parties --
3            THE COURT:  Let me ask you that.  Let me ask you a
4  follow-up question on that issue.  The Ninth Circuit in
5  *Bearchild versus Cobban* from the Ninth at 2020 did state that
6  whether or not the defendants had a penological justification
7  for conduct was relevant to the plaintiff's Eighth Amendment
8  claim in that case.  Why would you differentiate that case from
9  this one?
10           MS. KOTWANI:  Yes, your Honor.  Those cases, those
11 line of cases including the *Grenning* case that the plaintiffs
12 have cited in their brief, those do not deal with the
13 penological interest defense.  What they say is when the
14 plaintiff is talking about the second prong of the deliberate
15 indifference test, when the plaintiff is saying, you know, the
16 conduct at issue is so wanton, it's so gratuitous, that's when
17 a penological interest comes into play.  So the Supreme Court
18 has said when the plaintiff --
19           THE COURT:  This is not from the Supreme Court.  It's
20 from the Ninth Circuit.
21           MS. KOTWANI:  Yes, your Honor.  Even from the Ninth
22 Circuit in the *Grenning* case and the court clarifies when this
23 penological interest question has to be considered, it is when
24 the allegation is that the conduct of the defendants is so
25 wanton, it is so gratuitous that it has no penological

1     interest.

2          THE COURT:  Wouldn't that be determined later?
3     Wouldn't that be determined, arguably, in a motion for summary
4     judgment or other dispositive pleading as opposed to relevancy
5     in a discovery request?  We're talking about --

6          MS. KOTWANI:  Well --

7          THE COURT:  Let me finish.  Here we're talking about a
8     discovery request based -- and your objection, in essence, is
9     based on relevance.  Relevance is a very broad -- has a very
10    broad definition in the discovery context, and there is --
11    seems to be Ninth Circuit case law within the discovery -- just
12    within the discovery context says that this is relevant even if
13    you don't -- ended up not -- eventually not being able to or
14    not using this defense.

15         MS. KOTWANI:  Absolutely, your Honor.  And we agree
16    that relevance is very broad.  What we are trying to say is
17    that it's not relevant to any defense we're making, and it's
18    not relevant to any claim they're making.  It's got nothing to
19    do with their excessive noise complaint and also has nothing to
20    do with our defense because we don't have a penological
21    interest defense available.

22         THE COURT:  But that's not the issue here.  The issue
23    isn't whether or not a court has determined whether or not you
24    can use it.  It's whether or not it's even available to you.
25    And one of the ways to find that out is through the discovery

1     process.

2              MS. KOTWANI:  It's -- your Honor, its not available as

3     a matter of law.

4              THE COURT:  I've got -- okay.  All right.

5              MS. KOTWANI:  We have -- I mean, this very Court at

6     ECF 5131 said that, you know, a penological interest defense is

7     simply irrelevant to an Eighth Amendment claim, and the only

8     time it can come into play, as your Honor has identified, is if

9     the plaintiff makes an allegation this is so wanton it has

10    absolutely no penological justification, and here simply we

11    just don't have a case of a totally gratuitous --

12             THE COURT:  Then why wouldn't you -- if it is such a

13    clear-cut issue for you then -- when I say "you," I mean

14    CDCR --

15             MS. KOTWANI:  Yes.

16             THE COURT:  -- if it's such a clear-cut issue for

17    CDCR, why wouldn't you agree in writing that you're not going

18    to utilize this defense on the basis that it's your opinion

19    that it's not legally available to CDCR?  Why wouldn't you do

20    that?

21             MS. KOTWANI:  Your Honor, we don't believe it's a

22    requirement under the --

23             THE COURT:  I'm not asking if it's a requirement.  I'm

24    asking what is the -- what is the downside to CDCR stating it's

25    not going to utilize a defense that it believes is not

1    available to them as a matter of law?

2           MS. KOTWANI:  I can bring that to my clients again,
3    but I just want to clarify that what we believe the plaintiffs
4    were asking us or that Mr. Lipsey was asking us to stipulate
5    was that we don't have any penological interest in implementing
6    this.

7           THE COURT:  All right.

8           MS. KOTWANI:  As opposed to we don't have a defense
9    available.  So I believe those are two different things.  The
10   fact there's no defense available doesn't mean that we're not
11   required by the Court to do this particular thing.

12          THE COURT:  It strikes the Court that you are mixing
13   apples and oranges, and you're answering my question with a
14   different answer to a different question.  But that's fine.  Is
15   there anything else you would like to add before I ask
16   Ms. Falkenstien if she has any comment she would like to make
17   to the Court?

18          MS. KOTWANI:  Just to make it very clear that we don't
19   have this legal defense available to us.  We don't plan to use
20   it.  It's not relevant to the noise claim at issue here and
21   every document that we have available related to the noise
22   claim and all the complaints and whatever else has been
23   requested.

24          THE COURT:  All right.  Thank you.

25          All right.  Ms. Falkenstien, given that CDCR has just

1  on the record stated they will not be using the penological
2  justification defense to the Eighth Amendment claim, why isn't
3  that sufficient?
4          MS. FALKENSTIEN:  Well, my only sort of remaining
5  concern here is that I'm worried there's a little bit of sort
6  of narrowness or caginess of exactly what's being promised.  If
7  the effectiveness of Guard One in preventing suicides is going
8  to come up in the defendant's presentation at the evidentiary
9  hearing in any way, then it would be relevant.  And I'm
10 concerned that perhaps they're foreclosing some particular
11 characterization of how they might use the effectiveness of
12 Guard One, but if they are really saying that they will not
13 argue at the evidentiary hearing anything about the fact that
14 Guard One allegedly prevents suicides, that from their
15 perspective the Eighth Amendment claim is exactly the same
16 whether or not Guard One is critical to preventing suicides or
17 accomplishes absolutely nothing in preventing suicides, if
18 that's their position, then that would resolve it for me.
19 That's just -- that hadn't been said in the extensive meet and
20 confers on this issue.
21         THE COURT:  All right.  Anything else,
22 Ms. Falkenstien?
23         MS. FALKENSTIEN:  The only other thing I would add is
24 that in response to your Honor's questions about what exactly
25 was said during the meet and confer, the stipulation, and so

1  on, I think all the communications are in the record.  And the
2  proposed stipulation wasn't for them to say that there isn't a
3  penological interest.  It was simply that they wouldn't argue
4  that that interest was relevant to the Eighth Amendment
5  analysis.
6          THE COURT:  All right.  Ms. Kotwani, you had a very
7  visible reaction.  Because we're on Zoom, I can see you right
8  up close.  So it's helpful if you kind of wait until the other
9  side finishes speaking before you start getting ready to go,
10 but I'll give you the last bite at the apple.  I have to say
11 I'm still perplexed, I think is the best word, by CDCR's
12 position.
13         You're on mute.  There you go.  You should be good
14 now.
15         MS. KOTWANI:  Excuse me, your Honor.
16         THE COURT:  No worries.
17         MS. KOTWANI:  I just wanted to say we agree that the
18 effectiveness of Guard One is simply not at issue here.  That's
19 not our position.  We don't intend to bring it up.  And the
20 reason is that this is a very focused inquiry.
21         (Reporter interruption due to connection issues with
22 sound on Zoom.)
23         THE COURT:  Could you start over again, please.
24         MS. KOTWANI:  Yes, your Honor.
25         THE COURT:  Thank you, Counsel.

1           MS. KOTWANI:  We don't believe that the effectiveness
2  of Guard One is at issue in this hearing.  We think it's a
3  narrow inquiry focused on whether there is excessive amounts of
4  noise produced by Guard One such that it deprives Mr. Lipsey of
5  sleep.  So we don't intend to bring that up, and we don't think
6  the Eighth Amendment analysis is at all impacted by the
7  effectiveness of Guard One.
8           The Eighth Amendment analysis is really simple.  It
9  has an objective prong.  It has a subjective prong.  The
10 objective prong is about the noise produced by Guard One, if it
11 is indeed objectively unconstitutional, and the subjective
12 inquiries about CDCR's deliberate indifference.  And so that's
13 all we believe Mr. Lipsey has to show.  And in the defense, we
14 can only show that either of those two things -- that those two
15 things don't exist, that there is not an objective amount of
16 noise, and we were not subjectively indifferent to Mr. Lipsey's
17 complaints about noise.
18          THE COURT:  All right.
19          MS. KOTWANI:  So the effectiveness of Guard One is
20 beyond the purview of this limited intervention.
21          THE COURT:  Isn't that a different issue though as to
22 whether or not -- I mean, that strikes me as a different issue
23 as to whether or not CDCR might use the penological
24 justification issue as a potential defense.
25          MS. KOTWANI:  Yes, your Honor.  We agree.  But

1  Ms. Falkenstien just raised the issue that CDCR might say
2  Guard One is effective.  That's not the point.  We can't say
3  that Guard One is effective, so we get to violate Mr. Lipsey's
4  Eighth Amendment rights.  So we don't think we can say that.
5  Her concern in her brief and just now in what she said was that
6  maybe CDCR is going to say Guard One is effective at preventing
7  suicides.
8           THE COURT:  Well, okay.  Again, that's -- I guess in
9  focusing just on the discovery and whether or not there is the
10 potential that CDCR could use this as a defense, even if
11 they're saying it's a penological justification because we've
12 got a court order, I don't know how the defense is going to
13 finally materialize at this juncture, correct?  We're in the
14 discovery phase.  There's the ability for discovery at this
15 point which discovery often informs and shapes parties'
16 positions as facts and information comes to light.  And I
17 just -- given that, I don't -- I'm still not understanding the
18 relevancy argument on its very basic level, but it seems to be
19 you're arguing a legal position that you want the Court to
20 decide in regards -- don't shake your head yet -- in regards to
21 the relevancy of the discovery requests at issue here, and to
22 me they're two different things.
23          So in any event, unless you have anything else to add,
24 I think I don't have any other questions at this point.  Do you
25 have anything else to add?

1  MS. KOTWANI: Just, your Honor, that we're only asking
2  you to make a threshold inquiry as to relevance, not any other
3  finding. All we're saying is that this defense is legally
4  unavailable to us. As a matter of law, we cannot make it.
5  THE COURT: You have said that repeatedly, and I think
6  there is some case law that might indicate to the contrary in
7  terms of for discovery purposes alone, but we may end up having
8  to agree to disagree; and you know what your remedies are if
9  you ultimately disagree with the Court's ruling.
10  Anything else, Ms. Falkenstien, before I take the
11  matter under submission?
12  MS. FALKENSTIEN: No, your Honor. Thank you.
13  THE COURT: All right. I think that concludes our
14  business here today. Thank you all. Be safe and have a good
15  weekend.
16  MR. HRVATIN: Thank you, your Honor.
17  MS. KOTWANI: Thank you, your Honor.
18  THE CLERK: Court's in recess.
19  (The proceedings adjourned at 10:25 a.m.)
20  --oOo--
21  I certify that the foregoing is a correct transcript from the
22  record of proceedings in the above-entitled matter.
23  /s/ Kacy Parker Barajas
    _____
24  KACY PARKER BARAJAS
    CSR No. 10915, RMR, CRR, CRC
25