1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   RALPH COLEMAN, et al.,                    No.  2:90-cv-0520 KJM DB P

12              Plaintiffs,

13        v.                                    ORDER

14   GAVIN NEWSOM, et al.,

15              Defendants.

16

17

18              Defendants move for reconsideration of a determination by the Special Master.

19   The challenged determination regards defendants' revisions to their policies governing custody

20   checks for inmates discharged from inpatient programs or alternative housing following

21   admission for suicidality.  *See* ECF No. 7290.  Defendants' motion is made under the process

22   provisionally approved by the court on August 3, 2020.   August 3, 2020 Order, ECF No. 6806, at

23   15-17.[1]  Related to their motion, on September 7, 2021, defendants filed an updated suicide

24   _____

25        [1] On September 2, 2020, defendants filed a Notice of Appeal from the August 3, 2020
     order.  ECF No. 6844.  The appeal is pending at the United States Court of Appeals for the Ninth
26   Circuit.  Court of Appeals Docket # 20-16734.  Defendants did not seek a stay of the order and
     have been fully participating in the provisionally approved updating process; neither party has
27   suggested the pendency of that appeal deprives this court of jurisdiction over the instant motion
     for reconsideration.
28

                                                  1

1    prevention activation schedule in which they represent that the deadline for completion of certain

2    court-ordered recommendations is now postponed indefinitely pending the court's resolution of

3    the motion for reconsideration.  ECF No. 7299 at 2, 7-8.

4              For the reasons explained in this order, the court denies the motion for

5    reconsideration without prejudice.  Given the issues raised by the motion, the court will include

6    discussion of the Program Guide updating process on the agenda for the October 1, 2021 status

7    conference, as described below.

8    I.       BACKGROUND

9              A.  Updating Process/Suicide Prevention Remediation

10             The motion for reconsideration implicates two remedial tracks:  the process for

11   updating the remedial plans in this action and complete implementation of court-ordered

12   recommendations for suicide prevention.

13                  1.      Updating Process

14             On July 3, 2019, the court ordered the parties,

15                under the guidance and supervision of the Special Master, [to] work
                  through the All Parties Workgroup process to develop an improved
16                method for regular administrative updating of the 2018 Program
                  Guide Revision and to develop a process for updates and revisions
17                to any part of the remedy found in state regulations and/or
                  provisions of the California Department of Corrections and
18                Rehabilitation's Departmental Operations Manual.

19   July 3, 2019 Order, ECF No. 6211, at 19.[2]  The court ordered the Special Master to submit the

20   final proposed process on or before November 15, 2019, *id.*, a deadline the court then extended

21   by ninety days at the request of the Special Master, *see* January 7, 2020 Order, ECF No. 6441, at

22   6.

23             On February 14, 2020, the Special Master filed his report and recommendations on

24   proposed processes for regular administrative updating of the court-approved remedy in this

_____

25             [2] In the same order, the court directed the parties to "prepare and file a document that
26   identifies all negotiated or court-ordered remedial measures adopted in this action that cover
     custodial issues and are not included in the 2018 Program Guide Revision."  *Id.* That document,
27   ECF No. 6431, is now identified as the Compendium of Custody Related Remedial Measures,
     referenced in this order.  *See* ECF No. 6806 at 2.
28

action.  ECF No. 6466.  He filed an amended Updating Process Report on February 20, 2020.
ECF No. 6476.  On March 16, 2020, defendants filed a response to the report.  ECF No. 6506.
After review, the court provisionally approved for one year a process for updating the Program
Guide and the Compendium of Custody Related Remedial Measures.  ECF No. 6806 at 15-17.
The court set a September 1, 2021 deadline for submission of the first annual updated Program
Guide and an updated Compendium following the 2019 and 2020 final approval of both remedies,
*see* ECF Nos. 6211 (as amended by July 9, 2019 Order, ECF No. 6214), 6460.  ECF No. 6806 at
17.  The court also directed the parties to separately file, on the same day, "a joint submission,
with input from the Special Master, on the efficacy of the updating process the court provisionally
approves in this order together with, as appropriate, any proposed amendments to the process."
*Id*. at 18.  The court has extended those deadlines to September 22, 2021.  August 31, 2021
Stipulation and Order, ECF No. 7292.

## 2.    Suicide Prevention

On February 3, 2015, the court ordered defendants to implement numerous suicide
prevention recommendations presented to the court by the Special Master and his expert Lindsay
Hayes.  February 3, 2015 Order, ECF No. 5271.  Nearly six years later, following Mr. Hayes'
fourth re-audit of suicide prevention practices, the Special Master recommended the court find
defendants in compliance with eleven of the recommendations and part of another, and that the
court order defendants to complete implementation of seventeen of the recommendations and the
remainder of the partially complete recommendation.  *See* December 3, 2020 Order, ECF No.
6973, at 3 (quoting ECF No. 6879 at 27).  The court adopted the Special Master's findings in full
and made clear its expectation, set out in prior orders, that defendants would take all steps
necessary so that Mr. Hayes could report following his fifth re-audit that all recommendations had
been implemented.  *See id*. at 9.

Two of the outstanding recommendations, Recommendations 28 and 29, are
implicated by the disputes underlying defendants' motion for reconsideration.  Recommendations
28 and 29 require that "[a]ll inmates discharged from an MHCB or alternative housing, where
they had been housed due to suicidal behavior, . . . be observed at 30-minute intervals by custody

3

staff, regardless of the housing units to which they are transferred"; and that "[t]he length of time

an inmate is observed at 30-minute intervals following MHCB or alternative housing discharge

. . . be determined on a case-by-case basis by the mental health clinician and clinically justified in

the inmate's treatment plan."  ECF No. 6879 at 31.  Recommendation 29 precludes authorization

of any frequency of observation other than 30-minute intervals.  *Id*.  To date, defendants have

been required to document the individual length of time clinical determinations on the first page

of a "Discharge Custody Check Sheet" (CDCR MH-7497), and the custody checks are

documented on the second page of the form.  ECF No. 6879-1 at 29.  In his most recent re-audit

of defendants' compliance with implementation of all the required recommendations, the Special

Master's expert Mr. Hayes found only a 5 percent compliance rate with completion of both pages

of the form.  *Id*.; *see also* ECF No. 6879 at 22-23.  The court adopted these findings in full.  ECF

No. 6973 at 12.  At the same time, the court ordered defendants to present at a status conference

on December 18, 2020 "the person or persons most knowledgeable of the steps required to

complete implementation of all twenty-nine recommendations previously adopted by the court

and to ensure that implementation is durable."  *Id*. at 12.

On December 15, 2020, defendants filed a response identifying Dr. Travis

Williams as the person most knowledgeable.  ECF No. 6985.  At the December 18, 2020 status

conference, after hearing from Dr. Williams, the court directed defendants to complete and file by

January 15, 2021 proposed activation schedules for four recommendations identified by the court

as top priority, and to file by January 25, 2021 proposed activation schedules for the remaining

outstanding suicide prevention recommendations.  *See* December 24, 2020 Order, ECF No. 7004,

at 2.  Defendants filed all required activation schedules on January 15, 2021.  ECF No. 7024.  On

May 4, 2021, the court ordered defendants to file updated activation schedules.  May 4, 2021

Minute Order, ECF No. 7150.  Defendants filed those on May 12, 2021.  ECF No. 7150.  Finally,

on May 27, 2021, the court ordered defendants "to notify the Special Master immediately

whenever a determination is made that a project will be delayed and, not later than ten days after

notice is provided to the Special Master, to file an activation schedule updated to reflect the new

projected completion date."  May 27, 2021 Order, ECF No. 7187, at 2.  Since then, defendants

1  have filed five updated activation schedules concerning the suicide prevention recommendations.

2  ECF Nos. 7225, 7256, 7281, 7299, 7306.

3         The initial activation schedule set a deadline of May 31, 2021 for full

4  implementation of Recommendations 28 and 29.  The schedule also set deadlines for three

5  subtasks related to these two recommendations:  Defendants were to implement modifications to

6  the 7497 form used to document custody checks by February 15, 2021;[3] defendants were to

7  implement an institutional audit tool by May 1 2021;[4] and defendants were deferring development

8  of a reporting structure for audits of the required checks until release of the new form and audit

9  tools and planned to implement the reporting structure following the form and audit tools' release.

10  ECF No. 7024 at 6.  In the May 12, 2021 update, defendants reported the deadline for

11  modifications to the 7497 form and the institutional audit tool had changed to June 30, 2021.

12  ECF No. 7160 at 8.  They reported the form was "in the final phase" of being routed to all

13  necessary committees, and the audit tool was ready for release pending complete approval of the

14  form. *Id*.  Defendants said development of the reporting structure was "pending release of new

15  form and audit tool and guidebook" and would begin after those were complete.  *Id*.  The deadline

16  for that task remained as June 30, 2021.  *Id*.

17         On July 12, 2021, defendants filed another updated activation schedule reporting

18  they had completed modifications to the 7497 form on June 3, 2021, while the deadlines for the

19  institutional audit tool and reporting structure development had remained set for June 30, 2021.

20  ECF No. 7225 at 10.  In the course of preparing this order, the court has sought information from

21  the Special Master on the status of the updated form.  The Special Master's expert Mr. Hayes,

22  who is currently conducting his fifth re-audit, reports to the court that the new form has been in

23  use since June and is currently in use.  On July 30, 2021, defendants filed an updated activation

24   

25       [3] The schedule reflected that the form had been modified "in coordination with" the
Special Master and was "being prepared to route through the various committees for approval."

26  ECF No. 7024 at 6.

27       [4] The tool was also complete; implementation was pending satisfaction of "labor
notification" requirements.  ECF No 7024 at 6.

28   

1   schedule reporting they had completed the audit tool and guidebook but these items had not yet

2   been "received by all appropriate stakeholders."  ECF No. 7256 at 12.  Defendants changed the

3   deadline for implementation of the audit tool to August 15, 2021 to allow for completion of

4   stakeholder review and incorporation of necessary feedback.  *Id.*

5           On August 25, 2021, the Special Master informed the parties of his "material

6   modification" determination regarding defendants' proposed revision of policies regarding the

7   Mental Health Crisis Bed discharge custody checks form and audit requirements, described

8   further below.  *See* Bentz Decl., ECF No. 7290-2 at 4-5.  As provided by the provisional process

9   set out in the court's August 3, 2020 order, five days after the Special Master communicated his

10   determination, on August 30, 2021, defendants filed their motion for reconsideration, ECF No.

11   7290.

12           A week after filing the motion for reconsideration, on September 7, 2021,

13   defendants filed another updated activation schedule asserting that their compliance with

14   Recommendations 28 and 29 "ha[s] been delayed pending resolution" of their motion for

15   reconsideration and the dispute regarding "whether modifications to the release memo

16   announcing the modification" to a custody check audit form are a "material modification" of the

17   Program Guide; they revised the deadline to "TBD," i.e., pending the court's resolution of their

18   motion for reconsideration.  ECF No. 7299 at 2, 7-8.

19           B.      Specific Update at Issue

20           On August 11, 2021, defendants submitted to the Special Master a proposed

21   memorandum entitled "Revision of Mental Health Crisis Bed Discharge Custody Checks Form

22   and Introduction of Audit Requirement."  Bentz Decl., ECF No. 7290-2, at 4-5.  At present,

23   defendants have policies that require custody checks for inmates discharged from mental health

24   crisis beds (MHCBs) and alternative housing after admission to such units for suicidality.

25   Williams Decl., ECF No. 7290-1, at 2.  The proposed revision expands those custody checks to

26   inmates discharged from any inpatient program or alternative housing after admission for

27   suicidality.  *Id.*  It also adds a requirement "that decisions to discontinue custody checks, made on

28   weekends and holidays, must be made by a mental health clinician after a face-to-face

assessment. The existing policies do not require face-to-face assessments on weekends and holidays." *Id*.  The revision also struck paragraphs covering clinical and custodial responsibilities. *Id*. at 3.[5]  On August 25, 2021, the Special Master informed all parties he had determined  that the proposed policy would effect a material modification of Program Guide requirements.  ECF No. 7290-2 at 4-5.  As required by the provisionally approved update process, he provided a statement of reasons with his decision.  ECF No. 7290-2 at 24-25.  Aside from the definitional dispute, the substance of defendants' dispute with the Special Master appears to be over his determination that removal of the paragraphs covering clinical and custodial responsibilities has "potential negative consequences to the integrity of the monitoring and auditing processes." *Id*. at 25.

C. <u>Defendants' Motion for Reconsideration</u>

Defendants seek reconsideration based on what they characterize as "a fundamental disagreement about what constitutes a 'material modification' to the Program Guide." ECF No. 7290 at 3.  Defendants take the position that modifications are only material if they "undermine[ ], *i.e.*, ha[ve]  a material negative effect on the existing content of the Program Guide or Compendium at issue." *Id*. at 4.  The Special Master's decision reflects a different interpretation of what constitutes a "material modification" of the remedy in this action, one that may include expanded Program Guide or Compendium requirements as well as those that have a negative impact on remedial requirements under the umbrella of material modification.  *See* ECF No. 7290-2 at 24-25.

In their motion for reconsideration defendants make several arguments focused on the dispute over the definition of what constitutes a "material modification" of the remedial plans in this action.  Although this dispute arose in the context of a specific policy modification, it does not appear defendants have squarely tendered any substantive dispute over the content of their specific policy proposal to the court.

---

[5] The revised memorandum struck additional language about which revision and addendum it superseded. *Id*. at 2.  There does not appear to be a dispute over this aspect of the revised memorandum.

1    II.       DISCUSSION

2              A.  Dispute over Material Modification

3              As noted, defendants' motion for reconsideration is predicated on their asserted

4    need for resolution of a dispute with the Special Master over the definition of "material

5    modification" as he uses the term in his determination.[6]  As defendants correctly note, the court

6    expressly did not provide a specific definition of "material modification" in the August 3, 2020

7    order.  ECF No. 7290 at 3-4 (quoting ECF No. 6806 at 12 n.8).  Given the issues raised by

8    defendant's motion, the court now needs to clarify the operative definition of "material

9    modification" in the course of its review of the provisionally approved updating process and

10   adoption of a final updating process.

11             Each of the arguments raised by defendants in support of their motion confirms

12   this conclusion.  Defendants' position that, at this stage of these proceedings, the only

13   modifications to the remedial plans that could be considered "material" are those that have a

14   "material[ negative effect" on those plans is not self-evident.  The dispute defendants press,

15   therefore, is not susceptible of resolution without thoughtful discussion among all stakeholders

16   and, if, necessary, consideration by this court after full briefing.

17             Whether the provisionally approved updating process has the potential to cause

18   substantial delays in the actual updating process is another issue properly addressed on review of

19   the provisionally approved process and adoption of a final process with input from the parties and

20   the Special Master.  The court observes that the steps followed to develop the proposed policy at

21   issue – namely, use of the small workgroup process to develop the policy in consultation with the

22   Special Master and his experts as well as plaintiffs – may provide a more efficient alternative to

23

24             [6] In their motion for reconsideration, defendants also assert that "the Special Master has
     thwarted Defendants' ability to efficiently implement policy changes which actually *increase* the
25   level of care provided to the Plaintiff class, and which changes are actually 'welcome[ ]' and
     'support[ed] by Plaintiffs' counsel."  ECF No. 7290 at 1 (emphasis in original).  The court finds
26   no basis in the record for defendants' assertion that the Special Master has "thwarted" their ability
     to implement policy changes that increase the level of care provided to the plaintiff class.
27   Defendants are strongly cautioned to desist from impugning the Special Master's efforts in this
     way; their doing so is extremely disappointing and detracts from the serious business at hand.
28

8

1  that set out in the provisionally approved process.  In any event, the court will discuss the process

2  with the Special Master and the parties at the October 1, 2021 status conference.[7]

3  　　　　　　The October status conference will include discussion regarding (1) whether the

4  process should be revised to explicitly include use and exhaustion of the small workgroup for

5  consideration of policy proposals that may constitute material modifications of the remedy in this

6  action; (2) how to clarify the process going forward to ensure that all material modifications

7  agreed to by the parties and the Special Master are given court approval so they may be promptly

8  implemented; and (3) a briefing schedule for determination of the definition of "material

9  modification" to be applied under any finally approved updating process.  Regarding the second

10  discussion item, at this time the court is inclined to entertain a proposal allowing material

11  modifications stipulated to by the parties and agreed to by the Special Master to be deemed

12  approved by the court at the time agreement is reached among the parties and the Special Master,

13  so long as all such material modifications are clearly identified in the annual updates.

14  　　　　　　B.  Specific Dispute

15  　　　　　　As discussed above, the motion for reconsideration arises in the context of a

16  specific policy proposal.  Although as discussed above Dr. Williams' declaration illuminates a

17  dispute with the Special Master's determination, no specific substantive dispute over the policy

18  proposal has been directly tendered to the court for resolution on the motion for reconsideration.

19  The court therefore makes no substantive findings about the policy proposal at this time.

20  /////

21  /////

22  _____

23  　　　[7] Defendants' assertion that they will be disincentivized to provide care their clinicians
deem necessary for fear of raising a constitutional floor or be held to higher standards, or both,
bears noting and, at this point, a brief response.  Here, the constitutional floor is the provision of

24  adequate mental health care to members of the plaintiff class.  However difficult a durable
remedy may be to achieve, modifications to mental health services defendants' clinicians deem

25  necessary to provide adequate care to seriously mentally ill inmates cannot be ignored in fear of

26  "raising the constitutional floor."  Rather, such clinical determinations are key to a court's
constitutional assessment.  *See, e.g., Coleman v. Wilson*, 912 F.Supp. 1282, 1298 (E.D. Cal.

27  1995) (discussing role of clinical findings in Eighth Amendment inquiry).  Litigation that
distracts from this basic premise is counterproductive.

28

III.   CONCLUSION

Several things are suggested by the court's review of the record.  First, review of the documents defendants append to the motion for reconsideration suggests any substantive disputes about the specific policy proposal underlying the motion -- other than whether it is a material modification of the Program Guide -- may be susceptible of resolution in the small workgroup through continued good faith discussions.  If not, the workgroup process could be exhausted first, with the court to determine any unexhausted issues on full briefing.

Second, more broadly, it appears a final updating process should clarify when and how substantive disputes over whether specific modifications can or should be made are properly and timely tendered to the court. The court will discuss with the parties finalizing an updating process at the October 1, 2021 status conference.

Third, it is not clear whether the September 7, 2021 updated suicide prevention activation schedule accurately reflects the current status of implementation of Recommendations 28 and 29; it appears defendants are currently using the revised audit form and have been since June of this year.  It also is not clear whether the accompanying memorandum underlying the "material modification" dispute has been distributed to the field.  Additionally, it is not entirely clear how or why the foundational dispute presented by the motion for reconsideration has delayed staff training in necessary completion of custody check sheets or roll-out of the audit tool, since the updated form has been in use for three months.  The court directs defendants to be prepared to clarify the status of these tasks at the October 1, 2021 status conference.

In accordance with the above, defendants' August 30, 2021 motion for reconsideration is DENIED without prejudice as explained in this order.

DATED:  September 21, 2021.

CHIEF UNITED STATES DISTRICT JUDGE