ROB BONTA, State Bar No. 202668
Attorney General of California
MONICA N. ANDERSON, State Bar No. 182970
Senior Assistant Attorney General
DAMON MCCLAIN, State Bar No. 209508
Supervising Deputy Attorney General
ELISE OWENS THORN, State Bar No. 145931
NAMRATA KOTWANI, State Bar No. 308741
Deputy Attorneys General
 1300 I Street, Suite 125
 P.O. Box 944255
 Sacramento, CA 94244-2550
 Telephone: (916) 210-7318
 Fax: (916) 324-5205
 E-mail: Elise.Thorn@doj.ca.gov
*Attorneys for Defendants*

HANSON BRIDGETT LLP
PAUL B. MELLO, State Bar No. 179755
SAMANTHA D. WOLFF, State Bar No. 240280
LAUREL E. O'CONNOR, State Bar No. 305478
DAVID C. CASARRUBIAS, State Bar No. 321994
 1676 N. California Boulevard, Suite 620
 Walnut Creek, CA 94596
 Telephone: (925) 746-8460
 Fax: (925) 746-8490
 E-mail: PMello@hansonbridgett.com
*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **RALPH COLEMAN, et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**GAVIN NEWSOM, et al.,**<br><br>Defendants. | Case No. 2:90-cv-00520 KJM-DB (PC)<br><br>**STIPULATION AND [PROPOSED] ORDER APPROVING DEFENDANTS' PLAN TO TREAT MAXIMUM CUSTODY PATIENTS IN PSYCHIATRIC INPATIENT PROGRAMS**<br><br>Judge: The Hon. Kimberly J. Mueller |

On July 26, 2021, the Court ordered the parties to engage in settlement negotiations with the assistance of a magistrate judge to address disagreements concerning Defendants' use of Therapeutic Treatment Modules (TTMs) in inpatient settings. (ECF No. 7246.) The parties met and discussed the California Department of Corrections and Rehabilitation's (CDCR) use of TTMs in inpatient settings and the treatment of patients on Maximum custody ("Max custody") with Magistrate Judge Kendall Newman and the *Coleman* Special Master on September 15, October 5, and November 1, 2021. Based on the settlement negotiations, the parties agree to the

[3822138.1]                                1

Stip. and [Prop.] Order Approv. Defs.' Plan to Treat Max. Cust. Patients in PIPs (2:90-cv-00520 KJM-DB (PC))

18020449.1

terms set forth below that provide for Defendants' use of TTMs[1] to deliver mental health care to *Coleman* class members in Psychiatric Inpatient Programs (PIPs).

## I. DEFENDANTS' PLAN

1. Defendants have developed and plan to implement a memorandum titled *Maximum Custody Reduction Reviews for Psychiatric Inpatient Program Participants* to provide direction regarding the preference for and ability to remove the designation of Max custody from *Coleman* class members in PIPs when appropriate. A copy of the memorandum is attached as Exhibit A to this stipulation. Defendants agree to implement the process set forth in the *Maximum Custody Reduction Reviews for Psychiatric Inpatient Program Participants* memorandum based on the preliminary activation schedule and plan provided to Plaintiffs and the terms of the stipulation.

2. Defendants will take steps to finalize the *Maximum Custody Reduction Reviews for Psychiatric Inpatient Program Participants* memorandum, which may include appropriate notice to any labor union effected, upon the Court's approval of this stipulation. Defendants will take all steps required to implement the memorandum as quickly as possible, and no later than 90 days following the Court's approval of this stipulation.

3. Defendants will develop training for custody and mental health staff on the Max custody review process that will be provided to Plaintiffs' counsel for review within 90 days of the Court's approval of this stipulation.

4. Defendants will install TTMs for use under this stipulation at the California Health Care Facility and other PIPs as necessary. TTMs will be limited to those areas where Max custody patients program. Defendants will provide Plaintiffs and the Special Master with advance notice of installation of TTMs at all PIPs moving forward, including the basis for the proposed installation as well as the proposed number and placement of the TTMs. Plaintiffs will have 30 days to respond regarding the proposed number and placement of the TTMs. The parties will meet and confer during that time period as necessary.

---

[1] The parties agree all TTMs envisioned by this agreement will conform to the specifications previously set forth at ECF Nos. 4714-12 (Jan. 12, 2007 Memorandum from Office of Special Master re Therapeutic Treatment Module Specifications), and 7333-2 at 4 (Compendium Reference to May 3, 2012, memo regarding Wheelchair Accessible Therapeutic Treatment Module Specifications).

[3822186.1]   2

Stip. and [Prop.] Order Approv. Defs.' Plan to Treat Max. Cust. Patients in PIPs (2:90-cv-00520 KJM-DB (PC))

18020449.1

5. Defendants will take steps necessary to revise the Electronic Health Record System to require that the IDTT assess each Max custody patient for recommendation to the ICC for a Max custody review, no later than November 30, 2021.

6. Defendants will take all steps necessary to ensure that treatment in the PIPs targets behaviors that result in patients being placed or continued on Max custody if mental health symptoms may have contributed to the behavior(s), and that such treatment is addressed toward the goal of helping patients get off of Max custody when appropriate. Such steps include, but are not limited to, continuing the already-established PBST program and implementing the STEP program.

7. Defendants will train staff to respond to behavior in the PIPs without using RVRs, and through alternative responses that do not result in patients being placed on Max custody while in the PIPs, when appropriate.

8. Defendants will submit a report to the Special Master and Plaintiffs on the status of implementation of the *Maximum Custody Reduction Reviews for Psychiatric Inpatient Program Participants* memorandum and on the designation of *Coleman* class members in PIPs on Max custody within nine months from the Court's approval of this stipulation.

9. For two years following the initial implementation report, Defendants will submit to the Special Master and Plaintiffs a quarterly report on the status of the implementation of the *Maximum Custody Reduction Reviews for Psychiatric Inpatient Program Participants* memorandum, including the status of *Coleman* class members in PIPs who are on Max custody. Defendants' quarterly production will include the following information:

    a. A roster of patients the MHCT recommended for removal from Max custody during the reporting period;

    b. A report with information regarding the bi-weekly MHCT and Deputy Director reviews and subsequent ICCs for the reporting period, including comments as to why a patient was retained or placed on Max custody. The parties will meet and confer regarding the contents and format of this report; and

   c. ICC determinations, including the classification chrono, rules violation report packet(s), and supporting documents, excluding confidential memoranda, for a random sample of the patients retained or placed on Max custody during the reporting period. The parties will work together to develop a random sampling methodology for this production.

10. Plaintiffs' counsel shall be permitted to observe a reasonable number of Max custody review ICCs for a two-year period.

11. At the end of the two-year period, the parties will meet and confer about the frequency and scope of the obligations outlined in paragraphs 9 and 10 above.

## II. DISPUTE RESOLUTION PROCESS FOR ENFORCEMENT OF STIPULATION

12. If Plaintiffs believe that Defendants are violating the terms of this Stipulation, Plaintiffs' counsel shall promptly notify Defendants setting forth the nature of the alleged violations. The parties shall engage in a reasonable period of negotiations facilitated by Magistrate Judge Kendall Newman or a mutually agreed upon neutral to resolve the allegations. Allegations that are not resolved after a reasonable period of negotiation may be presented to the *Coleman* court for resolution.

## III. NATURE OF THIS STIPULATION

13. Defendants contend that the use of TTMs to deliver mental health care to Max custody patients does not violate the Eighth Amendment, and that nothing in this agreement should be construed as an admission of such. Defendants further contend that the plan set forth in Part II above, including the *Maximum Custody Reduction Reviews for Psychiatric Inpatient Program Participants* memorandum, is not necessary to remedy any Eighth Amendment violations, and accordingly, is not part of the Eighth Amendment remedy in this case.

14. Plaintiffs maintain their objection that the use of TTMs in any treatment setting, including Defendants' PIPs, is violative of the Eighth Amendment. To the extent that Defendants utilize TTMs in the PIPs, Plaintiffs further maintain that Defendants' plan set forth in Part II above, including the *Maximum Custody Reduction Reviews for Psychiatric Inpatient Program Participants* memorandum, is a necessary part of the Eighth Amendment remedy in this case.

[3822138.1]   4

Stip. and [Prop.] Order Approv. Defs.' Plan to Treat Max. Cust. Patients in PIPs (2:90-cv-00520 KJM-DB (PC))

18020449.1

15. The parties agree that Defendants' plan shall not be included in the MHSDS Program Guide or Compendium. This stipulation sets forth the entirety of the remedy related to the issues set forth above.

**IT IS SO STIPULATED**.

DATED: November 19 , 2021

ROB BONTA
Attorney General of California
Damon McClain
Supervising Deputy Attorney General

By: _____*s/ Elise Owens Thorn*_____
Elise Owens Thorn
Deputy Attorney General
Attorneys for Defendants

DATED: November 19 , 2021

HANSON BRIDGETT LLP

By: _____*/s/ Samantha Wolff*_____
PAUL B. MELLO
SAMANTHA D. WOLFF
*Attorneys for Defendants*

DATED: November 19 , 2021

ROSEN BIEN GALVAN & GRUNFELD LLP

By: _____*/s/ Lisa Ells*_____
LISA ELLS
*Attorneys for Plaintiffs*

**IT IS SO ORDERED.**

Dated: _____

_____
KIMBERLY J. MUELLER
UNITED STATES DISTRICT COURT

[3822138.1]  5

Stip. and [Prop.] Order Approv. Defs.' Plan to Treat Max. Cust. Patients in PIPs (2:90-cv-00520 KJM-DB (PC))

18020449.1

# EXHIBIT A

State of California                                                   Department of Corrections and Rehabilitation

# Memorandum

Date:

To:        Associate Directors, Division of Adult Institutions
           Regional Health Care Executives
           Wardens
           Chief Executive Officers
           Chiefs of Mental Health
           Classification and Parole Representatives
           Classification Staff Representatives


Subject:   **MAXIMUM CUSTODY REDUCTION REVIEWS FOR PSYCHIATRIC INPATIENT PROGRAM PARTICIPANTS**

The purpose of this memorandum is to provide direction regarding the changes to the suspension of Security Housing Unit (SHU) Terms and the ability to remove Maximum (MAX) custody for Psychiatric Inpatient Program (PIP) participants. The objective of the California Department of Corrections and Rehabilitation (CDCR) is to enhance the treatment milieu in the PIP programs, improve access to mental health treatment and remove patients from MAX custody when it is safe to do so. This direction applies to patients referred to or admitted to both the Acute Psychiatric Program (APP) level of care and the Intermediate Care Facility (ICF) level of care.

Custody and mental health staff shall collaborate to address behaviors connected to a patient's mental health. The PIP is a hospital setting and patient behavior should be managed through verbal counseling and de-escalation when possible. Clinical and custody staff shall ensure MAX custody is continuously and closely evaluated in an inpatient setting and applied only when necessary for the safety and security of the patients, program, and staff.

California Code of Regulations (CCR), Title 15, Sections 3341.5(a)(1), (b)(1) give the Institution Classification Committee (ICC) the authority to suspend a Determinate SHU term for the purposes of inpatient medical or mental health treatment when clinically necessary. As a reminder, per CCR Title 15, Section 3339, the release from administrative segregation shall occur at the earliest possible time in keeping with the patient's case factors and reasons for Administrative Segregation Unit (ASU) placement. These regulations allow CDCR the ability to support the continuance of mental health care when custodial case factors present challenges.

**Institution Classification Committee Review Requirement Upon Referral**
If a patient who is MAX custody or who is serving a SHU term has been referred to the ICF level of care, the sending institution's ICC shall review the case with the goal of suspending MAX

[3814667.1]

Associate Directors, Division of Adult Institutions
Regional Health Care Executives
Wardens
Chief Executive Officers
Chiefs of Mental Health
Classification and Parole Representative
Classification Staff Representative
Page 2

custody or the SHU term where possible. This review will not be required when the patient is currently housed at the same institution as the PIP location. ICC shall also address the patient's current behavior during the review. If MAX custody or the SHU term is suspended, the ICC will evaluate all case factors and apply the appropriate custody level to be effective upon transfer to the PIP institution. The review shall be clearly articulated in the Classification Chrono as "Max Custody Reduction Review." The review shall provide justification for either retaining MAX custody, or the rationale for removing MAX custody, including information regarding the patient's recent behavior. The participation and input of the attending Mental Health Clinician shall be documented in the Classification Chrono, including the appropriate clinical recommendation for ICF placement to address mental health concerns. If a regularly scheduled ICC occurs prior to transfer of a patient referred to APP, a Max Custody Reduction Review shall occur.

**Initial and Other Institution Classification Committees**
Upon arrival at the endorsed PIP location, an ICC shall occur no later than 10 calendar days for all patients designated MAX custody. This review will assist in ensuring the patient is housed in the least restrictive environment upon arrival. The review shall be clearly articulated in the Classification Chrono as "Max Custody Reduction Review." This review shall provide justification for either retaining MAX custody, or the rationale for removing MAX custody.

Additionally, these reviews must occur upon referral via a CDCR form 128C from the Interdisciplinary Treatment Team (IDTT); at the 120-day Pre-Minimum Eligible Release Date (Pre-MERD) review per CCR, Title 15, Section 3341.8 (b); and all other ICC's while the patient is housed in the PIP.

**Case Factors to Consider during ICC**
CDCR expects that patients will be removed from Max Custody when appropriate. ICC shall consider and document the following information when making a determination on the suspension of MAX custody or a SHU term:

- Disciplinary history
- Circumstances of the offense
- Whether there has been a pattern of violence.
- Recent behavior
- Current medication non-compliance if it is likely to lead to violent behavior
- Violent behavior during program participation

[3814667.1]

Associate Directors, Division of Adult Institutions
Regional Health Care Executives
Wardens
Chief Executive Officers
Chiefs of Mental Health
Classification and Parole Representative
Classification Staff Representative
Page 3

Examples of when it may be appropriate to suspend MAX custody or a SHU term include, but are not limited to:

- Indecent Exposure
- Sexually Disorderly Conduct
- Threats, Harassment
- Safety/Enemy Concerns
- Distribution/Introduction of a Controlled Substance
- Extortion or Bribery
- Participation in a Riot
- Battery w/o Serious Bodily Injury (SBI)
- Non-disciplinary reasons
- Refusal of housing
- Destruction of property
- Theft
- Investigation
- Inmate requires bed type not at this facility.
- Housing in ASU Prior to Committee Review

In summary, even for patients who are currently serving a SHU term for a violent offense, if the patient does not appear to be a current threat to other patients, the program, or staff, it is appropriate to suspend the patient's MAX custody or SHU term.

**Interdisciplinary Treatment Team Referral Process and Requirements**
For patients on MAX custody, the IDTT shall determine, using prior clinical documentation such as the Mental Health Assessment for the behaviors that resulted in MAX custody, whether mental health symptoms may have contributed to the behavior(s) that led to the MAX custody or continuance of MAX custody. If so, the treatment team and, if appropriate, the PIP Positive Behavioral Support Team, shall address these symptoms specifically during treatment planning and provide documentation in the Master Treatment Plan, including treatment goals targeting those behaviors and make a referral to ICC for review of MAX custody at any time it is assessed the treatment goals related to MAX custody have been accomplished.

Associate Directors, Division of Adult Institutions
Regional Health Care Executives
Wardens
Chief Executive Officers
Chiefs of Mental Health
Classification and Parole Representative
Classification Staff Representative
Page 4


If the treatment team recommends suspension of MAX custody, this recommendation shall be documented on a CDCR Form 128-B Informational Chrono and the patient will be referred to the ICC. The Correctional Counselor shall ensure the next scheduled ICC occurs no later than 10 calendar days to ensure all due process requirements are met.  The final determination regarding the suspension of MAX custody during the inpatient stay remains with the ICC. If the ICC disagrees with the IDTT's clinical recommendation, the justification for the decision shall be clearly documented in the Classification Chrono.  Disagreements between the IDTT and the ICC should be rare.

Lastly, a Captain (or designee) or a Mental Health Supervisor (or designee) will attend some of the IDTTs for one day on alternating weeks, and their attendance shall be documented in the Acute Psychiatric Program/Intermediate Care Facility Master Treatment Plan. These IDTTs will be monitored to ensure that the treatment team is addressing behaviors or symptoms that may have contributed to MAX custody at each IDTT, as well as ensuring collaborative discussions are occurring among the treatment team members.

**Headquarter Oversight Mental Health Compliance Team Pre-Review**
The Mental Health Compliance Team (MHCT) pre-review will occur following referral to ICF level of care. The Health Care Placement Oversight Program (HCPOP) will provide the MHCT a weekly list of those patients referred to the ICF level of care. Upon receipt, the MHCT will review all pertinent case factors, such as circumstances of the offense which resulted in placement on MAX custody, recent behavior, recent disciplinary history, and recent pattern of violence, to determine whether, based on documentation, the ICC should consider suspending the patient's MAX custody or SHU term for the purpose of enhancing mental health treatment. Upon review, the MHCT will provide recommendations identifying those cases in which the ICC may consider suspending the patient's MAX custody or SHU Term.  Institutions will ensure those cases are reviewed to determine if a subsequent ICC is warranted prior to transfer.  Institutions will report back to the MHCT on their decisions regarding whether to suspend MAX custody prior to transfer to the PIPs.

**Mental Health Compliance Team Bi-Weekly Post-Review**
The MHCT will review all MAX custody patients currently housed at a PIP location on a bi-weekly basis with the use of SOMS Reporting. This review will include the same criteria listed in the above MHCT pre-review. Upon completion, the MHCT will provide recommendations to PIP institutions for cases in which the ICC should consider suspending a patient's MAX custody or a SHU Term. The Division of Adult Institutions (DAI) Headquarters (HQ) will then schedule a Bi-Weekly Facility

Associate Directors, Division of Adult Institutions
Regional Health Care Executives
Wardens
Chief Executive Officers
Chiefs of Mental Health
Classification and Parole Representative
Classification Staff Representative
Page 5

Support Deputy Director (or designee) Videoconference to discuss the status of the recommended cases with the Wardens of the PIP institutions.

**Bi-Weekly Deputy Director (or Designee) Videoconference with PIP institutions**
The purpose of the Bi-Weekly Deputy Director Videoconference is to ensure that follow-up action occurs at the institutional level based on the MHCT recommendations. In addition, this review process allows communication to occur with institutional leadership while providing them the ability to include information regarding their justification for actions taken or not taken.

It is the continued goal of CDCR to increase out-of-cell time for MAX custody patients, maximize access to mental health treatment, and remove patients from MAX custody as soon as it is safe to do so. Please ensure staff are in compliance with the above directives.

Wardens or designees and Chief Executive Officers or designees shall provide On-the-Job training (OJT) to all correctional counseling staff, all chairpersons and all mental health clinicians. The training will be available through the Learning Management System (LMS) Training Portal. The BET code XXXX shall be used to document the OJT and each institution shall provide proof of practice to their respective Mission Associate Director and Regional Health Care Executive within 30 days of the date of this memorandum. Additionally, forthcoming training will also be provided to all Chairpersons and clinical staff.

If you have any related questions, contact Lourdes White, Captain, Mental Health Compliance Team, at (916) 835-5679 or via email at DAI-MHCompliance@cdcr.ca.gov, or you may contact the Mental Health Policy Unit by email: CDCR MHPolicyUnit@CDCR.

CHARLES W. CALLAHAN　　　　　　　　　　AMAR MEHTA, MD
Deputy Director　　　　　　　　　　　　　　Deputy Director
Facility Support　　　　　　　　　　　　　　Statewide Mental Health Program
Division of Adult Institutions　　　　　　　　Division of Health Care Services


JACKIE CLARK

Associate Directors, Division of Adult Institutions
Regional Health Care Executives
Wardens
Chief Executive Officers
Chiefs of Mental Health
Classification and Parole Representative
Classification Staff Representative
Page 6


Deputy Director
Institution Operations
Division of Health Care Services
Attachment(s)

cc: Kimberly Siebel
    Jackie Clark
    Sircoya Williams
    Lourdes White

[3814667.1]