# EXHIBIT B

STATE OF CALIFORNIA —DEPARTMENT OF CORRECTIONS AND REHABILITATION                                                                 GAVIN NEWSOM, GOVERNOR

**OFFICE OF LEGAL AFFAIRS**
Jennifer Neill
General Counsel
P.O. Box 942883
Sacramento, CA 94283-0001



February 11, 2022

Paul Mello
Hanson Bridgett
1676 N. California Boulevard, Suite 620
Walnut Creek, CA 94596

Dear Mr. Mello:

Attached please find the California Department of Corrections and Rehabilitation's February 2022 Status Update for the Three-Judge Court proceeding.

Sincerely,

*Jennifer Neill*

JENNIFER NEILL
General Counsel
Office of Legal Affairs
California Department of Corrections and Rehabilitation

cc: Iram Hasan, Deputy Attorney General

STATE OF CALIFORNIA —DEPARTMENT OF CORRECTIONS AND REHABILITATION                              GAVIN NEWSOM, GOVERNOR



# February 15, 2022 Update to the Three-Judge Court

On February 10, 2014, the Three-Judge Court ordered CDCR to reduce the in-state adult institution population to 137.5 percent of design capacity by February 28, 2016. (ECF Nos. 2766/5060 & 2767/5061.) Defendants first informed the Court that its population was below 137.5 percent of design capacity on February 17, 2015. (ECF No. 2838/5278.) Defendants have been in full compliance with the population-reduction order for seven years.

As of February 9, 2022, the State's prison population is at 111.7 percent of design capacity, down from 115.2 percent in the previous filing. As of February 9, the State's prison population is 91,577. This report is the 93rd report CDCR submitted since the Court issued its population-reduction order, and the 81st report since Defendants reduced the prison population below 137.5 percent of design capacity.

Below are updates regarding CDCR's population reduction efforts and evidence of durable compliance with the 137.5 percent benchmark.

A.  **Update on Proposition 57 Measures:**

Proposition 57, passed in November 2016, is the State's durable remedy that enacts many Court-ordered reforms, expands credit-earning opportunities, and creates a parole consideration process for nonviolent, determinately-sentenced inmates who have served the full term of their primary offense in state prison. Information about these regulations can be found at https://www.cdcr.ca.gov/proposition57/.

CDCR has implemented a number of population reduction measures since Proposition 57 was passed. Details regarding past measures can be found in previously-filed monthly status reports. (*See, e.g.*, ECF Nos. 3769/7423 (Jan. 18, 2022).) Updated statistics showing the impact of these regulations are included below.

1. Increased credit-earning opportunities for all inmates except the condemned and those serving life without parole:

    1,908 inmates released between January 1 and January 31, 2022 earned an estimated average of 211.6 days of additional credit authorized by Proposition 57 towards their advanced release date.[1]

2. Determinately-sentenced nonviolent offender parole process:

    CDCR began referring inmates to the Board for this process on July 1, 2017, pursuant to the emergency regulations promulgated on April 13, 2017. From July 1, 2017, through January 31, 2022, 30,089 referrals were made to the Board. The Board has reviewed

---

[1] This number does not include inmates released from fire camps.

1

27,068 referrals on the merits as of January 31, 2022. Of these, the Board approved 4,382 inmates for release and denied 22,686. Additionally, 2,262 referrals have been closed because the Board's jurisdictional review of the inmates' criminal history and central file revealed they were not eligible for parole consideration. The remaining referrals are pending review, including those within the 30-day period for written input from inmates, victims, and prosecutors.

3. Indeterminately-sentenced nonviolent offender parole process:

CDCR has been screening indeterminately-sentenced, nonviolent offenders for eligibility since January 2019. As of January 31, 2022, 2,972 inmates have been referred to the Board for a parole consideration hearing, of which 69 were closed because the Board's jurisdictional review of the inmates' criminal history and central file revealed they were not eligible for parole consideration. The Board conducted 1,792 hearings for indeterminately sentenced nonviolent offenders, resulting in 498 grants, 1,159 denials, and 135 stipulations to unsuitability. An additional 1,701 hearings were scheduled, but postponed, waived, continued, or canceled. The remaining referrals are pending parole suitability hearings.

B. **Updates on Other Population Reduction Measures:**

1. Contracting for additional in-state capacity in county jails, community correctional facilities, private prison(s), and reduction of out-of-state beds:

Defendants have reduced the population in CDCR's 34 institutions in part by transferring inmates to contracted-for in-state facilities.

   a. The population of California City Correctional Facility, California's only private prison, is approximately 2,023 inmates as of February 9, 2022.

   b. The State currently has no contracted-for beds in community correctional facilities (CCFs), and no contracted-for beds in modified community correctional facilities (MCCFs) and Female Community Reentry Facility (FCRFs).

   c. California no longer houses inmates out of state.[2] The last inmates in out-of-state contract beds returned to California in June 2019.

2. Expanded medical parole process for medically incapacitated inmates:

The Board conducts expanded medical parole hearings for inmates referred to the Board by the head physician at the inmates' institutions. The Board's medical parole hearing decision approving an inmate for placement in a skilled nursing facility is forwarded to the California Correctional Health Care Services (CCHCS) and Receiver's Office, which locate a community facility that will accept the inmate and enforce any restrictions imposed by the Board. If CCHCS is unable to place the inmate within 120 days of the decision, the decision expires and the inmate remains in CDCR custody.

---

[2] This statistic does not include inmates housed in other states under interstate compact agreements.

2

Between July 1, 2014, and February 9, 2022, the Board has held 320 medical parole hearings, resulting in 210 approvals and 110 denials. An additional 81 were scheduled, but postponed, continued, or canceled.

In 2021, the federal government adopted a new approach to enforcing the United States Department of Health and Human Services, Centers for Medicare & Medicaid Services' (CMS) licensing requirements. Defendants reported resulting changes to the State's medical parole process in previous filings. (*See, e.g.*, ECF Nos. 3769/7423 (Jan. 18, 2022).) Because this new federal policy prohibits the Board from placing certain safety conditions on medical parolees (e.g., prohibiting parolees from leaving the medical facility), CDCR must return parolees who were previously placed in certain facilities to its institutions. As of February 11, 2022, two inmates have been returned to CDCR institutions as a result of the federal government's new approach.

3. Parole process for elderly inmates:

   Assembly Bill (AB) 1448 (2017), codified in Penal Code section 3055, created an elderly parole program similar to that established under the February 10, 2014 Three-Judge Court order. Inmates aged 60 and above who served at least 25 years of continuous incarceration qualified for both elderly parole programs. AB 3234 (2020) reduced the eligible age for the statutory elderly parole program from 60 to 50 and required length of incarceration from 25 to 20 continuous years. Inmates sentenced under strike-sentencing laws (Penal Code section 667(b)-(i) or 1170.12) or convicted of first-degree murder of a peace officer, under certain conditions, are excluded from the statutory scheme, but remain eligible for the elderly parole program under the court order. Defendants plan to schedule initial parole hearings for those newly eligible for elderly parole consideration under AB 3234 by December 31, 2022. Previous status reports further detail this parole process. (*See, e.g.*, ECF Nos. 3769/7423 (Jan. 18, 2022).)

   Between February 11, 2014, and January 31, 2022, the Board held 6,229 hearings for inmates eligible for elderly parole consideration, resulting in 1,848 grants, 3,860 denials, and 521 stipulations to unsuitability. During this period, the Board scheduled 3,708 additional hearings that were waived, postponed, continued, or canceled.

4. Male community reentry programs:

   The State continues to contract with Male Community Reentry Programs in the following counties: San Diego, Los Angeles, Kern, and Butte. The State continues to review and refer eligible inmates for possible placement in these programs. As of February 9, 2022, 543 inmates are housed in these Male Community Reentry Program facilities.

5. Expanded alternative custody program:

   The Custody to Community Treatment Reentry Program (CCTRP), the State's expanded alternative custody program for female inmates, provides a range of rehabilitative services that assist with substance use recovery, employment, education, housing, family reunification, and social support. Female inmates in the CCTRP are housed at facilities located in San Diego, Santa Fe Springs, Bakersfield, Stockton, Sacramento, and Los

Angeles. As of February 9, 2022, 301 female inmates are participating in the CCTRP.

6. <u>Reduction of inmate population in response to COVID-19 pandemic:</u>

Starting in March 2020, in addition to myriad other safety measures, Defendants implemented several population reduction policies to further reduce CDCR's adult institution population in response to the COVID-19 pandemic.

For example, between mid-March and late April 2020, CDCR released 3,585 inmates under an accelerated release policy the Secretary implemented under Government Code section 8658. Since July 2020, CDCR has released an additional 10,956 inmates early under another COVID-19 accelerated release program[3] implemented under section 8658. Also in 2020, CDCR awarded twelve weeks of credit to eligible inmates under California Code of Regulations, Title 15, section 3043.6. Inmates earned more than twice as many credits towards their sentence in 2020 as they did in 2019 as a result. By the end of July 2020, Defendants reduced the prison population below 100,000 for the first time in three decades. (ECF No. 3417 at 5.) Previous status reports further detail CDCR's COVID-19 population reduction measures. (*See, e.g.*, ECF Nos. 3769/7423 (Jan. 18, 2022).)

CDCR's population has decreased since December 2021 during the current spread of the COVID-19 Omicron variant, primarily from natural attrition and decreased intake.

7. <u>New credit-earning regulations effective May 1, 2021 and December 28, 2021:</u>

CDCR passed new credit-earning regulations effective May 1, 2021, increasing credit-earning rates for inmates serving sentences for violent crimes and nonviolent crimes with second or third-strike enhancements, and inmates assigned to minimum custody workgroups like fire camps. These new regulations also changed disciplinary practices to eliminate zero-credit-earning-day periods. A substantially similar version of these regulations was readopted on December 28, 2021 under Penal Code section 5058.3, further increasing certain credit-earning rates. Previous filings detail credit earning rates for inmates the regulations impact. (*See, e.g.*, ECF Nos. 3769/7423 (Jan. 18, 2022).) CDCR anticipates that, in addition to incentivizing positive behavior, these new changes will allow more inmates to reduce the amount of time spent in prison.[4]

---

[3] Cal. Dep't Corr. & Rehabilitation, *CDCR Announces Additional Actions to Reduce Population and Maximize Space Systemwide to Address COVID-19* (Jul. 10, 2020), https://www.cdcr.ca.gov/news/2020/07/10/cdcr-announces-additional-actions-to-reduce-population-and-maximize-space-systemwide-to-address-covid-19/.

[4] A coalition of California district attorneys seek to halt implementation of these regulations in *Schubert, et al. v. State of California, et al.,* Superior Court of California, County of Sacramento, Case Nos. 34-2021-00301253 and 34-2021-00312867. The superior court granted a temporary restraining order in the district attorneys' favor in the latter case on December 29, 2021. On January 18, 2022, the court dissolved the order and denied their motion for a preliminary injunction. The district attorneys appealed this denial. They sought an emergency stay pending appeal, which was denied. The appeal is proceeding without a stay.

8. <u>Inmates Released Under Proposition 36</u>

Proposition 36, passed in November 2012, revised the State's three-strikes law to permit resentencing for qualifying inmates whose third strike was not serious or violent. As of January 31, 2022, approximately 3,163[5] inmates have been released under this measure.

---

[5] This number does not include inmates who were eligible for Proposition 36 resentencing but released from CDCR through different methods (e.g. Proposition 47 resentencing or nonviolent parole process).