UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RALPH COLEMAN, et al.,

                Plaintiffs,

v.

GAVIN NEWSOM, et al.,

                Defendants.

No. 2:90-cv-0520 KJM DB P

ORDER

Plaintiffs have moved to clarify the court's June 13, 2002 order requiring defendants to "maintain the vacancy rate among psychiatrists and case managers at a maximum of ten percent, including contracted services," June 13, 2002 Order, ECF No. 1383, at 4 (hereafter 2002 Order). ECF No. 7118.  Specifically, plaintiffs seek clarification regarding whether the 2002 Order applies to chief psychiatrist and senior psychiatrist supervisor positions. *Id*. at 3.[1]  Defendants oppose the motion, ECF No. 7137, and plaintiffs have filed a reply, ECF No. 7149.  In addition,

---

[1] In this order citations to page numbers in documents filed in the Court's Electronic Case Filing (ECF) system are to the page number assigned by ECF and located in the upper righthand corner of the page.

1    as authorized by the court, ECF No. 7472, the parties have filed focused supplemental briefing.[2]

2    ECF Nos. 7482, 7488.[3]

3          As part of their duty "to provide inmates with access to constitutionally adequate mental

4    health care, defendants must employ mental health staff in 'sufficient numbers to identify and

5    treat in an individualized manner those treatable inmates suffering from serious mental

6    disorders.'" *Coleman v. Wilson*, 912 F. Supp. 1282, 1306 (E.D.Cal. 1995). For more than two

7    decades, myriad court orders and significant remedial efforts have been focused on achieving

8    adequate mental health staffing levels including, as relevant here, directives to reduce staffing

9    vacancy rates.

10         On July 26, 1999, the court issued an order adopting, among other things, May 19, 1999

11   recommendations of the Special Master, ECF No. 1032, that defendants "[w]ithin ninety days . . .

12   reduce the vacancy rate among psychiatrists to 25 percent or less and among psych social workers

13   to ten percent or less, while keeping vacancy rates among other categories of mental health staff

14   at present or comparable rates" and, within the same ninety day period, reduce the employment of

15   short-term contract psychiatrists. July 26, 1999 Order, ECF No. 1055 at 4. Ultimately, the court

16   provided defendants until December 31, 2000 to comply with the July 26, 1999 directive

17   concerning reduction of vacancy rates among psychiatrists and psychiatric social workers, and

18   directed the Special Master to file a report on the adequacy of defendants' compliance with that

19   directive and to "make such recommendations to ensure compliance as appear necessary at that

20         [2] The parties' supplemental briefing is focused on a decision of the United States Court of
Appeals for the Seventh Circuit in *Rasho v. Jeffreys*, 22 F.4th 703 (7th Cir. 2022). *Rasho* is not

21   binding on this court. Even if it were, it is factually distinguishable in several critical ways. In

22   particular, in the instant case "it is established through several long-standing orders of this court
that full implementation of the 2009 Staffing Plan is necessary to remedy the Eighth Amendment

23   violation in this case." March 16, 2022 Order, ECF No. 7502, at 2 (citing *Coleman v. Brown*,
938 F. Supp. 2d 955, 969 (E.D. Cal. 2013) and October 10, 2017 Order, ECF No. 5711, at 16-18).

24   *Cf. Rasho*, at 711 ("there is no evidence that the terms of the settlement and IDOC's staffing plan

25   matched the constitutional floor. . . .").

26         [3] Plaintiffs filed a declaration with their supplemental brief. ECF No. 7488-1 (Decl. of
Shinn-Krantz). On March 14, 2022, defendants filed a request for leave to file a motion to strike

27   that declaration. ECF No. 7493. The court has not considered the Shinn-Krantz Declaration in
resolving plaintiffs' motion to clarify. Defendants' request thus will be denied as moot.

28

time." August 28, 2000 Order, ECF No. 1198, at 3.  The Special Master filed the required report

on December 20, 2000.  ECF No. 1227.   In April 2001, the court adopted that report and its

recommendations in full and directed the Special Master to file quarterly reports on defendants'

progress in developing alternatives for reducing staffing vacancies "and their impact on staff

vacancy rates." April 4, 2001 Order, ECF No. 1262, at 4.  The Special Master filed the first

quarterly report on September 26, 2001, ECF No. 1304, and the second report on February 26,

2002, ECF No. 1351.

In the second quarterly report, the Special Master reported that as of that time defendants

had "largely succeeded in addressing their mental health staffing deficiencies through two

strategies, namely, aggressive contracting of temporary clinicians and an increasing emphasis on

the use of psychologists to provide case management services."  ECF No. 1351 at 5.  Given

defendants' relative success achieved through the "use of expanded contract services and the

concentration of case management services in psychologists to counter weaknesses in

[defendants'] ability to attract sufficient numbers of permanent clinical staff," the Special Master

found it was "absolutely critical that the defendants maintain their current patterns of contracting

for clinical services and resist any temptation to reduce such services in response to calls for

budget reductions."  *Id*. at 6.  His first recommendation, which he also characterized as critical,

was that:

> The defendants should be directed to maintain a vacancy rate
> among psychiatrists and case managers at a maximum of ten
> percent, including contracted services.   The recommendation
> recognizes that defendants have been consistently unable to meet
> the staffing vacancy goals established in mid-1999, but have
> effectively narrowed the gap between allocated and filled clinical
> positions through increasingly aggressive use of contracted
> clinicians.  The recommended directive seeks to secure by means of
> a court order this somewhat oblique compliance with the spirit of
> the July 26, 1999 mandate on vacancies.

ECF No. 1351 at 11-12.  As noted above, on June 13, 2002, the court issued the order adopting

this recommendation and requiring defendants to "maintain the vacancy rate among psychiatrists

and case managers at a maximum of ten percent, including contracted services."  ECF No. 1383

at 4.

1    Plaintiffs' motion for clarification arises from a dispute between the parties over whether

2    the ten percent vacancy rate applies to chief psychiatrists and senior psychiatrist supervisors as

3    well as to staff psychiatrists.  Plaintiffs contend the established vacancy rate applies to all

4    allocated psychiatrist positions, including chief psychiatrists and senior psychiatrist supervisors.

5    ECF No. 7118 at 3.  Defendants disagree, contending plaintiffs are seeking to "effectively

6    expand" the scope of the June 13, 2002 order.  ECF No. 7137 at 2.

7    The parties agree, correctly, that the context in which the 2002 order was issued is key to

8    the court's resolution of the pending motion.  *See*, *e.g.*, ECF No. 7118 at 7; ECF No. 7137 at 2.

9    Defendants argue that "when read appropriately with fidelity to the record leading up to the 2002

10   order, the word 'psychiatrists' clearly refers to *staff* psychiatrists only."  ECF No. 7137 at 2

11   (emphasis in original).  The court of course must read the record carefully and with fidelity to its

12   contents and meaning.  As explained below, the record as relevant to the court's 2002 order

13   shows conclusively that the Special Master's reference to "psychiatrists" in his reports on staffing

14   vacancies was to all allocated psychiatrist positions, including chief psychiatrists, senior

15   psychiatrists, and staff psychiatrists.

16   In his May 19, 1999 report on staffing vacancies, the Special Master included a

17   "breakdown of key mental health staffing positions and vacancies in December, 1998 and April,

18   1999."  ECF No. 1032 at 2.  That breakdown included a total of 136.1 authorized "psychiatrists"

19   in December 1998, and 135.5 authorized "psychiatrists" in April 1999.  *Id*. at 3.  Exhibit A to the

20   report shows that in December 1998 defendants had 23.5 authorized Chief Psychiatrist positions,

21   9 authorized Senior Psychiatrist positions, and 103.6 Staff Psychiatrist positions, for a total of

22   136.1 authorized psychiatrist positions.  *Id*. at 18.  Similarly, in April 1999 defendants had 23.5

23   authorized Chief Psychiatrist positions, 9 authorized Senior Psychiatrist positions, and 103 Staff

24   Psychiatrist positions, for a total of 135.5 authorized psychiatrist positions.  It is clear from this

25   that the Special Master's May 19, 1999 recommendation to reduce vacancy rates among

26   "psychiatrists," which the court adopted in full in its July 26, 1999 order, encompassed all

27   psychiatrist positions allocated by defendants.

28

4

The Special Master also relied on total allocated psychiatrist positions in reporting on the "vacancy rate among psychiatrists" in his September 26, 2001 first quarterly report. *See* ECF No. 1304 at 2, 24. He relied on the same statistics in his February 26, 2002 report. *See* ECF No. 1351 at 2 ("The measurement of clinical staffing vacancy rates is not difficult. In December 2000, the reported vacancy rate among psychiatrists was 29.36 percent. In mid-July 2001, the rate was nearly four percentage points lower at 25.49 percent. . . .").

The foregoing makes it clear that the Special Master's February 26, 2002 recommendation to "maintain the vacancy rate among psychiatrists . . . at a maximum of ten percent" included within its ambit all allocated psychiatrist positions. That recommendation, which the court adopted in full in its June 13, 2002 order, was expressly tied to the July 26, 1999 order; the February 26, 2002 recommendation was expressly made to "secure by means of a court order this somewhat oblique compliance with the spirit of the July 26, 1999 mandate on vacancies." ECF No. 1351 at 12. The July 26, 1999 mandate on vacancies applied to all psychiatrist positions – Chief Psychiatrists, Senior Psychiatrists, and Staff Psychiatrists – as does its successor, the June 13, 2002 order.

In February 2018, the court ordered defendants to file monthly vacancy reports on psychiatry vacancy rates, presenting in those reports "all data for psychiatrist vacancies contained in the report titled Correctional Health Care Services Mental Health Institution Vacancies: Summary By Institution By Classification."[4] February 15, 2018 Order, ECF No. 5786, at 4-5. That order followed a February 14, 2018 hearing, at which the court specifically called attention to the line in the CCHCS Mental Health Vacancy Report for staff psychiatrist positions. Reporter's Transcript of Proceedings (2/14/18 RT), ECF No. 5793, at 19. The court's calling attention to one line in the CCHCS Mental Health Vacancy Report did not amend the June 13, 2002 order. Nonetheless, it appears defendants' monthly vacancy reports have, to date, been based on staff psychiatrist allocations only. Going forward, defendants will be directed to include

---

[4] This is referred below to as the CCHCS Mental Health Vacancy Report.

1    vacancy rates for Chief Psychiatrists and Senior Psychiatrist Supervisor positions in these

2    monthly reports as well.

3             In accordance with the above, IT IS HEREBY ORDERED that:

4             1.   Plaintiffs' April 9, 2021 motion for clarification is GRANTED;

5             2.   The June 13, 2002 order as issued at that time applied to all allocated

6                  psychiatrist positions and continues to so apply;

7             3.   Defendants' March 14, 2022 request for leave to file a motion to strike is

8                  denied as moot; and

9             4.   Beginning with the next monthly psychiatry vacancy report and going forward,

10                 defendants shall include vacancy rates for Chief Psychiatrist and Senior

11                 Psychiatrist supervisor positions, as well as vacancy rates for Staff

12                 Psychiatrists.

13   DATED:  March 17, 2022.

14

15

16                                              CHIEF UNITED STATES DISTRICT JUDGE

17

18

19

20

21

22

23

24

25

26

27

28