ROB BONTA, State Bar No. 202668
Attorney General of California
MONICA N. ANDERSON, State Bar No. 182970
Senior Assistant Attorney General
DAMON MCCLAIN, State Bar No. 209508
Supervising Deputy Attorney General
ELISE OWENS THORN, State Bar No. 145931
NAMRATA KOTWANI, State Bar No. 308741
Deputy Attorneys General
  1300 I Street, Suite 125
  P.O. Box 944255
  Sacramento, CA 94244-2550
  Telephone: (916) 210-7318
  Fax: (916) 324-5205
  E-mail: Elise.Thorn@doj.ca.gov
*Attorneys for Defendants*

PAUL B. MELLO, State Bar No. 179755
SAMANTHA D. WOLFF, State Bar No. 240280
LAUREL E. O'CONNOR, State Bar No. 305478
DAVID C. CASARRUBIAS, State Bar No. 321994
HANSON BRIDGETT LLP
  1676 N. California Boulevard, Suite 620
  Walnut Creek, CA 94596
  Telephone: (925) 746-8460
  Fax: (925) 746-8490
  E-mail: PMello@hansonbridgett.com
*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **RALPH COLEMAN, et al.,**<br><br>                                          Plaintiffs,<br><br>        **v.**<br><br>**GAVIN NEWSOM, et al.,**<br><br>                                          Defendants. | 2:90-cv-00520 KJM-DB (PC)<br><br>**DEFENDANTS' RESPONSE AND OBJECTIONS TO THE SPECIAL MASTER'S REPORT ON HIS EXPERT'S SUMMARY OF SUICIDES FROM 2013 - 2020 [ECF NO. 7511]** |

On December 3, 2020, the Court entered an order that described Defendants' obligations to improve suicide prevention. (ECF No. 6973.) Specifically, the Court stated, "Eighth Amendment compliance in this area of this action will require both adequate implementation of the twenty-nine recommendations as well as remediation of the pattern of identifiable and describable inadequacies in the annual reports on inmate suicides." (*Id.* at 9, n.7.) That order identified the work completed and the work in progress to address deficiencies in suicide prevention. The order did not direct the Special Master to review and report on suicides that have already been reported to the Court. Nevertheless, the Special Master directed one of his mental

1

Defs.' Objections to the Special Master's March 23 Summary Report on Suicides (2:90-cv-00520 KJM-DB (PC))

1    health experts to review and summarize the reports filed and adopted by this court on deaths by

2    suicide in the California Department of Corrections and Rehabilitation (CDCR) from 2013

3    through 2020.  The expert's report is part of the Special Master's report, filed on March 23, 2022

4    (Summary Report).  (ECF No. 7511 at 23-74.)

5              On January 21, 2022, Defendants submitted objections to the draft of the expert's report.

6    (ECF No. 7511 at 17 - 22.)  The draft report contained numerous statistical and methodological

7    flaws, duplicated information already in the record, and provided little or no value in resolving

8    the outstanding issues related to suicide prevention.  Defendants restate those objections to the

9    Summary Report.

10             Defendants appreciate the expert's correction of the data discrepancies that CDCR

11   identified in the draft report.  But those corrections do not address the objection that the Summary

12   Report simply restates data from prior suicide reports, a highly questionable use of public

13   resources.  Writing a report that simply restates data from prior reports between 2013 and 2020

14   adds no value to resolving outstanding issues in this case.

15   **I.    THE SUMMARY REPORT IS UNNECESSARY, REDUNDANT, AND DUPLICATIVE OF PRIOR**
     **       SUICIDE REPORTS.**
16

17             The Summary Report is redundant and duplicative of the Special Master's expert's own

18   annual suicide reports, most of which duplicate the self-monitoring and reporting CDCR has

19   provided since 2015.  (ECF No. 7511 at 17, fn. 1 and 2.)  Both CDCR and the Special Master's

20   experts have already critically reviewed every suicide that occurred from 2013 through 2020. (*Id.*)

21   CDCR reviews every suicide death via individual suicide reports and, since 2015, publishes

22   comprehensive annual suicide reports, which the Special Master's reports largely duplicate

23   afterward.  (*Id.*)  The Special Master's expert confirms that the primary sources of information for

24   this report were the Special Master's expert's previously filed reports regarding completed

25   suicides from 2013 through 2020 as well as the data used to author these reports.  (*Id.* at 23.)  But

26   the Summary Report does not provide any new findings or insight into deaths by suicide not

27   already reported on by the Special Master in his reports covering calendar years 2015 through

28   2020 filed within the last twelve months.

1    The Special Master's explanation for the need to re-report on inmate deaths that occurred

2 by suicide over the past nine years is limited to his perceived need for "a summary of information

3 that can be useful to CDCR and the court in making determinations about the needs for

4 improvement within CDCR relative to suicides" and "to highlight[] those issues which can move

5 CDCR toward improved suicide prevention practices."  (ECF No. 7511 at 1, 2, and 15.)  But this

6 explanation ignores the work completed to address suicide prevention measures since 2015,[1] and

7 ignores what the Court has already defined as Defendants' obligations in this area: to implement

8 the Special Master's suicide prevention expert's twenty-nine recommendations as well as

9 remediation of the pattern of identifiable and describable inadequacies in the annual report on

10 inmate suicides. (12/3/20 Order, ECF No. 6973 at 9, n.7.)  To her credit, the expert provides a

11 detailed list of the ongoing work CDCR is engaged in to address suicide prevention.  (ECF No.

12 ECF No. 7511 at 23.)

13    The expert's list of accomplishments is consistent with the Court's December 3 order (ECF

14 No. 6973) and Defendants' regular filings of the activation schedule to complete the 29 suicide

15 recommendations the Special Master's suicide expert first adopted by the Court in 2015.  (ECF

16 No. 7519.).  As of March 30, 2022, Defendants had completed all but five of the 29

17 recommendations, and the work to complete the remaining five recommendations is scheduled to

18 be done by June 30, 2022.  (*Id.*at 5-9.)  The suicide expert is in the process of completing his fifth

19 re-audit of CDCR's suicide prevention program and compliance with the requirements of that

20 program.  CDCR is working on a regular basis with the suicide prevention expert to address

21 suicide prevention improvements, and nothing re-reported in the summary report aids CDCR in

22 that effort.  Defendants request that the Court instruct the Special Master to refrain from using

23 state resources to undertake such duplicative summaries in the future absent a finding by the

24 Court that there is some need to re-report years-old, previously reported data.

25

26    [1] The work completed to date and ongoing work is detailed in the Court's December 3,
2020 order adopting in full the Special Master's report on his expert's Fourth Re-Audit and
27 Update of Suicide Prevention Practices (ECF No. 6973), and in nearly monthly filings,
Defendants update the Court on the progress Defendants are making to complete the court-
28 ordered suicide prevention recommendations.  (ECF No. 7519.)

1  **II.    THE SUMMARY REPORT CONTAINS NUMEROUS STATISTICAL DISCREPANCIES.**

2          In its response to the draft summary report, CDCR detailed numerous statistical

3  discrepancies in the report and concluded that such errors call into question the validity of the

4  numbers and percentages found throughout the report.  (ECF No. 7511 at 18-21.)  The Special

5  Master dismisses CDCR's objections as squabbling over typographical errors and attempting to

6  rewrite the law of the case.  (*Id.* at 14.)

7          Many of the statistical errors CDCR identified were previously brought to the Special

8  Master's attention when Defendants responded to reports from past years.  At page 7, n. 6, and

9  page 8, n. 7, the Special Master actually identifies the past reports that were adopted by the Court

10  notwithstanding their inclusion of incorrect data.  Amazingly, the Special Master excuses the

11  current data discrepancies by blaming Defendants for not objecting to the errors when they were

12  first reported.  But the Special Master's long list of excuses and the expert's correction of some of

13  the discrepancies in the final report do not change the fact that the summary report adds nothing

14  of value to the record in this case.  The Special Master's acknowledgment that the report simply

15  restates what is already reported is also inconsistent with the stated purpose of the Summary

16  Report: to provide information that can be useful to CDCR and the court in making

17  determinations about the needs for improvement within CDCR relative to suicides.

18          Defendants carefully detailed the discrepancies they discovered between the original data

19  reported in prior reports based on CDCR's data and the draft summary report at pages two

20  through five of their January 21 objections.  (ECF No. 7511 at 18-21.)  Those details, along with

21  the Special Master's attempts to explain away the discrepancies at pages 8 through 14 of his

22  report, demonstrate that the discrepancies are not mere *de minimis* typographical errors.  *De*

23  *minimus* means lacking significance or importance or so minor as to merit disregard.[2]  A

24  typographical error is a mistake, such as a misspelled word in typed or printed text.[3]  The Special

25  Master's description of the data discrepancies as typos and *de minimis* belies the facts.

26  _____

27          [2] Merriam Webster.com Dictionary, Merriam Webster,
https://www.merriam.com/dictionary/de%20minimis.  Accessed 1 Apr. 2022.

28          [3] Merriam Webster.com Dictionary, Merriam Webster,
https://www.merriam.com/dictionary/de%20minimis.  Accessed 1 Apr. 2022.

1    The Special Master's issuance of the Summary Report does not comport with the role of a
2    "neutral" whose duties are to assist the Court in fashioning a remedy to address the constitutional
3    violations in the delivery of mental health care to the plaintiff class and to monitor
4    implementation of that remedy.  (ECF No. 640 at 3.)  At bottom, the Special Master disregards
5    CDCR's objection, describing them as an attempt to rewrite the law of the case.  Nothing in
6    CDCR's January 21 letter meets such a description.  Defendants are permitted to review and
7    object to all reports filed by the Special Master in this case.  (ECF Nos. 640 and 6230.)  However,
8    as with the Summary Report, each time Defendants exercise their right to object, they are
9    needlessly attacked by the Special Master for allegedly not doing more to address suicide
10   prevention issues.

11   **III.    THE SUMMARY REPORT IS  NOT TRANSPARENT.**

12       Defendants also object to the Summary Report on the basis that it is unreliable because it
13   fails to disclose the methodology and sources underlying several findings.  CDCR identified
14   specific examples of such instances where data is reported without information to substantiate its
15   source. (ECF No. 7511 at 21-22.)  The missing information includes (1) a lack of source data
16   showing how the experts calculated the total segregation population, still missing from pages 7
17   through 9 of the March 23 report (*Id.* at 29-31*)*; (2) the lack of data to support how the expert
18   determined whether an individual was housed in the Administrative Segregation Unit for safety
19   concerns or for disciplinary infractions, reported at pages 10 and 11 of the final report (*Id.* at 32 -
20   33*)*; and (3) missing information to determine how the expert determined whether an individual
21   had a history of trauma, reported on pages 16 and 17 of the final report.  (*Id.* at 38 -39.*)*

22       In addition to the foregoing, the objections based on statistical discrepancies also
23   highlighted some missing information needed to support or fully understand the expert's
24   conclusions.  Specifically, the Special Master's expert's analysis of Suicide Risk Evaluations
25   (SRE) uses unclear criteria to analyze SREs.  The report draws conclusions without providing any
26   source data or analysis.  As CDCR's objections to the draft report stated, there is no way to
27   validate such conclusory findings.

28

1    Coupled with the statistical irregularities found throughout the report, a lack of clear

2    methodology and flaws in the underlying data significantly minimizes the validity and usefulness

3    of the Summary Report.

4                                          **CONCLUSION**

5           As with many issues in this case, Defendants continue to work with the Special Master's

6    suicide prevention expert to implement policies, processes, and training to improve the suicide

7    prevention program.  The Summary Report at issue does nothing to advance that effort, as it is

8    does not provide new information or suggestions to improve suicide prevention practices.

9    Notably, the Special Master makes no effort to explain why he tasked his expert with reviewing

10   and assessing reports that have already been adopted by the Court and making recommendation

11   concerning suicide prevention practices that are currently monitored by his suicide prevention

12   expert.  Indeed, the Summary Report includes eight conclusions and two additional

13   recommendations.  (ECF No. 7511 at 54-55.)  But the expert acknowledges that work is already

14   under way to address the reported concerns and deficiencies. (*Id.*)

15          Defendants maintain their objections to the Summary Report.  It does not advance the goals

16   set by the Court in its December 3, 2020 order, and does not provide any useful data or

17   recommendations that have not already been considered and adopted by the Court, and which

18   Defendants have already committed to implementing in response to the suicide prevention

19   expert's recommendations.  Accordingly, the Court should not adopt the March 23 Summary

20   Report in full, and Defendants request that the Court direct the Special Master to instead focus

21   future efforts on implementing policies, processes, and training to improve CDCR's suicide

22   prevention program.

23

24

25

26

27

28

1

2    Dated: April 4, 2022                          Respectfully submitted,

3                                                  ROB BONTA
                                                   Attorney General of California
                                                   DAMON MCCLAIN
4                                                  Supervising Deputy Attorney General

5
                                                   /s/ *Elise Owens Thorn*
6                                                  ELISE OWENS THORN
                                                   Deputy Attorney General
7                                                  *Attorneys for Defendants*

8
                                                   HANSON BRIDGETT LLP
9
                                                   /s/ *Paul B. Mello*
10                                                 PAUL B. MELLO
                                                   SAMANTHA D. WOLFF
11                                                 LAUREL E. O'CONNOR
                                                   DAVID C. CASARRUBIAS
12                                                 *Attorneys for Defendants*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28