# EXHIBIT B

**XAVIER BECERRA**  
*Attorney General*

State of California  
**DEPARTMENT OF JUSTICE**

1300 I STREET, SUITE 125  
P.O. BOX 944255  
SACRAMENTO, CA 94244-2550

Public:  (916) 445-9555  
Telephone:  (916) 210-7318  
Facsimile:  (916) 324-5205  
E-Mail:  Elise.Thorn@doj.ca.gov

November 30, 2020

*Via Electronic Mail*

Matthew A. Lopes, Jr.  
Special Master  
Pannone Lopes Devereaux & O'Gara, LLC  
Northwoods Office Park  
1301 Atwood Avenue, Suite 215 N  
Johnston, RI 02919

RE:     *Coleman*, *et. al. v. Newsom*, *et al.*,  
          U.S. District Court, Eastern District of California, Case No. 2:90-cv-00520 KJM-DB

Dear Special Master Lopes:

      Defendants write to express their concerns regarding the scope and pace of the work being performed by the Special Master's data expert, Dr. Daniel Potter, to address data issues raised in the Court's orders and your June 2020 report. We understand that Dr. Potter will provide an update on data issues at the next COVID-19 Task Force meeting scheduled for December 1, 2020. Defendants appreciate the opportunity to hear an update from Dr. Potter, and provide the comments below regarding information that they believe is needed to respond to the Court's order and at the December 18 quarterly status conference.

      Based on Defendants' understanding of the work performed by Dr. Potter over the last six months, it appears that he may be exceeding the scope of his initial appointment and the Court's orders concerning the data issues and related remedies following the Golding investigation. Also, based on our review of his detailed time statements, it appears that Dr. Potter's work lacks focus and any set parameters. We seek additional details on what he intends to accomplish as your data expert. As you know, the Court has ordered "all stakeholders to be fully prepared at the time of the December 18, 2020 status conference to set a firm schedule for completion of necessary data and quality assurance remediation." (ECF No. 6847.)

      Both your request to hire a data expert and the Court's order appointing Dr. Potter (ECF Nos. 6604 and 6646) establish Dr. Potter is authorized to perform the following duties: (a) monitor data-related issues; (b) advise the Special Master on all mental health data-related issues; (c) work with both CDCR and the Plata Receiver's Quality Management departments on mental health data-related issues; and (d) work with Dr. David Leidner with regard to mental health data issues. But these categories do not help define the work Dr. Potter is doing to address

Matthew A. Lopes, Jr.
November 30, 2020
Page 2

specific data integrity issues that need remediation based on the Golding allegations and the steps needed to allow CDCR to finalize CQIT. And following Dr. Potter's appointment, the list of tasks expanded to cover updates to the adequacy of updates to the EHRS, reviewing the data reports underlying the ASU EOP hub certifications and making recommendations on what must happen to make them fully transparent and completely usable, and data integration, management, and integrity. (May 8, 2020 Order, ECF No. 6661.)

Your June 8, 2020 report on data issues within CDCR (ECF No. 6705) describes Dr. Potter's work generally as "continuing to work with CDCR to deliver appropriate access to the Mental Health Services Business Intelligence (MHS BI) and data warehouse systems, development environments, and change management systems. He anticipates he will have a better understanding of how the system computes and delivers several benchmark metrics by the end of June." The report then lists Dr. Potter's expanded work items, many of which go far beyond the data issues and related remedies following the Golding investigation. That list includes : (1) attend meetings with CDCR's leadership regarding the role of the data expert; (2) meet and discuss the activities of the COVID-19 small workgroup and the need to understand data and policies with respect to *Coleman* class members and the general population; (3) meet to discuss the design and implementation of the business rules and how to best come up to speed on the data warehouse; (4) review Citrix, the software used by CDCR to access securely its system remotely, to determine whether it was adequate to review mental health business intelligence, and identify resources within CDCR to aid review; (5) review CDCR pre-recorded presentations on understanding mental health business intelligence, key points about mental health on demand reports, fixed benchmarks, and rehabilitating mental health business intelligence; (6) provide suggestions to CDCR regarding granular review of COVID-19 data; (7) request information regarding how the data for measuring COVID-19's impact on the general population and the *Coleman* class is being generated, and whether there is a way to pull current and historical data; (8) review initial COVID-19 risk factor analysis; (9) work with CDCR stakeholders to obtain access to quality management reports and the live data warehouse; (10) discuss variables related to COVID-19 Risk Monitoring registries; and (11) discuss best practices, metrics, benchmark maintenance, and descriptive error. (*Id*.)

Judging by the statements on the expanding scope of Dr. Potter's work to date, he could theoretically work on data-related issues for the foreseeable future with no end in sight. Defendants do not believe that the non-comprehensive lists describing his work intend that outcome. But in the nearly seven months since his appointment, there does not seem to have been any progress, validation, or recommendations made that would enable CDCR to move forward with its data and reporting systems that provides confidence or information to CDCR and other stakeholders. Indeed, on September 3, 2020, the Court ordered that CDCR's "[f]ull deployment and durable use of CQIT cannot be completed before full remediation of the accuracy and reliability of defendants' data reporting is finished. That process is underway; currently, the Special Master's newly hired data expert is obtaining and evaluating relevant data to assist in guiding the necessary corrective action." (ECF No. 6846 at 24, fn. 12.) The same order contemplates a process in which the parties will bring CQIT entirely up to date within six

Matthew A. Lopes, Jr.
November 30, 2020
Page 3

months – a reasonable timeframe but not one that appears realistic given the pace of Dr. Potter's work.  (ECF No. 6846 at 25.)  In addition to CQIT, Defendants' ability to move forward with full implementation of the ASU EOP Treatment Improvement Plan and refinement and full implementation of EHRS are also tied to Dr. Potter's work.  (*Id.* at 27 and 28.)  Defendants do not know the status of Dr. Potter's data review related to these areas, and are not able to determine the time needed to complete his planned actions.  These delays directly impair CDCR's ability to monitor its system in a way that is transparent to the parties, and identify and correct problems related to patient care in a timely manner.

      Defendants appreciate the opportunity that you previously provided to the parties to meet with Dr. Potter and ask him questions concerning his work.  Defendants also appreciate the amount of time Dr. Potter is spending on his review of data issues, but the time has come to bring prioritization and focus to that work.  Given recent Court orders and information gleaned from Dr. Potter's billing statements, Defendants request details on Dr. Potter's plan to review, assess, and report on necessary corrective actions for CDCR's data and quality assurance programs.  Dr. Potter should clarify that his work is tied to the issues raised by the neutral expert's findings on the Golding report, the need to establish trust of in CDCR's data systems, and whether CDCR's data systems are accurately assessing compliance with existing CDCR policy.  Defendants request that Dr. Potter list each of his goals, and for each goal the steps he is taking to address the goal and the timeline for completion of work under the goal.  Defendants require this information so that they may respond to the various pending Court orders and it is critical to Defendants' ability to prepare for the December 18, 2020 status conference.

                                            Sincerely,

                                            */s/ Elise Owens Thorn*

                                            ELISE OWENS THORN
                                            Deputy Attorney General

                        For      XAVIER BECERRA
                                            Attorney General

EOT

cc:  Coleman Plaintiffs' Counsel