| | |
|---|---|
| Rob Bonta, State Bar No. 202668<br>Attorney General of California<br>Monica N. Anderson, State Bar No. 182970<br>Senior Assistant Attorney General<br>Damon McClain, State Bar No. 209508<br>Supervising Deputy Attorney General<br>Elise Owens Thorn, State Bar No. 145931<br>Namrata Kotwani, State Bar No. 308741<br>Deputy Attorneys General<br>  1300 I Street, Suite 125<br>  P.O. Box 944255<br>  Sacramento, CA 94244-2550<br>  Telephone: (916) 210-7318<br>  Fax: (916) 324-5205<br>  E-mail: Elise.Thorn@doj.ca.gov<br>*Attorneys for Defendants* | Paul B. Mello, State Bar No. 179755<br>Samantha D. Wolff, State Bar No. 240280<br>David C. Casarrubias, State Bar No. 321994<br>Hanson Bridgett LLP<br>  1676 N. California Boulevard, Suite 620<br>  Walnut Creek, CA 94596<br>  Telephone: (925) 746-8460<br>  Fax: (925) 746-8490<br>  E-mail: PMello@hansonbridgett.com<br>*Attorneys for Defendants* |

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **RALPH COLEMAN, et al.,**<br><br>                Plaintiffs,<br><br>v.<br><br>**GAVIN NEWSOM, et al.,**<br><br>                Defendants. | 2:90-cv-00520 KJM-DB (PC)<br><br>**DECLARATION OF KATHLEEN ALLISON IN RESPONSE TO APRIL 29, 2022 ORDER (ECF NO. 7541) REQUIRING CLARIFICATION OF DATA REMEDIATION ISSUES** |

I, Kathleen Allison, declare:

1. I am the Secretary of the California Department of Corrections and Rehabilitation (CDCR). I am familiar with the orders in this action concerning data remediation, including the Court's April 29, 2022 order requiring clarification of matters pertaining to the data remediation. (ECF No. 7541.) I submit this declaration in response to the April 29 order.

2. I was appointed by Governor Gavin Newsom as CDCR's Secretary on October 1, 2020. Before my appointment as Secretary, I served in several positions within CDCR, rising through the ranks over the past 35 years. Those positions include Undersecretary of Operations,

1

Director for the Division of Adult Institutions, Deputy Director of Facility Support, Associate Director for the Female Offender Programs, Warden, Chief Deputy Administrator, Associate Warden, Correctional Counselor, Community Resources Manager, Litigation Coordinator, Correctional Health Services Administrator II, Health Care Manager, and Senior Medical Technical Assistant, after starting my career as a Medical Technical Assistant in 1987.

3. The April 29 order set forth the following four matters for clarification and stated that if the Special Master and I were able to reach agreement on all four issues, then the basis of that agreement could be set forth in my declaration:

    a. Identification of methods needed to streamline the data remediation process so the process can be completed well before December 2023, including the amount of time during the process for court resolution of any disputes;

    b. The adoption of a template to monitor deadlines tracking complete remediation of each CQIT indicator as part of completion of the entire data remediation project globally;

    c. The adoption of a focused process to identify disputes or gaps arising during the data remediation process, to provide efficient exhaustion of dispute resolution and, to the extent needed, prompt presentation to the court for resolution; and

    d. Confirmation from the Secretary and the Undersecretary that the staff assigned to the data remediation project is sufficient in number and qualifications to complete the project well in advance of December 2023.

4. I met and conferred with the Special Master to address each of the four issues identified in Paragraph 3, and we developed a plan to streamline data remediation including the process for resolution of any disputes. The plan is set forth in the attached Exhibits A and B. Exhibit A is the proposed Activation Schedule Template for both individual indicators ("Report A") and the data remediation project globally ("Report B"), which were developed by the Special Master with input from Defendants, and Exhibit B is the Dispute Resolution process for the data remediation project.

5.  I am informed that the Special Master has met with Plaintiffs on these documents and that Plaintiffs' input is included in Exhibits A and B and that they have no further objections to the plan to expedite data remediation or to the documents.

6.  I confirm that the staff assigned to work on data remediation including its technical writers are sufficient in number and qualifications to complete data remediation before December 2023.  CDCR provided the Special Master with the identification of staff assigned to work on data remediation, the staff's responsibilities while working on data remediation, and the staff's duty statements. In addition to having adequate staff to complete the project timely, I am committed to ensuring additional staff, as may be necessary, will be assigned to the project.  To that end, the project has enlisted the assistance of the California Correctional Health Care Services Information Technology Services Division (CCHCS ITSD) whose director reports to the CDCR Undersecretary of Health Care Services, Diana Toche.  CCHCS ITSD provides technical assistance to all healthcare divisions, including medical, dental and mental health.

7.  Although I was able to reach agreements with the Special Master on a number of items outlined in the court's minute order, CDCR continues to lack clarity on the end goal of this process.  CDCR raised these issues multiple times in their data activation schedules and most recently during the April 22, 2022 status conference.  (*See*, *e.g.*, Defendants' April 7, 2022 Updated Activation Schedules for Completion of Court-Ordered Data Remediation, ECF No. 7523 at 3-4.)  Based on my reading of the transcript from the April 22 status conference, I understood that the "template for activation going forward…might be responsive, in part" to the concerns CDCR has repeatedly raised.  (Reporter's Transcript at 40:25 – 42:16.)  Unfortunately, after several discussions concerning data remediation, the clarity CDCR has asked for is still missing.  CDCR suggested the following footnote be added to the Activation Schedule Report A, which would have provided the clarity CDCR seeks:  An indicator is remediated when the Special Master's data expert finds that the dispute resolution process is complete and that the indicator is operating as specified.  This proposal was rejected.  CDCR then asked if a definition could be provided in the dispute resolution document or another document.  CDCR was told no.

8. The Special Master has declined to include a clear definition of what it means for an indicator to be remediated within the proposed Activation Schedule template. From my discussions with the data expert, I understand that he believes that an indicator is remediated if the parties agree upon its operation and it is operating as specified. CDCR learned for the first time during the meet and confer process, that the Special Master's data expert would only "remediate" individual indicators and not certify them. Instead, during the meet and confer process, the Special Master's data expert informed CDCR that he would only certify the entire data system, but not individual indicators.

9. I request that the court direct the Special Master to adopt an agreed upon definition of the term "remediation." It is important that the Special Master and the parties agree on what it means to remediate and to certify CDCR's data. I am concerned that without greater clarity on what is required to remediate an indicator and to certify CDCR's data system, the end goal of this project and how to achieve that goal remain undefined.

I declare under penalty of perjury that the information in this declaration is true and correct to the best of my knowledge. Executed on this 19th day of May 2022, in Sacramento, California.

/s/ *Kathleen Allison*
KATHLEEN ALLISON
Secretary of the California Department of Corrections and Rehabilitation
(*Original signature retained by counsel*)