DONALD SPECTER – 083925
STEVEN FAMA – 099641
MARGOT MENDELSON – 268583
PRISON LAW OFFICE
1917 Fifth Street
Berkeley, California  94710-1916
Telephone:   (510) 280-2621

CLAUDIA CENTER – 158255
DISABILITY RIGHTS EDUCATION
AND DEFENSE FUND, INC.
Ed Roberts Campus
3075 Adeline Street, Suite 210
Berkeley, California 94703-2578
Telephone:   (510) 644-2555

MICHAEL W. BIEN – 096891
JEFFREY L. BORNSTEIN – 099358
ERNEST GALVAN – 196065
LISA ELLS – 243657
THOMAS NOLAN – 169692
JENNY S. YELIN – 273601
MICHAEL S. NUNEZ – 280535
JESSICA WINTER – 294237
MARC J. SHINN-KRANTZ – 312968
CARA E. TRAPANI – 313411
ALEXANDER GOURSE – 321631
BRENDA MUÑOZ – 328813
AMY XU – 330707
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
Telephone:   (415) 433-6830

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

RALPH COLEMAN, et al.,

      Plaintiffs,

    v.

GAVIN NEWSOM, et al.,

      Defendants.

Case No. 2:90-CV-00520-KJM-DB

**PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTIONS TO PART A OF THE SPECIAL MASTER'S TWENTY-NINTH ROUND MONITORING REPORT ON THE PSYCHIATRIC INPATIENT PROGRAMS FOR MENTAL HEALTH PATIENTS OF THE CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION (ECF No. 7555)**

Judge:   Hon. Kimberly J. Mueller

[4100662.7]

PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTIONS TO PART A OF THE SPECIAL MASTER'S
TWENTY-NINTH ROUND MONITORING REPORT

**INTRODUCTION**

On May 27, 2022, Defendants filed objections to the May 17, 2022 Special Master's Monitoring Report on the Psychiatric Inpatient Programs, ECF No. 7555 ("Report"). *See* Defs.' Objections, ECF No. 7559 (May 27, 2022). In their Objections, Defendants downplay the significant deficiencies that have plagued their inpatient programs for years, as well as the harms those deficiencies have wrought on the most seriously mentally ill members of the *Coleman* class. Accordingly, Plaintiffs requested leave to respond to Defendants' Objections, *see* Request for Leave, ECF No. 7564 (June 3, 2022), which this Court granted, *see* June 3, 2022 Minute Order, ECF No. 7565. Plaintiffs urge the Court to issue an order adopting the Report and its recommendations in full.

**I.      THE COURT SHOULD NOT CONSIDER ANY OBJECTIONS THAT DEFENDANTS DO NOT SPECIFICALLY ADDRESS IN THEIR FILING**

Defendants attempt to incorporate by reference their objections to the draft Report detailed in a letter dated April 11, 2022 (Exhibit B to Report, ECF No. 7555-1 at 7), and ask the Court to consider those arguments in any order on the Report. *See* Defs.' Objections, ECF No. 7559 at 2, 4 (May 27, 2022). The Order of Reference forecloses this argument. The Order of Reference makes clear that any party objecting to a report of the Special Master "shall note each particular finding or recommendation to which objection is made …." Order of Reference, ECF No. 640 at 8 (Dec. 11, 1995). But other than a generalized citation to their April 11, 2022 letter, Defendants fail to describe with any particularity which of those objections they maintain, let alone acknowledge that the Report responds at length to each of them. *See* Report, ECF No. 7555 at 22-36. Nor do Defendants describe how the Special Master's responses are inadequate (they are not). They also fail to provide any evidence to contradict the Report's reasoning. Accordingly, the Court should disregard any objection not specifically addressed in Defendants' filing.

**II.      DEFENDANTS CANNOT ESTABLISH CLEAR ERROR**

The Court should similarly reject Defendants' blanket objection to the Report's factual findings. *See* Defs.' Objections, ECF No. 7559 at 2 (May 27, 2022) (taking

[4100662.7]

1

1    exception, without further explanation, "to many of the purported factual findings," and

2    claiming they "are unable to assert itemized objections to the factual findings here, given

3    the length of the Report and 10-day objection timeframe").  The Order of Reference

4    requires this Court to accept findings of fact made by the Special Master in his compliance

5    reports unless those findings are "clearly erroneous."  Order of Reference, ECF No. 640

6    at 8 (Dec. 11, 1995).  "A finding is 'clearly erroneous' when although there is evidence to

7    support it, the reviewing court on the entire evidence is left with the definite and firm

8    conviction that a mistake has been committed."  *Anderson v. City of Bessemer City, N.C.*,

9    470 U.S. 564, 573 (1985); *see also* July 14, 2021 Order, ECF No. 7229 at 5 (same).

10           Here, Defendants have not presented (or even described) any evidence whatsoever

11   to rebut the Special Master's factual findings, much less to establish clear error.  In fact,

12   Defendants have not identified, or even attempted to describe, the facts with which they

13   take issue.  This further violates the Order of Reference.  *See* Order of Reference, ECF

14   No. 640 at 8 (Dec. 11, 1995) (requiring that "[t]he objecting party shall note each

15   particular finding or recommendation to which objection is made, [and] shall provide

16   proposed alternative findings or recommendations").  Also, Defendants' complaint about

17   lack of time to prepare a response rings hollow given that they have had the Special

18   Master's draft Report for months, prepared and served detailed objections, and merely had

19   to review the Special Master's final Report, which considered and responded to each of

20   Defendants' objections.  They could have, but did not, seek an extension to file their

21   objections to either the draft or final Report.

22           The Special Master's diligent factual findings are based on documents provided by

23   Defendants and on-site inspections attended by Defendants.  Those inspections consisted

24   of extensive record reviews, treatment observations, and staff and patient interviews.  The

25   Report responds at length to the objections in Defendants' April 11, 2022 letter in response

26   to the draft Report and provides well-reasoned arguments as to why the Special Master

27   declined to insert new findings in response to those objections.  *See* Report, ECF No. 7555

28   at 22-36.  Defendants' vague statement in their filing that they continue to disagree with

1  the Report's factual findings is plainly insufficient to establish clear error.  The Court

2  should adopt the Report's findings in full.

3  **III.    THE RECOMMENDATIONS IN THE SPECIAL MASTER'S 2022**
        **INPATIENT REPORT ARE APPROPRIATE AND SHOULD BE ADOPTED**

4

5        **A.    Recommendation #1**

6        Defendants' objections to Recommendation #1 rely on their contention that the

7  longstanding staffing deficiencies in the PIPs—which have devolved from urgent to crisis-

8  level over the course of the current monitoring round—are adequately addressed by the

9  15% pay differential and retention bonus structure that Defendants recently implemented

10 for mental health clinicians in the PIPs.  *See* Defs.' Objections, ECF No. 7559 at 2 (May

11 27, 2022).  While Plaintiffs applaud this development, it does not foreclose the need for an

12 order directing Defendants to develop a comprehensive plan to durably remedy the staffing

13 shortages identified in the Report.  Defendants have provided no evidence in support of

14 their contention that these pay incentives will be sufficient in and of themselves to solve

15 the longstanding staffing shortages.

16        As an initial matter, Defendants' objection that this recommendation is premature in

17 light of the pay increases for PIP clinicians violates the Order of Reference because it was

18 not submitted to the Special Master in response to the draft Report.  *See* Order of

19 Reference, ECF No. 640 at 8 (Dec. 11, 1995) ("The court will entertain no objection to the

20 report unless an identical objection was previously submitted to the special master ….").

21 Defendants first announced the compensation proposals in an email dated April 21, 2022,

22 after they had submitted their objections to the draft Report, but prior to the Report being

23 finalized.  *See* Ex. H to Report, ECF No. 7555-1 at 92; *see also* Report, ECF No. 7555 at

24 40 n.19 (acknowledging the pending pay incentives, but declining to revise the Report's

25 staffing recommendation in response thereto).  But as early as the February 11, 2022 Status

26 Conference, the Secretary for the California Department of Corrections and Rehabilitation

27 (CDCR) pointed this Court to a provision in the Governor's proposed budget stating that

28 the State was committed to providing appropriate inpatient care, and stated, "we're going

1   through that process currently."  Rep. Tr. of Feb. 11, 2022 Status Conf., ECF No. 7461 at

2   15:22-23 (Feb. 15, 2022).  When the Court ordered Defendants to provide all

3   documentation supporting the Governor's statement, *see* Feb. 17, 2022 Minute Order, ECF

4   No. 7467, Defendants filed the one-page provision from the Governor's Budget summary

5   recited at the Status Conference, but provided no other information or preview of the

6   staffing compensation increases they would announce just two months later, *see* Defs.'

7   Submission In Resp. to Feb. 17, 2022 Order, ECF No. 7485 (March 3, 2022).

8          Even if the Court entertains this objection despite that Defendants failed to submit it

9   to the Special Master, it should be overruled because an order adopting this recommenda-

10  tion would not violate the Prison Litigation Reform Act (PLRA).  *See* Defs.' Objections,

11  ECF No. 7559 at 3 (May 27, 2022).  Notably, in their objections to the draft Report,

12  Defendants did not argue that the PLRA precluded this recommendation—again in

13  violation of the clear terms of the Order of Reference.  *See* Ex. B to Report, ECF

14  No. 7555-1 at 12; *see also* Order of Reference, ECF No. 640 at 8 (Dec. 11, 1995) ("The

15  court will entertain no objection to the report unless an identical objection was previously

16  submitted to the special master ….").  The argument is therefore waived.

17         Even if the objection were properly before this Court, the Special Master's

18  recommendation is fully consistent with the PLRA.  Defendants' significant and chronic

19  staffing shortages have been at the core of this case since its inception.  *See, e.g.*, Sept. 3,

20  2020 Order, ECF No. 6846 at 11, 21 (reciting history of chronic understaffing)*; July 9,

21  2019 Order, ECF No. 6214 at 5-6 (citing *Coleman v. Wilson*, 912 F. Supp. 1282, 1307

22  (E.D. Cal. 1995)).  And they have been required to maintain a maximum ten-percent

23  vacancy rate in all CDCR mental health programs since 2002.  *See* June 13, 2002 Order,

24  ECF No. 1383 at 4.[1]  But significant clinical staffing vacancies have plagued Defendants'

25

26  _____

    [1] The Special Master has found that the Court's 2002 order—which states that Defendants'
27  "constitutional obligations" to maintain adequate staffing levels extend to the "class
    members in their custody at any given time," *see* June 13, 2002 Order, ECF No. 1383 at
28  3—applies to the PIPs.  *See, e.g.*, 2018 Inpatient Report, ECF No. 5894 at 17-18; *see also*
    (footnote continued)

1   inpatient programs every year since CDCR assumed responsibility for the PIPs in 2017.

2   *See, e.g.*, Special Master's Monitoring Report on CDCR's Mental Health Inpatient Care

3   Programs (hereafter, "2018 Inpatient Report"), ECF No. 5894 at 17 (Aug. 30, 2018)

4   ("[S]taffing vacancies in multiple disciplines across programs remained a significant

5   impairment to providing appropriate care in inpatient settings."); Special Master's

6   Amended Report on Status of Access to Inpatient Care in DSH (hereafter, "2020 Inpatient

7   Report"), ECF No. 6579 at 19, 30, 34 (Apr. 6, 2020) (reporting pre-pandemic PIP staffing

8   vacancies to be "institutional program failures" that "seriously limited" class members'

9   access to mental health treatment, finding "[a]lready inadequate staffing levels … have

10  only worsened since the onset of the COVID-19 pandemic," and concluding "[i]t is clear

11  that with staffing shortages appropriate care cannot be provided in the PIPs"); Special

12  Master's Monitoring Report on CDCR's Mental Health Inpatient Care Programs

13  (hereafter, "2021 Inpatient Report"), ECF No. 7039 at 14 (Jan. 28, 2021) ("As evidenced

14  by the Special Master's preceding reports on inpatient care (ECF Nos. 4830, 5156, 5448,

15  5894), defendants have struggled for years with staffing vacancies …."); *id.* at 20-21

16  ("[S]taffing problems …. have greatly contributed to the underperformance of the PIPs in

17  providing mental health care to *Coleman* class members.").

18      The instant Report confirms that staffing levels in the PIPs have only continued to

19  deteriorate since the Special Master's last monitoring round, to the point where they are

20  now "wholly deficient" and "deprive the Lift and Shift patients of access to

21  constitutionally adequate inpatient care."  *See* Report, ECF No. 7555 at 33; *see also id.* at

22  37 ("[T]he Lift and Shift PIPs are in a crisis, primarily driven by deficiencies that have

23  plagued defendants' mental health care system throughout the long history of this case,

24  including dangerously high staffing vacancies at some programs".).  The Report also finds

25  that of the numerous initiatives Defendants have adopted to attempt to stem the tide of the

26

27  ─────────────────

28  *See* 2021 Inpatient Report, ECF No. 7039 at 15-16.  Defendants failed to make any
    objection to the 2018 Inpatient Report or its application of the 2002 Order to the PIPs.

1   mass exodus of clinical staff since CDCR assumed responsibility for the PIPs in 2017

2   (including the psychiatric nurse practitioner and telepsychiatry policies), "none had

3   resulted in any progress reducing staffing vacancies at the Lift and Shift PIPs at the time of

4   the monitoring tours." *Id.* at 53. This undermines Defendants' claim that further staffing

5   plans are not necessary. *See* Defs.' Objections, ECF No. 7559 at 2-3 (May 27, 2022).

6          An order adopting Recommendation #1 would be rooted in the same staffing

7   violations identified by the Court in 1995. Because such an order would simply enforce

8   compliance with an existing remedy, it would not constitute prospective relief under the

9   PLRA. *See, e.g.*, *Coleman v. Wilson*, 933 F. Supp. 954, 956-57 (E.D. Cal. 1996)

10  (distinguishing between orders that govern the "means of facilitating relief" and those that

11  impose "relief itself," and concluding that the former do not constitute prospective relief

12  under the PLRA); *Coleman v. Brown*, 2013 WL 3773963 at *3 n.8 (E.D. Cal., July 12,

13  2013) ("To the extent that this order directs specific action by defendants or the Special

14  Master it implements a remedy that has already been ordered by the court. For that reason,

15  the court is not required to make the findings set forth in 18 U.S.C. § 3626(a)(1).");

16  *Coleman v. Brown*, 2013 WL 6071977 at *1-2 (E.D. Cal., Nov. 13, 2013) (finding separate

17  finding of constitutional violations not required for further order in aid of remedy required

18  by older order finding liability); *see also Parsons v. Ryan*, 912 F.3d 486, 501 (9th Cir.

19  2018), *cert. denied sub nom. Ryan v. Jensen*, 140 S. Ct. 142 (2019) (holding that orders

20  issued to implement an existing remedy do not themselves constitute prospective relief

21  under the PLRA); *Jones-El v. Berge*, 374 F.3d 541, 545 (7th Cir. 2004) ("The enforcement

22  of a valid consent decree is not the kind of 'prospective relief' considered by § 3626(a).").

23         Even if the Court finds that the PLRA applies (it should not), an order adopting

24  Recommendation #1 is necessary and appropriate. Ensuring there is adequate staffing at

25  the most intensive levels of care, which are reserved for the most acutely ill patients, is

26  more critical to the mental health system's proper functioning than anywhere else. Yet, as

27  described above, the staffing vacancy rates in the PIPs have steadily increased in the five

28  years since CDCR took control of these programs. Most important, the instant Report

[4100662.7]

1  confirms these staffing shortages have resulted in harm to the Plaintiff class. *See* Report,

2  ECF No. 7555 at 33 ("[T]he Lift and Shift PIPs' anemic staffing fill-rates …. continue to

3  deprive the Lift and Shift patients of access to constitutionally adequate inpatient care.").

4  In light of this case history, an order adopting Recommendation #1 would be narrowly

5  drawn, extend no further than necessary to remedy the ongoing constitutional violations,

6  and constitute the least intrusive means to that end. *See Brown v. Plata*, 563 U.S. 493, 516

7  (2011) (finding that reasonableness of an ordered remedy "must be assessed in light of the

8  entire history of the court's remedial efforts"); *Coleman v. Brown*, 756 F. App'x 677, 679

9  (9th Cir. 2018) (finding relief ordered did not violate PLRA where there was "substantial

10  risk of serious harm" and the "factual findings [were] well supported and not clearly

11  erroneous"); *Coleman v. Brown*, 428 F. App'x 743, 744 (9th Cir. 2011) (finding

12  "expansive record in this case[,] …. contain[ing] ample evidence of the unconstitutional

13  conditions" relevant to PLRA analysis); *Gilmore v. California*, 220 F.3d 987, 1008 (9th

14  Cir. 2000) (PLRA analysis requires broad assessment of record, rather than "exclusive

15  focus on express findings").

16         It may be that Defendants' recent compensation increases will constitute a major

17  part of their plan to remedy clinical vacancies in the Lift and Shift PIPs. But because

18  Defendants did not meet and confer with the Special Master or Plaintiffs' counsel prior to

19  announcing the proposals, it cannot be said that additional measures are not necessary to

20  solve Defendants' ongoing inability to implement the Eighth Amendment staffing remedy

21  in this case. Indeed, through on-site interviews with staff, the Special Master identified

22  numerous cultural issues unrelated to pay that are negatively impacting staff morale, and

23  likely retention. *See, e.g.*, Report, ECF No. 7555 at 50 ("Interviewed staff reported

24  concerns about low morale and burnout among staff."); *id.* at 259 ("Mental health staff and

25  nursing staff reported feeling overworked and underappreciated. There was a building

26  tension and resentment between psychiatrists and psychologists over psychiatry's alleged

27  refusal to assist with increasing amounts of paperwork."); *id.* at 347 (noting complaints of

28  "poor communication of policy changes as they were occurring" and "additional

1  complaints related to operational matters such as difficulties accessing supplies, poor wi-fi

2  and internet connections").  These sentiments echo findings of the Special Master's Labor

3  Economist.  *See* Special Master's Report on his Expert's Analysis of Psychiatrist

4  Employment Conditions and Compensation, ECF No. 6695 at 19 (May 29, 2020) ("CDCR

5  and DSH psychiatrists earn higher salaries than psychiatrists at other private and public

6  California employers, however CDCR and DSH psychiatrists report overall job

7  dissatisfaction related to a variety of factors including office space, professional standing,

8  limited promotional opportunities and limited institutional support from the medical

9  assistant program.").  Indeed, a recent news article reported that CDCR psychiatrists have

10  alleged dangerous working conditions and oppressive management as barriers to

11  recruitment and retention, in addition to poor compensation and benefits.  *See* Wes

12  Venteicher, *California Prison Psychiatrists Demand Pay Raise, Rip State Spending on*

13  *Contractors*, The SACRAMENTO BEE (June 7, 2022),

14  https://www.sacbee.com/news/politics-government/the-state-

15  worker/article262226382.html.[2]

16      An order requiring Defendants to develop a comprehensive staffing plan, without

17  specifying the contents of that plan, carefully balances Defendants' prerogatives with the

18  Court's obligation to ensure the integrity of the remedy.  This is precisely the type of

19  narrow tailoring the PLRA requires.  *See Armstrong v. Brown*, 768 F.3d 975, 985 (9th Cir.

20  2014); *see also Brown*, 563 U.S. at 511 (courts "must not shrink from their obligation to

21  enforce the constitutional rights of all persons, including prisoners. … Courts may not

22  allow constitutional violations to continue simply because a remedy would involve

23

24  ───────────────────
   [2] Pursuant to Federal Rule of Evidence 201, the Court may take judicial notice of facts that
25  are capable of accurate and ready determination by resort to sources whose accuracy
   cannot be reasonably questioned.  Fed. R. Evid. 201(b)(2).  Given that the news article
26  cited above is a matter of public record, Plaintiffs request that the Court take judicial notice
   of the existence of this document (not the truth of any facts or allegations asserted therein).
27  *See Lee v. City of Los Angeles*, 250 F.3d 668, 688-90 (9th Cir. 2001); *Robles v. Cnty. of*
   *Sacramento*, Case No. 2:17-cv-01580-JAM-AC, 2020 WL 2539317 at *1 (E.D. Cal.
28  May 19, 2020).

[4100662.7]

8

1   intrusion into the realm of prison administration.") (internal quotation marks and citations

2   omitted); *Shorter v. Baca*, 895 F.3d 1176, 1191 (9th Cir. 2018) ("[W]hile courts

3   unquestionably should be reluctant to second-guess prison administrators' opinions … the

4   judicial system has a role in safeguarding inmates from serious civil rights abuses.")

5   (internal quotation marks and citation omitted).

6        Finally, the recommended 30-day timeline for Defendants to develop a

7   comprehensive plan to remedy the staffing crisis in the Lift and Shift PIPs is appropriate.

8   Defendants have been aware of these deficiencies and the harms that flow from them for

9   years.  Entry of the recommended staffing order is critical to the safety and wellbeing of

10  the *Coleman* class, and is long overdue.  Accordingly, the Court should overrule

11  Defendants' objections and adopt in full the Report's first recommendation.

12      **B.    Recommendation #2**

13      As an initial matter, Recommendation #2 in the instant Report mirrors the Special

14  Master's first recommendation from the 2021 Inpatient Report.  *Compare* Report, ECF

15  No. 7555 at 164, *with* 2021 Inpatient Report, ECF No. 7039 at 118.  In response to this

16  same recommendation last year, Defendants argued that an order was unnecessary because

17  they voluntarily planned "to develop and submit plans to the Special Master within the

18  requested timeframe."  *See* Defs.' Objections to 2021 Inpatient Report, ECF No. 7051 at

19  10 (Feb. 8, 2021); *see also* Attach. B to 2021 Inpatient Report (Defs.' Objections to draft

20  2021 Inpatient Report), ECF No. 7039-2 at 9 (Jan. 28, 2021) ("Defendants are willing to

21  work with the Special Master's team to better define the standards referenced in the

22  recommendation and what is expected for tracking and reporting on adherence to the

23  standards.").  However, Defendants never followed through on this commitment.  An order

24  adopting Recommendation #2 is therefore critical.

25      Moreover, Defendants' purported objections to this recommendation are not really

26  objections because Defendants state they "are committed to working with the Special

27  Master to clarify the required components of the plans requested in this recommendation"

28  and "expect[] to develop and submit plans to the Special Master within the requested

[4100662.7]

9

1    timeframe once ordered." *See* Ex. B to Report, ECF No. 7555-1 at 13. Again, this is the

2    same promise supplied a year ago, yet Defendants have failed to act.

3         In any event, Defendants' complaint that this recommendation is "too vague" and

4    "not tied to specific, identified issues" lacks merit. *See* Defs.' Objections, ECF No. 7559

5    at 3 (May 27, 2022). Again, Defendants raised this same complaint last year, despite

6    stating in their response to the draft 2021 Inpatient Report that "Defendants are confident

7    that they can work with [the Special Master's] team to clarify each of the components of

8    the plans and requests [*sic*] that opportunity." Attach. B to 2021 Inpatient Report, ECF

9    No. 7039-2 at 9 (Jan. 28, 2021). Regardless, as was the case with the 2021 Inpatient

10   Report, the instant Report clearly identifies the numerous deficiencies giving rise to this

11   recommendation. *See, e.g.*, Report, ECF No. 7555 at 35 ("[A]s the Special Master has

12   previously reported, there were many reported instances of *Coleman* class members

13   receiving more mental health care in an enhanced outpatient program (EOP) in the prisons

14   than in the PIPs, which held true both pre- and post-COVID-19."); *id.* at 65 ("Both on-site

15   observation of the Lift and Shift PIP interdisciplinary treatment team (IDTT) meetings as

16   well [as] the monitor's expert's case reviews revealed multiple deficiencies in treatment

17   planning processes and documentation."); *id.* at 67 (finding "the bulk of group therapy

18   provided during the round at many programs were recreation groups, or in some cases,

19   nursing led groups" and "assignment of patients to groups were found to be based not on

20   the patients' mental health needs, but, rather, on staffing availability"); *id.* at 68 (finding "a

21   patchwork of standards for frequency of individual treatment across the PIPs" and "that

22   many individual clinical contacts occurred non-confidentially at cell front during the

23   round"); *id.* at 167 ("The amount of unstructured out-of-cell time offered to patients was

24   inadequate."); *id.* at 386 ("There was no minimum requirement for offering of yard within

25   an acute program."). In any event, Defendants ignore the fact that the recommendation

26   calls for developing a remedial plan for these shortcomings "under the guidance and

27   supervision of the Special Master." *Id.* at 164. To the extent Defendants require further

28   clarity, it will naturally arise through this process, as Defendants apparently concede. *See*

1    Ex. B to Report, ECF No. 7555-1 at 13; *see also* Attach. B to 2021 Inpatient Report, ECF

2    No. 7039-2 at 9 (Jan. 28, 2021).

3    In addition, for the reasons noted above with respect to Recommendation #1, an

4    order adopting Recommendation #2 would not implicate the PLRA.  *See* Defs.'

5    Objections, ECF No. 7559 at 4 (May 27, 2022).  Again, it bears mention that Defendants

6    did not raise a PLRA argument in their objections to the draft Report, which means they

7    cannot present them here in the first instance under the Order of Reference.  *See* Ex. B to

8    Report, ECF No. 7555-1 at 12-13; *see also* Order of Reference, ECF No. 640 at 8

9    (Dec. 11, 1995).  Even if they had, over the course of this case, the Court has issued

10   numerous substantive orders regarding Defendants' obligation under the Eighth

11   Amendment to provide *Coleman* class members with access to necessary inpatient mental

12   health treatment.  *See, e.g.*, Sept. 3, 2020 Order, ECF No. 6846 at 12-13 (summarizing

13   relevant orders); *see also* July 11, 2013 Order, ECF No. 4688 at 7 n.5 ("Defendants do not

14   contend, nor could they do so successfully, that access to inpatient mental health care is

15   not required by the Eighth Amendment for this class of plaintiffs."); *Coleman v. Brown*,

16   938 F. Supp. 2d 955, 972-73 (E.D. Cal. 2013) (discussing prior court orders addressing,

17   *inter alia*, "access to inpatient care").  As with an order pertaining to Recommendation #1,

18   discussed above, adoption of Recommendation #2 would not constitute prospective relief

19   under the PLRA because it would simply enforce these existing remedial orders.  *See, e.g.*,

20   *Coleman*, 933 F. Supp. at 956-57; *Coleman*, 2013 WL 3773963 at *3 n.8; *Coleman*, 2013

21   WL 6071977 at *1-2; *see also Parsons*, 912 F.3d at 501; *Jones-El*, 374 F.3d at 545.

22   Even if the PLRA did apply, an order adopting this recommendation would meet all

23   the criteria for prospective relief because the recommendation is specific, narrow, and

24   amply supported by the record.  As this Report and prior inpatient monitoring reports make

25   clear, conditions in the PIPs have only deteriorated in the five years since Lift and Shift.

26   *See, e.g.*, 2018 Inpatient Report, ECF No. 5894 at 27 ("Individual treatment was rarely

27   offered or provided across inpatient programs, and where provided was either woefully

28   inadequate, or not accurately tracked."); *id.* at 41 ("As with the acute care program, the

hours offered to intermediate care patients were significantly lower than what was offered at the EOP level of care."); 2020 Inpatient Report, ECF No. 6579 at 19 (describing the "lack of appropriate treatment at CHCF-PIP, CMF-PIP, and SVSP-PIP" as "institutional program failures"); 2021 Inpatient Report, ECF No. 7039 at 49 ("Across inpatient programs, the level of structured and unstructured activities provided to patients remained inadequate.  It was common for patients at the intermediate level of care in certain PIPs to be offered fewer hours … than would be offered in a typical EOP in CDCR."); *id.* at 50 ("Individual treatment continued to be rarely offered, provided or tracked …."); 2022 Inpatient Report, ECF No. 7555 at 160 ("This report's findings confirm that *Coleman* class members in the Lift and Shift PIPs continue to receive woefully inadequate inpatient mental health care.").

Defendants have had ample time to address these deficiencies—and indeed promised to do so voluntarily last year in response to the same recommendation in the Special Master's 2021 Inpatient Report.  But they never did.  As noted above, the instant Report contains significant evidence that the most seriously mentally ill patients in the State continue to lack appropriate access to structured therapeutic activities, unstructured out-of-cell activities, treatment planning, and individual treatment consistent with a psychiatric inpatient level of care.  In light of this history, the Report's recommendation to develop a remedial plan for these shortcomings is narrowly tailored and extends no further than necessary to correct the violation.  *See Brown*, 563 U.S. at 516; *Coleman*, 756 F. App'x at 679; *Coleman*, 428 Fed. App'x at 744-45; *Gilmore*, 220 F.3d at 1008. Defendants' failure to present a realistic alternative to providing constitutionally adequate care in the PIPs underscores the need for relief.  *See Armstrong*, 768 F.3d at 986-87 (where State fails to present "any realistic alternative" that will cure the violation, it cannot complain court order is overly intrusive under PLRA (quoting *Brown*, 563 U.S. at 533)).

Finally, the recommendation does not, as Defendants claim, require *simultaneous* development of minimum treatment standards and a system for tracking and reporting adherence thereto.  *See* Defs.' Objections, ECF No. 7559 at 4 (May 27, 2022).  Nor is the

1  90-day deadline too short. *Id.* The recommended timeframe allows Defendants' the

2  flexibility to prioritize creation of minimum treatment standards *prior to* developing

3  tracking and reporting methods (which would be the logical approach, given that a rule

4  must first be created before it can be monitored). Furthermore, given the longstanding,

5  intractable nature of the woefully inadequate conditions in the PIPs, requiring a plan in 90

6  days is appropriate, especially since Defendants promised to do so over a year ago and

7  never followed through. Until this recommendation is implemented, patients in need of

8  adequate inpatient care will continue to suffer in the countless ways identified in the

9  Report. The time to address these problems is now. Defendants' objections to

10  Recommendation #2 (to the extent they are even objections) should be overruled.

## CONCLUSION

12       For the foregoing reasons, the Court should reject Defendants' objections and adopt

13  the Special Master's 2022 Inpatient Report and its recommendations in full.

## CERTIFICATION

15       Plaintiffs' counsel certifies that she reviewed the following orders relevant to this

16  filing: ECF No. 7565; ECF No. 7467; ECF No. 7229; ECF No. 6846; ECF No. 6214; ECF

17  No. 4688; ECF No. 1383; ECF No. 640; *Coleman v. Brown,* 2013 WL 6071977 (E.D. Cal.,

18  Nov. 13, 2013); *Coleman v. Brown*, 938 F. Supp. 2d 955 (E.D. Cal. 2013); *Coleman v.*

19  *Wilson*, 933 F. Supp. 954 (E.D. Cal. 1996); *Coleman v. Wilson*, 912 F. Supp. 1282 (E.D.

20  Cal. 1995).

22  DATED: June 10, 2022          Respectfully submitted,

23                      ROSEN BIEN GALVAN & GRUNFELD LLP

24                      By: */s/ Cara E. Trapani*

25                        Cara E. Trapani

26                      Attorneys for Plaintiffs

[4100662.7]

PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTIONS TO PART A OF THE SPECIAL MASTER'S
TWENTY-NINTH ROUND MONITORING REPORT