UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al., | No. 2:90-cv-0520 KJM DB P |
| Plaintiffs, | |
| v. | ORDER |
| GAVIN NEWSOM, et al., | |
| Defendants. | |

On January 28, 2021, the Special Master filed his second Monitoring Report on the Mental Health Inpatient Care Programs for Inmates in the California Department of Corrections and Rehabilitation ("Report"). ECF No. 7039. The Report is the second since the July 1, 2017 transfer of administrative responsibility and control of six inpatient programs from the California Department of State Hospitals (DSH) to the California Department of Corrections and Rehabilitation (CDCR).[1] The Report covers the following: monitoring visits to all nine inpatient mental health programs, three operated by DSH, and six psychiatric inpatient programs (PIPs) operated by CDCR during the period from September 17, 2019 to March 12, 2020, *id*. at 9[2]; paper

---

[1] The first such Report was filed August 30, 2018. ECF No. 5894.

[2] In this order, citations to page numbers in documents filed in the Court's Electronic Case Filing (ECF) System are to the page number assigned by the ECF System and located in the upper right hand corner of the page.

1

monitoring conducted by the Special Master during his Twenty-Eighth Monitoring Round following the onset of the COVID-19 pandemic in March 2020, reflected in this report through October 2020, *id*. at, *e.g.*, 20; and the work by workgroups led by the Special Master during the same period, *id*. at, *e.g.*, 30.

On February 8, 2021, defendants filed a response and objections to the Report, ECF No. 7051, and on February 22, 2021, plaintiffs filed a reply to defendants' response and objections, ECF No. 7067. On May 26, 2021, in connection with its review of the 2021 Report, the court directed defendants to file the most recent Mental Health Bed Need Study and, going forward, to file each Mental Health Bed Need Study within five days of its publication. ECF No. 7185. On May 27, 2021, defendants filed the Spring 2021 Mental Health Bed Need Study. ECF No. 7186. On January 18, 2022, defendants filed the Fall 2021 Mental Health Bed Need Study, ECF No. 7421, and on May 16, 2022, defendants filed the May 2022 Mental Health Bed Need Study, based on Spring 2022 population projections, ECF No. 7553.

Both the COVID-19 pandemic and events in this litigation have mooted or otherwise affected some of defendants' objections to the Special Master's findings and recommendations as well as some of the recommendations themselves. As explained below, while the court adopts the Special Master's factual findings it declines to make any further specific orders at this time.

I.   Standard of Review

Paragraph C of the Order of Reference provides in relevant part:

> [A]ny compliance report of the special master filed in accordance with paragraph A(5) above shall be adopted as the findings of fact and conclusions of law of the court unless, within ten days after being served with the filing of the report, either side moves to object or modify the report. . . . The objecting party shall note each particular finding or recommendation to which objection is made, shall provide proposed alternative findings or recommendations, and may request a hearing before the court. Pursuant to Fed. R. Civ. P. 53(e)(2), the court shall accept the special master's findings of fact unless they are clearly erroneous.

ECF No. 640 at 8. "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a

2

mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948) (quoted in *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573 (1985)).

## II. Defendants' First Objection

Defendants first object that the Report fails to distinguish systemic issues in access to inpatient care from access issues attributable to the COVID-19 pandemic, and improperly conflates "long-standing problems with issues that were compliant before the pandemic." ECF No. 7051 at 2-5. Plaintiffs disagree. ECF No. 7067 at 2-6. Defendants point to several findings in the report in support of this general objection.

### A. Waitlist

Defendants take issue with the following statements in the Report:

> Combined with the uneven care being provided in the PIPs, the shortage of inpatient beds exacerbates an issue defendants have been grappling with for years. At the time of this writing, the list of *Coleman* class members waiting for inpatient care beds remains high, at approximately 300 or more.

ECF No. 7051 at 3 (quoting ECF No. 7039 at 21). Defendants contend the current waitlist for inpatient care should be attributed to public health measures implemented to protect patients and staff from the COVID-19 pandemic and that the Special Master's failure to make this attribution gives "the false impression of backsliding on [d]efendants' successful compliance with inpatient transfer requirements over the past several years." *Id*. Plaintiffs point to a report filed by the Special Master in early 2020, and defendants' own reporting, which they argue suggests even before the onset of the COVID-19 pandemic defendants were again facing a significant shortage of inpatient beds. ECF No. 7067 at 3 (citing ECF No. 6579 at 12-14; ECF No. 6856 ¶ 72 & Ex. H at 185). Plaintiffs also argue that defendants' achievement of compliance with transfer requirements has been accomplished with continued reliance on unlicensed hospital beds with no plan to replace them with licensed beds. *Id*. at 3-4.

/////

/////

/////

3

The entire finding of the Special Master is as follows:

> One serious issue remains the lack of a sufficient number of inpatient beds. To illustrate, at SVSP-PIP, housing units C5 and C6—which, in 2011, were established for temporary use as intermediate care units due to severe shortages of inpatient beds—remain in use to this day. During the time the conversion of C5 and C6 was in progress, the number of seriously mentally ill inmates waiting for inpatient care beds exceeded 400. ECF No. 3929 at 1. Combined with the uneven care being provided in the PIPs, the shortage of inpatient beds exacerbates an issue defendants have been grappling with for years. At the time of this writing, the list of *Coleman* class members waiting for inpatient care beds remains high, at approximately 300 or more.

ECF No. 7039 at 21. Defendants do not challenge the factual finding that they have an ongoing shortage of inpatient beds.[4] Nor do defendants challenge the size of the waitlist for inpatient care reported by the Special Master; in fact, the nature of their objection acknowledges the finding is correct. *See* ECF No. 7051 at 3.

The Special Master's finding in the Report is consistent with past findings. In March 2017, the court found that waitlists for inpatient care have historically arisen due in large part to a combination of an insufficient number of inpatient beds to meet projected need and less than full utilization of dedicated inpatient beds, particularly those at DSH-Atascadero and DSH-Coalinga. *See* ECF No. 5583, passim; *see also* Section IV, *infra*. For more than a year, as a result of the public health emergency presented by COVID-19, defendants restricted inmate movement, including transfers to inpatient care. In addition, for more than a year, the public health emergency has required additional physical space in which to provide mental health care, both to guarantee adequate quarantine and isolation space as well as to ensure adequate distance between inmate/patients and care providers. These restrictions on access to inpatient beds mirror past shortfalls and have resulted in the same consequence for class members: a sizeable waitlist for access to necessary inpatient care. It is entirely likely, as defendants contend, that steps to comply with public health requirements during the initial stages of the COVID-19 pandemic contributed to delays in access to inpatient care and the growth of the waitlist for inpatient care. That does not, however, make the Special Master's finding erroneous, that the COVID-19

---

[4] Indeed, defendants recently acknowledged their ongoing reliance on unlicensed units to provide inpatient mental health care and their commitment to planning for deactivation of those beds. *See* ECF No. 7133 at 3. The court takes judicial notice of this filing.

4

pandemic was an exacerbation of, rather than a cause of, problems with access to inpatient care reported during this monitoring period. Regardless of whether, or to what extent, emergency management of the COVID-19 pandemic required at least short-term imposition of the restrictions chosen by defendants, the attendant consequence of a re-emergent waitlist must be remedied and the Special Master's observations are integral to that remediation.

B. Access to DSH Inpatient Programs

Defendants also object to the Special Master's inclusion of post-November 2019 data concerning admissions to DSH and to comparison of DSH admission of *Coleman* class members with DSH admission of Offenders with Mental Disorders (OMHDs) during management of the pandemic. While defendants take issue with some aspects of the Special Master's analysis, they have not identified with any specificity findings that are clearly erroneous. This objection is overruled.

C. Discussion of Impacts of COVID-19

Defendants also object to the Special Master's failure to "explain the impacts of COVID-19" on the provision of inpatient mental health care "during the monitoring round and the reporting period," contending such an explanation would "better inform and guide further action." ECF No. 7051 at 5. To the extent this is an objection to the Special Master's general finding that COVID-19 "primarily highlighted" existing issues but did not create them, defendants have presented no evidence that this finding is clearly erroneous.

D. Conclusion

For all of the foregoing reasons, defendants' first objection is overruled.

III. Defendants' Second Objection

Second, defendants object to the Special Master's finding that the CDCR and DSH defendants are failing to maintain a ten percent vacancy rate among psychiatrists, psychologists and clinical social workers. ECF No. 7051 at 5 (citing Inpatient Program Report at 15, 16, and 40). Defendants contend the Special Master "wrongly assumes" that the 10 percent maximum staffing vacancy rate required by the court's June 13, 2002 order, ECF No. 1383, applies to the CDCR PIPs; defendants argue it does not. ECF No. 7051 at 5. Plaintiffs contend defendants

1    have waived this argument by failing to raise it in objections to the Special Master's 2018

2    monitoring report on inpatient care, ECF No. 5894.  ECF No. 7067 at 6-7.  Plaintiffs also observe

3    that defendants have provided no reason why a ten percent vacancy rate cap should not apply to

4    the inpatient programs.  *Id*. at 7-8.

5            In the Report, the Special Master explains he has used the 10 percent vacancy cap

6    established in the June 13, 2002 order as a reporting standard in monitoring the CDCR PIPs since

7    CDCR assumed responsibility for those inpatient programs and that defendants have not until

8    now objected to that approach.  ECF No. 7039 at 15.  The Special Master also states his view that

9    the question of whether the vacancy rate the court established in its June 13, 2002 order applies to

10   DSH "is a legal issue outside of the Special Master's authority to determine."  *Id*. at 16.

11           Defendants' objection is misplaced; it also fails to show that the challenged

12   findings are clearly erroneous.  As the court has explained in another context, "the degree to

13   which defendants have implemented" the remedial requirements in this action "is extremely

14   relevant and useful to assessment of whether they are meeting their constitutional obligations."

15   February 28, 2013 Order, ECF No. 4361, at 9.  Moreover, as this court suggested during the

16   May 14, 2021 hearing on plaintiffs' motion to clarify aspects of the application of the June 13,

17   2002 order, any determination that particular clinical staffing classifications are outside the scope

18   of that order would likely leave a void this court would need to then fill with a further ruling.  *See*

19   Reporter's Transcript of Proceedings (5/14/21 RT), ECF No. 7180, at, *e.g.*, 32.  Were a further

20   order become necessary, the information provided by the Special Master in his monitoring reports

21   would be useful to the court as it considered such a question.

22           Defendants' second objection is overruled.

23   IV.    Defendants' Third Objection

24           Defendants next object to the Special Master's finding that "'the parties have

25   bargained to an impasse'" over the use of therapeutic treatment modules (TTMs) in inpatient

26   programs and that "'[a]ny resolution regarding the use of TTMs in inpatient programs will have

27   to be reached through litigation.'"  ECF No. 7051 at 6 (quoting ECF No. 7039 at 36).

28   /////

6

The parties have now settled their dispute over the use of TTMS in inpatient settings and the court has approved their settlement agreement. ECF Nos. 7392, 7456. This objection is moot.

V.     <u>Defendants' Fourth Objection</u>

Defendants' fourth objection is focused on the Special Master's fifth recommendation concerning defendants' compliance with the least restrictive housing (LRH) policy the defendants implemented beginning in late 2015.[5] ECF No. 7051 at 7-8. In the Report, the Special Master suggests the LRH policy is not being effectively applied and he recommends development of a specific monthly report to be provided by defendants to the Special Master and plaintiffs to focus specific information about class members who are in inpatient care and outside their LRH. *See* ECF No. 7039 at 117-119.

While defendants take issue with the Special Master's assessment of the LRH process and the corresponding recommendation, *see* ECF No. 7051 at 7-8, they do not dispute the general need to assess compliance with the LRH process. *Id*. at 7. They also represent to the court, as they did to the Special Master, that they "will work closely with the Special Master to determine what information" can be provided to track inpatient class members who are not housed at their LRH. *Id.* at 11; ECF No. 7051-1 at 13.

As explained in the court's March 24, 2017 order, defendants developed the LRH policy following a series of hearings held by the court in August 2015 "to address the re-emergence of waitlists for inpatient hospital beds for class members." ECF No. 5583 at 15. The court acknowledges defendants' commitment to this policy and the Special Master's ongoing dedication to working with defendants to ensure the policy's successful implementation and corresponding impact on inpatient waitlists. That said, for five years, defendants have been under a court order to operate their mental health delivery system in full compliance with the established remedial timelines for transfer to inpatient care. *See* April 19, 2017 Order, ECF No. 5610, at 13. The court will not at this time issue further interim orders regarding access to inpatient care. Consistent with their representation to the Special Master and this court, *see* ECF

---

[5] *See* March 24, 2017 Order, ECF No. 5583 at 15 (discussing the LRH policy).

No. 7051 at 11, and the Special Master's authority under the Order of Reference, ECF No. 640, the court expects defendants to cooperate fully with the Special Master in his request for regular reporting to track class members who are not housed at their LRH.

VI. Defendants' Fifth Objection

Defendants' fifth objection is a list of "factual inaccuracies" raised with the Special Master in response to the draft Report. Defendants contend each remains uncorrected in the Inpatient Program Report. The court reviews each objection below.

A. California Institution for Women (CIW) PIP

The Special Master reports that "[a]t the CIW-PIP, patients reported a lack of socks and new underwear after a shower. Patients also reported that after sending clothes to laundry, clothing in incorrect sizes was returned to them." ECF No. 7039 at 111. Defendants object to the Special Master's failure to amend the draft report to describe these reports as unsubstantiated. ECF No. 7051 at 8. In the Report, the Special Master reports what the *Coleman* monitors were told by patients in the CIW-PIP. He takes no position on whether, if at all, those reports were accurate. There is no evidence the Report is clearly erroneous in its description of what the patients reported to the *Coleman* monitors, and no showing that the Special Master had any duty to substantiate the patient reports. In this context, providing defendants with information about what patients are reporting to him is sufficient. This objection is overruled.

The Special Master also reports that

> At CIW-PIP, patients accessed the law library through a computer kiosk available in the housing unit. However, there were several problems with law library access. Staffing limitations hindered patients' ability to navigate the computer kiosk system and legal forms were only made available if a patient filled out a Form 22 request. Further, patients were not aware of a policy providing access to the law library resources only during Third Watch.

ECF No. 7039 at 114. In their response to the draft Report, defendants asserted that "CIW's law library access logs show that patients were provided consistent access to the law library" and they object to the Special Master's failure to amend the Report to "correct statements . . . that were not substantiated by the law library's access logs." ECF No. 7051 at 8, 17. Defendants have not

/////

8

included any law library access logs or any other evidence with their objections and thus have not shown these findings are clearly erroneous. This objection is overruled.

### B. SVSP

The Special Master reports that the "SVSP-PIP reported difficulty with access to loaner crank radios during the review period and at the time of the site visit. No reason was provided for the lack of access." ECF No. 7039 at 199. Defendants object to the Special Master's failure to incorporate into the final report an explanation for the lack of access that CDCR legal counsel provided in a letter appended to defendants' response to the draft Report. ECF No. 7051 at 8. The statement of counsel is not evidence that would necessarily require the Special Master to correct his final Report. Moreover, the letter with the explanation is included in Attachment B to the Report, ECF No. 7039-2 at 15, and CDCR's assertion is therefore part of the record. This objection is overruled.

VII. Defendants' Response to the Special Master's Recommendations

The Special Master recommends the court enter an order with five separate directives. Each is addressed in turn.

### A. First Recommendation

The Special Master's first recommendation is:

> To the extent necessary to remedy any deficiencies identified in the foregoing report, the CDCR and DSH defendants, under the guidance and supervision of the Special Master, and with input from the plaintiffs as appropriate, shall develop plans within 90 days to provide structured therapeutic activities, unstructured out-of-cell activities, treatment planning, and individual treatment, including for maximum custody patients consistent with a psychiatric inpatient level of care, as well as implement a system for tracking and reporting adherence to the standards developed.

ECF No. 7039 at 118. Defendants contend the recommendation "is too vague and not tied to specific, identified issues in the report" and they request that any order "recognize the need for greater clarity." ECF No. 7051 at 9.

While defendants raised this objection with the Special Master in response to his draft report, they also stated in their response that, subject to their requests for clarification, they expected "to develop and submit plans to the Special Master within 90 days" and that

"implementation of a system for tracking and reporting adherence to the standards developed will require additional time. . . ." Thorn Decl., Attach. A, ECF No. 7051-1 at 11-12.  The court accepts the representations defendants made to the Special Master in their November 23, 2020 letter responding to the Draft Report, *id.*, on their face and will bear them in mind in reviewing future monitoring reports and recommendations.  The court declines to issue an order on this recommendation at this time.

### B. Second Recommendation

The second recommendation provides:

> The *Coleman* Special Master shall continue to work with the CDCR defendants, and with input from the plaintiffs as appropriate, to complete staffing plans for their inpatient programs covering all required disciplines.

ECF No. 7039 at 118.  As required by court order, ECF No. 7162, on July 21, 2021, defendants filed the CDCR PIP Staffing Plan for Fiscal year 2021/22.  ECF No. 7245.  The second recommendation is moot.

### C. Third Recommendation

The third recommendation reads as follows:

> Under the guidance and supervision of the Special Master, and with input from the plaintiffs as appropriate, the CDCR and DSH defendants shall continue to refer, transfer and admit *Coleman* class members to appropriate inpatient programs in compliance with the requirements of the Program Guide and consistent with public health best practices in the circumstances of the COVID-19 pandemic.

ECF No. 7039 at 118.  Defendants contend this is redundant of what is required by this court's April 24 and May 7, 2020 orders and is thus unnecessary.

The court's April 24, 2020 order provides in relevant part:

> Program Guide requirements for transfer of class members to DSH inpatient hospital beds are temporarily modified to include COVID-19 screening in accordance with the protocols presented to this court and agreed upon by the parties as cited above.

April 24, 2020 Order, ECF No. 6639, at 11; *see also* May 7, 2020 Order, ECF No. 6660, at 2. The Special Master's recommendation is broader than the modification the court authorized in its

April 24 and May 7, 2020 orders: he recommends defendants continue to meet Program Guide requirements for referral, transfer, and admission to inpatient programs while also following "public health best practices in the circumstances of the COVID-19 pandemic." ECF No. 7039 at 118.

Appendix A to the May 17, 2020 Joint Report Addressing Current COVID-19 Related Departures From Program Guide Requirements includes a list of current departures from Program Guide requirements for transfer to inpatient care due to the COVID-19 pandemic. *See* ECF No. 7176 at 21-24. At the status conference on May 14, 2021, the court directed the parties to forthwith include in these monthly Joint Reports "deactivation schedules for each departure, including anticipated dates for lifting each departure as well as the actual date a departure is lifted." ECF No. 7162. The court issued this order in recognition of the fact that lessons learned from the COVID-19 pandemic[6] may ultimately lead to presentation of some "proposed modifications to the Program Guide." Reporter's Transcript of Proceedings (5/14/21 RT), ECF No. 7180, at 19. This process supersedes the Special Master's third recommendation, which the court therefore declines to adopt.

### D. Fourth Recommendation

The fourth recommendation provides:

> Under the guidance and supervision of the Special Master, and with input from the plaintiffs as appropriate, the CDCR defendants shall develop and file plans with the court within 180 days for providing appropriate treatment space for clinical services and activities (e.g. suicide prevention, IDTTs, structured therapeutic activities, unstructured out-of-cell activities, and individual treatment) in Facilities C5 and C6 at SVSP-PIP or implement alternatives to the use of Facilities C5 and C6 at SVSP-PIP for inpatient care.

ECF No. 7039 at 118. The Special Master has informed the court that defendants are developing this treatment space. This recommendation is therefore moot.

/////

/////

---

[6] These lessons are the subject of a report filed by defendants on June 14, 2021. ECF No. 7196. Plaintiffs filed a response to defendants' report on July 19, 2021. ECF No. 7241.

### E. Fifth Recommendation

As noted in Section IV above, the fifth recommendation would require defendants to develop a specific monthly report to provide to the Special Master and plaintiffs concerning the LRH process. Defendants inform the court they have not had sufficient time to determine whether they will be able to provide all of the information listed by the Special Master but they are committed to working with him to determine what information is available to "assist the Special Master in tracking patients at an inpatient level of care who are not housed in their LRH." ECF No. 7051 at 11.[7] The court is heartened by this commitment. As discussed above, given the continuing orders regarding timely access to inpatient care, the court will not at this time issue additional specific orders concerning steps defendants should take to comply with those orders.

For all of the foregoing reasons, IT IS HEREBY ORDERED that:

1. Defendants' objections, ECF No. 7051, to the Special Master's January 28, 2021 Monitoring Report on the Mental Health Inpatient Care Programs for Inmates of the California Department of Corrections and Rehabilitation are overruled or deemed moot;

2. The findings in the Special Master's January 28, 2021 Monitoring Report on the Mental Health Inpatient Care Programs for Inmates of the California Department of Corrections and Rehabilitation, ECF No. 7039, are adopted in full; and

/////
/////
/////

---

[7] It is not clear whether defendants have followed through on this commitment. Defendants' objections were filed February 8, 2021. On May 17, 2022, as part of his comprehensive twenty-ninth round of monitoring in this action the Special Master filed a monitoring report on inpatient mental health care at the six PIPs operated by CDCR. ECF No. 7555. There, the Special Master reports that "there was a downward trend of patients housed above their LRH designation in the PIPs." ECF No. 7555 at 115. To the extent the Special Master requires additional information or reports from defendants in aid of full utilization of the LRH process, the court expects and anticipates defendants will follow through on the commitments they have made to the court and the Special Master.

12

3. For the reasons explained in this order, the court declines to adopt the Special Master's recommendations for additional court orders.

DATED: August 16, 2022.

CHIEF UNITED STATES DISTRICT JUDGE