UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al., | No. 2:90-cv-0520 KJM DB P |
| Plaintiffs, | ORDER |
| v. | |
| GAVIN NEWSOM, et al., | |
| Defendants. | |

On July 25, 2022, the court issued an order to the parties to show cause within fourteen days why the court should not adopt in full the Special Master's expert's reports on completed inmate suicides in the California Department of Corrections and Rehabilitation (CDCR) for calendar years 2016 through 2020 and why the court should not adopt the Special Master's report on his expert's summary of findings on inmate suicides in CDCR from January 1, 2013 through December 31, 2020 (hereafter "Summary Report").  July 25, 2022 Order, ECF No. 7591.  Both parties have filed timely responses to the court's order.  ECF Nos. 7599 (Defendants) & 7600 (Plaintiffs).

**I. BACKGROUND**

The Special Master's specific responsibilities with respect to suicide reporting began on December 24, 1998.  *See* Order filed July 23, 1999, ECF No. 1054, at 1, 5.  On July 23, 1999, the court issued an order implementing all matters covered by a stipulation filed by the parties on

1

1  December 24, 1998, making the implementation retroactive to the December date.  ECF No.
2  1054.  The order included a provision "that this Court and the special master have the power and
3  duty to report on defendants' suicide prevention program, the incidence of suicide and any related
4  issues concerning suicides in the CDC[R]."  *Id*. at 5.  In accordance with that order, the Special
5  Master has filed reports on completed inmate suicides for every calendar year since 2001, as well
6  as a summary report for calendar years 1999 through 2004.[1]  The Special Master has also filed a
7  number of reports related to suicide prevention.  *See*, *e.g.*, Dec. 3, 2020 Order, ECF No. 6973, at
8  1-2 (listing reports filed by Special Master on his expert's audits of CDCR suicide prevention
9  practices).

10  The reports now pending before the court cover calendar years 2015 through 2020 as well
11  as a summary for calendar years 2013 through 2020.  The report filed January 28, 2021, ECF No.
12  7038, consists of a report by the Special Master on his expert's analysis of a report prepared by
13  CDCR on completed inmate suicides for calendar year 2015 and a report by the Special Master's

---

[1] *See* June 27, 2016 Order, ECF No. 5459 (adopting in full Special Master's Expert's Report on Completed Inmate Suicides for Calendar Year 2014, ECF No. 5428); March 25, 2016 Order, ECF No. 5426 (adopting in full Special Master's Expert's Report on Completed Inmate Suicides for Calendar Year 2014, ECF No. 5396); September 14, 2015 Order, ECF No. 5361 (adopting in full Special Master's Expert's Report on Completed Inmate Suicides for July 1, 2012-December 31, 2012, ECF No. 5325); July 12, 2013 Order, ECF No. 4693 (Order on Special Master's Expert's Report on Completed Inmate Suicides for January 1, 2012-June 30, 2012, ECF No. 4376); March 15, 2013 Order, ECF No. 4394 (Order on Special Master's Expert's Report on Completed Inmate Suicides for Calendar Year 2011, ECF No. 4308); ECF Nos. 4109, 4110 (Special Master's Report on His Expert's Report on Completed Inmate Suicides for Calendar Year 2010 and the Expert's Report); ECF Nos 4008, 4009 (Special Master's Report on His Expert's Report on Completed Inmate Suicides for Calendar Years 2008 and 2009 and the Expert's Report); ECF No. 3677 (Report Completed Inmate Suicides for Calendar Year 2007); ECF No. 3030 (Report on Completed Inmate Suicides for Calendar Year 2006); ECF No. 2566 (Report Completed Inmate Suicides for Calendar Year 2005); ECF No. 2339 (Review of Completed Inmate Suicides in Calendar Years 1999 through 2004); ECF No. 1806 (Report on Completed Inmate Suicides for Calendar Year 2004); ECF No. 1658 (Report on Completed Inmate Suicides for Calendar Year 2003); January 12, 2004 Order, ECF No. 1559 (citing Special Master's Expert's Report on Completed Inmate Suicides for Calendar Year 2002); July 25, 2003 Order, ECF No. 1536 (citing Special Master's Expert's Report on Completed Inmate Suicides for Calendar Year 2001); Dkt. No. 1373 (Report on Completed Inmate Suicides for Calendar Year 2000 appended to Special Master's Ninth Round Monitoring Report); Dkt. No. 1213 (Report on Completed Inmate Suicides from October 1, 1998—December 31, 1999 appended toe Special Master's Sixth Round Monitoring Report).

1  expert on completed inmate suicides for calendar year 2016.  The reports for calendar years 2017

2  through 2020 and the summary report were all prepared by the Special Master's expert.  *See* ECF

3  Nos. 7038  (amended by ECF No. 7404), 7077 (amended by ECF No. 7404) (calendar year 2017),

4  7161 (amended by ECF No. 7440 (calendar year 2018), 7239 (amended by ECF No. 7404)

5  (calendar year 2019), 7405 (calendar year 2020) and 7511 (summary report).  Defendants have

6  filed objections to all of the reports.  *See* ECF Nos. 7052, 7098, 7182, 7249, 7409 and 7522.

7        On July 25, 2022, in addition to issuing the order to show cause, the court issued an order

8  adopting in full CDCR's proposal to assume responsibility for filing annual reports on completed

9  inmate suicides, subject to the provisional approval process outlined in the proposal.  ECF No.

10 7592.  Specifically, CDCR's proposal provides for provisional approval of CDCR's assumption

11 of suicide reporting through completion of the annual suicide report for calendar year 2021,

12 followed by a meet and confer of the parties supervised by the Special Master and submission of

13 a further recommendation from the Special Master as to whether the proposal should become

14 final.  *Id*. at 9-10.

15       The July 25, 2022 order to show cause contemplates that adoption of the annual suicide

16 reports currently pending before the court will create a consistent record of annual suicide reports

17 through calendar year 2020 and allow a clear demarcation point beginning with the filing of

18 CDCR's first report for calendar year 2021.  ECF No. 7591 at 2.  The order also contemplates

19 acceptance of the summary report on the docket as an additional tool for reference by the parties

20 and the court, without resolution of any objections thereto.  *Id*.

21       Plaintiffs agree with the direction suggested by the order to show cause.  *See* ECF No.

22 7600 *passim*.  Defendants do not, instead requesting that the court resolve certain objections to

23 "guide future monitoring and reporting," ECF No. 7599 at 2, and others to "correct the record,"

24 *id*. at 5.

25 **I.     STANDARD OF REVIEW**

26       This court's review of the pending reports is guided by the Order of Reference, ECF No.

27 640, filed contemporaneously with the court's Order Appointing Special Master, ECF No. 639.

28 /////

3

Paragraph C of the Order of Reference provides in relevant part:

> [A]ny compliance report of the special master filed in accordance with paragraph A(5) above shall be adopted as the findings of fact and conclusions of law of the court unless, within ten days after being served with the filing of the report, either side moves to object or modify the report. . . .  The objecting party shall note each particular finding or recommendation to which objection is made, shall provide proposed alternative findings or recommendations, and may request a hearing before the court.  Pursuant to Fed. R. Civ. P. 53(e) (2), the court shall accept the special master's findings of fact unless they are clearly erroneous.

ECF No. 640, at 8.  As required, the Special Master's findings of fact are adopted unless those findings are "clearly erroneous." *Id*.  "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948) (quoted in *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573 (1985)).

## II.   ANALYSIS

Defendants preface their objections with the observation that, while they "anticipate[ ] that the Special Master will be even-handed and consistent in their assessment of CDCR's monitoring and reporting", "[t]he issues raised in these objections are issues that could be raised in the future by the Special Master's team in their criticisms of CDCR's future suicide reports under the court-approved proposal to assume suicide reporting" and that "leaving the objections unresolved will cause future disagreements over established practices in suicide reporting."  ECF No. 7599 at 2-3.  The court declines to make orders to resolve issues that may or may not arise in the future particularly where, as here, the court-approved proposal specifically contemplates a process for vetting and resolution of such disputes should they arise.

The specific objections defendants preserve in response to the July 25, 2022 order to show cause are addressed in turn below.

### A.   Objections Focused On Future Monitoring and Reporting

#### 1.   Deficiencies in Suicide Reporting

Defendants reassert their objection to the expert's 2018 Report on the grounds that the report "included a finding that 76% of the individual suicide case reviews [were] 'deemed

4

adequate by the expert' but the report did not identify which suicide reports were deemed deficient and why." ECF No. 7599 at 3 (citing ECF No. 7182 at 10). Defendants contend the Special Master's response, that the information could be found in Appendix A to the expert's 2018 Report, is too vague. *Id*. (citing ECF No. 7161 at 6). They request an order directing the Special Master to "provide a detailed list of the deficiencies identified by this objection" and assert they "should not be deemed to have waived the right to object to such non-specified deficiencies." *Id*.

The Special Master's response to this objection to the draft report – that the information defendants seek "is discussed in detail in Appendix A of the Report," ECF No. 7161 at 6 – is fully supported by the record. To the extent defendants want a summary or a list of deficiencies and/or inadequacies identified in the expert's 2018 Report, Appendix A contains all the information necessary for them to prepare such a summary or list.[2] Furthermore, nothing in the court's adoption of this or any other report precludes either party from raising proper, focused evidentiary objections at such time that any report or finding might be offered into evidence in specific court proceedings.

This objection is overruled.

**2.      Incongruence between Terminology Used in Reporting vs. Terminology Used by Monitors at Suicide Case Review Conferences**

Defendants reassert an objection they raised in response to the 2019 and 2020 Reports, that the Expert's Report's critique of suicide case reviews is inconsistent with the views of the Special Master's monitors who attend the suicide case review conferences and that those monitors do not have input into the report. Secondly, defendants also object to the term "marginally" as

---

[2] It is entirely reasonable for the Special Master to rely on the detailed format his expert uses to discuss individual case reviews, and to expect defendants to be able to distill necessary remedial information from those reviews. It appears to the court defendants could deploy basic word searching techniques in the course of preparing such a distillation. The court's own cursory word search of Appendix A reveals 99 times where the word "adequate" appears, 13 times where the word "adequacy" appears, 13 times where the word "adequately" appears, 42 times where the word "inadequate" appears, 3 times where the word "inadequacies" appears, 1 time where the word "inadequacy" appears, 31 times where the word "deficiencies" appears, and 17 times where the word "deficits" appears.

5

used to criticize suicide case reviews, and they request the language in suicide case reviews be changed, as appropriate, "to reflect that they are 'adequate,' or alternatively, 'adequate with opportunities for improvement,' which would be consistent with the Special Master's own findings." ECF No. 7599 at 3-4.

Experts on the Special Master's team attend CDCR suicide case review (SCR) conferences. The Special Master's experts are provided draft SCRS in advance of every conference. In response to the 2019 and 2020 Reports, defendants objected that the 2019 and 2020 Expert Reports include critiques of individual SCRs that were not raised by the Special Master's experts at the time of the relevant SCR conferences. *See* Carda Decl., ECF No. 7248-1, at 2 (cited in ECF Nos. 7248 at 8 & 7409 at 13). The fact that the Special Master's Expert's Reports provide additional information concerning the adequacy of particular SCRs beyond that provided at the time of the SCR conferences does not, without more, demonstrate inconsistency on the part of the Special Master's team.

Defendants' assertion that the monitors who attended the SCR conferences do not have input into the Expert's Reports is, as the Special Master explains in his 2020 Report on his Expert's Report, "factually incorrect." ECF No. 7405 at 5 n.6. Defendants identify Drs. Hughes and Metzner as the leaders of the Special Master's team of experts who attend the SCR conferences. ECF No. 7248-1, Carda Decl. at 2. As the Special Master explains, "Drs. Metzner and Hughes, who participate in CDCR's Suicide Case Review meetings, are key contributors to the Special Master's internal suicide report writing workgroup, as has been noted in each of the Special Master's reports filed in the last year. *See* ECF No. 7038 at 2; ECF No. 7077 at 1-2; ECF No. 7161 at 1-2; ECF No. 7239 at 1-2." In light of the Special Master's explanation, the defendants' assertion is completely unsupported.[3]

/////

---

[3] Going forward, the court will consider imposing a certification requirement on all counsel who sign objections to the Special Master's monitoring or other reports. Such a requirement, if imposed, will require all counsel who sign such objections to certify they have read in full the Special Master's responses to all objections and responses raised regarding any draft monitoring report, as well as the final monitoring report filed with the court.

The second part of the objection, regarding the use of the term "marginally adequate" to critique case summaries, borders on the frivolous. The Special Master's Expert's Reports provide a wealth of nuanced information to defendants for their ongoing remedial work. Given the court's approval of CDCR's Proposal to take over the filing of annual suicide reports, defendants will have an opportunity in the coming year to make adjustments to achieve rhetorical congruence if doing so aids the work that remains to be done.

These objections are overruled.

### 3. Conclusions Regarding a History of Trauma

Defendants reassert their objection to the expert's suggestion in the 2020 Report that a positive history for trauma correlates with increased suicide risk. ECF No. 7599 at 4 (citing ECF No. 7409 at 11). Relying on a general quote from a 2019 paper entitled "Prisoner Post Traumatic Stress," which does not purport to be based on a study of California's prisons, defendants contend "trauma is not necessarily an indicator of increased risk for suicide." The quote from the paper states that trauma is "ubiquitous" in male prison populations. Defendants also contend the expert's findings "lack foundation, are irrelevant" and that any probative value is outweighed by the significant danger that the findings will "mislead the court." *Id*. Defendants apparently urge rejection of the expert's recommendation that "CDCR increase staff awareness of the relationship between trauma and suicide risk as a means to reduce suicides." *Id*. Defendants have not presented sufficient evidence to suggest the findings they challenge in the 2020 Report are clearly erroneous.

This objection is overruled.

### 4. Misunderstanding of CDCR's Operations

Defendants re-assert two objections raised in their objections to the Special Master's expert's 2020 Report concerning "the adequacy of CDCR's proof of practice following quality improvement plans (QIP) for training, and the QIP process as it relates to referrals to the Office of Internal Affairs (OIA)." ECF No. 7599 at 4-5 (citing ECF No. 7409 at 18-20). They are concerned about potential issues between defendants and the Special Master going forward regarding CDCR's proof of practice or the process of referring issues to the OIA. This objection

7

illustrates the purpose behind the court's acceptance of the provisional approval process agreed to by the parties and the Special Master. Any potential issues that remain following filing of CDCR's annual suicide report for 2021 can and will be addressed by the parties, the Special Master and, as necessary, the court.

This objection is overruled.

### B. Objections to Correct the Record

#### 1. Incorrect Citations in 2018 Report on Completed Inmate Suicides

Defendants request correction of two typographical errors in footnote 8 of the Special Master's Report on his expert's report on suicides completed in CDCR in calendar year 2018, ECF No. 7161 at 6 n.8. ECF No. 7599 at 9. These objections were included in defendants' objections to the 2018 Report. ECF No. 7182 at 9. Specifically, defendants contend:

- The Special Master's citation to ECF No. 7161-1 at 16 for the following parenthetical "(clarifying discussion of suicide by security level)" should be corrected to cite ECF No. 7161-1 at 15 where that information actually appears;

- The Special Master's citation to ECF No. 7161-1 at 26 for the following parenthetical "(clarifying discussion of deficiencies in mental health treatment and evaluation)" should be corrected to cite ECF No. 7161-1 at 25 where that information actually appears.

*Id*. (cited in ECF No. 7599 at 5-6). The first request is well-taken and the Special Master's Report will be deemed amended accordingly. The second request also is well-taken in substantial part. After review, the court finds the second citation should be corrected to cite to ECF No. 7161-1 at 23-26; the Special Master's Report will be deemed amended accordingly.

#### 2. Incorrect Citations in 2019 Report on Completed Inmate Suicides

Defendants request correction of two typographical errors in the Special Master's expert's report on suicides completed in CDCR in calendar year 2019, ECF No. 7239. ECF No. 7599 at 6. Defendants included these objections in defendants' objections to the 2019 Report. ECF No. 7248 at 9-10. Specifically, defendants contend (1) in a table of suicides presented in the expert's 2019 report, a decimal point in the 1999-2019 average for Mule Creek State Prison "inadvertently shifted to the left" and "should be shifted to the right by one space for the sake of

accuracy" and (2) the table covers the period from 1/1/1999 through 12/31/2019 and therefore reports on averages over 21 years, not 20 years. *Id*. at 9-10 (cited in ECF No. 7599 at 6).  Both requests are well-taken and the expert's 2019 report, ECF No. 7239 at 13-14, will be deemed amended accordingly.

### C.     Redundancy

Defendants next re-assert their general contention that the six pending reports are "redundant because they report on annual suicides that are already reported by CDCR, or merely re-state data that is already in the record." ECF No. 6599.  This objection misses the mark.

As discussed above, the annual reports pending before the court are filed by the Special Master as required by the court's July 23, 1999 order.  At some point, CDCR started publishing on its website its own reports related to completed suicides and suicide prevention efforts.  These reports are identified on CDCR's website under the auspices of California Correctional Health Care Services (CCHCS), as follows:

- 2020 Report on Suicide Prevention and Response within CDCR
- 2017-2019 Aggregate Suicide Report
- 2019 Report on Suicide Prevention and Response within CDCR
- 2018 Report on Suicide Prevention and Response within CDCR
- Annual Report on Suicides in the California Department of Corrections and Rehabilitation January 1, 2016 – December 31, 2016

Annual Report on Suicides in the California Department of Corrections and Rehabilitation January 1, 2015 – December 31, 2015.  *See* https://www.cdcr.ca.gov/reports/ .

The Special Master explains in his report that in 2016 he "began meeting with the then-Secretary of CDCR about ways to reduce the Special Master's monitoring responsibilities." ECF No. 7038 at 3.  As part of those discussions "the Special Master offered to permit CDCR to write the 2015 annual report under his supervision and in coordination with his expert" and, if that effort were successful, to "consider recommending to the court the delegation of his authority to draft the annual suicide report to CDCR going forward." *Id*.  The final version of CDCR's 2015 report is attached as Appendix A to the Special Master's January 28, 2021 report.  ECF No.

7038-1. Appendix B to the January 28, 2021 report is the Special Master's expert's analysis of that report. *Id.* The Special Master ultimately did not recommend ongoing delegation because he determined the delegation had proved unsuccessful in large part due to defendants' ongoing refusal to apply long-established definitions that had been used in this case to guide analysis of completed inmate suicides. ECF No. 7038 at 3-4. Moreover, defendants themselves did not follow through until July of this year to request leave of court to assume responsibility for annual reporting on completed suicides. In addition, the titles of the reports on CDCR's website alone, without more, show those reports are not redundant of the reports provided by the Special Master. Only two are annual reports; one is an "aggregate" report covering three years from 2017 to 2019, and the other three are focused on CDCR's suicide prevention and response.

It was not until this past Spring, under the leadership of the Special Master and CDCR Secretary Kathleen Allison, that discussions resumed to address the disputes that had previously precluded successful delegation of annual suicide reporting from the Special Master to CDCR. Those discussions proved successful and, as noted above, resulted in the Proposal agreed to by the parties and the Special Master and approved by this court. In relevant part, the Proposal resolves key disputes, including whether or not the Special Master's annual suicide reports were necessary in light of annual suicide reports CDCR has published on its website for a number of years. The court's July 25, 2022 order adopting CDCR's Annual Suicide Report Proposal signals that, subject to the provisional approval process incorporated within the approved Proposal, the Special Master's responsibility for annual suicide reporting that began with the July 23, 1999 order will end with the report prepared for calendar year 2020, and CDCR's responsibility for annual suicide reporting will begin with the report for calendar year 2021[4]   Defendants present no authority for the proposition that a court should revisit previously disputed issues that have

/////

---

[4] The content and analysis of the annual suicide reports will continue to cover the same topics and, similar to the practice followed by the Special Master, each year CDCR will circulate the annual suicide report in draft form to the Special Master and plaintiffs for review and comments, and will review any feedback before finalizing the report and filing it with the court. *See* ECF No. 7574 at 13, 15.

been resolved to the satisfaction of all stakeholders and the court, and the court declines to do so here.

With respect to the summary report, as noted in the order to show cause, that report is a tool available to the court and to the parties if and when trend analysis is useful in the remedial process. ECF No. 7591 at 2 (internal citations omitted). The court will accept it as part of the record, with defendants' objections noted.

### III.   CONCLUSION

For the reasons explained in this order, the court will adopt the Special Master's Expert's Analysis of CDCR's annual suicide report for calendar year 2015 and the Special Master's expert's annual suicide reports from calendar year 2016 through calendar year 2020, with amendments as noted. Accordingly, IT IS HEREBY ORDERED that:

1. Footnote 8 of the Special Master's Report on His Expert's Report on Suicides Completed in the California Department of Corrections and Rehabilitation for Calendar Year 2018, ECF No. 7161 at 6, is deemed amended as followed:

   a. The citation to ECF No. 7161-1 at 16 for the following parenthetical "(clarifying discussion of suicide by security level)" is deemed amended to cite to ECF No. 7161-1 at 15; and

   b. The citation to ECF No. 7161-1 at 26 for the following parenthetical "(clarifying discussion of deficiencies in mental health treatment and evaluation)" is deemed amended to cite to ECF No. 7161-1 at 23-26.

2. The Special Master's Expert's Report on Suicides Completed in the California Department of Corrections and Rehabilitation for Calendar Year 2019, ECF No. 7239 at 8-40, is deemed amended as follows:

   a. The average of inmate suicides at Mule Creek State Prison included in the table at page 14 is changed from .095 to 0.95; and

   b. The parenthetical in the last full sentence on page 13 is changed from 20 to 21 years.

2. Except as amended by this order, the Special Master's expert's reports on completed inmate suicides in the California Department of Corrections and Rehabilitation (CDCR) from Calendar Year 2016 through Calendar Year 2020, ECF Nos. 7038 (amended by ECF No. 7404)

1  (Calendar Year 2016), 7077 (amended by ECF No. 7404) (Calendar Year 2017), 7161 (amended
2  by ECF No. 7440 (Calendar Year 2018), 7239 (amended by ECF No. 7404) (Calendar Year
3  2019), 7405 (Calendar Year 2020), are adopted in full.
4      3. The Special Master's Report on his expert's summary of findings on inmate suicides in
5  CDCR from January 1, 2013 through December 31, 2020, ECF No. 7591, is accepted for filing as
6  part of the record, with defendants' objections noted, ECF No. 7522.
7  DATED:  August 27, 2022.

_____
CHIEF UNITED STATES DISTRICT JUDGE