# EXHIBIT B

STATE OF CALIFORNIA —DEPARTMENT OF CORRECTIONS AND REHABILITATION                                                      GAVIN NEWSOM, GOVERNOR

**OFFICE OF LEGAL AFFAIRS**
Jennifer Neill
General Counsel
P.O. Box 942883
Sacramento, CA 94283-0001



September 12, 2022

Paul Mello
Hanson Bridgett
1676 N. California Boulevard, Suite 620
Walnut Creek, CA 94596

Dear Mr. Mello:

Attached please find the California Department of Corrections and Rehabilitation's September 2022 quarterly Status Update for the Three-Judge Court proceeding.

Sincerely,

*Jennifer Neill*

JENNIFER NEILL
General Counsel
Office of Legal Affairs
California Department of Corrections and Rehabilitation

cc: Iram Hasan, Deputy Attorney General

## **September 15, 2022 Quarterly Update to the Three-Judge Court**

On February 10, 2014, the Three-Judge Court ordered CDCR to reduce the in-state adult prison population to 137.5 percent of design capacity by February 28, 2016. (ECF Nos. 2766/5060 & 2767/5061.) Defendants first informed the Court that its population was below 137.5 percent of design capacity on February 17, 2015 (ECF No. 2838/5278), and have submitted 83 reports since then. Defendants have complied with the population cap for over seven years. On March 25, 2022, the Court granted Defendants' unopposed motion to reduce the frequency of these reports from monthly to quarterly. (ECF No. 3795/7515.) As a result, reports will be filed in March, June, September, and December until further order of the Court.

As of September 14, 2022, the State's adult prison population is 91,638, occupying 111.8 percent of design capacity.[1] Below are updates regarding Defendants' population reduction efforts and evidence of durable compliance with the 137.5 percent benchmark.

### A. **Update on Proposition 57 Measures:**

Proposition 57, passed in November 2016, is the State's durable remedy that enacts many Court-ordered reforms, expands credit-earning opportunities, and creates a parole consideration process for nonviolent, determinately-sentenced incarcerated persons who have served the full term of their primary offense in state prison. Information about these regulations can be found at https://www.cdcr.ca.gov/proposition57/. Details regarding measures CDCR implemented can be found in previously-filed monthly status reports. (*See, e.g.*, ECF No. 3769/7423 (Jan. 18, 2022).) Updated statistics showing the impact of these regulations are included below.

1. Increased credit-earning opportunities for all incarcerated persons except the condemned and those serving life without parole sentences:

    4,516 incarcerated persons released between June 1 and August 31, 2022 earned an estimated average of 192.7 days of additional credit towards their advanced release date. This does not include incarcerated persons released from fire camps.

2. Determinately-sentenced nonviolent offender parole process:

    Since July 1, 2017, CDCR has referred 32,968 incarcerated persons to the Board for this parole process. The Board has reviewed 29,320 referrals on the merits as of August 31, 2022, approving 4,544 of these incarcerated persons for release and denying 24,776.

---

[1] On September 7, 2022, the Superior Court of California, County of Lassen, dissolved a preliminary injunction in *City of Susanville v. Cal. Dep't Corr. & Rehabilitation, et al.*, Case No. 63745, which previously prohibited CDCR from proceeding with its scheduled closure of the California Correctional Center in Susanville, CA. The court "authorized [CDCR] to immediately resume its efforts to close the California Correctional Center in Susanville." There are no updates to CDCR's design capacity as of this filing.

2,735 referrals have been closed because the Board's jurisdictional review of the incarcerated persons' criminal history and central file revealed they were not eligible for parole consideration. The remaining referrals are pending review, including those within the 30-day period for written input from incarcerated persons, victims, and prosecutors.

3. <u>Indeterminately-sentenced nonviolent offender parole process:</u>

Since January 2019, when CDCR began screening indeterminately-sentenced, nonviolent offenders for eligibility, CDCR has referred 2,994 incarcerated persons to the Board for a parole consideration hearing. Seventy-six of these referrals were closed because the Board's jurisdictional review of criminal histories and central files revealed those incarcerated persons were not eligible for parole consideration. The Board has conducted 2,260 hearings for indeterminately sentenced nonviolent offenders resulting in 580 grants, 1,462 denials, and 218 stipulations to unsuitability. An additional 2,100 hearings were scheduled, but postponed, waived, continued, or canceled. The remaining referrals are pending parole suitability hearings.

B. **Updates on Other Population Reduction Measures:**

1. <u>Contracting for additional in-state capacity in county jails, community correctional facilities, private prison(s), and reduction of out-of-state beds:</u>

   a. The population of California City Correctional Facility, California's only private prison, is approximately 1,972 incarcerated persons as of September 14, 2022.

   b. The State currently has no contracted-for beds in community correctional facilities (CCFs), modified community correctional facilities (MCCFs), or Female Community Reentry Facilities (FCRFs).

   c. California no longer houses incarcerated persons out of state.[2] The last incarcerated persons in out-of-state contract beds returned to California in June 2019.

2. <u>Expanded medical parole process for medically incapacitated incarcerated persons:</u>

The Board conducts expanded medical parole hearings for incarcerated persons referred to the Board by the head physician at their institutions. The Board's medical parole hearing decision approving an incarcerated person for placement in a skilled nursing facility is forwarded to the California Correctional Health Care Services (CCHCS) and Receiver's Office, which locate a community facility that will accept the person and enforce any restrictions imposed by the Board. If CCHCS is unable to place the incarcerated person within 120 days of the decision, the decision expires and the person remains in CDCR custody. Between July 1, 2014, and August 31, 2022, the Board has held 325 medical parole hearings, resulting in 215 approvals and 110 denials. An additional 82 hearings were scheduled, but postponed, continued, or canceled.

---

[2] This statistic excludes incarcerated persons housed in other states under interstate compact agreements.

3. Parole process for elderly incarcerated persons:

   Under Penal Code section 3055, incarcerated persons aged 50 and above who serve at least 20 years of continuous incarceration qualify for elderly parole consideration. Certain persons sentenced under strike-sentencing laws (Penal Code sections 667(b)-(i) or 1170.12) or convicted of first-degree murder of a peace officer are excluded from the statutory scheme, but are eligible for elderly parole consideration as set forth in the February 10, 2014 order, which covers incarcerated persons aged 60 and above who serve at least 25 years of continuous incarceration. Previous status reports further detail these parole processes. (*See, e.g.*, ECF No. 3769/7423 (Jan. 18, 2022).)

   Since February 11, 2014, the Board has held 7,434 hearings for eligible incarcerated persons, resulting in 2,112 grants, 4,650 denials, and 672 stipulations to unsuitability. The Board scheduled 4,457 additional hearings that were waived, postponed, continued, or canceled.

4. Male community reentry programs:

   The State continues to refer eligible incarcerated persons for possible placement in Male Community Reentry Programs (MCRPs). As of September 7, 2022, 614 incarcerated persons are housed in MRCP facilities the State contracts with in San Diego, Los Angeles, Kern, and Butte counties.

5. Expanded alternative custody program:
   The Custody to Community Treatment Reentry Program (CCTRP), the State's expanded alternative custody program for female incarcerated persons, provides a range of rehabilitative services that assist with substance use recovery, employment, education, housing, family reunification, and social support. As of September 7, 2022, 398 females are participating in the CCTRP, and are housed at facilities in San Diego, Santa Fe Springs, Bakersfield, Stockton, Sacramento, and Los Angeles.

6. Credit-earning regulations effective May 1, 2021 and December 28, 2021:
   CDCR passed new credit-earning regulations effective May 1, 2021, increasing credit-earning rates for incarcerated persons serving sentences for violent crimes and nonviolent crimes with second or third-strike enhancements, among others. A substantially similar version of these regulations was readopted on December 28, 2021, on an emergency basis under Penal Code section 5058.3, further increasing certain credit-earning rates. Previous reports detail credit earning rates. (*See, e.g.*, ECF No. 3769/7423 (Jan. 18, 2022).)

   The December 28, 2021 emergency regulations, approved by the Office of Administrative Law, were in effect for 160 days, during which time CDCR promulgated permanent regulations. The permanent regulations were adopted and enacted in August 2022. The adopted regulations can be found at https://www.cdcr.ca.gov/regulations/wp-content/uploads/sites/171/2022/08/Adopted_Regs-Inmate_Credit_Earning_NCR_22-03.pdf and https://www.cdcr.ca.gov/regulations/wp-content/uploads/sites/171/2022/09/Final_Adopted_Program_Credit_Earning_MCCS-ISUDT.pdf.

7. <u>Incarcerated Persons Released Under Proposition 36</u>
Proposition 36, passed in November 2012, revised the State's three-strikes law to permit resentencing for qualifying incarcerated persons whose third strike was not serious or violent. As of August 31, 2022, approximately 3,419[3] persons have been released under this measure.

---

[3] This number excludes incarcerated persons who were eligible for Proposition 36 resentencing but released in other ways (e.g. Proposition 47 resentencing or nonviolent parole process).