UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al., | No. 2:90-cv-0520 KJM DB P |
| Plaintiffs, | |
| v. | ORDER |
| GAVIN NEWSOM, et al., | |
| Defendants. | |

The court held a focused evidentiary hearing on October 23, 2020, to address class member access to Department of State Hospitals (DSH) inpatient mental health programs. The parties filed final exhibit lists on October 30, 2020. ECF Nos. 6931, 6933. Defendants filed objections to plaintiffs' request to admit evidence after the close of witness testimony. ECF No. 6932. Plaintiffs filed a response to the objections accompanied by two declarations. ECF Nos. 6939, 6943, 6944. On November 8, 2020, defendants moved to strike one of plaintiffs' declarations, ECF No. 6945; plaintiffs opposed the motion, ECF No. 6947. In late 2020, the parties filed several briefs related to issues raised at hearing. *See* ECF Nos. 6948, 6949, 6960, 6975, 6976. On December 11, 2020, plaintiffs moved to strike evidence filed by defendants with their supplemental brief, ECF No. 6982; defendants opposed the motion, ECF No. 6997. As required by the court, ECF No. 7029, on January 28, 2021 defendants filed an update on the status

1

of admissions to DSH programs, ECF No. 7041. Also as required by the court, ECF No. 7107, the parties have filed briefing on whether the court should find the matters raised at the evidentiary hearing moot. ECF Nos. 7117, 7119.

Before the evidentiary hearing, in an order filed May 7, 2020, the court identified three issues for consideration at the hearing:

> (1) as required by the April 24, 2020 order, have DSH and CDCR been complying with the Program Guide requirements, as modified by the temporary addition of COVID-19 screening, for transfer of class members to inpatient hospital beds; (2) if they are not complying with those requirements, in what way or ways are they deviating from those requirements; and (3) what is the rationale for any deviation.

May 7, 2020 Order, ECF No. 6660, at 2. Following the hearing, as noted in the March 26, 2021 order to show cause, ECF No. 7107, during the week of March 8, 2021, the Special Master informed the court (1) there was at that time no wait list for class member access to DSH inpatient beds; (2) DSH was following appropriate quarantine and isolation policies as required by the COVID-19 pandemic, which allowed facilitation of class member transfer to DSH inpatient programs; (3) DSH and the California Department of Corrections and Rehabilitation (CDCR) had recently resumed working collaboratively with the Special Master to review all class members' referrals to inpatient hospital beds; and (4) that collaboration was appropriately informed by public health considerations and had, since its resumption at least until the week of March 8, 2021, resulted in compliance with the requirements of the April 24, 2020 order. March 26, 2021 Order to Show Cause, ECF No. 7107, at 2. Based on this information, the court issued the order directing the parties to show cause in writing why the court should not find moot the matters raised at the October 23, 2020 evidentiary hearing.

In their brief responding to the order to show cause, defendants contend the specific issues identified in the court's May 7, 2020 order are moot, *see* ECF No. 7117 at 4-5, but that another question concerning the scope of defendant Clendenin's authority to act in a public health emergency remains, *id*. at 5-7. Plaintiffs contend the issues are not moot because class members have continued to experience extended delays in access to necessary inpatient care and defendants are over-relying on the COVID-19 exception to the Program Guide transfer timelines, *see* April

2

24, 2020 Order, ECF No. 6639, at 11.  ECF No. 7119 at, *e.g.*, 3.  For the reasons explained below, the court declines to make retrospective factual findings based on the evidence adduced at the October 2020 hearing or to make further remedial orders at this time on the issues raised at that hearing.

      The relief ordered in this action is injunctive relief, which equitable and operates prospectively.  At this stage, as this court has reviewed in numerous prior orders, these proceedings are governed by longstanding court directives ordering that injunctive relief and remedial plans prepared in accordance with those orders.  After more than twenty-five years of remedial effort, the court expects and understands that the need for new forms of relief should be exceedingly rare.  At the same time, it is possible that discreet needs for modification of existing injunctions may arise until this court finds, or all stakeholders agree, that a durable remedy has been fully implemented.  As set out above, the issues presented at the October 2020 hearing related to the efficacy of the April 24, 2020 modification to existing injunctive relief governing transfers of class members to Department of State Hospital (DSH) programs for necessary inpatient care entered after the onset of the COVID-19 pandemic; they also relate to defendants' application of that modification and whether further modifications to the existing relief are required.  *See* ECF No. 6639 at 10.

      Courts retain the authority to modify injunctions based on new or changed circumstances.  *See United States v. Swift & Co.*, 286 U.S. 106, 114 (1932).

> The source of the power to modify is of course the fact that an injunction often requires continuing supervision by the issuing court and always a continuing willingness to apply its powers and processes on behalf of the party who obtained that equitable relief.
>
> Firmness and stability must no doubt be attributed to continuing injunctive relief based on adjudicated facts and law, and neither the plaintiff nor the court should be subjected to the unnecessary burden of re-establishing what has once been decided. Nevertheless the court cannot be required to disregard significant changes in law or facts if it is 'satisfied that what it [h]as been doing has been turned through changing circumstances into an instrument of wrong.' *United States v. Swift & Co., supra*, 286 U.S. at pages 114—115, 52 S.Ct. at page 462. A balance must thus be

/////

3

> struck between the policies of res judicata and the right of the court to apply modified measures to changed circumstances.

*Sys. Fed'n No. 91, Ry. Emp. Dep't, AFL-CIO v. Wright*, 364 U.S. 642, 647–48 (1961).

> An injunction is an exercise of a court's equitable authority, to be ordered only after taking into account all of the circumstances that bear on the need for prospective relief. *See United States v. Swift & Co.,* 286 U.S. 106, 114, 52 S.Ct. 460, 76 L.Ed. 999 (1932). See also *Weinberger v. Romero–Barcelo,* 456 U.S. 305, 312, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982); *Hecht Co. v. Bowles,* 321 U.S. 321, 329, 64 S.Ct. 587, 88 L.Ed. 754 (1944); 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2942, pp. 39–42 (2d ed.1995) (hereinafter Wright & Miller). Equitable relief is not granted as a matter of course, *see Weinberger,* 456 U.S., at 311–312, 102 S.Ct. 1798, and a court should be particularly cautious when contemplating relief that implicates public interests, *see id.,* at 312, 102 S.Ct. 1798 ("In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction"); *Harrisonville v. W.S. Dickey Clay Mfg. Co.,* 289 U.S. 334, 338, 53 S.Ct. 602, 77 L.Ed. 1208 (1933) ("Where an important public interest would be prejudiced, the reasons for denying the injunction may be compelling").

*Salazar v. Buono*, 559 U.S. 700, 714–15 (2010).

Fundamentally, the issues addressed by the October 2020 hearing included the Eighth Amendment right of class members to timely access to inpatient mental health care and the public interest in management of the COVID-19 pandemic in congregate living facilities, here state prisons and hospitals. Management of the COVID-19 pandemic has not followed a straight line given the initial emergency occasioned by its detection and the continual changes in the public health landscape as the COVID-19 virus took hold and then mutated repeatedly. These circumstances only serve to heighten the imperative that this court proceed with caution when considering additional relief. The Special Master's March 2021 report to the court showed that between October 2020, when the hearing was held, and March 2021, defendants had made substantial progress in incorporating COVID-19 protocols into the inpatient care transfer process and implementing a collaborative process for transferring class members to DSH for necessary inpatient care under the circumstances of the pandemic. The report supports the conclusion that findings predating those accomplishments would serve no useful purpose. Plaintiffs' response to the order to show cause also supports the conclusion that relevant facts on the ground continue to

evolve. *See* ECF No. 7119 at, *e.g.*, 2-4. *See also Ahlman v. Barnes*, 2020 WL 3547960, slip op. at 5 (9th Cir. 2020) (recognizing "circumstances surrounding the COVID-19 pandemic are evolving rapidly"). Finally, defendants' monthly reports on transfers to inpatient care show that for at least the past seven reporting months (March 2022 through September 2022), no class members have been waiting beyond Program Guide timelines for transfer to inpatient care at DSH programs, as those timelines were modified by the April 24, 2020 order. *See* ECF Nos. 7628 at 4, 7612 at 4, 7604 at 4, 7590 at 4, 7572 at 4, 7552 at 4, and 7529 at 4.

      Here, the extended nature of defendants' effort to complete remediation in this action and the need for public officials to respond rapidly, nimbly, and flexibly to the demands of the COVID-19 pandemic both counsel restraint. The record shows the remedial framework concerning timely transfers to inpatient care took approximately two decades to develop and implement; it also shows the onset of the COVID-19 pandemic interrupted progress toward full implementation of this part of the remedy. The court's April 24, 2020 order represents a specific and necessary modification to account for the COVID-19 pandemic. The information the Special Master provided to the court in March 2021 indicated the modification had been incorporated into an updated and collaborative transfer process. Since March 2022, defendants' reports on waitlists for access to inpatient care at DSH show only four inmates for whom the COVID-19 exception was invoked when those inmates were referred to inpatient care; all three were transferred when the exception was cleared. *See* ECF Nos. 7628 at 4, 7590 at 5, 7572 at 4. There is no basis in the current record for further modification to the court's orders concerning timely access to inpatient mental health care; concomitantly, this information confirms there is no need for this court to make retrospective factual findings from the October 2020 evidentiary hearing.

      In their response to the order to show cause defendants suggested an ongoing issue with respect to the court's determination in its April 24, 2020 that DSH Director Stephanie Clendenin was required to seek modification of this court's orders before relying exclusively on state law to suspend class members' admission to DSH inpatient programs. As this court has previously noted, the April 24, 2020 order and the subsequent May 7, 2020 order "stand for the basic and unremarkable proposition that any party bound by a court order may not act unilaterally in

5

violation of that order but, instead, must seek relief from the court that issued the order." June 17, 2020 Order, ECF No. 6730, at 6. Nothing in the case on which defendants rely, *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11 (1905), alters that proposition. *Jacobson* determined that the state may, in the exercise of its police power and without running afoul of the United States Constitution, enact reasonable regulations to protect the public health and safety, including by delegating specific public health decision-making to local governing bodies. *Jacobson*, 197 U.S. at 24-31. *Jacobson* did not involve the impact of federal court orders on state actors and does not undermine the basis of the court's April 24, 2020 and May 7, 2020.[1]

In the March 26, 2021 order to show cause, the court also signaled it anticipated resolving outstanding evidentiary disputes from the post-hearing briefing following the October 2020 hearing in order to make the record clear. *See* ECF No. 7107 at 3. After further consideration, the court finds such resolution unnecessary. For the reasons explained in this order, the court makes no retrospective factual findings based on any evidence tendered at the October 2020 hearing, nor does it order any modification to existing injunctions. Defendants' October 30, 2020 objections to plaintiffs' request to admit evidence after hearing, ECF No. 6932, are sustained without prejudice to plaintiffs' right to seek, as appropriate, admission of some or all of that evidence should it become relevant in future proceedings. The dispute over Dr. Pablo Stewart's testimony concerning eleven class members, *see* Reporter's Transcript of Proceedings (RT 10/23/20), ECF No. 6935 at, *e.g.* 271, is mooted by this order.[2] Defendants' November 8, 2020 motion to strike the declaration of Amy Xu will be granted without prejudice to plaintiffs' right to seek, as appropriate, admission of the declaration and any or all of the exhibits appended thereto

---

[1] The court has not imposed sanctions or made any other orders based on its findings concerning Director Clendenin's violation of its orders; the only modification ordered by the April 24, 2020 and May 7, 2020 orders permits defendants to conduct COVID-19 screenings prior to transferring class members to inpatient care. *See* ECF No. 6730 at 6.

[2] The court nevertheless notes with concern the apparent, unexplained contradiction between defense counsel's representation at hearing concerning access to the medical records for those eleven inmate patients, *see* RT 10/23/20, ECF No. 6935 at 270, and Dr. Mehta's subsequent testimony concerning his review of eleven records identified by, presumably, Dr. Stewart, *id*. at 302.

6

should they become relevant in future proceedings.  Similarly, plaintiffs' December 11, 2020 motion to strike five declarations submitted by defendants will be granted without prejudice to defendants' right to seek, as appropriate, admission of any or all of the declarations should they become relevant in future proceedings.

In accordance with the above, the court declines to make any factual findings or additional remedial orders based on the matters considered at the October 23, 2020 evidentiary hearing.

IT IS HEREBY ORDERED that:

1. The evidentiary dispute concerning Dr. Stewart's testimony is mooted by this order;

2. Defendants' objections to plaintiff's request to admit evidence after hearing, ECF No. 6932, are sustained without prejudice to plaintiffs' right to seek, as appropriate, admission of some or all of that evidence should it become relevant in future proceedings;

3. Defendants' motion to strike the declaration of Amy Xu, ECF No. 6945, is GRANTED;

4. The declaration of Amy Xu, ECF No. 6944, is STRICKEN, without prejudice;

5. Plaintiffs' December 11, 2020 motion to strike declarations, ECF No. 6982, is GRANTED; and

6. The five declarations filed at ECF Nos. 6976-1 through 5 are STRICKEN, without prejudice.

DATED:  October 20, 2022.

_____
CHIEF UNITED STATES DISTRICT JUDGE