ROB BONTA, SBN 202668
Attorney General of California
MONICA N. ANDERSON, SBN 182970
DAMON MCCLAIN, SBN 209508
Supervising Deputy Attorney General
ELISE OWENS THORN, SBN 145931
NAMRATA KOTWANI, SBN 308741
Deputy Attorneys General
 1300 I Street, Suite 125
 P.O. Box 944255
 Sacramento, CA 94244-2550
 Telephone: (916) 210-7318
 Fax: (916) 324-5205
 E-mail: Elise.Thorn@doj.ca.gov
*Attorneys for Defendants*

HANSON BRIDGETT LLP
PAUL B. MELLO, SBN 179755
SAMANTHA D. WOLFF, SBN 240280
KAYLEN KADOTANI, SBN 294114
DAVID C. CASARRUBIAS, SBN 321994
CARSON R. NIELLO, SBN 329970
 1676 N. CALIFORNIA BLVD., SUITE 620
 WALNUT CREEK, CALIFORNIA 94596
 TELEPHONE: 925-746-8460
 FACSIMILE: 925-746-8490
*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

# SACRAMENTO DIVISION

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>GAVIN NEWSOM, et al.<br><br>    Defendants. | Case No. 2:90-CV-00520- KJM-DB<br><br>**DECLARATION OF TRAVIS WILLIAMS IN SUPPORT OF DEFENDANTS' OBJECTIONS TO SPECIAL MASTER'S REPORT ON HIS EXPERT'S FIFTH RE-AUDIT AND UPDATE OF SUICIDE PREVENTION PRACTICES IN THE PRISONS OF THE CALIFORNIA DEPARTMENT OF CORRECTIONS**<br><br>Judge:   Hon. Kimberly J. Mueller |

I, Travis Williams, PsyD., declare as follows:

1.   I am a Mental Health Administrator at the California Department of Corrections and Rehabilitation ("CDCR"). I have personal knowledge of the facts set forth herein, except as to those stated on information and belief and, as to those, I am informed and believe them to be true. If called as a witness, I could and would competently testify to the matters stated herein.

2. In my role at as a Mental Health Administrator for CDCR, I regularly work on the Coleman Class Action as part of CDCR's Mental Health leadership team. I am familiar with existing Program Guide policies and I regularly attend the small workgroup meetings held with experts on the Special Master's team.

3. I am also actively involved in CDCR's efforts to develop and maintain a durable suicide prevention program in connection with court-ordered remediation in this matter. Lindsay Hayes, the Special Master's expert in suicide prevention practices, has conducted several audits of the suicide prevention practices in CDCR prisons.

4. I have been involved in extensive measures taken by CDCR to improve its suicide prevention practices to save inmate lives and comply with Mr. Hayes recommendations. To this end, CDCR has completed construction projects, issued memoranda and policy, hired additional leadership staff, and developed mechanisms that continually self-monitor and self-correct when noncompliance by staff occurs.

5. In his October 24, 2022 report, the Special Master found that CDCR successfully implemented three of Mr. Hayes' remaining eighteen recommendations regarding suicide prevention practices—i.e., recommendations 1, 6, and 26. (ECF No. 7636.) The report also found that CDCR had not yet fully implemented fifteen of Mr. Hayes' remaining recommendations concerning suicide prevention, primarily because CDCR did not meet a 90 or 100-percent compliance rate. (ECF No. 7636-1 at 5-8) (referring to recommendations 3, 7, 8, 9, 10, 12, 13, 17, 18, 20, 21, 28, 29, 31, and the remaining part of 32.)

6. Recommendation 10 requires that the quality of completed Suicide Risk Assessment and Self-Harm Evaluation (SRASHE) be audited monthly at a 100-percent compliance standard. (ECF No. 7636-1 at 6.) The Special Master and Mr. Hayes found that Recommendation 10 had not been fully implemented because only one of the facilities was at 100-percent compliance. (*Id.*)

7. To ensure that compliance with Recommendation 10 is as close to 100-percent as is reasonably practicable, CDCR has built two oversight mechanisms into the SRASHE system. First, CDCR analyzes every single urgent referral with any indication of danger to self or

suicidality to determine the clinical reason it was not classified as emergent and what, if any, error occurred during the classification process. In addition, CDCR has developed mechanisms for the Electronic Health Record System (EHRS) to prevent staff from erroneously classifying a referral as urgent, thereby seeking to improve compliance and patient safety. For example, whenever a patient reports danger to self or suicidal ideation, staff are required to classify the mental health referral as emergent. If reports of danger to self or suicidal ideation are present, only a clinical override by a supervisor for a valid reason can reclassify the referral as urgent. These mechanisms account for instances of noncompliance by individual clinicians, which is a reality of any healthcare system.

8. Recommendation 21 requires CDCR to authorize only the two levels of observation which may be provided for suicidal inmates: (1) observation at staggered intervals not exceeding every 15 minutes on Suicide Precaution, and (2) continuous observation for inmates on Suicide Watch. (ECF No. 7636-1 at 7.) The Special Master and Mr. Hayes found that full implementation had not been achieved because none of the audited facilities achieved 100-percent compliance with this measure. (*Id.*)

9. In order to comply with Recommendation 21 as close to 100-percent as is reasonably practicable, CDCR and the California Correctional Health Care System (CCHCS) developed an automated Mental Health Observations Reporting Tool (Reporting Tool) to record compliance with these levels of observation and assist institutional staff. The purpose of the Reporting Tool is to assist institutions with identifying staff who need to improve performance, which also functions as a self-monitor of CDCR's suicide prevention program. The Reporting Tool shows every single observation conducted at 15-minute intervals of suicidal patients housed in the Mental Health Crisis Bed (MHCB) units, and indicates whether the observation was compliant or not. There are hundreds of thousands of observations each month throughout CDCR's institutions, all of which are captured by the Reporting Tool. Given the sheer number of observations that are conducted each month across all institutions, it is predictable that CDCR has not achieved 100-percent compliance. It would also be impracticable for CDCR to sort through and examine every observation in the Reporting Tool given the hundreds of thousands of

observations that the Reporting Tool captures. Moreover, it is unclear whether any healthcare institution would be able to realistically comply with the 100-percent compliance standard in Recommendation 21.

10. For a number of other recommendations, the Special Master and Mr. Hayes found that CDCR was noncompliant based on a limited number of incidents of noncompliance that do not indicate a systemic deficiency. (ECF No. 7636 at 22-28.) For example, Recommendation 7 provides that "[t]he nurse's office should be of sufficient size to conduct adequate intake screening and the door to the office (which should contain a large viewing window) should remain closed during the screening process." (ECF No. 7636-1 at 5.) Mr. Hayes concluded that the California Correctional Institution (CCI), as a whole, was noncompliant based on his observation of one nurse who failed to adequately address all fifteen mental health/suicide risk questions on the Initial Health Screening Form during one encounter. (*Id*. at 12.)

11. In his report, Mr. Hayes states that "a weakness [of the Suicide Case Review process] is the repetitive nature of the deficiencies," including missing mental health documentation/appointments, inadequate development or lack of SRASHEs, and delays in emergency medical response (*Id*. at 55.) But Defendants' adherence to policy and clinical practice is an issue separate and apart from the Suicide Case Review process. The Suicide Case Review process involves analyzing deaths in the event that they occur within a CDCR institution, identifying any problems that are revealed during that review, and implementing corrective action in the form of Quality Improvement Plans. The deficiencies Mr. Hayes uses to criticize the Suicide Review Process only show that some CDCR institutions are not following policy or are failing to adhere to clinical practice, but they are not a reflection of CDCR's comprehensive Suicide Case Review process.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this second day of November, 2022, at Elk Grove, California.

1
2                                                          /s/
3                                            _____
                                             TRAVIS WILLIAMS
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DECLARATION OF TRAVIS WILLIAMS ISO DEFENDANTS' MOTION FOR RECONSIDERATION OF MATERIAL MODIFICATION DETERMINATION

19048307.1