1  ROB BONTA, State Bar No. 202668
   Attorney General of California
2  MONICA N. ANDERSON, State Bar No. 182970
   Senior Assistant Attorney General
3  DAMON MCCLAIN, State Bar No. 209508
   Supervising Deputy Attorney General
4  ELISE OWENS THORN, State Bar No. 145931
   NAMRATA KOTWANI, State Bar No. 308741
5  Deputy Attorneys General
    1300 I Street, Suite 125
6  P.O. Box 944255
   Sacramento, CA 94244-2550
7  Telephone:  (916) 210-7318
   Fax: (916) 324-5205
8  E-mail:  Elise.Thorn@doj.ca.gov
   *Attorneys for Defendants*

   Hanson Bridgett LLP
   Paul B. Mello, SBN 179755
   Samantha D. Wolff, SSBN 240280
   Kaylen Kadotani, SBN 294114
   David C. Casarrubias, SBN 321994
   Carson R. Niello, SBN 329970
   1676 N. California Blvd., Suite 620
   Walnut Creek, California 94596
   Telephone:  925-746-8460
   Facsimile:  925-746-8490
   Attorneys for Defendants

9

10                  IN THE UNITED STATES DISTRICT COURT

11              FOR THE EASTERN DISTRICT OF CALIFORNIA

12                        SACRAMENTO DIVISION

13

| | |
|---|---|
| 14 **RALPH COLEMAN, et al.,** | 2:90-cv-00520 KJM-DB (PC) |
| 15                              Plaintiffs, | **DEFENDANTS' RESPONSE TO** |
| 16    v. | **PLAINTIFFS' OBJECTIONS TO** |
| | **DEFENDANTS' 2021 ANNUAL SUICIDE** |
| 17 | **REPORT (ECF NO. 7621)** |
| 18 **GAVIN NEWSOM, et al.,** | |
| 19                              Defendants. | |

20

21          Plaintiffs filed objections to the California Department of Corrections and Rehabilitation's

22  (CDCR) 2021 Annual Suicide Report on October 11, 2022 (Objections).  (ECF No. 7621.)  In

23  their Objections, Plaintiffs identify what they believe to be deficiencies in the report, complain

24  that CDCR should be more self-critical in the report, and ask the Court "to decline to adopt

25  Defendants' 2021 Report as drafted, and order Defendants to file a revised 2021 suicide report

26  that contains all the content and analysis required by the Suicide Reporting Plan."  (*Id.* at 10.[1])

27  _____

28       [1] References for page numbers to documents filed in the Court's Electronic Case Filing
    system (ECF) are to page numbers assigned by the ECF system.

                                              1

19106178.1

1   On October 21, 2022, under CDCR's Proposal for Assuming the Annual Suicide Monitoring

2   Report, Defendants filed a request for leave to file a response to Plaintiffs' objections to the

3   report.  (ECF No. 7633.)  The Court granted Defendants' request and ordered Defendants to file

4   the response by no later than November 10, 2022.  (ECF No. 7643.)

5       CDCR's Proposal for Assuming the Annual Suicide Monitoring Report (Proposal) clearly

6   sets forth the required parameters of the annual suicide report.  (ECF No. 7574 at 13-15.)  The

7   2021 Annual Suicide Report is the product of negotiations with the Special Master and Plaintiffs,

8   detailed in the Special Master's report on CDCR's Proposal.  (ECF No. 7574 at 5-7.)  Included in

9   the process is the provision of the draft report to Plaintiffs and the Special Master, which was

10  followed by further discussions to address the Special Master's and Plaintiffs' concerns with the

11  draft report.  CDCR addressed and responded to all of the Special Master and Plaintiffs' concerns

12  in the 2021 Annual Suicide Report.  (ECF No. 7615 at 6-13.)  The resulting report is a

13  comprehensive review of the 15 suicides that occurred in 2021.

14      The Court should overrule Plaintiffs' objections and deny their improper request for

15  affirmative relief directing CDCR to file a revised report.  Plaintiffs' Objections ignore the pre-

16  established contours of the report, which are clearly set forth in CDCR's Proposal, which was

17  vetted and negotiated with the Special Master and Plaintiffs.   The 2021 Annual Suicide Report

18  includes a comprehensive discussion of each element required under the Proposal, and

19  accordingly, Plaintiffs' objections are misplaced.

20  I.    THE REPORT PROPERLY ANALYZES THE PROCESS IN PLACE FOR QUALITY
        IMPROVEMENT PLANS COMPLETED FOR EVERY SUICIDE

21

22      A.    CDCR has a Robust Process in Place to Monitor and Analyze the Efficacy
              of Quality Improvement Plans.

23      Contrary to Plaintiffs' assertion, the Report does include an analysis of the efficacy of the

24  Quality Improvement Plan (QIP) process.  As CDCR explained to Plaintiffs, the process

25  implemented in 2022 to assume monitoring and reporting on annual suicides was not completed

26  in time to collect and provide that specific data for the 2021 report.  But the 2021 Report does

27  includes a discussion of the 110 QIPs assigned as part of the suicide reviews, as well as an

28

2

Defs.' Resp.to Pls.' Objections to CDCR's 2021 Annual Suicide Report (2:90-cv-00520 KJM-DB (PC))

19106178.1

1    analysis of the nature of the QIPs, the status of the QIPs, and a comparison with past similar

2    QIPs.  (*Id.* at 90-95.)

3          The first full paragraph on page 90 describes the implementation in June 2021 of a process

4    to determine and track whether "remediation was effective at reducing future incidences of

5    similar non-compliance and/or policy violations."  (*Id.* at 90.)  This process includes "the

6    allocation and hiring of the Suicide Prevention Coordinators in each region," after which time

7    "CDCR was able to begin developing the process of monitoring QIP efficacy."  The Report also

8    explains why the monitoring and reporting of efficacy was not yet developed for the 2021 Annual

9    Report:

10          [G]iven that the Coordinators were not all fully onboard with the
             suicide prevention and response unit until mid-2021, their full
11          oversight capabilities remained limited throughout 2021. As such,
             in 2021, a more robust feedback loop to track the ongoing efficacy
12          of the interventions employed by an institution was in its infancy.
             Moving forward, the Suicide Prevention Coordinators in each of the
13          regions will track all QIPs after they have been completed by the
             institutions in their regions.
14

15    (*Id.*)  The Report includes specific details related to statewide QIPs that were addressed (*Id.*

16    at 91), including training, examples of specific QIPs and how both CDCR headquarters and

17    institutions responded to the QIPs, work needed to address QIPs post-training, and what the

18    regional coordinators did to intervene.  (*Id.* at 91-95.)  All of this more than satisfies the

19    requirement to discuss and analyze efficacy of QIPs.   Clearly, the process is in place and, as

20    CDCR committed in the 2021 Report, further information regarding their findings will be

21    contained in the 2022 Annual Suicide Report when a more robust analysis can be performed

22    based upon the work done throughout calendar year 2022. (*Id.* at 90 – 91.)

23          Given the nascent nature of the report and process, Defendants recognize that some

24    improvements to the report may be appropriate, including for the presentation of data in table

25    form and the narrative portion of future reports related to improvement plan efficacy.  CDCR is

26    prepared to discuss such improvements for future reports.

27    / / /

28    / / /

3

19106178.1

**B.  The 2021 Report Includes a Clear and Comprehensive List of Common Underlying Problems that Led to QIPs.**

Plaintiffs suggest that the 2021 Report is deficient because they do not believe it includes "a comprehensive list of specific, clearly described common deficiencies identified in the 2021 suicides that led to QIPs or identify in how many cases each deficiency was identified." (ECF No. 7621 at 4-5.)  The list of common underlying problems is shown in table form on the 2021 report at Table 18.  (ECF No. 7615 at 92-94.)  Each year, CDCR will review all QIPs and will discuss any common themes across cases and institutions that will help identify potential areas of improvement for patient safety outcomes.   A detailed description in narrative form will be provided if the common problems that are listed in the table are different from prior years.

**C.    The 2021 Report Includes a Clear Summary of QIP Implementation.**

Plaintiffs complain that the 2021 Report fails to include an adequate summary of the implementation status of QIPs and a description of barriers to implementation.  (ECF No. 7621 at 5-6.)  The 2021 Report does include the required summary of QIP implementation in the section titled "commonalities in individual case reviews."  (ECF No. 7615 at 95-96.)   The Report also addresses barriers in the section titled "Determination and Tracking of Quality Improvement Plans," which acknowledges that the Regional Coordinators were added to help address the issue. (*Id.* at 89-90.)

**II.    ANALYSIS OF EMERGENCY RESPONSE PROBLEMS**

Plaintiffs fault Defendants for not including a more robust discussion of emergency response problems and accuse Defendants of refusing "to report to the Court information about this major issue as required by the Suicide Reporting Plan."  (ECF No. 7621 at 6-7.)  They claim that because CDCR did not report on this in the same manner that the Special Master did in some of his past reports, the Court should reject the 2021 Suicide Report.  (*Id.*)

In fact, consistent with CDCR's Proposal, the 2021 Report includes a report on emergency response factors, identifying specifically that three suicides included issues with emergency response.  (ECF No. 7615 at 96.)  As the Special Master and Plaintiffs should know, custody and nursing, several years ago, developed a new emergency medical response policy to address

4

1 | systemic problems with responding to emergencies (not just suicides).  Individual staff training is

2 | provided if there are deficiencies noted.  *See* CDCR's Health Care Department Operations

3 | Manual, Chapter 3, Article 7, Section 1, Emergency Medical Response System (last accessed on

4 | 11/10/22).

5 | **III.    PLAINTIFFS' COMPLAINT THAT THE 2021 REPORT LACKS REQUIRED ANALYSIS OF**

6 | **SUICIDES IS MISGUIDED.**

7 | Plaintiffs assert that the 2021 Suicide Report lacks reporting and analysis of four issues: (1)

8 | inadequate and absent mental health assessments; (2) failure of staff to communicate between

9 | disciplines regarding patients; (3) patients in the Developmental Disability Program (DDP); and

10 | (4) failure to provide required mental healthcare related to the ongoing COVID pandemic.  (ECF

11 | No. 7621 at 7-8.)  These data points are not a required element under the Proposal.

12 | With respect to reporting on mental health assessments, the Report focuses on and analyzes

13 | suicide risk assessments (ECF No. 7615 at 48-49) and those are also addressed in the QIP section

14 | of the 2021 Report as a common issue.  (*Id.* at 54 and 56.)  But the Report also includes a section

15 | on mental health screening upon arrival to CDCR and reports that none of the 2021 suicides

16 | arrived within a year of their death.  (*Id.* at 80.)

17 | While the Special Master's 2020 report does include a section to address miscellaneous

18 | issues as a "failure to communicate," the 2021 report does not include a similar section because it

19 | was not a common theme for 2021.  As noted in the summary section of the report, the Report

20 | includes "robust analyses of contributory factors and deficiencies on pages 30 through 45 and 54

21 | through 58."  (*Id.* at 11, 70-85, and 94 – 98.)

22 | CDCR did not include a separate section identifying patients in DDP who died by suicide.

23 | Although in the past, the Special Master identified DDP patients who died by suicide, this was

24 | not a common theme for 2021 and therefore did not warrant separate discussion in the report.

25 | However, as Plaintiffs know from the individual suicide reports and other reporting in this case,

26 | the data on whether an inmate who dies by suicide is DDP is readily available and CDCR can

27 | include it in future reports.

28 | / / /

19106178.1

1    Finally, Plaintiffs criticize CDCR for not addressing the failure to provide required mental

2    healthcare related to the ongoing COVID pandemic.  (ECF No. 7621 at 8.)  Plaintiffs do not

3    provide evidence or even suggest that any of the 2021 suicides were related to the COVID-19

4    pandemic.  Nonetheless, the Report does include a brief summary of how mental health treatment

5    continued to be provided during the pandemic (ECF No. 7615 at 44), data on decedents who had

6    COVID diagnoses in the medical diagnosis section of the 2021 Report (*Id.* at 69), and data on

7    COVID or fears of COVID as one of the identified potential drivers of suicide (*Id*. at 83.)

8    **IV.    THE 2021 SUICIDE REPORT DEMONSTRATES A COMPREHENSIVE AND CRITICAL**
     **ANALYSIS OF COMPLETED SUICIDES AND CDCR'S ONGOING WORK TO ADDRESS**
9    **ISSUES IT SELF-IDENTIFIES**

10    Plaintiffs dissect the 2021 Suicide Report into discreet topics they believe demonstrate that

11   the 2021 Report is not sufficiently self-critical and not a neutral assessment of the 15 suicides and

12   the state of CDCR's suicide prevention program.  Plaintiffs focus on the analysis of suicides after

13   discharge from inpatient treatment and on the discussion of telemental health in the Report.  But

14   neither of these issues show that the 2021 Report is deficient or that CDCR is unable to fully and

15   transparently report on any suicides that happen on an annual basis.

16    Plaintiffs acknowledge that the 2021 Report does include a discussion of suicides that

17   occurred shortly after discharge from inpatient care.  (ECF No. 7621 at 9.)  But they do not agree

18   that the discussion is sufficiently robust.  This issue was mentioned in the Report, including

19   specifying how many days after discharge the person died by suicide.  (ECF No. 7615 at 81.)

20   Reporting of one patient who died after discharge from an inpatient unit is in the Report under

21   History of Admissions to CDCR Psychiatric Inpatient Programs, which also references the

22   number of individuals who had been discharged within 12 months and discusses the one case that

23   involved a death two days after being discharged from an inpatient program.  (*Id.*)

24    Plaintiffs criticize Defendants for not providing the "trend over years" for suicides that

25   occurred within one year following discharge from an inpatient unit.  To support this requirement,

26   they cite the Court's August 29, 2022 Order approving CDCR's Proposal. But Footnote 4 at

27   page 10 of the Order does not require CDCR's annual suicide reports to be identical to the Special

28

Defs.' Resp.to Pls.' Objections to CDCR's 2021 Annual Suicide Report (2:90-cv-00520 KJM-DB (PC))

19106178.1

1  Master's past reports.  Instead, it expressly states that "[t]he content and analysis of the annual

2  suicide reports will continue to cover the same topics year over year."  (ECF No. 7609 at 10.)

3  The Special Master's 2020 Report includes a brief narrative discussion setting forth the numbers

4  of patients who died by suicide in 2020 who had been admitted to an inpatient setting within the 12

5  months prior to their suicidal acts.  (*Id.*.)  That section also includes a short paragraph that sets forth

6  the rates of suicide post-discharge from an inpatient program for the years 2017, 2018, and 2019.

7  [ECF No. 7405-1 at 27.]  The 2021 Annual Suicide Report complies with the requirement to

8  discuss those who died by suicide in 2020 had been admitted to an inpatient setting within the 12

9  months prior to their suicidal acts.  The 2021 Annual Suicide Report is not deficient because it

10  does not repeat rates of suicide post-discharge from an inpatient program for prior years.

11      Next, Plaintiffs question why information concerning telehealth was included in the Report

12  when Telepsychiatry and telehealth are initiatives aimed at improving staffing and the Report

13  does not include evidence that telehealth reduced the risk of suicide.  (ECF No. 7609 at 10.)  This

14  objection seems inconsistent with Plaintiffs' other requests for more and expanded reporting on

15  various topics.  Given that the Court has previously found a correlation between the adequate

16  CDCR's staffing levels and adequate suicide prevention  (ECF No. 547 at 75; ECF No. 4539 at

17  59.), it is appropriate to include information about increases of staffing levels through telehealth

18  as having a positive impacts on CDCR's suicide prevention program.  It is odd that Plaintiffs

19  would argue that this information should be excluded from the report.

20                                     **CONCLUSION**

21      The 2021 Annual Suicide Report identifies 110 Quality Improvement Plans for the fifteen

22  suicides that occurred in CDCR in 2021.  CDCR has clearly identified and reported on each

23  suicide and the steps needed to address shortcomings that were identified in the process.

24      Plaintiffs have not established any basis for the Court to order CDCR to revise the report.

25  As with all other issues in this case, Defendants continue to work with Plaintiffs to provide them

26  data and information on a daily basis concerning class members.  CDCR will remain committed

27  to that process, including addressing Plaintiffs' concerns, as it continues to monitor and work on

28  its annual report on suicides that occurred in 2022.

19106178.1

1

**CERTIFICATION**

2          In preparing these objections, Defendants counsel reviewed the following Court orders

3    relevant to the issues in this filing, ECF Nos.: 7592, 7609, and 7643.

4    Dated: November 10, 2022                    Respectfully submitted,

5                                               ROB BONTA
                                               Attorney General of California
6                                              DAMON MCCLAIN
                                               Supervising Deputy Attorney General
7

8                                              /s/ *Elise Owens Thorn*

9                                              Elise Owens Thorn
                                               Deputy Attorney General
10                                             *Attorneys for Defendants*

11                                             *HANSON BRIDGETT LLP*

12                                             */s/ Samantha D. Wolff*
                                               *PAUL B. MELLO*
13                                             *SAMANTHA D. WOLFF*
                                               *DAVID C. CASARRUBIAS*
14                                             *Attorneys for Defendants*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defs.' Resp.to Pls.' Objections to CDCR's 2021 Annual Suicide Report (2:90-cv-00520 KJM-DB (PC))

19106178.1