DONALD SPECTER – 083925
STEVEN FAMA – 099641
MARGOT MENDELSON – 268583
PRISON LAW OFFICE
1917 Fifth Street
Berkeley, California 94710-1916
Telephone: (510) 280-2621

CLAUDIA CENTER – 158255
DISABILITY RIGHTS EDUCATION
AND DEFENSE FUND, INC.
Ed Roberts Campus
3075 Adeline Street, Suite 210
Berkeley, California 94703-2578
Telephone: (510) 644-2555

MICHAEL W. BIEN – 096891
ERNEST GALVAN – 196065
LISA ELLS – 243657
THOMAS NOLAN – 169692
JENNY S. YELIN – 273601
MICHAEL S. NUNEZ – 280535
JESSICA WINTER – 294237
AMY XU – 330707
CARA E. TRAPANI – 313411
MARC J. SHINN-KRANTZ – 312968
ALEXANDER GOURSE – 321631
GINGER JACKSON-GLEICH – 324454
BRENDA MUÑOZ – 328813
ARIELLE W. TOLMAN – 342635
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
Telephone: (415) 433-6830

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>GAVIN NEWSOM, et al.,<br><br>    Defendants. | Case No. 2:90-CV-00520-KJM-DB<br><br>**PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTIONS TO SPECIAL MASTER'S REPORT ON HIS EXPERT'S FIFTH RE-AUDIT REPORT AND UPDATE OF SUICIDE PREVENTION PRACTICES IN THE PRISONS OF THE CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION AND BASELINE AUDIT OF SUICIDE PREVENTION PRACTICES IN THE PSYCHIATRIC INPATIENT PROGRAMS (ECF NO. 7654)**<br><br>Judge: Hon. Kimberly J. Mueller |

[4188686.5]

Case No. 2:90-CV-00520-KJM-DB

PLS.' RESPONSE TO DEFS' OBJECTIONS TO SPECIAL MASTER'S REPORT ON EXPERT'S 5TH RE-AUDIT REPORT & UPDATE OF SUICIDE PREVENTION PRACTICES IN CDCR ETC. (ECF NO. 7654)

**INTRODUCTION**

Defendants have been ordered to implement the Special Master's suicide prevention expert Lindsay Hayes' recommendations for nearly eight years. Order (Feb. 3, 2015), ECF No. 5271 at 3.[1] And in 2020, the Court ordered Defendants to achieve full compliance with Mr. Hayes' recommendations no later than his Fifth Re-Audit. Order (Dec. 24, 2020), ECF No. 7004 at 2. Yet despite work over this time, Defendants have failed to fully implement fifteen of Mr. Hayes' court-ordered recommendations. Fifth Re-Audit and Update of Suicide Prevention Practices in the Prisons of the Cal. Dep't of Corrs. And Rehabilitation and Baseline Audit of Suicide Prevention Practices in the Psychiatric Inpatient Programs (Oct. 24, 2022), ECF No. 7636-1 at 5-7 ("Hayes Report"). Meanwhile, in the almost eight years since Mr. Hayes' first report, Defendants reported that nearly two hundred people have committed suicide in CDCR prisons, not even including the suicides that have occurred in 2022. *See* Notice of Submission of the Cal. Dep't of Corrs. And Rehabilitation's 2021 Annual Report to the Legislature on Suicides in CDCR in 2021 and 2021 Annual Suicide Report (Sept. 29, 2022), ECF No. 7615 at 68 (listing number of suicides in CDCR each year from 2015 through 2021).

Rather than focus entirely on finally and fully implementing the long-pending recommendations, Defendants re-assert previously overruled objections to the court-ordered compliance standards, minimize ongoing problems with their suicide prevention practices, and assert misleading complaints about Mr. Hayes' critiques of Defendants' processes. *See* Defs.' Objections to Special Master's Report on His Expert's Fifth Re-audit and Update of Suicide Prevention Practices in the Prisons of the Cal. Dep't of Corrs. and Rehabilitation and Baseline Audit of Suicide Prevention Practices in the Psychiatric Inpatient Programs (Nov. 3, 2022), ECF No. 7654 ("Defendants' Objections"). Defendants should stop relitigating issues that are already settled. The Court should reject Defendants' objections.

---

[1] Page citations to documents in the docket are based on ECF pagination.

## I. The Standards for Compliance with Mr. Hayes' Recommendations Are Settled

The Court should reject Defendants' effort to rehabilitate their previously rejected objections to the court-ordered compliance standards for several of Mr. Hayes' recommendations. Defendants' Objections at 3; ECF No. 6973 at 9. The Court has already ordered Defendants to achieve Mr. Hayes' recommended compliance standards. Order, Dec. 3, 2020, ECF No. 6973 ("Dec. 3, 2020 Order"), at 9. Requiring full compliance with the Court's prior orders is also clearly established law of the case. *Coleman v. Brown*, 756 F. App'x 677, 679 (9th Cir. 2018) (affirming this Court's orders requiring full compliance with Program Guide MHCB transfer timelines and noting that this Court is entitled to rely on its prior final orders as law of the case); *see also Armstrong v. Brown*, 768 F.3d 975, 985-86 (9th Cir. 2014) (upholding broad, more detailed remedial order under PLRA requiring CDCR to track all allegations of non-compliance where CDCR had repeatedly failed to comply with prior, narrower remedial orders). Defendants offer no new persuasive arguments why the Court should reconsider these court-ordered compliance standards.

Defendants complain that the Court has not specified whether meeting the 90% and 100% compliance standards is necessary to achieve constitutional compliance. Defendants' Objections at 4. Defendants are wrong. The Court has clearly stated that fully implementing Mr. Hayes' recommendations will move Defendants closer to compliance with their obligation to provide a constitutionally adequate suicide prevention program, and that Defendants must also remedy any ongoing deficiencies identified through their suicide reporting process to achieve constitutional compliance. Dec. 3, 2020 Order at 9 n.7.

Defendants' reliance on *Rouser v. White*, 825 F.3d 1076 (9th Cir. 2016), is misplaced. Defendants' Objections at 3. *Rouser* is inapposite. That case involved an interpretation of the term "substantial compliance" under California state contract law because the underlying document was a negotiated consent decree. *Id.* at 1082. Federal law governs this action, and Defendants cite no authority demonstrating that the court-ordered compliance standards for Mr. Hayes' recommendations, established after years upon years of Defendants' failure to implement them, run afoul of the Constitution or other

federal law.

Defendants' repeated efforts to evade the compliance standards reflect a fundamental lack of appreciation for why compliance matters. Defendants' complaints suggest that Defendants view the recommendations as little more than trivial procedural hoops that Defendants must jump through to resolve one aspect of this case. In reality, the suicide prevention measures are designed to save lives, but they can only accomplish this goal if they are fully implemented.

### A. The Court Should Overrule Defendants' Objection Regarding Recommendation 10

Defendants object that Mr. Hayes' 100% compliance standard for implementing Recommendation 10—instructing institution SPRFIT committees to audit completed Suicide Risk Evaluations ("SREs") monthly—is unachievable and unrealistic. Defendants' Objections at 5. Achieving 100% compliance with SRE requirements is critically important because SREs are a key tool for identifying suicidal ideation and "failure to complete such an assessment can result in death by suicide within CDCR facilities." Hayes Report at 39. Despite this, Defendants appear to argue that the Court should hold they have implemented Recommendation 10, even though they have not met Mr. Hayes' standards, because they have implemented procedures intended to identify and correct errors. Defendants' Objections at 5. However, the Court's orders require compliance with Mr. Hayes' recommendations, not merely efforts to implement Mr. Hayes' recommendations, regardless of the outcome of those efforts. ECF No. 7004 at 2; ECF No. 6973 at 9. Defendants offer no applicable authority supporting their position that they essentially deserve a "passing grade" for effort.

Furthermore, Defendants' compliance with Recommendation 10 during the Fifth Re-Audit is so poor that their objection to the 100% compliance standard is largely academic. Mr. Hayes found that only 61% of audited institutions (14 of 23) achieved even ninety-percent compliance and that Defendants' compliance with Recommendation 10 actually *decreased* since the Fourth Re-Audit. Hayes Report at 35. Hence, even if the

1  Court had ordered Mr. Hayes to use a lower, 90% compliance standard, he would not have
2  found that Defendants had implemented Recommendation 10.
3      Finally, that Mr. Hayes found that San Quentin State Prison did achieve 100%
4  compliance with Recommendation 10 during the review period demonstrates that the
5  compliance standard is achievable, despite Defendants' claims to the contrary.  Defend-
6  ants' Objections at 5; Hayes Report at 39.  Defendants proffer no evidence other than the
7  conclusory assertion of its counsel to demonstrate that Mr. Hayes' compliance standard for
8  Recommendation 10 is "unachievable."  *Id.*  Defendants have failed to show why the Court
9  should reconsider the standard for Recommendation 10, and they have not demonstrated
10 that Mr. Hayes' findings regarding audits of Suicide Risk Evaluations are wrong or
11 inappropriate.

  **B.  Defendants' Objections to the Court-Ordered Compliance Standard and Mr. Hayes' Finding Regarding Recommendation 21 Fail**

14     The Courts should similarly overrule Defendants' objections as to Recommenda-
15 tion 21, regarding observation statuses for suicidal patients.  As an initial matter, Defend-
16 ants mischaracterize Recommendation 21.  Defendants' Objections at 6.  Recommenda-
17 tion 21 directs CDCR to "*enforce* its Program Guide requirements authorizing only the two
18 levels of observation which may be provided for suicidal [i]nmates."  ECF No. 7004 at 6
19 (emphasis added).  Defendants incorrectly assert that Recommendation 21 directs CDCR
20 merely to "*authorize* only the two levels of observation which may be provided for suicidal
21 inmates."  Defendants' Objections at 6 (emphasis added).
22     This mischaracterization of Recommendation 21 animates Defendants' misguided
23 argument that they have implemented it.  Defendants argue that developing and imple-
24 menting a reporting tool that measures compliance should be enough to find that they have
25 complied with this recommendation.  Defendants' Objections at 6.  Implementing a
26 reporting tool is not the same as ensuring that institution staff monitor suicidal patients
27 only pursuant to the court-ordered practices of suicide watch and suicide precaution.
28     Defendants also argue without support that the court-ordered compliance standard

for Recommendation 21 is not achievable because there are numerous patient observations and staff errors are inevitable. This argument is flawed in several ways. First, the infallibility of humans cannot explain some of the deficiencies that Mr. Hayes identified, such as why six MHCBs (30%) appear to have established practices of placing suicidal patients on thirty-minute observation rounds in violation of the court-ordered Recommendation 21 and the Program Guide. Hayes Report at 25.

Second, as with Recommendation 10, Defendants' compliance with Recommendation 21 is so poor as to render a dispute over the exact compliance standard almost irrelevant. Mr. Hayes found that seventeen out of twenty MHCBs (85%) had problematic practices, including "multiple violations per patient by multiple nursing personnel assigned to the MHCB units," and found that the aforementioned six MHCBs had practices of placing suicidal patients on thirty-minute observation rounds. *Id.* at 21-25.

Third, Defendants claim they cannot achieve the court-ordered compliance standard because people inevitably make errors. Defendants' Objections at 6. That conclusory assertion does not warrant reconsideration of the compliance standard for this important recommendation that is directly tied to preventing patients in crisis from being able to carry out suicidal acts. Even if errors by individuals are unavoidable, Defendants' obligation is to develop systems to timely identify and correct errors to achieve the requisite compliance level. They have not shown why this is not possible. The Court should reject Defendants objection to the compliance standard for Recommendation 21 and to Mr. Hayes' finding that Defendants have not fully implemented Recommendation 21.

### C. The Court Should Reject Defendants' Objections to Mr. Hayes' Findings Regarding Recommendations 7 and 8 and the Compliance Standards for Other Recommendations

Defendants object generally that some of Mr. Hayes' findings are based only on limited evidence of non-compliance. Defendants' Objections at 6. Defendants specifically attack Mr. Hayes' conclusion that Defendants have not implemented Recommendations 7 and 8, which both pertain to the intake screening of incarcerated people completed by nursing staff. *Id.*; Hayes Report at 5. As discussed below, the Court should reject these

1 | objections.

2 |     Defendants argue that Mr. Hayes should not have concluded that they failed to
3 | comply with Recommendation 7 based on his finding that at CCI, a nurse did not cover all
4 | questions on the intake screening questionnaire "during *one* encounter." Defendants'
5 | Objections at 7. This argument is inaccurate, misleading and flawed. First, contrary to
6 | Defendants' assertion, Mr. Hayes' report does not state that only one intake encounter was
7 | observed at CCI—it says that one nurse was observed conducting the intake process for an
8 | unknown number of incarcerated people. Hayes Report at 12, 122. As such, Defendants'
9 | objection lacks factual foundation. Moreover, given the time and resource limitations of
10 | audits, the Special Master's expert's findings are, and long have been, necessarily based on
11 | sample sets of observations and records. Indeed, Mr. Hayes' CCI audit practices are
12 | consistent with his observations at other institutions. Hayes Report at 74, 81 (observing
13 | one nurse conducting intakes at CMF and SAC). There is nothing improper about
14 | Mr. Hayes finding non-compliance at CCI based on his observation that the intake process
15 | he observed was non-compliant—a factual point Defendants do not contest. And the fact
16 | that Mr. Hayes did not observe additional nurses conduct additional intakes does not
17 | render the problems that he did observe "isolated" or "de minimis," as Defendants argue
18 | without authority. Hayes Report at 112; *see* Defendants' Objections at 6. Certainly if
19 | Mr. Hayes had observed one compliant intake, Defendants would not object that that
20 | single case was "isolated" and could not form the basis for a finding of compliance.
21 | Indeed, there is a deep irony to Defendants' objection here given that addressing Defend-
22 | ants' purported concerns with the limitations of CCI's audit would involve longer audits
23 | and possibly additional staff on the Special Master's team–measures to which Defendants
24 | have long objected. *See e.g.*, Defs.' Mem. Of Points and Authorities in Support of Mtn. to
25 | Terminate Under the Prison Litigation Reform Act [18 U.S.C. § 3626(b)] and to Vacate
26 | the Court's Judgment and Orders Under Fed. R. Civ. P. 60(b)(5) (Jan. 7, 2013), ECF No.
27 | 4275-1 at 8, 16 (complaining about the cost and scope of the Special Master's monitoring).
28 |     Finally, Defendants ignore that Mr. Hayes identified deficiencies at three other

[4188686.5]    6    Case No. 2:90-CV-00520-KJM-DB
PLS.' RESPONSE TO DEFS' OBJECTIONS TO SPECIAL MASTER'S REPORT ON EXPERT'S 5TH RE-AUDIT
REPORT & UPDATE OF SUICIDE PREVENTION PRACTICES IN CDCR ETC. (ECF NO. 7654)

institutions, SAC, PBSP, and WSP. *See* Hayes Report at 14. As such, even if Mr. Hayes had found CCI fully compliant, he would still have had ample justification to find that CDCR had failed to fully implement Recommendation 7 overall.

Mr. Hayes also reported that Defendants have not fully implemented Recommendation 8, which directs that intake screens be conducted in the least restrictive setting that ensures both staff safety and confidentiality, based on his findings of safety and confidentiality problems at two institutions: NKSP and WSP. Hayes Report at 5, 6, 13-14, 100-01, 176. Defendants argue without support that complete compliance with Recommendation 8 is not possible. Defendants' Objections at 7. But Mr. Hayes found deficiencies that were not solely the product of unavoidable errors. *Id.* at 13-14, 100-101, 176. Defendants decided to conduct intake screenings in unsafe or non-confidential settings at NKSP and WSP in violation of court-ordered requirements. *Id.* Mr. Hayes' findings of non-compliance with Recommendation 8 at those institutions is the result of choices, not random errors. That other institutions have managed to comply with Recommendation 8 also undercuts Defendants argument.

Finally, by adopting Mr. Hayes' 90% and 100% compliance standards, the Court has already rejected Defendants' general and unsupported objection that non-compliance at a few institutions cannot constitute systemic non-compliance. ECF No. 6973 at 9; Defendants' Objections at 7. As discussed more fully above, Defendants offer no authority or persuasive argument, or any substantive argument at all, why the Court should reconsider this previously resolved matter, so the Court should reject this objection. Defendants' Objections at 7.

## II. Mr. Hayes' Criticisms of the Suicide Case Review Process Are Appropriate

Lastly, Defendants ask the Court to strike or revise Mr. Hayes' criticisms of the suicide case review process, including his findings regarding the repeated deficiencies noted in Defendants' reports about individual suicides. Defendants' Objections at 8. Defendants argue the repetitive deficiencies do not reflect on the case review process or indicate any system-wide deficiency with the suicide prevention program. *Id.* The Court

should reject this objection.

First, Mr. Hayes' statement that the same deficiencies continue to reoccur, year after year, is true, and Defendants do not dispute this fact. *See* Defendants' Objections at 8; Special Master's 2020 Suicide Report (Dec. 21, 2021), ECF No. 7405-1 at 29-30 (listing common deficiencies identified in 2020 suicide case reviews including inadequate treatment planning, inadequate risk determinations, patients being placed at inappropriate levels of care, and inaccurate or inadequate mental health documentation); Special Master's 2019 Suicide Report (Jul. 16, 2021), ECF No. 7239 at 35 (listing common deficiencies identified in 2019 suicide case reviews, including inadequate treatment planning, patients being placed at inappropriate levels of care, inadequate suicide risk determinations, and failures to complete SRASHEs when indicated or required); Special Master's 2018 Suicide Report (May 13, 2021), ECF No. 7161-1 at 27 (listing common deficiencies identified in 2018 suicide case reviews, including inadequate treatment planning, inadequate risk determinations, and inadequate SRASHEs); Special Master's 2017 Suicide Report App'x B4, Mar. 11, 2021), ECF No. 7077-3 at 11 (listing common deficiencies identified in 2017 suicide case reviews, including inadequate risk determinations, patients being placed at inappropriate levels of care, failures to complete suicide risk evaluations, and inadequate or inaccurate mental health documentation).

Second, Defendants' argument is at odds with the position they have taken in asserting that they should be able to assume permanent responsibility for the annual suicide reporting function and that the court-ordered definitions of foreseeability and preventability are no longer necessary or relevant. Special Master's Report and Recommendation Re: Cal. Dep't of Corrs. And Rehabilitation's Proposal for Assuming the annual Suicide Monitoring Report (Jun. 28, 2022), ECF No. 7574 at 13-14. In Defendants' annual suicide reporting proposal, Defendants represented that deficiencies identified in suicide case reviews—used to generate Quality Improvement Plans (QIPs)—are an integral part of the suicide case review process. *See id.* at 13-14. Defendants claimed in that context that QIPs "provide a framework for how well current policies, procedures, and

practices surrounding suicide prevention are serving [CDCR's] patients," and recognized that some deficiencies involve "systemic issues" so examining trends in QIPs and QIP efficacy, which necessarily involves examining *trends* in deficiencies that led to the QIPs, will enable CDCR to "improve systems" relevant to suicide prevention. *Id.* Defendants therefore asserted in the context of the annual suicide reporting that analyzing suicides for foreseeability and preventability—which they criticized as too focused on placing blame on individuals—was no longer necessary, because a comprehensive review of the effectiveness of QIPs would better enable system-wide improvement and prevent more suicides. *Id.*

        Defendants therefore admit that identifying and categorizing trends in systemic failures that enable people to commit suicide in their prisons is an integral part of their suicide prevention program. Their claim that Mr. Hayes' criticism of the fact that their suicide reviewers find the same deficiencies time and again does not reflect any systemic problem is disingenuous at best, and suggests that Defendants may not be ready to assume ongoing responsibility for the annual suicide reports. Defendants cannot have it both ways. Either they accept Mr. Hayes' feedback that if the same problems are re-occurring in suicide after suicide, it indicates that the system is still not functioning as it should, and they accept that they must focus on fixing those system-wide problems. Or they should not complain that the Special Master's court-ordered foreseeability and preventability definitions are flawed because of their purported focus on individual blame over systems failures.

///
///
///
///
///
///
///

# CONCLUSION

Plaintiffs respectfully request that the Court overrule Defendants' objections and adopt the Special Master's Report and attached Fifth Re-Audit Report as submitted.

# CERTIFICATION

The undersigned counsel for Plaintiffs certifies that he reviewed the following relevant court orders: ECF Nos. 5271, 6846, 6973, 7004.

DATED: November 23, 2022

Respectfully submitted,

ROSEN BIEN GALVAN & GRUNFELD LLP

By: /s/ *Michael S. Nunez*
Michael S. Nunez

Attorneys for Plaintiffs

[4188686.5]

10

Case No. 2:90-CV-00520-KJM-DB

PLS.' RESPONSE TO DEFS' OBJECTIONS TO SPECIAL MASTER'S REPORT ON EXPERT'S 5TH RE-AUDIT REPORT & UPDATE OF SUICIDE PREVENTION PRACTICES IN CDCR ETC. (ECF NO. 7654)