UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al., | No. 2:90-cv-0520 KJM DB P |
| Plaintiffs, | ORDER |
| v. | |
| GAVIN NEWSOM, et al., | |
| Defendants. | |

On September 29, 2022, defendants filed The California Department of Corrections and Rehabilitation's [CDCR] Annual Report to the Legislature on Suicides in CDCR and 2021 Annual Suicide Report (2021 Annual Suicide Report).[1]  ECF No. 7615.  Plaintiffs have filed a Response to Defendants' 2021 Annual Suicide Report.  ECF No. 7621.  With leave of court, October 26, 2022 Minute Order, ECF No. 7643, defendants have filed a Response to Plaintiffs' Objections to Defendants' 2021 Annual Suicide Report.  ECF No. 7659.  For the reasons explained below, the court resolves plaintiffs' objections and directs defendants to supplement

/////

/////

---

[1] Although defendants style this report "Annual Report to the Legislature on Suicides in CDCR and 2021 Annual Suicide Report," the court reviews the report only for compliance with the established requirements of this action and not any that may be required by state law.

1

their 2021 Annual Suicide Report.  The court defers final approval of the 2021 Annual Suicide Report pending its review of the supplement required by this order.[2]

**I. BACKGROUND**

On July 25, 2022, the court approved the CDCR's Annual Suicide Report Proposal (Proposal), attached as Appendix A to ECF No. 7574, subject to the provisional approval process outlined in the Proposal.[3]  July 25, 2022 Order, ECF No. 7592 at 2.  The Proposal represents the outcome of discussions between CDCR Secretary Kathleen Allison and the Special Master, agreed to by the parties, by which CDCR "will assume responsibility for drafting and filing the annual suicide report" that, through calendar year 2020, was prepared and filed by the Special Master and his experts.  ECF No. 7574 at 7.

In relevant part, the Proposal contemplates a shift away from the analysis of each individual inmate suicide used in the Special Master's Expert's annual suicide reports, based on whether the suicide was "foreseeable" and/or "preventable" as the definition of those terms has been used in this action for more than two decades.  *See id.* at 2.  The new analysis will focus instead on the efficacy of  CDCR's quality improvement plans (QIP) resulting from those suicides, as they play a key role in suicide prevention and response in CDCR's Mental Health Services Delivery System (MHSDS).

The Program Guide sets out the requirements for suicide death reviews (also called suicide case reviews or SCRs) and preparation of QIPs in connection with those reviews.  *See*

---

[2] This order addresses only the 2021 Annual Suicide Report, plaintiffs' objections, and defendants' response to those objections.  A separate order will be issued on the Special Master's Report on His Expert's Fifth Re-Audit and Update of Suicide Prevention Practices in the Prisons of the California Department of Corrections and Rehabilitation and Baseline Audit of Suicide Prevention Practices in the Psychiatric Inpatient Programs, ECF Nos. 7636, 7636-1, defendants' objections thereto, ECF No. 7654, and plaintiffs' response to defendants' objections, ECF No. 7672.

[3] The provisional approval process is as follows:  "Within thirty (30) days after adoption of the 2021 Annual Suicide Report by the court, the parties, under the guidance of the Special Master, shall meet and confer and the Special Master shall file a brief recommendation with the court as to whether this proposal should become final."  ECF No. 7574 at 15.

2021 Program Guide, ECF No. 7333-1 at 192-95.[4]  A mental health suicide reviewer (MHSR) is assigned to review each inmate suicide "for compliance with the CDCR SPR FIT [Suicide Prevention and Response Focused Improvement Team] policies and procedures" and to "complete a preliminary Suicide Report" containing specific details listed in the Program Guide and a "brief summary and preliminary findings including recommendations for quality improvement." *Id*. at 168, 170, 191-2.  The MHSR "is assisted by both a custody supervisor from the Mental Health Compliance Team (MHCT) and a Nurse Consultant Program Reviewer" ECF No. 6879-1 at 36.  As part of the review,

> [w]hen warranted, the MHSR shall recommend a QIP (also known as corrective action), based on the findings from the review of the case, which shall address and make recommendations to improve identified problems with clinical care and compliance with policy and procedure.  The QIP shall address problems identified, recommended actions, due dates for recommended actions, and supporting documents required from the institution.

*Id*. at 192.  The QIPs include mental health, custody, and nursing issues.  ECF No. 6879-1 at 37.  Preliminary suicide reports and recommended QIPs are reviewed by the Division of Correctional Health Care Services  Suicide Case Review (DCHCS SCR) Subcommittee for review and approval.  *Id*. at 192-93.  Each QIP approved by the DCHCS SPR subcommittee are incorporated into the Suicide Report from which it was generated.  *Id.* at 193-95.  Thereafter, the Program Guide sets out specific requirements for implementation of and follow-up on all approved QIPs.  *Id.* at 193-95

The Special Master has reported that "for years [he], his expert, and his suicide prevention expert have believed CDCR's case review process and the individual suicide case reviews resulting therefrom to be comprehensive" and QIPs included in the case reviews "'thoughtful and targeted . . . for correcting deficiencies and improving suicide prevention practices.'"  ECF No. 7574 at 4.  While the QIPs themselves have proven adequate, the follow-up and tracking of the

---

[4] Citations to page numbers in documents filed in the Court's Electronic Case Filing (ECF) System are to the page number assigned by ECF and located in the upper right hand corner of the page.

recommendations they contain has not. *Id*. at 3 & n.6 (quoting ECF No. 7511 at 52).[5]  If adequately performed, follow-up tracking and analysis of the issues and patterns identified in the QIPs should provide an equivalent standard to the foreseeability and preventability analysis that has to date guided the court's assessment of defendants' compliance with the suicide prevention efforts required by the Eighth Amendment.

The 2021 Annual Suicide Report is defendant's first suicide report filed since the court's approval of their Proposal.

## II.  STANDARD OF REVIEW

This court's review of the pending report is guided by the requirements of the Proposal, ECF No. 7574 at 13-15, and by the law of the case concerning the requirements for adequate remediation of the ongoing constitutional violation in suicide prevention in CDCR's prisons.  The ongoing violation is evidenced principally by (1) the proportion of inmates who commit suicide in CDCR prisons each year compared to the reported national average for state prisons; (2)  an ongoing "pattern of identifiable and describable inadequacies in suicide prevention in the CDCR", *Coleman v. Brown*, 938 F.Supp.2d 955, 979 (2013); and (3) analysis of the reasonable steps available to defendants to remedy those inadequacies and the extent to which defendants have taken those steps.  *See id*. at 973-74 (quoting *Brown v. Plata*, 563 U.S. 493, 131 S. Ct. 1910, 1924-25 & 1925 n.2 (2011)).

## III.  ANALYSIS

To date, the second and third factors cited in section II, *supra*, have been assessed with reference to the foreseeability and preventability analysis in the Special Master's Expert's Annual Suicide Reports.  The Proposal contemplates that going forward the QIP analyses set out in the Proposal will take the place of the foreseeability and preventability analysis.  Plaintiffs' objections to the 2021 Annual Suicide Report all relate to the adequacy of the QIP analyses. Each objection is addressed in turn below.

---

[5] This report, ECF No. 7511, has been accepted on the record while noting defendants' objections, ECF No. 7522.  August 29, 2022 Order, ECF No. 7609, at 12.  Defendants did not object to the finding that the recommendations in the QIPS have not been adequately followed up or tracked.

### A. Key Elements of the Required QIP Analysis

#### 1. Analysis of QIP Efficacy

Plaintiffs' first objection is that the 2021 Annual Suicide Report only includes description of a process that defendants adopted in 2021 for analyzing the efficacy of QIPs, and not an analysis of the efficacy of the QIPs issued in 2021 themselves. ECF No. 7621 at 3-4. Defendants acknowledge that the "monitoring and reporting of efficacy [of annual QIPs] was not yet developed for the 2021 Annual Report and they represent that "further information regarding their findings will be contained in the 2022 Annual Suicide Report when a more robust analysis can be performed based upon the work done throughout calendar year 2022." ECF No. 7659 at 3.

After review, and good cause appearing, the court concludes this objection is not a basis for rejecting or requiring amendment of the 2021 Annual Suicide Report. Instead, the court will extend the provisional approval process for one year. The thirty-day period for the parties to meet and confer and the Special Master to file a brief recommendation regarding whether the Proposal shall become final is continued and will now commence following the court's approval of defendants' 2022 Annual Suicide Report. The parties may, but are not required to, work during the coming year under the supervision of the Special Master in an effort to complete the permanent transition of the annual suicide reporting process to defendants in calendar year 2023. Plaintiffs' first objection is sustained to this extent.

#### 2. Analysis of the Problems Underlying the QIPs

Plaintiffs' second objection is that the analysis of underlying deficiencies in the 2021 Annual Suicide Report is not comparable to the analysis found in the Special Master Expert's annual suicide reports. ECF No. 7621 at 4. Plaintiffs point to the table in Appendix B4 to the Special Master's 2020 Suicide Report, ECF No. 7405-2 at 167, as their basis of comparison with the 2021 Annual Suicide Report, and contend defendants must "clearly and comprehensively identify[ ] the common underlying deficiencies that led to QIPs" in 2021 in order to "identify and fix the policy violations or gaps which contributed to suicides in 2021 – especially across institutions or programs – and discern whether specific suicide prevention measures are in need of improvement." ECF No. 7621 at 5. Defendants contend Table 18 in the Annual Suicide Report

5

adequately addresses the issues raised by this objection, and that future reports will include "[a] detailed description in narrative form" of any new common problems not described in prior years. ECF No. 7659 at 4.

This objection addresses the need for continuity in the Annual Suicide Reports as the responsibility for those reports is transitioned from the Special Master to defendants. Tables 18 and 19 in the 2021 Annual Suicide Report and the surrounding discussion on pages 93 to 95 reflect some important information relevant to that continuity. After review of Tables 18 and 19, as well as Appendix B4 to the Special Master's Expert's Annual Suicide Reports for Calendar Years 2017 through 2020, *see* ECF Nos. 7077-3 at 11, 7161-2 at 171, 7239-1 at 207, 7405-2 at 167, the court concludes the tables in the Special Master's Expert's Appendices B4 are a necessary guide for providing additional detail and specificity of the issues identified in Tables 18 and 19. Good cause appearing, the parties will be directed to meet and confer over a period of thirty days under the supervision of the Special Master to determine whether the issues listed in Tables 18 and 19 of the 2021 Annual Suicide Report can be described with greater specificity when read in conjunction with the issues identified in Appendix B4 of the Special Master's Expert's Annual Suicide Reports for Calendar Years 2017 through 2020. Within forty-five days from the date of this order defendants shall file an amended 2021 Annual Suicide Report that include Tables 18 and 19 as amended to reflect the results of the required meet and confer. Plaintiffs' second objection is sustained to this extent.

### 3. Implementation of QIPs

Plaintiffs object that the 2021 Annual Suicide Report fails to "clearly describe how many of the 2021 QIPs have been fully implemented" and "omits any discussion of what the barriers are to implementation for QIPs that have not yet been fully implemented." ECF No. 7621 at 5. Defendants contend the 2021 Annual Suicide Report does include the required summary of QIP implementation and a discussion of barriers to implementation. ECF No. 7569 at 4.

The Proposal states that narrative text in defendants' annual suicide report will "include discussion about whether the QIPs have been fully implemented, and if not, what the delays and barriers are to full implementation." ECF No. 7574 at 14. As with analysis of the efficacy of

6

QIPs, *see* Section (A)(1), *supra*, the relevant narrative in the 2021 Annual Suicide Report states that the "robust feedback loop" necessary to comprehensive reporting on implementation of QIPs "was in its infancy" during this reporting period. ECF No. 7615 at 90. The court anticipates the required robust process will be fully developed so that defendants' 2022 Annual Suicide Report contains a full discussion of whether QIPs approved during the reporting year have been fully implemented and, if not, what the barriers to such implementation are. The court will not require amendment of the 2021 Annual Suicide Report, though nothing prevents defendants from seeking leave to file an amended report if, during the course of full implementation of their review process, they learn additional information material to implementation of the 2021 QIPs.

### B. Analysis of Emergency Responses

Plaintiffs object that defendants' analysis of emergency responses fails to include key components and analysis of emergency response-related deficiencies discussed in the Special Master's Expert's reports. ECF No. 7621 at 6-7. It is not clear whether defendants contend the discussion in their 2021 Annual Suicide Report is adequate or, instead, whether they contend their emergency medical response policy developed by custody and nursing takes the place of this reporting requirement. *See* ECF No. 7659 at 4-5.

The Proposal provides that "CDCR's reports will continue to track the contents and analysis found in the reports written by the Office of the Special Master" including emergency response factors. ECF No. 7574 at 13. The 2021 Annual Suicide Report has one sentence concerning emergency response factors: "Reviewers had concerns focused on emergency response in 3 of the 15 suicide cases during 2021 to include cut-down tool issues, donning Personal Protective Equipment, and delay to call 911." ECF No. 7615 at 96. The discussions of emergency response factors in the Special Master's Expert's 2020 Annual Suicide Report and his 2019 Annual Suicide Report are more robust. *Compare* ECF No. 7615 at 96 *with* ECF Nos. 7405-1 at 27-28 & 7239 at 33-34. Good cause appearing, defendants will be directed to amend the 2021 Annual Suicide Report to include more explanation and analysis of the emergency response issues referred to on page 96 of that report. This objection is sustained.

      **C.**      **Required Analysis of 2021 Suicides**

Plaintiffs contend defendants have failed to include analysis of four metrics identified in prior annual suicide reports filed by the Special Master, as follows: (1) inadequate and absent mental health assessments; (2) failures in staff communication between disciplines; (3) patients in the Developmental Disability Program; and (4) failures to provide required mental healthcare due to the ongoing COVID-19 pandemic. ECF No. 7621 at 7-8. Plaintiffs contend that if, as defendants' response to their comments to the draft report suggests, these metrics are not present in any of the suicides completed in 2021, the Report should say so. *Id.*

In response, defendants argue (1) the 2021 Annual Suicide Report "focuses on and analyzes suicide risk assessments" and "includes a section on mental health screening upon arrival to CDCR and reports that none of the 2021 suicides arrived within a year of their death"; (2) analysis of failures in communication were not included because they were "not a common theme for 2021"; (3) data on whether an inmate who dies by suicide is part of the Developmental Disability Program (DDP) "is readily available and CDCR can include it in future reports"; and (4) the Annual Suicide Report does include some data relevant to COVID-19 diagnoses in inmates who died by suicide as well as "data on COVID or fears of COVID as one of the identified potential drivers of suicide." ECF No. 7659 at 6.

The court has reviewed the mental health assessment discussion in the 2021 Annual Suicide Report cited by defendants and compared it with the discussions in the 2019 and 2020 Annual Suicide Reports cited by plaintiffs. Plaintiffs' objection challenges the adequacy of defendants' discussion of mental health assessments other than suicide risk evaluations. In prior reports, issues related to adequacy of suicide risk evaluations are discussed in a separate section; the discussion of issues related to the adequacy of mental health assessments covers a different set of assessments, including but not limited to mental health assessments associated with rules violation reports. *See, e.g.*, ECF Nos. 7405-1 at 24-25 & 7329 at 30-31. Defendants' 2021 Annual Suicide Report does not contain a clear statement of whether deficiencies in any of the several mental health assessments required by the Program Guide played a role in any of the 2021

/////

8

inmate suicides. Defendants will be directed to amend the 2021 Annual Suicide Report to provide that clarity.

The court accepts defendants' representation that failures in staff communication were not a common theme in completed inmate suicides in 2021 and will not require further amendment of the report. The court observes it may inure to defendants' benefit to include in Annual Reports going forward discussion, as appropriate, of past common issues that are absent from the current review, without requiring this additional information be included.

The court accepts defendants' representation that the information on DDP inmates who die by suicide will be included in future reports, and that this information is available to plaintiffs from the 2021 individual reports and will not require further amendment of the 2021 Annual Report to reflect that data.

The court will require defendants to include in the amended report required by this order a brief discussion of whether and if so how, any of the 2021 inmate suicides were related to the COVID-19 pandemic.

Plaintiffs' objections are sustained in part and overruled in part.

**D.   Defendants' Commitment to Providing a Neutral, Self-Critical Analysis**

Finally, plaintiffs criticize the 2021 Annual Suicide Report for what they contend is a meagre discussion of 2021 inmate suicides that occurred after discharge from inpatient care and also a meagre discussion of defendants' new Suicide Risk Management Program; they also challenge as insufficient defendants' explanation of why the prior suicide risk management program had to be overhauled, how defendants will monitor the efficacy of the new program, and whether there is any data available showing the new program's impact. ECF No. 7621 at 8. Plaintiffs further contend the section of the 2021 Annual Suicide Report on telehealth is unwarranted and should be removed. *Id*. at 8-9. Defendants respond the relevant discussion in the 2021 Annual Suicide Report is adequate, and the discussion on telehealth in particular is appropriate because prior court orders, including the 1995 foundational order in this case, attributed issues with suicide prevention to understaffing. ECF No. 7659 at 6-7.

/////

1     After review, the court agrees with defendants' assessment of this section.  In particular, the section of the 2021 Annual Suicide Report adequately identifies that one individual died by suicide in 2021 two days after being discharged from an inpatient program, and that defendants' new program to address longstanding concerns about death by suicide following discharge from inpatient programs was finalized in August 2021.  Presumably the efficacy of that program will be discussed and addressed in subsequent Annual Suicide Reports; plaintiffs' objections do not require amendment of the report.

The discussion of the use of telehealth in the 2021 Annual Suicide Report included under the heading "PROGRESS IN IDENTIFYING AND IMPLEMENTING INITIATIVES DESIGNED TO REDUCE RISK FACTORS ASSOCIATED WITH SUICIDE" is, in the main, a factual description of defendants' use of telehealth under a March 2020 emergency authorization.  The court's adoption of this part of the report should not be construed as indicative of any resolution of ongoing disputes between the parties over the use of telehealth.

This objection is overruled without prejudice to its renewal, as appropriate, in response to subsequent annual suicide reports.

**E.    CONCLUSION**

For the reasons explained in this order, the court finds defendants' 2021 Annual Suicide Report to be overall a positive step in the direction of implementing CDCR's Proposal for Assuming the Annual Suicide Monitoring Report.  Some amendments are required as discussed in this order, and the court will continue for one year the provisional approval period for final adoption of CDCR's Proposal for Assuming the Annual Suicide Monitoring Report.  Except as expressly required by this order, plaintiffs' request for revisions to the 2021 Annual Suicide Report will be denied.

In accordance with the above, IT IS HEREBY ORDERED that:

1. The provisional approval process in CDCR's Proposal for Assuming the Annual Suicide Monitoring Report, ECF No. 7574 at 15, is extended for one year.  The thirty day period for the parties to meet and confer and the Special Master to file a brief recommendation as to

/////

whether the Proposal shall become final will commence following the court's approval of defendants' 2022 Annual Suicide Report.

2. Over a period of thirty days from the date of this order the parties shall meet and confer under the supervision of the Special Master to determine whether the issues listed in Tables 18 and 19 of the 2021 Annual Suicide Report can be described with greater specificity when read in conjunction with the issues identified in Appendix B4 of the Special Master's Expert's Annual Suicide Reports for Calendar Years 2017 through 2020.

3. Within forty-five days from the date of this order defendants shall file an amended 2021 Annual Suicide Report that includes Tables 18 and 19 as amended to reflect the results of the meet and confer required by paragraph 3 of this order.

4. Defendants shall include in the amended 2021 Annual Suicide Report to be filed in accordance with this order additional explanation and analysis of the emergency response issues referred to on page 96 of the original report.

5. Defendants shall include in the amended 2021 Annual Suicide Report a clear statement of whether deficiencies in any of the several mental health assessments required by the Program Guide played a role in any of the 2021 inmate suicides.

6. Defendants shall include in the amended report required by this order a brief discussion of whether, and if so how, any of the 2021 inmate suicides were related to the COVID-19 pandemic.

7. Adoption of defendants' 2021 Annual Suicide Report is deferred pending submission of the amended report required by this order.

8. Except as expressly addressed in this order, plaintiffs' objections are overruled and plaintiffs' requests for additional court orders are denied.

DATED: December 14, 2022.

CHIEF UNITED STATES DISTRICT JUDGE