1

2

3

4

5

6

7

8                             UNITED STATES DISTRICT COURT

9                        FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11      RALPH COLEMAN, et al.,                            No. 2:90-cv-0520- KJM-DB

12                       Plaintiffs,                       ORDER

13            v.

14      GAVIN NEWSOM, et al.,

15                       Defendants.

16

17            On October 14, 2022, as part of his comprehensive twenty-ninth round of monitoring in

18      this action the Special Master filed a monitoring report on inpatient mental health care programs

19      at the California Department of State Hospitals (DSH) (29B Report).  ECF No. 7625.  The 29B

20      Report reviews inpatient programs for class members at Atascadero State Hospital (DSH-

21      Atascadero), Coalinga State Hospital (DSH-Coalinga), and Patton State Hospital (DSH-Patton),

22      and is based on review of documentation provided by defendants prior to the monitoring tours as

23      well as two to three day visits at each of the three state hospitals during the period between

24      February and March 2022.  *Id*. at 9, 15 n.5.[1]  The Special Master makes one recommendation:

25      that the court approve defendants' March 11, 2021 DSH Inpatient Staffing Plan.  *Id*. at 80.  On

---

[1] In this order, citations to page numbers in documents filed in the Court's Electronic Case Filing (ECF) System are to the page number assigned by the ECF System and located in the upper right hand corner of the page.

1

1   October 24, 2022,  defendants filed objections to the 29B Report.  ECF No. 7637.  Defendants

2   object to certain findings in the 29B Report, but they do not object to the Special Master's

3   recommendation.  Each objection is addressed in turn below.

4   **I.      LEGAL STANDARD**

5        Paragraph C of the Order of Reference provides in relevant part:

6        [A]ny compliance report of the special master filed in accordance with paragraph
7        A(5) above shall be adopted as the findings of fact and conclusions of law of the
8        court unless, within ten days after being served with the filing of the report, either
9        side moves to object or modify the report. . . .  The objecting party shall note each
10       particular finding or recommendation to which objection is made, shall provide
11       proposed alternative findings or recommendations, and may request a hearing before
12       the court.  Pursuant to Fed. R. Civ. P. 53(e) (2), the court shall accept the special
13       master's findings of fact unless they are clearly erroneous.

14   ECF No. 640 at 8.  As required, the court adopts the Special Master's findings of fact unless those

15   findings are "clearly erroneous." *Id*.  "A finding is 'clearly erroneous' when although there is

16   evidence to support it, the reviewing court on the entire evidence is left with the definite and firm

17   conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364,

18   395 (1948) (quoted in *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573 (1985)).

19   **II.      ANALYSIS**

20       Defendants first object to the description of past issues with access to inpatient care in

21   DSH programs set out in section IA of the 29B Report.  Defendants contend the discussion in this

22   section largely ignores improvements in "access to inpatient care at DSH care over the past five

23   years," relegating those to a footnote, and implies that "inadequate access to inpatient care is a

24   foregone conclusion" of the ongoing unidentified bed needs assessment (UNA).  ECF No. 7637

25   at 2 (citing 29B Report at 15), 3.

26       These contentions are without merit.  Read in its entirety, the history included in this

27   section is accurate and provides the context necessary to support the Special Master's stated shift

28   in focus to sustaining the progress that defendants have made.  *See* ECF No. 7625 at 10.

29   Specifically, the 29B Report does not minimize the progress defendants have made in class

30   member access to inpatient care in DSH programs.  That progress is discussed through the lens of

2

1    history, with a focus on the vital importance of access to DSH programs for *Coleman* class

2    members, and the need to sustain that progress.  *See id*.; *see also, e.g.*, *id*. at 19-20 ("[w]hile

3    inadequate access to DSH programs has been persistent and well-documented in this case, for

4    patients who do receive care in DSH hospitals, the Special Master previously described DSH-

5    Atascadero and DSH-Coalinga as 'constant performers for the *Coleman* class.'  ECF No. 7039

6    at 20.").  Nothing in the 29B Report suggests the outcome of the UNA is a "foregone

7    conclusion."  With reference to the historical context of the current UNA, the Special Master

8    reports, "[w]hile the low levels of referrals to inpatient care could reflect systemic problems

9    identifying and referring patients in need of higher levels of care, . . ., [i]t is premature to reach

10   conclusions regarding the adequacy of access to inpatient care generally and DSH programs

11   specifically' because the court-ordered UNA is ongoing. ECF No. 7555 at 64."  *Id*. at 23; *see also*

12   *id*. at 23 n.11 (UNA will provide all stakeholders with important information "'sufficient to

13   determine whether the 'red flags' identified by the court [in a September 13, 2021 order] are

14   indeed the result of chronic and continuing inadequacies in defendants' referral process . . . [or]. .

15   .that CDCR's referral process is adequate and that there is no unmet need for inpatient care.'").

16       Defendants also contend that a sentence "noting that 'the 2016 Inpatient Care Report

17   emphasized that "(t)he *Coleman* court has repeatedly ordered DSH to utilize the intermediate care

18   beds at DSH-Atascadero to treat *Coleman* class members"'" creates the misimpression that DSH

19   is in violation of *Coleman* requirements for accepting referrals to DSH hospital programs.  ECF

20   No. 7637 at 3 (quoting ECF No. 7625 at 32).  This contention misses the mark.  The challenged

21   statement is factually accurate and is properly read against the backdrop of what under-utilization

22   of DSH hospital beds has meant for class members historically.  The Special Master is clear that

23   the results of the current UNA will be important to understanding whether that historical context

24   has shifted.  And, again, the historical context provided in the 29B Report is essential guidance as

25   defendants move toward full implementation of a durable remedy in this case.

26       Defendants contend the Special Master did not adequately clarify "that almost all delays

27   in transfers [to DSH] occurred during pandemic surges, as a result of patient quarantines."  *Id*.

28   This too is not a fair characterization of the information the Special Master reports.  In particular,

3

the Special Master reports the following facts: of the 113[2] *Coleman* male patients who were transferred to DSH programs, 101 were transferred to DSH-Atascadero and of that group, 88 patients, or 87 percent, were timely transferred within thirty days. *See* ECF No. 7625 at 22, 23, 34, 66, 87, 104. The Special Master also reports that "[d]uring the review period, the COVID-19 pandemic continued to impact access to inpatient care, though waitlists and transfer timelines to DSH hospitals improved compared to the first year of the pandemic." *Id.* at 22. The 29B Report provides a neutral and accurate assessment of the impact of the COVID-19 pandemic on class member access to inpatient care at DSH hospitals.

Finally, defendants request that the court instruct the Special Master "to amend the Report to include the finding that DSH accepted all appropriate referrals during the monitoring period and ensured timely transfers." ECF No. 7637 at 4. The Order of Reference allows either party to "move[ ] to reject or modify" any compliance report filed by the Special Master "within ten days after being served with the filing of the report" and requires that the objecting party "note each particular finding or recommendation to which objection is made" and "provide proposed alternative findings or recommendations." ECF No. 640 at 4. Defendants have provided no evidence with their objections that supports the court's either requiring the Special Master to amend his 29B Report as requested, or to make the finding they request.

For all of these reasons, defendants' first objection is overruled, and their request for instructions to the Special Master is denied.

## III.    DSH'S CLINICAL POSITION ON INDIVIDUAL THERAPY

Defendants object to two sentences in the 29B Report: "DSH-Atascadero did not typically provide individual treatment based on an institutional culture that appeared to view individual treatment as not essential to providing adequate care" and "DSH-Atascadero only regularly provided individual treatment to between five and ten percent of patients, reflecting a hospital culture that did not believe that this treatment was necessary." ECF No. 7637 at 4.

---

[2] By this order the court corrects typographical errors in the 29B Report at pages 34 and 66 to reflect that the total number of male class members transferred to DSH programs was 113 (not 115), as the remainder of relevant findings in the report show that 101 male class members transferred to DSH-Atascadero and 12 transferred to DSH-Coalinga.

1   Defendants contend both that there is no support for these statements in the 29B Report, and that

2   the statements are "not consistent with evidence-based psychiatric treatment or psychological

3   treatment standards." *Id*.  They assert "DSH practitioners utilize individual treatment when

4   clinically indicated" and "group therapy only when clinicians believe treatment objectives will be

5   met through group therapy." *Id*. at 4.  Defendants also contend "[u]tilizing group therapy over

6   individual therapy after the application of sound clinical judgment is not a violation of [the]

7   Eighth Amendment or evidence of inadequate care," and they request that the court's order on the

8   29B Report "include the fact that there is no recognized standard that requires the use of

9   individual therapy as essential to providing adequate inpatient care in the DSH programs." *Id*.

10          Defendants present no evidence to support the assertions in their objections.  The court

11  notes the Special Master states that, in their response to his draft 29B Report, defendants noted

12  "DSH's utilization of the group therapy model was required by the remediation agreed to during

13  litigation brought by the U.S. Department of Justice under the Civil Rights of Institutionalized

14  Persons Act (CRIPA).'"  ECF No. 7625 at 17 & 40 n.28.  Defendants have not included with their

15  objections any evidence of the requirements resulting from the CRIPA litigation.  In the absence

16  of evidence to the contrary, the court cannot conclude the challenged findings are clearly

17  erroneous.

18          For this reason, the court overrules this objection and will adopt this part of the

19  29B Report in full.

20  **IV.     FINDINGS AS TO TWO INDIVIDUAL PATIENTS**

21          **A.     Patient A (DSH-Coalinga)**

22          Defendants object to the Special Master's findings that Patient A's treatment "was found

23  to be inadequate because a psychologist's initial assessment recommended biweekly individual

24  therapy that was not provided" and due to "the 'failure to modify the patient's treatment plan in

25  response to ineffectiveness and the lack of group treatment provided.'"  ECF No. 7637 at 4-5.

26  Defendants contend they objected to the draft 29B Report with evidence comprising DSH records

27  "show[ing] that DSH provided [Patient A] more than adequate treatment. . . ."  *Id*. at 5.

28  /////

5

The 29B Report contains the following summary of findings concerning Patient A:

Patient A did not receive adequate care at DSH-Coalinga. While the treatment team developed appropriate treatment plans, the team did not modify treatment responsive to evidence of ineffectiveness "and the patient's worsening presentation during admission." Additionally, recommended biweekly individual therapy sessions were not offered.

ECF No. 7625 at 43-44. The complete findings, set out in Appendix C2, are as follows:

Findings

The intermediate care provided to this patient was inadequate. Although treatment plans were well written, they required modification in response to evidence of ineffectiveness and the patient's worsening presentation during admission. Additionally, the psychologist's initial assessment resulted in recommendations for biweekly individual therapy to address trauma related symptoms; however, the provider never followed through with offering individual therapy sessions despite documenting ongoing trauma related distress throughout the current admission. Even when treatment groups were limited or suspended during COVID-19 related programming modifications, the individual therapy sessions were not offered to this patient.

Id. at 164. Defendants objected to this finding in the draft 29B Report, as follows:

Patient A's treatment was found to be inadequate because a psychologists' initial assessment recommended biweekly individual therapy which was not provided. (p. 147.) DSH's records refute this assertion and show DSH provided more than adequate treatment. Accordingly, this finding is not warranted and should be revised.

Patient A, received meaningful and robust treatment, including individual therapy, extensive group therapy, and specialized treatment such as EMDR. This treatment was provided over 337 days, exceeding the average length of stay, and the patient is set to discharge in September 2022. Often, the clinician's initial assessment is a snapshot in time, subject to change based on subsequent assessments and further interactions where the treatment team continues to evaluate and learn about the patient. It is not unusual for treatment modalities to change from the original clinical thought at admission, up to the development of the master treatment plan (30 days) and even later, if so dictated by circumstances.

Progress notes show that Patient A's psychologist provided individual therapy on the following dates: 2/23/22; 2/25/22; 3/16/22; 3/25/22; 3/29/22; 5/10/22; 5/13/22; 5/24/22; and 5/31/22. Patient A demonstrated outstanding attendance of 100% at various treatment groups such as DBT Skills through Art Therapy; DBT: Emotional, Regulation/Distress Tolerance Skills; DBT: Mindfulness Based Skills; Grief and Loss; Managing Anger; Managing Mental Illness; Wrap made easy; Trauma Group; Medication Education; and Leisure Games for Social Skills. The treatment team provided specialized treatment to Patient A, including EMDR from November 8-

December 7, 2021, and ongoing weekly biofeedback therapy since March 3, 2022. Individual therapy augmented EMDR by imparting CBT/DBT interventions to address negative self-image/self-hatred, guilt, nightmares, cognitive distortions, and catastrophizing. Although loss of EMDR therapy affected Patient A's progress, CBT/DBT interventions are ongoing. As part of discharge planning, the patient's psychologist performs weekly check-ins.

DSH's internal Plan of Action also articulates that changes in treatment plans should be well-documented. Accordingly, the Supervising Psychologist has already followed up with the psychologists assigned to Unit 21 and has reinforced the expectation that a change in treatment plan should be appropriately recorded.

ECF No. 7625-1 at 12-13.

The Special Master responded to defendants' objection in full as follows:

Regarding DSH-Coalinga Patient A, DSH stated: "Patient A's treatment was found to be inadequate because a psychologist's initial assessment recommended biweekly individual therapy which was not provided." Exhibit B at 5. Contrary to DSH's assertion, the Special Master's expert did not determine the care provided to this patient to be inadequate *solely* on the lack of individual treatment provided during the review. The lack of individual treatment was one of several inadequacies identified in this case review. The findings of inadequacy reflected the Special Master's expert's findings after a thorough review of the patient's health record, which also evidenced failure to modify the patient's treatment plan in response to ineffectiveness and the lack of group treatment provided. *See* Appendix C2 at 156. Accordingly, the Special Master declined to modify the findings from the case review.

ECF No. 7625 at 17.

Defendants have not shown the Special Master's challenged findings are "clearly erroneous." First, as the Special Master explains, *see* ECF No. 7625 at 17, the findings concerning Patient A in the 29B Report were not based solely on the lack of the recommended biweekly individual therapy; other inadequacies included the failure to modify Patient A's treatment plan in light of evidence that the plan had been ineffective and "the patient's worsening presentation during admission." *Id*. at 164. Second, the findings in the 29B Report are based on a monitoring visit that took place on February 20, 2022 and review of documents provided through that date. *See id*. at 15 n.9 & 164. With one exception, defendants' objections all cite to treatment that post-dated the monitor's visit and record review. Assuming without deciding that

1    defendants' objections contain an accurate summary of Patient A's medical records,[3] those

2    records are not sufficient to demonstrate the Special Master's findings concerning the adequacy

3    of inpatient provided to Patient A at DSH—Coalinga through February 20, 2022[4] are clearly

4    erroneous, and there is no basis in the record to support the court's determining the adequacy of

5    treatment provided to Patient A during the entirety of his hospitalization at DSH-Coalinga.

6           This objection is overruled.

7           **B.     Patient E (DSH-Patton)**

8           Defendants object to the Special Master's finding that the treatment Patient E received at

9    DSH-Patton was inadequate, contending "[t]he conclusion of inadequate care is not warranted

10   due to the patient's fluctuating suicide risk, nor does the medical record evince a paucity of

11   evidence-based interventions."  ECF No. 7637 at 5.  The Special Master declined to change the

12   findings in the draft 29B Report because his "expert's finding of inadequacy was not based solely

13   on the presence of fluctuating suicide risk documented in the patient's record, but also the lack of

14   'evidence-based interventions such as Dialectical Behavioral Therapy or a behavioral plan to

15   reduce engaging in self-harm and dealing with frequent suicidal ideation.'"  ECF No. 7625 at 17-

16   18.

17          Defendants have not presented the court with any evidence in support of this objection,

18   and, particularly, no evidence suggesting the Special Master's findings regarding Patient E are

19   clearly erroneous.  The court overrules this objection.

20   **V.    DATA ON CERTAIN GROUP THERAPY METRICS**

21          The 29B Report includes a finding that class members "attended a weekly average of 5.38

22   hours of core groups at DSH-Atascadero."  ECF No. 7637 at 5 (citing 29B Report at 16).

23   Defendants object to the Special Master's failure to include the treatment hours offered and

24   scheduled in the 29B Report; they contend "average scheduled group treatment hours were 9.28

25   hours and the average hours offered were 8.16 hours.  *Id*. at 5-6.

---

[3] It does not appear defendants provided the cited progress notes to the Special Master, *see* Exhibit B, ECF No. 7625-1 at 8-13, and they are not included with defendants' objections.

[4] The summary of findings on Patient A does appear to include a reference to the individual therapy session that occurred on February 23, 2022.  *See* ECF No. 7625 at 163.

1     In response to this request, the Special Master describes "an anomaly in the data DSH

2  provided in advance of the monitoring tour," which suggested that "*Coleman* patients on average

3  attended significantly more hours of 'core groups' per week (12 hours per patient per week) than

4  were offered (7.1 hours per patient per week.)."  ECF No. 7625 at 16.  He reports that "[c]ore

5  groups offered to patients averaged 7.1 weekly hours with a range of 1.91 to 8.97 hours for all

6  *Coleman* patients." *Id*. at 95; *see also id*. at 86.  He also reports "[t]he hours of supplemental

7  group offered per *Coleman* patient per week was five hours with a range of 3.07 to 7.44 hours for

8  all *Coleman* patients."  *Id*. at 86.  Defendants have not demonstrated these findings are clearly

9  erroneous, nor have they provided evidence that would support substituting or adding the findings

10  they request.

11     This objection is overruled.

12  **VI.   ADDITIONAL INFORMATION ON STAFFING**

13     The 29B Report reflects a functional vacancy rate of 11 percent among psychiatrists at

14  DSH-Atascadero, including contractors.  ECF No. 7625 at 85.  Defendants object that this rate

15  should be reported as 10 percent.  ECF No. 7625-1 at 9.  The Special Master declined to make the

16  change defendants requested because "in documents provided to the monitor in advance of the

17  monitoring tour, DSH-Atascadero reported an 11 percent functional vacancy rate for psychiatry,

18  including contractors." ECF No. 7625 at 15.  Defendants have not presented any evidence in

19  support of their objection and thus there is no basis for a finding by this court that the Special

20  Master's finding is clearly erroneous.

21     This objection is overruled.

22  **VII.   CONCLUSION**

23     For the foregoing reasons, the Special Master's 29B Monitoring Report and its

24  recommendation will be adopted in full.

25     In accordance with the above, IT IS HEREBY ORDERED that:

26     1.  The Special Master's October 24, 2022 29th Round Monitoring Report Part B, ECF

27  No. 7625, is ADOPTED in full;

28  /////

1        2.  The recommendation in the Special Master's 29th Round Monitoring Report, Part B,

2  ECF No. 7625, is ADOPTED in full; and

3        3.  Defendant Department of State Hospital's Inpatient Staffing Plan filed March 11,

4  2021, ECF No. 7078-1, is APPROVED.

5  DATED:  December 19, 2022.

6

                              CHIEF UNITED STATES DISTRICT JUDGE