IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

**RALPH COLEMAN, et al.,**
  **Plaintiffs**

  v.                                         No. CIV S-90-0520 KJM DB P

**GAVIN NEWSOM, et al.,**
  **Defendants**

**SPECIAL MASTER'S REQUEST FOR AN EXTENSION OF TIME TO REPORT TO THE COURT ON THE FUNCTIONALITY AND EFFICACY OF THE PROVISIONALLY APPROVED LIST OF INDICATORS**

In a status conference held on March 25, 2021, the Special Master was directed by the Court to identify continuous quality improvement key indicators and to present his recommendations as to what they should be in a report filed with the Court by April 29, 2021.[1] The Special Master subsequently filed his report on May 6, 2021. ECF No. 7151.[2]

In his report, the Special Master identified a total of 149 key indicators including four "Additional Key Indicators" (placeholders) representing topics for which indicators had not yet been developed. *Id* at 21-26.

The Court adopted the Special Master's report and provisionally approved the list of key indicators. ECF No. 7216 at 14.[3] In its order, the Court directed the Special Master to "test and

---

[1] On April 29, 2021, the Court issued a minute order granting the Special Master's request for an extension of time and ordered the report to be filed on May 6, 2021. ECF 7143.

[2] References to page numbers for documents filed in the court's Electronic Case Filings (ECF) system are to page numbers assigned by the ECF system.

[3] The list was provisionally approved in its entirety with the exception of Indicator 8 on the list of key indicators for Access to Care which the Court determined was duplicative and was stricken from the list.

monitor the functionality and efficacy of the indicators on the provisionally approved list during his Twenty-Ninth Monitoring Round and shall report his findings to the court in his Twenty-Ninth Monitoring Round Report." *Id.*  The Court anticipated giving final approval to the list of indicators at the end of 2022. ECF No. 7456 at page 4.  The Special Master completed the 29th Round of Monitoring utilizing and assessing those indicators on the list which were integrated into his monitoring process. Informed by his 29th Round monitoring, the Special Master is also in the process of fleshing out the details of four "placeholder" indicators included in the provisionally approved list.

    However, as will be explained below, a final list of proposed key indicators cannot be provided at this time as the list is progressing jointly with the remediation process and the efficacy and functionality of the indicators is intertwined with data remediation A complete list will only emerge at the conclusion of the data remediation project. An interim report regarding the still evolving indicator list at this time would not provide the court with the information needed to decide whether to grant final approval.

    The Special Master has completed Parts A (PIPs), B (DSH), C (EOP) and D (CCCMS) of his 29th Round Monitoring Report[4] and the now requests to vacate any deadline for submission of the report by the end of 2022 an seeks an extension to report on the provisionally approved indicators list.

    Data remediation is integral to the further development of the indicators.  The Court acknowledged this fact in its order following an August 4, 2021, Special Status Conference. There, the Court reported the following:

> [T]he court recognizes the urgency that must attend satisfactory

---

[4] Parts A and B of the 29th Round Monitoring Report were filed with the Court (ECF No. 7555 and 7625) and were adopted in full by the Court (ECF No. 7608 and 7688).  Parts C and D have been sent to the parties who have until January 25, 2023, to submit comments and objections.

> completion of data remediation, as CQIT cannot be implemented until the data on which it depends can be validated and verified. Accordingly, recognizing the parties are meeting and conferring on this topic, defendants also will be directed to work under the guidance of the Special Master to develop preliminary activation schedules for completion of data remediation and to file those preliminary activation schedules by September 29, 2021. To the extent feasible, defendants shall include with the preliminary activation schedules a review of all contingencies that at this time preclude development of final activation schedules for completion of data remediation.[5]

August 25, 2021 Order, ECF No. 7283 at 6.

The Special Master's data expert provided a succinct overview of the purpose of data remediation as a necessary step to end court oversight. As the Special Master's data expert reported,

> In CDCR, indicators designed to measure Program Guide compliance rely on a series of business rules to describe and implement their operation. To be considered accurate, the business rules must be designed with fidelity to the dictates of the Program Guide and rely on data that is appropriate to achieve its intended purpose. The actual operation of the indicator must then match its intended operation.
>
> In order to determine whether an indicator is accurate requires both careful review of its design to determine if it will indeed correctly measure its business requirement, and comparison of its intended operation with its actual operation. In other words, the system must not only give a technically precise correct answer to a query, but it must also ask the right question and have access to information to answer that question.
>
> The watchwords for an acceptable data system are accuracy, transparency, and sustainability. Unfortunately, defendants' mental health data systems are not currently sufficient on any of these fronts. Remediation is required so that trust in defendants' data can be established. This can only be accomplished through meticulous assessment of what the system currently does, what it needs to do in order to be sufficient to the task at hand, and what it needs to maintain sufficiently over time.

ECF No. 7074 at 218-219.

The initial forum in which all parties have the opportunity to discuss indicators in the

---

[5] The current activation schedules indicate that all provisionally approved indicators should be remediated by the end of 2023.

remediation process occurs in the Business Rules and Methodology Review (BRMR) meetings.[6] At these meetings, the parties discuss the business rules which describe and implement the operation of the indicators designed to measure the requirements of the Program Guide and Court orders. This review process at times gives rise to requests for indicators not included in the provisionally approved list.

In a further effort to expand the efficiency of the remediation process and resolve disputes that arise during the BRMR meetings, on April 29, 2022 the Court ordered clarification of certain matters relevant to the data remediation process one of which was that "a focused process needs to be adopted to identify disputes or gaps arising during the data remediation process, provide for efficient exhaustion of dispute resolution and to the extent needed prompt presentation to the court for resolution." ECF No. 7541.

In response to the court's order, the Special Master's team met with defendants and with input from plaintiffs to design a dispute resolution process which was then codified in a declaration filed by Secretary Allison on May 19, 2022. ECF No. 7556-2 at pages 1-3. As part of this process, all requests for new indicators initially proceed on a track outside of the dispute resolution process and disputes regarding existing indicators are adjudicated through the established resolution process which can result in changed or updated indicators requiring remediation. *Id* at 2-3.

Review of indicators at the BRMR stage of the process have resulted in revisions to existing indicators and it is expected that changes to some of the indicators that have not yet

---

[6] The parties are currently exploring the possibility of increasing the frequency of these meetings to ensure the completion of data remediation by December 2023. At present the parties have agreed to combine regularly scheduled all-parties data meetings with an additional BRMR meeting resulting in three BRMR meetings every two weeks.

gone through this process will continue to be required until the remediation process has been completed.

Defendants provided a list of indicators to the Special Master and plaintiffs which they believe should be decommissioned or removed as duplicates and plaintiffs have subsequently responded to that list.  The Special Master's team is examining the positions of defendants and plaintiffs and will be convening a meeting in an effort to reach a resolution regarding their respective positions.

All of the above referenced processes are occurring during the remediation process and indicators cannot be remediated and included on a proposed final list until all issues have been resolved.  The remediation process and the final list of indicators are inextricably linked and any report filed now would only be interim in nature.

The Special Master requests that the deadline to file his report by the end of 2022 on the functionality and efficacy of the provisionally approved indicators be vacated and seeks an extension for submission of the report until the data remediation project is complete.  The Special Master will continue to use the provisionally approved list, and any changes to that list, during his upcoming 30th monitoring round.  The Special Master would recommend that he be directed to provide brief updates at intervals to be determined by the Court on the progress of the data remediation project.

DATED:  December 30, 2022                  Respectfully Submitted

                                           */s/ Matthew A. Lopes, Jr.*

                                           Matthew A. Lopes, Jr.
                                           Special Master