1

2

3

4

5

6

7

8                            UNITED STATES DISTRICT COURT

9                       FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    RALPH COLEMAN, et al.,                      No.  2:90-cv-0520 KJM DB P

12                   Plaintiff,

13          v.                                      ORDER

14    GAVIN NEWSOM, et al.,

15                   Defendants.

16    _____

17          This order addresses the status of implementation of specific recommendations for suicide

18    prevention, which the court ordered almost eight years ago.  The court does not here consider

19    ultimate questions concerning the adequacy and durability of defendants' remediation of

20    constitutional violations in suicide prevention practices.  Nonetheless, with each order it issues

21    relating in any way to suicide prevention, the court bears in mind the extremely troubling

22    backdrop.  For most of the past two decades, California's annual inmate suicide rate has equaled

23    or exceeded the national average for inmate suicides in the nation's prisons.  Total inmate

24    suicides in California have ranged from a low of 15 in 2000 and 2021 to a high of 43 in 2005 and

25    2006; the total reached 38 as recently as 2019.[1]  In 2019 and the two preceding years, California's

26    _____

27          [1] The total number of inmate suicides in California's prisons from 1999 through 2021 as
      well as the completed suicide rate per 100,000 inmates in California can be found in several
      reports filed in this action.  *See*, *e.g.*, ECF No. 4110 at 4-5, ECF No. 5325 at 6-7, ECF No. 5399
28    at 3; *see also Mortality in State and Federal Prisons, 2000-2019 – Statistical Tables* (NCJ

                                                1

inmate suicide rate was the fourth highest out of the ten largest correctional systems in the United States.  *See* ECF No. 7239 at 12. [2]  As the Special Master's suicide prevention expert Lindsay Hayes, M.S.[3] explains:

> Suicide rates are most meaningful when viewed over a sustained period of time and, as stated in all of this reviewer's reports, although the total number of inmate suicides and the corresponding suicide rate in any prison system can be important indicators, they are not the sole barometer by which adequacy of suicide prevention practices should be measured. The best methodology for determining whether a correctional system has fully implemented its suicide prevention program continues to be: (1) the assessment of suicide prevention practices within each prison, and (2) a review of each inmate suicide in relation to practices in the prison and determining its degree of preventability.

ECF No. 7636-1 (Hayes Report) at 66-67.  As the court previously has observed, "[w]here, as here, defendants know they house prison inmates at risk for suicide, they are required to take all reasonable steps to prevent the harm of suicide."  *Coleman v. Brown*, 938 F.Supp.2d at 975.  This order addresses the status of compliance with the required steps based solely on the Special Master's expert's most recent review.

---

255970, Bureau of Justice Statistics, October 2021), cited in ECF No. 7615, at 46 n.4.  The Special Master's Expert's annual suicide reports also compare California's inmate suicide rate to those in the ten largest correctional systems in the United States.  *See, e.g.*, ECF No. 7239 at 12.  The suicide rate is calculated based on the number of inmate suicide deaths per 100,000 inmates, *see Coleman v. Brown*, 938 F.Supp.2d 955, 974 n.34 (E.D. Cal. 2013); the court relies on suicide rate as "the proper method for assessment of suicide trends."  *Id.* at 975 n.36.

[2] In this order, citations to page numbers in documents filed in the court's Electronic Case Filing System (ECF) are to the page number assigned by the ECF System and located in the upper right hand corner of the page.

[3] Mr. Hayes joined the Special Master's team in 2013.  *See* Oct. 2, 2013 Order, ECF No. 4857.  Prior to that, in 2010, defendants entered into a  three-year contract with Mr. Hayes "as a consultant for the express purpose of addressing numerous deficiencies in CDCR's suicide prevention efforts     . . . CDCR contracted with Lindsay Hayes so that his 'experience (more than 25 years) with correctional suicide prevention programs will allow the CDCR to make immediate, short-term, and long-term changes in its suicide prevention program to begin to decrease the overall rate of suicide over the long term . . . [and] to implement a more effective suicide prevention policy.'"  *Coleman v. Brown*, 938 F. Supp. 2d at 978 n.39.  In August 2011, Mr. Hayes delivered one report under that contract; thereafter, CDCR did not contact him again "except to redact his report in order for certain parts to be provided to the Special Master and plaintiffs' counsel."  *Id.*

1       On October 24, 2022, the Special Master filed the pending Report on His Expert's Fifth

2   Re-Audit and Update of Suicide Prevention Practices in the Prisons of the California Department

3   of Corrections and Rehabilitation (CDCR) and Baseline Audit of Suicide Prevention Practices in

4   the Psychiatric Inpatient Programs (PIPs) (hereafter Report).  ECF No. 7636.  With his Report,

5   the Special Master filed Mr. Hayes' report itself.  ECF No. 7636-1.  On November 3, 2022,

6   defendants filed objections to the Report and the Hayes Report.  ECF No. 7654.  On

7   November 23, 2022, with leave of court, ECF No. 7656, plaintiffs filed a response to defendants'

8   objections.  ECF No. 7672.

9       The Special Master makes two requests in connection with the fifth re-audit of CDCR

10   suicide prevention practices, and one with respect to the baseline audit of suicide prevention

11   practices in the PIPs.  There are no objections concerning the baseline audit of suicide prevention

12   practices in the PIPs.  The findings will be adopted in full and the Special Master's request for a

13   court order regarding Mr. Hayes' recommendations for the PIPs will be granted.  The court turns

14   to the findings and requests based on Mr. Hayes' fifth re-audit of suicide prevention practices in

15   CDCR's prisons.

16   I.    BACKGROUND

17       While the pending reports arise from Mr. Hayes' fifth re-audit of CDCR's suicide

18   prevention practices and policies, this is the sixth such report and recommendations the Special

19   Master and Mr. Hayes have filed with the court.  The first set of reports was filed January 14,

20   2015.  ECF Nos. 5258, 5259.  They contained a "comprehensive" set of thirty-two

21   recommendations by Mr. Hayes for action defendants should take to enhance their suicide

22   prevention policies and practices and a recommendation from the Special Master "that defendants

23   be ordered to adopt those recommendations and work with [the Special Master] in the Suicide

24   Prevention Management Workgroup, 'and otherwise as may be necessary, on the development of

25   strategies and the implementation of the changes and practices described in the

26   recommendations.'"  Feb. 3, 2015 Order, ECF No. 5271, at 2 (quoting ECF No. 5258 at 5).

27   Neither party objected to the 2015 reports or their recommendations.  *Id*.  On February 3, 2015,

28   the court ordered defendants to adopt the Hayes recommendations and the Special Master's

1    recommendation for work "on the development of strategies and the implementation of the

2    changes and practices contained in those recommendations."  *Id*. at 3.

3           The second set of reports, filed January 13, 2016, concerned Mr. Hayes' first re-audit of

4    CDCR suicide prevention practices.  *See* ECF No. 5395, 5396.  Neither party filed objections, and

5    on April 5, 2016, the court adopted the first re-audit report, ECF No. 5396, in full.  Apr. 5, 2016

6    Order, ECF No. 5429.  The third set of reports, filed September 7, 2017, concerned Mr. Hayes'

7    second re-audit of CDCR suicide prevention practices.  ECF Nos. 5671, 5671-1.  No party

8    objected to these reports or the recommendations they contained, which included that three of the

9    initial thirty-two recommendations should be withdrawn.   *See* Jan. 25, 2018 Order, ECF No.

10   5762, at 1, 3.  On January 25, 2018, the court adopted the reports in full, as well as their

11   recommendations, leaving twenty-nine recommendations to be implemented and a further re-

12   audit report to follow.  *Id*. at  3-4.

13          On November 5, 2018, the court received the fourth set of reports:  the Special Master's

14   report on Mr. Hayes' third re-audit of CDCR suicide prevention practices, together with

15   Mr. Hayes' third re-audit report.  ECF Nos. 5993, 5993-1.  Defendants interposed two objections,

16   both of which the court rejected in a July 3, 2019 order adopting the reports and their

17   recommendations in full.  *See* July 3, 2019 Order, ECF No. 6212, at, *e.g.*, 14.   The court found

18   that "[w]hile some progress is being made in implementation of the court-ordered suicide

19   prevention measures, a substantial amount of work remains, and implementation is dragging out

20   and taking too long."  *Id*.  The court held that "[i]f Mr. Hayes is unable to report full compliance

21   with his recommendations at the end of the fourth re-audit, the court anticipates reviewing with

22   defendants at a future status conference the specific steps necessary to enable Mr. Hayes to report

23   no later than after his fifth re-audit  that all recommendations have by then been implemented."

24   *Id*.  In an order after a status conference held on December 3, 2019, the court required that if

25   Mr. Hayes was unable to report full compliance in his fourth re-audit report he and the Special

26   Master should  "include in their reporting on Mr. Hayes' fourth re-audit specific

27   recommendations for each step defendants must take to implement any items that remain

28

4

incomplete, as well as a date certain on which the fifth re-audit round will commence."

Jan. 7, 2020 Order, ECF No. 6441, at 8.

On September 3, 2020, the court issued a comprehensive order confirming the overall remedial framework "for the requirements defendants must satisfy to achieve compliance with the Constitution and against which their progress toward constitutional compliance is being measured." Sept. 3, 2020 Order, ECF No. 6846, at 2. In that order, the court confirmed its findings regarding suicide prevention articulated in the July 3, 2019 order that compliance with the court-ordered suicide prevention recommendations was "long overdue" and that "defendants must complete any outstanding work on those recommendations" before Mr. Hayes' fifth auditing round began so that "Mr. Hayes can report full compliance in his fifth re-audit report." Id. at 22. The court specifically ordered that "[t]he twenty-nine recommendations must be completely and durably implemented to allow comprehensive assessment of their efficacy in reducing the ongoing number of foreseeable and/or preventable inmate suicides in California's prison system." Id.[4]

On September 23, 2020, the Special Master filed a report on Mr. Hayes' fourth re-audit of CDCR suicide prevention practices, together with Mr. Hayes' report. ECF Nos. 6879, 6879-1. The Special Master recommended

> (1) [t]hat the Court find defendants in compliance with the implementation of Recommendations 2, 4, 5, 11, 19, 22, 23, 24, 25, 27, 30, and parts of 32; and
>
> (2) [t]hat the Court order defendants to complete the implementation of Recommendations 1, 3, 6, 7, 8, 9, 10, 12, 13, 17, 18, 20, 21, 26, 28, 29, 31, and the remaining parts of 32 as outlined in the report.
>
> ECF No. 6879 at 27.

Dec. 3, 2020 Order, ECF No. 6973 at 3. In response to the court's direction in the January 7, 2020 order, the Special Master included "a list of the outstanding recommendations

---

[4] The parties have recently agreed, and the court has provisionally approved, a change in the use of the "'foreseeable' and/or 'preventable'" standards to assess inmate suicides in CDCR prisons to an analysis that focuses "on the efficacy of CDCR's quality improvement plans (QIP) resulting from" case review of those suicides. Dec. 15, 2022 Order, ECF No. 7681, at 2.

and the actions required to complete their implementation." ECF No. 6879 at 5. This list included specific compliance rates to be achieved in order for Mr. Hayes to report "full implementation" of each outstanding recommendation. *Id*. at 16-25. Defendants objected to the proposed compliance standards. ECF No. 6898 at 2-3. On December 3, 2020, the court adopted both reports in full. ECF No. 6973 at 12. The court confirmed Mr. Hayes was "unable to report full compliance with his recommendations following his fourth re-audit." *Id*. at 2. The court overruled defendants' objections to the proposed compliance standards in a detailed discussion, as follows:

> As required by the January 7, 2020 order, the Special Master's report includes "specific recommendations for each step defendants must take to implement any item that remains incomplete. . . ." ECF No. 6441 at 8. For several of the incomplete items, the recommendations include a percentage compliance that must be achieved for defendants to be considered in compliance. These include:
>
> (1) at least 90 percent of custody and health care staff receive both pre-service and annual suicide prevention training (Recommendation 3);
>
> (2) "ensure that at least 90 percent of mental health clinicians at each audited CDCR facility are compliant with the requirements of both the seven-hour SRE [Suicide Risk Evaluation] training and SRE mentoring program," ECF No. 6879 at 19 (Recommendation 9);
>
> (3) 100 percent compliance with the requirement that each facility's SPRFIT [Suicide Prevention and Response Focused Improvement Teams] audit the quality of completed SREs on a monthly basis (Recommendation 10);
>
> (4) at least 90 percent compliance with requirements for suicide-resistant housing of inmates newly admitted to administrative segregation "during their first 72 hours of placement" (Recommendation 13);
>
> (5) make sure that adequate treatment (safety) plans are maintained in at least 90 percent of cases reviewed at each audited facility (Recommendation 17);
>
> (6) make sure at least 90 percent of mental health clinicians at each audited CDCR facility comply with safety planning training requirements (Recommendation 18);
>
> (7) at least 90 percent compliance with adequate psych tech practices and auditing thereof (Recommendation 20);
>
> (8) 100 percent compliance with suicide precaution and suicide [watch] observation requirements (Recommendation 21);

(9) at least 90 percent compliance with requirement that any inmate in an outpatient housing unit for more than twenty-four hours be provided with a suicide-resistant bed (Recommendation 26);

(10) adequate completion of second page of "Discharge Custody Check Sheet" in at least 90 percent of reviewed cases (Recommendations 28 and 29);

(11) at least 90 percent compliance with adequate SPRFIT practices that are consistent with the SPRFIT policy (Recommendation 31); and

(12) at least 90 percent compliance with policies regarding possessions and privileges for mental health crisis bed patients (Recommendation 32).

ECF No. 6879 at 16-24. Defendants object that these proposed compliance standards exceed the requirements of the Eighth Amendment and that adoption of them would violate the Prison Litigation Reform Act's "needs-narrowness-intrusiveness requirements by replacing the applicable 'substantial compliance' standard with one that is inconsistent with the Eighth Amendment." ECF No. 6898 at 5.[6] [Footnote 6:  Defendants also contend "[t]he Special Master and Mr. Hayes's monitoring and reporting should express the levels of compliance connected to the *Coleman* remedy. But it is not for them to pronounce the degree to which Defendants must substantially comply with the remedy to satisfy their obligations to the *Coleman* class." ECF No. 6898 at 6.  The report and recommendations before the court in no way usurp the court's role; they are in fact submitted as ordered by the court.]  Defendants' objection betrays a fundamental misunderstanding of the nature of these recommendations.

It is settled in this action that defendants' constitutional obligation with respect to suicide prevention is "to take and adequately implement all reasonable steps to remedy" the "pattern of identifiable and describable inadequacies in suicide prevention in the CDCR" that has been repeatedly identified and described for almost two decades. *See Coleman v. Brown*, 938 F. Supp. 2d 955, 979 (E.D. Cal. 2013). As the record of this case amply reflects, the pattern of inadequacies exists in both clinical judgment and administrative action or inaction.   Implementation of the twenty-nine recommendations is a central part of remedying this pattern.

Defendants are already required by court order to fully adopt the twenty-nine recommendations.   The Special Master's recommendations, if adopted, provide guidance for defendants regarding when he will report to the court that, in his view, they have sufficiently implemented a particular suicide prevention measure recommended by Mr. Hayes as required by this court; they give defendants a clear target to meet by the time Mr. Hayes' fifth round audit begins. This guidance is necessary and appropriate and will therefore be adopted.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

      The court's adoption of the Special Master's recommendations concerning particular percentage compliance standards with respect to individual provisions of the remedy does not violate the requirements of 18 U.S.C. § 3626(A)(1)(a) by moving away from the requirements of the Eighth Amendment. As noted above, it is settled in this action that defendants' Eighth Amendment obligation is to adequately implement all reasonable steps that have been identified to reduce the pattern of foreseeable or preventable inadequacies in clinical judgment and administrative action or inaction involved in inmate suicides. Section 3626(A)(1)(a) prevents a federal court from granting prospective relief in prison conditions cases "unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(A)(1)(a). To satisfy this requirement in complex cases such as this one, the court must find "that the set of reforms being ordered – the 'relief' – corrects the violations of prisoner's rights with the minimal impact possible on defendants' discretion over their policies and procedures." *Armstrong v. Schwarzenegger*, 622 F.3d 1058, 1071 (9th Cir. 2010).

      The twenty-nine recommendations are interim steps that, when fully implemented, are designed to bring defendants significantly closer to meeting their Eighth Amendment obligations in the area of suicide prevention.[7] [Footnote 7: Eighth Amendment compliance in this area of the action will require both adequate implementation of the twenty-nine recommendations as well as remediation of the pattern of identifiable and describable inadequacies in the annual reports on inmate suicides.]   Ultimately, it will be for the court to decide whether defendants have "take[n] and adequately implement[ed] all reasonable steps to remedy" the "pattern of identifiable and describable inadequacies in suicide prevention in the CDCR." Defendants do not dispute they must fully implement these recommendations, as they were ordered to do five years ago. Their objection to the Special Master's recommendations regarding when he will report to the court that each has been adequately implemented is overruled.

20

21

22

23

24

25

*Id*. at 7-10.  The court adopted the Special Master's report and Mr. Hayes' fourth re-audit report in full and set a status conference for December 18, 2020 to discuss "the steps required to complete implementation of all twenty-nine recommendations previously adopted by the court and to ensure that implementation is durable."  *Id*. at 12.[5]

26

27

28

---

[5] On January 4, 2021, defendants appealed the December 2020 order to the United States Court of Appeals for the Ninth Circuit.  *See* ECF No. 7012.  On May 17, 2021, the appeal was dismissed in accordance with the parties' stipulated motion for voluntary dismissal of the appeal, which included an agreement that defendants would bear the costs of the appeal.  ECF No. 7179.

1    In a written order after the December 18, 2020 status conference, the court ordered

2  defendants "to complete the implementation of the court-ordered suicide prevention

3  recommendations 1, 3, 6, 7, 8, 9, 10, 12, 13, 17, 18, 20, 21, 26, 28, 29, 31 and the remaining parts

4  of 32 as outlined in" Mr. Hayes' fourth re-audit report.  Dec. 24, 2020 Order, ECF No. 7004, at 2.

5  At the status conference, the court identified four of those recommendations, 12, 13, 17 and 21, as

6  "top priority for action" and also confirmed in its written order that all were to be "fully

7  implemented" by the time of the fifth re-audit.  *Id*.   The court directed the preparation of

8  activation schedules for all outstanding recommendations, and requested that CDCR Secretary

9  Kathleen Allison "take all steps within her authority to expedite full implementation of all the

10  court-ordered recommendations." *Id*.

11    On January 15, 2021, defendants filed the proposed activation schedules as the court

12  required in its December 24, 2020 order.  ECF No. 7024.  Subsequently, also as the court

13  required, ECF No. 7150, defendants filed an update to the January 15, 2021 filing, ECF No. 7160.

14  Since then, defendants have filed fifteen additional updated activation schedules for completion

15  of the court-ordered suicide prevention recommendations.  *See* ECF Nos. 7225, 7256, 7281, 7299,

16  7306, 7337, 7362, 7384, 7444, 7480, 7519, 7562, 7578, 7596, 7646.  In the most recent activation

17  schedule, as discussed further below, many dates identified in the column for scheduling "planned

18  completion" of certain items have passed without completion, and in some instances the notation

19  "ongoing" appears without any date; in the corresponding column for "actual completion," many

20  entries include the notation "ongoing" or are blank.  *See* ECF No. 7646, *e.g.*, at 5, 8, 10, 11.

21  II.    FINDINGS AND RECOMMENDATIONS, OBJECTIONS, AND RESPONSE

22         A.    Findings and Recommendations

23    As the reports currently before the court show, Mr. Hayes has been able to report

24  defendants' compliance with only three of the remaining recommendations -- 1, 6, and 26 --

25  leaving fifteen recommendations still outstanding.  ECF No. 7636 at 32.  Defendants have not

26  complied with any of the recommendations identified as "top priority for action" in the court's

27  December 24, 2020 order.  Based on these findings, the Special Master requests that:

28

1    (1) the Court find defendants in compliance with the implementation
     of recommendations 1, 6, and 26; and

2

3    . . . .

4    (3) the Court order the Special Master to provide an update report to
     the Court on the status of defendants' continued implementation of
     the remaining 15 outstanding recommendations and the development

5    of corrective action plans to address the deficiencies found in PIP
     suicide prevention practices.

6

7    *Id*.[6]

8        B.    Defendants' Objections

9              1.    Failure to Achieve Full Implementation as to Two Recommendations

10       Defendants acknowledge their failure to "achieve full implementation" of two of the

11   recommendations, 17 (requiring maintenance of adequate treatment (safety) plans in at least

12   90 percent of cases reviewed at each audited facility, ECF No. 6973 at 7) and 31 (requiring "at

13   least 90 percent compliance with adequate SPRFIT practices that are consistent with the SPRFIT

14   policy," ECF No. 6973 at 8).  ECF No. 7654 at 3.

15             2.    General Objections

16       Defendants object to Mr. Hayes' use of his compliance standards to guide his findings on

17   implementation of the recommendations, contending their "activation schedules decouple

18   implementation from compliance" and that "[i]mplementation should focus on the actual

19   development and application of a policy, plan, or audit that make up CDCR's durable suicide

20   prevention program."  *Id*.  Pointing to two specific recommendations, 10 and 21, defendants

21   contend that "Mr. Hayes' concept of implementation creates an unworkable standard for

22   compliance with individual recommendations."  *Id*. at 4.  Pointing to two other specific

23   recommendations, 7 and 8, they contend "institutional noncompliance" should be viewed

24   separately from "systemic noncompliance, and that some of "the Special Master's findings of

25

26       _____

         [6] In a footnote, the Special Master suggests that with respect to the 15 outstanding

27   recommendations "defendants should continue their court-ordered efforts towards full
     implementation without further delays, focusing on ways to accelerate the process wherever
     possible."  *Id*. at 32 n.46.

28

1  system-wide noncompliance were predicated on limited incidents of noncompliance that do not

2  indicate a systemic deficiency." *Id*. at 7.

3          3.    <u>Specific Objections</u>

4          a)    <u>Recommendation 10</u>

5        Defendants argue the 100 percent standard required by Mr. Hayes to report compliance

6  with recommendation 10, which requires auditing of completed suicide risk evaluations (SREs)

7  on a monthly basis, is "unworkable." *Id*. at 4, 5.  Defendants contend Mr. Hayes suggests,

8  incorrectly, that CDCR only reviews "emergent mental health referrals." *Id*. at 5.  They also

9  contend CDCR has "two oversight mechanisms built into the system to ensure compliance is as

10 close to 100-percent as is reasonably practicable." *Id*.  These include analysis of "every urgent

11 referral that may indicate the individual is potentially suicidal to determine the clinical reason it

12 was not classified as emergent and what, if any, error occurred during the classification process"

13 and development of "mechanisms for the Electronic Health Record System [EHRS] to prevent

14 staff from erroneously classifying a referral as urgent." *Id*.

15         b)    <u>Recommendation 21</u>

16       Defendants contend the 100 percent compliance standard for recommendation 21,

17 adherence to suicide precaution and suicide watch requirements, is also unworkable. *Id*. at 5-6.

18 They state that "CDCR and the California Correctional Health Care System (CCHCS) developed

19 an automated Mental Health Observations Reporting Tool (Reporting Tool) to record

20 compliance" with the required "levels of observation and to assist institutional staff." *Id*. at 6.

21 According to defendants, the Reporting Tool "shows every single observation conducted at 15-

22 minute intervals of suicidal patients housed in the Mental Health Crisis Bed (MHCB) units, and

23 indicates whether the observation was compliant or not" and "was developed in order to assist

24 institutions with identifying staff who need to improve performance, which further demonstrates

25 CDCR's robust self-monitoring system and durable suicide prevention program." *Id*. at 6.

26         c)    <u>Recommendation 7</u>

27       With respect to the finding of noncompliance with recommendation 7 (requiring nurses'

28 offices to "be of sufficient size to conduct adequate intake screening, and the door to the office

1   (which should contain a large viewing window) should remain closed during the screening

2   process," ECF No. 6846 at 31), defendants seem to suggest that Mr. Hayes' finding of

3   noncompliance with this recommendation was based on an observation of one nurse at one

4   institution. *Id*. at 7.

5                           d)        Recommendation 8

6          Defendants make a similar argument with respect to recommendation 8 (which requires

7   that nurse and officer safety "remain the top priority during the intake screening process" and that

8   "[i]f an inmate's security classification or unknown security status creates a safety concern, the

9   screening should be conducted in the least restrictive setting that ensures both staff safety and

10  inmate confidentiality," ECF No. 6846 at 31).  *Id*.  They contend Mr. Hayes' finding that "'there

11  continue to be a few audited facilities in which intake nurses did not feel comfortable conducting

12  screening without the presence of custody personnel'" is insufficient to support a finding of

13  systemic noncompliance with recommendation 8.  *Id*. (quoting Hayes Report at 5).

14                          e)        Suicide Case Review Process

15          Finally, defendants object to Mr. Hayes' finding of "a weakness" in defendants'

16  otherwise robust suicide case review process, namely "the repetitive nature of deficiencies"

17  identified during the process.  *Id*. at 7-8.  Defendants contend that Mr. Hayes is conflating the

18  suicide case review process with defendants' adherence to suicide prevention policies and

19  practices and that the repetitive nature of identified deficiencies is not a weakness in the suicide

20  case review process itself.  *Id*. at 8.

21          C.      Plaintiffs' Response

22                  1.       General Objections

23          In response, plaintiffs point out the standards for compliance with Mr. Hayes'

24  recommendations have been settled by this court, and the Ninth Circuit Court of Appeals has

25  confirmed this court is entitled as a general rule to rely on its prior orders as the law of the case.

26  ECF No. 7672 at 3 (citing *Coleman v. Brown*, 756 F. App'x 677, 679 (9th Cir. 2018)).  Plaintiffs

27  also contend the court has clearly stated the role that meeting the compliance standards set for full

28  implementation of the suicide prevention recommendations will play in assessing defendants'

1    compliance with Eighth Amendment requirements for adequate suicide prevention.  *Id*.  They

2    argue the court has already rejected the general objection that systemic non-compliance is not

3    shown through non-compliance at individual institutions.  *Id*. at 8.

4                    2.      Specific Objections

5                            a)      Recommendation 10

6            Plaintiffs disagree that 100 percent compliance with recommendations 10 is unattainable.

7    They argue that achieving 100 percent compliance with the SRE audits required by this

8    recommendation is necessary because "SREs are a key tool for identifying suicidal ideation and

9    'failure to complete such an assessment can result in death by suicide within CDCR facilities.'"

10   *Id*. at 4 (quoting Hayes Report at 39).  Importantly, plaintiffs' contend defendants' objection to

11   the 100 percent compliance standard for recommendation 10 is "largely academic" because the

12   compliance rate reported by Mr. Hayes for that recommendation is  so poor.  *Id*. at 4-5 (noting the

13   Hayes Report finds "only 61% of audited institutions (14 of 23) achieved even ninety-percent

14   compliance and that Defendants' compliance with Recommendation 10 actually *decreased* since

15   the Fourth Re-Audit.") (emphasis in original).  Finally, plaintiffs point to the fact that Mr. Hayes

16   found San Quentin State Prison (San Quentin) had achieved 100 percent compliance with

17   recommendation 10, suggesting full compliance is achievable.  *Id*. at 5.

18                           b)      Recommendation 21

19           Plaintiffs also disagree that 100 percent compliance with recommendation 21 is

20   unattainable.  Plaintiffs contend defendants mischaracterize recommendation 21 by arguing that it

21   "directs CDCR merely to '*authorize*' only the two levels of observation that may be provided for

22   suicidal inmates.'  Defendants' Objections at 6."  *Id*. (emphasis in original). Plaintiffs argue the

23   recommendation actually requires enforcement of Program Guide requirements "'authorizing

24   only the two levels of observation which may be provided for suicidal [i]nmates.'"  *Id*. (internal

25   citations omitted).  Thus, they argue, defendants' reliance on implementation of their Reporting

26   Tool is insufficient to show the required implementation of recommendation 21.  Moreover, they

27   note that Mr. Hayes identified other deficiencies in implementing this recommendation, including

28   that six MHCB units "appear to have established practices of placing suicidal patients on thirty-

                                                    13

1    minute observation rounds" rather than fifteen minutes as required.  *Id*. at 6 (citing Hayes Report

2    at 25).  They point out that Mr. Hayes reports substantial deficiencies with implementation of

3    recommendation 21, including "that seventeen out of twenty MHCBs (85%) had problematic

4    practices, including 'multiple violations per patient by multiple nursing personnel assigned to the

5    MHCB units" as well as the thirty-minute rounding in six MHCB units.  *Id*. (citing Hayes Report

6    at 21-25).

7                              c)      Recommendations 7 and 8

8            Plaintiffs contend defendants' objection to Mr. Hayes' findings as to recommendation 7

9    are "inaccurate, misleading and flawed."  *Id*. at 7. They contend the Hayes Report does not say

10   only one nursing intake encounter was observed and, even if it were, that it is not improper for

11   Mr. Hayes to report non-compliance based on his observations.  *Id*.  Plaintiffs also contend the

12   deficiencies described in the Hayes Report as to recommendation 8 are "the result of choices, not

13   random errors" and that the fact "[t]hat other institutions have managed to comply with

14   Recommendation 8 also undercuts Defendants' argument."  *Id*. at 8.

15                             d)      Suicide Case Review Process

16           Finally, plaintiffs contend the facts underlying Mr. Hayes' critique of the suicide case

17   review process are undisputed, and that defendants' response is at odds with their representations

18   to the court in seeking to assume responsibility for annual suicide reporting and to change the

19   long-standing standard that has applied to review of annual inmate suicides in CDCR.  *Id.* at 9-10.

20   III.     DISCUSSION

21           A.      General Observations

22           As noted above, Mr. Hayes first made his suicide prevention recommendations in January

23   2015, almost eight years ago.  Defendants did not object to those recommendations and the court

24   ordered defendants to implement them in February 2015.  To date, defendants have fully

25   implemented a total of fourteen of the twenty-nine recommendations.  *See* ECF No. 6973 at 3

26   (quoting ECF No. 6879 at 27), 12 (adopting ECF Nos. 6879 and 6879-1 in full); ECF No. 7636 at

27   32.  The court, the Special Master and Mr. Hayes have spent significant time setting out what is

28   necessary to achieve full implementation of the outstanding recommendations.

In its December 3, 2020 order, the court made clear the Hayes recommendations "are interim steps that, when fully implemented, are designed to bring defendants significantly closer to meeting their Eighth Amendment obligations in the area of suicide prevention." ECF No. 6973 at 9. Eighth Amendment compliance in suicide prevention "will require both adequate implementation of the twenty-nine recommendations and remediation of the pattern of identifiable and describable inadequacies in the annual reports on inmate suicides." *Id*. at 9 n.7. The compliance standards Mr. Hayes used to report to the court on defendants' implementation of outstanding suicide prevention recommendations provide "necessary and appropriate guidance" to defendants regarding when Mr. Hayes will "report to the court that, in his view, they have sufficiently implemented a particular suicide prevention measure" and the court's confirmation of the standards as proper guidance gave "defendants a clear target to meet by the time Mr. Hayes' fifth round audit begins." *Id*. at 9. As noted, defendants have fully implemented fourteen of the twenty-nine court-ordered suicide prevention recommendations. As discussed above, eleven of the court-ordered recommendations were fully implemented by the time of the fourth round re-audit and three more have now been fully implemented. This means defendants have not met the court-approved guidance standards for reporting on defendants' implementation of fifteen of the eighteen recommendations that remained outstanding after the court's December 3, 2020 order, and they do not contend they have. Instead, they rehash settled arguments over the role and propriety of these standards in the overall process of remediating the ongoing constitutional violations in suicide prevention.

In addition, as noted, defendants now state that their court-ordered suicide prevention activation schedules "decouple implementation from compliance" because, in their view, "implementation should focus on the actual development and application of a policy, plan, or audit that make up CDCR's durable suicide prevention program." ECF No. 7654 at 3. There is no basis in the record for defendants' unilateral decision to "decouple implementation" of the Hayes' recommendations from "compliance" with those recommendations; the compliance guidance provided in the court's December 3, 2020 order signals when Mr. Hayes will report that

1    a recommendation has been fully implemented.[7]  Defendants' contention disregards the court's

2    directive.  On December 24, 2020, the court ordered defendants to "complete and file proposed

3    activation schedules" for the outstanding suicide prevention recommendations, "to include, as

4    defendants deem necessary, interim deadlines toward complete implementation of all

5    recommendations. . . ."  ECF No. 7004, at 2.[8]  That order followed the court's discussion with the

6    parties at the December 18, 2020 status conference, which made clear the purpose of the

7    activation schedules was to focus minds on completion of each recommendation.  *See* Reporter's

8    Transcript of Proceedings (12/18/20 RT), ECF No. 7002, at 71, 72.  Altogether, the court's orders

9    make clear the following:  (1) defendants are required to fully implement the outstanding court-

10   ordered suicide prevention recommendations; (2) compliance is assessed with reference to the

11   compliance percentage standards the court adopted in its December 3, 2020 order and that

12   Mr. Hayes used to report on whether "full implementation" has been achieved; and (3)

13   defendants' activation schedules are to be focused on achievement of full implementation of those

14   recommendations.  Defendants' late stage sleight of hand to change the standards by ignoring

15   clear orders of this court cannot stand.

16          As noted above, defendants acknowledge their non-compliance in their failure to fully

17   implement recommendations 17 and 31.  In addition to those two recommendations, defendants'

18   most recent activation schedule, filed October 31, 2022, ECF No. 7646, shows actual completion

19   of parts of recommendations 3, 18, 26[9], 28 and 29 is ongoing; actual completion of all of

20

21          [7] This is not the first time that defendants have unilaterally adjusted settled monitoring

22   standards in this action.  *See* July 12, 2018 Order, ECF No. 5852, at 2 (discussing "defendants'
     decision to unilaterally adjust the compliance monitoring standard" for the continuous quality

23   improvement tool (CQIT) "to 85 percent from the 90 percent standard that has been used
     consistently throughout the remedial phase of this litigation.")

24

25          [8] The court also requested "CDCR Secretary Kathleen Allison to take all steps within her
     authority to expedite full implementation of all of the court-ordered recommendations."  *Id*.

26

27          [9] The Hayes Report finds compliance with recommendation 26.  Defendants describe the
     ongoing work with respect to recommendation 26 as consistently providing patients in alternative

28   housing at California Health Care Facility (CHCF) with "stack-a-bunk beds."  ECF No. 7646 at 8.
     Mr. Hayes reports that during his fifth re-audit visit at CHCF there were no inmates in alternative

                                                    16

1  recommendations 10 and 20 also is ongoing; and estimated actual completion of recommendation

2  9 to be October 31, 2022.[10]  Even if the court accepted defendants' decoupling argument, which it

3  does not, defendants' own activation schedule shows non-compliance with the court-ordered

4  implementation of all or part of several suicide prevention recommendations in addition to the

5  two defendants admit are not fully implemented.

6        Regarding recommendations 12, 13 and 20, the court's review of the Special Master's

7  Report and the Hayes Report suggests defendants missed an opportunity to present a good faith

8  request for extension of time to complete full implementation.  Mr. Hayes reports 82 percent

9  compliance with recommendations 12 and 13, ECF No. 7636-1 at 17-18, and 86 percent

10  compliance with recommendation 20, *id*. at 15.  The rate of compliance with recommendations 12

11  and 13 is encouraging, as it shows an improvement from 65 percent compliance in the fourth re-

12  audit to 82 percent compliance in the fifth re-audit.  *Id*. at 18.  The rate of compliance for

13  recommendation 20 also is an improvement from the 75 percent compliance Mr. Hayes reported

14  in the fourth-reaudit report; it appears focused attention on the three facilities with outstanding

15  deficiencies in this area, California Institution for Men (CIM), California Substance Abuse

16  Treatment Facility (CSATF), and San Quentin, could result in compliance in short order.  *See id*.

17  at 15.[11]

18  /////

19  /////

20  /////

21  ─────────────

22  housing but the "stack-a-bunks . . . were appropriately located in storage rooms adjacent to the"
   alternative housing units.  ECF No. 7636-1 at 125.

23      [10] Defendants have not filed an updated suicide prevention activation schedule since

24  October 31, 2022.  Good cause appearing, defendants will be directed to file within fourteen days
   a brief report with focused updates on the status of all fifteen outstanding recommendations as of

25  the end of calendar year 2022.

26      [11]  A similar rate of progress on recommendation 26 led to Mr. Hayes' recommendation
   the court find defendants have fully implemented that recommendation.  *See id*. at 19 (in the

27  fourth re-audit, 85% of facilities were compliant with recommendation 26; by the fifth re-audit, a
   96% compliance rate was achieved).

28

1    B.    Specific Objections

2         1.    Recommendation 10

3    As noted above, recommendation 10 is a requirement that each facility's SPRFIT "audit

4    the quality of completed SREs on a monthly basis." ECF No. 6846 at 32.  A subset of this

5    recommendation is the requirement that SREs[12] be completed as required by the Program Guide.

6    See, e.g., ECF No. 5259 at 12 (listing Program Guide requirements for preparation of SREs and

7    initial findings as to whether these requirements were met).  Over time, the focus of

8    implementation of recommendation 10 has narrowed from extensive findings of poor quality

9    SREs, see, e.g., id., to assessment of whether inmates who express suicidal ideation and/or engage

10   in self-injurious behavior and therefore need SREs, are adequately identified through the CDCR

11   referral process and the necessary SREs completed.  See, e.g., ECF Nos 5993-1 at 17, 6879-1 at

12   21-22, 7636-1 at 35; see also ECF No. 7646 at 5 (describing Recommendation 10 as "SRASHEs

13   and Referrals').

14   With this narrowed focus, the court observes first that nothing in the Hayes Report

15   suggests defendants only review "emergent" referrals for compliance with this recommendation.

16   Mr. Hayes does report that "while [he] has historically reviewed both emergency mental health

17   referrals, as well as urgent mental health referrals . . . CDCR has historically only reviewed

18   emergency mental health referrals to assess timely compliance with the required completion of

19   Suicide Risk Assessment and Self-Harm Evaluations (SRASHEs)." ECF No. 7636-1 at 34

20   (emphasis in original).  He finds currently:

21
22   continuing problems with the required completion of SRASHEs
     following either emergent or urgent mental health referral for SI
     [suicidal ideation] or SIB [self-injurious behavior].  Most of these
23   failures were related to cases involving urgent mental health referrals.
     There were also cases in which SRASHEs were not completed when SI

24   /////

25   /////

26

27   _____

28       [12] SREs and SRASHEs apparently are used interchangeably.

and/or SIB was identified during routine clinical contacts or following undocumented referrals in which urgent/emergent referrals were not generated.

*Id*. at 35.  Nothing in the current findings contradicts defendants' assertion that they have built in mechanisms in an effort to ensure that referrals are properly classified so that necessary SRASHEs are timely completed.

Of greatest significance for purposes of this order, Mr. Hayes reports that only 61 percent of CDCR institutions achieved compliance more than 90 percent of the time -- below the operative 100 percent compliance standard -- with the requirements for timely completion of SRASHEs when inmate suicidal ideation or self-injurious behavior is identified "during routine clinical contacts or following undocumented referrals in which urgent/emergent referrals were not generated." *Id*. at 35.  Defendants' objections suggest they are taking some steps necessary to ensuring full compliance with the requirement to complete necessary SREs, namely, auditing their referral process to ensure referrals that include reports of suicidal ideation and/or self-injurious behavior, lead to timely preparation of SREs.  The important focus here, however, is on whether necessary suicide risk evaluations are timely completed.  That work remains.  The court overrules this objection.

2.    Recommendation 21

Defendants' objections concerning recommendation 21 border on the frivolous, which is particularly troubling given the lengthy and problematic history of observation of suicidal patients in MHCB units.  *See id*. at 20 (previous findings of inadequacies in this area included falsification of observation forms).  Recommendation 21 requires defendants to enforce the Program Guide requirements for (1) observation at staggered intervals not exceeding every 15 minutes of inmates on suicide precaution; and (2) continuous observation for inmates on suicide watch.  *See* ECF No. 6846 at 34.  Defendants use their Reporting Tool to aid with auditing compliance; Mr. Hayes reports the Reporting Tool is "very accurate."  *See* ECF No. 7636-1 at 7, 22.[13]  An auditing tool,

---

[13] The Reporting Tool was developed in February 2022, substantially more than halfway through the period covered by Mr. Hayes' fifth re-audit.  *See id*. at 2, 22.

1    however accurate and helpful, is not a substitute for full implementation of these critically

2    important requirements.  The findings from six institutions – California Men's Colony, California

3    State Prison/Los Angeles County, High Desert State Prison, Kern Valley State Prison, Pelican

4    Bay State Prison, and San Quentin -- regarding transitioning MHCB inmates on suicide

5    precaution to 30-minute observation periods after 24 hours, despite ongoing suicidal ideation, is

6    deeply concerning.  *See id*.  at 22-25.  This is not a situation in which reasonable minds could

7    differ over whether defendants are in compliance with the court's order to fully implement this

8    recommendation.  They are not.  The court overrules defendants' objections regarding

9    recommendation 21.

10                 3.     Recommendations 7 and 8

11        Defendants' objections to Mr. Hayes' findings concerning recommendations 7 and 8 are

12    overruled.  Even a cursory reading of relevant sections of the Hayes Report shows that the

13    findings as to recommendations 7 and 8 are based on problems identified at five of the twenty-

14    three facilities Mr. Hayes visited during his fifth round re-audit.  *See id*. at 12-14.  His findings do

15    not describe "isolated" incidents at a few institutions and they are more than sufficient to support

16    his conclusion that defendants have not yet fully implemented recommendations 7 and 8.

17                 4.     Suicide Case Reviews

18        This objection is illustrative of a delay tactic defendants pursue to their own detriment as

19    well as that of the plaintiff class.  Defendants naturally do not argue with Mr. Hayes'

20    characterization of defendants' suicide case reviews as "very comprehensive" and "[a]

21    considerable strength of the CDCR suicide prevention program."  *Id*. at 9, 55.  Nor do they

22    dispute Mr. Hayes' finding that the suicide case reviews repeatedly identify the same deficiencies.

23    Instead, they attempt to argue, without evidentiary support, that the repetitive nature of the

24    deficiencies identifies only weaknesses in individual clinical judgments and not systemic issues in

25    suicide prevention.

26        The Program Guide includes as part of the suicide death review process the preparation of

27    quality improvement plans (QIPs), which defendants are to complete before suicide cases are

28    closed. *See* ECF No. 7333-1 at 192.  Defendants recently have acknowledged that the QIP

1  component of the suicide death review process.  *See* ECF No. 7574 at, *e.g.*, 7-8.

2  Mr. Hayes' finding is entirely consistent with that acknowledgment and points to the urgent need

3  for defendants to follow through, in a comprehensive and substantive way, on their commitment

4  to enhancing the QIP part of the suicide death review process.  *See id*. at 8.  The court overrules

5  this objection.

6         C.    Summary

7         In sum, defendants do not dispute they have failed to implement fifteen of the court-

8  ordered recommendations sufficiently for Mr. Hayes to report full implementation.  Defendants'

9  positions are not proper objections to the current findings, which are grounded in well-established

10  clear principles embodied in prior court orders.  The court cannot countenance further disregard

11  of the settled law in this action, particularly regarding a component of the remedy for which the

12  stakes are so high.  Defendants do not provide any basis for the court to reject either the Special

13  Master's Report or Mr. Hayes' Fifth Re-Audit Report.  Both will be adopted in full.

14  IV.    CONCLUSION

15         For the reasons explained in this order, the findings in the Special Master's Report on His

16  Expert's Fifth Re-Audit and Update of Suicide Prevention Practices in the Prisons of the

17  California Department of Corrections and Rehabilitation (CDCR) and Baseline Audit of Suicide

18  Prevention Practices in the Psychiatric Inpatient Programs (PIPs) prepared by the Special

19  Master's suicide prevention expert Lindsay M. Hayes, M.S. (hereafter Report), ECF No. 7636,

20  and those in Mr. Hayes' Report, ECF No. 7636-1, are adopted in full.  The Special Master's first

21  and second requests will be granted.  The court will defer resolution of the third request pending

22  review of the report from defendants required by this order and discussion at the status conference

23  to be held later in January 2023.

24         In accordance with the above, IT IS HEREBY ORDERED that:

25         1. The findings in the Special Master's October 24, 2022 Report on His Expert's Fifth Re-

26  Audit and Update of Suicide Prevention Practices in the Prisons of the California Department of

27  Corrections and Rehabilitation (CDCR) and Baseline Audit of Suicide Prevention Practices in the

28  Psychiatric Inpatient Programs (PIPs) ECF No. 7636, are ADOPTED in full.

2.  The findings in Mr. Hayes' Fifth Re-Audit and Update of Suicide Prevention Practices in the Prisons of the California Department of Corrections and Rehabilitation (CDCR) and Baseline Audit of Suicide Prevention Practices in the Psychiatric Inpatient Programs (PIPs), ECF No. 7636-1, are ADOPTED in full.

3.  The Special Master's first and second requests are GRANTED.

4.  The court's ruling on the Special Master's third request is DEFERRED pending further review and discussion with counsel at the status conference set in this order.

5.  The court finds defendants in compliance with the implementation of Recommendations 1, 6 and 26.

6.  Within fourteen days from the date of this order defendants shall file a brief report with focused updates on the status of all fifteen outstanding court-ordered suicide prevention recommendations as of the end of calendar year 2022.

7.  Defendants shall implement the sixteen recommendations for development of corrective action plans in CDCR's PIPS set out at pages 29-31 of the Special Master's Report, ECF No. 7636, and pages 70-71 of the Hayes Report, ECF No. 7636-1.  The parties shall meet and confer and, within thirty days from the date of this order, file a proposed joint schedule for compliance with this order.

8.  A status conference is set for **Friday, February 10, 2023 at 10 a.m.**  The parties shall be prepared to address further proceedings with respect to the outstanding suicide prevention recommendations at the status conference.

SO ORDERED.

DATED:  January 5, 2023.

_____
CHIEF UNITED STATES DISTRICT JUDGE