1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    RALPH COLEMAN, et al.,                        No. 2:90-cv-0520 KJM DB P

12                        Plaintiffs,                ORDER

13           v.

14    GAVIN NEWSOM, et al.,

15                        Defendants.

16

17          For more than a quarter century, the court has supervised this case, which plaintiffs filed

18    to correct Eighth Amendment violations in the delivery of mental health care to persons with

19    serious mental disorders incarcerated in California prisons.[1]  *See Coleman v. Wilson*, 912 F. Supp.

20    1282 (E.D. Cal. 1995).  The court's 1995 order established the fundamental requirements for full

21    remediation.  Over the past twenty-five years, while the state has made progress toward meeting

---

[1] In 1991, the court certified a class in this action consisting of "all inmates with serious mental disorders who are now or who will in the future be confined within the California Department of Corrections," now known as the Department of Corrections and Rehabilitation or CDCR, "(except the San Quentin State Prison, the Northern Reception Center at Vacaville and the California Medical Facility—Main at Vacaville)." *Coleman*, 912 F. Supp. at 1293 (quoting Nov. 14, 1991 Order, ECF No. 109, at 4-5).  By 1999, the class definition was "amended to include 'all inmates with serious mental disorders who are now, or who will in the future, be confined within the California Department of Corrections.'" *Coleman v. Schwarzenegger*, 922 F. Supp. 2d 882, 898 n.11 (E.D. Cal./N.D. Cal. 2009) (quoting July 23, 1999 Order, ECF No. 1054, at 3). The court uses the phrase "serious mental disorders" to refer to the same set of conditions identified at times in this order as "serious mental illness" or variations thereof.

1

1    its Eighth Amendment obligation to the plaintiff class, this court, as well as a three-judge district

2    court and the United States Supreme Court, have confirmed there are ongoing constitutional

3    violations in the delivery of mental health care to these incarcerated persons.  The state repeatedly

4    has fallen short of its constitutional obligations in a number of critical areas: suicide prevention;

5    the treatment of mentally ill inmates in administrative segregation; those inmates' access to

6    higher levels of care, including mental health crisis beds; and staffing.  *See*, *e.g.*, July 23, 2007

7    Order, ECF No. 2320; *Coleman v. Brown*, 938 F. Supp. 2d 955, 973-89 (E.D. Cal. 2013); *see*

8    *also, e.g., Coleman v. Schwarzenegger*, 922 F. Supp. 2dat 888, 919, 929-30, 948, 955-56; *Brown*

9    *v. Plata*, 563 U.S. 493, 503-04, 519, 523 (2011).  The state also has lagged in developing the tools

10   that would allow its own monitoring of prison mental health care again, as well as in fixing the

11   data systems required for accurate monitoring.  *See, e.g.*, Sept. 30, 2020 Order, ECF No. 6846;

12   *Coleman v. Newsom*, 424 F. Supp. 3d 925 (E.D. Cal. 2019).

13        At this point, two ongoing serious violations stand out and prompt the court's issuance of

14   this order inviting the United States Attorney General to once again participate in this case.

15        First is staffing.  Defendants have not, in more than twenty-five years, achieved

16   constitutionally adequate mental health staffing levels.  Today, more than 32,000 inmates with

17   serious mental disorders live in California's prisons, and they account for more than a third of the

18   state's total inmate population.  *See* Appendix A to this order, Mental Health Services Delivery

19   System (MHSDS) Management Information Summary (MIS) Report dated December 19, 2022

20   (total census for CDCR MHSDS is 32,544); *cf.* ECF No. 7683 at 2.  Faced with the persistently

21   high population of mentally ill incarcerated persons, the state has failed to staff its prisons with

22   the number of mental health professionals required to provide class members constitutionally

23   adequate care.  *See*, *e.g.*, June 13, 2002 Order, ECF No. 1383 (requiring defendants to limit to ten

24   percent the vacancy rate among psychiatrists and case managers).  By 2009, defendants produced

25   a staffing plan that, if implemented, would have brought the state into compliance.  *See* Oct. 10,

26   2017 Order, ECF No. 5711, at 11.  But by 2017, eight years later, the state had not yet fully

27   implemented its plan, nor had it complied with the court's order issued in August 2016 to provide

28   a "measurable timeline" for achievement of constitutionally adequate staffing levels.  *Id*. at, *e.g.*,

1    11.  The court therefore gave defendants one year to "take all steps necessary to come into

2    complete compliance with" their staffing plan and the ten percent vacancy rate. *Id*. at 30.   The

3    state again fell short.  Today, more than four years later, defendants still have not complied.  *See*

4    ECF Nos. 7674, 7677.

5         Second is suicide prevention.  Total inmate suicides in California have ranged from a low

6    of 15 in 2000 and 2021 to a high of 43 in 2005 and 2006; the total reached 38 as recently as 2019.

7    In 2019, and the two preceding years, California's inmate suicide rate was the "4th highest out of

8    the ten largest correctional systems in the United States."  *See* ECF No. 7239 at 12.  In February

9    2015, the court ordered defendants to adopt a series of recommendations provided by the Special

10   Master's court-approved expert, Lindsay Hayes, M.S.  Feb. 3, 2015 Order, ECF No. 5271.

11   Defendants did not object to any of Mr. Hayes' recommendations. *Id*. at 2.  Despite a series of

12   court orders to implement the recommendations, fifteen of twenty-nine remain outstanding. *See*

13   Jan. 6, 2023 Order, ECF No. 7696 (adopting certain of the Special Master's most recent

14   recommendations and setting status to review state's failure to comply).

15        Staffing and suicide prevention are but two examples of the unacceptable delays in

16   achieving constitutional compliance in this case.  As a result, the court is at a critical crossroads.

17   The plaintiff class has waited far too long for constitutionally adequate mental health care, and

18   serious enforcement action on a number of fronts is past due.  At the same time, the court

19   recognizes enforcement proceedings likely will further delay this case and frustrate its

20   fundamental purpose of ensuring constitutionally adequate care now for California's incarcerated

21   mentally ill.  Further delay is particularly likely given that the state has adopted a distracting and

22   costly scorched-earth litigation strategy, prosecuting more than a dozen appeals and mandamus

23   petitions within the last five years alone, none successful.[2]  During this same time period, the

---

[2] *See* Order, *Coleman v. Newsom*, No. 22-15570 (9th Cir. filed Aug. 17, 2022), Dkt. No. 7 (voluntarily dismissed); Order, *Coleman v. Newsom*, No. 22-15369 (9th Cir. filed Oct. 12, 2022), Dkt. No. 12 (dismissed on defendants' motion); Order, *Coleman v. Newsom*, No. 22-15065 (9th Cir. filed Feb. 28, 2022), Dkt. No. 8 (voluntarily dismissed); Order, *Coleman v. Newsom*, No. 21-16884 (9th Cir. filed Oct. 12, 2022), Dkt. No. 19 (dismissed on defendants' motion); Order, *Coleman v. Newsom*, No. 21-15039 (9th Cir. filed May 17, 2021), Dkt. No. 17 (dismissed on stipulation for voluntary dismissal); Order, *Coleman v. Newsom*, No. 20-16734 (9th Cir. filed Oct. 5, 2022), Dkt. No. 83-1 (dismissed as moot); Order, *Coleman v. Newsom*, No. 20-16062 (9th

1    court has found the state to have engaged in knowing presentation of misleading evidence to the

2    court and its Special Master.  *See Coleman v. Newsom*, 424 F. Supp. 3d at, *e.g.*, 952.  While

3    contributing to delay, the state's litigation strategy also appears to have substantially interfered

4    with the dedicated efforts of many within CDCR itself—from the Secretary to mental health

5    administrators to clinicians—to remedy constitutional violations in good faith.  It also appears to

6    have blocked the possibility of further court-convened settlement efforts.  *See* Reporter's

7    Transcript of Proceedings (RT 4/22/22), ECF No. 7540, at 50-53.

8         The ultimate resolution of this case implicates the interests of the United States.  As it

9    previously has informed the court, the United States has a "broad interest in ensuring that

10   conditions of confinement in state . . . correctional facilities are consistent with the Constitution

11   and federal law."  Statement of Interest of the United States of America, ECF No. 4736, at 2; *see*

12   *also* 28 U.S.C. § 517.[3]  In other comparable circumstances, the United States has participated in

13   an action to "encourag[e] state officials to take action to safeguard the rights" of incarcerated

14   persons and to "ensur[e] 'conservation of judicial resources.'"  *Ruiz v. Estelle*, 679 F.2d 1115,

15   1135-36 (considering, among other things, application of 42 U.S.C. § 1997 *et seq.* to prison

16   conditions case), *amended in part, vacated in part on other grounds*, 688 F.2d 266 (5th Cir.

17   1982).

18   /////

---

Cir. filed Oct. 9, 2022), Dkt. No. 11 (dismissed on defendants' unopposed motion); Order, *In re: Gavin Newsom*, No. 19-71493 (9th Cir. June 19, 2019), Dkt. No. 8 (petition for writ of mandamus denied); Order, *Coleman v. Newsom*, No. 19-15006 (9th Cir. Jan. 4, 2020), Dkt. No. 35 (voluntarily dismissed); Order, *In re: Edmund G. Brown, Jr.*, No. 18-72816 (9th Cir. Oct. 18, 2018), Dkt. No. 5 (petition voluntarily withdrawn); Order, *Coleman v. Newsom*, No. 18-16445 (9th Cir. Dec. 24, 2019), Dkt. No. 45-1 (dismissed for lack of jurisdiction); Orders, *Coleman v. Brown*, No. 17-17328 (9th Cir. Nov. 28, 2018), Dkt. No. 50 (orders affirmed), (9th Cir. Dec. 31, 2018), Dkt. No. 54 (motion to stay mandate for 90 days  or until final disposition by U.S. Supreme Court granted) & (9th Cir. Feb. 14, 2019), Dkt. No. 56 (motion to lift stay of mandate granted); Order, *Coleman v. Brown*, No. 17-16080 (9th Cir. Nov. 28, 2018), Dkt. No. 70-1 (dismissed for lack of jurisdiction).

[3] Section 517 provides: "The Solicitor General, or any officer of the Department of Justice, may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in a suit pending in a court of the United States, or in a court of a State, or to attend to any other interest of the United States."

1    For these reasons, the court invites the United States Attorney General to advise the court

2    whether he will participate in this action until its conclusion, assuming the role of *amicus* at a

3    minimum.  In particular, the court invites the Attorney General to address two of the most

4    pressing issues identified above by providing:

5         (1)    The United States' position on resolving California's longstanding staffing

6                shortfalls.  *See, e.g.,* Oct. 10, 2017 Order, ECF No. 5711, at 30; ECF Nos. 7674,

7                7677.

8         (2)    The United States' position on the state's failures to comply with court-ordered

9                suicide prevention measures.  *See*  Feb. 3, 2015 Order, ECF No. 5271; Jan. 6, 2023

10               Order, ECF No. 7696.

11   The Attorney General is welcome to address any other issue the court has identified in this order,

12   or otherwise implicated by this case.

13       In accordance with the above, IT IS HEREBY ORDERED that:

14       1.  The Clerk of the Court is directed to serve a copy of this order on Phillip A. Talbert,

15   United States Attorney for the Eastern District of California, and David Shelledy, Chief, Civil

16   Division, United States Attorney's Office for the Eastern District of California, with the request

17   that they promptly provide a copy of this order to the United States Attorney General.

18       2.  The court requests a response from the United States Attorney General within thirty

19   days from the date of this order.

20       3.  The United States Attorney General is informed the court will hold a status conference

21   in this matter on **February 10, 2023 at 10 a.m.** in the event he wishes to attend or send a

22   representative to observe or speak on his behalf.

23   DATED:  January 6, 2023.

24

CHIEF UNITED STATES DISTRICT JUDGE