KRISTEN CLARKE, Assistant Attorney General
STEVEN H. ROSENBAUM, Chief
LAURA COWALL, Deputy Chief (CA Bar No. 220540)
KERRY K. DEAN, Deputy Chief (DC Bar No. 474260)
MARLYSHA MYRTHIL, Trial Attorney (NY Bar No. 4569208)

United States Department of Justice
Civil Rights Division
Special Litigation Section
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530
Telephone: (202) 532-5816
Facsimile: (202) 514-4883
Email: kerry.k.dean@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

RALPH COLEMAN, et al.,

Plaintiffs,

v.

GAVIN NEWSOM, et al.,

Defendants.

No. 2:90-cv-0520 KJM DB P

**UNITED STATES' RESPONSE TO THE COURT'S JANUARY 6, 2023 ORDER**

## PRELIMINARY STATEMENT

The United States files this response to the Court's January 6, 2023 Order, requesting the Department of Justice's participation and position on the staffing and suicide prevention issues pressing in this case. Noting the procedural limitations on the United States' participation imposed by the Civil Rights of Institutionalized Persons Act (CRIPA), 42 U.S.C. § 1997, the United States responds to the Court's questions related to the resolution of these difficult issues, which often appear in our CRIPA enforcement work.

**THE UNITED STATES' INVOLVEMENT IN THIS CASE**

The United States accepts the Court's invitation to attend the February 10, 2023 status conference, and, provide information on the United States' approach to similar issues in our conditions of confinement work, subject to CRIPA's procedural limitations.

**I. Interest of the United States**

The United States, acting through the U.S. Department of Justice, has an interest in this case because it implicates the application of CRIPA, which authorizes the Attorney General to investigate conditions of confinement in correctional facilities and bring a civil action against a State or local government that, pursuant to a "pattern or practice" of conduct, "is subjecting persons residing in or confined to an institution . . . to egregious or flagrant conditions which deprive such persons of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States." 42 U.S.C § 1997a(a). The Department's work under CRIPA includes the investigation and litigation of unlawful conditions of confinement in jails and prisons nationwide. It also includes enforcement actions that ensure compliance with court-ordered remedies to correct unconstitutional conditions.

In addition to this CRIPA enforcement work, the Department has exercised its authority pursuant to 28 U.S.C. § 517, which authorizes the Attorney General "to attend to the interests of the United States" in any case pending in federal court, by filing Statements of Interest in cases that implicate the proper interpretation and application of CRIPA and other federal statutes. To that end, the Department previously filed a Statement of Interest in this case in 2013, regarding the placement of individuals with serious mental illness in solitary confinement, *see* ECF No. 4736, and it has filed Statements of Interest in other cases raising similar issues.[1]

[1] *See, e.g.*, Statement of Interest, *Diamond v. Ward*, No. 5:20-cv-00453, ECF No. 65 (M.D. Ga. filed April 22, 2021) (Statement of Interest challenging Georgia's inadequate housing and medical treatment of transgender prisoners); Statement of Interest, *Mitchell v. Cate*, No. 2:08-cv-01196, ECF No. 4736 (E.D. Cal. filed Oct. 18, 2013) (Statement of Interest in statewide class action challenging California's policy and practice of race-based lockdown as a response to potential security threats); Statement of Interest, *Georgia Advocacy Office, et al. v. Jackson, et al.*, No. 1:19-CV-1634 (N.D. Ga. filed June 20, 2019) (Statement of Interest in a conditions of confinement case alleging Constitutional and Americans with Disabilities Act violations arising from the County's prolonged restrictive housing of female prisoners with serious mental illness in the Fulton County Jail); *G.F., et al. v. Contra Costa Cnty., et al.*, No. 3:13-cv-03667 (N.D. Cal. filed Feb. 2, 2014) (Statement of Interest in class action challenging placement of youth with disabilities in solitary confinement).

### II. CRIPA's Procedural Limitations

In its order, the Court highlighted the United States' participation in *Ruiz v. Estelle*, 679 F.2d 1115, *amended in part, vacated in part on other grounds*, 688 F.2d 266 (5th Cir. 1982), as an example of the kind of participation available to the United States in this case. Yet, the United States' involvement in *Ruiz* predated CRIPA, which imposes statutory requirements on the United States' participation in ongoing civil actions. Specifically, CRIPA does not allow the United States to intervene in civil actions challenging unconstitutional conditions of confinement in correctional facilities unless the Attorney General has first given written notice (1) identifying the alleged unconstitutional conditions found, together with supporting facts demonstrating that those conditions are pursuant to a pattern or practice, and (2) setting forth the minimum remedial measures necessary to correct those conditions. *See* 42 U.S.C. § 1997c(b)(1)(A). The Department must issue this written notice—typically in the form of a Findings Report prepared after a thorough investigation—no less than fifteen days before filing a motion to intervene. *See id.* Moreover, CRIPA requires that the Department make a reasonable, good faith effort to work with jurisdictions and agree on remedial measures that correct the constitutional violations before filing suit. *See id.* § 1997b(a)(2)(A)-(C).

These requirements, however, do not impede the ability of the United States to appear pursuant to 28 U.S.C. § 517 to assist the Court with this filing and at the upcoming February 10, 2023 status conference.

## UNITED STATES' POSITION ON THE STAFFING AND SUICIDE PREVENTION ISSUES IDENTIFIED BY THE COURT

In its January 6, 2023 Order, the Court requested the United States' position on what it considers "two of the most pressing issues" in this decades-old case: (1) "California's longstanding staffing shortfalls," and (2) "the state's failures to comply with court-ordered suicide prevention measures." ECF No. 7699 at 5. The Court also invited the United States "to address any other issue the court has identified in this order." *Id.* Given the extensive factual record, with the most recent monitoring report alone spanning thousands of pages, the United States is not in a position to provide detailed recommendations as to specific remedial measures appropriate in this

case. However, the United States can provide an overview of the remedies and enforcement action we have taken in our CRIPA corrections cases raising similar issues and will answer any further questions posed by the Court at the February 10th status conference.

## I. Overview of Remedies and Enforcement Action in CRIPA Cases

In most of the Department's CRIPA cases resulting in a consent decree or other court-ordered relief, an independent monitor surveys compliance, with procedures in place for the United States to seek enforcement remedies in the face of noncompliance. Generally, the United States first attempts to secure relief working within the cooperative process typically established by agreement and may present the court with remedial plans mutually agreed to by the parties and the Monitor. Where, as here, noncompliance persists despite such mutually agreed relief, the United States has initiated enforcement actions to secure compliance and constitutional conditions through subsequent court-ordered remedies.

These enforcement actions range from motions for specific enforcement, through motions for contempt, to—in the most severe cases—motions for receivership or a special master. *See*, *e.g.*, *United States v. Territory of the Virgin Islands* ("Virgin Islands"), Civil Action No. 1986-0265 (D.V.I. Civ. R. 2013) (motion for receivership in decades-long case resulting in new consent decree); *Jones v. Gusman*, ("Orleans Parish Jail"), Civil Action No. 2:12-cv-00859, (E.D. La. 2016) (motions for contempt and receivership); *cf. United States v. Hinds County*, ("Hinds County"), Case No. 3:16-cv-00489 (S.D. Miss. 2016) (orders of contempt and appointment of receiver entered following *sua sponte* order to show cause). In rare cases, the United States has sought fines. *See* Am. Third Supp. Permanent Inj./Judg. Order, *Melendres, et al. v. Penzone, et al.*, No. CV-07-2513-PHX-GMS, ECF No. 2830 at ¶¶ 340-42 (D. Ariz. Nov. 30, 2022) (police misconduct case under 34 U.S.C. § 12601) (ordering the imposition of fines—payable to a separate account designated to fund new positions—equivalent to three times the amount calculated by defendants to fill a single budgeted position should staff vacancies persist 60 days after the court's order).

Overall, the United States approaches noncompliance with consent decrees cumulatively, first notifying defendants of noncompliance and negotiating additional relief through stipulated

orders, then filing for contempt and further sanctions when necessary. The United States' decision whether and how to pursue enforcement varies depending on the facts of the particular case, including the level of defendants' cooperation, defendants' good faith efforts to achieve compliance, the levels of compliance and harm, and the likelihood of the jurisdiction's achieving compliance without additional court intervention. Ultimately, the United States supports the Court in utilizing all mechanisms at its disposal—including receivership, if necessary—to enforce compliance and ensure constitutional conditions in correctional facilities.

**II. Remedies to Address Persistent Understaffing**

The United States agrees that adequate staffing is essential to ensuring constitutional mental health care. *See, e.g.,* U.S. Dep't of Justice, *Investigation of the Mississippi State Penitentiary (Parchman)* 37 (2022), https://www.justice.gov/crt/case-document/file/1495956/download [https://perma.cc/5TMJ-HY5Z] ("Parchman does not have sufficient mental health staff to meet the needs of incarcerated persons with mental illness. The mental health staff currently employed are under-qualified and lack sufficient supervision and training."); *Lemire v. Ca. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1076 (9th Cir. 2013) ("Inadequate staffing can create an objective risk of substantial harm in a prison setting that is sufficient to satisfy the objective prong of the deliberate indifference test."); *Braggs v. Dunn*, 257 F. Supp. 3d 1171, 1185 (M.D. Ala. 2017) ("Mental-health and correctional staffing shortages drive inadequate treatment."). Defendants may not avoid a finding of deliberate indifference to serious mental health needs by arguing that they have made efforts to provide adequate staffing if they know those efforts have been unsuccessful. *See Braggs*, 257 F. Supp. at 1256 n.81 ("ADOC's response to the shortages of mental-health and correctional staff have been objectively insufficient, because systemic and gross deficiencies arising from understaffing have persisted and effectively denied prisoners access to adequate mental-health care."); *cf. Rasho v. Jeffries*, 22 F.4th 703, 710 (7th Cir. 2022) (concluding that defendant prison officials were not deliberately indifferent where evidence showed they made reasonable efforts to alleviate the staffing shortage). If defendants' attempts to address staffing are objectively unreasonable and insufficient, they may be found to be deliberately indifferent under the rubric established by

*Estelle v. Gamble*, 429 U.S. 97 (1976) and *Farmer v. Brennan*, 511 U.S. 825 (1994). *See Braggs*, 257 F. Supp. 3d at 1256 n.81; *see also Rasho*, 22 F.4th at 710 (reaffirming the "well-settled principle that while a single negligent act cannot support an inference of deliberate indifference, persistence in a course of action known to be ineffective can"). Where defendants are aware that their efforts have not resulted in adequate staffing to meet the needs of the prison population, they are aware of—and liable for—failing to ensure constitutional conditions of confinement. If defendants cannot provide constitutionally adequate services with their existing mental health staff, they must increase staff or reduce caseloads.

The Department has pursued a number of strategies to address the issue of understaffing in its CRIPA cases. The Department's consent decrees typically require the development of a staffing plan that outlines how many and what type of staff are needed to ensure constitutional delivery of mental health care, as well as strategies to procure that staff.[2] These strategies include targeted recruitment, partnership with local universities, and adjusting salaries to make correctional positions competitive in the face of a tight job market. In order to accomplish these strategies, prison or jail officials may need to work across agencies or with legislative bodies to obtain any legal permissions necessary to make these changes.[3]

Here, it appears that the plaintiffs and the Court have agreed with the state's own 2009 staffing plan that, if implemented, would resolve the staffing shortfalls, but the state has still not complied with this plan. *See* Order, ECF No. 7699 at 2–3. Inquiry should be made into what specific actions Defendants have taken to hire staff and comply with its own staffing plan; whether those actions are objectively reasonable; and whether Defendants have persisted in strategies over the last fourteen years that have proven to be ineffective at remedying understaffing. As demonstrated by the Department's enforcement work in *Melendres*, judicial fines can be structured to motivate compliance and ensure that any money paid goes directly to

---

[2] *See, e.g.*, Settlement Agreement, *United States v. Hinds County*, No. 3:16-cv-00489, ECF No. 8-1 at ¶ 42.a-d (S.D. Miss. filed Jul. 19, 2016), *available at* https://www.justice.gov/crt/file/883861/download [https://perma.cc/8QGG-D79F]; Agreement, *United States v. Hampton Roads Reg'l Jail Auth.*, No. 2:20-cv-00410, ECF No. 2-1 at ¶¶ 24-25, 60 (E.D. Va. Filed Aug. 5, 2020), *available at* https://www.justice.gov/crt/case-document/file/1393251/download [https://perma.cc/CX8S-P7BZ].

[3] These include, for example, changes to civil service laws, legislative budgets, and authorized salary ranges. Where applicable, this may also require working with local unions.

supporting the goal of ensuring adequate staffing levels. As noted, after years of noncompliance with the injunction's staffing requirement, the court in *Melendres* found defendants in contempt and ordered them to pay fines equivalent to three times the amount calculated by defendants to fill a single budgeted position should any staff vacancies persist 60 days after the court's order. Am. Third Supp. Permanent Inj./Judg. Order, *Melendres, et al. v. Penzone, et al.*, No. CV-07-2513-PHX-GMS, ECF No. 2830 at ¶ 340 (D. Ariz. Nov. 30, 2022). It further ordered fines for every month thereafter that the number of filled positions fell below the minimum staffing number. *Id.* These fines were ordered payable to a separate account designated to fund new positions only and could not otherwise offset the county's budget. *Id.* at 8, ¶ 345. Despite years of defendants' assertions that complying with the staffing requirements was impossible, they filled all vacancies within 60 days of the court's order. Defendant's Notice of Compliance, *Melendres, et al. v. Penzone, et al.*, No. CV-07-2513-PHX-GMS, ECF No. 2844 (D. Ariz. Jan. 6, 2023).

### III. Remedies to Address Inadequate Suicide Prevention

The substantial risk of serious harm to incarcerated people is at its apex when unconstitutional conditions lead to death. This is particularly true of inadequate suicide prevention measures. *See Lemire*, 726 F.3d at 1076 ("[A]s in most prisons, inmate suicides and violence are the primary dangers floor officers are charged with preventing."). The United States agrees with the Court that the fourteen-year delay in implementing adequate suicide prevention measures is unacceptable. *See* Order, ECF No. 7699 at 2–3. *See also* U.S. Dep't of Justice, *Investigation of the Hampton Roads Regional Jail (Portsmouth, Virginia)* 24 (Dec. 19, 2018) (quoting *Ruiz v. Estelle*, 503 F. Supp. 1265, 1339 (5th Cir. 1980), *aff'd in part and rev'd in part on other grounds*, 679 F.2d 1115 (5th Cir. 1982)), *available at* https://www.justice.gov/crt/case-document/file/1393251/download [https://perma.cc/MJ24-EBX4] ("[T]he identification, treatment, and supervision of inmates with suicidal tendencies is a necessary component of any mental health treatment program."). *See also Braggs*, 257 F. Supp. 3d at 1192 (identifying "crisis care and suicide prevention" as one of seven interrelated components of inadequate mental health care leading to a substantial risk of serious harm).

The specific remedies necessary to ensure adequate suicide prevention in this case will depend on a careful evaluation of defendants' policies and practices in CDCR facilities, and the United States ultimately defers to the Court's conclusions, including its adoption of the Special Master's reports, on this issue. Having reviewed the Special Master's latest report, ECF No. 7636, the United States can say that it has sought in its CRIPA cases many of the same types of remedies recommended by the Special Master. *Compare id.* at 10–11 with *e.g.*, Agreement to Resolve the Department of Justice's Investigation of the Hampton Roads Regional Jail, *United States v. Hampton Roads Reg'l Jail Auth.*, No. 2:20-cv-00410, ECF No. 2-1 at 14-17, 60 (E.D. Va. Filed Aug. 5, 2020), *available at* https://www.justice.gov/crt/case-document/file/1393251/download [https://perma.cc/CX8S-P7BZ] (requiring, among other relief, reforms regarding intake screening and suicide risk assessments, suicide resistant cells, observation of individuals in crisis or at risk of suicide, mental health referrals, and suicide prevention training for both correctional and healthcare staff). Because the failure to implement adequate suicide prevention measures threatens the lives of incarcerated people, the Court should utilize appropriate enforcement remedies at the Court's disposal to ensure compliance.

**CONCLUSION**

For the foregoing reasons, the United States accepts this Court's invitation to provide this brief and participate in the February 10th status conference.

Respectfully submitted,

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

ROBERT MOOSSY
Deputy Assistant Attorney General
United States Department of Justice
Civil Rights Division

STEVEN H. ROSENBAUM
Chief
Civil Rights Division
Special Litigation Section

LAURA L. COWALL
Deputy Chief

*s/Kerry Krentler Dean*
KERRY K. DEAN (DC 474260)
Deputy Chief
Civil Rights Division
Special Litigation Section
Telephone: (202) 532-5816
E-mail: kerry.k.dean@usdoj.gov

MARLYSHA MYRTHIL (NY 4569208)
Senior Trial Attorney
Civil Rights Division
Special Litigation Section
950 Pennsylvania Avenue, NW
Washington, DC 20530
Telephone: (202) 305-3454
Facsimile: (202) 514-4883
E-mail: Marlysha.Myrthil@usdoj.gov

Attorneys for the United States of America

DATED: February 6, 2023

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing was filed electronically on this 6th day of February 2023, with the Clerk of Court for the Eastern District of California using the CM/ECF System, which will send a notice of such filing to all registered parties.

*s/Kerry Krentler Dean*
KERRY K. DEAN (DC 474260)

Attorney for the United States of America