1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF CALIFORNIA
2                            --oOo--

3    RALPH COLEMAN, ET AL,        ) Docket No. 90-CV-520
                                  ) Sacramento, California
4                  Plaintiffs,    ) February 10, 2023
                                  ) 3:08 p.m.
5            v.                   )
                                  )
6    GAVIN NEWSOM, ET AL.,        ) Re: Status conference
                                  )
7                  Defendants.    )

8                    TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE KIMBERLY J. MUELLER
9                UNITED STATES DISTRICT JUDGE

10   APPEARANCES:

11   For the Plaintiffs:     ROSEN BIEN GALVAN & GRUNFELD, LLP by
                             MR. MICHAEL BIEN
12                           MS. LISA ADRIENNE ELLS
                             MS. JENNY SNAY YELIN
13                           MR. MICHAEL S. NUNEZ
                             101 Mission Street, Sixth Floor
14                           San Francisco, CA 94105

15

16       (Appearances continued next page.)

17

18

19                   JENNIFER COULTHARD, RMR, CRR
                       Official Court Reporter
20                     501 I Street, Suite 4-200
                        Sacramento, CA 95814
21                      jenrmrcrr2@gmail.com
                          (530)537-9312
22

23   Reported using mechanical steno - computer-aided transcription

24

25

```
 1   APPEARANCES (Via Zoom cont'd)

 2   For the Defendant:        OFFICE OF THE ATTORNEY GENERAL by
                               MS. ELISE THORN
 3                             1300 I Street, Suite 125
                               Sacramento, CA 94244
 4
                               MR. DAMON GRANT McCLAIN
 5                             455 Golden Gate Avenue, Suite 11000
                               San Francisco, CA 94102
 6
 7   For the Defendant:        HANSON BRIDGETT, LLP by
                               MR. PAUL B. MELLO
                               1676 N. California Blvd., Suite 620
 8                             Walnut Creek, CA 94596

 9                             MS. SAMANTHA DERIN WOLFF
                               425 Market Street, 26th Floor
10                             San Francisco, CA 94105

11   For the Neutral:          U.S. DEPARTMENT OF JUSTICE by
                               MS. KERRY KRENTLER DEAN
12                             950 Pennsylvania Ave NW
                               4CON, 10th Floor
13                             Washington, DC 20530

14   Also Present:             Special Master Matthew Lopes
                               Special Master Team Member Lindsay Hayes
15                             Secretary Jeffrey Macomber
                               Deputy Director Dr. Amar Mehta
16                             Dr. Travis Williams
                               HR Director Ms. Jacinda Muhammad
17

18

19

20

21

22

23

24

25
```

1          SACRAMENTO, CALIFORNIA, FRIDAY, FEBRUARY 10, 2023

2                              --oOo--

3       (In open court.)

4          THE CLERK:  Calling civil case 90-520, Coleman, et al.

5   v. Newsom, et al.  This is on for a status conference.

6          THE COURT:  All right.  Good morning.  Appearances for

7   plaintiffs?

8          MS. ELLS:  Good morning, Your Honor; Michael Bien,

9   Michael Nunez, Jenny Yelin and Lisa Ells for the plaintiffs.

10         THE COURT:  All right.  Good morning to all of you.

11         And for the defense?

12         MR. MELLO:  Good morning, Your Honor; Paul Mello,

13  Samantha Wolff, Elise Thorn and Damon McClain for defendants.

14         We are joined by our clients, Secretary Macomber,

15  Dr. Mehta, Dr. Williams and Ms. Jacinda Muhammad.  Thank you.

16         THE COURT:  All right.  Good morning to all of you.

17         I believe there is a representative from the United

18  States Department of Justice?

19         MS. DEAN:  Good morning, Your Honor.

20         THE COURT:  Could you please come forward and speak

21  into the microphone.

22         MS. DEAN:  Good morning, Your Honor, Kerry Krentler

23  Dean for the Department of Justice.

24         THE COURT:  All right.  Good morning to you.  Would

25  you feel comfortable sitting at the --

1          MS. DEAN:  Yes, Your Honor.

2          THE COURT:  -- the side table there?  You can pull a

3     chair forward.  Thank you.

4          I'd like the special master to identify the members of

5     his team who are present.

6          And good morning to you, Special Master Lopes.

7          MR. LOPES:  Thank you, Your Honor.  Good morning.  I

8     have with me Lindsay Hayes, who is our suicide prevention

9     expert.

10          THE COURT:  All right.  Good morning to you.  The

11    Court would like to address suicide prevention, staffing and

12    then various other matters.  Those would include just touching

13    briefly on timely transfer to in-patient care, timely transfer

14    to MHCBs, and I had a question about proceedings related to the

15    second Golding report.

16          Is there any other issue either party would like to

17    address this morning in a status conference, Ms. Ells?

18          MS. ELLS:  Nothing, Your Honor.

19          THE COURT:  Mr. Mello?

20          MR. MELLO:  No, Your Honor.

21          THE COURT:  In terms of suicide prevention, the Court

22    previously has made clear it expected full compliance with all

23    of the measures that Mr. Hayes has been recommending by the end

24    of the fifth round re-audit report.  There are still 15

25    recommendations outstanding, although the Court notes

1    meaningful progress in many of those areas.  It also notes some

2    significant problem areas.

3          The Court's plan at this point is as follows -- and I

4    would invite a brief response this morning.  The Court needs to

5    move to enforcement.  I've telegraphed that I would do that.

6    I'm ready to do that.

7          My plan would be to indicate that the final deadline

8    for full compliance is the start of the sixth round re-audit,

9    and at this point my understanding is that Mr. Hayes would

10   begin that sixth round re-audit on or about April 1st, about 60

11   days from now.  And so I would order defendants to complete

12   implementation of all outstanding recommendations so that he

13   can report compliance in that sixth re-audit report.  And from

14   the start date of that sixth re-audit, I would indicate that

15   fines would accrue starting in the amount of a thousand dollars

16   per institution per day for each incomplete recommendation

17   until compliance is demonstrated and then set the matter for

18   formal proceedings later in the year.

19         This does not address the separate suicide prevention

20   recommendations for PIPs.  That's on a separate track, in the

21   Court's mind, and I wanted to talk about that.  But so that

22   is -- that's the approach I plan to take with suicide

23   prevention, to bring proper focus, ensure that the

24   recommendations are implemented, then there's the issue of

25   sustainability, sustainability of compliance.  So given that,

1  that is the Court's plan, and here I'm following a model that

2  I've already put in place with respect to transfer of named

3  patients to acute and intermediate care facility programs.  So

4  thoughts on start date?  Any thoughts that you have at this

5  time?  My plan would be to issue an order clarifying that we're

6  now moving to enforcement.  Who's going to responded, if anyone

7  cares to respond, from plaintiff's team?

8         MS. ELLS:  Your Honor, Michael Nunez will speak for

9  the plaintiffs.

10        THE COURT:  All right.  Mr. Nunez.

11        MR. NUNEZ:  Good morning, Your Honor; Michael Nunez.

12  I'd like to express plaintiff's support for the approach that

13  the Court has outlined.  The Court ordered the defendants to

14  implement the suicide prevention measures approximately eight

15  years ago, almost exactly eight years ago at this point.  The

16  measures are reasonable, as further demonstrated recently by

17  the Department of Justice's filing demonstrating that they have

18  sought many similar types of remedies in other matters and,

19  yet, a majority of these recommendations have yet to be fully

20  implemented, despite the fact that it's been eight years.  And

21  all the while, over 200 people have committed suicide in CDCR

22  institutions during that time.

23         The plaintiffs certainly agree that it is time to move

24  towards enforcement, and we support the scheme that the Court

25  has just described.

1        I'd be happy to speak further to any points that the

2    Court would like for the plaintiffs to address, but those are

3    our sort of brief general thoughts about what the Court has

4    just laid out.

5        THE COURT:  All right.  Mr. Mello?

6        MR. MELLO:  Thank you, Your Honor.  For purposes of

7    clarification, will this Court be issuing some order by which

8    we are allowed to respond to in writing such -- I think we

9    would like the opportunity to respond in writing to such an

10   order that indicates the fines will start accruing on April

11   1st, and I think we'd like to do that for several reasons.

12   One, we just filed an updated activation schedule, and it

13   demonstrates the level of implementation and that we are

14   primarily in the monitoring and compliance phase, evaluation

15   and monitoring and compliance phase on those functions.  So I

16   guess our request would be if the Court is interested in

17   setting forth such a program that defendants be afforded the

18   opportunity to respond to any such order in writing.

19       THE COURT:  All right.  That request is noted.

20       Ms. Dean, let me just ask you -- I did review your

21   very helpful filing -- is there anything you would offer to the

22   Court on this point in the Court's stated plan?

23       MS. DEAN:  No, Your Honor.  I wouldn't presume to

24   delve into the factual record in terms of what has or hasn't

25   been done in this case.  But, as Mr. Nunez said, we have sought

1   many similar provisions, and we've worked extensively with

2   Mr. Hayes and have great faith in his recommendations, and we

3   do believe in the importance of ensuring adequate suicide

4   prevention precautions, so I believe the Department supports

5   the Court's plan.

6   　　　　THE COURT:  All right.  If the Court needed to have

7   substantive proceedings, for example, contempt proceedings, the

8   Court would invite the Department of Justice to also provide

9   filings and appear at those.  Would the Department accept that

10  invitation, can you tell me today, or would you just carry that

11  invitation back?

12  　　　　MS. DEAN:  I can certainly carry that invitation back,

13  Your Honor.  We do have some concerns given the procedural

14  requirements that have come into place for CRIPA to ensure that

15  our participation is in accordance with the CRIPA requirements,

16  but we are always open and available to file statements of

17  interest.  So to the extent that there are orders or motions

18  pending, we could file legal briefs in order to clarify the

19  legal issues that are before the Court, Your Honor.

20  　　　　THE COURT:  Understood.  And thank you for that.

21  　　　　I don't have any other questions.  Again, I've

22  reviewed the status of compliance.  I see some problem areas.

23  I see what looks like some good groundwork, assuming that

24  there's actual compliance on the ground and then compliance is

25  sustained.

1    Is there anything anyone wants to bring to my

2    attention today with respect to compliance with any of the

3    outstanding recommendations Mr. Hayes has made?

4    I think defendants have represented they think certain

5    areas not formally acknowledged by the Court have been fully

6    complied with.  I haven't made any decisions myself on that.  I

7    see some areas that appear to be suffering significantly,

8    particularly with respect to observations at 30-minute

9    intervals.  Is there anything anyone wants know before I take

10   under submission the suicide prevention enforcement matter,

11   Mr. Nunez?

12   MR. NUNEZ:  Not from the plaintiffs, Your Honor.

13   THE COURT:  All right.  Mr. Mello?

14   MR. MELLO:  Again, just that we be afforded the

15   opportunity to respond in writing to any such order to fully

16   flesh out some of these issues.  Also to point out the

17   significant improvements that have occurred.  The fact that

18   CDCR's suicide rate was 15.2 in 2021, 17.2 in 2022, which are

19   significant improvements and absolute evidence of success.

20   But, again, we'd like to be afforded the opportunity to respond

21   in writing to any such order, because the issue of compliance

22   and full compliance ongoing and monitoring warrants discussion.

23   Thank you, Your Honor.  Nothing further.

24   THE COURT:  All right.  Understood.

25   So on staffing.  The Court, in 2017, ordered

1    defendants to come in compliance with the 2009 staffing plan

2    with a 10 percent vacancy rate, and so the Court here as well

3    is prepared to move forward with enforcement.  I note the case

4    the Department of Justice brief brings to the Court's

5    attention, the *Melendres* case out of the District of Arizona.

6    In that case there were fewer vacancies; and yet, it may

7    provide a model here.

8          Here I'm interested in hearing from the parties their

9    thoughts on options available to the Court.  There are two

10   options that come to mind.  One is the *Melendres* model that is

11   order defendants to file a salary schedule for all authorized

12   mental health positions by a date certain in the near future

13   and then also order the setting aside of sufficient dollars or

14   some multiplier thereof to fund those positions if they aren't

15   funded by a date certain.

16         Another would be to impose a fine, a certain dollar

17   amount per day per position starting on a date certain until

18   all positions filled, keeping the order in place until there's

19   sustainability.

20         Are there other options the parties are aware of that

21   the Court might consider here?  I note there are significant

22   shortfalls, and this is looking system-wide, not thinking about

23   allocations per institution.  And, currently, I think the

24   number is in the range of -- it's more than 400 positions

25   vacant.  So thoughts on other options?  Who's handling this for

1    the plaintiffs?

2           MR. BIEN:  Michael Bien, Your Honor.

3           I do think that you should consider both of those

4    strategies that you mentioned, but I also think that -- I

5    looked at the data on the class recently.  We're over a third

6    now.  We're at the highest level we've ever been.  34 plus

7    percent of the total population in the prison system are now

8    Coleman class members.

9           And Your Honor started a couple of years ago, 2020, I

10   think, raising the issue of population; what does the

11   Department think about its ability to address this many people

12   with serious mental illness inside of the prison system, and

13   what steps is the Department and the governor taking to address

14   overcrowding of the Coleman class?  I think that it's important

15   that that option be addressed.  Obviously that would go hand in

16   hand with making sure that every possible step is taken to fill

17   these positions.  That means raising salaries, bonuses,

18   whatever they need to do.

19          Is there a -- there are difficulties in recruiting

20   right now, but there are always difficulties in recruiting.

21   The ultimate question, as the Department of Justice put forward

22   in its own papers, there's not -- it's not an excuse under the

23   Eighth Amendment that you're trying really hard.

24          The question is, if you cannot fill the positions

25   despite your best efforts, then you need to control the number

1    of patients.  And we feel the Department and the State is not

2    doing sufficient -- not taking sufficient steps to actually

3    control the number of patients that are in our system.

4         I think there are various strategies that we might use

5    to help with that.  What the Court had suggested earlier was,

6    you know, asking them to bring to the table what measures the

7    State is taking to control the population of prisoners with

8    serious mental illness, making sure the people are diverted up

9    front, making sure that they're released from parole and not

10   discriminated against in the parole process.  We're not asking

11   for a prisoner release order, but this topic is a necessary

12   topic to be addressed.

13        And in addition to compelling and encouraging filling

14   all positions through fines or various methods, we also think

15   the issue of population control needs to be addressed.

16        THE COURT:  I understand the point about the ratios,

17   both of the ratio of the mental health population to the

18   general population and staffing ratios for the mental health

19   population.

20        MR. BIEN:  Right.

21        THE COURT:  But is there a specific suggestion in

22   there about methods this Court can use, you know, doing what a

23   Court does?  And it is not -- keeping the focus on compliance

24   with the agreed-upon staffing plan the best way for this Court

25   to bring focus to the related issues?

JENNIFER COULTHARD - UNITED STATES DISTRICT COURT - (530)537-9312

1          MR. BIEN:  Yeah.  I think that that is correct, and I

2      think that there's one other thing that the Department of

3      Justice mentioned that I'd like to mention, which is, should

4      more of the staffing function be -- should the Court consider

5      using a receiver, either the PLATA receiver or its own

6      receiver, to the extent that the State is unable or unwilling

7      to take steps to improve salaries, benefits, working conditions

8      necessary to recruit and retain positions?  Do we need to use

9      the powers available to the Court of appointing a receiver to

10     take from the State some of those responsibilities?  So I think

11     that's another remedy that should be considered.

12          As you know, the Court has delegated certain functions

13     to the PLATA receiver, including in the areas of recruitment

14     and retention, I think credentialing, advertising.  There are

15     certain functions that are handled there.

16          I think we should consider whether there are

17     additional functions that could be delegated to the receiver

18     that would result in a more -- rapid and effective changes in

19     salary, recruiting, bonuses, things like that, that the State

20     doesn't seem to be able to handle.

21          THE COURT:  So it would be a fines plus approach?

22          MR. BIEN:  Yes.

23          THE COURT:  Understood.

24          All right.  Mr. Mello?

25          MR. MELLO:  Thank you.

1          So, initially, I would suggest that a closer look at

2    the DOJ's response is warranted.  They noted that they have not

3    done an evaluation of the system, and they noted that when they

4    take certain actions, they engage the parties, they use their

5    own experts, their own experts evaluate systems.  And with

6    respect to that particular case that Your Honor's considering,

7    that was about seven sergeants, and so I think that is a very

8    interesting case; procedurally a vastly different, not remotely

9    on all fours with the efforts of the State in this case.

10          I think that is also interesting because it talks

11    about objectively unreasonable behavior as opposed to efforts

12    to increase staffing.

13          In plaintiff's response to the draft 29th round

14    report, they suggest that the parties meet and confer and that

15    a plan be arrived at to come into compliance within a year.

16    Defendants are willing to meet and try to tackle these issues

17    together.

18          I think it's also important to note that when

19    adjudicating whether the State's conduct is objectively

20    unreasonable, it's worth noting many things, like, for example,

21    all systems, not just correctional systems, are having

22    incredible difficulties hiring and retaining mental health

23    staff.  We had the great resignation that occurred.

24          I think it's also worth noting that our staffing

25    difficulties in Coleman have ebbed and flowed over time.

1     Prior to the pandemic, the big struggles were with

2  psychiatrists, as this Court noted in previous orders.  That

3  was a major struggle, but we were very close to compliance with

4  the other categories that are in the report that was filed

5  yesterday.  Interestingly enough, those have completely

6  flipped.  And it's a function of many things.  It's a function

7  of people working at different institutions resigning to go to

8  private sector, resigning to take positions where they can work

9  completely at home.  It's multifactorial these staffing issues.

10     To your question of what efforts or what the Court's

11  next steps might be, defendants would say that they would

12  suggest that the Court take up plaintiff's suggestion that the

13  parties meet and confer and work with the special master to

14  come up with a plan, because those national shortages aren't

15  going to go away in the next 60 days.

16     Our efforts are robust, in terms of those issues,

17  and -- but if the Court is, again, interested in issuing such

18  an order that might contemplate fines or anything of that

19  nature, defendants would like the opportunity to respond to

20  that and make a record on those issues, Your Honor.

21     THE COURT:  Understood.  In terms of a compliance

22  date, Mr. Bien, did you have thoughts on -- if I were to say if

23  there's not full compliance by a date certain this is when

24  fines would start to accrue, is the 60 days completely

25  unrealistic, given the 400 positions, not withstanding the

1    history here?

2         MR. BIEN:  I do think that there needs to be a

3    motivation because there have been pending court orders, and I

4    think there needs to be a different level of attention by the

5    State to this problem, and I think that fines can be -- they

6    are not designed to punish, they're designed to motivate and to

7    incent, and I think that's what's necessary.

8         THE COURT:  So the 60 days wouldn't be unreasonable,

9    in plaintiff's view, based on what you're currently hearing

10   from the Court?

11        MR. BIEN:  Yes.  This is a 2009 plan, and there's been

12   lots of time and we can -- we, of course, are available to work

13   with defendants, but that shouldn't delay the fact that there

14   have been pending court orders, and I think that it's time to

15   do -- take measures such as fines.

16        THE COURT:  All right.  I understand, Mr. Mello, your

17   comments would suggest otherwise, but any outside date you

18   would put on the table?

19        MR. MELLO:  Again, plaintiffs asked for defendants to

20   come in compliance within a year.  That seems vastly more

21   reasonable than 60 days to me and I'm sure my clients, but I

22   don't really have anything further to say on this subject other

23   than we would like to be afforded the opportunity to speak to

24   the objectively reasonable efforts that the State has taken to

25   address these issues at a time when they're trying to expand

1     the use of providers and telepsych and we're being told on one

2     hand that we're not being successful, but on the other hand we

3     need to limit modalities and means to increase staffing.

4              So nothing further, Your Honor.

5              THE COURT:  All right.

6              Let me ask Ms. Dean, once again, anything different to

7     say on this subject of staffing?

8              MS. DEAN:  No, Your Honor.  We do understand it is a

9     difficult issue, and it is an issue that correctional agencies

10    are struggling with nationwide.  But, as we noted, it's an

11    issue that does need to be solved, so motivation is important.

12    And we think the Court should use what methods you have in

13    order to incentivize.

14             THE COURT:  All right.  Thank you.  All right.  I'll

15    issue an order on those issues. identifying the enforcement

16    method I'm going to follow and date for future proceedings in

17    terms of timely transfer to in-patient care.  I'm just noting

18    that fines are accumulating there, and my thought is to set a

19    further proceeding on that issue for July or August.  I

20    understand by then the Court will have the UNA, the unmet bed

21    needs report, which could confirm its thinking about this

22    issue.  So any thoughts on a July or August proceeding on that

23    point.  Ms. Ells?

24             Who's handling this for the plaintiffs?

25             MS. ELLS:  Yes, Your Honor.  This is Lisa Ells for the

1    plaintiffs.

2           Yes, Your Honor.  We also have noticed the uptick in

3    delayed transfers.  We don't think that it's coincidental that

4    hundreds of beds are offline in the PIPs due to poor staffing,

5    so there's no question those are related.

6           And we'd also note that I believe the population at

7    Ash right now is the lowest that it's ever been in this case.

8    So I think some of the lessons learned from the 2017

9    proceedings may need to be reinforced.

10          And I think a July timeframe would also allow for the

11   possibility of reopening those beds if defendants are able to

12   comply with this Court's orders around staffing, which should

13   also then improve timeframes, we believe.

14          So the short answer is, July or August timeframe for

15   this issue seems appropriate to us.

16          THE COURT:  All right.  Mr. Mello on this?

17          MR. MELLO:  I have no thoughts on the timing, if

18   that's the timing that the Court suggests.  Defendants will

19   work on these issues.

20          THE COURT:  All right.  Just to follow up on the

21   suicide prevention recommendations for the PIPs, I see the

22   proposed joint schedule filed on February 6th.  My plan is to

23   approve it.

24          MR. MELLO:  Thank you, Your Honor.

25          THE COURT:  So you'll see that on the docket.

1    Did plaintiffs want the Court to know anything more

2  about this issue?

3    MS. ELLS:  No, Your Honor.

4    THE COURT:  All right.

5    On timely transfer to MHCBs, my understanding, subject

6  to the unmet bed needs report, is that those transfers appear

7  to be going pretty well.  That's what I understand from the

8  special master and his team.  Does anyone think otherwise or

9  want me to hear anything on that today?  Ms. Ells?

10    MS. ELLS:  Well, Your Honor, my caveat around that is,

11  we have not reviewed the -- that particular measure in the data

12  remediation process, and I would hesitate to say that

13  everything looks good until we get through that process,

14  particularly because there were some concerns I believe raised

15  on this issue in the second Golding report.  I believe that's

16  correct.  But regardless, that is my only caveat is that, yes,

17  things do appear to be going well with respect to those

18  transfers, but I have not seen exactly how that measure is

19  reported or the methodology underlying it in the data process.

20    THE COURT:  All right.  Mr. Mello, anything on this?

21    MR. MELLO:  Nothing on this, Your Honor.

22    THE COURT:  All right.  So we can keep the issue on

23  the radar.  I know it's out there.

24    Just finally on the second Golding report, there's a

25  March status now.  Is there any reason not to advance -- I saw

 1 | filings coming in last night.  Can we advance what's being

 2 | noticed for April to the March date, Ms. Ells?

 3 | MS. ELLS:  Yes, Your Honor.  The March 24th date.  We

 4 | were unavailable for your law and motion date on the 31st,

 5 | which is why we noticed it for the April date, but the March

 6 | 24th date would work well for us.

 7 | THE COURT:  Mr. Mello?

 8 | MR. MELLO:  So we just received plaintiff's motion

 9 | last night at, I believe, 11:45 p.m., so we have not had the

10 | opportunity to determine how much is required to respond in two

11 | weeks.  So if we had additional time to respond, maybe to that

12 | 20 -- you know, in advance of the 24th, the 24th might work,

13 | but I'm sort of operating in the dark because it came in during

14 | the dark, as did our filing.

15 | THE COURT:  Understood.  Okay.  Well, meet and confer.

16 | And the Court's willing to approve a modified schedule for

17 | briefing as long as it gives the Court enough time to prepare.

18 | But let's plan to advance that motion to the same date.

19 | Anything else from the plaintiffs, Ms. Ells?

20 | MS. ELLS:  Not from the plaintiffs, Your Honor.  Thank

21 | you.

22 | THE COURT:  Mr. Mello?

23 | MR. MELLO:  No, Your Honor.

24 | THE COURT:  Ms. Dean?

25 | MS. DEAN:  No, Your Honor.

1        THE COURT:  All right.

2        Please convey my appreciation to the Attorney General,

3   and I will continue to invite your participation.

4        MS. DEAN:  Thank you.

5        THE COURT:  And you may let me know whether or not

6   that invitation is accepted.

7        Let me just ask the special master, is there anything

8   else you believe we should cover today?

9        MR. LOPES:  No, Your Honor.

10       THE COURT:  All right.  We're in recess then.  You'll

11   see my orders following up on today's hearing.  Thank you very

12   much.

13     (Concluded at 10:37 a.m.)

14

15              C E R T I F I C A T E

16

17    I certify that the foregoing is a true and correct

18   transcript of the record of proceedings in the above-entitled

19   matter.

20   _____          February 10, 2023
     JENNIFER L. COULTHARD, RMR, CRR              DATE
21   Official Court Reporter
     CA CSR#14457
22

23

24

25

JENNIFER COULTHARD - UNITED STATES DISTRICT COURT - (530)537-9312