Rob Bonta, State Bar No. 202668
Attorney General of California
Monica N. Anderson, State Bar No. 182970
Senior Assistant Attorney General
Damon McClain, State Bar No. 209508
Supervising Deputy Attorney General
Elise Owens Thorn, State Bar No. 145931
Namrata Kotwani, State Bar No. 308741
Deputy Attorneys General
  1300 I Street, Suite 125
  P.O. Box 944255
  Sacramento, CA 94244-2550
  Telephone: (916) 210-7318
  Fax: (916) 324-5205
  E-mail: Elise.Thorn@doj.ca.gov
*Attorneys for Defendants*

Paul B. Mello, State Bar No. 179755
Samantha D. Wolff, State Bar No. 240280
Kaylen Kadotani, SBN 294114
David C. Casarrubias, SBN 321994
Carson R. Niello, SBN 329970
Hanson Bridgett LLP
  1676 N. California Boulevard, Suite 620
  Walnut Creek, CA 94596
  Telephone: (925) 746-8460
  Fax: (925) 746-8490
  E-mail: PMello@hansonbridgett.com
*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>                         Plaintiffs,<br><br>v.<br><br>GAVIN NEWSOM, et al.,<br><br>                         Defendants. | 2:90-cv-00520 KJM-DB (PC)<br><br>**DECLARATION OF NICHOLAS WEBER IN SUPPORT OF DEFENDANTS' OBJECTIONS TO THE SPECIAL MASTER'S TWENTY- NINTH MONITORING REPORT ON DEFENDANTS' COMPLIANCE WITH PROVISIONALLY APPROVED PLANS, POLICIES, AND PROTOCOLS FOR EOP AND CCCMS PROGRAMS, PARTS C AND D** |

# DECLARATION OF NICHOLAS WEBER

I, Nicholas Weber, declare as follows:

1. I am an attorney with the California Department of Corrections & Rehabilitation, Office of Legal Affairs, attorneys of record for Defendant California Department of Corrections and Rehabilitation. I have personal knowledge of the facts set forth herein, except as to those stated on information and belief and, as to those, I am informed and believe them to be true. If called as a witness, I could and would competently testify to the matters stated herein.

2. On December 8, 2022, the administrative assistant to the former Secretary of the California Department of Corrections and Rehabilitation, Kathleen Allison, sent a letter via email on the Secretary's behalf to Special Master Lopes regarding data remediation and dispute resolution. I was copied on the email.

3. Attached hereto as **Exhibit A** is a true and correct copy of Secretary Allison's December 8, 2022 letter to Special Master Lopes regarding data remediation and dispute resolution.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 17th day of February, 2023, at Carmichael, California.

s/ Nicholas Weber
Nicholas Weber

# EXHIBIT A

DocuSign Envelope ID: B1C7E528-580E-4F83-B885-D28B106E1958

**STATE OF CALIFORNIA - DEPARTMENT OF CORRECTIONS AND REHABILITATION**　　　　　　　　　　**GAVIN NEWSOM, GOVERNOR**

# OFFICE OF THE SECRETARY
PO Box 942883
Sacramento, CA 94283-0001



December 8, 2022

Special Master Lopes
Pannone Lopes Devereaux and O'Gara LLC
Northwoods Office Park, Suite 215N
1301 Atwood Avenue
Johnston, RI 02919


VIA EMAIL

Re: Data Remediation – Dispute Resolution

Dear Special Master Lopes,

I write to express my extreme disappointment in the data remediation second-level dispute resolution process. These meetings are a waste of my time.

In May, you and I agreed on a process for resolving disputes arising during the data remediation process. Unfortunately the process is not being complied with and is not working. Disputes are not moving through the resolution process in a timely manner. Items that are new indicators are inappropriately being raised in dispute resolution meetings contributing to more delays. The May agreement, which is on file with the court, expressly states that new indicators do not belong in BRMR or dispute resolution.

The entire data remediation process continues to be broken. Instead of ensuring CDCR's current indicators measure what they purport to measure, too much time is spent discussing how to align CDCR's indicators with what the Special Master monitors (and what the Plaintiffs want monitored). These discussions cause unneeded and entirely avoidable conflict. But it has become clearer that you will not remediate indicators unless and until they align with your own monitoring. And in instances where CDCR's indicators do not align, these issues become "disputes" and have now been raised to my attention. That was never the intention of the data remediation process so far as I understand from the last Status Conference with Judge Mueller or our discussions that resulted in dispute resolution process.

But supposing that alignment with your monitoring were truly what is required for remediation, then you should have provided CDCR with your guidebook, business rules, sample size methodology and other necessary documents to properly understand how and what you monitor before CDCR began the arduous process of preparing nearly 150 indicators for remediation, consuming thousands of staff hours. On several occasions, dating back a number of years, my staff have asked for your monitoring guide and audit instrument. Most recently we asked for it at the November 22, 2022 second-level dispute resolution meeting. You have refused to provide it. I again ask that you please provide it so that we can stop the constant guessing game of what CDCR is being judged on. It is perplexing that the Special Master would

Special Master Lopes
Page 2

not embrace requests for transparency. The assertion that CDCR already knows what monitoring standards are applied by your team is incorrect. What we are told keeps changing, and is not transparent.

A concrete example of this lack of transparency and perpetual guessing game arose at the November 22nd second-level dispute resolution meeting during the discussion of what constitutes "staff" at an IDTT meeting. CDCR's "IDTT Staffing" indicator measures whether the assigned treatment team staff are in attendance at treatment team meetings. Your team advocated for changing this to include the patient and indicated that in your team's monitoring the patient is included. But as CDCR noted in its November 15, 2022 letter, the value of the indicator is to measure staff attendance at IDTTs. And while no one disputes that patients are an integral part of IDTTs, they are not CDCR staff and they have the right to refuse attendance.

My staff inform me that time is wasted in BRMR meetings for similar reasons. On several occasions, after my team has spent time and resources developing documentation for indicators, CDCR is informed for the first time at BRMR meetings how the Special Master would monitor an indicator. CDCR should not have to expend time and resources preparing to discuss its indicators only to finally hear that the Special Master monitors each indicator differently at the meetings.

I do not know how to reset with you. I would like discuss this under "new business" at our next second-level dispute resolution meeting, which was previously scheduled for December 6, 2022. On November 30, 2022, Deputy Special Master Walsh advised CDCR that unless we had a change of position on the second-level disputes raised on November 22, 2022, there was no need to meet on December 6th. CDCR's position has not changed and thus the December 6 meeting was cancelled. I ask that a meeting be scheduled next week at which we can discuss my concerns. If agreeable, are you available on December 16, 2022, anytime between 10:30 am and Noon or 2:30 pm and 5:00 pm PST?

Regards,

DocuSigned by:

*Kathleen Allison*

066EFE332C604AB...

Kathleen Allison
Secretary