DONALD SPECTER – 083925
STEVEN FAMA – 099641
MARGOT MENDELSON – 268583
PRISON LAW OFFICE
1917 Fifth Street
Berkeley, California  94710-1916
Telephone:   (510) 280-2621

CLAUDIA CENTER – 158255
DISABILITY RIGHTS EDUCATION
AND DEFENSE FUND, INC.
Ed Roberts Campus
3075 Adeline Street, Suite 210
Berkeley, California  94703-2578
Telephone:   (510) 644-2555

MICHAEL W. BIEN – 096891
ERNEST GALVAN – 196065
LISA ELLS – 243657
THOMAS NOLAN – 169692
JENNY S. YELIN – 273601
MICHAEL S. NUNEZ – 280535
AMY XU – 330707
CARA E. TRAPANI – 313411
MARC J. SHINN-KRANTZ – 312968
ALEXANDER GOURSE – 321631
GINGER JACKSON-GLEICH – 324454
ARIELLE W. TOLMAN – 342635
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California  94105-1738
Telephone:   (415) 433-6830

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al., <br><br> Plaintiffs, <br><br> v. <br><br> GAVIN NEWSOM, et al., <br><br> Defendants. | Case No. 2:90-CV-00520-KJM-DB <br><br> **PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTIONS TO SPECIAL MASTER'S TWENTY-NINTH ROUND MONITORING REPORT PARTS C AND D** <br><br> Judge:  Hon. Kimberly J. Mueller |

[4242814.5]

On February 7, 2023, the Special Master filed his Twenty-Ninth Round Monitoring Report for EOP and CCCMS Programs Part C, ECF No. 7715 and 7715-1, and Part D, ECF No. 7716 and 7716-1 (collectively, the "Report"). On February 17, 2023, Defendants filed objections to the Report. Defs.' Objections, ECF No. 7733 and 7733-1. Because Defendants' objections to the Report are premised on erroneous or misleading arguments, Plaintiffs requested leave to file a response to Defendants' objections, *see* Request for Leave, ECF No. 7738 (Feb. 22, 2023), which this Court granted, *see* Minute Order, ECF No. 7745 (Feb. 28, 2023). Plaintiffs urge the Court to adopt the Report in full.

## I. DEFENDANTS HAVE NOT MET THEIR BURDEN UNDER THE ORDER OF REFERENCE

Objections to the Special Master's report are governed by the Order of Reference, Paragraph C, which provides in relevant part:

> [A]ny compliance report of the special master filed in accordance with paragraph A(5) above shall be adopted as the findings of fact and conclusions of law of the court unless, within ten days-after being served with the filing of the report, either side moves to reject or modify the report. The court will entertain no objection to the report unless an identical objection was previously submitted to the special master in the form of a specific written objection in accordance with the provisions of paragraph A(5) above. The objecting party shall note each particular finding or recommendation to which objection is made, shall provide proposed alternative findings or recommendations, and may request a hearing before the court. Pursuant to Fed. R. Civ. P. 53(e)(2), the court shall accept the special master's findings of fact unless they are clearly erroneous.

Order of Reference Dkt. No. 640 at 8; *see also* Order Adopting 29th Round Report Part A, ECF No. 7608 at 2-3 (Aug. 29, 2022).[1] The Special Master's findings of fact are adopted unless "clearly erroneous." *See* ECF No. 640 at 8. "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v.*

---

[1] Page citations to documents in the ECF system are based on ECF pagination.

*U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948) (quoted in *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573 (1985)); *see also* ECF No. 7608 at 3.  "To be clearly erroneous, a decision must strike [the court] as more than just maybe or probably wrong; it must … strike [the court] as wrong with the force of a five-week-old, unrefrigerated dead fish." *McCormack v. Hiedeman*, 694 F.3d 1004, 1019 (9th Cir. 2012) (quoting *Alaimalo v. United States*, 645 F.3d 1042, 1060 (9th Cir. 2011)).

Defendants have not met their burden under the Order of Reference.  Instead, Defendants variably ask this Court to improperly wordsmith the Special Master's findings, put words in the Special Master's mouth by inserting findings he did not make, and to accept Defendants' unsupported claims rather than the Special Master's diligent factual findings based on documents provided by Defendants, on-site tours of CDCR's facilities, and interviews with Defendants' staff and members of the Plaintiff class.  The careful process outlined in the Order of Reference is designed to preclude exactly these sorts of attacks on the Special Master's careful monitoring.  Defendants' unsupported allegations are plainly insufficient to establish clear error, and the Court should adopt the Report's findings in full.

## II. DEFENDANTS' OBJECTIONS REGARDING DATA ARE MERITLESS

### A. The Report Does Not Contain Contradictory Assertions Regarding Data Remediation and Does Not Misrepresent Defendants' Position

The Court should disregard the bulk of Defendants' objections in Section II of their filing because they fail to tailor them to the Special Master's responses or propose alternative findings of fact.  *See* ECF No. 640 at 8.  Instead of stating clear, actionable objections that this Court could act upon, Defendants essentially complain that the Special Master is not doing what Defendants want him to do and vaguely request court action without filing a motion, in violation of this Court's December 24, 2020 Order.  ECF No. 7003 at 2.  For example, Defendants repeat their request "for the Special Master's guidebook, business rules, sample size methodology and other necessary documents," and assert they have "sought access to the tool for many years." ECF No. 7733 at 3-4.  Yet

they cite just two letters they sent in August and December of 2022—the latter of which Defendants are just now seeking to introduce for the first time in violation of the Order of Reference.[2]  *Id.*; *see also* ECF No. 640 at 8 (requiring objections presented to Court to be identical to those made in response to draft report).  Defendants fail to refute, or even acknowledge, the Special Master's response that "[i]n 2022, for the first time the Special Master can recall in his 15-year tenure (and after 29 rounds of monitoring over more than a quarter century), defendants formally requested a copy of the Special Master's monitoring tools."  ECF No. 7715 at 25 n.7.  Nor do Defendants propose an alternative finding in lieu of the Special Master's conclusion that their request amounts to "a fishing expedition," *id.*, made in furtherance of their litigation strategy, which it clearly is.  *See* ECF No. 7733 at 4.

Regardless, the Special Master's finding that "defendants are well aware of the scope of the Special Master's monitoring" cannot be credibly disputed.  ECF No. 7715 at 24.  The Court has previously held that Defendants' "suggestion [that] there are no clear benchmarks in this action or no 'finality on the horizon' borders on frivolous and, in any event, is entirely meritless."  July 1, 2021 Order, ECF No. 7216 at 6.  Notably, Defendants do not dispute the Report's finding that "the Special Master's team of monitors and experts provide painstakingly detailed feedback to the parties regarding the design of indicators, including relevant information regarding the scope of the Special Master's monitoring."  ECF No. 7715 at 24-25.  To the extent Defendants' objections are even proper, they stray so far from the requirements of the Order of Reference—including the clear error standard—that they should be dismissed out of hand.

The Court should also disregard Defendants' objections to the Report's summary of Defendants' position on the scope of data remediation, and its characterization that

---

[2] The Weber declaration should be struck in its entirety as improper under the Order of Reference.  *See* ECF No, 7733-1.  Defendants did not submit the letter attached as Exhibit A with their objections to the draft report, nor had Plaintiffs ever previously received it.  *See* Report, ECF No. 7715-1 & 7716-1 (attachments containing the parties' objections to the draft report and supporting materials).

[4242814.5]

3

Defendants are seeking a "rubber stamp" and that their January 7, 2022 data activation schedule "la[id] the foundation to blame any future delays on the Special Master or plaintiffs' counsel." See ECF No. 7733 at 4-6. Not only do Defendants fail to propose specific alternative findings, they fail to acknowledge the Special Master's response that "Defendants position on this point is a matter of record and the Draft Report accurately reflected the state of the record." ECF No. 7715 at 25. Moreover, the parties are currently briefing their dispute about the proper scope of the data remediation process, with a hearing scheduled for March 24, 2023. See Feb. 21, 2023 Order, ECF No. 7735 at 2; see also Pls.' Notice of Mot. & Mot. Re: Second Whistleblower Report, ECF No. 7721 at 6-12 (Feb. 9, 2023). Those proceedings are the appropriate forum to resolve this dispute, not by trying to force the issue into objections challenging the findings in the Special Master's monitoring report.

The Report provides an accurate status update to the Court on the data remediation process and does not misrepresent Defendants' position. The Court should adopt the Report in full.

### B. The Report Does Not Conflate Remediation and Certification With Data Validation and Verification

In Section III of their objections, Defendants request that the Report be amended to remove footnote 15, which literally quotes Defendants' own definitions of data validation and verification. ECF No. 7733 at 7 (quoting ECF No. 7334 at 9-10). The Court should disregard this objection because Defendants fail to address the Special Master's response that "[t]he Draft Report included this footnote … to provide context to defendants' repeated argument that they know not what is required of them to complete data remediation." ECF No. 7715 at 26. The Report also accurately states that "defendants rejected the Special Master's proposed definitions" of "data remediation" and "certification" – a fact Defendants omit in their objections. Id. The Special Master reasonably concludes that "[r]ather than attempt to force the Special Master's preferred definitions on defendants through a formal recommendation in this Report when

1  discussions among the stakeholders remained unresolved, the Special Master instead
2  provided the court with a status update." *Id*.
3        If Defendants were unsatisfied with this outcome, they could have proposed
4  alternative findings or recommendations regarding the Special Master's pending
5  definitions, and could have a requested a hearing before the Court.  ECF No. 640 at 8.
6  Alternatively, they could have followed the procedure required by this Court's
7  December 24, 2020 Order to bring a motion to the Court.  ECF No. 7003 at 2.  They did
8  none of these things.
9        Defendants cannot establish that footnote 15 (which simply quotes Defendants' own
10  prior filing) is clearly erroneous or somehow improper.  The Court should not remove it.

      **C.**    **The Report Does Not Include Outdated Characterizations of the Post-Certification Annual Review Cycle**

13        Defendants object to the Report's discussion of the Post-Certification Annual
14  Review Cycle, asserting that it is improper for the Special Master to cite Defendants'
15  September 2021 data activation filing because Defendants have revised their perspective
16  since then.  ECF No. 7733 at 8.  The fact that Defendants have allegedly revised their
17  outlook on the Post-Certification Annual Review Cycle does not render the Report's
18  citation to Defendants' prior filing misleading or improper, let alone clearly erroneous.
19  *See* ECF No. 7715 at 39 n.12 (quoting ECF No. 7334 at 36).  Nor do Defendants even
20  acknowledge the Special Master's response to their objection, which was to revise the
21  Report to specify that Dr. Potter and Dr. Cartwright are discussing the post-certification
22  review process in their regular meetings.  *See* ECF No. 7715 at 26, 47.  Ironically, that is
23  exactly what Defendants say in their objections.  *See* ECF No. 7733 at 8.  The Report
24  makes no recommendations regarding the post-certification review process, and clearly
25  states that it is still being developed—as Defendants themselves maintain.  The Report
26  provides an accurate status update regarding this aspect of the data remediation.
27  Defendants cannot establish clear error, and the Court should adopt the Report in full.
28

## III. DEFENDANTS' REMAINING OBJECTIONS ARE MERITLESS

### A. Staffing Shortage

It is now approaching eight years since the Court found that "inadequate mental health staffing levels have plagued the remedial phase of this litigation since its inception and after almost twenty years of effort this problem must be finally and fully remedied." May 18, 2015 Order, ECF 5307 at 5. In the face of contempt proceedings, Defendants ask this Court to force the Special Master to parrot in the body of his compliance report, as an uncontested fact this Court would then be adopting, Defendants' presumptive anticipated defense: their claim that a nationwide shortage of mental health professionals exists. *See* Defs' Objections, ECF 7733 at 2. Defendants also ask this Court to force the Special Master to remove his factually uncontested, inarguably true statement that "[t]ime spent training and supervising unlicensed clinicians" takes time away from clinicians' ability to focus on patient care. *Id.* at 3.

These arguments are red herrings. The difficult labor market "do[es] not relieve defendants of their constitutional obligations," and thus is irrelevant to the Special Master's compliance report. *See* Feb. 28, 2023 Order, ECF No. 7742 at 4. The Special Master acknowledged Defendants' position that a shortage exists by inserting it into a footnote of the final report. *See* Report, ECF No. 7715 at 30, fn. 9. That is more than sufficient to address that portion of Defendants' objection. As to Defendants' complaint that CDCR needs unlicensed clinicians to create a hiring pipeline, no one disputes the value of the clinical training programs in Defendants' staffing plans. Indeed, the parties all agreed to these programs as a potentially positive source of staff clinicians for Defendants. *See, e.g.,* Special Master Report on Defendants' Staffing Plans, ECF 5564, at 12 (Feb. 6, 2017) ("The Special Master agrees that the internship and fellowship programs may continue to increase the candidate pool for full-time psychiatrists and psychologists, and recommends that defendants be directed to proceed with both programs."). But that does not render clearly erroneous the Special Master's finding that training and supervising unlicensed clinicians further burdens licensed clinicians.

Defendants must stop trying to micro-manage how the Special Master characterizes the staffing crisis and instead start developing urgently needed new strategies to remedy the staffing emergency upon pain of contempt. The Court should deny Defendants' objections.

### B. Telepsychiatry

Defendants assert that the Special Master's findings about telepsychiatry are "vague and anecdotal" and that the information he provides is "unhelpful" and needs to be quantified "to provide the number of complaints and technical issues compared to the total number of telehealth encounters observed." Defs' Objections, ECF 7733 at 8-9. Defendants' objections should be rejected for many reasons.

First, in response to Defendants' objections to the draft report, in the final Report, the Special Master noted more detailed and specific accounts of the telepsychiatry problems can be found in the individual institution summaries in the Report. *See* Report ECF No. 7715 at 22.

Second, it is appropriate to report on problems with telepsychiatry in a qualitative manner rather than in a purely quantitative manner. The fact that findings are qualitative does not mean they lack merit. Indeed, the Special Master routinely reports on qualitative aspects of care. *See, e.g.*, Twenty-Eighth Round Monitoring Report, ECF No. 7074 at 101 (Mar. 5, 2021) (noting, consistent with the 26th and 27th Round Monitoring Reports, during the 28th Round the Special Master found qualitative problems with Interdisciplinary Treatment Team meetings and treatment planning); *id.* at 101-124 (reporting numerous examples including lack of meaningful team discussions, lack of clinical focus, variable participation levels among team members, lack of team cohesion, inadequate clinical case conceptualization and formulation, and inadequate treatment goals).

Third, while Defendants claim that the problems noted in the Report are anecdotal, they demonstrate a pattern of similar problems at a number of different institutions. For example, Defendants' own objections cite findings in the Special Master's report of

significant problems with connectivity being documented at six out of the 15 institutions in the EOP Report, and problems with IDTT connectivity or quality problems related to telepsychiatry at five or six of the 15 institutions; patient reports at one institution of discomfort with telepsychiatry; problems at one institution with connectivity for psychiatrists working from home; and issues at one institution with diagnostic differences linked to telepsychiatry that were identified directly by the institutions' clinicians. *See* Defs' Objections, ECF 7733 at 8-9.  More important than the quantity of observed problems is the clinical impact, which requires the experts' clinical expertise and judgement to capture.

Fourth, it is part of the clinical expertise of the Court Experts to assess problems with novel methods of delivering care like telepsychiatry—indeed that is precisely their job in service to the Court under the Order of Reference.  Their expert opinions are neither merely anecdotal nor unhelpful as Defendants assert.  Instead, their perceptions are informed by their extensive professional experience and expertise gleaned from working in multiple settings covering numerous correctional mental health systems around the nation.

Finally, in response to Defendants' objections to the draft report, in the final Report, the Special Master noted his general agreement "that more granular reporting on CDCR's use of telepsychiatry is warranted" and that he would consider Defendants' comments in preparing for the 30th Round monitoring tours.  *See* Report ECF No. 7715 at 23.  Of course, robust systemic monitoring of Defendants' use of telepsychiatry has been stymied by Defendants' own failure to deliver on longstanding promises to improve its tracking and reporting capabilities in this area.  *See* Report and Recommendation on Telepsychiatry Policy ECF No. 7682 at 64-66, 69 (noting nascent state of CDCR's tracking and reporting capabilities regarding telepsychiatry, despite 2021 promises to develop such capabilities). Defendants point to no clear error in the Special Master's factual findings, which are helpful to understand the state of telepsychiatry in CDCR.  The Court should deny Defendants' objections.

### C. Defendants' Assertions Regarding Miscellaneous "Errors"

In Section VI of their objections Defendants claim various "errors" or "inconsistent or potentially misleading statements." *See* Defs' Objections, ECF No. 7733 at 9. However, Defendants fail to identify any findings of fact that are "clearly erroneous" as required by the Order of Reference. ECF No. 640 at 8.

For example, Defendants assert the Report fails to correctly describe the inpatient referral process and thus request changes "to reflect that transfers to inpatient care are not an institutional-level issue after a referral is made." *See* Defs' Objections ECF No. 7733 at 10-11 (citing Report ECF No. 7715 at 27). But the cited portion of the Report does not make any factual findings describing the inpatient referral *process*. It simply reports compliance with transfer timelines by institution. Defendants do not dispute the Report's actual findings that patients needing inpatient care at the specified institutions faced delays past required timelines. The Special Master's summary analysis of the data is both helpful for all parties' understanding of Defendants' compliance problems and entirely consistent with prior reporting. *See, e.g.*, Twenty-Eighth Round Monitoring Report, ECF No. 7074 at 147-48 (Mar. 5, 2021); *see also* June 9, 2022 Order Adopting the 28th Round Report, ECF No. 7566 at 2. The Special Master's decision to continue breaking out transfer timeline compliance problems by institution is perfectly reasonable and certainly not clearly erroneous. The Court should deny this objection.

Similarly, Defendants assert that the Special Master misstates the Program Guide Policy on Length of Stay in a Mental Health Crisis Bed ("MHCB") because the Report allegedly "misstate[s] the policy and Defendants' compliance" by identifying the general expectation that the length of stay should not exceed ten days. *See* Defs' Objections, ECF No. 7733 at 11. The portion of the Report to which Defendants object is a short four-sentence summary identifying which institutions had average lengths of stay less than and greater than ten days. *See* Report ECF No. 7715 at 130. While Defendants ask the Court to "reject any related findings concerning noncompliance," they have not identified any in

1   the first place.[3]  ECF No. 7733 at 11.  And the Special Master's reporting is, once again,
2   entirely consistent with his prior reporting.  *See, e.g.*, Twenty-Eighth Round Monitoring
3   Report, ECF No. 7074 at 149 (Mar. 5, 2021).  In reporting average lengths of MHCB
4   stays, the Special Master does not ignore the Program Guide exception allowing longer
5   than ten-day stays if the chief psychiatrist or designee so authorizes, and indeed provides
6   more information including any explanations provided by the institutions.  *See, e.g.*,
7   Report ECF No. 7715 at 478 (details regarding CMC average and range in lengths of stay),
8   337 (details regarding CCWF lengths of stay and noting no reason was provided for the
9   delay), 478 (details regarding lengths of stay at MCSP, including that the primary reason
10  given for extended physical lengths of stay was medical holds), 513 (RJD, same).  When
11  an institution *averages* longer than a ten-day length of stay in the MHCB that is a sign of
12  likely problem.  This reporting is helpful, perfectly reasonable, and certainly not clearly
13  erroneous.  The Court should deny this objection.

14        Defendants further object to the Special Master's program access findings, *see* ECF
15  No. 7733 at 11, even though he made edits in response to their objections to his draft
16  report.  Specifically, Defendants object that the Special Master retained language in the
17  Report stating that "non-MHSDS incarcerated persons held more job assignments than
18  mental health caseload patients, with 3CMS patients holding more assignments than EOP
19  patients."  *Id.*; *see also* Report ECF No. 7715 at 29.  While they do not challenge the
20  accuracy of the statement, Defendants claim, with no evidence, that the Report errs by
21  failing to acknowledge that "EOP patients are less likely to accept jobs due to mental
22  illness and may instead choose EOP group treatment."  *Id*. at 11.  There is no evidence in
23  the record to support this speculation, and Defendants provide no such evidence in support
24  of their objection.  Moreover, there is no reason to think individuals in the EOP program

---

[3] Indeed, Defendants do not even bother to note the only "compliance" finding to which they originally objected was simply wrong:  As the Special Master correctly points out, the portion of the draft report Defendants quoted was in fact about the 10-day acute transfer timeline, not MHCB stays.  *See* ECF No. 7715 at 28 & n.8.

are any less interested in participating in programs and earning sentence-reducing milestone credits than other incarcerated individuals.  *See* Cal. Code Regs. tit. 15 § 3043.3 (milestone completion credit schedule).  The Court should decline to insert new findings into the Special Master's Report that he declined to make.

Defendants also object to the manner in which Part D of the Report, regarding CCCMS institutions, summarizes the findings of the Special Master's experts in their individual case reviews, based on medical record review and analysis.  *See* Defs' Objections, ECF 7733 at 12.  In particular, Defendants object that the Special Master declined to clarify the three categories of "adequate quality," "marginally adequate quality," and "inadequate quality."  *Id*. at 12.  These objections lack merit.  In conducting detailed record reviews for specific patients in the MHSDS, the Special Master's experts are utilizing their clinical judgement and professional expertise to assess the adequacy and safety of clinical care provided to individual patients.  These reviews are an extremely valuable source of specific, granular detail about the adequacy of CDCR mental health care, based on the CDCR's own treatment records.  Clinical reviews of medical records are a well-established research method and an important source of information about quality of clinical care in many settings.  *See, e.g.,* Caoimhe Madden, Sinead Lydon, et al., *Potential Value of Patient Record Review to Assess and Improve Patient Safety in General Practice: A Systemic Review*, European Journal of General Practice, Volume 24, No. 1 a 192-201 (2018) at 201, *available at* ncbi.nlm.nih.gov/pmc/articles/PMC6104614/ (noting that Patient Record Reviews, or "PRRs" "allow corrective, systematic improvements to be taken, which may help to prevent the patient from future harm" and explaining that "PRRs have been widely used within hospital settings and have been identified as a promising measure of safety in general practice.").  Notably, Defendants have not submitted evidence, based on their own clinician's review of the identified patients, claiming that any of the case reviews deemed inadequate or marginally adequate were actually adequate.  As such, there are no alternate findings of fact for this Court to consider pursuant to the Order of Reference.  ECF No. 640 at 8.  The Court should deny this objection.

## IV. CONCLUSION

For the reasons discussed above, Defendants' objections are meritless. Plaintiffs urge the Court to adopt the Report in full.

## CERTIFICATION OF ORDERS REVIEWED

Plaintiffs' counsel certifies that he reviewed the following orders relevant to this filing: ECF and Dkt. Nos. 640, 5307, 7003, 7216, 7566, 7608, 7699, 7735, 7742, and 7745.

DATED: March 1, 2023    Respectfully submitted,

ROSEN BIEN GALVAN & GRUNFELD LLP

By: /s/ Marc J. Shinn-Krantz
Marc J. Shinn-Krantz

Attorneys for Plaintiffs