ROB BONTA, State Bar No. 202668
Attorney General of California
MONICA N. ANDERSON, State Bar No. 182970
Senior Assistant Attorney General
DAMON MCCLAIN, State Bar No. 209508
Supervising Deputy Attorney General
ELISE OWENS THORN, State Bar No. 145931
NAMRATA KOTWANI, State Bar No. 308741
Deputy Attorneys General
 1300 I Street, Suite 125
 P.O. Box 944255
 Sacramento, CA 94244-2550
 Telephone: (916) 210-7318
 Fax: (916) 324-5205
 E-mail: Elise.Thorn@doj.ca.gov
Attorneys for Defendants

PAUL B. MELLO, State Bar No. 179755
SAMANTHA D. WOLFF, State Bar No. 240280
KAYLEN KADOTANI, SBN 294114
DAVID C. CASARRUBIAS, SBN 321994
CARSON R. NIELLO, SBN 329970
HANSON BRIDGETT LLP
 1676 N. California Boulevard, Suite 620
 Walnut Creek, CA 94596
 Telephone: (925) 746-8460
 Fax: (925) 746-8490
 E-mail: PMello@hansonbridgett.com
Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **RALPH COLEMAN, et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**GAVIN NEWSOM, et al.,**<br><br>Defendants. | 2:90-cv-00520 KJM-DB (PC)<br><br>**DECLARATION OF AMAR MEHTA, M.D. IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION IN RESPONSE TO DECEMBER 29, 2022 ORDER RE DR. GOLDING'S SECOND WHISTLEBLOWER REPORT (ECF No. 7721)** |

1

DECLARATION OF AMAR MEHTA ISO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION IN
RESPONSE TO DEC. 29, 2022 ORDER (2:90-cv-00520 KJM-DB (PC))

19387735.7

**DECLARATION OF AMAR MEHTA**

I, Amar Mehta, declare as follows:

1.      I am the Deputy Director of the Statewide Mental Health Program for the California Department of Corrections and Rehabilitation (CDCR). Prior to this position, I was the Statewide Chief of Telepsychiatry. I have worked in CDCR since July 2013, during which time I have also served as a staff telepsychiatrist, site director for residency training, institutional clinical lead, and acting statewide Chief of Psychiatry. After medical school and internship, I attended residency in adult Psychiatry, and completed fellowships in both Child & Adolescent Psychiatry and Forensic Psychiatry. I am Board-certified in the 4 specialties of Adult, Child & Adolescent, and Forensic Psychiatry, as well as Addiction Medicine. I submit this declaration in support of Defendants' opposition to Plaintiffs' motion in response to the Court's December 29, 2022 Order regarding Dr. Golding's November and December 2022 letters to the Special Master. I have personal knowledge of the statements in this declaration and could testify to them if called to do so.

2.      I have reviewed Plaintiffs' motion in response to the Court's December 29, 2022 Order regarding Dr. Michael Golding's Second Report (Second Golding Report), as well as the Second Golding Report.

3.      I understand that Plaintiffs maintain that a culture of disdain towards the Court and the Special Master has "infiltrated" CDCR mental health leadership. I am in a position of leadership within the CDCR Mental Health Services Delivery System (MHSDS) and, put simply, Plaintiffs are incorrect. I am also aware that Plaintiffs' position is informed by the Second Golding Report, though I do not believe the Second Gold Report accurately portrays the nature of CDCR's relationship with the Court and the Special Master.

4.      It is a reality that there will always be disagreements between and among medical professionals—based on their own personal clinical judgment—in terms of what they believe is best for patient care. But to conclude that natural, routine disagreements between medical professionals regarding the delivery of care, as viewed through the lens of a single staff member,

1

19387735.7

1   equates to a culture of disdain towards the Court and the Special Master is plainly inaccurate and

2   certainly not consistent with my observations and experience.

3       5.      Similarly, I strongly disagree with Plaintiffs' characterization of the remarks made

4   by myself and Secretary Allison at a November 16, 2022, mental health leadership conference.

5   Our patients deserve to be treated with the same dignity and care as any patient in any setting. I

6   do not want our highly trained medical professionals thinking of our patients as "class members"

7   in a lawsuit, or even prisoners, but rather just patients like any other. My department is not

8   defined by our involvement in any single lawsuit; we are a healthcare delivery organization.

9   Someday, the lawsuits will be resolved, and we will continue delivering healthcare. Part of my

10  job is to prepare us for that day. My comments were expressions of appreciation to our mental

11  health clinicians who work tirelessly to improve the care of CDCR's patients. At no point were

12  any of my comments intended to disparage the Special Master team. Our medical professionals,

13  who have completed training to deliver mental healthcare, should be focused on the best delivery

14  of mental healthcare, not legal issues beyond their purview or control. That is not to suggest that

15  our staff do not need to abide by court orders – including the Program Guide. My comments were

16  to reiterate that good clinical care remains the top priority of our clinicians.

17      6.      As the Deputy Director of the Statewide Mental Health Program for CDCR, I

18  regularly work with the Special Master Team in this case. I also routinely observe other staff from

19  the mental health leadership team working with the Special Master Team. Without reservation, I

20  can state that our interactions and communications are professional, including where disputes

21  arise.  I strongly believe that CDCR, the Court, and its Special Master have a shared goal of

22  providing quality, appropriate mental healthcare to CDCR's patients, irrespective of any

23  disagreements based on individual clinical judgment.

24      7.      I also encourage anyone on my staff to reach out directly to the Special Master's

25  team with any concerns or questions. I strongly believe that there should be open lines of

26  communication between CDCR staff and the Special Master team, and have taken steps to

27  encourage such open communication.  By way of example, in April 2021, I emailed the Special

28  Master, Matty Lopes, and his deputy, Mohamedu Jones, as well as Dr. Golding, and suggested

2
DECLARATION OF AMAR MEHTA ISO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION IN
RESPONSE TO DEC. 29, 2022 ORDER (2:90-cv-00520 KJM-DB (PC))

19387735.7

1    that we set up a meeting to "have a discussion about how to ensure that there are clear, open lines

2    of communication between everyone at all times. I have absolutely no desire to interfere with this,

3    and to that end, I hoped we could set up a special channel of sorts that does not require my

4    approval (or even knowledge) if there is any concern about that causing interference with the

5    process." A true and correct copy of this April 30, 2021 email is attached as **Exhibit A.**

6    Additionally, on July 15, 2021, I sent another email to Mr. Lopes and Mr. Jones, confirming a

7    discussion I had with Mr. Jones earlier that day. As was stated during that meeting, "[i]f there is

8    an issue that Dr. Golding would like to bring to the OSM's attention, he can contact Mohamedu

9    (or others) directly at any time. If he has any concerns about retaliation for raising an issue, he

10    does not have to inform me directly. However, as I am ultimately responsible for the department

11    and am doing my best to fix problems, I would appreciate it if the problems were brought to my

12    attention so that I could work to fix them, and can provide useful information when asked." A

13    true and correct copy of this July 15, 2021 email is attached as **Exhibit B.**

14         8.    I am concerned that Plaintiffs seem to apply one employee's perspective to the

15    entire CDCR mental health leadership team "and possibly the entire department." In the Second

16    Golding Report, Dr. Golding states that "information from the Court is known by almost none of

17    the staff," and "[o]ur clinicians see these court-ordered process as inconveniences and hardships."

18    (Second Golding Report at 166-167.) But these conclusory generalizations are not reflective of

19    the culture within CDCR mental health leadership that I observe in my colleagues on a daily

20    basis. In fact, since at least July of 2020, CDCR has widely disseminated the call-in information

21    for the proceedings in this case within CDCR to ensure that information from the Court is

22    available to all staff. And CDCR recently independently requested that the call-in information

23    continue to be made available for the public so that CDCR staff can listen to the court

24    proceedings after the parties returned to in-person conferences. These are just a few of many

25    examples of how CDCR is supportive of ensuring that its mental health professionals stay

26    apprised of the court-ordered mandates in this case. It also makes clear the importance of the

27    Court's remedial orders and the ongoing obligation to provide quality and appropriate mental

28    healthcare to patients.

3

DECLARATION OF AMAR MEHTA ISO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION IN
RESPONSE TO DEC. 29, 2022 ORDER (2:90-cv-00520 KJM-DB (PC))

19387735.7

9.      Compliance with court-ordered mandates is not optional, nor has CDCR mental health leadership indicated to staff that compliance with court-ordered mandates is optional. Instead, everything that CDCR has done has been in furtherance of the shared goal of doing what is best for patient care, including compliance with court-ordered mandates. In many cases, CDCR mental health leadership works with Plaintiffs and the Special Master team for clarification and input on how to operationalize orders.  Though we may disagree with different interpretations of orders and policies, our disputes are professional and respectful. That CDCR presents their expert clinical position on topics and vigorously defends that position, in a respectful and professional manner, does not equate to disdain towards the Court and the Special Master team.

10.      In addition, Plaintiffs' argument that CDCR sidelines its psychiatrists – including Dr. Golding or other headquarters and regional clinical psychiatrists – is easily demonstrated to be incorrect. CDCR psychiatrists, including myself, are valued team members and deeply involved in the headquarters and regional decision-making process. In addition to Dr. Golding, various of the following psychiatrists at the headquarters and regional levels are invited to participate in weekly meetings for pre-stakeholder internal review, pre-BRMR internal review, BRMR, CAPC, and extra or impromptu meetings as needed:  Melanie Gonzalez, Navreet Mann, Al Bunn, Lisa Scott-Covello, Erick Rizzotto, Toni Martello, Sophia Le, Nicole Morrison, Devin Stroman, Jake Adams, and Amar Mehta. The invitations appear on their calendars as a recurring invite, and all are encouraged to attend. Those recurring invitations include embedded links to each meetings' agenda, providing psychiatry with reasonable notice about upcoming policy and data issues.

11.      Plaintiffs have access to and should note the BRMR attendee list, which has been openly discussed before the Court in the context of whether there were too many participants in the meetings. The revised list currently still contains all of these headquarters and regional psychiatrists, and others may be included or designated at any time without requiring notice or specific permission.

12.      Multiple psychiatrists are invited to internal and external meetings, including Dr. Golding and multiple psychiatrists that report directly to him.

4

DECLARATION OF AMAR MEHTA ISO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION IN RESPONSE TO DEC. 29, 2022 ORDER (2:90-cv-00520 KJM-DB (PC))

19387735.7

13.     Psychiatrists at CDCR are provided with shared information on which to comment with as much advance notice as any other mental health staff member, including information concerning policies that may not directly relate to psychiatry. CDCR's internal systems retain logs showing that policies and memoranda have been routed through psychiatry, and other staff, prior to release. CDCR retains countless revisions to and drafts of policies and memorandum by psychiatrists, including documents that have originated from the headquarters psychiatry team itself.

14.     As a psychiatrist board-certified in four different specialties, I was a highly active member of the headquarters psychiatry team myself for over a year, prior to becoming Deputy Director of the Statewide Mental Health Program. I continue to maintain close relationships with all members of the psychiatry team. I value their input and insight and routinely refer items to the team for comment.

15.     In my role as Deputy Director, I more than doubled the size of Dr. Golding's team, increasing the number of Senior Psychiatrist Specialists from four to eight, including four regional clinical psychiatrists that assist him with monitoring the institutions, and an Associate Governmental Program Analyst that supports and reports directly to him.

16.     CDCR has also established the position of Assistant Deputy Director of Psychiatry Services, which was recently filled by Dr. Erick Rizzotto. Dr. Rizzotto has worked at CDCR institutions since July of 2014, including as the Chief Psychiatrist over San Quentin's Psychiatric Inpatient Program, where he has gained invaluable personal experience and leadership skills. Contrary to Plaintiffs' assertions, CDCR psychiatrists, from both the headquarters and regional levels, are absolutely integrated into daily decision-making and are valued team members.

17.     Plaintiffs' characterization of CDCR's mental health leadership team as indifferent or even opposed to patient care is misguided and unfair to the medical professionals, including myself, who have chosen to devote our careers to caring for CDCR's mental health patients. I care deeply about CDCR's mental health patients, and patient care has always been the priority in the department during my tenure. Notwithstanding the nationwide shortage of mental healthcare professionals, and aggressive recruiting efforts by other (private) healthcare systems, we still

DECLARATION OF AMAR MEHTA ISO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION IN
RESPONSE TO DEC. 29, 2022 ORDER (2:90-cv-00520 KJM-DB (PC))

19387735.7

1  choose to work at CDCR every day. I believe suggestions otherwise are simply wrong,

2  demoralizing, and negatively impact retention and recruitment.

3

4        I declare under penalty of perjury under the laws of the United States of America that the

5  foregoing is true and correct.

6        Executed on this 2nd day of March, 2023, at San Quentin, California.

7

8                                        /s/ Amar Mehta, M.D.
                                         Amar Mehta, M.D.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

19387735.7

# Exhibit A

| | |
|---|---|
| **From:** | Mehta, Amar@CDCR <Amar.Mehta@cdcr.ca.gov> |
| **Sent:** | Friday, May 7, 2021 8:36 AM |
| **To:** | mjones (mjones@pldolaw.com); Lopes Matthew; Golding, Michael@CDCR |
| **Subject:** | Re: Meeting next Monday, 5/10/21? |

I'll shoot out an invite for 9:30-10 on Monday 5/10/21 morning; let me know if you are unable to attend (sometime today--Friday--if possible), and I can move it pretty much anywhere on Monday that's needed. Thanks!

--a

---

**From:** Mehta, Amar@CDCR
**Sent:** Friday, April 30, 2021 9:01 PM
**To:** Lopes Matthew <mlopes@pldolaw.com>; mjones (mjones@pldolaw.com) <mjones@pldolaw.com>; Golding, Michael@CDCR <Michael.Golding@cdcr.ca.gov>
**Subject:** Meeting next Monday, 5/10/21?
Hello,
I was just on my way out the door for the week but I wanted to check everyone's availability in advance for a 30-minute meeting on Monday, 5/10/21, for the 4 of us? (Matty, Mohamedu, Michael, me.) Matty & I spoke late (very late!) on Friday, and I would greatly appreciate the opportunity to get together and have a discussion about how to ensure that there are clear, open lines of communication between everyone at all times. I have absolutely no desire to interfere with this, and to that end, I hoped we could set up a special channel of sorts that does not require my approval (or even knowledge) if there is any concern about that causing interference with the process.
I'd also like to take the chance to introduce the idea of a joint project that could be a positive thing for all involved in this case, including the patients. This may take some shared discussion and defining over time, but I would like to start the conversation and consider a new model like this in recognition of Dr. Golding's strengths and his ability to have a positive impact on this case.
I can make myself available **anytime on Monday 5/10/21 other than 2-2:30pm California time**. Thanks, and Looking forward to it!
--a

# Exhibit B

| | |
|---|---|
| **From:** | Mehta, Amar@CDCR <Amar.Mehta@cdcr.ca.gov> |
| **Sent:** | Thursday, July 15, 2021 7:17 PM |
| **To:** | mjones (mjones@pldolaw.com); mlopes@pldolaw.com |
| **Subject:** | Checking In |

Hello,

As we spoke about today Mohamedu, I just wanted to check in with you and Matty about our meeting with Dr. Golding, given his recent concerns and allegations. He continues to state that he does not understand the circumstances around which he is able to contact members of the OSM. I thought our meeting was very clear, and wanted to confirm our shared understanding of that conversation. I'd considered carefully how to be as clear as possible with my message, so this should be pretty close to verbatim what I said in our meeting:

If there is an issue that Dr. Golding would like to bring to the OSM's attention, he can contact Mohamedu (or others) directly at any time. If he has any concerns about retaliation for raising an issue, he does not have to inform me directly. However, as I am ultimately responsible for the department and am doing my best to fix problems, I would appreciate it if the problems were brought to my attention so that I could work to fix them, and can provide useful information when asked.

Does that sound like a good summary of what was discussed?

Thank you for your time and feedback! As always, let me know if there's anything I can do,
--a