| | |
|---|---|
| ROB BONTA, State Bar No. 202668<br>Attorney General of California<br>MONICA N. ANDERSON, State Bar No. 182970<br>Senior Assistant Attorney General<br>DAMON MCCLAIN, State Bar No. 209508<br>Supervising Deputy Attorney General<br>ELISE OWENS THORN, State Bar No. 145931<br>NAMRATA KOTWANI, State Bar No. 308741<br>Deputy Attorneys General<br>  1300 I Street, Suite 125<br>  P.O. Box 944255<br>  Sacramento, CA 94244-2550<br>  Telephone: (916) 210-7318<br>  Fax: (916) 324-5205<br>  E-mail: Elise.Thorn@doj.ca.gov<br>*Attorneys for Defendants* | HANSON BRIDGETT LLP<br>PAUL B. MELLO, SBN 179755<br>SAMANTHA D. WOLFF, SBN 240280<br>KAYLEN KADOTANI, SBN 294114<br>DAVID C. CASARRUBIAS, SBN 321994<br>CARSON R. NIELLO, SBN 329970<br>1676 N. CALIFORNIA BLVD., SUITE 620<br>WALNUT CREEK, CALIFORNIA 94596<br>TELEPHONE: 925-746-8460<br>FACSIMILE: 925-746-8490<br>*Attorneys for Defendants* |

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

**SACRAMENTO DIVISION**

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>GAVIN NEWSOM, et al.<br><br>    Defendants. | Case No. 2:90-CV-00520- KJM-DB<br><br>**DECLARATION OF DIANA TOCHE, D.D.S., IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION IN RESPONSE TO DECEMBER 29, 2022 ORDER RE DR. GOLDING'S SECOND WHISTLEBLOWER REPORT (ECF No. 7721)**<br><br>Judge: Hon. Kimberly J. Mueller |

**DECLARATION OF DIANA TOCHE, D.D.S.**

I, Diana Toche, D.D.S., declare as follows:

1. I am the Undersecretary of Health Care Services for the California Department of Corrections and Rehabilitation (CDCR), a position I have held since May 2014. In this role, I oversee the work of more than 1,700 clinicians in CDCR's Mental Health Services Delivery System (MHSDS), as well as dozens of clinical staff who serve in headquarters or regional roles. Immediately before this appointment, I served as CDCR's Undersecretary of Administration and Offender Services, a position I held from February 2013 to July 2015. I am a doctor of dental

1  surgery by education, training, and previously worked in private practice for two years, and for
2  seventeen years for a P.L. 93-638 Program that contracted with the Indian Health Service to
3  provide services in the state's Central Valley.  I have been employed by and have served CDCR
4  for approximately fourteen years as of February 2023.  I have reviewed Plaintiffs' motion in
5  response to the Court's December 29, 2022 Order regarding Dr. Michael Golding's second report
6  to the Special Master (Second Golding Report).  I offer this declaration in support of Defendants'
7  Opposition to Plaintiffs Motion in Response to December 29, 2022 Order Regarding Dr.
8  Golding's Second Whistleblower Report (ECF No. 7721).  I have personal knowledge of the
9  statements in this declaration and could testify to them if called to do so.

10      2.     In my current role as Undersecretary of Health Care Services, I oversee CDCR's
11  Division of Health Care Services, which includes the Mental Health Program.  This includes
12  oversight of the Director of Health Care Services (Dr. Bick) and the Deputy Director of the
13  Statewide Mental Health Program (Dr. Mehta).

14      3.     Plaintiffs' characterization of CDCR's relationship and views toward the Court and
15  Special Master team as "disdainful" is mistaken.  Defendants simply do not show contempt or a
16  lack of respect toward the Special Master or his team members.  CDCR Mental Health Leadership
17  – myself included – work closely with the Special Master team on wide range of issues, and we do
18  so professionally and collaboratively.  For instance, during COVID, we engaged early and often
19  with the Special Master team (and Plaintiffs' counsel too) to make sure that the steps we were
20  taking were in concert with their opinions.  We held over 50 meetings and small work group
21  meetings to make sure we were all on the same page.  We were respectful of all opinions and
22  worked together to address pressing concerns and issues collaboratively.

23      4.     This is not to say that there are not disagreements between my team and the Special
24  Master's team.  But I have always worked with the Special Master and his team to address these
25  issues in a professional manner.  I also believe that Defendants can and should present their
26  position on various issues and vigorously defend that position.  Our first priority is providing
27  quality patient care, and everything we do is to ensure that patients are treated appropriately for
28  their needs.  We are health care providers and we treat our patients because it is the right thing to

do and because we sincerely and deeply care about their well-being. Suggestions to the contrary are meritless and offensive to me.

5. Specifically with respect to the data remediation process, I understand that there are disagreements but I believe this is natural and to be expected given that everyone has different points of view. There may be personality clashes along the way, but professional disagreements do not equate to hostility toward the Special Master team or the court. To the contrary, my team remains professional and respectful during any such disagreements and works in good faith to resolve disputes. And it is my expectation and understanding that CDCR's Mental Health Leadership team is working collaboratively with the Special Master's team to achieve the same goal of data remediation.

6. While I can't comment on Secretary Allison's intentions in delivering her remarks at CDCR's internal Mental Health Leadership Conference, knowing the former Secretary, it is my belief she was intending to make the staff feel good about their work and to assure them that their leaders have their best interests at heart. While her exact words were unfortunately misperceived as a slight against the Special Master team, I do not believe she intended them that way.

7. In terms of Plaintiffs' contention that CDCR Mental Health Leadership believes that court orders and mandates are to be fought at every step of the way, no matter the cost to the patients – this is simply not true. Patient care is our top priority and suggestions to the contrary are wrong and distasteful. Moreover, I understand, and have stressed to my team as well, that court orders are not optional, and I reiterate the importance of the court's orders (including the Program Guide requirements) routinely. As Plaintiffs point out, I submitted a declaration to this Court in January 2020, in which I stated that "I take the Court's December 23, 2019 order seriously and the obligations that it imposes on me. In addition, I take seriously all remedial orders issued by this Court and my obligation as a Defendant in this case, and the Undersecretary of Health Care Services, to ensure that CDCR adopts programs and policies that are capable of meeting the Court's orders and providing mental health care to its patients. I also take seriously my obligation to ensure that CDCR's employees are also aware of their obligation to provide mental health care to its patients, follow CDCR's policies and programs, and follow this Court's

orders." (ECF 6451-1 at ¶ 2.) I stand by those words and believe them to be true today. Indeed, CDCR has committed to work with Plaintiffs and the Special Master to develop a training that "explains the history of the *Coleman* case, its importance, CDCR's renewed commitment and focus on patient care, and expectations for all CDCR staff." (ECF 7718 at ¶ 3, *see also id.* at ¶ 4.)

8. In my declaration, I also stated that "I will continue to work with my staff to identify additional steps and to reinforce the importance of complying with this Court's orders and providing constitutional mental health care to CDCR's patients." (ECF 6451-1 at ¶ 10.) Since the time of my declaration, I have worked hard to reiterate to all MHSDS staff the importance of all court mandates, including that CDCR is obligated to provide constitutionally adequate mental health care to patients, that the Program Guide must be followed, and the necessity and importance of Special Master monitoring. Specifically, I have taken the following action:

- I regularly participate in monthly meetings that include headquarters staff and the Secretary. The purpose of these meetings is to guide the mental health program on policy decisions and move issues along. This meeting has been continued under Secretary Macomber's leadership.

- I regularly visit institutions and engage in conversations with staff about Program Guide compliance and the need to deliver care to the patient population. Recently, Dr. Mehta and I visited California Men's Colony and California Medical Facility.

- I regularly attend the suicide summit and other all-staffing meetings where we discuss delivering quality care to patients.

- During COVID, the Mental Health leadership team was dedicated to attending all of the work group meetings and to working closely and collaboratively with the Special Master's team to ensure the delivery of care during a pandemic.

- I attend Warden's meetings, and always discuss the status of *Coleman*, including court mandates.

- I attend CEO conferences and discuss the delivery of quality care to our patients for all disciplines.

-4-    Case No. 2:90-CV-00520- KJM-DB
DECL. TOCHE SUPP. DEFS.' OPP'N RE PLTFS.' MOT. FOR CLARIFICATION

19379920.3

9. I have never received any pushback or concern from any staff member, and I am not aware of any ambiguity among my staff regarding the importance of following court mandates. Moreover, my leadership team and I continually stress that patient care is our number one priority. While people are humans and may occasionally make mistakes, it is never intentional. We know that compliance is not optional, and we do our very best every day to ensure the court's mandates are met and quality patient care is provided.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct. Executed in Folsom, California on March 2, 2023.

*/s/ Diana Toche, D.D.S.*
Diana Toche, D.D.S.