# Exhibit B

STATE OF CALIFORNIA —DEPARTMENT OF CORRECTIONS AND REHABILITATION                                           GAVIN NEWSOM, GOVERNOR

**OFFICE OF LEGAL AFFAIRS**
Jennifer Neill
General Counsel
P.O. Box 942883
Sacramento, CA 94283-0001



March 9, 2023


Paul Mello
Hanson Bridgett
1676 N. California Boulevard, Suite 620
Walnut Creek, CA 94596

Dear Mr. Mello:

Attached please find the California Department of Corrections and Rehabilitation's March 2023 quarterly Status Update for the Three-Judge Court proceeding.


Sincerely,

*Jennifer Neill*

JENNIFER NEILL
General Counsel
Office of Legal Affairs
California Department of Corrections and Rehabilitation


cc: Iram Hasan, Deputy Attorney General

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS AND REHABILITATION                    GAVIN NEWSOM, GOVERNOR



### March 15, 2023 Quarterly Update to the Three-Judge Court

On February 10, 2014, the Three-Judge Court ordered CDCR to reduce the in-state adult prison population to 137.5 percent of design capacity by February 28, 2016. (ECF Nos. 2766/5060 & 2767/5061.) Defendants first informed the Court that its population was below 137.5 percent of design capacity on February 17, 2015 (ECF No. 2838/5278), and have submitted 85 reports since then. Defendants have complied with the population cap for over eight years. On March 25, 2022, the Court granted Defendants' unopposed motion to reduce the frequency of these reports from monthly to quarterly. (ECF No. 3795/7515.) As a result, reports will be filed on the 15th of March, June, September, and December until further order of the Court.

As of March 8, 2023, the State's adult prison population is 90,934, occupying 110.9 percent of design capacity.[1] Below are updates regarding Defendants' population reduction efforts and evidence of durable compliance with the 137.5 percent benchmark. (*See* Exhibit A, attached.)

On December 6, 2022, CDCR announced that it plans to close Chuckawalla Valley State Prison by March 2025, and the following facilities in six institutions: Folsom Women's Facility (expected deactivation in January 2023), West Facility in California Men's Colony (expected deactivation in winter 2023), Facility C in Pelican Bay State Prison (expected deactivation in winter 2023), Facility A in California Rehabilitation Center (expected deactivation in spring 2023), Facility D in California Institution for Men (expected deactivation in spring 2023), and Facility D in California Correctional Institution (expected deactivation in summer 2023). Additionally, CDCR will not renew its lease with CoreCivic for California City Correctional Facility, terminating the contract in March 2024 and ending the use of that facility as a state prison.[2] The impact of these closures on CDCR's design capacity and occupancy will be reported in a subsequent status report.

### A. Update on Proposition 57 Measures:

Proposition 57, passed in November 2016, is the State's durable remedy that enacts many Court-ordered reforms, expands credit-earning opportunities, and creates a parole consideration process for nonviolent incarcerated persons who have served the full term of their primary offense in state prison. Information about these regulations can be found at https://www.cdcr.ca.gov/proposition57/. Details regarding measures CDCR implemented can be found in previously-filed monthly status reports. (*See, e.g.*, ECF No. 3769/7423 (Jan. 18, 2022).) Updated statistics showing the impact of these regulations are included below.

---

[1] As explained below, planned prison and facility closures are expected to have an impact on design capacity. This impact will be explained in a later filing.

[2] *See* Exhibit C and Cal. Dep't Corr. & Rehabilitation, *California Department of Corrections and Rehabilitation Announces the Planned Closure of Chuckawalla Valley State Prison* (Dec. 6, 2022), https://www.cdcr.ca.gov/news/2022/12/06/california-department-of-corrections-and-rehabilitation-announces-the-planned-closure-of-chuckawalla-valley-state-prison/.

1.  <u>Increased credit-earning opportunities for all incarcerated persons except the condemned and those serving life without parole sentences:</u>

    4,096 incarcerated persons released between December 1, 2022 and February 28, 2023 earned an estimated average of 189.3 days of additional credit towards their advanced release date.  This does not include incarcerated persons released from fire camps.

2.  <u>Determinately-sentenced nonviolent offender parole process:</u>

    Since July 1, 2017, CDCR has made 34,772 referrals to the Board for this parole process. The Board has reviewed 31,076 referrals on the merits as of February 28, 2023, approving 4,646 incarcerated persons for release and denying 26,430.  3,331 referrals have been closed because the Board's jurisdictional review of the incarcerated persons' criminal history and central file revealed they were not eligible for parole consideration. The remaining referrals are pending review, including those within the 30-day period for written input from incarcerated persons, victims, and prosecutors.

3.  <u>Indeterminately-sentenced nonviolent offender parole process:</u>

    Since January 2019, when CDCR began screening indeterminately-sentenced, nonviolent offenders for eligibility, CDCR has referred 3,014 incarcerated persons to the Board for a parole consideration hearing.  86 of these referrals were closed because the Board's jurisdictional review of criminal histories and central files revealed those incarcerated persons were not eligible for parole consideration.  The Board has conducted 2,581 hearings for indeterminately sentenced nonviolent offenders resulting in 641 grants, 1,679 denials, and 261 stipulations to unsuitability.  An additional 2,352 hearings were scheduled, but postponed, waived, continued, or canceled.  The remaining referrals are pending parole suitability hearings.

**B.  <u>Updates on Other Population Reduction Measures</u>:**

1.  <u>Contracting for additional in-state capacity in county jails, community correctional facilities, private prison(s), and reduction of out-of-state beds:</u>

    a.  The population of California City Correctional Facility, California's only private prison, is approximately 1,736 incarcerated persons as of March 8, 2023.[3]

    b.  The State currently has no contracted-for beds in community correctional facilities (CCFs), modified community correctional facilities (MCCFs), or Female

---

[3] On December 6, 2022, CDCR announced that it will not renew its lease with CoreCivic for the California City Correctional Facility.  The contract will terminate in March 2024.  As a result, this facility will no longer be used as a state prison.  Cal. Dep't Corr. & Rehabilitation, *California Department of Corrections and Rehabilitation Announces the Planned Closure of Chuckawalla Valley State Prison* (Dec. 6, 2022), https://www.cdcr.ca.gov/news/2022/12/06/california-department-of-corrections-and-rehabilitation-announces-the-planned-closure-of-chuckawalla-valley-state-prison/.

Community Reentry Facilities (FCRFs).[4]

    c. California no longer houses incarcerated persons out of state.[5]  The last incarcerated persons in out-of-state contract beds returned to California in June 2019.

2. <u>Expanded medical parole process for medically incapacitated incarcerated persons:</u>

The Board conducts expanded medical parole hearings for incarcerated persons referred to the Board by the head physician at their institutions.  The Board's medical parole hearing decision approving an incarcerated person for placement in a skilled nursing facility is forwarded to the California Correctional Health Care Services (CCHCS) and Receiver's Office, which place the incarcerated person in a community facility that will accept the person and enforce any restrictions imposed by the Board.  If CCHCS is unable to place the incarcerated person within 120 days of the decision, the decision expires and the person remains in CDCR custody.  Between July 1, 2014, and March 9, 2023, the Board has held 346 medical parole hearings, resulting in 236 approvals and 110 denials.  An additional 86 hearings were scheduled, but postponed, continued, or canceled.

3. <u>Parole process for elderly incarcerated persons:</u>

Under Penal Code section 3055, incarcerated persons aged 50 and above who serve at least 20 years of continuous incarceration qualify for elderly parole consideration.  Certain persons sentenced under strike-sentencing laws (Penal Code sections 667(b)-(i) or 1170.12) or convicted of first-degree murder of a peace officer are excluded from the statutory scheme, but are eligible for elderly parole consideration as set forth in the February 10, 2014 order, which covers incarcerated persons aged 60 and above who serve at least 25 years of continuous incarceration.  Previous status reports further detail these parole processes.  (*See, e.g.*, ECF No. 3769/7423 (Jan. 18, 2022).)

Since February 11, 2014, the Board has held 8,628 hearings for eligible incarcerated persons, resulting in 2,418 grants, 5,429 denials, and 781 stipulations to unsuitability.  The Board scheduled 5,178 additional hearings that were waived, postponed, continued, or canceled.

4. <u>Male community reentry programs:</u>

The State continues to refer eligible incarcerated persons for possible placement in Male Community Reentry Programs (MCRPs).  As of March 8, 2023, 610 incarcerated persons are housed in MCRP facilities the State contracts with in San Diego, Los Angeles, Kern, and Butte counties.

---

[4] Seven incarcerated people are housed at the Community Prisoner Mother Program as of March 8, 2023.  (*See* Exhibit A.)

[5] This statistic excludes incarcerated persons housed in other states under interstate compact agreements.

5. <u>Expanded alternative custody program:</u>
   The Custody to Community Treatment Reentry Program (CCTRP), the State's expanded alternative custody program for female incarcerated persons, provides a range of rehabilitative services that assist with substance use recovery, employment, education, housing, family reunification, and social support. As of March 8, 2023, 390 females are participating in the CCTRP, and are housed at facilities in San Diego, Santa Fe Springs, Bakersfield, Stockton, Sacramento, and Los Angeles.

6. <u>Incarcerated Persons Released Under Proposition 36</u>
   Proposition 36, passed in November 2012, revised the State's three-strikes law to permit resentencing for qualifying incarcerated persons whose third strike was not serious or violent. As of February 28, 2023, approximately 3,586[6] persons have been released under this measure.

7. <u>Incarcerated Persons Released Under Proposition 47</u>
   Proposition 47, passed on November 4, 2014, requires misdemeanor rather than felony sentencing for certain property and drug crimes and permits incarcerated persons previously sentenced for these reclassified crimes to petition for resentencing. As of February 28, 2023, approximately 4,759 persons have been released under this measure.

8. <u>Compassionate Release</u>
   Assembly Bill 960, approved in September 2022, amends Penal Code sections 1170 and 1170.02, and adds section 1172.2 to the Penal Code to change the criteria for compassionate release of eligible incarcerated persons. These provisions require CDCR to make a recommendation for recall or resentencing of an incarcerated person if that person is permanently medically incapacitated or has a serious and advanced illness with an end-of-life trajectory. These changes will take effect on January 1, 2023 and can be reviewed at https://leginfo.legislature.ca.gov/faces/billCompareClient.xhtml?bill_id=202120220AB960&showamends=false.

9. <u>CDCR Secretary's Authority to Make Recommendations Regarding Sentences</u>
   In August 2022, CDCR adopted permanent regulations regarding the Secretary's authority to make discretionary recommendations to a sentencing court regarding an incarcerated person's sentence under Penal Code section 1170.03. These regulations were enacted on October 1, 2022 and can be found at https://www.cdcr.ca.gov/regulations/wp-content/uploads/sites/171/2022/08/NCR_21-04_1170_FINAL.pdf. Substantially similar versions of these regulations were approved as emergency regulations effective January 1, 2020, with subsequent emergency readoptions.

---

[6] This number excludes incarcerated persons who were eligible for Proposition 36 resentencing but released in other ways (e.g. Proposition 47 resentencing or nonviolent parole process).