ROB BONTA, State Bar No. 202668
Attorney General of California
MONICA N. ANDERSON, State Bar No. 182970
Senior Assistant Attorney General
DAMON MCCLAIN, State Bar No. 209508
Supervising Deputy Attorney General
ELISE OWENS THORN, State Bar No. 145931
NAMRATA KOTWANI, State Bar No. 308741
Deputy Attorneys General
  1300 I Street, Suite 125
  P.O. Box 944255
  Sacramento, CA 94244-2550
  Telephone: (916) 210-7318
  Fax: (916) 324-5205
  E-mail: Elise.Thorn@doj.ca.gov
Attorneys for Defendants

HANSON BRIDGETT LLP
PAUL B. MELLO, SBN 179755
SAMANTHA D. WOLFF, SBN 240280
KAYLEN KADOTANI, SBN 294114
DAVID C. CASARRUBIAS, SBN 321994
CARSON R. NIELLO, SBN 329970
1676 N. CALIFORNIA BLVD., SUITE 620
WALNUT CREEK, CALIFORNIA 94596
TELEPHONE:  925-746-8460
FACSIMILE:  925-746-8490
Attorneys for Defendants

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

# SACRAMENTO DIVISION

| | |
|---|---|
| RALPH COLEMAN, et al., <br><br>  Plaintiffs, <br><br>  v. <br><br> GAVIN NEWSOM, et al. <br><br>  Defendants. | Case No. 2:90-CV-00520- KJM-DB <br><br> **DECLARATION[1] OF STEVEN CARTWRIGHT IN COMPLIANCE WITH MARCH 13, 2023 ORDER** <br><br> Judge:   Hon. Kimberly J. Mueller |

---

[1] The Court's March 13, 2023 order states: "all counsel and all principals who participate in preparation of briefing, presentation of evidence, or oral argument on the pending motion must file an affidavit attesting they have read" the documents set forth in the order. Eastern District Local Rule 101 states that an "affidavit" includes a declaration prepared in accordance with federal law. *See* 28 U.S.C. § 1746.

I, Steven Cartwright, attest that I have read all documents listed in the Court's March 13, 2023 order as required by that order. ECF No. 7757. In light of my review of those documents, I make the changes reflected below to clarify statements in Paragraphs 13 and 19 of my March 3, 2023 declaration, ECF No. 7752-1. Counsel for Defendants will file my amended declaration, which will contain the revisions to paragraphs 13 and 19 that are reflected below.

**REVISIONS**

13. The clarification order that Plaintiffs seek would not resolve the parties' actual disputes, which are: (1) <u>the appropriate scope of each provisionally approved key indicator</u> ~~which indicators are key, *i.e.*, a core metric that provides useful information on remedial requirements~~; (2) whether the underlying business rule ensures that indicators <u>properly</u> measure the <u>most salient and material provisions of the</u> Program Guide <u>and Compendium</u>; and (3) whether certain proposed changes <u>to indicators</u> are reasonable modifications, attempts to expand the remedial scope beyond ~~the key provisions of~~ the Program Guide <u>and Compendium</u> ~~compliance~~, or disguised requests for entirely new indicators.

19. Plaintiffs and Dr. Golding allege that "Defendants perversely interpreted the rules about initial clinical contacts to allow late contacts to count as compliant so long as the initial IDTT was also late." (ECF No. 7721 at 8.) As in the instances discussed above, however, Defendants discovered this issue during an internal review and independently mitigated it by revising the internal policy memorandum governing clinical contact timelines.

Over the course of several internal meetings held between July 21, July 28, and August 3, 2021, several mental health staff reviewed the controlling policy for the initial contacts. A plain language reading of the 2020 policy memorandum indicated that in some cases, a<u>n</u> ~~late~~ initial contact <u>that occurs within established Program Guide timeframes, and</u> before a late IDTT would technically comply with both the Program Guide and memorandum language. To better understand the gap, edge cases were discussed in meetings to highlight the ambiguity of the language

included in the memorandum (*e.g.*, circumstances where an initial contact on the 88th day would be considered compliant). Recognizing this issue, I also encouraged the team to quickly initiate the internal policy change process to update the 2020 memorandum.

On May 25, 2022, a draft of this memorandum was sent to Plaintiffs and the Special Master for stakeholder feedback. All parties discussed the memorandum on June 7, 2022; Plaintiffs and the Special Master did not voice any concerns against issuing this policy. On June 23, 2022, that policy was replaced with a revised memorandum titled "Contact Requirements For Patients in the Mental Health Services Delivery System Before Interdisciplinary Treatment Team Meetings, And After Discontinuation Of Medications For Correctional Clinical Case Management System And Enhanced Outpatient Program Programs." The revised language unambiguously declares late contacts non-compliant: "The psychiatrist must complete their initial evaluations within 10 working days after arrival to a Correctional Clinical Case Management System (CCCMS) program, or within 14 calendar days after arrival to an Enhanced Outpatient Program (EOP), and before the initial IDTT for all new intakes and patient transfers." A copy was provided to Plaintiffs and Special Master on June 24, 2022 for their records.

I declare under penalty of perjury that the foregoing is true and correct. Executed in Elk Grove, California, on April 6, 2023.

                                              /s/ *Steven Cartwright*
                                              STEVEN CARTWRIGHT