UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al., | No. 2:90-cv-0520 KJM DB P |
| Plaintiffs, | ORDER |
| v. | |
| GAVIN NEWSOM, et al., | |
| Defendants. | |

This matter is before the court on the Special Master's Report and Recommendation on a Final Proposed Telepsychiatry Policy, ECF No. 7682, filed December 15, 2022 (hereafter Report). The parties have each filed a response to the Report, ECF Nos. 7702 (defendants' response), 7703 (plaintiffs' response), and, with leave of court, ECF No. 7759, supplemental responses. ECF Nos. 7739 (plaintiffs), 7772 (defendants). As explained below, the court adopts the Report and approves as final the telepsychiatry policy it previously approved provisionally.

**I.   BACKGROUND**

Telepsychiatry has been part of the remedial landscape in this action since its early days and has been used to provide mental health care in California's prisons since at least 1999. ECF No. 5564 at 14. Five and a half years ago, the court ordered formalization of the use of

/////

/////

1

telepsychiatry into an addendum to the Program Guide, the remedial plan for delivery of mental health care in California's prisons. October 10, 2017 Order, ECF No. 5711, at 20-23. Specifically, the court adopted findings and recommendations in a February 2017 report by the Special Master on the status of mental health staffing and implementation of defendants' staffing plan (Staffing Report). ECF No. 5564. The Special Master recommended "continued expansion" of defendants' telepsychiatry program, subject to several caveats including:

- "Telepsychiatry should serve as a supplement for on-site psychiatry, not as a substitute and should only be utilized when institutions are unable to recruit psychiatrists to work on-site."
- The use of telepsychiatry should not relieve defendants of the obligation to continue to recruit full-time on-site psychiatrists.
- Telepsychiatry should not be used to allow on-site psychiatrists to "migrate to the comfort of remote off-site offices."
- "[T]elepsychiatry should not replace on-site psychiatry."
- Telepsychiatry is an appropriate option for inmate-patients at the Correctional Clinical Case Management System (CCCMS) level of care provided the telepsychiatrists work on-site at least twice a year and "more frequently if feasible."
- Because the efficacy of telepsychiatry for Enhanced Outpatient Program (EOP) patients is unclear, a psychiatrist should be on-site at least quarterly to treat EOP inmates.
- Telepsychiatry is not appropriate for regular use at the Mental Health Crisis Bed (MHCB) level of care; it "should only be used as a last resort or in emergency situations when an on-site psychiatrist is not available."

*Id*. at 16-17.[1] The Special Master reported that "additional data would need to be examined before

---

[1] Citations to page numbers in documents filed in the Court's Electronic Case Filing (ECF) system are to the page numbers assigned by ECF and located in the upper right hand corner of the page.

further expansion for EOP inmates could be endorsed" and that he would continue monitoring use of telepsychiatry at the EOP level of care. *Id*.

Defendants objected to the Special Master's recommended limitation on the use of telepsychiatry for inmates at EOP and higher levels of care. October 10, 2017 Order, ECF No. 5711 at 21. The court found "the evidence tendered by defendants is insufficient to demonstrate the use of telepsychiatry is appropriate for all *Coleman* class members at every level of care in the [Mental Health Services Delivery System] MHSDS" and "that the Special Master's monitoring of CDCR's use of telepsychiatry and the conclusions of his experts concerning its efficacy for class members based on that monitoring is more relevant to a determination of the appropriate use of telepsychiatry for members of the plaintiff class than" the evidence presented by defendants. *Id*. at 22-23. The court adopted the Special Master's recommendations as the basis for the telepsychiatry policy "subject to modification as appropriate as a result of ongoing monitoring of defendants' telepsychiatry program" and directed the policy to be completed and implemented within one year. *Id*. Defendants did not appeal that order.

In July 2018, the court reiterated the relevant holdings of the October 10, 2017 order, directed the Special Master to finalize the proposed telepsychiatry policy, circulate it to the parties "and obtain their responses."[2] July 3, 2018 Order, ECF No. 5850, at 4-7. On August 1, 2018, defendants appealed that order. ECF No. 5867. On August 2, 2018, the Special Master filed a proposed telepsychiatry policy addendum. ECF No. 5872. Defendants filed objections to the proposed addendum. ECF No. 5879. The court set an evidentiary hearing on the use of telepsychiatry for October 15, 2018. *Coleman v. Newsom*, 424 F.Supp.3d 925, 929 (E.D. Cal. 2019). Ten days before the hearing, the court received requests from both parties based on a whistleblower report from CDCR Chief Psychiatrist Dr. Michael Golding. *Id*. Five days later, on October 10, 2018, the court vacated the evidentiary hearing. *Id*. at 929-30. Thereafter, following

/////

---

[2] The court directed the parties, in preparing responses, to "bear in mind that the Special Master's opinions are informed and guided by a team of nationally recognized experts in correctional mental health, many of whom have served in an expert capacity for most of the twenty-three years this case has been in the remedial phase." *Id*. (citations omitted).

3

additional meetings between the parties, in December 2018 the court referred the telepsychiatry issue and other issues to settlement conference. ECF No. 7682 at 19.

On December 24, 2019, the court of appeals dismissed defendants' appeal of the court's July 2018 order for lack of jurisdiction. *Coleman v. Newsom*, 789 Fed. Appx. 38 (9th Cir. 2019). In relevant part, the court of appeals held:

> The telepsychiatry limitations articulated in the [district court's] order merely reiterate the same limitations enumerated in the district court's October 10, 2017 order, which Appellants chose not to appeal. Appellants argue that the language of the telepsychiatry limitations in the October 2017 order was permissive, so the mandatory language used in the July 2018 order imposed a new injunction. We find this argument unpersuasive. The October 2017 order was sufficiently clear that the telepsychiatry limitations were mandatory. Accordingly, the telepsychiatry limitations contained in the July 2018 order do not have the "practical effect" of granting an injunction.

*Id*. at 39 (citation omitted). The appellate court also held defendants could "obtain the relief they seek in a later appeal" pending the outcome of a trial on the question of "whether CDCR's use of telepsychiatry complies with the Eighth Amendment and, if it does, what limitations on telepsychiatry should apply." *Id*. at 40. As noted above, the court vacated the evidentiary hearing on the use of telepsychiatry. Neither party requested the hearing be reset.

Following settlement discussions, on March 25, 2020, the parties filed a stipulation and proposed order for provisional approval of an agreed-upon telepsychiatry policy. ECF No. 6517. The stipulation reflected the parties' "agreement on the terms of CDCR's telepsychiatry policy" and that it would be a "provisional policy." ECF No. 6539 at 2. The parties also agreed the "policy replaces all previous policies concerning CDCR's use of telepsychiatry, and that it will be CDCR's operative telepsychiatry policy during the provisional period, unless and until otherwise modified upon the agreement of the parties and the Special Master." *Id*. The parties agreed the Special Master would monitor the policy for a period of eighteen months. *Id*. At the end of the eighteen month period, the parties agreed to "meet and confer with the assistance of the Special Master concerning a final telepsychiatry policy" with a focus on "necessary" alterations to the provisional policy. Following a process set out in the stipulation, absent an agreement, the

/////

Special Master was to file a recommendation as to a final telepsychiatry policy. *Id*. The Special Master has filed his recommendation in the Report now before the court.

## II.  PROVISIONALLY APPROVED POLICY

The provisionally approved policy tracks the essential requirements of the October 10, 2017 order, except that telepsychiatry may replace, rather than supplement, on-site psychiatry at the CCCMS level of care subject to conditions set out in the policy. Specifically,

- At the CCCMS level of care, telepsychiatry "may replace on-site psychiatry" as long as telepsychiatrists "visit their assigned institution within 30 days of assignment" and for "at least one full working day" twice a year, during which visits "the telepsychiatrist shall participate in the IDTT, meet with necessary health care staff, and see patients face-to-face." ECF No. 6539 at 7, 9.

- At the EOP level of care telepsychiatry may supplement but not replace on-site psychiatry. *Id*. at 7. On-site psychiatrists "shall remain the preferred method of care" for EOP programs. *Id*. The absence of on-site psychiatry in an EOP program for 30 consecutive calendar days is not consistent with the provisionally approved policy; in such event, notice must be provided to the Special Master and plaintiffs and a plan provided to address the staffing issue or information provided regarding its resolution. *Id*.

- "Telepsychiatry may not be used at the MHCB level of care except as a last resort in emergency situations when an on-site psychiatrist is not assigned to the program." *Id*. at 7-8. Use of a telepsychiatrist in an MHCB unit for more than 14 consecutive calendar days is not consistent with the provisionally approved policy; in such event, notice must be provided to the Special Master and plaintiffs and a plan provided to address the staffing issue or information provided regarding its resolution. *Id*. at 8.

- "Telepsychiatry may not be used at the PIP level of care except as a last resort in emergency situations when an on-site psychiatrist is not assigned to the program." *Id*. Use of a telepsychiatrist in a PIP unit for more than 30 consecutive calendar

1 days is not consistent with the provisionally approved policy; in such event, notice
2 must be provided to the Special Master and plaintiffs and a plan provided to
3 address the staffing issue or information provided regarding its resolution. *Id*.

- Use of telepsychiatrists at the EOP, MHCB and PIP level of care requires close coordination between telepsychiatrists and other clinical staff. *Id*. at 7-9. At these levels of care, all telepsychiatrists must visit the assigned institution within 30 days of assignment, and at least one full working day quarterly thereafter. *Id*. at 9.
- At all levels of care, CDCR must continue good faith efforts to recruit and retain on-site psychiatrists. *Id*. at 7-8.

### III.   REPORT AND RECOMMENDATION AND RESPONSES

The Special Master reports areas of agreement among the parties and his experts that show the court's final approval of the telepsychiatry policy it provisionally approved, at a minimum, is warranted; the Special Master expressly recommends the court adopt the policy as final. *See* ECF No. 7682 at 25-42, 70. Plaintiffs agree with the Special Master's recommendation. ECF No. 7703, at 10. Defendants object to the Special Master's decision not to recommend adoption of a Revised Telepsychiatry Policy they proposed at the end of the eighteen-month monitoring period. *See generally* ECF No. 7702; *see also* ECF No. 7682 at 28-35.

The Special Master reports defendants' proposed Revised Telepsychiatry Policy would make the following substantive changes to the Provisionally Approved Policy:

(1) Remove the on-site psychiatrist requirement for EOP programs;

(2) Remove the "last resort in emergency situations" standard for use of telepsychiatry in MHCBs and PIPs;

(3) Decrease frequency of site visits;

(4) Allow application of the rules for cell-front contacts by on-site psychiatrists to apply to cell-front contacts by telepsychiatrists; the latter are prohibited in the Provisionally Approved Telepsychiatry Policy;

6

   (5) Modify language regarding informed consent to eliminate the requirement that patients be provided with an explanation of "conditions under which a referral is made for in person care";

   (6) Allow telepsychiatry from home / remove requirement to work from CDCR's telepsychiatry hubs;

   (7) Add language to clarify role of Night Shift telepsychiatrists, specifically that they provide "'comprehensive after-hours services" but "do not carry [MHSDS] caseloads.'" *Id*. (internal citation omitted) and

   (8) Remove requirement of continued good faith recruitment and retention of on-site psychiatrists.

ECF No. 7682 at 28 n.19, 52-64. The Special Master also reports plaintiffs propose the following changes to the provisionally approved policy:

   (1) Development of an identifier in CDCR's Electronic Health Records System (EHRS) to document telepsychiatry; and

   (2) Enhanced reporting of lack of on-site psychiatry coverage.

*Id*. at 65-66.

   The Special Master includes detailed findings regarding these ten total proposed substantive changes. *Id*. at 52-66. The Special Master did not recommend adoption of either of plaintiffs' proposed changes, *id*. at 64-66, and plaintiffs did not object to his recommendation, *see generally* ECF No. 7703. The parties devote most of their responses to the issues surrounding defendants' proposed Revised Telepsychiatry Policy. *See generally* ECF No. 7702; ECF No. 7703 at 8-25. Defendants assert the burden is on plaintiffs and the Special Master to show why defendants should not be allowed to proceed with their Revised Telepsychiatry policy, and they contend "an injunction that limits Defendants' implementation of their Revised Policy would not comport with legal standards under either the PLRA[3] or Supreme Court jurisprudence." ECF No. 7702 at 6. Plaintiffs dispute this contention, arguing that an order approving a policy as final would not in itself be prospective relief but, instead, would enforce compliance with prior orders. ECF No. 7703 at 24.

---

[3] Prison Litigation Reform Act of 1995.

## IV. ANALYSIS

As noted above, there is no cognizable dispute that the Provisionally Approved Telepsychiatry is adequate. Neither party disputes its adoption; defendants contend only that it does not go far enough.

At present CDCR's use of telepsychiatry is controlled by the court's findings in relevant provisions of its October 10, 2017 order, which imposed "mandatory" limitations on defendants' use of telepsychiatry. *Coleman v. Newsom*, 789 Fed. App'x at 39. The court would have to modify its October 10, 2017 order, and its corollary, the July 3, 2018 order, to permit defendants to implement their proposed Revised Telepsychiatry Policy. Defendants have neither filed a motion to modify those orders nor sought to reset the evidentiary hearing the court vacated. *Cf. id*. at 40 (defendants could seek further relief after outcome of hearing). The agreed-upon process for finalizing the Provisionally Approved Telepsychiatry Policy is not an appropriate process for seeking changes of the scope defendants propose. As the Special Master aptly observes

> Defendants have opted to use the process outlined in the March 27, 2020 Stipulation and Order for finalizing the telepsychiatry policy to attempt to relitigate the law of this case. The Special Master's monitoring during the provisional approval period was intended to determine the appropriateness of the Provisionally Approved Telepsychiatry Policy's terms. However, the defendants' proposal presents the Court, Special Master, and parties with an entirely different question: Whether the experience of the provisional approval period justifies adoption of defendants' substantially rewritten policy – which has not been subject to any monitoring.

ECF No. 7682 at 46. The Special Master's monitoring and the views of his experts play a central role in the court's consideration of CDCR's use of telepsychiatry to deliver mental health care to members of the plaintiff class. ECF No. 5711 at 22-23. Any proposed expansion of the telepsychiatry policy advanced without specific findings to support the expansion from the Special Master and his experts is problematic. The court cannot and will not entertain the proposal, which is widely outside the scope of the policy the Special Master was tasked with monitoring, as presented here.

Moreover, defendants misperceive the burden they carry to persuade the court to adopt their proposed Revised Telepsychiatry Policy. They erroneously contend the plaintiffs and the Special Master have the burden of demonstrating defendants' implementation of their proposed

1  Revised Telepsychiatry Policy would violate the Eighth Amendment, and that any court order
2  limiting implementation of the Revised Telepsychiatry Policy would impose an injunction that
3  runs afoul of both 18 U.S.C. § 3626(a)(1)(A)[4] and applicable Supreme Court jurisprudence.
4  Defendants are incorrect.
5      As discussed above, it is settled that the parameters for defendants' use of telepsychiatry
6  are controlled by the court's October 10, 2017 and July 3, 2018 orders.  Defendants' proposed
7  Revised Telepsychiatry Policy differs in material ways from specific provisions of these orders
8  and the policy cannot be adopted unless the court modifies those orders.  A party seeking
9  modification of a court order "bears the burden of establishing that a significant change in" facts
10 or law warrants revision of the order "and that the proposed modification is suitably tailored to
11 the changed circumstance."  *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 383-84, 393
12 (1992) (applying Rule 60(b) standard to modification of consent decree); *see also Karnoski v.*
13 *Trump*, 926 F.3d 1180, 1198 (9th Cir. 2019) (quoting *Sharp v. Weston*, 233 F.3d 1166, 1170 (9th
14 Cir. 2000)) (applying same standard to party seeking modification or dissolution of an
15 injunction); *accord Hook v. State of Ariz. Dept. of Corrections*, 972 F.23d 1012, 1016-17 (9th Cir.
16 1992) (discussing *Rufo* and holding state must follow proper procedure for seeking modification
17 of consent decree rather than "simply ignor[ing] the . . . decree").  Here, the burden is on
18 defendants to show a "significant change in circumstances" warrants modification of the
19 parameters for use of telepsychiatry the court has set and that their proposed revisions are
20 /////

---

[4] This section of the statute provides:

> a) Requirements for relief.--
>
> **(1) Prospective relief.--(A)** Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

"suitably tailored to the changed circumstance" and satisfy the requirements of the Eighth Amendment.

Absent an agreement of the parties approved by the Special Master to the proposed Revised Telepsychiatry Policy, the process the court previously approved for finalizing the Provisionally Approved Telepsychiatry Policy does not provide for seeking relief from the court's October 17, 2017 and July 3, 2018 orders. Defendants must seek relief from those two orders, if they wish to, under Federal Rule of Civil Procedure 60(b). *Cf.*, *e.g.*, *Hook* at 1016-17. They cannot ignore those orders simply because they believe the orders rest on an error of law or unduly constrain the use of telepsychiatry in the state's prisons. *See id*. They cannot ignore those orders because they believe a significant change in circumstances warrants revision. *See id*. And they cannot shift the burden to plaintiffs to "undertake litigation to enforce" the telepsychiatry policy required by those orders. *Id*. Defendants are not precluded from seeking relief from the court's October 17, 2017 and July 3, 2018 orders but they must do so in accordance with the well-established rules that govern federal practice and the orders of this court governing motion practice in this action.

**V.    CONCLUSION**

For the foregoing reasons, the court will adopt the Special Master's recommendation to adopt the provisionally approved telepsychiatry policy as final. The findings in his report from the results of that monitoring will be adopted in full. The findings in his report concerning defendants' proposed Revised Telepsychiatry Policy and plaintiffs' proposed revisions will remain in the record, as will the parties' responses to those findings.

/////
/////
/////
/////
/////
/////
/////

In accordance with the above, IT IS HEREBY ORDERED that:

1. The Special Master's December 15, 2022 Recommendation, ECF No. 7682 at 70, is ADOPTED;

2. The Provisionally Approved Telepscyhiatry Policy, ECF No. 6539 at 5-12, is adopted as FINAL;

3. The findings in the Special Master's December 15, 2022 Report, ECF No. 7682, from his monitoring of the Provisionally Approved Telepsychiatry Police are ADOPTED;

4. The findings in the Special Master's December 15, 2022 Report, concerning defendants' proposed Revised Telepsychiatry Policy and plaintiffs' proposed revisions are made a matter of record, as are the parties' responses to those findings.

IT IS SO ORDERED.

DATED: April 11, 2023.

_____
CHIEF UNITED STATES DISTRICT JUDGE