1  DONALD SPECTER – 083925
   STEVEN FAMA – 099641
2  MARGOT MENDELSON – 268583
   PRISON LAW OFFICE
3  1917 Fifth Street
   Berkeley, California  94710-1916
4  Telephone:   (510) 280-2621

5  CLAUDIA CENTER – 158255
   DISABILITY RIGHTS EDUCATION
6  AND DEFENSE FUND, INC.
   Ed Roberts Campus
7  3075 Adeline Street, Suite 210
   Berkeley, California  94703-2578
8  Telephone:   (510) 644-2555

MICHAEL W. BIEN – 096891
ERNEST GALVAN – 196065
LISA ELLS – 243657
THOMAS NOLAN – 169692
JENNY S. YELIN – 273601
MICHAEL S. NUNEZ – 280535
AMY XU – 330707
CARA E. TRAPANI – 313411
MARC J. SHINN-KRANTZ – 312968
ALEXANDER GOURSE – 321631
GINGER JACKSON-GLEICH – 324454
ADRIENNE PON HARROLD – 326640
ARIELLE W. TOLMAN – 342635
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California  94105-1738
Telephone:   (415) 433-6830

10  Attorneys for Plaintiffs

12                    UNITED STATES DISTRICT COURT

13                    EASTERN DISTRICT OF CALIFORNIA

15  RALPH COLEMAN, et al.,

16          Plaintiffs,

17      v.

18  GAVIN NEWSOM, et al.,

19          Defendants.

Case No. 2:90-CV-00520-KJM-DB

**DECLARATION OF PABLO STEWART, M.D. IN SUPPORT OF PLAINTIFFS' MOTION TO REJECT DEFENDANTS' PLAN TO PROVIDE MINIMUM TREATMENT STANDARDS FOR PSYCHIATRIC INPATIENT PROGRAMS (ECF NO. 7787) AS INADEQUATE TO REMEDY DEFENDANTS' EIGHTH AMENDMENT VIOLATIONS**

Judge:  Hon. Kimberly J. Mueller

[4264789.12]

**INTRODUCTION**

1.     I am a board-certified psychiatrist and Clinical Professor at the John A. Burns School of Medicine, University of Hawaii Department of Psychiatry.  My curriculum vitae is attached hereto as **Exhibit A**.

2.     I have over 35 years of experience in correctional mental health care, including serving as the court's expert in class action cases challenging the provision of mental health care to incarcerated persons.  After medical school, I completed my psychiatric residency at the University of California, San Francisco ("UCSF") in part as a Primary Therapist and Medical Consultant for the adult inpatient units at San Francisco General Hospital and the San Francisco Veterans Affairs Medical Center, including service at the VA's Substance Abuse Inpatient Unit.  During my residency, I also practiced at several community health programs.  Between 1986 and 1990, I was the Senior Attending Psychiatrist for the Forensic Unit of UCSF, which was located at San Francisco General Hospital.  In that capacity, I had administrative and clinical responsibility for a 12-bed maximum-security psychiatric ward and worked as the liaison with the Jail Psychiatric Services of the City and County of San Francisco.  Between August 1988 and December 1989, I was the Director of Forensic Psychiatric Services for the City and County of San Francisco.  In that capacity, I had administrative and clinical oversight responsibility for the psychiatric care provided to the incarcerated person population in San Francisco at both the county jails and in the locked inpatient treatment unit at San Francisco General Hospital.

3.     From September 2006 to the present, I have served as a Clinical Professor at the University of California, San Francisco, School of Medicine.  From 1990 through 1996, I served in various medical leadership posts at the Department of Veterans Affairs Medical Center, San Francisco, including as Chief of the Substance Abuse Inpatient Unit, Chief of the Intensive Psychiatric Community Care Program, focusing on services for homeless veterans, and Medical Director of the VA's Comprehensive Homeless Center.

4.     From 1996 to the present, I have served as a psychiatric consultant to

1  governmental and private agencies on a variety of psychiatric, forensic, substance abuse

2  and organizational issues, with a focus on correctional psychiatry. I have served as a

3  psychiatric expert or consultant to various federal courts, the United States Department of

4  Justice, and other organizations evaluating the provision of mental health treatment and

5  implementing remedial decrees covering the provision of mental health care in correctional

6  institutions. From May 2016 to June 2022, I have served as the court-appointed monitor in

7  *Rasho v. Baldwin*, No. 1:07-CV-1298 (C.D. Ill.).

8      5.      I estimate that I have treated several thousands of psychiatric inpatients in

9  both community and correctional settings over the course of my career. In addition, in my

10  monitoring work, I have closely observed the care provided psychiatric inpatient programs

11  in correctional institutions in other states, including Illinois and Arizona. In monitoring

12  the implementation of the *Rasho* settlement agreement in Illinois over the past seven years,

13  I observed the care provided to patients in the custody of the Illinois Department of

14  Corrections at the Elgin Mental Health Hospital on at least ten occasions.

15      6.      I have submitted a number of declarations in connection with *Coleman v.*

16  *Newsom* on the adequacy of mental health care in the California Department of

17  Corrections and Rehabilitation ("CDCR"), including two earlier this year on

18  telepsychiatry. *See* ECF No. 7703-1; ECF No. 7739. I also have conducted numerous

19  tours of CDCR prisons in the last 25 years. My first experience with CDCR was in the

20  mid-1990s, when I spent several years monitoring mental health care at the California

21  Medical Facility ("CMF"), a CDCR prison in Vacaville, California, as a court expert in the

22  *Gates v. Deukmejian* case. In 2013, I toured six prisons as Plaintiffs' expert witness in

23  opposing the termination motion filed by Defendants in this matter. I also provided

24  several declarations and gave testimony in several live hearings before Judge Karlton in

25  support of subsequent enforcement motions filed by Plaintiffs later in 2013, after the

26  termination motion was denied. I also testified on behalf of Plaintiffs in the overcrowding

27  proceedings that took place in this case starting in around 2007. In the overcrowding and

28  termination phases of this case alone, I have spoken with well over 150 CDCR patients,

1  toured numerous prisons, and reviewed scores of patient medical and custody records in

2  CDCR.  Most recently, on April 14 and 15, in preparation of this report, I toured the

3  Psychiatric Inpatient Programs ("PIPs") at CMF, California Health Care Facility

4  ("CHCF"), and San Quentin ("SQ") and spoke with six patients across those three PIPs.

5         7.     My publications and presentations address a broad range of treatment and

6  assessment problems for mentally ill patients in both community and institutional settings.

7  In compliance with Rule 26(a)(2)(B), my CV at Exhibit A lists my publications authored at

8  pages 24 through 25.

9         8.     Attached hereto as **Exhibit B** is a list of cases in which I have testified at

10  trial or deposition during the previous 4 years.

11         9.     My compensation to be paid for study and testimony in this case is $350 per

12  hour.

13         10.    In addition to the patient records and suicide reports detailed below, in

14  preparing this report, I have reviewed the following documents:

15    •   Defendants' proposed treatment standards for the PIPs and plan to provide

16         and track adherence to those standards, which were filed with the Court on

17         March 28, 2023.  ECF No. 7787.

18    •   The compiled responses to Defendants' survey of state correctional systems,

19         which were shared with Plaintiffs on February 22, 2023.

20    •   The Special Master's *Twenty-Ninth Monitoring Round Report – Part A:*

21         *Special Master's Monitoring Report on the Psychiatric Inpatient Programs*

22         *for Mental Health Patients of the California Department of Corrections and*

23         *Rehabilitation*, which was filed with the Court on May 17, 2022.  ECF No.

24         7555.  The Court adopted the factual findings of the report in full on August

25         29, 2022.  ECF No. 7608.

26    •   Defendants' PIP staffing report from September and October 2022,

27         submitted to Plaintiffs in November and December 2022 as part of the

28         monthly *Coleman* package.

[4264789.12]

4

1

## SUMMARY OF KEY OPINIONS IN THIS MATTER

2      11.    I have been asked to give my opinion regarding CDCR's proposed treatment

3  standards for its Psychiatric Inpatient Programs (PIPs).  My opinions are summarized

4  below:

5    • CDCR's proposed minimum treatment standards for the PIPS are

6      inconsistent with professional standards for inpatient psychiatric care.

7    • The community baseline standard for psychiatric inpatient programs is 24/7

8      hospital-level medical care, with patients in unlocked rooms, access to

9      therapeutic and rehabilitative programming throughout the day, and daily

10     individual contacts with providers.  In short: inpatient psychiatric programs

11     should be characterized by a therapeutic milieu.

12   • Acute psychiatric units should feature, at a minimum, daily rounding by both

13     psychiatrists and psychologists to address patients' emergent symptoms and

14     ensure stabilization within 14 days.

15   • Intermediate care psychiatric units should feature therapeutic and

16     rehabilitative programming throughout the day, 7 days a week.  Patients

17     should be out of their rooms whenever they are not sleeping, eating, or

18     completing daily hygiene tasks.

19   • Psychiatric inpatients who spend excessive amounts of their day locked in

20     their cells, whether due to custody restrictions or unmet psychiatric needs,

21     are at grave risk of psychiatric and psychological decompensation.

22   • A minimum of 20 hours per week of structured therapeutic programming,

23     and a minimum of 20 hours per week of additional unstructured out-of-cell

24     time, is necessary to protect psychiatric inpatients' health and safety in a

25     correctional setting.

26   • Clinicians may elect to modify the schedules for patients who are clinically

27     unable or refuse to participate regular daily group programming, but that

28     should only be done with documented rationales in patient records and be

[4264789.12]

5

DECL. OF PABLO STEWART, M.D. ISO PLS.' MOT. TO REJECT DEFS.' PLAN TO PROVIDE MIN. TREATMENT
STDS. FOR PIPs (ECF NO. 7787) AS INADEQUATE TO REMEDY DEFS.' 8TH AMEND. VIOLATIONS

1    supplemented with additional daily clinical contacts.

2  **I.    CDCR'S PROPOSED MINIMUM TREATMENT STANDARDS ARE NOT
        CONSISTENT WITH PROFESSIONAL STANDARDS FOR INPATIENT
3       PSYCHIATRIC CARE**

4          12.    In the plan they submitted to the Court, Defendants suggest that their

5    proposed minimum treatment standards for their PIPs are consistent with "community

6    standards," for inpatient psychiatric care.  ECF No. 7787 at 6.  They are not.  Specifically,

7    CDCR's proposal for minimum hours of structured therapy (none) and unstructured

8    treatment activities (ten hours per week) falls far short of the standard of care in the

9    community.  In addition, the proposed frequencies of psychologist and psychiatrist

10   contacts for acute patients are not consistent with professional standards of acute inpatient

11   psychiatric care provision.

12         **A.    In the community, psychiatric inpatient care is characterized by a
                therapeutic milieu, with daily psychiatry contacts for acute patients,
13              daylong programming, and access to 24/7 medical care.**

14         13.    In the community, psychiatric inpatient care is characterized by a therapeutic

15   milieu, featuring daylong programming, and access to 24/7 medical care.  In state

16   psychiatric hospitals, psychiatric inpatients do not reside in locked rooms all day absent

17   programming opportunities; rather, the default is that patients are engaging in either

18   therapeutic clinical contacts, structured group psychological treatment, other rehabilitative

19   programming, whenever they are not sleeping, eating, performing tasks of daily living.

20         14.    To the extent that structured treatment hour minimums are absent from much

21   of the scholarly literature on psychiatric inpatient treatment, that is because a concept of

22   "minimum treatment hours" itself is foreign for those providing medically adequate

23   hospital-level inpatient care.  In other words, in a functioning inpatient psychiatric unit,

24   "minimum treatment hours" are not necessary to specify, because, quite simply, treatment

25   takes place all day long.

26         15.    In the community, therefore, psychiatric inpatients are generally provided a

27   minimum of eight hours per day, seven days per week, of programming outside of their

28   rooms.  That totals a minimum of fifty-six hours a week of structured and unstructured

treatment.  Defendants' proposal that patients in the PIPs are guaranteed only ten hours per week of unstructured programming out of their cells therefore falls egregiously short of community standards of care.

16.    The purpose of acute care is to achieve diagnostic clarity, address emergent psychiatric symptomatology, and ensure patient safety and stabilization.  In the community, acute psychiatric wards are characterized by daily rounding by psychiatrists and psychologists.  Defendants propose for psychiatrists to see acute psychiatric patients just once every three days, or about twice per week, for the first thirty days, and only once a week thereafter.  *See* ECF No. 7787 at 6.  This part of Defendants' proposal is therefore also substantially out of step with community standards of care.

17.    Furthermore, in the community, acute patient stays are typically just a few days, and at most two weeks.  At that point, patients should be stabilized and able to be discharged to an intermediate care setting or back to the community.  Against this backdrop, CDCR proposes that acute patients should not even see their primary mental health clinician until ten days into their stay.  *Id.*  This, too, falls below the standard of care.

**B.    In other correctional settings, standard of care for psychiatric inpatients matches that which is provided in the community.**

18.    In my experience, to ensure that psychiatric inpatient standards of care are met, many other state correctional systems provide inpatient psychiatry care to incarcerated patients in their custody by transferring them to state psychiatric hospitals.  In response to CDCR's own survey of other state correctional systems, three states—Hawaii, Wisconsin, and New York—stated that their state hospital systems exclusively provide psychiatric inpatient level of care.

19.    Furthermore, when state correctional systems like CDCR elect to provide "in-house" inpatient psychiatric services to the most seriously ill patients in their custody, that care should nevertheless reflect the standards in the community.  According to the National Commission on Correctional Health Care's most recently published standards for

[4264789.12]

7

DECL. OF PABLO STEWART, M.D. ISO PLS.' MOT. TO REJECT DEFS.' PLAN TO PROVIDE MIN. TREATMENT
STDS. FOR PIPs (ECF NO. 7787) AS INADEQUATE TO REMEDY DEFS.' 8TH AMEND. VIOLATIONS

1  health services in prisons, when correctional systems elect to provide acute mental health

2  care "on-site," it should "be consistent with their defined scope of care to provide for

3  patients who are psychotic, mentally unstable, or suicidal." National Commission on

4  Correctional Health Care, *Standards for Health Services in Prisons* (2018) at 115.

5      Furthermore, these standards specify:

6      These residential units should have continuous (24 hours a day, 7 days a
       week) coverage by mental health staff; orientation and training for
7      correctional officers assigned to the unit; **daily (7 days a week) patient
       evaluation by mental health staff**; programming or appropriate therapies, if
8      indicated; individual treatment plans; and **housing in a safe and therapeutic
       environment** conducive to symptom stabilization and maintenance of good
9      personal hygiene.

10 *Id* (emphases added).

11     Finally, these standards state that whereas crisis intervention and psychotropic

12 medication provision is appropriate for "facilities that transfer inmates with serious mental

13 health problems to other facilities," those "[f]acilities housing significant numbers of

14 mental health patients with longer lengths of stay are expected to offer more extensive

15 mental health programming." *Id.*

16     20.    By failing to specify a requirement of "daily" clinical contacts in their acute

17 or ICF units, as well as ensuring that patients are housed in a "therapeutic environment"

18 with "extensive mental health programming," CDCR's proposal for inpatient treatment

19 standards thus falls severely short of national standards for psychiatric inpatient care in

20 both the community *and* correctional systems. *See id.*

21     21.    In my capacity as a monitor for *Rasho*, I became very familiar with the

22 Illinois Department of Corrections' remedial approach to "in-house" psychiatric inpatient

23 treatment. The Illinois Department of Corrections provided inpatient psychiatric treatment

24 for the patients in its custody by leasing inpatient beds from the state's old Elgin Mental

25 Health Hospital. At Elgin, I observed two full-time Illinois Department of Corrections

26 psychiatrists providing care for approximately twenty patients. These psychiatrists wrote

27 daily progress notes for these patients, and participated in weekly case conferences. The

28 hospital utilized no locked rooms; patients walked freely in the dayroom when they were

1   not engaged in therapeutic group programming.  Furthermore, in the rare case that patients

2   were not clinically stable enough to participate in mental health programming, psychiatric

3   seclusion was utilized and those situations usually resolved in a matter of hours.

4          22.    To my knowledge, Illinois does not have a publicly available policy

5   memorandum that specifies the weekly minimum number of hours of structured treatment

6   offered to psychiatric inpatients.  However, the Illinois Department of Corrections

7   ("IDOC") Administrative Directive on Inpatient Mental Health defines the inpatient level

8   of care as "the most intensive level of care, involving an individual plan on active

9   psychiatric treatment, which includes 24-hour access to a full range of psychiatric and

10  mental health staff."  IDOC, Inpatient Mental Health, A.D. No. 04.04.200 (Feb. 1, 2022) at

11  1.  Further, the Directive specifies that the inpatient level of care is necessary for

12  individuals who "require a level of treatment that exceeds the level of care that the

13  department is able to provide at the outpatient or special/residential treatment unit (RTU)."

14  *Id.* at 1-2.

15         23.    In short, many state correctional systems, including those in Illinois,

16  Wisconsin, Hawaii, and New York utilize hospital-based psychiatric inpatient units that

17  are operated by the state hospital system or "in-house," by the corrections system itself.

18  Based on my experience in Illinois, it is my opinion that inpatient care provided to

19  incarcerated patients in these states more closely approximates—if not matches—the

20  standard of care for inpatient psychiatric treatment in the community.  That is, in these

21  inpatient settings, patients are generally provided with structured therapy and unstructured

22  out-of-cell time for most of the day, with daily clinical contacts—a therapeutic milieu.

23  This standard of care is not reflected in Defendants' proposed plan for the PIPs.

24  **II.    *COLEMAN* INPATIENTS ARE CURRENTLY RECEIVING GROSSLY
        INADEQUATE MENTAL HEALTH TREATMENT IN CDCR'S PIPS**

25         24.    Defendants' proposed treatment standards for the PIPs rely, in lieu of a

26  specified structured treatment hour minimum, on individual treatment teams to prescribe

27  structured treatment for patients based on "individualized clinical assessment," and for

28

1   treatment plans to be "updated based on clinical progress as per the standard of care."

2   ECF No. 7787 at 6-7.  Whether such continued wholesale reliance on individual treatment

3   teams to direct care is clinically appropriate depends on whether there is evidence that the

4   amount of treatment provided to patients currently meets the standard of care.

5       25.    In my opinion, CDCR's PIPs are currently providing a grossly inadequate

6   amount of treatment to patients in its care, and that this problem is worse at the three Lift-

7   and-Shift PIPs (CHCF, CMF, and SVSP).  This makes Defendants' proposed reliance on

8   individual treatment planning particularly dangerous for ensuring adequate psychiatric care

9   for *Coleman* inpatients.

10          **A.    Methodology**

11      26.    In forming my opinion on the adequacy of treatment offered to patients in

12   CDCR's PIPs, I reviewed the following materials:

13   •   The Special Master's most recent inpatient reports, the 29th Round inpatient

14       monitoring report, which the Court has since adopted;

15   •   Systemwide PIP treatment-offered data and out-of-cell activities (NCAT)

16       data;

17   •   An in-depth records review of 24 current PIP patients (selected from a

18       random sample of 5% of the current PIP census as of March 28, 2023,

19       records were pulled on March 30, 2023);

20   •   A review of the 2 suicides of PIP patients that occurred within the past 12

21       months; and

22   •   On-site visits and interviews with six patients at the CHCF, CMF, and SQ

23       PIPs on April 14-15, 2023.

24      27.    To select the patients for whom I would conduct an in-depth records review,

25   I first generated a random sample of 5% (n=46) of all PIP inpatients as of March 28, 2023

26   (n=950).  This sample closely matched the distribution of patients in the total population,

27   in terms of institution and level of care (acute v. ICF).  The average length-of-stay in the

28   PIPs was substantially longer, however, in the random sample (208.26 days) than the

overall population (134.14 days). I then gathered data on active medications, self-harm history, and forced treatment orders for each patient in the random sample. I selected 24 patients for in-depth records review based on these factors, i.e., psychotropic medications, self-harm history, forced treatment orders that would suggest providers would create particularly intensive treatment plans. In other words, of this randomly-selected pool, I selected for closer review the most seriously ill patients in CDCR's PIPs for whom I believed, based on my clinical experience, that clinicians would be most likely to devote maximal treatment resources.

28.    In addition, because patients who died by suicide while in the PIPs would not be reflected in a random sample of the current census, I also reviewed the treatment history and official suicide reports prepared following the deaths of two patients housed in the SVSP and CMF PIPs over the past twelve months.

29.    Furthermore, in consultation with counsel for both Plaintiffs and Defendants, I arranged to observe the housing units and treatment provision at three PIPs—two Lift-and-Shift PIPs (CHCF and CMF)—as well as SQ, where the Special Master has found treatment has historically been better. *See* 29th Round Inpatient Report, ECF No. 7555 at 65. I observed the two PIPs with an identified track record of treatment inadequacy, CHCF and CMF, on a Friday, a weekday, to maximize my opportunity of observing structured treatment provision at those institutions. I visited SQ on a Saturday. I further requested interviews with patients six patients (and alternates) whose records I had reviewed at those facilities.

30.    At CHCF, I observed the living and treatment spaces at one MAX and non-MAX acute and ICF units (B2A, B4A, B4B, and B7B). I observed the morning huddle at B2A, an IDTT at B4A, a PT group at B4B, and an MHPC group at B7B. I also interviewed two patients, one at the ICF level of care (discussed below, **Patient E**), and one at the acute level of care.

31.    At CMF, I observed the living and treatment spaces for PIP patients, including MAX and non-MAX units (including O-tower, the 64-bed housing unit, P3, S2,

and A3).  I observed an IDTT in P3, and a huddle and RT group in A3.  I interviewed two patients, one at the acute level of care (discussed below, **Patient B**), and one at the ICF level of care.

32.     At SQ, I observed the living and treatment spaces for PIP patients.  I observed one PT group and one RT group.  I also interviewed two patients, both at the acute level of care (including, as discussed further below, **Patient C**).

> **B.     The amount treatment CDCR offers to *Coleman* patients in the PIPs does not meet the standard of care for psychiatric inpatients.  This problem is especially severe at CHCF, CMF, and SVSP.**

33.     Based on my observations, interviews, experience, and review all of the aforementioned materials, it is my opinion that systemwide, CDCR's psychiatric inpatient units are not currently offering the standard of care in terms of treatment offered.  None of the PIPs are functioning as inpatient psychiatric hospitals.  The problem is especially severe at CHCF, CMF, and SVSP, where the amount of treatment offered to patients in the PIPs is grossly inadequate.  This is especially troubling because of the three PIPs I was able to visit in person: not one has a therapeutic milieu.  Even at CHCF, where the housing units have the appearance of milieu therapy (with a central dayroom, yard, treatment space surrounded by patient rooms), it was not occurring—group dining rooms were never utilized, patients were locked in their cells instead of freely accessing the dayroom when not at treatment or yard.  At CMF, acutely ill psychiatric patients on MAX status were being secluded around the clock in their cells based on custody status without use of a medical seclusion order.  At SQ, patients were moved from cage to cage—yard was in individual cages, dayroom was provided on an individual basis, and group treatment took place in cages, even for those not on condemned or MAX status.  Therefore, patients relied almost exclusively on scheduled therapeutic activities for all of their psychiatric treatment.

34.     To begin, CDCR's deficient provision of care to acutely ill patients is particularly alarming.  Take, for example, **Patient A**, who at the time of my review, had been in the acute program at CMF for 87 days.  In that time, Patient A had attended zero groups (44 were offered and 47 were cancelled), and had attended just 10 psychiatrist

appointments (10 were offered).  He was admitted to the PIP for suicidal ideation and history of self-harm.  His treatment team noted his minimal clinical progress, i.e., that he was "not eating, disorganized, manic, and delusional."  In my opinion, his lack of clinical improvement is directly caused by an insufficient number of clinical contacts.   If this patient was refusing group treatment to the extent suggested by the records (44 refusals), he was presenting with an ongoing psychiatric emergency that should have been addressed by, at a minimum, daily psychiatric contacts.  I requested to interview this patient, but he was out on a medical trip at the time of our visit.

35.    The harms that have flowed from extremely low amount of treatment offered to acute patients at CMF was not isolated.  **Patient B**, an acute patient on MAX custody, was offered only 8 groups (of which he refused all but 1), 5 psychiatry appointments, and 5 psychology appointments over the course of his 27-day stay at the time of my records review.  Patient B was admitted to the CMF PIP after several serious suicide attempts, with diagnoses of major depression and borderline personality disorder.  He reported attempting to hang himself in a treatment module at his last institution, and again in a crisis bed.  His most recent psychiatric progress note and master treatment plan acknowledge that Patient B endorsed auditory and visual hallucinations as well as continuing passive suicidal ideation.  At our interview, several weeks later, he explained in detail his ongoing auditory command hallucinations and visual hallucinations.  He described meeting with his psychiatrist and primary clinician just once per week, for approximately 5-10 minutes.  He explained that he refused most groups because they involved sitting in a cage, "where everyone is screaming," while an RT put on a movie and stepped out of the room, leaving no opportunity to talk to anyone.  Patient B's very concerning lack of clinical progress is due to an insufficient number of clinical contacts.

36.    Acute patients at SQ and CHCF received more clinical contacts, but treatment there also fell below the standard of care.  For example, **Patient C** was offered 15 groups, 13 psychiatry contacts, and 9 psychology contacts over the course of 24 days at SQ—a frequency of individual clinical contacts of about every other day that exceeds that

which Defendants currently propose for their acute wards—but that nevertheless falls below the standard of care. This patient was admitted to the PIP for danger to himself after causing bilateral lacerations to his arms and for his persecutory delusions. While this patient's clinical records note some clinical improvement, they also reflect only a "mild decrease" in his auditory hallucinations. At the time of our interview, several weeks later, Patient C still reported faint whisper auditory hallucinations, and reported that his strong auditory command hallucination had resolved in the past week, over a month after he began his acute stay, which falls far below the standard of care. For this patient, too, the frequency of clinical contacts fell below community standards of care of *daily* rounding of both psychiatrists and psychologists for patients with acute psychiatric illness.

37.    At the intermediate level of care, patient records revealed that CDCR provided an insufficient amount of psychiatric treatment across the five PIPs, but care was seriously inadequate at SVSP, CMF, and CHCF. To recall, in the community, psychiatric inpatients would be expected to attend at least four hours of structured treatment per day, and another four hours of unstructured rehabilitative activities. That would approximate to at least two to four groups per day. But only the CIW patient I reviewed averaged attendance at a single group per day. Further, in the community, patients at the intermediate level of care would be expected to have at least twice weekly psychiatry and psychology contacts. But of the records I reviewed, CDCR's intermediate PIP patients generally had only contact with a psychiatrist or psychologist once week at most.

38.    For example, at the time of my review, **Patient D** had been at the ICF level of care at SVSP for 101 days, but had only attended 1 group in that time. The records show that 83 of the 119 groups he was scheduled for were cancelled and he refused the remaining 35 groups. Despite his low group attendance, he was offered just 16 psychiatry appointments and 16 psychology appointments. He was admitted to the PIP for psychosis, paranoia, and extreme self-mutilation. His most recent progress notes stated that he remained psychotic with poor medication compliance. This case represents very poor care which falls well below the standard of care for inpatients.

39.     The completely insufficient number of clinical contacts for ICF patients was not isolated to SVSP.  At CHCF, **Patient E** had been at the ICF level of care for over four months, 153 days, but was offered only 1 psychiatry appointment and 10 psychology appointments despite attending just 35 groups in this same period (refusing over 200 offered groups).  He was admitted to the PIP for depression and anxiety, and has a history of self-harm.  At our interview, several weeks later, Patient E described the psychiatric medicines he was on, but said he did not know, and had never been told, his psychiatric diagnoses.  He also said he did not understand his treatment plan or goals or what he needed to do to be discharged.  He said he refused most groups because they're just playing cards, and he wants to read, write, talk and learn things in his groups.

40.     Even for patients at the CIW and SQ PIPs, where care has historically been recognized to be better, the amount of clinical contacts patients experienced was substandard.  For example, **Patient F** had been at CIW ICF level of care for over a year— 429 days—but had only 85 psychiatry appointments.  This patient attended 454 groups, averaging attendance at more than one group/day (one of the highest rates of the patients I reviewed), but nevertheless demonstrated limited clinical improvement.  The patient's most recent clinical progress note described persistent psychosis and paranoia, despite being on PC2602 order.  In my opinion, this patient's lack of clinical improvement is largely due to an insufficient number of psychiatry contacts.

41.     At SQ, **Patient G** did not fare much better, with only 42 psychiatry contacts and 76 psychology appointments and 103 groups attended over his 327 day stay.  Of the 592 group appointments that were initially scheduled for this patient, 192 were cancelled, and he refused 297.  His most recent psychiatric progress note described ongoing improvement in both psychotic and depressive symptoms, but only modest improvement with negative symptoms. This is an example of a very long stay with only modest clinical improvement.  In my opinion, his lack of a robust clinical response is likely due to an insufficient number of psychiatry contacts.  This patient refused our interview request.

42.     Again, however, it is important to note that these patients were selected from

a random sample for further review not based on their *lack* of clinical contacts but instead on the opposite criteria: patients who had indications of such serious illness and suicide risk that they would be likely to be have more intensive treatment. Indeed, if anything, these patients' records reflect higher-than-average amount of structured treatment offered to patients in the PIPs. According to the Treatment Offered data for the PIPs, for the last week in January 2023 (1/29/2023), on average, across the five institutions, an average of just 10.5 hours of structured treatment was offered to patients per week, and an average of only 4.8 hours of structured treatment was attended. These data paint a clear picture: the amount of treatment provided to psychiatric inpatients at CDCR does not come close to achieving the standard of care. Systemwide provision of out-of-cell activities was not much better. According to the NCAT data I reviewed, that same week, on average, ICF patients were offered 12.6 hours of out-of-cell activities per week, and attended an average of 4.2 hours per week. Acute patients were offered an average of 20.2 hours of out-of-cell activities per week, but attended just 8.3 hours on average. On the whole, this means that on average, patients in CDCR's PIPs were out of their cells for approximately 8-12 hours/week on average, a fraction of what would be expected in a functioning inpatient hospital.

43.     The suicides of two PIP patients over the past 12 months is further evidence of the tragic harms that can result from lack of adequate psychiatric treatment for critically ill patients. **Patient H** died in the SVSP PIP at the ICF level of care after stabbing himself in the neck while on enhanced mental health watch. Over the course of his 104 day stay in the PIP, he had attended just 25 groups (76 were offered) and had seen a psychiatrist 17 times and a psychologist 12 times. He was admitted to the PIP with a history of Bipolar I Disorder, depressed type with multiple incidents of self-injurious behaviors of cutting his arms, thighs and face. He also reported three previous serious suicide attempts, one by drug overdose and two by cutting his throat. Of note, at the time of Patient H's death, there were several novel treatments for bipolar depression that were not utilized in his treatment. This absence of standard of care psychopharmacology was one of several

1   reasons that contributed to his death.  Indeed, in the month preceding his death, Patient H

2   began to have documented manic side effects to the medication prescribed to him,

3   including self-harm after his dose of Wellbutrin was increased.   Although his dose was

4   lowered the next week, his records reveal that he continued to decompensate, showing

5   signs of anger, anxiety, and paranoia, refusal to participate in treatment team meetings,

6   refusal to leave his cell or speak to staff.  At these first signs of deterioration, the standard

7   of care called for a complete reevaluation of his psychiatric medications, as well as taking

8   measures such as 1:1 suicide watch and transfer to an acute level of care to ensure his

9   safety.  He did not receive this critical psychiatric reevaluation of his condition in the

10  weeks prior to his death.  Therefore, it is my opinion, which I hold to a reasonable degree

11  of medical certainty, that this patient's suicide was preventable.

12        44.     **Patient I** died in the CMF PIP at the acute level of care in October 2022

13  after swallowing a plastic wrapper.  He was admitted to the PIP for danger to himself and

14  others, and was diagnosed with schizophrenia.  He complained of auditory, visual, tactile,

15  and olfactory hallucinations, and reported 10/10 anxiety and depression.  He had an

16  extensive history of self-harm, including self-strangulation, stabbing himself with a

17  sharpened toothbrush, collecting glass in his cell to self-harm, and ingestion of foreign

18  objects.  CMF PIP had very high vacancies of clinical staff, including line and supervising

19  psychiatrists, at the time of his death.  Over the course of his 45 day stay in the PIP, he was

20  offered just 8 groups and attended only 3.  Further, he was offered just 5 psychiatry

21  appointments (9 were cancelled) and 16 psychology appointments.  About a month before

22  his death, a psychiatric progress note states that Patient I heard voices telling him to

23  "swallow something and asphyxiate myself," however, his psychiatrist made no changes to

24  his antipsychotic medications.  A week before his death, Patient I swallowed a plastic

25  wrapper in an apparent suicide attempt.  He survived, and returned to the CMF PIP, but

26  was not placed on 1:1 suicide watch.  Three days before his death, a covering psychiatrist

27  wrote that his mood was "real bad," that the patient was still hearing voices, and that his

28  medication was not helping.  Patient I requested Clozaril, a medication that had worked for

1  him in the past.  After this visit, however, the covering psychiatrist increased the dose of

2  his medication, Prolixin.  Prolixin is a 1st generation antipsychotic that first came into use

3  in 1959.  It has no use in 21st century psychiatric treatment.  CDCR's continued use with

4  this extremely psychotic and suicidal patient is especially egregious given the fact that

5  Patient I had previously been successfully treated with 2nd generation antipsychotics

6  Zyprexa and Clozaril.  It is my opinion, which I hold to a reasonable degree of medical

7  certainty, that Patient I's death was absolutely preventable. The lack of daily psychiatric

8  contacts, which is the standard of care for an acute psychiatric hospital, significantly

9  contributed to Patient I's death.

10      45.     In sum, based on my independent observations, interviews, and clinical

11  review of patient records, I agree with the Special Master's assessment that CDCR

12  continues to offer patients in its PIPs "woefully inadequate amounts of structured mental

13  health treatment."  ECF No. 7555 at 65.

14  **III.   UNDER CDCR'S PROPOSED PLAN, PIP PATIENTS WOULD CONTINUE
         TO BE AT RISK OF SEVERE MENTAL DECOMPENSATION DUE TO
15       LACK OF STRUCTURED GROUP TREATMENT AND PSYCHIATRY
         CONTACTS, AND EXCESSIVE TIME SPENT IN THEIR CELLS**

16      46.     CDCR's proposed plan—with no minimum hours of structured treatment,

17  only ten minimum hours of unstructured out of cell activities, and non-daily requirement of

18  psychiatry and psychology contacts for acute patients—would permit status quo of grossly

19  inadequate inpatient treatment to continue, which puts patients at serious risk.  CDCR's

20  PIPs do not have the treatment milieus that characterize psychiatric inpatient care in the

21  community and other functioning correctional systems.  As a result, patients in CDCR's

22  PIPs only leave their cells with scheduled appointment for structured treatment activities or

23  unstructured out-of-cell time.  Therefore, minimum hour requirements that equate to

24  patients spending most of their waking hours out of their cells engaged in treatment,

25  rehabilitative, or recreational activities are absolutely essential to approximating the

26  standard of care for psychiatric inpatients.

27      47.     As the two recent PIP patient suicides reveal, at the most severe end, without

28

adequate psychiatric treatment and medication management, seriously ill patients are at high risk for decompensation, self-harm, and suicide.  In other words, without an adequate amount of psychiatric treatment, at best, patients risk simply not getting better.  At worst, they are at risk of serious harm and decompensation.

48.    It is my opinion, based on my experience as provider of inpatient care, a monitor of correctional mental health care provision, and my review of CDCR's treatment provision in the PIPs, that a minimum of 20 hours per week of structured therapeutic activities is necessary to protect psychiatric inpatients patients in this correctional setting. This structured treatment minimum should include daily psychiatry and psychology contacts for acute patients, and at least twice weekly psychiatry and psychology contacts for ICF patients.

49.    Any downward departures from this minimum for clinical reasons should be thoroughly documented by treating psychiatrists, and be mitigated by increased individual contacts, including increased frequency of psychiatry appointments.  It is inappropriate and dangerous for psychiatric inpatients to remain in their cells all day long without clinical assessment.

50.    Furthermore, it is my opinion, based on my experience as provider of inpatient care, a monitor of correctional mental health care provision, and my review of CDCR's treatment provision in the PIPs, that a minimum of 20 hours per week of additional unstructured out-of-cell activities is necessary to protect to patients with severe mental illness.

51.    Again, treatment teams should treat consistent patient refusal of unstructured out-of-cell activities as a reflection of the severity of their underlying mental illness. Rehabilitation requires that patients socialize and take part in activities of daily living.  If consistent patient refusals result in patients not leaving their cells for unstructured activities, these refusals should be treated as symptoms of either unaddressed psychiatric conditions or of structural program deficiencies.

1   I declare under penalty of perjury under the laws of the United States of America

2 that the foregoing is true and correct to the best of my knowledge, and that this declaration

3 is executed at Honolulu, Hawaii this 17th day of April, 2023.

4

5

6           Pablo Stewart, M.D.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[4272356.1]

EXPERT REPORT OF PABLO STEWART, M.D. ON PIP TREATMENT STANDARDS

# Exhibit A

<u>CURRICULUM VITAE</u>

***PABLO STEWART, M.D.***
**3021 La Pietra Circle**
**Honolulu, HI 96815**
**(808) 352-8074**
**(415) 264-0237**
**e-mail: pablo.stewart.md@gmail.com**
**(Updated April 2023)**

<u>Personal Statement:</u>
As evidenced in my CV, my psychiatric career is based on several guiding principles. These include but are not limited to a commitment to diversity at all levels of medical education, including medical students, residents and faculty members. Also, I have always believed that health care is a right and not a privilege. I have demonstrated this fact by my passion for social justice and health equity for everyone.

<u>Language Competency:</u>
Fluent in both Spanish and English.

<u>EDUCATION:</u>
University of California, San Francisco, Teaching Certificate in General Medical Education, 2017

University of California, San Francisco, School of Medicine, Department of Psychiatry, Psychiatric Residency Program, 1986

University of California, San Francisco, School of Medicine, M.D., 1982

United States Naval Academy, Annapolis, MD, B.S. 1973, Major: Chemistry

<u>LICENSURE:</u>
California Medical License #GO50899
Hawai'i Medical License #MD-11784
Federal Drug Enforcement Administration #BS0546981
Hawaii Controlled Substances Certificate of Registration #E14341
Diplomate in Psychiatry, American Board of
Psychiatry and Neurology, Certificate #32564

<u>ACADEMIC APPOINTMENTS:</u>

September 1, 2021-
Present

<u>Academic Appointment:</u> Clinical Professor/Psychiatrist, Queens University Medical Group (QUMG), University of Hawaii, John A. Burns School of Medicine

July 1, 2019-
August 31, 2021

<u>Academic Appointment:</u> Clinical Professor/Psychiatrist, University Health Partners (UHP), University of Hawaii, John A. Burns School of Medicine.

| | |
|---|---|
| February 22, 2018-<br>February 22, 2019 | <u>Academic Appointment:</u> Clinical Professor, Department of Psychiatry, University of Hawaii, John A. Burns School of Medicine. |
| September 2006-<br>Present | <u>Academic Appointment:</u> Clinical Professor, Department of Psychiatry, University of California, San Francisco.<br>School of Medicine. |
| July 1995 -<br>August 2006 | <u>Academic Appointment:</u> Associate Clinical Professor, Department of Psychiatry, University of California, San Francisco, School of Medicine. |
| August 1989 -<br>June 1995 | <u>Academic Appointment:</u> Assistant Clinical Professor, Department of Psychiatry, University of California, San Francisco, School of Medicine. |
| August 1986 -<br>July 1989 | <u>Academic Appointment:</u> Clinical Instructor, Department of Psychiatry, University of California, San Francisco, School of Medicine. |

<u>EMPLOYMENT:</u>

| | |
|---|---|
| July 2019-<br>Present | Attending Psychiatrist John A. Burns School of Medicine, Department of Psychiatry, University of Hawaii. Current duties include supervising psychiatric residents in their provision of acute and chronic care to the mentally ill inmate population housed at the Oahu Community Correctional Center. In this capacity I was also involved with local agencies in formulating the jail's response to Covid-19. I present a lecture series to the psychiatric residents regarding Forensic Psychiatry. I also serve as an Attending Psychiatrist in the Emergency Department, the Psychiatric Inpatient Unit and the Medical and Surgical Units at the Queens Medical Center. |
| December 1996-<br>Present | <u>Psychiatric Consultant</u><br>Provide consultation to governmental and private agencies on a variety of psychiatric, forensic, substance abuse and organizational issues, extensive experience in all phases of capital litigation and correctional psychiatry. |
| January 1997-<br>September 1998 | <u>Director of Clinical Services, San Francisco Target Cities Project</u>.  Overall responsibility for ensuring the quality of the clinical services provided by the various departments of the project including the Central Intake Unit, the ACCESS Project and the San Francisco Drug Court   Also responsible for providing clinical in-service trainings for the staff of the Project and community agencies that requested technical assistance. |
| February 1996 -<br>November 1996 | <u>Medical Director, Comprehensive Homeless Center, Department of Veterans Affairs Medical Center, San Francisco.</u> Overall responsibility for the medical and psychiatric services at the Homeless Center. |

2

| | |
|---|---|
| March 1995 -<br>January 1996 | <u>Chief, Intensive Psychiatric Community Care Program,</u><br><u>(IPCC) Department of Veterans Affairs Medical Center, San</u><br><u>Francisco.</u>  Overall clinical/administrative responsibility for the IPCC, a community-based case management program.  Duties also include medical/psychiatric consultation to Veteran Comprehensive Homeless Center.  This is a social work managed program that provides comprehensive social services to homeless veterans. |
| April 1991 -<br>February 1995 | <u>Chief, Substance Abuse Inpatient Unit, (SAIU), Department</u><br><u>of Veterans Affairs Medical Center, San Francisco.</u><br>Overall clinical/administrative responsibility for SAIU. |
| September 1990 -<br>March 1991 | <u>Psychiatrist, Substance Abuse Inpatient Unit, Veterans</u><br><u>Affairs Medical Center, San Francisco.</u>  Clinical responsibility for patients admitted to SAIU.  Provide consultation to the Medical/Surgical Units regarding patients with substance abuse issues. |
| August 1988 -<br>December 1989 | <u>Director, Forensic Psychiatric Services, City and County of</u><br><u>San Francisco.</u>  Administrative and clinical responsibility for psychiatric services provided to the inmate population of San Francisco.  Duties included direct clinical and administrative responsibility for the Jail Psychiatric Services and the Forensic Unit at San Francisco General Hospital. |
| July 1986 -<br>August 1990 | <u>Senior Attending Psychiatrist, Forensic Unit, University of</u><br><u>California, San Francisco General Hospital.</u>  Administrative and clinical responsibility for a 12-bed, maximum-security psychiatric ward.  Clinical supervision for psychiatric residents, postdoctoral psychology fellows and medical students assigned to the ward.  Liaison with Jail Psychiatric Services, City and County of San Francisco.  Advise San Francisco City Attorney on issues pertaining to forensic psychiatry. |
| July 1985<br>June 1986 | <u>Chief Resident, Department of Psychiatry, University of</u><br><u>California San Francisco General Hospital.</u>  Team leader of the Latino-focus inpatient treatment team (involving 10-12 patients with bicultural/bilingual issues); direct clinical supervision of 7 psychiatric residents and 3-6 medical students; organized weekly departmental Grand Rounds; administered and supervised departmental residents' call schedule; psychiatric consultant to hospital general medical clinic; assistant coordinator of medical student education; group seminar leader for introduction to clinical psychiatry course for UCSF second-year medical students. |
| July 1984 -<br>March 1987 | <u>Physician Specialist, Westside Crisis Center, San Francisco,</u><br><u>CA.</u>  Responsibility for Crisis Center operations during assigned shifts, admitting privileges at Mount Zion Hospital.  Provided psychiatric consultation for the patients admitted to Mount Zion Hospital when requested. |
| April 1984 - | <u>Psychiatric Consultant, Marin Alternative Treatment, (ACT).</u> |

| | |
|---|---|
| July 1985 | Provided medical and psychiatric evaluation and treatment of residential drug and alcohol clients; consultant to staff concerning medical/psychiatric issues. |
| August 1983 - November 1984 | <u>Physician Specialist, Mission Mental Health Crisis Center, San Francisco, CA.</u>  Clinical responsibility for Crisis Center clients; consultant to staff concerning medical/psychiatric issues. |
| July 1982- July 1985 | <u>Psychiatric Resident, University of California, San Francisco.</u> Primary Therapist and Medical Consultant for the adult inpatient units at San Francisco General Hospital and San Francisco Veterans Affairs Medical Center; Medical Coordinator/Primary Therapist - Alcohol Inpatient Unit and Substance Abuse Clinic at San Francisco Veterans Affairs Medical Center; Outpatient Adult/Child Psychotherapist; Psychiatric Consultant - Adult Day Treatment Center - San Francisco Veterans Affairs Medical Center; Primary Therapist and Medial Consultant - San Francisco General Hospital Psychiatric Emergency Services; Psychiatric Consultant, Inpatient Medical/Surgical Units - San Francisco General Hospital. |
| June 1973 - July 1978 | <u>Infantry Officer - United States Marine Corps.</u> Rifle Platoon Commander; Anti-tank Platoon Commander; 81mm Mortar Platoon Commander; Rifle Company Executive Officer; Rifle Company Commander; Assistant Battalion Operations Officer; Embarkation Officer; Recruitment Officer; Drug, Alcohol and Human Relations Counselor; Parachutist and Scuba Diver; Officer in Charge of a Vietnamese Refugee Camp. Received an Honorable Discharge.  Highest rank attained was Captain. |

<u>HONORS AND AWARDS:</u>

| | |
|---|---|
| June 2020 | Recognized by the Department of Psychiatry, John A. Burns School of Medicine, University of Hawaii as the recipient ot the 2019-2020 Excellence in Teaching Award-Psychiatry. |
| June 2015 | Recognized by the Psychiatry Residents Association of the University of California, San Francisco, School of Medicine, Department of Psychiatry for "Excellence in Teaching" for the academic year 2014-2015. |
| June 1995 | Selected by the graduating class of the University of California, San Francisco, School of Medicine as the outstanding psychiatric faculty member for the academic year 1994/1995. |
| June 1993 | Selected by the class of 1996, University of California, San Francisco, School of Medicine as outstanding lecturer, academic year 1992/1993. |
| May 1993 | Elected to Membership of Medical Honor Society, AOA, by the AOA Member of the 1993 Graduating Class of the University of California, San Francisco, School of Medicine. |

| | |
|---|---|
| May 1991 | Selected by the graduating class of the University of California, San Francisco, School of Medicine as the outstanding psychiatric faculty member for the academic year 1990-1991. |
| May 1990 | Selected by the graduating class of the University of California, San Francisco, School of Medicine as the outstanding psychiatric faculty member for the academic year 1989-1990. |
| May 1989 | Selected by the graduating class of the University of California, San Francisco, School of Medicine as the outstanding psychiatric faculty member for the academic year 1988-1989. |
| May 1987 | Selected by the faculty and students of the University of California, San Francisco, School of Medicine as the recipient of the Henry J. Kaiser Award for Excellence in Teaching. |
| May 1987 | Selected by the graduating class of the University of California, San Francisco, School of Medicine as Outstanding Psychiatric Resident.  The award covered the period of 1 July 1985 to 30 June 1986, during which time I served as Chief Psychiatric resident, San Francisco General Hospital. |
| May 1985 | Selected by the graduating class of the University of California, San Francisco, School of Medicine as Outstanding Psychiatric Resident. |
| 1985 | Mead-Johnson American Psychiatric Association Fellowship.  One of sixteen nationwide psychiatric residents selected because of a demonstrated commitment to public sector psychiatry.  Made presentation at Annual Hospital and Community Psychiatry Meeting in Montreal, Canada, in October 1985, on the "Psychiatric Aspects of the Acquired Immunodeficiency Syndrome." |

MEMBERSHIPS:

| | |
|---|---|
| June 2000-<br>May 2008 | California Association of Drug Court Professionals. |
| July 1997-<br>June 1998 | President, Alumni-Faculty Association, University of California, San Francisco, School of Medicine. |
| July 1996 -<br>June 1997 | President-Elect, Alumni-Faculty Association, University of California, San Francisco, School of Medicine. |
| July 1995 -<br>June 1996 | Vice President, Northern California Area, Alumni-Faculty Association, University of California, San Francisco, School of Medicine. |
| April 1995 -<br>April 2002 | Associate Clinical Member, American Group Psychotherapy Association. |
| July 1992 -<br>June 1995 | Secretary-Treasurer, Alumni-Faculty Association, University of California, San Francisco, School of Medicine. |

| | |
|---|---|
| July 1990 -<br>June 1992 | Councilor-at-large, Alumni-Faculty Association, University<br>of California, San Francisco, School of Medicine |

PUBLIC SERVICE:

| | |
|---|---|
| June 1992 | Examiner, American Board of Psychiatry and Neurology, Inc. |
| November 1992 -<br>January 1994 | California Tuberculosis Elimination Task Force, Institutional<br>Control Subcommittee. |
| September 2000-<br>April 2005 | Editorial Advisory Board, *Juvenile Correctional Mental Health<br>Report.* |
| May 2001-<br>September 2010 | Psychiatric and Substance Abuse Consultant, San Francisco<br>Police Officers' Association. |
| January 2002-<br>June 2003 | Psychiatric Consultant, San Francisco Sheriff's Department<br>Peer Support Program. |
| February 2003-<br>April 2004 | Proposition "N" (Care Not Cash) Service Providers' Advisory<br>Committee, Department of Human Services, City and County of<br>San Francisco. |
| December 2003-<br>January 2004 | Member of San Francisco Mayor-Elect Gavin Newsom's<br>Transition Team. |
| February 2004-<br>June 2004 | Mayor's Homeless Coalition, San Francisco, CA. |
| April 2004-<br>January 2006;<br>February 2017-<br>October 2018 | Member of Human Services Commission, City and County of<br>San Francisco. |
| February 2006-<br>January 2007;<br>April 2013-<br>January 2015 | Vice President, Human Services Commission, City and County of<br>San Francisco. |
| February 2007-<br>March 2013;<br>February 2015-<br>2017 | President, Human Services Commission, City and County of<br>San Francisco. |

UNIVERSITY SERVICE:

| | |
|---|---|
| June 2020-<br>Present | Member of the John A. Burns School of Medicine, University of<br>Hawaii Scholarship Committee. |
| June 2020- | Member of the resident selection committee for the Department of |

| | |
|---|---|
| Present | Psychiatry, John A. Burns School of Medicine, University of Hawaii. |
| October 1999-<br>October 2001 | Lecturer, University of California, San Francisco, School of Medicine Post Baccalaureate Reapplicant Program. |
| July 1999-<br>July 2001 | Seminar Leader, National Youth Leadership Forum On Medicine. |
| November 1998-<br>November 2001 | Lecturer, University of California, San Francisco, School of Nursing, Department of Family Health Care Nursing.  Lecture to the Advanced Practice Nurse Practitioner Students on Alcohol, Tobacco and Other Drug Dependencies. |
| January 1994 -<br>January 2001 | Preceptor/Lecturer, UCSF Homeless Clinic Project. |
| June 1990 -<br>November 1996 | Curriculum Advisor, University of California, San Francisco, School of Medicine. |
| June 1987 -<br>June 1992 | Facilitate weekly Support Groups for interns in the Department of Medicine.  Also, provide crisis intervention and psychiatric referral for Department of Medicine housestaff. |
| January 1987 –<br>June 1988 | Student Impairment Committee, University of California San Francisco, School of Medicine.<br>Advise the Dean of the School of Medicine on methods to identify, treat and prevent student impairment. |
| January 1986 –<br>June 1996 | Recruitment/Retention Subcommittee of the Admissions Committee, University of California, San Francisco, School of Medicine.<br>Advise the Dean of the School of Medicine on methods to attract and retain minority students and faculty. |
| October 1986 -<br>September 1987 | Member Steering Committee for the Hispanic Medical Education Resource Committee.<br>Plan and present educational programs to increase awareness of the special health needs of Hispanics in the United States. |
| September 1983 -<br>June 1989 | Admissions Committee, University of California, School of Medicine.  Duties included screening applications and interviewing candidates for medical school. |
| October 1978 -<br>December 1980 | Co-Founder and Director of the University of California, San Francisco Running Clinic. Provided free instruction to the public on proper methods of exercise and preventative health measures. |

TEACHING RESPONSIBILITIES:

| | |
|---|---|
| July 2019- | Present a lecture series to the psychiatric residents of the |

7

| | |
|---|---|
| present | Department of Psychiatriy, JABSOM, University of Hawaii on forensic psychiatry. Psychotherapy supervisor Department of Psychiatriy, JABSOM, University of Hawaii. |
| December 2018-<br>May 2019 | Lecturer, Department of Psychiatry, JABSOM, University of Hawaii. |
| September 2016-<br>June 2018 | Evidence-Based Inquiry Facilitator for the *Bridges Curriculum*, University of California, San Francisco, School of Medicine. |
| August 2014-<br>June 2018 | Small Group Facilitator, Foundations of Patient Care, University of California, San Francisco, School of Medicine. |
| July 2003-<br>June 2018 | Facilitate weekly psychotherapy training group for residents in the Department of Psychiatry. |
| January 2002-<br>January 2004 | Course Coordinator of Elective Course University of California, San Francisco, School of Medicine, "Prisoner Health." This is a 1-unit course, which covers the unique health needs of prisoners. |
| September 2001-<br>June 2003 | Supervisor, San Mateo County Psychiatric Residency Program. |
| April 1999-<br>April 2001 | Lecturer, UCSF School of Pharmacy, Committee for Drug Awareness Community Outreach Project. |
| February 1998-<br>June 2000 | Lecturer, UCSF Student Enrichment Program. |
| January 1996 -<br>November 1996 | Supervisor, Psychiatry 110 students, Veterans Comprehensive Homeless Center. |
| September 1990-<br>December 2002 | Supervisor, UCSF School of Medicine, Department of Psychiatry, Substance Abuse Fellowship Program. |
| September 1994 -<br>June 1999 | Course Coordinator of Elective Course, University of California, San Francisco, School of Medicine. Designed, planned and taught course, Psychiatry 170.02, "Drug and Alcohol Abuse." This is a 1-unit course, which covers the major aspects of drug and alcohol abuse. |
| August 1994 -<br>February 2006 | Supervisor, Psychiatric Continuity Clinic, Haight Ashbury Free Clinic, Drug Detoxification and Aftercare Project. Supervise 4th Year medical students in the care of dual diagnostic patients. |
| February 1994 -<br>February 2006 | Consultant, Napa State Hospital Chemical Dependency Program Monthly Conference. |
| July 1992 -<br>June 1994 | Facilitate weekly psychiatric intern seminar, "Psychiatric Aspects of Medicine," University of California, San Francisco, School of Medicine. |

| | |
|---|---|
| July 1991-<br>Present | Group and individual psychotherapy supervisor, Outpatient Clinic, Department of Psychiatry, University of California, San Francisco, School of Medicine. |
| January 1991 | Lecturer, University of California, San Francisco, School of Pharmacy course, "Addictionology and Substance Abuse Prevention." |
| September 1990 -<br>February 1995 | Clinical supervisor, substance abuse fellows, and psychiatric residents, Substance Abuse Inpatient Unit, San Francisco Veterans Affairs Medical Center. |
| September 1990 -<br>November 1996 | Off ward supervisor, PGY II psychiatric residents, Psychiatric Inpatient Unit, San Francisco Veterans Affairs Medical Center. |
| September 1990 -<br>June 1991 | Group therapy supervisor, Psychiatric Inpatient Unit, (PIU), San Francisco Veterans Affairs Medical Center. |
| September 1990 -<br>June 1994 | Course coordinator, Psychiatry 110, San Francisco Veterans Affairs Medical Center. |
| September 1989 -<br>November 1996 | Seminar leader/lecturer, Psychiatry 100 A/B. |
| July 1988 -<br>June 1992 | Clinical supervisor, PGY III psychiatric residents, Haight Ashbury Free Clinic, Drug Detoxification and Aftercare Project. |
| September 1987 -<br>Present | Tavistock Organizational Consultant.<br>Extensive experience as a consultant in numerous Tavistock conferences. |
| September 1987 -<br>December 1993 | Course Coordinator of Elective Course, University of California, San Francisco, School of Medicine. Designed, planned and taught course, Psychiatry 170.02, "Alcoholism". This is a 1-unit course offered to medical students, which covers alcoholism with special emphasis on the health professional. This course is offered fall quarter each academic year. |
| July 1987-<br>June 1994 | Clinical supervisor/lecturer FCM 110, San Francisco General Hospital and Veterans Affairs Medical Center. |
| July 1986 -<br>June 1996 | Seminar leader/lecturer Psychiatry 131 A/B. |
| July 1986 -<br>August 1990 | Clinical supervisor, Psychology interns/fellows, San Francisco General Hospital. |
| July 1986 -<br>August 1990 | Clinical supervisor PGY I psychiatric residents, San Francisco General Hospital |
| July 1986 - | Coordinator of Medical Student Education, University of |

| | |
|---|---|
| August 1990 | California, San Francisco General Hospital, Department of Psychiatry. Teach seminars and supervise clerkships to medical students including: Psychological Core of Medicine 100 A/B; Introduction to Clinical Psychiatry 131 A/B; Core Psychiatric Clerkship 110 and Advanced Clinical Clerkship in Psychiatry 141.01. |
| July 1985 – August 1990 | Psychiatric Consultant to the General Medical Clinic, University of California, San Francisco General Hospital. Teach and supervise medical residents in interviewing and communication skills. Provide instruction to the clinic on the psychiatric aspects of ambulatory medical care. |

COMMUNITY SERVICE AND PRISON CONDITIONS EXPERT WORK:

| | |
|---|---|
| May 2016- July 2022 | Court-appointed monitor in *Ashoor Rasho, et al. v. Director John R. Baldwin, et al.,* No.:1:07-CV-1298-MMM-JEH (District Court, Peoria, Illinois.) This case involves the provision of constitutional mental health care to the inmate population of the Illinois Department of Corrections. |
| June 2015- May 2017 | Senior Fellow, University of California, Criminal Justice & Health Consortium. |
| April 2014- Ocotber 2018 | Plaintiffs' expert in *Hernandez, et al. v. County of Monterey, et al.,* No.: CV 13 2354 PSG. This case involves the provision of unconstitutional mental health and medical services to the inmate population of Monterey County Jail. |
| January-December 2014 | Federal Bureau of Prisons: Special Housing Unit Review and Assessment. This was a year-long review of the quality of mental health services in the segregated housing units of the BOP. |
| August 2012-present | Plaintiffs' expert in *Parsons et al. v. Ryan* et al., (District Court, Phoenix, Arizona.) This case involves the provision of unconstitutional mental health and medical services to the inmate population of the Arizona Department of Corrections. |
| October 2007- Present | Plaintiffs' expert in 2007-2010 overcrowding litigation and in opposing current efforts by defendants to terminate the injunctive relief in *Coleman v. Brown,* United States District Court, Eastern District of California, Case No. 2:90-cv-00520-LKK-JFM. The litigation involves plaintiffs' claim that overcrowding is causing unconstitutional medical and mental health care in the California state prison system. Plaintiffs won an order requiring the state to reduce its population by approximately 45,000 state prisoners. My expert opinion was cited several times in the landmark United States Supreme Court decision upholding the prison population reduction order. *See Brown v. Plata,* __ U.S. ___, 131 S. Ct. 1910, 1933 n.6, 1935, 179 L.Ed.2d 969, 992 n.6, 994 (2011). |
| July/August 2008- | |

| | |
|---|---|
| July 2016 | Plaintiff psychiatric expert in the case of Fred Graves, et al., plaintiffs v. Joseph Arpaio, et al., defendants (District Court, Phoenix, Arizona.)  This case involved Federal oversight of the mental health treatment provided to pre-trial detainees in the Maricopa County Jails. |
| February 2006-<br>December 2009 | Board of Directors, Physician Foundation at California Pacific Medical Center. |
| June 2004-<br>September 2012 | Psychiatric Consultant, Hawaii Drug Court. |
| November 2003-<br>June 2008 | Organizational/Psychiatric Consultant, State of Hawaii, Department of Human Services. |
| June 2003-<br>December 2004 | Monitor of the psychiatric sections of the "Ayers Agreement," New Mexico Corrections Department (NMCD).    This is a settlement arrived at between plaintiffs and the NMCD regarding the provision of constitutionally mandated psychiatric services for inmates placed within the Department's "Supermax" unit. |
| October 2002-<br>August 2006 | Juvenile Mental Health and Medical Consultant, United States Department of Justice, Civil Rights Division, Special Litigation Section. |
| July 1998-<br>June 2000 | Psychiatric Consultant to the Pacific Research and Training Alliance's Alcohol and Drug Disability Technical Assistance Project.   This Project provides assistance to programs and communities that will have long lasting impact and permanently improve the quality of alcohol and other drug services available to individuals with disabilities. |
| July 1998-<br>February 2004 | Psychiatric Consultant to the National Council on Crime and Delinquency (NCCD) in its monitoring of the State of Georgia's secure juvenile detention and treatment facilities.  NCCD is acting as the monitor of the agreement between the United States and Georgia to improve the quality of the juvenile justice facilities, critical mental health, medical and educational services, and treatment programs.  NCCD ceased to be the monitoring agency for this project in June 1999.  At that time, the Institute of Crime, Justice and Corrections at the George Washington University became the monitoring agency.  The work remained unchanged. |
| July 1998-<br>July 2001 | Psychiatric Consultant to the San Francisco Campaign Against Drug Abuse (SF CADA). |
| March 1997-<br>Present | Technical Assistance Consultant, Center for Substance Abuse Treatment, Substance Abuse and Mental Health Services Administration, Department of Health and Human Services. |
| January 1996-<br>June 2003 | Psychiatric Consultant to the San Francisco Drug Court. |
| November 1993- | Executive Committee, Addiction Technology Transfer |

| | |
|---|---|
| June 2001 | Center (ATTC), University of California, San Diego. |
| December 1992 - December 1994 | Institutional Review Board, Haight Ashbury Free Clinics, Inc. Review all research protocols for the clinic per Department of Health and Human Services guidelines. |
| June 1991- February 2006 | Chief of Psychiatric Services, Haight Ashbury Free Clinic. Overall responsibility for psychiatric services at the clinic. |
| December 1990 - June 1991 | Medical Director, Haight Ashbury Free Clinic, Drug Detoxification and Aftercare Project. Responsible for directing all medical and psychiatric care at the clinic. |
| October 1996-July 1997 | Psychiatric Expert for the U.S. District Court, Northern District of California, in the case of Madrid v. Gomez, No. C90-3094-TEH. Report directly to the Special Master regarding the implementation of constitutionally mandated psychiatric care to the inmates at Pelican Bay State Prison. |
| April 1990 –January 2000 | Psychiatric Expert for the U.S. District Court, Eastern District of California, in the case of Gates v. Deukmejian, No. C1V S-87-1636 LKK-JFM.  Report directly to the court regarding implementation and monitoring of the consent decree in this case. (This case involves the provision of adequate psychiatric care to the inmates at the California Medical Facility, Vacaville). |
| January 1984 - December 1990 | Chief of Psychiatric Services, Haight Ashbury Free Clinic, Drug Detoxification and Aftercare Project.  Direct medical/psychiatric management of project clients; consultant to staff on substance abuse issues.  Special emphasis on dual diagnostic patients. |
| July 1981- December 1981 | Medical/Psychiatric Consultant, Youth Services, Hospitality House, San Francisco, CA.  Advised youth services staff on client management.  Provided training on various topics related to adolescents. Facilitated weekly client support groups. |

SERVICE TO ELEMENTARY AND SECONDARY EDUCATION:

| | |
|---|---|
| January 1996 - June 2002 | Baseball, Basketball and Volleyball Coach, Convent of the Sacred Heart Elementary School, San Francisco, CA. |
| September 1994 - June 2002 | Soccer Coach, Convent of the Sacred Heart Elementary School, San Francisco, CA. |
| June 1991- June 1994 | Board of Directors, Pacific Primary School, San Francisco, CA. |
| April 1989 - July 1996 | Umpire, Rincon Valley Little League, Santa Rosa, CA. |
| September 1988 - | Numerous presentations on Mental Health/Substance |

May 1995                          Abuse issues to the student body, Hidden Valley Elementary
                                  School and Santa Rosa Jr. High School, Santa Rosa, CA.


PRESENTATIONS:

1.    San Francisco Treatment Research Unit, University of California, San Francisco,
      Colloquium #1.    (10/12/1990).    "The Use of Anti-Depressant Medications with
      Substance-Abusing Clients."

2.    Grand Rounds.  Department of Psychiatry, University of California, San Francisco,
      School of Medicine.  (12/5/1990).  "Advances in the Field of Dual Diagnosis."

3.    Associates Council, American College of Physicians, Northern California Region,
      Program for Leadership Conference, Napa, California.    (3/3/1991).    "Planning a
      Satisfying Life in Medicine."

4.    24th Annual Medical Symposium on Renal Disease, sponsored by the Medical Advisory
      Board of the National Kidney Foundation of Northern California, San Mateo, California.
      (9/11/1991).  "The Chronically Ill Substance Abuser."

5.    Mentoring Skills Conference, University of California, San Francisco, School of
      Medicine, Department of Pediatrics.  (11/26/91).  "Mentoring as an Art."

6.    Continuing Medical Education Conference, Sponsored by the Department of Psychiatry,
      University of California, San Francisco, School of Medicine.  (4/25/1992).  "Clinical &
      Research Advances in the Treatment of Alcoholism and Drug Abuse."

7.    First International Conference of Mental Health and Leisure.  University of Utah.
      (7/9/1992).  "The Use of Commonly Abused Street Drugs in the Treatment of Mental
      Illness."

8.    American Group Psychotherapy Association Annual Meeting, San Francisco, California.
      (2/20/1993).  "Inpatient Groups in Initial-Stage Addiction Treatment."

9.    Grand Rounds.  Department of Child Psychiatry, Stanford University School of
      Medicine.  (3/17/93, 9/11/96).  "Issues in Adolescent Substance Abuse."

10.   University of California, Extension.   Alcohol and Drug Abuse Studies Program.
      (5/14/93), (6/24/94), (9/22/95), (2/28/97).  "Dual Diagnosis."

11.   American Psychiatric Association Annual Meeting.    (5/26/1993).    "Issues in the
      Treatment of the Dual Diagnosis Patient."

12.   Long Beach Regional Medical Education Center and Social Work Service, San Francisco
      Veterans Affairs Medical Center Conference on Dual Diagnosis.  (6/23/1993).  "Dual
      Diagnosis Treatment Issues."

13.   Utah Medical Association Annual Meeting, Salt Lake City, Utah.  (10/7/93).
      "Prescription Drug Abuse Helping your Patient, Protecting Yourself."

14. Saint Francis Memorial Hospital, San Francisco, Medical Staff Conference. (11/30/1993). "Management of Patients with Dual Diagnosis and Alcohol Withdrawal."

15. Haight Ashbury Free Clinic's 27th Anniversary Conference. (6/10/94). "Attention Deficit Disorder, Substance Abuse, Psychiatric Disorders and Related Issues."

16. University of California, San Diego. Addiction Technology Transfer Center Annual Summer Clinical Institute: (8/30/94), (8/29/95), (8/5/96), (8/4/97), (8/3/98). "Treating Multiple Disorders."

17. National Resource Center on Homelessness and Mental Illness, A Training Institute for Psychiatrists. (9/10/94). "Psychiatry, Homelessness, and Serious Mental Illness."

18. Value Behavioral Health/American Psychiatry Management Seminar. (12/1/1994). "Substance Abuse/Dual Diagnosis in the Work Setting."

19. Grand Rounds. Department of Oral and Maxillofacial Surgery, University of California, San Francisco, School of Dentistry. (1/24/1995). "Models of Addiction."

20. San Francisco State University, School of Social Work, Title IV-E Child Welfare Training Project. (1/25/95, 1/24/96, 1/13/97, 1/21/98, 1/13/99, 1/24/00, 1/12/01). "Demystifying Dual Diagnosis."

21. First Annual Conference on the Dually Disordered. (3/10/1995). "Assessment of Substance Abuse." Sponsored by the Division of Mental Health and Substance Abuse Services and Target Cities Project, Department of Public Health, City and County of San Francisco.

22. Delta Memorial Hospital, Antioch, California, Medical Staff Conference. (3/28/1995). "Dealing with the Alcohol and Drug Dependent Patient." Sponsored by University of California, San Francisco, School of Medicine, Office of Continuing Medical Education.

23. Centre Hospitalier Robert-Giffaard, Beoupont (Quebec), Canada. (11/23/95). "Reconfiguration of Psychiatric Services in Quebec Based on the San Francisco Experience."

24. The Labor and Employment Section of the State Bar of California. (1/19/96). "Understanding Alcoholism and its Impact on the Legal Profession." MCCE Conference, San Francisco, CA.

25. American Group Psychotherapy Association, Annual Training Institute. (2/13-2/14/96), National Instructor - Designate training group.

26. American Group Psychotherapy Association, Annual Meeting. (2/10/96). "The Process Group at Work."

27. Medical Staff Conference, Kaiser Foundation Hospital, Pleasanton, California, "The Management of Prescription Drug Addiction". (4/24/96)

28. International European Drug Abuse Treatment Training Project, Ankaran, Slovenia, "The Management of the Dually Diagnosed Patient in Former Soviet Block Europe". (10/5-10/11/96)

14

29.  Contra Costa County Dual Diagnosis Conference, Pleasant Hill, California, "Two Philosophies, Two Approaches: One Client". (11/14/96)

30.  Faith Initiative Conference, San Francisco, California, "Spirituality: The Forgotten Dimension of Recovery". (11/22/96)

31.  Alameda County Dual Diagnosis Conference, Alameda, California, "Medical Management of the Dually Diagnosed Patient". (2/4/97, 3/4/97)

32.  Haight Ashbury Free Clinic's 30th Anniversary Conference, San Francisco, California, "Indicators for the Use of the New Antipsychotics". (6/4/97)

33.  DPH/Community Substance Abuse Services/San Francisco Target Cities Project sponsored conference, "Intake, Assessment and Service Linkages in the Substance Abuse System of Care", San Francisco, California. (7/31/97)

34.  The Institute of Addictions Studies and Lewis and Clark College sponsored conference, 1997 Northwest Regional Summer Institute, "Addictions Treatment: What We Know Today, How We'll Practice Tomorrow; Assessment and Treatment of the High-Risk Offender". Wilsonville, Oregon. (8/1/97)

35.  The California Council of Community Mental Health Agencies Winter Conference, Key Note Presentation, "Combining funding sources and integrating treatment for addiction problems for children, adolescents and adults, as well as coordination of addiction treatment for parents with mental health services to severely emotionally disturbed children." Newport Beach, California. (2/12/98)

36.  American Group Psychotherapy Association, Annual Training Institute, Chicago, Illinois. (2/16-2/28/1998), Intermediate Level Process Group Leader.

37.  "Multimodal Psychoanalytic Treatment of Psychotic Disorders: Learning from the Quebec Experience." The Haight Ashbury Free Clinics Inc., sponsored this seminar in conjunction with the San Francisco Society for Lacanian Studies and the Lacanian School of Psychoanalysis. San Francisco, California. (3/6-3/8/1998)

38.  "AIDS Update for Primary Care: Substance Use & HIV: Problem Solving at the Intersection." The East Bay AIDS Education & Training Center and the East Bay AIDS Center, Alta Bates Medical Center, Berkeley, California sponsored this conference. (6/4/1998)

39.  Haight Ashbury Free Clinic's 31st Anniversary Conference, San Francisco, California, "Commonly Encountered Psychiatric Problems in Women." (6/11/1998)

40.  Community Networking Breakfast sponsored by San Mateo County Alcohol & Drug Services and Youth Empowering Systems, Belmont, California, "Dual Diagnosis, Two Approaches, Two Philosophies, One Patient." (6/17/1998)

41.  Grand Rounds, Department of Medicine, Alameda County Medical Center-Highland Campus, Oakland, California, "Medical/Psychiatric Presentation of the Patient with both Psychiatric and Substance Abuse Problems." (6/19/1998)

42.  "Rehabilitation, Recovery, and Reality: Community Treatment of the Dually Diagnosed Consumer." The Occupational Therapy Association of California, Dominican College of

San Rafael and the Psychiatric Occupational Therapy Action Coalition sponsored this conference. San Rafael, California. (6/20/1998)

43. "Assessment, Diagnosis and Treatment of the Patient with a Dual Diagnosis", Los Angeles County Department of Mental Health sponsored conference, Los Angeles, CA. (6/29/98)

44. Grand Rounds, Wai'anae Coast Comprehensive Health Center, Wai'anae, Hawaii, "Assessment and Treatment of the Patient who presents with concurrent Depression and Substance Abuse." (7/15/1998)

45. "Dual Diagnostic Aspects of Methamphetamine Abuse", Hawaii Department of Health, Alcohol and Drug Abuse Division sponsored conference, Honolulu, Hawaii. (9/2/98)

46. 9th Annual Advanced Pain and Symptom Management, the Art of Pain Management Conference, sponsored by Visiting Nurses and Hospice of San Francisco. "Care Issues and Pain Management for Chemically Dependent Patients." San Francisco, CA. (9/10/98)

47. Latino Behavioral Health Institute Annual Conference, "Margin to Mainstream III: Latino Health Care 2000." "Mental Illness and Substance Abuse Assessment: Diagnosis and Treatment Planning for the Dually Diagnosed", Los Angeles, CA. (9/18/98)

48. Chemical Dependency Conference, Department of Mental Health, Napa State Hospital, "Substance Abuse and Major Depressive Disorder." Napa, CA. (9/23/98)

49. "Assessment, Diagnosis and Treatment of the Patient with a Dual Diagnosis", San Mateo County Drug and Alcohol Services, Belmont, CA. (9/30/98)

50. "Assessment, Diagnosis and Treatment of the Patient with a Dual Diagnosis", Sacramento County Department of Mental Health, Sacramento, CA. (10/13/98)

51. California Department of Health, Office of AIDS, 1998 Annual AIDS Case Management Program/Medi-Cal Waiver Program (CMP/MCWP) Conference, "Triple Diagnosis: What's Really Happening with your Patient." Concord, CA. (10/15/98)

52. California Mental Health Director's Association Meeting: Dual Diagnosis, Effective Models of Collaboration; "Multiple Problem Patients: Designing a System to Meet Their Unique Needs", San Francisco Park Plaza Hotel. (10/15/98)

53. Northwest GTA Health Corporation, Peel Memorial Hospital, Annual Mental Health Conference, "Recognition and Assessment of Substance Abuse in Mental Illness." Brampton, Ontario, Canada. (10/23/98)

54. 1998 California Drug Court Symposium, "Mental Health Issues and Drug Involved Offenders." Sacramento, CA. (12/11/98)

55. "Assessment, Diagnosis and Treatment Planning for the Dually Diagnosed", Mono County Alcohol and Drug Programs, Mammoth Lakes, CA. (1/7/99)

56. Medical Staff Conference, Kaiser Foundation Hospital, Walnut Creek, CA, "Substance Abuse and Major Depressive Disorder." (1/19/99)

57.     "Issues and Strategies in the Treatment of Substance Abusers", Alameda County Consolidated Drug Courts, Oakland, CA.  (1/22/99 & 2/5/99)

58.     Compass Health Care's 12th Annual Winter Conference on Addiction, Tucson, AZ: "Dual Systems, Dual Philosophies, One Patient", "Substance Abuse and Developmental Disabilities" & "Assessment and Treatment of the High-Risk Offender." (2/17/99)

59.     American Group Psychotherapy Association, Annual Training Institute, Houston, Texas. (2/22-2/24/1999).  Entry Level Process Group Leader.

60.     "Exploring A New Framework: New Technologies For Addiction And Recovery", Maui County Department of Housing and Human Concerns, Malama Family Recovery Center, Maui, Hawaii.  (3/5 & 3/6/99)

61.     "Assessment, Diagnosis and Treatment of the Dual Diagnostic Patient", San Bernardino County Office of Alcohol & Drug Treatment Services, San Bernardino, CA.  (3/10/99)

62.     "Smoking Cessation in the Chronically Mentally Ill, Part 1", California Department of Mental Health, Napa State Hospital, Napa, CA.  (3/11/99)

63.     "Dual Diagnosis and Effective Methods of Collaboration", County of Tulare Health & Human Services Agency, Visalia, CA.  (3/17/99)

64.     Pfizer Pharmaceuticals sponsored lecture tour of Hawai'i.  Lectures included: Major Depressive Disorder and Substance Abuse, Treatment Strategies for Depression and Anxiety with the Substance Abusing Patient, Advances in the Field of Dual Diagnosis & Addressing the Needs of the Patient with Multiple Substance Dependencies.  Lecture sites included: Straub Hospital, Honolulu; Maui County Community Mental Health; Veterans Administration Hospital, Honolulu; Hawai'i (Big Island) County Community Mental Health; Mililani (Oahu) Physicians Center; Kahi Mohala (Oahu) Psychiatric Hospital; Hale ola Ka'u (Big Island) Residential Treatment Facility.  (4/2-4/9/99)

65.     "Assessment, Diagnosis and Treatment of the Patient with Multiple Disorders", Mendocino County Department of Public Health, Division of Alcohol & Other Drug Programs, Ukiah, CA.  (4/14/99)

66.     "Assessment of the Substance Abusing & Mentally Ill Female Patient in Early Recovery", Ujima Family Services Agency, Richmond, CA.  (4/21/99)

67.     California Institute for Mental Health, Adult System of Care Conference, "Partners in Excellence", Riverside, California.  (4/29/99)

68.     "Advances in the Field of Dual Diagnosis", University of Hawai'i School of Medicine, Department of Psychiatry Grand Rounds, Queens Hospital, Honolulu, Hawai'i.  (4/30/99)

69.     State of Hawai'i Department of Health, Mental Health Division, "Strategic Planning to Address the Concerns of the United States Department of Justice for the Alleged Civil Rights Abuses in the Kaneohe State Hospital."  Honolulu, Hawai'i.  (4/30/99)

70.     "Assessment, Diagnosis and Treatment Planning for the Patient with Dual/Triple Diagnosis", State of Hawai'i, Department of Health, Drug and Alcohol Abuse Division, Dole Cannery, Honolulu, Hawai'i.  (4/30/99)

71.    11th Annual Early Intervention Program Conference, State of California Department of Health Services, Office of Aids, "Addressing the Substance Abuse and Mental Health Needs of the HIV (+) Patient." Concord, California. (5/6/99)

72.    The HIV Challenge Medical Conference, Sponsored by the North County (San Diego) AIDS Coalition, "Addressing the Substance Abuse and Mental Health Needs of the HIV (+) Patient." Escondido, California. (5/7/99)

73.    "Assessment, Diagnosis and Treatment of the Patient with Multiple Disorders", Sonoma County Community Mental Health's Monthly Grand Rounds, Community Hospital, Santa Rosa, California. (5/13/99)

74.    "Developing & Providing Effective Services for Dually Diagnosed or High Service Utilizing Consumers", third annual conference presented by the Southern California Mental Health Directors Association. Anaheim, California. (5/21/99)

75.    15th Annual Idaho Conference on Alcohol and Drug Dependency, lectures included "Dual Diagnostic Issues", "Impulse Control Disorders" and "Major Depressive Disorder." Boise State University, Boise, Idaho. (5/25/99)

76.    "Smoking Cessation in the Chronically Mentally Ill, Part 2", California Department of Mental Health, Napa State Hospital, Napa, California. (6/3/99)

77.    "Alcohol and Drug Abuse: Systems of Care and Treatment in the United States", Ando Hospital, Kyoto, Japan. (6/14/99)

78.    "Alcoholism: Practical Approaches to Diagnosis and Treatment", National Institute On Alcoholism, Kurihama National Hospital, Yokosuka, Japan. (6/17/99)

79.    "Adolescent Drug and Alcohol Abuse", Kusatsu Kinrofukushi Center, Kusatsu, Japan. (6/22/99)

80.    "Assessment, Diagnosis and Treatment of the Patient with Multiple Diagnoses", Osaka Drug Addiction Rehabilitation Center Support Network, Kobe, Japan. (6/26/99)

81.    "Assessment, Diagnosis and Treatment of the Patient with Multiple Diagnoses", Santa Barbara County Department of Alcohol, Drug, & Mental Health Services, Buellton, California. (7/13/99)

82.    "Drug and Alcohol Issues in the Primary Care Setting", County of Tulare Health & Human Services Agency, Edison Ag Tac Center, Tulare, California. (7/15/99)

83.    "Working with the Substance Abuser in the Criminal Justice System", San Mateo County Alcohol and Drug Services and Adult Probation Department, Redwood City, California. (7/22/99)

84.    1999 Summer Clinical Institute In Addiction Studies, University of California, San Diego School of Medicine, Department of Psychiatry. Lectures included: "Triple Diagnosis: HIV, Substance Abuse and Mental Illness. What's Really Happening to your Patient?" "Psychiatric Assessment in the Criminal Justice Setting, Learning to Detect Malingering." La Jolla, California. (8/3/99)

85.    "Assessment, Diagnosis and Treatment Planning for the Patient with Dual and Triple Diagnoses", Maui County Department of Housing and Human Concerns, Maui Memorial Medical Center.  Kahului, Maui.  (8/23/99)

86.    "Proper Assessment of the Asian/Pacific Islander Dual Diagnostic Patient", Asian American Recovery Services, Inc., San Francisco, California.  (9/13/99)

87.    "Assessment and Treatment of the Dual Diagnostic Patient in a Health Maintenance Organization", Alcohol and Drug Abuse Program, the Permanente Medical Group, Inc., Santa Rosa, California.  (9/14/99)

88.    "Dual Diagnosis", Residential Care Providers of Adult Residential Facilities and Facilities for the Elderly, City and County of San Francisco, Department of Public Health, Public Health Division, San Francisco, California.  (9/16/99)

89.    "Medical and Psychiatric Aspects of Methamphetamine Abuse", Fifth Annual Latino Behavioral Health Institute Conference, Universal City, California.  (9/23/99)

90.    "Criminal Justice & Substance Abuse", University of California, San Diego & Arizona Department of Corrections, Phoenix, Arizona.  (9/28/99)

91.    "Creating Balance in the Ohana: Assessment and Treatment Planning", Hale O Ka'u Center, Pahala, Hawai'i.  (10/8-10/10/99)

92.    "Substance Abuse Issues of Runaway and Homeless Youth", Homeless Youth 101, Oakland Asian Cultural Center, Oakland, California.  (10/12/99)

93.    "Mental Illness & Drug Abuse - Part II", Sonoma County Department of Mental Health Grand Rounds, Santa Rosa, California.  (10/14/99)

94.    "Dual Diagnosis/Co-Existing Disorders Training", Yolo County Department of Alcohol, Drug and Mental Health Services, Davis, California.  (10/21/99)

95.    "Mental Health/Substance Abuse Assessment Skills for the Frontline Staff", Los Angeles County Department of Mental Health, Los Angeles, California.  (1/27/00)

96.    "Spirituality in Substance Abuse Treatment", Asian American Recovery Services, Inc., San Francisco, California.  (3/6/00)

97.    "What Every Probation Officer Needs to Know about Alcohol Abuse", San Mateo County Probation Department, San Mateo, California.  (3/16/00)

98.    "Empathy at its Finest", Plenary Presentation to the California Forensic Mental Health Association's Annual Conference, Asilomar, California.  (3/17/00)

99.    "Model for Health Appraisal for Minors Entering Detention", Juvenile Justice Health Care Committee's Annual Conference, Asilomar, California.  (4/3/00)

100.   "The Impact of Alcohol/Drug Abuse and Mental Disorders on Adolescent Development", Humboldt County Department of Mental Health and Substance Abuse Services, Eureka, California.  (4/4-4/5/00)

101.   "The Dual Diagnosed Client", Imperial County Children's System of Care Spring Training, Holtville, California.  (5/15/00)

19

102.  National Association of Drug Court Professionals 6th Annual Training Conference, San Francisco, California.  "Managing People of Different Pathologies in Mental Health Courts", (5/31 & 6/1/00); "Assessment and Management of Co-Occurring Disorders" (6/2/00).

103.  "Culture, Age and Gender Specific Perspectives on Dual Diagnosis", University of California Berkeley Extension Course, San Francisco, California.  (6/9/00)

104.  "The Impact of Alcohol/Drug Abuse and Mental Disorders on Adolescent Development", Thunder Road Adolescent Treatment Centers, Inc., Oakland, California.  (6/29 & 7/27/00)

105.  "Assessing the Needs of the Entire Patient: Empathy at its Finest", NAMI California Annual Conference, Burlingame, California. (9/8/00)

106.   "The Effects of Drugs and Alcohol on the Brain and Behavior", The Second National Seminar on Mental Health and the Criminal Law, San Francisco, California.  (9/9/00)

107.  Annual Conference of the Associated Treatment Providers of New Jersey, Atlantic City, New Jersey.  "Advances in Psychopharmacological Treatment with the Chemically Dependent Person" & "Treatment of the Adolescent Substance Abuser" (10/25/00).

108.  "Psychiatric Crises In The Primary Care Setting", Doctor Marina Bermudez Issues In College Health, San Francisco State University Student Health Service.  (11/1/00, 3/13/01)

109.  "Co-Occurring Disorders: Substance Abuse and Mental Health", California Continuing Judicial Studies Program, Center For Judicial Education and Research, Long Beach, California. (11/12-11/17/00)

110.  "Adolescent Substance Abuse Treatment", Alameda County Behavioral Health Care Services, Oakland, California. (12/5/00)

111.  "Wasn't One Problem Enough?"  Mental Health and Substance Abuse Issues.  2001 California Drug Court Symposium, "Taking Drug Courts into the New Millennium." Costa Mesa, California. (3/2/01)

112.  "The Impact of Alcohol/Drug Abuse and Mental Health Disorders on the Developmental Process."  County of Sonoma Department of Health Services, Alcohol and Other Drug Services Division. Santa Rosa, California.  (3/8 & 4/5/01)

113.  "Assessment of the Patient with Substance Abuse and Mental Health Issues."  San Mateo County General Hospital Grand Rounds.  San Mateo, California. (3/13/01)

114.  "Dual Diagnosis-Assessment and Treatment Issues."  Ventura County Behavioral Health Department Alcohol and Drug Programs Training Institute, Ventura, California.  (5/8/01)

115.  Alameda County District Attorney's Office 4th Annual 3R Conference, "Strategies for Dealing with Teen Substance Abuse." Berkeley, California. (5/10/01)

116.  National Association of Drug Court Professionals 7th Annual Training Conference, "Changing the Face of Criminal Justice."  I presented three separate lectures on the following topics: Marijuana, Opiates and Alcohol.  New Orleans, LA. (6/1-6/2/01)

117. Santa Clara County Drug Court Training Institute, "The Assessment, Diagnosis and Treatment of the Patient with Multiple Disorders." San Jose, California. (6/15/01)

118. Washington Association of Prosecuting Attorneys Annual Conference, "Psychiatric Complications of the Methamphetamine Abuser." Olympia, Washington. (11/15/01)

119. San Francisco State University, School of Social Work, Title IV-E Child Welfare Training Project, "Adolescent Development and Dual Diagnosis." (1/14/02)

120. First Annual Bi-National Conference sponsored by the Imperial County Behavioral Health Services, "Models of Family Interventions in Border Areas." El Centro, California. (1/28/02)

121. The California Association for Alcohol and Drug Educators 16th Annual Conference, "Assessment, Diagnosis and Treatment of Patients with Multiple Diagnoses." Burlingame, California. (4/25/02)

122. Marin County Department of Health and Human Services, Dual Diagnosis and Cultural Competence Conference, "Cultural Considerations in Working with the Latino Patient." (5/21/02)

123. 3rd Annual Los Angeles County Law Enforcement and Mental Health Conference, "The Impact of Mental Illness and Substance Abuse on the Criminal Justice System." (6/5/02)

124. New Mexico Department of Corrections, "Group Psychotherapy Training." Santa Fe, New Mexico. (8/5/02)

125. Judicial Council of California, Administrative Office of the Courts, "Juvenile Delinquency and the Courts: 2002." Berkeley, California. (8/15/02)

126. California Department of Alcohol and Drug Programs, "Adolescent Development and Dual Diagnosis." Sacramento, California. (8/22/02)

127. Haight Ashbury Free Clinic's 36th Anniversary Conference, San Francisco, California, "Psychiatric Approaches to Treating the Multiple Diagnostic Patient." (6/6/03)

128. Motivational Speaker for Regional Co-Occurring Disorders Training sponsored by the California State Department of Alcohol and Drug Programs and Mental Health and the Substance Abuse Mental Health Services Administration-Center for Substance Abuse Treatment, Samuel Merritt College, Health Education Center, Oakland, California. (9/4/03)

129. "Recreational Drugs, Parts I and II", Doctor Marina Bermudez Issues In College Health, San Francisco State University Student Health Service. (10/1/03), (12/3/03)

130. "Detecting Substance Abuse in our Clients", California Attorneys for Criminal Justice Annual Conference, Berkeley, California. (10/18/03)

131. "Alcohol, Alcoholism and the Labor Relations Professional", 10th Annual Labor and Employment Public Sector Program, sponsored by the State Bar of California. Labor and Employment Section. Pasadena, California. (4/2/04)

132.  Lecture tour of Japan (4/8-4/18/04).  "Best Practices for Drug and Alcohol Treatment." Lectures were presented in Osaka, Tokyo and Kyoto for the Drug Abuse Rehabilitation Center of Japan.

133.  San Francisco State University, School of Social Work, Title IV-E Child Welfare Training Project, "Adolescent Development and Dual Diagnosis." (9/9/04)

134.  "Substance Abuse and the Labor Relations Professional", 11th Annual Labor and Employment Public Sector Program, sponsored by the State Bar of California. Labor and Employment Section.  Sacramento, California.  (4/8/05)

135.  "Substance Abuse Treatment in the United States", Clinical Masters Japan Program, Alliant International University.  San Francisco, California. (8/13/05)

136.  Habeas Corpus Resource Center, Mental Health Update, "Understanding Substance Abuse."  San Francisco, California. (10/24/05)

137.  Yolo County Department of Behavioral Health, "Psychiatric Aspects of Drug and Alcohol Abuse."  Woodland, California. (1/25/06), (6/23/06)

138.  "Methamphetamine-Induced Dual Diagnostic Issues", Medical Grand Rounds, Wilcox Memorial Hospital, Lihue, Kauai. (2/13/06)

139.  Lecture tour of Japan (4/13-4/23/06).  "Assessment and Treatment of the Patient with Substance Abuse and Mental Illness."  Lectures were presented in Hiroshima and Kyoto for the Drug Abuse Rehabilitation Center of Japan.

140.  "Co-Occurring Disorders: Isn't It Time We Finally Got It Right?" California Association of Drug Court Professionals, 2006 Annual Conference.  Sacramento, California. (4/25/06)

141.  "Proper Assessment of Drug Court Clients", Hawaii Drug Court, Honolulu. (6/29/06)

142.  "Understanding Normal Adolescent Development," California Association of Drug Court Professionals, 2007 Annual Conference.  Sacramento, California. (4/27/07)

143.  "Dual Diagnosis in the United States," Conference sponsored by the Genesis Substance Abuse Treatment Network.  Medford, Oregon.  (5/10/07)

144.  "Substance Abuse and Mental Illness: One Plus One Equals Trouble," National Association of Criminal Defense Lawyers 2007 Annual Meeting & Seminar.  San Francisco, California.  (8/2/07)

145.  "Capital Punishment," Human Writes 2007 Conference.  London, England.  (10/6/07)

146.  "Co-Occurring Disorders for the New Millennium," California Hispanic Commission on Alcohol and Drug Abuse, Montebello, California.  (10/30/07)

147.  "Methamphetamine-Induced Dual Diagnostic Issues for the Child Welfare Professional," Beyond the Bench Conference.  San Diego, California. (12/13/07)

148.  "Working with Mentally Ill Clients and Effectively Using Your Expert(s)," 2008 National Defender Investigator Association (NDIA), National Conference, Las Vegas, Nevada.  (4/10/08)

149.    "Mental Health Aspects of Diminished Capacity and Competency," Washington Courts District/Municipal Court Judges' Spring Program.  Chelan, Washington.  (6/3/08)

150.    "Reflection on a Career in Substance Abuse Treatment, Progress not Perfection," California Department of Alcohol and Drug Programs 2008 Conference.  Burlingame, California.  (6/19/08)

151.    Mental Health and Substance Abuse Training, Wyoming Department of Health, "Diagnosis and Treatment of Co-occurring Mental Health and Substance Abuse." Buffalo, Wyoming. (10/6/09)

152.    2010 B.E. Witkin Judicial College of California, "Alcohol and Other Drugs and the Courts." San Jose, California. (August 4th & 5th, 2010)

153.    Facilitating Offender Re-entry to Reduce Recidivism: A Workshop for Teams, Menlo Park, CA.  This conference was designed to assist Federal Courts to reduce recidivism. "The Mentally-Ill Offender in Reentry Courts," (9/15/2010)

154.    Juvenile Delinquency Orientation, "Adolescent Substance Abuse." This was part of the "Primary Assignment Orientations" for newly appointed Juvenile Court Judges presented by The Center for Judicial Education and Research of the Administrative Office of the Court.  San Francisco, California. (1/12/2011, 1/25/12, 2/27/13 & 1/8/14)

155.    2011 B.E. Witkin Judicial College of California, "Alcohol and Other Drugs and the Courts." San Jose, California. (August 4th, 2011)

156.    2012 B.E. Witkin Judicial College of California, "Alcohol and Other Drugs and the Courts." San Jose, California. (August 2nd, 2012)

157.    Mexican Capital Legal Assistance Program Meeting, "Issues Related to Mental Illness in Mexican Nationals." Santa Fe, New Mexico (10/12/12); Houston, Texas (4/23/13)

158.    Los Angeles County Public Defender's Capital Case Seminar, "Mental Illness and Substance Abuse." Los Angeles, California. (9/27/13)

159.    "Perspectives on Race and Ethnicity for Capital and Non-Capital Defense Lawyers," conference sponsored by the Administrative Office of the US Courts, New York, NY., September 18-20, 2015.

160.    San Francisco Collaborative Courts, Superior Court of California, County of San Francisco sponsored training, "Personality Disorders," February 19, 2016.

161.    Administrative Office of the United States Courts, Federal Death Penalty Resource Counsel Projects, 2016 Strategy Session: "Ethnocultural Competency Issues in Working with Experts;" "Understanding Drug Use and Abuse by our Clients and Strategies for Effectively Incorporating this Information into the Mitigation Narrative." Denver, Colorado, November 17-19, 2016.

162.    "Evaluating the mentally ill and substance abusing client." Idaho Association of Criminal Defense Lawyers, Sun Valley, Idaho, March 10, 2017.

163. Mental Health & Death Penalty Training, Community Legal Aid Institute (LBH Masyarakat), Jakarta, Indonesia, February 12 -16, 2019.

PUBLICATIONS:

1) Kanas, N., Stewart, P. and Haney, K. (1988). *Content and Outcome in a Short-Term Therapy Group for Schizophrenic Outpatients.* Hospital and Community Psychiatry, 39, 437-439.

2) Kanas, N., Stewart, P. (1989*). Group Process in Short-Term Outpatient Therapy Groups for Schizophrenics.* Group, Volume 13, Number 2, Summer 1989, 67-73.

3) Zweben, J.E., Smith, D.E. and Stewart, P. (1991). *Psychotic Conditions and Substance Use: Prescribing Guidelines and Other Treatment Issues.* Journal of Psychoactive Drugs, Vol. 23(4), Oct.-Dec. 1991, 387-395.

4) Banys, P., Clark, H.W., Tusel, D.J., Sees, K., Stewart, P., Mongan, L., Delucchi, K., and Callaway, E. (1994). *An Open Trial of Low Dose Buprenorphine in Treating Methadone Withdrawal*. Journal of Substance Abuse Treatment, Vol. 11(1), 9-15.

5) Hall, S.M., Tunis, S., Triffleman, E., Banys, P., Clark, H.W., Tusel, D., Stewart, P., and Presti, D. (1994). *Continuity of Care and Desipramine in Primary Cocaine Abusers.* The Journal of Nervous and Mental Disease, Vol. 182(10), 570-575.

6) Galloway, G.P., Frederick, S.L., Thomas, S., Hayner, G., Staggers, F.E., Wiehl, W.O., Sajo, E., Amodia, D., and Stewart, P. (1996). *A Historically Controlled Trial Of Tyrosine for Cocaine Dependence.* Journal of Psychoactive Drugs, Vol. 28(3), pages 305-309, July-September 1996.

7) Stewart, P. (1999). *Alcoholism: Practical Approaches To Diagnosis And Treatment.* Prevention, (Newsletter for the National Institute On Alcoholism, Kurihama Hospital, Yokosuka, Japan) No. 82, 1999.

8) Stewart, P. (1999). *New Approaches and Future Strategies Toward Understanding Substance Abuse.* Published by the Osaka DARC (Drug Abuse Rehabilitation Center) Support Center, Osaka, Japan, November 11, 1999.

9) Stewart, P. (2002). *Treatment Is A Right, Not A Privilege.* Chapter in the book, *Understanding Addictions-From Illness to Recovery and Rebirth,* ed. by Hiroyuki Imamichi and Naoko Takiguchi, Academia Press (Akademia Syuppankai): Kyoto, Japan, 2002.

10) Stewart, P., Inaba, D.S., and Cohen, W.E. (2004). *Mental Health & Drugs.* Chapter in the book, *Uppers, Downers, All Arounders, Fifth Edition*, CNS Publications, Inc., Ashland, Oregon.

11) James Austin, Ph.D., Kenneth McGinnis, Karl K. Becker, Kathy Dennehy, Michael V. Fair, Patricia L. Hardyman, Ph.D. and Pablo Stewart, M.D. (2004) *Classification of High*

*Risk and Special Management Prisoners, A National Assessment of Current Practices.* <u>National Institute of Corrections</u>, Accession Number 019468.

12)   Stanley L. Brodsky, Ph.D., Keith R. Curry, Ph.D., Karen Froming, Ph.D., Carl Fulwiler, M.D., Ph.D., Craig Haney, Ph.D., J.D., Pablo Stewart, M.D. and Hans Toch, Ph.D. (2005) *Brief of Professors and Practitioners of Psychology and Psychiatry as <u>AMICUS CURIAE</u> in Support of Respondent: Charles E. Austin, et al. (Respondents) v. Reginald S. Wilkinson, et al. (Petitioners), In The Supreme Court of the United States, No. 04-495.*

13)   Stewart, P., Inaba, D.S., and Cohen, W.E.  (2007). *Mental Health & Drugs.*  Chapter in the book, <u>*Uppers, Downers, All Arounders, Sixth Edition*</u>, CNS Publications, Inc., Ashland, Oregon.

14)   Stewart, P., Inaba, D.S. and Cohen, W.E. (2011). *Mental Health & Drugs.* Chapter 10 in the book, <u>*Uppers, Downers, All Arounders, Seventh Edition,*</u> CNS Publications, Inc., Ashland, Oregon.

15)   Carl Fulwiler, M.D., Ph.D., Craig Haney, Ph.D., J.D., Pablo Stewart, M.D., Hans Toch, Ph.D. (2015) Brief of Amici Curiae Professors and Practitioners of Psychiatry and Psychology in Support of Petitioner: Alfredo Prieto v. Harold C. Clarke, et al., On Petition For A Writ of Certiorari To The United States Court of Appeals For The Fourth Circuit, In The Supreme Court of the United States, No. 15-31.

16)   Brief of Medical and Other Scientific and Health-Related Professionals as Amici Curiae in Support of Respondents and Affirmance: Ahmer Iqbal Abbasi, et al., Respondents v. James W. Ziglar, John D. Ashcroft, et al., and Dennis Hasty, et al. Petitioners, On Writs of Certiorari to the United States Court of Appeals for the Second Circuit, In the Supreme Court of the United States, Nos. 15-1358, 15-1359 and 15-1363.

17)   Brief of Professors and Practitioners of Psychiatry, Psychology, and Medicine as Amici Curiae in Support of Plaintiff-Appellant Eric Joseph Depaola, Denis Rivera & Luis Velazquez, Plaintiffs v. Virginia Department of Corrections, et al., External Review Team, et al., Defendants. On appeal from the United States District Court for the Western District of Virginia, Case No. 7:14-cv-00692 in the United States Court of Appeals for the Fourth Circuit, No. 16-7358.

*18)*   Brief of Professors and Practitioners of Psychiatry, Psychology, and Medicine in support of Petitioner Shawn T. Walker v. Michael A. Farnan, et al., Respondents on petition for Writ of Certiorari to the United States Court of Appeals for the Third Circuit in the Supreme Court of the United States, No. 17-53.

*19)*   Brief of Professors and Practitioners of Psychiatry, Psychology, and Medicine in support of Plaintiff-Appellant Edgar Quintanilla v. Homer Bryson, Commissioner, State of Georgia's Department of Corrections, et al., On appeal from the United States District Court for the Southern District of Georgia, Case No. 6:17-cv-00004-JRH-RSB in the United States Court of Appeals for the Eleventh Circuit, No. 17-14141.

# Exhibit B

### *PABLO STEWART, M.D.*
**Psychiatric Consultant**
**3021 La Pietra Circle**
**Honolulu, HI 96815**
**808-352-8074**
**pablo.stewart.md@gmail.com**

---

## TESTIMONY/DEPOSITIONS January 2000-Present

1. People versus Juan Duarte Gonzales (Lincoln County, Washington, January 2000)
2. People versus Jerry Lane Davis (Stanislaus County, California, September 2000)
3. James Andrew Melton versus Arthur Calderon, et al. (United States District Court, Los Angeles, California, December 2000)
4. Fremont Unified School District versus James Parks (Deposition taken in San Francisco, California, April 2001)
5. People versus Pablo Lomeli (Douglas County, Arizona, August 2001)
6. Dunlap versus County of Mendocino (Deposition taken in Oakland California, September 2001)
7. Maxwell Hoffman versus A.J. Arave, Warden, et al. (Deposition taken in San Francisco, October 2001)
8. People versus Michelle Michaud (Alameda County, California, April 2002)
9. People versus David Attias (Santa Barbara County, California, May/June 2002)
10. People versus Larry Christopher Graham (Contra Costa County, California, October 2002)
11. People versus Miguel Enrique Diaz (San Mateo County, California, November/December 2002)
12. United States versus Eugene Frederick Boyce, III (District Court, Honolulu, Hawai'i December 2002)
13. People versus Robert Daniel Weston (Stanislaus County, California, April/July 2003)
14. People versus Vincent Sanchez (Ventura County, California, August 2003)
15. Armstrong Petition JW01-6450 (San Francisco Juvenile Court, December 2003)
16. People versus Daniel Mugnolo (San Francisco City and County, December 2003)
17. Brandon Astor Jones versus Frederick Head, Warden (Deposition taken in San Francisco, January 2004)
18. David Perkins versus Frederick Head, Warden (Deposition taken in San Francisco, March 2004)
19. People versus Marino Hernandez (San Mateo County, California, June 2004)
20. Raphael Camargo versus Larry Norris, Director, Arkansas Department of Correction (Deposition taken in San Francisco, July 2004)
21. People versus Ronald Mathews (King County, Washington, August 2004)
22. People versus Huberto Mendoza (Stanislaus County, California, December 2004)
23. People versus James Essick (San Diego County, California, June 2005)

24. People versus Jesse Ignacio Sanchez Gomez (Ada County, Idaho, July/August 2005)
25. People versus Adrian Camacho (San Diego County, California, October 2005)
26. People versus Huberto Mendoza (Stanislaus County, California, November 2005)
27. People versus Paul Speer (Maricopa County, Arizona, January 2006)
28. People versus Mark Thigpen (San Mateo County, California, January 2006)
29. United States versus Tommy Ray Elam (District Court, Los Angeles, California, February 2006)
30. Enrique Arevalo versus Frederick Head, Warden (Deposition taken in San Francisco, March 2006)
31. United States versus Danny Lee Jones (District Court, Phoenix, Arizona, March 2006)
32. People versus Omar Dent, III (Los Angeles County, California, May 2006)
33. People versus Delaney Marks (Alameda County, California, May 2006)
34. People versus Angel Maturino Resendiz (Harris County, Texas, June 2006)
35. People versus Antonio Nicolosi (San Mateo County, California, July 2006)
36. Gregory Paul Lawler versus Frederick Head, Warden (Deposition taken in San Francisco, July 2006)
37. United States versus Todd Sarver (District Court, San Francisco, California, August 2006)
38. United States versus Eugene Frederick Boyce, III (United States District Court, Honolulu, Hawaii, October 2006)
39. Arthur Torlucci versus W.A. Duncan, (District Court, Santa Ana, California, November 2006)
40. Joaquin Enrique Arevalo versus William Terry, Warden, (Butts County, Georgia, December 2006)
41. People versus Jerry Cabonce, (San Mateo County, California, January 2007)
42. People versus Rodrigo Paniagua, (Santa Clara County, California, February 2007)
43. Gregory Paul Lawler versus William Terry, Warden, (Butts County, Georgia, February 2007)
44. United States versus Francisco Rodriguez, (District Court, Santa Ana, California, April 2007)
45. People versus O'Neal Durgin, (San Mateo County, California, June 2007)
46. Sepulveda versus Beard et al., (Bartonsville, Pennsylvania, June 2007)
47. Webster versus Ayers et al., (District Court, Sacramento, California, September 2007)
48. Ronald Deere versus Jeanne Woodford, et al., (District Court, Los Angeles, California, October 2007)
49. People versus Eric V. Hall (Ada County, Idaho, October 2007)
50. Rickey Dale Newman versus Larry Norris, Director, Arkansas Department of Correction (District Court, Fort Smith, Arkansas, November 2007
51. Ralph Coleman, et al. versus Arnold Schwarzenegger, et al. (Deposition taken in Sacramento, December 2007)
52. People versus Matthew Cunningham (Maricopa County, Arizona, January & February 2008)
53. People versus Alfredo Prieto (Fairfax County, Virginia, February 2008)

54. People versus Edward Gutierrez (Santa Clara County, California, May 2008)
55. Fred Graves, et al., Plaintiffs v. Joseph Arpaio, et al., Defendants. (Deposition taken in Phoenix, Arizona, July 2008). A supplemental deposition was also taken in July 2008 approximately 2 weeks after the initial deposition.
56. Fred Graves, et al., Plaintiffs v. Joseph Arpaio, et al., Defendants (District Court, Phoenix, Arizona, August 2008)
57. Ralph Coleman, et al. versus Arnold Schwarzenegger, et al. (Deposition taken in Sacramento, California, September 2008)
58. United States versus Naeem Williams (District Court, Honolulu, Hawaii, November 2008)
59. Ralph Coleman, et al. versus Arnold Schwarzenegger, et al. (Three Judge Panel, District Court, San Francisco, California, December 2008)
60. United States versus Michael Behenna (United States Army Court Marshall, Fort Campbell, Kentucky, February 2009)
61. United States versus Steven Green (District Court, Paducah, Kentucky, May 2009)
62. People versus Francisco Merino (San Mateo County, California, July 2009)
63. Milton Lewis versus State of California (District Court, Sacramento, California, October 2009)
64. People versus Adrian Sedano (San Mateo County, California, November 2009)
65. United States versus Noshir S. Gowadia (District Court, Honolulu, Hawaii, November 2009)
66. Johnny A. Johnson versus State of Missouri (St. Louis, Missouri, December 2009)
67. Martin Kipp versus State of California (District Court, Los Angeles, California, December 2009)
68. David Welch versus State of California (Martinez, California, September 2010)
69. State of Arizona versus Eddy Rose (Phoenix, Arizona, September 2010)
70. State of Delaware versus Gary Ploof (Dover, Delaware, October 2010)
71. State of Arizona versus Steven Ray Newell (Phoenix, Arizona, March 2011)
72. State of Arkansas versus Ricky Lee Newman (Fort Smith, Arkansas, March 2011)
73. People versus Kerri Livingston (San Mateo County, California, March 2011)
74. People versus Alexander Youshock (San Mateo County, California, April 2011)
75. United States versus Francisco Rodriguez (District Court, Santa Ana, California, May 2011)
76. State of Connecticut versus Robert Breton (Hartford, Connecticut, July 2011)
77. United States versus Billie Allen (St. Louis, Missouri, December 2011)
78. People versus Mohammed Ali (San Mateo County, California, February 2012)
79. Clemency Hearing re: Robert Towery (Florence, Arizona, March 2012)
80. United States versus Danny John, Jr. (Prescott, Arizona, March 2012)
81. State of Ohio versus Abdul H. Awkal (Cleveland, Ohio, June 2012)
82. People versus Monica McCarrick (Solano County, California, June 2012)
83. People versus Robert Hall (Ada County, Idaho, October 2012)
84. People versus Alamoti Finau (San Mateo County, California, November 2012)
85. United States versus Merrell Hobbs (District Court, Philadelphia, Pennsylvania, November 2012)

86. Ex Parte Juan Lizcano, W05-59563-S(A) (Dallas, Texas, November 2012)

87. People versus David Vanalstine (San Mateo County, California, December 2012)

88. Sinisterra versus the United States (District Court, Kansas City, Missouri, January 2013)

89. People versus Jing Hua Wu (San Jose, California, February & March 2013)

90. Coleman versus Brown (Deposition taken in San Francisco, California, March 2013)

91. Coleman versus Brown (District Court, Sacramento, CA, June 2013)

92. Tate versus Humphrey (Deposition taken in San Francisco, California, June 2013)

93. Coleman versus Brown (District Court, Sacramento, CA, October 2013)

94. People versus Alegria (Tucson, Arizona, October 2013)

95. Commonwealth v. Michael Pruitt (Reading, PA, November 2013)

96. Coleman versus Brown (District Court, Sacramento, CA, December 2013)

97. Fred Graves, et al., Plaintiffs v. Joseph Arpaio, et al., Defendants (District Court, Phoenix, Arizona, March 2014)

98. Deposition taken in Parsons, et al v. Ryan. March 28, 2014, San Francisco, CA.

99. Evidentiary hearing in State of Arizona v. Albert Martinez Carreon. Phoenix Arizona, April 21 & 22, 2014.

100. United States v. Naeem Williams, (District Court, Honolulu, HI, April 29 & 30, and June 3, 2014

101. Deposition taken in Hernandez v. County of Monterey, San Francisco, CA, July 8, 2014

102. United States v. Thomas Steven Sanders, (District Court, Alexandria, LA, September 22 & 23, 2014)

103. Deposition taken in Kurian David, et al., plaintiffs v. Signal International, LLC, defendant, San Francisco, California, October 2014)

104. People v. Dennis McGraw (Vallejo, California, November 2014)

105. People v. Leticia Serna (San Jose, California, December 2014)

106. Wilridge v. Marshall, (District Court, San Francisco, California, February 2015)

107. People v. Hugo Munguia-Hernandez (Redwood City, California, July 2015)

108. Deposition taken in Goddard v. State of California, et al., San Mateo, California, September 2015.

109. People v. Bryan Thomas (Redwood City, California, October 2015)

110. Carlos Gutierrez v. E.K. McDaniel, Warden, et al. (Reno, Nevada, January 2016)

111. State of Arkansas v. Rickey Dale Newman (Fort Smith, Arkansas, January 2016)

112. Deposition taken in Roscoe Walker v. Ford Motor Company, et al., San Mateo, California, February 2016.

113. People v. Philip Law (Boise, Idaho, May 2016)

114. United States v. Joel Manuel Taylor, (District Court, San Francisco, CA, March 18, April 25 & May 25, 2016)

115. United States v. Henry Cervantes, et al, (District Court, Oakland, CA, June 28, 2016)

116. Manual Camacho v. State of Arkansas, (District Court, Fort Smith, Arkansas, November 8, 2016)

117. The People of Guam vs. Mark Anthony Torre, Jr. (Superior Court of Guam, Agana, Guam, February 22, 2017)

118. Kevin Webb, et. al., v. Brad Livingston, et. al. (civil action no. 4:14-cv-03302). Deposition taken in San Francisco, California, June 2, 2017)

119. State of Missouri v. Marvin Rice (11DE-CR00590-2), video deposition taken in Honolulu, HI, July 20, 2017.

120. Ashoor Rasho et al. v. Director John Baldwin, (District Court, Peoria, Illinois, December 18 & 19, 2017)

121. United States v. Nna Alpha Onuoha, (District Court, Riverside, California, January 24, 2018)

122. Ashoor Rasho et al. v. Director John Baldwin, (District Court, Peoria, Illinois, February 27 & 28, March 1, and August 27-30, 2018)

123. United States v. Alfonso Rodriguez, Jr. Deposition taken in Honolulu, HI, September 6, 2018.

124. People v. Omar Pettigen (Superior Court, Alameda County, CA, July 22, 2019)

125. United States v. Roger Trent Skaggs (District Court, Cincinnati, Ohio, July 25, 2019)

126. Parsons, et al v. Shin (District Court, Phoenix, AZ, November 3, 2021)

127. Ashoor Rasho et al. v. Director John Baldwin, (District Court, Peoria, Illinois, February 1, 2022)

128. Joseph O'Malley v. Hawaii Department of Safety (Superior Court, Honolulu, HI, February 3, 2022)

129. Barrientos v. Core Civic (Deposition), April 14, 2022.

130. State of Missouri v. Marvin Rice (11DE-CR00590-2), (Superior Court, Clark County, MO, March 31, 2022)

131. United States v. Jason Solatario Brown (District Court, Guam, January 6, 2023)

132. Daniels v. Jeffreys (Deposition), March 1, 2023.