DONALD SPECTER – 083925
STEVEN FAMA – 099641
MARGOT MENDELSON – 268583
PRISON LAW OFFICE
1917 Fifth Street
Berkeley, California  94710-1916
Telephone:   (510) 280-2621

CLAUDIA CENTER – 158255
DISABILITY RIGHTS EDUCATION
AND DEFENSE FUND, INC.
Ed Roberts Campus
3075 Adeline Street, Suite 210
Berkeley, California  94703-2578
Telephone:   (510) 644-2555

MICHAEL W. BIEN – 096891
ERNEST GALVAN – 196065
LISA ELLS – 243657
THOMAS NOLAN – 169692
JENNY S. YELIN – 273601
MICHAEL S. NUNEZ – 280535
AMY XU – 330707
CARA E. TRAPANI – 313411
MARC J. SHINN-KRANTZ – 312968
ALEXANDER GOURSE – 321631
GINGER JACKSON-GLEICH – 324454
ADRIENNE PON HARROLD – 326640
ARIELLE W. TOLMAN – 342635
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California  94105-1738
Telephone:   (415) 433-6830

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>       Plaintiffs,<br><br>    v.<br><br>GAVIN NEWSOM, et al.,<br><br>       Defendants. | Case No. 2:90-CV-00520-KJM-DB<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION TO REJECT DEFENDANTS' PLAN TO RECRUIT AND RETAIN PSYCHIATRIC INPATIENT PROGRAM STAFF (ECF NO. 7787) AS NON-COMPLIANT WITH COURT'S ORDERS**<br><br>Judge:  Hon. Kimberly J. Mueller |

[4264429.5]

## TABLE OF CONTENTS

**Page**

NOTICE OF MOTION.................................................................................................. 1

INTRODUCTION ....................................................................................................... 2

LEGAL STANDARD .................................................................................................. 4

ARGUMENT .............................................................................................................. 5

I.  THE LIFT AND SHIFT PIPS HAVE BEEN AND CONTINUE TO BE
    SEVERELY UNDERSTAFFED.................................................................. 5

II.  THE HIGH VACANCY RATE IN THE LIFT AND SHIFT PIPS LIMITS
     CARE AND HARMS PATIENTS............................................................... 7

III.  DEFENDANTS' PLAN TO REMEDY PIP STAFFING DEFICIENCIES IS
      WHOLLY INADEQUATE ........................................................................ 9

      A.  Defendants' Plan Has Already Proven to Be Ineffective at Resolving
          the High PIP Staffing Vacancies .................................................. 10

      B.  Defendants' Plan Does Not Comply with the Court's Order to
          Develop a Plan that Addresses Staff Retention............................... 12

      C.  Defendants' Plan Does not Target Mental Health Staffing in the Lift
          and Shift PIPs ............................................................................ 14

      D.  Defendants' Plan Ignores Recreational Therapists ....................... 15

IV.  THE COURT SHOULD ORDER DEFENDANTS TO FILE A COMPLIANT
     RECRUITMENT AND RETENTION PLAN IN THIRTY DAYS AND TO
     REDUCE PIP STAFFING VACANCIES TO 10% OR LESS WITHIN A
     YEAR ............................................................................................... 15

CONCLUSION......................................................................................................... 17

CERTIFICATION OF ORDERS REVIEWED ............................................................. 18

[4264429.5]

i

**NOTICE OF MOTION**

PLEASE TAKE NOTICE that pursuant to the Court's order of March 17, 2023, ECF No. 7765, adopting a briefing schedule on disputes regarding Defendants' plan to recruit and retain mental health clinicians in Defendants' Psychiatric Inpatient Programs, Plaintiffs will, before the Honorable Kimberly J. Mueller, at the United States District Court at 501 I Street, Sacramento, California 95814 and at the time and date set by the Court, move that the Court reject the California Department of Corrections and Rehabilitation's Plan to recruit and retain psychiatric inpatient staff (ECF No. 7787) as non-compliant with the Court's orders at ECF No. 7765, 7697.  Plaintiffs will move the Court to order that, within thirty days, CDCR file a revised plan that complies with the Court's orders, and order that, within one year, Defendants lower the clinical vacancy rates in the Psychiatric Inpatient Programs at CHCF, CMF, and SVSP to the court-ordered benchmark of ten percent

Plaintiffs' motion is based on this notice, the following memorandum of points and authorities, the Declarations of Michael S. Nunez and Lisa Ells in support of Plaintiffs' motion, filed herewith, and the pleadings and records on file with the Court in this action.

[4264429.5]

1

PLS' NOT. OF MOT. AND MOT. TO REJECT DEFENDANTS' PLAN TO RECRUIT AND RETAIN
PSYCHIATRIC INPATIENT STAFF (ECF NO. 7787) AS NON-COMPLIANT WITH COURT'S ORDERS

1

**INTRODUCTION**

2          For years, Defendants have consistently failed to staff the CHCF PIP, CMF PIP,

3    and SVSP PIP ("Lift and Shift PIPs") with sufficient key mental health clinicians,

4    including psychiatrists, psychologists, social workers, and recreational therapists.  As of

5    February 2023, the overall mental health staff vacancy rate in CMF PIP is 50.7%, CHCF

6    PIP is 38.7%, and SVSP PIP is 22.8%.  Declaration of Michael S. Nunez in Support of

7    Pls.' Mot. To Reject Defs.' Plan to Recruit and Retain PIP staff (ECF No. 7787) as Non-

8    Compliant with Court's Orders ("Nunez Decl.") ¶¶ 2-3, Ex. A ; *see also* Defs' Monthly

9    Mental Health Staffing Vacancy Reports for Feb. 2023 ("Feb. 2023 Staffing Report"),

10   ECF No. 7789 at 11-15.

11         On May 17, 2022, the Special Master filed his Twenty-Ninth Monitoring Round

12   Report – Part A: Special Master's Monitoring Report on the Psychiatric Inpatient

13   Programs for Mental Health Patients of the California Department of Corrections and

14   Rehabilitation ("Special Master's 2022 Inpatient Report") wherein he reported that the

15   staffing vacancies in the Lift and Shift PIPs were "dangerously high" and, as a result,

16   "were unable to meet the needs of their patients and delivered inadequate care."  Special

17   Master's 2022 Inpatient Report, ECF No. 7555 at 37, 50.[1]  The Special Master detailed the

18   deficient treatment, including insufficiently frequent and inadequate clinical contacts and

19   group treatment, as well as substandard treatment planning, that resulted from the PIP

20   staffing crisis.  *Id.* at 66-68, 70, 74, 153.  The Special Master recommended, and the Court

21   subsequently ordered, that Defendants develop a "comprehensive plan" to address the

22   "seriously deficient" vacancy rates for psychiatrists, psychologists, social workers, and

23   recreational therapists in the Lift and Shift PIPs.  *See id.* at 164; Order (Jan. 6, 2023), ECF

24   No. 7697 at 1, 3 ("Jan. 6, 2023 Order").  Defendants filed their responsive plan on March

25   28, 2023.  *See* Notice of Submission of the Cal. Dep't of Corrs. and Rehabilitation Plans to

26

27   _____

28   [1] Page citations to documents on the docket are based on ECF pagination.

1    Provide Minimum Treatment Standards for Psychiatric Inpatient Programs and to Recruit

2    and Retain Psychiatric Inpatient Staff (March 28, 2023), ECF No. 7787 ("Recruitment and

3    Retention Plan" or "Plan").

4         On its face, Defendants' Plan is not a serious effort to reduce PIP staffing vacancies

5    to minimally adequate levels.  *See id.* at 8-10.  Instead, Defendants' Plan attempts to shift

6    blame for PIP staffing vacancies to the tight labor market and simply rehashes mental

7    health staff recruitment programs that Defendants initiated months or even years ago, most

8    of which do not even target recruitment for PIP clinicians in particular and all of which

9    have already proven to be insufficient to cure PIP staffing vacancies.  *Id.*  Defendants' Plan

10   does not address working conditions and includes almost nothing to address staff retention

11   despite this Court's order to do so and the Special Master's finding that high staff turnover

12   is a key problem in the Lift and Shift PIPs.  *Id.*; Order (March 17, 2023), ECF No. 7765 at

13   2 ("March 17, 2023 Order"); Special Master's 2022 Inpatient Report at 51.  Nor will

14   Defendants' Plan ensure that the Lift and Shift PIPs have the staff they need to consistently

15   provide minimally appropriate levels of inpatient treatment, which is the subject of

16   Plaintiffs' other motion filed concurrently herewith.

17        Defendants have squandered the ample time that they have had to address the

18   spiraling staffing crisis in the Lift and Shift PIPs.  As a result, class members in these PIPs

19   – those with the greatest need for mental healthcare – are languishing with insufficient and

20   inadequate treatment, often even less treatment than they would receive in outpatient

21   settings.  Absent immediate action, the situation is likely to worsen due to a growing need

22   for inpatient beds and staff burnout.

23        Defendants' inaction to date demonstrates that additional action by the Court is

24   necessary to remedy this untenable situation.  Plaintiffs request that the Court order

25   Defendants to file, within thirty days, a revised plan to lower Lift and Shift PIP staff

26   vacancy rates for psychiatrists, psychologists, social workers, and recreational therapists to

27   the court-mandated benchmark of ten percent including a comprehensive plan to retain

28   clinicians.  Plaintiffs also request that the Court order Defendants to lower mental health

[4264429.5]

3

1  staffing vacancy rates in the Lift and Shift PIPs to at or below ten percent within one year

2  from the date of the Court's order in response to this motion, and that the Court make clear

3  that it will initiate proceedings to enforce this order, including through contempt fines, if

4  Defendants fail to comply.

5                                    **LEGAL STANDARD**

6          Defendants' court-ordered PIP staffing plan established maximum clinician-to-

7  patient ratios for psychiatrists, psychologists, social workers, and recreation therapists.

8  Defs.' Submission of the Cal. Dep't of Corrs. and Rehabilitation's Psychiatric Inpatient

9  Program Staffing Plan for FY 2021/2022 (Jul. 21, 2021), ECF No. 7245 ("PIP Staffing

10 Plan").  Defendants' current allocation of mental health positions to the PIPs is based on

11 Defendants' PIP Staffing Plan.  *See, e.g.*, Feb. 2023 Staffing Report at 3 (noting PIP

12 staffing reports reflect "positions allocated under the PIP Staffing Plan").  Defendants must

13 maintain staffing of key mental health clinicians in the PIPs at vacancy rates no greater

14 than ten percent of allocated positions.  Order (June 13, 2002), ECF No. 1383 at 4

15 ("June 13, 2002 Order") (establishing ten percent maximum vacancy rate for psychiatrists,

16 psychologists, and social workers); Order (Apr. 11, 2023), ECF No. 7806 at 2, 8

17 ("April 11, 2023 Order") (ordering Defendants to maintain a maximum ten percent

18 vacancy rate for recreational therapists); *see also* Order (Aug. 17, 2022), ECF No. 7605 at

19 5-6 ("Aug. 17, 2022 Order") (rejecting Defendants' objection to application of June 13,

20 2002 Order's ten percent maximum vacancy rates to PIPs).

21         The staffing levels required by Defendants' PIP Staffing Plan and the Court's

22 staffing orders are necessary to provide constitutionally adequate inpatient care in the PIPs.

23 The Court ordered Defendants to develop a "comprehensive plan" for Defendants to

24 remedy the "seriously deficient" psychiatrist, psychologist, social worker, and recreational

25 therapist staffing levels at the Lift and Shift PIPs in consultation with the Special Master

26 and Plaintiffs.  January 6, 2023 Order at 1, 3.  To comply with this Court's orders and be

27 consistent with Defendants' obligation to provide constitutionally adequate inpatient care,

28 Defendants' plan must be calibrated to achieve and maintain PIP mental health staff

[4264429.5]

                                          4

1  vacancy rates of ten percent or less.  *See* Apr. 11, 2023 Order; Aug. 17, 2022 Order;

2  June 13, 2002 Order.

3  **ARGUMENT**

4  **I.     THE LIFT AND SHIFT PIPS HAVE BEEN AND CONTINUE TO BE**
       **SEVERELY UNDERSTAFFED**

5

6         The Lift and Shift PIPs have suffered from severe understaffing of mental health

7  clinicians since DSH transferred control of these PIPs to CDCR in 2017 and before.

8  Special Master's 2022 Inpatient Report at 51, 231.  The Court first ordered Defendants to

9  reduce and maintain mental health staffing vacancies at below ten percent over twenty

10 years ago.  *See* June 13, 2002 Order.  Defendants have never achieved that benchmark and

11 remain out of compliance today.

12        During the Twenty-Ninth Round Inpatient Tour, the Special Master reported

13 observing vacancy rates at these three programs that "were consistent with or, in some

14 cases, significantly worse than the rates observed at the time of the court's denial of

15 defendants' motion to terminate proceedings in 2013."  Special Master's 2022 Inpatient

16 Report at 51.  The Special Master reported observing the following vacancy rates at the lift

17 and shift PIPs during his Twenty-Ninth Round tour.

18
|                          | CMF PIP | CHCF PIP | SVSP PIP |
|--------------------------|---------|----------|----------|
| Psychiatry               | 37%     | 30%      | 29%      |
| Psychology               | 49%     | 55%      | 20%      |
| Social Workers           | 68%     | 60%      | 46%      |
| Recreational Therapists  | 37%     | 38%      | 29%      |

23 *Id.* at 52.

24        This alarming situation has continued since the Special Master's Twenty-Ninth

25 Round Inpatient Report.  The following table shows the functional vacancy rates for the

26 key mental health clinical positions in the Lift and Shift PIPs in the Twenty-Ninth Round

27 alongside the functional vacancy rates as of February 2023, the most recent month for

28 which Defendants have reported staffing data.

PLS' NOT. OF MOT. AND MOT. TO REJECT DEFENDANTS' PLAN TO RECRUIT AND RETAIN
PSYCHIATRIC INPATIENT STAFF (ECF NO. 7787) AS NON-COMPLIANT WITH COURT'S ORDERS

///

///

| | CMF PIP | | CHCF PIP | | SVSP PIP | |
|---|---|---|---|---|---|---|
| | 29th Round | Feb. 2023 | 29th Round | Feb. 2023 | 29th Round | Feb. 2023 |
| Psychiatry | 37% | 34% | 30% | 34% | 29% | 24% |
| Psychology | 49% | 49% | 55% | 44% | 20% | 30% |
| Social Workers | 68% | 69% | 60% | 46% | 46% | 26% |
| Recreational Therapists | 37% | 40% | 38% | 31% | 29% | 2% |

*See* Special Master's 2022 Inpatient Report at 52; Feb. 2023 Staffing Report at 11-14.

As of February 2023, the vacancy rates for all four key mental health positions at CMF PIP and CHCF PIP remain dramatically higher than the court-ordered ten percent maximum vacancy rate. At SVSP, the vacancy rate for psychiatrists, psychologists, and social workers are also far above the court-ordered maximum vacancy rate. Furthermore, staff vacancies have actually worsened in key mental health professions at all three lift and shift PIPs since the Twenty-Ninth Round tours: psychiatry at CHCF PIP, psychology at SVSP PIP, and recreational therapists at CMF PIP.

The staffing crisis is likely to worsen absent swift and effective corrective action. First, CDCR itself projects that the demand for inpatient services will grow over the next two years, meaning that Defendants would need to reduce current staffing vacancies to merely maintain the dismal status quo. *See* Special Master's 2022 Inpatient Report at 38. Second, there is a serious risk that staffing vacancies in the Lift and Shift PIPs will continue to worsen given the reportedly low morale and burnout that mental health clinicians in those PIPs experience. *See* Special Master 2022 Inpatient Report at 50, 231, 259. Indeed, Plaintiffs' counsel attended the Special Master's most recent 30th Round tours of the Lift and Shift PIPs in January 2023, and it is clear that these problems persist

[4264429.5]

1  and are only getting worse.

2  **II.     THE HIGH VACANCY RATE IN THE LIFT AND SHIFT PIPS LIMITS CARE AND HARMS PATIENTS**

3

4          In his 2022 Inpatient Report, The Special Master detailed the many ways in which

5  the PIP staffing crisis is impairing patient access to critically necessary mental healthcare.

6  Staffing vacancies negatively affected treatment planning in the Lift and Shift PIPs.

7  Special Master's 2022 Inpatient Report at 66.  Frequency of individual treatment was

8  driven by inadequate staffing rather than patient needs.  *Id.* at 68.  Core clinical groups

9  were rarely offered due to high mental health clinician vacancies.  *Id.* at 160.  Assignments

10  of patients to groups were inappropriately based on staff availability rather than patient

11  need.  *Id.* at 67.  Vacancies of supervisory clinician positions also limited patient care

12  because, to compensate for these vacancies, line mental health staff were redirected away

13  from their patient care duties to perform tasks that are ordinarily performed by supervisory

14  clinicians.  *Id.* at 70.  "[M]any programs did not meet the established staff-to-patient

15  ratios" required by the PIP Staffing Plan.  *Id.* at 74.  Consequently, the Lift and Shift PIPs

16  provided less treatment than is required at even the EOP level of care.  *Id.* at 179, 232, 245,

17  293-95.

18          Staffing vacancies have in some instances entirely shut off patient access to

19  inpatient programs, and continue to contribute to unconstitutional delays in care.  CHCF

20  PIP closed to new admissions from September 2021 through the end of January 2022 due

21  to staffing vacancies.  Special Master's 2022 Inpatient Report at 54.  Even after CHCF PIP

22  reopened, Defendants limited new admissions to CHCF PIP due to staffing vacancies.  *Id.*

23  at 55.

24          Since the Twenty-Ninth round tours, staffing vacancies have continued to limit

25  patients' access to treatment in the Lift and Shift PIPs.  CHCF PIP continues to operate at

26  only 70% capacity.  Defendants' Census, Waitlists, and Transfer Timeline Compliance

27  Reports for Inpatient Mental Healthcare (Mar. 15, 2023), ECF No. 7762 at 10

28  ("Defendants' March 2023 Inpatient Waitlist Report").  Seventeen beds in the CMF PIP

[4264429.5]

7

1   have also been offline for years and remain offline due to staffing vacancies.  *Id.*; Nunez

2   Decl. Ex. B at 2.  Not coincidentally, with this many PIP units shut down for lack of

3   staffing (coupled with Defendants' persistent underutilization of empty DSH beds),

4   Defendants' compliance with the Program Guide transfer timelines for inpatient care has

5   deteriorated dramatically in recent months – even under threat of millions of dollars in

6   contempt fines.  *See* Defendants' March 2023 Inpatient Waitlist Report at 2 (30 untimely

7   patient transfers); Defs.' Census, Waitlists, and Transfer Timelines Compliance Reports

8   for Inpatient Mental Health Care (Feb. 15, 2023), ECF No. 7730 at 2 (44 untimely patient

9   transfers); Defs.' Census, Waitlists, and Transfer Timelines Compliance Reports for

10  Inpatient Mental Health Care (Jan. 17, 2023), ECF No. 7701 at 2 (39 untimely patient

11  transfers).  Plaintiffs' counsel attended the recent Thirtieth Round tours of the Lift and

12  Shift PIPs and observed that many limitations on patient access to care resulting from

13  staffing deficiencies persist.

14      The Special Master's suicide prevention expert has also found the Lift and Shift

15  PIPs engage in dangerous practices and provide deficient care, resulting in a string of

16  suicides.  *See* The Fifth Re-Audit and Update of Suicide Prevention Practices in the

17  Prisons of the Cal. Dep't of Corrs. And Rehabilitation and Baseline Audit of Suicide

18  Prevention Practices in the Psychiatric Inpatient Programs (Oct. 24, 2022), ECF No. 7636-

19  1 at 58-65 ("Hayes Fifth Re-Audit"); *see* January 6, 2023 Order, ECF No. 7696 (adopting

20  Fifth Re-Audit Report).  In some cases, the deficiencies in suicide prevention practices are

21  linked directly to poor staffing.  *See, e.g.,* Hayes Fifth Re-Audit, ECF No. 7636-1 at 300

22  ("A CMF-PIP supervisor informed this reviewer that the required supervisory review of

23  safety plans contained in discharging SRASHEs was not being completed due to shortages

24  in supervisory staff.").

25      Tragically, in the time since Mr. Hayes's last audit report, staffing shortages

26  resulting in inadequate care and insufficient clinical contacts contributed to two additional

27  class member deaths by suicide in the CMF PIP and SVSP PIP inpatient psychiatric

28  hospitals in just the last year.  Declaration of Pablo Stuart M.D.  In Support of Plaintiffs'

[4264429.5]

1  Mot. to Reject Defs.' Plan to Provide Minimum Treatment Standards for Psychiatric

2  Inpatient Programs (ECF No. 7787) as Inadequate to Remedy Defs.' Eighth Amendment

3  Violations ¶¶ 43-44.  The risk of further tragedies remains high, given that the massive

4  clinical shortages in the Lift and Shift PIPs have forced Defendants repeatedly to cut

5  corners on clinical care standards and requirements.  Defendants have adopted a stripped-

6  down version of the SRASHE for use in evaluating class member suicide risk at CMF PIP

7  due to limited staffing.  Nunez Decl. ¶ 5, Ex. C.  Indeed, the CMF and CHCF PIPs

8  continue to operate on licensing waivers permitting them to provide care below minimum

9  licensing standards under Title 22 standards due to their inadequate staffing levels.  *See,*

10 *e.g.*, Nunez Decl. ¶ 6-7, Exs. D ("California Medical Facility is proposing the following

11 alternative concept be considered in response to the considerable low staffing rates for

12 mental health staff within the PIP."), E, F.

13     It is clear that the Lift and Shift PIPs lack the basic staffing necessary to provide

14 adequate inpatient care given that, due to staffing deficiencies, these PIPs fail to provide

15 even the care required for EOP patients and use waivers and bed closures to mitigate even

16 greater limitations to patient care.

17 **III.    DEFENDANTS' PLAN TO REMEDY PIP STAFFING DEFICIENCIES IS
          WHOLLY INADEQUATE**

18

19     Against this dire backdrop, Defendants have set forth a "plan" in name only.  The

20 measures in Defendants' Plan are laudable, but they are simply not adequate for an

21 organization grappling with dangerously high staffing vacancies for critical positions in a

22 tight labor market.  Most of the provisions in Defendants' Plan do not focus on staffing in

23 the PIPs.  Recruitment and Retention Plan at 8-10.  To the extent that Defendants' Plan is

24 targeted at the PIPs, most of it simply describes actions that Defendants implemented

25 months or years ago, some of which predate the Special Master recommendation that

26 Defendants develop a plan, and that have already proven to be ineffective at meaningfully

27 improving mental health staffing in the PIPs.  Defendants have offered no reason to

28 believe that these measures will be any more effective going forward.  Finally, the Plan

[4264429.5]

9

PLS' NOT. OF MOT. AND MOT. TO REJECT DEFENDANTS' PLAN TO RECRUIT AND RETAIN
PSYCHIATRIC INPATIENT STAFF (ECF NO. 7787) AS NON-COMPLIANT WITH COURT'S ORDERS

1   largely ignores recreational therapists, and it does nothing to address working conditions

2   and almost nothing to address staff retention despite the fact that these are critical issues in

3   the Lift and Shift PIPs.

4          As an initial matter, Defendants attempt to justify their ongoing failure to recruit

5   and retain sufficient numbers of mental health clinicians in the Lift and Shift PIPs by

6   pointing to the tight labor market.  *See* Recruitment and Retention Plan at 8.  This Court

7   has already rejected this argument at least twice in just the last two months, and

8   Defendants offer no reason why the Court should not do so again here.  *See* Order (Feb.

9   28, 2023), ECF No. 7742 at 4;  Order (Apr. 13, 2023), ECF No. 7808 at 3 ("Apr. 13, 2023

10  Order") ("Nationwide labor shortages still do not relieve defendants" of their

11  "constitutional duty to "employ mental health staff in 'sufficient numbers to identify and

12  treat in an individualized manner those treatable inmates suffering from serious mental

13  disorders.'").  Instead, the tight labor market "indicate[s] defendants must act without

14  further delay to fill the chronic, longstanding gap between the number of available staff

15  and the number of staff necessary to treat mentally ill inmates in California's prisons."

16  Apr. 13, 2023 Order at 4.

17         Defendants' Plan must account for the tight labor market to ensure that Defendants

18  can achieve the court-ordered staffing levels in the PIPs, particularly given this Court's

19  prior findings that "defendants have a wide range of options available to meet their

20  constitutional obligations to hire sufficient" mental health staff.  October 10, 2017 Order,

21  ECF No. 5711, at 27; *see also* Department of Justice Response to January 6, 2023 Order,

22  ECF No. 7713 at 6 (noting that if Defendants cannot provide constitutionally adequate care

23  with existing staffing levels, "they must increase staff or reduce caseloads").

24  **A.     Defendants' Plan Has Already Proven to Be Ineffective at Resolving the
            High PIP Staffing Vacancies**

25

26         Defendants' Plan contains no meaningful new initiatives to address PIP staffing

27  vacancies.  Instead, Defendants' Plan describes actions that Defendants already

28  implemented months or years ago.  CDCR implemented the 15% pay differential, bonus

[4264429.5]

10

schedule, and increased registry rates for mental health clinicians in the PIPs nearly a year

ago in May 2022.  Recruitment and Retention Plan at 8; Nunez Decl. Ex. G at 13, 15.  The

bonus schedule for psychiatrists has been in place for even longer.  *See* Nunez Decl. Ex. G

at 15.  Indeed, the Court was aware they were already in effect at the time it issued the

order requiring the instant Plan.  *See* Defendants' Objections to Special Master 2022

Inpatient Report (May 27, 2022), ECF No. 7559 at 2 (reporting same "considerable pay

incentives" presented in Plan "went into effect on May 1, 2022").  Defendants began

conducting the streamlined hiring events over a year ago in January 2022, and while they

tout the fact that 1,000 offers were made through such events, those numbers are

meaningless because Defendants include all "health care" positions in that total – not just

the mental health positions at issue here.  Recruitment and Retention Plan at 9; Nunez

Decl. Exs. G at 10, H at 3.  The federal Health and Human Services student loan

forgiveness program has been available for nearly a decade, and some aspects of the

program ended long before Defendants filed their Recruitment and Retention Plan.  *See*

Nunez Decl. Ex. H at 16; Declaration of Lisa Ells in Support of Plaintiffs' Notice of Mot.

and Mot. to Reject Defs.' Plan to Recruit and Retain Psychiatric Inpatient Program Staff

(ECF No. 7787) as Non-Compliant with Court's Orders ¶ 3 ("Ells Decl.").  Defendants'

Visa sponsorship program has been available for over a decade, and Defendants' long-

standing practice of hiring job applicants above minimum starting salaries has been offered

as a solution to staffing woes for at least that long.  *See* Recruitment and Retention Plan at

9-10; Ells Decl. ¶ 3; *see also, e.g.,* Defendants' Status Report and Request to Modify Bed

Plan (Mar. 24, 2014), ECF No. 5123 at 3 ("In order to offer competitive salaries, both

CDCR and the Department of State Hospitals have the ability to 'hire-above-minimum' for

psychiatrists, i.e. offer newly hired psychiatrists salaries in excess of the minimum starting

salary in the State pay scale range.").

Defendants' own recruitment and retention staffing data demonstrate that

Defendants' Plan has been and will continue to be largely ineffective, despite Defendants'

claim that the pay differentials would render the instant court-ordered Plan unnecessary.

1    In 2022, while most of the measures in Defendants' Plan were already in effect,

2    Defendants managed to recruit only two psychiatrists, five psychologists, and nine social

3    workers across the Lift and Shift PIPs.  Nunez Decl. Ex. I.[2]  After taking staff separations

4    into account, in 2022, the Lift and Shift PIPs experienced a net *loss* of one psychiatrist, a

5    net gain of two psychologists, and a net gain of three social workers.  *Id.*  That is a drop in

6    the bucket.  There is no reason to think, and Defendants have offered none, that the

7    measures in Defendants' Plan – while laudatory and worth pursuing – will be any more

8    successful than they were in 2022.  To the contrary, the available evidence shows that,

9    without more, the measures in Defendants' Plan will continue to fail to reduce Defendants'

10   high PIP staffing vacancy rates meaningfully .

11          The Court has already made clear that it will not "sanction the continued pursuit of

12   remedial strategies that have not worked in the past."  Order (Oct. 10, 2017), ECF

13   No. 5711 at 6 ("Oct. 10, 2017 Order").  The Court should reject Defendants' Plan because

14   it has proven to be ineffective at putting even a small dent in the exceedingly high PIP staff

15   vacancy rates.

16          **B.    Defendants' Plan Does Not Comply with the Court's Order to Develop a Plan that Addresses Staff Retention**

17

18          Retention of mental health clinicians in the Lift and Shift PIPs is a severe problem.

19   The Special Master reported high staff turnover across multiple PIPs, which negatively

20   affected continuity of care.  Special Master's 2022 Inpatient Monitoring Report at 51, 281,

21   287-88.  This is not surprising.  Clinicians in the PIPs treat the most complex and difficult

22   patients, and the increased workloads and reduced support that accompany high staff

23   vacancy rates make working in this already challenging environment even more difficult.

24          Dissatisfaction with working conditions and overall job dissatisfaction amongst

25

26   _____

27   [2] This data does not include supervisory positions or recreational therapist classifications, because Defendants do not track that information.  See Nunez Decl. Ex. J.  It is difficult to understand how Defendants expect to ascertain the success of their Plan – particularly as to any retention efforts – without this information.

28

mental health clinicians has likely contributed to the high turnover and high vacancy rates in the PIPs.  The Special Master reported that many mental health clinicians in the Lift and Shift PIPs have low morale and report burnout.  Special Master's Inpatient Report at 50, 231, 259.  The Special Master's Labor Economist found that 57% of on-site CDCR psychiatrists surveyed, and over 47% of all psychiatrists surveyed, across all CDCR mental health programs, including the PIPs, were unsatisfied with their working conditions. Special Master's Report on His Expert's Analysis of Psychiatrist Employment Conditions and Compensation at the Cal. Dep't of Corrs. And Rehabilitation and the Dep't of State Hosps. (May 29, 2020), ECF No. 6695 at 224.  The Special Master's Labor Economist also found that over 40% of on-site CDCR psychiatrists and over a third of all CDCR psychiatrists across all of CDCR's mental health programs, including the PIPs, were unsatisfied with their jobs.  *Id.* at 219.  Although the Labor Economist did not survey psychologists, social workers, and recreational therapists, these other professionals face the same challenging working conditions that psychiatrists face so likely have many concerns similar to those that psychiatrists reported regarding working conditions.  Indeed, rates of dissatisfaction in the PIPs today are likely much worse than they were when the Labor Economist conducted his survey, given the dramatic downward spiral of clinical staffing levels in CDCR's inpatient programs in the years following that report.

Despite all of this, Defendants' Plan says nothing about working conditions or retention of clinicians in the PIPs.  Recruitment and Retention Plan at 8-10.  It does not include any measures to address working conditions in the PIP.  *Id.*  It includes only two measures that are arguably aimed at retention, payment of bonuses over the first few years (mostly the first two years) of clinicians' job tenure and federal student loan forgiveness for new clinicians who agree to work for at least two years in certain locations.  *Id.* at 8-9. But the bonuses are not new for psychiatrists, are not specific to the PIPs, and do not, to Plaintiffs' knowledge, apply to recreational therapists, and the loan forgiveness program is not specific to the PIPs, is not available to recreational therapists, and, of the Lift and Shift PIPs, is available only at SVSP PIP.  These limited measures alone, especially without any

1   proposal whatsoever to address working conditions,  are not a serious effort to tackle the

2   high staff turnover in the PIPs.  Moreover, as discussed above, these efforts have not had a

3   meaningful impact on improving PIP staffing since they were implemented.

4        The Court should reject Defendants' Plan because it does not comply with the

5   Court's order to develop a plan that addresses retention, in addition to recruitment, of Lift

6   and Shift PIP staff.  March 17, 2023 Order at 2.  A plan that ignores one of the two key

7   drivers of staff vacancy rates, retention (including deficient working conditions), and

8   includes no new actions to reduce staffing vacancies other than marketing is far from

9   "comprehensive."  January 6, 2023 Order at 1, 3.

10       **C.      Defendants' Plan Does not Target Mental Health Staffing in the Lift and**
              **Shift PIPs**

11

12       The Court should also reject Defendants' Plan because it does not comply with the

13  Court's order to develop a plan to address staffing vacancies specifically in the Lift and

14  Shift PIPs.  January 6, 2023 Order at 3.  Most of the measures in Defendants' Plan broadly

15  target recruitment of mental health clinicians for positions in all of CDCR's mental health

16  programs, not specifically mental health clinicians in the PIPs.  Recruitment and Retention

17  Plan at 8-10.  But the Court's Order is specific to improving staffing in the Lift and Shift

18  PIPs – and for good reason, as clinical staffing levels are much, much worse in CDCR's

19  inpatient programs than in its institutions.  The vacancy rates for psychiatrists are 18%

20  worse in the Lift and Shift PIPs than CDCR's institutions; 13% worse for psychologists;

21  23% for social workers; and 19% for recreational therapists  *See* Nunez Decl. Ex. K; Feb.

22  2023 Staffing Report, ECF No. 7789 at 11-15.

23       Yet, despite this Court's order to develop a PIP-specific staffing plan, most of the

24  recruitment incentives and the two retention half-measures are not specific to PIP

25  clinicians.  The retention bonuses, streamlined hiring events, the Hiring above Minimum

26  program, the Visa sponsorship program, and the federal student loan forgiveness programs

27  are not specific to hiring for mental health positions in the PIPs, and SVSP PIP is the only

28  Lift and Shift PIP eligible for the U.S. Department of Health and Human Services loan

[4264429.5]

14

forgiveness program.  Recruitment and Retention Plan at 9-10; Nunez Decl. Exs. G at 10, H at 4-6; Ells Decl. ¶ 2.  The increased registry rates are available to all CDCR mental health clinicians, not just those in the PIPs.  *See* Nunez Decl. Ex. G at 15.

Most of the other initiatives in Defendants' Plan are also not specific to positions in the Lift and Shift PIPs.  Most of the marketing and outreach measures in Defendants' Plan are focused on recruiting for CDCR mental health positions generally – some are not even specific to mental health clinicians, and instead encompass all health care positions, like the CCHCS hiring events.  Recruitment and Retention Plan at 8-9; Nunez Decl. Ex. H at 1-3.  The college and high school outreach program and the psychologist internship program, which is not held in any of the Lift and Shift PIPs, cannot address the immediate need for additional mental health clinicians.  Recruitment and Retention Plan at 10.

### D.      Defendants' Plan Ignores Recreational Therapists

Defendants' Plan is also deficient because it makes no mention of recreational therapists.  *See* Recruitment and Retention Plan at 8-10.  Recreational therapists are not eligible for the recruitment and retention bonuses or the Health and Human Services federal student loan forgiveness program.  *See* Nunez Decl. Exs. G at 15, H at 5; *see also* Recruitment and Retention Plan at 9.  Many of the advertising initiatives in Defendants' Plan exclude recreational therapists.  Nunez Decl. Exs.  G at 10, H at 2-3, 7.  Recreational therapists are such an afterthought in Defendants' plan that they do not even track recreational therapist hiring and departure information.  *See* Nunez Decl. Ex. J.  Although recreational therapists are incidentally included in a few aspects of Defendants' Plan, this is far from enough to cure deficient recreational therapist staffing in the Lift and Shift PIPs.  The Plan cannot reasonably be expected to meaningfully improve staffing levels of recreational therapists, despite their specific inclusion in this Court's order.  It must be rejected for this reason as well.

### IV.   THE COURT SHOULD ORDER DEFENDANTS TO FILE A COMPLIANT RECRUITMENT AND RETENTION PLAN IN THIRTY DAYS AND TO REDUCE PIP STAFFING VACANCIES TO 10% OR LESS WITHIN A YEAR

Defendants' failure to submit a comprehensive, effective Plan is not due to a lack of

[4264429.5]

options to address their constitutional obligations.  As this Court recently reiterated, Defendants are not without known, available options to improve their clinical staffing levels.  *See* Aug. 29, 2022 Order, ECF No. 7608 at 4 (quoting findings from October 10, 2017 Order, ECF No. 5711, at 27).  They could also take steps to durably reduce the size of the *Coleman* class, which continues to rise and drive the need for inpatient hospital beds.  *See* Feb. 28, 2023 Order, ECF No. 7742 at 3-5; Department of Justice Response to January 6, 2023 Order, ECF No. 7713 at 6 (noting that if Defendants cannot provide constitutionally adequate care with existing staffing levels, "they must increase staff or reduce caseloads"); *see also* Nunez Decl. L (reporting *Coleman* class comprises over 34% of the overall CDCR population).

There are a variety of measures that Defendants could have, but did not, include in their Plan to boost recruitment and retention of mental health staffing in the Lift and Shift PIPs.  For example, Defendants could have included additional salary increases, additional retention bonuses, and higher contract rates for clinicians in the PIPs to account for the tight labor market.  They could have proposed to offer mental health clinicians in the PIPs additional fringe benefits.  They could have proposed changes to working conditions in the PIPs.  Instead, they proposed to keep doing what they have already been doing, which has already proven to be inadequate to remedy egregious staffing deficiencies that directly impair their ability to provide access to adequate inpatient care as required by the Eighth Amendment.

Defendants have squandered the ample time that they have had to address the staffing crisis in the Lift and Shift PIPs on their own.  Defendants' inaction to date demonstrates that additional action and oversight by the Court is necessary to remedy this untenable situation.  The Court should order Defendants to file, within thirty days, a revised Recruitment and Retention Plan that complies with the Court's orders to develop a "comprehensive plan" to address high mental health staffing vacancy rates in the Lift and Shift PIPs and bring them into compliance with the maximum 10% vacancy rate required by this Court's orders.  March 17, 2023 Order at 2; January 6, 2023 Order at 1, 3.

1    In the same order, the Court should provide Defendants with one year to implement

2    their revised Plan, with the expectation that it must lower the PIP clinical staffing vacancy

3    rates to the court-ordered benchmark of 10% or lower by the end of that year.  This

4    timeline is consistent with the Court's approach on mental health staffing across CDCR's

5    other mental health programs.  *See* October 10, 2017 Order at 11.  If Defendants fail to

6    meet this deadline, then the Court should initiate proceedings to enforce the maximum

7    vacancy rate requirement in the PIPs at that time.  Such swift and decisive action is

8    necessary to ensure that the PIPs have the resources they need to provide constitutionally

9    adequate care in the foreseeable future.

10    More importantly, setting this type of firm expectation and deadline will help to

11    ensure both that the revised version of Defendants' Plan takes this Court's orders, and the

12    Eighth Amendment, seriously.  It will also decrease the risk that the Court's ongoing

13    contempt proceedings related to staffing deficiencies in CDCR's institutions do not have

14    the unintended consequence of making the PIP staffing woes worse, as Defendants' turn

15    their attention (and potentially their clinical staffing resources) to attempting to mitigate

16    the millions of dollars in potential fines accumulating pursuant to the February 28, 2023

17    Order (as modified by the March 17 and April 7, 2023 orders).  *See* Feb. 28, 2023 Order,

18    ECF No. 7742; Mar. 17, 2023 Order, ECF No. 7766; Apr. 7, 2023 Order, ECF No. 7804;

19    Feb. 2023 Staffing Report, ECF No. 7789 at 23 (reflecting accumulation of almost $7

20    million in fines for February 2023 due to understaffing of non-PIP institutions).

## CONCLUSION

22    For years, Plaintiff class members in the Lift and Shift PIPs have suffered serious

23    deficiencies in mental healthcare due to the severe staffing shortages there.  Defendants

24    Recruitment and Retention Plan has already proven insufficient to remedy ore even

25    meaningfully improve this situation.  Absent court intervention, Defendants will remain

26    incapable of providing minimum appropriate treatment in the Lift and Shift PIPs, and the

27    dire situation is at risk of further deteriorating.

28    For the foregoing reasons, Plaintiffs request that the Court order Defendants to file a

[4264429.5]

17

1  revised Recruitment and Retention Plan within thirty days and order Defendants to lower

2  the Lift and Shift PIP mental health staff vacancy rates to the court-ordered benchmark of

3  10% within one year.

### CERTIFICATION OF ORDERS REVIEWED

5       The undersigned counsel for Plaintiffs certifies that he reviewed the following

6  relevant court orders: ECF Nos. 7808, 7806, 7765, 7742, 7697, 7608, 7605, 5711, 1383.

8  DATED:  April 17, 2023          Respectfully submitted,

9            ROSEN BIEN GALVAN & GRUNFELD LLP

10           By:  */s/ Michael S. Nunez*

11              Michael S. Nunez

12           Attorneys for Plaintiffs

[4264429.5]

PLS' NOT. OF MOT. AND MOT. TO REJECT DEFENDANTS' PLAN TO RECRUIT AND RETAIN
PSYCHIATRIC INPATIENT STAFF (ECF NO. 7787) AS NON-COMPLIANT WITH COURT'S ORDERS