# EXHIBIT A

STATE OF CALIFORNIA —DEPARTMENT OF CORRECTIONS AND REHABILITATION                                    GAVIN NEWSOM, GOVERNOR

**OFFICE OF LEGAL AFFAIRS**
Jennifer Neill
General Counsel
P.O. Box 942883
Sacramento, CA 94283-0001



April 21, 2023

Special Master Lopes
Pannone Lopes Devereaux and O'Gara LLC
Northwoods Office Park, Suite 215N
1301 Atwood Avenue
Johnston, RI 02919

Special Master Lopes,

I write in response to the Special Master's draft 30th Round Monitoring Report Part A on
CDCR's Psychiatric Inpatient Programs (PIP).  References to page numbers are to the page
number of the PDF.

     I.      Footnote Seven on Page 22 of the Draft Report Should be Revised

Footnote 7 on page 22 of the PDF notes that "During the review period, staffing limitations
continued to impact the frequency of clinical contacts in the PIPs. CDCR requested and the
CDPH granted waivers from Title 22 requirements governing the frequency of psychiatry
progress notes for each of the five PIPs. *See infra* pp. 124, 168, 210, 237 and 261. The Special
Master notes that the waivers in effect as of the time of this writing will be effective through
November 2025."  This statement implies that CDCR sought the Program Flexibilities (referred
to in the Draft Report as a "waiver") due to staffing limitations.  However, staffing limitations or
other staffing concerns played no part of this request.

CDCR sought and obtained Program Flexibilities of Title 22 section 76901 from the California
Department of Public Health not due to staffing concerns.  CDCR has obtained Program
Flexibilities for Title 22 section 76901 at all PIPs well before any "staffing limitations" came
into play.  These same Program Flexibilities pre-date the Lift and Shift and can be traced to as
early as 2015.  (See attached zip file of Program Flexibilities.  Current Program Flexibilities can
be accessed online at
https://www.cdph.ca.gov/Programs/CHCQ/LCP/CalHealthFind/Pages/SearchResult.aspx.)

Section 76901 requires a psychiatry note every three days for patients in a Correctional
Treatment Center.  Program Flexibilities are granted when consistent with section 79593 where
"alternative concepts, methods, procedures, techniques, equipment, personnel qualifications or
the conducting of pilot projects…are carried out with the provisions for safe and adequate care
and with the prior written approval of the [Department of Public Health.]"  In granting the
Program Flexibility, the California Department of Public Health has found CDCR's alternative
means are reasonable and will continue to allow for the provision of safe and adequate care to
patients in the PIPs.  The footnote should be revised for accuracy.

II.    Areas of the Draft Report that may Require Modification or Clarification

At page 33 of the Draft Report, the Special Master blames staffing shortages as "the largest barrier to PBST availability at the CHCF-PIP, while insufficient staffing was the reason that the CMF-PIP had lacked a formal PBST since September 2021" and that "the SVSP-PIP had developed behavioral plans for only six of 19 patients who had been referred for them."  But there is no mention that PBST or positive behavioral support teams are not a part of the *Coleman* remedy or a necessary element of adequate mental health treatment.  The paragraph commenting on PBST should be removed from the report or the Special Master should clarify that it is not something that is required under the Program Guide or part of the *Coleman* remedy.

Page 46 reports on psychiatry vacancy rates:  "All five PIPs reported unacceptably high psychiatry vacancy rates. There were astounding vacancy rates of …. *22 percent at the SQ-PIP*." (Emphasis added.)

Defendants understand that the Special Master conducted his paper monitoring of San Quentin in February 2023.  But at that time, San Quentin PIP reported a line staff psychiatrist vacancy rate of just six percent – not 22 percent.  (ECF No. 7789 at 11.)

The bar graph at page 58 purports to show the percentage of patients at each PIP that received "adequate," "marginally adequate," or "inadequate" care.  CMF PIP, for instance, was found to provide "inadequate" care to 100 percent of patients.  However, CMF PIP Patient J, at pages 301-302 of the Draft Report, was found to have received "adequate" care.  The bar graph should be revised to reflect that CMF PIP did not provide "inadequate" care to all its patients.  It should also be revised to reflect that the data is based on a point-in time sample of patients receiving treatment at the PIPs.

At page 61 of the Draft Report, the report states that "Initial psychiatric assessments were not located in nine of the 22 cases reviewed (41 percent) at SQ-PIP."  This appears inconsistent with other parts of the report:

- Page 54:  "SQ PIP maintained compliance with…initial and routine psychiatry contacts in both the acute and intermediate care programs."
- Page 269:  "for acute care patients, document review reflected the timely completion of initial and routine psychiatry contacts"
- Page 269:  "for intermediate care patients, document review indicated the timely completion of initial and routine psychiatry contacts"
- Page 274:  "All 15 patients who required an initial psychiatry contact had a timely contact."
- Page 275:  "All five patients who required initial psychiatry contacts had timely contacts."

The findings and their supporting evidence at page 61 should be reviewed and revised to ensure consistency with other findings in the Draft Report.

At page 70 of the Draft Report, it states "For [SQ-PIP patient H], the record review noted that the patient had been placed in restraints, however, no order was located in the record. These cases raised serious concerns about the use of emergency, highly restrictive interventions within the PIPs." But this patient had never been placed in restraints during his stay at San Quentin PIP. It is unclear what record the report is referring to. Please review Patient H's record to ensure this is accurate and revise the Draft Report accordingly.

At pages 71, 75, and 229 of the Draft Report, the report finds that cell front care was provided using a "cell phone" or "cellphone" at Salinas Valley State Prison PIP. While it is unclear which patient or patients the Draft Report refers to, CDCR believes this documentation was the result of a voice recognition/dictation system which incorrectly recorded "cell front" as "cell phone" as a similar error was found in other SVSP PIP records recently.

Pages 116 and 277 of the Draft Report state that San Quentin did not provide Milestone Completion Credits to Intermediate Care patients. However, San Quentin PIP provides intermediate care to condemned patients who are not eligible to receive such credits. The report should reflect this.

At page 271, the Draft Report states that San Quentin PIP employed five registry psychiatrists. This is in error. Submitted psychiatry staffing narrative documents in Section III of the document request did not indicate any registry allocation (in fact the SQ PIP uses zero registry psychiatrists). However, the submitted staffing grid in Section III, 3A did list "5" under the *Psychiatrists* FTE contractor/dual field which was an error. Although institution-wide, San Quentin has five dual appointment psychiatrists, this column should have been listed as zero as related to PIP-specific FTEs.

At page 275, the Draft Report states that "SQ-PIP did not report the total number of patients who were prescribed clozapine during the review period." This information was not requested in the *Psychiatric Inpatient Program Document Request Guidebook*, dated November 2022 and December 2022, and as such, was not reported. Defendants request that this sentence therefore be removed.

At page 276, the Draft Report states, regarding Penal Code section 2602 petitions, "The institution did not report the number of petitions that were denied or withdrawn." This information was not requested on Page 17 of the *Psychiatric Inpatient Program Document Request Guidebook*, dated November 2022 and December 2022, and as such, was not reported. Defendants request that this sentence therefore be removed.

At page 282 of the Draft Report, regarding San Quentin, the report states "The institution did not submit meeting minutes from either the quality management committee or the mental health program subcommittee. It was also not possible to discern various committee's reporting structures." However, on March 23, 2023, Quality Management Committee minutes were uploaded for August, September, October, November, and December 2022 and January 2023 to the "corrected and revised" SharePoint folder. Minutes for the Mental Health Program Subcommittee were uploaded on January 20th to the Section XVIII folder on SharePoint.

Page 4

Thank you for considering these comments.

Sincerely,

Nick Weber

*/s/ Nick Weber*

Attorney
California Department of Corrections and Rehabilitation
Office of Legal Affairs

# EXHIBIT B

## Millham, Sofia A.

| | |
|---|---|
| **From:** | Millham, Sofia A. |
| **Sent:** | Wednesday, March 22, 2023 5:31 PM |
| **To:** | Millham, Sofia A. |
| **Subject:** | FW: Fwd: Coleman: Notice of Revisions to Policy and Procedure re: Pre-Release Program |
| **Attachments:** | MH HQ - Memo, Policy and Procedure 12.11.2103 Use of Inpatient Flex Beds.pdf; I-Flex-PIP Bed Numbers.pdf |

**From:** "Hockerson, Dillon@CDCR" <Dillon.Hockerson@cdcr.ca.gov>
**Date:** January 9, 2023 at 11:40:04 AM PST
**To:** Coleman Team - RBG Only <ColemanTeam-RBGOnly@rbgg.com>, Steve Fama <sfama@prisonlaw.com>, Lopes Matthew <mlopes@pldlaw.com>, psydocmain@gmail.com, Cindy Radavsky <cradavsky@gmail.com>, "Irizarry, Cristina" <cirizarry@pldlaw.com>, Dan Potter <dpotter@alumni.brown.edu>, "Henry A. Dlugacz" <HDlugacz@blhny.com>, upcjdegroot@gmail.com, "Metzner, Jeffrey" <jeffrey.metzner@cuanschutz.edu>, Karen Rea <karenrea01@gmail.com>, Kerry Hughes <dockc99@aol.com>, "Walsh Kerry F." <kwalsh@pldlaw.com>, lhayesta@msn.com, "McClendon-Hunt, LaTri-c-ea" <lmcclendonhunt@pldlaw.com>, "Lopez, Lana L." <llopez@pldlaw.com>, Maria Masotta <maria@drmariamasotta.com>, "Ryan, Jr., Michael F." <mryan@pldlaw.com>, Mary P <mperrien@aol.com>, Patricia Williams <harconwil@gmail.com>, Gribbin Rachel <rgribbin@pldlaw.com>, Sharen Barboza <sharen@sharenbarboza.com>, "Millham, Sofia A." <smillham@pldlaw.com>, Raffa Steven <sraffa@pldlaw.com>, trougeux@hotmail.com, "Tavares, Zelia M" <ztavares@pldlaw.com>
**Cc:** "Paul B. Mello" <Pmello@hansonbridgett.com>, "Sam Wolff (swolff@hansonbridgett.com)" <swolff@hansonbridgett.com>, Elise Thorn <Elise.Thorn@doj.ca.gov>, Damon McClain <Damon.McClain@doj.ca.gov>, Namrata Kotwani <Namrata.Kotwani@doj.ca.gov>, "Weber, Nicholas@CDCR" <Nicholas.Weber@cdcr.ca.gov>, "Mehta, Amar@CDCR" <Amar.Mehta@cdcr.ca.gov>, "Cartwright, Steven@CDCR" <Steven.Cartwright@cdcr.ca.gov>, "Ball, Laurie@CDCR" <Laurie.Ball@cdcr.ca.gov>, "White, Lourdes@CDCR" <Lourdes.White@cdcr.ca.gov>, "Baker, Eric@CDCR" <Eric.Baker@cdcr.ca.gov>, "Bentz, Melissa@CDCR" <Melissa.Bentz@cdcr.ca.gov>, "Thind, Sundeep@CDCR" <Sundeep.Thind@cdcr.ca.gov>
**Subject: RE: Coleman: Notice of Revisions to Policy and Procedure re: Pre-Release Program**

Hello All,

Attached is the policy and procedure for the Use of Inpatient Flex Beds, along with the current list of Flex Beds, which were both issued to the field on January 4, 2023. Please note that the number of beds are based on current designations per Corrections Services.

Feel free to contact me if you have any questions.

Sincerely,
Dillon Hockerson
Attorney
CDCR Office of Legal Affairs
Cell: (916) 413-5796
Email: Dillon.Hockerson@cdcr.ca.gov

**Nicholas R. Guarino, Paralegal**
nguarino@pldlaw.com
P 401.824.5189

**Pannone Lopes Devereaux & O'Gara LLC**
Northwoods Office Park  Suite 215N
1301 Atwood Avenue   Johnston, RI  02919
www.pldolaw.com  •  Legal Disclaimer

DocuSign Envelope ID: AEF421B9-D532-4507-9546-C4316F244F0F

 **CALIFORNIA CORRECTIONAL HEALTH CARE SERVICES** 

# MEMORANDUM

| | |
|---|---|
| **Date:** | 1/4/2023 |
| **To:** | Chief Executive Officers |
| | Chiefs of Mental Health |
| | Chief Psychiatrists |
| | Associate Directors, Division of Adult Institutions |
| | Wardens |
| | Classification and Parole Representatives |
| **From:** | *Amar Mehta* |
| | AMAR MEHTA, M.D. |
| | Deputy Director |
| | Statewide Mental Health Program |
| | *Jared Dale Lozano* |
| | JARED D. LOZANO |
| | Deputy Director |
| | Division of Adult Institutions |
| **Subject:** | **RELEASE OF USE OF INPATIENT FLEX BEDS POLICY AND PROCEDURE** |

Currently, most California Department of Corrections and Rehabilitation mental health inpatient beds are designated as either Mental Health Crisis Bed (MHCB), Acute Psychiatric Program (APP), **or** Intermediate Care Facility (ICF) level of care, and the patient is physically moved to a different location if they need a different level of care.

At some locations, inpatient beds serve multiple purposes. Physical beds that can change between inpatient levels of care are called Inpatient Flex Beds (I-FLEX).

**Designation of New Flex Beds:**

Effective immediately, the following are designated as I-FLEX Beds:

- Psychiatric Inpatient Program (PIP) APP beds – May flex between APP and ICF
- California Health Care Facility (CHCF) MHCB – May flex between MHCB, APP, and ICF
- California Institution for Women (CIW) ICF beds – May flex between APP and ICF
- California Men's Colony (CMC) MHCB* - May flex between MHCB, APP, and ICF
- California Medical Facility (CMF) A/B Wing – May flex between MHCB, APP, and ICF
- San Quentin State Prison ICF beds – May flex between MHCB, APP, and ICF

\*This location is able to flex a portion of the inpatient capacity based on treatment space.

DocuSign Envelope ID: AEF421B9-D532-4507-9546-C4316F244F0F

# MEMORANDUM

Institutions with licensed MHCBs may be designated as I-Flex after an onsite review of programming and treatment space. All current I-Flex beds are listed on Attachment A. The Primary Use of Bed will now be reflected in SOMS as I-Flex or PIP.

Leadership at each facility with I-FLEX beds listed above is responsible for developing a Local Operating Procedure (LOP) based on the attached I-FLEX Bed LOP Template (Attachment B) to clearly designate the level of care of each patient in an I-FLEX Bed, and to provide individualized treatment meeting requirements of the designated level of care. Each facility must send their LOP to the Mental Health Policy Unit by email:  CDCR MHPolicyUnit@CDCR within 30 days of receipt of this memorandum.

Prior to operating I-FLEX beds, all staff treating patients in I-FLEX Beds must receive the standardized training from headquarters regarding policy and procedure related to treating patients at MHCB, APP, and ICF level of care. Training with staff must be completed within 60 days of the receipt of this memorandum.

If you have questions or require additional information related to this memorandum, you may contact the Mental Health Policy Unit by email:  CDCR MHPolicyUnit@CDCR.

Attachments

cc:  Steven Cartwright, Psy.D.
     Travis Williams, Psy.D.
     Wendy Worrell, Psy.D.
     Michael Golding, M.D.
     Toni Martello, M.D.
     Sophia Le, D.O.
     Daisy Minter, Ph.D.
     Gretchen Huntington, Psy.D.
     Lee Lipsker, Ph.D.
     Laurie Ball
     Jennifer Johnson
     Tennille Atchley
     Eric Baker
     Breann Cantu
     Mona Houston
     Pak Yan Leung
     Regional Mental Health Administrators
     Regional Psychiatrists
     Regional Health Care Executives

DocuSign Envelope ID: AEF421B9-D532-4507-9546-C4316F244F0F

| **VOLUME 12:** MENTAL HEALTH SERVICES | Effective Date: | 1/4/2023 |
|---|---|---|
| **CHAPTER 11:** CORRECTIONAL TREATMENT CENTER: PSYCHIATRIC INPATIENT PROGRAM | Revision Date(s): | |
| | Supersedes: | |
| **12.11.2103** USE OF INPATIENT FLEX BEDS – MENTAL HEALTH CRISIS BED, ACUTE PSYCHIATRIC PROGRAM, AND INTERMEDIATE CARE FACILITY | Attachments: | Yes ☒ No ☐ |
| | Director Approval | DocuSigned by: **Amar Mehta** 46AE21AE5D5B4D3... |

**Policy**

To assist with inpatient level of care and least restrictive housing needs, provide timely access to care, and meet Mental Health Services Delivery System Program Guide (2021 Revision) requirements, designated inpatient beds are used as Inpatient Flex (I-FLEX) Beds. These physical beds can be used for Mental Health Crisis Bed (MHCB), Acute Psychiatric Program (APP), or Intermediate Care Facility (ICF) level of care (LOC) based on statewide need as determined by Corrections Services in consultation with the Statewide Mental Health Program, Inpatient Referral Unit (IRU).

**Responsibilities**

Warden and Chief Executive Officer (CEO) are responsible for developing a Local Operating Procedure (LOP) based on the attached I-FLEX Bed LOP Template (Attachment B) to clearly designate the level of care of each patient in an I-FLEX Bed, and to provide individualized treatment meeting requirements for the designated level of care.

CEO and management team are responsible for ensuring adequate staffing at the level that requires the maximum number of staff, since beds may be flexed at any time.

All staff treating patients in I-FLEX Beds must be trained on the policy and procedures related to treating patients at the MHCB, APP, and ICF levels of care.

Implementation of this policy must be done in coordination with the I-FLEX Procedures.

**Purpose[1]**

I-FLEX beds offer a more agile approach to patient needs throughout the statewide system by ensuring that patients requiring 24-hour inpatient care for mental health disorders are referred, accepted, and admitted for treatment per the Mental Health Services Delivery System Program Guide requirements, with the goal of ensuring continuity of care.

---

[1] *This policy is intended to reflect best practices in a correctional setting and should be updated periodically to incorporate insights and lessons learned from experience, and to maintain consistency with evolving best practices and new advancements in care recommendations. Nothing contained herein is intended to address what is required to satisfy constitutional obligations.*

DocuSign Envelope ID: AEF421B9-D532-4507-9546-C4316F244F0F

| | |
|---|---|
| **References** | Mental Health Services Delivery System Program Guide – Chapters 5 and 6 |
| | Statewide Mental Health PIP Policy 12.11.2101 (A) – Referral and Admission |
| | Statewide Mental Health PIP Policy 12.11.2101 (B) – Discharge |
| | Statewide Mental Health PIP Policy 12.11.2109 – Treatment Planning and Procedures – Treatment Planning |
| | Statewide Mental Health PIP Policy 12.11.2100 – Housing Review |

**Questions**    If you have any questions or need any additional information related to this policy, you may contact the policy unit via e-mail at: CDCR MHPolicyUnit@cdcr.

DocuSign Envelope ID: AEF421B9-D532-4507-9546-C4316F244F0F

| VOLUME 12:<br>MENTAL HEALTH SERVICES | Effective Date: | 1/4/2023 |
|---|---|---|
| CHAPTER 11:<br>CORRECTIONAL TREATMENT CENTER: PSYCHIATRIC INPATIENT PROGRAM | Revision Date(s): | |
| | Supersedes: | |
| 12.11.2103<br>USE OF INPATIENT FLEX BEDS – MENTAL HEALTH CRISIS BED, ACUTE PSYCHIATRIC PROGRAM, AND INTERMEDIATE CARE FACILITY | Attachments: | Yes ☒ No ☐ |
| | Director Approval: | DocuSigned by:<br>Amar Mehta<br>46AE21AE5D5B4D3... |

| | *Procedure* |
|---|---|
| **1.** | Use of I-FLEX Beds for treatment of patients requiring MHCB, Acute, or ICF Level of Care (LOC) must occur when Corrections Services, in consultation with the Inpatient Referral Unit (IRU), identifies there is bed need for a specific level of inpatient care.<br><br>Current referral and admission procedures and timelines for admission will not be impacted by the designation of I-FLEX Beds. Patients in I-FLEX Beds must be referred to a new level of care as clinically indicated, according to the Electronic Health Care Records System (EHRS) workflow and PIP Policy 12.11.2101 (A) – Referral and Admission for inpatient referrals.<br><br>If an MHCB patient in an I-FLEX Bed is referred to Acute or ICF level of care, the treatment team must change the mental health LOC (also known as MHI) and initiate Acute or ICF referral process per current procedure and prepare the patient for possible transfer to another unit where they will continue Acute or ICF care. Patients will continue to receive MHCB level of care services until endorsed and admitted to the new level of care for either APP or ICF.<br><br>When it is initially determined that beds will be designated as I-FLEX Corrections Services will notify California Department of Corrections and Rehabilitation Population Management Unit when a bed requires the I-FLEX[1] designation in the Strategic Offender Management System. Once beds are designated as I-FLEX, Corrections Services will be responsible for internally tracking beds as MHCB, APP and ICF via the Referrals to Inpatient Programs Application (RIPA). Necessary reports will be made available to I-FLEX designated inpatient programs for operational purposes. I-FLEX beds are a statewide resource, as such, Corrections Services will designate bed use and communicate it to the IRU and the Executive Director of each inpatient program. Patients must not be physically transferred within the I-FLEX unit without an endorsement and acceptance, unless such a move is needed for psychiatric emergencies (see Emergency Moves section of PIP Policy 12.11.2101 (A) – Referral and Admission).<br><br>When a patient is endorsed and admitted to a new level of care within the same facility's I-FLEX unit without moving to a different unit, the receiving treatment team is not required to complete new intake evaluations, as the patient continues to remain in the same licensed unit. The acceptance unit must initiate acceptance, admission, and housing arrival orders per PIP Policy 12.11.2101 (A) – Referral and Admission procedure<br><br>When there is bed need for multiple LOCs, I-FLEX Beds located in a MHCB must be used in the following priority order:<br><br>    1.  MHCB |

---

[1]The Primary Use of Bed will be reflected as I-Flex or PIP in SOMs

DocuSign Envelope ID: AEF421B9-D532-4507-9546-C4316F244F0F

|  |  |
|---|---|
|  | 2. APP<br>3. ICF<br><br>When there is a bed need for multiple LOCs, I-Flex Beds located in CHCF PIP, CIW PIP, or CMF PIP must be used in the following priority order:<br><br>1. APP<br>2. ICF<br><br>CMF Health Care Treatment Center (HCTC) A/B Wing beds must be used in the following priority order:<br><br>1. ICF<br>2. APP<br>3. MHCB<br><br>San Quentin beds must be used in the following priority order:<br><br>1. APP Condemned<br>2. ICF Condemned<br>3. MHCB Condemned<br>4. APP Non-condemned<br>5. ICF Non-condemned<br>6. MHCB Non-condemned<br><br>IRU may recommend Corrections Services endorsement of patients to specific locations when Clozapine initiation/maintenance, psychological testing, and/or patients requiring dual medical and inpatient psychiatric treatment may be clinically indicated. |
| 2. | **Changing Level of Care to Acute or ICF**<br><br>1. Patients in I-FLEX Beds must be referred to an Acute or ICF LOC as clinically indicated, consistent with PIP Policy 12.11.2101 (A) – Referral and Admission.<br><br>2. If a patient in an I-FLEX Bed is referred to a different inpatient LOC, the treatment team must change the mental health LOC and initiate Acute or ICF referral process per current procedure; and prepare the patient for possible transfer to another unit where they will continue inpatient care.<br><br>3. If a patient in an I-FLEX Bed is referred to a new LOC, and is endorsed to the same I-Flex bed at the new LOC or moving to a different I-Flex bed in the same unit, the receiving treatment team is not required to complete new intake evaluations, as the patient continues to remain in the same licensed unit. The acceptance unit must initiate acceptance, admission, and housing arrival orders per current procedure.<br><br>4. If a patient is physically transferred to a different institution due to a LOC change and endorsement, the receiving treatment team must complete mental health and medical intakes as required by California Code of Regulations, Title 22. The acceptance unit at the receiving facility must initiate acceptance, admission, and housing arrival orders per current procedure. |
| 3. | **Provision of Treatment**<br><br>When a patient in an I-FLEX bed is referred to a different LOC, and the bed is flexed to allow the patient to receive the new level of treatment in the same bed, the patient must begin receiving |

DocuSign Envelope ID: AEF421B9-D532-4507-9546-C4316F244F0F

| | |
|---|---|
| | treatment consistent with requirements for the new LOC as soon as the patient is endorsed, accepted, and admitted at the new LOC.<br><br>Flex bed designations are managed by Corrections Services and patients will be placed in a bed that is flexed in accordance with their referred and accepted level of care. |
| **4.** | **<u>Discharges from I-FLEX Beds</u>**<br><br>1.  If an Acute or ICF LOC patient in an I-FLEX Bed is discharged, the treatment team must follow discharge procedures and policy in accordance with PIP Policy 12.11.2101 (B) - Discharge. Patients will continue to receive care until the patient is physically transferred out of the I-Flex bed.<br><br>2.  If a MHCB LOC patient in an I-FLEX Bed is discharged, the treatment team must follow discharge policy and procedures in accordance with the Mental Health Services Delivery System Program Guide Chapter 5 – MHCB and memorandum dated September 18, 2018 titled "Updated Mental Health Crisis Bed – Referral, Referral Rescission, and Discharge Policy and Procedures."<br><br>3.  If the treatment team is discharging a patient from an I-FLEX Bed and referring the patient to Acute or ICF LOC, the treatment team must refer the patient in accordance with PIP Policy 12.11.2101 (A) – Referral and Admission; and EHRS workflow. |

DocuSign Envelope ID: AEF421B9-D532-4507-9546-C4316F244F0F

## Designation of I-Flex Beds

Effective immediately, the following beds are designated as I-FLEX Beds:

**May flex between Mental Health Crisis Bed (MHCB), Acute Psychiatric Program (APP), and Intermediate Care Facilities (ICF)**

- California Health Care Facility (CHCF) MHCB – 80 beds
- CMF HCTC A/B Wing – 32 beds
- California Men's Colony MHCB – 12 beds
- San Quentin State Prison Psychiatric Inpatient Program (PIP) – 40 beds

**May flex between APP and ICF**

- All CHCF Acute – 202 beds
- All CMF Acute – 218 beds
- California Institution for Women ICF – 45 beds

Note: Number of beds are based on current designations per Corrections Services.

DocuSign Envelope ID: AEF421B9-D532-4507-9546-C4316F244F0F

**Inpatient Flex Bed Local Operating Procedure Template**

**IDENTIFICATION AND TRACKING OF INPATIENT FLEX BEDS (MHCB/APP/ICF)**

Purpose:  Institutions with Inpatient Flex (I-FLEX) Beds shall clearly designate and track the level of care (LOC) of patients assigned to these beds in order to ensure that patients receive clinically appropriate care based on their mental health LOC.

<u>Identification and Tracking Procedure</u>

The LOC of each patient in an I-FLEX bed shall be clearly identified and monitored through use of a readily-available tracking system in real-time basis. Tracking shall specify each patient's current LOC.  Tracking shall also identify which patients are pending endorsement to a new LOC, which patients have been endorsed to current bed I-FLEX bed, and which patients have been endorsed to a different location and are awaiting transfer.
*<ADD LOCAL PROCEDURE TO IDENTIFY AND TRACK THE LOC OF EACH PATIENT IN I-FLEX BEDS>*

Information updated in the tracking system shall be communicated by/through use of
*<ADD LOCAL PROCEDURE TO COMMUNICATE BED STATUS INFORMATION/UPDATES. Examples of this may include: noting on cell door with a magnet, disseminating on a status report or end of shift report, updating on a bed map or nursing station communication board >*

The LOC of each patient in an I-FLEX bed shall be reviewed daily during
*<ADD LOCAL PROCEDURE TO BE UTILIZED TO REVIEW INFORMATION ACROSS DISCIPLINES.  Examples of this may include daily huddles or nursing rounds>*

<u>Identification of Treatment Team Responsible for Care</u>

When a patient in an I-FLEX bed is referred to a different level of care, and the bed is flexed to allow the patient to receive the new level of treatment in the same bed, the patient may be re-assigned to a new treatment team responsible for providing services at their new LOC.
*<ADD LOCAL PROCEDURE TO BE USED TO ASSIGN TREATMENT TEAM RESPONSIBLE FOR PATIENT CARE>*

I-Flex-PIP Bed Numbers

| Institution | # Facility Building ID | # Facility Bed Number | Primary Use of Bed (Current) | Primary Use of Bed (New) | RIPA Internal Designation |
|---|---|---|---|---|---|
| CHCF | A 302A1 | 101001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | A 302A1 | 102001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | A 302A1 | 103001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | A 302A1 | 104001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | A 302A1 | 105001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | A 302A1 | 106001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | A 302A1 | 107001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | A 302A1 | 108001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | A 302A1 | 109001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | A 302A1 | 110001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | A 302A1 | 111001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | A 302A1 | 112001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | A 302A1 | 113001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | A 302A1 | 114001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | A 302A1 | 115001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | A 302A1 | 116001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | A 302A1 | 117001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | A 302A1 | 118001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | A 302A1 | 119001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | A 302A1 | 120001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | A 302A1 | 121001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | A 302A1 | 122001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | A 302A1 | 123001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |

| Institution | # Facility Building ID | # Facility Bed Number | Primary Use of Bed (Current) | Primary Use of Bed (New) | RIPA Internal Designation |
|---|---|---|---|---|---|
| CHCF | A 302A1 | 124001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | A 302A1 | 125001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | A 302A1 | 126001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | A 302A1 | 127001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | A 302A1 | 128001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | A 302A1 | 129001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | A 302A1 | 130001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | A 302A1 | 131001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | A 302A1 | 132001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | A 302A1 | 133001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | A 302A1 | 134001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | A 302A1 | 135001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | A 302A1 | 136001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | A 302A1 | 137001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | A 302A1 | 138001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | A 302A1 | 139001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A A 2 | 000201L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A A 2 | 000202L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A A 2 | 000203L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A A 2 | 000204L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A A 2 | 000205L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A A 2 | 000206L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A A 2 | 000207L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A A 2 | 000208L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A A 2 | 000209L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |

| Institution | # Facility Building ID | # Facility Bed Number | Primary Use of Bed (Current) | Primary Use of Bed (New) | RIPA Internal Designation |
|---|---|---|---|---|---|
| CMF | A A 2 | 000210L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A A 2 | 000211L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A A 2 | 000212L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A A 2 | 000213L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A A 2 | 000214L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A A 2 | 000215L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A A 2 | 000216L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A A 2 | 000217L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A A 2 | 000218L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A A 2 | 000219L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A A 2 | 000220L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A A 2 | 000221L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A A 2 | 000222L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A A 2 | 000223L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A A 2 | 000224L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A A 2 | 000225L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A A 2 | 000226L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A A 2 | 000227L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A A 2 | 000228L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A A 2 | 000229L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A A 2 | 000230L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A A 2 | 000231L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A A 2 | 000232L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A A 2 | 000233L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A A 2 | 000234L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A A 2 | 000235L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A A 2 | 000236L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A A 2 | 000237L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |

Attachment B – I-Flex PIP Bed Numbers

| Institution | # Facility Building ID | # Facility Bed Number | Primary Use of Bed (Current) | Primary Use of Bed (New) | RIPA Internal Designation |
|---|---|---|---|---|---|
| CMF | A A 2 | 000238L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A A 2 | 000239L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A A 2 | 000240L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A A 2 | 000241L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A A 2 | 000242L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A A 2 | 000243L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A A 2 | 000244L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A A 3 | 000301L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A A 3 | 000302L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A A 3 | 000303L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A A 3 | 000304L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A A 3 | 000305L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A A 3 | 000306L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A A 3 | 000307L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A A 3 | 000308L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A A 3 | 000309L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A A 3 | 000310L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A A 3 | 000311L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A A 3 | 000312L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A A 3 | 000313L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A A 3 | 000314L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A A 3 | 000315L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A A 3 | 000316L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A A 3 | 000317L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A A 3 | 000318L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A A 3 | 000319L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A A 3 | 000320L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A A 3 | 000321L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |

| Institution | # Facility Building ID | # Facility Bed Number | Primary Use of Bed (Current) | Primary Use of Bed (New) | RIPA Internal Designation |
|---|---|---|---|---|---|
| CMF | A A 3 | 000322L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A A 3 | 000323L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A A 3 | 000324L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A A 3 | 000325L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A A 3 | 000326L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A A 3 | 000327L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A A 3 | 000328L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A A 3 | 000329L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A A 3 | 000330L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A A 3 | 000331L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A A 3 | 000332L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A A 3 | 000333L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A A 3 | 000334L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A A 3 | 000335L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A A 3 | 000336L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A A 3 | 000337L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A A 3 | 000338L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A A 3 | 000339L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A A 3 | 000340L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A P 1 | 101001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A P 1 | 102001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A P 1 | 103001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A P 1 | 104001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A P 1 | 105001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A P 1 | 106001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A P 1 | 107001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A P 1 | 108001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A P 1 | 109001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |

| Institution | # Facility Building ID | # Facility Bed Number | Primary Use of Bed (Current) | Primary Use of Bed (New) | RIPA Internal Designation |
|---|---|---|---|---|---|
| CMF | A P 1 | 110001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A P 1 | 111001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A P 1 | 112001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A P 1 | 113001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A P 1 | 114001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A P 1 | 115001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A P 1 | 116001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A P 1 | 117001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A P 1 | 118001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A P 1 | 119001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A P 1 | 120001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A P 1 | 121001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A P 1 | 122001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A P 1 | 123001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A P 1 | 124001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A P 1 | 125001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A P 1 | 126001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A P 1 | 127001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A P 1 | 128001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A P 1 | 129001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A P 1 | 130001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A P 1 | 131001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A P 1 | 132001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A P 2 | 201001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A P 2 | 202001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A P 2 | 203001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A P 2 | 204001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A P 2 | 205001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |

| Institution | # Facility Building ID | # Facility Bed Number | Primary Use of Bed (Current) | Primary Use of Bed (New) | RIPA Internal Designation |
|---|---|---|---|---|---|
| CMF | A  P  2 | 206001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A  P  2 | 207001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A  P  2 | 208001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A  P  2 | 209001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A  P  2 | 210001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A  P  2 | 211001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A  P  2 | 212001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A  P  2 | 213001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A  P  2 | 214001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A  P  2 | 215001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A  P  2 | 216001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A  P  2 | 217001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A  P  2 | 218001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A  P  2 | 219001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A  P  2 | 220001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A  P  2 | 221001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A  P  2 | 222001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A  P  2 | 223001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A  P  2 | 224001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A  P  2 | 225001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A  P  2 | 226001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A  P  2 | 227001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A  P  2 | 228001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A  P  2 | 229001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A  P  2 | 230001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A  P  2 | 231001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A  P  2 | 232001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A  P  2 | 233001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |

| Institution | # Facility Building ID | # Facility Bed Number | Primary Use of Bed (Current) | Primary Use of Bed (New) | RIPA Internal Designation |
|---|---|---|---|---|---|
| CMF | A P 2 | 234001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A P 2 | 235001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A P 2 | 236001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A P 3 | 301001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A P 3 | 302001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A P 3 | 303001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A P 3 | 304001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A P 3 | 305001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A P 3 | 306001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A P 3 | 307001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A P 3 | 308001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A P 3 | 309001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A P 3 | 310001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A P 3 | 311001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A P 3 | 312001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A P 3 | 313001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A P 3 | 314001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A P 3 | 315001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A P 3 | 316001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A P 3 | 317001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A P 3 | 318001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A P 3 | 319001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A P 3 | 320001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A P 3 | 321001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A P 3 | 322001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A P 3 | 323001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A P 3 | 324001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A P 3 | 325001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |

| Institution | # Facility Building ID | # Facility Bed Number | Primary Use of Bed (Current) | Primary Use of Bed (New) | RIPA Internal Designation |
|---|---|---|---|---|---|
| CMF | A P 3 | 326001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A P 3 | 327001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A P 3 | 328001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A P 3 | 329001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A P 3 | 330001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | A Q 1 | 101001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A Q 1 | 102001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A Q 1 | 103001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A Q 1 | 104001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A Q 1 | 105001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A Q 1 | 106001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A Q 1 | 107001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A Q 1 | 108001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A Q 1 | 109001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A Q 1 | 110001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A Q 1 | 111001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A Q 1 | 112001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A Q 1 | 113001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A Q 1 | 114001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A Q 1 | 115001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A Q 1 | 116001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A Q 1 | 117001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A Q 1 | 118001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A Q 1 | 119001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A Q 1 | 120001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A Q 1 | 121001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A Q 1 | 122001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A Q 1 | 123001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |

| Institution | # Facility Building ID | # Facility Bed Number | Primary Use of Bed (Current) | Primary Use of Bed (New) | RIPA Internal Designation |
|---|---|---|---|---|---|
| CMF | A Q 1 | 124001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A Q 1 | 125001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A Q 1 | 126001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A Q 1 | 127001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A Q 1 | 128001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A Q 1 | 129001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A Q 2 | 201001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A Q 2 | 202001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A Q 2 | 203001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A Q 2 | 204001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A Q 2 | 205001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A Q 2 | 206001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A Q 2 | 207001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A Q 2 | 208001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A Q 2 | 209001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A Q 2 | 210001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A Q 2 | 211001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A Q 2 | 212001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A Q 2 | 213001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A Q 2 | 214001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A Q 2 | 215001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A Q 2 | 216001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A Q 2 | 217001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A Q 2 | 218001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A Q 2 | 219001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A Q 2 | 220001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A Q 2 | 221001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A Q 2 | 222001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |

| Institution | # Facility Building ID | # Facility Bed Number | Primary Use of Bed (Current) | Primary Use of Bed (New) | RIPA Internal Designation |
|---|---|---|---|---|---|
| CMF | A Q 2 | 223001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A Q 2 | 224001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A Q 2 | 225001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A Q 2 | 226001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A Q 2 | 227001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A Q 2 | 228001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A Q 2 | 229001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A Q 2 | 230001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A Q 2 | 231001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A Q 3 | 301001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A Q 3 | 302001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A Q 3 | 303001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A Q 3 | 304001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A Q 3 | 305001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A Q 3 | 306001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A Q 3 | 307001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A Q 3 | 308001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A Q 3 | 309001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A Q 3 | 310001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A Q 3 | 311001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A Q 3 | 312001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A Q 3 | 313001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A Q 3 | 314001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A Q 3 | 315001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A Q 3 | 316001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A Q 3 | 317001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A Q 3 | 318001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A Q 3 | 319001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |

| Institution | # Facility Building ID | # Facility Bed Number | Primary Use of Bed (Current) | Primary Use of Bed (New) | RIPA Internal Designation |
|---|---|---|---|---|---|
| CMF | A Q 3 | 320001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A Q 3 | 321001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A Q 3 | 322001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A Q 3 | 323001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A Q 3 | 324001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A Q 3 | 325001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A Q 3 | 326001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A Q 3 | 327001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A Q 3 | 328001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A Q 3 | 329001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A Q 3 | 330001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A S 1 | 101001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A S 1 | 102001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A S 1 | 103001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A S 1 | 104001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A S 1 | 105001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A S 1 | 106001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A S 1 | 107001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A S 1 | 108001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A S 1 | 109001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A S 1 | 110001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A S 1 | 111001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A S 1 | 112001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A S 1 | 113001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A S 1 | 114001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A S 1 | 115001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A S 1 | 116001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A S 1 | 117001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |

Attachment B - I Flex-PIP Bed Numbers

| Institution | # Facility Building ID | # Facility Bed Number | Primary Use of Bed (Current) | Primary Use of Bed (New) | RIPA Internal Designation |
|---|---|---|---|---|---|
| CMF | A S 1 | 118001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A S 1 | 119001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A S 1 | 120001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A S 1 | 121001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A S 1 | 122001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A S 1 | 123001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A S 1 | 124001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A S 1 | 125001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A S 1 | 126001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A S 1 | 127001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A S 1 | 128001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A S 1 | 129001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A S 1 | 130001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A S 2 | 201001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A S 2 | 202001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A S 2 | 203001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A S 2 | 204001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A S 2 | 205001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A S 2 | 206001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A S 2 | 207001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A S 2 | 208001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A S 2 | 209001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A S 2 | 210001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A S 2 | 211001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A S 2 | 212001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A S 2 | 213001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A S 2 | 214001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A S 2 | 215001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |

| Institution | # Facility Building ID | # Facility Bed Number | Primary Use of Bed (Current) | Primary Use of Bed (New) | RIPA Internal Designation |
|---|---|---|---|---|---|
| CMF | A S 2 | 216001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A S 2 | 217001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A S 2 | 218001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A S 2 | 219001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A S 2 | 220001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A S 2 | 221001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A S 2 | 222001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A S 2 | 223001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A S 2 | 224001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A S 2 | 225001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A S 2 | 226001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A S 2 | 227001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A S 2 | 228001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A S 2 | 229001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CMF | A S 2 | 230001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 301A1 | 101001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 301A1 | 102001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 301A1 | 103001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 301A1 | 104001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 301A1 | 105001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 301A1 | 106001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 301A1 | 107001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 301A1 | 108001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 301A1 | 109001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 301A1 | 110001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 301A1 | 111001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |

| Institution | # Facility Building ID | # Facility Bed Number | Primary Use of Bed (Current) | Primary Use of Bed (New) | RIPA Internal Designation |
|---|---|---|---|---|---|
| CHCF | B 301A1 | 112001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 301A1 | 113001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 301A1 | 114001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 301A1 | 115001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 301A1 | 116001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 301A1 | 117001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 301A1 | 118001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 301A1 | 119001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 301A1 | 120001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 301A1 | 121001L | MH Intermediate Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 301A1 | 122001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 301A1 | 123001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 301A1 | 124001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 301A1 | 125001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 301A1 | 126001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 301A1 | 127001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 301A1 | 128001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 301A1 | 129001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 301A1 | 130001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 301B1 | 106001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 301B1 | 107001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 301B1 | 108001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 301B1 | 109001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |

| Institution | # Facility Building ID | # Facility Bed Number | Primary Use of Bed (Current) | Primary Use of Bed (New) | RIPA Internal Designation |
|---|---|---|---|---|---|
| CHCF | B 301B1 | 110001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 301B1 | 111001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 301B1 | 112001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 301B1 | 113001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 301B1 | 114001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 301B1 | 115001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 301B1 | 116001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 301B1 | 117001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 301B1 | 121001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 301B1 | 122001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 301B1 | 123001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 301B1 | 124001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 301B1 | 125001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 301B1 | 126001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 301B1 | 127001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 301B1 | 128001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 301B1 | 129001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 301B1 | 130001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 301B1 | 131001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 301B1 | 132001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 301B1 | 133001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 302A1 | 101001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 302A1 | 102001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |

Attachment B – I Flex-PIP Bed Numbers

| Institution | # Facility Building ID | # Facility Bed Number | Primary Use of Bed (Current) | Primary Use of Bed (New) | RIPA Internal Designation |
|---|---|---|---|---|---|
| CHCF | B 302A1 | 103001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 302A1 | 104001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 302A1 | 105001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 302A1 | 106001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 302A1 | 107001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 302A1 | 108001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 302A1 | 109001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 302A1 | 110001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 302A1 | 111001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 302A1 | 112001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 302A1 | 113001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 302A1 | 114001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 302A1 | 115001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 302A1 | 116001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 302A1 | 117001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 302A1 | 118001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 302A1 | 119001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 302A1 | 120001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 302A1 | 121001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 302A1 | 122001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 302A1 | 123001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 302A1 | 124001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 302A1 | 125001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |

| Institution | # Facility Building ID | # Facility Bed Number | Primary Use of Bed (Current) | Primary Use of Bed (New) | RIPA Internal Designation |
|---|---|---|---|---|---|
| CHCF | B 302A1 | 126001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 302A1 | 127001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 302A1 | 128001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 302A1 | 129001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 302A1 | 130001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 302B1 | 104001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 302B1 | 105001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 302B1 | 106001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 302B1 | 107001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 302B1 | 108001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 302B1 | 109001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 302B1 | 110001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 302B1 | 111001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 302B1 | 112001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 302B1 | 113001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 302B1 | 114001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 302B1 | 115001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 302B1 | 116001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 302B1 | 117001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 302B1 | 118001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 302B1 | 119001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 302B1 | 120001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 302B1 | 121001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |

| Institution | # Facility Building ID | # Facility Bed Number | Primary Use of Bed (Current) | Primary Use of Bed (New) | RIPA Internal Designation |
|---|---|---|---|---|---|
| CHCF | B 302B1 | 122001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 302B1 | 123001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 302B1 | 124001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 302B1 | 125001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 302B1 | 126001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 302B1 | 127001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 302B1 | 128001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 302B1 | 129001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 302B1 | 130001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 302B1 | 131001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 302B1 | 132001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 302B1 | 133001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 303A1 | 101001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 303A1 | 102001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 303A1 | 103001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 303A1 | 104001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 303A1 | 105001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 303A1 | 106001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 303A1 | 107001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 303A1 | 108001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 303A1 | 109001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 303A1 | 110001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 303A1 | 111001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |

Attachment B – Flex-Pup Bed Numbers

| Institution | # Facility Building ID | # Facility Bed Number | Primary Use of Bed (Current) | Primary Use of Bed (New) | RIPA Internal Designation |
|---|---|---|---|---|---|
| CHCF | B 303A1 | 112001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 303A1 | 113001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 303A1 | 114001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 303A1 | 115001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 303A1 | 116001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 303A1 | 117001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 303A1 | 118001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 303A1 | 119001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 303A1 | 120001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 303A1 | 121001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 303A1 | 122001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 303A1 | 123001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 303A1 | 124001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 303A1 | 125001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 303A1 | 126001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 303A1 | 127001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 303A1 | 128001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 303A1 | 129001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 303A1 | 130001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 303B1 | 104001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 303B1 | 105001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 303B1 | 106001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 303B1 | 107001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |

| Institution | # Facility Building ID | # Facility Bed Number | Primary Use of Bed (Current) | Primary Use of Bed (New) | RIPA Internal Designation |
|---|---|---|---|---|---|
| CHCF | B 303B1 | 108001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 303B1 | 109001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 303B1 | 110001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 303B1 | 111001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 303B1 | 112001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 303B1 | 113001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 303B1 | 114001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 303B1 | 115001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 303B1 | 116001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 303B1 | 117001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 303B1 | 118001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 303B1 | 119001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 303B1 | 120001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 303B1 | 121001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 303B1 | 122001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 303B1 | 123001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 303B1 | 124001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 303B1 | 125001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 303B1 | 126001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 303B1 | 127001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 303B1 | 128001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 303B1 | 129001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 303B1 | 130001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |

| Institution | # Facility Building ID | # Facility Bed Number | Primary Use of Bed (Current) | Primary Use of Bed (New) | RIPA Internal Designation |
|---|---|---|---|---|---|
| CHCF | B 303B1 | 131001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 303B1 | 132001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 303B1 | 133001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 304A1 | 101001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 304A1 | 102001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 304A1 | 103001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 304A1 | 104001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 304A1 | 105001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 304A1 | 106001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 304A1 | 107001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 304A1 | 108001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 304A1 | 109001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 304A1 | 110001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 304A1 | 111001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 304A1 | 112001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 304A1 | 113001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 304A1 | 114001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 304A1 | 115001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 304A1 | 116001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 304A1 | 117001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 304A1 | 118001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 304A1 | 119001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 304A1 | 120001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |

Attachment B - Flex PIP Bed Numbers

| Institution | # Facility Building ID | # Facility Bed Number | Primary Use of Bed (Current) | Primary Use of Bed (New) | RIPA Internal Designation |
|---|---|---|---|---|---|
| CHCF | B 304A1 | 121001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 304A1 | 122001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 304A1 | 123001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 304A1 | 124001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 304A1 | 125001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 304A1 | 126001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 304A1 | 127001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 304A1 | 128001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 304A1 | 129001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 304A1 | 130001L | MH Acute Care Facility | Psychiatric Inpatient Program | PIP |
| CHCF | B 304B1 | 104001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 304B1 | 105001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 304B1 | 106001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 304B1 | 107001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 304B1 | 108001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 304B1 | 109001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 304B1 | 110001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 304B1 | 111001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 304B1 | 112001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 304B1 | 113001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 304B1 | 114001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 304B1 | 115001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 304B1 | 116001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |

| Institution | # Facility Building ID | # Facility Bed Number | Primary Use of Bed (Current) | Primary Use of Bed (New) | RIPA Internal Designation |
|---|---|---|---|---|---|
| CHCF | B 304B1 | 117001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 304B1 | 118001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 304B1 | 119001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 304B1 | 120001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 304B1 | 121001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 304B1 | 122001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 304B1 | 123001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 304B1 | 124001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 304B1 | 125001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 304B1 | 126001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 304B1 | 127001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 304B1 | 128001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 304B1 | 129001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 304B1 | 130001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 304B1 | 131001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 304B1 | 132001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 304B1 | 133001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 305A1 | 101001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 305A1 | 102001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 305A1 | 103001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 305A1 | 104001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 305A1 | 105001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 305A1 | 106001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |

| Institution | # Facility Building ID | # Facility Bed Number | Primary Use of Bed (Current) | Primary Use of Bed (New) | RIPA Internal Designation |
|---|---|---|---|---|---|
| CHCF | B  305A1 | 107001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B  305A1 | 108001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B  305A1 | 109001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B  305A1 | 110001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B  305A1 | 111001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B  305A1 | 112001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B  305A1 | 113001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B  305A1 | 114001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B  305A1 | 115001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B  305A1 | 116001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B  305A1 | 117001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B  305A1 | 118001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B  305A1 | 119001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B  305A1 | 120001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B  305A1 | 121001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B  305A1 | 122001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B  305A1 | 123001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B  305A1 | 124001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B  305A1 | 125001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B  305A1 | 126001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B  305A1 | 127001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B  305A1 | 128001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B  305A1 | 129001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |

| Institution | # Facility Building ID | # Facility Bed Number | Primary Use of Bed (Current) | Primary Use of Bed (New) | RIPA Internal Designation |
|---|---|---|---|---|---|
| CHCF | B 305A1 | 130001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 305B1 | 104001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 305B1 | 105001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 305B1 | 106001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 305B1 | 107001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 305B1 | 108001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 305B1 | 109001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 305B1 | 110001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 305B1 | 111001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 305B1 | 112001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 305B1 | 113001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 305B1 | 114001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 305B1 | 115001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 305B1 | 116001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 305B1 | 117001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 305B1 | 118001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 305B1 | 119001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 305B1 | 120001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 305B1 | 121001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 305B1 | 122001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 305B1 | 123001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 305B1 | 124001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 305B1 | 125001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |

Attachment B – Flex PIP Bed Numbers

| Institution | # Facility Building ID | # Facility Bed Number | Primary Use of Bed (Current) | Primary Use of Bed (New) | RIPA Internal Designation |
|---|---|---|---|---|---|
| CHCF | B 305B1 | 126001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 305B1 | 127001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 305B1 | 128001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 305B1 | 129001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 305B1 | 130001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 305B1 | 131001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 305B1 | 132001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 305B1 | 133001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 306A1 | 101001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 306A1 | 102001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 306A1 | 103001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 306A1 | 104001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 306A1 | 105001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 306A1 | 106001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 306A1 | 107001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 306A1 | 108001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 306A1 | 109001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 306A1 | 110001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 306A1 | 111001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 306A1 | 112001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 306A1 | 113001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 306A1 | 114001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 306A1 | 115001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |

| Institution | # Facility Building ID | # Facility Bed Number | Primary Use of Bed (Current) | Primary Use of Bed (New) | RIPA Internal Designation |
|---|---|---|---|---|---|
| CHCF | B 306A1 | 116001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 306A1 | 117001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 306A1 | 118001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 306A1 | 119001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 306A1 | 120001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 306A1 | 121001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 306A1 | 122001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 306A1 | 123001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 306A1 | 124001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 306A1 | 125001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 306A1 | 126001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 306A1 | 127001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 306A1 | 128001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 306A1 | 129001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 306A1 | 130001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 306B1 | 104001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 306B1 | 105001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 306B1 | 106001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 306B1 | 107001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 306B1 | 108001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 306B1 | 109001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 306B1 | 110001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 306B1 | 111001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |

| Institution | # Facility Building ID | # Facility Bed Number | Primary Use of Bed (Current) | Primary Use of Bed (New) | RIPA Internal Designation |
|---|---|---|---|---|---|
| CHCF | B 306B1 | 112001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 306B1 | 113001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 306B1 | 114001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 306B1 | 115001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 306B1 | 116001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 306B1 | 117001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 306B1 | 118001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 306B1 | 119001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 306B1 | 120001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 306B1 | 121001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 306B1 | 122001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 306B1 | 123001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 306B1 | 124001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 306B1 | 125001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 306B1 | 126001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 306B1 | 127001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 306B1 | 128001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 306B1 | 129001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 306B1 | 130001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 306B1 | 131001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 306B1 | 132001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 306B1 | 133001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 307A1 | 101001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |

Attachment B – I Flex-PIP Bed Numbers

| Institution | # Facility Building ID | # Facility Bed Number | Primary Use of Bed (Current) | Primary Use of Bed (New) | RIPA Internal Designation |
|---|---|---|---|---|---|
| CHCF | B 307A1 | 102001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 307A1 | 103001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 307A1 | 104001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 307A1 | 105001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 307A1 | 106001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 307A1 | 107001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 307A1 | 108001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 307A1 | 109001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 307A1 | 110001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 307A1 | 111001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 307A1 | 112001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 307A1 | 113001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 307A1 | 114001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 307A1 | 115001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 307A1 | 116001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 307A1 | 117001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 307A1 | 118001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 307A1 | 119001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 307A1 | 120001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 307A1 | 121001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 307A1 | 122001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 307A1 | 123001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 307A1 | 124001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |

| Institution | # Facility Building ID | # Facility Bed Number | Primary Use of Bed (Current) | Primary Use of Bed (New) | RIPA Internal Designation |
|---|---|---|---|---|---|
| CHCF | B 307A1 | 125001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 307A1 | 126001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 307A1 | 127001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 307A1 | 128001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 307A1 | 129001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 307A1 | 130001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 307B1 | 104001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 307B1 | 105001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 307B1 | 106001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 307B1 | 107001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 307B1 | 108001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 307B1 | 109001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 307B1 | 110001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 307B1 | 111001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 307B1 | 112001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 307B1 | 113001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 307B1 | 114001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 307B1 | 115001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 307B1 | 116001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 307B1 | 117001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 307B1 | 118001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 307B1 | 119001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 307B1 | 120001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |

| Institution | # Facility Building ID | # Facility Bed Number | Primary Use of Bed (Current) | Primary Use of Bed (New) | RIPA Internal Designation |
|---|---|---|---|---|---|
| CHCF | B 307B1 | 121001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 307B1 | 122001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 307B1 | 123001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 307B1 | 124001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 307B1 | 125001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 307B1 | 126001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 307B1 | 127001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 307B1 | 128001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 307B1 | 129001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 307B1 | 130001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 307B1 | 131001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 307B1 | 132001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 307B1 | 133001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 308A1 | 101001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 308A1 | 102001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 308A1 | 103001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 308A1 | 104001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 308A1 | 105001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 308A1 | 106001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 308A1 | 107001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 308A1 | 108001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 308A1 | 109001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 308A1 | 110001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |

| Institution | # Facility Building ID | # Facility Bed Number | Primary Use of Bed (Current) | Primary Use of Bed (New) | RIPA Internal Designation |
|---|---|---|---|---|---|
| CHCF | B 308A1 | 111001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 308A1 | 112001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 308A1 | 113001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 308A1 | 114001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 308A1 | 115001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 308A1 | 116001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 308A1 | 117001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 308A1 | 118001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 308A1 | 119001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 308A1 | 120001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 308A1 | 121001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 308A1 | 122001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 308A1 | 123001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 308A1 | 124001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 308A1 | 125001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 308A1 | 126001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 308A1 | 127001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 308A1 | 128001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 308A1 | 129001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 308A1 | 130001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 308B1 | 104001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 308B1 | 105001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 308B1 | 106001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |

Attachment B – I Flex PIP Bed Numbers

| Institution | # Facility Building ID | # Facility Bed Number | Primary Use of Bed (Current) | Primary Use of Bed (New) | RIPA Internal Designation |
|---|---|---|---|---|---|
| CHCF | B 308B1 | 107001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 308B1 | 108001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 308B1 | 109001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 308B1 | 110001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 308B1 | 111001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 308B1 | 112001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 308B1 | 113001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 308B1 | 114001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 308B1 | 115001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 308B1 | 116001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 308B1 | 117001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 308B1 | 118001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 308B1 | 119001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 308B1 | 120001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 308B1 | 121001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 308B1 | 122001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 308B1 | 123001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 308B1 | 124001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 308B1 | 125001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 308B1 | 126001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 308B1 | 127001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 308B1 | 128001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B 308B1 | 129001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |

| Institution | # Facility Building ID | # Facility Bed Number | Primary Use of Bed (Current) | Primary Use of Bed (New) | RIPA Internal Designation |
|---|---|---|---|---|---|
| CHCF | B  308B1 | 130001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B  308B1 | 131001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B  308B1 | 132001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CHCF | B  308B1 | 133001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | C  005 1 | 103001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | C  005 1 | 104001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | C  005 1 | 105001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | C  005 1 | 106001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | C  005 1 | 107001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | C  005 1 | 108001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | C  005 1 | 109001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | C  005 1 | 110001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | C  005 1 | 111001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | C  005 1 | 112001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | C  005 1 | 113001L | Psychiatric Inpatient Program | MH Intermediate Care Facility | ICF |
| SVSP | C  005 1 | 114001L | Psychiatric Inpatient Program | MH Intermediate Care Facility | ICF |
| SVSP | C  005 1 | 115001L | Psychiatric Inpatient Program | MH Intermediate Care Facility | ICF |
| SVSP | C  005 1 | 116001L | Psychiatric Inpatient Program | MH Intermediate Care Facility | ICF |
| SVSP | C  005 1 | 117001L | Psychiatric Inpatient Program | MH Intermediate Care Facility | ICF |
| SVSP | C  005 1 | 118001L | Psychiatric Inpatient Program | MH Intermediate Care Facility | ICF |
| SVSP | C  005 1 | 119001L | Psychiatric Inpatient Program | MH Intermediate Care Facility | ICF |
| SVSP | C  005 1 | 120001L | Psychiatric Inpatient Program | MH Intermediate Care Facility | ICF |
| SVSP | C  005 1 | 125001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | C  005 1 | 126001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | C  005 1 | 127001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | C  005 1 | 128001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | C  005 1 | 129001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |

| Institution | # Facility Building ID | # Facility Bed Number | Primary Use of Bed (Current) | Primary Use of Bed (New) | RIPA Internal Designation |
|---|---|---|---|---|---|
| SVSP | C 005 1 | 130001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | C 005 1 | 131001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | C 005 1 | 132001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | C 005 2 | 201001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | C 005 2 | 202001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | C 005 2 | 203001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | C 005 2 | 204001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | C 005 2 | 205001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | C 005 2 | 206001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | C 005 2 | 207001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | C 005 2 | 208001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | C 005 2 | 209001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | C 005 2 | 210001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | C 005 2 | 211001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | C 005 2 | 212001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | C 005 2 | 213001L | Psychiatric Inpatient Program | MH Intermediate Care Facility | ICF |
| SVSP | C 005 2 | 214001L | Psychiatric Inpatient Program | MH Intermediate Care Facility | ICF |
| SVSP | C 005 2 | 215001L | Psychiatric Inpatient Program | MH Intermediate Care Facility | ICF |
| SVSP | C 005 2 | 216001L | Psychiatric Inpatient Program | MH Primary Care Facility | ICF |
| SVSP | C 005 2 | 217001L | Psychiatric Inpatient Program | MH Intermediate Care Facility | ICF |
| SVSP | C 005 2 | 218001L | Psychiatric Inpatient Program | MH Intermediate Care Facility | ICF |
| SVSP | C 005 2 | 219001L | Psychiatric Inpatient Program | MH Intermediate Care Facility | ICF |
| SVSP | C 005 2 | 220001L | Psychiatric Inpatient Program | MH Intermediate Care Facility | ICF |
| SVSP | C 005 2 | 221001L | Psychiatric Inpatient Program | MH Intermediate Care Facility | ICF |
| SVSP | C 005 2 | 222001L | Psychiatric Inpatient Program | MH Intermediate Care Facility | ICF |
| SVSP | C 005 2 | 223001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | C 005 2 | 224001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | C 005 2 | 225001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |

| Institution | # Facility Building ID | # Facility Bed Number | Primary Use of Bed (Current) | Primary Use of Bed (New) | RIPA Internal Designation |
|---|---|---|---|---|---|
| SVSP | C 005 2 | 226001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | C 005 2 | 227001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | C 005 2 | 228001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | C 005 2 | 229001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | C 005 2 | 230001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | C 005 2 | 231001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | C 005 2 | 232001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | C 006 1 | 101001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | C 006 1 | 102001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | C 006 1 | 103001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | C 006 1 | 104001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | C 006 1 | 105001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | C 006 1 | 106001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | C 006 1 | 107001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | C 006 1 | 108001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | C 006 1 | 113001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | C 006 1 | 114001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | C 006 1 | 115001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | C 006 1 | 116001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | C 006 1 | 117001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | C 006 1 | 118001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | C 006 1 | 119001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | C 006 1 | 120001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | C 006 1 | 121001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | C 006 1 | 122001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | C 006 1 | 123001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | C 006 1 | 124001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | C 006 1 | 125001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |

| Institution | # Facility Building ID | # Facility Bed Number | Primary Use of Bed (Current) | Primary Use of Bed (New) | RIPA Internal Designation |
|---|---|---|---|---|---|
| SVSP | C  006 1 | 126001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | C  006 1 | 127001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | C  006 1 | 128001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | C  006 1 | 129001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | C  006 1 | 130001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | C  006 2 | 201001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | C  006 2 | 202001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | C  006 2 | 203001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | C  006 2 | 204001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | C  006 2 | 205001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | C  006 2 | 206001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | C  006 2 | 207001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | C  006 2 | 208001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | C  006 2 | 209001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | C  006 2 | 210001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | C  006 2 | 211001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | C  006 2 | 212001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | C  006 2 | 213001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | C  006 2 | 214001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | C  006 2 | 215001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | C  006 2 | 216001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | C  006 2 | 217001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | C  006 2 | 218001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | C  006 2 | 219001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | C  006 2 | 220001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | C  006 2 | 221001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | C  006 2 | 222001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | C  006 2 | 223001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |

| Institution | # Facility Building ID | # Facility Bed Number | Primary Use of Bed (Current) | Primary Use of Bed (New) | RIPA Internal Designation |
|---|---|---|---|---|---|
| SVSP | C 006 2 | 224001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | C 006 2 | 225001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | C 006 2 | 226001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | C 006 2 | 227001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | C 006 2 | 228001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | C 006 2 | 229001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | C 006 2 | 230001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | C 006 2 | 231001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | C 006 2 | 232001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | C HTCC1 | 001001L | Psychiatric Inpatient Program | MH Intermediate Care Facility | ICF |
| CMF | C HTCC1 | 002001L | Psychiatric Inpatient Program | MH Intermediate Care Facility | ICF |
| CMF | C HTCC1 | 003001L | Psychiatric Inpatient Program | MH Intermediate Care Facility | ICF |
| CMF | C HTCC1 | 004001L | Psychiatric Inpatient Program | MH Intermediate Care Facility | ICF |
| CMF | C HTCC1 | 005001L | Psychiatric Inpatient Program | MH Intermediate Care Facility | ICF |
| CMF | C HTCC1 | 006001L | Psychiatric Inpatient Program | MH Intermediate Care Facility | ICF |
| CMF | C HTCC1 | 007001L | Psychiatric Inpatient Program | MH Intermediate Care Facility | ICF |
| CMF | C HTCC1 | 008001L | Psychiatric Inpatient Program | MH Intermediate Care Facility | ICF |
| CMF | C HTCC1 | 009001L | Psychiatric Inpatient Program | MH Intermediate Care Facility | ICF |
| CMF | C HTCC1 | 010001L | Psychiatric Inpatient Program | MH Intermediate Care Facility | ICF |
| CMF | C HTCC1 | 011001L | Psychiatric Inpatient Program | MH Intermediate Care Facility | ICF |
| CMF | C HTCC1 | 012001L | Psychiatric Inpatient Program | MH Intermediate Care Facility | ICF |
| CMF | C HTCC1 | 013001L | Psychiatric Inpatient Program | MH Intermediate Care Facility | ICF |
| CMF | C HTCC1 | 014001L | Psychiatric Inpatient Program | MH Intermediate Care Facility | ICF |
| CMF | C HTCC1 | 015001L | Psychiatric Inpatient Program | MH Intermediate Care Facility | ICF |
| CMF | C HTCC1 | 016001L | Psychiatric Inpatient Program | MH Intermediate Care Facility | ICF |
| CMF | C HTCD1 | 001001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | C HTCD1 | 002001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | C HTCD1 | 003001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |

| Institution | # Facility Building ID | # Facility Bed Number | Primary Use of Bed (Current) | Primary Use of Bed (New) | RIPA Internal Designation |
|---|---|---|---|---|---|
| CMF | C HTCD1 | 004001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | C HTCD1 | 005001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | C HTCD1 | 006001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | C HTCD1 | 007001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | C HTCD1 | 008001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | C HTCD1 | 009001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | C HTCD1 | 010001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | C HTCD1 | 011001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | C HTCD1 | 012001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | C HTCD1 | 013001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | C HTCD1 | 014001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | C HTCD1 | 015001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CMF | C HTCD1 | 016001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 001A1 | 001001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 001A1 | 002001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 001A1 | 003001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 001A1 | 004001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 001A1 | 005001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 001A1 | 006001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 001A1 | 007001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 001A1 | 008001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 001A1 | 009001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 001A1 | 010001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 001A1 | 011001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 001A1 | 012001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 001B1 | 013001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 001B1 | 014001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 001B1 | 015001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |

| Institution | # Facility Building ID | # Facility Bed Number | Primary Use of Bed (Current) | Primary Use of Bed (New) | RIPA Internal Designation |
|---|---|---|---|---|---|
| SVSP | I 001B1 | 016001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 001B1 | 017001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 001B1 | 018001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 001B1 | 019001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 001B1 | 020001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 001B1 | 021001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 001B1 | 022001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 001C1 | 023001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 001C1 | 024001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 001C1 | 025001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 001C1 | 026001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 001C1 | 027001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 001C1 | 028001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 001C1 | 029001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 001C1 | 030001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 001C1 | 031001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 001C1 | 032001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 001D1 | 002001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 001D1 | 002002L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 001D1 | 002003L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 001D1 | 002004L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 001D1 | 003001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 001D1 | 003002L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 001D1 | 003003L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 001D1 | 003004L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 001D1 | 004001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 001D1 | 004002L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 001D1 | 004003L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |

Attachment B – Flex PIP Bed Numbers

| Institution | # Facility Building ID | # Facility Bed Number | Primary Use of Bed (Current) | Primary Use of Bed (New) | RIPA Internal Designation |
|---|---|---|---|---|---|
| SVSP | I 001D1 | 004004L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 001D1 | 005001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 001D1 | 005002L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 001D1 | 005003L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 001D1 | 005004L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 001D1 | 006001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 001D1 | 006002L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 001D1 | 006003L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 001D1 | 006004L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 001D1 | 007001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 001D1 | 007002L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 001D1 | 007003L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 001D1 | 007004L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 002A1 | 001001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 002A1 | 002001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 002A1 | 003001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 002A1 | 003002L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 002A1 | 004001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 002A1 | 004002L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 002A1 | 005001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 002A1 | 005002L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 002A1 | 006001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 002A1 | 006002L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 002A1 | 007001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 002A1 | 007002L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 002A1 | 008001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 002A1 | 009001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 002A1 | 010001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |

| Institution | # Facility Building ID | # Facility Bed Number | Primary Use of Bed (Current) | Primary Use of Bed (New) | RIPA Internal Designation |
|---|---|---|---|---|---|
| SVSP | I 002A1 | 010002L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 002A1 | 011001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 002A1 | 011002L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 002A1 | 012001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 002A1 | 012002L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 002A1 | 013001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 002A1 | 013002L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 002A1 | 014001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 002A1 | 014002L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 002A1 | 015001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 002A1 | 016001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 002B1 | 017001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 002B1 | 018001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 002B1 | 019001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 002B1 | 020001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 002B1 | 021001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 002B1 | 022001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 002B1 | 023001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 002B1 | 024001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 002B1 | 025001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 002B1 | 026001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 002B1 | 027001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 002B1 | 028001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 002B1 | 029001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 002B1 | 030001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 002B1 | 031001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 002B1 | 032001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 002C1 | 033001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |

| Institution | # Facility Building ID | # Facility Bed Number | Primary Use of Bed (Current) | Primary Use of Bed (New) | RIPA Internal Designation |
|---|---|---|---|---|---|
| SVSP | I 002C1 | 034001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 002C1 | 035001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 002C1 | 036001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 002C1 | 037001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 002C1 | 038001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 002C1 | 039001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 002C1 | 040001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 002C1 | 041001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 002C1 | 042001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 002C1 | 043001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 002C1 | 044001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 002C1 | 045001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 002C1 | 046001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 002C1 | 047001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 002C1 | 048001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 002D1 | 049001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 002D1 | 050001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 002D1 | 051001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 002D1 | 052001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 002D1 | 053001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 002D1 | 054001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 002D1 | 055001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 002D1 | 056001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 002D1 | 057001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 002D1 | 058001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 002D1 | 059001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 002D1 | 060001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 002D1 | 061001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |

Attachment B - I-Flex PIP Bed Numbers

| Institution | # Facility Building ID | # Facility Bed Number | Primary Use of Bed (Current) | Primary Use of Bed (New) | RIPA Internal Designation |
|---|---|---|---|---|---|
| SVSP | I 002D1 | 062001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 002D1 | 063001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| SVSP | I 002D1 | 064001L | MH Intermediate Care Facility | MH Intermediate Care Facility | ICF |
| CIW | S PIPA1 | 101001L | Psychiatric Inpatient Program | Psychiatric Inpatient Program | PIP |
| CIW | S PIPA1 | 102001L | Psychiatric Inpatient Program | Psychiatric Inpatient Program | PIP |
| CIW | S PIPA1 | 103001L | Psychiatric Inpatient Program | Psychiatric Inpatient Program | PIP |
| CIW | S PIPA1 | 104001L | Psychiatric Inpatient Program | Psychiatric Inpatient Program | PIP |
| CIW | S PIPA1 | 105001L | Psychiatric Inpatient Program | Psychiatric Inpatient Program | PIP |
| CIW | S PIPA1 | 106001L | Psychiatric Inpatient Program | Psychiatric Inpatient Program | PIP |
| CIW | S PIPA1 | 107001L | Psychiatric Inpatient Program | Psychiatric Inpatient Program | PIP |
| CIW | S PIPA1 | 108001L | Psychiatric Inpatient Program | Psychiatric Inpatient Program | PIP |
| CIW | S PIPA1 | 109001L | Psychiatric Inpatient Program | Psychiatric Inpatient Program | PIP |
| CIW | S PIPA1 | 110001L | Psychiatric Inpatient Program | Psychiatric Inpatient Program | PIP |
| CIW | S PIPA1 | 111001L | Psychiatric Inpatient Program | Psychiatric Inpatient Program | PIP |
| CIW | S PIPA1 | 112001L | Psychiatric Inpatient Program | Psychiatric Inpatient Program | PIP |
| CIW | S PIPA1 | 113001L | Psychiatric Inpatient Program | Psychiatric Inpatient Program | PIP |
| CIW | S PIPA1 | 114001L | Psychiatric Inpatient Program | Psychiatric Inpatient Program | PIP |
| CIW | S PIPA1 | 115001L | Psychiatric Inpatient Program | Psychiatric Inpatient Program | PIP |
| CIW | S PIPA1 | 116001L | Psychiatric Inpatient Program | Psychiatric Inpatient Program | PIP |
| CIW | S PIPA1 | 117001L | Psychiatric Inpatient Program | Psychiatric Inpatient Program | PIP |
| CIW | S PIPA1 | 118001L | Psychiatric Inpatient Program | Psychiatric Inpatient Program | PIP |
| CIW | S PIPA1 | 119001L | Psychiatric Inpatient Program | Psychiatric Inpatient Program | PIP |
| CIW | S PIPA1 | 120001L | Psychiatric Inpatient Program | Psychiatric Inpatient Program | PIP |
| CIW | S PIPA1 | 121001L | Psychiatric Inpatient Program | Psychiatric Inpatient Program | PIP |
| CIW | S PIPB1 | 122001L | Psychiatric Inpatient Program | Psychiatric Inpatient Program | PIP |
| CIW | S PIPB1 | 123001L | Psychiatric Inpatient Program | Psychiatric Inpatient Program | PIP |
| CIW | S PIPB1 | 124001L | Psychiatric Inpatient Program | Psychiatric Inpatient Program | PIP |
| CIW | S PIPB1 | 125001L | Psychiatric Inpatient Program | Psychiatric Inpatient Program | PIP |

Attachment B – Flex PIP Bed Numbers

| Institution | # Facility Building ID | # Facility Bed Number | Primary Use of Bed (Current) | Primary Use of Bed (New) | RIPA Internal Designation |
|---|---|---|---|---|---|
| CIW | S PIPB1 | 126001L | Psychiatric Inpatient Program | Psychiatric Inpatient Program | PIP |
| CIW | S PIPB1 | 127001L | Psychiatric Inpatient Program | Psychiatric Inpatient Program | PIP |
| CIW | S PIPB1 | 128001L | Psychiatric Inpatient Program | Psychiatric Inpatient Program | PIP |
| CIW | S PIPB1 | 129001L | Psychiatric Inpatient Program | Psychiatric Inpatient Program | PIP |
| CIW | S PIPB1 | 130001L | Psychiatric Inpatient Program | Psychiatric Inpatient Program | PIP |
| CIW | S PIPB1 | 131001L | Psychiatric Inpatient Program | Psychiatric Inpatient Program | PIP |
| CIW | S PIPB1 | 132001L | Psychiatric Inpatient Program | Psychiatric Inpatient Program | PIP |
| CIW | S PIPB1 | 133001L | Psychiatric Inpatient Program | Psychiatric Inpatient Program | PIP |
| CIW | S PIPB1 | 134001L | Psychiatric Inpatient Program | Psychiatric Inpatient Program | PIP |
| CIW | S PIPB1 | 135001L | Psychiatric Inpatient Program | Psychiatric Inpatient Program | PIP |
| CIW | S PIPB1 | 136001L | Psychiatric Inpatient Program | Psychiatric Inpatient Program | PIP |
| CIW | S PIPB1 | 137001L | Psychiatric Inpatient Program | Psychiatric Inpatient Program | PIP |
| CIW | S PIPB1 | 138001L | Psychiatric Inpatient Program | Psychiatric Inpatient Program | PIP |
| CIW | S PIPB1 | 139001L | Psychiatric Inpatient Program | Psychiatric Inpatient Program | PIP |
| CIW | S PIPB1 | 140001L | Psychiatric Inpatient Program | Psychiatric Inpatient Program | PIP |
| CIW | S PIPB1 | 141001L | Psychiatric Inpatient Program | Psychiatric Inpatient Program | PIP |
| CIW | S PIPB1 | 142001L | Psychiatric Inpatient Program | Psychiatric Inpatient Program | PIP |
| CIW | S PIPB1 | 143001L | Psychiatric Inpatient Program | Psychiatric Inpatient Program | PIP |
| CIW | S PIPB1 | 144001L | Psychiatric Inpatient Program | Psychiatric Inpatient Program | PIP |
| CIW | S PIPB1 | 145001L | Psychiatric Inpatient Program | Psychiatric Inpatient Program | PIP |

# EXHIBIT C

| From: | Weber, Nicholas@CDCR |
|---|---|
| To: | Coleman Team - RBG Only (ColemanTeam-RBGOnly@rbg.com); Coleman Special Master; Steven Fama (sfama@prisonlaw.com); elise.thorn@doj.ca.gov; v_Namrata.Kotwani@doj.ca.gov; Paul B. Mello; Samantha Wolff; Thind, Sundeep@CDCR; Hockerson, Dillon@CDCR; Damon McClain (Damon.McClain@doj.ca.gov) |
| Cc: | Ceballos, Laura@CDCR; Bunn, Albert@CDCR; Mehta, Amar@CDCR; Cartwright, Steven@CDCR |
| Subject: | Coleman - Revision to the Master Treatment Plan |
| Date: | Thursday, March 2, 2023 5:50:40 PM |
| Attachments: | Master Treatment Plan Revisions.pdf |

All,

In an effort to improve job satisfaction amid the staffing issues at CMF, CDCR has streamlined its EHRS IDTT Master Treatment Plan (MTP) documentation to remove non-essential fields and ensure staff are spending more time providing direct patient care. A copy of the current MTP is attached organized by sections removed or edited from the old form and sections added to the new form. CDCR will first roll out the new MTP at CMF's outpatient and MHCB programs effective immediately. CDCR will monitor the new MTP at CMF to ensure it is working before rolling the new MTP out statewide.

Please let me know if you have any questions.


Nick Weber

Attorney

Department of Corrections & Rehabilitation

(916) 217-1949

1515 S Street, Suite 314S

Sacramento, CA  95811-7243


CONFIDENTIALITY NOTICE: This communication with its contents may contain confidential and/or legally privileged information. It is solely for the use of the intended recipient(s). Unauthorized interception, review, use or disclosure is prohibited and may violate applicable laws including the Electronic Communications Privacy Act. If you are not the intended recipient, please contact the sender and destroy all copies of the communication.


This message was sent from outside the company. Please do not click links or open attachments unless you recognize the source of this email and know the content is safe.

## Master Treatment Plan Revisions

Items in red boxes are removed from CMF MTP.  Some items from the removed tabs are being added to the new Modified Treatment Planning tab.  (See Page 20.)  Items in yellow are being edited.



# Removed Sections

**Progress Toward Goals – Progress will be noted in the new MTP (see page 20)**



**New Symptoms/Problems – New problems will be discussed in the new MTP (see page 20)**



## MHCB Prevention Planning



## Collateral Information



## EOP Functional Evaluation







**Clinical Summary and Case Formulation – Items will be discussed in the new MTP (see page 20)**





## Goal Setting with Patient



# IPOC Indicator MH MTP



## Preferred Learning Style



# Edited Items from MTP

**Transfer Discharge Planning Recommendations:**

- Discharge to remain
- Discharge plan or reason for retention combined into one text box
- Yard, phone call, visiting restrictions removed.
- Parole or release plans to be addressed in discharge plans text field. Note pre-release is also done separately by prerelease coordinator.



**Transfer Discharge Planning Recommendations con't**

- Removed from MTP except section to ensure patients discharged with safety concerns have this clearly noted for receiving team, which is in the revised MTP (see page 20).



## Transfer Discharge Planning Recommendations con't

- Moved to the revised MTP (see page 21)



# New Tab for MTP



**Treatment Plan:**

| | Problem/Symptom | Goal | Intervention | Progress/Response |
|---|---|---|---|---|
| Problem/Symptom #1 | | | | |
| Problem/Symptom #2 | | | | |
| Problem/Symptom #3 | | | | |
| Problem/Symptom #4 | | | | |
| Problem/Symptom #5 | | | | |
| Problem/Symptom #6 | | | | |
| Problem/Symptom #7 | | | | |
| Problem/Symptom #8 | | | | |
| Problem/Symptom #9 | | | | |
| Problem/Symptom #10 | | | | |

**Transfer/Discharge to:**

| | | | | |
|---|---|---|---|---|
| ○ No change | ○ CCCMS | ○ MHCB | ○ ICF | ○ Parole/Release |
| ○ Non-MHSDS | ○ EOP | ○ Acute | ○ PIP | |

**Discharge Plan/Criteria/Reason for Retention/Comments:**

Segoe UI | 9 | 🎨 ✂ 📋 📋 **B** *U* *I* S̶ ≡ ≡ ≡

**In consultation with the CC1, the following is to be completed as a treatment team. Ideally, with the patient present.**

**Is the patient being discharged from MHCB?**

○ No    ○ Yes

**If yes, did the patient report concern that there may be a potential threat from others to their life or safety when they are discharged from MHCB?**

○ No    ○ Yes

**If yes, date the patient's concern was reported to a unit sergeant or health care lieutenant representative:**

mm/dd/yyyy

**If the Confidential Safety Closure Report is not completed but the MHCB team assesses Patient is clinically appropriate for Discharge to a lower level of care.**

**\*DO NOT DISCHARGE UNTIL THE CHIEF PSYCHIATRIST OR STAFF DESIGNATED BY THE CHIEF PSYCHIATRIST REVIEWS AND APPROVES THE DISCHARGE\***

**At the time of discharge, does the patient continue to have concerns about a potential threat to their life or safety?**

○ Yes    ○ No    ○ N/A

**If yes, check all that apply:**

○ The patient's concerns are impacted by paranoia/psychosis. Continued treatment of symptoms is included in the patient's MTP and discharge summary.
○ The patient's concerns are impacted by anxiety. Continued treatment of symptoms is recommended in the patient's MTP and discharge summary.
○ The patient's concerns are likely partially or completely reality based. Continued assistance with coping is recommended in the patient's MTP and discharge summary.
○ The patient's concerns elevate the patient's risk of self-harm or suicide. The patient shall not be discharged from the PIP until the Clinical Director or designee reviews the case

# EXHIBIT D

| From: | Jenny Yelin |
|---|---|
| To: | Nick Weber; Lisa Ells; Coleman Team - RBG Only; Coleman Special Master; Steve Fama; Elise Thorn; v_Namrata.Kotwani@doj.ca.gov; Paul B. Mello; Samantha Wolff; Thind, Sundeep@CDCR; Hockerson, Dillon@CDCR; Damon McClain (Damon.McClain@doj.ca.gov) |
| Cc: | Laura Ceballos; Bunn, Albert@CDCR; Mehta, Amar@CDCR; Steven Cartwright |
| Subject: | RE: Coleman - Revision to the Master Treatment Plan [IMAN-DMS.FID12440] |
| Date: | Monday, March 6, 2023 6:11:19 PM |

Dear all,

Thank you for the meeting today. We appreciate the additional information and context you provided regarding the proposed revision to the MTP for use on a temporary basis at CMF.  We consent to use of the revised form on a limited basis, only at CMF, and only for a period of 3 months.  Please notify us as soon as possible if CDCR will seek to continue its use at CMF beyond three months so that we can meet and confer prior to the expiration of that time period.  Otherwise, we expect that CDCR will revert to the standard MTP at CMF after the 3 month period elapses.

Jenny

---

**From:** Weber, Nicholas@CDCR <Nicholas.Weber@cdcr.ca.gov>
**Sent:** Monday, March 6, 2023 9:37 AM
**To:** Lisa Ells <LElls@rbgg.com>; Coleman Team - RBG Only <ColemanTeam-RBGOnly@rbgg.com>; Coleman Special Master <colemanspecialmaster@pldolaw.com>; Steve Fama <sfama@prisonlaw.com>; Elise Thorn <Elise.Thorn@doj.ca.gov>; v_Namrata.Kotwani@doj.ca.gov <Namrata.Kotwani@doj.ca.gov>; Paul B. Mello <Pmello@hansonbridgett.com>; Samantha Wolff <SWolff@hansonbridgett.com>; Thind, Sundeep@CDCR <Sundeep.Thind@cdcr.ca.gov>; Hockerson, Dillon@CDCR <Dillon.Hockerson@cdcr.ca.gov>; Damon McClain (Damon.McClain@doj.ca.gov) <Damon.McClain@doj.ca.gov>
**Cc:** Laura Ceballos <laura.ceballos@cdcr.ca.gov>; Bunn, Albert@CDCR <Albert.Bunn@cdcr.ca.gov>; Mehta, Amar@CDCR <Amar.Mehta@cdcr.ca.gov>; Steven Cartwright <Steven.Cartwright@cdcr.ca.gov>
**Subject:** RE: Coleman - Revision to the Master Treatment Plan [IMAN-DMS.FID12440]

[EXTERNAL MESSAGE NOTICE]

Lisa,

I'm sorry I missed this on Friday afternoon. Attached is a revised MTP document.  The only changes to it start at page 20 of the PDF where we added fields to capture whether the patient was present/refused to attend the IDTT in the revised MTP. We also added, for reference, pages that are unchanged by this plan beginning at page 23.

Also attached is a modified CMF Suicide Risk Evaluation which we would also like to discuss with your team this afternoon.

Nick Weber

Attorney

Department of Corrections & Rehabilitation

(916) 217-1949

1515 S Street, Suite 314S

Sacramento, CA 95811-7243

CONFIDENTIALITY NOTICE: This communication with its contents may contain confidential and/or legally privileged information. It is solely for the use of the intended recipient(s). Unauthorized interception, review, use or disclosure is prohibited and may violate applicable laws including the Electronic Communications Privacy Act. If you are not the intended recipient, please contact the sender and destroy all copies of the communication.

---

**From:** Lisa Ells <LElls@rbgg.com>

**Sent:** Friday, March 3, 2023 3:24 PM

**To:** Weber, Nicholas@CDCR <Nicholas.Weber@cdcr.ca.gov>; Coleman Team - RBG Only <ColemanTeam-RBGOnly@rbgg.com>; Coleman Special Master <colemanspecialmaster@pldlaw.com>; Steve Fama <sfama@prisonlaw.com>; Elise Thorn <Elise.Thorn@doj.ca.gov>; v_Namrata.Kotwani@doj.ca.gov <Namrata.Kotwani@doj.ca.gov>; Paul B. Mello <Pmello@hansonbridgett.com>; Samantha Wolff <SWolff@hansonbridgett.com>; Thind, Sundeep@CDCR <Sundeep.Thind@cdcr.ca.gov>; Hockerson, Dillon@CDCR <Dillon.Hockerson@cdcr.ca.gov>; Damon McClain (Damon.McClain@doj.ca.gov) <Damon.McClain@doj.ca.gov>

**Cc:** Ceballos, Laura@CDCR <Laura.Ceballos@cdcr.ca.gov>; Bunn, Albert@CDCR <Albert.Bunn@cdcr.ca.gov>; Mehta, Amar@CDCR <Amar.Mehta@cdcr.ca.gov>; Cartwright, Steven@CDCR <Steven.Cartwright@cdcr.ca.gov>

**Subject:** RE: Coleman - Revision to the Master Treatment Plan [IMAN-DMS.FID12440]

> **CAUTION:** This email originated from outside of CDCR/CCHCS. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Nick,

I understand that these are no longer the most current version of the documents Defendants are proposing, and that we are discussing on Monday. Please send us the correct documents ASAP so we can be prepared for that discussion.

Lisa

---

**From:** Weber, Nicholas@CDCR <Nicholas.Weber@cdcr.ca.gov>

**Sent:** Thursday, March 2, 2023 2:50 PM

**To:** Coleman Team - RBG Only <ColemanTeam-RBGOnly@rbgg.com>; Coleman Special Master <colemanspecialmaster@pldlaw.com>; Steve Fama <sfama@prisonlaw.com>; Elise Thorn <Elise.Thorn@doj.ca.gov>; v_Namrata.Kotwani@doj.ca.gov <Namrata.Kotwani@doj.ca.gov>; Paul B. Mello <Pmello@hansonbridgett.com>; Samantha Wolff <SWolff@hansonbridgett.com>; Thind, Sundeep@CDCR <Sundeep.Thind@cdcr.ca.gov>; Hockerson, Dillon@CDCR

<Dillon.Hockerson@cdcr.ca.gov>; Damon McClain (Damon.McClain@doj.ca.gov)
<Damon.McClain@doj.ca.gov>
**Cc:** Laura Ceballos <laura.ceballos@cdcr.ca.gov>; Bunn, Albert@CDCR <Albert.Bunn@cdcr.ca.gov>;
Mehta, Amar@CDCR <Amar.Mehta@cdcr.ca.gov>; Steven Cartwright
<Steven.Cartwright@cdcr.ca.gov>
**Subject:** Coleman - Revision to the Master Treatment Plan

[EXTERNAL MESSAGE NOTICE]

All,

In an effort to improve job satisfaction amid the staffing issues at CMF, CDCR has streamlined its
EHRS IDTT Master Treatment Plan (MTP) documentation to remove non-essential fields and ensure
staff are spending more time providing direct patient care.  A copy of the current MTP is attached
organized by sections removed or edited from the old form and sections added to the new form.
CDCR will first roll out the new MTP at CMF's outpatient and MHCB programs effective immediately.
CDCR will monitor the new MTP at CMF to ensure it is working before rolling the new MTP out
statewide.

Please let me know if you have any questions.

Nick Weber
Attorney
Department of Corrections & Rehabilitation
(916) 217-1949
1515 S Street, Suite 314S
Sacramento, CA  95811-7243

CONFIDENTIALITY NOTICE: This communication with its contents may contain
confidential and/or legally privileged information. It is solely for the use of the intended
recipient(s). Unauthorized interception, review, use or disclosure is prohibited and may violate
applicable laws including the Electronic Communications Privacy Act. If you are not the
intended recipient, please contact the sender and destroy all copies of the communication.

This message was sent from outside the company. Please do not click links or open attachments unless you recognize the
source of this email and know the content is safe.

# EXHIBIT E

| From: | Jenny Yelin |
|---|---|
| To: | Nick Weber; Lisa Ells; Coleman Team - RBG Only; Coleman Special Master; Steve Fama; Elise Thorn; v_Namrata.Kotwani@doj.ca.gov; Paul B. Mello; Samantha Wolff; Thind, Sundeep@CDCR; Hockerson, Dillon@CDCR; Damon McClain (Damon.McClain@doj.ca.gov) |
| Cc: | Laura Ceballos; Bunn, Albert@CDCR; Mehta, Amar@CDCR; Steven Cartwright |
| Subject: | RE: Coleman - Revision to the Master Treatment Plan [IMAN-DMS.FID12440] |
| Date: | Thursday, March 9, 2023 7:22:13 PM |

Hi Nick

As discussed at today's meeting, we consent to use of the revised SRASHE form with the same limitations and caveats as the MTP revision--only at CMF and only for a period of 3 months. Please notify us as soon as possible if CDCR will seek to continue its use at CMF beyond three months so that we can meet and confer prior to the expiration of that time period. Otherwise, we expect that CDCR will revert to the standard SRASHE at CMF after the 3 month period elapses.

We do not yet have a position on the proposed revision to the MTP used in the PIPs. Please send us the finalized proposal when it is ready.

Finally, in light of CDCR's representation that there is no way to prevent non-CMF users in EHRS from using these modified forms, we request that CDCR report to us at the end of the three month period whether any (and how many) staff _not_ at CMF used either the modified MTP or the modified SRASHE form in violation of policy.

Jenny

---

**From:** Weber, Nicholas@CDCR <Nicholas.Weber@cdcr.ca.gov>
**Sent:** Tuesday, March 7, 2023 4:49 PM
**To:** Jenny Yelin <JYelin@rbgg.com>; Lisa Ells <LElls@rbgg.com>; Coleman Team - RBG Only <ColemanTeam-RBGOnly@rbgg.com>; Coleman Special Master <colemanspecialmaster@pldolaw.com>; Steve Fama <sfama@prisonlaw.com>; Elise Thorn <Elise.Thorn@doj.ca.gov>; v_Namrata.Kotwani@doj.ca.gov <Namrata.Kotwani@doj.ca.gov>; Paul B. Mello <Pmello@hansonbridgett.com>; Samantha Wolff <SWolff@hansonbridgett.com>; Thind, Sundeep@CDCR <Sundeep.Thind@cdcr.ca.gov>; Hockerson, Dillon@CDCR <Dillon.Hockerson@cdcr.ca.gov>; Damon McClain (Damon.McClain@doj.ca.gov) <Damon.McClain@doj.ca.gov>
**Cc:** Laura Ceballos <laura.ceballos@cdcr.ca.gov>; Bunn, Albert@CDCR <Albert.Bunn@cdcr.ca.gov>; Mehta, Amar@CDCR <Amar.Mehta@cdcr.ca.gov>; Steven Cartwright <Steven.Cartwright@cdcr.ca.gov>
**Subject:** RE: Coleman - Revision to the Master Treatment Plan [IMAN-DMS.FID12440]

[EXTERNAL MESSAGE NOTICE]

Thanks Jenny,

We will circle back to this group in three months' time if continued use of the modified MTP is required.

Please also see attached the revision to the SRASHE for your review, structured similarly to the MTP document we circulated last week.

Nick Weber
Attorney
Department of Corrections & Rehabilitation
(916) 217-1949
1515 S Street, Suite 314S
Sacramento, CA 95811-7243

CONFIDENTIALITY NOTICE: This communication with its contents may contain confidential and/or legally privileged information. It is solely for the use of the intended recipient(s). Unauthorized interception, review, use or disclosure is prohibited and may violate applicable laws including the Electronic Communications Privacy Act. If you are not the intended recipient, please contact the sender and destroy all copies of the communication.

---

**From:** Jenny Yelin <JYelin@rbgg.com>
**Sent:** Monday, March 6, 2023 3:11 PM
**To:** Weber, Nicholas@CDCR <Nicholas.Weber@cdcr.ca.gov>; Lisa Ells <LElls@rbgg.com>; Coleman Team - RBG Only <ColemanTeam-RBGOnly@rbgg.com>; Coleman Special Master <colemanspecialmaster@pldolaw.com>; Steve Fama <sfama@prisonlaw.com>; Elise Thorn <Elise.Thorn@doj.ca.gov>; v_Namrata.Kotwani@doj.ca.gov <Namrata.Kotwani@doj.ca.gov>; Paul B. Mello <Pmello@hansonbridgett.com>; Samantha Wolff <SWolff@hansonbridgett.com>; Thind, Sundeep@CDCR <Sundeep.Thind@cdcr.ca.gov>; Hockerson, Dillon@CDCR <Dillon.Hockerson@cdcr.ca.gov>; Damon McClain (Damon.McClain@doj.ca.gov) <Damon.McClain@doj.ca.gov>
**Cc:** Ceballos, Laura@CDCR <Laura.Ceballos@cdcr.ca.gov>; Bunn, Albert@CDCR <Albert.Bunn@cdcr.ca.gov>; Mehta, Amar@CDCR <Amar.Mehta@cdcr.ca.gov>; Cartwright, Steven@CDCR <Steven.Cartwright@cdcr.ca.gov>
**Subject:** RE: Coleman - Revision to the Master Treatment Plan [IMAN-DMS.FID12440]

> **CAUTION:** This email originated from outside of CDCR/CCHCS. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Dear all,

Thank you for the meeting today. We appreciate the additional information and context you provided regarding the proposed revision to the MTP for use on a temporary basis at CMF. We consent to use of the revised form on a limited basis, only at CMF, and only for a period of 3 months. Please notify us as soon as possible if CDCR will seek to continue its use at CMF beyond

three months so that we can meet and confer prior to the expiration of that time period.  Otherwise, we expect that CDCR will revert to the standard MTP at CMF after the 3 month period elapses.

Jenny

---

**From:** Weber, Nicholas@CDCR <Nicholas.Weber@cdcr.ca.gov>
**Sent:** Monday, March 6, 2023 9:37 AM
**To:** Lisa Ells <LElls@rbgg.com>; Coleman Team - RBG Only <ColemanTeam-RBGOnly@rbgg.com>; Coleman Special Master <colemanspecialmaster@pldolaw.com>; Steve Fama <sfama@prisonlaw.com>; Elise Thorn <Elise.Thorn@doj.ca.gov>; v_Namrata.Kotwani@doj.ca.gov <Namrata.Kotwani@doj.ca.gov>; Paul B. Mello <Pmello@hansonbridgett.com>; Samantha Wolff <SWolff@hansonbridgett.com>; Thind, Sundeep@CDCR <Sundeep.Thind@cdcr.ca.gov>; Hockerson, Dillon@CDCR <Dillon.Hockerson@cdcr.ca.gov>; Damon McClain (Damon.McClain@doj.ca.gov) <Damon.McClain@doj.ca.gov>
**Cc:** Laura Ceballos <laura.ceballos@cdcr.ca.gov>; Bunn, Albert@CDCR <Albert.Bunn@cdcr.ca.gov>; Mehta, Amar@CDCR <Amar.Mehta@cdcr.ca.gov>; Steven Cartwright <Steven.Cartwright@cdcr.ca.gov>
**Subject:** RE: Coleman - Revision to the Master Treatment Plan [IMAN-DMS.FID12440]

[EXTERNAL MESSAGE NOTICE]

Lisa,

I'm sorry I missed this on Friday afternoon. Attached is a revised MTP document.  The only changes to it start at page 20 of the PDF where we added fields to capture whether the patient was present/refused to attend the IDTT in the revised MTP. We also added, for reference, pages that are unchanged by this plan beginning at page 23.

Also attached is a modified CMF Suicide Risk Evaluation which we would also like to discuss with your team this afternoon.

Nick Weber
Attorney
Department of Corrections & Rehabilitation
(916) 217-1949
1515 S Street, Suite 314S
Sacramento, CA  95811-7243

CONFIDENTIALITY NOTICE: This communication with its contents may contain confidential and/or legally privileged information. It is solely for the use of the intended recipient(s). Unauthorized interception, review, use or disclosure is prohibited and may violate applicable laws including the Electronic Communications Privacy Act. If you are not the intended recipient, please contact the sender and destroy all copies of the communication.

**From:** Lisa Ells <LElls@rbgg.com>
**Sent:** Friday, March 3, 2023 3:24 PM
**To:** Weber, Nicholas@CDCR <Nicholas.Weber@cdcr.ca.gov>; Coleman Team - RBG Only <ColemanTeam-RBGOnly@rbgg.com>; Coleman Special Master <colemanspecialmaster@pldlaw.com>; Steve Fama <sfama@prisonlaw.com>; Elise Thorn <Elise.Thorn@doj.ca.gov>; v_Namrata.Kotwani@doj.ca.gov <Namrata.Kotwani@doj.ca.gov>; Paul B. Mello <Pmello@hansonbridgett.com>; Samantha Wolff <SWolff@hansonbridgett.com>; Thind, Sundeep@CDCR <Sundeep.Thind@cdcr.ca.gov>; Hockerson, Dillon@CDCR <Dillon.Hockerson@cdcr.ca.gov>; Damon McClain (Damon.McClain@doj.ca.gov) <Damon.McClain@doj.ca.gov>
**Cc:** Ceballos, Laura@CDCR <Laura.Ceballos@cdcr.ca.gov>; Bunn, Albert@CDCR <Albert.Bunn@cdcr.ca.gov>; Mehta, Amar@CDCR <Amar.Mehta@cdcr.ca.gov>; Cartwright, Steven@CDCR <Steven.Cartwright@cdcr.ca.gov>
**Subject:** RE: Coleman - Revision to the Master Treatment Plan [IMAN-DMS.FID12440]

> **CAUTION:** This email originated from outside of CDCR/CCHCS. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Nick,

I understand that these are no longer the most current version of the documents Defendants are proposing, and that we are discussing on Monday. Please send us the correct documents ASAP so we can be prepared for that discussion.

Lisa

**From:** Weber, Nicholas@CDCR <Nicholas.Weber@cdcr.ca.gov>
**Sent:** Thursday, March 2, 2023 2:50 PM
**To:** Coleman Team - RBG Only <ColemanTeam-RBGOnly@rbgg.com>; Coleman Special Master <colemanspecialmaster@pldlaw.com>; Steve Fama <sfama@prisonlaw.com>; Elise Thorn <Elise.Thorn@doj.ca.gov>; v_Namrata.Kotwani@doj.ca.gov <Namrata.Kotwani@doj.ca.gov>; Paul B. Mello <Pmello@hansonbridgett.com>; Samantha Wolff <SWolff@hansonbridgett.com>; Thind, Sundeep@CDCR <Sundeep.Thind@cdcr.ca.gov>; Hockerson, Dillon@CDCR <Dillon.Hockerson@cdcr.ca.gov>; Damon McClain (Damon.McClain@doj.ca.gov) <Damon.McClain@doj.ca.gov>
**Cc:** Laura Ceballos <laura.ceballos@cdcr.ca.gov>; Bunn, Albert@CDCR <Albert.Bunn@cdcr.ca.gov>; Mehta, Amar@CDCR <Amar.Mehta@cdcr.ca.gov>; Steven Cartwright <Steven.Cartwright@cdcr.ca.gov>
**Subject:** Coleman - Revision to the Master Treatment Plan

> [EXTERNAL MESSAGE NOTICE]

All,

In an effort to improve job satisfaction amid the staffing issues at CMF, CDCR has streamlined its EHRS IDTT Master Treatment Plan (MTP) documentation to remove non-essential fields and ensure

staff are spending more time providing direct patient care.  A copy of the current MTP is attached organized by sections removed or edited from the old form and sections added to the new form. CDCR will first roll out the new MTP at CMF's outpatient and MHCB programs effective immediately. CDCR will monitor the new MTP at CMF to ensure it is working before rolling the new MTP out statewide.

Please let me know if you have any questions.


Nick Weber
Attorney
Department of Corrections & Rehabilitation
(916) 217-1949
1515 S Street, Suite 314S
Sacramento, CA  95811-7243


CONFIDENTIALITY NOTICE: This communication with its contents may contain confidential and/or legally privileged information. It is solely for the use of the intended recipient(s). Unauthorized interception, review, use or disclosure is prohibited and may violate applicable laws including the Electronic Communications Privacy Act. If you are not the intended recipient, please contact the sender and destroy all copies of the communication.


This message was sent from outside the company. Please do not click links or open attachments unless you recognize the source of this email and know the content is safe.

# EXHIBIT F

| From: | Weber, Nicholas@CDCR |
|---|---|
| To: | Jenny Yelin; Lisa Ells; Coleman Team - RBG Only; Coleman Special Master; Steve Fama; Elise Thorn; v_Namrata.Kotwani@doj.ca.gov; Paul B. Mello; Samantha Wolff; Thind, Sundeep@CDCR; Hockerson, Dillon@CDCR; Damon McClain (Damon.McClain@doj.ca.gov) |
| Cc: | Ceballos, Laura@CDCR; Bunn, Albert@CDCR; Mehta, Amar@CDCR; Cartwright, Steven@CDCR |
| Subject: | RE: Coleman - Revision to the Master Treatment Plan [IMAN-DMS.FID12440] |
| Date: | Thursday, March 9, 2023 10:43:58 PM |

Hi Jenny,

We agree that we'll check back in three months on the need for continued use of the CMF SRASHE. We'll also run a query in about three months to check on whether the outpatient CMF MTP was misused and report our results.

Nick Weber
Attorney
Department of Corrections & Rehabilitation
(916) 217-1949
1515 S Street, Suite 314S
Sacramento, CA 95811-7243

CONFIDENTIALITY NOTICE: This communication with its contents may contain confidential and/or legally privileged information. It is solely for the use of the intended recipient(s). Unauthorized interception, review, use or disclosure is prohibited and may violate applicable laws including the Electronic Communications Privacy Act. If you are not the intended recipient, please contact the sender and destroy all copies of the communication.

**From:** Jenny Yelin <JYelin@rbgg.com>
**Sent:** Thursday, March 9, 2023 4:22 PM
**To:** Weber, Nicholas@CDCR <Nicholas.Weber@cdcr.ca.gov>; Lisa Ells <LElls@rbgg.com>; Coleman Team - RBG Only <ColemanTeam-RBGOnly@rbgg.com>; Coleman Special Master <colemanspecialmaster@pldolaw.com>; Steve Fama <sfama@prisonlaw.com>; Elise Thorn <Elise.Thorn@doj.ca.gov>; v_Namrata.Kotwani@doj.ca.gov <Namrata.Kotwani@doj.ca.gov>; Paul B. Mello <Pmello@hansonbridgett.com>; Samantha Wolff <SWolff@hansonbridgett.com>; Thind, Sundeep@CDCR <Sundeep.Thind@cdcr.ca.gov>; Hockerson, Dillon@CDCR <Dillon.Hockerson@cdcr.ca.gov>; Damon McClain (Damon.McClain@doj.ca.gov) <Damon.McClain@doj.ca.gov>
**Cc:** Ceballos, Laura@CDCR <Laura.Ceballos@cdcr.ca.gov>; Bunn, Albert@CDCR <Albert.Bunn@cdcr.ca.gov>; Mehta, Amar@CDCR <Amar.Mehta@cdcr.ca.gov>; Cartwright,

Steven@CDCR <Steven.Cartwright@cdcr.ca.gov>
**Subject:** RE: Coleman - Revision to the Master Treatment Plan [IMAN-DMS.FID12440]

**CAUTION:** This email originated from outside of CDCR/CCHCS. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Hi Nick

As discussed at today's meeting, we consent to use of the revised SRASHE form with the same limitations and caveats as the MTP revision--only at CMF and only for a period of 3 months.  Please notify us as soon as possible if CDCR will seek to continue its use at CMF beyond three months so that we can meet and confer prior to the expiration of that time period.  Otherwise, we expect that CDCR will revert to the standard SRASHE at CMF after the 3 month period elapses.

We do not yet have a position on the proposed revision to the MTP used in the PIPs.  Please send us the finalized proposal when it is ready.

Finally, in light of CDCR's representation that there is no way to prevent non-CMF users in EHRS from using these modified forms, we request that CDCR report to us at the end of the three month period whether any (and how many) staff not at CMF used either the modified MTP or the modified SRASHE form in violation of policy.

Jenny

**From:** Weber, Nicholas@CDCR <Nicholas.Weber@cdcr.ca.gov>
**Sent:** Tuesday, March 7, 2023 4:49 PM
**To:** Jenny Yelin <JYelin@rbgg.com>; Lisa Ells <LElls@rbgg.com>; Coleman Team - RBG Only <ColemanTeam-RBGOnly@rbgg.com>; Coleman Special Master <colemanspecialmaster@pldalaw.com>; Steve Fama <sfama@prisonlaw.com>; Elise Thorn <Elise.Thorn@doj.ca.gov>; v_Namrata.Kotwani@doj.ca.gov <Namrata.Kotwani@doj.ca.gov>; Paul B. Mello <Pmello@hansonbridgett.com>; Samantha Wolff <SWolff@hansonbridgett.com>; Thind, Sundeep@CDCR <Sundeep.Thind@cdcr.ca.gov>; Hockerson, Dillon@CDCR <Dillon.Hockerson@cdcr.ca.gov>; Damon McClain (Damon.McClain@doj.ca.gov) <Damon.McClain@doj.ca.gov>
**Cc:** Laura Ceballos <laura.ceballos@cdcr.ca.gov>; Bunn, Albert@CDCR <Albert.Bunn@cdcr.ca.gov>; Mehta, Amar@CDCR <Amar.Mehta@cdcr.ca.gov>; Steven Cartwright <Steven.Cartwright@cdcr.ca.gov>
**Subject:** RE: Coleman - Revision to the Master Treatment Plan [IMAN-DMS.FID12440]

[EXTERNAL MESSAGE NOTICE]

Thanks Jenny,

We will circle back to this group in three months' time if continued use of the modified MTP is required.

Please also see attached the revision to the SRASHE for your review, structured similarly to the MTP document we circulated last week.

Nick Weber
Attorney
Department of Corrections & Rehabilitation
(916) 217-1949
1515 S Street, Suite 314S
Sacramento, CA  95811-7243

CONFIDENTIALITY NOTICE: This communication with its contents may contain confidential and/or legally privileged information. It is solely for the use of the intended recipient(s). Unauthorized interception, review, use or disclosure is prohibited and may violate applicable laws including the Electronic Communications Privacy Act. If you are not the intended recipient, please contact the sender and destroy all copies of the communication.

---

**From:** Jenny Yelin <JYelin@rbgg.com>
**Sent:** Monday, March 6, 2023 3:11 PM
**To:** Weber, Nicholas@CDCR <Nicholas.Weber@cdcr.ca.gov>; Lisa Ells <LElls@rbgg.com>; Coleman Team - RBG Only <ColemanTeam-RBGOnly@rbgg.com>; Coleman Special Master <colemanspecialmaster@pldolaw.com>; Steve Fama <sfama@prisonlaw.com>; Elise Thorn <Elise.Thorn@doj.ca.gov>; v_Namrata.Kotwani@doj.ca.gov <Namrata.Kotwani@doj.ca.gov>; Paul B. Mello <Pmello@hansonbridgett.com>; Samantha Wolff <SWolff@hansonbridgett.com>; Thind, Sundeep@CDCR <Sundeep.Thind@cdcr.ca.gov>; Hockerson, Dillon@CDCR <Dillon.Hockerson@cdcr.ca.gov>; Damon McClain (Damon.McClain@doj.ca.gov) <Damon.McClain@doj.ca.gov>
**Cc:** Ceballos, Laura@CDCR <Laura.Ceballos@cdcr.ca.gov>; Bunn, Albert@CDCR <Albert.Bunn@cdcr.ca.gov>; Mehta, Amar@CDCR <Amar.Mehta@cdcr.ca.gov>; Cartwright, Steven@CDCR <Steven.Cartwright@cdcr.ca.gov>
**Subject:** RE: Coleman - Revision to the Master Treatment Plan [IMAN-DMS.FID12440]

> **CAUTION:** This email originated from outside of CDCR/CCHCS. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Dear all,

Thank you for the meeting today. We appreciate the additional information and context you provided regarding the proposed revision to the MTP for use on a temporary basis at CMF.  We consent to use of the revised form on a limited basis, only at CMF, and only for a period of 3 months.  Please notify us as soon as possible if CDCR will seek to continue its use at CMF beyond

three months so that we can meet and confer prior to the expiration of that time period.  Otherwise, we expect that CDCR will revert to the standard MTP at CMF after the 3 month period elapses.

Jenny

---

**From:** Weber, Nicholas@CDCR <Nicholas.Weber@cdcr.ca.gov>
**Sent:** Monday, March 6, 2023 9:37 AM
**To:** Lisa Ells <LElls@rbgg.com>; Coleman Team - RBG Only <ColemanTeam-RBGOnly@rbgg.com>; Coleman Special Master <colemanspecialmaster@pldolaw.com>; Steve Fama <sfama@prisonlaw.com>; Elise Thorn <Elise.Thorn@doj.ca.gov>; v_Namrata.Kotwani@doj.ca.gov <Namrata.Kotwani@doj.ca.gov>; Paul B. Mello <Pmello@hansonbridgett.com>; Samantha Wolff <SWolff@hansonbridgett.com>; Thind, Sundeep@CDCR <Sundeep.Thind@cdcr.ca.gov>; Hockerson, Dillon@CDCR <Dillon.Hockerson@cdcr.ca.gov>; Damon McClain (Damon.McClain@doj.ca.gov) <Damon.McClain@doj.ca.gov>
**Cc:** Laura Ceballos <laura.ceballos@cdcr.ca.gov>; Bunn, Albert@CDCR <Albert.Bunn@cdcr.ca.gov>; Mehta, Amar@CDCR <Amar.Mehta@cdcr.ca.gov>; Steven Cartwright <Steven.Cartwright@cdcr.ca.gov>
**Subject:** RE: Coleman - Revision to the Master Treatment Plan [IMAN-DMS.FID12440]

[EXTERNAL MESSAGE NOTICE]

Lisa,

I'm sorry I missed this on Friday afternoon. Attached is a revised MTP document.  The only changes to it start at page 20 of the PDF where we added fields to capture whether the patient was present/refused to attend the IDTT in the revised MTP. We also added, for reference, pages that are unchanged by this plan beginning at page 23.

Also attached is a modified CMF Suicide Risk Evaluation which we would also like to discuss with your team this afternoon.

Nick Weber
Attorney
Department of Corrections & Rehabilitation
(916) 217-1949
1515 S Street, Suite 314S
Sacramento, CA  95811-7243

CONFIDENTIALITY NOTICE: This communication with its contents may contain confidential and/or legally privileged information. It is solely for the use of the intended recipient(s). Unauthorized interception, review, use or disclosure is prohibited and may violate applicable laws including the Electronic Communications Privacy Act. If you are not the intended recipient, please contact the sender and destroy all copies of the communication.

**From:** Lisa Ells <LElls@rbgg.com>
**Sent:** Friday, March 3, 2023 3:24 PM
**To:** Weber, Nicholas@CDCR <Nicholas.Weber@cdcr.ca.gov>; Coleman Team - RBG Only
<ColemanTeam-RBGOnly@rbgg.com>; Coleman Special Master
<colemanspecialmaster@pldlaw.com>; Steve Fama <sfama@prisonlaw.com>; Elise Thorn
<Elise.Thorn@doj.ca.gov>; v_Namrata.Kotwani@doj.ca.gov <Namrata.Kotwani@doj.ca.gov>; Paul B.
Mello <Pmello@hansonbridgett.com>; Samantha Wolff <SWolff@hansonbridgett.com>; Thind,
Sundeep@CDCR <Sundeep.Thind@cdcr.ca.gov>; Hockerson, Dillon@CDCR
<Dillon.Hockerson@cdcr.ca.gov>; Damon McClain (Damon.McClain@doj.ca.gov)
<Damon.McClain@doj.ca.gov>
**Cc:** Ceballos, Laura@CDCR <Laura.Ceballos@cdcr.ca.gov>; Bunn, Albert@CDCR
<Albert.Bunn@cdcr.ca.gov>; Mehta, Amar@CDCR <Amar.Mehta@cdcr.ca.gov>; Cartwright,
Steven@CDCR <Steven.Cartwright@cdcr.ca.gov>
**Subject:** RE: Coleman - Revision to the Master Treatment Plan [IMAN-DMS.FID12440]

CAUTION: This email originated from outside of CDCR/CCHCS. Do not click links or open attachments unless you
recognize the sender and know the content is safe.

Nick,

I understand that these are no longer the most current version of the documents Defendants are
proposing, and that we are discussing on Monday.  Please send us the correct documents ASAP so
we can be prepared for that discussion.

Lisa

**From:** Weber, Nicholas@CDCR <Nicholas.Weber@cdcr.ca.gov>
**Sent:** Thursday, March 2, 2023 2:50 PM
**To:** Coleman Team - RBG Only <ColemanTeam-RBGOnly@rbgg.com>; Coleman Special Master
<colemanspecialmaster@pldlaw.com>; Steve Fama <sfama@prisonlaw.com>; Elise Thorn
<Elise.Thorn@doj.ca.gov>; v_Namrata.Kotwani@doj.ca.gov <Namrata.Kotwani@doj.ca.gov>; Paul B.
Mello <Pmello@hansonbridgett.com>; Samantha Wolff <SWolff@hansonbridgett.com>; Thind,
Sundeep@CDCR <Sundeep.Thind@cdcr.ca.gov>; Hockerson, Dillon@CDCR
<Dillon.Hockerson@cdcr.ca.gov>; Damon McClain (Damon.McClain@doj.ca.gov)
<Damon.McClain@doj.ca.gov>
**Cc:** Laura Ceballos <laura.ceballos@cdcr.ca.gov>; Bunn, Albert@CDCR <Albert.Bunn@cdcr.ca.gov>;
Mehta, Amar@CDCR <Amar.Mehta@cdcr.ca.gov>; Steven Cartwright
<Steven.Cartwright@cdcr.ca.gov>
**Subject:** Coleman - Revision to the Master Treatment Plan

[EXTERNAL MESSAGE NOTICE]

All,

In an effort to improve job satisfaction amid the staffing issues at CMF, CDCR has streamlined its
EHRS IDTT Master Treatment Plan (MTP) documentation to remove non-essential fields and ensure

staff are spending more time providing direct patient care.  A copy of the current MTP is attached organized by sections removed or edited from the old form and sections added to the new form. CDCR will first roll out the new MTP at CMF's outpatient and MHCB programs effective immediately. CDCR will monitor the new MTP at CMF to ensure it is working before rolling the new MTP out statewide.

Please let me know if you have any questions.

Nick Weber
Attorney
Department of Corrections & Rehabilitation
(916) 217-1949
1515 S Street, Suite 314S
Sacramento, CA  95811-7243

CONFIDENTIALITY NOTICE: This communication with its contents may contain confidential and/or legally privileged information. It is solely for the use of the intended recipient(s). Unauthorized interception, review, use or disclosure is prohibited and may violate applicable laws including the Electronic Communications Privacy Act. If you are not the intended recipient, please contact the sender and destroy all copies of the communication.

This message was sent from outside the company. Please do not click links or open attachments unless you recognize the source of this email and know the content is safe.

# EXHIBIT G

STATE OF CALIFORNIA—DEPARTMENT OF CORRECTIONS AND REHABILITATION                    GAVIN NEWSOM, GOVERNOR

**OFFICE OF LEGAL AFFAIRS**
Jennifer Neill
General Counsel
P.O. Box 942883
Sacramento, CA 94283-0001



January 13, 2023

Special Master Lopes                        Lisa Ells
Pannone Lopes Devereaux and O'Gara LLC      Rosen Bien Galvan and Grunfeld LLP
Northwoods Office Park, Suite 215N          101 Mission Street, Sixth Floor
1301 Atwood Avenue                          San Francisco, A 94105
Johnston, RI 02919

VIA EMAIL

Plaintiffs and Special Master Lopes,

On January 6, 2023, the court ordered Defendants to serve on "Plaintiffs and the Special Master such plans, if any, as they have developed to address the issues covered by the first and second recommendations in the Special Master's May 17, 2022 Twenty-Ninth Monitoring Round Report on CDCR PIPs" within seven days. (ECF No. 7697 at 3.) Attached are the preliminary plans addressing the frequency and amount of treatment in CDCR's Psychiatric Inpatient Programs (PIP) (Attachment A) as well as steps taken to address staffing deficiencies in those programs (Attachments B-D).

The court's January 6 order states that, per the Special Master's representation, "productive discussions with [Secretary Allison] had stalled." (Id.) Defendants disagree with that assessment. Conversations had continued through December 2022 and although resolution was not reached by the time a declaration was due, CDCR remained willing to continue to meet and confer. As outlined below, discussions on PIP treatment had been delegated to Drs. Mehta and Metzner and their respective colleagues since November 2022. And discussions pertaining to PIP staffing had not even begun, let alone stalled, between the Special Master and CDCR as those conversations were expected to continue through the end of February 2023.

On August 29, 2022 the court required the Special Master and former CDCR secretary Kathleen Allison[1] to meet and confer regarding the first and second recommendations from the Special Master's May 17, 2022 monitoring round report. (ECF No. 7608 at 6.) Specifically, the court gave the Special Master and Secretary Allison until December 29, 2022 to discuss the second recommendation, regarding the frequency and amount of care provided in PIPs, and until February 28, 2023 to discuss the first recommendation regarding PIP staffing.

During the October 11, 2022 second level data remediation dispute meeting the Special Master and Secretary Allison agreed to discuss the PIP order at their next biweekly meeting scheduled for October 25, 2022. That matter was not added to the agenda on October 25, 2022 and was

---

[1] Kathleen Allison retired on December 27, 2022 and the Governor has appointed Jeff Macomber as the new CDCR secretary.

Page 2

instead taken up during the November 8, 2022 second level data remediation dispute meeting. During that meeting, the Special Master informed Secretary Allison that the discussion should be referred to Drs. Mehta and Metzner and that the two could later come back to the Special Master and Secretary to report their progress.

On November 22, 2022, Dr. Mehta provided Dr. Metzner with a proposal for PIP treatment. They met, along with Brett Johnson, Kerry Hughes, and Kerry Walsh from the Special Master team on November 23, 2022.  Dr. Mehta followed up with Dr. Metzner on November 29, 2022 regarding their November 23 discussions.  On December 6, 2022 CDCR sought a follow up meeting which was ultimately scheduled for December 16, 2022.

While CDCR does not believe these discussions "stalled," CDCR remains disappointed by the Special Master's experts' refusal to provide any clinical or correctional policies, practices, studies, or articles from other similar systems to support the Special Master team's recommendations.  To date, CDCR has mainly received only verbal representations of how other, mostly non-correctional systems operate, which CDCR has not been able to independently verify.  As noted in its proposal, CDCR has sought out and obtained information from other state correctional systems on practices in their mental health inpatient programs.

CDCR remains committed to developing an evidence based plan and its proposal is consistent with community and correctional standards for inpatient mental health care.  To the extent that the Special Master team has any documentation to support their position, CDCR requests it so that it can be used to inform the upcoming meet and confer and CDCR's final plans.

Sincerely,

Nick Weber

*/s/ Nick Weber*

Attorney
California Department of Corrections and Rehabilitation
Office of Legal Affairs

# ATTACHMENT A

**Proposal - Treatment Frequency in PIP**

**Background**

On August 29, 2022 the Court ordered the  California Department of Corrections and Rehabilitation (CDCR) to respond to the Special Master's 2021 Inpatient Care Report regarding the need to "develop minimum standards for the provision of structured therapeutic activities, unstructured out of cell activities, treatment planning and individual treatment consistent with a psychiatric inpatient level of care, and shall develop plans to provide such structured therapeutic activities, unstructured out of cell activities, treatment planning, and individual treatment consistent with the established minimum standards.  CDCR shall also develop and implement a system for tracking and reporting adherence to the standards developed."

The following provides an outline of standards for therapeutic treatment in CDCR's Psychiatric Inpatient Programs (PIP), consistent with the standards codified in California Code of Regulations Title 22. Information pertaining to other correctional settings nationwide with regard to treatment provided within their inpatient programs is also provided.  Information herein outlines CDCR's position on standards for treatment frequency and out of cell time, which recognizes the Treatment Team's ability to individualize programming and treatment to address the needs of each patient.  The summary includes CDCR's position pertaining to the current treatment offered in CDCR's PIP locations and suggestions for additional quality assurance.

**The Issue**

The Special Master recommended in his May 2022 monitoring report that CDCR develop minimum treatment standards for patients receiving care within its PIPs.  (ECF No. 7555.)  Title 22, Chapter 7-Mental Health Treatment Program-Individual Treatment Plan states that individual treatment plans must:

- Be developed as soon as possible, but no later than 72 hours following the inmate-patient's admission.
- Be based on a comprehensive assessment of the patient's physical, mental, emotional and social needs.
- Be reviewed and updated as often as indicated, but no less often than every seven (7) calendar days, weekends and holidays excepted, for acute mental health inmate-patients and every thirty calendar (30) days for non-acute mental health inmate-patients.

Additionally, Chapter 7-Mental Health Treatment Program-Services notes the following:

- Mental health treatment programs shall provide and conduct organized therapeutic social, recreational and vocational activities in accordance with the interests, abilities and needs of the inmate-patient, and will include the opportunity for exercise.
- Mental health rehabilitation therapy services shall be designed by and provided under the direction of a recreational therapist, an occupational therapist, a psychiatrist, a clinical psychologist, a licensed clinical social worker, a licensed marriage, family, and child counselor, or a psychiatric mental health nurse.

Title 22 does not provide any other guidance or requirements for the number of treatment hours a patient shall receive in either the Acute or Non-Acute inpatient settings.

A review of the Department of State Hospitals Policy Directive 3607-DSH Treatment Planning Policy-CDCR Patients in DSH Inpatient Programs (2017) indicates the following with regard to Assessment and Individual Treatment Planning:

> "The assessment process includes the patient's perceptions of needs, preferences, and goals, as well as their perceptions of the quality of life, functional skills, services desired, and how his spiritual and emotional needs can be met while receiving services. The Individual Development Treatment Team (IDTT) uses this information as a basis for identifying and prioritizing treatment needs.
> "The plan identifies behavioral goals and objectives to address both problems and strengths; the interventions and services that will be made or provided; a review of the patient's ability to maintain the LRH designation provided by CDCR and the criteria for discharge. The plan also identifies behavioral goals that lead to observable, measurable objectives to meet the discharge criteria."

Neither Title 22 nor DSH Policy Directive 3607 require setting treatment minimums for patients or otherwise indicate that doing so is a standard practice, and instead indicate that treatment provided should be individualized to the patient's treatment needs, goals, and preparedness for discharge.

**Proposal**
CDCR understands the importance of ensuring that all patients have access to out of cell time for recreation, exercise, socialization, therapeutic groups, and individual contacts as well as unstructured leisure time. It is also crucial to consider the importance of individualized treatment for patients of this severity; there is no one-size-fits-all number of hours that correlates with treatment success. PIP locations have a responsibility for offering a variety of both clinical and non-clinical out of cell opportunities that treatment teams can then incorporate into personalized treatment schedules based on a patient's individual treatment needs. Patient ability to attend or tolerate out of cell time is dependent on their current functioning and impact from their mental health symptoms.

Based on a review of DSH policies, Title 22 and survey responses from eighteen other state correctional departments, CDCR is proposing the following with regard to Weekly Treatment Frequency in APP and ICF PIP locations:

**APP Weekly Treatment Frequency**

| IDTT | MHMD Contacts | MH Clinical Contacts | Unstructured Programming | Structured Programming |
|------|---------------|----------------------|--------------------------|------------------------|
| 1st IDTT held within 72 hours of arrival<br><br>2nd IDTT held no later than 10 calendar days<br><br>Routine IDTT's continue every 30 days | Initial Evaluation occurs within 24 hours of arrival<br><br>At least 2X per calendar week | Every 3 Days for the first 30 days<br><br>Then at least 1X per calendar week | Based on individualized clinical assessment and treatment planning by the Interdisciplinary Treatment Team, updated based on clinical progress as per the standard of care. | Based on individualized clinical assessment and treatment planning by the Interdisciplinary Treatment Team, updated based on clinical progress as per the standard of care. |

**ICF Treatment Frequency**

| IDTT | MHMD Contacts | MH Clinical Contacts | Unstructured Programming | Structured Programming |
|------|---------------|----------------------|--------------------------|------------------------|
| 1st IDTT held within 72 hours of arrival<br><br>2nd IDTT held no later than 10 calendar days<br><br>Routine IDTT's continue every 30 days | Initial Evaluation occurs within 24 hours of arrival<br><br>At least 1X per calendar week | Initial MH assessment occurs within 10 days of arrival<br><br>Every 3 Days for the first 30 days<br><br>Then at least 1X per calendar week | Based on individualized clinical assessment and treatment planning by the Interdisciplinary Treatment Team, updated based on clinical progress as per the standard of care. | Based on individualized clinical assessment and treatment planning by the Interdisciplinary Treatment Team, updated based on clinical progress as per the standard of care. |

**Inpatient Treatment Comparisons**

CDCR contacted correctional settings across the US to inquire about their inpatient mental health programs and services provided to patients. The responses received generally indicated that programs are providing treatment to patients based on the recommendations made by the treatment teams. Some programs have treatment minimums, but within those responses, a wide range of structured treatment hours is provided.

Joseph Penn, MD, Director of Mental Health Services for the Texas Department of Criminal Justice provided the following information:

- 1670 Inpatient Mental Health Beds (2020 population for all Texas prisons -154,000)
- Inpatient beds are single cell, multi-person and dorms
- Treatment hours are determined by the treatment team based on the patient's goals, functional abilities, etc.
- Treatment hour minimums are not identified in their policies
- Length of stay varied, some patients were treated indefinitely within the inpatient programs

Li-Wen Lee, MD, Associate Commissioner for the Division of Forensic Services in New York provided the following:

- Central New York Psychiatric Center provides all inpatient mental health treatment to incarcerated persons in New York (inpatient treatment is NOT provided in the correctional facilities)
- Joint Commission Accredited
- Median length of stay is 132 days
- Patients are offered up to 20 hours of programming weekly (7 days)
    - Both formal and informal programming (no set number of hours for each)
    - Activities offered both on and off the ward/unit

- On Ward:  medication education, symptom management, health teaching, individual counseling, social rehabilitation groups
- Off Ward:  recovery and wellness focused: Therapeutic, educational, and psychosocial modalities are used in a group setting to present and discuss information, resources, skills, and techniques related to physical and mental health and personal, social, and vocational development.

Eighteen other state correctional programs responded to a request from CDCR for information pertaining to their inpatient programs.  Only three of the 18 states indicated they have minimums identified for the number of hours that should be offered to patients. All of the other states indicated they either don't measure the number of hours and/or rely on the treatment team to assign treatment based on the patient's goals and clinical needs.

- 2 States offer more than 15 hours of structured programming per week
- 6 States offer 10-15 hours of structured treatment per week
- 4 States offer less than 10 hours of structured treatment per week
- 6 States offer no minimums for structured treatment per week

CDCR consulted with DSH regarding treatment offerings for CDCR patients in their programs.   DSH responded that for the first 30 days, patients are assessed by their treatment teams and then assigned to programming based on those treatment needs.  After 30 days, DSH aims to schedule patients for 20 hours of programming, with at least 10 of those hours as Core (structured groups, clinical contacts, etc).  DSH acknowledges that not all patients are appropriate for 20 hours of programming even after the initial 30 days of assessment.  In response, the treatment team is required to document when either the patient is unable to have a schedule of 20 hours or if they attend less than 40% of their offered programming.  In consultation with DSH they indicated that a minimum number of treatment hours for patients in APP was not appropriate given the level of acuity of patients in those settings.  CDCR also notes that DSH patients who are both custodially and clinically appropriate for the Unlocked Dorm setting are able to accept and attend programming at that rate.  CDCR also notes that the requirement for EOP programming is 10 hours per week. One of the Higher Level of Care considerations for referral to an inpatient setting is 50% or more treatment refusal of those 10 scheduled hours.

**Summary**

Treatment teams must be able to recommend and create individualized programs suitable to the functioning of the patient and work towards the specific treatment goals, rather than base a patient's out of cell time on an arbitrary minimum untethered from any patient's individual needs.  This approach is consistent with standard practices in inpatient settings such as the DSH Policy Directive 3607, as well as state licensing standards under Title 22, to ensure the autonomy required for treatment teams to clinically determine the appropriate type and number of hours per week each patient needs to work towards their goals for inpatient treatment.

CDCR has also taken the time and initiative to consult with other correctional programs throughout the U.S. to identify standards regarding treatment provided to patients within mental health inpatient settings.   Overwhelmingly, the feedback received indicates that only three of the eighteen states responding indicated they have a minimum number of treatment hours offered to their patients. To this

end, asking CDCR to create minimum standards for treatment hours "consistent with the established minimum standards" is not only irrelevant but impossible, because such a standard does not exist. (ECF No. 7608 at 2, quoting ECF No. 7555 at 164-165.)

It is worth noting that patients treated in the PIPs will have widely varying levels of functioning. Some patients may have such severe symptomatology or adjustments to medication that their ability to benefit from groups is minimal to none. They may in fact only disrupt the experience of other, higher-functioning patients in the group who are ready to benefit from their engagement with peers. Given the high acuity of this population, the symptoms and side effects may vary heavily day to day, or even dose to dose.

It also important to note that patients are often sent to CDCR PIPs for treatment due to an inability to engage in the 10 hours of treatment provided in the outpatient EOP programs.  As outlined in this proposal, CDCR PIP locations are already providing both clinical and non-clinical treatment hours to patients in both Acute and ICF settings without a standardized minimum requirement in place.  As a result, the PIPs are utilizing their unique physical layouts and space to provide treatment to patients in their programs.  This also enables them to utilize their space flexibly based on treatment needs, acuity, and specialized clinical skill sets, all to the benefit of patients. CDCR has also provided information for existing means for monitoring both clinical and unstructured activity hours and reviewed plans from the PIPs on their individual use of space.  Finally, CDCR plans to further monitor the quality of treatment provided by developing a Quality Management policy for the PIPs that will include tracking and monitoring of the quality and frequency of treatment.

# ATTACHMENT B

**CALIFORNIA CORRECTIONAL
HEALTH CARE SERVICES**

**Human Resources
Strategies Implemented for PIP Staffing
January – December 2022**

California Correctional Health Care Services' Human Resources program closely partnered with the Mental Health program throughout the past year is support of staffing levels at the PIPs.  As a component of these efforts, HR developed and implemented several efforts designed to increase staffing levels and retain current workforce:

- Implementation of the PIP pay differential. These efforts were additionally supported by specific marketing campaigns broadcasting the increased salary that included, but were not limited to:
  - Social media campaigns touting the PIP pay differential; advertisement of the PIP pay differentials on all Clinical Social Worker, Psychologist, and Psychiatrist job postings; email blasts, professional website banners, and ads in professional E-newsletters, guides, and organizational websites.
  - Development of specialized recruitment flyer for Mental Health candidates emphasizing incentives of joining the PIP.
- Development of onsite Hiring Events that provided PIP candidates with the opportunity to apply, interview, and accept contingent job offers in a one-day, streamlined process. These were held throughout the state to attract a larger candidate pool for PIP vacancies.
- Established vendor contract to enhance recruitment efforts for PIP classifications through the creation of recruitment videos, email campaigns, and additional outreach efforts.
- Added Clinical Social Worker and Psychologist classifications to Merritt Hawkins recruitment contract.
- Redirected hiring process for Clinical Social Workers and Psychologists from institutions to headquarters' Centralized Hiring Unit.
  - Hired 6 Clinical Social Workers, 3 Psychologists, 5 Psychiatrists, and 2 Primary Care Providers in PIPs. Another 8 Primary Care Providers, 2 Clinical Social Workers, and 2 Psychologists hires in process.
- Recruitment efforts in support of PIP:
  - Secured a dedicated page on the Psych Times Home Page to promote the Mental Health Program and opportunities for Psychiatrists in inpatient, outpatient, and telehealth settings.
  - Promotion of the PIP program and PIP job opportunities at Mental Health Conferences nationwide.
  - Increased job postings for PIP Clinical Social Workers, Psychologists, and Psychiatrists across a variety of professional platforms.
  - Redesign of marketing creative for Clinical Social Workers, Psychologists, and Psychiatrists to keep fresh marketing look and maintain appeal.
  - Internal emails blasts launched in support of PIP additional appointments also referred to as dual appointments. The additional appointment process allows current permanent full-time employees to provide vacancy coverage.

# ATTACHMENT C

## PAY DIFFERENTIAL 455
## PSYCHIATRIC INPATIENT PROGRAM MENTAL HEALTH CLINICIANS
## RECRUITMENT AND RETENTION DIFFERENTIAL – BARGAINING UNITS 16, 18, 19, AND EXCLUDEDS

Established: 05/01/22

| CLASS TITLE | CLASS CODE | CBID | RATE | EARNINGS ID | DEPARTMENT |
|---|---|---|---|---|---|
| **Rank and File:** | | | | | |
| Staff Psychiatrist, Correctional and Rehabilitative Services (Safety) | 9758 | R16 | 15% of monthly base pay | 8CHC | Department of Corrections and Rehabilitation - Psychiatric Inpatient Programs at:

California Health Care Facility, California Medical Facility, San Quentin State Prison, California Institution for Women, Salinas Valley State Prison |
| Senior Psychiatrist (Specialist), Correctional and Rehabilitative Services (Safety) | 9759 | | | | |
| Psychiatric Technician (Safety) | 8253 | R18 | | | |
| Senior Psychiatric Technician (Safety) | 8252 | | | | |
| Rehabilitation Therapist, State Facilities (Music-Safety) | 8321 | R19 | | | |
| Rehabilitation Therapist, State Facilities (Occupational-Safety) | 8323 | | | | |
| Rehabilitation Therapist, State Facilities (Recreation-Safety) | 8324 | | | | |
| Rehabilitation Therapist, State Facilities (Art-Safety) | 8420 | | | | |
| Psychologist-Clinical, Correctional Facility | 9283 | | | | |
| Recreation Therapist, Correctional Facility | 9286 | | | | |
| Senior Psychologist, Correctional Facility (Specialist) | 9287 | | | | |
| Clinical Social Worker (Health/Correctional Facility)-Safety | 9872 | | | | |
| **Excluded:** | | | | | |
| Chief Psychiatrist, Correctional and Rehabilitative Services (Safety) | 9774 | M16 | | | |
| Senior Psychiatrist (Supervisor), Correctional and Rehabilitative Services (Safety) | 9761 | S16 | | | |
| Supervising Rehabilitation Therapist | 8316 | S19 | | | |
| Senior Psychologist, Correctional Facility (Supervisor) | 9288 | | | | |
| Supervising Psychiatric Social Worker I, Correctional Facility | 9291 | | | | |
| Senior Psychologist (Health Facility) (Supervisor) | 9831 | | | | |
| Chief Psychologist, Correctional Facility | 9859 | | | | |
| Supervising Psychiatric Social Worker I | 9867 | | | | |

| CRITERIA |
|---|
| • Effective May 1, 2022, employees in the above classes, employed within the California Department of Corrections and Rehabilitation and who are physically located at and assigned to the specific locations/program areas listed above, shall receive this pay differential. |
| • Only employees who provide direct patient care, treating patients in-person, on grounds or at a facility more than 50% of the pay period, are eligible for this pay differential. |
| • Employees who do not provide direct patient care, or who provide services via telemedicine and telepsychiatry more than 50% of the pay period do not qualify for this pay differential. |
| • This differential shall not be subject to the grievance or arbitration processes. |
| • The State reserves the discretion to adjust or terminate this pay differential by providing a 30-day notice to the exclusive representative of each unit impacted. |
| • This pay differential is in addition to any other pay differentials that the above classes may be receiving. |

| IF APPLICABLE, SHOULD PAY DIFFERENTIAL BE: | |
|---|---|
| PRO RATED | Yes |
| SUBJECT TO QUALIFYING PAY PERIOD | Yes |
| ALL TIME BASES AND TENURE ELIGIBLE | Yes/No* |
| SUBJECT TO PERS DEDUCTION | No |

| INCLUSION IN RATE TO CALCULATE THE FOLLOWING BENEFIT PAY | |
|---|---|
| OVERTIME | Yes/No (FLSA) |
| IDL | Yes |
| EIDL | Yes |
| NDI | Yes |
| LUMP SUM VACATION | Yes |
| LUMP SUM SICK | Yes |
| LUMP SUM EXTRA | Yes |

*Retired Annuitants are not eligible unless appointed under Government Code Section 21232.

# ATTACHMENT D

**Weber, Nicholas@CDCR**

| | |
|---|---|
| **From:** | Bentz, Melissa@CDCR |
| **Sent:** | Thursday, April 21, 2022 7:00 PM |
| **To:** | Matt Lopes; Mohamedu Jones; Kerry F. Walsh; Coleman Team – RBG Only; Steve Fama |
| **Cc:** | Paul B. Mello; Sam Wolff (swolff@hansonbridgett.com); Elise Thorn; Damon McClain; Namrata Kotwani; Neill, Jennifer@CDCR; Weber, Nicholas@CDCR; Hockerson, Dillon@CDCR; Thind, Sundeep@CDCR |
| **Subject:** | Coleman: PIP Pay Differential, Expansion of Bonuses, and Increase in Registry Rates |

Special Master Lopes and Plaintiffs' counsel,

CDCR has been working diligently to improve mental health staffing at our institutions. As part of this effort, CDCR recently noticed the unions about a 15% pay differential for civil service psychologists, social workers, psychiatrists, psychiatric technicians, and rehabilitation/recreation therapists physically working in one of CDCR's five Psychiatric Inpatient Programs (PIPs). The proposal also expands the previously established on-site civil service psychiatrist retention bonuses at to civil service psychologists, expands the bonuses to all institutions, and expands the number of allowable $5,000 bonuses. Previously, a $5,000 bonus was available after completion of 6, 24, 60, and 84 months of state service. The new proposal would allow bonuses at 3, 6, 9, 12, 24, 60, and 84 months. CDCR proposed an effective date of May 1, 2022 for both proposals. However, that date is contingent upon the completion of union negotiations and is thus subject to change.

In addition to the pay differential in the PIPs and the expansion of bonuses, CDCR has also entered into a new contract for registry psychiatrists, psychologists, psychiatric nurse practitioners, social workers, and recreational/rehabilitation therapists. Below is a chart comparing the current contract rates with the new contract rates. The new registry contract will go into effect on May 1, 2022.

**Old Contract Tiers: 16-00467[1]**

| Tiers | PSYT | PSYL | PNP | LCSW | RT |
|---|---|---|---|---|---|
| Tier 1 | $ 265.00 | $ 90.00 | $ 136.00 | $ 64.00 | $ 57.00 |
| Tier 2 | $ 285.00 | $ 100.00 | N/A | $ 73.00 | $ 79.00 |
| Tier 3 | $ 316.00 | $ 120.00 | N/A | $ 86.00 | N/A |
| Tier 4 | $ 340.00 | $ 140.00 | | | |
| Tier 5 | $ 365.00 | $ 155.00 | | | |
| Tier 6 | $ 390.00 | | | | |
| Tier 7 | $ 415.00 | | | | |
| Tier 8 | $ 440.00 | | | | |

**New Contract Tiers: 21-00147[2]**

| Tiers | PSYT | PSYL | PNP | LCSW | RT |
|---|---|---|---|---|---|
| Tier 1 | $ 265.00 | $ 140.00 | $ 128.00 | $ 103.00 | $ 92.00 |
| Tier 2 | $ 285.00 | $ 153.00 | $ 136.00 | $ 113.00 | $ 100.00 |
| Tier 3 | $ 316.00 | $ 168.00 | $ 141.00 | $ 128.00 | $ 115.00 |
| Tier 4 | $ 340.00 | $ 193.00 | | | |
| Tier 5 | $ 365.00 | $ 200.00 | | | |
| Tier 6 | $ 390.00 | | | | |
| Tier 7 | $ 415.00 | | | | |
| Tier 8 | $ 440.00 | | | | |

Notes:

All rates include the hourly rates and overhead charges. New rates are effective 5/1/2022.

[1] Overhead rates in contract number 16-00467 are as follows: Psychiatrist (PSYT) $65.00, Psychologist (PSYL) $15.00/$25.00, Psychiatric Nurse Practitioner (PNP) $30.00, Licensed Clinical Social Worker (LCSW) $18.00, Recreation Therapist (RT) $12.00.

[2] Overhead rates in contract number 21-00147 are as follows: Psychiatrist (PSYT) $65.00, Psychologist (PSYL) $65.00, Psychiatric Nurse Practitioner (PNP) $30.00, Licensed Clinical Social Worker (LCSW) $38.00, Recreation Therapist (RT) $25.00.

CDCR believes the implementation of these proposals will help increase mental health staffing at the PIPs and elsewhere and hopes to see results from these proposals soon.

Respectfully,

*Melissa C. Bentz*
Attorney, Class Action Team
Office of Legal Affairs
California Department of Corrections and Rehabilitation
Email: Melissa.Bentz@cdcr.ca.gov
Phone: (916) 628-5385

# EXHIBIT H

| From: | Weber, Nicholas@CDCR |
|---|---|
| To: | Lisa Ells; Coleman Team - RBG Only; Coleman Special Master; Steve Fama; Elise Thorn; Namrata Kotwani; Damon McClain (Damon.McClain@doj.ca.gov); Paul B. Mello; Samantha Wolff; Thind, Sundeep@CDCR; Hockerson, Dillon@CDCR |
| Cc: | Mehta, Amar@CDCR |
| Subject: | RE: Coleman - Plans to Address Special Master"s First and Second Recommendation from 29th Round Part A [IMAN-DMS.FID12440] |
| Date: | Wednesday, February 15, 2023 2:36:50 PM |
| Attachments: | CDCR Recommendations for Treatment Frequency + Title 22.pdf |

Lisa,

Attached are the data. The first page is CDCR's updated recommendation for treatment frequencies. In reviewing the recommendations and Title 22, CDCR made changes to the recommendations that were initially produced on January 13. For instance, the psychiatry and PC rule were inadvertently swapped in the January 13 document. The second page is the same table with Title 22 requirements. The subsequent pages are relevant sections of Title 22.

Nick Weber

Attorney

Department of Corrections & Rehabilitation

(916) 217-1949

1515 S Street, Suite 314S

Sacramento, CA 95811-7243

CONFIDENTIALITY NOTICE: This communication with its contents may contain confidential and/or legally privileged information. It is solely for the use of the intended recipient(s). Unauthorized interception, review, use or disclosure is prohibited and may violate applicable laws including the Electronic Communications Privacy Act. If you are not the intended recipient, please contact the sender and destroy all copies of the communication.

**From:** Lisa Ells <LElls@rbgg.com>
**Sent:** Wednesday, February 15, 2023 10:24 AM
**To:** Weber, Nicholas@CDCR <Nicholas.Weber@cdcr.ca.gov>; Coleman Team - RBG Only <ColemanTeam-RBGOnly@rbgg.com>; Coleman Special Master <colemanspecialmaster@pldolaw.com>; Steve Fama <sfama@prisonlaw.com>; Elise Thorn <Elise.Thorn@doj.ca.gov>; Namrata Kotwani <Namrata.Kotwani@doj.ca.gov>; Damon McClain (Damon.McClain@doj.ca.gov) <Damon.McClain@doj.ca.gov>; Paul B. Mello <Pmello@hansonbridgett.com>; Samantha Wolff <SWolff@hansonbridgett.com>; Thind, Sundeep@CDCR <Sundeep.Thind@cdcr.ca.gov>; Hockerson, Dillon@CDCR <Dillon.Hockerson@cdcr.ca.gov>
**Cc:** Mehta, Amar@CDCR <Amar.Mehta@cdcr.ca.gov>
**Subject:** RE: Coleman - Plans to Address Special Master's First and Second Recommendation from 29th Round Part A [IMAN-DMS.FID12440]

**CAUTION:** This email originated from outside of CDCR/CCHCS. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Nick,

At the last meet and confer, we asked for more specific information regarding the basis for Defendants' proposals for minimum frequencies for PIP IDTTs, MHMD Contacts, and MH Clinical Contacts, including citations to any relevant Title 22 requirements.  Could you please provide that information by noon on Thursday so we can more efficiently discuss those aspects of the proposal on Friday?  Thanks.

Lisa

**From:** Weber, Nicholas@CDCR <Nicholas.Weber@cdcr.ca.gov>
**Sent:** Thursday, February 2, 2023 5:19 PM
**To:** Lisa Ells <LElls@rbgg.com>; Coleman Team - RBG Only <ColemanTeam-RBGOnly@rbgg.com>; Coleman Special Master <colemanspecialmaster@pldlaw.com>; Steve Fama <sfama@prisonlaw.com>; Elise Thorn <Elise.Thorn@doj.ca.gov>; Namrata Kotwani <Namrata.Kotwani@doj.ca.gov>; Damon McClain (Damon.McClain@doj.ca.gov) <Damon.McClain@doj.ca.gov>; Paul B. Mello <Pmello@hansonbridgett.com>; Samantha Wolff <SWolff@hansonbridgett.com>; Thind, Sundeep@CDCR <Sundeep.Thind@cdcr.ca.gov>; Hockerson, Dillon@CDCR <Dillon.Hockerson@cdcr.ca.gov>
**Cc:** Mehta, Amar@CDCR <Amar.Mehta@cdcr.ca.gov>
**Subject:** RE: Coleman - Plans to Address Special Master's First and Second Recommendation from 29th Round Part A [IMAN-DMS.FID12440]

[EXTERNAL MESSAGE NOTICE]

Hi Lisa,

CDCR reached out to all state correctional agencies via an online secretary to secretary list. CDCR asked the following questions:

1.  Please provide the contact information for the person completing the survey
2.  How many patients are in your acute/non-acute mental health inpatient settings?
3.  What is their average length of stay?
4.  How many hours of structured treatment are offered to those patients each week?
5.  Can CDCR be provided with your department's policy language?
6.  How are the treatment hours measured?  What cutoff is considered passing/acceptable care?
7.  Additional comments?

The complete response is attached in PDF "Responses_All_221227", except for Florida which responded by email, also attached.  CDCR also spoke to Texas.  CDCR received policies from Wyoming, Delaware, Missouri, Florida, and Massachusetts.  The policies are attached.  CDCR received responses from twenty-two agencies (via the survey, email, or phone conversations), although three reported to have no inpatient care (Arkansas, Hawaii, and Montana).   The list of agencies is below, along with their answer to question 4 regarding amount of structured treatment offered.

|  | Correctional Department | Answer to Q4 |
|---|---|---|
| 1 | Massachusetts Dept. of Corrections | 10-15 |
| 2 | Arizona Department of Corrections, Rehabilitation and Re-Entry | 8 |
| 3 | Arkansas Department of Corrections | n/a no inpatient program |
| 4 | Connecticut Department of Correction | 10-20 |
| 5 | Delaware Dept. of Corrections | 9-10 |
| 6 | Hawaii Department of Public Safety | n/a no inpatient program |
| 7 | Maine - Intensive Mental Health Unit | No answer |
| 8 | Louisiana Department of Public Safety and Corrections | 10 |
| 9 | Maryland Dept. Public Safety and Correctional Services | 4-5 |
| 10 | Missouri Department of Corrections | 14-20 |
| 11 | Montana Department of Corrections | n/a no inpatient program |
| 12 | Nebraska Department of Correctional Services | Varies based on acuity |
| 13 | New York State Department of Corrections and Community Supervision | 20 |
| 14 | Pennsylvania Department of Corrections | 10 |
| 15 | Rhode Island Department of Corrections | 10 |
| 16 | South Carolina Department of Corrections | 4 |
| 17 | Vermont Department of Corrections | No minimums |
| 18 | West Virginia/PSIMED Corrections | 5 acute, 10 ICF |
| 19 | Wisconsin Dept. of Corrections | No answer |
| 20 | Wyoming Department of Corrections | 15 |
| 21 | Florida Dept. of Corrections | 10 |
| 22 | Texas Dept. of Corrections | No minimums |

Please let me know if you have any questions.


Nick Weber

Attorney

Department of Corrections & Rehabilitation

(916) 217-1949

1515 S Street, Suite 314S

Sacramento, CA  95811-7243


CONFIDENTIALITY NOTICE: This communication with its contents may contain confidential and/or legally privileged information. It is solely for the use of the intended recipient(s). Unauthorized interception, review, use or disclosure is prohibited and may violate applicable laws including the Electronic Communications Privacy Act. If you are not the intended recipient, please contact the sender and destroy all copies of the communication.

---

**From:** Lisa Ells <LElls@rbgg.com>
**Sent:** Thursday, February 2, 2023 8:46 AM
**To:** Weber, Nicholas@CDCR <Nicholas.Weber@cdcr.ca.gov>; Coleman Team - RBG Only

<ColemanTeam-RBGOnly@rbgg.com>; Coleman Special Master
<colemanspecialmaster@pldolaw.com>; Steve Fama <sfama@prisonlaw.com>; Elise Thorn
<Elise.Thorn@doj.ca.gov>; Namrata Kotwani <Namrata.Kotwani@doj.ca.gov>; Damon McClain
(Damon.McClain@doj.ca.gov) <Damon.McClain@doj.ca.gov>; Paul B. Mello
<Pmello@hansonbridgett.com>; Samantha Wolff <SWolff@hansonbridgett.com>; Thind,
Sundeep@CDCR <Sundeep.Thind@cdcr.ca.gov>; Hockerson, Dillon@CDCR
<Dillon.Hockerson@cdcr.ca.gov>
**Cc:** Mehta, Amar@CDCR <Amar.Mehta@cdcr.ca.gov>
**Subject:** RE: Coleman - Plans to Address Special Master's First and Second Recommendation from
29th Round Part A [IMAN-DMS.FID12440]

> **CAUTION:** This email originated from outside of CDCR/CCHCS. Do not click links or open attachments unless you
> recognize the sender and know the content is safe.

Dear Nick,

We look forward to discussing these proposals later today.  In the meantime, we have the following
initial questions about the survey Defendants discuss in Attachment A:

- How many "correctional settings" did CDCR initially contact as part of the survey?
- How was the survey conducted (i.e., via email, phone, combination)?  Please provide us a copy
  of any written survey.
- Were the surveyed institutions limited to state prison systems or did you also include federal
  systems and/or state psychiatric hospitals as well?
- Please list the eighteen states that responded to your survey, and clarify if Texas and New York
  are among those 18.
- Of the 18 responding correctional systems, which provide inpatient care directly within their
  system as opposed to sending patients out to other hospital facilities?
- Please list which states correspond to each of the following responses (referenced at page 4 of
  the Attachment):
  - 2 States offer more than 15 hours of structured programming per week
  - 6 States offer 10-15 hours of structured treatment per week
  - 4 States offer less than 10 hours of structured treatment per week
  - 6 States offer no minimums for structured treatment per week

We understand you may not have answers to all of these questions on the call today but would
appreciate if you would follow up in writing with the answers.

Thanks
Lisa

---

**From:** Weber, Nicholas@CDCR <Nicholas.Weber@cdcr.ca.gov>
**Sent:** Friday, January 13, 2023 6:09 PM
**To:** Coleman Team - RBG Only <ColemanTeam-RBGOnly@rbgg.com>; Coleman Special Master

<colemanspecialmaster@pldolaw.com>; Steve Fama <sfama@prisonlaw.com>; Elise Thorn <Elise.Thorn@doj.ca.gov>; Namrata Kotwani <Namrata.Kotwani@doj.ca.gov>; Damon McClain (Damon.McClain@doj.ca.gov) <Damon.McClain@doj.ca.gov>; Paul B. Mello <Pmello@hansonbridgett.com>; Samantha Wolff <SWolff@hansonbridgett.com>; Thind, Sundeep@CDCR <Sundeep.Thind@cdcr.ca.gov>; Hockerson, Dillon@CDCR <Dillon.Hockerson@cdcr.ca.gov>

**Cc:** Mehta, Amar@CDCR <Amar.Mehta@cdcr.ca.gov>

**Subject:** Coleman - Plans to Address Special Master's First and Second Recommendation from 29th Round Part A

[EXTERNAL MESSAGE NOTICE]

All,

In response to the court January 6, 2023 order, please find attached CDCR's plans in response to the Special Master's first and second recommendation from his May 17, 2022 monitoring report.

Thanks.

Nick Weber
Attorney
Department of Corrections & Rehabilitation
(916) 217-1949
1515 S Street, Suite 314S
Sacramento, CA 95811-7243

CONFIDENTIALITY NOTICE: This communication with its contents may contain confidential and/or legally privileged information. It is solely for the use of the intended recipient(s). Unauthorized interception, review, use or disclosure is prohibited and may violate applicable laws including the Electronic Communications Privacy Act. If you are not the intended recipient, please contact the sender and destroy all copies of the communication.

This message was sent from outside the company. Please do not click links or open attachments unless you recognize the source of this email and know the content is safe.

# EXHIBIT I

| From: | Arielle Tolman |
|---|---|
| To: | Nick Weber; Lisa Ells; Coleman Team - RBG Only; Coleman Special Master; Steve Fama; Elise Thorn; Namrata Kotwani; Damon McClain (Damon.McClain@doj.ca.gov); Paul B. Mello; Samantha Wolff; Thind, Sundeep@CDCR; Hockerson, Dillon@CDCR |
| Cc: | Mehta, Amar@CDCR |
| Subject: | RE: Coleman - Plans to Address Special Master"s First and Second Recommendation from 29th Round Part A [IMAN-DMS.FID12440] |
| Date: | Friday, February 24, 2023 12:26:05 PM |

Dear Nick,

Per our last meet and confer, could you please send us all documents relating to requests for, and/or receipt of, waivers of state licensing requirements for the five PIPs, from 2017 to present? We would also appreciate if you could provide any documents relating to written complaints about licensing issues in the PIPs, or any investigations undertaken in response to complaints, that Defendants may have.

Thank you,
Ari

Ari Tolman
Associate Attorney
(she/her/hers)

 ROSEN BIEN
GALVAN & GRUNFELD LLP

101 Mission Street, Sixth Floor
San Francisco, CA 94105
(415) 433-6830 (telephone)
(415) 433-7104 (fax)
atolman@rbgg.com

CONFIDENTIALITY NOTICE
The information contained in this e-mail message may be privileged, confidential and protected from disclosure. If you are not the intended recipient, any dissemination, distribution or copying is strictly prohibited. If you think that you have received this e-mail message in error, please e-mail the sender at atolman@rbgg.com.

---

**From:** Weber, Nicholas@CDCR <Nicholas.Weber@cdcr.ca.gov>
**Sent:** Wednesday, February 15, 2023 11:36 AM
**To:** Lisa Ells <LElls@rbgg.com>; Coleman Team - RBG Only <ColemanTeam-RBGOnly@rbgg.com>; Coleman Special Master <colemanspecialmaster@pldolaw.com>; Steve Fama <sfama@prisonlaw.com>; Elise Thorn <Elise.Thorn@doj.ca.gov>; Namrata Kotwani <Namrata.Kotwani@doj.ca.gov>; Damon McClain (Damon.McClain@doj.ca.gov) <Damon.McClain@doj.ca.gov>; Paul B. Mello <Pmello@hansonbridgett.com>; Samantha Wolff <SWolff@hansonbridgett.com>; Thind, Sundeep@CDCR <Sundeep.Thind@cdcr.ca.gov>; Hockerson, Dillon@CDCR <Dillon.Hockerson@cdcr.ca.gov>
**Cc:** Mehta, Amar@CDCR <Amar.Mehta@cdcr.ca.gov>
**Subject:** RE: Coleman - Plans to Address Special Master's First and Second Recommendation from

29th Round Part A [IMAN-DMS.FID12440]

[EXTERNAL MESSAGE NOTICE]

Lisa,

Attached are the data.  The first page is CDCR's updated recommendation for treatment frequencies.  In reviewing the recommendations and Title 22, CDCR made changes to the recommendations that were initially produced on January 13.  For instance, the psychiatry and PC rule were inadvertently swapped in the January 13 document.  The second page is the same table with Title 22 requirements.  The subsequent pages are relevant sections of Title 22.

Nick Weber

Attorney

Department of Corrections & Rehabilitation

(916) 217-1949

1515 S Street, Suite 314S

Sacramento, CA  95811-7243

CONFIDENTIALITY NOTICE: This communication with its contents may contain confidential and/or legally privileged information. It is solely for the use of the intended recipient(s). Unauthorized interception, review, use or disclosure is prohibited and may violate applicable laws including the Electronic Communications Privacy Act. If you are not the intended recipient, please contact the sender and destroy all copies of the communication.

---

**From:** Lisa Ells <LElls@rbgg.com>
**Sent:** Wednesday, February 15, 2023 10:24 AM
**To:** Weber, Nicholas@CDCR <Nicholas.Weber@cdcr.ca.gov>; Coleman Team - RBG Only <ColemanTeam-RBGOnly@rbgg.com>; Coleman Special Master <colemanspecialmaster@pldlaw.com>; Steve Fama <sfama@prisonlaw.com>; Elise Thorn <Elise.Thorn@doj.ca.gov>; Namrata Kotwani <Namrata.Kotwani@doj.ca.gov>; Damon McClain (Damon.McClain@doj.ca.gov) <Damon.McClain@doj.ca.gov>; Paul B. Mello <Pmello@hansonbridgett.com>; Samantha Wolff <SWolff@hansonbridgett.com>; Thind, Sundeep@CDCR <Sundeep.Thind@cdcr.ca.gov>; Hockerson, Dillon@CDCR <Dillon.Hockerson@cdcr.ca.gov>
**Cc:** Mehta, Amar@CDCR <Amar.Mehta@cdcr.ca.gov>
**Subject:** RE: Coleman - Plans to Address Special Master's First and Second Recommendation from 29th Round Part A [IMAN-DMS.FID12440]

**CAUTION:** This email originated from outside of CDCR/CCHCS. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Nick,

At the last meet and confer, we asked for more specific information regarding the basis for Defendants' proposals for minimum frequencies for PIP IDTTs, MHMD Contacts, and MH Clinical Contacts, including citations to any relevant Title 22 requirements.  Could you please provide that information by noon on Thursday so we can more efficiently discuss those aspects of the proposal on Friday?  Thanks.

Lisa

---

**From:** Weber, Nicholas@CDCR <Nicholas.Weber@cdcr.ca.gov>
**Sent:** Thursday, February 2, 2023 5:19 PM
**To:** Lisa Ells <LElls@rbgg.com>; Coleman Team - RBG Only <ColemanTeam-RBGOnly@rbgg.com>; Coleman Special Master <colemanspecialmaster@pldolaw.com>; Steve Fama <sfama@prisonlaw.com>; Elise Thorn <Elise.Thorn@doj.ca.gov>; Namrata Kotwani <Namrata.Kotwani@doj.ca.gov>; Damon McClain (Damon.McClain@doj.ca.gov) <Damon.McClain@doj.ca.gov>; Paul B. Mello <Pmello@hansonbridgett.com>; Samantha Wolff <SWolff@hansonbridgett.com>; Thind, Sundeep@CDCR <Sundeep.Thind@cdcr.ca.gov>; Hockerson, Dillon@CDCR <Dillon.Hockerson@cdcr.ca.gov>
**Cc:** Mehta, Amar@CDCR <Amar.Mehta@cdcr.ca.gov>
**Subject:** RE: Coleman - Plans to Address Special Master's First and Second Recommendation from 29th Round Part A [IMAN-DMS.FID12440]

[EXTERNAL MESSAGE NOTICE]

Hi Lisa,

CDCR reached out to all state correctional agencies via an online secretary to secretary list. CDCR asked the following questions:

1. Please provide the contact information for the person completing the survey
2. How many patients are in your acute/non-acute mental health inpatient settings?
3. What is their average length of stay?
4. How many hours of structured treatment are offered to those patients each week?
5. Can CDCR be provided with your department's policy language?
6. How are the treatment hours measured?  What cutoff is considered passing/acceptable care?
7. Additional comments?

The complete response is attached in PDF "Responses_All_221227", except for Florida which responded by email, also attached.  CDCR also spoke to Texas.  CDCR received policies from Wyoming, Delaware, Missouri, Florida, and Massachusetts.  The policies are attached.  CDCR received responses from twenty-two agencies (via the survey, email, or phone conversations), although three reported to have no inpatient care (Arkansas, Hawaii, and Montana).   The list of agencies is below, along with their answer to question 4 regarding amount of structured treatment offered.

|   | Correctional Department | Answer to Q4 |
|---|---|---|
| 1 | Massachusetts Dept. of Corrections | 10-15 |
| 2 | Arizona Department of Corrections, Rehabilitation and Re-Entry | 8 |
| 3 | Arkansas Department of Corrections | n/a no inpatient program |

| 4 | Connecticut Department of Correction | 10-20 |
|---|---|---|
| 5 | Delaware Dept. of Corrections | 9-10 |
| 6 | Hawaii Department of Public Safety | n/a no inpatient program |
| 7 | Maine - Intensive Mental Health Unit | No answer |
| 8 | Louisiana Department of Public Safety and Corrections | 10 |
| 9 | Maryland Dept. Public Safety and Correctional Services | 4-5 |
| 10 | Missouri Department of Corrections | 14-20 |
| 11 | Montana Department of Corrections | n/a no inpatient program |
| 12 | Nebraska Department of Correctional Services | Varies based on acuity |
| 13 | New York State Department of Corrections and Community Supervision | 20 |
| 14 | Pennsylvania Department of Corrections | 10 |
| 15 | Rhode Island Department of Corrections | 10 |
| 16 | South Carolina Department of Corrections | 4 |
| 17 | Vermont Department of Corrections | No minimums |
| 18 | West Virginia/PSIMED Corrections | 5 acute, 10 ICF |
| 19 | Wisconsin Dept. of Corrections | No answer |
| 20 | Wyoming Department of Corrections | 15 |
| 21 | Florida Dept. of Corrections | 10 |
| 22 | Texas Dept. of Corrections | No minimums |

Please let me know if you have any questions.


Nick Weber
Attorney
Department of Corrections & Rehabilitation
(916) 217-1949
1515 S Street, Suite 314S
Sacramento, CA  95811-7237


CONFIDENTIALITY NOTICE: This communication with its contents may contain confidential and/or legally privileged information. It is solely for the use of the intended recipient(s). Unauthorized interception, review, use or disclosure is prohibited and may violate applicable laws including the Electronic Communications Privacy Act. If you are not the intended recipient, please contact the sender and destroy all copies of the communication.

---

**From:** Lisa Ells <LElls@rbgg.com>
**Sent:** Thursday, February 2, 2023 8:46 AM
**To:** Weber, Nicholas@CDCR <Nicholas.Weber@cdcr.ca.gov>; Coleman Team - RBG Only <ColemanTeam-RBGOnly@rbgg.com>; Coleman Special Master <colemanspecialmaster@pldolaw.com>; Steve Fama <sfama@prisonlaw.com>; Elise Thorn <Elise.Thorn@doj.ca.gov>; Namrata Kotwani <Namrata.Kotwani@doj.ca.gov>; Damon McClain (Damon.McClain@doj.ca.gov) <Damon.McClain@doj.ca.gov>; Paul B. Mello <Pmello@hansonbridgett.com>; Samantha Wolff <SWolff@hansonbridgett.com>; Thind,

Sundeep@CDCR <Sundeep.Thind@cdcr.ca.gov>; Hockerson, Dillon@CDCR
<Dillon.Hockerson@cdcr.ca.gov>
**Cc:** Mehta, Amar@CDCR <Amar.Mehta@cdcr.ca.gov>
**Subject:** RE: Coleman - Plans to Address Special Master's First and Second Recommendation from
29th Round Part A [IMAN-DMS.FID12440]

> **CAUTION:** This email originated from outside of CDCR/CCHCS. Do not click links or open attachments unless you
> recognize the sender and know the content is safe.

Dear Nick,

We look forward to discussing these proposals later today.  In the meantime, we have the following
initial questions about the survey Defendants discuss in Attachment A:

- How many "correctional settings" did CDCR initially contact as part of the survey?
- How was the survey conducted (i.e., via email, phone, combination)?  Please provide us a copy
  of any written survey.
- Were the surveyed institutions limited to state prison systems or did you also include federal
  systems and/or state psychiatric hospitals as well?
- Please list the eighteen states that responded to your survey, and clarify if Texas and New York
  are among those 18.
- Of the 18 responding correctional systems, which provide inpatient care directly within their
  system as opposed to sending patients out to other hospital facilities?
- Please list which states correspond to each of the following responses (referenced at page 4 of
  the Attachment):
    - 2 States offer more than 15 hours of structured programming per week
    - 6 States offer 10-15 hours of structured treatment per week
    - 4 States offer less than 10 hours of structured treatment per week
    - 6 States offer no minimums for structured treatment per week

We understand you may not have answers to all of these questions on the call today but would
appreciate if you would follow up in writing with the answers.

Thanks
Lisa

---

**From:** Weber, Nicholas@CDCR <Nicholas.Weber@cdcr.ca.gov>
**Sent:** Friday, January 13, 2023 6:09 PM
**To:** Coleman Team - RBG Only <ColemanTeam-RBGOnly@rbgg.com>; Coleman Special Master
<colemanspecialmaster@pldolaw.com>; Steve Fama <sfama@prisonlaw.com>; Elise Thorn
<Elise.Thorn@doj.ca.gov>; Namrata Kotwani <Namrata.Kotwani@doj.ca.gov>; Damon McClain
(Damon.McClain@doj.ca.gov) <Damon.McClain@doj.ca.gov>; Paul B. Mello
<Pmello@hansonbridgett.com>; Samantha Wolff <SWolff@hansonbridgett.com>; Thind,
Sundeep@CDCR <Sundeep.Thind@cdcr.ca.gov>; Hockerson, Dillon@CDCR

<Dillon.Hockerson@cdcr.ca.gov>
**Cc:** Mehta, Amar@CDCR <Amar.Mehta@cdcr.ca.gov>
**Subject:** Coleman - Plans to Address Special Master's First and Second Recommendation from 29th Round Part A

[EXTERNAL MESSAGE NOTICE]

All,

In response to the court January 6, 2023 order, please find attached CDCR's plans in response to the Special Master's first and second recommendation from his May 17, 2022 monitoring report.

Thanks.

Nick Weber
Attorney
Department of Corrections & Rehabilitation
(916) 217-1949
1515 S Street, Suite 314S
Sacramento, CA  95811-7243

CONFIDENTIALITY NOTICE: This communication with its contents may contain confidential and/or legally privileged information. It is solely for the use of the intended recipient(s). Unauthorized interception, review, use or disclosure is prohibited and may violate applicable laws including the Electronic Communications Privacy Act. If you are not the intended recipient, please contact the sender and destroy all copies of the communication.

This message was sent from outside the company. Please do not click links or open attachments unless you recognize the source of this email and know the content is safe.

# EXHIBIT J

STATE OF CALIFORNIA —DEPARTMENT OF CORRECTIONS AND REHABILITATION                                    GAVIN NEWSOM, GOVERNOR

**OFFICE OF LEGAL AFFAIRS**
Jennifer Neill
General Counsel
P.O. Box 942883
Sacramento, CA 94283-0001



February 24, 2023

Lisa Ells
Rosen Bien Galvan and Grunfeld LLP
101 Mission Street, Sixth Floor
San Francisco, A 94105

VIA EMAIL

Lisa,

Thank you for meeting with Defendants regarding CDCR's proposal for treatment minimums in its Psychiatric Inpatient Programs (PIP). During our February 17, 2023 meet and confer, Plaintiffs requested copies of requests for and approvals of licensing program flexibilities from the California Department of Public Health. Attached to this email is a zip file containing program flexibility requests pertaining to California Code of Regulation Title 22 section 79601(a)(6). The zip file is organized by PIP and includes subfolders containing the program flexibility requests and approvals dating back to 2015. CDCR regularly renews the requested program flexibilities.

Current program flexibilities are also publicly available on the California Department of Public Health's public website:
https://www.cdph.ca.gov/Programs/CHCQ/LCP/CalHealthFind/Pages/SearchResult.aspx
By selecting a "Facility Type" of "Correctional Treatment Center," the website will display a page containing the numerous CDCR institutions operating under a Correctional Treatment Center license.

Lisa Ells
Page 2



The information displayed in Cal Health Find comes from data recorded in the federal Automated Survey Processing Environment (ASPEN) system and

Institution by institution detail can be gathered by clicking on the links. The webpages include licensing and program flexibility information, among other items, as well as details on any complaints lodged with the California Department of Public Health over the past three years.

CDCR PIPs have maintained the program flexibility to Title 22 section 79601(a)(6) for years, dating back before the 2017 lift and shift. Defendants' program flexibility requests have consistently been found reasonable by the California Department of Public Health.

Although CDCR PIPs deviate from Title 22's requirement for a progress note to be entered every three days by "the attending physician," CDCR supplements patient care by requiring a psychologist or social worker to provide twice weekly contacts for acute or weekly contacts for intermediate patients for the duration of their stay. This ensures that patients are seen by a mental health provider multiple times each week while in a PIP. CDCR intends to adopt this long-standing model as its policy going forward.

CDCR has modified the proposed frequency of IDTTs in the table below. CDCR has removed the requirement for the second IDTT to be held within ten days of admission. Instead, CDCR's policy will align with Title 22's requirement on treatment planning and require an initial IDTT within seventy-two hours and routine follow up IDTTs every seven days for acute and every thirty days for intermediate patients. (See CCR Title 22 section 79747(a)(1) and (a)(3) requiring

Lisa Ells
Page 3

an initial plan within "72 hours following the patient's admission" and "updated plans no less often than every seven (7) days…for acute…and every thirty (30) days for nonacute mental health patients.")

### CDCR Recommendations for APP Weekly Treatment Frequency

| IDTT | MHMD Contacts | MH Clinical Contacts | Unstructured Programming | Structured Programming |
|---|---|---|---|---|
| 1st IDTT held within 72 hours of arrival<br><br>Routine IDTTs every 7 days thereafter | Initial Evaluation occurs within 24 hours of arrival<br><br>Every 3 Days for the first 30 days<br><br>At least 1X per calendar week thereafter for stable patients | Initial MH assessment occurs within 10 days of arrival<br><br>At least 2x per calendar week | Based on individualized clinical assessment and treatment planning by the Interdisciplinary Treatment Team, updated based on clinical progress as per the standard of care. | Based on individualized clinical assessment and treatment planning by the Interdisciplinary Treatment Team, updated based on clinical progress as per the standard of care. |

### CDCR Recommendations for ICF Treatment Frequency

| IDTT | MHMD Contacts | MH Clinical Contacts | Unstructured Programming | Structured Programming |
|---|---|---|---|---|
| 1st IDTT held within 72 hours of arrival<br><br>Routine IDTTs every 30 days thereafter | Initial Evaluation occurs within 24 hours of arrival<br><br>Every 3 Days for the first 30 days<br><br>At least 1X per calendar week thereafter for stable patients | Initial MH assessment occurs within 10 days of arrival<br><br>At least 1x per calendar week | Based on individualized clinical assessment and treatment planning by the Interdisciplinary Treatment Team, updated based on clinical progress as per the standard of care. | Based on individualized clinical assessment and treatment planning by the Interdisciplinary Treatment Team, updated based on clinical progress as per the standard of care. |

/

/

/

/

/

Lisa Ells
Page 4


CDCR reserves the right to make further changes to this model in advance of the parties' March 13, 2023 joint status report.  CDCR is committed to providing sufficient notice of those change in advance of that filing deadline.  If you would like to further meet and confer regarding this letter or any other part of CDCR's proposal, please let me know.


Sincerely,

Nick Weber

*/s/ Nick Weber*

Attorney
CDCR
Office of Legal Affairs



State of California—Health and Human Services Agency
# California Department of Public Health

**TOMÁS J. ARAGÓN, M.D., Dr.P.H.**
*State Public Health Officer & Director*

**GAVIN NEWSOM**
*Governor*

Jan 10, 2023

Venicia Wilson
CALIFORNIA MEDICAL FACILITY - CORRECTIONAL TREATMENT CENTER
1600 California Dr
Vacaville, CA 95696

**APPROVAL OF PROGRAM FLEXIBILITY**

Dear Venicia Wilson,

This letter is in response to the request submitted by **CALIFORNIA MEDICAL FACILITY - CORRECTIONAL TREATMENT CENTER** for program flexibility for California Code of Regulations T22 DIV5 CH12 ART3-79601(a)(6).

The alternative means of compliance with T22 DIV5 CH12 ART3-79601(a)(6) include

Requesting flexibility to the frequency of health records progress notes. For both acute and non-acute Mental Health Treatment patients, with an anticipated stay over 30 days, the mental health clinician will write a progress note at the minimum every 3 days or more frequently as the patient's condition for the first 30 days. For stable patients, the mental health clinician will write a progress note at the minimum every 7 days. The medical provider will write a progress note at least every 30 days. Daily nursing notes will continue.

For stable patients admitted primarily for medical services, the provider will complete a progress note every seven days for patients with an expected length of stay of 30 days or less. For unstable patients, a progress note will be written every three days. For stable patients with an anticipated length of stay of 30 days or more a progress note will be written every seven days for the first 30 days. If the patient remains stable, a progress note will be written every fourteen days or more frequently as needed. A list of patients who are currently receiving medical treatment services and

---

Center for Health Care Quality
Centralized Program Flex Unit (CPFU)
P.O. Box 997377 MS 3405 Sacramento, CA 95899-7377
e-mail: CentralizedProgramFlex@cdph.ca.gov



the frequency of progress notes will be maintained. If a patient has any sudden or marked adverse changes in signs, symptoms or behavior clinical assessments will be provided and documented as needed. Nursing staff will continue to document as required by policy and Title 22 requirements

Your request for program flexibility of **T22 DIV5 CH12 ART3-79601(a)(6)** is approved under the following conditions:

1. The facility will provide leadership oversight for patients admitted to Mental Health Treatment Program and medical services and make decisions in the best interest of the patients.

2. The facility will ensure that patients admitted primarily for Mental Health Treatment program, designated as acute, with an anticipated length of stay of 10 days or less, progress notes will remain at three (3) day progress notes for all patients.

3. The facility will ensure for acute and non-acute patients admitted under the Mental Health Treatment program, with an anticipated length of stay greater than 30 days, a progress note will be written by the mental health provider at a minimum of every three (3) days or as the patient's condition requires for the first 30 days. If the patient's condition is determined to be stable, a progress note will be written by the mental health provider at a minimum of every seven (7) days or as the patient's condition requires. A progress note will be written by the medical provider every 30 days. At a minimum, a daily nursing note will be written.

4. The facility will ensure for patients admitted primarily for medical services and have an expected length of stay of 30 days or less, after the admission examination is completed, a progress note will be completed every seven (7) days if the patient is determined to be stable. If the patient is determined not to be stable, a progress note will be completed every three (3) days.

5. The facility will ensure for patients admitted primarily for medical services, with an anticipated length of stay of greater than 30 days and who have been determined to be stable, a progress note will be completed every seven (7) days for the first 30 days and then if the patient continues to be stable, a progress note will be written every fourteen (14) days or as the patient's condition requires. At a minimum, a daily nursing note will be written.

6. The facility will ensure for all patients, should the patient have any sudden or marked adverse changes in signs, symptoms or behavior exhibited, the medical provider will document more often as needed. A progress note will be written by the medical provider following each contact of service.

7. Daily monitoring and tracking mechanisms via automated registry will remain in place for both mental health treatment and medical patients to ensure compliance with the aforementioned parameters in this flex.



8. The facility will ensure nursing staff will document as required by policy and notify the attending provider in compliance with CCR Title 22, Section 79627, and Nursing Services General

Requirements.

9. The facility will notify the California Department of Public Health for any requested changes to these approval conditions.

Either this letter or a true copy thereof shall be posted immediately adjacent to the facility's license.

This approval shall remain in effect from Nov 20, 2022 until Nov 20, 2025.

**NOTE:** The Department may revoke the program flexibility if the licensee does not comply with the conditions set forth in the approval or if the department determines the proposed alternative does not adequately meet the intent of the regulations.

If you have any questions, please contact Centralized Program Flex Unit at (916) 323-5053 or by email at CentralizedProgramFlex@cdph.ca.gov.

Sincerely,

Sevrine A. Banks, Program Manager
Centralized Program Flex Unit



## General ✓

Facility: CALIFORNIA MEDICAL FACILITY - CORRECTIONAL TREATMENT CENTER

District: State Facilities Section

Facility Number: 630011825

Facility Type: CTC

License ID: 550000726

Phone Number: 7074486841

County Name: SOLANO

Address: 1600 California Dr, Vacaville, CA 95696

**Applicant Details:**

Name: Venicia Wilson

Email: venicia.wilson@cdcr.ca.gov

## Program Flexibility Application ✓

**Please do not include any patient identifying or personnel information in your application. The information in your application is considered public information and may be disclosed as part of a public records act request.**

**Contact Details**

Please provide the applicant's direct number should the Centralized Program Flex Unit have any questions regarding your application.

Applicant Contact Number
9166913786

**Duration of Request**

Requested Start Date
11/20/2022

Requested End Date
11/19/2023

**Specify Type of Request**
Non-Emergency

- **Physician Services--General Requirements, T22 DIV5 CH12 ART3-79601(a)(6)**

Effective January 1, 2023, HSC 1276 (e) and (f) references a new category for a program flexibility request, for a **general acute care hospital (GACH)**, that allows the facility to designate a bed, or beds, in a critical care unit as requiring a lower level of care.

Is this request related to a GACH designating a bed, or beds, in a critical care unit as requiring a lower level of care?

No

**Specify Area of Flex**

 Records/Documentation

**Request Description**

Requesting flexibility as it pertains to the frequency of health records progress notes in the licensed CTC.

### JUSTIFICATION

**Describe why program flexibility is needed.**

CDCR/CCHCS have current processes in place to evaluate and assess a patient's condition at various intervals throughout their length of stay. It is requested that CDPH allow the organization to continue with these processes to ensure that documentation requirements be consistent and dictated by the patient's length of stay and condition.

## ALTERNATIVE CONCEPT

**Describe the proposed alternate method for meeting the intent of the regulation. Include the alternate concepts, methods, procedures, techniques, equipment, personnel qualifications, or the conducting of pilot projects. Include a description of the provisions for safe and adequate care so that the proposed alternative does not compromise patient care.**

For patients admitted under the Mental Health Treatment program, designated as acute, with an anticipated length of stay of 10 days or less, program flexibility is not provided.

For patients admitted under the Mental Health Treatment program, designated as acute, with an anticipated length of stay greater than 30 days, a progress note shall be written by the mental health clinician at a minimum of every three (3) days or as the patient's condition requires for the first 30 days. If the patient's condition is determined to be stable, a progress note shall be written by the mental health clinician at a minimum of every seven (7) days or as the patient's condition requires. A progress note shall be written by the medical provider every 30 days. At a minimum, a daily nursing note shall be written.

For patients admitted under the Mental Health Treatment program, designated as non-acute, with an anticipated length of stay greater than 30 days, a progress note shall be written a by the mental health clinician a minimum of every three (3) days or as the patient's condition requires for the first 30 days. If the patient's condition is determined to be stable, a progress note shall be written by the mental health clinician at a minimum of every seven (7) days or as the patient's condition requires. A progress note shall be written by the medical provider every 30 days. At a minimum, a daily nursing note shall be written.

For patients admitted primarily for medical services and have an expected length of stay of 30 days or less, after the admission examination is completed, a progress note shall be completed every seven (7) days if the patient is determined to be stable. If the patient is determined not to be stable, a progress note shall be completed every three (3) days.

For patients admitted primarily for medical services with an anticipated length of stay of greater than 30 days and who have been determined to be stable, a progress note shall be completed every seven (7) days for the first 30 days and then if the patient continues to be stable, a progress note shall be written every fourteen (14) days or as the patient's condition requires. At a minimum, a daily nursing note shall be written.

Daily monitoring and tracking mechanisms via automated registry remains in place to ensure compliance with the aforementioned parameters in this flex.

For all patients, should the patient have any sudden or marked adverse changes in signs, symptoms or behavior exhibited, the provider will document more often as needed. A progress note shall be written by the clinician following each contact of service.

Nursing staff shall document on each patient as required by policy and notify the attending provider in compliance with CCR Title 22 Section 79627, and Nursing Services General Requirements

**Additional Information**

Provide any additional information as desired.



Please attach any supporting documentation for the request. More than one document may be uploaded here.

 1102.09 Daily Nursing Rounds.pdf
Date Attached: Nov 17, 2022

 2021-09-27 CMF CTC 550000726 79601.pdf
Date Attached: Nov 17, 2022

 1102.08 Registered Nurse and Physician Communication about Status Change.pdf
Date Attached: Nov 17, 2022

**Revise and Update**

Add updates to the original application.

Previous versions of this flex were submitted to CDPH approved. Last approval is dated 09/27/2021

I agree to submit this application and certify under penalty of perjury that my answers are correct and complete to the best of my knowledge. I also certify that:

- I understand the questions and statements on this application.

- I understand the penalties for giving false information.

- I understand that this acknowledgment has the same legal effect and can be enforced in the same way as a written signature.

- I am authorized to submit this application on behalf of the licensee.

- This application does not include any patient identifying or personnel information.

This Information provided on this form is mandatory and is necessary for waiver approval. It will be used to determine whether to approve the request for a waiver. **The information in your application is considered public information and may be disclosed as part of a public records act request.**

 **I acknowledge and agree to the above Terms of Acceptance**

April 5. 2021

Edwin Hoffmark, District Manager
California Department of Public Health
2170 Northpoint Parkway
Santa Rosa, CA  95407

Dear Mr. Hoffmark,

RE:  California Medical Facility Correctional Treatment Center (CMF), CTC License
#550000726    Program Flexibility Request

Please find the attached CDPH 5000 Program Flexibility request form requesting flex
related to Section 79601 (a) (6).   The specifics of the request is on a separate Word
document as it would not fit in its entirety on the CDPH Form 5000.

California Department of Corrections and Rehabilitation (CDCR) and the California
Correctional Healthcare Services (CCHCS) are formally requesting a review and
approval of this request.  The requested flex for patients admitted primarily for medical
services is the same as the request and approval from December 2019 for SVSP, San
Quentin State Prison (SQ), California Health Care Facility (CHCF), California
Institution for Women (CIW), and California Medical Facility (CMF).



This updated request adds specifics for patients primarily admitted for mental health
services inadvertently not requested when program flex was submitted and approved
in December 2019.  This updated request for patients admitted for mental health
services is similar to previously approved program flexes approved for SVSP, SQ,
CHCF, CIW, and CMF.

This cover letter and original request shall be sent to your office via GSO.

If you require additional questions, please feel free to contact me at (916) 691-2852 or
via email at Kenneth.Martin@cdcr.ca.gov.

If possible, please send approval to my office.


Sincerely,

**Kenneth Ray Martin**
Associate Director, Licensing and Compliance
Corrections Services, CCHCS
PO BOX 588500
Elk Grove, CA  95758

Name
Date
Page 2


CC:    Dr. William Kushner, Institution CEO (A) / CTC Administrator
       Tammy Foss, Director, Corrections Services
       Joseph (Jason) Williams, Deputy Director, Correction Services
       Jackie Clark, Deputy Director, Institution Operations
       Dr. Renee Kanan, Deputy Director, Medical Services
       Barbara Barney-Knox, Deputy Director, Statewide Chief Nurse Executive
       Amar Mehta, Deputy Director, Statewide Mental Health Program
       Dr. Joseph Bick, Director, Health Care Services



# PROGRAM FLEXIBILITY

**Facility:**    California Medical Facility (CMF) Correctional Treatment Center (CTC) #550000726

**Address:**    1600 California Dr.

Vacaville, Ca. 95696                                                                              **ZIP:**  95696

**Administrator:**  Dr. William Kushner                                              **Date:**  2021/04/05

**Subject:** Program flexibility is requested for Section: 79601 (a) (6)              Title 22, California Code of Regulations.

Proposed alternate method(s) for meeting the intent of the regulations is;

The program flexibility request pursuant to Section 79593 of Title 22, Chapter 12 is being submitted on behalf of the CMF CTC.

SEE ATTACHED WORD DOCUMENT AS FULL TEXT DOES NOT FIT THIS DOCUMENT.

CDPH 5000 (4/08)

Facility:              California Medical Facility Correctional Treatment Center

                       Correctional Treatment Center (CTC) License #550000726

Date:                  April 5, 2021

Address:               1600 California Dr.

                       Vacaville, Ca.  95696

CTC Administrator: Dr. William Kushner

**This Program Flexibility Request is associated with the official CDPH 5000 form, "Program Flexibility" as the request cannot fit in the form in its entirety.**

Section 79601 related to Section 79597 Required Services for all CTCs, Physician Services-general Requirements of the California Code of Regulations (CCR) stipulates the following:

(a) "Physician services shall include, but not be limited to:

(6) Health record progress notes at least every three days or more often as the inmate-patient's condition requires. A progress note will be documented on each visit by the attending physician."

CMF provides both medical and mental health services (approved optional service per section 79703) at the acute and non-acute levels to the patient population (sections 79743 – 79759).

For inmate-patients admitted under the Mental Health Treatment optional service designated as acute, with an anticipated length of stay of 10 days or less, no program flex is requested.

For inmate patients admitted under the Mental Health Treatment optional service designated as acute, with an anticipated length of stay greater than 30 days, a progress note shall be written at a minimum of every three (3) days or as the inmate-patient's condition requires for the first 30 days.  If the inmate-patient's condition is determined to be stable, a progress note shall be written at a minimum of every seven (7) days or as the inmate-patient's condition requires.  At a minimum, a daily nursing note shall be written.

For inmate-patients admitted under the Mental Health Treatment optional service designated as non-acute, with an anticipated length of stay of greater than 30 days, a progress note shall be written at a minimum of every three (3) days or as the inmate-patient's condition requires for the first 30 days.  If the inmate-patient's condition is determined to be stable, a progress note shall be written at a minimum of every seven (7) days or as the inmate-patient's condition requires.  At a minimum, a daily nursing note shall be written.

For inmate-patients admitted primarily for medical services and have an expected length of stay of 30 days or less, after the admission examination is completed, a progress note shall be completed every seven (7) days if the inmate-patient is determined to be stable. If the inmate-patient is determined not to be stable, a progress note shall be completed every three (3) days.

1

For inmate-patients admitted primarily for medical services, with an anticipated length of stay of greater than 30 days and who have been determined to be stable, a progress note shall be completed every seven (7) days for the first 30 days and then if the inmate-patient continues to be stable, a progress note shall be written every fourteen (14) days or as the inmate-patient's condition requires. At a minimum, a daily nursing note shall be written.

A list of inmate-patients receiving medical/mental health treatment services shall be maintained for those determined to meet criteria for a minimum of every seven (7) and/or fourteen (14) day notes, as appropriate. A random monthly audit shall be conducted by the Clinical Director or designee to ensure compliance with this Program Flex.

For all inmate-patients, should the inmate-patient have any sudden or marked adverse changes in signs, symptoms or behavior exhibited, the provider will document more often as needed. A progress note shall be written by the clinician following each contact of service.

Nursing staff shall document on each inmate-patient as required by policy and notify the attending provider in compliance with CCR Title 22, Section 79627, and Nursing Services General Requirements.



State of California -- Health and Human Services Agency
# California Department of Public Health



SONIA Y. ANGELL, MD, MPH
*State Public Health Officer & Director*

GAVIN NEWSOM
*Governor*

December 10, 2019

Lori Austin
CALIFORNIA MEDICAL FACILITY - CORRECTIONAL TREATMENT CENTER
1600 California Dr
Vacaville, CA. 95696

**APPROVAL OF PROGRAM FLEXIBILITY**

Dear Lori Austin:

This letter is in response to the request submitted by CALIFORNIA MEDICAL FACILITY - CORRECTIONAL TREATMENT CENTER for program flexibility for California Code of Regulations Title 22 (CCR) section T22 DIV5 CH12 ART3-79601(a)(6).

The alternative means of compliance with Title 22 CCR section T22 DIV5 CH12 ART3-79601(a)(6) include compliance with the conditions set forth in the following section.

Your request for program flexibility of Title 22 CCR T22 DIV5 CH12 ART3-79601(a)(6) is approved under the following conditions:

1.   For inmate-patients admitted primarily for mental health services, no Program Flexibility is requested and will remain at three (3) day progress notes.

2.   For inmate-patients admitted primarily for medical services and have an expected length of stay of 30 days or less, after the admission examination is completed, a progress note shall be completed every seven (7) days if the inmate-patient is determined to be stable. If the inmate-patient is determined not to be stable, a progress note shall be completed every three (3) days.

3.   For inmate-patients admitted primarily for medical services, with an anticipated length of stay of greater than 30 days and who have been determined to be stable, a progress note shall be completed every seven (7) days for the first 30 days and then if the inmate-patient continues to be stable, a progress note shall be written every fourteen (14) days or as the inmate-patient's condition requires. At a minimum, a daily nursing note shall be written.

4.   A list of inmate-patients receiving medical treatment services shall be maintained for those determined to meet criteria for a minimum of every seven (7) and fourteen ( 14) day notes, as appropriate. A random monthly audit shall be conducted by the Clinical Director or designee to ensure compliance with this Program Flex.

---



Administrator
Page 2

5.  For all inmate-patients, should the inmate-patient have any sudden or marked adverse changes in signs, symptoms or behavior exhibited, the provider will document more often as needed. A progress note shall be written by the clinician following each contact of service.

6.  Nursing staff shall document on each inmate-patient as required by policy and notify the attending provider in compliance with CCR Title 22, Section 79627, and Nursing Services General Requirements.

Either this letter or a true copy thereof shall be posted immediately adjacent to the facility's license.

This approval shall remain in effect from 11/20/2019 until 11/19/2022.

**NOTE:** The Department may revoke the program flexibility if the licensee does not comply with the conditions set forth in the approval or if the department determines the proposed alternative does not adequately meet the intent of the regulations.

If you have any questions, please contact Edwin Hoffmark, HFEM II at (855) 804-4205 or by email at Edwin.Hoffmark@cdph.ca.gov.

Sincerely,

Edwin Hoffmark, HFEM II, District Manager
State Facilities Section

State of California—Health and Human Services Agency

# California Department of Public Health



**KAREN SMITH, MD, MPH**
*Director & State Health Officer*

**EDMUND G. BROWN JR.**
*Governor*

March 17, 2017

David Horch, Acting CEO
CMF Vacaville
Correctional Treatment Center
1600 California Drive
Vacaville, CA 95696

Dear Mr. Horch:

This is in response to your request for program flexibility for California Code of Regulations (CCR), Title 22, § 79601, Physician Services regarding provider progress notes in inmate-patient's medical records.

Pursuant to §1276(b) of the Health and Safety Code, you request for program flexibility is approved with the following conditions:

1.     For patients admitted under the Mental Health Treatment optional service designated as acute, with an anticipated length of stay of 10 days or less, no program flex is requested.

2.     For patients admitted under the Mental Health Treatment optional service designated as acute, with an anticipated length of stay greater than 30 days, a progress note shall be written at a minimum every three (3) days or as the patient's condition requires for the first 30 days. If the patient's condition is determined to be stable, a progress note shall be written at a minimum of every seven (7) days or as the patient condition requires. At a minimum, a daily nursing note shall be written.

3.     For patients admitted under the Mental Health Treatment optional service designated as non-acute, with an anticipated length of stay of greater than 30 days, a progress note shall be written at a minimum every three (3) days or as the patient's condition requires for the first 30 days. If the patient's condition is determined to be stable, a progress note shall be written at a minimum of every seven (7) days or as the patient's condition requires. At a minimum, a daily nursing note shall be written.

4.     A list of patients receiving mental health treatment services shall be maintained for those determined

This program flexibility approval shall remain in effect until revoked by the department.

In accordance with California Code of Regulations (CCR), Title 22, § 79593(a) Program Flexibility.  Any approval granted by the Department pursuant to this Section, or a true copy thereof, shall be posted immediately adjacent to the facility's license required to be posted by CCR, Title22, Section 79589.

Sincerely,

*For* Lea Ann Reseigne, HFEMII, Chief
Licensing and Certification Program
State Facilities Section


cc:    Kenneth Martin
       PO Box 588500,  Bldg. G
       Elk Grove, CA  95758

## CALIFORNIA HEALTH CARE FACILITY - STOCKTON

  

**Approved Program Flexibility**

| Regulations | Start Date | End Date |
|---|---|---|
| **Physician Services--General Requirements**<br>• T22 DIV5 CH12 ART3-79601(a)(6) | 11/20/2022 | 11/20/2025 |

**Conditions**

    ○ 1. The facility will provide leadership oversight for patients admitted to Mental Health Treatment Program and medical services and make decisions in the best interest of the patients.

2. The facility will ensure that patients admitted primarily for Mental Health Treatment program, designated as acute, with an anticipated length of stay of 10 days or less, progress notes will remain at three (3) day progress notes for all patients.

3. The facility will ensure for acute and non-acute patients admitted under the Mental Health Treatment program, with an anticipated length of stay greater than 30 days, a progress note will be written by the mental health provider at a minimum of every three (3) days or as the patient's condition requires for the first 30 days. If the patient's condition is determined to be stable, a progress note will be written by the mental health provider at a minimum of every seven (7) days or as the patient's condition requires. A progress note will be written by the medical provider every 30 days. At a minimum, a daily nursing note will be written.

4. The facility will ensure for patients admitted primarily for medical services and have an expected length of stay of 30 days or less, after the admission examination is completed, a progress note will be completed every seven (7) days if the patient is determined to be stable. If the patient is determined not to be stable, a progress note will be completed every three (3) days.

5. The facility will ensure for patients admitted primarily for medical services, with an anticipated length of stay of greater than 30 days and who have been determined to be stable, a progress note will be completed every seven (7) days for the first 30 days and then if the patient continues to be stable, a progress note will be written every fourteen (14) days or as the patient's condition requires. At a minimum, a daily nursing note will be written.

6. The facility will ensure for all patients, should the patient have any sudden or marked adverse changes in signs, symptoms or behavior exhibited, the medical provider will document more often as needed. A progress note will be written by the medical provider following each contact of service.

7. Daily monitoring and tracking mechanisms via automated registry will remain in place for both mental health treatment and medical patients to ensure compliance with the aforementioned parameters in this flex.

8. The facility will ensure nursing staff will document as required by policy and notify the attending provider in compliance with CCR Title 22, Section 79627, and Nursing Services General Requirements.

9. The facility will notify the California Department of Public Health for any requested changes to these approval conditions.

April 5, 2021

Edwin Hoffmark, District Manager
California Department of Public Health
2170 Northpoint Parkway
Santa Rosa, CA 95407

Dear Mr. Hoffmark,

RE:    California Health Care Facility (CHCF), CTC License # 550002338
       Program Flexibility Request

Please find the attached CDPH 5000 Program Flexibility request form requesting flex related to Section 79601(a) (6). The specifics of the request is on a separate Word document as it would not fit in its entirety on the CDPH Form 5000.

California Department of Corrections and Rehabilitation (CDCR) and the California Correctional Healthcare Services (CCHCS) are formally requesting a review and approval of this request. The requested flex for patients admitted primarily for medical services is the same as the request and approval from December 2019 for SVSP, San Quentin State Prison (SQ), California Health Care Facility (CHCF), California Institution for Women (CIW), and California Medical Facility (CMF).

This updated request adds specifics for patients primarily admitted for mental health services inadvertently not requested when program flex was submitted and approved in December 2019. This updated request for patients admitted for mental health services is similar to previously approved program flexes approved for SVSP, SQ, CHCF, CIW, and CMF.

This cover letter and original request shall be sent to your office via GSO.

If you require additional questions, please feel free to contact me at (916) 691-2852 or via email at Kenneth.Martin@cdcr.ca.gov.

If possible, please send approval to my office.


Sincerely,



**Kenneth Ray Martin**
Associate Director, Licensing and Compliance
Corrections Services, CCHCS
PO BOX 588500
Elk Grove, CA 95758

Name
Date
Page 2


CC:    Shereef Aref, Institution CEO
       Joti Bolina, CTC Administrator
       Tammy Foss, Director, Corrections Services
       Joseph (Jason) Williams, Deputy Director, Correction Services
       Jackie Clark, Deputy Director, Institution Operations
       Dr. Renee Kanan, Deputy Director, Medical Services
       Barbara Barney-Knox, Deputy Director, Statewide Chief Nurse Executive
       Amar Mehta, Deputy Director, Statewide Mental Health Program
       Dr. Joseph Bick, Director, Health Care Services



State of California—Health and Human Services Agency    Document 7833-1    Filed 05/11/23    California Department of Public Health
Case 2:90-cv-00520-KJM-SCR                                                    Page 156 of 308
Licensing and Certification Program

# PROGRAM FLEXIBILITY

Facility:     California Health Care Facility (CHCF) - Correctional Treatment Center (CTC) 550002338

Address:     California Department of Corrections and Rehabilitation

7707 Austin Road, Stockton, CA          ZIP:   95215-8312

Administrator:   Joti Bolina, Program Director          Date:   April 5, 2021

Subject: Program flexibility is requested for Section:   Section 79601(a)        Title 22, California Code of Regulations.

Proposed alternate method(s) for meeting the intent of the regulations is;

This program flexibility request pursuant to Section 79593 of Title 22, Chapter 12 is being submitted on behalf of CHCF's CTC.

The specifics of this request is on a separate Word document as it would not fit in its entirety on the CDPH Form 5000. Please see attached.

CDPH 5000 (4/08)

| Facility: | California Health Care Facility (CHCF) |
| | Correctional Treatment Center (CTC) License #550002338 |
| Date: | April 5, 2021 |
| Address: | 7707 Austin Road |
| | Stockton, CA 95215-8312 |

CTC Administrator:    Joti Bolina, Program Director

**This Program Flexibility Request is associated with the official CDPH 5000 form, "Program Flexibility" as the request cannot fit in the form in its entirety.**

Section 79601 related to Section 79597, Required Services for all CTCs, Physician Services-General Requirements of the California Code of Regulations (CCR) stipulates the following:

(a) "Physician services shall include, but not be limited to:

(6) Health record progress notes at least every three days or more often as the inmate-patient's condition requires. A progress note will be documented on each visit by the attending physician."

CHCF provides both medical and mental health services (approved optional service per section 79703) at the acute and non-acute levels to the patient population (sections 79743 – 79759).

For inmate-patients admitted under the Mental Health Treatment optional service designated as acute, with an anticipated length of stay of 10 days or less, no program flex is requested.

For inmate patients admitted under the Mental Health Treatment optional service designated as acute, with an anticipated length of stay greater than 30 days, a progress note shall be written at a minimum of every three (3) days or as the inmate-patient's condition requires for the first 30 days. If the inmate- patient's condition is determined to be stable, a progress note shall be written at a minimum of every seven (7) days or as the inmate-patient's condition requires. At a minimum, a daily nursing note shall be written.

For inmate-patients admitted under the Mental Health Treatment optional service designated as non-acute, with an anticipated length of stay of greater than 30 days, a progress note shall be written at a minimum of every three (3) days or as the inmate-patient's condition requires for the first 30 days. If the inmate-patient's condition is determined to be stable, a progress note shall be written at a minimum of every seven (7) days or as the inmate-patient's condition requires. At a minimum, a daily nursing note shall be written.

For inmate-patients admitted primarily for medical services and have an expected length of stay of 30 days or less, after the admission examination is completed, a progress note shall be completed every seven (7) days if the inmate-patient is determined to be stable. If the inmate-patient is determined not to be stable, a progress note shall be completed every three (3) days.

For inmate-patients admitted primarily for medical services, with an anticipated length of stay of greater than 30 days and who have been determined to be stable, a progress note shall be completed

1

every seven (7) days for the first 30 days and then if the inmate-patient continues to be stable, a progress note shall be written every fourteen (14) days or as the inmate-patient's condition requires. At a minimum, a daily nursing note shall be written.

A list of inmate-patients receiving medical/mental health treatment services shall be maintained for those determined to meet criteria for a minimum of every seven (7) and/or fourteen (14) day notes, as appropriate. A random monthly audit shall be conducted by the Clinical Director or designee to ensure compliance with this Program Flex.

For all inmate-patients, should the inmate-patient have any sudden or marked adverse changes in signs, symptoms or behavior exhibited, the provider will document more often as needed. A progress note shall be written by the clinician following each contact of service.

Nursing staff shall document on each inmate-patient as required by policy and notify the attending provider in compliance with CCR Title 22, Section 79627, and Nursing Services General Requirements.

2

 **CALIFORNIA CORRECTIONAL**
# HEALTH CARE SERVICES


# MEMORANDUM

| | |
|---|---|
| **Date:** | October 3, 2019 |
| **To:** | **CHCF PIP Primary Clinicians and Psychiatrists** |
| **From:** | **Raul Recarey, CHCF CEO**<br>**Kenneth Ray Martin, CHCF-PIP Executive Director** |
| **Subject:** | **MINIMUM PRIMARY CLINICIAN AND PSYCHIATRIST CONFIDENTIAL CONTACT** |

This memorandum provides expectations to CHCF PIP Primary Clinicians and Psychiatrists with regard to the minimum standard for confidential 1:1 sessions.

Each patient's Primary Clinician is expected to see their patients at a minimum of 1 time per week in a confidential 1:1 session each week or more often as clinically indicated.

Each patient's Psychiatrist is expected to see their patients in a confidential 1:1 session in accordance with CHCF's program flex. The Program Flex is attached for your review. The following is a synopsis of the requirements:

- Minimum every 3 calendar days or as the patient's condition requires for the first 30 days
- Minimum of every 7 calendar days if the patient is determined to be stable

In an emergency, the primary care physician's progress note, detailing medical and psychiatric issues, counts for the purposes of meeting licensing requirements but not program guide requirements.

Work with the schedulers to ensure patients are scheduled and seen as required and discussed daily in the Mental Health Huddles to ensure patient movement to appointments occur.



State of California—Health and Human Services Agency
# California Department of Public Health



MICHAEL WILKENING
*Acting Director*

EDMUND G. BROWN JR.
*Governor*

February 12, 2015

Robert Edwards, Jr., Administrator
Correctional Health Care Facility,
Correctional Treatment Center, Stockton
707 S. Austin Road
Stockton, CA 95215

Dear Mr. Edwards:

This is in response to your request for program flexibility for California Code of
Regulations (CCR), Title 22, § 79601, Physician Services regarding provider progress
notes in inmate-patient's medical records.

Pursuant to §1276(b) of the Health and Safety Code, you request for program flexibility
is approved with the following conditions:

1.      Patients requiring medical services, upon admission to the CTC who have been
designated as Long Term Care (LTC) inmate-patients, those who stay will be longer
than 30 days, a progress note will be written at a minimum of every seven (7) days if the
licensed independent practitioner (LIP) determines their condition is stable. A nursing
note shall be written daily. A progress note shall be written on each visit by the LIP or as
the patient's condition changes. If the LIP determines the patient is no longer
considered a LTC patient, a progress note shall e wr4itten at a minimum of every three
(3) days or as the patient's condition requires.

2.      Patients requiring medical services who have not been designated as LTC shall
receive a progress note at a minimum of every three (3) days or more often as the
patient's condition requires. If the LIP determines the patient is LTC, an order shall be
written in the patient's health record and progress notes shall be written every seven (7)
days or more often as the patient's condition requires. A daily nursing note shall be
written.

3.      The facility will maintain a list of those patients designated as LTC. Random
monthly reviews shall be conducted by the Medical Director or designee to ensure
compliance with this program flex.

February 12, 2015
Program Flex-CTC-79601

4.    For patients admitted under the Mental Health Treatment optional service designated as acute, with an anticipated length of stay of 10 days or less, no program flex is requested.

5.    For patients admitted under the Mental Health Treatment optional service designated as acute, with an anticipated length of stay greater than 30 days, a progress note shall be written at a minimum every three (3) days or as the patient's condition requires for the first 30 days. If the patient's condition is determined to be stable, a progress note shall be written at a minimum of every seven (7) days or as the patient condition requires. At a minimum, a daily nursing note shall be written.

6.    For patients admitted under the Mental Health Treatment optional service designated as non-acute, with an anticipated length of stay of greater than 30 days, a progress note shall be written at a minimum every three (3) days or as the patient's condition requires for the first 30 days. If the patient's condition is determined to be stable, a progress note shall be written at a minimum of every seven (7) days or as the patient's condition requires. At a minimum, a daily nursing note shall be written.

7.    A list of patients receiving mental health treatment services shall be maintained for those determined

This program flexibility approval shall remain in effect until revoked by the department.

In accordance with California Code of Regulations (CCR), Title 22, § 79593(a) Program Flexibility.  Any approval granted by the Department pursuant to this Section, or a true copy thereof, shall be posted immediately adjacent to the facility's license required to be posted by CCR, Title22, Section 79589.

Sincerely,

*[signature]* HFEM 1

Colleen Reeves, HFEMII, Chief
Licensing and Certification Program
State Facilities Section


cc:    Robert Ussher, HFES (Acting)
       625 E. Carnegie Drive, Suite  280,
       San Bernardino, CA  92408

       Lea Ann Reseigne, HFEM 1
       625 E. Carnegie Drive, Suite  280,
       San Bernardino, CA  92408

Facility:        Correctional Health Care Facility (CHCF) Correctional Treatment Center License
#550002338

Address:         707 S Austin Road
                 Stockton, CA 95215

CTC Administrator:    Bob Edwards, Jr.


This Program Flexibility Request is associated with the attached official CDPH 5000 form "Program Flexibility."

Section 79601, Physician Services - General Requirements of the California Code of Regulations (CCR) stipulates the following:

(a) "Physician services shall include, but not be limited to:
(6) Health record progress notes at least every three days or more often as the inmate-patient's condition requires. A progress note will be documented on each visit by the attending physician. "


CHCF provides both medical and mental health services at the acute and non-acute level to the patient population.

For inmate-patients admitted for medical services, CHCF proposes the following:

Patients requiring medical services, upon admission to the CTC who have been designated as Long Term Care (LTC) inmate-patients, those who stay will be longer than 30 days, a progress note will be written at a minimum of every seven (7) days if the licensed independent practitioner (LIP) determines their condition is stable. An order shall be written by the LIP in the patient's health record indicating the patient is long term care. A nursing note shall be written daily. A progress note shall be written on each visit by the LIP or as the patient's condition changes. If the LIP determines the patient is no longer considered a LTC patient, a progress note shall be written at a minimum of every three (3) days or as the patient's condition requires.

Patients requiring medical services who have not been designated as LTC shall receive a progress note at a minimum of every three (3) days or more often as the patient's condition requires. If the LIP determines the patient is LTC, an order shall be written in the patient's health record and progress notes shall be written every seven (7) days or more often as the patient's condition requires. A daily nursing note shall be written.

The facility will maintain a list of those patients designated as LTC. Random monthly reviews shall be conducted by the Medical Director or designee to ensure compliance with this program flex.

1



State of California -- Health and Human Services Agency
## California Department of Public Health



**SONIA Y. ANGELL, MD, MPH**
*State Public Health Officer & Director*

**GAVIN NEWSOM**
*Governor*

December 10, 2019

Anise Adams
California Health Care Facility - Stockton
7707 Austin Rd
Stockton, CA. 95215

**APPROVAL OF PROGRAM FLEXIBILITY**

Dear Anise Adams:

This letter is in response to the request submitted by California Health Care Facility - Stockton for program flexibility for California Code of Regulations Title 22 (CCR) section T22 DIV5 CH12 ART3-79601(a)(6).

The alternative means of compliance with Title 22 CCR section T22 DIV5 CH12 ART3-79601(a)(6) include compliance with the conditions set forth in the following section.

Your request for program flexibility of Title 22 CCR T22 DIV5 CH12 ART3-79601(a)(6) is approved under the following conditions:

1. For inmate-patients admitted primarily for mental health services, no Program Flexibility is requested and will remain at three (3) day progress notes.

2. For inmate-patients admitted primarily for medical services and have an expected length of stay of 30 days or less, after the admission examination is completed, a progress note shall be completed every seven (7) days if the inmate-patient is determined to be stable. If the inmate-patient is determined not to be stable, a progress note shall be completed every three (3) days.

3. For inmate-patients admitted primarily for medical services, with an anticipated length of stay of greater than 30 days and who have been determined to be stable, a progress note shall be completed every seven (7) days for the first 30 days and then if the inmate-patient continues to be stable, a progress note shall be written every fourteen (14) days or as the inmate-patient's condition requires. At a minimum, a daily nursing note shall be written.

---



Administrator
Page 2

4.  A list of inmate-patients receiving medical treatment services shall be maintained for those dete1mined to meet criteria for a minimum of every seven (7) and fourteen (14) day notes, as appropriate. A random monthly audit shall be conducted by the Clinical Director or designee to ensure compliance with this Program Flex.

5.  For all inmate-patients, should the inmate-patient have any sudden or marked adverse changes in signs, symptoms or behavior exhibited, the provider will document more often as needed. A progress note shall be written by the clinician following each contact of service.

6.  Nursing staff shall document on each inmate-patient as required by policy and notify the attending provider in compliance with CCR Title 22, Section 79627, and Nursing Services General Requirements.

Either this letter or a true copy thereof shall be posted immediately adjacent to the facility's license.

This approval shall remain in effect from 11/20/2019 until 11/19/2022.

**NOTE:** The Department may revoke the program flexibility if the licensee does not comply with the conditions set forth in the approval or if the department determines the proposed alternative does not adequately meet the intent of the regulations.

If you have any questions, please contact Edwin Hoffmark, HFEM II at (855) 804-4205 or by email at Edwin.Hoffmark@cdph.ca.gov.

Sincerely,

Edwin Hoffmark, HFEM II, District Manager
State Facilities Section



State of California—Health and Human Services Agency
## California Department of Public Health



MICHAEL WILKENING
*Acting Director*

EDMUND G. BROWN JR.
*Governor*

February 12, 2015

Robert Edwards, Jr., Administrator
Correctional Health Care Facility,
Correctional Treatment Center, Stockton
707 S. Austin Road
Stockton, CA 95215

Dear Mr. Edwards:

This is in response to your request for program flexibility for California Code of Regulations (CCR), Title 22, § 79601, Physician Services regarding provider progress notes in inmate-patient's medical records.

Pursuant to §1276(b) of the Health and Safety Code, you request for program flexibility is approved with the following conditions:

1.      Patients requiring medical services, upon admission to the CTC who have been designated as Long Term Care (LTC) inmate-patients, those who stay will be longer than 30 days, a progress note will be written at a minimum of every seven (7) days if the licensed independent practitioner (LIP) determines their condition is stable. A nursing note shall be written daily. A progress note shall be written on each visit by the LIP or as the patient's condition changes. If the LIP determines the patient is no longer considered a LTC patient, a progress note shall e wr4itten at a minimum of every three (3) days or as the patient's condition requires.

2.      Patients requiring medical services who have not been designated as LTC shall receive a progress note at a minimum of every three (3) days or more often as the patient's condition requires. If the LIP determines the patient is LTC, an order shall be written in the patient's health record and progress notes shall be written every seven (7) days or more often as the patient's condition requires. A daily nursing note shall be written.

3.      The facility will maintain a list of those patients designated as LTC. Random monthly reviews shall be conducted by the Medical Director or designee to ensure compliance with this program flex.

February 12, 2015
Program Flex-CTC-79601

4.      For patients admitted under the Mental Health Treatment optional service designated as acute, with an anticipated length of stay of 10 days or less, no program flex is requested.

5.      For patients admitted under the Mental Health Treatment optional service designated as acute, with an anticipated length of stay greater than 30 days, a progress note shall be written at a minimum every three (3) days or as the patient's condition requires for the first 30 days. If the patient's condition is determined to be stable, a progress note shall be written at a minimum of every seven (7) days or as the patient condition requires. At a minimum, a daily nursing note shall be written.

6.      For patients admitted under the Mental Health Treatment optional service designated as non-acute, with an anticipated length of stay of greater than 30 days, a progress note shall be written at a minimum every three (3) days or as the patient's condition requires for the first 30 days. If the patient's condition is determined to be stable, a progress note shall be written at a minimum of every seven (7) days or as the patient's condition requires. At a minimum, a daily nursing note shall be written.

7.      A list of patients receiving mental health treatment services shall be maintained for those determined

This program flexibility approval shall remain in effect until revoked by the department.

In accordance with California Code of Regulations (CCR), Title 22, § 79593(a) Program Flexibility.  Any approval granted by the Department pursuant to this Section, or a true copy thereof, shall be posted immediately adjacent to the facility's license required to be posted by CCR, Title22, Section 79589.

Sincerely,

Colleen Reeves, HFEMII, Chief
Licensing and Certification Program
State Facilities Section


cc:    Robert Ussher, HFES (Acting)
       625 E. Carnegie Drive, Suite  280,
       San Bernardino, CA  92408

       Lea Ann Reseigne, HFEM 1
       625 E. Carnegie Drive, Suite  280,
       San Bernardino, CA  92408

February 12, 2015
Program Flex-CTC-79601

Kenneth Martin
PO Box 588500,  Bldg. G
Elk Grove, CA  95758

State of California-Health and Human Services Agency

California Department of Public Health
Licensing and Certification Program

# PROGRAM FLEXIBILITY

Facility:     California Correctional Health Care Facility CTC  License # 550002338

Address:     707 S. Austin Road

Stockton, CA                                                                    ZIP:  95215

Administrator:  Bob Edwards, Jr                                         Date: 2-12-2015

Subject: Program flexibility is requested for Section:     79601 (a) (6)          Title 22, California Code of Regulations.

Proposed alternate method(s) for meeting the intent of the regulations is;

This Program Flexibility request pursuant to Section 79893 of Title 22, Chapter 12 is being submitted on behalf of the California Health Care Facility (CHCF) Correctional Treatment Center (CTC) License # 550002338.

SEE ATTACHED WORD DOCUMENT AS FULL TEXT DOES NOT FIT THIS DOCUMENT.

CDPH 5000 (4/08)

Facility:        Correctional Health Care Facility (CHCF) Correctional Treatment Center License
#550002338

Address:          707 S Austin Road
                  Stockton, CA 95215

CTC Administrator:    Bob Edwards, Jr.


**This Program Flexibility Request is associated with the attached official CDPH 5000 form "Program Flexibility."**

Section 79601, Physician Services - General Requirements of the California Code of Regulations (CCR) stipulates the following:

(a) "Physician services shall include, but not be limited to:
(6) Health record progress notes at least every three days or more often as the inmate-patient's condition requires. A progress note will be documented on each visit by the attending physician. "


CHCF provides both medical and mental health services at the acute and non-acute level to the patient population.

For inmate-patients admitted for medical services, CHCF proposes the following:

Patients requiring medical services, upon admission to the CTC who have been designated as Long Term Care (LTC) inmate-patients, those who stay will be longer than 30 days, a progress note will be written at a minimum of every seven (7) days if the licensed independent practitioner (LIP) determines their condition is stable. An order shall be written by the LIP in the patient's health record indicating the patient is long term care. A nursing note shall be written daily. A progress note shall be written on each visit by the LIP or as the patient's condition changes. If the LIP determines the patient is no longer considered a LTC patient, a progress note shall be written at a minimum of every three (3) days or as the patient's condition requires.

Patients requiring medical services who have not been designated as LTC shall receive a progress note at a minimum of every three (3) days or more often as the patient's condition requires. If the LIP determines the patient is LTC, an order shall be written in the patient's health record and progress notes shall be written every seven (7) days or more often as the patient's condition requires. A daily nursing note shall be written.

The facility will maintain a list of those patients designated as LTC.   Random monthly reviews shall be conducted by the Medical Director or designee to ensure compliance with this program flex.

1

For patients admitted under the Mental Health Treatment optional service designated as acute, with an anticipated length of stay of 10 days or less, no program flex is requested.

For patients admitted under the Mental Health Treatment optional service designated as acute, with an anticipated length of stay of greater than 30 days, a progress note shall be written at a minimum every three (3) days or as the patient's condition requires for the first 30 days.  If the patient's condition is determined to be stable, a progress note shall be written at a minimum of every seven (days) or as the patient condition requires.   At a minimum, a daily nursing note shall be written.

For patients admitted under the Mental Health Treatment optional service designated as non-acute, with an anticipated length of stay of greater than 30 days, a progress note shall be written at a minimum every three (3) days or as the patient's condition requires for the first 30 days.  If the patient's condition is determined to be stable, a progress note shall be written at a minimum of every seven (days) or as the patient condition requires.   At a minimum, a daily nursing note shall be written.

A list of patients receiving mental health treatment services shall be maintained for those determined to meet criteria for a minimum of every seven (7) day note.  A random monthly audit shall be conducted by the Clinical Director or designee to ensure compliance with this program flex.

For all patients should the patients have any sudden or marked adverse changes in signs, symptoms or behavior exhibited by a patient the LIP will document more often as as needed.

Nursing staff shall document on each patient on a daily basis and notify the attending LIP in compliance with CCR Title 22, Section 79627, Nursing Services General Requirements.

State of California—Health and Human Services Agency

# California Department of Public Health



**RON CHAPMAN, MD, MPH**
*Director & State Health Officer*

**EDMUND G. BROWN JR.**
*Governor*

February 12, 2015

Robert Edwards, Jr., Administrator
Correctional Health Care Facility,
Correctional Treatment Center, Stockton
707 S. Austin Road
Stockton, CA 95215

Dear Mr. Edwards:

This is in response to your request for program flexibility for California Code of Regulations (CCR), Title 22, § 79601, Physician Services regarding provider progress notes in inmate-patient's medical records.

Pursuant to §1276(b) of the Health and Safety Code, you request for program flexibility is approved with the following conditions:

1. Patients requiring medical services, upon admission to the CTC who have been designated as Long Term Care (LTC) inmate-patients, those who stay will be longer than 30 days, a progress note will be written at a minimum of every seven (7) days if the licensed independent practitioner (LIP) determines their condition is stable. A nursing note shall be written daily. A progress note shall be written on each visit by the LIP or as the patient's condition changes. If the LIP determines the patient is no longer considered a LTC patient, a progress note shall e wr4itten at a minimum of every three (3) days or as the patient's condition requires.

2. Patients requiring medical services who have not been designated as LTC shall receive a progress note at a minimum of every three (3) days or more often as the patient's condition requires. If the LIP determines the patient is LTC, an order shall be written in the patient's health record and progress notes shall be written every seven (7) days or more often as the patient's condition requires. A daily nursing note shall be written.

3. The facility will maintain a list of those patients designated as LTC. Random monthly reviews shall be conducted by the Medical Director or designee to ensure compliance with this program flex.

February 12, 2015
Program Flex-CTC-79601

4. For patients admitted under the Mental Health Treatment optional service designated as acute, with an anticipated length of stay of 10 days or less, no program flex is requested.

5. For patients admitted under the Mental Health Treatment optional service designated as acute, with an anticipated length of stay greater than 30 days, a progress note shall be written at a minimum every three (3) days or as the patient's condition requires for the first 30 days. If the patient's condition is determined to be stable, a progress note shall be written at a minimum of every seven (7) days or as the patient condition requires. At a minimum, a daily nursing note shall be written.

6. For patients admitted under the Mental Health Treatment optional service designated as non-acute, with an anticipated length of stay of greater than 30 days, a progress note shall be written at a minimum every three (3) days or as the patient's condition requires for the first 30 days. If the patient's condition is determined to be stable, a progress note shall be written at a minimum of every seven (7) days or as the patient's condition requires. At a minimum, a daily nursing note shall be written.

7. A list of patients receiving mental health treatment services shall be maintained for those determined

This program flexibility approval shall remain in effect until revoked by the department.

In accordance with California Code of Regulations (CCR), Title 22, § 79593(a) Program Flexibility. Any approval granted by the Department pursuant to this Section, or a true copy thereof, shall be posted immediately adjacent to the facility's license required to be posted by CCR, Title22, Section 79589.

Sincerely,

*For* Colleen Reeves, HFEMII, Chief
Licensing and Certification Program
State Facilities Section

cc:    Robert Ussher, HFES (Acting)
       625 E. Carnegie Drive, Suite 280,
       San Bernardino, CA 92408

February 12, 2015
Program Flex-CTC-79601

Lea Ann Reseigne, HFEM 1
625 E. Carnegie Drive, Suite 280,
San Bernardino, CA 92408

State of California—Health and Human Services Agency
# California Department of Public Health



**TOMÁS J. ARAGÓN, M.D., Dr.P.H.**
*State Public Health Officer & Director*

**GAVIN NEWSOM**
*Governor*

Jan 20, 2023

Shannon Magnuson
SALINAS VALLEY CORRECTIONAL TREATMENT CENTER
31625 Highway 101 S
Soledad, CA 93960

**APPROVAL OF PROGRAM FLEXIBILITY**

Dear Shannon Magnuson,

This letter is in response to the request submitted by **SALINAS VALLEY CORRECTIONAL TREATMENT CENTER** for program flexibility for California Code of Regulations T22 DIV5 CH12 ART3-79601(a)(6).

The alternative means of compliance with T22 DIV5 CH12 ART3-79601(a)(6) include

Requesting flexibility to the frequency of health records progress notes. For both acute and non-acute Mental Health Treatment patients, with an anticipated stay over 30 days, the mental health clinician will write a progress note at the minimum every 3 days or more frequently as the patient's condition for the first 30 days. For stable patients, the mental health clinician will write a progress note at the minimum every 7 days. The medical provider will write a progress note at least every 30 days. Daily nursing notes will continue.

For stable patients admitted primarily for medical services, the provider will complete a progress note every seven days for patients with an expected length of stay of 30 days or less. For unstable patients, a progress note will be written every three days. For stable patients with an anticipated length of stay of 30 days or more a progress note will be written every seven days for the first 30 days. If the patient remains stable, a progress note will be written every fourteen days or more frequently as needed. A list of patients who are currently receiving medical treatment services and



the frequency of progress notes will be maintained. If a patient has any sudden or marked adverse changes in signs, symptoms or behavior clinical assessments will be provided and documented as needed. Nursing staff will continue to document as required by policy and Title 22 requirements.

Your request for program flexibility of **T22 DIV5 CH12 ART3-79601(a)(6)** is approved under the following conditions:

1. The facility will provide leadership oversight for patients admitted to Mental Health Treatment Program and medical services and make decisions in the best interest of the patients.

2. The facility will ensure that patients admitted primarily for Mental Health Treatment program, designated as acute, with an anticipated length of stay of 10 days or less, progress notes will remain at three (3) day progress notes for all patients.

3. The facility will ensure for acute and non-acute patients admitted under the Mental Health Treatment program, with an anticipated length of stay greater than 30 days, a progress note will be written by the mental health provider at a minimum of every three (3) days or as the patient's condition requires for the first 30 days. If the patient's condition is determined to be stable, a progress note will be written by the mental health provider at a minimum of every seven (7) days or as the patient's condition requires. A progress note will be written by the medical provider every 30 days. At a minimum, a daily nursing note will be written.

4. The facility will ensure for patients admitted primarily for medical services and have an expected length of stay of 30 days or less, after the admission examination is completed, a progress note will be completed every seven (7) days if the patient is determined to be stable. If the patient is determined not to be stable, a progress note will be completed every three (3) days.

5. The facility will ensure for patients admitted primarily for medical services, with an anticipated length of stay of greater than 30 days and who have been determined to be stable, a progress note will be completed every seven (7) days for the first 30 days and then if the patient continues to be stable, a progress note will be written every fourteen (14) days or as the patient's condition requires. At a minimum, a daily nursing note will be written.

6. The facility will ensure for all patients, should the patient have any sudden or marked adverse changes in signs, symptoms or behavior exhibited, the medical provider will document more often as needed. A progress note will be written by the medical provider following each contact of service.

7. Daily monitoring and tracking mechanisms via automated registry will remain in place for both mental health treatment and medical patients to ensure compliance with the aforementioned parameters in this flex.



8. The facility will ensure nursing staff will document as required by policy and notify the attending provider in compliance with CCR Title 22, Section 79627, and Nursing Services General Requirements.

9. The facility will notify the California Department of Public Health for any requested changes to these approval conditions.

Either this letter or a true copy thereof shall be posted immediately adjacent to the facility's license.

This approval shall remain in effect from Nov 20, 2022 until Nov 19, 2025.

**NOTE:** The Department may revoke the program flexibility if the licensee does not comply with the conditions set forth in the approval or if the department determines the proposed alternative does not adequately meet the intent of the regulations.

If you have any questions, please contact Centralized Program Flex Unit at (916) 323-5053 or by email at CentralizedProgramFlex@cdph.ca.gov.

Sincerely,

Sevrine A. Banks, Program Manager
Centralized Program Flex Unit



## General ✓

Facility:  SALINAS VALLEY CORRECTIONAL TREATMENT CENTER

District: State Facilities Section

Facility Number: 170001892

Facility Type: CTC

License ID: 170000844

Phone Number: 8316785500

County Name: MONTEREY

Address: 31625 Highway 101 S, Soledad, CA 93960

**Applicant Details:**

Name:  Shannon Magnuson

Email:  shannon.magnuson@cdcr.ca.gov

## Program Flexibility Application ✓

**Please do not include any patient identifying or personnel information in your application. The information in your application is considered public information and may be disclosed as part of a public records act request.**

Contact Details

Please provide the applicant's direct number should the Centralized Program Flex Unit have any questions regarding your application.

Applicant Contact Number
9166915888

Duration of Request

Requested Start Date
11/20/2022

Requested End Date
11/20/2023

**Specify Type of Request**
Non-Emergency

- **Physician Services--General Requirements, T22 DIV5 CH12 ART3-79601(a)(6)**

Effective January 1, 2023, HSC 1276 (e) and (f) references a new category for a program flexibility request, for a **general acute care hospital (GACH)**, that allows the facility to designate a bed, or beds, in a critical care unit as requiring a lower level of care.

Is this request related to a GACH designating a bed, or beds, in a critical care unit as requiring a lower level of care?

No

Specify Area of Flex

 Records/Documentation

**Request Description**

Requesting flexibility as it pertains to the frequency of health records progress notes in the licensed CTC.

### JUSTIFICATION

Describe why program flexibility is needed.

CDCR/CCHCS have current processes in place to evaluate and assess a patient's condition at various intervals throughout their length of stay. It is requested that CDPH allow the organization to continue with these processes to ensure that documentation requirements be consistent and dictated by the patient's length of stay and condition.

## ALTERNATIVE CONCEPT

Describe the proposed alternate method for meeting the intent of the regulation. Include the alternate concepts, methods, procedures, techniques, equipment, personnel qualifications, or the conducting of pilot projects. Include a description of the provisions for safe and adequate care so that the proposed alternative does not compromise patient care.

For patients admitted under the Mental Health Treatment program, designated as acute, with an anticipated length of stay of 10 days or less, program flexibility is not provided.

For patients admitted under the Mental Health Treatment program, designated as acute, with an anticipated length of stay greater than 30 days, a progress note shall be written by the mental health clinician at a minimum of every three (3) days or as the patient's condition requires for the first 30 days. If the patient's condition is determined to be stable, a progress note shall be written by the mental health clinician at a minimum of every seven (7) days or as the patient's condition requires. A progress note shall be written by the medical provider every 30 days. At a minimum, a daily nursing note shall be written.

For patients admitted under the Mental Health Treatment program, designated as non-acute, with an anticipated length of stay greater than 30 days, a progress note shall be written a by the mental health clinician a minimum of every three (3) days or as the patient's condition requires for the first 30 days. If the patient's condition is determined to be stable, a progress note shall be written by the mental health clinician at a minimum of every seven (7) days or as the patient's condition requires. A progress note shall be written by the medical provider every 30 days. At a minimum, a daily nursing note shall be written.

For patients admitted primarily for medical services and have an expected length of stay of 30 days or less, after the admission examination is completed, a progress note shall be completed every seven (7) days if the patient is determined to be stable. If the patient is determined not to be stable, a progress note shall be completed every three (3) days.

For patients admitted primarily for medical services with an anticipated length of stay of greater than 30 days and who have been determined to be stable, a progress note shall be completed every seven (7) days for the first 30 days and then if the patient continues to be stable, a progress note shall be written every fourteen (14) days or as the patient's condition requires. At a minimum, a daily nursing note shall be written.

Daily monitoring and tracking mechanisms via automated registry remains in place to ensure compliance with the aforementioned parameters in this flex.

For all patients, should the patient have any sudden or marked adverse changes in signs, symptoms or behavior exhibited, the provider will document more often as needed. A progress note shall be written by the clinician following each contact of service.

Nursing staff shall document on each patient as required by policy and notify the attending provider in compliance with CCR Title 22 Section 79627, and Nursing Services General Requirements

**Additional Information**

**Provide any additional information as desired.**

—

Please attach any supporting documentation for the request. More than one document may be uploaded here.

*No Attachment*

**Revise and Update**

**Add updates to the original application.**

Previous versions of this flex were submitted to CDPH approved. Last approval is dated 11/19/22.

I agree to submit this application and certify under penalty of perjury that my answers are correct and complete to the best of my knowledge. I also certify that:

- I understand the questions and statements on this application.

- I understand the penalties for giving false information.

- I understand that this acknowledgment has the same legal effect and can be enforced in the same way as a written signature.

- I am authorized to submit this application on behalf of the licensee.

- This application does not include any patient identifying or personnel information.

This Information provided on this form is mandatory and is necessary for waiver approval. It will be used to determine whether to approve the request for a waiver. **The information in your application is considered public information and may be disclosed as part of a public records act request.**

☑  **I acknowledge and agree to the above Terms of Acceptance**

April 5. 2021

Edwin Hoffmark, District Manager
California Department of Public Health
2170 Northpoint Parkway
Santa Rosa, CA 95407

Dear Mr. Hoffmark,

RE: Salinas Valley Correctional Treatment Center (SVSP), CTC License
#17000844     Program Flexibility Request

Please find the attached CDPH 5000 Program Flexibility request form requesting flex
related to Section 79601 (a) (6). The specifics of the request is on a separate Word
document as it would not fit in its entirety on the CDPH Form 5000.

California Department of Corrections and Rehabilitation (CDCR) and the California
Correctional Healthcare Services (CCHCS) are formally requesting a review and
approval of this request. The requested flex for patients admitted primarily for medical
services is the same as the request and approval from December 2019 for SVSP, San
Quentin State Prison (SQ), California Health Care Facility (CHCF), California
Institution for Women (CIW), and California Medical Facility (CMF).



This updated request adds specifics for patients primarily admitted for mental health
services inadvertently not requested when program flex was submitted and approved
in December 2019. This updated request for patients admitted for mental health
services is similar to previously approved program flexes approved for SVSP, SQ,
CHCF, CIW, and CMF.

This cover letter and original request shall be sent to your office via GSO.

If you require additional questions, please feel free to contact me at (916) 691-2852 or
via email at Kenneth.Martin@cdcr.ca.gov.

If possible, please send approval to my office.

Sincerely,

**Kenneth Ray Martin**
Associate Director, Licensing and Compliance
Corrections Services, CCHCS
PO BOX 588500
Elk Grove, CA  95758

Name
Date
Page 2


CC:    Gregory Padilla, SVSP Institution CEO
       Sarah Sawyer, CTC Administrator
       Tammy Foss, Director, Corrections Services
       Joseph (Jason) Williams, Deputy Director, Correction Services
       Jackie Clark, Deputy Director, Institution Operations
       Dr. Renee Kanan, Deputy Director, Medical Services
       Barbara Barney-Knox, Deputy Director, Statewide Chief Nurse Executive
       Amar Mehta, Deputy Director, Statewide Mental Health Program
       Dr. Joseph Bick, Director, Health Care Services



Print Form

# PROGRAM FLEXIBILITY

Facility:      Salinas Valley Correctional Treatment Center (SVSP) #17000844

Address:     31625 Highway 101 S

                Soledad, CA                                                                ZIP: 93960

Administrator:  Sarah Sawyer                                                       Date: 4/5/2021

Subject: Program flexibility is requested for Section: Section 79601 (a)          Title 22, California Code of Regulations.

Proposed alternate method(s) for meeting the intent of the regulations is;

This program flexibility request pursuant to Section 79593 of Title 22, Chapter 22 is being submitted on behalf of SVSP CTC

##17000844

The specifics of the request is on a separate Word document as it would not fit in its entirety on the CDPH Form 5000, see attached.

Facility:           Salinas Valley Correctional Treatment Center

                     Correctional Treatment Center (CTC) License #17000844

Date:             April 5, 2021

Address:         31625 Highway 101 S

                     Soledad, CA 93960

CTC Administrator: Sarah Sawyer, CTC Administrator

**This Program Flexibility Request is associated with the official CDPH 5000 form, "Program Flexibility" as the request cannot fit in the form in its entirety.**

Section 79601 related to Section 79597 Required Services for all CTCs, Physician Services-general Requirements of the California Code of Regulations (CCR) stipulates the following:

(a) "Physician services shall include, but not be limited to:

(6) Health record progress notes at least every three days or more often as the inmate-patient's condition requires. A progress note will be documented on each visit by the attending physician."

SVSP provides both medical and mental health services (approved optional service per section 79703) at the acute and non-acute levels to the patient population (sections 79743 – 79759).

For inmate-patients admitted under the Mental Health Treatment optional service designated as acute, with an anticipated length of stay of 10 days or less, no program flex is requested.

For inmate patients admitted under the Mental Health Treatment optional service designated as acute, with an anticipated length of stay greater than 30 days, a progress note shall be written at a minimum of every three (3) days or as the inmate-patient's condition requires for the first 30 days. If the inmate-patient's condition is determined to be stable, a progress note shall be written at a minimum of every seven (7) days or as the inmate-patient's condition requires. At a minimum, a daily nursing note shall be written.

For inmate-patients admitted under the Mental Health Treatment optional service designated as non-acute, with an anticipated length of stay of greater than 30 days, a progress note shall be written at a minimum of every three (3) days or as the inmate-patient's condition requires for the first 30 days. If the inmate-patient's condition is determined to be stable, a progress note shall be written at a minimum of every seven (7) days or as the inmate-patient's condition requires. At a minimum, a daily nursing note shall be written.

For inmate-patients admitted primarily for medical services and have an expected length of stay of 30 days or less, after the admission examination is completed, a progress note shall be completed every seven (7) days if the inmate-patient is determined to be stable. If the inmate-patient is determined not to be stable, a progress note shall be completed every three (3) days.

1

For inmate-patients admitted primarily for medical services, with an anticipated length of stay of greater than 30 days and who have been determined to be stable, a progress note shall be completed every seven (7) days for the first 30 days and then if the inmate-patient continues to be stable, a progress note shall be written every fourteen (14) days or as the inmate-patient's condition requires. At a minimum, a daily nursing note shall be written.

A list of inmate-patients receiving medical/mental health treatment services shall be maintained for those determined to meet criteria for a minimum of every seven (7) and/or fourteen (14) day notes, as appropriate. A random monthly audit shall be conducted by the Clinical Director or designee to ensure compliance with this Program Flex.

For all inmate-patients, should the inmate-patient have any sudden or marked adverse changes in signs, symptoms or behavior exhibited, the provider will document more often as needed. A progress note shall be written by the clinician following each contact of service.

Nursing staff shall document on each inmate-patient as required by policy and notify the attending provider in compliance with CCR Title 22, Section 79627, and Nursing Services General Requirements.

2



State of California -- Health and Human Services Agency
## California Department of Public Health



**SONIA Y. ANGELL, MD, MPH**
*State Public Health Officer & Director*

**GAVIN NEWSOM**
*Governor*

December 10, 2019

Sarah Sawyer
SALINAS VALLEY CORRECTIONAL TREATMENT CENTER
31625 Highway 101 S
Soledad, CA. 93960

**APPROVAL OF PROGRAM FLEXIBILITY**

Dear Sarah Sawyer:

This letter is in response to the request submitted by SALINAS VALLEY
CORRECTIONAL TREATMENT CENTER for program flexibility for California Code of
Regulations Title 22 (CCR) section T22 DIV5 CH12 ART3-79601(a)(6).

The alternative means of compliance with Title 22 CCR section T22 DIV5 CH12 ART3-
79601(a)(6) include compliance with the conditions set forth in the following section.

Your request for program flexibility of Title 22 CCR T22 DIV5 CH12 ART3-79601(a)(6)
is approved under the following conditions:

1. For inmate-patients admitted primarily for mental health services, no Program
   Flexibility is requested and will remain at three (3) day progress notes.

2. For inmate-patients admitted primarily for medical services and have an
   expected length of stay of 30 days or less, after the admission examination is
   completed, a progress note shall be completed every seven (7) days if the
   inmate-patient is determined to be stable. If the inmate-patient is determined not
   to be stable, a progress note shall be completed every three (3) days.

3. For inmate-patients admitted primarily for medical services, with an anticipated
   length of stay of greater than 30 days and who have been determined to be
   stable, a progress note shall be completed every seven (7) days for the first 30
   days and then if the inmate-patient continues to be stable, a progress note shall
   be written every fourteen (14) days or as the inmate-patient's condition requires.
   At a minimum, a daily nursing note shall be written.

4. A list of inmate-patients receiving medical treatment services shall be
   maintained for those determined to meet criteria for a minimum of every seven
   (7) and fourteen (14) day notes, as appropriate. A random monthly audit shall
   be conducted by the Clinical Director or designee to ensure compliance with this
   Program Flex.

---



Administrator
Page 2

5. For all inmate-patients, should the inmate-patient have any sudden or marked adverse changes in signs, symptoms or behavior exhibited, the provider will document more often as needed. A progress note shall be written by the clinician following each contact of service.

6. Nursing staff shall document on each inmate-patient as required by policy and notify the attending provider in compliance with CCR Title 22, Section 79627, and Nursing Services General Requirements.

Either this letter or a true copy thereof shall be posted immediately adjacent to the facility's license.

This approval shall remain in effect from 11/20/2019 until 11/19/2022.

**NOTE:** The Department may revoke the program flexibility if the licensee does not comply with the conditions set forth in the approval or if department determines the proposed alternative does not adequately meet the intent of the regulations.

If you have any questions, please contact Edwin Hoffmark, HFEM II at (855) 804-4205 or by email at Edwin.Hoffmark@cdph.ca.gov.

Sincerely,

Edwin Hoffmark, HFEM II, District Manager
State Facilities Section

State of California—Health and Human Services Agency

# California Department of Public Health

**KAREN SMITH, MD, MPH**
*Director & State Health Officer*

**EDMUND G. BROWN JR.**
*Governor*

March 17, 2017

Sarah Sawyer, Administrator
Salinas Valley State Prison
Correctional Treatment Center
31625 Highway 101 S,
Soledad, CA 93960

Dear Ms. Sawyer:

This is in response to your request for program flexibility for California Code of Regulations (CCR), Title 22, § 79601, Physician Services regarding provider progress notes in inmate-patient's medical records.

Pursuant to §1276(b) of the Health and Safety Code, you request for program flexibility is approved with the following conditions:

1.      For patients admitted to the CTC under either the Medical Services or the Mental Health Treatment optional service designated as acute, with an anticipated length of stay of 30 days or less, Title 22, § 79601, Physician Services-shall be followed.

2.      For patients admitted to the CTC under either the Medical Services or the Mental Health Treatment optional service designated as acute, with an anticipated length of stay greater than 30 days, a progress note shall be written at a minimum every three (3) days or as the patient's condition requires for the first 30 days. If the patient's condition is determined to be stable, a progress note shall be written at a minimum of every seven (7) days or as the patient condition requires. At a minimum, a daily nursing note shall be written.

3.      For patients admitted to the CTC under either the Medical Services or the Mental Health Treatment optional service designated as non-acute, with an anticipated length of stay of greater than 30 days, a progress note shall be written at a minimum every three (3) days or as the patient's condition requires for the first 30 days. If the patient's condition is determined to be stable, a progress note shall be written at a minimum of every seven (7) days or as the patient's condition requires. At a minimum, a daily nursing note shall be written.

4.    The facility will maintain a list of those patients designated as LTC. Random monthly reviews shall be conducted by the Medical Director or designee to ensure compliance with this program flex.

This program flexibility approval shall remain in effect until revoked by the department.

In accordance with California Code of Regulations (CCR), Title 22, § 79593(a) Program Flexibility.  Any approval granted by the Department pursuant to this Section, or a true copy thereof, shall be posted immediately adjacent to the facility's license required to be posted by CCR, Title22, § 79589.

Sincerely,

for Lea Ann Reseigne, HFEMII, Chief
Licensing and Certification Program
State Facilities Section


cc:    Kenneth Martin
       PO Box 588500,  Bldg. G
       Elk Grove, CA  95758

State of California—Health and Human Services Agency

## California Department of Public Health



**TOMÁS J. ARAGÓN, M.D., Dr.P.H.**
*State Public Health Officer & Director*

**GAVIN NEWSOM**
*Governor*

Jan 09, 2023

Anita Rangel
CALIFORNIA INSTITUTION FOR WOMEN CTC
16756 Chino Corona Rd
Corona, CA 92880

**APPROVAL OF PROGRAM FLEXIBILITY**

Dear Anita Rangel,

This letter is in response to the request submitted by **CALIFORNIA INSTITUTION FOR WOMEN CTC** for program flexibility for California Code of Regulations T22 DIV5 CH12 ART3-79601(a)(6).

The alternative means of compliance with T22 DIV5 CH12 ART3-79601(a)(6) include

Requesting flexibility to the frequency of health records progress notes. For both acute and non-acute Mental Health Treatment patients, with an anticipated stay over 30 days, the mental health clinician will write a progress note at the minimum every 3 days or more frequently as the patient's condition for the first 30 days. For stable patients, the mental health clinician will write a progress note at the minimum every 7 days. The medical provider will write a progress note at least every 30 days. Daily nursing notes will continue.

For stable patients admitted primarily for medical services, the provider will complete a progress note every seven days for patients with an expected length of stay of 30 days or less. For unstable patients, a progress note will be written every three days. For stable patients with an anticipated length of stay of 30 days or more a progress note will be written every seven days for the first 30 days. If the patient remains stable, a progress note will be written every fourteen days or more frequently as needed. A list of patients who are currently receiving medical treatment services and the frequency of progress notes will be maintained. If a patient has any sudden or marked adverse

---

**Center for Health Care Quality**
Centralized Program Flex Unit (CPFU)
P.O. Box 997377 MS 3405 Sacramento, CA 95899-7377
e-mail: CentralizedProgramFlex@cdph.ca.gov



changes in signs, symptoms or behavior clinical assessments will be provided and documented as needed. Nursing staff will continue to document as required by policy and Title 22 requirements.

Your request for program flexibility of **T22 DIV5 CH12 ART3-79601(a)(6)** is approved under the following conditions:

1. The facility will provide leadership oversight for patients admitted to Mental Health Treatment Program and medical services and make decisions in the best interest of the patients.

2. The facility will ensure that patients admitted primarily for Mental Health Treatment program, designated as acute, with an anticipated length of stay of 10 days or less, progress notes will remain at three (3) day progress notes for all patients.

3. The facility will ensure for acute and non-acute patients admitted under the Mental Health Treatment Program, with an anticipated length of stay greater than 30 days, a progress note will be written by the mental health provider at a minimum of every three (3) days or as the patient's condition requires for the first 30 days. If the patient's condition is determined to be stable, a progress note will be written by the mental health provider at a minimum of every seven (7) days or as the patient's condition requires. A progress note will be written by the medical provider every 30 days. At a minimum, a daily nursing note will be written.

4. The facility will ensure for patients admitted primarily for medical services and have an expected length of stay of 30 days or less, after the admission examination is completed, a progress note will be completed every seven (7) days if the patient is determined to be stable. If the patient is determined not to be stable, a progress note will be completed every three (3) days.

5. The facility will ensure for patients admitted primarily for medical services, with an anticipated length of stay of greater than 30 days and who have been determined to be stable, a progress note will be completed every seven (7) days for the first 30 days and then if the patient continues to be stable, a progress note will be written every fourteen (14) days or as the patient's condition requires. At a minimum, a daily nursing note will be written.

6. The facility will ensure for all patients, should the patient have any sudden or marked adverse changes in signs, symptoms or behavior exhibited, the medical provider will document more often as needed. A progress note will be written by the medical provider following each contact of service.

7. Daily monitoring and tracking mechanisms via automated registry will remain in place for both mental health treatment and medical patients to ensure compliance with the aforementioned parameters in this flex.



8. The facility will ensure nursing staff will document as required by policy and notify the attending provider in compliance with CCR Title 22, Section 79627, and Nursing Services General Requirements.

9. The facility will notify the California Department of Public Health for any requested changes to these approval conditions.

Either this letter or a true copy thereof shall be posted immediately adjacent to the facility's license.

This approval shall remain in effect from Nov 20, 2022 until Nov 20, 2025.

**NOTE:** The Department may revoke the program flexibility if the licensee does not comply with the conditions set forth in the approval or if the department determines the proposed alternative does not adequately meet the intent of the regulations.

If you have any questions, please contact Centralized Program Flex Unit at (916) 323-5053 or by email at CentralizedProgramFlex@cdph.ca.gov.

Sincerely,

Sevrine A. Banks, Program Manager
Centralized Program Flex Unit



## General ✓

Facility:  CALIFORNIA INSTITUTION FOR WOMEN CTC

District: State Facilities Section

Facility Number: 630010940

Facility Type: CTC

License ID: 550000235

Phone Number: 9514030580

County Name: RIVERSIDE

Address: 16756 Chino Corona Rd, Corona, CA 92880

**Applicant Details:**

Name:  Anita Rangel

Email:  anita.rangel@cdcr.ca.gov

## Program Flexibility Application ✓

**Please do not include any patient identifying or personnel information in your application. The information in your application is considered public information and may be disclosed as part of a public records act request.**

**Contact Details**

Please provide the applicant's direct number should the Centralized Program Flex Unit have any questions regarding your application.

**Applicant Contact Number**
9166914804

**Duration of Request**

**Requested Start Date**
11/20/2022

**Requested End Date**
11/20/2023

**Specify Type of Request**
Non-Emergency

- **Physician Services--General Requirements, T22 DIV5 CH12 ART3-79601(a)(6)**

Effective January 1, 2023, HSC 1276 (e) and (f) references a new category for a program flexibility request, for a **general acute care hospital (GACH)**, that allows the facility to designate a bed, or beds, in a critical care unit as requiring a lower level of care.

Is this request related to a CACH designating a bed, or beds, in a critical care unit as requiring a lower level of care?

No

**Specify Area of Flex**

 Records/Documentation

**Request Description**

Requesting flexibility as it pertains to the frequency of health records progress notes in the licensed CTC.

**JUSTIFICATION**

**Describe why program flexibility is needed.**

For patients admitted under the Mental Health Treatment program, designated as acute, with an anticipated length of stay of 10 days or less, program flexibility is not provided.

For patients admitted under the Mental Health Treatment program, designated as acute, with an anticipated length of stay greater than 30 days, a progress note shall be written by the mental health clinician at a minimum of every three (3) days or as the patient's condition requires for the first 30 days. If the patient's condition is determined to be stable, a progress note shall be written by the mental health clinician at a minimum of every seven (7) days or as the patient's condition requires. A progress note shall be written by the medical provider every 30 days. At a minimum, a daily nursing note shall be written.

For patients admitted under the Mental Health Treatment program, designated as non-acute, with an anticipated length of stay greater than 30 days, a progress note shall be written a by the mental health clinician a minimum of every three (3) days or as the patient's condition requires for the first 30 days. If the patient's condition is determined to be stable, a progress note shall be written by the mental health clinician at a minimum of every seven (7) days or as the patient's condition requires. A progress note shall be written by the medical provider every 30 days. At a minimum, a daily nursing note shall be written.

For patients admitted primarily for medical services and have an expected length of stay of 30 days or less, after the admission examination is completed, a progress note shall be completed every seven (7) days if the patient is determined to be stable. If the patient is determined not to be stable, a progress note shall be completed every three (3) days.

For patients admitted primarily for medical services with an anticipated length of stay of greater than 30 days and who have been determined to be stable, a progress note shall be completed every seven (7) days for the first 30 days and then if the patient continues to be stable, a progress note shall be written every fourteen (14) days or as the patient's condition requires. At a minimum, a daily nursing note shall be written.

Daily monitoring and tracking mechanisms via automated registry remains in place to ensure compliance with the aforementioned parameters in this flex.

For all patients, should the patient have any sudden or marked adverse changes in signs, symptoms or behavior exhibited, the provider will document more often as needed. A progress note shall be written by the clinician following each contact of service.

Nursing staff shall document on each patient as required by policy and notify the attending provider in compliance with CCR Title 22 Section 79627, and Nursing Services General Requirements

## ALTERNATIVE CONCEPT

**Describe the proposed alternate method for meeting the intent of the regulation. Include the alternate concepts, methods, procedures, techniques, equipment, personnel qualifications, or the conducting of pilot projects. Include a description of the provisions for safe and adequate care so that the proposed alternative does not compromise patient care.**

For patients admitted under the Mental Health Treatment program, designated as acute, with an anticipated length of stay of 10 days or less, program flexibility is not provided.

For patients admitted under the Mental Health Treatment program, designated as acute, with an anticipated length of stay greater than 30 days, a progress note shall be written by the mental health clinician at a minimum of every three (3) days or as the patient's condition requires for the first 30 days. If the patient's condition is determined to be stable, a progress note shall be written by the mental health clinician at a minimum of every seven (7) days or as the patient's condition requires. A progress note shall be written by the medical provider every 30 days. At a minimum, a daily nursing note shall be written.

For patients admitted under the Mental Health Treatment program, designated as non-acute, with an anticipated length of stay greater than 30 days, a progress note shall be written a by the mental health clinician a minimum of every three (3) days or as the patient's condition requires for the first 30 days. If the patient's condition is determined to be stable, a progress note shall be written by the mental health clinician at a minimum of every seven (7) days or as the patient's condition requires. A progress note shall be written by the medical provider every 30 days. At a minimum, a daily nursing note shall be written.

For patients admitted primarily for medical services and have an expected length of stay of 30 days or less, after the admission examination is completed, a progress note shall be completed every seven (7) days if the patient is determined to be stable. If the patient is determined not to be stable, a progress note shall be completed every three (3) days.

For patients admitted primarily for medical services with an anticipated length of stay of greater than 30 days and who have been determined to be stable, a progress note shall be completed every seven (7) days for the first 30 days and then if the patient continues to be stable, a progress note shall be written every fourteen (14) days or as the patient's condition requires. At a minimum, a daily nursing note shall be written.

Daily monitoring and tracking mechanisms via automated registry remains in place to ensure compliance with the aforementioned parameters in this flex.

For all patients, should the patient have any sudden or marked adverse changes in signs, symptoms or behavior exhibited, the provider will document more often as needed. A progress note shall be written by the clinician following each contact of service.

Nursing staff shall document on each patient as required by policy and notify the attending provider in compliance with CCR Title 22 Section 79627, and Nursing Services General Requirements

### Additional Information

**Provide any additional information as desired.**

Please attach any supporting documentation for the request. More than one document may be uploaded here.

 [CIW P&Ps Progres Notes.pdf](#)
Date Attached: Nov 14, 2022

 [2021-09-27_CIW Program Flex Progress Notes (79601) CDPH APPROVAL EXP 11-19-2022.pdf](#)
Date Attached: Nov 14, 2022

**Revise and Update**

Add updates to the original application.

Previous versions of this flex were submitted to CDPH approved. Last approval is dated 09-27-2021.

I agree to submit this application and certify under penalty of perjury that my answers are correct and complete to the best of my knowledge. I also certify that:

- I understand the questions and statements on this application.

- I understand the penalties for giving false information.

- I understand that this acknowledgment has the same legal effect and can be enforced in the same way as a written signature.

- I am authorized to submit this application on behalf of the licensee.

- This application does not include any patient identifying or personnel information.

This Information provided on this form is mandatory and is necessary for waiver approval. It will be used to determine whether to approve the request for a waiver. **The information in your application is considered public information and may be disclosed as part of a public records act request.**

☑ I acknowledge and agree to the above Terms of Acceptance

April 5. 2021

Edwin Hoffmark, District Manager
California Department of Public Health
2170 Northpoint Parkway
Santa Rosa, CA  95407

Dear Mr. Hoffmark,

RE:    California Institution for Women (CIW), CTC License # 550000235
          Program Flexibility Request

Please find the attached CDPH 5000 Program Flexibility request form requesting flex related to Section 79601(a) (6).   The specifics of the request is on a separate Word document as it would not fit in its entirety on the CDPH Form 5000.

California Department of Corrections and Rehabilitation (CDCR) and the California Correctional Healthcare Services (CCHCS) are formally requesting a review and approval of this request.  The requested flex for patients admitted primarily for medical services is the same as the request and approval from December 2019 for SVSP, San Quentin State Prison (SQ), California Health Care Facility (CHCF), California Institution for Women (CIW), and California Medical Facility (CMF).

This updated request adds specifics for patients primarily admitted for mental health services inadvertently not requested when program flex was submitted and approved in December 2019.  This updated request for patients admitted for mental health services is similar to previously approved program flexes approved for SVSP, SQ, CHCF, CIW, and CMF.

This cover letter and original request shall be sent to your office via GSO.

If you require additional questions, please feel free to contact me at (916) 691-2852 or via email at Kenneth.Martin@cdcr.ca.gov.

If possible, please send approval to my office.

Sincerely,

**Kenneth Ray Martin**
Associate Director, Licensing and Compliance
Corrections Services, CCHCS
PO BOX 588500
Elk Grove, CA  95758



Name
Date
Page 2


CC:    James Elliot, Institution CEO
       Reginald Allen, CTC Administrator
       Tammy Foss, Director, Corrections Services
       Joseph (Jason) Williams, Deputy Director, Correction Services
       Jackie Clark, Deputy Director, Institution Operations
       Dr. Renee Kanan, Deputy Director, Medical Services
       Barbara Barney-Knox, Deputy Director, Statewide Chief Nurse Executive
       Amar Mehta, Deputy Director, Statewide Mental Health Program
       Dr. Joseph Bick, Director, Health Care Services



# PROGRAM FLEXIBILITY

**Facility:**   California Institution for Women (CIW) - Correctional Treatment Center (CTC) 550000235

**Address:**   California Department of Corrections and Rehabilitation

16756 Chino Corona Road,  Corona, CA                                              ZIP:   92880-9508

**Administrator:**  Reginald Allen, CSE                                          Date:  April 5, 2021

Subject: Program flexibility is requested for Section:   Section 79601(a) (6)        Title 22, California Code of Regulations.

Proposed alternate method(s) for meeting the intent of the regulations is;

---

This program flexibility request pursuant to Section 79593 of Title 22, Chapter 12 is being submitted on behalf of CIW's CTC.

The specifics of this request is on a separate Word document as it would not fit in its entirety on the CDPH Form 5000. Please see attached.

---

| | |
|---|---|
| Facility: | California Institution for Women (CIW) |
| | Correctional Treatment Center (CTC) License # 550000235 |
| Date: | April 5, 2021 |
| Address: | 16756 Chino Corona Road, |
| | Corona, CA 92880-9508 |
| CTC Administrator: | Reginald Allen, CSE |

**This Program Flexibility Request is associated with the official CDPH 5000 form, "Program Flexibility" as the request cannot fit in the form in its entirety.**

Section 79601 related to Section 79597, Required Services for all CTCs, Physician Services-General Requirements of the California Code of Regulations (CCR) stipulates the following:

(a) "Physician services shall include, but not be limited to:

(6) Health record progress notes at least every three days or more often as the inmate-patient's condition requires. A progress note will be documented on each visit by the attending physician."

CIW provides both medical and mental health services (approved optional service per section 79703) at the acute and non-acute levels to the patient population (sections 79743 – 79759).

For inmate-patients admitted under the Mental Health Treatment optional service designated as acute, with an anticipated length of stay of 10 days or less, no program flex is requested.

For inmate patients admitted under the Mental Health Treatment optional service designated as acute, with an anticipated length of stay greater than 30 days, a progress note shall be written at a minimum of every three (3) days or as the inmate-patient's condition requires for the first 30 days. If the inmate- patient's condition is determined to be stable, a progress note shall be written at a minimum of every seven (7) days or as the inmate-patient's condition requires. At a minimum, a daily nursing note shall be written.

For inmate-patients admitted under the Mental Health Treatment optional service designated as non-acute, with an anticipated length of stay of greater than 30 days, a progress note shall be written at a minimum of every three (3) days or as the inmate-patient's condition requires for the first 30 days. If the inmate-patient's condition is determined to be stable, a progress note shall be written at a minimum of every seven (7) days or as the inmate-patient's condition requires. At a minimum, a daily nursing note shall be written.

For inmate-patients admitted primarily for medical services and have an expected length of stay of 30 days or less, after the admission examination is completed, a progress note shall be completed every seven (7) days if the inmate-patient is determined to be stable. If the inmate-patient is determined not to be stable, a progress note shall be completed every three (3) days.

For inmate-patients admitted primarily for medical services, with an anticipated length of stay of greater than 30 days and who have been determined to be stable, a progress note shall be completed

1

every seven (7) days for the first 30 days and then if the inmate-patient continues to be stable, a progress note shall be written every fourteen (14) days or as the inmate-patient's condition requires. At a minimum, a daily nursing note shall be written.

A list of inmate-patients receiving medical/mental health treatment services shall be maintained for those determined to meet criteria for a minimum of every seven (7) and/or fourteen (14) day notes, as appropriate. A random monthly audit shall be conducted by the Clinical Director or designee to ensure compliance with this Program Flex.

For all inmate-patients, should the inmate-patient have any sudden or marked adverse changes in signs, symptoms or behavior exhibited, the provider will document more often as needed. A progress note shall be written by the clinician following each contact of service.

Nursing staff shall document on each inmate-patient as required by policy and notify the attending provider in compliance with CCR Title 22, Section 79627, and Nursing Services General Requirements.



State of California -- Health and Human Services Agency
## California Department of Public Health



**SONIA Y. ANGELL, MD, MPH**
*State Public Health Officer & Director*

**GAVIN NEWSOM**
*Governor*

December 10, 2019

Melinda Lane
CALIFORNIA INSTITUTION FOR WOMEN CTC
16756 Chino Corona Rd
Corona, CA. 92880

**APPROVAL OF PROGRAM FLEXIBILITY**

Dear Melinda Lane:

This letter is in response to the request submitted by CALIFORNIA INSTITUTION FOR WOMEN CTC for program flexibility for California Code of Regulations Title 22 (CCR) section T22 DIV5 CH12 ART3-79601(a)(6).

The alternative means of compliance with Title 22 CCR section T22 DIV5 CH12 ART3-79601(a)(6) include compliance with the conditions set forth in the following section.

Your request for program flexibility of Title 22 CCR T22 DIV5 CH12 ART3-79601(a)(6) is approved under the following conditions:

1.  For inmate-patients admitted primarily for mental health services, no Program Flexibility is requested and will remain at three (3) day progress notes.

2.  For inmate-patients admitted primarily for medical services and have an expected length of stay of 30 days or less, after the admission examination is completed, a progress note shall be completed every seven (7) days if the inmate-patient is determined to be stable. If the inmate-patient is dete1mined not to be stable, a progress note shall be completed every three (3) days.

3.  For inmate-patients admitted primarily for medical services, with an anticipated length of stay of greater than 30 days and who have been determined to be stable, a progress note shall be completed every seven (7) days for the first 30 days and then if the inmate-patient continues to be stable, a progress note shall be written every fourteen (14) days or as the inmate-patient's condition requires. At a minimum, a daily nursing note shall be written.

4.  A list of inmate-patients receiving medical treatment services shall be maintained for those determined to meet criteria for a minimum of every seven (7) and fourteen (14) day notes, as appropriate. A random monthly audit shall be conducted by the Clinical Director or designee to ensure compliance with this Program Flex.

---



Administrator
Page 2

5. For all inmate-patients, should the inmate-patient have any sudden or marked adverse changes in signs, symptoms or behavior exhibited, the provider will document more often as needed. A progress note shall be written by the clinician following each contact of service.

6. Nursing staff shall document on each inmate-patient as required by policy and notify the attending provider in compliance with CCR Title 22, Section 79627, and Nursing Services General Requirements.

Either this letter or a true copy thereof shall be posted immediately adjacent to the facility's license.

This approval shall remain in effect from 11/20/2019 until 11/19/2022.

**NOTE:** The Department may revoke the program flexibility if the licensee does not comply with the conditions set forth in the approval or if the department determines the proposed alternative does not adequately meet the intent of the regulations.

If you have any questions, please contact Edwin Hoffmark, HFEM II at (855) 804-4205 or by email at Edwin.Hoffmark@cdph.ca.gov.

Sincerely,

Edwin Hoffmark, HFEM II, District Manager
State Facilities Section

State of California—Health and Human Services Agency

# California Department of Public Health

**KAREN SMITH, MD, MPH**
*Director & State Health Officer*

**EDMUND G. BROWN JR.**
*Governor*

July 16, 2015

Steve Shively,
Correctional Health Services Administrator II
California Institute for Women (CIW)
16756 Chino-Corona Rd.
Corona, CA 92880

Dear Mr. Shively:

This is in response to your request for program flexibility for California Code of Regulations (CCR), Title 22, § 79601, Physician Services regarding provider progress notes in inmate-patient's medical records.

Pursuant to §1276(b) of the Health and Safety Code, you request for program flexibility is approved with the following conditions:

1.      Patients requiring medical services, upon admission to the CTC who have been designated as Long Term Care (LTC) inmate-patients, those who stay will be longer than 30 days, a progress note will be written at a minimum of every seven (7) days if the licensed independent practitioner (LIP) determines their condition is stable. A nursing note shall be written daily. A progress note shall be written on each visit by the LIP or as the patient's condition changes. If the LIP determines the patient is no longer considered a LTC patient, a progress note shall be written at a minimum of every three (3) days or as the patient's condition requires.

2.      Patients requiring medical services who have not been designated as LTC shall receive a progress note at a minimum of every three (3) days or more often as the patient's condition requires. If the LIP determines the patient is LTC, an order shall be written in the patient's health record and progress notes shall be written every seven (7) days or more often as the patient's condition requires. A daily nursing note shall be written.

3.      The facility will maintain a list of those patients designated as LTC. Random monthly reviews shall be conducted by the Medical Director or designee to ensure compliance with this program flex.

July 16, 2015
Program Flex-CTC-79601

4.    For patients admitted under the Mental Health Treatment optional service designated as acute, with an anticipated length of stay of 10 days or less, no program flex is requested.

5.    For patients admitted under the Mental Health Treatment optional service designated as acute, with an anticipated length of stay greater than 30 days, a progress note shall be written at a minimum every three (3) days or as the patient's condition requires for the first 30 days. If the patient's condition is determined to be stable, a progress note shall be written at a minimum of every seven (7) days or as the patient condition requires. At a minimum, a daily nursing note shall be written.

6.    For patients admitted under the Mental Health Treatment optional service designated as non-acute, with an anticipated length of stay of greater than 30 days, a progress note shall be written at a minimum every three (3) days or as the patient's condition requires for the first 30 days. If the patient's condition is determined to be stable, a progress note shall be written at a minimum of every seven (7) days or as the patient's condition requires. At a minimum, a daily nursing note shall be written.

7.    A list of patients receiving mental health treatment services shall be maintained for those determined

This program flexibility approval shall remain in effect until revoked by the department.

In accordance with California Code of Regulations (CCR), Title 22, § 79593(a) Program Flexibility. Any approval granted by the Department pursuant to this Section, or a true copy thereof, shall be posted immediately adjacent to the facility's license required to be posted by CCR, Title22, Section 79589.

Sincerely,

for Colleen Reeves, HFEMII, Chief
Licensing and Certification Program
State Facilities Section


cc:    Kenneth Martin
       PO Box 588500, Bldg. G
       Elk Grove, CA  95758

## General ✓

Facility:  CSP-SAN QUENTIN - Correctional Treatment Center

District: State Facilities Section

Facility Number: 630012520

Facility Type: CTC

License ID: 550001202

Phone Number: 4157213511

County Name: MARIN

Address: 1 Main St, San Quentin, CA 94964

**Applicant Details:**

Name:  Anita Rangel

Email:  anita.rangel@cdcr.ca.gov

## Program Flexibility Application ✓

**Please do not include any patient identifying or personnel information in your application. The information in your application is considered public information and may be disclosed as part of a public records act request.**

**Contact Details**

Please provide the applicant's direct number should the Centralized Program Flex Unit have any questions regarding your application.

Applicant Contact Number
916-691-4804

**Duration of Request**

Requested Start Date
02/22/2023

Requested End Date
02/21/2025

**Specify Type of Request**
Non-Emergency

- Physician Services--General Requirements, T22 DIV5 CH12 ART3-79601(a)

Effective January 1, 2023, HSC 1276 (e) and (f) references a new category for a program flexibility request, for a **general acute care hospital (GACH)**, that allows the facility to designate a bed, or beds, in a critical care unit as requiring a lower level of care.

Is this request related to a GACH designating a bed, or beds, in a critical care unit as requiring a lower level of care?

No

**Specify Area of Flex**

 Records/Documentation

**Request Description**

Requesting flexibility as it pertains to the frequency of health records progress notes in the licensed CTC.

### JUSTIFICATION

**Describe why program flexibility is needed.**

CDCR/CCHCS have current processes in place to evaluate and assess a patient's condition at various intervals throughout their length of stay. It is requested that CDPH allow the organization to continue with these processes to ensure that documentation requirements be consistent and dictated by the patient's length of stay and condition.

## ALTERNATIVE CONCEPT

**Describe the proposed alternate method for meeting the intent of the regulation. Include the alternate concepts, methods, procedures, techniques, equipment, personnel qualifications, or the conducting of pilot projects. Include a description of the provisions for safe and adequate care so that the proposed alternative does not compromise patient care.**

For patients admitted under the Mental Health Treatment program, designated as acute, with an anticipated length of stay of 10 days or less, program flexibility is not provided.

For patients admitted under the Mental Health Treatment program, designated as acute, with an anticipated length of stay greater than 30 days, a progress note shall be written by the mental health clinician at a minimum of every three (3) days or as the patient's condition requires for the first 30 days. If the patient's condition is determined to be stable, a progress note shall be written by the mental health clinician at a minimum of every seven (7) days or as the patient's condition requires. A progress note shall be written by the medical provider every 30 days. At a minimum, a daily nursing note shall be written.

For patients admitted under the Mental Health Treatment program, designated as non-acute, with an anticipated length of stay greater than 30 days, a progress note shall be written a by the mental health clinician a minimum of every three (3) days or as the patient's condition requires for the first 30 days. If the patient's condition is determined to be stable, a progress note shall be written by the mental health clinician at a minimum of every seven (7) days or as the patient's condition requires. A progress note shall be written by the medical provider every 30 days. At a minimum, a daily nursing note shall be written.

For patients admitted primarily for medical services and have an expected length of stay of 30 days or less, after the admission examination is completed, a progress note shall be completed every seven (7) days if the patient is determined to be stable. If the patient is determined not to be stable, a progress note shall be completed every three (3) days.

For patients admitted primarily for medical services with an anticipated length of stay of greater than 30 days and who have been determined to be stable, a progress note shall be completed every seven (7) days for the first 30 days and then if the patient continues to be stable, a progress note shall be written every fourteen (14) days or as the patient's condition requires. At a minimum, a daily nursing note shall be written.

Daily monitoring and tracking mechanisms via automated registry remains in place to ensure compliance with the aforementioned parameters in this flex.

For all patients, should the patient have any sudden or marked adverse changes in signs, symptoms or behavior exhibited, the provider will document more often as needed. A progress note shall be written by the clinician following each contact of service.

Nursing staff shall document on each patient as required by policy and notify the attending provider in compliance with CCR Title 22 Section 79627, and Nursing Services General Requirements

**Additional Information**

**Provide any additional information as desired.**

Previous versions of this flex were submitted to CDPH approved,. Last approval is dated 9/22/2021.

Please attach any supporting documentation for the request. More than one document may be uploaded here.

 2021-09-27 SQ Flex Approval Physician Services 79601.pdf
Date Attached: Feb 22, 2023

**Revise and Update**

**Add updates to the original application.**

—

I agree to submit this application and certify under penalty of perjury that my answers are correct and complete to the best of my knowledge. I also certify that:

- I understand the questions and statements on this application.

- I understand the penalties for giving false information.

- I understand that this acknowledgment has the same legal effect and can be enforced in the same way as a written signature.

- I am authorized to submit this application on behalf of the licensee.

- This application does not include any patient identifying or personnel information.

This Information provided on this form is mandatory and is necessary for waiver approval. It will be used to determine whether to approve the request for a waiver. **The information in your application is considered public information and may be disclosed as part of a public records act request.**

☑ **I acknowledge and agree to the above Terms of Acceptance**

State of California—Health and Human Services Agency

# California Department of Public Health



**TOMÁS J. ARAGÓN, MD, DRPH**
*Director and State Public Health Officer*

**GAVIN NEWSOM**
*Governor*

September 27, 2021

Carla Thompson-McKinney
CSP-SAN QUENTIN - Correctional Treatment Center
1 Main St
San Quentin, CA. 94964

**APPROVAL OF PROGRAM FLEXIBILITY**

Dear Carla Thompson-McKinney:

This letter is in response to the request submitted by CSP-SAN QUENTIN - Correctional Treatment Center for program flexibility for California Code of Regulations Title 22 (CCR) section T22 DIV5 CH12 ART3-79601(a)(6).

The alternative means of compliance with Title 22 CCR section T22 DIV5 CH12 ART3-79601(a)(6) include compliance with the conditions set forth in the following section. The facility may provide health progress notes in the follow schedule listed below.

Your request for program flexibility of Title 22 CCR T22 DIV5 CH12 ART3-79601(a)(6) is approved under the following conditions:

1.  For inmate-patients admitted under the Mental Health Treatment program, designated as acute, with an anticipated length of stay of 10 days or less, program flexibility is not provided.
2.  For inmate-patients admitted under the Mental Health Treatment program, designated as acute, with an anticipated length of stay greater than 30 days, a progress note shall be written as a minimum of every three (3) days or as the inmate-patient's condition requires for the first 30 days. If the inmate-patient's condition is determined to be stable, a progress note shall be written at a minimum of every seven (7) days or as the inmate-patient's condition requires. At a minimum, a daily nursing note shall be written.

---



Administrator
Page 2

3. For inmate-patients admitted under the Mental Health Treatment program, designated as non-acute, with an anticipated length of stay greater than 30 days, a progress note shall be written as a minimum of every three (3) days or as the inmate-patient's condition requires for the first 30 days. If the inmate-patient's condition is determined to be stable, a progress note shall be written at a minimum of every seven (7) days or as the inmate-patient's condition requires. At a minimum, a daily nursing note shall be written.

4. For inmate-patients admitted primarily for medical services and have an expected length of stay of 30 days or less, after the admission examination is completed, a progress note shall be completed every seven (7) days if the inmate-patient is determined to be stable. If the inmate-patient is determined not to be stable, a progress note shall be completed every three (3) days.

5. For inmate-patients admitted primarily for medical services with an anticipated length of stay of greater than 30 days and who have been determined to be stable, a progress note shall be completed every seven (7) days for the first 30 days and then if the inmate-patient continues to be stable, a progress note shall be written every fourteen (14) days or as the inmate-patient's condition requires. At a minimum, a daily nursing note shall be written.

6. A list of inmate-patients receiving medical/mental health treatment services shall be maintained for those determined to meet criteria for a minimum of every seven (7) day and/or fourteen (14) day notes, as appropriate. A random monthly audit shall be conducted by the Clinical Director or designee to ensure compliance with this Program Flex.

7. For all inmate-patients, should the inmate-patient have any sudden or marked adverse changes in signs, symptoms or behavior exhibited, the provider will document more often as needed. A progress note shall be written by the clinician following each contact of service.

8. Nursing staff shall document on each inmate-patient as required by policy and notify the attending provider in compliance with CCR Title 22 Section 79627, and Nursing Services General Requirements.

Either this letter or a true copy thereof shall be posted immediately adjacent to the facility's license.

This approval shall remain in effect from 09/22/2021 until 04/05/2023.

**NOTE:** The Department may revoke the program flexibility if the licensee does not comply with the conditions set forth in the approval or if the department determines the proposed alternative does not adequately meet the intent of the regulations.

If you have any questions, please contact Edwin Hoffmark, HFEM II at (855) 804-4205 or by email at Edwin.Hoffmark@cdph.ca.gov.

Administrator
Page 3


Sincerely,

*Karen Eggleston HFEM I*

Edwin Hoffmark, HFEM II, District Manager
State Facilities Section

April 5, 2021

Edwin Hoffmark, District Manager
California Department of Public Health
2170 Northpoint Parkway
Santa Rosa, CA 95407

Dear Mr. Hoffmark,

RE:    California State Prison – San Quentin (SQ), CTC License #550001202
       Program Flexibility Request

Please find the attached CDPH 5000 Program Flexibility request form requesting flex related to Section 79601(a) (6).   The specifics of the request is on a separate Word document as it would not fit in its entirety on the CDPH Form 5000.

California Department of Corrections and Rehabilitation (CDCR) and the California Correctional Healthcare Services (CCHCS) are formally requesting a review and approval of this request.  The requested flex for patients admitted primarily for medical services is the same as the request and approval from December 2019 for SVSP, San Quentin State Prison (SQ), California Health Care Facility (CHCF), California Institution for Women (CIW), and California Medical Facility (CMF).

This updated request adds specifics for patients primarily admitted for mental health services inadvertently not requested when program flex was submitted and approved in December 2019.  This updated request for patients admitted for mental health services is similar to previously approved program flexes approved for SVSP, SQ, CHCF, CIW, and CMF.

This cover letter and original request shall be sent to your office via GSO.

If you require additional questions, please feel free to contact me at (916) 691-2852 or via email at Kenneth.Martin@cdcr.ca.gov.

If possible, please send approval to my office.

Sincerely,



**Kenneth Ray Martin**
Associate Director, Licensing and Compliance
Corrections Services, CCHCS
PO BOX 588500
Elk Grove, CA 95758

CALIFORNIA CORRECTIONAL
**HEALTH CARE SERVICES**

P.O. Box 588500
Elk Grove, CA 95758

Name
Date
Page 2


CC:    Dwight Winslow, Institution CEO
       Carla McKinney, CTC Administrator
       Tammy Foss, Director, Corrections Services
       Joseph (Jason) Williams, Deputy Director, Correction Services
       Jackie Clark, Deputy Director, Institution Operations
       Dr. Renee Kanan, Deputy Director, Medical Services
       Barbara Barney-Knox, Deputy Director, Statewide Chief Nurse Executive
       Amar Mehta, Deputy Director, Statewide Mental Health Program
       Dr. Joseph Bick, Director, Health Care Services



| Facility: | California State Prison – San Quentin (SQ) |
|---|---|
| | Correctional Treatment Center (CTC) License #550001202 |
| Date: | April 5, 2021 |
| Address: | 1 Main Street |
| | SAN QUENTIN, CA 94964-1000 |
| CTC Administrator: | Carla McKinney, CHSA II |

**This Program Flexibility Request is associated with the official CDPH 5000 form, "Program Flexibility" as the request cannot fit in the form in its entirety.**

Section 79601 related to Section 79597, Required Services for all CTCs, Physician Services-General Requirements of the California Code of Regulations (CCR) stipulates the following:

(a) "Physician services shall include, but not be limited to:

(6) Health record progress notes at least every three days or more often as the inmate-patient's condition requires. A progress note will be documented on each visit by the attending physician."

SQ provides both medical and mental health services (approved optional service per section 79703) at the acute and non-acute levels to the patient population (sections 79743 – 79759).

For inmate-patients admitted under the Mental Health Treatment optional service designated as acute, with an anticipated length of stay of 10 days or less, no program flex is requested.

For inmate patients admitted under the Mental Health Treatment optional service designated as acute, with an anticipated length of stay greater than 30 days, a progress note shall be written at a minimum of every three (3) days or as the inmate-patient's condition requires for the first 30 days. If the inmate- patient's condition is determined to be stable, a progress note shall be written at a minimum of every seven (7) days or as the inmate-patient's condition requires. At a minimum, a daily nursing note shall be written.

For inmate-patients admitted under the Mental Health Treatment optional service designated as non-acute, with an anticipated length of stay of greater than 30 days, a progress note shall be written at a minimum of every three (3) days or as the inmate-patient's condition requires for the first 30 days. If the inmate-patient's condition is determined to be stable, a progress note shall be written at a minimum of every seven (7) days or as the inmate-patient's condition requires. At a minimum, a daily nursing note shall be written.

For inmate-patients admitted primarily for medical services and have an expected length of stay of 30 days or less, after the admission examination is completed, a progress note shall be completed every seven (7) days if the inmate-patient is determined to be stable. If the inmate-patient is determined not to be stable, a progress note shall be completed every three (3) days.

For inmate-patients admitted primarily for medical services, with an anticipated length of stay of greater than 30 days and who have been determined to be stable, a progress note shall be completed

1

every seven (7) days for the first 30 days and then if the inmate-patient continues to be stable, a progress note shall be written every fourteen (14) days or as the inmate-patient's condition requires. At a minimum, a daily nursing note shall be written.

A list of inmate-patients receiving medical/mental health treatment services shall be maintained for those determined to meet criteria for a minimum of every seven (7) and/or fourteen (14) day notes, as appropriate. A random monthly audit shall be conducted by the Clinical Director or designee to ensure compliance with this Program Flex.

For all inmate-patients, should the inmate-patient have any sudden or marked adverse changes in signs, symptoms or behavior exhibited, the provider will document more often as needed. A progress note shall be written by the clinician following each contact of service.

Nursing staff shall document on each inmate-patient as required by policy and notify the attending provider in compliance with CCR Title 22, Section 79627, and Nursing Services General Requirements.

State of California-Health and Human Services Agency

Case 2:90-cv-00520-KJM-SCR     Document 7833-1     Filed 05/11/23     California Department of Public Health
Licensing and Certification Program

Page 215 of 308

# PROGRAM FLEXIBILITY

Facility:     California State Prison - San Quentin (SQ)- Correctional Treatment Center (CTC) #550001202

Address:    California Department of Corrections and Rehabilitation

1 Main Street, San Quentin, CA              ZIP: 94964-1000

Administrator: Carla McKinney, CHSA II          Date: April 5, 2021

Subject: Program flexibility is requested for Section: Section 79601(a) (6)    Title 22, California Code of Regulations.

Proposed alternate method(s) for meeting the intent of the regulations is;

This program flexibility request pursuant to Section 79593 title 22, Chapter 12 is being subitted on behalf of the SQ CTC #550001202.

The specifics of this request is on a separate Word document as it would not fit in its entirety on the CDPH Form 5000. Please see attached.



State of California -- Health and Human Services Agency
## California Department of Public Health



**SONIA Y. ANGELL, MD, MPH**
*State Public Health Officer & Director*

**GAVIN NEWSOM**
*Governor*

December 10, 2019

Carla Thompson-McKinney
CSP-SAN QUENTIN - Correctional Treatment Center
1 Main St
San Quentin, CA. 94964

**APPROVAL OF PROGRAM FLEXIBILITY**

Dear Carla Thompson-McKinney:

This letter is in response to the request submitted by CSP-SAN QUENTIN - Correctional Treatment Center for program flexibility for California Code of Regulations Title 22 (CCR) section T22 DIV5 CH12 ART3-79601(a)(6).

The alternative means of compliance with Title 22 CCR section T22 DIV5 CH12 ART3-79601(a)(6) include compliance with the conditions set forth in the following section.

Your request for program flexibility of Title 22 CCR T22 DIV5 CH12 ART3-79601(a)(6) is approved under the following conditions:

1. For inmate-patients admitted primarily for mental health services, no Program Flexibility is requested and will remain at three (3) day progress notes.

2. For inmate-patients admitted primarily for medical services and have an expected length of stay of 30 days or less, after the admission examination is completed, a progress note shall be completed every seven (7) days if the inmate-patient is determined to be stable. If the inmate-patient is determined not to be stable, a progress note shall be completed every three (3) days.

3. For inmate-patients admitted primarily for medical services, with an anticipated length of stay of greater than 30 days and who have been determined to be stable, a progress note shall be completed every seven (7) days for the first 30 days and then if the inmate-patient continues to be stable, a progress note shall be written every fourteen (14) days or as the inmate-patient's condition requires. At a minimum, a daily nursing note shall be written.

---



Administrator
Page 2

4.  A list of inmate-patients receiving medical treatment services shall be maintained for those determined to meet criteria for a minimum of every seven (7) and fourteen (14) day notes, as appropriate. A random monthly audit shall be conducted by the Clinical Director or designee to ensure compliance with this Program Flex.

5.  For all inmate-patients, should the inmate-patient have any sudden or marked adverse changes in signs, symptoms or behavior exhibited, the provider will document more often as needed. A progress note shall be written by the clinician following each contact of service.

6.  Nursing staff shall document on each inmate-patient as required by policy and notify the attending provider in compliance with CCR Title 22, Section 79627, and Nursing Services General Requirements.

Either this letter or a true copy thereof shall be posted immediately adjacent to the facility's license.

This approval shall remain in effect from 11/20/2019 until 11/19/2022.

**NOTE:** The Department may revoke the program flexibility if the licensee does not comply with the conditions set forth in the approval or if the department determines the proposed alternative does not adequately meet the intent of the regulations.

If you have any questions, please contact Edwin Hoffmark, HFEM II at (855) 804-4205 or by email at Edwin.Hoffmark@cdph.ca.gov.

Sincerely,

Edwin Hoffmark, HFEM II, District Manager
State Facilities Section

State of California—Health and Human Services Agency

# California Department of Public Health



**KAREN SMITH, MD, MPH**
*Director & State Health Officer*

**EDMUND G. BROWN JR.**
*Governor*

October 7, 2015

Chad Hickerson,
Correctional Treatment Center Administrator
San Quentin Correctional Treatment Center
One Main Street
San Quentin, CA 94364-1000

Dear Mr. Hickerson:

This is in response to your request for program flexibility for California Code of Regulations (CCR), Title 22, § 79601, Physician Services regarding provider progress notes in inmate-patient's medical records.

Pursuant to §1276(b) of the Health and Safety Code, you request for program flexibility is approved with the following conditions:

1.      Patients requiring medical services, upon admission to the CTC who have been designated as Long Term Care (LTC) inmate-patients, those who stay will be longer than 30 days, a progress note will be written at a minimum of every seven (7) days if the licensed independent practitioner (LIP) determines their condition is stable. A nursing note shall be written daily. A progress note shall be written on each visit by the LIP or as the patient's condition changes. If the LIP determines the patient is no longer considered a LTC patient, a progress note shall be written at a minimum of every three (3) days or as the patient's condition requires.

2.      Patients requiring medical services who have not been designated as LTC shall receive a progress note at a minimum of every three (3) days or more often as the patient's condition requires. If the LIP determines the patient is LTC, an order shall be written in the patient's health record and progress notes shall be written every seven (7) days or more often as the patient's condition requires. A daily nursing note shall be written.

3.      The facility will maintain a list of those patients designated as LTC. Random monthly reviews shall be conducted by the Medical Director or designee to ensure compliance with this program flex.

4.      For patients admitted under the Mental Health Treatment optional service designated as acute, with an anticipated length of stay of 10 days or less, no program flex is requested.

5.      For patients admitted under the Mental Health Treatment optional service designated as acute, with an anticipated length of stay greater than 30 days, a progress note shall be written at a minimum every three (3) days or as the patient's condition requires for the first 30 days. If the patient's condition is determined to be stable, a progress note shall be written at a minimum of every seven (7) days or as the patient condition requires. At a minimum, a daily nursing note shall be written.

6.      For patients admitted under the Mental Health Treatment optional service designated as non-acute, with an anticipated length of stay of greater than 30 days, a progress note shall be written at a minimum every three (3) days or as the patient's condition requires for the first 30 days. If the patient's condition is determined to be stable, a progress note shall be written at a minimum of every seven (7) days or as the patient's condition requires. At a minimum, a daily nursing note shall be written.

7.      A list of patients receiving mental health treatment services shall be maintained for those determined

This program flexibility approval shall remain in effect until revoked by the department.

In accordance with California Code of Regulations (CCR), Title 22, § 79593(a) Program Flexibility.  Any approval granted by the Department pursuant to this Section, or a true copy thereof, shall be posted immediately adjacent to the facility's license required to be posted by CCR, Title22, Section 79589.

Sincerely,

For   Colleen Reeves, HFEMII, Chief
Licensing and Certification Program
State Facilities Section


cc:     Kenneth Martin
PO Box 588500,  Bldg. G
Elk Grove, CA  95758

# EXHIBIT K

DocuSign Envelope ID: C0D40801-F505-42B6-B743-EF9E87CD511E

State of California                                    Department of Corrections and Rehabilitation

# Memorandum

Date:   March 9, 2022

To:     SEE DISTRIBUTION LIST

Subject: **MAXIMUM CUSTODY REDUCTION REVIEWS FOR PSYCHIATRIC INPATIENT PROGRAM PARTICIPANTS**

The purpose of this memorandum is to provide direction regarding the changes to the suspension of Security Housing Unit (SHU) Terms and the ability to remove Maximum (MAX) custody designation for Psychiatric Inpatient Program (PIP) participants. The objective of the California Department of Corrections and Rehabilitation (CDCR) is to enhance the treatment milieu in the PIP programs, improve access to mental health treatment and remove patients from MAX custody when it is safe to do so. This direction applies to patients referred to or admitted to both the Acute Psychiatric Program (APP) level of care and the Intermediate Care Facility (ICF) level of care.

Custody and mental health staff shall collaborate to address behaviors connected to a patient's mental health. The PIP is a hospital setting and patient behavior should be managed through verbal counseling and de-escalation when possible. Clinical and custody staff shall ensure MAX custody is continuously and closely evaluated in an inpatient setting and applied only when necessary for the safety and security of the patients, program, and staff.

California Code of Regulations (CCR), Title 15, Sections 3341.5(a)(1), (b)(1) give the Institution Classification Committee (ICC) the authority to suspend a Determinate SHU term for the purposes of inpatient medical or mental health treatment when clinically necessary. As a reminder, per CCR Title 15, Section 3339, the release from an administrative segregation unit (ASU) shall occur at the earliest possible time in keeping with the patient's case factors and reasons for ASU placement. These regulations allow CDCR the ability to support the continuance of mental health care when custodial case factors present challenges.

### Institution Classification Committee Review Requirement upon Referral

If a patient who is MAX custody or who is serving a SHU term has been referred to the ICF level of care, the sending institution's ICC shall review the case with the goal of suspending MAX custody or the SHU term where possible. This review will not be required when the patient is currently housed at the same institution as the PIP location. ICC shall also address the patient's current behavior during the review. If MAX custody or the SHU term is suspended, the ICC will evaluate all case factors and apply the appropriate custody level to be effective upon transfer to the PIP institution. The review shall be clearly articulated in the Classification Chrono as "MAX Custody Reduction Review." The review shall provide justification for either retaining MAX custody, or the rationale for removing MAX custody, including information regarding the patient's recent behavior. The participation and input of the attending Mental Health Clinician shall be documented in the Classification Chrono, including the appropriate clinical recommendation for ICF placement to address mental health concerns. If a

DocuSign Envelope ID: C0D40801-F505-42B6-B743-EF9E87CD511E

SEE DISTRIBUTION LIST
Maximum Custody Reduction Reviews for Psychiatric Inpatient Program Participants
Page 2

regularly scheduled ICC occurs prior to transfer of a patient referred to APP, a MAX Custody Reduction Review shall occur.

### Initial and Other Institution Classification Committees

Upon arrival at the endorsed PIP location, an ICC shall occur no later than ten calendar days for any patient designated MAX custody. This review will assist in ensuring the patient is housed in the least restrictive environment upon arrival. The review shall be clearly articulated in the Classification Chrono as "MAX Custody Reduction Review." This review shall provide justification for either retaining MAX custody, or the rationale for removing MAX custody.

Additionally, these reviews must occur upon referral via a CDCR form 128C from the Interdisciplinary Treatment Team (IDTT); at the 120-day Pre-Minimum Eligible Release Date review per CCR, Title 15, Section 3341.8 (b); and all other ICC's while the patient is housed in the PIP.

**Case Factors to Consider during ICC**
CDCR expects that patients will be removed from MAX Custody when appropriate.  ICC shall consider and document the following information when making a determination on the suspension of MAX custody or a SHU term:

- Disciplinary history
- Circumstances of the offense
- Whether there has been a pattern of violence.
- Recent behavior
- Current medication non-compliance if it is likely to lead to violent behavior
- Violent behavior during program participation

Examples of when it may be appropriate to suspend MAX custody or a SHU term include, but are not limited to:

- Indecent Exposure
- Sexually Disorderly Conduct
- Threats, Harassment
- Safety/Enemy Concerns
- Distribution/Introduction of a Controlled Substance
- Extortion or Bribery
- Participation in a Riot
- Battery w/o Serious Bodily Injury (SBI)
- Non-disciplinary reasons
- Refusal of housing
- Destruction of property
- Theft

DocuSign Envelope ID: C0D40801-F505-42B6-B743-EF9E87CD511E

SEE DISTRIBUTION LIST
Maximum Custody Reduction Reviews for Psychiatric Inpatient Program Participants
Page 3

- Investigation
- Inmate requires bed type not at this facility.
- Housing in ASU Prior to Committee Review

In summary, even for patients who are currently serving a SHU term for a violent offense, if the patient does not appear to be a current threat to other patients, the program, or staff, it is appropriate to suspend the patient's MAX custody or SHU term.

## Interdisciplinary Treatment Team Referral Process and Requirements

For patients on MAX custody, the IDTT shall determine, using prior clinical documentation such as the Mental Health Assessment for the behaviors that resulted in MAX custody, whether mental health symptoms may have contributed to the behavior(s) that led to the MAX custody or continuance of MAX custody. If so, the treatment team and, if appropriate, the PIP Positive Behavioral Support Team, shall address these symptoms specifically during treatment planning and provide documentation in the Master Treatment Plan, including treatment goals targeting those behaviors and make a referral to ICC for review of MAX custody at any time it is assessed the treatment goals related to MAX custody have been accomplished.

If the treatment team recommends suspension of MAX custody, this recommendation shall be documented on a CDCR Form 128-B Informational Chrono and the patient will be referred to the ICC. The Correctional Counselor shall ensure the next scheduled ICC occurs no later than ten calendar days to ensure all due process requirements are met. The final determination regarding the suspension of MAX custody during the inpatient stay remains with the ICC. If the ICC disagrees with the IDTT's clinical recommendation, the justification for the decision shall be clearly documented in the Classification Chrono. Disagreements between the IDTT and the ICC should be rare.

Lastly, a Captain (or designee) or a Mental Health Supervisor (or designee) will attend some of the IDTTs for one day on alternating weeks, and their attendance shall be documented in the Acute Psychiatric Program/Intermediate Care Facility Master Treatment Plan. These IDTTs will be monitored to ensure that the treatment team is addressing behaviors or symptoms that may have contributed to MAX custody at each IDTT, as well as ensuring collaborative discussions are occurring among the treatment team members.

## Headquarters Oversight Mental Health Compliance Team Pre-Review

The Mental Health Compliance Team (MHCT) pre-review will occur following referral to ICF level of care. The Health Care Placement Oversight Program will provide the MHCT a weekly list of those patients referred to the ICF level of care. Upon receipt, the MHCT will review all pertinent case factors, such as circumstances of the offense which resulted in placement on MAX custody, recent behavior, recent disciplinary history, and recent pattern of violence, to determine whether, based on documentation, the ICC should consider suspending the patient's MAX custody or SHU term for the

DocuSign Envelope ID: C0D40801-F505-42B6-B743-EF9E87CD511E

SEE DISTRIBUTION LIST
Maximum Custody Reduction Reviews for Psychiatric Inpatient Program Participants
Page 4

purpose of enhancing mental health treatment. Upon review, the MHCT will provide recommendations identifying those cases in which the ICC may consider suspending the patient's MAX custody or SHU Term.  Institutions will ensure those cases are reviewed to determine if a subsequent ICC is warranted prior to transfer.  Institutions will report back to the MHCT on their decisions regarding whether to suspend MAX custody prior to transfer to the PIPs.

### Mental Health Compliance Team Bi-Weekly Post-Review

The MHCT will review all MAX custody patients currently housed at a PIP location on a bi-weekly basis with the use of Strategic Offender Management System Reporting. This review will include the same criteria listed in the above MHCT pre-review. Upon completion, the MHCT will provide recommendations to PIP institutions for cases in which the ICC should consider suspending a patient's MAX custody or a SHU Term. The Division of Adult Institutions Headquarters will then schedule a Bi-Weekly Facility Support Deputy Director (or designee) Video conference to discuss the status of the recommended cases with the Wardens of the PIP institutions.

### Bi-Weekly Deputy Director (or Designee) Video Conference with PIP Institutions

The purpose of the Bi-Weekly Deputy Director Video Conference is to ensure that follow-up action occurs at the institutional level based on the MHCT recommendations. In addition, this review process allows communication to occur with institutional leadership while providing them the ability to include information regarding their justification for actions taken or not taken.

It is the continued goal of CDCR to increase out-of-cell time for MAX custody patients, maximize access to mental health treatment, and remove patients from MAX custody as soon as it is safe to do so. Please ensure staff are in compliance with the above directives.

Wardens or designees and Chief Executive Officers or designees shall provide On-the-Job training (OJT) to all correctional counseling staff, all chairpersons and all mental health clinicians. The training will be available through the Learning Management System Training Portal. The BET code 11063222 shall be used to document the OJT and each institution shall provide proof of practice to their respective Mission Associate Director and Regional Health Care Executive within 30 days of the date of this memorandum. Additionally, forthcoming training will also be provided to all chairpersons, correctional counseling staff, and clinical staff.

DocuSign Envelope ID: C0D40801-F505-42B6-B743-EF9E87CD511E

SEE DISTRIBUTION LIST
Maximum Custody Reduction Reviews for Psychiatric Inpatient Program Participants
Page 5

If you have any related questions, contact Lourdes White, Captain, MHCT, at (916) 835-5679 or via email at DAI-MHCompliance@cdcr.ca.gov , or you may contact the Mental Health Policy Unit by email at m_MHPolicyUnit@cdcr.ca.gov.

KIMBERLY SEIBEL
Deputy Director
Facility Operations
Division of Adult Institutions

JACKIE CLARK
Deputy Director
Institution Operations
California Correctional Health Care Services

JARED D. LOZANO
Deputy Director
Facility Support
Division of Adult Institutions

AMAR MEHTA, M.D.
Deputy Director
Statewide Mental Health Program
Division of Health Care Services

Attachments

DISTRIBUTION LIST:

Associate Directors, Division of Adult Institutions
Regional Health Care Executives
Wardens
Chief Executive Officers
Chiefs of Mental Health
Classification and Parole Representatives
Classification Staff Representatives

cc:  Connie Gipson
     Sircoya Williams
     Lourdes White

# EXHIBIT L



**ROSEN BIEN
GALVAN & GRUNFELD LLP**

101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
T: (415) 433-6830 • F: (415) 433-7104
www.rbgg.com

Marc J. Shinn-Krantz
Email: MShinn-Krantz@rbgg.com

May 9, 2022

<u>VIA ELECTRONIC MAIL ONLY</u>
Nicholas Weber
Office of Legal Affairs
California Department of Corrections and Rehabilitation

Re:    *Coleman v. Newsom*:  Defendants' Proposed Plan to Decommission CMF-
       PIP L1 and Other Unlicensed Inpatient Beds, and Draft Flex Bed Proposal
       <u>Our File No. 0489-03</u>

Dear Nick:

      This letter provides Plaintiffs' initial comments regarding Defendants' April 21,
2022 proposed plans to deactivate CMF-L1 and end Defendants' overall reliance on
unlicensed inpatient beds ("Proposal"), and Defendants' related flex bed proposal.

      As a preliminary matter we are dismayed that Defendants apparently developed
these plans without working with the Special Master or Plaintiffs, despite their
commitment and the Court's order to "work closely with the Special Master, with input
from Plaintiffs as appropriate, to develop a plan to deactivate the beds in L-1 and replace
the unit with fully licensed inpatient beds at the number and custodial level required by
patient need." *See* CMF-L1 Stip and Order, ECF No. 7133 at 4.  Had the process been
more collaborative from the start, it is possible many of the below questions and concerns
may have been obviated.  That said, we are hopeful that the parties can come to an
agreement on an appropriate approach in advance of the October deadline.

**I.     Inpatient Bed Planning Including CMF L1**

      We are concerned that Defendants propose to deactivate L1 without any plan to
"replace the unit with fully licensed inpatient beds" (*id.*), and rather propose simply
making use of existing beds.  Defendants' proposal does not appear to dedicate any new
resources (physical space, staffing, or otherwise) despite the stated goal "to end
[CDCR's] reliance on unlicensed units to house and treat *Coleman* class members
needing inpatient mental health care." *Id.* at 3.

Nicholas Weber
May 9, 2022
Page 2

Defendants also seem to have no plan to decommission the large number of beds in untherapeutic prison blocks that CDCR has been operating as "temporary" mental health hospital beds for many years. Given the widespread use of unlicensed and temporary beds, projected shortfalls, and the likelihood, based on prior similar studies, that the ongoing Unmet Needs Assessment ("UNA") will identify additional need for inpatient beds, Defendants should be making plans to provide appropriate numbers of permanent, fully licensed beds, including better utilization of the lower custody beds currently available in the system, in anticipation of shutting down unlicensed and temporary beds.

## II.  Currently Available Fully Licensed Permanent Bed Capacity

Defendants identify a total of 2,113 inpatient beds including ICF, APP, and MHCB, of which 1,972 are licensed and 141 are unlicensed. *See* Proposal at 1. It appears these totals do not account for beds that, by Defendants' own admission, cannot be used for inpatient care (e.g., the 11 ICF and 7 Acute medical isolation rooms at CHCF-PIP. *See* April 15, 2022 Census and Waitlist Reports, ECF No. 7529 at 13, FN 3. Nor does it account for beds that have been taken offline long-term (in several cases for over 2-3 years) for a variety of reasons, including short-staffing, COVID-19 distancing, and repairs, and beds used for COVID admissions purposes. Plaintiffs believe at least 55 beds currently fall into those categories per Defendants' recent communications. *See* N. Weber Feb. 10, 2022 Mission Change Letter (reporting 6 beds at PVSP MHCB down since February 2019, plus 9 beds at CMF-PIP down since April 2019 currently due to short staffing, plus 8 beds at CMF-PIP down since April 2020 for physical distancing"); N. Weber March 29, 2022 Email entitled Inpatient Waitlist/Transfers Data identifying 30 inpatient beds reserved for COVID admissions at CMF-PIP, L1, and SVSP-PIP, plus 2 beds to remain vacant at the CMC-MHCB flex unit).[1]

What is Defendants' actual count of inpatient beds currently available for treating class members as of May 1, 2022, and how many of those are licensed? Please also identify, by housing unit, which beds Defendants are counting toward their overall inpatient census that are operating pursuant to Court waiver or a licensing exception, such as using rounding in lieu of call buttons or operating above design capacity. *See, e.g.*, Defs' Revised Long Term Bed Plan (June 12, 2021), ECF No. 4196-2 at 4 (discussing short-term planned use of temporary cell-block beds at SVSP and CMF and commitment

---

[1] Plaintiffs have not received any mission change letters after the one sent on February 10, 2022, and have not received a response to their request for an update on the inpatient waitlist and transfer data provided by email on March 29, 2022. As such, this letter reflects the most current information available to Plaintiffs.

Nicholas Weber
May 9, 2022
Page 3

to decommission them long-term); *see also* Defs' Plan re ICF and Acute Inpatient Waitlists (Nov. 24, 2010), ECF No. 3962-1 at 21.

## III.    Defendants' Use of the Fall 2021 Bed Needs Study Projections is Misleading

As Defendants note, the Fall 2021 Bed Needs study projects a need for 1,886 inpatient beds (including APP/ICF/MHCB) for FY 2022. That statement is shortsighted, however, because it fails to acknowledge that the inpatient need is projected to significantly increase in FY 2023 and beyond. For instance, Defendants' chart at page 2 of their proposal shows a difference of –(227) total inpatient beds as of FY 2022 using capacity numbers as of April 11, 2022, which as noted above we believe to be inflated. But by FY 2023, the purported surplus Defendants identify shrinks to –(77) according to the same projections. Without the 141 unlicensed beds Defendants identify at page 1 of their proposal, plus the reductions that will flow from Defendants' plan to reduce the capacity of existing multi-person cells and dorms, it does not appear Defendants will have sufficient systemwide capacity even with their plan to increase flex beds.

Notably, this assumes full utilization of the low-custody DSH beds, which have been severely underutilized since the start of the pandemic, and that the anti-therapeutic environment at SVSP-PIP's C5/C6 units[2] can be rendered suitable for long-term use under Defendants' proposal, which Plaintiffs question. *See* Section VIII below.

Additionally, Defendants' claim that its inpatient system has excess capacity that can be repurposed as "flex beds" (Proposal at 2-3) is undermined by the fact that CDCR has been reporting dozens upon dozens of late inpatient transfers for many months. Plaintiffs have requested, but have not received, updated inpatient transfer and census information, but as of the April 15, 2022 Inpatient Census and Waitlist report, 54 patients waited past Program Guide transfer timelines as of March 22, 2022 (28 acute and 26 ICF) out of a reported waitlist of 87.[3] *See* ECF No. 7529 at 10-11, 13. And given the parties' historical experiences with UNA studies, it is highly probable that significant unmet need will be identified in CDCR's outpatient programs over the coming months.

---

[2] Defendants' proposal indicates C5 and C6 have a total of 116 beds, but the Institution Bed Audit indicates the units have a total of 128 beds. What is the correct total capacity of these units allowed by the DPH program flex license?

[3] Defendants' Exhibit C reports that the waitlist is 87 (71 pending referrals plus 16 accepted referrals), but also discloses that Exhibit C does "not reflect the total number of referrals" *See* ECF No. 7529 at 10-11, 13. Defendants' filing does not, however, provide the accurate referral numbers.

Nicholas Weber
May 9, 2022
Page 4

## IV. Comments on Defendants' Draft Flex Bed Proposal

Although critical detail is lacking, it is clear that Defendants' draft proposed flex bed policy and procedure ("Draft Flex Policy") would be a major re-working of the entire inpatient system laid out in the Program Guide. CDCR would flex approximately 602[4] beds "effective immediately" in addition to beds currently flexed at CIW-PIP, PSH, and SQ-PIP. Flex beds in theory might be a helpful part of the solution, especially if done in a location that already has programs at multiple inpatient levels of care in a unit designed for such use. But bringing the theory into practice clearly requires significant support and resources that CDCR does not appear to have accounted for in the current relatively bare-bones proposal. This point is illustrated by recent 29th Round tours. As the Special Master's team observed when touring the CMC-MHCB, where 12 MHCB beds currently operate at the APP level of care as of April 2021, the flex has resulted in substandard care—and that was at a well-staffed MHCB with a relatively good physical plan, run by clinicians all stakeholders agreed were excellent. So too, as we observed during the Special Master's tour of CHCF, flexing went poorly at the CHCF-MHCB when HQ required the institution to flex 18 beds last year without notice to Plaintiffs or the Special Master.

It cannot be disputed that the main institutions primarily targeted for flexing (CHCF, CMF, SVSP) and their PIPs have long been in crisis. The crisis in the PIPs at these institutions led the Special Master in his latest draft inpatient report to make a recommendation that CDCR establish minimum standards for inpatient care because treatment was so deficient. Asking staff working in the middle of this crisis to double or triple their mission by flexing units likely cannot be successful without significant additional resources. How can CDCR provide appropriate care in flex units supporting three totally different treatment protocols when they cannot provide minimally adequate care, or sufficient staffing levels, in the current PIPs? How would flexing units affect CDCR's efforts to establish and meet minimum standards for inpatient care?

---

[4] This total of 602 beds includes Defendants' plan to flex 214 CHCF APP beds, but Defendants' census data suggests there are currently only 201 such beds, 7 of which are medical isolation rooms that cannot be routinely used for inpatient care. Additionally, this count of 602 beds includes Defendants' plan to flex 98 CHCF MHCBs, but Defendants' H1 data shows there are only 80 crisis beds at CHCF. It appears Defendants may be counting 18 beds in CHCF building A-302-B1 (aka "A2B") toward their tally of 98 CHCF crisis beds that would become flexed under this proposal, even though those beds are already included in their tally of APP beds. Again, we request that Defendants provide a transparent, accurate count of actual usable inpatient beds, listed by unit and level of care to better inform this discussion.

Nicholas Weber
May 9, 2022
Page 5

Successful flexing would require specialized staff training, and careful review and planning of each unit's procedures for flexing, staffing allocations, and physical plant space including treatment space, housing space, in-cell electrical access and connectivity (radio/television signal/wifi), and out of cell spaces such as dayroom, yard, programming, phones, meals, and visiting. A flex bed program will not be successful if it is simply a wholesale redesignation of units with one mission into units mixing two or three totally different missions. What review of the physical plants in the proposed units have Defendants conducted to determine if flexing is appropriate? Are there plans to make any physical modifications to address inadequate space? Are there locations that would require escort off-unit to provide group, yard, dayroom, etc., and how would CDCR ensure adequate custody staffing to do so?

The Draft Flex Policy would also permit additional flexing of beds at *any* MHCB program following "an onsite review of programming and treatment space." *See* Draft Release of Use of Inpatient Flex Beds Policy and Procedure Memorandum at 2. What would be entailed in this review and what standards would each unit have to meet to qualify for flexing? How quickly would they be flexed?

Plaintiffs note that the flex beds identified in the draft proposal would be in addition to beds currently flexed at CIW (45 beds), PSH (30 beds), and SQ (40 beds). Would the Draft Flex Policy apply to these locations? Plaintiffs note that, to their knowledge, PSH and CIW-PIP have never treated patients at the MHCB level of care. Would that change?

The Draft Flex Policy does not discuss logistics for managing the details of flexing and mixing patients at different levels while maintaining continuity of care. The Policy also lays out multiple decision trees to determine which patients get priority use of which types of beds. Would units flex one patient at a time, or cohorts of patients who can participate together in groups, yard, and other programming? It is not, in our estimation, possible to provide adequate ICF or APP care to a single patient within an MHCB unit—yet it appears that Defendants have no minimum cohort requirement in their policy. Would treatment teams be assigned to simultaneously manage patients at two or three levels of care or would patients jump between teams? Who would be responsible for navigating the placement priority decision trees, and for updating patient programming schedules? These details are critical, yet they do not appear to have been fully developed in the current proposal.

The Draft Flex Policy and the draft releasing memorandum would require all staff treating patients to receive "standardized training" from HQ on policy and procedures related to treating patients at the MHCB, APP, and ICF levels of care. Would there be any training for custody and nursing staff? What does this training entail? Is this the

[3908955.7]

Nicholas Weber
May 9, 2022
Page 6

same training currently provided to people who work in single-mission treatment units, or would it be a new training about how to work on a flex unit that has two or three simultaneous mental health treatment missions? Plaintiffs note that Defendants represented that they provided targeted training to the CMC MHCB team members before requiring them to provide acute care, but substantial confusion about the requirements for APP versus MHCB care remained at the time of the Special Master's tour many months later.

The flex policy provides that flexed units would be required to have adequate staffing at the level that requires the maximum number of staff (i.e. the more generous staffing ratio). Given Defendants proposal to flex only MHCB to APP/ICF, and APP to ICF, are we understanding correctly that this would not actually result in any increased clinical staffing resources? Indeed, are we correct that if unlicensed beds are closed and/or multi-person housing is converted into one to two person cells as discussed below, Defendants' overall inpatient staffing will *decrease* significantly as a result of this plan? Have Defendants considered whether the more complex two- or three-part mission may require increased staffing beyond the ratios established for single-mission units? Have Defendants spoken with clinical leadership at the affected PIPs and MHCBs that would be flexed effective immediately, and other MHCBs that would potentially be flexed at a later date, to seek their views on whether their existing staffing allocations are adequate (assuming, for the sake of argument, that the currently allocated positions are full, which they are not)?

Finally, as we discussed during the PIP staffing negotiations last year, nursing and custodial staffing in the PIPs is highly dependent on the physical plan and program offered—and critical to the PIP's success. What changes, if any, will CDCR make to the affected units with respect to custodial and nursing staff to support the new flex mission? How will those staffing packages be determined? Please share any projected staffing plans that are anticipated to flow from the flex policy with respect to clinical, nursing, and custody positions, and any studies or evaluations those plans are based on.

## V.    LRH and the Reassessment of Multi-Person Cells and Locked Dorms

A key assumption of Defendants' plan is that lower-custody inpatient beds are in limited demand and should be converted to high custody beds or otherwise decommissioned. In support, Defendants cite to census levels and the Fall 2021 bed plan projections (which also rely on census levels). *See* Proposal at 1-3. That assumption is based on a fallacy, however, because true low-custody inpatient bed need is artificially suppressed by Defendants' failure to fix the long-standing problems with the LRH process, which prevents eligible patients from ever reaching the true hospital programs at DSH as well as lower-custody settings in the PIPs.

[3908955.7]

Nicholas Weber
May 9, 2022
Page 7

The Special Master's inpatient reports have long identified Defendants'
deficiencies in moving patients from more restrictive settings to their Least Restrictive
Housing ("LRH") placement.  The 2021 Inpatient Report reiterated findings from the
prior inpatient report that LRH process if problematic and requires Defendants' attention.
Unfortunately, like in the previous report, "current findings also indicate that defendants
continued to struggle with placing those patients for whom the setting is not
contraindicated for clinical and/or custodial reasons in their LRH."  *See* ECF No. 7039 at
42 (citing 2018 Inpatient Report, ECF 5894 at 21).  During the 2021 review period,
"across the PIPs, significant numbers of patients were housed outside their LRH" and
CDCR failed to evaluate patients' LRH, failed to document rationales for placement out
of LRH, failed to document interventions to assist patients in reaching their LRH, and
failed to refer and transfer patients who were outside their LRH.  *Id.* at 43.  Given these
significant and persistent problems, one of the five recommendations in the Special
Master's 2021 Inpatient Report focused specifically on Defendants' LRH problems.  *Id.*
at 118-19.

The March 2022 inpatient report, which is currently in draft form, found that
consistent with the above findings from the 2021 Inpatient Report, Defendants continued
to "house significant numbers of PIP patients above their designated least restrictive
housing."  *See* Draft March 2022 Inpatient Report at 42.  Although CDCR's aggregated
reported numbers showed an improving trend in the latest LRH numbers, the draft report
notes "findings from the field regarding the frequency and quality of treatment team
consideration of LRH during IDTT were not encouraging."  *Id.*  Given these persistent
problems concerning Defendants' failures to move patients to appropriate lower-custody
settings within the PIPs, and coupled with the sharply decreased use of the DSH beds
since the pandemic, it is no wonder that the Fall 2021 Bed Needs study projections
identified the greatest bed shortage in higher custody housing.

In their current plan, Defendants note that CDCR is reassessing its use of multi-
person housing.  How does this interact with Defendants' conceptualization of the LRH
continuum?  It appears to reflect a preference by Defendants toward changing housing to
cater to an increasingly high-security patient profile rather than focusing on helping
patients move into lower-security hospital units where they can receive care in a more
therapeutic milieu and work on programming in less restrictive settings.

Specifically, Defendants report CDCR is considering converting multi-person
housing in CMF-PIP A1 and A2, and SVSP-PIP TC2 into single or double cells "as
needed."  *See* Proposal at 3.  This could result in reduction of up to 100 beds (converting
128 beds into as few as 28).  Have Defendants taken account of this reduction in capacity
in their overall bed planning given the shortfalls discussed above?  Are Defendants

Nicholas Weber
May 9, 2022
Page 8

envisioning housing one to two patients alone in CMF's eight-person dorms or the sixteen-person dorm?

CDCR is also considering assigning APP patients to two-bed cells at SVSP-PIP, which we understand would be a possible flex from ICF to APP. SVSP-PIP has never, to our knowledge, had an acute program before. Would these SVSP-PIP beds be staffed at an APP ratio? How would CDCR ensure such moves are driven by clinical appropriateness rather than bed capacity? Is CDCR contemplating using the single-cell beds in TC2-A1 that are being used as double cells?

## VI.   Proposals to Improve Bed Utilization

Defendants do not make any new proposals regarding bed utilization but generally refer to work on improving physical discharge timelines, the March 15, 2022 PIP STEP policy, and efforts to expand the safe use of Clozapine. While we welcome any additional information on these plans, it is not clear whether or to what extent they will improve utilization over the status quo. Most critically, Defendants do not appear to address the fundamental long-standing problems that are preventing patients from timely reaching inpatient programs within Program Guide timelines even though Defendants report having available beds. *See, e.g.*, April 15, 2022 Inpatient Census and Waitlist Report, ECF No. 7529, at 6, 10-11, 13 (reporting 374 available PIP beds (plus 189 available DSH beds), with a waitlist of 87 patients, including 54 waiting past Program Guide timelines). That said, we support expanding the safe availability of Clozapine outside of the PIPs. Additionally, while we are glad to hear the STEP program has finally been rolled out, it has been in place for less than two months. Please share any information Defendants have on its effects to date.

Defendants do not mention efforts to discharge patients from MAX among CDCR's efforts to improve bed utilization. Do Defendants agree that the negotiated requirements in the stipulation and order regarding treatment of MAX custody patients in PIPs, including the MAX custody reviews and suspension of MAX, apply equally to any MHCBs that are flexed into PIPs? *See* ECF Nos. 7392, 7367. Please provide further information in this regard, including identifying which MHCBs currently do and do not have treatment modules.

## VII.   CIM 50-Bed Unit

Defendants note that the long-gestating CIM 50-bed MHCB is slated to become a flex unit for all three levels of care, treating both male and female patients. Have Defendants evaluated whether the unit is being built with adequate treatment group, dayroom, and yard space to support this complex mission?

Nicholas Weber
May 9, 2022
Page 9

Defendants have previously represented that these beds, along with another 50 beds then-planned at RJD, would allow CDCR to deactivate 34 unlicensed crisis beds at CIM, 15 temporary crisis beds at CIW, four flex beds at CIW, and 20 unlicensed crisis beds at SAC.  *See* Defs' Suppl. to 3d Status Report re Funding 100 MHCBs, ECF No. 6235 at 3.  Defendants additionally represented to the Legislature that the new construction may allow CDCR potentially "to discontinue use of licensed beds at Patton State Hospital" which has 30 beds set aside for *Coleman* class members.  *See* Decl. of Dean Borg ISO Defs' 4th Status Report re Funding 100 MHCBs, ECF No. 6256-1 at 5.  (Defendants subsequently abandoned the previously-planned 50 beds at RJD.)

Defendants' now report their eventual plan is to use the 50 new beds at CIM to replace the 34 unlicensed beds at CIM and 19 unlicensed beds at CIW, which Defendants acknowledge would reduce total beds by 3 overall.  Defendants apparently have no plan to replace the 20 unlicensed SAC beds and do not mention PSH.  What are Defendants' current intentions as to PSH?  We strongly urge Defendants to decommission the SAC MCBHU and are concerned that Defendants' proposal is non-committal in that regard.

## VIII.  Plan to Provide Confidential Treatment Space in C5/6

We continue to have longstanding concerns about Defendants' apparent plan to permanently rely on the inappropriate C5/C6 beds at SVSP-PIP, which Defendants committed to the Court would be temporary from the start.  We are doubtful that the recently reported upgrades to nearby vocational spaces that Defendants report completing in March can remedy the well-documented problems with inadequate treatment and programming space at SVSP-PIP.  *See, e.g.*, ECF No. 7039 at 177 ("[C5 and C6] were not meant to be permanent units lasting for ten or more years.  It is not possible to provide the required inpatient care to patients in C5 and C6 due to the physical plant.");  *see also id.* at 62, 65, 177, 183 (noting problems with inadequate IDTT space, inadequate one-on-one space, and practice of providing essentially no treatment to MAX custody patients in C5/C6).  In particular, we are concerned that the new plan to escort patients off-unit for groups will impeded access to care.  We have routinely observed this to be a barrier, including at CMF-PIP.  We request the opportunity to tour, with the Special Master, the newly identified space in the near term in order to further evaluate this proposal.

///

///

///

///

Nicholas Weber
May 9, 2022
Page 10


Thank you for providing your proposal.  We look forward to further discussion in the coming months.

Sincerely,

ROSEN BIEN
GALVAN & GRUNFELD LLP

*/s/ Marc J. Shinn-Krantz*

By:   Marc J. Shinn-Krantz

MSK:MSK
Attachments
cc: *Coleman* co-counsel     Adriano Hrvatin     Dillon Hockerson
    *Coleman* Special Master team     Paul Mello     Carrie Stafford
    Elise Thorn     Samantha Wolff     Christine Ciccotti
    Namrata Kotwani     Melissa Bentz     Nina Raddatz
    Damon McClain     Sundeep Thind     Kristopher Kent

# EXHIBIT M

STATE OF CALIFORNIA —DEPARTMENT OF CORRECTIONS AND REHABILITATION                        GAVIN NEWSOM, GOVERNOR

**OFFICE OF LEGAL AFFAIRS**
Jennifer Neill
General Counsel
P.O. Box 942883
Sacramento, CA 94283-0001



July 20, 2022

Marc Shinn-Krantz
Rosen Bien Galvan and Grunfeld LLP
101 Mission Street, Sixth Floor
San Francisco, A 94105

VIA EMAIL

Marc,

I write in response to your May 9, 2022 letter regarding the California Department of Corrections and Rehabilitation's (CDCR) plan to deactivate the unlicensed beds at California Medical Facility (CMF) Psychiatric Inpatient Program (PIP) L1 and CDCR's draft Flex Bed policy. Attached to this letter is a revision to CDCR's April 21, 2022 plan, as well as a revised flex bed policy and procedure.  Changes to both documents are discussed below.

CDCR's April 21, 2022 Plan to Decommission CMF-PIP L1 and Other Unlicensed Inpatient Beds relied in part on the fall 2021 projections and the Mental Health Bed Need Study. A table comparing capacity and projections was included in the April 21, 2022 plan at page 2.  On May 16, 2022, CDCR received updated projections for spring 2022.  An updated table based on the spring 2022 projections is below and now projects to FY 2023:

| LOC/Program | Capacity (7/5/22)[1] | FY 2023 Projection | Difference |
|---|---|---|---|
| ICF Low | 390 | 272 | -(118) |
| ICF High | 728 | 781 | 53 |
| APP | 412 | 411 | -(1) |
| PIP (CIW/PSH/SQ/CMC) | 127 | 51 | -(76) |
| MHCB | 438 | 303 | -(135) |
| TOTAL | 2,095 | 1,818 | -(277) |

I.        CMF-PIP L1 Deactivation Timeline

The current licensing waiver will expire on October 22, 2022.  In order to safely deactivate CMF-PIP L1 by that date, CDCR will take the following steps: First, CDCR will stop intake to the unit approximately six weeks prior to the expiration of the waiver in order to reduce the population by attrition.  Second, patients not discharged from the PIP before October 22, 2022 will be transferred to open ICF beds in either locked dorm, multi person cells, or single cell beds

---

[1] Capacity numbers have been adjusted to remove the eighteen isolation beds at CHCF PIP.

Page 2

within CMF.  Finally, once the unit is deactivated, CMF PIP L1 staff would be reallocated to CMF PIP treatment units.

II.    Currently Available Fully Licensed Bed Capacity

Plaintiffs ask whether Defendants' 1,972 fully licensed beds include the eighteen isolation rooms at the California Healthcare Facility (CHCF) PIP.  CDCR has corrected the capacity column on the revised L1 plan to remove the eighteen isolation beds.

Plaintiffs also ask whether Defendants' licensed bed count includes beds down for social distance, repairs, admissions, or staffing.  They do.  Because bed availability fluctuates over time, Defendants' plan is anchored in total available licensed beds, not beds available at any given time.

All of CDCR's crisis and inpatient beds are currently operating with the exception of the following beds, which are not currently operating because of social distancing, compliance with the COVID Movement Matrix, construction, or staffing:

- CHCF PIP A2A (39 Acute), A2B (18 Acute), B1A (30 Acute), B1B (25 Acute), B3A (30 ICF), and B5B (30 ICF)
- Eight beds within CMF PIP Locked Dorms
- Nine acute beds within CMF PIP
- Sixteen ICF beds within CMF PIP
- Eight admission beds within SVSP PIP
- Five admission beds within CIW PIP
- Eight beds within PVSP MHCB
- Twelve beds within CCWF MHCB
- Fifty-one beds within CHCF MHCB (A1B and A2B)

These numbers do not account for day-to-day redlines of beds which usually involve minor repairs that take a bed offline for a few days.  And as previously reported, CDCR is also not using the twenty unlicensed crisis beds at California State Prison, Sacramento.

Plaintiffs also ask which units are operating due to court waiver or licensing exception.  The only unlicensed beds within CDCR's system are discussed within CDCR's April 21, 2022 Plan to Decommission CMF-PIP L1 and Other Unlicensed Inpatient Beds.  Those include the California Institution for Men's crisis bed, the Walker Unit at California Institution for Women (CIW), the unlicensed crisis beds at SAC, and the intermediate beds at CMF PIP L1.

III.    CDCR's Flex Bed Policy

Attached to this letter is a revised flex bed policy and procedure.  CDCR has added A and B wings of CMF's 64 bed PIP, the San Quentin PIP beds, and the CIW PIP to the list of units subject to flex.  Retrofits are now being made to the CMF PIP 64 bed unit to allow for flexing. CDCR anticipates that these retrofits will be complete in the next few months.  San Quentin PIP

Page 3

flexes between acute, intermediate, and crisis bed levels of care. CIW PIP flexes between acute and intermediate.

CDCR does not plan to flex CIW's separate crisis bed unit at this time. CDCR has also removed SVSP MHCB and the CMF MHCB from the list of flex locations for now, as additional work is needed to identify treatment space options. CDCR will revisit adding SVSP MHCB and CMF MHCB when those assessments are complete.

For flex bed units, CDCR will allocate staff to units identified as flex beds at the highest acuity level. This allocation will ensure that when a bed or unit is flexed between levels of care, the unit will already be allocated sufficient staff for the new level of care. Patients are provided individualized care in all three levels of inpatient care and flexing the beds would not change that practice.

Physical plants of locations selected for flex bed units were inspected by institutional staff, HCPOP, and licensing to ensure they have adequate treatment space. HCPOP conducted walkthroughs of SVSP, CMF, CHCF, and CIW. CDCR excluded from their plans MHCBs that do not have adequate space. Units require adequate space to provide care at the crisis bed, acute, and intermediate levels of care. Flexing of the units can be done immediately following any necessary retrofits. Aside from the retrofits to the CMF PIP sixty-four bed unit, no other retrofits are needed to activate the spaces listed on the flex bed policies. In the event that off-unit treatment space is identified, mental health and custody will work together to facilitate movement to those treatment areas, similar to how movement is facilitated at SVSP PIP's C5/C6. No flex beds require this accommodation at present.

Flex units would not necessarily need to flex the entire unit to a different level of care. Like CIW PIP, beds could be flexed based on patient clinical need. Patients can program together still on the yard and in groups. At CIW PIP, both acute and intermediate patients program together in groups. Setting a minimum number of patients at each level of care is not necessary to run the flex program.

Treatment team assignments would be managed locally depending on the size of the program and number of staff at a given location. The institution may choose to identify staff for acute or intermediate patients or have all treatment providers offer treatment to patients in all levels of care.

Referrals to acute and intermediate care are managed by the headquarters Inpatient Referral Unit (IRU) and HCPOP. Referrals are processed, with some exception, in the order they are received. Patients referred to either acute or intermediate may be endorsed to a flex bed in their current housing location if they are already in a flex bed unit. Or the patient may be endorsed to another facility. Bed management remains a function of HCPOP. Patients cannot be moved without approval from HCPOP.

Training for custody and nursing staff will be delivered prior to activation at each location. Crisis bed locations identified as potential flex bed units will receive training on program and treatment requirements for acute and intermediate levels of care. At the same time, staff at acute

or intermediate facilities will receive training on crisis bed care.  Training for all mental health staff will be available for delivery prior to activation of each unit.  At CHCF and CMF PIP this training is already part of the integration plans as all staff will be expected to be familiar with policies and procedures for all levels of care across the institution.

Defendants' plans to flex MHCBs to acute and intermediate and to flex acute beds to intermediate will not result in any increased clinical staffing resources as MHCB and acute units are allocated staff at a higher level than intermediate.  Staffing allocated to MHCBs and PIPs will not significantly decrease as part of this plan.  Staff allocated to unlicensed beds that are closed would be lost but integrated into openings within their institution.  Flexing multi-person beds to double or single cell beds would not result in a change in allocation.  CDCR would still staff the unit to the total number of beds, as per practice.

As with mental health staff, custody and nursing staffing will continue to be based on the current designation of the units.  The staffing package for a crisis bed or acute program will be sufficient to manage flexes between those levels of care and intermediate care.  No additional staffing is necessary under the current plan.

IV.    Least Restrictive Housing (LRH) and the Reassessment of Multi Person Cells and Locked Dorms

CDCR has revised its L1 plan to include a reclassification of five four-man locked dorms at CMF PIP.  Those five locked dorms will be reclassified as multi person cells.  These five cells are similar in nature to the six four-man cells at SVSP PIP, which are also classified as multi person cells.  As stated in the L1 plan, the locked dorms are underutilized and by reclassifying twenty locked dorm beds to five multi person cells (the same LRH classification as L1), CDCR believes they will help offset the closure of L1.  CDCR has also removed from its initial L1 plan a process to utilized double cells at SVSP PIP for acute patients.

CDCR continues to review every patient out of their custodial LRH to determine if they are clinically eligible to move to lower custody setting.  Once a patient meets the clinical criteria, they are endorsed to an available bed.  IRU, for instance, conducts reviews of all patients who are eligible for locked or unlocked dorms.  IRU tracks the patients over time and sends comments or recommendations to treatment teams to help assist with an LRH referral when appropriate.

CDCR's plan to use locked dorms or multi person cells as single cells, when necessary, does not change CDCR's LRH process.  The physical space would simply be reclassified, for a time, as another type of housing – whether it is a locked dorm becoming a multi person cell, or a multi person cell becoming a single cell. Using multi-person cells or unlocked dorms for different purposes would only occur if there was lack of demand for those types of housing during a time when CDCR needed additional single or multi person cells.  Thus, flexing these beds remains an option, but would not necessarily impact bed availability.

CDCR would ensure that all bed moves are driven by clinical appropriateness at the headquarters level.  As discussed above, all referrals to acute or intermediate must go through the referral

Page 5

process at IRU and HCPOP.  Patients cannot move without endorsement and acceptance.  If clinical demand indicates the need for additional single or multi-person cells, IRU and HCPOP can work to reclassify locked dorms or multi-person cells for different uses.

Finally, Plaintiffs ask whether CDCR is contemplating using single-cell beds in TC2 that are being used as double beds for the acute plan.  No single cells in TC2 are used as double cells.

V.     Bed Utilization Proposals

The STEP policy was rolled out and training is ongoing.  It is expected that the PIPs will finish training by June 19, 2022.  The STEP policy is in its infancy and is still taking hold so the impact of it is yet unknown.

Defendants remain committed to the agreement on max custody patients reached earlier this year.  Crisis beds handle all custody levels including max custody and, with the exception of CCWF MHCB, all are equipped with treatment modules.

VI.     CIM Fifty Bed Unit and SAC MHCBU

CIM's fifty-bed unit remains a priority project.  The drawings have been approved by the State Fire Marshal and have adequate treatment space.  As designed, the unit complies with state licensing requirements.

CDCR has been operating without using the unlicensed beds at SAC since July 2021.  CDCR has modified its L1 plan to deactivate the SAC beds at the same time CMF PIP L1 deactivates in October 2022.

VII.     SVSP PIP C5/C6

CDCR is not compelled by Plaintiffs' argument that C5 and C6 were once called temporary and thus must someday be decommissioned.  Plaintiffs cite to bed plans that are a decade old.  C5 and C6 are no longer temporary but are a vital and licensed part of CDCR's inpatient bed plan.  The basis for Plaintiffs' objections to those units no longer apply.  C5 and C6 were recently provided additional group treatment space, which was shown to the Special Master and Plaintiffs in August 2021.  The treatment space activated in March 2022 and the yard retrofits have been approved by the state fire marshal with construction pending.  With those modifications in place, C5 and C6 will have adequate group space, yard, and individual treatment space.

Sincerely,

Nick Weber

*/s/ Nick Weber*

Attorney
CDCR
Office of Legal Affairs

<u>California Department of Corrections and Rehabilitation's Plan to</u>
<u>Decommission CMF-PIP L1 and Other Unlicensed Inpatient Beds</u>

<u>July 20, 2022 Revision</u>

I.        Introduction and Background

On April 14, 2017, the Court approved the parties' stipulation to waive licensing requirements so that the California Department of Corrections and Rehabilitation (CDCR) could convert the first floor of the L-Wing at the California Medical Facility Psychiatric Inpatient Program (CMF-PIP L1) into Intermediate Care Facility (ICF) level of care beds.[1]  The period covered under the 2017 order waiving state licensing requirements was extended three times, through April 15, 2021. After further negotiation, a fourth stipulation was approved, extending the waiver an additional eighteen months to October 15, 2022. (ECF No. 7133.) Under that stipulation, Defendants are to "develop a plan to deactivate the beds in L-1 and replace the unit with fully licensed beds at the number and custodial level required by patient need" and to provide the plan to the Special Master and Plaintiffs by April 22, 2022.  (*Id.* at 4.)

In that same stipulation, Defendants voiced their commitment to end their reliance on not only unlicensed CMF-PIP L1 beds, but inpatient beds statewide.  (*Id.* at 3.)  Below is that plan.

II.        Unlicensed Bed Capacity and Inpatient and Crisis Bed Projections

CDCR currently operates the following unlicensed beds:

- Sixty-eight (68) ICF beds at CMF-PIP L1,
- Nineteen (19) flexible[2] use mental health crisis and PIP beds at California Institution for Women (CIW),
- Thirty-four (34) mental health crisis beds (MHCB) at California Institution for Men (CIM), and
- Twenty (20) MHCBs at California State Prison, Sacramento (SAC)[3].

In addition, CDCR maintains 116 ICF beds at Salinas Valley State Prison (SVSP) PIP that were previously classified temporary but are licensed.

Defendants currently operate 2,095 mental health Correctional Treatment Center (CTC) beds, of which 1,954 are licensed.  The Spring 2022 Mental Health Bed Need Study projects a need for 1,818 PIP and crisis beds through Fiscal Year 2023. (ECF No. 7553 at 8.) Notably, while the Spring 2022 study projects a need for additional ICF high custody beds, such as those at CMF-PIP L1, those beds are more than offset by the study's projection that CDCR will need fewer ICF low custody beds, flexible use "PIP" beds[5], Acute Psychiatric Program (APP) beds, and MHCBs in the same timeframe.

---

[1] The waiver of state law was limited to California Health and Safety Code section 1250(j) and California Code of Regulations, Title 22, sections 79501 through 79861.  (See ECF No. 7133 at 3.)
[2] Flexible use beds are those whose level of care can change between intermediate, acute, and/or crisis care as needed to meet bed demand.  CIW Walker Unit's flexible use beds can flex between all three levels of care.
[3] Although counted within CDCR's crisis bed capacity, SAC's unlicensed beds have not been used since July 2021.
[5] Such as those at CIW and San Quentin where beds are already used flexibly between intermediate and acute care.

| LOC/Program | Capacity (7/5/22)[1] | FY 2023 Projection | Difference |
|---|---|---|---|
| ICF Low Custody | 390 | 272 | -(118) |
| ICF High Custody | 728 | 781 | 53 |
| APP | 412 | 411 | -(1) |
| PIP (CIW/PSH/SQ/CMC) | 127 | 51 | -(76) |
| MHCB | 438 | 303 | -(135) |
| TOTAL | 2,095 | 1,818 | -(277) |

III.     Plan to Decommission CMF-PIP L1

CDCR will take a multipronged approach to increase inpatient and crisis bed flexibility, therefore allowing CDCR to permanently decommission CMF-PIP L1 in the coming months and no later than October 15, 2022 contingent on implementing the plans outlined below. CDCR will be able to absorb the loss of CMF-PIP L1's sixty-eight high custody ICF beds by flexing other high custody single cell beds in less demand, such as those in APP or MHCBs, and by converting underutilized multi-person cells or dorms to accommodate patients in need of higher custody ICF housing programs.

A.  Statewide Inpatient Flex Bed Policy and Procedure

For years, CDCR has successfully flexed many inpatient beds between the ICF, APP, and MHCB levels of care without any problems. CDCR, however, has not had a formal policy outlining the process for flexing beds between the three levels of care. Attached to this plan is CDCR's draft Inpatient Flex Bed Policy and Procedure. CDCR plans to finalize this policy prior to deactivation of CMF PIP L1 in October 2022.

As part of the work in developing this policy and procedure, CDCR preliminarily identified inpatient beds that would be appropriate to flex.  Those beds include:

- All PIP and MHCBs at California Healthcare Facility (CHCF). CHCF inpatient beds are designed to be flexed between all three levels of inpatient care.
- 218 APP beds at California Medical Facility (CMF).
- Thirty-two ICF beds in CMF PIP's sixty-four bed unit.
- Twelve (12) MHCBs at California Men's Colony.
- Forty (40) PIP beds at San Quentin PIP.
- Forty-five (45) PIP beds at California Institution for Women PIP[2].

Increasing flexibility for these beds will allow CDCR to fully decommission CMF-PIP L1. All the beds identified above are high custody beds that can be flexed to ICF care as needed.  CDCR is also in the process of identifying additional treatment space at CMF that would allow CMF to flex its MHCB to acute or intermediate.  Similarly, in order to flex the SVSP MHCB, CDCR is exploring potential treatment space options or a potential means of transporting patients from the SVSP MHCB to the adjacent PIP treatment space.

In addition to using existing beds more efficiently, flexing offers significant benefits for the delivery of care to patients as well.  Flexing a bed while keeping a patient in the same place leads to less time wasted in transfers, less time lost when the patient has to re-adjust to a new facility, increased continuity of care, less time lost when an entirely new treatment team has to familiarize themselves with the patient, and a huge savings in time and work for the clinicians as a result of fewer admissions and discharges - time that can be redirected to direct patient treatment.  Flexing beds will

---

[1] Capacity numbers are adjusted to exclude eighteen CHCF PIP isolation beds.

[2] These CIW PIP beds only flex between ICF and APP levels of care.

also reduce lengths of stay as patients who flex in place will not have to wait for admission or discharge processes before moving on to a new level of care.

     B.   Reassessing the Use of Multi-Person Cells and Locked Dorms

Demand for multi-person cell and locked dorm ICF beds has historically trailed demand for single cell ICF beds.  For instance, as of June 29, 2022, thirty-one of seventy-six available locked dorm beds[6] at CMF are empty.

CDCR will immediately reclassify five four-man dorms at CMF PIP from locked dorm to multi person cells.  This change will align the least restrictive housing process for these five cells as well as the sixteen multiperson cells at SVSP PIP, six of which are also four-man cells.

Finally, as part of CDCR's flexible approach to bed use, CDCR will reclassify some multi-person cells or locked dorms as single or double cells as needed. As a result, CDCR could yield up to twenty-eight additional single cell beds as necessary. The beds identified for this flex are as follows:

CMF-PIP A1 and A2

- Five four-bed dorms
- Six eight-bed dorms
- One sixteen-bed dorm

SVSP-PIP TC2

- Six four-bed cells
- Ten two-bed cells

     C.   Additional Initiatives to Improve Bed Utilization

CDCR is undertaking many other initiatives to improve bed utilization.  These include:

- Improving physical discharge timelines after clinical discharge. Moving patients out of beds more quickly reduces waitlists and lengths of stay. Improving these timelines is largely contingent on pandemic conditions and staffing.
- Full utilization of the new PIP STEP Policy and Procedure. The PIP STEP Policy and Procedure was released on March 15, 2022 which encourages greater patient engagement in treatment, clearer milestones, higher staff satisfaction, and reduced lengths of clinical stay.
- Clozapine initiatives. Clozapine is widely recognized as a medication that is both underutilized and highly successful at improving outcomes. CDCR initiatives to increase appropriate prescribing involve coordination with nursing, lab services, pharmacy, and psychiatrist prescribers and supervisors. CDCR has purchased clozapine handbooks for every psychiatrist which provides extensive support and guidelines for prescribers.

---

[6] Eight additional locked dorm beds are unavailable due to COVID social distancing.

IV.    Other Unlicensed Beds

Discussed below is CDCR's plan to end reliance on the remaining unlicensed beds.

A.    CIW's Walker Unit and CIM's Crisis Bed

CIW runs an unlicensed nineteen bed single cell inpatient unit (Walker Unit) that provides care at the ICF, APP, and MHCB levels of care for female patients. (See ECF No. 5931.) CIM runs an unlicensed thirty-four bed crisis bed unit for male patients. CDCR plans to deactivate both units when CIM's new fifty bed inpatient unit is constructed and activated.[7] The fifty-bed unit will be flexible to all three levels of inpatient care and can be used for both male and female patients. Although this plan results in a reduction in three beds overall, the crisis beds at CIM and the Walker Unit at CIW rarely reach capacity. In 2021, the CIM crisis bed had an average census of twenty-six patients while the CIW crisis beds, including Walker Unit, had an average census of seven patients over the same timeframe.

B.    CSP-SAC Unlicensed Crisis Bed Unit

CDCR stopped admission to the twenty unlicensed crisis beds at SAC on July 6, 2021. The loss of beds has been functionally absorbed by other licensed crisis beds so far. The Fall 2021 Mental Health Bed Need Study projects a need for only 317 crisis beds out of a statewide capacity of 438. CDCR will deactivate the SAC unlicensed crisis beds at the same time CMF PIP L1 is deactivated in October 2022.

V.    Appropriate Confidential Treatment Space for Licensed Beds at SVSP-PIP C5 and C6

The Special Master has opined that the ICF program in SVSP-PIP's C5 and C6 lacks adequate confidential group treatment space. In an effort to mitigate these concerns, beginning in 2021, CDCR identified four confidential treatment spaces in the adjacent vocational buildings on SVSP's C-Facility. Those spaces began operating on March 14, 2022. In order to increase outdoor recreation time to these patients, SVSP is in the process of retrofitting the yard adjacent to units C5 and C6. This retrofit is expected to be completed within the next eight to twelve months.

---

[7] The fifty-bed project was on hold pending environmental impact litigation. The court has tentatively resolved the litigation. CDCR is moving preparing for the bid process while it waits for a final order. The project is otherwise funded for the fiscal year and the State Fire Marshal's drawing approval is valid until December 31, 2022.

**Designation of I-Flex Beds**

Effective immediately, the following beds are designated as I-FLEX Beds:

**May flex between Mental Health Crisis Bed (MHCB), Acute Psychiatric Program (APP), and Intermediate Care Facilities (ICF)**

- ~~California Men's Colony MHCB – 12 beds~~
- California Health Care Facility (CHCF) MHCB – 98 beds
- ~~California Medical Facility (CMF) MHCB – 50 beds~~
- CMF A/B Wing – 32 beds
- California Men's Colony MHCB – 12 beds
- ~~Salinas Valley State Prison MHCB – 10 beds~~San Quentin State Prison Psychiatric Inpatient Program (PIP) – 40 beds

**May flex between APP and ICF**

- All CHCF Acute – 214 beds
- All CMF Acute – 218 beds
- California Institution for Women ICF – 45 beds
- 

Note: Number of beds are based on Fiscal Year 2021/2022 staffed capacity.

**Inpatient Flex Bed Local Operating Procedure Template**

**IDENTIFICATION AND TRACKING OF INPATIENT FLEX BEDS (MHCB/APP/ICF)**

Purpose:  Institutions with Inpatient Flex (I-FLEX) Beds shall clearly designate and track the level of care (LOC) of patients assigned to these beds in order to ensure that patients receive clinically appropriate care based on their mental health LOC.

<u>Identification and Tracking Procedure</u>

The LOC of each patient in an I-FLEX bed shall be clearly identified and monitored through use of a readily-available tracking system in real-time basis. Tracking shall specify each patient's current LOC.  Tracking shall also identify which patients are pending endorsement to a new LOC, which patients have been endorsed to current bed I-FLEX bed, and which patients have been endorsed to a different location and are awaiting transfer.
*<ADD LOCAL PROCEDURE TO IDENTIFY AND TRACK THE LOC OF EACH PATIENT IN I-FLEX BEDS>*

Information updated in the tracking system shall be communicated by/through use of
*<ADD LOCAL PROCEDURE TO COMMUNICATE BED STATUS INFORMATION/UPDATES. Examples of this may include: noting on cell door with a magnet, disseminating on a status report or end of shift report, updating on a bed map or nursing station communication board >*

The LOC of each patient in an I-FLEX bed shall be reviewed daily during
*<ADD LOCAL PROCEDURE TO BE UTILIZED TO REVIEW INFORMATION ACROSS DISCIPLINES.  Examples of this may include daily huddles or nursing rounds>*

<u>Identification of Treatment Team Responsible for Care</u>

When a patient in an I-FLEX bed is referred to a different level of care, and the bed is flexed to allow the patient to receive the new level of treatment in the same bed, the patient may be re-assigned to a new treatment team responsible for providing services at their new LOC.
*<ADD LOCAL PROCEDURE TO BE USED TO ASSIGN TREATMENT TEAM RESPONSIBLE FOR PATIENT CARE>*

 **CALIFORNIA CORRECTIONAL**
# HEALTH CARE SERVICES


# MEMORANDUM

| | |
|---|---|
| **Date:** | |

| | |
|---|---|
| **To:** | Chief Executive Officers |
| | CDCR CCHCS Institutional Mental Health Leadership |
| | Regional Health Care Executives |
| | Associate Directors, Division of Adult Institutions |
| | Wardens |
| | Classification and Parole Representatives |

**From:**

AMAR MEHTA, M.D.                                JACKIE CLARK
Deputy Director                                      Deputy Director
Statewide Mental Health Program            Institution Operations


JARED D. LOZANO
Deputy Director
Division of Adult Institutions

| | |
|---|---|
| **Subject:** | **RELEASE OF USE OF INPATIENT FLEX BEDS POLICY AND PROCEDURE** |

Currently, most California Department of Corrections and Rehabilitation mental health inpatient beds are designated as either Mental Health Crisis Bed (MHCB), Acute Psychiatric Program (APP), **or** Intermediate Care Facility (ICF) level of care, and the patient is physically moved to a different location if they need a different level of care.

At some locations, inpatient beds serve multiple purposes. Physical beds that can change between inpatient levels of care are called Inpatient Flex Beds (I-FLEX).

**Designation of New Flex Beds:**

Effective immediately, the following are designated as I-FLEX Beds:

- Psychiatric Inpatient Program (PIP) APP beds – May flex between APP and ICF
- California Health Care Facility (CHCF) MHCB – May flex between MHCB, APP, and ICF
- California Institution for Women (CIW) ICF beds – May flex between ICF and APP
- California Men's Colony (CMC) MHCB* - May flex between MHCB, APP, and ICF
- California Medical Facility (CMF) A/B Wing – May flex between ICF, APP, and MHCB
- ~~California Medical Facility (CMF) MHCB - May flex between MHCB, APP, and ICF~~
- ~~Salinas Valley State Prison MHCB - May flex between MHCB, APP, and ICF~~San Quentin State Prison ICF beds – May flex between MHCB, APP, and ICF

P.O. Box 588500
Elk Grove, CA 95758

# MEMORANDUM

*This location is able to flex a portion of the inpatient capacity based on treatment space.

Institutions with licensed MHCBs may be designated after an onsite review of programming and treatment space. All current I-Flex beds are listed on Attachment A.

Leadership at each facility with I-FLEX beds listed above is responsible for developing a Local Operating Procedure (LOP) based on the attached I-FLEX Bed LOP Template (Attachment B) to clearly designate the level of care of each patient in an I-FLEX Bed, and to provide individualized treatment meeting requirements of the designated level of care. Each facility must send their LOP to the Mental Health Policy Unit by email:  CDCR MHPolicyUnit@CDCR within 30 days of receipt of this memorandum.

Prior to operating I-FLEX beds, all staff treating patients in I-FLEX Beds must receive the standardized training from headquarters regarding policy and procedure related to treating patients at MHCB, APP, and ICF level of care. Training with staff must be completed within 60 days of the receipt of this memorandum.

If you have questions or require additional information related to this memorandum, you may contact the Mental Health Policy Unit by email:  CDCR MHPolicyUnit@CDCR.

Attachments

cc:  Steven Cartwright, Psy.D.
    Kimberly Seibel
    Adam Fouch
    Tennille Atchley
    Travis Williams, Psy.D.
    Michael Golding, M.D.
    Toni Martello, M.D.
    Sophia Le, M.D.
    Erick Rizzotto, M.D.
    Amber Carda, Psy.D.
    Daisy Minter, Ph.D.
    Gretchen Huntington, Psy.D.
    Pak Yan Leung
    Laurie Ball
    Jennifer Johnson
    ~~Sircoya Williams~~
    Lourdes White
    Francesca Jacobo
    Regional Mental Health Administrators

| | | Effective Date: | |
|---|---|---|---|
| **VOLUME 12:** MENTAL HEALTH SERVICES | | | |
| **CHAPTER 11:** CORRECTIONAL TREATMENT CENTER: PSYCHIATRIC INPATIENT PROGRAM | | Revision Date(s): | |
| | | Supersedes: | |
| **12.11.2103** USE OF INPATIENT FLEX BEDS – MENTAL HEALTH CRISIS BED, ACUTE PSYCHIATRIC PROGRAM, AND INTERMEDIATE CARE FACILITY | | Attachments: | Yes ☒ No ☐ |
| | | Director Approval | |

**Policy**

To assist with inpatient level of care and least restrictive housing needs, provide timely access to care, and meet Mental Health Services Delivery System Program Guide (2021 Revision) requirements, designated inpatient beds are used as Inpatient Flex (I-FLEX) Beds. These physical beds can be used for Mental Health Crisis Bed (MHCB), Acute Psychiatric Program (APP), or Intermediate Care Facility (ICF) level of care (LOC) based on statewide need as determined by Corrections Services in consultation with the Statewide Mental Health Program, Inpatient Referral Unit (IRU).

**Responsibilities**

Warden and Chief Executive Officer (CEO) are responsible for developing a Local Operating Procedure (LOP) based on the attached I-FLEX Bed LOP Template (Attachment B) to clearly designate the level of care of each patient in an I-FLEX Bed, and to provide individualized treatment meeting requirements for the designated level of care.

CEO and management team are responsible for ensuring adequate staffing at the level that requires the maximum number of staff, since beds may be flexed at any time.

All staff treating patients in I-FLEX Beds must be trained on the policy and procedures related to treating patients at the MHCB, APP, and ICF levels of care.

Implementation of this policy must be done in coordination with the I-FLEX Procedures.

**Purpose[1]**

I-FLEX beds offer a more agile approach to patient needs throughout the statewide system by ensuring that patients requiring 24-hour inpatient care for mental health disorders are referred, accepted, and admitted for treatment per the Mental Health Services Delivery System Program Guide requirements, with the goal of ensuring continuity of care.

**References**

Mental Health Services Delivery System Program Guide – Chapters 5 and 6

Statewide Mental Health PIP Policy 12.11.2101 (A) – Referral and Admission

Statewide Mental Health PIP Policy 12.11.2101 (B) – Discharge

Statewide Mental Health PIP Policy 12.11.2109 – Treatment Planning and Procedures – Treatment Planning

Statewide Mental Health PIP Policy 12.11.2100 – Housing Review

---

[1] *This policy is intended to reflect best practices in a correctional setting and should be updated periodically to incorporate insights and lessons learned from experience, and to maintain consistency with evolving best practices and new advancements in care recommendations. Nothing contained herein is intended to address what is required to satisfy constitutional obligations.*

| | |
|---|---|
| **Questions** | If you have any questions or need any additional information related to this policy, you may contact the policy unit via e-mail at: CDCR MHPolicyUnit@cdcr. |

| VOLUME 12:<br>MENTAL HEALTH SERVICES | Effective Date: | |
|---|---|---|
| CHAPTER 11:<br>CORRECTIONAL TREATMENT CENTER: PSYCHIATRIC INPATIENT PROGRAM | Revision Date(s): | |
| | Supersedes: | |
| 12.11.2103<br>USE OF INPATIENT FLEX BEDS – MENTAL HEALTH CRISIS BED, ACUTE PSYCHIATRIC PROGRAM, AND INTERMEDIATE CARE FACILITY | Attachments: | Yes ☒ No ☐ |
| | Director Approval: | |

| | *Procedure* |
|---|---|
| **1.** | Use of I-FLEX Beds for treatment of patients requiring MHCB, Acute, or ICF Level of Care (LOC) must occur when Corrections Services, in consultation with IRU, identifies there is bed need for a specific level of inpatient care.<br><br>Current referral and admission procedures and timelines for admission will not be impacted by the designation of I-FLEX Beds.  Patients in I-FLEX Beds must be referred to a new level of care as clinically indicated, according to the Electronic Health Care Records System (EHRS) workflow and PIP Policy 12.11.2101 (A) – Referral and Admission for inpatient referrals.<br><br>If an MHCB patient in an I-FLEX Bed is referred to Acute or ICF level of care, the treatment team must change the mental health LOC (also known as MHI) and initiate Acute or ICF referral process per current procedure and prepare the patient for possible transfer to another unit where they will continue Acute or ICF care.<br><br>When it is initially determined that beds will be designated as I-FLEX Corrections Services will notify California Department of Corrections and Rehabilitation Population Management Unit when a bed requires the I-FLEX designation in the Strategic Offender Management System. Once beds are designated as I-FLEX, Corrections Services will be responsible for internally tracking beds as MHCB, APP and ICF via the Referrals to Inpatient Programs Application (RIPA). Necessary reports will be made available to I-FLEX designated inpatient programs for operational purposes. Patients must not be physically transferred within the I-FLEX unit without an endorsement and acceptance, unless such a move is needed for psychiatric emergencies (see Emergency Moves section of PIP Policy 12.11.2101 (A) – Referral and Admission).<br><br>When a patient is endorsed and admitted to a new level of care within the same facility's I-FLEX unit without moving to a different unit, the receiving treatment team is not required to complete new intake evaluations, as the patient continues to remain in the same licensed unit. The acceptance unit must initiate acceptance, admission, and housing arrival orders per current procedure<br><br>When there is bed need for multiple LOCs, I-FLEX Beds located in a MHCB must be used in the following priority order:<br><br>    1. MHCB<br>    2. APP<br>    3. ICF |

When there is a bed need for multiple LOCs, I-Flex Beds located in CHCF PIP, CIW PIP, or CMF PIP must be used in the following priority order:

1. APP
2. ICF

CMF A/B Wing beds must be used in the following priority order:

1. ICF
2. APP
3. MHCB

San Quentin beds must be used in the following priority order:

1. APP Condemned
2. ICF Condemned
3. MHCB Condemned
4. APP Non-condemned
5. ICF Non-condemned
6. MHCB Non-condemned

IRU may recommend Corrections Services endorsement of patients to specific locations when Clozapine initiation/maintenance, psychological testing, and/or patients requiring dual medical and inpatient psychiatric treatment may be clinically indicated.

| | |
|---|---|
| **2.** | **Changing Level of Care to Acute or ICF**<br><br>1. Patients in I-FLEX Beds must be referred to an Acute or ICF LOC as clinically indicated, consistent with PIP Policy 12.11.2101 (A) – Referral and Admission.<br><br>2. If a patient in an I-FLEX Bed is referred to a different inpatient LOC, the treatment team must change the mental health LOC and initiate Acute or ICF referral process per current procedure; and prepare the patient for possible transfer to another unit where they will continue inpatient care.<br><br>3. If a patient in an I-FLEX Bed is referred to a new LOC, and is endorsed to the same unit at the new LOC, the receiving treatment team must not be required to complete new intake evaluations, as the patient continues to remain in the same licensed unit. The acceptance unit must initiate acceptance, admission, and housing arrival orders per current procedure.<br><br>4. If a patient is moving to a different I-FLEX bed in accordance with a new LOC referral and endorsement, but is not moving to a different unit the receiving treatment team is not required to complete new intake evaluations as the patient continues to remain in the same licensed facility. The acceptance unit must initiate acceptance, admission, and housing arrival orders per current procedure.<br><br>5. If a patient is physically transferred to a different institution due to a LOC change and endorsement, the receiving treatment team must complete mental health and medical intakes as required by California Code of Regulations, Title 22. The acceptance unit at the receiving facility must initiate acceptance, admission, and housing arrival orders per current procedure. |

| | | |
|---|---|---|
| **3.** | **Provision of Treatment** | |
| | When a patient in an I-FLEX bed is referred to a different LOC, and the bed is flexed to allow the patient to receive the new level of treatment in the same bed, the patient must begin receiving treatment consistent with requirements for the new LOC as soon as the patient is endorsed, accepted, and admitted at the new LOC. | |
| **4.** | **Discharges from I-FLEX Beds** | |
| | 1. If an Acute or ICF LOC patient in an I-FLEX Bed is discharged, the treatment team must follow discharge procedures and policy in accordance with PIP Policy 12.11.2101 (B) - Discharge. | |
| | 2. If a MHCB LOC patient in an I-FLEX Bed is discharged, the treatment team must follow discharge policy and procedures in accordance with the Mental Health Services Delivery System Program Guide Chapter 5 – MHCB and memorandum dated September 18, 2018 titled "Updated Mental Health Crisis Bed – Referral, Referral Rescission, and Discharge Policy and Procedures." | |
| | 3. If the treatment team is discharging a patient from an I-FLEX Bed and referring the patient to Acute or ICF LOC, the treatment team must refer the patient in accordance with PIP Policy 12.11.2101 (A) – Referral and Admission; and EHRS workflow. | |

# EXHIBIT N



101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
T: (415) 433-6830 ▪ F: (415) 433-7104
www.rbgg.com

Marc J. Shinn-Krantz
Email: MShinn-Krantz@rbgg.com

September 9, 2022

VIA ELECTRONIC MAIL ONLY

Nicholas Weber
Office of Legal Affairs
California Department of Corrections and Rehabilitation

Re:    *Coleman v. Newsom*:  Objections to Defendants' Flex Bed Proposal
       Our File No. 0489-03

Dear Nick:

Thank you for your July 20, 2022 response to our May 9, 2022 letter regarding Defendants' proposals for CMF L1, inpatient bed planning, and flex beds.

**Objections to Implementing the Flex Bed Proposal**

The Flex Bed Proposal would be a major and problematic modification to the longstanding remedy in this case, reworking the entire inpatient system set forth in Chapters 5, 6, and related sections of the Program Guide.

1.    **No minimum treatment standards.**  Defendants' sweeping Flex Bed Proposal cannot succeed without first establishing minimum treatment standards for each level of care.  The long-running crises in the PIPs at these institutions led the Special Master to recommend that CDCR establish minimum standards for inpatient care because treatment was so deficient.  *See* ECF No. 7555 at 164-65 (May 17, 2022 Inpatient Report).  In 2021, CDCR "committed to working with the Special Master to clarify the required components of the plans requested" in the Special Master's recommendations for inpatient treatment standards.  ECF No. 7051 at 9.  Last week, the Court found that Defendants had not followed through on that commitment to engage in similar planning following the 2021 Inpatient Report, and referred this recommendation to the Special Master and Secretary Kathleen Allison for discussions over a four-month period.  *See* August 29, 2022 Order, ECF No. 7608 at 5-6.  The need for established minimum treatment standards is all the more important in a unit where clinicians need to

Nicholas Weber
September 9, 2022
Page 2

switch between appropriate treatment protocols for patients at two or three levels of care. Defendants must establish adequate minimum treatment standards for the ICF, APP, and MHCB levels of care, and the Flex Bed Proposal must be revised to concretely address how treatment teams will meet those treatment standards in the flex program.

2.    **No Flex-Bed Specific Training.**  Defendants have not developed training protocols specific to the complex mission of a flex program, and instead plan to simply provide existing training about each level of care. Of course, the existing training will need to be revised once Defendants establish minimum treatment standards. But also, Defendants must develop specialized training tailored to the complexities of operating a flex unit, which is different from simply providing care in units that house patients at each individual level of care. In addition, the timing of any training is unclear. Defendants' July 20 letter states at page 3 that training for custody and nursing staff "will be <u>delivered</u> prior to activation" of the flex units but at page 4 notes training for mental health staff "will be <u>available for delivery</u> prior to activation." Is it Defendants' plan to complete delivery of training for mental health staff prior to activation? If not, that should be the plan.

3.    **No New Staffing.**  Defendants' July 20 letter confirms that Defendants will not dedicate any new clinical staffing resources to address the more complex flex units, and in fact CDCR's inpatient staffing allocations will *decrease* due to the closure of unlicensed beds in CMF L1 and the SAC MHCBU without replacing them with licensed beds. The more complex two- or three-part mission requires increased staffing beyond the ratios established for single-mission units.

4.    **Group Treatment Modalities Do Not Work in Single Patient Units.**
Defendants' July 20 letter confirms that there will be no minimum cohort requirement for flexing beds. It is not possible to provide adequate ICF or APP care to a single patient within an MHCB unit. Defendants should consult with the Special Master's experts to establish appropriate minimum cohorts.

5.    **No In Cell Power.**  Most of the beds Defendants plan to flex from the MHCB and APP levels of care may not have in-cell electrical access as is typical of ICF-level beds. On February 7, 2020, Defendants sent us an audit showing which PIP beds have electrical audits. A copy of the audit is enclosed as **Enclosure A**. This audit shows 234 APP beds at CHCF and 188 APP beds at CMF without electrical outlets. Most or perhaps all of these beds appear to be part of Defendants' flex bed proposal. The audit does not cover MHCB beds. We request that Defendants provide an updated audit of all inpatient beds (including MHCB) showing the current status of electrical outlets, and connectivity including radio/television

Nicholas Weber
September 9, 2022
Page 3

signal, functioning television cable, and Wi-Fi coverage for tablets.  Defendants must retrofit any beds without adequate connectivity prior to activating a flex unit.

6.    **Adequacy of Physical Plant.**  Defendants should provide the Special Master team an opportunity to tour and opine on the appropriateness of each physical space that Defendants propose to transform into a flex unit.  This should include reviewing the adequacy of housing, treatment, and other out of cell spaces such as dayroom, yard, programming, phones, meals, and visiting, as well as reviewing any contingency plans to address problems such as spaces that require off-unit movement for programming.

\*    \*    \*

Again, thank you for providing Defendants' revised Proposal.  We are available to discuss the Proposal and our objections at the coming Data and Policy meeting scheduled for Tuesday, September 13 at 1:30 pm, and in the coming months.

Sincerely,

ROSEN BIEN
GALVAN & GRUNFELD LLP

*/s/ Marc J. Shinn-Krantz*

By:  Marc J. Shinn-Krantz

MSK:MSK
Enclosure

cc: *Coleman* co-counsel       Paul Mello       Carrie Stafford
   *Coleman* Special Master team  Samantha Wolff   Brent Reden
   Elise Thorn             Melissa Bentz    Nina Raddatz
   Namrata Kotwani       Sundeep Thind   Kristopher Kent
   Damon McClain         Dillon Hockerson

# Enclosure A

## PIP Information Relative to Housing Units with Electrical Outlets

<u>Number and Name of PIP Housing Units Which DO Contain Electrical Outlets:</u>

- CHCF:
  - ❖ ICF buildings B3A, B3B, B4B, B5A, B5B, B6A, B6B, B7A, B7B, B8A & B8B do have electrical outlets.  (300 Total)
- SVSP:  all housing units contain electrical outlets (266 Total)
- CMF:  (326 Total with power)
  - A2, A3, P3 – all have outlets
  - P2 - has outlets in all cells except the following: P216, P222, P223, P224, P225, and P235
- CIW: -45 cells –all have outlets
- SQ- 50 cells-all have outlets

<u>Number and Name of PIP Housing Units Which DO NOT Contain Electrical Outlets:</u>

- CHCF:
  - ❖ ACUTE buildings A2A, B1A, B1B, B2A, B2B, & B4A do not have electrical outlets.
     (234 Total)
- CMF:
  - Q1, Q2, Q3, S1, S2, P1 -  do not have electrical outlets
  - P2 - P216, P222, P223, P224, P225, and P235 do not have electrical outlets (188 Total)

# EXHIBIT O

STATE OF CALIFORNIA —DEPARTMENT OF CORRECTIONS AND REHABILITATION                                    GAVIN NEWSOM, GOVERNOR

**OFFICE OF LEGAL AFFAIRS**
Jennifer Neill
General Counsel
P.O. Box 942883
Sacramento, CA 94283-0001



September 12, 2022

Marc Shinn-Krantz
Rosen Bien Galvan and Grunfeld LLP
101 Mission Street, Sixth Floor
San Francisco, A 94105

VIA EMAIL

Marc,

I write in response to your September 9, 2022 letter regarding Plaintiffs' Objections to
Defendants' Flex Bed policy and procedure.[1]  Defendants have flexed Psychiatric Inpatient
Program (PIP) and Mental Health Crisis Beds (MHCB) for years without incident.  Defendants'
Flex Bed Policy and Procedure is meant to memorialize and standardize that practice.

Plaintiffs' objections appear to miss this mark and show a fundamental misunderstanding of
what the Flex Bed Policy and Procedure aims to accomplish[2].  Given this late hour objection,
CDCR will continue to route the Flex Bed Policy and Procedure for signature and
implementation.  Plaintiffs' objections are taken up below.

1.   No Minimum Treatment Standards

Plaintiffs complain that the Flex Bed Policy and Procedure lacks minimum treatment standards
for PIP and MHCB beds.  That is because the Flex Bed Policy and Procedure governs the flexing
of beds between levels of care and not minimum standards of care to be provided in these
settings.  Minimum standards of care to be provided in PIPs is, as Plaintiffs accurately point out,
a subject to be taken up by the Special Master and Secretary Allison over the next four months.
While those conversations have not yet concluded, it is premature to assume that the
establishment of such minimums, if they are required, will impact Defendants' longstanding
ability to flex licensed beds between one level of care and another.

---

[1] Defendants provided Plaintiffs and the Special Master with a draft Flex Bed Policy and Procedure on April 21,
2022.  A revision was provided on July 20, 2022.
[2] Plaintiffs state that the Flex Bed Policy and Procedure "would be a major and problematic modification to the
longstanding remedy in this case, reworking the entire inpatient system set forth in Chapters 5, 6, and related
sections of the Program Guide."  This a hyperbolic reading of the policy and is particularly troubling given the
longstanding and transparent use of flex beds within CDCR over the years.  If the Flex Bed Policy and Procedure
harkens such destruction to the framework of the Program Guide, surely Plaintiffs would not have waited until now
to sound the alarm.

Page 2

    2.  No Flex-Bed Specific Training

Clinicians who work in flex bed units will receive, to the extent they have not already, training on the how to provide care at the various levels of care those beds provide.  The training is all-inclusive by its nature so no specialized "Flex Bed" training is required.  Treatment provided to an ICF patient, for instance, in an ICF unit is no different than we would expect to be provided to an ICF patient in a unit or bed recently flexed from APP or MHCB levels of care.  Plaintiffs' conclusory statement that a "flex program" is more "complex" for clinicians is not supported and they provide no details on what special training would be necessary to provide care to patients in such units.

Indeed, as mentioned before, CDCR has flexed beds between levels of care for years without incident.  And CDCR runs mixed PIP units successfully at both California Institution for Women (CIW) and San Quentin (SQ) PIP, which opened in 2012 and 2014 respectively.  It is unclear what additional training you suppose those clinicians would need to continue operating flex units.

    3.  No New Staffing

Defendants' have long established MHCB staffing ratios and last year put forward a PIP staffing plan with its own ratios.  As part of the Flex Bed program, CDCR will allocate those beds at the highest staffing level – MHCB.  As a result, much of the time, providers will have less patients than those who work in non-flex units.  Plaintiffs' conclusion that "two- or three-part missions require[] increased staffing beyond the ratios established for single-mission units" is without merit.

    4.  Group Treatment Modalities do not Work in Single Patient Units

Plaintiffs again, without basis, conclude that "[i]t is not possible to provide adequate ICF or APP care to a single patient within an MHCB unit."  Putting aside Plaintiffs' somewhat extreme example, CDCR regularly provides treatment to patients in mixed level of care settings and have successfully done so for years.  For instance, both the CIW and SQ PIPs are small units (40 – 45 beds) with multiple levels of care.  The SQ PIP, in fact, offers care for MHCB, APP, and ICF patients.

    5.  No In Cell Power

CDCR is not aware of any policy, order, regulation, or statute requiring PIP or crisis beds to "typically" be provided working electrical outlets.  Nor is CDCR aware of any licensure requirement to provide working power outlets to any PIP or crisis bed.  CDCR will not delay the Flex Bed Policy and Procedure in order to retrofit all PIP and crisis beds with working power outlets as Plaintiffs demand.

    6.  Adequacy of Physical Plant

The physical plant of CDCR's PIPs and crisis beds is well known.  The Special Master always has an "opportunity to tour and opine on the appropriateness of each physical space," and

Page 3

Plaintiffs and Defendants are aware that such monitoring has been ongoing for decades. Nonetheless, the Special Master is invited to monitor, as appropriate, Defendants' implementation of its Flex Bed Policy and Procedure.

Defendants will provide Plaintiffs and the Special Master with a final copy of its Flex Bed Policy and Procedure once it is issued.

Sincerely,

Nick Weber

*/s/ Nick Weber*

Attorney
CDCR
Office of Legal Affairs

# EXHIBIT P

**PANNONE LOPES
DEVEREAUX & O'GARA** LLC
c o u n s e l o r s   a t   l a w

LaTri-c-ea McClendon-Hunt
E-mail: lmcclendonhunt@pldlaw.com

September 13, 2022

<u>VIA ELECTRONIC MAIL</u>

Nicholas Weber
Attorney
Department of Corrections & Rehabilitation
1515 S Street, Suite 314S
Sacramento, CA  95811-7243
Nicholas.Weber@cdcr.ca.gov

Re:     **<u>Coleman, et al. v. Newsom, et al.</u>**
        **No. Civ. S-90-0520 KJM DB**

Dear Mr. Weber:

        We are writing to provide our initial questions, comments, and requests connected to the defendants' revised California Medical Facility (CMF) L-1 deactivation plan, sent on July 20, 2022.  On April 21, 2022, the defendants sent their plan to deactivate CMF L-1 and Other Unlicensed Beds, which also contained the flex bed memorandum, policy, and procedure as they related to the deactivation plan.  After receiving the plaintiffs' May 9, 2022 comments and the updated population projections for FY 2023, the defendants on July 20, 2022 responded to the plaintiffs' comments and provided a revision to the April 21, 2022 deactivation plan and the flex bed memorandum, policy, and procedure.  On September 9, 2022, the plaintiffs' responded to the defendants' July 20, 2022 letter, revised deactivation plan and flex bed documents. On September 12, 2022, the defendants provided objections.  Below is the Court's directive regarding CMF L-1, followed by initial comments on the defendants' July 20, 2022 letter, the revised deactivation plan, and flex bed documents.  We hope that our initial comments, questions and request will help to shape forthcoming discussions on this plan.  Please note that our comments do not address the parties' correspondence sent on September 9 and 12, 2022.

I.      **Court's Directive Regarding CMF L-1**

        On April 22, 2021, the Court ordered the following regarding CMF L-1:

        1. The following state licensing requirements shall be waived with respect to the 70 temporary Intermediate Care Facility beds and two observation and restraint rooms in the L-Wing, L-1, at California Medical Facility:

                A. California Health and Safety Code section 1250(j); and

                B. California Code of Regulations, Title 22, sections 79501–79861.

        2. The waiver is extended eighteen months to October 15, 2022;

        3. Within one month from the date of this order, Defendants shall provide the Special

Master and Plaintiffs with an update of the November 2020 plan for additional
structured treatment, taking into account the potential need to limit the L-1 census to
reduce double-celling and/or augment staffing in order to achieve the full minimum
requirement of twelve hours of out of cell time per day, including weekends, for
patients not on quarantine status for whom Defendants shall also report on measures
taken to mitigate the quarantine, subject to monitoring by the Special Master; and shall
provide additional updates every month thereafter; Defendants' update shall include a
report on how many patients are double-celled in the unit;

4. Defendants shall work closely with the Special Master, with input from Plaintiffs as
appropriate, to develop a plan to deactivate the beds in L-1 and replace the unit with
fully licensed inpatient beds at the number and custodial level required by patient
need;

5. The plan shall be provided to the Special Master and Plaintiffs within twelve
months from the date of this order;

6. Once the plan is provided to the Special Master and Plaintiffs, the parties shall
discuss a timeline for implementation and determine whether a further waiver for full
implementation of the plan beyond October 15, 2022, is required.  ECF No. 7133.

Nearly one year after the court ordered the defendants to "work closely with the Special
Master" to develop the plan to deactivate CMF L-1, the defendants provided a complete draft
deactivation plan for CMF L-1 to the Special Master.  Consequently, this plan has been
developed without working closely with the Special Master as ordered by the Court.  The Special
Master's omission from the planning process is a departure from the intent of the Court's Order,
and has constructively delayed progress on this plan.

## II.    Summary of Special Master's Initial Comments on the Defendants' July 20, 2022 Letter and Plan to Deactivate CMF L-1

Below are our comments, questions, and requests connected to the defendants' July 20,
2022 letter and CMF L-1 deactivation plan:

### a.    CMF-PIP L-1 Deactivation Timeline

On page one, the defendants indicated that the April 21, 2022 plan to decommission
CMF-PIP L1 and Other Unlicensed Inpatient Beds "relied in part on the fall 2021 projections
and Mental Health Bed Needs Study."  After drafting the April 21, 2022 plan, the defendants
updated the plan to take into account the spring 2022 projections, which became available after
the initial plan.  Given the need to delay the completion of mental health bed needs assessment
by three months, should the deactivation plan be updated to reflect this change?

### b.    Currently Available Fully Licensed Bed Capacity

During the suicide prevention expert's Fifth Re-Audit and Update of Suicide Prevention
Practices in the CDCR, he was informed in April 2022 that there were tentative plans to close
both of the two licensed mental health crisis bed (MHCB) units (totaling 27 beds) at California
State Prison (CSP/Sac) in early 2023 in order to renovate the correctional treatment center
(CTC).  This is a total of 27 beds.  What is the status of these tentative plans?  If these plans have



been confirmed, does the defendants' current plan take the closure of these two units into account? Will this impact the plan to permanently deactivate the unlicensed MHCBU at CSP/Sac?

**c.    CDCR's Flex Bed Policy**

On page three, the letter states that "Setting a minimum number of patients at each level of care is not necessary to run the flex program." We disagree and would like to have further discussion on this matter.

The letter mentions that training will be provided for custody, nursing, and clinical staff, and that this training is part of the integration plans at CHCF and CMF PIP. Treatment staff have reported that the training was not adequate. We request the opportunity to examine these trainings, as training requires more than familiarity. Staff must be trained and demonstrate an understanding of differences in licensing, Joint Commission (if applicable), and Program Guide requirements for each level of care. Training should address the provision of treatment to patients at different levels of care in the same housing unit.

In the attached memorandum entitled "Release of Use of Inpatient Flex Beds Policy and Procedure," page two states that clinical staff would receive standardized training from headquarters 60 days prior to the activation of the flex bed policy. Given that CMF L-1 is due to be deactivated by October 13, 2022 and training needed to start before August 14, 2022 per the memorandum, do the defendants believe they can timely deactivate CMF L-1 and have sufficient beds to meet the needs of class members?

**d.    Bed Utilization Proposals**

On page five, CDCR's letter asserts that "Crisis beds handle all custody levels including max custody and, with the exception of CCWF MHCB, all are equipped with treatment modules." This is not totally correct, as not all PIPs and MHCBs are currently providing adequate out of cell time, including yard to MAX custody patients. For instance, Corcoran does not have a special management yard for MAX custody patients attached to the MHCB, nor does the CIM MHCB. CHCF PIP's practice regarding yard for MAX custody patients is not clear. Non-Clinical Activity Tracking indicates that most MAX patients refuse yards, leadership says MAX custody patients are escorted to the ASU for yard (a considerable distance), and staff report that MAX custody patients utilize the PIP yard one at a time.

**e.    SVSP PIP C5/C6**

Both SVSP PIP C5 and C6 do not have any suicide-resistant cells, nor any fencing or netting on second tier railings to eliminate the possibility of suicidal patients jumping from the second tier in either unit. Are there plans to renovate C5 and C6 to ensure that cells are suicide-resistant, including fencing or netting placed on second tier railings? If not, we recommend that CDCR take these steps to ensure that the cells are suicide resistant. The defendants stated that additional treatment space has been created, and "yard retrofits" planned. Please provide additional information on the treatment space and the yard retrofits.



### III.  Questions and Comments on the Flex Bed Policy and Procedure

Below are general questions about the policy:

1.  Regarding level of care changes in the same facility, please clarify when new intake evaluations, updated clinical assessments, and IDTTs are required.

2.  Generally, what is the process for monitoring level of care changes?  Currently, documentation in EHRS is not adequately labeled.

3.  How will treatment differ following a change in level of care, particularly when there is not a critical mass of patients with similar treatment needs?

4.  How will staff be trained, and is the staffing level adequate for the required services across levels of care?

5.  How do you avoid patients interfering with the treatment of other patients who may be more stable?

6.  Who is responsible for approving an MHCB for an I-Flex location?

7.  Who endorses, accepts, and admits a patient to a new level of care?

8.  When beds are flexed to PIP levels of care, would the PIP pay differential apply?

9.  Is there sufficient confidential treatment space for individual and group treatment space to accommodate differing levels of care?

10. To the extent that retrofits are needed, is there a schedule for completion?  If so, please provide the schedule.

Thank you for providing the deactivation plan and the attached memorandum, policy, procedure and attachment for comments.  As discussed above, the Court's intent was for us to provide input earlier in the process.  Notwithstanding this issue, the statements and questions above reflect our initial concerns, questions, and additional items needed to evaluate this plan. We look forward to discussing this plan in the near future.

Sincerely,

PANNONE LOPES DEVEREAUX & O'GARA LLC

*/s/ LaTri-c-ea McClendon-Hunt*
LaTri-c-ea McClendon-Hunt



pldolaw.com

# EXHIBIT Q

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS AND REHABILITATION                    GAVIN NEWSOM, GOVERNOR

**OFFICE OF LEGAL AFFAIRS**
Jennifer Neill
General Counsel
P.O. Box 942883
Sacramento, CA 94283-0001



November 1, 2022

Special Master Lopes                    Lisa Ells
Pannone Lopes Devereaux and O'Gara LLC   Rosen Bien Galvan and Grunfeld LLP
Northwoods Office Park, Suite 215N       101 Mission Street, Sixth Floor
1301 Atwood Avenue                       San Francisco, A 94105
Johnston, RI 02919

VIA EMAIL

Dear Ms. McClendon-Hunt,

I write in response to your September 13, 2022 letter regarding the California Department of
Corrections and Rehabilitation's (CDCR) California Medical Facility (CMF) Psychiatric
Inpatient Program (PIP) L1 deactivation plan. CDCR sent the Special Master and Plaintiffs an
initial plan on April 21, 2022 which included a draft Flex Bed Policy and Procedure. After
answering questions from Plaintiffs, CDCR sent a revised Flex Bed Policy and Procedure on
July 20, 2022.

CDCR deactivated CMF PIP L1 on October 18, 2022. CDCR's Flex Bed Policy and Procedure
is part of CDCR's plan for more durable flexibility for its remaining PIP and crisis beds. CDCR
provided copies of the Flex Bed Policy and Procedure to the unions on October 24, 2022.
Following the review period and any requested meet and confer, CDCR will implement the
policy. The Flex Bed Procedure was slightly edited from the version sent to you in August. A
redline is attached for your records.

I.      The Special Master's Initial Comments on CDCR's July 20 Letter and Plans

    a.  CMF PIP L-1 Deactivation Timeline

You ask whether the delay to complete the Unmet Needs Assessment (UNA) should also
necessitate a delay in deactivating CMF PIP L1. (Letter at 2.) Data gathered since the start of
the UNA has not demonstrated any need to delay CMF PIP L1 deactivation. CDCR began
admitting UNA-generated referrals in May 2022 and since that time has not seen any unexpected
spike in higher level of care referrals year over year.

    b.  Currently Available Fully Licensed Bed Capacity

You ask about a plan overheard during a monitoring tour to deactivate crisis beds at California
State Prison, Sacramento (SAC) for construction. Although that project is planned, no date has
been identified and CDCR will not deactivate all twenty-seven beds at one time. As crisis bed
usage is managed on a statewide, not institution-specific, basis, permanently deactivating SAC's

Page 2

unlicensed crisis bed unit is unlikely to impact statewide crisis bed availability even if SAC follows through with its construction projects.[1]

### c.  CDCR's Flex Bed Policy and Procedure

Questions regarding the substance of the Flex Bed Policy and Procedure are addressed in section II, below.  CDCR understands that the Special Master team believes that CDCR must set a minimum number of patients for each level of care to run a flex program.  (Letter at 3.)  As previously stated, and as the Plaintiffs and Special Master are aware, CDCR has operated flex beds and mixed level of care units in its PIPs for a decade and has not needed to set such minimums to successfully run those programs.  Both California Institution for Women and San Quentin PIPs provide care within their units to both intermediate and acute patients as demand dictates.  Their successful model serves as the basis for the Flex Bed Policy and Procedure.

However, regarding training, CDCR notes that your statement that "clinical staff would receive standardized training from headquarters *60 days prior to the activation of the flex bed policy,*" is not accurate.  (Letter at 3, emphasis added.)  Staff must receive training prior to the beds being flexed and that training must be completed within sixty days of the issuance of the final Flex Bed Policy and Procedure.

### d.  Bed Utilization Proposals

Most crisis beds can provide care to max custody patients.  You state that Corcoran and California Institution for Men do not provide care because they do not have max custody yards attached to their respective crisis beds.  While this complaint is far afield from the present Flex Bed Policy and Procedure and CDCR's closure of CMF PIP L1, both Corcoran and CIM are providing yard to max custody patients in their crisis beds.

Similarly, you state that the PIP at California Health Care Facility (CHCF) has issues providing yard for its max custody patients.  CDCR is in the process of installing TTMs in the CHCF PIP to expand out of cell time for those patients.  Nonetheless, out of cell time for max custody PIP patients may be taken up as part of the court's August 29, 2022 order requiring the Special Master and Secretary Allison to discuss setting "minimum standards for the provision of structured therapeutic activities [and] unstructured out of cell activities…" in the PIPs.  (ECF No. 7608 at 5-6.)

### e.  SVSP PIP C5/C6

You ask whether there are plans to install suicide resistant cells in C5/C6 at Salinas Valley State Prison PIP.  CDCR is retrofitting cells 102, 114, and 124 in C5 and cells 109, 119, and 131 in C6 to become suicide resistant.  Those retrofits will occur later in 2022 or early 2023.  CDCR is not contemplating netting installation in C5 or C6 at this time.

CDCR activated group treatment space adjacent to C5 and C6 in March 2022.  CDCR toured these rooms with Plaintiffs and Special Master in late 2021.  Yard retrofits to the C7/C8 side of

---

[1] As of October 5, 2022, CDCR housed 243 patients in its crisis beds statewide – a fill rate of 58%.

Page 3

the yard are ongoing. CDCR will install toilets and drinking fountains, among other improvements, on the C7/C8 yard, which will allow Salinas Valley to fully dedicate the C5/C6 side of the yard to patients housed in the PIP.

II.      Questions and Comments on the Flex Bed Policy and Procedure

You asked ten questions regarding CDCR's Flex Bed Policy and Procedure. The revised policy and procedure were shared on October 24, 2022, at which time the unions will have up to sixty days to respond or request a meet and confer. Once labor negotiations are complete, CDCR will finalize the policy and implement. Your questions are addressed below:

A.  Regarding level of care changes in the same facility, please clarify when new intake evaluations, updated clinical assessments, and IDTTs are required.

When a patient's level of care changes within the same facility (i.e., crisis bed to acute, acute to intermediate) the receiving care team will *not* need to complete a new intake evaluation or clinical assessment since the patient is in the same licensed unit. If a patient physically transfers to another facility or area (i.e., crisis bed to a PIP for acute care), new intake and clinical assessments are required since the patient is being admitted to a new program area or facility.

B.  Generally, what is the process for monitoring level of care changes? Currently, documentation in EHRS is not adequately labeled.

CDCR will add an "I-Flex designation" in SOMS which will identify the I-Flex beds at each facility or location. When a patient is admitted for MHCB, ICF or APP level of care, their level of care will be reflected in EHRS and SOMS.

C.  How will treatment differ following a change in level of care, particularly when there is not a critical mass of patients with similar treatment needs?

Individual treatment is determined by the treatment team. The local team can make recommendations for treatment type and frequency based on the patient's current presentation and treatment needs.

D.  How will staff be trained, and is the staffing level adequate for the required services across levels of care?

Crisis bed staffing has the highest staff to patient ratio of all levels of care. The crisis beds that flex will still be staffed at the crisis bed staffing ratios. Staff at each location will receive training regarding the Program Guide requirements for that level of care, the EHRS workflows and all other policy and procedures relevant to the level of care that will be provided.

Page 4

    E.  How do you avoid patients interfering with the treatment of other patients who may be more stable?

Patient stability and behavior will be approached the same way it is in all of our treatment programs where patients can be functioning at different levels from each other at different times. Staff create individual plans of treatment for the patients to manage their disruptive behavior, and disruptive patients can be redirected when needed.

    F.  Who is responsible for approving an MHCB for an I-Flex location?

According to the Use of Inpatient Flex Beds Procedure:

> *When it is initially determined that beds will be designated as I-FLEX, Corrections Services will notify California Department of Corrections and Rehabilitation Population Management Unit when a bed requires the I-FLEX designation in the Strategic Offender Management System. Once beds are designated as I-FLEX, Corrections Services will be responsible for internally tracking beds as MHCB, APP and ICF via the Referrals to Inpatient Programs Application (RIPA). Necessary reports will be made available to I-FLEX designated inpatient programs for operational purposes. Patients must not be physically transferred within the I-FLEX unit without an endorsement and acceptance, unless such a move is needed for psychiatric emergencies (see Emergency Moves section of PIP Policy 12.11.2101 (A) – Referral and Admission).*

As noted in earlier discussions and correspondence, CDCR will only add additional MHCBs or PIPs as potential flex bed locations once it is determined they have adequate treatment space for all programs and staff is trained on the requirements of operating a flex bed unit.

    G.  Who endorses, accepts, and admits a patient to a new level of care?

Endorsements are the responsibility of HCPOP who will review the custodial factors for determining the patient's Least Restrictive Housing in conjunction with the recommended Clinical Housing Recommendation (CHR). Acceptance and admission orders are conducted by the receiving team and facility per the PIP Policy, 12.11.2101 Referral and Admission.

    H.  When beds are flexed to PIP levels of care, would the PIP pay differential apply?

The PIP pay differential only applies to staff who have position numbers assigned to a PIP. Staff with position numbers assigned to a crisis bed which sometimes flexes to APP/ICF will not receive the pay differential. The pay differential is for the PIP program - not the PIP level of care.

    I.  Is there sufficient confidential treatment space for individual and group treatment space to accommodate differing levels of care?

Yes. CDCR excluded locations that were identified as not having enough space.

Page 5

J.  To the extent that retrofits are needed, is there a schedule for completion?  If so,
    pleaseprovide the schedule.

All identified flex bed locations have completed any necessary retrofits.


Sincerely,

Nick Weber

*/s/ Nick Weber*

Attorney
CDCR
Office of Legal Affairs

| VOLUME 12:<br>MENTAL HEALTH SERVICES | Effective Date: | |
|---|---|---|
| CHAPTER 11:<br>CORRECTIONAL TREATMENT CENTER: PSYCHIATRIC INPATIENT PROGRAM | Revision Date(s): | |
| | Supersedes: | |
| 12.11.2103<br>USE OF INPATIENT FLEX BEDS – MENTAL HEALTH CRISIS BED, ACUTE PSYCHIATRIC PROGRAM, AND INTERMEDIATE CARE FACILITY | Attachments: | Yes ☒ No ☐ |
| | Director Approval: | |

| | *Procedure* |
|---|---|
| **1.** | Use of I-FLEX Beds for treatment of patients requiring MHCB, Acute, or ICF Level of Care (LOC) must occur when Corrections Services, in consultation with the Inpatient Referral Unit (IRU), identifies there is bed need for a specific level of inpatient care.<br><br>Current referral and admission procedures and timelines for admission will not be impacted by the designation of I-FLEX Beds.  Patients in I-FLEX Beds must be referred to a new level of care as clinically indicated, according to the Electronic Health Care Records System (EHRS) workflow and PIP Policy 12.11.2101 (A) – Referral and Admission for inpatient referrals.<br><br>If an MHCB patient in an I-FLEX Bed is referred to Acute or ICF level of care, the treatment team must change the mental health LOC (also known as MHI) and initiate Acute or ICF referral process per current procedure and prepare the patient for possible transfer to another unit where they will continue Acute or ICF care. Patients will continue to receive MHCB level of care services until endorsed and admitted to the new level of care for either APP or ICF.<br><br>When it is initially determined that beds will be designated as I-FLEX Corrections Services will notify California Department of Corrections and Rehabilitation Population Management Unit when a bed requires the I-FLEX designation in the Strategic Offender Management System. Once beds are designated as I-FLEX, Corrections Services will be responsible for internally tracking beds as MHCB, APP and ICF via the Referrals to Inpatient Programs Application (RIPA). Necessary reports will be made available to I-FLEX designated inpatient programs for operational purposes. I-FLEX beds are a statewide resource, as such, Corrections Services will designate bed use and communicate it to the IRU and the Executive Director of each inpatient program. Patients must not be physically transferred within the I-FLEX unit without an endorsement and acceptance, unless such a move is needed for psychiatric emergencies (see Emergency Moves section of PIP Policy 12.11.2101 (A) – Referral and Admission).<br><br>When a patient is endorsed and admitted to a new level of care within the same facility's I-FLEX unit without moving to a different unit, the receiving treatment team is not required to complete new intake evaluations, as the patient continues to remain in the same licensed unit. The acceptance unit must initiate acceptance, admission, and housing arrival orders per PIP Policy 12.11.2101 (A) – Referral and Admission procedure<br><br>When there is bed need for multiple LOCs, I-FLEX Beds located in a MHCB must be used in the following priority order:<br><br>   1.  MHCB<br>   2.  APP |

3.  ICF

When there is a bed need for multiple LOCs, I-Flex Beds located in CHCF PIP, CIW PIP, or CMF PIP must be used in the following priority order:

1.  APP
2.  ICF

CMF A/B Wing beds must be used in the following priority order:

1.  ICF
2.  APP
3.  MHCB

San Quentin beds must be used in the following priority order:

1.  APP Condemned
2.  ICF Condemned
3.  MHCB Condemned
4.  APP Non-condemned
5.  ICF Non-condemned
6.  MHCB Non-condemned

IRU may recommend Corrections Services endorsement of patients to specific locations when Clozapine initiation/maintenance, psychological testing, and/or patients requiring dual medical and inpatient psychiatric treatment may be clinically indicated.

| 2. | **Changing Level of Care to Acute or ICF** |
|---|---|

1.  Patients in I-FLEX Beds must be referred to an Acute or ICF LOC as clinically indicated, consistent with PIP Policy 12.11.2101 (A) – Referral and Admission.

2.  If a patient in an I-FLEX Bed is referred to a different inpatient LOC, the treatment team must change the mental health LOC and initiate Acute or ICF referral process per current procedure; and prepare the patient for possible transfer to another unit where they will continue inpatient care.

3.  If a patient in an I-FLEX Bed is referred to a new LOC, and is endorsed to the same I-Flex bed~~unit~~ at the new LOC or moving to a different I-Flex bed in the same unit, the receiving treatment team is ~~must~~ not ~~be~~ required to complete new intake evaluations, as the patient continues to remain in the same licensed unit. The acceptance unit must initiate acceptance, admission, and housing arrival orders per current procedure.

4.

~~5.~~3.        ~~If a patient is moving to a different I-FLEX bed in accordance with a new LOC referral and endorsement, but is not moving to a different unit the receiving treatment team is not required to complete new intake evaluations as the patient continues to remain in the same licensed facility. The acceptance unit must initiate acceptance, admission, and housing arrival orders per current procedure.~~

~~6.~~4.        If a patient is physically transferred to a different institution due to a LOC change and endorsement, the receiving treatment team must complete mental health and medical intakes as required by California Code of Regulations, Title 22. The acceptance unit at the receiving facility must initiate acceptance, admission, and housing arrival orders per current procedure.

| 3. | **Provision of Treatment** |
| | |
| | When a patient in an I-FLEX bed is referred to a different LOC, and the bed is flexed to allow the patient to receive the new level of treatment in the same bed, the patient must begin receiving treatment consistent with requirements for the new LOC as soon as the patient is endorsed, accepted, and admitted at the new LOC. |
| | |
| | Flex bed designations are managed by Corrections Services and patients will be placed in a bed that is flexed in accordance with their referred and accepted level of care. |
| 4. | **Discharges from I-FLEX Beds** |
| | |
| | 1. If an Acute or ICF LOC patient in an I-FLEX Bed is discharged, the treatment team must follow discharge procedures and policy in accordance with PIP Policy 12.11.2101 (B) - Discharge. Patients will continue to receive care until the patient is physically transferred out of the I-Flex bed. |
| | |
| | 2. If a MHCB LOC patient in an I-FLEX Bed is discharged, the treatment team must follow discharge policy and procedures in accordance with the Mental Health Services Delivery System Program Guide Chapter 5 – MHCB and memorandum dated September 18, 2018 titled "Updated Mental Health Crisis Bed – Referral, Referral Rescission, and Discharge Policy and Procedures." |
| | |
| | 3. If the treatment team is discharging a patient from an I-FLEX Bed and referring the patient to Acute or ICF LOC, the treatment team must refer the patient in accordance with PIP Policy 12.11.2101 (A) – Referral and Admission; and EHRS workflow. |

# EXHIBIT R



LaTri-c-ea McClendon-Hunt.
E-mail: lmcclendonhunt@pldolaw.com

October 27, 2022

VIA ELECTRONIC MAIL

Nick Weber
CDCR Healthcare Legal Team
CDCR Office of Legal Affairs
P.O. Box 94283
Sacramento, CA 94283-0001
Nicholas.Weber@cdcr.ca.gov

**Re:**    **Coleman, et al. v. Newsom, et al.**
         **No. Civ. S-90-0520 KJM DB**

Dear Mr. Weber:

On September 27, 2022, we received an email from Melissa Bentz requesting questions and/or comments by October 27, 2022 on the "Amended-Inmate Property in the Psychiatric Inpatient Program" memorandum which would rescind and supersede the memorandum dated October 11, 2018. On October 25, 2022, Dillon Hockerson emailed us to reiterate that CDCR plans to implement the revised memorandum shortly after October 27, 2022 and that the policy was not contained in the Program Guide. This email suggests that our questions and comments will not be given full consideration prior to the implementation. We hope to discuss and/or have responses to the questions and comments below prior to the implementation of this memorandum.

**I.    Program Guide and CQIT Key Indicators**

As noted in the email from Ms. Bentz, the October 11, 2018 memorandum is not contained in the Program Guide. However, it may impact the final list of continuous quality improvement tool (CQIT) key indicators, which will replace the Program Guide. As part of the 2018 Program Guide revision process, completed on June 29, 2018, the parties agreed to not include policies and memorandums that "were implemented as a result of the Lift and Shift process." ECF No. 5844 at 8. Instead, the parties and the Special Master agreed "to review [psychiatric inpatient program (PIP) policies and memorandums] for any direct conflicts which could not be reconciled with the Program Guide, and mak[e] technical adjustments where necessary." *Id.* at 8. The result was a memorandum attached to the Program Guide "clarifying several technical changes to Chapter 6 of the Program Guide." *Id.* at 8. Notably, this memorandum was implemented after the 2018 revision to the Program Guide; thus, not considered during the revision process. Upon adoption of the 2018 Program Guide, the Court "clarifie[d] for the record that remedial planning for this action [was] substantially complete."

ECF No. 6214 at 4. The Court also discontinued the "parties' obligation to file further annual updates to the Program Guide and the Compendium…unless or until further order of the court." ECF No. 7456 at 4.

Although PIP policies and memorandums were not included in the Program Guide, they can be included in the CQIT key indicators, which will replace the Program Guide. On May 6, 2021, the Special Master filed his report on CQIT key indicators. ECF No. 7151. His report indicated that the additional key indicators for the PIPs were to be developed. *Id.* at 26. On June 20, 2021, with unrelated exceptions and over the defendants' objections, the Court adopted the Special Master's report and provisionally approved his list of key indicators. ECF No. 7216 at 14. The Court "anticipates that final approval of a list of CQIT indicators will replace the need for annual updates to the Program Guide and the Compendium." *Id.*

Consequently, we provide these comments with the understanding that the process to approve CQIT indicators is ongoing, and that this memorandum may impact the remedy in this case.

## II.     External Transfers

On pages one and two, under "External Transfers," please address the following:

1. What should happen to a patient's property when a patient from prison A transfers to prison B's MHCB, then transfers to prison C's PIP? In this situation, the patient's property would still be at prison A when the patient goes to prison B's MHCB. How would the patient's property get from prison A to prison C's PIP? We recommend that the memorandum be revised to address this issue.

2. The memorandum indicates that "Within 24 hours of the IPs arrival to a PIP, the designated custodial supervisor identified as being responsible for IP personal property shall contact R&R staff at the originating institution and request transfer of the personal property." Please explain the rationale for requiring the receiving PIP to make a request when property requests are not required for other inmate transfers.

3. Please identify the system that tracks transfer of property specifically when property is not transferred within 72 hours. Additionally, identify who is accountable when property is not timely transferred.

On page two, under "For Inmate Patients on Suicide Watch," please address the following questions and recommendations:

1. We recommend that the title be changed to include patients on suicide precaution status as suicide precaution status affects property issues, and that the narrative is changed to include the narrative from the "PIP Treatment Planning and Procedures: Suicide Prevention and Response" memorandum that discusses how patients at a high risk of self-harm, but not in immediate danger, shall be placed on suicide precaution status.



2. Please change the date for "12.11.2104. P1 PIP Treatment Planning and Procedures: Suicide Prevention and Response," hereinafter PIP suicide prevention policy, to December 31, 2020.

3. "Health Insurance Privacy and Portability act" should be changed to "Health Insurance Portability and Accountability Act." However, we believe a citation to HIPAA is not necessary as it is not mentioned in the PIP suicide prevention policy.

4. After "The specific procedures regarding how property and other clinical restrictions are made readily available to staff who need to know shall be detailed in Local Operating Procedures," the following requirement from page five of the PIP suicide prevention policy should be cited: "The patient identifier located on the patient's cell door matches the level of observation, property issue, and privileges ordered in the electronic health care record."

5. We recommend that property authorized by a psychiatrist or licensed psychologist be issued in 12 hours, not 24 hours.

Thank you for providing the draft revised memorandum for questions and comments. If additional information is needed, our team is available for further discussion.


Sincerely,

PANNONE LOPES DEVEREAUX & O'GARA LLC

*/s/LaTri-c-ea McClendon-Hunt*
LaTri-c-ea McClendon-Hunt



# EXHIBIT S

| From: | Alex Gourse |
|---|---|
| To: | Hockerson, Dillon@CDCR; Coleman Team - RBG Only; Steve Fama; Coleman Special Master; Lopes Matthew |
| | Paul B. Mello; Sam Wolff (swolff@hansonbridgett.com); Elise Thorn; Damon McClain; Namrata Kotwani; Nick |
| | Weber; Mehta, Amar@CDCR; Steven Cartwright; Ball, Laurie@CDCR; White, Lourdes@CDCR; Baker, Eric@CDCR |
| Cc: | |
| Subject: | RE: Coleman: Notice of Revisions to Policy re: Inmate Patient Property in the PIPs [IMAN-DMS.FID12440] |
| Date: | Thursday, October 27, 2022 8:00:49 PM |
| Attachments: | [RBGG redline] Amended Inmate Patient Property in the Psychiatric Inpatient Program 9-26-22.docx |

Thank you Dillon. Plaintiffs have two questions and two proposed edits:

1. In the paragraph immediately under heading "Internal Transfers," the policy requires that property be transferred "directly" with IPs at the EOP or MHCB level of care who are admitted to a PIP at the same institution. Is there a reason this paragraph does not contemplate IPs being admitted to a PIP from the CCCMS level of care or from the general population?

2. The second and third bulletpointed paragraphs under the heading "External Transfers" appear to be inconsistent. The second paragraph requires that a custodial supervisor at the receiving institution affirmatively reach out to the originating institution to initiate the property-transfer process. But the third paragraph implies that the originating institution will initiate the process by notifying the receiving institution of the pending property transfer. We think that the system in the third paragraph makes more sense. What purpose is served by requiring the receiving institution to initiate the property-transfer process?

3. In the fourth bulletpointed paragraph under the heading "External Transfers," we request that the word "encouraged" be replaced with the word "required."

4. In the paragraph immediately under heading "PIP Property Issuance," we request that Defendants add language requiring documentation of any clinical justification for "removal[s] of property."

We have also attached a redlined version of the policy with our questions in comment bubbles and our proposed edits in redline.

Thank you.


**Alexander Gourse**
ROSEN BIEN GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, CA 94105
(415) 433-6830 (telephone)
(415) 433-7104 (fax)
agourse@rbgg.com


The information contained in this e-mail message may be privileged, confidential and protected from disclosure. If you are not the intended recipient, any dissemination, distribution or copying is strictly prohibited. If you think that you have received this e-mail message in error, please e-mail the sender at agourse@rbgg.com.

**From:** Hockerson, Dillon@CDCR <Dillon.Hockerson@cdcr.ca.gov>
**Sent:** Tuesday, October 25, 2022 11:03 AM
**To:** Coleman Team - RBG Only <ColemanTeam-RBGOnly@rbgg.com>; Steve Fama
<sfama@prisonlaw.com>; Coleman Special Master <colemanspecialmaster@pldolaw.com>; Matt
Lopes <mlopes@pldolaw.com>
**Cc:** Paul B. Mello <Pmello@hansonbridgett.com>; Sam Wolff (swolff@hansonbridgett.com)
<swolff@hansonbridgett.com>; Elise Thorn <Elise.Thorn@doj.ca.gov>; Damon McClain
<Damon.McClain@doj.ca.gov>; Namrata Kotwani <Namrata.Kotwani@doj.ca.gov>; Nick Weber
<Nicholas.Weber@cdcr.ca.gov>; Mehta, Amar@CDCR <Amar.Mehta@cdcr.ca.gov>; Steven
Cartwright <Steven.Cartwright@cdcr.ca.gov>; Ball, Laurie@CDCR <Laurie.Ball@cdcr.ca.gov>; White,
Lourdes@CDCR <Lourdes.White@cdcr.ca.gov>; Baker, Eric@CDCR <Eric.Baker@cdcr.ca.gov>
**Subject:** RE: Coleman: Notice of Revisions to Policy re: Inmate Patient Property in the PIPs

[EXTERNAL MESSAGE NOTICE]

Hello All,

Shortly after October 27th, CDCR plans on issuing the attached revised policy regarding Inmate
Patient Property in the PIPs, which is not a modification to the Program Guide. Please provide
any comments or question before then.

Sincerely,
**Dillon Hockerson**
Attorney
CDCR Office of Legal Affairs
Cell: (916) 413-5796
Email: Dillon.Hockerson@cdcr.ca.gov

THIS DOCUMENT MAY CONTAIN CONFIDENTIAL ATTORNEY-CLIENT COMMUNICATION AND ATTORNEY WORK PRODUCT. PLEASE DO NOT
FORWARD THIS EMAIL WITHOUT MY PERMISSION. IF YOU RECEIVED THIS DOCUMENT IN ERROR PLEASE NOTIFY ME IMMEDIATELY.

**From:** Bentz, Melissa@CDCR <Melissa.Bentz@cdcr.ca.gov>
**Sent:** Tuesday, September 27, 2022 9:23 AM
**To:** Coleman Team - RBG Only <ColemanTeam-RBGOnly@rbgg.com>; Steve Fama
<sfama@prisonlaw.com>; Coleman Special Master <colemanspecialmaster@pldolaw.com>; Matt
Lopes <mlopes@pldolaw.com>
**Cc:** Paul B. Mello <Pmello@hansonbridgett.com>; Sam Wolff (swolff@hansonbridgett.com)

<swolff@hansonbridgett.com>; Elise Thorn <Elise.Thorn@doj.ca.gov>; Damon McClain <Damon.McClain@doj.ca.gov>; Namrata Kotwani <Namrata.Kotwani@doj.ca.gov>; Weber, Nicholas@CDCR <Nicholas.Weber@cdcr.ca.gov>; Hockerson, Dillon@CDCR <Dillon.Hockerson@cdcr.ca.gov>; Thind, Sundeep@CDCR <Sundeep.Thind@cdcr.ca.gov>; Mehta, Amar@CDCR <Amar.Mehta@cdcr.ca.gov>; Cartwright, Steven@CDCR <Steven.Cartwright@cdcr.ca.gov>; Ball, Laurie@CDCR <Laurie.Ball@cdcr.ca.gov>; White, Lourdes@CDCR <Lourdes.White@cdcr.ca.gov>; Baker, Eric@CDCR <Eric.Baker@cdcr.ca.gov>
**Subject:** Coleman: Notice of Revisions to Policy re: Inmate Patient Property in the PIPs

Good morning,

I write to notice the Special Master and Plaintiffs' counsel of revisions to the policy regarding Inmate Patient Property in the PIPs. Please note that this is not a modification to the Program Guide. Please provide any comments or questions by October 27, 2022. We plan to implement the policy shortly thereafter.

Respectfully,

*Melissa C. Bentz*
Attorney, Class Action Team
Office of Legal Affairs
California Department of Corrections and Rehabilitation
Email: Melissa.Bentz@cdcr.ca.gov
Phone: (916) 628-5385

ATTORNEY/CLIENT COMMUNICATION AND/OR ATTORNEY WORK PRODUCT – DO NOT FORWARD COMMUNICATION WITHOUT THE EXPRESS PERMISSION OF THE AUTHOR.

This message was sent from outside the company. Please do not click links or open attachments unless you recognize the source of this email and know the content is safe.

State of California                                          Department of Corrections and Rehabilitation

# Memorandum

Date:

To:

Subject: **AMENDED - INMATE PATIENT PROPERTY IN THE PSYCHIATRIC INPATIENT PROGRAM**

This memorandum rescinds and supersedes the memorandum dated October 11, 2018, titled, "Inmate Patient Property in the Psychiatric Inpatient Program." This memorandum outlines and clarifies the California Department of Corrections and Rehabilitation (CDCR) standardized processes governing inmate patient (IP) property in the Psychiatric Inpatient Programs (PIP).  As part of a greater effort to ensure the timely delivery of IP property to the PIP units, CDCR has implemented additional requirements to fulfill these expectations.

Effective immediately, the procedures outlined below shall be utilized to ensure the receipt of IP personal property at each PIP unit for those IPs referred to, or currently admitted to a PIP.

**Internal Transfers**
For those IPs admitted to the PIP unit directly from the Enhanced Outpatient Program (EOP) or Mental Health Crisis Bed (MHCB) units within their assigned institutions, property shall transfer directly with the IPs.

**Commented [AG1]:** What about CCCMS (or GP for that matter)?  I realize it's less common for those people to jump up to a PIP level of care, but is there a reason the issue isn't contemplated here?

**External Transfers**
For those IPs admitted to a PIP unit from an external institution, the following process shall be utilized:

- At the time an IP is removed from assigned housing for transfer, all personal property shall be inventoried utilizing the Strategic Offender Management System (SOMS) and sent to Receiving and Release (R&R) or designated secure property storage area for accountability, tracking and transfer to receiving institution.
- **Within 24 hours of the IPs arrival to a PIP,** the designated custodial supervisor identified as being responsible for IP personal property shall contact R&R staff at the originating institution and request transfer of the personal property.
- **Within 72 hours of notification from the originating institution,** the designated custodial supervisor identified as being responsible for IP personal property at the originating institution shall ensure all IP personal property is transferred to the receiving institution utilizing any available resources (i.e., Statewide Transportation Unit bus, local transportation team as part of an existing transport).

**Commented [AG2]:** This seems to imply that the originating institution will notify the receiving institution of the pending property transfer, but the paragraph immediately above requires the receiving institution to affirmatively request the transfer of property.  Why does the receiving institution need to request the property transfer in the first place? Shouldn't the originating institution start the process as soon as the IP is transferred?

[4178852.1]

Associate Directors, Division of Adult Institutions
Wardens
Chief Executive Officers
Chiefs of Mental Health
Executive Directors, Psychiatric Inpatient Programs
Amended – Inmate Patient Property in the Psychiatric Inpatient Program

- In instances where a transport is not anticipated to deliver IP personal property within a week, institutions are ~~encouraged~~ required to look at other methods of transporting property, such as an alternative mailing system (i.e., Golden State Overnight); while utilizing the most cost effective means available.
- When IP personal property has not been received within 72 hours of arrival, the receiving institutional staff shall contact the designated custodial manager responsible for IP property, who shall work with the Hiring Authority to ensure the issue is resolved.

**PIP Property Issuance**

IPs in the PIP shall receive all allowable property unless reasons for removal of property are clinically justified and documented in the IP's safety plan and Master Treatment Plan~~, i~~n accordance with PIP Policy dated September 24, 2021, titled, "Psychiatric Inpatient Program Patient Allowable Items/Contraband."

Wardens shall designate a PIP custodial supervisor to be responsible for IP personal property. The designated supervisor shall ensure their local standardized electronic mail and telephone distribution lists are established and maintained to include line staff and supervisors who are responsible for IP property. These contact lists shall be used to communicate with institution staff who are directly or indirectly responsible for IP property transfers, receipt, and issuance to ensure property is expedited and issued at the PIP units.

**For Inmate Patients on Suicide Watch**

According to the 12.11.2104. P1 PIP Treatment Planning and Procedures: Suicide Prevention and Response dated January 6, 2021, IPs identified by staff to be actively suicidal or in immediate danger of self-harm, with or without a suicide plan, shall be placed on Suicide Watch status by a psychiatrist or licensed psychologist.

Orders specifying property restrictions shall be printed as a requisition and kept in an area available to all staff who need to know this information without violating Health Insurance Privacy and Portability act (HIPAA) regulations. The specific procedures regarding how property and other clinical restrictions are made readily available to staff who need to know shall be detailed in Local Operating Procedures.

[4178852.1]

Associate Directors, Division of Adult Institutions
Wardens
Chief Executive Officers
Chiefs of Mental Health
Executive Directors, Psychiatric Inpatient Programs
Amended – Inmate Patient Property in the Psychiatric Inpatient Program

The custodial supervisor who is responsible for IP personal property, shall ensure all property authorized by a psychiatrist or licensed psychologist is issued to IPs within 24 hours of the order.

**Additional Information**

In-Service Training Managers shall ensure Correctional Lieutenants, Correctional Sergeants, Correctional Officers and all staff responsible for the issuance of PIP personal property receive On-the-Job training on this expectation, using BET Code XXX, within 30 days from the date of this memorandum. Wardens shall ensure staff training is completed and submit a proof of practice memorandum, along with a copy of their updated local operating procedure to their respective missions Associate Director.

Each institution shall ensure their Local Operating Procedures (LOP) are updated to reflect the issuance of PIP personal property in accordance with these directives. Wardens shall submit their updated LOPs with a proof of practice memorandum to their appropriate mission Associate Directors within 90 days from the date of this memorandum.

If you have any questions, please contact Mark Tillotson, Captain, Office of Policy Standardization, Division of Adult Institutions, via email at Mark.Tillotson@cdcr.ca.gov, or at (916) 324-5487.

CONNIE GIPSON                              JOSEPH BICK
Director                                  Director
Division of Adult Institutions            Division of Health Care Services

Attachment

cc:
Kimberly Seibel                           Lourdes White
Jared Lozano                              Shad Pulley
Amar Mehta                                Mark Tillotson
Steven Cartwright
Laurie Ball
Mona D. Houston

[4178852.1]

Associate Directors, Division of Adult Institutions
Wardens
Chief Executive Officers
Chiefs of Mental Health
Executive Directors, Psychiatric Inpatient Programs
Amended – Inmate Patient Property in the Psychiatric Inpatient Program

    Laura Eldridge
    Michael Golding

[4178852.1]

# EXHIBIT T

| From: | Hockerson, Dillon@CDCR |
|---|---|
| To: | Alex Gourse; Coleman Team - RBG Only; Steve Fama; Coleman Special Master; Lopes Matthew |
| Cc: | Paul B. Mello; Sam Wolff (swolff@hansonbridgett.com); Elise Thorn; Damon McClain; Namrata Kotwani; Weber, Nicholas@CDCR; Mehta, Amar@CDCR; Cartwright, Steven@CDCR; Ball, Laurie@CDCR; White, Lourdes@CDCR; Baker, Eric@CDCR |
| Subject: | RE: Coleman: Notice of Revisions to Policy re: Inmate Patient Property in the PIPs [IMAN-DMS.FID12440] |
| Date: | Friday, November 4, 2022 5:44:47 PM |
| Attachments: | 2022-11-04 DH-OSM&AG Response re Inmate Patient Property in the PIP Memo.pdf |
| | 2022-11-04 Amended Inmate Patient Property in the Psychiatric Inpatient Program.docx |

Dear Alex and Special Master Lopes,

Attached is CDCR's response letter to Plaintiffs' and the Office of the Special Master's comments and questions to the Amended Inmate Patient Property in the Psychiatric Inpatient Program Memorandum, as well as an updated redline of the Memo.

Please contact me if you would like to discuss further.

Sincerely,
**Dillon Hockerson**
Attorney
CDCR Office of Legal Affairs
Cell: (916) 413-5796
Email: Dillon.Hockerson@cdcr.ca.gov

THIS DOCUMENT MAY CONTAIN CONFIDENTIAL ATTORNEY-CLIENT COMMUNICATION AND ATTORNEY WORK PRODUCT. PLEASE DO NOT FORWARD THIS EMAIL WITHOUT MY PERMISSION. IF YOU RECEIVED THIS DOCUMENT IN ERROR PLEASE NOTIFY ME IMMEDIATELY.

**From:** Alex Gourse <AGourse@rbgg.com>
**Sent:** Thursday, October 27, 2022 5:00 PM
**To:** Hockerson, Dillon@CDCR <Dillon.Hockerson@cdcr.ca.gov>; Coleman Team - RBG Only <ColemanTeam-RBGOnly@rbgg.com>; Steve Fama <sfama@prisonlaw.com>; Coleman Special Master <colemanspecialmaster@pldolaw.com>; Matt Lopes <mlopes@pldolaw.com>
**Cc:** Paul B. Mello <Pmello@hansonbridgett.com>; Sam Wolff (swolff@hansonbridgett.com) <swolff@hansonbridgett.com>; Elise Thorn <Elise.Thorn@doj.ca.gov>; Damon McClain <Damon.McClain@doj.ca.gov>; Namrata Kotwani <Namrata.Kotwani@doj.ca.gov>; Weber, Nicholas@CDCR <Nicholas.Weber@cdcr.ca.gov>; Mehta, Amar@CDCR <Amar.Mehta@cdcr.ca.gov>; Cartwright, Steven@CDCR <Steven.Cartwright@cdcr.ca.gov>; Ball, Laurie@CDCR <Laurie.Ball@cdcr.ca.gov>; White, Lourdes@CDCR <Lourdes.White@cdcr.ca.gov>; Baker, Eric@CDCR <Eric.Baker@cdcr.ca.gov>
**Subject:** RE: Coleman: Notice of Revisions to Policy re: Inmate Patient Property in the PIPs [IMAN-DMS.FID12440]

> **CAUTION:** This email originated from outside of CDCR/CCHCS. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Thank you Dillon.  Plaintiffs have two questions and two proposed edits:

(1)  In the paragraph immediately under heading "Internal Transfers," the policy requires that property be transferred "directly" with IPs at the EOP or MHCB level of care who are admitted to a PIP at the same institution.  Is there a reason this paragraph does not contemplate IPs being admitted to a PIP from the CCCMS level of care or from the general population?

(2)  The second and third bulletpointed paragraphs under the heading "External Transfers" appear to be inconsistent.  The second paragraph requires that a custodial supervisor at the receiving institution affirmatively reach out to the originating institution to initiate the property-transfer process.  But the third paragraph implies that the originating institution will initiate the process by notifying the receiving institution of the pending property transfer.  We think that the system in the third paragraph makes more sense.  What purpose is served by requiring the receiving institution to initiate the property-transfer process?

(3)  In the fourth bulletpointed paragraph under the heading "External Transfers," we request that the word "encouraged" be replaced with the word "required."

(4)  In the paragraph immediately under heading "PIP Property Issuance," we request that Defendants add language requiring documentation of any clinical justification for "removal[s] of property."

We have also attached a redlined version of the policy with our questions in comment bubbles and our proposed edits in redline.

Thank you.


**Alexander Gourse**
ROSEN BIEN GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, CA 94105
(415) 433-6830 (telephone)
(415) 433-7104 (fax)
agourse@rbgg.com

The information contained in this e-mail message may be privileged, confidential and protected from disclosure. If you are not the intended recipient, any dissemination, distribution or copying is strictly prohibited. If you think that you have received this e-mail message in error, please e-mail the sender at agourse@rbgg.com.

**From:** Hockerson, Dillon@CDCR <Dillon.Hockerson@cdcr.ca.gov>
**Sent:** Tuesday, October 25, 2022 11:03 AM
**To:** Coleman Team - RBG Only <ColemanTeam-RBGOnly@rbgg.com>; Steve Fama <sfama@prisonlaw.com>; Coleman Special Master <colemanspecialmaster@pldolaw.com>; Matt Lopes <mlopes@pldolaw.com>
**Cc:** Paul B. Mello <Pmello@hansonbridgett.com>; Sam Wolff (swolff@hansonbridgett.com) <swolff@hansonbridgett.com>; Elise Thorn <Elise.Thorn@doj.ca.gov>; Damon McClain <Damon.McClain@doj.ca.gov>; Namrata Kotwani <Namrata.Kotwani@doj.ca.gov>; Nick Weber <Nicholas.Weber@cdcr.ca.gov>; Mehta, Amar@CDCR <Amar.Mehta@cdcr.ca.gov>; Steven Cartwright <Steven.Cartwright@cdcr.ca.gov>; Ball, Laurie@CDCR <Laurie.Ball@cdcr.ca.gov>; White, Lourdes@CDCR <Lourdes.White@cdcr.ca.gov>; Baker, Eric@CDCR <Eric.Baker@cdcr.ca.gov>
**Subject:** RE: Coleman: Notice of Revisions to Policy re: Inmate Patient Property in the PIPs

[EXTERNAL MESSAGE NOTICE]

Hello All,

Shortly after October 27th, CDCR plans on issuing the attached revised policy regarding Inmate Patient Property in the PIPs, which is not a modification to the Program Guide. Please provide any comments or question before then.

Sincerely,
**Dillon Hockerson**
Attorney
CDCR Office of Legal Affairs
Cell: (916) 413-5796
Email: Dillon.Hockerson@cdcr.ca.gov

THIS DOCUMENT MAY CONTAIN CONFIDENTIAL ATTORNEY-CLIENT COMMUNICATION AND ATTORNEY WORK PRODUCT. PLEASE DO NOT FORWARD THIS EMAIL WITHOUT MY PERMISSION. IF YOU RECEIVED THIS DOCUMENT IN ERROR PLEASE NOTIFY ME IMMEDIATELY.

**From:** Bentz, Melissa@CDCR <Melissa.Bentz@cdcr.ca.gov>
**Sent:** Tuesday, September 27, 2022 9:23 AM
**To:** Coleman Team - RBG Only <ColemanTeam-RBGOnly@rbgg.com>; Steve Fama <sfama@prisonlaw.com>; Coleman Special Master <colemanspecialmaster@pldolaw.com>; Matt Lopes <mlopes@pldolaw.com>
**Cc:** Paul B. Mello <Pmello@hansonbridgett.com>; Sam Wolff (swolff@hansonbridgett.com) <swolff@hansonbridgett.com>; Elise Thorn <Elise.Thorn@doj.ca.gov>; Damon McClain <Damon.McClain@doj.ca.gov>; Namrata Kotwani <Namrata.Kotwani@doj.ca.gov>; Weber, Nicholas@CDCR <Nicholas.Weber@cdcr.ca.gov>; Hockerson, Dillon@CDCR <Dillon.Hockerson@cdcr.ca.gov>; Thind, Sundeep@CDCR <Sundeep.Thind@cdcr.ca.gov>; Mehta, Amar@CDCR <Amar.Mehta@cdcr.ca.gov>; Cartwright, Steven@CDCR <Steven.Cartwright@cdcr.ca.gov>; Ball, Laurie@CDCR <Laurie.Ball@cdcr.ca.gov>; White,

Lourdes@CDCR <Lourdes.White@cdcr.ca.gov>; Baker, Eric@CDCR <Eric.Baker@cdcr.ca.gov>
**Subject:** Coleman: Notice of Revisions to Policy re: Inmate Patient Property in the PIPs

Good morning,

I write to notice the Special Master and Plaintiffs' counsel of revisions to the policy regarding Inmate Patient Property in the PIPs. Please note that this is not a modification to the Program Guide. Please provide any comments or questions by October 27, 2022. We plan to implement the policy shortly thereafter.

Respectfully,

*Melissa C. Bentz*
Attorney, Class Action Team
Office of Legal Affairs
California Department of Corrections and Rehabilitation
Email: Melissa.Bentz@cdcr.ca.gov
Phone: (916) 628-5385

ATTORNEY/CLIENT COMMUNICATION AND/OR ATTORNEY WORK PRODUCT – DO NOT FORWARD COMMUNICATION WITHOUT THE EXPRESS PERMISSION OF THE AUTHOR.

This message was sent from outside the company. Please do not click links or open attachments unless you recognize the source of this email and know the content is safe.

STATE OF CALIFORNIA —DEPARTMENT OF CORRECTIONS AND REHABILITATION                                          GAVIN NEWSOM, GOVERNOR

**OFFICE OF LEGAL AFFAIRS**
Jennifer Neill
General Counsel
P.O. Box 942883
Sacramento, CA 94283-0001



November 4, 2022

Special Master Lopes                              Alex Gourse (agourse@rbgg.com)
Pannone Lopes Devereaux and O'Gara LLC           Rosen Bien Galvan and Grunfeld LLP
Northwoods Office Park, Suite 215N               101 Mission Street, Sixth Floor
1301 Atwood Avenue                               San Francisco, CA 94105
Johnston, RI 02919

**VIA EMAIL ONLY**

Dear Special Master Lopes and Alex,

I write in response to both the Office of the Special Master's (OSM) letter and Plaintiffs' email dated October 27, 2022, regarding questions and recommended edits to the California Department of Corrections and Rehabilitation's (CDCR) Amended Memorandum, Inmate Patient Property in the Psychiatric Inpatient Program (Memo).

**I.      Responses to the OSM's Questions Regarding the External Transfers Section.**

First, the OSM presents the scenario of a patient from Prison A transferring to Prison B's Mental Health Crisis Bed (MHCB), and later transfers to Prison C's Psychiatric Inpatient Program (PIP). The OSM notes that the patient's property would remain at Prison A while the patient is at Prison B's MHCB, and asks how the patient's property would get from Prison A to Prison C's PIP.  A patient's property at Prison A does not transfer with them to a MHCB, or Prison B.  However, once the patient is transferred from Prison B's MHCB to Prison C's PIP then custody staff at Prison C would refer to the Strategic Offender Management System (SOMS) to determine the patient's originating institution, which is Prison A, and will be responsible for initiating the request to transfer the patient's property.

Second, the OSM asks why the receiving PIP's custody staff is responsible for requesting the patient's property.  The receiving institution is required to initiate the request in order to ensure the originating institution is notified to transfer the patient's property in the most expeditious manner.  This is unlike all other inmate transfers because the sending institution may not be the institution where a patient's property is located.   Using the scenario presented by the OSM above, when the patient transfers from Prison A to Prison B's MHCB, the patient's property will remain at Prison A.  However, when the patient transfers from Prison B's MHCB to Prison C's PIP, Prison A will not be notified of the transfer, and the responsibility is best suited for Prison C's custody staff to initiate the request for the property at Prison A.

Special Master Lopes
Alex Gourse
Page 2

Third, the OSM asks what system is used to track the transfer of property, and to identify the staff member accountable when property is not transferred within 72 hours. Per the Memo, "custodial supervisor identified as being responsible for IP personal property at the originating institution shall ensure all IP personal property is transferred to the receiving institution utilizing any available resources (i.e., Statewide Transportation Unit bus, local transportation team as part of an existing transport)."

**II.    Responses to OSM's Questions Regarding the "For Inmate Patients on Suicide Watch" Section.**

First, the OSM recommends the title to include patients on suicide precaution, and to include language explaining that patients at a high risk of self-harm, but not in immediate danger, shall be placed on suicide precaution status. CDCR agrees and has updated the section accordingly.

Second, the OSM recommends changing the date for the "12.11.2104. P1 PIP Treatment Planning Procedures: Suicide Prevention and Response" from January 6, 2021, to December 31, 2020. CDCR disagrees with the recommendation because the policy was signed on January 6, 2021.

Third, the OSM recommends that Memo's reference to the Health Insurance Privacy and Accountability act (HIPAA) be corrected, or removed entirely. CDCR agrees and has updated the language accordingly.

Fourth, the OSM recommends citing the PIP suicide prevention policy: "The patient identifier located on the patient's cell door matches the level of observation, property issue, and privileges ordered in the electronic health care record." The OSM recommends this language should follow after the sentence starting with: "The specific procedures regarding how property and other clinical restrictions . . ." CDCR agrees to include the language but included it in the sentence prior to the sentence recommended by the OSM.

Fifth, the OSM recommends that the authorized property be issued to the patient within 12 hours after the order is made rather than 24 hours. CDCR disagrees with this recommendation because 12 hours places a stringent workload on custody staff.

**III.    Responses to Plaintiffs' Two Questions.**

First, Plaintiffs asks why the Memo does not include patients at the Correctional Clinical Case Management System (CCCMS) Level of Care (LOC) or inmates not a part of the Mental Health Delivery System (MHSDS). CDCR agrees that CCCMS and inmates should be considered, and has deleted "from the Enhanced Outpatient Program (EOP) or Mental Health Crisis Bed (MHCB) units" from the Internal Transfers" section.

Special Master Lopes
Alex Gourse
Page 3

Second, Plaintiffs believe there is an inconsistency between the second and third bullet point under the External Transfers section.  Plaintiffs note the second bullet point places the burden of the receiving institution to reach out to the original institution to initiate the property transfer process, but that the third bullet point implies that the originating institution would notify the receiving institution.  CDCR agrees that the third bullet point contradicts the second bullet point and has updated the third bullet from "Within 72 hours of notification from the originating institution, . . ."  to "If the IP personal property has not been received within 72 hours . . ."

**IV.    Response Plaintiffs' Two Recommendations.**

First, Plaintiffs recommend changing "encouraged" to "required" in the fourth bullet point in the External Transfers section.  CDCR agrees and has update the Memo accordingly.

Lastly, Plaintiffs recommend adding language requiring documentation of any clinical justification for removal of property in the first paragraph under the PIP Property Issuance.  In Plaintiffs' redline document, they updated the sentence to read: "IPs in the PIP shall receive all allowable property unless reasons for removal of property are clinically justified *and documented in the IP's safety plan and Master Treatment Plan,* in . . ."  CDCR rejects Plaintiffs' recommendation.  The edited sentence is redundant and incorrect.  The term "clinically justified" already encompasses property that has already been documented for removal, and such documentation would not be included in a patient's safety plan.

/ / /

/ / /

/ / /

/ / /

/ / /

Special Master Lopes
Alex Gourse
Page 4

CDCR plans on issuing the Memo soon.  Feel free to contact me if you would like to discuss further.

Sincerely,

/s/ **Dillon Hockerson**

DILLON HOCKERSON
Attorney
Office of Legal Affairs

Attachments

    1.  CDCR's November 4, 2022, Amended – Inmate Patient Property in the Psychiatric Inpatient Program Memorandum

cc:    *Coleman* Plaintiffs' Counsel
       *Coleman* Court's Special Master's Team
       *Coleman* Office of the Attorney General's Team
       Hanson Bridgett LLP
       *Coleman* DSH Team
       *Coleman* CDCR Team

State of California                                    Department of Corrections and Rehabilitation

# Memorandum

Date:

To:

Subject:   **AMENDED - INMATE PATIENT PROPERTY IN THE PSYCHIATRIC INPATIENT PROGRAM**

This memorandum rescinds and supersedes the memorandum dated October 11, 2018, titled, "Inmate Patient Property in the Psychiatric Inpatient Program." This memorandum outlines and clarifies the California Department of Corrections and Rehabilitation (CDCR) standardized processes governing inmate patient (IP) property in the Psychiatric Inpatient Programs (PIP).  As part of a greater effort to ensure the timely delivery of IP property to the PIP units, CDCR has implemented additional requirements to fulfill these expectations.

Effective immediately, the procedures outlined below shall be utilized to ensure the receipt of IP personal property at each PIP unit for those IPs referred to, or currently admitted to a PIP.

**Internal Transfers**
For those IPs admitted to the PIP unit directly ~~from the Enhanced Outpatient Program (EOP) or Mental Health Crisis Bed (MHCB) units~~ within their assigned institutions, property shall transfer directly with the IPs.

**External Transfers**
For those IPs admitted to a PIP unit from an external institution, the following process shall be utilized:
- At the time an IP is removed from assigned housing for transfer, all personal property shall be inventoried utilizing the Strategic Offender Management System (SOMS) and sent to Receiving and Release (R&R) or designated secure property storage area for accountability, tracking and transfer to receiving institution.
- **Within 24 hours of the IPs arrival to a PIP,** the designated custodial supervisor identified as being responsible for IP personal property shall contact R&R staff at the originating institution and request transfer of the personal property.
- ~~If the IP personal property has not been received w~~**W**ithin **72 hours** ~~of notification from the originating institution,~~ the designated custodial supervisor identified as being responsible for IP personal property at the originating institution shall ensure all IP personal property is transferred to the receiving institution utilizing any available resources (i.e., Statewide Transportation Unit bus, local transportation team as part of an existing transport).

Associate Directors, Division of Adult Institutions
Wardens
Chief Executive Officers
Chiefs of Mental Health
Executive Directors, Psychiatric Inpatient Programs
Amended – Inmate Patient Property in the Psychiatric Inpatient Program

- In instances where a transport is not anticipated to deliver IP personal property within a week, institutions are ~~encouraged~~ required to look at other methods of transporting property, such as an alternative mailing system (i.e., Golden State Overnight); while utilizing the most cost effective means available.
- When IP personal property has not been received within 72 hours of arrival, the receiving institutional staff shall contact the designated custodial manager responsible for IP property, who shall work with the Hiring Authority to ensure the issue is resolved.

**PIP Property Issuance**
IPs in the PIP shall receive all allowable property unless reasons for removal of property are clinically justified. In accordance with PIP Policy dated September 24, 2021, titled, "Psychiatric Inpatient Program Patient Allowable Items/Contraband."

Wardens shall designate a PIP custodial supervisor to be responsible for IP personal property. The designated supervisor shall ensure their local standardized electronic mail and telephone distribution lists are established and maintained to include line staff and supervisors who are responsible for IP property. These contact lists shall be used to communicate with institution staff who are directly or indirectly responsible for IP property transfers, receipt, and issuance to ensure property is expedited and issued at the PIP units.

**For Inmate Patients on Suicide Watch and Suicide Precautions**
According to the 12.11.2104. P1 PIP Treatment Planning and Procedures: Suicide Prevention and Response dated January 6, 2021, IPs identified by staff to be actively suicidal or in immediate danger of self-harm, with or without a suicide plan, shall be placed on Suicide Watch status by a psychiatrist or licensed psychologist. IPs identified by staff to be at high risk of self-harm behavior, but not in immediate danger, shall be placed on Suicide Precaution status.

Orders specifying property restrictions shall be printed as a requisition and kept in an area available to all staff who need to know this information without violating Health Insurance Portability and Accountability act ~~Health Insurance Privacy and Portability act (HIPAA)~~ regulations. The patient identifier located on the patient's cell door shall match the level of observation, property issue, and privileges ordered in the electronic health care record. The specific procedures regarding how property and other clinical restrictions are made readily available to staff who need to know shall be detailed in Local Operating Procedures.

Associate Directors, Division of Adult Institutions
Wardens
Chief Executive Officers
Chiefs of Mental Health
Executive Directors, Psychiatric Inpatient Programs
Amended – Inmate Patient Property in the Psychiatric Inpatient Program

The custodial supervisor who is responsible for IP personal property, shall ensure all property authorized by a psychiatrist or licensed psychologist is issued to IPs within 24 hours of the order.

**Additional Information**

In-Service Training Managers shall ensure Correctional Lieutenants, Correctional Sergeants, Correctional Officers and all staff responsible for the issuance of PIP personal property receive On-the-Job training on this expectation, using BET Code XXX, within 30 days from the date of this memorandum. Wardens shall ensure staff training is completed and submit a proof of practice memorandum, along with a copy of their updated local operating procedure to their respective missions Associate Director.

Each institution shall ensure their Local Operating Procedures (LOP) are updated to reflect the issuance of PIP personal property in accordance with these directives. Wardens shall submit their updated LOPs with a proof of practice memorandum to their appropriate mission Associate Directors within 90 days from the date of this memorandum.

If you have any questions, please contact Mark Tillotson, Captain, Office of Policy Standardization, Division of Adult Institutions, via email at Mark.Tillotson@cdcr.ca.gov, or at (916) 324-5487.

CONNIE GIPSON                          JOSEPH BICK
Director                              Director
Division of Adult Institutions        Division of Health Care Services

Attachment

cc:
Kimberly Seibel                       Lourdes White
Jared Lozano                          Shad Pulley
Amar Mehta                            Mark Tillotson
Steven Cartwright
Laurie Ball

Associate Directors, Division of Adult Institutions

Wardens

Chief Executive Officers

Chiefs of Mental Health

Executive Directors, Psychiatric Inpatient Programs

Amended – Inmate Patient Property in the Psychiatric Inpatient Program


Mona D. Houston

Laura Eldridge

Michael Golding

# EXHIBIT U

**State of California**

**California Department of Corrections and Rehabilitation**
**Adult Institutions, Programs, and Parole**

# Operations Manual



*"Public Safety, Public Service"*©

## Updated Through
## January 1, 2022

# CHAPTER 5 — ADULT CUSTODY AND SECURITY OPERATIONS

## ARTICLE 1 — PEACE OFFICER AUTHORITY

*Revised February 29, 2009*

**51010.1    Policy**

It is the policy of the California Department of Corrections and Rehabilitation (CDCR) to ensure that CDCR peace officer authority comports with applicable State statutes, regulation and mutual aid agreements.

**51010.2    Purpose**

The purpose of this Article is to clarify CDCR peace officer authority as it relates to inmates, parolees, and California law enforcement requests for assistance.

**51010.3    Peace Officer Authority**

CDCR peace officer authority is outlined in Penal Code (PC) Sections 830.2(d)(1) & (2) and PC 830.5. While normal CDCR peace officer authority applies generally to custody of inmates either inside or outside of a CDCR facility (e.g. escape pursuit and transportation/hospital custody, etc.) and parolees, appropriately trained and equipped CDCR peace officers can be authorized to act outside of normal duties during emergency and non-emergency situations as specified by law.

A CDCR peace officer has authority that extends to any place in the State while engaged in the performance of the duties of his/her respective employment and for the purposes of carrying out the primary function of his/her employment or as required under Sections 8597, 8598, and 8617 of the Government Code (GC).

**51010.4    Emergency Assistance**

When a government agency (city, county, state, federal) makes an emergency mutual aid request that meets the criteria contained in the State Mutual Aid Plan or the Law Enforcement Mutual Aid Plan, response protocol provided in these plans shall be followed.

GC Section 8597 authorizes that when the appropriate state official proclaims a state of emergency or when a state of war emergency exists, PC Section 830.5 CDCR peace officers have full powers and authority as outlined in PC Section 830.1. Criteria for activation of these plans include, but are not limited to, disasters which may result from flood, fire, earthquake, war, sabotage, or riots.

GC Section 8598 authorizes that when a local emergency exists, PC Section 830.5 peace officers have full powers and authority as outlined in PC Section 830.1.

When acting as peace officers under PC Section 830.1, CDCR peace officers are authorized to exercise any powers which are appropriate or which may be directed by their superior officers.

**51010.5    Non-Emergency Assistance (General Law Enforcement Assistance)**

GC Section 8617 provides that the CDCR may exercise non-emergency mutual aid powers in accordance with the Master Mutual Aid Agreement and local ordinances, resolutions, agreements, or plans.

**51010.6    Provision of Assistance in Emergency and Non-Emergency Situations**

CDCR hiring authorities (e.g. Wardens, Regional Parole Administrators) are authorized to provide CDCR peace officer assistance to law enforcement agencies in emergency and non-emergency situations as consistent with the authority discussed herein. Hiring authorities will notify their supervisors of provision of assistance (e.g. Wardens will notify their Associate Directors). Specially trained and equipped peace officers include, but are not limited to, Crisis Response Team members and Emergency Operations Unit personnel conducting tactical and negotiation operations, and Investigative Services Unit members conducting investigative operations, and should be deployed as appropriate for the particular circumstances.

When CDCR peace officers are assigned to provide emergency or non-emergency law enforcement assistance, these tasks become the primary function of their employment for the duration of the assignment. Unless other agreements have been made, all costs associated with this assistance are the responsibility of the CDCR.

**51010.7    Revisions**

The Assistant Secretary, Office of Correctional Safety, shall ensure that the content of this Article is current and accurate.

**51010.8    References**

PC §§ 830.1, 830.2(d)(1) & (2).

GC §§ 8597, 8598, & 8617.

## ARTICLE 2 — USE OF FORCE

*Revised January 12, 2016*

**51020.1    Policy**

It is the policy of the California Department of Corrections and Rehabilitation's (CDCR), Division of Adult Institutions (DAI), to accomplish custodial and correctional functions with minimal reliance on the use of force. Employees may use reasonable force as required in the performance of their duties, but shall not use unnecessary or excessive force. Staff may, at any point, determine the situation can be resolved without the use of force and terminate the use of force process.

This policy, in conjunction with related procedures and training, defines staff responsibilities and requirements concerning the use of force.

This policy will assist staff in identifying when and how much force is appropriate under different circumstances, ensure that supervision, monitoring, and evaluation of the use of force is consistent with procedures and training, and ensure the investigation of possible unnecessary or excessive use of force. Staff found culpable of violations of the Use of Force Policy will be subject to disciplinary (preventive, corrective, or adverse action) procedures.

**51020.2    Purpose**

The purpose of this Article is to outline DAI's procedures pertaining to the use of force, as set forth in CCR, Title 15, Section 3268.

**51020.3    Responsibility**

It is the responsibility of all employees to understand and comply with the Use of Force policy, related procedures, ongoing training, and applicable law.

It is the responsibility of each Institution Head:

- To ensure that all employees receive appropriate training annually and understand the Use of Force policy and procedures, including both the application of force and subsequent reporting and documentation requirements.
- To record and track all training and discipline related to the use of force.

**51020.4    Definitions**

*Revised March 7, 2017*

The following shall define language usage in this Article:

**Reasonable Force**

Reasonable force is the force that an objective, trained, and competent correctional employee faced with similar facts and circumstances, would consider necessary and reasonable to subdue an attacker, overcome resistance, effect custody, or gain compliance with a lawful order.

**Unnecessary Force**

Unnecessary force is the use of force when none is required or appropriate.

**Excessive Force**

Excessive force is the use of more force than is objectively reasonable to accomplish a lawful purpose.

**Immediate Use of Force**

Immediate use of force is the force used to respond without delay to a situation or circumstance that constitutes an imminent threat to institution/facility security or the safety of persons. Employees may use immediate force without prior authorization from a higher official.

Immediate force may be necessary to subdue an attacker, overcome resistance or effect custody.

If it is necessary to use force solely to gain compliance with a lawful order, controlled force shall be used.

**Imminent Threat**

An imminent threat is any situation or circumstance that jeopardizes the safety of persons or compromises the security of the institution, requiring immediate action to stop the threat. Some examples include, but are not limited to: an attempt to escape, on-going physical harm or active physical resistance.

**Controlled Use of Force**

A controlled use of force is the force used in an institution/facility setting, when an inmate's presence or conduct poses a threat to safety or security and the inmate is located in an area that can be controlled or isolated. These situations do not normally involve the imminent threat to loss of life or imminent threat to institution security. All controlled use of force situations requires the authorization and the presence of a First or Second Level Manager during business hours. During non-business hours, the on-site manager shall be the Administrative Officer of the Day (AOD) who is

responsible for the authorization of any controlled use of force and whose presence is required during any controlled use of force. Staff shall make every effort to identify disabilities, to include mental health issues, and note any accommodations that may need to be considered.

**Non-conventional Force**

Non-conventional Force is force that utilizes techniques or instruments that are not specifically authorized in policy, procedures, or training. Depending on the circumstances, non-conventional force can be necessary and reasonable; it can also be unnecessary or excessive.

**Non-deadly Force**

Non-deadly force is any use of force that is not likely to result in death.

**Deadly Force**

Deadly force is any use of force that is likely to result in death. Any discharge of a firearm other than the lawful discharge during weapons qualifications, firearms training, or other legal recreational use of a firearm, is deadly force.

**Great Bodily Injury (GBI)**

Great bodily injury is any bodily injury that creates a substantial risk of death.

**Serious Bodily Injury**

Serious bodily injury means a serious impairment of physical condition, including, but not limited to the following:

- Loss of consciousness;
- Concussion;
- Bone fracture;
- Protracted loss or impairment of function of any bodily member or organ;
- A wound requiring extensive suturing; and
- Serious disfigurement.

**Response Supervisor**

The Response Supervisor is the first line supervisor in an institution/facility responsible for the area where an incident occurs. When responding to or observing an incident involving the use of force, the response supervisor shall assume control of the responders and direct the tactics used to stop the threat. Additionally, the response supervisor shall assess the appropriateness/effectiveness of the force options being deployed, ensuring compliance with policy and training.

**Responding Supervisor**

The Responding Supervisor is the first line supervisor responsible for the employee involved in an incident.

**Incident Commander**

The Incident Commander is the second line supervisor in an institution/facility responsible for the area where an incident occurs or an allegation of excessive or unnecessary force is received.

**First Level Manager**

A First Level Manager in an institution/facility is a Captain, or the AOD.

**First Line Manager**

A First Line Manager is a Parole Administrator, District Administrator, Special Agent-In-Charge, or a Senior Special Agent.

**Second Level Manager**

A Second Level Manager in an institution/facility is an Associate Warden.

**Second Line Manager**

A Second Line Manager is a Deputy Regional Parole Administrator or Chief.

**Institution Head**

The Institution Head is a Warden or designee.

**Institutional Executive Review Committee (IERC)**

The IERC is a committee of institution staff chaired by the respective Institution Head tasked with reviewing all uses of force and every allegation of excessive or unnecessary force. The IERC is the final institutional level of review.

**Department Executive Review Committee (DERC)**

The DERC is a committee of staff selected by, and including, the Associate Director who oversees the respective institution/facility Mission-based group. The DERC has oversight responsibility and final review authority over the IERC. The DERC shall review every use of deadly force and every serious bodily injury, great bodily injury or death that could have been caused by a staff use of force. The DERC shall also

review those incidents referred to the DERC by the IERC Chairperson or otherwise requested by the DERC. The DERC shall conduct all reviews within sixty (60) days of completion by the IERC.

**Deadly Force Investigation Teams (DFIT)**

DFIT is a team of trained department investigators that shall conduct criminal and administrative investigations into every use of deadly force and every death or great bodily injury that could have been caused by a staff use of force, except the lawful discharge of a firearm during weapons qualifications or firearms training, or other legal recreational uses of a firearm. Based on certain local Memoranda of Understanding, criminal investigations may instead be conducted by an outside police department or sheriff's office. Although defined as deadly force DFIT need not investigate the discharge of a warning shot inside an institution/facility if an Investigative Services Unit Sergeant or above, or an uninvolved Correctional Lieutenant, confirms that the discharge of deadly force was a warning shot and that no injuries were caused by the shot. All warning shots shall be reported to the Office of Internal Affairs/DFIT and the Office of the Inspector General (OIG).

**Deadly Force Review Board (DFRB)**

The DFRB conducts a full and complete review of all incidents involving a use of deadly force (except warning shots) and every death or great bodily injury that could have been caused by a staff use of force, regardless of whether the incident occurs in an institutional or community setting.

**Joint Use Committee (JUC)**

The JUC is a committee of field staff from the DAI tasked with reviewing and evaluating recommended revisions to the Division's Use of Force Policy and Procedures.

**Holding Cells**

All holding cells shall be located within buildings or sheltered areas. A holding cell shall not be used as a means of punishment, housing or long-term placement. If clothing is taken from an inmate when they are placed in a holding cell, alternate clothing shall immediately be provided unless security concerns preclude issuance.

**51020.5    Use of Force Options**

It is the expectation that staff evaluate the totality of circumstances involved in any given situation, to include consideration of an inmate's demeanor, bizarre behavior, mental health status if known, medical concerns, as well as ability to understand and/or comply with orders, in an effort to determine the best course of action and tactics to resolve the situation. Whenever possible, verbal persuasion should be attempted in an effort to mitigate the need for force. The type of verbal persuasion will vary dependent upon the inmate's ability to understand. If time permits, verbal orders should be issued prior to resorting to force and are required to be provided before controlled force is used. The unresisted searching or escorting of an inmate/parolee and the unresisted application of authorized restraint equipment is not a use of force. Use of Force options do not have to be utilized in any particular sequence, but should be the force option staff reasonably believes is sufficient. Each force option has specific qualities that should be considered when choosing which option to deploy, including but not limited to: range of effectiveness, level of potential injury, staff safety, deployment methodology, level of threat presented, distance between staff and inmate, number of staff and inmates involved and the inmate's ability to understand. When responding to or observing an incident involving the use of force, the response supervisor shall assume control of the responders and direct the tactics used to stop the threat. Additionally, the response supervisor shall assess the appropriateness/effectiveness of the force options being deployed ensuring compliance with policy and training. Use of force options include but are not limited to:

- Chemical agents: Provides staff the ability to use force while maintaining distance.
- Hand-held batons: The baton is normally issued to custodial staff assigned to positions with direct inmate contact. The baton should not be carried in the extended position unless it is being utilized for the protection of the inmate and/or staff. In controlled use of force, the baton is intended for the defense of staff and to assist in gaining control of the inmate.
- Physical strength and holds: Any deliberate physical contact, using any part of the body to overcome conscious resistance, is considered physical force. A choke hold or any other physical restraint which prevents the person from swallowing or breathing shall not be used unless the use of deadly force would be authorized.
- Less-lethal weapons: A less lethal weapon is any weapon that is not likely to cause death. A 37mm or 40mm launcher and any other weapon used to fire less-lethal projectiles is a less lethal weapon.
- Lethal weapons: A firearm is a lethal weapon because it is used to fire lethal projectiles. A lethal weapon is any weapon that is likely to result in death.

**51020.6    Use of Restraints**

The unresisted application of authorized restraint equipment is not a use of force. When mechanical restraint is required, handcuffs, alone or attached to a waist chain,