DONALD SPECTER – 083925
STEVEN FAMA – 099641
MARGOT MENDELSON – 268583
PRISON LAW OFFICE
1917 Fifth Street
Berkeley, California  94710-1916
Telephone:   (510) 280-2621

CLAUDIA CENTER – 158255
DISABILITY RIGHTS EDUCATION
AND DEFENSE FUND, INC.
Ed Roberts Campus
3075 Adeline Street, Suite 210
Berkeley, California  94703-2578
Telephone:   (510) 644-2555

MICHAEL W. BIEN – 096891
ERNEST GALVAN – 196065
LISA ELLS – 243657
JENNY S. YELIN – 273601
THOMAS NOLAN – 169692
MICHAEL S. NUNEZ – 280535
AMY XU – 330707
CARA E. TRAPANI – 313411
MARC J. SHINN-KRANTZ – 312968
ALEXANDER GOURSE – 321631
GINGER JACKSON-GLEICH – 324454
ADRIENNE PON HARROLD – 326640
ARIELLE W. TOLMAN – 342635
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California  94105-1738
Telephone:   (415) 433-6830

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>   Plaintiffs,<br><br>   v.<br><br>GAVIN NEWSOM, et al.,<br><br>   Defendants. | Case No. 2:90-CV-00520-KJM-DB<br><br>**REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO REJECT DEFENDANTS' PLAN TO PROVIDE MINIMUM TREATMENT STANDARDS FOR PSYCHIATRIC INPATIENT PROGRAMS (ECF NO. 7787) AS INADEQUATE TO REMEDY DEFENDANTS' EIGHTH AMENDMENT VIOLATIONS**<br><br>Judge:  Hon. Kimberly J. Mueller |

**INTRODUCTION**

Defendants' failure to provide adequate psychiatric inpatient treatment violates Plaintiffs' rights under the Eighth Amendment of the U.S. Constitution. *See Coleman v. Wilson*, 912 F. Supp. 1282, 1308-09 (E.D. Cal. 1995); *Brown v. Plata*, 563 U.S. 493, 516 (2011); *Coleman v. Brown*, 938 F. Supp. 2d 955, 981-982 (E.D. Cal. 2013). In their Opposition, Defendants do not dispute this ongoing violation. *See* Defs.' Opp'n, ECF No. 7828 at 10-15; Declaration of Amar Mehta, M.D. in Support of Defs.' Opp'n, ECF No. 7828-3 (Mehta Decl.); Declaration of Joseph Penn, M.D. in Support of Defs.' Opp'n, ECF No. 7828-1 (Penn Decl.). They concede that poor mental health staffing is a cause of the ongoing problem. *See* Mehta Decl., ECF No. 7828-3 at ¶ 7.

Neither Defendants nor their psychiatry expert, Dr. Penn, dispute that patients in CDCR's Psychiatric Inpatient Programs ("PIPs") are mostly locked down in cells, and therefore cannot benefit from the everyday contact and interaction that occur in a hospital setting—referred to herein as a "therapeutic milieu." *See generally* Defs.' Opp'n, ECF No. 7828; Mehta Decl., ECF No. 7828-3; Penn Decl., ECF No. 7828-1 at ¶ 14. Defendants also do not dispute that their proposed minimum standards provide less out-of-cell time to PIP patients than is required for patients in short-term restricted housing. *Compare* ECF No. 7787 at 5-7 ("Defendants' Plan") (10 hours per week of unstructured out-of-cell time) *with* Mental Health Program Guide, ECF No. 7333-1 at 452 (20 hours per week of out-of-cell activities). Moreover, Defendants and their expert do not dispute that prolonged isolation puts patients at grave risk. *See* Defs.' Opp'n, ECF No. 7828 at 16-19; Mehta Decl., ECF No. 7828-3; Penn Decl., ECF No. 7828-1.

Defendants' Plan—which provides no minimum for structured treatment and only 10 hours per week of unstructured out-of-cell activities to psychiatric inpatients—cannot remedy the ongoing constitutional violations in CDCR's PIPs. *See* Defendants' Plan, ECF No. 7787 at 5-7. Therefore, the Court must reject it. *See Plata*, 563 U.S. at 511. The Court should order Defendants to revise their Plan to provide PIP patients with a minimum of 20 hours of structured treatment and 20 hours of unstructured out-of-cell activities per

week. This relief satisfies the requirements of the Prison Litigation Reform Act ("PLRA"): it is necessary to remedy ongoing violations in psychiatric inpatient care, it is narrowly tailored to address the violation, and it is the least intrusive means to do so, given Defendants' long history repeated violations under less specific orders. *See Armstrong v. Newsom*, 58 F.4th 1283, 1296-1297 (9th Cir. 2023).

## I.   PLAINTIFFS' MOTION IS PROCEDURALLY PROPER

Defendants claim that Plaintiffs' response to their Plan is a disguised, improper "motion to modify the Program Guide." Defs.' Opp'n, ECF No. 7828 at 21. The Court has already determined, in adopting the Special Master's recommendation for treatment standards, that a modification is necessary. The only question is what the modification should be. *See* Special Master's Monitoring Report on the Mental Health Inpatient Care Programs for Inmates of the California Department of Corrections and Rehabilitation (Jan. 28, 2021), ECF No. 7039 at 118; Twenty-Ninth Monitoring Round Report – Part A: Special Master's Monitoring Report on the Psychiatric Inpatient Programs for Mental Health Patients of the California Department of Corrections and Rehabilitation (May 17, 2022), ECF No. 7555 at 164-165 ("Special Master's 2022 Inpatient Report"); Order (Aug. 29, 2022), ECF No. 7608 at 6; Order (Jan. 6, 2023), ECF No. 7697 at 3. Defendants' Plan is every bit as much a modification of the Program Guide as Plaintiffs' requested relief.

For the same reasons as there are no procedural improprieties with Defendants submitting a plan to provide minimum treatment standards for the PIPs pursuant to the Court's Jan. 6, 2023 order, there is nothing procedurally improper about Plaintiffs' response. Instead, the questions before the Court are whether Defendants' Plan is adequate to remedy the constitutional violations in the PIPs, and if not, whether Plaintiffs' requested relief satisfies the needs, narrowness, and intrusiveness requirements of the PLRA. *See Armstrong v. Schwarzenegger*, 622 F.3d 1058, 1070 (9th Cir. 2010). In enacting the PLRA, Congress circumscribed, but did not strip away, courts' jurisdiction to remedy constitutional violations in the prison context. *See Plata*, 563 U.S. at 526. Indeed, Courts

may not order prospective relief that is too narrow to correct a violation. *See id.* at 511. Courts must act in the face of ongoing constitutional violations to incarcerated people. *Id.*

## II. PLAINTIFFS' PROPOSED MINIMUM TREATMENT STANDARDS ARE NECESSARY

Defendants' Plan, which provides no minimum standard for structured treatment and only 10 hours per week of unstructured out-of-cell time for patients in the PIPs, is facially inadequate to remedy the Eighth Amendment violations in this case. Defendants' Plan, ECF No. 7787 at 5-7. The Court should adopt Plaintiffs' proposed minimum treatment standards—20 hours of structured treatment per week and 20 hours of unstructured out-of-cell activities—because they are necessary to remedy Defendants' Eighth Amendment violations in the PIPs.

### A. Defendants' Plan Does Not Specify Structured Treatment *Minimums*, But Instead Permits Individual Institutions' Existing Resource Constraints To Specify Structured Treatment *Maximums*.

Defendants contend that their proposed "individualized" standard for structured treatment is an effective "minimum standard" because clinicians must prescribe clinically appropriate care. Defs.' Opp'n, ECF No. 7828 at 15. Clinicians, however, are limited to the set schedules at each facility. *See id.* at 16. Invariably, the number and type of groups and unstructured activities offered on each PIP schedule is constrained by each PIP's respective staffing and space resources. Without minimum treatment hour requirements, there is no systemwide lower bound as to how many groups each institution must make available to providers (and thus patients) on a weekly basis. In effect, rather than setting a "minimum" standard for structured treatment, as the Court ordered Defendants to do, their Plan's entirely individualized structured treatment standard permits each institution's (often dire) resource constraints to set a "maximum" for structured treatment offerings that no individual clinician or treatment team can prescribe their way beyond.

The Special Master has repeatedly identified severe staffing limitations in the PIPs as a primary driver of inadequate treatment delivery, *see, e.g.*, Special Master's 2022 Inpatient Report, ECF No. 7555 at 35, 160, findings the Court has adopted in full, Order

(Aug. 29, 2022), ECF No. 7608.  The Special Master's most recent inpatient monitoring report repeats these findings.  *See*, *e.g.*, Thirtieth Round Monitoring Report – Part A: Special Master's Monitoring Report on the Psychiatric Inpatient Programs for Mental Health Patients of the California Department of Corrections and Rehabilitation (May 11, 2023), ECF No. 7833 at 49 ("Special Master's 2023 PIP Report").  The Special Master recommended that CDCR develop minimum treatment standards for the PIPs because staffing constraints were dictating patients' access to treatment, rather than individualized treatment planning.  Special Master's 2022 Inpatient Report, ECF No. 7555 at 35, 160.  Defendants' concession that these standards were developed without consideration of the PIPs' ongoing staffing constraints, Defs.' Opp'n, ECF No. 7828 at 16, proves Plaintiffs' point: the lack of a structured treatment hour minimum renders Defendants' plan facially inadequate.

Defendants say that individual treatment planning will solve the problem.  The Special Master has found, however, that treatment planning in the PIPs is inadequate.  Treatment plans do not match patients' problems and symptoms, are not updated when clinically indicated, and frequently lacked evidence-based therapies to address patients' needs.  Special Master's 2023 PIP Report, ECF No. 7833 at 68-69.  The Special Master observed that the "[f]ailure of programs to provide the type and frequency of treatment hours outlined in the treatment plan was pervasive."  *Id.* at 70.  Defendants' Plan would place more pressure on the already-failing treatment planning in the PIPs.

**B.     Without Minimum Treatment Standards, CDCR's Inpatients Are At Serious Risk of Languishing In Their Cells For Most Of The Day.**

Defendants concede that CDCR PIPs have no units "where patients can be safely treated in an unlocked dorm setting."  *See* Penn Decl., ECF No. 7828-1 at ¶ 14.  They also concede that on average, PIP patients attended less than 2 hours per day of structured treatment and out-of-cell activities combined.  *See* Mehta Decl., ECF No. 7828-3 at ¶ 6.  In other words, on average, PIP patients remain in their cells upwards of 22 hours per day.  This paints a shocking portrait of isolation—both forced and self-imposed—for the most

seriously mentally ill patients in CDCR custody. An inpatient hospital setting, by contrast, "is characterized by a therapeutic milieu, featuring daylong programming, and access to 24/7 medical care." Declaration of Pablo Stewart, M.D., in Support of Pls.' Motion to Reject Defs.' Plan to Provide Minimum Treatment Standards, ECF No. 7812-2, at ¶ 13 ("Stewart Decl. I"). In such an environment, "the default is that patients are engaging in either therapeutic clinical contacts, structured group psychological treatment, [or] other rehabilitative programming, whenever they are not sleeping, eating, performing tasks of daily living." *Id.* Where such a therapeutic milieu exists, minimum treatment standards are far less necessary. *See id.* at ¶ 14.

Defendants do not dispute that their Plan offers less out of cell time to PIP patients than is required for *Coleman* patients in restricted housing. *See generally* Defs.' Opp'n, ECF No. 7828; Mehta Decl., ECF No. 7828-3; Penn Decl., ECF No. 7828-1. Defendants also do not contest Dr. Stewart's opinion that isolation puts patients with severe mental illness at grave risk. *Id.* Rather, they suggest that because treatment refusals are high among PIP patients, that this risk is somehow mitigated because it is partially self-imposed. *See* Defs.' Opp'n, ECF No. 7828 at 14-15, 18; Penn Decl., ECF No. 7828-1 at ¶ 11. While PIP patients have the right to refuse treatment, persistent treatment refusal among acutely ill psychiatric patients should raise alarm bells that there are many patients in CDCR's PIPs with untreated psychiatric illness and that existing treatment offerings are not working. *See* Stewart Decl. I, ECF No. 7812-2, at ¶ 51. It is not an excuse to maintain the status quo of treatment delivery.

It is against this backdrop that Defendants challenge Dr. Stewart's opinions on the need for minimum treatment standards as "unsupported" and "unscientific" because of the methodological approach he took to reviewing patient records and conducting interviews. *See* Defs.' Opp'n, ECF No. 7828 at 16-19. These familiar criticisms are easily dispensed with. *See Jensen v. Shinn*, 609 F. Supp. 3d 789, 855-856 (D. Ariz. 2022) (rejecting Dr. Penn's objection that Dr. Stewart's opinion "focused on the most seriously mentally ill prisoners" and finding Dr. Penn's own approach "deeply flawed").

First, Dr. Stewart's randomly selected sample of PIP patients was not "biased" because the patients inside the sample group had longer-than-average lengths of stay. Declaration of Pablo Stewart, M.D., in Support of Reply in Support of Pls' Motion to Reject Defs.' Plan, at ¶ 9 ("Stewart Decl. II"). The averages were skewed by two randomly selected patients with extremely long length of stays in the PIPs (over 1,000 days), whom Dr. Stewart omitted from this analysis to avoid focusing on outliers. *Id.* at ¶ 8. Second, Dr. Stewart's focus on the most seriously ill patients in the PIPs to assess the quality and amount of treatment offered is a scientifically valid way to approach evaluation of a health system, one that has been expressly accepted by the federal courts. *Jensen*, 609 F. Supp. 3d at 833-834 (finding that "it makes sense to look to prisoners with serious needs, and in particular, those who suffer adverse outcomes" when assessing the adequacy of a healthcare system). Third, Dr. Stewart's detailed approach to patient interviews makes clear that the interviews were conducted in an ethical, transparent, and standard manner, bolstered by his prior review of the patients' clinicians' notes. Stewart Decl. II at ¶¶ 11-12. Finally, Dr. Stewart's opinion that the current amount of treatment offered in CDCR's PIPs is inadequate, which was based on his extensive clinical experience and his review of patient records and interviews, is consistent with the Special Master's findings, which the Court has adopted. Stewart Decl. I, ECF No. 7812-2 at ¶¶ 45-46.

### C. Plaintiffs' Plan Is Consistent With State And National Standards And The Program Guide.

Minimum treatment standards of 20 hours per week of structured treatment and 20 hours per week of unstructured treatment are necessary to ensure that patients in the CDCR PIPs are able to spend the majority of their days outside their cells, engaged in rehabilitative activity with other patients and staff. *See id.* at ¶¶ 11, 48, 50. This approximates, but does not match, the standard of care for inpatient treatment, which is characterized by a therapeutic milieu with all-day programming. *Id.* at ¶¶ 13-15; *see also* Cal. Code. Regs., Tit. 22, § 73425(c)(1)(L)(3) (providing a minimum of 30 hours per week of structured treatment for special subacute psychiatric inpatient programs in the community). Although

Defendants' expert suggests that in community hospitals, the exact number of hours patients are out of their rooms may vary, *see* Penn Decl., ECF No. 7828-1 at ¶ 10, he does not dispute Dr. Stewart's characterization of the therapeutic milieu and its importance to inpatient care in the community. Plaintiffs' proposed standards, which fall short of the community standard of care, nevertheless strike an appropriate balance between CDCR's security concerns and patient health and safety.

Plaintiffs' proposed standards are also consistent with national correctional standards for mental health care—to the extent that they exist at all for "on-site" provision of psychiatric inpatient treatment. *See* Stewart Decl. II at ¶ 7. Defendants' objections to the applicability of the National Commission on Correctional Health Care's *Standards for Health Services in Prisons* (2018) Standard P-F-03 to the PIPs, *see* Defs.' Opp'n, ECF No. 7828 at 9, are grounded in Defendants' alarming contention that patients in the PIPs should receive *less* structured treatment than patients at lower levels of care. *See* Defs.' Opp'n, ECF No. 7828 at 7; *see also* Stewart Decl. II at ¶ 5. The Program Guide assumes more intensive treatment provision in inpatient programs, which are to provide a "higher level of care" than the Enhanced Outpatient Program ("EOP"). *See* Mental Health Program Guide, ECF No. 7333-1 at 63, 107-108, 121.

Plaintiffs' proposal is also compatible with state licensing requirements for the PIPs. Defendants argue that because California regulations set specific minimum treatment standards for community hospitals, the Court should read the omission of such standards from the parallel Correctional Treatment Center regulations as a reason to refrain from remedial action in deference to the state regulatory decision. Defs.' Opp'n, ECF No. 7828 at 7-4. The opposite is true. State policy must give way to the vindication of federal constitutional rights in the face of ongoing and persistent violations. *N.C. State Bd. of Educ. v. Swann,* 402 U.S. 43, 45 (1971); *Stone v. City and Cnty. of S.F.,* 968 F.2d 850, 862 (9th Cir. 1992). Nothing in the state regulations prohibit minimum standards of care in correctional settings. The presence of minimum standards in community hospital regulations is instructive as to the State's own judgment of what constitutes adequate

[4289940.11]                                              7                    Case No. 2:90-CV-00520-KJM-DB
REPLY ISO PLS.' MOTION RE PIP TREATMENT STANDARDS

inpatient care.

## III. PLAINTIFFS' PROPOSED MINIMUM TREATMENT STANDARDS ARE NARROWLY TAILORED

The Court should find that Plaintiffs' requested relief is narrowly tailored to remedy Defendants' constitutional failure to provide adequate psychiatric inpatient treatment.

### A. Plaintiffs' Proposal Is Consistent With Treatment Standards Governing Defendants' Provision of Inpatient Care to *Coleman* Patients at DSH.

Plaintiffs' proposed minimum standards of 20 hours of structured treatment and 20 hours of unstructured treatment are neither "arbitrary" nor "overbroad." *See* Defs.' Opp'n, ECF No. 7828 at 5-6, 11-15. They are, in fact, more modest standards than those tailored to address constitutional rights violations of psychiatric inpatients in California's state hospitals. Amended Consent Judgment, *United States v. California*, No. CV 06-2667 GPS, (C.D. Cal. 2007), ECF No. 9 at 2, 13, 15-17 (40 hours per week of treatment and rehabilitation, excluding recreation). Plaintiffs' proposed standards are also more modest than the minimums that Defendants' own witnesses testified were necessary in the pre-cursor units to the PIPs at Salinas Valley State Prison in 2010. Declaration of Richard Lipon, ECF No. 3932-2 ¶ 3 (35-40 hours per week of programming); Declaration of Vic Brewer, ECF No. 3913-3 ¶ 5 (same). Furthermore, Plaintiffs' proposed minimum standards are even more tailored to remedy the constitutional violations of patients' rights in CDCR's PIPs than they were for patients in DSH, because in CDCR, patients reside in locked cells, without access to a therapeutic milieu.

### B. Plaintiffs' Proposal Sets an Appropriate Constitutional Floor.

Because CDCR's PIPs lack a therapeutic milieu, it is undisputed that even if adopted, Plaintiffs' proposed minimum treatment standards would fail to raise CDCR's treatment provision to match that in the community. But for the purposes of establishing a narrowly tailored, constitutional floor, 20 hours per week of structured treatment and 20 hours per week of unstructured treatment is appropriate, as it provides psychiatric inpatients with minimally adequate treatment.

Defendants concede that 20 hours of structured treatment for psychiatric inpatients

[4289940.11]   8   Case No. 2:90-CV-00520-KJM-DB
REPLY ISO PLS.' MOTION RE PIP TREATMENT STANDARDS

is consistent with other state correctional systems, like New York, under remedial order for alleged constitutional violations. Defs.' Opp'n, ECF No. 7828 at 19. Indeed, according to Defendants' own survey, acceptance of Defendants' Plan with no structured treatment minimum, would put California—with its decades-long history of constitutional violations—at the bottom of the correctional landscape as one of the most laissez faire states in terms of psychiatric inpatient treatment standards. *See* Galvan Decl. Ex. C (Email from Nick Weber to Lisa Ells re: Survey and Responses (Feb. 2, 2023), ECF No. 7812-1 at 36 (summarizing survey responses).

### IV. PLAINTIFFS' PROPOSED MINIMUM TREATMENT STANDARDS ARE THE LEAST INTRUSIVE MEANS TO REMEDY DEFENDANTS' CONSTITUTIONAL VIOLATIONS

The Court should find that an order directing Defendants to adopt Plaintiffs' proposed minimum treatment standards is the least intrusive means to remedy Defendants' constitutionally deficient treatment provision in the PIPs.

#### A. Minimum Standards Preserve Clinical Discretion.

The Program Guide's imposition of minimum structured treatment hours for EOP patients leaves ample room for clinical discretion. These minimum standards are paired with a requirement that treatment plans be individualized. Mental Health Program Guide, ECF No. 7333-1 at 58. Further, the EOP Modified subprogram permits treatment teams to appropriately document and track clinically indicated downward departures for patients who are unable to tolerate minimum structured treatment hours. *See id.* Defendants do not explain why a similar approach could not be utilized in the PIPs. Moreover, to the extent that minimum treatment standards help to ensure effective system-wide planning, they *enhance* clinical discretion. When the PIPs are adequately resourced, treatment teams have the power to select from a wider pool of treatment offerings to individualize care for patients.

#### B. Minimum Standards Do Not Dictate the Types of Treatment Offered.

If the Court elects to grant Plaintiffs' requested relief, Defendants would also retain control over which types of structured treatment and unstructured out-of-cell activities they

want to offer to patients. For example, Defendants could elect to allocate the majority of the 20 hours of structured treatment for acute patients as individual clinical contacts rather than group treatment, if they view group treatment as less appropriate for acute patients.

### C. Local Schedules Are Compatible With Minimum Standards.

Defendants would also remain free to continue to craft different weekly "schedules" for each PIP, tailored to each institutions' particular needs and preferences. The difference would be that under Plaintiffs' proposed treatment standards, each PIP would be required to create schedules sufficient to offer every patient at least 20 hours of structured treatment per week and 20 hours of unstructured treatment per week, rather than let present resource constraints drive scheduled offerings. This would create a durable constitutional floor that would protect CDCR's most vulnerable mental health patients.

### CONCLUSION

Plaintiffs respectfully request that the Court reject Defendants' proposed plan to provide minimum treatment standards for psychiatric inpatient programs (ECF No. 7787) as inadequate to remedy the Eighth Amendment violations present in this case. Plaintiffs further move the Court to find that Plaintiffs' requested remedy satisfies the need, narrowness, and intrusiveness requirements of the PLRA and order relief accordingly.

### CERTIFICATION OF ORDERS REVIEWED

The undersigned counsel for Plaintiffs certifies that she reviewed the following relevant court orders: ECF Nos. 7765, 7697, 7608, 7605, 6370, 5710, 4120, 3945, 3929; *Brown*, 938 F. Supp. 2d at 990; *Wilson*, 912 F. Supp. at 1324.

DATED: May 16, 2023

Respectfully submitted,

ROSEN BIEN GALVAN & GRUNFELD LLP

By: */s/ Arielle W. Tolman*
Arielle W. Tolman

Attorneys for Plaintiffs