| | |
|---|---|
| DONALD SPECTER – 083925<br>STEVEN FAMA – 099641<br>MARGOT MENDELSON – 268583<br>PRISON LAW OFFICE<br>1917 Fifth Street<br>Berkeley, California  94710-1916<br>Telephone:   (510) 280-2621<br><br>CLAUDIA CENTER – 158255<br>DISABILITY RIGHTS EDUCATION<br>AND DEFENSE FUND, INC.<br>Ed Roberts Campus<br>3075 Adeline Street, Suite 210<br>Berkeley, California  94703-2578<br>Telephone:   (510) 644-2555 | MICHAEL W. BIEN – 096891<br>ERNEST GALVAN – 196065<br>LISA ELLS – 243657<br>JENNY S. YELIN – 273601<br>THOMAS NOLAN – 169692<br>MICHAEL S. NUNEZ – 280535<br>AMY XU – 330707<br>CARA E. TRAPANI – 313411<br>MARC J. SHINN-KRANTZ – 312968<br>ALEXANDER GOURSE – 321631<br>GINGER JACKSON-GLEICH – 324454<br>ADRIENNE PON HARROLD – 326640<br>ARIELLE W. TOLMAN – 342635<br>ROSEN BIEN<br>GALVAN & GRUNFELD LLP<br>101 Mission Street, Sixth Floor<br>San Francisco, California  94105-1738<br>Telephone:   (415) 433-6830 |

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>        Plaintiffs,<br><br>    v.<br><br>GAVIN NEWSOM, et al.,<br><br>        Defendants. | Case No. 2:90-CV-00520-KJM-DB<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO REJECT DEFENDANTS' PLAN TO RECRUIT AND RETAIN PSYCHIATRIC INPATIENT PROGRAM STAFF (ECF NO. 7787) AS NON-COMPLIANT WITH COURT'S ORDERS**<br><br>Judge:  Hon. Kimberly J. Mueller |

[4288369.9]

## TABLE OF CONTENTS

Page

INTRODUCTION ... 1

I. DEFENDANTS' EFFORTS TO RECAST THEIR PLAN AS EFFECTIVE FALL SHORT ... 2

II. DEFENDANTS' ARGUMENTS AGAINST IMPROVING THEIR PLAN LACK MERIT ... 4

A. Defendants Cannot Use Labor Market Conditions to Evade Their Mental Health Staffing Obligations ... 4

B. Defendants' Opposition to Additional Compensation Increases Are Unsupported ... 5

C. Defendants Concede that Their Plan Does Not Address Working Conditions ... 6

D. Defendants' Argument Against Additional Measures to Recruit and Retain Recreation Therapists Falls Flat ... 7

III. THE COURT SHOULD REJECT DEFENDANTS' ATTEMPT TO CARVE OUT THE PIPS FROM THE 2002 STAFFING ORDER'S REQUIRED MAXIMUM VACANCY RATE ... 8

CONCLUSION ... 10

CERTIFICATION OF ORDERS REVIEWED ... 10

[4288369.9]

i

PLS' REPLY ISO PLS' MOTION TO REJECT DEFS' PLAN TO RECRUIT AND RETAIN PSYCHIATRIC INPATIENT PROGRAM STAFF (ECF NO. 7787) AS NON-COMPLIANT WITH COURT'S ORDERS

**INTRODUCTION**

Defendants do not contest that the current crisis-level mental health staffing shortages in the CMF, CHCF, and SVSP Psychiatric Inpatient Programs (collectively, "the Lift and Shift PIPs") are a direct cause of the ongoing denial of Plaintiffs' rights under the Eighth Amendment to timely access to constitutionally adequate inpatient psychiatric treatment. The Special Master's most recent inpatient monitoring report echoes his prior findings making this link explicit. *See, e.g.*, Thirtieth Round Monitoring Report – Part A: Special Master's Monitoring report on the Psychiatric Inpatient Programs for Mental Health Patients of the California Department of Corrections and Rehabilitation (May 11, 2023), ECF No. 7833 at 23, 42-43 ("2023 PIP Report"). In the face of this well-documented emergency that is worsening by the day, Defendants insist Plaintiffs and this Court should exercise patience. But there is not a shred of evidence to suggest that the measures in their PIP Recruitment and Retention Plan ("Plan"), ECF No. 7787 at 8-10, could possibly put a serious dent in the massive shortages going forward, much less reduce the vacancy rate to anywhere near ten percent.

Defendants cannot contest that the core aspects of their Plan related to compensation increases have been in place for many months but have failed to yield real hiring gains or slow the steady tide of departing PIP clinicians. They do not dispute that the only other new measures in their Plan are marketing efforts, that recreation therapists are barely addressed at all, and that their Plan lacks any measures to address the woeful working conditions in the PIPs. *See* Defs.' Mem. In Opp. to Pls.' Mot. to Reject Defs.' Plan to Recruit and Retain Psychiatric Inpatient Program Staff (May 5, 2023) ("Opp."), ECF No. 7827 at 3-4, 6-7. Defendants even concede that none of the measures in their Plan specifically target the Lift and Shift PIPs and that certain measures in their recruitment and retention plan cannot possibly yield a single new mental health hire for years. *See id.* at 3 n.1, 7; s*ee also* Plan at 8-10. Their Plan is deficient to address the Special Master's recommendation and the Court's order adopting it.

And while Defendants assert that the ten-percent maximum mental health staff

[4288369.9]

1

PLS' REPLY ISO PLS' MOTION TO REJECT DEFS' PLAN TO RECRUIT AND RETAIN PSYCHIATRIC INPATIENT PROGRAM STAFF (ECF NO. 7787) AS NON-COMPLIANT WITH COURT'S ORDERS

vacancy rate does not apply to the PIPs, they fail to identify any authority or rationale for carving out the PIPs from the Court's 2002 staffing order. *Id*. at 7-8. Defendants' Plan must be rejected, and the Court should disregard Defendants' efforts to evade longstanding staffing requirements.

## I. DEFENDANTS' EFFORTS TO RECAST THEIR PLAN AS EFFECTIVE FALL SHORT

Defendants' effort to recast the stale measures in their plan as a comprehensive, serious effort to adequately staff the Lift and Shift PIPs is unpersuasive, unsupported, and undermined by Defendants' own admissions. First, Defendants confirm that the only new measures in their plan are marketing initiatives. *Id*. at 3. Publicizing the many open mental health positions in the PIPs is certainly generally positive. But Defendants offer no evidence demonstrating that qualified prospective job candidates' lack of awareness about available PIP mental health positions has hobbled recruiting at all, much less that it is a key force undergirding deficient PIP staffing, or that additional marketing can remedy the staffing crisis in the Lift and Shift PIPs. *Id*.

Defendants concede that it has been over a year since the Plan's May 2022 pay differentials, expanded bonuses, and registry increases took effect but argue that it is too soon to deem them insufficient. *Id*. at 4-5. But they brush off the evidence showing that, to date, the CDCR's efforts under the Plan have resulted in a net *loss* of two psychiatrists, a net gain of only six psychologists, and a net gain of only two social workers in the Lift and Shift PIPs. Declaration of Lisa Ells ISO Pls' Reply ("Ells Reply Decl."), filed herewith, ¶ 8, Ex. D. Defendants claim that some unspecified amount of additional time is necessary to evaluate the efficacy of the civil service compensation increases because Defendants did not start advertising them to psychiatrists and psychologists until months after their effective date. Opp. at 4-5. This, of course, ignores the fact that the recreation therapists and social workers increases have been in effect for over a year, yet have yielded next to no gains. Defs.' Monthly Mental Health Staffing Vacancy Reports (Apr. 28, 2023) ("Defs' March 2023 Staffing Vacancy Report"), ECF No. 7824 at 13-14 (social work

[4288369.9]
2

functional vacancy rate of 76% at CMF PIP, 45% at CHCF PIP, and 26% SVSP PIP, and recreation therapist functional vacancy rates of 39% at CMF PIP and 32% at CHCF PIP); *see also* Ells Reply Decl. ¶ 8, Ex. D at 6.  And after the ten months and eight months Defendants have advertised the PIP psychiatrist and psychologists increases, respectively, those fill rates also remain woefully inadequate in the Lift and Shift PIPs—even when including registry staff, for whom the rate increase has been in effect for over a year. Defs' March 2023 Staffing Vacancy Report at 11-12 (psychiatrist functional vacancy rate of 34% at CMF PIP and 27% at both CHCF PIP and SVSP PIP, and psychologist functional vacancy rates of 56% at CMF PIP, 38% at CHCF PIP, and 18% at SVSP PIP). Defendants offer no other evidence to demonstrate that the recent compensation increases are meaningfully improving PIP staffing, such as data showing an increased number of hires after the pay increases were implemented and fully advertised.  Given the dire circumstances, the sluggish actions of Defendants' advertising bureaucracy alone cannot justify further delaying development and implementation of an effective recruitment and retention plan.

Apparently aware that their existing Plan is deficient, Defendants tout for the first time in their opposition a previously unannounced April 2023 increase to psychology registry rates, with no further information.  Opp. at 5; Ponciano Decl. ISO Defs' Opp. (May 5, 2023), ECF No. 7827-2 ¶ 3; *see also* Ells Reply Decl. ¶ 6.  While Plaintiffs welcome this tacit agreement that additional compensation measures beyond those in Defendants' Plan are necessary, Defendants provide no basis to assume that the $7 per hour increase in the psychologist registry rate at the PIPs will significantly reduce the psychologist vacancy rate.  *See* Ells Reply Decl. ¶ 7, Ex. C.  This is particularly true because registry psychologists cannot fill chief and senior positions, 44% of which are currently vacant in the Lift and Shift PIPs.  *See* Defs' March 2023 Staffing Vacancy Report at 12 (reporting 59% of CHCF PIP chief and senior psychologist positions filled, 41% at CMF PIP, and 74% at SVSP PIP).  Moreover, although Defendants increased registry rates for social workers at other institutions, they chose not to do so at the Lift and

[4288369.9]                                              3
PLS' REPLY ISO PLS' MOTION TO REJECT DEFS' PLAN TO RECRUIT AND RETAIN PSYCHIATRIC INPATIENT PROGRAM STAFF (ECF NO. 7787) AS NON-COMPLIANT WITH COURT'S ORDERS

Shift PIPs—despite the fact that vacancy rates for social workers in the PIPs are even higher than for psychologists. *See* Ells Reply Decl. ¶ 7, Ex. C; *see also* Defs' March 2023 Staffing Vacancy Report at 12-13. And of course, this new measure—which is not actually part of Defendants' Plan—will do nothing to address recreation therapist and psychiatrist vacancies.

Defendants also make much of their expedited hiring program. *See* Opp. at 3. However, Defendants' claim that the expedited hiring events resulted in the hiring of 297 PIP staff in 2022 is extremely misleading because, based on Defendants' own data, a vast majority of those staff hired were *not* psychiatrists, psychologists, social workers, or recreation therapists – the positions at issue in this proceeding. *Id*. at 3; Muhammad Decl. ISO Defs' Opp. (May 5, 2023) ("Muhammad Decl."), ECF No. 7827-3 ¶ 2; *see also* Nunez Dec. ¶ 11, Ex. I (reporting that Defendants hired two psychiatrists, five psychologists, and nine social workers across the Lift and Shift PIPs in 2022). Similarly, while Defendants claim twelve PIP staff have been hired at these events in 2023 to date, only two of those staff members are mental health clinicians who will work in the Lift and Shift PIPs—both recreation therapists. Ells Reply Decl. ¶ 9, Ex. E at 2; *see also* Opp. at 3; Muhammad Decl. ¶ 2.

Defendants efforts to bolster other measures in their Plan are similarly unavailing. Defendants' claim that, despite their underwhelming track record to date, student loan forgiveness, the Visa support program, and hiring-above-minimum procedures should "improve recruitment and retention," but offer no support for this claim. Opp. at 5. And Defendants openly acknowledge that other measures in their Plan, such as the psychology internship program and outreach to high schools and colleges, will do nothing in the near term to address the current staffing crisis in the Lift and Shift PIPs. *See id.* at 3 n.1.

## II. DEFENDANTS' ARGUMENTS AGAINST IMPROVING THEIR PLAN LACK MERIT

### A. Defendants Cannot Use Labor Market Conditions to Evade Their Mental Health Staffing Obligations

Ignoring the shortcomings in their Plan, Defendants instead complain about labor

market conditions in an apparent effort to lower expectations. Opp. at 6-7. In doing so, they make no attempt at all to address the Court's multiple orders specifically addressing this point: To the extent that such a tight labor market exists, it does not alleviate Defendants of their obligation to adequately staff the Lift and Shift PIPs. *See* Order (Apr. 13, 2023) ("Apr. 13, 2023 Order"), ECF No. 7808 at 4 ("Nationwide labor shortages still do not relieve defendants" of their "constitutional duty to "employ mental health staff in 'sufficient numbers to identify and treat in an individualized manner those treatable inmates suffering from serious mental disorders.'"); *see also* Order (Feb. 28, 2023), ECF No. 7742 at 4. Plaintiffs do not claim that there is a "simple solution" for addressing the massive PIP vacancy rates, as Defendants assert. Opp. at 6. But unless and until CDCR reduces the population of incarcerated people in its prisons needing inpatient care, it must find a way to provide adequate numbers of mental health staff to treat those patients.

### B. Defendants' Opposition to Additional Compensation Increases Are Unsupported

Defendants also argue that further pay increases for PIP mental health clinicians are unnecessary, claiming that compensation is already competitive and pay increases are ineffective at boosting staffing. Opp. at 7. Defendants' arguments on both points are unpersuasive.

Despite multiple requests from Plaintiffs, Defendants declined to provide any information showing how the May 2022 compensation increases in their Plan compare to the community. Ells Reply Decl. ¶¶ 2-5 & Exs. A, B. Nor do they do so here. Instead, Defendants simply assert that their and the Special Master's labor economists "agree that CDCR's salaries are competitive." Opp. at 7. This claim is both misleading and patently inaccurate. Setting aside the fact that these four-year-old analyses cannot possibly have concluded CDCR's current psychiatrist compensation is competitive in 2023's market, neither expert examined psychologist, social worker, or recreation therapist compensation at all. Even at the time, the Special Master's Labor Economist found that Defendants' psychiatrist salaries did not adequately account for the difficult working conditions in

1   CDCR institutions, an issue that is only amplified in the PIPs given their abysmal
2   conditions and rapidly spiraling staffing crisis.  *See* Special Master's Report on His
3   Expert's Analysis of Psychiatrist Employment Conditions and Compensation at CDCR and
4   DSH (May 29, 2020) ("Special Master's Labor Economist Report"), ECF No. 6695 at 20,
5   193, 316; *see also* Section II.C, *infra* (discussing lack of plan to address poor PIP working
6   conditions).  Contrary to Defendants' assertion that further salary increases will not
7   improve staffing levels, the Special Master's Labor Economist specifically concluded that,
8   even in a tight labor market for psychiatrists, Defendants could boost recruitment and
9   retention of psychiatrists by implementing compensation increases.  Special Master's
10  Labor Economist Report at 19, 192, 215.  Defendants' aging expert report does not
11  persuasively rebut the Special Master's Labor Economist's recommendation, or the
12  common-sense dictates of basic rules of supply and demand.  *See* Opp. at 7.  Indeed,
13  Defendants' argument against increased compensation is internally contradictory given that
14  they would not have implemented the 15% pay differential, expanded retention bonuses, and
15  twice raised registry rates—including just last month, after filing their Plan—if they did not
16  believe that pay increases aided with recruitment and retention of staff.

### C.  Defendants Concede that Their Plan Does Not Address Working Conditions

19  Defendants do not dispute that their Plan lacks measures to improve PIP working
20  conditions.  Opp. at 5-6.  Instead, they present a strawman argument, claiming that nothing
21  can be done to address working conditions in the PIPs because the Court, the Special
22  Master, and Plaintiffs have prevented Defendants from utilizing telehealth.  *Id.* at 6.  But
23  Defendants have never proposed the use of tele-mental-health in CDCR beyond
24  telepsychiatry—and even their own rejected telepsychiatry policy did not authorize routine
25  telepsychiatry use in inpatient settings.  *See* ECF No. 7682-1 at 17 (Defendants' proposed
26  permanent telepsychiatry policy).
27  Rather than simply throw up their hands and deflect blame, Defendants can and
28  should develop a plan to improve on-site working conditions for mental health clinicians in

the PIPs, such as improving office and treatment space, providing additional support and custody staff, ensuring availability of adequate supplies, and addressing cultural problems impeding clinicians' ability to provide care. Indeed, the Special Master's recent PIP report, filed last week, makes clear poor working conditions continue to plague the Lift and Shift PIPs. *See, e.g.*, 2023 PIP Report at 135 (CMF PIP: non-confidential, loud, uncomfortably hot treatment spaces), 139 (CMF PIP: shortages of treatment space for MAX custody patients, and insufficient numbers of support staff such as schedulers), 143 (CMF PIP: lack of adequate treatment space for individual contacts and insufficient numbers of custody escorts), 152-53 (CMF PIP: lack of adequate treatment and office space, including deteriorating facilities), 184 (CHCF PIP: lack of adequate, confidential treatment space and group treatment supplies), 200-01 (CHCF PIP: lack of schedulers and custody officers impeded ability to provide care), 212 (CHCF PIP: lack of adequate custody staffing in property management unit led to delays causing significant patient stress), 226-27 (SVSP PIP: scheduling conflicts and custodial staff practices led to denial of access to and delays in group therapy, "disgusting" facility conditions and lack of confidentiality), 228-31 (SVSP PIP: lack of custody and escort officers delayed groups and necessitated cell-front contacts), 238-29 (SVSP PIP: lack of adequate supplies and functional entertainment devices prevented clinicians from implementing positive behavior incentive program). Defendants provide no justification for failing to address in their Plan any of the manifold, long-standing problems that make working in the PIPs uniquely unpleasant and difficult, and that therefore impede recruiting and long-term retention of clinical staff. Opp. at 6-7. Such action is not impossible, it simply has not been attempted. The Court should disregard Defendants' attempt to shift blame for this shortcoming in their Plan.

### D. Defendants' Argument Against Additional Measures to Recruit and Retain Recreation Therapists Falls Flat

Defendants argue that their Plan adequately addresses recruitment and retention of recreation therapists because PIP recreation therapists receive the 15% pay differential and

1  because CDCR increased registry rates for all recreation therapists (not just in the PIPs).
2  Opp. at 7.  However, Defendants do not and cannot dispute that many of the initiatives in
3  their Plan exclude recreation therapists and that they do not even bother to track recreation
4  therapist hirings and departures.  *See id.*; Pls.' Mot., ECF No. 7813 at 17; Nunez Decl.
5  Ex. J.  Nor do Defendants offer any evidence to demonstrate that the couple of initiatives
6  in their Plan that actually apply to recreation therapists are adequate to meaningfully and
7  durably improve recreation therapist staffing in the Lift and Shift PIPs.  Opp. at 7.  Nor
8  could they given that Defendants do not track recreation therapist hirings and departures.
9  But the proof is in the pudding:  While the Plan's recreation therapist compensation
10 increases have been in place for more than a year, a third or more of all recreation therapist
11 positions at CMF PIP and CHCF PIP remain vacant.  Defs' March 2023 Staffing Vacancy
12 Report at 14 (reporting recreation therapist functional vacancy of 39% at CMF PIP and
13 32% at CHCF PIP).  Notably, the vacancy rates for these positions have hovered at similar
14 levels for months, yet Defendants chose not to include them in their new registry rate
15 increases just last month.  *See, e.g.*, Defs.' Monthly Mental Health Staffing Vacancy
16 Reports (Mar. 30, 2023), ECF No. 7789 at 14; Defs.' Monthly Mental Health Staffing
17 Vacancy Reports (Feb. 28, 2023), ECF No. 7744 at 8; *see also* Ells Reply Decl. ¶ 7, Ex. C
18 (April 2023 registry rate increase applicable to the PIPs limited to psychologists).  The
19 Court should reject Defendants' efforts to rehabilitate their Plan on this point.

20 **III.  THE COURT SHOULD REJECT DEFENDANTS' ATTEMPT TO CARVE OUT THE PIPS FROM THE 2002 STAFFING ORDER'S REQUIRED**
21 **MAXIMUM VACANCY RATE**

22 Finally, Defendants argue without support that the PIPs are not subject to the
23 court-ordered ten-percent maximum vacancy rates for mental health staff and criticize
24 Plaintiffs for improperly asking the Court to apply this requirement to CDCR's PIPs.
25 Opp. at 1-2, 7-8.  However, Plaintiffs' motion makes no such request because the ten-
26 percent maximum mental health staff vacancy rate already applies to CDCR's PIPs.  The
27 June 13, 2002 Court order, which first established the ten-percent maximum vacancy rate
28

requirement for CDCR's psychiatrists, psychologists, and social workers,[1] does not limit the requirement to only CDCR's outpatient mental health programs or exempt CDCR's PIPs or any other component of CDCR's mental health programs from the maximum vacancy rate requirement. Order (June 13, 2002), ECF No. 1383 at 3-4; *see also* Special Master's Monitoring Report on the Mental Health Inpatient Care Programs for Inmates of the Cal. Dep't of Corrs. and Rehabilitation (Jan. 28, 2021), ECF No. 7039 at 15-16. Indeed, the order expressly holds that CDCR's "constitutional obligations" to maintain adequate staffing levels extend to the "class members in their custody at any given time," which does not support a carve-out for the PIPs. Order (June 13, 2002), ECF No. 1383 at 3-4.

Nor do Defendants cite any other order that exempts the PIPs from the ambit of the June 13, 2002 Order, and Plaintiffs are aware of none. *See* Opp. at 7-8. The Court's March 17, 2023 Order, which Defendants cite in support of their argument, is irrelevant because it does not address the maximum vacancy rates applicable to mental health clinicians in the PIPs or any other CDCR programs and instead addresses only the scope of the existing staffing-related contempt proceedings, which Plaintiffs agree after the Court's clarifying order do not apply to the PIPs. *See* Order (March 17, 2023), ECF No. 7766. The plain language of the June 13, 2002 order extends the ten-percent maximum vacancy rate to all CDCR psychologists, psychiatrists, and social workers, including those in its inpatient hospitals, and Defendants present no reasoned argument it should not given adequate staffing at this most intensive level of care, reserved for the most acutely ill of

---

[1] Plaintiffs concede there is an ambiguity as to the maximum vacancy rate for recreation therapists in the PIPs, as that classification is not expressly covered in the 2002 order, and the status of the PIP positions was not clear at the time of the parties' joint filing in which Defendants agreed the appropriate vacancy rate for recreation therapists is ten percent. *See generally* Joint Statement re: Maximum Vacancy Rates for Recreation Therapist and Medical Assistant Positions (Mar. 14, 2023), ECF No. 7761. However, there is no principled basis for applying a different threshold for these positions in the PIPs as opposed to the institutions, nor for allowing a higher vacancy rate for PIP recreation therapists than the other three key mental health clinical categories in CDCR's inpatient programs. However, prior to initiating enforcement proceedings, the Court should clarify this point, including requesting the parties' positions as appropriate.

1  patients, is critical to the system's proper functioning.  To the extent Defendants are
2  correct that the August 17, 2022 order, ECF No. 7605, signals that the Court has not
3  already resolved this issue such that a further order is necessary, Plaintiffs request the
4  Court clarify, with input from the parties as appropriate, that the June 13, 2002 order
5  applies to all CDCR mental health programs, including the PIPs.

## CONCLUSION

As discussed above, Defendants' effort to recast the mostly aging measures in their Plan as a comprehensive recruitment and retention strategy is unpersuasive.  The Plan simply does not go far enough to meet the extremely dangerous challenge that the Lift and Shift PIP staffing crisis presents.  The Court should also decline Defendants' invitation to carve out the PIPs from the ten-percent maximum vacancy rate established by the 2002 staffing order.  For the foregoing reasons, Plaintiffs request that the Court grant Plaintiffs' motion, order Defendants to submit a revised PIP Recruitment and Retention Plan, give Defendants a year to reduce PIP mental health staff vacancies to the required ten-percent maximum vacancy rate, and clearly indicate that the Court will initiate proceedings to enforce this order if Defendants fail to comply.

## CERTIFICATION OF ORDERS REVIEWED

The undersigned counsel for Plaintiffs certifies that he reviewed the following relevant court orders:  ECF Nos. 7808, 7766, 7742, 7605, 1383.

DATED:  May 16, 2023              Respectfully submitted,

ROSEN BIEN GALVAN & GRUNFELD LLP

By:  /s/ Michael S. Nunez
      Michael S. Nunez

Attorneys for Plaintiffs

[4288369.9]

10