KRISTEN CLARKE, Assistant Attorney General
STEVEN H. ROSENBAUM, Chief
KERRY K. DEAN, Deputy Chief (DC Bar No. 474260)

    United States Department of Justice
    Civil Rights Division
    Special Litigation Section
    950 Pennsylvania Avenue, N.W.
    Washington, D.C. 20530
    Telephone: (202) 532-5816
    Facsimile: (202) 514-4883
    Email: kerry.k.dean@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>GAVIN NEWSOM, et al.,<br><br>    Defendants. | No. 2:90-cv-0520 KJM DB P<br><br>**UNITED STATES' RESPONSE RELATED TO MINIMUM TREATMENT STANDARDS AND STAFFING FOR PSYCHIATRIC INPATIENT PROGRAMS** |

## INTRODUCTION

The United States files this brief in response to the Court's April 20, 2023 Order, ECF No. 7817, which invited the Department of Justice's views on Plaintiffs' Motions to Reject Defendants' Plans to Provide Minimum Treatment Standards for Psychiatric Inpatient Programs and to Recruit and Retain Psychiatric Inpatient Staff.

The United States has reviewed Plaintiffs' Motions, ECF Nos. 7812 & 7813, Defendants' Plans to Provide Minimum Treatment Standards for Psychiatric Inpatient Programs and to Recruit and Retain Psychiatric Inpatient Staff (Plan), ECF No. 7787, Defendants' Oppositions to Plaintiffs' Motions, ECF Nos. 7827 & 7828, and Plaintiffs' Replies in Support of their Motions.

ECF Nos. 7838 & 7839. Each of the pleadings and attachments, including expert assessments, contain detailed factual information and argument about the status of staffing and treatment in the California Department of Correction and Rehabilitation (CDCR) Psychiatric Inpatient Programs (PIPs) and Defendants' efforts at compliance. The United States is not in a position to opine on the factual issues raised by the parties' filings. Instead, this response outlines the types of remedial measures the United States employs to resolve similar issues.

## DISCUSSION

Defendants have a constitutional obligation to meet the serious mental health needs of people incarcerated in CDCR facilities, *Brown v. Plata*, 563 U.S. 493, 511 (2011); *Estelle v. Gamble*, 429 U.S. 97, 103-05 (1976); *Gibson v. County of Washoe, Nev.*, 290 F.3d 1175, 1187-88 (9th Cir. 2002), including those who require inpatient treatment. The United States agrees that providing adequate inpatient care requires sufficient qualified staff and appropriate levels of treatment. *Coleman v. Wilson*, 912 F. Supp. 1282, 1306 (E.D. Cal. 1995) (holding that constitutionally adequate mental health care requires "mental health staff in 'sufficient numbers to identify and treat in an individualized manner those treatable inmates suffering from serious mental disorders'") (quoting *Balla v. Idaho State Bd. of Corr.*, 595 F. Supp. 1558, 1577 (D. Idaho 1984)). However, the United States respectfully cannot opine on the appropriate levels of staffing or minimum treatment standards for CDCR's PIPs because we have not evaluated CDCR's facilities, policies, or services.

In jurisdictions where the United States has conducted an investigation under the Civil Rights of Institutionalized Persons Act (CRIPA), 42 U.S.C. § 1997, and made findings that a correctional facility is not meeting the serious mental health needs of incarcerated people, we have sought remedial measures to ensure access to appropriate mental health care, typically including inpatient treatment and appropriate mental health staffing. Below we outline examples of provisions we have negotiated to address these issues.

I. **Requirements for Inpatient Treatment**

The United States consistently seeks to ensure that an "inpatient level care is available to all incarcerated persons who need it, including regular, consistent therapy and counseling, as

2

clinically appropriate." *E.g.*, U.S. Dep't of Justice, *Investigation of the Mississippi State Penitentiary* 55 (2022), https://www.justice.gov/crt/case-document/file/1495956/download [https://perma.cc/5TMJ-HY5Z]; U.S. Dep't of Justice, *Investigation of the Hampton Roads Regional Jail (Portsmouth, Virginia)* 41 (Dec. 19, 2018), https://www.justice.gov/crt/case-document/file/1121176/download [https://perma.cc/B7HH-222G].

Our more recent CRIPA corrections consent decrees include definite requirements for therapy and out of cell time. Specifically, we have required a minimum of 10 hours of structured therapy per week, and at least 10 hours of unstructured out of cell time per week. *E.g., United States v. Hampton Roads Reg'l Jail Auth.*, No. 2:20-cv-00410, Agreement to Resolve the Department of Justice's Investigation of the Hampton Roads Regional Jail (Hampton Roads Consent Decree), ECF No. 2-1 at 14-17 (E.D. Va. Aug. 5, 2020) (requiring that incarcerated people who are placed in a secure mental health unit be offered at least 10 hours of structured out of cell activities each week, including at least one hour on Saturdays, and at least two hours of unstructured out of cell recreation with other incarcerated individuals each day, including weekends); *United States v. County of Los Angeles*, No.2:15-cv-05903, Joint Settlement Agreement Regarding Los Angeles County Jails, ECF No. 4-1 (C.D. Cal. Aug. 1, 2015) (requiring ten hours of unstructured out-of-cell recreational time and ten hours of structured therapeutic or programmatic time per week for incarcerated people with serious mental illness).[1]

In other corrections cases, the remedial measures call more generally for access to adequate in-patient psychiatric care when clinically appropriate. *See, e.g., Jones v. Gusman*, No. 2:12-cv-00859, Consent Judgment, ECF No. 466, 21 (E.D. La. June 6, 2013) (requiring New Orleans jail to provide licensed in-patient psychiatric care, when clinically appropriate); *United States v. Cook County*, No. 1:10-cv-02946, Agreed Order, ECF No. 3-1, ¶ 59.p (N.D. Ill. May 13, 2010) (requiring a large urban jail system to provide "appropriate acute infirmary care, comparable to in-patient psychiatric care," within the facility); Memorandum of Agreement

---

[1] As Plaintiffs noted, ECF No. 7812 at 12, outside the correctional context, the United States' now-dismissed 2007 consent decree with the California Department of Mental Health required a minimum of 20 hours of active treatment per week, plus another minimum of 20 hours of "adequate active psychosocial rehabilitation" in certain California State Hospitals. *United States v. California*, No. CV 06-2667, Amended Consent Judgment, ECF No. 9 (C.D. Cal. 2007).

between the United States Department of Justice and the State of Wisconsin Regarding

Conditions at the Taycheedah Correctional Institution, 4

https://www.justice.gov/sites/default/files/crt/legacy/2010/12/15/taycheedah_agree.pdf

[https://perma.cc/H23F-WMAD] (requiring a prison to ensure access to in-patient psychiatric care

when clinically appropriate).

      As these provisions indicate, the United States believes that access to appropriate inpatient treatment is essential to ensure adequate mental health care. But the specific remedial measures vary based on the facts of each matter.

      **II.     Appropriate Staffing Levels in the PIPs**

      As noted in our initial brief, the United States agrees that adequate staffing is essential to ensuring constitutional mental health care. ECF No. 7713 at 5. We also acknowledge that currently it is challenging to hire sufficient staff to fill positions in correctional facilities at all levels. However, Defendants may not avoid their duty to ensure adequate mental health care by arguing that they have made efforts to provide adequate staffing. *See id.* (citing *Braggs v. Dunn*, 257 F. Supp. 3d 1171, 1256 n. 81 (M.D. Ala. 2017); *see also* Order, ECF No. 7808 at 4 (Apr. 13, 2023) (holding that labor shortages do not negate Defendants' constitutional duty to ensure adequate mental health care).

      The Defendants' Plan lays out various strategies for recruitment and retention of mental health staff for the PIPs, including pay raises and bonuses, specific marketing efforts, hiring initiatives, and loan forgiveness. ECF No. 7787 at 8-10. Plaintiffs argue that the majority of the Plan restates current processes, which have not been effective, and request that Defendants revise the plan to include information on efforts to improve on-site working conditions for mental health staff. ECF No. 7839 at 8-10. Plaintiffs also request clarification that the court-ordered 10% vacancy rate applies to mental health staff in the PIPs and ask that Defendants be required to comply with that rate within one year. ECF No. 7813 at 3-4.

      While the United States has not evaluated the specifics or efficacy of the recruitment and retention initiatives outlined by Defendants' Plan, they are consistent with strategies the United States has negotiated to address the issue of understaffing in its CRIPA cases. As noted in our

initial brief, the Department's consent decrees typically require the development of a staffing plan that outlines how many and what type of staff are needed to ensure constitutional delivery of mental health care, as well as strategies to procure that staff.  ECF No. 7713 at 6 (noting strategies include targeted recruitment, partnership with local universities, competitive compensation, and legislative initiatives); *see also* Hampton Roads Consent Decree at ¶¶ 24-25 (requiring development and approval of a staffing plan for security, medical and mental health staff and compliance within one year); *United States v. State of New Jersey*, No.3:21-cv-15031, Settlement Agreement, ECF No. 12 at ¶¶ 30-34 (D.N.J. Aug. 24, 2021) (requiring development and approval of a staffing plan, implementation within one year of approval, and development and implementation of recruitment and retention plan).

Where the United States has encountered extended non-compliance, we have sought more specific relief, as Plaintiffs seek here.  *See, e.g.*, *United States v. Miami-Dade Cty*, No. 1:13-cv-21570, Stipulated Order Regarding Appointment of Independent Jail Compliance Director, ECF No. 260 (S.D. Fla. Feb. 16, 2023) (stipulated order for Compliance Director to operate large urban jail following extended non-compliance); *United States v. Hinds County*, No. 3:16-cv-00489, Order, ECF 204 (S.D. Miss. July 29, 2022) (appointment of a receiver to operate jail after extended non-compliance) (currently stayed); *Jones v. Gusman*, No. 2:12-cv-00859, Stipulated Order for Appointment of Independent Jail Compliance Director, ECF No. 1082 (E.D. La. June 21, 2016) (stipulated order appointing Compliance Director to operate New Orleans jail after repeated non-compliance with Consent Judgment).  More specific orders may be appropriately tailored and least intrusive under the Prison Litigation Reform Act, 18 U.S.C. § 3626(a), where more specific relief is necessary to remedy ongoing non-compliance with less specific orders. *See Armstrong v. Newsom*, 58 F.4th 1283, 1296-1297 (9th Cir. 2023).

In one example related to mental health staffing, the United States District Court for the Northern District of Illinois found that, despite significant progress on compliance with a five-year-old consent decree, the Cook County Jail in Chicago, Illinois, did not have sufficient numbers of psychiatrists and psychologists to address the significant number of detainees with mental health needs.  *United States v. Cook County*, No. 1:10-cv-02946, Order, ECF 302 (N.D.

Ill. July 31, 2015). Although the consent decree required an "adequate number" of qualified mental health staff, it did not specify the number of staff for each position. *Id.* Given the County's non-compliance with the more general staffing provisions in the consent decree, and the impact of understaffing on other areas of compliance, the Court ordered Cook County to hire eight psychiatrists and three psychologists, for the single jail, within 10 months. *Id.* Clearly, Plaintiffs' concerns with the staffing levels at CDCR PIPs and Defendants' staffing obligations are on a larger scale. Still, a request for more specific relief to address understaffing can be justified given a history of non-compliance.

## CONCLUSION

Respectfully, the United States is not in a position to opine on the appropriate minimum levels of treatment and staffing levels at CDCR's PIPs, or the efficacy of Defendants' efforts to address those issues. The United States agrees that the Court can order more specific remedial relief to address the treatment and staffing issues, as appropriate to address non-compliance with the Court's prior orders.

6

UNITED STATES' RESPONSE RELATED TO MINIMUM TREATMENT STANDARDS
AND STAFFING FOR PSYCHIATRIC INPATIENT PROGRAMS (2:90-CV-00520- KJM-DB)

Respectfully submitted,

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

STEVEN H. ROSENBAUM
Chief
Civil Rights Division
Special Litigation Section

*s/Kerry Krentler Dean*
KERRY K. DEAN (DC 474260)
Deputy Chief
Civil Rights Division
Special Litigation Section
Telephone: (202) 532-5816
E-mail: kerry.k.dean@usdoj.gov

Attorneys for the United States of America

DATED:    May 23, 2023

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing was filed electronically on this 23rd day of May 2023, with the Clerk of Court for the Eastern District of California using the CM/ECF System, which will send a notice of such filing to all registered parties.

*s/Kerry Krentler Dean*
KERRY K. DEAN (DC 474260)

Attorney for the United States of America

8

UNITED STATES' RESPONSE RELATED TO MINIMUM TREATMENT STANDARDS
AND STAFFING FOR PSYCHIATRIC INPATIENT PROGRAMS (2:90-CV-00520- KJM-DB)