Rob Bonta, State Bar No. 202668
Attorney General of California
Monica N. Anderson, State Bar No. 182970
Senior Assistant Attorney General
Damon McClain, State Bar No. 209508
Supervising Deputy Attorney General
Elise Owens Thorn, State Bar No. 145931
Namrata Kotwani, State Bar No. 308741
Deputy Attorneys General
  1300 I Street, Suite 125
  P.O. Box 944255
  Sacramento, CA 94244-2550
  Telephone: (916) 210-7318
  Fax: (916) 324-5205
  E-mail: Elise.Thorn@doj.ca.gov
*Attorneys for Defendants*

HANSON BRIDGETT LLP
Paul B. Mello, SBN 179755
Samantha D. Wolff, SBN 240280
Kaylen Kadotani, SBN 294114
Laurel E. O'Connor, SBN 305478
David C. Casarrubias, SBN 321994
Carson R. Niello, SBN 329970
1676 N. California Blvd., Suite 620
Walnut Creek, California 94596
Telephone:  925-746-8460
Facsimile:  925-746-8490
*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

### SACRAMENTO DIVISION

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>GAVIN NEWSOM, et al.<br><br>    Defendants. | Case No. 2:90-CV-00520- KJM-DB<br><br>**DEFENDANTS' RESPONSE TO COURT'S JUNE 9, 2023 ORDER INVITING SUPPLEMENTAL BRIEFING ON MINIMUM TREATMENT STANDARDS AND PIP STAFFING (ECF No. 7854)**<br><br>Judge:  Hon. Kimberly J. Mueller |

On March 28, 2023, Defendants submitted CDCR's plans to provide minimum treatment standards for Psychiatric Inpatient Programs (PIPs) and to recruit and retain psychiatric inpatient staff. (ECF No. 7787.)[1] Plaintiffs filed motions to reject CDCR's plans on April 17, 2023. (ECF Nos. 7812 & 7813.) Defendants filed their oppositions to Plaintiffs' motions to reject on May 5, 2023. (ECF Nos. 7827 & 7828.) The Special Master filed his Thirtieth Round Monitoring Report (Monitoring Report) on May 11, 2023, which opined on both issues but declined to make specific

---

[1] Citations are to page numbers assigned by the Court's Electronic Case Filing system and are located in the upper right hand corner of the page.

recommendations. (ECF No. 7833 at 126.) Finally, on June 9, 2023, the Court issued an Order adopting in full the Monitoring Report. (ECF No. 7854.) The Order also acknowledged the Department of Justice's (DOJ) Response Related to Minimum Treatment Standards and Staffing for Psychiatric Inpatient Programs (Response) (ECF No. 7846), which offered the DOJ's views on Plaintiffs' motions and the types of remedial measures the DOJ has used to resolve similar matters. (ECF No. 7817.) In its June 9, 2023 Order, the Court invited the parties to file amended or supplemental briefing regarding these issues. Accordingly, Defendants submit as follows:

Defendants' position on minimum treatment standards and PIP staffing remains unchanged.[2]

### A.   Minimum Treatment Standards

Defendants agree with the DOJ that access to appropriate inpatient treatment is essential to ensure adequate mental health care. (See ECF No. 7846 at 4.) With regard to minimum treatment standards, Defendants maintain that individualized care is consistent with the Program Guide and national correctional mental health standards. (See ECF No. 7828 at 6-10.) Meanwhile, Plaintiffs' proposal of 20 hours per week each of structured therapeutic programming and unstructured out-of-cell time for PIP patients far exceeds the community standard, necessitates revision and expansion of the Program Guide, and is not narrowly tailored to address the concern at issue in violation of the Prison Litigation Reform Act ("PLRA"). (*Id*. at 10-15.)[3]

Neither the Monitoring Report nor the DOJ's Response undermines Defendants' well-supported position that individualized treatment programs are appropriate for CDCR's PIP patients. The Monitoring Report, while noting several instances of CDCR's alleged failure to meet certain patients' planned treatment hours, does not cite any empirical evidence, scientific

---

[2] Defendants incorporate herein by reference their complete briefing on minimum treatment standards and PIP staffing, which includes substantial evidence and expert support. (ECF Nos. 7787, 7827, and 7828.)

[3] Plaintiffs also rely on and misapply a NCCHC standard for residential units (not inpatient psychiatric hospitalization) to assert that PIP patients should have daily contact with a psychiatrist and psychologist. (See ECF No. 7828-3, ¶ 10.) Plaintiffs are incorrect—and, in any event, PIP patients receive more than daily contact with nursing and other qualified health care professionals even if the NCCHC standard applied to the PIPs (it does not). (*Id*.)

guidelines, or data supporting Plaintiffs' proposed minimum treatment standards. Nor does the Monitoring Report endorse or recommend Plaintiffs' proposal.

Similarly, the DOJ made no recommendations supporting Plaintiffs' proposal. In fact, the DOJ expressly declined to opine on the factual issues in this case because it has not evaluated CDCR's facilities, policies, or services. (ECF No. 7846 at 2.) At most, the DOJ cited two cases where the parties negotiated remedial measures requiring a minimum of 10 hours of structured therapy (or programmatic time)[4] per week, and 10 hours of unstructured out-of-cell time per week—not 20 hours each as Plaintiffs propose. (ECF No. 7846 at 3:6-18.) Moreover, the DOJ cited to a number of cases that called "more generally for access to adequate in-patient psychiatric care when *clinically appropriate*," noting that "specific remedial measures vary based on the facts of each matter." (*Id*. at 3:19-20, 4:6-8, emphasis added.) This is consistent with Defendants' position that treatment must be individualized. In sum, because there is insufficient evidence undermining Defendants' position on minimum treatment standards, nor any recommendations made in support of Plaintiffs' proposal, the Court should allow Defendants to implement their proposed PIP plan.

### B.   PIP Staffing

Defendants' plan to recruit and retain PIP staff will improve staffing in the PIPs and the plan should be given an opportunity to work. Nothing in either the Monitoring Report or the DOJ Response refutes Defendants' positions.

#### 1.   Defendants' Initiatives Should be Given Time to Take Hold.

The Monitoring Report notes Defendants' efforts to improve staffing, stating that: "as of

---

[4] The Hampton Roads Consent Decree provided inmates in a secure mental health unit fourteen hours of unstructured out-of-cell time per week and ten hours of structured out-of-cell activities, with *two of the ten hours* to be used for individual or group therapeutic treatment sessions. *United States v. Hampton Roads Reg'l Jail Auth.*, No. 2:20-cv-00410, Agreement to Resolve the Department of Justice's Investigation of the Hampton Roads Regional Jail, ECF No. 2-1 at ¶ 103 (E.D. Va. Aug. 5, 2020). Meanwhile, the Los Angeles County Jails Joint Settlement Agreement provided ten hours of unstructured out-of-cell recreational time and ten hours of structured therapeutic *or programmatic* time per week to inmates in mental health housing. *United States v. County of Los Angeles*, No.2:15-cv-05903, Joint Settlement Agreement Regarding Los Angeles County Jails, ECF No. 4-1 at ¶ 80 (C.D. Cal. Aug. 1, 2015).

May 2022, a statewide effort had increased clinical staff's pay by 15 percent, and there had been retention bonuses for current providers and new hires. It was further reported that multiple job fairs had also led to the successful hiring of new staff." (ECF No. 7833 at 182.) While the Monitoring Report also notes that positive impacts from these steps were not apparent at two of the three Lift and Shift PIPs at the time of monitoring (finding "dangerously high" vacancies in those PIPs), and indicates continuing difficulties in hiring, the Monitoring Report did not expressly find that these steps have failed or will not result in improved recruitment and retention. Instead, as Defendants articulated, the myriad steps the State has taken should be given time to take hold.

The DOJ Response likewise does not support Plaintiffs' motion. In fact, the DOJ asserts that the recruitment and retention initiatives outlined by Defendants' Plan "are consistent with strategies the United States has negotiated to address the issue of understaffing in its CRIPA cases." (ECF No. 7846 at 4.)

### 2. The Application of the 2002 Staffing Order to the PIP Staffing Plan.

Defendants oppose Plaintiffs' motion to reject the PIP Plan on the basis that it would require modification of prior staffing orders. (ECF No. 7827 at 7-8.) Specifically, Plaintiffs ask the Court to apply the 2002 staffing vacancy order to the PIP Staffing Plan. But Plaintiffs have not moved to modify the June 2002 order, or any other orders that they rely on, to impose the ten percent vacancy rate on PIP staffing. Neither the Monitoring Report nor the DOJ Response address this issue of modification or the required fill rate. Indeed, while the DOJ Response provides an opinion on alternative sanctions for failing to staff at court-ordered levels, it declines to "opine on the appropriate levels of staffing . . . for CDCR's PIPs because [it has] not evaluated CDCR's facilities, policies, or services." (ECF No. 7846 at 2.)

### 3. CDCR's Request to Modify CMF PIP's Master Treatment Plan Should Not Impact the Parties' Filings.

On May 18, 2023, CDCR reached out to Plaintiffs and the Special Master to notice a temporary modification to the CMF PIP's Master Treatment Plan (MTP). (Declaration of Samantha D. Wolff, Ex. A.) The MTP is used by treatment teams to document a patient's

treatment needs and goals. CDCR is in the process of updating the statewide MTP for outpatient and PIP levels of care. In the meantime, CMF will expand the use of the revised form (already used in outpatient and MHCB levels of care at CMF) to the PIP for 90 days from the date of its implementation. Though the requested modification relates to staffing shortages, the request should not impact the parties' briefing on PIP staffing because the modification merely simplifies an overly complicated form. This simplification will enable clinicians to devote more time to clinical care, and spend more time with patients, rather than completing burdensome and duplicative forms. It does not change the frequency of treatment for patients. Simplification and streamlining documentation is a process improvement that will both benefit patients and enhance clinician and patient satisfaction— regardless of the levels of staffing.

**CERTIFICATION**

In preparing this request, Defendants' counsel reviewed the following Court orders relevant to the issues in this filing, ECF Nos.: 2134, 4688, 5573, 7108, 7581, 7605, 7608, 7697, 7765, 7854.

DATED: June 30, 2023                                    HANSON BRIDGETT LLP


By:     */s/ Samantha D. Wolff*
PAUL B. MELLO
SAMANTHA D. WOLFF
Attorneys for Defendants


DATED: June 30, 2023                                    ROB BONTA
Attorney General of California
DAMON MCCLAIN
Supervising Deputy Attorney General


By:     */s/ Damon McClain*
ELISE OWENS THORN
Deputy Attorney General
*Attorneys for Defendants*