DONALD SPECTER – 083925
STEVEN FAMA – 099641
MARGOT MENDELSON – 268583
PRISON LAW OFFICE
1917 Fifth Street
Berkeley, California 94710-1916
Telephone: (510) 280-2621

CLAUDIA CENTER – 158255
DISABILITY RIGHTS EDUCATION
AND DEFENSE FUND, INC.
Ed Roberts Campus
3075 Adeline Street, Suite 210
Berkeley, California 94703-2578
Telephone: (510) 644-2555

MICHAEL W. BIEN – 096891
ERNEST GALVAN – 196065
LISA ELLS – 243657
JENNY S. YELIN – 273601
THOMAS NOLAN – 169692
MICHAEL S. NUNEZ – 280535
AMY XU – 330707
CARA E. TRAPANI – 313411
MARC J. SHINN-KRANTZ – 312968
ALEXANDER GOURSE – 321631
GINGER JACKSON-GLEICH – 324454
ADRIENNE PON HARROLD – 326640
ARIELLE W. TOLMAN – 342635
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
Telephone: (415) 433-6830

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al., | Case No. 2:90-CV-00520-KJM-DB |
| Plaintiffs, | **PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION TO REJECT DEFENDANTS' PLAN TO PROVIDE MINIMUM TREATMENT STANDARDS FOR PSYCHIATRIC INPATIENT PROGRAMS (ECF NO. 7787) AS INADEQUATE TO REMEDY DEFENDANTS' EIGHTH AMENDMENT VIOLATIONS** |
| v. | |
| GAVIN NEWSOM, et al., | |
| Defendants. | |
| | Judge: Hon. Kimberly J. Mueller |

[4314849.9]

Case No. 2:90-CV-00520-KJM-DB

PLS.' SUPP. MEM. ISO MOTION TO REJECT DEFS.' PLAN TO PROVIDE MIN. TREATMENT STDS. FOR PIPS (ECF NO. 7787) AS INADEQUATE TO REMEDY DEFS.' 8TH AM. VIOLATIONS

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................... 1

I.   THE SPECIAL MASTER'S FINDINGS AND THE DOJ'S BRIEF
     ILLUMINATE WHY PLAINTIFFS' PROPOSED MINIMUM
     TREATMENT STANDARDS ARE NECESSARY TO ENSURE
     CONSTITUTIONALLY ADEQUATE INPATIENT CARE.................................... 2

     A.   The Amount of Structured Treatment Provided to PIP Patients
          Remains "Woefully Inadequate" for an Inpatient Setting............................... 2

     B.   Critical Resource Constraints Persist. ........................................................... 3

     C.   Broken Treatment Planning Renders Defendants' Plan Unworkable. ............ 4

     D.   Minimum Standards of 20 Hours Per Week of Structured Treatment
          and 20 Hours Per Week of Out-of-Cell Time Are Necessary to Bring
          CDCR's PIPs Into Constitutional Compliance. .............................................. 5

II.  PLAINTIFFS' REQUESTED RELIEF IS NARROWLY TAILORED,
     ESPECIALLY IN LIGHT OF THE DOJ'S PRIOR CONSENT DECREES ........... 7

III. DEFENDANTS' LONG HISTORY OF PERSISTENT
     CONSTITUTIONAL VIOLATIONS IN THE PIPS JUSTIFIES
     PLAINTIFFS' REQUESTED RELIEF ................................................................... 8

CONCLUSION................................................................................................................ 10

1

# TABLE OF AUTHORITIES

2

**Page**

3

## CASES

4

*Armstrong v. Newsom,*
  58 F.4th 1283 (9th Cir. 2023) ................................................................... 2, 9

*Brown v. Plata,*
  563 U.S. 493 (2011) ................................................................................. 2, 9

*Coleman v. Brown,*
  938 F. Supp. 2d 955 (E.D. Cal. 2013) .................................................... 9, 10

*Coleman v. Wilson,*
  912 F. Supp. 1282 (E.D. Cal. 1995) ....................................................... 9, 10

*United States v. California,*
  No. CV 06-2667, Amended Consent Judgment (C.D. Cal. 2007), ECF No. 9 ......... 7

*United States v. Cook County,*
  No. 1:10-cv-02946, Agreed Order, ECF No. 3-1 (N.D. Ill. May 13, 2010).............. 6

*United States v. Hampton Roads Reg'l Jail Auth.,*
  No. 2:20-cv-00410, Agreement to Resolve the Department of Justice's
  Investigation of the Hampton Roads Regional Jail, ECF NO. 2-1 (E.D. Va.
  Aug. 5, 2020) ........................................................................................... 6, 8

*United States v. Los Angeles County,*
  No. 2:15-cv-05903, Joint Settlement Agreement Regarding Los Angeles
  County Jails, ECF No. 4-1 (C.D. Cal. Aug. 1, 2015)................................... 8

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[4314849.9]

ii

Case No. 2:90-CV-00520-KJM-DB

PLS.' SUPP. MEM. ISO MOTION TO REJECT DEFS.' PLAN TO PROVIDE MIN. TREATMENT STDS. FOR
PIPS (ECF NO. 7787) AS INADEQUATE TO REMEDY DEFS.' 8TH AM. VIOLATIONS

**INTRODUCTION**

Defendants' inadequate provision of psychiatric inpatient care to *Coleman* class members continues in violation of the Eighth Amendment.  *See, e.g.*, Thirtieth Round Monitoring Report – Part A: Special Master's Monitoring Report on the Psychiatric Inpatient Programs for Mental Health Patients of the California Department of Corrections and Rehabilitation (May 11, 2023) ("Special Master's 2023 PIP Report" or "Report"), ECF No. 7833 at 49, 55, 124 (finding CDCR's provision of mental health treatment to PIP patients inadequate).[1]  The Special Master found not only that the *amount* of treatment CDCR provided to its most acutely mentally ill patients was "woefully inadequate," but also that the treatment provided was "often not individualized to the needs of the patient." *Id.* at 125.  The Special Master further reported that the "lack of minimum standards for structured treatment and out-of-cell time" remains one of the "primary deficiencies" in the PIPs.  *Id.* at 126.

Defendants' proposed plan relies on "individualized" treatment standards. Defendants' Plan, ECF No. 7787 at 6-7.  The Special Master's Report, however, confirms that "individualized" standards cannot work.  Defendants plan to provide PIP patients with no minimum hours of structured treatment and only 10 hours of out-of-cell time per week. *Id.*  Plaintiffs have asked the Court to reject Defendants' Plan and instead order a revision to provide patients with a minimum of 20 hours of structured treatment and 20 hours of unstructured out-of-cell time per week.  *See* Plaintiffs' Motion, ECF No. 7812;  Plaintiffs' Reply, ECF No. 7838.  When the Court adopted the Special Master's findings in full, the Court also provided the parties with the opportunity to file amended or supplemental briefing as necessary given the Special Master's findings and the brief filed by the United States Department of Justice ("DOJ") in response to Plaintiffs' motion.  Order (June 9, 2023), ECF No. 7854 at 1-2.

---

[1] All pin citations to documents on the ECF system are to the ECF page numbers in the blue ECF headers, and not to internal document page numbers.

1    As explained below, both the Special Master's recent findings, and the DOJ's brief

2  detailing the United States' approach to ensuring incarcerated people have access to

3  adequate psychiatric inpatient care, bolster Plaintiffs' position that Defendants' Plan must

4  be rejected and that Plaintiffs' requested relief is necessary, narrowly tailored, and the least

5  intrusive means of remedying Defendants' Eighth Amendment violations in the PIPs.  *See*

6  *Brown v. Plata*, 563 U.S. 493, 511 (2011); *Armstrong v. Newsom*, 58 F.4th 1283, 1296-

7  1297 (9th Cir. 2023).

8  **I.    THE SPECIAL MASTER'S FINDINGS AND THE DOJ'S BRIEF**
   **ILLUMINATE WHY PLAINTIFFS' PROPOSED MINIMUM TREATMENT**
9  **STANDARDS ARE NECESSARY TO ENSURE CONSTITUTIONALLY**
   **ADEQUATE INPATIENT CARE**
10

11    The Special Master's thirtieth round findings provide fresh evidence for why

12  Defendants' Plan must be rejected.  *See Plata*, 563 U.S. at 511.  Continuing critical

13  resource constraints and broken treatment planning in the PIPs render Defendants' Plan

14  unable to remedy the unconstitutional status quo of inadequate treatment provision and

15  excessive in-cell time.  Further, the consent decrees cited in the DOJ's brief provide

16  substantial support for the necessity of Plaintiffs' requested relief.  A minimum of 20 hours

17  per week of structured treatment and 20 hours per week of unstructured out-of-cell

18  activities is necessary to ensure PIP patients receive an amount of treatment comparable to

19  that provided in the outside inpatient psychiatric settings, like those utilized by prisons and

20  jails in the DOJ's cited remedial schemes.

21    **A.    The Amount of Structured Treatment Provided to PIP Patients Remains**
   **"Woefully Inadequate" for an Inpatient Setting.**
22

23    The Special Master's 2023 PIP Report concludes that CDCR continues to provide

24  PIP patients with "woefully inadequate amounts of treatment for an inpatient setting."

25  Special Master's 2023 PIP Report, ECF No. 7833 at 125.  At the California Medical

26  Facility ("CMF"), the Special Master found acute patients were offered an average of only

27  4.48 hours of structured treatment and attended an average of just 2.47 hours per week;

28  data for intermediate care ("ICF") patients was not made available, but the Special Master

found that treatment groups were not offered at all to patients on three intermediate care housing units. *Id.* at 129, 141-42. At the California Health Care Facility ("CHCF"), the weekly averages for non-MAX custody acute patients were higher across the review period (averages of between 5.13 and 19.22 hours per week of structured treatment, and averages of 5.72 to 25.07 hours per week of unstructured out-of-cell time), but nevertheless "insufficient for an acute care PIP program." *Id.* at 175, 184-85. Weekly averages for ICF patients were not reported. *See id.* at 185-87. Indeed, staff reported to the Special Master that acute patients were perceived as "dangerous" and denied them access to the dayroom, resulting in them being locked in their cells "for prolonged periods." *Id.* at 200-01. CHCF's MAX patients fared even worse. *See id.* at 195-98. At Salinas Valley State Prison ("SVSP"), the Special Master found "it was undeniable that treatment at the SVSP-PIP was in a very poor state." *Id.* at 216. Patients were only offered a weekly average of 5.6 hours of group therapy and attended an average of 2.4 hours, in addition to receiving an average of 1.5 hours of individual clinical contacts *Id.*

These problems were not limited to the three Lift-and-Shift PIPs. The Special Master found that, across all units, the "majority of PIP patients were offered insufficient structured therapeutic activity hours." *Id.* at 57. At the California Institute of Women ("CIW"), patients were offered a weekly average of 3.75 hours of structured treatment, and attended an average of just 2.73 hours. *Id.* at 251. The Special Master found patients' limited access to treatment "surprising considering the low census maintained throughout most of the review period." *Id.* at 60. At San Quentin ("SQ"), both acute and ICF patients were offered a weekly average of about 10 of structured treatment, and attended an average of about 6 hours. *Id.* at 60, 274-75.

**B.    Critical Resource Constraints Persist.**

The Special Master identified the chronic, and at times dangerous, staff vacancies in the PIPs as the primary driver of the current lack of adequate treatment. *See id.* at 23, 37-38, 42-43, 51, 78. The Special Master found that these staffing vacancies "impacted all aspects of the provision of mental health care to *Coleman* class members," including "less

frequent individual clinical contacts" and an "extremely limited amount of structured treatment." *Id.* at 42. In addition, as a result of these staffing vacancies, CDCR requested and was granted waivers from the California Department of Public Health which permitted less frequent psychiatric contacts in each of the PIPs than otherwise mandated by Title 22's licensing requirements. *Id.* at 28 n.8, 144, 176, 229-30, 256, 280. The Special Master further reported that, consistent with preceding monitoring reports, the "frequency of individual treatment" was thus "driven by staffing inadequacies rather than the needs of PIP patients." *Id.* at 28 n.8 (quoting ECF No. 7555 at 68). In addition to the extreme staffing crisis in the PIPs, the Special Master found that the lack of adequate treatment space, and even of group treatment supplies, also impacted patient care. *Id.* at 152-53, 184.

It is against this current backdrop of critical resource constraints in the PIPs that the Court must evaluate Defendants' Plan to provide no minimum structured treatment hours and less frequent psychiatry contacts than would be required under Title 22 absent the PIPs' staffing-related waivers. *See* Defendants' Plan, ECF 7787 at 6-7. Without systemwide minimum treatment hour standards, essential systemwide planning and improvements cannot occur. Standards drive resources. No or low standards mean no or low resources. Under Defendants' Plan, individual treatment teams' hands are tied; they are forced to allow current resource deficiencies to drive patient care rather than patients' needs. Clinicians cannot schedule patients for treatment that is not available. For these reasons, Defendants' Plan would ossify the unconstitutional status quo in the PIPs, and the Court must reject it.

### C.    Broken Treatment Planning Renders Defendants' Plan Unworkable.

Moreover, the Special Master found that treatment planning in the PIPs is currently broken. Treatment is not individualized to patients' diagnoses and symptoms. *See, e.g.*, Report, ECF No. 7833 at 68 (finding "numerous concerns" with the adequacy of treatment plans, including "treatment goals which did not align with patients' identified symptoms and/or treatment targets, treatment goals that were not updated despite changes in patients'

1    clinical presentations since prior IDTTs, and generic treatment plans").  At CMF, CHCF,

2    and SVSP, the Special Master found that treatment teams failed to "routinely update

3    treatment plans when clinically indicated," even, in one example case, following suicide

4    attempts.  *Id.*

5         Furthermore, the Special Master found that the treatment prescribed by IDTTs was

6    not, in fact, delivered.  *Id.* at 70.  Across all PIPs, the Special Master found that 32% of

7    patients reviewed did not receive the amount of weekly hours specified in their individual

8    treatment plans.  *Id.*  The Special Master emphasized, "The importance of these failures

9    cannot be understated as CDCR has proposed that individual treatment hours are to be

10   provided in accordance with the individualized timeframes outlined in treatment plans,

11   rather than in accordance with some set of minimum expectations."  *Id.*

12        Indeed, it is against these findings, too, that the Court must evaluate Defendants'

13   Plan—which forgoes a minimum structured treatment hour standard for PIP patients,

14   instead relying that the standard of care is met though "individualized clinical assessment

15   and treatment planning by the Interdisciplinary Treatment Team."  *See* Defendants' Plan,

16   ECF No. 7787 at 6-7.  The Special Master's findings about the widespread failures in

17   treatment plan formulation, and in the provision of treatment according to those plans,

18   demonstrate that Defendants' Plan for structured treatment provision is unworkable.

19   Individual treatment planning will not ensure that PIP patients receive an adequate amount

20   of treatment.  Because Defendants' Plan will not bring CDCR's inpatient treatment

21   provision into constitutional compliance, the Court should reject it.

22        **D.    Minimum Standards of 20 Hours Per Week of Structured Treatment
            and 20 Hours Per Week of Out-of-Cell Time Are Necessary to Bring
23          CDCR's PIPs Into Constitutional Compliance.**

24        Plaintiffs request relief—20 hours of structured treatment and 20 hours of out-of-

25   cell activities—that is necessary to remedy the ongoing constitutional violations in

26   CDCR's PIPs.  As stated in the DOJ's brief, the United States agrees that incarcerated

27   patients in need of hospital-level psychiatric care are entitled under the Constitution to just

28   that: treatment provision in an appropriate inpatient setting.  *See* DOJ Brief, ECF No. 7846

1  at 2.

2          For example, the DOJ's *Hampton Roads* consent decree provides that "[t]he Jail

3  will initiate a Temporary Detention Order or transfer to a hospital offering the needed

4  services when a prisoner is in need of an inpatient level of care."  *United States v.*

5  *Hampton Roads Reg'l Jail Auth.*, No. 2:20-cv-00410, Agreement to Resolve the

6  Department of Justice's Investigation of the Hampton Roads Regional Jail, ECF No. 2-1 at

7  13 (E.D. Va. Aug. 5, 2020); *see also id.* at 17.  Similarly, the agreement the DOJ reached

8  with the State of Wisconsin regarding conditions at one of its prisons, the Taycheedah

9  Correctional Institution, provides for incarcerated patients to have "access to inpatient

10 psychiatric care when clinically appropriate"—inpatient care that is provided by the state

11 hospital system (i.e., Winnebago Mental Health Institution and Wisconsin Resource

12 Center).  Attachment A, Memorandum of Agreement Between the USDOJ and the State of

13 Wisconsin Regarding Conditions at Taycheedah (Dec. 15, 2010) at 5,

14 https://www.justice.gov/sites/default/files/crt/legacy/2010/12/15/taycheedah_agree.pdf.

15         In the less typical case where, as here, a correctional system has opted to provide

16 inpatient psychiatric care to patients within their facilities, the DOJ affirms that such

17 treatment should be "comparable to in-patient psychiatric care."  *See* DOJ Brief, ECF No.

18 7846 at 3 (quoting *United States v. Cook County*, No. 1:10-cv-02946, Agreed Order, ECF

19 No. 3-1 at ¶ 59 (N.D. Ill. May 13, 2010)).  The DOJ's approach to ensuring incarcerated

20 patients receive constitutionally adequate inpatient treatment in prior cases is thus wholly

21 consistent with Plaintiffs' requested relief.  To ascertain what constitutes adequate

22 inpatient treatment in correctional settings, it is thus necessary to ascertain what

23 appropriate inpatient treatment looks like in the community.  Plaintiffs' requested relief—

24 which would provide for patients to be out of their cells and engaged in either structured

25 therapeutic or recreational activities for the equivalent of a work week—appropriately

26 approximates the level of care provided to psychiatric inpatients in the community, who

27 benefit from daylong programming and access to a therapeutic milieu.  *See* Plaintiffs'

28 Motion, ECF No. 7812 at 18-22; Plaintiffs' Reply, ECF No. 7838 at 7-9.

II.   **PLAINTIFFS' REQUESTED RELIEF IS NARROWLY TAILORED, ESPECIALLY IN LIGHT OF THE DOJ'S PRIOR CONSENT DECREES**

As the DOJ affirms, Plaintiffs requested relief is narrowly tailored to remedy the constitutional violation in CDCR's PIPs because it provides more modest relief (fewer minimum structured treatment hours) than what the United States agreed was necessary to remedy analogous constitutional violations in California's own Department of State Hospitals ("DSH").  *See* DOJ's Brief, ECF No. 7846 at 3 n.1 (citing *United States v. California*, No. CV 06-2667, Amended Consent Judgment (C.D. Cal. 2007), ECF No. 9 ). The DSH consent decree required the hospitals provide a minimum of "20 hours of active treatment per week, plus another minimum of 20 hours of 'adequate active psychosocial rehabilitation'" to their psychiatric inpatients.  *Id.* (quoting consent decree).

The United States therefore previously required California to provide psychiatric inpatients with a minimum of 40 hours of what would be considered "structured treatment" under the *Coleman* Program Guide.  *See* Program Guide (2021 Revision), ECF No. 7333-1 at 59 (defining "structured therapeutic activities" as including "recreational and occupational therapies").  Notably, these 40 hours did not include "additional activities that enhance the individual's quality of life" in the evenings and weekends, or staff and patient interactions within the unit's "therapeutic milieu, including living units."  *United States v. California*, No. CV 06-2667, Amended Consent Judgment (C.D. Cal. 2007), ECF No. 9 at 17.  Plaintiffs requested relief thus halves these previously established minimum structured treatment standards for psychiatric inpatients in California's state hospital system, including for the *Coleman* patients transferred there for care.

The DOJ's brief also references two of the DOJ's more recent corrections consent decrees, as examples of agreements that have imposed specific minimum treatment hour standards for mental health programs—*Hampton Roads* and *L.A. County*.  *See* DOJ Brief, ECF No. 7846 at 3.  Defendants may point to the number of hours in these DOJ consent decrees as lower than the 20 structured treatment hours sought here.  Those consent decree numbers, however, are lower because the standards applied to patients housed in a lower

PLS.' SUPP. MEM. ISO MOTION TO REJECT DEFS.' PLAN TO PROVIDE MIN. TREATMENT STDS. FOR PIPS (ECF NO. 7787) AS INADEQUATE TO REMEDY DEFS.' 8TH AM. VIOLATIONS

level of care.  The jails relied on outside hospitals and treatment centers for inpatient care.  In both cases, the minimum treatment hour standards referenced do not govern the jails' *inpatient* psychiatric programs.  Indeed, as discussed above, in *Hampton Roads*, the consent decree requires the jail to provide inpatient psychiatric services through transfer to outside hospitals.  *Hampton Roads Reg'l Jail Auth.*, ECF No. 2-1 at 13, 17.  The cited minimum standards govern the amount of structured and unstructured treatment provided in the jail's "Secure Mental Health Units," which are akin to CDCR's ASU-EOP Hub housing units.  *See id.* at 18-19.  In *L.A. County*, the consent decree requires that inpatient treatment is provided in the "Forensic In-Patient" or "FIP," a unit of the jail's Correctional Treatment Center.  *United States v. Los Angeles County*, No. 2:15-cv-05903, Joint Settlement Agreement Regarding Los Angeles County Jails, ECF No. 4-1 at 9 (C.D. Cal. Aug. 1, 2015).  The minimum treatment standards cited in the DOJ's brief apply to different units, the "High Observation Housing" ("HOH") units.  *See id.* at 40; DOJ Brief, ECF No. 7846 at 3.  In neither of these consent decrees, therefore, are the cited treatment hour minimums relevant to determining what is an appropriate minimum amount of treatment to be provided to psychiatric *inpatients*.  The DSH consent decree is, in fact, the only case cited by the DOJ where the United States has negotiated specific minimum treatment standards for psychiatric inpatient care.  *See generally* DOJ Brief, ECF No. 7846.  Utilizing this case as an appropriate reference, the Court should find that Plaintiffs' requested relief is narrowly tailored and extends no further than necessary to correct the constitutional violation here.

### III.   DEFENDANTS' LONG HISTORY OF PERSISTENT CONSTITUTIONAL VIOLATIONS IN THE PIPS JUSTIFIES PLAINTIFFS' REQUESTED RELIEF

The Special Master's 2023 PIP Report concluded by noting the long history of Defendants' failure to remedy its constitutional violations in the PIPs, including Defendants' failure to develop minimum treatment standards to ensure patients receive adequate inpatient-level treatment.  *See* Special Master's 2023 PIP Report, ECF No. 7833 at 124-25 ("With some limited exceptions, monitoring round after monitoring round, the

1  Special Master has identified the same deficiencies with little evidence of efficacious

2  remedial action by defendants.").  The Special Master urged action.  *Id.* at 23 ("The

3  Special Master has filed multiple monitoring reports sounding the alarm on conditions at

4  the Lift and Shift PIPs.  It is long past time for defendants to correct these longstanding

5  deficiencies.").

6       Defendants have had decades to ensure *Coleman* class members have adequate

7  access to inpatient psychiatric treatment.  *See Coleman v. Wilson*, 912 F. Supp. 1282,

8  1308-09 (E.D. Cal. 1995); *Plata*, 563 U.S. at 516; *Coleman v. Brown*, 938 F. Supp. 2d 955,

9  981-82 (E.D. Cal. 2013).  When Defendants took over operations of the three Lift-and-

10 Shift PIPs in 2017, their responsibility to develop minimum treatment standards to ensure

11 adequate structured treatment and out-of-cell time for patients only increased.  The Special

12 Master has recommended that CDCR develop these standards several times over the past

13 several years.  *See* Special Master's 2021 Inpatient Report, ECF No. 7039 at 118;  Special

14 Master's 2022 Inpatient Report, ECF No. 7555 at 164-65.  Because Defendants' proposed

15 plan falls terribly short of what is needed to correct the longstanding violations in the PIPs,

16 the Court should reject it.

17      As the DOJ affirms, more specific relief may be imposed on correctional facilities

18 consistent with the Prison Reform Litigation Act's ("PLRA") least-intrusiveness

19 requirements where, as here, there is a long history of non-compliance with less specific

20 orders.  DOJ Brief, ECF No. 7846 at 5 (citing *Armstrong*, 58 F.4th at 1296-97).  Further, as

21 discussed above, the DOJ's brief contains several examples of the United States' prior

22 consent decrees with county jails which have specified treatment hour standards,

23 agreements which contain specific treatment requirements but nevertheless preserve the

24 correctional institutions' discretion over related operational and security concerns.  *See id.*

25 at 3 (citing *Hampton Roads* and *L.A. County*).  For these reasons, the Court should find

26 that Plaintiffs' requested relief is the least intrusive means to correct Defendants' persistent

27 constitutional violations.

28

**CONCLUSION**

Plaintiffs respectfully request that the Court reject Defendants' proposed plan to provide minimum treatment standards for psychiatric inpatient programs (ECF No. 7787) as inadequate to remedy the Eighth Amendment violations present in this case.  Plaintiffs further move the Court to find that Plaintiffs' requested remedy (ECF No. 7812) satisfies the need, narrowness, and intrusiveness requirements of the PLRA and order relief accordingly.

**CERTIFICATION**

The undersigned counsel for Plaintiffs certifies that she reviewed the following relevant court orders: ECF Nos. 7854, 7765, 7697; *Coleman v. Brown*, 938 F. Supp. 2d at 990; *Coleman v. Wilson*, 912 F. Supp. at 1324.

DATED:  June 30, 2023                    Respectfully submitted,

                                        ROSEN BIEN GALVAN & GRUNFELD LLP

                                        By:  */s/ Arielle W. Tolman*
                                             Arielle W. Tolman

                                        Attorneys for Plaintiffs