DONALD SPECTER – 083925
STEVEN FAMA – 099641
MARGOT MENDELSON – 268583
PRISON LAW OFFICE
1917 Fifth Street
Berkeley, California  94710-1916
Telephone:   (510) 280-2621

CLAUDIA CENTER – 158255
DISABILITY RIGHTS EDUCATION
AND DEFENSE FUND, INC.
Ed Roberts Campus
3075 Adeline Street, Suite 210
Berkeley, California  94703-2578
Telephone:   (510) 644-2555

MICHAEL W. BIEN – 096891
ERNEST GALVAN – 196065
LISA ELLS – 243657
JENNY S. YELIN – 273601
THOMAS NOLAN – 169692
MICHAEL S. NUNEZ – 280535
AMY XU – 330707
CARA E. TRAPANI – 313411
MARC J. SHINN-KRANTZ – 312968
ALEXANDER GOURSE – 321631
GINGER JACKSON-GLEICH – 324454
ADRIENNE PON HARROLD – 326640
ARIELLE W. TOLMAN – 342635
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California  94105-1738
Telephone:   (415) 433-6830

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>        Plaintiffs,<br><br>   v.<br><br>GAVIN NEWSOM, et al.,<br><br>        Defendants. | Case No. 2:90-CV-00520-KJM-DB<br><br>**PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION TO REJECT DEFENDANTS' PSYCHIATRIC INPATIENT PROGRAM STAFF RECRUITMENT AND RETENTION PLAN (ECF NO. 7813)**<br><br>Judge:   Hon. Kimberly J. Mueller |

[4317296.2]

**INTRODUCTION**

On May 11, 2023, the Special Master filed his Thirtieth Round Monitoring Report – Part A: Special Master's Monitoring Report on the Psychiatric Inpatient Programs for Mental Health Patients of the California Department of Corrections and Rehabilitation ("2023 Inpatient Report"), ECF No. 7833.  The 2023 Inpatient Report confirms that staffing shortages continue to fuel pervasive deficiencies in mental healthcare in the Lift and Shift PIPs and that patients in these facilities, especially CHCF-PIP and CMF-PIP, continue to suffer from dramatically inadequate care.  The 2023 Inpatient Report also shows that Defendants have begun to formalize and institutionalize their efforts to triage care at CMF-PIP in response to persistent and egregious staffing deficiencies, and Defendants have only advanced and expanded these efforts since the 2023 Inpatient Report was released.

The Court invited the U.S. Department of Justice ("DOJ") to share its views on Plaintiffs' motions regarding PIP staffing and PIP minimum treatment standards.  Apr. 20, 2023 Order, ECF No. 7817 at 2.  The DOJ's response, filed on May 22, 2023, makes clear that, although remedying the severe staffing deficiencies in the Lift and Shift PIPs may be challenging, both Defendants and the Court have a range of tools available to resolve Defendants' PIP staffing woes, from comprehensive recruitment and retention plans to appointment of receivers or other third parties.  *See* United States' Response Related to Minimum Treatment Standards and Staffing for Psychiatric Inpatient Programs, ECF No. 7846 ("DOJ Response").

The 2023 Inpatient Report and the DOJ's brief together confirm that more can and should be done to remedy the dangerous staffing deficiencies in the three Lift and Shift PIPs and that the time to act is now.

**I.      The Special Masters' 2023 Inpatient Report Shows that PIP Staffing Vacancies Continue to Result in Deficient Care at the Lift and Shift PIPs and Confirms that Defendants Must Revamp Their Recruitment and Retention Plan**

As discussed in Plaintiffs' opening brief, the Special Master's 2022 Inpatient Report documented in detail that high mental health staffing vacancies in the Lift and Shift PIPs

1    impaired patient care in numerous ways, including insufficient individual clinical contacts,

2    an inadequate quality and quantity of group treatment, and poor treatment planning.  Pls.'

3    Mot. (Apr. 17, 2023), ECF No. 7813 at 9; Twenty-Ninth Monitoring Round Report – Part

4    A: Special Master's Monitoring Report on the Psychiatric Inpatient Programs for Mental

5    Health Patients of the California Department of Corrections and Rehabilitation (May 17,

6    2022), ECF No. 7555 ("2022 Inpatient Report") at 66-68, 160, 179, 232, 246, 288, 293.[1]

7    The Special Master's recently filed 2023 Inpatient Report confirms that Defendants' PIP

8    staff Recruitment and Retention Plan has proven largely ineffective to date and that severe

9    staffing shortages continue to result in numerous deficiencies in care that harm patients.

10         The Special Master reported that "staffing vacancies at two of the three Lift and

11   Shift PIPs remained 'dangerously high' and, in some cases, had worsened since the

12   preceding monitoring round."  2023 Inpatient Report at 38.  The Special Master further

13   reported that at CMF and CHCF, "any positive impact resulting from the steps defendants

14   have taken to improve staffing levels at the Lift and Shift PIPs since the preceding review

15   period were not apparent at the time of the monitoring tour."  *Id.*  These "staffing

16   vacancies impacted all aspects of the provision of mental health care to *Coleman* class

17   members."  *Id.* at 42.  The negative impacts included "less frequent individual clinical

18   contacts, utilization of nonconfidential contacts, extremely limited amount of structured

19   treatment, and the absence of core mental health groups."  *Id.*  "PIP patients in acute and

20   intermediate care programs experienced ongoing problems with access to sufficient hours

21   of structured therapeutic activities; clinically indicated treatment interventions, such as

22   core clinical groups, dialectical behavior treatment (DBT), and positive behavior support

23   plans (PBSPs); and timely required contacts, including for IDTTs, initial assessments, and

24   routine primary clinician and psychiatry appointments."  *Id.* at 56.  "Staffing vacancies

25   also inhibited the PIP's respective quality management programs as well as the

26   implementation of the Statewide System to Encourage Progress (STEP) Program."  *Id.* at

27

28   _____

[1] Page citations to documents in the docket are based on ECF pagination.

42.  Summarized below, organized by institution, are the key care deficiencies resulting from the staffing crisis in the Lift and Shift PIPs identified in the 2023 Inpatient Report.

**A.    CMF-PIP**

Staffing shortages at CMF-PIP impaired both individual and group care in both the ICF and acute programs.  "[S]taffing shortages resulted in nonconfidential patient contacts and IDTTs."  2023 Inpatient Report at 52.  "[N]either psychologists nor social workers facilitated core clinical groups."  *Id.* at 128.  Staff-to-patient ratios were not met for several disciplines in both the acute and ICF programs.  *Id.* at 134.  For acute care, mental health leadership responded to staffing shortages by prioritizing certain required clinical activities at the expense of others.  *Id.* at 51.

Staffing shortages also left patient beds unused and hindered use of positive behavioral support plans, quality improvement processes, utilization reviews, and implementation of the STEP program.  *See id.* at 129-30.  "Due to severe staffing shortages, eight acute care beds were [unused]" and "[t]wo were … redlined."  *Id*. at 130.  "Due to inadequate staffing, CMF-PIP has not had a formal positive behavioral support team since September 2021," and "[t]here were no active PBSPs for any patients, despite staff identifying this as a needed service for patients[.]"  *Id.* at 62, 129.  Staffing vacancies "were a barrier to STEP implementation, and the reason that pre-release groups were not offered."  *Id.* at 52.  "[Q]uality management activities were similarly limited secondary to staffing shortages, and especially due to vacancies in leadership positions."  *Id.* at 51-52.  "Utilization review was not occurring."  *Id.* at 104.

The Special Master further reported that, due to severe staffing shortages at CMF, in March 2023, Defendants proposed temporarily using a shortened, non-standard Master Treatment Plan in both CMF's PIP and outpatient units, and had adopted a shortened Suicide Risk Assessment and Self-Harm Evaluation ("SRASHE") form for use in CMF's outpatient units.  *Id*. at 25.  Since then, Defendants have advanced and expanded this triaging of patient care standards as a stopgap measure to deal with the current staffing emergency.  Earlier this month, again citing the ongoing extreme staffing crisis at CMF,

[4317296.2]

3

SUPPLEMENTAL BRIEF IN SUPPORT OF PLAINTIFFS' MOTION TO REJECT DEFENDANTS'
PSYCHIATRIC INPATIENT PROGRAM STAFF RECRUITMENT AND RETENTION PLAN (ECF NO. 7813)

1    Defendants informed Plaintiffs and the Special Master that they plan to expand use of the
2    curtailed SRASHE form to the CMF-PIP, while continuing its use in CMF's non-PIP
3    programs for an additional three months.  Decl. of Michael Nunez, filed herewith, ¶ 2.
4    Defendants also provided additional detail regarding the abbreviated Master Treatment
5    Plan being rolled out to the CMF-PIP, which Defendants expect will be utilized for at least
6    ninety days.  *Id.*  These efforts are clearly reflective of a system in crisis, and of
7    Defendants' piecemeal, reactive approach to addressing the PIP staffing woes by curtailing
8    care standards rather than taking all necessary steps to ensure adequate numbers of
9    clinicians are available to treat the CMF-PIP's patients.

10           **B.     CHCF-PIP**

11           Staffing vacancies resulted in a myriad of deficiencies at CHCF-PIP.  Patients
12   "were not seen by the psychiatrist for long periods of time"—frequently two to three
13   weeks—due to staffing shortages.  2023 Inpatient Report at 78, 80, 193.  Staffing shortages
14   "adversely impacted medication management," "were the largest barrier to PBST
15   availability," and were a barrier to implementation of the STEP policy.  *Id.* at 52, 87, 195.
16   Staffing shortages limited CHCF's quality management program's ability "to audit and
17   drill down on deficient indicators, develop corrective action and sustainability plans, and
18   update PIP policies."  *Id.* at 51.

19           "[S]ignificant numbers of beds were unavailable as a direct result of ongoing mental
20   health staffing vacancies."  *Id.* at 24.  CHCF-PIP was operating at just 70% capacity during
21   the monitoring period.  *Id.*  Ninety-one acute beds were offline due to staffing shortages,
22   and CHCF-PIP housed less than half the number of acute patients than it had during the
23   previous monitoring round.  *Id.* at 177.

24           **C.     SVSP-PIP**

25           Staffing shortages at SVSP negatively impacted both individual and group
26   treatment, types of treatment available, and quality management.  "[I]nadequate staffing"
27   contributed to "challenges consistently offering patients a sufficient number of group
28   treatment hours[.]"  2023 Inpatient Report at 51.  Reportedly due to staffing shortages,

"since August 2022, the SVSP-PIP had developed behavioral plans for only 6 of 19 patients who had been referred for them." *Id.* at 52.  Staffing shortages adversely impacted completion of RVR mental health assessments. *Id*.  Inadequate staffing impeded quality management activities, and SVSP-PIP "did not conduct utilization management audits" due to staffing vacancies. *Id.* at 52, 105, 245.  Due to staffing vacancies, SVSP secured three waivers from the California Department of Public Health that permitted less frequent psychiatric contacts. *Id.* at 229-30.

The 2023 Inpatient Report makes clear that ongoing mental health staffing shortages continue to cause serious, pervasive deficiencies in care in the Lift and Shift PIPs and that these deficiencies are especially egregious at CHCF and CMF.  This despite the fact that most of the provisions in Defendants' Recruitment and Retention Plan had been in place for several months by the time of the Special Master's Thirtieth Round tours. *See* Pls.' Mot. at 12-14.  The 2023 Inpatient Report is yet more evidence that Defendants' plan to simply stay the course will not remedy the dangerous PIP staffing crisis.

II.    **The Justice Department's Brief Confirms that the Court Has Options to Address the Persistently High Staffing Vacancies in the Lift and Shift PIPs**

In its brief, DOJ provides examples of settlement agreements, consent decrees, and orders that it has secured to address staffing vacancies in other cases involving correctional facilities.  DOJ Response at 4-5.  The DOJ reports that, in cases where it "has encountered extended non-compliance," the DOJ has secured agreements or orders that empower a receiver or another independent third-party with the authority over the correctional facility necessary to remedy the deficiencies, including power to address staffing. *Id.* at 5 (citing, e.g., *United States v. Miami-Dade Cty*, No. 1:13-cv-21570, Stipulated Order Regarding Appointment of Independent Jail Compliance Director, ECF No. 260 (S.D. Fla. Feb. 16, 2023) at 5 (giving third-party Compliance Director authority "to direct personnel actions, including, but not limited to, the authority to direct hiring, firing, suspension, supervision, promotion, transfer, and disciplinary actions" and "to establish administrative personnel policies"); *Jones v. Gusman*, No. 2:12-cv-00859, Stipulated Order for Appointment of

1 Independent Jail Compliance Director, ECF No. 1082 (E.D. La. June 21, 2016) at 6

2 (appointment of independent Compliance Director with authority to develop and

3 implement plan that included "[s]trategies to accomplish sustainable hiring measures,

4 including emergency measures if necessary")).

5       The DOJ's briefing makes clear that both Defendants and the Court have options to

6 address deficient PIP mental health staffing.  First, in addition to taking the steps to

7 improve their deficient plan identified in Plaintiffs' Motion (ECF No. 7813 at 11-19),

8 Defendants could revamp their Recruitment and Retention Plan by voluntarily agreeing to

9 vest an independent third party with the authority over Defendants' recruitment and

10 retention practices necessary to meaningfully improve recruitment and retention of mental

11 health staff in the Lift and Shift PIPs.  Second, if the Court issues an order directing

12 Defendants to lower mental health staffing vacancies in the Lift and Shift PIPs by a date

13 certain as Plaintiffs have so moved, and Defendants fail to comply, the Court would have,

14 at that point, several options consistent with the Prison Litigation Reform Act available for

15 enforcing its order, including initiating contempt proceedings and/or empowering a

16 receiver or another third party with the authority over CDCR necessary to remedy CDCR's

17 PIP staffing woes.  *Cf. Armstrong v. Brown*, 58 F. 4th 1283, 1297 (9th Cir. 2023) (where

18 court has previously attempted to remediate violations of federal law "through less

19 intrusive means, and those attempts have failed, relief prescribing more specific

20 mechanisms of compliance is appropriate" (internal quotation marks omitted)).

21 **CONCLUSION**

22       The Special Master's 2023 Inpatient Report demonstrates that patients in the Lift

23 and Shift PIPs continue to languish with wholly inadequate care due to significant staffing

24 vacancies.  Rather than adopting an aggressive and comprehensive plan to tackle their PIP

25 staffing woes to boost staffing and meet patients' needs, Defendants have instead

26 increasingly employed the opposite strategy—a piecemeal, reactive effort of taking beds

27 offline and lowering the quality and amount of care provided to patients to meet the

28 constraints of the remaining PIP staff.  However, the Justice Department's briefing

confirms that both Defendants and the Court have options available to solve the Lift and Shift PIPs' longstanding staffing problems.

For the foregoing reasons, Plaintiffs request that the Court grant Plaintiffs' Motion, order Defendants to submit a revised PIP Recruitment and Retention Plan, give Defendants a year to reduce PIP mental health staff vacancies to the required ten-percent maximum vacancy rate, and clearly indicate that the Court will initiate proceedings to enforce this order if Defendants fail to comply.

## CERTIFICATION OF ORDERS REVIEWED

The undersigned counsel for Plaintiffs certifies that he reviewed the following relevant court orders:  ECF Nos. 7854, 7817.

DATED:  June 30, 2023                    Respectfully submitted,

ROSEN BIEN GALVAN & GRUNFELD LLP

By:  */s/ Michael S. Nunez*
        Michael S. Nunez

Attorneys for Plaintiffs

[4317296.2]

7

SUPPLEMENTAL BRIEF IN SUPPORT OF PLAINTIFFS' MOTION TO REJECT DEFENDANTS'
PSYCHIATRIC INPATIENT PROGRAM STAFF RECRUITMENT AND RETENTION PLAN (ECF NO. 7813)