Rob Bonta, State Bar No. 202668
Attorney General of California
Monica N. Anderson, State Bar No. 182970
Senior Assistant Attorney General
Damon McClain, State Bar No. 209508
Supervising Deputy Attorney General
Elise Owens Thorn, State Bar No. 145931
Namrata Kotwani, State Bar No. 308741
Deputy Attorneys General
  1300 I Street, Suite 125
  P.O. Box 944255
  Sacramento, CA 94244-2550
  Telephone: (916) 210-7318
  Fax: (916) 324-5205
  E-mail: Elise.Thorn@doj.ca.gov
*Attorneys for Defendants*

Hanson Bridgett LLP
Paul B. Mello, SBN 179755
Samantha D. Wolff, SBN 240280
Kaylen Kadotani, SBN 294114
Laurel O'Connor, SBN 305478
David C. Casarrubias, SBN 321994
Carson R. Niello, SBN 329970
1676 N. California Blvd., Suite 620
Walnut Creek, California 94596
Telephone:  925-746-8460
Facsimile:  925-746-8490
*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

# SACRAMENTO DIVISION

| | |
|---|---|
| RALPH COLEMAN, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>GAVIN NEWSOM, et al.<br><br>    Defendants. | Case No. 2:90-CV-00520- KJM-DB<br><br>**DECLARATION OF DAMON G. MCCLAIN IN SUPPORT OF DEFENDANTS' PORTION OF THE JOINT STATEMENT RE: DEFENDANTS' CONSULTANTS' TOURS**<br><br>Judge: Hon. Kimberly J. Mueller |

I, Damon G. McClain, declare as follows:

1. I am an attorney duly admitted to practice before this Court. I am a Supervising Deputy Attorney General with the California Department of Justice, attorneys of record for Defendants. I have personal knowledge of the facts set forth herein, except as to those stated on information and belief and, as to those, I am informed and believe them to be true. If called as a witness, I could and would competently testify to the matters stated herein.

2. On April 21, 2023, co-counsel in this case, Paul Mello, sent via email a letter to Plaintiffs' counsel and the Special Master's team notifying them that Defendants' consultants at VRJS/Falcon would "conduct a broader, systemwide study of the Mental Health Delivery

19764798.3

1  System," which will "likely include on-site visits in the future – currently estimated to begin in
2  July 2023."  A true and correct copy of Mr. Mello's April 21, 2023 letter, of which I was also a
3  recipient, is attached as **Exhibit A.**  Plaintiffs' counsel, Lisa Ells, responded via email on April 25,
4  2023, and stated that Plaintiffs' counsel would attend the tours, and did not indicate any objection
5  to the tours proceeding.  A true and correct copy of Ms. Ells' April 25, 2023 email is attached as
6  **Exhibit B.**

7        3.     On June 13, 2023, co-counsel in this case, Samantha Wolff sent an email to
8  Plaintiffs' counsel and the Special Master's team providing dates for the consultants' tours set to
9  occur in July and August.  Ms. Wolff's email provided the specific dates and locations for those
10 tours, and also indicated that "there will be additional tours after August, but we are still working
11 on those dates and we wanted to provide you the schedule for the next couple of months as soon as
12 we could."  A true and correct copy of Ms. Wolff's June 13, 2023 email, of which I was a
13 recipient, is attached as **Exhibit C.**  Ms. Wolff followed up via email on June 20, 2023, with
14 Plaintiffs' counsel and the Special Master's team to advise of the start time for the first day of each
15 tour.  Ms. Wolff also advised that Defendants' consultants would like to interview patients and
16 asked if Plaintiffs' counsel would object.  A true and correct copy of Ms. Wolff's June 20, 2023
17 email, of which I was a recipient, is attached as **Exhibit D.**

18       4.     On June 22, Mr. Bien responded to Ms. Wolff's June 20, 2023 email and stated that
19 Plaintiffs' counsel "does not consent to any interviews by defense experts," but that "[i]t is
20 possible that we would cooperate in defendants' efforts to obtain interviews if we are provided
21 sufficient information to understand who will be doing the interviews and for what purpose."  Mr.
22 Bien also stated that Plaintiffs' counsel "may permit interviews" when Plaintiffs' counsel are
23 present and have had an opportunity to meet privately beforehand with the patient.  A true and
24 correct copy of Mr. Bien's June 22, 2023 email, of which I was a recipient, is attached as **Exhibit**
25 **E.**

26       5.     Ms. Wolff responded on June 30, 2023, and provided the information Mr. Bien had
27 requested, including the names of the clinician-consultants who would be conducting the
28 interviews and the purpose of the interviews (i.e., "to assist the Falcon team in evaluating CDCR's

MHSDS" and explaining that "[p]art of their evaluation will involve an assessment of patient quality of care, and include patient interviews" because "patients' honest feedback regarding their experiences receiving care at various levels would help the experts make that assessment and could provide valuable insights into patient perspectives."). Ms. Wolff also advised that Defendants' agreed to Mr. Bien's requirement that class counsel would be present during the interviews, among other discussion points. A true and correct copy of Ms. Wolff's June 30, 2023 email, of which I was a recipient, is attached as **Exhibit F.**

6. On July 5, 2023, Ernest Galvan, counsel for the Plaintiff class, responded to Ms. Wolff's June 30 email regarding class member interviews. Mr. Galvan reiterated several requirements to which Defendants had previously agreed (including Plaintiffs' counsel's presence during the interview and Plaintiffs' counsel's ability to meet privately with their client before each interview to discuss "the purpose of the interview to ensure that participation is with informed consent.") and also raised a number of new requirements – including a request for a sample set of questions and information on the method used to select patients for interviews, among others. A true and correct copy of Mr. Galvan's July 5, 2023 email is attached as **Exhibit G.**

7. Elise Thorn from my office and our co-counsel, Samantha Wolff, met and conferred via videoconference with Plaintiffs' counsel on July 6, 2023, to discuss Plaintiffs' concerns regarding patient interviews and attempt to reach a compromise. Ms. Wolff sent an email (to which I was copied) to Plaintiffs' counsel later that evening outlining the parties' areas of agreement and disagreement. Mr. Galvan and Ms. Wolff continued to communicate to work through Plaintiffs' concerns over the next several days. On July 7, 2023, Mr. Galvan outlined the parties' areas of agreement (including, that patient interviews may occur with Plaintiffs' counsel present, Plaintiffs' counsel may meet privately with their clients before the interviews, and the interviews would be recorded, among other areas of agreement) and disagreement (observation of treatment). I was copied on all of their correspondence.

8. On Monday, July 10, Michael Bien replied to the same email thread to raise concerns regarding Defendants' consultants' observations of 1:1 treatment and to note Plaintiffs' counsel's agreement to permit observation of intake and screening, IDTTs, and group treatment

19764798.3

3

DECL. DAMON MCCLAIN
ISO DEFS' PORTION OF THE JOINT STATEMENT RE DEFS' CONSULTANTS' TOURS

with Plaintiffs' counsel present and patient consent.  Mr. Bien and I subsequently exchanged a number of emails regarding this and other topics relating to the scope and content of Defendants' consultants' tours for over a week.  I attempted to address Mr. Bien's concerns and offer compromises to reach agreement – including offering to allow Plaintiffs' counsel and a member of the Special Master's team to sit in the room during the 1:1 treatment session (without defense counsel present), and agreement that the treating clinician obtain patient consent for the observation.  I also sought to correct a number of Mr. Bien's misstatements.  It appeared to me from these communications that Plaintiffs had agreed that patient interviews may occur (subject to the caveats agreed upon by the parties, including the presence of Plaintiffs' counsel), that the consultants may silently observe group treatment, but that Plaintiffs refused to agree to the consultants' silent observations of 1:1 treatment.  A true and correct copy of this email string between counsel for the parties is attached as **Exhibit H.**

9.     VRJS/Falcon has sought to observe similar aspects of CDCR's MHSDS as the Special Master's team during their tours, including observing group treatment sessions, touring areas where mental healthcare is delivered, and speaking with clinical staff where appropriate. While Plaintiffs' counsel have demanded that a written script be used to obtain patients' verbal informed consent for interviews and silent observation of group treatment and other non-confidential meetings and encounters, such as ICCs, I am informed and believe this has never been a requirement during other prison tours in this case, including those previously conducted by Defendants' experts.  Indeed, I am informed and believe the Special Master's experts' tours regularly include observation of the following types of group and non-confidential encounters, to which Plaintiffs' counsel have never objected nor required informed consent: IDTTs; Mental Health Treatment Groups; ICCs; Huddles; and, Psych Tech Rounds.  Notably, ICCs are not mental health treatment and are merely a custody function to which patients have no expectation of privacy or confidentiality.  I am also informed and believe that the Special Master's expert, Lindsay Hayes, has also observed 1:1 types of encounters, including R&R nurse screenings, Crisis Intervention Team, urgent and emergent referral assessments, pre-Ad Seg screening, alternative housing assessments, and psych tech rounds. Defendants are not aware that Plaintiffs' counsel

have previously required verbal informed consent before observing these types of encounters in this case, including during Special Master team tours or during the staffing tours previously conducted by VRJS/Falcon (which included observation of IDTTs).

10. To address Plaintiffs' counsels' objections regarding consent and in the hope that the tours could proceed without the parties needing to seek Court intervention, Defendants modified a written consent form proposed by Plaintiffs into a script to use to obtain informed consent verbally. Defendants have now found this informed-consent script to be unworkable. Defendants' attorneys attending the tours have advised that the script is intimidating and confusing to the patients and the clinicians. Additionally, I am informed by my co-counsel who have attended the tours that Plaintiffs' counsel have persisted in actively engaging with patients and clinicians during the consent process in an apparent attempt to lead them to refuse to give consent. I am informed and believe that during the consent process for one group-treatment session, Plaintiffs' counsel even interjected that the purpose of the observations was to reduce mental-health staffing.

11. Significant coordination and planning is required to create VRJS/Falcon's tour schedules, and requires extensive coordination between CDCR facilities and Defendants' consultants. Defendants are working hard to provide Plaintiffs' counsel and the Special Master's team with at least four weeks' advance notice of the tour schedule, and sometimes even longer, consistent with the common practice in this case. Indeed, Plaintiffs were informed on June 13 of tour dates set to occur some ten weeks later in August. And while Plaintiffs have complained that they have not generally been provided an advance daily schedule with start and stop times, a specific start time was provided for the first day of each tour with succeeding day start and end times set based on the institution's schedules for each day. This approach is similar to the timing and flexible approach used for other tours in this case, including tours conducted by the Special Master's team.

12. Further, although Plaintiffs' now object to Defendants' consultants' silent observation of 1:1 treatment, Dr. Penn (Defendants' expert) observed 1:1 telepsychiatry treatment on December 1-2, 2022, at California Medical Facility and San Quentin State Prison as part of an

1 evaluation of CDCR's telepsychiatry policy.  (ECF No. 7202-1 (Decl. Penn ¶ 5, Ex. A).)  I was at San Quentin during Dr. Penn's observations of 1:1 treatment there, but to limit the number of observers, I did not sit in on the actual 1:1 treatment.  Plaintiffs took no issue then, and an attorney for Plaintiffs even sat in with Dr. Penn during the observation.

      I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

      Executed on this 25th day of July, 2023, at San Francisco, California.

                                        */s/ Damon McClain*
                                        Damon G. McClain