# Exhibit H

| | |
|---|---|
| **From:** | Michael W. Bien <MBien@rbgg.com> |
| **Sent:** | Tuesday, July 18, 2023 7:27 AM |
| **To:** | v_Damon.McClain@doj.ca.gov |
| **Cc:** | Samantha Wolff; Lisa Ells; Jenny Yelin; Paul B. Mello; v_Elise.Thorn@doj.ca.gov; Coleman Team - RBG Only; Steve Fama; Margot Mendelson; Donald Specter; Sara Norman; Coleman Special Master; Coleman Special Master Team; v_Melissa.Bentz@cdcr.ca.gov; v_Nicholas.Weber@cdcr.ca.gov; Thind, Sundeep@CDCR; v_dillon.hockerson@cdcr.ca.gov; Penny Godbold; Hannah Chartoff; Marissa Hatton |
| **Subject:** | [EXTERNAL] Re: Coleman - Follow up re patient interviews:  Falcon Tours |
| **Attachments:** | Statement for Informed Patient Consent- MH Treatment 7.17.23.pdf |

**EXTERNAL:** Use caution when opening attachments, links or responding to this e-mail.

Damon

Thank you for your agreement to present our disputes about the Falcon tours to the Court on an expedited basis.  We also appreciate that defendants have agreed to halt observations of one on one mental health encounters pending the Court's resolution of the disputes.  To clarify, a one on one is an otherwise confidential interaction between a patient and a clinician.  It includes cell-front or in another non-confidential space if that is the place the interaction is occurring.

For purposes only of the pending tours, I am confirming that Falcon may proceed with observations of IDTT's, group treatment, R&R screening, and huddles.  We still have a dispute about the content of the consent form and the manner of obtaining consent but will permit the use of the form you sent to the field yesterday pending resolution by the Court.

We request again that the tours be halted pending the Court's decision.

Thank you.

MIchael

Sent from my iPad

> On Jul 17, 2023, at 6:57 PM, Damon McClain <Damon.McClain@doj.ca.gov> wrote:

[EXTERNAL MESSAGE NOTICE]

Mike,

It seems we are talking past each other, and you haven't responded to our prior questions and points.  That said, I must again correct your misstatements.  Neither defense counsel nor the experts are conversing with patients outside the presence of

Plaintiffs' counsel. We have reiterated this point multiple times now. We also did not agree for the experts to forego observations of one-on-one treatment; in the email I sent on Friday, we clearly stated that those observations would proceed and that Plaintiffs' counsel was welcome to attend. Additionally, it is incorrect that VRJS/Falcon was retained by my office and Hanson Bridgett. They were retained by CDCR to conduct an evaluation of the MHSDS. CDCR conducting an evaluation of its own MHSDS does not constitute discovery. The focus of the experts' work is the delivery of mental-health services and all of the processes that entails under the Program Guide.

We are not aware of any Court order that requires CDCR to obtain advance approval from the Court to evaluate its own system or to have consultants conduct tours. And Defendants' and Plaintiffs' experts have recently toured prisons without obtaining prior Court approval. Furthermore, you have been on notice about these tours since April, and this is the first time you have suggested that Defendants need a Court order to conduct this evaluation.

While on the tours, we have endeavored to conduct the tours in a similar manner to those conducted previously in this case by the Special Master team and Plaintiffs' experts. We have done everything possible to address the issues you have raised with respect to the current tours by providing advance notice, inviting Plaintiffs' counsel and the Special Master to attend, and by agreeing that under no circumstances would the experts engage in conversations with patients without the presence of Plaintiffs' counsel. But now, you continue to add requirements and change positions as to what lengths CDCR's consultants must go to in order to conduct their evaluation. It appears your goal here is to obstruct, which is unfortunate.

As things currently stand, we understand the parties have a disagreement as to whether CDCR's consultants may silently observe one-on-one treatment. We have accordingly asked that they pause those observations while we resolve this dispute. As for their observations of group treatment, IDTTs, R&R screening, and huddles, it is our understanding based on our prior emails with you and Ernie, that our consultants were permitted to observe those activities. It is also our understanding that our consultants may conduct interviews with Plaintiffs' counsel present, as agreed upon previously. If anything has changed or if you are now rescinding these prior agreements, please let us know immediately.
Notwithstanding our prior agreements, we agree that these matters should be brought to the Court in an expedited fashion. We propose that the parties seek permission to file a joint statement of the disputes and request a telephonic status conference. Please let us know if you agree.

Lastly, I attach a consent script, which we offer to address your concerns regarding consent so the tours can move forward.

**From:** Michael W. Bien <MBien@rbgg.com>
**Sent:** Monday, July 17, 2023 12:05 PM
**To:** Damon McClain <Damon.McClain@doj.ca.gov>
**Cc:** Samantha Wolff <SWolff@hansonbridgett.com>; Lisa Ells <LElls@rbgg.com>; Jenny Yelin <JYelin@rbgg.com>; Paul B. Mello <Pmello@hansonbridgett.com>; Elise Thorn <Elise.Thorn@doj.ca.gov>; Coleman Team - RBG Only <ColemanTeam-RBGOnly@rbgg.com>; Steve Fama <sfama@prisonlaw.com>; Margot Mendelson <mmendelson@prisonlaw.com>; Donald Specter <dspecter@prisonlaw.com>; Sara Norman <snorman@prisonlaw.com>; Coleman Special Master <colemanspecialmaster@pldolaw.com>; Coleman Special Master Team <ColemanSpecialMasterTeam@rbgg.com>; Melissa Bentz <Melissa.Bentz@cdcr.ca.gov>; Nick Weber <Nicholas.Weber@cdcr.ca.gov>; Thind, Sundeep@CDCR <Sundeep.Thind@cdcr.ca.gov>; Hockerson, Dillon@CDCR <Dillon.Hockerson@cdcr.ca.gov>; Penny Godbold <PGodbold@rbgg.com>; Hannah Chartoff <HChartoff@rbgg.com>; Marissa Hatton <mhatton@prisonlaw.com>
**Subject:** RE: Coleman - Follow up re patient interviews: Falcon Tours

**EXTERNAL EMAIL:** This message was sent from outside DOJ. Please do not click links or open attachments that appear suspicious.

Damon

I just learned from my associates attending the Falcon tours at SVSP and SQ today that Falcon is proceeding today with observations of confidential one on one mental health treatment at both prisons. Falcon and defense counsel are proceeding despite plaintiffs' counsel's instruction not to communicate with our clients or observe confidential one on one mental health treatment. This is further proof that we have no agreements in place about these tours and that we should bring our dispute to Court as soon as possible. I had understood that defendants and Falcon would respect our demand not to observe one on one mental health treatment until our disputes were resolved.

You have previously informed plaintiffs and the Special Master that Falcon are expert consultants retained by Hanson Bridgett and/or the Attorney General's Office for purposes of the Coleman litigation. Touring the prisons, where the Coleman class lives, works, and receives mental health treatment, is part of discovery in the Coleman litigation. Reviewing my clients' medical records, interviewing my clients, observing their otherwise confidential mental health treatment sessions, and speaking with their clinicians about them, will be the foundation for Falcon or some other expert to express their opinion about issues in the Coleman litigation and/or support a motion for termination.

The rules of discovery, the Rules of Professional Conduct, and the rules governing research on incarcerated persons do apply to the State of California and its lawyers. The Court has the power to govern the timing, extent and type of discovery in the litigation and to protect the privacy and dignity and access to mental health treatment of members of the plaintiff class. Defendants chose to schedule the tours without seeking permission from the Court.

We have been negotiating important issues about these tours in a piecemeal fashion; there is no agreement about anything at this moment given the material disputes that remain, as well as the evolving nature of the tours and other facts on the ground. For example, we are in dispute about the fundamental issues of the timing, number and scope of the tours, access to one on one treatment, patient interviews, consent and more. We have also asked, and you have refused, to pause the tours entirely in August and September due to the important contempt proceedings.

There are major fundamental disagreements about the Falcon tours that must be resolved as soon as possible.  Given that defendants and Falcon are now violating even the agreements we reached, we request that the tours be stopped now.   We intend to bring these issues to the Court as soon as possible.

You failed to respond to our request to have the motion heard on shortened time.   Should we assume that you have refused?

Michael

---

**From:** Damon McClain <Damon.McClain@doj.ca.gov>
**Sent:** Sunday, July 16, 2023 10:00 PM
**To:** Michael W. Bien <MBien@rbgg.com>
**Cc:** Samantha Wolff <SWolff@hansonbridgett.com>; Lisa Ells <LElls@rbgg.com>; Jenny Yelin <JYelin@rbgg.com>; Paul B. Mello <Pmello@hansonbridgett.com>; Elise Thorn <Elise.Thorn@doj.ca.gov>; Coleman Team - RBG Only <ColemanTeam-RBGOnly@rbgg.com>; Steve Fama <sfama@prisonlaw.com>; Margot Mendelson <mmendelson@prisonlaw.com>; Donald Specter <dspecter@prisonlaw.com>; Sara Norman <snorman@prisonlaw.com>; Coleman Special Master <colemanspecialmaster@pldolaw.com>; Coleman Special Master Team <ColemanSpecialMasterTeam@rbgg.com>; Melissa Bentz <Melissa.Bentz@cdcr.ca.gov>; Nick Weber <Nicholas.Weber@cdcr.ca.gov>; Thind, Sundeep@CDCR <Sundeep.Thind@cdcr.ca.gov>; Hockerson, Dillon@CDCR <Dillon.Hockerson@cdcr.ca.gov>; Penny Godbold <PGodbold@rbgg.com>; Hannah Chartoff <HChartoff@rbgg.com>; Marissa Hatton <mhatton@prisonlaw.com>
**Subject:** RE: Coleman - Follow up re patient interviews: Falcon Tours

[EXTERNAL MESSAGE NOTICE]

Mike,

We are writing to correct a number of misstatements in your email below and to try to reach agreement where we can.  As an initial matter though, we are concerned that Plaintiffs continue to obstruct Defendants' evaluation of the MHSDS, including by attempting to block treatment observation, misleading patients as to the purpose of these tours, and imposing unrealistic, unnecessary, and inappropriate restrictions on these tours.  Tours and observations happen in this case all the time – and that's likely why staff and patients mistakenly think these are "Coleman tours."  Plaintiffs know the purpose of these tours.  In our April letter, we explained that "Defendants engaged VRJS/Falcon to conduct a broader, systemwide study of the Mental Health Delivery System" in light of VRJS/Falcon's recommendation that "a broader, more comprehensive study is warranted and recommended for evaluating the quality and adequacy of CDCR's mental health care and programming being provided within its facilities."  Despite this, Plaintiffs continue to feign ignorance of the purpose, even going so far as to suggest – in front of patients and clinicians – that the purpose is to reduce staffing.  It is not.  You know that it is untrue.  And these comments are inappropriate.

Regarding your first concern that the prison tours have wasted Plaintiffs' counsel's time, certain disruptions are inevitable as you know from other tours in this case.  But we agree to work with VRJS/Falcon to try and streamline the tours as much as possible.  It's just been one week since the tours started and they are still getting their bearings.  We appreciate and expect your patience in this

regard. VRJS/Falcon is also trying to be flexible with schedules depending on the institution's schedule and need, similar to how the Special Master's tours are conducted.

Regarding your numbered points below, we had thought the parties reached agreement on #2 (observations of group treatment). Are Plaintiffs reneging that compromise?

Regarding #3, as we have said before, we will provide you with as much information and as much advance notice as possible. We do not believe the tours should pause for the contempt proceedings, as I indicated in my prior email to you.

Regarding #4, it is not unusual for experts to split up during tours – indeed, the Special Master's teams routinely do this for the sake of efficiency. We also provided advance notice of this fact. And Melissa advised Kerry Walsh on July 6th (in an email that copied Plaintiffs' counsel) that we anticipate a similar volume of touring through the end of this year and Spring of 2024.

Regarding #5, Defendants will work with our consultants to determine whether it is feasible to provide advance notice as to the days patient interviews will occur, and can also look into the feasibility of limiting simultaneous observations of 1:1 treatment (while another consultant conducts a patient interview elsewhere in the prison) *if* we can reach an agreement that the interviews may go forward. Please advise.

Regarding #6, VRJS/Falcon has access to patients' medical records. They are Defendants' consultants, are engaged in an evaluation of the system – including the quality of care being delivered, and have executed a BAA permitting them to access these records.

With respect to your point about confusion at the prisons regarding the tours, we agree to work with you and do what we can to minimize confusion. We will ask to change gate passes and signage so that they indicate "Falcon Tours" instead of "Coleman." We are unclear what "inconsistent information" has been provided to the prisons and patients – if you could be more specific, we can better address that concern.

Your statements that you have "witnessed the disruption of mental health treatment" and "derailment of group programming" are pure speculation. There were some patients who said there were things they did not want to talk about, but they did not indicate it was due to the presence of observers. It could have been for any number of reasons and is not for any of us to speculate. Also, your statements relaying the rec therapist's comments are not entirely accurate either. During art group, the rec therapist did say the patients were unusually quiet, but she also said the group was unusually small and thought it *may* have had to do with the observers, but also stated that she was trying something new in her art group that she had not done before. She also mentioned that the patients recently received tablets and that Monday was the first day they were not allowed to bring their tablets to the treatment building, and that may have had something to do with the absences.

We are unclear of your concern with VRJS/Falcon touring PIPs, MHCBs, and EOPs (it appears to be an incomplete sentence?), but it bears noting that tours of these areas are commonplace in this case.

With respect to your request that the parties agree to a written statement to be provided and explained to the patients before they are escorted or walk into a room with observers present, Defendants suggest instead that an agreed-upon written statement be read by the clinician to the patient once the patient is in the room, and that VRJS/Falcon not enter the room until consent has been obtained. We agree that the treating clinician could separately object to the observation if, for instance, they have specific concerns with respect to the patient's current condition. We are puzzled, however, by your statement that it is inappropriate to request consent to observe treatment after a patient has walked into a room

with the observers present, since this is how Special Master tours and observations have always been conducted.

We also want to correct your statement that Defendants intend "to continue to have your retained consultants communicate with patients, our clients, over our objections and outside of our presence." This is absolutely false – we have never stated an intent in that regard. To be clear, CDCR counsel and VRJS/Falcon are not communicating with patients outside of your presence, nor have we said we will do so, nor will we ever do so. This statement is also contrary to your prior email, where you state that you "expect that counsel has instructed their experts that they are not to engage in conversation with patients outside the presence of plaintiffs' counsel. We continue to object to any such communication but are permitting defendants' experts to observe group therapy and IDTTs, even if we are not present." It also bears reiterating that Defendants' counsel will not observe 1:1 treatment.

Your citations to the Rules of Professional Conduct and the Penal Code are inapplicable and unavailing. We are not communicating with your clients outside of your presence, nor are our consultants. Nor is this discovery, or biomedical or behavioral research.

In terms of the proposed statement to be read to each patient before Falcon observations or interviews, we believe the statement should be read to the patient by the treating clinician. We intend to provide the following statement beginning this week to clinicians to read prior to obtaining patient consent:

> *CDCR has hired a team of expert consultants from a group private company called VRJS/Falcon/Voorhis to study the mental health system at this and other prisons. The purpose of the study is to evaluate the quality and adequacy of CDCR's mental health care and programming being provided within its facilities. to find out whether mental health staffing can be reduced at this prison. The study may be used in court in an attempt to reduce the amount of mental health care CDCR is required to provide to you.*
>
> *The consultants have asked to [interview you about your mental health care] or [observe your mental health treatment session.] If you prefer not to be interviewed or haveing people observe and take notes during your mental health treatment session, please say so now or at any time during the interview or observation. If you decide to allow the consultants to interview you or observe your treatment, you are giving permission to the team of expert consultants CDCR to use whatever information they learn from you or from listening and watching your mental health treatment when, and if, they prepare a report following their evaluation of the system and, if they provide any testimony to any Court regarding the mental health system in their testimony or report. CDCR and the consultants have agreed that your name and CDCR number would not be disclosed publicly; nor will information you give be provided to CDCR clinicians or custody staff at the prison. You are free to allow this or not. You will not be rewarded in any way for agreeing to be interviewed or allowing your treatment to be observed. Nor will you be punished or harmed in any way if you decide to keep your mental health treatment private.*
>
> *This is not a tour or study by the Coleman Special Master or Plaintiffs' counsel. If you see people from the Special Master Team or Plaintiffs' counsel, they are here to observe the work of the consultants only.*

While we are amenable to reading the above statement to obtain a patient's verbal consent, we will not agree to develop a form for written consent. Written consent has never been a requirement in this case, nor are we aware of your office requiring written consent in any other cases in which you act as class counsel. In fact, neither verbal nor written consent is required of patients during the Special Master Team's tours and observations. Nor did Plaintiffs' counsel require written consent during Dr.

Penn's observation of 1:1 telepsychiatry contacts. This requirement has no basis in this case and would constitute an impermissible obstruction to the consultants' fair evaluation of the MHSDS.

-Damon

---

**From:** Michael W. Bien <MBien@rbgg.com>
**Sent:** Saturday, July 15, 2023 1:35 PM
**To:** Damon McClain <Damon.McClain@doj.ca.gov>
**Cc:** Samantha Wolff <SWolff@hansonbridgett.com>; Lisa Ells <LElls@rbgg.com>; Jenny Yelin <JYelin@rbgg.com>; Paul B. Mello <Pmello@hansonbridgett.com>; Elise Thorn <Elise.Thorn@doj.ca.gov>; Coleman Team - RBG Only <ColemanTeam-RBGOnly@rbgg.com>; Steve Fama <sfama@prisonlaw.com>; Margot Mendelson <mmendelson@prisonlaw.com>; Donald Specter <dspecter@prisonlaw.com>; Sara Norman <snorman@prisonlaw.com>; Coleman Special Master <colemanspecialmaster@pldolaw.com>; Coleman Special Master Team <ColemanSpecialMasterTeam@rbgg.com>; Melissa Bentz <Melissa.Bentz@cdcr.ca.gov>; Nick Weber <Nicholas.Weber@cdcr.ca.gov>; Thind, Sundeep@CDCR <Sundeep.Thind@cdcr.ca.gov>; Hockerson, Dillon@CDCR <Dillon.Hockerson@cdcr.ca.gov>; Penny Godbold <PGodbold@rbgg.com>; Hannah Chartoff <HChartoff@rbgg.com>; Marissa Hatton <mhatton@prisonlaw.com>
**Subject:** RE: Coleman - Follow up re patient interviews: Falcon Tours

**EXTERNAL EMAIL:** This message was sent from outside DOJ. Please do not click links or open attachments that appear suspicious.

Damon

Given the experience of the first week of tours at two prisons, there are a series of major disputes that should be resolved.

The tours have been disorganized and unplanned, costing plaintiffs' counsel to waste time that would be otherwise available for other work or personal time. During the tour at CHCF, defendants first informed plaintiffs' counsel (and the Special Master team) that Falcon would not be touring on Sunday late Friday afternoon. No schedule has been provided to plaintiffs' counsel other than the start time for the next day.

Defendants have repeatedly added to their demands for access to otherwise confidential mental health patient encounters. Unless we can reach agreement on these issues, we should bring them to the Court's attention as soon as possible—we request your agreement that any motion be heard on shortened time:

1. Whether Falcon experts can observe one on one treatment sessions at all, and if so, what type and form of consent must be obtained, and can these observations take place outside the presence of plaintiffs' counsel;
2. Whether Falcon experts can observe IDTTs, group therapy and screening, and if so, what type and form of consent must be obtained, and can these observations take place outside the presence of plaintiffs' counsel;
3. The schedule for the tours: when they will occur, number of days each, what days will involve patient interviews and/or observations, whether they should be paused to allow the parties to prepare for the contempt proceedings.
4. Defendants are now disclosing that they intend to tour multiple prisons, simultaneously, each week through the Spring of 2024. Defendants notice says tours can be 7 days a week and cover all three shifts. In addition, defendants three experts on each tour can go to three different

locations simultaneously.  This is burdensome and oppressive to the plaintiff class, to plaintiffs' counsel and to the delivery of mental health treatment to the plaintiff class.

5. Falcon patient interviews:  we have negotiated a plan for these interviews that will involve the full attention of plaintiffs' counsel on the tour.   We need advance notice of which day these interviews will take place and request a limit on other Falcon patient observations at the same time.

6. Whether and under what circumstances Falcon experts can read or copy a patient's medical records.  (To my knowledge, defendants have not requested access to individual medical records in connection with the Falcon study.)

We are continuing to observe confusion at the prisons concerning whether the Falcon tours are actually Coleman Special Master tours.  For example, gate passes and signs say "Coleman."  Inconsistent information is being provided by Falcon experts and CDCR counsel to custody staff, clinical staff and patients at the prisons, and many of them have expressed confusion.  We have also witnessed the disruption of mental health treatment, such as patients refusing to discuss sensitive issues in the presence of the observers, as well as the derailment of group programming.   For example, a clinician running an EOP group at CHCF that I attended on Tuesday reported that the usually talkative group had become very shy and withdrawn due to the presence of observers.

Falcon has been touring PIPs, MHCBs and EOPs—programs for patients that CDCR clinicians have determined have the highest level of dysfunction and need for mental health treatment and care.   Patient's "consent" to a violation of their privacy and disruption to their mental health encounters

We request that the parties agree to a written statement that will be provided to and explained to patients *before* they are escorted or walk in to a room with observers present.  The coercion to consent when an incarcerated person walks in to a room where the observers are already present and seated is inappropriate.   The treating clinicians need to be informed that they too can object to the observation by Falcon if they believe their ability to communicate confidentially with the patient about sensitive and personal information is unduly hampered.

You have stated your intention to continue to have your retained consultants communicate with patients, our clients, over our objections and outside of our presence.  Among other Court orders and laws that preclude such communications is Rule 4.2 of the California Rules of Professional Conduct.   The California Penal Code [section 3501, et seq] also governs studies involving incarcerated persons and requires written consent.  The Court has the power to regulate the amount and timing of discovery in this case.  The Court has indicated that discovery may not proceed without permission.  You have not asked for or received approval from the Court:

*We are again instructing you that we do not consent to CDCR counsel and/or their experts communicating with patients outside of the presence of plaintiffs' counsel.  To be clear, we also object, and the Rule precludes, Falcon asking for the patient's "consent" directly or indirectly (through CDCR staff), over plaintiffs' counsel objection and outside of counsel's presence.*

Here is a proposed statement that we request be provided in writing to and explained to each patient and clinician *before* Falcon observations or interviews, where a patient has a diagnosed cognitive disability, comprehension and agreement should also be confirmed by a non-Falcon clinician and/or plaintiffs' counsel prior to the start of observation:

*CDCR has hired consultants from a private company called Falcon/Voorhis to study the mental health system at this and other prisons.  The purpose of the study is to find out whether mental health staffing*

*can be reduced at this prison.  The study may be used in court in an attempt to reduce the amount of mental health care CDCR is required to provide to you.*

*The consultants have asked to [interview you about your mental health care] or [observe your mental health treatment session.]  If you prefer not to be interviewed or having people observe and take notes during your mental health treatment session, please say so now or at any time during the interview or observation.   If you decide to allow the consultants to interview you or observe your treatment, you are giving permission to CDCR to use whatever information they learn from you or from listening and watching your mental health treatment in their testimony or report.  CDCR and the consultants have agreed that your name and CDCR number would not be disclosed publicly; nor will information you give be provided to CDCR clinicians or custody staff at the prison.  You are free to allow this or not.  You will not be rewarded in any way for agreeing to be interviewed or allowing your treatment to be observed.  Nor will you be punished or harmed in any way if you decide to keep your mental health treatment private.*

*This is not a tour or study by the Coleman Special Master or Plaintiffs' counsel.    If you see people from the Special Master Team or Plaintiffs' counsel, they are here to observe the work of the consultants only.*

An appropriate form for written consent should be developed.


Michael Bien

ROSEN BIEN GALVAN & GRUNFELD LLP
101 Mission St.  Sixth Floor
San Francisco, CA 94105
(415) 433-6830 (telephone)
(415) 433-7104 (fax)
(415) 439-9821 (cell)
mbien@rbgg.com
www.rbgg.com


---

**From:** Damon McClain <Damon.McClain@doj.ca.gov>
**Sent:** Friday, July 14, 2023 10:24 AM
**To:** Michael W. Bien <MBien@rbgg.com>
**Cc:** Samantha Wolff <SWolff@hansonbridgett.com>; Lisa Ells <LElls@rbgg.com>; Jenny Yelin <JYelin@rbgg.com>; Paul B. Mello <Pmello@hansonbridgett.com>; Elise Thorn <Elise.Thorn@doj.ca.gov>; Coleman Team - RBG Only <ColemanTeam-RBGOnly@rbgg.com>; Steve Fama <sfama@prisonlaw.com>; Margot Mendelson <mmendelson@prisonlaw.com>; Donald Specter <dspecter@prisonlaw.com>; Sara Norman <snorman@prisonlaw.com>; Coleman Special Master <colemanspecialmaster@pldolaw.com>; Melissa Bentz <Melissa.Bentz@cdcr.ca.gov>; Nick Weber <Nicholas.Weber@cdcr.ca.gov>; Thind, Sundeep@CDCR <Sundeep.Thind@cdcr.ca.gov>; Hockerson, Dillon@CDCR <Dillon.Hockerson@cdcr.ca.gov>; Penny Godbold <PGodbold@rbgg.com>; Hannah Chartoff <HChartoff@rbgg.com>; Marissa Hatton <mhatton@prisonlaw.com>
**Subject:** RE: Coleman - Follow up re patient interviews: Falcon Tours

[EXTERNAL MESSAGE NOTICE]
Mike,

Defendants will not agree to stop the tours at the end of July. Defendants have the right to assess their own mental-health system. It seems clear at this point that Plaintiffs seek to obstruct Defendants from doing this. A tremendous amount of planning and effort has gone into preparations for these tours. It is not practical or feasible for Defendants to ask their consultants, who are working under contract, to simply cease all work and stand by for an indefinite period before resuming their tours. The consultants are busy professionals who have foregone other work projects and set aside this time to complete their work for CDCR. It is a perpetual fact that *Coleman* is a busy case. If Defendants cannot be permitted to evaluate their system when there are multiple filings, hearings, and reporting going on, they will never be allowed to conduct their own assessment of the MHSDS. And Defendants are well aware of the fact that prison tours are inconvenient and burdensome endeavors for the prisons and the attorneys. Defendants have endured countless prison tours for decades in this and other cases. But as I am sure Plaintiffs and the Special Master agree, tours are a necessary component of evaluating the MHSDS despite their burdensome nature.

In 2018, Plaintiffs expressed outrage that Defendants' staffing consultants conducted tours without inviting Plaintiffs to attend, and even asked the Court to order that Defendants' staffing consultants re-conduct their tours so that Plaintiffs could participate. In consideration of the concerns Plaintiffs raised in their 2018 motion (ECF No. 5764), Defendants provided notice of the tours in April, invited Plaintiffs to attend, and spent well over a month providing schedules, providing notice of attendees, and making arrangements for Plaintiffs' counsel and the Special Master's team to attend the tours. But after receiving the notice, you never asked that the tours be postponed due to concerns about the timing or burdensomeness in April or at any other time before Wednesday evening, three days after the tours started. We have reviewed your past motions concerning expert tours and the *Coleman* and *Three-Judge-Court's* orders concerning expert tours, and the current tours comport with those orders and your preferences as stated in Plaintiffs' prior filings.

As for our experts' observation of one-on-one treatment and encounters, they intend to proceed with that next week. A single expert will attend each observed one-on-one treatment session or encounter and will solely observe and not otherwise interact with the patient. Of course, Plaintiffs' counsel are welcome to attend if they choose to. And as we previously stated, defense counsel do not intend to sit in on any one-on-one encounters the experts observe. This should address your concern about the number of observers.

Defendants are not aware of any Court order or law that precludes observations of one-on-one encounters when the patient consents. Indeed, such observations have previously occurred without objection and are consistent with the work of Mr. Hayes, Dr. Metzner, and Dr. Penn on this case. As we explained, observations of one-on-one treatment and encounters are an important component of the experts' evaluation of the MHSDS and the quality of care provided. Defendants have confirmed with their experts that these types of observations are routine in other jurisdictions when evaluating the provision of mental healthcare.

To be clear, the expert's observations of one-on-one encounters would be subject to patient consent and patients could revoke their consent at any time. Furthermore, if any treating clinician were to indicate that observation of one-on-one treatment for a particular patient is contraindicated for any reason, or if a patient's mental health status precluded obtaining actual consent, the experts would forego observing that treatment session. We believe the approach outlined above addresses your concerns.

-Damon

From: Michael W. Bien <MBien@rbgg.com>
Sent: Wednesday, July 12, 2023 5:09 PM

**To:** Damon McClain <Damon.McClain@doj.ca.gov>
**Cc:** Samantha Wolff <SWolff@hansonbridgett.com>; Lisa Ells <LElls@rbgg.com>; Jenny Yelin <JYelin@rbgg.com>; Paul B. Mello <Pmello@hansonbridgett.com>; Elise Thorn <Elise.Thorn@doj.ca.gov>; Coleman Team - RBG Only <ColemanTeam-RBGOnly@rbgg.com>; Steve Fama <sfama@prisonlaw.com>; Margot Mendelson <mmendelson@prisonlaw.com>; Donald Specter <dspecter@prisonlaw.com>; Sara Norman <snorman@prisonlaw.com>; Coleman Special Master <colemanspecialmaster@pldolaw.com>; Melissa Bentz <Melissa.Bentz@cdcr.ca.gov>; Nick Weber <Nicholas.Weber@cdcr.ca.gov>; Thind, Sundeep@CDCR <Sundeep.Thind@cdcr.ca.gov>; Hockerson, Dillon@CDCR <Dillon.Hockerson@cdcr.ca.gov>; Penny Godbold <PGodbold@rbgg.com>; Hannah Chartoff <HChartoff@rbgg.com>; Marissa Hatton <mhatton@prisonlaw.com>
**Subject:** Re: Coleman - Follow up re patient interviews: Falcon Tours

**EXTERNAL EMAIL:** This message was sent from outside DOJ. Please do not click links or open attachments that appear suspicious.

Damon

The burden of these tours on plaintiffs, the institutions, plaintiffs' counsel and the Special Master Team is extraordinary, especially given all of the other obligations in Coleman.  Defendants, for example, have requested that we respond rapidly to important new proposals (telehealth and RHU).  We are all getting ready for two contempt trials set for September, including expert and other discovery.  We also have many other Coleman projects, such as the ongoing data verification process that must be completed in the next few months.  Given that the Falcon experts have been working since 2020 and have yet to provide any opinions to the Court, and that defendants have also not indicated for what purpose in the litigation Falcon is engaged, we request that the tours be paused at the end of July to permit the parties to prepare for the contempt proceedings and work on other more pressing Coleman projects.

We can then evaluate how the Falcon tours can proceed on a schedule and in a manner that is fair to both the experts, the plaintiff class and plaintiffs' counsel.   If we cannot agree, we will seek appropriate relief from the Court.  At that time, we can raise any and all remaining disputes about the Falcon tours, their schedule, access to patients and treatment, etc.

Michael Bien

Sent from my iPad

On Jul 12, 2023, at 7:48 AM, Damon McClain <Damon.McClain@doj.ca.gov> wrote:

[EXTERNAL MESSAGE NOTICE]

Mike,

It appears we may not be able to reach an agreement on one-on-one treatment.  Defendants have a right to evaluate their provision of mental-health

treatment, whether it is to improve the mental-health system, or for litigation, or for both reasons. The observation of one-on-one treatment by a single expert consultant would not be disruptive or harmful and is a necessary component of the consultants' planned evaluation of the system. If Plaintiffs are concerned about large groups observing one-on-one treatment, they could either not participate in these observations or send a single representative to observe, as they did during the expert observations of telepsychiatry one-on-one encounters earlier this year. Defendants intend to seek Court intervention on this matter if no agreement is reached. Please let us know if Plaintiffs' position changes on this issue as we prepare to do that.

It is not surprising that some confusion persists about the tours given that a Special Master team and attorneys from your office are a part of the tour group. Defendants and their consultants will continue to make best efforts to avoid this confusion by clearly communicating the nature of the tours to patients and staff when necessary. If Plaintiffs' counsel are ever concerned that the nature of the tours was not adequately described or that patients or staff are confused, please let us know in real time so that Defendants counsel or the consultants can correct any misunderstandings immediately.

Based on the observations of our attorneys and consultants, we believe that patients have genuinely consented to the consultant observations and have not expressed concerns. In fact, at SAC, an attorney from your office confirmed directly with the patients that they consented to the observations. But if Plaintiffs' counsel observe something to the contrary during the tours, it would be helpful if they would speak up immediately so that the matter can be addressed instead of raising the concern after the observation has concluded. For our part, we will reiterate to the consultants that they should not to proceed with observations unless they are reasonably certain that the patients have consented.

We very much appreciate your flexibility on the consultants splitting up to observe IDTTs and group treatment because doing so is necessary to complete the tours in a reasonably efficient manner. And we fully understand the struggle to staff the tours with attorneys because it is a significant challenge for Defendants too. We agree that if any single patient in a group-treatment session does not consent to the observation, then the consultants will not observe that group. And you are correct that the consultants have been instructed that they are not to engage in conversations with patients outside the presence of Plaintiffs' counsel.

-Damon

**From:** Michael W. Bien <MBien@rbgg.com>
**Sent:** Tuesday, July 11, 2023 6:23 PM
**To:** Damon McClain <Damon.McClain@doj.ca.gov>
**Cc:** Samantha Wolff <SWolff@hansonbridgett.com>; Lisa Ells <LElls@rbgg.com>; Jenny Yelin <JYelin@rbgg.com>; Paul B. Mello <Pmello@hansonbridgett.com>; Elise Thorn <Elise.Thorn@doj.ca.gov>; Coleman Team - RBG Only <ColemanTeam-RBGOnly@rbgg.com>; Steve Fama <sfama@prisonlaw.com>; Margot Mendelson <mmendelson@prisonlaw.com>; Donald Specter <dspecter@prisonlaw.com>; Sara Norman <snorman@prisonlaw.com>; Coleman Special Master <colemanspecialmaster@pldolaw.com>; Melissa Bentz <Melissa.Bentz@cdcr.ca.gov>; Nick Weber <Nicholas.Weber@cdcr.ca.gov>; Thind, Sundeep@CDCR <Sundeep.Thind@cdcr.ca.gov>; Hockerson, Dillon@CDCR

<Dillon.Hockerson@cdcr.ca.gov>
**Subject:** Re: Coleman - Follow up re patient interviews: Falcon Tours

**EXTERNAL EMAIL:** This message was sent from outside DOJ. Please do not click links or open attachments that appear suspicious.

Damon

We remain opposed to observations of one on ones.  Today at CHCF, where defendants' understaffing of MH clinical positions is at crisis levels, an EOP patient reported that he had only seen his primary twice since January 1!  It is unacceptable to interfere with the tiny amount of one on one treatment going on for the benefit of a litigation expert study.

Defendants and their experts at CHCF did a better job of identifying themselves as not being a Coleman Special Master tour but some confusion persists.  Patients are not truly "consenting" to interviews or observations.  The pressure to allow the observers/experts in to an otherwise confidential and private clinical health care encounter is great.  We are already in the room and the patient is asked "are you uncomfortable" or "are you OK with everyone staying to observe".  Several staff introduced the group as "Coleman" to the patients.  A rec therapist running a group we observed today said that the patients were unusually quiet and "shy" today—she thought due to our presence.  It should not be a surprise that having observers present can change the nature of a clinical interaction.

Be that as it may, we are doing are best to facilitate defendants' tours.  We will not, at present, object to defendants' experts splitting up to observe IDTTs and groups simultaneously, resulting in the inability of plaintiffs' counsel to be present at each encounter by defendants' experts with represented parties.   Your suggestion that we simply send along two more attorneys for each tour is simply beyond the ability of plaintiffs' counsel to staff.

We expect that counsel has instructed their experts that they are not to engage in conversation with patients outside the presence of plaintiffs' counsel.  We continue to object to any such communication but are permitting defendants' experts to observe group therapy and IDTTs, even if we are not present.  (Of course, if the patient in the IDTT objects, the experts should leave.  And if one or more of the patients in a group object, the experts should leave.).

We are still waiting to learn more details about the scope and schedule for the Falcon prison tours.   We have been able to work out must of our disputes and I expect that we can continue to work cooperatively so that the tours can go forward in a manner that is fair to the plaintiff class.

Thanks.

Michael


Sent from my iPad

On Jul 11, 2023, at 9:41 AM, Damon McClain
<Damon.McClain@doj.ca.gov> wrote:

<div style="border:1px solid;">[EXTERNAL MESSAGE NOTICE]</div>

Mike,

We understand your position that Defendants' consulting experts
cannot observe one-on-one treatment, even with the patient's
consent.  We are not aware of any Court order or law that would
prevent Defendants' consultants from observing such treatment so long
as the patient consents.  We are also not aware of any clinical basis to
preclude the proposed observations.  In fact, Plaintiffs' expert Pablo
Stewart, Defendants' expert Joseph Penn, and an attorney from your
office recently observed one-on-one patient treatment—with patient
consent—at CMF and SQ to evaluate treatment via telepsychiatry.  And
it is routine practice for supervisors to occasionally observe clinical staff
providing patient treatment for the purpose of evaluating staff
performance.

We understand that one of your concerns is that the presence of
"outsiders" during the treatment will harm patients.  To be clear,
Defendants' consultants only intend to have a single licensed mental-
health professional present during such encounters, and that expert
would be there for the sole purpose of observing the encounter to
evaluate it.

We also understand your concern that patients might not be
comfortable having a treatment session observed.  But this concern is
adequately addressed by providing each patient the option of either
consenting or not consenting to the observation.  No one-on-one
treatment would be observed without the patient's consent.

In light of Plaintiffs' stated position on this issue, and because this is an
important component of the consultants' evaluation of CDCR's mental-
health system, Defendants will evaluate their options if you do not
reconsider your position.

Regarding the planned observations of IDTTs, intake and screening, and
group treatment, the experts intend to obtain patient consent and
Defendants do not object to a Plaintiffs' attorney being present for
those observations.  But because you're only now raising this concern,
Defendants' experts intend to go forward with their planned
observations of these activities for these tours.  Please make all efforts
to have sufficient staff present so that the tours can go forward as
planned.

Regarding your other concerns, Defendants do not intend for anyone to
believe that these tours are being conducted by the Special Master, and
we will continue to make efforts to avoid any confusion about that
during the tours.  For the purpose of interviewing patients, they will be
told that the interviews are being conducted by expert consultants hired

14

by CDCR for the purpose of evaluating the mental-health system. It is only logical that the evaluation may include recommendations for improving the provision of care. So we don't view the experts' representation to that effect as inaccurate.

Defendants have been upfront about the purpose of the tours and the work our consultants need to do to assess the system and patient care. The restrictions Plaintiffs seek to impose on this work are unreasonable and unfairly restrict Defendants' ability to have its own assessment of their system and patient care. Similar observations and assessments have been made during the course of this case without the restrictions you now seek to impose and have not resulted in any harm to the patients.

-Damon

---

**From:** Michael W. Bien <MBien@rbgg.com>
**Sent:** Monday, July 10, 2023 3:46 PM
**To:** Samantha Wolff <SWolff@hansonbridgett.com>; Melissa Bentz <Melissa.Bentz@cdcr.ca.gov>; Elise Thorn <Elise.Thorn@doj.ca.gov>
**Cc:** Samantha Wolff <SWolff@hansonbridgett.com>; Lisa Ells <LElls@rbgg.com>; Jenny Yelin <JYelin@rbgg.com>; Paul B. Mello <Pmello@hansonbridgett.com>; Damon McClain <Damon.McClain@doj.ca.gov>; Elise Thorn <Elise.Thorn@doj.ca.gov>; Coleman Team - RBG Only <ColemanTeam-RBGOnly@rbgg.com>; Steve Fama <sfama@prisonlaw.com>; Margot Mendelson <mmendelson@prisonlaw.com>; Donald Specter <dspecter@prisonlaw.com>; Sara Norman <snorman@prisonlaw.com>; Coleman Special Master <colemanspecialmaster@pldolaw.com>
**Subject:** Re: Coleman - Follow up re patient interviews: Falcon Tours

**EXTERNAL EMAIL:** This message was sent from outside DOJ. Please do not click links or open attachments that appear suspicious.

Melissa and I spoke today during the CHCF tour. Plaintiffs maintain our objection to defendants' experts observing one on one mental health treatment (psychiatry, psychology, social work). Having outsiders present in a one on one mental health encounter, by definition, materially changes the nature of the encounter and the opportunity for sharing confidential, embarrassing or personal information that may be highly relevant to the patient's treatment. CDCR is currently unable to deliver timely one on ones in many programs and some patients are only scheduled to see a clinician one on one every few months. The danger of harm to the class members far outweighs the usefulness of the additional information to be gained by direct observation. For example, Falcon can still observe where one on ones take place, how long they last, whether or not they are confidential, and read the clinical note.

While some of the same issues can arise in intake and screening, we are willing to allow those to go forward with patient consent and plaintiffs'

counsel present.  We also will permit the observation of IDTT's and group treatment with plaintiffs' counsel present and patient consent.

There was a lot of confusion today at CHCF about who the Falcon experts are and what they are doing.  Custodial and clinical staff, especially when also observing members of the Special Master Team on the tours, assume this is a Coleman Special Master Tour.  Spaces were "reserved for Coleman."   Melissa has tried hard to correct CDCR employees and explain that this is not a Coleman Special Master tour, but clearly whatever effort was made in advance of the tours to communicate about them was ineffective.   It is not appropriate for anyone—CDCR staff or patients— to believe that the Falcon tour, litigation experts hired by litigation counsel, are working for the Coleman Special Master.

Nor is it appropriate for Falcon experts to represent that they touring to study the system in order to improve mental health care, when their work is actually intended to support a motion to modify the Program Guide to make it less costly and more "efficient" (reduce clinical staffing) and/or to terminate the Coleman case completely and end judicial supervision of the system.   While defendants are certainly entitled to hire experts to support their litigation goals, they are not entitled to benefit from the good will and access that the Special Master Team—-neutrals working for the Court and not for either party—have gained over decades of work.

Falcon's plan to randomly select patients for interviews will again raise this issue of confusion with the Special Master Team, which from time to time uses the same method.  What will CDCR staff be told about the process and what will the patients be told?

Michael Bien

Sent from my iPad


On Jul 7, 2023, at 3:53 PM, Ernest Galvan <EGalvan@rbgg.com> wrote:


This is to sum up agreements and remaining disputes regarding the patient interviews as of the end of business on Friday, 7/7/23:

Points of Agreement:

1. Plaintiffs' counsel may meet with their clients privately before the interviews.
2. Plaintiffs' counsel will be present at patient interviews.
3. The entirety of the interview will be recorded and those present will identify themselves on the recording.

4. Recordings may be provided to client counsel but will not be provided to CDCR employees at the facilities. The recordings will be maintained by the State's experts.

5. Recordings to be provided to Plaintiffs' counsel within 2 business days of recording.

6. No patient-level information (even anonymized information) will be provided to clinicians or custody staff at the institution. Information provided by patients during the interviews will be anonymized before use in any litigation to protect the identify and confidentiality of the patient and the information. The expert may, however, inform mental health staff at the institution if they have a concern about an individual's immediate safety (e.g., suicide risk).

7. Defendants have provided a sample set of questions the experts will be using for the patient interviews.

    1. Did your treatment plan provide you with a good understanding of the interventions that would be provided?

    2. Did you feel that you contributed to your treatment plan and that your input was valued?

    3. Do you believe your progress is reviewed regularly and that you receive feedback on that progress from the IDTT?

    4. Do you feel you receive enough contact with your PC?

    5. Do you feel you receive enough contact with your Psychiatric Provider?

8. Defendants have provided information on the method being used to select patients to be interviewed. (Details provided below for information—Plaintiffs reserve the issue of whether this many interviews is practicable.)

    1. VRJS/Falcon will request an up-to-date MHSDS roster 1-2 days prior to each facility visit.

    2. To prevent selection bias, a subset of 10 inmate-patients for each LOC subgroup will be created, using a simple random sample selection process Excel.

    3. Note that 10 names will be selected in acknowledgement that participation in the interview is fully voluntary and not all inmates will wish to participate.

9. Defendants agree to request that their experts preserve information in the event they are ultimately designated as testifying experts.

Points of Disagreement.

1. Observation of treatment. Defendants seek a full range of treatment, including intake, screening, MH follow-up contacts (1:1s), IDTTs, and groups. Plaintiffs object to expert groups attending intake, screening, and 1:1 contacts.

Additional Information Re Structure of Tours (Not a point of agreement or disagreement):

1. In terms of the number of interviews, it will vary somewhat across facilities but it is equal to 3 completed interviews per LOC represented in each facility. So for example, if a facility contains CCCMS, EOP, MHCB, and STRH, they will complete 12 interviews. The experts also would like to interview 10 patients (total statewide) for each of the following groups:

1. High frequency transfers in/out of higher LOC since 1/1/2019
2. High MH acuity (w/ PC2602 in place)
3. High frequency of placements in Restricted Housing since 1/1/2019

2. When possible, the experts would like to work with facilities to accomplish at least a portion of these interviews virtually to preserve time and resources.

3. In general, they will first observe and evaluate the systems in place at each facility, reserving the interviews for the latter part of their facility visits. For larger facilities with longer study timeframes that require them to return a second time, patient interviews will be conducted during the second visit (e.g., SAC and CHCF - they're returning in August). But for smaller facilities where they are only visiting for 1 week (1 visit), the interviews will be conducted towards the latter part of the week.

Ernest Galvan
ROSEN BIEN GALVAN & GRUNFELD LLP
101 Mission Street, 6th Floor
San Francisco, CA 94105
(415) 433-6830 (telephone)
(415) 296-2293 (direct)
(415) 694-3606 (mobile)
(415) 433-7104 (fax)
egalvan@rbgg.com

CONFIDENTIALITY NOTICE
The information contained in this e-mail message may be privileged, confidential and protected from disclosure.

If you are not the intended recipient, any dissemination, distribution or copying is strictly prohibited. If you think that you have received this e-mail message in error, please e-mail the sender at rbg@rbgg.com

**From:** Ernest Galvan <EGalvan@rbgg.com>
**Sent:** Friday, July 7, 2023 1:22 PM
**To:** Samantha Wolff <SWolff@hansonbridgett.com>; Lisa Ells <LElls@rbgg.com>; Jenny Yelin <JYelin@rbgg.com>
**Cc:** Paul B. Mello <Pmello@hansonbridgett.com>; v_Damon.McClain@doj.ca.gov <Damon.McClain@doj.ca.gov>; Elise Thorn <Elise.Thorn@doj.ca.gov>
**Subject:** RE: Coleman - Follow up re patient interviews [IMAN-DMS.FID12440]

Sam:

Thanks for the additional information.  Skipping to your two questions at the end:

1. We do not agree to expert interviews without plaintiffs' counsel there.  We intend to be present for the interviews.
2. Yes, we agree to receiving the recordings within 2 business days.

The number of interviews per site, 10, does raise the question of whether that will leave time to observe anything else.  As with the other elements, we should revisit this after the first tours.

On experts being present for 1:1 treatment, that raises serious concerns about interfering with treatment.  The same questions arise with screening and intake, where it is vital that the patient feel safe to disclose information about thoughts of self-harm.  Neither of those contexts should be interfered with this way.  I suggest further discussion of this problem during the Stockton tour on Monday when Mike Bien will be present.

Ernest Galvan
ROSEN BIEN GALVAN & GRUNFELD LLP
101 Mission Street, 6ᵗʰ Floor
San Francisco, CA 94105
(415) 433-6830 (telephone)
(415) 296-2293 (direct)
(415) 694-3606 (mobile)
(415) 433-7104 (fax)
egalvan@rbgg.com

CONFIDENTIALITY NOTICE
The information contained in this e-mail message may
be privileged, confidential and protected from disclosure.
If you are not the intended recipient, any dissemination,
distribution or copying is strictly prohibited. If you think
that you have received this e-mail message in error,
please e-mail the sender at rbg@rbgg.com

---

**From:** Samantha Wolff <SWolff@hansonbridgett.com>
**Sent:** Friday, July 7, 2023 12:36 PM
**To:** Ernest Galvan <EGalvan@rbgg.com>; Lisa Ells
<LElls@rbgg.com>; Jenny Yelin <JYelin@rbgg.com>
**Cc:** Paul B. Mello <Pmello@hansonbridgett.com>;
v_Damon.McClain@doj.ca.gov
<Damon.McClain@doj.ca.gov>; Elise Thorn
<Elise.Thorn@doj.ca.gov>
**Subject:** RE: Coleman - Follow up re patient interviews
[IMAN-DMS.FID12440]

[EXTERNAL MESSAGE NOTICE]

Ernie,

Below are the answers to your outstanding questions,
and a couple questions for you at the bottom.

Sample Questions
1. Did your treatment plan provide you with a
   good understanding of the interventions
   that would be provided?
2. Did you feel that you contributed to your
   treatment plan and that your input was
   valued?
3. Do you believe your progress is reviewed
   regularly and that you receive feedback on
   that progress from the IDTT?
4. Do you feel you receive enough contact
   with your PC?
5. Do you feel you receive enough contact
   with your Psychiatric Provider?

Selection Methodology
1. VRJS/Falcon will request an up-to-date MHSDS
   roster 1-2 days prior to each facility visit.
2. To prevent selection bias, a subset of 10
   inmate-patients for each LOC subgroup will be
   created, using a simple random sample
   selection process Excel.
3. Note that 10 names will be selected in
   acknowledgement that participation in the

20

interview is fully voluntary and not all inmates
will wish to participate.

In terms of the number of interviews, it will vary
somewhat across facilities but it is equal to 3 completed
interviews per LOC represented in each facility.  So for
example, if a facility contains CCCMS, EOP, MHCB, and
STRH, they will complete 12 interviews.  The experts
also would like to interview 10 patients (total
statewide) for each of the following groups:

4.  High frequency transfers in/out of higher LOC
    since 1/1/2019
5.  High MH acuity (w/  PC2602 in place)
6.  High frequency of placements in Restricted
    Housing since 1/1/2019

When possible, the experts would like to work with
facilities to accomplish at least a portion of these
interviews virtually to preserve time and resources.

The experts also intend to observe the full range of MH
services, including MH Screening and Intake, MH follow-
up contacts (1:1s), IDTTs, and groups.

In general, they will first observe and evaluate the
systems in place at each facility, reserving the
interviews for the latter part of their facility visits.  For
larger facilities with longer study timeframes that
require them to return a second time, patient
interviews will be conducted during the second visit
(e.g., SAC and CHCF - they're returning in August).  But
for smaller facilities where they are only visiting for 1
week (1 visit), the interviews will be conducted towards
the latter part of the week.

Lastly, have you decided whether you are okay with our
experts interviewing the patients one-on-one (without
counsel and OSM present in the room, and after you've
had a chance to meet with your client privately)?  And
are you okay with us sending the recordings 2 business
days after the completion of each facility tour?

Thanks,
Sam

---

**From:** Ernest Galvan <EGalvan@rbgg.com>
**Sent:** Friday, July 7, 2023 8:09 AM
**To:** Samantha Wolff <SWolff@hansonbridgett.com>;
Lisa Ells <LElls@rbgg.com>; Jenny Yelin
<JYelin@rbgg.com>
**Cc:** Paul B. Mello <Pmello@hansonbridgett.com>;
v_Damon.McClain@doj.ca.gov

<Damon.McClain@doj.ca.gov>;
v_Elise.Thorn@doj.ca.gov <Elise.Thorn@doj.ca.gov>
**Subject:** [EXTERNAL] RE: Coleman - Follow up re patient interviews [IMAN-DMS.FID12440]

**EXTERNAL:** Use caution when opening attachments, links or responding to this e-mail.

Dear Sam—

Thanks for the summary.  All of this is contingent on how it goes during the first tours, as there are so many moving parts we do not know about yet.  The size of the schedule and the number of experts splitting up and going different directions raise significant issues regarding the burden of these tours.

When you look at the sample methodology, can you also find out how many client interviews they intend to do per facility?

Ernest Galvan
ROSEN BIEN GALVAN & GRUNFELD LLP
101 Mission Street, 6th Floor
San Francisco, CA 94105
(415) 433-6830 (telephone)
(415) 296-2293 (direct)
(415) 694-3606 (mobile)
(415) 433-7104 (fax)
egalvan@rbgg.com

CONFIDENTIALITY NOTICE
The information contained in this e-mail message may be privileged, confidential and protected from disclosure. If you are not the intended recipient, any dissemination, distribution or copying is strictly prohibited. If you think that you have received this e-mail message in error, please e-mail the sender at rbg@rbgg.com

**From:** Samantha Wolff <SWolff@hansonbridgett.com>
**Sent:** Thursday, July 6, 2023 10:28 PM
**To:** Ernest Galvan <EGalvan@rbgg.com>; Lisa Ells <LElls@rbgg.com>; Jenny Yelin <JYelin@rbgg.com>
**Cc:** Paul B. Mello <Pmello@hansonbridgett.com>; v_Damon.McClain@doj.ca.gov
<Damon.McClain@doj.ca.gov>; Elise Thorn <Elise.Thorn@doj.ca.gov>
**Subject:** Coleman - Follow up re patient interviews

[EXTERNAL MESSAGE NOTICE]

Dear Ernie, Lisa, and Jenny,

Thanks again for our call this afternoon. I wanted to confirm where I believe we have agreement and note the few remaining issues that have not yet been resolved:

Areas of Agreement
1. Plaintiffs' counsel may meet with their clients privately before the interviews.
2. The entirety of the interview will be recorded and those present will identify themselves on the recording.
3. Recordings may be provided to client counsel but will not be provided to CDCR employees at the facilities. The recordings will be maintained by the State's experts, not Hanson Bridgett or the AG's office.
4. No patient-level information (even anonymized information) will be provided to clinicians or custody staff at the institution. Information provided by patients during the interviews will be anonymized before use in any litigation to protect the identify and confidentiality of the patient and the information. The expert may, however, inform mental health staff at the institution if they have a concern about an individual's immediate safety (e.g., suicide risk).
5. Defendants will provide a sample set of questions the experts will be using for the patient interviews.
6. Defendants will provide information on the method being used to select patients to be interviewed.
7. Defendants agree to request that their experts preserve information in the event they are ultimately designated as testifying experts.

Remaining Issues
1. Whether Plaintiffs will agree that the expert may conduct a one-on-one interview of the patient without counsel and the Special Master present (following a confidential meeting between Plaintiffs' counsel and the patient/client to ensure informed consent).
2. On the issue of recordings, thank you for your email. Can we agree to provide you with the recordings within 2 business days following completion of the facility tour? That way, all recordings for a single institution are kept together and provided as the tour concludes.

Additionally, as we stated during the call, we cannot agree to your points 7 (our experts recording interviews with our clients) and 8 (immediate production of all discovery).  You were going to get back to us on this as well.

We look forward to hearing from you on these issues by 2pm tomorrow (earlier, if possible, would be great).  We will also provide the following information to you tomorrow:

1.  Confirmation whether the experts intend to observe treatment and, if so, which types of treatment
2.  Provide sample set of questions (if we reach agreement on the remaining issues)
3.  Provide selection methodology (if we reach agreement on the remaining issues)

Thanks,
Sam

---

**Samantha Wolff**
**Partner**
Hanson Bridgett LLP
(415) 995-5020 Direct
(415) 995-3547 Fax
swolff@hansonbridgett.com





---

This communication, including any attachments, is confidential and may be protected by privilege. If you are not the use, dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this com immediately notify the sender by telephone or email, and permanently delete all copies, electronic or other, you ma

The foregoing applies even if this notice is embedded in a message that is forwarded or attached.

CONFIDENTIALITY NOTICE: This communication with its contents may contain confidential and/or legally privileged information. It is solely for the use of the intended recipient(s). Unauthorized interception, review, use or disclosure is prohibited and may violate applicable laws including the Electronic Communications Privacy Act. If you are not the intended recipient, please contact the sender and destroy all copies of the communication.

CONFIDENTIALITY NOTICE: This communication with its contents may contain confidential and/or legally privileged information. It is solely for the use

of the intended recipient(s). Unauthorized interception, review, use or disclosure is prohibited and may violate applicable laws including the Electronic Communications Privacy Act. If you are not the intended recipient, please contact the sender and destroy all copies of the communication.

CONFIDENTIALITY NOTICE: This communication with its contents may contain confidential and/or legally privileged information. It is solely for the use of the intended recipient(s). Unauthorized interception, review, use or disclosure is prohibited and may violate applicable laws including the Electronic Communications Privacy Act. If you are not the intended recipient, please contact the sender and destroy all copies of the communication.

CONFIDENTIALITY NOTICE: This communication with its contents may contain confidential and/or legally privileged information. It is solely for the use of the intended recipient(s). Unauthorized interception, review, use or disclosure is prohibited and may violate applicable laws including the Electronic Communications Privacy Act. If you are not the intended recipient, please contact the sender and destroy all copies of the communication.

CONFIDENTIALITY NOTICE: This communication with its contents may contain confidential and/or legally privileged information. It is solely for the use of the intended recipient(s). Unauthorized interception, review, use or disclosure is prohibited and may violate applicable laws including the Electronic Communications Privacy Act. If you are not the intended recipient, please contact the sender and destroy all copies of the communication.