**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF CALIFORNIA**

RALPH COLEMAN, et al.,
    **Plaintiffs**

    **vs.**                         No. 2:90-CV-0520 KJM DB

GAVIN NEWSOM, et al.,
    **Defendants**

_____

**SPECIAL MASTER'S RESPONSE TO THE COURT'S MAY 24, 2023 ORDER,**
**ECF NO. 7847**

On March 9, 2023, the Special Master filed a Report and Recommendations Regarding Third Level Data Remediation Disputes (hereinafter "March 9, 2023 Report") wherein he provided recommendations to resolve four data remediation-related disputes. *See generally* ECF No. 7755. Included among the four disputes was the parties' dispute regarding the provisionally approved indicator entitled Transfer to STRH [Short-Term Restricted Housing]/LTRH [Long-Term Restricted Housing] within Timeframes. Specifically, the parties disagreed about whether the documentation for this indicator should include a medical hold exception. *Id.* at 16 ("This dispute revolves around how to assess compliance with STRH/LTRH transfer timelines where a patient remains in a non-mental health segregation unit for more than 30 days because of a temporary medical hold placed by health care personnel.").

In his March 9, 2023 Report, the Special Master recommended that "defendants modify the Transfer to STRH/LTRH within Timeframes indicator design to score transfers beyond 30 days as noncompliant, unless or until the parties negotiate and the court adopts an exception to this Court-approved policy." *Id.* at 20.

In an order filed on May 24, 2023, the Court referred the dispute regarding the STRH/LTRH transfer indicator back to the Special Master for further consideration of issues raised by defendants for the first time in their objections to the March 9, 2023 Report.[1]

This Report is responsive to the Court's May 24, 2023 Order and provides the Special Master's recommendation for moving this indicator forward though the remediation process.

## I.    **Background**

Included in the Compendium of Custody Related Remedial Measures (hereinafter "Compendium") is a January 15, 2015 Memorandum, entitled "Creation of Correctional Clinical Case Management System Short Term and Long Term Restricted Housing."  2021 Program Guide, ECF No. 7333-1 at 450 [hereinafter January 15, 2015 Memorandum].  As noted in the Special Master's March 9, 2023 Report, this Memorandum "developed out of the Court's April 10, 2014 Order granting in part plaintiffs' May 6, 2013 motion for enforcement of court orders and affirmative relief regarding improper housing and treatment of seriously mentally ill" patients placed in segregated housing.  ECF No. 7755 at 18-19.  In its April 10, 2014 Order, the Court noted the following:

---

[1] In its May 24, 2023 Order, the Court noted the following:

> Defendants did not raise with the Special Master the contentions they now make concerning the cited Program Guide provision. That said, it appears this Program Guide provision may have relevance to resolution of this dispute. The court notes it previously has approved exceptions to inpatient and MHCB transfer timeline requirements, *see* December 15, 2017 Order, ECF No. 5750, and those exceptions may provide a prototype for use in the context of transfers to LTRH and STRH units. For this reason, this issue will be referred back to the Special Master for further consideration. The parties are reminded of their obligation to timely present the Special Master with all relevant information and their respective positions during the dispute resolution process. The parties are also encouraged to work together under the supervision of the Special Master to resolve this issue.

ECF No. 7847 at 10.

Together with the court's original findings and its findings on defendants' termination motion, the foregoing findings and the overwhelming weight of evidence in the record is that placement of seriously mentally ill inmates in California's segregated housing units can and does cause serious psychological harm, including decompensation, exacerbation of mental illness, inducement of psychosis, and increased risk of suicide.

ECF No. 5131 at 45-46.

The January 15, 2015 Memorandum created new segregated housing units for 3CMS patients (the STRH and LTRH programs). The Special Master previously described the development of the STRH and LTRH programs as follows:

In response to the Court's order to "develop a protocol for placement decisions, including, as appropriate, a plan for alternative housing, that will preclude placement of any *Coleman* class member in existing administrative segregation units when clinical information demonstrates substantial risk of exacerbation of mental illness, decompensation, or suicide from such placement," ECF No. 5131 at 59, defendants proposed development of the STRH and LTRH programs. *See* ECF No. 5211 at 2-4. These programs were designed for 3CMS patients "who are removed from the general population for disciplinary reasons." *Id.* at 2. "These units change conditions of confinement in segregated units for this population by allowing inmates increased programming, increased mental health contacts, and increased structured mental health treatment, lessening the risk of decompensation while also allowing CDCR to maintain the safety and security of the institution." *Id.* at 3.

ECF No. 7755 at 19.

The January 15, 2015 Memorandum also established the remedial requirement that defendants transfer 3CMS patients retained in segregated housing to STRH or LTRH units within 30 days:

TIME FRAMES FOR TRANSFER TO CCCMS-STRH

Upon implementation and full activation of the CCCMS-STRH Units in the designated institution as indicated on the IAS [Institution Activation Schedule], institutions without a designated CCCMS-STRH or CCCMS-STRH RC [Reception Center] Program *shall transfer all CCCMS inmates retained by the ICCs to a designated CCCMS-STRH within 30 days of ASU placement*. In the event an inmate is included in the CCCMS after ASU placement, the time frame will begin the date of the Mental Health Chrono, CDCR Form 128 MH-3, indicating the inmate has been placed at the CCCMS level of care.

[…]

TIME FRAMES FOR TRANSFER TO CCCMS-LTRH

Upon implementation and full activation of the CCCMS-LTRH Units in the designated institution as indicated on the IAS, institutions without a designated CCCMS-LTRH program *shall transfer all CCCMS inmates retained by the ICC to a designated CCCMS-LTRH within 30 days*. In the event an inmate is included in the CCCMS after SHU placement, the time frame will begin on the date of Mental Health Chrono, CDCR Form 128 MH-3, indicating the inmate has been placed at the CCCMS level of care.

ECF No. 7333-1. at 451, 453 (emphasis added).

For the reasons explained in his March 9, 2023 Report, *see* ECF No. 7755 at 18-20, the Special Master previously recommended the following regarding this dispute: "[T]he Special Master recommends defendants modify the Transfer to STRH/LTRH within Timeframes indicator design to score transfers beyond 30 days as noncompliant, unless or until the parties negotiate and the court adopts an exception to this Court-approved policy." *Id.* at 20.

In their objections to the Special Master's March 9, 2023 Report, defendants argued for the first time that the indicator in question should include a medical hold exception because the Program Guide contained an "explicit medical-hold exception to the [STRH and LTRH transfer] timeframes." ECF No. 7805 at 5. In support of their argument, defendants relied on a March 3, 2016 Memorandum entitled "Transfer of Correctional Clinical Case Management System Inmate-Patients to Male Short Term Restricted Housing Units," which is also included in the Compendium. ECF No. 7333-1 at 456-58 [hereinafter "March 3, 2016 Memorandum"]. Specifically, defendants argued that the following language from the March 3, 2016 Memorandum "expressly contemplates approval of not transferring a patient within 30 days" due to a medical hold:

<u>IPs NOT TRANSFERRED TO AN STRH WITHIN ALLOTTED TIME FRAME</u>

> In order to avoid adversely impacting the [inmate-patient's] other custodial or medical needs, there may be situations where an [inmate-patient] will not be transferred to an STRH within 30 days.  Some examples of situations include, but are not limited to, an imminent Board of Parole Hearing date, *medical hold*, scheduled transfer to a mainline placement, scheduled court hearing, pending release to parole within 60 days of CCCMS ASU placement, and scheduled mental health evaluations for Mentally Disordered Offender or Sexually Violent Predator screenings.

ECF No. 7805 at 5-6 (quoting 2021 Program Guide Update, ECF No. 7331-1 at 457) (emphasis

in original).

Plaintiffs filed their response to defendants' objections on May 1, 2023,[2] wherein they

discussed their disagreement with the defendants' interpretation of the March 3, 2016

Memorandum:

> Even if Defendants had previously raised this argument during the dispute resolution process, it is unpersuasive, and certainly does not establish clear error. *Nothing in the STRH policy cited by Defendants says the transfer timeframe clock must "freeze" for medical holds.*  The STRH policy also triggers a very specific process involving the Warden when medical holds occur, but none of those requirements are measured in any way in this or, to Plaintiffs knowledge, any other indicator.  Also, the STRH policy does not define medical holds, but the definition of "Temporary Medical Hold" used here by Defendants is very broad, can last for up to six months, and covers non-urgent medical care with no attempt to balance a patient's mental health needs.

---

[2] On April 13, 2023, plaintiffs filed a request for leave to file a response to defendants' objections to the Special Master's March 9, 2023 Report.  *See* ECF No. 7809.  The Court granted plaintiffs' request on April 17, 2023, noting that "Plaintiffs state[d] among other matters that in their objections Defendants propose[d] compromises not previously raised in the data dispute resolution process."  April 17, 2023 Minute Order, ECF No. 7810.  Further, the Court directed the following: "If these compromises suggest a resolution of outstanding disputes acceptable to Plaintiffs and that meets with the approval of the Special Master, Plaintiffs shall so represent in their response filed in accordance with this Order."  *Id.*  The Court ordered plaintiffs to file their response to defendants' objections, including the information requested in the Court's April 17, 2023 Minute Order, by April 24, 2023.  *Id.*  On April 21, 2023, the parties filed a stipulation and proposed order extending the deadline for plaintiffs' to file their response to defendants' objections to May 1, 2023, *see* ECF No. 7820 at 2, which the Court granted on April 24, 2023.  April 24, 2023 Minute Order, ECF No. 7821.

ECF No. 7825 at 9 (emphasis added).  In their response to defendants' objections, the plaintiffs

also noted the discrepant treatment of STRH and LTRH transfers between the two Memoranda.

*See id.* at 9 ("In contrast to the STRH policy, nothing in the LTRH policy states that there may

be exceptions to the 30-day transfer timeline.").

As discussed, after two additional meet and confer sessions following the Court's May

24, 2023 Order, the parties reached an impasse regarding this dispute.  The Special Master has

again considered the parties' positions and carefully reviewed both the January 15, 2015 and

March 3, 2016 Memoranda.  The Special Master's analysis of this dispute and recommendations

are included below.

## II.    Analysis

As the Court noted in its May 24, 2023 Order, defendants first argued that the March 3,

2016 Memorandum created an explicit medical hold exception to the 30-day transfer requirement

in their objections to the Special Master's March 9, 2023 Report.  *See* May 24, 2023 Order, ECF

No. 7847 at 10; *see also* ECF No. 7805 at 5 ("…[D]efendants object to the [March 9, 2023]

Report's recommendation that this indicator should disregard the Program Guide's explicit

medical-hold exception to the timeframes.").  Prior to the Special Master's filing of his March 9,

2023 Report, defendants had not relied on the March 3, 2016 Memorandum and instead argued

that plaintiffs' position would require defendants to work with CCHCS to re-define a

"standalone and long-standing agreement" regarding temporary medical holds.  ECF No. 7755-1

at 18; *see also* March 9, 2023 Report, ECF No. 7755 at 17-18 (discussing same).

Defendants' reliance on the March 3, 2016 Memorandum and the parties' inability to

resolve their dispute regarding this indicator requires the Special Master to consider whether the

March 3, 2016 Memorandum creates an "explicit" exception to the 30-day STRH/LTRH transfer

timeline, as defendants argue.  *See* ECF No. 7805 at 5.

> **A.      The January 15, 2015 STRH/LTRH Memorandum Does Not Refer To Medical Holds Or Their Impact on the STRH/LTRH Transfer Timeline**

It is important to note that there is no dispute among the data remediation stakeholders

that the January 15, 2015 Memorandum is silent regarding medical holds and does not provide

for any exceptions to the 30-day transfer timeframe.  *See* ECF No. 7333-1 at 451, 453.

Significantly, the timeframe articulated in the January 15, 2015 Memorandum applies to male

and female 3CMS patients transferring to STRH and LTRH units.

> **B.      The March 3, 2016 STRH Memorandum Acknowledges Transfer Delays Due To Medical Holds, But Does Not Contain Language Sufficient To Suspend The 30-Day Transfer Timeframe**

The March 3, 2016 Memorandum that defendants now rely upon indicates its purpose "is

to provide direction regarding the process for transferring inmate-patients (IPs) participating in

the Mental Health Services Delivery System (MHSDS) at the Correctional Clinical Case

Management System (CCCMS) level of care (LOC) who meet criteria for *placement into a*

*Short-Term Restricted Housing (STRH) unit*."  *Id.* at 456.  In contrast to the January 15, 2015

Memorandum, by its terms, this Memorandum does not apply to female patients, nor does it

apply to transfers to LTRH units.  *See id.* at 456 ("Subject: TRANSFER OF CORRECTIONAL

CLINICAL CASE MANAGEMENT SYSTEM INMATE-PATIENTS TO *MALE SHORT TERM*

*RESTRICTED HOUSING UNITS*") (emphasis added).  Regarding transfers of *male patients to*

*STRH units*, the March 3, 2016 Memorandum restates the 30-day transfer requirement

established in the January 2015 Memorandum nearly verbatim.  *Compare id.* at 456, *with id.* at

451.

In addition, the March 3, 2016 Memorandum acknowledges that medical holds may delay transfers of some male patients to STRH units and establishes a process for institutional monitoring of medical holds.  *See id.* at 457 ("In order to avoid adversely impacting the IP's other custodial or medical needs, *there may be situations where an IP will not be transferred to an STRH within 30 days*.  Some examples of situations include, but are not limited to, an imminent Board of Parole Hearing date, medical hold … In these instances, the Warden or designee, in coordination with the treating Mental Health staff, may elect to temporarily retain the IP in their existing ASU"); *see also id.* (discussing required institutional monitoring requirements, including daily meetings between custody and mental health staff, participation in Interdisciplinary Treatment Teams (IDTTs) and Institutional Classification Committees (ICCs) "to ensure information is shared," and documentation of exceptional reason for delayed transfer in the Classification Committee Chrono).  However, the March 3, 2016 Memorandum does not contain any definition of medical hold or cite to a definition of medical hold elsewhere in CDCR regulation or policy.  Nor does it indicate how a medical hold would be operationalized with respect to scoring compliance with the remedial transfer requirement.  Instead, it merely acknowledges certain circumstances that may lead to non-compliance with the 30-day transfer requirement and lays out documentation requirements should this occur with respect to a medical hold.

Critically, compared to policy language the Court has approved to establish exceptions to other transfer timeframes in this case,[3] the language contained in the March 3, 2016

_____

[3] *See* December 15, 2017 Order, ECF No. 5750 at 2, 4 (approving policy which created "exceptions to the timelines for transfer to acute and ICF hospital care"); *see also* September 26, 2019 Order, ECF No. 6295 (approving exceptions to Program Guide required timeline for transfer to MCHBs).

Memorandum is insufficient to create an exception to the rule that all STRH/LTRH patients (male and female) transfer within 30 days.  As the Court alluded to in its May 24, 2023 Order, in analogous circumstances where defendants have sought approval of an exception to a Program Guide-required transfer timeline (i.e. transfers to inpatient care, MHCBs), they have negotiated with plaintiffs and presented clear and explicit proposed policy language which operationalizes the transfer timeline exception to the Court for consideration.  ECF No. 7847 at 10.

Here, the Memorandum in question acknowledges that there "may be situations," including medical holds, where CDCR is unable to transfer a male patient to an STRH unit within the required timeframe.  ECF No. 7333-1 at 457.  However, unlike the Court-approved exceptions to the respective timeframes for transfer to acute and intermediate care, the March 3, 2016 Memorandum regarding transfers of male patients to STRH units does not specify that the transfer timeline *suspends* due to a medical hold (or any other purported exception).  *Compare* Addendum to 12.11.2101(A) PIP Policy and Procedure Referral and Admission, ECF No. 5744 at 5 ("There are circumstances under which the timelines identified above cannot be met as outlined below.  The circumstances identified below *shall temporarily suspend the transfer timelines* only for the period of time in which the governing exception applies, as detailed below."), *with* March 3, 2016 Memorandum, ECF No. 7333-1 at 457 ("In order to avoid adversely impacting the IPs other custodial or medical needs, there may be situations where an IP will not be transferred to an STRH within 30 days.").  Like the Court-approved policy governing exceptions to the intermediate and acute transfer timelines, the policy governing

exceptions to the MHCB transfer timeline also explicitly describes the impact of the medical

hold on the transfer timeline, noting that the timeframe will be "suspended."[4]

In part because of the absence of comparable language regarding temporary "suspension"

of the STRH transfer timeframe in the March 3, 2016 Memorandum, the Special Master has not

historically in his monitoring and reporting and does not now interpret the Memorandum as

creating a Court-approved exception to the 30-day STRH/LTRH transfer timeframe.

### C. Historically, the Special Master Has Not Excluded Transfers Delayed Due to Medical Holds From His Assessment of Whether Defendants Have Met Their Court-Ordered Obligation to Transfer 3CMS Patients to STRH and LTRH Units Within 30 Days

When reporting on STRH/LTRH transfer timelines in his monitoring reports,[5] the Special

Master has reported the number of transfers to STRH and LTRH that occurred within 30 days,

---

[4] *See* Addendum to 12.05.200 MHCB Referral, Referral Rescission, and Discharge Policy, ECF No. 6261-1 at 2 ("There are circumstances under which the timeline cannot be met as outlined below.  The circumstances identified below shall temporarily suspend the transfer timelines only for the period of time in which the governing exception applies, as detailed below.  Once the exception ends, inmates must be transferred to an MHCB as expeditiously as possible."); *see also id.* ("If a patient is out to hospital, on a pre-existing medical hold, or a new medical hold is placed at the time of the MHCB referral due to a medical condition that cannot be treated at an MHCB and that is deemed more urgent than the mental health treatment need at or after the time of the referral, the transfer timeframe shall be suspended.").

[5] In its May 24, 2023 Order, the Court reiterated the following regarding CDCR's Continuous Quality Improvement Tool (CQIT) and the data remediation process more broadly:

> CQIT's purposes are to accurately measure remedial requirements and transition monitoring from the Special Master to defendants.  Each key indicator must substantively track the areas the Special Master has monitored so the court can assess defendants' compliance with the Eighth Amendment.  The business rules for each key indicator must be written so that the court can rely on defendants' data in assessing their compliance.  Thus, each key indicator must be designed and operationalized to accurately capture the corresponding information gathered and reported on by the Special Master as part of his monitoring responsibilities….

ECF No. 7847 at 7-9.

those that took more than 30 days to transfer, and has further reported reasons for delayed

transfers if any are provided by the respective institution in its response to the Special Master's

document request.  However, as is evident from a review of his prior reports, the Special Master

has not excluded transfers delayed due to medical holds (or any other reason) from his

assessment of whether defendants have satisfied their remedial obligation to transfer patients to

STRH and LTRH within 30 days.[6]  Moreover, in their objections to Special Master's Twenty-

Ninth Round Monitoring Report, for instance, defendants did not object to the Special Master's

findings regarding STRH and LTRH transfer timeframes nor did they argue that transfers

delayed due to medical holds should be excepted from the 30-day transfer timeframe.  *See* ECF

---

[6] *See, e.g.*, Twenty-Ninth Round Monitoring Report – Part C, ECF No. 7715 at 294 ("There were 15 patients placed in LTRH at CIW during the review period.  There were no delays in placement…. There were 44 patients placed in STRH during the review period.  There were no placement delays."); *id.* at 337 ("[SQ] reported that three 3CMS patients were transferred to STRH during the review period.  Two patients were timely transferred from ASU to STRH.  One of the three patients transferred to STRH was in ASU for 172 days, which exceeded the required transfer timeline.  This transfer was reportedly delayed due to "toxicology results" and COVID-19 related movement restrictions."); *id.* at 376 ("During the review period, CCWF transferred 13 patients to the LTRH at CIW.  Transfers following SHU assessment took an average of 28 days with a range of seven to 67 days.  Five patients, or 38 percent, took longer than 30 days to transfer to LTRH after assessment.  Though requested, reasons for delays were not provided."); *id.* at 417 ("VSP transferred 27 patients to STRH. Of those, five or 18 percent took longer than 30 days to transfer.  Reasons for delays included lack of bus seats and COVID-19 testing refusals."); *see also* Twenty-Ninth Round Monitoring Report – Part D, ECF No. 7716 at 128 ("All eight patients that CSP/Solano transferred to LTRH timely transferred to the CSP/Corcoran LTRH within 30 days."); *id.* at 158 ("CIM placed 103 3CMS patients in administrative segregation during the review period, of whom ten patients took longer than 30 days to transfer to STRH, with ranges from 37-90 days."); *id.* at 206 ("During the review period, of 70 Folsom/FWF 3CMS patients housed in administrative segregation, ten or 14 percent took longer than 30 days to transfer to STRH due to COVID-19 movement restrictions."); *id.* at 245 ("During the review period, CCI transferred 18 patients to STRH and five to LTRH.  All but one patient timely transferred within 30 days.  The untimely transfer was 15 days late; CCI did not provide a reason for the delay."); *id.* at 311 ("SCC transferred 12 patients to STRH during the review period; all transfers occurred within 30 days and were compliant.").

No. 7733.  The Court adopted the Special Master's Twenty-Ninth Round Monitoring Report –

Parts C and D in full in an Order entered on April 13, 2023.  ECF No. 7808.

> **D.     The March 3, 2016 Memorandum Does Not Apply to Female Patients or Transfers to LTRH Units**

As noted above, the March 3, 2016 Memorandum only applies to male patients

transferring to STRH units.  ECF No. 7333-1 at 456 ("Subject: TRANSFER OF

CORRECTIONAL CLINICAL CASE MANAGEMENT SYSTEM INMATE-PATIENTS TO

*MALE SHORT TERM RESTRICTED HOUSING UNITS*") (emphasis added).  Therefore, the

purported medical hold exception cannot reasonably be argued to apply to female patient

transfers or transfers to LTRH units.  Construing the March 3, 2016 Memorandum as defendants

have leads to the nonsensical result of male and female patients, and those retained in STRH and

LTRH, being treated differently for purposes of this remedial requirement without any

reasonable policy justification (other than newfound convenience to defendants' litigation

strategy).

Even if the Court were to accept defendants' argument that the March 3, 2016

Memorandum's incorporation in the Compendium represented the Court's approval of a broad,

undefined exception to the 30-day transfer timeline, at minimum, the gaps in the March 3, 2016

Memorandum (i.e. the lack of application to female patient transfers or transfers to LTRH units)

suggest the need for a policy modification through the established meet and confer process.  To

date, the parties have not been able to agree on any modifications to the existing policies or,

more specifically, any exceptions to the 30-day transfer timeframe.  However, as defendants

frequently remind the other data remediation stakeholders, discussions regarding policy

modifications, generally speaking, are on a separate track and need not hold up the data
remediation process for this indicator.[7]

### III.   Recommendation

The Special Master has again considered the parties' positions on this dispute, including
their respective interpretations of the March 3, 2016 Memorandum, and refined his prior
recommendation[8] as described below.  While the March 3, 2016 Memorandum acknowledges
that there "may" be instances where male patients will not timely transfer to STRH due to a
medical hold, it does not contain language sufficient to suspend the 30-day transfer timeframe
for purposes of this indicator's design and operationalization.  In addition, the March 3, 2016
Memorandum does not apply to female 3CMS patients, nor does it apply to transfers to LTRH
units.  Finally, the Special Master has not historically interpreted the Memoranda in question as
including a medical hold exception to the STRH/LTRH transfer timeframe.  Therefore, the
Special Master has not excluded STRH/LTRH transfers delayed due to medical holds in his
assessment of defendants' satisfaction of the remedial requirement to transfer within 30 days.
*See supra* note 6 and accompanying text.  For these reasons, the recommendation included below
is substantially equivalent to the recommendation contained in the Special Master's March 9,

---

[7] The Special Master also notes that defendants recently proposed a wholesale rewrite of
CDCR's restricted housing regulatory regime, which presents another opportunity for the parties
to come to a meeting of the minds regarding exceptions to the STRH/LTRH transfer timeframe.
As of the time of this writing, the Special Master and parties are discussing defendants'
proposals and their impact on the *Coleman* remedy.

[8] As noted above, the Special Master previously recommended that "defendants modify the
Transfer to STRH/LTRH within Timeframes indicator design to score transfers beyond 30 days
as noncompliant, unless or until the parties negotiate and the court adopts an exception to this
Court-approved policy."  ECF No. 7755 at 20.

2023 Report, making only minor revisions to clarify his recommendation and adding the recommendation that defendants create a drill-down to transparently report on delayed transfers.[9]

As alluded to, the Special Master is mindful of the negotiated and Court-approved exceptions to inpatient and MHCB transfer timeframes, which the Court recently suggested "provide[d] a prototype for use in the context of transfers to LTRH and STRH units."  ECF No. 7847 at 10.  Unfortunately, the parties were unable to reach agreement on a medical hold exception to the STRH and LTRH transfer timeframe despite the Court's encouragement.  *See id.* ("The parties are also encouraged to work together under the supervision of the Special Master to resolve this issue."); *see also supra* p. 6.  Until such an exception is brought to the Court for consideration and ultimate approval, the indicator in question needs to be completely remediated in accordance with the Court's prior orders, including that the indicator "be designed and operationalized to accurately capture the corresponding information gathered and reported on by the Special Master as part of his monitoring responsibilities."  *Id.* at 7.  The ultimate question of what compliance threshold will apply to this indicator, and the extent to which patient medical holds impact compliance, remains with the Court for determination at a future date.  *See id.* at 9; *see also* June 30, 2021 Order, ECF No. 7216 at 4.

---

[9] For clarity, the Special Master has refined the language of his March 9, 2023 recommendation to specifically direct that the medical hold exception be removed from the indicator's documentation and to further remove the use of the term "noncompliant" from the recommendation.  The Special Master has also included a specific recommendation regarding "drill-down" information related to delayed transfers, an approach that is comparable to what defendants have recommended for this indicator in their filings.  *See* ECF No. 7755-1 at 18 ("In addition, the suspending event and length of suspension can be added in the drilldown so this is easily visible to all and can be tracked."); *see also* ECF No. 7805 at 6-7 ("Additionally, to facilitate a compromise, Defendants offer to create an unusual events flag that will identify all medical holds that occur during STRH/LTRH transfer timelines and quantifies any delay, enabling stakeholders to effectively monitor such occurrences.  This flag would provide sufficient detail to locate and review the patient's chart or other relevant data if needed.").

Therefore, remediation of the Transfer to STRH/LTRH within Timeframes indicator should proceed with the following recommendations from the Special Master:

- The medical hold exception in the existing indicator's documentation should be removed. All transfers to STRH and LTRH units that exceed 30 days should be scored as not satisfying the 30-day transfer business requirement.

- Concurrently, the indicator should include drill-down information including any explanation for delayed transfers, including medical holds.

Respectfully submitted,

*/s/ Matthew A. Lopes, Jr.*

Matthew A. Lopes, Jr. Esq.
Special Master

August 8, 2023