UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH COLEMAN, et al., | No. 2:90-cv-0520 KJM DB P |
| Plaintiffs, | ORDER |
| v. | |
| GAVIN NEWSOM, et al., | |
| Defendants. | |

Plaintiffs have moved the court to reject defendants' plan to provide minimum treatment standards for the psychiatric inpatient programs (PIPs) administered by the California Department of Corrections and Rehabilitation (CDCR), ECF No. 7812. Defendants oppose the motion, ECF No. 7828, and plaintiffs have filed a reply, ECF No. 7838. In addition, in response to the court's invitation, ECF No. 7817, the United States Department of Justice has filed its views on plaintiffs' motion. ECF No. 7846. As authorized by court order, ECF No. 7854, the parties have filed supplemental briefing. ECF Nos. 7864 (defendants), 7867, 7868 (plaintiffs).

**I. BACKGROUND**

In 1995, the court found defendants in violation of their Eighth Amendment obligation to provide the plaintiff class with access to adequate mental health care. *Coleman v. Wilson*, 912 F. Supp. 1282 (E. D. Cal. 1995). As relevant in part here, the court found constitutional inadequacies in access to necessary inpatient care. *Id*. at 1309.

The court-approved remedial plan for delivery of adequate mental health care to class members, the Program Guide, requires CDCR to provide multiple levels of inmate mental health care: Correctional Clinical Case Management System (CCCMS); Enhanced Outpatient Program (EOP); Mental Health Crisis Bed (MHCB); Intermediate Care Facility (ICF) and Acute Inpatient Program (APP). The focus of this motion is on treatment standards in ICF and APP. ECF No. 7333-1 at 4.[1] As defined by the Program Guide,

> The APP is a short-term *intensive-treatment* program with stays usually up to 30 calendar days to 45 calendar days provided. Actual lengths of stay shall be determined by the Interdisciplinary Treatment Team on a case-by-case basis. Inmate-patients in the APP who are determined to need long-term mental health inpatient care shall be referred to an appropriate DMH intermediate care program.

ECF No. 7333-1 at 108 (emphasis added). The Program Guide requires the following for intermediate hospital care required at the ICF level:

> The ICF programs have a full complement of mental health staff including psychiatrists, psychologists, clinical social workers, rehabilitation therapists, psychiatric technicians, and registered nurses. Most housing is dormitory-type rooms. The inmate-patients have access to the day room, supervised yard access and are fed in a dining room. The inmate-patients receive a multidisciplinary assessment. From this information *an individualized treatment program is developed from a wide variety of treatment modalities, including group and individual psychotherapy, medication management, depression and crisis management, training in daily living skills and interpersonal skills, substance abuse, management of assaultive behavior, supportive counseling, modification of maladaptive behaviors, and educational and vocational programs.*

ECF No. 7333-1 at 113 (emphasis added).

Until 2013, CDCR delegated provision of inpatient care to the California Department of Mental Health (DMH), now known as the California Department of State Hospitals (DSH). *Id*. at 4; *see also* July 11, 2013 Order, ECF No. 4688, at 8. In 2013, CDCR "decided to assume full responsibility for the provision of inpatient mental health care to female inmates in [a] new unit at CIW [California Institution for Women]." *Id*. Until 2017, as discussed further below, DSH continued to operate all other inpatient mental health programs for CDCR.

---

[1] Citations to page numbers in documents filed in this action are to the page number assigned by the Court's Electronic Case Filing (ECF) System and located in the upper right hand corner of the page.

The Special Master is responsible for monitoring and reporting on the adequacy of inpatient care defendants provide to class members. *See generally* July 11, 2013 Order, ECF No. 4688.  In July 2013, the court directed the Special Master to report on the adequacy of all inpatient programs "and whether any modifications to defendants' remedial plan are required to ensure that members of the plaintiff class are receiving adequate inpatient mental health care." *Id*. at 11-12.  The court's order covered all inpatient programs then operated by DSH as well as new programs opening at the California Health Care Facility (CHCF) and the program operated by CDCR at CIW.

Since July 2013, the Special Master has filed five stand-alone monitoring reports on the adequacy of inpatient mental health care.  *See* ECF Nos. 5156, 5448, 5894, 7039, 7555.[2]  In each of these reports the Special Master used, among other criteria, a metric of treatment hours provided weekly to assess the adequacy of care.  *See*, ECF No. 5156 at, *e.g.*, 10-21; ECF No. 5448 at, *e.g.*, 50, 51, 56-60, 62-65; ECF No. 5894 at, *e.g.*, 39, 41, 43; ECF No. 7039 at, *e.g.*, 62-66; ECF No. 7555 at, *e.g.*, 88-96.  Each report identifies inadequate levels of group and individual therapy offered at inpatient programs that have now become the CDCR PIPs. *See* ECF No. 5156 at, *e.g.*, 10-21; ECF No. 5448 at, *e.g.*, 50, 51, 56-60, 62-65; ECF No. 5894 at, *e.g.*, 39, 41, 43; ECF No. 7039 at, *e.g.*, 62-66; ECF No. 7555 at, *e.g.*, 88-96.  Neither party objected to any of the Special Master's findings in these reports, and the court adopted all of the findings in all five reports in full.  *See* July 25, 2014 Order, ECF No. 5188; March 8, 2017 Order, ECF No. 5573; July 6, 2022 Order, ECF No. 7581; August 17, 2022 Order, ECF No. 7605; August 29, 2022 Order, ECF No. 7608

Between August 2015 and February 2016, the Special Master worked with CDCR and DSH "to develop a new Memorandum of Understanding (MOU)" between the two agencies. ECF No. 5894 at 14.  The new MOU was written to transfer responsibility for three DSH inpatient programs in California's prisons to CDCR, specifically the programs at CHCF, California Medical Facility (CMF) (formerly Vacaville Psychiatric Program (VPP)), and Salinas

---

[2] The Special Master also filed an interim report required by events precipitated by the COVID-19 pandemic.  *See* ECF No. 6565, as amended, ECF No. 6579.

1  Valley State Prison (SVSP) (formerly Salinas Valley Psychiatric Program (SVPP)).  *Id*.  This so-
2  called "Lift and Shift" project was developed to finally eliminate long waitlists of class members
3  for admission to DSH inpatient programs.  *Id*.  After some delays, the state "allocated funds to
4  CDCR's [2017/2018] budget for . . . the transfer of 1,156 inpatient mental health treatment beds"
5  at the three DSH inpatient programs at CDCR prisons "to the responsibility of CDCR effective
6  July 1, 2017."  ECF No. 5779 at 24.  The Special Master then worked with CDCR and DSH
7  defendants from February to June 2017 to accomplish the transfer by July 1, 2017.  *Id*.  CDCR
8  now operates a total of five PIPs: the three Lift and Shift PIPs as well as PIPs at CIW and San
9  Quentin State Prison (SQ).  ECF No. 7833 at 1.[3]  DSH continues to operate three programs that
10 provide inpatient care to *Coleman* class members at Atascadero State Hospital (ASH), Coalinga
11 State Hospital (CSH), and Patton State Hospital (Patton).  *See*, *e.g.*, ECF No. 7859 at 7.
12        On March 8, 2017, the court ordered DSH to create a continuous quality improvement
13 (CQI) process[4] for the inpatient programs it operates that serve class members.  ECF No. 5573.
14 The court's order implemented the Special Master's recommendation, to which no party had
15 objected.  *Id*.  By 2020, DSH had developed a fully adequate CQI process, ECF No. 7625 at 29-
16 30, which it still uses.  Ex. A to Decl. of Galvan, ECF No. 7812-1.  That process includes
17 definitions of "core groups," "supplemental groups," and "individual therapy" and provides that
18 patients will be offered 20 hours of *treatment* per week, at least ten hours of which are to be
19 "core" treatment.  ECF No. 7812-1 at 15.  The DSH CQI process requires justification for each
20 patient for whom 20 hours of group per week is not clinically indicated, as well as "objectives
21 and interventions to assist the patient in attending groups."  *Id*.
22        The parties' current dispute has its genesis in a recommendation the Special Master first
23 made in his January 28, 2021 inpatient monitoring report, ECF No. 7039, and again in his May

---

[3] CDCR also provides acute inpatient care at twelve Inpatient Flex Beds at California Men's Colony (CMC).  ECF No. 7833 at 13 n.1.

[4] An adequate CQI process is "[a] key component of a durable remedy in this action . . . by which defendants will self-monitor and, as necessary, self-correct inadequacies in the delivery of mental health care to the thousands of seriously mentally ill inmates incarcerated in California's prisons."  September 3, 2020 Order, ECF No. 6846, at 10 (quoting February 27, 2014 Order, ECF No. 5092, at 5).

17, 2022 monitoring report on the six CDCR PIPs, ECF No. 7555. In the January 28, 2021 Report, the Special Master included the following as his first recommendation:

> To the extent necessary to remedy any deficiencies identified in the foregoing report, the CDCR and DSH defendants, under the guidance and supervision of the Special Master, and with input from the plaintiffs as appropriate, shall develop plans within 90 days to provide structured therapeutic activities, unstructured out-of-cell activities, treatment planning, and individual treatment, including for maximum custody patients consistent with a psychiatric inpatient level of care, as well as implement a system for tracking and reporting adherence to the standards developed.

ECF No. 7039 at 118. 7608 at 5 (quoting ECF No. 7555 at 164-65). The court adopted the Special Master's findings in full in its August 17, 2022 order, ECF No. 7605. In light of defendants' representation at the time that they planned to develop and submit the recommended plans, the court declined to order them to do so. *Id*. at 10.

The defendants did not follow through on their commitment to develop the plans. ECF No. 7608 at 5. In his May 17, 2022 Report, the Special Master repeated his recommendation:

> Consistent with the recommendations contained in the Special Master's 2021 Inpatient Care Report, to the extent necessary to remedy any deficiencies identified in this report, within 90 days CDCR, under the guidance and supervision of the Special Master, and with input from the plaintiffs as appropriate, shall develop minimum standards for the provision of structured therapeutic activities, unstructured out-of-cell activities, treatment planning, and individual treatment, consistent with a psychiatric inpatient level of care, and shall develop plans to provide such structured therapeutic activities, unstructured out-of-cell activities, treatment planning, and individual treatment consistent with the established minimum standards. CDCR shall also develop and implement a system for tracking and reporting adherence to the standards developed.

ECF No. 7555 at 164-65.

In its August 29, 2022 order, while adopting in full the findings in the May 17, 2022 report, the court did not adopt the Special Master's recommendations regarding development of remedial plans and minimum treatment standards. Instead, disappointed by defendants' failure to follow through on their commitment to develop these plans, the court referred the issue for focused, high-level discussions between the Special Master and then-CDCR Secretary Kathleen Allison. *Id*. at 5-6. The court directed the discussions to be "aimed at remediating the deficiencies identified in the Report by a date certain." *Id*. at 5. The court signaled it would

5

1    accept declarations from Secretary Allison setting out any agreed-upon resolutions. *Id.* For the
2    minimum treatment standards, the court would accept the declaration if filed within four months.
3    *Id.* For PIP staffing, the court set a six-month deadline. *Id.*

4        Secretary Allison retired at the end of 2022 without filing a declaration concerning
5    minimum treatment standards in the PIPs, and the Special Master reported to the court that
6    "productive discussions . . . had stalled" prior to her retirement. January 6, 2023 Order, ECF No.
7    7967 at 3. On January 6, 2023, the court vacated that part of its August 29, 2022 order referring
8    the issue to Secretary Allison and the Special Master and directed defendants to promptly serve
9    on plaintiffs and the Special Master any plans they had developed to address the issue. *Id*. at 3.
10   The court directed the parties to meet and confer for forty-five days to resolve their differences.
11   *Id.* The court then required a joint status report with "either a stipulated resolution or a schedule
12   for motion practice." *Id*. The parties did not resolve their differences issues and filed a proposed
13   schedule for motion practice. ECF No. 7758.

14       On March 28, 2023, defendants filed their proposed plan. ECF No. 7787. The plan
15   contains no requirement for a minimum number of structured treatment hours for inmate-patients,
16   leaving structured programming to "individualized clinical assessment and treatment planning by
17   the Interdisciplinary Treatment Team, updated based on clinical progress as per the standard of
18   care." *Id*. at 6. On April 17, 2023, plaintiffs filed their current motion asking the court to reject
19   that plan. ECF No. 7812. They contend defendants' plan is "facially inadequate to remedy"
20   ongoing Eighth Amendment violations because it "fails to specify any minimum amount of
21   structured treatment" for psychiatric inpatients. ECF No. 7812 at 9, 15. Defendants oppose the
22   motion, ECF No. 7828, and plaintiffs have replied, ECF No. 7838. As noted, the U.S.
23   Department of Justice also submitted its views at the court's invitation. ECF No. 7486.

24       In the meantime, on May 11, 2023, as part of his thirtieth round of monitoring, the Special
25   Master filed a further monitoring report on inpatient mental health care in the CDCR PIPs. ECF
26   No. 7833. The Special Master's findings in that report, adopted by the court in full and without
27   objection, show ongoing constitutional violations in access to adequate mental health care in the
28   CDCR PIPs. *See*, *e.g.*, June 9, 2023 Order, ECF No. 7854, at 49-50, 55-56.

## II.    LEGAL STANDARD

The court has an obligation to remedy ongoing Eighth Amendment violations. *See Brown v. Plata*, 563 U.S. 493, 511 (2011) (citing *Hutto v. Finney*, 437 U.S. 678, 687 n.9 (1978)). The remedy to meet the Eighth Amendment requirement of adequate access to inpatient care must reflect that it has been "developed contextually." *Coleman v. Wilson*, 912 F. Supp. 1282, 1301 (E.D. Cal. 1995).

Although the court owes deference to prison administrators, it cannot "allow constitutional violations to continue simply because a remedy would involve intrusion into the realm of prison administrators." *Id*. The Prison Litigation Reform Act of 1995 (PLRA) requires the court to ensure prospective relief is "narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(a)(1)(A). This requirement is satisfied when the court makes the requisite "need-narrowness-intrusiveness findings" in an order that explains "clearly the factual circumstances underlying an order and its understanding of the relevant law as applied to the facts." *Armstrong v. Schwarzenegger*, 622 F.3d 1058, 1070-71 (9th Cir. 2010).

## III.    ANALYSIS

Defendants' plan fails to specify minimum standards for the provision of structured therapeutic activity to the nearly 1,000 inmate-patients in the CDCR PIPs. Instead, it relies on "individualized clinical assessment" to guide the provision of structured therapeutic activity for those inmate-patients.[5] Defendants misread the Program Guide and the national standards on which they rely. They disregard the Special Master's findings over the past decade and the court's orders adopting those findings. In short, defendants' plan will not remedy longstanding deficiencies in inpatient care in the PIPs.

/////

---

[5] Defendants' last patient census and waitlist report, ECF No. 7921, shows the bed capacity of the CDCR PIPs is 1259 and the census of as of July 31, 2023 was 946 inmate patients. ECF No. 7921 at 13.

A.     **Requirements for Delivery of Adequate Inpatient Care to Class Members**

As applicable here, the Program Guide imposes three requirements. First, defendants must provide "[i]ntensive-treatment" in the APP. ECF No. 7333-1 at 108. Second, they must provide individualized treatment in ICF programs, and that treatment must be drawn "from a wide variety of treatment modalities including group and individual psychotherapy, medication management, depression and crisis management, training in daily living skills and interpersonal skills, substance abuse, management of assaultive behavior, supportive counseling, modification of maladaptive behaviors, and educational and vocational programs." *Id*. at 113. And third, EOP inmate-patients must be offered at least ten hours of structured therapeutic activity per week absent clinical justification on a case-by-case basis. *Id*. at 58.

The details of these core requirements have developed contextually over the last decade of implementation. During this time, the court has adopted the Special Master's findings that inpatient programs offering less than the ten hours of structured therapeutic activity required in outpatient EOP units are inadequate. *See*, *e.g.,* ECF No. 5894 at 39, 41, *adopted in full*, ECF No. 7581; ECF No. 7039 at 63, 64, *adopted in full*, ECF No. 7605. The court also has adopted the Special Master's finding that the standard adopted by DSH for its units providing inpatient treatment for *Coleman* class members is "fully adequate." *See* ECF No. 7625 at 29-30, *adopted in full*, ECF No. 7688. As noted above, this standard requires DSH to offer patients 20 hours' treatment per week unless clinically contraindicated. Ex. A to Decl. of Galvan, ECF No. 7812-1 at 15.

B.     **Defendants' Plan Inadequate**

Defendants' plan contains no minimum hour requirement for structured therapeutic treatment to patients at either the APP or the ICF level of inpatient care. The plan flatly disregards the remedial requirements set out in section III(A) above. Defendants' plan does not satisfy the requirements that have long been in place in this case.

One fault in defendants' position lies in their apparent equation of offering and receiving therapeutic activity. *See* Decl. of Mehta, ECF No. 7828-3 ("[T]he carefully negotiated Program Guide section detailing requirements for these levels of care does not prescribe a set number of

8

1   treatment hours that must be *provided* to patients in an inpatient setting.") (emphasis added).  The

2   focus of the Special Master's findings and the court's order is on developing a minimum standard

3   for treatment hours to be *offered* to each patient.  Individual patients may *receive* less treatment

4   than offered, and an adequate plan will include guidance about when patients may accept or

5   receive less treatment.[6]  In this context, minimum standards provide the structure for the

6   treatment required by the Program Guide.  The standards are targets for adequate inpatient

7   programs as well as parameters for both the staffing levels and treatment space necessary to *offer*

8   sufficient structured therapeutic activities to the inpatient inmate population.

9          Defendants do not explain how they plan to offer enough structured therapeutic activities

10  in the PIPs to give clinicians the "wide variety" of options to use in developing individualized

11  treatment plans for ICF patients or the intensive treatment required by APP patients.  ECF No.

12  7333-1 at 113.  This omission is not acceptable.  As discussed in Section I above, the Special

13  Master, since 2013, has regularly found and reported inadequate levels of care provided to class

14  members in the inpatient programs that are the subject of this motion.  Most recently the Special

15  Master reports "the vast majority" of the most recent clinical case reviews by his monitors show

16  77 percent of patients "received care of inadequate quality during the reporting period."  ECF No.

17  7833 at 49.

18         Inpatient care is provided to class members in both DSH programs and CDCR PIPs.  DSH

19  programs operate under the CQI process noted above that, in relevant part, includes the minimum

20  treatment standard measurements requiring patients be offered 20 hours of *treatment* per week, at

21  least ten hours of which are to be "core" treatment, absent appropriate documentation in an

22  individual treatment plan.  ECF No. 7812-1 at 15 (emphasis added).  All stakeholders agree, and

23  this court has found, those minimum treatment standards are adequate.  *See* ECF No. 7688

24  (adopting in full ECF No. 7625).  There is no reason to conclude different standards should

25  /////

---

[6] *See*, *e.g.*, ECF No. 7812-1 at 15 ("Patients with higher clinical needs where 20 hours of group per week is not clinically indicated, will have the justification within his/her treatment plan along with objectives and interventions to assist the patient in attending groups.").

govern the inpatient programs administered by CDCR. Now is not the time for revised plans or new plans. Now is the time for action. Already too much time has passed without compliance.

## IV.     CONCLUSION

As explained in this order, defendants' plan for minimum treatment standards in the CDCR PIPs is inadequate. Defendants have presented this inadequate plan two years after defendants promised, and failed, to develop a plan for minimum treatment standards for the CDCR PIPs. The time has passed for additional planning. Now is the time for action that leads, expeditiously, to compliance with the Eighth Amendment in the delivery of adequate care to California's most seriously mentally ill inmates. The court previously has found the minimum standards for treatment of inpatient class members adopted by DSH are adequate. For the reasons explained above, defendants will be directed to forthwith adopt and implement in the CDCR PIPs the minimum treatment standards set out in the DSH CQI process, which the court previously has approved.

In accordance with the above, IT IS HEREBY ORDERED that:

1. Plaintiffs' April 17, 2023 motion, ECF No. 7812, is GRANTED to that extent consistent with this order; and

2. Defendants shall immediately adopt and implement in the CDCR PIPs the minimum treatment standards set out in the DSH CQI process approved by the court.

DATED: August 23, 2023.

CHIEF UNITED STATES DISTRICT JUDGE