1  ROB BONTA, State Bar No. 202668
   Attorney General of California
2  MONICA N. ANDERSON, State Bar No. 182970
   Senior Assistant Attorney General
3  DAMON MCCLAIN, State Bar No. 209508
   Supervising Deputy Attorney General
4  ELISE OWENS THORN, State Bar No. 145931
   NAMRATA KOTWANI, State Bar No. 308741
5  Deputy Attorneys General
    1300 I Street, Suite 125
6   P.O. Box 944255
    Sacramento, CA 94244-2550
7   Telephone: (916) 210-7318
    Fax: (916) 324-5205
8   E-mail: Elise.Thorn@doj.ca.gov
   Attorneys for Defendants

   HANSON BRIDGETT LLP
   PAUL B. MELLO, SBN 179755
   SAMANTHA D. WOLFF, SBN 240280
   KAYLEN KADOTANI, SBN 294114
   LAUREL O'CONNOR, SBN 305478
   DAVID C. CASARRUBIAS, SBN 321994
   CARSON R. NIELLO, SBN 329970
   1676 N. CALIFORNIA BLVD., SUITE 620
   WALNUT CREEK, CALIFORNIA 94596
   TELEPHONE: 925-746-8460
   FACSIMILE: 925-746-8490
   Attorneys for Defendants

9

10                    **UNITED STATES DISTRICT COURT**

11                  **EASTERN DISTRICT OF CALIFORNIA**

12                        **SACRAMENTO DIVISION**

13

14  RALPH COLEMAN, et al.,                Case No. 2:90-CV-00520- KJM-DB

15          Plaintiffs,                   **JOINT REPORT REGARDING PIP
                                          STAFFING VACANCY RATE**
16      v.

17  GAVIN NEWSOM, et al.                  Judge:   Hon. Kimberly J. Mueller

18          Defendants.

19

20          On August 23, 2023, this Court ordered the parties to meet and confer "under the

21  supervision of the Special Master in an effort to agree on an appropriate maximum vacancy rate

22  for clinical staff in the CDCR PIPs." ECF No. 7923 at 14:21-22. The parties were ordered to

23  focus on "whether the court should confirm a maximum vacancy rate for the PIPs that is different

24  from the ten percent rate established by the June 2002 order and used by DSH," and "[i]f so, the

25  parties shall discuss what that rate should be to enable defendants to meet their constitutional

26  obligations of the plaintiff class." *Id.* at 13:1-4.

27          The parties met and conferred on August 30, 2023 but were unable to reach an agreement.

28  Their respective positions are noted below.

**DEFENDANTS' POSITION**

It is the State's position that there is no quantifiable staffing threshold that is required by the Constitution, and that any arbitrary maximum vacancy rate is not an appropriate proxy for measuring Defendants' constitutional compliance. Rather, the appropriate measure is the standard of care that is actually provided to patients.

**Defendants' Certification of Orders Reviewed**

Defendants' counsel certifies that they reviewed the following orders relevant to this filing: ECF Nos. 7924, 7923, 7806, 7766, 7765, 7697, 5711.

**PLAINTIFFS' POSITION**

Defendants' position is entirely non-responsive to this Court's order requiring the parties to inform the Court of the maximum vacancy rate that should apply to mental health staff in CDCR's PIPs. Rather than responding to the Court's directive, Defendants obfuscate the key issues.

CDCR's PIPs – and in particular the three largest programs at CHCF-PIP, CMF-PIP, and SVSP-PIP – have been seriously understaffed for many years, resulting in persistently deficient inpatient treatment. *See* Special Master's 2022 Inpatient Report (May 17, 2022), ECF No. 7555 at 51, 231.[1] Yet Defendants have failed to rectify the problem, and the clinical vacancies have only worsened. In the face of Defendants' chronic indifference and lack of action, this Court is left no choice but to set a firm staffing requirement as a step towards remediation of Defendants' constitutional violations. *See Coleman v. Wilson*, 912 F. Supp. 1282, 1306-09 (E.D. Cal. 1995) (identifying Eighth Amendment violations with respect to deficient clinical staffing and lack of timely access to adequate inpatient care); *see also Brown v. Plata*, 563 U.S. 493, 511 (2011) (federal courts are obligated to remediate identified constitutional violations) (citing *Hutto v. Finney*, 437 U.S. 678, 687 n.9 (1978)).

Plaintiffs agree with this Court's inclination that CDCR's PIPs should be held to the same

---

[1] In Plaintiffs' portion of this Joint Statement, page citations to documents in the record are based on ECF pagination.

1  ten percent maximum vacancy rate requirement with which all other CDCR mental health

2  programs must comply, and by which the DSH programs are measured.  Not only do Defendants

3  provide no justification why a different standard should govern, they refuse to respond at all to this

4  Court's order requiring the parties to inform the Court of the maximum vacancy rate that should

5  apply to the PIPs.  Instead, during the meet and confer process, they offer only a vague,

6  unsupported assertion that staffing levels are not an appropriate proxy for constitutionally

7  adequate care. Defendants' ongoing attempts to evade responsibility for their constitutional

8  obligations by refusing to set a compliance threshold in the face of the Special Master's and this

9  Court's persistent findings of deficiencies should be rejected out of hand.

10  **A.  The Maximum Mental Health Staff Vacancy Rate for CDCR PIPs Should Be at Least Equal to the Ten Percent Rate Applicable to CDCR's Other Mental Health Programs**

12  The ten percent maximum vacancy rate has been the staffing level needed to provide

13  constitutionally adequate care for over two decades.  *See* Order (June 13, 2002), ECF No. 1383 at

14  4.  All of CDCR's other mental health programs, including the MHCBs, are subject to a 10%

15  maximum vacancy rate for psychiatrists, psychologists, and social workers pursuant to the June

16  13, 2002 order and the 2009 Staffing Plan.  *See* Order (Aug. 23, 2023), ECF No. 7923 at 12

17  ("Aug. 23, 2023 PIP Staffing Order").  The Court recently clarified that this requirement applies to

18  recreational therapists as well.[2]  Order (Apr. 11, 2023), ECF No. 7806 at 2, 8 ("April 11, 2023

19  Order").  The DSH mental health staffing plan also assumes that a ten percent maximum vacancy

20  rate applies to its units that treat *Coleman* patients.  *See* Aug. 23, 2023 PIP Staffing Order at 12;

21  DSH Staffing Plan to Maintain Required Maximum Clinical Staffing Vacancy Rates (March 11,

22  2021 Update), ECF No. 7078-1 at 2.

23  The mental health treatment needs of the patient population in CDCR's PIPs necessitate a

24  maximum vacancy rate requirement at least equal to the 10% rate applicable to CDCR's other

25  programs (and which DSH presumptively applies to its programs).  CDCR's PIPs treat the most

26  _____

27  [2] The same order extends the ten-percent maximum vacancy rate to medical assistants, but those positions are not relevant here as CDCR does not utilize medical assistants in the PIPs in any

28  significant manner.

complex, fragile, and acutely ill patients in CDCR's care. *See* MHSDS Program Guide (Sept. 29, 2021), ECF No. 7333-1 at 107-09; Aug. 23, 2023 PIP Staffing Order at 14 ("CDCR PIPs are the source of necessary mental health care to the inmate-patients in CDCR's Mental Health Services Delivery System who need that care most urgently."). These patients are required to receive more intensive care than patients in any other CDCR mental health program. *See* Order (Aug. 23, 2023), ECF No. 7924 at 8, 10. Given that patients in CDCR's PIPs have the greatest treatment needs, the PIPs should at a minimum be required to achieve the same 10% maximum staffing vacancy rate with which CDCR's other mental health programs must comply.

Indeed, both Defendants and the Special Master are already accustomed to measuring CDCR PIP staffing against the ten percent maximum vacancy rate. The Special Master has used the ten percent maximum vacancy rate as a reporting standard when monitoring staffing levels in CDCR's PIPs since Defendants assumed control of the Lift and Shift PIPs, reporting to which Defendants have objected only recently. August 23, 2023 PIP Staffing Order, ECF No. 7923 at 10 (quoting Order (08/17/22), ECF No. 7605 at 5-6); *see also* Special Master's 2021 Inpatient Report, ECF No. 7039 at 15 (noting prior reporting on PIP staffing that utilized the ten-percent vacancy rate without objection).

The fact that Defendants project bed need based on average daily census figures and utilizing a 90 percent occupancy rate does not warrant deviating from the 10 percent maximum clinical staffing vacancy rate applicable to every other CDCR program. *See* August 23, 2023 PIP Staffing Order, ECF No. 7923 at 12. CDCR similarly projects bed need for the MHCB and EOP programs based on a 90% and 95% patient fill rate, yet both programs are subject to the 10% maximum clinical staffing vacancy rate. *See* CDCR's Feb. 2023 Mental Health Bed Need Study (March 6, 2023), ECF No. 7753 at 10 ("2023 Bed Needs Study").

More importantly, Defendants' utilization of a ratio of clinical staff to beds in the 2021 PIP Staffing Plan is based on a critically necessary assumption: A durable remedy for Defendants' persistent failure to provide timely access to appropriate inpatient treatment must include enough staffing to adequately treat patients over a range of bed needs including up to the full PIP capacity because, as this Court has recognized, the need for inpatient care fluctuates over time. *See, e.g.,*

Order (Dec. 9, 2016), ECF No. 5529 at 4-5 (noting long history of fluctuating inpatient demand and requiring briefing on whether CDCR should "include in their bed need projections and construction or bed utilization planning some amount of excess inpatient capacity that is available at all times to address spikes in demand without delaying access to inpatient care for any *Coleman* class member"); 2023 Bed Needs Study, ECF No. 7753 at 8 (discussing changing PIP bed utilization projections). Indeed, routine and foreseeable fluctuations in inpatient demand is precisely why hospitals in the community use an 80% occupancy standard instead of CDCR's less forgiving 90% -- to ensure there are sufficient numbers of beds available at all times to treat patients who critically need inpatient psychiatric hospitalization.

In this case, the PIP census fill rate can and does rise above 90% -- often to almost full capacity. *See*, *e.g.*, Defs.' Census, Waitlist, and Transfer Timeline Report (March 16, 2020), ECF No. 6505 at 9 (showing PIPs at over 96% occupancy, with 52 of 1331 beds available as of February 24, 2020); Defs.' Census, Waitlists, and Transfer Timeline Report (Nov. 15, 2019), ECF No. 6394 at 7 (reporting 8 available beds). And Defendants' inability to ensure adequate numbers of PIP clinicians can and does limit the number of available beds[3] to well below the full planned-for 90%, thereby exacerbating other aspects of the Eighth Amendment violations. *See, e.g.*, Defs.' Census, Waitlist, and Transfer Timeline Report (May 15, 2023), ECF No. 7836 at 10, 13, 21 (reporting massive transfer delays and large waitlists where 203 of 255 reportedly "available" PIP beds were offline almost entirely due to staffing); Defs.' Census, Waitlist, and Transfer Timeline Report (April 17, 2023), ECF No. 7811 at 10-11, 13, 21 (reporting massive transfer delays and

---

[3] Recently, Defendants have begun including in their PIP census and waitlist reporting 12 beds at California Men's Colony (CMC), where they run an unauthorized acute inpatient program outside of the PIPs in a preexisting MHCB unit, *See, e.g.,* Defs.' Census, Waitlist, and Transfer Timeline Report (May 15, 2023), ECF No. 7836 at 13 & n.6 (reporting 12 filled beds "flexed to Acute and/or ICF at insitutions [sic] that do not have a PIP program"). Defendants do not report allocating any clinicians for this unit pursuant to the terms of the 2021 PIP Staffing Plan, which indeed does not mention any inpatient program at CMC. *See, e.g.,* Defs.' Mental Health Staffing Vacancy Report (Aug. 31, 2023), ECF No. 7933 at 12 & n.1 (reporting, for example, no psychologist positions at CMC's "flex unit" allocated under the PIP staffing plan). Assuming arguendo Defendants have sufficiently allocated staff to serve the acute patients in this flex unit, which Plaintiffs contest, such staff are presumably subject to the 2002 Order's maximum ten percent vacancy rate.

large waitlists where 211 of 253 reportedly "available" PIP beds were offline almost entirely due

to staffing).  Accordingly, CDCR's 90% PIP bed planning threshold provides no justification for

deviating from the 10 percent maximum vacancy rate applicable to the rest of its programs.

### B.    Defendants Have Failed to Offer a Persuasive Justification to Deviate from the Ten Percent Standard

Finally, Defendants have failed to offer any persuasive reason why the ten percent

maximum vacancy rate should not apply to CDCR's PIPs.  Instead, despite the Court's direct

order, Defendants asserted during the meet and confer overseen by the Special Master that they do

not believe the 10% maximum vacancy rate should apply to CDCR's PIPs because the CDCR

PIPs should not be subject to *any* specific maximum vacancy rate.  Declaration of Michael Nunez

("Nunez Decl.") ¶ 2; *see* August 23, 2023 PIP Staffing Order, ECF No. 7923 at 12-13.  In support

of their position, Defendants claimed without further explanation that staffing levels are not an

appropriate proxy for constitutionally adequate care.  Nunez Decl. ¶ 2.  This ignores this Court's

initial holding identifying insufficient staffing as one of Defendants' core constitutional violations

in this action, *see Coleman*, 912 F. Supp. at 1306-08, and the Special Master's repeated findings

that CDCR's PIPs are inadequately staffed at their current levels and – as a direct result –

providing inadequate care, which this Court has adopted (and to which Defendants did not object).

*See, e.g.*, Special Master's 2022 Inpatient Report, ECF No. 7555 at 161-62 (discussing

"dangerously high" PIP staffing vacancies and finding the "staffing crisis directly led to reduced

access to inpatient care"); Special Master 2023 Inpatient Report, ECF No. 7833 at 50-55 (finding

the "consequential result" of severe, chronic PIP staffing shortages "were inadequacies in

provided treatment and care for patients," and detailing links between staffing shortages and

inadequate care); *see also* Order (Aug. 23, 2023), ECF No. 7924 at 3 (collecting years of Special

Master reports identifying treatment deficiencies in the PIPs, and noting Defendants' lack of

objection and subsequent court adoption).  It also ignores the fact that insufficient PIP staffing

prevents patients from timely accessing inpatient care under the Program Guide, *see* Section A,

*supra*, and thus is directly tied to other aspects of the Eighth Amendment violation.  Defendants'

clear desire to avoid further enforcement at all costs violates this Court's mandate to end the

1  ongoing violations. *See Plata*, 563 U.S. at 511.  This Court can and should set a ten-percent

2  maximum clinical vacancy rate for the PIPs as part of that necessary process given Defendants'

3  years of foot dragging to date.

4  <center>**Conclusion**</center>

5       For the foregoing reasons, Plaintiffs request that the Court set the PIP maximum  mental

6  health staffing vacancy rate at 10 percent, consistent with the other CDCR programs.

7  <center>**Plaintiffs' Certification of Orders Reviewed**</center>

8       Plaintiffs' counsel certifies that he reviewed the following orders relevant to this filing:

9  ECF Nos. 7923; 7806; 7924; 5529; 1383; *Coleman v. Wilson*, 912 F. Supp. 1282 (E.D. Cal. 1995);

10  *Brown v. Plata*, 563 U.S. 493, 511 (2011).

11

12  DATED: September 6, 2023                    ROB BONTA
                                            Attorney General of California
13                                          DAMON MCCLAIN
                                            Supervising Deputy Attorney General
14

15                                          By:_____/s/  Elise Owens Thorn_____
                                                ELISE OWENS THORN
16                                              Deputy Attorney General
                                                *Attorneys for Defendants*
17

18  DATED:  September 6, 2023                   HANSON BRIDGETT LLP
19

20

21                                          By:_____/s/ Samantha D. Wolff_____
                                                PAUL B. MELLO
22                                              SAMANTHA D. WOLFF
23

24  DATED:  September 6, 2023               Respectfully submitted,

25                                          ROSEN BIEN GALVAN & GRUNFELD LLP

26
                                            By:_____/s/ Michael Nunez_____
27                                              Michael Nunez
                                                *Attorneys for Plaintiffs*
28